# EXHIBIT H

# EXHIBIT H

09SP1613



2009 JUN 25  P 4: 12

C.S.C.

## ASSIGNMENT OF NOTE AND DEED OF TRUST

This instrument prepared by
The Law Firm of Hutchens, Senter & Britton, P.A.

STATE OF NORTH CAROLINA

COUNTY OF CABARRUS

HSB Case No:  1020910

FOR AND IN CONSIDERATION of the sum of One Dollar ($1.00) and other valuable consideration, the receipt of which is hereby acknowledged, SUNTRUST MORTGAGE, INC DBA SUN AMERICA MORTGAGE, assignor, does hereby, bargain, sell, give, grant, convey, transfer, set over, and assign to SUNTRUST BANK, a Virginia corporation, assignee, its successors and assigns, all of assignor's rights, title and interest in and to that certain deed of trust executed on the 18th day of January, 2007, by Jennifer L. Wilson to STATE STREET TITLE GROUP, LLC, Trustee, recorded in Book 7295, Page 122, in the office of the Register of Deeds for Cabarrus County, North Carolina, on the 25th day of January, 2007, given to secure an indebtedness in the original principal sum of Two Hundred Ninety-Six Thousand Dollars and No Cents ($296,000.00), as evidenced by a promissory note executed on the 18th day of January, 2007, and secured by the real property described in the above deed of trust.  The undersigned, SUNTRUST MORTGAGE, INC DBA SUN AMERICA MORTGAGE, does also sell, assign, transfer and set over unto the said SUNTRUST BANK all of its right, title and interest in and to the said note secured by said deed of trust.

IN WITNESS WHEREOF, said SUNTRUST MORTGAGE, INC DBA SUN AMERICA MORTGAGE has caused this instrument to be signed by its duly authorized officers this the __18__ day of November, 2009.*

*This assignment is effective (03/01/2007).

# EXHIBIT H

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

STATE OF VIRGINIA

CITY OF RICHMOND

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

_____
Name(s) of Principal(s)

Date: ___NOV 1 0 2009___    _____
Official Signature of Notary

_____Sheena M. Wyatt_____, Notary Public
Notary Public printed or typed name

*(Official Seal)*          My commission expires: _____

SHEENA M. WYATT
Notary Public
Commonwealth of Virginia
7285056
My Commission Expires May 31, 2013

# EXHIBIT I

# EXHIBIT I



NORTH CAROLINA

CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE
BEFORE THE CLERK

FILED

2009 DEC -1  P  CLERK'S COPY

In the Matter of the foreclosure of a Deed of Trust
executed by Jennifer L. Wilson in the original
amount of $296,000.00 dated January 18, 2007,
recorded in Book 7295, Page 122, Cabarrus
County Registry Substitute Trustee Services,
Inc., Substitute Trustee

C.S.C.

NOTICE OF HEARING
PRIOR TO FORECLOSURE
OF DEED OF TRUST
09 SP 16 13

TO:    Jennifer L. Wilson and
       Angel L. Rivera
       7801 Pinecroft Court
       Harrisburg, NC 28075

## SERVE PRIOR TO MIDNIGHT ON DECEMBER 21, 2009

1.    You are hereby notified that the note holder intends to commence foreclosure on the
Note and Deed of Trust dated January 18, 2007 which Note was originally held by SunTrust Mortgage,
Inc. dba Sun America Mortgage and is now held by SunTrust Bank, c/o SunTrust Mortgage, Inc.; P.O.
Box 27767, Richmond, VA 23261 because of the failure to make timely payments said note holder having
accelerated the maturity of the debt because of the default in payment.

2.    You are hereby notified that the holder of the note has confirmed in writing to the
substitute trustee that within thirty (30) days of the date of the notice, a detailed written statement of the
amount of principal, interest and any other fees, expenses and disbursements that the holder in good
faith is claiming to be due as of the date of the written statement, together with a daily interest charge
based on the contract rate as of the date of the written statement was sent by first-class mail to the last
known address of the borrower.

3.    The holder or servicer acting on the holder's behalf, has confirmed in writing to the
substitute trustee that the holder or servicer acting on the holder's behalf, has no knowledge of borrower
making any written request(s) for information pursuant to N.C.G.S. 45-93 within two years preceding the
date of the written statement.

4.    The undersigned hereby certifies that the underlying mortgage debt is not a subprime
loan as defined in N.C.G.S. 45-101(4), as evidenced by the Certificate attached hereto as an Exhibit and
incorporated herein by reference.

5.    If the holder of the note described above is willing to do so, you may cure said default by
paying the past due indebtedness plus attorney fees and actual cost incurred by contacting Substitute

EXHIBIT I

Trustee Services, Inc., substitute trustee, c/o The Law Firm of Hutchens, Se...er & Britton, P.A., 4317 Ramsey Street, Fayetteville, North Carolina 28311, (910) 864-3068 before the date of sale set forth below.

6.      Your property, as described on the attached notice of foreclosure sale, which is incorporated herein, is scheduled to be sold at **12:30 PM on February 1, 2010**, at the courthouse door, Cabarrus County Courthouse, Concord, North Carolina.

7.      You have the right to appear before the Clerk of Superior Court, Cabarrus County Courthouse, at **2:00 PM on January 11, 2010**, where you will be afforded the opportunity to show cause why the foreclosure should not be held if you so desire. If you do not intend to contest the creditor's allegations of default, you do not have to appear at this hearing and your failure to attend the hearing will not affect your right to pay the indebtedness and thereby prevent the proposed sale, or to attend the actual sale, should you elect to do so. You will be notified of any change in the hearing date, should the hearing be held on a date other than the date stated herein.

8.      The substitute trustee, is a neutral party and may not advocate for the note holder or for the debtor in the foreclosure proceeding.

9.      You have the right to apply to a judge of the Superior Court pursuant to N.C.G.S. 45-21.34 to enjoin the sale, upon any legal or equitable ground that the court may deem sufficient prior to the time that the rights of the parties to the sale or resale become fixed, provided you comply with the requirements of N.C.G.S. 45-21.34.

10.     You have the right to appear at the hearing and contest the evidence that the clerk is to consider under N.C.G.S. 45-21.16(d).  To authorize the foreclosure the clerk must find the existence of (i) a valid debt of which the party seeking to foreclose is the holder, (ii) a default, (iii) a right to foreclose under the instrument, (iv) notice to those entitled to notice, and (v) that the underlying mortgage debt is not a subprime loan as defined in N.C.G.S. 45-101(4), or if the loan is a subprime loan under N.C.G.S. 45-101(4), that the pre-foreclosure notice under N.C.G.S. 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed.

11.     If you fail to appear at the hearing, the substitute trustee will ask the clerk for an order to sell the real property being foreclosed.

12.     You have the right to seek the advice of an attorney and free legal services may be available to you by contacting Legal Aid of North Carolina or other legal service organizations.

**EXHIBIT I**

13.    The substitute trustee is Substitute Trustee Services, Inc. and is represented in this proceeding by The Law Firm of Hutchens, Senter & Britton, P.A. You may contact them at 4317 Ramsey Street, Fayetteville, North Carolina 28311, telephone number (910) 864-3068.

14.    You are hereby notified that if this foreclosure sale is consummated, the purchaser shall be entitled to possession of the property as of the date of delivery of his deed and if you are still in possession of the premises, you can then be evicted.

15.    You should keep attorneys for the substitute trustee, The Law Firm of Hutchens, Senter & Britton, P.A., 4317 Ramsey Street, Fayetteville, North Carolina 28311, notified in writing of any change in your address. The hearing may be held on a date later than stated in this notice and you will be notified of any change in the hearing date.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, **except as stated below in the instance of bankruptcy protection.**
**IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

This 30th day of November, 2009.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY:    **David R. Ford**

Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

HSB Case No: 1020910

# EXHIBIT J

# EXHIBIT J

NORTH CAROLINA

COUNTY OF CABARRUS

IN THE GENERAL COURT OF JUSTICE

BEFORE THE CLERK

09 SP 1613

In the Matter of the foreclosure of a Deed of Trust
executed by Jennifer L. Wilson in the original amount
of $296,000.00 dated January 18, 2007, recorded in
Book 7295, Page 122, Cabarrus County Registry
Substitute Trustee Services, Inc., Substitute Trustee

MOTION AND ORDER TO CONTINUE

## MOTION FOR CONTINUANCE

The undersigned hereby moves for a continuance of the foreclosure hearing in this matter from January 11, 2010, at 2:00 PM until the January 25, 2010, at 2:00 PM. The reason for continuance is clerk request.

This the 12th day of January, 2010

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

CTS

BY:

Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.
P.O. Box 2505
Fayetteville, NC 28302
Telephone: (910) 864-3068

## ORDER

The hearing in the above-captioned matter is hereby continued until the 25th day of January, 2010, at 2:00 PM.

This the _____ day of _____, 2010.

_____
Clerk of Cabarrus County

HSB Case No: 1020910 FC.FAY

THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, except as stated below in the instance of bankruptcy protection.

IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

# EXHIBIT K

# EXHIBIT K

NORTH CAROLINA

CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE

BEFORE THE CLERK

In the Matter of the foreclosure of a Deed
of Trust executed by Jennifer L. Wilson in
the original amount of $296,000.00 dated
January 18, 2007, recorded in Book 7295,
Page 122, Cabarrus County Registry
Substitute Trustee Services, Inc.,
Substitute Trustee

**ORDER**
09 SP 1613

THIS CAUSE coming on to be heard before the undersigned Honorable _____*Ass't.*_____, Clerk of Superior

Court of Cabarrus County and having heard the evidence and examined the appropriate affidavits and certified copies

documents, makes the following findings of fact:

1.    That SunTrust Bank is the holder of the note sought to be foreclosed and it evidences that this is a vai

debt owed by Jennifer L. Wilson.

2.    That said note is now in default and the instrument securing said debt gives the note holder the right to

foreclose under a power of sale.

3.    That notice of this hearing has been served on the record owners of the real estate and to all other

persons against whom the note holder intends to assert liability for the debt.

4.    That the debtors have shown no valid legal reason why foreclosure should not commence.

5    ☑ That the underlying mortgage debt is not a subprime loan as defined in G.S. 45-101(4)

OR

☐ The loan is a subprime loan under G.S. 45-101(4) and that the pre-foreclosure notice under G.S. 45-102

was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed.

NOW, THEREFORE, I find that the Substitute Trustee can proceed to foreclose under the terms of the above

described Deed of Trust and give notice of and conduct a foreclosure sale as by statute provided.

This __25th__ day of __Jan__, 2010.

_____
*Ass't.* Clerk of Superior Court

Case No: 1020910

# EXHIBIT L

# EXHIBIT L

NORTH CAROLINA

CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE

BEFORE THE CLERK

09 SP 1613

2010 FEB 15  P 1: 45

C.S.C.

In the Matter of the foreclosure of a Deed of Trust
executed by Jennifer L. Wilson in the original
amount of $296,000 dated January 18, 2007,
recorded in Book 7295, Page 122, Cabarrus
County Registry
Substitute Trustee Services, Inc., Substitute
Trustee

POSTPONEMENT

This sale is postponed until 12:30 PM on the 19th day of April, 2010, at the request of the note holder,

as provided for in N.C.G.S. §45-21.21, following an announcement at the courthouse door.

This the 15th day of February, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE, **except as stated below in the instance of bankruptcy protection.**

**IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED
AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO
STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN
ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY
PORTION OF THE DEBT FROM YOU PERSONALLY.**

Case No: 1020910

POSTED: 2-15-10

BY: _____
DEPUTY/ASSISTANT CSC

# EXHIBIT M

# EXHIBIT M

PUBLICATION DATES
May 5, 2010
May 12, 2010

AMENDED NOTICE OF FORECLOSURE SALE

׳ 09 SP 1613

Under and by virtue of the power of sale contained in a certain Deed of Trust made by Jennifer L. Wilson (PRESENT RECORD OWNER(S): Melissa Reel) to State Street Title Group, LLC, Trustee(s), dated the 18th day of January, 2007, and recorded in Book 7295, Page 122, in Cabarrus County Registry, North Carolina, default having been made in the payment of the note thereby secured by the said Deed of Trust and the undersigned, Substitute Trustee Services, Inc. having been substituted as Trustee in said Deed of Trust by an instrument duly recorded in the Office of the Register of Deeds of Cabarrus County, North Carolina and the holder of the note evidencing said indebtedness having directed that the Deed of Trust be foreclosed, the undersigned Substitute Trustee will offer for sale at the courthouse door in the City of Concord, Cabarrus County, North Carolina, or the customary location designated for foreclosure sales, at 12:30 PM on May 17, 2010 and will sell to the highest bidder for cash the following real estate situated  in the County of Cabarrus, North Carolina, and being more particularly described as follows:

BEING all of Lot 129 of HEATHERSTONE, Phase 2, Map 3, as shown on map thereof recorded in Map Book 44, Page 47, in the Office of the Register of Deeds of Cabarrus County, North Carolina.  Together with improvements located thereon; said property being located at 7801 Pinecroft Court, Harrisburg, North Carolina.

Parcel ID Number:  01-022C-0129 000

Trustee may, in the Trustee's sole discretion, delay the sale for up to one hour as provided in NCGS §45-21.23.

Should the property be purchased by a third party, that person must pay the tax of Forty-Five Cents ($0.45) per One Hundred Dollars ($100.00) required by NCGS §7A-308(a)(1).

The property to be offered pursuant to this notice of sale is being offered for sale, transfer and conveyance "AS IS, WHERE IS." Neither the Trustee nor the holder of the note secured by the deed of trust/security agreement, or both, being foreclosed, nor the officers, directors, attorneys, employees, agents or authorized representative of either the Trustee or the holder of the note make any representation or warranty relating to the title or any physical, environmental, health or safety conditions existing in, on, at or relating to the property being offered for sale, and any and all responsibilities or liabilities arising out of or in any way relating to any such condition expressly are disclaimed.  Also, this property is being sold subject to all taxes, special assessments, and prior liens or encumbrances of record and any recorded releases.  Said property is also being sold subject to applicable Federal and State laws.

A cash deposit or cashier's check (no personal checks) of five percent (5%) of the purchase price, or seven hundred fifty dollars ($750.00), whichever is greater, will be required at the time of the sale.

# EXHIBIT M

An order for possession of the property may be issued pursuant to G.S. 45-21.29 in favor of the purchaser and against the party or parties in possession by the clerk of superior court of the county in which the property is sold.

Any person who occupies the property pursuant to a rental agreement entered into or renewed on or after October 1, 2007, may after receiving the notice of sale, terminate the rental agreement upon 10 days' written notice to the landlord. Upon termination of a rental agreement, the tenant is liable for rent due under the rental agreement prorated to the effective date of the termination.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, **except as stated below in the instance of bankruptcy protection.**

**IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

This 26th day of April, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

P.O. Box 1028
4317 Ramsey Street
Fayetteville, North Carolina 28311
http://sales.hsbfirm.com
Case No: 1020910

# EXHIBIT M

NORTH CAROLINA
CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE
BEFORE THE CLERK
09 SP 1613

## CERTIFICATION OF MAILING

**David R Frd**

I, _____, Attorney at Law for Substitute Trustee Services, Inc., Substitute Trustee, do hereby certify that on the April 26, 2010, I caused to be deposited in the United States mail a Notice of Foreclosure Sale dated April 26, 2010.

Said Notice was forwarded by First Class Mail to the following:

SunTrust Mortgage, Inc.
P.O. Box 27767
Richmond, VA 23261-7767

Occupant(s)
7801 Pinecroft Court
Harrisburg, NC 28075

Melissa Reel
7801 Pinecroft Court
Harrisburg, NC 28075

Jennifer L. Wilson
7801 Pinecroft Court
Harrisburg, NC 28075

This the 26th day of April, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

Case No: 1020910 (FC.FAY)

# EXHIBIT N

# EXHIBIT N

FORM B10 (Official Form 10) (12/08)

| United States Bankruptcy Court Western District of North Carolina | PROOF OF CLAIM |
|---|---|
| Name of Debtor     Jennifer Wilson | Case Number     10-31255 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>SunTrust Mortgage, Inc. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>P.O. Box 27767<br>Richmond, VA 23261-7767     Sarah D. Miranda<br>PO Box 2505<br>Fayetteville, NC 28302<br><br>Telephone number: 800-443-1032 | **Court Claim Number:** _____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent *(if different from above)*:<br><br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $_____312775.01_____<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:** _____Money Loaned_____<br>*(See instruction #2)*<br><br>**3. Last four digits of any number by which creditor identifies debtor:** _____1983_____<br><br>**3a. Debtor may have scheduled account as:** _____<br>*(See instruction #3a)* | ☐ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4). |
| **4. Secured Claim** *(See instruction #4)*<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:  ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe: _____<br><br>Value of Property: $_____0.00_____ Annual Interest Rate: 6.75%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ 29732.05  Basis for perfection: _____<br><br>**Amount of Secured Claim:** $____312775.01____ **Amount Unsecured:** $_____0.00_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_).<br><br>**Amount entitled to priority**<br>$ _____<br><br>*Amounts are subject to adjustment on 4/1/2010 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | |
|---|---|
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **FOR COURT USE ONLY** |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See definition of "redacted" on reverse side.)* | **FILED**<br>U.S. Bankruptcy Court<br>Western District of NC<br><br>5/17/2010<br><br>David E. Welch, Clerk |
| Date<br>5/17/2010 | Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Filing a proof of claim electronically deems the claim signed by the creditor or authorized person | |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

EXHIBIT N

5

B10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT Western District of North Carolina | PROOF OF CLAIM |
|---|---|
| Name of Debtor:<br>Jennifer L. Wilson<br>aka Jennifer L. Rivera | Case Number:<br>**10-31255** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>SunTrust Mortgage, Inc. | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>SunTrust Mortgage, Inc.<br>P.O. Box 27767<br>Richmond, VA 23261-7767<br>Telephone number: 800-443-1032 | Court Claim Number: _____<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above)<br><br><br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the Debtor or trustee in this case |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed: $ 312,775.01<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br><br>2. Basis for Claim:  Money Loaned<br>(See instruction #2 on reverse side.)<br>3. Last four digit of any number by which creditor identifies debtor: 1983<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side)<br>4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if you claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>Value of Property: $ 0.00   Annual Interest Rate: 6.750 %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>If any: $ 29,732.05   Basis for perfection: _____<br><br>Amount of Secured Claim: $ 312,775.01   Amount Unsecured: $ 0.00 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(4).<br><br>☐ Contributions to employee benefit plan -- 11 U.S.C. §507(a)(5)<br><br>☐ Up to $2,425* of deposits toward purchase, lease, or rental property or services for personal, family, or household use -11 U.S.C. §507(a)(7)<br><br>☐ Taxes or penalties owed to governmental units 11 U.S.C. §507(a)(8)<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_)<br>Amount entitle to priority:<br><br>$ 0.00 |
| 6. Credits: The amount of all payments on this claim has been credited to the purpose of making this proof of claim.<br><br>7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized states or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. (See definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
| Date:<br>Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>5/13/2010   Joseph J. Vonnegut, 32974/Sarah D. Miranda, 29354<br>Phone: (910) 864-2668 | File Claim in Duplicate with Trustee |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT N

ADDENDUM TO PROOF OF CLAIM FOR:

Jennifer L. Wilson
aka Jennifer L. Rivera

BANKRUPTCY CASE NUMBER:                                                    10-31255
LOAN NUMBER:                                                                      1983

ARREARAGES:

| | | |
|---|---|---:|
| 8 Payment(s) @ 2,267.82 | (07/09 - 02/10) | $18,142.56 |
| 3 Payment(s) @ 2,215.69 | (03/10 - 05/10) | $6,647.07 |
| Accrued Late Charges | | 797.90 |
| Property Inspection | | 90.00 |
| Foreclosure Fees and Expenses | | 3,555.16 |
| Escrow Shortage | | 169.36 |
| Appraisal Fee | | 180.00 |
| Legal Fee for Case Review, POC Preparation and Review | | 150.00 |

TOTAL ARREARAGE:

                                                                                   $29,732.05

TOTAL INDEBTEDNESS:

| | |
|---|---:|
| Principal Balance | $288,294.97 |
| Interest through May 4, 2010 | 17,998.20 |
| Accrued Late Charges | 767.90 |
| Property Inspection | 90.00 |
| Foreclosure Fees & Expenses | 3,555.16 |
| Appraisal Fee | 180.00 |
| Escrow Advance | 1,738.78 |
| Legal Fee for Case Review, POC Preparation and Review | 150.00 |

TOTAL INDEBTEDNESS:                                                        $312,775.01

**Effective June 1, 2010, the monthly mortgage payment amount is $2,215.69.
The interest rate is 6.750%.**

**Please forward all payments to:**

**SunTrust Mortgage, Inc.
P.O. Box 27767
Richmond, VA  23261-7767**

**Please forward all correspondence and court pleadings
to:**

**The Law Firm of Hutchens, Senter & Britton, P.A.
Post Office Box 2505
Fayetteville, NC  28302**

**Loan No:  1983
Property Address:
7801 Pinecroft Court
Harrisburg, NC  28075**

I am duly admitted to practice law before this Court, was retained by the Real Property Creditor or its duly designated
agent and that no part of the fee has been shared with any third party and no agreement to share any part of the fee has
been entered into with any third party.

Joseph J. Vonnegut/Sarah D. Miranda
THE LAW FIRM OF HUTCHENS, SENTER & BRITTON, P.A.
N.C. Bar No.: 32974/29354

Local Form 14

# EXHIBIT N

March 1, 2010

## ADDENDUM TO CHAPTER 13 PROOF OF CLAIM FOR REAL PROPERTY CREDITOR
### *As Amended For Cases Filed On or After March 1, 2010*

### Creditor Information

Name of Creditor:   SunTrust Mortgage, Inc.                   Contact Person: _____

Telephone#   800-443-1032   Fax# _____   Email Address: _____

Address to Which Payments Should be Sent:   SunTrust Mortgage, Inc.

P.O. Box 27767, Richmond, VA  23261-7767

Address to Which Correspondence Should be Sent:   The Law Firm of Hutchens, Senter & Britton, P.A.

Post Office Box 2505, Fayetteville, NC  28302

Creditor Attorney Name/Address   The Law Firm of Hutchens, Senter & Britton, P.A.


Telephone#   (910) 864-3068   Fax#   (910) 864-6177   Email Address:   hsbbkydept@hutchensandsenter.com

### Loan Information

Post-Petition Monthly Payment Amount:   2,215.69            Date Payment Is Due:   June 1, 2010

        Type of Loan [check one]   Fixed [X]   Adjustable [ ]

                Last Adjustment Date _____

                Next Adjustment Date _____

                Post-Petition Interest Rate   6.750% _____

### Post-Petition Payment Information

Principal and Interest   $1,919.85      ; Monthly Taxes   $237.01      ; Monthly Insurance  $58.83

Other _____   $ _____ ; Other _____   $ _____

        Total Monthly Payment Amount   $2,215.69

CM/ECF - NCWB                    EXHIBIT N                    Page 1 of 1

# File a Notice:

10-31255 Jennifer L. Wilson

### U.S. Bankruptcy Court

### Western District of North Carolina

Notice of Electronic Filing

The following transaction was received from Sarah Dees Miranda entered on 5/13/2010 at 4:08 PM
EDT and filed on 5/13/2010
**Case Name:**      Jennifer L. Wilson
**Case Number:**     10-31255
**Document Number:** 11

**Docket Text:**
Notice of Appearance and Request for Notice filed by Sarah Dees Miranda on behalf of SunTrust
Mortgage, Inc.. (Miranda, Sarah)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** F:\users\christina.moore\POC E-File\May 10\wilson 2015 - noa.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=971968881 [Date=5/13/2010] [FileNumber=7509163-0]
[3c1c55119d61fc8669bb76bb9ceefee3126f6073c7ef540ba735e67c3ac8fe98c0ae
a6dadb7d3bb4f74de3acb4c5066ae74fbecba4355edd23b12a1230dc1d9f21ddfa7c1b
3a53bd2a0f82b34075f8414f99a378c0f2986f10896645503bd958c2d3ee5bf9d5df91
3d73e0e0994038bf682c85714a58ddf761112eb3333bc720]]

**10-31255 Notice will be electronically mailed to:**

Sarah Dees Miranda on behalf of Creditor SunTrust Mortgage, Inc.
hsbbkydept@hutchensandsenter.com

Warren L. Tadlock
wtadlock@ch13clt.com

**10-31255 Notice will not be electronically mailed to:**

Jennifer L. Wilson
7801 Pinecroft Court
Harrisburg, NC 28075

# EXHIBIT N

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

IN THE MATTER OF:              )
                              )
JENNIFER L. WILSON            )          CASE NO. 10-31255
AKA JENNIFER L. RIVERA        )
SSN: xxx-xx-8009              )          CHAPTER 13
                    DEBTOR    )
                              )
                              )
_____ )

### NOTICE OF APPEARANCE

Sarah D. Miranda, of The Law Firm of Hutchens, Senter & Britton, P.A., does herewith give notice of her appearance in the above-styled matter as attorney for SunTrust Mortgage, Inc.

Please mail all Notices and other documents required to be served upon creditors to the undersigned at the following address:

SunTrust Mortgage, Inc.
c/o Sarah D. Miranda
THE LAW FIRM OF HUTCHENS, SENTER & BRITTON, P.A.
Bankruptcy Department
Post Office Box 2505
Fayetteville, NC 28302

This, the 11th day of May, 2010.

THE LAW FIRM OF HUTCHENS, SENTER & BRITTON, P.A.

BY: s/Sarah D. Miranda
       Sarah D. Miranda
       Attorney for Movant
       4317 Ramsey Street
       Post Office Box 2505
       Fayetteville, NC 28302
       (910) 864-2668
       State Bar No. 29354

# EXHIBIT N

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date this paper was served upon the following parties by depositing a copy enclosed in a postpaid, properly addressed wrapper in a post office or official depository under the exclusive care and custody of the United States Postal Service or via the appropriate electronic servicer:

PRO SE Debtor:
Jennifer L. Wilson
7801 Pinecroft Court
Harrisburg, NC 28075

Warren L. Tadlock
Chapter 13 Trustee
4600 Park Road
Suite 101
Charlotte, NC  28209-0201

This, the 11th day of May, 2010.

THE LAW FIRM OF HUTCHENS, SENTER & BRITTON, P.A.

BY:  s/Sarah D. Miranda _____
          Sarah D. Miranda
          Attorney for Movant
          4317 Ramsey Street
          Post Office Box 2505
          Fayetteville, NC 28302
          (910) 864-2668
          State Bar No. 29354

# EXHIBIT N



AP#
LN#
MIN:

# NOTE

January 18, 2007                    Atlanta                         Georgia

[Date]                               [City]                          [State]

7801 PINECROFT COURT      ,HARRISBURG,NC 28075

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 296,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is

SunTrust Mortgage, Inc. d/b/a Sun America Mortgage,
a Virginia Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of     6.7500     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    March 1, 2007    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on    February 1, 2037    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at   SunTrust Mortgage, Inc., P.O. Box 79041,
Baltimore, MD 21279-0041                                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,919.85          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Wolters Kluwer Financial Services           Form 3200 1/01
VMP ®-5N (0207).01
Page 1 of 3                               Initials:



# EXHIBIT N



AP#
LN#

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    4.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials

# EXHIBIT N

AP# 
LN#

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
                    -Borrower

_____ (Seal)
JENNIFER L WILSON          -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

*[Sign Original Only]*

# EXHIBIT N



**SunTrust**
MORTGAGE



A P #
L N #

## NAME AFFIDAVIT

**STATE OF**
**COUNTY OF**

Before me, the undersigned, a Notary Public in and for said County and State, on this day, personally   appeared   J E N N I F E R   L   W I L S O N

who, after being by me first duly sworn, under oath does depose and say:

That,  J E N N I F E R   L   W I L S O N                                                              as

the name appears on the Note and Security Instrument in connection with the purchase of the property known as:   7 8 0 1   P I N E C R O F T   C O U R T

H A R R I S B U R G , N C   2 8 0 7 5

is one and the same person as: J E N N I F E R   L   W I L S O N .

as the name appears on the various documents that have been presented in conjunction with the loan request.

_Borrower_ JENNIFER L WILSON

**STATE OF** NC
**COUNTY OF** Mecklenburg
The foregoing instrument was acknowledged before me  the undersigned                          by
J E N N I F E R   L   W I L S O N                                   who is personally known to me or who has produced
NC DL                                          as identification.

TERESA G. DAGE
NOTARY
PUBLIC
MECKLENBURG CO NC

Notary Public
Serial Number:

My Commission Expires July 2, 2010

# EXHIBIT N

BOOK 7295 PAGE 122

## 2953

CABARRUS COUNTY
FILED
01/25/2007 10:38 AM
LINDA F. MCABEE
Register Of Deeds
By. _____ Deputy/Asst.

# DEED OF TRUST

Return To:    Suntrust Mortgage
(addressbelow)

Prepared By: HEATHER AUCELLO
SunTrust Mortgage, Inc. d/b/a Sun America Mortgage
5775C Glenridge Dr., Suite 200
Atlanta, GA 30328

AP#: ▮▮▮▮▮▮    MIN ▮▮▮▮▮▮▮▮▮
LN#: ▮▮▮▮▮▮

19/68

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated       January 18, 2007       ,
together with all Riders to this document.
**(B) "Borrower"** is
JENNIFER L WILSON   (married)

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is SunTrust Mortgage, Inc. d/b/a Sun America Mortgage

Lender is a Virginia Corporation
organized and existing under the laws of     the State of Virginia

NORTH CAROLINA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3034  1/01

VMP -6A(NC) (0510)
Page 1 of 15          Initials
    VMP Mortgage Solutions, Inc. (800)521-7291



# EXHIBIT N



. AP#:
. LN#:

ᴮᴼᴼᴷ 7295 ᴾᴬᴳᴱ 123

Lender's address is   901 Sennes Avenue. Richmond. VA 23224

**(D) "Trustee"** is   State Street Title Group, LLC

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated     January 18. 2007
The Note states that Borrower owes Lender   Two Hundred Ninety Six Thousand and no/100

Dollars

(U.S. $ 296.000.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     February 1. 2037

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider           ☒ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider   ☐ Other(s) [specify]

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-6A(NC) (0510)                    Page 2 of 15          Initials          Form 3034  1/01

BOOK 7295 PAGE 124    EXHIBIT N



· AP#:
LN#:

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the

Office of Records               of               Cabarrus               :
[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

See Attached legal description

Parcel ID Number:  01-022C-0129.000               which currently has the address of
7801 PINECROFT COURT                                          [Street]
HARRISBURG                        [City], North Carolina   28075   [Zip Code]
("Property Address"):

    TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VMP -6A(NC) (0510)               Page 3 of 15               Initials               Form 3034  1/01

# EXHIBIT N



THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 the Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and

Initials:

# EXHIBIT N

BOOK 7295 PAGE 126

AP#:
LN#:

assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to

# EXHIBIT N



AP#:
LN#:

300K 7295 PAGE 127

prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

Initials:

# EXHIBIT N



BOOK 7295 PAGE 128

AP#:
LN#:

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is

VMP -6A(NC) (0510)                    Page 7 of 15          Initials:                    Form 3034  1/01

# EXHIBIT N



AP#:
LN#:

BOOK 7295 PAGE 129

reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

VMP-6A(NC) (0510)                    Page 8 of 15          Initials:                    Form 3034  1/01

# EXHIBIT N



BOOK 7295 PAGE 130

.AP#: ▮▮▮▮▮▮
LN#: ▮▮▮▮▮▮▮▮▮

provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material

Initials:

# EXHIBIT N



AP#:
LN#:

.BOOK 7295 PAGE 131

impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

VMP-6A(NC) (0510)                    Page 10 of 15                    Initials:                    Form 3034  1/01

# EXHIBIT N

BOOK 7295 PAGE 132



Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects



VMP-6A(NC) (0510)                    Page 11 of 16          Initials: _____          Form 3034  1/01

# EXHIBIT N

BOOK 7235 PAGE 133

.AP#:
LN#:

Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period ·after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP-6A(NC) (0510)                    Page 12 of 16                    Initials:                    Form 3034   1/01



BOOK 7295 PAGE 134 **EXHIBIT N**

AP#:
LN#:

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** Attorneys' fees must be reasonable.

Initials:

VMP-6A(NC) (0510)                    Page 13 of 15                    Form 3034  1/01

# EXHIBIT N

BOOK 7295 PAGE 136

AP#: ███████
LN#: ███████

**STATE OF NORTH CAROLINA,**   Mecklenburg                              **County ss:**

I,   Teresa G. Dagenhart
a Notary Public of the County of   Mecklenburg                    , State of North Carolina, do hereby
certify that

Jennifer L. Wilson

who is/are known to me or proved to me on the basis of satisfactory evidence to be the person(s) described,
personally appeared before me this day, each acknowledging to me that he/she/they voluntarily signed the
foregoing instrument for the purpose stated therein, and in the capacity indicated.

Witness my hand and official seal this    18th         day of   January, 2007         .

My Commission Expires:
July 2, 2010

Notary Public
Teresa G. Dagenhart

**STATE OF NORTH CAROLINA,**                                          **County ss:**

The foregoing certificate of
a Notary Public of the County of                      , State of
is certified to be correct.

This              day of

Registrar of Deeds

By _____
Deputy Assistant

EXHIBIT N

BOOK 7295 PAGE 138

AP# 
LN#

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        18th        day of
January, 2007                              , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
SunTrust Mortgage, Inc. d/b/a Sun America Mortgage .
a Virginia Corporation
(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

7801 PINECROFT COURT          ,HARRISBURG,NC 28075
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

an instrument recorded in Book 4998, page 25, as amended and/or supplemented,
said Registry,

(the "Declaration"). The Property is a part of a planned unit development known as
HEATHERSTONE

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
   PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
   A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
                              Page 1 of 3              Initials: 
VMP®-7R (0411)          VMP Mortgage Solutions, Inc. (800)521-7291

EXHIBIT N

BOOK 7295 PAGE 139

AP# 
LN#

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials:

VMP-7R (0411)                    Page 2 of 3                    Form 3150 1/01

# EXHIBIT N

BOOK **7295** PAGE **140**

AP# ▮▮▮▮▮▮▮▮
LN# ▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)        _____ (Seal)
              -Borrower        JENNIFER L WILSON              -Borrower

_____ (Seal)        _____ (Seal)
              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
              -Borrower                                        -Borrower

VMP®-7R (0411)                 Page 3 of 3                    Form 3150 1/01

# EXHIBIT O

# EXHIBIT O

NORTH CAROLINA

CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE
BEFORE THE CLERK
09 SP 1613



In the Matter of the Foreclosure of a Deed of
Trust executed by Jennifer L. Wilson
(PRESENT RECORD OWNER(S): Melissa
Reel) in the original amount of $296,000.00
dated January 18, 2007, recorded in Book
7295, Page 122, Cabarrus County Registry
Substitute Trustee Services, Inc., Substitute
Trustee

**MOTION TO REACTIVATE
FORECLOSURE FILE**

NOW COMES Substitute Trustee Services, Inc., Substitute Trustee, Movant, and in accordance with Rule 5(a) of NC Rules of Civil Procedures, moves this Court for an Ex Parte Order to reactivate the Special Proceeding pertaining to the above-captioned foreclosure and in support thereof shows the Court that:

1.     On January 25, 2010 an Order was entered by the Clerk of Superior Court of Cabarrus County allowing the foreclosure sale. The filing of Bankruptcy Case Number 10-31255 stayed the proceeding rendering this file inactive and closed without prejudice to either party to move to reopen the file and proceed with the proceeding with additional costs when permitted by the Bankruptcy Court and Code.

2.     On July 6, 2010, an Order was entered by the United States Bankruptcy Court Western District of North Carolina dismissing the case allowing the note holder to foreclose, as evidenced by attached copy of said Order.

WHEREFORE, Movant prays the Court that an Ex Parte Order be entered reactivating this file and that the Substitute Trustee be permitted to conclude the foreclosure in accordance with applicable law.

This 30th day of August, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
    David R. Ford, Attorney at Law
    The Law Firm of Hutchens, Senter & Britton, P.A.
    Attorneys for Substitute Trustee Services, Inc.
    4317 Ramsey Street
    Fayetteville, NC 28311
    Telephone: (910) 864-3068

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, **except as stated below in the instance of bankruptcy protection.**

**IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

HSB Case No: 1020910 (FC)

# EXHIBIT O



**UNITED STATES BANKRUPTCY COURT**
**Western District of North Carolina**
**Charlotte Division**

Case No. 10-31255
Chapter 13

In Re: Debtor(s) (name(s) used in the last 8 years, including married, maiden, trade, and address):

Jennifer L. Wilson
aka Jennifer L. Rivera
7801 Pinecroft Court
Harrisburg, NC 28075
Social Security No.: xxx-xx-8009

## COURT'S NOTICE OF ENTRY OF ORDER
## DISMISSING CASE AND NOTICE OF FILING FEE DUE

NOTICE IS HEREBY GIVEN that on July 6, 2010 an Order was entered dismissing this case.

NOTICE IS FURTHER GIVEN that the filing fees for this case remain due and owing. The debtor(s) should immediately forward cash, a certified check or money order, payable to the U.S. Bankruptcy Court, in the amount of $136.00. This Court will not entertain a motion for reconsideration of this order of dismissal unless all unpaid fees are paid at the time the motion is made.

Dated: July 6, 2010

David E. Weich
Clerk of Court

Electronically filed and signed (7/6/10)

# EXHIBIT P

# EXHIBIT P

PUBLICATION DATES
October 20, 2010
October 27, 2010

FILED

## AMENDED NOTICE OF FORECLOSURE SALE

2010 OCT 11  P 1: 32

### 09 SP 1613

CY. C.S.C.

Under and by virtue of the power of sale contained in a certain Deed of Trust made by Jennifer L. Wilson

BY_____

(PRESENT RECORD OWNER(S): Melissa Reel) to State Street Title Group, LLC, Trustee(s), dated the 18th day of

January, 2007, and recorded in Book 7295, Page 122, in Cabarrus County Registry, North Carolina, default having been

made in the payment of the note thereby secured by the said Deed of Trust and the undersigned, Substitute Trustee

Services, Inc. having been substituted as Trustee in said Deed of Trust by an instrument duly recorded in the Office of the

Register of Deeds of Cabarrus County, North Carolina and the holder of the note evidencing said indebtedness having

directed that the Deed of Trust be foreclosed, the undersigned Substitute Trustee will offer for sale at the courthouse door

in the City of Concord, Cabarrus County, North Carolina, or the customary location designated for foreclosure sales, at

12:30 PM on November 1, 2010 and will sell to the highest bidder for cash the following real estate situated in the County

of Cabarrus, North Carolina, and being more particularly described as follows:

BEING all of Lot 129 of HEATHERSTONE, Phase 2, Map 3, as shown on map thereof recorded in Map Book 44, Page
47, in the Office of the Register of Deeds of Cabarrus County, North Carolina. Together with improvements located
thereon; said property being located at 7801 Pinecroft Court, Harrisburg, North Carolina.

Parcel ID Number: 01-022C-0129.000

Trustee may, in the Trustee's sole discretion, delay the sale for up to one hour as provided in NCGS §45-21.23.

Should the property be purchased by a third party, that person must pay the tax of Forty-Five Cents ($0.45) per

One Hundred Dollars ($100.00) required by NCGS §7A-308(a)(1).

The property to be offered pursuant to this notice of sale is being offered for sale, transfer and conveyance "AS

IS, WHERE IS." Neither the Trustee nor the holder of the note secured by the deed of trust/security agreement, or both,

being foreclosed, nor the officers, directors, attorneys, employees, agents or authorized representative of either the

Trustee or the holder of the note make any representation or warranty relating to the title or any physical, environmental,

health or safety conditions existing in, on, at or relating to the property being offered for sale, and any and all

responsibilities or liabilities arising out of or in any way relating to any such condition expressly are disclaimed. Also, this

property is being sold subject to all taxes, special assessments, and prior liens or encumbrances of record and any

recorded releases. Said property is also being sold subject to applicable Federal and State laws.

A cash deposit or cashier's check (no personal checks) of five percent (5%) of the purchase price, or seven

hundred fifty dollars ($750.00), whichever is greater, will be required at the time of the sale.

# EXHIBIT P

An order for possession of the property may be issued pursuant to G.S. 45-21.29 in favor of the purchaser and against the party or parties in possession by the clerk of superior court of the county in which the property is sold.

Any person who occupies the property pursuant to a rental agreement entered into or renewed on or after October 1, 2007, may after receiving the notice of sale, terminate the rental agreement upon 10 days' written notice to the landlord.  Upon termination of a rental agreement, the tenant is liable for rent due under the rental agreement prorated to the effective date of the termination.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.  THE PURPOSE OF THIS COMMUNICATION IS TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, **except as stated below in the instance of bankruptcy protection.**

**IF YOU ARE UNDER THE PROTECTION OF THE BANKRUPTCY COURT OR HAVE BEEN DISCHARGED AS A RESULT OF A BANKRUPTCY PROCEEDING, THIS NOTICE IS GIVEN TO YOU PURSUANT TO STATUTORY REQUIREMENT AND FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

This 11th day of October, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

P.O. Box 1028
4317 Ramsey Street
Fayetteville, North Carolina 28311
http://sales.hsbfirm.com
Case No: 1020910

# EXHIBIT Q

# EXHIBIT Q

| | |
|---|---|
| **STATE OF NORTH CAROLINA** | File No.<br>09 SP 1613 |
| **CABARRUS COUNTY** | In the General Court of Justice<br>Superior Court Division<br>Before the Clerk |

FILED

Mortgagors-Grantors  Jennifer L. Wilson

2010 NOV 15  P 1: 30

Mortgagee-Trustee  State Street Title Group, LLC

Deed of Trust-Book And Page No.

Book 7295, Page 122,

**REPORT OF FORECLOSURE**

**SALE/RESALE**

G.S. 45-21.26

If Not Recorded, Description Of Property

Owners Of Record, If Not Original Mortgagors  Melissa Reel

☒  Report of Sale

By authority of the power of sale contained in the above Mortgage or Deed of Trust and by authorization of the Clerk of Superior Court, there having been default under the terms of the obligation secured, the undersigned offered for sale at public auction, and sold the real property described above:

☐  Report of Resale

As directed by Order of Resale by the Clerk of Superior Court issued upon the default of the successful bidder in this foreclosure proceeding, the undersigned offered for resale at public auction, after due and lawful advertisement and sold the real property described in the Mortgage or Deed of Trust described above:

| Name And Address of Purchaser And Highest Bidder<br>SunTrust Bank<br>c/o SunTrust Mortgage, Inc.; P.O. Box 27767<br>Richmond, VA 23261 | Amount Bid<br>$  245,000.00 |
|---|---|
| | Place Of Sale<br>Concord, North Carolina |
| | Date<br>November 15, 2010 | Time Of Sale<br>12:00 AM   ☐ AM   ☐ PM |

Date Of Report

November 15, 2010

Name Of Mortgagee-Trustee, Attorney-Agent
Substitute Trustee Services, Inc., Substitute Trustee

Signature Of Mortgagee-Trustee/Attorney-Agent

*For Clerk's Use*

Last Date For Upset Bid   11-29-10

Minimum Amount Of Next Upset Bid
$  257,250.00

Amount Of Deposit Required To Upset Bid
$  12,862.50

AOC SP-400, Rev 8/97
* 1997 Administrative Office of the Courts          Original-File Copy-          AttorneyCase No: 1020910

# EXHIBIT R

# EXHIBIT R

NORTH CAROLINA

CABARRUS COUNTY

IN THE GENERAL COURT OF JUSTICE

BEFORE THE CLERK

In the Matter of the foreclosure of a Deed of Trust executed by Jennifer L. Wilson (PRESENT RECORD OWNER(S): Melissa Reel) in the original amount of $296,000.00 dated January 18, 2007, recorded in Book 7295, Page 122,Cabarrus County Registry Substitute Trustee Services, Inc., Substitute Trustee

ASSIGNMENT OF BID

09 SP 1613

Under and by virtue of the authority duly granted the undersigned in an agreement recorded in Bool 08966, Page 0122, Cabarrus County Registry, North Carolina, this bid is hereby assigned from SunTrust B to Deutsche Bank Trust Company Americas as Trustee Residential Funding Company, LLC fka Residentia Funding Corporation Attorney in Fact.

This the 30th day of November, 2010.

SUBSTITUTE TRUSTEE SERVICES, INC.
SUBSTITUTE TRUSTEE

BY: _____
NATASHA M. BARONE
_____
Attorney at Law
The Law Firm of Hutchens, Senter & Britton, P.A.
Attorneys for Substitute Trustee Services, Inc.

NORTH CAROLINA - CUMBERLAND COUNTY

I, Julie T. Webb, a Notary Public of Cumberland County, North Carolina, do hereby certify that NATASHA M. BARONE, Attorney at Law personally came before me this day and acknowledged that he/s is an Attorney at Law for Substitute Trustee Services, Inc., a North Carolina Corporation, Substitute Trustee, and that he/she as an Attorney at Law, being authorized to do so, executed the foregoing on behalf of the corporation.

WITNESS my Hand and Official Seal, this the 30th day of November, 2010.

_____
Notary Public

My Commission Expires: December 24, 2012

HSB Case No. 1029910 (F(