MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Stefan W. Engelhardt
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------
                                                    )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )        Chapter 11
                                                    )
                                   Debtors.         )        Jointly Administered
                                                    )
-----------------------------------------------------------------------

**DEBTORS' REPLY TO DIGITAL LEWISVILLE, LLC'S (I) OBJECTION TO THE
DEBTORS' (A) SALE MOTION, AND (B) NOTICE OF INTENT TO ASSUME AND
ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
(II) SUPPLEMENTAL LIMITED OBJECTION TO THE DEBTORS' SALE MOTION,
AND IN PARTICULAR, THE DEBTORS' PROPOSED ORDER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 2

BACKGROUND ..................................................................................................... 3

    A.    Chapter 11 Cases................................................................................. 3

    B.    Background Regarding the Digital Lewisville Lease ........................... 3

ARGUMENT ......................................................................................................... 5

    A.    Digital Is Not Entitled to the Cures Requested .................................... 5

        1.    Monetary Cure Request ............................................................ 5

        2.    Non-Monetary Cure Requests................................................... 10

    B.    The Debtors May Sell the Assets Free and Clear of Pre-Closing Liabilities....... 12

    C.    The Proposed Transition Services Agreement Does Not Violate the Lease ....... 12

    D.    The Debtors May Assume and Assign the Entire Lease..................................... 13

    E.    The Debtors Are No Longer Requesting the Waiver of the 14-Day Stay ........... 14

    F.    The Debtors Are Not Liable For Digital's Attorneys' Fees ................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

718 Assocs., Ltd. v. Sunwest N.O.P., Inc.,
    1 S.W.3d 355 (Tex. App. 1999)........................................................................6, 7

Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc. (In re Allied Tech., Inc.),
    25 B.R. 484 (Bankr. S.D. Ohio 1982).................................................................13

Davis v. Vidal,
    151 S.W. 290 (Tex. 1912)..................................................................................6, 7

In re 2712 Mission Partners, L.P.,
    2010 Bankr. LEXIS 333 (Bankr. N.D. Cal. Jan. 22, 2010) ..............................11

In re Best Prods. Co., Inc.,
    148 B.R. 413 (Bankr. S.D.N.Y. 1992)...............................................................14

In re Capmark Fin. Grp. Inc.,
    No. 09-13684 (Bankr. D. Del. Oct. 25, 2009) ...................................................12

In re Empire Equities Capital Corp.,
    405 B.R. 687 (Bankr. S.D.N.Y. 2009)...............................................................11

In re M. Fine Lumber Co., Inc.,
    383 B.R. 565 (Bankr. E.D.N.Y. 2008)...............................................................14

In re Pro-Care Auto. Serv. Solutions LLC,
    No. 06-10605 (Bankr. N.D. Ohio Apr. 28, 2006)..............................................12

Nottingham Manor Owners Ass'n v. El Paso Elec. Co.,
    260 S.W.3d 186 (Tex. App. 2008).......................................................................7

Nw. Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines Inc.),
    608 F.3d 139 (2d Cir. N.Y. 2010)......................................................................11

STATUTES

11 U.S.C. § 365.......................................................................................................13, 14

11 U.S.C. § 365(b)........................................................................................................14

11 U.S.C. § 365(b)(1)(A)..............................................................................................11

11 U.S.C. § 541.............................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 6004(h) ..........................................................................................................14

Fed. R. Bankr. P. 6006(d) ..........................................................................................................14

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

   The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1] submit this reply (the "Reply") to Digital Lewisville, LLC's: (i) *Limited*

*Objection to Debtors' Motion for Orders: (A)(I) Authorizing and Approving Sale Procedures,*

*Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale*

*Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief*

*and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims,*

*Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements*

*Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 278] (the

"Original Sale Objection"); (ii) *Objection to: (I) Debtors' Motion for Orders: (A)(I) Authorizing*

*and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II)*

*Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof;*

*and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and*

*Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving*

*Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain*

*Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief;*

*and (II) Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts,*

*Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property*

*and (II) Cure Amounts Related Thereto* [Docket No. 1649] (the "Cure Objection"); and

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on
Exhibit 1 to the Whitlinger Affidavit (defined below).

1

(iii) *Supplemental Objection to Debtors' Sale Motion, in Particular, Debtors' Proposed Order* [Docket No. 1990] (the "Supplemental Objection," and collectively with the Original Sale Objection and the Cure Objection, the "Objection").  In support of the Reply, the Debtors rely upon, and incorporate by reference, the *Debtors' Omnibus Reply to Objections to the Debtors' Sale Motion* and the related declarations, each filed contemporaneously herewith (the "Omnibus Reply")[2] and the declaration of Joan Burrell, Director, Corporate Workplace of Ally Financial Inc. ("AFI"), in support of the Reply (the "Burrell Decl."), a copy of which is annexed hereto as Exhibit 1.  In further support of the Reply, the Debtors, by and through their undersigned counsel, respectfully represent:

## PRELIMINARY STATEMENT

1.    The objection of Digital Lewisville, LLC ("Digital") relates to (i) a single lease agreement between Digital and Debtor GMAC Mortgage, LLC ("GMACM") for a data center in Texas, which has held, and continues to hold, data that supports the operations of both the Debtors and non-debtor AFI, and (ii) a transaction undertaken by Debtor EPRE LLC ("EPRE") and non-debtor AFI immediately prior to the filing of these Chapter 11 cases, embodied in a Purchase and Sale Agreement, dated as of May 9, 2012 (the "Purchase Agreement"), that includes (a) the purchase of an interest in property in Minnesota owned by EPRE (which also houses a data center), and (b) the purported partial assignment of an interest in GMACM's lease with Digital.  The transaction was executed in an effort to alleviate potential concerns of AFI's regulators over AFI's data being housed in space leased or owned by a Chapter 11 debtor, by providing AFI with clear contractual access to those spaces.

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Omnibus Reply.

2.      The Purchase Agreement (i) effected the sale of a fifty-one percent (51%)

property interest in the Minnesota data center owned by EPRE, and (ii) required assignment of a

fifty-one percent (51%) leasehold interest in the lease for the Texas data center, for which

GMACM is the tenant.  The purchase and assignment, by the terms of the Purchase Agreement,

is temporary.  The same instrument that effected the purchase and assignment of the interests—

the Purchase Agreement—also dictates that the transaction will be unwound.  The consideration

for both ends of the transaction is identical; thus, the Purchase Agreement is a "revenue neutral"

transaction.

3.      Nevertheless, Digital, the landlord under the GMACM lease, views the

transaction as a money-making opportunity.  Digital has seized on a provision of the lease

allegedly requiring certain payments in the event the lease is assigned or GMACM enters into a

sublease.  As will be demonstrated below, however, no cure amount is due and owing to Digital

for this temporary transaction between GMACM and its ultimate parent corporation.

4.      Similarly, Digital's arguments regarding alleged non-monetary cures lack merit

and provides no rationale for sustaining Digital's objection to the sale.  Accordingly, Digital's

objection should be overruled.

## BACKGROUND

### A.      Chapter 11 Cases

5.      A detailed description regarding the Debtors' Chapter 11 cases and sale process is

set forth in the Omnibus Reply.

### B.      Background Regarding the Digital Lewisville Lease

6.      On July 30, 2002, GMAC Mortgage Corporation (now known as GMAC

Mortgage, LLC), as tenant, and Lewisville LSF, L.P., as landlord, entered into a Lease

Agreement (as amended, the "Lease") for use of property located in the City of Lewisville,

3

Denton County, Texas (the "Texas Property"). See Declaration of Bryan Marsh of Digital Lewisville, LLC (the "Marsh Decl.") [Docket No. 1649-1], Ex. 1. In February 2012, Lewisville LSF assigned the lease to Digital. See Marsh Decl., Ex. 2.

7.        On May 9, 2012, Debtor EPRE, as seller, entered into a Purchase and Sale Agreement (a copy of which is annexed as Exhibit 1 to the Burrell Decl., the "Purchase Agreement") with AFI, as purchaser, for the sale and repurchase of a fifty-one percent (51%) property interest (the "Property Interest") in real property located at 6875 Shady Oak Road, Hennepin County, Minnesota (the "Minnesota Property").

8.        The Purchase Agreement mandated that the purchase of the Property Interest was conditioned upon the assignment of a fifty-one percent (51%) interest in the Lease. See Purchase Agreement ¶ 2.3. Accordingly, Debtor GMACM, as assignor, entered into an Assignment of Leasehold Interest with AFI, as assignee, for the assignment of that fifty-one percent (51%) leasehold interest (the "Leasehold Interest") in the Lease (a copy of which is annexed as Exhibit 2 to the Burrell Decl., the "Assignment Agreement," and together with the Purchase Agreement, the "Sale and Lease Transaction").

9.        The Purchase Agreement states that the purchase price for the Property Interest and the Leasehold Interest is $6 million. The Purchase Agreement does not allocate any portion of the purchase price between the Property Interest and the Leasehold Interest. See Purchase Agreement ¶ 2.4.

10.        The Purchase Agreement also mandates that the transaction will "unwind" in that EPRE shall repurchase the Property Interest and that AFI shall assign back the Leasehold Interest, at a time that will commence immediately prior to the closing of the Debtors' sale to Ocwen. See Purchase Agreement ¶ 9. Notably, the purchase price for the repurchase of the Property

4

Interest and assignment back to GMACM of the Leasehold Interest will be $6 million—identical to the amount paid by AFI for its acquisition of those interests.  <u>See</u> Purchase Agreement ¶ 9.1(ii).

11.    The Minnesota and Texas Properties each house data of both the Debtors and AFI. The Sale and Lease Transaction was effectuated in order to allay the potential concerns of AFI's regulators regarding the housing of AFI's data in property controlled by entities involved in Chapter 11 proceedings.  <u>See</u> Burrell Decl. ¶ 8.

12.    On June 11, 2012, Digital filed its Original Sale Objection [Docket No. 278].

13.    On July 26, 2012, the Debtors filed the *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto*, identifying the Lease as one of the unexpired leases the Debtors intend to assume and assign to the winning bidder [Docket No. 924].

14.    On September 28, 2012, Digital filed its Cure Objection [Docket No. 1649].

15.    On October 29, 2012, Digital filed its Supplemental Objection [Docket No. 1990].

<u>**ARGUMENT**</u>

A.    <u>**Digital Is Not Entitled to the Cures Requested**</u>

1.    **Monetary Cure Request**

16.    Digital argues in its Objection that it is entitled to a cure payment amounting to millions of dollars as a result of the Sale and Lease Transaction.  In doing so, it relies on two provisions of the Lease that it states give rise to such obligations.

17.    <u>First</u>, Digital argues that, if the Sale and Lease Transaction is characterized as an assignment, additional rent is due and owing to it under Paragraph 11 of the Lease.  That paragraph states, in pertinent part:

> In the event Tenant [GMACM] shall receive any consideration from an assignee other than the assumption by assignee of Tenant's obligations hereunder, Tenant shall be obligated to pay the full amount of such consideration to Landlord as additional rent hereunder on the same date it is received by Tenant.

18.    <u>Second</u>, the Debtors anticipate that Digital will argue that if the Sale and Lease Transaction is characterized as a sublease, paragraph 11 still mandates payment to the Landlord, using the following language of the Lease:

> In the event that the monthly rental per square foot of space subleased which is payable by any sublessee to Tenant shall exceed the monthly rental per square foot for the same space payable for the same month by Tenant to Landlord (including any bonuses or any other consideration paid directly or indirectly by the sublessee to Tenant), Tenant shall pay fifty percent (50%) of the profit to Landlord. … In the case of a sublease for less than all of the Premises, the rent allocable to the subleased space shall be as a percentage on a square footage basis.

19.    As will be demonstrated below, however, neither Lease provision requires the payment of any cure amount from GMACM to Digital.

### a.    The Assignment is Properly Considered a Sublease Under Texas Law

20.    In effectuating the Sale and Lease Transaction in the days leading up to the bankruptcy, GMACM and AFI erroneously characterized the transfer of the Leasehold Interest as an "assignment."  Texas law, however, does not recognize any partial assignment of an interest in a lease.  Rather, Texas law provides that partial assignments are considered subleases as a matter of law.

21.    As a general rule, "if an instrument conveys the entire 'term' of the lease without retaining any revisionary interest, the instrument will be construed as an assignment."  <u>718 Assocs., Ltd. v. Sunwest N.O.P., Inc.</u>, 1 S.W.3d 355, 360 (Tex. App. 1999) (citing <u>Davis v. Vidal</u>, 151 S.W. 290, 291 (Tex. 1912)).  In assigning the whole term, the assigning instrument must convey "both the entire time for which the lease runs and the entire estate or interest conveyed by the original lease."  <u>718 Assocs., Ltd.</u>, 1 S.W.3d at 360 (citing <u>Davis</u>, 151 S.W. at

6

292).  Conversely, where a tenant by the terms in the instrument does not part with the entire

estate or the entire term granted to him by the landlord so that the tenant retains a reversionary

interest, the transaction constitutes a sublease and not an assignment.  Davis, 151 S.W. at 292.  In

"construing the effect of [the instrument] it is not conclusive as to its form, since it may be in

form an assignment and yet be in effect a sub-lease."  Id.   In other words, an instrument may

purport to be an assignment, but Texas courts will construe it as a sublease if the tenant retains a

revisionary interest.   718 Assocs., Ltd., 1 S.W.3d at 361 (citing Davis, 151 S.W. at 291); see

also Nottingham Manor Owners Ass'n v. El Paso Elec. Co., 260 S.W.3d 186, 197 (Tex. App.

2008).

22.      Accordingly, the Debtors submit that Texas courts would treat GMACM's

"assignment" to AFI as a sublease.  The conveying instrument here neither conveyed the entire

estate under the lease—GMACM purported to assign a fifty-one percent (51%) leasehold interest

to AFI and retained a forty-nine percent (49%) leasehold interest—nor did it convey the entire

term of the lease, as the transaction will unwind in advance of the Lease's termination date.  The

Debtors thus submit that, given the erroneous classification of the instrument as an assignment,

the cure analysis should be undertaken by viewing the instrument as a sublease.

### b.      If the Sale and Lease Transaction is a Sublease, No Monetary Cure Is Due

23.      If the Sale and Lease Transaction is considered a sublease, no amounts are due

and owing to Digital because GMACM did not profit from the sublease.

24.      Pursuant to paragraph 11 of the Lease,

> In the event that the monthly rental per square foot of space subleased which is
> **payable by any sublessee to Tenant** shall exceed the monthly rental per square
> foot for the same space payable for the same month by Tenant to Landlord
> (including any bonuses or any other consideration paid directly or indirectly by
> the sublessee to Tenant), Tenant shall pay fifty percent (50%) of the profit to
> Landlord.

<u>See</u> Lease, ¶ 11.

25.     <u>First</u>, the Purchase Agreement is between EPRE and AFI, and the purchase price was paid under that agreement.  No cash payment was received by GMACM for any portion of the purchase price payable under the Purchase Agreement between EPRE and AFI, and GMACM received no other funds or profits from the Sale and Lease Transaction.[3]  Paragraph 11 of the Lease only requires GMACM to remit fifty percent (50%) of the profit to the landlord where the monthly rental is "payable by any sublessee ***to Tenant***."  Because there is no evidence that GMACM received any cash settlement pursuant to the Purchase Agreement—let alone any "profit"— no cure amounts related to the sublease are due and owing to Digital.

26.     <u>Second</u>, regardless of who received the payments, none of the Debtors received a "profit" (as that term is used in the Lease) from the sublease.  Pursuant to the Purchase Agreement, AFI paid $6 million for the Property Interest and the Leasehold Interest upon the closing of the Purchase Agreement.  The Purchase Agreement does not allocate the purchase price between the Property Interest and the Leasehold Interest.  Even hypothetically assuming, however, that as much as two-thirds of that price is attributable to the Leasehold Interest (as opposed to the purchase of the Property Interest), the Debtors have not received a profit from the sublease.  Under the Lease, the Debtors pay $18.50 per square foot for 78,413 square feet of space.  Fifty-one percent (51%) of the square footage of the Lease is 39,991 square feet.  Assuming, in this hypothetical example, that the purchase price attributable to the Leasehold Interest is $4 million, the Debtors received approximately $16.67 per square foot—an amount

---

[3]     The purchase price was paid by AFI to Residential Funding Company, LLC ("<u>RFC</u>").  An intercompany liability was created between RFC and GMACM, but there has been no cash settlement between RFC and GMACM to date.  <u>See</u> Burrell Decl. at ¶ 7.

less than the $18.50 per square foot the Debtors are obligated to pay under the Lease.  Notably,

this amount decreases daily.  Thus, no amounts are due and owing to Digital pursuant to the

terms of the Lease because the price received by the Debtors per square foot is less than the

amount GMACM paid, and there is no "profit" to be paid over to Digital under the terms of the

Lease.

<b>c.    If the Sale and Lease Transaction is an Assignment, No<br>Monetary Cure Is Due</b>

27.    Even if the Court were to find that the Sale and Lease Transaction constitutes an

assignment of the Leasehold Interest to AFI, still no amounts are due and owing to Digital

because GMACM did not receive consideration from AFI for the assignment.  Paragraph 11 of

the Lease provides "*[i]n the event Tenant shall receive any consideration from an assignee*

other than the assumption by the assignee of Tenant's obligations hereunder, Tenant shall be

obligated to pay the full amount of such consideration to Landlord as additional rent hereunder

on the same date it is received by Tenant, less any reasonable expenses."  As discussed above,

there is no evidence that GMACM, as the tenant under the Lease, received any cash settlement

from the Sale and Lease Transaction.  Thus, pursuant to the terms of the Lease, the Debtors are

not liable for any cure amounts, even if this Court characterizes the Sale and Lease Transaction

as an assignment.

28.    Moreover, the Lease only contemplates the payment of consideration to the

landlord where there is a full assignment of the Lease.  Section 11 of the Lease provides that the

consideration received for an assignment is paid over to the landlord where the Tenant receives

consideration from an assignee "other than an *assumption of the Tenant's obligations*

*hereunder*."  Such language—"assumption of the Tenant's obligations hereunder"—clearly

9

contemplates the full assignment of the Lease with all of its attendant obligations.  Here, AFI

assumed none of the obligations under the Lease and a full assignment was not effectuated.

> ### d. Regardless of the Characterization of the Sale and Lease Transaction, No Cure Amounts Are Owed to Digital Because the Debtors Received $0 Under the Contracts

29.     Finally, the Sale and Lease Transaction is a "revenue neutral" transaction that

resulted in no net profit to the Debtors.  The Purchase Agreement and the Assignment

Agreement contain provisions requiring GMACM to transfer a fifty-one percent (51%) interest

to AFI, and in the same instrument, *require* AFI to transfer that same fifty-one percent (51%)

interest back to GMACM.  Similarly, the Purchase Agreement requires AFI to pay EPRE

$6 million upon the closing of the Purchase Agreement, and in the same instrument, *requires*

EPRE to pay back to AFI that same $6 million upon the closing of repurchase transfer, resulting

in no net profit to the Debtors.  Thus, neither EPRE nor any other Debtor received any net

consideration or net profit that could be characterized as a benefit that might be paid over to

Digital under the terms of the Lease.  Thus, no cure amounts are due and owing to Digital.

> ## 2. Non-Monetary Cure Requests

30.     The Debtors have cured all of Digital's non-monetary cure requests that are

capable of cure.  See Burrell Decl. (annexing copies of the requested insurance certificates).  To

the extent Digital is requesting non-monetary cures related to the Debtors' alleged breaches of

other provisions of the Lease, Digital is not entitled to such relief.

31.     In the Cure Objection, Digital alleges that the Debtors breached the Lease by

failing to obtain consent to the transfer of the Leasehold Interest to AFI prior to such transfer.

The Debtors contend that no such breach occurred.  The Debtors were not required to obtain

Digital's consent to the Sale and Lease Transaction because the sublessee/assignee was AFI, a

party that was explicitly carved out of the Lease's consent requirements.  The Lease expressly

provides that the "Landlord's consent shall not be required in the event Tenant assigns this Lease

or sublets the Premises to an entity that is, directly or indirectly, controlled or owned by, [AFI]."

Doc. 1649-2 at 12, 106 (emphasis added).  Digital's argument that AFI is not an entity controlled

or owned by AFI is unavailing and strains the language in the Lease.  As such, no consent to the

sublease was required.  See Nw. Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines

Inc.), 608 F.3d 139, 147 (2d Cir. N.Y. 2010) (declining to interpret a contract "based on a

strained and improbable reading, which inevitably defeated the intentions of the contracting

parties").

34.     32.     Moreover, even if this Court finds that the Debtor breached the Lease by failing to

give notice to or obtain consent from Digital, these alleged breaches cannot, and need not, be

retroactively cured.  Section 365(b)(1)(A) excuses the debtor from curing defaults relating to

failure to perform non-monetary obligations under unexpired leases of real property, "if it is

impossible for the trustee to cure such default by performing nonmonetary acts at and after the

time of assumption."  11 U.S.C. § 365(b)(1)(A).  See also In re 2712 Mission Partners, L.P.,

2010 Bankr. LEXIS 333 (Bankr. N.D. Cal. Jan. 22, 2010) ("The Claremont decision was

overruled by statute to excuse non-curable, non-monetary defaults regarding non-residential real

property leases."); In re Empire Equities Capital Corp., 405 B.R. 687, 690 (Bankr. S.D.N.Y.

2009) (noting that Section 365(b)(1)(A) requires a cure only of defaults other than those "arising

from any failure to perform non-monetary obligations under an unexpired lease of real

property.").  Thus, the Debtors are not obligated to cure these non-monetary historical defaults.

33.     To the extent this Court finds that cure is required, the Debtors submit that the

unwinding of the Sale and Lease Transaction pursuant to the terms of the Purchase Agreement

and Assignment Agreement effectively cures any such defaults.

**B.**    **The Debtors May Sell the Assets Free and Clear of Pre-Closing Liabilities**

34.    Digital argues that the proposed assumption and assignment to Ocwen cannot be

approved because (i) the assignee will only be obligated to assume obligations under the Lease

that arise or accrue following the sale, and (ii) Digital has not received adequate assurance of

future performance.  These arguments fail for the many reasons set forth in the Omnibus Reply,

which are incorporated herein by reference.  Specifically, courts have held that contract

counterparties must assert cure claims for any existing breaches, and otherwise, there must be a

"stop date" for claims that relate to pre-closing actions of the debtor.  See e.g., In re Capmark Fin.

Grp. Inc., No. 09-13684 (Bankr. D. Del. Oct. 25, 2009); In re Pro-Care Auto. Serv. Solutions

LLC, No. 06-10605 (Bankr. N.D. Ohio Apr. 28, 2006).  For these reasons, along with the reasons

set forth in the Omnibus Reply and accompanying declarations, the Debtors have provided

Digital with adequate assurance of future performance, and the Court should approve the

assumption and assignment of the Lease.

**C.**  **The Proposed Transition Services Agreement Does Not Violate the Lease**

35.    Digital argues that the Transition Services Agreement between Ocwen and AFI,

which has not yet been fully negotiated or filed with the Court, violates the Lease because it

provides for AFI's continued access and occupancy in the leased premises following the closing

of the Debtors' sale to Ocwen.[4]  The Debtors submit that any continued access or occupancy by

AFI is effectively a continuation of the sublease by AFI in compliance with the terms of the

---

[4]    To the extent Digital argues that the Debtors also will be subleasing the property from Ocwen, such argument is
premature and not yet ripe for discussion.  The Debtors currently have no plans to continue occupying the
leased premises following the assignment to Ocwen.

Lease.[5]  First, Digital has received prior written notice of the sublease by virtue of the *Notice of Filing of Ally Financial Inc. Support Letter in Relation to the Debtors' Proposed Sale of Assets* [Docket No. 1849].  Second, Digital is not entitled to consent rights because any such sublease will be to AFI or an entity that is, directly or indirectly, controlled or owned by, AFI.[6]  And third, Digital is not entitled to any payment under the Lease because the tenant, Ocwen, will not be receiving a profit from the sublease.  See Purchase Agreement, ¶ 11 (setting forth the requirements for a sublease).  Thus, the Transition Services Agreement does not violate the Lease.

> **D.    The Debtors May Assume and Assign the Entire Lease**

36.    In the Objection, Digital argues, without providing any legal support, that the Debtors cannot assume and assign a 100% leasehold interest to Ocwen after assigning the fifty-one percent (51%) Leasehold Interest to AFI.  This argument fails as a matter of law.

37.    "A lease of real property is a hybrid legal arrangement creating both privity of estate and privity of contract between the lessor and lessee."  Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc. (In re Allied Tech., Inc.), 25 B.R. 484 (Bankr. S.D. Ohio 1982). Despite the Debtor's partial assignment or sublease of its possessory interest in the Lease, the Debtor remains in privity of contract with Digital under the Lease and continues to be liable for the Lease covenants designed to protect Digital's reversionary interest.

38.    Section 365 "only requires that the lease be 'of the debtor' to be assumable…. a 'lease of the debtor,' as that term is used in 11 U.S.C. § 365, may be solely contractual in nature,

---

[5]    As discussed above, paragraph 11 of the Lease includes notice and consent requirements, and also requires the tenant to pay fifty percent (50%) of any Profit (as such term is defined in the Lease) to the landlord.

[6]    As noted above, the proposed Transition Services Agreement is still being negotiated by the parties and is not yet final.

and [] there is no direct limitation upon a debtor's rights under 11 U.S.C. § 365 by the concept of

'property of the estate' as elaborated in 11 U.S.C. § 541.  The decision of a debtor in possession

to assume or reject an unexpired lease … is in no way conditioned upon a possessory interest in

the leasehold" Id. (authorizing the debtor to assume a lease where the possessory interest had

been wholly assigned prepetition).

39.     Thus, at all times, Debtor GMACM held an interest in the Lease sufficient to

satisfy the requirements of Section 365.

### E.     The Debtors Are No Longer Requesting the Waiver of the 14-Day Stay

40.     The Debtors have revised the proposed sale order and no longer request an

advance waiver of the fourteen (14) day stay of Rules 6004(h) and 6006(d) of the Federal Rules

of Bankruptcy Procedure.

### F.     The Debtors Are Not Liable For Digital's Attorneys' Fees

41.     Section 365(b) of the Bankruptcy Code does not provide an independent basis for

the recovery of attorneys' fees.  See 11 U.S.C. § 365(b); In re Best Prods. Co., Inc., 148 B.R. 413,

414 (Bankr. S.D.N.Y. 1992).  "A landlord is entitled to recover attorneys' fees in connection

with lease assumption pursuant to Section 365(b) only to the extent provided for in the lease."  In

re M. Fine Lumber Co., Inc., 383 B.R. 565 (Bankr. E.D.N.Y. 2008) (citations omitted).

42.     Here, Digitial is not entitled to the payment of attorneys' fees under the terms of

the Lease.  Paragraph 26 of the Lease provides:

> If either party (the "Enforcing Party") brings any action under this Lease, or
> places this Lease or any amount payable by the other party (the "Defaulting
> Party") hereunder with an attorney for the enforcement of any of the Enforcing
> Party's rights hereunder, then the Defaulting Party agrees to pay the Enforcing
> Party on demand the reasonable attorneys' fees and other costs and expenses
> incurred by the Enforcing Party in connection therewith, ***unless the Defaulting
> Party, in good faith, disputes whether the Defaulting Party is in default under
> this Lease***.  ***In any arbitration or litigation between the parties with respect to***

> ***this Lease, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees and expenses.***

Lease at ¶ 26 (emphasis added).

43.    The Debtors are disputing Digital's allegations of breach and cure requests in good faith, and thus are not responsible for any attorneys' fees incurred by Digital in connection with these requests.  To the extent the matter is arbitrated or litigated, attorneys' fees may be granted to the prevailing party, which very well may be the Debtors.  Thus, this matter is not yet ripe for review.

Accordingly, for the reasons set forth herein, the Debtors respectfully request that the Court overrule Digital's Objections and grant such other and further relief as it deems just and proper.

Dated: November 12, 2012
New York, New York

/s/  Stefan W. Engelhardt
Stefan W. Engelhardt
Lorenzo Marinuzzi
Samantha Martin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

15

## Exhibit 1

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Stefan W. Engelhardt
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
| | )
In re: | ) | Case No. 12-12020 (MG)
| )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11
| )
Debtors. | ) | Jointly Administered
| )
---------------------------------------------------------------

**DECLARATION OF JOAN BURRELL, DIRECTOR, CORPORATE WORKPLACE,**
**AT ALLY FINANCIAL, INC., IN SUPPORT OF DEBTORS' REPLY TO DIGITAL**
**LEWISVILLE, LLC'S (I) OBJECTION TO THE DEBTORS' (A) SALE MOTION, AND**
**(B) NOTICE OF INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES, AND (II) SUPPLEMENTAL LIMITED**
**OBJECTION TO THE DEBTORS' SALE MOTION, AND IN PARTICULAR, THE**
**<u>DEBTORS' PROPOSED ORDER</u>**

I, Joan Burrell, declare as follows:

    **A.**    **Background and Qualifications**

    1.    I serve as Director, Corporate Workplace, at Ally Financial Inc. ("<u>AFI</u>"), a

non-debtor affiliate of Residential Capital, LLC and the other debtors and debtors in possession

in the above-captioned Chapter 11 cases (collectively, the "<u>Debtors</u>").  I have held this position

since 2008.  In my role as Director, Corporate Workplace, at AFI, I am responsible for the

management of owned and leased facilities from which AFI and its subsidiaries, including the

Debtors, conduct their respective business activities.  I am authorized to submit this declaration (the "Declaration") in support of the *Debtors' Reply to Digital Lewisville, LLC's (I) Objection to the Debtors' (A) Sale Motion, and (B) Notice of Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (II) Supplemental Limited Objection to the Debtors' Sale Motion, and In Particular, the Debtors' Proposed Order*, dated as of November 12, 2012 (the "Reply").[1]

2.      In my capacity as Director, Corporate Workplace, at AFI, I am generally familiar with the Sale and Lease Transaction and the Debtors' relationship with Digital Lewisville, LLC.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge or information supplied or verified by personnel in departments within AFI's and the Debtors' various business units.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

**B.      The Minnesota and Texas Properties**

3.      Debtor EPRE owns real property located at 6875 Shady Oak Road, Hennepin County, Minnesota (the "Minnesota Property").

4.      Debtor GMAC Mortgage LLC ("GMACM") leases property located in the City of Lewisville, Denton County, Texas (the "Texas Property") under that certain Lease Agreement by and between GMACM, as tenant, and Lewisville LSF, L.P., as landlord, dated as of July 30, 2002 (as amended, the "Lease").  In February 2012, Lewisville LSF assigned the lease to Digital Lewisville, LLC ("Digital").  GMACM's total monthly rental payment under the Lease is approximately $1.45 million.

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Reply.

5.      The Minnesota and Texas Properties are utilized by AFI and the Debtors as data centers, and each house data of both the Debtors and AFI.

**C.      The Sale and Lease Transaction**

6.      On May 9, 2012, (i) Debtor EPRE, as seller, entered into a Purchase and Sale Agreement with AFI, as purchaser, for the sale and repurchase of a fifty-one percent (51%) property interest (the "Property Interest") in the Minnesota Property, and (ii)  as a condition to the Purchase and Sale Agreement, Debtor GMACM, as assignor, entered into an Assignment of Leasehold Interest with AFI, as assignee, for the assignment of fifty-one percent (51%) of the leasehold interest (the "Leasehold Interest") in the Lease (together, the "Sale and Lease Transaction").  True and correct copies of the Purchase and Sale Agreement and the Assignment of Leasehold Interest are annexed hereto as Exhibits 1 and 2, respectively.

7.      In connection with the Sale and Lease Transaction, the purchase price of $6 million was paid by AFI to Residential Funding Company, LLC ("RFC") on or about May 9, 2012.  No portion of the purchase price was remitted directly to GMACM.  An intercompany liability was created between RFC and GMACM, and there has been no cash settlement of the purchase price between RFC and GMACM to date.

8.      The Sale and Lease Transaction was effectuated in order to allay the potential concerns of AFI's regulators regarding the housing of AFI's data in property controlled by entities involved in Chapter 11 proceedings, by providing AFI with contractual access to that space.

**D.      Discussions with Digital Lewisville Regarding the Sale and Lease Transaction**

9.      Shortly after the filing of the Debtors' Chapter 11 petitions, I contacted Bryan Marsh, a Senior Asset Manager at Digital, by telephone.  During that call, I informed Mr.

Marsh of the bankruptcy filing by Residential Capital, LLC and its affiliated debtors, and the associated anticipated restructuring through a sale of substantially all of the Debtors' assets.  I advised him that GMACM would continue to pay any post-petition rent and that GMACM expected to maintain a presence in the property while working through the bankruptcy process.  I also advised Mr. Marsh that GMACM had assigned the lease internally due to bank regulatory requirements, and that additional assignments during the bankruptcy process were anticipated.

10.     I recall that Mr. Marsh's reaction during the call was supportive.  He expressed relief that I was not calling to tell him that we were rejecting the lease and moving out of the space.  Mr. Marsh acknowledged that he was familiar that assignments were a typical part of the bankruptcy process.  We also spoke about Digital's then recent acquisition of the Texas Property.

### E.     Digital's Non-Monetary Cure Requests

11.     In connection with its cure request, Digital has requested that the Debtors provide copies of insurance certificates pertaining to the Texas Property.

12.     The Debtors have provided Digital with copies of all of the applicable insurance certificates pertaining to the Texas Property.   True and correct copies of those insurance certificates are annexed hereto as Exhibits 3, 4 and 5.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 12, 2012

/s/  *Joan Burrell*
Joan Burrell
Director, Corporate Workplace, of
Ally Financial Inc.

**EXHIBIT 1**
**TO THE BURRELL DECLARATION**

# PURCHASE AND SALE AGREEMENT

between

**EPRE LLC**, a Delaware limited liability company,

as Seller,

and

**ALLY FINANCIAL INC.**, a Delaware corporation,

as Purchaser

May 9, 2012

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is executed as of the 9th day of May, 2012 (the "Effective Date"), by and between **EPRE LLC**, a Delaware limited liability company ("Seller"), and **ALLY FINANCIAL INC.**, a Delaware limited liability company ("Purchaser").

1.     **DEFINITIONS AND EXHIBITS.**

     **1.1 Definitions.** In this Agreement, the following defined terms have the meanings set forth for them in the Section of this Agreement indicated below:

| Term | | Term | |
|---|---|---|---|
| Agreement | Opening | Permitted Exceptions | Section 3.1 |
| Asset Closing | Section 9.1 | Property | Section 2.1(b) |
| Closing | Section 2.4 | Property Interest | Section 2.1 |
| Closing Date | Section 7.1 | Purchaser | Opening |
| Effective Date | Opening | Purchase Price | Section 2.4 |
| First Assignment of Leasehold | Section 2.3 | Repurchase | Section 9.1 |
| GMAC | Section 2.3 | Repurchase Closing | Section 9.1 |
| Improvements | Section 2.1(b) | Repurchase Price | Section 9.1 |
| Land | Section 2.1(a) | Seller | Opening |
| Lease | Section 2.3 | Shared Services Agreement | Section 8.1 |
| Leasehold Interest | Section 2.3 | Transfer Taxes | Section 7.2(d) |
| Other Costs | Section 7.2(d) | | |

     **1.2 Exhibits.** The Exhibits listed below are attached to and incorporated into this Agreement. In the event of any inconsistency between such Exhibits and the terms and provisions of this Agreement, the terms and provisions of the Exhibits shall control. The Exhibits to this Agreement are:

          EXHIBIT A     Legal Description of the Land
          EXHIBIT B     Form of Deed
          EXHIBIT C     Assignment of Leasehold Interest

2.     **PURCHASE AND SALE OF THE PROPERTY INTEREST.**

     **2.1 Sale.** For the consideration hereinafter set forth, and subject to the provisions contained herein, Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase from Seller, an undivided fifty-one percent (51%) interest in the following (the "Property Interest"):

               (a) The real property located at 6875 Shady Oak Road in Hennepin County, Minnesota described in Exhibit A, together with all of Seller's right, title and interest to reversions, remainders, easements, rights-of-way, appurtenances, hereditaments and water and mineral rights appertaining to or otherwise benefiting or used in connection with such real property, together with all of Seller's right, title and interest in and to any strips of land, streets, and alleys abutting or adjoining such real property (the "Land"); and

               (b) All existing buildings or other improvements, structures, open parking facilities and fixtures placed, constructed, installed or located on the Land, and all plants, trees, and other appurtenances located upon, over or under the Land (collectively, the "Improvements";

the Land and Improvements are sometimes hereinafter collectively referred to as the "Property").

**2.2 Title**. After the Closing (defined below), title to the Property shall be held by Purchaser and Seller as tenants-in-common.

**2.3 Leasehold Interest.** The acquisition and sale of the Property Interest is conditioned upon the assignment by GMAC Mortgage LLC, an affiliate of Seller ("GMAC"), to Purchaser of an undivided fifty-one percent (51%) interest in certain Lease Agreement dated as of July 30, 2002, as amended by that certain First Amendment to Lease Agreement dated March 23, 2004, that certain Second Amendment to Lease Agreement dated November 4, 2005, and that certain Third Amendment to Lease Agreement dated August 25, 2011 (collectively, the "Lease") between Breof Convergence, LP, a Delaware limited partnership, as assignee of Lewisville LSF, L.P., as landlord and GMAC, as tenant (the "Leasehold Interest") pursuant to the Assignment of Leasehold Interest attached hereto as Exhibit C (the "First Assignment of Leasehold Interest"),

**2.4 Purchase Price**. The purchase price for the Property Interest and the Leasehold Interest shall be Six Million Dollars ($6,000,000) (the "Purchase Price"), which Purchase Price was determined based on fair market value appraisals of the Property Interest and Leasehold Interests. The Purchase Price shall be paid at the closing of the purchase contemplated hereby (the "Closing") in cash, by certified check, cashier's check, wire transfer, or other immediately available funds.

**3.     SELLER'S REPRESENTATIONS AND WARRANTIES.**

Seller represents and warrants to Purchaser as follows:

**3.1 Title**. Seller holds good and marketable title to the Land in fee simple absolute, free and clear of all matters affecting title, except for (i) taxes not yet due and payable, (ii) all zoning and other regulatory laws and ordinances affecting the Property, (iii) all matters shown or that would be shown on a current ALTA survey of the Property, and (iv) those liens and other matters of record as of the Effective Date affecting any of the Property (collectively, the "Permitted Exceptions"). None of the Permitted Exceptions will materially affect Purchaser's acquisition, ownership, use or enjoyment of the Property Interest.

**3.2 No Possessory Rights**. Except for any rights of possession granted under the Permitted Exceptions, there are no parties in possession of any of the Property except Seller and Purchaser, and there are no other rights of possession or use which have been granted to any third party or parties.

**3.3 No Third-Party Interests**. Seller has not granted to any party any option, contract or other agreement with respect to the purchase or sale of the Property.

**3.4 No Actions**. There are no actions, suits, proceedings or claims pending or to Seller's knowledge threatened with respect to or in any manner affecting any of the Property or the ability of Seller to consummate the transaction contemplated by this Agreement.

**3.5 Eminent Domain; Special Assessments**. There are no pending or, to Seller's knowledge, threatened condemnation or similar proceedings affecting any of the Property.

**3.6 Access**. Seller has no knowledge of any fact or condition that would result or could result in the termination or reduction of the current access to or from the Property to existing thoroughfares or of any reduction in or to a sewer or other utility services currently servicing the Property.

**3.7 Authority**. Seller is a limited liability company duly organized and existing and in good standing under the laws of the State of Delaware. Seller has the full right and authority to enter into this Agreement and consummate the transactions contemplated by this Agreement. All requisite company action has been taken by Seller in connection with the execution of this Agreement and the documents referenced herein and the consummation of the transactions contemplated hereby. Each of the Persons signing this Agreement on behalf of Seller is authorized to do so.

**3.8 Consents; Restrictions; Binding Obligations**. No third party approval or consent is required to enter into this Agreement or the documents referenced herein or to consummate the transactions contemplated hereby except for any such approval or consent that has already been received. To Seller's knowledge, the entering into and consummation of the transactions contemplated hereby will not conflict with or, with or without notice or the passage of time or both, constitute a default under, any loan agreement, security agreement, lease or other agreement to which Seller is a party or by which Seller may be bound or any law, rule, license, regulation, judgment, order or decree governing or affecting Seller or the Property. This Agreement and all documents referenced herein to be executed by Seller are and shall be valid and legally binding obligations of Seller.

**3.9 No Additional or Implied Warranties**. Purchaser acknowledges that Purchaser and Purchaser's representatives have fully inspected the Property or will have done so prior to Closing, are or will be fully familiar with the financial and physical (including, without limitation, environmental) condition thereof as of Closing, and that the Property Interest will be purchased by Purchaser in "AS-IS" and "WHERE IS" condition and with all existing defects (patent and latent) as a result of such inspections and investigations and not in reliance on any agreement, understanding, condition, warranty (including without limitation warranties of habitability, merchantability or fitness for a particular purpose) or representations made by Seller or any agent, employee or principal of Seller or any other party as to the financial or physical (including, without limitation, environmental) condition of the Property, or as to any other matter whatsoever, including, without limitation, as to any permitted use thereof, the zoning classification thereof or compliance with any federal, state or local laws, as to the income or expense in connection therewith, or as to any other matter in connection therewith. Purchaser acknowledges that, except as otherwise expressly provided in Section 3, neither Seller nor any agent or employee of Seller, nor any other party acting on behalf of Seller has made or shall be deemed to have made any such agreement, condition, representation or warranty either expressed or implied and that Purchaser assumes the risk that adverse physical, environmental, economic or legal conditions may not have been revealed by Purchaser's investigation. The limitations set forth in this Section 3.11 shall not be deemed to supersede, restrict, modify, replace or eliminate any representations or warranties of Seller expressly set forth in this Agreement. This section shall survive the Closing and shall be deemed incorporated by reference and made a part of all documents delivered by Seller to Purchaser in connection with the sale of the Property Interest.

4.    **PURCHASER'S REPRESENTATIONS AND WARRANTIES.**

Purchaser represents and warrants to Seller as follows:

**4.1 Authority**. Purchaser is a corporation duly organized and existing and in good standing under the laws of the State of Delaware. Purchaser has the full right and authority to enter into this Agreement and consummate the transactions contemplated by this Agreement. All requisite corporate action has been taken by Purchaser in connection with the execution of this Agreement and the documents referenced herein and the consummation of the transactions contemplated hereby. Each of the Persons signing this Agreement on behalf of Purchaser is authorized to do so.

**4.2 Consents; Restrictions; Binding Obligations**. No third party approval or consent is required to enter into this Agreement or the documents referenced herein or to consummate the

transactions contemplated hereby. To Purchaser's knowledge, the entering into and consummation of the transactions contemplated hereby will not conflict with or, with or without notice or the passage of time or both, constitute a default under, any loan agreement, security agreement, lease or other agreement to which Purchaser is a party or by which Purchaser may be bound or any law, rule, license, regulation, judgment, order or decree governing or affecting Purchaser or the Property. This Agreement and all documents required hereby to be executed by Purchaser are and shall be valid and legally binding obligations of Purchaser.

5.    **SELLER'S UNDERTAKINGS PENDING CLOSING.**

**5.1 Operation of the Property**. Until the earlier of the Closing or the termination of this Agreement, Seller shall:

(a) Status of Title. Not do anything, or permit anything to be done, that would impair or modify the status of title.

(b) Operation. Operate and maintain the Property in the same manner as immediately prior to the Effective Date, reasonable wear and tear excepted.

(c) Contracts. Not enter into any lease, service contract or other contract that, following Closing, will be binding upon Purchaser or the Property without, in each instance, obtaining the prior written approval of Purchaser.

(d) Transfer. Not cause or permit the transfer, conveyance, sale, assignment, pledge, mortgage, or encumbrance of any of the Property.

6.    **PURCHASER'S OBLIGATION TO CLOSE.**

**6.1 Conditions**. Purchaser shall not be obligated to close the transaction contemplated hereunder unless each of the following conditions shall be satisfied on the Closing Date:

(a) Accuracy of Representations. The representations and warranties of Seller in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though such representations and warranties had been made on and as of the Closing Date, and Seller shall so certify.

(b) Condition of Repair. The Improvements shall be in substantially the same condition and repair as on the date hereof.

(c) Seller's Performance. Seller shall have performed all covenants and obligations and complied with all conditions required by this Agreement to be performed or complied with by Seller on or before the Closing Date.

7.    **CLOSING.**

**7.1 Time of Closing**. The Closing shall take place via mail on May 9, 2012, or such earlier or other date as may be mutually acceptable to the parties (the "Closing Date").

**7.2 Deliveries**. At the Closing the following shall occur:

(a) Deed. Seller shall deliver to Purchaser a duly executed and acknowledged deed, in substantially the form and content of Exhibit B, containing general warranties of title and

conveying the Property Interest to Purchaser, free and clear of all matters affecting title, except for those matters of record.

(b) Purchase Price. Purchaser shall pay to Seller the Purchase Price as provided in Section 2.2.

(c) Transfer Taxes and Other Costs. Purchaser shall pay any and all city, county and state transfer taxes or documentary stamp taxes applicable to the sale of the Property Interest (collectively, the "Transfer Taxes") and any and all other third party fees, costs and expenses (including the reasonable attorneys' fees of Seller) applicable to the sale of the Property Interest (collectively, "Other Costs").

(d) Shared Services Agreement. Seller and Purchaser shall have agreed in principal to the Shared Services Agreement (as defined below), which, upon its effectiveness, the operation of the Property shall be governed after the Closing (the "Shared Services Agreement").

(e) Additional Documents. Seller and Purchaser shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all conveyances, assignments and all other instruments and documents as may be reasonably necessary in order to complete the transaction herein provided and to carry out the intent and purposes of this Agreement.

## 8.    POST-CLOSING OBLIGATIONS.

**8.1 Operation of the Property.** Seller's and Purchaser's duties, obligations and authority with respect to the Property and all consents, approvals and other decisions regarding the Property shall be set forth in the Shared Services Agreement.

**8.2 Partition.** Seller and Purchaser each covenants that after the Closing it shall not bring, nor be entitled to bring, an action for partition of the Property.

**8.3 Indemnity.**

(a) Purchaser Indemnity. Purchaser shall defend, indemnify and hold harmless Seller and each affiliate of Seller for, from and against any and all claims, demands and liability directly or indirectly related to the acts or omissions of Purchaser relating to this Agreement or the Property during the period from and after the Closing Date through the date on which Purchaser transfers all of the Property Interest back to Seller pursuant to Section 9.11 hereof. Purchaser's indemnity obligation hereunder shall survive the Closing.

(b) Seller Indemnity. Seller shall defend, indemnify and hold harmless Purchaser for, from and against any and all claims, demands and liability directly or indirectly related to the acts or omissions of Seller relating to this Agreement or the Property. Seller's indemnity obligation hereunder shall survive the Closing.

**8.4 Retroactive Transfer Taxes.** In the event that it is determined that Transfer Taxes are not due at the Closing or the Repurchase Closing, but are later determined to be due, Purchaser shall promptly pay such Transfer Taxes and shall indemnify Seller in connection with the same. Purchaser's indemnity obligation under this Section 8.4 shall survive the Closing.

9.    **REPURCHASE RIGHT**.

9.1 <u>Repurchase</u>. Seller shall re-purchase the Property Interest from Purchaser (the "Repurchase") at any time from and after the closing of the sale of all or substantially all of the assets of Seller and/or its affiliates to one or more purchasers (the "<u>Asset Closing</u>"), but in no event later than December 31, 2014. The closing of the Property Interest (the "<u>Repurchase Closing</u>") shall take place on a date mutually agreed upon between Seller and Purchaser, but in any event, within 30 days after notice from Seller to Purchaser that Seller is exercising its right to purchase the Property Interest. Subject to the terms of this Section 9.1, Seller shall be entitled to exercise its right to purchase the Property Interest on the day immediately prior to the Asset Closing. As a condition to the Repurchase Closing, at least five (5) business days' prior to the Asset Closing, Seller shall deliver, or cause to be delivered, documentation reasonably acceptable to Purchaser, providing Purchaser, for a period of at least twelve (12) months, with an option to extend such time period for an additional twelve (12) months at Purchaser's option, after the Asset Closing, with (i) the right to possession of that portion of the Premises set forth in the Lease (subject to the terms of the Lease) and the Property occupied by Purchaser as of the Effective Date, and (ii) those services as set forth in the Shared Services Agreement or any other agreement executed by Purchaser and the purchaser of Seller's assets as set forth above. Purchaser's right to possession of the Premises and Property as set forth in the preceding sentence shall be subject to Purchaser's agreement to payment of a portion of the rent under the Lease, a rent payment for the portion of the Property then occupied by Purchaser reasonably acceptable to Purchaser and such other terms which are customarily agreed to by subtenants (for the Premises) and tenants(for the Property), as applicable, and which are otherwise reasonably acceptable to Purchaser.

<u>Deliveries</u>. At the Repurchase Closing, the following shall occur:

(i)    <u>Deed</u>.    Purchaser shall deliver to Seller a duly executed and acknowledged deed, in substantially the form and content of the deed the Seller delivered to Purchaser in connection with the Closing, which form of deed is attached as <u>Exhibit B</u>, containing general warranties of title and conveying the Property Interest to Seller, free and clear of all matters affecting title, except for the Permitted Exceptions.

(ii)    <u>Purchase Price</u>. Seller shall pay to Purchaser a purchase price of Six Million Dollars ($6,000,000) (the "<u>Repurchase Price</u>") in connection with the Repurchase and the assignment of leasehold interest described in subsection (v) below. The Repurchase Price shall be paid at the Repurchase Closing in cash, by certified check, cashier's check, wire transfer, or other immediately available funds.

(iii)    <u>Transfer Taxes and Other Costs</u>. Purchaser shall pay any and all Transfer Taxes and Other Costs in connection with the transactions described in this Section 9.1.

(iv)    <u>Additional Documents</u>. Seller and Purchaser shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all conveyances, assignments and all other instruments and documents as may be reasonably necessary in order to complete the transaction provided above with respect to the Repurchase.

(v)    <u>Assignment of Leasehold Interest</u>. Purchaser and GMAC shall have executed an Assignment of Leasehold Interest in substantially the same form and substance as the First Assignment of Leasehold Interest pursuant to which Purchaser shall assign back to GMAC the Leasehold Interest.

## 10.    GENERAL PROVISIONS.

**10.1    Construction.** As used in this Agreement, the singular shall include the plural and any gender shall include all genders as the context requires and the following words and phrases shall have the following meanings: (a) "including" shall mean "including without limitation"; (b) "provisions" shall mean "provisions, terms, agreements, covenants and/or conditions"; (c) "lien" shall mean "lien, charge, encumbrance, title retention agreement, pledge, security interest, mortgage and/or deed of trust"; (d) "obligation" shall mean "obligation, duty, agreement, liability, covenant and/or condition"; (e) "any of the Property" shall mean "the Property or any part thereof or interest therein"; (f) "any of the Land" shall mean "the Land or any part thereof or interest therein"; and (g) "any of the Improvements" shall mean "the Improvements or any part thereof or interest therein."

**10.2    Further Assurances.** Each of the parties hereto undertakes and agrees to execute and deliver such documents, writings and further assurances as may be required to carry out the intent and purposes of this Agreement.

**10.3    Entire Agreement.** No change or modification of this Agreement shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any of the provisions of this Agreement shall be valid unless in writing and signed by the party against whom such waiver is sought to be enforced. This Agreement contains the entire agreement between the parties relating to the purchase and sale of the Property Interest. All prior negotiations between the parties are merged in this Agreement, and there are no promises, agreements, conditions, undertakings, warranties or representations, oral or written, express or implied, between the parties other than as herein set forth.

**10.4    Survival.** All of the parties' representations, warranties, covenants and agreements hereunder, to the extent not fully performed or discharged by or through the Closing, shall not be deemed merged into any instrument delivered at Closing, shall survive Closing, and shall remain fully enforceable thereafter.

**10.5    Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the state on Minnesota.

**10.6    Headings.** The headings of Articles and Sections of this Agreement are for purposes of convenience and reference and shall not be construed as modifying the Articles or Sections in which they appear.

**10.7    Assignment.** Seller may transfer and assign its rights under Section 9, in whole but not in part, to any purchaser of all or substantially all of its assets. Except as provided in the prior sentence, neither Seller nor Purchaser shall sell, assign or transfer this Agreement, without the prior written consent of the other, which may be granted or withheld in its sole discretion.

**10.8    Time of Essence.** Time is of the essence with respect to the parties' obligations hereunder.

**10.9    Attorneys' Fees.** If either party commences an action to enforce the terms of, or resolve a dispute concerning, this Agreement, the court shall award the prevailing party in such action all costs and expenses incurred by such party in connection therewith, including reasonable attorneys' fees.

**10.10   Severability**.  If any provision of this Agreement is declared void or unenforceable by a final judicial or administrative order, this Agreement shall continue in full force and effect, except that the void or unenforceable provision shall be deemed deleted and replaced with a provision as similar in terms to such void or unenforceable provision as may be possible and be valid and enforceable.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the date(s) set forth below, but as of the Effective Date.

SELLER:

**EPRE LLC**, a Delaware limited liability company

Date:  As of May 9, 2012

By: _____
Name: _____JAMES WHITLING____
Title: _____CFO_____

PURCHASER:

**ALLY FINANCIAL INC.,** a Delaware corporation

Date:  As of May 9, 2012

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed on the date(s) set forth below, but as of the Effective Date.

SELLER:

**EPRE LLC**, a Delaware limited liability company

Date: As of May 9, 2012

By:_____
Name:_____
Title:_____

PURCHASER:

**ALLY FINANCIAL INC.**, a Delaware corporation

Date: As of May 9, 2012

By:_____
Name: EVAN NOVLAS
Title: PRESIDENT, ALLY SERVICING and
CHIEF PROCUREMENT OFFICER,
ALLY FINANCIAL INC.

## EXHIBIT A

### LEGAL DESCRIPTION

PARCEL 1:

That part of Lot 1, Block 2, Shady Oak Industrial Park, Hennepin County, Minnesota lying West of a line drawn at a right angle to the South line of said Lot 1 from a point on said South line distant 340.84 feet West of the Southeast corner of said Lot 1.


PARCEL 2:

Appurtenant non-exclusive easement for roadway purposes over the Southeasterly and Southerly 30 feet of the part of Lot 2, Block 2, Shady Oak Industrial Park, lying Westerly of the Easterly 124.98 feet of said Lot 2, as set forth in Mutual Easement Agreement, dated August 21, 2000, filed August 28, 2000, as Document Number  7345470, Office of the County Recorder, Hennepin County, Minnesota.

## EXHIBIT B

### FORM OF DEED

_____

(RESERVED FOR RECORDING DATA)

### LIMITED WARRANTY DEED

STATE DEED TAX DUE HEREON: $1.70

Dated as of May 9, 2012

      FOR VALUABLE CONSIDERATION, **EPRE LLC**, a Delaware limited liability company, ("Grantor"), does hereby convey and warrant to **ALLY FINANCIAL INC.**, a Delaware corporation, ("Grantee"), an undivided 51% interest as tenant-in-common in the real property in Hennepin County, Minnesota, described on Exhibit A attached hereto (the "Property"), together with all hereditaments and appurtenances belonging thereto, subject to all matters of record.

      This Deed conveys after-acquired title. Grantor warrants that Grantor has not made, done, executed or suffered any act or thing whereby the herein-described property or any part hereof, now or at any time hereafter, shall or may be imperiled, charged or encumbered in any manner, and Grantor will warrant the title to the herein-described property against all persons claiming the same from or through Grantor as a result of any such act or thing.

Grantor and Grantee each covenants that it shall not bring, nor be entitled to bring, an action for partition of the Property.

Grantor certifies that Grantor does not know of any wells on the Property.

*[Signature Page Follows]*

{ 01034116.1 07401-0101 5/7/2012 11:24:17 AM }

EPRE LLC, a Delaware limited liability company

By: _____

Name:_____

Title: _____

STATE OF NEW YORK            )
                             ) SS:
COUNTY OF NEW YORK           )

      On the ____ day of _____ in the year 2012, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC
Type/Print Name: _____                    [SEAL]
My commission expires: _____

ALLY  FINANCIAL  INC.,  a  Delaware corporation

By: _____
Name:_____
Title: _____

STATE OF NEW YORK            )
                             ) SS:
COUNTY OF NEW YORK           )

On the ____ day of _____ in the year 2012, before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person or entity on behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC
Type/Print Name: _____          [SEAL]
My commission expires: _____

This instrument was drafted by David W. Fell, Esq., Lowe, Fell & Skogg, LLC, 370 17th Street, Suite 4900, Denver, Colorado  80202.

Tax statements for the real property described in Exhibit A to this instrument should be sent to:
Ally Financial Inc., a Delaware corporation

Ally Financial Inc.
c/o GMAC Financial Services
Global Real Estate
1100 Virginia Drive
Mail Code 190-FTW-M98
Fort Washington, PA  19034

_____
_____

## EXHIBIT A

### LEGAL DESCRIPTION

TAX ID NO:  01-116-22-44-0017

PARCEL 1:

That part of Lot 1, Block 2, Shady Oak Industrial Park, Hennepin County, Minnesota lying West of a line drawn at a right angle to the South line of said Lot 1 from a point on said South line distant 340.84 feet West of the Southeast corner of said Lot 1.


PARCEL 2:

Appurtenant non-exclusive easement for roadway purposes over the Southeasterly and Southerly 30 feet of the part of Lot 2, Block 2, Shady Oak Industrial Park, lying Westerly of the Easterly 124.98 feet of said Lot 2, as set forth in Mutual Easement Agreement, dated August 21, 2000, filed August 28, 2000, as Document Number 7345470, Office of the County Recorder, Hennepin County, Minnesota.

## EXHIBIT C

## FORM OF ASSIGNMENT OF LEASEHOLD INTERST

## ASSIGNMENT OF LEASEHOLD INTEREST

THIS ASSIGNMENT OF LEASEHOLD INTEREST (this "Assignment") is executed as of the 9th day of May 2012 (the "Effective Date"), by and between **GMAC MORTGAGE LLC**, a Delaware limited liability company, fka GMAC Mortgage Corporation ("Assignor"), and **ALLY FINANCIAL INC.**, a Delaware corporation ("Assignee").

## RECITALS

A.      Pursuant to that certain Lease Agreement dated as of July 30, 2002, as amended by that certain First Amendment to Lease Agreement dated March 23, 2004, that certain Second Amendment to Lease Agreement dated November 4, 2005, and that certain Third Amendment to Lease Agreement dated August 25, 2011 (collectively, the "Lease"), Breof Convergence, LP, a Delaware limited partnership, as assignee of Lewisville LSF, L.P. ("Landlord") leased approximately 78,413 square feet of real property designated as Building 3 of the project commonly referred to as Convergence Office Center in Lewisville, Texas, as more fully described in the Lease (the "Premises"), to Assignor, as tenant.

B.      Section 11 of the Lease provides that Assignor may assign the Lease without Landlord's consent to an Affiliate (as defined in the Lease) of Assignor.  Assignee is an Affiliate of Assignor.

C.      Assignor now wishes to assign an undivided fifty-one percent (51%) leasehold interest (the "Leasehold Interest") to Assignee in accordance with the terms of this Assignment.

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.      Assignment of Leasehold Interest.  As of the Effective Date, Assignor does hereby grant, bargain, sell, assign, transfer and set over unto Assignee the Leasehold Interest, together with all rights and benefits thereunder, to have and to hold the same unto Assignee, its successor and assigns.

2.      Assumption of Leasehold Interest.  As of the Effective Date, Assignee hereby assumes the obligations of Assignor under the Lease to the extent of the Leasehold Interest.  Assignor's and Assignee's duties, obligations and authority with respect to the Lease, the Premises and all consents, approvals and other decisions regarding the Premises, the Lease and matters relating to or between the Landlord and the tenant under the Lease are set forth in that certain Shared Services Agreement between Assignor and Assignee, which, upon its effectiveness, shall govern the operations of the Premises after the transfer described herein.

3.      Further Assurances.  It is the intention of the parties hereto that the Leasehold Interest shall be fully and absolutely transferred by Assignor to Assignee.  Assignor therefore agrees that it shall execute any additional documents that may hereafter reasonably be requested by Assignee in order more fully to effectuate such transfer and assignment.

4.      Representations and Warranties.  Assignor hereby represents and warrants that, as of the Effective Date:

{ 01034826.1 07401-0101 5/9/2012 11:39:54 AM }

a.    Assignor is the sole holder of the lessee's or tenant's interest in the Lease and the same has not been assigned or pledged;

b.    To the best of Assignor's actual knowledge, there exist no matters of title or record which would impair Assignor's transfer of the Leasehold Interest to Assignee or the right of Assignee to acquire and hold the Leasehold Interest in the Premises;

c.    Assignor has fully power and authority to enter into this Assignment and no approval of any third party is required ;

d.    There have been no amendments, oral or written, to the terms of the Lease, other than those set forth in Recital A above; and

e.    There exists no event of default and no circumstance which would, with the giving of notice or the passage of time or both, constitute an event of default under the Lease by Assignor or, to the best of Assignor's actual knowledge, Landlord.

5.    Indemnity.

a.    Assignee shall defend, indemnify and hold harmless Assignor and its affiliates for, from and against any and all claims, demands and liability (i) arising under or relating to the Lease that are directly or indirectly related to the failure of Assignee to perform or otherwise comply with all of the terms, covenants and agreements of the Lease which accrue during the period from and after the Effective Date through the date on which Assignee transfers all of the Leasehold Interest back to Assignor pursuant to Section 7 below, or (ii) arising from or relating to Assignee's breach of this Assignment.

b.    Assignor shall defend, indemnify and hold harmless Assignee and its affiliates for, from and against any and all claims, demands and liability (i) arising under or relating to the Lease prior to or following the Effective Date that are directly or indirectly related to the failure of Assignor to perform or otherwise comply with all of the terms, covenants and agreements of tenant under the Lease, or (ii) arising from or relating to Assignor's breach of this Assignment, including, without limitation, a breach of the representations contained herein.

6.    Re-Assignment Right.

(b) Re-Assignment. The Leasehold Interest shall be re-assigned to Assignor by Assignee (the "Re-Assignment") at any time from and after the closing of the sale of all or substantially all of the assets of Seller and/or its affiliates to one or more purchasers (the "Asset Closing"), but in no event later than December 31, 2014. The closing of the Re-Assignment (the "Re-Assignment Closing") shall take place on a date mutually agreed upon between Assignor and Assignee, but in any event, within thirty (30) days after notice from Assignor to Assignee that Assignor is exercising its right to have the Leasehold Interest re-assigned to Assignor. Subject to the terms of this Section 6, Seller shall be entitled to exercise its right to the Re-Assignment on the day immediately prior to the Asset Closing.

(c) Deliveries. At the Re-Assignment Closing the following shall occur:

(A) Assignment.  Assignee and Assignor shall deliver to each other a counterpart of a duly executed and acknowledged assignment of leasehold interest, in substantially the form and content of this Assignment.

(B) <u>Additional Documents</u>.    Assignee and Assignor shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all assignments and all other instruments and documents as may be reasonably necessary in order to complete the transaction provided above with respect to the Re-Assignment.

(C) <u>Repurchase of Property Interest</u>.  Reference is made to the Purchase and Sale Agreement dated as of May 9, 2012 between EPRE LLC, as seller, and Purchaser, as buyer, with respect to certain property in Hennepin County, Minnesota, and the Repurchase Closing (as defined therein) shall have occurred or shall occur simultaneously with the Re-Assignment Closing.

(d) <u>Assignment</u>.  Assignor may transfer and assign its rights under this <u>Section 6</u>, in whole but not in part, to any purchaser of all or substantially all of its assets.

7.    <u>Counterparts</u>.  This Assignment may be executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same Assignment.

8.    <u>Binding Effect</u>.  This Assignment shall be for the benefit of, and shall bind and inure to, Assignor, Assignee and their respective successors and assigns.

9.    <u>Fees and Expenses</u>.  Assignee shall pay any third party costs, fees, taxes and expenses (including the reasonable attorneys' fees of Assignor) applicable to the assignment of the Leasehold Interest to Assignee and Assignee shall pay any third party costs, fees, taxes and expenses (including the reasonable attorneys' fees of Assignor) applicable to the Re-Assignment of the Leasehold Interest to Assignor, in each case when due.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have executed and delivered this Assignment as of the Effective Date.

ASSIGNOR:

**GMAC MORTGAGE LLC**, a Delaware limited liability company

By:_____
Name:_____
Title:_____

ASSIGNEE:

**ALLY FINANCIAL INC.**, a Delaware corporation

By:_____
Name:_____
Title:_____

**EXHIBIT 2**
**TO THE BURRELL DECLARATION**

## ASSIGNMENT OF LEASEHOLD INTEREST

THIS ASSIGNMENT OF LEASEHOLD INTEREST (this "Assignment") is executed as of the 9th day of May 2012 (the "Effective Date"), by and between **GMAC MORTGAGE LLC**, a Delaware limited liability company, fka GMAC Mortgage Corporation ("Assignor"), and **ALLY FINANCIAL INC.**, a Delaware corporation ("Assignee").

### RECITALS

A.    Pursuant to that certain Lease Agreement dated as of July 30, 2002, as amended by that certain First Amendment to Lease Agreement dated March 23, 2004, that certain Second Amendment to Lease Agreement dated November 4, 2005, and that certain Third Amendment to Lease Agreement dated August 25, 2011 (collectively, the "Lease"), Breof Convergence, LP, a Delaware limited partnership, as assignee of Lewisville LSF, L.P. ("Landlord") leased approximately 78,413 square feet of real property designated as Building 3 of the project commonly referred to as Convergence Office Center in Lewisville, Texas, as more fully described in the Lease (the "Premises"), to Assignor, as tenant.

B.    Section 11 of the Lease provides that Assignor may assign the Lease without Landlord's consent to an Affiliate (as defined in the Lease) of Assignor. Assignee is an Affiliate of Assignor.

C.    Assignor now wishes to assign an undivided fifty-one percent (51%) leasehold interest (the "Leasehold Interest") to Assignee in accordance with the terms of this Assignment.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    Assignment of Leasehold Interest. As of the Effective Date, Assignor does hereby grant, bargain, sell, assign, transfer and set over unto Assignee the Leasehold Interest, together with all rights and benefits thereunder, to have and to hold the same unto Assignee, its successor and assigns.

2.    Assumption of Leasehold Interest. As of the Effective Date, Assignee hereby assumes the obligations of Assignor under the Lease to the extent of the Leasehold Interest. Assignor's and Assignee's duties, obligations and authority with respect to the Lease, the Premises and all consents, approvals and other decisions regarding the Premises, the Lease and matters relating to or between the Landlord and the tenant under the Lease are set forth in that certain Shared Services Agreement between Assignor and Assignee, which, upon its effectiveness, shall govern the operations of the Premises after the transfer described herein.

3.    Further Assurances. It is the intention of the parties hereto that the Leasehold Interest shall be fully and absolutely transferred by Assignor to Assignee. Assignor therefore agrees that it shall execute any additional documents that may hereafter reasonably be requested by Assignee in order more fully to effectuate such transfer and assignment.

4.    Representations and Warranties. Assignor hereby represents and warrants that, as of the Effective Date:

a.    Assignor is the sole holder of the lessee's or tenant's interest in the Lease and the same has not been assigned or pledged;

b.      To the best of Assignor's actual knowledge, there exist no matters of title or record which would impair Assignor's transfer of the Leasehold Interest to Assignee or the right of Assignee to acquire and hold the Leasehold Interest in the Premises;

c.      Assignor has fully power and authority to enter into this Assignment and no approval of any third party is required ;

d.      There have been no amendments, oral or written, to the terms of the Lease, other than those set forth in Recital A above; and

e.      There exists no event of default and no circumstance which would, with the giving of notice or the passage of time or both, constitute an event of default under the Lease by Assignor or, to the best of Assignor's actual knowledge, Landlord.

5.      Indemnity.

a.      Assignee shall defend, indemnify and hold harmless Assignor and its affiliates for, from and against any and all claims, demands and liability (i) arising under or relating to the Lease that are directly or indirectly related to the failure of Assignee to perform or otherwise comply with all of the terms, covenants and agreements of the Lease which accrue during the period from and after the Effective Date through the date on which Assignee transfers all of the Leasehold Interest back to Assignor pursuant to Section 7 below, or (ii) arising from or relating to Assignee's breach of this Assignment.

b.      Assignor shall defend, indemnify and hold harmless Assignee and its affiliates for, from and against any and all claims, demands and liability (i) arising under or relating to the Lease prior to or following the Effective Date that are directly or indirectly related to the failure of Assignor to perform or otherwise comply with all of the terms, covenants and agreements of tenant under the Lease, or (ii) arising from or relating to Assignor's breach of this Assignment, including, without limitation, a breach of the representations contained herein.

6.      Re-Assignment Right.

(a) Re-Assignment.  The Leasehold Interest shall be re-assigned to Assignor by Assignee (the "Re-Assignment") at any time from and after the closing of the sale of all or substantially all of the assets of Seller and/or its affiliates to one or more purchasers (the "Asset Closing"), but in no event later than December 31, 2014.  The closing of the Re-Assignment (the "Re-Assignment Closing") shall take place on a date mutually agreed upon between Assignor and Assignee, but in any event, within thirty (30) days after notice from Assignor to Assignee that Assignor is exercising its right to have the Leasehold Interest re-assigned to Assignor.  Subject to the terms of this Section 6, Seller shall be entitled to exercise its right to the Re-Assignment on the day immediately prior to the Asset Closing.

(b) Deliveries.  At the Re-Assignment Closing the following shall occur:

(A) Assignment.  Assignee and Assignor shall deliver to each other a counterpart of a duly executed and acknowledged assignment of leasehold interest, in substantially the form and content of this Assignment.

(B) Additional Documents.  Assignee and Assignor shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all assignments and all other instruments and documents as may be reasonably

necessary in order to complete the transaction provided above with respect to the Re-Assignment.

(C) <u>Repurchase of Property Interest</u>. Reference is made to the Purchase and Sale Agreement dated as of May 9, 2012 between EPRE LLC, as seller, and Purchaser, as buyer, with respect to certain property in Hennepin County, Minnesota, and the Repurchase Closing (as defined therein) shall have occurred or shall occur simultaneously with the Re-Assignment Closing.

(c) <u>Assignment</u>. Assignor may transfer and assign its rights under this <u>Section 6</u>, in whole but not in part, to any purchaser of all or substantially all of its assets.

7.    <u>Counterparts</u>.  This Assignment may be executed in counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same Assignment.

8.    <u>Binding Effect</u>.  This Assignment shall be for the benefit of, and shall bind and inure to, Assignor, Assignee and their respective successors and assigns.

9.    <u>Fees and Expenses</u>.  Assignee shall pay any third party costs, fees, taxes and expenses (including the reasonable attorneys' fees of Assignor) applicable to the assignment of the Leasehold Interest to Assignee and Assignee shall pay any third party costs, fees, taxes and expenses (including the reasonable attorneys' fees of Assignor) applicable to the Re-Assignment of the Leasehold Interest to Assignor, in each case when due.

*[Signature Page Follows]*

IN WITNESS WHEREOF, Assignor and Assignee have executed and delivered this Assignment as of the Effective Date.

ASSIGNOR:

**GMAC MORTGAGE LLC**, a Delaware limited liability company

By: _____

Name: _____JAMES  WHITLINGER_____

Title: _____CFO_____

ASSIGNEE:

**ALLY FINANCIAL INC.**, a Delaware corporation

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, Assignor and Assignee have executed and delivered this Assignment as of the Effective Date.

ASSIGNOR:

**GMAC MORTGAGE LLC**, a Delaware limited liability company

By:_____
Name:_____
Title:_____

ASSIGNEE:

**ALLY FINANCIAL INC.**, a Delaware corporation

By:_____
Name: _EVAN NICULAS_
Title: _PRESIDENT, ALLY SERVICING and CHIEF PROCUREMENT OFFICER, ALLY FINANCIAL INC._

**EXHIBIT 3**
**TO THE BURRELL DECLARATION**

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

DATE(MM/DD/YYYY)
06/18/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc. Southfield MI Office 3000 Town Center Suite 3000 Southfield MI 48075 USA | PHONE (A/C, No, Ext): (866) 283-7122 | | FAX (A/C, No.): (847) 953-5390 |
| | E-MAIL ADDRESS: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| INSURED Ally Financial Inc, GMAC Inc and all Majority-Owned and Controlled Subsidiaries 200 Renaissance Center Detroit MI 48265 USA | INSURER A: National Union Fire Ins Co of Pittsburgh | | 19445 |
| | INSURER B: Commerce & Industry Ins Co | | 19410 |
| | INSURER C: New Hampshire Ins Co | | 23841 |
| | INSURER D: Chartis Casualty Company | | 40258 |
| | INSURER E: Illinois National Insurance Co | | 23817 |
| | INSURER F: ACE Property & Casualty Insurance Co. | | 20699 |

COVERAGES          CERTIFICATE NUMBER: 570046590518          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** | | | GL2449612 | 09/15/2011 | 09/15/2012 | EACH OCCURRENCE | $2,000,000 |
| | [X] COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | [ ] CLAIMS-MADE [X] OCCUR | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $2,000,000 |
| | | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | **AUTOMOBILE LIABILITY** | | | CA 3506475 All Other States | 09/15/2011 | 09/15/2012 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| A | [X] ANY AUTO | | | CA 3506474 VA | 09/15/2011 | 09/15/2012 | BODILY INJURY (Per person) | |
| | [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| A | [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | CA 3506473 MA | 09/15/2011 | 09/15/2012 | PROPERTY DAMAGE (Per accident) | |
| F | [X] UMBRELLA LIAB [X] OCCUR | | | X00G25834197 | 09/15/2011 | 09/15/2012 | EACH OCCURRENCE | $5,000,000 |
| | [ ] EXCESS LIAB [ ] CLAIMS-MADE | | | SIR applies per policy terms & conditions | | | AGGREGATE | $5,000,000 |
| | [ ] DED [X] RETENTION | | | | | | | |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | | WC015884024 All Other States | 09/15/2011 | 09/15/2012 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| C | ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) [ ] Y/N [N] N/A | | | WC015884025 CO,MN,NY,UT,VT | 09/15/2011 | 09/15/2012 | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE-EA EMPLOYEE | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Digital Lewisville, LLC, Digital Realty Trust, Inc. and Digital Realty Trust, LP are included as Additional Insured Vendor as required by written contract, but limited to the operations of the Insured under said contract, per the applicable endorsement with respect to the General Liability policy.  General Liability policy evidenced herein is Primary to other insurance available to the Certificate Holder, but only to the extent required by written contract with the Insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Digital Lewisville, LLC Digital Realty Trust, Inc. Digital Realty Trust, LP 2501 S. State Hwy. 121 Bus, Ste. 400D Lewisville TX 75067 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *Aon Risk Services Central, Inc.* |

©1988-2010 ACORD CORPORATION. All rights reserved.
ACORD 25 (2010/05)          The ACORD name and logo are registered marks of ACORD

*(right margin: Holder Identifier :   Certificate No : 570046590518)*

**Attachment to ACORD Certificate for** Ally Financial Inc, GMAC Inc

The terms, conditions and provisions noted below are hereby attached to the captioned certificate as additional description of the coverage afforded by the insurer(s). This attachment does not contain all terms, conditions, coverages or exclusions contained in the policy.

**INSURED**

Ally Financial Inc, GMAC Inc
and all Majority-Owned and
Controlled Subsidiaries
200 Renaissance Center
Detroit MI 48265 USA

| INSURER |
| --- |
| INSURER |
| INSURER |
| INSURER |
| INSURER |

**ADDITIONAL POLICIES**    If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER/ POLICY DESCRIPTION | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | WORKERS COMPENSATION | | | | | | | |
| D | | N/A | | WC015884027 CT,GA,KY,TX | 09/15/2011 | 09/15/2012 | | |
| E | | N/A | | WC015884026 IL,IN,LA,MI,PA | 09/15/2011 | 09/15/2012 | | |
| A | | N/A | | WC015884022 CA | 09/15/2011 | 09/15/2012 | | |
| B | | N/A | | WC015884023 FL | 09/15/2011 | 09/15/2012 | | |
| A | | N/A | | WC015884028 MA, MO, OH, WA, WI | 09/15/2011 | 09/15/2012 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

Certificate No :    570046590518

POLICY NUMBER: GL    244-96-12

COMMERCIAL GENERAL LIABILITY<br>CG 20 33 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **b.** Supervisory, inspection, architectural or engineering activities.

2. "Bodily injury" or "property damage" occurring after:

   **a.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **b.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc.,2004

**EXHIBIT 4**
**TO THE BURRELL DECLARATION**

# ACORD® CERTIFICATE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 06/20/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

If this certificate is being prepared for a party who has an insurable interest in the property, do not use this form. Use ACORD 27 or ACORD 28.

**PRODUCER**
Aon Risk Services Central, Inc.
Southfield MI Office
3000 Town Center
Suite 3000
Southfield MI 48075 USA

**CONTACT NAME:**
**PHONE (A/C, No, Ext):** (866) 283-7122
**FAX (A/C, No.):** (847) 953-5390
**E-MAIL ADDRESS:**
**PRODUCER CUSTOMER ID #:** 570000035089

**INSURED**
Ally Financial Inc and all Majority-
Owned and Controlled Subsidiaries
200 Renaissance Center
Detroit MI 48265 USA

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: ACE American Insurance Company | 22667 |
| INSURER B: Arch Insurance Company | 11150 |
| INSURER C: Federal Insurance Company | 20281 |
| INSURER D: Liberty Mutual Fire Ins Co | 23035 |
| INSURER E: Steadfast Insurance Company | 26387 |
| INSURER F: Lexington Insurance Company | 19437 |

**COVERAGES    CERTIFICATE NUMBER:** 570046625286    **REVISION NUMBER:**

LOCATION OF PREMISES/ DESCRIPTION OF PROPERTY (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | | LIMITS |
|---|---|---|---|---|---|---|---|---|
| F A D E C G B | X **PROPERTY** | | 025031592 | 06/15/2012 | 06/15/2013 | BUILDING | | |
| | CAUSES OF LOSS | DEDUCTIBLES | GPAD37748195003 | 06/15/2012 | 06/15/2013 | PERSONAL PROPERTY | | |
| | BASIC | BUILDING | M32L9L447689012 | 06/15/2012 | 06/15/2013 | BUSINESS INCOME w/o Extra Expense | | |
| | BROAD | | PPR914038404 | 06/15/2012 | 06/15/2013 | EXTRA EXPENSE | | |
| | | CONTENTS | 35860505 | 06/15/2012 | 06/15/2013 | RENTAL VALUE | | |
| | X SPECIAL | | MNG72944412 | 06/15/2012 | 06/15/2013 | BLANKET BUILDING | | |
| | EARTHQUAKE | | PRP003353603 | 06/15/2012 | 06/15/2013 | BLANKET PERS PROP | | |
| | WIND | | | | | X BLANKET BLDG & PP | | $5,000,000 |
| | FLOOD | | | | | | | |
| | Blkt B&PP Ded | | | | | | | |
| | **INLAND MARINE** | | TYPE OF POLICY | | | | | |
| | CAUSES OF LOSS | | | | | | | |
| | NAMED PERILS | | POLICY NUMBER | | | | | |
| | **CRIME** | | TYPE OF POLICY | | | | | |
| | **BOILER & MACHINERY / EQUIPMENT BREAKDOWN** | | | | | | | |

SPECIAL CONDITIONS / OTHER COVERAGES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

**CERTIFICATE HOLDER**

Digital Lewisville, LLC
Digital Realty Trust, Inc.
Digital Realty Trust, LP
2501 S. State Hwy. 121 Bus, Ste. 400D
Lewisville TX 75067 USA

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE**
*Aon Risk Services Central Inc.*

© 1995-2009 ACORD CORPORATION. All rights reserved.

ACORD 24 (2009/09)    The ACORD name and logo are registered marks of ACORD

## Attachment to ACORD Certificate for Ally Financial Inc and all Majority-

The terms, conditions and provisions noted below are hereby attached to the captioned certificate as additional description of the coverage afforded by the insurer(s). This attachment does not contain all terms, conditions, coverages or exclusions contained in the policy.

**INSURED**

Ally Financial Inc and all Majority-
Owned and Controlled Subsidiaries
200 Renaissance Center
Detroit MI 48265 USA

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER G : AXIS Insurance Company | 37273 |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL POLICIES**    If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| | | | | | | |

**Certificate Number :** 570046625286

**EXHIBIT 5**
**TO THE BURRELL DECLARATION**

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

**DATE(MM/DD/YYYY)** 09/17/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| Aon Risk Services Central, Inc.<br>Southfield MI Office<br>3000 Town Center<br>Suite 3000<br>Southfield MI 48075 USA | PHONE (A/C. No. Ext): (866) 283-7122 | FAX (A/C. No.): (847) 953-5390 |
| | E-MAIL ADDRESS: | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| **INSURED** Ally Financial Inc, GMAC Inc and all Majority-Owned and Controlled Subsidiaries 200 Renaissance Center Detroit MI 48265 USA | INSURER A: National Union Fire Ins Co of Pittsburgh | 19445 |
| | INSURER B: ACE Property & Casualty Insurance Co. | 20699 |
| | INSURER C: Illinois National Insurance Co | 23817 |
| | INSURER D: Commerce & Industry Ins Co | 19410 |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES    CERTIFICATE NUMBER: 570047469347    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS-MADE [X] OCCUR | | | GL7146415 | 09/15/2012 | 09/15/2013 | EACH OCCURRENCE | $2,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $2,000,000 |
| | | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | **AUTOMOBILE LIABILITY**<br>[X] ANY AUTO | | | CA 3447240<br>All Other States | 09/15/2012 | 09/15/2013 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| A | [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS | | | CA 3447239<br>VA | 09/15/2012 | 09/15/2013 | BODILY INJURY ( Per person) | |
| A | [X] HIRED AUTOS [ ] NON-OWNED AUTOS | | | CA 3447238<br>MA | 09/15/2012 | 09/15/2013 | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| B | [X] **UMBRELLA LIAB** [X] OCCUR<br>[ ] EXCESS LIAB [ ] CLAIMS-MADE | | | X00G27043410<br>SIR applies per policy terms & conditions | 09/15/2012 | 09/15/2013 | EACH OCCURRENCE | $5,000,000 |
| | [ ] DED [X] RETENTION | | | | | | AGGREGATE | $5,000,000 |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N<br>ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER EXCLUDED? [N]<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC043464644<br>All Other States | 09/15/2012 | 09/15/2013 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| A | | | | WC043464643<br>MA, ND, OH, WA, WI | 09/15/2012 | 09/15/2013 | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE-EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE-POLICY LIMIT | $1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

Digital Lewisville, LLC, Digital Realty Trust, Inc. and Digital Realty Trust, LP are included as Additional Insured Vendor as required by written contract, but limited to the operations of the Insured under said contract, per the applicable endorsement with respect to the General Liability policy. General Liability policy evidenced herein is Primary to other insurance available to the Certificate Holder, but only to the extent required by written contract with the Insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Digital Lewisville, LLC<br>Digital Realty Trust, Inc.<br>Digital Realty Trust, LP<br>2501 S. State Hwy. 121 Bus, Ste. 400D<br>Lewisville TX 75067 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Aon Risk Services Central, Inc.* |

Holder Identifier :

Certificate No. : 570047469347

©1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

**Attachment to ACORD Certificate for** Ally Financial Inc, GMAC Inc
The terms, conditions and provisions noted below are hereby attached to the captioned certificate as additional description of the coverage afforded by the insurer(s). This attachment does not contain all terms, conditions, coverages or exclusions contained in the policy.

**INSURED**

Ally Financial Inc, GMAC Inc
and all Majority-Owned and
Controlled Subsidiaries
200 Renaissance Center
Detroit MI 48265 USA

| INSURER |
|---------|
| INSURER |
| INSURER |
| INSURER |
| INSURER |

**ADDITIONAL POLICIES**    If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER/ POLICY DESCRIPTION | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | WORKERS COMPENSATION | | | | | | | |
| C | | N/A | | WC043464642 IL, IN, LA, MI | 09/15/2012 | 09/15/2013 | | |
| A | | N/A | | WC043464640 CA | 09/15/2012 | 09/15/2013 | | |
| D | | N/A | | WC043464641 FL | 09/15/2012 | 09/15/2013 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**Certificate No :**   570047469347