**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Todd M. Goren
Alexandra Steinberg Barrage
Jennifer L. Marines

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

-------------------------------------------------------------------------

**NOTICE OF FILING OF AMENDED PROPOSED ORDER UNDER 11 U.S.C. §§ 105, 363,
AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (I) APPROVING
(A) SALE OF DEBTORS' ASSETS PURSUANT TO ASSET
PURCHASE AGREEMENT WITH BERKSHIRE HATHAWAY INC.;
(B) SALE OF PURCHASED ASSETS FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;
<u>AND (C) RELATED AGREEMENTS; AND (II) GRANTING RELATED RELIEF</u>**

**PLEASE TAKE NOTICE THAT** on May 14, 2012, the debtors and debtors in possession in

the above-captioned cases (collectively, the "<u>Debtors</u>")[1] filed the *Debtors' Motion Pursuant to 11*

*U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014*

*For Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense*

*Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of*

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the
*Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC in Support of the Chapter 11 Petitions
and First Day Pleadings* [Docket No. 6].

*Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 61].

**PLEASE TAKE FURTHER NOTICE THAT** on June 28, 2012, in connection with the Sale Motion, the Debtors filed the *Proposed Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* (the "Proposed BH Sale Approval Order") [Docket No. 537].

**PLEASE TAKE FURTHER NOTICE THAT** on November 15, 2012, and in connection with the Sale Motion, the Debtors filed the *Amended Proposed Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* (the "Amended Proposed BH Sale Approval Order"), attached hereto as Exhibit 1.  A comparison of the Proposed BH Sale Approval Order and the Amended Proposed BH Sale Approval Order is attached here to as Exhibit 2.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Proposed Amended BH Sale

Approval Order can be viewed and obtained on the Court's internet website at www.nysb.uscourts.gov

and on the independent website maintained by the Debtors, http://www.kccllc.net/rescap.  A login and

password to the Court's Public Access to Electronic Court Records ("PACER") are required to access

www.nysb.uscourts.gov and can be obtained through the PACER Service Center at

www.pacer.psc.uscourts.gov.

Dated:  November 15, 2012
         New York, New York

/s/ Gary S. Lee
Gary S. Lee
Todd M. Goren
Alexandra Steinberg Barrage
Jennifer L. Marines

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

## Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
                                           )
In re:                                    )      Case No. 12-12020 (MG)
                                           )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,   )      Chapter 11
                                           )
                              Debtors.    )      Jointly Administered
-------------------------------------------------------------------- )

### PROPOSED ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND FED. R. BANKR. P. 2002, 6004,  6006, AND 9014 (I) APPROVING (A) SALE OF DEBTORS' ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT WITH BERKSHIRE HATHAWAY INC.; (B) SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; <u>AND (C) RELATED AGREEMENTS; AND (II) GRANTING RELATED RELIEF</u>

Upon the motion, dated May 14, 2012 (the "<u>Motion</u>"), of Residential Capital, LLC ("<u>ResCap</u>") and certain of its affiliates, as debtors in possession in the above-captioned Chapter 11 cases (collectively, the "<u>Debtors</u>"),[1] for entry of an order, under Bankruptcy Code sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 authorizing and approving (i) that certain Asset Purchase Agreement, dated as of May 13, 2012 (the "<u>AFI APA</u>")[2], entered into by and among Ally Financial Inc. ("<u>AFI</u>"), BMMZ Holdings LLC ("<u>BMMZ</u>"), ResCap, Residential Funding Company, LLC ("<u>RFC</u>"), and GMAC Mortgage, LLC ("<u>GMAC Mortgage</u>"); (ii) the sale and all related transactions, in accordance with the AFI APA of all of

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the BH Legacy APA (as defined herein). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

[2] At the June 18 and 19, 2012 hearings on the Motion, the Bankruptcy Court did not approve the AFI APA and instead approved Berkshire Hathaway Inc. as the stalking-horse bidder for the Purchased Assets.

the Debtors' right, title, and interest in, to and under the Purchased Assets to BMMZ; and (iii) granting related relief; and upon the Whitlinger Affidavit, pursuant to Local Bankruptcy Rule 1007-2; the Greene Declaration; the Declaration of R. Ted Weschler in Support of the Objection of Berkshire Hathaway Inc. to Debtors' Motion; the Puntus Declaration; and the Anti-Collusion Declaration in Accordance with Sale Procedures Order Dated June 28, 2012 [Docket No. 538]; it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having entered an order, dated June 28, 2012 (the "Sale Procedures Order"), (i) authorizing and approving that certain asset purchase agreement, dated June 21, 2012, a copy of which was filed on June 28, 2012, by and among Berkshire Hathaway Inc. ("BH"), on the one hand, and ResCap, RFC, and GMAC Mortgage, on the other (including all schedules, exhibits, and attachments thereto, including the Ancillary Agreements (as such term is defined therein) to be entered into by and among the parties as contemplated therein, in each case as amended or modified, collectively, the "BH Legacy APA"), and providing for the sale and all related transactions, in accordance with the BH Legacy APA and this Order (the "Sale"), of all of the Debtors' right, title, and interest in, to and under the Purchased Assets to the Purchaser free and clear of all Claims, Liens, encumbrances, or other interests (including, any and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims based on any successor or transferee liability) other than the Permitted Liens (collectively, all such Claims, Liens, encumbrances and other interests other than the Permitted Liens, "Interests"), with such Interests transferring and attaching to the proceeds of the Sale with the same validity and priority as such Interests had in the Purchased Assets immediately prior to the Sale; and (ii) authorizing and approving the Sale Procedures notice of the Sale and the hearing to consider approval of the Sale (the

2

"Sale Hearing")[3]; an Auction having been held in accordance with the Sale Procedures Order; and at the conclusion of the Auction, BH was chosen as the Successful Bidder (as defined in the Sale Procedures Order) in accordance with the Sales Procedures Order; and the Sale Hearing having been held on November [__], 2012 to consider the relief requested in the Motion; and upon the record of the Sale Hearing, and all of the proceedings before the Court; and the Court having reviewed the Motion and any objections thereto (the "Objections"); and all parties in interest having been afforded an opportunity to be heard with respect to the Motion and all of the relief related thereto; and it appearing that the relief requested by the Motion with respect to the Sale as amended and modified as provided in this Order is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it is

**FOUND AND DETERMINED THAT:**[4]

**A.    Jurisdiction and Venue.**  This Court has jurisdiction over the Motion and the Sale pursuant to 28 U. S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U. S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**B.    Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, as supplemented by Bankruptcy

---

[3] For the purposes of this Order, the term "Sale Hearing" shall be any hearing at which the approval of the Sale is considered.

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

Rules 2002, 6004, 9007 and 9014. The consummation of the Sale contemplated by the BH

Legacy APA and this Order is legal, valid and properly authorized under all such provisions of

the Bankruptcy Code and Bankruptcy Rules, and all of the applicable requirements of such

sections and rules have been complied with in respect of the Sale.

C.    **Notice.**  As evidenced by the affidavits and certificates of service and Publication

Notice previously filed with the Court and based on the representations of counsel at the Sale

Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice of the

Motion, the Sale Procedures, the Sale, the Auction, and the Sale Hearing have been provided in

accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a),

6004(a), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested

persons and entities, including: (i) the Office of the United States Trustee for the Southern

District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's

prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition

amended and restated secured revolving credit agreement, (v) the attorneys for the agent under

the Debtors' post-petition debtor in possession financing facility, (vi) the attorneys for the

statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the

"Creditors' Committee"), (vii) the attorneys for the ad hoc bondholders' committee, (viii) the

attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage

Corporation, and the Government National Mortgage Association, (ix) any party who, in the

past year, expressed in writing to the Debtors an interest in the Purchased Assets and who the

Debtors and their representatives reasonably and in good faith determine potentially have the

financial wherewithal to effectuate the transaction contemplated in the APA, (x) all trustees

(including indenture and securitization trustees), certificate holders, investors, rating

agencies, mortgage insurers and any parties to any pooling and servicing agreements,

assignment, assumption and recognition agreements, SBO Servicing Agreements, subservicing

agreements or similar agreements (all such parties in this clause (x), the "Interested Contract

Parties"); (xi) all parties who are known to have asserted or believed by Debtors to hold any

Interest in or on the Purchased Assets, (xii) the Securities and Exchange Commission, (xiii) the

Internal Revenue Service, (xiv) all applicable state attorneys' general, and local authorities,

(xv) all applicable state and local taxing authorities, (xvi) the Federal Trade Commission, (xvii)

the United States Department of Justice, (xviii) the United States Attorney's Office, (xix) the

office of the New York Attorney General; (xx) all entities that requested notice in these

Chapter 11 cases under Bankruptcy Rule 2002; and (xxi) all Persons required to be provided with

notice pursuant to the BH Legacy APA (collectively, the "Notice Parties"). The Debtors published

the Notice of Auction and Sale Hearing in the national editions of *The Wall Street Journal* and

*The New York Times*.  The notice described in this Paragraph C is good, sufficient and

appropriate under the circumstances, and no other or further notice of the Motion, the

Auction, the Sale Hearing, the BH Legacy APA, the Sale, and this Order is or shall be required.

With respect to parties who may have claims against the Debtors, but whose identities are not

reasonably ascertainable by the Debtors, the Publication Notice described above was sufficient

and reasonably calculated under the circumstances to reach such parties.

    **D.    Extensive Efforts by Debtors.**  As of the Petition Date and for a period of more

than 7 months before the commencement of these Chapter 11 cases, the Debtors worked with

their counsel and financial advisors, AFI, and various governmental constituencies to

implement a viable transaction that would allow them to continue their operations.  The Debtors

5

presented credible evidence that, as of the Petition Date, they had explored various strategic alternatives for the Debtors' businesses over an extended period of time and had communicated with 5 parties about a possible sale of all or substantially all of the Debtors' assets. The Sale is the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Debtors' estates, for the benefit of creditors.

**E.    Business Justification.**  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets. In light of the circumstances of these Chapter 11 cases and the risk of deterioration in the going concern value of the Purchased Assets pending the Sale, time is of the essence in (i) consummating the Sale, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, and their creditors and employees.

**F.    Sale Procedures Order.**  On June 28, 2012, this Court entered the Sale Procedures Order approving Sale Procedures for the Purchased Assets. The Sale Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets.

**G.    Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Debtors have adequately marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a higher or better offer for the Purchased Assets; (c) the consideration provided for in the BH Legacy APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the

consideration provides fair and reasonable consideration for the Purchased Assets and
constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the
United States, any state, territory, possession, or the District of Columbia; (e) the Sale will
provide a greater recovery for the Debtors' creditors than would be provided by any other
practically available alternative, including liquidation under Chapters 7 or 11 of the Bankruptcy
Code; (f) taking into consideration all relevant factors and circumstances, no other entity has
offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates;
and (g) the Debtors' determination that the BH Legacy APA constitutes the highest and best offer
for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business
judgment.

       **H.**       **Opportunity to Object.**  A reasonable opportunity to object or be heard with
respect to the Motion and the relief requested therein has been afforded to all interested Persons,
including the Notice Parties.

       **I.**       **Sale in Best Interests.**  The actions represented to be taken by the Sellers and the
Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in the best
interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the
BH Legacy APA and circumstances of the Sale at this time is in the best interests of the Debtors,
their creditors, their estates, and all other parties in interest.

       **J.**       **No *Sub Rosa* Plan.**  In the event the Sale is approved under section 363 of the
Bankruptcy Code, the consummation of the Sale outside of a plan of reorganization pursuant to
the BH Legacy APA neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* plan of reorganization.

**K.        Arm's-Length Sale.**  The BH Legacy APA was negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Neither the Sellers nor the Purchaser, nor any of their respective insiders and affiliates, have engaged in any conduct that would cause or permit the BH Legacy APA or any part of the Sale to be avoided under section 363(n) of the Bankruptcy Code.

**L.        Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Prior to the date of this Order, the Purchaser provided to the Debtors and the Committee a declaration certifying that there was no collusion between Purchaser on the one hand, and any other potential purchaser, on the other hand.  Based on that declaration, the Purchaser has not colluded with any other potential purchaser.

**M.        Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the BH Legacy APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the BH Legacy APA, (iii) has taken all corporate action necessary to authorize and approve the BH Legacy APA and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the BH Legacy APA, which may be waived by the Purchaser, to consummate such transactions.

**N.        Binding and Valid Transfer.**  The transfer of the Purchased Assets to the

Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the

Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear

of all Interests, including (i) rights or claims based on any successor or transferee liability, (ii)

those that purport to give to any party a right or option to effect any setoff, forfeiture,

modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the

Purchased Assets, or any similar rights, (iii) those relating to taxes arising under or out of, in

connection with, or in any way relating to the operation of the Purchased Assets prior to the

closing, and (iv) (a) those arising under all mortgages, deeds of trust, security interests,

conditional sale or other title retention agreements, pledges, liens, judgments, demands,

encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, any

restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of

ownership and (b) all debts arising in any way in connection with any agreements, acts, or

failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, claims (as

that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties,

options, rights, contractual or other commitments, restrictions, interests and matters of any

kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to

or subsequent to the commencement of these Chapter 11 cases, and whether imposed by agreement,

understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising

under doctrines of successor or transferee liability, Claims or Liabilities relating to any act or

omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date,

and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or

9

any other Person prior to the Closing Date.  The APA and the related documents and agreements contemplated thereby, and the consummation of the transactions contained therein shall not be subject to avoidance by the Debtors, any affiliate of the Debtors, any of their respective successor trustees appointed with respect thereto, or any other person or entity, including, without limitation, any claims with respect to any transfers made in accordance with Section 2.4 of the BH Legacy APA.

O.    **Satisfaction of 363(f) Standards.**  The Sellers may sell, and, upon closing of the Sale, shall be deemed to have sold the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including all rights or claims based upon any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests, including all rights or claims based on any successor or transferee liability are (a) deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) adequately protected by having their Interests, if any, including all rights or claims based on any successor or transferee liability, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest, including all rights or claims based on any successor or transferee liability.  In all cases, each such Person with Interests in the Purchased Assets are enjoined from taking any action against the Purchaser, the Purchaser's Affiliates or any agent of the foregoing to recover any such Interest.

P.    **Necessity of Order.**  The Purchaser would not have entered into the BH Legacy APA and would not have consummated the Sale without all of the relief provided for in this Order (including that the transfer of the Purchased Assets to Purchaser be free and clear of all Interests and including rights or Claims based upon successor or transferee liability, Claims or

10

Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date).

**Q.    Personally Identifiable Information.**  The Debtors have provided certain privacy policies to consumers that govern the disclosure of "personally identifiable information" (as defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties. The Debtors have proposed to sell certain assets, which may require the disclosure of personally identifiable information to third parties.  The Debtors' disclosure of personally identifiable information pursuant to the Sale is in compliance with the Gramm-Leach-Bliley Act and is consistent with the privacy notices delivered by the Debtors to mortgage borrowers.  For these reasons, no consumer privacy ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

**R.    Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**S.    SBO Servicing Agreements.**  Subject to the terms of the BH Legacy APA with respect to the assumption and assignment of the SBO Servicing Agreements, the Purchaser is the assignee of all of the Debtors' rights under the those SBO Servicing Agreements that are to be assumed and assigned to the Purchaser, and such Purchaser shall, to the extent applicable, acquire all of the Sellers' rights thereunder free and clear of any Claims or Liabilities arising prior to the Closing Date.

11

      **T.**    **Cure/Adequate Assurance.**  The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the SBO Servicing Agreements within the meaning of section 365(b)(1)(A) of the of the Bankruptcy Code.  Any Cure Amounts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such SBO Servicing Agreements.  The Purchaser's promise to perform the obligations under the SBO Servicing Agreements after the Closing Date shall constitute adequate assurance of its future performance of and under the SBO Servicing Agreements, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.    The Purchaser is not assuming any obligation under or in connection with the SBO Servicing Agreements occurring or arising prior to the Closing Date, whether encompassed within the Cure Amounts payable by the Debtors or otherwise.  All Interested Contract Parties of the SBO Servicing Agreements who did not timely file an objection to the assumption and assignment of the Assumed Contract, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  To the extent not resolved and/or adjourned at or prior to the Sale Hearing, the objections of all Interested Contract Parties of SBO Servicing Agreements that did file a timely objection to the assumption and assignment of such parties' respective Assumed Contract relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by the Court, are overruled on the merits with prejudice; provided, however, that to the extent an objection of the Interested Contract Parties, or unresolved portion thereof, relates solely to a Cure Amount, such objection is preserved and shall be heard by the Court on a date mutually agreed to by the parties or as determined by the

Court, and are deemed to consent to the assumption by the Debtors of their respective

Assumed Contract and the assignment thereof to the Purchaser.  The Court finds that with

respect to all such SBO Servicing Agreements the payment of the Cure Amounts is

appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the

Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) of the Bankruptcy

Code have been satisfied for the assumption and the assignment by the Debtors to the

Purchaser of each of the SBO Servicing Agreements.  To the extent any Assumed Contract is

not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall

be transferred to the Purchaser in accordance with the terms of this Order that are applicable

to the Purchased Assets, and the Purchaser shall have no liability or obligation for any (a)

defaults or breaches under such agreement that relate to acts or omissions that occurred in the

period, or otherwise arose, prior to the Closing Date, and (b) Claims, counterclaims, offsets,

or defenses (whether contractual or otherwise, including without limitation, any right of

recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that

arose or occurred prior to the Closing Date.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED
THAT:**

1.      **Motion is Granted.**  The Motion is granted and the relief requested, as amended

and modified herein, with respect to the Sale is granted and approved in its entirety, as further

described herein.

2.      **Objections Overruled.**  Any objections to the entry of this Order or the relief

granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or

not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on

13

the merits with prejudice, except to the extent any objections to Cure Amounts were

unresolved and/or adjourned prior to or at the Sale Hearing.

3.     **Approval.**  The BH Legacy APA, and all the terms and conditions thereof, is

approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized

and directed to perform their obligations under, and comply with the terms of, the BH Legacy

APA and consummate the Sale pursuant to, and in accordance with, the terms and conditions of

the BH Legacy APA and this Order. The Debtors are authorized and directed to execute and

deliver, and empowered to perform under, consummate, and implement, the BH Legacy APA,

together with all additional instruments and documents that the Sellers or the Purchaser deem

necessary or appropriate to implement the BH Legacy APA and effectuate the Sale, and to

take all further actions as may reasonably be required by the Purchaser for the purpose of

assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to

Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the

performance of the obligations as contemplated by the BH Legacy APA.

4.     **Binding Effect of Order.**  This Order and the BH Legacy APA shall be

binding in all respects upon all known and unknown creditors of, and equity security interests

in, any Debtor, including any holders of Interests (including holders of rights or claims based

on any successor or transferee liability), all successors and assigns of the Purchaser, each

Seller and their Affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in

the Debtors' Chapter 11 cases or upon a conversion to cases under Chapter 7 of the Bankruptcy

Code, and this Order shall not be subject to amendment or modification and the BH Legacy

APA shall not be subject to rejection. The terms of this Order shall apply in any sale pursuant to

a Chapter 11 plan and may be incorporated into any confirmation order. Nothing contained in any

Chapter 11 plan confirmed in the Debtors' Chapter 11 cases or the order confirming any such

Chapter 11 plan shall conflict with or derogate from the provisions of the BH Legacy APA or

this Order.

      5.      **Injunction.**  All persons and entities are prohibited and enjoined from taking

any action to adversely affect or interfere with the ability of the Debtors to transfer the

Purchased Assets to the Purchaser in accordance with the BH Legacy APA and this Order.

Following the Closing, except for Persons entitled to enforce Permitted Liens, all Persons

(including, but not limited to, the Debtors and/or their respective successors (including any

trustee), creditors, investors, certificate holders, securitization trustees, borrowers, current and

former employees and shareholders, administrative agencies, governmental units, secretaries of

state, federal, state, and local officials, including those maintaining any authority relating to

any environmental, health and safety laws, and the successors and assigns of each of the

foregoing) holding Interests in the Purchased Assets or against the Debtors in respect of the

Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred,

estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any

Interests of any kind or nature whatsoever (including, Claims or Liabilities relating to any act or

omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date,

and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or

any other Person prior to the Closing Date) against the Purchaser or any Affiliate of the

Purchaser or any of their respective property, successors and assigns, or the Purchased Assets, as

an alleged successor or on any other grounds, it being understood that nothing herein shall

affect assets of the Debtors that are not Purchased Assets.

<div align="center">15</div>

6.      No Person shall assert, and the Purchaser and the Purchased Assets shall not be
subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or
otherwise, including any right of recoupment), Liabilities, Claims and Interests, or basis of any
kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or
any obligation of any other party, under or with respect to, any Purchased Assets with respect to
any act or omission that occurred prior to the Closing.  All Interested Contract Parties are
directed to recognize the Purchaser as the owner of the Purchased Assets.

7.      **General Assignment.**  Upon the Closing, this Order shall be construed and shall
constitute for any and all purposes a full and complete general assignment, conveyance, and
transfer of the Sellers' interests in the Purchased Assets and a bill of sale transferring good and
marketable title in the Purchased Assets to the Purchaser. Each and every federal, state, and local
governmental agency, quasi-agency, or department is hereby directed to accept this Order, or
any and all other documents and instruments necessary and appropriate to consummate the Sale.

8.      **Transfer Free and Clear.**  Except as otherwise provided by section 363(o) of
the Bankruptcy Code, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the
Purchased Assets shall be transferred to the Purchaser as required under the BH Legacy APA,
and such transfer shall be free and clear of all Interests of any Person (including, Claims,
Liabilities, or Cure Amounts relating to any act or omission of any originator, holder or
servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or
Liabilities relating to any act or omission of the Sellers or any other Person prior to the
Closing Date) and any and all rights and claims under any bulk transfer statutes and similar laws,
whether arising by agreement, by statute or otherwise and whether occurring or arising before,
on or after the date on which these Chapter 11 cases were commenced, whether known or

unknown, occurring or arising prior to such transfer, with all such Interests to attach to the

proceeds of the Sale ultimately attributable to the property against or in which the holder of a

Claim or Interest claims or may claim a Claim or Interest, in the order of their priority, with

the same validity, force, and effect which they now have, subject to any claims and

defenses the Sellers may possess with respect thereto.  For the avoidance of doubt, the

transfer of the Securitized Advances to the Purchaser, and the Purchaser's right to receive

payments with respect to such Securitized Advances, shall be free and clear of all Liens (other

than Permitted Liens), Claims and Liabilities and Cure Amounts (including, without

limitation, any obligations to fund or otherwise satisfy any draw requests) and irrespective of

a party's ownership of the servicing rights (primary or master servicing) related to the

underlying home equity lines of credit.

9.    **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser

pursuant to the BH Legacy APA constitutes a legal, valid, and effective transfer of the

Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and

to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including

all rights or claims based on any successor or transferee liability.  The transfers of Purchased

Assets shall not be subject to avoidance for any reason by the Debtors, any affiliate of the

Debtors, their respective successors, or any creditor thereof including, without limitation, with

respect to any transfers pursuant to Section 2.4 of the BH Legacy APA.  For the avoidance of

doubt, in the event that BH elects to designate other parties to whom the Purchased Assets, or

any portion thereto, shall be conveyed, transferred, assigned, and/or delivered in accordance

17

with section 2.13 of the BH Legacy APA, BH's obligations under the BH Legacy APA with

respect to such Purchased Assets shall remain unchanged.

10.     **Direction to Release Interests.**  Upon the Closing, each of the Sellers' creditors

and any other holder of an Interest, including rights or Claims based on any successor or

transferee liability, is authorized and directed to execute such documents and take all other

actions as may be necessary to release its Interest in the Purchased Assets, if any, as such Interest

may have been recorded or may otherwise exist. If any person or entity that has filed financing

statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements

evidencing an Interest in the Sellers or the Purchased Assets shall not have delivered to the

Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of all Interests, which the person or

entity has with respect to the Sellers or the Purchased Assets or otherwise, then (i) the Sellers

are authorized and directed to execute and file such statements, instruments, releases, and other

documents on behalf of the person or entity with respect to the Sellers or the Purchased Assets,

and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this

Order, which shall constitute conclusive evidence of the release of all liens, claims,

encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the

Purchased Assets.  Each and every federal, state, and local governmental agency or department is

hereby directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the BH Legacy APA, including, without

limitation, recordation of this Order. This Order shall be binding upon and shall govern the acts

of all Persons including without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

18

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other Persons who may be required by operation of law, the duties of their office, or contract, to

accept, file, register, or otherwise record or release any documents or instruments, or who may

be required to report or insure any title or state of title in or to any of such assets or other

property interests.

11.    **No Interference.**  Following the Closing of the Sale, no holder of any Interest

shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets

based on, or related to, any such Interest, or based on any actions the Debtors may take in their

Chapter 11 cases.

12.    **Surrender of Possession.**  All entities that are currently, or on the Closing Date

may be, in possession of some or all of the Purchased Assets in which the Sellers hold an

interest hereby are directed to surrender possession of the Purchased Assets to the Purchaser on the

Closing Date, unless the Purchaser otherwise agrees.

13.    **No Discriminatory Treatment.**  To the extent provided by section 525 of the

Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

permit, license, or similar grant relating to the operation of the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these

Chapter 11 cases or the consummation of the Sale contemplated by the BH Legacy APA.

14.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a), 363,

and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the

Debtors' assumption and assignment to the Purchaser of the SBO Servicing Agreements is

19

approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

15.    The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Sale Procedures Order and the BH Legacy APA, the SBO Servicing Agreements free and clear of all Interests of any kind or nature whatsoever, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deem may be necessary to assign and transfer the SBO Servicing Agreements to the Purchaser.

16.    The SBO Servicing Agreements shall be transferred and assigned to, pursuant to the Sale Procedures Order and the BH Legacy APA, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such SBO Servicing Agreements (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Sellers shall be relieved from any further liability, other than the Cure Amounts, with respect to the SBO Servicing Agreements after such assumption and assignment to the Purchaser.  The Debtors may assign each SBO Servicing Agreement in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any SBO Servicing Agreements that prohibit or condition the assignment of such SBO Servicing Agreements or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such SBO Servicing Agreement, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and

365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser

of each SBO Servicing Agreement have been satisfied.

17.     All defaults and all other obligations or Liabilities under any SBO Servicing

Agreement occurring, arising or accruing prior to the date of the assignment or transfer to the

Purchaser shall be deemed cured or satisfied upon payment by the Sellers of the Cure Amount,

and, without limiting the foregoing, no effect shall be given to any default of the type set forth in

section 365(b)(2) of the Bankruptcy Code, whether or not such SBO Servicing Agreement is an

executory contract within the meaning of section 365 of the Bankruptcy Code.  The Cure

Amounts reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure

all monetary defaults under the SBO Servicing Agreements, and no other amounts are or shall be

due to the non-debtor parties in connection with the assumption by the Debtors and assignment

to the Purchaser of the SBO Servicing Agreements.

18.     Except as provided in the BH Legacy APA or this Order, after the Closing, the

Debtors and their estates shall have no further liabilities or obligations with respect to any SBO

Servicing Agreements other than certain Cure Amounts, and all holders of such claims arising

from and after Closing under any SBO Servicing Agreement are forever barred and estopped

from asserting any claims (other than for Cure Amounts) under any Assumed Contract against

the Debtors, their successors or assigns, and their estates.

19.     The Debtors, in consultation with the Creditors' Committee and the Purchaser,

and the relevant non-debtor counterparty shall have authority to compromise, settle, or otherwise

resolve any objections to proposed Cure Amounts without further order of the Bankruptcy Court;

provided, however, the consent of the Creditors' Committee (which consent shall not be

21

unreasonably withheld) shall be required with respect to the allowance of any Cure Amount in excess of $1 million.  If the Debtors, in consultation with the Creditors' Committee, the Purchaser and the non-debtor counterparty, determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the executory contract or unexpired lease and/or the proposed Cure Amount with respect to such contract or lease will be determined by the Court at a date mutually agreed to by the parties or as determined by the Court.

20.     The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any SBO Servicing Agreement shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the SBO Servicing Agreements.

21.     **No Successor Liability.**  Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing. The Purchaser shall not be deemed, as a result of any action taken in connection with the BH Legacy APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or

antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

22.    **Fair Consideration.**  The consideration provided by the Purchaser for the Purchased Assets under the BH Legacy APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sales may not be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser was not party to any agreements to control the sale price, and is not subject to any claims for damages under section 363(n) of the Bankruptcy Code.

23.    **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests, Claims or Liabilities against or related to the Sellers or the Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of the Bankruptcy Code.

24.    **Good Faith.**  The transactions contemplated by the BH Legacy APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser

23

in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  There has been no collusion by the Purchaser.

25.    **No Bulk Law Application.**  No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the BH Legacy APA, the Motion, and this Order.

26.    **Subsequent Plan Provisions.**  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the BH Legacy APA or this Order.

27.    **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the BH Legacy APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the BH Legacy APA be authorized and approved in its entirety.

28.    **Non-Material Modifications.**  The BH Legacy APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have any adverse effect on the Debtors' estates.

29.    **Appointment of Trustee.**  The provisions of the BH Legacy APA and this Order may be specifically enforced in accordance with the BH Legacy APA notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

30.    **Application of Net Proceeds and Repayment of Obligations Under the Ally DIP Facility.**  Consistent with the terms of the *Final Order Under Sections 105, 361, 362, 363,*

*and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I)*

*Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II)*

*Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate*

*Protection Parties* [Docket No. 491], the Debtors are authorized and directed to apply the net

proceeds of the Sale attributable to the collateral securing the Ally DIP to repay the PPL

Obligations under the Ally DIP Facility.  No failure of the Debtors to comply with this paragraph

25 shall have any effect whatsoever on the sale of the Purchased Assets under the BH Legacy

APA and such sale shall be free and clear as set forth in this Order, including in paragraphs N-P,

T, 3-12, 15-17, and 21 of this Order.

31.    **Application of Net Proceeds and Repayment of Obligations Under the**

**Barclays DIP Facility.**  Consistent with the terms of the *Final Order Pursuant to 11 U.S.C. §§*

*105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and*

*Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under*

*Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements*

*Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements*

*relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured*

*Superpriority Basis and (II) Granting Related Relief* (Docket No. 490) (the "Barclays DIP

Order"),[5] at Closing the Debtors are authorized and directed to pay to the Administrative Agent

an amount in cash equal to the outstanding DIP Obligations for application by the Administrative

Agent in accordance with section 2.14 of the DIP Credit Agreement; provided that if the Sale

---

[5]        Except for the terms the "Sale", "Closing", "Order", "Debtors", "Purchased Assets", and "BH Legacy APA", all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Barclays DIP Order.

25

meets the criteria listed in section 6.08(e)(i)-(iv) of the DIP Credit Agreement then the Debtors

shall  pay to the Administrative Agent the Net Asset Sale Proceeds (as defined in the DIP Credit

Agreement) of the Sale at Closing.  The liens of the Administrative Agent, the Collateral Agent

and the DIP Lenders on the Collateral shall attach to the proceeds of the sales contemplated by

this Order until the payments required by this paragraph and by the DIP Credit Agreement are

made. No failure of the Debtors to comply with this paragraph 26 shall have any effect

whatsoever on the sale of the Purchased Assets under the BH Legacy APA and such sale shall be

free and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-17, and 21 of

this Order.

32.    **Purchase Price Allocation Reservation of Rights**.  Any purchase price

allocations contained in Article III of the BH Legacy APA are not binding in any way on

creditors of the various Debtors with respect to the allocation of the proceeds of the Sale either

between and among the various Debtor estates or between and among the various classes of

assets sold; provided that any subsequent allocation of the proceeds for claim purposes shall have

no effect on the Purchaser, in its capacity as Purchaser. All rights of all parties are reserved with

respect to the allocation or distribution of the proceeds of the Sale.

33.    **Intercompany Claims.**  If as a result of the consummation of the Sale, the

Debtors are obligated under the terms of the Amended and Restated DIP Credit Agreement  to

utilize the proceeds of Junior Lien Collateral (as defined in the Barclays DIP Order) to pay down

the Barclays DIP Facility, such Debtor guarantors, consistent with the Court's Final Order Under

Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and

6004 Authorizing (I) Continued Use of Cash Management Services And Practices, (II)

Continued Use Of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation

Of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in

Connection with Use of Pre-and Post-Petition Lenders' Financing Facilities and Cash Collateral,

(IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V)

Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation

of Intercompany Transactions and Granting Administrative Expense Status to Intercompany

Claims (Docket No. 393) shall be entitled to an intercompany claim against the Borrowers under

the Barclays DIP Facility to the extent of such payments made, and such claim shall be accorded

administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of

the Bankruptcy Code.

34.     Notwithstanding anything herein to the contrary, this Order shall not modify or

affect the terms and provisions of, nor the rights and obligations under, (a) the Board of

Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

27

35.    **Amounts Payable By Sellers Are Administrative Expenses.** Any amounts due

to Purchaser from Sellers under the BH Legacy APA, including, without limitation, amounts

payable under Section 3.2(b) of the BH Legacy APA, shall constitute allowed administrative

expenses and shall be paid without the need for further application or motion by Purchaser.


Dated: New York, York
      November __, 2012

                                    _____
                                      THE HONORABLE MARTIN GLENN
                                      UNITED STATES BANKRUPTCY JUDGE

ny-1040884

## Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**PROPOSED ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND**
**FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (I) APPROVING (A) SALE OF DEBTORS'**
**ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT WITH BERKSHIRE**
**HATHAWAY INC.; (B) SALE OF PURCHASED ASSETS FREE AND**
**CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;**
**AND (C) RELATED AGREEMENTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated May 14, 2012 (the "<u>Motion</u>"), of Residential Capital, LLC ("<u>ResCap</u>")

and certain of its affiliates, as debtors in possession in the above-captioned Chapter 11 cases

(collectively, the "<u>Debtors</u>"),[1] for entry of an order, under Bankruptcy Code sections 105, 363, and 365

and Bankruptcy Rules 2002, 6004, 6006 and 9014 authorizing and approving (i) that certain Asset

Purchase Agreement, dated as of May 13, 2012 (the "<u>AFI APA</u>")[2], entered into by and among Ally

Financial Inc. ("<u>AFI</u>"), BMMZ Holdings LLC ("<u>BMMZ</u>"), ResCap, Residential Funding Company,

LLC ("<u>RFC</u>"), and GMAC Mortgage, LLC ("<u>GMAC Mortgage</u>"); (ii) the sale and all related

transactions, in accordance with the AFI APA of all of the Debtors' right, title, and interest in, to and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the BH Legacy APA (as defined herein). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to ~~http://www.kccllc.net/rescap~~http://www.kccllc.net/rescap for additional information.

[2] At the June 18 and 19, 2012 hearings on the Motion, the Bankruptcy Court did not approve the AFI APA and instead approved Berkshire Hathaway Inc. as the stalking-horse bidder for the Purchased Assets.

under the Purchased Assets to BMMZ; and (iii) granting related relief; and upon the Whitlinger Affidavit, pursuant to Local Bankruptcy Rule 1007-2; the Greene Declaration; the Declaration of R. Ted Weschler in Support of the Objection of Berkshire Hathaway Inc. to Debtors' Motion' Motion; the Puntus Declaration; and the Anti-Collusion Declaration in Accordance with Sale Procedures Order Dated June 28, 2012 [Docket No. 538]; it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having entered an order, dated June [___],28, 2012 (the "Sale Procedures Order"), (i) authorizing and approving that certain asset purchase agreement, dated June 21, 2012, a copy of which is attached hereto as Exhibit 1was filed on June 28, 2012, by and among Berkshire Hathaway Inc. ("BH"), on the one hand, and ResCap, RFC, and GMAC Mortgage, on the other (including all schedules, exhibits, and attachments thereto, including the Ancillary Agreements (as such term is defined therein) to be entered into by and among the parties as contemplated therein, in each case as amended or modified, collectively, the "BH Legacy APA"), by and among Berkshire Hathaway Inc. ("BH" or the "Purchaser"), on the one hand, and ResCap, RFC, and GMAC Mortgage (collectively, the "Sellers", and each individually, a "Seller"), on the other,and providing for the sale and all related transactions, in accordance with the BH Legacy APA and this Order (the "Sale"), of all of the Debtors' right, title, and interest in, to and under the Purchased Assets to the Purchaser free and clear of all Claims[3], Liens[4], encumbrances, or other interests (including, any and all "claims" as defined in section 101(5) of the Bankruptcy Code and any

---

[3] For the convenience of the parties, the BH Legacy APA defines "Claims" to mean "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown."

[4] For the convenience of the parties, the BH Legacy APA defines "Lien" to mean "any lien, charge, claim, pledge, deed of trust, right of first refusal, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, option, proxy, hypothecation, voting trust agreement, transfer restriction, easement, servitude, encroachment, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction)."

rights or claims based on any successor or transferee liability) other than the Permitted Liens (collectively, all such Claims, Liens, encumbrances and other interests other than the Permitted Liens, "Interests"), with such Interests transferring and attaching to the proceeds of the Sale with the same validity and priority as such Interests had in the Purchased Assets immediately prior to the Sale; and (ii) authorizing and approving the Sale Procedures notice of the Sale and the hearing to consider approval of the Sale (the "Sale Hearing")[53]; an Auction having been held in accordance with the Sale Procedures Order; and at the conclusion of the Auction, BH was chosen as the Successful Bidder (as defined in the Sale Procedures Order) in accordance with the Sales Procedures Order; and the Sale Hearing having been held on November 5,[___], 2012 to consider the relief requested in the Motion; and upon the record of the Sale Hearing, and all of the proceedings before the Court; and the Court having reviewed the Motion and any objections thereto (the "Objections"); and all parties in interest having been afforded an opportunity to be heard with respect to the Motion and all of the relief related thereto; and it appearing that the relief requested by the Motion with respect to the Sale as amended and modified as provided in this Order is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it is

**FOUND AND DETERMINED THAT:**[64]

    **A.**     **Jurisdiction and Venue.** This Court has jurisdiction over the Motion and the Sale pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C.

---

[53] For the purposes of this Order, the term "Sale Hearing" shall be any hearing at which the approval of the Sale is considered, including a hearing to consider confirmation of a plan of reorganization if the Sale is approved in connection therewith.

[64] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

ny-1040884

§ 157(b)(2)(A) and (N). Venue of these cases and the Motion in this District is proper under 28

U.S.C. §§ 1408 and 1409.

      **B.**      **Statutory Predicates.**  The statutory predicates for the relief sought in the Motion

are sections 105(a) and 363 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002,

6004, 9007 and 9014. The consummation of the Sale contemplated by the BH Legacy APA and this

Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code and

Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been

complied with in respect of the Sale.

      ~~C.~~ **C.**  **Notice.**  As evidenced by the affidavits and certificates of service and Publication

Notice previously filed with the Court and based on the representations of counsel at the Sale

Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice of the

Motion, the Sale Procedures, the Sale, the Auction, and the Sale Hearing have been provided in

accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a),

6004(a), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested

persons and entities, including: (i) the Office of the United States Trustee for the Southern

District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's

prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition

amended and restated secured revolving credit agreement, (v) the attorneys for the agent under the

Debtors' post-petition debtor in possession financing facility, (vi) the attorneys for the statutory

committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the "Creditors'

Committee") ~~(if no statutory committee of unsecured creditors has been appointed, the holders of~~
~~the fifty largest unsecured claims against the Debtors on a consolidated basis)~~, (vii) the attorneys

for the ad hoc bondholders' committee, (viii) the attorneys for the Federal National Mortgage

Association, the Federal Home Loan Mortgage Corporation, and the Government National

Mortgage Association, (ix) any party who, in the past year, expressed in writing to the Debtors an

interest in the Purchased Assets and who the Debtors and their representatives reasonably and in

good faith determine potentially have the financial wherewithal to effectuate the transaction

contemplated in the APA, (x) all trustees (including indenture and securitization trustees),

certificate holders, investors, rating agencies, mortgage insurers and any parties to any pooling and

servicing agreements, assignment, assumption and recognition agreements, SBO Servicing

Agreements, subservicing agreements or similar agreements (all such parties in this clause (x), the

"Interested Contract Parties"); (xi) all parties who are known to have asserted or believed by Debtors

to hold any Interest in or on the Purchased Assets, (xii) the Securities and Exchange Commission,

(xiii) the Internal Revenue Service, (xiv) all applicable state attorneys' general, and local authorities,

(xv) all applicable state and local taxing authorities, (xvi) the Federal Trade Commission, (xvii) the

United States Department of Justice, (xviii) the United States Attorney's Office, (xix) the office of

the New York Attorney General; and (xx) all entities that requested notice in these Chapter 11 cases

under Bankruptcy Rule 2002; and (xxi) all Persons required to be provided with notice pursuant to the

BH Legacy APA (collectively, the "Notice Parties"). The Debtors published the Notice of Auction and

Sale Hearing in the national editions of *The Wall Street Journal* and *The New York Times*.  The

notice described in this Paragraph C is good, sufficient and appropriate under the circumstances,

and no other or further notice of the Motion, the Auction, the Sale Hearing, the BH Legacy APA,

the Sale, and this Order is or shall be required. With respect to parties who may have claims against

the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the Publication

Notice described above was sufficient and reasonably calculated under the circumstances to reach

such parties.

**~~D.~~ D.  Extensive Efforts by Debtors.**  As of the Petition Date and for a period of more than 7 months before the commencement of these Chapter 11 cases, the Debtors worked with their counsel and financial advisors, AFI, and various governmental constituencies to implement a viable transaction that would allow them to continue their operations.  The Debtors presented credible evidence that, as of the Petition Date, they had explored various strategic alternatives for the Debtors' businesses over an extended period of time and had communicated with 5 parties about a possible sale of all or substantially all of the Debtors' assets. The Sale is the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Debtors' estates, for the benefit of creditors.

**E.    Business Justification.**  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets. In light of the circumstances of these Chapter 11 cases and the risk of deterioration in the going concern value of the Purchased Assets pending the Sale, time is of the essence in (i) consummating the Sale, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, and their creditors and employees.

**F.    Sale Procedures Order.**  On June ~~[__],~~28, 2012, this Court entered the Sale Procedures Order approving Sale Procedures for the Purchased Assets. The Sale Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets.

**G.    Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Debtors have

adequately marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a higher or better offer for the Purchased Assets; (c) the consideration provided for in the BH Legacy APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the consideration provides fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative, including liquidation under Chapters 7 or 11 of the Bankruptcy Code; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the BH Legacy APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

H.     **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons, including the Notice Parties.

I.     **Sale in Best Interests.**  The actions represented to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the BH Legacy APA and circumstances of the Sale at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

J.     **No *Sub Rosa* Plan.**  In the event the Sale is approved under section 363 of the Bankruptcy Code, the consummation of the Sale outside of a plan of reorganization pursuant to the

BH Legacy APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* plan of reorganization.

**K.    Arm's-Length Sale.**  The BH Legacy APA was negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Neither the Sellers, nor the Purchaser, nor any of their respective insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the BH Legacy APA or any part of the Sale to be avoided under section 363(n) of the Bankruptcy Code.

**L.    Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Prior to the date of this Order, the Purchaser provided to the Debtors and the Committee a declaration certifying that there was no collusion between Purchaser on the one hand, and any other potential purchaser, on the other hand.  Based on that declaration, the Purchaser has not colluded with any other potential purchaser.

**M.    Corporate Authority.**  Each Debtor (i) has full corporate power and authority to execute the BH Legacy APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the BH Legacy APA, (iii) has taken all corporate action necessary to authorize and approve the BH Legacy APA and the consummation by the Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those

expressly provided for in the BH Legacy APA, which may be waived by the Purchaser, to consummate such transactions.

**N.      Binding and Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all Interests, including (i) rights or claims based on any successor or transferee liability, ~~including,~~ (ii) those that purport to give to any party a right or option to effect any setoff, forfeiture, modification, right of first refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar rights, (iii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the closing, and (iv) (a) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or nature, if any, including, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership and (b) all debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these Chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise arising under doctrines of successor or transferee liability, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or

any other Person prior to the Closing Date. The APA and the related documents and agreements contemplated thereby, and the consummation of the transactions contained therein shall not be subject to avoidance by the Debtors, any affiliate of the Debtors, any of their respective successor trustees appointed with respect thereto, or any other person or entity, including, without limitation, any claims with respect to any transfers made in accordance with Section 2.4 of the BH Legacy APA.

**O.    Satisfaction of 363(f) Standards.**  The Sellers may sell, and, upon closing of the Sale, shall be deemed to have sold the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including all rights or claims based on upon any successor or transferee liability, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests, including all rights or claims based on any successor or transferee liability are (a) deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code and (b) adequately protected by having their Interests, if any, including all rights or claims based on any successor or transferee liability, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest, including all rights or claims based on any successor or transferee liability.  In all cases, each such Person with Interests in the Purchased Assets are enjoined from taking any action against the Purchaser, the Purchaser's Affiliates or any agent of the foregoing to recover any such Interest.

**P.    Necessity of Order.**  The Purchaser would not have entered into the BH Legacy APA and would not have consummated the Sale without all of the relief provided for in this Order (including that the transfer of the Purchased Assets to Purchaser be free and clear of all Interests and including rights or Claims based upon successor or transferee liability, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date,

and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date).

**Q.      Personally Identifiable Information.**  The Debtors have provided certain privacy policies to consumers that govern the disclosure of "personally identifiable information" (as defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties.  The Debtors have proposed to sell certain assets, which may require the disclosure of personally identifiable information to third parties.  The Debtors' disclosure of personally identifiable information pursuant to the Sale is in compliance with the Gramm-Leach-Bliley Act and is consistent with the privacy notices delivered by the Debtors to mortgage borrowers.  For these reasons, no ~~Consumer Privacy Ombudsman~~consumer privacy ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

**R.      Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**S.      SBO Servicing Agreements.**  Subject to the terms of the BH Legacy APA with respect to the assumption and assignment of the SBO Servicing Agreements, the Purchaser is the assignee of all of the Debtors' rights under the those SBO Servicing Agreements that are to be assumed and assigned to the Purchaser, and such Purchaser shall, to the extent applicable, acquire all of the Sellers' rights thereunder free and clear of any Claims or Liabilities arising prior to the Closing Date.

**T.      Cure/Adequate Assurance.**  The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the

ny-1040884

Closing under any of the SBO Servicing Agreements within the meaning of section 365(b)(1)(A) of the of the Bankruptcy Code.  Any Cure Amounts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such SBO Servicing Agreements.  The Purchaser's promise to perform the obligations under the SBO Servicing Agreements after the Closing Date shall constitute adequate assurance of its future performance of and under the SBO Servicing Agreements, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.    The Purchaser is not assuming any obligation under or in connection with the SBO Servicing Agreements occurring or arising prior to the Closing Date, whether encompassed within the Cure Amounts payable by the Debtors or otherwise.  All Interested Contract Parties of the SBO Servicing Agreements who did not timely file an objection to the assumption and assignment of the Assumed Contract, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  To the extent not resolved and/or adjourned at or prior to the Sale Hearing, the objections of all Interested Contract Parties of SBO Servicing Agreements that did file a timely objection to the assumption and assignment of such parties' respective Assumed Contract relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by the Court, are overruled on the merits with prejudice; provided, however, that to the extent an objection of the Interested Contract Parties, or unresolved portion thereof, relates solely to a Cure Amount, such objection is preserved and shall be heard by the Court on a date mutually agreed to by the parties or as determined by the Court, and are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  The Court finds that with

ny-1040884

respect to all such SBO Servicing Agreements the payment of the Cure Amounts is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the SBO Servicing Agreements.  To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Purchased Assets, and the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date, and (b) Claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including without limitation, any right of recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Motion is Granted.**  The Motion is granted and the relief requested, as amended and modified herein, with respect to the Sale is granted and approved in its entirety, as further described herein.

2.      **Objections Overruled.**  Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice, except to the extent any objections to Cure Amounts were unresolved and/or adjourned prior to or at the Sale Hearing.

ny-1040884

3.    **Approval.**  The BH Legacy APA, and all the terms and conditions thereof, is approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under, and comply with the terms of, the BH Legacy APA and consummate the Sale pursuant to, and in accordance with, the terms and conditions of the BH Legacy APA and this Order. The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the BH Legacy APA, together with all additional instruments and documents that the Sellers or the Purchaser deem necessary or appropriate to implement the BH Legacy APA and effectuate the Sale, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the BH Legacy APA.

4.    **Binding Effect of Order.**  This Order and the BH Legacy APA shall be binding in all respects upon all known and unknown creditors of, and equity security interests in, any Debtor, including any holders of Interests (including holders of rights or claims based on any successor or transferee liability), all successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in the Debtors' Chapter 11 cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Order shall not be subject to amendment or modification and the BH Legacy APA shall not be subject to rejection. The terms of this Order shall apply in any sale pursuant to a Chapter 11 plan and may be incorporated into any confirmation order. Nothing contained in any Chapter 11 plan confirmed in the Debtors' Chapter 11 cases or the order confirming any such Chapter 11 plan shall conflict with or derogate from the provisions of the BH Legacy APA or this Order.

5. 5.  **Injunction.**  All persons and entities are prohibited and enjoined from taking any

action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets

to the Purchaser in accordance with the BH Legacy APA and this Order. Following the Closing,

except for Persons entitled to enforce Permitted Liens, all Persons (including, but not limited to, the

Debtors and/or their respective successors (including any trustee), creditors, investors, certificate

holders, securitization trustees, borrowers, current and former employees and shareholders,

administrative agencies, governmental units, secretaries of state, federal, state, and local officials,

including those maintaining any authority relating to any environmental, health and safety laws,

and the successors and assigns of each of the foregoing) holding Interests in the Purchased Assets or

against the Debtors in respect of the Purchased Assets of any kind or nature whatsoever shall be, and

hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or

otherwise pursuing any Interests of any kind or nature whatsoever (including, Claims or Liabilities

relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the

Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the

Sellers or any other Person prior to the Closing Date) against the Purchaser or any Affiliate of the

Purchaser or any of their respective property, successors and assigns, or the Purchased Assets, as an

alleged successor or on any other grounds, it being understood that nothing herein shall affect assets

of the Debtors that are not Purchased Assets.

6.      No Person shall assert, and the Purchaser and the Purchased Assets shall not be

subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or

otherwise, including any right of recoupment), Liabilities, Claims and Interests, or basis of any kind

or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any

obligation of any other party, under or with respect to, any Purchased Assets with respect to any act

or omission that occurred prior to the Closing. All Interested Contract Parties are directed to recognize the Purchaser as the owner of the Purchased Assets.

7.    **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Sellers' interests in the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to the Purchaser. Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept this Order, or any and all other documents and instruments necessary and appropriate to consummate the Sale.

8.    **Transfer Free and Clear.**  PursuantExcept as otherwise provided by section 363(o) of the Bankruptcy Code, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser as required under the BH Legacy APA, and such transfer shall be free and clear of all Interests of any Person (including, Claims or, Liabilities, or Cure Amounts relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date) and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the date on which these Chapter 11 cases were commenced, whether known or unknown, occurring or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Claim or Interest claims or may claim a Claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Sellers may possess with respect thereto. For the avoidance of doubt, the transfer of the Securitized Advances to the Purchaser, and the Purchaser's

right to receive payments with respect to such Securitized Advances, shall be free and clear of all Liens (other than Permitted Liens), Claims and Liabilities and Cure Amounts (including, without limitation, any obligations to fund or otherwise satisfy any draw requests) and irrespective of a party's ownership of the servicing rights (primary or master servicing) related to the underlying home equity lines of credit.

9.    **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser pursuant to the BH Legacy APA constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever, including all rights or claims based on any successor or transferee liability.  The transfers of Purchased Assets shall not be subject to avoidance for any reason by the Debtors, any affiliate of the Debtors, their respective successors, or any creditor thereof including, without limitation, with respect to any transfers pursuant to Section 2.4 of the BH Legacy APA.  For the avoidance of doubt, in the event that BH elects to designate other parties to whom the Purchased Assets, or any portion thereto, shall be conveyed, transferred, assigned, and/or delivered in accordance with section 2.13 of the BH Legacy APA, BH's obligations under the BH Legacy APA with respect to such Purchased Assets shall remain unchanged.

10.    **Direction to Release Interests.**  Upon the Closing, each of the Sellers' creditors and any other holder of an Interest, including rights or Claims based on any successor or transferee liability, is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interest in the Purchased Assets, if any, as such Interest may have been recorded or may otherwise exist. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing an Interest in the Sellers or the Purchased Assets shall not have delivered to the Sellers prior to the

Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests, which the person or entity has with respect to the Sellers or the Purchased Assets or otherwise, then (i) the Sellers are authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Sellers or the Purchased Assets, and (ii) the Purchaser ~~are~~is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the BH Legacy APA, including, without limitation, recordation of this Order. This Order shall be binding upon and shall govern the acts of all Persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

     11.    **No Interference.**  Following the Closing of the Sale, no holder of any Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such Interest, or based on any actions the Debtors may take in their Chapter 11 cases.

     12.    **Surrender of Possession.**  All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an interest

hereby are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing

Date, unless the Purchaser otherwise agrees.

13.    **No Discriminatory Treatment.**  To the extent provided by section 525 of the

Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

permit, license, or similar grant relating to the operation of the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11

cases or the consummation of the Sale contemplated by the BH Legacy APA.

14.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a), 363,

and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the

Debtors' assumption and assignment to the Purchaser of the SBO Servicing Agreements is

approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto

are deemed satisfied.

15.    The Debtors are authorized and directed in accordance with sections 105(a) and

365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the

Closing, as provided by, and in accordance with, the Sale Procedures Order and the BH Legacy

APA, the SBO Servicing Agreements free and clear of all Interests of any kind or nature

whatsoever, and (ii) execute and deliver to the Purchaser such documents or other instruments as

the Purchaser reasonably deem may be necessary to assign and transfer the SBO Servicing

Agreements to the Purchaser.

16.    The SBO Servicing Agreements shall be transferred and assigned to, pursuant to

the Sale Procedures Order and the BH Legacy APA, and thereafter remain in full force and effect

for the benefit of, the Purchaser, notwithstanding any provision in any such SBO Servicing

Agreements (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the

Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Sellers shall be relieved from any further liability, other than the Cure Amounts, with respect to the SBO Servicing Agreements after such assumption and assignment to the Purchaser.  The Debtors may assign each SBO Servicing Agreement in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any SBO Servicing Agreements that prohibit or condition the assignment of such SBO Servicing Agreements or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such SBO Servicing Agreement, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each SBO Servicing Agreement have been satisfied.

17.    All defaults and all other obligations or Liabilities under any SBO Servicing Agreement occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Sellers of the Cure Amount, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code, whether or not such SBO Servicing Agreement is an executory contract within the meaning of section 365 of the Bankruptcy Code.  The Cure Amounts reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the SBO Servicing Agreements, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the SBO Servicing Agreements.

18.    Except as provided in the BH Legacy APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any SBO

ny-1040884

Servicing Agreements other than certain Cure Amounts, and all holders of such claims arising from and after Closing under any SBO Servicing Agreement are forever barred and estopped from asserting any claims (other than for Cure Amounts) under any Assumed Contract against the Debtors, their successors or assigns, and their estates.

19.    The Debtors, in consultation with the Creditors' Committee and the Purchaser, and the relevant non-debtor counterparty shall have authority to compromise, settle, or otherwise resolve any objections to proposed Cure Amounts without further order of the Bankruptcy Court; provided, however, the consent of the Creditors' Committee (which consent shall not be unreasonably withheld) shall be required with respect to the allowance of any Cure Amount in excess of $1 million.  If the Debtors, in consultation with the Creditors' Committee, the Purchaser and the non-debtor counterparty, determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the executory contract or unexpired lease and/or the proposed Cure Amount with respect to such contract or lease will be determined by the Court at a date mutually agreed to by the parties or as determined by the Court.

20.    The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any SBO Servicing Agreement shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the SBO Servicing Agreements.

21.    14.**No Successor Liability.**  Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing. The Purchaser shall not be deemed, as a result of any action taken in connection with the

ny-1040884

BH Legacy APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

22.    ~~15.~~ **Fair Consideration.**  The consideration provided by the ~~Purchasers~~ Purchaser for the Purchased Assets under the BH Legacy APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sales may not be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser was not party to any agreements to control the sale price, and is not subject to any claims for damages under section 363(n) of the Bankruptcy Code.

23.    ~~16.~~ **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests, Claims or Liabilities against or related to the Sellers or

the Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under section 363

and 365 of the Bankruptcy Code.

24.    ~~17.~~    **Good Faith.**  The transactions contemplated by the BH Legacy APA ~~is~~are

undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m)

of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization

provided in this Order to consummate the Sale shall not affect the validity of the Sale, unless such

authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the

Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy

Code. There has been no collusion by the Purchaser.

25.    ~~18.~~**No Bulk Law Application.**  No law of any state or other jurisdiction, including

any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale,

the BH Legacy APA, the Motion, and this Order.

26.    ~~19.~~**Subsequent Plan Provisions.**  Nothing contained in any Chapter 11 plan

confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other

order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the BH

Legacy APA or this Order.

27.    ~~20.~~**Failure to Specify Provisions.**  The failure to specifically include any particular

provisions of the BH Legacy APA in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the BH Legacy APA be authorized and approved in

its entirety.

28.    ~~21.~~**Non-Material Modifications.**  The BH Legacy APA and any related agreements,

documents, or other instruments may be modified, amended, or supplemented by the parties thereto

and in accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment, or supplement does not have any adverse effect on the Debtors' estates.

~~22.     No Stay or Order.  Notwithstanding the provisions of Bankruptcy Rules 6004(h)~~

~~and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be~~

~~effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the~~

~~Sale immediately upon entry of this Order. Time is of the essence in closing the transactions~~

~~referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as~~

~~practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and~~

~~pursuing a stay, or risk its appeal being foreclosed as moot.~~

~~23.     The relief granted by this Order shall apply to any affiliated future debtor (a~~

~~"Future Debtor") in these jointly-administered cases. An affiliated debtor shall be deemed to be a~~

~~Future Debtor upon the Court's entry of an order authorizing the joint administration of such~~

~~Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.~~

29.     ~~24.~~**Appointment of Trustee.**  The provisions of the BH Legacy APA and this Order

may be specifically enforced in accordance with the BH Legacy APA notwithstanding the

appointment of any chapter 7 or chapter 11 trustee after the Closing.

30.     **Application of Net Proceeds and Repayment of Obligations Under the Ally**

**DIP Facility.**  Consistent with the terms of the *Final Order Under Sections 105, 361, 362, 363,*

*and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I)*

*Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II)*

*Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate*

*Protection Parties* [Docket No. 491], the Debtors are authorized and directed to apply the net

proceeds of the Sale attributable to the collateral securing the Ally DIP to repay the PPL

Obligations under the Ally DIP Facility.  No failure of the Debtors to comply with this paragraph 25 shall have any effect whatsoever on the sale of the Purchased Assets under the BH Legacy APA and such sale shall be free and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-17, and 21 of this Order.

31.    **Application of Net Proceeds and Repayment of Obligations Under the Barclays DIP Facility.**  Consistent with the terms of the *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting Related Relief* (Docket No. 490) (the "Barclays DIP Order"),[1] at Closing the Debtors are authorized and directed to pay to the Administrative Agent an amount in cash equal to the outstanding DIP Obligations for application by the Administrative Agent in accordance with section 2.14 of the DIP Credit Agreement; provided that if the Sale meets the criteria listed in section 6.08(e)(i)-(iv) of the DIP Credit Agreement then the Debtors shall  pay to the Administrative Agent the Net Asset Sale Proceeds (as defined in the DIP Credit Agreement) of the Sale at Closing.  The liens of the Administrative Agent, the Collateral Agent and the DIP Lenders on the Collateral shall attach to the proceeds of the sales contemplated by this Order until the payments required by this paragraph and by the DIP Credit Agreement are made. No failure of the Debtors to comply with this paragraph 26 shall have any effect whatsoever on the sale of the Purchased Assets under the BH Legacy APA and such sale shall be

---

[1]    Except for the terms the "Sale", "Closing", "Order", "Debtors", "Purchased Assets", and "BH Legacy APA", all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Barclays DIP Order.

ny-1040884

free and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-17, and 21 of this Order.

32.    **Purchase Price Allocation Reservation of Rights**.  Any purchase price allocations contained in Article III of the BH Legacy APA are not binding in any way on creditors of the various Debtors with respect to the allocation of the proceeds of the Sale either between and among the various Debtor estates or between and among the various classes of assets sold; provided that any subsequent allocation of the proceeds for claim purposes shall have no effect on the Purchaser, in its capacity as Purchaser. All rights of all parties are reserved with respect to the allocation or distribution of the proceeds of the Sale.

33.    **Intercompany Claims.**  If as a result of the consummation of the Sale, the Debtors are obligated under the terms of the Amended and Restated DIP Credit Agreement  to utilize the proceeds of Junior Lien Collateral (as defined in the Barclays DIP Order) to pay down the Barclays DIP Facility, such Debtor guarantors, consistent with the Court's Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services And Practices, (II) Continued Use Of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation Of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre-and Post-Petition Lenders' Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims (Docket No. 393) shall be entitled to an intercompany claim against the Borrowers under the Barclays DIP Facility to the extent of such payments made, and such claim shall be accorded

ny-1040884

administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

34. 25. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

26. The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

35. **Amounts Payable By Sellers Are Administrative Expenses.** Any amounts due to Purchaser from Sellers under the BH Legacy APA, including, without limitation, amounts payable under Section 3.2(b) of the BH Legacy APA, shall constitute allowed administrative expenses and shall be paid without the need for further application or motion by Purchaser.

Dated: New York, York
           June ___, 2012


<div style="background:pink">
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE
</div>


Dated: New York, York
           November ___, 2012

THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

ny-1040884

Document comparison by Workshare Professional on Thursday, November 15, 2012 10:19:19 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://NEW YORK/1040884/6 |
| Description | NEW YORK-#1040884-v6-Bounce_-_BH_APA_Sale_Approval_Order |
| Document 2 ID | PowerDocs://NEW YORK/1040884/7 |
| Description | NEW YORK-#1040884-v7-Bounce_-_BH_APA_Sale_Approval_Order |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 88 |
| Deletions | 57 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 149 |