DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:    (860) 275-0100
Facsimile:    (860) 275-0343

- and -

7 Times Square
New York, New York 10036-7311
Telephone:    (212) 297-5800
Facsimile:    (212) 916-2940
JAMES J. TANCREDI, ESQ. (JT-3269)
HERBERT K. RYDER, ESQ. (HR-5137)

Attorneys for Connecticut Housing Finance Authority

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.***,** | **Case No.:   12-12020 (MG)** |
| Debtors. | **(Jointly Administered)** |

## SUPPLEMENT TO LIMITED PROTECTIVE OBJECTION BY THE CONNECTICUT HOUSING FINANCE AUTHORITY

The Connecticut Housing Finance Authority ("**CHFA**"), by and through its undersigned counsel, hereby submits this Supplement (the "**Supplement**") to the *Limited Protective Objection by Connecticut Housing Finance Authority to the Debtors' Sale Motion*, ECF No. 2006 (collectively, the "**Objection**").

In support of the Supplement, CHFA respectfully objects as follows:

43013947.1

1.  CHFA has submitted the Affidavit of Elizabeth Vallera, CHFA's Treasurer (the "**Vallera Affidavit**"). The Vallera Affidavit provides further factual detail to the matters in this Objection.

2.  Pursuant to its Section 363 Sale Motion, ECF No. 61, GMAC Residential Capital, LLC and certain of its affiliates (collectively, the "**Debtors**") have filed a Notice of (i) Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property and Unexpired Leases of Nonresidential Real Property and (ii) Cure Amounts Related thereto (the "**Contract Notice**").  ECF No. 924.

3.  The Contract Notice contains a statement of intent to assume and assign four alleged contracts between GMAC Mortgage, LLC and CHFA, and its attached Schedule asserts a "**Cure Amount**" for each contract of $0.00 without any prior accounting to CHFA.

4.  The Debtors ostensibly terminated any agreements between the Debtors and CHFA in a letter dated September 18, 2008 (the "**Termination Letter**"). (*See* Exhibit A, Termination Letter).  The Termination Letter provided notice that GMAC Mortgage was terminating any remaining servicing agreements between the Debtors and CHFA save for an unrelated Purchase and Servicing Agreement by and between CHFA and the Debtors that does not relate to the contract in this case.  (*Id.*) As described in the Vallera Affidavit, CHFA and a predecessor of GMAC Mortgage, LLC ("**GMAC Mortgage**") entered into a **Servicing Agreement** for servicing of its home loans in 1987 that was last amended in 2002.  (Vallera Affidavit at ¶ 6 and Ex. A, Home Mortgage Servicing Agreement.).  Notwithstanding the Debtors' written assertions to the contrary, this appears to be the relevant operative servicing agreement in issue.

5.     Given that any agreements between CHFA and the Debtors were terminated well-before the Debtors filed for reorganization, the Debtors now lack any ability to assume and assign such. Indeed,

> [a]lthough the Code does not define an executory contract, the generally accepted definition is that an executory contract is one on which performance remains materially unperformed on both sides. A debtor may assume a contract under § 365 only when the contract is executory on the date of filing. A terminated contract is not executory; after termination substantial performance does not remain due on both sides.

*In re Tornado Pizza, LLC*, 431 B.R. 503, 514 (Bankr. D. Kansas 2010) (citations omitted). The Debtors have no ability to revive what is now, at best, a terminated or "at will" contract under the Bankruptcy Code. *In re Haynes*, 283 B.R. 147, 156 (Bankr. S.D.N.Y. 2002).

6.     Indeed, it is not at all clear (as of November 20, 2012) what agreements the Debtors seek to assume and assign, and what "cure" might be due. As noted above, in the Schedule accompanying the Contract Notice, the Debtors claim that GMAC Mortgage, LLC is a party to four contracts dated September 8, 1994 between it and CHFA. ECF No. 924. However, CHFA has no records of *any* such agreement between it and the Debtors from 1994. Without further information from the Debtors, it is difficult for CHFA to evaluate their proposed cure amounts and assumption and assignment proposals. Without reference to the proper agreement, the Debtors have failed to properly examine or assert a proposed cure. CHFA thus reserves all its rights related thereto, and asks this Court to require Debtors to provide greater specificity surrounding Debtors' claimed agreement and its treatment of the cure issues. Because of the Debtors' failure to properly identify the agreement, all of CHFA's cure rights must be appropriately preserved by this Court and should be unaffected herein. Simply stated, the Debtors inappropriately provided notice with respect to cure amounts under the wrong contracts through May 2012. Any effort to bar pre-closing cure claims, when the sale is not expected to

close until some time in December 2012, is not supported by any rigorous examination, the value of the assets administered, and is not mindful of the relationship between the parties. *See* Obj. of Fannie Mae, ECF No. 1689, at ¶¶ 2(c) and 26.

7.      As noted above, the Schedule accompanying the Contract notice also sets out a "zero" ($0.00) Cure Amount for the Debtors' activities related to GMAC Mortgage's agreement with CHFA. As detailed in the Vallera Affidavit, CHFA engaged GMAC Mortgage to service its home mortgage loans to low and moderate income homebuyers. (Vallera Affidavit at ¶¶ 5-8.) But, as noted above, the minimal information provided by Debtors to date makes it almost impossible to evaluate their putative claims related to the Cure Amount. But even if no liquidated amounts were currently owed to CHFA by Debtors, the Cure Amount suggested by Debtors is not appropriate given the circumstances. For example, CHFA is already aware that Debtors may not be submitting timely claims to government guarantors for defaulted loans – thereby potentially creating future unliquidated claims under their Servicing Agreement with GMAC Mortgage. Vallera Affidavit at ¶ 5; *See also* The Compl., *Am. Residential Equities v. GMAC Mortgage, LLC, et al.,* Adversary Proceeding, ECF No. 2118 (recent lawsuit charging Debtors with failure to properly remit and segregate payments due under servicing arrangements with mortgage holder and making inflated insurance claims). In any event, potential violations of the Servicing Agreement -- past or present -- are difficult by nature to detect given the fiduciary relationship between a home loan servicer and its principal. The CHFA portfolio is administered in a myriad of ways by the Debtor and acts or omissions may go undetected, undisclosed or unexamined for years. Thus, CHFA hereby objects to the extent that any heretofore unliquidated or unknown claims are not satisfied by the Debtors, or otherwise extinguished by fiat without a proper accounting and recompense.

8. As written, the Sale Motion seeks to effectively assign CHFA's Servicing Agreements without their accompanying liabilities. However, Section 365 of the Bankruptcy Code does not permit a Debtor to assume only the beneficial portion of a contract without its liabilities. *See* Obj. of Wells Fargo Bank, ECF No. 1633 at ¶ 8; *See also* Limited Obj. of Certain Trustees, ECF No. 291 at ¶¶ 27-28. The Debtors and their proposed purchasers should be required to assume CHFA's Servicing Agreement in its entirety, including any accompanying liquidated and unliquidated, current, future, known or unknown liabilities. If the Debtor has not otherwise provided for an appropriate cure, it should not garner the benefits of Section 365 and inequitably reap the sole proceeds of this disposition.

9. As detailed in the Objection of the Federal Home Loan Corporation, the scope of the Sale Motion impermissibly seeks to create a narrow definition of servicing obligations through an injunction exempting certain pre-closing "acts or omissions." *See* Obj. of Fed. Home Loan Corp., ECF No. 1690 at ¶¶ 25-26. This not only violates the principal that contracts be assigned *cum onere*, but as Freddie Mac points out, also fails to satisfy the requirement that a contract be assigned with adequate assurance of future performance. *See The Leslie Fay Cos., Inc v. Corp. Prop. Assoc., Inc.*, 166 B.R. 802 (Bankr. S.D.N.Y. 1994) (citations omitted). It is worthy of note that as a servicer and fiduciary, with dominion and control over CHFA's portfolio information, knowledge as to any putative claim is in the province of the Debtors. It is further worthy of note, that the Debtors' historic performance as a servicer and originator has not been without flaws, improper acts, omissions, neglect, and is now the subject of government and investor scrutiny and multiple legal proceedings. As a fiduciary to CHFA, under Connecticut law, which governs the Servicing Agreement, it is the Debtors' burden to come forward with information about potential defaults under the Servicing Agreement. *See Konover Dev. Corp v.*

*Zeller*, 635 A.2d 798, 809-10 (Conn. 1994) (fiduciary must establish by clear and convincing evidence that it made a full and fair showing of all evidence).

10. Indeed, once a plaintiff demonstrates an initial burden of demonstrating a fiduciary burden, the burden then shifts to the fiduciary to justify its actions by clear and convincing evidence. Fiduciaries who engage in self-interested transactions have the burden of justifying such transactions. *Intl Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.* 477 F.Supp. 2d, 491, 499 (S.D.N.Y. 2006). Furthermore, allegations of fraud also shift the burden to the fiduciary to justify its actions. *In re Estate of Hunter*, 190 Misc. 2d 593, 599 (N.Y. Misc. 2002). Finally, in matters involving public policy concerns, the burden of proof is logically shifted when one party would have greater access to information. *Williams v. Wraxall*, 33 Cal. App. 4th 120, 136-37 (Cal. App. Ct. 1995).

11. CHFA is entitled to adequate assurance of future performance, including, but not limited to, compliance with its procedures enacted under state law. (Vallera Affidavit at ¶ 4.) Yet, the Vallera Affidavit cites numerous examples of how the Debtors' proposed Purchaser, Ocwen Financial Corp. ("**Ocwen**"), falls short of the requirements it imposes on servicing contractors. (*Id.* at ¶ 10.) In order to satisfy this requirement, the Debtors and Ocwen must describe, with specificity, how this burden is to be met.

**WHEREFORE,** for all the reasons set forth in the Objection as supplemented herein, CHFA respectfully requests this Court: (i) determine that CHFA Servicing Agreement had been terminated pre-petition and exists, at best, "at will" or month to month, (ii) preserve any cure rights under the Servicing Agreement; (iii) deny the Assumption and Assignment of the CHFA Servicing Agreement under the Sale Motion, or defer such sale to the extent it seeks approval of any sale of the Debtors' mortgage servicing assets; (iv) require any sale to be conditioned on the

Debtors' full accountings and the offer of cure of all known and unknown monetary and non-monetary defaults under the CHFA Servicing Agreement and adequate assurance of Ocwen's future performance of all terms of the Servicing Agreement, as is required under 11 U.S.C. § 365(b) and (f); and (v) to grant any other or further legal or equitable relief as this court deems just and proper.

Dated: November 15, 2012         CONNECTICUT HOUSING FINANCE AUTHORITY

*/s/ James J. Tancredi*
JAMES J. TANCREDI (JT-3269)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:    (860) 275-0100
Facsimile:    (860) 275-0343
jjtancredi@daypitney.com