**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Case No. :  **12-12020 (MG)** |
| Debtors. | **(Jointly Administered)** |

### AFFIDAVIT OF ELIZABETH VALLERA IN SUPPORT OF CHFA'S LIMITED PROTECTIVE OBJECTION TO OCWEN'S ASSUMPTION AND ASSIGNMENT OF ITS SERVICING AGREEMENT WITH GMAC RESCAP

I, Elizabeth Vallera, being duly sworn state as follows:

1. I am over the age of 18 and understand the obligation of an oath. I make this affidavit based on my personal knowledge and my knowledge of the operations and records of the Connecticut Housing Finance Authority ("CHFA").

2. I have been employed by the CHFA for 31 years, and currently hold the title and responsibilities of Treasurer. In that position, I supervise and have oversight of all homeownership and rental housing loan servicing and investor reporting functions at CHFA, which involves a portfolio of approximately $3.6 billion. My department oversees loan servicer reporting, training, and monitoring.

3. The CHFA is a body politic established by the legislature of the State of Connecticut dedicated to alleviating housing shortages by helping low and moderate-income people achieve homeownership. *See* CONN. GEN. STAT. § 8-250. The CHFA originates home mortgage loans to buyers with limited credit and/or income, with funds derived from the issuance of tax-exempt

government bonds, in order to facilitate such individuals' access to the market for residential homes in the state. *Id.*

4. The State of Connecticut has vested the CHFA with the authority to issue procedures with the force of law. *See* CONN. GEN. STAT. §§, 1-120(2), 1-121; *See also Renaissance Mgmt. Co. Inc. v. Conn. Hous. Fin. Auth.*, 915 A.2d 290, 295-97 (Conn. 2007) (Connecticut legislature has granted CHFA a broad delegation of legal authority in order to carry out its legislative mission of making affordable housing available).

5. As of September 30, 2012, GMAC Residential Capital, LLC ("GMAC ResCap") services a mortgage portfolio owned by CHFA of approximately $83,981,213.46, representing approximately 880 residential mortgages in the State of Connecticut. However, it is not submitting timely insurance claims for defaulted mortgages to government guarantors, and it is not servicing mortgages that have gone through the foreclosure process to eviction.

6. A true and correct copy is attached herewith of the CHFA's Home Mortgage Servicing Agreement with GMAC Mortgage Co. of Pa., incorporating the CHFA Master Commitment Agreement (collectively the "Servicing Agreement"). (*See Exhibit A,* Home Mortgage Servicing Agreement.) The Servicing Agreement states that it is subject to the applicable provisions of Connecticut General Statutes Chapter 134 and the CHFA Home Mortgage Programs Operating Manual, as amended by any supplements thereto. *Id.*

7. Under the Servicing Agreement, CHFA has the authority to terminate an entity's participation in its servicing program for non-compliance with it procedures. (Servicing Agreement at ¶ 5(B)(2).) In addition, any servicer must meet and comply with the terms, covenants, and provisions of the Servicing Agreement, which <u>include</u>:

- the requirement that a servicer not assign its servicing contract without CHFA's approval;

- the requirement that CHFA can terminate a servicer's contract if it "suffers" bankruptcy; and

- the requirement that CHFA can terminate a servicer's contract if goes through a change in financial status, that in CHFA's opinion, materially affects the servicer's ability to provide satisfactory servicing of its mortgages.

(*Id.* at ¶ 5.)

8. In addition, in order to carry out its legislative-designated mission, CHFA has adopted policies for servicers of its mortgage loans like GMAC ResCap. (*See Exhibit B,* Single Family Housing Home Mortgage Program.)

9. Ocwen Financial Corp. ("Ocwen"), which seeks to buy the rights under the Servicing Agreement, must demonstrate to CHFA and this Court, pursuant to Section 365(f)(2) of the Bankruptcy Code, that it can provide adequate assurance related to its future performance of all components of the Servicing Agreement in accordance with Connecticut State law. To date, no such proffer has been made by Ocwen.

10. As noted above, pursuant to its legal authority to enact procedures which servicers must legally follow, CHFA has established a uniform scheme to regulate servicers of its mortgage loans. (Single Family Housing Home Mortgage Program at ¶A-2(c).) This court should require Ocwen to demonstrate that it is capable of complying with these procedures in three key areas.

(a) **First,** Ocwen must demonstrate that it is in compliance with applicable State and Federal laws and regulations promulgated thereunder. (*Id.*). As a mortgage professional steeped in investigative and compliance issues, I do not know that Ocwen can demonstrate such compliance. Other courts have noted Ocwen's involvement in illegal "robosigning" activities. *See HSBC Bank, N.A. v. Taher*, 2011 N.Y. Misc. LEXIS 3171 at *12-20 (N.Y.S. July 1, 2011).

Furthermore, its most recent 10-Q mentions numerous regulatory and government investigations of its business practices. *See* Ocwen Financial Corp. Quarterly Report (Form 10-Q), at 29 (Nov. 2, 2012). As a public body, CHFA takes regulatory compliance issues extremely seriously and has high standards for entrusting its contractors with the public's money that I do not believe Ocwen can meet.   As such, I can not currently determine whether Ocwen is capable of meeting CHFA's regulatory compliance requirements. Further, Ocwen should embrace and endorse the Consent Agreement entered into by and between GMAC ResCap and Connecticut's Attorney General. *See* Consent Decree, *United States of America et al. v. Bank of Am. et al.,* No. 12-0361 (Apr. 4, 2012 D.D.C). *See also* Consent Decree, http://www.justice.gov/crt/about/hce/documents/scra_ally_settle.pdf (2012).

    (b)    **Second,** Ocwen must demonstrate – to CHFA's satisfaction -  that it has effective quality control and management systems to evaluate and monitor the overall quality of its servicing activities. (Single Family Housing Home Mortgage Program at ¶A-2(c).)  In a recent report on its Making Home Affordable Program, the U.S. Treasury said that Ocwen needed moderate improvement in its internal controls for both identifying homeowners who might qualify for loan modifications and for its program management, reporting, and governance.  U.S. TREASURY, "MAKING HOME AFFORDABLE PERFORMANCE REPORT THROUGH APRIL 2012," AT 21, http://www.treasury.gov/initiatives/financial-stability/results/MHA-Reports/Documents/April%202012%20MHA%20Report%20WITH%20SERVICER%20ASSESSMENTS_FINAL.pdf (2012).  In my professional opinion, the Treasury's report on Ocwen raises significant concerns with its ability to maintain its internal controls in compliance with CHFA's standards.  As such, without more information and further assurance, CHFA and this Court cannot know whether Ocwen is capable of meeting CHFA's accounting and control

requirements without a further review of its practices and an explanation for why the Treasury found that it needed accounting remediation

(c) **Third,** Ocwen must have the capacity, personnel, and proven ability to service the CHFA's loans. (Single Family Housing Home Mortgage Program at ¶A-2(c).). Currently, Ocwen is not an approved CHFA servicer. Ocwen has made no representations about how it would manage the transition of servicing protocols from GMAC ResCap to its own systems, nor has it said how it would mitigate any losses sustained from such a transition. Furthermore, Ocwen has not revealed what resources that it has legally and financially committed to adequately perform obligations under the Servicing Agreement – including the identification and training of key personnel that would service CHFA's home loans under a transition to its own servicing platform. Lacking any such assurances from Ocwen, CHFA and this Court cannot know that Ocwen currently has the proven capacity to manage CHFA's loans.

11. Finally, in addition to the items above, Ocwen should: (1) agree to assume liability for prior acts and covenants under the Home Mortgage Servicing Agreement, including liability for payment of taxes, the submission of claims to government guarantors, ensuring homeowner compliance with hazard insurance requirements, the failure to provide mortgage documentation within one hundred and twenty days of origination, and the failure to comply with loss-mitigation procedures in foreclosure; (2) agree to provide CHFA with the right to refuse future assignments of its Home Mortgage Servicing Agreement; (3) agree to make appropriate annual disclosures and otherwise comply with Connecticut's limits on political contributions by public contractors; and (4) post an appropriate fidelity bond to ensure its due performance.

_____
Elizabeth Vallera
Treasurer
Connecticut Housing Finance
Authority

Subscribed and sworn to before me
this 15th day of November, 2012.

_____
Notary Public
My Commission Expires:

CLAUDIA M. RODRIGUES
NOTARY PUBLIC
MY COMMISSION EXPIRES APR. 30, 2014

43004528.2 118615-024570                -6-