# EXHIBIT A

CONNECTICUT HOUSING FINANCE AUTHORITY

HOME MORTGAGE SERVICING AGREEMENT

AGREEMENT, made by and between the Connecticut Housing Finance Authority, a public body corporate and politic of the State of Connecticut, (hereafter "CHFA") and GMAC Mortgage Corporation of PA (hereafter "Servicer").

Servicer and CHFA agree as follows:

1. This Agreement shall be subject to applicable provisions of Chapter 134 of the Connecticut General Statutes, as amended, the regulations promulgated thereunder, the CHFA Master Commitment Agreement for Mortgage Purchases, as amended, and the CHFA Home Mortgage Programs Operating Manual, including supplements thereto.

2. Upon the terms and conditions of this Agreement Servicer will service CHFA home mortgages (hereafter "Mortgages") which are currently being serviced by Servicer, or which are purchased by CHFA from Servicer, or which are purchased by CHFA from another lending institution and referred to and accepted by Servicer.

3. Servicing Requirements.

   A. Collection and Remittance.

      (1) Servicer shall collect all payments due under Mortgages as and when the same shall become due and payable until the interest and principal due thereunder have been paid in full, or servicing duties are terminated as hereafter set forth.

      (2) Servicer shall send all remittances by wire transfer or deposit to Connecticut National Bank, Hartford, Connecticut, for credit to CHFA Pledged Account #30697-6, Attn: Bond & Trustee Administration (hereafter "Pledged Account").

      (3) Scheduled Payments.

         (a) Servicer shall remit to the Pledged Account, to be received on or before 2:00 P.M. on the 15th day of each month, at least 70% of the total amount of scheduled monthly principal and interest payments due on Mortgages as shown on CHFA's Level Payment Billing Report (hereafter "Mid-Month Payment"). Notwithstanding the foregoing, in the event Servicer's actual collections up to and including the 14th day of the month are less than such 70% amount, Servicer need only remit such lesser amount with written indication that such is the case.

         (b) Servicer shall remit to the Pledged Account, to be received on or before 2:00 P.M. on the tenth day of the following month, the total amount of scheduled Mortgage payments (exclusive of escrow payments) and Mortgage loan curtailment payments collected through the monthly Servicing Report date (see Section 3.B.(1) below), less the monthly mortgage servicing fee and less the Mid-Month Payment.

            (i) Except for Mortgage loan curtailment payments, Servicer shall remit to the Pledged Account only full scheduled monthly principal and interest payments. Partial payments shall not be remitted.

February, 1985

Connecticut Housing Finance Authority
40 Cold Spring Road

           (ii) Curtailment payments on delinquent
                  Mortgage loans shall not be accepted or
                  remitted.

(4)   Loan Payoffs.

     (a)  Servicer shall remit to the Pledged Account,
         within four business days after receipt, the
         amount of any Mortgage loan payoff, together
         with interest collected, less a pro-rata
         portion of the monthly mortgage servicing fee.

     (b)  Servicer shall mail to CHFA concurrent
         written notification of each such remittance
         on a CHFA form and include the following
         information for each Mortgage loan:

             CHFA Loan Number
             Mortgagor Name
             Paid to Date of Loan Before Payoff
             Date of Loan Payoff
             Principal Paid
             Interest Paid
             Servicing Fee
             Net Amount Remitted

(5)   Late Remittances.  Servicer shall pay a late
charge billed by CHFA at CHFA's current earnings
rate on temporary investments for the period of
lateness for any late remittances under (3) or
(4) above.

## B.   Servicer Reporting.

(1)   Servicer shall cut off its monthly collection and
reporting period on the last business day of the
month and the Servicing Report must reach CHFA on
or before the tenth day of the following month.

(2)   Servicer shall send a monthly Servicing Report,
using exception reporting on CHFA forms.

(3)   The monthly Servicing Report shall reconcile on an
exception reporting basis the monthly remittance
amount to the forecasted amount billed by CHFA,
detailing by Mortgage loan the following exception
items:

             Prepayments
             Curtailments
             Delinquencies
             Payment Reversals
             Scheduled Payments on Loan Payoffs or
                Foreclosures
             Other Adjustments

## C.   Servicer Loan Accounting.

(1)   Servicer shall maintain accurate outstanding
balances on each Mortgage loan.

     (a)  Each scheduled payment, whether collected
         singly or together with other monthly
         payments on the same Mortgage loan, shall be
         applied first to interest and then to
         principal as if according to a predetermined
         amortization schedule.

     (b)  Payments and/or delinquencies must not be
         capitalized into the Mortgage loan balance.

             February, 1985

(2)   CHFA shall independently calculate outstanding
      Mortgage loan balances and periodically furnish
      them to Servicer.  Servicer shall periodically
      reconcile its Mortgage loan balances with those
      furnished by CHFA and adjust all its Mortgage loan
      balances which differ by more than $1.00 from
      those maintained by CHFA except in those cases in
      which Servicer demonstrates that CHFA's loan
      balance is incorrect.

D.   Separate Account.  All funds representing principal and
     interest collected by Servicer for CHFA shall be held by
     Servicer in a separate account, or, in the case of a
     Servicer which is a bank or a savings and loan associa-
     tion, may be accounted for separately on Servicer's
     books, until remitted to CHFA.

E.   Escrow Responsibilities.  Servicer shall escrow for real
     estate taxes, mortgage insurance premiums and hazard
     insurance premiums (when hazard insurance premiums are
     required to be escrowed by the mortgage insurer or
     guarantor).  Servicer shall pay interest on escrow
     deposits at a rate of not less than four percent (4%)
     per annum.  CHFA does not prohibit reasonable and
     prudent investment of such escrow funds.

F.   Insurance.

     (1)   Servicer, during the terms of the Mortgages, shall
           require mortgagors to keep in force hazard insur-
           ance of a type at least as protective as fire and
           extended coverage upon the mortgaged properties.
           Said coverage shall be with insurers licensed to
           do business in the State of Connecticut, in an
           amount sufficient to cover the outstanding
           principal balance of the Mortgage or the full
           insurable value of the improvements on the
           mortgaged property, whichever is less.  In no
           event shall the amount of coverage be less than
           the amount required by the mortgage insurer or
           guarantor.

           All such policies shall contain a standard
           mortgagee clause in favor of CHFA.  In the case of
           a mortgaged property subject to multi-unit master
           hazard insurance coverage where it is impossible
           to obtain a standard mortgagee clause in favor of
           CHFA, the Servicer shall notify the insurer of
           each individual mortgage and obtain a certificate
           which shows CHFA as a general loss payee.  In the
           event of failure of the mortgagor to maintain such
           insurance in full force and effect, such insurance
           shall be maintained by Servicer at the expense
           of CHFA.

     (2)   The physical possession of such policies is not
           required so long as Servicer maintains mortgage
           loan impairment insurance naming as an additional
           named insured "Connecticut Housing Finance
           Authority and/or its successors and assigns as
           their interests may appear".  In such case,
           Servicer shall cause a certificate to be furnished
           to CHFA which verifies such coverage and expressly
           affirms that ten (10) days' written notice of
           change or cancellation will be given to CHFA.

     (3)   Servicer shall maintain at all times during the
           existence of this agreement at its own expense an
           adequate blanket fidelity bond on all employees
           handling CHFA funds, monies, documents and papers,
           which bond shall protect Servicer against losses,
           including but not limited to dishonesty, theft,
           forgery, larceny, fraud and misappropriation.

February, 1985

G. **Inspections.** Servicer shall make an inspection of the mortgaged properties in the event of any of the following:

    (1)    Loan delinquency of ninety (90) days; or

    (2)    Loss claim for damage to the mortgaged property over $1,000; or

    (3)    Receipt of notification or indication of the vacancy, abandonment or deterioration of the mortgaged property.

H. **Notification by Servicer.** Servicer shall promptly notify CHFA of any of the following which come to Servicer's attention:

    (1)    Loss or damage by fire or other hazard to the mortgaged property in excess of $2,500;

    (2)    Sale or transfer of the legal or equitable title to the mortgaged property or any part thereof and the date of the instrument transferring the title thereto;

    (3)    Vacancy by the mortgagor continuing for more than one month;

    (4)    Abandonment of the mortgaged property; or

    (5)    Deterioration or waste of the mortgaged property.

I. **Delinquencies and Defaults.** Servicer shall maintain a sound, effective collection program adequately staffed by qualified personnel to minimize delinquencies, foreclosures and foreclosure expenses.

Servicer shall take prompt action to collect all sums past due utilizing telephone, notices and letters, field visits and personal interviews, and, shall also act to cure any other mortgage defaults which come to the attention of the Servicer.

Servicer shall assess late charges in accordance with the terms of the Mortgages.

J. **90-Day Delinquencies.** Servicer shall:

    (1)    report defaults and file foreclosure intent notices with insurers and guarantors as required;

    (2)    inspect mortgaged properties, verify owner-occupancy, secure and maintain vacant or abandoned properties as necessary;

    (3)    submit individual 90-day default reports to CHFA on CHFA forms summarizing reasons for default, remedial action taken and inspection findings, continuing to report on these loans monthly thereafter until they become current or until foreclosure is initiated; and

    (4)    send 30-day demand notices to mortgagors, as required by law, advising them of CHFA's intent to foreclose, and thereafter refuse to accept any payment less than the total arrearage, or, less than one-half the total arrearage under written forebearance agreements signed by the mortgagors. Such forebearance agreements shall not exceed six months.

Any variations to the above procedures must be approved by CHFA's Loan Portfolio Manager.

February, 1985

K.   Foreclosures.

    (1)   Once a Mortgage becomes 120 days delinquent, or, upon determination by Servicer that a Mortgage is otherwise in default and that it should be foreclosed due to said default, Servicer shall forward a written foreclosure recommendation to CHFA together with a copy of the foreclosure intent notice to insurer/guarantor and a copy of the 30-day demand letter to mortgagor.  CHFA will review the recommendation and if in concurrence, will authorize foreclosure proceedings to commence.

        (a)   CHFA's Foreclosure Responsibilities:

            (i)   Designate a foreclosure attorney and issue a written foreclosure order.
           (ii)   Promptly notify Servicer by copy of the order.
          (iii)   Assist the foreclosure attorney in matters of a legal nature.
          (iv)   Consult with Servicer in matters relating to subsequent forebearance, reinstatement, care and management of the security.
           (v)   Promptly reimburse Servicer for legal fees and expenses and for Servicer's out-of-pocket expenses reasonably incurred during foreclosure.

        (b)   Servicer's Foreclosure Responsibilities:

            (i)   Pay all taxes and insurance premiums when due and pay any other municipal assessments (including non-escrow items) to avoid prior liens.
          (ii)   Continue to service the Mortgage as required by this Agreement to the extent compatible with mortgage foreclosure proceedings.
         (iii)   Assist the foreclosure attorney by providing all relevant information including delinquent amounts, reinstatement agreements and loan payoff amounts.
         (iv)   Ensure that foreclosure documentation is sent to mortgage insurer or guarantor as required.
          (v)   Preserve CHFA's rights under the terms of mortgage insurance or guarantee conveyance or assignment procedures and comply with documentation requirements.
         (vi)   Maintain insurance coverage and take such steps as are reasonable to protect the mortgaged property from vandalism, deterioration or waste.
        (vii)   Pay all known expenses before submitting claim to insurer or guarantor.
       (viii)   Submit completed claim to insurer or guarantor.

    (2)   In the event that the foreclosure action is discontinued, Servicer shall recommence all regular servicing under the terms of this Agreement.

L.   Change of Mortgagee.  CHFA may transfer, assign or otherwise dispose of its mortgagee interest in any Mortgage without the consent of Servicer, but in such event, written notice thereof will be mailed to Servicer giving the name and address of any assignee, and until such notice is received by Servicer, CHFA shall for the

February, 1985

purposes of this Agreement continue to be the owner of
the Mortgage. Upon notification of the transfer or
assignment of any Mortgage, Servicer will remit to CHFA
all funds collected on said Mortgage less any servicing
fee due to the date of receipt of said notice and
thereupon its obligation to service such Mortgage and
its right to receive fees and compensation for such
servicing shall cease and terminate.

M.  **Change of Servicer.**  CHFA shall have the right to
terminate this Agreement as to any Mortgage serviced
hereunder and to refer said Mortgage to another
Servicer.

Such individual change shall not occur except upon
thirty (30) days' written notice to Servicer and, if
said change is without cause, the payment of a termina-
tion fee to Servicer of one percent (1%) of the out-
standing unpaid principal amount of the Mortgage being
referred.

N.  **Assumptions.**

(1)  A Mortgage insured or guaranteed by FHA or VA may
be assumed pursuant to applicable federal
requirements provided that the Mortgage was
originally committed by CHFA prior to January 1,
1982.

(2)  A Mortgage committed by CHFA after January 1, 1982
or a Mortgage insured by a private mortgage
insurer, regardless of when committed, may not be
assumed without prior written approval from CHFA.
Servicer shall promptly notify CHFA in the event
that the Servicer becomes aware of any facts or
circumstances indicating that a Mortgage may have
been assumed without the prior approval of CHFA
(e.g., check received from other than the original
borrower, change in hazard insurance policy).

(3)  Mortgage assumptions must be carried out in
accordance with the requirements of Section 7.4 of
the Home Mortgage Programs Operating Manual.

4.  **Servicer's Compensation.**

A.  Servicer shall retain from each complete monthly payment
collected a servicing fee at the rate of three-eighths
of one percent (3/8%) per annum, computed on the unpaid
principal balance prior to the monthly payment.

B.  Servicer shall be entitled to retain all late charges
payable and collected under the terms of the Mortgages.

C.  Servicer's right to compensation for servicing a CHFA
Mortgage shall cease upon the occurrence of any of the
following:

(1)  prepayment of the Mortgage loan in full;

(2)  receipt of CHFA's written authorization to
commence foreclosure, or to assign the Mortgage to
an insurer or guarantor, except as to payments
thereafter validly received from the mortgagor by
Servicer and remitted to CHFA;

(3)  acquisition of the mortgaged property by CHFA
without foreclosure;

February, 1985

   (4) termination as hereinafter set forth; or

   (5) cessation of duties and obligations under
    Section 3.L. (Change of Mortgagee) above.

5. <u>Termination</u>.

 A. This Agreement may be terminated by mutual consent.

 B. CHFA shall have the right to terminate this Agreement by
  notice in writing to Servicer, in the event of any of
  the following:

   (1) Servicer fails to perform its obligations here-
    under; or

   (2) Servicer assigns or attempts to assign this Agree-
    ment without the approval of CHFA; or

   (3) Servicer shall initiate or suffer any proceedings
    of insolvency or reorganization under the Bank-
    ruptcy Act, or other federal or state receivership
    laws or make any common law assignment for the
    benefit of creditors; or

   (4) any change in Servicer's financial status which,
    in CHFA's opinion, materially affects Servicer's
    ability to provide satisfactory servicing of the
    Mortgages; or

   (5) without cause, upon thirty (30) days' written
    notice to Servicer and the payment of a termina-
    tion fee to Servicer of one percent (1%) of the
    aggregate unpaid principal amounts of all Mortgages
    subject hereto at the time of such termination.

 C. Servicer shall have the right to terminate this
  Agreement upon sixty (60) days' written notice to CHFA.

 D. If any such event of termination should occur, no
  interest in this Agreement shall be deemed an asset or
  liability of Servicer or Servicer's successors or as-
  signs, nor shall any interest in this Agreement pass by
  operation of law without the consent of CHFA.

 E. From and after the effective date of termination of this
  Agreement pursuant to any provision hereof, Servicer
  shall be relieved of further rights and
  responsibilities in connection with servicing
  Mortgages.  Servicer forthwith upon such termination
  shall promptly:

   (1) pay to CHFA all monies collected and held by it,
    less any servicing fees to which it is entitled,
    pursuant to this Agreement or pursuant to any
    Agreement or letter of arrangement relating to the
    Mortgages,

   (2) deliver to CHFA all Mortgage loan documents,
    insurance policies, and records in connection
    therewith, and

   (3) deliver to CHFA a full accounting, including a
    statement showing the monthly payments collected
    by it and a statement of monies held in trust by
    it for the payment of maintenance or other charges
    with respect to Mortgages.

 6. <u>Duration of Agreement</u>.  Unless sooner terminated as herein
provided or by mutual agreement, this Agreement shall continue from
the date hereof until the principal and interest of all Mortgages are
paid in full and remitted to CHFA.

       February, 1985

7. <u>Warranties of the Servicer</u>.  As to each Mortgage originated by Servicer and retained under this Agreement for servicing, the warranties and covenants of the CHFA Master Commitment Agreement for Mortgage Purchases are hereby incorporated by reference.

8. <u>Compliance With Applicable Laws</u>.  Servicer shall be in compliance with all requirements of all federal and state laws, rules and regulations applicable to CHFA Mortgages.

9. <u>Agency</u>.

   A. <u>No Implied Agency</u>.  Servicer is not an agent or partner of CHFA and has no authority and is intended to have no power to waive or vary the terms of any Mortgage or in any other respect create, extinguish or modify any right, obligation or liability of CHFA to any person whatsoever, except as such rights, obligations or liabilities of CHFA may incidentally be affected by the discharge by Servicer of its contractual obligations to CHFA hereunder.

   B. <u>Limited Agency</u>.

      (1) Servicer, on behalf of CHFA, may endorse insurance checks for any amount up to $2,500 without prior approval of CHFA.

      (2) Servicer, on behalf of CHFA, may submit claims to FHA, VA or private mortgage insurers.

      (3) This limited agency is specifically granted for purposes of this Section 9.B. and for no other purpose.

10. <u>Waiver</u>.  Except as permitted under Section 3.J.(4), Servicer will not waive or allow any mortgagor to postpone compliance with any terms or provisions of any Mortgage.  Servicer may receive and accept any payments made by a mortgagor in whole or in part on account of any default in the Mortgage obligations of such Mortgage until the principal indebtedness has been declared due, or until written notice is received from CHFA that no payments are to be received or accepted following a default in the Mortgage obligations.

11. <u>Indemnification by Servicer</u>.  Servicer hereby agrees that it shall indemnify CHFA and hold CHFA harmless against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that CHFA may sustain as a result of any failure on the part of Servicer to perform its services and duties under this Agreement and documents therein incorporated.

12. <u>Examination of Accounts and Mortgage Records</u>.  Servicer shall permit any designated employee or representative of CHFA, at any reasonable time during regular business hours, to examine and make audits of any of the accounts, Mortgage records and procedures of Servicer under the provisions of this Agreement and to reproduce and make copies of such items.

13. <u>Prior Agreements</u>.  This Agreement supersedes any prior agreements and understandings between CHFA and Servicer governing the servicing of Mortgages by Servicer for CHFA; provided, however, that the provisions of this paragraph shall not operate to release Servicer from any responsibility or liability that may have arisen under such agreements and understandings.

14. <u>Severability</u>.  The invalidity of any clause, part or provision of this Agreement shall not affect the validity of the remaining portions.

-8-

February, 1985

15. <u>Assignment</u>. This Agreement shall not be assigned, whether by operation of law or otherwise, by Servicer or its successors or assigns without the written consent of CHFA.

16. <u>Notices</u>. All notices from Servicer to CHFA shall be sent by mail addressed to Loan Portfolio Manager, Connecticut Housing Finance Authority, 40 Cold Spring Road, Rocky Hill, Connecticut 06067, and all notices from CHFA to Servicer shall be sent by mail addressed to Servicer at the address herein specified unless another address is designated in writing by Servicer.

17. <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Connecticut.

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be executed by its duly authorized officer and their seals to be affixed this _15_ day of _July_, 198_7_.

GMAC Mortgage Corporation of PA
-------------------------------------
SERVICER (Type Name)

10 Commerce Park Road
-------------------------------------
ADDRESS (Type Address)

Milford, CT  06460
-------------------------------------

WITNESS:

BY _____
(Signature)

Its  Vice President
-------------------------------------
(Title)

WITNESS:

_Shelly A. Arbo_

Connecticut Housing Finance Authority

BY _____
OREST T. DUBNO
Its:  Executive Director

February, 1985

CONNECTICUT HOUSING FINANCE AUTHORITY

MASTER COMMITMENT AGREEMENT
FOR
MORTGAGE PURCHASES

AGREEMENT, made by and between the Connecticut Housing Finance
Authority, a public body corporate and politic of the State of Connecticut,
(hereafter "CHFA") and   GMAC Mortgage Corporation of PA
(hereafter "Participating Lender").

Participating Lender and CHFA agree as follows:

1.   This Agreement shall be subject to the provisions of Chapter 134
of the Connecticut General Statutes, as now or hereafter amended, the
regulations promulgated thereunder, and the requirements and guidelines
established by CHFA as contained in the CHFA Home Mortgage Programs
Operating Manual.  The term "Manual" as used herein shall be construed to
mean the CHFA Home Mortgage Programs Operating Manual and all memoranda and
bulletins issued and delivered to the Participating Lenders participating
in the mortgage programs offered by CHFA.

2.   Participating Lender may from time to time submit mortgages
forpurchase by CHFA, provided such mortgages are insured by the Federal
Housing Administration (hereafter "FHA") or by a private mortgage insurer
(hereafter "PMI") or guaranteed by the Veterans Administration (hereafter
"VA") and have been committed for purchase by CHFA.

3.   Mortgages submitted by Participating Lender for sale to CHFA
shall be originated in accordance with the CHFA rules and regulations in
force on the date of the written Commitment for Mortgage Purchase
(hereafter "Commitment").

4.   CHFA's Commitment shall expire on the termination date recited in
the Commitment (no earlier than ninety (90) days after issuance) and shall
be subject to the terms and conditions of this Agreement.  In the event a
Participating Lender shall fail to submit the mortgage for purchase before
the termination of the Commitment, CHFA thereafter shall have no obligation
whatsoever to purchase the mortgage, unless an extension of the termination
date has been requested by the Participating Lender and approved by CHFA.

5.   The purchase price of a mortgage shall be equal to the
outstanding principal balance of the mortgage without any adjustment for
interest.  Mortgage loans shall be purchased by CHFA pursuant to Section 7
of the Manual.  Participating Lender shall not offer any mortgage to CHFA
for purchase prior to loan closing.

6.   Participating Lender shall be fully liable for all warranties and
representations made to CHFA hereunder by it or any person, firm, or
corporation acting on its behalf, in accepting and reviewing the
application for or the making of any mortgage sold to CHFA.

7.   CHFA reserves the right to require repurchase of any mortgage
submitted by Participating Lender if Participating Lender is not in full
compliance with the terms, covenants and conditions of this Agreement, if
any warranty or representation is untrue with respect to the mortgage, if
the mortgage does not qualify as a mortgage loan of the CHFA Home Mortgage
Purchase Program in accordance with the Manual, if the borrower or the
dwelling is not fully qualified as an Eligible Borrower or an Eligible
Dwelling in accordance with federal and state laws rules and regulations in
effect at the time, or if Participating Lender is in breach of any other
agreement between CHFA and Participating Lender (hereafter "Repurchase").

February, 1985

Connecticut Housing Finance Authority
40 Cold Spring Road
Rocky Hill, CT  06067

8.    CHFA shall incur no obligation to purchase a mortgage submitted to it by Participating Lender by virtue of the fact that a Participating Lender has recorded an assignment of said mortgage to CHFA.  In the event CHFA requires Repurchase of a mortgage for which an assignment has been recorded, CHFA shall execute another assignment of the mortgage to Participating Lender to be recorded by Participating Lender at its cost.

9.    As to each mortgage submitted to CHFA for purchase, Participating Lender warrants, represents and agrees that as of the date of closing:

a.    The mortgage was duly executed, acknowledged, delivered and recorded, and an assignment of the mortgage deed to CHFA was duly executed, acknowledged, delivered and recorded.

b.    The mortgage is a valid first lien on the mortgaged premises (subject only to the exceptions set forth in paragraph 9.g hereof); the mortgaged premises are free and clear of all liens prior to the first lien of the mortgage and no rights are outstanding that could give rise to such liens, subject only to liens for taxes and special assessments not yet due and payable; the mortgage and note secured thereby are legal, valid, and binding obligations of the mortgagor enforceable in accordance with their terms and conditions, and free from any right of set off, counterclaim or other claim or defense; neither the mortgage deed or note is in default; no part of the mortgaged premises has been released from the mortgage; the terms of the mortgage have not been modified, amended, or in any way waived or changed; and, if a valid first lien is required on any equipment or items of personal property by the VA, FHA, or PMI, such lien has been perfected.

c.    The full principal amount of the mortgage has been advanced to the mortgagor or advanced in accordance with the direction of the mortgagor; the mortgagor has no option under the mortgage to borrow from Participating Lender, or any other person, additional funds to be secured by the mortgage without the consent of Participating Lender; and the outstanding balance is as represented by Participating Lender to CHFA, and is fully secured by the mortgage.

d.    The mortgage was closed in accordance with the Manual requirements and with the applicable VA, FHA or PMI requirements for guaranty or insurance of said mortgage loan.

e.    All requirements of federal and state law, and rules or regulations applicable to the mortgage and the mortgage loan transaction, including without limitation, Section 103A of the Internal Revenue Code of 1954, as amended, the Truth-in-Lending Act, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Home Mortgage Disclosure Act, and related acts now or hereafter enacted, have been fully complied with; no such laws, rules or regulations promulgated thereunder are in any way violated by the mortgage loan transaction; and any right of rescission in relation to the mortgage under such laws, rules or regulations has been disclosed to the mortgagor and has expired. Participating Lender shall deliver to CHFA with the mortgage such assurances and information, including, without limitation, copies of application forms and loan documents, as CHFA may reasonably require with respect to Participating Lender's compliance with regard to the above laws, rules and regulations.

f.    Participating Lender is the sole owner of the mortgage; it has full legal authority to, has duly taken all corporate action necessary to, and has obtained any consents required to sell, transfer, and assign the mortgage to CHFA free and clear of all claims or encumbrances of any type except as provided in paragraph 9.g hereof.

-2-                                        February, 1985

g.  The mortgaged premises are covered by a mortgagee's title
insurance policy in an amount at least equal to the outstanding
principal balance of the mortgage, and which names CHFA as the
insured in the following manner:  Participating Lender and
"Connecticut Housing Finance Authority and/or its successors and
assigns as their interest may appear."  The policy shall be on a
form consistent with the standard form of the American Land Title
Association and the premiums for the policy shall be fully paid.

Said title insurance policy is not subject to any exceptions
other than those exceptions which have been previously approved
by CHFA which do not detract from the value of, interfere with
the intended use of, or affect the marketability of the mortgage
or the mortgaged premises, unless otherwise waived by CHFA.  All
reservations, restrictions, covenants, rights of way, leases, and
other encumbrances, when applicable, must be identified by
recording date reference and the policy must state affirmatively
that said restrictions and covenants have not been violated and
that such restrictions and covenants do not provide for
forfeiture or reversion of title.

h.  There is in full force and effect insurance on the mortgaged
premises against fire and other risks, including flood hazard
insurance where required, issued by insurers acceptable to CHFA,
containing proper mortgagee clauses, and meeting all requirements
as set forth in the Manual.

i.  On the date of closing, there is of record no proceeding for
condemnation of all or any part of the mortgaged premises.  For
PMI-insured loans:  that the mortgaged premises are in good
condition, not damaged by fire, windstorm, or other casualty, and
expected to be suitable for occupancy as a principal residence as
of the date of the Participating Lender's appraisal.  The credit
standing of the mortgagor has been verified in accordance with
normal banking practices.

j.  The warranties and representations contained in or made pursuant
to this Agreement with respect to the mortgage shall survive
payment by CHFA of the purchase price therefor.  No review of any
documents or of any other matter relating to the mortgage made by
or on behalf of CHFA shall be construed in any way to waive,
modify or qualify said warranties and representations.

10.  CHFA reserves the right to require Repurchase of any mortgage in
connection with which CHFA in its sole discretion determines that there has
been a failure to comply with Section 103A of the Internal Revenue Code, as
amended, and rulings and regulations thereunder and such other applicable
laws, rules and regulations with respect to the mortgage loan, without
regard to whether the Participating Lender may be at fault.

11.  Participating Lender warrants and guarantees that the following
original documents, in addition to such other documents as CHFA may
reasonably require, will be delivered to CHFA within 120 days after the
date of the loan closing unless prevented by circumstances beyond the
Participating Lender's control, in which event, upon notice to CHFA,
Participating Lender shall deliver the same as soon as possible:

a.  Promissory Note
b.  Mortgage Deed with CHFA Uniform Mortgage Rider
c.  Veteran's Statement re:  due-on-sale for VA-guaranteed loans
d.  Assignment of Mortgage
e.  Title Insurance Policy
f.  Certificate of Mortgage Insurance or Guaranty
g.  Certificate of Occupancy, if applicable
h.  Hazard Insurance Certificate
i.  HUD Form 1, loan settlement statement
j.  CHFA Owner-Occupancy Certificate
k.  Borrower Affidavit
l.  Participating Lender Mortgage Loan Closing Certificate
m.  Participating Lender Mortgage Loan Post-Closing Certificate
n.  CHFA conditions satisfied, if applicable

-3-                                        February, 1985

12-12020-mg    Doc 2186-1    Filed 11/15/12    Entered 11/15/12 16:34:15    Exhibit
Pg 14 of 161

12. Escrow funds held by the Participating Lender for taxes, insurance premiums, and other charges and for on-site and off-site improvements shall be retained and administered by the Participating Lender on behalf of CHFA if the Participating Lender is the mortgage servicer, in accordance with the requirements of the CHFA Home Mortgage Servicing Agreement and all applicable laws, rules and regulations; or, if Participating Lender is not the mortgage servicer, said funds shall be transferred to another servicer, at the direction of CHFA.

13. CHFA, at its sole option, may elect to purchase mortgages only after the original documents listed in paragraph 11 of this Agreement have been received and approved by CHFA. In the event of such a purchase, the purchase price of a mortgage shall be computed as of the end of the day immediately preceding the date of the acceptance of the mortgage by CHFA, which is the date that the purchase price is disbursed to the Participating Lender, and shall be equal to the outstanding principal balance of the mortgage, increased by the amount of any interest on said principal balance which is accrued and unpaid, and decreased by the amount of any interest which shall have been prepaid.

14. Participating Lender agrees that if it breaches any term, covenant or condition of this Agreement, or if any warranty or representation made by Participating Lender or the mortgagor is untrue in any material respect with respect to any mortgage purchased by CHFA, CHFA may at its option and in its sole discretion, require Participating Lender to Repurchase such mortgage, without regard as to whether Participating Lender may be at fault. In that event, Participating Lender shall indemnify CHFA and hold it harmless for any loss, damage, expenses or attorney's fees that CHFA may sustain as a result of such breach. The Repurchase price of any mortgage shall be computed as of the day immediately preceding the date of Repurchase and shall be equal to the outstanding principal balance of the mortgage, increased by the amount of any accrued and unpaid interest on said balance and decreased by the amount of any interest which shall have been prepaid. Upon any Repurchase, Cshall deliver and return to the Participating Lender all documents delivered to CHFA by Participating Lender in connection with the sale, including the note, endorsed to the Participating Lender without recourse, and a proper assignment of mortgage.

15. The Participating Lender shall permit CHFA to inspect all records of the Participating Lender which pertain to the CHFA Home Mortgage Purchase Program.

16. All expenses necessary to the closing of a mortgage and incurred by the Participating Lender in respect thereof shall be the responsibility of the Participating Lender.

17. The Participating Lender agrees and warrants that in the performance of this Agreement it will not discriminate or permit discrimination against any person or group of persons on the grounds of race, color, creed, national origin and ancestry, religion, sex, marital status, or physical or mental disability, or in any manner prohibited by the laws of the United States or the State of Connecticut. CHFA may not require a Repurchase for the violation of this paragraph 17.

18. This Agreement and Participating Lender's rights herein may not be assigned without the express written consent of CHFA.

19. No person (or any related person as defined in Section 103(c)(6)(C) of the Internal Revenue Code of 1954, as amended) from whom the Authority may acquire mortgage loans shall, pursuant to any

arrangement, formal or informal, purchase bonds or any other obligations effected by CHFA in an amount related to the principal amount of mortgage loans to be acquired from such person by CHFA.

20.   CHFA and the Participating Lender shall each have the right to terminate this Agreement upon at least thirty (30) days' written notice to the other.  Such a termination shall not affect loan commitments or loan funds reserved prior to the expiration of said notice period.

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be executed by its duly authorized officer and their seals to be affixed this 15 day of July, 198 7.

GMAC Mortgage Corporation of PA
PARTICIPATING LENDER (Type Name)

10 Commerce Park Road
ADDRESS (Type Address)

Milford, CT  06460

WITNESS:

BY _____
(Signature)

Its  Vice President
(Title)

WITNESS:

Shelly A. Arbo

Connecticut Housing Finance Authority

BY _____
OREST T. DUBNO
Its:  Executive Director

-5-                                February, 1985

# CONNECTICUT HOUSING FINANCE AUTHORITY

**OREST T. DUBNO**
*Executive Director*

July 13, 1988

Dear Participating Lender:

Changes in federal tax law, as well as the recent adoption of the CHFA mortgage insurance program, have made it necessary to make certain modifications to the Master Commitment Agreement for Mortgage Purchases and to the Home Mortgage Servicing Agreement. These modifications will be accomplished by your signing this letter in the space indicated and returning it to CHFA. Both Agreements shall remain in full force and effect and unmodified except as explicitly set forth herein.

1.  Changes to the Master Commitment Agreement for Mortgage Purchases

    a.  Numbered paragraph 2 on page 1 is changed, in relevant part, from "...or by a private mortgage insurer (hereafter "PMI") or guaranteed by the Veterans Administration..." to "...or by a private mortgage insurer (hereafter "PMI") or by the CHFA mortgage insurance program or guaranteed by the Veterans Administration..."

    b.  Numbered paragraph 9(b) on page 2 is changed, in relevant part, from "...or items of personal property by the VA, FHA, or PMI, such lien has been perfected." to "...or items of personal property by the VA, FHA, the CHFA mortgage insurance program, or PMI, such lien has been perfected."

    c.  Numbered paragraph 9(d) on page 2 is changed, in relevant part, from "...with the applicable VA, FHA, or PMI requirements..." to "...with the applicable VA, FHA, CHFA, or PMI requirements..."

    d.  Numbered paragraph 9(e) on page 2 is changed, in relevant part, from "...including without limitation, Section 103A of the Internal Revenue Code of 1954, as amended, the Truth-in-Lending Act..." to "...including without limitation, relevant sections of the Internal Revenue Code of 1986, as amended, the Truth-in-Lending Act..."

    e.  Numbered paragraph 9(i) on page 3 is changed, in relevant part, from "...For PMI-insured loans: that the mortgaged premises..." to "...For PMI or CHFA-insured loans: that the mortgaged premises..."



*40 Cold Spring Road / Rocky Hill, Connecticut 06067-4005 / 203-721-9501*

CON...CTICUT HOUSING FINANCE AUTHORITY

Participating Lender                                              Page 2.

    f.    Numbered paragraph 10 on page 3 is changed, in relevant part, from
        "...a failure to comply with Section 103A of the Internal Revenue
        Code, as amended... " to "...a failure to comply with applicable
        sections of the Internal Revenue Code of 1986, as amended..."

    g.    Numbered paragraph 19 on page 4 is changed, in relevant part, from
        "...as defined in Section 103(c)(b)(c) of the Internal Revenue Code of
        1954, as amended..." to "...as defined in any applicable section of
        the Internal Revenue Code of 1986, as amended..."

2.    Change to the Home Mortgage Servicing Agreement Paragraph (e) on page 3 is
    changed, in relevant part from "...at a rate of not less than four percent
    (4%) per annum..." to "...at a rate not less than the minimum set forth in
    applicable statues or regulations..."

                           Sincerely,

                           O. T. Dubno

OTD:PR:djh

Accepted
Date: _8/9/88_

By: _____

GMAC Mortgage Corp. of PA.
Participating Lender and/or
Servicer Name

# AMENDMENT TO MASTER COMMITMENT
# AGREEMENT FOR MORTGAGE PURCHASES

The Master Commitment Agreement for Mortgage Purchases by and between the Connecticut Housing Finance Authority, a quasi-public agency of the State of Connecticut ("CHFA"), and _GMAC Mortgage Corporation_____ ("Participating Lender"), in regard to CHFA's Home Mortgage Program, is amended as follows:

1. After each loan closing, Participating Lender shall provide CHFA (or its designee) with those loan closing documents as required by the Manual. If Participating Lender is not a CHFA mortgage servicer, it shall provide the remainder of the loan closing documents (not provided to CHFA) to a master servicer as specified by CHFA.

2. If Participating Lender is a mortgage servicer of CHFA home mortgage loans, Participating Lender shall retain in its files those loan closing documents, as required by the Manual, not provided to CHFA. Participating Lender shall retain said documents in accordance with the "Required Minimum Standards for Public Records Storage Facilities" of the Connecticut State Library Office of the Public Records Administrator and State Archives, attached hereto and made a part hereof. Participating Lender shall make such documents available to CHFA for review and inspection as CHFA reasonably requests. Participating Lender shall retain such documents in accordance with the aforesaid Standards for that length of time consistent with the retention schedule promulgated by CHFA. Also, Participating Lender shall not destroy any of such documents unless consistent with said retention schedule.

3. If Participating Lender is a mortgage servicer of CHFA home mortgage loans, it shall prepare and execute a release of mortgage, pursuant to a Limited Power of Attorney provided to it by CHFA, for each and every home mortgage loan it services that pays off in full. Participating Lender shall fully comply with the requirements of Connecticut General Statutes Section 49-8 in regard to the delivery of releases in a timely manner. Participating Lender shall indemnify CHFA and hold it harmless for any loss, damage, expenses or attorney's fees that CHFA may sustain as a result of Participating Lender's failure to comply with the terms of this paragraph.

IN WITNESS WHEREOF, each party hereto has caused this Amendment to be executed by its duly authorized officer as of the dates written below.

Witness:                                    Participating Lender

By: _____

Barbara Tschanz                             Name: Nora Pio
Date: _1/2/2002_____                      Title: Assistant Vice President


Witness:                                    Connecticut Housing Finance Authority

By: _____

MARY O BRYANT                               Gary E. King
Date: _2-4-02___                            President - Executive Director

WNT1\X\WORD\LEGAL\SINGLE\AMENDMENT TO MASTER COMMITMENT.doc
rev. 12/10/01

## SECTION 1 – GENERAL INFORMATION

### 1.1    Preface

This Operating Manual (the "Manual") has been prepared by the Connecticut
Housing Finance Authority (CHFA) to provide Loan origination and operating
guidelines for Participating Lenders in its Home Mortgage Purchase Program.
This Manual supersedes all prior operating manuals, program bulletins or other
home mortgage program materials distributed by CHFA.

CHFA mortgage loans are available to borrowers who meet income and other
eligibility criteria described in this Manual, at a below market interest rate based
on the sale of CHFA bonds. In addition, CHFA finances home mortgages in
Targeted Areas without regard to income limits. CHFA does not refinance
existing mortgage loans, except when coupled with substantial rehabilitation, or
as part of a "special program" initiative authorized by the Authority.

The purpose of the Home Mortgage Purchase Program is to further the general
policies of Chapter 134 of the Connecticut General Statutes, including the specific
statutory objectives of:

A.    providing funds for long-term mortgage financing of residential
housing for occupancy by low and moderate income persons and
families in Connecticut; and

B.    encouraging the development of balanced communities of all
income levels in cities which qualify as Urban Areas under the
Act.

### 1.2    Organization

This Manual is intended to provide policy guidelines and detailed instructions for
the performance of the written agreements between CHFA and its Participating
Lenders. Accordingly, the provisions of this Manual are subject in all respects to
the provisions in the Authority's procedures and the definitive terms of the Master
Commitment Agreement for Mortgage Purchases and the Home Mortgage
Servicing Agreement in effect from time to time.

From time to time, CHFA may revise this Manual by issuing changed or
additional pages, or with the publication of CHFA Notice to Participating Lenders
or CHFA Bulletins. Notices to Participating Lenders and CHFA Bulletins will be
sent to the Participating Lender designated authorized staff and simultaneously
posted on the CHFA website at www.chfa.org.

As noted throughout the Manual, CHFA requires the use, as appropriate, of **FHA,
VA,** or **FNMA/FHLMC** printed Mortgage Deed and Promissory Note forms in

all cases. Participating Lenders are responsible for processing and servicing Loans in accordance with specific **FHA, VA, RD, CHFA** or private mortgage insurance **(PMI)** requirements, when applicable, and only general reference is made to those requirements in this Manual.

Throughout this Manual masculine references shall include both genders or either gender, as appropriate.

# SECTION 2 - PROGRAM INFORMATION

**2.1    Qualification of Participating Lenders**
**2.2    Distribution of Mortgage Funds**
**2.3    Funds Available for Targeted Areas**
**2.4    Commitment for Mortgage Purchase**
**2.5    Retention and Inspection of Records**
**2.6    The Federal Recapture Tax**

# SECTION 2 - Program Information

## 2.1    Qualification of Participating Lenders

### General

A "Participating Lender" is a lending institution that cooperates with CHFA in making funds available under its' home mortgage program by making and/or servicing mortgage loans that CHFA has agreed to purchase.

A.    <u>Lending Capability</u>
To be approved as a Participating Lender to originate mortgage loans, a lending institution must meet the following criteria:

1.    have in Connecticut the capacity and personnel to originate and close mortgage loans;

2.    unless it is a FDIC or FSLIC insured deposit-taking institution incorporated and existing under the laws of Connecticut, have eighteen (18) months' experience in making mortgage loans on homes located in Connecticut.  In the case of those institutions that acquire an institution in Connecticut, where the acquired institution meets the experience requirement, the acquired institution shall be deemed to meet the experience requirement;

3.    be a lender approved by the FHA and VA;

4.    maintain a minimum tangible net worth of $500,000 or provide a letter of credit, available and otherwise uncommitted line of credit, bond or other financial instrument acceptable to the Authority totaling such amount.

5.    maintain quality control and management systems to evaluate and monitor the overall quality of its loan production.

6.    execute the standard Master Commitment Agreement for mortgage purchases.

2-2
February, 2002

**B.**  <u>Servicing Capability</u>
To be approved by CHFA as a Participating Lender to service loans, the
institution must meet the following criteria:

1.  have the capacity and personnel to service mortgage loans, as
    determined by the Authority;

2.  demonstrate a proven ability to service the type of mortgages for
    which Authority approval is being requested;

3.  maintain a minimum tangible net worth of $500,000 or provide a
    letter of credit, available and otherwise uncommitted line of credit,
    bond or other financial instrument acceptable to the Authority
    totaling such amount;

4.  be in compliance with applicable federal and state laws, regulations
    promulgated thereunder and any licensing requirements by agencies
    of government having jurisdiction;

5.  maintain quality control and management system systems to evaluate
    and monitor the overall quality of its servicing activities; and

6.  execute the standard Home Mortgage Servicing Agreement and/or
    other contracts as determined by the Authority.

**C.**  <u>Lending Areas</u>
Participating Lenders are not required to go beyond their normal geographic
lending areas.

**D.**  <u>Availability of Program</u>
Participating Lenders may not restrict applications for Loans to only certain
parts of the available CHFA Program, except that a Participating Lender
need not originate Rehabilitation Mortgage Loans (see Section 4).

E.    <u>Removal of a Participating Lender</u>

CHFA may terminate the Master Commitment Agreement for Mortgage Purchases and/or the Home Mortgage Servicing Agreement according to their terms, respectively, and remove from the list of approved Participating Lenders any lending institution that has (1) failed to commit and close Mortgage Loans in accordance with the Act, the Procedures of this manual and the Master Commitment Agreement for Mortgage Purchases, or (2) ceased to meet the criteria for becoming a Participating Lender. Such removal shall take place thirty (30) days after written notice to such Participating Lender specifying the reason for the removal.

F.    <u>Training Session</u>

After CHFA has approved a Participating Lender, the Participating Lender shall promptly have a training session with CHFA staff prior to originating a CHFA loan. The training session shall cover CHFA's requirements in regard to originating and closing loans, providing CHFA with the required loan documents after closing, and, where appropriate, servicing requirements. CHFA shall have the right to require a Participating Lender to have a retraining session when CHFA deems it appropriate.

G.    <u>Correspondent Lender Relationships</u>

A Participating Lender may sponsor a "Correspondent Lender" with the prior written approval of the Authority. The Sponsoring Participating Lender will be required to meet and provide evidence of a minimum tangible net worth of $1,000,000 in order to sponsor a Correspondent Lender. In order to be approved as a Correspondent Lender by the Authority, the Correspondent Lender must meet the same criteria for a Participating Lender as described in subsection (A.) above, except as follows:

(1)    have a minimum tangible net worth of $100,000 or that amount equal to that required by the Federal Housing Administration (FHA);

(2)    the Correspondent Lender will not be required to execute the standard Master Commitment Agreement for Mortgage Purchases and the standard Home Mortgage Servicing Agreement although a standard letter agreement between the parties will be executed by both parties;

(3)     the Correspondent Lender will be required to attend a training session(s) prior to originating any CHFA loans on behalf of the Sponsoring Participating Lender and any additional training session(s) as the Authority deems appropriate; and

(4)     Veterans Administration (VA) and Federal Housing Administration (FHA) approval are not required.

An approved Correspondent Lender may originate home mortgage loans (FHA-insured loans) on behalf of a Sponsoring Participating Lender. However, the Sponsoring Participating Lender shall remain fully responsible to the Authority for its obligations pursuant to these procedures, the CHFA Home Mortgage Program Operating Manual, and the Master Commitment Agreement for Mortgage Purchases. The Authority reserves the right to limit the number of Correspondent Lenders and may rescind approval of a Correspondent Lender at any time with (prior) written notice.

## 2.2     Distribution of Mortgage Funds

A.     Availability of Funds
CHFA will not issue separate allocations to Participating Lenders, but will give general written notice to all Participating Lenders of funds availability. A funds reservation system which allows the borrower to apply for a CHFA Loan at the Lender of his choice will be used.

CHFA reserves the right, however, to set aside a portion of the proceeds of any issue of bonds on an uncommitted basis for any purpose of the Program. Specifically, CHFA expects to set aside certain proceeds from each issue for the purpose of making Mortgage Loans in Targeted Areas.

B.    **Notice of Funds Availability**
A date will be established by CHFA after which individual Loan reservation requests will be accepted.  Prior to that date, written notice will be mailed to all Participating Lenders setting forth the date statewide public advertising will commence to notify the public of availability of funds, the date upon which applications for Loans may be accepted and funds reservation requests commenced, and the interest rate.  Participating Lenders may not accept applications for funds nor start Loan processing (such as by ordering verifications, credit reports or appraisals) prior to the date established by CHFA.  Applications taken prior to the date of funds availability will not be accepted by CHFA.

C.    **Notice to the Public of Funds Availability**
Not less than one week prior to the date of funds availability CHFA shall undertake statewide advertising to inform the public of the availability of mortgage funds.

D.    **Reservation of Loan Funds**
CHFA will administer the reservation program.  On or after the date of funds availability, Participating Lenders may accept Loan applications from prospective borrowers.

1.    The Participating Lender will determine if the prospective mortgagor is qualified as an Eligible Borrower. Such preliminary determination shall include the Participating Lender's examination of (i) the prospective borrower's written purchase agreement concerning the property to be financed, and (ii) a copy of the borrower's most recently filed Federal income tax return as an approximate indication of his income.

2.    After the Participating Lender has determined an applicant's eligibility for CHFA financing, the lender will reserve mortgage funds for a period specified by CHFA using the on-line reservation system.

a.    The reservation will be identified by an authorized reservation loan number, which will be assigned by the on-line reservation system. This reservation number must appear on the Loan submission to CHFA and all subsequent correspondence regarding the Loan submission.

b.    The reservation of funds prior to Loan commitment is valid for four months unless extended by CHFA.

c.    Loan reservations must include the names of all borrowers. Substitute borrowers or the addition of or removal of a borrower to qualify for the loan may **NOT be permitted once the loan reservation is secured.**

3.    The Participating Lender must notify CHFA of any cancellation of reserved funds so that the funds may be made available for others. No substitution of borrower will be permitted for reserved funds. No substitution of property will be permitted for reserved funds except as approved by CHFA in the case of a situation, outside of the control of the borrower, causing hardship. CHFA may decline to reserve funds for an applicant who has had other CHFA funds reserved.

E.    <u>Free Accessibility to Funds</u>

1.    Applications for Loans shall be based on eligibility and not on special relationships between a Participating Lender and particular real estate brokers or developers. A Participating Lender may not deny a Loan to an Eligible Borrower solely because the Eligible Borrower is not a depositor or customer of the Participating Lender. Neither may the Participating Lender limit the availability of CHFA financing by denying an application based on the fact that the applicant does not belong to a specified group of the public such as employees of certain organizations. Under normal circumstances, applications should be taken and processed on a "first-come, first-served" basis.

2.    Interview appointments for Loan applications shall not be established in anticipation of CHFA funds availability.

## 2.3    Funds Available for Targeted Areas

**A.**    **General**
In accordance with Federal requirements, CHFA will make funds available for Eligible Dwellings located in Targeted Areas for at least one year following the issuance of each series of Bonds.  CHFA will exercise due diligence in making Mortgage Loans in Targeted Areas by advising Participating Lenders in writing of the availability of funds in Targeted Areas and by advising potential Eligible Borrowers through advertising and/or news releases.  Participating Lenders under CHFA's direction shall assist in advising potential Eligible Borrowers of the availability of funds in Targeted Areas.

**B.**    **Eligibility**
Mortgage Loans for Eligible Dwellings located in Targeted Areas must comply in all respects with the requirements in Section 3 and elsewhere in this Manual for all Mortgage Loans except for the requirement in Section 3.1C that an Eligible Borrower may not have had a present ownership interest in the Borrower's principal residence in the three years preceding the application for the Mortgage Loan.  Also, with exception to section 3.1B where a borrower shall not have an aggregate household income in excess of the applicable limit established by CHFA (contained in appendix B).

## 2.4    Commitment for Mortgage Purchase

**A.**    **Obtaining a Commitment**
The Participating Lender shall submit each Loan application to CHFA with completed forms and documents referred to in Section 5 of this Manual.

Each Loan submission will be underwritten and analyzed by CHFA, and if approved, a Commitment will be sent to the Participating Lender.  The Commitment will be effective for the period designated therein.  Loans will be purchased by CHFA in accordance with the Commitment and pursuant to Section 7 of this Manual.

B.    **Commitment to be Based on Authorized Funds Reservation**
Each Loan submission requesting a Commitment must be clearly identified
with the CHFA authorized reservation number previously assigned and shall
not exceed by a significant amount the mortgage amount reserved, unless
otherwise permitted by CHFA.

C.    **Extensions and Cancellations**
Requests for extension or cancellation of a Commitment must be in writing
and signed by a mortgage officer or other authorized person of the
Participating Lender. Telephone cancellations will not be accepted.
Requests should be directed to the Homeownership Division of CHFA.

## 2.5    Retention and Inspection of Records

Any documents required by this Manual or by state or federal law, not delivered to
CHFA pursuant to a Commitment or purchase of a Loan, must be retained by the
Participating Lender or Servicer for at least two years after the date of purchase by
CHFA, or such longer period as may be required by law, and, if requested by
CHFA, for a reasonable period thereafter. If during such retention time CHFA
requests original or certified copies of such documents, the same must be delivered
to CHFA. Where appropriate, such documents may be kept on microfilm,
microcard or other similar photographic methods.

Participating Lenders must make all records and books maintained in connection
with Loans available for inspection by CHFA upon request during reasonable
business hours.

The absence of documentation required to be retained by this section may, at
the option of CHFA, be construed to conclusively evidence a defect in such
documentation under the Master Commitment Agreement for Mortgage
Purchases.

## 2.6    The Federal Recapture Tax

Congress enacted legislation in 1988, subsequently amended in October of 1990, to recapture a portion of the "subsidized amount" from home buyers who receive qualified mortgage bond assistance after January 1, 1991. This includes all buyers who use CHFA Loans and Mortgage Credit Certificates (MCC), dispose of an interest in their residence within nine (9) years of purchase, and whose incomes substantially increase. The amount of Recapture Tax that Borrower(s) might have to pay depends on how much their incomes have increased, their family size at the time of sale, the original amount of their mortgage, the length of time they owned their home and any gain realized on disposition of the home. The recapture amount is the lesser of: (1) 50 percent of the gain realized on disposition, or (2) a percentage of the subsidized amount. The percentage is the product of the holding period percentage and the income percentage (both discussed below).

The Borrower(s) is responsible for calculating and paying the Recapture Tax, if any, as additional Federal tax liability for the tax year in which the interest in the home is disposed. However, Participating Lenders are required to provide homebuyers with the Authority's "Notice of Potential Recapture Tax Form 051" and "Method to Compute Recapture Tax Form 052":

A.    No Recapture Tax is due and the Borrower(s) does not need to do the calculation if any of the following occurs:

    1.    The Borrower(s) disposes of his home later than nine (9) years after the mortgage loan is closed.

    2.    The home is disposed of as a result of the Borrower(s) death.

    3.    The Borrower(s) transfer the home either to his spouse or former spouse incident to divorce and no gain of loss was incurred on the transfer and included in his Federal taxable income.

    4.    The home was disposed of at a loss.

5.    The Borrower(s) modified adjusted gross income for the year in which the home is sold does not exceed the Threshold Income, adjusted for family size, for such year. Modified Adjusted Gross Income is Calculated as follows:

| | |
|---|---|
| Adjusted Gross Income from IRS 1040 | $_____ |
| Tax exempt income earned for the year | +_____ |
| Gain on sale of the home | -_____ |
| Modified Adjusted Gross Income = | $_____ |

B.    There are several steps required to calculate the actual recapture amount owed. The following outlines the steps involved in the calculation:

1.    <u>Threshold Income (Adjusted Qualifying Income)</u>

The first year Threshold Income is 5% greater than the maximum allowable federal income limit for the area in which the residence is located at the time the borrower was qualified. Each year of the nine (9) year holding period the Threshold Income is increased by 5% from the previous year's Threshold Income. The Threshold Income for each of the nine (9) years is provided to the Borrower(s) in the "Notice to Mortgagor(s) of Maximum Recapture Tax and of Method to Compute Recapture Tax on Sale of Home" letter which will be issued by CHFA at the time of issuance of the Commitment.

2.    <u>Holding Period Percentage</u>
The percentage is based on the month in which the disposition occurs after the loan closing date pursuant to the following table:

**Disposition Within Month of Closing**

| | | |
|---|---|---|
| 1-12 | - | 20% |
| 13-24 | - | 40% |
| 25-36 | - | 60% |
| 37-48 | - | 80% |
| 49-60 | - | 100% |
| 61-72 | - | 80% |
| 73-84 | - | 60% |
| 85-96 | - | 40% |
| 97-108 | - | 20% |

2-11
February, 2002

3.    **Maximum Recapture Amount**
The federally subsidized amount which is 6.25% multiplied times the original amount of the mortgage, multiplied times the Holding Period Percentage.

4.    **Income Percentage**
The modified adjusted gross income of the Borrower(s) for the taxable year in which the disposition occurs minus the Threshold Income divided by $5,000.

5.    **Adjusted Recapture Amount**
The Maximum Recapture amount multiplied times the Income Percentage.

6.    **Recapture Amount**
Equals the lesser of the Adjusted Recapture Amount or 50 percent of the gain realized on the disposition.

C.    **Limitations and Special Rules on Recapture Tax**

(1)    If you give away your home (other than to your spouse or ex-spouse incident to divorce), you must determine your actual Recapture Tax as if you had sold your home for its fair market value.

(2)    If your home is destroyed by fire, storm, flood, or other casualty, there generally is no Recapture Tax if, within two (2) years, you purchase additional property for use as your principal Residence on the site of the home financed with your original subsidized mortgage loan.

(3)    In general, except as provided in future regulations, if two or more persons own a home and are jointly liable for the subsidized mortgage loan, the actual Recapture Tax is determined separately for each person based on their interests in the home.

(3)    Refinancing of the Loan does not result in a Recapture Tax. If the home is disposed of subsequent to the refinancing, but prior to the original nine (9) year holding period, Recapture Tax may be due.

2-12
February, 2002

# SECTION 3 - ELIGIBILITY

**3.1**    **Eligible Borrowers**
**3.2**    **Eligible Dwellings**

# Section 3 - Eligibility

## 3.1 Eligible Borrowers

To qualify for **CHFA** financing, an applicant must meet the eligibility criteria set forth in this section.

### A. General

An applicant shall be an Eligible Borrower for a **CHFA** Mortgage Loan if the applicant meets the following criteria:

1. At the time of application and at the time of mortgage closing, has an annual aggregate household income that is at or below the applicable income limit in effect at the time the application was taken or is purchasing an Eligible Dwelling in a Targeted Area (Section *2.3B*);

2. Agrees to occupy and use the residential property to be purchased for a permanent, principal residence within 60 days after the date of the closing of the Mortgage Loan. Applicant must also agree to occupy the property as their primary residence for the term of the **CHFA** mortgage loan. (Section 3.10.);

3. If the applicant currently owns his or her own home now, or has owned a home within the past three years, he or she may still be eligible for a CHFA mortgage loan if he or she is buying a home in a Targeted Area or is participating in a **CHFA** approved loan program to substantially rehabilitate a qualified home (Section *3.1C); or* is participating in a CHFA approved special loan program that is designated specifically for first-time homebuyers *and* existing homeowners.

4. Will not use the proceeds of the Mortgage Loan to acquire or replace an existing mortgage or debt, except in the case of certain types of temporary financing (Section *3.1E)* or Qualified Rehabilitation (Section *4*);

5. Possesses and demonstrates the legal capacity to incur the obligations of the **CHFA** Mortgage Loan;

6. Possesses and demonstrates the ability to repay the **CHFA** Mortgage Loan (Section *5*);

7. Has contracted to purchase an Eligible Dwelling (Section 3.2) or will undertake Qualified Rehabilitation on his or her dwelling or on a dwelling he or she has contracted to purchase (Section 4) and

8. Has executed a Borrower Certificate at the time of the Loan application.

9.  Has at the time of application, a social security card as evidence of permanent residency in the United States. Consular Identification Cards (CID) or Individual Taxpayer Identification Numbers (ITIN) are not acceptable replacement documentation for U.S. Government issued social security numbers. The applicant does not need to be a citizen of the United States. The applicant must purchase a home in the State of Connecticut.

## B. Income

An Eligible Borrower shall not have an aggregate household income in excess of the applicable income limit established by **CHFA** (contained in Appendix B) and in force at the time of application for the Mortgage Loan unless the Borrower is purchasing in a Targeted Area as described in (Section *2.3B*).

The family unit of an applicant shall include all proposed occupants. This includes occupants that are blood relatives of the applicant(s) and occupants that are unrelated members of the household; all people that will occupy the residence after closing will be considered a member of the family unit. This includes an intended spouse of an applicant who is engaged to be married. The fiancé will be considered part of the family unit regardless of the proposed marriage date.

Aggregate family income shall include income from whatever source derived, including without limitation:
- regular earnings
- part-time earnings
- unemployment compensation
- bonuses
- overtime income, whether or not guaranteed by an employer
- dividends
- interest (except on funds which will be used for downpayment and closing costs)
- commissions
- military allowances
- welfare payments
- disability payments
- pension, annuity, retirement, and social security benefits
- reimbursement for services in military reserve or National Guard.

The Authority may at its option exclude overtime income where it deems such income to be of short duration and of a temporary nature.

Aggregate family income shall also include income from full or part-time employment of all proposed owner-occupants including other nondependent resident members of the family unit.

Aggregate family income, for the purposes of determining compliance with the applicable household income limit, shall include one hundred (100%) percent of the anticipated fair market income from rental units in a two to four unit dwelling to be purchased by the applicant with the assistance of the Authority's mortgage loan. The percentage of rental income from units in a two to four unit dwelling that will be added to the borrower's income to qualify for repayment of the mortgage loan debt will be based on the guidelines of the loan insurer and may range from seventy-five to eighty-five percent (75% - 85%) of the net rental amount.

## C. **Three-Year Requirement**

An Eligible Borrower does not include any borrower who, at any time during the three years preceding the date of application for the Mortgage Loan, had a **"present ownership interest"** (as hereinafter defined) in his principal residence. This requirement does not apply to Mortgage Loans for Eligible Dwellings located in Targeted Areas or to Rehabilitation Mortgage Loans. If applicable, the Borrower must certify on the Borrower Certificate that at no time during the three years preceding the closing of the Mortgage Loan has he had a present ownership interest in a principal residence.

Eligible borrowers that have a "present ownership interest" in a principal residence located in any part of the United States, its Commonwealths or Territories are subject to these requirements.

1. **Definition of Present Ownership Interest**
   a. "Present ownership interest" includes:
      i. A fee simple interest
      ii. A joint tenancy, a tenancy in common, or a tenancy by the entirety;
      iii. The interest of a tenant shareholder in a cooperative;
      iv. A life estate;
      v. A land contract, under which possession and the benefits and burdens of ownership are transferred although legal title is not transferred until some later time;
      vi. An interest held in trust for the Eligible Borrower (whether or not created by the Eligible Borrower) that would constitute a present ownership interest if held directly by the Eligible Borrower; and
      vii. Occupancy of a property for which an interest in real estate was created by the existence of an inheritance, probated or not, whether title is vested or not.

   b. Interests which do <u>not</u> constitute a "present ownership interest" include:
      i. A remainder interest,
      ii. An ordinary lease with or without an option to purchase,
      iii. A mere expectancy to inherit an interest in a principal residence,

      iv.  The interest that a purchaser of a residence acquires on the execution of an accepted offer to purchase real estate, and

      v.  An interest in other than a principal residence during the previous three years.

      vi.  An interest in a mobile home that is not permanently fixed to land and which mobile home is not considered real property for local tax purposes.

2. **Disposal of Other Residential Property**

    a.  In cases where a borrower, such as in a Targeted Area, is in the process of selling such residential property or has sold it during the six months prior to the date of application for the Loan, the Borrower shall apply the equity proceeds from the sale of the property (if any) as a downpayment on the Eligible Dwelling. The borrower may deduct payoff of the present mortgage, real estate commissions and reasonable closing costs on the home being sold in determining equity proceeds.

    b.  Any real estate that is owned by the borrower and used by the borrower as a residence shall be disposed of or under bona fide contract for sale before the closing on the Loan.

    c.  A borrower may not have an ownership interest in any other primary residential property that has been owner occupied in the past 3 years at the time of the mortgage loan closing.

3. **Persons Covered** – This requirement applies to any person (and the person's spouse, if not living separately) who will execute the mortgage or note and will have a present ownership interest (as defined in Section 3.C.1) in the Eligible Dwelling.

4. **Prior Tax Returns** – To verify that the Eligible Borrower meets the three year requirement, the Participating Lender must obtain copies of <u>signed</u> Federal income tax returns filed by the Eligible Borrower for the three years preceding the closing of the mortgage. Certified copies of the IRS Returns or Transcripts from the IRS are also acceptable. If the Eligible Borrower was not required by law to file a Federal income tax return for any of these three years and did not file and so states on the Borrower Certificate, the requirement to obtain a copy of the Federal income tax return for such year is waived. In such cases the borrower must provide a written statement of explanation regarding non-filing of return.

    a.  All Eligible Borrower(s) and Co-Borrower(s) applicant(s) who will sign the **CHFA** Mortgage Note and Deed at closing are subject to the Federal Tax Return requirements.

b. In addition, the Participating Lender must obtain an executed Request for Copy or Transcript of Tax Form (IRS form 4506) or a Tax Information Authorization (IRS Form 8821) for the prior three years. The Participating Lender shall examine the tax returns particularly for any evidence that the Eligible Borrower may have claimed deductions for property taxes or for interest on indebtedness with respect to real property constituting his principal residence or on ineligible temporary financing.

c. In cases where the three-year requirement regarding prior homeownership is not applicable, such as loans in Targeted Areas or Rehabilitation Mortgage Loans, only the Federal income tax return and the Request for and Consent to Disclosure of Income Tax Return for the most recent year are required. In such cases, one year may be substituted for any references in this Manual to three years; and the Participating Lender may manually modify any references in CHFA forms to three years to one year as applicable.

d. Eligible borrowers that have a "present ownership interest" in a principal residence located in any part of the United States, its Commonwealths or Territories are subject to these requirements.

5. **Lender's Responsibility to Verify Documentation** - Participating Lender must, with due diligence, verify the information in the Borrower Certificate regarding the applicant's prior residency and verify such other information including tax returns furnished by the Eligible Borrower for the preceding three years, and certify to CHFA that on the basis of its investigation, such information is to the best of its knowledge and belief, true and accurate and evidences compliance with the requirements of this section. Such certification shall be made on the Participating Lender Certification.

# D. **Principal Residence Requirement; Owner-Occupancy**
## 1. **General**
An Eligible Borrower shall covenant to occupy the Eligible Dwelling as a principal residence within 60 days after the closing of the Mortgage Loan. Unless the residence can reasonably be expected to become the principal residence of the Eligible Borrower within 60 days of the Mortgage Loan closing date, the residence will not be considered an Eligible Dwelling and may not be financed with a Mortgage Loan. An Eligible Borrower must covenant to occupy the Eligible Dwelling as a principal residence within 60 days after the closing of the Mortgage Loan on the Borrower Certificate and as part of the CHFA Uniform Mortgage Rider.

2. **Definition of Principal Residence**

A principal residence does not include any residence which can reasonably be expected to be used: (a) in a trade or business, except for a two to four family residence, in which case the Eligible Borrower shall be permitted to rent or lease the non-owner-occupied unit(s), (b) as an investment property, or (c) as a recreational or second home. Not more than fifteen percent (15%) of the total living area of a residence may be used in a trade or business which would permit any portion of the costs of the Eligible Dwelling to be deducted as an expense for Federal income tax purposes (except in the case of a two to four family residence, in which case the Eligible Borrower shall be permitted to deduct for Federal income tax purposes the costs associated with the non-owner-occupied units).

3. **Land Not to be Used to Produce Income**

The land financed by the Mortgage Loan may not provide, other than incidentally, a source of income to the Eligible Borrower. The Eligible Borrower must indicate on the Borrower Certificate that, among other things:

a. No portion of the land financed by the Mortgage Loan provides a source of income (other than incidental income);

b. The borrower does not intend to farm any portion of the land financed by the Mortgage Loan; and

c. The borrower does not intend to subdivide the property nor to apply for a zoning variance regarding minimum lot size or set-back requirements.

4. **Post-Closing Inspection of Eligibility**

Within 60 days after the closing of the Mortgage Loan, the Participating Lender is required to inspect the Eligible Dwelling for compliance with the principal residence requirements of:

a. No trade or business;

b. Owner-Occupancy use as permanent principal residence; and

c. No prohibited use of the land

Based upon such investigation, the Participating Lender shall either:

i. Certify to **CHFA** that based upon its subsequent investigation, it has no reasonable grounds for believing that the borrower did not meet the requirements of (Section *3.1D*). Such certification shall be made on the Participating Lender Certification; or

    ii. Promptly notify **CHFA** in the event it determines that these requirements have not been complied with and take such action with respect to the Mortgage Loan as **CHFA** shall thereafter request, which may include requiring the Participating Lender to repurchase the Mortgage Loan pursuant to (Section *7.2C)* of this manual.

## E. <u>New Mortgage Requirement</u>

Mortgage Loans may be made only to persons who did not have a mortgage (whether or not paid off) on the Eligible Dwelling at any time prior to the execution of the Mortgage. A Mortgage Loan may not be made to finance the purchase of a remaining interest in a home in which a partial interest is already owned or will be acquired through inheritance or gift. Mortgage Loan proceeds may not be used to acquire or replace an existing mortgage or debt for which the Eligible borrower is liable or which was incurred on behalf of the Eligible Borrower, or provide financing for a property which is debt free, except for:

- a construction loan; or
- temporary financing which has a term of twenty-four months or less; or
- a mortgage on unimproved land on which a dwelling is to be constructed, as long as the mortgage is satisfied prior to the date of the closing of the Loan and the amount of the Loan does not exceed the cost of construction; or
- a Qualified Rehabilitation Loan.

1. <u>**Definition of Mortgage**</u> - For purposes of applying the new mortgage requirements, a mortgage includes a deed of trust, a conditional sales contract, a pledge, an agreement to hold title in escrow, a lease with an option to purchase which is treated as an installment sale for Federal income tax purposes and any other form of owner financing. A conditional land sale contract shall be considered as an existing loan or mortgage for purposes of this requirement.

2. <u>**Temporary Financing**</u> - In the case of a Mortgage Loan made to refinance a loan for the construction of an Eligible Dwelling, the Participating Lender must certify to **CHFA** that such construction has been satisfactorily completed prior to submission of such Mortgage Loan for purchase by **CHFA**. Such certification shall be made on the Participating Lender Certification.

3. **Review by Participating Lender**

   a. Prior to closing the Mortgage Loan, the Participating Lender must examine the Borrower Certificate and related submissions, including (i) the Eligible Borrower's federal income tax returns and (ii) current credit report, in order to determine whether the Eligible Borrower has met the new mortgage requirements or whether such examination discloses any existing mortgage or debt which the proceeds of the **CHFA** Loan may be used to repay or refinance. Upon such review, the Participating Lender shall certify to **CHFA** that the Lender has no reasonable grounds for believing that the Mortgage Loan proceeds will be used to repay or refinance an existing mortgage debt. Such certification shall be made on the Participating Lender Certification.

   b. Subsequent to the closing of the Mortgage Loan, should the Participating Lender find that the Eligible Borrower is repaying or refinancing an existing mortgage or debt with the proceeds of the Mortgage Loan, other than temporary initial financing having a term of twenty-four months or less, the Participating Lender shall promptly notify **CHFA** and take such action with respect to the Mortgage Loan as **CHFA** shall thereafter request. **CHFA** may require the Participating Lender to repurchase the Mortgage Loan pursuant to (Section *7.2C*) of this Manual.

**F.   Determination by Participating Lender**

The qualification of an Eligible Borrower shall be determined by the Participating Lender subject to review by **CHFA**. For each application, the Participating Lender must review the application form and related submissions to determine their consistency, completeness, and compliance with the terms of this Manual. Reasonable efforts should be undertaken to verify the information given, either independently or concurrently with credit reviews, when applicable.

**G.   Multiple Loans**

An Eligible Borrower may not have more than one outstanding **CHFA** Mortgage Loan including a **CHFA** Loan that has been assumed by another person.

## 3.2  Eligible Dwellings

**A.   General**

In order to qualify as an Eligible Dwelling for which a Loan may be made, the premises must:

1. be located in the State;

2. be structurally sound and functionally adequate and meet all applicable zoning requirements, housing codes and similar requirements;

3.  have a permanent certificate of occupancy if newly-constructed or substantially rehabilitated or when a certificate of occupancy is not obtainable in the case of substantial rehabilitation, have such other documentation as **CHFA** may require; and

4.  meet all appropriate requirements listed in (Section 3.2B).

## B.  Types of Dwellings

An Eligible Dwelling may be a one to four family residence (including all fixtures and land on which it is situated) or a unit of an approved condominium or planned unit development. In the case of a two to four family residence, at least one of the units must be Owner-Occupied and the building must have been used as a residence for at least five years preceding the application for the Loan. A newly-constructed two family home located in a Targeted Area may also be eligible.

## C.  Principal Residence Requirement; Owner-Occupancy

1.  In order to be considered an Eligible Dwelling, the residence must become the permanent principal residence of the Eligible Borrower within 60 days after the closing date of the Mortgage Loan. The requirement of this section will not be satisfied where the residence (which shall include any land financed by a Loan) can reasonably be expected to be used in a trade or business (except for certain two-to-four family residences), as an investment property, or as a recreational second home.

2.  The Participating Lender shall be responsible for determining whether the dwelling is in a condition which will satisfy the principal residence requirement, subject to review by **CHFA**. In making this determination the Participating Lender may not rely solely upon statements made by the Loan applicant in the Borrower Certificate, but must verify compliance with this requirement by conducting an on-site inspection of the dwelling (the appraisal) and through other reasonable efforts. On the basis of such independent investigation, taking into account the location, structural and other characteristics of the dwelling, the Participating Lender shall certify to **CHFA**, that based upon reasonable belief and independent investigation, the dwelling is expected to be suitable for occupancy as a principal residence by the Loan applicant within 60 days after the closing of the Mortgage Loan and is not expected to be used in a trade or business, as an investment property or as a recreational or second home.

## D.  Principal Residence Requirements Pertaining to Land

1.  **Lot Size** - Only such land as is reasonably necessary to maintain the basic livability of the residence may be financed by a Mortgage Loan. The size of the lot allows one, and only one, building lot and the land can not be subdivided. On properties with lot size of 2.1 or more acres, CHFA will

require documentation from the Town Planning and Zoning Department confirming existing lot may not be subdivided to create additional building lots. (see Authority Procedure Manual section A-15 pg III-A9 for reference – delete this note prior to printing)

2. **Non-production of Income**
   a. Only land which does not provide a source of income to the Eligible Borrower (other than incidental income) may be financed by a Mortgage loan.

   b. The Participating Lender is required to conduct an on-site inspection of the property (the appraisal) and to certify to **CHFA** that on the grounds of that inspection and other reasonable grounds, the Lender expects that the property will not be used to produce income to the Eligible Borrower, other than incidental income.

3. **Leasehold Interests** - The following requirements must be met where the Eligible Dwelling is a leasehold interest:

   a. the notice of lease must be recorded on the land records of the town in which the property is located;

   b. the term of the lease must be equal to the number of years remaining until the maturity date of the loan and in no instances may the lease expire before the maturity date of the loan is reached.

   Example:  If the amortization term of the mortgage loan is for 30 years (360 months) beginning on July 30, 2010 ending on July 30, 2040, the term of the lease must be for at least 30 years (360 months) concurrent with the mortgage loan and may not expire prior to July 30, 2040.

   c. the lease shall be in full force and effect and subject to no change or penalty or prior lien or encumbrance by which it can be terminated; and

   d. the lease must be on a form acceptable to **CHFA**; it shall provide that the lessee may mortgage the leasehold estate, and it must not contain conditions under which the leasehold may be terminated for lessee's default without the mortgagee having the right to receive from the lessor written notice of, and reasonable opportunity to cure, such default.

E. **Sales Price Requirements**
   1. The Acquisition Cost of an Eligible Dwelling may not exceed the sales price limits established by **CHFA** and in effect at the time of the application. Appraised value as well as actual selling price will be reviewed by **CHFA** on all Loan submissions.  Any indirect or non-pecuniary consideration will be given effect in determining the market value.  **CHFA** may at its option

reject an application for a Mortgage Loan where the appraised value exceeds the applicable **CHFA** Sales Price Limit by more than five (5) percent.

2. **Arm's-Length Transaction** – In those cases that are not arm's length transactions the appraised value may not exceed the applicable sales price limit.

3. **Definition of Acquisition Cost** - Acquisition Cost means the cost of acquiring the Eligible Dwelling from the Seller as a completed residence. In determining Acquisition Cost:

   a. Acquisition Cost includes:
      i.   All amounts paid, either in cash or in kind, by the Eligible Borrower (or a related party) for the benefit of the Eligible Borrower) to the Seller (or a related party or for the benefit of the Seller) as consideration for the Eligible Dwelling. Such amounts include amounts paid for items constituting fixtures under State law, but not for items of personal property not constituting fixtures under State law.

      ii.  The reasonable costs of completing the residence, whether or not the cost of completing construction is to be financed with the Mortgage Loan, if the Eligible Dwelling is incomplete. As an example of reasonable completion cost, costs of completing the Eligible Dwelling so as to permit occupancy under local law would be included in the Acquisitions Costs.

      iii. The capitalized value of the ground rent calculated using a discount rate equal to the yield on the **CHFA** bonds from which the Mortgage Loan was made, where the Eligible Dwelling is subject to a ground rent. **CHFA** will supply bond yield information to Participating Lenders on request for the purpose of calculating capitalized ground rent.

      iv.  The cost of land which has been owned by the Eligible Borrower prior to the construction of the structure comprising the Eligible Dwelling.

   b. Acquisition Cost does not include:
      i.   Usual and reasonable settlement or financing costs. Such excluded settlement costs include title and transfer costs, title insurance, survey fees and other similar costs. Such excluded financing costs include:
           - credit reference fees
           - legal fees
           - appraisal expenses

- points which are paid by the Eligible Borrower (not by the seller), or other costs of financing the residence.

Such amounts must not exceed the usual and reasonable costs which otherwise would be paid. Where the buyer pays more than a pro rata share of property taxes, for example, the excess is to be treated as part of Acquisition Cost.

ii. The imputed value of services performed by the Eligible Borrower or members of his family (brothers and sisters, spouse, ancestors and lineal descendants) in constructing or completing the residence.

c. The following examples illustrate the determination of Acquisition Costs:

Example (1)
A contracts with B, a builder of single family residences, for the purchase of a residence. Under the terms of the contract, B will deliver a residential unit to A that contains an uncompleted recreation room and an unfinished third floor and lacks a garage.

Normally, a completed recreation room, a finished third floor and a garage are provided as part of the residence by B.

The contract price for the residence is $158,000. At the same time, A contracts with C, an affiliate of B, to complete the recreation room, the third floor and to construct the garage for a contract price of $25,000.

C will perform this work after A receives title to the unit from B. The Acquisition Cost of A's completed residential unit is $183,000 which represents the contract price plus the cost of completion of the recreation room, third floor and construction of the garage.

Acquisition Cost Example (1)
$158,000.00 – contract price (excludes completion of 3rd fl, recreation room or garage)
$  25,000.00 – cost of completion of 3rd fl, recreation room and garage
$183,000.00 – Acquisition Cost

Example (2)
E owns a single family residence which E has listed for sale.  D contracts to purchase E's residence, and the contract provides for a selling price of $100,000.  D also agrees to pay an unsecured debt in the amount of $15,000, which E owes to X, a local bank.  D further agrees to purchase from E the refrigerator, stove, and dryer located in E's residence for $2,500, an amount equal to the fair market value of such personalty.  D also agrees to purchase the light fixtures, curtain rods, and

wall-to-wall carpeting for a fair market value price of $1,000. The acquisition cost of D's completed residential unit is $116,700. Such amount includes the $5,000 unsecured debt paid off by D. The $2,500 paid for the refrigerator, stove, washer, and dryer are not included because such items are not included within the definition of an Eligible Dwelling under the Program. Such definition does include the light fixtures, curtain rods, and wall-to-wall carpeting purchased by D.

Acquisition Cost Example (2)
$100,000.00 – contract sales price for the property
$  15,000.00 – borrower unsecured debt to the bank paid by seller
$    1,000.00 – light fixtures, curtain rods, and wall-to-wall carpeting –allowable costs
$116,000.00 – Acquisition Cost
(*Note: refrigerator, stove, washer and dryer are not allowable cost for this transaction*)

Example (3)
F contracts with G to purchase G's home for $100,000. After purchasing the residence, F pays $3,000 to a party unrelated to G for painting, minor repairs, and refinishing the floors. The Acquisition Cost of the residence is $100,000. Such fix-up expenses are not treated as part of the Acquisition Cost. If G had incurred such fix-up expenses, however, F may not reduce his Acquisition Cost of the residence by such amounts.

Acquisition Cost Example (3)
$100,000.00 – contract sales price for the property
$      00.00 – additional allowable cost for fix-up
$100,000.00 – Acquisition Cost
(*Note: $3,000 costs to borrower to fix up property are not eligible cost for this transaction*)

4. Appraisals - A complete property appraisal report is required to be submitted by the Participating Lender with each Loan submission except in the case of a loan eligible for the limited document program. Appraisals are required for all Loan submissions for purchases of units in eligible condominium projects for verification of current investor ratio concentration. All appraisals for Mortgage Loans must be made by appraisers acceptable to **CHFA**. These include members of the Society of Real Estate Appraisers, the American Institute of Real Estate Appraisers and individuals who regularly prepare appraisals for the Participating Lender or for the mortgage insurer or guarantor.

   a. Forms - The report must be prepared on a current FNMA/FHLMC appraisal form or on the appropriate FHA or VA form.

   b. Appraised Value - Appraisals should report the highest price which the property will bring contemplating (i) the consummation of a sale and the

transfer of title from a seller to buyer who are participating in a bona-fide, arm's-length transaction and are motivated by no more than the goals of typical participants; (ii) both parties are well informed or well advised and act prudently, each for what he considers his own best interest; (iii) reasonable exposure is given to the property in the open market; and (iv) payment is made in cash or on terms reasonably equivalent to cash, assuming typical financing terms are available in the community for similar property.

c. <u>Repairs</u> - **CHFA** requires all mortgaged properties to be in good repair. Appraisal reports shall indicate whether a building code inspection is necessary.

If the appraisal report indicates that repairs are needed, a recertification by the appraiser must be obtained prior to the closing of the Loan. The certification must provide the Eligible Borrower's name and the property address and must state that the property has been inspected and the indicated repairs have been completed except in the case in which an escrow has been established for such repairs.

d. <u>Photographs</u> - All appraisal reports shall include two clear descriptive photographs showing the characteristics of the Eligible Dwelling and the neighborhood. One photograph should show the front view of the property and the other should show a street scene with the Eligible Dwelling identified by arrow.

e. The validity period for all appraisals on existing and proposed and under construction properties will be 120 days. *(In compliance with HUD Mortgagee Letter 2009-30 dated September 18, 2009 effective as of January 1, 2010- this note to be deleted prior to reprint of revised manual)*

5. <u>Review by Participating Lender</u> - The Participating Lender shall determine that the Acquisition Cost of the Eligible Dwelling does not exceed the applicable Sales Price Limit in accordance with (Section *3.2.E*). The participating Lender shall certify to **CHFA** that the Sales Price requirement is met. Such certification shall be made on the Participating Lender Certification.

6. <u>Independent Appraisal</u> - **CHFA** reserves the right to obtain an independent appraisal in order to establish fair market value and to determine whether a dwelling is eligible for the Mortgage Loan requested.

7. <u>Surveys</u> - A survey is not required if not required by FHA, VA, RD or PMI, and is not indicated by a prudent practice and custom in the geographical area in which the property is located. However, **CHFA** reserves the right to require a survey.

## F. Condominium and Planned Unit Developments

An individual condominium unit or unit of an approved planned unit development is included within the definition of an Eligible Dwelling provided the requirements set forth in this section and elsewhere in this Manual are met.

1. Condominiums
   a. **CHFA** loans are available to finance the acquisition of any unit in the following classes of condominium units:

      i. any unit not part of a conversion condominium, or

      ii. any unit in a conversion condominium, except that for a period of one year subsequent to the filing of the declaration of the condominium, the Authority may provide mortgage loan financing only to an applicant who is a tenant that has rented a unit at the property.

   b. Prior Approval of Condominium
      Mortgage Loan submissions for individual units in condominium projects are required to meet the **CHFA** condominium project approval criteria prior to forwarding request for Commitments on any individual unit.

      i. All Condominium that are not subject to specific "Deed Restrictions for Affordability" must be eligible for Federal Housing Administration (FHA) insurance and must meet all FHA approval guidelines and standards for acceptability.

      ii. **CHFA** Mortgage Loan applications submitted for Commitment must include proof of FHA eligibility which may be evidenced by
         a) Proof the project has met the criteria of the HUD Review and Approval Process (HRAP). Applications submitted with FHA approval under this process must include a copy of the fully executed HUD Lender Certification to Condominium Requirements for Approved Projects form signed, and dated by the authorized lender representative; or

         b) Proof the project is approved under the Direct Endorsement Lender Review and Approval Process (DELRAP). Applications submitted under this process must include a copy of the fully executed HUD Lender Certification to Condominium Requirements form, signed and dated by the authorized lender representative.

   c. Deed Restricted Condominium Projects

Affordable Housing Condominium Projects that are deed restricted for purchase to First-time homebuyers or that have low-to-moderate income eligibility or low-to-moderate income resale restrictions and are not eligible for FHA approval must receive prior approval by **CHFA** before forwarding requests for Commitments on any individual unit. A Request for approval by **CHFA** shall be in writing and shall include the following:

    i. the current public offering statement of the declarant;

    ii. the declaration of condominium, including the by-laws of the unit owners' association, survey, floor plans and all exhibits and schedules;

    iii. statistics on the number of units conveyed and the number of unconveyed units that are vacant;

    iv. the current fiscal year operating budget

    v. documentation of the Association reserves process, status of reserves accounts which must show a minimum of two months cushion for monthly operating expenses.

    vi. **CHFA** mortgage loan financing for individual units in Affordable Deed Restricted Projects that are ineligible for FHA, VA, RD or PMI insurance coverage may also require a minimum 20% downpayment investment from an acceptable source which can include **CHFA** approved non-profit, municipal, or federal programs, or a combination that includes an investment of the borrower's own funds.

    vii. certificate of Insurance (current) including declaration page.

    viii. CHFA Condo Questionnaire

    ix. photo of one condo unit

    x. owner occupancy ratio

    xi. total number of units in complex

d.  <u>Maximum Units Financed</u>

    **CHFA** will not issue Commitments which would cause **CHFA** to hold Mortgage Loans on more than fifty percent (50%) of the units in any one project; whether existing or new construction, fifty percent (50%) of the units in the project must be sold or under bona fide contracts of sale prior to **CHFA**'s purchase of any condominium Loan.

   c.  <u>Underwriting Considerations</u> - Underwriting must include the unit
owners' association charges (excluding heat) as fixed monthly costs
when making underwriting calculations under (Section *5.1.D*).

   f.  <u>Necessary Papers and Documents</u>
     i.  The **CHFA** Uniform Mortgage Rider together with a condominium
rider, on the appropriate form for a VA, FHA or PMI insured or
guaranteed Loan must be executed and recorded with the mortgage
deed.
     ii.  The following documents, as applicable, must be submitted at each
closing:
       a) duly executed corporate consent authorizing sale of the unit, if the
grantor is a corporation; and
       b) certificate of payment of assessments for the individual
condominium unit.

  2.  <u>Planned Unit Developments</u> - **CHFA** considers a PUD, other than one
consisting of detached single family houses, on the same basis as a
condominium.

## G. <u>Energy Efficiency Requirements for Newly-Constructed Houses</u>

The sales contract (or specifications) for houses on which construction
commences after November 1, 1982 must provide for insulation of at least R30
in the ceiling and R11 in the walls (R38 in the ceiling and R19 in the walls and
floors in the case of electric heat) and for double-glazed windows with wood or
other thermal break (or storm windows in lieu thereof). If necessary, an
amendment to the sales contract to provide these will be required.

## H. <u>Determination by Participating Lender</u>

The eligibility of a dwelling for **CHFA** financing shall be determined by the
Participating Lender subject to review by **CHFA**. For each application, the
Participating Lender must review the application form and related submissions
to determine their consistency, completeness and compliance with the
requirements of this Manual. Reasonable efforts should be undertaken to verify
the information given, either independently or concurrently with the application.

# SECTION 4 – REHABILITATION MORTGAGE LOANS

4.1    Program Descriptions
4.2    Borrower Eligibility
4.3    Principal Residence Requirement
4.4    Rehabilitation Loan Amounts
4.5    Builders and Contractors
4.6    Contracts and Rehabilitation Work Specifications
4.7    Mortgage Insurance, Processing and Underwriting
4.8    Completion of Work and Construction Period
4.9    Rehabilitation Escrow Account
4.10   Additional Documentation
4.11   Post Closing
4.12   Origination Fee and Closing Costs

## Rehabilitation Mortgage Loans

### 4.1    Program Descriptions

#### Purchase and Rehabilitate

The Purchase and Rehabilitate Mortgage Loan Program may be used to purchase and rehabilitate existing 1-4 unit dwellings (manufactured homes are not eligible) and include as part of the acquisition cost the cost of rehabilitating the property as a completed residential unit.

#### Refinance and Rehabilitate

The Refinance and Rehabilitate Mortgage Loan Program may be used to refinance an existing first mortgage and rehabilitate a presently owned and owner-occupied 1-2 unit dwelling (manufactured homes are not eligible).  The property and scope of the rehabilitation must also meet the following conditions:

1. There must have been a period of at least twenty years between the date on which the building was first used and the date on which physical work on such rehabilitation begins. In the case of a 2-to-4 family residence, at least one of the units must be owner-occupied and the building must have been used as a residence for at least five years preceding the application for the Refinance Rehabilitation Loan.

2. The twenty – year period may include periods during which the residence was vacant or devoted to use in a trade or business and is calculated without regard to the number of owners during the period.

3. If part of the residence meets the twenty-year requirement and a part does not, rehabilitation of the part that meets the twenty year requirement may qualify for a Refinance Rehabilitation Loan only if, in the sole determination of CHFA, such part constitutes a major portion of the residence based upon all the facts and circumstances.

4. Physical work does not include preliminary activities such as planning, designing, securing financing, exploring, researching, or developing.

5. Seventy –five percent or more of the existing external walls of the building must be retained in place as external walls in the rehabilitation process.

6. Expenditures for the rehabilitation must be at least twenty-five percent of the borrower's Adjusted Basis in the residence (including the land on which the residence is located) <u>and</u> the as-completed appraised value of the eligible dwelling (25% test). The Adjusted Basis to the borrower is his/her Adjusted Basis for purposes of determining gain or loss on the sale or exchange of a capital asset (as defined in Section 1221 of the Code of 1986, as amended). The borrower's Adjusted Basis shall be determined as of the date of completion of the rehabilitation, or, if later, the date the borrower acquires the residence, i.e., the date on which the borrower includes in basis any amounts expended for rehabilitation that are expended for capital assets.

## 4.2    Borrower Eligibility

Borrower eligibility, including Income and Sales Price Limits are the same as for CHFA Home Mortgage Loans, and are covered in Section 10 of this Manual. In addition, prior homeownership and new mortgage requirements are also the same as for the Home Mortgage Program.

Refinance and Rehabilitate Loans utilize the Sales Price Limits as the limit for the total cost and as a final value guide for program eligibility.

All other guidelines for Rehabilitation Mortgage Loans are the same as for Home Mortgage Loans except for specific items covered in this Section.

## 4.3    Principal Residence Requirement

An eligible borrower shall covenant to occupy the eligible dwelling as their principal residence within 60 days after the completion of rehabilitation, and, in any event, no later than one year after the date of closing the Rehabilitation Mortgage Loan. Unless the residence can reasonably be expected to become the principal residence of the eligible borrower within one year of the Rehabilitation Mortgage Loan closing date, the residence will not be considered an eligible dwelling and therefore may not be financed with a Rehabilitation Mortgage Loan.

## 4.4    Rehabilitation Loan Amounts

The minimum amount for a Rehabilitation Loan is $5,000. Whenever the proposed renovation amount exceeds $15,000 or the renovations include structural alteration or repairs, the borrower is required to hire an independent General Contractor.

## 4.5    Builders and Contractors

The borrower is required to have a construction contract with the builder or
general contractor. The builder or general contractor must be registered and / or
licensed with The State of Connecticut Department of Consumer Protection and
carry appropriate insurance. Builders and general contractors should be reviewed
by the lender to determine experience and expertise.

Borrowers may not be the General Contractor for rehabilitation work being
completed on their owner-occupied, primary residence under this program. Even
if they are a licensed contractor in the state they are required to hire an
independent Connecticut licensed contractor, other than themselves, to perform
the work.

## 4.6    Contracts and Rehabilitation Work Specifications

All contracts must be in writing, including any subsequent changes and
modifications. Contracts must be specific for performance and materials and
include a schedule for completion and payment terms.

A. Rehabilitation includes those items which substantially protect or improve
   the basic livability and / or energy efficiency of the eligible dwelling.
   Remodeling for cosmetic purposes only, with no increase in utility, is
   ineligible. Also, Swimming pools, tennis courts, saunas, and other
   recreational or entertainment items, are ineligible. Reasonable upgrades of
   kitchens and bathrooms are eligible subject to CHFA approval. Kitchen
   and bathroom upgrades may include the costs of replacement appliances,
   toilets, tubs, sinks, vanities, etc. provided new replacement items are
   comparable to exiting units and are not opulent in design or cost.
   Rehabilitation costs must include a 10% contingency reserve, and may
   include an escrow for up to 6 months PITI and other construction-related
   costs such as inspection fees, fees for title updates, architectural and
   engineering fees, independent consultant fees, costs for permits,
   construction draw fees, Appraisal and construction plan fees.

B. The value of services performed by the borrower, or borrower's family
   (sweat equity) is not to be included as rehabilitation expenditures.

C. All amounts expended by the borrower for rehabilitation, whether or not
   financed by the CHFA Rehabilitation Mortgage Loan, are included as
   rehabilitation expenditures.

D. Plans, specifications and cost estimate for the rehabilitation work are
   subject to acceptance by CHFA.  CHFA is to be notified in writing of any
   changes in plans and specifications and costs or work order changes when

those changes affect the eligibility or acquisition cost of the rehabilitation
work.

## 4.7    Mortgage Insurance, Processing and Underwriting Requirements

The Participating Lender will choose the mortgage insurance program to insure
the mortgage. The mortgage insurance program chosen will determine processing
and underwriting requirements of the loan. If the loan is privately insured or
uninsured, the lender will follow the requirements of the Fannie Mae Homestyle
Renovation Mortgage Program including the utilization of the Fannie Mae forms,
worksheets and consumer advices (see Section 10 – Appendices of this Operating
Manual for a list and sample of the applicable Fannie Mae Forms). Private
mortgage insurance coverage requirements will follow Section 5.3.C.3 of this
Operating Manual.

## 4.8    Completion of Work and Construction Period

The Participating Lender or its designee is responsible for monitoring the
completion of the work and managing the release of funds to pay for completed
work and must exercise all approval and oversight responsibilities that are
customary and required to comply with state laws and to ensure that clear title to
the property is maintained.  If any action taken (or failed to be taken) in
overseeing the rehabilitation work affects the ability to take clear title to the
property, CHFA may require the Participating Lender to repurchase the mortgage.

The Participating Lender must maintain a copy of all of the documentation that
supports the rehabilitation work including but not limited to: plans and
specifications; appraisals; rehabilitation or construction contracts; title insurance
updates and endorsements; etc. in the individual mortgage file.

The following will also apply:

A.  The borrower will agree to occupy and use the residential property for a
    permanent principal residence within 60 days after the date of
    rehabilitation and, in any event, no later than one year after the date of
    closing the Rehabilitation Mortgage Loan.

B.  All approved rehabilitation work on the Eligible Dwelling will be
    completed within one year after the date of closing the Rehabilitation
    Mortgage Loan.

C.  CHFA may at its option, approve the extension of the one year period with
    a written request from the Participating Lender, only in the event that
    extenuating circumstances are beyond the control of the Borrower and the
    Lender. This request must indicate a completion date which has been

agreed upon by the parties as a result of the Lenders discussion with the borrower and the general contractor.

D. Should the borrower not complete all of the approved rehabilitation work, CHFA may, at its option, increase the interest rate on the loan. In no event may monthly payments be reduced due to uncompleted rehabilitation.

E. The borrower may not expend funds prior to final disbursement from the escrow account, regardless of the source, for additional items of rehabilitation over and above the approved rehabilitation amount. If funds are expended for additional items, CHFA may, at its option, increase the interest rate on the loan.

## 4.9    Rehabilitation Escrow Account

At loan closing, the Attorney and Participating Lender will deposit all of the rehabilitation costs into an interest-bearing escrow account. The Participating Lender or its designee will be responsible for administering this account ensuring that the rehabilitation is completed in a timely manner and in accordance with the plans and specifications and the contractors estimated bids. Interest earned on the escrow account, less any administrative expenses involved in maintaining the account, must be paid or credited to the borrower.

An Escrow Agreement furnished by the Participating Lender will be signed at the closing of the Rehabilitation Loan whereby the borrower and Participating Lender will agree as follows:

1. The Participating Lender or its designee will be custodian of the escrow account and will treat these funds in the customary manner.

2. Funds from the escrow account will be disbursed by the Participating Lender or its designee in amounts coinciding with the approved drawdown schedule, based upon inspection of the construction.

3. Each progress payment will be disbursed to the borrower and made payable to both the borrower and general contractor or builder.

4. Progress payments and final disbursement will be made only after lien waivers have been obtained from the general contractor and all subcontractors to whom payment remains to be made and all building permits have been signed off by appropriate authorities, when applicable.

5. CHFA must be notified in the event that the total escrow amount is not expended. Should the Rehabilitation not be completed, any outstanding balance in the escrow shall not be disbursed, except as directed by CHFA. Should the Rehabilitation be completed as agreed, yet all amounts were

not expended, and this does not result in a failure to meet the 25% Test in the case of a Refinance and Rehabilitate Loan, CHFA will instruct the Participating Lender to apply remaining escrowed funds against the outstanding principal balance, with no charge in the monthly principal and interest payment or in some cases may agree for the remaining funds to be used to make additional improvements to the property.

## 4.10   Additional Documentation

Unless otherwise stated, all documentation normally required for CHFA Home Mortgage Loans is required under the Rehabilitation Mortgage Loan Program. Additional documentation required under the Rehabilitation Mortgage Loan Program is as follows:

Documentation must be submitted in the Loan Submission Package to CHFA:

A.   HUD Form 92700 203(k) Maximum Mortgage Worksheet (for FHA insured loans)

B.   Contractor's Certificate (CHFA Form 031-0404)

C.   Copy of the Rehabilitation Work Write-up and signed contracts

Post-Closing Documentation to be retained by or delivered to the loan servicer:

A.   Participating Lenders Rehabilitation Loan Certification (CHFA Form 020A-1199)

B.   Borrower's Rehabilitation Loan Certification (CHFA Form 020B-1199)

C.   Satisfactory Work Completion Certificate (CHFA Form 055-1199)

## 4.11   Post-Closing Inspection

A.   Within 60 days after the Rehabilitation Mortgage Loan escrow is totally disbursed but in no event later than 60 days after the end of the construction time period, the Participating Lender is required to inspect the eligible dwelling for:

1.   No trade or business;
2.   Owner-Occupancy as a permanent principal residence;
3.   No prohibited use of land; and
4.   Completion of rehabilitation.

B. Based upon the above investigation, the Lender shall either:

1. Certify to CHFA that based upon its subsequent investigation, the Participating Lender has no reasonable grounds for believing that the Borrower did not meet the requirements of Sections 3.1D and the Rehabilitation has been completed. Such certification shall be made on the Participating Lender's Rehabilitation Loan Certification; or

2. Promptly notify CHFA in the event the Participating Lender determines that these requirements have not been complied with and take such action with respect to the Rehabilitation Mortgage Loan as CHFA shall thereafter request. CHFA may require the Participating Lender to repurchase the Rehabilitation Mortgage Loan pursuant to Section 7.2.C.

## 4.12  Origination Fee and Closing Costs

The maximum allowable amount CHFA will allow a Lender to collect on the Rehabilitation Loan Program first mortgage loan transaction for the origination fee, processing fee and underwriting fee are listed below:

- One percent (1%) origination fee
- CHFA Loan Processing Fee = $350.00
- CHFA Loan Underwriting Fee = $350.00

Document preparation fees may also be charged if performed by a third-party not controlled by the lender. If charged, the document preparation fee may not exceed $300.00. *(See FHA Handbook 4155.1 REV-5 Settlement Requirement Section1-9A.)*

# SECTION 5 – UNDERWRITING

**5.1   Credit Review**
**5.2   Applicant Processing**
**5.3   Mortgage Insurance or Guaranty**
**5.4   Closing Costs**
**5.5   Loan Submission to CHFA for Commitment**
**5.6   Limited Documentation and Delegated Underwriting**

## Section 5 - Underwriting

### 5.1   <u>Credit Review</u>

#### A.   <u>Evaluation</u>

The Participating Lender is responsible for evaluating applicants for CHFA Loans. Evaluation of creditworthiness must be done on a case-by-case basis, but standards for determining income shall be applied to each applicant in the same manner.

#### B.   <u>Income</u>

1. Aggregate family income (gross income) shall include income from whatever source derived, including without limitation, regular earnings; part-time earnings; unemployment compensation; bonuses; dividends; interest (except on funds which will be used for downpayment and closing costs); commissions; military allowances; welfare payments; disability payments; pension, annuity, retirement and social security benefits; and reimbursement for services in military reserve or National Guard. Overtime income, whether or not guaranteed by an employer, shall be included unless of short duration and of a temporary nature. Generally, unemployment compensation is not to be considered as part of income in determining whether the borrower has the ability to repay the Loan. CHFA reserves the right to consider unemployment compensation as acceptable qualifying income when:

   a. the Eligible Borrower is employed in a seasonal occupation and receives unemployment compensation in "off season" periods;

   b. the Eligible Borrower's employer schedules mandatory "shut-downs" or furloughs on a recurring basis and provides unemployment compensation benefits to eligible employees;

   VA educational benefits are not to be considered part of income in determining whether the borrower has the ability to repay the loan.

2. Income from full or part-time employment and all proposed owner-occupants and all adult (other than full-time students) members of the family unit of the Eligible Borrower(s) will be included in the total aggregate family income at the annualized earnings rate at the time of application and at the time of closing of the mortgage. Any adult that will occupy the residence and <u>is related</u> to the Eligible Borrower(s) must be included. The prior annualized income of said persons will be included in the aggregate family income (for purposes of eligibility under Section *3.1B.*) if said Eligible Borrower or occupant has been employed during the ninety (90) days prior to the date of application. The date of termination of employment must be documented. Income from <u>non-related adult</u> persons who are not

co-borrowers on the mortgage application and will not be an owner occupant will not be considered.

Eligible Borrower(s) will be required to notify CHFA of the existence of a non-related adult person that will occupy the property within 90 days of the mortgage loan closing. The Eligible Borrower must certify to CHFA that the non-related adult is not a permanent boarder and the Eligible Borrower will not receive any boarder income from the non-related adult during their occupancy in the property.

3. A divorced person shall submit a copy of the decree of dissolution of marriage as proof of such status. A person who is separated from a spouse will be treated for income limit purposes as being married, unless such person submits evidence of separation for more than three years or a judicial decree of separation dated prior to the date of application. An applicant's fiancé will be considered part of the family unit regardless of the proposed marriage date. In order for an unborn child to be considered a member of the family in determining the number of family members for income limit purposes, proof of pregnancy must be provided to CHFA. A doctor's certificate is sufficient proof.

4. In cases where the applicant is self-employed, or one of the principal owners of a business, the applicant's Schedule C from the applicant's two most recent federal income tax return or the business income tax return will be used, without adjustment, to determine the income for purposes of eligibility. Self-employment or investment losses and employee expenses on **Form 2106** will not be reflected for purposes of eligibility under (Section *3.1B*), but will be reflected for underwriting ratios.

5. CHFA will accept **FHA, RD, VA or PMI** guidelines for the percentage (%) of the fair market income form all rental units in an Eligible Dwelling of two to four units to be included in total gross income for underwriting purposes. For loans with 20% or more downpayments CHFA will accept 75% of the fair market rent for underwriting purposes. In determining whether or not the applicant meets the applicable CHFA income limit, one hundred percent (100%) of the anticipated fair market rental income is added to the prospective borrower's total income. This total income must fall within the applicable income limit established by CHFA, whether or not the mortgage is insured by **FHA or PMI** or guaranteed by **VA**. Prospective rental income from boarders in a one-family Eligible Dwelling is not included in total gross income of the applicant for underwriting purposes. Where the boarder is a relative of the applicant, and has lived with, and paid rent to, the applicant for at least the 12 months immediately preceding the application, then the boarder's total gross income shall generally be included in the applicant's aggregate family income for the purposes of underwriting and the applicable CHFA income limit.

6. Alimony, child support or maintenance payments are to be included in income only to the extent that they are likely to be consistently made. Factors which the Participating Lender should consider in determining the likelihood of consistent payments include, but are not limited to:
- whether the payments are received pursuant to a written agreement or court decree,
- the length of time the payments have been received,
- the regularity of receipt,
- the availability of procedures to compel payment,
- whether full or partial payments have been made,
- the age of the child, and
- the creditworthiness of the obligee, including the credit history of the oblige where available to the Participating Lender under the Fair Credit Reporting Act or other applicable laws.

The participating Lender will submit to CHFA evidence adequate to support its determination.

7. Income must be supported by copies of the borrower's federal income tax returns in accordance with (Section *3.1C.4*) and copies of the three most recent pay stubs of the applicant and of all other non-dependent wage earners under (Section *5.1.B.2.*) The prospective Eligible Borrower must demonstrate stability of income from all sources. Such wage and employment verification shall be obtained from the applicant's employer.

## C. Co-signors
Co-signors or guarantors are not permitted on a Loan.

## D. Underwriting Ratios
1. **Monthly Housing Expense-to-Income Ratio** - On uninsured and PMI-insured Loans CHFA will normally require that the monthly housing expense ratio (principal, interest, taxes, insurance, [PITI] including payment on downpayment assistance loans, along with any other applicable housing expenses required to be paid in accordance with the Loan terms) be less than or equal to 31% of the borrower's gross monthly income. Lenders may submit loans with housing expense ratio up to 33% with documented verifiable compensating factors for review. If the applicant is purchasing a condominium or Planned Unit Development (PUD), the periodic condominium common charges i.e. Home Owner Association or HOA fees or PUD fees to cover operating charges (excluding heat) and maintenance costs and reserves must be included in the monthly housing expense. FHA-insured, RD-guaranteed and VA-guaranteed Loans must comply with their established underwriting guidelines.

2. **Monthly Debt Payment-to-Income-Ratio** - On uninsured and PMI-insured Loans CHFA will normally require that the total amount of monthly housing expense plus all other monthly payments on installment loans, student loans,

revolving credit debts does not exceed 41% of the borrower's gross monthly income. Lenders may submit loans with a total debt ratio up to 45% with documented verifiable compensation factors for review. Alimony, child support and maintenance payments are to be considered in this category. On FHA-insured, RD-guaranteed and VA-guaranteed loans, the Debt Ratio shall generally not exceed 43%.

3. The Participating Lender must determine that the applicants housing payments plus other obligations do not constitute an undue strain on the applicant's ability to make all such payments promptly and that a credit reputation is evidenced which would be acceptable to a prudent institutional lender.

E. **Credit Reports**
CHFA requires all credit reports to be in the form acceptable to the mortgage insurers. Additional credit information normally used by a Participating Lender in underwriting evaluation must also be submitted to CHFA with the Loan submissions. In addition:

1. A history of slow payments on previous indebtedness must be explained satisfactorily.

2. The Participating Lender must provide satisfactory explanation for a present determination of creditworthiness when an applicant has previously been adjudicated a bankrupt.

3. Frequent changes in employment or residence within the past five years must be explained satisfactorily.

F. **Credit Scores**
CHFA is not a "credit score" driven program. CHFA will accept applications from Eligible Borrowers for mortgage loan financing regardless of credit score, with traditional or nontraditional credit references. Additional documentation may be required when there is a history of slow payments, collections, judgments, or otherwise delinquent accounts.

Participating Lenders submitting Loan applications with FHA, RD, VA or PMI insurance are required to follow the Credit Score Guidelines of the insurer and may not submit a loan application to CHFA that is noncompliant with the insurer criteria. The Participating Lender will be required to repurchase a loan if it is rejected by the insurer for noncompliance.

G. **Delinquent Credit**
The Participating Lender must include a signed and dated written credit explanation from the borrower for all Loans submitted with credit reports that show delinquencies of 60 days or more in the most recent 12 month period

regardless of Automated Underwriting System (AUS) or FHA Total-Scorecard findings.

1. Major indications of derogatory credit – including judgments, collections, and other recent credit problems require satisfactory signed and dated written explanations from the borrower.

2. CHFA **will not** require proof of payoff of outstanding collection accounts up to a maximum amount of $1,499.99

3. A single outstanding collection account with a balance equal to or greater than $1,500.00 must be paid in full to be eligible for financing. A single outstanding collection account with an outstanding balance less than $1,500.00 does not have to be paid.

4. Multiple outstanding collection accounts totaling $1,500.00 or more will require the borrower(s) to pay off how ever many accounts is required to reduce the aggregate outstanding balance of collection accounts to less than $1,500.00 to be eligible for financing. Multiple outstanding collection accounts that do not total $1,500.00 do not have to be paid.

5. CHFA will continue to require payment of all outstanding judgment accounts without exception.

6. Eligible Borrowers with Bankruptcy discharged two or more years prior to the date of the Loan application may be eligible for CHFA mortgage loan financing provided:

    a. the Eligible Borrower must provide a signed and dated written credit explanation for the bankruptcy;

    b. the Eligible Borrower has re-established traditional or verifiable nontraditional credit history;

    c. re-established credit history shows **on-time** payments for the most recent 12 month period;

    d. the debt ratios are conforming and do not exceed 31%/43%

    e. the Eligible Borrower meets all other CHFA program eligibility and underwriting criteria

**H. Expanded Debt Ratios**

Eligible Borrower(s) with debt ratios that exceed the maximum CHFA acceptable limits of 33% for the monthly <u>housing expense-to-income</u> ratio and 43% for the <u>monthly debt payment-to-income ratio</u> may be eligible for mortgage loan financing provided:

1.  an Automated Underwriting System (AUS) or FHA Total-Scorecard report with an eligible rating is included with the Loan submission

2.  The Participating Lender documents a minimum of 3 (three) compensating factors to support and document the Eligible Borrower creditworthiness to receive the mortgage loan financing. The following is the <u>COMPENSATING FACTOR LIST</u> published in the FHA 4155.1 REV-5 Handbook for reference:

**<u>COMPENSATING FACTORS:</u>**

a.  The borrower has successfully demonstrated the ability to pay housing expenses equal to or greater than the proposed monthly housing expense for the new mortgage over the past 12 – 24 months.

b.  The borrower makes a large down payment (ten percent or more) toward the purchase of the property.

c.  The borrower has demonstrated an ability to accumulate savings and a conservative attitude toward the use of credit.

d.  Previous credit history shows that the borrower has the ability to devote a greater portion of income to housing expenses.

e.  The borrower receives documented compensation or income not reflected in effective income, but directly affecting the ability to pay the mortgage, including food stamps and similar public benefits.

f.  There is only a minimal increase in the borrower's housing expense.

g.  The borrower has substantial documented cash reserves (at least three months' worth) after closing.

h.  The borrower has substantial non-taxable income (if no adjustment was made previously in the ratio computations)

i.  The borrower has a potential for increased earnings, as indicated by job training or education in the borrower's profession.

      j.  The home is being purchased as a result of relocation of the primary wage-earner, and the secondary wage-earner has an established history of employment, is expected to return to work, and reasonable prospects exist for securing employment in a similar occupation in the new area.

**I.**  **Gift Letters**

In the event that a borrower uses gift monies to meet all or part of the downpayment requirement for a Loan, a gift letter in a form substantially similar to CHFA Form 022 must be enclosed with the Loan submission package.

**J.**  **Age of Documents**

Participating Lenders are responsible for ensuring the age of the appraisal and credit documents are in compliance with Secondary Market and Mortgage Insurer guidelines at the time of the loan closing.

1.  **HUD Appraisal Validity Period** – effective January 1, 2010
The validity period for all **appraisals** on existing and proposed and under constructions properties is **120 days.** (See HUD Mortgagee Letter 2009-30)

2.  **HUD Age of Mortgage Loan Application Documentation** – At the time that the loan closes, all documents in the mortgage application may be up to 120 days old, or 180 days for new construction unless a different timeframe is specified by HUD. *(See HUD Handbook 4155.2.3.C.2.d)*

Mortgage Loan Application Documentation includes:
a.  Credit Report(s)

- Employment Information

- Income information

- Asset Documentation

3.  **Secondary Market (Fannie Mae) Appraisal Validity Period**
Appraisals may not be more than 120 days old from the loan closing date to the date the loan is sold to Fannie Mae. *(See Fannie Mae Announcement 09-19).*

**Age of Credit Documents**
Effective as of June 08, 2009
The maximum age of credit documents was reduced from 120 days to 90 days for existing construction and from 180 days to 120 days for new constructions. *(See FannieMae Announcement 09-19)*

CHFA loans with Private Mortgage Insurance (PMI) will be required to meet the minimum Fannie Mae requirements referenced above.

*NOTE: CHFA loans committed for purchase that do not close within the documentation expiration periods will require the Participating Lender to update and/or recertify documents as needed. Substantial changes in the integrity of a loan application, including deterioration of credit history, loss of income, increase in debt ratios must be reported to CHFA. CHFA reserves the right to re-underwrite the application at its discretion.*

K. **Equal Opportunity for CHFA Loans**
All financing for which funds are provided by CHFA shall be open to all persons, regardless of race, color, creed, national origin and ancestry, religion, sex, marital status, physical or mental disability.

## 5.2  Applicant Processing

A. **Forms**
Applications for Loans must be submitted on the current standard FHLMC/FNMA form or on the current FHA or VA form where applicable.

B. **Location of Property Determines Income and Sales Price Limit**
CHFA's income limits should be applied according to the county in which the property is located. The applicant's county of employment, if different is not to be used in the determination.

C. **Records of Declined Applications**
Participating Lenders should maintain accurate records and related forms for each Loan application which is declined. If any such records are requested by CHFA, they must be delivered promptly.

## 5.3  Mortgage Insurance or Guaranty

A. Each Loan application submitted for commitment to CHFA by a Participating Lender must be accompanied by a mortgage insurance or guaranty commitment unless the downpayment (not borrowed) on the property is 20% or more, based on the lower of the purchase price or property appraised value. CHFA independently reviews each Loan application and in appropriate instances CHFA may decline to commit to purchase loans despite earlier review and approval for insurance or guaranty by FHA, RD, VA or PMI. CHFA will make a firm commitment to purchase only loans which satisfy the requirements of this Manual.

B. Mortgage Insurance or Guaranty is required on all CHFA Loans with the exception of:

**Private Mortgage Insurance (PMI) Eligiblity**

Loans for new construction single family properties and 1 – 2 family existing properties located in CHFA designated Targeted Areas (or Targeted Census Tracts) where the borrower is making a downpayment in an amount greater than or equal to 19.00% of the contract sales price from an acceptable source of funds may be insured by Private Mortgage Insurance.  Acceptable source of funds include:

    a.  Borrower(s) own funds

    a.  CHFA / HUD approved nonprofit agency DAP or Grant Program

    b.  CHFA approved Government or Municipal DAP or Grant Program

Participating Lenders submitting applications for Loans on properties located in **CHFA Non-Targeted Area will require FHA Insurance , VA or USDA (RD) Guaranty** unless the Loan application is originated in partnership with a CHFA Approved nonprofit, municipal or federal government homeownership program.

For loans originated in partnership with the CHFA Approved nonprofit, municipal or federal government homeownership programs where acceptance of such insurance is a requirement of the homeownership program provider, CHFA will allow FHA, VA, RD or PMI insurance in both CHFA Non-Targeted and Targeted Areas (or Targeted Census Tracts)

Loans on properties **(excluding condominiums)** that are located in CHFA designated Targeted Areas (or Targeted Census Tracts) are eligible for FHA, VA, RD or PMI insurance.

**C.**  **General Mortgage Insurance or Guaranty Considerations**
The Participating Lender is responsible for ensuring the Eligible Borrower btains (and maintains in force) mortgage insurance or guaranty by a qualified insurer or guarantor.  The insurance or guaranty or a firm commitment therefore must be in effect at the time CHFA purchases the Loan and CHFA must be named as the insured or guaranteed mortgagee.  The amount, terms and extent of coverage of the insurance or guaranty shall be in accordance with the terms of this Manual.

### D. Private Mortgage Insurance (PMI) Loans

1. Loans Which May Be PMI-Insured - CHFA will only accept PMI insurance or *uninsured loans originated under CHFA Approved Programs which includes:
   a. ADOPT-A-HOUSE
   b. CIL AFFORDABLE HOUSING, INC.
   c. CITY OF HARTFORD INCLUDING HOUSE HARTFORD PROGRAM
   d. CITY OF MERIDEN PRESERVATION
   e. CITY OF MIDDLETOWN-CAGMC
   f. CITY OF MILFORD
   g. CITY OF NEW BRITAIN HOP PROGRAM
   h. CITY OF NEW HAVEN
   i. CITY OF NORWALK-NRA
   j. CITY OF WATERBURY HOUSING AUTHORITY
   k. CITY OF WEST HAVEN
   l. CONNECTICUT HOUSING INVESTMENT FUND (CHIF)
   m. CO-OP INITIATIVES
   n. CREED MONARCH, INC. (EHATC)
   o. CHFA CT FAMLIES PROGRAM
   p. EASTERN CT HOUSING OPPORTUNITY (ECHO)
   q. EMPOWER NEW HAVEN
   r. FEDERAL HOME LOAN BANK EQUITY BUILDER (FHLB)
   s. GREATER NEW HAVEN LOAN FUND (GNHLF)
   t. HILL DEVELOPMENT CORPORATION OF NEW HAVEN
   u. HOME ADDI (HUD)
   v. HOME GRANTS PROGRAMS
   w. HOPE VI/STAMFORD HOUSING AUTHORITY
   x. HOUSE NEW LONDON HUD/DECD/ADDI
   y. HUD SOFT 2ND (OFFICER / TEACHER)
   z. INTERGRATED SYSTEMS
   aa. NEIGHBORHOOD HOUSING SERV-NHS
   bb. NEW HAVEN UDAG PROGRAM
   cc. NORTH HAVEN OPPORTUNITY OF AFFORDABLE HOUSING
   dd. SEYMOUR HOME OWNERSHIP ASSISTANCE
   ee. SHARED APPRECIATION MORTGAGE
   ff. SINA EMPLOYEE MORTGAGE
   gg. SMARTMOVE HOME OWNERSHIP 2ND (HDF-STAMFORD)
   hh. STATE OF CT DAP
   ii. STATE OF CT HOME PROGRAM
   jj. TOWN OF ASHFORD-AFHAP
   kk. TOWN OF EAST HARTFORD
   ll. TOWN OF FAIRFIELD – DHAP
   mm. TOWN OF GROTON/ECHO
   nn. TOWN OF HAMDEN

oo. TOWN OF MANCHESTER
pp. TOWN OF NEW BRITAIN-HOP
qq. TOWN OF VERNON
rr. TOWN OF WEST HARTFORD
ss. TOWN OF WINDSOR
tt. WEBSTER BK FHLBB EQUITY BUILD
uu. YALE NEW HAVEN HOSP HOME
vv. CHFA MANCHESTER PILOT PROGRAM
xx. CHFA UR HOME PROGRAM
(This list may be amended as programs are developed or expanded or deleted)

2. **Acceptable Insurers:** PMI Insurance is acceptable only from the following CHFA-approved private mortgage insurance companies:
   a. Genworth Financial
   b. Mortgage Guaranty Insurance Company (MGIC)
   c. PMI Mortgage Insurance Company
   c. Radian Guaranty Inc.
   d. Republic Mortgage Insurance Company
   f. AIG United Guaranty

3. **Required Coverage:** The minimum insurance coverage required when applicable is as follows:

   | Loan-to-Value Ratio | PMI Coverage Required |
   | --- | --- |
   | 95.01 – 96.5% | Top 35% |
   | 90.01 – 95% | Top 30% |
   | 80.01 – 90% | Top 25% |

4. When applicable Fannie Mae (FNMA) loan underwriting practices must be followed in conjunction with CHFA's underwriting ratios.

E. **FHA Insured, RD and VA-Guaranteed Mortgage Loans**
   1. CHFA accepts FHA insurance or RD and VA guarantees throughout the State on new or existing Eligible Dwellings.

   2. Federal Programs. Each FHA, RD or VA Loan must be insured or guaranteed under one of the following provisions of law:
      a. FHA Section 203(k) Rehabilitation
      b. FHA 213: Cooperative Financing
      c. FHA Section 221(d) (2): Low and Moderate Income
      d. FHA Section 222: Serviceman

    e.  FHA Section 233:  Experimental Housing
    f.  FHA Section 234:  Individual Condominium Unit
    g.  FHA Section 235:  Lower Income (Interest Subsidy)
    h.  FHA Section 237:  Special Credit Risks
    i.  FHA Section 245:  Graduated Payment Mortgages
    j.  FHA Section 745:  Direct Endorsements
    k.  FHA Section 809:  Armed Services Civilian Employees
    l.  FHA Section 810:  Armed Services Housing
    m.  USDA/Rural Development Section 502 Guaranteed Rural Housing
    n.  Loan Program
    o.  VA-Chapter 37 Title 38, U.S. Code (which includes Section 501 of the Servicemen's Readjustment Act of 1944, as amended)
    p.  Loans may be insured under any other FHA insurance program with the prior approval of CHFA.

3.  VA-guaranteed Loans may not exceed the reasonable value of the property as established by the certificate of reasonable value issued by the VA. The VA guaranty together with the downpayment (based on the lower of cost or value) shall not be less than 25% of the lower of cost or value.

4.  In the case of a VA-guaranteed Loan, the Participating Lender must inform the applying veteran of the restriction on the veteran's ability to assign the Loan and must obtain a veteran's consent statement, as required by 36 CFR Section 36.4306(a) and (e). The Participating Lender must file the statement with the VA together with the application or with the report of a loan processed on the automatic basis.

F.  **Minimum Downpayment**
1.  FHA, RD, or VA insured loans will meet the minimum requirements of the insurer (as described in Section *5.3C.3* of this Manual). The minimum downpayment for \*PMI must be equal to a minimum of 3.5% of the sales price.

2.  **Equity** - In some cases CHFA may require a downpayment in excess of these minimums. Examples include: requiring application of equity from the sale of residential property; requiring reduction of monthly payments on the Loan to a level consistent with the Borrower's ability to pay; or reducing the Loan to the maximum permitted by the mortgage insurer or guarantor.

3.  **Maximum Mortgage Amount** - In no event may the Loan amount exceed the lower of the purchase price or appraised value.

**G. Uninsured Loans and Insurance Coverage**
1. Mortgage insurance coverage is required for all loans except for those loans with a downpayment (not borrowed) of 20% and an LTV of 80% or less based on the lower of cost or appraised value. CHFA first mortgage loan financing is not available to borrowers whose downpayment is ≥ 20% except for those loans originated in partnership with CHFA Approved nonprofit, municipal or federal government homeownership programs where acceptance of uninsured loans is a requirement of the homeownership program provider. This will apply to such loans originated in both CHFA Non-Targeted and Targeted Areas (or Targeted Census Tracts).

2. **Amount and Duration of Coverage** - All mortgage insurance or guarantees must be maintained for the life of the Loan. Private Mortgage Insurance for Single Family loans is subject to the Homeowners Protection Act of 1998. Servicers will follow Fannie Mae guidelines for one to four family properties for all loans closing on or after July 29, 1999. For those loans closed prior to July 29, 1999, PMI shall be automatically cancelled upon the following conditions:
   a. the loan has amortized for a period of fifteen (15) years since closing; and

   b. the borrower is current on the loan.

   All loans with terminated Private Mortgage Insurance must be reported to CHFA on a monthly basis.

3. **Full Force and Effect** - As of the closing date, mortgage insurance must be in full force and effect, the benefits of such mortgage insurance must run to CHFA and nothing shall have been done or omitted to impair the rights of CHFA thereunder.

4. **No Commissions** - A private mortgage insurer may not charge a commission, fee or other compensation for providing mortgage insurance other than normal premiums.

## 5.4 Closing Costs
**A. Acceptable Closing Costs**
Fees to be paid by the borrower must be reasonable and customary, including the appraisal fee and any inspection fees, cost of credit reports, the origination fee, processing fees, underwriting fees, home inspection fees, cost of title examination and title insurance, attorney fees, recording fees, courier fees, taxes, certificate and test fees.

The maximum allowable amount CHFA will allow a Lender to collect on first
mortgage loan transactions for the origination fee, processing fee and
underwriting fee are listed below:

- One percent (1%) origination fee
- CHFA Loan Processing Fee = $350.00
- CHFA Loan Underwriting Fee = $350.00

Document preparation fees may also be charged if performed by a third-party
not controlled by the lender. If charged, the document preparation fee may not
exceed $300.00. *(See FHA Handbook 4155.1 REV-5 Settlement Requirement Section1-9A.)*

**B. Unacceptable Closing Costs**
CHFA Eligible Borrowers may not be charged;
1. commitment fee

2. tax service fee

3. fees for guaranteeing the rate or points,

4. ineligible real estate broker fees

**C. Seller Paid Closing Costs**
Seller paid closing costs are permitted to the extent of the mortgage insurers'
(FHA, VA, RD and PMI) guidelines. In the case of a PMI-insured loan and an
uninsured loan (20% downpayment), the total allowable seller paid closing costs
shall not exceed 6% of the purchase price.

## 5.5  Loan Submission to CHFA for Commitment
### A. Exhibits for Commitment package
Please submit all documentation in the following descending order:

1. **STANDARD DOCUMENTS REQUIRED FOR ALL LOAN TYPES**
   a. Completed processing checklist in file submission order.

   b. CHFA Mortgage Loan Submission Sheet (CHFA MLSS), including
      *Census Tract number* (with all applicable items completed). CHFA **will
      not** process loan packages that are submitted with incomplete or missing
      Mortgage Loan Submission Sheets. The loan package will be counted as
      "arrived" and included for review only upon receipt of the completed
      MLSS as required.

   c. **Documents Specific to the Insurer/Guarantor:**

      i. FHA Loans:

-   HUD Form 92900 LT-Transmittal (FHA Direct Endorsement)

ii.  VA Loans:

-   VA Form 26-6393 Loan Analysis or VA Form 26-1866a Commitment

iii.  RD Loans:

-   FMHA 1980-18 Conditional Commitment
-   FNMA Form 1008 (Uniform Underwriting and Transmittal Summary)

iv.  PMI Loans:

-   FNMA Form 1008 (Uniform Underwriting and Transmittal Summary)
-   Copy of PMI commitment

v.  Uninsured:

-   FNMA Form 1008 (Uniform Underwriting and Transmittal Summary)

d.  Automated Underwriting Risk Status Printout (if available)

e.  Uniform Residential Loan Application (FNMA Form 1003)

f.  Credit Report

g.  Verification of Income / Employment (or Alternative Documentation)

h.  Verification of Employment (VOE) and three most recent pay stubs or as an alternative to obtaining a VOE, the lender may choose to submit all of the following:

   i.  original pay stubs covering the most recent 30-day period, which must at a minimum clearly show the borrower's name, social security number, and year-to-date earnings; and

   ii.  original copies of the previous two years' W-2 forms. The "original" of the W-2 may be any of the copies of the W-2 not submitted to the IRS with the borrower's income tax returns. These original documents may be photocopied and returned to the borrower; and

   iii.  a verbal verification of employment for the past two years. The loan file must include a certification from the lender that original documents were examined and the name, title, and telephone number of the person from whom employment was verified.

*NOTE: If the employer will not give telephone confirmation of employment, or if the W-2 indicates inconsistencies (e.g. FICA payments not reflecting earnings), standard verification of employment documentation must be used.*

   i.  Pay stub(s) as required

   j.  Verification of Deposit (or Alternative Documentation)

      Verification of Deposit (VOD) or as an alternative to obtaining a VOD, the lender may choose to obtain from the borrower original bank statement(s) covering the most recent three-month period.

   k.  Gift Letter (if applicable)

   l.  Signed Copies of Federal Income Tax Returns for 3 most recent years (only one year if targeted area or targeted census tract)

   m.  Signed Sales Contract

   n.  Amendment to Sales Contract re: Energy Efficiency Standards (if Single Family new construction)

   o.  Appraisal Report and Photographs – Street View and Property

2.  CHFA FORMS – Note: Original signature/initials required (CHFA will accept faxed copies of original documents. Participating Lender must certify the faxes are true copies of the originals)

   a.  CHFA Federal Recapture Tax Form (CHFA Form 051)

   b.  IRS Form 4506 or 8821 – Request for Copy or Transcript of Tax form or Tax Information Authorization (request for 3 years, only one year if Targeted Area)

   c.  Borrower Certificate (CHFA Form 014)

3.  PRODUCT-SPECIFIC FORMS
   a.  Rehab Loans
      i.  Contractor's Certificate (CHFA Form 031)
      ii.  Adjusted Basis Worksheet (CHFA Form 032)
      iii.  Certification & Application Eligibility Worksheet (PMI only; CHFA Form 056)

    b.  Homeownership Program Loans
       i.  Landlords Verification
      ii.  Counseling Certificate

    c.  Downpayment Assistance Program (DAP) Loans
       i.  CHFA DAP Loan Application & Qualification:
           Form for loans requiring downpayment assistance only;
           Form for loans requiring downpayment and closing costs assistance

      ii.  DAP Borrower's Certificate

      iv.  Good Faith Estimates: 1st Mortgage____ 2nd Mortgage____

      iv.  Counseling Certificate

    d.  Teachers Mortgage Assistance Program
       i.  Teachers Statement of Eligibility

    e.  Police Homeownership Program
       i.  Police Eligibility Letter
      ii.  Police Certification of Intent to Occupy Property
          (Required for loans with DAP loans only)

    f.  Special Programs / Pilot Program Documentation
       CHFA may require additional documentation specific to a Special
       Program or Pilot Program initiative. When applicable refer to the Special
       Program or Pilot Program product description and eligibility
       requirements for the program.

**B.**  **Processing Time**
After eligibility processing and credit review of an Eligible Borrower, the
Participating Lender must obtain a firm commitment for mortgage insurance or
guaranty. The Eligible Borrower must be advised that four to six weeks may be
necessary for processing, and that delays by agencies of the federal government
are not caused by nor are they the responsibility of CHFA.

**C.**  **Issuance of Commitment**
CHFA underwriters will review each loan submission package for accuracy,
consistency, completeness and compliance with the eligibility provisions in this
Manual. If the Loan is unacceptable, an Adverse Action Notice will be issued
to the Participating Lender only. Acceptable Loan submissions will be kept on
file at CHFA and a written Commitment to purchase will be issued for each
acceptable submission. A Commitment is valid for the term stated therein, and
may be canceled or extended upon written application which should be received
at least 10 days prior to the expiration date. The closed Loan must be submitted
for purchase before the Commitment expiration date.

**D. Reservation and Commitment Date Expirations**

CHFA will automatically cancel outstanding loan reservations not received for processing on the day the reservations expire. Additionally, CHFA will automatically cancel all outstanding Loan Commitments that have not been submitted to CHFA for purchase on the date the Commitment expires.

**1. CHFA Loan Reservations**

CHFA reservation shall expire on:
a.   120 days from the date of the reservation, or

b.   on the date the Loan Commitment to Purchase is issued.

Requests for extensions of reservations must be received a minimum of 7 days prior to the expiration date for consideration.

**2. CHFA Loan Commitment to Purchase**

a.   CHFA Loan Commitments to Purchase shall expire 120 days from the date the Commitment is issued.

b.   Requests for an extension or cancellation of a Commitment shall be from the Participating Lender only and must be in writing.

c.   Requests for extensions of the commitment must be received a minimum of 7 days prior to the expiration date for consideration.

**E. Re-submission of Declined Loan Commitment Requests**

When a Loan has been declined by CHFA for any reason specified on the Adverse Action Notice, a Participating Lender may re-submit the Mortgage *Loan package for review only once*. Such re-submission shall include additional evidence to assist CHFA in evaluating the application. Different CHFA staff members authorized to review mortgage loans shall review the submission and any re-submission of an application. If declined a second time, an application may not be re-submitted.

## 5.6  Limited Documentation and Delegated Underwriting

CHFA will delegate underwriting of loans to Lenders meeting the criteria in this section and accept limited documentation as described in *5.6D*. CHFA review of these loans is for the purpose of program compliance and issuance of a commitment letter.

**A. Eligible Lenders**

Participating Lenders must submit a request for approval to the Single Family Underwriting Unit in writing for approval to participate in this program. CHFA will evaluate the lenders overall performance when considering approval.

CHFA will also monitor and evaluate lenders participation in this program and reserves the right to rescind approval.

Lender acceptance into the Delegated Underwriting Program will include a review of the following:

1.  The average number of days from loan reservation to file submission

2.  The quality and completeness of loan files submitted

3.  The number and percentage of loans that are submitted with missing documentation (based on individual lender volume)

**B. Eligible Loans**
1.  Homebuyer Program loans with ratios conforming to (Section 5.1.D) of the CHFA Operating Manual and/or

2.  Loans processed through an approved automated underwriting system (i.e.: Fannie Mae DU, Freddie Mac LP, PmiAura) which receive an "accept" or greater approval through the system.

**C. Ineligible Loans**
1.  CHFA first mortgage with DAP second loans.

2.  Homeownership Program loans for tenants in public housing or publicly assisted housing.

3.  Rehabilitation loans.

4.  Loans with non-conforming ratios unless approved through an automated underwriting system up to a maximum 33% Housing Debt to Income ratio and 45% Total Debt Income.

**D. Required Exhibits for the Limited Documentation and Delegated Underwriter's Commitment Package**

Please submit all documentation in the following descending order:

1.  STANDARD DOCUMENTS REQUIRED FOR ALL LOAN TYPES
    a.  Completed processing checklist in file submission order

    b.  CHFA Mortgage Loan Submission Sheet (CHFA MLSS), including *Census Tract number* (with all applicable items completed). CHFA **will not** process loan packages that are submitted with incomplete or missing Mortgage Loan Submission Sheets. The loan package will be counted as "arrived" and included for review only upon receipt of the completed MLSS as required.

   c. Documents Specific to Insurer / Guarantor:
      i. FHA Loans:
         \_\_\_\_ HUD Form 92900-LT
         \_\_\_\_ FHA Automated Underwriting Risk Status
         \_\_\_\_FHA requires the **Employment Identification Number** (EIN) of any government, state, county, city municipalities and non-profit organization that provides secondary financing assistance, grants, or gifts to an approved borrower reflected on the HUD-92900LT. The CHFA EIN Number is **06-1267528**

      ii. VA Loans:
         \_\_\_\_ VA Form 26-693 Loan Analysis or VA Form 26-1866a Commitment
         \_\_\_\_ VA Statement Re: Due on Sale (Original Signature Required)

      iii. RD Loans:
         \_\_\_\_ FMHA 1980-18 Conditional Commitment
         \_\_\_\_ FNMA Form 1008 (Uniform Underwriting and Transmittal Summary)

      iv. PMI Loans:
         \_\_\_ FNMA Form 1008 (Uniform Underwriting and Transmittal Summary)

   d. Automated Underwriting Risk Status Printout

   e. Uniform Residential Loan Application (FNMA Form 1003)

   f. Verification of Income/Employment (or Alternative Documentation)

   g. Pay Stub(s)

   h. Signed Copies of Federal Income Tax Returns for three most recent years

   i. Amendment to Sales Contract, Re: Efficiency Standard (New Construction)

   j. Appraisal

2. CHFA REQUIRED FORMS – Note: Original signature/initials required (CHFA will accept faxed copies of original documents. Participating Lender must certify the faxes are true copies of the originals)
   a. CHFA Federal Recapture Tax Form (CHFA Form 051)

    b.  IRS Form 4506 or 8821 – Request for Copy or Transcript of Tax form or Tax Information Authorization (request for 3 years, only one year if Targeted Area)

    c.  Borrower Certificate (CHFA Form 014)

    d.  Police Eligibility Letter

    e.  Police Certification of Intent to Occupy Property For 7 Years (Required for loans with DAP only)

    f.  Teachers Statement Eligibility Letter

# SECTION 6 – LOAN PREPARATION

| | |
|---|---|
| **6.1** | **Terms and Conditions of Loans** |
| **6.2** | **Title Insurance** |
| **6.3** | **Hazard Insurance** |
| **6.4** | **Property Description** |

# Section 6 – Loan Preparation

## 6.1    Terms and Conditions of Loans

**A.    Priority of Lien**

Each loan must be secured by a valid first lien on the Eligible Dwelling.
The property must be free and clear of all prior encumbrances and liens
Except as approved by CHFA, and no rights may be outstanding that could
Give rise to such liens.

**B.    Validity and Enforceability**

The note, mortgage deed, and any other instruments securing the Loan must
be legal, valid and binding obligations of the borrower, enforceable in accordance
with their terms, free from any right of set-off, counterclaim or other claim or
defense. The terms of the Loan may not be modified, amended, waived or
changed, except as approved by CHFA.

**C.    Term**

| | | |
|---|---|---|
| 1. | **Fee:** | The maximum original term of a Loan shall not exceed thirty years. |
| 2. | **Leasehold:** | The maximum term of a Loan shall not exceed thirty years and shall not exceed one-half of the remaining years of the term of the underlying lease. |

**D.    Amortization**

Each Loan must be for a minimum of $10, 000 and provide for regular monthly
payments, interest payable in arrears, with full amortization by maturity.
Amortization must commence within two months after closing. Monthly
payments shall be due on the first day of each month, and the final payment date
must be shown on the Loan documents.

**E.    Prepayment Penalty and Late Charges**

Prepayment penalties are not permitted on *any* Loan. A Loan may provide for a
late charge in an amount not to exceed 5% on payments that are 15 days or more
past due.

**F.    Principal Amount Advanced; No Mandatory Future Advances**

The full principal amount of the Loan must be advanced to the borrower or at his
direction at the closing. The borrower shall not have an option under the Loan to

borrow, from the Participating Lender, or any other person, additional funds
secured by the lien of the mortgage without the consent of CHFA.

**G.**    <u>**Escrow Payments**</u>

Each payment must provide for the monthly collection of escrow payments for
real estate taxes, mortgage insurance premiums, hazard insurance premiums when
required by the mortgage insurer or guarantor, in addition to the monthly
installment of principal and interest. The Participating Lender or Servicer shall
pay interest on escrow deposits at a rate not less than the minimum set forth in
applicable statutes or regulations.

**H.**    <u>**Maintenance and Insurance**</u>

The mortgage must obligate the borrower to maintain the Eligible Dwelling in
good repair and condition, to keep the premises free and clear from other liens
and encumbrances and to maintain hazard insurance in accordance with the
requirements set forth in section *6.3.*

**I.**    <u>**Interest Rate**</u>

The interest rate applicable to any Loan shall be the interest rate that is shown on
the Mortgage Loan Commitment.

**J.**    <u>**Forms**</u>

Each Loan must be executed on printed forms approved by FHA, RD, or VA,
where applicable, or on FNMA/FHLMC uniform instruments approved for use in
the State. The CHFA Uniform Mortgage Rider must be executed and recorded.
Condominium or PUD riders, as appropriate, must be executed and recorded. The
promissory note for each Loan must be endorsed by the Participating Lender to
CHFA unless the loan is being released for servicing pursuant to Section *7.3.C.*

**K.**    <u>**Compliance with Laws**</u>

All requirements of federal and state laws, rules and regulations now existing or
hereafter adopted, applicable to mortgages and mortgage loan transactions,
including without limitation, truth-in-lending laws, equal opportunity laws, usury
laws and laws regulating interest on escrow accounts, must be complied with, and

the mortgage and the Participating Lender must not violate any such laws, rules or
regulations.  In the case of any conflict between the requirements of this

Manual and any federal or state law, rule or regulation, the provisions of federal
or state law, rule or regulation shall govern and the Manual will be deemed to be

amended to conform thereto.  CHFA must be notified of any such conflict known
to the Participating Lender.

## 6.2    Title Insurance

### A.    Original Mortgagee's Policy

The mortgage must be covered by a mortgagee's title insurance policy which
shows good and marketable title to the mortgaged property. The benefits of such
insurance must run to CHFA and must be issued on a form consistent with the
standard ALTA form by a title insurer acceptable to CHFA. The policy must e in
an amount equal to the original principal balance of the Loan. The original policy
must accompany the Loan purchase package and must be signed by a licensed
agent. The borrower shall be advised of the availability, coverage, and cost of
simultaneous issuance of owners' title insurance; however, owners' coverage is
not required by CHFA.

### B.    Additional Requirements – Schedule A

1.    The name insured should be in the flowing form" (Participating
Lender) and/or Connecticut Housing Finance Authority, its
successors and assigns, as their interest may appear".
(The following abbreviation is also acceptable:
"…as their interests may appear" = ATIMA)

2.    Recording data for both the mortgage deed and the assignment of
mortgage to CHFA must be shown. (Note: CHFA is not a member
of the Mortgage Electronic Registration System, (MERS).

Assignment of CHFA mortgage loans in MERS is strictly
prohibited. All CHFA mortgage loan assignments must be in the
name of the Connecticut Housing Finance Authority (CHFA).

This policy may be amended by CHFA at will to accommodate the
sale of mortgage loan pools to GNMA or any other CHFA
designated authorized entity.

3.    The title policy shall be endorsed from time to time as applicable
to show mortgage modifications and other correcting documents
which may be recorded.

**C.**    **Additional Requirements – Schedule B**

1.    If required, the survey must be an exhibit to the title insurance policy.

2.    Exceptions for agreements or restrictive covenants of record relating to cost, use, set-back, minimum-size, building materials, architectural, aesthetic or similar matters (other than single family use restrictions on two-to-four family properties) are acceptable to CHFA if:

   a.    there is no reversion or forfeiture of title in the event of violation hereof;

   b.    the terms and provisions of such agreements or restrictive covenants are commonly and customarily acceptable to prudent lending institutions in the area in which the property is located; and

   c.    no violation of any such agreement or restrictive covenant exists.

3.    Covenants, restrictions, agreements and other encumbrances must be covered by title policy language which affirmatively insures that a breach or violation of such covenants, restrictions, agreements and encumbrances will not result in a forfeiture or reversion of title.

4.    The following additional exceptions will be acceptable to CHFA:

   a.    Any mutual agreement of record which establishes a joint driveway or a party wall whether constructed partly or wholly on the subject property or the adjoining property, but only if the easement agreement allows all present and future owners, their heirs and assigns forever, unlimited use of the driveway or party wall without any restriction other than restrictions by reason of the mutual easement owner's rights in common and duties as to joint maintenance as applicable.

   b.    Encroachments on the subject property by improvements on adjoining property where such encroachments extend one foot or less over the property line, have a total area of fifty square feet or less, do not touch any building and do not interfere with the use of any improvements on the subject property or the use of property

         not occupied by improvements.

   c.    Liens for real estate or other taxes and assessments not yet due and payable

   d.    Normal utility easements benefiting the subject property.

**D.**  **Standard Endorsements**

The title insurance policy shall include the following standard endorsements, on forms substantially the same as those indicated herein:

1.  Residential Mortgage Endorsement – CTA Form 001 (where applicable).

2.  Environmental Lien Endorsement – ALTA Form 8.1.

3.  Condominium Endorsement – ALTA FORM 4 (where applicable).

## 6.3  Hazard Insurance

**A.**  **Coverage**

An Eligible Dwelling securing the Loan must be covered by hazard insurance as follows:

1.  Fire and extended coverage insurance in an amount sufficient to cover the outstanding principal balance of the Loan or the full insurable value of the improvements on the mortgage property, whichever is less. In no event shall the amount of coverage be less than the amount required by the mortgage insurer or guarantor. Policies may contain a deductible clause up to a maximum of $1,000.

2.  The Participating Lender shall advise CHFA of the nature of any hazard not covered under the previous section and the additional insurance coverage, if any, which has been obtained against such hazard.  If adequate insurance has not been obtained against such hazard, CHFA may require the Participating Lender to obtain such coverage.

3.  The Participating Lender is responsible for and warrants

    compliance with the provisions of the Flood Disaster Protection Act of 1973, whenever such provisions would be applicable to any Loan. If the Eligible Dwelling is located in an area having special flood hazards, as identified by the Secretary of Housing and Urban Development, flood insurance shall be maintained in the amount of the outstanding principal balance of the Loan or the maximum limit of coverage available under the National Flood Insurance Act of 1968 as amended, whichever is less.

4.    Each hazard insurance policy must be written by a hazard insurance carrier licensed to do business in the State.

5.    Such insurance must be n effect on the closing date of the Loan and must be paid in advance for a full year after the closing.

## B.    **Policy Requirements**

1.    All policies of hazard insurance must contain or have attached a standard mortgagee clause naming The Connecticut Housing Finance Authority C/O "(The loan servicer) and its successors and assigns as their interest may appear" as the insured. The following abbreviations are acceptable:

and its successors or assigns = AJSOA
as their interest may appear = ATIMA

2.    The policy must provide that the insurance carrier will provide written notice to the loan servicer at least ten (10) days in advance of the effective date of any change or cancellation of the policy.

3.    The Participating Lender shall give any necessary notices in order to fully protect the interest of CHFA as first lienholder under the terms of the policy and applicable law.

4.    Refer to Section 7 – Loan Purchase for additional mortgagee clause information as follows:
Section 7.3.B – Release of Servicing for Conventional Loans (Non-Government Insured Loans) or
Section 7.3.C – Loan Funding and Release of servicing for Government Insured Loans

## C.    **Unacceptable Policies**

Policies are unacceptable if:

1.    Under the terms of the carrier's charter, by-laws or policy, contributions or assessments may be made against CHFA or its designee; or

2.    Contributions or assessments may be made against the borrower, which could become a lien on the dwelling superior to the lien of the mortgage; or

3.    By the terms of the carrier's charter, by-laws or policy, loss

payments are contingent upon action by the carrier's board of
directors, policyholders, or members; or

4.    The policy includes any limiting clauses (other than insurance
conditions) which could prevent CHFA or the owner of the
property from collecting insurance proceeds.

## 6.4   Property Description

### A.   Legal Description

The legal description in the mortgage deed, mortgagee's title insurance
policy and other documents will be acceptable in the following forms and
shall include the property address and lot number if any:

1.    Metes and bounds; or

2.    Reference to lots which include reference to a filed map on which
the lots are delineated; or

3.    Reference to the boundary lines of abutting streets and owners.

### B.   Loan Documents to be Consistent

The Participating Lender must check the Loan documents to assure that
the legal description contained or referred to in each document is accurate
and consistent with those in the others.

# SECTION 7 - LOAN PURCHASE

**7.1  Closing Procedures**
**7.2  Purchase of Committed Loans**
**7.3  Release of Loan Servicing**
**7.4  Preparation of Mortgage Releases**
**7.5  Assumption of Loans**

## SECTION 7 - Loan Purchase

### 7.1    Closing Procedures

**A.  Scheduling.**

Participating Lenders are expected to close Loans in accordance with their established practices.  After receipt of a Commitment, the Participating Lender shall make advance arrangements with the borrower to ensure agreement and understanding as to the amounts of and who will pay closing costs, prepaid items and other escrows, costs and fees.  The closing must be scheduled at a time prior to the expiration of the Commitment and at a time which is convenient for the borrower.  However, the loan may not be scheduled for closing until the Lender has received a CHFA loan commitment letter.  The Participating Lender should advise the borrower, at least twenty-four hours prior to closing, of the total amount of funds which the borrower must have at closing and the form in which such funds are to be made available.

**B.  Compliance with Laws.**

1.  The Participating Lender shall be familiar with the Real Estate Settlement Procedures Act (RESPA) and other federal or state laws applicable to closing procedures for home mortgage loans, and must comply with their provisions.

2.  None of the Mortgage loans are subject to, covered by, or in violation of the Homeownership and Equity Protection Act of 1994 (HOEPA) or classified as "high cost", "covered", "high risk", "threshold" or "predatory loans" under any other applicable state, federal or local law, including any predatory or abusive lending laws (or similarly classified loans using different terminology under a law imposing heightened scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees) or in violation of any state law or ordinance comparable to HOEPA.

3.  In order to comply with Connecticut General Statutes 42-151 et. seq. (the Connecticut Plain Language Law), a borrower with a Mortgage amount of $25,000 or less shall be required to be represented by an attorney at the closing.

**C.  Escrows.**

1.  The Participating Lender shall determine the amount of escrow payments with respect to any Loan and make arrangements for the establishment of an escrow account with the Servicer if the servicing is not to be done by the Participating Lender.  The Participating Lender or Servicer is to comply with the Department of Housing and Urban Development Real Estate Settlement Procedures Act Escrow Accounting Procedures.

2.  The Servicer shall escrow for real estate taxes, mortgage insurance premiums and hazard & flood insurance premiums (when hazard insurance or flood insurance premiums are required to be escrowed by the mortgage insurer or guarantor).  Servicer shall pay interest on escrow deposits at a rate not less than the minimum set forth in applicable statutes or regulations.  CHFA does not prohibit reasonable and prudent investments of such escrow funds.

3. The Participating Lender shall escrow for undisbursed rehabilitation construction amounts for Rehabilitation Mortgage Loans (see Section 4).

At the time of loan purchase, the wired purchase amount is net of prepaid interest, as further described in 7.2(A)(4). US Bank does not take prepaid interest in the wire; see specific US Bank funding procedures, 7.3.

D. **Completed CLOSING Documentation.**

1. The Participating Lender shall verify that all Loan closing documents are properly executed and witnessed and that signatures on all documents conform with one another and with those on the original application.

2. Any erasures or corrected errors which appear on the note or mortgage deed must be initialed by all parties who signed the documents.

3. Documents executed pursuant to a power of attorney should be accompanied by a certified copy of the recorded power of attorney.

4. The Participating Lender must verify that the mortgage deed and assignment of mortgage are complete, correct, properly acknowledged and otherwise in recordable form.
   CHFA is not a member of the Mortgage Electronic Registration System (MERS) and assignment of CHFA mortgage loans in MERS is strictly prohibited. All CHFA mortgage loan assignments must be in the name of the Connecticut Housing Finance Authority.

5. The Participating Lender shall confirm that any special CHFA Commitment instructions or conditions have been complied with.

E. **Mortgage Insurance and Guaranty Requirements.**

1. All required mortgage insurance or guaranty forms and certificates shall be properly completed and executed.

2. Evidence shall be obtained indicating that any special terms and conditions stated by the insurer or guarantor on its commitment have been satisfied.

3. The Participating Lender shall promptly notify the mortgage insurer of the assignment of the mortgage:

   a. Proof of the electronic mortgagee change is required for FHA loans.

   b. The Loan Sale Notice form is required for PMI loans.

   c. No form or notice is required for VA loans.

   d. RD Form 1980-11, Guaranteed Rural Housing Lender Record Change

**F.  Collection of Initial Payments.**

The Participating Lender should collect initial escrow payments, prepaid interest and applicable fees at the closing.

**G.  Fees.**

1.  All fees collected from the Borrower, including but not limited to, application fees and processing fees shall not in their aggregate exceed the amount allowed by the program. No additional fees may be charged by the Participating Lender to either the seller or the borrower.

2.  The Participating Lender will be allowed to recover from the borrower all reasonable out-of-pocket expenses incurred in the Loan application in an amount not to exceed 100% of actual cost. Out-of-pocket expenses include those cash expenditures incurred by the Participating Lender to pay for outside services rendered, such as appraisals by outside independent fee appraisers and credit reports by independent credit reporting agencies.

3.  The maximum allowable amount CHFA will allow a Lender to collect on first mortgage loan transactions for the origination fee, processing fee and underwriting fee are listed below:
    - One percent (1%) Origination Fee
    - CHFA Loan Processing Fee = $350.00
    - CHFA Loan Underwriting Fee = $350.00

**H.  HUD Form 1, Certificate of Loan Disbursement.**

After the closing has been completed, both the borrower and the seller should receive an itemized statement of actual costs, prepared on HUD Form 1. A signed copy of that form must be obtained.

**I.  Recording.**

Following the closing, the mortgage deed together with any necessary riders and the assignment of mortgage shall be promptly recorded on the land records of the town(s) in which the property is located.

**7.2    Purchase of Committed Loans**

**A.  Loan Purchase Procedure.**
1.  CHFA will generally fund Loans on the date of the loan closing provided that the Participating Lender faxes the CHFA Loan Purchase Request Form (Form 066) prior to 12:00 noon in order for CHFA to be in a position to affect same day purchase.
    a.  If the fax is received after 12:00 noon and before 12:45 P.M., CHFA will attempt to fund the loan the same day. Faxes received after 12:45 P.M. will be funded the following business day.

   b.  Originating Lenders may fax the CHFA Loan Purchase Request form prior
       to the 12:45 P.M. funding deadline for all loans scheduled for closing that
       day.

   c.  If the loan is funded and does not close, the Lender will incur a penalty of
       $250.

   d.  Government Insured loans which are assigned and sold to U.S. Bank
       National Association will be purchased pursuant to the instructions in
       Section 7.3 C.

   e.  CHFA will not pay interest on purchases made after the date of loan closing
       if the delay in purchase results from Participating Lender's failure to fax by
       the 12:00 noon deadline.

   f.  All loan purchase requests must be faxed to CHFA within 48 hours of loan
       closing.  Please fax the completed CHFA Loan Purchase Request Form
       (CHFA form 066) to the purchase desk at 860-721-9244.

2. The note amount must be what was issued on the commitment letter.

3. The interest rate must be what was issued on the commitment letter.

4. The amount of prepaid interest collected at closing should be calculated as a per
   diem based on the actual number of days in the relevant year (i.e., 365 or 366).

5. Calculate the interest payment from and including the closing date to but
   excluding the date of the first monthly payment.

6. For all loans where prepaid interest is collected from the borrower at closing,
   CHFA will collect prepaid interest from CHFA's purchase date, not the closing
   date provided that the loan is purchased by CHFA no later than 2 business days
   after closing.

7. For all loans purchased by CHFA 3 or more business days after closing, CHFA
   will continue to collect prepaid interest from the closing date of the loan.

8. After verifying that there is a valid CHFA Commitment, CHFA will confirm the
   total amount of the purchase, net of prepaid interest and disburse this amount to
   the Participating Lender.

9. *Inasmuch as the Loan purchase is made prior to the review of the closed loan
   documentation, the Loan is subject to repurchase by the Participating Lender as
   explained in Section 7.2C.*

B. **SUBMISSION OF LOAN DOCUMENTS FOR PARTICPATING LENDERS WHO
   RETAIN SERVICING**

NOTE*: Loans released for servicing shall follow the Submission of Loan Documentation as
described in Section 7.3. "Release of Loan Servicing".*

Participating lenders who retain servicing shall follow the instructions in this section.

    a.    **Each Loan purchase package shall contain all applicable documents properly completed, IN A SINGLE PACKAGE.**

    b.    **This package shall be delivered to CHFA, Attention: Finance Department, for review within 120 days after the date of the Loan closing. The Loan purchase package must be identified clearly with the CHFA Loan number which appears on the CHFA Commitment. All further correspondence regarding a Loan file must refer to the CHFA Loan number.**

    c.    **CHFA documents may not be changed or altered in any manner without the prior approval of CHFA. The Participating Lender must use CHFA forms where applicable; computer generated forms, in place of CHFA forms, are acceptable with prior written approval.**

    d.    **The Participating Lender will receive written notice of any defects in the Loan or the documentation. The Participating Lender shall make prompt and diligent efforts to supply adequate correcting or supplemental documentation. In the event that the Loan purchase package is not brought into compliance, repurchase may be required and the Lender will incur a penalty of $250.**

**The following documents are required with each Loan purchase package:**
1. **Promissory Note**

    a.    **A copy of the original executed promissory note, endorsed to CHFA as follows:**

        **Loans sold to CHFA are to be endorsed as follows:**
        **"Pay to the order of Connecticut Housing Finance Authority without recourse.**

                **(PARTICIPATING LENDER)**

        **BY**    _____
        **TITLE**   _____
        **DATE**   _____

    b.    **CHFA is not a member of the Mortgage Electronic Registration System (MERS) and assignment of CHFA mortgage loans in MERS is strictly prohibited. All CHFA mortgage loan assignments must be in the name of the Connecticut Housing Finance Authority."**

    c.    **In addition, loans in the amount of $25,000 or less must bear the following attorney's statement, signed and dated by the borrower's closing attorney: "I am an attorney at law and I represented the borrower at this closing".**

2. **Certificate of Mortgage Insurance or Guaranty**

    **A copy of the mortgage insurance certificate must be submitted.**

3. <u>Participating Lender Certification</u>

A copy of the completed certification must be signed by an authorized officer of the Participating Lender.

4. <u>A copy of the original, executed DAP note, if applicable.</u>

5. <u>A copy of the original, executed UR Home note, if applicable.</u>

## CHFA DOWNPAYMENT ASSISTANCE LOANS:

### DAP Loan Document Delivery Requirements

a. A COPY of the original DAP Note must be sent to the CT Housing Investment Fund within 5 days of DAP loan closing.

b. A copy of the original DAP Note must be sent to CHFA within (120) days of loan closing.

c. The original DAP Note and the original, recorded DAP mortgage deed are to be sent, within 120 days of closing, to Connecticut Housing Investment Fund, Inc., 121 Tremont Street, Hartford, CT 06105.

## C. Repurchase Requirements.

Upon a Participating Lender's failure to comply with reasonable requests from CHFA to correct or complete documentation for any Loan purchase package or upon other breach of the terms of the Master Commitment Agreement for Mortgage Purchases, or any failure to comply with the requirements for eligibility set forth in this Manual (which failure is to be determined in the sole discretion of CHFA) without regard to whether the Participating Lender may be at fault, the mortgage will be reassigned to the Lender. Lender shall repurchase the Mortgage Loan as provided in the Master Commitment Agreement for Mortgage Purchases and the lender will incur a penalty of $250.

<u>Please Note</u>: *CHFA will require the Participating Lender to repurchase any loan that has been closed in a loan amount and/or interest rate different than the loan amount and interest rate stated in the commitment letter and the lender will incur a penalty of $250.*

**7.3    RELEASE OF LOAN SERVICING**

    **A. General**

A Participating Lender who does not service CHFA mortgages must submit all loan documentation as described in 7.3.B.1., 7.3C.1. and C.2. to the assigned Servicer listed on the CHFA commitment.  All servicing shall be carried out under the terms of the CHFA Home Mortgage Servicing Agreement.

    **B. Release of Servicing for Conventional Loans (Non-Government Insured Loans) to BOGMAN INC.**

        1.    CHFA will purchase loans released for servicing to Bogman pursuant to Section 7.2.A. of this Manual.  Participating Lenders, releasing servicing to Bogman, Inc., will deliver to Bogman within fifteen (15) days of the loan closing all those loan documents pursuant to the Conventional Loan Delivery Checklist issued with the loan commitment.

        2.    **Submission of Final Loan Documentation**
The items listed in Section 7.3.B.1. will be sufficient for Bogman to set up servicing.  The originating Participating Lender must also submit the following documents to CHFA within 120 days of loan closing.

            a.    **Promissory Note**

A copy of the original executed promissory note, endorsed to CHFA as follows:

"Pay to the order of Connecticut Housing Finance Authority without recourse.

                          **(PARTICIPATING LENDER)**

        **BY**           _____
        **TITLE**         _____
        **DATE**         _____

In addition, Loans in the amount of $25,000 or less must bear the following attorney's statement, signed and dated by the borrower's closing attorney: "I am an attorney at law and I represented the borrower at this closing".

CHFA is not a member of the Mortgage Electronic Registration System (MERS) and assignment of CHFA mortgage loans in MERS is strictly prohibited.  All CHFA mortgage loan assignments must be in the name of the Connecticut Housing Finance Authority.

            b.    **Certificate of Mortgage Insurance or Guaranty**

A copy of the mortgage insurance certificate or guaranty

 

    c.   **Participating Lender Certification**

A copy of the completed certification must be signed by an authorized officer of the Participating Lender.

    d.   A copy of the original, executed DAP note, if applicable.

    e.   A copy of the original, executed UR Home note (and copy), if applicable.

The remaining final loan documentation including the following shall be submitted within 120 days of loan closing to:

Bogman, Inc.
12301 Old Columbia Pike
Suite 200
Silver Spring, MD  20904

    a.   Original Note

    b.   Original recorded Mortgage Deed with CHFA Uniform Mortgage Rider/Owner Occupancy Certificate, (and Condominium or PUD Rider, if applicable)

    c.   Original recorded Assignment of Mortgage to CHFA

    d.   Original Title Insurance Policy

    e.   Original PMI Certificate of Insurance, FHA Mortgage Insurance Certificate, or the VA Loan Guaranty or USDA/Rural Development Guaranty, as applicable

    f.   Original Participating Lender Certification

    g.   Original Notice to Mortgagor of Maximum Recapture Tax

    h.   Original Participating Lender's Rehabilitation Loan Certification (if applicable)

    i.   Original Borrower's Rehabilitation Loan Certification (if applicable)

3.   **Mortgage Insurance Escrows**

    a.   **PMI (monthly) insured loans** - Two month's mortgage insurance is to be collected and remitted by the Participating Lender to the PMI Company, at time of closing, in order to initialize the mortgage insurance. In addition, the Participating Lender must file the applicable notice of transfer form required by the PMI Company and notify the customer that the first payment will include the monthly PMI premium. Bogman will begin paying PMI premiums in the month of the customer's first due date.

    b.   **PMI (annual) insured loans.** Two month's mortgage insurance is to be collected for deposit into the escrow reserves by the Participating Lender at time of closing. In addition, the first year's premium should be delivered to the PMI Company by the Participating Lender along with the notice of transfer form.

4.  **Tax Escrows**

Sufficient Tax Reserves should be collected for all Tax escrow items. All taxes due within 30 days of closing must be paid at the closing and a paid receipt provided with the original faxed package. Tax escrows should only be established for real estate and fire district taxes. Escrows for other taxing authorities should not be made part of the escrow account unless it is part of the real estate tax bill (sewer and water use fees, etc).

5.  **Hazard Insurance Escrows**

Two month's hazard insurance reserve should be collected by the Participating Lender at closing for the escrow reserves. Participating Lending will notify the borrower at closing that one month's premium will be part of the first monthly payment.

6.  **Remitting Escrow Funds to Bogman**

CHFA will wire Net Escrow Funds to Bogman, Inc.

7.  **Borrower Notification**

    a.   The Participating Lender will notify the borrower that Bogman, Inc. will be servicing the loan per "RESPA" requirement.

    b.   The Participating Lender will notify the borrower that Bogman, Inc. will bill the borrower monthly for the mortgage payments which are to be mailed to:

        Bogman, Inc.
        12301 Old Columbia Pike
        Suite 200
        Silver Spring, MD  20904

When the loan is purchased by CHFA; borrower servicing inquiries should be directed to:

> Customer Service Department
> Bogman, Inc.
> Toll Free at 1-877-482-1051 or to
> the website at www.bogmaninc.com

    c.    The Participating Lender should provide borrowers with Initial Escrow Account Disclosure Statement & provide Bogman with a copy.

## C. Loan Funding and Release of Servicing for Government Insured Loans to U.S. Bank Home Mortgage

    1.    The Participating Lender, releasing servicing to U.S. Bank Home Mortgage, will ship closed loan files immediately after closing, pursuant to the U. S. Bank Loan Delivery Checklist. Samples of the FHA, VA and USDA checklist are included in this manual, but may be subject to change. Please refer to the US Bank website at mrbp.usbank.com for the appropriate checklist and the U.S. Bank Lender Guide.

In those commitment letters that CHFA issues for government-insured loans to service-released Participating Lenders, CHFA shall specify the Mortgage Loans to be assigned and sold to U. S. Bank. After the closing of each Mortgage Loan, the Participating Lender shall send U. S. Bank within fifteen business days of the Mortgage Loan closing, by overnight mail, those documents identified in U.S. Bank's loan delivery checklist.

U.S. Bank shall be entitled to rely upon the Participating Lender as assembler and preparer of all Mortgage Loan documents, and is under no duty whatsoever to investigate or confirm any of the information set forth therein as to its honesty, accuracy, or completeness with respect to the origination, underwriting, and closing of the loan file. U.S. Bank reviews the pertinent documents necessary to ensure the loan meets secondary marketing guidelines, and is under no obligation to re-verify the information contained in such documents for accuracy.

    a.    Within 48 hours of the loan closing, please fax the completed CHFA Loan Purchase Request Form (CHFA form 066) to the purchase desk at 860-721-9244.

    b.    US Bank Home Mortgage will be responsible for purchasing the first mortgage and service released lenders should follow the instructions below (Submission of Loan Documentation).

    c.    If applicable, the DAP Loan will be funded by CHFA only upon receipt and satisfactory review by U.S. Bank Home Mortgage of first mortgage loan documentation described in the appropriate delivery checklist, and upon CHFA's receipt of the accurately completed Loan Purchase Request Form (form 066).

2 . Submission of Loan Documentation

a.   Receipt of loan files in order of the appropriate Loan Delivery Checklist
     will initiate set up of the loan on U.S. Bank's servicing system to begin
     servicing of the loan.  U. S. Bank Home Mortgage will perform post-
     closing/legal review functions.  The originating Participating Lender must
     submit closed loan files  to:

     U. S. Bank Home Mortgage – MRBP Division
     17500 Rockside Road
     Bedford, Ohio 44146-2099
     Attn: Operations Department

b.   Inquiries may be directed to:

     U. S. Bank Home Mortgage Help Desk:
            1-800-562-5165
                 or
     mrbp.helpdesk@usbank.com

c.   Complete compliant loan files are purchased daily.  U. S. Bank will fax a
     purchased Loan Summary Detail for each loan purchased.

d.   Exceptions (files with document deficiencies) are communicated by
     telephone, fax and are included on a weekly recap report to the
     Participating Lender.  Participating Lenders must clear
     exceptions/document deficiencies within 120 days of closing.

e.   Participating Lenders should submit corrective/missing documentation
     (exceptions) to U. S. Bank as soon as possible.  Documentation submitted
     to clear an exception must include a fax cover sheet, for each loan, clearly
     indicating the U. S. Bank loan number.

f.   Once all deficiencies have been resolved, U. S. Bank will then purchase the
     loan.

g.   A late fee of $50.00 per loan will be assessed if final, recorded documents
     are not received within 120 days of loan purchase.  Final recorded
     documents should be sent to:

     U.S. Bank Home Mortgage
     17500 Rockside Road
     Bedford, OH 44146
     Attn: Document Control

3.  Repurchase.

CHFA will enforce its repurchase policies in the event of any loan document
deficiencies or loans that have been determined by the Servicer or GNMA to be a
Non-Qualifying Mortgage Loan."Non-Qualifying Mortgage Loan" shall mean any
Mortgage loan received or serviced by U.S. Bank Home Mortgage with respect to
which:

   a.  The Participating Lender fails to deliver to U.S. Bank Home Mortgage all
       documents of the first mortgage loan file (described in the U.S. Bank
       Lender Guide and the CHFA Operating Manual) on a timely basis or U.S.
       Bank Home Mortgage determines that such documentation for Mortgage
       Loans does not conform to the requirements of the Program, the GNMA
       Guide, or the U.S. Bank Lender Guide and CHFA Operating Manual.

   b.  GNMA or U.S. Bank Home Mortgage determines that the Mortgage Loan
       is not of acceptable quality or is not eligible for sale under the Program, or
       the GNMA Guide, or the Lender guide or the CHFA Operating Manual.

"Repurchase Price," with respect to a Mortgage Loan to be repurchased from U.S.
Bank by CHFA, is defined as the payment of: (i) 100% of the unpaid principal
balance of Mortgage Loan plus (ii) any accrued and unpaid interest at the annual
rate borne by the Mortgage Notes due and payable to GNMA upon purchasing out
of the pool or to the date of repurchase if not purchasing out of a pool plus, (iii) the
aggregate amount of any advances made by or on account of U.S. Bank for the
Mortgage Loan, (iv) any attorney's fees, legal expenses, court costs or other
expenses which may have been incurred or expended by U.S. Bank in connection
with said Mortgage Loan, and (v) any fees charged U.S. Bank by GNMA for
repurchase or withdrawal of the Mortgage Loan out of the applicable pool, plus
(vi) the amortized servicing acquisition fee due if repurchased within seven years
(Service Release Premium-SRP) paid by U.S. Bank with respect to said Mortgage
Loan, less any amounts paid by CHFA. The Participating Lender will reimburse
CHFA for all costs incurred as the result of the repurchase.

4.  Lender Costs and Fees.

a.  If any Mortgage Loan is prepaid in full within three months following the date of
    purchase by U.S. Bank Home Mortgage, from the Participating Lender, CHFA
    shall refund to the U.S. Bank Home Mortgage all service released premiums with
    respect to that mortgage loan. The Participating Lender must reimburse CHFA
    for the refund of the service released premiums.

b.  U.S. Bank shall have the right to deduct any penalties, fees, taxes or other charges
    or obligations of any kind owed by the Participating Lender to the Servicer from
    the amount to be paid for any Mortgage Loan purchased by the Servicer from the

**Participating Lender hereunder.  U.S. Bank  will notify CHFA via e-mail at the
time of the deduction.**

c.  If any mortgage loan, underwritten by the Participating Lender, becomes delinquent for any of the first three scheduled monthly payments due to the U.S. Bank Home Mortgage and the loan is securitized, and is not brought current by the borrower within 90 days of delinquency, CHFA shall refund to U.S. Bank Home Mortgage all service release premiums paid by the U.S. Bank Home Mortgage  with respect to that Mortgage Loan plus an additional fee of $3,000. The Participating Lender will be responsible to reimburse CHFA for the amount of the service release premium as well as the additional $3,000 fee incurred by CHFA as a result of the Mortgage delinquency.

5.  Escrows.

   a.  <u>Mortgage Insurance Escrows - FHA Insured Loans</u> - No monthly FHA premiums should be collected at closing for deposit into the escrow account (in compliance with RESPA), however, Participating Lender is responsible to collect and remit any upfront FHA premium due to HUD and provide proof of such remittance with closing package. In addition, Lender must advise borrower that first payment will include monthly FHA premium.

   b.  <u>Tax Escrows</u> – Two months tax reserves should be collected for all tax escrow items. All taxes due within 30 days of closing must be paid at the closing and a paid receipt provided with the original package. Tax escrows should only be established for real estate and fire district taxes. Escrows for other taxing authorities should not be made part of the escrow account unless it is part of the real estate tax bill (sewer and water use fees, etc).

   c.  <u>Hazard Insurance Escrows</u> - Two month's hazard insurance reserve should be collected by the Participating Lender at closing for the escrow reserves. Participating Lender will notify the borrower at closing that one month's premium will be part of the first monthly payment.

        Hazard Insurance Loss Payee Clause:
            U. S. Bank National Association, its successors and/or assigns as their interests may appear.
            c/o U. S. Bank Home Mortgage
            P. O. Box 7928
            Springfield, OH  45501-7928

6.  <u>Borrower Notification.</u>

   a.  The Participating Lender will notify the borrower that U.S. Bank Home Mortgage will be servicing the loan per the "RESPA" requirement.

   b.  The Participating Lender will notify the borrower that U.S. Bank Home Mortgage will provide monthly billing statements.  Payments are to be mailed to:

U. S. Bank Home Mortgage
P.O. Box 468002
Bedford, OH  44146-8002

Payments can also be made at:
www.usbankhomemortgage.com

Customer Service Toll Free:
1-800 240-7890
Monday – Friday (7:00 a.m. – 8:00 p.m. EST)

c.   Mortgage Servicing inquires should be directed to:
U.S. Bank Home Mortgage
Customer Communications Department
1-800 240-7890 or to the
Website at www.USBankHomeMortgage.com

d.   The Participating Lender will provide the borrowers with the initial Escrow
Account Disclosure Statement.

6.   **DAP Loan Document Delivery Requirements**

a.   A COPY of the original DAP Note must be sent to the Connecticut Housing
Investment Fund (CHIF) within 5 days of DAP loan closing

b.   The ORIGINAL DAP Note and the original, recorded DAP mortgage deed
are to be sent, within 120 days of closing, to Connecticut Housing
Investment Fund, Inc. (CHIF), 121 Tremont Street, Hartford, CT 06105.

7.   **Funding**

**General**

Upon receipt and satisfactory review by U.S. Bank Home Mortgage of required first
mortgage loan documentation described in FHA, VA and USDA checklists and if there
is a DAP 2nd mortgage, CHFA's receipt of the accurately completed Loan Purchase
Request Form (form 066), the loan(s) will be funded.

a.   **First Mortgage Funding**

All CHFA first mortgage loans will be funded by U.S. Bank Home Mortgage
after receipt by U.S. Bank Home Mortgage of complete, satisfactory
documentation. Loans will be funded by wire.  The amount funded will
include 100% of the principal amount of the loan, less tax and insurance
escrows.

b.   **DAP Second Mortgage Funding**

Upon notification from U.S. BANK HOME MORTGAGE to CHFA that the
first mortgage loan has been funded, CHFA will purchase the DAP second

loan for the full Note amount, net of prepaid interest and disburse funds via
the wiring instructions CHFA has on file for the Participating Lender,
provided CHFA has received the Loan Purchase Request Form (Form 066)
with the 2nd mortgage data section accurately completed.

## 7.4    Preparation of Mortgage Releases for loans owned by CHFA

### A. General

The Servicer of the CHFA 1st Mortgage loan (and UR Home loan, if applicable) will
prepare and execute the Release of Mortgage on behalf of CHFA.

### B. Limited Power of Attorney

CHFA gives a Limited Power of Attorney to each servicer to authorize the servicer to
release CHFA Home Mortgage loans that it services when the loans are paid in full.

### C. Standard Release for CHFA First Mortgages (and UR Home Mortgage, if applicable).

All servicers will prepare and execute the standard form Release of Mortgage as provided
by CHFA. The servicer must prepare the applicable standard release of mortgage for all
CHFA loans serviced.

### D. DAP Loans

CHIF, the servicer of DAP loans, will prepare and execute the release of mortgage on
behalf of CHFA for DAP loans.

## 7.5    Assumption of Loans

*Important note: The following guidelines do not apply for loans purchased and serviced
by U.S. Bank Home Mortgage*

### A. General,

The Participating Lender will be required to provide different supporting documentation
and to observe different procedures for assumption of Loans committed by CHFA prior to
January 1, 1982, than for Loans committed by CHFA after January 1, 1982. The first two
digits of the CHFA Loan number indicate the year of commitment for this purpose. Those
procedures are discussed separately as follows:

### B. Assumption of Loans Committed Prior to January 1, 1982.

1. PMI Loans.
   a. A PMI Loan may not be assumed without prior written approval from
      CHFA. If the assuming borrower and the Eligible Dwelling meet CHFA
      requirements in effect at the time of the assumption, approval will not be
      unreasonably withheld.

The Participating Lender shall submit a Request for Approval of Assumption together with the following forms and documents concerning the assuming borrower:

1) Mortgage Loan Submission Sheet
2) FHLMC Loan Application Form
3) FHLMC Residential Loan Appraisal
4) Credit Report
5) Verification of Income
   (a)Employment
   (b)Federal Income Tax Return (latest year)
   (c)Three most recent pay stubs
6) Copy of Purchase Agreement

c.   The assuming mortgagor will be required to execute a Loan Assumption Agreement which shall include language affirming the outstanding mortgage and promising to pay the remaining principal balance of the debt, with interest.  Said agreement shall be recorded on the land records, and the original provided to CHFA with the Participating Lender's notice of assumption.

d.   The Participating Lender may charge an assumption fee of 1% of the current outstanding balance of the Loan.

2.   **FHA Insured and VA-Guaranteed Loans.**  A loan insured by FHA or guaranteed by VA may be assumed pursuant to applicable federal requirements.

3.   **Notice.**  Notice of any assumption of mortgage shall be forwarded to CHFA.

a.   Notice of an FHA or VA assumption must include:
   (1)   Copy of recorded warranty deed and, if used, the original recorded assumption agreement
   (2)   Evidence of hazard insurance coverage

b.   Notice of a PMI assumption must include:
   (1)   Original recorded assumption agreement and copy of recorded warranty deed
   (2)   Evidence of hazard insurance coverage
   (3)   Owner-Occupancy Certificate
   (4)   Endorsement to mortgage insurance to show new borrowers
   (5)   HUD Form 1. If there is no Form 1, a copy of a signed, itemized closing statement will be acceptable.

c.   An application for CHFA mortgage insurance may be submitted in lieu of the above.

C. **Assumption of Loans Committed After January 1, 1982.**

1. **Qualifications Prior to Assumption.** No Loan may be assumed without prior written approval of CHFA. CHFA may approve an assumption of a Loan only if the assuming party qualifies as an Eligible Borrower under Section 3.1 and the property qualifies as an Eligible Dwelling under Section 3.2. In addition, disclosure and acknowledgment requirements of VA, FHA, and RD rules and regulations relating to assumption of mortgages, as applicable, must be met.

2. **Mortgage Insurance and Guaranty Restrictions.** In order to meet the requirements of Federal law relating to non-assumption of Mortgage Loans, CHFA requires provisions to be stated in all Loans which provide for acceleration of the maturity ("Due on Sale" provisions) on the sale or conveyance of the security property to a person ineligible for a CHFA Loan.

   CHFA may only approve assumptions if the following additional criteria, as applicable, are satisfied:

   a. In the case of a VA-guaranteed Loan, a copy of the veteran's consent statement, as required by 36 CFR Section 36.4306(a) and (e), must be on file with CHFA.

   b. In the case of a PMI-insured Loan, the assumption must obtain written PMI approval for the transfer of interest or obtain CHFA mortgage insurance.

   c. In the case of a RD-guaranteed loan, the assumption must obtain written RD approval to be provided to CHFA.

3. **Required Documentation.** The Participating Lender shall submit a request for assumption approval together with evidence to establish the eligibility of the borrower and of the dwelling as of the time of the assumption request to CHFA. Such evidence shall be a Loan submission package with the forms and documents required in Section 5.5.

4. **Assumption Closing**

   a. CHFA will review the eligibility of the proposed assumption and the dwelling. If acceptable, CHFA will issue written approval of assumption. The assumption closing may not take place unless the Participating Lender has received approval from CHFA.
   b. CHFA will require the following documents to be submitted with a Notice of Assumption letter from the Participating Lender subsequent to the closing:

      (1) Original assumption agreement which shall have been recorded on the land records and shall include language affirming the outstanding mortgage and a promise to pay the remaining principal balance of the debt, with interest.

(2)  Evidence of PMI Mortgage Insurance, if a PMI Loan.

(3)  Form FMHA 1980-17 with the completed assumption agreement block in the case of an RD Loan.

(4)  Participating Lender Certification.

(5)  HUD Form 1.  If there is no Form 1, a copy of a signed, itemized statement will be acceptable.

5.  Fees: The Participating Lender may charge the assumption an assumption fee of 1% of the current outstanding balance of principal for a PMI insured loan.  In the case of an FHA insured and VA Guaranteed loans, a loan insured by FHA or guaranteed by VA may be assumed pursuant to applicable federal requirements.

D.  Release of Liability.

CHFA will not release any borrower from liability following an assumption.

# SECTION 8 – DOWNPAYMENT ASSISTANCE PROGRAM

8.1    **Qualification of Participating Lenders**
8.2    **General**
8.3    **Funds Availability**
8.4    **Eligibility**
8.5    **Computation of DAP Loan Amounts**
8.6    **Application Processing**
8.7    **Loan Preparation**
8.8    **Loan Purchase**
8.9    **Servicing**
8.10   **Credit Review**
8.11   **Income**
8.12   **Co-Signers**
8.13   **Underwriting Ratios**
8.14   **Credit Reports**
8.15   **Credit Scores**
8.16   **Delinquent Credit**
8.17   **Expanded Housing and Debt Ratios Are Not Allowed**

p:\2012 operations manual final\operating manual section 8 downpayment assistance program.doc

# Section 8 - Downpayment Assistance Program
## Program Purpose

The Downpayment Assistance Program (DAP) provides financial assistance in the form of second mortgage loans to eligible first-time home buyers based on their financial needs to assist in the purchase of a one-to-four family, condominium or planned community development eligible property.

## 8.1  Qualification of Participating Lenders

All CHFA Participating Lenders and Correspondent Lenders are eligible to Participate in the DAP program.

## 8.2  General

Participating and Correspondent Lenders will be required to agree to the following terms and conditions for authorization to originate the CHFA DAP second mortgage product.

1.  Written Agreement
    Participating and Correspondent Lenders must execute a DAP Participating Lender Agreement. The Participating Lender will be required to comply with the terms of the Agreement.

2.  Termination
    CHFA may terminate a Participating or Correspondent Lender for any reason. In the event of termination CHFA will provide the Lender with written notice specifying the reason for the removal. Termination will become effective 30 days from the date of the written notice to the Lender.

3.  Training
    Prior to originating a CHFA DAP loan, the Lender will be required to send designated representatives to a CHFA DAP training class to learn the procedures for completing DAP Loan Applications and for qualifying and calculating DAP loan amounts for eligible borrowers. This class is offered **FREE** and is open to Loan Originators, Underwriters and Loan Processors.

    CHFA shall have the right to require a Participating or Correspondent Lender to attend a re-training session when deemed appropriate.

## 8.3  Funds Availability

1. Notice
   CHFA will not provide Participating Lenders with written notice of funds availability. Generally, mortgage money is available on a continuous basis. The interest rate for the DAP Loan Program including any information on specific targeted funding special initiatives will be included on the CHFA Loan Rate Sheet published on the CHFA website at www.chfa.org.

2. Funds Registration
   Participating and Correspondent Lenders shall register funds for the CHFA DAP second mortgage loan simultaneously when registering funding for the CHFA first mortgage loan program on the CHFA On-Line Reservation System. The Participating / Correspondent Lender Account Administrators will coordinate their staff access to the Reservation System that is found on the CHFA website at www.chfa.org.

## 8.4  Eligibility

1. Eligible borrowers and dwellings
   Eligibility for a CHFA DAP second mortgage loan shall follow the same criteria established for the CHFA Home Mortgage Program **statewide** except that borrower(s) may not exceed the established CHFA Home Buyer Mortgage Program income limits for the area.

   Borrower(s) purchasing an eligible dwelling in designated Targeted Area Towns or Targeted Area Census Tracts that are applying for CHFA DAP must have income that is within the established income limit for the area. The Targeted Area income limit exemption will not apply for these transactions.

   Eligible dwellings must meet all established criteria as described in (Section *3.2 A. and 3.2 B.)* of this manual.

## 8.5  Computation of DAP Loans

1. **Minimum Loan Amount**
   There is a $3,000 minimum loan amount.

2. **Maximum Loan Amount**
   a. The maximum loan amount shall not exceed twenty-five percent (25%) of the acquisition cost of an eligible dwelling, inclusive of any home buyer equity, or twenty-five percent (25%) of the value of such dwelling after rehabilitation, if greater, inclusive of home buyer equity.

    b.  Where a condominium conversion is taking place, there shall be no limit on the downpayment loan amount made to a tenant who is able to obtain a mortgage for the purchase of his or her condominium unit. The value of the unit shall be determined by the appraisal, if any, required by the first mortgage lender.  (If no such appraisal has been performed, CHFA shall require an appraisal on the property.)

    c.  In all cases, the first mortgage must be calculated using the maximum allowable loan-to-value under the first mortgage insurer's guidelines. The DAP loan amount will be the minimum amount necessary based on the borrower's financial needs.

3.    **Asset Limitation**

    a.  Qualified borrower(s) may keep up to $5,000 of their own assets.  All other liquid assets owned must be used for the downpayment and/or closing costs, with the exception of the $5,000. The $5,000 may include $1,000 of equity in real property which may be retained. The applicant(s) will only be permitted to retain his own liquid assets and will not be permitted to use DAP funds to increase his assets.

    b.  In the case of a 2-to 4-family home, applicants(s) may exceed the $5,000 limit (if necessary) in order to retain the amount necessary to maintain the three (3) months' PITI reserves required by the FHA in order to include rental income in underwriting ratios.

    c.  Closing costs may be included in the calculation of the downpayment assistance, if the borrower does not possess the assets for closing costs. Closing costs shall include the prepaids necessary to close the loan.

4.    Definition of Liquid Assets

Assets include all assets of the proposed owner occupants, spouse and all non-dependent residents of the household.

    a.  Any and all cash in checking and saving accounts; certificates of deposit (CD); or money market funds;

    b.  Monies in trustee and or/or custodial accounts listed under the social security number of the borrower(s);

    c.  Stocks, bonds and treasury bills;

    d.  Funds in any retirement plan where withdrawal is permitted for home purchase. The funds may be borrowed from the retirement plan, if permitted, in lieu of actual withdrawal, provided that any debt service payment(s) is included in the underwriting ratios calculated by the first mortgage lender if required.

Borrower(s) that are eligible for withdrawing or borrowing funds from any retirement plan for a home purchase will be required to draw down an

amount equal to 60% the vested value of the retirement plan regardless of any penalty assessment from the plan administrator. Retirement accounts with $10,000.00 or less are excluded from this requirement.

e.  Other assets which the Authority determines to be readily convertible to cash, including but not limited to, equity in vacation homes, equity in mobile homes, equity in real property, seller paid costs and Federal Income Tax refunds.

**Note:** Lenders are required to include the total amount of any borrower Tax refund received within 60 days before or 60 days after the signing of the sales contract as a liquid asset. The most recent three years tax returns are required for all CHFA loans not in a Targeted Area or Targeted census tract. (Targeted Area and Targeted Census tracts require the most recent year tax return only).

Following the tax filing deadline date in any year, (usually April 15th), borrowers will be required to provide copies of tax returns filed for the current tax year. Any loan in the CHFA pipeline that has not been committed prior to the tax deadline date will be subject to this requirement. Tax refunds disclosed on the new tax return must be included in the borrower liquid asset test calculation for DAP through June 30th of the current tax filing year.

## 8.6    **Application Processing**

1.    **Application**
The Participating Lender and borrower will complete and sign a DAP Loan Application and Asset Qualification Form. This form serves the dual purpose of a mortgage loan application and a calculation worksheet for the maximum DAP loan amount necessary based on the borrower's needs for downpayment and/or closing cost assistance.

2.    **DAP Borrower's Certificate**
The Participating Lender will provide and the borrower shall complete and execute a DAP Borrower's Certificate.

3.    **Counseling**
At least one borrower listed on the DAP loan application must attend a homebuyer education class facilitated by a CHFA approved Homebuyer Education Counselor. The design of the course curriculum must include a minimum of 3 hours of class instruction. The lender must advise the borrower of his/her responsibility to attend one of these classes and provide him/her with a copy of the CHFA sponsored counseling session classes or the names of other CHFA approved counseling providers. The CHFA sponsored schedule can be found on the CHFA website at www.chfa.org.

4. **Underwriting**

The Authority will underwrite CHFA Downpayment Assistance Program loans in accordance with underwriting criteria established by the Authority and as described in this section of CHFA's Home Mortgage Programs Operating Manual. First mortgages underwritten in conjunction with DAP are subject to the same underwriting criteria as described herein.

## 8.7   Loan Preparation

1. Terms and Conditions

   The term of the DAP loan shall be the same as the term of the first mortgage loan. If the homebuyer assigns, transfers, or otherwise conveys his/her interest in the dwelling or ceases to occupy the dwelling, the unpaid principal balance of the loan shall become due and payable.

2. Loan Amount

   The DAP loan amount will be the minimum amount necessary based upon borrower's financial needs in the purchase of an eligible dwelling.

3. Interest Rate

   The interest rate for the DAP Second Mortgage Loan Program shall be listed on the CHFA Interest Rate Sheet published on the CHFA website at www.chfa.org. CHFA reserves the right to provide a sliding scale interest rate based on the eligible borrower's income under CHFA's Homeownership Program for any CHFA designated Special Program Initiative. The maximum DAP interest rate will be capped at 6.00%.

4. Fees

   The Participating/Correspondent Lender may charge an origination fee of $200 which is retained by the Lender.

5. Prepayment Penalty

   There is no prepayment penalty.

6. Late Charge

   There is a $5 late charge for each monthly installment paid more than 15 days after the due date.

7. Insurance

   The Participating Lender will provide evidence of hazard insurance naming the Connecticut Housing Finance Authority as the insured on the second mortgage. The second mortgage clause should read:

Connecticut Housing Finance Authority, Its successors and/or assigns, as their
interest may appear, Connecticut Housing Investment Fund, 121 Tremont Street,
Hartford, CT 06105.

## 8.8    Loan Purchase

1. Scheduling
   Participating Lenders are expected to close DAP loans in accordance with their
   established practices (see CHFA Operating Manual (Section *7.1A*). The closing of
   the CHFA first mortgage and the DAP second mortgage will be scheduled
   concurrently.

2. Loan Purchase Procedure
   The Participating Lender shall follow (Section 7) of the Operating Manual. The
   CHFA first and DAP second mortgages will be purchased concurrently. CHFA
   will purchase the DAP second mortgage, less the prepaid interest.

3. Documentation
   The following documentation will be required to be submitted to CHFA within 5
   days of the loan closing:

   a.    Copy of the signed Note (Form DAP95-07)

   The original signed Note and the recorded Mortgage Deed must be submitted to
   the Connecticut Housing Investment Fund (CHIF), Loan Servicing Department,
   121 Tremont Street, Hartford, CT 06105 within 120 days of the loan closing.

## 8.9    Servicing

The servicing of the CHFA DAP second mortgage loan will be released to a CHFA
assigned third party servicer, currently the Connecticut Housing Investment Fund,
(CHIF); however, each CHFA DAP second mortgage loan commitment will list the
servicer assigned to that loan and the necessary instructions to set up the release of
servicing.

Loan servicing will be assigned to:

**Connecticut Housing Investment Fund (CHIF)**

The following documents will be required to be faxed or delivered overnight to the
servicing lender within 24 hours of loan purchase:

1. A copy of the signed second mortgage note;

2. HUD Form 1 Settlement Statement;

3.  The declaration page of the mortgagor's homeowners insurance policy and paid receipt with the proper second mortgage clause;

4.  A copy of Form W-9, Request for Taxpayer Identification Number and Certification.

## 8.10  Credit Review

### Evaluation
The Participating Lender is responsible for evaluating applicants for CHFA Loans. Evaluation of creditworthiness must be done on a case-by-case basis, but standards for determining income shall be applied to each applicant in the same manner.

## 8.11  Income

### Restricted Use of Income from Overtime and Part Time Employment
*Income used to calculate housing and debt ratios will be limited to a total of 60-hours of income from either full-time employment combined with over-time earnings; or full-time employment combined with part-time employment earnings.*

1.  Aggregate family income (gross income) shall include income from whatever source derived, including without limitation, regular earnings; part-time earnings; unemployment compensation; bonuses; dividends; interest (except on funds which will be used for downpayment and closing costs); commissions; military allowances; welfare payments; disability payments; pension, annuity, retirement and social security benefits; and reimbursement for services in military reserve or National Guard. Overtime income, whether or not guaranteed by an employer, shall be included unless of short duration and of a temporary nature.

2.  Generally, unemployment compensation is not to be considered as part of income in determining whether the borrower has the ability to repay the Loan. CHFA reserves the right to consider unemployment compensation as acceptable qualifying income when:

    a.  The Eligible Borrower is employed in a seasonal occupation and receives unemployment compensation in "off season" periods;
        b.  the Eligible Borrower's employer schedules mandatory "shut-downs" or
    furloughs on a recurring basis and provides unemployment compensation benefits to eligible employees;

    VA educational benefits are not to be considered part of income in determining whether the borrower has the ability to repay the loan.

3. Income from full or part-time employment and from all proposed owner-occupants including all adult(s) (other than full-time students) will be included in the total aggregate family income at the annualized earnings rate at the time of application and at the time of closing of the mortgage. Any adult that will occupy the residence and <u>is</u> related to the Eligible Borrower(s) must be included. The prior annualized income of said persons will be included in the aggregate family income (for purposes of eligibility under Section *3.1B.*) if said Eligible Borrower or occupant has been employed during the ninety (90) days prior to the date of application. The date of termination of employment must be documented. Income from <u>non-related adult</u> persons who are not co-borrowers on the mortgage application and will not be an owner occupant will not be considered.

4. Eligible Borrower(s) will be required to notify CHFA of the existence of a <u>non-related adult</u> person that will occupy the property within 90 days of the mortgage loan closing. The Eligible Borrower must certify to CHFA that the non-related adult is not a permanent boarder and the Eligible Borrower will not receive any boarder income from the non-related adult during their occupancy in the property.

5. A divorced person shall submit a copy of the decree of dissolution of marriage as proof of such status. A person who is separated from a spouse will be treated for income limit purposes as being married, unless such person submits evidence of separation for more than three years or a judicial decree of separation dated prior to the date of application. An applicant's fiancé will be considered part of the family unit regardless of the proposed marriage date. In order for an unborn child to be considered a member of the family in determining the number of family members for income limit purposes, proof of pregnancy must be provided to CHFA. A doctor's certificate is sufficient proof.

6. In cases where the applicant is self-employed, or one of the principal owners of a business, the applicant's Schedule C from the applicant's two most recent federal income tax returns or the business income tax return will be used, without adjustment, to determine the income for purposes of eligibility. Self-employment or investment losses and employee expenses on **Form 2106** will not be reflected for purposes of eligibility under (Section *3.1B*), but will be reflected for underwriting ratios.

7. Bonus and/or commission income may not be included as qualifying income unless the borrower has a documented 2-year history of receiving income from either of these sources.

8. CHFA will accept **FHA, RD, VA or PMI** guidelines for the percentage (%) of the fair market income from all rental units in an Eligible Dwelling of two to four units to be included in total gross income for underwriting purposes.

9. Prospective rental income from boarders in a one-family Eligible Dwelling is not included in total gross income of the applicant for underwriting purposes. Where the <u>boarder is a relative</u> of the applicant, and has lived with, and paid rent to, the applicant for at least the 12-months immediately preceding the application, then the boarder's total gross income shall generally be included in the applicant's aggregate family income for the purposes of underwriting and the applicable CHFA income limit.

10. Alimony, child support or maintenance payments are to be included in income only to the extent that they are likely to be consistently made. Factors which the Participating Lender should consider in determining the likelihood of consistent payments include, but are not limited to:

    a. whether the payments are received pursuant to a written agreement or court decree,

    b.  the length of time the payments have been received,

    c. the regularity of receipt,

    d. the availability of procedures to compel payment,

    e. whether full or partial payments have been made,

    f.  the age of the child, and

    g. the creditworthiness of the oblige, including the credit history of the oblige where available to the Participating Lender under the Fair Credit Reporting Act or other applicable laws.

The participating Lender will submit to CHFA evidence adequate to support its determination.

11. Income must be supported by copies of the borrower's federal income tax returns in accordance with Section *3.1C.4* and copies of the three most recent pay stubs of the applicant and of all other non-dependent wage earners under Section *5.1.B.2*. The prospective Eligible Borrower must demonstrate stability of income from all sources. Such wage and employment verification shall be obtained from the applicant's employer.

## 8.12  <u>CO-SIGNORS</u>

Co-signors or guarantors are not permitted on a Loan.

### 8.13   UNDERWRITING RATIOS - *(NO EXCEPTIONS ALLOWED)*

1. **Monthly Housing Expense-to-Income Ratio** - CHFA will require that the monthly housing expense ratio (principal, interest, taxes, insurance, [PITI] including payment on downpayment assistance loans, along with any other applicable housing expenses required to be paid in accordance with the Loan terms) be less than or equal to 33% of the borrower's gross monthly income.

2. If the applicant is purchasing a condominium or Planned Unit Development (PUD), the periodic condominium common charges i.e. Home Owner Association or HOA fees or PUD fees to cover operating charges (excluding heat) and maintenance costs and reserves must be included in the monthly housing expense.

3. **Monthly Debt Payment-to-Income-Ratio** - CHFA will require that the total amount of monthly housing expense plus all other monthly payments on installment loans, student loans, revolving credit debts does not exceed 43% of the borrower's gross monthly income.

4. Reserve requirements for 2-4 family properties- Any borrower purchasing a 2-4 unit property who is obtaining Dap must have 3-months reserves PITI requirements. The funds needed to meet the reserve requirements will not be included in the $5,000 asset test for DAP.

5. The Participating Lender must determine that the applicants housing payments plus other obligations do not constitute an undue strain on the applicant's ability to make all such payments promptly and that a credit reputation is evidenced which would be acceptable to a prudent institutional lender. Payment shock should be considered when submitting a loan for downpayment assistance.

### 8.14   CREDIT REPORTS

CHFA requires all credit reports to be in the form acceptable to the mortgage insurers. Additional credit information normally used by a Participating Lender in underwriting evaluation must also be submitted to CHFA with the Loan submissions. In addition:

1. A history of slow payments on previous indebtedness must be explained satisfactorily.

2. Frequent changes in employment or residence within the past five years must be explained satisfactorily.

### 8.15  CREDIT SCORES

CHFA is not a "credit score" driven program. CHFA will accept applications from Eligible Borrowers for mortgage loan financing regardless of credit score, with

traditional or nontraditional credit references. Additional documentation may be required when there is a history of slow payments, collections, judgments, or otherwise delinquent accounts.

Participating Lenders submitting Loan applications with FHA, RD, VA or PMI insurance are required to follow the Credit Score Guidelines of the insurer and may not submit a loan application to CHFA that is noncompliant with the insurer criteria. The Participating Lender will be required to repurchase a loan if it is rejected by the insurer for noncompliance.

## 8.16    DELINQUENT CREDIT

The Participating Lender must include a signed and dated written credit explanation from the borrower for all Loans submitted with credit reports that show delinquencies of 60-days or more in the most recent 12 month period regardless of Automated Underwriting System (AUS) or FHA Total-Scorecard findings.

1. Major indications of derogatory credit – including judgments, collections, and other recent credit problems require satisfactory signed and dated written explanations from the borrower.

2. CHFA DAP loans **will** require proof of payoff of all outstanding collection accounts with the exception of medical accounts.

3. CHFA will continue to require payment of all outstanding judgment accounts without exception.

4. Bankruptcy-Applicants with a reported discharged bankruptcy are eligible for DAP providing that five years have passed from the discharge date and the following information is provided:
   a. the Eligible Borrower must provide a signed and dated written credit explanation for the bankruptcy;
   b. the Eligible Borrower has re-established traditional credit history ;( Non-traditional not allowed)
   c. re-established credit history shows **on-time** payments for the most recent 12 month period;
   d. the debt ratios are conforming and do not exceed 33%/43%
   e. the Eligible Borrower meets all other CHFA program eligibility and underwriting criteria

## 8.17    EXPANDED HOUSING AND DEBT RATIOS ARE NOT ALLOWED

CHFA will not consider compensating factors for eligible borrower(s) with debt ratios that exceed the maximum CHFA acceptable limits of 33% for the monthly housing expense-to-income ratio and 43% for the monthly debt payment-to-income ratio.

1.    **Submission for CHFA Review**
    CHFA underwriters will review each DAP loan submission concurrently with the first mortgage loan package. CHFA will make the final determination of the borrower's eligibility for the program and may adjust the DAP loan request. If the loan is acceptable, CHFA will issue a written loan commitment for loan purchase.

2.    **Documentation**
    The following DAP documentation shall be submitted for review with each first mortgage loan package:
    a. DAP Application and Asset Qualification Form
    b. DAP Borrower's Certificate
    c. Copy of the good faith estimate of closing cost for the first and second mortgages.
    d. Copy of Counseling Certificate from CHFA sponsored class or other approved counseling.

# <u>SECTION 9 – GLOSSARY OF TERMS</u>

## SECTION 9 – Glossary of Terms

As used in this Manual, the following words and terms have the meanings set forth
below:

**Acquisition Cost:** Means the cost of acquiring the eligible dwelling from the Seller as a
completed residence.  Usual and reasonable settlement or financing costs are not
included.

**Act:** Title 8, Chapter 134 of the Connecticut General Statutes, as amended, and the
procedures of the Authority adopted hereto.

**Area of Chronic Economic Distress:**  An area designated as such by the State and
approved by the Federal Secretaries of the Treasury and Housing and Urban
Development in accordance with criteria established under the Code.

**Bonds:** Bonds issued by CHFA to finance its Home Mortgage Purchase Program.

**CHFA:** Connecticut Housing Finance Authority

**CHIF:** Connecticut Housing Investment Fund, Inc.

**Code:** The Internal Revenue Code of 1986, as amended and rulings and regulations
thereunder.

**Commitment:** A written obligation to purchase a Loan in the amount and upon terms
specified, issued by CHFA after review and acceptance of the Loan submission
documents submitted to CHFA from a Participating Lender.

**DAP 2nd Mortgage:** State of Connecticut 2nd Mortgage Downpayment Assistance
Program (DAP) to eligible homebuyers in conjunction with a CHFA 1st mortgage.

**Eligible Borrower:** Any person meeting the requirements set forth in Section 3.1 of this
Manual.

**Eligible Dwelling:** Any residential structure which meets the requirements set forth in
Section 3.2 of this Manual.

**Escrow Payments:**  Any payments made by and Eligible Borrower to a Participating
Lender or Servicer, pursuant to the terms of a Loan on account of or with respect to:
taxes, assessments, insurance or similar charges or premiums.

**Family Size:** The number of persons in the family unit of an applicant for a CHFA Mortgage Loan including all proposed owner-occupants, all other proposed residents who are related to them, and all other persons who will occupy the residence after closing.

**FHA:** Federal Housing Administration, aka HUD (Housing and Urban Development)

**FHLMC:** Federal Home Loan Mortgage Corporation, aka Freddie Mac.

**FNMA:** Federal national Mortgage Association, aka Fannie Mae

**Home Mortgage Servicing Agreement:** The agreement between CHFA and a Servicer pursuant to which Loans are serviced.

**Homeownership Program:** These are lower interest rate first mortgages specifically for residents of government-subsidized rental housing who want to purchase a home.

**Household Income:** Total aggregate household income (gross income) of the proposed owner occupant(s), and all other non-dependent resident members of the household.

**Loan or Mortgage Loan:** A loan to an Eligible to finance the purchase or refinance of an Eligible Dwelling which meets the CHFA guidelines set forth in this Manual.

**Master Commitment Agreement for Mortgage Purchases:** The agreement between CHFA and a Participating Lender which defines requirements, obligations, and rights pertaining to the issuance of a Commitment and the purchase of a loan by CHFA.

**Missing Exhibits Letter:** A letter from CHFA to the Participating Lender suspending further processing of an application until missing exhibits documentation or other action specified in letter are received, corrected or clarified.

**Newly-Constructed Homes:** Are homes never occupied prior to CHFA loan commitment.

**Non-Qualified Rehabilitation:** Rehabilitation meeting the criteria specified in Section 4 of this Manual even though it does not meet Federal criteria for Qualified Rehabilitation.

**Owner-Occupancy or Owner-Occupied:** The statutory requirement that each Eligible Borrower live in the Eligible Dwelling as a principal residence (i.e., permanent and primary residence).

**Participating Lender:** Any institution which is licensed to do business in the State, legally authorized to make mortgage loans of the general character of mortgage Loans, which meets the qualifications for Participating Lender as set forth in this Manual, has been approved by CHFA, and has entered into a Master Commitment Agreement for Mortgage Purchases.
**Program:** The Authority's Home Mortgage Purchase Program.

**Prior Homeowner:** A borrower who owns or has owned a home within three years preceding the date of application.

**Private Mortgage Insurance Company or PMI:** Any insurance company licensed to do business in the State of Connecticut, authorized to issue mortgage insurance, and approved by CHFA.

**Qualified Census Tract:** A census tract in which 70% or more of the families have a median income of 80% or less of the statewide median family income.

**Qualified Rehabilitation:** An existing 1-4 family home eligible for rehabilitation refinancing, see Section 4 of this Manual.

**Qualifying Income:** Amount of gross monthly income used to calculate Eligible Borrower(s) capacity to repay the mortgage loan debt. All sources of income i.e. base salary; overtime; bonuses; commission; dividend/interest; Social Security; Disability, etc. will be included in the income calculation.

**RD:** Rural Development, aka USDA (United States Department of Agriculture) or RDA

**Rehabilitation Mortgage Loan:** First mortgages for both first-time homebuyers who wish to purchase and rehabilitate a home and for existing homeowners who wish to keep and rehabilitate their present home.

**Seller:** The seller of the Eligible Dwelling to the Eligible Borrower.

**Servicer:** A participating Lender or designated servicer, approved by CHFA, which has executed a Home Mortgage Servicing Agreement.

**State:** The State of Connecticut

**Targeted Area:** An area which is either a Qualified Census Tract or in an Area of Chronic Economic Distress. Targeted Areas recognized by CHFA are listed in Section 10.

**VA:** Veterans Administration of the United States of America.

# SECTION 10 – FORMS

# CONTENTS

***(Documents are listed in alphabetical order; some special program forms have been identified for easy reference)***

1. Approval of Assumption
2. Assumption Agreement_Sample
3. Borrower Certificate
4. Closed Loan Document Checklist
5. Closed Loan Document Checklist (GNMA)
6. Downpayment Assistance Program (DAP) Application for DAP Downpayment and Closing Cost
7. Downpayment Assistance Program (DAP) Application for Downpayment Only
8. Downpayment Assistance Program (DAP) Borrower's Certificate
9. Downpayment Assistance Program (DAP) Participating Lender Agreement
10. Downpayment Assistance Program (DAP) Release of DAP Mortgage
11. Downpayment Assistance Program (DAP) Second Mortgage Deed
12. Downpayment Assistance Program (DAP) Second Mortgage Note
13. Gift Letter_Sample
14. Homeowner's Equity Recovery Opportunity Loan Program (HERO) Declaration of Restrictive Covenants
15. Homeowner's Equity Recovery Opportunity Loan Program (HERO) Deed Restriction Disclosure
16. Homeowner's Equity Recovery Opportunity Loan Program (HERO) Homeowners Certification
17. Landlords Verification of Tenants Address_ Homeownership Program
18. Limited Document Program Processing Checklist
19. Loan Purchase Request Form
20. Method to Compute Recapture Tax Notice
21. Mobile Home Loan Criteria Worksheet
22. Mortgage Loan Submission Sheet
23. Mortgage Modification Agreement_Sample
24. Notice of Potential Recapture Tax
25. Participating Lender Certification
26. Police Eligibility Letter_Sample
27. Processing Checklist and File Submission Order
28. Recapture Tax Threshold Income Limits
29. Rehabilitation Borrower's Loan Certificate
30. Rehabilitation Contractor's Certificate
31. Rehabilitation Participating Lender Loan Certificate
32. Satisfactory Completion Certificate
33. Statement of Eligibility for Participation in the CHFA Teachers Mortgage Program
34. Tax-Exempt Financing Rider
35. Telephone Verification of Employment_Sample
36. Understanding Recapture Tax
37. Uniform Mortgage Rider/Owner-Occupancy Certificate

# CONTENTS (continued)

38. Urban Rehabilitation Homeownership (UR Home) Application Sheet
39. Urban Rehabilitation Homeownership (UR Home) Homebuyer Submittal
40. Urban Rehabilitation Homeownership (UR Home) Mortgage Deed
41. Urban Rehabilitation Homeownership (UR Home) Mortgage Release
42. Urban Rehabilitation Homeownership (UR Home) Note
43. Urban Rehabilitation Homeownership (UR Home) Rider
44. Urban Rehabilitation Homeownership (UR Home)  Servicing Notification
45. Veteran's Statement  re: Due on Sale_Sample

This Section contains forms prepared by CHFA for use in originating and processing Mortgage Loans. The Participating Lender is responsible for obtaining or reproducing the forms. CHFA forms may not be changed or altered without prior written approval.

# CHFA DOCUMENTS

1. **Approval of Assumption** – CHFA Form 035-1195: This form approves the assumption of a CHFA Mortgage.

2. **Assumption Agreement - Sample** – CHFA Form036-1195: This is a sample Assumption Agreement for review.

3. **Borrower Certificate** – CHFA Form 014-1107: CHFA Disclosure Document required to be signed by Borrower(s) to certify that both the borrower and the home that is being purchased meet the eligibility requirements for a CHFA loan.

4. **Closed Loan Document Checklist** – No Form Number - this form lists the documents that must be submitted to CHFA, CHIF, or retained by a service –retained or service-released Lender when a loan is closed.

5. **Closed Loan Documentation Checklist (GNMA)** – No Form Number: This form list the DAP document that must be submitted to CHFA's Finance Department when a GNMA first loan is closed.

6. **Downpayment Assistance Program (DAP) Application for DAP Downpayment and Closing Costs** – CHFA Form DAPappcc: This is the DAP application for down payment assistance and closing costs.

7. **Downpayment Assistance Program (DAP) Application for Downpayment ONLY** - CHFA Form DAPappONLY: This is the DAP application for down payment assistance only.

8. **Downpayment Assistance Program (DAP) Borrower's Certificate** – This is a CHFA DAP disclosure document that must be completed at application. The borrower(s) are required to certify understanding of each statement relative to the terms of receiving the DAP Second Mortgage Loan.

9. **Downpayment Assistance Program (DAP) Participating Lender Agreement** – CHFA Form DAP06PLA: This is the contract that is signed by the Participating Lenders and CHFA who are approved to originate the CHFA Downpayment Assistance Program.

10. **Downpayment Assistance Program (DAP) Release of DAP Mortgage** – CHFA Form DAP: This is the legal document that must be completed to release and discharge a borrower from a DAP mortgage obligation.

11. **Downpayment Assistance Program (DAP) Second Mortgage Deed** - CHFA Form DAP08MD 1199: This is the second mortgage deed for the CHFA Downpayment Assistance Program.

12. **Downpayment Assistance Program (DAP) Second Mortgage Note** – CHFA Form DAP07NOT 1199: This is the second mortgage note for the CHFA Downpayment Assistance Program.

13. **Gift Letter - Sample** – CHFA Form 022-1195: This is a required document to certify the source of funds for a monetary gift made to a CHFA Borrower that will be applied towards the cost of acquisition of the property. This document must be signed by both the donor and the depository bank to verify the funds. Participating Lenders may use a standard bank Gift Letter that meets all of the conditions referenced above in lieu of this form.

14. **Homeowner's Equity Recovery Opportunity Loan Program (HERO) Declaration of Restrictive Covenants** – No Form Number: This document certifies the borrower's acknowledgment of the owner-occupancy, sale or transfer of the property rights stipulated by the terms and conditions of the HERO loan Program(s).

15. **Homeowner's Equity Recovery Opportunity Loan Program (HERO) Deed Restriction Disclosure** – CHFA Form 001-1110HERO: No Form Number - This disclosure document certifies the borrower's acknowledgement of the terms of the deed restriction that will be placed on the property when the HERO loan is closed.

16. **Homeowner's Equity Recovery Opportunity Loan Program (HERO) Homeowners Certification** – CHFA Form 002110HERO: This document must be completed by existing homeowner's who maintain an ownership interest in any other real estate at the time of closing on the new property that is being financed under the HERO loan Program.

17. **Landlord's Verification of Tenant's Address - Homeownership Program** - CHFA Form 060-1005: This document must be completed by a State of Connecticut Department of Housing staff authorized to confirm a borrower's residence and rental of Public Housing.

18. **Limited Documentation Program Processing Checklist** - CHFA Form 009A-0808: *This form may only be used for loans that meet the Limited Documentation eligibility criteria.* This checklist details the mortgage insurance type, standard-CHFA and product-specific CHFA loan documentation in the order they must be presented in a loan package with Limited Documentation.

19. **Loan Purchase Request Form** – CHFA Form 066-0408: This form must be completed by the Lender and faxed to the CHFA Finance Department to request Purchase (funding) for closed CHFA 1st and 2nd mortgage loans.

20. **Method to Compute Recapture Tax Notice** – CHFA Form 052-1195: This is a sample of the <u>Notice to Mortgagor of Maximum Recapture Tax and Method to Compute Tax on Sale of Home</u> document that is generated with each CHFA Mortgage Loan Commitment to Purchase document that must be signed and dated by the borrower(s) at the loan closing. This form provides the borrower with legal notice of the maximum Recapture Tax due upon the sale of the home during the Recapture Tax period.

21. **Mobile Manufactured Home Financing Criteria Worksheet** – No Form Number - This worksheet is used to help individuals and CHFA determine borrower eligibility for the CHFA Mobile Home loan program.

22. **Mortgage Loan Submission Sheet** – CHFA Form 023-0900: This is the cover sheet for the loan package that the Lender will be submitted to CHFA for review. All sections of this document must be completed.

23. **Mortgage Modification Agreement and Instructions - Sample** – CHFA Form 033-1199P1 and 033-1199P2: These two forms provide a suggested format and procedure for modifying a mortgage deed along with a sample mortgage modification agreement format review.

24. **Notice of Potential Recapture Tax** – CHFA Form 051-0597: This is CHFA Disclosure document that advises the borrower of the reason for the Recapture Tax provision and the conditions under which it will be applicable.

25. **Participating Lender Certification** – CHFA Form 019-1101: This document is signed by the lender after the loan closing to certify that the Lender has faithfully executed all of the duties of the Lender's role. This document must be submitted to CHFA.

26. **Police Eligibility Letter - Sample** – No Form Number - This is a sample of the format and language that may be duplicated by a public safety official to certify a Police Officer's eligibility to receive CHFA mortgage loan financing under the terms and conditions of the Police Mortgage Assistance Program.

27. **Processing Checklist and File Submission Order** – CHFA From 009-1107: This checklist details the mortgage insurance type, standard-CHFA and product-specific CHFA loan documents in the order they must be presented in the loan application package submitted to CHFA for processing.

28. **Recapture Tax Threshold Income Limits** – CHFA Form 048-0405: This chart lists the threshold income limits for recapture tax liability based on the geographic location of the home and the number of years of ownership. **(This form has not been revised since 07/2006 – needs to be updated)**

29. **Rehabilitation Borrower's Loan Certification** – CHFA Form 020B-1199: This document signed by the borrower of a Rehabilitation loan certifies his intention to own

and occupy the home either 60 days after the completion of the home rehabilitation or, at a maximum; one year from the date of the loan closing.

30. **Rehabilitation Loan Program Contractor's Certificate** – This document is signed by the contractor to certify their compliance with the terms and conditions of the scope of work allowed and the workmanship on the project.

31. **Rehabilitation Participating Lender Loan Certification** – CHFA Form 020A-1199: This document is signed by the Lender at the closing of a Rehabilitation loan to certify that the eligibility requirements of the loan program have been met.

32. **Satisfactory Completion Certificate** – CHFA Form 055-1199: This form is signed by the appraiser to certify that repairs required after the first appraisal have been completed.

33. **Statement of Eligibility for Participation in the CHFA Teachers Mortgage Program** – No Form Number - This document must be completed by an authorized agent of the school system to certify Teachers eligibility to received CHFA mortgage loan financing under the terms and conditions of the Teachers Mortgage Assistance Program. (This document is revised on an annual basis and will be published on the CHFA website at www.chfa.org).

34. **Tax-Exempt Financing Rider** – CHFA Form 053-1199: This document is signed by the borrower at closing to certify the borrower's promise to comply with the special requirements of having a mortgage financed with proceeds from the sale of Tax Exempt Bonds.

35. **Telephone Verification of Employment - Sample** – CHFA Form 057-1195: This is a sample of the minimum information that must be provided when a Lender verifies a borrower's employment over the phone.

36. **Understanding Recapture Tax** – CHFA Form 050-0597: This is a CHFA Disclosure document that the Lender is required to present to a potential CHFA borrower at the time of application to certify the applicant has been informed of the potential Recapture Tax liability associated with CHFA mortgage loan financing.

37. **Uniform Mortgage Rider / Owner-Occupancy Certificate** – CHFA Form 025-0300: This contract rider supplements the CHFA mortgage and certifies the owner-occupancy intention of the borrower.

38. **Urban Rehabilitation Homeownership (UR Home) Application Cover Sheet** – No Form Number – This document identifies the contractor and the eligible repairs to be made to the subject property. This document must be included in the loan package submitted to CHFA for processing.

39. **Urban Rehabilitation Homeownership (UR Home) Homebuyer Submittal** – No Form Number – This form must be completed by the borrower and submitted to the Lender with all required documentation.

40. **Urban Rehabilitation Homeownership (UR Home) Mortgage Deed** – No Form Number – This is the UR Home Mortgage Deed that must be executed at closing.

41. **Urban Rehabilitation Homeownership (UR Home) Mortgage Release** – No Form Number – This is the legal document that releases and discharges a borrower from the UR Home mortgage obligation.

42. **Urban Rehabilitation Homeownership (UR Home) Note** – This is the URHome Loan Note that must be executed at closing.

43. **Urban Rehabilitation Homeownership (UR Home) Mortgage Rider** – This document must be executed at closing to certify borrowers acknowledgment of the terms and conditions of the UR Home Loan.

44. **Urban Rehabilitation Homeownership (UR Home) Servicing Notification** – No Form Number – This document provides the Lender with the name of the Loan Servicer that must receive the UR Home Loan closed package for servicing. *(This form needs to be revised as it still references Countrywide)*

45. **Veteran's Statement re: Due on Sale - Sample**– CHFA Form 018-0296: This document, including relevant VA regulations, is signed by a U.S. Veteran-borrower at the loan closing to acknowledge his risk of foreclosure should he sell his home to an unapproved buyer.

# CHFA
## Home Mortgage Programs Operating Manual - Delinquency & Foreclosure Reporting Supplement (Revision 2)



Created: 1/18/05
Revision 2: 6/6/07

*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# Table of Contents

Law Firm Selection ............................................................................(1)

Claims Submission and Expense Reimbursement ...........................................(2)

90 Days or More Delinquency Reporting ......................................................(3)

90 Day Delinquency Form.......................................................................(4)

Code Translation Table Form ..................................................................(5)

Foreclosure Initiation/Action Notification Reporting........................................(6)

CHFA Foreclosure Approval Initiation/Action Notification ................................(7)

Additional Changes to Current Requirements................................................(8)

Safekeeping of Authority Documents........................................................ (10)

CHFA Delinquency Intervention Counseling Program ................................... (11)

Sample Reporting Stream....................................................................... (12)



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## Law Firm Selection

(1)

Effective October 1, 2005, the servicer will hire a law firm to represent the Authority's interests regarding collection and/or foreclosure of delinquent single family mortgages.

***Attorney's fees are allowed in accordance with the current HUD schedule of allowable attorney fees.***

Servicers are required to monitor the performance of the hired law firms and are responsible for all issues regarding representation.



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## Claims Submission and Expense Reimbursement                      (2)

- Servicers will use CHFA's mortgagee number for the filing of HUD claims, list CHFA as the Payee for all PMI claims, list CHFA as the Holder for all VA claims and provide CHFA copies of all claims at the point of submission to the insurer.
- CHFA will wire* to the Servicer, within 2 business days after its receipt, expense reimbursement proceeds including debenture interest (in the case of HUD insured loans).  In the event of HUD curtailment of amounts owed CHFA:
  - Servicer shall, **within 10 business days of this receipt** from CHFA remit such curtailed amount to CHFA, or provide the supporting documentation (to the attention of the Finance Department) evidencing that the curtailment was not due to Servicer or Servicer's attorney error.
  - If CHFA is not in receipt of the above **within 10 business days for any claim filed, for all future claims filed**, CHFA will deduct the amount of the curtailment from the expense claim proceeds and wire the net amount to the servicer within 2 business days after receipt. Upon CHFA's receipt and review of supporting documentation from the Servicer evidencing that they, or their attorney, were not responsible for the curtailment, the balance of expense proceeds received from the insurer will be remitted to the Servicer.
  - Servicer must continue to attempt collection of the curtailed amount from the responsible party and remit to CHFA immediately upon receipt.  If, after 90 days of effort, Servicer is unable to collect and remit the curtailed amount to CHFA, Servicer must contact CHFA's Finance Department (860-571-4292) to discuss continued collection efforts.
- For all expense reimbursements due the Servicer in excess of what the insurer will cover, the Servicer will continue to provide all supporting documentation as was required prior to the new process for reimbursement from CHFA.
- In the event of an insurer audit, the Servicer will be liable for payment of any and all reimbursements and penalties assessed by the insurer for improper claim filing, including but not limited to lack of appropriate supporting documentation.
- CHFA will no longer accept or reimburse for expenses submitted by the Servicer after six months from the date that the original insurer claim was filed on HUD and VA insured loans or after six months from title taken date on all other loans.

***Failure to use CHFA's mortgagee number for claims filing will result in a penalty of $250 per claim.***

*Outgoing wire instructions must be provided to CHFA for expense reimbursement **no later than close of business on February 15, 2005.**  Wire instructions should be on your letterhead, signed by an authorized officer, and directed to Elizabeth M. Vallera, Treasurer and must include the following information:

Your Bank Name
Your Bank Address and ABA Number
Account Name
Account Number
Mailing Address of the Account to be Credited
**CHFA <u>will</u> <u>not</u> be responsible for any delays in your receipt of funds <u>if</u> the requested information is not provided in this form.**



## 90 Days or More Delinquency Reporting                                        (3)

CHFA requires each servicer to report on a monthly basis for each loan that is 90 days or more delinquent.  The attached *Code Translation Table Form* contains a list of valid reporting codes that must be assigned to each loan that is 90 days or more delinquent.  CHFA has tried to stay as consistent as possible with current HUD reporting codes.  In an effort to accommodate various servicing systems, CHFA will not require servicers to change their current reporting codes.  Each servicer must fill out the attached *Code Translation Table Form* and return it to CHFA via fax @ (860) 721-1365, or e-mail to delqreport@chfa.org **no later than close of business on February 15, 2005**.  Please note that you must indicate a Servicer Reporting Code for each CHFA Reporting Code listed.  At any time in the future, if your code structure changes or you undergo a system conversion, etc, you are required to re-submit a new *Code Translation Table Form* to CHFA **before** you begin reporting using your new codes.

For all loans that are 90 days or more delinquent, you are required to report one of the codes listed on the *Code Translation Table Form*.  This reporting must be cut-off on the last business day of each month and be received by CHFA on or before the tenth day of the following month.  This reporting will be accepted in one of the following three formats:
- o  Manually reported using the attached *90 Day Delinquency Form*
- o  Via spreadsheet, using the format defined below and named as ###MMYY.xls where ### is your 3 digit CHFA servicer number and MMYY is the month and year being reported:
  - o  CHFA Loan # (text field) – 6 digit CHFA loan number
  - o  Servicer Loan # (text field) – loan number assigned by Servicer
  - o  Servicer Number (3 digit numeric field) -- 3 digit code assigned by CHFA to identify Servicer
  - o  Servicer Reporting Code (may vary with each servicer - 2 digit numeric field for CHFA codes) – Servicer Reporting Code currently assigned to the loan  90 days or more delinquent as defined on the *Code Translation Table Form*
  - o  Date Code Set (mm/dd/yyyy date field) – Date this code was assigned to the loan
  - o  Comment (text field) – should include any comments added to this loan during the most recent reporting period
- o  Via data file, in a comma delimited file format with the fields in the same order as listed above for reporting via spreadsheet and named as ###MMYY.txt where ### is your 3 digit CHFA servicer number and MMYY is the month and year being reported

**Reporting of 90 day delinquency codes is required on a monthly basis until the loan either becomes less than 90 days delinquent or until all insurer payments have been received by CHFA.**

**If you have no loans within your portfolio that are 90 days or more delinquent, you are required to report this to CHFA as well.  This may be done utilizing the *90 Day Delinquency Form* and writing in "No 90+ Day Loans" in the Comments section, or via email @ delqreport@chfa.org.**



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form <span>(4)</span>

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) _____

CHFA Servicer # _____

Servicer Name _____

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# Code Translation Table Form

(5)

Date _____

CHFA Servicer # _____ __ __

Servicer Name _____

| CHFA Reporting Code | Code Description | Servicer Reporting Code |
|---|---|---|
| 01 | Chapter 13 Bankruptcy | |
| 03 | Cramdown | |
| 04 | Condo Action | |
| 08 | Chapter 7 Bankruptcy | |
| 09 | Forbearance | |
| 10 | Partial Claim | |
| 11 | Unable to Convey-Occupied | |
| 12 | Repayment | |
| 15 | Pre-Forc Acceptance Plan Available | |
| 17 | Pre-Forc Sale | |
| 20 | Reinstated by Mortgagor who Retains Ownership | |
| 26 | Refinance | |
| 28 | Modification | |
| 30 | Third Party Sale | |
| 32 | Military Indulgence | |
| 42 | Delinquent/Standard Collection Processes | |
| 43 | Foreclosure Started | |
| 45 | Foreclosure Completed | |
| 46 | Property Conveyed to Insurer & Claim Submitted | |
| 47 | Deed in Lieu | |
| 49 | Assignment/Refunding | |
| 68 | First Legal/Foreclosure In Process | |
| 73 | Charge Off-No Release | |
| 78 | Unclaimable Condition | |

Completed By: _____

Printed Name: _____



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## Foreclosure Initiation/Action Notification Reporting                    (6)

The *CHFA Foreclosure Approval Initiation/Action Notification* form must be used to notify CHFA of any loan that is entering foreclosure or that has had an action for which CHFA must be notified immediately. These actions include Foreclosure Initiation, Date of First Legal, Title Taken Date, Bankruptcy Status and Date, Bankruptcy Dismissal Date, Date/Amount that Court/Attorney Proceeds Received, and Property Conveyance Date. This form must be legible and faxed to the number indicated on the form. This form can also be downloaded from CHFA's website at www.chfa.org from the Lender forms section.

### Section A – **Loan Information**
This section must be filled out every time this form is faxed to CHFA. All information requested in Section A must be completed. This form should be faxed to CHFA on a "real time" basis (i.e. immediately upon the occurrence of any action listed on the form). All other monthly 90 day delinquency reporting must be cut-off on the last business day of each month and be received by CHFA on or before the tenth day of the following month.
- Date – Date form being completed and faxed to CHFA
- CHFA Loan # - 6 digit loan number assigned by CHFA
- Servicer Loan # - Loan number assigned by Servicer
- Borrower Name(s) – List all borrowers listed on mortgage
- Insurance Type – Check the correct box to indicate how the loan is insured

### Section B - **Foreclosure Initiation**
This section must be completed once all loss mitigation requirements have been satisfied and the loan is being assigned to an attorney for foreclosure action. Receipt by CHFA of this form with this Section completed constitutes CHFA's approval to foreclose.
- Date Counseling Letter Sent – Date 60 day counseling letter originally sent to borrower
- Owner Occupancy Verified – Must check box indicating whether owner occupancy was verified. If property is not owner occupied, Servicer must provide an explanation in the **Comments** section of the form.
- Check any/all loss mitigation codes that may apply for this loan
- Loss Mitigation Certification
  - By – Should be the signature of the authorized officer verifying all guidelines were followed
  - Printed Name – Name of person signing above
  - Phone # - Number at which person above can be reached with any questions
  - Email – Email address at which person above can be contacted
- Foreclosure Start Date – Date Servicer hired attorney to begin foreclosure process
- Attorney/Firm Assigned – Name of attorney/firm hired

### Section C – **Foreclosure Action Notification**
*This section must be completed anytime one of the five following actions occurs. CHFA must be informed of any of these actions as soon as they occur – **this reporting cannot wait until the month end cut-off reporting cycle***
- Date of First Legal – Date Lis Pendens filed/Sheriff hired
- Title Taken Date – Date title was taken
- Bankruptcy Status/Date – The date the borrower filed for Bankruptcy protection and the type of bankruptcy filed
- Bankruptcy Dismissal Date – The date the Bankruptcy was dismissed by the court
- Date/Amount Court/Attorney Proceeds Received – Date proceeds were received from the court or the attorney and the amount of proceeds received
- Property Conveyance Date – Date property conveyed to Insurer/CHFA

### Section D – **Comments**
This section can be used to add any additional comments that are relevant to the action being reported, but is not required except as noted in Section B.



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# CHFA Foreclosure Approval
# Initiation/Action Notification

(7)

**Fax to: (860) 721-1365**
**ATTN: Finance Department**

## A. Loan Information

Date: _____

CHFA Loan #: _____          Servicer Loan #: _____

Borrower Name(s): _____

Insurance Type:   ☐ FHA   ☐ VA   ☐ PMI   ☐ CHFA   ☐ Uninsured   ☐ RDA

## B. Foreclosure Initiation

Date Counseling Letter Sent: _____

Owner Occupancy Verified:   ☐ Yes   ☐ No (if No, Comment is required)

Check all boxes that may apply:

| | Code | Description | | Code | Description |
|---|---|---|---|---|---|
| ☐ | 12 | Repayment | ☐ | 10 | Partial Claim |
| ☐ | 09 | Forbearance | ☐ | 17 | Pre-Foreclosure Sale |
| ☐ | 28 | Modification | ☐ | 47 | Deed-In-Lieu |
| ☐ | 49 | Assignment/Refunding | | | |

I certify that all CHFA guidelines, or any other requirements per the guarantor, were followed prior to initiating foreclosure: *(For CHFA or uninsured loans, HUD guidelines, excluding partial claims should be followed)*

By: _____

Printed Name: _____

Phone #: _____

Email Address: _____

Foreclosure Start Date: _____
(Date Attorney hired)

Attorney/Firm Assigned: _____

## C. Foreclosure Action Notification

Date of First Legal: _____          Title Taken Date: _____

Bankruptcy Status:   ☐ Chap 7   ☐ Chap 13          Bankruptcy Date: _____

Bankruptcy Dismissal Date: _____

Date Court/Attorney Proceeds Received: _____          Amount: _____

Property Conveyance Date: _____

## D. Comments

rev: 6/8/07

*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## Additional Changes to Current Requirements          (8)

Beginning March 1, 2005, requirements under the following sections of the CHFA Home Mortgage Servicing Agreement shall be changed as follows:

**The below changes DO NOT SUPERCEDE any insurer requirement. To the extent that there is a present or future conflict with this Supplement and/or the existing CHFA Home Mortgage Servicing Agreement and insurer requirements, the Servicer MUST FOLLOW ALL INSURER REQUIREMENTS in order to preserve CHFA rights under the terms of the mortgage insurance.**

*Inspections:*
- o  Servicer shall make an inspection of the mortgaged property in the event of delinquency of 90 days *and* no contact has been made with the borrower.  (Previously, inspections were required even if the Servicer was in contact with the borrower.)
- o  Servicer shall make an inspection of the mortgaged property if the loss claim for damage exceeds $5,000, up from $2,500

*Notification by Servicer:*
- o  Servicer shall notify CHFA of loss or damage to the mortgaged property in excess of $10,000, up from $2,500

*90-Day Delinquencies:*
- o  Servicer must comply with ***CHFA Delinquency Intervention Counseling Program*** requirements
- o  Servicer must continue to report monthly on a loan by loan basis for any loan that is 90 days or more delinquent until such time as the loan becomes less than 90 days delinquent or until all insurer payments have been received by CHFA
- o  Servicer shall send 30-day demand notices to mortgagors, as required by law, advising them of CHFA's intent to foreclose, and thereafter, in accordance with ***CHFA's Delinquency Intervention Counseling Program*** requirements

*Foreclosures:*
- o  Once a loan becomes 120 days delinquent or is determined to be in default, Servicer must fax the completed ***CHFA Foreclosure Approval Initiation/Action Notification*** form to CHFA.

*Foreclosures – Sub-section: CHFA's Foreclosure Responsibilities:*
- o  CHFA no longer designates a foreclosure attorney or issues a written foreclosure order
- o  CHFA will promptly reimburse Servicer for legal fees and expenses and for Servicer's out-of-pocket expense reasonably incurred during the foreclosure process.  These expenses can only be submitted for reimbursement after the foreclosure has been completed.  CHFA will no longer accept or reimburse for expenses submitted by the Servicer after six months from the date that the original insurer claim was filed on HUD and VA insured loans or after six months from title taken date on all other loans

*Foreclosures – Sub-section: Servicer's Foreclosure Responsibilities:*
- o  Servicer designates and hires a foreclosure attorney and issues a written foreclosure order
- o  Assist the foreclosure attorney in matters of a legal nature
- o  All other current responsibilities defined in this sub-section



## Additional Changes to Current Requirements (cont)                    (9)

*Servicer's Compensation:*
- o Servicer's compensation related to delinquency/foreclosure servicing of a CHFA Mortgage shall cease upon commencement of foreclosure except for HUD insured loans or payoff of the loan in full. To the extent that CHFA receives gross interest from HUD, or the loan is paid in full, servicer fees related to this gross interest received by CHFA will be paid to the Servicer upon receipt by CHFA

*Agency – Sub-section: Limited Agency:*
- o Servicer, on behalf of CHFA, may endorse insurance checks for any amount up to $10,000, up from $2,500, without prior approval of CHFA
- o Servicer, on behalf of CHFA, may submit claims to FHA, VA or private mortgage insurers and must use CHFA's mortgagee number. Failure to use CHFA's mortgagee number will result in a $250 penalty per claim

*Service-Operations:*
- o Servicer shall provide a toll free number for use by CHFA and mortgagors



## Safekeeping of Authority Documents                                    (10)

Mortgage records, including but not limited to, promissory notes and mortgage deeds documenting CHFA loans will be delivered to Servicer for safe keeping.  Servicer will act as document custodian for CHFA or designate a document custodian to hold all CHFA mortgage records.  Servicer or its designated document custodian will comply with all state document preservation requirements applicable to CHFA.  These requirements can be found at www.cslib.org.  Mortgage records remain the property of CHFA, and Servicer will provide copies or return originals to CHFA promptly upon request at no cost to CHFA.  Servicer will be responsible for any loss sustained by CHFA resulting from loss or damage to CHFA mortgage records delivered to Servicer.

Please provide the contact information listed below for the document custodian that will be responsible for these records.

**This information must be completed, signed by an authorized officer of Servicer and the original must be received by CHFA's Finance Department no later than February 15, 2005.**

| | |
|---|---|
| Servicer Name | |
| Servicer Address | |
| **Document Custodian Info:** | |
| Contact Name | |
| Contact Entity (if not Servicer) | |
| Contact Address | |
| Contact Phone | |
| Contact Email | |

By Authorized Officer (Servicer): _____

Printed Name: _____

Any changes to the above information must be mailed to CHFA's Finance Department 10 business days prior to change of document custodian.

All records will be shipped (at CHFA's expense) to the document custodian along with a schedule listing an inventory, by CHFA loan number, of the mortgage records.  Document custodian will sign a copy of the inventory listing upon delivery to acknowledge receipt of the records.  Within 60 days of delivery by CHFA, document custodian will review and confirm receipt of all items on the inventory listing, and sign and return a second copy of the inventory listing to CHFA.

Note: **During the transition period, should you require documents for any loan that has not yet been delivered to your document custodian, please call the CHFA Finance Department at 860-571-4292 and we will promptly ship the requested documents**.  Initially, CHFA will deliver to all designated document custodians those loans which are 90 days or more delinquent as of December 31, 2004.  CHFA anticipates delivery of all remaining loan documents to each document custodian by June 30, 2005.



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## CHFA Delinquency Intervention Counseling Program                    (11)

Connecticut Housing Finance Authority (CHFA) offers delinquency intervention counseling to borrowers who are sixty (60) days delinquent on their mortgage loan. The servicer sends a letter to the borrower and forwards a referral to a CHFA approved counseling agency when a borrower is 60 days delinquent. The counseling agency works with the borrower, develops a financial plan, analyzes their financial situation and helps to develop an action plan to bring the loan current. The plan is presented to the servicer for approval.

Servicer must simultaneously perform prudent collection efforts in compliance with insurer/guarantor regulations.

### Loss Mitigation tools for HUD insured loans include:

Special Forbearance: Provides a written payment plan for the borrower to become current on their mortgage.

Loan Modification: A permanent extension in the loan term that results in a payment that the borrower can afford.

Partial Claim: Allows a delinquent mortgage to be reinstated by advancing HUD funds to pay the arrearage. A promissory note or "partial claim note" is issued. Currently the partial claim note carries no interest and is not due and payable until the borrower either pays off the first mortgage or no longer owns the property.

Pre-foreclosure Sale: Allows a borrower in default to sell the property and use the sale proceeds to satisfy the mortgage debt, even if the proceeds are less than the amount owed.

Deed in Lieu of Foreclosure: The borrower voluntarily deeds the property to HUD in exchange for a release from all obligations under the mortgage.

### Loss Mitigation tools for other insurance type loans include:
Forbearance, modifications, pre-foreclosure sales and deed-in-lieu of foreclosures are also loss mitigation options for loans insured by private mortgage insurance companies, by the Veteran's Administration (VA), CHFA insured loans and uninsured loans. In addition, the private mortgage insurance companies offer a product similar to the partial claim and the VA offers a Refunding.

Follow-up with the borrower is conducted at one, three and six months to discuss and identify any changes that may have occurred that will influence that action plan. Follow-up counseling sessions are conducted, as necessary.



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

## Sample Reporting Stream

(12)

Borrower: John Smith
CHFA Loan # 991234, Servicer Loan # 449876
Insured by FHA
Interest P-T-D 4/1/2005

Loan becomes part of this reporting process once it becomes 90 days delinquent. This reporting for this loan begins with the July 2005 month end reporting.

| Date | Reporting |
|---|---|
| 7/20/05 | **No reporting yet to CHFA**-Servicer working with borrower. Servicer assigns code 12 indicating that borrower will attempt repayment |
| 7/31/05 | *90 Day Delinquency Form* is submitted with July month end reporting – see attachment **a** |
| 8/31/05 | *90 Day Delinquency Form* is submitted with August month end reporting – see attachment **b** |
| 9/2/05 | *CHFA Foreclosure Approval Initiation/Action Notification* form is submitted on September 2, 2005 to inform CHFA of foreclosure initiation – see attachment **c** |
| 9/30/05 | *90 Day Delinquency Form* is submitted with September month end reporting – see attachment **d** |
| 10/3/05 | *CHFA Foreclosure Approval Initiation/Action Notification* form is submitted on October 3, 2005 to inform CHFA of Date of First Legal – see attachment **e** |
| 10/31/05 | *90 Day Delinquency Form* is submitted with October month end reporting – see attachment **f** |
| 11/30/05 | *90 Day Delinquency Form* is submitted with November month end reporting – see attachment **g** |
| 12/20/05 | *CHFA Foreclosure Approval Initiation/Action Notification* form is submitted on December 20, 2005 to inform CHFA that title has been taken – see attachment **h** |
| 12/31/05 | *90 Day Delinquency Form* is submitted with December month end reporting – see attachment **i** |
| 1/31/06 | *90 Day Delinquency Form* is submitted with January month end reporting – see attachment **j** |
| 2/26/06 | *CHFA Foreclosure Approval Initiation/Action Notification* form is submitted on February 26, 2006 to inform CHFA that loan was conveyed to the insurer – see attachment **k** |
| 2/28/06 | *90 Day Delinquency Form* is submitted with February month end reporting – see attachment **l** |
| 3/31/06 | *90 Day Delinquency Form* is submitted with March month end reporting – see attachment **m** |
| 4/30/06 | *90 Day Delinquency Form* is submitted with April month end reporting – see attachment **n** |
| 5/31/06 | Loan no longer reported to CHFA-all insurer payments have been received by CHFA |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment a*

Use this form, or spreadsheet or data submission to report ALL loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year)  July 2005
CHFA Servicer #  432
Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 12 | 7/20/05 | Borrower promised payment-wants to keep home-inspection completed |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment b*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) ___August 2005___
CHFA Servicer # ___432___
Servicer Name ___Sample Servicer___

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 12 | 7/20/05 | Have been unable to recontact borrower |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# CHFA Foreclosure Approval
# Initiation/Action Notification

*attachment c*
**Fax to: (860) 721-1365**
**ATTN: Finance Department**

## A. Loan Information

Date: 9/2/05

CHFA Loan #: 991234        Servicer Loan #: 449876

Borrower Name(s): John Smith

Insurance Type: ☒ FHA   ☐ VA   ☐ PMI   ☐ CHFA   ☐ Uninsured   ☐ RDA

## B. Foreclosure Initiation

Date Counseling Letter Sent: 6/12/05

Owner Occupancy Verified: ☒ Yes   ☐ No (if No, Comment is required)

Check all boxes that may apply:

| Code | Description | | Code | Description |
|---|---|---|---|---|
| ☒ 12 | Repayment | ☐ | 10 | Partial Claim |
| ☐ 09 | Forbearance | ☐ | 17 | Pre-Foreclosure Sale |
| ☐ 28 | Modification | ☐ | 47 | Deed-In-Lieu |
| ☐ 49 | Assignment/Refunding | | | |

I certify that all CHFA guidelines, or any other requirements per the guarantor, were
followed prior to initiating foreclosure: *(For CHFA or uninsured loans, HUD guidelines, excluding
partial claims should be followed)*

By: *Authorized Officer*

Printed Name: Authorized Officer

Phone #: 860-571-4999

Email Address: Aofficer@bank.com

Foreclosure Start Date: 9/2/05
(Date Attorney hired)

Attorney/Firm Assigned: Reliable Legal Representation, LLC

## C. Foreclosure Action Notification

Date of First Legal: _____        Title Taken Date: _____

Bankruptcy Status: ☐ Chap 7   ☐ Chap 13        Bankruptcy Date: _____

Bankruptcy Dismissal Date: _____

Date Court/Attorney Proceeds Received: _____        Amount: _____

Property Conveyance Date: _____

## D. Comments

rev: 8/8/07



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment d*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) ___September 2005_____
CHFA Servicer # ___432_____
Servicer Name ___Sample Servicer_____

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 43 | 9/2/05 | No further contact with borrower - Inspection completed |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# CHFA Foreclosure Approval
# Initiation/Action Notification

*attachment e*
**Fax to: (860) 721-1365**
**ATTN: Finance Department**

## A. Loan Information

Date: 10/3/05

CHFA Loan #: 991234          Servicer Loan #: 449876

Borrower Name(s): John Smith

Insurance Type:  ☒ FHA   ☐ VA   ☐ PMI   ☐ CHFA   ☐ Uninsured   ☐ RDA

## B. Foreclosure Initiation

Date Counseling Letter Sent:

Owner Occupancy Verified:   ☐ Yes   ☐ No (if No, Comment is required)

Check all boxes that may apply:

| | Code | Description | | Code | Description |
|---|---|---|---|---|---|
| ☐ | 12 | Repayment | ☐ | 10 | Partial Claim |
| ☐ | 09 | Forbearance | ☐ | 17 | Pre-Foreclosure Sale |
| ☐ | 28 | Modification | ☐ | 47 | Deed-In-Lieu |
| ☐ | 49 | Assignment/Refunding | | | |

I certify that all CHFA guidelines, or any other requirements per the guarantor, were followed prior to initiating foreclosure: *(For CHFA or uninsured loans, HUD guidelines, excluding partial claims should be followed)*

By: _____

Printed Name: _____

Phone #: _____

Email Address: _____

Foreclosure Start Date: _____
(Date Attorney hired)

Attorney/Firm Assigned: _____

## C.

Date of First Legal: 10/3/05          Title Taken Date: _____

Bankruptcy Status:  ☐ Chap 7   ☐ Chap 13          Bankruptcy Date: _____

Bankruptcy Dismissal Date: _____

Date Court/Attorney Proceeds Received: _____          Amount: _____

Property Conveyance Date: _____

## D. Comments

rev: 6/6/07



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment f*

Use this form, or spreadsheet or data submission to report ALL loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year)  October 2005
CHFA Servicer #  432
Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 68 | 10/3/05 | Judgment entered-title to CHFA within 60 days |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment g*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) November 2005
CHFA Servicer # 432
Servicer Name Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 68 | 10/3/05 | Judgment entered-title to CHFA within 30 days-property inspection done 11/2/05 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# CHFA Foreclosure Approval
# Initiation/Action Notification

*attachment h*
**Fax to: (860) 721-1365**
**ATTN: Finance Department**

## A. Loan Information

Date: 12/20/05

CHFA Loan #: 991234          Servicer Loan #: 449876

Borrower Name(s): John Smith

Insurance Type: ☒ FHA    ☐ VA    ☐ PMI    ☐ CHFA    ☐ Uninsured    ☐ RDA

## B. Foreclosure Initiation

Date Counseling Letter Sent:
Owner Occupancy Verified: ☐ Yes    ☐ No (if No, Comment is required)
Check all boxes that may apply:

| | Code | Description | | Code | Description |
|---|---|---|---|---|---|
| ☐ | 12 | Repayment | ☐ | 10 | Partial Claim |
| ☐ | 09 | Forbearance | ☐ | 17 | Pre-Foreclosure Sale |
| ☐ | 28 | Modification | ☐ | 47 | Deed-In-Lieu |
| ☐ | 49 | Assignment/Refunding | | | |

I certify that all CHFA guidelines, or any other requirements per the guarantor, were followed prior to initiating foreclosure: *(For CHFA or uninsured loans, HUD guidelines, excluding partial claims should be followed)*

By:

Printed Name:

Phone #:

Email Address:

Foreclosure Start Date:
(Date Attorney hired)

Attorney/Firm Assigned:

## C. Foreclosure Action Notification

Date of First Legal:                    Title Taken Date: 12/20/05

Bankruptcy Status: ☐ Chap 7    ☐ Chap 13    Bankruptcy Date:

Bankruptcy Dismissal Date:

Date Court/Attorney Proceeds Received:                    Amount:

Property Conveyance Date:

## D. Comments

rev: 6/6/07

*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form           *attachment i*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent.  Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month.  If mailing, please submit to the attention of the Finance Department at the address below.  Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org.   Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year)  December 2005
CHFA Servicer #  432
Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 68 | 10/3/05 | Forc completed – ejecting borrower-remove from CHFA trail |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form    *attachment j*

Use this form, or spreadsheet or data submission to report ALL loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org. Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) __January 2006__
CHFA Servicer # __432__
Servicer Name __Sample Servicer__

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 11 | 1/15/06 | Unable to submit-occupied |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# CHFA Foreclosure Approval
# Initiation/Action Notification

*attachment k*

**Fax to: (860) 721-1365**
**ATTN: Finance Department**

## A. Loan Information

Date: 2/26/06

CHFA Loan #: 991234                    Servicer Loan #: 449876

Borrower Name(s): John Smith

Insurance Type:   ☐ FHA   ☐ VA   ☐ PMI   ☐ CHFA   ☐ Uninsured   ☐ RDA

## B. Foreclosure Initiation

Date Counseling Letter Sent:

Owner Occupancy Verified:   ☐ Yes   ☐ No (if No, Comment is required)

Check all boxes that may apply:

| | Code | Description | | Code | Description |
|---|---|---|---|---|---|
| ☐ | 12 | Repayment | ☐ | 10 | Partial Claim |
| ☐ | 09 | Forbearance | ☐ | 17 | Pre-Foreclosure Sale |
| ☐ | 28 | Modification | ☐ | 47 | Deed-In-Lieu |
| ☐ | 49 | Assignment/Refunding | | | |

I certify that all CHFA guidelines, or any other requirements per the guarantor, were followed prior to initiating foreclosure: *(For CHFA or uninsured loans, HUD guidelines, excluding partial claims should be followed)*

By: _____

Printed Name: _____

Phone #: _____

Email Address: _____

Foreclosure Start Date: _____
(Date Attorney hired)

Attorney/Firm Assigned: _____

## C. Foreclosure Action Notification

Date of First Legal: _____      Title Taken Date: _____

Bankruptcy Status:   ☐ Chap 7   ☐ Chap 13      Bankruptcy Date: _____

Bankruptcy Dismissal Date: _____

Date Court/Attorney Proceeds Received: _____      Amount: _____

Property Conveyance Date: 2/26/06

## D. Comments

rev: 6/6/07

*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*



# 90 Day Delinquency Form          *attachment I*

Use this form, or spreadsheet or data submission to report ALL loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org.  Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year)  February 2006

CHFA Servicer #  432

Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 46 | 2/26/06 | Borrower ejected – claim being prepared.  Property conveyed, claim submitted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form          *attachment m*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org.  Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year) March 2006
CHFA Servicer #  432
Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 46 | 2/25/06 | PA Proceeds received by CHFA – expenses submitted to HUD |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*

# 90 Day Delinquency Form        *attachment n*

Use this form, or spreadsheet or data submission to report **ALL** loans that are 90 days or more delinquent. Information must be cut-off on the last business day of each month and be received by CHFA no later than the 10th day of the following month. If mailing, please submit to the attention of the Finance Department at the address below. Manually completed forms or spreadsheets may be faxed to (860) 721-1365 or e-mailed to delqreport@chfa.org.  Data submissions must be e-mailed to delqreport@chfa.org.

Month End Date (month and year)  April 2006
CHFA Servicer #  432
Servicer Name  Sample Servicer

| CHFA Loan # | Servicer Loan # | Reporting Code | Date Code Assigned | Comments (should include all comments added since the last reporting cycle) |
|---|---|---|---|---|
| 991234 | 449876 | 45 | 4/6/06 | Part B received by CHFA-Additional expenses submitted to CHFA |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



*999 West Street / Rocky Hill, Connecticut 06067-4005 / 860-721-9501*