# EXHIBIT B

# III

## SINGLE FAMILY HOUSING

## A.  HOME MORTGAGE PROGRAM

### A-1.  Home Mortgage Loans

The home mortgage program finances acquisition or rehabilitation of existing or newly-constructed housing with no more than four living units, one of which is required to be occupied by the borrower.  The Authority's home mortgage funds are distributed through participating lenders.

### A-2.  Participating Lenders

(a)    A "participating lender" is a lending institution that cooperates with the Authority in making funds available under its home mortgage program by making and/or servicing mortgage loans that the Authority has agreed to purchase.

(b)    To be approved by the Authority as a participating lender to originate mortgage loans, a lending institution must meet the following criteria:

(1)    have in Connecticut the capacity and personnel to originate and close mortgage loans, as determined by the Authority;

(2)    unless it is an FDIC or FSLIC insured deposit-taking institution incorporated and existing under the laws of Connecticut, have eighteen (18) months' experience in making mortgage loans on homes located in Connecticut.  In the case of those institutions that acquire an institution in Connecticut, where the acquired institution meets the experience requirement, the acquiring institution shall be deemed to meet the experience requirement;

(3)    be a lender approved by the Federal Housing Administration and the Veterans Administration;

(4)    maintain a minimum tangible net worth of $500,000 or provide a letter of credit, available and otherwise uncommitted line of credit, bond or other financial instrument acceptable to the Authority totaling such amount;

(5)    be in compliance with applicable federal and state laws, regulations promulgated thereunder and any licensing requirements by agencies of government having jurisdiction;

(6)    maintain quality control and management systems to evaluate and monitor the overall quality of its origination activities, and

(7)    execute the standard Master Commitment Agreement for Mortgage Purchases.

(c)    To be approved by the Authority as a participating lender to service Authority loans, the institution must meet the following criteria:

(1)    have the capacity and personnel to service mortgage loans, as determined by the Authority;

(2)    demonstrate a proven ability to service the type of mortgages for which Authority approval is being requested;

(3)    maintain a minimum tangible net worth of $500,000 or provide a letter of credit, available and otherwise uncommitted line of credit, bond or other financial instrument acceptable to the Authority totaling such amount;

(4)    be in compliance with applicable federal and state laws, regulations promulgated thereunder and any licensing requirements by agencies of government having jurisdiction;

(5)    maintain quality control and management system systems to evaluate and monitor the overall quality of its servicing activities, and

(6)    execute the standard Home Mortgage Servicing Agreement and/or other contracts as determined by the Authority.

(d)    The Authority may remove from the list of approved participating lenders any lending institution that has (i) failed to commit, close and/or service mortgage loans in accordance with the Act, these procedures, the Master Commitment Agreement for Mortgage Purchases, and/or the Home Mortgage Servicing Agreement or (ii) ceased to meet the criteria for becoming a participating lender.  The Authority may terminate the Master Commitment Agreement for Mortgage Purchases and/or the Home Mortgage Servicing Agreement in accordance with the provisions thereof.

(e)    Participating lenders shall not restrict applications for loans to any segment of the home mortgage program, except that a participating lender need not accept applications for rehabilitation mortgage loans and need not accept applications for mortgage loans on homes located outside its normal geographic lending areas.

(f)    The Authority may require a newly approved participating lender to attend training sessions as the Authority deems appropriate.

(g)    A participating lender may sponsor a "correspondent lender" to originate mortgage loans with the prior written approval of the Authority.  The sponsoring participating lender will be required to meet and provide evidence of a minimum tangible net worth of $1,000,000 in order to sponsor a correspondent lender.  In order to be approved as a correspondent lender to originate mortgage loans by the Authority, the correspondent lender must meet the same criteria for a participating lender to originate mortgage loans as described in subsection (b) above, except as follows:

(1)    have a minimum tangible net worth of $100,000 or the amount equal to that required by the Federal Housing Administration (FHA) to participate in FHA programs;

(2)    the correspondent lender will not be required to execute the standard Master Commitment Agreement for Mortgage Purchases;

(3)    the correspondent lender will be required to attend a training session(s) prior to originating any CHFA loans on behalf of the sponsoring participating lender and any additional training sessions as the Authority deems appropriate; and

(4)    be approved by the Federal Housing Administration as a correspondent lender; Veterans Administration approval is not required.

An approved correspondent lender may originate home mortgage loans on behalf of a sponsoring participating lender.  However, the sponsoring participating lender shall remain fully responsible to the Authority for its obligations pursuant to these procedures, the CHFA Home Mortgage Program Operating Manual, and the Master Commitment Agreement for Mortgage Purchases.  The Authority reserves the right to limit the number of correspondent lenders and may rescind approval of a correspondent lender at any time with (prior) written notice.

## A-3.    Distribution of Mortgage Money

(a)    The Authority makes mortgage money available through participating lenders in the state.  The Authority will not issue separate allocations to any particular participating lenders.  Generally, mortgage money is available on a continuous basis.

(b)    Mortgage money may be reserved by a participating lender for a prospective borrower only after the prospective borrower has entered into a written sales agreement covering the property to be financed, a copy of which agreement shall be supplied to the participating lender, and has shown evidence of income by supplying a copy of the federal income tax return most recently filed by a prospective borrower, unless he has not been required to file such return.  The participating lender will tentatively determine if the prospective borrower is qualified as an eligible borrower as defined in section III, A-5

entitled "Eligible Borrowers" of these procedures.  Such reservation of funds not committed within four (4) months of the date of reservation shall be canceled and of no further effect unless extended by the Authority.

(c)    The Authority reserves the right to hold back a portion of any available mortgage money for use in special programs, in furtherance of its goals in providing financing for owner-occupied one-to four-family housing.  The Authority may limit participation in such special programs to certain designated lenders or may, itself, administer loans made thereunder.

## A-4.    Commitments for Mortgage Purchase

(a)    A participating lender shall submit each mortgage loan application approved by it to the Authority with all information and documents required to comply with the rules and regulations of the commissioner of banking, any mortgage insurer or guarantor, and the Home Mortgage Programs Operating Manual.    Each loan submission requesting a commitment must be clearly identified with the Authority's authorized reservation number and shall not exceed by a significant amount the mortgage amount reserved, unless otherwise permitted by the Authority.  Such submission shall be made as soon as is reasonably possible after the collection of all required documentation, including the commitment for mortgage insurance or guaranty if required by the Authority.   A commitment to purchase an Authority mortgage loan shall be sent to a participating lender after a mortgage loan application submitted by such lender to the Authority has been approved.  Such a commitment is effective only for the period designated therein, unless extended in writing by the Authority.  The Authority has sole discretion as to the granting of extensions.  Loans are purchased by the Authority in accordance with such commitment and pursuant to these procedures.

(b)    Requests for extension or cancellation of a commitment shall be in writing and signed by a mortgage officer or other authorized representative of the participating lender.  Participating lenders shall promptly notify the Authority in writing of cancellations.

(c)    The substitution of property for which funds have been reserved either before or after the issuance of a commitment, shall be permitted only with the written consent of the Authority. The granting of such consent is within the sole discretion of the Authority and will be made only upon a showing of substantial hardship, not known to or reasonably foreseeable by the borrower at the time of application.  No substitution of borrower shall be permitted at any time.  The Authority may decline to reserve funds for an applicant who has other Authority funds reserved.

(d)    An application to the Authority for a commitment to purchase an Authority mortgage loan may be resubmitted only once after having been rejected.  Such resubmission shall include additional evidence to aid the Authority in evaluating the application. Different Authority staff members authorized to review mortgage loans shall review the submission and any resubmission of an application.

## A-5.    Eligible Borrowers

An applicant shall be eligible for an Authority mortgage loan if the applicant:

(a)    Has aggregate family income at an annualized rate at the time of application at or below the applicable income limit in effect at the time of application or is purchasing residential property in one of the legislatively defined urban areas pursuant to section III, A-9 of these procedures entitled "Urban Area Mortgages";

(b)    Agrees to occupy and use the residential property to be purchased or rehabilitated for a permanent, primary residence within sixty (60) days of the closing of the mortgage loan;

(c)    Possesses the legal capacity to incur the obligations of the Authority's mortgage loan;

(d)    Possesses the ability, as determined by the Authority, to repay the Authority's mortgage loan;

(e)    Contracts to purchase or rehabilitate property which qualifies as an eligible dwelling under section III, A-15 of these procedures entitled "Qualification as an Eligible Dwelling";

(f)    Has not, at any time during the three years preceding the date of application for the mortgage loan, had a present ownership interest (as defined by the Home Mortgage Programs Operating Manual) in his principal residence.  This requirement does not apply to loans on properties located in targeted areas as designated by the Authority or to loans made to prior homeowners as permitted by Federal Law, and

(g)    Is not using the proceeds of the Authority's mortgage to refinance an existing mortgage on the property (except in the case of a qualified rehabilitation loan) or to finance the acquisition of the remaining interest in a property in which a partial interest already is owned.  The use of the loan proceeds to refinance an existing mortgage is permitted if the prior mortgage is a construction period loan or other temporary financing with a period of twenty-four (24) months or less, or if it is on unimproved land on which a dwelling is to be constructed and is to be paid prior to the closing of the Authority's mortgage loan, which latter loan does not exceed the cost of construction.

## A-6.    Occupancy

(a)    Owner-occupancy is a condition of the Authority's home mortgage loans. As a part of the application process, each applicant for an Authority home mortgage loan shall sign a certificate on a form provided by the Authority attesting to the applicant's intent to live in the housing to be financed.  At the closing of such loan, each borrower shall execute an Owner-Occupancy Certificate attesting that the housing to be financed is being purchased as the permanent primary residence of the borrower.  The borrower shall occupy

the housing within sixty (60) days of the closing and shall continue to occupy the housing for the term of the mortgage. No later than sixty (60) days after the closing of a loan, the participating lender shall verify owner-occupancy by means of a physical inspection of the mortgaged property.

(b)    Extensions of the deadline for taking occupancy may be granted by the Authority, in its sole discretion, upon a showing of good cause therefor. No extension shall be granted if, prior to closing, the borrower knew or had reason to know of the barrier to occupancy.

(c)    The Authority may waive as an event of default the failure of a borrower who has been residing in housing financed by the Authority as the borrower's permanent primary residence to occupy such residence for not more than three (3) periods of up to one (1) year provided borrower applies to the Authority in advance, and upon receiving the Authority's waiver, the borrower certifies to the satisfaction of the Authority annually that:

(1)    borrower has complied with the Authority's owner occupancy requirements in good faith;

(2)    borrower has moved out due to unforeseen circumstances beyond borrower's control including, but not limited to, military duty assignment, job transfer, employment training or serious medical condition of a family member which requires borrower's presence;

(3)    the mortgage debt service, taxes, common charges or other required expenses and required insurance are and will remain current;

(4)    if required, the property will be listed and actively marketed for sale, and

(5)    the amount of any rent received from the housing does not exceed the annual sum of mortgage debt service, taxes, common charges and insurance premiums and that any excess shall be paid to the Authority.

(d)    The Authority shall declare the failure to occupy to be a default of the mortgage loan and may pursue all remedies available under the note and mortgage, the Authority Owner-Occupancy Certificate, or otherwise available at law or in equity, if during the period of sixty (60) days from the closing the borrower does not occupy the mortgaged housing as a permanent primary residence, unless the Authority has extended the time for occupancy as provided herein.

(e)    No tenant selection plan shall be required of borrowers in connection with the Authority's home mortgage loans.

(f)      The Authority may waive as an event of default the failure to continue to occupy the housing for the term of the mortgage for military personnel transferred to another military base, provided the borrower provides the Authority with a written request and proof of transfer.

## A-7.   Credit Review

In determining whether or not an applicant meets the Authority's income limitations, where applicable, an applicant's aggregate family income shall be computed by including the elements discussed herein.

(a)      An applicant's aggregate family income shall include income from whatever source derived, including without limitation, regular earnings; part- time earnings; unemployment compensation; bonuses; overtime income, whether or not guaranteed by an employer; dividends; interest (except on funds which will be used for down payment and closing costs); commissions; military allowances; welfare payments; disability payments; pension, annuity, retirement, and social security benefits; and reimbursement for services in military reserve or National Guard.  The Authority may at its option exclude overtime income where it deems such income to be of short duration and of a temporary nature.

(b)      Aggregate family income shall also include income from full or part-time employment of all proposed owner-occupants and all other nondependent resident members of the family unit of the applicant.  Income received prior to the date of the application shall not be included in aggregate family income if the member of the family unit who earned such income has not been employed for at least ninety (90) days prior to the application. The prior annualized income of said persons will be included in aggregate family income if said eligible borrower or occupant has been employed during the ninety (90) days prior to the date of application.

(c)      Aggregate family income, for purposes of determining compliance with the applicable income limit, shall include one hundred (100%) percent of the anticipated fair market income from rental units in a two to four unit eligible dwelling to be purchased by the applicant with the assistance of the Authority's mortgage loan.

(d)      Aggregate family income shall also include alimony, child support, or maintenance payments only to the extent that they are likely to be consistently received. Factors to be considered in determining the likelihood of consistent payments include, but are not limited to, whether the payment is received pursuant to a written agreement or court decree, the length of time the payments have been received, the regularity of receipt, the availability of procedures to compel payment, whether full or partial payments have been made, the age of any child for who child support is to be paid, and the creditworthiness of the obligee, including the credit history of the obligee where available under the Fair Credit Reporting Act (section 1681 et seq. of title 15 of the United States Code) or other applicable laws.  A participating lender shall submit to the Authority evidence adequate to support its determination.

## A-8.  Evidence of income

Each applicant for an Authority's home mortgage loan shall provide copies of the three previous years' signed federal income tax returns (one year in the case of a loan in a targeted area or to a prior homeowner) and the three most recent pay stubs (if provided pursuant to section 31-13a of the General Statutes) of the applicant and all other non-dependent resident members of the family unit, unless the Authority agrees in writing to accept other evidence of income where no such return has been filed or no such pay stubs have been provided. The participating lender shall obtain income and employment verification from the applicant's employer.

In cases where an applicant is self-employed, or is one of the principal owners of a business, the applicant's schedule C from his most recent federal income tax return or the business' income tax return will be used, without adjustment, to determine income.  Self-employment or investment losses and employee expenses on Form 2106 will not be reflected for purposes of eligibility, but will be reflected for underwriting ratios.

## A-9.  Urban Area Mortgages

(a)    The Authority may finance mortgage loans in certain State and Federally designated urban targeted areas of the state without regard to the borrower's income. Such applications are considered only when such desired loans may not otherwise be available on "reasonable terms" as determined by the President-Executive Director of the Authority.

## A-10.  Family Size

The family unit of an applicant for an Authority's mortgage loan shall include all proposed owner-occupants and all other proposed residents who are related to them.  The intended spouse of an applicant engaged to be married will be considered part of the family unit regardless of the proposed marriage date.  A borrower who is divorced shall submit a copy of the decree of dissolution of marriage as proof of such status.  A borrower who is separated from a spouse will be treated for income limit purposes as being married, unless such borrower submits evidence of separation for more than three years or a judicial decree of separation dated prior to the date of application.

## A-11.  Disposal of Other Residential Property

Any real estate that is owned by the borrower and used by the borrower as a residence and that will not be security for a proposed mortgage loan to the borrower shall be disposed of or under bona fide contract for sale before the closing on such loan.  In cases where a borrower, such as in a federally approved target area, is in the process of selling such residential property or has sold it during the six months prior to the date of application for the loan, the borrower shall apply the equity proceeds from that sale as a down-payment on the eligible dwelling.  The borrower may deduct payoff of the present first mortgage, payoff of other mortgages recorded at least one year, real estate commissions and reasonable closing costs on the home being sold in determining equity proceeds.

## A-12.  Determination by Participating Lender

The qualification of an applicant as a borrower shall be determined by each participating lender subject to review by the Authority.  A participating lender shall review each application form and related submissions to determine their completeness in accordance with the terms of the Act and these procedures.  Reasonable efforts shall be undertaken to verify information given in such application.

## A-13.  Denial Caveat

A participating lender shall not deny the Authority's mortgage loan to a borrower because the borrower is not a depositor or customer of the participating lender.  A participating lender shall not deny the Authority's mortgage loan to a borrower because the borrower is not a member of a particular group that such lender desires to favor or is a member of a particular group that such lender desires to exclude.

## A-14.  Multiple Loans

A borrower may not have more than one outstanding Authority mortgage loan, including an Authority mortgage loan that has been assumed by another borrower.  A commitment for a borrower who already has an Authority mortgage loan shall contain, as a special condition, the payment in full of the prior loan.

## A-15.  Qualification as an Eligible Dwelling

(a)    An Authority mortgage loan shall be made only to finance the acquisition or rehabilitation of an eligible dwelling.  An eligible dwelling is one that is located in the state, is structurally and functionally sound, meets all applicable zoning, building, health, and similar codes and requirements, and has a purchase price not in excess of any limits set by the Authority.  A permanent certificate of occupancy shall have been issued for each eligible dwelling.  An eligible dwelling may be a building consisting of one to four family dwelling units or may be an owner-occupied unit of a multi-unit complex such as a condominium, a planned unit development, etc., provided that such multi-unit complex has received the Authority's prior approval.  A house that is an eligible dwelling may not be located on more than 2.1 acres of land, unless a written waiver has been granted by the Authority, and may not provide, other than incidentally, a source of income to the borrower.  The participating lender shall make a preliminary determination as to whether a dwelling as to which an Authority mortgage loan is requested is an eligible dwelling.

(b)    The sales contract of a newly-constructed house (one which was not occupied prior to the Authority's loan commitment) or a house to be constructed must provide for insulation of at least R30 in the ceiling and R11 in the walls (R38 in the ceiling and R19 in the walls and floors in the case of electric heat) and for double-glazed windows with wood or other thermal break (or storm windows in lieu thereof).  If necessary, an amendment to the sales contract to provide for these will be required.

## A-16.  Minimum Downpayments

The minimum downpayment required in the case of the Authority's mortgage loan insured by Private Mortgage Insurance ("PMI"), the Federal Housing Administration ("FHA"), USDA Rural Development (RD) or guaranteed by the Veterans Administration "(VA") shall be such downpayment, if any, required from time-to-time by PMI, FHA, RD or VA.

## A-17.  Income and Sales Price Limits

(a)  The Authority shall adopt income limits for borrowers in order to carry out the policies and purposes of the Act, subject, however, to the provisions of section III, A-9 of these procedures entitled "Urban Area Mortgages."  The Authority shall adopt income limits for each county in the state that vary with the size of the household to occupy the housing to be financed, except that income limits for households of three (3) persons shall also be applicable for smaller households and the income limits for households of seven (7) persons shall also be applicable for larger households.  The income limits applicable to a particular borrower is the one for the appropriate household size in the county in which the housing to be financed is located.  In no event shall such income limits exceed the products, rounded to the nearest one hundred (100) dollar multiple, arrived at by multiplying one hundred thirty (130) percent by the following:

      (1)  for Fairfield County, the average of the median family income established from time to time by the United States Department of Housing and Urban Development ("HUD") for the federal Bridgeport-Milford, Danbury, Norwalk, and Stamford primary metropolitan statistical areas;

      (2)  for New Haven County, the average of the median family income for the federal New Haven-Meriden and Waterbury metropolitan statistical areas;

      (3)  for New London County, the median family income for the federal New London-Norwich metropolitan statistical area;

      (4)  for Hartford and Tolland Counties, the median family income for the federal Hartford primary metropolitan statistical area;

      (5)  for each other county in Connecticut, the median family income for the federal non-metropolitan county parts for the particular county.

(b)  The Authority shall adopt sales price limits for mortgaged premises to carry out the policies and purposes of the Act.  The Authority shall adopt sales price limits for each county in the state.  In no event shall any sales price limit exceed the amount which would cause the Authority's bonds to be taxable under the Mortgage Subsidy Bond Tax Act

of 1980.  In no event shall such sales price limits exceed the products, rounded to the nearest one hundred (100) dollar multiple, arrived at by multiplying four (4) by the following:

    (1)    for Fairfield County, the average of the median family income figures published from time to time by HUD ("MFI") for the federal Bridgeport-Milford, Danbury, Norwalk, and Stamford primary metropolitan statistical areas;

    (2)    for New Haven County, the average of the MFI's for the federal New Haven-Meriden and Waterbury metropolitan statistical areas;

    (3)    for New London County, the MFI for the federal New London-Norwich metropolitan statistical area;

    (4)    for Hartford and Tolland Counties, the MFI for the federal Hartford primary metropolitan statistical area, and

    (5)    for each other county in Connecticut the MFI for the federal non-metropolitan county parts for the particular county.

    (c)    Anything above to the contrary notwithstanding, the Authority may adopt income limits and sales price limits on a basis different than is provided in subsections (a) and (b) above, in compliance with section 143 of the Internal Revenue Code of 1986, as follows:

    (1)    The Authority shall adopt income limits for borrowers in order to carry out the policies and purposes of the Act.

    (A)    the household income of the mortgagor shall not exceed 115 percent of the applicable median income, unless in a Targeted Area; and

    (B)    in the case of any financing provided under any bond issue for targeted area residents:

    (i)    one-third of the amount of such financing may be provided without regard to subparagraph (A), and

    (ii)    subparagraph (A) shall be treated as satisfied with respect to the remainder of the financing if the household income of the mortgagor is 140 percent or less of the applicable median family income.

    (C)    for purposes of this subsection the term "applicable median income" means, with respect to a dwelling, whichever of the following is greater:

(i)      The area median gross income for the area in which such dwelling is located, or

(ii)     The statewide median gross income.

(2)     The Authority shall adopt sales price limits for mortgaged premises to carry out the policies and purposes of the Act.

(A)     the acquisition cost of a dwelling shall not exceed 90 percent of the average area purchase price applicable to such dwelling, unless in a Targeted Area;

(B)     for purposes of subparagraph (A) the term "average area purchase price" means, with respect to any dwelling, the average area purchase price of single family dwellings (in the federal statistical area in which the dwelling is located) which were purchased during the most recent 12-month period for which sufficient statistical information is available, and

(C)     for purposes of this subsection, the determination of average area purchase price shall be made separately with respect to:

(i)      dwellings which have not been previously occupied, and

(ii)     dwellings which have been previously occupied.

(D)     in the case of Targeted Area residence, subparagraph (A) shall be applied by substituting "110 percent" for "90 percent."

(d)     Anything above to the contrary notwithstanding, the Authority's President – Executive Director may, with the concurrence of the Authority's chair and with the approval of bond counsel, adjust the income limits and sales price limits in a manner consistent with Authority policy.

## A-18.  Computation of Sales Price

(a)     The sales price of an eligible dwelling as established in an arm's length transaction shall not exceed the applicable sales price limit established by the Authority and in effect at the time of the application.  The sales price of an eligible dwelling shall include all amounts paid, either in cash or in kind, by the buyer (or by another party acting on behalf of the buyer) to the seller (or to another party for the benefit of the seller).

(b)     The following items shall be included in the computation of the sales price of an eligible dwelling:

        (1)     the reasonable costs of completing the eligible dwelling, whether or not such costs are to be financed with the proceeds of the mortgage loan, if the eligible dwelling is incomplete at the time of closing and the builder does not normally sell similar incomplete homes;

        (2)     the capitalized value of the ground rent, for an eligible dwelling subject to a ground rent, which value shall be calculated using a discount rate equal to the yield on the Authority's bonds from which the loan proceeds were derived; and

        (3)     the cost of the land on which the eligible dwelling is located, if such land had been owned by the borrower prior to the construction of the eligible dwelling.

(c)     Participating lenders shall obtain appraisals of all properties for which the Authority's loans are requested.  Said appraisals shall be on forms required by the mortgage insurer or guarantor, shall be made by appraisers acceptable to the Authority.  Appraisal reports shall be submitted to the Authority together with other loan documents.

(d)     The value of property as reported in an appraisal shall be that which the property would bring in a bona fide, arm's-length transaction between well-informed/advised parties acting in their own best interests, assuming reasonable market exposure for the property and payment in cash or by means of typical financing terms.  If an appraisal indicates that a property is in need of repairs, a recertification by the appraiser will be required prior to the closing of the loan.  Such recertification shall state that either the necessary repairs have been made or that an escrow has been set up.

(e)     As part of the Borrower Affidavit submitted to the Authority, the participating lender shall include an Acquisition Cost Worksheet completed by the borrower.  Such worksheet, on a form supplied by the Authority, shall set forth in detail the sales (acquisition) price of the eligible dwelling, as computed in accordance with these procedures.

(f)     At the closing of each loan, the participating lender shall certify to the Authority that the sales (acquisition) price of the property is not in excess of the applicable sales price limit.  Such certification shall be based on the lender's review of the Acquisition Cost Worksheet and other relevant documentation, and shall be made as part of the Participating Lender Certification.

(g)     The Authority may at its option reject an application for a mortgage loan to finance the purchase of an eligible dwelling where the appraised value exceeds the applicable sales price limit by more than five (5) percent.

(h)     Notwithstanding any of the above, the Authority reserves the right to require an independent appraisal if, in its sole discretion, it determines that doing so is necessary to ascertain whether the property in question qualifies as an eligible dwelling.

(i)     Surveys are not needed unless required by mortgage insurers/guarantors or the Authority.  A participating lender shall promptly notify the Authority upon discovery of any state of facts which, from the standpoint of a prudent lender, may indicate the need for a survey of the property in question.

## A-19.  Eligible Condominiums (Common Interest Community)

The Authority's mortgage loans may be made to finance the acquisition of any unit in the following classes of condominium units:

(a)     Any unit not part of a conversion; or

(b)     Any unit in a conversion condominium, except that for a period of one (1) year subsequent to the filing of the declaration of condominium, the Authority may provide mortgage loan financing only to an applicant who is a tenant that has rented a unit at the property.

## A-20.  Prior Approval of Condominiums

No participating lender shall submit to the Authority an application for a mortgage loan on a unit in a condominium until the condominium has been approved in writing by the Authority.  A request for approval of a condominium by the Authority shall be in writing and shall include the following:

(a)     the current public offering statement of the declarant;

(b)     the declaration of condominium, including the by-laws of the unit owners' association, survey, floor plans and all exhibits and schedules;

(c)     statistics on the number of units conveyed and the number of unconveyed units that are vacant; and

(d)     The current fiscal year operating budget.

## A-21.  Maximum Number of Units Financed

Upon approval of a common interest community (such as a condominium, a planned unit development, etc.), the Authority will determine the number of units that will be eligible for the Authority's mortgage loans.  The Authority shall not hold mortgage loans on more than fifty (50) percent of the units in any common interest community, and at least fifty (50) percent of the units shall be sold or under bona fide contract of sale prior to the Authority's purchase of any mortgage loan on a unit, unless otherwise approved by resolution at a regular or special meeting of the Authority's Board of Directors.

## A-22.  Detached Single Family Houses in a Multi-Unit Complex

Detached single family houses in a multi-unit complex shall be considered on the same basis as any single family houses not part of multi-unit complexes.

## A-23.  Leasehold Interests

The following requirements shall apply where a loan is secured by a mortgage on a leasehold interest:

(a)      the lease shall be in full force and effect;

(b)      the notice of lease shall be recorded on the land records of the town in which the leased property is located;

(c)      the term of the lease may not terminate earlier than that number of years beyond the maturity date of the Authority's mortgage loan as is equal to the number of years remaining to maturity; and

(d)      the lease shall be in a form acceptable to the participating lender and the Authority; it shall provide that the lessee may mortgage the leasehold estate, and that the lease may not be terminated for a lessee's default unless the mortgagee receives from the lessor written notice of, and reasonable opportunity to cure, such default.

## A-24.  Mortgage Insurance or Guaranty

(a)      Each Authority mortgage loan application submitted to the Authority by a participating lender shall be accompanied by a commitment for mortgage insurance or guaranty if required by the Authority.

(b)      Mortgage insurance or guaranty or a firm commitment, if required by the Authority, shall be in effect at the time the Authority purchases a mortgage loan, and the Authority shall be named as the insured or guaranteed mortgagee.

(c)      Mortgage insurance or guaranty, whether governmental or private mortgage insurance, shall generally conform with such terms and conditions, including amount of

PMI coverage, as are customary in the industry, subject to the discretion of the President-Executive Director, as promulgated from time to time in the CHFA Home Mortgage Programs Operating Manual.

(d)    The issuance of a commitment for mortgage insurance or guaranty shall not obligate the Authority to issue a loan commitment for the application.

## A-25. FHA-Insured, RD-Guaranteed and VA-Guaranteed Mortgage Loans

The Authority's mortgage loans may be insured by FHA insurance, RD guarantees or the VA guarantees on newly constructed or existing eligible dwellings.

Each FHA-insured or VA-guaranteed loan may be insured or guaranteed under one of the following programs:

(a)    FHA Section 203 (b) or (i); Home Unsubsidized,
(b)    FHA Section 203 (k);
(c)    FHA Section 213:  Cooperative Financing,
(d)    FHA Section 221 (d)(2):  Low and Moderate Income,
(e)    FHA Section 222:  Servicemen,
(f)    FHA Section 233:  Experimental Housing,
(g)    FHA Section 234:  Individual Condominium Unit,
(h)    FHA Section 235:  Lower Income (Interest Subsidy),
(i)    FHA Section 237:  Special Credit Risks,
(j)    FHA Section 245:  Graduated Payment Mortgages,
(k)    FHA Section 745:  Direct Endorsements,
(l)    FHA Section 809:  Armed Services Civilian Employees,
(m)    FHA Section 810:  Armed Services Housing,
(n)    VA-Chapter 37, Title 38, U.S. Code (which includes section 501 of the Servicemen's Readjustment Act of 1944, as amended),
(o)    USDA Rural Development Section 502 Guaranteed Rural Housing Loan Program.

The Authority's mortgage loans may be insured under any other FHA insurance program with the prior written approval of the Authority.

VA-guaranteed loans shall not exceed the reasonable value of the property as established by a certificate of reasonable value issued by the VA.  The VA guaranty together with the downpayment (based on the lower of cost or value) shall not be less than thirty (30) percent of the lower of cost or value of the mortgaged premises.

## A-26. Mortgage Insurance Coverage

The term of all mortgage insurance or guarantees with respect to the  Authority's mortgage loans shall not expire prior to the payment in full of said loan.  Any mortgage insurance or guarantee shall be in full force and effect as of the closing date of the Authority's mortgage

loan insured or guaranteed, and such insurance or guarantee shall name the Authority as the insured or the beneficiary of the guarantee.

A private mortgage insurer shall not charge a commission, fee, or other compensation for providing mortgage insurance other than premiums at the rate or rates filed with the Insurance Commissioner.

Notwithstanding the above, private mortgage insurance for those loans (including loans on 2-4 family homes) that close on or after July 29, 1999 shall be subject to cancellation or termination pursuant to the provisions of the Federal Homeowners Protection Act of 1998. In addition, for those loans that closed prior to July 29, 1999, PMI may be terminated if the borrower makes written request to the servicer, subject to the following conditions:

(1)     Sufficient amortization of the mortgage loan has occurred such that the outstanding principal balance of the mortgage loan is 80% or less of the borrower's purchase price;

(2)     A current appraisal shows a fair market value of the mortgaged premises such that the current loan-to-value is 80% or less; and

(3)     The borrower has a good payment history for the 24 months immediately preceding the date of the borrower's request as defined by the Homeowners Protection Act of 1998.

Provided, PMI shall be automatically cancelled for those loans that closed prior to July 29, 1999 upon the following conditions:

(1)     The loan has amortized for a period of fifteen (15) years since closing; and

(2)     The borrower is current on the loan.

## A-27.  Terms and Condition of Authority Mortgage Loans

(a)     Each Authority mortgage loan shall be secured by a valid first lien on the mortgaged property. Such property shall be free and clear of all prior encumbrances and liens except as approved by the Authority, and no rights may be outstanding that could give rise to such prior liens.

(b)     The mortgage note, deed, and any other instruments securing a mortgage loan, shall create legal, valid, and binding obligations of the borrower(s), enforceable in accordance with their terms, free from any right of set-off, counterclaim, or other claim of defense.

(c)     The original term of a mortgage loan on a fee interest shall not exceed thirty (30) years. The original term of a mortgage loan on a leasehold interest shall not exceed thirty (30) years, and the term of the underlying lease shall not expire for at least such

number of years beyond the maturity date of such loan as is equal to the number of years remaining to maturity.

(d)    The Authority may require that mortgage loans be of the growing equity type.  Under this type of mortgage the borrower is qualified under an initial monthly payment of principal and interest based on a 30-year term.  During the term of the mortgage this monthly payment is increased at certain times with the entire payment increase applied to the principal balance on the loan so that the loan is fully paid in substantially less than 30 years.  The note must show the monthly payment for each period of time during the term of the loan.

(e)    The principal amount of each Authority shall be advanced at the time of closing.  Such loan shall provide for monthly amortization payments, interest payable in arrears, with full repayment by maturity.  Amortization shall commence within two (2) months after closing.  Monthly amortization payments shall be due on the first day of each month, and the final payment date shall be shown on the loan documents.

(f)    A mortgage loan shall not provide for a prepayment penalty.  Loans may provide for a late charge in an amount not to exceed five (5) percent on payments fifteen (15) days or more past due to cover the expenses attributable to the receipt of payment after the due date.

(g)    Each Authority mortgage shall provide for the monthly collection of escrow payments for real estate taxes, mortgage insurance premiums, and hazard insurance premiums, when required by the mortgage insurer, in addition to the monthly amortization payments.  A participating lender shall pay interest on escrow deposits at a rate of not less than the minimum set forth in applicable statutes or regulations.

(h)    A mortgage loan shall obligate the borrower to keep the mortgaged premises in good repair and condition, keep the premises free from other liens and encumbrances, and maintain hazard insurance in accordance with the requirements set forth in section III, A-29 entitled "Hazard Insurance Coverage" of these procedures.

(i)    The Authority may require the mortgage and the mortgage note to be executed on forms provided by the Authority.

(j)    All requirements of all federal and state law, rules, regulations and procedures now existing or hereafter adopted, applicable to mortgages and mortgage loan transactions, including without limitation truth-in-lending laws, fair credit reporting laws, equal opportunity laws, usury laws, and law regulating interest due on escrow accounts, shall be complied with where applicable.

## A-28.  Title Insurance

(a)    Each Authority mortgage loan shall be insured by a mortgagee's title insurance policy which insures that the Authority has a good and valid mortgage on the

mortgaged property.  Such policy shall be issued in a form and by a title insurer licensed to do business in the State of Connecticut and must show recording data for the mortgage and the assignment thereof.  The policy must be in an amount not less than the original principal balance of such loan.  The named insured shall be named in the following form:

"(Participating lender) and/or Connecticut Housing Finance Authority, its successors and assigns, as their interests may appear."

(b)    Title insurance policy exceptions for agreements or restrictive covenants relating to cost, use, building lines, minimum size, building materials, architectural, aesthetic or similar matters (other than single- family use restrictions on two to four family properties) are acceptable to the Authority if:

(1)    there is no possibility of reversion or forfeiture of title in the event of violation thereof, and the title policy insuring the mortgage loan affirmatively insures that a breach or violation of covenants, restrictions, agreements, and other encumbrances will not result in a forfeiture or reversion of title; and

(2)    no violation of any such agreements or restrictive covenants exists as of the date of closing.

(c)    The following title insurance policy exceptions shall be acceptable to the Authority:

(1)    any mutual easement agreement recorded in the land records of the town within which the property is situated that establishes a joint driveway or a party wall, whether constructed partly or wholly on the mortgaged property or the adjoining property, but only if the easement agreement allows all present and future owners, their heirs and assigns, unlimited use of the driveway or party wall without any restriction other than any restrictions stating the mutual easement owners' rights in common and duties as to joint maintenance;

(2)    Encroachments on the mortgaged property by improvements on adjoining property, provided such encroachments do not extend more than one foot over the property line at any point, do not cover or enclose an area of greater than fifty (50) square feet on the mortgaged property, do not touch any building or any other improvement, and do not interfere with the use of the mortgaged property as a residence.  An encroachment not meeting these standards will be acceptable to the Authority only if it is made the subject of a recorded easement agreement; and

(3)    liens for real estate or other taxes and assessments, including sewer or street-improvement caveats, no payments under which are due at the time of closing.

## A-29.  Hazard Insurance Coverage

(a)    Property subject to an Authority's mortgage loan shall be covered by hazard insurance as follows:

(1)    Fire and customary extended coverage insurance in an amount sufficient to cover the outstanding principal balance of such loan or the full insurable value of the improvements on the mortgaged property, whichever is less.  The amount of coverage may not be less than the amount required by a mortgage insurer or guarantor nor be required to exceed the maximum amount permitted by applicable statutes.

(2)    A participating lender shall be responsible for and shall be deemed to guarantee compliance with the provisions of the Flood Disaster Protection Act of 1973, whenever such provisions are applicable to any Authority mortgage loan.  If mortgaged property is located in an area having special flood hazards, as identified by the Secretary of Housing and Urban Development, flood insurance shall be maintained in the amount of the outstanding principal balance of the Authority's mortgage loan or the maximum limit of the coverage available under the National Flood Insurance Act of 1968, as amended, whichever is less.

(3)    Hazard insurance policies may provide for a deductible in an amount acceptable to the Authority for each event of loss, applicable to either fire or extended coverage or both.

(4)    Each hazard insurance policy shall be issued by a hazard insurance carrier licensed to do business in Connecticut.

(5)    Hazard insurance shall be in effect on the closing date of a mortgage loan and the premium therefore shall be paid in advance for a full year from the closing date.

(6)    The participating lender shall notify the Authority whenever the provisions of this section are not complied with.

(b)    Insurance policy requirements are as follows:

(1)    All policies of hazard insurance shall contain a mortgagee clause naming "Connecticut Housing Finance Authority and/or its successors and assigns, as their interests may appear" as the loss payee.

(2)    All policies of hazard insurance shall provide that the insurance carrier will provide written notice to the Authority at least ten (10) days in advance of the effective date of any change or cancellation of a policy.

(3)    A participating lender shall give any notices necessary to fully protect the interest of the Authority as first lienholder under the terms of any insurance policy under which the Authority has an interest and under applicable law.

(c)    Insurance policies shall not be accepted by a participating lender or the Authority if:

(1)    under the terms of the insurance carrier's charter, bylaws or policy, contributions may be required to be made by, or assessments be made against, the Authority or its assigns; or

(2)    contributions may be required to be made by, or assessments made against, a borrower, which may become a lien against property prior to the lien of an Authority mortgage; or

(3)    by the terms of the insurance carrier's charter, bylaws, or policy, loss payments are contingent upon action by such carrier's board of directors, policyholders, or members; or

(4)    the insurance policy includes any limiting conditions that may prevent the Authority or the borrower from collecting insurance proceeds payable under the policy.

## A-30.  Loan Purchase

(a)    Participating lenders shall verify that all the Authority's mortgage loan documents are properly executed by the named borrowers and are correct as to property location, principal amount, interest rate and maturity date.

(b)    Participating lenders shall determine the amount of monthly escrow payments with respect to each Authority mortgage loan and make arrangements for the establishment of an escrow account with the servicer, if the servicing is not to be done by the participating lender.  The participating lender or other servicer shall reserve or escrow amounts estimated to be sufficient to pay all escrow items by their respective due dates.

(c)    Participating lenders, or other servicers, shall escrow for real estate taxes, any mortgage insurance premiums, and hazard insurance premiums (when hazard insurance premiums are required to be escrowed by the mortgage insurer or guarantor).

(d)    All fees collected by a participating lender from a borrower or from the seller of property to such borrower, including without limitation application fees and processing fees, shall not in their aggregate exceed one (1) percent of the mortgage amount, except as set forth in paragraph (e) hereof.

(e)    A participating lender may recover certain expenses incurred in processing and closing a mortgage loan application in an amount not to exceed actual cost and not in excess of the maximum amount permitted by the mortgage insurer or guarantor.  Such expenses include cash expenditure to pay for outside services rendered, such as appraisals, surveys, legal representation, credit report, and other items approved in writing by the Authority.

(f)　　The Authority may transfer funds to a participating lender from whom a mortgage loan has been purchased prior to the receipt and acceptance of all required loan documents, subject, however, to the provisions set forth in section III, A-33 entitled "Repurchase Requirements" of these procedures.

(g)　　Not later than one hundred twenty (120) days after the closing of a mortgage loan, the participating lender shall forward the complete loan purchase package to the Authority containing all documents required by the Home Mortgage Programs Operating Manual and the Master Commitment Agreement for Mortgage Purchases.  Extensions may be granted by the Authority, in its sole discretion, only upon written request from the participating lender.  The Authority may require the repurchase of any loan if its loan purchase package is not received within 120 days after the closing and no extension has been granted.  A participating lender's responsibility to submit a loan purchase package will not be relieved by the fact that a different lender will be handling the servicing of the loan in question.

## A-31.  Loan Servicing

Participating lenders which do not service the Authority's mortgage loans shall deliver all documents and information concerning such loans not required to be submitted to the Authority after the closing of such loans to a servicer designated by the Authority, or if there is no designated servicer, to the Authority.  All servicing shall be carried out under the terms of the Home Mortgage Servicing Agreement.

## A-32.  Assumptions

(a)　　The standards for assumption of the Authority's loans depend upon the type of mortgage insurance or guaranty used and the date upon which the loans were originally committed for purchase.  These standards are as follows:

(1)　　loans committed prior to January 1, 1982;

A)　　FHA-insured and VA-guaranteed loans may be assumed pursuant to applicable federal requirements, without the prior consent of the Authority.  Servicers are responsible for ensuring compliance with such federal requirements.  Following the assumption, the servicer shall furnish the Authority copies of the recorded warranty deed and assumption agreement, as well as evidence of adequate hazard insurance coverage.

B)　　PMI loans are assumable only with the prior written consent of the  Authority.  Both the property and the assuming buyer(s) must meet the standards for eligible borrowers/dwellings as are then in effect.  In order to obtain

the Authority's consent, the servicer shall forward a request for approval of assumption on forms provided by the Authority, together with such underwriting documents as are set forth in the Home Mortgage Programs Operating Manual. Following the assumption, the servicer shall furnish the Authority with the original recorded assumption agreement, a copy of the warranty deed, an original Owner- Occupancy Certificate, executed by the assuming buyer(s), a PMI endorsement naming the assuming buyer(s), evidence of hazard insurance coverage, and the HUD Form 1 (RESPA).

(2)     assumption of loans committed after January 1, 1982:

A)     The prior consent of the Authority is required for the assumption of all loans, regardless of the form of mortgage insurance or guaranty.  Such consent may be granted only upon the property's and the assuming buyer's qualifying as an eligible dwelling and an eligible borrower, respectively, according to those standards in effect at the time.  The servicer shall forward such documentation to the Authority as is required for approval of new loans.

B)     VA loans are assumable only if a copy of the Veteran's Consent Statement, as required by 36 CFR Sec. 36.4306 (a) & (e), is on file with the Authority.  PMI loans require the assuming buyer(s) to obtain the PMI company's written approval of the assumption.

C)     Following the assumption, the servicer shall provide the Authority with such documentation as is required by the Home Mortgage Programs Operating Manual.

(b)     The servicer may charge the assuming buyer a fee equal to one percent (1%) of the loan's outstanding principal balance at the time of the assumption, except for those loans which are assumable without the Authority's prior consent.  In no event shall the fee charged exceed the maximum permitted by the mortgage insurer or guarantor.

(c)     The Authority will not release any original borrower from liability following the assumption of a loan.  Any provision to the contrary in an assumption agreement is void.

## A-33.  Repurchase Requirements

Upon a participating lender's failure to comply with reasonable requests from the Authority to correct or complete documentation for any loan purchase package or upon other breach of the terms of the Master Commitment Agreement for Mortgage Purchases, or any failure to

comply with the requirements for eligibility set forth in the Home Mortgage Program Operating Manual (which failure is to be determined in the sole discretion of the Authority) without regard to whether the participating lender may be at fault, the mortgage will be re-assigned to the lender.  Lender shall repurchase the mortgage loan as provided under the terms of the Master Commitment Agreement for Mortgage Purchases.

## A-34.  Rehabilitation Mortgage Loans

The Authority may make funds available for rehabilitation mortgage loans. Such loans shall meet the requirements of Section 4 of the Home Mortgage Programs Operating Manual. Processing of and eligibility for rehabilitation Mortgage loans shall be the same as for regular home mortgage loans, except as set forth in the aforementioned.

## A-35.  Retention of Records; Inspection of Books

Any documents required by these procedures or by state or federal law in connection with the commitment to purchase, purchase, or servicing of an Authority mortgage loan and not delivered to the Authority shall be retained by a participating lender for at least two (2) years after the date of purchase by the Authority of the mortgage loan, or such longer period as may be required by law, and, if requested by the Authority, for a reasonable period thereafter.  If during such retention time the Authority requests original or certified copies of such documents, the same shall be delivered to the Authority.  Where appropriate, such documents may be kept on microfilm, microcard, or other similar photographic media.

Participating lenders shall make all records and books maintained in connection with the Authority mortgage loans available for inspection by the Authority upon request during reasonable business hours.

The Authority may, at its option, reconvey a mortgage loan to the participating lender that assigned said loan to the Authority if such lender has failed to retain documentation as required herein, and such lender shall pay to the Authority the unpaid principal balance, all accrued and unpaid interest, and any other amounts due.

## A-36.  Records of Declined Applications

Participating lenders shall maintain accurate records for each Authority mortgage loan application which is declined.  If any such records are requested by the Authority, they must be delivered promptly upon receipt of the request therefor.

## A-37.  Homeownership Program

The Authority may finance mortgage loans for eligible tenants of public housing tenants receiving public rental assistance, or persons with disabilities receiving living support services from the Department of Mental Retardation.  The interest rate will be determined by the President-Executive Director; this interest rate will be lower than the regular Home Mortgage Program interest rate.  Qualified persons under this program must attend pre-

purchase counseling.  Other eligibility and underwriting requirements will follow CHFA regular Home Mortgage Program guidelines.

## A-38.  Insurance Fund Program

The Authority generally requires that each home mortgage loan be insured pursuant to Sections III A-24, A-25, and A-26 hereof.  Most loans are insured through FHA, VA, RDA, or PMI.  However, where mortgage insurance is not available through the above-mentioned mortgage insurers, the Authority may permit certain loans to be insured through its own Insurance Fund.  The loan to be insured must meet the requirements of the CHFA Home Mortgage Programs Operating Manual and the Authority's Insurance Fund Operating Manual.

**Legal Department**
**Single Family Housing**
**Attorney: William A. Dickerson**
**Last Revised:  10/26/06**
**Adopted:  12/19/06**
**X:\WP51\LEGAL\RULES\sfamhousing.doc**