Hearing Date and Time: November 19, 2012 at 10:00 a.m. (prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                      : Chapter 11
                                            :
Residential Capital, LLC, et al.,           : Case No. 12-12020 (MG)
                                            :
                    Debtors.                : Jointly Administered
                                            :
------------------------------------------------------------ x

**STATEMENT OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS CONCERNING SALES OF THE**
**DEBTORS' SERVICING PLATFORM AND LEGACY LOAN PORTFOLIO**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above debtors and debtors-in-possession (collectively, the "**Debtors**") submits this statement (the "**Statement**") concerning the sales of the Debtors' servicing platform (the "**Platform Sale**") and legacy loan portfolio (the "**Legacy Portfolio Sale**").[1] The Committee respectfully represents as follows:

---

[1] *See* Debtors' *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases*

**STATEMENT**

1.   On November 5, 2012, the Committee filed a reservation of rights with respect to the Sale Motion because it was engaged in negotiations with the Debtors and other parties in interest on certain open issues with the sale documents. Since that time, a number of parties have filed objections to the Sales. On November 12, 2012, the Debtors filed an omnibus reply (the "**Reply**"), which in part, outlines the resolution of certain of the objections. In addition, on November 15, 2012, the Debtors filed a revised proposed sale order for the Legacy Portfolio Sale.[2]

2.   While the Committee continues to be supportive of the Sales, a number of its issues remain open. The Committee will continue discussing these issues with the Debtors and the other relevant parties in interest, including Ocwen Loan Servicing, LLC ("**Ocwen**"), the prevailing bidder in the Platform Sale, and Berkshire Hathaway Inc. ("**BH**"), the prevailing bidder in the Legacy Portfolio Sale. However, because these issues remain unresolved today, the Committee files this Statement to bring these issues to the Court's attention.

   A.   **The Debtors Are Prematurely Removing Contracts from the Ocwen APA.**

3.   The Debtors indicated in the Reply that they intend to remove certain contracts from assignment to Ocwen because they have been unable to resolve cure objections with respect to those contracts. What was not disclosed, however, is the cost to the estates of not assigning these contracts, which according to the Reply include servicing agreements with Syncora Guarantee Inc., MBIA Insurance Corp., and The Frost National Bank. Based on an analysis provided by the Debtors, failing to assign these contracts will reduce the purchase price

---

*Related Thereto; and (IV) Granting Related Relief* [Docket No. 61] (the "**Sale Motion**"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion.

[2] Earlier this week, the Debtors shared with the Committee a draft proposed sale order for the Platform Sale (together with the proposed sale order for the Legacy Portfolio Sale, the "**Proposed Sale Orders**").

by approximately $10 million.  To the extent the Debtors determine not to assign additional contracts, the purchase price reduction will increase further.  While the Committee agrees that the Debtors should not assume contracts whose cure costs exceed their sale value, the Committee is concerned that certain of these contracts are being dropped from the sale prematurely by the Debtors and without the Debtors fully considering the merits of the asserted cure claims.

4.      Moreover, the parties agreed at the Auction to modify section 2.15 of the Ocwen APA to permit the Debtors to remove contracts from the sale up to two days prior to the closing.  Thus, there is no need for the Debtors to decide now which contracts to remove from the sale.  The Debtors can adjourn any open cure disputes to a date after the sale hearing, to allow the Debtors – and the Committee – to properly assess the merits of the cure claims, and litigate them if necessary, before finally determining whether to assign these contracts to Ocwen.

**B.      The Sale Order Should Not Insulate AFI from the Compliance Claims.**

5.      After the Auction, the Debtors and Ocwen revised section 6.16 of the Ocwen APA to require the Debtors and Ocwen to use best efforts to negotiate with the various governmental entities in connection with the parties' compliance with the Consent Order and the Consent Judgment.  The agreement concerning the terms of the parties' compliance is to be set forth in a revised section 6.16.  To date, a revised section 6.16 has not been finalized.  As the Court is aware, the estates have claims against AFI and other parties for the costs of compliance with the Consent Order and the Consent Judgment (the "**Compliance Claims**").  Accordingly, the Committee has requested that the Sale Order expressly preserve the Compliance Claims.  The Committee's proposed language is provided in section 1 of **Exhibit A** attached hereto (the "**Proposed Sale Order Riders**").  To address concerns raised by Ocwen, the proposed language excludes Ocwen from the list of potential defendants against whom Compliance Claims are reserved.

6. In addition, the Committee understands that AFI will withhold its consent to the transaction unless the Platform Sale Order is modified to require the Debtors to escrow funds sufficient to cover the Debtors' obligations under the Consent Order and the Consent Judgment. The Committee objects to any such modification. There is no requirement for an escrow in either the Consent Order or the Consent Judgment. Moreover, the Debtors have stated that upon the closing of the Sale (and the application of proceeds to the Debtors' various prepetition and postpetition facilities), the estate will receive approximately $900 million in net proceeds. Thus, following the sale, the Debtors will have sufficient assets to perform their monetary obligations under the Consent Order and the Consent Judgment.

C. **Ocwen Should Use Commercially Reasonable Efforts to Enter into a TSA.**

7. As part of the stalking horse deal for the Platform Sale, AFI and Nationstar signed a support letter requiring that they use commercially reasonable efforts to enter into a transition services agreement (a "**TSA**") consistent with an agreed-to term sheet. Entry into a TSA was a condition to closing under the Nationstar APA.

8. Prior to the Auction, AFI filed the letter on the docket and stated that it "is prepared to offer substantially similar terms to all qualified bidders participating in the auction." *See Notice of Filing of Ally Financial Inc. Support Letter In Relation to the Debtors' Proposed Sale of Assets* [Docket No. 1845]. Based on discussions with the Debtors' counsel, the Committee's understanding was that AFI and Ocwen would enter into a substantially identical support letter obligating the parties to use commercially reasonable efforts to enter into a TSA, although entry into a support letter was not made a condition to closing.

9. As of the date hereof, Ocwen and AFI have still not entered into a support letter regarding entry into a TSA. Because a TSA is a condition precedent to Ocwen's obligations under the Ocwen APA, if Ocwen and AFI are unable to come to terms on a TSA,

- 4 -

Ocwen can delay closing.  The Court should not allow this kind of unfettered conditionality to be built into the Platform Sale.  Accordingly, the Platform Sale Order should be clarified to require Ocwen and AFI to negotiate in good faith over the terms of a TSA and to each use commercially reasonable efforts to execute a definitive agreement.

### D.    The Sale Orders Should Remain Neutral on Allocation of Purchase Price.

11.    As indicated in the Reply, the Debtors agreed to add language to the Proposed Sale Orders affirmatively ruling that the allocation of the purchase price of the Sales will not be binding on the parties.  The Committee believes that the Sale Order should simply provide that all parties reserve their rights concerning the allocation of the purchase price.  There is no basis for the Court to make an affirmative ruling that the allocation of the purchase price provided for in the Ocwen APA is not binding on the parties.  To the extent a party wants to take the position that the Ocwen APA is binding, such an argument should not be foreclosed.  The Committee's proposed language is provided in section 2 of the Proposed Sale Order Riders.

### E.    The Sale Order Should Clarify That Estate Claims Are Not Purchased Assets.

11.    The Committee and the Examiner are investigating potential estate causes of action against AFI and other parties (the "**Estate Claims**").  It is indisputable that the Estate Claims are a focal point of these Chapter 11 cases, are expected to be a significant source of recovery for creditors, and were never intended by any party to be included in the assets to be sold to Ocwen in the transaction.  Nevertheless, certain provisions of the Ocwen APA do not unambiguously reflect this understanding.  For example, pursuant to section 2.1(m) of the Ocwen APA, the term "Purchased Assets is defined as including:

> [T]he causes of action, lawsuits, judgments . . . and any other rights or Claims related to the Purchased Assets, the Assumed Liabilities and any foreclosure, recovery and other loss mitigation

- 5 -

activities related to the Business, and, with respect to the Transferred Employees and any vendors (other than AFI and its Affiliates) with whom any of the Sellers have conducted business in the year prior to the Closing and with whom Purchaser will continue to engage in connection with the operation of the Business following the Closing (including, for the avoidance of doubt, any vendor that is a party to an Assumed Contract), all preference or avoidance claims and actions of any of the Sellers related thereto, including any such claims and actions arising under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

12.     The Proposed Sale Orders should therefore include a provision that explicitly clarifies the assets being sold to Ocwen under the Ocwen APA do not include the Estate Claims.  The Committee's proposed language is provided in section 3 of the Proposed Sale Order Riders.

### F.     Compliance with Section 363(o) of the Bankruptcy Code.

13.     The provisions of the Proposed Sale Order for the Platform Sale appear to be inconsistent with section 363(o) of the Bankruptcy Code.  Section 363(o) provides:

> [I]f a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

While paragraph 8 of the Proposed Sale Order for the Legacy Portfolio Sale was modified to provide that assets will be sold free and clear "[e]xcept as otherwise provided by section 363(o) of the Bankruptcy Code," it is unclear whether the Proposed Sale Order for the Platform Sale contains such a proviso.  The Proposed Sale Order for the Platform Sale should be clarified so that it does not purport to modify the terms of section 363(o).

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed Sale Orders with the modifications proposed herein, and grant such other and further relief as the Court deems just and proper.

Dated:  November 15, 2012
        New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Douglas H. Mannal
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee
of Unsecured Creditors*

# EXHIBIT A
**Proposed Sale Order Riders**

**Proposed Sale Order Riders**

**1. Preservation of Compliance Claims**

Notwithstanding anything herein or in the Ocwen APA (including sections 6.16A, 6.16B and 6.16C) to the contrary and consistent with previous orders of the Court, the Ocwen APA and the Order shall not waive or foreclose and is without prejudice to (i) any and all claims, causes of action and defenses that may be asserted by the Debtors or any party-in-interest (including the Creditors' Committee) for any and all past or future costs of compliance with the FRB Consent Order, the Consent Judgment, DOJ/AG Settlement, the Order of Assessment, and sections 6.16A, 6.16B and 6.16C of the Ocwen APA ("Compliance Claims") against any and all parties other than the Purchaser, including, without limitation, claims for contribution and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, (ii) all rights of AFI to object to any Compliance Claim on any and all bases and bring counterclaims against the Debtors for Compliance Claims, including asserting claims (x) that the costs of compliance in connection with the Compliance Claims are administrative expenses of the Debtors' estates pursuant to 11 U.S.C. § 503(b) and (y) that AFI is relying on the Debtors' costs of compliance in its decision to support operationally and financially the Debtors' efforts to sell the assets of the Debtors' estates on a going concern basis and maximize the value of the estates, and (iii) all rights of the Debtors or *any* party-in-interest (including the Creditors' Committee) to respond to any objections and contest any and all counterclaims asserted by AFI, provided, however, that in each case such claims shall not be resolved, waived, or discharged by the Debtors without the consent of the Creditors' Committee or further order of the Court.

**2. Allocation of Purchase Price**

~~Any~~ Nothing in this order or the Ocwen APA shall be deemed to be a determination that any purchase price allocations contained in Article III of the Ocwen APA are ~~not~~ binding in any way on creditors of the various Debtors with respect to the allocation of the proceeds of the Sale either between and among the various Debtor estates or between and among the various classes of assets sold; provided that any subsequent allocation of the proceeds for claim purposes shall have no effect on the Purchaser. All rights of all parties are reserved with respect to the allocation or distribution of the proceeds of the Sale.

**3. Preservation of Estates Claims**

Notwithstanding anything to contrary herein or in the Ocwen APA, the Ocwen APA and this order are without prejudice to, shall preserve and shall not transfer to Purchaser, waive or foreclose any and all claims, rights, actions, causes of action (including, without limitation, causes of action, claims, remedies, or rights that may be brought by or on behalf of any Debtor under any section contained within chapter 5 of the Bankruptcy Code), liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, promises, variances, trespasses, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, defenses and cross claims, damages, or judgments whatsoever ("Causes of Action"), whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, of the

Debtors or any parties-in-interest (including the Creditors' Committee) other than as set forth in section 2.1(m) of the Ocwen APA, as clarified herein. For the avoidance of doubt, (i) no Causes of Action under chapter 5 of the Bankruptcy Code shall be transferred under the Ocwen APA other than preference or avoidance claims and actions of any of the Sellers arising under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code solely with respect to the Transferred Employees (as defined in the Ocwen APA) and any vendors, which such transferred Causes of Action must satisfy the terms and conditions of section 2.1(m) of the Ocwen APA to be transferred and (ii) Causes of Action transferred under the Ocwen APA shall not include Causes of Action that may arise from, or are related to, (a) the matters that fall within the scope of the investigation by Arthur J. Gonzalez, as court-appointed examiner, including without limitation the *matters* included in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner [Docket No. 925] and (b) the matters that fall within the scope of the Creditors' Committee investigation authorized pursuant to Bankruptcy Rule 2004, including without limitation the matters included in the Order Authorizing the Official Committee of Unsecured Creditors to Issue Subpoenas Compelling the Production of Documents and Provision of Testimony by the Debtors and Others Pursuant to Federal Rule of Bankruptcy Procedure 2004 [Docket No. 217].