**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No.: 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.* | ) |
| | ) Chapter 11 |
| *Debtors*. | ) |

**Objection to Cure Amount Submitted by OceanFirst Bank**
**Re: Second Notice of (I) Debtors' Intent to Assume and**
**Assign Certain SBO Servicing Agreements As Executory Contracts and**
**(II) Cure Amount Related Thereto (Doc. # 2077)**

OceanFirst Bank on behalf of itself and Columbia Home Loans, LLC (collectively, "*OceanFirst*"), by its attorneys, and pursuant to 11 U.S.C. § 365 (b) (2012) hereby objects to the Cure Amount listed in Schedule 1, page 3 of 5 in Second Notice of (I) Debtors' Intent to Assume and Assign Certain SBO Servicing Agreements as Executory Contracts and (II) Cure Amount Related Thereto (the "*Second Notice*") and respectfully requests that the Court enter an Order requiring Assignee Ocwen to pay a Cure Amount of $110,384.55.  In support thereof OceanFirst states as follows:

**I.  Overview:**

1.  In the Second Notice, Debtor has listed the Cure Amount for "Columbia Seller and Servicer Contracts 01-03-86 with addenda" and "FRB NIC Columbia HL closure" as "$0.00" respectively on the Schedule 1-Platform SBO Servicing Agreements (*See* Second Notice, Schedule 1, page 3 of 5, third and fourth rows from the top).  It is to these Cure Amounts that OceanFirst Bank objects for the reasons stated below.

2.  On or about March 27, 1986, Residential Funding Corporation ("*Investor*") executed a Servicing Agreement with Columbia Equities Ltd. ("*Columbia*"), a predecessor wholly owned subsidiary of OceanFirst Bank ("*Servicing Agreement*") (*See* Declaration of Kathy A. Ramos

("*Ramos*"), ¶¶7-8, p. 2, <u>Exhibit 1</u>).[1]    The parties had also entered into a Mortgage Purchase Agreement (*Id.*) (Servicing Agreement, p. 1).    Under the Servicing Agreement, OceanFirst agreed to service certain Mortgage Loans that were purchased by the Investor (Servicing Agreement, ¶ 2(c), p. 3; see also ¶¶ 8-9, pp. 8-11).

3.    On or about July 10, 1996, Borrower Eileen Musillo ("*Borrower*") executed a promissory note in favor of Columbia and Columbia extended to Borrower a loan in the principal amount of $240,000.00 (the "*Note*") (Ramos, ¶ 9, p. 2; <u>Exhibit 2</u>).    Under the Note, the Borrower agreed, *inter alia*, to pay eleven (11%) percent interest per annum on the unpaid principal balance (Note, ¶ 2, p. 1).    The Borrower, to secure her promise to pay under the Note, also granted a mortgage (the "*Mortgage*") on her residential home located at 736 Holmdel Road, New Jersey 07730 (the "*Property*") (Ramos, ¶ 12, p. 2).    On February 1, 2002, Borrower defaulted under the Note and Mortgage (*Id.*, ¶ 13).    On March 5, 2012, foreclosure proceedings were commenced (*Id.*, ¶ 14).    On November 7, 2002, a judgment of foreclosure was entered (*Id.*).    The foreclosure sale was initially delayed, conducted and confirmed and then vacated on a tenant's motion (*Id.*).    The Borrower then filed bankruptcy (Id., ¶ 15).    As part of a post-petition plan, Borrower agreed to make payments of principal and interest but the Borrower made payments of interest not at the Note rate as agreed, but at the statutory judgment rate below the Note Rate (*Id.*).

4.    The Servicing Agreement states as follows:

12. <u>Realization</u> <u>Upon</u> <u>Defaulted</u> <u>Mortgage</u> <u>Loans</u>.

The Seller shall foreclose upon or otherwise comparably convert the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments, subject to and in accordance with the provisions of the

---

[1] Columbia Equities, Ltd., is now known as Columbia Home Loans, LLC, which is New York Limited Liability (Ramos, ¶ 2, p. 1).

Guides; …. In connection with such foreclosure or other conversion, the Seller shall, consistent with recovery under the Mortgage Pool Insurance Policy and any policy of primary mortgage guaranty insurance, exercise such of the rights and powers vested in it hereunder and under the Guides and use the same degree of care and skill in their exercise or use, as other prudent mortgage lenders in the State of New York would exercise or use under the circumstances in the conduct of their own affairs. In considering what actions are or are not prudent in the circumstances, the Seller shall consider the matters enumerated in Section 126(2) (a) through (e) and Sections 126 (3) and (4) of the New York Real Property Law, as in effect on the date of this Servicing Agreement. *The foregoing is subject to the proviso that the Seller shall not be required to expend its own funds in connection with any foreclosure or conversion or towards the restoration of any property unless it shall determine (i) that such foreclosure, conversion or restoration will increase the proceeds of liquidation of the Mortgage Loan after reimbursement to itself for such expenses and (ii) that such expenses will be recoverable to it either through Liquidation Proceeds (respecting which it shall have priority for purposes of charges to the Mortgage Account or the Certificate Account, as the case may be) or through Insurance Proceeds (respecting which it shall have similar priority).*…

(Emphasis supplied) (Servicing Agreement, ¶ 12, pp. 12-13).

## II. OceanFirst Objects to the Cure Amount of "$0.00;" the Cure Amount Should Be the Overpayment of Interest in the Amount of $110,384.55

5.  From December 1, 2002 to May 1, 2012, the Borrower remitted payments totaling $139,867.61 (Ramos, ¶ 17, p. 3; Exhibit 3).

6.  OceanFirst deposited into the Custodial Account the total of $250,252.16 advancing funds in accordance with its Servicing Obligations under the Servicing Agreement (Ramos, ¶ 18; Servicing Agreement, ¶ 8(d), p. 10).

7.  As a result, OceanFirst is entitled to reimbursement for the advance of $110,384.55.

8.  The Debtor knew or should known that it was being overpaid interest and OceanFirst Bank was entitled to reimbursement (Servicing Agreement, ¶ 14, p. 14).

9.  OceanFirst believed in good faith that the post-petition payment plan entered into with the Borrower would enhance the asset that is the Note and as the Sale has yet not taken place, has yet to determine that value of Borrower's underlying default Mortgage Loan.

10. The Debtor has been unjustly enriched for the overpayment of interest in the amount of $110,384.55 and is not entitled to that payment.

Wherefore, OceanFirst Bank, by its attorneys, objects to the Cure Amount and prays that the Court enter an Order requiring Assignee Ocwen to pay a Cure Amount of $110,384.55 over to OceanFirst Bank and for such other and further relief as is appropriate.

White Plains, New York
Dated: Friday, November 16, 2012

Respectfully submitted,

WEISS & WEISS LLC

By:    /s/ Scott A. Weiss
        A member of the firm
        2000 Post Road, Suite LL106
        Fairfield, Connecticut 06430
        Or:  50 Main Street, Suite 1000
        White Plains, New York 10606
        Telephone:  (203)-254-2707
        Facsimile:  (203)-254-2725
        (SW 0431)
        ***Attorneys   for:   OceanFirst   Bank   and
        Columbia Home Loans, LLC***