GIBBONS P.C.
Jeffrey S. Berkowitz
Christopher A. Albanese
One Penn Plaza, 37th Floor
New York, New York 10119-3701
Telephone: (212) 613-2000
Facsimile: (212) 290-2018

*Counsel for Wells Fargo Bank, N.A. with respect to its servicing and sub-servicing agreements with the Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**WELLS FARGO BANK, N.A.'S OBJECTION TO THE PROPOSED
SALE ORDERS AND RESPONSE TO DEBTORS' OMNIBUS
REPLY TO OBJECTIONS TO DEBTORS' SALE MOTION**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Wells Fargo Bank, N.A. ("Wells Fargo"), as counterparty to numerous mortgage loan servicing and related executory contracts ("Wells Fargo Servicing Agreements") by and between one or more Debtors and Wells Fargo[1] and its predecessors and affiliates,[2] submits this response to the *Omnibus Reply to Objections to Debtors' Sale Motion* [Docket No. 2135] (the "Reply") and respectfully represents as follows:

---

[1] This objection relates solely to Wells Fargo as servicer under the Wells Fargo Servicing Agreements. Wells Fargo Corporate Trust Services is represented by its own counsel and will address any trustee, master servicer, and document custodian issues in its own filing.

[2] Predecessors and affiliates include, but are not limited to, Wells Fargo Financial Retail Credit, Inc., Wachovia Bank, N.A., First Union National Bank, and Norwest Mortgage, Inc.

## PRELIMINARY STATEMENT

1.  On May 14, 2012, Debtors filed their Sale Motion[3] [Docket No. 61] seeking, among other things, to assume and assign the Wells Fargo Servicing Agreements. In response, Wells Fargo filed (1) the Cure Amount Objection [Docket No. 1648] and (2) the Sale Objection [Docket No. 1979] (together with the Cure Amount Objection, the "Objections").

2.  Following the auction, Ocwen Loan Servicing, LLC ("Ocwen") and Berkshire Hathaway Inc. ("BH," and together, the "Purchasers") were named successful bidders for certain assets, including the Wells Fargo Servicing Agreements. *See* Docket No. 1960. Subsequently, the Debtors filed amended asset purchase agreements (the "Ocwen APA" and the "Amended and Restated BH Legacy APA," and together, the "APAs"). *See* Docket No. 2050.

3.  Wells Fargo and the Debtors have engaged in negotiations over the Objections, but have so far been unable to reach an agreement resolving all of the issues raised. Although the Debtors have provided updated schedules that accurately identify the Wells Fargo Servicing Agreements that the Debtors seek to assume and assign to the Purchasers, Wells Fargo and the Debtors have not resolved disputes over "Cherry-picking among servicing obligations" and "Limitation on pre-closing liabilities." *See* Debtors' Omnibus Reply, Ex. 1 [Docket No. 2135]. In addition, the Debtors have not addressed the Terminated Agreement as that term is defined and discussed below. Finally, Wells Fargo does not believe the Ocwen Proposed Order [Docket No. 2188] and the BH Proposed Order [Docket No. 2181] (and together, the "Proposed Sale Orders") preserve Wells Fargo's contractual rights consistent with the Bankruptcy Code.

---

[3] Capitalized terms used herein but not defined shall have the meanings ascribed thereto in the Motion, Notice, and Amended Notice.

2

# ARGUMENT

## I. The Debtors Cannot Cherry-Pick Among Servicing Obligations Enabling the Purchasers to Reap Contractual Benefits without Accepting Contractual Obligations

4. The Proposed Sale Orders are unnecessarily vague regarding post-closing rights and obligations under the Wells Fargo Serving Agreements and, as currently drafted, violate the Bankruptcy Code, including Section 365. In particular, Wells Fargo objects to the Proposed Sale Orders to the extent they appear to be cherry picking the benefits of the Wells Fargo Servicing Agreements without requiring the Purchasers to fulfill their corresponding obligations.

5. Since the Petition Date, Wells Fargo and the Debtors have maintained the *status quo* under the Wells Fargo Servicing Agreements. Wells Fargo has continued to fund its contractual obligations to fund advances, including principal and interest advances, servicing advances, and corporate advances (collectively, "Advances") and continued to recover those Advances from either subsequent borrower payments or reimbursement from Debtors in accordance with the Wells Fargo Servicing Agreements. While certain of the Advances funded by Wells Fargo to date are appropriately classified as "cure" upon the Debtors' proposed assignment of the Wells Fargo Servicing Agreements to the Purchasers, the vast majority are in the nature of "unmatured" reimbursement obligations which must be assumed by the Purchasers.

### A. Nature of the Wells Fargo Servicing Agreements

6. Under the Wells Fargo Servicing Agreements, Wells Fargo acts as servicer for residential mortgage loans, collecting payments from individual borrowers for pools of loans owned by the counterparty or a securitization trust (referred to as the "Purchaser"[4] in the Wells Fargo Servicing Agreements but referred to here as the "Owner" for clarity). Upon receipt of a

---

[4] Here, the purchasers are Homecomings Financial LLC or Residential Funding Company LLC under the Wells Fargo Servicing Agreements. Pursuant to the Ocwen APA, BH APA and Proposed Sale Orders, Ocwen and BH will succeed the referenced Debtors as Owner.

3

#1867353 v7
111369-81272

borrower payment, Wells Fargo deducts its servicing fee (as permitted by the Wells Fargo Servicing Agreements) and deposits the balance of the funds into a custodial account. Wells Fargo is obligated to remit a fixed sum to the Owner at monthly intervals irrespective of whether borrowers have made their loan payments. Due to borrowers' delinquencies and non-payments, the funds contained in the custodial account is often insufficient to fund the required payments. To the extent the funds collected by Wells Fargo and deposited in the custodial account are insufficient to fund the required payment, Wells Fargo must advance its own funds to remit the fixed sum to the Owner.[5]

7.    The Wells Fargo Servicing Agreements grant Wells Fargo the right to recover these Advances. If a borrower has merely fallen behind on payments and makes additional payments after a remittance date, Wells Fargo has the right to recover its Advances from the subsequent payments(s). If however, the borrower does not resume payment and the Owner instructs Wells Fargo to remove the loan from the loan pool, Wells Fargo may stop funding Advances related to that property and must submit a claim to the Owner (a "Reimbursement Claim") for its Advances after the Owner notifies Wells Fargo that the underlying property has been liquidated. Until the Reimbursement Claim is filed, however, the Owner has no current obligation to reimburse Wells Fargo.

8.    Wells Fargo is also required to fund Advances that are the result of breaches of Owner representations and warranties contained in the Wells Fargo Servicing Agreements, including representations and warranties regarding, among other things, the type of loan, borrower fraud, insurance, occupancy, liens, defaults, and certain mortgage documents at the

---

[5] Additionally, the servicer may be required to make Advances to protect the Owner's rights in the property, including purchasing hazard insurance for uninsured properties, paying property taxes, and, in some case, managing and liquidating real estate owned ("REO") property. These Advances (made pre-closing) preserve and protect the property post-closing for the benefit of Ocwen and BH (for instance, by paying property taxes in advance or purchasing insurance for a future period).

time the Wells Fargo Servicing Agreements are executed and loans are added to the mortgage loan pool. These representations and warranties are separate from and unrelated to representations and warranties made in stand-alone origination agreements. As with other Advances, Wells Fargo submits a claim to the Owner for any losses caused by the breach of the representations and warranties which the Owner is obligated to reimburse (a "Repurchase Demand"). For example, if the Owner included a loan in a pool that was improperly secured, the Owners are still obligated to reimburse Wells Fargo for its Advances even though the property may not be foreclosed and the Owner bears the loss. In the event of a breach of a representation and warranty, Wells Fargo recovers its Advances following the submission of a Repurchase Demand.

9. Wells Fargo is concerned that the Proposed Sale Orders relieve the Purchasers of the Owner's duty to reimburse Advances based on pre-closing borrower defaults and/or breaches of representations and warranties, even though the obligation to reimburse would not arise until Wells Fargo files a Reimbursement Claim or Repurchase Demand *post-closing*. The Proposed Sale Orders address the Purchasers' servicing-related obligations post-closing. The Proposed Sale Orders do not directly address the situations described above and, in an abundance of caution, Wells Fargo seeks clarification that the final sale orders will affirm the Purchasers' obligation to reimburse Advances for post-closing claims where the basis of the claim is non-payment or default by the borrower pre-closing, or is the result of a breach of a representation and warranty contained in the Wells Fargo Servicing Agreements.

10. To the extent the Proposed Sale Orders permit the Purchasers to receive the benefit of pre-closing Advances without retaining the unmatured obligation to reimburse those Advances, this is a clear example of cherry picking. If the Purchasers are not required to

reimburse these Advances, despite the Debtors' assertion to the contrary in its Reply, the Proposed Sale Orders circumvent the *cum onere* requirement of Section 365.

   B. **The Purchasers are Receiving the Benefit of Post-Petition, Pre-Closing Advances and Should Be Required to Reimburse Wells Fargo as Provided in the Wells Fargo Servicing Agreements**

   11. Judge Sontchi's decision in *Capmark* does not preclude the relief Wells Fargo is seeking. The obligations owed to Wells Fargo under the Wells Fargo Servicing Agreements being assumed by the Purchasers can be broken down into two categories. First, there are the Advances that Wells Fargo has funded but was unable to recover from subsequent borrower payments and the Debtors' obligation to reimburse Wells Fargo has matured (the "Cure Amount").[6] Wells Fargo expects these Advances to be resolved at the Cure Hearing. Second, there are Advances that Wells Fargo has funded that may still be recovered from subsequent borrower payments but if the borrowers at issue do not resume payment, these Advances will be submitted to the Purchasers for reimbursement at a later date (the "Unmatured Reimbursement Obligations"). The Unmatured Reimbursement Obligations presently exceed $200 million[7] representing the worst-case scenario in which each borrower on every loan for which Wells Fargo has made an Advance stops repaying his loan entirely; in that case, Wells Fargo cannot recover its Advances from the borrower(s) and must instead file Reimbursement Claims with the Purchasers (as provided by the Wells Fargo Servicing Agreements).[8]

---

[6] Wells Fargo attached a schedule listing both matured claims and Unmatured Reimbursement Obligations (as defined above) to the Cure Amount Objection filed on August 31, 2012. *See* Docket No. 1648, Ex. B. As discussed in the Cure Amount Objection, the Cure Amount continues to change as Wells Fargo makes Advances and Advances are reimbursed either through additional borrower payments or reimbursement by the Debtors. Wells Fargo will provide updated Cure Amounts prior to the Cure Hearing.

[7] These are included in Wells Fargo's proofs of claim, filed contemporaneously herewith and incorporated herein by reference.

[8] As a practical matter, the Unmatured Reimbursement Obligations represent an absolute ceiling; for this liability to come to fruition, it would mean that no borrowers made additional payments. For all intents and purposes, that is an impossibility. Thus, the purpose of Wells Fargo's objection is to draw the Court's attention to the unique risks

12. Only the first category, the Cure Amount, comprised of Advances that have matured and have not been reimbursed by the Debtors, is to be addressed at the Cure Hearing. In *Capmark*, Judge Sontchi noted that where "the Debtor defaulted by failing to do 'x' prior to this motion . . . but [doesn't] know what the damages are yet . . . ," such liability must be cured. *See* Transcript of Hearing, *Capmark*, 96:21–24, attached as Ex. 2 to Debtors' Omnibus Reply [Docket No. 2135]. at pp. 73-74. Here, the Debtor defaulted by failing to reimburse Wells Fargo for its Advances following the filing of a claim. Wells Fargo (and the Debtors) know what the damages are as of September 29, 2012, and Wells Fargo (i) has submitted them to the Debtors; (ii) included them in the Cure Amount Objection; and/or (iii) included them in its proofs of claim. Wells Fargo has therefore carried its burden of proof by asserting a default by the Debtors with respect to the Cure Amount. As *Capmark* makes clear, in order for the Debtors to assume and assign the Wells Fargo Servicing Agreements to Ocwen and BH, the Cure Amount must be promptly cured in accordance with Section 365 of the Bankruptcy Code. The final cure amount will be determined at the Cure Hearing where Wells Fargo will provide updated information regarding such amounts up to the closing.

13. The second category, the Unmatured Reimbursement Obligations, are the result of extant borrower defaults and/or borrower non-payment, situations which are *not* yet defaults by the Debtors under the Wells Fargo Servicing Agreements—*i.e.*, they are not obligations stemming from the pre-closing acts or omissions of the Debtors. Therefore the rationale set forth in *Capmark* does not apply to the Unmatured Reimbursement Obligations. Borrower defaults only become Purchaser defaults under the Wells Fargo Servicing Agreements at some point in the future if, and only if, two intervening events occur: first, the borrowers fail to catch up on

---

assumed by Wells Fargo as a servicer and to ensure that all of its contractual rights are preserved as required by the Bankruptcy Code.

missed payments so that Wells Fargo cannot recover its Advances from subsequent borrower payments, resulting in a Reimbursement Claim and an obligation on the part of the Purchasers to reimburse Wells Fargo's Advances; and second, the Purchasers refuse to honor the Reimbursement Claim.

14.    Accordingly, the Unmatured Reimbursement Obligations are properly categorized as post-closing obligations under both the Wells Fargo Servicing Agreements and the Proposed Sale Orders, to be assumed by the Purchasers along with the rest of the Servicing Agreements.[9] In fact, this precise issue was addressed in *Capmark* and was resolved by the parties.

> The Court: If there were defaults in the underlying mortgage that arose the default itself under the underlying mortgage arose prepetition and there were certain, in that instance there were certain notice requirements, there are also certain substantive requirements to front advance the losses, etc. that don't come to light until the post sale period. So you've got defaults on the underlying mortgages that may have arisen presale but don't come to light to your client or to the trustee to Wells Fargo or other similarly situated persons, is your client assuming the liability, i.e., the obligation that would arise under the servicing agreement in connection with such a default?
>
> . . .
>
> Mr. Califano: Well, Your Honor, but the question was with respect to servicing defaults that aren't discovered and servicer advances that are not yet discovered because of an underlying borrower default, and I have confirmed that those servicer advances for undiscovered borrower defaults will be honored.

*See* Transcript of Hearing, *Capmark*, 72:4-15, 74:11-16.

15.    Wells Fargo seeks nothing more than what occurred in *Capmark*—assurance that the Purchasers are not cherry picking and do not intend to use the APAs as a vehicle to prevent

---

[9] Of course, this number can and will change after the closing as a result of post-closing defaults and non-payments at the borrower level, but there could be no argument that those obligations are anything other than post-closing liabilities of the Purchasers.

8

Wells Fargo from obtaining reimbursement for the Unmatured Reimbursement Obligations under a theory that such future obligations were actually pre-closing liabilities of the Debtors.[10]

    C.    The Proposed Sale Orders Should be Modified to Address Wells Fargo's Concerns

16.    Wells Fargo believes that issues raised above are easily addressed through additional language in the Proposed Sale Orders. Currently, the paragraph P of the Ocwen Proposed Order contains the following:

> For avoidance of doubt, notwithstanding anything to the contrary contained in this Order or in the Ocwen APA, upon the assignment of the Servicing Agreements to Purchaser, Purchaser shall perform all of the obligations under the Servicing Agreements (but not perform any obligations or have any liabilities arising under the Other Agreements) from and after the Closing Date; provided, however, that Purchaser shall not incur any liability that arises out of or relates to any act or omission of the Debtors (whether as originator, servicer, or otherwise) that occurred before the Closing Date.

Paragraph S of the BH Proposed Order contains the following:

> SBO Servicing Agreements. Subject to the terms of the BH Legacy APA with respect to the assumption and assignment of the SBO Servicing Agreements, the Purchaser is the assignee of all of the Debtors' rights under the those SBO Servicing Agreements that are to be assumed and assigned to the Purchaser, and such Purchaser shall, to the extent applicable, acquire all of the Sellers' rights thereunder free and clear of any Claims or Liabilities arising prior to the Closing Date.

Wells Fargo proposes that the following language be added to the Proposed Sale Orders:

> Solely for the avoidance of doubt, nothing in this Order shall modify the Purchaser's obligations to reimburse Wells Fargo for Advances made under any of the Wells Fargo Servicing Agreements that were funded by Wells Fargo pre-closing but that

---

[10] To the extent the Debtors or Ocwen may argue that Wells Fargo's proofs of claim are evidence that the Unmatured Reimbursement Obligations are a pre-closing contingent liability, this argument must fail because Wells Fargo included that figure in an abundance of caution in its proofs of claim merely to preserve all of its rights and claims under the Wells Fargo Servicing Agreements, as required under the Bankruptcy Code.

> are unmatured reimbursement obligations which do not become
> due and payable under such agreements until post-closing.

This language preserves Wells Fargo's existing rights under the Wells Fargo Servicing Agreements and does not impair the benefits to the Purchasers under the APAs.

## II.     The Debtors have Not Addressed the Termination Issue Raised in Wells Fargo's Cure Objection

17.     As discussed in the Sale Objection and Cure Amount Objection, Wells Fargo terminated one servicing agreement prior to the Petition Date (the "Terminated Agreement"). *See* Sale Objection ¶¶ 18-21; Cure Amount Objection, p. 6 fn. 7. Despite this, the Debtors have not provided an updated schedule withdrawing the Terminated Agreement from the Sale. As the Terminated Agreement was validly terminated pre-petition, there is nothing for the Debtors to assign. Though Wells Fargo and the Debtors have a preliminary agreement on the issue, the Debtors have not taken any action to effect a transfer of servicing under the Terminated Agreement, nor have they addressed whether the Terminated Agreement has been removed from the Sale Assets.

Dated: November 16, 2012
New York, New York

                        Respectfully submitted,

                        **GIBBONS P.C.**

                        /s/ Jeffrey S. Berkowitz
                        By: Jeffrey S. Berkowitz
                        Christopher A. Albanese
                        One Penn Plaza, 37th Floor
                        New York, New York 10119-3701
                        Telephone: (212) 613-2000
                        Facsimile: (212) 290-2018

                        *Counsel for Wells Fargo Bank, N.A. with respect to its servicing and sub-servicing agreements with the Debtors*