SNR Denton US LLP
Hugh M. McDonald
Louis A. Curcio
1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
Fax:  (212) 768-6800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC *et al.*, | ) | Case No.:  12-12020 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BRIEF IN SUPPORT OF TERMINATION OF DLJ**
**CONSORTIUM ASSET PURCHASE AGREEMENT**

Bayview Acquisitions, LLC, DLJ Mortgage Capital, Inc., Roosevelt Depositor, LLC, Roosevelt Mortgage Acquisition Company, and Selene Finance LP (collectively, the "DLJ Consortium"), by and through their counsel, SNR Denton US LLP, hereby files this Brief in Support of the termination the DLJ Consortium Asset Purchase Agreement in connection with the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief [Docket No. 61] (the "Sale Motion").

**PRELIMINARY STATEMENT**

1. The Debtors and the DLJ Consortium agree that pursuant to the terms of the asset purchase agreement ("APA") submitted by the DLJ Consortium in connection with their bid, the APA terminates the earlier of (i) the date the Bankruptcy Court approves of a "Successful Bid" (as such term is defined in the Sale Procedures); and (ii) 30 calendar days following the date of the Auction. APA, Section 9.1(e). This provision was not unique to the DLJ Consortium's bid as it was also contained in the asset purchase agreement that had been submitted to the Court and given to all bidders and parties interest in connection with the Berkshire Hathaway stalking horse bid. The Debtors, in the presence of counsel for the Official Committee of Unsecured Creditors (the "Committee"), confirmed at the Auction that the termination provisions contained in the APA would govern. Counsel for the Committee did not object to this statement or raise any concerns whatsoever. As set forth below, the DLJ Consortium continued to bid based upon these assurances and upon the express language of the sale procedures allowing the sale procedures to be modified with consent of the Committee, the Debtors and Berkshire Hathaway.

2. The Committee now contends (i) that it was operating under the mistaken belief that all they were agreeing to at the Auction was a clarification that the DLJ Consortium bid would be open until January 31, 2013, as opposed to the closing of a sale to Berkshire Hathaway and (ii) the APA termination provision is a material change to the bid procedures. As set forth below, neither of these positions has any merit. It is clear from the record of the Auction that the termination provisions of the APA were to govern the respective parties' termination rights. Moreover, the very same provision has always been in the asset purchase agreements that have been provided to the Committee and filed with the Court. At no time has the Committee raised any issues with respect to the termination provisions contained in any version of the APA or with

respect to Berkshire Hathaway's asset purchase agreement. In short, the termination provision has always been a part of this transaction and the Committee can no longer object to its invocation. Moreover, the inclusion of the termination provision has no impact on the estate or the auction process as the parties would still be in the same position if the DLJ Consortium was the winning bidder -- the next highest bidder (in that case -- Berkshire Hathaway) would have the ability to terminate its bid. Thus, it is clear that the inclusion of a provision that has been in every asset purchase agreement reviewed by all parties and filed with the Court cannot be viewed as a material modification to the bid procedures.

## BACKGROUND

3. On October 19, 2012, the DLJ Consortium submitted its asset purchase agreement to the Debtors and the Committee in accordance with the sale procedures attached to the Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice (the "Sale Procedure Order"). [Docket No. 538] Between October 19, 2012, and the October 25, 2012 auction for the Debtors' "Legacy Portfolio" of mortgage loans, the Debtors, the Committee and the DLJ Consortium engaged in multiple discussions regarding certain terms and provisions set forth in the DLJ Consortium's asset purchase agreement. Indeed, the DLJ Consortium submitted multiple drafts of an asset purchase agreement to the Debtor's and the Committee, with the final version being delivered immediately prior to the start of the October 25th auction.

4. Each draft of the DLJ Consortium's asset purchase agreement contained an identical Section 9.1(e) (the "Termination Provision"), which provides that the asset purchase agreement terminates:

> automatically if the Bankruptcy Court shall enter an Order approving a Competing Transaction pursuant to the Auction, <u>provided</u>, that if the Auction is held pursuant to the Sale Procedures, and Purchasers are designated as the Next-Highest Bidder (as such term is defined in the Sale Procedures), then this Agreement shall not terminate pursuant to this subsection (e) until the earlier of (i) the Bankruptcy Court approval of the "Successful Bid" (as such term is defined in the Sale Procedures); and (ii) 30 calendar days following the Auction.

This Section 9.1(e) was also in the Berkshire Hathaway, Inc. asset purchase agreement, which the DLJ Consortium adopted without modification of any relevant language in each draft asset purchase agreement.

5. At the October 25th auction, at the DLJ Consortium's request, the Debtors confirmed that each bidder would be bound by their specific asset purchase agreements, including "most importantly any termination provisions in those purchase agreements[.]" (Transcript of October 25, 2012 Auction Proceedings at 18:21-23.) The Debtors, the Committee, and Berkshire Hathaway agreed with (or did not object to) the Debtors' statements. On the basis of, and in reliance upon, that confirmation and agreement by all of the parties, the DLJ Consortium continued to bid for the Legacy Portfolio and increased the purchase price by more than $150 million.

6. On November 12, 2012, however, the Debtors filed their reply in further support of the Sale Motion and appeared to take the position that the termination provisions of the DLJ Consortium's asset purchase agreement would not control the DLJ Consortium's obligations. Specifically, the Debtor's reply states that "[t]he DLJ Consortium is obligated to remain as Back-

- 4 -

Up Bidder on the terms reflected in its last bid through January 31, 2013." [*See* Docket No. 2135 at p. 14, n. 14; *see also* Declaration of Marc D. Puntus in Support of Debtors' Sale Motion, Docket No. 2137 at ¶ 44.]

7. Since the filing of the Debtors' reply, the DLJ Consortium has confirmed with the Debtors that, notwithstanding the statements to the contrary in the Debtors' reply, the DLJ Consortium's bid terminates in accordance with its terms on the earlier to occur of Bankruptcy Court approval of the sale to Berkshire Hathaway, Inc. or 30 days from the date of the auction, as set forth on the record during the auction. The Committee, however, does not agree, and takes the position that the DLJ Consortium bid must remain open until January 31, 2013.

## ARGUMENT

I. *The Termination Provision was consented to by all parties.*

8. The Termination Provision is consistent with the original asset purchase agreement submitted by Berkshire Hathaway and is consistent with the Sale Procedures Order. Every version of every asset purchase agreement either filed with the Court or submitted by the DLJ Consortium has contained the same provision. Indeed, the blacklined version of the APA that was submitted by the DLJ Consortium (blacklined against the Berkshire Hathaway asset purchase agreement) contained changes to the section to delete the reference to the payment of a break-up fee and conform the grammar to be consistent with a consortium of bidders. Those changes should have drawn the Committee's and the Debtors' attention. Yet, at no point did anyone comment upon, question or object to this provision.

9. The Sale Procedures Order permits the modification of the sales procedures by the Debtors, with the agreement of the Committee. The DLJ Consortium submits that consent by all parties to the Termination Provision has been both explicit and implicit. The APA, like the

Berkshire Hathaway agreement, has always contained this provision. The Debtors negotiated the APA and the Committee was provided with every draft and the final submission. Neither the Debtors nor the Committee objected to the Termination Provision when it was in the Berkshire Hathaway agreement. Moreover, neither the Debtors nor the Committee objected to the Termination Provision in the APA. In addition to this implicit consent, the Debtors, in the presence of the Committee, confirmed on the record of the auction that the termination provisions of the asset purchase agreements of the bidders would govern termination rights. Again, the Committee said nothing. In reliance on this position, and on the ability to modify the sale procedures on consent, the DLJ Consortium continued to bid, which resulted in an increase in the consideration paid to the estate by more than $150 million.

10.     The Termination Provision is not a material modification to the bid procedures as it would not change the result of the auction had the DLJ Consortium been selected as the highest and best offer. In such an instance, Berkshire Hathaway would not be required to keep its bid open until the closing with the DLJ Consortium. If anything, the agreement by the Debtors and the Committee that the Termination Provision would govern merely created a level playing field that increased the consideration received by the Debtors' estate.

11.     The DLJ Consortium understands that the Committee may rely on the Bankruptcy Court's decision in *In re Metaldyne Corporation,* 409 B.R. 661 (Bankr. S.D.N.Y. 2009). However, the *Metaldyne* decision is not applicable for the following reasons: (i) amendments to the bid procedures order in that case required the consent of, among others, the term lenders who did not consent to the change at issue in that case; (ii) it dealt with the selection of a stalking horse bidder, one of whom was an insider of the debtor; (iii) the parties extended a court-mandated deadline without consent of the parties, which is the exact opposite of what happened

in this case; and (iv) the debtors invoked procedures that left the entire bid process open to dispute. Here, the purported "modification" was the continued inclusion of a provision that permitted both bidders to terminate their bids on the same terms and conditions. In any event, the bid procedures here *expressly permitted* consensual modifications. Finally, unlike *Metaldyne* the provision that was accepted by the Debtors and the Committee has no impact on the outcome of the auction in this case.

*II. The DLJ Consortium never agreed to keep its bid open until January 31, 2013.*

12. The Committee's position that what they were agreeing to at the Auction was a clarification that the DLJ Consortium bid would be open until January 31, 2013, as opposed to the closing of a sale to Berkshire Hathaway, is simply unfounded. At no point did the DLJ Consortium ever commit to keeping its bid open until January 31, 2013. To the contrary, the record is clear that the DLJ Consortium requested that the Debtors clarify on the record that the Termination Provision would govern termination of the APA in the event that the DLJ Consortium was not the winning bidder. It would be illogical to commit to the January 31 date while at the same having the record of the proceedings reflect the parties understanding that the Termination Provision governed termination.

WHEREFORE, the DLJ Consortium respectfully requests that the Bankruptcy Court include a provision in the sale order approving the transaction with Berkshire Hathaway that the DLJ Consortium's back-up bid terminates in accordance with its terms effective upon the entry of the sale order.

Dated: November 19, 2012
      New York, New York

SNR DENTON US LLP

/s/ Louis A. Curcio
Hugh M. McDonald
Louis A. Curcio
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800

*Attorneys for Bayview Acquisitions, LLC, DLJ Mortgage Capital, Inc., Roosevelt Depositor, LLC, Roosevelt Mortgage Acquisition Company, and Selene Finance LP*