KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS CONCERNING THE SELECTION OF THE DLJ CONSORTIUM
AS THE NEXT-HIGHEST BIDDER FOR THE DEBTORS' LEGACY PORTFOLIO**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above debtors and debtors-in-possession (collectively, the "**Debtors**") submits this statement (the "**Statement**") concerning selection of the consortium (the "**DLJ Consortium**") consisting of DLJ Mortgage Capital, Inc.; Roosevelt Mortgage Acquisition Company; Roosevelt Depositor

LLC; Bayview Acquisitions, LLC; and Selene Finance LP as the Next-Highest Bidder for the Debtors' Legacy Portfolio.[1]  The Committee respectfully represents as follows:

## STATEMENT

1. On October 25, 2012, the Debtors conducted the Auction for the Legacy Portfolio.  The Auction was governed by this Court's Sale Procedures Order, which imposed rules for, among other things, the conduct of the Auction and the selection of the Next-Highest Bidder (i.e., the back-up bid).  Specifically, the Sale Procedures Order expressly required that the Next Highest Bidder hold its bid open until the closing of the sale of the Legacy Portfolio:

> The next highest bidder after the Successful Bidder shall be deemed the ("Next-Highest Bidder"). ***The Next-Highest Bidder shall be required to hold open its bid until the closing of the sale to the Successful Bidder*** (the "Back-Up Bid Release Date"); provided, however, that the terms of the Nationstar APA and the BH Legacy APA shall apply in all respects with respect to the period of time Nationstar and BH, respectively are required to hold their bids open.

*See* "Sale Procedures," Sale Procedure's Order, Ex. 1, at 7 (emphasis added).

2. At the Auction, the Debtors selected Berkshire Hathaway Inc. ("**Berkshire Hathaway**") as the Successful Bidder.  The Debtors also selected the DLJ Consortium as the Next-Highest Bidder.  While the DLJ Consortium submitted an APA as part of their bid, the Debtors and the DLJ Consortium did not execute that document, but continued to negotiate definitive terms based on the results of the Auction.

3. At no time did the Debtors ever inform the Committee that they had agreed that the back-up bid would terminate before the outside closing date of the transaction.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Order Under 11 U.S.C. §§ 105, 363(b), and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice* [Docket No. 538] (the "**Sale Procedures Order**").

The Committee understood that the outside termination date for the DLJ Consortium bid was January 31, 2013 (i.e., coterminous with the outside termination date of the Berkshire Hathaway APA).[2] Far from providing any indication to the contrary, the Debtors' *Omnibus Reply to Objections to Debtors' Sale Motion* [Docket No. 2135] (the "**Reply**"), actually confirmed the Committee's understanding that the "DLJ Consortium is obligated to remain as Back-Up Bidder on the terms reflected in its last bid through January 31, 2013." *See* Reply at n. 14.

4.  Since the filing of the Debtors' Reply, the DLJ Consortium has appeared and insisted that their bid terminated upon the earlier of the entry of the Sale Order or 30 days following the auction (i.e., November 25, 2012). The DLJ Consortium argues that section 9.1(e) of their APA tracks the analogous provision in the Berkshire Hathaway APA, which set an earlier date. *See Reservation of Rights of DLJ Consortium Regarding Legacy Portfolio Sale* [Docket No.2218 ] (the "**DLJ Reservation of Rights**") at ¶ 2. Berkshire Hathaway, however, was explicitly carved out from the Sale Procedures Order's requirement that back-up bids must remain open until the consummation of the sale to the successful bidder. The DLJ Consortium's bid was not.

5.  The Committee expects that that the DLJ Consortium will take the position that the Sale Procedures Order was modified. This argument has no merit.

6.  The Sale Procedures Order requires that the bid of the Next-Highest Bidder be held open until the closing of the transaction. The Debtors' agreement to an earlier termination date – if that is what they did – represents a material alteration of the Sale Procedures Order, which they had no power to make without Court approval on notice to all

---

[2] Section 9.1(f) of the Berkshire Hathaway APA provides for an outside termination date of January 31, 2013. As a technical matter, the back-up bid should remain open beyond January 31, 2013, since the Sale Procedures Order provides that the back-up bids must remain open until such time as the successful bid is consummated. However, the Committee does not object to requiring back-up bids to remain open until January 31, 2013.

parties. While the Debtors may argue that the Sale Procedures Order permitted them to make non-material modifications without Court approval, that authority is plainly inapplicable to this change, which is self-evidently a material one. The Debtors' estate may be substantially harmed in the event that the Berkshire Hathaway APA terminates and the Back Up Bid somehow terminates before the Closing Date. In any event, even the Debtors' authorization to make non-material changes was unambiguously subject to the Committee's consent, which the Debtors never obtained. *See* "Sale Procedures," Sale Procedures Order, Ex. 1, at 8 ("The Debtors may modify any non-material provision of the Sale Procedures with the consent of the Creditors' Committee, BH, and Nationstar or by order of the Court.").

7. The DLJ Consortium asserts that the Debtors' financial advisors disclosed the termination date of the DLJ Consortium's APA on the record at the Auction. *See* DLJ Reservation of Rights at ¶ 3. This assertion is incorrect for several reasons. First, the Debtors' lacked the power to materially and unilaterally alter the Sale Procedures Order. *See, e.g.*, *In re Metaldyne Corp.*, 409 B.R. 661, 666 (Bankr. S.D.N.Y. 2009) (disallowing modified stalking horse bid prior to auction because agreement among parties to unilaterally extend bid's deadlines was contrary to approved sale procedures). Second, the DLJ Consortiums' claims about Mr. Puntus' statements are not supported by the record of the Auction.[3] Third, the Debtors did not obtain the Committee's consent to this modification.

---

[3] The statement made by the Debtors' financial advisors at the Auction plainly does not disclose any change to the Sale Procedures Order:

> MR. PUNTUS: Okay, we are back on the record. I apologize for the delay, we are going to make one clarifying comment that both bidders have agreed with and then move on. The clarifying comment is, and we do think it is clarifying, that both bidders either as primary – both Berkshire Hathaway and the Consortium either as primary bidder or back up bidder are bound by their specific asset purchase agreements, including most importantly any termination provisions in those purchase agreements, and that also takes into account what I said earlier about Berkshire Hathaway being afforded the benefit of any provisions that we have agreed to currently with the DLJ Consortium. I would

8. In light of the clear language in the Sale Procedures Order, the Committee respectfully requests that the DLJ Consortium's APA will remain binding in accordance with the Sale Procedures Order.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court approve the selection of the DLJ Consortium as the Next-Highest Bidder subject to the relief requested herein, and grant such other and further relief as the Court deems just and proper.

Dated: November 19, 2012
New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Stephen D. Zide
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee
of Unsecured Creditors*

---

ask each of the bidders if there are any questions, and I am happy to clarify. But each bidder as primary bidder and back up bidder is bound by their asset purchase agreements, including importantly any provisions regarding terminations or dates by which the obligations terminate.

*See* Auction Tr. 18:10-19:12.