MORRISON | FOERSTER

1290 AVENUE OF THE AMERICAS
NEW YORK, NY 10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

November 19, 2012

Writer's Direct Contact
212.336.4325
TGoren@mofo.com

Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, NY 10004

Re:   *In re Residential Capital, LLC, et al.*, Chapter 11 Case No. 12-12020 (MG)

Dear Judge Glenn:

We are counsel to Residential Capital, LLC and its debtor affiliates in the above-captioned bankruptcy case.  We write regarding the termination provisions in the asset purchase agreement (the "APA") submitted by joint bidders, Bayview Acquisitions, LLC, DLJ Mortgage Capital, Inc., Roosevelt Depositor, LLC, Roosevelt Mortgage Acquisition Company, and Selene Finance LP (collectively, the "DLJ Consortium").

Section 9.1 of the APA provides, in pertinent part:

> Notwithstanding anything to the contrary contained in this Agreement, this Agreement may be terminated and the transactions contemplated hereby abandoned at any time on or prior to the Closing Date:
>
> ….
>
> (e)     automatically if the Bankruptcy Court shall enter an Order approving a Competing Transaction pursuant to the Auction, provided, that if the Auction is held pursuant to the Sale Procedures, and Purchasers are designated as the Next-Highest Bidder (as such term is defined in the Sale Procedures), then this Agreement shall not terminate pursuant to this subsection (e) until the earlier of (i) the Bankruptcy Court approval of the "Successful Bid" (as such term is defined in the Sale Procedures); and (ii) 30 calendar days following the Auction. While Purchasers remain the Next-Highest Bidder (as such term is defined in the Sale Procedures), the obligations of Purchasers and Sellers described in Sections 6.1 and 6.12(c) shall be held in abeyance until the purchase agreement with the

ny-1066320

MORRISON | FOERSTER

United States Bankruptcy Court
November 19, 2012
Page Two

>   bidder or purchase agreements with the bidders, as the case may be, who made the "Successful Bid" at the Auction (as such term is defined in the Sale Procedures) are terminated; or
>
>   (f)     by Sellers or Purchasers if the Closing shall not have occurred on or before January 31, 2013 (or such later date as mutually agreed to by Sellers and Purchasers).

At the October 25th auction, the DLJ Consortium requested that the Debtors clarify on the record that each bidder would be bound by their specific asset purchase agreements, including any termination provisions in those purchase agreements. The Debtors, in the exercise of their business judgment, determined that allowing the DLJ Consortium to cease bidding at that point would not have maximized value for the Debtors' estate. Accordingly, after consulting with Berkshire Hathaway, the Creditors' Committee, and other interested parties, the Debtors made the following announcement at the auction on the record:

>   [W]e are going to make one clarifying comment that both bidders have agreed with and then move on. The clarifying comment is, and we do think it is clarifying, that both bidders either as primary – both Berkshire Hathaway and the Consortium either as primary bidder or back up bidder are bound by their specific asset purchase agreements, ***including most importantly any termination provisions in those purchase agreement***s, and that also takes into account what I said earlier about Berkshire Hathaway being afforded the benefit of any provisions that we have agreed to currently with the DLJ Consortium. I would ask each of the bidders if there are any questions, and I am happy to clarify. But each bidder as primary bidder and back up bidder is bound by their asset purchase agreements, ***including importantly any provisions regarding terminations or dates by which the obligations terminate***. Okay. Berkshire Hathaway is okay and the Consortium is okay.

(Transcript of October 25, 2012 Auction Proceedings at 18:21-23.) (emphasis added). No parties objected to this clarification. Following this announcement, the DLJ Consortium continued to bid for the Legacy Portfolio and ultimately became the Next-Highest Bidder (as defined in the Sale Procedures).

Following the auction, on November 12, 2012, the Debtors filed their reply in further support of the sale motion and stated that "[t]he DLJ Consortium is obligated to remain as Back-Up Bidder on the terms reflected in its last bid through January 31, 2013." [See Docket No. 2135 at p. 14, n. 14; see also *Declaration of Marc D. Puntus in Support of Debtors' Sale Motion*, Docket No. 2137 at ¶ 44.] At the time of the auction and the time of the statement on the record, the Debtors were focused on the outside closing date of the APA (see section 9.1(f)). Subsequent to filing the reply, counsel to the DLJ Consortium contacted the Debtors' counsel to discuss the apparent

ny-1066320

MORRISON | FOERSTER

United States Bankruptcy Court
November 19, 2012
Page Three

discrepancy.  While the Debtors viewed the outside closing date of January 31, 2013 as the operative termination provision, the Debtors recognize that the statement on the record at auction, which induced the DLJ Consortium to continue bidding, also encompassed Section 9.1(e) of the APA, entitling the DLJ Consortium to terminate upon the earlier of 30 days following the auction or entry of the Sale Order.

Respectfully submitted,

*Todd M. Goren*

Todd M. Goren