## **Exhibit 3 to Notice**

Amended Proposed BH Sale Approval Order and the
Second Amended Proposed BH Sale Approval Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**PROPOSED ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND**
**FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (I) APPROVING (A) SALE OF DEBTORS'**
**ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT WITH BERKSHIRE**
**HATHAWAY INC.; (B) SALE OF PURCHASED ASSETS FREE AND**
**CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;**
**AND (C) RELATED AGREEMENTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated May 14, 2012 (the "Motion"), of Residential Capital, LLC ("ResCap")

and certain of its affiliates, as debtors in possession in the above-captioned Chapter 11 cases

(collectively, the "Debtors"),[1] for entry of an order, under Bankruptcy Code sections 105, 363, and 365

and Bankruptcy Rules 2002, 6004, 6006 and 9014 authorizing and approving (i) that certain Asset

Purchase Agreement, dated as of May 13, 2012 (the "AFI APA")[2], entered into by and among Ally

Financial Inc. ("AFI"), BMMZ Holdings LLC ("BMMZ"), ResCap, Residential Funding Company,

LLC ("RFC"), and GMAC Mortgage, LLC ("GMAC Mortgage"); (ii) the sale and all related

transactions, in accordance with the AFI APA of all of the Debtors' right, title, and interest in, to and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the BH Legacy APA (as defined herein). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

[2] At the June 18 and 19, 2012 hearings on the Motion, the Bankruptcy Court did not approve the AFI APA and instead approved Berkshire Hathaway Inc. as the stalking-horse bidder for the Purchased Assets.

under the Purchased Assets to BMMZ; and (iii) granting related relief; and upon the Whitlinger Affidavit, pursuant to Local Bankruptcy Rule 1007-2; the Greene Declaration; the Declaration of R. Ted Weschler in Support of the Objection of Berkshire Hathaway Inc. to Debtors' Motion; the Puntus Declaration; and the Anti-Collusion Declaration in Accordance with Sale Procedures Order Dated June 28, 2012 [Docket No. 538]; it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having entered an order, dated June 28, 2012 (the "Sale Procedures Order"), (i) authorizing and approving that certain asset purchase agreement, dated June 21, 2012, a copy of which was filed on June 28, 2012, by and among Berkshire Hathaway Inc. ("BH"), on the one hand, and ResCap, RFC, and GMAC Mortgage, on the other (including all schedules, exhibits, and attachments thereto, including the Ancillary Agreements (as such term is defined therein) to be entered into by and among the parties as contemplated therein, in each case as amended or modified, collectively, the "BH Legacy APA"), and providing for the sale and all related transactions, in accordance with the BH Legacy APA and this Order (the "Sale"), of all of the Debtors' right, title, and interest in, to and under the Purchased Assets to the Purchaser free and clear of all Claims, Liens, encumbrances, or other interests (including, any and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims based on any successor or transferee liability) other than the Permitted Liens (collectively, all such Claims, Liens, encumbrances and other interests other than the Permitted Liens, "Interests"), with such Interests transferring and attaching to the proceeds of the Sale with the same validity and priority as such Interests had in the Purchased Assets immediately prior to the Sale; and (ii) authorizing and approving the Sale Procedures notice of the Sale and the hearing to consider approval of the Sale (the "Sale Hearing")[3]; an Auction having been held in accordance with the Sale Procedures Order; and at the conclusion of the Auction, BH was chosen as the Successful

---

[3] For the purposes of this Order, the term "Sale Hearing" shall be any hearing at which the approval of the Sale is considered.

Bidder (as defined in the Sale Procedures Order) in accordance with the Sales Procedures Order; and the Sale Hearing having been held on November [—19], 2012 to consider the relief requested in the Motion; and upon the record of the Sale Hearing, and all of the proceedings before the Court; and the Court having reviewed the Motion and any objections thereto (the "Objections"); and all parties in interest having been afforded an opportunity to be heard with respect to the Motion and all of the relief related thereto; and it appearing that the relief requested by the Motion with respect to the Sale as amended and modified as provided in this Order is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it is

**FOUND AND DETERMINED THAT:**[4]

**A.    Jurisdiction and Venue.**  This Court has jurisdiction over the Motion and the Sale pursuant to 28 U. S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U. S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**B.    Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 9007 and 9014. The consummation of the Sale contemplated by the BH Legacy APA and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of the Sale.

**C.      Notice.**  As evidenced by the affidavits and certificates of service and Publication

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Notice previously filed with the Court and based on the representations of counsel at the Sale Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the Sale Procedures, the Sale, the Auction, and the Sale Hearing have been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested persons and entities, including: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement, (v) the attorneys for the agent under the Debtors' post-petition debtor in possession financing facility, (vi) the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the "Creditors' Committee"), (vii) the attorneys for the ad hoc bondholders' committee, (viii) the attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association, (ix) any party who, in the past year, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors and their representatives reasonably and in good faith determine potentially have the financial wherewithal to effectuate the transaction contemplated in the APA, (x) all trustees (including indenture and securitization trustees), certificate holders, investors, rating agencies, mortgage insurers and any parties to any pooling and servicing agreements, assignment, assumption and recognition agreements, SBO Servicing Agreements, subservicing agreements or similar agreements (all such parties in this clause (x), the "Interested Contract Parties"); (xi) all parties who are known to have asserted or believed by Debtors to hold any Interest in or on the Purchased Assets, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all applicable state attorneys' general, and

local authorities, (xv) all applicable state and local taxing authorities, (xvi) the Federal Trade

Commission, (xvii) the United States Department of Justice, (xviii) the United States Attorney's

Office, (xix) the office of the New York Attorney General; (xx) all entities that requested notice in

these Chapter 11 cases under Bankruptcy Rule 2002; and (xxi) all Persons required to be provided with

notice pursuant to the BH Legacy APA (collectively, the "Notice Parties"). The Debtors published the

Notice of Auction and Sale Hearing in the national editions of *The Wall Street Journal* and *The

New York Times*.  The notice described in this Paragraph C is good, sufficient and appropriate

under the circumstances, and no other or further notice of the Motion, the Auction, the Sale

Hearing, the BH Legacy APA, the Sale, and this Order is or shall be required. With respect to parties

who may have claims against the Debtors, but whose identities are not reasonably ascertainable by

the Debtors, the Publication Notice described above was sufficient and reasonably calculated under

the circumstances to reach such parties.

D.    **Extensive Efforts by Debtors.**  As of the Petition Date and for a period of more

than 7 months before the commencement of these Chapter 11 cases, the Debtors worked with their

counsel and financial advisors, AFI, and various governmental constituencies to implement a viable

transaction that would allow them to continue their operations.  The Debtors presented credible

evidence that, as of the Petition Date, they had explored various strategic alternatives for the Debtors'

businesses over an extended period of time and had communicated with 5 parties about a possible sale

of all or substantially all of the Debtors' assets. The Sale is the result of the Debtors' extensive efforts in

seeking to maximize recoveries to the Debtors' estates, for the benefit of creditors.

E.    **Business Justification.**  The Debtors have demonstrated compelling

circumstances and a good, sufficient, and sound business purpose and justification for the sale of the

Purchased Assets. In light of the circumstances of these Chapter 11 cases and the risk of deterioration

ny-1040884

in the going concern value of the Purchased Assets pending the Sale, time is of the essence in (i)

consummating the Sale, (ii) preserving the viability of the Debtors' businesses as going concerns, and

(iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, and

their creditors and employees.

      **F.**     **Sale Procedures Order.**  On June 28, 2012, this Court entered the Sale

Procedures Order approving Sale Procedures for the Purchased Assets. The Sale Procedures provided

a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased

Assets.

      **G.**     **Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the

testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the

representations of counsel made on the record at the Sale Hearing, (a) the Debtors have

adequately marketed the Purchased Assets and conducted the sale process in compliance with the Sale

Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a

higher or better offer for the Purchased Assets; (c) the consideration provided for in the BH Legacy

APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the consideration

provides fair and reasonable consideration for the Purchased Assets and constitutes reasonably

equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory,

possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors'

creditors than would be provided by any other practically available alternative, including liquidation

under Chapters 7 or 11 of the Bankruptcy Code; (f) taking into consideration all relevant factors and

circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to

the Debtors or their estates; and (g) the Debtors' determination that the BH Legacy APA constitutes the

highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors'

business judgment.

**H.**      **Opportunity to Object.**  A reasonable opportunity to object or be heard with

respect to the Motion and the relief requested therein has been afforded to all interested Persons,

including the Notice Parties.

**I.**      **Sale in Best Interests.**  The actions represented to be taken by the Sellers and the

Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in the best

interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the BH

Legacy APA and circumstances of the Sale at this time is in the best interests of the Debtors, their

creditors, their estates, and all other parties in interest.

**J.**      **No *Sub Rosa* Plan.**  In the event the Sale is approved under section 363 of the

Bankruptcy Code, the consummation of the Sale outside of a plan of reorganization pursuant to the

BH Legacy APA neither impermissibly restructures the rights of the Debtors' creditors nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does

not constitute a *sub rosa* plan of reorganization.

**K.**      **Arm's-Length Sale.**  The BH Legacy APA was negotiated, proposed, and

entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's

length bargaining positions.  Neither the Sellers nor the Purchaser, nor any of their respective

insiders and affiliates, have engaged in any conduct that would cause or permit the BH Legacy

APA or any part of the Sale to be avoided under section 363(n) of the Bankruptcy Code.

**L.**      **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section

363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

Prior to the date of this Order, the Purchaser provided to the Debtors and the Committee a declaration

certifying that there was no collusion between Purchaser on the one hand, and any other potential

purchaser, on the other hand. Based on that declaration, the Purchaser has not colluded with any other

potential purchaser.

      **M.**    **Corporate Authority.** Each Debtor (i) has full corporate power and authority to

execute the BH Legacy APA and all other documents contemplated thereby, and the sale of the

Purchased Assets has been duly and validly authorized by all necessary corporate action of each of

the Debtors, (ii) has all of the corporate power and authority necessary to consummate the

transactions contemplated by the BH Legacy APA, (iii) has taken all corporate action necessary to

authorize and approve the BH Legacy APA and the consummation by the Debtors of the

transactions contemplated thereby, and (iv) needs no consents or approvals, other than those

expressly provided for in the BH Legacy APA, which may be waived by the Purchaser, to

consummate such transactions.

      **N.**    **Binding and Valid Transfer.** The transfer of the Purchased Assets to the

Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the

Purchaser with all right, title, and interest of the Sellers to the Purchased Assets free and clear of all

Interests, including (i) rights or claims based on any successor or transferee liability, (ii) those that

purport to give to any party a right or option to effect any setoff, forfeiture, modification, right of first

refusal, or termination of the Sellers' or the Purchaser's interest in the Purchased Assets, or any similar

rights, (iii) those relating to taxes arising under or out of, in connection with, or in any way relating

to the operation of the Purchased Assets prior to the closing, and (iv) (a) those arising under all

mortgages, deeds of trust, security interests, conditional sale or other title retention agreements,

pledges, liens, judgments, demands, encumbrances, rights of first refusal, or charges of any kind or

nature, if any, including, any restriction on the use, voting, transfer, receipt of income, or other

exercise of any attributes of ownership and (b) all debts arising in any way in connection with any

agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or

affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities,

demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising

prior to or subsequent to the commencement of these Chapter 11 cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including, but not limited to, Claims otherwise

arising under doctrines of successor or transferee liability, Claims or Liabilities relating to any act or

omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and

any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other

Person prior to the Closing Date.  The APA and the related documents and agreements contemplated

thereby, and the consummation of the transactions contained therein shall not be subject to avoidance

by the Debtors, any affiliate of the Debtors, any of their respective successor trustees appointed with

respect thereto, or any other person or entity, including, without limitation, any claims with respect to

any transfers made in accordance with Section 2.4 of the BH Legacy APA.

O.    **Satisfaction of 363(f) Standards.**  The Sellers may sell, and, upon closing of the

Sale, shall be deemed to have sold the Purchased Assets free and clear of all Interests of any kind

or nature whatsoever, including all rights or claims based upon any successor or transferee liability,

because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy

Code has been satisfied. Those holders of Interests, including all rights or claims based on any

successor or transferee liability are (a) deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code and (b) adequately protected by having their Interests, if any, including all rights or

claims based on any successor or transferee liability, attach to the cash proceeds of the Sale

ultimately attributable to the property against or in which they claim an Interest, including all rights

or claims based on any successor or transferee liability.  In all cases, each such Person with Interests in

the Purchased Assets are enjoined from taking any action against the Purchaser, the Purchaser's

Affiliates or any agent of the foregoing to recover any such Interest.

P.    **Necessity of Order.**  The Purchaser would not have entered into the BH Legacy

APA and would not have consummated the Sale without all of the relief provided for in this

Order (including that the transfer of the Purchased Assets to Purchaser be free and clear of all Interests

and including rights or Claims based upon successor or transferee liability, Claims or Liabilities

relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the

Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the

Sellers or any other Person prior to the Closing Date).

Q.    **Personally Identifiable Information.**  The Debtors have provided certain

privacy policies to consumers that govern the disclosure of "personally identifiable information" (as

defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties.  The Debtors have

proposed to sell certain assets, which may require the disclosure of personally identifiable information

to third parties.  The Debtors' disclosure of personally identifiable information pursuant to the Sale

is in compliance with the Gramm-Leach-Bliley Act and is consistent with the privacy notices

delivered by the Debtors to mortgage borrowers.  For these reasons, no consumer privacy

ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

R.    **Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C.

§ 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that

there is no just reason for delay in the implementation of this Order and expressly directs entry of

judgment as set forth herein.

S.    **SBO Servicing Agreements.**  Subject to the terms of the BH Legacy APA with respect to the assumption and assignment of the SBO Servicing Agreements, the Purchaser is the assignee of all of the Debtors' rights under the those SBO Servicing Agreements that are to be assumed and assigned to the Purchaser, and such Purchaser shall, to the extent applicable, acquire all of the Sellers' rights thereunder free and clear of any Claims or Liabilities arising prior to the Closing Date.

T.    **Cure/Adequate Assurance.**  The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the SBO Servicing Agreements within the meaning of section 365(b)(1)(A) of the of the Bankruptcy Code.  Any Cure Amounts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such SBO Servicing Agreements.  The Purchaser's promise to perform the obligations under the SBO Servicing Agreements after the Closing Date shall constitute adequate assurance of its future performance of and under the SBO Servicing Agreements, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.   The Purchaser is not assuming any obligation under or in connection with the SBO Servicing Agreements occurring or arising prior to the Closing Date, whether encompassed within the Cure Amounts payable by the Debtors or otherwise.  All Interested Contract Parties of the SBO Servicing Agreements who did not timely file an objection to the assumption and assignment of the Assumed Contract, are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  To the extent not resolved and/or adjourned at or prior to the Sale Hearing, the objections of all Interested Contract Parties of SBO Servicing

Agreements that did file a timely objection to the assumption and assignment of such parties' respective Assumed Contract relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by the Court, are overruled on the merits with prejudice; provided, however, that to the extent an objection of the Interested Contract Parties, or unresolved portion thereof, relates solely to a Cure Amount, such objection is preserved and shall be heard by the Court on a date mutually agreed to by the parties or as determined by the Court, and are deemed to consent to the assumption by the Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  The Court finds that with respect to all such SBO Servicing Agreements the payment of the Cure Amounts is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the SBO Servicing Agreements.  To the extent any Assumed Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Purchased Assets, and the Purchaser shall have no liability or obligation for any (a) defaults or breaches under such agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to the Closing Date, and (b) Claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including without limitation, any right of recoupment) with respect to such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Motion is Granted.**  The Motion is granted and the relief requested, as amended and modified herein, therein with respect to the Sale of the Purchased Assets to the Purchaser pursuant to the BH Legacy APA is granted and approved in its entirety, as further described hereinbelow.

2.      **Objections Overruled.**  Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice, except to the extent any objections to Cure Amounts were unresolved and/or adjourned prior to or at the Sale Hearing.

3.      **Approval.**  The BH Legacy APA, and all the terms and conditions thereof, is approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under, and comply with the terms of, the BH Legacy APA and consummate the Sale pursuant to, and in accordance with, the terms and conditions of the BH Legacy APA and this Order. The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the BH Legacy APA, together with all additional instruments and documents that the Sellers or the Purchaser deem necessary or appropriate to implement the BH Legacy APA and effectuate the Sale, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the BH Legacy APA.

4.      **Binding Effect of Order.**  This Order and the BH Legacy APA shall be binding in all respects upon all known and unknown creditors of, and equity security interests in, any Debtor,

including any holders of Interests (including holders of rights or claims based on any successor or transferee liability), all successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in the Debtors' Chapter 11 cases or upon a conversion to cases under Chapter 7 of the Bankruptcy Code, and this Order shall not be subject to amendment or modification and the BH Legacy APA shall not be subject to rejection. The terms of this Order shall apply in any sale pursuant to a Chapter 11 plan and may be incorporated into any confirmation order. Nothing contained in any Chapter 11 plan confirmed in the Debtors' Chapter 11 cases or the order confirming any such Chapter 11 plan shall conflict with or derogate from the provisions of the BH Legacy APA or this Order.

5.    **Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the BH Legacy APA and this Order. Following the Closing, except for Persons entitled to enforce Permitted Liens, all Persons (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, investors, certificate holders, securitization trustees, borrowers, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding Interests in the Purchased Assets or against the Debtors in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever (including, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the

Sellers or any other Person prior to the Closing Date) against the Purchaser or any Affiliate of the

Purchaser or any of their respective property, successors and assigns, or the Purchased Assets, as an

alleged successor or on any other grounds, it being understood that nothing herein shall affect assets

of the Debtors that are not Purchased Assets.

6.       No Person shall assert, and the Purchaser and the Purchased Assets shall not be

subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or

otherwise, including any right of recoupment), Liabilities, Claims and Interests, or basis of any kind

or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any

obligation of any other party, under or with respect to, any Purchased Assets with respect to any act or

omission that occurred prior to the Closing.  All Interested Contract Parties are directed to recognize

the Purchaser as the owner of the Purchased Assets.

7.       **General Assignment.**  Upon the Closing, this Order shall be construed and shall

constitute for any and all purposes a full and complete general assignment, conveyance, and transfer

of the Sellers' interests in the Purchased Assets and a bill of sale transferring good and marketable title in

the Purchased Assets to the Purchaser. Each and every federal, state, and local governmental agency,

quasi-agency, or department is hereby directed to accept this Order, or any and all other documents

and instruments necessary and appropriate to consummate the Sale.

8.       **Transfer Free and Clear.**  Except as otherwise provided by section 363(o) of

the Bankruptcy Code, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the

Purchased Assets shall be transferred to the Purchaser as required under the BH Legacy APA, and

such transfer shall be free and clear of all Interests of any Person (including, Claims, Liabilities, or

Cure Amounts relating to any act or omission of any originator, holder or servicer of Mortgage

Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or

omission of the Sellers or any other Person prior to the Closing Date) and any and all rights and

claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or

otherwise and whether occurring or arising before, on or after the date on which these Chapter 11

cases were commenced, whether known or unknown, occurring or arising prior to such transfer,

with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property

against or in which the holder of a Claim or Interest claims or may claim a Claim or Interest, in

the order of their priority, with the same validity, force, and effect which they now have,

subject to any claims and defenses the Sellers may possess with respect thereto.  For the

avoidance of doubt, the transfer of the Securitized Advances to the Purchaser, and the Purchaser's

right to receive payments with respect to such Securitized Advances, shall be free and clear of all

Liens (other than Permitted Liens), Claims and Liabilities and Cure Amounts (including, without

limitation, any obligations to fund or otherwise satisfy any draw requests) and irrespective of a

party's ownership of the servicing rights (primary or master servicing) related to the underlying

home equity lines of credit.

9.    **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser pursuant to

the BH Legacy APA constitutes a legal, valid, and effective transfer of the Purchased Assets and

shall vest the Purchaser with all right, title, and interest of the Sellers in and to the Purchased Assets free

and clear of all Interests of any kind or nature whatsoever, including all rights or claims based on any

successor or transferee liability.  The transfers of Purchased Assets shall not be subject to avoidance

for any reason by the Debtors, any affiliate of the Debtors, their respective successors, or any creditor

thereof including, without limitation, with respect to any transfers pursuant to Section 2.4 of the BH

Legacy APA.  For the avoidance of doubt, in the event that BH elects to designate other parties to

whom the Purchased Assets, or any portion thereto, shall be conveyed, transferred, assigned, and/or

delivered in accordance with section 2.13 of the BH Legacy APA, BH's obligations under the BH

Legacy APA with respect to such Purchased Assets shall remain unchanged.

10.    **Direction to Release Interests.**   Upon the Closing, each of the Sellers' creditors and

any other holder of an Interest, including rights or Claims based on any successor or transferee

liability, is authorized and directed to execute such documents and take all other actions as may be

necessary to release its Interest in the Purchased Assets, if any, as such Interest may have been recorded

or may otherwise exist. If any person or entity that has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing an Interest in the

Sellers or the Purchased Assets shall not have delivered to the Sellers prior to the Closing, in

proper form for filing and executed by the appropriate parties, termination statements, instruments of

satisfaction, releases of all Interests, which the person or entity has with respect to the Sellers or the

Purchased Assets or otherwise, then (i) the Sellers are authorized and directed to execute and file such

statements, instruments, releases, and other documents on behalf of the person or entity with respect

to the Sellers or the Purchased Assets, and (ii) the Purchaser is authorized to file, register, or

otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the

release of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever in

the Sellers or the Purchased Assets.  Each and every federal, state, and local governmental agency or

department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the BH Legacy APA, including,

without limitation, recordation of this Order. This Order shall be binding upon and shall govern the

acts of all Persons including without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other

Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

11.    **No Interference.**  Following the Closing of the Sale, no holder of any Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such Interest, or based on any actions the Debtors may take in their Chapter 11 cases.

12.    **Surrender of Possession.**  All entities that are currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an interest hereby are directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date, unless the Purchaser otherwise agrees.

13.    **No Discriminatory Treatment.**  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale contemplated by the BH Legacy APA.

14.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the Sale, the Debtors' assumption and assignment to the Purchaser of the SBO Servicing Agreements is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

15.    The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Sale Procedures Order and the BH Legacy

APA, the SBO Servicing Agreements free and clear of all Interests of any kind or nature whatsoever, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deem may be necessary to assign and transfer the SBO Servicing Agreements to the Purchaser.  The SBO Servicing Agreements shall be transferred and assigned to, pursuant to the Sale Procedures Order and the BH Legacy APA, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such SBO Servicing Agreements (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Sellers shall be relieved from any further liability, other than the Cure Amounts, with respect to the SBO Servicing Agreements after such assumption and assignment to the Purchaser.  The Debtors may assign each SBO Servicing Agreement in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any SBO Servicing Agreements that prohibit or condition the assignment of such SBO Servicing Agreements or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such SBO Servicing Agreement, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each SBO Servicing Agreement have been satisfied.  With respect to the relevant SBO Servicing Agreements subject of the objections filed by Branch Banking and Trust (Docket No. 2205), PNC Mortgage, a Division of PNC Bank, NA (Docket Nos. 1635 and 1981), Wells Fargo Bank, N.A. (Docket No. 2209), and CitiMortgage, Inc. (Docket No. 2210), for the avoidance of doubt, notwithstanding anything to the contrary contained in this Order or the BH Legacy APA, upon the assignment of the SBO Servicing Agreements to Purchaser, Purchaser shall perform all

ny-1040884

of the obligations under the SBO Servicing Agreements, from and after the Closing Date

including any obligation in accordance with the terms of such SBO Servicing Agreements  to

reimburse such third-party servicer or subservicer (the "SBO Servicer") for Advances made

under such SBO Servicing Agreement prior to the Closing Date but that are unmatured

reimbursement obligations which do not become due and payable under the terms of such

agreements until post-closing; provided, however, that Purchaser shall not incur any liability,

including with respect to reimbursement of Advances, that arise out of or relate to any  act or

omission of the Debtors (whether as originator, servicer, or otherwise) that occurred before the

Closing Date.

16.    ~~17.~~ All defaults and all other obligations or Liabilities under any SBO

Servicing Agreement occurring, arising or accruing prior to the date of the assignment or

transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Sellers

of the Cure Amount, and, without limiting the foregoing, no effect shall be given to any

default of the type set forth in section 365(b)(2) of the Bankruptcy Code, whether or not

such SBO Servicing Agreement is an executory contract within the meaning of section

365 of the Bankruptcy Code.  The Cure Amounts reflect the sole amounts necessary

under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the SBO

Servicing Agreements, and no other amounts are or shall be due to the non-debtor parties

in connection with the assumption by the Debtors and assignment to the Purchaser of the

SBO Servicing Agreements.

17.    ~~18.~~ Except as provided in the BH Legacy APA or this Order, after the

Closing, the Debtors and their estates shall have no further liabilities or obligations with

respect to any SBO Servicing Agreements other than certain Cure Amounts, and all

ny-1040884

holders of such claims arising from and after Closing under any SBO Servicing

Agreement are forever barred and estopped from asserting any claims (other than for Cure

Amounts) under any Assumed Contract against the Debtors, their successors or assigns,

and their estates.

18.    ~~19.~~ The Debtors, in consultation with the Creditors' Committee and the

Purchaser, and the relevant non-debtor counterparty shall have authority to compromise,

settle, or otherwise resolve any objections to proposed Cure Amounts without further

order of the Bankruptcy Court; provided, however, the consent of the Creditors'

Committee (which consent shall not be unreasonably withheld) shall be required with

respect to the allowance of any Cure Amount in excess of $1 million.  If the Debtors, in

consultation with the Creditors' Committee, the Purchaser and the non-debtor

counterparty, determine that the objection cannot be resolved without judicial

intervention, then the determination of the assumption and assignment of the executory

contract or unexpired lease and/or the proposed Cure Amount with respect to such

contract or lease will be determined by the Court at a date mutually agreed to by the

parties or as determined by the Court.

19.    ~~20.~~ The failure of the Sellers or the Purchaser to enforce at any time one or

more terms or conditions of any SBO Servicing Agreement shall not be a waiver of such

terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and

condition of the SBO Servicing Agreements.

20.    ~~21.~~ **No Successor Liability.**  Neither the Purchaser, nor any of its successors or

assigns, or any of their respective affiliates shall have any liability for any Interest that arose prior

to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior

to the Closing. The Purchaser shall not be deemed, as a result of any action taken in connection with the

BH Legacy APA or any of the transactions or documents ancillary thereto or contemplated thereby or

in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise

be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the

Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of

the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee,

derivative, or vicarious liabilities of any kind or character for any Interests, including under any

theory of successor or transferee liability, de facto merger or continuity, environmental, labor and

employment, and products or antitrust liability, whether known or unknown as of the Closing,

now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or

unliquidated.

21.    22. **Fair Consideration.**  The consideration provided by the Purchaser for the

Purchased Assets under the BH Legacy APA shall be deemed to constitute reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States, any

state, territory, possession, or the District of Columbia. The Sales may not be avoided under section

363(n) of the Bankruptcy Code.  The Purchaser was not party to any agreements to control the sale

price, and is not subject to any claims for damages under section 363(n) of the Bankruptcy Code.

22.    23. **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its

statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce

the terms and provisions of this Order, all amendments thereto, and any waivers and consents

thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased

Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii)

protect the Purchaser against any Interests, Claims or Liabilities against or related to the Sellers or the

Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of the Bankruptcy Code.

23.    24.    **Good Faith.**  The transactions contemplated by the BH Legacy APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.  There has been no collusion by the Purchaser.

24.    25.  **No Bulk Law Application.**  No law of any state or other jurisdiction, including any bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the BH Legacy APA, the Motion, and this Order.

25.    26.  **Subsequent Plan Provisions.**  Nothing contained in any Chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the BH Legacy APA or this Order.

26.    27.  **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the BH Legacy APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the BH Legacy APA be authorized and approved in its entirety.

27.    28.  **Non-Material Modifications.**  The BH Legacy APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto

ny-1040884

and in accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment, or supplement does not have any adverse effect on the Debtors' estates.

28. ~~29.~~**Appointment of Trustee.**  The provisions of the BH Legacy APA and this Order

may be specifically enforced in accordance with the BH Legacy APA notwithstanding the

appointment of any chapter 7 or chapter 11 trustee after the Closing.

29. ~~30.~~**Application of Net Proceeds and Repayment of Obligations Under the

Ally DIP Facility.**  Consistent with the terms of the *Final Order Under Sections 105, 361, 362,

363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I)

Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II)

Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate

Protection Parties* [Docket No. 491~~,~~ (the "Ally DIP and Cash Collateral Order"),[1] the Debtors

are authorized and directed to apply the net proceeds of the Sale attributable to the collateral

securing the ~~Ally~~AFI DIP Loan to repay the ~~PPL Obligations under the Ally DIP Facility~~AFI DIP

Obligations under the AFI LOC Amendment.  All payments to the AFI DIP Lender shall be final

and indefeasible.  The liens of the AFI DIP Lender on the AFI DIP Loan Collateral shall attach to

the proceeds of the Sale contemplated by this Order until the payments required by this paragraph

and by the AFI LOC Amendment are made.  No failure of the Debtors to comply with this

paragraph ~~25~~29 shall have any effect whatsoever on the sale of the Purchased Assets under the

BH Legacy APA and such sale shall be free and clear as set forth in this Order, including in

paragraphs N-P, T, 3-12, 15-17, and ~~21~~20 of this Order.

30. ~~31.~~**Application of Net Proceeds and Repayment of Obligations Under the

Barclays DIP Facility.**  Consistent with the terms of the *Final Order Pursuant to 11 U.S.C. §§*

---

[1]  Except for the terms "Closing", "Order", "Debtors", "Purchased Assets", and "BH Legacy APA", all capitalized
terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Ally
DIP and Cash Collateral Order.

*105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and*

*Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under*

*Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements*

*Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements*

*relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured*

*Superpriority Basis and (II) Granting Related Relief* (Docket No. 490) (the "Barclays DIP

Order"),[2] at Closing the Debtors are authorized and directed to pay to the Administrative Agent

an amount in cash equal to the outstanding DIP Obligations for application by the Administrative

Agent in accordance with section 2.14 of the DIP Credit Agreement; provided that if the Sale

meets the criteria listed in section 6.08(e)(i)-(iv) of the DIP Credit Agreement then the Debtors

shall  pay to the Administrative Agent the ~~Net Asset Sale Proceeds (as defined in~~amount required

by the DIP Credit Agreement~~) of the Sale~~ at Closing.  All payments to the Administrative Agent

and the DIP Lenders shall be final and indefeasible.  The liens of the Administrative Agent, the

Collateral Agent and the DIP Lenders on the Collateral shall attach to the proceeds of the sales

contemplated by this Order until the payments required by this paragraph and by the DIP Credit

Agreement are made. No failure of the Debtors to comply with this paragraph ~~26~~30 shall have

any effect whatsoever on the sale of the Purchased Assets under the BH Legacy APA and such

sale shall be free and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-17,

and ~~21~~20 of this Order.

31.    ~~32.~~**Purchase Price Allocation Reservation of Rights**.  ~~Any purchase~~

~~price~~Notwithstanding any other provision of this Order, nothing in this order or the BH Legacy

APA, including any segregation of cash proceeds in accordance with paragraph 36, shall be

---

[2]    Except for the terms the "Sale", "Closing", "Order", "Debtors", "Purchased Assets", and "BH Legacy APA", all
      capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms
      in the Barclays DIP Order.

deemed to be a determination that any purchase price or cash allocations, including those contained in Article III of the BH Legacy APA are ~~not~~ binding in any way on creditors of the various Debtors, or the Debtors' estates, with respect to the allocation of the proceeds of the Sale either between and among the various Debtor estates or between and among the various classes of assets sold; provided that any subsequent allocation of the proceeds for claim purposes shall have no effect on the Purchaser, in its capacity as Purchaser. All rights of all parties are reserved with respect to the allocation or distribution of the proceeds of the Sale.

32.   ~~33.~~ **Intercompany Claims.**  If as a result of the consummation of the Sale, the Debtors are obligated under the terms of the Amended and Restated DIP Credit Agreement  to utilize the proceeds of Junior Lien Collateral (as defined in the Barclays DIP Order) to pay down the Barclays DIP Facility, such Debtor guarantors, consistent with the Court's *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services And Practices, (II) Continued Use Of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation Of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre-and Post-Petition Lenders' Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* (Docket No. 393) shall be entitled to an intercompany claim against the Borrowers under the Barclays DIP Facility to the extent of such payments made, and such claim shall be accorded administrative expense status and priority of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

ny-1040884

33. 34. Notwithstanding anything herein to the contrary, including, without limitation, any findings and any assertion, agreement, pleading, or other document made or filed in connection with the Sale, the Sale Motion, the Sale Procedures Order, the Sale Hearing, or this Sale Order, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and2012; (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates; and (e) section 6.17 of the BH Legacy APA.

34. **Document Preservation.** The Debtors shall take all appropriate steps to preserve, protect, maintain, and ensure the availability of all of the Debtors' books, records, documents and electronically stored information, in whatever format, including native format that are potentially relevant to the claims asserted by the Plaintiffs (collectively the "Relevant Books and Records") in the following actions (the "Actions"):

35.

- *New Jersey Carpenters Health Fund, et als., on Behalf of Themselves and All Others Similarly Situated v. Residential Capital, LLC, et als.*, No. 08-CV-8781 (HB) (S.D.N.Y. 2008)

- *Union Cent. Life Ins. Co. et al. v. Credit Suisse First Boston Mortg. Sec. Corp. et al.*, No. 11-CV-2890 (GBD) (S.D.N.Y. 2011)

- *Donna Moore, Frenchola Holden and Keith McMillon, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, GMAC Bank and CapRe of Vermont, Inc.*, No. 07-CV-04296-PD (E.D. Pa. 2007)

- *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co., Inc., et al.*, Nos. 10-2741-BLS1, 11-0555-BLS1 (Mass. Sup. Ct. 2010, 2011).

- The Debtors (i) shall retain the originals or true copies of the Relevant Books and Records included in the Sale (the "Retained Relevant Books and Records") and, as to any of the Actions that have not been fully and finally resolved by a final, non-appealable judgment (ii) shall provide at least thirty (30) days' written notice to lead and bankruptcy counsel for the Plaintiffs in each of the Actions with an opportunity to be heard of any abandonment, destruction, or transfer of the Retained Relevant Books and Records that may render the Relevant Books and Records unavailable to the Plaintiffs.  In the event Plaintiffs file an objection to the abandonment, destruction, or transfer described above within such thirty (30) day period after receiving written notice, the Debtors shall not abandon, destroy, or transfer the Retained Relevant Books and Records absent a final and non-appealable order of this Court or any court of competent jurisdiction if the Debtors' bankruptcy cases are closed.  Purchaser shall not have any obligation to preserve, protect, maintain, or ensure the availability of any Relevant Books and Records.

36.     35.

**Amounts Payable By Sellers Are Administrative Expenses.** Any amounts due to
Purchaser from Sellers under the BH Legacy APA, including, without limitation, amounts
payable under Section 3.2(b) of the BH Legacy APA, shall constitute allowed administrative
expenses and shall be paid without the need for further application or motion by Purchaser.

37.    **Segregation of Cash.** The Debtors will segregate cash generated from the Sale in
accordance with the *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and
503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash
Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and
Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of
Certain Bank Accounts Established in Connection with Use of Pre-And Post-Petition Lenders
Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit
Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding
Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and
Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash
Management Order"), including segregating cash generated from the Sale of collateral securing
any of the Debtors' financing facilities into the specific bank accounts established for the benefit
of the lenders under such financing facilities.

38.    The Purchaser's obligations to Sellers under section 6.17 of the BH Legacy APA
shall extend to any successor estate fiduciary and AFI, in each case solely to the extent such
entity is carrying out the obligations of the Sellers under the DOJ/AG Settlement or Consent
Order.

39.    **DLJ Consortium Asset Purchase Agreement.** Notwithstanding anything to the
contrary herein or in the Sale Procedures Order, or the Asset Purchase Agreement dated as of

October 19, 2012 (the "DLJ Back-Up Bid") among Sellers on the one hand, and Bayview Acquisitions, LLC, DLJ Mortgage Capital, Inc. ("DLJ"), Roosevelt Depositor, LLC, Roosevelt Mortgage Acquisition Company, and Selene Finance LP (collectively, the "DLJ Consortium") on the other hand, the DLJ Back-Up Bid shall be required to remain open until the earlier to occur of: (i) the complete closing of the Sale to Purchaser; or (ii) December 31, 2012 (such earlier date to occur, the "DLJ Back-Up Bid Termination Date").  Upon the occurrence of the DLJ Back-Up Bid Termination Date, the DLJ Back-Up Bid shall be deemed automatically terminated, and the transactions contemplated thereby abandoned without further notice or act by any party.  Upon the occurrence of the Back-Up Bid Termination Date, Sellers and DLJ shall promptly execute a joint instruction to JPMorgan Chase Bank, NA (the "Escrow Agent") authorizing and directing the release of the good faith deposit funded on behalf of the DLJ Consortium pursuant to the Deposit Escrow Agreement entered into as of October 18, 2012 among Sellers, Escrow Agent and DLJ.

Dated: New York, York
      November __, 2012

_____
   THE HONORABLE MARTIN GLENN
   UNITED STATES BANKRUPTCY JUDGE

ny-1040884

Document comparison by Workshare Professional on Tuesday, November 20, 2012 1:11:11 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://NEW YORK/1040884/7 |
| Description | NEW YORK-#1040884-v7-Bounce_-_BH_APA_Sale_Approval_Order |
| Document 2 ID | PowerDocs://NEW YORK/1040884/10 |
| Description | NEW YORK-#1040884-v10-Bounce_-_BH_APA_Sale_Approval_Order |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 44 |
| Deletions | 36 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 80 |