**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————   )
In re:                                          )      Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )      Chapter 11
                                                )
                            Debtors.            )      Jointly Administered
                                                )
———————————————————————————————   )

**ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND FED BANKR. P. 2002, 6004, 6006,**
**AND 9014 (I) APPROVING (A) SALE OF DEBTORS' ASSETS PURSUANT TO**
**ASSET PURCHASE AGREEMENT WITH OCWEN LOAN SERVICING, LLC;**
**(B)  SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS,**
**CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (C) ASSUMPTION**
**AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES THERETO; (D) RELATED AGREEMENTS;**
**AND (II) GRANTING RELATED RELIEF**

Upon the motion, dated May 14, 2012 (the "Motion"), of Residential Capital,

LLC ("ResCap") and certain of its affiliates, as debtors in possession in the above-captioned

Chapter 11 cases (collectively, the "Debtors"),[1] for entry of an order, under Bankruptcy Code

sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014 authorizing and

approving (i) the Sale of the Purchased Assets as contemplated by the Sales Procedures Order (as

defined below) pursuant to that certain Asset Purchase Agreement, dated as of

November 2, 2012, a copy of which is attached hereto as Exhibit 1, as may be amended or

supplemented in accordance herewith (including all schedules, exhibits, and attachments thereto,

including the Ancillary Agreements (as such term is defined therein) to be entered into by and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the
Ocwen APA.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases
or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

among the parties as contemplated therein, collectively, the "Ocwen APA"), by and among

Ocwen Loan Servicing, LLC ("Ocwen" and together with any designee or assignee as provided

by the Ocwen APA, the "Purchaser"), ResCap, Residential Funding Company, LLC ("RFC"),

GMAC Mortgage, LLC ("GMAC Mortgage"), Executive Trustee Services, LLC ("ETS LLC"),

ETS of Washington, Inc. ("ETS WA"), and the additional sellers identified on schedule A to the

Ocwen APA (such sellers, together with ResCap, RFC, GMAC Mortgage, ETS LLC, ETS WA,

collectively, the "Sellers", and each individually, a "Seller"); (ii) the sale and all related

transactions, in accordance with the Ocwen APA and this Order (the "Sale") of all of the

Debtors' right, title and interest in, to and under the Purchased Assets to the Purchaser free and

clear of all Claims[2], Liens[3], encumbrances, or other interests (including without limitation, any

and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims

based on any successor or transferee liability) other than the Assumed Liabilities and the

Permitted Liens (collectively, all such Claims, Liens, encumbrances and other interests other

than the Assumed Liabilities and the Permitted Liens, "Interests"), with such Interests

transferring and attaching to the proceeds of the Sale with the same validity and priority as such

Interests had in the Purchased Assets immediately prior to the Sale; (iii) the assumption by the

Sellers and the assignment to the Purchaser of the Assumed Contracts pursuant to section 365 of

the Bankruptcy Code (together with the Sale and other transactions to be consummated pursuant

---

[2] For the convenience of the parties, the Ocwen APA defines "Claims" to mean "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown."

[3] For the convenience of the parties, the Ocwen APA defines "Lien" to mean "any lien, charge, claim, pledge, deed of trust, right of first refusal, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, option, proxy, hypothecation, voting trust agreement, transfer restriction, easement, servitude, encroachment, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction)."

to the Ocwen APA, the "Transactions") and the fixing and satisfaction by the Sellers of Cure

Amounts relating thereto and (iv) granting related relief; and upon the Whitlinger Affidavit,

pursuant to Local Bankruptcy Rule 1007-2; the Declarations of Samuel M. Greene in Support

and in Further Support of the Proposed Sale of Debtors' Assets; the Declaration of Marc D.

Puntus in Support of the Debtors' Sale Motion; the Declaration of John Ruckdaschel in Support

of Debtors' Sale Motion; the Declaration of Ronald M. Faris of Ocwen Loan Servicing, LLC in

Support of the Debtors' Sale Motion; the Declaration of Denmar Dixon of Walter Investment

Manage Corp. in Support of the Debtors' Sale Motion; and the Declaration of Peter Giamporcaro

in Support of the Sale Without a Privacy Ombudsman; and the Court having entered an order,

dated June 28, 2012 (the "Sale Procedures Order"), authorizing and approving the Sale

Procedures, bid protections, notice of the Sale, and the hearing to consider approval of the

Transactions (the "Sale Hearing"); and the Court having entered the *Third Revised Joint*

*Omnibus Scheduling Order Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for*

*Approval of RMBS Trust Settlement Agreements* dated October 23, 2012 [Docket No. 1926]

(incorporating provisions of the related July 31, 2012 scheduling order [Docket No. 945] the

"Scheduling Order"); and an Auction having been held in accordance with the Sale Procedures

Order; and at the conclusion of the Auction, Ocwen (the "Purchaser") was chosen as the

Successful Bidder (as defined in the Sale Procedures Order) in accordance with the Sales

Procedures Order; and the Sale Hearing having been held on November 19, 2012 to consider the

relief requested in the Motion; the record of the Sale Hearing, and all of the proceedings before

the Court; and the Court having reviewed the Motion and any objections thereto (the

"Objections"); and all parties in interest having been afforded an opportunity to be heard with

respect to the Motion and all of the relief related thereto; and it appearing that the relief

3

requested by the Motion is in the best interests of the Debtors' estates, their creditors, and other

parties in interest; and after due deliberation thereon; and sufficient cause appearing therefore, it

is

FOUND AND DETERMINED THAT:[4]

A.    **Jurisdiction and Venue.**  This Court has jurisdiction over the Motion and

the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates.**  The statutory predicates for the relief sought in the

Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by

Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.  The consummation of the Transactions

contemplated by the Ocwen APA and this Order is legal, valid and properly authorized under all

such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable

requirements of such sections and rules have been complied with in respect of the Transactions.

C.    **Notice.**  As evidenced by the affidavits and certificates of service and

publication notice previously filed with the Court and based on the representations of counsel at

the Sale Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice

of the Motion, the Sale Procedures, the Sale, the other Transactions, the Auction, the Assumption

and Assignment Procedures, and the Sale Hearing have been provided in accordance with

sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a),

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

6006(c), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested

persons and entities including: (i) the Office of the United States Trustee for the Southern

District of New York, (ii)  the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's

prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition

amended and restated secured revolving credit agreement, (v) the attorneys for the agent under

the Debtors' post-petition debtor-in-possession financing facility, (vi) the attorneys for the

statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the

"Creditors' Committee"), (vii) the attorneys for the ad hoc bondholders' committee, (viii) the

attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage

Corporation, and the Government National Mortgage Association, (ix) any party who, in the past

year, expressed in writing to the Debtors an interest in the Purchased Assets and who the Debtors

and their representatives reasonably and in good faith determined potentially have the financial

wherewithal to effectuate the transaction contemplated in the APA, (x) each non-debtor

counterparty to the Assumed Contracts, any known third party beneficiaries to such Assumed

Contracts, all trustees, certificateholders, investors, rating agencies, mortgage insurers and any

parties to any pooling and servicing agreements, assignment, assumption and recognition

agreements, Servicing Agreements, subservicing agreements or similar agreements (all such

parties in this clause (x), the "Interested Contract Parties"); (xi) all parties who are known to

have asserted or believed by Debtors to hold any Interest in or on the Purchased Assets, (xii) the

Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all applicable

state attorneys' general, and local authorities, (xv) all applicable state and local taxing

authorities, (xvi) the Federal Trade Commission, (xvii) the United States Department of Justice,

(xviii) the United States Attorney's Office, (xix) the Office of the United States Trustee for the

Southern District of New York, (xx) the office of the New York Attorney General; and (xix) all entities that requested notice in these Chapter 11 cases under Bankruptcy Rule 2002 ((i)-(xx) collectively, the "Notice Parties").  The Debtors published the Sale Notice[5] (as defined in the Sale Procedures Order) in the national edition of *The Wall Street Journal* and *The New York Times*.  The Debtors provided notice of the assumption and assignment of Assumed Contracts (including Servicing Agreements) and any Cure Amounts related thereto to all Interested Contract Parties of such Assumed Contracts in accordance with the Sale Procedures Order.  Such notice placed these Persons on notice that their failure to object to the Debtors' assumption and assignment of the Assumed Contracts (including Servicing Agreements) or to the Cure Amounts would be deemed consent to the assumption and assignment of the Assumed Contracts (including Servicing Agreements) and the Cure Amounts.  The notice described in this Paragraph C is good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assumed Contracts (including the Servicing Agreements), the Cure Amounts, the Ocwen APA, Sale, the other Transactions, and this Order is or shall be required.  With respect to parties who may have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the publication of the Sale Notice was sufficient and reasonably calculated under the circumstances to reach such parties.

        D.     **Extensive Efforts by Debtors.**  As of the Petition Date and for a period of more than 7 months before the commencement of these Chapter 11 cases, the Debtors worked with their counsel and financial advisors, AFI, and various governmental constituencies to

---

[5] *See Amended Notice of Public Auction and Sale Hearing to Sell Certain of Debtors' Assets Pursuant to Asset Purchase Agreements with Nationstar Mortgage LLC and Berkshire Hathaway Inc. and Related Relief and Dates* [Docket No. 1446].

implement a viable transaction that would allow them to continue their operations.  The Debtors

presented credible evidence that, as of the Petition Date, they had explored various strategic

alternatives for the Debtors' businesses over an extended period of time and had communicated

with 5 parties about a possible sale of all or substantially all of the Debtors' assets.  The Sale

Motion was the result of the Debtors' extensive efforts in seeking to maximize recoveries to the

Debtors' estates, for the benefit of creditors.

E.    **Business Justification.**  The Debtors have demonstrated compelling

circumstances and a good, sufficient, and sound business purpose and justification for the sale of

the Purchased Assets.  In light of the circumstances of these Chapter 11 cases and the risk of

deterioration in the going concern value of the Purchased Assets pending the Sale, time is of the

essence in (i) consummating the Sale and the other Transactions, (ii) preserving the viability of

the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse

economic consequences for the Debtors, their estates, and their creditors and employees.

F.    **Sale Procedures Order.**  On June 28, 2012, this Court entered the Sale

Procedures Order approving Sale Procedures for the Purchased Assets.  The Sale Procedures

provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the

Purchased Assets.

G.    **Adequate Marketing; Highest or Best Offer.**  As demonstrated by

(i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the

representations of counsel made on the record at the Sale Hearing, (a) the Debtors have

adequately marketed the Purchased Assets and conducted the sale process in compliance with the

Sale Procedures Order; (b) a reasonable opportunity has been given to any interested party to

make a higher or better offer for the Purchased Assets; (c) Ocwen timely submitted a Qualified

Bid in accordance with the Sale Procedures Order and participated in the auction as a Qualified

Bidder; (d) Ocwen submitted the highest and best bid for the Purchased Assets at the Auction

and was designated the Successful Bidder; (e) the consideration provided for in the Ocwen APA

constitutes the highest or otherwise best offer for the Purchased Assets; (f) the consideration

provides fair and reasonable consideration for the Purchased Assets and constitutes reasonably

equivalent value under the Bankruptcy Code and under the laws of the United States, any state,

territory, possession, or the District of Columbia; (g) the Sale will provide a greater recovery for

the Debtors' creditors than would be provided by any other practically available alternative,

including liquidation under Chapters 7 or 11 of the Bankruptcy Code; (h) taking into

consideration all relevant factors and circumstances, and after having conducted the Auction in

accordance with the Sale Procedures Order, no other entity has offered to purchase the Purchased

Assets for greater economic value to the Debtors or their estates; and (i) the Debtors'

determination that the Ocwen APA constitutes the highest or best offer for the Purchased Assets

constitutes a valid and sound exercise of the Debtors' business judgment.

   H. **Opportunity to Object.** A reasonable opportunity to object or be heard

with respect to the Motion, the relief requested therein and the Cure Amounts has been afforded

to all interested Persons, including the Notice Parties.

   I. **Sale in Best Interests.** The actions represented to be taken by the Sellers

and the Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in

the best interests of the Debtors, their estates and creditors, and other parties in interest.

Approval of the Ocwen APA and of the Sale and other Transactions at this time is in the best

interests of the Debtors, their creditors, their estates, and all other parties in interest.

J.      **No *Sub Rosa* Plan.**   The approval of the Transactions under section 363 of the Bankruptcy Code and the consummation of the Transactions outside of a plan of reorganization pursuant to the Ocwen APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.   The Transactions do not constitute a *sub rosa* plan of reorganization.

K.      **Arm's-Length Sale.**   The Ocwen APA and the Transactions were negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.   Neither the Sellers, their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Ocwen APA, the Sale, or any part of the Transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

L.      **Good Faith Purchaser.**   The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

M.      **Prompt Consummation.**   The Sale and the other Transactions must be approved and consummated as promptly as practicable in order to preserve the viability of the business to which the Purchased Assets relate as a going concern.

N.      **Corporate Authority.**   Each Debtor (i) has full corporate power and authority to execute the Ocwen APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Ocwen APA, (iii) has taken all corporate action necessary to authorize and approve the Ocwen APA and the consummation by the Debtors of the

transactions contemplated thereby, and (iv) needs no consents or approvals, other than those

expressly provided for in the Ocwen APA, which may be waived by the Purchaser, to

consummate such transactions.

      O.     **Binding and Valid Transfer.**  The transfer of the Purchased Assets to the

Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the

Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Sellers to the

Purchased Assets free and clear of all Interests, including (i) rights or claims based on any

successor or transferee liability (ii) those that purport to give to any party a right or option to

effect any forfeiture, modification, right of first refusal, or termination of the Sellers' or the

Purchaser's interest in the Purchased Assets, or any similar rights, (iii) those relating to taxes

arising under or out of, in connection with, or in any way relating to the operation of the

Purchased Assets prior to the closing, and (iv) (a) those arising under all mortgages, deeds of

trust, security interests, conditional sale or other title retention agreements, pledges, liens,

judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if

any, including any restriction on the use, voting, transfer, receipt of income, or other exercise of

any attributes of ownership and (b) all debts arising in any way in connection with any

agreements, acts, or failures to act, of any of the Sellers or any of the Sellers' predecessors or

affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities,

demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, contingent or otherwise, whether

occurring or arising prior to or subsequent to the commencement of these Chapter 11 cases, and

whether imposed by agreement, understanding, law, equity or otherwise, including, but not

limited to, Claims otherwise arising under doctrines of successor or transferee liability, Claims or

Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date.

P.        **Severability of Servicing Agreements.**  Except as may be provided in the Ocwen APA with respect to the Ginnie Mae Loans, the Servicing Agreements being assumed and assigned to the Purchaser pursuant to the Ocwen APA consist solely of enforceable contracts for providing servicing, subservicing or master servicing for Mortgage Loans.  The Assumed Contracts do not include any agreements, obligations, or liability in respect of the origination or sale of mortgage loans (including, without limitation, the liability of any Debtors that are party to an Assumed Contract with respect to representations and warranties made in connection with such origination or sale or with respect to the noticing and enforcement of any remedies in respect of alleged breaches of such representations and warranties) or any other agreements not being assumed and assigned to Purchaser pursuant to the Ocwen APA (collectively, the "Other Agreements") in all cases regardless of whether such Other Agreement arises from, or is memorialized in, the same writing (or writings) as a Servicing Agreement.  Neither the Purchased Assets nor the Servicing Agreements include any Other Agreements, regardless of whether such Other Agreements arise from, or are memorialized in, the same writing as the Servicing Agreements, and to the extent any Servicing Agreement arises from, or is memorialized in, one or more writings which include an Other Agreement, such Servicing Agreement is severable from any Other Agreements.  The Sellers are not assuming and assigning to the Purchaser and the Purchaser has no Liability under any Other Agreement.  Nothing in the Ocwen APA or this Order shall have any effect on any Other Agreement or any claims related thereto against the Debtors, and the rights, if any, of all parties against the Debtors in respect of

the Other Agreements are reserved. The rights, if any, of parties against the Debtors in respect of

Other Agreements are not the subject matter of the Sale Hearing and are expressly reserved;

provided, however, that no party to an Other Agreement may proceed against the Purchaser or

the Purchased Assets on any Claim arising out of an Other Agreement. No delay or failure of

performance by the Debtors under or in respect of any Other Agreement will (i) affect any right

of the Purchaser, or any obligation of any other party, under any Assumed Contract (including,

without limitation, any Servicing Agreement) or (ii) permit, result in or give rise to any setoff,

delay, deferral, defense, recoupment, Claim, counterclaim, default or other impairment of the

rights of Purchaser under any Assumed Contract (including, without limitation, any Servicing

Agreement). For avoidance of doubt, notwithstanding anything to the contrary contained in this

Order or in the Ocwen APA, upon the assignment of the Servicing Agreements to Purchaser,

Purchaser shall perform all of the obligations under the Servicing Agreements (but not perform

any obligations or have any liabilities arising under the Other Agreements) from and after the

Closing Date; provided, however, that Purchaser shall not incur any liability that arises out of or

relates to any act or omission of the Debtors (whether as originator, servicer, or otherwise) that

occurred before the Closing Date.

       Q.      **Satisfaction of 363(f) Standards.** The Sellers may sell the Purchased

Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims

based on any successor or transferee liability, because, in each case, one or more of the standards

set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of

Interests, including rights or claims based on any successor or transferee liability, and non-debtor

parties to the Assumed Contracts who did not object, or who withdrew their Objections, to the

Transactions or the Motion are (a) deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code and/or (b) adequately protected by having their Interests, if any, including

rights or claims based on any successor or transferee liability, attach to the cash proceeds of the

Sale ultimately attributable to the property against or in which they claim an Interest, including

rights or claims based on any successor or transferee liability.  In all cases, each such Person

with Interests in the Purchased Assets are enjoined from taking any action against the Purchaser,

the Purchaser's Affiliates or any agent of the foregoing to recover any such Interest.

       R.     **Necessity of Order.**  The Purchaser would not have entered into the

Ocwen APA and would not consummate the Transactions without all of the relief provided for in

this Order (including that (1) the transfer of the Purchased Assets to Purchaser be free and clear

of all Interests and including rights or Claims based upon successor or transferee liability, Claims

or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage

Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act

or omission of the Sellers or any other Person prior to the Closing Date, and (2) the Purchaser

not be liable for any Cure Amounts or any other pre-Closing liabilities with respect to any

Assumed Contracts).  The consummation of the Transactions pursuant to this Order and the

Ocwen APA is necessary for the Debtors to maximize the value of their estates for the benefit of

all creditors and other parties in interest.  The Purchaser has agreed to this Transaction with the

intent of purchasing the Purchased Assets and does not and would not agree to assume anything

other than the Assumed Liabilities.

       S.     **Assumed Contracts.**  The Debtors have demonstrated that it is an

exercise of their sound business judgment to assume and assign the Assumed Contracts to the

Purchaser in connection with the consummation of the Sale, and the assumption and assignment

of the Assumed Contracts is in the best interests of the Debtors, their estates and creditors, and

other parties in interest.  The Assumed Contracts being assigned to the Purchaser are an integral

part of the Purchased Assets being purchased by the Purchaser, and, accordingly, such

assumption and assignment of the Assumed Contracts and liabilities are reasonable, enhancing

the value of the Debtors' estates.

T.    **Cure/Adequate Assurance.**  The Debtors have cured or demonstrated

their ability to cure any default with respect to any act or omission that occurred prior to the

Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the

of the Bankruptcy Code.  The Cure Amounts are deemed the amounts necessary to "cure" within

the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of

section 365(b) of the Bankruptcy Code under such Assumed Contracts.  The Purchaser's promise

to perform the obligations under the Assumed Contracts after the Closing Date shall constitute

adequate assurance of its future performance of and under the Assumed Contracts, within the

meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  The Purchaser is not

assuming any liability under or in connection with the Assumed Contracts (including Servicing

Agreements) occurring or arising prior to the Closing Date, whether encompassed within the

Cure Amounts payable by the Debtors or otherwise (including, without limitation, fees or

indemnification Claims relating to any period prior to the Closing Date or any acts or omissions

of the Sellers or any other Person occurring or arising prior to the Closing Date).  All Interested

Contract Parties of the Assumed Contracts (including the Servicing Agreements) who did not

timely file an objection to the assumption and assignment of the Assumed Contract in

accordance with the Sale Procedures Order, are deemed to consent to the assumption by the

Debtors of their respective Assumed Contract and the assignment thereof to the Purchaser.  To

the extent not resolved and/or adjourned at or prior to the Sale Hearing, the objections of all

Interested Contract Parties of Assumed Contracts (including Servicing Agreements) that did file

a timely objection to the assumption and assignment of such parties' respective Assumed

Contract relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were

considered by the Court, and are overruled on the merits with prejudice; provided, however, that

to the extent an objection of the Interested Contract Parties, or unresolved portion thereof, relates

solely to a Cure Amount or the Debtors' right to assume and assign any such Assumed Contract,

such objection is preserved and shall be heard by the Court on a date mutually agreed to by the

parties or as determined by the Court.  The Court finds that with respect to all such Assumed

Contracts (including Servicing Agreements) the payment of the Cure Amounts is appropriate and

is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.

Accordingly, all of the requirements of sections 365(b) of the Bankruptcy Code have been

satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the

Assumed Contracts.  To the extent any Assumed Contract is not an executory contract within the

meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in

accordance with the terms of this Order that are applicable to the Purchased Assets, and the

Purchaser shall have no liability or obligation for any (a) defaults or breaches under such

agreement that relate to acts or omissions that occurred in the period, or otherwise arose, prior to

the date of the entry of this Order, and (b) Claims, counterclaims, offsets, or defenses (whether

contractual or otherwise, including without limitation, any right of recoupment) with respect to

such Assumed Contract, that relate to any acts or omissions that arose or occurred prior to the

date of the entry of this Order.

       U.      **Unenforceability of Anti-Assignment Provisions.**  Except as provided in

section 8.3(v) and Schedule 4.3 of the Ocwen APA, anti-assignment provisions in any Assumed

Contract— including any provisions requiring rating agency confirmation/ "no downgrade" letters, or any other third party consent —shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Assumed Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

V.      **Personally Identifiable Information.**  The Debtors have provided certain privacy policies to consumers that govern the disclosure of "personally identifiable information" (as defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties.  Debtors have proposed to sell certain assets, which may require the disclosure of personally identifiable information to third parties.  The Debtors' disclosure of personally identifiable information pursuant to the Sale is in compliance with the Gramm-Leach-Bliley Act and is consistent with the privacy notices delivered by the Debtors to mortgage borrowers. For these reasons, no consumer privacy ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

W.      **Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      **Motion is Granted.**  The Motion is granted and the relief requested therein with respect to the Sale of the Purchased Assets to the Purchaser pursuant to the Ocwen APA is granted and approved, as further described below.

2.      **Objections Overruled.**  Any objections to the entry of this Order or the

relief granted herein and requested in the Motion, including any objections to Cure Amounts or

the assumption and assignment of Assumed Contracts, that have not been withdrawn, waived, or

settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and

overruled on the merits with prejudice, except to the extent any objections to the assumption and

assignment of Assumed Contracts or Cure Amounts or the Debtors' right to assume and assign

any such assumed contract were unresolved and/or adjourned prior to or at the Sale Hearing.

3.      **Approval.**  The Ocwen APA, and all the terms and conditions thereof, is

approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are

authorized and directed to perform their obligations under, and comply with the terms of, the

Ocwen APA and consummate the Transactions pursuant to, and in accordance with, the terms

and conditions of the Ocwen APA and this Order.  The Debtors are authorized and directed to

execute and deliver, and empowered to perform under, consummate, and implement, the Ocwen

APA, together with all additional instruments and documents that the Sellers or the Purchaser

deem necessary or appropriate to implement the Ocwen APA and effectuate the Transactions,

and to take all further actions as may reasonably be required by the Purchaser for the purpose of

assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to

Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the

performance of the obligations as contemplated by the Ocwen APA.

4.      **Binding Effect of Order.**  This Order and the Ocwen APA shall be

binding in all respects upon all known and unknown creditors of, and equity security interests in,

any Debtor, including any holders of Interests (including holders of rights or claims based on any

successor or transferee liability), all Interested Contract Parties of the Assumed Contracts, all

successors and assigns of the Purchaser, each Seller and their Affiliates and subsidiaries, the

Purchased Assets, and any trustees appointed in the Debtors' Chapter 11 cases or upon a

conversion to cases under Chapter 7 of the Bankruptcy Code and this Order shall not be subject

to amendment or modification and the Ocwen APA shall not be subject to rejection.  Subject to

the terms and conditions of the Ocwen APA, the terms of this Order shall apply in the event the

Sale under the Ocwen APA is consummated by and under any Chapter 11 plan, and may be

incorporated into any confirmation order.  Nothing contained in any Chapter 11 plan confirmed

in the Debtors' Chapter 11 cases or the order confirming any such Chapter 11 plan shall conflict

with or derogate from the provisions of the Ocwen APA or this Order.

     5.    **Injunction.**  All persons and entities are prohibited and enjoined from

taking any action to adversely affect or interfere with the ability of the Debtors to transfer the

Purchased Assets to the Purchaser in accordance with the Ocwen APA and this Order.

Following the Closing, except for Persons entitled to enforce Assumed Liabilities and Permitted

Liens, all Persons (including, but not limited to, the Debtors and/or their respective successors

(including any trustee), creditors, investors, certificateholders, securitization trustees, borrowers,

current and former employees and shareholders, administrative agencies, governmental units,

secretaries of state, federal, state, and local officials, including those maintaining any authority

relating to any environmental, health and safety laws, and the successors and assigns of each of

the foregoing) holding Interests in the Purchased Assets or against the Debtors in respect of the

Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred,

estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any

Interests of any kind or nature whatsoever (including, without limitation, Claims or Liabilities

relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to

the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of

the Sellers or any other Person prior to the Closing Date) against the Purchaser or any Affiliate

of the Purchaser or any of their respective property, successors and assigns, or the Purchased

Assets, as an alleged successor or on any other grounds, it being understood that nothing herein

shall affect assets of the Debtors that are not Purchased Assets.

6.      Upon the transfer or assignment of the Assumed Contracts to the

Purchaser, each Interested Contract Party of an Assumed Contract is hereby forever barred,

estopped, and permanently enjoined from asserting against the Purchased Assets, the Purchaser,

its Affiliates or their respective property (a) any setoff, defense, recoupment, Claim, Interest,

counterclaim or default asserted or assertable against, or otherwise delay, defer or impair any

rights of the Purchaser with respect to the Purchased Assets with respect to an act or omission of,

the Debtors, or (b)  any rent acceleration, assignment fee, default, breach or Claim, or pecuniary

loss or condition to assignment or transfer, arising under or related to an Assumed Contract

existing as of the Closing, or arising by reason of the Closing.  No delay or failure of

performance under or in respect of any Other Agreement will (i) affect any right of the

Purchaser, or any obligation of any other party, under any Assumed Contract (including, without

limitation, any Servicing Agreement) or (ii) permit, result in or give rise to any setoff, delay,

deferral, defense, recoupment, Claim, Interest, counterclaim, default or other impairment of the

right to receive any payment or otherwise to enforce any other rights under any Assumed

Contract (including, without limitation, any Servicing Agreement).

7.      No Person shall assert, and the Purchaser and the Purchased Assets shall

not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or

otherwise, including, without limitation, any right of recoupment), Liabilities, Claims and

Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the

Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any

Purchased Assets (including, without limitation, an Assumed Contract), with respect to any act

or omission that occurred prior to the Closing or with respect to any Other Agreement or any

obligation of Debtors that is not an Assumed Liability.

8. **General Assignment.**  Upon the Closing, this Order shall be construed

and shall constitute for any and all purposes a full and complete general assignment, conveyance,

and transfer of the Sellers' interests in the Purchased Assets (or such Assumed Contract, if

applicable) and a bill of sale transferring good and marketable title in the Purchased Assets (or

such Assumed Contract, if applicable) to the Purchaser.  Each and every federal, state, and local

governmental agency, quasi-agency, or department is hereby directed to accept any and all

documents and instruments necessary and appropriate to consummate the Transactions.

9. **Transfer Free and Clear/Valid Transfer.**  Except for the Assumed

Liabilities or as otherwise provided by section 363(o) of the Bankruptcy Code, pursuant to

sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to

the Purchaser as required under the Ocwen APA, and such transfer shall be free and clear of all

Interests of any Person (including, without limitation, Claims or Liabilities relating to any act or

omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and

any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any

other Person prior to the Closing Date) and any and all rights and claims under any bulk transfer

statutes and similar laws, whether arising by agreement, by statute or otherwise and whether

occurring or arising before, on or after the date on which these Chapter 11 cases were

commenced, whether known or unknown, occurring or arising prior to such transfer, with all

20

such Interests to attach to the proceeds of the Sale ultimately attributable to the property against

or in which the holder of a Claim or Interest claims or may claim a Claim or Interest, in the order

of their priority, with the same validity, force, and effect which they now have, subject to any

claims and defenses the Sellers may possess with respect thereto.  The transfer of the Purchased

Assets to the Purchaser pursuant to the Ocwen APA constitutes a legal, valid, and effective

transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of

the Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature

whatsoever, including rights or claims based on any successor or transferee liability, other than

the Assumed Liabilities.

           10.    **Direction to Release Interests.**  Upon the Closing, each of the Sellers'

creditors and any other holder of an Interest, including rights or Claims based on any successor

or transferee liability, is authorized and directed to execute such documents and take all other

actions as may be necessary to release its Interest in the Purchased Assets, if any, as such Interest

may have been recorded or may otherwise exist.  If any person or entity that has filed financing

statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements

evidencing an Interest in the Sellers or the Purchased Assets shall not have delivered to the

Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of all Interests, which the person or

entity has with respect to the Sellers or the Purchased Assets or otherwise, then (i) the Sellers are

authorized and directed to execute and file such statements, instruments, releases, and other

documents on behalf of the person or entity with respect to the Sellers or the Purchased Assets,

and (ii) the Purchaser are authorized to file, register, or otherwise record a certified copy of this

Order, which shall constitute conclusive evidence of the release of all liens, claims,

encumbrances, and other interests of any kind or nature whatsoever in the Sellers or the

Purchased Assets.  Each and every federal, state, and local governmental agency or department is

hereby directed to accept any and all documents and instruments necessary and appropriate to

consummate the transactions contemplated by the Ocwen APA, including, without limitation,

recordation of this Order.  This Order shall be binding upon and shall govern the acts of all

Persons including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state, and local officials, and all other

Persons who may be required by operation of law, the duties of their office, or contract, to

accept, file, register, or otherwise record or release any documents or instruments, or who may

be required to report or insure any title or state of title in or to any of such assets or other

property interests.

11.     **No Interference**.  Following the Closing of the Sale, no holder of any

Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased

Assets based on, or related to, any such Interest, or based on any actions the Debtors may take in

their Chapter 11 cases.

12.     **Surrender of Possession.**  All entities that are currently, or on the Closing

Date may be, in possession of some or all of the Purchased Assets in which the Sellers hold an

Interest hereby are directed to surrender possession of the Purchased Assets to the Purchaser on

the Closing Date, unless the Purchaser otherwise agrees.

13.     **No Discriminatory Treatment.**  To the extent provided by section 525 of

the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

permit, license, or similar grant relating to the operation of the Purchased Assets sold,

transferred, or conveyed to the Purchaser on account of the filing or pendency of these

Chapter 11 cases or the consummation of the Transactions contemplated by the Ocwen APA.

      14.    **Severing of Multi-Agreement Documents**.  Any Servicing Agreement

memorialized in the same writing as an Other Agreement (such writing, a "Multi-Agreement

Document") is hereby severed and deemed reformed to become a separate, independently

enforceable agreement.  Any provision of a Multi-Agreement Document that would allow any

Person to terminate, recapture, impose any penalty, or modify any term or condition upon such

reformation is void and of no force and effect.  No delay or failure of performance under or in

respect of any Other Agreement will (i) affect any right of the Purchaser, or any obligation of

any other party, under any Assumed Contract (including, without limitation, any Servicing

Agreement) or (ii) permit, result in or give rise to any setoff, delay, deferral, defense,

recoupment, Claim, counterclaim, default or other impairment of the right to receive any

payment or otherwise enforce any right under any Assumed Contract (including, without

limitation, any Servicing Agreement).  Except as provided in section 8.3(v) and Schedule 4.3 of

the Ocwen APA, to the extent any Multi-Agreement Document provides that a Person's consent

is required for reformation, such consent requirement shall have no force and effect.  Nothing in

this Order or in such reformation shall affect any substantive provisions of an Other Agreement.

Any indemnity or other provision, to the extent it relates to an Other Agreement, is not part of an

Assumed Contract.

      15.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a),

363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of the

Sale, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts is

approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

16.     The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Sale Procedures Order and the Ocwen APA, the Assumed Contracts free and clear of all Interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date, other than the Assumed Liabilities, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deem may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

17.     The Assumed Contracts shall be transferred and assigned to, pursuant to the Sale Procedures Order and the Ocwen APA, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Sellers shall be relieved from any further liability, other than the Cure Amounts, with respect to the Assumed Contracts after such assumption and assignment to the Purchaser.  The Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or terminate, recapture, impose any penalty, condition renewal or extension, or modify

any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assumed Contract have been satisfied.

18.    All defaults and all other obligations or Liabilities under any Assumed Contract occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser (including, without limitation, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date) shall be deemed cured or satisfied upon payment by the Sellers of the Cure Amount, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code, or the type of default concerning an unexpired lease of real property described in section 365(b)(1) of the Bankruptcy Code whether or not such Assumed Contract is an executory contract within the meaning of section 365 of the Bankruptcy Code.  The Cure Amounts reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts, and no other amounts are or shall be due to the non-debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assumed Contracts.

19.    Except as provided in the Ocwen APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Contract other than certain Cure Amounts, and all holders of such claims arising from and after Closing under any Assumed Contract are forever barred and estopped from asserting

any claims (other than for Cure Amounts) under any Assumed Contract against the Debtors, their successors or assigns, and their estates.

20.     The Debtors, in consultation with the Creditors' Committee and the Purchaser, and the relevant non-debtor counterparty shall have authority to compromise, settle, or otherwise resolve any objections to proposed Cure Amounts without further order of the Bankruptcy Court; provided, however, the consent of the Creditors' Committee (which consent shall not be unreasonably withheld) shall be required with respect to the allowance of any Cure Amount in excess of $1 million.  If the Debtors, in consultation with the Creditors' Committee, the Purchaser and the non-debtor counterparty determine that the objection to the Cure Amount or adequate assurance of future performance cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the executory contract or unexpired lease and/or the proposed Cure Amount with respect to such contract or lease will be determined by the Court at a date mutually agreed to by the parties or as determined by the Court.

21.     The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

22.     **RMBS Trustee Cure Claims.**[6]  Any cure claims the RMBS Trusts, may have relating to the Assigned RMBS Contracts (including, without limitation, any claim arising from any argument that the Debtors did not effectively sever the Origination-Related Provisions

---

[6] Capitalized terms used in this paragraph (including its subsections) but not defined in this Order shall have the meanings ascribed to such terms in the Scheduling Order.  For purposes of this Order, "RMBS Trustees" shall include The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association and Wells Fargo Bank, N.A., solely in their respective capacities as trustees or indenture trustees for certain mortgage backed securities trusts.

as a result of the Assumption Rejection Procedure or that such provisions are not otherwise

severable in accordance with applicable law in either case solely as it relates to such cure

claim)(the "RMBS Trust Cure Claims") shall be reserved (except as released by any Accepting

Trusts), and to the extent allowed, as adequate assurance for their payment by the Debtors, the

RMBS Trust Cure Claims shall have administrative expense priority, subject to the terms and

conditions provided in the Scheduling Order.  The timing and amount of any cure claims of

HSBC, National Association[7], as Trustee, shall be subject to the terms and conditions of the

Scheduling Order.  All rights of the Debtors and other parties to object to the Cure Claims

(including, with respect to any Cure Claims asserted by the RMBS Trustees alleging origination-

related liability, that any such alleged Cure Claims are general unsecured claims by virtue of the

fact that the PSAs were appropriately severed pursuant to the Order under any and all available

legal theories, including, but not limited to, the fact that only the Servicer Debtors are assuming

and assigning the Assigned RMBS Contracts hereunder) or to argue as to the appropriate

allocation of the Cure Claims and the Sale Proceeds among the RMBS Trusts, are expressly

preserved.

> 23.    **No Successor Liability.**  Neither the Purchaser, nor any of its successors

or assigns, or any of their respective affiliates shall have any liability for any Interest that arose

or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the

Purchased Assets prior to the Closing.  The Purchaser shall not be deemed, as a result of any

action taken in connection with the Ocwen APA or any of the transactions or documents

ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased

Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de

---

[7] *See* Docket No. 1501.

facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial

continuation of the Debtors or the enterprise of the Debtors.  Without limiting the foregoing, the

Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind

or character for any Interests, including under any theory of successor or transferee liability, de

facto merger or continuity, environmental, labor and employment, and products or antitrust

liability, whether known or unknown as of the Closing, now existing or hereafter arising,

whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

24.     **Fair Consideration.**  The consideration provided by the Purchasers for

the Purchased Assets under the Ocwen APA shall be deemed to constitute reasonably equivalent

value and fair consideration under the Bankruptcy Code and under the laws of the United States,

any state, territory, possession, or the District of Columbia.  The Sales may not be avoided under

section 363(n) of the Bankruptcy Code.

25.     **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its

statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and

enforce the terms and provisions of this Order, all amendments thereto, and any waivers and

consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of

the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of

this Order; (iii) protect the Purchaser against any Interests against the Sellers or the Purchased

Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of

the Bankruptcy Code.

26.     **Good Faith.**  The Transactions contemplated by the Ocwen APA is

undertaken by the Purchaser without collusion and in good faith, as that term is used in

section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal

of the authorization provided in this Order to consummate the Transactions shall not affect the

validity of the Transactions (including the assumption and assignment of any of the Assumed

Contracts), unless such authorization is duly stayed pending such appeal.  The Purchaser is a

Purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by

section 363(m) of the Bankruptcy Code.

27.    **No Bulk Law Application.**  No law of any state or other jurisdiction,

including any bulk sales law or similar law, shall apply in any way to the transactions

contemplated by the Sale, the Ocwen APA, the Motion, and this Order.

28.    **Subsequent Plan Provisions.**  Nothing contained in any Chapter 11 plan

confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other

order in these Chapter 11 cases shall alter, conflict with, or derogate from, the provisions of the

Ocwen APA or this Order.

29.    **Failure to Specify Provisions.**  The failure to specifically include any

particular provisions of the Ocwen APA in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the Ocwen APA be

authorized and approved in their entirety.

30.    **Non-Material Modifications.**  The Ocwen APA and any related

agreements, documents, or other instruments may be modified, amended, or supplemented by the

parties thereto and in accordance with the terms thereof, without further order of the Court,

provided that any such modification, amendment, or supplement does not have any adverse

effect on the Debtors' estates, and provided further that AFI, the Creditors' Committee, the DOJ,

the Federal Reserve Board, and their respective counsel are provided 5 business days' prior

written notice of any further modification, amendment, or supplement relating to Sections 6.16A,

6.16B, and 6.16C of the Ocwen APA ("Section 6.16").[8]

31.    **Appointment of Trustee.**  The provisions of the Ocwen APA and this

Order may be specifically enforced in accordance with the Ocwen APA notwithstanding the

appointment of any chapter 7 or chapter 11 trustee after the Closing.

32.    **Consent Order and DOJ/AG Settlement Order.**  Notwithstanding

anything herein to the contrary, including, without limitation, any findings and any assertion,

agreement, pleading, or other document made or filed in connection with the Sale, the Sale

Motion, the Sale Procedures Order, the Sale Hearing, or this Sale Order, this Order shall not

modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation (the "FRB Consent Order"),

(b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia,

dated February 9, 2012 (the "Consent Judgment"), (c) the Order of Assessment of a Civil Money

Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated

February 10, 2012 (the "Order of Assessment"), (d) all related agreements with AFI and Ally

Bank and their respective subsidiaries and affiliates and (e) Section 6.16.

33.    Nothing in this Order or in the Ocwen APA releases, nullifies, precludes

or enjoins the enforcement of any liability to a governmental unit under police and regulatory

statutes or regulations (including but not limited to environmental laws or regulations), and any

---

[8] A copy of the amendment to the Ocwen APA implementing Section 6.16 is annexed as Exhibit 2.

associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity

would be subject to as the owner, lessor, lessee, or operator of property that is sold or transferred

pursuant to this Order.  Nothing contained in this Order or in the Ocwen APA shall in any way

diminish the obligation of any entity, including the Debtors or the Purchaser, to comply with

environmental laws.  Nothing in this Order or in the Ocwen APA authorizes the transfer to the

Purchaser of any governmental licenses, permits, registrations, authorizations and approvals

without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy

law governing such transfers.

34.    **Jurisdiction.**  The Court shall retain jurisdiction with respect to all matters

relating to the interpretation or implementation of this Order.

35.    **RMBS Trustee Resolution.**

A.    Nothing contained in this Order or in the Ocwen APA is intended to

relieve Purchaser from the Servicer's indemnification obligations to the RMBS Trustees under

the applicable provisions of the Servicing Agreements that provide indemnification to the RMBS

Trustees for losses, liabilities and expenses in connection with the performance of their

obligations and the exercise of their rights under the Servicing Agreements (the "Trustee

Indemnity Provisions") arising after the Closing Date, whether based on acts or omissions of the

Debtors on or before the Closing Date, based on the acts or omissions of Purchaser after the

Closing Date, or otherwise (including without limitation any obligation of the Servicer to defend

after the Closing Date any origination-related claim or counterclaim made by an individual

borrower against an RMBS Trustee and to indemnify, defend and hold harmless the related

RMBS Trustee for any costs incurred after the Closing Date in connection with any such claim).

31

The Servicing Agreements provide for the reimbursement to the Servicer from the related RMBS Trusts for any indemnification payments to an RMBS Trustee arising from a legal action.

Notwithstanding the foregoing, the Purchaser is not assuming and shall incur no liability for the legal fees and other expenses of any of the RMBS Trustees incurred in connection with the Debtors' bankruptcy cases prior to, on and after the Closing Date, unless and only to the extent that such legal fees and other expenses (i) are not paid or reimbursed by the Debtors, (ii) qualify to be paid by the Purchaser under the Trustee Indemnity Provisions and (iii) can be reimbursed to the Purchaser from the related RMBS Trust.

B.      To the extent that any amounts paid to the RMBS Trustees by the Purchaser pursuant to the Trustee Indemnity Provisions arise out of or are based on any acts or omissions of the Debtors, or other events or occurrences, which occur on or before the Closing Date and such amounts are not reimbursed to Purchaser by the applicable RMBS Trust under the applicable Servicing Agreements after seeking reimbursement therefor from the applicable RMBS Trusts[9], the Purchaser may assert such amounts against the Debtors as administrative expense claims under section 503(b) of the Bankruptcy Code and such claims shall be deemed "Allowed" following 21 days' notice to the Debtors and the Creditors' Committee, unless either such party objects to such claim within 21 days of receipt of notice (a "Purchaser Claim Objection").  If the parties are unable to resolve consensually any Purchaser Claim Objection, the parties shall promptly seek relief from the Bankruptcy Court.  For the avoidance of doubt, a Purchaser Claim Objection may not include any objection to the priority of such claim as an administrative expense claim under section 503(b) of the Bankruptcy Code or that Purchaser is unable to assert such claim against the Debtors pursuant to this Order or the Ocwen APA.

---

[9] "RMBS Trusts" has the meaning given in the Scheduling Order.

Notice of any such reimbursement claim, including all supporting documentation, must be provided to Debtors' counsel and counsel for the Creditors' Committee on or before the later of the effective date of any Chapter 11 plan or the administrative expense bar date established in the Chapter 11 Cases, provided that any such notice shall be provided within 60 days of the occurrence of the related reimbursement claim and shall be provided without prejudice to Purchaser's right to seek an estimation of the unliquidated amount of any such claim. In addition to the administrative expense claim provided for herein, the Purchaser shall have the right, at its option, to satisfy such Allowed claims with cash deposited in the Indemnity Escrow Account.

C.    Notwithstanding § 365(k) of the Bankruptcy Code or anything to the contrary contained in this Order, and subject to the terms and conditions of the Scheduling Order, (i) the Debtors shall not be relieved of any liability for, and the RMBS Trusts may assert claims against the Debtors but not the Purchaser for, any losses or liability suffered prior to the Closing Date, or which may be suffered after the Closing Date, by the RMBS Trusts as a result of any acts or omissions of the Debtors before the Closing Date (any such losses or liability, the "Servicing Damage Claims") and (ii) the Debtors shall remain obligated to pay the RMBS Trustees' expenses, in each case as administrative expense claims under section 503(b) of the Bankruptcy Code, subject to the terms of the *Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental Servicing

33

Order"). Such Servicing Damage Claims shall be asserted by the RMBS Trustees within the time period for the assertion of Cure Claims as provided by the Scheduling Order.

D.      The Debtors shall be deemed to have reserved (i) any objection to the reasonableness of the RMBS Trustees' expenses (which, if made, shall be resolved by the Court) and (ii) all defenses to any Servicing Damage Claims, and any dispute regarding the amount of the Servicing Damage Claims shall be a contested matter to be determined by the Court after such discovery as is permitted by the Bankruptcy Rules and at such hearing or hearings as scheduled by the Court after the Closing Date. For the avoidance of doubt, upon the allowance or disallowance, as applicable, of any such Servicing Damage Claims, the Debtors shall be relieved of any further liability with respect to such claims pursuant to section 365(k) of the Bankruptcy Code.

36.      **Resolution of Certain Master Servicer Objections.** Notwithstanding § 365(k) of the Bankruptcy Code or anything to the contrary contained in this Order, and subject to the terms and conditions of the Scheduling Order, (i) the Debtors shall not be relieved of any liability for, and The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., U.S. Bank National Association, CitiMortgage, Inc.[10], and Wells Fargo Bank, N.A., solely in their respective capacities as master servicers (the "Master Servicers") for certain mortgage backed securities trusts (collectively, the "Master Serviced Trusts") may assert claims against the Debtors but not the Purchaser for, (i) any losses or liability suffered prior to the Closing Date, or which may be suffered after the Closing Date, by the Master Serviced Trusts as a result of any acts or omissions of the Debtors before the Closing Date (any such losses or liability, the "Servicing Loss Claims") and (ii) except for the case of CitiMortgage, Inc., the

---

[10] *See* Docket Nos. 1646, 1841, 1992, and 2210.

Debtors shall be obligated to pay the Master Servicers' expenses, in each case as administrative

expense claims under section 503(b) of the Bankruptcy Code, subject to the terms of the

Supplemental Servicing Order.  Such Servicing Loss Claims shall be asserted by the Master

Servicers' within the time period for the assertion of Cure Claims as provided by the Scheduling

Order.  The Debtors shall be deemed to have reserved (i) any objection to the reasonableness of

the Master Servicers' expenses (which, if made, shall be resolved by the Court) and (ii) all

defenses to any Servicing Loss Claims, and any dispute regarding the amount of the Servicing

Loss Claims shall be a contested matter to be determined by the Court after such discovery as is

permitted by the Bankruptcy Rules and at such hearing or hearings as scheduled by the Court

after the Closing Date.  For the avoidance of doubt, upon the allowance or disallowance, as

applicable, of any such Servicing Loss Claims, the Debtors shall be relieved of any further

liability with respect to such claims pursuant to section 365(k) of the Bankruptcy Code.

37.    **Resolution of Objection of Custodians.** Wells Fargo Bank, N.A.,

Deutsche Bank Trust Company Americas, and The Bank of New York Mellon Trust Company,

N.A. act as custodian for the purpose of receiving, holding and safeguarding certain documents

and other instruments relating to residential mortgage loans delivered by certain Debtors

pursuant to the terms of certain custodial agreements (each a "Custodial Agreement" and

collectively the "Custodial Agreements").  With respect to any such Custodial Agreement

assumed by a Debtor and assigned to Purchaser, notwithstanding § 365(k) of the Bankruptcy

Code or anything to the contrary contained in this Order, and subject to the terms and conditions

of the Scheduling Order, (i) the Debtors shall not be relieved of any liability for, and the

Custodians may assert, claims against the Debtors but not the Purchaser for, (i) any losses or

liability suffered prior to the Closing Date, or which may be suffered after the Closing Date, by

the Custodians as a result of any acts or omissions of the Debtors before the Closing Date (any

such losses or liability, the "Custodian Loss Claims") and (ii) the Debtors shall be obligated to

pay the Custodians' expenses, in each case as administrative expense claims under section

503(b) of the Bankruptcy Code, subject to the terms of the Supplemental Servicing Order.  Such

Custodian Loss Claims shall be asserted by the Custodians' within the time period for the

assertion of Cure Claims as provided by the Scheduling Order.  The Debtors shall be deemed to

have reserved (i) any objection to the reasonableness of the Custodians' expenses (which, if

made, shall be resolved by the Court) and (ii) all defenses to any Custodian Loss Claims, and any

dispute regarding the amount of the Custodian Loss Claims shall be a contested matter to be

determined by the Court after such discovery as is permitted by the Bankruptcy Rules and at

such hearing or hearings as scheduled by the Court after the Closing Date.  For the avoidance of

doubt, upon the allowance or disallowance, as applicable, of any such Custodian Loss Claims,

the Debtors shall be relieved of any further liability with respect to such claims pursuant to

section 365(k) of the Bankruptcy Code.

        38.    **Ocwen/Walter.**  The Ocwen APA contemplates the assignment of the

rights and obligations under the Ocwen APA with respect to the Walter Assets by Ocwen to a

Walter Entity (each as defined therein).  Any reference to Purchaser in this Order shall include

the Walter Entity assignee with respect to the Walter Assets and such Walter Entity may seek

enforcement of this Order with respect to the Walter Assets directly.  The Debtors shall consult

with the Creditors' Committee on any agreement or other document to be executed by a Walter

Entity assignee and the Debtors to effect such assignment of rights and obligations under the

Ocwen APA.

36

39. **Application of Net Proceeds and Repayment of Obligations to Citibank.** Consistent with the terms of the *Final Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay* [Docket No. 471] (the "Citibank Cash Collateral Order"),[11] it is a condition to the sale of the MSR Collateral authorized herein that, provided that the Agency Interests are satisfied through the Sale, the Debtors are authorized and directed to apply the net proceeds of the Sale attributable to the Prepetition MSR Collateral to repay the Obligations under the Prepetition MSR Credit Documents.

40. **Application of Net Proceeds and Repayment of Obligations Under the Barclays DIP Facility.** Consistent with the terms of the *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting Related Relief* [Docket No. 490] (the "Barclays DIP Order"),[12] at Closing the Debtors are authorized and directed to pay to the Administrative Agent an amount in cash equal to the outstanding DIP Obligations for application by the Administrative Agent in accordance with section 2.14 of the DIP Credit Agreement.  All payments to the Administrative Agent and the DIP Lenders shall be final and indefeasible.  The Debtors' compliance with this paragraph is a condition to the sale of the Collateral authorized by this

---

[11] Except for the term "Sale", all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Citibank Cash Collateral Order.

[12]    Except for the terms the "Sale", "Closing" and "Order" all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Barclays DIP Order.

Order and the liens of the Administrative Agent, the Collateral Agent and the DIP Lenders on the

Collateral shall attach to the proceeds of the sales contemplated by this Order until the payments

required by this paragraph and by the DIP Credit Agreement are made.

41.    **Application of Net Proceeds and Repayment of Obligations Under the**

**Ally DIP Facility.**  Consistent with the terms of the *Final Order Under Sections 105, 361, 362,*

*363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I)*

*Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II)*

*Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate*

*Protection Parties* [Docket No. 491] (the "Ally DIP and Cash Collateral Order"),[13] the Debtors

are authorized and directed to apply the net proceeds of the Sale attributable to the collateral

securing the AFI DIP Loan to repay the AFI DIP Obligations under the AFI LOC Amendment.

All payments to the AFI DIP Lender shall be final and indefeasible.  The liens of the AFI DIP

Lender on the AFI DIP Loan Collateral shall attach to the proceeds of the Sale contemplated by

this Order until the payments required by this paragraph and by the AFI LOC Amendment are

made.

42.    **Application of Net Proceeds and Repayment of Obligations Under the**

**Fannie Mae EAF Facility.**  Consistent with the terms of the *Final Order Under Sections 105(a),*

*361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To*

*Continue In The Ordinary Course Of Business (A) Servicing Governmental Association Loans*

*And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie*

*Mac, And Ginnie Mae; (II) Authorizing The Debtors To Pay Certain Prepetition Amounts Due*

*To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting Limited Stay Relief*

---

[13]    Except for the terms "Sale" and "Order", all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Ally DIP and Cash Collateral Order.

*To Enable Borrowers To Assert Direct Claims And Related Counter-Claims In Foreclosure And Eviction Proceedings; (IV) Authorizing The Debtors To Use Cash Collateral Under The Fannie Mae EAF Facility; And (V) Granting Related Relief* [Docket No. 401] (the "<u>GA Servicing Order</u>"),[14] it is a condition to the sale of the Advances authorized herein that, provided the EAF Facility is satisfied through the Sale, the Debtors are authorized and directed to apply the net proceeds of the Sale attributable to the Collections and Collection Accounts to pay to Fannie Mae all amounts outstanding under the EAF Facility **Purchase Price Allocation Reservation of Rights**.  Notwithstanding any other provision of this Order, nothing in this order or the Ocwen APA, including any segregation of cash proceeds in accordance with paragraph 44, shall be deemed to be a determination that any purchase price or cash allocations, including those contained in Article III of the Ocwen APA are binding in any way on creditors of the various Debtors, or the Debtors' estates, with respect to the allocation of the proceeds of the Sale either between and among the various Debtor estates or between and among the various classes of assets sold; provided that any subsequent allocation of the proceeds for claim purposes shall have no effect on the Purchaser, in its capacity as Purchaser. All rights of all parties are reserved with respect to the allocation or distribution of the proceeds of the Sale.  For the avoidance of doubt, any administrative claims asserted by Purchaser pursuant to the Order or the Ocwen APA shall be attributed by the Debtors first to the applicable Debtor to the extent there are funds available at such Debtor to satisfy such claims.  Any attribution as set forth herein shall not affect the Purchasers' rights to an administrative claim against the other Debtors as set forth herein to the extent not paid by the applicable Debtor.

---

[14] Except for the term "Sale", all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the GA Servicing Order.

43.    **Segregation of Cash.**  The Debtors will segregate cash generated from the Sale in accordance with the *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre-And Post-Petition Lenders Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash Management Order"), including segregating cash generated from the Sale of collateral securing any of the Debtors' financing facilities into the specific bank accounts established for the benefit of the lenders under such financing facilities.

44.    Notwithstanding anything in this Order to the contrary, nothing in this Order shall affect or alter the provisions of any order of the Court previously entered in these chapter 11 cases, including the Cash Management Order, the Ally DIP and Cash Collateral Order and the *Stipulation and Order Reserving Rights with Respect to Debtors' Motion for Interim and Final Orders under Bankruptcy Code Section 105(a) and 363 Authorizing the Debtors to Continue to Perform under the Ally Bank Servicing Agreement in the Ordinary Course of Business* [Docket No. 1420].

45.    Notwithstanding anything in this Order to the contrary, nothing in this Order shall authorize or effectuate the transfer to the Purchaser of any assets owned by Ally Financial Inc. or any of its non-Debtor subsidiaries and affiliates.

40

46.    **Fannie Mae.**  Notwithstanding anything herein to the contrary, including, without limitation, any findings, and any assertion, agreement, pleading or other document filed in connection with the Sale, the Sale Motion, the Sale hearing and this Sale Order, (i) the Mortgage Servicing relating to the Agency Loans of Fannie Mae shall not be transferred by the Debtors to Purchaser or otherwise without the express prior written consent of Fannie Mae in its sole and absolute discretion; (ii) the assumption and assignment of any agreements between any of the Debtors and Fannie Mae, including, without limitation, the Mortgage Selling and Servicing Contract dated as of August 9, 2006 (as supplemented, amended or otherwise modified from time to time, the "MSSC") shall be subject to the express prior written consent of Fannie Mae in its sole and absolute discretion; (iii) any proposed severance of rights and obligations or any other proposed modification of any agreement, including, without limitation, the MSSC, between any of the Debtors and Fannie Mae shall be subject to the prior written consent of Fannie Mae in its sole and absolute discretion; and (iv) nothing in this Sale Order shall apply to any agreements among the Debtors and Fannie Mae unless, and to the extent, consented to in writing by Fannie Mae after Fannie Mae has obtained approval from the FHFA, its conservator. The Debtors and Fannie Mae shall enter into good faith negotiations and use commercially reasonable efforts to resolve the claims of Fannie Mae and the assumption and assignment of any agreements of the Debtors and Fannie Mae.  Nothing contained in this paragraph shall modify or affect Purchaser's rights with respect to the Debtors under the Ocwen APA, including, but not limited to, conditions to Purchaser's obligations to close including the condition precedent to closing that Purchaser receive the consent of Fannie Mae as described in the Ocwen APA.

47.    **Freddie Mac.**  Notwithstanding anything herein to the contrary, including, without limitation, any findings and any assertion,  agreement, pleading, or other document made

41

or filed in connection with the Sale, the Sale Motion, the Sale Hearing or this Sale Order, (i) the

Mortgage Servicing relating to the Agency Loans of Freddie Mac shall not be transferred

by the Debtors to the Purchaser (or any other party) without the express prior written consent of

Freddie Mac in its sole and absolute discretion; (ii) the Debtors shall not assume or assign any

agreements between any of the Debtors and Freddie Mac, including, without limitation, the

Master Agreement dated as of July 22, 2011 (as supplemented, amended, or otherwise modified

from time to time, the "Master Agreement"), without the express prior written consent of Freddie

Mac in its sole and absolute discretion; (iii) any proposed severance of rights and obligations or

any other proposed modification of any agreement between the Debtors and Freddie Mac,

including, without limitation, the Master Agreement, shall be subject to the express prior written

consent of Freddie Mac in its sole and absolute discretion; and (iv) nothing in this Sale Order

shall apply to any agreements among the Debtors and Freddie Mac unless, and to the extent,

consented to in writing by Freddie Mac after Freddie Mac has obtained approval from the FHFA,

its conservator.  The Debtors and Freddie Mac shall enter into good faith negotiations and use

commercially reasonable efforts to resolve the claims of Freddie Mac and the assumption and

assignment of any agreements between the Debtors and Freddie Mac.  Nothing contained in this

paragraph shall modify or affect Purchaser's rights with respect to the Debtors under the Ocwen

APA, including, but not limited to, conditions to Purchaser's obligations to close including the

condition precedent to closing that Purchaser receive the consent of Freddie Mac as described in

the Ocwen APA.

48.    **Ginnie Mae**.  Notwithstanding anything herein to the contrary, including,

without limitation, any findings, and any assertion, agreement, pleading or other document filed

in connection with the Sale, the Sale Motion, the Sale hearing, the Sale Procedures Order, and

this Sale Order, (i) the Mortgage Servicing relating to the Agency Loans of Ginnie Mae shall not

be transferred by the Debtors to Purchaser or otherwise without the express prior written consent

of Ginnie Mae in its sole and absolute discretion; (ii) the assumption and assignment of any

agreements between any of the Debtors and Ginnie Mae shall be subject to the express prior

written consent of Ginnie Mae in its sole and absolute discretion; (iii) any proposed modification

of any agreement between any of the Debtors and Ginnie Mae shall be subject to the prior

written consent of Ginnie Mae in its sole and absolute discretion; and (iv) nothing in this Sale

Order shall apply to any agreements among the Debtors and Ginnie Mae unless, and to the

extent, consented to by Ginnie Mae.  The Debtors and Ginnie Mae shall enter into good faith

negotiations and use commercially reasonable efforts to resolve the claims of Ginnie Mae and

the assumption and assignment of any agreements of the Debtors and Ginnie Mae. Nothing

contained in this paragraph shall modify or affect Purchaser's rights with respect to the Debtors

under the Ocwen APA, including, but not limited to, conditions to Purchaser's obligations to

close including the condition precedent to closing that Purchaser receive the consent of Ginnie

Mae as described in the Ocwen APA.

49.    **USAA**.  Notwithstanding anything to the contrary, including, without

limitation, any assertion, finding, agreement, pleading, or other document made or filed in

connection with the Sale, the Sale Motion, the Sale Hearing or this Sale Order, the Debtors shall

not transfer to the Purchaser (or any other party) the MSRs subject to the Mortgage Purchasing

and Servicing Agreement dated January 18, 2000 between GMAC Mortgage LLC and USAA

Federal Savings Bank ("USAA") (as supplemented, amended or otherwise modified from time to

time, the "USAA Agreement"), nor assume or assign the USAA Agreement or any other

agreement between any of the Debtors and USAA without the written consent of the USAA. The

43

Debtors and USAA shall enter into good faith negotiations and use commercially reasonable

efforts to resolve any issues relating to the assumption and assignment of any agreements

between the Debtors and USAA.

50.    **HAMP Contracts**.  Notwithstanding anything herein to the contrary,

including, without limitation, any findings, and any assertion, agreement, pleading or other

document filed in connection with the Sale, the Sale Motion, the Sale hearing and this Sale

Order, Purchaser agrees with respect to that certain Amended and Restated Commitment to

Purchase Financial Instrument and Servicer Participation Agreement (the "HAMP Contract")

between GMAC Mortgage, LLC and Federal National Mortgage Association, as financial agent

of the United States (the "Government"), which is being assumed by Purchaser, that the

Government shall be entitled to continue to offset in the ordinary course any financial incentive

overpayments attributable to pre-assumption servicer errors that may not be identified until post-

assumption (the "Overpayments") against future incentive payments owed to the Purchaser

under the HAMP Contract, and the Purchaser's assumption of the HAMP Contract is without

prejudice to any rights that the Government may have under any other contract with the

Purchaser; provided, however, that Purchaser may assert such Overpayments against the Debtors

as administrative expense claims under section 503(b) of the Bankruptcy Code and such claims

shall be deemed allowed following 21 days' notice to the Debtors and the Creditors' Committee,

unless either such party objects to such claim within 21 days of receipt of notice, or upon further

order of the Bankruptcy Court.  If the parties are unable to resolve consensually any Purchaser

Claim Objection, the parties shall promptly seek relief from the Bankruptcy Court. Objections to

the Overpayments may not include any objection to the priority of such claim as an

administrative expense claim under section 503(b) of the Bankruptcy Code or that Purchaser is

unable to assert such claim against the Debtors pursuant to this Order or Ocwen APA.  Notice of

any such reimbursement claim, including all supporting documentation relating to any

Overpayments, must be provided to Debtors' counsel and counsel for the Creditors' Committee.

51.    **Digital Lewisville Lease**.  The Sale Motion as it pertains to the proposed

assumption and assignment of Digital Lewisville, LLC's ("Digital Lewisville") lease, including

with respect to the proposed sale of such lease free and clear of Liens, Claims, Encumbrances,

and other Interests, is continued and is not approved at this time.  All of Digital Lewisville's

objections and defenses to the proposed assumption and assignment of its lease including to the

sale free and clear including as set forth in Digital Lewisville's: (1) *Limited Objection to*

*Debtors' Motion for Orders: (A)(I) Authorizing and Approving Sale Procedures, Including*

*Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing;*

*(III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and*

*(B)(I) and Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims,*

*Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements*

*Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 278];

(2) *Objection to: (I) Debtors' Motion for Orders: (A)(I) Authorizing and Approving Sale*

*Procedures, Including Break-up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline*

*and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting*

*Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims,*

*Encumbrances, and Other interests; (II) Authorizing and Approving Asset Purchase Agreements*

*Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and*

*Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 61]; and (II)

*Notice of (I) Debtor's Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Docket No. 924] ("Docket No. 1649"); and (3) *Digital Lewisville LLC's Supplemental Limited Objection to Debtors' Sale Motion, in Particular, Debtors' Proposed Order* ("Docket No. 1990") (collectively, the "DL Objections") are expressly reserved.   The hearing on the Sale Motion with respect to the Digital Lewisville lease, shall be adjourned to January 10, 2013, at 2:00 p.m.  Nothing contained in this Order shall, in any way, resolve the DL Objections, or modify any of Digital Lewisville's legal, contractual, and or equitable objections, rights, or defenses relating to either the proposed sale free and clear or assumption and assignment of Digital Lewisville's lease, or any obligations thereunder, determination of which is expressly reserved.  In addition, nothing in this Order shall affect Digital Lewisville's rights under its lease, if any, with respect to any AFI Transition Services Agreement or the Digital Lewisville leasehold premises.  To facilitate the scheduling of the hearing on the DL Objections, based on Digital Lewisville's consent, the deadline under section 365(d)(4) to either assume, assume and assign, or reject Digital Lewisville's lease is hereby extended to January 24, 2013.

52.    **Tax Liens.**  For the avoidance of doubt, to the extent any of the Purchased Assets include any asset on which any taxing authority has a valid lien (a "Tax Lien"), any Tax Lien shall attach to the proceeds of the sale of such asset with the same validity and priority as such Tax Lien had in the Purchased Assets immediately prior to the Sale.

53.    **Preservation of Estate Claims**.  Notwithstanding anything to contrary herein or in the Ocwen APA, none of the following shall be transferred to the Purchaser: (i)  any and all claims or causes of action against AFI and its Affiliates pursuant to chapter 5 of the

Bankruptcy Code, (ii) any and all  claims against AFI and its Affiliates  sounding in alter ego,

veil piercing, contribution, domination and control, substantive consolidation, agency,

recharacterization, equitable subordination, breach of fiduciary duty, and aiding and abetting

breach of fiduciary duty, and (iii) any and all (a) preference claims in connection with and

(b) claims to the amounts escrowed pursuant to  the *Stipulation and Order Reserving Rights with*

*Respect to Debtors' Motion for Interim and Final Orders Under Bankruptcy Code section 105(a)*

*and 363 authorizing the Debtors to Continue to Perform Under the Ally Bank Servicing*

*Agreement in the Ordinary Course of Business* [Docket No. 1420].  The transfer pursuant to the

Ocwen APA of any other claims relating to the subservicing agreement shall be deferred to any

subsequent hearing concerning Ocwen's assumption of the Ally Bank subservicing agreement.

54.    All issues regarding the assumption and assignment of the Ally Bank

subservicing agreement are deferred to a later hearing with a full reservation of rights for all

parties, and nothing in this Order shall prejudice the parties at such future hearing.

55.    **Preservation of Contribution Claims.**  Notwithstanding anything herein

or in the Ocwen APA (including Section 6.16) to the contrary and consistent with previous

orders of the Court, the Ocwen APA and the Order shall not waive or foreclose and is without

prejudice to (i) any and all claims, causes of action and defenses that may be asserted by the

Debtors or any party-in-interest (including the Creditors' Committee) for any and all past or

future costs of compliance with the FRB Consent Order, the Consent Judgment, DOJ/AG

Settlement, the Order of Assessment, and Section 6.16 ("Compliance Claims") against any and

all parties other than the Purchaser, including, without limitation, claims for contribution and/or

indemnification arising directly or indirectly, by contract or under common law, through

subrogation or otherwise, (ii) all rights of AFI to object to any Compliance Claim on any and all

bases and bring counterclaims against the Debtors for Compliance Claims, including asserting claims (x) that the costs of compliance in connection with the Compliance Claims are administrative expenses of the Debtors' estates pursuant to 11 U.S.C. § 503(b) and (y) that AFI is relying on the Debtors' costs of compliance in its decision to support operationally and financially the Debtors' efforts to sell the assets of the Debtors' estates on a going concern basis and maximize the value of the estates, and (iii) all rights of the Debtors or any party-in-interest (including the Creditors' Committee) to respond to any objections and contest any and all counterclaims asserted by AFI, provided, however, that in each case such claims shall not be resolved, waived or discharged by the Debtors without the consent of the Creditors' Committee or further order of the Court.  For avoidance of doubt, nothing in this paragraph shall affect or modify any right or obligation of the Purchaser as set forth in section 6.16 of the Ocwen APA.

56.    **Document Preservation.**    The Debtors shall take all appropriate steps to preserve, protect, maintain, and ensure the availability of all of the Debtors' books, records, documents and electronically stored information, in whatever format, including native format that are potentially relevant to the claims asserted by the Plaintiffs (collectively the "Relevant Books and Records") in the following actions (the "Actions"):

- *New Jersey Carpenters Health Fund, et als., on Behalf of Themselves and All Others Similarly Situated v. Residential Capital, LLC, et als.*, No. 08-CV-8781 (HB) (S.D.N.Y. 2008)

- *Union Cent. Life Ins. Co. et al. v. Credit Suisse First Boston Mortg. Sec. Corp. et al.*, No. 11-CV-2890 (GBD) (S.D.N.Y. 2011)

- *Donna Moore, Frenchola Holden and Keith McMillon, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, GMAC Bank and CapRe of Vermont, Inc.*, No. 07-CV-04296-PD (E.D. Pa. 2007)

- *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co., Inc., et al.,* Nos. 10-2741-BLS1, 11-0555-BLS1 (Mass. Sup. Ct. 2010, 2011).

57.     The Debtors (i) shall retain the originals or true copies of the Relevant Books and Records included in the Sale (the "Retained Relevant Books and Records") and, as to any of the Actions that have not been fully and finally resolved by a final, non-appealable judgment (ii) shall provide at least thirty (30) days' written notice to lead and bankruptcy counsel for the Plaintiffs in each of the Actions with an opportunity to be heard of any abandonment, destruction, or transfer of the Retained Relevant Books and Records that may render the Relevant Books and Records unavailable to the Plaintiffs.  In the event Plaintiffs file an objection to the abandonment, destruction, or transfer described above within such thirty (30) day period after receiving written notice, the Debtors shall not abandon, destroy, or transfer the Retained Relevant Books and Records absent a final and non-appealable order of this Court or any court of competent jurisdiction if the Debtors' bankruptcy cases are closed.  Purchaser shall not have any obligation to preserve, protect, maintain, or ensure the availability of any Relevant Books and Records.

58.     **SBO Servicer Agreements.**  With respect to the relevant SBO Servicing Agreements subject of the objections filed by Branch Banking and Trust [Docket No. 2205], OceanFirst Bank and Columbia Home Loans, LLC [Docket No. 2206], PNC Mortgage, a Division of PNC Bank, NA [Docket Nos. 1635 and 1981], Wells Fargo Bank, N.A. [Docket No. 2209], and CitiMortgage, Inc. [Docket No. 2210], for the avoidance of doubt, notwithstanding anything to the contrary contained in this Order or the Ocwen APA, upon the assignment of the SBO Servicing Agreements to Purchaser, Purchaser shall perform all of the obligations under the SBO Servicing Agreements (but not perform any obligations or have any liabilities arising under

the Other Agreements), from and after the Closing Date including any obligation in accordance with the terms of such SBO Servicing Agreements  to reimburse such third-party servicer or subservicer (the "SBO Servicer") for Advances made under such SBO Servicing Agreement prior to the Closing Date but that are unmatured reimbursement obligations which do not become due and payable under the terms of such agreements until post-closing; provided, however, that Purchaser shall not incur any liability, including with respect to reimbursement of Advances, that arises out of or relates to any  act or omission of the Debtors (whether as originator, servicer, or otherwise) that occurred before the Closing Date.

59.    **Oracle**.  Notwithstanding anything to the contrary contained in the APA or this Order, this Order does not approve the sale, assumption, assignment or transfer of the software (the "Oracle Software") of Oracle America Inc. (including any of its predecessors-in-interest) ("Oracle"), or any rights to use the Oracle Software, to the Purchaser and the Purchaser shall not receive any rights to use or access the Oracle Software from and after the Closing Date as a result of entry of this Order.  Any agreements between the Debtors and Oracle shall be removed from the final schedule of agreements to be assumed and assigned. The Debtors shall (i) expunge all copies of the Oracle Software and any portions thereof from all computers and storage media and devices on which the Oracle Software is located (with no copies retained by the Debtors) prior to the transfer of any such assets to the Purchaser, (ii) return the Oracle Software, including all related documentation, manuals and copies, to Oracle to the extent required by the existing agreement between Oracle and the licensee and (iii) certify to Oracle in writing that they have complied with these obligations within sixty (60) days of the Closing Date.

60.    **Infor.**  Notwithstanding anything to the contrary contained in the Ocwen APA or this Order, this Order does not approve the sale or transfer of the software (the "Infor Software") of Infor Global Solutions (Michigan), Inc. ("Infor"), or any rights to use the Infor Software, to the Purchaser and the Purchaser shall not receive any rights to use or access the Infor Software from and after the Closing Date as a result of entry of this Order as the Debtors are not party to the license agreement.  Unless the Purchaser and Infor enter into a license for the Purchaser's use of the Infor Software, the Purchaser shall not use or access the Infor Software and the Debtors shall (i) expunge all copies of the Infor Software and any portions thereof from all computers and storage media and devices on which the Infor Software is located (with no copies retained by the Debtors) prior to the transfer of any such assets to the Purchaser, (ii) return the Infor Software, including all related documentation, manuals and copies, to Infor to the extent required by the existing agreement between Infor and the licensee and (iii) certify to Infor in writing that they have complied with these obligations within sixty (60) days of the Closing Date (the "60 Day Period").   During the 60 Day Period and absent any further agreement between the Debtors and Infor, the Debtors may only access the Infor Software to retrieve archived data and may not process any data.

61.    **Syncora and Ambac Reservation of Rights.** No findings of fact or conclusions of law contained in this Order or rulings at the Sale Hearing shall be binding on, prejudice the arguments of, prejudice the ability to make arguments of, be considered law of the case with respect to, or otherwise estop Syncora Guarantee Inc. or Ambac Assurance Corp. at any future hearing or proceedings.

Dated:          New York, New York
                November 21, 2012


                                        **_/s/Martin Glenn_**
                                        MARTIN GLENN
                                 United States Bankruptcy Judge

## EXHIBIT 1

**Ocwen APA**

## EXHIBIT 2

### Section 6.16 Amendment to Ocwen APA