**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### ORDER UNDER 11 U.S.C. §§ 105, 363, AND 365 AND
### FED. R. BANKR. P. 2002, 6004,  6006, AND 9014 (I) APPROVING (A) SALE OF
### DEBTORS' ASSETS PURSUANT TO ASSET PURCHASE AGREEMENT WITH
### BERKSHIRE HATHAWAY INC.; (B) SALE OF PURCHASED ASSETS FREE AND
### CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS;
### AND (C) RELATED AGREEMENTS; AND (II) GRANTING RELATED RELIEF

Upon the motion, dated May 14, 2012 (the "Motion"), of Residential Capital, LLC

("ResCap") and certain of its affiliates, as debtors in possession in the above-captioned

Chapter 11 cases (collectively, the "Debtors"),[1] for entry of an order, under Bankruptcy

Code sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014

authorizing and approving (i) that certain Asset Purchase Agreement, dated as of May 13,

2012 (the "AFI APA")[2], entered into by and among Ally Financial Inc. ("AFI"), BMMZ

Holdings LLC ("BMMZ"), ResCap, Residential Funding Company, LLC ("RFC"), and

GMAC Mortgage, LLC ("GMAC Mortgage"); (ii) the sale and all related transactions,

in accordance with the AFI APA of all of the Debtors' right, title, and interest in, to and

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the BH Legacy APA (as defined herein). Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

[2] At the June 18 and 19, 2012 hearings on the Motion, the Bankruptcy Court did not approve the AFI APA and instead approved Berkshire Hathaway Inc. as the stalking-horse bidder for the Purchased Assets.

under the Purchased Assets to BMMZ; and (iii) granting related relief; and upon the

Whitlinger Affidavit, pursuant to Local Bankruptcy Rule 1007-2; the Greene Declaration;

the Declaration of R. Ted Weschler in Support of the Objection of Berkshire Hathaway

Inc. to Debtors' Motion; the Puntus Declaration; and the Anti-Collusion Declaration in

Accordance with Sale Procedures Order Dated June 28, 2012 [Docket No. 538]; it

appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C.

§§ 157 and 1334; and the Court having entered an order, dated June 28, 2012 (the

"Sale Procedures Order"), (i) authorizing and approving that certain asset purchase

agreement, dated June 21, 2012, a copy of which was filed on June 28, 2012, by and

among Berkshire Hathaway Inc. ("BH"), on the one hand, and ResCap, RFC, and

GMAC Mortgage, on the other (including all schedules, exhibits, and attachments

thereto, including the Ancillary Agreements (as such term is defined therein) to be

entered into by and among the parties as contemplated therein, in each case as amended

or modified, collectively, the "BH Legacy APA"), which is attached hereto as Exhibit 1,

and providing for the sale and all related transactions, in accordance with the BH

Legacy APA and this Order (the "Sale"), of all of the Debtors' right, title, and interest

in, to and under the Purchased Assets to the Purchaser free and clear of all Claims,

Liens, encumbrances, or other interests (including, any and all "claims" as defined in

section 101(5) of the Bankruptcy Code and any rights or claims based on any

successor or transferee liability) other than the Permitted Liens (collectively, all such

Claims, Liens, encumbrances and other interests other than the Permitted Liens,

"Interests"), with such Interests transferring and attaching to the proceeds of the Sale

with the same validity and priority as such Interests had in the Purchased Assets

immediately prior to the Sale; and (ii) authorizing and approving the Sale Procedures

notice of the Sale and the hearing to consider approval of the Sale (the "Sale

Hearing")[3]; an Auction having been held in accordance with the Sale Procedures Order;

and at the conclusion of the Auction, BH was chosen as the Successful Bidder (as

defined in the Sale Procedures Order) in accordance with the Sales Procedures

Order; and the Sale Hearing having been held on November 19, 2012 to consider the

relief requested in the Motion; and upon the record of the Sale Hearing, and all of the

proceedings before the Court; and the Court having reviewed the Motion and any

objections thereto (the "Objections"); and all parties in interest having been afforded

an opportunity to be heard with respect to the Motion and all of the relief related

thereto; and it appearing that the relief requested by the Motion with respect to the

Sale as amended and modified as provided in this Order is in the best interests of

the Debtors' estates, their creditors, and other parties in interest; and after due

deliberation thereon; and sufficient cause appearing therefore, it is

**FOUND AND DETERMINED THAT:**[4]

**A.     Jurisdiction and Venue.**  This Court has jurisdiction over the Motion

and the Sale pursuant to 28 U. S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U. S.C. § 157(b)(2)(A) and (N). Venue of these cases and the

Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3] For the purposes of this Order, the term "Sale Hearing" shall be any hearing at which the approval of the Sale is considered.

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**     **Statutory Predicates.**  The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 9007 and 9014. The consummation of the Sale contemplated by the BH Legacy APA and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code and Bankruptcy Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of the Sale.

**C.**     **Notice.**  As evidenced by the affidavits and certificates of service and Publication Notice previously filed with the Court and based on the representations of counsel at the Sale Procedures Hearing and the Sale Hearing, proper, timely, adequate, and sufficient notice of the Motion, the Sale Procedures, the Sale, the Auction, and the Sale Hearing have been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002(a), 6004(a), 9007 and 9014 and in compliance with the Sale Procedures Order to all interested persons and entities, including: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the attorneys for the U.S. Treasury, (iii) the attorneys for ResCap's prepetition secured credit facilities, (iv) the attorneys for the agent under the Debtors' prepetition amended and restated secured revolving credit agreement, (v) the attorneys for the agent under the Debtors' post-petition debtor in possession financing facility, (vi) the attorneys for the statutory committee of unsecured creditors appointed in the Debtors' Chapter 11 cases (the "Creditors' Committee"), (vii) the attorneys for the ad hoc bondholders' committee, (viii) the attorneys for the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association, (ix)

4

any party who, in the past year, expressed in writing to the Debtors an interest in the

Purchased Assets and who the Debtors and their representatives reasonably and in good

faith determine potentially have the financial wherewithal to effectuate the transaction

contemplated in the APA, (x) all trustees (including indenture and securitization

trustees), certificate holders, investors, rating agencies, mortgage insurers and any

parties to any pooling and servicing agreements, assignment, assumption and

recognition agreements, SBO Servicing Agreements, subservicing agreements or similar

agreements (all such parties in this clause (x), the "Interested Contract Parties"); (xi) all

parties who are known to have asserted or believed by Debtors to hold any Interest in or

on the Purchased Assets, (xii) the Securities and Exchange Commission, (xiii) the

Internal Revenue Service, (xiv) all applicable state attorneys' general, and local

authorities, (xv) all applicable state and local taxing authorities, (xvi) the Federal Trade

Commission, (xvii) the United States Department of Justice, (xviii) the United States

Attorney's Office, (xix) the office of the New York Attorney General; (xx) all entities

that requested notice in these Chapter 11 cases under Bankruptcy Rule 2002; and (xxi) all

Persons required to be provided with notice pursuant to the BH Legacy APA (collectively,

the "Notice Parties"). The Debtors published the Notice of Auction and Sale Hearing in

the national editions of *The Wall Street Journal* and *The New York Times*.  The notice

described in this Paragraph C is good, sufficient and appropriate under the

circumstances, and no other or further notice of the Motion, the Auction, the Sale

Hearing, the BH Legacy APA, the Sale, and this Order is or shall be required. With

respect to parties who may have claims against the Debtors, but whose identities are not

reasonably ascertainable by the Debtors, the Publication Notice described above was sufficient and reasonably calculated under the circumstances to reach such parties.

D.    **Extensive Efforts by Debtors.**  As of the Petition Date and for a period of more than 7 months before the commencement of these Chapter 11 cases, the Debtors worked with their counsel and financial advisors, AFI, and various governmental constituencies to implement a viable transaction that would allow them to continue their operations.  The Debtors presented credible evidence that, as of the Petition Date, they had explored various strategic alternatives for the Debtors' businesses over an extended period of time and had communicated with 5 parties about a possible sale of all or substantially all of the Debtors' assets. The Sale is the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Debtors' estates, for the benefit of creditors.

E.    **Business Justification.**  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets. In light of the circumstances of these Chapter 11 cases and the risk of deterioration in the going concern value of the Purchased Assets pending the Sale, time is of the essence in (i) consummating the Sale, (ii) preserving the viability of the Debtors' businesses as going concerns, and (iii) minimizing the widespread and adverse economic consequences for the Debtors, their estates, and their creditors and employees.

F.    **Sale Procedures Order.**  On June 28, 2012, this Court entered the Sale Procedures Order approving Sale Procedures for the Purchased Assets. The Sale

Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets.

**G.    Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Debtors have adequately marketed the Purchased Assets and conducted the sale process in compliance with the Sale Procedures Order; (b) a reasonable opportunity has been given to any interested party to make a higher or better offer for the Purchased Assets; (c) the consideration provided for in the BH Legacy APA constitutes the highest or otherwise best offer for the Purchased Assets; (d) the consideration provides fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (e) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative, including liquidation under Chapters 7 or 11 of the Bankruptcy Code; (f) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; and (g) the Debtors' determination that the BH Legacy APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

**H.    Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested Persons, including the Notice Parties.

**I.**      **Sale in Best Interests.**  The actions represented to be taken by the Sellers and the Purchaser are appropriate under the circumstances of these Chapter 11 cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest. Approval of the BH Legacy APA and circumstances of the Sale at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

**J.**      **No *Sub Rosa* Plan.**  In the event the Sale is approved under section 363 of the Bankruptcy Code, the consummation of the Sale outside of a plan of reorganization pursuant to the BH Legacy APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* plan of reorganization.

**K.**      **Arm's-Length Sale.**  The BH Legacy APA was negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  Neither the Sellers nor the Purchaser, nor any of their respective insiders and affiliates, have engaged in any conduct that would cause or permit the BH Legacy APA or any part of the Sale to be avoided under section 363(n) of the Bankruptcy Code.

**L.**      **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  Prior to the date of this Order, the Purchaser provided to the Debtors and the Committee a declaration certifying that there was no collusion between Purchaser

on the one hand, and any other potential purchaser, on the other hand.  Based on that

declaration, the Purchaser has not colluded with any other potential purchaser.

**M.    Corporate Authority.**  Each Debtor (i) has full corporate power and

authority to execute the BH Legacy APA and all other documents contemplated thereby,

and the sale of the Purchased Assets has been duly and validly authorized by all

necessary corporate action of each of the Debtors, (ii) has all of the corporate power and

authority necessary to consummate the transactions contemplated by the BH Legacy

APA, (iii) has taken all corporate action necessary to authorize and approve the BH

Legacy APA and the consummation by the Debtors of the transactions contemplated

thereby, and (iv) needs no consents or approvals, other than those expressly provided

for in the BH Legacy APA, which may be waived by the Purchaser, to consummate

such transactions.

**N.    Binding and Valid Transfer.**  The transfer of the Purchased Assets to

the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will

vest the Purchaser with all right, title, and interest of the Sellers to the Purchased Assets

free and clear of all Interests, including (i) rights or claims based on any successor or

transferee liability, (ii) those that purport to give to any party a right or option to effect

any setoff, forfeiture, modification, right of first refusal, or termination of the Sellers' or the

Purchaser's interest in the Purchased Assets, or any similar rights, (iii) those relating to

taxes arising under or out of, in connection with, or in any way relating to the operation

of the Purchased Assets prior to the closing, and (iv) (a) those arising under all

mortgages, deeds of trust, security interests, conditional sale or other title retention

agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal,

or charges of any kind or nature, if any, including, any restriction on the use, voting,

transfer, receipt of income, or other exercise of any attributes of ownership and (b) all

debts arising in any way in connection with any agreements, acts, or failures to act,

of any of the Sellers or any of the Sellers' predecessors or affiliates, claims (as that

term is defined in the Bankruptcy Code), obligations, liabilities, demands,

guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, contingent or otherwise,

whether arising prior to or subsequent to the commencement of these Chapter 11 cases, and

whether imposed by agreement, understanding, law, equity or otherwise, including, but

not limited to, Claims otherwise arising under doctrines of successor or transferee

liability, Claims or Liabilities relating to any act or omission of any originator, holder or

servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims

or Liabilities relating to any act or omission of the Sellers or any other Person prior to

the Closing Date.  The APA and the related documents and agreements contemplated

thereby, and the consummation of the transactions contained therein shall not be subject

to avoidance by the Debtors, any affiliate of the Debtors, any of their respective

successor trustees appointed with respect thereto, or any other person or entity,

including, without limitation, any claims with respect to any transfers made in

accordance with Section 2.4 of the BH Legacy APA.

    **O.**    **Satisfaction of 363(f) Standards.**  The Sellers may sell, and, upon

closing of the Sale, shall be deemed to have sold the Purchased Assets free and clear of

all Interests of any kind or nature whatsoever, including all rights or claims based upon

any successor or transferee liability, because, in each case, one or more of the standards

set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those

holders of Interests, including all rights or claims based on any successor or transferee

liability are (a) deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy

Code and (b) adequately protected by having their Interests, if any, including all rights or

claims based on any successor or transferee liability, attach to the cash proceeds of the

Sale ultimately attributable to the property against or in which they claim an Interest,

including all rights or claims based on any successor or transferee liability.  In all cases,

each such Person with Interests in the Purchased Assets are enjoined from taking any

action against the Purchaser, the Purchaser's Affiliates or any agent of the foregoing to

recover any such Interest.

P.    **Necessity of Order.**  The Purchaser would not have entered into the BH

Legacy APA and would not have consummated the Sale without all of the relief

provided for in this Order (including that the transfer of the Purchased Assets to

Purchaser be free and clear of all Interests and including rights or Claims based upon

successor or transferee liability, Claims or Liabilities relating to any act or omission of

any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any

indemnification Claims or Liabilities relating to any act or omission of the Sellers or any

other Person prior to the Closing Date).

Q.    **Personally Identifiable Information.**  The Debtors have provided

certain privacy policies to consumers that govern the disclosure of "personally

identifiable information" (as defined in Bankruptcy Code section 101(41A)) to

unaffiliated third parties.  The Debtors have proposed to sell certain assets, which may

require the disclosure of personally identifiable information to third parties.  The

Debtors' disclosure of personally identifiable information pursuant to the Sale is in compliance with the Gramm-Leach-Bliley Act and is consistent with the privacy notices delivered by the Debtors to mortgage borrowers.  For these reasons, no consumer privacy ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

**R.    Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

**S.    SBO Servicing Agreements.**  Subject to the terms of the BH Legacy APA with respect to the assumption and assignment of the SBO Servicing Agreements, the Purchaser is the assignee of all of the Debtors' rights under the those SBO Servicing Agreements that are to be assumed and assigned to the Purchaser, and such Purchaser shall, to the extent applicable, acquire all of the Sellers' rights thereunder free and clear of any Claims or Liabilities arising prior to the Closing Date.

**T.    Cure/Adequate Assurance.**  The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the SBO Servicing Agreements within the meaning of section 365(b)(1)(A) of the of the Bankruptcy Code.  Any Cure Amounts are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such SBO Servicing Agreements.  The Purchaser's promise to

12

perform the obligations under the SBO Servicing Agreements after the Closing Date

shall constitute adequate assurance of its future performance of and under the SBO

Servicing Agreements, within the meaning of sections 365(b)(1) and 365(f)(2) of the

Bankruptcy Code.    The Purchaser is not assuming any obligation under or in

connection with the SBO Servicing Agreements occurring or arising prior to the

Closing Date, whether encompassed within the Cure Amounts payable by the Debtors

or otherwise.  All Interested Contract Parties of the SBO Servicing Agreements who

did not timely file an objection to the assumption and assignment of the Assumed

Contract, are deemed to consent to the assumption by the Debtors of their respective

Assumed Contract and the assignment thereof to the Purchaser.  To the extent not

resolved and/or adjourned at or prior to the Sale Hearing, the objections of all

Interested Contract Parties of SBO Servicing Agreements that did file a timely

objection to the assumption and assignment of such parties' respective Assumed

Contract relating thereto were heard at the Sale Hearing (to the extent not withdrawn),

were considered by the Court, are overruled on the merits with prejudice; provided,

however, that to the extent an objection of the Interested Contract Parties, or

unresolved portion thereof, relates solely to a Cure Amount, such objection is

preserved and shall be heard by the Court on a date mutually agreed to by the parties

or as determined by the Court, and are deemed to consent to the assumption by the

Debtors of their respective Assumed Contract and the assignment thereof to the

Purchaser.  The Court finds that with respect to all such SBO Servicing Agreements

the payment of the Cure Amounts is appropriate and is deemed to fully satisfy the

Debtors' obligations under section 365(b) of the Bankruptcy Code.  Accordingly, all

of the requirements of sections 365(b) of the Bankruptcy Code have been satisfied for

the assumption and the assignment by the Debtors to the Purchaser of each of the SBO

Servicing Agreements.  To the extent any Assumed Contract is not an executory

contract within the meaning of section 365 of the Bankruptcy Code, it shall be

transferred to the Purchaser in accordance with the terms of this Order that are

applicable to the Purchased Assets, and the Purchaser shall have no liability or

obligation for any (a) defaults or breaches under such agreement that relate to acts or

omissions that occurred in the period, or otherwise arose, prior to the Closing Date,

and (b) Claims, counterclaims, offsets, or defenses (whether contractual or otherwise,

including without limitation, any right of recoupment) with respect to such Assumed

Contract, that relate to any acts or omissions that arose or occurred prior to the Closing

Date.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED THAT:**

1.    **Motion is Granted.**  The Motion is granted and the relief requested

therein with respect to the Sale of the Purchased Assets to the Purchaser pursuant to the

BH Legacy APA is granted and approved, as further described below.

2.    **Objections Overruled.**  Any objections to the entry of this Order or the

relief granted herein and requested in the Motion that have not been withdrawn, waived,

or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are

denied and overruled on the merits with prejudice, except to the extent any objections

to Cure Amounts were unresolved and/or adjourned prior to or at the Sale Hearing.

3.    **Approval.**  The BH Legacy APA, and all the terms and conditions

thereof, is approved. Pursuant to sections 105 and 363 of the Bankruptcy Code, the

Debtors are authorized and directed to perform their obligations under, and comply

with the terms of, the BH Legacy APA and consummate the Sale pursuant to, and in

accordance with, the terms and conditions of the BH Legacy APA and this Order. The

Debtors are authorized and directed to execute and deliver, and empowered to perform

under, consummate, and implement, the BH Legacy APA, together with all additional

instruments and documents that the Sellers or the Purchaser deem necessary or

appropriate to implement the BH Legacy APA and effectuate the Sale, and to take all

further actions as may reasonably be required by the Purchaser for the purpose of

assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing

to Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the

performance of the obligations as contemplated by the BH Legacy APA.

     4.     **Binding Effect of Order.**  This Order and the BH Legacy APA shall

be binding in all respects upon all known and unknown creditors of, and equity security

interests in, any Debtor, including any holders of Interests (including holders of rights

or claims based on any successor or transferee liability), all successors and assigns of

the Purchaser, each Seller and their Affiliates and subsidiaries, the Purchased Assets,

and any trustees appointed in the Debtors' Chapter 11 cases or upon a conversion to cases

under Chapter 7 of the Bankruptcy Code, and this Order shall not be subject to

amendment or modification and the BH Legacy APA shall not be subject to rejection.

The terms of this Order shall apply in any sale pursuant to a Chapter 11 plan and may be

incorporated into any confirmation order. Nothing contained in any Chapter 11 plan

confirmed in the Debtors' Chapter 11 cases or the order confirming any such Chapter

11 plan shall conflict with or derogate from the provisions of the BH Legacy APA or this Order.

5.    **Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the BH Legacy APA and this Order. Following the Closing, except for Persons entitled to enforce Permitted Liens, all Persons (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, investors, certificate holders, securitization trustees, borrowers, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and the successors and assigns of each of the foregoing) holding Interests in the Purchased Assets or against the Debtors in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever (including, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing Date) against the Purchaser or any Affiliate of the Purchaser or any of their respective property, successors and assigns, or the Purchased Assets, as an alleged successor or on any other grounds, it being understood that nothing herein shall affect assets of the Debtors that are not Purchased Assets.

6.      No Person shall assert, and the Purchaser and the Purchased Assets shall

not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether

contractual or otherwise, including any right of recoupment), Liabilities, Claims and

Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of

the Purchaser or the Debtors, or any obligation of any other party, under or with respect

to, any Purchased Assets with respect to any act or omission that occurred prior to the

Closing.  All Interested Contract Parties are directed to recognize the Purchaser as the

owner of the Purchased Assets.

7.      **General Assignment.**  Upon the Closing, this Order shall be construed and

shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of the Sellers' interests in the Purchased Assets and a bill of sale

transferring good and marketable title in the Purchased Assets to the Purchaser. Each and

every federal, state, and local governmental agency, quasi-agency, or department is

hereby directed to accept this Order, or any and all other documents and instruments

necessary and appropriate to consummate the Sale.

8.      **Transfer Free and Clear.**  Except as otherwise provided by section

363(o) of the Bankruptcy Code, pursuant to sections 105(a) and 363(f) of the

Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser as

required under the BH Legacy APA, and such transfer shall be free and clear of all

Interests of any Person (including, Claims, Liabilities, or Cure Amounts relating to

any act or omission of any originator, holder or servicer of Mortgage Loans prior to

the Closing Date, and any indemnification Claims or Liabilities relating to any act or

omission of the Sellers or any other Person prior to the Closing Date) and any and all

rights and claims under any bulk transfer statutes and similar laws, whether arising by

agreement, by statute or otherwise and whether occurring or arising before, on or after

the date on which these Chapter 11 cases were commenced, whether known or

unknown, occurring or arising prior to such transfer, with all such Interests to attach to

the proceeds of the Sale ultimately attributable to the property against or in which the

holder of a Claim or Interest claims or may claim a Claim or Interest, in the order of

their priority, with the same validity, force, and effect which they now have, subject

to any claims and defenses the Sellers may possess with respect thereto.  For the

avoidance of doubt, the transfer of the Securitized Advances to the Purchaser, and the

Purchaser's right to receive payments with respect to such Securitized Advances, shall

be free and clear of all Liens (other than Permitted Liens), Claims and Liabilities and

Cure Amounts (including, without limitation, any obligations to fund or otherwise

satisfy any draw requests) and irrespective of a party's ownership of the servicing

rights (primary or master servicing) related to the underlying home equity lines of

credit.

      9.     **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser

pursuant to the BH Legacy APA constitutes a legal, valid, and effective transfer of the

Purchased Assets and shall vest the Purchaser with all right, title, and interest of the

Sellers in and to the Purchased Assets free and clear of all Interests of any kind or nature

whatsoever, including all rights or claims based on any successor or transferee liability.

The transfers of Purchased Assets shall not be subject to avoidance for any reason by the

Debtors, any affiliate of the Debtors, their respective successors, or any creditor thereof

including, without limitation, with respect to any transfers pursuant to Section 2.4 of the

BH Legacy APA.  For the avoidance of doubt, in the event that BH elects to designate

other parties to whom the Purchased Assets, or any portion thereto, shall be conveyed,

transferred, assigned, and/or delivered in accordance with section 2.13 of the BH Legacy

APA, BH's obligations under the BH Legacy APA with respect to such Purchased

Assets shall remain unchanged.

10.    **Direction to Release Interests.**  Upon the Closing, each of the Sellers'

creditors and any other holder of an Interest, including rights or Claims based on any

successor or transferee liability, is authorized and directed to execute such documents

and take all other actions as may be necessary to release its Interest in the Purchased

Assets, if any, as such Interest may have been recorded or may otherwise exist. If any

person or entity that has filed financing statements, mortgages, mechanic's liens, lis

pendens, or other documents or agreements evidencing an Interest in the Sellers or the

Purchased Assets shall not have delivered to the Sellers prior to the Closing, in proper

form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all Interests, which the person or entity has with

respect to the Sellers or the Purchased Assets or otherwise, then (i) the Sellers are

authorized and directed to execute and file such statements, instruments, releases, and

other documents on behalf of the person or entity with respect to the Sellers or the

Purchased Assets, and (ii) the Purchaser is authorized to file, register, or otherwise

record a certified copy of this Order, which shall constitute conclusive evidence of the

release of all liens, claims, encumbrances, and other interests of any kind or nature

whatsoever in the Sellers or the Purchased Assets.  Each and every federal, state, and

local governmental agency or department is hereby directed to accept any and all

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the BH Legacy APA, including, without limitation, recordation of

this Order. This Order shall be binding upon and shall govern the acts of all Persons

including without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials,

and all other Persons who may be required by operation of law, the duties of their office,

or contract, to accept, file, register, or otherwise record or release any documents or

instruments, or who may be required to report or insure any title or state of title in or

to any of such assets or other property interests.

11.    **No Interference.**  Following the Closing of the Sale, no holder of any

Interest shall interfere with the Purchaser's title to, or use and enjoyment of, the

Purchased Assets based on, or related to, any such Interest, or based on any actions the

Debtors may take in their Chapter 11 cases.

12.    **Surrender of Possession.**  All entities that are currently, or on the

Closing Date may be, in possession of some or all of the Purchased Assets in which the

Sellers hold an interest hereby are directed to surrender possession of the Purchased Assets

to the Purchaser on the Closing Date, unless the Purchaser otherwise agrees.

13.    **No Discriminatory Treatment.**  To the extent provided by section 525

of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to

renew any permit, license, or similar grant relating to the operation of the Purchased

Assets sold, transferred, or conveyed to the Purchaser on account of the filing or

20

pendency of these Chapter 11 cases or the consummation of the Sale contemplated by

the BH Legacy APA.

14.    **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a),

363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing of

the Sale, the Debtors' assumption and assignment to the Purchaser of the SBO Servicing

Agreements is approved, and the requirements of section 365(b)(1) of the Bankruptcy

Code with respect thereto are deemed satisfied.

15.    The Debtors are authorized and directed in accordance with

sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the

Purchaser, effective as of the Closing, as provided by, and in accordance with, the Sale

Procedures Order and the BH Legacy APA, the SBO Servicing Agreements free and

clear of all Interests of any kind or nature whatsoever, and (ii) execute and deliver to the

Purchaser such documents or other instruments as the Purchaser reasonably deem may be

necessary to assign and transfer the SBO Servicing Agreements to the Purchaser.  The

SBO Servicing Agreements shall be transferred and assigned to, pursuant to the Sale

Procedures Order and the BH Legacy APA, and thereafter remain in full force and effect

for the benefit of, the Purchaser, notwithstanding any provision in any such SBO

Servicing Agreements (including those of the type described in sections 365(b)(2), (e)(1),

and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or

transfer.  The Sellers shall be relieved from any further liability, other than the Cure

Amounts, with respect to the SBO Servicing Agreements after such assumption and

assignment to the Purchaser.  The Debtors may assign each SBO Servicing Agreement in

accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any

SBO Servicing Agreements that prohibit or condition the assignment of such SBO

Servicing Agreements or terminate, recapture, impose any penalty, condition renewal or

extension, or modify any term or condition upon the assignment of such SBO Servicing

Agreement, constitute unenforceable anti-assignment provisions which are void and of no

force and effect.  All other requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of

each SBO Servicing Agreement have been satisfied.  With respect to the relevant SBO

Servicing Agreements subject of the objections filed by Branch Banking and Trust

(Docket No. 2205), PNC Mortgage, a Division of PNC Bank, NA (Docket Nos. 1635 and

1981), Wells Fargo Bank, N.A. (Docket No. 2209), and CitiMortgage, Inc. (Docket No.

2210), for the avoidance of doubt, notwithstanding anything to the contrary contained in

this Order or the BH Legacy APA, upon the assignment of the SBO Servicing

Agreements to Purchaser, Purchaser shall perform all of the obligations under the SBO

Servicing Agreements, from and after the Closing Date including any obligation in

accordance with the terms of such SBO Servicing Agreements  to reimburse such third-

party servicer or subservicer (the "SBO Servicer") for Advances made under such SBO

Servicing Agreement prior to the Closing Date but that are unmatured reimbursement

obligations which do not become due and payable under the terms of such agreements

until post-closing; provided, however, that Purchaser shall not incur any liability,

including with respect to reimbursement of Advances, that arise out of or relate to any

act or omission of the Debtors (whether as originator, servicer, or otherwise) that

occurred before the Closing Date.

16.     All defaults and all other obligations or Liabilities under any SBO

Servicing Agreement occurring, arising or accruing prior to the date of the assignment or

transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Sellers

of the Cure Amount, and, without limiting the foregoing, no effect shall be given to any

default of the type set forth in section 365(b)(2) of the Bankruptcy Code, whether or not

such SBO Servicing Agreement is an executory contract within the meaning of section

365 of the Bankruptcy Code.  The Cure Amounts reflect the sole amounts necessary

under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the SBO

Servicing Agreements, and no other amounts are or shall be due to the non-debtor parties

in connection with the assumption by the Debtors and assignment to the Purchaser of the

SBO Servicing Agreements.

17.     Except as provided in the BH Legacy APA or this Order, after the

Closing, the Debtors and their estates shall have no further liabilities or obligations with

respect to any SBO Servicing Agreements other than certain Cure Amounts, and all

holders of such claims arising from and after Closing under any SBO Servicing

Agreement are forever barred and estopped from asserting any claims (other than for

Cure Amounts) under any Assumed Contract against the Debtors, their successors or

assigns, and their estates.

18.     The Debtors, in consultation with the Creditors' Committee and the

Purchaser, and the relevant non-debtor counterparty shall have authority to compromise,

settle, or otherwise resolve any objections to proposed Cure Amounts without further

order of the Bankruptcy Court; provided, however, the consent of the Creditors'

Committee (which consent shall not be unreasonably withheld) shall be required with

respect to the allowance of any Cure Amount in excess of $1 million. If the Debtors, in consultation with the Creditors' Committee, the Purchaser and the non-debtor counterparty, determine that the objection cannot be resolved without judicial intervention, then the determination of the assumption and assignment of the executory contract or unexpired lease and/or the proposed Cure Amount with respect to such contract or lease will be determined by the Court at a date mutually agreed to by the parties or as determined by the Court.

19.     The failure of the Sellers or the Purchaser to enforce at any time one or more terms or conditions of any SBO Servicing Agreement shall not be a waiver of such terms or conditions, or of the Sellers' and the Purchaser's rights to enforce every term and condition of the SBO Servicing Agreements.

20.     **No Successor Liability.**  Neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Interest that arose prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing. The Purchaser shall not be deemed, as a result of any action taken in connection with the BH Legacy APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee

liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

21.     **Fair Consideration.**  The consideration provided by the Purchaser for the Purchased Assets under the BH Legacy APA shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sales may not be avoided under section 363(n) of the Bankruptcy Code.  The Purchaser was not party to any agreements to control the sale price, and is not subject to any claims for damages under section 363(n) of the Bankruptcy Code.

22.     **Retention of Jurisdiction.**  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests, Claims or Liabilities against or related to the Sellers or the Purchased Assets of any kind or nature whatsoever, and (iv) enter any order under section 363 and 365 of the Bankruptcy Code.

23.     **Good Faith.**  The transactions contemplated by the BH Legacy APA are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on

appeal of the authorization provided in this Order to consummate the Sale shall not affect

the validity of the Sale, unless such authorization is duly stayed pending such appeal. The

Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all the

protections afforded by section 363(m) of the Bankruptcy Code.  There has been no

collusion by the Purchaser.

24.    **No Bulk Law Application.**  No law of any state or other jurisdiction,

including any bulk sales law or similar law, shall apply in any way to the transactions

contemplated by the Sale, the BH Legacy APA, the Motion, and this Order.

25.    **Subsequent Plan Provisions.**  Nothing contained in any Chapter 11

plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or

in any other order in these Chapter 11 cases shall alter, conflict with, or derogate from,

the provisions of the BH Legacy APA or this Order.

26.    **Failure to Specify Provisions.**  The failure to specifically include any

particular provisions of the BH Legacy APA in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the BH Legacy APA

be authorized and approved in its entirety.

27.    **Non-Material Modifications.**  The BH Legacy APA and any related

agreements, documents, or other instruments may be modified, amended, or

supplemented by the parties thereto and in accordance with the terms thereof, without

further order of the Court, provided that any such modification, amendment, or

supplement does not have any adverse effect on the Debtors' estates.

28.    **Appointment of Trustee.**  The provisions of the BH Legacy APA and this

Order may be specifically enforced in accordance with the BH Legacy APA

notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

29.    **Application of Net Proceeds and Repayment of Obligations Under
the Ally DIP Facility.**  Consistent with the terms of the *Final Order Under Sections 105,
361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004,
and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured,
Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting
Adequate Protection to Adequate Protection Parties* [Docket No. 491] (the "<u>Ally DIP
and Cash Collateral Order</u>"),[5] the Debtors are authorized and directed to apply the net

proceeds of the Sale attributable to the collateral securing the AFI DIP Loan to repay the

AFI DIP Obligations under the AFI LOC Amendment.  All payments to the AFI DIP

Lender shall be final and indefeasible.  The liens of the AFI DIP Lender on the AFI DIP

Loan Collateral shall attach to the proceeds of the Sale contemplated by this Order until

the payments required by this paragraph and by the AFI LOC Amendment are made.  No

failure of the Debtors to comply with this paragraph 29 shall have any effect whatsoever

on the sale of the Purchased Assets under the BH Legacy APA and such sale shall be free

and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-17, and 20 of

this Order.

30.    **Application of Net Proceeds and Repayment of Obligations Under the
Barclays DIP Facility.**  Consistent with the terms of the *Final Order Pursuant to 11
U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1)*

---

[5]     Except for the terms "Closing", "Order", "Debtors", "Purchased Assets", and "BH Legacy APA",

*and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter*

*Into and Perform Under Receivables Purchase Agreements and Mortgage Loan*

*Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage*

*Loans and Receivables Pooling Agreements relating to Additional Receivables and (B) to*

*Obtain Post Petition Financing on a Secured Superpriority Basis and (II) Granting*

*Related Relief* (Docket No. 490) (the "Barclays DIP Order"),[6] at Closing the Debtors are

authorized and directed to pay to the Administrative Agent an amount in cash equal to the

outstanding DIP Obligations for application by the Administrative Agent in accordance

with section 2.14 of the DIP Credit Agreement; provided that if the Sale meets the criteria

listed in section 6.08(e)(i)-(iv) of the DIP Credit Agreement then the Debtors shall  pay to

the Administrative Agent the amount required by the DIP Credit Agreement at Closing.

All payments to the Administrative Agent and the DIP Lenders shall be final and

indefeasible.  The liens of the Administrative Agent, the Collateral Agent and the DIP

Lenders on the Collateral shall attach to the proceeds of the sales contemplated by this

Order until the payments required by this paragraph and by the DIP Credit Agreement are

made. No failure of the Debtors to comply with this paragraph 30 shall have any effect

whatsoever on the sale of the Purchased Assets under the BH Legacy APA and such sale

shall be free and clear as set forth in this Order, including in paragraphs N-P, T, 3-12, 15-

17, and 20 of this Order.

31.     **Purchase Price Allocation Reservation of Rights**.  Notwithstanding any

other provision of this Order, nothing in this order or the BH Legacy APA, including any

---

all capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to
such terms in the Ally DIP and Cash Collateral Order.
[6]       Except for the terms the "Sale", "Closing", "Order", "Debtors", "Purchased Assets", and "BH
Legacy APA", all capitalized terms used but not otherwise defined in this paragraph shall have the

segregation of cash proceeds in accordance with paragraph 36, shall be deemed to be a

determination that any purchase price or cash allocations, including those contained in

Article III of the BH Legacy APA are binding in any way on creditors of the various

Debtors, or the Debtors' estates, with respect to the allocation of the proceeds of the Sale

either between and among the various Debtor estates or between and among the various

classes of assets sold; provided that any subsequent allocation of the proceeds for claim

purposes shall have no effect on the Purchaser, in its capacity as Purchaser. All rights of

all parties are reserved with respect to the allocation or distribution of the proceeds of the

Sale.

32.    **Intercompany Claims.**  If as a result of the consummation of the Sale,

the Debtors are obligated under the terms of the Amended and Restated DIP Credit

Agreement  to utilize the proceeds of Junior Lien Collateral (as defined in the Barclays

DIP Order) to pay down the Barclays DIP Facility, such Debtor guarantors, consistent

with the Court's *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364,*

*and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of*

*Cash Management Services And Practices, (II) Continued Use Of Existing Bank*

*Accounts, Checks, and Business Forms, (III) Implementation Of Modified Cash*

*Management Procedures and Use of Certain Bank Accounts Established in Connection*

*with Use of Pre-and Post-Petition Lenders' Financing Facilities and Cash Collateral,*

*(IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section*

*345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and*

*(VI) Continuation of Intercompany Transactions and Granting Administrative Expense*

---

meanings ascribed to such terms in the Barclays DIP Order.

*Status to Intercompany Claims* (Docket No. 393) shall be entitled to an intercompany

claim against the Borrowers under the Barclays DIP Facility to the extent of such

payments made, and such claim shall be accorded administrative expense status and

priority of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

33.    Notwithstanding anything herein to the contrary, including, without

limitation, any findings and any assertion, agreement, pleading, or other document made

or filed in connection with the Sale, the Sale Motion, the Sale Procedures Order, the Sale

Hearing, or this Sale Order, this Order shall not modify or affect the terms and

provisions of, nor the rights and obligations under, (a) the Board of Governors of the

Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally

Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent

judgment entered April 5, 2012 by the District Court for the District of Columbia, dated

February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon

Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10,

2012; (d) all related agreements with AFI and Ally Bank and their respective

subsidiaries and affiliates; and (e) section 6.17 of the BH Legacy APA.

34.    **Document Preservation.**  The Debtors shall take all appropriate steps to

preserve, protect, maintain, and ensure the availability of all of the Debtors' books,

records, documents and electronically stored information, in whatever format, including

native format that are potentially relevant to the claims asserted by the Plaintiffs

(collectively the "Relevant Books and Records") in the following actions (the "Actions"):

- *New Jersey Carpenters Health Fund, et als., on Behalf of Themselves and All Others Similarly Situated v. Residential Capital, LLC, et als.*, No. 08-CV-8781 (HB) (S.D.N.Y. 2008)

- *Union Cent. Life Ins. Co. et al. v. Credit Suisse First Boston Mortg. Sec. Corp. et al.*, No. 11-CV-2890 (GBD) (S.D.N.Y. 2011)

- *Donna Moore, Frenchola Holden and Keith McMillon, individually and on behalf of all others similarly situated v. GMAC Mortgage, LLC, GMAC Bank and CapRe of Vermont, Inc.*, No. 07-CV-04296-PD (E.D. Pa. 2007)

- *Cambridge Place Inv. Mgmt. Inc. v. Morgan Stanley & Co., Inc., et al.,* Nos. 10-2741-BLS1, 11-0555-BLS1 (Mass. Sup. Ct. 2010, 2011).

The Debtors (i) shall retain the originals or true copies of the Relevant Books and Records included in the Sale (the "Retained Relevant Books and Records") and, as to any of the Actions that have not been fully and finally resolved by a final, non-appealable judgment (ii) shall provide at least thirty (30) days' written notice to lead and bankruptcy counsel for the Plaintiffs in each of the Actions with an opportunity to be heard of any abandonment, destruction, or transfer of the Retained Relevant Books and Records that may render the Relevant Books and Records unavailable to the Plaintiffs.  In the event Plaintiffs file an objection to the abandonment, destruction, or transfer described above within such thirty (30) day period after receiving written notice, the Debtors shall not abandon, destroy, or transfer the Retained Relevant Books and Records absent a final and non-appealable order of this Court or any court of competent jurisdiction if the Debtors' bankruptcy cases are closed.  Purchaser shall not have any obligation to preserve, protect, maintain, or ensure the availability of any Relevant Books and Records.

35.     **Amounts Payable By Sellers Are Administrative Expenses.** Any amounts due to Purchaser from Sellers under the BH Legacy APA, including, without limitation, amounts payable under Section 3.2(b) of the BH Legacy APA, shall constitute allowed administrative expenses and shall be paid without the need for further application or motion by Purchaser.

36.     **Segregation of Cash.** The Debtors will segregate cash generated from the Sale in accordance with the *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre-And Post-Petition Lenders Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash Management Order"), including segregating cash generated from the Sale of collateral securing any of the Debtors' financing facilities into the specific bank accounts established for the benefit of the lenders under such financing facilities.

37.     The Purchaser's obligations to Sellers under section 6.17 of the BH Legacy APA shall extend to any successor estate fiduciary and AFI, in each case solely to the extent such entity is carrying out the obligations of the Sellers under the DOJ/AG Settlement or Consent Order.

38.    **DLJ Consortium Asset Purchase Agreement.**  Notwithstanding

anything to the contrary herein or in the Sale Procedures Order, or the Asset Purchase

Agreement dated as of October 19, 2012 (the "DLJ Back-Up Bid") among Sellers on the

one hand, and Bayview Acquisitions, LLC, DLJ Mortgage Capital, Inc. ("DLJ"),

Roosevelt Depositor, LLC, Roosevelt Mortgage Acquisition Company, and Selene

Finance LP (collectively, the "DLJ Consortium") on the other hand, the DLJ Back-Up

Bid shall be required to remain open until the earlier to occur of: (i) the closing of the

Sale to Purchaser; or (ii) December 31, 2012 (such earlier date to occur, the "DLJ Back-

Up Bid Termination Date").  Upon the occurrence of the DLJ Back-Up Bid Termination

Date, the DLJ Back-Up Bid shall be deemed automatically terminated, and the

transactions contemplated thereby abandoned without further notice or act by any party.

Upon the occurrence of the Back-Up Bid Termination Date, Sellers and DLJ shall

promptly execute a joint instruction to JPMorgan Chase Bank, NA (the "Escrow Agent")

authorizing and directing the release of the good faith deposit funded on behalf of the

DLJ Consortium pursuant to the Deposit Escrow Agreement entered into as of October

18, 2012 among Sellers, Escrow Agent and DLJ.


Dated: New York, York
         November 21, 2012

                                                        **/s/Martin Glenn**
                                                        MARTIN GLENN
                                                   United States Bankruptcy Judge

## EXHIBIT 1

**BH Legacy APA**