# Exhibit D



# Bank of America

### EQUITY MAXIMIZER® AGREEMENT AND DISCLOSURE STATEMENT
### SECURED BY DEED OF TRUST

| BORROWER (1) | LENDER: |
| --- | --- |
| HITOSHI INOUE | Bank of America, N.A. |
| BORROWER (2) | DATE OF AGREEMENT: |
|  | December 9, 2003 |
| BORROWER (3) | ACCOUNT NUMBER: |
|  | 318668240106348299 |
| BORROWER (4) | TOTAL CREDIT COMMITMENT: |
|  | $ 30,000.00 |

**Definitions.** In this agreement, the following terms shall have the following meanings: "Account" means your variable rate revolving credit line ("Variable Rate Credit Line Portion") and any fixed rate loans ("Fixed Rate Loan Portion") established pursuant to this Agreement; "Agreement" means this Equity Maximizer Agreement and Disclosure Statement; "Credit Line Draw(s)" means all extensions of credit and advances under the Variable Rate Credit Line Portion of your Account; "Finance Charge" means the cost of credit extended to you, expressed as a dollar amount; "Fixed Rate Loan(s)" means all extensions of credit and advances under the Fixed Rate Loan Portion of your Account; "Outstanding Balance" means the total balance owed by you to us from time to time under this Agreement, including unpaid accrued Finance Charges and any other amounts due under this Agreement or the Security Instrument; "Security Instrument" means the deed of trust, mortgage or similar instrument securing your obligations under this Agreement; "Property" means the real and personal property described in the paragraph **Our Security Interest** on page 5 of this Agreement; "Total Credit Commitment" means the maximum permitted Outstanding Balance, as set forth at the top of this Agreement; "we," "us" and "our" mean the lender named above; "you" and "your" mean each person who has signed this Agreement.

## YOUR EQUITY MAXIMIZER ACCOUNT

Your Account consists of an open-end revolving Variable Rate Credit Line Portion, and a Fixed Rate Loan Portion in which you may establish up to three Fixed Rate Loans.

**Your Total Credit Commitment.** The Total Credit Commitment shown above is the overall credit limit for the combined Variable Rate Credit Line and Fixed Rate Loan Portions. You agree that the Outstanding Balance of your Account will not exceed this amount. We have no obligation to make any Credit Line Draw or Fixed Rate Loan that would cause the Outstanding Balance of your Account to exceed your Total Credit Commitment. If we do make a Credit Line Draw or Fixed Rate Loan that causes your Outstanding Balance to exceed the Total Credit Commitment, we are not obligated to do so in the future. You agree to pay any amount over your Total Credit Commitment immediately upon our request. You may request a change in your Total Credit Commitment, but your request for an increase is subject to our approval.

Any amount paid against the principal balance of the Variable Rate Credit Line Portion or any Fixed Rate Loan will increase the available credit (after the expiration of a hold period for payments by personal checks of up to eleven days) on the Variable Rate Credit Line Portion by an equal amount.

**Term.** Your Account has a term of up to 25 years. It consists of a revolving period ("Revolving Period") of up to 10 years and a repayment period ("Repayment Period") of up to 15 years. The Revolving Period will end 10 years after the Date of Agreement. Upon your request, we may, at our option, extend the Revolving Period for one additional ten (10) year period. When the Revolving Period ends, your Account enters the Repayment Period. During the Repayment Period you will no longer be able to obtain Credit Line Draws or Fixed Rate Loans and the Outstanding Balance on your Account will be payable in accordance with the terms stated for the Repayment Period.

**Promise to Pay.** You promise to pay us, at the address shown on your billing statement, the Outstanding Balance of your Account in accordance with this Agreement. Monthly Payments are due 15 days following your statement closing date. You agree to be bound by the terms and conditions of this Agreement and the Security Instrument.

## VARIABLE RATE CREDIT LINE PORTION OF YOUR ACCOUNT

**How You Can Borrow - Variable Rate Credit Line Portion.** You may obtain Credit Line Draws on your Account up to the Total Credit Commitment during the Revolving Period unless your credit privileges are suspended or terminated in accordance with this Agreement. By repaying any amount advanced, that amount becomes available to you after the expiration of a hold period for payments by personal checks of up to eleven business days. You may obtain Credit Line Draws from your Account by writing credit line checks ("Credit Line Checks") that we furnish you, by using your Account Access Card, or by such other methods as we may make available from time to time. You may not obtain Credit Line Draws from your Account to make payments to your Account.

CLS-3043-1-CA/0005   02-03
05-05-3043NSB
10/95

Page 1 of 11

Exhibit B
Page 2 of 17

Unless prohibited by law, our liability, if any, for wrongful dishonor of a Credit Line Draw is limited to your actual damages.

We reserve the right not to honor any Account Access Card if any of them has been reported lost or stolen. We also reserve the right not to honor Credit Line Checks that have been reported lost or stolen.

**Daily Periodic Rate and Annual Percentage Rate – Variable Rate Credit Line Portion.**   The Annual Percentage Rate applicable to the Variable Rate Portion of your Account is a variable rate equal to the Index, as defined below, plus a margin of 3.500 percentage points. The Daily Periodic Rate is equal to the Annual Percentage Rate divided by 365 (366 for billing cycles that begin in a leap year). The Daily Periodic Rate is rounded up to the seventh decimal place. The Daily Periodic Rate as of 12/09/03 is 0.013 percent, which corresponds to an ANNUAL PERCENTAGE RATE of 4.570 %. The Annual Percentage Rate includes only periodic interest and not other costs.

**Variable Rate Credit Line Portion Index.**   The "Index" is the weekly average rate of interest on 30-day Certificates of Deposit as published by the Federal Reserve Bank of New York in Statistical Release H.15. Changes in the Annual Percentage Rate will be based on the latest release published prior to the Sunday on or before the beginning of your billing cycle and will be effective on the first day of the billing cycle. If the Index is unavailable for any billing cycle, we will use the Index for the most recent preceding billing cycle in which the Index was available. If this original Index ceases to be published during the term of this Agreement, we will select a substitute index and margin. The substitute index will thereafter be the Index. The substitute index will have a historical movement substantially similar to the original Index, and the substitute index and margin will result in an Annual Percentage Rate at the time it is substituted that is substantially similar to the rate in effect at the time the original Index becomes unavailable. The Annual Percentage Rate will increase or decrease as the Index increases or decreases. An increase in the Index will result in increases in the Finance Charge which will result in an increase in the minimum monthly payment. The reverse will happen if the Index declines.

**Finance Charge Computation – Variable Rate Credit Line Portion.**   The Finance Charge applicable to the Variable Rate Credit Line Portion of your Account is comprised of a simple interest rate periodic Finance Charge and certain additional charges identified as Finance Charges in the "Account Opening Costs" and "Other Charges" sections below. We reserve the right to not include these additional charges to the calculation of Finance Charges. To compute the periodic Finance Charge on the Variable Rate Credit Line Portion of your Account for a billing cycle, we start with the outstanding principal balance of all Credit Line Draws at the beginning of the billing cycle, plus (1) any unpaid Finance Charges and (2) any past due Annual Fee. Each day during the billing cycle, we add to this amount any Credit Line Draws posted to the Variable Rate Credit Line Portion of your Account, and any Annual Fee that becomes past due. We subtract any payments or credits to Credit Line Draws, Finance Charge, or past due Annual Fees posted to your Account. This gives us the daily balance subject to Finance Charges for each day of the billing cycle. We multiply the daily balance subject to Finance Charges by the Daily Periodic Rate, which gives us the periodic Finance Charge for each day. The Finance Charge for all Credit Line Draws begins on the date posted to your Account and for the Annual Fee, on the day it becomes past due.

**Monthly Payments – Variable Rate Credit Line Portion.**

<u>Revolving Period</u> . During the Revolving Period, your minimum monthly payment for the Variable Rate Credit Line Portion will be equal to the amount of the Finance Charge accrued on that portion of your Account for the billing cycle, plus any Other Charges and optional credit insurance premiums, if applicable. In addition, your payment must include any amount that exceeds your Total Credit Commitment plus any amount past due. Your minimum monthly payment will not reduce your principal balance.

<u>Repayment Period</u> . During the Repayment Period, your minimum monthly payment for the Variable Rate Credit Line Portion for each billing cycle will be equal to (A) your outstanding principal balance plus any unpaid Annual Fee on that portion of your Account on the first day of the Repayment Period divided by 180, plus (B) the Finance Charge that accrued on that portion of your Account during the billing cycle, plus (C) optional credit insurance premiums, plus (D) any amount past due. We will continue to calculate the Finance Charge that applies to your Account in the same way that it was calculated during the Revolving Period.

At any time, you may pay us more than the minimum amount due without incurring a prepayment penalty.

These payments will be in addition to the minimum monthly payment due for the Fixed Rate Loan Portion of your Account, as described following.

00013

EXHIBIT " C "
PAGE 3 OF 16

CLS-3043-2-CA/0005   02-03
05-05-30A3NSPlaintiffs Exhibits
Page 20 of 109

Page 2 of 11

California
3043

Inoue vs. GMAC SCV 248256
Exhibit B
Page 3 of 17

Automatic Payment Service. ☐ If this box is checked, you have agreed that the minimum monthly payments on the Variable Rate Credit Line Portion will be made on the due date by automatic transfer from your N/A maintained with us. If on the due date of any payment your account does not have sufficient collected funds to make such transfer in full, no payment will be applied to the Account. This may result in additional Finance Charges and possible late charges. Either you or we may cancel this service for any reason by giving written notice to the other.

## FIXED RATE LOAN PORTION OF YOUR ACCOUNT

### How You Can Borrow - Fixed Rate Loan Portion.

You may establish Fixed Rate Loans on your Account up to the Total Credit Commitment during the Revolving Period unless you are in default or your credit privileges are suspended or terminated in accordance with this Agreement. The minimum amount of a Fixed Rate Loan is $5,000 and the maximum amount is subject to the Total Credit Commitment. You may establish Fixed Rate Loans as long as the number of Fixed Rate Loans at any one time does not exceed three during the billing cycle. You may use the proceeds of a new Fixed Rate Loan to pay off all or part of an existing Fixed Rate Loan. Each Fixed Rate Loan will have a fixed interest rate and term. At the end of the Revolving Period you will continue to pay on outstanding Fixed Rate Loans at the interest rate, term and payment agreed upon at the time you established the Fixed Rate Loan.

**Fixed Rate Loan Fees.** You pay a Fixed Rate Loan Fee FINANCE CHARGE of $75. You may pay the Fixed Rate Loan Fee at the time the Fixed Rate Loan is made, or the Fee may be financed, in which case it will be included in the principal balance of the Fixed Rate Loan and will be subject to periodic Finance Charge.

### Finance Charge Computation - Fixed Rate Loan Portion

The Annual Percentage Rate on each Fixed Rate Loan you establish with automatic payment service will be the sum of the "Fixed Rate Index" in effect at the time the Fixed Rate Loan is established, as defined below, plus a margin of either __5.250__ percentage points for Fixed Rate Loans from $5,000 to $19,999, or __3.750__ percentage points for Fixed Rate Loans of $20,000 or more. If automatic payment service is not selected, the margin used to determine the Annual Percentage Rate will be increased by 1/4 of one percentage point. The Daily Periodic Rate for each Fixed Rate Loan is equal to the Annual Percentage Rate for such Fixed Rate Loan divided by 365 (366 for billing cycles that begin in a leap year).

The "Fixed Rate Index" in effect will be the monthly average of five year Treasury Constant Maturities, as published by the Federal Reserve Bank of New York in Statistical Release (H. 15) just prior to the Sunday on or before the date documents are prepared for you to establish the Fixed Rate Loan. If the original Fixed Rate Index is unavailable for any reason, we will use the most recent figures available for the Fixed Rate Index or select a substitute Index and margin in the same manner as described for the Variable Rate Credit Line Portion.

For example, the following chart shows the Daily Periodic Rates and corresponding ANNUAL PERCENTAGE RATES for Fixed Rate Loans using the Fixed Rate Index in effect as of __12/09/03__.

| Fixed Rate Loan Amount | With Automatic Payment Service | | Without Automatic Payment Service | |
|---|---|---|---|---|
| | Daily Periodic Rate | APR | Daily Periodic Rate | APR |
| $ 5,000 to 19,999 | 0.023% | 8.540% | 0.024% | 8.790% |
| $20,000 or more | 0.019% | 7.040% | 0.020% | 7.290% |

The Annual Percentage Rate on each Fixed Rate Loan is determined in the manner described above at the time you establish the Fixed Rate Loan. As the Fixed Rate Index increases or decreases, the Annual Percentage Rate on Fixed Rate Loans established after the date of this Agreement will also increase or decrease. A higher Annual Percentage Rate will result in higher Finance Charges and a higher minimum monthly payment. However, once a Fixed Rate Loan is established, the Annual Percentage Rate for that Fixed Rate Loan will not change. The Annual Percentage Rate includes only periodic interest and not other costs.

EXHIBIT " C "
PAGE 4 OF 16

00014

CLS-3043-3-CA/0005  02-03
05-05-3043NSR
Plaintiffs Exhibits
Page 21 of 109

Page 3 of 11

California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 4 of 17

To compute the periodic Finance Charge for each Fixed Rate Loan for each billing cycle, we start with the principal amount of such Fixed Rate Loan at the beginning of the billing cycle. Each day during the billing cycle, we will subtract any payments of principal. This gives us the adjusted daily balance for each day of the billing cycle. We multiply the adjusted daily balance for each day of the billing cycle by the Daily Periodic Rate which gives us the periodic Finance Charge for each day of the billing cycle. We then add together the periodic Finance Charges for all of the days of the billing cycle to get the total periodic Finance Charge for that billing cycle. We will continue to calculate the Finance Charge that applies to each Fixed Rate Loan in the same way during both the Repayment Period and the Revolving Period.

Monthly Payments – Fixed Rate Loan Portion

The minimum monthly payment due on each Fixed Rate Loan will be an amount of principal and interest sufficient to amortize the Fixed Rate Loan over the term selected by you at the time the Fixed Rate Loan is established. If you select the optional Borrower Protection™ Plan, the monthly fee for the Plan will be added to this amount and included in your minimum monthly payment. You will be told the minimum payment and will have the option to select the payment due date at that time. This payment schedule will continue into the Repayment Period without change until the Fixed Rate Loan is paid in full. This payment will be in addition to the minimum monthly payment due for the Variable Rate Credit Line Portion of your Account, as described in this Agreement.

The Fixed Rate Loan will accrue interest on a simple interest basis which means that the amortization schedule is based on all the minimum payments being received on their exact due dates. Early payments will have the effect of reducing the final payment while late payments will cause the final payment to be higher.

If there are more than 30 days from the disbursement date to the first monthly payment, the periodic Finance Charge for the first billing cycle may be in excess of the amount due on the first payment due date.

Payments on Fixed Rate Loans may be made by (1) automatic repayment service from a checking or savings account maintained with us, or (2) by separate check. If the automatic repayment service is selected but subsequently terminated by you or us, the ANNUAL PERCENTAGE RATE and the margin for the Fixed Rate Loan will be increased by 1/4 of a percentage point resulting in a corresponding increase in your minimum monthly payment.

RULES ABOUT THE USE OF YOUR ACCOUNT

Legal Transactions. You agree that you will only use your Account for transactions that are legal where you reside. For example, Internet gambling transactions may be illegal in your state. Display by an on-line merchant of either our logo or a Card Company's logo does not mean that an Internet transaction is legal where you reside. We will not be liable if you engage in an illegal transaction.

Authorizations. Some transactions require our prior authorization. For security purposes, we may from time to time place or change limits on the number or amounts of transactions you make in a day at automated teller machines ("ATMs") or point of sale terminals. Such limitations may not be the same at every ATM or point of sale terminal. In addition, we may deny authorization to any method of accessing your Account if the Account has been suspended or terminated or if we suspect fraudulent activity. We shall not be liable for any failure to authorize a transaction for any of these reasons. However, you are liable for any transaction we authorize even if we should not have authorized it because you are or would be in default as a result of the transaction.

Transactions With Merchants. (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, you will be bound by that policy when you use your Account to buy goods or services from that merchant. (b) When using your Account to make travel or lodging reservations, you must obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, you must obtain the cancellation number that the merchant is required to give you. The merchant may charge you for a cancelled transaction unless you can provide us with a correct cancellation number. If you make reservations or purchases of any kind, such as a lodging reservation for several nights stay or a mail order purchase, your Account may be immediately charged for the full amount of the reservation or purchase, regardless whether you have received the goods or services requested at the time your Account is charged. (c) If you authorize a merchant to charge your Account for repeat transactions without your Account Access Card, then you must notify the merchant when you want to discontinue the repeat transactions or if your Account is closed or if a new Account or Account Access Card number is issued by us. Otherwise, you will be responsible to us for the amount of all such repeat transactions. (d) If you disagree with a transaction on your statement or have a dispute with a merchant as a result of a transaction, you will provide us with the information or assistance we reasonably request. Otherwise, you will pay us for any resulting loss we have, unless we are prohibited by applicable law from holding you liable for our loss. (e) If you make a transaction in a currency other than U.S. dollars, Card Company will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using Card Company's currency conversion procedures that are disclosed to institutions issuing Card Company's cards. The conversion rate on the processing date may differ from the rate on the date of your

00015

CLS-3043-4-CA/0005 02-03
05-05-3043NSR Plaintiffs Exhibits
Page 22 of 109

Page 4 of 11

EXHIBIT " C "
PAGE 5 OF 16    California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 5 of 17

transaction. (As of the time this document was last revised, Visa used a currency conversion rate of either: (1) a wholesale market rate or (2) a government mandated rate, increased by 1% ("Foreign Currency Margin"). In each case, Visa uses the rate in effect one day before the conversion date. The U.S. dollar amount and the "rate" shown on your statement for each foreign currency transaction include only the 1% retained by Visa.) In the event Card Company chooses to change the Foreign Currency Margin, the currency conversion rate, or the day on which the currency conversion rate is determined, then transactions on your Account made in a foreign currency and processed after the change will reflect the change.

## OTHER TERMS OF YOUR ACCOUNT

**Rate Cap.** The ANNUAL PERCENTAGE RATE applicable to the Variable Rate Credit Line Portion and any Fixed Rate Loan Portion of your Account during the Revolving Period and Repayment Period will not exceed a maximum of __18.000__ %. Other than this maximum Annual Percentage Rate limitation, there are no limitations on any increase or any decrease in the Annual Percentage Rate.

**Account Opening Costs.** When your Account is opened, you will pay the following charges. You may pay these charges separately or they will be added to the Outstanding Balance of your Account and treated as Finance Charges or Credit Line Draws, as the case may be.

| | | | |
|---|---|---|---|
| New Account Fee, a FINANCE CHARGE | $ N/A | Recording Fee | $ N/A |
| Appraisal Fee | $ N/A | Pest Inspection, a FINANCE CHARGE | $ N/A |
| Sales Escrow Fee | $ N/A | Soil Certification, a FINANCE CHARGE | $ N/A |
| Loan Escrow Fee, a FINANCECHARGE | $ N/A | BIA Approval Fee, a FINANCE CHARGE | $ N/A |
| Title Insurance Premium | $ N/A | Other | $ N/A |
| Tax Lien Service Fee, a FINANCE CHARGE | $ N/A | Other | $ N/A |
| Notary Fee | $ N/A | | |

**Early Closure Fee.** An Early Closure Fee is charged if you close your Account within three years of the open date: $600 within the first year, $400 within the second year and $200 within the third year. No Early Closure Fee is assessed if: a) Account has been open three years or more, or b) Property is sold after the first year.

**Other Charges.** We may also charge you the following charges in connection with your Account which will be added to the Outstanding Balance of the Variable Rate Credit Line Portion of your Account ("Other Charges").

Annual Fee. We will charge you a $ ___75.00___ Annual Fee (a **FINANCE CHARGE**) to maintain your Account. The first Annual Fee will be charged on your 13th billing cycle and annually thereafter during your Revolving Period. There is no Annual Fee for the first year. The Annual Fee will be non-refundable, and you shall owe it once it is posted to your Account, even if your Account is subsequently changed, suspended or terminated for any reason. The Annual Fee will be waived in years when the average Outstanding Balance for your Account is $20,000 or more. This average will be calculated based upon the Outstanding Balance for your Account on the last day of each of the 12 billing cycles preceding the billing cycle in which your Annual Fee would normally be charged.

Late Charge . If we do not receive the amount of your minimum monthly payment in full within fifteen days after your payment due date you will pay us a late charge equal to six percent (6%) of the unpaid portion of your minimum monthly payment with a minimum fee of $5.00.

Rejected Item Fee . You will pay a fee of $10.00 each time a Credit Line Draw is rejected for any reason, including but not limited to the following:
(A) Your Account has been suspended or terminated in accordance with this Agreement;
(B) If paid, the Credit Line Check would have caused your Outstanding Balance to exceed your Total Credit Commitment; or
(C) Your Credit Line Check is for less than $300.00.

Returned Item Fee . You will pay a returned item fee of $10.00 each time your payment is returned or if there are insufficient funds in your account when a payment is attempted through automatic repayment service.

Overlimit Fee . You will pay an overlimit fee of $10.00 each time you exceed your Total Credit Commitment.

Stop Payment Fee . You may place a stop payment on a Credit Line Check as long as the request is made in writing and received by us prior to the time the Credit Line Draw initiated by that Check is posted to the Account. You will pay us a Stop Payment Fee of $10.00 for such a request. We may require a written confirmation from you to continue a stop payment.

Statement Copy Fee . You will pay a statement copy fee of $2.00 for each statement copy requested.

CLS-3043-5-CA/0005   02-03
05-05-3043050119 Exhibits
Page 23 of 109

Page 5 of 11

EXHIBIT " C " California
PAGE 6 OF 66
ROGERS_GMAC_REV_048256                3043
Exhibit B
Page 6 of 17

**Increase of Fees and Charges.** To the extent permitted by applicable law, we may increase any or all of the Other Charges except the Annual Fee described above by five percent (5%) of the existing fee on each anniversary date of your Account. At our option, we may increase none, some, or all of the Other Charges except the Annual Fee. We will notify you of any increases to the extent required by law.

**Optional Credit Insurance and/or Borrowers Protection Plan.** You may buy optional credit insurance for the Variable Rate Credit Line Portion of your Account at the time the Account is opened. Credit insurance does not cover any Fixed Rate Loan. Credit insurance is not required for this Account to be opened, nor is it required to keep the Account open or to establish any Fixed Rate Loan. If you buy credit insurance for the Variable Rate Credit Line Portion of your Account, the amount of insurance premium will be charged to the Variable Rate Credit Line Portion of your Account. The maximum amount of insurance coverage for the Variable Rate Credit Line Portion is $50,000.

Fixed Rate Loans may be protected by the Borrowers Protection Plan. Protection options include Disability, Involuntary Unemployment, and Accidental Death; or Disability and Accidental Death; or Involuntary Unemployment and Accidental Death. Two Borrowers may purchase Protection for each Fixed Rate Option, but they must select the same coverage option, and there may be restrictions on which Borrowers may apply. To qualify, you must meet all requirements as set forth in the Addendum for the Borrowers Protection Plan. The maximum amount of coverage and term for each Fixed Rate Option is described in the Addendum to the Borrowers Protection Plan.

The Borrowers Protection Plan is optional and not required to obtain a new Fixed Rate Loan. For each Fixed Rate Loan, you must specifically request the Borrowers Protection Plan, and you must sign a separate Addendum to this Agreement, even if you obtained credit life insurance for the Variable Rate Credit Line Portion of your Account or the Borrowers Protection Plan for a prior Fixed Rate Loan.

Fees for the Borrowers Protection Plan are based on and payable with the regularly scheduled monthly payment of the Fixed Rate Loan. The maximum term of the Borrowers Protection Plan is the shorter of the Fixed Rate Loan term or 120 months.

We may allow you to exceed the Total Credit Commitment temporarily and from time to time, to accommodate these amounts.

**Your Unpaid Balance.** If you or a person you authorize asks us for a written statement of the amounts you owe under this Agreement, we may charge the maximum permitted by law for furnishing the statement.

**Our Security Interest.** Your obligations under this Agreement are secured by a security interest

☐ _____
_____
_____
_____

(the "Manufactured Home") and all additions to and replacements and proceeds of the property described.
Additional terms regarding this collateral are set forth on the eighth page of this Agreement.

☒ A Security Instrument on your real property located at
     3735 COFFEY LANE, SANTA ROSA, CA 95403

This line of credit is not secured by any other property.

By signing this Agreement, you agree to do all things you are required to do and pay all sums you are required to pay under the Security Instrument. If we incur any expense because you do not fulfill all of your obligations under this Agreement or the Security Instrument, we may charge the expenses to your Account as a Credit Line Draw or we can demand immediate payment from you. Regardless of any other agreement you have with us, the security interest you granted to us in the Property will not secure any other obligation you have with us, and your obligations under this Agreement will not be secured by any other collateral or other security interest held by us other than the security interest described in this section. Notwithstanding anything to the contrary in this Agreement, if the Outstanding Balance exceeds your Total Credit Commitment, this excess is secured by the Security Instrument only to the extent that the excess is attributable to (a) unpaid Finance Charges, Other Charges, or any unpaid charges for credit insurance or Borrowers Protection Plan or (b) expenditures incurred by us because of your failure to fulfill your obligations under this Agreement or the Security Instrument.

CLS-3043-6-CA/0005  02-03
05-05-3043NSB
Plaintiffs Exhibits
Page 24 of 109

Page 6 of 11

EXHIBIT " C "                California
PAGE 7 OF 16           3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 7 of 17

**Release of Collateral.**    After your Account is terminated and paid in full, you will pay the then-applicable Recording and Reconveyance Fee. These charges may be increased to the maximums permitted under applicable state law.

**Assumptions.**    Your rights and responsibilities under this Agreement may not be assumed by another person.

**Insurance.**    You will obtain and maintain insurance for fire and extended-coverage for all improvements now or hereafter existing on the Property equal to 100% of the full insurable replacement value of such improvements. Upon our notice, you must also obtain insurance against floods, earthquakes and other hazards as we may reasonably require. This insurance is not available from or through us. You may choose your own insurance provider, but the insurance company and each policy are subject to our approval. You will furnish us with a copy of each policy, and renewal of same, and each policy will name us a loss payee. You may also be required to obtain title insurance at the inception of your Account or as a condition for our subordination to another lien.

**Owner Occupancy.**    You understand and acknowledge that as a condition of our establishing the Account and making Credit Line Draws and Fixed Rate Loans under the terms of this Agreement, the Property must be occupied by you as your primary residence. At the date of this Agreement and during the term of this Agreement you will occupy the Property as your primary residence.

**Sale or Transfer of the Property.**    If you sell or transfer the Property, you must pay the full outstanding balance on your Account immediately. The Security Instrument covering the Property contains a provision that "If Trustor sells or transfers all or part of the Property or any interest in the Property (or if Trustor's beneficial interest in the Property is altered in any way) without Lender's prior written consent, Lender may, at Lender's option, declare all sums secured by this Deed of Trust to be immediately due and payable."

**Application of Payment.**    For both the Variable Rate Credit Line Portion and the Fixed Rate Loan Portion, for the purpose of computing Finance Charges payments will be credited as of the date of receipt and applied in any manner or priority we choose, reserving the right to change the manner or priority at any time, without notice.

**Changes to Your Account by the Bank - Termination.**    We may terminate your privilege to obtain Credit Line Draws and Fixed Rate Loans under this Agreement and, at our option, declare the entire Outstanding Balance immediately due and payable, without notice or demand if:

- You engage in fraud or material misrepresentation in connection with the Account;
- You do not meet your repayment obligations in this Agreement;
- You act or fail to act in a way that adversely affects the Property or any of our rights in the Property, including, but not limited to, your transfer of title to the Property or your sale of the Property without our permission;
- You are an executive officer of lender and the aggregate amount of credit extended to you by lender or other banks exceeds the amounts permitted under federal law or regulation.

If any of these events occurs we may, in the alternative, (i) suspend your Account privileges as described below in the "Temporary Suspension" section, (ii) end your Revolving Period early and start your Repayment Period as described below in the "Changes to Your Account at Your Request" section; or (iii) enforce the terms of the Security Instrument, including those that provide for trustee's sale or judicial foreclosure.

**Changes to Your Account by the Bank - Temporary Suspension.**    We can temporarily suspend your Account privileges by refusing to make additional Credit Line Draws and Fixed Rate Loans on your Account or by reducing your Total Credit Commitment if:

- Your home's value significantly declines below the appraised value it had when we approved you for the Account.
- We reasonably believe that you will not be able to meet the Account's repayment terms because your financial situation has changed materially.
- You default on any of the material obligations under the Agreement or the Security Instrument, including, but not limited to, the following:
    - If you borrow from your Account to make payment to your Account.
    - If you do not allow us to appraise the Property at our request.

00018

CLS-3043-7-CA/0005    02-03
05-05-3043NSB
Plaintiffs Exhibits
Page 25 of 109

Page 7 of 11

EXHIBIT " C "
PAGE 8 OF 17   California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 8 of 17

- You do not provide information requested to re-evaluate your creditworthiness.
- You permit an intervening lien to be filed against the Property that would take priority over future advances under the Agreement
- If you cease to occupy the Property as your primary residence.

- Government action either prevents us from imposing the Annual Percentage Rate provided in this Agreement, under the Account, or impairs our security interest under the Security Instrument by causing the value of our security interest to fall below 120% of the amount of your Total Credit Commitment.
- A government authority notifies us that making additional Credit Line Draws and Fixed Rate Loans would constitute an unsafe and unsound business practice.
- The sum of the Index plus the margin reaches the maximum Annual Percentage Rate set for your Account (as shown above).

Our suspension of your Account privileges as described above will be effective as of the day we mail the written notice to you. During suspension, you must continue to pay at least the minimum monthly payment due each month. When each of the reasons for suspending your Account privileges ceases to exist, and you request us to reinstate your Account privileges, we will reinstate your Account privileges. If your Account privileges are suspended, your Repayment Period will begin at the time it would have begun had no suspension occurred.

**Changes to Your Account at Your Request.** At any time, you may request that we end the Revolving Period early by notifying us in writing. At the end of the Revolving Period, or earlier if directed by you, you will no longer be able to obtain Credit Line Draws or Fixed Rate Loans. Your Outstanding Balance will be payable in accordance with the terms stated for the Repayment Period. The Revolving Period cannot be reopened when it has been ended at your request. If more than one person signs this Agreement, we may treat a request by one of you under this section as a request by all of you.

**Return of Checks and Account Access Cards.** At our request, you will return to us any unused Credit Line Checks and Account Access Cards if your Account is terminated, your Account privileges are suspended, or your Revolving Period ends.

**Change in Terms.** We may make changes to the terms of this Agreement if (a) you specifically agree to the change, in writing, at the time of the change; (b) the change will unequivocally benefit you throughout the remainder of the existence of the Account; or (c) the change is insignificant.

**Check Copies.** You will retain a record of each Credit Line Check you write. We will keep copies of canceled Credit Line Checks for eight (8) years. When you request a copy, you will write a letter giving us your Account number, the Credit Line Check number and amount, and the date that the Credit Line Check posted to your billing statement.

**Credit Information.** We may re-evaluate your creditworthiness at any time. You will provide us with information we need for our re-evaluation, and you will allow us to appraise the Property at any time and as often as we wish (at no cost to you after the first appraisal unless the appraisal is performed at your request for a Total Credit Commitment increase or after your Account is suspended or terminated). From time to time we may share information about our experience with you with others including Bank of America Corporation (or any successor company) and its subsidiaries and affiliated companies. We may also share information contained in any applications and information we may obtain about you from outside sources with our affiliates, provided that you may instruct us that you prefer that we not share this application and outside information with our affiliates by sending your request to Bank of America, Attn: Data Integrity, P.O. Box 27025, Richmond, VA 23261-7025, and including your name, address, phone number, account number(s) and social security number. If you make this election, certain products or services may not be made available to you.

**Telephone Monitoring.** To the extent not prohibited by law, our supervisory Quality Control personnel may listen to telephone calls between you and our customer service employees for the purpose of monitoring the quality of service you receive.

**Collection Costs.** To the extent permitted by law, you agree to reimburse us, on demand, for all court costs, expenses, and attorneys' fees (including allocated cost of our salaried attorneys) incurred by us to enforce this Agreement, whether or not a lawsuit is filed or at trial or any appeal thereafter. At our option, we may add these costs to your Outstanding Balance.

**Tax Effects.** You should consult a tax advisor regarding the deductibility of interest and charges assessed to your Account.

**Notices From You.** You will notify us immediately in writing of (1) a change in your home or billing address, (2) a change in ownership of the property, (3) loss of your Credit Line Checks or Account Access Cards, (4) unauthorized use of your Account. Notices must be sent or delivered to the address we specify on your billing statement and will be effective upon receipt.

00019

CLS-3043-8-CA/0005   02-03
05-05-3043NSB
Plaintiffs Exhibits
Page 26 of 109

Page 8 of 11

EXHIBIT " C "
PAGE 9 OF 17   California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 9 of 17

**Notices From Us.** To the extent required by law, we will notify you of any action we take on your Account at the address indicated for you in our records. Otherwise, we may take action under this Agreement without notice or demand.

**Joint and Individual Liability.** If more than one person signs this Agreement, each of you (a) shall have equal right to use the Account up to the Total Credit Commitment, and (b) shall be individually and jointly liable for all amounts owed under this Agreement.

**Authorized Use.** The Credit Line Checks and Account Access Cards issued to you will be used only by a person whose name is printed on the front of the Credit Line Checks and who has signed this Agreement. If you permit anyone else to use your Credit Line Checks and Account Access Cards without our consent, you will be obligated to pay for any Credit Line Draws obtained by that person plus any Finance Charge and Other Charges attributable to such Credit Line Draws. You are not liable for unauthorized use of your Account Access Card. Notify us promptly if you believe your Account Access Card has been lost or stolen or if you discover any unauthorized transactions. We may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions. If one Account Access Card is reported lost or stolen, we reserve the right to cancel all Account Access Cards and issue new ones during the Revolving Period, if your account has not been suspended or terminated.

**Severability.** If any provision of this Agreement is determined to be unenforceable, such determination shall not affect the validity of the remaining provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law and California law.

**Enforceability.** Our failure to exercise any of our rights under this Agreement will not waive any of these rights in the future. If any term of this Agreement is found to be unenforceable, all other provisions will remain in full force. We may accept any check or draft marked "payment in full" without losing any of our rights under this Agreement or Security Instrument.

**REQUEST TO ISSUE ACCOUNT ACCESS CARD AND PIN.** Unless issuance of an account access card is prohibited by law, or unless the property securing this Agreement is located in the states of Texas or New York (in which case, all references in this Agreement to an "Account Access Card" are deleted), during the Revolving Period, any of you may request us to issue to each of you signing this Agreement or to fewer of you and to any other person who may be later added as a borrower a card as described in this section, enabling each of you individually to access the Account, and an associated Personal Identification Number ("PIN"). Any of you may change the PIN for all cards, and any of you may request us to cancel or take any other action with regard to all such cards. All requests or directions, at our option, may be made verbally or in writing. Each of you is liable for all Account Access Card transactions. You agree that the cards will be used only as described in this Agreement. You further agree that the cards may be issued by us through an arrangement we may have from time to time with a card issuer (the "Card Company"), such as Visa. (Visa is a registered trademark of Visa International.) All references in this Agreement to an "Account Access Card" shall mean the card or cards described in this paragraph.

**ADDITIONAL TERMS.** The following additional terms apply to this line of credit only if indicated under "Our Security Interest" above.

**Security.** You agree to: (1) keep the Manufactured Home constituting security for the loan in good condition and repair and be responsible for all loss or damage to the Manufactured Home; (2) comply with all laws and regulations pertaining to the Manufactured Home and its use; (3) pay when due all taxes, licenses and other charges on or relating to the Manufactured Home; (4) execute any writings, deliver any documents, and pay for any filings deemed necessary by us to protect our rights in the Manufactured Home as security for the Account; (5) permit us to inspect the Manufactured Home upon request, and to provide us with such information as we may request concerning it; (6) notify us promptly if your address or the address at which the Manufactured Home is kept is changed from that set forth in "Our Security Interest" above, and of any claims, confiscations, loss or theft of the Manufactured Home; (7) keep the Manufactured Home free of all claims, confiscations, liens, levies, encumbrances, and security interests (other than ours) and not sell or otherwise transfer it or any right of interest therein; and (8) not install property on a permanent foundation system or otherwise affix the Manufactured Home to land in any way which could alter its legal character as personal property, without our prior written consent.

**Insurance.** You agree to keep the Manufactured Home insured against loss by fire, hazards included within the term "Extended Coverage" and any other hazards, including floods or flooding, for which we require insurance. You agree to maintain this insurance in the amounts and for the periods that we require. You may buy this insurance from any insurance company authorized to do business in California subject to our right to refuse any insurance company for reasonable cause. All such insurance policies and renewals shall be acceptable to us. If you fail to maintain coverage described above, we may, at our option, obtain coverage to protect our rights in the Manufactured Home. You understand that any insurance purchased by us may be for the remaining term of your Account or for any shorter term as determined by us and may ensure only our interest in the Manufactured Home, and so may not cover any equity you may have in the Manufactured Home. In addition, any insurance purchased by us may cost substantially more than similar insurance that you may be able to purchase on your own behalf. At our option, the cost of any such insurance purchased by us shall be payable on demand or shall be added to the balance of the Variable Rate Credit Line Portion of your Account, and such additional amount shall be subject to Periodic Finance Charges as described in this Agreement.

00020

CLS-3043-9-CA/0005   02-03
05-05-3043NSB
Plaintiffs Exhibits
Page 27 of 109

Page 9 of 11

EXHIBIT " C "
PAGE 10 OF 17   California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 10 of 17

All insurance policies and renewals obtained by you relating to the Manufactured Home, including those not required by us, together with all compensation, awards, damages, right of action and proceeds derived therefrom, are hereby assigned to us, and shall include a loss payable endorsement with us as the loss payee or lien holder. We will have the right to hold the policies and renewals. If we require, you will promptly give to us all receipts of paid premiums and renewal notices. In the event of loss, you will give prompt notice to the insurance carrier and us. We may make proof of loss if not made promptly by you.

At our discretion, the amount collected under any insurance policy attributable to damage to the Manufactured Home from any insured peril, shall be received, controlled and disbursed by us. Unless you and we otherwise agree in writing, all insurance proceeds from any insurance policy obtained by you, including those not required by us, will be applied to restoration, repair, or replacement of the Manufactured Home damaged if such is economically feasible and our security is not lessened. If not economically feasible or our security would be lessened, the insurance proceeds will be applied to the balance of the Account, first to the Variable Rate Portion and then to any Fixed Rate Loan Portions, whether or not then due, with any excess paid to you. If you abandon the Manufactured Home, or do not answer a notice from us that the insurance carrier has offered to settle a claim within 30 days, then we may collect the insurance proceeds. We may use the proceeds to repair, restore, or replace the Manufactured Home or to pay the balance of the Account, whether or not then due. The 30-day period will begin when the notice is given.

Unless you and we otherwise agree in writing, any application of proceeds to the principal of the Account will not extend or postpone the due date of the monthly payments or change the amount of the payments. If the Manufactured Home is acquired by us after a default under the Account, your right to any and all insurance policies and proceeds resulting from damage to the Manufactured Home prior to the acquisition will pass to us to the extent of the balance of the Account immediately prior to the acquisition.

**Bank as Agent.** You appoint and authorize us to act as your true and lawful agent to make all necessary transfer of ownership of the property and to make, execute, and deliver all necessary instruments, assignments and transfer of ownership.

**Other Rights of Bank.** In addition to our rights under this Agreement, we shall have the rights and remedies of a secured party under the California Uniform Commercial Code, or other applicable law, and all rights and remedies shall, to the extent permitted by law, be cumulative.

00021

CLS-3043-10-CA/0005   02-03
05-05-3043NSR
Plaintiffs Exhibits
Page 28 of 109

Page 10 of 11

EXHIBIT " C "
PAGE 11 OF 17
California
3043
Inoue vs. GMAC SCV 248256
Exhibit B
Page 11 of 17

Each person signing below acknowledges receiving on the date shown a complete copy of this Agreement and, if the Property securing this Agreement is your primary residence, two copies of the Notice of Right to Cancel this Agreement. You also acknowledge that you have previously received the home equity application disclosures applicable to this Account in the "Home Secured Credit" disclosure booklet, which includes the "Important Terms" and "What You Should Know About Home Equity Lines of Credit" disclosures.

I(we) have read and hereby agree to all terms and conditions of this Agreement.

BORROWER:

X: _____
HITOSHI INOUE                    (Date)

BORROWER:

X: _____
                                 (Date)

BORROWER:

X: _____
                                 (Date)

BORROWER:

X: _____
                                 (Date)

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we have sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.
After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Total Credit Commitment. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.
If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone to whom we report you that you have a question about your bill, and we must tell you the name of anyone to whom we reported you. We must tell anyone to whom we report you that the matter has been settled between us when it finally is settled.
If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if the bill was correct.
Special Rule for Account Access Card Purchases. If you have a problem with the quality of goods or services that you purchased with an Account Access Card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

00022

CLS-3043-11-CA/0005   02-03
05-05-3043NSR
Plaintiffs Exhibits
Page 29 of 109

Page 11 of 11

EXHIBIT " C "
PAGE 12 OF 17
Inoue vs. GMAC SCV 248256
Exhibit B
Page 12 of 17

California
3043

Submitted for recordation by, and when recorded, return to:

**Bank of America**

| | |
|---|---|
| Branch | Consumer Collateral Tracking |
| Address | 9000 Southside Blvd, Bldg. 700 |
| City | Jacksonville |
| State | FL |
| Zip | 32256 |
| Loan #: | 318682 40106348299 |
| Reference # | 010102-033360644190 |

COPY

Space above this line for Recorder's Use

## SHORT FORM DEED OF TRUST
### (EQUITY MAXIMIZER® ACCOUNT)

This Deed of Trust is made on **9th December, 2003** by

HITOSHI INOUE, AN UNMARRIED PERSON

(collectively and individually "Trustor"); Equitable Deed Company ("Trustee"); and the beneficiary, Bank of America, N.A. ("Bank"). Trustee is a subsidiary of Bank. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust. The words "I," "me," and "my" in this Deed of Trust refer to the Trustor, whether one or more.

Bank and I agree:

**1. Property Security.** For the purpose of securing the obligations described below, I irrevocably grant, convey, transfer and assign to Trustee, in trust with power of sale, the property located in

SONOMA County, California described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

with the street address: 3735 COFFEY LANE, SANTA ROSA, CA 95403
and with Parcel No. 058-032-016-000    and including all improvements and fixtures now or later erected on the property, and all easements, rights, appurtenances and fixtures now or later a part of or related to the above described property (collectively the "Property").

**2. This Deed of Trust secures:**
- All obligations of the borrowers in the Equity Maximizer Agreement and Disclosure, dated __12/09/03__
  and naming HITOSHI INOUE
  as borrowers, for a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement. The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ 30,000.00 , allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and
- Trustor's performance of each obligation in this Deed of Trust.

CLS-776-1-CA/0008   4-02    Page 1 of 2    EXHIBIT " C "    Bank of America

00023

Plaintiffs Exhibits
Page 30 of 109

PAGE 13 OF 17
Inoue vs. GMAC ECV 248256
Exhibit B
Page 13 of 17

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc.).

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in SONOMA _____ County 07/13/99 _____, as Instrument 9989234 _____ in Book/Reel and _____ at Page/Image _____ of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

Signature

HITOSHI INOUE

Mailing Address for Notices:
Street          City and State

3735 COFFEY LANE SANTA ROSA, CA 95403

## GENERAL ACKNOWLEDGMENT

State of California
County of _____

On _____ before me, _____, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (SEAL)

CLS-776-2-CA/0008  4-02                    Page 2 of 2                     Bank of America

00024
Plaintiffs Exhibits
Page 31 of 109

EXHIBIT " C "
PAGE 14 OF 17
Inoue vs. GMAC etc. #8256
Exhibit B
Page 14 of 17

DO NOT RECORD

3. **Insurance.** I will keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Bank requires insurance. I will maintain this insurance in the amounts and for the periods that Bank requires. I am free to buy this insurance from any insurance company authorized to do business in California subject to Bank's right to refuse any insurance company for reasonable cause. All such insurance policies and renewals must be acceptable to Bank. If I fail to maintain coverage described above, Bank may, at its option, obtain coverage to protect Bank's rights in the Property in accordance with Paragraph 7.

All insurance policies and renewals obtained by me related to the Property, including those not required by Bank, together with all compensation, awards, damages, rights of action and proceeds derived therefrom are hereby assigned to Bank and must name Bank as loss payee under a standard mortgagee loss payee clause. Bank will have the right to hold the policies and renewals. If Bank requires, I will promptly give to Bank all receipts of paid premiums and renewals notices. In the event of loss, I will give prompt notice to the insurance carrier and Bank. I authorize Bank to make proof of loss if not made promptly by me.

At the discretion of Bank, the amount collected under any insurance policy attributable to damage to the Property from any insured peril shall be received, controlled and disbursed by Bank. Unless Bank and I otherwise agree in writing, all insurance proceeds from any insurance policy obtained by me, including those not required by Bank will be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Bank's security interest is not lessened. If the restoration or repair is not economically feasible or Bank's security would be lessened, the insurance proceeds will be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to me. If I abandon the Property, or do not answer a notice from Bank that the insurance carrier has offered to settle a claim within 30 days, then Bank may collect the insurance proceeds. Bank may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

Unless Bank and I otherwise agree in writing, any application of proceeds to principal will not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If the Property is acquired by Bank under this Deed of Trust, my right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition will pass to Bank to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition.

4. **Property Maintenance.** I will keep and maintain the Property in good repair. If this Deed of Trust is on a leasehold, I will comply with the terms of any lease. If this Deed of Trust is on a unit in a condominium or planned unit development ("PUD"), I will perform all of my obligations under the Covenants, Conditions and Restrictions (the "Declaration"), Articles of Incorporation, Trust Instrument or any equivalent documents which create the homeowners' association or equivalent entity owning or managing the common areas and facilities of the condominium or PUD (the "Owners' Association") and any bylaws or other rules or regulations of the Owners' Association. I will promptly pay, when due, all dues and assessments imposed by the Owners' Association. In the event of a distribution of hazard insurance proceeds, in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the condominium or PUD, any proceeds payable to me are hereby assigned and shall be paid to Bank, and Bank, at its option, may apply such proceeds to restoration or repair of the Property or to sums secured by this Deed of Trust. I will take such actions as may be reasonable to insure the Owners' Association maintains a public liability insurance policy acceptable in form, amount and extent of coverage to Bank. I will not, except after notice to Bank, and with Bank's written consent, either partition or subdivide the Property or consent to: (a) the abandonment or termination of the condominium or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain; (b) any amendment to any provision of the Declaration or other documents creating or governing the Owners' Association if the provision is for the express benefit of Bank; (c) termination of professional management and assumption of self-management of the Owners' Association; or (d) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners' Association unacceptable to Bank.

00025

CLS-776-3-CA/0008    4-02

Bank of America

EXHIBIT " C "

Inq#A/B/GMAC SC/P465661 7
Exhibit B
Page 15 of 17

Plaintiffs Exhibits
Page 32 of 109

DO NOT RECORD

5. **Environmental Responsibilities.** To my knowledge, there has been no disposal, discharge, deposit, injection, dumping, leaking, spilling, placing or escape of any toxic or hazardous substance, waste, pollutant or contaminant (as those items are defined under federal and state laws) on, in, under, or from the Property, and there is, and will be, no facility in, or on the Property which is to be used for the treatment, storage or disposal of any toxic or hazardous substance, waste, pollutant or contaminant (as defined under federal and state laws). I shall indemnify and hold Bank harmless from and against all claims, liabilities, proceedings, suits, losses, damages (including without limitation punitive damages), judgments and environmental response and clean-up costs, fines, penalties and expense (including without limitation reasonable attorneys' fees, costs and expenses incurred in investigating and defending against the assertion of any such liabilities, regardless of merit), which may be asserted against, sustained, suffered or incurred by Bank because of the existence of any such toxic or hazardous substance, waste, pollutant or contaminate. This indemnity shall include, without limitation, claims asserted by any federal or state governmental agency or any private party and shall continue in effect following any foreclosure, release and reconveyance of this Deed of Trust or other realization upon the security of Bank.

6. **Prior Liens.** I will perform all of my obligations under any mortgage, deed of trust, or other security instrument which creates a lien having priority over the lien of this Deed of Trust. I will pay all taxes, assessments and charges resulting from any lien having priority over this Deed of Trust, and leasehold payments or ground rents, if any.

7. **Protection of Bank's Security Interest.** If I fail to perform my obligations under this Deed of Trust, or if any action or proceeding adversely affects Bank's interest in the Property, Bank may, at Bank's option, take any action reasonably necessary (including, without limitation, paying expenses and attorneys' fees) to perform my obligations or to protect Bank's interest. Any sums that Bank pays in accordance with this Paragraph will be an additional indebtedness secured by this Deed of Trust. These payments will be subject to finance charge in accordance with the variable rate terms of the Agreement and will be due and payable by me immediately upon Bank's demand.

8. **Inspection.** Bank may enter and inspect the Property, after giving me reasonable prior notice.

9. **Condemnation.** I assign to Bank the proceeds of any award or claim for damages arising from any condemnation or taking of all or part of the Property, (and if the Property is a unit in a condominium or PUD, the common areas and facilities, or any part thereof), or for any conveyance instead of condemnation. The proceeds will be paid to Bank.

10. **Not Released from Liability; Forbearance by Bank not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Bank to me, any borrower under the Agreement or any successor in interest shall not operate to release from liability me, or any borrower under the Agreement or any successors in interest. Bank shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by me and my successors in interest. Any forbearance by Bank in exercising any right or remedy hereunder, or otherwise afforded by law, shall not be a waiver of, or preclude the exercise of, any such right or remedy.

11. **Successors in Interest; Joint and Individual Liability; Co-Signers.** This Deed of Trust will bind and benefit the successors in interest of Bank and me, subject to Paragraph 14 below. If more than one Trustor is signing this Deed of Trust, my obligations will be joint and individual. Any Trustor who is not a borrower under the Agreement is: (a) signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee according to this Deed of Trust; (b) not personally liable for obligations under the Agreement; and (c) agreeing that Bank and a Trustor who is a borrower under the Agreement may extend, modify, forbear, or make any other agreements related to this Deed of Trust without that Trustor's consent, and without releasing that Trustor from this Deed of Trust or any extension or modification of this Deed of Trust.

12. **Beneficiary Statement; Payoff Demand Statement.** Bank may collect a fee not to exceed the maximum amount permitted by law for furnishing a beneficiary statement, payoff demand statement, or any similar statement as provided by § 2943 of the Civil Code of California.

13. **No Release.** I will not be released from liability under this Deed of Trust until Trustee, acting with Bank's authority, executes and records a deed of reconveyance that releases me from this obligation under the Deed of Trust.

14. **Property Transfer; Due-On-Sale.** If I sell or transfer all or part of the Property or any interest in the Property (or if my beneficial interest in this Property is altered in any way) without Bank's prior written consent, Bank may, at Bank's option, declare all sums secured by this Deed of Trust to be immediately due and payable.

CLS-776-4-CA/0008   4-02                                                                              Bank of America

00026
Plaintiffs Exhibits
Page 33 of 109

EXHIBIT " C "
IMAGE GMAC SOF 232267
Exhibit B
Page 16 of 17

DO NOT RECORD

**15. Default.**  The occurrence of any of the following will be deemed to be an event of default: (a) I engage in fraud or material misrepresentation in connection with the Agreement or the account established pursuant to the Agreement; (b) I do not meet my repayment obligations in the Agreement; or (c) I act or fail to act in a way that adversely affects the Property or any of Bank's right in the Property, including, but not limited to, the sale or transfer of the Property without Bank's prior written consent, unless prohibited by law. If I commit an event of default, at Bank's option, Bank may require immediate payment in full of all sums secured by this Deed of Trust without demand and may invoke the power of sale and any other remedies permitted by law. Bank shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this paragraph, including, but not limited to, reasonable attorneys' fees (including allocated cost of Bank's salaried attorneys, to the extent permitted by law).

If Bank invokes the power of sale, Bank shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Bank's election to have the Property sold and shall have the notice recorded in each county in which the Property or some part thereof is located. Bank or Trustee shall give notice of sale in the manner prescribed by law. Trustee shall give public notice of sale to the persons and in the manner prescribed by law. After the lapse of time required by law, Trustee, without demand on me, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Bank or Bank's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expense of the sale, including but not limited to, reasonable trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any to the person or persons legally entitled thereto.

**16. Substitution of Trustee.**  At Bank's option, Bank may from time to time appoint a substitute trustee to replace Trustee by executing an instrument and recording it with the Recorder in the county stated above. This provision will supersede any other provision for trustee substitution.

**17. Request for Notices.**  Bank requests that copies of notice of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Bank's address as set forth on page one of this Deed of Trust. Any notice to me provided for in this Deed of Trust shall be given by delivering it by first class mail unless law requires use of another method. If a mailing address appears below for any Trustor, Bank's notices to that Trustor will be mailed to the address shown. Otherwise, notices will be sent to Trustor at the Property address shown on the first page of this Deed of Trust or at such other address as I shall designate by written notice to Bank. Any notice to Bank shall be given by first class mail to Bank's address on the first page of this Deed of Trust or any other address Bank designates by notice to me. Any notice provided for in this Deed of Trust shall be deemed to have been given me or Bank when given as provided in this paragraph.

**18. Leasehold.**  If this Deed of Trust is on a leasehold; I shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease creating said estate and interest, and I shall not, without the express written consent of Bank, alter or amend said ground lease. Trustor covenants and agrees that there shall not be a merger of the ground lease, or the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common ownership, unless Bank shall consent in writing to such merger; if I shall acquire such fee estate, then this Deed of Trust shall simultaneously and without further action be spread so as to become a lien on such fee estate.

**19. Governing Law; Enforceability.**  This Deed of Trust will be governed by federal law and California law. In the event that any provision or clause of this Deed of Trust or the Agreement conflict with law, such conflict shall not affect other provisions of the Deed of Trust or the Agreement which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Agreement are declared to be severable. Bank's failure to exercise any right or remedy under this Deed of Trust will not waive Bank's rights in the future.

**20. Reconveyance.**  Upon payment of all sums secured by this Deed of Trust, and Bank has no further obligations to honor requests for Credit Line Draws under the Agreement, Bank shall request Trustee to reconvey the Property and also shall return this Deed of Trust and Agreement evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all costs of reconveyance and recordation, if any.

CLS-776-5-CA/0008   4-02                                                                                              Bank of America

000227

Plaintiffs Exhibits
Page 34 of 109

EXHIBIT " C "
PAGE 17 OF 17
Inoue vs. GMAC-SCV 248266
Exhibit B
Page 17 of 17