# EXHIBIT A

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 2 of 180

EX-10 2 qo3ssfinal.htm EX 10.1

EXECUTION COPY

RESIDENTIAL ACCREDIT LOANS, INC.,

Company,

RESIDENTIAL FUNDING CORPORATION,

Master Servicer,

and

DEUTSCHE BANK TRUST COMPANY AMERICAS,

Trustee

SERIES SUPPLEMENT,

Dated as of March 1, 2006,

TO

STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT
dated as of March 1, 2006

Mortgage Asset-Backed Pass-Through Certificates

SERIES 2006-QO3

---

TABLE OF CONTENTS

PAGE

ARTICLE I      DEFINITIONS............................................................4

        Section 1.01.    Definitions......................................................4

        Section 1.02.    Determination of LIBOR..........................................29

        Section 1.03.    Use of Words and Phrases........................................30

ARTICLE II     CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES..........30

        Section 2.01.    Conveyance of Mortgage Loans....................................30

        Section 2.02.    Acceptance by Trustee...........................................30

        Section 2.03.    Representations, Warranties and Covenants of the Master
                         Servicer and the Company.......................................30

        Section 2.04.    Representations and Warranties of Sellers.......................34

        Section 2.05.    Execution and Authentication of Certificates/Issuance of
                         Certificates Evidencing Interests in REMIC I Certificates.......34

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A

Pg 3 of 180

Section 2.06.    Conveyance of REMIC I Regular Interests; Acceptance by the Trustee.........................................................34

Section 2.07.    Issuance of Certificates Evidencing Interest in REMIC II.........34

Section 2.08.    Purposes and Powers of the Trust...............................34

Section 2.09.    Agreement Regarding Ability to Disclose........................34

ARTICLE III      ADMINISTRATION AND SERVICING OF MORTGAGE LOANS...........................36

ARTICLE IV       PAYMENTS TO CERTIFICATEHOLDERS...........................................40

Section 4.01.    Certificate Account............................................40

Section 4.02.    Distributions..................................................40

Section 4.03.    Statements to Certificateholders; Statements to the Rating Agencies; Exchange Act Reporting.................................45

Section 4.04.    Distribution of Reports to the Trustee and the Company; Advances by the Master Servicer.................................45

Section 4.05.    Allocation of Realized Losses..................................45

Section 4.06.    Reports of Foreclosures and Abandonment of Mortgaged Property....47

Section 4.07.    Optional Purchase of Defaulted Mortgage Loans..................47

Section 4.08.    Surety Bond....................................................47

Section 4.09.    Basis Risk Shortfall Reserve Fund..............................47

ARTICLE V        THE CERTIFICATES.........................................................48

ARTICLE VI       THE COMPANY AND THE MASTER SERVICER......................................49

ARTICLE VII      DEFAULT..................................................................50

ARTICLE VIII     CONCERNING THE TRUSTEE...................................................51

ARTICLE IX       TERMINATION..............................................................52

ARTICLE X        REMIC PROVISIONS.........................................................53

Section 10.01.   REMIC Administration...........................................53

Section 10.02.   Master Servicer; REMIC Administrator and Trustee Indemnification................................................53

Section 10.03.   Designation of REMIC...........................................53

Section 10.04.   Distributions on the REMIC I Regular Interests..................53

Section 10.05.   Compliance with Withholding Requirements.......................53

ARTICLE XI       MISCELLANEOUS PROVISIONS.................................................54

Section 11.01.   Amendment......................................................54

Section 11.02.   Recordation of Agreement; Counterparts.........................54

Section 11.03.   Limitation on Rights of Certificateholders.....................54

Section 11.04.   Governing Laws.................................................54

Section 11.05.   Notices........................................................54

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 4 of 180

Section 11.06.    Required Notices to Rating Agency and Subservicer................55

Section 11.07.    Severability of Provisions.......................................55

Section 11.08.    Supplemental Provisions for Resecuritization.....................55

Section 11.09.    Allocation of Voting Rights......................................55

Section 11.10.    No Petition......................................................55

ARTICLE XII       COMPLIANCE WITH REGULATION AB............................................56

EXHIBITS

Exhibit One:  Mortgage Loan Schedule

Exhibit Two:  Information to be Included in Monthly Distribution Date Statement

Exhibit Three:Standard Terms of Pooling and Servicing Agreement,  dated as of March 1,
              2006

This is a Series Supplement,  dated as of March 1, 2006 (the "Series Supplement"),  to
the  Standard  Terms of  Pooling  and  Servicing  Agreement,  dated as of  March 1,  2006 and
attached  as  Exhibit  Four  hereto  (the  "Standard  Terms"  and,  together  with this  Series
Supplement,  the  "Pooling  and  Servicing  Agreement"  or  "Agreement"),  among  RESIDENTIAL
ACCREDIT  LOANS,  INC., as the company  (together  with its permitted  successors  and assigns,
the  "Company"),  RESIDENTIAL  FUNDING  CORPORATION, as master  servicer  (together  with its
permitted  successors  and  assigns,  the "Master  Servicer"),  and DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Trustee (together with its permitted successors and assigns, the "Trustee").

PRELIMINARY STATEMENT:

The  Company  intends  to  sell  mortgage  asset-backed  pass-through  certificates
(collectively,  the "Certificates"),  to be issued hereunder in multiple classes, which in the
aggregate will evidence the entire beneficial ownership interest in the Mortgage Loans.

The  terms and  provisions of the Standard Terms are hereby  incorporated  by reference
herein  as though set forth in full herein.  If any term or provision  contained  herein shall
conflict  with or be  inconsistent  with any  provision  contained  in the Standard  Terms,  the
terms  and  provisions  of this  Series  Supplement  shall  govern.  All  capitalized  terms not
otherwise  defined  herein  shall  have the  meanings  set forth in the  Standard  Terms.  The
Pooling and Servicing Agreement shall be dated as of the date of this Series Supplement.

REMIC I

As  provided  herein,  the  REMIC  Administrator  will make an  election  to treat the
segregated  pool of assets  consisting of the Mortgage  Loans and certain other related assets
subject  to this  Agreement  (but  excluding the Basis Risk  Shortfall  Reserve Fund) as a real
estate  mortgage  investment  conduit (a "REMIC") for federal  income tax  purposes,  and such
segregated  pool of assets  will be  designated  as "REMIC I." The Class R-I  Certificates  will
represent  the  sole  Class  of  "residual  interests"  in REMIC I for  purposes  of the  REMIC

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

Provisions (as defined herein) under federal income tax law. The following table irrevocably sets forth the designation, remittance rate (the "Uncertificated REMIC I Pass-Through Rate") and initial Uncertificated Principal Balance for each of the "regular interests" in REMIC I (the "REMIC I Regular Interests"). The "latest possible maturity date" (determined solely for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii)) for each REMIC I Regular Interest shall be the Maturity Date. None of the REMIC I Regular Interests will be certificated.

| DESIGNATION | UNCERTIFICATED REMIC I PASS-THROUGH RATE | INITIAL UNCERTIFICATED PRINCIPAL BALANCE | LATEST POSSIBLE MATURITY DATE |
|---|---|---|---|
| LT1 | Variable(1) | $649,915,164.43 | March 25, 2046 |
| LT2 | Variable(1) | $32,240.60 | March 25, 2046 |
| LT3 | 0.00% | $32,760.69 | March 25, 2046 |
| LT4 | Variable(1) | $32,760.69 | March 25, 2046 |

_____
(1)   Calculated in accordance with the definition of "Uncertificated REMIC I Pass Through Rate" herein.

---

## REMIC II

As provided herein, the REMIC Administrator will elect to treat the segregated pool of assets consisting of the Uncertificated REMIC I Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as REMIC II. Each Class of Certificates (other than the Class R Certificates and exclusive of any rights to receive Basis Risk Shortfalls) will represent ownership of "regular interests" in REMIC II and the Class R-II Certificates will represent ownership of the sole Class of "residual interests" in REMIC II for purposes of the REMIC Provisions under federal income tax law. The following table sets forth the designation, type, Pass-Through Rate, aggregate Initial Certificate Principal Balance, Maturity Date, initial ratings and certain features for each Class of Certificates comprising the interests in the Trust Fund created hereunder. The "latest possible maturity date" (determined solely for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii)) for each Class of REMIC II Regular Interests and the Certificates shall be the Maturity Date.

| Designation | Pass-Through Rate | Aggregate Initial Certificate Principal Balance | Features | Maturity Date | Mo |
|---|---|---|---|---|---|
| Class A-1 | Adjustable Rate(1)(2) | $359,391,000.00 | Senior/ Adjustable Rate | March 25, 2046 | A |
| Class A-2 | Adjustable Rate(1)(2) | $149,747,000.00 | Senior/ Adjustable Rate | March 25, 2046 | A |
| Class A-3 | Adjustable Rate(1)(2) | $89,848,000.00 | Senior/ Adjustable Rate | March 25, 2046 | A |
| Class M-1 | Adjustable Rate(1)(2) | $16,576,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | A |
| Class M-2 | Adjustable Rate(1)(2) | $8,450,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | A |
| Class M-3 | Adjustable Rate(1)(2) | $3,250,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | A |
| Class M-4 | Adjustable Rate(1)(2) | $3,250,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | A |
| Class M-5 | Adjustable Rate(1)(2) | $3,250,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | A |
| Class M-6 | Adjustable | $3,250,000.00 | Mezzanine/Adjustable | March 25, 2046 | A |

| | Rate(1)(2) | | | | |
|---|---|---|---|---|---|
| Class M-7 | Adjustable Rate(1)(2) | $4,550,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | BBB |
| Class M-8 | Adjustable Rate(1)(2) | $3,250,000.00 | Mezzanine/Adjustable Rate | March 25, 2046 | BBB |
| Class SB (3) | (3) | $5,200,926.42 | Subordinate | March 25, 2046 | |

(1)     The REMIC II Regular Interests, ownership of which is represented by the Class A Certificates and Class M Certificates, will accrue interest at a per annum rate equal to the lesser of (i) LIBOR plus the applicable Margin and (ii) the Net WAC Cap Rate.

(2)     The Class A Certificates and Class M Certificates will also entitle their holders to receive certain payments from the Holder of the Class SB Certificates from amounts to which the Holder of the Class SB Certificates is entitled, which will not be a part of their ownership of the related REMIC II Regular Interests.

(3)     The Class SB Certificates will accrue interest as described in the definition of Accrued Certificate Interest. The Class SB Certificates will not accrue interest on their Certificate Principal Balance. The Class SB Certificates will represent ownership of two REMIC II Regular Interests, a principal only regular interest designated REMIC II Regular Interest SB-PO and an interest only regular interest designated REMIC II Regular Interest SB-IO, which will be entitled to distributions as set forth herein.

The Mortgage Loans have an aggregate Cut-off Date Principal Balance equal to $650,012,926.42. The Mortgage Loans are payment-option adjustable-rate first lien mortgage loans with a negative amortization feature having terms to maturity at origination or modification of generally not more than 40 years.

In consideration of the mutual agreements herein contained, the Company, the Master Servicer and the Trustee agree as follows:

ARTICLE I

DEFINITIONS

SECTION 1.01    DEFINITIONS.

Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article.

Accrued Certificate Interest: With respect to each Distribution Date and each Class of Class A Certificates and Class M Certificates, interest accrued during the related Interest Accrual Period on the Certificate Principal Balance thereof immediately prior to such Distribution Date at the Pass-Through Rate for that Distribution Date.

The amount of Accrued Certificate Interest on each Class of Class A Certificates and Class M Certificates shall be reduced by the amount of Prepayment Interest Shortfalls on the Mortgage Loans during the prior calendar month to the extent not covered by Compensating Interest pursuant to Section 3.16, by Relief Act Shortfalls on the Mortgage Loans during the related Due Period, and by any Net Deferred Interest on the Mortgage Loans allocable to such Class of Certificates for that Distribution Date. All such reductions with respect to the Mortgage Loans will be allocated among the Class A Certificates and Class M Certificates in proportion to the amount of Accrued Certificate Interest payable on such Certificates or such Distribution Date absent such reductions.

Accrued Certificate Interest with respect to any Class of Class M Certificates for any Distribution Date shall further be reduced by the interest portion of Realized Losses allocated to any Class of Class M Certificates pursuant to Section 4.05.

Accrued Certificate Interest with respect to the Class A Certificates and Class M Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

With respect to each Distribution Date and the Class SB Certificates, interest accrued during the preceding Interest Accrual Period at the Pass-Through Rate on the Notional Amount as specified in the definition of Pass-Through Rate, immediately prior to such Distribution Date, reduced by any interest shortfalls with respect to the Mortgage Loans, including Prepayment Interest Shortfalls to the extent not covered by Compensating Interest pursuant to Section 3.16 or by Excess Cash Flow pursuant to Section 4.02(c)(iii) and (iv). Accrued Certificate Interest on the Class SB Certificates shall accrue on the basis of a 360-day year and the actual number of days in the related Interest Accrual Period.

Adjustment Date: With respect to each Mortgage Loan, each date set forth in the related Mortgage Note on which an adjustment to the interest rate on such Mortgage Loan becomes effective.

Available Distribution Amount: As to any Distribution Date, an amount equal to (a) the sum of (i) the amount relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business on the immediately preceding Determination Date, including any Subsequent Recoveries, and amounts deposited in the Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans, (ii) the amount of any Advance made on the immediately preceding Certificate Account Deposit Date, (iii) any amount deposited in the Certificate Account on the related Certificate Account Deposit Date pursuant to the second paragraph of Section 3.12(a), (iv) any amount deposited in the Certificate Account pursuant to Section 4.07 or Section 9.01, (v) any amount that the Master Servicer is not permitted to withdraw from the Custodial Account or the Certificate Account pursuant to Section 3.16(e), (vi) any amount received by the Trustee pursuant to the Surety Bond in respect of such Distribution Date and (vii) the proceeds of any Pledged Assets received by the Master Servicer, reduced by (b) the sum as of the close of business on the immediately preceding Determination Date of (v) any payments or collections consisting of Prepayment Charges on the Mortgage Loans that were received during the related Prepayment Period; (w) aggregate Foreclosure Profits, (x) the Amount Held for Future Distribution, and (y) amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect of the Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a).

Basis Risk Shortfall: With respect to each Class of the Class A Certificates and Class M Certificates, and any Distribution Date, the sum of (a) with respect to any Distribution Date on which the Net WAC Cap Rate is used to determine the Pass-Through Rate of such Class, an amount equal to the excess of (x) Accrued Certificate Interest for such Class calculated at a per annum rate equal to LIBOR plus the related Margin for such Distribution Date, over (y) Accrued Certificate Interest for such Class calculated using the Net WAC Cap Rate, (b) any shortfalls for such Class calculated pursuant to clause (a) above remaining unpaid from prior Distribution Dates, and (c) interest on the amount in clause (b) from the Distribution Date on which such amount was incurred at a per annum rate equal to the related Pass-Through Rate.

Basis Risk Shortfall Reserve Fund: The reserve fund created pursuant to Section 4.09.

Basis Risk Shortfall Reserve Fund Amount: $258,765.00.

Book-Entry Certificate: The Class A and Class M Certificates.

Capitalization Reimbursement Amount: As to any Distribution Date, the amount of Advances or Servicing Advances that were added to the Stated Principal Balance of the Mortgage Loans during the prior calendar month and reimbursed to the Master Servicer or Subservicer on or prior to such Distribution Date pursuant to Section 3.10(a)(vii), plus the Capitalization Reimbursement Shortfall Amount remaining unreimbursed from any prior Distribution Date and reimbursed to the Master Servicer or Subservicer on or prior to such Distribution Date.

Capitalization Reimbursement Shortfall Amount: As to any Distribution Date, the amount, if any, by which the amount of Advances or Servicing Advances that were added to the Stated Principal Balance of the Mortgage Loans during the preceding calendar month exceeds the amount of principal payments on the Mortgage Loans included in the Available Distribution Amount for that Distribution Date.

Certificate: Any Class A, Class M, Class SB or Class R Certificate.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 8 of 180

Certificate Account: The separate account or accounts created and maintained pursuant to Section 4.01 of the Standard Terms, which shall be entitled "DEUTSCHE BANK TRUST COMPANY AMERICAS, as trustee, in trust for the registered holders of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO3" and which must be an Eligible Account.

Certificate Principal Balance: With respect to any Class A Certificate or Class M Certificate, on any date of determination, an amount equal to (i) the Initial Certificate Principal Balance of such Certificate as specified on the face thereof plus (ii) an amount equal to the aggregate Net Deferred Interest added to the Certificate Principal Balance thereof prior to such date of determination, minus (iii) the sum of (x) the aggregate of all amounts previously distributed with respect to such Certificate (or any predecessor Certificate) and applied to reduce the Certificate Principal Balance thereof pursuant to Section 4.02(c) and (y) in the case of any Class of Class M Certificates, the aggregate of all reductions in Certificate Principal Balance deemed to have occurred in connection with Realized Losses which were previously allocated to such Certificate (or any predecessor Certificate) pursuant to Section 4.05; provided, that with respect to any Distribution Date, the Certificate Principal Balance of the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Certificates, in that order, will be increased to the extent of Realized Losses previously allocated thereto and remaining unreimbursed, but only to the extent of Subsequent Recoveries received during the preceding calendar month. With respect to each Class SB Certificate, on any date of determination, an amount equal to the Percentage Interest evidenced by such Certificate, multiplied by an amount equal to (i) the excess, if any, of (A) the then aggregate Stated Principal Balance of the Mortgage Loans over (B) the then aggregate Certificate Principal Balance of the Class A Certificates and Class M Certificates then outstanding, which represents the sum of (i) the Initial Principal Balance of the REMIC II Regular Interest SB-PO, as reduced by Realized Losses allocated thereto and payments deemed made thereon, and (ii) accrued and unpaid interest on the REMIC II Regular Interest SB-IO, as reduced by Realized Losses allocated thereto. The Class R Certificates will not have a Certificate Principal Balance.

Certificate Policy: None.

Class A Certificate: Any one of the Class A-1, Class A-2 or Class A-3 Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A, senior to the Class M Certificates, Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class A Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the Principal Distribution Amount for that Distribution Date or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i) the Principal Distribution Amount for that Distribution Date; and

(ii)     the excess, if any, of (A) the aggregate Certificate Principal Balance of the Class A Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class A-1 Certificate: The Class A-1 Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-1 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.210% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.420% per annum.

Class A-2 Certificate: The Class A-2 Certificates, executed by the Trustee and

authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-2 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.260% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.520% per annum.

Class A-3 Certificate: The Class A-3 Certificates, executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit A.

Class A-3 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.330% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.660% per annum.

Class A-P Certificates: None.

Class M Certificates: Collectively, the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Certificates.

Class M-1 Certificate: Any one of the Class M-1 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit B, senior to the Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class SB and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-1 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.420% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.630% per annum.

Class M-1 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount; and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class A Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-1 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class M-2 Certificate: Any one of the Class M-2 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit B, senior to the Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class SB and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-2 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.430% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.645% per annum.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 10 of 180

Class M-2 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount and Class M-1 Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

       (i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount and the Class M-1 Principal Distribution Amount; and

       (ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal Balance of the Class A Certificates and Class M-1 Certificates (after taking into account the payment of the Class A Principal Distribution Amount and the Class M-1 Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-2 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class M-3 Certificate: Any one of the Class M-3 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B, senior to the Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-3 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.470% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 0.705% per annum.

Class M-3 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount and Class M-2 Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

       (i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount and Class M-2 Principal Distribution Amount; and

       (ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal Balance of the Class A, Class M-1 and Class M-2 Certificates (after taking into account the payment of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount and the Class M-2 Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-3 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class M-4 Certificate: Any one of the Class M-4 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B, senior to the Class M-5, Class M-6, Class M-7, Class M-8, Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-4 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.720% per annum, and

on any  Distribution  Date on or after the second  Distribution  Date after the first possible
Optional Termination Date, 1.080% per annum.

Class M-4 Principal  Distribution  Amount: With respect to any Distribution  Date (i)
prior to the Stepdown  Date or on or after the Stepdown  Date if a Trigger  Event is in effect
for  that  Distribution  Date,  the  remaining  Principal  Distribution  Amount  for  that
Distribution Date after distribution of the Class A Principal  Distribution  Amount, Class M-1
Principal  Distribution  Amount,  Class M-2  Principal  Distribution  Amount  and  Class M-3
Principal  Distribution  Amount or (ii) on or after the  Stepdown  Date if a Trigger  Event is
not in effect for that Distribution Date, the lesser of:

(i)....the remaining  Principal  Distribution  Amount for that Distribution Date after
distribution of the Class A Principal  Distribution  Amount,  Class M-1 Principal  Distribution
Amount,  Class M-2 Principal  Distribution Amount and Class M-3 Principal Distribution Amount;
and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate  Certificate  Principal
Balance of the Class A,  Class M-1,  Class M-2 and Class M-3 Certificates  (after taking into
account  the payment  of the Class A  Principal  Distribution  Amount,  the Class M-1  Principal
Distribution  Amount, the Class M-2 Principal  Distribution Amount and the Class M-3 Principal
Distribution Amount for that Distribution Date) and (2) the  Certificate  Principal Balance of
the Class M-4  Certificates  immediately  prior to that  Distribution  Date over (B) the lesser
of (x) the  product of (1) the  applicable  Subordination  Percentage  and  (2) the  aggregate
Stated  Principal  Balance of the Mortgage  Loans after giving effect to  distributions  to be
made on that  Distribution  Date and (y) the excess, if any, of the aggregate Stated Principal
Balance  of  the  Mortgage  Loans  after  giving  effect  to  distributions  to be made  on that
Distribution Date, over the Overcollateralization Floor.

Class M-5 Certificate:  Any one of the Class M-5 Certificates  executed by the Trustee
and  authenticated  by  the  Certificate  Registrar  substantially  in  the form annexed hereto as
Exhibit B, senior to the Class M-6, Class M-7, Class M-8,  Class SB  Certificates and Class R
Certificates  with respect to  distributions  and the  allocation  of Realized  Losses as set
forth in Section 4.05, and evidencing  (i) an interest  designated as a "regular  interest" in
REMIC II for  purposes  of  the  REMIC  Provisions  and (ii) the  right  to  receive  Basis Risk
Shortfalls.

Class M-5  Margin: With  respect  to any  Distribution  Date  prior  to  the  second
Distribution  Date after the first possible  Optional  Termination Date, 0.780% per annum, and
on any  Distribution  Date on or after the second  Distribution  Date after the first possible
Optional Termination Date, 1.170% per annum.

Class M-5 Principal  Distribution  Amount: With respect to any Distribution  Date (i)
prior to the Stepdown  Date or on or after the Stepdown  Date if a Trigger  Event is in effect
for  that  Distribution  Date,  the  remaining  Principal  Distribution  Amount  for  that
Distribution Date after distribution of the Class A Principal  Distribution  Amount, Class M-1
Principal Distribution Amount,  Class M-2 Principal  Distribution  Amount,  Class M-3 Principal
Distribution  Amount and Class M-4 Principal  Distribution  Amount  or (ii) on or after the
Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i)....the remaining  Principal  Distribution  Amount for that Distribution Date after
distribution of the Class A Principal  Distribution  Amount, Class M-1 Principal  Distribution
Amount, the Class M-2 Principal  Distribution  Amount,  Class M-3 Principal Distribution Amount
and Class M-4 Principal Distribution Amount; and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate  Certificate  Principal
Balance of the Class A,  Class M-1,  Class M-2, Class M-3 and Class M-4 Certificates  (after
taking into account the payment  of the Class A  Principal  Distribution  Amount,  the Class M-1
Principal  Distribution  Amount, the Class M-2  Principal  Distribution  Amount, the Class M-3
Principal  Distribution  Amount  and the  Class M-4  Principal  Distribution  Amount  for that
Distribution  Date) and (2) the  Certificate  Principal Balance of the Class M-5 Certificates
immediately  prior to that  Distribution  Date over  (B) the  lesser  of  (x) the  product  of
(1) the applicable  Subordination  Percentage and (2) the aggregate Stated Principal Balance of
the Mortgage  Loans after giving effect to distributions  to be made on that  Distribution  Date
and (y) the excess,  if any, of the aggregate Stated  Principal  Balance of the Mortgage Loans
after  giving  effect  to  distributions  to be  made  on  that  Distribution  Date,  over  the
Overcollateralization Floor.

Class M-6 Certificate:  Any one of the Class M-6 Certificates  executed by the Trustee

and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B, senior to the Class M-7, Class M-8, Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-6 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 0.930% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 1.395% per annum.

Class M-6 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount and Class M-5 Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount and Class M-5 Principal Distribution Amount; and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal Balance of the Class A, Class M-1, Class M-2, Class M-3, Class M-4 and Class M-5 Certificates (after taking into account the payment of the Class A Principal Distribution Amount, the Class M-1 Principal Distribution Amount, the Class M-2 Principal Distribution Amount, the Class M-3 Principal Distribution Amount, the Class M-4 Principal Distribution Amount and the Class M-5 Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-6 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class M-7 Certificate: Any one of the Class M-7 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B, senior to the Class M-8, Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-7 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 1.500% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 2.250% per annum.

Class M-7 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount and Class M-6 Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount and Class M-6 Principal Distribution Amount; and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal

Balance of the Class A, Class M-1, Class M-2, Class M-3, Class M-4, Class M 5 and Class M-6 Certificates (after taking into account the payment of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount and Class M-6 Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-7 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class M-8 Certificate: Any one of the Class M-8 Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit B, senior to the Class SB Certificates and Class R Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing (i) an interest designated as a "regular interest" in REMIC II for purposes of the REMIC Provisions and (ii) the right to receive Basis Risk Shortfalls.

Class M-8 Margin: With respect to any Distribution Date prior to the second Distribution Date after the first possible Optional Termination Date, 1.500% per annum, and on any Distribution Date on or after the second Distribution Date after the first possible Optional Termination Date, 2.250% per annum.

Class M-8 Principal Distribution Amount: With respect to any Distribution Date (i) prior to the Stepdown Date or on or after the Stepdown Date if a Trigger Event is in effect for that Distribution Date, the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount, Class M-6 Principal Distribution Amount and Class M-7 Principal Distribution Amount or (ii) on or after the Stepdown Date if a Trigger Event is not in effect for that Distribution Date, the lesser of:

(i)....the remaining Principal Distribution Amount for that Distribution Date after distribution of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount, Class M-6 Principal Distribution Amount and Class M-7 Principal Distribution Amount; and

(ii)...the excess, if any, of (A) the sum of (1) the aggregate Certificate Principal Balance of the Class A, Class M-1, Class M-2, Class M-3, Class M-4, Class M 5, Class M-6 and Class M-7 Certificates (after taking into account the payment of the Class A Principal Distribution Amount, Class M-1 Principal Distribution Amount, Class M-2 Principal Distribution Amount, Class M-3 Principal Distribution Amount, Class M-4 Principal Distribution Amount, Class M-5 Principal Distribution Amount, Class M-6 Principal Distribution Amount and Class M-7 Principal Distribution Amount for that Distribution Date) and (2) the Certificate Principal Balance of the Class M-8 Certificates immediately prior to that Distribution Date over (B) the lesser of (x) the product of (1) the applicable Subordination Percentage and (2) the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date and (y) the excess, if any, of the aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date, over the Overcollateralization Floor.

Class R Certificate: Any one of the Class R-I Certificates or Class R-II Certificates.

Class R-I Certificate: Any one of the Class R-I Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit D and evidencing an interest designated as a "residual interest" in REMIC I for purposes of the REMIC Provisions.

Class R-II Certificate: Any one of the Class R-II Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed to the Standard Terms as Exhibit D and evidencing an interest designated as a "residual interest" in REMIC II for purposes of the REMIC Provisions.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 14 of 180

Class SB Certificate: Any one of the Class SB Certificates executed by the Trustee and authenticated by the Certificate Registrar substantially in the form annexed hereto as Exhibit R, subordinate to the Class A Certificates and Class M Certificates with respect to distributions and the allocation of Realized Losses as set forth in Section 4.05, and evidencing ownership of REMIC II Regular Interests SB-IO and SB-PO designated as "regular interests" in REMIC II for purposes of the REMIC Provisions, together with certain obligations with respect to payments of Basis Risk Shortfall amounts.

Closing Date: March 30, 2006.

Corporate Trust Office: The principal office of the Trustee at which at any particular time its corporate trust business with respect to this Agreement shall be administered, which office at the date of the execution of this instrument is located at 1761 East St. Andrew Place, Santa Ana, California 92705-4934, Attention: Residential Funding Corporation, RALI 2006-QO3.

Cut-off Date Balance: $650,012,926.42.

Cut-off Date: March 1, 2006.

Deferred Interest: The amount of interest which is deferred and added to the principal balance of a Mortgage Loan due to negative amortization.

Determination Date: With respect to any Distribution Date, the second Business Day prior to each Distribution Date.

Discount Net Mortgage Rate: Not applicable.

Due Period: With respect to each Distribution Date, the calendar month in which such Distribution Date occurs.

Excess Bankruptcy Loss: Not applicable.

Excess Cash Flow: With respect to any Distribution Date, an amount equal to the sum of (A) the excess of (i) the Available Distribution Amount for that Distribution Date over (ii) the sum of (a) the Interest Distribution Amount for that Distribution Date and (b) the lesser of (1) the aggregate Certificate Principal Balance of Class A Certificates and Class M Certificates immediately prior to such Distribution Date and (2) the Principal Remittance Amount for that Distribution Date to the extent not applied to pay interest on the Class A Certificates and Class M Certificates on such Distribution Date and (B) the Overcollateralization Reduction Amount, if any, for that Distribution Date.

Excess Fraud Loss: Not applicable.

Excess Overcollateralization Amount: With respect to any Distribution Date, the excess, if any, of (a) the Overcollateralization Amount on such Distribution Date over (b) the Required Overcollateralization Amount.

Excess Special Hazard Loss: Not applicable.

Excess Subordinate Principal Amount: Not applicable.

Expense Fee Rate: With respect to any Mortgage Loan as of any date of determination, the sum of the Servicing Fee Rate and the rate per annum at which the Subservicing Fee accrues.

Gross Margin: With respect to each Mortgage Loan, the fixed percentage set forth in the related Mortgage Note and indicated on the Mortgage Loan Schedule attached hereto as the "NOTE MARGIN," which percentage is added to the related Index on each Adjustment Date to determine (subject to rounding in accordance with the related Mortgage Note, the Periodic Cap, the Maximum Mortgage Rate and the Minimum Mortgage Rate) the interest rate to be borne by such Mortgage Loan until the next Adjustment Date.

Index: With respect to any Mortgage Loan and as to any Adjustment Date therefor, the related index as stated in the related Mortgage Note.

Initial Subordinate Class Percentage: Not applicable.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 15 of 180

Interest Accrual Period: (i) With respect to the Distribution Date in April 2006, the period commencing on the Closing Date and ending on the day immediately preceding the Distribution Date in April 2006, and with respect to any Distribution Date after the Distribution Date in April 2006, the period commencing on the Distribution Date in the month immediately preceding the month in which such Distribution Date occurs and ending on the day immediately preceding such Distribution Date.

Interest Distribution Amount: For any Distribution Date, the aggregate of the amounts payable pursuant to Section 4.02(c)(i).

Interest Only Certificates: None.

LIBOR: With respect to any Distribution Date, the arithmetic mean of the London interbank offered rate quotations for one-month U.S. Dollar deposits, expressed on a per annum basis, determined in accordance with Section 1.02.

LIBOR Business Day: Any day other than (i) a Saturday or Sunday or (ii) a day on which banking institutions in London, England are required or authorized to by law to be closed.

LIBOR Certificates: The Class A Certificates and Class M Certificates.

LIBOR Rate Adjustment Date: With respect to each Distribution Date, the second LIBOR Business Day immediately preceding the commencement of the related Interest Accrual Period.

Liquidation Proceeds: As defined in the Standard Terms but excluding Subsequent Recoveries.

Margin: The Class A-1 Margin, Class A-2 Margin, Class A-3 Margin, Class M-1 Margin, Class M-2 Margin, Class M-3 Margin, Class M-4 Margin, Class M-5 Margin, Class M-6 Margin, Class M-7 Margin or Class M-8 Margin, as applicable.

Marker Rate: With respect to the Class SB Certificates or REMIC II Regular Interest SB-IO and any Distribution Date, a per annum rate equal to two (2) times the weighted average of the Uncertificated REMIC I Pass-Through Rates for REMIC I Regular Interest LT2 and REMIC I Regular Interest LT3.

Maturity Date: March 25, 2046, the Distribution Date in the month of the latest scheduled maturity date of any Mortgage Loan.

Maximum Mortgage Rate: As to any Mortgage Loan, the per annum rate indicated in Mortgage Loan Schedule hereto attached hereto as the "NOTE CEILING," which rate is the maximum interest rate that may be applicable to such Mortgage Loan at any time during the life of such Mortgage Loan.

Maximum Net Mortgage Rate: As to any Mortgage Loan and any date of determination, the Maximum Mortgage Rate minus the Expense Fee Rate.

Mortgage Loan Schedule: The list or lists of the Mortgage Loans attached hereto as Exhibit One ( and as amended from time to time to reflect the addition of Qualified Substitute Mortgage Loans), which list or lists shall set forth the following information as to each Mortgage Loan:

(i)....the Mortgage Loan identifying number ("RFC LOAN #");

(ii)...the maturity of the Mortgage Note ("MATURITY DATE");

(iii)..the Mortgage Rate as of origination ("ORIG RATE");

(iv)...the Mortgage Rate as of the Cut-off Date ("CURR RATE");

(v)....the Net Mortgage Rate as of the Cut-off Date ("CURR NET");

(vi)...the scheduled monthly payment of principal, if any, and interest as of the Cut-off Date ("ORIGINAL P & I" or "CURRENT P & I");

(vii)..the Cut-off Date Principal Balance ("PRINCIPAL BAL");

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 16 of 180

(viii).the Maximum Mortgage Rate ("NOTE CEILING");

(ix)...the maximum Net Mortgage Rate ("NET CEILING");

(x)....the Note Margin ("NOTE MARGIN");

(xi)...the Note Margin ("NOTE MARGIN");

(xii)..the Periodic Cap ("PERIODIC DECR" or "PERIODIC INCR");

(xiii).the rounding of the semi-annual or annual adjustment to the Mortgage Rate ("NOTE METHOD");

(xiv)..the Loan-to-Value Ratio at origination ("LTV");

(xv)...the rate at which the Subservicing Fee accrues ("SUBSERV FEE") and at which the Servicing Fee accrues ("MSTR SERV FEE");

(xvi)..a code "T," "BT" or "CT" under the column "LN FEATURE," indicating that the Mortgage Loan is secured by a second or vacation residence; and

(xvii).a code "N" under the column "OCCP CODE," indicating that the Mortgage Loan is secured by a non-owner occupied residence.

Such schedule may consist of multiple reports that collectively set forth all of the information required.

Mortgage Rate: With respect to any Mortgage Loan, the interest rate borne by the related Mortgage Note, or any modification thereto other than a Servicing Modification. The Mortgage Rate on each Mortgage Loan will adjust on each Adjustment Date to equal the sum (rounded to the nearest multiple of one eighth of one percent (0.125%) or up to the nearest one-eighth of one percent, which are indicated by a "U" on the Mortgage Loan Schedule, except in the case of the Mortgage Loans indicated by an "X" on the Mortgage Loan Schedule under the heading "NOTE METHOD"), of the related Index plus the Note Margin, in each case subject to the applicable Periodic Cap, Maximum Mortgage Rate and Minimum Mortgage Rate.

Net Deferred Interest: On any Distribution Date, Deferred Interest on the Mortgage Loans during the related Due Period net of Principal Prepayments in full and partial Principal Prepayments included in the Available Distribution Amount for such Distribution Date and available to make principal distributions on the Certificates on that Distribution Date.

Net Mortgage Rate: With respect to any Mortgage Loan as of any date of determination, a per annum rate equal to the Mortgage Rate for such Mortgage Loan as of such date minus the related Expense Fee Rate.

Net WAC Cap Rate: With respect to any Distribution Date, a per annum rate equal to the weighted average of the Net Mortgage Rates (or, if applicable, the Modified Net Mortgage Rates) on the Mortgage Loans using the Net Mortgage Rates in effect for the Monthly Payments due on the Mortgage Loans during the related Due Period, weighted on the basis of the respective Stated Principal Balances thereof for such Distribution Date, multiplied by a fraction the numerator of which is 30 and the denominator of which is the actual number of days in the related Interest Accrual Period.

Note Margin: With respect to each Mortgage Loan, the fixed percentage set forth in the related Mortgage Note and indicated in Exhibit One hereto as the "NOTE MARGIN," which percentage is added to the Index on each Adjustment Date to determine (subject to rounding in accordance with the related Mortgage Note, the Periodic Cap, the Maximum Mortgage Rate and the Minimum Mortgage Rate) the interest rate to be borne by such Mortgage Loan until the next Adjustment Date.

Notional Amount: With respect to the Class SB Certificates or the REMIC II Regular Interest SB-IO, immediately prior to any Distribution Date is equal to the aggregate of the Uncertificated Principal Balances of the REMIC I Regular Interests.

Offered Certificates: The Class A Certificates and the Class M Certificates.

Optional Termination Date: Any Distribution Date on or after which the aggregate

Stated Principal Balance (after giving effect to distributions to be made on such Distribution Date) of the Mortgage Loans is less than 10.00% of the Cut-off Date Balance.

Overcollateralization Amount: With respect to any Distribution Date, the excess, if any, of (a) the aggregate Stated Principal Balance of the Mortgage Loans before giving effect to distributions of principal to be made on such Distribution Date over (b) the aggregate Certificate Principal Balance of the Class A Certificates and Class M Certificates immediately prior to such date.

Overcollateralization Floor: - An amount equal to the product of 0.50% and the Cut-off Date Balance.

Overcollateralization Increase Amount: With respect to any Distribution Date, the lesser of (a) Excess Cash Flow for that Distribution Date (to the extent not used to cover the amounts described in clauses (b)(iv), (v) and (vi) of the definition of Principal Distribution Amount as of such Distribution Date) and (b) the excess of (1) the Required Overcollateralization Amount for such Distribution Date over (2) the Overcollateralization Amount for such Distribution Date.

Overcollateralization Reduction Amount: With respect to any Distribution Date on which the Excess Overcollateralization Amount is, after taking into account all other distributions to be made on such Distribution Date, greater than zero, the Overcollateralization Reduction Amount shall be equal to the lesser of (i) the Excess Overcollateralization Amount for that Distribution Date and (ii) the Principal Remittance Amount on such Distribution Date.

Pass-Through Rate: With respect to each class of Certificates (other than the Class SB Certificates and the Class R Certificates), and any Distribution Date, a per annum rate equal to the lesser of (i) LIBOR plus the related Margin for such Distribution Date and (ii) the Net WAC Cap Rate for such Distribution Date.

With respect to the Class SB Certificates and any Distribution Date or REMIC II Regular Interest SB-IO, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate principal balance of the REMIC I Regular Interests. For purposes of calculating the Pass-Through Rate for the Class SB Certificates or the REMIC II Regular Interest SB-IO, the numerator is equal to the sum of the following components:

(i)....the Uncertificated Pass-Through Rate for REMIC I Regular Interest LT1 minus the Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT1;

(ii)...the Uncertificated Pass-Through Rate for REMIC I Regular Interest LT2 minus the Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT2; and

(iii)..the Uncertificated Pass-Through Rate for REMIC I Regular Interest LT4 minus twice the Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT4.

Prepayment Assumption: The prepayment assumption to be used for determining the accrual of original issue discount and premium and market discount on the Certificates for federal income tax purposes, which assumes a constant prepayment rate of 20% per annum of the then outstanding principal balance of the Mortgage Loans.

Prepayment Charge: With respect to any Mortgage Loan, the charges or premiums, if any, received in connection with a full or partial prepayment of such Mortgage Loan in accordance with the terms thereof.

Prepayment Charge Loan: Any Mortgage Loan for which a Prepayment Charge may be assessed and to which such Prepayment Charge the Class SB Certificates are entitled, as indicated on the Mortgage Loan Schedule.

Principal Distribution Amount: With respect to any Distribution Date, the lesser of (a) the excess of (x) Available Distribution Amount over (y) the Interest Distribution Amount and (b) the sum of:

(i)....the principal portion of each Monthly Payment received or Advanced with respect to the related Due Period on each Outstanding Mortgage Loan;

(ii)...the Stated Principal Balance of any Mortgage Loan repurchased during the related Prepayment Period (or deemed to have been so repurchased in accordance with Section 3.07(b)) pursuant to Section 2.02, 2.03, 2.04 or 4.07 and the amount of any shortfall deposited in the Custodial Account in connection with the substitution of a Deleted Mortgage Loan pursuant to Section 2.03 or 2.04 during the prior calendar month;

(iii)..the principal portion of all other unscheduled collections, other than Subsequent Recoveries, on the Mortgage Loans received (or deemed to have been so received) during the prior calendar month or, in the case of Principal Prepayments in Full, during the related Prepayment Period, including, without limitation, Curtailments, Insurance Proceeds, Liquidation Proceeds, REO Proceeds and, except to the extent applied to offset Deferred Interest, Principal Prepayments, to the extent applied by the Master Servicer as recoveries of principal pursuant to Section 3.14;

(iv)...the lesser of (1) Subsequent Recoveries for such Distribution Date and (2) the principal portion of any Realized Losses allocated to the Class M Certificates on a prior Distribution Date and remaining unpaid;

(v)....the lesser of (1) the Excess Cash Flow for such Distribution Date (to the extent not used pursuant to clause (iv) of this definition on such Distribution Date) and (2) the principal portion of any Realized Losses incurred (or deemed to have been incurred) on any Mortgage Loans in the calendar month preceding such Distribution Date that are allocated to any Class of Certificates; and

(vi)...the lesser of (a) the Excess Cash Flow for such Distribution Date, to the extent not used pursuant to clauses (iv) and (v) of this definition on such Distribution Date, and (b) the amount of any Overcollateralization Increase Amount for such Distribution Date;

minus

(vii)..(A) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (B) the amount of any Capitalization Reimbursement Amount for such Distribution Date.

Principal Only Certificates:  None.

Principal Remittance Amount:  With respect to any Distribution Date, all amounts described in clauses (b)(i) through (iii) of the definition of Principal Distribution Amount for that Distribution Date.

Record Date:  With respect to each Distribution Date and each Class of Book Entry Certificates, the Business Day immediately preceding such Distribution Date. With respect to each Class of Definitive Certificates, the close of business on the last Business Day of the month next preceding the month in which the related Distribution Date occurs, except in the case of the first Record Date which shall be the Closing Date.

Regular Certificates:  The Class A, Class M and Class SB Certificates.

Relief Act:  The Servicemembers Civil Relief Act, as amended.

Relief Act Shortfalls:  Interest shortfalls on the Mortgage Loans resulting from the Relief Act or similar legislation or regulations.

REMIC I: The segregated pool of assets with respect to which a REMIC election is to be made, consisting of:

(i)....the Mortgage Loans and the related Mortgage Files,

(ii)...all payments and collections in respect of the Mortgage Loans due after the Cut-off Date (other than Monthly Payments due in the month of the Cut-off Date ) as shall be on deposit in the Custodial Account or in the Certificate Account and identified as belonging to the Trust Fund,

(iii)..property which secured a Mortgage Loan and which has been acquired for the

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 19 of 180

benefit of the Certificateholders by foreclosure or deed in lieu of foreclosure,

(iv)...the hazard insurance policies and Primary Insurance Policies, if any, and

(v)....all proceeds of clauses (i) through (iv) above.

Notwithstanding the foregoing, the REMIC election with respect to REMIC I specifically excludes the Basis Risk Shortfall Reserve Fund.

REMIC I Distribution Amount: For any Distribution Date, the Available Distribution Amount shall be distributed to the REMIC I Regular Interests and the Class R-I Certificates in the following amounts and priority:

(i) to the extent of the Available Distribution Amount, to REMIC II as the holder of REMIC I Regular Interests LT1, LT2, LT3 and LT4, pro rata, in an amount equal to (A) their Uncertificated Accrued Interest for such Distribution Date reduced, in each case, by any Net Deferred Interest allocated to such REMIC I Regular Interest for such Distribution Date, plus (B) any amounts in respect thereof remaining unpaid from previous Distribution Dates; and

(ii) to the extent of the Available Distribution Amount remaining after the distributions made pursuant to clause (i) above, to REMIC II as the holder of the REMIC I Regular Interests, in an amount equal to:

(A) in respect of REMIC I Regular Interests LT2, LT3 and LT4, their respective Principal Distribution Amounts;

(B) in respect of REMIC I Regular Interest LT1 any remainder until the Uncertificated Principal Balance thereof is reduced to zero;

(C) any remainder in respect of REMIC I Regular Interests LT2, LT3 and LT4, pro rata according to their respective Uncertificated Principal Balances as reduced by the distributions deemed made pursuant to (A) above, until their respective Uncertificated Principal Balances are reduced to zero; and

(iii) any remaining amounts to the Holders of the Class R-I Certificates.

REMIC I Net Deferred Interest: Net Deferred Interest for any Distribution Date shall be allocated to REMIC I Regular Interest LT1.

REMIC I Principal Reduction Amounts: For any Distribution Date, the amounts by which the principal balances of REMIC I Regular Interests LT1, LT2, LT3 and LT4, respectively, will be reduced on such Distribution Date by the allocation of Realized Losses and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

Y1 =...the aggregate principal balance of REMIC I Regular Interest LT1 after distributions on the prior Distribution Date.

Y2 =...the principal balance of REMIC I Regular Interest LT2 after distributions on the prior Distribution Date.

Y3 =...the principal balance of REMIC I Regular Interest LT3 after distributions on the prior Distribution Date.

Y4 =...the principal balance of REMIC I Regular Interest LT4 after distributions on the prior Distribution Date (note: Y3 = Y4).

AY1 =..the REMIC I Regular Interest LT1 Principal Reduction Amount.

AY2 =..the REMIC I Regular Interest LT2 Principal Reduction Amount.

AY3 =..the REMIC I Regular Interest LT3 Principal Reduction Amount.

AY4 =..the REMIC I Regular Interest LT4 Principal Reduction Amount.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 20 of 180

$P0$ = ...the aggregate principal balance of REMIC I Regular Interests LT1, LT2, LT3 and LT4 after distributions and the allocation of Realized Losses on the prior Distribution Date.

$P1$ = ...the aggregate principal balance of REMIC I Regular Interests LT1, LT2, LT3 and LT4 after distributions and the allocation of Realized Losses to be made on such Distribution Date.

$AP$ = ...$P0 - P1$ = the aggregate of REMIC I Regular Interests LT1, LT2, LT3 and LT4 Principal Reduction Amounts.

= the aggregate of the principal portions of Realized Losses to be allocated to, and the principal distributions to be made on, the Certificates on such Distribution Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Distribution Dates).

$R0$ = ...the Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts distributed and Realized Losses allocated on the prior Distribution Date.

$R1$ = ...the Net WAC Cap Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Realized Losses to be allocated on such Distribution Date.

$a$ = ....$(Y2 + Y3)/P0$. The initial value of a on the Closing Date for use on the first Distribution Date shall be 0.0001.

$a0$ = ...the lesser of (A) the sum for all Classes of Certificates, other than the Class SB Certificates, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on such Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses on the prior Distribution Date and (B) $R0*P0$.

$a1$ = ...the lesser of (A) the sum for all Classes of Certificates, other than the Class SB Certificates, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Cap Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Distribution Date and (ii) the aggregate Certificate Principal Balance for such Class after distributions and the allocation of Realized Losses to be made on such Distribution Date and (B) $R1*P1$.

Then, based on the foregoing definitions:

$AY1$ = ..$AP - AY2 - AY3 - AY4$;

$AY2$ = ..$(a/2)\{( a0R1 - a1R0)/R0R1\}$;

$AY3$ = ..$aAP - AY2$; and

$AY4$ = ..$AY3$.

if both AY2 and AY3, as so determined, are non-negative numbers. Otherwise:

(1)....If AY2, as so determined, is negative, then

$AY2 = 0$;

$AY3 = a\{a1R0P0 - a0R1P1\}/\{a1R0\}$;

$AY4 = AY3$; and

$AY1 = AP - AY2 - AY3 - AY4$.

(2)....If AY3, as so determined, is negative, then

$AY3 = 0$;

$AY2 = a\{a1R0P0 - a0R1P1\}/\{2R1R0P1 - a1R0\}$;

$AY4 = AY3$; and

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 21 of 180

AY1 = AP - AY2 - AY3 - AY4.

REMIC I Realized Losses: Realized Losses on the Mortgage Loans shall be allocated to the REMIC I Regular Interests as follows: The interest portion of Realized Losses on the Mortgage Loans, if any, shall be allocated among REMIC I Regular Interests LT1, LT2 and LT4 pro rata according to the amount of interest accrued but unpaid thereon, in reduction thereof. Any interest portion of such Realized Losses in excess of the amount allocated pursuant to the preceding sentence shall be treated as a principal portion of Realized Losses not attributable to any specific Mortgage Loan and allocated pursuant to the succeeding sentences. The principal portion of Realized Losses on the Mortgage Loans, if any, shall be allocated first, to REMIC I Regular Interests LT2, LT3 and LT4 pro rata according to their respective Principal Reduction Amounts to the extent thereof in reduction of the Uncertificated Principal Balance of such REMIC I Regular Interests and, second, the remainder, if any, of such principal portion of such Realized Losses shall be allocated to REMIC I Regular Interest LT1 in reduction of the Uncertificated Principal Balance thereof.

REMIC I Regular Interests: REMIC I Regular Interests LT1, LT2, LT3 and LT4.

REMIC I Regular Interest LT1: A regular interest in REMIC I that is held as an asset of REMIC II, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC I Pass-Through Rate, and that has such other terms as are described herein.

REMIC I Regular Interest LT1 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Regular Interest LT1 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC I Regular Interest LT1 on such Distribution Date.

REMIC I Regular Interest LT2: A regular interest in REMIC I that is held as an asset of REMIC II, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC I Pass-Through Rate, and that has such other terms as are described herein.

REMIC I Regular Interest LT2 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Regular Interest LT2 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC I Regular Interest LT2 on such Distribution Date.

REMIC I Regular Interest LT3: A regular interest in REMIC I that is held as an asset of REMIC II, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC I Pass-Through Rate, and that has such other terms as are described herein.

REMIC I Regular Interest LT3 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Regular Interest LT3 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC I Regular Interest LT3 on such Distribution Date.

REMIC I Regular Interest LT4: A regular interest in REMIC I that is held as an asset of REMIC II, that has an initial principal balance equal to the related Uncertificated Principal Balance, that bears interest at the related Uncertificated REMIC I Pass-Through Rate, and that has such other terms as are described herein.

REMIC I Regular Interest LT4 Principal Distribution Amount: For any Distribution Date, the excess, if any, of the REMIC I Regular Interest LT4 Principal Reduction Amount for such Distribution Date over the Realized Losses allocated to the REMIC I Regular Interest LT4 on such Distribution Date.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests. The REMIC election with respect to REMIC II specifically excludes the Basis Risk Shortfall Reserve Fund.

REMIC II Regular Interest: Any one of REMIC II Regular Interest A-1, REMIC II Regular Interest A-2, REMIC II Regular Interest A-3, REMIC II Regular Interest M-1, REMIC II Regular Interest M-2, REMIC II Regular Interest M-3, REMIC II Regular Interest M-4, REMIC II Regular Interest M-5, REMIC II Regular Interest M-6, REMIC II Regular Interest M-7, REMIC II

Regular Interest M-8, REMIC II Regular Interest SB-IO or REMIC II Regular Interest SB-PO.

REMIC II Regular Interest A-1: A regular interest in REMIC II which has a principal balance equal to the principal balance of the Class A-1 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-1 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest A-2: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class A-2 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-2 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest A-3: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class A-3 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class A-3 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-1: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-1 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-1 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-2: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-2 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-2 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-3: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-3 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-3 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-4: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-4 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-4 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-5: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-5 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-5 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-6: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-6 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-6 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-7: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-7 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-7 Margin

and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest M-8: A regular interest in REMIC II which is has a principal balance equal to the principal balance of the Class M-8 Certificates and which is entitled to interest at a rate equal to the lesser of (i) LIBOR plus the Class M-8 Margin and (ii) the Net WAC Cap Rate. Interest accrued in any Interest Accrual Period and not paid on the related Distribution Date shall carry forward to each succeeding Distribution Date without interest until paid.

REMIC II Regular Interest SB-IO: A regular interest in REMIC II that has no initial principal, that bears interest at the related Pass-Through Rate, and that has such other terms as are described herein.

REMIC II Regular Interest SB-PO: A regular interest in REMIC II that has an initial principal balance equal to the initial principal balance for the Class SB Certificates, as set forth in the Preliminary Statement, that bears no interest, and that has such other terms as are described herein.

Required Overcollateralization Amount: With respect to any Distribution Date (i) prior to the Stepdown Date, an amount equal to 0.80% of the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date; (ii) on or after the Stepdown Date but prior to the Distribution Date in April 2012, provided a Trigger Event is not in effect, the greater of (x) 2.00% of the outstanding aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions made on that Distribution Date and (y) the Overcollateralization Floor; (iii) on or after the Stepdown Date and on or after the Distribution Date in April 2012, provided a Trigger Event is not in effect, the greater of (x) 1.60% of the outstanding aggregate Stated Principal Balance of the Mortgage Loans after giving effect to distributions made on that Distribution Date and (y) the Overcollateralization Floor; and (iv) on or after the Stepdown Date if a Trigger Event is in effect, the Required Overcollateralization Amount for the immediately preceding Distribution Date; provided that the Required Overcollateralization Amount may be reduced so long as written confirmation is obtained from each rating agency that the reduction will not reduce the ratings assigned to the Class A Certificates and Class M Certificates by that rating agency below the lower of the then-current ratings or the ratings assigned to those certificates as of the closing date by that rating agency.

Reserve Fund: The separate trust account created and maintained by the Trustee pursuant to Section 4.09 hereof.

Senior Certificate: Any one of the Class A Certificates.

Senior Enhancement Percentage: With respect to any Distribution Date, the percentage obtained by dividing (x) the sum of (i) the aggregate Certificate Principal Balance of the Class M Certificates and (ii) the Overcollateralization Amount, in each case prior to the distribution of the Principal Distribution Amount on such Distribution Date, by (y) the aggregated Stated Principal Balance of the Mortgage Loans after giving effect to distributions to be made on that Distribution Date.

Sequential Trigger Event: A Sequential Trigger Event is in effect with respect to any Distribution Date if (i) prior to the 37th Distribution Date, the aggregate amount of Realized Losses on the Mortgage Loans as a percentage of the initial aggregate Stated Principal Balance as of the Cut-off Date exceeds 0.45%, or (ii) if, on or after the 37th Distribution Date, a Trigger Event is in effect.

Sixty-Plus Delinquency Percentage: With respect to any Distribution Date on or after the Stepdown date, the arithmetic average, for each of the three consecutive Distribution Dates ending with such Distribution Date, of the fraction, expressed as a percentage, equal to (x) the aggregate Stated Principal Balance of the Mortgage Loans that are 60 or more days delinquent in payment of principal and interest for that Distribution Date, including Mortgage Loans in foreclosure, and REO Properties over (y) the aggregate Stated Principal Balance of all of the Mortgage Loans immediately preceding that Distribution Date.

Stated Principal Balance: With respect to any Mortgage Loan or related REO Property, as of any date of determination, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan plus (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification and (c) any amount by which the

Stated Principal Balance of the Mortgage Loan has been increased for Deferred Interest pursuant to the terms of the related Mortgage Note on or prior to the Distribution Date, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

Stepdown Date: The later to occur of (x) the Distribution Date in April 2009 and (y) the first Distribution Date on which the Senior Enhancement Percentage is greater than or equal to (a) on any Distribution Date prior to the Distribution Date in April 2012, 19.625% and (b) on any Distribution Date on or after the Distribution Date in April 2012, 15.70%.

Subordination Percentage: With respect to each class of Class A Certificates and Class M Certificates, the respective approximate percentage set forth in the table below:

| Class | Percentage (1) | Percentage (2) |
|-------|----------------|----------------|
| A     | 80.375%        | 84.300%        |
| M-1   | 86.750%        | 89.400%        |
| M-2   | 90.000%        | 92.000%        |
| M-3   | 91.250%        | 93.000%        |
| M-4   | 92.500%        | 94.000%        |
| M-5   | 93.750%        | 95.000%        |
| M-6   | 95.000%        | 96.000%        |
| M-7   | 96.750%        | 97.400%        |
| M-8   | 98.000%        | 98.400%        |

(1)    For any Distribution Date prior to the Distribution Date in April 2012.

(2)    For any Distribution Date in April 2012 or thereafter.

Trigger Event: A Trigger Event is in effect with respect to any Distribution Date on or after the Stepdown Date if either (a) the Sixty-Plus Delinquency Percentage, as determined on that Distribution Date, exceeds 35.41%, if prior to the Distribution Date in April 2012, or 40.00%, if on or after the Distribution Date in April 2012, of the Senior Enhancement Percentage for that Distribution Date or (b) the aggregate amount of Realized Losses on the Mortgage Loans as a percentage of the initial aggregate Stated Principal Balance as of the Cut-off Date exceeds the applicable amount set forth below:

o    April 2009 to March 2010: 0.450% with respect to April 2009, plus an additional 1/12th of 0.350% for each month through March 2010.

o    April 2010 to March 2011: 0.800% with respect to April 2010, plus an additional 1/12th of 0.350% for each month through March 2011.

o    April 2011 to March 2012: 1.150% with respect to April 2011, plus an additional 1/12th of 0.400% for each month through March 2012.

o    April 2012 to March 2013: 1.550% with respect to April 2012, plus an additional 1/12th of 0.150% for each month through March 2013.

o    April 2013 and thereafter:  1.700%

2006-QO3 REMIC:  Either of REMIC I or REMIC II, as the case may be.

Uncertificated Accrued Interest: With respect to the REMIC I Regular Interests for any Distribution Date, one month's interest at the related Uncertificated REMIC I Pass-Through Rate for such Distribution Date, accrued on its Uncertificated Principal Balance, immediately prior to such Distribution Date. Uncertificated Accrued Interest for the REMIC I Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Distribution Date, any Prepayment Interest Shortfalls and Relief Act Shortfalls (to the extent not covered by Compensating

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 25 of 180

Interest) relating to the Mortgage Loans for any Distribution Date shall be allocated among REMIC I Regular Interests LT1, LT2, LT3 and LT4, pro rata, based on, and to the extent of, Uncertificated Accrued Interest, as calculated without application of this sentence. Uncertificated Accrued Interest on REMIC II Regular Interest SB-PO shall be zero. Uncertificated Accrued Interest on REMIC II Regular Interest SB-IO for each Distribution Date shall equal Accrued Certificate Interest for the Class SB Certificates.

Uncertificated Principal Balance: The principal amount of any REMIC I Regular Interest outstanding as of any date of determination. The Uncertificated Principal Balance of each REMIC I Regular Interest shall be reduced first by Realized Losses allocated thereto by the definition of REMIC I Realized Losses, and by all distributions of principal deemed made on such REMIC I Regular Interest, on such Distribution Date. The Uncertificated Principal Balance of each REMIC I Regular Interest shall never be less than zero. With respect to the REMIC II Regular Interest SB-PO the initial amount set forth with respect thereto in the Preliminary Statement as reduced by distributions deemed made in respect thereof pursuant to Section 4.02 and Realized Losses allocated thereto pursuant to Section 4.05.

Uncertificated REMIC I Pass-Through Rate: With respect to any Distribution Date and (i) REMIC I Regular Interests LT1 and LT2, the Net WAC Cap Rate, (ii) REMIC I Regular Interest LT3, zero (0.00%) and (iii) REMIC I Regular Interest LT4, twice the Net WAC Cap Rate.

Underwriter: Goldman, Sachs & Co.

SECTION 1.02. DETERMINATION OF LIBOR.

LIBOR applicable to the calculation of the Pass-Through Rate on the LIBOR Certificates for any Interest Accrual Period will be determined as of each LIBOR Rate Adjustment Date. On each LIBOR Rate Adjustment Date, or if such LIBOR Rate Adjustment Date is not a Business Day, then on the next succeeding Business Day, LIBOR shall be established by the Trustee and, as to any Interest Accrual Period, will equal the rate for one month United States dollar deposits that appears on the Dow Jones Telerate Screen Page 3750 as of 11:00 a.m., London time, on such LIBOR Rate Adjustment Date. "Dow Jones Telerate Screen Page 3750" means the display designated as page 3750 on the Telerate Service (or such other page as may replace page 3750 on that service for the purpose of displaying London interbank offered rates of major banks). If such rate does not appear on such page (or such other page as may replace that page on that service, or if such service is no longer offered, LIBOR shall be so established by use of such other service for displaying LIBOR or comparable rates as may be selected by the Trustee after consultation with the Master Servicer), the rate will be the Reference Bank Rate. The "Reference Bank Rate" will be determined on the basis of the rates at which deposits in U.S. Dollars are offered by the reference banks (which shall be any three major banks that are engaged in transactions in the London interbank market, selected by the Trustee after consultation with the Master Servicer) as of 11:00 a.m., London time, on the LIBOR Rate Adjustment Date to prime banks in the London interbank market for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. The Trustee will request the principal London office of each of the reference banks to provide a quotation of its rate. If at least two such quotations are provided, the rate will be the arithmetic mean of the quotations rounded up to the next multiple of 1/16%. If on such date fewer than two quotations are provided as requested, the rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Trustee after consultation with the Master Servicer, as of 11:00 a.m., New York City time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Certificate Principal Balance of the LIBOR Certificates then outstanding. If no such quotations can be obtained, the rate will be LIBOR for the prior Distribution Date; provided however, if, under the priorities described above, LIBOR for a Distribution Date would be based on LIBOR for the previous Distribution Date for the third consecutive Distribution Date, the Trustee, after consultation with the Master Servicer, shall select an alternative comparable index (over which the Trustee has no control), used for determining one-month Eurodollar lending rates that is calculated and published (or otherwise made available) by an independent party.

The establishment of LIBOR by the Trustee and the Master Servicer on any LIBOR Rate Adjustment Date and the Master Servicer's subsequent calculation of the Pass-Through Rate applicable to the LIBOR Certificates for the relevant Interest Accrual Period, in the absence of manifest error, will be final and binding.

Promptly following each LIBOR Rate Adjustment Date the Trustee shall supply the Master Servicer with the results of its determination of LIBOR on such date. Furthermore, the Trustee will supply to any Certificateholder so requesting by telephone by calling (800) 735-7777 the Pass-Through Rate on the LIBOR Certificates for the current and the immediately preceding Interest Accrual Period.

SECTION 1.03.  USE OF WORDS AND PHRASES.

"Herein," "hereby," "hereunder," "hereof," "hereinbefore," "hereinafter" and other equivalent words refer to the Pooling and Servicing Agreement as a whole. All references herein to Articles, Sections or Subsections shall mean the corresponding Articles, Sections and Subsections in the Pooling and Servicing Agreement. The definitions set forth herein include both the singular and the plural.

ARTICLE II

CONVEYANCE OF MORTGAGE LOANS;
ORIGINAL ISSUANCE OF CERTIFICATES

SECTION 2.01.  CONVEYANCE OF MORTGAGE LOANS.  (See Section 2.01 of the Standard Terms.)

SECTION 2.02.  ACCEPTANCE BY TRUSTEE.  (See Section 2.02 of the Standard Terms.)

SECTION 2.03.  REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE MASTER SERVICER AND THE COMPANY.

(A)    For representations, warranties and covenants of the Master Servicer, see Section 2.03(a) of the Standard Terms.

(B)    The Company hereby represents and warrants to the Trustee for the benefit of Certificateholders that as of the Closing Date (or, if otherwise specified below, as of the date so specified):

(I)    No Mortgage Loan is 30 or more days Delinquent in payment of principal and interest as of the Cut-off Date and no Mortgage Loan has been so Delinquent more than once in the 12-month period prior to the Cut-off Date;

(II)    The information set forth in Exhibit One hereto with respect to each Mortgage Loan or the Mortgage Loans, as the case may be, is true and correct in all material respects at the date or dates respecting which such information is furnished;

(III)    The Mortgage Loans are payment-option adjustable-rate mortgage loans with a negative amortization feature with Monthly Payments due, with respect to a majority of the Mortgage Loans, on the first day of each month and terms to maturity at origination or modification of not more than 40 years;

(IV)    To the best of the Company's knowledge, except with respect to two Mortgage Loans, representing no more than 0.1% of the aggregate Stated Principal Balance of the Mortgage Loans, if a Mortgage Loan is secured by a Mortgaged Property with a Loan-to-Value Ratio at origination in excess of 80%, such Mortgage Loan is the subject of a Primary Insurance Policy that insures (a) at least 35% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 100.00% and 95.01%, (b) at least 30% of the Stated Principal Balance of the Mortgage Loan at origination if the Loan-to-Value Ratio is between 95.00% and 90.01%, (c) at least 25% of such balance if the Loan-to-Value Ratio is between 90.00% and 85.01% and (d) at least 12% of such balance if the Loan-to-Value Ratio is between 85.00% and 80.01%.  To the best of the Company's knowledge, each such Primary Insurance Policy is in full force and effect and the Trustee is entitled to the benefits thereunder;

(V)    The issuers of the Primary Insurance Policies are insurance companies whose claims-paying abilities are currently acceptable to each Rating Agency;

(VI)    No more than 0.7% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by Mortgaged Properties located in any one zip code area in California, and no more than 0.5% of the Mortgage Loans by aggregate Stated Principal Balance as of the Cut-off Date are secured by

Mortgaged Properties located in any one zip code area outside California;

(VII)    The  improvements  upon the Mortgaged  Properties are insured against loss by fire and
other hazards as required by the Program Guide,  including  flood  insurance if
required  under  the  National  Flood  Insurance  Act of 1968,  as amended.  The
Mortgage  requires  the  Mortgagor to maintain  such casualty  insurance at the
Mortgagor's  expense,  and on the Mortgagor's  failure to do so, authorizes the
holder  of  the  Mortgage  to  obtain  and  maintain  such  insurance  at  the
Mortgagor's expense and to seek reimbursement therefor from the Mortgagor;

(VIII)  Immediately prior to the assignment of the Mortgage Loans to the Trustee,  the Company
had good  title to,  and was the sole  owner of,  each  Mortgage  Loan free and
clear of any pledge, lien,  encumbrance or security interest (other than rights
to servicing and related  compensation)  and such assignment  validly transfers
ownership  of the  Mortgage  Loans to the Trustee free and clear of any pledge,
lien, encumbrance or security interest;

(IX)    No more than 87.7% of the Mortgage Loans by aggregate Stated  Principal  Balance as of
the Cut-off Date were underwritten under a reduced loan documentation  program,
no more than 0.6% of the Mortgage Loans by aggregate Stated  Principal  Balance
as of the Cut-off Date were underwritten under a no-stated income program,  and
no more than 0.9% of the Mortgage Loans by aggregate Stated  Principal  Balance
as of the Cut-off Date were underwritten under a no income/no asset program;

(X)     Except with  respect to no more than 8.3% of the Mortgage  Loans by  aggregate  Stated
Principal  Balance as of the Cut-off  Date,  the Mortgagor  represented  in its
loan application  with respect to the related Mortgage Loan that the Mortgaged
Property would be owner-occupied;

(XI)    None of the Mortgage Loans is a Buy-Down Mortgage Loan;

(XII)   Each Mortgage Loan  constitutes a qualified  mortgage under Section  860G(a)(3)(A)  of
the Code and Treasury  Regulation Section  1.860G-2(a)(1),  (2),  (4),  (5),  (6),
(7) and (9) without reliance on the provisions of Treasury  Regulation  Section
1.860G-2(a)(3)  or Treasury  Regulation  Section  1.860G-2(f)(2)  or any other
provision  that  would  allow a Mortgage  Loan to be  treated  as a "qualified
mortgage"  notwithstanding  its  failure  to meet  the  requirements  of Section
860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1),  (2),
(4), (5), (6), (7) and (9);

(XIII)  A policy of title  insurance was effective as of the closing of each Mortgage Loan and
is  valid  and  binding  and remains  in full  force  and effect,  unless  the
Mortgaged  Properties  are  located  in  the  State  of  Iowa  and an  attorney's
certificate has been provided as described in the Program Guide;

(XIV)   No Mortgage Loan is a Cooperative Loan;

(XV)    With respect to each  Mortgage Loan  originated  under a  "streamlined"  Mortgage Loan
program  (through  which no new or updated  appraisals of Mortgaged  Properties
are obtained in connection  with the refinancing  thereof),  the related Seller
has represented that either (a) the value of the related Mortgaged  Property as
of the date the Mortgage  Loan was  originated  was not less than the appraised
value of such property at the time of origination  of the  refinanced  Mortgage
Loan or (b) the  Loan-to-Value  Ratio  of the  Mortgage  Loan as of the date of
origination  of the Mortgage Loan  generally  meets the Company's  underwriting
guidelines;

(XVI)   Interest  on  each  Mortgage  Loan  is  calculated  on  the  basis  of a  360-day  year
consisting of twelve 30-day months;

(XVII)  None of the Mortgage Loans contain in the related  Mortgage File a Destroyed  Mortgage
Note;

(XVIII) None of the Mortgage Loans has been made to International Borrowers;

(XIX)   No Mortgage Loan  provides for payments  that are subject to reduction by  withholding
taxes levied by any foreign (non-United States) sovereign government; and

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 28 of 180

(XX)    None of the Mortgage Loans are Additional Collateral Loans and none of the Mortgage
Loans are Pledged Asset Loans.

It is understood and agreed that the representations and warranties set forth in this
Section 2.03(b) shall survive delivery of the respective Mortgage Files to the Trustee or
any Custodian.

Upon discovery by any of the Company, the Master Servicer, the Trustee or any
Custodian of a breach of any of the representations and warranties set forth in this Section
2.03(b) that materially and adversely affects the interests of the Certificateholders in any
Mortgage Loan, the party discovering such breach shall give prompt written notice to the
other parties (any Custodian being so obligated under a Custodial Agreement); provided,
however, that in the event of a breach of the representation and warranty set forth in
Section 2.03(b)(xii), the party discovering such breach shall give such notice within five
days of discovery. Within 90 days of its discovery or its receipt of notice of breach, the
Company shall either (i) cure such breach in all material respects or (ii) purchase such
Mortgage Loan from the Trust Fund at the Purchase Price and in the manner set forth in
Section 2.02; provided that the Company shall have the option to substitute a Qualified
Substitute Mortgage Loan or Loans for such Mortgage Loan if such substitution occurs within
two years following the Closing Date; provided that if the omission or defect would cause
the Mortgage Loan to be other than a "qualified mortgage" as defined in Section 860G(a)(3)
of the Code, any such cure or repurchase must occur within 90 days from the date such breach
was discovered. Any such substitution shall be effected by the Company under the same terms
and conditions as provided in Section 2.04 for substitutions by Residential Funding. It is
understood and agreed that the obligation of the Company to cure such breach or to so
purchase or substitute for any Mortgage Loan as to which such a breach has occurred and is
continuing shall constitute the sole remedy respecting such breach available to the
Certificateholders or the Trustee on behalf of the Certificateholders.

SECTION 2.04.  REPRESENTATIONS AND WARRANTIES OF SELLERS.(See Section 2.04 of the Standard
Terms)

SECTION 2.05.  EXECUTION AND AUTHENTICATION OF CERTIFICATES/ISSUANCE OF CERTIFICATES
EVIDENCING INTERESTS IN REMICS.

The Trustee acknowledges the assignment to it of the Mortgage Loans and the delivery
of the Mortgage Files to it, or any Custodian on its behalf, subject to any exceptions
noted, together with the assignment to it of all other assets included in the Trust Fund
and/or the applicable REMIC, receipt of which is hereby acknowledged. Concurrently with
such delivery and in exchange therefor, the Trustee, pursuant to the written request of the
Company executed by an officer of the Company, has executed and caused to be authenticated
and delivered to or upon the order of the Company the Class R-I Certificates in authorized
denominations which, together with the REMIC I Regular Interests, evidence the beneficial
interest in REMIC I, and the Class R-II Certificates in authorized denominations which,
together with the REMIC II Regular Interests, evidence the beneficial interest in REMIC II.

SECTION 2.06.  CONVEYANCE OF REMIC I REGULAR INTERESTS; ACCEPTANCE BY THE TRUSTEE.

The Company, as of the Closing Date, and concurrently with the execution and delivery
hereof, does hereby assign without recourse all the right, title and interest of the Company
in and to the REMIC I Regular Interests to the Trustee for the benefit of the Holders of
each Class of Certificates (other than the Class R-I Certificates). The Trustee
acknowledges receipt of the REMIC I Regular Interests and declares that it holds and will
hold the same in trust for the exclusive use and benefit of all present and future Holders
of each Class of Certificates (other than the Class R-I Certificates). The rights of the
Holders of each Class of Certificates (other than the Class R-I Certificates) to receive
distributions from the proceeds of REMIC II in respect of such Classes, and all ownership
interests of the Holders of such Classes in such distributions, shall be as set forth in
this Agreement.

SECTION 2.07.  ISSUANCE OF CERTIFICATES EVIDENCING INTEREST IN REMIC II.

The Trustee acknowledges the assignment to it of the REMIC I Regular Interests and,
concurrently therewith and in exchange therefor, pursuant to the written request of the
Company executed by an officer of the Company, the Trustee has executed and caused to be
authenticated and delivered to or upon the order of the Company, all Classes of Certificates
(other than the Class R-I Certificates) in authorized denominations, which evidence the
beneficial interest in the entire REMIC II.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 29 of 180

SECTION 2.08.    PURPOSES AND POWERS OF THE TRUST.  (See Section 2.08 of the Standard Terms.)

SECTION 2.09.    AGREEMENT REGARDING ABILITY TO DISCLOSE.

        The Company,  the Master  Servicer and the Trustee hereby agree,  notwithstanding any other  express or implied  agreement to the  contrary,  that any and all Persons,  and any of their respective employees,  representatives,  and other agents may disclose, immediately upon commencement of discussions,  to any and all Persons,  without limitation of any kind, the tax treatment  and tax  structure of the  transaction  and all  materials  of any kind  (including opinions  or other  tax  analyses)  that are  provided  to any of them  relating  to such tax treatment and tax structure.  For purposes of this  paragraph,  the terms "tax  treatment" and "tax structure" are defined under Treasury Regulationss.1.6011-4(c).

ARTICLE III

                    ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

        Section 3.01  Master Servicer to Act as Servicer.  (See Section 3.01 of the Standard
                      Terms)

        Section 3.02  Subservicing Agreements Between Master Servicer and Subservicers;
                      Enforcement of Subservicers' and Sellers' Obligations.  (See Section
                      3.02 of the Standard Terms)

        Section 3.03  Successor Subservicers.  (See Section 3.03 of the Standard Terms)

        Section 3.04  Liability of the Master Servicer.  (See Section 3.04 of the Standard
                      Terms)

        Section 3.05  No Contractual Relationship Between Subservicer and Trustee or
                      Certificateholders.  (See Section 3.05 of the Standard Terms)

        Section 3.06  Assumption or Termination of Subservicing Agreements by Trustee.  (See
                      Section 3.06 of the Standard Terms)

        Section 3.07  Collection of Certain Mortgage Loan Payments; Deposit to Custodial
                      Account.

        (a)           (See Section 3.07(a) of the Standard Terms)

        (b)     The Master Servicer shall establish and maintain a Custodial Account in which the Master Servicer shall deposit or cause to be deposited on a daily basis, except as otherwise specifically provided herein, the following payments and collections remitted by Subservicers or received by it in respect of the Mortgage Loans subsequent to the Cut-off Date (other than in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date):

                (i)     All payments on account of principal, including Principal Prepayments made by Mortgagors on the Mortgage Loans and the principal component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

                (ii)    All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loans, including Buydown Funds, if any, and the interest component of any Subservicer Advance or of any REO Proceeds received in connection with an REO Property for which an REO Disposition has occurred;

                (iii)   Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net

of any related expenses of the Subservicer);

(iv)    All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04 or 4.07 (including amounts received from Residential Funding pursuant to the last paragraph of Section 4 of the Assignment Agreement in respect of any liability, penalty or expense that resulted from a breach of the Compliance With Laws Representation and all amounts required to be deposited in connection with the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2.04;

(v)    Any amounts required to be deposited pursuant to Section 3.07(c) or 3.21;

(vi)    All amounts transferred from the Certificate Account to the Custodial Account in accordance with Section 4.02(a);

(vii)    Any amounts realized by the Subservicer and received by the Master Servicer in respect of any Additional Collateral;

(viii)   Any amounts received by the Master Servicer in respect of Pledged Assets; and

(ix)    Any amounts received by the Master Servicer in connection with any Prepayment Charges on the Prepayment Charge Loans.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being understood and agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans which are not part of the Trust Fund (consisting of payments in respect of principal and interest on the Mortgage Loans due on or before the Cut-off Date) and payments or collections in the nature of late payment charges or assumption fees may but need not be deposited by the Master Servicer in the Custodial Account. In the event any amount not required to be deposited in the Custodial Account is so deposited, the Master Servicer may at any time withdraw such amount from the Custodial Account, any provision herein to the contrary notwithstanding. The Custodial Account may contain funds that belong to one or more trust funds created for mortgage pass-through certificates of other series and may contain other funds respecting payments on Mortgage Loans belonging to the Master Servicer or serviced or master serviced by it on behalf of others. Notwithstanding such commingling of funds, the Master Servicer shall keep records that accurately reflect the funds on deposit in the Custodial Account that have been identified by it as being attributable to the Mortgage Loans.

With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds and the proceeds of the purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04 and 4.07 received in any calendar month, the Master Servicer may elect to treat such amounts as included in the Available Distribution Amount for the Distribution Date in the month of receipt, but is not obligated to do so. If the Master Servicer so elects, such amounts will be deemed to have been received (and any related Realized Loss shall be deemed to have occurred) on the last day of the month prior to the receipt thereof.

(c)         (See Section 3.07(c) of the Standard Terms)

(d)         (See Section 3.07(d) of the Standard Terms)

(e)    Notwithstanding Section 3.07(a), The Master Servicer shall not waive (or permit a Subservicer to waive) any Prepayment Charge unless: (i) the enforceability thereof shall have been limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally, (ii) the enforcement thereof is illegal, or any local, state or federal agency has threatened legal action if the prepayment penalty is enforced, (iii) the collectability thereof shall have been limited due to acceleration in connection with a foreclosure or other involuntary payment or (iv) such waiver is standard and customary in servicing similar Mortgage Loans and relates to a default or a reasonably foreseeable default and would, in the reasonable judgment of the Master Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan. In no event will the Master Servicer waive a Prepayment Charge in connection with a refinancing of a Mortgage Loan that is not related to a default or a reasonably foreseeable default. If a Prepayment Charge is waived, but does not meet the standards described above, then the Master Servicer is required to deposit into the Custodial Account the amount of such waived Prepayment Charge at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Custodial

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 31 of 180

Account. Notwithstanding any other provisions of this Agreement, any payments made by the Master Servicer in respect of any waived Prepayment Charges pursuant to this Section shall be deemed to be paid outside of the Trust Fund and not part of any REMIC.

Section 3.08.  Subservicing Accounts; Servicing Accounts  (See Section 3.08 of the Standard Terms)

Section 3.09.  Access to Certain Documentation and  Information Regarding the Mortgage Loans (See Section 3.09 of the Standard Terms)

Section 3.10.  Permitted Withdrawals from the Custodial Account  (See Section 3.10 of the Standard Terms)

Section 3.11.  Maintenance of the Primary Insurance  Policies; Collections Thereunder (See Section 3.011 of the Standard Terms)

Section 3.12.  Maintenance of Fire Insurance and  Omissions and Fidelity Coverage (See Section 3.12 of the Standard Terms)

Section 3.13.  Enforcement of Due-on-Sale Clauses; Assumption and  Modification Agreements; Certain Assignments     (See Section 3.13 of the Standard Terms)

Section 3.14.  Realization Upon Defaulted Mortgage Loans (See Section 3.14 of the Standard Terms)

Section 3.15.  Trustee to Cooperate; Release of Mortgage Files  (See Section 3.15 of the Standard Terms)

Section 3.16.  Servicing and Other Compensation; Compensating Interest

        (a)     (See Section 3.16(a) of the Standard Terms)

        (b)     Additional servicing compensation in the form of assumption fees, late payment charges, investment income on amounts in the Custodial Account or the Certificate Account or otherwise (but not including Prepayment Charges) shall be retained by the Master Servicer or the Subservicer to the extent provided herein, subject to clause (e) below.  Prepayment charges shall be deposited into the Certificate Account and shall be paid on each Distribution Date to the holders of the Class SB Certificates.

        (c)     (See Section 3.16(c) of the Standard Terms)

        (d)     (See Section 3.16(d) of the Standard Terms)

        (e)     (See Section 3.16(e) of the Standard Terms)

Section 3.17.  Reports to the Trustee and the Company     (See Section 3.17 of the Standard Terms)

Section 3.18.  Annual Statement as to Compliance   (See Section 3.18 of the Standard Terms)

Section 3.19.  Annual Independent Public Accountants' Servicing Report   (See Section 3.19 of the Standard Terms)

Section 3.20.  Rights of the Company in Respect of the Master Servicer   (See Section 3.20 of the Standard Terms)

Section 3.21.  Administration of Buydown Funds     (See Section 3.21 of the Standard Terms)

Section 3.22   Advance Facility (See Section 3.22 of the Standard Terms)

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 32 of 180

ARTICLE IV

PAYMENTS TO CERTIFICATEHOLDERS

SECTION 4.01.  CERTIFICATE ACCOUNT.  (See Section 4.01 of the Standard Terms.)

SECTION 4.02.  DISTRIBUTIONS.

(A)     On each Distribution Date, the Trustee (or the Paying Agent on behalf of the Trustee) shall allocate and distribute the Available Distribution Amount to the extent on deposit in the Certificate Account for such date to the interests issued in respect of REMIC I and REMIC II as specified in this Section.

(B)    (1)            On each Distribution Date, the REMIC I Distribution Amount shall be distributed by REMIC I to REMIC II on account of the REMIC I Regular Interests in the amounts and with the priorities set forth in the definition thereof.

            (2)      Notwithstanding the distributions on the REMIC I Regular Interests described in this Section 4.02(b), distribution of funds from the Certificate Account shall be made only in accordance with Section 4.02(c).

(C)     On each Distribution Date (x) the Master Servicer on behalf of the Trustee or (y) the Paying Agent appointed by the Trustee, shall distribute to each Certificateholder of record on the next preceding Record Date (other than as provided in Section 9.01 of the Standard Terms respecting the final distribution) either in immediately available funds (by wire transfer or otherwise) to the account of such Certificateholder at a bank or other entity having appropriate facilities therefor, if such Certificateholder has so notified the Master Servicer or the Paying Agent, as the case may be, or, if such Certificateholder has not so notified the Master Servicer or the Paying Agent by the Record Date, by check mailed to such Certificateholder at the address of such Holder appearing in the Certificate Register such Certificateholder's share (which share with respect to each Class of Certificates, shall be based on the aggregate of the Percentage Interests represented by Certificates of the applicable Class held by such Holder of the following amounts), in the following order of priority, in each case to the extent of the Available Distribution Amount on deposit in the Certificate Account (except, with respect to clause (viii)(B) below, to the extent of Prepayment Charges on deposit in the Certificate Account):

(I)    The Interest Distribution Amount, sequentially:

            (A)    first, to the Class A-1, Class A-2 and Class A-3 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date, on a pro rata basis in accordance with the Accrued Certificate Interest and any interest thereon due to each such class;

            (B)    second, to the Class M-1 Certificates, Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

            (C)    third, to the Class M-2 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

            (D)    fourth, to the Class M-3 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any related Accrued Certificate Interest due thereon remaining unpaid from any prior Distribution Date, together with interest thereon at the related Pass-Through Rate in effect for such Distribution Date;

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 33 of 180

(E)    fifth,    to    the    Class    M-4    Certificates,    Accrued Certificate   Interest   due   thereon   for   such   Distribution   Date plus any Accrued Certificate  Interest  due thereon remaining unpaid from any prior Distribution Date,  together  with  interest  thereon at the  related  Pass-Through  Rate in effect for such Distribution Date;

(F)    sixth, to the Class M-5 Certificates Accrued Certificate Interest due thereon for such Distribution Date plus any Accrued Certificate Interest  due  thereon  remaining  unpaid  from  any  prior  Distribution  Date, together with interest thereon at the related  Pass-Through  Rate in effect for such Distribution Date;

(G)    seventh,    to    the    Class    M-6    Certificates    Accrued Certificate  Interest due thereon for such  Distribution  Date plus any related Accrued  Certificate  Interest  due  thereon  remaining  unpaid  from any prior Distribution  Date,  together with interest thereon at the related  Pass-Through Rate in effect for such Distribution Date;

(H)    eighth,    to    the    Class    M-7    Certificates,    Accrued Certificate  Interest due thereon for such  Distribution  Date plus any Accrued Certificate  Interest due thereon remaining unpaid from any prior  Distribution Date,  together  with  interest  thereon at the  related  Pass-Through  Rate in effect for such Distribution Date; and

(I)    ninth, to the Class M-8 Certificates Accrued Certificate Interest due thereon for such  Distribution  Date plus any Accrued  Certificate Interest  due  thereon  remaining  unpaid  from  any  prior  Distribution  Date, together with interest thereon at the related  Pass-Through  Rate in effect for such Distribution Date;

(II)    to the Class A Certificateholders and the Class M Certificateholders  from the amount, if any, of  Available  Distribution  Amount remaining  after  the  foregoing distributions,  the  Principal  Distribution  Amount,  which  amount  shall  be allocated in the manner and priority  set forth in Section   4.02(d),  until the aggregate  Certificate  Principal  Balance of each Class of Class A Certificates and Class M Certificates has been reduced to zero;

(III)    to the Class A Certificateholders  and Class M Certificateholders  from the amount, if any, of Excess Cash Flow remaining  after the foregoing distributions,  the amount  of  any  related  Prepayment  Interest  Shortfalls  with  respect  to the Mortgage  Loans for that  Distribution  Date, to the  extent  not  covered  by Compensating  Interest  on  such  Distribution  Date,  which  amount  shall  be allocated to the Class A Certificateholders  and Class M Certificateholders  on a pro rata basis,  based  on  the  amount  of  Prepayment  Interest  Shortfalls allocated thereto for such Distribution Date;

(IV)    to the Class A Certificateholders  and Class M Certificateholders  from the amount, if any, of Excess Cash Flow remaining  after the foregoing  distributions,  the amount  of any  Prepayment  Interest  Shortfalls  allocated  thereto  remaining unpaid  from prior  Distribution  Dates together with  interest  thereon at the related  Pass-Through Rate in effect for such  Distribution  Date, which amount shall  be  allocated  to  the  Class  A  Certificateholders  and  Class  M Certificateholders  on a pro rata basis,  based on the  amount  of  Prepayment Interest Shortfalls remaining unpaid;

(V)    to the Class  A  Certificates  and Class M  Certificates  from the  amount, if any, of Excess Cash Flow remaining after the foregoing  distributions the amount of any Basis Risk  Shortfall on such  Certificates  (after giving effect,  with respect to the  initial  Distribution  Date, to  payments  made  from the  Basis Risk Shortfall Reserve Fund),  which amount shall be allocated first, to the Class A Certificates  on a pro rata basis,  based on  their  respective  Basis Risk Shortfall for such  Distribution  Date,  and then,  sequentially,  to the Class M-1,  Class M-2,  Class M-3,  Class M-4,  Class M-5,  Class M-6,  Class M-7 and Class M-8 Certificateholders, in that order;

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 34 of 180

(VI)    to pay the holders of the Class A and Class M Certificates, on a pro rata basis, based on Relief Act Shortfalls allocated thereto for such Distribution Date, the amount of any Relief Act Shortfalls allocated thereto with respect to the Mortgage Loans for such Distribution Date,

(VII)   to the Class M Certificateholders, the principal portion of any Realized Losses previously allocated to those Certificates and remaining unreimbursed, which amount shall be allocated sequentially, to the Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7 and Class M-8 Certificateholders, in that order;

(VIII)  to the Class SB Certificates, (A) from the amount, if any, of the Available Distribution Amount remaining after the foregoing distributions, the sum of (I) Accrued Certificate Interest thereon, (II) the amount of any Overcollateralization Reduction Amount for such Distribution Date and (III) for any Distribution Date after the Certificate Principal Balance of each Class A Certificate and Class M Certificate has been reduced to zero, the Overcollateralization Amount, and (B) from prepayment charges on deposit in the Certificate Account, any prepayment charges received on the Mortgage Loans during the related Prepayment Period.

(IX)    to the Class R Certificateholders, the balance, if any, of the Available Distribution Amount.

All payments of amounts in respect of Basis Risk Shortfall made pursuant to Section 4.02(c)(v) shall, for federal income tax purposes, be deemed to have been distributed from REMIC II to the holder of the Class SB Certificates and then paid outside of any REMIC to the recipients thereof pursuant to an interest rate cap contract. By accepting their Certificates the holders of the Certificates agree to treat such payments in the manner described in the preceding sentence for purposes of filing their income tax returns.

(D)    The Principal Distribution Amount payable to the Class A Certificateholders and the Class M Certificateholders shall be distributed as follows:

(I)     first, the Class A Principal Distribution Amount shall be distributed concurrently, on a pro rata basis in accordance with their respective Certificate Principal Balances, to the Class A-1, Class A-2 and Class A-3 Certificates, until the Certificate Principal Balances thereof have been reduced to zero; provided, however that if a Sequential Trigger Event is in effect, the Class A Principal Distribution Amount will be distributed sequentially to the Class A-1, Class A-2 and Class A-3 Certificates, in that order, in each case until the Certificate Principal Balance thereof has been reduced to zero;

(II)    second, the Class M-1 Principal Distribution Amount shall be distributed to the Class M-1 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(III)   third, the Class M-2 Principal Distribution Amount shall be distributed to the Class M-2 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(IV)    fourth, the Class M-3 Principal Distribution Amount shall be distributed to the Class M-3 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(V)     fifth, the Class M-4 Principal Distribution Amount shall be distributed to the Class M-4 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(VI)    sixth, the Class M-5 Principal Distribution Amount shall be distributed to the Class M-5 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(VII)   seventh, the Class M-6 Principal Distribution Amount shall be distributed to the Class M-6 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(VIII)  eighth, the Class M-7 Principal Distribution Amount shall be distributed to the Class

M-7 Certificates until the Certificate Principal Balance thereof has been reduced to zero;

(IX)    ninth, the Class M-8 Principal Distribution Amount shall be distributed to the Class M-8 Certificates until the Certificate Principal Balance thereof has been reduced to zero.

(E)    Notwithstanding the foregoing clauses (c) and (d), upon the reduction of the Certificate Principal Balance of a Class of Class A Certificates or Class M Certificates to zero, such Class of Certificates will not be entitled to further distributions pursuant to Section 4.02, including, without limitation, the payment of current and unreimbursed Prepayment Interest Shortfalls pursuant to clauses (c)(iii) and (iv) and Basis Risk Shortfall pursuant to clause (c)(v).

(F)    Each distribution with respect to a Book-Entry Certificate shall be paid to the Depository, as Holder thereof, and the Depository shall be solely responsible for crediting the amount of such distribution to the accounts of its Depository Participants in accordance with its normal procedures. Each Depository Participant shall be responsible for disbursing such distribution to the Certificate Owners that it represents and to each indirect participating brokerage firm (a "brokerage firm") for which it acts as agent. Each brokerage firm shall be responsible for disbursing funds to the Certificate Owners that it represents. None of the Trustee, the Certificate Registrar, the Company or the Master Servicer shall have any responsibility therefor.

(G)    Except as otherwise provided in Section 9.01 of the Standard Terms, if the Master Servicer anticipates that a final distribution with respect to any Class of Certificates will be made on a future Distribution Date, the Master Servicer shall, no later than 40 days prior to such final Distribution Date, notify the Trustee and the Trustee shall, not earlier than the 15th day and not later than the 25th day of the month next preceding the month of such final distribution, distribute, or cause to be distributed, to each Holder of such Class of Certificates a notice to the effect that: (i) the Trustee anticipates that the final distribution with respect to such Class of Certificates will be made on such Distribution Date but only upon presentation and surrender of such Certificates at the office of the Trustee or as otherwise specified therein, and (ii) no interest shall accrue on such Certificates from and after the end of the related Interest Accrual Period. In the event that Certificateholders required to surrender their Certificates pursuant to Section 9.01(c) of the Standard Terms do not surrender their Certificates for final cancellation, the Trustee shall cause funds distributable with respect to such Certificates to be withdrawn from the Certificate Account and credited to a separate escrow account for the benefit of such Certificateholders as provided in Section 9.01(d) of the Standard Terms.

(H)    On the initial Distribution Date, Basis Risk Shortfall amounts with respect to the initial Distribution Date, if any, will be paid to the Holders of the Class A Certificates and Class M Certificates, pro rata, based on the amount of Basis Risk Shortfalls for such Classes, from amounts withdrawn from the Basis Risk Shortfall Reserve Fund.

(I)    On any Distribution Date, Net Deferred Interest for such Distribution Date, if any, will be allocated to each Class of Class A Certificates and Class M Certificates, on a pro rata basis, in accordance with the amount of interest accrued on such Class at its Pass-Through Rate for the Interest Accrual Period for such Distribution Date (in each case before giving effect to any allocation of Net Deferred Interest for such Distribution Date). Net Deferred Interest allocated to any Class of Certificates will be added as principal to the outstanding Certificate Principal Balance of such Class of Certificates.

SECTION 4.03.    STATEMENTS TO CERTIFICATEHOLDERS; STATEMENTS TO THE RATING AGENCIES; EXCHANGE ACT REPORTING. (See Section 4.03 of the Standard Terms.)

SECTION 4.04.    DISTRIBUTION OF REPORTS TO THE TRUSTEE AND THE COMPANY; ADVANCES BY THE MASTER SERVICER.

(a) (See Section 4.04(a) of the Standard Terms)

(b) On or before 2:00 P.M. New York time on each Certificate Account Deposit Date, the Master Servicer shall either (i) deposit in the Certificate Account from its own funds, or funds received therefor from the Subservicers, an amount equal to the Advance be made by the Master Servicer in respect of the related Distribution Date, which shall be in aggregate amount equal to the aggregate amount of Monthly Payments (with each interest portion thereof adjusted to the Net Mortgage Rate), less the amount of any related Servicing

Modifications, Debt Service Reductions or reductions in the amount of interest collectable from the Mortgagor pursuant to the Servicemembers Civil Relief Act, as amended, or similar legislation or regulations then in effect, on the Outstanding Mortgage Loans as of the related Due Date, which Monthly Payments were not received as of the close of business as of t Determination Date; provided that no Advance shall be made if it would be a Nonrecoverable Advance; and provided, further, that the Monthly Payment for purposes of this Section 4.04 shall mean the minimum monthly payment due under the Mortgage Note, net of the Servicing Fee a Subservicing Fee, (ii) withdraw from amounts on deposit in the Custodial Account and deposit in the Certificate Account all or a portion of the Amount Held for Future Distribution in discharge of any such Advance, or (iii) make advances in the form of any combination of (i) and (ii) aggregating the amount of such Advance. Any portion of the Amount Held for Future Distribution so used shall be replaced by the Master Servicer by deposit in the Certificate Account on or before 11:00 A.M. New York time on any future Certificate Account Deposit Date to the extent that funds attributable to the Mortgage Loans that are available in the Custodial Account for deposit in the Certificate Account on such Certificate Account Deposit Date shall be less than payments to Certificateholders required to be made on the following Distribution Date. The Master Servicer shall be entitled to use any Advance made by a Subservicer as described in Section 3.07(b) that has been deposited in the Custodial Account on or before such Distribution Date as part of the Advance made by the Master Servicer pursuan to this Section 4.04. The amount of any reimbursement pursuant to Section 4.02(a) in respect c outstanding Advances on any Distribution Date shall be allocated to specific Monthly Payments due but delinquent for previous Due Periods, which allocation shall be made, to the extent practicable, to Monthly Payments which have been delinquent for the longest period of time. Such allocations shall be conclusive for purposes of reimbursement to the Master Servicer from recoveries on related Mortgage Loans pursuant to Section 3.10.

The determination by the Master Servicer that it has made a Nonrecoverable Advance or that any proposed Advance, if made, would constitute a Nonrecoverable Advance, shall be evidenced by an Officers' Certificate of the Master Servicer delivered to the Company and the Trustee.

If the Master Servicer determines as of the Business Day preceding any Certificate Account Deposit Date that it will be unable to deposit in the Certificate Account an amount equal to the Advance required to be made for the immediately succeeding Distribution Date, it shall give notice to the Trustee of its inability to advance (such notice may be given by telecopy), not later than 3:00 P.M., New York time, on such Business Day, specifying the porti amount that it will be unable to deposit. Not later than 3:00 P.M., New York time, on the Certificate Account Deposit Date the Trustee shall, unless by 12:00 Noon, New York time, on such day the Trustee shall have been notified in writing (by telecopy) that the Master Servicer shall have directly or indirectly deposited in the Certificate Account such portion c amount of the Advance as to which the Master Servicer shall have given notice pursuant to the preceding sentence, pursuant to Section 7.01, (a) terminate all of the rights and obligations Master Servicer under this Agreement in accordance with Section 7.01 and (b) assume the rights obligations of the Master Servicer hereunder, including the obligation to deposit in the Certificate Account an amount equal to the Advance for the immediately succeeding Distribution Date.

The Trustee shall deposit all funds it receives pursuant to this Section 4.04 into the Certificate Account.

SECTION 4.05.    ALLOCATION OF REALIZED LOSSES.

(A)      Prior to each Distribution Date, the Master Servicer shall determine the total amount of Realized Losses, if any, that resulted from any Cash Liquidation, Servicing Modifications, Debt Service Reduction, Deficient Valuation or REO Disposition that occurred during the related Prepayment Period or, in the case of a Servicing Modification that constitutes a reduction of the interest rate on a Mortgage Loan, the amount of the reduction in the interest portion of the Monthly Payment due in the month in which such Distribution Date occurs. The amount of each Realized Loss shall be evidenced by an Officers' Certificate. All Realized Losses on the Mortgage Loans shall be allocated as follows:

        first, to the Excess Cash Flow as part of the Principal Distribution Amount as provided in Section 4.02(c), to the extent of the Excess Cash Flow for such Distribution Date,

        second, in reduction of the Overcollateralization Amount, until such amount has been reduced to zero;

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 37 of 180

third, to the Class M-8 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

fourth, to the Class M-7 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

fifth, to the Class M-6 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

sixth, to the Class M-5 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

seventh, to the Class M-4 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

eighth, to the Class M-3 Certificates, until the Certificate Principal Balance thereof has been reduced to zero;

ninth, to the Class M-2 Certificates, until the Certificate Principal Balance thereof has been reduced to zero; and

tenth, to the Class M-1 Certificates, until the Certificate Principal Balance thereof has been reduced to zero.

(B)    Any allocation of the principal portion of Realized Losses (other than Debt Service Reductions) to the Class M Certificates on any Distribution Date shall be made by reducing the Certificate Principal Balance thereof by the amount so allocated, which allocation shall be deemed to have occurred on such Distribution Date, until the Certificate Principal Balance thereof has been reduced to zero; provided, that no such reduction shall reduce the aggregate Certificate Principal Balance of the Certificates below the aggregate Stated Principal Balance of the Mortgage Loans. Allocations of the interest portions of Realized Losses (other than any interest rate reduction resulting from a Servicing Modification) to any Class of Class M Certificates on any Distribution Date shall be made by operation of the definition of "Accrued Certificate Interest" for each Class for such Distribution Date. Allocations of the interest portion of a Realized Loss resulting from an interest rate reduction in connection with a Servicing Modification shall be made by operation of the priority of payment provisions of Section 4.02(c). All Realized Losses and all other losses allocated to a Class of Certificates hereunder will be allocated among the Certificates of such Class in proportion to the Percentage Interests evidenced thereby.

(C)    Realized Losses shall be allocated among the REMIC I Regular Interests pursuant to the definition of REMIC I Realized Losses.

(D)    Realized Losses allocated to the Excess Cash Flow or the Overcollateralization Amount pursuant to paragraphs (a), (b) or (c) of this Section, the definition of Accrued Certificate Interest and the operation of Section 4.02(c) shall be deemed allocated to the Class SB Certificates. Realized Losses allocated to the Class SB Certificates shall, to the extent such Realized Losses represent Realized Losses on an interest portion, be allocated to REMIC II Regular Interest SB-IO. Realized Losses allocated to the Excess Cash Flow pursuant to paragraph (b) of this Section shall be deemed to reduce Accrued Certificate Interest on REMIC II Regular Interest SB-IO. Realized Losses allocated to the Overcollateralization Amount pursuant to paragraph (b) of this Section shall be deemed first to reduce the principal balance of REMIC II Regular Interest SB-PO until such principal balance shall have been reduced to zero and thereafter to reduce accrued and unpaid interest on REMIC II Regular Interest SB-IO.

SECTION 4.06.  REPORTS OF FORECLOSURES AND ABANDONMENT OF MORTGAGED PROPERTY.  (See Section 4.06 of the Standard Terms.)

SECTION 4.07.  OPTIONAL PURCHASE OF DEFAULTED MORTGAGE LOANS.  (See Section 4.07 of the Standard Terms.)

SECTION 4.08.  SURETY BOND.  (See Section 4.08 of the Standard Terms.)

SECTION 4.09.  BASIS RISK SHORTFALL RESERVE FUND.

(a)    On or before the Closing Date, the Trustee shall establish a Reserve Fund on behalf

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 38 of 180

of the Holders of the Class A Certificates and Class M Certificates. The Reserve Fund must be an Eligible Account. The Reserve Fund shall be entitled "Basis Risk Shortfall Reserve Fund, Deutsche Bank Trust Company Americas, as Trustee for the benefit of holders of Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO3" (the "Basis Risk Shortfall Reserve Fund"). The Basis Risk Shortfall Reserve Fund shall be an Eligible Account or a sub-account of an Eligible Account. On the Closing Date, the Depositor will cause, on behalf of the Trust, the Basis Risk Shortfall Reserve Fund Amount to be deposited into the Basis Risk Shortfall Reserve Fund. Pursuant to Section 4.02(j), on the initial Distribution Date, amounts on deposit in the Basis Risk Shortfall Reserve Fund will be withdrawn from the Basis Risk Shortfall Reserve Fund and deposited into the Certificate Account for payment to the Class A Certificates and Class M Certificates to the extent of any Basis Risk Shortfall Amount on the Class A Certificates and Class M Certificates on such initial Distribution Date. After the initial Distribution Date, all amounts remaining in the Basis Risk Shortfall Reserve Fund will be distributed to Goldman, Sachs & Co. or its designee, and following such withdrawal the Basis Risk Shortfall Reserve Fund will be closed.

(b)    The Trustee will invest funds deposited in the Basis Risk Shortfall Reserve Fund as directed by the Depositor or its designee in writing in Permitted Investments with a maturity date (i) no later than the Business Day immediately preceding the date on which such funds are required to be withdrawn from such account pursuant to this Agreement, if a Person other than the Trustee or an Affiliate of the Trustee is the obligor for the Permitted Investment, or (ii) no later than the date on which such funds are required to be withdrawn from such account or sub account of a trust account pursuant to this Agreement, if the Trustee or an affiliate of the Trustee is the obligor for the Permitted Investment (or, if no written direction is received by the Trustee from the Depositor, then funds in such account shall remain uninvested). For federal income tax purposes, the Depositor shall be the owner of the Basis Risk Shortfall Reserve Fund and shall report all items of income, deduction, gain or loss arising therefrom. At no time will the Basis Risk Shortfall Reserve Fund be an asset of any REMIC created hereunder. All income and gain realized from investment of funds deposited in the Basis Risk Shortfall Reserve Fund, which investment shall be made solely upon the written direction of the Depositor, shall be for the sole and exclusive benefit of the Depositor and shall be remitted by the Trustee to the Depositor within one Business Day from the closing of the Basis Risk Shortfall Reserve Fund. The Depositor shall deposit in the Basis Risk Shortfall Reserve Fund the amount of any net loss incurred in respect of any such Permitted Investment immediately upon realization of such loss.

ARTICLE V

THE CERTIFICATES

(See Article V of the Standard Terms)

ARTICLE VI

THE COMPANY AND THE MASTER SERVICER

(See Article VI of the Standard Terms.)

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 39 of 180

---

ARTICLE VII

DEFAULT

(See Article VII of the Standard Terms.)

---

ARTICLE VIII

CONCERNING THE TRUSTEE

(See Article VIII of the Standard Terms.)

SECTION 1.01.

---

ARTICLE IX

TERMINATION

(See Article IX of the Standard Terms)

---

ARTICLE X

REMIC PROVISIONS

SECTION 10.01. REMIC ADMINISTRATION.  (See Section 10.01 of the Standard Terms.)

SECTION 10.02. MASTER  SERVICER;  REMIC  ADMINISTRATOR  AND  TRUSTEE   INDEMNIFICATION.   (See
Section 10.02 of the Standard Terms.)

SECTION 10.03. DESIGNATION OF REMICS.

        The REMIC  Administrator  will make an election to treat the segregated pool of assets
described in the definition of REMIC I (as defined  herein)  (including the Mortgage Loans but
excluding the Basis Risk Shortfall  Reserve Fund),  and subject to this Agreement,  as a REMIC
(REMIC I) for federal income tax purposes.  The REMIC  Administrator  will make an election to
treat the  segregated  pool of assets  consisting of the REMIC I Regular  Interests as a REMIC

(REMIC II) for federal income tax purposes.

The REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions (as defined herein) under the federal income tax law.

The REMIC II Regular Interests will be the "regular interests" in REMIC II, ownership of which will be represented by the Class A-1 Certificates, Class A-2 Certificates, Class A-3 Certificates, Class M-1 Certificates, Class M-2 Certificates, Class M-3 Certificates, Class M-4 Certificates, Class M-5 Certificates, Class M-6 Certificates, Class M-7 Certificates, Class M-8 Certificates and Class SB Certificates, and the Class R-II Certificates will represent the sole class of "residual interests" in REMIC II for purposes of the REMIC Provisions (as defined herein) under federal income tax law.

SECTION 10.04. DISTRIBUTIONS ON THE REMIC I REGULAR INTERESTS. (See Section 4.02(c) of this Series Supplement.)

SECTION 10.05. COMPLIANCE WITH WITHHOLDING REQUIREMENTS.

Notwithstanding any other provision of this Agreement, the Trustee or any Paying Agent, as applicable, shall comply with all federal withholding requirements respecting payments to Certificateholders, including interest or original issue discount payments or advances thereof that the Trustee or any Paying Agent, as applicable, reasonably believes are applicable under the Code. The consent of Certificateholders shall not be required for such withholding. In the event the Trustee or any Paying Agent, as applicable, does withhold any amount from interest or original issue discount payments or advances thereof to any Certificateholder pursuant to federal withholding requirements, the Trustee or any Paying Agent, as applicable, shall indicate the amount withheld to such Certificateholder pursuant to the terms of such requirements.

---

ARTICLE XI

MISCELLANEOUS PROVISIONS

SECTION 11.01. AMENDMENT. (See Section 11.01 of the Standard Terms.)

SECTION 11.02. RECORDATION OF AGREEMENT; COUNTERPARTS. (See Section 11.02 of the Standard Terms.)

SECTION 11.03. LIMITATION ON RIGHTS OF CERTIFICATEHOLDERS. (See Section 11.03 of the Standard Terms.)

SECTION 11.04. GOVERNING LAW. (See Section 11.04 of the Standard Terms.)

SECTION 11.05. NOTICES. All demands and notices hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or mailed by registered mail, postage prepaid (except for notices to the Trustee which shall be deemed to have been duly given only when received), to the appropriate address for each recipient listed in the table below or, in each case, such other address as may hereafter be furnished in writing to the Master Servicer, the Trustee and the Company, as applicable:

| RECIPIENT | ADDRESS |
|---|---|
| Company | 8400 Normandale Lake Boulevard Suite 250 Minneapolis, Minnesota 55437 Attention: President |
| Master Servicer | 2255 N. Ontario Street, Suite 400 Burbank, California 91504-2130 Attention: Managing Director/Master Servicing |

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 41 of 180

| Trustee | Corporate Trust Office<br>1761 East St. Andrew Place<br>Santa Ana, California 92705-4934,<br>Attention: Residential Accredit Loans, Inc. Series<br>2006-QO3 |
|---|---|
| | The Trustee designates its offices located at DB Service<br>Tennessee, 648 Grassmere Park Road, Nashville, TN<br>37211-3658, Attn: Transfer Unit, for the purposes of<br>Section 8.12 of the Standard Terms |
| Moody's Investors Service, Inc. | 99 Church Street, 4th Floor<br>New York, New York 10004 |
| Standard & Poor's Ratings Services,<br>a division of The McGraw-Hill<br>Companies, Inc. | 55 Water Street<br>41st Floor<br>New York, New York 10041 |

Any notice required or permitted to be mailed to a Certificateholder shall be given by first class mail, postage prepaid, at the address of such holder as shown in the Certificate Register. Any notice so mailed within the time prescribed in this Agreement shall be conclusively presumed to have been duly given, whether or not the Certificateholder receives such notice.

SECTION 11.06. REQUIRED NOTICES TO RATING AGENCY AND SUBSERVICER. (See Section 11.06 of the Standard Terms.)

SECTION 11.07. SEVERABILITY OF PROVISIONS. (See Section 11.07 of the Standard Terms.)

SECTION 11.08. SUPPLEMENTAL PROVISIONS FOR RESECURITIZATION. (See Section 11.08 of the Standard Terms.)

SECTION 11.09. ALLOCATION OF VOTING RIGHTS.

98.0% of all of the Voting Rights shall be allocated among Holders of the Class A Certificates and Class M Certificates, in proportion to the outstanding Certificate Principal Balances of their respective Certificates; 1.0% of all Voting Rights shall be allocated among the Holders of Class SB Certificates; 0.50% of all Voting Rights shall be allocated among the Holders of the Class R-I Certificates, in accordance with their respective Percentage Interests; and 0.50% of all Voting Rights shall be allocated among the Holders of the Class R-II Certificates, in accordance with their respective Percentage Interests.

SECTION 11.10. NO PETITION.

The Depositor, Master Servicer and the Trustee, by entering into this Agreement, and each Certificateholder, by accepting a Certificate, hereby covenant and agree that they will not at any time institute against the Trust Fund, or join in any institution against the Trust Fund of, any bankruptcy proceedings under any United States federal or state bankruptcy or similar law in connection with any obligation with respect to the Certificates or this Agreement.

---

ARTICLE XII

COMPLIANCE WITH REGULATION AB

(See Article XII of the Standard Terms)

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 42 of 180

IN WITNESS WHEREOF, the Company, the Master Servicer and the Trustee have caused
their names to be signed hereto by their respective officers thereunto duly authorized and
their respective seals, duly attested, to be hereunto affixed, all as of the day and year
first above written.

RESIDENTIAL ACCREDIT LOANS, INC.

[Seal]

By:  /s/ Heather Anderson
Name:   Heather Anderson
Title:  Vice President

Attest: /s/ Tim Jacobson
        Name:   Tim Jacobson
        Title: Vice President

RESIDENTIAL FUNDING CORPORATION

[Seal]

By:  /s/ Tim Jacobson
Name:   Tim Jacobson
Title:  Associate

Attest: /s/ Heather Anderson
        Name:   Heather Anderson
        Title: Associate

DEUTSCHE BANK TRUST COMPANY AMERICAS, as
Trustee

[Seal]

By: /s/ Barbara Campbell
Name:   Barbara Campbell
Title: Vice President

By: /s/ Eiko Akiyama
Name:   Eiko Akiyama
Title:  Associate

Attest: /s/ Marion Hogan
        Name:   Marion Hogan
        Title: Associate

---

STATE OF MINNESOTA          )
                            ) ss.:
COUNTY OF RAMSEY            )

On the 30th day of March, 2006 before me, a notary public in and for said State,
personally appeared Heather Anderson known to me to be a Vice President of Residential
Accredit Loans, Inc., one of the corporations that executed the within instrument, and also
known to me to be the person who executed it on behalf of said corporation, and acknowledged
to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day
and year in this certificate  first above written.

Notary Public

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 43 of 180

[Notarial Seal]

---

STATE OF MINNESOTA            )
                              ) ss.:
COUNTY OF HENNEPIN            )

On the 30th day of March, 2006 before me, a notary public in and for said State, personally appeared Tim Jacobson known to me to be a(n) Associate of Residential Funding Corporation, one of the corporations that executed the within instrument, and also known to me to be the person who executed it on behalf of said corporation, and acknowledged to me that such corporation executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.


                                          Notary Public
[Notarial Seal]

---

STATE OF CALIFORNIA           )
                              ) ss.:
COUNTY OF ORANGE              )

On the 30th day of March, 2006 before me, a notary public in and for said State, personally appeared Barbara Campbell known to me to be a(n) Vice President of DEUTSCHE BANK TRUST COMPANY AMERICAS, the national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said national banking association and acknowledged to me that such national banking association executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.


                                          Notary Public
[Notarial Seal]

STATE OF CALIFORNIA           )
                              ) ss.:
COUNTY OF ORANGE              )

On the 30th day of March, 2006 before me, a notary public in and for said State, personally appeared Eiko Akiyama known to me to be a(n) Associate of DEUTSCHE BANK TRUST COMPANY AMERICAS, the national banking association that executed the within instrument, and also known to me to be the person who executed it on behalf of said national banking association and acknowledged to me that such national banking association executed the within instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 44 of 180

                                        Notary Public
[Notarial Seal]

_____


                              EXHIBIT ONE

                          MORTGAGE LOAN SCHEDULE


_____


                              EXHIBIT TWO

                        INFORMATION TO BE INCLUDED IN
                      MONTHLY DISTRIBUTION DATE STATEMENT

(i) the applicable Record Date, Determination Date and Distribution Date, and the
date on which the applicable interest accrual period commenced;

(ii) the aggregate amount of payments received with respect to the Mortgage Loans,
including prepayment amounts;

(iii) the Servicing Fee and Subservicing Fee payable to the Master Servicer and the
Subservicer;

(iv) the amount of any other fees or expenses paid, and the identity of the party
receiving such fees or expenses;

(v) (a) the amount of such distribution to the Certificateholders of such Class
applied to reduce the Certificate Principal Balance thereof, and (b) the aggregate
amount included therein representing Principal Prepayments;

(vi) the amount of such distribution to Holders of such Class of Certificates
allocable to interest;

(vii) if the distribution to the Holders of such Class of Certificates is less than
the full amount that would be distributable to such Holders if there were sufficient
funds available therefor, the amount of the shortfall;

(viii) the aggregate Certificate Principal Balance of each Class of Certificates,
before and after giving effect to the amounts distributed on such Distribution Date,
separately identifying any reduction thereof due to Realized Losses other than
pursuant to an actual distribution of principal;

(ix)  the aggregate Certificate Principal Balance of each of the Class A, Class M and
Class SB Certificates as of the Closing Date.

(x) the weighted average remaining term to maturity of the Mortgage Loans after

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 45 of 180

giving effect to the amounts distributed on such Distribution Date;

(xi) the weighted average Mortgage Rates of the Mortgage Loans after giving effect to the amounts distributed on such Distribution Date;

(xii) the number and Pool Stated Principal Balance of the Mortgage Loans after giving effect to the distribution of principal on such Distribution Date and the number of Mortgage Loans at the beginning and end of the related Due Period;

(xiii) on the basis of the most recent reports furnished to it by Sub-Servicers, the number and Stated Principal Balances of Mortgage Loans that are Delinquent (A) 30-59 days, (B) 60-89 days and (C) 90 or more days and the number and Stated Principal Balances of Mortgage Loans that are in foreclosure;

(xiv) the aggregate amount of Realized Losses for such Distribution Date;

(xv) the amount, terms and general purpose of any Advance by the Master Servicer pursuant to Section 4.04 and the amount of all Advances that have been reimbursed during the related Due Period;

(xvi) any material modifications, extensions or waivers to the terms of the Mortgage Loans during the Due Period or that have cumulatively become material over time;

(xvii) any material breaches of Mortgage Loan representations or warranties or covenants in the Agreement.

(xviii) the number, stated and aggregate principal balance of any REO Properties;

(xix) the aggregate Accrued Certificate Interest remaining unpaid, if any, for each Class of Certificates, after giving effect to the distribution made on such Distribution Date;

(xx) the Pass-Through Rates on each Class of Certificates and the Net WAC Cap Rate for such Distribution Date, separately identifying LIBOR for such Distribution Date;

(xxi) the Basis Risk Shortfall and Prepayment Interest Shortfalls;

(xxii) the related Senior Enhancement Percentage for such Distribution Date;

(xxiii) the Overcollateralization Amount and Required Overcollateralization Amount following such Distribution Date;

(xxiv)  the occurrence of the Stepdown Date, and the aggregate amount of Realized Losses since the Cut-off Date for the Mortgage Loans;

(xxv) the occurrence of the Credit Support Depletion Date;

(xxvi) the aggregate amount of any recoveries on previously foreclosed loans from Sellers;

(xxvii) the aggregate amount of Net Deferred Interest for such Distribution Date;

(xxviii) the amount of any payment made from the Basis Risk Shortfall Reserve Fund on the initial Distribution Date and the balance of the Basis Risk Shortfall Reserve Fund after giving effect to such amounts.

In the case of information  furnished  pursuant to clauses (v)(a) and (vi) above,  the amounts shall be expressed as a dollar amount per Certificate with a $1,000 denomination.

The Trustee's  internet website will initially be located at  www.tss.db.com/invr.  To receive this statement via first class mail, telephone the trustee at (800) 735-7777.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 46 of 180

EXHIBIT THREE

STANDARD TERMS OF POOLING AND SERVICING
AGREEMENT DATED AS OF MARCH 1, 2006

=======================================================================================

STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2006

Residential Accredit Loans, Inc.
Mortgage Asset-Backed Pass-Through Certificates

=======================================================================================

## TABLE OF CONTENTS

PAGE

ARTICLE I         DEFINITIONS..............................................................2

        Section 1.01. Definitions............................................................2

        Section 1.02. Use of Words and Phrases............................................34

ARTICLE II        CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES..........35

        Section 2.01. Conveyance of Mortgage Loans........................................35

        Section 2.02. Acceptance by Trustee...............................................41

        Section 2.03. Representations, Warranties and Covenants of the Master Servicer and the
                      42

        Section 2.04. Representations and Warranties of Residential Funding................44

        Section 2.05. Execution and Authentication of Certificates/Issuance of Certificates Ev
                      Interests in REMIC I Certificates...................................46

        Section 2.06. Conveyance of Uncertificated REMIC I and REMIC II Regular Interests; Acc
                      by the Trustee......................................................46

        Section 2.07. Issuance of Certificates Evidencing Interests in REMIC II............46

        Section 2.08. Purposes and Powers of the Trust....................................46

ARTICLE III       ADMINISTRATION AND SERVICING OF MORTGAGE LOANS...........................46

        Section 3.01. Master Servicer to Act as Servicer..................................46

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 47 of 180

Section 3.02. Subservicing Agreements Between Master Servicer and Subservicers; Enfor Subservicers' and Sellers' Obligations..........................48

Section 3.03. Successor Subservicers...............................................49

Section 3.04. Liability of the Master Servicer....................................49

Section 3.05. No Contractual Relationship Between Subservicer and Trustee or Certifica 50

Section 3.06. Assumption or Termination of Subservicing Agreements by Trustee......50

Section 3.07. Collection of Certain Mortgage Loan Payments;  Deposits to Custodial Acc

Section 3.08. Subservicing Accounts; Servicing Accounts...........................53

Section 3.09. Access to Certain Documentation and  Information Regarding the Mortgage

Section 3.10. Permitted Withdrawals from the Custodial Account.....................55

Section 3.11. Maintenance of the Primary Insurance  Policies; Collections Thereunder57

Section 3.12. Maintenance of Fire Insurance and  Omissions and Fidelity Coverage...58

Section 3.13. Enforcement of Due-on-Sale Clauses; Assumption and  Modification Agreeme Certain Assignments.............................................59

Section 3.14. Realization Upon Defaulted Mortgage Loans...........................61

Section 3.15. Trustee to Cooperate; Release of Mortgage Files.....................65

Section 3.16. Servicing and Other Compensation; Compensating Interest..............66

Section 3.17. Reports to the Trustee and the Company..............................67

Section 3.18. Annual Statement as to Compliance and Servicing Assessment..........67

Section 3.19. Annual Independent Public Accountants' Servicing Report.............68

Section 3.20. Rights of the Company in Respect of the Master Servicer.............68

Section 3.21. Administration of Buydown Funds.....................................68

Section 3.22. Advance Facility....................................................69

ARTICLE IV       PAYMENTS TO CERTIFICATEHOLDERS.........................................73

Section 4.01. Certificate Account.................................................73

Section 4.02. Distributions.     As provided in Section 4.02 of the Series Supplement

Section 4.03. Statements to Certificateholders; Statements to Rating Agencies; Exchang Reporting......................................................74

Section 4.04. Distribution of Reports to the Trustee and  the Company; Advances by the Servicer.......................................................76

Section 4.05. Allocation of Realized Losses.......................................78

Section 4.06. Reports of Foreclosures and Abandonment of Mortgaged Property........78

Section 4.07. Optional Purchase of Defaulted Mortgage Loans.......................78

Section 4.08. Surety Bond.........................................................79

ARTICLE V        THE CERTIFICATES......................................................79

Section 5.01. The Certificates....................................................79

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 48 of 180

Section 5.02. Registration of Transfer and Exchange of Certificates................81

Section 5.03. Mutilated, Destroyed, Lost or Stolen Certificates....................87

Section 5.04. Persons Deemed Owners...............................................88

Section 5.05. Appointment of Paying Agent.........................................88

Section 5.06. U.S.A. Patriot Act Compliance.......................................88

ARTICLE VI        THE COMPANY AND THE MASTER SERVICER.....................................89

Section 6.01. Respective Liabilities of the Company and the Master Servicer........89

Section 6.02. Merger or Consolidation of the Company or the Master Servicer; Assignment
              Rights and Delegation of Duties by Master Servicer...............89

Section 6.03. Limitation on Liability of the Company,  the Master Servicer and Others9

Section 6.04. Company and Master Servicer Not to Resign...........................91

ARTICLE VII       DEFAULT................................................................92

Section 7.01. Events of Default...................................................92

Section 7.02. Trustee or Company to Act; Appointment of Successor..................94

Section 7.03. Notification to Certificateholders..................................95

Section 7.04. Waiver of Events of Default.........................................95

ARTICLE VIII      CONCERNING THE TRUSTEE.................................................96

Section 8.01. Duties of Trustee...................................................96

Section 8.02. Certain Matters Affecting the Trustee...............................97

Section 8.03. Trustee Not Liable for Certificates or Mortgage Loans...............99

Section 8.04. Trustee May Own Certificates........................................99

Section 8.05. Master Servicer to Pay Trustee's Fees  and Expenses; Indemnification.99

Section 8.06. Eligibility Requirements for Trustee...............................100

Section 8.07. Resignation and Removal of the Trustee.............................101

Section 8.08. Successor Trustee..................................................102

Section 8.09. Merger or Consolidation of Trustee.................................102

Section 8.10. Appointment of Co-Trustee or Separate Trustee......................102

Section 8.11. Appointment of Custodians..........................................103

Section 8.12. Appointment of Office or Agency....................................104

ARTICLE IX        TERMINATION OR OPTIONAL PURCHASE OF ALL CERTIFICATES....................105

Section 9.01. Optional Purchase by the Master Servicer of All Certificates; Termination
              Purchase by the Master Servicer or Liquidation of All Mortgage Loans

Section 9.02. Additional Termination Requirements................................108

Section 9.03. Termination of Multiple REMICs.....................................109

ARTICLE X         REMIC PROVISIONS.......................................................110

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 49 of 180

Section 10.01.REMIC Administration................................................110

Section 10.02.Master Servicer, REMIC Administrator and Trustee Indemnification....113

Section 10.03.Designation of REMIC(s). As provided in Section 10.03 of the Series Supp
            114

Section 10.04.Distributions on the Uncertificated REMIC I and REMIC II Regular Interes
            provided in Section 10.04 of the Series Supplement..............114

Section 10.05.Compliance with Withholding Requirements. As provided in Section 10.05 c
            Series Supplement................................................114

ARTICLE XI        MISCELLANEOUS PROVISIONS...............................................115

Section 11.01.Amendment...........................................................115

Section 11.02.Recordation of Agreement; Counterparts..............................117

Section 11.03.Limitation on Rights of Certificateholders..........................118

Section 11.04.Governing Law.......................................................118

Section 11.05.Notices. As provided in Section 11.05 of the Series Supplement......119

Section 11.06.Required Notices to Rating Agency and Subservicer...................119

Section 11.07.Severability of Provisions..........................................120

Section 11.08.Supplemental Provisions for Resecuritization........................120

Section 11.09.Allocation of Voting Rights.........................................120

Section 11.10.No Petition.........................................................120

ARTICLE XII       COMPLIANCE WITH REGULATION AB..........................................121

Section 12.01.Intent of the Parties; Reasonableness...............................121

Section 12.02.Additional Representations and Warranties of the Trustee...........121

Section 12.03.Information to Be Provided by the Trustee...........................122

Section 12.04.Report on Assessment of Compliance and Attestation.................122

Section 12.05.Indemnification; Remedies..........................................123

EXHIBITS

Exhibit A:          Form of Class A Certificate
Exhibit A-I:        Form of Class X Certificate
Exhibit B:          Form of Class M Certificate
Exhibit C:          Form of Class B Certificate
Exhibit C-I:        Form of Class P Certificate
Exhibit D:          Form of Class R Certificate

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 50 of 180

Exhibit E:            Form of Seller/Servicer Contract
Exhibit F:            Forms of Request for Release
Exhibit G-1:          Form of Transfer Affidavit and Agreement
Exhibit G-2:          Form of Transferor Certificate
Exhibit H:            Form of Investor Representation Letter
Exhibit I:            Form of Transferor Representation Letter
Exhibit J:            Form of Rule 144A Investment Representation Letter
Exhibit K:            Text of Amendment to Pooling and Servicing Agreement Pursuant to Section
                      Limited Guaranty
Exhibit L:            Form of Limited Guaranty
Exhibit M:            Form of Lender Certification for Assignment of Mortgage Loan
Exhibit N:            Request for Exchange Form
Exhibit O:            Form of Form 10-K Certification
Exhibit P:            Form of Back-Up Certification to Form 10-K Certificate
Exhibit Q:      .......Information to be Provided by the Master Servicer to the Rating Agencies
Relating to Reportable Modified Mortgage Loans
Exhibit R:      .......Servicing Criteria

This is the Standard Terms of Pooling and Servicing Agreement, dated as of March 1, 20
"Standard Terms", and as incorporated by reference into a Series Supplement dated as of the Cu
"Pooling and Servicing Agreement" or "Agreement"), among RESIDENTIAL ACCREDIT LOANS, INC., as
(together with its permitted successors and assigns, the "Company"), RESIDENTIAL FUNDING CORP(
master servicer (together with its permitted successors and assigns, the "Master Servicer"), a
named in the applicable Series Supplement (together with its permitted successors and assigns,

PRELIMINARY STATEMENT:

The Company intends to sell certain mortgage asset-backed pass-through certificates (c
"Certificates"), to be issued under the Agreement in multiple classes, which in the aggregate
the entire beneficial ownership interest in the Mortgage Loans.

In consideration of the mutual agreements herein contained, the Company, the Master Se
Trustee agree as follows:

ARTICLE I

DEFINITIONS

Section 1.01.  Definitions.

Whenever used in this Agreement, the following words and phrases, unless the context c
requires, shall have the meanings specified in this Article.

Accretion Termination Date:  As defined in the Series Supplement.

Accrual Certificates:  As defined in the Series Supplement.

Accrued Certificate Interest:  With respect to each Distribution Date, as to any Class
Certificates (other than any Principal Only Certificates), interest accrued during the related

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 51 of 180

Accrual Period at the related Pass-Through Rate on the Certificate Principal Balance or Notion
thereof immediately prior to such Distribution Date. Accrued Certificate Interest will be calc
basis of a 360-day year, consisting of twelve 30-day months. In each case Accrued Certificate
Class or Subclass of Certificates will be reduced by the amount of:

    (i)    Prepayment Interest Shortfalls on all Mortgage Loans or, if the Mortgage Pool i
two or more Loan Groups, on the Mortgage Loans in the related Loan Group (to th
offset by the Master Servicer with a payment of Compensating Interest as provid
4.01),

    (ii)   the interest portion (adjusted to the Net Mortgage Rate (or the Modified Net Mc
the case of a Modified Mortgage Loan)) of Realized Losses on all Mortgage Loans
Mortgage Pool is comprised of two or more Loan Groups, on the Mortgage Loans in
Loan Group (including Excess Special Hazard Losses, Excess Fraud Losses, Excess
Losses and Extraordinary Losses) not allocated solely to one or more specific C
Certificates pursuant to Section 4.05,

    (iii)  the interest portion of Advances that were (A) previously made with respect to
or REO Property on all Mortgage Loans or, if the Mortgage Pool is comprised of
Groups, on the Mortgage Loans in the related Loan Group, which remained unreimb
the Cash Liquidation or REO Disposition of such Mortgage Loan or REO Property a
respect to delinquencies that were ultimately determined to be Excess Special F
Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses, and

    (iv)   any other interest shortfalls not covered by the subordination provided by the
Certificates and Class B Certificates, including interest that is not collectib
Mortgagor pursuant to the Servicemembers Civil Relief Act of 1940, as amended,
legislation or regulations as in effect from time to time,

with all such reductions allocated (A) among all of the Certificates in proportion to their re
amounts of Accrued Certificate Interest payable on such Distribution Date absent such reductio
the Mortgage Pool is comprised of two or more Loan Groups, the related Senior Percentage of su
among the related Senior Certificates in proportion to the amounts of Accrued Certificate Inte
from the related Loan Group on such Distribution Date absent such reductions, with the remaind
reductions allocated among the holders of the Class M Certificates and Class B Certificates in
their respective amounts of Accrued Certificate Interest payable on such Distribution Date abs
reductions.  In addition to that portion of the reductions described in the preceding sentence
allocated to any Class of Class B Certificates or any Class of Class M Certificates, Accrued C
Interest on such Class of Class B Certificates or such Class of Class M Certificates will be r
interest portion (adjusted to the Net Mortgage Rate) of Realized Losses that are allocated sol
Class of Class B Certificates or such Class of Class M Certificates pursuant to Section 4.05.

    Addendum and Assignment Agreement:  The Addendum and Assignment Agreement, dated as of
1995, between MLCC and the Master Servicer.

    Additional Collateral:  Any of the following held, in addition to the related Mortgage
security for a Mortgage Loan: (i) all money, securities, security entitlements, accounts, gene
intangibles, payment rights, instruments, documents, deposit accounts, certificates of deposit
contracts and other investment property and other property of whatever kind or description now
hereafter acquired which is pledged as security for the repayment of such Mortgage Loan, (ii)
guarantees, and (A) all money, securities, security entitlements, accounts, general intangible
rights, instruments, documents, deposit accounts, certificates of deposit, commodities contrac
investment property and other property of whatever kind or description now existing or hereaft
which is pledged as collateral for such guarantee or (B) any mortgaged property securing the p
such guarantee, or (iii) such other collateral as may be set forth in the Series Supplement.

    Additional Collateral Loan:  Each Mortgage Loan that is supported by Additional Collat

    Adjusted Mortgage Rate:  With respect to any Mortgage Loan and any date of determinati
Rate borne by the related Mortgage Note, less the rate at which the related Subservicing Fee a

    Advance:  As to any Mortgage Loan, any advance made by the Master Servicer, pursuant t

    Advance Facility: As defined in Section 3.22.

    Advance Facility Notice: As defined in Section 3.22.

    Advance Facility Trustee: As defined in Section 3.22.

Advancing Person: As defined in Section 3.22.

Advance Reimbursement Amounts: As defined in Section 3.22.

Affiliate:  With respect to any Person, any other Person controlling, controlled by or
control with such first Person.  For the purposes of this definition, "control" means the powe
management and policies of such Person, directly or indirectly, whether through the ownership
securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanir
to the foregoing.

Ambac: Ambac Assurance Corporation (formerly known as AMBAC Indemnity Corporation).

Amount Held for Future Distribution:  As to any Distribution Date and, with respect to
Pool that is comprised of two or more Loan Groups, each Loan Group, the total of the amounts h
Custodial Account at the close of business on the preceding Determination Date on account of (
Proceeds, Subsequent Recoveries, Insurance Proceeds, Curtailments, Mortgage Loan purchases mad
Section 2.02, 2.03, 2.04 or 4.07 and Mortgage Loan substitutions made pursuant to Section 2.03
received or made in the month of such Distribution Date (other than such Liquidation Proceeds,
Proceeds and purchases of Mortgage Loans that the Master Servicer has deemed to have been rece
preceding month in accordance with Section 3.07(b)), and Principal Prepayments in Full made af
Prepayment Period, and (ii) payments which represent early receipt of scheduled payments of pr
interest due on a date or dates subsequent to the related Due Date.

Appraised Value:  As to any Mortgaged Property, the lesser of (i) the appraised value
Mortgaged Property based upon the appraisal made at the time of the origination of the related
and (ii) the sales price of the Mortgaged Property at such time of origination, except in the
Mortgaged Property securing a refinanced or modified Mortgage Loan as to which it is either th
value determined above or the appraised value determined in an appraisal at the time of refina
modification, as the case may be.

Assigned Contracts:  With respect to any Pledged Asset Loan: the Credit Support Pledge
Funding and Pledge Agreement, among GMAC Mortgage Corporation, National Financial Services Cor
the Mortgagor or other person pledging the related Pledged Assets; the Additional Collateral A
between GMAC Mortgage Corporation and the Mortgagor or other person pledging the related Pledg
such other contracts as may be set forth in the Series Supplement.

Assignment:  An assignment of the Mortgage, notice of transfer or equivalent instrumer
form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is
reflect of record the sale of the Mortgage Loan to the Trustee for the benefit of Certificatel
assignment, notice of transfer or equivalent instrument may be in the form of one or more blan
covering Mortgages secured by Mortgaged Properties located in the same county, if permitted by
accompanied by an Opinion of Counsel to that effect.

Assignment Agreement:  The Assignment and Assumption Agreement, dated the Closing Date
Residential Funding and the Company relating to the transfer and assignment of the Mortgage Lo

Assignment of Proprietary Lease:  With respect to a Cooperative Loan, the assignment o
Cooperative Lease from the Mortgagor to the originator of the Cooperative Loan.

Available Distribution Amount:  As to any Distribution Date and, with respect to any M
comprised of two or more Loan Groups, each Loan Group, an amount equal to (a) the sum of (i) t
relating to the Mortgage Loans on deposit in the Custodial Account as of the close of business
immediately preceding Determination Date, including any Subsequent Recoveries, and amounts dep
Custodial Account in connection with the substitution of Qualified Substitute Mortgage Loans,
of any Advance made on the immediately preceding Certificate Account Deposit Date, (iii) any a
in the Certificate Account on the related Certificate Account Deposit Date pursuant to the sec
of Section 3.12(a), (iv) any amount deposited in the Certificate Account pursuant to Section 4
9.01, (v) any amount that the Master Servicer is not permitted to withdraw from the Custodial
Certificate Account pursuant to Section 3.16(e), (vi) any amount received by the Trustee pursu
Surety Bond in respect of such Distribution Date and (vii) the proceeds of any Pledged Assets
Master Servicer, reduced by (b) the sum as of the close of business on the immediately precedi
Determination Date of (w) aggregate Foreclosure Profits, (x) the Amount Held for Future Distri
amounts permitted to be withdrawn by the Master Servicer from the Custodial Account in respect
Mortgage Loans pursuant to clauses (ii)-(x), inclusive, of Section 3.10(a). Such amount shall
separately for each Loan Group. Additionally, with respect to any Mortgage Pool that is compri
more Loan Groups, if on any Distribution Date Compensating Interest provided pursuant to this
is less than Prepayment Interest Shortfalls incurred on the Mortgage Loans in connection with

Prepayments in Full and Curtailments in the prior calendar month, such Compensating Inter
allocated on such Distribution Date to the Available Distribution Amount for each Loan Group
basis in accordance with the respective amounts of such Prepayment Interest Shortfalls incurr
Mortgage Loans in such Loan Group in respect of such Distribution Date.

Bankruptcy Code:  The Bankruptcy Code of 1978, as amended.

Bankruptcy Loss:  With respect to any Mortgage Loan, a Deficient Valuation or Debt Ser
provided, however, that neither a Deficient Valuation nor a Debt Service Reduction shall be de
Bankruptcy Loss hereunder so long as the Master Servicer has notified the Trustee in writing t
Servicer is diligently pursuing any remedies that may exist in connection with the representat
warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan i
default with regard to payments due thereunder or (B) delinquent payments of principal and int
related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and a
escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the
or a Subservicer, in either case without giving effect to any Debt Service Reduction.

Book-Entry Certificate:  Any Certificate registered in the name of the Depository or i
designated as such in the Preliminary Statement to the Series Supplement.

Business Day:  Any day other than (i) a Saturday or a Sunday or (ii) a day on which ba
institutions in the State of New York, the State of Michigan, the State of California, the Sta
or the State of Minnesota (and such other state or states in which the Custodial Account or th
Account are at the time located) are required or authorized by law or executive order to be cl

Buydown Funds:  Any amount contributed by the seller of a Mortgaged Property, the Comp
source in order to enable the Mortgagor to reduce the payments required to be made from the Mc
in the early years of a Mortgage Loan.  Buydown Funds are not part of the Trust Fund prior to
the Custodial or Certificate Account.

Buydown Mortgage Loan:  Any Mortgage Loan as to which a specified amount of interest i
related Buydown Funds in accordance with a related buydown agreement.

Calendar Quarter:  A Calendar Quarter shall consist of one of the following time peric
year:  January 1 through March 31, April 1 through June 30, July 1 through September 30, and C
through December 31.

Capitalization Reimbursement Amount: With respect to any Distribution Date and, with r
Mortgage Pool comprised of two or more Loan Groups, each Loan Group, the amount of Advances or
Advances that were added to the Stated Principal Balance of all Mortgage Loans or, if the Mort
comprised of two or more Loan Groups, on the Mortgage Loans in the related Loan Group,  during
calendar month and reimbursed to the Master Servicer or Subservicer on or prior to such Distri
pursuant to Section 3.10(a)(vii), plus the Capitalization Reimbursement Shortfall Amount remai
unreimbursed from any prior Distribution Date and reimbursed to the Master Servicer or Subserv
prior to such Distribution Date.

Capitalization Reimbursement Shortfall Amount:  With respect to any Distribution Date
respect to any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, the amount
which the amount of Advances or Servicing Advances that were added to the Stated Principal Bal
Mortgage Loans (or, if the Mortgage Pool is comprised of two or more Loan Groups, on the Mortg
the related Loan Group)  during the preceding calendar month exceeds the amount of principal p
Mortgage Loans included in the Available Distribution Amount (or, if the Mortgage Pool is comp
more Loan Groups, Available Distribution Amount for the related Loan Group) for that Distribut

Cash Liquidation:  As to any defaulted Mortgage Loan other than a Mortgage Loan as to
Acquisition occurred, a determination by the Master Servicer that it has received all Insuranc
Liquidation Proceeds and other payments or cash recoveries which the Master Servicer reasonabl
faith expects to be finally recoverable with respect to such Mortgage Loan.

Certificate Account Deposit Date:  As to any Distribution Date, the Business Day prior

Certificateholder or Holder:  The Person in whose name a Certificate is registered in
Register, and, in respect of any Insured Certificates, the Certificate Insurer to the extent o
Insurance Payments, except that neither a Disqualified Organization nor a Non-United States Pe
holder of a Class R Certificate for purposes hereof and, solely for the purpose of giving any
direction pursuant to this Agreement, any Certificate, other than a Class R Certificate, regis
name of the Company, the Master Servicer or any Subservicer or any Affiliate thereof shall be
be outstanding and the Percentage Interest or Voting Rights evidenced thereby shall not be tak

in determining whether the requisite amount of Percentage Interests or Voting Rights necessary
such consent or direction has been obtained.  All references herein to "Holders" or "Certifica
shall reflect the rights of Certificate Owners as they may indirectly exercise such rights th
Depository and participating members thereof, except as otherwise specified herein; provided,
the Trustee shall be required to recognize as a "Holder" or "Certificateholder" only the Perso
a Certificate is registered in the Certificate Register.

Certificate Insurer: As defined in the Series Supplement.

Certificate Owner:  With respect to a Book-Entry Certificate, the Person who is the be
of such Certificate, as reflected on the books of an indirect participating brokerage firm for
Depository Participant acts as agent, if any, and otherwise on the books of a Depository Parti
and otherwise on the books of the Depository.

Certificate Principal Balance:  With respect to each Certificate (other than any Inter
Certificate), on any date of determination, an amount equal to:

(i)    the Initial Certificate Principal Balance of such Certificate as specified on t
plus

(ii)   any Subsequent Recoveries added to the Certificate Principal Balance of such Ce
pursuant to Section 4.02, plus

(iii)  in the case of each Accrual Certificate, an amount equal to the aggregate Accru
Interest added to the Certificate Principal Balance thereof prior to such date
determination, minus

(iv)   the sum of (x) the aggregate of all amounts previously distributed with respect
Certificate (or any predecessor Certificate) and applied to reduce the Certific
Balance thereof pursuant to Section 4.02(a) and (y) the aggregate of all reduct
Certificate Principal Balance deemed to have occurred in connection with Realiz
were previously allocated to such Certificate (or any predecessor Certificate)
Section 4.05;

provided, that the Certificate Principal Balance of each Certificate of the Class of Subordina
with the Lowest Priority at any given time shall be further reduced by an amount equal to the
Interest represented by such Certificate multiplied by the excess, if any, of (A) the then agg
Certificate Principal Balance of all Classes of Certificates then outstanding over (B) the the
Stated Principal Balance of the Mortgage Loans.

Certificate Register and Certificate Registrar:  The register maintained and the regis
pursuant to Section 5.02.

Class:  Collectively, all of the Certificates bearing the same designation.  The initi
Certificates and any Subclass thereof issued pursuant to Section 5.01(c) shall be a single Cla
of this Agreement.

Class A-P Certificate:  Any one of the Certificates designated as a Class A-P Certifi

Class A-P Collection Shortfall:  With respect to the Cash Liquidation or REO Dispositi
Mortgage Loan, any Distribution Date and, with respect to any Mortgage Pool comprised of two o
Groups, each Loan Group, the excess of the amount described in clause (C)(1) of the definition
Principal Distribution Amount (for the related Loan Group, if applicable) over the amount desc
(C)(2) of such definition.

Class A-P Principal Distribution Amount: With respect to any Distribution Date and, wi
any Mortgage Pool comprised of two or more Loan Groups, each Loan Group, an amount equal to th

(A)    the related Discount Fraction of the principal portion of each Monthly
Discount Mortgage Loan (or, with respect to any Mortgage Pool comprised of two or more
each Discount Mortgage Loan in the related Loan Group) during the related Due Peri
not received on or prior to the related Determination Date, minus the Discount Fractio
principal portion of any related Debt Service Reduction which together with other Bank
exceeds the Bankruptcy Amount;

(B)    the related Discount Fraction of the principal portion of all unschedule
on each Discount Mortgage Loan (or, with respect to any Mortgage Pool comprised of two
Groups, each Discount Mortgage Loan in the related Loan Group) received during the pre

month or, in the case of Principal Prepayments in Full, during the related Prepayment
than amounts received in connection with a Cash Liquidation or REO Disposition of a Di
Loan described in clause (C) below), including Principal Prepayments in Full, Curtailm
Recoveries and repurchases (including deemed repurchases under Section 3.07(b)) of suc
Mortgage Loans (or, in the case of a substitution of a Deleted Mortgage Loan, the Disc
the amount of any shortfall deposited in the Custodial Account in connection with such

     (C)    in connection with the Cash Liquidation or REO Disposition of a Discount
(or, with respect to any Mortgage Pool comprised of two or more Loan Groups, each Disc
Loan in the related Loan Group) that occurred during the preceding calendar month (or
have occurred during such period in accordance with Section 3.07(b)) that did not resu
Special Hazard Losses, Excess Fraud Losses, Excess Bankruptcy Losses or Extraordinary
amount equal to the lesser of (1) the applicable Discount Fraction of the Stated Princ
such Discount Mortgage Loan immediately prior to such Distribution Date and (2) the ag
of the collections on such Mortgage Loan to the extent applied as recoveries of princi

     (D)    any amounts allocable to principal for any previous Distribution Date (o
pursuant to clauses (A) through (C) above) that remain undistributed; and

     (E)    the amount of any Class A-P Collection Shortfalls for such Distribution
related Loan Group, if applicable, and the amount of any Class A-P Collection Shortfal
related Loan Group, if applicable) remaining unpaid for all previous Distribution Date
the extent of the Eligible Funds for such Distribution Date; minus

     (F)    the related Discount Fraction of the portion of the Capitalization Reimb
(for the related Loan Group, if applicable) for such Distribution Date, if any, relate
Discount Mortgage Loan (in the related Loan Group, if applicable).

Notwithstanding the foregoing, with respect to any Distribution Date on and after the
Depletion Date, the Class A-P Principal Distribution Amount (for a Loan Group, if applicable)
excess of (i) the sum of (a) the related Discount Fraction of the principal portion of each Mo
on each Discount Mortgage Loan (in the related Loan Group, if applicable) received or advanced
related Determination Date and not previously distributed minus the Discount Fraction of the p
portion of any related Debt Service Reduction which together with other Bankruptcy Losses exce
Bankruptcy Amount and (b) the related Discount Fraction of the aggregate amount of unschedule
described in clauses (B) and (C) above over (ii) the amount calculated pursuant to clause (F)

Class A-V Certificate:  Any one of the Certificates designated as a Class A-V Certific
any Subclass thereof.

Class B Certificate:  Any one of the Certificates designated as a Class B-1 Certificat
Certificate or Class B-3 Certificate.

Class M Certificate:  Any one of the Certificates designated as a Class M-1 Certificat
Certificate or Class M-3 Certificate.

Closing Date:  As defined in the Series Supplement.

Code:  The Internal Revenue Code of 1986, as amended.

Combined Collateral LLC:  Combined Collateral LLC, a Delaware limited liability compan

Commission:  The Securities and Exchange Commission.

Compensating Interest:  With respect to any Distribution Date, an amount equal to Prep
Shortfalls resulting from Principal Prepayments in Full during the related Prepayment Period a
during the prior calendar month and included in the Available Distribution Amount for such Dis
but not more than the lesser of (a) one-twelfth of 0.125% of the Stated Principal Balance of t
Loans immediately preceding such Distribution Date and (b) the sum of the Servicing Fee and al
gain on amounts held in the Custodial Account and the Certificate Account and payable to the
Certificateholders with respect to such Distribution Date; provided that for purposes of this
amount of the Servicing Fee will not be reduced pursuant to Section 7.02(a) except as may be r
pursuant to the last sentence of such Section.

Compliance With Laws Representation:  The following representation and warranty (or an
and warranty that is substantially similar) made by Residential Funding in Section 4 of Assign
"Each Mortgage Loan at the time it was made complied in all material respects with applicable
and federal laws, including, but not limited to, all applicable anti-predatory lending laws".

Cooperative:  A private, cooperative housing corporation which owns or leases land and a building or buildings, including apartments, spaces used for commercial purposes and common and whose board of directors authorizes, among other things, the sale of Cooperative Stock.

Cooperative Apartment:  A dwelling unit in a multi-dwelling building owned or leased k which unit the Mortgagor has an exclusive right to occupy pursuant to the terms of a propriet occupancy agreement.

Cooperative Lease:  With respect to a Cooperative Loan, the proprietary lease or occup with respect to the Cooperative Apartment occupied by the Mortgagor and relating to the relate Stock, which lease or agreement confers an exclusive right to the holder of such Cooperative S such apartment.

Cooperative Loans:  Any of the Mortgage Loans made in respect of a Cooperative Apartme a Mortgage Note and secured by (i) a Security Agreement, (ii) the related Cooperative Stock Ce (iii) an assignment of the Cooperative Lease, (iv) financing statements and (v) a stock power similar instrument), and ancillary thereto, a recognition agreement between the Cooperative an originator of the Cooperative Loan, each of which was transferred and assigned to the Trustee Section 2.01 and are from time to time held as part of the Trust Fund.

Cooperative Stock:  With respect to a Cooperative Loan, the single outstanding class of partnership interest or other ownership instrument in the related Cooperative.

Cooperative Stock Certificate:  With respect to a Cooperative Loan, the stock certific instrument evidencing the related Cooperative Stock.

Credit Repository:  Equifax, Transunion and Experian, or their successors in interest.

Credit Support Depletion Date:  The first Distribution Date on which the Certificate E Balances of the Subordinate Certificates have been reduced to zero.

Credit Support Pledge Agreement:  The Credit Support Pledge Agreement, dated as of Nov among the Master Servicer, GMAC Mortgage Corporation, Combined Collateral LLC and The First Na Chicago (now known as Bank One, National Association), as custodian.

Cumulative Insurance Payments:  As defined in the Series Supplement.

Curtailment:  Any Principal Prepayment made by a Mortgagor which is not a Principal Pr

Custodial Account:  The custodial account or accounts created and maintained pursuant in the name of a depository institution, as custodian for the holders of the Certificates, for certain other interests in mortgage loans serviced or sold by the Master Servicer and for the Servicer, into which the amounts set forth in Section 3.07 shall be deposited directly.  Any a accounts shall be an Eligible Account.

Custodial Agreement:  An agreement that may be entered into among the Company, the Mas the Trustee and a Custodian pursuant to which the Custodian will hold certain documents relati Mortgage Loans on behalf of the Trustee.

Custodian:  A custodian appointed pursuant to a Custodial Agreement.

Cut-off Date Principal Balance:  As to any Mortgage Loan, the unpaid principal balance Cut-off Date after giving effect to all installments of principal due on or prior thereto (or month of the Cut-off Date), whether or not received.

Debt Service Reduction:  With respect to any Mortgage Loan, a reduction in the schedul Payment for such Mortgage Loan by a court of competent jurisdiction in a proceeding under the Code, except such a reduction constituting a Deficient Valuation or any reduction that results forgiveness of principal.

Deficient Valuation:  With respect to any Mortgage Loan, a valuation by a court of con jurisdiction of the Mortgaged Property in an amount less than the then outstanding indebtednes Mortgage Loan, or any reduction in the amount of principal to be paid in connection with any a Monthly Payment that constitutes a permanent forgiveness of principal, which valuation or redu from a proceeding under the Bankruptcy Code.

Definitive Certificate:  Any Certificate other than a Book-Entry Certificate.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 57 of 180

Deleted Mortgage Loan:  A Mortgage Loan replaced or to be replaced with a Qualified Su
Mortgage Loan.

Delinquent:  As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or '
delinquent when a payment due on any scheduled due date remains unpaid as of the close of busi
last business day immediately prior to the next following monthly scheduled due date; "60 to 8
or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the
business on the last business day immediately prior to the second following monthly scheduled
so on. The determination as to whether a Mortgage Loan falls into these categories is made as
business on the last business day of each month. For example, a Mortgage Loan with a payment o
that remained unpaid as of the close of business on July 31 would then be considered to be 30
delinquent. Delinquency information as of the Cut-off Date is determined and prepared as of th
business on the last business day immediately prior to the Cut-off Date.

Depository:  The Depository Trust Company, or any successor Depository hereafter named
of the initial Depository for purposes of registering those Certificates that are to be Book-E
Certificates is Cede & Co. The Depository shall at all times be a "clearing corporation" as d
Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York and a "clearing ag
registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, a

Depository Participant:  A broker, dealer, bank or other financial institution or othe
whom from time to time a Depository effects book-entry transfers and pledges of securities dep
Depository.

Destroyed Mortgage Note:  A Mortgage Note the original of which was permanently lost o
has not been replaced.

Determination Date: As defined in the Series Supplement.

Discount Fraction:  With respect to each Discount Mortgage Loan, the fraction expresse
percentage, the numerator of which is the Discount Net Mortgage Rate minus the Net Mortgage Ra
initial Net Mortgage Rate with respect to any Discount Mortgage Loans as to which the Mortgage
modified pursuant to 3.07(a)) for such Mortgage Loan and the denominator of which is the Disco
Mortgage Rate.  The Discount Fraction with respect to each Discount Mortgage Loan is set forth
attached to the Series Supplement.

Discount Mortgage Loan:  Any Mortgage Loan having a Net Mortgage Rate (or the initial
Rate) of less than the Discount Net Mortgage Rate per annum and any Mortgage Loan deemed to be
Mortgage Loan pursuant to the definition of Qualified Substitute Mortgage Loan.

Discount Net Mortgage Rate:  As defined in the Series Supplement.

Disqualified Organization:  Any organization defined as a "disqualified organization"
860E(e)(5) of the Code, and if not otherwise included, any of the following:  (i) the United S
State or political subdivision thereof, any possession of the United States, or any agency or
of any of the foregoing (other than an instrumentality which is a corporation if all of its ac
subject to tax and, except for Freddie Mac, a majority of its board of directors is not select
governmental unit), (ii) a foreign government, any international organization, or any agency o
instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' c
described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the
(including the tax imposed by Section 511 of the Code on unrelated business taxable income), (
electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code, (v) any "e
partnership," as defined in Section 775(a) of the Code and (vi) any other Person so designated
based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certifi
Person may cause the Trust Fund or any Person having an Ownership Interest in any Class of Cer
(other than such Person) to incur a liability for any federal tax imposed under the Code that
otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to
The terms "United States", "State" and "international organization" shall have the meanings se
Section 7701 of the Code or successor provisions.

Distribution Date:  The 25th day of any month beginning in the month immediately follo
of the initial issuance of the Certificates or, if such 25th day is not a Business Day, the Bu
immediately following such 25th day.

Due Date:  With respect to any Distribution Date and any Mortgage Loan, the day during
Period on which the Monthly Payment is due.

Due Period:  With respect to any Distribution Date, the one-month period set forth in Supplement.

Eligible Account:  An account that is any of the following: (i) maintained with a depo institution the debt obligations of which have been rated by each Rating Agency in its highest available, or (ii) an account or accounts in a depository institution in which such accounts a insured to the limits established by the FDIC, provided that any deposits not so insured shall acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenc Opinion of Counsel delivered to the Trustee and each Rating Agency) the registered Holders of have a claim with respect to the funds in such account or a perfected first security interest collateral (which shall be limited to Permitted Investments) securing such funds that is super of any other depositors or creditors of the depository institution with which such account is (iii) in the case of the Custodial Account, a trust account or accounts maintained in the corp department of the Trustee, or (iv) in the case of the Certificate Account, a trust account or maintained in the corporate trust department of the Trustee, or (v) an account or accounts of institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency th such account as the Custodial Account or the Certificate Account will not reduce the rating as Class of Certificates by such Rating Agency below the then-current rating assigned to such Cer

Event of Default:  As defined in Section 7.01.

Excess Bankruptcy Loss:  Any Bankruptcy Loss, or portion thereof, which exceeds the th Bankruptcy Amount.

Excess Fraud Loss:  Any Fraud Loss, or portion thereof, which exceeds the then applica Amount.

Excess Special Hazard Loss:  Any Special Hazard Loss, or portion thereof, that exceeds applicable Special Hazard Amount.

Excess Subordinate Principal Amount:  With respect to any  Distribution Date on which Certificate Principal Balance of the Class of Subordinate Certificates then outstanding with t Priority is to be reduced to zero and on which Realized Losses are to be allocated to such cla the excess, if any, of (i) the amount that would otherwise be distributable in respect of prin class or classes of Certificates on such Distribution Date over (ii) the excess, if any, of th Certificate Principal Balance of such class or classes of Certificates immediately prior to su Date over the aggregate amount of Realized Losses to be allocated to such classes of Certifica Distribution Date as reduced by any amount calculated pursuant to clause (E) of the definition Principal Distribution Amount. With respect to any Mortgage Pool that is comprised of two or m Groups, the Excess Subordinate Principal Amount will be allocated between each Loan Group on a in accordance with the amount of Realized Losses attributable to each Loan Group and allocated Certificates on such Distribution Date.

Exchange Act:  The Securities and Exchange Act of 1934, as amended.

Extraordinary Events:  Any of the following conditions with respect to a Mortgaged Pro respect to a Cooperative Loan, the Cooperative Apartment) or Mortgage Loan causing or resultin which causes the liquidation of such Mortgage Loan:

(a)     losses that are of the type that would be covered by the fidelity bond and the errors insurance policy required to be maintained pursuant to Section 3.12(b) but are in exce coverage maintained thereunder;

(b)     nuclear reaction or nuclear radiation or radioactive contamination, all whether contro uncontrolled, and whether such loss be direct or indirect, proximate or remote or be i part caused by, contributed to or aggravated by a peril covered by the definition of t Hazard Loss";

(c)     hostile or warlike action in time of peace or war, including action in hindering, comb defending against an actual, impending or expected attack:

1.      by any government or sovereign power, de jure or de facto, or by any authority maintai military, naval or air forces; or

2.      by military, naval or air forces; or

3.      by an agent of any such government, power, authority or forces;

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 59 of 180

(d)      any weapon of war employing atomic fission or radioactive force whether in time of pe

(e)      insurrection, rebellion, revolution, civil war, usurped power or action taken by gove
authority in hindering, combating or defending against such an occurrence, seizure or
under quarantine or customs regulations, confiscation by order of any government or pu
or risks of contraband or illegal transportation or trade.

Extraordinary Losses:  Any loss incurred on a Mortgage Loan caused by or resulting fro
Extraordinary Event.

Fannie Mae:  Federal National Mortgage Association, a federally chartered and privatel
corporation organized and existing under the Federal National Mortgage Association Charter Act
successor thereto.

FDIC:  Federal Deposit Insurance Corporation or any successor thereto.

Final Distribution Date:  The Distribution Date on which the final distribution in re
Certificates will be made pursuant to Section 9.01, which Final Distribution Date shall in no
than the end of the 90-day liquidation period described in Section 9.02.

Fitch:  Fitch Ratings or its successor in interest.

Foreclosure Profits:  As to any Distribution Date or related Determination Date and an
the excess, if any, of Liquidation Proceeds, Insurance Proceeds and REO Proceeds (net of all a
reimbursable therefrom pursuant to Section 3.10(a)(ii)) in respect of each Mortgage Loan or RE
which a Cash Liquidation or REO Disposition occurred in the related Prepayment Period over the
unpaid principal balance of such Mortgage Loan or REO Property (determined, in the case of an
Disposition, in accordance with Section 3.14) plus accrued and unpaid interest at the Mortgage
unpaid principal balance from the Due Date to which interest was last paid by the Mortgagor to
of the month following the month in which such Cash Liquidation or REO Disposition occurred.

Form 10-K Certification:  As defined in Section 4.03(e).

Fraud Losses:  Realized Losses on Mortgage Loans as to which there was fraud in the or
such Mortgage Loan.

Freddie Mac:  Federal Home Loan Mortgage Corporation, a corporate instrumentality of t
created and existing under Title III of the Emergency Home Finance Act of 1970, as amended, or
thereto.

Highest Priority: As of any date of determination, the Class of Subordinate Certificat
outstanding with a Certificate Principal Balance greater than zero, with the earliest priorit
pursuant to Section 4.02(a), in the following order: Class M-1, Class M-2, Class M-3, Class B-
and Class B-3 Certificates.

Independent:  When used with respect to any specified Person, means such a Person who
independent of the Company, the Master Servicer and the Trustee, or any Affiliate thereof, (i
any direct financial interest or any material indirect financial interest in the Company, the
or the Trustee or in an Affiliate thereof, and (iii) is not connected with the Company, the Ma
or the Trustee as an officer, employee, promoter, underwriter, trustee, partner, director or p
performing similar functions.

Initial Certificate Principal Balance:  With respect to each Class of Certificates, th
Principal Balance of such Class of Certificates as of the Cut-off Date, as set forth in the Se

Initial Monthly Payment Fund: An amount representing scheduled principal amortization
the Net Mortgage Rate for the Due Date in the first Due Period commencing subsequent to the Cu
those Mortgage Loans for which the Trustee will not be entitled to receive such payment, and a
specifically defined in the Series Supplement.

Initial Notional Amount:  With respect to any Class or Subclass of Interest Only Certi
amount initially used as the principal basis for the calculation of any interest payment amoun
specifically defined in the Series Supplement.

Initial Subordinate Class Percentage: As defined in the Series Supplement.

Insurance Proceeds:  Proceeds paid in respect of the Mortgage Loans pursuant to any Pr
Policy or any other related insurance policy covering a Mortgage Loan (excluding any Certifica

defined in the Series Supplement)), to the extent such proceeds are payable to the mortgagee u
Mortgage, any Subservicer, the Master Servicer or the Trustee and are not applied to the resto
related Mortgaged Property (or, with respect to a Cooperative Loan, the related Cooperative Ap
released to the Mortgagor in accordance with the procedures that the Master Servicer would fol
servicing mortgage loans held for its own account.

Insurer:  Any named insurer under any Primary Insurance Policy or any successor theret
insurer in any replacement policy.

Interest Accrual Period: As defined in the Series Supplement.

Interest Only Certificates:  A Class or Subclass of Certificates not entitled to payme
principal, and designated as such in the Series Supplement. The Interest Only Certificates wil
Certificate Principal Balance.

Interim Certification:  As defined in Section 2.02.

International Borrower:  In connection with any Mortgage Loan, a borrower who is (a) a
citizen employed in a foreign country, (b) a non-permanent resident alien employed in the Unit
(c) a citizen of a country other than the United States with income derived from sources outsi
States.

Junior Certificateholder: The Holder of not less than 95% of the Percentage Interests
Class of Certificates.

Junior Class of Certificates: The Class of Subordinate Certificates outstanding as of
repurchase of a Mortgage Loan pursuant to Section 4.07 herein that has the Lowest Priority.

Late Collections:  With respect to any Mortgage Loan, all amounts received during any
whether as late payments of Monthly Payments or as Insurance Proceeds, Liquidation Proceeds or
which represent late payments or collections of Monthly Payments due but delinquent for a prev
and not previously recovered.

Liquidation Proceeds:  Amounts (other than Insurance Proceeds) received by the Master
connection with the taking of an entire Mortgaged Property by exercise of the power of eminent
condemnation or in connection with the liquidation of a defaulted Mortgage Loan through truste
foreclosure sale or otherwise, other than REO Proceeds.

Loan Group: Any group of Mortgage Loans  designated as a separate loan group in the Se
The Certificates relating to each Loan Group will be designated in the Series Supplement.

Loan-to-Value Ratio:  As of any date, the fraction, expressed as a percentage, the num
is the current principal balance of the related Mortgage Loan at the date of determination and
denominator of which is the Appraised Value of the related Mortgaged Property.

Lower Priority:  As of any date of determination and any Class of Subordinate Certific
Class of Subordinate Certificates then outstanding with a later priority for payments pursuant
4.02 (a).

Lowest Priority: As of any date of determination, the Class of Subordinate Certificate
outstanding with a Certificate Principal Balance greater than zero, with the latest priority f
pursuant to Section 4.02(a), in the following order: Class B-3, Class B-2, Class B-1, Class M-
and Class M-1 Certificates.

Maturity Date: The latest possible maturity date, solely for purposes of Section 1.86(
of the Treasury regulations, by which the Certificate Principal Balance of each Class of Certi
than the Interest Only Certificates which have no Certificate Principal Balance) and each Unce
REMIC Regular Interest would be reduced to zero, as designated in the Series Supplement.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and exi
laws of the State of Delaware, or any successor thereto.

MERS(R)System:  The system of recording transfers of Mortgages electronically maintair

MIN:  The Mortgage Identification Number for Mortgage Loans registered with MERS on th

MLCC:  Merrill Lynch Credit Corporation, or its successor in interest.

Modified Mortgage Loan:  Any Mortgage Loan that has been the subject of a Servicing Mo

Modified Net Mortgage Rate:  As to any Mortgage Loan that is the subject of a Servicin the Net Mortgage Rate minus the rate per annum by which the Mortgage Rate on such Mortgage Loa

MOM Loan:  With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mor solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at thereof.

Monthly Payment:  With respect to any Mortgage Loan (including any REO Property) and a payment of principal and interest due thereon in accordance with the amortization schedule at applicable thereto (after adjustment, if any, for Curtailments and for Deficient Valuations oc to such Due Date but before any adjustment to such amortization schedule by reason of any bank than a Deficient Valuation, or similar proceeding or any moratorium or similar waiver or grace before any Servicing Modification that constitutes a reduction of the interest rate on such Mo

Moody's:  Moody's Investors Service, Inc., or its successor in interest.

Mortgage:  With respect to each Mortgage Note related to a Mortgage Loan which is not Loan, the mortgage, deed of trust or other comparable instrument creating a first lien on an e simple or leasehold interest in real property securing a Mortgage Note.

Mortgage File:  The mortgage documents listed in Section 2.01 pertaining to a particul and any additional documents required to be added to the Mortgage File pursuant to this Agreem

Mortgage Loans:  Such of the mortgage loans transferred and assigned to the Trustee pu Section 2.01 from time to time are held or deemed to be held as a part of the Trust Fund, t Loans originally so held being identified in the initial Mortgage Loan Schedule, and Qualified Mortgage Loans held or deemed held as part of the Trust Fund including, without limitation, (i to each Cooperative Loan, the related Mortgage Note, Security Agreement, Assignment of Proprie Cooperative Stock Certificate, Cooperative Lease and Mortgage File and all rights appertaining (ii) with respect to each Mortgage Loan other than a Cooperative Loan, each related Mortgage N and Mortgage File and all rights appertaining thereto.

Mortgage Loan Schedule:  As defined in the Series Supplement.

Mortgage Note:  The originally executed note or other evidence of indebtedness evidenc indebtedness of a Mortgagor under a Mortgage Loan, together with any modification thereto.

Mortgage Pool:  The pool of mortgage loans, including all Loan Groups, if any,  consis Mortgage Loans.

Mortgage Rate:  As to any Mortgage Loan, the interest rate borne by the related Mortga modification thereto other than a Servicing Modification.

Mortgaged Property:  The underlying real property securing a Mortgage Loan or, with re Cooperative Loan, the related Cooperative Lease and Cooperative Stock.

Mortgagor:  The obligor on a Mortgage Note.

Net Mortgage Rate:  As to each Mortgage Loan, a per annum rate of interest equal to th Mortgage Rate less the per annum rate at which the Servicing Fee is calculated.

Non-Discount Mortgage Loan:  A Mortgage Loan that is not a Discount Mortgage Loan.

Non-Primary Residence Loans:  The Mortgage Loans designated as secured by second or va residences, or by non-owner occupied residences, on the Mortgage Loan Schedule.

Non-United States Person:  Any Person other than a United States Person.

Nonrecoverable Advance:  Any Advance previously made or proposed to be made by the Mas Subservicer in respect of a Mortgage Loan (other than a Deleted Mortgage Loan) which, in the g judgment of the Master Servicer, will not, or, in the case of a proposed Advance, would not, b recoverable by the Master Servicer from related Late Collections, Insurance Proceeds, Liquidat REO Proceeds or amounts reimbursable to the Master Servicer pursuant to Section 4.02(a) hereof that any Mortgagor is not obligated under the related Mortgage documents to pay or reimburse a any Servicing Advances that are outstanding with respect to the related Mortgage Loan as a res modification of such Mortgage Loan by the Master Servicer, which forgives amounts which the Ma

or Subservicer had previously advanced, and the Master Servicer determines that no other sourc
reimbursement for such advances is available to it, such Servicing Advances shall be deemed t
Nonrecoverable Advances.  The determination by the Master Servicer that it has made a Nonrecov
or that any proposed Advance  would constitute a Nonrecoverable Advance, shall be evidenced by
Certificate delivered to the Company, the Trustee and any Certificate Insurer.

Nonsubserviced Mortgage Loan:  Any Mortgage Loan that, at the time of reference theret
subject to a Subservicing Agreement.

Notional Amount: With respect to any Class or Subclass of Interest Only Certificates,
as the principal basis for the calculation of any interest payment amount, as more specificall
the Series Supplement.

Officers' Certificate:  A certificate signed by the Chairman of the Board, the Preside
President or Assistant Vice President, or a Director or Managing Director, and by the Treasure
Secretary, or one of the Assistant Treasurers or Assistant Secretaries of the Company or the M
as the case may be, and delivered to the Trustee, as required by this Agreement.

Opinion of Counsel:  A written opinion of counsel acceptable to the Trustee and the Ma
who may be counsel for the Company or the Master Servicer, provided that any opinion of counse
to in the definition of "Disqualified Organization" or (ii) relating to the qualification of a
under the Series Supplement or compliance with the REMIC Provisions must, unless otherwise spe
opinion of Independent counsel.

Outstanding Mortgage Loan:  As to any Due Date, a Mortgage Loan (including an REO Prop
not the subject of a Principal Prepayment in Full, Cash Liquidation or REO Disposition and whi
purchased, deleted or substituted for prior to such Due Date pursuant to Section 2.02, 2.03, 2

Ownership Interest:  As to any Certificate, any ownership or security interest in such
including any interest in such Certificate as the Holder thereof and any other interest therei
direct or indirect, legal or beneficial, as owner or as pledgee.

Pass-Through Rate:  As defined in the Series Supplement.

Paying Agent:  The Trustee or any successor Paying Agent appointed by the Trustee.

Percentage Interest:  With respect to any Certificate (other than a Class R Certificat
undivided percentage ownership interest in the related Class evidenced by such Certificate, wh
ownership interest shall be equal to the Initial Certificate Principal Balance thereof or Init
Amount (in the case of any Interest Only Certificate) thereof divided by the aggregate Initial
Principal Balance or the aggregate of the Initial Notional Amounts, as applicable, of all the
the same Class.  With respect to a Class R Certificate, the interest in distributions to be ma
to such Class evidenced thereby, expressed as a percentage, as stated on the face of each such

Permitted Investments:  One or more of the following:

(i)     obligations of or guaranteed as to timely payment of principal and interest by the Uni
        any agency or instrumentality thereof when such obligations are backed by the full fai
        the United States;

(ii)    repurchase agreements on obligations specified in clause (i) maturing not more than on
        date of acquisition thereof, provided that the unsecured short-term debt obligations c
        agreeing to repurchase such obligations are at the time rated by each Rating Agency in
        short-term rating available;

(iii)   federal funds, certificates of deposit, demand deposits, time deposits and bankers' ac
        shall each have an original maturity of not more than 90 days and, in the case of bank
        acceptances, shall in no event have an original maturity of more than 365 days or a re
        of more than 30 days) denominated in United States dollars of any U.S. depository inst
        company incorporated under the laws of the United States or any state thereof or of an
        branch of a foreign depository institution or trust company; provided that the debt ob
        such depository institution or trust company at the date of acquisition thereof have b
        each Rating Agency in its highest short-term rating available; and, provided further t
        original maturity of such short-term obligations of a domestic branch of a foreign dep
        institution or trust company shall exceed 30 days, the short-term rating of such insti
        A-1+ in the case of Standard & Poor's if Standard & Poor's is a Rating Agency;

(iv)    commercial paper and demand notes (having original maturities of not more than 365 day

corporation incorporated under the laws of the United States or any state thereof whic
acquisition has been rated by each Rating Agency in its highest short-term rating avai
that such commercial paper shall have a remaining maturity of not more than 30 days;

(v)    any mutual fund, money market fund, common trust fund or other pooled investment vehic
of which are limited to instruments that otherwise would constitute Permitted Investme
and have been rated by each Rating Agency in its highest short-term rating available (
Standard & Poor's such rating shall be either AAAm or AAAm-G), including any such func
by the Trustee or any affiliate of the Trustee or for which the Trustee or any of its
as an adviser; and

(vi)    other obligations or securities that are acceptable to each Rating Agency as a Permitt
hereunder and will not reduce the rating assigned to any Class of Certificates by such
(without giving effect to any Certificate Policy (as defined in the Series Supplement)
Insured Certificates (as defined in the Series Supplement) below the lower of the then
assigned to such Certificates by such Rating Agency, as evidenced in writing;

provided, however, no instrument shall be a Permitted Investment if it represents, either (1)
receive only interest payments with respect to the underlying debt instrument or (2) the right
both principal and interest payments derived from obligations underlying such instrument and t
and interest payments with respect to such instrument provide a yield to maturity greater than
yield to maturity at par of such underlying obligations. References herein to the highest rat
on unsecured long-term debt shall mean AAA in the case of Standard & Poor's and Fitch and Aaa
Moody's, and for purposes of this Agreement, any references herein to the highest rating avail
unsecured commercial paper and short-term debt obligations shall mean the following: A-1 in th
Standard & Poor's, P-1 in the case of Moody's and F-1 in the case of Fitch; provided, however,
Permitted Investment that is a short-term debt obligation rated A-1 by Standard & Poor's must
following additional conditions: (i) the total amount of debt from A-1 issuers must be limited
investment of monthly principal and interest payments (assuming fully amortizing collateral);
amount of A-1 investments must not represent more than 20% of the aggregate outstanding Certif
Balance of the Certificates and each investment must not mature beyond 30 days; (iii) the term
must have a predetermined fixed dollar amount of principal due at maturity that cannot vary; a
investments may be liquidated prior to their maturity or are being relied on to meet a certain
interest must be tied to a single interest rate index plus a single fixed spread (if any) and
proportionately with that index. Any Permitted Investment may be held by or through the Trust
Affiliates.

    Permitted Transferee: Any Transferee of a Class R Certificate, other than a Disqualif
or Non-United States Person.

    Person: Any individual, corporation, limited liability company, partnership, joint ve
association, joint-stock company, trust, unincorporated organization or government or any ager
subdivision thereof.

    Pledged Amount: With respect to any Pledged Asset Loan, the amount of money remitted t
Collateral LLC, at the direction of or for the benefit of the related Mortgagor.

    Pledged Asset Loan: Any Mortgage Loan supported by Pledged Assets or such other colla
than the related Mortgaged Property, set forth in the Series Supplement.

    Pledged Assets: With respect to any Mortgage Loan, all money, securities, security en
accounts, general intangibles, payment intangibles, instruments, documents, deposit accounts,
deposit, commodities contracts and other investment property and other property of whatever ki
description pledged by Combined Collateral LLC as security in respect of any Realized Losses i
with such Mortgage Loan up to the Pledged Amount for such Mortgage Loan, and any related colla
other collateral as may be set forth in the Series Supplement.

    Pledged Asset Mortgage Servicing Agreement: The Pledged Asset Mortgage Servicing Agree
of February 28, 1996 between MLCC and the Master Servicer.

    Pooling and Servicing Agreement or Agreement: With respect to any Series, this Standa
together with the related Series Supplement.

    Pool Stated Principal Balance: As to any Distribution Date, the aggregate of the Stat
Balances of each Mortgage Loan.

    Pool Strip Rate: With respect to each Mortgage Loan, a per annum rate equal to the e
Net Mortgage Rate of such Mortgage Loan over (b) the Discount Net Mortgage Rate (but not less

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 64 of 180

annum.

Prepayment Distribution Trigger:  With respect to any Distribution Date and any Class
Certificates (other than the Class M-1 Certificates), a test that shall be satisfied if the fr
(expressed as a percentage) equal to the sum of the Certificate Principal Balances of such Cla
Class of Subordinate Certificates with a Lower Priority than such Class immediately prior to s
Distribution Date divided by the aggregate Stated Principal Balance of all of the Mortgage Loa
REO Properties) immediately prior to such Distribution Date is greater than or equal to the su
related Initial Subordinate Class Percentages of such Classes of Subordinate Certificates.

Prepayment Interest Shortfall:  As to any Distribution Date and any Mortgage Loan (oth
Mortgage Loan relating to an REO Property) that was the subject of (a) a Principal Prepayment
the portion of the related Prepayment Period that falls during the prior calendar month, an am
the excess of one month's interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in
Modified Mortgage Loan) on the Stated Principal Balance of such Mortgage Loan over the amount
(adjusted to the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mo
paid by the Mortgagor for such month to the date of such Principal Prepayment in Full or (b) a
during the prior calendar month, an amount equal to one month's interest at the Net Mortgage R
Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) on the amount of such Curt

Prepayment Period:  As to any Distribution Date and Principal Prepayment in Full, the
commencing on the 16th day of the month prior to the month in which that Distribution Date occ
on the 15th day of the month in which such Distribution Date occurs.

Primary Insurance Policy:  Each primary policy of mortgage guaranty insurance or any r
policy therefor referred to in Section 2.03(b)(iv) and (v).

Principal Only Certificates:  A Class of Certificates not entitled to payments of inte
specifically designated as such in the Series Supplement.

Principal Prepayment:  Any payment of principal or other recovery on a Mortgage Loan,
recovery that takes the form of Liquidation Proceeds or Insurance Proceeds, which is received
its scheduled Due Date and is not accompanied by an amount as to interest representing schedul
such payment due on any date or dates in any month or months subsequent to the month of prepay

Principal Prepayment in Full:  Any Principal Prepayment of the entire principal balanc
Loan that is made by the Mortgagor.

Program Guide:  Collectively, the Client Guide and the Servicer Guide for Residential
Expanded Criteria Mortgage Program.

Purchase Price:  With respect to any Mortgage Loan (or REO Property) required to be o
purchased on any date pursuant to Section 2.02, 2.03, 2.04 or 4.07, an amount equal to the sum
the Stated Principal Balance thereof plus the principal portion of any related unreimbursed Ad
unpaid accrued interest at the Adjusted Mortgage Rate (or Modified Net Mortgage Rate plus the
at which the Servicing Fee is calculated in the case of a Modified Mortgage Loan) (or at the N
Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) in the case of a
by the Master Servicer) on the Stated Principal Balance thereof to the Due Date in the Due Per
the Distribution Date occurring in the month following the month of purchase from the Due Date
interest was last paid by the Mortgagor.

Qualified Substitute Mortgage Loan:  A Mortgage Loan substituted by Residential Fundin
for a Deleted Mortgage Loan which must, on the date of such substitution, as confirmed in an O
Certificate delivered to the Trustee, with a copy to the Custodian,

(i)    have an outstanding principal balance, after deduction of the principal portion
       payment due in the month of substitution (or in the case of a substitution of n
       Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal k
       such deduction), not in excess of the Stated Principal Balance of the Deleted M
       (the amount of any shortfall to be deposited by Residential Funding in the Cust
       the month of substitution);

(ii)   have a Mortgage Rate and a Net Mortgage Rate no lower than and not more than 1%
       higher than the Mortgage Rate and Net Mortgage Rate, respectively, of the Delet
       as of the date of substitution;

(iii)  have a Loan-to-Value Ratio at the time of substitution no higher than that of t
       Mortgage Loan at the time of substitution;

(iv)    have a remaining term to stated maturity not greater than (and not more than on
than) that of the Deleted Mortgage Loan;

(v)    comply with each representation and warranty set forth in Sections 2.03 and 2.0
Section 4 of the Assignment Agreement; and

(vi)    have a Pool Strip Rate equal to or greater than that of the Deleted Mortgage Lo

Notwithstanding any other provisions herein, (x) with respect to any Qualified Substitute Mort
substituted for a Deleted Mortgage Loan which was a Discount Mortgage Loan, such Qualified Sub
Mortgage Loan shall be deemed to be a Discount Mortgage Loan and to have a Discount Fraction e
Discount Fraction of the Deleted Mortgage Loan and (y) in the event that the "Pool Strip Rate"
Qualified Substitute Mortgage Loan as calculated pursuant to the definition of "Pool Strip Rat
than the Pool Strip Rate of the related Deleted Mortgage Loan

(i)    the Pool Strip Rate of such Qualified Substitute Mortgage Loan shall be equal t
Rate of the related Deleted Mortgage Loan for purposes of calculating the Pass-
the Class A-V Certificates and

(ii)    the excess of the Pool Strip Rate on such Qualified Substitute Mortgage Loan as
pursuant to the definition of "Pool Strip Rate" over the Pool Strip Rate on the
Mortgage Loan shall be payable to the Class R Certificates pursuant to Section

Rating Agency:  Each of the statistical credit rating agencies specified in the Prelim
of the Series Supplement.  If any agency or a successor is no longer in existence, "Rating Age
such statistical credit rating agency, or other comparable Person, designated by the Company,
designation shall be given to the Trustee and the Master Servicer.

Realized Loss:  With respect to each Mortgage Loan (or REO Property):

(a)    as to which a Cash Liquidation or REO Disposition has occurred, an amount (not
equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property
of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Int
at the Net Mortgage Rate from the Due Date as to which interest was last paid o
Certificateholders up to the Due Date in the Due Period related to the Distribu
which such Realized Loss will be allocated pursuant to Section 4.05 on the Stat
Balance of such Mortgage Loan (or REO Property) outstanding during each Due Per
interest was not paid or advanced, minus (iii) the proceeds, if any, received o
in which such Cash Liquidation (or REO Disposition) occurred, to the extent app
recoveries of interest at the Net Mortgage Rate and to principal of the Mortgag
the portion thereof reimbursable to the Master Servicer or any Subservicer with
related Advances, Servicing Advances or other expenses as to which the Master S
Subservicer is entitled to reimbursement thereunder but which have not been pre
reimbursed,

(b)    which is the subject of a Servicing Modification, (i) (1)  the amount by which
portion of a Monthly Payment or the principal balance of such Mortgage Loan was
the sum of any other amounts owing under the Mortgage Loan that were forgiven a
constitute Servicing Advances that are reimbursable to the Master Servicer or a
and (ii) any such amount with respect to a Monthly Payment that was or would ha
the month immediately following the month in which a Principal Prepayment or th
of such Mortgage Loan is received or is deemed to have been received,

(c)    which has become the subject of a Deficient Valuation, the difference between t
balance of the Mortgage Loan outstanding immediately prior to such Deficient Va
principal balance of the Mortgage Loan as reduced by the Deficient Valuation, o

(d)    which has become the object of a Debt Service Reduction, the amount of such Deb
Reduction.

Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be
Realized Loss hereunder so long as the Master Servicer has notified the Trustee in writing tha
Servicer is diligently pursuing any remedies that may exist in connection with the representat
warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan i
default with regard to payments due thereunder or (B) delinquent payments of principal and int
related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and a
escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the

or a Subservicer, in either case without giving effect to any Debt Service Reduction.

To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent s are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Di

Record Date:  With respect to each Distribution Date, the close of business on the las of the month next preceding the month in which the related Distribution Date occurs.

Regular Certificate:  Any of the Certificates other than a Class R Certificate.

Regulation AB:  Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. ss.ss.229.1100-229.1123, as such may be amended from time to time, and subject to such clarifi interpretation as have been provided by the Commission in the adopting release (Asset-Backed S Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (January 7, 2005)) or by the sta Commission, or as may be provided by the Commission or its staff from time to time.

Reimbursement Amounts: As defined in Section 3.22.

REMIC:  A "real estate mortgage investment conduit" within the meaning of Section 860I

REMIC Administrator:  Residential Funding Corporation.  If Residential Funding Corpora a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Adm under this Agreement the Master Servicer or Trustee acting as Master Servicer shall appoint a Administrator, subject to assumption of the REMIC Administrator obligations under this Agreeme

REMIC Provisions:  Provisions of the federal income tax law relating to real estate mo investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 o related provisions, and temporary and final regulations (or, to the extent not inconsistent wi temporary or final regulations, proposed regulations) and published rulings, notices and annou promulgated thereunder, as the foregoing may be in effect from time to time.

REO Acquisition:  The acquisition by the Master Servicer on behalf of the Trustee for the Certificateholders of any REO Property pursuant to Section 3.14.

REO Disposition:  As to any REO Property, a determination by the Master Servicer that all Insurance Proceeds, Liquidation Proceeds, REO Proceeds and other payments and recoveries ( proceeds of a final sale) which the Master Servicer expects to be finally recoverable from the disposition of the REO Property.

REO Imputed Interest:  As to any REO Property, for any period, an amount equivalent to the Net Mortgage Rate that would have been applicable to the related Mortgage Loan had it beer on the unpaid principal balance of the Mortgage Loan as of the date of acquisition thereof fo

REO Proceeds:  Proceeds, net of expenses, received in respect of any REO Property (inc limitation, proceeds from the rental of the related Mortgaged Property or, with respect to a C Loan, the related Cooperative Apartment) which proceeds are required to be deposited into the Account only upon the related REO Disposition.

REO Property:  A Mortgaged Property acquired by the Master Servicer through foreclosur lieu of foreclosure in connection with a defaulted Mortgage Loan.

Reportable Modified Mortgage Loan:  Any Mortgage Loan that (i) has been subject to an reduction, (ii) has been subject to a term extension or (iii) has had amounts owing on such Mo capitalized by adding such amount to the Stated Principal Balance of such Mortgage Loan; provi that a Mortgage Loan modified in accordance with clause (i) above for a temporary period shall Reportable Modified Mortgage Loan if such Mortgage Loan has not been delinquent in payments of interest for six months since the date of such modification if that interest rate reduction is permanent thereafter.

Request for Release:  A request for release, the forms of which are attached as Exhibi an electronic request in a form acceptable to the Custodian.

Required Insurance Policy:  With respect to any Mortgage Loan, any insurance policy wh to be maintained from time to time under this Agreement, the Program Guide or the related Subs Agreement in respect of such Mortgage Loan.

Required Surety Payment:  With respect to any Additional Collateral Loan that becomes

Mortgage Loan, the lesser of (i) the principal portion of the Realized Loss with respect to su
Loan and (ii) the excess, if any, of (a) the amount of Additional Collateral required at orig
respect to such Mortgage Loan over (b) the net proceeds realized by the Subservicer from the
Additional Collateral.

Residential Funding:  Residential Funding Corporation, a Delaware corporation, in its
seller of the Mortgage Loans to the Company and any successor thereto.

Responsible Officer:  When used with respect to the Trustee, any officer of the Corpor
Department of the Trustee, including any Senior Vice President, any Vice President, any Assist
President, any Assistant Secretary, any Trust Officer or Assistant Trust Officer, or any other
Trustee customarily performing functions similar to those performed by any of the above desig
to whom, with respect to a particular matter, such matter is referred, in each case with direc
responsibility for the administration of the Agreement.

Retail Certificates:  A Senior Certificate, if any, offered in smaller minimum  denomi
other Senior Certificates, and designated as such in the Series Supplement.

Schedule of Discount Fractions:  The schedule setting forth the Discount Fractions wit
Discount Mortgage Loans, attached as an exhibit to the Series Supplement.

Securitization Transaction:  Any transaction involving a sale or other transfer of mo
directly or indirectly to an issuing entity in connection with an issuance of publicly offere
placed, rated or unrated mortgage-backed securities.

Security Agreement:  With respect to a Cooperative Loan, the agreement creating a secu
favor of the originator in the related Cooperative Stock.

Seller:  As to any Mortgage Loan, a Person, including any Subservicer, that executed a
Agreement applicable to such Mortgage Loan.

Seller's  Agreement:  An agreement for the origination and sale of Mortgage Loans gene
of the Seller Contract referred  to or  contained  in the  Program  Guide,  or in such other
approved by the Master Servicer and the Company,  each containing  representations and warrant
one or more Mortgage Loans consistent in all material respects with those set forth in the Pro

Senior  Accelerated  Distribution  Percentage:  With respect to any Distribution Dat
prior to the 60th  Distribution Date and,  with  respect to any  Mortgage  Pool  comprised of
Groups,  any Loan Group,  100%.  With respect to any  Distribution  Date thereafter and any su
applicable, as follows:

(i)      for any Distribution  Date after the 60th  Distribution  Date but on or prior to the '
         Date, the related  Senior  Percentage for such  Distribution  Date plus 70% of the rel
         Percentage for such Distribution Date;

(ii)     for any Distribution  Date after the 72nd  Distribution  Date but on or prior to the 8
         Date, the related  Senior  Percentage for such  Distribution  Date plus 60% of the rel
         Percentage for such Distribution Date;

(iii)    for any Distribution  Date after the 84th  Distribution  Date but on or prior to the 9
         Date, the related  Senior  Percentage for such  Distribution  Date plus 40% of the rel
         Percentage for such Distribution Date;

(iv)     for any Distribution Date after the 96th  Distribution  Date but on or prior to the 10
         Date, the related  Senior  Percentage for such  Distribution  Date plus 20% of the rel
         Percentage for such Distribution Date; and

(v)      for any Distribution Date thereafter, the Senior Percentage for such Distribution Date

provided, however,

(i) that any scheduled reduction to the Senior Accelerated Distribution Percentage des
shall not occur as of any Distribution Date unless either

(a)(1)(X) the outstanding principal balance of the Mortgage Loans delinquent 6(
(including Mortgage Loans which are in foreclosure, have been foreclosed or otherwise
with respect to which the Mortgagor is in bankruptcy and any REO Property) averaged ov
months, as a percentage of the aggregate outstanding Certificate Principal Balance of

Certificates, is less than 50% or (Y) the outstanding principal balance of Mortgage Lo
60 days or more (including Mortgage Loans which are in foreclosure, have been foreclos
liquidated, or with respect to which the Mortgagor is in bankruptcy and any REO Proper
over the last six months, as a percentage of the aggregate outstanding principal balan
Mortgage Loans averaged over the last six months, does not exceed 2% and (2) Realized
Mortgage Loans to date for such Distribution Date if occurring during the sixth, seven
ninth or tenth year (or any year thereafter) after the Closing Date are less than 30%,
or 50%, respectively, of the sum of the Initial Certificate Principal Balances of the
Certificates or

(b)(1) the outstanding principal balance of Mortgage Loans delinquent 60 days
(including Mortgage Loans which are in foreclosure, have been foreclosed or otherwise
with respect to which the Mortgagor is in bankruptcy and any REO Property) averaged ov
months, as a percentage of the aggregate outstanding principal balance of all Mortgage
over the last six months, does not exceed 4% and (2) Realized Losses on the Mortgage L
such Distribution Date, if occurring during the sixth, seventh, eighth, ninth or tenth
year thereafter) after the Closing Date are less than 10%, 15%, 20%, 25% or 30%, respe
sum of the Initial Certificate Principal Balances of the Subordinate Certificates, and

(ii) that for any Distribution Date on which the Senior Percentage is greater than the
Percentage as of the Closing Date, the Senior Accelerated Distribution Percentage for such Dis
shall be 100%, or, if the Mortgage Pool is comprised of two or more Loan Groups, for any Distri
which the weighted average of the Senior Percentages for each Loan Group, weighted on the basi
Principal Balances of the Mortgage Loans in the related Loan Group (excluding the Discount Fra
Discount Mortgage Loans in such Loan Group) exceeds the weighted average of the initial Senior
(calculated on such basis) for each Loan Group, each of the Senior Accelerated Distribution Pe
such Distribution Date will equal 100%.

Notwithstanding the foregoing, upon the reduction of the Certificate Principal Balances of the
Certificates (other than the Class A-P Certificates, if any) to zero, the related Senior Accel
Distribution Percentage shall thereafter be 0%.

Senior Certificate:  As defined in the Series Supplement.

Senior Percentage: As defined in the Series Supplement.

Senior Support Certificate:  A Senior Certificate that provides additional credit enha
certain other classes of Senior Certificates and designated as such in the Preliminary Stateme
Series Supplement.

Series:  All of the Certificates issued pursuant to a Pooling and Servicing Agreement
same series designation.

Series Supplement:  The agreement into which this Standard Terms is incorporated and p
which, together with this Standard Terms, a Series of Certificates is issued.

Servicing Accounts:  The account or accounts created and maintained pursuant to Sectio

Servicing Criteria:  The "servicing criteria" set forth in Item 1122(d) of Regulation
be amended from time to time.

Servicing Advances:  All customary, reasonable and necessary "out of pocket" costs and
incurred in connection with a default, delinquency or other unanticipated event by the Master
Subservicer in the performance of its servicing obligations, including, but not limited to, th
the preservation, restoration and protection of a Mortgaged Property or, with respect to a Coo
the related Cooperative Apartment, (ii) any enforcement or judicial proceedings, including for
including any expenses incurred in relation to any such proceedings that result from the Mortg
registered on the MERS System, (iii) the management and liquidation of any REO Property, (iv)
procedures implemented in accordance with Section 3.07, and (v) compliance with the obligation
Sections 3.01, 3.08, 3.11, 3.12(a) and 3.14, including, if the Master Servicer or any Affiliat
Servicer provides services such as appraisals and brokerage services that are customarily prov
other than servicers of mortgage loans, reasonable compensation for such services.

Servicing Advance Reimbursement Amounts: As defined in Section 3.22.

Servicing Fee:  With respect to any Mortgage Loan and Distribution Date, the fee payab
the Master Servicer in respect of master servicing compensation that accrues at an annual rate
the Mortgage Loan Schedule as the "MSTR SERV FEE" for such Mortgage Loan, as may be adjusted v

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 69 of 180

successor Master Servicers as provided in Section 7.02.

Servicing Modification: Any reduction of the interest rate on or the outstanding princ
a Mortgage Loan, any extension of the final maturity date of a Mortgage Loan, and any increase
outstanding principal balance of a Mortgage Loan by adding to the Stated Principal Balance unp
and interest and other amounts owing under the Mortgage Loan, in each case pursuant to a modif
Mortgage Loan that is in default, or for which, in the judgment of the Master Servicer, defaul
foreseeable in accordance with Section 3.07(a).

Servicing Officer: Any officer of the Master Servicer involved in, or responsible for
administration and servicing of the Mortgage Loans whose name and specimen signature appear on
servicing officers furnished to the Trustee by the Master Servicer, as such list may from time
amended.

Special Hazard Loss: Any Realized Loss not in excess of the cost of the lesser of rep
replacement of a Mortgaged Property (or, with respect to a Cooperative Loan, the related Coope
Apartment) suffered by such Mortgaged Property (or Cooperative Apartment) on account of direct
exclusive of (i) any loss of a type covered by a hazard policy or a flood insurance policy rea
maintained in respect of such Mortgaged Property pursuant to Section 3.12(a), except to the ex
portion of such loss not covered as a result of any coinsurance provision and (ii) any Extraor

Standard & Poor's: Standard & Poor's Ratings Services, a division of The McGraw-Hill
or its successor in interest.

Stated Principal Balance: With respect to any Mortgage Loan or related REO Property,
Distribution Date, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan
amount by which the Stated  Principal Balance of the Mortgage Loan has been increased pursuant
Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with
such Mortgage Loan or REO Property during each Due Period ending with the Due Period related t
Distribution Date which were received or with respect to which an Advance was made, and (b) al
Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Li
Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of princ
accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case
distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized I
to Certificateholders with respect thereto for any previous Distribution Date.

Subclass: With respect to the Class A-V Certificates, any Subclass thereof issued purs
5.01(c). Any such Subclass will represent the Uncertificated Class A-V REMIC Regular Interest
specified by the initial Holder of the Class A-V Certificates pursuant to Section 5.01(c).

Subordinate Certificate: Any one of the Class M Certificates or Class B Certificates,
Trustee and authenticated by the Certificate Registrar substantially in the form annexed heret
and Exhibit C, respectively.

Subordinate Class Percentage: With respect to any Distribution Date and any Class of
Certificates, a fraction, expressed as a percentage, the numerator of which is the aggregate C
Principal Balance of such Class of Subordinate Certificates immediately prior to such date and
denominator of which is the aggregate Stated Principal Balance of all of the Mortgage Loans (o
Properties) (other than the related Discount Fraction of each Discount Mortgage Loan) immediat
such Distribution Date.

Subordinate Percentage: As of any Distribution Date and, with respect to any Mortgage
of two or more Loan Groups, any Loan Group, 100% minus the related Senior Percentage as of suc
Date.

Subsequent Recoveries: As of any Distribution Date, amounts received by the Master Ser
any related expenses permitted to be reimbursed pursuant to Section 3.10) or surplus amounts h
Master Servicer to cover estimated expenses (including, but not limited to, recoveries in resp
representations and warranties made by the related Seller pursuant to the applicable Seller's
assigned to the Trustee pursuant to Section 2.04) specifically related to a Mortgage Loan that
subject of a Cash Liquidation or an REO Disposition prior to the related Prepayment Period tha
Realized Loss.

Subserviced Mortgage Loan: Any Mortgage Loan that, at the time of reference thereto,
Subservicing Agreement.

Subservicer: Any Person with whom the Master Servicer has entered into a Subservicing
who generally satisfied the requirements set forth in the Program Guide in respect of the qual

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 70 of 180

Subservicer as of the date of its approval as a Subservicer by the Master Servicer.

Subservicer Advance: Any delinquent installment of principal and interest on a Mortga advanced by the related Subservicer (net of its Subservicing Fee) pursuant to the Subservicing

Subservicing Account:  An account established by a Subservicer in accordance with Sect

Subservicing Agreement:  The written contract between the Master Servicer and any Subs to servicing and administration of certain Mortgage Loans as provided in Section 3.02, general of the servicer contract referred to or contained in the Program Guide or in such other form a approved by the Master Servicer and the Company.  With respect to Additional Collateral Loans MLCC, the Subservicing Agreement shall also include the Addendum and Assignment Agreement and Asset Mortgage Servicing Agreement. With respect to any Pledged Asset Loan subserviced by GMAC Corporation, the  Addendum and Assignment Agreement, dated as of November 24, 1998, between th Servicer and GMAC Mortgage Corporation, as such agreement may be amended from time to time.

Subservicing Fee:  As to any Mortgage Loan, the fee payable monthly to the related Sub the case of a Nonsubserviced Mortgage Loan, to the Master Servicer) in respect of subservicing compensation that accrues at an annual rate equal to the excess of the Mortgage Rate borne by Mortgage Note over the rate per annum designated on the Mortgage Loan Schedule as the "CURR NE Mortgage Loan.

Successor Master Servicer: As defined in Section 3.22.

Surety:  Ambac, or its successors in interest, or such other surety as may be identifi Supplement.

Surety Bond:  The Limited Purpose Surety Bond (Policy No. AB0039BE), dated February 28 respect to Mortgage Loans originated by MLCC, or the Surety Bond (Policy No. AB0240BE), dated in respect to Mortgage Loans originated by Novus Financial Corporation, in each case issued by benefit of certain beneficiaries, including the Trustee for the benefit of the Holders of the but only to the extent that such Surety Bond covers any Additional Collateral Loans, or such o Bond as may be identified in the Series Supplement.

Tax Returns:  The federal income tax return on Internal Revenue Service Form 1066, U.S Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be behalf of any REMIC formed under the Series Supplement and under the REMIC Provisions, togethe all other information, reports or returns that may be required to be furnished to the Certific filed with the Internal Revenue Service or any other governmental taxing authority under any a provisions of federal, state or local tax laws.

Transaction Party:  As defined in Section 12.02(a).

Transfer:  Any direct or indirect transfer, sale, pledge, hypothecation or other form any Ownership Interest in a Certificate.

Transferee:  Any Person who is acquiring by Transfer any Ownership Interest in a Certi

Transferor:  Any Person who is disposing by Transfer of any Ownership Interest in a Ce

Trust Fund:  The segregated pool of assets related to a Series, with respect to which REMIC elections are to be made pursuant to this Agreement, consisting of:

(i)      the Mortgage Loans and the related Mortgage Files and collateral securing such Mortga

(ii)     all payments on and collections in respect of the Mortgage Loans due after the Cut-off be on deposit in the Custodial Account or in the Certificate Account and identified as the Trust Fund, including the proceeds from the liquidation of Additional Collateral f Additional Collateral Loan or Pledged Assets for any Pledged Asset Loan, but not inclu deposit in the Initial Monthly Payment Fund,

(iii)    property that secured a Mortgage Loan and that has been acquired for the benefit of th Certificateholders by foreclosure or deed in lieu of foreclosure,

(iv)     the hazard insurance policies and Primary Insurance Policies, if any, the Pledged Asse to each Pledged Asset Loan, and the interest in the Surety Bond transferred to the Tru Section 2.01, and

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 71 of 180

(v)      all proceeds of clauses (i) through (iv) above.

         Trustee Information:  As specified in Section 12.05(a)(i)(A).

         Uninsured Cause:  Any cause of damage to property subject to a Mortgage such that the
restoration of such property is not fully reimbursable by the hazard insurance policies.

         United States Person or U.S. Person: (i) A citizen or resident of the United States, (
corporation, partnership or other entity treated as a corporation or partnership for United St
income tax purposes organized in or under the laws of the United States or any state thereof o
of Columbia (unless, in the case of a partnership, Treasury regulations provide otherwise), pr
for purposes solely of the restrictions on the transfer of residual interests, no partnership
treated as a partnership for United States federal income tax purposes shall be treated as a U
Person or U.S. Person unless all persons that own an interest in such partnership either direc
indirectly through any chain of entities no one of which is a corporation for United States fe
tax purposes are required by the applicable operating agreement to be United States Persons,
the income of which is includible in gross income for United States tax purposes, regardless o
or (iv) a trust if a court within the United States is able to exercise primary supervision ov
administration of the trust and one or more United States persons have authority to control al
decisions of the trust.  Notwithstanding the preceding sentence, to the extent provided in Tre
regulations, certain Trusts in existence on August 20, 1996, and treated as United States pers
such date, that elect to continue to be treated as United States persons will also be a U.S. E

         U.S.A. Patriot Act:  Uniting and Strengthening America by Providing Appropriate Tools
Obstruct Terrorism Act of 2001, as amended.
         Voting Rights:  The portion of the voting rights of all of the Certificates which is a
Certificate, and more specifically designated in Article XI of the Series Supplement.

Section 1.02.  Use of Words and Phrases.

         "Herein," "hereby," "hereunder," `hereof," "hereinbefore," "hereinafter" and other equ
refer to the Pooling and Servicing Agreement as a whole.  All references herein to Articles, S
Subsections shall mean the corresponding Articles, Sections and Subsections in the Pooling and
Agreement.  The definitions set forth herein include both the singular and the plural.

---

ARTICLE II


CONVEYANCE OF MORTGAGE LOANS;


ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01.  Conveyance of Mortgage Loans.

(a)      The Company, concurrently with the execution and delivery hereof, does hereby assign t
for the benefit of the Certificateholders without recourse all the right, title and interest o
in and to the Mortgage Loans, including all interest and principal received on or with respect
Mortgage Loans after the Cut-off Date (other than payments of principal and interest due on th
Loans in the month of the Cut-off Date).  In connection with such transfer and assignment, the
hereby deliver to the Trustee the Certificate Policy (as defined in the Series Supplement), if
benefit of the Holders of the Insured Certificates (as defined in the Series Supplement):

(b)      In connection with such assignment, except as set forth in Section 2.01(c) and subject
2.01(d) below, the Company does hereby deliver to, and deposit with, the Trustee, or to and wi
Custodians, as the duly appointed agent or agents of the Trustee for such purpose, the followi
instruments (or copies thereof as permitted by this Section) (I) with respect to each Mortgage
assigned (other than a Cooperative Loan):

(i)      The original Mortgage Note, endorsed without recourse in blank or to the order of the
         showing an unbroken chain of endorsements from the originator thereof to the Person en

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 72 of 180

the Trustee, or with respect to any Destroyed Mortgage Note, an original lost note aff
related Seller or Residential Funding stating that the original Mortgage Note was lost
destroyed, together with a copy of the related Mortgage Note;

(ii)     The original Mortgage, noting the presence of the MIN of the Mortgage Loan and langua
that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence
indicated thereon or a copy of the Mortgage with evidence of recording indicated there

(iii)    Unless the Mortgage Loan is registered on the MERS(R)System, an original Assignment o
the Trustee with evidence of recording indicated thereon or a copy of such assignment
recording indicated thereon;

(iv)     The original recorded assignment or assignments of the Mortgage showing an unbroken ch
from the originator thereof to the Person assigning it to the Trustee (or to MERS, if
Loan is registered on the MERS(R)System and noting the presence of a MIN) with eviden
noted thereon or attached thereto, or a copy of such assignment or assignments of the
evidence of recording indicated thereon; and

(v)      The original of each modification, assumption agreement or preferred loan agreement, i
to such Mortgage Loan or a copy of each modification, assumption agreement or preferre

         and (II) with respect to each Cooperative Loan so assigned:

(i)      The original Mortgage Note, endorsed without recourse to the order of the Trustee and
unbroken chain of endorsements from the originator thereof to the Person endorsing it
or with respect to any Destroyed Mortgage Note, an original lost note affidavit from t
Seller or Residential Funding stating that the original Mortgage Note was lost, mispla
destroyed, together with a copy of the related Mortgage Note;

(ii)     A counterpart of the Cooperative Lease and the Assignment of Proprietary Lease to the
the Cooperative Loan with intervening assignments showing an unbroken chain of title f
originator to the Trustee;

(iii)    The related Cooperative Stock Certificate, representing the related Cooperative Stock
respect to such Cooperative Loan, together with an undated stock power (or other simil
executed in blank;

(iv)     The original recognition agreement by the Cooperative of the interests of the mortgage
to the related Cooperative Loan;

(v)      The Security Agreement;

(vi)     Copies of the original UCC-1 financing statement, and any continuation statements, fil
originator of such Cooperative Loan as secured party, each with evidence of recording
evidencing the interest of the originator under the Security Agreement and the Assignm
Proprietary Lease;

(vii)    Copies of the filed UCC-3 assignments of the security interest referenced in clause (v
an unbroken chain of title from the originator to the Trustee, each with evidence of r
thereof, evidencing the interest of the originator under the Security Agreement and th
Proprietary Lease;

(viii)   An executed assignment of the interest of the originator in the Security Agreement, As
Proprietary Lease and the recognition agreement referenced in clause (iv) above, showi
chain of title from the originator to the Trustee;

(ix)     The original of each modification, assumption agreement or preferred loan agreement, i
to such Cooperative Loan; and

(x)      A duly completed UCC-1 financing statement showing the Master Servicer as debtor, the
secured party and the Trustee as assignee and a duly completed UCC-1 financing stateme
Company as debtor and the Trustee as secured party, each in a form sufficient for fili
the interest of such debtors in the Cooperative Loans.

(c)      The Company may, in lieu of delivering the original of the documents set forth in Sect
2.01(b)(I)(ii), (iii), (iv) and (v) and Section (b)(II)(ii), (iv), (vii), (ix) and (x) (or cop
permitted by Section 2.01(b)) to the Trustee or the Custodian or Custodians, deliver such docu
Master Servicer, and the Master Servicer shall hold such documents in trust for the use and be

present and future Certificateholders until such time as is set forth in the next sentence. W
Business Days following the earlier of (i) the receipt of the original of all of the documents
set forth in Section 2.01(b)(I)(ii), (iii), (iv) and (v) and Section (b)(II)(ii), (iv), (vii),
(or copies thereof as permitted by such Section) for any Mortgage Loan and (ii) a written requ
Trustee to deliver those documents with respect to any or all of the Mortgage Loans then being
Master Servicer, the Master Servicer shall deliver a complete set of such documents to the Tru
Custodian or Custodians that are the duly appointed agent or agents of the Trustee.

The parties hereto agree that it is not intended that any Mortgage Loan be included in
that is either (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act eff
27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act e
January 1, 2004, (iii) a "High Cost Home Mortgage Loan" as defined in the Massachusetts Predat
Practices Act effective November 7, 2004 or (iv) a "High-Cost Home Loan" as defined in the In
Enrolled Act No. 1229, effective as of January 1, 2005.

(d)    Notwithstanding the provisions of Section 2.01(c), in connection with any Mortgage Loa
Company cannot deliver the original of the Mortgage, any assignment, modification, assumption
preferred loan agreement (or copy thereof as permitted by Section 2.01(b)) with evidence of re
concurrently with the execution and delivery of this Agreement because of (i) a delay caused b
recording office where such Mortgage, assignment, modification, assumption agreement or prefer
agreement as the case may be, has been delivered for recordation, or (ii) a delay in the recei
information necessary to prepare the related assignments, the Company shall deliver or cause t
to the Trustee or the respective Custodian a copy of such Mortgage, assignment, modification,
agreement or preferred loan agreement.

The Company shall promptly cause to be recorded in the appropriate public office for r
records the Assignment referred to in clause (I)(iii) of Section 2.01(b), except (a) in state
opinion of counsel acceptable to the Trustee and the Master Servicer, such recording is not re
protect the Trustee's interests in the Mortgage Loan against the claim of any subsequent trans
successor to or creditor of the Company or the originator of such Mortgage Loan or (b) if MERS
on the Mortgage or on a properly recorded assignment of the Mortgage as the mortgagee of recor
nominee for the Seller and its successors and assigns, and shall promptly cause to be filed th
assignment and UCC-1 financing statement referred to in clause (II)(vii) and (x), respectively
2.01(b). If any Assignment, Form UCC-3 or Form UCC-1, as applicable, is lost or returned unre
Company because of any defect therein, the Company shall prepare a substitute Assignment, Form
UCC-1, as applicable, or cure such defect, as the case may be, and cause such Assignment to be
accordance with this paragraph. The Company shall promptly deliver or cause to be delivered t
or the respective Custodian such Mortgage or Assignment or Form UCC-3 or Form UCC-1, as applic
thereof as permitted by Section 2.01(b)) with evidence of recording indicated thereon at the t
in Section 2.01(c). In connection with its servicing of Cooperative Loans, the Master Service
best efforts to file timely continuation statements with regard to each financing statement an
relating to Cooperative Loans as to which the related Cooperative Apartment is located outside
of New York.

If the Company delivers to the Trustee or Custodian any Mortgage Note or Assignment of
blank, the Company shall, or shall cause the Custodian to, complete the endorsement of the Mor
the Assignment of Mortgage in the name of the Trustee in conjunction with the Interim Certific
the Custodian, as contemplated by Section 2.02.

Any of the items set forth in Sections 2.01(b)(I)(ii), (iii), (iv) and (v) and (II)(vi
that may be delivered as a copy rather than the original may be delivered to the Trustee or th

In connection with the assignment of any Mortgage Loan registered on the MERS(R)Systen
further agrees that it will cause, at the Company's own expense, within 30 Business Days after
Date, the MERS(R)System to indicate that such Mortgage Loans have been assigned by the Company
in accordance with this Agreement for the benefit of the Certificateholders by including (or c
case of  Mortgage Loans which are repurchased in accordance with this Agreement) in such compu
the code in the field which identifies the specific Trustee and (b) the code in the field "Poo
identifies the series of the Certificates issued in connection with such Mortgage Loans. The
agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer a
will not, alter the codes referenced in this paragraph with respect to any Mortgage Loan durin
this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms
Agreement.

(e)    Residential Funding hereby assigns to the Trustee its security interest in and to any
Collateral or Pledged Assets, its right to receive amounts due or to become due in respect of
Collateral or Pledged Assets pursuant to the related Subservicing Agreement and its rights as

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 74 of 180

under the Surety Bond in respect of any Additional Collateral Loans. With respect to any Addi
Collateral Loan or Pledged Asset Loan, Residential Funding shall cause to be filed in the appr
recording office a UCC-3 statement giving notice of the assignment of the related security int
Trust Fund and shall thereafter cause the timely filing of all necessary continuation statemer
to such financing statements.

(f)     It is intended that the conveyance by the Company to the Trustee of the Mortgage Loans
in this Section 2.01 be and the Uncertificated REMIC Regular Interests, if any (as provided fo
2.06), be construed as a sale by the Company to the Trustee of the Mortgage Loans and any Unce
REMIC Regular Interests for the benefit of the Certificateholders. Further, it is not intende
conveyance be deemed to be a pledge of the Mortgage Loans and any Uncertificated REMIC Regular
the Company to the Trustee to secure a debt or other obligation of the Company. Nonetheless,
Agreement is intended to be and hereby is a security agreement within the meaning of Articles
New York Uniform Commercial Code and the Uniform Commercial Code of any other applicable juris
the conveyance provided for in Section 2.01 shall be deemed to be, and hereby is, (1) a grant
to the Trustee of a security interest in all of the Company's right (including the power to co
thereto), title and interest, whether now owned or hereafter acquired, in and to any and all g
intangibles, payment intangibles, accounts, chattel paper, instruments, documents, money, depo
certificates of deposit, goods, letters of credit, advices of credit and investment property a
property of whatever kind or description now existing or hereafter acquired consisting of, ari
relating to any of the following: (A) the Mortgage Loans, including (i) with respect to each C
Loan, the related Mortgage Note, Security Agreement, Assignment of Proprietary Lease, Cooperat
Certificate and Cooperative Lease, (ii) with respect to each Mortgage Loan other than a Cooper
related Mortgage Note and Mortgage, and (iii) any insurance policies and all other documents i
Mortgage File, (B) all amounts payable pursuant to the Mortgage Loans in accordance with the t
(C) any Uncertificated REMIC Regular Interests and (D) all proceeds of the conversion, volunta
involuntary, of the foregoing into cash, instruments, securities or other property, including
limitation all amounts from time to time held or invested in the Certificate Account or the Cu
Account, whether in the form of cash, instruments, securities or other property and (2) an ass
Company to the Trustee of any security interest in any and all of Residential Funding's right
power to convey title thereto), title and interest, whether now owned or hereafter acquired, i
property described in the foregoing clauses (1)(A), (B), (C) and (D) granted by Residential Fu
Company pursuant to the Assignment Agreement; (c) the possession by the Trustee, the Custodian
agent of the Trustee of Mortgage Notes or such other items of property as constitute instrumen
payment intangibles, negotiable documents, goods, deposit accounts, letters of credit, advices
investment property, certificated securities or chattel paper shall be deemed to be "possessio
secured party," or possession by a purchaser or a person designated by such secured party, for
perfecting the security interest pursuant to the Minnesota Uniform Commercial Code and the Uni
Code of any other applicable jurisdiction as in effect (including, without limitation, Section
9-314 and 9-106 thereof); and (d) notifications to persons holding such property, and acknowle
receipts or confirmations from persons holding such property, shall be deemed notifications to
acknowledgments, receipts  or confirmations from, securities intermediaries, bailees or agents
holding for (as applicable) the Trustee for the purpose of perfecting such security interest u
law.

        The Company and, at the Company's direction, Residential Funding and the Trustee shall
consistent with this Agreement, take such reasonable actions as may be necessary to ensure tha
Agreement were determined to create a security interest in the Mortgage Loans, any Uncertifica
Regular Interests and the other property described above, such security interest would be dete
perfected security interest of first priority under applicable law and will be maintained as s
the term of this Agreement. Without limiting the generality of the foregoing, the Company sha
deliver to the Trustee not less than 15 days prior to any filing date and, the Trustee shall f
filing, or shall cause to be forwarded for filing, at the expense of the Company, all filings
maintain the effectiveness of any original filings necessary under the Uniform Commercial Code
in any jurisdiction to perfect the Trustee's security interest in or lien on the Mortgage Loan
Uncertificated REMIC Regular Interests, as evidenced by an Officers' Certificate of the Compar
without limitation (x) continuation statements, and (y) such other statements as may be occasi
change of name of Residential Funding, the Company or the Trustee (such preparation and filing
the expense of the Trustee, if occasioned by a change in the Trustee's name), (2) any change o
jurisdiction of organization of Residential Funding or the Company, (3) any transfer of any in
Residential Funding or the Company in any Mortgage Loan or (4) any transfer of any interest of
Funding or the Company in any Uncertificated REMIC Regular Interest.

(g)     The Master Servicer hereby acknowledges the receipt by it of the Initial Monthly Payme
Master Servicer shall hold such Initial Monthly Payment Fund in the Custodial Account and shal
Initial Monthly Payment Fund in the Available Distribution Amount for the initial Distributior
Notwithstanding anything herein to the contrary, the Initial Monthly Payment Fund shall not be
any REMIC. To the extent that the Initial Monthly Payment Fund constitutes a reserve fund for

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

tax purposes, (1) it shall be an outside reserve fund and not an asset of any REMIC, (2) it sh
the Seller and (3) amounts transferred by any REMIC to the Initial Monthly Payment Fund shall
transferred to the Seller or any successor, all within the meaning of Section 1.860G-2(h) of t
Regulations.

(h)     The Company agrees that the sale of each Pledged Asset Loan pursuant to this Agreement
constitute the assignment, sale, setting-over, transfer and conveyance to the Trustee, without
subject to the Company's covenants, representations and warranties specifically provided herei
the Company's obligations and all of the Company's right, title and interest in, to and under,
existing or hereafter acquired as owner of the Mortgage Loan with respect to any and all money
security entitlements, accounts, general intangibles, payment intangibles, instruments, docume
accounts, certificates of deposit, commodities contracts, and other investment property and ot
whatever kind or description consisting of, arising from or related to (i) the Assigned Contra
rights, powers and remedies of the Company as owner of such Mortgage Loan under or in connecti
Assigned Contracts, whether arising under the terms of such Assigned Contracts, by statute, at
equity, or otherwise arising out of any default by the Mortgagor under or in connection with t
Contracts, including all rights to exercise any election or option or to make any decision or
or to give or receive any notice, consent, approval or waiver thereunder, (iii) the Pledged An
money, securities, security entitlements, accounts, general intangibles, payment intangibles,
documents, deposit accounts, certificates of deposit, commodities contracts, and other investm
and other property of whatever kind or description and all cash and non-cash proceeds of the s
or redemption of, and all stock or conversion rights, rights to subscribe, liquidation divider
preferences, stock dividends, rights to interest, dividends, earnings, income, rents, issues,
interest payments or other distributions of cash or other property that secures a Pledged Asse
all documents, books and records concerning the foregoing (including all computer programs, ta
related items containing any such information) and (v) all insurance proceeds (including proce
Federal Deposit Insurance Corporation or the Securities Investor Protection Corporation or any
insurance company) of any of the foregoing or replacements thereof or substitutions therefor,
proceeds and the conversion, voluntary or involuntary, of any thereof.  The foregoing transfer
assignment and conveyance does not constitute and is not intended to result in the creation, o
by the Trustee, of any obligation of the Company, or any other person in connection with the P
or under any agreement or instrument relating thereto, including any obligation to the Mortgag
as owner of the Mortgage Loan.

Section 2.02.  Acceptance by Trustee.

        The Trustee acknowledges receipt (or, with respect to Mortgage Loans subject to a Cust
and based solely upon a receipt or certification executed by the Custodian, receipt by the res
Custodian as the duly appointed agent of the Trustee) of the documents referred to in Section
above (except that for purposes of such acknowledgement only, a Mortgage Note may be endorsed
declares that it, or a Custodian as its agent, holds and will hold such documents and the othe
constituting a part of the Mortgage Files delivered to it, or a Custodian as its agent, and th
Residential Funding with respect to any Pledged Assets, Additional Collateral and the Surety B
the Trustee pursuant to Section 2.01, in trust for the use and benefit of all present and futu
Certificateholders.  The Trustee or Custodian (such Custodian being so obligated under a Custo
agrees, for the benefit of Certificateholders, to review each Mortgage File delivered to it pu
Section 2.01(b) within 45 days after the Closing Date to ascertain that all required documents
as set forth in Section 2.01(b)), have been executed and received, and that such documents rel
Mortgage Loans identified on the Mortgage Loan Schedule, as supplemented, that have been conve
to deliver to the Trustee a certificate (the "Interim Certification") to the effect that all o
required to be delivered pursuant to Section 2.01(b) above have been executed and received and
documents relate to the Mortgage Loans identified on the Mortgage Loan Schedule, except for an
listed on Schedule A attached to such Interim Certification.  Upon delivery of the Mortgage Fi
Company or the Master Servicer, the Trustee shall acknowledge receipt (or, with respect to Mor
subject to a Custodial Agreement, and based solely upon a receipt or certification executed by
receipt by the respective Custodian as the duly appointed agent of the Trustee) of the documen
in Section 2.01(c) above.

        If the Custodian, as the Trustee's agent, finds any document or documents constituting
Mortgage File to be missing or defective, the Trustee shall promptly so notify the Master Serv
Company.  Pursuant to Section 2.3 of the Custodial Agreement, the Custodian will notify the Ma
the Company and the Trustee of any such omission or defect found by it in respect of any Mortg
by it in respect of the items reviewed by it pursuant to the Custodial Agreement.  If such omi
materially and adversely affects the interests of the Certificateholders, the Master Servicer
notify Residential Funding of such omission or defect and request Residential Funding to corre
omission or defect within 60 days from the date the Master Servicer was notified of such omiss
and, if Residential Funding does not correct or cure such omission or defect within such perio
Residential Funding to purchase such Mortgage Loan from the Trust Fund at its Purchase Price,

from the date the Master Servicer was notified of such omission or defect; provided that if th
defect would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in Sec
of the Code, any such cure or repurchase must occur within 90 days from the date such breach w
The Purchase Price for any such Mortgage Loan shall be deposited by the Master Servicer in the
Account maintained by it pursuant to Section 3.07 and, upon receipt by the Trustee of written
such deposit signed by a Servicing Officer, the Trustee or any Custodian, as the case may be,
to Residential Funding the related Mortgage File and the Trustee shall execute and deliver suc
of transfer or assignment prepared by the Master Servicer, in each case without recourse, as s
necessary to vest in Residential Funding or its designee any Mortgage Loan released pursuant h
thereafter such Mortgage Loan shall not be part of the Trust Fund.  It is understood and agree
obligation of Residential Funding to so cure or purchase any Mortgage Loan as to which a
defect in or omission of a constituent document exists shall constitute the sole remedy respec
defect or omission available to Certificateholders or the Trustee on behalf of the Certificate

Section 2.03.   Representations, Warranties and Covenants
                        of the Master Servicer and the Company.

(a)     The Master Servicer hereby represents and warrants to the Trustee for the benefit of t
Certificateholders that:

(i)     The Master Servicer is a corporation duly organized, validly existing and in good stan
        laws governing its creation and existence and is or will be in compliance with the law
        in which any Mortgaged Property is located to the extent necessary to ensure the enfor
        each Mortgage Loan in accordance with the terms of this Agreement;

(ii)    The execution and delivery of this Agreement by the Master Servicer and its performanc
        with the terms of this Agreement will not violate the Master Servicer's Certificate of
        or Bylaws or constitute a material default (or an event which, with notice or lapse of
        would constitute a material default) under, or result in the material breach of, any m
        contract, agreement or other instrument to which the Master Servicer is a party or whi
        applicable to the Master Servicer or any of its assets;

(iii)   This Agreement, assuming due authorization, execution and delivery by the Trustee and
        constitutes a valid, legal and binding obligation of the Master Servicer, enforceable
        accordance with the terms hereof subject to applicable bankruptcy, insolvency, reorgan
        moratorium and other laws affecting the enforcement of creditors' rights generally and
        principles of equity, regardless of whether such enforcement is considered in a procee
        or at law;

(iv)    The Master Servicer is not in default with respect to any order or decree of any court
        regulation or demand of any federal, state, municipal or governmental agency, which de
        consequences that would materially and adversely affect the condition (financial or ot
        operations of the Master Servicer or its properties or might have consequences that wo
        adversely affect its performance hereunder;

(v)     No litigation is pending or, to the best of the Master Servicer's knowledge, threatene
        Master Servicer which would prohibit its entering into this Agreement or performing it
        under this Agreement;

(vi)    The Master Servicer will comply in all material respects in the performance of this Ag
        reasonable rules and requirements of each insurer under each Required Insurance Policy

(vii)   No information, certificate of an officer, statement furnished in writing or report de
        Company, any Affiliate of the Company or the Trustee by the Master Servicer will, to t
        the Master Servicer, contain any untrue statement of a material fact or omit a materia
        to make the information, certificate, statement or report not misleading;

(viii)  The Master Servicer has examined each existing, and will examine each new, Subservicin
        is or will be familiar with the terms thereof.  The terms of each existing Subservicin
        each designated Subservicer are acceptable to the Master Servicer and any new Subservi
        will comply with the provisions of Section 3.02; and

(ix)    The Master Servicer is a member of MERS in good standing, and will comply in all mater
        with the rules and procedures of MERS in connection with the servicing of the Mortgage
        registered with MERS.

It is understood and agreed that the representations and warranties set forth in this Section
survive delivery of the respective Mortgage Files to the Trustee or any Custodian.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 77 of 180

Upon discovery by either the Company, the Master Servicer, the Trustee or any Custodia any representation or warranty set forth in this Section 2.03(a) which materially and adversel interests of the Certificateholders in any Mortgage Loan, the party discovering such breach sh written notice to the other parties (any Custodian being so obligated under a Custodial Agreem 90 days of its discovery or its receipt of notice of such breach, the Master Servicer shall ei such breach in all material respects or (ii) to the extent that such breach is with respect to Loan or a related document, purchase such Mortgage Loan from the Trust Fund at the Purchase P manner set forth in Section 2.02; provided that if the omission or defect would cause the Mort other than a "qualified mortgage" as defined in Section 860G(a)(3) of the Code, any such cure must occur within 90 days from the date such breach was discovered.  The obligation of the Ma cure such breach or to so purchase such Mortgage Loan shall constitute the sole remedy in res of a representation and warranty set forth in this Section 2.03(a) available to the Certificat Trustee on behalf of the Certificateholders.

(b)    Representations and warranties relating to the Mortgage Loans are set forth in Sectior Series Supplement.

Section 2.04.  Representations and Warranties of Residential Funding.

The Company, as assignee of Residential Funding under the Assignment Agreement, hereby Trustee for the benefit of Certificateholders all of its right, title and interest in respect Assignment Agreement applicable to a Mortgage Loan.  Insofar as the Assignment Agreement relat representations and warranties made by Residential Funding in respect of such Mortgage Loan ar provided thereunder for any breach of such representations and warranties, such right, title a be enforced by the Master Servicer on behalf of the Trustee and the Certificateholders.  Upon by the Company, the Master Servicer, the Trustee or any Custodian of a breach of any of the re and warranties made in the Assignment Agreement (which, for purposes hereof, will be deemed to other cause giving rise to a repurchase obligation under the Assignment Agreement) in respect Loan which materially and adversely affects the interests of the Certificateholders in such Mo the party discovering such breach shall give prompt written notice to the other parties (any C so obligated under a Custodial Agreement).  The Master Servicer shall promptly notify Resident such breach and request that Residential Funding either (i) cure such breach in all material r 90 days from the date the Master Servicer was notified of such breach or (ii) purchase such Mo from the Trust Fund at the Purchase Price and in the manner set forth in Section 2.02; provide Residential Funding shall have the option to substitute a Qualified Substitute Mortgage Loan o such Mortgage Loan if such substitution occurs within two years following the Closing Date; pr the breach would cause the Mortgage Loan to be other than a "qualified mortgage" as defined in 860G(a)(3) of the Code, any such cure, repurchase or substitution must occur within 90 days fr breach was discovered.  If a breach of the Compliance With Laws Representation has given rise obligation to repurchase or substitute a Mortgage Loan pursuant to Section 4 of the Assignment then the Master Servicer shall request that Residential Funding pay to the Trust Fund, concurr in addition to the remedies provided in the preceding sentence, an amount equal to any liabili expense that was actually incurred and paid out of or on behalf of the Trust Fund, and that di from such breach, or if incurred and paid by the Trust Fund thereafter, concurrently with such the event that Residential Funding elects to substitute a Qualified Substitute Mortgage Loan o Deleted Mortgage Loan pursuant to this Section 2.04, Residential Funding shall deliver to the Custodian for the benefit of the Certificateholders with respect to such Qualified Substitute or Loans, the original Mortgage Note, the Mortgage, an Assignment of the Mortgage in recordabl required pursuant to Section 2.01, and such other documents and agreements as are required by with the Mortgage Note endorsed as required by Section 2.01.  No substitution will be made in month after the Determination Date for such month.  Monthly Payments due with respect to Quali Mortgage Loans in the month of substitution shall not be part of the Trust Fund and will be re Master Servicer and remitted by the Master Servicer to Residential Funding on the next succeed Distribution Date.  For the month of substitution, distributions to the Certificateholders wil Monthly Payment due on a Deleted Mortgage Loan for such month and thereafter Residential Fundi entitled to retain all amounts received in respect of such Deleted Mortgage Loan.  The Master S amend or cause to be amended the Mortgage Loan Schedule, and, if the Deleted Mortgage Loan was Mortgage Loan, the Schedule of Discount Fractions, for the benefit of the Certificateholders t removal of such Deleted Mortgage Loan and the substitution of the Qualified Substitute Mortgag and the Master Servicer shall deliver the amended Mortgage Loan Schedule, and, if the Deleted was a Discount Mortgage Loan, the amended Schedule of Discount Fractions, to the Trustee.  Upo substitution, the Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of and the related Subservicing Agreement in all respects, Residential Funding shall be deemed to representations and warranties with respect to the Qualified Substitute Mortgage Loan containe related Assignment Agreement, and the Company and the Master Servicer shall be deemed to have respect to any Qualified Substitute Mortgage Loan or Loans, as of the date of substitution, th representations and warranties set forth in this Section 2.04, in Section 2.03 hereof and in S

Assignment Agreement, and the Master Servicer shall be obligated to repurchase or substitute f
Qualified Substitute Mortgage Loan as to which a Repurchase Event (as defined in the Assignmen
has occurred pursuant to Section 4 of the Assignment Agreement.

In connection with the substitution of one or more Qualified Substitute Mortgage Loans
Deleted Mortgage Loans, the Master Servicer will determine the amount (if any) by which the ag
principal balance of all such Qualified Substitute Mortgage Loans as of the date of substituti
the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (in each case after
the principal portion of the Monthly Payments due in the month of substitution that are to be
the Certificateholders in the month of substitution).  Residential Funding shall deposit the a
shortfall into the Custodial Account on the day of substitution, without any reimbursement the
Residential Funding shall give notice in writing to the Trustee of such event, which notice sh
accompanied by an Officers' Certificate as to the calculation of such shortfall and (subject t
10.01(f)) by an Opinion of Counsel to the effect that such substitution will not cause (a) any
be imposed on the Trust Fund, including without limitation, any federal tax imposed on "prohib
transactions" under Section 860F(a)(1) of the Code or on "contributions after the startup date
860G(d)(1) of the Code or (b) any portion of any REMIC to fail to qualify as such at any time
Certificate is outstanding.

It is understood and agreed that the obligation of Residential Funding to cure such br
purchase, or to substitute for, a Mortgage Loan as to which such a breach has occurred and is
to make any additional payments required under the Assignment Agreement in connection with a b
Compliance With Laws Representation shall constitute the sole remedy respecting such breach av
Certificateholders or the Trustee on behalf of Certificateholders.  If the Master Servicer is
Funding, then the Trustee shall also have the right to give the notification and require the p
substitution provided for in the second preceding paragraph in the event of such a breach of a
or warranty made by Residential Funding in the Assignment Agreement.  In connection with the p
substitution for any such Mortgage Loan by Residential Funding, the Trustee shall assign to Re
Funding all of the Trustee's right, title and interest in respect of the Assignment Agreement
such Mortgage Loan.

Section 2.05.    Execution and Authentication of Certificates/Issuance of Certificates Evidencin
REMIC I Certificates.

As provided in Section 2.05 of the Series Supplement.

Section 2.06.    Conveyance of Uncertified REMIC I and REMIC II Regular Interests; Acceptance

As provided in Section 2.06 of the Series Supplement.

Section 2.07.    Issuance of Certificates Evidencing Interests in REMIC II.

As provided in Section 2.07 of the Series Supplement.

Section 2.08.    Purposes and Powers of the Trust.

The purpose of the trust, as created hereunder, is to engage in the following activiti

(a)      to sell the Certificates to the Company in exchange for the Mortgage Loans;

(b)      to enter into and perform its obligations under this Agreement;

(c)      to engage in those activities that are necessary, suitable or convenient to accomplish
or are incidental thereto or connected therewith; and

(d)      subject to compliance with this Agreement, to engage in such other activities as may b
connection with conservation of the Trust Fund and the making of distributions to the Certific

The trust is hereby authorized to engage in the foregoing activities.  Notwith
provisions of Section 11.01, the trust shall not engage in any activity other than in connecti
foregoing or other than as required or authorized by the terms of this Agreement while any Cer
outstanding, and this Section 2.08 may not be amended, without the consent of the Certificateh
evidencing a majority of the aggregate Voting Rights of the Certificates.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 79 of 180

ARTICLE III

## ADMINISTRATION AND SERVICING
## OF MORTGAGE LOANS

Section 3.01.  Master Servicer to Act as Servicer.

(a)     The Master Servicer shall service and administer the Mortgage Loans in accordance with
this Agreement and the respective Mortgage Loans and shall have full power and authority, acti
through Subservicers as provided in Section 3.02, to do any and all things which it may deem r
desirable in connection with such servicing and administration.  Without limiting the generali
foregoing, the Master Servicer in its own name or in the name of a Subservicer is hereby autho
empowered by the Trustee when the Master Servicer or the Subservicer, as the case may be, beli
appropriate in its best judgment, to execute and deliver, on behalf of the Certificateholders
or any of them, any and all instruments of satisfaction or cancellation, or of partial or full
discharge, or of consent to assumption or modification in connection with a proposed conveyanc
assignment of any Mortgage and Mortgage Note in connection with the repurchase of a Mortgage L
other comparable instruments, or with respect to the modification or re-recording of a Mortgag
purpose of correcting the Mortgage, the subordination of the lien of the Mortgage in favor of
utility company or government agency or unit with powers of eminent domain, the taking of a de
foreclosure, the commencement, prosecution or completion of judicial or non-judicial foreclosu
conveyance of a Mortgaged Property to the related Insurer, the acquisition of any property acc
foreclosure or deed in lieu of foreclosure, or the management, marketing and conveyance of any
acquired by foreclosure or deed in lieu of foreclosure with respect to the Mortgage Loans and
the Mortgaged Properties. The Master Servicer further is authorized and empowered by the Trust
of the Certificateholders and the Trustee, in its own name or in the name of the Subservicer,
Servicer or the Subservicer, as the case may be, believes it appropriate in its best judgment
Mortgage Loan on the MERS(R)System, or cause the removal from the registration of any Mortgage
MERS(R)System, to execute and deliver, on behalf of the Trustee and the Certificateholders or
and all instruments of assignment and other comparable instruments with respect to such assign
re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its succ
assigns.  Any expenses incurred in connection with the actions described in the preceding sent
borne by the Master Servicer in accordance with Section 3.16(c), with no right of reimbursemen
that if, as a result of MERS discontinuing or becoming unable to continue operations in connec
MERS System, it becomes necessary to remove any Mortgage Loan from registration on the MERS Sy
arrange for the assignment of the related Mortgages to the Trustee, then any related expenses
reimbursable to the Master Servicer.  Notwithstanding the foregoing, subject to Section 3.07(a
Servicer shall not permit any modification with respect to any Mortgage Loan that would both c
sale or exchange of such Mortgage Loan within the meaning of Section 1001 of the Code and any
temporary or final regulations promulgated thereunder (other than in connection with a propose
assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to
3.13(d) hereof) and cause any REMIC formed under the Series Supplement to fail to qualify as a
the Code.  The Trustee shall furnish the Master Servicer with any powers of attorney and other
necessary or appropriate to enable the Master Servicer to service and administer the Mortgage
Trustee shall not be liable for any action taken by the Master Servicer or any Subservicer pur
powers of attorney. In servicing and administering any Nonsubserviced Mortgage Loan, the Maste
shall, to the extent not inconsistent with this Agreement, comply with the Program Guide as if
originator of such Mortgage Loan and had retained the servicing rights and obligations in resp
In connection with servicing and administering the Mortgage Loans, the Master Servicer and any
the Master Servicer (i) may perform services such as appraisals and brokerage services that ar
customarily provided by servicers of mortgage loans, and shall be entitled to reasonable compe
therefor in accordance with Section 3.10 and (ii) may, at its own discretion and on behalf of
obtain credit information in the form of a "credit score" from a credit repository.

(b)     All costs incurred by the Master Servicer or by Subservicers in effecting the timely p
and assessments on the properties subject to the Mortgage Loans shall not, for the purpose of
monthly distributions to the Certificateholders, be added to the amount owing under the relate
Loans, notwithstanding that the terms of such Mortgage Loan so permit, and such costs shall be
the extent permitted by Section 3.10(a)(ii).

(c)     The Master Servicer may enter into one or more agreements in connection with the offer
pass-through certificates evidencing interests in one or more of the Certificates providing fo
by the Master Servicer of amounts received by the Master Servicer as servicing compensation he
required to cover certain Prepayment Interest Shortfalls on the Mortgage Loans, which payment
thereafter be an obligation of the Master Servicer hereunder.

Section 3.02.   Subservicing Agreements Between Master Servicer and Subservicers; Enforcement o
and Sellers' Obligations.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 80 of 180

(a)    The Master Servicer may continue in effect Subservicing Agreements entered into by Res
and Subservicers prior to the execution and delivery of this Agreement, and may enter into new
Agreements with Subservicers, for the servicing and administration of all or some of the Mortg
Each Subservicer of a Mortgage Loan shall be entitled to receive and retain, as provided in th
Subservicing Agreement and in Section 3.07, the related Subservicing Fee from payments of inte
on such Mortgage Loan after payment of all amounts required to be remitted to the Master Servi
of such Mortgage Loan.  For any Mortgage Loan that is a Nonsubserviced Mortgage Loan, the Mast
shall be entitled to receive and retain an amount equal to the Subservicing Fee from payments
Unless the context otherwise requires, references in this Agreement to actions taken or to be
Master Servicer in servicing the Mortgage Loans include actions taken or to be taken by a Subs
behalf of the Master Servicer.  Each Subservicing Agreement will be upon such terms and condit
generally required or permitted by the Program Guide and are not inconsistent with this Agreem
Master Servicer and the Subservicer have agreed.  A representative form of Subservicing Agreem
hereto as Exhibit E.  With the approval of the Master Servicer, a Subservicer may delegate its
obligations to third-party servicers, but such Subservicer will remain obligated under the rel
Subservicing Agreement.  The Master Servicer and a Subservicer may enter into amendments there
different form of Subservicing Agreement, and the form referred to or included in the Program
provided for information and shall not be deemed to limit in any respect the discretion of the
Servicer to modify or enter into different Subservicing Agreements; provided, however, that an
amendments or different forms shall be consistent with and not violate the provisions of eithe
Agreement or the Program Guide in a manner which would materially and adversely affect the int
Certificateholders.  The Program Guide and any other Subservicing Agreement entered into betwe
Servicer and any Subservicer shall require the Subservicer to accurately and fully report its
files to each of the Credit Repositories in a timely manner.

(b)    As part of its servicing activities hereunder, the Master Servicer, for the benefit of
the Certificateholders, shall use its best reasonable efforts to enforce the obligations of ea
under the related Subservicing Agreement and of each Seller under the related Seller's Agreeme
the Company's rights with respect to Seller's obligation has been assigned to the Trustee here
extent that the non-performance of any such Seller's obligation would have a material and adve
Mortgage Loan, including, without limitation, the obligation to purchase a Mortgage Loan on ac
defective documentation, as described in Section 2.02, or on account of a breach of a represen
warranty, as described in Section 2.04.  Such enforcement, including, without limitation, the
prosecution of claims, termination of Subservicing Agreements or Seller's Agreements, as appro
pursuit of other appropriate remedies, shall be in such form and carried out to such an extent
time as the Master Servicer would employ in its good faith business judgment and which are nor
in its general mortgage servicing activities.  The Master Servicer shall pay the costs of such
its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting f
enforcement to the extent, if any, that such recovery exceeds all amounts due in respect of th
Mortgage Loan or (ii) from a specific recovery of costs, expenses or attorneys fees against th
whom such enforcement is directed.  For purposes of clarification only, the parties agree that
is not intended to, and does not, limit the ability of the Master Servicer to be reimbursed fo
are incurred in connection with the enforcement of a Seller's obligations (insofar as the Comp
with respect to such Seller's obligations have been assigned to the Trustee hereunder) and are
pursuant to Section 3.10(a)(viii).

Section 3.03.  Successor Subservicers.

       The Master Servicer shall be entitled to terminate any Subservicing Agreement that may
accordance with the terms and conditions of such Subservicing Agreement and without any limita
of this Agreement; provided, however, that in the event of termination of any Subservicing Agr
Master Servicer or the Subservicer, the Master Servicer shall either act as servicer of the re
Loan or enter into a Subservicing Agreement with a successor Subservicer which will be bound b
the related Subservicing Agreement.  If the Master Servicer or any Affiliate of Residential Fu
servicer, it will not assume liability for the representations and warranties of the Subservic
replaces.  If the Master Servicer enters into a Subservicing Agreement with a successor Subser
Master Servicer shall use reasonable efforts to have the successor Subservicer assume liabilit
representations and warranties made by the terminated Subservicer in respect of the related Mo
and, in the event of any such assumption by the successor Subservicer, the Master Servicer may
exercise of its business judgment, release the terminated Subservicer from liability for such
and warranties.

Section 3.04.  Liability of the Master Servicer.

       Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement re
agreements or arrangements between the Master Servicer or a Subservicer or reference to action
a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Trust

Certificateholders for the servicing and administering of the Mortgage Loans in accordance wit
provisions of Section 3.01 without diminution of such obligation or liability by virtue of suc
Agreements or arrangements or by virtue of indemnification from the Subservicer or the Company
same extent and under the same terms and conditions as if the Master Servicer alone were servi
administering the Mortgage Loans.  The Master Servicer shall be entitled to enter into any agr
Subservicer or Seller for indemnification of the Master Servicer and nothing contained in this
shall be deemed to limit or modify such indemnification.

Section 3.05.  No Contractual Relationship Between Subservicer and
               Trustee or Certificateholders.

        Any Subservicing Agreement that may be entered into and any other transactions or serv
the Mortgage Loans involving a Subservicer in its capacity as such and not as an originator sh
to be between the Subservicer and the Master Servicer alone and the Trustee and the Certificat
not be deemed parties thereto and shall have no claims, rights, obligations, duties or liabili
respect to the Subservicer in its capacity as such except as set forth in Section 3.06.  The f
provision shall not in any way limit a Subservicer's obligation to cure an omission or defect
repurchase a Mortgage Loan as referred to in Section 2.02 hereof.

Section 3.06.  Assumption or Termination of Subservicing Agreements by Trustee.

(a)     If the Master Servicer shall for any reason no longer be the master servicer (includir
an Event of Default), the Trustee, its designee or its successor shall thereupon assume all of
obligations of the Master Servicer under each Subservicing Agreement that may have been entere
Trustee, its designee or the successor servicer for the Trustee shall be deemed to have assume
Master Servicer's interest therein and to have replaced the Master Servicer as a party to the
Agreement to the same extent as if the Subservicing Agreement had been assigned to the assumir
that the Master Servicer shall not thereby be relieved of any liability or obligations under t
Agreement.

(b)     The Master Servicer shall, upon request of the Trustee but at the expense of the Maste
deliver to the assuming party all documents and records relating to each Subservicing Agreemen
Mortgage Loans then being serviced and an accounting of amounts collected and held by it and c
its best efforts to effect the orderly and efficient transfer of each Subservicing Agreement t
party.

Section 3.07.  Collection of Certain Mortgage Loan Payments;
               Deposits to Custodial Account.

(a)     The Master Servicer shall make reasonable efforts to collect all payments called for u
and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be consis
Agreement and the terms and provisions of any related Primary Insurance Policy, follow such co
procedures as it would employ in its good faith business judgment and which are normal and usu
general mortgage servicing activities.  Consistent with the foregoing, the Master Servicer may
discretion (i) waive any late payment charge or any prepayment charge or penalty interest in c
the prepayment of a Mortgage Loan and (ii) extend the Due Date for payments due on a Mortgage
accordance with the Program Guide; provided, however, that the Master Servicer shall first det
such waiver or extension will not impair the coverage of any related Primary Insurance Policy
adversely affect the lien of the related Mortgage.  Notwithstanding anything in this Section t
the Master Servicer shall not enforce any prepayment charge to the extent that such enforcemen
any applicable law.  In the event of any such arrangement, the Master Servicer shall make time
the related Mortgage Loan during the scheduled period in accordance with the amortization sche
Mortgage Loan without modification thereof by reason of such arrangements unless otherwise agr
Holders of the Classes of Certificates affected thereby; provided, however, that no such exter
made if any such advance would be a Nonrecoverable Advance.  Consistent with the terms of this
Master Servicer may also waive, modify or vary any term of any Mortgage Loan or consent to the
of strict compliance with any such term or in any manner grant indulgence to any Mortgagor if
Servicer's determination such waiver, modification, postponement or indulgence is not material
the interests of the Certificateholders (taking into account any estimated Realized Loss that
absent such action); provided, however, that the Master Servicer may not modify materially or
Subservicer to modify any Mortgage Loan, including without limitation any modification that wo
Mortgage Rate, forgive the payment of any principal or interest (unless in connection with the
the related Mortgage Loan or except in connection with prepayments to the extent that such rea
not inconsistent with the terms of the Mortgage Loan), capitalize any amounts owing on the Mor
adding such amount to the outstanding principal balance of the Mortgage Loan, or extend the fi
date of such Mortgage Loan, unless such Mortgage Loan is in default or, in the judgment of the
Servicer, such default is reasonably foreseeable; provided, further, that (1) no such modifica
reduce the interest rate on a Mortgage Loan below one-half of the Mortgage Rate as in effect c

Date, but not less than the sum of the rates at which the Servicing Fee and the Subservicing F
to such Mortgage Loan accrues plus the rate at which the premium paid to the Certificate Insu
accrues, (2)  the final maturity date for any Mortgage Loan shall not be extended beyond the M
(3) the Stated Principal Balance of all Reportable Modified Mortgage Loans subject to Servicin
(measured at the time of the Servicing Modification and after giving effect to any Servicing M
can be no more than five percent of the aggregate principal balance of the Mortgage Loans as c
Date, unless such limit is increased from time to time with the consent of the Rating Agencies
Certificate Insurer, if any.  In addition, any amounts owing on a Mortgage Loan added to the c
principal balance of such Mortgage Loan must be fully amortized over the remaining term of suc
Loan, and such amounts may be added to the outstanding principal balance of a Mortgage Loan on
the life of such Mortgage Loan.  Also, the addition of such amounts described in the preceding
be implemented in accordance with the Program Guide and may be implemented only by Subservicer
been approved by the Master Servicer for such purpose. In connection with any Curtailment of a
the Master Servicer, to the extent not inconsistent with the terms of the Mortgage Note and lo
practice, may permit the Mortgage Loan to be reamortized such that the Monthly Payment is reca
amount that will fully amortize the remaining Stated Principal Balance thereof by the original
based on the original Mortgage Rate; provided, that such re-amortization shall not be permitte
constitute a reissuance of the Mortgage Loan for federal income tax purposes, except if such r
described in Treasury Regulation Section 1.860G-2(b)(3).

(b)    The Master Servicer shall establish and maintain a Custodial Account in which the Mast
shall deposit or cause to be deposited on a daily basis, except as otherwise specifically prov
the following payments and collections remitted by Subservicers or received by it in respect o
Loans subsequent to the Cut-off Date (other than in respect of principal and interest on the M
due on or before the Cut-off Date):

(i)     All payments on account of principal, including Principal Prepayments made by Mortgago
        Mortgage Loans and the principal component of any Subservicer Advance or of any REO Pr
        in connection with an REO Property for which an REO Disposition has occurred;

(ii)    All payments on account of interest at the Adjusted Mortgage Rate on the Mortgage Loan
        Buydown Funds, if any, and the interest component of any Subservicer Advance or of any
        received in connection with an REO Property for which an REO Disposition has occurred;

(iii)   Insurance Proceeds, Subsequent Recoveries and Liquidation Proceeds (net of any related
        Subservicer);

(iv)    All proceeds of any Mortgage Loans purchased pursuant to Section 2.02, 2.03, 2.04 or 4
        amounts received from Residential Funding pursuant to the last paragraph of Section 4
        Assignment Agreement in respect of any liability, penalty or expense that resulted fro
        the Compliance With Laws Representation and all amounts required to be deposited in co
        the substitution of a Qualified Substitute Mortgage Loan pursuant to Section 2.03 or 2

(v)     Any amounts required to be deposited pursuant to Section 3.07(c) or 3.21;

(vi)    All amounts transferred from the Certificate Account to the Custodial Account in accor
        Section 4.02(a);

(vii)   Any amounts realized by the Subservicer and received by the Master Servicer in respect
        Additional Collateral; and

(viii)  Any amounts received by the Master Servicer in respect of Pledged Assets.

The foregoing requirements for deposit in the Custodial Account shall be exclusive, it being u
agreed that, without limiting the generality of the foregoing, payments on the Mortgage Loans
part of the Trust Fund (consisting of payments in respect of principal and interest on the Mor
on or before the Cut-off Date) and payments or collections in the nature of prepayment charges
payment charges or assumption fees may but need not be deposited by the Master Servicer in the
Account.  In the event any amount not required to be deposited in the Custodial Account is so
Master Servicer may at any time withdraw such amount from the Custodial Account, any provision
contrary notwithstanding.  The Custodial Account may contain funds that belong to one or more
created for mortgage pass-through certificates of other series and may contain other funds res
payments on mortgage loans belonging to the Master Servicer or serviced or master serviced by
others.  Notwithstanding such commingling of funds, the Master Servicer shall keep records tha
reflect the funds on deposit in the Custodial Account that have been identified by it as being
to the Mortgage Loans.

        With respect to Insurance Proceeds, Liquidation Proceeds, REO Proceeds and the proceed

purchase of any Mortgage Loan pursuant to Sections 2.02, 2.03, 2.04 and 4.07 received in any c
the Master Servicer may elect to treat such amounts as included in the Available Distribution
Distribution Date in the month of receipt, but is not obligated to do so.  If the Master Servi
such amounts will be deemed to have been received (and any related Realized Loss shall be deem
occurred) on the last day of the month prior to the receipt thereof.

(c)     The Master Servicer shall use its best efforts to cause the institution maintaining th
Account to invest the funds in the Custodial Account attributable to the Mortgage Loans in Per
Investments which shall mature not later than the Certificate Account Deposit Date next follow
such investment (with the exception of the Amount Held for Future Distribution) and which shal
or disposed of prior to their maturities.  All income and gain realized from any such investme
the benefit of the Master Servicer as additional servicing compensation and shall be subject t
withdrawal or order from time to time.  The amount of any losses incurred in respect of any su
attributable to the investment of amounts in respect of the Mortgage Loans shall be deposited
Custodial Account by the Master Servicer out of its own funds immediately as realized without
reimbursement.

(d)     The Master Servicer shall give notice to the Trustee and the Company of any change in
the Custodial Account and the location of the Certificate Account prior to the use thereof.

Section 3.08.  Subservicing Accounts; Servicing Accounts.

(a)     In those cases where a Subservicer is servicing a Mortgage Loan pursuant to a Subservi
the Master Servicer shall cause the Subservicer, pursuant to the Subservicing Agreement, to es
maintain one or more Subservicing Accounts which shall be an Eligible Account or, if such acco
Eligible Account, shall generally satisfy the requirements of the Program Guide and be otherwi
to the Master Servicer and each Rating Agency.  The Subservicer will be required thereby to de
Subservicing Account on a daily basis all proceeds of Mortgage Loans received by the Subservic
Subservicing Fees and unreimbursed advances and expenses, to the extent permitted by the Subse
Agreement.  If the Subservicing Account is not an Eligible Account, the Master Servicer shall
have received such monies upon receipt thereof by the Subservicer.  The Subservicer shall not
deposit in the Subservicing Account payments or collections in the nature of prepayment charge
charges or assumption fees.  On or before the date specified in the Program Guide, but in no e
the Determination Date, the Master Servicer shall cause the Subservicer, pursuant to the Subse
Agreement, to remit to the Master Servicer for deposit in the Custodial Account all funds held
Subservicing Account with respect to each Mortgage Loan serviced by such Subservicer that are
remitted to the Master Servicer.  The Subservicer will also be required, pursuant to the Subse
Agreement, to advance on such scheduled date of remittance amounts equal to any scheduled mont
installments of principal and interest less its Subservicing Fees on any Mortgage Loans for wh
not received by the Subservicer.  This obligation to advance with respect to each Mortgage Loa
up to and including the first of the month following the date on which the related Mortgaged P
at a foreclosure sale or is acquired by the Trust Fund by deed in lieu of foreclosure or other
advances received by the Master Servicer shall be deposited promptly by it in the Custodial Ac

(b)     The Subservicer may also be required, pursuant to the Subservicing Agreement, to remit
Servicer for deposit in the Custodial Account interest at the Adjusted Mortgage Rate (or Modif
Mortgage Rate plus the rate per annum at which the Servicing Fee accrues in the case of a Modi
Loan) on any Curtailment received by such Subservicer in respect of a Mortgage Loan from the r
Mortgagor during any month that is to be applied by the Subservicer to reduce the unpaid princ
the related Mortgage Loan as of the first day of such month, from the date of application of s
to the first day of the following month.  Any amounts paid by a Subservicer pursuant to the pr
sentence shall be for the benefit of the Master Servicer as additional servicing compensation
subject to its withdrawal or order from time to time pursuant to Sections 3.10(a)(iv) and (v).

(c)     In addition to the Custodial Account and the Certificate Account, the Master Servicer
Nonsubserviced Mortgage Loan, and shall cause the Subservicers for Subserviced Mortgage Loans
and maintain one or more Servicing Accounts and deposit and retain therein all collections fro
Mortgagors (or advances from Subservicers) for the payment of taxes, assessments, hazard insur
Primary Insurance Policy premiums, if applicable, or comparable items for the account of the M
Each Servicing Account shall satisfy the requirements for a Subservicing Account and, to the e
by the Program Guide or as is otherwise acceptable to the Master Servicer, may also function a
Subservicing Account.  Withdrawals of amounts related to the Mortgage Loans from the Servicing
be made only to effect timely payment of taxes, assessments, hazard insurance premiums, Primar
Policy premiums, if applicable, or comparable items, to reimburse the Master Servicer or Subse
related collections for any payments made pursuant to Sections 3.11 (with respect to the Prima
Policy) and 3.12(a) (with respect to hazard insurance), to refund to any Mortgagors any sums a
determined to be overages, to pay interest, if required, to Mortgagors on balances in the Serv
or to clear and terminate the Servicing Account at the termination of this Agreement in accord

Section 9.01 or in accordance with the Program Guide.  As part of its servicing duties, the Ma
shall, and the Subservicers will, pursuant to the Subservicing Agreements, be required to pay
Mortgagors interest on funds in this account to the extent required by law.

(d)      The Master Servicer shall advance the payments referred to in the preceding subsection
timely paid by the Mortgagors or advanced by the Subservicers on the date when the tax, premiu
for which such payment is intended is due, but the Master Servicer shall be required so to adv
the extent that such advances, in the good faith judgment of the Master Servicer, will be reco
Master Servicer out of Insurance Proceeds, Liquidation Proceeds or otherwise.

Section 3.09.  Access to Certain Documentation and
                      Information Regarding the Mortgage Loans.

         If compliance with this Section 3.09 shall make any Class of Certificates legal for in
federally insured savings and loan associations, the Master Servicer shall provide, or cause t
to provide, to the Trustee, the Office of Thrift Supervision or the FDIC and the supervisory a
examiners thereof access to the documentation regarding the Mortgage Loans required by applica
of the Office of Thrift Supervision, such access being afforded without charge but only upon r
request and during normal business hours at the offices designated by the Master Servicer.  Th
Servicer shall permit such representatives to photocopy any such documentation and shall provi
for that purpose at a charge reasonably approximating the cost of such photocopying to the Mas

Section 3.10.  Permitted Withdrawals from the Custodial Account.

(a)      The Master Servicer may, from time to time as provided herein, make withdrawals from t
Account of amounts on deposit therein pursuant to Section 3.07 that are attributable to the Mo
for the following purposes:

(i)      to make deposits into the Certificate Account in the amounts and in the manner provide
         4.01;

(ii)     to reimburse itself or the related Subservicer for previously unreimbursed Advances, S
         Advances or other expenses made pursuant to Sections 3.01, 3.07(a), 3.08, 3.11, 3.12(a
         or otherwise reimbursable pursuant to the terms of this Agreement, such withdrawal rig
         to amounts received on the related Mortgage Loans (including, for this purpose, REO Pr
         Insurance Proceeds, Liquidation Proceeds and proceeds from the purchase of a Mortgage
         Section 2.02, 2.03, 2.04 or 4.07) which represent (A) Late Collections of Monthly Paym
         any such advance was made in the case of Subservicer Advances or Advances pursuant to
         (B) recoveries of amounts in respect of which such advances were made in the case of S
         Advances;

(iii)    to pay to itself or the related Subservicer (if not previously retained by such Subser
         each payment received by the Master Servicer on account of interest on a Mortgage Loan
         by Sections 3.14 and 3.16, an amount equal to that remaining portion of any such payme
         interest (but not in excess of the Servicing Fee and the Subservicing Fee, if not prev
         which, when deducted, will result in the remaining amount of such interest being inter
         Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan)
         specified in the amortization schedule of the related Mortgage Loan as the principal b
         at the beginning of the period respecting which such interest was paid after giving ef
         previous Curtailments;

(iv)     to pay to itself as additional servicing compensation any interest or investment incom
         funds and other property deposited in or credited to the Custodial Account that it is
         withdraw pursuant to Section 3.07(c);

(v)      to pay to itself as additional servicing compensation any Foreclosure Profits, any amo
         Subservicers as interest in respect of Curtailments pursuant to Section 3.08(b), and a
         by a Mortgagor in connection with a Principal Prepayment in Full in respect of interes
         during the calendar month in which such Principal Prepayment in Full is to be distribu
         Certificateholders;

(vi)     to pay to itself, a Subservicer, a Seller, Residential Funding, the Company or any oth
         Person, as the case may be, with respect to each Mortgage Loan or property acquired in
         that has been purchased or otherwise transferred pursuant to Section 2.02, 2.03, 2.04,
         all amounts received thereon and not required to be distributed to the Certificatehold
         date on which the related Stated Principal Balance or Purchase Price is determined;

(vii)    to reimburse itself or the related Subservicer for any Nonrecoverable Advance or Advan

manner and to the extent provided in subsection (c) below, and any Advance or Servicing
in connection with a modified Mortgage Loan that is in default or, in the judgment of
Servicer, default is reasonably foreseeable pursuant to Section 3.07(a), to the extent
the Advance or Servicing Advance was added to the Stated Principal Balance of the Mor
prior calendar month, or any Advance reimbursable to the Master Servicer pursuant to S

(viii)    to reimburse itself or the Company for expenses incurred by and reimbursable to it or
pursuant to Sections 3.01(a), 3.11, 3.13, 3.14(c), 6.03, 10.01 or otherwise, or in con
enforcing, in accordance with this Agreement, any repurchase, substitution or indemnif
obligation of any Seller (other than an Affiliate of the Company) pursuant to the rela
Agreement;

(ix)    to reimburse itself for Servicing Advances expended by it (a) pursuant to Section 3.1
in connection with the restoration of property damaged by an Uninsured Cause, and (b)
with the liquidation of a Mortgage Loan or disposition of an REO Property to the exter
reimbursed pursuant to clause (ii) or (viii) above; and

(x)    to withdraw any amount deposited in the Custodial Account that was not required to be
therein pursuant to Section 3.07.

(b)    Since, in connection with withdrawals pursuant to clauses (ii), (iii), (v) and (vi), t
Servicer's entitlement thereto is limited to collections or other recoveries on the related Mo
the Master Servicer shall keep and maintain separate accounting, on a Mortgage Loan by Mortgag
for the purpose of justifying any withdrawal from the Custodial Account pursuant to such claus

(c)    The Master Servicer shall be entitled to reimburse itself or the related Subservicer f
made in respect of a Mortgage Loan that the Master Servicer determines to be a Nonrecoverable
withdrawal from the Custodial Account of amounts on deposit therein attributable to the Mortga
Certificate Account Deposit Date succeeding the date of such determination.  Such right of rei
respect of a Nonrecoverable Advance relating to an Advance pursuant to Section 4.04 on any suc
Account Deposit Date shall be limited to an amount not exceeding the portion of such Advance p
to Certificateholders (and not theretofore reimbursed to the Master Servicer or the related Su

Section 3.11.    Maintenance of the Primary Insurance
                 Policies; Collections Thereunder.

(a)    The Master Servicer shall not take, or permit any Subservicer to take, any action whic
in non-coverage under any applicable Primary Insurance Policy of any loss which, but for the a
Master Servicer or Subservicer, would have been covered thereunder.  To the extent coverage is
Master Servicer shall keep or cause to be kept in full force and effect each such Primary Insu
until the principal balance of the related Mortgage Loan secured by a Mortgaged Property is re
less of the Appraised Value in the case of such a Mortgage Loan having a Loan-to-Value Ratio a
in excess of 80%, provided that such Primary Insurance Policy was in place as of the Cut-off D
Company had knowledge of such Primary Insurance Policy.  The Master Servicer shall be entitle
permit the discontinuation of any Primary Insurance Policy as to any Mortgage Loan, if the Sta
Balance of the Mortgage Loan is reduced below an amount equal to 80% of the appraised value of
Mortgaged Property as determined in any appraisal thereof after the Closing Date, or if the Lo
Ratio is reduced below 80% as a result of principal payments on the Mortgage Loan after the Cl
the event that the Company gains knowledge that as of the Closing Date, a Mortgage Loan had a
Ratio at origination in excess of 80% and is not the subject of a Primary Insurance Policy (an
included in any exception to the representation in Section 2.03(b)(iv)) and that such Mortgage
current Loan-to-Value Ratio in excess of 80% then the Master Servicer shall use its reasonable
obtain and maintain a Primary Insurance Policy to the extent that such a policy is obtainable
price.  The Master Servicer shall not cancel or refuse to renew any such Primary Insurance Pol
to a Nonsubserviced Mortgage Loan, or consent to any Subservicer canceling or refusing to rene
Primary Insurance Policy applicable to a Mortgage Loan subserviced by it, that is in effect at
the initial issuance of the Certificates and is required to be kept in force hereunder unless
Primary Insurance Policy for such canceled or non-renewed policy is maintained with an insurer
claims-paying ability is acceptable to each Rating Agency for mortgage pass-through certificat
rating equal to or better than the lower of the then-current rating or the rating assigned to
Certificates as of the Closing Date by such Rating Agency.

(b)    In connection with its activities as administrator and servicer of the Mortgage Loans,
Servicer agrees to present or to cause the related Subservicer to present, on behalf of the Ma
the Subservicer, if any, the Trustee and Certificateholders, claims to the related Insurer und
Insurance Policies, in a timely manner in accordance with such policies, and, in this regard,
cause to be taken such reasonable action as shall be necessary to permit recovery under any Pr
Policies respecting defaulted Mortgage Loans.  Pursuant to Section 3.07, any Insurance Procee

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 86 of 180

or remitted to the Master Servicer under any Primary Insurance Policies shall be deposited in
Account, subject to withdrawal pursuant to Section 3.10.

Section 3.12.    Maintenance of Fire Insurance and
                Omissions and Fidelity Coverage.

(a)      The Master Servicer shall cause to be maintained for each Mortgage Loan (other than a
Loan) fire insurance with extended coverage in an amount which is equal to the lesser of the p
balance owing on such Mortgage Loan or 100 percent of the insurable value of the improvements
however, that such coverage may not be less than the minimum amount required to fully compensa
or damage on a replacement cost basis.  To the extent it may do so without breaching the relat
Agreement, the Master Servicer shall replace any Subservicer that does not cause such insuranc
extent it is available, to be maintained.  The Master Servicer shall also cause to be maintain
acquired upon foreclosure, or deed in lieu of foreclosure, of any Mortgage Loan (other than a
Loan), fire insurance with extended coverage in an amount which is at least equal to the amour
avoid the application of any co-insurance clause contained in the related hazard insurance pol
to Section 3.07, any amounts collected by the Master Servicer under any such policies (other t
be applied to the restoration or repair of the related Mortgaged Property or property thus acc
amounts released to the Mortgagor in accordance with the Master Servicer's normal servicing pr
be deposited in the Custodial Account, subject to withdrawal pursuant to Section 3.10.  Any co
the Master Servicer in maintaining any such insurance shall not, for the purpose of calculatir
distributions to the Certificateholders, be added to the amount owing under the Mortgage Loan,
notwithstanding that the terms of the Mortgage Loan so permit.  Such costs shall be recoverabl
Servicer out of related late payments by the Mortgagor or out of Insurance Proceeds and Liquic
to the extent permitted by Section 3.10.  It is understood and agreed that no earthquake or ot
insurance is to be required of any Mortgagor or maintained on property acquired in respect of
other than pursuant to such applicable laws and regulations as shall at any time be in force a
require such additional insurance.  Whenever the improvements securing a Mortgage Loan (other
Cooperative Loan) are located at the time of origination of such Mortgage Loan in a federally
special flood hazard area, the Master Servicer shall cause flood insurance (to the extent avai
maintained in respect thereof.  Such flood insurance shall be in an amount equal to the lesser
amount required to compensate for any loss or damage to the Mortgaged Property on a replacemer
and (ii) the maximum amount of such insurance available for the related Mortgaged Property und
flood insurance program (assuming that the area in which such Mortgaged Property is located is
in such program).

        If the Master Servicer shall obtain and maintain a blanket fire insurance policy with
coverage insuring against hazard losses on all of the Mortgage Loans, it shall conclusively be
satisfied its obligations as set forth in the first sentence of this Section 3.12(a), it being
agreed that such policy may contain a deductible clause, in which case the Master Servicer sha
event that there shall not have been maintained on the related Mortgaged Property a policy com
first sentence of this Section 3.12(a) and there shall have been a loss which would have been
policy, deposit in the Certificate Account the amount not otherwise payable under the blanket
of such deductible clause.  Any such deposit by the Master Servicer shall be made on the Certi
Deposit Date next preceding the Distribution Date which occurs in the month following the mont
payments under any such policy would have been deposited in the Custodial Account.  In connect
activities as administrator and servicer of the Mortgage Loans, the Master Servicer agrees to
behalf of itself, the Trustee and the Certificateholders, claims under any such blanket policy

(b)      The Master Servicer shall obtain and maintain at its own expense and keep in full forc
throughout the term of this Agreement a blanket fidelity bond and an errors and omissions insu
covering the Master Servicer's officers and employees and other persons acting on behalf of th
Servicer in connection with its activities under this Agreement.  The amount of coverage shall
equal to the coverage that would be required by Fannie Mae or Freddie Mac, whichever is greate
to the Master Servicer if the Master Servicer were servicing and administering the Mortgage Lc
Mae or Freddie Mac.  In the event that any such bond or policy ceases to be in effect, the Mas
shall obtain a comparable replacement bond or policy from an issuer or insurer, as the case ma
the requirements, if any, of the Program Guide and acceptable to the Company.  Coverage of the
Servicer under a policy or bond obtained by an Affiliate of the Master Servicer and providing
required by this Section 3.12(b) shall satisfy the requirements of this Section 3.12(b).

Section 3.13.    Enforcement of Due-on-Sale Clauses; Assumption and
                Modification Agreements; Certain Assignments.

(a)      When any Mortgaged Property is conveyed by the Mortgagor, the Master Servicer or Subse
extent it has knowledge of such conveyance, shall enforce any due-on-sale clause contained in
Note or Mortgage, to the extent permitted under applicable law and governmental regulations, b
extent that such enforcement will not adversely affect or jeopardize coverage under any Requir

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 87 of 180

Policy.  Notwithstanding the foregoing:

(i)      the Master Servicer shall not be deemed to be in default under this Section 3.13(a) by
         transfer or assumption which the Master Servicer is restricted by law from preventing;

(ii)     if the Master Servicer determines that it is reasonably likely that any Mortgagor will
         any Mortgagor does bring, legal action to declare invalid or otherwise avoid enforceme
         due-on-sale clause contained in any Mortgage Note or Mortgage, the Master Servicer sha
         required to enforce the due-on-sale clause or to contest such action.

(b)      Subject to the Master Servicer's duty to enforce any due-on-sale clause to the extent
Section 3.13(a), in any case in which a Mortgaged Property is to be conveyed to a Person by a
such Person is to enter into an assumption or modification agreement or supplement to the Mort
Mortgage which requires the signature of the Trustee, or if an instrument of release signed by
required releasing the Mortgagor from liability on the Mortgage Loan, the Master Servicer is a
subject to the requirements of the sentence next following, to execute and deliver, on behalf
the assumption agreement with the Person to whom the Mortgaged Property is to be conveyed and
modification agreement or supplement to the Mortgage Note or Mortgage or other instruments as
or necessary to carry out the terms of the Mortgage Note or Mortgage or otherwise to comply wi
applicable laws regarding assumptions or the transfer of the Mortgaged Property to such Person
however, none of such terms and requirements shall either (i) both (A) constitute a "significa
modification" effecting an exchange or reissuance of such Mortgage Loan under the REMIC Provis
cause any portion of any REMIC formed under the Series Supplement to fail to qualify as a REMI
Code or (subject to Section 10.01(f)), result in the imposition of any tax on "prohibited tran
(ii) constitute "contributions" after the start-up date under the REMIC Provisions.  The Maste
shall execute and deliver such documents only if it reasonably determines that (i) its executi
thereof will not conflict with or violate any terms of this Agreement or cause the unpaid bala
interest on the Mortgage Loan to be uncollectible in whole or in part, (ii) any required conse
under any Required Insurance Policies have been obtained and (iii) subsequent to the closing o
transaction involving the assumption or transfer (A) the Mortgage Loan will continue to be sec
mortgage lien pursuant to the terms of the Mortgage, (B) such transaction will not adversely a
coverage under any Required Insurance Policies, (C) the Mortgage Loan will fully amortize over
term thereof, (D) no material term of the Mortgage Loan (including the interest rate on the Mo
will be altered nor will the term of the Mortgage Loan be changed and (E) if the seller/transf
Mortgaged Property is to be released from liability on the Mortgage Loan, such release will no
Master Servicer's or Subservicer's good faith determination) adversely affect the collectabili
Mortgage Loan.  Upon receipt of appropriate instructions from the Master Servicer in accordanc
foregoing, the Trustee shall execute any necessary instruments for such assumption or substitu
liability as directed in writing by the Master Servicer.  Upon the closing of the transactions
by such documents, the Master Servicer shall cause the originals or true and correct copies of
agreement, the release (if any), or the modification or supplement to the Mortgage Note or Mor
delivered to the Trustee or the Custodian and deposited with the Mortgage File for such Mortga
fee collected by the Master Servicer or such related Subservicer for entering into an assumpti
substitution of liability agreement will be retained by the Master Servicer or such Subservice
servicing compensation.

(c)      The Master Servicer or the related Subservicer, as the case may be, shall be entitled
request from a Mortgagor for a partial release of the related Mortgaged Property, the granting
thereon in favor of another Person, any alteration or demolition of the related Mortgaged Prop
respect to a Cooperative Loan, the related Cooperative Apartment) without any right of reimbur
similar matters if it has determined, exercising its good faith business judgment in the same
would if it were the owner of the related Mortgage Loan, that the security for, and the timely
collectability of, such Mortgage Loan would not be adversely affected thereby and that any por
REMIC formed under the Series Supplement would not fail to continue to qualify as a REMIC unde
result thereof and (subject to Section 10.01(f)) that no tax on "prohibited transactions" or "
after the startup day would be imposed on any such REMIC as a result thereof.  Any fee collect
Master Servicer or the related Subservicer for processing such a request will be retained by t
Servicer or such Subservicer as additional servicing compensation.

(d)      Subject to any other applicable terms and conditions of this Agreement, the Trustee an
Servicer shall be entitled to approve an assignment in lieu of satisfaction with respect to an
Loan, provided the obligee with respect to such Mortgage Loan following such proposed assignme
Trustee and Master Servicer with a "Lender Certification for Assignment of Mortgage Loan" in t
attached hereto as Exhibit M, in form and substance satisfactory to the Trustee and Master Ser
providing the following: (i) that the substance of the assignment is, and is intended to be, a
such Mortgage; (ii) that the Mortgage Loan following the proposed assignment will have a rate
least 0.25 percent below or above the rate of interest on such Mortgage Loan prior to such pro
assignment; and (iii) that such assignment is at the request of the borrower under the related

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 88 of 180

Loan.  Upon approval of an assignment in lieu of satisfaction with respect to any Mortgage Loa
Servicer shall receive cash in an amount equal to the unpaid principal balance of and accrued
such Mortgage Loan and the Master Servicer shall treat such amount as a Principal Prepayment i
respect to such Mortgage Loan for all purposes hereof.

Section 3.14.    Realization Upon Defaulted Mortgage Loans.

(a)    The Master Servicer shall foreclose upon or otherwise comparably convert (which may in
Acquisition) the ownership of properties securing such of the Mortgage Loans as come into and
default and as to which no satisfactory arrangements can be made for collection of delinquent
pursuant to Section 3.07.  Alternatively, the Master Servicer may take other actions in respec
defaulted Mortgage Loan, which may include (i) accepting a short sale (a payoff of the Mortgag
amount less than the total amount contractually owed in order to facilitate a sale of the Mort
by the Mortgagor) or permitting a short refinancing (a payoff of the Mortgage Loan for an amou
the total amount contractually owed in order to facilitate refinancing transactions by the Mor
involving a sale of the Mortgaged Property), (ii) arranging for a repayment plan or (iii) agre
modification in accordance with Section 3.07.  In connection with such foreclosure or other co
Master Servicer shall, consistent with Section 3.11, follow such practices and procedures as i
necessary or advisable, as shall be normal and usual in its general mortgage servicing activit
shall be required or permitted by the Program Guide; provided that the Master Servicer shall n
any respect hereunder if the Master Servicer is acting in connection with any such foreclosure
conversion in a manner that is consistent with the provisions of this Agreement.  The Master S
however, shall not be required to expend its own funds or incur other reimbursable charges in
any foreclosure, or attempted foreclosure which is not completed, or towards the restoration o
unless it shall determine (i) that such restoration and/or foreclosure will increase the proce
liquidation of the Mortgage Loan to Holders of Certificates of one or more Classes after reimb
itself for such expenses or charges and (ii) that such expenses or charges will be recoverable
Liquidation Proceeds, Insurance Proceeds, or REO Proceeds (respecting which it shall have prio
purposes of withdrawals from the Custodial Account pursuant to Section 3.10, whether or not su
charges are actually recoverable from related Liquidation Proceeds, Insurance Proceeds or REO
the event of such a determination by the Master Servicer pursuant to this Section 3.14(a), the
Servicer shall be entitled to reimbursement of such amounts pursuant to Section 3.10.

        In addition to the foregoing, the Master Servicer shall use its best reasonable
realize upon any Additional Collateral for such of the Additional Collateral Loans as come int
in default and as to which no satisfactory arrangements can be made for collection of delinque
pursuant to Section 3.07; provided that the Master Servicer shall not, on behalf of the Truste
to any such Additional Collateral as a result of or in lieu of the disposition thereof or othe
provided further that (i) the Master Servicer shall not proceed with respect to such Additiona
any manner that would impair the ability to recover against the related Mortgaged Property, an
Master Servicer shall proceed with any REO Acquisition in a manner that preserves the ability
proceeds of such Additional Collateral against amounts owed under the defaulted Mortgage Loan.
realized from such Additional Collateral (other than amounts to be released to the Mortgagor o
guarantor in accordance with procedures that the Master Servicer would follow in servicing loa
own account, subject to the terms and conditions of the related Mortgage and Mortgage Note and
and conditions of any security agreement, guarantee agreement, mortgage or other agreement gov
disposition of the proceeds of such Additional Collateral) shall be deposited in the Custodial
subject to withdrawal pursuant to Section 3.10.  Any other payment received by the Master Serv
of such Additional Collateral shall be deposited in the Custodial Account subject to withdrawa
Section 3.10.

        For so long as the Master Servicer is the Master Servicer under the Credit Supp
Agreement, the Master Servicer shall perform its obligations under the Credit Support Pledge A
accordance with such Agreement and in a manner that is in the best interests of the Certificat
Further, the Master Servicer shall use its best reasonable efforts to realize upon any Pledged
such of the Pledged Asset Loans as come into and continue in default and as to which no satisf
arrangements can be made for collection of delinquent payments pursuant to Section 3.07; provi
Master Servicer shall not, on behalf of the Trustee, obtain title to any such Pledged Assets a
or in lieu of the disposition thereof or otherwise; and provided further that (i) the Master S
not proceed with respect to such Pledged Assets in any manner that would impair the ability to
against the related Mortgaged Property, and (ii) the Master Servicer shall proceed with any RE
in a manner that preserves the ability to apply the proceeds of such Pledged Assets against am
under the defaulted Mortgage Loan.  Any proceeds realized from such Pledged Assets (other than
released to the Mortgagor or the related guarantor in accordance with procedures that the Mast
would follow in servicing loans held for its own account, subject to the terms and conditions
Mortgage and Mortgage Note and to the terms and conditions of any security agreement, guarante
mortgage or other agreement governing the disposition of the proceeds of such Pledged Assets)
deposited in the Custodial Account, subject to withdrawal pursuant to Section 3.10.  Any other

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 89 of 180

received by the Master Servicer in respect of such Pledged Assets shall be deposited in the Cu
subject to withdrawal pursuant to Section 3.10.

Concurrently with the foregoing, the Master Servicer may pursue any remedies th
available in connection with a breach of a representation and warranty with respect to any suc
in accordance with Sections 2.03 and 2.04.  However, the Master Servicer is not required to co
pursue both foreclosure (or similar remedies) with respect to the Mortgage Loans and remedies
with a breach of a representation and warranty if the Master Servicer determines in its reason
that one such remedy is more likely to result in a greater recovery as to the Mortgage Loan.
occurrence of a Cash Liquidation or REO Disposition, following the deposit in the Custodial Ac
Insurance Proceeds, Liquidation Proceeds and other payments and recoveries referred to in the
"Cash Liquidation" or "REO Disposition," as applicable, upon receipt by the Trustee of writter
such deposit signed by a Servicing Officer, the Trustee or any Custodian, as the case may be,
to the Master Servicer the related Mortgage File and the Trustee shall execute and deliver suc
of transfer or assignment prepared by the Master Servicer, in each case without recourse, as s
necessary to vest in the Master Servicer or its designee, as the case may be, the related Mort
thereafter such Mortgage Loan shall not be part of the Trust Fund.  Notwithstanding the forego
other provision of this Agreement, in the Master Servicer's sole discretion with respect to an
Mortgage Loan or REO Property as to either of the following provisions, (i) a Cash Liquidation
Disposition may be deemed to have occurred if substantially all amounts expected by the Master
received in connection with the related defaulted Mortgage Loan or REO Property have been rece
for purposes of determining the amount of any Liquidation Proceeds, Insurance Proceeds, REO Pr
other unscheduled collections or the amount of any Realized Loss, the Master Servicer may take
minimal amounts of additional receipts expected to be received or any estimated additional lic
expenses expected to be incurred in connection with the related defaulted Mortgage Loan or REO

(b)     If title to any Mortgaged Property is acquired by the Trust Fund as an REO Property by
by deed in lieu of foreclosure, the deed or certificate of sale shall be issued to the Trustee
nominee on behalf of Certificateholders.  Notwithstanding any such acquisition of title and ca
the related Mortgage Loan, such REO Property shall (except as otherwise expressly provided her
considered to be an Outstanding Mortgage Loan held in the Trust Fund until such time as the RE
shall be sold.  Consistent with the foregoing for purposes of all calculations hereunder so lc
Property shall be considered to be an Outstanding Mortgage Loan it shall be assumed that, notw
that the indebtedness evidenced by the related Mortgage Note shall have been discharged, such
and the related amortization schedule in effect at the time of any such acquisition of title (
effect to any previous Curtailments and before any adjustment thereto by reason of any bankrup
proceeding or any moratorium or similar waiver or grace period) remain in effect.

(c)     If the Trust Fund acquires any REO Property as aforesaid or otherwise in connection wi
imminent default on a Mortgage Loan, the Master Servicer on behalf of the Trust Fund shall dis
REO Property as soon as practicable, giving due consideration to the interests of the Certific
in all cases within three full years after the taxable year of its acquisition by the Trust Fu
of Section 860G(a)(8) of the Code (or such shorter period as may be necessary under applicable
(including any state in which such property is located) law to maintain the status of any port
REMIC formed under the Series Supplement as a REMIC under applicable state law and avoid taxes
such property failing to be foreclosure property under applicable state law) or, at the expens
Fund, request, more than 60 days before the day on which such grace period would otherwise exp
extension of such grace period unless the Master Servicer (subject to Section 10.01(f)) obtair
Trustee an Opinion of Counsel, addressed to the Trustee and the Master Servicer, to the effect
holding by the Trust Fund of such REO Property subsequent to such period will not result in th
taxes on "prohibited transactions" as defined in Section 860F of the Code or cause any REMIC f
Series Supplement to fail to qualify as a REMIC (for federal (or any applicable State or local
purposes) at any time that any Certificates are outstanding, in which case the Trust Fund may
hold such REO Property (subject to any conditions contained in such Opinion of Counsel).  The
shall be entitled to be reimbursed from the Custodial Account for any costs incurred in obtair
Opinion of Counsel, as provided in Section 3.10.  Notwithstanding any other provision of this
REO Property acquired by the Trust Fund shall be rented (or allowed to continue to be rented)
used by or on behalf of the Trust Fund in such a manner or pursuant to any terms that would (i
REO Property to fail to qualify as "foreclosure property" within the meaning of Section 860G(a
Code or (ii) subject the Trust Fund to the imposition of any federal income taxes on the incom
such REO Property, including any taxes imposed by reason of Section 860G(c) of the Code, unles
Servicer has agreed to indemnify and hold harmless the Trust Fund with respect to the impositi
taxes.

(d)     The proceeds of any Cash Liquidation, REO Disposition or purchase or repurchase of any
pursuant to the terms of this Agreement, as well as any recovery resulting from a collection c
Proceeds, Insurance Proceeds or REO Proceeds, will be applied in the following order of priori
reimburse the Master Servicer or the related Subservicer in accordance with Section 3.10(a)(ii

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 90 of 180

the Certificateholders to the extent of accrued and unpaid interest on the Mortgage Loan, and
Imputed Interest, at the Net Mortgage Rate (or the Modified Net Mortgage Rate in the case of a
Mortgage Loan) to the Due Date prior to the Distribution Date on which such amounts are to be
third, to the Certificateholders as a recovery of principal on the Mortgage Loan (or REO Prope
to all Servicing Fees and Subservicing Fees payable therefrom (and the Master Servicer and the
shall have no claims for any deficiencies with respect to such fees which result from the fore
allocation); and fifth, to Foreclosure Profits.

(e)    In the event of a default on a Mortgage Loan one or more whose obligors is not a Ur
Person, in connection with any foreclosure or acquisition of a deed in lieu of foreclosure (to
"foreclosure") in respect of such Mortgage Loan, the Master Servicer will cause compliance wit
of Treasury Regulation Section 1.1445-2(d)(3) (or any successor thereto) necessary to assure t
withholding tax obligation arises with respect to the proceeds of such foreclosure except to t
any, that proceeds of such foreclosure are required to be remitted to the obligors on such Mor

Section 3.15.    Trustee to Cooperate; Release of Mortgage Files.

(a)    Upon becoming aware of the payment in full of any Mortgage Loan, or upon the receipt k
Servicer of a notification that payment in full will be escrowed in a manner customary for suc
Master Servicer will immediately notify the Trustee (if it holds the related Mortgage File) or
by a certification of a Servicing Officer (which certification shall include a statement to th
all amounts received or to be received in connection with such payment which are required to k
the Custodial Account pursuant to Section 3.07 have been or will be deposited), substantial
the forms attached hereto as Exhibit F, or, in the case of the Custodian, an electronic reques
acceptable to the Custodian, requesting delivery to it of the Mortgage File.  Within two Busin
receipt of such certification and request, the Trustee shall release, or cause the Custodian t
related Mortgage File to the Master Servicer.  The Master Servicer is authorized to execute an
the Mortgagor the request for reconveyance, deed of reconveyance or release or satisfaction of
such instrument releasing the lien of the Mortgage, together with the Mortgage Note with, as a
written evidence of cancellation thereon and to cause the removal from the registration on the
of such Mortgage and to execute and deliver, on behalf of the Trustee and the Certificateholde
them, any and all instruments of satisfaction or cancellation or of partial or full release.
incurred in connection with any instrument of satisfaction or deed of reconveyance shall be ch
Custodial Account or the Certificate Account.

(b)    From time to time as is appropriate for the servicing or foreclosure of any Mortgage I
Servicer shall deliver to the Custodian, with a copy to the Trustee, a certificate of a Servic
substantially in one of the forms attached as Exhibit F hereto, or, in the case of the Custodi
electronic request in a form acceptable to the Custodian, requesting that possession of all, o
constituting part of, the Mortgage File be released to the Master Servicer and certifying as t
for such release and that such release will not invalidate any insurance coverage provided in
Mortgage Loan under any Required Insurance Policy.  Upon receipt of the foregoing, the Trustee
or cause the Custodian to deliver, the Mortgage File or any document therein to the Master Ser
Master Servicer shall cause each Mortgage File or any document therein so released to be retur
Trustee, or the Custodian as agent for the Trustee when the need therefor by the Master Servic
exists, unless (i) the Mortgage Loan has been liquidated and the Liquidation Proceeds relating
Mortgage Loan have been deposited in the Custodial Account or (ii) the Mortgage File or such c
been delivered directly or through a Subservicer to an attorney, or to a public trustee or oth
official as required by law, for purposes of initiating or pursuing legal action or other proc
foreclosure of the Mortgaged Property either judicially or non-judicially, and the Master Serv
delivered directly or through a Subservicer to the Trustee a certificate of a Servicing Office
to the name and address of the Person to which such Mortgage File or such document was deliver
purpose or purposes of such delivery.  In the event of the liquidation of a Mortgage Loan, the
deliver the Request for Release with respect thereto to the Master Servicer upon deposit of th
Liquidation Proceeds in the Custodial Account.

(c)    The Trustee or the Master Servicer on the Trustee's behalf shall execute and deliver t
Servicer, if necessary, any court pleadings, requests for trustee's sale or other documents ne
foreclosure or trustee's sale in respect of a Mortgaged Property or to any legal action brough
judgment against any Mortgagor on the Mortgage Note or Mortgage or to obtain a deficiency judg
enforce any other remedies or rights provided by the Mortgage Note or Mortgage or otherwise av
or in equity.  Together with such documents or pleadings (if signed by the Trustee), the Maste
shall deliver to the Trustee a certificate of a Servicing Officer requesting that such pleadin
be executed by the Trustee and certifying as to the reason such documents or pleadings are rec
the execution and delivery thereof by the Trustee will not invalidate any insurance coverage u
Required Insurance Policy or invalidate or otherwise affect the lien of the Mortgage, except f
termination of such a lien upon completion of the foreclosure or trustee's sale.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 91 of 180

Section 3.16.    Servicing and Other Compensation; Compensating Interest.

(a)      The Master Servicer, as compensation for its activities hereunder, shall be entitled t
each Distribution Date the amounts provided for by clauses (iii), (iv), (v) and (vi) of Sectic
subject to clause (e) below.  The amount of servicing compensation provided for in such clause
accounted for on a Mortgage Loan-by-Mortgage Loan basis.  In the event that Liquidation Procee
Proceeds and REO Proceeds (net of amounts reimbursable therefrom pursuant to Section 3.10(a)(i
of a Cash Liquidation or REO Disposition exceed the unpaid principal balance of such Mortgage
unpaid interest accrued thereon (including REO Imputed Interest) at a per annum rate equal to
Mortgage Rate (or the Modified Net Mortgage Rate in the case of a Modified Mortgage Loan), the
Servicer shall be entitled to retain therefrom and to pay to itself and/or the related Subserv
Foreclosure Profits and any Servicing Fee or Subservicing Fee considered to be accrued but unp

(b)      Additional servicing compensation in the form of prepayment charges, assumption fees,
charges, investment income on amounts in the Custodial Account or the Certificate Account or c
be retained by the Master Servicer or the Subservicer to the extent provided herein, subject t
below.

(c)      The Master Servicer shall be required to pay, or cause to be paid, all expenses incurr
connection with its servicing activities hereunder (including payment of premiums for the Prin
Policies, if any, to the extent such premiums are not required to be paid by the related Mortg
fees and expenses of the Trustee and any co-trustee (as provided in Section 8.05) and the fees
any Custodian) and shall not be entitled to reimbursement therefor except as specifically prov
Sections 3.10 and 3.14.

(d)      The Master Servicer's right to receive servicing compensation may not be transferred i
part except in connection with the transfer of all of its responsibilities and obligations of
Servicer under this Agreement.

(e)      Notwithstanding any other provision herein, the amount of servicing compensation that
Servicer shall be entitled to receive for its activities hereunder for the period ending on ea
Distribution Date shall be reduced (but not below zero) by an amount equal to Compensating Interest (if any
Distribution Date.  Such reduction shall be applied during such period as follows: first, to a
Fee or Subservicing Fee to which the Master Servicer is entitled pursuant to Section 3.10(a)(i
second, to any income or gain realized from any investment of funds held in the Custodial Acco
Certificate Account to which the Master Servicer is entitled pursuant to Sections 3.07(c) or 4
respectively.  In making such reduction, the Master Servicer (i) will not withdraw from the Cu
any such amount representing all or a portion of the Servicing Fee to which it is entitled pur
Section 3.10(a)(iii), and (ii) will not withdraw from the Custodial Account or Certificate Acc
amount to which it is entitled pursuant to Section 3.07(c) or 4.01(b).

Section 3.17.    Reports to the Trustee and the Company.

          Not later than fifteen days after it receives a written request from the Trustee or th
Master Servicer shall forward to the Trustee and the Company a statement, certified by a Servi
setting forth the status of the Custodial Account as of the close of business on the immediate
Distribution Date as it relates to the Mortgage Loans and showing, for the period covered by s
the aggregate of deposits in or withdrawals from the Custodial Account in respect of the Mortg
each category of deposit specified in Section 3.07 and each category of withdrawal specified i

Section 3.18.    Annual Statement as to Compliance and Servicing Assessment.

          The Master Servicer will deliver to the Company and the Trustee on or before the earli
31 of each year or (b) with respect to any calendar year during which the Company's annual rep
10-K is required to be filed in accordance with the Exchange Act and the rules and regulations
Commission, the date on which the annual report on Form 10-K is required to be filed in accorc
Exchange Act and the rules and regulations of the Commission, (i) a servicing assessment as de
Section 4.03(f)(ii) and (ii) a servicer compliance statement, signed by an authorized officer
Servicer, as described in Items 1122(a), 1122(b) and 1123 of Regulation AB, to the effect that

          (A)      A review of the Master Servicer's activities during the reporting period and of
under this Agreement has been made under such officer's supervision.

          (B)      To the best of such officer's knowledge, based on such review, the Master Servi
fulfilled all of its obligations under this Agreement in all material respects throughout the
period or, if there has been a failure to fulfill any such obligation in any material respect,
each such failure known to such officer and the nature and status thereof.

The Master Servicer shall use commercially reasonable efforts to obtain from all other
participating in the servicing function any additional certifications required under Item 1122
of Regulation AB to the extent required to be included in a Report on Form 10-K; provided, how
failure to obtain such certifications shall not be a breach of the Master Servicer's duties he
such party fails to deliver such a certification.

Section 3.19.    Annual Independent Public Accountants' Servicing Report.

On or before the earlier of (a) March 31 of each year or (b) with respect to any caler
which the Company's annual report on Form 10-K is required to be filed in accordance with the
and the rules and regulations of the Commission, the date on which the annual report on Form 1
to be filed in accordance with the Exchange Act and the rules and regulations of the Commissio
Servicer at its expense shall cause a firm of independent public accountants, which shall be m
American Institute of Certified Public Accountants, to furnish to the Company and the Trustee
required under Item 1122(b) of Regulation AB.  In rendering such statement, such firm may rely
relating to the direct servicing of mortgage loans by Subservicers, upon compiled statements
examinations conducted by independent public accountants substantially in accordance with star
established by the American Institute of Certified Public Accountants (rendered within one yea
statement) with respect to such Subservicers.

Section 3.20.    Rights of the Company in Respect of the Master Servicer.

The Master Servicer shall afford the Company, upon reasonable notice, during normal bu
access to all records maintained by the Master Servicer in respect of its rights and obligatio
and access to officers of the Master Servicer responsible for such obligations.  Upon request,
Servicer shall furnish the Company with its most recent financial statements and such other in
the Master Servicer possesses regarding its business, affairs, property and condition, financi
otherwise.  The Master Servicer shall also cooperate with all reasonable requests for informat
but not limited to, notices, tapes and copies of files, regarding itself, the Mortgage Loans o
Certificates from any Person or Persons identified by the Company or Residential Funding.  The
but is not obligated to, enforce the obligations of the Master Servicer hereunder and may, but
obligated to, perform, or cause a designee to perform, any defaulted obligation of the Master
hereunder or exercise the rights of the Master Servicer hereunder; provided that the Master Se
not be relieved of any of its obligations hereunder by virtue of such performance by the Compa
designee.  The Company shall not have any responsibility or liability for any action or failur
Master Servicer and is not obligated to supervise the performance of the Master Servicer under
or otherwise.

Section 3.21.    Administration of Buydown Funds.

(a)    With respect to any Buydown Mortgage Loan, the Subservicer has deposited Buydown Funds
that satisfies the requirements for a Subservicing Account (the "Buydown Account").  The Maste
shall cause the Subservicing Agreement to require that upon receipt from the Mortgagor of the
Due Date for each Buydown Mortgage Loan, the Subservicer will withdraw from the Buydown Accoun
predetermined amount that, when added to the amount due on such date from the Mortgagor, equal
Monthly Payment and transmit that amount in accordance with the terms of the Subservicing Agre
Master Servicer together with the related payment made by the Mortgagor or advanced by the Sub

(b)    If the Mortgagor on a Buydown Mortgage Loan prepays such loan in its entirety during t
"Buydown Period") when Buydown Funds are required to be applied to such Buydown Mortgage Loan,
shall be required to withdraw from the Buydown Account and remit any Buydown Funds remaining i
Account in accordance with the related buydown agreement.  The amount of Buydown Funds which n
in accordance with the related buydown agreement may reduce the amount required to be paid by
to fully prepay the related Mortgage Loan.  If the Mortgagor on a Buydown Mortgage Loan defaul
Mortgage Loan during the Buydown Period and the property securing such Buydown Mortgage Loan i
liquidation thereof (either by the Master Servicer or the insurer under any related Primary In
Policy), the Subservicer shall be required to withdraw from the Buydown Account the Buydown Fu
Buydown Mortgage Loan still held in the Buydown Account and remit the same to the Master Servi
accordance with the terms of the Subservicing Agreement for deposit in the Custodial Account o
instructed by the Master Servicer, pay to the insurer under any related Primary Insurance Poli
Mortgaged Property is transferred to such insurer and such insurer pays all of the loss incurr
of such default.  Any amount so remitted pursuant to the preceding sentence will be deemed to
amount owed on the Mortgage Loan.

Section 3.22.    Advance Facility.

(a)    The Master Servicer is hereby authorized to enter into a financing or other facility (
arrangement, an "Advance Facility") under which (1) the Master Servicer sells, assigns or pled

Person (an "Advancing Person") the Master Servicer's rights under this Agreement to be reimbur
Advances or Servicing Advances and/or (2) an Advancing Person agrees to fund some or all Advan
Servicing Advances required to be made by the Master Servicer pursuant to this Agreement.  No
Depositor, the Trustee, the Certificateholders or any other party shall be required before the
Servicer may enter into an Advance Facility.  Notwithstanding the existence of any Advance Fac
which an Advancing Person agrees to fund Advances and/or Servicing Advances on the Master Serv
the Master Servicer  shall remain obligated pursuant to this Agreement to make Advances and Se
Advances pursuant to and as required by this Agreement.  If the Master Servicer enters into an
Facility, and for so long as an Advancing Person remains entitled to receive reimbursement for
including Nonrecoverable Advances ("Advance Reimbursement Amounts") and/or Servicing Advances
Nonrecoverable Advances ("Servicing Advance Reimbursement Amounts" and together with Advance F
Amounts, "Reimbursement Amounts") (in each case to the extent such type of Reimbursement Amoun
in the Advance Facility), as applicable, pursuant to this Agreement, then the Master Servicer
such Reimbursement Amounts consistent with the reimbursement rights set forth in Section 3.10(
(vii) and remit such Reimbursement Amounts in accordance with this Section 3.22 or otherwise i
with the documentation establishing the Advance Facility to such Advancing Person or to a trus
custodian (an "Advance Facility Trustee") designated by such Advancing Person in an Advance Fa
described below in Section 3.22(b).  Notwithstanding the foregoing, if so required pursuant to
the Advance Facility, the Master Servicer may direct, and if so directed in writing the Truste
authorized to and shall pay to the Advance Facility Trustee the Reimbursement Amounts identifi
the preceding sentence.  An Advancing Person whose obligations hereunder are limited to the fu
Advances and/or Servicing Advances shall not be required to meet the qualifications of a Maste
Subservicer pursuant to Section 3.02(a) or 6.02(c) hereof and shall not be deemed to be a Subs
this Agreement.  Notwithstanding anything to the contrary herein, in no event shall Advance Re
Amounts or Servicing Advance Reimbursement Amounts be included in the Available Distribution A
distributed to Certificateholders.

(b)    If the Master Servicer enters into an Advance Facility and makes the election set fort
3.22(a), the Master Servicer and the related Advancing Person shall deliver to the Certificate
the Trustee a written notice and payment instruction (an "Advance Facility Notice"), providing
with written payment instructions as to where to remit Advance Reimbursement Amounts and/or Se
Reimbursement Amounts (each to the extent such type of Reimbursement Amount is included within
Facility) on subsequent Distribution Dates.  The payment instruction shall require the applica
Reimbursement Amounts to be distributed to the Advancing Person or to an Advance Facility Trus
in the Advance Facility Notice.  An Advance Facility Notice may only be terminated by the joinr
direction of the Master Servicer and the related Advancing Person (and any related Advance Fac
Trustee).  The Master Servicer shall provide the Certificate Insurer, if any, with notice  of
of any Advance Facility pursuant to this Section 3.22(b).

(c)    Reimbursement Amounts shall consist solely of amounts in respect of Advances and/or Se
made with respect to the Mortgage Loans for which the Master Servicer would be permitted to re
in accordance with Section 3.10(a)(ii) and (vii) hereof, assuming the Master Servicer or the A
had made the related Advance(s) and/or Servicing Advance(s). Notwithstanding the foregoing, ex
respect to reimbursement of Nonrecoverable Advances as set forth in Section 3.10(c) of this Ag
Person shall be entitled to reimbursement from funds held in the Collection Account for future
to Certificateholders pursuant to this Agreement. Neither the Company nor the Trustee shall ha
liability with respect to the calculation of any Reimbursement Amount, nor shall the Company o
have any responsibility to track or monitor the administration of the Advance Facility or have
responsibility to track, monitor or verify the payment of Reimbursement Amounts to the related
Person or Advance Facility Trustee. The Master Servicer shall maintain and provide to any Succ
Servicer a detailed accounting on a loan-by-loan basis as to amounts advanced by, sold, pledge
to, and reimbursed to any Advancing Person. The Successor Master Servicer shall be entitled to
such information provided by the Master Servicer and the Successor Master Servicer shall not b
any errors in such information.

(d)    Upon the direction of and at the expense of the Master Servicer, the Trustee agrees to
acknowledgments, certificates and other documents reasonably satisfactory to the Trustee provi
Master Servicer recognizing the interests of any Advancing Person or Advance Facility Trustee
Reimbursement Amounts as the Master Servicer may cause to be made subject to Advance Facilitie
this Section 3.22.

(e)    Reimbursement Amounts collected with respect to each Mortgage Loan shall be allocated
unreimbursed Advances or Servicing Advances (as the case may be) made with respect to that Mor
"first-in, first out" ("FIFO") basis, subject to the qualifications set forth below:

        (i)    Any successor  Master  Servicer to Residential  Funding (a "Successor  N
        and the Advancing Person or Advance  Facility Trustee shall be required to apply all a
        in accordance with this Section 3.22(e) to the reimbursement of Advances and Servicing

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 94 of 180

manner provided for herein; provided, however, that after the succession of a
Servicer, (A) to the extent that any Advances or Servicing Advances with respect t
Mortgage Loan are reimbursed from payments or recoveries, if any, from the related
Liquidation Proceeds or Insurance Proceeds, if any, with respect to that Mortgage Loa
shall be made, first, to the Advancing Person or Advance Facility Trustee in res
and/or Servicing Advances related to that Mortgage Loan to the extent of the interest
Person or Advance Facility Trustee in such Advances and/or Servicing Advances, sec
Servicer in respect of Advances and/or Servicing Advances related to that Mortgage
those in which the Advancing Person or Advance Facility Trustee Person has an interes
the Successor Master Servicer in respect of any other Advances and/or Servicing Adv
that Mortgage Loan, from such sources as and when collected, and (B) reimbursements
Servicing Advances that are Nonrecoverable Advances shall be made pro rata to the Ac
Advance Facility Trustee, on the one hand, and any such Successor Master Servicer, c
on the basis of the respective aggregate outstanding unreimbursed Advances and Servic
are Nonrecoverable Advances owed to the Advancing Person, Advance Facility Trustee o
pursuant to this Agreement, on the one hand, and any such Successor Master Servic
hand, and without regard to the date on which any such Advances or Servicing Advance
made. In the event that, as a result of the FIFO allocation made pursuant to this
some or all of a Reimbursement Amount paid to the Advancing Person or Advance Facilit
to Advances or Servicing Advances that were made by a Person other than Residentia
Advancing Person or Advance Facility Trustee, then the Advancing Person or Advance
shall be required to remit any portion of such Reimbursement Amount to the Person
portion of such Reimbursement Amount. Without limiting the generality of the forego
Funding shall remain entitled to be reimbursed by the Advancing Person or Advance Fac
all Advances and Servicing Advances funded by Residential Funding to the ext
Reimbursement Amount(s) have not been assigned or pledged to an Advancing Person or
Trustee. The documentation establishing any Advance Facility shall require Reside
provide to the related Advancing Person or Advance Facility Trustee loan by loan
respect to each Reimbursement Amount distributed to such Advancing Person or Advance
on each date of remittance thereof to such Advancing Person or Advance Facility Truste
Advancing Person or Advance Facility Trustee to make the FIFO allocation of each Rein
with respect to each Mortgage Loan.

(ii)    By way of illustration, and not by way of limiting the generality of t
the Master Servicer resigns or is terminated at a time when the Master Servicer
Advance Facility, and is replaced by a Successor Master Servicer, and the Successo
directly funds Advances or Servicing Advances with respect to a Mortgage Loan and c
pledge the related Reimbursement Amounts to the related Advancing Person or Advance
then all payments and recoveries received from the related Mortgagor or receiv
Liquidation Proceeds and recoveries with respect to such Mortgage Loan (including Insurance Proce
connection with a liquidation of such Mortgage Loan) will be allocated first to the
or Advance Facility Trustee until the related Reimbursement Amounts attributable to s
that are owed to the Master Servicer and the Advancing Person, which were made prio
or Servicing Advances made by the Successor Master Servicer, have been reimbursed
point the Successor Master Servicer shall be entitled to retain all related Reimb
subsequently collected with respect to that Mortgage Loan pursuant to Section 3.10 of
To the extent that the Advances or Servicing Advances are Nonrecoverable Advances to
an aggregate basis pursuant to Section 3.10 of this Agreement, the reimbursement pa
will be made pro rata to the Advancing Person or Advance Facility Trustee, on the
Successor Master Servicer, on the other hand, as described in clause (i)(B) above.

(f)    The Master Servicer shall remain entitled to be reimbursed for all Advanc
Advances funded by the Master Servicer to the extent the related rights to be reimbursed
been sold, assigned or pledged to an Advancing Person.

(g)    Any amendment to this Section 3.22 or to any other provision of this Agree
necessary or appropriate to effect the terms of an Advance Facility as described generall
3.22, including amendments to add provisions relating to a successor Master Servicer, may b
the Trustee, the Certificate Insurer, Company and the Master Servicer without the
Certificateholder, with written confirmation from each Rating Agency that the amendment v
the reduction of the ratings on any class of the Certificates below the lesser of th
original ratings on such Certificates, and an opinion of counsel as required by S
notwithstanding anything to the contrary in Section 11.01 of or elsewhere in this Agreement.

(h)    Any rights of set-off that the Trust Fund, the Trustee, the Company, any
Servicer or any other Person might otherwise have against the Master Servicer under this Agr
attach to any rights to be reimbursed for Advances or Servicing Advances that have been so
pledged, conveyed or assigned to any Advancing Person.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 95 of 180

        (i)    At any time when an  Advancing  Person shall have  ceased  funding  Advances
Advances (as the case may be) and the  Advancing  Person  or  related  Advance  Facility  Tru
received  Reimbursement  Amounts sufficient  in  the  aggregate  to  reimburse  all  Advances
Advances (as the case may be) the right to  reimbursement  for which were  assigned to the  A
then upon the  delivery  of a written  notice  signed by the  Advancing  Person and the Master
successor  or assign)  to the  Trustee  terminating  the  Advance  Facility  Notice  (the  "No
Termination"),  the  Master  Servicer or its Successor  Master  Servicer shall again be entitle
retain the related Reimbursement Amounts from the Custodial Account pursuant to Section 3.10.

        (j)    After delivery of any Advance Facility Notice, and until any such Advance Facil
been terminated by a Notice of Facility Termination, this Section 3.22 may not be amended or o
modified without the prior written consent of the related Advancing Person.

---

ARTICLE IV

PAYMENTS TO CERTIFICATEHOLDERS

Section 4.01.  Certificate Account.

(a)    The Master Servicer on behalf of the Trustee shall establish and maintain a Certificat
which the Master Servicer shall cause to be deposited on behalf of the Trustee on or before 2:
York time on each Certificate Account Deposit Date by wire transfer of immediately available f
equal to the sum of (i) any Advance for the immediately succeeding Distribution Date, (ii) any
required to be deposited in the Certificate Account pursuant to Section 3.12(a), (iii) any amo
be deposited in the Certificate Account pursuant to Section 3.16(e) or Section 4.07, (iv) any
to be paid pursuant to Section 9.01 and (v) all other amounts constituting the Available Distr
for the immediately succeeding Distribution Date.

(b)    The Trustee shall, upon written request from the Master Servicer, invest or cause the
maintaining the Certificate Account to invest the funds in the Certificate Account in Permitte
designated in the name of the Trustee for the benefit of the Certificateholders, which shall m
payable on demand not later than the Business Day next preceding the Distribution Date next fo
date of such investment (except that (i) any investment in the institution with which the Cert
is maintained may mature or be payable on demand on such Distribution Date and (ii) any other
mature or be payable on demand on such Distribution Date if the Trustee shall advance funds on
Distribution Date to the Certificate Account in the amount payable on such investment on such
Date, pending receipt thereof to the extent necessary to make distributions on the Certificate
not be sold or disposed of prior to maturity.  Subject to Section 3.16(e), all income and gain
any such investment shall be for the benefit of the Master Servicer and shall be subject to it
order from time to time.  The amount of any losses incurred in respect of any such investments
deposited in the Certificate Account by the Master Servicer out of its own funds immediately a
without any right of reimbursement.  The Trustee or its Affiliates are permitted to receive co
could be deemed to be in the Trustee's economic self-interest for (i) serving as investment ad
respect to investments made through its Affiliates), administrator, shareholder servicing age
sub-custodian with respect to certain of the Permitted Investments, (ii) using Affiliates to e
transactions in certain Permitted Investments and (iii) effecting transactions in certain Perm
Investments.

Section 4.02.  Distributions.

As provided in Section 4.02 of the Series Supplement.

Section 4.03.  Statements to Certificateholders; Statements to Rating Agencies; Exchange Act F

(a)    Concurrently with each distribution charged to the Certificate Account and with respec
Distribution Date the Master Servicer shall forward to the Trustee and the Trustee shall eithe
mail or make available to each Holder and the Company, via the Trustee's internet website, a s
at its option, any additional files containing the same information in an alternative format)
information as to each Class of Certificates, the Mortgage Pool and, if the Mortgage Pool is o
or more Loan Groups, each Loan Group, to the extent applicable.  This statement will include t
set forth in an exhibit to the Series Supplement.  The Trustee shall mail to each Holder that
paper copy by telephone a paper copy via first class mail.  The Trustee may modify the distribu

procedures set forth in this Section provided that such procedures are no less convenient for
Certificateholders.  The Trustee shall provide prior notification to the Company, the Master S
Certificateholders regarding any such modification.  In addition, the Master Servicer shall pr
manager of a trust fund consisting of some or all of the Certificates, upon reasonable request
additional information as is reasonably obtainable by the Master Servicer at no additional exp
Master Servicer.  Also, at the request of a Rating Agency, the Master Servicer shall provide t
relating to the Reportable Modified Mortgage Loans substantially in the form attached hereto a
such Rating Agency within a reasonable period of time; provided, however, that the Master Serv
be required to provide such information more than four times in a calendar year to any Rating

(b)    Within a reasonable period of time after it receives a written request from a Holder o
other than a Class R Certificate, the Master Servicer shall prepare, or cause to be prepared,
forward, or cause to be forwarded, to each Person who at any time during the calendar year was
a Certificate, other than a Class R Certificate, a statement containing the information set fo
(v) and (vi) of the exhibit to the Series Supplement referred to in subsection (a) above aggre
calendar year or applicable portion thereof during which such Person was a Certificateholder.
obligation of the Master Servicer shall be deemed to have been satisfied to the extent that su
comparable information shall be provided by the Master Servicer pursuant to any requirements o

(c)    Within a reasonable period of time after it receives a written request from a Holder o
Certificate, the Master Servicer shall prepare, or cause to be prepared, and shall forward, or
forwarded, to each Person who at any time during the calendar year was the Holder of a Class R
statement containing the applicable distribution information provided pursuant to this Section
aggregated for such calendar year or applicable portion thereof during which such Person was t
Class R Certificate.  Such obligation of the Master Servicer shall be deemed to have been sati
extent that substantially comparable information shall be provided by the Master Servicer purs
requirements of the Code.

(d)    Upon the written request of any Certificateholder, the Master Servicer, as soon as rea
practicable, shall provide the requesting Certificateholder with such information as is necess
appropriate, in the Master Servicer's sole discretion, for purposes of satisfying applicable r
requirements under Rule 144A.

(e)    The Master Servicer shall, on behalf of the Company and in respect of the Trust Fund,
to be filed with the Commission any periodic reports required to be filed under the provisions
Exchange Act, and the rules and regulations of the Commission thereunder including, without li
reports on Form 10-K, Form 10-D and Form 8-K.  In connection with the preparation and filing o
reports, the Trustee shall timely provide to the Master Servicer (I) a list of Certificatehold
the Certificate Register as of the end of each calendar year, (II) copies of all pleadings, le
process and any other documents relating to any claims, charges or complaints involving the Tr
trustee hereunder, or the Trust Fund that are received by a Responsible Officer of the Trustee
of all matters that, to the actual knowledge of a Responsible Officer of the Trustee, have bee
a vote of the Certificateholders, other than those matters that have been submitted to a vote
Certificateholders at the request of the Company or the Master Servicer, and (IV) notice of an
the Trustee to make any distribution to the Certificateholders as required pursuant to the Ser
Neither the Master Servicer nor the Trustee shall have any liability with respect to the Maste
failure to properly prepare or file such periodic reports resulting from or relating to the Ma
inability or failure to obtain any information not resulting from the Master Servicer's own ne
willful misconduct.

(f)    Any Form 10-K filed with the Commission in connection with this Section 4.03 shall inc
respect to the Certificates relating to such 10-K:

(i)    A certification, signed by the senior officer in charge of the servicing functions of
       Servicer, in the form attached as Exhibit O hereto or such other form as may be requir
       by the Commission (the "Form 10-K Certification"), in compliance with Rules 13a-14 and
       the Exchange Act and any additional directives of the Commission.

(ii)   A report regarding its assessment of compliance during the preceding calendar year wit
       servicing criteria set forth in relevant Commission regulations with respect to mortga
       securities transactions taken as a whole involving the Master Servicer that are backed
       types of assets as those backing the certificates, as well as similar reports on asses
       compliance received from other parties participating in the servicing function as requ
       Commission regulations, as described in Item 1122(a) of Regulation AB.  The Master Ser
       obtain from all other parties participating in the servicing function any required ass

(iii)  With respect to each assessment report described immediately above, a report by a regi
       accounting firm that attests to, and reports on, the assessment made by the asserting

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 97 of 180

forth in relevant Commission regulations, as described in Regulation 1122(b) of Regula
Section 3.19.

(iv)    The servicer compliance certificate required to be delivered pursuant Section 3.18.

(g)    In connection with the Form 10-K Certification, the Trustee shall provide the Master S
back-up certification substantially in the form attached hereto as Exhibit P.

(h)    This Section 4.03 may be amended in accordance with this Agreement without the consent
Certificateholders.

(i)    The Trustee shall make available on the Trustee's internet website each of the reports
Commission by or on behalf of the Company under the Exchange Act, as soon as reasonably practi
delivery of such reports to the Trustee.

Section 4.04.    Distribution of Reports to the Trustee and
              the Company; Advances by the Master Servicer.

(a)    Prior to the close of business on the Determination Date, the Master Servicer shall fu
statement to the Trustee, any Paying Agent and the Company (the information in such statement
available to any Certificate Insurer and Certificateholders by the Master Servicer on request)
(i) the Available Distribution Amount and (ii) the amounts required to be withdrawn from the C
Account and deposited into the Certificate Account on the immediately succeeding Certificate A
Date pursuant to clause (iii) of Section 4.01(a).  The determination by the Master Servicer of
shall, in the absence of obvious error, be presumptively deemed to be correct for all purposes
the Trustee shall be protected in relying upon the same without any independent check or verif

(b)    On or before 2:00 P.M. New York time on each Certificate Account Deposit Date, the Mas
shall either (i) deposit in the Certificate Account from its own funds, or funds received ther
Subservicers, an amount equal to the Advances to be made by the Master Servicer in respect of
Distribution Date, which shall be in an aggregate amount equal to the aggregate amount of Mont
(with each interest portion thereof adjusted to the Net Mortgage Rate), less the amount of any
Servicing Modifications, Debt Service Reductions or reductions in the amount of interest colle
Mortgagor pursuant to the Servicemembers Civil Relief Act, as amended, or similar legislation
then in effect, on the Outstanding Mortgage Loans as of the related Due Date, which Monthly Pa
received as of the close of business as of the related Determination Date; provided that no Ad
made if it would be a Nonrecoverable Advance, (ii) withdraw from amounts on deposit in the Cus
and deposit in the Certificate Account all or a portion of the Amount Held for Future Distribu
discharge of any such Advance, or (iii) make advances in the form of any combination of (i) an
aggregating the amount of such Advance.  Any portion of the Amount Held for Future Distributio
be replaced by the Master Servicer by deposit in the Certificate Account on or before 11:00 A.
time on any future Certificate Account Deposit Date to the extent that funds attributable to t
Loans that are available in the Custodial Account for deposit in the Certificate Account on su
Account Deposit Date shall be less than payments to Certificateholders required to be made on
Distribution Date.  The Master Servicer shall be entitled to use any Advance made by a Subserv
described in Section 3.07(b) that has been deposited in the Custodial Account on or before suc
Date as part of the Advance made by the Master Servicer pursuant to this Section 4.04.  The am
reimbursement pursuant to Section 4.02(a) in respect of outstanding Advances on any Distributi
be allocated to specific Monthly Payments due but delinquent for previous Due Periods, which a
be made, to the extent practicable, to Monthly Payments which have been delinquent for the lon
time.  Such allocations shall be conclusive for purposes of reimbursement to the Master Servic
recoveries on related Mortgage Loans pursuant to Section 3.10.

The determination by the Master Servicer that it has made a Nonrecoverable Advance or
proposed Advance, if made, would constitute a Nonrecoverable Advance, shall be evidenced by an
Certificate of the Master Servicer delivered to the Company and the Trustee.

If the Master Servicer determines as of the Business Day preceding any Certificate Acc
Date that it will be unable to deposit in the Certificate Account an amount equal to the Advan
be made for the immediately succeeding Distribution Date, it shall give notice to the Trustee
inability to advance (such notice may be given by telecopy), not later than 3:00 P.M., New Yor
Business Day, specifying the portion of such amount that it will be unable to deposit.  Not la
P.M., New York time, on the Certificate Account Deposit Date the Trustee shall, unless by 12:0
York time, on such day the Trustee shall have been notified in writing (by telecopy) that the
shall have directly or indirectly deposited in the Certificate Account such portion of the amo
Advance as to which the Master Servicer shall have given notice pursuant to the preceding sent
to Section 7.01, (a) terminate all of the rights and obligations of the Master Servicer under
in accordance with Section 7.01 and (b) assume the rights and obligations of the Master Servic

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 98 of 180

including the obligation to deposit in the Certificate Account an amount equal to the Advance immediately succeeding Distribution Date.

The Trustee shall deposit all funds it receives pursuant to this Section 4.04 into the Account.

Section 4.05.   Allocation of Realized Losses.

As provided in Section 4.05 of the Series Supplement.

Section 4.06.   Reports of Foreclosures and Abandonment of Mortgaged Property.

The Master Servicer or the Subservicers shall file information returns with respect to mortgage interests received in a trade or business, the reports of foreclosures and abandonment Mortgaged Property and the information returns relating to cancellation of indebtedness income to any Mortgaged Property required by Sections 6050H, 6050J and 6050P, respectively, of the Co to the Trustee an Officers' Certificate on or before March 31 of each year stating that such i been filed.   Such reports shall be in form and substance sufficient to meet the reporting requ imposed by Sections 6050H, 6050J and 6050P of the Code.
Section 4.07.   Optional Purchase of Defaulted Mortgage Loans.

(a)     With respect to any Mortgage Loan that is delinquent in payment by 90 days or more, th Servicer may, at its option, purchase such Mortgage Loan from the Trustee at the Purchase Pric provided, that such Mortgage Loan that becomes 90 or more delinquent during any given Cal shall only be eligible for purchase pursuant to this Section during the period beginning on th Business Day of the following Calendar Quarter, and ending at the close of business on the se Business Day of such following Calendar Quarter; and provided, further, that such Mortgage Loa more delinquent at the time of repurchase.   Such option if not exercised shall not thereafter as to any Mortgage Loan, unless the delinquency is cured and the Mortgage Loan thereafter aga delinquent in payment by 90 days or more in a subsequent Calendar Quarter.

(b)     If at any time the Master Servicer makes a payment to the Certificate Account covering the Purchase Price for such a Mortgage Loan as provided in clause (a) above, and the Master Se to the Trustee a certification signed by a Servicing Officer stating that the amount of such p deposited in the Certificate Account, then the Trustee shall execute the assignment of such Mo the request of the Master Servicer, without recourse, to the Master Servicer, which shall succ Trustee's right, title and interest in and to such Mortgage Loan, and all security and documen thereto.   Such assignment shall be an assignment outright and not for security.   The Master Se thereupon own such Mortgage, and all such security and documents, free of any further obligati Trustee or the Certificateholders with respect thereto.

If, however, the Master Servicer shall have exercised its right to repurchase a Mortg to this Section 4.07 upon the written request of and with funds provided by the Junior Certi thereupon transferred such Mortgage Loan to the Junior Certificateholder, the Master Service the Trustee in writing.

Section 4.08.   Surety Bond.

(a)     If a Required Surety Payment is payable pursuant to the Surety Bond with respect to an Collateral Loan, the Master Servicer shall so notify the Trustee as soon as reasonably practic Trustee shall promptly complete the notice in the form of Attachment 1 to the Surety Bond and submit such notice to the Surety as a claim for a Required Surety.   The Master Servicer shall assist the Trustee in completing such notice and shall provide any information requested by th connection therewith.

(b)     Upon receipt of a Required Surety Payment from the Surety on behalf of the Holders of the Trustee shall deposit such Required Surety Payment in the Certificate Account and shall di Required Surety Payment, or the proceeds thereof, in accordance with the provisions of Section

(c)     The Trustee shall (i) receive as attorney-in-fact of each Holder of a Certificate any Payment from the Surety and (ii) disburse the same to the Holders of such Certificates as set Section 4.02.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 99 of 180

ARTICLE V

THE CERTIFICATES

Section 5.01.  The Certificates.

(a)     The Senior, Class X, Class M, Class B, Class P and Class R Certificates shall be subst
forms set forth in Exhibits A, A-I, B, C, C-I and D, respectively, and shall, on original issu
and delivered by the Trustee to the Certificate Registrar for authentication and delivery to c
order of the Company upon receipt by the Trustee or one or more Custodians of the documents sp
Section 2.01.  The Certificates shall be issuable in the minimum denominations designated in t
Statement to the Series Supplement.

        The Certificates shall be executed by manual or facsimile signature on behalf of an au
of the Trustee.  Certificates bearing the manual or facsimile signatures of individuals who we
the proper officers of the Trustee shall bind the Trustee, notwithstanding that such individua
them have ceased to hold such offices prior to the authentication and delivery of such Certifi
hold such offices at the date of such Certificates.  No Certificate shall be entitled to any b
this Agreement, or be valid for any purpose, unless there appears on such Certificate a certif
authentication substantially in the form provided for herein executed by the Certificate Regis
signature, and such certificate upon any Certificate shall be conclusive evidence, and the onl
that such Certificate has been duly authenticated and delivered hereunder.  All Certificates s
the date of their authentication.

(b)     Except as provided below, registration of Book-Entry Certificates may not be transferr
Trustee except to another Depository that agrees to hold such Certificates for the respective
Owners with Ownership Interests therein.  The Holders of the Book-Entry Certificates shall hol
respective Ownership Interests in and to each of such Certificates through the book-entry faci
Depository and, except as provided below, shall not be entitled to Definitive Certificates in
Ownership Interests.  All transfers by Certificate Owners of their respective Ownership Intere
Book-Entry Certificates shall be made in accordance with the procedures established by the Dep
Participant or brokerage firm representing such Certificate Owner.  Each Depository Participan
transfer the Ownership Interests only in the Book-Entry Certificates of Certificate Owners it
of brokerage firms for which it acts as agent in accordance with the Depository's normal proce

        The Trustee, the Master Servicer and the Company may for all purposes (including the m
payments due on the respective Classes of Book-Entry Certificates) deal with the Depository as
representative of the Certificate Owners with respect to the respective Classes of Book-Entry
for the purposes of exercising the rights of Certificateholders hereunder.  The rights of Cert
with respect to the respective Classes of Book-Entry Certificates shall be limited to those es
law and agreements between such Certificate Owners and the Depository Participants and brokera
representing such Certificate Owners.  Multiple requests and directions from, and votes of, th
Holder of any Class of Book-Entry Certificates with respect to any particular matter shall not
inconsistent if they are made with respect to different Certificate Owners.  The Trustee may e
reasonable record date in connection with solicitations of consents from or voting by Certific
shall give notice to the Depository of such record date.

        If (i)(A) the Company advises the Trustee in writing that the Depository is no longer
to properly discharge its responsibilities as Depository and (B) the Company is unable to loca
successor or (ii) the Company notifies the Depository and the Trustee of its intent to termina
book-entry system and, upon receipt of notice of such intent from the Depository, the Deposito
holding beneficial interests in the Book-Entry Certificates agree to such termination through
the Trustee shall notify all Certificate Owners, through the Depository, of the occurrence of
and of the availability of Definitive Certificates to Certificate Owners requesting the same.
to the Trustee of the Book-Entry Certificates by the Depository, accompanied by registration i
from the Depository for registration of transfer, the Trustee shall execute, authenticate and
Definitive Certificates.  In addition, if an Event of Default has occurred and is continuing,
Certificate Owner materially adversely affected thereby may at its option request a Definitive
evidencing such Certificate Owner's Percentage Interest in the related Class of Certificates.
make such a request, such Certificate Owner shall, subject to the rules and procedures of the
provide the Depository or the related Depository Participant with directions for the Certifica
exchange or cause the exchange of the Certificate Owner's interest in such Class of Certificat
equivalent Percentage Interest in fully registered definitive form.  Upon receipt by the Certi
Registrar of instructions from the Depository directing the Certificate Registrar to effect su
(such instructions shall contain information regarding the Class of Certificates and the Certi
Principal Balance being exchanged, the Depository Participant account to be debited with the c
registered holder of and delivery instructions for the Definitive Certificate, and any other i
reasonably required by the Certificate Registrar), (i) the Certificate Registrar shall instruc

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 100 of 180

Depository to reduce the related Depository Participant's account by the aggregate Certificate
Balance of the Definitive Certificate, (ii) the Trustee shall execute and the Certificate Regi
authenticate and deliver, in accordance with the registration and delivery instructions provi
Depository, a Definitive Certificate evidencing such Certificate Owner's Percentage Interest i
Certificates and (iii) the Trustee shall execute and the Certificate Registrar shall authentic
Book-Entry Certificate reflecting the reduction in the aggregate Certificate Principal Balance
of Certificates by the Certificate Principal Balance of the Definitive Certificate.

None of the Company, the Master Servicer or the Trustee shall be liable for any action
Depository or its nominee, including, without limitation, any delay in delivery of any instru
under Section 5.01 and may conclusively rely on, and shall be protected in relying on, such in
Upon the issuance of Definitive Certificates, the Trustee and the Master Servicer shall recog
of the Definitive Certificates as Certificateholders hereunder.

(c)      If the Class A-V Certificates are Definitive Certificates, from time to time Residenti
the initial Holder of the Class A-V Certificates, may exchange such Holder's Class A-V Certifi
Subclasses of Class A-V Certificates to be issued under this Agreement by delivering a "Reques
substantially in the form attached to this Agreement as Exhibit N executed by an authorized of
Subclasses, in the aggregate, will represent the Uncertificated Class A-V REMIC Regular Intere
corresponding to the Class A-V Certificates so surrendered for exchange.  Any Subclass so issu
numerical designation commencing with Class A-V-1 and continuing sequentially thereafter, and
ownership of the Uncertificated REMIC Regular Interest or Interests specified in writing by su
Holder to the Trustee. The Trustee may conclusively, without any independent verification, rel
be protected in relying on, Residential Funding's determinations of the Uncertificated Class A
Regular Interests corresponding to any Subclass, the Initial Notional Amount and the initial I
Rate on a Subclass as set forth in such Request for Exchange and the Trustee shall have no dut
if any Uncertificated Class A-V REMIC Regular Interest designated on a Request for Exchange co
Subclass which has previously been issued. Each Subclass so issued shall be substantially in t
forth in Exhibit A and shall, on original issue, be executed and delivered by the Trustee to t
Registrar for authentication and delivery in accordance with Section 5.01(a).  Every Certifica
surrendered for exchange by the initial Holder shall (if so required by the Trustee or the Cer
Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer attached
Certificate and shall be completed to the satisfaction of the Trustee and the Certificate Regi
executed by, the initial Holder thereof or his attorney duly authorized in writing.  The Certi
Subclass of Class A-V Certificates may be transferred in whole, but not in part, in accordance
provisions of Section 5.02.

Section 5.02.  Registration of Transfer and Exchange of Certificates.

(a)      The Trustee shall cause to be kept at one of the offices or agencies to be appointed b
accordance with the provisions of Section 8.12 a Certificate Register in which, subject to suc
regulations as it may prescribe, the Trustee shall provide for the registration of Certificate
transfers and exchanges of Certificates as herein provided.  The Trustee is initially appointe
Registrar for the purpose of registering Certificates and transfers and exchanges of Certifica
provided.  The Certificate Registrar, or the Trustee, shall provide the Master Servicer with a
of Certificateholders as of each Record Date prior to the related Determination Date.

(b)      Upon surrender for registration of transfer of any Certificate at any office or agency
maintained for such purpose pursuant to Section 8.12 and, in the case of any Class M, Class B,
Class R Certificate, upon satisfaction of the conditions set forth below, the Trustee shall ex
Certificate Registrar shall authenticate and deliver, in the name of the designated transferee
transferees, one or more new Certificates of a like Class (or Subclass) and aggregate Percenta

(c)      At the option of the Certificateholders, Certificates may be exchanged for other Certi
authorized denominations of a like Class (or Subclass) and aggregate Percentage Interest, upon
the Certificates to be exchanged at any such office or agency.  Whenever any Certificates are s
for exchange the Trustee shall execute and the Certificate Registrar shall authenticate and de
Certificates of such Class which the Certificateholder making the exchange is entitled to rece
Certificate presented or surrendered for transfer or exchange shall (if so required by the Tru
Certificate Registrar) be duly endorsed by, or be accompanied by a written instrument of trans
satisfactory to the Trustee and the Certificate Registrar duly executed by, the Holder thereof
attorney duly authorized in writing.

(d)      No transfer, sale, pledge or other disposition of a Class B Certificate or Class P Cer
be made unless such transfer, sale, pledge or other disposition is exempt from the registratio
of the Securities Act of 1933, as amended, and any applicable state securities laws or is made
with said Act and laws.  In the event that a transfer of a Class B Certificate or Class P Cert
be made either (i)(A) the Trustee shall require a written Opinion of Counsel acceptable to and

substance satisfactory to the Trustee and the Company that such transfer may be made pursuant
exemption, describing the applicable exemption and the basis therefor, from said Act and laws
made pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Tr
Company or the Master Servicer (except that, if such transfer is made by the Company or the Ma
or any Affiliate thereof, the Company or the Master Servicer shall provide such Opinion of Cou
own expense); provided that such Opinion of Counsel will not be required in connection with th
transfer of any such Certificate by the Company or any Affiliate thereof to the Company or an
the Company and (B) the Trustee shall require the transferee to execute a representation lette
substantially in the form of Exhibit H (with respect to any Class B Certificate) or Exhibit G-
to any Class P Certificate) hereto, and the Trustee shall require the transferor to execute a
letter, substantially in the form of Exhibit I hereto, each acceptable to and in form and subs
satisfactory to the Company and the Trustee certifying to the Company and the Trustee the fact
such transfer, which representation letters shall not be an expense of the Trustee, the Compan
Servicer; provided, however, that such representation letters will not be required in connecti
transfer of any such Certificate by the Company or any Affiliate thereof to the Company or an
the Company, and the Trustee shall be entitled to conclusively rely upon a representation (whi
request of the Trustee, shall be a written representation) from the Company, of the status of
as an Affiliate of the Company or (ii) the prospective transferee of such a Certificate shall
provide the Trustee, the Company and the Master Servicer with an investment letter substantial
of Exhibit J attached hereto (or such other form as the Company in its sole discretion deems a
which investment letter shall not be an expense of the Trustee, the Company or the Master Serv
investment letter states that, among other things, such transferee (A) is a "qualified institu
as defined under Rule 144A, acting for its own account or the accounts of other "qualified ins
buyers" as defined under Rule 144A, and (B) is aware that the proposed transferor intends to r
exemption from registration requirements under the Securities Act of 1933, as amended, provide
The Holder of any such Certificate desiring to effect any such transfer, sale, pledge or other
shall, and does hereby agree to, indemnify the Trustee, the Company, the Master Servicer and t
Registrar against any liability that may result if the transfer, sale, pledge or other disposi
exempt or is not made in accordance with such federal and state laws.

(e)      (i)      In the case of any Class B, Class P or Class R Certificate presented for regist
                 name of any Person, either (A) the Trustee shall require an Opinion of Counsel
                 and in form and substance satisfactory to the Trustee, the Company and the Mast
                 the effect that the purchase or holding of such Class B, Class P or Class R Cer
                 permissible under applicable law, will not constitute or result in any non-exem
                 transaction under Section 406 of the Employee Retirement Income Security Act of
                 amended ("ERISA"), or Section 4975 of the Code (or comparable provisions of any
                 enactments), and will not subject the Trustee, the Company or the Master Servic
                 obligation or liability (including obligations or liabilities under ERISA or Se
                 the Code) in addition to those undertaken in this Agreement, which Opinion of C
                 be an expense of the Trustee, the Company or the Master Servicer or (B) the pro
                 Transferee shall be required to provide the Trustee, the Company and the Master
                 certification to the effect set forth in paragraph six of Exhibit H (with respe
                 B Certificate) or paragraph fifteen of Exhibit G-1 (with respect to any Class P
                 Class P Certificate), which the Trustee may rely upon without further inquiry o
                 or such other certifications as the Trustee may deem desirable or necessary in
                 establish that such Transferee or the Person in whose name such registration is
                 either (a) is not an employee benefit plan or other plan subject to the prohibi
                 provisions of ERISA or Section 4975 of the Code, or any Person (including an in
                 manager, a named fiduciary or a trustee of any such plan) who is using "plan as
                 such plan to effect such acquisition (each, a "Plan Investor") or (b) in the ca
                 B Certificate, the following conditions are satisfied: (i) such Transferee is
                 company, (ii) the source of funds used to purchase or hold such Certificate (or
                 therein) is an "insurance company general account" (as defined in U.S. Departme
                 Prohibited Transaction Class Exemption ("PTCE") 95-60, and (iii) the conditions
                 Sections I and III of PTCE 95-60 have been satisfied (each entity that satisfie
                 (b), a "Complying Insurance Company").

         (ii)     Any Transferee of a Class M Certificate will be deemed to have represent
                 its purchase or holding of such Certificate (or interest therein) that either (
                 Transferee is not a Plan Investor, (b) it has acquired and is holding such Cert
                 reliance on Prohibited Transaction Exemption ("PTE") 94-29, as most recently am
                 2002-41, 67 Fed. Reg. 54487 (August 22, 2002) (the "RFC Exemption"), and that i
                 that there are certain conditions to the availability of the RFC Exemption incl
                 Certificate must be rated, at the time of purchase, not lower than "BBB-" (or i
                 by Standard & Poor's, Fitch or Moody's or (c) such Transferee is a Complying In

         (iii)    (A)   If any Class M Certificate (or any interest therein) is acquired or

Person that does not satisfy the conditions described in paragraph (ii) above, preceding Transferee that either (i) is not a Plan Investor, (ii) acquired such compliance with the RFC Exemption, or (iii) is a Complying Insurance Company sh to the extent permitted by law, to all rights and obligations as Certificate Ow retroactive to the date of such Transfer of such Class M Certificate.  The Trus under no liability to any Person for making any payments due on such Certificat preceding Transferee.

(B)    Any purported Certificate Owner whose acquisition or holding of a Certificate (or interest therein) was effected in violation of the restrictions 5.02(e) shall indemnify and hold harmless the Company, the Trustee, the Master Subservicer, the Underwriters and the Trust Fund from and against any and all l claims, costs or expenses incurred by such parties as a result of such acquisit

(f)    (i)    Each Person who has or who acquires any Ownership Interest in a Class R Certifica deemed by the acceptance or acquisition of such Ownership Interest to have agreed to be bound following provisions and to have irrevocably authorized the Trustee or its designee under clau below to deliver payments to a Person other than such Person and to negotiate the terms of any under clause (iii)(B) below and to execute all instruments of transfer and to do all other thi in connection with any such sale.  The rights of each Person acquiring any Ownership Interest Certificate are expressly subject to the following provisions:

(A)    Each Person holding or acquiring any Ownership Interest in a Class R Certificate shall Transferee and shall promptly notify the Trustee of any change or impending cha status as a Permitted Transferee.

(B)    In connection with any proposed Transfer of any Ownership Interest in a Class R Certif Trustee shall require delivery to it, and shall not register the Transfer of an Certificate until its receipt of, (I) an affidavit and agreement (a "Transfer A Agreement," in the form attached hereto as Exhibit G-1) from the proposed Trans and substance satisfactory to the Master Servicer, representing and warranting, things, that it is a Permitted Transferee, that it is not acquiring its Ownersh the Class R Certificate that is the subject of the proposed Transfer as a nomin agent for any Person who is not a Permitted Transferee, that for so long as it Ownership Interest in a Class R Certificate, it will endeavor to remain a Permi and that it has reviewed the provisions of this Section 5.02(f) and agrees to b and (II) a certificate, in the form attached hereto as Exhibit G-2, from the Ho transfer the Class R Certificate, in form and substance satisfactory to the Mas representing and warranting, among other things, that no purpose of the propose impede the assessment or collection of tax.

(C)    Notwithstanding the delivery of a Transfer Affidavit and Agreement by a proposed Trans clause (B) above, if a Responsible Officer of the Trustee who is assigned to th actual knowledge that the proposed Transferee is not a Permitted Transferee, no Ownership Interest in a Class R Certificate to such proposed Transferee shall b

(D)    Each Person holding or acquiring any Ownership Interest in a Class R Certificate shall require a Transfer Affidavit and Agreement from any other Person to whom such P to transfer its Ownership Interest in a Class R Certificate and (y) not to tran Ownership Interest unless it provides a certificate to the Trustee in the form as Exhibit G-2.

(E)    Each Person holding or acquiring an Ownership Interest in a Class R Certificate, by pu Ownership Interest in such Certificate, agrees to give the Trustee written noti "pass-through interest holder" within the meaning of Temporary Treasury Regulat 1.67-3T(a)(2)(i)(A) immediately upon acquiring an Ownership Interest in a Class if it is, or is holding an Ownership Interest in a Class R Certificate on behal "pass-through interest holder."

(ii)    The Trustee shall register the Transfer of any Class R Certificate only if it shall ha Transfer Affidavit and Agreement, a certificate of the Holder requesting such transfer attached hereto as Exhibit G-2 and all of such other documents as shall have been rea by the Trustee as a condition to such registration.  Transfers of the Class R Certific Non-United States Persons and Disqualified Organizations (as defined in Section 860E(e Code) are prohibited.

(iii)    (A)    If any Disqualified Organization shall become a holder of a Class R Cert the last preceding Permitted Transferee shall be restored, to the extent permitted by

rights and obligations as Holder thereof retroactive to the date of registration of su
such Class R Certificate.  If a Non-United States Person shall become a holder of a Cl
Certificate, then the last preceding United States Person shall be restored, to the ex
by law, to all rights and obligations as Holder thereof retroactive to the date of reg
such Transfer of such Class R Certificate.  If a transfer of a Class R Certificate is
pursuant to the provisions of Treasury Regulations Section 1.860E-1 or Section 1.860G-
preceding Permitted Transferee shall be restored, to the extent permitted by law, to a
obligations as Holder thereof retroactive to the date of registration of such Transfer
Certificate. The Trustee shall be under no liability to any Person for any registratio
a Class R Certificate that is in fact not permitted by this Section 5.02(f) or for mak
due on such Certificate to the holder thereof or for taking any other action with resp
holder under the provisions of this Agreement.

(B)     If any purported Transferee shall become a Holder of a Class R Certificate in violatio
        restrictions in this Section 5.02(f) and to the extent that the retroactive res
        rights of the Holder of such Class R Certificate as described in clause (iii)(A
        invalid, illegal or unenforceable, then the Master Servicer shall have the righ
        notice to the holder or any prior holder of such Class R Certificate, to sell s
        Certificate to a purchaser selected by the Master Servicer on such terms as the
        may choose.  Such purported Transferee shall promptly endorse and deliver each
        Certificate in accordance with the instructions of the Master Servicer.  Such p
        the Master Servicer itself or any Affiliate of the Master Servicer.  The procee
        net of the commissions (which may include commissions payable to the Master Ser
        Affiliates), expenses and taxes due, if any, shall be remitted by the Master Se
        purported Transferee.  The terms and conditions of any sale under this clause (
        determined in the sole discretion of the Master Servicer, and the Master Servic
        liable to any Person having an Ownership Interest in a Class R Certificate as a
        exercise of such discretion.

(iv)    The Master Servicer, on behalf of the Trustee, shall make available, upon written requ
        Trustee, all information necessary to compute any tax imposed (A) as a result of the T
        Ownership Interest in a Class R Certificate to any Person who is a Disqualified Organi
        including the information regarding "excess inclusions" of such Class R Certificates i
        provided to the Internal Revenue Service and certain Persons as described in Treasury
        Sections 1.860D-1(b)(5) and 1.860E-2(a)(5), and (B) as a result of any regulated inves
        real estate investment trust, common trust fund, partnership, trust, estate or organi
        in Section 1381 of the Code that holds an Ownership Interest in a Class R Certificate
        its record holders at any time any Person who is a Disqualified Organization.  Reasona
        for providing such information may be required by the Master Servicer from such Person

(v)     The provisions of this Section 5.02(f) set forth prior to this clause (v) may be modif
        eliminated, provided that there shall have been delivered to the Trustee the following

(A)     written notification from each Rating Agency to the effect that the modification, addi
        elimination of such provisions will not cause such Rating Agency to downgrade i
        ratings, if any, of any Class of the Senior (in the case of the Insured Certifi
        defined in the Series Supplement), such determination shall be made without giv
        the Certificate Policy (as defined in the Series Supplement)), Class M or Class
        below the lower of the then-current rating or the rating assigned to such Certi
        the Closing Date by such Rating Agency; and

(B)     subject to Section 10.01(f), an Officers' Certificate of the Master Servicer stating t
        Servicer has received an Opinion of Counsel, in form and substance satisfactory
        Servicer, to the effect that such modification, addition to or absence of such
        not cause any portion of any REMIC formed under the Series Supplement to cease
        REMIC and will not cause (x) any portion of any REMIC formed under the Series S
        subject to an entity-level tax caused by the Transfer of any Class R Certificat
        that is a Disqualified Organization or (y) a Certificateholder or another Perso
        to a REMIC-related tax caused by the Transfer of a Class R Certificate to a Per
        a Permitted Transferee.

(g)     No service charge shall be made for any transfer or exchange of Certificates of any Cl
Trustee may require payment of a sum sufficient to cover any tax or governmental charge that m
in connection with any transfer or exchange of Certificates.

(h)     All Certificates surrendered for transfer and exchange shall be destroyed by the Certi

Section 5.03.  Mutilated, Destroyed, Lost or Stolen Certificates.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 104 of 180

If (i) any mutilated Certificate is surrendered to the Certificate Registrar, or the T
Certificate Registrar receive evidence to their satisfaction of the destruction, loss or theft
Certificate, and (ii) there is delivered to the Trustee and the Certificate Registrar such sec
indemnity as may be required by them to save each of them harmless, then, in the absence of no
Trustee or the Certificate Registrar that such Certificate has been acquired by a bona fide pu
Trustee shall execute and the Certificate Registrar shall authenticate and deliver, in exchang
lieu of any such mutilated, destroyed, lost or stolen Certificate, a new Certificate of like t
Percentage Interest but bearing a number not contemporaneously outstanding.  Upon the issuance
Certificate under this Section, the Trustee may require the payment of a sum sufficient to cov
other governmental charge that may be imposed in relation thereto and any other expenses (incl
and expenses of the Trustee and the Certificate Registrar) connected therewith.  Any duplicate
issued pursuant to this Section shall constitute complete and indefeasible evidence of ownersh
Fund, as if originally issued, whether or not the lost, stolen or destroyed Certificate shall
time.

Section 5.04.  Persons Deemed Owners.

Prior to due presentation of a Certificate for registration of transfer, the Company,
Servicer, the Trustee, any Certificate Insurer, the Certificate Registrar and any agent of the
Master Servicer, the Trustee, any Certificate Insurer or the Certificate Registrar may treat t
whose name any Certificate is registered as the owner of such Certificate for the purpose of r
distributions pursuant to Section 4.02 and for all other purposes whatsoever, except as and to
provided in the definition of "Certificateholder," and neither the Company, the Master Service
any Certificate Insurer, the Certificate Registrar nor any agent of the Company, the Master Se
Trustee, any Certificate Insurer or the Certificate Registrar shall be affected by notice to t
except as provided in Section 5.02(f).

Section 5.05.  Appointment of Paying Agent.

The Trustee may appoint a Paying Agent for the purpose of making distributions to the
Certificateholders pursuant to Section 4.02.  In the event of any such appointment, on or prio
Distribution Date the Master Servicer on behalf of the Trustee shall deposit or cause to be de
the Paying Agent a sum sufficient to make the payments to the Certificateholders in the amount
manner provided for in Section 4.02, such sum to be held in trust for the benefit of the Certi

The Trustee shall cause each Paying Agent to execute and deliver to the Trustee an ins
such Paying Agent shall agree with the Trustee that such Paying Agent shall hold all sums held
payment to the Certificateholders in trust for the benefit of the Certificateholders entitled
such sums shall be distributed to such Certificateholders.  Any sums so held by such Paying Ag
held only in Eligible Accounts to the extent such sums are not distributed to the Certificateh
date of receipt by such Paying Agent.

Section 5.06.  U.S.A. Patriot Act Compliance.

In order for it to comply with its duties under the U.S.A. Patriot Act, the Trustee ma
verify certain information from the other parties hereto, including but not limited to such pa
address and other identifying information.

---

ARTICLE VI


THE COMPANY AND THE MASTER SERVICER

Section 6.01.  Respective Liabilities of the Company and the Master Servicer.

The Company and the Master Servicer shall each be liable in accordance herewith only t
the obligations specifically and respectively imposed upon and undertaken by the Company and t
Servicer herein.  By way of illustration and not limitation, the Company is not liable for the
administration of the Mortgage Loans, nor is it obligated by Section 7.01 or Section 10.01 to
obligations of the Master Servicer or to appoint a designee to assume such obligations, nor is
any other obligation hereunder that it may, but is not obligated to, assume unless it elects t

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 105 of 180

obligation in accordance herewith.

Section 6.02.  Merger or Consolidation of the Company or the Master Servicer; Assignment of Ri
                Delegation of Duties by Master Servicer.

(a)      The Company and the Master Servicer shall each keep in full effect its existence, righ
franchises as a corporation under the laws of the state of its incorporation, and shall each c
preserve its qualification to do business as a foreign corporation in each jurisdiction in whi
qualification is or shall be necessary to protect the validity and enforceability of this Agre
Certificates or any of the Mortgage Loans and to perform its respective duties under this Agre

(b)      Any Person into which the Company or the Master Servicer may be merged or consolidated
corporation resulting from any merger or consolidation to which the Company or the Master Serv
party, or any Person succeeding to the business of the Company or the Master Servicer, shall b
of the Company or the Master Servicer, as the case may be, hereunder, without the execution or
paper or any further act on the part of any of the parties hereto, anything herein to the cont
notwithstanding; provided, however, that the successor or surviving Person to the Master Servi
qualified to service mortgage loans on behalf of Fannie Mae or Freddie Mac; and provided furth
Rating Agency's ratings, if any, of the Senior (in the case of the Insured Certificates (as de
Series Supplement), such determination shall be made without giving effect to the Certificate
defined in the Series Supplement)), Class M or Class B Certificates in effect immediately pric
merger or consolidation will not be qualified, reduced or withdrawn as a result thereof (as ev
letter to such effect from each Rating Agency).

(c)      Notwithstanding anything else in this Section 6.02 and Section 6.04 to the contrary, t
Servicer may assign its rights and delegate its duties and obligations under this Agreement; p
the Person accepting such assignment or delegation shall be a Person which is qualified to ser
loans on behalf of Fannie Mae or Freddie Mac, is reasonably satisfactory to the Trustee and th
willing to service the Mortgage Loans and executes and delivers to the Company and the Trustee
in form and substance reasonably satisfactory to the Company and the Trustee, which contains a
such Person of the due and punctual performance and observance of each covenant and condition
or observed by the Master Servicer under this Agreement; provided further that each Rating Age
the Classes of Certificates (in the case of the Insured Certificates (as defined in the Series
such determination shall be made without giving effect to the Certificate Policy (as defined i
Supplement)) that have been rated in effect immediately prior to such assignment and delegatic
qualified, reduced or withdrawn as a result of such assignment and delegation (as evidenced by
such effect from each Rating Agency).  In the case of any such assignment and delegation, the
shall be released from its obligations under this Agreement, except that the Master Servicer s
liable for all liabilities and obligations incurred by it as Master Servicer hereunder prior t
satisfaction of the conditions to such assignment and delegation set forth in the next precedi
Notwithstanding the foregoing, in the event of a pledge or assignment by the Master Servicer s
rights to purchase all assets of the Trust Fund under Section 9.01(a) (or, if so specified in
9.01(a), its rights to purchase the Mortgage Loans and property acquired related to such Mortg
its rights to purchase the Certificates related thereto), the provisos of the first sentence c
paragraph will not apply.

Section 6.03.  Limitation on Liability of the Company,
                the Master Servicer and Others.

        Neither the Company, the Master Servicer nor any of the directors, officers, employees
the Company or the Master Servicer shall be under any liability to the Trust Fund or the Certi
for any action taken or for refraining from the taking of any action in good faith pursuant to
Agreement, or for errors in judgment; provided, however, that this provision shall not protect
the Master Servicer or any such Person against any breach of warranties or representations mad
liability which would otherwise be imposed by reason of willful misfeasance, bad faith or gros
the performance of duties or by reason of reckless disregard of obligations and duties hereund
Company, the Master Servicer and any director, officer, employee or agent of the Company or th
Servicer may rely in good faith on any document of any kind prima facie properly executed and
any Person respecting any matters arising hereunder.  The Company, the Master Servicer and any
officer, employee or agent of the Company or the Master Servicer shall be indemnified by the T
held harmless against any loss, liability or expense incurred in connection with any legal act
this Agreement or the Certificates, other than any loss, liability or expense related to any s
Mortgage Loan or Mortgage Loans (except as any such loss, liability or expense shall be otherw
reimbursable pursuant to this Agreement) and any loss, liability or expense incurred by reason
misfeasance, bad faith or gross negligence in the performance of duties hereunder or by reason
disregard of obligations and duties hereunder.

        Neither the Company nor the Master Servicer shall be under any obligation to appear in

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 106 of 180

defend any legal or administrative action, proceeding, hearing or examination that is not inci
respective duties under this Agreement and which in its opinion may involve it in any expense
provided, however, that the Company or the Master Servicer may in its discretion undertake any
proceeding, hearing or examination that it may deem necessary or desirable in respect to this
the rights and duties of the parties hereto and the interests of the Certificateholders hereun
event, the legal expenses and costs of such action, proceeding, hearing or examination and any
resulting therefrom shall be expenses, costs and liabilities of the Trust Fund, and the Compar
Master Servicer shall be entitled to be reimbursed therefor out of amounts attributable to the
on deposit in the Custodial Account as provided by Section 3.10 and, on the Distribution Date(
such reimbursement, the aggregate of such expenses and costs shall be allocated in reduction o
Certificate Interest on each Class entitled thereto in the same manner as if such expenses and
constituted a Prepayment Interest Shortfall.

Section 6.04.  Company and Master Servicer Not to Resign.

        Subject to the provisions of Section 6.02, neither the Company nor the Master Servicer
from its respective obligations and duties hereby imposed on it except upon determination that
hereunder are no longer permissible under applicable law.  Any such determination permitting t
of the Company or the Master Servicer shall be evidenced by an Opinion of Counsel to such effe
the Trustee.  No such resignation by the Master Servicer shall become effective until the Trus
successor servicer shall have assumed the Master Servicer's responsibilities and obligations i
with Section 7.02.

ARTICLE VII

DEFAULT

Section 7.01.  Events of Default.

        Event of Default, wherever used herein, means any one of the following events (whateve
such Event of Default and whether it shall be voluntary or involuntary or be effected by opera
pursuant to any judgment, decree or order of any court or any order, rule or regulation of any
or governmental body):

(i)      the Master Servicer shall fail to deposit or cause to be deposited into the Certificat
         amounts required to be so deposited therein at the time required pursuant to Section 4
         or the Master Servicer shall fail to distribute or cause to be distributed to the Hold
         Certificates of any Class any distribution required to be made under the terms of the
         such Class and this Agreement and, in each case, such failure shall continue unremedie
         of 5 days after the date upon which written notice of such failure, requiring such fai
         remedied, shall have been given to the Master Servicer by the Trustee or the Company o
         Servicer, the Company and the Trustee by the Holders of Certificates of such Class evi
         Percentage Interests aggregating not less than 25%; or

(ii)     the Master Servicer shall fail to observe or perform in any material respect any other
         covenants or agreements on the part of the Master Servicer contained in the Certificat
         or in this Agreement and such failure shall continue unremedied for a period of 30 day
         such number of days shall be 15 in the case of a failure to pay the premium for any Re
         Policy) after the date on which written notice of such failure, requiring the same to
         shall have been given to the Master Servicer by the Trustee or the Company, or to the
         the Company and the Trustee by the Holders of Certificates of any Class evidencing, in
         such Class, Percentage Interests aggregating not less than 25%; or

(iii)    a decree or order of a court or agency or supervisory authority having jurisdiction in
         an involuntary case under any present or future federal or state bankruptcy, insolven
         or appointing a conservator or receiver or liquidator in any insolvency, readjustment
         marshalling of assets and liabilities or similar proceedings, or for the winding-up of
         its affairs, shall have been entered against the Master Servicer and such decree or or
         remained in force undischarged or unstayed for a period of 60 days; or

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

(iv)    the Master Servicer shall consent to the appointment of a conservator or receiver or l
        insolvency, readjustment of debt, marshalling of assets and liabilities, or similar pr
        relating to, the Master Servicer or of, or relating to, all or substantially all of th
        the Master Servicer; or

(v)     the Master Servicer shall admit in writing its inability to pay its debts generally as
        due, file a petition to take advantage of, or commence a voluntary case under, any app
        insolvency or reorganization statute, make an assignment for the benefit of its credit
        voluntarily suspend payment of its obligations; or

(vi)    the Master Servicer shall notify the Trustee pursuant to Section 4.04(b) that it is un
        in the Certificate Account an amount equal to the Advance.

        If an Event of Default in clauses (i)-(v) of this Section shall occur, then,
every such case, so long as such Event of Default shall not have been remedied, either the Com
Trustee may, and at the direction of Holders of Certificates entitled to at least 51% of the V
the Trustee shall, by notice in writing to the Master Servicer (and to the Company if given by
to the Trustee if given by the Company), terminate all of the rights and obligations of the Ma
under this Agreement and in and to the Mortgage Loans and the proceeds thereof, other than its
Certificateholder hereunder.  If an Event of Default described in clause (vi) hereof shall occ
shall, by notice to the Master Servicer and the Company, immediately terminate all of the righ
obligations of the Master Servicer under this Agreement and in and to the Mortgage Loans and p
thereof, other than its rights as a Certificateholder hereunder as provided in Section 4.04(b)
the receipt by the Master Servicer of such written notice, all authority and power of the Mast
under this Agreement, whether with respect to the Certificates (other than as a Holder thereof
Mortgage Loans or otherwise, shall subject to Section 7.02 pass to and be vested in the Truste
Trustee's designee appointed pursuant to Section 7.02; and, without limitation, the Trustee is
authorized and empowered to execute and deliver, on behalf of the Master Servicer, as attorney
otherwise, any and all documents and other instruments, and to do or accomplish all other acts
necessary or appropriate to effect the purposes of such notice of termination, whether to comp
transfer and endorsement or assignment of the Mortgage Loans and related documents, or otherwi
Servicer agrees to cooperate with the Trustee in effecting the termination of the Master Servi
responsibilities and rights hereunder, including, without limitation, the transfer to the Trus
designee for administration by it of all cash amounts which shall at the time be credited to t
Account or the Certificate Account or thereafter be received with respect to the Mortgage Loan
termination shall release the Master Servicer for any liability that it would otherwise have h
any act or omission prior to the effective time of such termination.

        Notwithstanding any termination of the activities of Residential Funding in its capaci
Servicer hereunder, Residential Funding shall be entitled to receive, out of any late collecti
Payment on a Mortgage Loan which was due prior to the notice terminating Residential Funding's
obligations as Master Servicer hereunder and received after such notice, that portion to which
Funding would have been entitled pursuant to Sections 3.10(a)(ii), (vi) and (vii) as well as i
Fee in respect thereof, and any other amounts payable to Residential Funding hereunder the ent
which arose prior to the termination of its activities hereunder.  Upon the termination of Res
Funding as Master Servicer hereunder the Company shall deliver to the Trustee a copy of the Pr

Section 7.02.  Trustee or Company to Act; Appointment of Successor.

(a)     On and after the time the Master Servicer receives a notice of termination pursuant to
resigns in accordance with Section 6.04, the Trustee or, upon notice to the Company and with t
consent (which shall not be unreasonably withheld) a designee (which meets the standards set f
the Trustee, shall be the successor in all respects to the Master Servicer in its capacity as
this Agreement and the transactions set forth or provided for herein and shall be subject to a
responsibilities, duties and liabilities relating thereto placed on the Master Servicer (excep
responsibilities, duties and liabilities contained in Sections 2.02 and 2.03(a), excluding the
related Subservicers or Sellers as set forth in such Sections, and its obligations to deposit
respect of losses incurred prior to such notice or termination on the investment of funds in t
Account or the Certificate Account pursuant to Sections 3.07(c) and 4.01(b) by the terms and p
hereof); provided, however, that any failure to perform such duties or responsibilities caused
preceding Master Servicer's failure to provide information required by Section 4.04 shall not
default by the Trustee hereunder.  As compensation therefor, the Trustee shall be entitled to
relating to the Mortgage Loans which the Master Servicer would have been entitled to charge to
Account or the Certificate Account if the Master Servicer had continued to act hereunder and,
shall be entitled to the income from any Permitted Investments made with amounts attributable
Loans held in the Custodial Account or the Certificate Account.  If the Trustee has become the
the Master Servicer in accordance with Section 6.04 or Section 7.01, then notwithstanding the

Trustee may, if it shall be unwilling to so act, or shall, if it is unable to so act, appoint, court of competent jurisdiction to appoint, any established housing and home finance instituti also a Fannie Mae- or Freddie Mac-approved mortgage servicing institution, having a net worth than $10,000,000 as the successor to the Master Servicer hereunder in the assumption of all or the responsibilities, duties or liabilities of the Master Servicer hereunder.  Pending appoint successor to the Master Servicer hereunder, the Trustee shall become successor to the Master S shall act in such capacity as hereinabove provided.  In connection with such appointment and a Trustee may make such arrangements for the compensation of such successor out of payments on N as it and such successor shall agree; provided, however, that no such compensation shall be in permitted the initial Master Servicer hereunder.  The Company, the Trustee, the Custodian and shall take such action, consistent with this Agreement, as shall be necessary to effectuate an succession.  The Servicing Fee for any successor Master Servicer appointed pursuant to this Se be lowered with respect to those Mortgage Loans, if any, where the Subservicing Fee accrues at than 0.20% per annum in the event that the successor Master Servicer is not servicing such Mor directly and it is necessary to raise the related Subservicing Fee to a rate of 0.20% per annu hire a Subservicer with respect to such Mortgage Loans.  The Master Servicer shall pay the rea expenses of the Trustee in connection with any servicing transition hereunder.

(b)    In connection with the termination or resignation of the Master Servicer hereunde the successor Master Servicer, including the Trustee if the Trustee is acting as successor Mas shall represent and warrant that it is a member of MERS in good standing and shall agree to co material respects with the rules and procedures of MERS in connection with the servicing of th Loans that are registered with MERS, in which case the predecessor Master Servicer shall coope successor Master Servicer in causing MERS to revise its records to reflect the transfer of ser successor Master Servicer as necessary under MERS' rules and regulations, or (ii) the predeces Servicer shall cooperate with the successor Master Servicer in causing MERS to execute and del assignment of Mortgage in recordable form to transfer the Mortgage from MERS to the Trustee an and deliver such other notices, documents and other instruments as may be necessary or desirab transfer of such Mortgage Loan or servicing of such Mortgage Loan on the MERS(R)System to the Servicer.  The predecessor Master Servicer shall file or cause to be filed any such assignment appropriate recording office.  The predecessor Master Servicer shall bear any and all fees of preparing any assignments of Mortgage, and fees and costs of filing any assignments of Mortga required under this subsection (b).  The successor Master Servicer shall cause such assignment delivered to the Trustee or the Custodian promptly upon receipt of the original with evidence thereon or a copy certified by the public recording office in which such assignment was recor

Section 7.03.    Notification to Certificateholders.

(a)    Upon any such termination or appointment of a successor to the Master Servicer, the Tr prompt written notice thereof to the Certificateholders at their respective addresses appearin Certificate Register.

(b)    Within 60 days after the occurrence of any Event of Default, the Trustee shall transmi Holders of Certificates notice of each such Event of Default hereunder known to the Trustee, u Event of Default shall have been cured or waived.

Section 7.04.    Waiver of Events of Default.

The Holders representing at least 66% of the Voting Rights affected by a default or Ev hereunder may waive such default or Event of Default; provided, however, that (a) a default or Default under clause (i) of Section 7.01 may be waived only by all of the Holders of Certifica such default or Event of Default and (b) no waiver pursuant to this Section 7.04 shall affect Certificates in the manner set forth in Section 11.01(b)(i) or (ii).  Upon any such waiver of Event of Default by the Holders representing the requisite percentage of Voting Rights affecte default or Event of Default, such default or Event of Default shall cease to exist and shall b have been remedied for every purpose hereunder.  No such waiver shall extend to any subsequent default or Event of Default or impair any right consequent thereon except to the extent expres

ARTICLE VIII

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 109 of 180

CONCERNING THE TRUSTEE

Section 8.01.  Duties of Trustee.

(a)    The Trustee, prior to the occurrence of an Event of Default and after the curing or wa
Events of Default which may have occurred, undertakes to perform such duties and only such dut
specifically set forth in this Agreement.  In case an Event of Default has occurred (which has
or waived), the Trustee shall exercise such of the rights and powers vested in it by this Agre
the same degree of care and skill in their exercise as a prudent investor would exercise or us
circumstances in the conduct of such investor's own affairs.

(b)    The Trustee, upon receipt of all resolutions, certificates, statements, opinions, repo
orders or other instruments furnished to the Trustee which are specifically required to be fur
to any provision of this Agreement, shall examine them to determine whether they conform to th
of this Agreement.  The Trustee shall notify the Certificateholders of any such documents whic
materially conform to the requirements of this Agreement in the event that the Trustee, after
does not receive satisfactorily corrected documents.

The Trustee shall forward or cause to be forwarded in a timely fashion the notices, re
statements required to be forwarded by the Trustee pursuant to Sections 4.03, 4.06, 7.03 and 1
Trustee shall furnish in a timely fashion to the Master Servicer such information as the Maste
reasonably request from time to time for the Master Servicer to fulfill its duties as set fort
Agreement.  The Trustee covenants and agrees that it shall perform its obligations hereunder i
as to maintain the status of any portion of any REMIC formed under the Series Supplement as a
REMIC Provisions and (subject to Section 10.01(f)) to prevent the imposition of any federal, s
income, prohibited transaction, contribution or other tax on the Trust Fund to the extent that
such status and avoiding such taxes are reasonably within the control of the Trustee and are i
within the scope of its duties under this Agreement.

(c)    No provision of this Agreement shall be construed to relieve the Trustee from liabilit
negligent action, its own negligent failure to act or its own willful misconduct; provided, ho

(i)    Prior to the occurrence of an Event of Default, and after the curing or waiver of all
       Default which may have occurred, the duties and obligations of the Trustee shall be de
       by the express provisions of this Agreement, the Trustee shall not be liable except fo
       performance of such duties and obligations as are specifically set forth in this Agree
       covenants or obligations shall be read into this Agreement against the Trustee and, in
       bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the tru
       statements and the correctness of the opinions expressed therein, upon any certificate
       furnished to the Trustee by the Company or the Master Servicer and which on their face
       contradict the requirements of this Agreement;

(ii)   The Trustee shall not be personally liable for an error of judgment made in good faith
       Responsible Officer or Responsible Officers of the Trustee, unless it shall be proved
       was negligent in ascertaining the pertinent facts;

(iii)  The Trustee shall not be personally liable with respect to any action taken, suffered
       taken by it in good faith in accordance with the direction of Certificateholders of an
       Certificates which evidence, as to such Class, Percentage Interests aggregating not le
       to the time, method and place of conducting any proceeding for any remedy available to
       exercising any trust or power conferred upon the Trustee, under this Agreement;

(iv)   The Trustee shall not be charged with knowledge of any default (other than a default i
       Trustee) specified in clauses (i) and (ii) of Section 7.01 or an Event of Default unde
       (iv) and (v) of Section 7.01 unless a Responsible Officer of the Trustee assigned to a
       the Corporate Trust Office obtains actual knowledge of such failure or event or the Tr
       written notice of such failure or event at its Corporate Trust Office from the Master
       Company or any Certificateholder; and

(v)    Except to the extent provided in Section 7.02, no provision in this Agreement shall re
       Trustee to expend or risk its own funds (including, without limitation, the making of
       otherwise incur any personal financial liability in the performance of any of its duti
       hereunder, or in the exercise of any of its rights or powers, if the Trustee shall hav
       grounds for believing that repayment of funds or adequate indemnity against such risk
       not reasonably assured to it.

(d)      The Trustee shall timely pay, from its own funds, the amount of any and all federal, s
taxes imposed on the Trust Fund or its assets or transactions including, without limitation, (
transaction) penalty taxes as defined in Section 860F of the Code, if, when and as the same sh
payable, (B) any tax on contributions to a REMIC after the Closing Date imposed by Section 860
Code and (C) any tax on "net income from foreclosure property" as defined in Section 860G(c) o
only if such taxes arise out of a breach by the Trustee of its obligations hereunder, which br
constitutes negligence or willful misconduct of the Trustee.

Section 8.02.    Certain Matters Affecting the Trustee.

(a)      Except as otherwise provided in Section 8.01:

(i)      The Trustee may rely and shall be protected in acting or refraining from acting upon a
         Officers' Certificate, certificate of auditors or any other certificate, statement, in
         opinion, report, notice, request, consent, order, appraisal, bond or other paper or do
         by it to be genuine and to have been signed or presented by the proper party or partie

(ii)     The Trustee may consult with counsel and any Opinion of Counsel shall be full and comp
         authorization and protection in respect of any action taken or suffered or omitted by
         good faith and in accordance with such Opinion of Counsel;

(iii)    The Trustee shall be under no obligation to exercise any of the trusts or powers veste
         Agreement or to institute, conduct or defend any litigation hereunder or in relation h
         request, order or direction of any of the Certificateholders, pursuant to the provisio
         Agreement, unless such Certificateholders shall have offered to the Trustee reasonable
         indemnity against the costs, expenses and liabilities which may be incurred therein or
         nothing contained herein shall, however, relieve the Trustee of the obligation, upon t
         an Event of Default (which has not been cured or waived), to exercise such of the righ
         vested in it by this Agreement, and to use the same degree of care and skill in their
         prudent investor would exercise or use under the circumstances in the conduct of such
         affairs;

(iv)     The Trustee shall not be personally liable for any action taken, suffered or omitted b
         faith and believed by it to be authorized or within the discretion or rights or powers
         it by this Agreement;

(v)      Prior to the occurrence of an Event of Default hereunder and after the curing or waive
         of Default which may have occurred, the Trustee shall not be bound to make any investi
         facts or matters stated in any resolution, certificate, statement, instrument, opinion
         notice, request, consent, order, approval, bond or other paper or document, unless req
         writing so to do by Holders of Certificates of any Class evidencing, as to such Class,
         Interests, aggregating not less than 50%; provided, however, that if the payment withi
         time to the Trustee of the costs, expenses or liabilities likely to be incurred by it
         such investigation is, in the opinion of the Trustee, not reasonably assured to the Tr
         security afforded to it by the terms of this Agreement, the Trustee may require reason
         against such expense or liability as a condition to so proceeding.  The reasonable exp
         such examination shall be paid by the Master Servicer, if an Event of Default shall ha
         is continuing, and otherwise by the Certificateholder requesting the investigation;

(vi)     The Trustee may execute any of the trusts or powers hereunder or perform any duties he
         directly or by or through agents or attorneys; and

(vii)    To the extent authorized under the Code and the regulations promulgated thereunder, ea
         Class R Certificate hereby irrevocably appoints and authorizes the Trustee to be its a
         for purposes of signing any Tax Returns required to be filed on behalf of the Trust Fu
         shall sign on behalf of the Trust Fund and deliver to the Master Servicer in a timely
         Returns prepared by or on behalf of the Master Servicer that the Trustee is required t
         determined by the Master Servicer pursuant to applicable federal, state or local tax l
         that the Master Servicer shall indemnify the Trustee for signing any such Tax Returns
         errors or omissions.

(b)      Following the issuance of the Certificates, the Trustee shall not accept any contribut
the Trust Fund unless (subject to Section 10.01(f)) it shall have obtained or been furnished w
of Counsel to the effect that such contribution will not (i) cause any portion of any REMIC fo
Series Supplement to fail to qualify as a REMIC at any time that any Certificates are outstand
cause the Trust Fund to be subject to any federal tax as a result of such contribution (includ
imposition of any federal tax on "prohibited transactions" imposed under Section 860F(a) of th

Section 8.03.  Trustee Not Liable for Certificates or Mortgage Loans.

The recitals contained herein and in the Certificates (other than the execution of the
and relating to the acceptance and receipt of the Mortgage Loans) shall be taken as the statem
Company or the Master Servicer as the case may be, and the Trustee assumes no responsibility f
correctness.  The Trustee makes no representations as to the validity or sufficiency of this A
the Certificates (except that the Certificates shall be duly and validly executed and authenti
Certificate Registrar) or of any Mortgage Loan or related document, or of MERS or the MERS(R)S
as otherwise provided herein, the Trustee shall not be accountable for the use or application
or the Master Servicer of any of the Certificates or of the proceeds of such Certificates, or
application of any funds paid to the Company or the Master Servicer in respect of the Mortgage
deposited in or withdrawn from the Custodial Account or the Certificate Account by the Company
Servicer.

Section 8.04.  Trustee May Own Certificates.

The Trustee in its individual or any other capacity may become the owner or pledgee of
with the same rights it would have if it were not Trustee.

Section 8.05.  Master Servicer to Pay Trustee's Fees
             and Expenses; Indemnification.

(a)     The Master Servicer covenants and agrees to pay to the Trustee and any co-trustee from
and the Trustee and any co-trustee shall be entitled to, reasonable compensation (which shall
by any provision of law in regard to the compensation of a trustee of an express trust) for al
rendered by each of them in the execution of the trusts hereby created and in the exercise and
any of the powers and duties hereunder of the Trustee and any co-trustee, and the Master Servi
reimburse the Trustee and any co-trustee upon request for all reasonable expenses, disbursemer
incurred or made by the Trustee or any co-trustee in accordance with any of the provisions of
(including the reasonable compensation and the expenses and disbursements of its counsel and c
not regularly in its employ, and the expenses incurred by the Trustee or any co-trustee in cor
the appointment of an office or agency pursuant to Section 8.12) except any such expense, disb
advance as may arise from its negligence or bad faith.

(b)     The Master Servicer agrees to indemnify the Trustee for, and to hold the Trustee harml
loss, liability or expense incurred without negligence or willful misconduct on the Trustee's
out of, or in connection with, the acceptance and administration of the Trust Fund, including
expenses (including reasonable legal fees and expenses) of defending itself against any claim
with the exercise or performance of any of its powers or duties under this Agreement and the C
Agreement, and the Master Servicer further agrees to indemnify the Trustee for, and to hold th
harmless against, any loss, liability or expense arising out of, or in connection with, the pr
forth in the second paragraph of Section 2.01(c) hereof, including, without limitation, all co
liabilities and expenses (including reasonable legal fees and expenses) of investigating and c
against any claim, action or proceeding, pending or threatened, relating to the provisions of
provided that:

(i)     with respect to any such claim, the Trustee shall have given the Master Servicer writt
        thereof promptly after the Trustee shall have actual knowledge thereof;

(ii)    while maintaining control over its own  defense, the Trustee shall cooperate and consu
        the Master Servicer in preparing such defense; and

(iii)   notwithstanding anything in this Agreement to the contrary, the Master Servicer shall
        for settlement of any claim by the Trustee entered into without the prior consent of t
        Servicer which consent shall  not be unreasonably withheld.

No termination of this Agreement shall affect the obligations created by this Section 8.05(b)
Servicer to indemnify the Trustee under the conditions and to the extent set forth herein.

Notwithstanding the foregoing, the indemnification provided by the Master Servicer in
8.05(b) shall not be available (A) for any loss, liability or expense of the Trustee, includir
expenses of defending itself against any claim, incurred in connection with any actions taken
at the direction of the Certificateholders pursuant to the terms of this Agreement or (B) wher
is required to indemnify the Master Servicer pursuant to Section 12.05(a).

Section 8.06.  Eligibility Requirements for Trustee.

The Trustee hereunder shall at all times be a corporation or a national banking associ

principal office in a state and city acceptable to the Company and organized and doing busines
laws of such state or the United States of America, authorized under such laws to exercise con
powers, having a combined capital and surplus of at least $50,000,000, subject to supervision
by federal or state authority and the short-term rating of such institution shall be A-1 in th
Standard & Poor's if Standard & Poor's is a Rating Agency.  If such corporation or national ba
association publishes reports of condition at least annually, pursuant to law or to the requi
aforesaid supervising or examining authority, then for the purposes of this Section the combin
surplus of such corporation shall be deemed to be its combined capital and surplus as set fort
recent report of condition so published.  In case at any time the Trustee shall cease to be el
accordance with the provisions of this Section, the Trustee shall resign immediately in the ma
the effect specified in Section 8.07.

Section 8.07.  Resignation and Removal of the Trustee.

(a)     The Trustee may at any time resign and be discharged from the trusts hereby created by
notice thereof to the Company.  Upon receiving such notice of resignation, the Company shall p
a successor trustee by written instrument, in duplicate, one copy of which instrument shall be
the resigning Trustee and one copy to the successor trustee.  If no successor trustee shall ha
appointed and have accepted appointment within 30 days after the giving of such notice of resi
resigning Trustee may petition any court of competent jurisdiction for the appointment of a su

(b)     If at any time the Trustee shall cease to be eligible in accordance with the provision
8.06 and shall fail to resign after written request therefor by the Company, or if at any time
shall become incapable of acting, or shall be adjudged bankrupt or insolvent, or a receiver of
of its property shall be appointed, or any public officer shall take charge or control of the
its property or affairs for the purpose of rehabilitation, conservation or liquidation, then t
remove the Trustee and appoint a successor trustee by written instrument, in duplicate, one co
instrument shall be delivered to the Trustee so removed and one copy to the successor trustee.
in the event that the Company determines that the Trustee has failed (i) to distribute or caus
distributed to the Certificateholders any amount required to be distributed hereunder, if such
by the Trustee or its Paying Agent (other than the Master Servicer or the Company) for distrib
to otherwise observe or perform in any material respect any of its covenants, agreements or ob
hereunder, and such failure shall continue unremedied for a period of 5 days (in respect of cl
or 30 days (in respect of clause (ii) above other than any failure to comply with the provisio
XII, in which case no notice or grace period shall be applicable) after the date on which writ
such failure, requiring that the same be remedied, shall have been given to the Trustee by the
the Company may remove the Trustee and appoint a successor trustee by written instrument deliv
provided in the preceding sentence.  In connection with the appointment of a successor trustee
the preceding sentence, the Company shall, on or before the date on which any such appointment
effective, obtain from each Rating Agency written confirmation that the appointment of any suc
trustee will not result in the reduction of the ratings on any class of the Certificates below
the then current or original ratings on such Certificates.

(c)     The Holders of Certificates entitled to at least 51% of the Voting Rights may at any t
Trustee and appoint a successor trustee by written instrument or instruments, in triplicate, s
Holders or their attorneys-in-fact duly authorized, one complete set of which instruments shal
to the Company, one complete set to the Trustee so removed and one complete set to the success

(d)     Any resignation or removal of the Trustee and appointment of a successor trustee pursu
the provisions of this Section shall become effective upon acceptance of appointment by the su
as provided in Section 8.08.

Section 8.08.  Successor Trustee.

(a)     Any successor trustee appointed as provided in  Section 8.07 shall execute, acknowledg
the Company and to its predecessor trustee an instrument accepting such appointment hereunder,
the resignation or removal of the predecessor trustee shall become effective and such successo
become effective and such successor trustee, without any further act, deed or conveyance, shal
vested with all the rights, powers, duties and obligations of its predecessor hereunder, with
as if originally named as trustee herein.  The predecessor trustee shall deliver to the succes
Mortgage Files and related documents and statements held by it hereunder (other than any Mortg
the time held by a Custodian, which shall become the agent of any successor trustee hereunder)
Company, the Master Servicer and the predecessor trustee shall execute and deliver such instru
such other things as may reasonably be required for more fully and certainly vesting and confi
successor trustee all such rights, powers, duties and obligations.

(b)     No successor trustee shall accept appointment as provided in this Section unless at th
acceptance such successor trustee shall be eligible under the provisions of Section 8.06.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 113 of 180

(c)    Upon acceptance of appointment by a successor trustee as provided in this Section, the mail notice of the succession of such trustee hereunder to all Holders of Certificates at thei shown in the Certificate Register.  If the Company fails to mail such notice within 10 days af of appointment by the successor trustee, the successor trustee shall cause such notice to be n expense of the Company.

Section 8.09.    Merger or Consolidation of Trustee.

Any corporation or national banking association into which the Trustee may be merged o with which it may be consolidated or any corporation or national  banking association resultin merger, conversion or consolidation to which the Trustee shall be a party, or any corporation banking association succeeding to the business of the Trustee, shall be the successor of the T hereunder, provided such corporation or national banking association shall be eligible under t of Section 8.06, without the execution or filing of any paper or any further act on the part o parties hereto, anything herein to the contrary notwithstanding.  The Trustee shall mail notic merger or consolidation to the Certificateholders at their address as shown in the Certificate

Section 8.10.    Appointment of Co-Trustee or Separate Trustee.

(a)    Notwithstanding any other provisions hereof, at any time, for the purpose of meeting a requirements of any jurisdiction in which any part of the Trust Fund or property securing the time be located, the Master Servicer and the Trustee acting jointly shall have the power and s and deliver all instruments to appoint one or more Persons approved by the Trustee to act as c co-trustees, jointly with the Trustee, or separate trustee or separate trustees, of all or any Trust Fund, and to vest in such Person or Persons, in such capacity, such title to the Trust F part thereof, and, subject to the other provisions of this Section 8.10, such powers, duties, rights and trusts as the Master Servicer and the Trustee may consider necessary or desirable. Servicer shall not have joined in such appointment within 15 days after the receipt by it of a do, or in case an Event of Default shall have occurred and be continuing, the Trustee alone sh power to make such appointment.  No co-trustee or separate trustee hereunder shall be required terms of eligibility as a successor trustee under Section 8.06 hereunder and no notice to Hold Certificates of the appointment of co-trustee(s) or separate trustee(s) shall be required unde hereof.

(b)    In the case of any appointment of a co-trustee or separate trustee pursuant to this Se rights, powers, duties and obligations conferred or imposed upon the Trustee shall be conferre upon and exercised or performed by the Trustee, and such separate trustee or co-trustee jointl the extent that under any law of any jurisdiction in which any particular act or acts are to b (whether as Trustee hereunder or as successor to the Master Servicer hereunder), the Trustee s incompetent or unqualified to perform such act or acts, in which event such rights, powers, du obligations (including the holding of title to the Trust Fund or any portion thereof in any su jurisdiction) shall be exercised and performed by such separate trustee or co-trustee at the d Trustee.

(c)    Any notice, request or other writing given to the Trustee shall be deemed to have been of the then separate trustees and co-trustees, as effectively as if given to each of them.  Ev appointing any separate trustee or co-trustee shall refer to this Agreement and the conditions Article VIII.  Each separate trustee and co-trustee, upon its acceptance of the trusts conferr vested with the estates or property specified in its instrument of appointment, either jointly Trustee or separately, as may be provided therein, subject to all the provisions of this Agree specifically including every provision of this Agreement relating to the conduct of, affecting of, or affording protection to, the Trustee.  Every such instrument shall be filed with the Tr

(d)    Any separate trustee or co-trustee may, at any time, constitute the Trustee, its agent attorney-in-fact, with full power and authority, to the extent not prohibited by law, to do an under or in respect of this Agreement on its behalf and in its name.  If any separate trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, r and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, with appointment of a new or successor trustee.

Section 8.11.    Appointment of Custodians.

The Trustee may, with the consent of the Master Servicer and the Company, or shall, at of the Company and the Master Servicer, appoint one or more Custodians who are not Affiliates the Master Servicer or any Seller to hold all or a portion of the Mortgage Files as agent for entering into a Custodial Agreement.  Subject to Article VIII, the Trustee agrees to comply wi each Custodial Agreement and to enforce the terms and provisions thereof against the Custodian

benefit of the Certificateholders.  Each Custodian shall be a depository institution subject t
by federal or state authority, shall have a combined capital and surplus of at least $15,000,(
qualified to do business in the jurisdiction in which it holds any Mortgage File.  Each Custoc
may be amended only as provided in Section 11.01.  The Trustee shall notify the Certificatehol
appointment of any Custodian (other than the Custodian appointed as of the Closing Date) pursu
Section 8.11.

Section 8.12.  Appointment of Office or Agency.

        The Trustee will maintain an office or agency in the United States at the address desi
Section 11.05 of the Series Supplement where Certificates may be surrendered for registration
exchange. The Trustee will maintain an office at the address stated in Section 11.05 of the Se
where notices and demands to or upon the Trustee in respect of this Agreement may be served.

---

ARTICLE IX

TERMINATION OR OPTIONAL PURCHASE OF ALL CERTIFICATES

Section 9.01.  Optional Purchase by the Master Servicer of All Certificates; Termination Upon
            Master Servicer or Liquidation of All Mortgage Loans

(a)      Subject to Section 9.02, the respective obligations and responsibilities of the Compar
Servicer and the Trustee created hereby in respect of the Certificates (other than the obligat
Trustee to make certain payments after the Final Distribution Date to Certificateholders and t
of the Company to send certain notices as hereinafter set forth) shall terminate upon the last
required to be taken by the Trustee on the Final Distribution Date pursuant to this Article IX
earlier of:

(i)      the later of the final payment or other liquidation (or any Advance with respect there
        Mortgage Loan remaining in the Trust Fund or the disposition of all property acquired
        or deed in lieu of foreclosure of any Mortgage Loan, or

(ii)     the purchase by the Master Servicer of all Mortgage Loans and all property acquired in
        Mortgage Loan remaining in the Trust Fund at a price equal to 100% of the unpaid princ
        each Mortgage Loan or, if less than such unpaid principal balance, the fair market val
        related underlying property of such Mortgage Loan with respect to Mortgage Loans as tc
        been acquired if such fair market value is less than such unpaid principal balance (ne
        unreimbursed Advances attributable to principal) on the day of repurchase plus accruec
        thereon at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of any Moc
        Loan) to, but not including, the first day of the month in which such repurchase price
        provided, however, that in no event shall the trust created hereby continue beyond the
        21 years from the death of the last survivor of the descendants of Joseph P. Kennedy,
        ambassador of the United States to the Court of St. James, living on the date hereof a
        further that the purchase price set forth above shall be increased as is necessary, as
        the Master Servicer, to avoid disqualification of any portion of any REMIC formed unde
        Supplement as a REMIC.  The purchase price paid by the Master Servicer shall also incl
        owed by Residential Funding pursuant to the last paragraph of Section 4 of the Assignm
        respect of any liability, penalty or expense that resulted from a breach of the Compli
        Representation, that remain unpaid on the date of such purchase.

        The right of the Master Servicer to purchase all the assets of the Trust Fund pursuant
above is conditioned upon the Pool Stated Principal Balance as of the Final Distribution Date,
giving effect to distributions to be made on such Distribution Date, being less than ten perce
Cut-off Date Principal Balance of the Mortgage Loans.

        If such right is exercised by the Master Servicer, the Master Servicer shall be deemed
reimbursed for the full amount of any unreimbursed Advances theretofore made by it with respec
Mortgage Loans.  In addition, the Master Servicer shall provide to the Trustee the certificati
Section 3.15 and the Trustee and any Custodian shall, promptly following payment of the purcha
release to the Master Servicer the Mortgage Files pertaining to the Mortgage Loans being purch

In addition to the foregoing, on any Distribution Date on which the Pool Stated Princi prior to giving effect to distributions to be made on such Distribution Date, is less than ter Cut-off Date Principal Balance of the Mortgage Loans, the Master Servicer shall have the right option, to purchase the Certificates in whole, but not in part, at a price equal to the outsta Certificate Principal Balance of such Certificates plus the sum of Accrued Certificate Interes the related Interest Accrual Period and any previously unpaid Accrued Certificate Interest.  I Servicer exercises this right to purchase the outstanding Certificates, the Master Servicer wi terminate the respective obligations and responsibilities created hereby in respect of the Cei pursuant to this Article IX.

(b)    The Master Servicer shall give the Trustee not less than 40 days' prior Distribution Date on which the Master Servicer anticipates that the final distribution Certificateholders (whether as a result of the exercise by the Master Servicer of its purchase the assets of the Trust Fund or otherwise) or on which the Master Servicer an the Certificates will be purchased (as a result of the exercise by the Master Servicei outstanding Certificates).  Notice of any termination specifying the anticipated Final Date (which shall be a date that would otherwise be a Distribution Date) upon which th Certificateholders may surrender their Certificates to the Trustee (if so required by hereof) for payment of the final distribution and cancellation or notice of any purcha outstanding Certificates, specifying the Distribution Date upon which the Holders may Certificates to the Trustee for payment, shall be given promptly by the Master Service exercising its right to purchase the assets of the Trust Fund or to purchase the outst Certificates), or by the Trustee (in any other case) by letter.  Such notice shall be Master Servicer (if it is exercising its right to purchase the assets of the Trust Fur the outstanding Certificates), or by the Trustee (in any other case) and mailed by the Certificateholders not earlier than the 15th day and not later than the 25th day of th preceding the month of such final distribution specifying:

(iii)    the anticipated Final Distribution Date upon which final payment of the Certificates i be made upon presentation and surrender of Certificates at the office or agency of the designated where required pursuant to this Agreement or, in the case of the purchase I Servicer of the outstanding Certificates, the Distribution Date on which such purchase

(iv)    the amount of any such final payment, or in the case of the purchase of the outstandir the purchase price, in either case, if known, and

(v)    that the Record Date otherwise applicable to such Distribution Date is not applicable, of the Senior Certificates, or in the case of all of the Certificates in connection wi by the Master Servicer of its right to purchase the Certificates, that payment will be presentation and surrender of the Certificates at the office or agency of the Trustee specified.

If the Master Servicer is obligated to give notice to Certificateholders as aforesaid, it shal notice to the Certificate Registrar at the time such notice is given to Certificateholders and Servicer is exercising its rights to purchase the outstanding Certificates, it shall give such Rating Agency at the time such notice is given to Certificateholders. As a result of the exerc Master Servicer of its right to purchase the assets of the Trust Fund, the Master Servicer sha the Certificate Account, before the Final Distribution Date in immediately available funds an the purchase price for the assets of the Trust Fund, computed as provided above.  As a result by the Master Servicer of its right to purchase the outstanding Certificates, the Master Servi deposit in an Eligible Account, established by the Master Servicer on behalf of the Trustee an the Certificate Account in the name of the Trustee in trust for the registered holders of the before the Distribution Date on which such purchase is to occur in immediately available funds equal to the purchase price for the Certificates, computed as above provided, and provide noti deposit to the Trustee.  The Trustee will withdraw from such account the amount specified in s below.

(b)    In the case of the Senior Certificates, upon presentation and surrender of the Certifi Certificateholders thereof, and in the case of the Class M and Class B Certificates, upon pres surrender of the Certificates by the Certificateholders thereof in connection with the exercis Servicer of its right to purchase the Certificates, and otherwise in accordance with Section 4 Trustee shall distribute to the Certificateholders (i) the amount otherwise distributable on s Distribution Date, if not in connection with the Master Servicer's election to repurchase the Trust Fund or the outstanding Certificates, or (ii) if the Master Servicer elected to so repur assets of the Trust Fund or the outstanding Certificates, an amount determined as follows:  (A to each Certificate the outstanding Certificate Principal Balance thereof, plus Accrued Certifi for the related Interest Accrual Period thereon and any previously unpaid Accrued Certificate subject to the priority set forth in Section 4.02(a), and (B) with respect to the Class R Cert

excess of the amounts available for distribution (including the repurchase price specified in
subsection (a) of this Section) over the total amount distributed under the immediately preced
(A).  Notwithstanding the reduction of the Certificate Principal Balance of any Class of Subor
Certificates to zero, such Class will be outstanding hereunder until the termination of the re
obligations and responsibilities of the Company, the Master Servicer and the Trustee hereunder
with Article IX.

(c)     If any Certificateholders shall not surrender their Certificates for final payment and
or before the Final Distribution Date (if so required by the terms hereof), the Trustee shall
cause all funds in the Certificate Account not distributed in final distribution to Certificat
withdrawn therefrom and credited to the remaining Certificateholders by depositing such funds
escrow account for the benefit of such Certificateholders, and the Master Servicer (if it exer
to purchase the assets of the Trust Fund), or the Trustee (in any other case) shall give a sec
notice to the remaining Certificateholders to surrender their Certificates for cancellation an
final distribution with respect thereto.  If within six months after the second notice any Cer
not have been surrendered for cancellation, the Trustee shall take appropriate steps as direct
Master Servicer to contact the remaining Certificateholders concerning surrender of their Cert
costs and expenses of maintaining the escrow account and of contacting Certificateholders shal
of the assets which remain in the escrow account.  If within nine months after the second noti
Certificates shall not have been surrendered for cancellation, the Trustee shall pay to the Ma
all amounts distributable to the holders thereof and the Master Servicer shall thereafter hold
until distributed to such Holders.  No interest shall accrue or be payable to any Certificateh
amount held in the escrow account or by the Master Servicer as a result of such Certificatehol
to surrender its Certificate(s) for final payment thereof in accordance with this Section 9.01

(d)     If any Certificateholders do not surrender their Certificates on or before the Distrib
which a purchase of the outstanding Certificates is to be made, the Trustee shall on such date
funds in the Certificate Account deposited therein by the Master Servicer pursuant to Section
withdrawn therefrom and deposited in a separate escrow account for the benefit of such Certifi
and the Master Servicer shall give a second written notice to such Certificateholders to surre
Certificates for payment of the purchase price therefor.  If within six months after the secon
Certificate shall not have been surrendered for cancellation, the Trustee shall take appropria
directed by the Master Servicer to contact the Holders of such Certificates concerning surrend
Certificates.  The costs and expenses of maintaining the escrow account and of contacting Cert
shall be paid out of the assets which remain in the escrow account.  If within nine months aft
notice any Certificates shall not have been surrendered for cancellation in accordance with th
9.01, the Trustee shall pay to the Master Servicer all amounts distributable to the Holders th
Master Servicer shall thereafter hold such amounts until distributed to such Holders.  No inte
accrue or be payable to any Certificateholder on any amount held in the escrow account or by t
Servicer as a result of such Certificateholder's failure to surrender its Certificate(s) for p
accordance with this Section 9.01.  Any Certificate that is not surrendered on the Distributio
a purchase pursuant to this Section 9.01 occurs as provided above will be deemed to have been
the Holder as of such date will have no rights with respect thereto except to receive the purc
therefor minus any costs and expenses associated with such escrow account and notices allocate
Certificates so purchased or deemed to have been purchased on such Distribution Date shall rem
hereunder until the Master Servicer has terminated the respective obligations and responsibili
hereby in respect of the Certificates pursuant to this Article IX.  The Master Servicer shall
purposes the Holder thereof as of such date.

Section 9.02.  Additional Termination Requirements.

(a)     Each REMIC that comprises the Trust Fund shall be terminated in accordance with the fo
additional requirements, unless (subject to Section 10.01(f)) the Trustee and the Master Servi
received an Opinion of Counsel (which Opinion of Counsel shall not be an expense of the Truste
effect that the failure of each such REMIC to comply with the requirements of this Section 9.0
result in the imposition on the Trust  Fund of taxes on "prohibited transactions," as describe
860F of the Code, or (ii) cause any such REMIC to fail to qualify as a REMIC at any time that
is outstanding:

(i)     The Master Servicer shall establish a 90-day liquidation period for each such REMIC an
first day of such period in a statement attached to the Trust Fund's final Tax Return
Treasury regulations Section 1.860F-1.  The Master Servicer also shall satisfy all of
of a qualified liquidation for a REMIC under Section 860F of the Code and regulations

(ii)    The Master Servicer shall notify the Trustee at the commencement of such 90-day liquid
and, at or prior to the time of making of the final payment on the Certificates, the T
sell or otherwise dispose of all of the remaining assets of the Trust Fund in accordan
terms hereof; and

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 117 of 180

(iii)    If the Master Servicer or the Company is exercising its right to purchase the assets of
Fund, the Master Servicer shall, during the 90-day liquidation period and at or prior
Distribution Date, purchase all of the assets of the Trust Fund for cash.

(b)    Each Holder of a Certificate and the Trustee hereby irrevocably approves and appoints
Servicer as its attorney-in-fact to adopt a plan of complete liquidation for each REMIC at the
Trust Fund in accordance with the terms and conditions of this Agreement.

Section 9.03.    Termination of Multiple REMICs.

If the REMIC Administrator makes two or more separate REMIC elections, the applicab
terminated on the earlier of the Final Distribution Date and the date on which it is deeme
last deemed distributions on the related Uncertificated REMIC Regular Interests and the last
on the Certificates is made.

ARTICLE X

REMIC PROVISIONS

Section 10.01. REMIC Administration.

(a)    The REMIC Administrator shall make an election to treat the Trust Fund as one or more
Code and, if necessary, under applicable state law. The assets of each such REMIC will be set
Series Supplement. Such election will be made on Form 1066 or other appropriate federal tax o
return (including Form 8811) or any appropriate state return for the taxable year ending on th
the calendar year in which the Certificates are issued. For the purposes of each REMIC electi
of the Trust Fund, Certificates and interests to be designated as the "regular interests" and
of "residual interests" in the REMIC will be set forth in Section 10.03 of the Series Suppleme
Administrator and the Trustee shall not permit the creation of any "interests" (within the mea
860G of the Code) in any REMIC elected in respect of the Trust Fund other than the "regular in
"residual interests" so designated.

(b)    The Closing Date is hereby designated as the "startup day" of the Trust Fund within th
Section 860G(a)(9) of the Code.

(c)    The REMIC Administrator shall hold a Class R Certificate representing a 0.01% Percenta
Class of the Class R Certificates and shall be designated as "the tax matters person" with res
REMIC in the manner provided under Treasury regulations section 1.860F-4(d) and Treasury regul
301.6231(a)(7)-1. The REMIC Administrator, as tax matters person, shall (i) act on behalf of e
relation to any tax matter or controversy involving the Trust Fund and (ii) represent the Trus
administrative or judicial proceeding relating to an examination or audit by any governmental
authority with respect thereto. The legal expenses, including without limitation attorneys' o
fees, and costs of any such proceeding and any liability resulting therefrom shall be expenses
Fund and the REMIC Administrator shall be entitled to reimbursement therefor out of amounts at
the Mortgage Loans on deposit in the Custodial Account as provided by Section 3.10 unless such
and costs are incurred by reason of the REMIC Administrator's willful misfeasance, bad faith o
negligence. If the REMIC Administrator is no longer the Master Servicer hereunder, at its opt
Administrator may continue its duties as REMIC Administrator and shall be paid reasonable comp
exceed $3,000 per year by any successor Master Servicer hereunder for so acting as the REMIC A

(d)    The REMIC Administrator shall prepare or cause to be prepared all of the Tax Returns t
determines are required with respect to each REMIC created hereunder and deliver such Tax Retu
manner to the Trustee and the Trustee shall sign and file such Tax Returns in a timely manner.
of preparing such returns shall be borne by the REMIC Administrator without any right of reimb
therefor. The REMIC Administrator agrees to indemnify and hold harmless the Trustee with resp
or liability arising from the Trustee's signing of Tax Returns that contain errors or omission
and Master Servicer shall promptly provide the REMIC Administrator with such information as th
Administrator may from time to time request for the purpose of enabling the REMIC Administrato

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 118 of 180

Tax Returns.

(e)     The REMIC Administrator shall provide (i) to any Transferor of a Class R Certificate as is necessary for the application of any tax relating to the transfer of a Class R Certifica Person who is not a Permitted Transferee, (ii) to the Trustee, and the Trustee shall forward t Certificateholders, such information or reports as are required by the Code or the REMIC Provi reports relating to interest, original issue discount and market discount or premium (using th Assumption) and (iii) to the Internal Revenue Service the name, title, address and telephone n person who will serve as the representative of each REMIC.

(f)     The Master Servicer and the REMIC Administrator shall take such actions and shall caus created hereunder to take such actions as are reasonably within the Master Servicer's or the R Administrator's control and the scope of its duties more specifically set forth herein as shal or desirable to maintain the status of each REMIC as a REMIC under the REMIC Provisions (and t shall assist the Master Servicer and the REMIC Administrator, to the extent reasonably request Master Servicer and the REMIC Administrator to do so).  The Master Servicer and the REMIC Admi not knowingly or intentionally take any action, cause the Trust Fund to take any action or fai fail to cause to be taken) any action reasonably within their respective control that, under t Provisions, if taken or not taken, as the case may be, could (i) endanger the status of any po REMIC formed under the Series Supplement as a REMIC or (ii) result in the imposition of a tax REMIC (including but not limited to the tax on prohibited transactions as defined in Section 8 the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code) (ei event, in the absence of an Opinion of Counsel or the indemnification referred to in this sent "Adverse REMIC Event") unless the Master Servicer or the REMIC Administrator, as applicable, h Opinion of Counsel (at the expense of the party seeking to take such action or, if such party such expense, and the Master Servicer or the REMIC Administrator, as applicable, determines th action is in the best interest of the Trust Fund and the Certificateholders, at the expense of Fund, but in no event at the expense of the Master Servicer, the REMIC Administrator or the Tr effect that the contemplated action will not, with respect to each REMIC created hereunder, en status or, unless the Master Servicer, the REMIC Administrator or both, as applicable, determi their sole discretion to indemnify the Trust Fund against the imposition of such a tax, result imposition of such a tax. Wherever in this Agreement a contemplated action may not be taken be timing of such action might result in the imposition of a tax on the Trust Fund, or may only b pursuant to an Opinion of Counsel that such action would not impose a tax on the Trust Fund, s nonetheless be taken provided that the indemnity given in the preceding sentence with respect that might be imposed on the Trust Fund has been given and that all other preconditions to the action have been satisfied.  The Trustee shall not take or fail to take any action (whether or hereunder) as to which the Master Servicer or the REMIC Administrator, as applicable, has advi writing that it has received an Opinion of Counsel to the effect that an Adverse REMIC Event c respect to such action.  In addition, prior to taking any action with respect to any REMIC cre or any related assets thereof, or causing any such REMIC to take any action, which is not expr under the terms of this Agreement, the Trustee will consult with the Master Servicer or the RE Administrator, as applicable, or its designee, in writing, with respect to whether such action Adverse REMIC Event to occur with respect to any such REMIC, and the Trustee shall not take an or cause any such REMIC to take any such action as to which the Master Servicer or the REMIC A as applicable, has advised it in writing that an Adverse REMIC Event could occur.  The Master REMIC Administrator, as applicable, may consult with counsel to make such written advice, and same shall be borne by the party seeking to take the action not expressly permitted by this Ag no event at the expense of the Master Servicer or the REMIC Administrator.  At all times as ma by the Code, the Master Servicer will to the extent within its control and the scope of its du specifically set forth herein, maintain substantially all of the assets of each REMIC created "qualified mortgages" as defined in Section 860G(a)(3) of the Code and "permitted investments" Section 860G(a)(5) of the Code.

(g)     In the event that any tax is imposed on "prohibited transactions" of any REMIC created defined in Section 860F(a)(2) of the Code, on "net income from foreclosure property" of any su defined in Section 860G(c) of the Code, on any contributions to any such REMIC after the Start pursuant to Section 860G(d) of the Code, or any other tax is imposed by the Code or any applic of state or local tax laws, such tax shall be charged (i) to the Master Servicer, if such tax Servicer has in its sole discretion determined to indemnify the Trust Fund against such tax, ( Trustee, if such tax arises out of or results from a breach by the Trustee of any of its oblig this Article X, or (iii) otherwise against amounts on deposit in the Custodial Account as prov 3.10 and on the Distribution Date(s) following such reimbursement the aggregate of such taxes allocated in reduction of the Accrued Certificate Interest on each Class entitled thereto in t as if such taxes constituted a Prepayment Interest Shortfall.

(h)     The Trustee and the Master Servicer shall, for federal income tax purposes, maintain b

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 119 of 180

with respect to each REMIC created hereunder on a calendar year and on an accrual basis or as
be required by the REMIC Provisions.

(i)    Following the Startup Day, neither the Master Servicer nor the Trustee shall accept an
of assets to any REMIC created hereunder unless (subject to Section 10.01(f)) the Master Servi
Trustee shall have received an Opinion of Counsel (at the expense of the party seeking to make
contribution) to the effect that the inclusion of such assets in such REMIC will not cause the
to qualify as a REMIC at any time that any Certificates are outstanding or subject the REMIC t
the REMIC Provisions or other applicable provisions of federal, state and local law or ordinar

(j)    Neither the Master Servicer nor the Trustee shall (subject to Section 10.01(f)) enter
arrangement by which any REMIC created hereunder will receive a fee or other compensation for
permit any such REMIC to receive any income from assets other than "qualified mortgages" as de
Section 860G(a)(3) of the Code or "permitted investments" as defined in Section 860G(a)(5) of

(k)    Solely for the purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, th
possible maturity date" by which the Certificate Principal Balance of each Class of Certificat
the Interest Only Certificates) representing a regular interest in the applicable REMIC and th
Uncertificated Principal Balance of each Uncertificated REMIC Regular Interest (other than eac
Uncertificated REMIC Regular Interest represented by a Class A-V Certificate, if any) and the
Interest Only Certificates and Uncertificated REMIC Regular Interest represented by a Class A-
would be reduced to zero is the Maturity Date for each such Certificate and Interest.

(l)    Within 30 days after the Closing Date, the REMIC Administrator shall prepare and file
Internal Revenue Service Form 8811, "Information Return for Real Estate Mortgage Investment Co
and Issuers of Collateralized Debt Obligations" for each REMIC created hereunder.

(m)    Neither the Trustee nor the Master Servicer shall sell, dispose of or substitute for a
Mortgage Loans (except in connection with (i) the default, imminent default or foreclosure of
Loan, including but not limited to, the acquisition or sale of a Mortgaged Property acquired b
of foreclosure, (ii) the bankruptcy of any REMIC created hereunder, (iii) the termination of a
pursuant to Article IX of this Agreement or (iv) a purchase of Mortgage Loans pursuant to Arti
of this Agreement) nor acquire any assets for any such REMIC, nor sell or dispose of any inves
Custodial Account or the Certificate Account for gain nor accept any contributions to any such
the Closing Date unless it has received an Opinion of Counsel that such sale, disposition, sub
acquisition will not (a) affect adversely the status of such REMIC as a REMIC or (b) unless th
Servicer has determined in its sole discretion to indemnify the Trust Fund against such tax, o
to be subject to a tax on "prohibited transactions" or "contributions" pursuant to the REMIC F

Section 10.02. Master Servicer, REMIC Administrator and Trustee Indemnification.

(a)    The Trustee agrees to indemnify the Trust Fund, the Company, the REMIC Administrator a
Servicer for any taxes and costs including, without limitation, any reasonable attorneys fees
incurred by the Trust Fund, the Company or the Master Servicer, as a result of a breach of the
covenants set forth in Article VIII or this Article X.

(b)    The REMIC Administrator agrees to indemnify the Trust Fund, the Company, the Master Se
Trustee for any taxes and costs (including, without limitation, any reasonable attorneys' fees
incurred by the Trust Fund, the Company, the Master Servicer or the Trustee, as a result of a
REMIC Administrator's covenants set forth in this Article X with respect to compliance with th
Provisions, including without limitation, any penalties arising from the Trustee's execution o
prepared by the REMIC Administrator that contain errors or omissions; provided, however, that
will not be imposed to the extent such breach is a result of an error or omission in informati
the REMIC Administrator by the Master Servicer in which case Section 10.02(c) will apply.

(c)    The Master Servicer agrees to indemnify the Trust Fund, the Company, the REMIC Adminis
Trustee for any taxes and costs (including, without limitation, any reasonable attorneys' fees
incurred by the Trust Fund, the Company, the REMIC Administrator or the Trustee, as a result o
the Master Servicer's covenants set forth in this Article X or in Article III with respect to
the REMIC Provisions, including without limitation, any penalties arising from the Trustee's e
Returns prepared by the Master Servicer that contain errors or omissions.

Section 10.03. Designation of REMIC(s).

        As provided in Section 10.03 of the Series Supplement.

Section 10.04. Distributions on the Uncertificated REMIC I and REMIC II Regular Interests.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 120 of 180

As provided in Section 10.04 of the Series Supplement.

Section 10.05. Compliance with Withholding Requirements.

As provided in Section 10.05 of the Series Supplement.

---

ARTICLE XI

MISCELLANEOUS PROVISIONS

Section 11.01. Amendment.

(a)     This Agreement or any Custodial Agreement may be amended from time to time by the Comp
Servicer and the Trustee, without the consent of any of the Certificateholders:

(i)     to cure any ambiguity,

(ii)    to correct or supplement any provisions herein or therein, which may be inconsistent w
        provisions herein or therein or to correct any error,

(iii)   to modify, eliminate or add to any of its provisions to such extent as shall be necess
        to maintain the qualification of the Trust Fund as a REMIC at all times that any Certi
        outstanding or to avoid or minimize the risk of the imposition of any tax on the Trust
        to the Code that would be a claim against the Trust Fund, provided that the Trustee ha
        Opinion of Counsel to the effect that (A) such action is necessary or desirable to mai
        qualification or to avoid or minimize the risk of the imposition of any such tax and (
        will not adversely affect in any material respect the interests of any Certificatehold

(iv)    to change the timing and/or nature of deposits into the Custodial Account or the Certi
        or to change the name in which the Custodial Account is maintained, provided that (A)
        Account Deposit Date shall in no event be later than the related Distribution Date, (B
        shall not, as evidenced by an Opinion of Counsel, adversely affect in any material res
        interests of any Certificateholder and (C) such change shall not result in a reduction
        assigned to any Class of Certificates below the lower of the then-current rating or th
        assigned to such Certificates as of the Closing Date (in the case of the Insured Certi
        defined in the Series Supplement), such determination shall be made without giving eff
        Certificate Policy (as defined in the Series Supplement)), as evidenced by a letter fr
        Agency to such effect,

(v)     to modify, eliminate or add to the provisions of Section 5.02(f) or any other provisic
        restricting transfer of the Class R Certificates, by virtue of their being the "residu
        a REMIC, provided that (A) such change shall not result in reduction of the rating ass
        such Class of Certificates below the lower of the then-current rating or the rating as
        Certificates as of the Closing Date (in the case of the Insured Certificates (as defir
        Supplement), such determination shall be made without giving effect to the Certificate
        defined in the Series Supplement)), as evidenced by a letter from each Rating Agency t
        and (B) such change shall not (subject to Section 10.01(f)), as evidenced by an Opinic
        the expense of the party seeking so to modify, eliminate or add such provisions), caus
        created hereunder or any of the Certificateholders (other than the transferor) to be s
        federal tax caused by a transfer to a Person that is not a Permitted Transferee,

(vi)    to make any other provisions with respect to matters or questions arising under this A
        Custodial Agreement which shall not be materially inconsistent with the provisions of
        provided that such action shall not, as evidenced by an Opinion of Counsel, adversely
        material respect the interests of any Certificateholder or

            (vii) to amend any provision herein or therein that is not material to any of
        Certificateholders.

(b)     This Agreement or any Custodial Agreement may also be amended from time to time by the
Master Servicer and the Trustee with the consent of the Holders of Certificates evidencing in

file:///C:/Documents and Settings/olgaarbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 121 of 180

not less than 66% of the Percentage Interests of each Class of Certificates with a Certificate
Balance greater than zero affected thereby for the purpose of adding any provisions to or char
manner or eliminating any of the provisions of this Agreement or such Custodial Agreement or c
any manner the rights of the Holders of Certificates of such Class; provided, however, that no
shall:

(i)    reduce in any manner the amount of, or delay the timing of, payments which are require
       distributed on any Certificate without the consent of the Holder of such Certificate,

(ii)   reduce the aforesaid percentage of Certificates of any Class the Holders of which are
       consent to any such amendment, in any such case without the consent of the Holders of
       of such Class then outstanding.

(c)    Notwithstanding any contrary provision of this Agreement, the Trustee shall not conser
amendment to this Agreement unless it shall have first received an Opinion of Counsel (subject
10.01(f) and at the expense of the party seeking such amendment) to the effect that such amend
exercise of any power granted to the Master Servicer, the Company or the Trustee in accordance
amendment is permitted hereunder and will not result in the imposition of a federal tax on the
cause any REMIC created under the Series Supplement to fail to qualify as a REMIC at any time
Certificate is outstanding.

(d)    Promptly after the execution of any such amendment the Trustee shall furnish written n
the substance of such amendment to the Custodian and each Certificateholder.  It shall not be
the consent of Certificateholders under this Section 11.01 to approve the particular form of a
amendment, but it shall be sufficient if such consent shall approve the substance thereof.  Th
obtaining such consents and of evidencing the authorization of the execution thereof by Certif
shall be subject to such reasonable regulations as the Trustee may prescribe.

(e)    The Company shall have the option, in its sole discretion, to obtain and deliver to th
corporate guaranty, payment obligation, irrevocable letter of credit, surety bond, insurance p
similar instrument or a reserve fund, or any combination of the foregoing, for the purpose of
Holders of the Class B Certificates against any or all Realized Losses or other shortfalls.  A
instrument or fund shall be held by the Trustee for the benefit of the Class B Certificateholc
not be and shall not be deemed to be under any circumstances included in the Trust Fund.  To t
any such instrument or fund constitutes a reserve fund for federal income tax purposes, (i) an
so established shall be an outside reserve fund and not an asset of the Trust Fund, (ii) any s
fund shall be owned by the Company, and (iii) amounts transferred by the Trust Fund to any suc
shall be treated as amounts distributed by the Trust Fund to the Company or any successor, all
meaning of Treasury Regulations Section 1.860G-2(h) as it reads as of the Cut-off Date.  In co
the provision of any such instrument or fund, this Agreement and any provision hereof may be n
to, deleted or otherwise amended in any manner that is related or incidental to such instrumen
the establishment or administration thereof, such amendment to be made by written instrument e
consented to by the Company but without the consent of any Certificateholder and without the c
Master Servicer or the Trustee being required unless any such amendment would impose any addit
obligation on, or otherwise adversely affect the interests of the Senior Certificateholders, t
Certificateholders, the Master Servicer or the Trustee, as applicable; provided that the Compa
(subject to Section 10.01(f)) an Opinion of Counsel (which need not be an opinion of Independe
the effect that any such amendment will not cause (a) any federal tax to be imposed on the Tru
including without limitation, any federal tax imposed on "prohibited transactions" under Secti
of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code
REMIC created hereunder to fail to qualify as a REMIC at any time that any Certificate is outs
the event that the Company elects to provide such coverage in the form of a limited guaranty p
General Motors Acceptance Corporation, the Company may elect that the text of such amendment t
Agreement shall be substantially in the form attached hereto as Exhibit K (in which case Resic
Funding's Subordinate Certificate Loss Obligation as described in such exhibit shall be establ
Residential Funding's consent to such amendment) and that the limited guaranty shall be execu
attached hereto as Exhibit L, with such changes as the Company shall deem to be appropriate; i
understood that the Trustee has reviewed and approved the content of such forms and that the T
consent or approval to the use thereof is not required.

Section 11.02. Recordation of Agreement; Counterparts.

(a)    To the extent permitted by applicable law, this Agreement is subject to recordation in
public offices for real property records in all the counties or other comparable jurisdictions
or all of the properties subject to the Mortgages are situated, and in any other appropriate p
office or elsewhere, such recordation to be effected by the Master Servicer and at its expense
by the Trustee (pursuant to the request of Holders of Certificates entitled to at least 25% of
Rights), but only upon direction accompanied by an Opinion of Counsel to the effect that such

materially and beneficially affects the interests of the Certificateholders.

(b)      For the purpose of facilitating the recordation of this Agreement as herein provided a purposes, this Agreement may be executed simultaneously in any number of counterparts, each of counterparts shall be deemed to be an original, and such counterparts shall constitute but one instrument.

Section 11.03. Limitation on Rights of Certificateholders.

(a)      The death or incapacity of any Certificateholder shall not operate to terminate this A Trust Fund, nor entitle such Certificateholder's legal representatives or heirs to claim an ac take any action or proceeding in any court for a partition or winding up of the Trust Fund, no affect the rights, obligations and liabilities of any of the parties hereto.

(b)      No Certificateholder shall have any right to vote (except as expressly provided herein manner otherwise control the operation and management of the Trust Fund, or the obligations of hereto, nor shall anything herein set forth, or contained in the terms of the Certificates, be as to constitute the Certificateholders from time to time as partners or members of an associa any Certificateholder be under any liability to any third person by reason of any action taken to this Agreement pursuant to any provision hereof.

(c)      No Certificateholder shall have any right by virtue of any provision of this Agreement any suit, action or proceeding in equity or at law upon or under or with respect to this Agree such Holder previously shall have given to the Trustee a written notice of default and of the thereof, as hereinbefore provided, and unless also the Holders of Certificates of any Class ev aggregate not less than 25% of the related Percentage Interests of such Class, shall have made request upon the Trustee to institute such action, suit or proceeding in its own name as Trust and shall have offered to the Trustee such reasonable indemnity as it may require against the and liabilities to be incurred therein or thereby, and the Trustee, for 60 days after its rece notice, request and offer of indemnity, shall have neglected or refused to institute any such proceeding it being understood and intended, and being expressly covenanted by each Certificat every other Certificateholder and the Trustee, that no one or more Holders of Certificates of have any right in any manner whatever by virtue of any provision of this Agreement to affect, prejudice the rights of the Holders of any other of such Certificates of such Class or any oth obtain or seek to obtain priority over or preference to any other such Holder, or to enforce a this Agreement, except in the manner herein provided and for the common benefit of Certificate Class or all Classes, as the case may be.  For the protection and enforcement of the provision Section 11.03, each and every Certificateholder and the Trustee shall be entitled to such reli given either at law or in equity.

Section 11.04. Governing Law.

This agreement and the Certificates shall be governed by and construed in accordance v the State of New York and the obligations, rights and remedies of the parties hereunder shall in accordance with such laws.

Section 11.05. Notices.

As provided in Section 11.05 of the Series Supplement.

Section 11.06. Required Notices to Rating Agency and Subservicer.

The Company, the Master Servicer or the Trustee, as applicable, (i) shall notify each such time as it is otherwise required pursuant to this Agreement to give notice of the occurre the events described in clause (a), (b), (c), (d), (g), (h), (i) or (j) below,  (ii) shall not Subservicer at such time as it is otherwise required pursuant to this Agreement to give notice occurrence of, any of the events described in clause (a), (b), (c)(1), (g)(1),  or (i) below, provide a copy to each Rating Agency at such time as otherwise required to be delivered pursua Agreement of any of the statements described in clauses (e) and (f) below:

(a)      a material change or amendment to this Agreement,

(b)      the occurrence of an Event of Default,

(c)      (1) the termination or appointment of a successor Master Servicer or (2) the terminati
         appointment of a successor Trustee or a change in the majority ownership of the Truste

(d)      the filing of any claim under the Master Servicer's blanket fidelity bond and the erro

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 123 of 180

insurance policy required by Section 3.12 or the cancellation or modification of cover such instrument,

(e)     the statement required to be delivered to the Holders of each Class of Certificates pu Section 4.03,

(f)     the statements required to be delivered pursuant to Sections 3.18 and 3.19,

(g)     (1) a change in the location of the Custodial Account or (2) a change in the location Certificate Account,

(h)     the occurrence of any monthly cash flow shortfall to the Holders of any Class of Certi resulting from the failure by the Master Servicer to make an Advance pursuant to Secti

(i)     the occurrence of the Final Distribution Date, and

(j)     the repurchase of or substitution for any Mortgage Loan,

provided, however, that with respect to notice of the occurrence of the events described in cl or (h) above, the Master Servicer shall provide prompt written notice to each Rating Agency an Subservicer, if applicable, of any such event known to the Master Servicer.

Section 11.07. Severability of Provisions.

        If any one or more of the covenants, agreements, provisions or terms of this Agreement any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall severable from the remaining covenants, agreements, provisions or terms of this Agreement and affect the validity or enforceability of the other provisions of this Agreement or of the Cert rights of the Holders thereof.

Section 11.08. Supplemental Provisions for Resecuritization.

        This Agreement may be supplemented by means of the addition of a separate Article here "Supplemental Article") for the purpose of resecuritizing any of the Certificates issued here following circumstances.  With respect to any Class or Classes of Certificates issued hereunde portion of any such Class, as to which the Company or any of its Affiliates (or any designee t registered Holder (the "Resecuritized Certificates"), the Company may deposit such Resecuriti into a new REMIC, grantor trust or custodial arrangement (a "Restructuring Vehicle") to be hel Trustee pursuant to a Supplemental Article.  The instrument adopting such Supplemental Article executed by the Company, the Master Servicer and the Trustee; provided, that neither the Mast the Trustee shall withhold their consent thereto if their respective interests would not be ma adversely affected thereby.  To the extent that the terms of the Supplemental Article do not i affect any provisions of this Agreement as to any of the Certificates initially issued hereunc adoption of the Supplemental Article shall not constitute an "amendment" of this Agreement.

        Each Supplemental Article shall set forth all necessary provisions relating to the hol Resecuritized Certificates by the Trustee, the establishment of the Restructuring Vehicle, the various classes of new certificates by the Restructuring Vehicle and the distributions to be m and any other provisions necessary for the purposes thereof.  In connection with each Suppleme the Company shall deliver to the Trustee an Opinion of Counsel to the effect that (i) the Rest Vehicle will qualify as a REMIC, grantor trust or other entity not subject to taxation for fec purposes and (ii) the adoption of the Supplemental Article will not endanger the status of the a REMIC or (subject to Section 10.01(f)) result in the imposition of a tax upon the Trust Func not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code contributions to a REMIC as set forth in Section 860G(d) of the Code).

Section 11.09. Allocation of Voting Rights.

        As provided in Section 11.09 of the Series Supplement.

Section 11.10. No Petition.

        As provided in Section 11.10 of the Series Supplement.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 124 of 180

ARTICLE XII


COMPLIANCE WITH REGULATION AB

Section 12.01. Intent of the Parties; Reasonableness.

The Company, the Trustee and the Master Servicer acknowledge and agree that th
Article XII is to facilitate compliance by the Company with the provisions of Regulation AB
and regulations of the Commission. The Company shall not exercise its right to requ
information or other performance under these provisions other than in good faith, or for pu
compliance with the Securities Act, the Exchange Act and the rules and regulations of the
the Securities Act and the Exchange Act. Each of the Master Servicer and the Trustee a
interpretations of the requirements of Regulation AB may change over time, whether due
guidance provided by the Commission or its staff, consensus among participants in the
securities markets, advice of counsel, or otherwise, and agrees to comply with reasonable
the Company in good faith for delivery of information under these provisions on the b
interpretations of Regulation AB. Each of the Master Servicer and the Trustee shall coop
with the Company to deliver to the Company (including any of its assignees or designe
disclosure, statements, reports, certifications, records and any other information n
reasonable, good faith determination of the Company to permit the Company to comply with th
Regulation AB.

Section 12.02. Additional Representations and Warranties of the Trustee.

(a)....The Trustee shall be deemed to represent and warrant to the Compa
hereof and on each date on which information is provided to the Company under Sections 12
12.03 that, except as disclosed in writing to the Company prior to such date: (i) it is
not received notice that any default, early amortization or other performance triggering e
as to any other Securitization Transaction due to any default of the Trustee; (ii) there
its financial condition that could have a material adverse effect on the performance by
obligations under this Agreement or any other Securitization Transaction as to which it is th
there are no material legal or governmental proceedings pending (or known to be contemplated)
would be material to Certificateholders; (iv) there are no relationships or transactions
Item 1119(b) of Regulation AB) relating to the Trustee with respect to the Company or any
entity, servicer, trustee, originator, significant obligor, enhancement or support provider
transaction party (as each of such terms are used in Regulation AB) relating to th
Transaction contemplated by the Agreement, as identified by the Company to the Trustee in
Closing Date (each, a "Transaction Party") that are outside the ordinary course of business
than would be obtained in an arm's length transaction with an unrelated third party,
Securitization Transaction, and that are material to the investors' understanding of the C
(v) the Trustee is not an affiliate (as contemplated by Item 1119(a) of Regulation AB) of
Party. The Company shall notify the Trustee of any change in the identity of a Transactior
Closing Date.

(b)....If so requested by the Company on any date following the Closing D
shall, within five Business Days following such request, confirm in writing the
representations and warranties set forth in paragraph (a) of this Section or, if any such re
warranty is not accurate as of the date of such confirmation, provide the pertinent facts, ir
Company. Any such request from the Company shall not be given more than once each calendar
the Company shall have a reasonable basis for questioning the accuracy of any of the rep
warranties.

Section 12.03. Information to Be Provided by the Trustee.

For so long as the Certificates are outstanding, for the purpose of satisfy
reporting obligation under the Exchange Act with respect to any class of Certificates, t
provide to the Company a written description of (a) any litigation or governmental pro
against the Trustee as of the last day of each calendar month that would be material to Ce
and (b) any affiliations or relationships (as described in Item 1119 of Regulation AB) that c
the Closing Date between the Trustee and any Transaction Party of the type described in Sect
or 12.02(a)(v) as of the last day of each calendar year. Any descriptions required with
proceedings, as well as updates to previously provided descriptions, under this Section 12.
no later than five Business Days prior to the Determination Date following the month in w
event occurs, and any notices and descriptions required with respect to affiliations, as w
previously provided descriptions, under this Section 12.03 shall be given no later than

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 125 of 180

calendar year following the year in which the relevant event occurs. As of the related D
with respect to each Report on Form 10-D with respect to the Certificates filed by or
Company, and as of March 15 preceding the date each Report on Form 10-K with respect to the
filed, the Trustee shall be deemed to represent and warrant that any information previously
Trustee under this Article XII is materially correct and does not have any material omis
Trustee has provided an update to such information. The Company will allow the Truste
disclosure relating to material litigation against the Trustee prior to filing such dis
Commission to the extent the Company changes the information provided by the Trustee.

Section 12.04. Report on Assessment of Compliance and Attestation.

On or before March 15 of each calendar year, the Trustee shall:

(a)      deliver to the Company a report (in form and substance reasonably satisfactory to the
regarding the Trustee's assessment of compliance with the applicable Servicing Criteria during
immediately preceding calendar year, as required under Rules 13a-18 and 15d-18 of the Exchange
1122 of Regulation AB. Such report shall be signed by an authorized officer of the Trustee, a
address each of the Servicing Criteria specified on Exhibit R hereto; and

(b)      deliver to the Company a report of a registered public accounting firm satisfying the
Rule 2-01 of Regulation S-X under the Securities Act and the Exchange Act that attests to, and
the assessment of compliance made by the Trustee and delivered pursuant to the preceding parag
attestation shall be in accordance with Rules 1-02(a)(3) and 2-02(g) of Regulation S-X under t
Act and the Exchange Act.

Section 12.05. Indemnification; Remedies.

(a)      The Trustee shall indemnify the Company, each affiliate of the Company, the Master Ser
affiliate of the Master Servicer, and the respective present and former directors, officers, e
agents of each of the foregoing, and shall hold each of them harmless from and against any los
penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any c
fees and expenses that any of them may sustain arising out of or based upon:

.......................(i)(A) any untrue statement of a material fact contained or alleged t
any information, report, certification, accountants' attestation or other material pro
Article XII by or on behalf of the Trustee (collectively, the "Trustee Information"), or (B
alleged omission to state in the Trustee Information a material fact required to be stat
Information or necessary in order to make the statements therein, in the light of the cir
which they were made, not misleading; or

.......................(ii)   any failure by the Trustee to deliver any information, report,
other material when and as required under this Article XII, other than a failure by the Trus
accountants' attestation.

(b)      In the case of any failure of performance described in clause (ii) of Section 12.05(a)
failure to deliver an accountants' attestation, the Trustee shall (i) promptly reimburse the C
costs reasonably incurred by the Company in order to obtain the information, report, certifica
accountants' attestation or other material not delivered by the Trustee as required and (ii) c
the Company to mitigate any damages that may result from such failure.

(c)      The Company and the Master Servicer shall indemnify the Trustee, each affiliate of the
respective present and former directors, officers, employees and agents of the Trustee, and sh
of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fe
and related costs, judgments, and any other costs, fees and expenses that any of them may sust
of or based upon (i) any untrue statement of a material fact contained or alleged to be contai
information provided under this Agreement by or on behalf of the Company or Master Servicer fo
any report filed with Commission under the Exchange Act (collectively, the "RFC Information"),
omission or alleged omission to state in the RFC Information a material fact required to be st
Information or necessary in order to make the statements therein, in the light of the circumst
which they were made, not misleading.

(d)      Notwithstanding any provision in this Section 12.05 to the contrary, the parties agree
the Trustee, the Company or the Master Servicer shall be liable to the other for any consequen
punitive damages whatsoever, whether in contract, tort (including negligence and strict liabil
other legal or equitable principle; provided, however, that such limitation shall not be appli
respect to third party claims made against a party.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 126 of 180

EXHIBIT A

FORM OF CLASS A CERTIFICATE, [PRINCIPAL ONLY/CLASS A-P] CERTIFICATE AND [INTEREST ONLY/CLASS

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST"
ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 86(
THE INTERNAL REVENUE CODE OF 1986.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED  REPRESENTATIVE  OF THE DEPOSITO
A NEW YORK  CORPORATION  ("DTC"),  TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER,  EXCHA
AND ANY  CERTIFICATE  ISSUED IS  REGISTERED  IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME A
AN  AUTHORIZED  REPRESENTATIVE  OF DTC (AND ANY  PAYMENT  IS MADE TO CEDE & CO. OR TO SUCH  OT
REQUESTED BY AN  AUTHORIZED  REPRESENTATIVE  OF DTC), ANY TRANSFER,  PLEDGE,  OR OTHER USE HE
OTHERWISE  BY OR TO ANY  PERSON IS  WRONGFUL  INASMUCH  AS THE  REGISTERED  OWNER  HEREOF,  CE
INTEREST HEREIN.]

[THE FOLLOWING INFORMATION IS PROVIDED SOLELY FOR THE PURPOSES OF APPLYING THE U.S. FE
ORIGINAL ISSUE DISCOUNT ("OID") RULES TO THIS CERTIFICATE.  THE ISSUE DATE OF THIS CERTIFICATE
__, ____.  ASSUMING THAT THE MORTGAGE LOANS PREPAY AT [____]% OF THE PREPAYMENT SPEED ASSUMPTIO
IN THE PROSPECTUS SUPPLEMENT), [AND ASSUMING A CONSTANT PASS-THROUGH RATE EQUAL TO THE INITIA
RATE,] THIS CERTIFICATE HAS BEEN ISSUED WITH NO MORE THAN $[          ] OF OID PER [$1,000] [$
[INITIAL CERTIFICATE PRINCIPAL BALANCE] [NOTIONAL AMOUNT], THE YIELD TO MATURITY IS [     ]%
OF OID ATTRIBUTABLE TO THE INITIAL ACCRUAL PERIOD IS NO MORE THAN $[          ] PER [$1,00
OF [INITIAL CERTIFICATE PRINCIPAL BALANCE] [NOTIONAL AMOUNT], COMPUTED USING THE APPROXIMATE M
REPRESENTATION IS MADE THAT THE MORTGAGE LOANS WILL PREPAY AT A RATE BASED ON THE PREPAYMENT S
OR AT ANY OTHER RATE OR AS TO THE CONSTANCY OF THE PASS-THROUGH RATE.]

| | |
|---|---|
| Certificate No. | [      %][Variable] Pass-Through Rate [based on a Notional Amount] |
| Class A-    Senior | |
| Date of Pooling and Servicing | [Percentage Interest:     %] |
| Agreement and Cut-off Date: | |
| _____ 1, ____ | Aggregate Initial [Certificate Principal Balance] [[Interest Only/Class A-V] Notional |
| | Amount] [Subclass Notional Amount] of the |
| First Distribution Date: | Class A-    Certificates: |
| _____ 25, ____ | |
| | [Initial] [Certificate Principal |
| Master Servicer: | Balance] [Interest Only/Class A-V] [Subclass |
| Residential Funding | Notional Amount] of this Certificate: |
| Corporation | $                ] |
| Assumed Final | |
| Distribution Date: | CUSIP 76110F- |
| _____ 25, ____ | |

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE
SERIES ____-___

evidencing  a  percentage  interest in the  distributions  allocable to the Cla
A-    Certificates with respect to a Trust Fund consisting  primarily of a po
of  [conventional  one- to four-family  fixed interest rate first mortgage loan
formed and sold by RESIDENTIAL ACCREDIT LOANS, INC.

This Certificate is payable solely from the assets of the Trust Fund, and does
obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Truste
below or GMAC Mortgage Group, Inc. or any of their affiliates.  Neither this Certificate nor t
Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality or by R
Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc. or any of
affiliates.  None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of the
will have any obligation with respect to any certificate or other obligation secured by or pay

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 127 of 180

payments on the Certificates.

This certifies that
registered owner of the Percentage Interest evidenced by this Certificate [(obtained by dividi
Certificate Principal Balance] [Initial [Interest Only/Class A-V] Notional Amount] of this Cer
aggregate [Initial Certificate Principal Balance of all Class A-      Certificates] [Initial
Only/Class A-V] Notional Amounts of all [Interest Only/Class A-V] Certificates], both as spec
certain distributions with respect to the Trust Fund consisting primarily of an interest in a
[conventional one- to four-family fixed interest rate first mortgage loans] (the "Mortgage Loa
sold by Residential Accredit Loans, Inc. (hereinafter called the "Company," which term include
entity under the Agreement referred to below).  The Trust Fund was created pursuant to a Pooli
Servicing Agreement dated as specified above (the "Agreement") among the Company, the Master S
_____, as trustee (the "Trustee"), a summary of certain of the pertinent provisio
set forth hereafter.  To the extent not defined herein, the capitalized terms used herein have
assigned in the Agreement.  This Certificate is issued under and is subject to the terms, prov
conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of th
hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th
month or, if such 25th day is not a Business Day, the Business Day immediately following (the
Date"), commencing as described in the Agreement, to the Person in whose name this Certificate
at the close of business on the last day (or if such last day is not a Business Day, the Busin
immediately preceding such last day) of the month immediately preceding the month of such dist
"Record Date"), from the Available Distribution Amount in an amount equal to the product of th
Interest evidenced by this Certificate and the amount [(of interest and principal, if any)] re
distributed to Holders of Class A-      Certificates on such Distribution Date.  [The [Interest
A-V] Notional Amount of the [Interest Only/Class A-V] Certificates as of any date of determina
to the aggregate Stated Principal Balance of the Mortgage Loans corresponding to the Uncertifi
Regular Interests represented by such [Interest Only/Class A-V] Certificates.] [The Subclass N
of the [Interest Only/Class A-V]-     Certificates as of any date of determination is equal to t
Stated Principal Balance of the Mortgage Loans corresponding to the Uncertificated REMIC Regul
represented by such [Interest Only/Class A-V]-     Certificates immediately prior to such date.]
Only/Class A-V][-    ] Certificates have no Certificate Principal Balance.]

Distributions on this Certificate will be made either by the Master Servicer ac
of the Trustee or by a Paying Agent appointed by the Trustee in immediately available funds (b
or otherwise) for the account of the Person entitled thereto if such Person shall have so noti
Servicer or such Paying Agent, or by check mailed to the address of the Person entitled theret
and address shall appear on the Certificate Register.

Notwithstanding the above, the final distribution on this Certificate will be m
notice of the pendency of such distribution and only upon presentation and surrender of this C
the office or agency appointed by the Trustee for that purpose in the City and State of New Yo
[Initial Certificate Principal Balance] [Initial [Interest Only/Class A-V] Notional Amount] [i
Notional Amount] of this Certificate is set forth above.] [The Certificate Principal Balance h
reduced to the extent of distributions allocable to principal and any Realized Losses allocabl

This Certificate is one of a duly authorized issue of Certificates issued in se
designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified hereon (
collectively called the "Certificates").

The Certificates are limited in right of payment to certain collections and rec
respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement.
Master Servicer funds are advanced with respect to any Mortgage Loan, such advance is reimburs
Master Servicer, to the extent provided in the Agreement, from related recoveries on such Mort
from other cash that would have been distributable to Certificateholders.

As provided in the Agreement, withdrawals from the Custodial Account and/or the
Account created for the benefit of Certificateholders may be made by the Master Servicer from
for purposes other than distributions to Certificateholders, such purposes including without l
reimbursement to the Company and the Master Servicer of advances made, or certain expenses inc
either of them.

The Agreement permits, with certain exceptions therein provided, the amendment
and the modification of the rights and obligations of the Company, the Master Servicer and the
the rights of the Certificateholders under the Agreement at any time by the Company, the Maste
the Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le
the Percentage Interests of each Class of Certificates affected thereby.  Any such consent by

this Certificate shall be conclusive and binding on such Holder and upon all future holders of
Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or i
whether or not notation of such consent is made upon the Certificate.  The Agreement also pern
amendment thereof in certain circumstances without the consent of the Holders of any of the Ce
in certain additional circumstances, without the consent of the Holders of certain Classes of

As provided in the Agreement and subject to certain limitations therein set for
of this Certificate is registrable in the Certificate Register upon surrender of this Certific
registration of transfer at the offices or agencies appointed by the Trustee in the City and S
York, duly endorsed by, or accompanied by an assignment in the form below or other written ins
transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by th
or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificat
authorized denominations evidencing the same Class and aggregate Percentage Interest will be i
designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons i
denominations specified in the Agreement.  As provided in the Agreement and subject to certain
therein set forth, Certificates are exchangeable for new Certificates of authorized denominati
the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

No service charge will be made for any such registration of transfer or exchang
Trustee may require payment of a sum sufficient to cover any tax or other governmental charge
connection therewith.

The Company, the Master Servicer, the Trustee and the Certificate Registrar and
the Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Perso
this Certificate is registered as the owner hereof for all purposes, and neither the Company,
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

This Certificate shall be governed by and construed in accordance with the laws
New York.

The obligations created by the Agreement in respect of the Certificates and the
created thereby shall terminate upon the payment to Certificateholders of all amounts held by
the Trustee and required to be paid to them pursuant to the Agreement following the earlier of
maturity or other liquidation of the last Mortgage Loan subject thereto or the disposition of
acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the pur
Master Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired
such Mortgage Loans, thereby effecting early retirement of the Certificates.  The Agreement pe
not require, the Master Servicer to (i) purchase at a price determined as provided in the Agre
remaining Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) pur
but not in part, all of the Certificates from the Holders thereof; provided, that any such opt
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution Da
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off Date
Balance of the Mortgage Loans.

Reference is hereby made to the further provisions of this Certificate set fort
hereof, which further provisions shall for all purposes have the same effect as if set forth a

Unless the certificate of authentication hereon has been executed by the Certif
by manual signature, this Certificate shall not be entitled to any benefit under the Agreement
for any purpose.

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed

Dated: _____                    [_____],
                                                    as Trustee

By: _____
     Authorized Signatory


CERTIFICATE OF AUTHENTICATION

This is one of the Class A-    Certificates referred to in the within-mentione


[_____],
as Certificate Registrar


By: _____
     Authorized Signatory

---

ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and t
_____(Please print or t
address including postal zip code of assignee) a Percentage Interest evidenced by the
Asset-Backed Pass-Through Certificate and hereby authorizes the transfer of registration of
assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certif
denomination and Class, to the above named assignee and deliver such Certificate to the follo

_____

Dated: _____    _____
     Signature by or on behalf of assignor


_____
     Signature Guaranteed


DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds
_____ for the account
_____account number _____, or, if mailed by check,
_____. Applicable statements should be maile
_____.

This information is provided by _____, the assignee named above,
_____, as its agent.

---

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 130 of 180

EXHIBIT A-1

FORM OF CLASS X CERTIFICATE

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST"
MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860
INTERNAL REVENUE CODE OF 1986.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUS
YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR
CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS
AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTH
REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HE
OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CE
INTEREST HEREIN.

Certificate No. _____                          Variable Pass-Through Rate
Class X Senior

Date of Pooling and Servicing Agreement        Percentage Interest: 100%
and Cut-off Date: _____ 1, _____

Master Servicer:                               Aggregate Initial Notional Amount of t
Residential Funding Corporation                Class X Certificates: $_____

First Distribution Date:                       Initial Notional Amount of this Certificat
_____ 25, _____                          $_____

Assumed Final Distribution Date:               CUSIP _____
_____

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE
SERIES _____-_____

Evidencing a percentage interest in the distributions allocable to the Class X Ce
with respect to a Trust Fund consisting primarily of a pool of [one- to f
residential, payment-option, adjustable-rate first lien mortgage loans with a
amortization feature] formed and sold by RESIDENTIAL ACCREDIT LOANS, INC.

This Certificate is payable solely from the assets of the Trust Fund, and does n
obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Tr
below or GMAC Mortgage Group, Inc. or any of their affiliates. Neither this Certificate n
Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality o
Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc.
affiliates. None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of
will have any obligation with respect to any certificate or other obligation secured by
payments on the Certificates.

This certifies that _____ is the registered owner of the Per
evidenced by this Certificate (obtained by dividing the Initial Notional Amount of this C
Aggregate Notional Amount of all Class X Certificates, both as specified above) in certain o
respect to the Trust Fund consisting primarily of an interest in a pool of [one- to four-fam
payment-option, adjustable-rate first lien mortgage loans with a negative amortizatio
"Mortgage Loans"), formed and sold by Residential Accredit Loans, Inc. (hereinafter call
which term includes any successor entity under the Agreement referred to below). The Trust
pursuant to a Pooling and Servicing Agreement dated as specified above (the "Agreement") a
the Master Servicer and _____, as trustee (the "Trustee"), a summary
pertinent provisions of which is set forth hereafter. To the extent not defined herein,
terms used herein have the meanings assigned in the Agreement. This Certificate is iss
subject to the terms, provisions and conditions of the Agreement, to which Agreement t

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 131 of 180

Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th day if such 25th day is not a Business Day, the Business Day immediately following (the "Dist commencing as described in the Agreement, to the Person in whose name this Certificate is close of business on the last day (or if such last day is not a Business Day, the Business preceding such last day) of the month immediately preceding the month of such distributi Date"), from the Available Distribution Amount in an amount equal to the product of the Per evidenced by this Certificate and the amount required to be distributed to Holders of Class such Distribution Date. The Class X Certificates have no Certificate Principal Balance.

Distributions on this Certificate will be made either by the Master Servicer acting Trustee or by a Paying Agent appointed by the Trustee in immediately available funds (by otherwise) for the account of the Person entitled thereto if such Person shall have so not Servicer or such Paying Agent, or by check mailed to the address of the Person entitled there and address shall appear on the Certificate Register.

Notwithstanding the above, the final distribution on this Certificate will be made af the pendency of such distribution and only upon presentation and surrender of this Certific or agency appointed by the Trustee for that purpose in the City and State of New York. The Amount of this Certificate is set forth above.

This Certificate is one of a duly authorized issue of Certificates issued in designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified collectively called the "Certificates").

The Certificates are limited in right of payment to certain collections and recoverie Mortgage Loans, all as more specifically set forth herein and in the Agreement. In the ever funds are advanced with respect to any Mortgage Loan, such advance is reimbursable to the Mast the extent provided in the Agreement, from related recoveries on such Mortgage Loan or fro would have been distributable to Certificateholders.

As provided in the Agreement, withdrawals from the Custodial Account and/or the Cer created for the benefit of Certificateholders may be made by the Master Servicer from purposes other than distributions to Certificateholders, such purposes including wi reimbursement to the Company and the Master Servicer of advances made, or certain expens either of them.

The Agreement permits, with certain exceptions therein provided, the amendment of the modification of the rights and obligations of the Company, the Master Servicer and th rights of the Certificateholders under the Agreement at any time by the Company, the Maste Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le Percentage Interests of each Class of Certificates affected thereby. Any such consent by t Certificate shall be conclusive and binding on such Holder and upon all future holders of and of any Certificate issued upon the transfer hereof or in exchange herefor or in lieu h not notation of such consent is made upon the Certificate. The Agreement also permits the a in certain circumstances without the consent of the Holders of any of the Certificates additional circumstances, without the consent of the Holders of certain Classes of Certificate

As provided in the Agreement and subject to certain limitations therein set forth, this Certificate is registrable in the Certificate Register upon surrender of this registration of transfer at the offices or agencies appointed by the Trustee in the City York, duly endorsed by, or accompanied by an assignment in the form below or other writt transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by or such Holder's attorney duly authorized in writing, and thereupon one or more new authorized denominations evidencing the same Class and aggregate Percentage Interest will designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons denominations specified in the Agreement. As provided in the Agreement and subject to cer therein set forth, Certificates are exchangeable for new Certificates of authorized denomina the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

No service charge will be made for any such registration of transfer or exchange, bu require payment of a sum sufficient to cover any tax or other governmental charge payabl therewith.

The Company, the Master Servicer, the Trustee and the Certificate Registrar and

Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Per
this Certificate is registered as the owner hereof for all purposes, and neither the Com
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

This Certificate shall be governed by and construed in accordance with the laws of
York.

The obligations created by the Agreement in respect of the Certificates and the T
thereby shall terminate upon the payment to Certificateholders of all amounts held by or
Trustee and required to be paid to them pursuant to the Agreement following the earlier of
or other liquidation of the last Mortgage Loan subject thereto or the disposition of all p
upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the purch
Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired i
Mortgage Loans, thereby effecting early retirement of the Certificates. The Agreement permi
require, the Master Servicer to (i) purchase at a price determined as provided in the Agreen
Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) purchase i
in part, all of the Certificates from the Holders thereof; provided, that any such op
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off
Balance of the Mortgage Loans.

Reference is hereby made to the further provisions of this Certificate set fort
hereof, which further provisions shall for all purposes have the same effect as if set forth a

Unless the certificate of authentication hereon has been executed by the Certificat
manual signature, this Certificate shall not be entitled to any benefit under the Agreemen
any purpose.

---

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly execute

Dated: _____          [_____],
                                       as Trustee


                                     By: _____
                                         Authorized Signatory

CERTIFICATE OF AUTHENTICATION

This is one of the Class A-    Certificates referred to in the within-mentione


                                     [_____],
                                       as Certificate Registrar


                                     By: _____
                                         Authorized Signatory

---

ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and t
_____(Please print or t

address including postal zip code of assignee) a Percentage Interest evidenced by the
Asset-Backed Pass-Through Certificate and hereby authorizes the transfer of registration of
assignee on the Certificate Register of the Trust Fund.

          I (We) further direct the Certificate Registrar to issue a new Certi
denomination and Class, to the above named assignee and deliver such Certificate to the follov

_____

Dated: _____        _____
                                          Signature by or on behalf of assignor


                                          _____
                                          Signature Guaranteed


DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds
_____ for the account
_____account number _____, or, if mailed by check,
_____. Applicable statements should be maile
_____.

This information is provided by _____, the assignee named above,
_____, as its agent.


━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━


EXHIBIT B

FORM OF CLASS M CERTIFICATE

      THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE SENIOR CERTIFICATES [CLASS
CERTIFICATES] [AND CLASS M-2 CERTIFICATES] AS DESCRIBED IN THE AGREEMENT (AS DEFINED BELOW).

      SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST"
ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860
THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").

      UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY
A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE,
AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS
AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER EN
REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF F
OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO.,
INTEREST HEREIN.

      THE FOLLOWING INFORMATION IS PROVIDED SOLELY FOR THE PURPOSES OF APPLYING THE U.S. FEI
ORIGINAL ISSUE DISCOUNT ("OID") RULES TO THIS CERTIFICATE. THE ISSUE DATE OF THIS CERTIFICATE
___, ____. ASSUMING THAT THE MORTGAGE LOANS PREPAY AT [___]% OF THE PREPAYMENT SPEED ASSUMPTIO
IN THE PROSPECTUS SUPPLEMENT), THIS CERTIFICATE HAS BEEN ISSUED WITH NO MORE THAN $[____] OF (
OF INITIAL CERTIFICATE PRINCIPAL BALANCE, THE YIELD TO MATURITY IS [_____]% AND THE AMOUNT OF
ATTRIBUTABLE TO THE INITIAL ACCRUAL PERIOD IS NO MORE THAN $[____] PER $[1,000] OF INITIAL CER
PRINCIPAL BALANCE, COMPUTED UNDER THE APPROXIMATE METHOD. NO REPRESENTATION IS MADE THAT THE

WILL PREPAY AT A RATE BASED ON THE PREPAYMENT SPEED ASSUMPTION OR AT ANY OTHER RATE.

ANY TRANSFEREE OF THIS CERTIFICATE WILL BE DEEMED TO HAVE REPRESENTED BY VIRTUE OF ITS OR HOLDING OF THIS CERTIFICATE (OR INTEREST HEREIN) THAT EITHER (A) SUCH TRANSFEREE IS NOT AN INVESTMENT MANAGER, A NAMED FIDUCIARY OR A TRUSTEE OF ANY PLAN, OR ANY OTHER PERSON, ACTING, D OR INDIRECTLY, ON BEHALF OF OR PURCHASING ANY CERTIFICATE WITH "PLAN ASSETS" OF ANY PLAN (A "F INVESTOR"), (B) IT HAS ACQUIRED AND IS HOLDING SUCH CERTIFICATE IN RELIANCE ON PROHIBITED TRAN EXEMPTION ("PTE") 94-29, AS MOST RECENTLY AMENDED, PTE 2002-41, 67 FED. REG. 54487 (AUGUST 22, (THE "RFC EXEMPTION"), AND THAT IT UNDERSTANDS THAT THERE ARE CERTAIN CONDITIONS TO THE AVAILA OF THE RFC EXEMPTION INCLUDING THAT SUCH CERTIFICATE MUST BE RATED, AT THE TIME OF PURCHASE, N THAN "BBB-" (OR ITS EQUIVALENT) BY STANDARD & POOR'S, FITCH OR MOODY'S OR (C) (I) THE TRANSFER INSURANCE COMPANY, (II) THE SOURCE OF FUNDS TO BE USED BY IT TO PURCHASE THE CERTIFICATE IS AN "INSURANCE COMPANY GENERAL ACCOUNT" (WITHIN THE MEANING OF U.S. DEPARTMENT OF LABOR PROHIBITED TRANSACTION CLASS EXEMPTION ("PTCE") 95-60), AND (III) THE CONDITIONS SET FORTH IN SECTIONS I OF PTCE 95-60 HAVE BEEN SATISFIED (EACH ENTITY THAT SATISFIES THIS CLAUSE (C), A "COMPLYING IN COMPANY).

IF THIS CERTIFICATE (OR ANY INTEREST HEREIN) IS ACQUIRED OR HELD BY ANY PERSON THAT DO SATISFY THE CONDITIONS DESCRIBED IN THE PRECEDING PARAGRAPH, THEN THE LAST PRECEDING TRANSFEREE EITHER (I) IS NOT A PLAN INVESTOR, (II) ACQUIRED SUCH CERTIFICATE IN COMPLIANCE WITH THE RFC EXEMPTION, OR (III) IS A COMPLYING INSURANCE COMPANY SHALL BE RESTORED, TO THE EXTENT PERMITTE LAW, TO ALL RIGHTS AND OBLIGATIONS AS CERTIFICATE OWNER THEREOF RETROACTIVE TO THE DATE OF SUC TRANSFER OF THIS CERTIFICATE.  THE TRUSTEE SHALL BE UNDER NO LIABILITY TO ANY PERSON FOR MAKIN PAYMENTS DUE ON THIS CERTIFICATE TO SUCH PRECEDING TRANSFEREE.

ANY PURPORTED CERTIFICATE OWNER WHOSE ACQUISITION OR HOLDING OF THIS CERTIFICATE (OR I WAS EFFECTED IN VIOLATION OF THE RESTRICTIONS IN SECTION 5.02(e) OF THE POOLING AND SERVICING INDEMNIFY AND HOLD HARMLESS THE COMPANY, THE TRUSTEE, THE MASTER SERVICER, ANY SUBSERVICER, AN FUND FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, COSTS OR EXPENSES INCURRED BY SUCH PART OF SUCH ACQUISITION OR HOLDING.

Certificate No.                                 [     ]% Pass-Through Rate

Class M-    Subordinate                         Aggregate Certificate
                                                Principal Balance
Date of Pooling and Servicing                   of the Class M Certificates:
Agreement and Cut-off Date:                     $
_____ 1, ____
                                                Initial Certificate Principal
First Distribution Date:                        Balance of this Certificate:
_____ 25, ____                              $

Master Servicer:                                CUSIP: 76110F-
Residential Funding Corporation

Assumed Final Distribution Date:
_____ 25, ____

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE,
SERIES ____-___

evidencing a percentage interest in any distributions allocable to the Cla Certificates with respect to the Trust Fund consisting primarily of a pool of [co one- to four-family fixed interest rate first mortgage loans] formed and sold by F ACCREDIT LOANS, INC.

This Certificate is payable solely from the assets of the Trust Fund, and does obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Truste below or GMAC Mortgage Group, Inc. or any of their affiliates.  Neither this Certificate nor t Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality or by F Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc. or any of affiliates.  None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of the will have any obligation with respect to any certificate or other obligation secured by or pay payments on the Certificates.

This certifies that                                      is the r of the Percentage Interest evidenced by this Certificate (obtained by dividing the Certificate

Balance of this Certificate by the aggregate Certificate Principal Balance of all Class M-
both as specified above) in certain distributions with respect to a Trust Fund consisting pri
of [conventional one- to four-family fixed interest rate first mortgage loans] (the "Mortgage
and sold by Residential Accredit Loans, Inc. (hereinafter called the "Company," which term inc
successor entity under the Agreement referred to below).  The Trust Fund was created pursuant
and Servicing Agreement dated as specified above (the "Agreement") among the Company, the Mast
_____, as trustee (the "Trustee"), a summary of certain of the pertinent provisi
set forth hereafter.  To the extent not defined herein, the capitalized terms used herein have
assigned in the Agreement.  This Certificate is issued under and is subject to the terms, prov
conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of th
hereof assents and by which such Holder is bound.

          Pursuant to the terms of the Agreement, a distribution will be made on the 25th
month or, if such 25th day is not a Business Day, the Business Day immediately following (the
Date"), commencing as described in the Agreement, to the Person in whose name this Certificate
at the close of business on the last day (or if such last day is not a Business Day, the Busin
immediately preceding such last day) of the month immediately preceding the month of such dist
"Record Date"), from the Available Distribution Amount in an amount equal to the product of th
Interest evidenced by this Certificate and the amount (of interest and principal, if any) requ
distributed to Holders of Class M-    Certificates on such Distribution Date.

          Distributions on this Certificate will be made either by the Master Servicer ac
of the Trustee or by a Paying Agent appointed by the Trustee in immediately available funds (b
or otherwise) for the account of the Person entitled thereto if such Person shall have so noti
Servicer or such Paying Agent, or by check mailed to the address of the Person entitled theret
and address shall appear on the Certificate Register.

          Notwithstanding the above, the final distribution on this Certificate will be m
notice of the pendency of such distribution and only upon presentation and surrender of this C
the office or agency appointed by the Trustee for that purpose in the City and State of New Yo
Initial Certificate Principal Balance of this Certificate is set forth above.  The Certificate
Balance hereof will be reduced to the extent of the distributions allocable to principal and a
Losses allocable hereto.

          Any transferee of this Certificate will be deemed to have represented by virtue
or holding of this Certificate (or interest herein) that either (a) such transferee is not an
manager, a named fiduciary or a trustee of any plan, or any other person, acting, directly or
behalf of or purchasing any Certificate with "plan assets" of any plan (a "plan investor"), (b
acquired and is holding such Certificate in reliance on prohibited transaction exemption ("PTE
most recently amended, PTE 2002-41, 67 fed. Reg. 54487 (August 22, 2002) (the "RFC Exemption")
understands that there are certain conditions to the availability of the RFC Exemption includi
Certificate must be rated, at the time of purchase, not lower than "BBB-" (or its equivalent)
Poor's, Fitch or Moody's or (c) (i) the transferee is an insurance company, (ii) the source of
used by it to purchase the Certificate is an "insurance company general account" (within the m
Department of Labor prohibited transaction class exemption ("PTCE") 95-60), and (iii) the cond
forth in Sections I and III of PTCE 95-60 have been satisfied (each entity that satisfies this
"complying insurance company).

          If this Certificate (or any interest herein) is acquired or held by any person
satisfy the conditions described in the preceding paragraph, then the last preceding transfere
(i) is not a plan investor, (ii) acquired such Certificate in compliance with the RFC Exemptio
a complying insurance company shall be restored, to the extent permitted by law, to all rights
obligations as Certificate owner thereof retroactive to the date of such transfer of this Cert
Trustee shall be under no liability to any person for making any payments due on this Certific
preceding transferee.

          This Certificate is one of a duly authorized issue of Certificates issued in se
designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified hereon (
collectively called the "Certificates").

          The Certificates are limited in right of payment to certain collections and rec
respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement.
Master Servicer funds are advanced with respect to any Mortgage Loan, such advance is reimburs
Master Servicer, to the extent provided in the Agreement, from related recoveries on such Mort
from other cash that would have been distributable to Certificateholders.

          As provided in the Agreement, withdrawals from the Custodial Account and/or the
Account created for the benefit of Certificateholders may be made by the Master Servicer from

for purposes other than distributions to Certificateholders, such purposes including without l
reimbursement to the Company and the Master Servicer of advances made, or certain expenses inc
either of them.

        The Agreement permits, with certain exceptions therein provided, the amendment
and the modification of the rights and obligations of the Company, the Master Servicer and the
the rights of the Certificateholders under the Agreement at any time by the Company, the Maste
the Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le
the Percentage Interests of each Class of Certificates affected thereby.  Any such consent by
this Certificate shall be conclusive and binding on such Holder and upon all future holders of
Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or i
whether or not notation of such consent is made upon the Certificate.  The Agreement also perm
amendment thereof in certain circumstances without the consent of the Holders of any of the Ce
in certain additional circumstances, without the consent of the Holders of certain Classes of

        As provided in the Agreement and subject to certain limitations therein set for
of this Certificate is registrable in the Certificate Register upon surrender of this Certific
registration of transfer at the offices or agencies appointed by the Trustee in the City and S
York, duly endorsed by, or accompanied by an assignment in the form below or other written ins
transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by th
or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificat
authorized denominations evidencing the same Class and aggregate Percentage Interest will be i
designated transferee or transferees.

        The Certificates are issuable only as registered Certificates without coupons i
denominations specified in the Agreement.  As provided in the Agreement and subject to certain
therein set forth, Certificates are exchangeable for new Certificates of authorized denominati
the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

        No service charge will be made for any such registration of transfer or exchang
Trustee may require payment of a sum sufficient to cover any tax or other governmental charge
connection therewith.

        The Company, the Master Servicer, the Trustee and the Certificate Registrar and
the Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Perso
this Certificate is registered as the owner hereof for all purposes, and neither the Company,
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

        This Certificate shall be governed by and construed in accordance with the laws
New York.

        The obligations created by the Agreement in respect of the Certificates and the
created thereby shall terminate upon the payment to Certificateholders of all amounts held by
the Trustee and required to be paid to them pursuant to the Agreement following the earlier of
maturity or other liquidation of the last Mortgage Loan subject thereto or the disposition of
acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the pur
Master Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired
such Mortgage Loans, thereby effecting early retirement of the Certificates.  The Agreement pe
not require, the Master Servicer to (i) purchase at a price determined as provided in the Agre
remaining Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) pur
but not in part, all of the Certificates from the Holders thereof; provided, that any such opt
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution Da
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off Date
Balance of the Mortgage Loans.

        Unless the certificate of authentication hereon has been executed by the Certif
by manual signature, this Certificate shall not be entitled to any benefit under the Agreement
for any purpose.

_____

        IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly execute

Dated: _____          [_____],
                                           as Trustee

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

By: _____
    Authorized Signatory

### CERTIFICATE OF AUTHENTICATION

This is one of the Class A-    Certificates referred to in the within-mentione

[_____],
    as Certificate Registrar

By: _____
    Authorized Signatory

---

### ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and t
_____(Please print or t
address including postal zip code of assignee) a Percentage Interest evidenced by the
Asset-Backed Pass-Through Certificate and hereby authorizes the transfer of registration of
assignee on the Certificate Register of the Trust Fund.

I (We) further direct the Certificate Registrar to issue a new Certif
denomination and Class, to the above named assignee and deliver such Certificate to the follo

---

Dated: _____

_____
Signature by or on behalf of assignor

_____
Signature Guaranteed

### DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds
_____ for the account
_____account number _____, or, if mailed by check,
_____. Applicable statements should be maile
_____.

This information is provided by _____, the assignee named above,
_____, as its agent.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 138 of 180

EXHIBIT C

FORM OF CLASS B CERTIFICATE

THIS CERTIFICATE IS SUBORDINATED IN RIGHT OF PAYMENT TO THE SENIOR CERTIFICATES AND CLASS M (
CLASS B-1] [CLASS B-2 CERTIFICATES] DESCRIBED IN THE AGREEMENT (AS DEFINED HEREIN).

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS
SECURITIES LAWS OF ANY STATE AND MAY NOT BE RESOLD OR TRANSFERRED UNLESS IT IS REGISTERED
ACT AND LAWS OR IS SOLD OR TRANSFERRED IN TRANSACTIONS WHICH ARE EXEMPT FROM REGISTRATION U
UNDER APPLICABLE STATE LAW AND IS TRANSFERRED IN ACCORDANCE WITH THE PROVISIONS OF SEC
AGREEMENT.

NO TRANSFER OR THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PR
CERTIFICATION PURSUANT TO SECTION 5.02(e) OF THE AGREEMENT OR AN OPINION OF COUNSEL SAT
MASTER SERVICER, THE COMPANY AND THE TRUSTEE THAT THE PURCHASE OF THIS CERTIFICATE WILL NO
RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT
ACT OF 1974, AS AMENDED ("ERISA"), OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE MAST
COMPANY OR THE TRUSTEE TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE A

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST"
MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860
CODE. THE FOLLOWING INFORMATION IS PROVIDED SOLELY FOR THE PURPOSES OF APPLYING THE U.S. F
ORIGINAL ISSUE DISCOUNT ("OID") RULES TO THIS CERTIFICATE. THE ISSUE DATE OF THIS CERTIFICA
__, ____. ASSUMING THAT THE MORTGAGE LOANS PREPAY AT 100% OF THE PREPAYMENT SPEED ASSUMPT
IN THE PROSPECTUS SUPPLEMENT), THIS CERTIFICATE HAS BEEN ISSUED WITH NO MORE THAN $[
$[1,000] OF INITIAL CERTIFICATE PRINCIPAL BALANCE, THE YIELD TO MATURITY IS [      ]% AND
ATTRIBUTABLE TO THE INITIAL ACCRUAL PERIOD IS NO MORE THAN $[      ] PER $[1,000] OF INI
PRINCIPAL BALANCE, COMPUTED UNDER THE APPROXIMATE METHOD. NO REPRESENTATION IS MADE THAT T
WILL PREPAY AT A RATE BASED ON THE PREPAYMENT SPEED ASSUMPTION OR AT ANY OTHER RATE.

Certificate No.                          [      ]% Pass-Through Rate

Class B-    Subordinate                  Aggregate Certificate
                                         Principal Balance
Date of Pooling and Servicing            of the Class B-
Agreement and Cut-off Date:              Certificates as of
_____ 1, ____                     the Cut-off Date:
                                         $
First Distribution Date:
_____ 25, ____                        Initial Certificate Principal
                                         Balance of this Certificate:
Master Servicer:                         $
Residential Funding Corporation

Assumed Final Distribution Date:
_____ 25, ____

                MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE,
                           SERIES ____-___

        evidencing a percentage interest in any distributions allocable to the Cla
        Certificates with respect to the Trust Fund consisting primarily of a pool of [co
        one- to four-family fixed interest rate first mortgage loans] formed and sold by R
        ACCREDIT LOANS, INC.

            This Certificate is payable solely from the assets of the Trust Fund, and does
obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Truste
below or GMAC Mortgage Group, Inc. or any of their affiliates. Neither this Certificate nor t
Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality or by R
Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc. or any of
affiliates. None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of the

will have any obligation with respect to any certificate or other obligation secured by or pay
payments on the Certificates.

This certifies that Residential Accredit Loans, Inc. is the registered owner of
Interest evidenced by this Certificate (obtained by dividing the Certificate Principal Balance
Certificate by the aggregate Certificate Principal Balance of all Class B-    Certificates, b
specified above) in certain distributions with respect to a Trust Fund consisting primarily of
[conventional one- to four-family fixed interest rate first mortgage loans] (the "Mortgage Loa
sold by Residential Accredit Loans, Inc. (hereinafter called the "Company," which term include
entity under the Agreement referred to below).  The Trust Fund was created pursuant to a Pooli
Servicing Agreement dated as specified above (the "Agreement") among the Company, the Master S
_____, as trustee (the "Trustee"), a summary of certain of the pertinent provis
set forth hereafter.  To the extent not defined herein, the capitalized terms used herein have
assigned in the Agreement.  This Certificate is issued under and is subject to the terms, prov
conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of th
hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th
month or, if such 25th day is not a Business Day, the Business Day immediately following (the
Date"), commencing on the first Distribution Date specified above, to the Person in whose name
Certificate is registered at the close of business on the last day (or if such last day is not
Day, the Business Day immediately preceding such last day) of the month next preceding the mon
distribution (the "Record Date"), from the Available Distribution Amount in an amount equal to
the Percentage Interest evidenced by this Certificate and the amount (of interest and principa
required to be distributed to Holders of Class B Certificates on such Distribution Date.

Distributions on this Certificate will be made either by the Master Servicer ac
of the Trustee or by a Paying Agent appointed by the Trustee in immediately available funds (b
or otherwise) for the account of the Person entitled thereto if such Person shall have so noti
Servicer or such Paying Agent, or by check mailed to the address of the Person entitled theret
and address shall appear on the Certificate Register.

Notwithstanding the above, the final distribution on this Certificate will be m
notice of the pendency of such distribution and only upon presentation and surrender of this C
the office or agency appointed by the Trustee for that purpose in the City and State of New Yo
Initial Certificate Principal Balance of this Certificate is set forth above.  The Certificate
Balance hereof will be reduced to the extent of the distributions allocable to principal and a
Losses allocable hereto.

No transfer of this Class B Certificate will be made unless such transfer is ex
registration requirements of the Securities Act of 1933, as amended, and any applicable state
or is made in accordance with said Act and laws.  In the event that such a transfer is to be m
Trustee or the Company may require an opinion of counsel acceptable to and in form and substan
to the Trustee and the Company that such transfer is exempt (describing the applicable exempti
basis therefor) from or is being made pursuant to the registration requirements of the Securit
1933, as amended, and of any applicable statute of any state and (ii) the transferee shall exe
investment letter in the form described by the Agreement.  The Holder hereof desiring to effec
shall, and does hereby agree to, indemnify the Trustee, the Company, the Master Servicer and t
Registrar acting on behalf of the Trustee against any liability that may result if the transfe
exempt or is not made in accordance with such Federal and state laws. In connection with any s
the Trustee will also require either (i) an opinion of counsel acceptable to and in form and s
satisfactory to the Trustee, the Company and the Master Servicer with respect to the permissib
transfer under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and
the Internal Revenue Code (the "Code") and stating, among other things, that the transferee's
a Class B Certificate will not constitute or result in a non-exempt prohibited transaction und
of ERISA or Section 4975 of the Code or (ii) a representation letter, in the form as described
5.02(e) of the Agreement, either stating that the transferee is not an employee benefit or oth
to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or a
(including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly
on behalf of or purchasing any Certificate with "plan assets" of any Plan, or stating that the
an insurance company, the source of funds to be used by it to purchase the Certificate is an "
company general account" (within the meaning of Department of Labor Prohibited Transaction Cla
("PTCE") 95-60), and the purchase is being made in reliance upon the availability of the exemp
afforded under Sections I and III of PTCE 95-60..

This Certificate is one of a duly authorized issue of Certificates issued in se
designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified hereon (
collectively called the "Certificates").

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 140 of 180

The Certificates are limited in right of payment to certain collections and rec
respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement.
Master Servicer funds are advanced with respect to any Mortgage Loan, such advance is reimburs
Master Servicer, to the extent provided in the Agreement, from related recoveries on such Mort
from other cash that would have been distributable to Certificateholders.

As provided in the Agreement, withdrawals from the Custodial Account and/or the
Account created for the benefit of Certificateholders may be made by the Master Servicer from
for purposes other than distributions to Certificateholders, such purposes including without l
reimbursement to the Company and the Master Servicer of advances made, or certain expenses inc
either of them.

The Agreement permits, with certain exceptions therein provided, the amendment
and the modification of the rights and obligations of the Company, the Master Servicer and the
the rights of the Certificateholders under the Agreement at any time by the Company, the Maste
the Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le
the Percentage Interests of each Class of Certificates affected thereby.  Any such consent by
this Certificate shall be conclusive and binding on such Holder and upon all future holders of
Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or i
whether or not notation of such consent is made upon the Certificate.  The Agreement also perm
amendment thereof in certain circumstances without the consent of the Holders of any of the Ce
in certain additional circumstances, without the consent of the Holders of certain Classes of

As provided in the Agreement and subject to certain limitations therein set for
of this Certificate is registrable in the Certificate Register upon surrender of this Certific
registration of transfer at the offices or agencies appointed by the Trustee in the City and S
York, duly endorsed by, or accompanied by an assignment in the form below or other written ins
transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by th
or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificat
authorized denominations evidencing the same Class and aggregate Percentage Interest will be i
designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons i
denominations specified in the Agreement.  As provided in the Agreement and subject to certain
therein set forth, Certificates are exchangeable for new Certificates of authorized denominati
the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

No service charge will be made for any such registration of transfer or exchang
Trustee may require payment of a sum sufficient to cover any tax or other governmental charge
connection therewith.

The Company, the Master Servicer, the Trustee and the Certificate Registrar and
the Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Perso
this Certificate is registered as the owner hereof for all purposes, and neither the Company,
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

This Certificate shall be governed by and construed in accordance with the laws
New York.

The obligations created by the Agreement in respect of the Certificates and the
created thereby shall terminate upon the payment to Certificateholders of all amounts held by
the Trustee and required to be paid to them pursuant to the Agreement following the earlier of
maturity or other liquidation of the last Mortgage Loan subject thereto or the disposition of
acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the pur
Master Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired
such Mortgage Loans, thereby effecting early retirement of the Certificates.  The Agreement pe
not require, the Master Servicer to (i) purchase at a price determined as provided in the Agre
remaining Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) pur
but not in part, all of the Certificates from the Holders thereof; provided, that any such opt
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution Da
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off Date
Balance of the Mortgage Loans.

Unless the certificate of authentication hereon has been executed by the Certif
by manual signature, this Certificate shall not be entitled to any benefit under the Agreement
for any purpose.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 141 of 180

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed

Dated: _____          [_____],
                                           as Trustee


                                      By: _____
                                           Authorized Signatory


                     CERTIFICATE OF AUTHENTICATION

        This is one of the Class A-     Certificates referred to in the within-mentioned


                                      [_____],
                                           as Certificate Registrar


                                      By: _____
                                           Authorized Signatory


                              ASSIGNMENT

             FOR  VALUE  RECEIVED,  the  undersigned  hereby  sell(s),  assign(s)  and  t
_____(Please print or t
address  including  postal  zip  code  of  assignee)  a  Percentage  Interest  evidenced  by  the
Asset-Backed  Pass-Through  Certificate  and  hereby  authorizes  the  transfer  of  registration  of
assignee on the Certificate Register of the Trust Fund.

             I  (We)  further  direct  the  Certificate  Registrar  to  issue  a  new  Certif
denomination and Class, to the above named assignee and deliver such Certificate to the follow

_____


Dated: _____          _____
                                         Signature by or on behalf of assignor


                                         _____
                                         Signature Guaranteed


                         DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions  shall be made, by wire transfer or otherwise,  in immediately  available  funds
_____ for    the    account
_____account  number  _____,  or,  if  mailed  by  check,

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 142 of 180

_____. Applicable statements should be maile
_____.

This  information is provided by _____, the assignee  named above,
_____, as its agent.

_____

EXHIBIT C-I

FORM OF CLASS P CERTIFICATE

THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED  UNDER THE SECURITIES ACT OF 1933, AS
SECURITIES  LAWS OF ANY STATE AND MAY NOT BE RESOLD OR  TRANSFERRED  UNLESS IT IS  REGISTERED
ACT AND LAWS OR IS SOLD OR TRANSFERRED IN TRANSACTIONS  WHICH ARE EXEMPT FROM  REGISTRATION  U
UNDER  APPLICABLE  STATE LAW AND IS  TRANSFERRED  IN  ACCORDANCE  WITH THE  PROVISIONS  OF SEC
AGREEMENT).

NO  TRANSFER  OF THIS  CERTIFICATE  MAY BE  MADE  TO ANY  PERSON,  UNLESS  THE  TRANSFEREE  PF
CERTIFICATION  PURSUANT  TO SECTION  5.02(e) OF THE  AGREEMENT  OR AN  OPINION OF COUNSEL  SAT
MASTER  SERVICER,  THE COMPANY AND THE TRUSTEE THAT THE PURCHASE OF THIS  CERTIFICATE  WILL NC
RESULT IN A NON-EXEMPT  PROHIBITED  TRANSACTION  UNDER SECTION 406 OF THE EMPLOYEE  RETIREMENT
ACT OF 1974, AS AMENDED  ("ERISA"),  OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE MAST
COMPANY OR THE TRUSTEE TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE A

_____

C-I-6

Certificate No. ___                          Prepayment Charge

Class P - Prepayment Charge                  Aggregate Certificate Principal Balance
                                             of the Class P
Date of Pooling and Servicing                Certificates as of
Agreement and Cut-off Date:                  the Cut-off Date:
_____ 1, _____                         $0.00

First Distribution Date:                     Initial Certificate Principal Balance of thi
_____ 25, _____                        Certificate: $____

Master Servicer:                             Percentage Interest of this Certificate:
Residential Funding Corporation              100%

Assumed Final Distribution Date:             CUSIP: _____
_____ 25, _____

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE,
SERIES _____-___

evidencing  a percentage  interest in any  distributions  allocable  to the Class P  Ce
with  respect  to  the  Trust  Fund  consisting  primarily  of a  pool  of  [one-  to  f
residential,  payment-option,  adjustable-rate  first  lien  mortgage  loans  with  a

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 143 of 180

amortization feature] formed and sold by RESIDENTIAL ACCREDIT LOANS, INC.

This Certificate is payable solely from the assets of the Trust Fund, and does
obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Truste
below or GMAC Mortgage Group, Inc. or any of their affiliates.  Neither this Certificate nor t
Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality or by F
Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc. or any of
affiliates.  None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of the
will have any obligation with respect to any certificate or other obligation secured by or pay
payments on the Certificates.

This certifies that _____ is the registered owner of the
Interest evidenced by this Certificate (as specified above) in certain distributions with resp
Fund consisting primarily of a pool of [one- to four-family residential, payment-option, adjus
first lien mortgage loans with a negative amortization feature] (the "Mortgage Loans"), formed
Residential Accredit Loans, Inc. (hereinafter called the "Company," which term includes any su
under the Agreement referred to below).  The Trust Fund was created pursuant to a Pooling and
Agreement dated as specified above (the "Agreement") among the Company, the Master Servicer an
_____, as trustee (the "Trustee"), a summary of certain of the pertinent provi
is set forth hereafter.  To the extent not defined herein, the capitalized terms used herein h
meanings assigned in the Agreement.  This Certificate is issued under and is subject to the te
and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue o
acceptance hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th
month or, if such 25th day is not a Business Day, the Business Day immediately following (the
Date"), commencing on the first Distribution Date specified above, to the Person in whose name
Certificate at the close of business on the last day (or if such last day is not a Business Da
Day immediately preceding such last day) of the month immediately preceding the month of such
(the "Record Date"), in an amount equal to the product of the Percentage Interest evidenced by
Certificate and the amount required to be distributed to Holders of Class P Certificates on su
Date.

Distributions on this Certificate will be made either by the Master Servicer ac
of the Trustee or by a Paying Agent appointed by the Trustee in immediately available funds (h
or otherwise) for the account of the Person entitled thereto if such Person shall have so noti
Servicer or such Paying Agent, or by check mailed to the address of the Person entitled theret
and address shall appear on the Certificate Register.

Notwithstanding the above, the final distribution on this Certificate will be m
notice of the pendency of such distribution and only upon presentation and surrender of this C
the office or agency appointed by the Trustee for that purpose in the City and State of New Yo

No transfer of this Class P Certificate will be made unless such transfer is ex
registration requirements of the Securities Act of 1933, as amended, and any applicable state
or is made in accordance with said Act and laws.  In the event that such a transfer is to be m
Trustee or the Company may require an opinion of counsel acceptable to and in form and substan
to the Trustee and the Company that such transfer is exempt (describing the applicable exempti
basis therefor) from or is being made pursuant to the registration requirements of the Securit
1933, as amended, and of any applicable statute of any state and (ii) the transferee shall exe
investment letter in the form described by the Agreement.  The Holder hereof desiring to effec
shall, and does hereby agree to, indemnify the Trustee, the Company, the Master Servicer and t
Registrar acting on behalf of the Trustee against any liability that may result if the transfe
exempt or is not made in accordance with such Federal and state laws. In connection with any s
the Trustee will also require either (i) an opinion of counsel acceptable to and in form and s
satisfactory to the Trustee, the Company and the Master Servicer with respect to the permissib
transfer under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and
the Internal Revenue Code (the "Code") and stating, among other things, that the transferee's
a Class P Certificate will not constitute or result in a non-exempt prohibited transaction und
of ERISA or Section 4975 of the Code or (ii) a representation letter, in the form as described
5.02(e) of the Agreement, either stating that the transferee is not an employee benefit or oth
to the prohibited transaction provisions of ERISA or Section 4975 of the Code (a "Plan"), or a
(including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly
on behalf of or purchasing any Certificate with "plan assets" of any Plan.

This Certificate is one of a duly authorized issue of Certificates issued in se
designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified hereon (
collectively called the "Certificates").

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 144 of 180

The Certificates are limited in right of payment to certain collections and re
respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement.
Master Servicer funds are advanced with respect to any Mortgage Loan, such advance is reimburse
Master Servicer, to the extent provided in the Agreement, from related recoveries on such Mort
from other cash that would have been distributable to Certificateholders.

As provided in the Agreement, withdrawals from the Custodial Account and/or the
Account created for the benefit of Certificateholders may be made by the Master Servicer from
for purposes other than distributions to Certificateholders, such purposes including without l
reimbursement to the Company and the Master Servicer of advances made, or certain expenses inc
either of them.

The Agreement permits, with certain exceptions therein provided, the amendment
and the modification of the rights and obligations of the Company, the Master Servicer and the
the rights of the Certificateholders under the Agreement at any time by the Company, the Maste
the Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le
the Percentage Interests of each Class of Certificates affected thereby.  Any such consent by
this Certificate shall be conclusive and binding on such Holder and upon all future holders of
Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or i
whether or not notation of such consent is made upon the Certificate.  The Agreement also perm
amendment thereof in certain circumstances without the consent of the Holders of any of the Ce
in certain additional circumstances, without the consent of the Holders of certain Classes of

As provided in the Agreement and subject to certain limitations therein set for
of this Certificate is registrable in the Certificate Register upon surrender of this Certific
registration of transfer at the offices or agencies appointed by the Trustee in the City and S
York, duly endorsed by, or accompanied by an assignment in the form below or other written ins
transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by th
or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificat
authorized denominations evidencing the same Class and aggregate Percentage Interest will be i
designated transferee or transferees.

The Certificates are issuable only as registered Certificates without coupons i
denominations specified in the Agreement.  As provided in the Agreement and subject to certain
therein set forth, Certificates are exchangeable for new Certificates of authorized denominati
the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

No service charge will be made for any such registration of transfer or exchang
Trustee may require payment of a sum sufficient to cover any tax or other governmental charge
connection therewith.

The Company, the Master Servicer, the Trustee and the Certificate Registrar and
the Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Perso
this Certificate is registered as the owner hereof for all purposes, and neither the Company,
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

This Certificate shall be governed by and construed in accordance with the laws
New York.

The obligations created by the Agreement in respect of the Certificates and the
created thereby shall terminate upon the payment to Certificateholders of all amounts held by
the Trustee and required to be paid to them pursuant to the Agreement following the earlier of
maturity or other liquidation of the last Mortgage Loan subject thereto or the disposition of
acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the pur
Master Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired
such Mortgage Loans, thereby effecting early retirement of the Certificates.  The Agreement pe
not require, the Master Servicer to (i) purchase at a price determined as provided in the Agre
remaining Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) pur
but not in part, all of the Certificates from the Holders thereof; provided, that any such opt
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution Da
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off Date
Balance of the Mortgage Loans.

Unless the certificate of authentication hereon has been executed by the Certif
by manual signature, this Certificate shall not be entitled to any benefit under the Agreement
for any purpose.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 145 of 180

IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed

Dated: _____          [_____],
                                         as Trustee


                                      By:  _____
                                           Authorized Signatory


                      CERTIFICATE OF AUTHENTICATION

        This is one of the Class A-    Certificates referred to in the within-mentioned



                                      [_____],
                                         as Certificate Registrar


                                      By:  _____
                                           Authorized Signatory



                                ASSIGNMENT

            FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and t
_____(Please print or t
address including postal zip code of assignee) a Percentage Interest evidenced by the
Asset-Backed Pass-Through Certificate and hereby authorizes the transfer of registration of
assignee on the Certificate Register of the Trust Fund.

            I (We) further direct the Certificate Registrar to issue a new Certifi
denomination and Class, to the above named assignee and deliver such Certificate to the follow

_____


Dated: _____          _____
                                      Signature by or on behalf of assignor


                                      _____
                                      Signature Guaranteed



                        DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds
_____ for the account
_____account number _____, or, if mailed by check,
_____. Applicable statements should be maile

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 146 of 180

_____ .

This information is provided by _____, the assignee named above,
_____, as its agent.

EXHIBIT D

FORM OF CLASS R CERTIFICATE

THIS CERTIFICATE MAY NOT BE HELD BY OR TRANSFERRED TO A NON-UNITED STATES PERSON (
ORGANIZATION (AS DEFINED BELOW).

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "RESIDUAL INTEREST"
MORTGAGE INVESTMENT CONDUIT" AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860
INTERNAL REVENUE CODE OF 1986 (THE "CODE").

NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PR
CERTIFICATION PURSUANT TO SECTION 5.02(e) OF THE AGREEMENT OR AN OPINION OF COUNSEL SAT
MASTER SERVICER, THE COMPANY AND THE TRUSTEE THAT THE PURCHASE OF THIS CERTIFICATE WILL NO
RESULT IN A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF THE EMPLOYEE RETIREMENT
ACT OF 1974, AS AMENDED ("ERISA"), OR SECTION 4975 OF THE CODE AND WILL NOT SUBJECT THE MAST
COMPANY OR THE TRUSTEE TO ANY OBLIGATION OR LIABILITY IN ADDITION TO THOSE UNDERTAKEN IN THE A

ANY RESALE, TRANSFER OR OTHER DISPOSITION OF THIS CERTIFICATE MAY BE MADE ONLY IF THE PRO
PROVIDES A TRANSFER AFFIDAVIT TO THE MASTER SERVICER AND THE TRUSTEE THAT (1) SUCH TRANSFER
UNITED STATES, ANY STATE OR POLITICAL SUBDIVISION THEREOF, ANY POSSESSION OF THE UNITED STAT
OR INSTRUMENTALITY OF ANY OF THE FOREGOING (OTHER THAN AN INSTRUMENTALITY WHICH IS A CORP
ITS ACTIVITIES ARE SUBJECT TO TAX AND EXCEPT FOR FREDDIE MAC, A MAJORITY OF ITS BOARD OF
SELECTED BY SUCH GOVERNMENTAL UNIT), (B) A FOREIGN GOVERNMENT, ANY INTERNATIONAL ORGANIZATIO
OR INSTRUMENTALITY OF EITHER OF THE FOREGOING, (C) ANY ORGANIZATION (OTHER THAN CERTAIN FARME
DESCRIBED IN SECTION 521 OF THE CODE) WHICH IS EXEMPT FROM THE TAX IMPOSED BY CHAPTER 1 O
SUCH ORGANIZATION IS SUBJECT TO THE TAX IMPOSED BY SECTION 511 OF THE CODE (INCLUDING TH
SECTION 511 OF THE CODE ON UNRELATED BUSINESS TAXABLE INCOME), (D) RURAL ELECTRIC AND TELEPH
DESCRIBED IN SECTION 1381(a)(2)(C) OF THE CODE, (E) AN ELECTING LARGE PARTNERSHIP UNDER SECT
CODE (ANY SUCH PERSON DESCRIBED IN THE FOREGOING CLAUSES (A), (B), (C), (D) OR (E) BEING HE
AS A "DISQUALIFIED ORGANIZATION"), OR (F) AN AGENT OF A DISQUALIFIED ORGANIZATION, (2) N
TRANSFER IS TO IMPEDE THE ASSESSMENT OR COLLECTION OF TAX AND (3) SUCH TRANSFEREE S
ADDITIONAL CONDITIONS RELATING TO THE FINANCIAL CONDITION OF THE PROPOSED TRANSFEREE. NOT
REGISTRATION IN THE CERTIFICATE REGISTER OF ANY TRANSFER, SALE OR OTHER DISPOSITION OF THIS
DISQUALIFIED ORGANIZATION OR AN AGENT OF A DISQUALIFIED ORGANIZATION, SUCH REGISTRATION SHAL
OF NO LEGAL FORCE OR EFFECT WHATSOEVER AND SUCH PERSON SHALL NOT BE DEEMED TO BE A CERTIFICA
PURPOSE HEREUNDER, INCLUDING, BUT NOT LIMITED TO, THE RECEIPT OF DISTRIBUTIONS ON THIS C
HOLDER OF THIS CERTIFICATE BY ACCEPTANCE OF THIS CERTIFICATE SHALL BE DEEMED TO HAVE
PROVISIONS OF THIS PARAGRAPH.

Certificate No.                         [      ]% Pass-Through Rate

Class R Senior                          Aggregate Initial Certificate
                                        Principal Balance of the
Date of Pooling and Servicing           Class R Certificates:
Agreement and Cut-off Date:             $100.00
_____ 1, ____

                                        Initial Certificate Principal
First Distribution Date:                Balance of this Certificate:
_____ 25, ____                    $

Master Servicer:                        Percentage Interest:
Residential Funding Corporation                     %

Assumed Final Distribution Date:        CUSIP 76110F-

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 147 of 180

_____ 25, _____

MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATE,
SERIES _____-___

evidencing a percentage interest in any distributions allocable to the Class R Ce
with respect to the Trust Fund consisting primarily of a pool of [conventiona
four-family fixed interest rate first mortgage loans] formed and sold by RESIDENTIAL
LOANS, INC.

This Certificate is payable solely from the assets of the Trust Fund, and does
obligation of or interest in Residential Accredit Loans, Inc., the Master Servicer, the Truste
below or GMAC Mortgage Group, Inc. or any of their affiliates. Neither this Certificate nor t
Mortgage Loans are guaranteed or insured by any governmental agency or instrumentality or F
Accredit Loans, Inc., the Master Servicer, the Trustee or GMAC Mortgage Group, Inc. or any of
affiliates. None of the Company, the Master Servicer, GMAC Mortgage Group, Inc. or any of the
will have any obligation with respect to any certificate or other obligation secured by or pay
payments on the Certificates.

This certifies that                                              is the r
of the Percentage Interest evidenced by this Certificate (obtained by dividing the Initial Cer
Principal Balance of this Certificate by the aggregate Initial Certificate Principal Balance o
Certificates, both as specified above) in certain distributions with respect to the Trust Func
primarily of a pool of [conventional one- to four-family fixed interest rate first mortgage lo
"Mortgage Loans", formed and sold by Residential Accredit Loans, Inc. (hereinafter called the
which term includes any successor entity under the Agreement referred to below). The Trust Fu
pursuant to a Pooling and Servicing Agreement dated as specified above (the "Agreement") among
the Master Servicer and _____, as trustee (the "Trustee"), a summary of certain o
provisions of which is set forth hereafter. To the extent not defined herein, the capitalized
herein have the meanings assigned in the Agreement. This Certificate is issued under and is s
terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certi
virtue of the acceptance hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, a distribution will be made on the 25th
month or, if such 25th day is not a Business Day, the Business Day immediately following (the
Date"), commencing as described in the Agreement, to the Person in whose name this Certificate
at the close of business on the last day (or if such last day is not a Business Day, the Busir
immediately preceding such last day) of the month immediately preceding the month of such dist
"Record Date"), from the Available Distribution Amount in an amount equal to the product of th
Interest evidenced by this Certificate and the amount (of interest and principal, if any) requ
distributed to Holders of Class R Certificates on such Distribution Date.

Each Holder of this Certificate will be deemed to have agreed to be bound by th
set forth in the Agreement to the effect that (i) each person holding or acquiring any Ownersh
this Certificate must be a United States Person and a Permitted Transferee, (ii) the transfer
Ownership Interest in this Certificate will be conditioned upon the delivery to the Trustee of
things, an affidavit to the effect that it is a United States Person and Permitted Transferee,
attempted or purported transfer of any Ownership Interest in this Certificate in violation of
restrictions will be absolutely null and void and will vest no rights in the purported transfe
if any person other than a United States Person and a Permitted Transferee acquires any Owners
this Certificate in violation of such restrictions, then the Company will have the right, in i
discretion and without notice to the Holder of this Certificate, to sell this Certificate to a
selected by the Company, which purchaser may be the Company, or any affiliate of the Company,
and conditions as the Company may choose.

Notwithstanding the above, the final distribution on this Certificate will be m
notice of the pendency of such distribution and only upon presentation and surrender of this C
the office or agency appointed by the Trustee for that purpose in the City and State of New Yo
Initial Certificate Principal Balance of this Certificate is set forth above. The Certificate
Balance hereof will be reduced to the extent of distributions allocable to principal and any F
allocable hereto. Notwithstanding the reduction of the Certificate Principal Balance hereof t
Certificate will remain outstanding under the Agreement and the Holder hereof may have additic
with respect to this Certificate, including tax liabilities, and may be entitled to certain ac
distributions hereon, in accordance with the terms and provisions of the Agreement.

No transfer of this Class R Certificate will be made unless the Trustee has rec
an opinion of counsel acceptable to and in form and substance satisfactory to the Trustee, the

the Master Servicer with respect to the permissibility of such transfer under the Employee Ret
Security Act of 1974, as amended ("ERISA"), and Section 4975 of the Internal Revenue Code (the
stating, among other things, that the transferee's acquisition of a Class R Certificate will n
or result in a non-exempt prohibited transaction under Section 406 of ERISA or Section 4975 of
(ii) a representation letter, in the form as described by the Agreement, stating that the tran
an employee benefit or other plan subject to the prohibited transaction provisions of ERISA or
of the Code (a "Plan"), or any other person (including an investment manager, a named fiducia
of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with '
any Plan.

      This Certificate is one of a duly authorized issue of Certificates issued in se
designated as Mortgage Asset-Backed Pass-Through Certificates of the Series specified hereon (
collectively called the "Certificates").

      The Certificates are limited in right of payment to certain collections and re
respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement.
Master Servicer funds are advanced with respect to any Mortgage Loan, such advance is reimburs
Master Servicer, to the extent provided in the Agreement, from related recoveries on such Mort
from other cash that would have been distributable to Certificateholders.

      As provided in the Agreement, withdrawals from the Custodial Account and/or the
Account created for the benefit of Certificateholders may be made by the Master Servicer from
for purposes other than distributions to Certificateholders, such purposes including without l
reimbursement to the Company and the Master Servicer of advances made, or certain expenses inc
either of them.

      The Agreement permits, with certain exceptions therein provided, the amendment
and the modification of the rights and obligations of the Company, the Master Servicer and the
the rights of the Certificateholders under the Agreement at any time by the Company, the Maste
the Trustee with the consent of the Holders of Certificates evidencing in the aggregate not le
the Percentage Interests of each Class of Certificates affected thereby.  Any such consent by
this Certificate shall be conclusive and binding on such Holder and upon all future holders of
Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or i
whether or not notation of such consent is made upon the Certificate.  The Agreement also perm
amendment thereof in certain circumstances without the consent of the Holders of any of the Ce
in certain additional circumstances, without the consent of the Holders of certain Classes of

      As provided in the Agreement and subject to certain limitations therein set fo
of this Certificate is registrable in the Certificate Register upon surrender of this Certific
registration of transfer at the offices or agencies appointed by the Trustee in the City and S
York, duly endorsed by, or accompanied by an assignment in the form below or other written ins
transfer in form satisfactory to the Trustee and the Certificate Registrar duly executed by th
or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificat
authorized denominations evidencing the same Class and aggregate Percentage Interest will be i
designated transferee or transferees.

      The Certificates are issuable only as registered Certificates without coupons i
denominations specified in the Agreement.  As provided in the Agreement and subject to certain
therein set forth, Certificates are exchangeable for new Certificates of authorized denominati
the same Class and aggregate Percentage Interest, as requested by the Holder surrendering the

      No service charge will be made for any such registration of transfer or exchang
Trustee may require payment of a sum sufficient to cover any tax or other governmental charge
connection therewith.

      The Company, the Master Servicer, the Trustee and the Certificate Registrar and
the Company, the Master Servicer, the Trustee or the Certificate Registrar may treat the Perso
this Certificate is registered as the owner hereof for all purposes, and neither the Company,
Servicer, the Trustee nor any such agent shall be affected by notice to the contrary.

      This Certificate shall be governed by and construed in accordance with the laws
New York.

      The obligations created by the Agreement in respect of the Certificates and the
created thereby shall terminate upon the payment to Certificateholders of all amounts held by
the Trustee and required to be paid to them pursuant to the Agreement following the earlier of
maturity or other liquidation of the last Mortgage Loan subject thereto or the disposition of
acquired upon foreclosure or deed in lieu of foreclosure of any Mortgage Loan and (ii) the pur

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 149 of 180

Master Servicer from the Trust Fund of all remaining Mortgage Loans and all property acquired
such Mortgage Loans, thereby effecting early retirement of the Certificates.  The Agreement pe
not require, the Master Servicer to (i) purchase at a price determined as provided in the Agree
remaining Mortgage Loans and all property acquired in respect of any Mortgage Loan or (ii) pu
but not in part, all of the Certificates from the Holders thereof; provided, that any such opt
exercised if the Pool Stated Principal Balance of the Mortgage Loans as of the Distribution Da
the proceeds of any such purchase are distributed is less than ten percent of the Cut-off Date
Balance of the Mortgage Loans.

        Reference is hereby made to the further provisions of this Certificate set fort
hereof, which further provisions shall for all purpose have the same effect as if set forth at

        Unless the certificate of authentication hereon has been executed by the Certif
by manual signature, this Certificate shall not be entitled to any benefit under the Agreement
for any purpose.

---

        IN WITNESS WHEREOF, the Trustee has caused this Certificate to be duly executed

Dated: _____               [_____],
                                           as Trustee


                               By: _____
                                   Authorized Signatory


                    CERTIFICATE OF AUTHENTICATION

       This is one of the Class A-    Certificates referred to in the within-mentione


                               [_____],
                                 as Certificate Registrar


                               By: _____
                                   Authorized Signatory

---

                               ASSIGNMENT

        FOR  VALUE  RECEIVED,  the  undersigned  hereby  sell(s),  assign(s)  and  t
_____(Please print or t
address  including  postal  zip  code  of  assignee)  a  Percentage  Interest  evidenced  by  the
Asset-Backed  Pass-Through  Certificate  and  hereby  authorizes  the  transfer  of  registration  of
assignee  on  the  Certificate  Register  of  the  Trust  Fund.

        I  (We)  further  direct  the  Certificate  Registrar  to  issue  a  new  Certifi
denomination  and  Class,  to  the  above  named  assignee  and  deliver  such  Certificate  to  the  follov

---

Dated: _____       _____
                                       Signature by or on behalf of assignor

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 150 of 180

_____
Signature Guaranteed


DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions  shall be made, by wire transfer or otherwise,  in immediately  available funds
_____ for   the   account
_____account  number _____, or, if  mailed  by check,
_____. Applicable  statements  should  be  maile
_____.

This  information is provided by _____, the assignee  named above,
_____, as its agent.




_____



EXHIBIT E


FORM OF SELLER/SERVICER CONTRACT

        This Seller/Servicer Contract (as may be amended, supplemented or otherwise modified f
time, this "Contract") is made this _____ day of  _____, 20 _____
Residential Funding Corporation, its successors and assigns ("Residential Funding") and
_____ (the "Seller/Servicer," and, together with Resident
"parties" and each, individually, a "party").

        WHEREAS, the Seller/Servicer desires to sell Loans to, and/or service Loans for, Resic
and Residential Funding desires to purchase Loans from the Seller/Servicer and/or have the Sel
service various of its Loans, pursuant to the terms of this Contract and the Residential Fundi
Servicer Guides incorporated herein by reference, as amended, supplemented or otherwise modifi
to time (together, the "Guides").

        NOW, THEREFORE, in consideration of the premises, and the terms, conditions and agreem
below, the parties agree as follows:

1.      INCORPORATION OF GUIDES BY REFERENCE.

        The Seller/Servicer acknowledges that it has received and read the Guides.  All provis
Guides are incorporated by reference into and made a part of this Contract, and shall be bindi
parties; provided, however, that the Seller/Servicer shall be entitled to sell Loans to and/or
for Residential Funding only if and for so long as it shall have been authorized to do so by F
Funding in writing.  Specific reference in this Contract to particular provisions of the Guide
other provisions does not mean that those provisions of the Guides not specifically cited in t
are not applicable.  All terms used herein shall have the same meanings as such terms have in
unless the context clearly requires otherwise.

2.      AMENDMENTS.

        This Contract may not be amended or modified orally, and no provision of this Contract
or amended except in writing signed by the party against whom enforcement is sought.  Such a v
or amendment must expressly reference this Contract.  However, by their terms, the Guides may
supplemented by Residential Funding from time to time.  Any such amendment(s) to the Guides sh
upon the parties hereto.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 151 of 180

3.    REPRESENTATIONS AND WARRANTIES.

a.    Reciprocal Representations and Warranties.

The Seller/Servicer and Residential Funding each represents and warrants to the
of the date of this Contract:

(1)    Each party is duly organized, validly existing, and in good standing under the laws of
jurisdiction of organization, is qualified, if necessary, to do business
standing in each jurisdiction in which it is required to be so qualified
requisite power and authority to enter into this Contract and all other
which are contemplated by this Contract and to carry out its obligations
under the Guides and under such other agreements.

(2)    This Contract has been duly authorized, executed and delivered by each party and const
and legally binding agreement of each party enforceable in accordance wi

(3)    There is no action, proceeding or investigation pending or threatened, and no basis th
to either party, that could affect the validity or prospective validity
Contract.

(4)    Insofar as its capacity to carry out any obligation under this Contract is concerned,
in violation of any charter, articles of incorporation, bylaws, mortgage
indebtedness, agreement, instrument, judgment, decree, order, statute, i
regulation and none of the foregoing adversely affects its capacity to f
its obligations under this Contract.  Its execution of, and performance
this Contract will not result in a violation of any of the foregoing.

b.    Seller/Servicer's Representations, Warranties and Covenants.

In addition to the representations, warranties and covenants made by the Seller
pursuant to subparagraph (a) of this paragraph 3, the Seller/Servicer makes the
representations, warranties and covenants set forth in the Guides and, upon rec
deliver to Residential Funding the certified Resolution of Board of Directors v
the execution and delivery of this Contract.

4.    REMEDIES OF RESIDENTIAL FUNDING.

If an Event of Seller Default or an Event of Servicer Default shall occur, Residential
its option, exercise one or more of those remedies set forth in the Guides.

5.    SELLER/SERVICER'S STATUS AS INDEPENDENT CONTRACTOR.

At no time shall the Seller/Servicer represent that it is acting as an agent of Reside
The Seller/Servicer shall, at all times, act as an independent contractor.

6.    PRIOR AGREEMENTS SUPERSEDED.

This Contract restates, amends and supersedes any and all prior Seller Contracts or Se
between the parties except that any subservicing agreement executed by the Seller/Servicer in
any loan-security exchange transaction shall not be affected.

7.    ASSIGNMENT.

This Contract may not be assigned or transferred, in whole or in part, by the Seller/S
the prior written consent of Residential Funding.  Residential Funding may sell, assign, conve
pledge or in any other way transfer, in whole or in part, without restriction, its rights unde
and the Guides with respect to any Commitment or Loan.

8.    NOTICES.

All notices, requests, demands or other communications that are to be given under this
be in writing, addressed to the appropriate parties and sent by telefacsimile or by overnight
United States mail, postage prepaid, to the addresses and telefacsimile numbers specified belo
another name, address and/or telefacsimile number may be substituted by the Seller/Servicer pu
requirements of this paragraph 8, or Residential Funding pursuant to an amendment to the Guide

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 152 of 180

If to Residential Funding, notices must be sent to the appropriate address or telefacsimile nu
in the Guides.

If to the Seller/Servicer, notice must be sent to:

            Attention:
            Telefacsimile Number:   (_____)   _____-_____

9.      JURISDICTION AND VENUE.

        Each of the parties irrevocably submits to the jurisdiction of any state or federal co
Hennepin County, Minnesota, over any action, suit or proceeding to enforce or defend any right
Contract or otherwise arising from any loan sale or servicing relationship existing in connect
Contract, and each of the parties irrevocably agrees that all claims in respect of any such ac
proceeding may be heard or determined in such state or federal court.  Each of the parties ir
the defense of an inconvenient forum to the maintenance of any such action or proceeding and a
substantive or procedural rights or remedies it may have with respect to the maintenance of an
or proceeding in any such forum.  Each of the parties agrees that a final judgment in any such
proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the ju
any other manner provided by law.  Each of the parties further agrees not to institute any leg
proceedings against the other party or any director, officer, employee, attorney, agent or pro
other party, arising out of or relating to this Contract in any court other than as hereinabov
this paragraph 9.

10.     MISCELLANEOUS.

        This Contract, including all documents incorporated by reference herein, constitutes t
understanding between the parties hereto and supersedes all other agreements, covenants, repre
warranties, understandings and communications between the parties, whether written or oral, wi
the transactions contemplated by this Contract.  All paragraph headings contained herein are f
only and shall not be construed as part of this Contract.  Any provision of this Contract that
or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the ext
prohibition or unenforceability without invalidating the remaining portions hereof or affectin
or enforceability of such provision in any other jurisdiction, and, to this end, the provision
severable.  This Contract shall be governed by, and construed and enforced in accordance with,
federal laws and the laws of the State of Minnesota.

_____

        IN WITNESS WHEREOF, the duly authorized officers of the Seller/Servicer and Residentia
executed this Seller/Servicer Contract as of the date first above written.

ATTEST:                                SELLER/SERVICER

[Corporate Seal]

                                              (Name of Seller/Servicer)
By:                                    By:
        (Signature)                           (Signature)
By:                                    By:
        (Typed Name)                          (Typed Name)
Title:                                 Title:
===================================== ===================================================

ATTEST:                                RESIDENTIAL FUNDING CORPORATION
[Corporate Seal]

By:                                    By:
        (Signature)                           (Signature)
By:                                    By:
        (Typed Name)                          (Typed Name)

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 153 of 180

Title:                                    Title:

---

EXHIBIT F
FORMS OF REQUEST FOR RELEASE

DATE:

TO:

RE:            REQUEST FOR RELEASE OF DOCUMENTS

In connection with the administration of the pool of Mortgage Loans held by you for the refere
request the release of the Mortgage Loan File described below.

Pooling and Servicing Agreement Dated:
Series#:
Account#:
Pool#:
Loan#:
MIN#:
Borrower Name(s):
Reason for Document Request:        (circle one)

        Mortgage Loan Prepaid in Full            Mortgage Loan Repurchased

"We hereby certify that all amounts received or to be received in connection with such payment
required to be deposited have been or will be so deposited as provided in the Pooling and Serv
Agreement."


Residential Funding Corporation
Authorized Signature

*********************************************************************************

TO CUSTODIAN/TRUSTEE:  Please acknowledge this request, and check off documents being enclosed
this form.  You should retain this form for your files in accordance with the terms of the Poo
Servicing Agreement.

Enclosed Documents:            [ ]  Promissory Note
                               [ ]  Primary Insurance Policy
                               [ ]  Mortgage or Deed of Trust
                               [ ]  Assignment(s) of Mortgage or Deed of Trust
                               [ ]  Title Insurance Policy
                               [ ]  Other:

Name: _____
Title:
Date:

---

EXHIBIT G-1

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 154 of 180

FORM OF TRANSFER AFFIDAVIT AND AGREEMENT

STATE OF                          )
                                 )    ss.:
COUNTY OF                         )

[NAME OF OFFICER], being first duly sworn, deposes and says:

1.      That he is [Title of Officer] of [Name of Owner] (record or beneficial owner of the Mo
Asset-Backed Pass-Through Certificates, Series ____-___, Class R (the "Owner")), a [savings in
[corporation] duly organized and existing under the laws of [the State of _____
[the United States], on behalf of which he makes this affidavit and agreement.

2.      That the Owner (i) is not and will not be a "disqualified organization" or an electing
partnership as of [date of transfer] within the meaning of Sections 860E(e)(5) and 775, respec
Internal Revenue Code of 1986, as amended (the "Code") or an electing large partnership under S
of the Code, (ii) will endeavor to remain other than a disqualified organization for so long a
its ownership interest in the Class R Certificates, and (iii) is acquiring the Class R Certifi
own account or for the account of another Owner from which it has received an affidavit and ag
substantially the same form as this affidavit and agreement. (For this purpose, a "disqualifie
means an electing large partnership under Section 775 of the Code, the United States, any stat
subdivision thereof, any agency or instrumentality of any of the foregoing (other than an inst
of the activities of which are subject to tax and, except for the Federal Home Loan Mortgage C
majority of whose board of directors is not selected by any such governmental entity) or any f
government, international organization or any agency or instrumentality of such foreign govern
organization, any rural electric or telephone cooperative, or any organization (other than cer
cooperatives) that is generally exempt from federal income tax unless such organization is sub
on unrelated business taxable income).

3.      That the Owner is aware (i) of the tax that would be imposed on transfers of Class R C
disqualified organizations or electing large partnerships, under the Code, that applies to all
Class R Certificates after March 31, 1988; (ii) that such tax would be on the transferor (or,
transfers to electing large partnerships, on each such partnership), or, if such transfer is t
(which person includes a broker, nominee or middleman) for a disqualified organization, on the
that the person (other than with respect to transfers to electing large partnerships) otherwis
the tax shall be relieved of liability for the tax if the transferee furnishes to such person
that the transferee is not a disqualified organization and, at the time of transfer, such pers
have actual knowledge that the affidavit is false; and (iv) that the Class R Certificates may
residual interests" within the meaning of Treasury regulations promulgated pursuant to the Coo
transferor of a noneconomic residual interest will remain liable for any taxes due with respec
on such residual interest, unless no significant purpose of the transfer was to impede the ass
collection of tax.

4.      That the Owner is aware of the tax imposed on a "pass-through entity" holding Class R
either the pass-through entity is an electing large partnership under Section 775 of the Code
time during the taxable year of the pass-through entity a disqualified organization is the rec
an interest in such entity. (For this purpose, a "pass through entity" includes a regulated i
company, a real estate investment trust or common trust fund, a partnership, trust or estate,
cooperatives.)

5.      The Owner is either (i) a citizen or resident of the United States, (ii) a corporation
other entity treated as a corporation or a partnership for U.S. federal income tax purposes an
organized in or under the laws of the United States, any state thereof or the District of Colu
than a partnership that is not treated as a United States person under any applicable Treasury
(iii) an estate that is described in Section 7701(a)(30)(D) of the Code, or (iv) a trust that
Section 7701(a)(30)(E) of the Code.

6.      The Owner hereby agrees that it will not cause income from the Class R Certificates to
to a foreign permanent establishment or fixed base (within the meaning of an applicable income
the Owner or another United States taxpayer).

7.      That the Owner is aware that the Trustee will not register the transfer of any Class R
unless the transferee, or the transferee's agent, delivers to it an affidavit and agreement, a
things, in substantially the same form as this affidavit and agreement.  The Owner expressly a
will not consummate any such transfer if it knows or believes that any of the representations
such affidavit and agreement are false.

8.      That the Owner has reviewed the restrictions set forth on the face of the Class R Cert

provisions of Section 5.02(f) of the Pooling and Servicing Agreement under which the Class R C
were issued (in particular, clause (iii)(A) and (iii)(B) of Section 5.02(f) which authorize th
deliver payments to a person other than the Owner and negotiate a mandatory sale by the Truste
the Owner holds such Certificates in violation of Section 5.02(f)).  The Owner expressly agree
by and to comply with such restrictions and provisions.

9.     That the Owner consents to any additional restrictions or arrangements that shall be c
upon advice of counsel to constitute a reasonable arrangement to ensure that the Class R Certi
only be owned, directly or indirectly, by an Owner that is not a disqualified organization.

10.    The Owner's Taxpayer Identification Number is _____.

11.    This affidavit and agreement relates only to the Class R Certificates held by the Owne
other holder of the Class R Certificates.  The Owner understands that the liabilities describe
only to the Class R Certificates.

12.    That no purpose of the Owner relating to the transfer of any of the Class R Certificat
is or will be to impede the assessment or collection of any tax; in making this representation
warrants that the Owner is familiar with (i) Treasury Regulation Section 1.860E-1(c) and recen
thereto, effective as of July 19, 2002, and (ii) the preamble describing the adoption of the a
such regulation, which is attached hereto as Exhibit 1.

13.    That the Owner has no present knowledge or expectation that it will be unable to pay a
taxes owed by it so long as any of the Certificates remain outstanding.  In this regard, the C
represents to and for the benefit of the person from whom it acquired the Class R Certificate
intends to pay taxes associated with holding such Class R Certificate as they become due, full
that it may incur tax liabilities in excess of any cash flows generated by the Class R Certifi

14.    That the Owner has no present knowledge or expectation that it will become insolvent c
bankruptcy proceeding for so long as any of the Class R Certificates remain outstanding.

15.    The Purchaser is not an employee benefit plan or other plan subject to the prohibited
provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Se
the Code, or an investment manager, named fiduciary or a trustee of any such plan, or any othe
acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets"
plan.

_____

          IN WITNESS WHEREOF, the Owner has caused this instrument to be executed on its
to the authority of its Board of Directors, by its [Title of Officer] and its corporate seal t
attached, attested by its [Assistant] Secretary, this          day of


                              [NAME OF OWNER]


                    By: _____
                         [Name of Officer]
                         [Title of Officer]
[Corporate Seal]

ATTEST:


[Assistant] Secretary

          Personally appeared before me the above-named [Name of Officer], known or prove
the same person who executed the foregoing instrument and to be the [Title of Officer] of the
acknowledged to me that he executed the same as his free act and deed and the free act and dee

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 156 of 180

Subscribed and sworn before me this _____ day of _____, 200__.




NOTARY PUBLIC


COUNTY OF _____
STATE OF
 My Commission expires the _____ day of _____, 20


---


EXHIBIT 1

DEPARTMENT OF THE TREASURY

Internal Revenue Service

26 CFR Parts 1 and 602

[TD 9004]
RIN 1545-AW98


Real Estate Mortgage Investment Conduits

AGENCY: Internal Revenue Service (IRS), Treasury.

ACTION: Final regulations.

-----------------------------------------------------------------------

SUMMARY: This document contains final regulations relating to safe
harbor transfers of noneconomic residual interests in real estate
mortgage investment conduits (REMICs). The final regulations provide
additional limitations on the circumstances under which transferors may
claim safe harbor treatment.

DATES: Effective Date: These regulations are effective July 19, 2002.
    Applicability Date: For dates of applicability, see Sec. 1.860E-
(1)(c)(10).

FOR FURTHER INFORMATION CONTACT: Courtney Shepardson at (202) 622-3940
(not a toll-free number).

SUPPLEMENTARY INFORMATION:

Paperwork Reduction Act

    The collection of information in this final rule has been reviewed
and, pending receipt and evaluation of public comments, approved by the
Office of Management and Budget (OMB) under 44 U.S.C. 3507 and assigned
control number 1545-1675.
    The collection of information in this regulation is in Sec. 1.860E-
1(c)(5)(ii). This information is required to enable the IRS to verify
that a taxpayer is complying with the conditions of this regulation.
The collection of information is mandatory and is required. Otherwise,
the taxpayer will not receive the benefit of safe harbor treatment as
provided in the regulation. The likely respondents are businesses and
other for-profit institutions.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 157 of 180

Comments on the collection of information should be sent to the Office of Management and Budget, Attn: Desk Officer for the Department of the Treasury, Office of Information and Regulatory Affairs, Washington, DC, 20503, with copies to the Internal Revenue Service, Attn: IRS Reports Clearance Officer, W:CAR:MP:FP:S, Washington, DC 20224. Comments on the collection of information should be received by September 17, 2002. Comments are specifically requested concerning:

Whether the collection of information is necessary for the proper performance of the functions of the Internal Revenue Service, including whether the information will have practical utility;

The accuracy of the estimated burden associated with the collection of information (see below);

How the quality, utility, and clarity of the information to be collected may be enhanced;

How the burden of complying with the collection of information may be minimized, including through the application of automated collection techniques or other forms of information technology; and

Estimates of capital or start-up costs and costs of operation, maintenance, and purchase of service to provide information.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

The estimated total annual reporting burden is 470 hours, based on an estimated number of respondents of 470 and an estimated average annual burden hours per respondent of one hour.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

Background

This document contains final regulations regarding the proposed amendments to 26 CFR part 1 under section 860E of the Internal Revenue Code (Code). The regulations provide the circumstances under which a transferor of a noneconomic REMIC residual interest meeting the investigation and representation requirements may avail itself of the safe harbor by satisfying either the formula test or the asset test.

Final regulations governing REMICs, issued in 1992, contain rules governing the transfer of noneconomic REMIC residual interests. In general, a transfer of a noneconomic residual interest is disregarded for all tax purposes if a significant purpose of the transfer is to

[[Page 47452]]

enable the transferor to impede the assessment or collection of tax. A purpose to impede the assessment or collection of tax (a wrongful purpose) exists if the transferor, at the time of the transfer, either knew or should have known that the transferee would be unwilling or unable to pay taxes due on its share of the REMIC's taxable income.

Under a safe harbor, the transferor of a REMIC noneconomic residual interest is presumed not to have a wrongful purpose if two requirements are satisfied: (1) the transferor conducts a reasonable investigation of the transferee's financial condition (the investigation requirement); and (2) the transferor secures a representation from the transferee to the effect that the transferee understands the tax obligations associated with holding a residual interest and intends to pay those taxes (the representation requirement).

The IRS and Treasury have been concerned that some transferors of noneconomic residual interests claim they satisfy the safe harbor even in situations where the economics of the transfer clearly indicate the transferee is unwilling or unable to pay the tax associated with holding the interest. For this reason, on February 7, 2000, the IRS published in the Federal Register (65 FR 5807) a notice of proposed rulemaking (REG-100276-97; REG-122450-98) designed to clarify the safe harbor by adding the "formula test," an economic test. The proposed regulation provides that the safe harbor is unavailable unless the present value of the anticipated tax liabilities associated with

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 158 of 180

holding the residual interest does not exceed the sum of: (1) the
present value of any consideration given to the transferee to acquire
the interest; (2) the present value of the expected future
distributions on the interest; and (3) the present value of the
anticipated tax savings associated with holding the interest as the
REMIC generates losses.

The notice of proposed rulemaking also contained rules for FASITs.
Section 1.860H-6(g) of the proposed regulations provides requirements
for transfers of FASIT ownership interests and adopts a safe harbor by
reference to the safe harbor provisions of the REMIC regulations.

In January 2001, the IRS published Rev. Proc. 2001-12 (2001-3
I.R.B. 335) to set forth an alternative safe harbor that taxpayers
could use while the IRS and the Treasury considered comments on the
proposed regulations. Under the alternative safe harbor, if a
transferor meets the investigation requirement and the representation
requirement but the transfer fails to meet the formula test, the
transferor may invoke the safe harbor if the transferee meets a two-
prong test (the asset test). A transferee generally meets the first
prong of this test if, at the time of the transfer, and in each of the
two years preceding the year of transfer, the transferee's gross assets
exceed $100 million and its net assets exceed $10 million. A transferee
generally meets the second prong of this test if it is a domestic,
taxable corporation and agrees in writing not to transfer the interest
to any person other than another domestic, taxable corporation that
also satisfies the requirements of the asset test. A transferor cannot
rely on the asset test if the transferor knows, or has reason to know,
that the transferee will not comply with its written agreement to limit
the restrictions on subsequent transfers of the residual interest.

Rev. Proc. 2001-12 provides that the asset test fails to be
satisfied in the case of a transfer or assignment of a noneconomic
residual interest to a foreign branch of an otherwise eligible
transferee. If such a transfer or assignment were permitted, a
corporate taxpayer might seek to claim that the provisions of an
applicable income tax treaty would resource excess inclusion income as
foreign source income, and that, as a consequence, any U.S. tax
liability attributable to the excess inclusion income could be offset
by foreign tax credits. Such a claim would impede the assessment or
collection of U.S. tax on excess inclusion income, contrary to the
congressional purpose of assuring that such income will be taxable in
all events. See, e.g., sections 860E(a)(1), (b), (e) and 860G(b) of the
Code.

The Treasury and the IRS have learned that certain taxpayers
transferring noneconomic residual interests to foreign branches have
attempted to rely on the formula test to obtain safe harbor treatment
in an effort to impede the assessment or collection of U.S. tax on
excess inclusion income. Accordingly, the final regulations provide
that if a noneconomic residual interest is transferred to a foreign
permanent establishment or fixed base of a U.S. taxpayer, the transfer
is not eligible for safe harbor treatment under either the asset test
or the formula test. The final regulations also require a transferee to
represent that it will not cause income from the noneconomic residual
interest to be attributable to a foreign permanent establishment or
fixed base.

Section 1.860E-1(c)(8) provides computational rules that a taxpayer
may use to qualify for safe harbor status under the formula test.
Section 1.860E-1(c)(8)(i) provides that the transferee is presumed to
pay tax at a rate equal to the highest rate of tax specified in section
11(b). Some commentators were concerned that this presumed rate of
taxation was too high because it does not take into consideration
taxpayers subject to the alternative minimum tax rate. In light of the
comments received, this provision has been amended in the final
regulations to allow certain transferees that compute their taxable
income using the alternative minimum tax rate to use the alternative
minimum tax rate applicable to corporations.

Additionally, Sec. 1.860E-1(c)(8)(iii) provides that the present
values in the formula test are to be computed using a discount rate
equal to the applicable Federal short-term rate prescribed by section
1274(d). This is a change from the proposed regulation and Rev. Proc.

2001-12. In those publications the provision stated that "present
values are computed using a discount rate equal to the applicable
Federal rate prescribed in section 1274(d) compounded semiannually"
and that "[a] lower discount rate may be used if the transferee can
demonstrate that it regularly borrows, in the course of its trade or
business, substantial funds at such lower rate from an unrelated third
party." The IRS and the Treasury Department have learned that, based
on this provision, certain taxpayers have been attempting to use
unrealistically low or zero interest rates to satisfy the formula test,
frustrating the intent of the test. Furthermore, the Treasury
Department and the IRS believe that a rule allowing for a rate other
than a rate based on an objective index would add unnecessary
complexity to the safe harbor. As a result, the rule in the proposed
regulations that permits a transferee to use a lower discount rate, if
the transferee can demonstrate that it regularly borrows substantial
funds at such lower rate, is not included in the final regulations; and
the Federal short-term rate has been substituted for the applicable
Federal rate. To simplify taxpayers' computations, the final
regulations allow use of any of the published short-term rates,
provided that the present values are computed with a corresponding
period of compounding. With the exception of the provisions relating to
transfers to foreign branches, these changes generally have the
proposed applicability date of February 4, 2000, but taxpayers may
choose to apply the interest rate formula set forth in the proposed
regulation and Rev. Proc. 2001-12 for transfers occurring before August
19, 2002.

It is anticipated that when final regulations are adopted with
respect to

[[Page 47453]]

FASITs, Sec. 1.860H-6(g) of the proposed regulations will be adopted in
substantially its present form, with the result that the final
regulations contained in this document will also govern transfers of
FASIT ownership interests with substantially the same applicability
date as is contained in this document.

Effect on Other Documents

Rev. Proc. 2001-12 (2001-3 I.R.B. 335) is obsolete for transfers of
noneconomic residual interests in REMICs occurring on or after August
19, 2002.

Special Analyses

It is hereby certified that these regulations will not have a
significant economic impact on a substantial number of small entities.
This certification is based on the fact that it is unlikely that a
substantial number of small entities will hold REMIC residual
interests. Therefore, a Regulatory Flexibility Analysis under the
Regulatory Flexibility Act (5 U.S.C. chapter 6) is not required. It has
been determined that this Treasury decision is not a significant
regulatory action as defined in Executive Order 12866. Therefore, a
regulatory assessment is not required. It also has been determined that
sections 553(b) and 553(d) of the Administrative Procedure Act (5
U.S.C. chapter 5) do not apply to these regulations.

Drafting Information

The principal author of these regulations is Courtney Shepardson.
However, other personnel from the IRS and Treasury Department
participated in their development.

List of Subjects

26 CFR Part 1

Income taxes, Reporting and record keeping requirements.

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 160 of 180

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

26 CFR Part 602

    Reporting and record keeping requirements.

Adoption of Amendments to the Regulations

    Accordingly, 26 CFR parts 1 and 602 are amended as follows:

PART 1--INCOME TAXES

    Paragraph 1. The authority citation for part 1 continues to read in
part as follows:

    Authority: 26 U.S.C. 7805 * * *

---

EXHIBIT G-2

FORM OF TRANSFEROR CERTIFICATE

_____, 20

Residential Accredit Loans, Inc.
8400 Normandale Lake Boulevard
Suite 250
Minneapolis, Minnesota  55437

_____
_____
_____

Attention:  Residential Funding Corporation Series ____-___

            Re:   Mortgage Asset-Backed Pass-Through Certificates,
                  Series ____-___, Class R

Ladies and Gentlemen:

            This letter is delivered to you in connection with the transfer by
                  _____(the "Sel
                  _____(the "Purcha
$ _____ Initial Certificate Principal Balance of Mortgage Asset-Backed Pas
Certificates, Series ____-___, Class R (the "Certificates"), pursuant to Section 5.02 of the P
Servicing Agreement (the "Pooling and Servicing Agreement"), dated as of _____ 1, ____ a
Residential Accredit Loans, Inc., as seller (the "Company"), Residential Funding Corporation,
servicer (the "Master Servicer"), and _____, as trustee (the "Trustee").  All ter
and not otherwise defined shall have the meanings set forth in the Pooling and Servicing Agree
Seller hereby certifies, represents and warrants to, and covenants with, the Company and the T

1.      No purpose of the Seller relating to the transfer of the Certificate by the Seller to
or will be to impede the assessment or collection of any tax.

2.      The Seller understands that the Purchaser has delivered to the Trustee and the Master
transfer affidavit and agreement in the form attached to the Pooling and Servicing Agreement a

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 161 of 180

The Seller does not know or believe that any representation contained therein is false.

3.    The Seller has at the time of the transfer conducted a reasonable investigation of the condition of the Purchaser as contemplated by Treasury Regulations Section 1.860E-1(c)(4)(i) a of that investigation, the Seller has determined that the Purchaser has historically paid its become due and has found no significant evidence to indicate that the Purchaser will not conti debts as they become due in the future.  The Seller understands that the transfer of a Class I may not be respected for United States income tax purposes (and the Seller may continue to be United States income taxes associated therewith) unless the Seller has conducted such an inves

4.    The Seller has no actual knowledge that the proposed Transferee is not both a United S a Permitted Transferee.

                              Very truly yours,


                              (Seller)



                              By:
                              Name:
                              Title:




EXHIBIT H


FORM OF INVESTOR REPRESENTATION LETTER


_____, 20

Residential Accredit Loans, Inc.
8400 Normandale Lake Boulevard
Suite 250
Minneapolis, MN 55437


_____
_____
_____


Residential Funding Corporation
8400 Normandale Lake Boulevard
Suite 250
Minneapolis, MN  55437

Attention:  Residential Funding Corporation Series _____-___

          RE:    Mortgage Asset-Backed Pass-Through Certificates,
                 Series _____-___, [Class B-]

Ladies and Gentlemen:

                              _____(the "Purchaser") intends to pur
_____(the "Seller") $_____
Certificate Principal Balance of Mortgage Asset-Backed Pass-Through Certificates, Series _____-
(the "Certificates"), issued pursuant to the Pooling and Servicing Agreement (the "Pooling and
Agreement"), dated as of _____ 1, ____ among Residential Accredit Loans, Inc., as seller
"Company"), Residential Funding Corporation, as master servicer (the "Master Servicer"), and
_____, as trustee (the "Trustee").  All terms used herein and not otherwise defir

the meanings set forth in the Pooling and Servicing Agreement.  The Purchaser hereby certifies
and warrants to, and covenants with, the Company, the Trustee and the Master Servicer that:

1.  The Purchaser understands that (a) the Certificates have not been and will not be regi
     qualified under the Securities Act of 1933, as amended (the "Act") or any state
     (b) the Company is not required to so register or qualify the Certificates, (c)
     Certificates may be resold only if registered and qualified pursuant to the pro
     Act or any state securities law, or if an exemption from such registration and
     available, (d) the Pooling and Servicing Agreement contains restrictions regard
     of the Certificates and (e) the Certificates will bear a legend to the foregoi

2.  The Purchaser is acquiring the Certificates for its own account for investment only ar
     view to or for sale in connection with any distribution thereof in any manner t
     violate the Act or any applicable state securities laws.

3.  The Purchaser is (a) a substantial, sophisticated institutional investor having such k
     experience in financial and business matters, and, in particular, in such matte
     securities similar to the Certificates, such that it is capable of evaluating t
     risks of investment in the Certificates, (b) able to bear the economic risks of
     investment and (c) an "accredited investor" within the meaning of Rule 501(a) p
     pursuant to the Act.

4.  The Purchaser has been furnished with, and has had an opportunity to review (a) [a cop
     Placement Memorandum, dated                                    , 20    , rel
     Certificates (b)] a copy of the Pooling and Servicing Agreement and [b] [c] suc
     information concerning the Certificates, the Mortgage Loans and the Company as
     requested by the Purchaser from the Company or the Seller and is relevant to th
     decision to purchase the Certificates.  The Purchaser has had any questions ari
     review answered by the Company or the Seller to the satisfaction of the Purchas
     Purchaser did not purchase the Certificates from the Seller in connection with
     distribution of the Certificates and was provided with a copy of the Private Pl
     Memorandum (the "Memorandum") relating to the original sale (the "Original Sale
     Certificates by the Company, the Purchaser acknowledges that such Memorandum wa
     by the Seller, that the Memorandum was prepared by the Company solely for use i
     with the Original Sale and the Company did not participate in or facilitate in
     purchase of the Certificates by the Purchaser from the Seller, and the Purchase
     will look solely to the Seller and not to the Company with respect to any damag
     claim or expense arising out of, resulting from or in connection with (a) error
     alleged error or omission, contained in the Memorandum, or (b) any information,
     event arising after the date of the Memorandum.]

5.  The Purchaser has not and will not nor has it authorized or will it authorize any pers
     pledge, sell, dispose of or otherwise transfer any Certificate, any interest in
     or any other similar security to any person in any manner, (b) solicit any offe
     accept a pledge, disposition of other transfer of any Certificate, any interest
     Certificate or any other similar security from any person in any manner, (c) ot
     or negotiate with respect to any Certificate, any interest in any Certificate c
     similar security with any person in any manner, (d) make any general solicitati
     general advertising or in any other manner or (e) take any other action, that (
     through (e) above) would constitute a distribution of any Certificate under the
     render the disposition of any Certificate a violation of Section 5 of the Act c
     securities law, or that would require registration or qualification pursuant th
     Purchaser will not sell or otherwise transfer any of the Certificates, except i
     with the provisions of the Pooling and Servicing Agreement.

6.  The Purchaser

(a)  is not an employee benefit or other plan subject to the prohibited transaction provisi
      Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Secti
      Internal Revenue Code of 1986, as amended (a "Plan"), or any other person (incl
      investment manager, a named fiduciary or a trustee of any Plan) acting, directl
      on behalf of or purchasing any Certificate with "plan assets" of any Plan withi
      the Department of Labor ("DOL") regulation at 29 C.F.R.ss.2510.3-101; or

(b)  is an insurance company, the source of funds to be used by it to purchase the Certific
      "insurance company general account" (within the meaning of DOL Prohibited Trans
      Exemption ("PTCE") 95-60), and the purchase is being made in reliance upon the
      the exemptive relief afforded under Sections I and III of PTCE 95-60.

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 163 of 180

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

In addition, the Purchaser hereby certifies, represents and warrants to, and covenants
Company, the Trustee and the Master Servicer that the Purchaser will not transfer such Certifi
Plan or person unless such Plan or person meets the requirements set forth in either 6(a) or (

Very truly yours,

By:
Name:
Title:

---

EXHIBIT I

FORM OF TRANSFEROR REPRESENTATION LETTER

_____ , 20

Residential Accredit Loans, Inc.
8400 Normandale Lake Boulevard
Suite 250
Minneapolis, MN 55437

_____
_____
_____

Attention: Residential Funding Corporation Series ____-____

          Re:    Mortgage Asset-Backed Pass-Through Certificates,
                 Series ____-____, [Class B-]

Ladies and Gentlemen:

          In connection with the sale by _____ (the "Seller") to _____
"Purchaser") of $_____ Initial Certificate Principal Balance of Mortgage Asset-Backed
Certificates, Series ____-____, Class   (the "Certificates"), issued pursuant to the Pooling an
Agreement (the "Pooling and Servicing Agreement"), dated as of _____ 1, ____ among Resid
Loans, Inc., as seller (the "Company"), Residential Funding Corporation, as master servicer, a
_____, as trustee (the "Trustee").  The Seller hereby certifies, represents and v
covenants with, the Company and the Trustee that:

          Neither the Seller nor anyone acting on its behalf has (a) offered, pledged, so
or otherwise transferred any Certificate, any interest in any Certificate or any other similar
any person in any manner, (b) has solicited any offer to buy or to accept a pledge, dispositio
transfer of any Certificate, any interest in any Certificate or any other similar security fro
any manner, (c) has otherwise approached or negotiated with respect to any Certificate, any in
Certificate or any other similar security with any person in any manner, (d) has made any gene
solicitation by means of general advertising or in any other manner, or (e) has taken any othe
(as to any of (a) through (e) above) would constitute a distribution of the Certificates under
Act of 1933 (the "Act"), that would render the disposition of any Certificate a violation of S
Act or any state securities law, or that would require registration or qualification pursuant
Seller will not act, in any manner set forth in the foregoing sentence with respect to any Cer
Seller has not and will not sell or otherwise transfer any of the Certificates, except in comp

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 164 of 180

provisions of the Pooling and Servicing Agreement.

Very truly yours,

(Seller)

By:
Name:
Title:

---

EXHIBIT J

[FORM OF RULE 144A INVESTMENT REPRESENTATION]

Description of Rule 144A Securities, including numbers:

The undersigned  seller, as registered holder (the "Seller"), intends to transf
Securities described above to the undersigned buyer (the "Buyer").

1.       In connection with such transfer and in accordance with the agreements pursuant to whi
Securities were issued, the Seller hereby certifies the following facts:  Neither the Seller n
acting on its behalf has offered, transferred, pledged, sold or otherwise disposed of the Rule
Securities, any interest in the Rule 144A Securities or any other similar security to, or soli
to buy or accept a transfer, pledge or other disposition of the Rule 144A Securities, any inte
Rule 144A Securities or any other similar security from, or otherwise approached or negotiate
to the Rule 144A Securities, any interest in the Rule 144A Securities or any other similar sec
person in any manner, or made any general solicitation by means of general advertising or in a
manner, or taken any other action, that would constitute a distribution of the Rule 144A Secur
Securities Act of 1933, as amended (the "1933 Act"), or that would render the disposition of t
Securities a violation of Section 5 of the 1933 Act or require registration pursuant thereto,
Seller has not offered the Rule 144A Securities to any person other than the Buyer or another
institutional buyer" as defined in Rule 144A under the 1933 Act.

2.       The Buyer warrants and represents to, and covenants with, the Seller, the Trustee and
Servicer (as defined in the Pooling and Servicing Agreement (the "Agreement"), dated as of ___
____ among Residential Funding Corporation as Master Servicer, Residential Accredit Loans, Inc
pursuant to Section 5.02 of the Agreement and _____, as trustee, as follows:

(a)    The Buyer understands that the Rule 144A Securities have not been registered under the
       securities laws of any state.

(b)    The Buyer considers itself a substantial, sophisticated institutional investor having
       and experience in financial and business matters that it is capable of evaluating the
       of investment in the Rule 144A Securities.

(c)    The Buyer has been furnished with all information regarding the Rule 144A Securities t
       requested from the Seller, the Trustee or the Servicer.

(d)    Neither the Buyer nor anyone acting on its behalf has offered, transferred, pledged, s
       disposed of the Rule 144A Securities, any interest in the Rule 144A Securities or any
       security to, or solicited any offer to buy or accept a transfer, pledge or other dispo
       Rule 144A Securities, any interest in the Rule 144A Securities or any other similar se

otherwise approached or negotiated with respect to the Rule 144A Securities, any inter
144A Securities or any other similar security with, any person in any manner, or made
solicitation by means of general advertising or in any other manner, or taken any othe
would constitute a distribution of the Rule 144A Securities under the 1933 Act or that
the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act o
registration pursuant thereto, nor will it act, nor has it authorized or will it autho
to act, in such manner with respect to the Rule 144A Securities.

(e)     The Buyer is a "qualified institutional buyer" as that term is defined in Rule 144A ur
and has completed either of the forms of certification to that effect attached hereto
Annex 2.  The Buyer is aware that the sale to it is being made in reliance on Rule 144
acquiring the Rule 144A Securities for its own account or the accounts of other qualif
institutional buyers, understands that such Rule 144A Securities may be resold, pledge
only (i) to a person reasonably believed to be a qualified institutional buyer that pu
own account or for the account of a qualified institutional buyer to whom notice is gi
resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to
exemption from registration under the 1933 Act.

            [3.     The Buyer

            [(a)     is not an employee benefit or other plan subject to the prohibite
provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"
4975 of the Internal Revenue Code of 1986, as amended (a "Plan"), or any other person
investment manager, a named fiduciary or a trustee of any Plan) acting, directly or in
behalf of or purchasing any Certificate with "plan assets" of any Plan within the mean
Department of Labor ("DOL") regulation at 29 C.F.R.ss.2510.3-101](1); or

            (b)     is an insurance company, the source of funds to be used by it to
Certificates is an "insurance company general account" (within the meaning of DOL Prol
Transaction Class Exemption ("PTCE") 95-60), and the purchase is being made in relianc
availability of the exemptive relief afforded under Sections I and III of PTCE 95-60.]

            4.     This document may be executed in one or more counterparts and by the dif
hereto on separate counterparts, each of which, when so executed, shall be deemed to k
such counterparts, together, shall constitute one and the same document.

            IN WITNESS WHEREOF, each of the parties has executed this document as of the da
below.


Print Name of Seller                    Print Name of Buyer
By:                                     By:
   Name:                                   Name:
   Title:                                  Title:
Taxpayer Identification                 Taxpayer Identification:
No.                                     No:
Date:                                   Date:

_____

                                                                ANN


            QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

            [For Buyers Other Than Registered Investment Companies]

            The undersigned hereby certifies as follows in connection with the Rule 144A Ir
Representation to which this Certification is attached:

1.     As indicated below, the undersigned is the President, Chief Financial Officer, Senior
or other executive officer of the Buyer.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 166 of 180

2.       In connection with purchases by the Buyer, the Buyer is a "qualified institutional buy
is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because (i) the Buyer o
invested on a discretionary basis $_____ in securities (ex
excluded securities referred to below) as of the end of the Buyer's most recent fiscal year (s
being calculated in accordance with Rule 144A) and (ii) the Buyer satisfies the criteria in th
marked below.

--       Corporation, etc.  The Buyer is a corporation (other than a bank, savings and loan ass
         similar institution), Massachusetts or similar business trust, partnership, or
         organization described in Section 501(c)(3) of the Internal Revenue Code.

--       Bank.  The Buyer (a) is a national bank or banking institution organized under the law
         territory or the District of Columbia, the business of which is substantially o
         banking and is supervised by the State or territorial banking commission or sim
         is a foreign bank or equivalent institution, and (b) has an audited net worth o
         $25,000,000 as demonstrated in its latest annual financial statements, a copy o
         attached hereto.

--       Savings and Loan.  The Buyer (a) is a savings and loan association, building and loan
         cooperative bank, homestead association or similar institution, which is superv
         examined by a State or Federal authority having supervision over any such insti
         foreign savings and loan association or equivalent institution and (b) has an a
         of at least $25,000,000 as demonstrated in its latest annual financial statemen

--       Broker-Dealer.  The Buyer is a dealer registered pursuant to Section 15 of the Securit
         of 1934.

--       Insurance Company.  The Buyer is an insurance company whose primary and predominant bu
         is the writing of insurance or the reinsuring of risks underwritten by insuranc
         which is subject to supervision by the insurance commissioner or a similar offi
         of a State or territory or the District of Columbia.

--       State or Local Plan.  The Buyer is a plan established and maintained by a State, its p
         subdivisions, or any agency or instrumentality of the State or its political su
         the benefit of its employees.

--       ERISA Plan.  The Buyer is an employee benefit plan within the meaning of Title I of th
         Retirement Income Security Act of 1974.

--       Investment Adviser.   The Buyer is an investment adviser registered under the Investme
         of 1940.

--       SBIC.  The Buyer is a Small Business Investment Company licensed by the U.S. Small Bus
         Administration under Section 301(c) or (d) of the Small Business Investment Act

--       Business Development Company.  The Buyer is a business development company as defined
         202(a)(22) of the Investment Advisers Act of 1940.

--       Trust Fund.  The Buyer is a trust fund whose trustee is a bank or trust company and wh
         are exclusively (a) plans established and maintained by a State, its political
         any agency or instrumentality of the State or its political subdivisions, for t
         its employees, or (b) employee benefit plans within the meaning of Title I of t
         Retirement Income Security Act of 1974, but is not a trust fund that includes a
         individual retirement accounts or H.R. 10 plans.

3.       The term "securities" as used herein does not include (i) securities of issuers that a
with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the
Buyer is a dealer, (iii) bank deposit notes and certificates of deposit, (iv) loan participati
repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) c
interest rate and commodity swaps.

4.       For purposes of determining the aggregate amount of securities owned and/or invested o
discretionary basis by the Buyer, the Buyer used the cost of such securities to the Buyer and
any of the securities referred to in the preceding paragraph.  Further, in determining such ag
the Buyer may have included securities owned by subsidiaries of the  Buyer, but only if such s
are consolidated with the Buyer in its financial statements prepared in accordance with genera
accounting principles and if the investments of such subsidiaries are managed under the Buyer'

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A

Pg 167 of 180

However, such securities were not included if the Buyer is a majority-owned, consolidated subs
another enterprise and the Buyer is not itself a reporting company under the Securities Exchan

5.      The Buyer acknowledges that it is familiar with Rule 144A and understands that the sel
other parties related to the Certificates are relying and will continue to rely on the stateme
because one or more sales to the Buyer may be in reliance on Rule 144A.

                        Will the Buyer be purchasing the Rule 144A
Yes          No         Securities only for the Buyer's own account?

6.      If the answer to the foregoing question is "no", the Buyer agrees that, in connection
purchase of securities sold to the Buyer for the account of a third party (including any separ
reliance on Rule 144A, the Buyer will only purchase for the account of a third party that at t
"qualified institutional buyer" within the meaning of Rule 144A.  In addition, the Buyer agree
will not purchase securities for a third party unless the Buyer has obtained a current represe
from such third party or taken other appropriate steps contemplated by Rule 144A to conclude t
party independently meets the definition of "qualified institutional buyer" set forth in Rule

7.      The Buyer will notify each of the parties to which this certification is made of any c
information and conclusions herein.  Until such notice is given, the Buyer's purchase of Rule
will constitute a reaffirmation of this certification as of the date of such purchase.




                                Print Name of Buyer


                        By:    _____
                               Name:
                               Title:


                        Date:


━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━




                                                                           ANN

                QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

                [For Buyers That Are Registered Investment Companies]

            The undersigned hereby certifies as follows in connection with the Rule 144A Ir
Representation to which this Certification is attached:

8.      As indicated below, the undersigned is the President, Chief Financial Officer or Senic
of the Buyer or, if the Buyer is a "qualified institutional buyer" as that term is defined in
the Securities Act of 1933 ("Rule 144A") because Buyer is part of a Family of Investment Compa
defined below), is such an officer of the Adviser.

9.      In connection with purchases by Buyer, the Buyer is a "qualified institutional buyer"
SEC Rule 144A because (i) the Buyer is an investment company registered under the Investment C
1940, and (ii) as marked below, the Buyer alone, or the Buyer's Family of Investment Companies
least $100,000,000 in securities (other than the excluded securities referred to below) as of
Buyer's most recent fiscal year.  For purposes of determining the amount of securities owned b
the Buyer's Family of Investment Companies, the cost of such securities was used.

--      The Buyer owned $_____ in securities (other t
                        securities referred to below) as of the end of the Buyer's most recent fiscal y

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 168 of 180

being calculated in accordance with Rule 144A).

--       The Buyer is part of a Family of Investment Companies which owned in the aggregate
              $_____in securities (other than the excluded securities refer
         below) as of the end of the Buyer's most recent fiscal year (such amount being
         accordance with Rule 144A).

10.      The term "Family of Investment Companies" as used herein means two or more registered
companies (or series thereof) that have the same investment adviser or investment advisers tha
affiliated (by virtue of being majority owned subsidiaries of the same parent or because one i
adviser is a majority owned subsidiary of the other).

11.      The term "securities" as used herein does not include (i) securities of issuers that a
with the Buyer or are part of the Buyer's Family of Investment Companies, (ii) bank deposit no
certificates of deposit, (iii) loan participations, (iv) repurchase agreements, (v) securities
subject to a repurchase agreement and (vi) currency, interest rate and commodity swaps.

12.      The Buyer is familiar with Rule 144A and understands that each of the parties to which
certification is made are relying and will continue to rely on the statements made herein beca
sales to the Buyer will be in reliance on Rule 144A.  In addition, the Buyer will only purchas
Buyer's own account.

13.      The undersigned will notify each of the parties to which this certification is made of
the information and conclusions herein.  Until such notice, the Buyer's purchase of Rule 144A
constitute a reaffirmation of this certification by the undersigned as of the date of such pur


                              Print Name of Buyer


                         By:_____
                              Name:
                              Title:


                         IF AN ADVISER:


                              Print Name of Buyer


                         Date:


_____


                              EXHIBIT K


                    [TEXT OF AMENDMENT TO POOLING AND SERVICING
                    AGREEMENT PURSUANT TO SECTION 11.01(E) FOR A
                              LIMITED GUARANTY]

                              ARTICLE XIII

              Subordinate Certificate Loss Coverage; Limited Guaranty

              Section 13.01.  Subordinate Certificate Loss Coverage; Limited Guaranty.  (a) S
subsection (c) below, prior to the later of the third Business Day prior to each Distribution
related Determination Date, the Master Servicer shall determine whether it or any Sub-Servicer
entitled to any reimbursement pursuant to Section 4.02(a) on such Distribution Date for Advanc
Sub-Servicer Advances previously made, (which will not be Advances or Sub-Servicer Advances th

with respect to delinquencies which were subsequently determined to be Excess Special Hazard I
Fraud Losses, Excess Bankruptcy Losses or Extraordinary Losses) and, if so, the Master Service
payment from Residential Funding of an amount equal to the amount of any Advances or Sub-Servi
reimbursed pursuant to Section 4.02(a), to the extent such Advances or Sub-Servicer Advances h
included in the amount of the Realized Loss in the related Mortgage Loan,  and shall distribut
the Class B Certificateholders in the same manner as if such amount were to be distributed pur
Section 4.02(a).

(b)    Subject to subsection (c) below, prior to the later of the third Busines
each Distribution Date or the related Determination Date, the Master Servicer shall determine
Realized Losses (other than Excess Special Hazard Losses, Excess Bankruptcy Losses, Excess Fra
Extraordinary Losses) will be allocated to the Class B Certificates on such Distribution Date
Section 4.05, and, if so, the Master Servicer shall demand payment from Residential Funding of
such Realized Loss and shall distribute the same to the Class B Certificateholders in the same
such amount were to be distributed pursuant to Section 4.02(a); provided, however, that the am
demand in respect of any Distribution Date shall in no event be greater than the sum of (i) th
amount of Accrued Certificate Interest that would have been paid for the Class B Certificateho
Distribution Date had such Realized Loss or Losses not occurred plus (ii) the amount of the re
Certificate Principal Balances of the Class B Certificates on such Distribution Date due to su
Loss or Losses.  Notwithstanding such payment, such Realized Losses shall be deemed to have be
Certificateholders for purposes of Section 4.05.  Excess Special Hazard Losses, Excess Fraud I
Bankruptcy Losses and Extraordinary Losses allocated to the Class B Certificates will not be c
Subordinate Certificate Loss Obligation.

(c)    Demands for payments pursuant to this Section shall be made prior to the
third Business Day prior to each Distribution Date or the related Determination Date by the Ma
with written notice thereof to the Trustee.  The maximum amount that Residential Funding shall
pay pursuant to this Section on any Distribution Date (the "Amount Available") shall be equal
of (X)                minus the sum of (i) all previous payments made under subsections (a)
and (ii) all draws under the Limited Guaranty made in lieu of such payments as described below
(d) and (Y) the then outstanding Certificate Principal Balances of the Class B Certificates, c
amount as may be established pursuant to Section 13.02.  Residential Funding's obligations as
this Section are referred to herein as the "Subordinate Certificate Loss Obligation."

(d)    The Trustee will promptly notify General Motors Acceptance Corporation c
of Residential Funding to make any payments hereunder and shall demand payment pursuant to the
guaranty (the "Limited Guaranty"), executed by General Motors Acceptance Corporation, of Resic
Funding's obligation to make payments pursuant to this Section, in an amount equal to the less
Amount Available and (ii) such required payments, by delivering to General Motors Acceptance G
written demand for payment by wire transfer, not later than the second Business Day prior to t
Date for such month, with a copy to the Master Servicer.

(e)    All payments made by Residential Funding pursuant to this Section or amou
the Limited Guaranty shall be deposited directly into the Certificate Account, for distributio
Distribution Date for such month to the Class B Certificateholders.

(f)    The Company shall have the option, in its sole discretion, to substitute
both of the Limited Guaranty or the Subordinate Certificate Loss Obligation another instrument
a corporate guaranty, an irrevocable letter of credit, a surety bond, insurance policy or simi
or a reserve fund; provided that (i) the Company obtains (subject to the provisions of Section
the Company was substituted for the Master Servicer solely for the purposes of such provision)
Counsel (which need not be an opinion of Independent counsel) to the effect that obtaining suc
corporate guaranty, irrevocable letter of credit, surety bond, insurance policy or similar ins
reserve fund will not cause either (a) any federal tax to be imposed on the Trust Fund, includ
limitation, any federal tax imposed on "prohibited transactions" under Section 860(F)(a)(1) of
"contributions after the startup date" under Section 860(G)(d)(1) of the Code or (b) the Trust
to qualify as a REMIC at any time that any Certificate is outstanding, and (ii) no such substi
made unless (A) the substitute Limited Guaranty or Subordinate Certificate Loss Obligation is
amount not less than the then current Amount Available and contains provisions that are in all
respects equivalent to the original Limited Guaranty or Subordinate Certificate Loss Obligatic
that no portion of the fees, reimbursements or other obligations under any such instrument wil
the Trust Fund), (B) the long term debt obligations of any obligor of any substitute Limited G
Subordinate Certificate Loss Obligation (if not supported by the Limited Guaranty) shall be ra
the lesser of (a) the rating of the long term debt obligations of General Motors Acceptance Cc
the date of issuance of the Limited Guaranty and (b) the rating of the long term debt obligati
Motors Acceptance Corporation at the date of such substitution and (C) the Company obtains wri
confirmation from each nationally recognized credit rating agency that rated the Class B Certi
request of the Company that such substitution shall not lower the rating on the Class B Certif

the lesser of (a) the then-current rating assigned to the Class B Certificates by such rating
the original rating assigned to the Class B Certificates by such rating agency.  Any replaceme
Limited Guaranty or Subordinate Certificate Loss Obligation pursuant to this Section shall be
a written Opinion of Counsel to the substitute guarantor or obligor, addressed to the Master S
Trustee, that such substitute instrument constitutes a legal, valid and binding obligation of
guarantor or obligor, enforceable in accordance with its terms, and concerning such other matt
Master Servicer and the Trustee shall reasonably request.  Neither the Company, the Master Ser
Trustee shall be obligated to substitute for or replace the Limited Guaranty or Subordinate Ce
Obligation under any circumstance.

        Section 13.02.  Amendments Relating to the Limited Guaranty.  Notwithstanding S
13.01: (i) the provisions of this Article XIII may be amended, superseded or deleted, (ii) the
Guaranty or Subordinate Certificate Loss Obligation may be amended, reduced or canceled, and (
provision of this Agreement which is related or incidental to the matters described in this Ar
be amended in any manner; in each case by written instrument executed or consented to by the C
Residential Funding but without the consent of any Certificateholder and without the consent o
Servicer or the Trustee being required unless any such amendment would impose any additional o
or otherwise adversely affect the interests of, the Master Servicer or the Trustee, as applica
that the Company shall also obtain a letter from each nationally recognized credit rating agen
the Class B Certificates at the request of the Company to the effect that such amendment, redu
or cancellation will not lower the rating on the Class B Certificates below the lesser of (a)
then-current rating assigned to the Class B Certificates by such rating agency and (b) the ori
assigned to the Class B Certificates by such rating agency, unless (A) the Holder of 100% of t
Certificates is Residential Funding or an Affiliate of Residential Funding, or (B) such amendm
deletion or cancellation is made in accordance with Section 11.01(e) and, provided further tha
obtains (subject to the provisions of Section 10.01(f) as if the Company was substituted for t
Servicer solely for the purposes of such provision), in the case of a material amendment or su
not a reduction, cancellation or deletion of the Limited Guaranty or the Subordinate Certifica
Obligation), an Opinion of Counsel (which need not be an opinion of Independent counsel) to th
any such amendment or supercession will not cause either (a) any federal tax to be imposed on
including without limitation, any federal tax imposed on "prohibited transactions" under Secti
of the Code or on "contributions after the startup date" under Section 860G(d)(1) of the Code
Trust Fund to fail to qualify as a REMIC at any time that any Certificate is outstanding.  A c
instrument shall be provided to the Trustee and the Master Servicer together with an Opinion o
such amendment complies with this Section 13.02.

_____

EXHIBIT L

[FORM OF LIMITED GUARANTY]

LIMITED GUARANTY

RESIDENTIAL ACCREDIT LOANS, INC.

Mortgage Asset-Backed Pass-Through Certificates
Series _____-___

                                                        _____

_____
_____
_____

Attention:  Residential Funding Corporation Series _____-___

Ladies and Gentlemen:

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 171 of 180

WHEREAS, Residential Funding Corporation, a Delaware corporation ("Residential indirect wholly-owned subsidiary of General Motors Acceptance Corporation, a New York corporat plans to incur certain obligations as described under Section 13.01 of the Pooling and Servici dated as of _____ 1, ____ (the "Servicing Agreement"), among Residential Accredit Loans, "Company"), Residential Funding and _____ (the "Trustee") as amended by Amendment thereto, dated as of _____ , with respect to the Mortgage Asset-Backed Pass-Through Series ____-___ (the "Certificates"); and

WHEREAS, pursuant to Section 13.01 of the Servicing Agreement, Residential Fund make payments to the Holders of the Class B Certificates with respect to certain losses on the as described in the Servicing Agreement; and

WHEREAS, GMAC desires to provide certain assurances with respect to the ability Funding to secure sufficient funds and faithfully to perform its Subordinate Certificate Loss

NOW THEREFORE, in consideration of the premises herein contained and certain ot valuable consideration, the receipt of which is hereby acknowledged, GMAC agrees as follows:

1.     Provision of Funds.  (a) GMAC agrees to contribute and deposit in the Certificate Acco Residential Funding (or otherwise provide to Residential Funding, or to cause to be made avail Residential Funding), either directly or through a subsidiary, in any case prior to the relate Date, such moneys as may be required by Residential Funding to perform its Subordinate Certifi Obligation when and as the same arises from time to time upon the demand of the Trustee in acc Section 13.01 of the Servicing Agreement.

(b)     The agreement set forth in the preceding clause (a) shall be absolute, i unconditional and shall not be affected by the transfer by GMAC or any other person of all or or their interest in Residential Funding, by any insolvency, bankruptcy, dissolution or other affecting Residential Funding or any other person, by any defense or right of counterclaim, se recoupment that GMAC may have against Residential Funding or any other person or by any other circumstance.  Notwithstanding the foregoing, GMAC's obligations under clause (a) shall termir earlier of (x) substitution for this Limited Guaranty pursuant to Section 13.01(f) of the Serv Agreement, or (y) the termination of the Trust Fund pursuant to the Servicing Agreement.

2.     Waiver.  GMAC hereby waives any failure or delay on the part of Residential Funding, t any other person in asserting or enforcing any rights or in making any claims or demands hereu defective or partial exercise of any such rights shall not preclude any other or further exerc any other such right.  GMAC further waives demand, presentment, notice of default, protest, no acceptance and any other notices with respect to this Limited Guaranty, including, without lir of action or nonaction on the part of Residential Funding or the Trustee.

3.     Modification, Amendment and Termination.  This Limited Guaranty may be modified, amenc only by the written agreement of GMAC and the Trustee and only if such modification, amendment is permitted under Section 13.02 of the Servicing Agreement.  The obligations of GMAC under th Guaranty shall continue and remain in effect so long as the Servicing Agreement is not modifie any way that might affect the obligations of GMAC under this Limited Guaranty without the prio consent of GMAC.

4.     Successor.  Except as otherwise expressly provided herein, the guarantee herein set fc binding upon GMAC and its respective successors.

5.     Governing Law.  This Limited Guaranty shall be governed by the laws of the State of Ne

6.     Authorization and Reliance.  GMAC understands that a copy of this Limited Guaranty sha to the Trustee in connection with the execution of Amendment No. 1 to the Servicing Agreement authorizes the Company and the Trustee to rely on the covenants and agreements set forth herei

7.     Definitions.  Capitalized terms used but not otherwise defined herein shall have the m them in the Servicing Agreement.

8.     Counterparts.  This Limited Guaranty may be executed in any number of counterparts, ea shall be deemed to be an original and such counterparts shall constitute but one and the same

IN WITNESS WHEREOF, GMAC has caused this Limited Guaranty to be executed and de respective officers thereunto duly authorized as of the day and year first above written.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 172 of 180

GENERAL MOTORS ACCEPTANCE
CORPORATION

By: _____
Name:
Title:


Acknowledged by:


_____,
    as Trustee


By:
Name:
Title:


RESIDENTIAL ACCREDIT LOANS, INC.


By:
Name:
Title:


_____


EXHIBIT M


FORM OF LENDER CERTIFICATION FOR ASSIGNMENT OF MORTGAGE LOAN


_____, 20

Residential Accredit Loans, Inc.
8400 Normandale Lake Boulevard
Suite 250
Minneapolis, Minnesota  55437


_____
_____
_____


Attention:  Residential Funding Corporation Series ____-____

            Re:    Mortgage Asset-Backed Pass-Through Certificates, Series ____-____
                   Assignment of Mortgage Loan

Ladies and Gentlemen:

            This letter is delivered to you in connection with the assignment by
_____(the "Trustee") to _____
"Lender") of _____ (the "Mortgage Loan") pursuant to Section 3.13(d)
and Servicing Agreement (the "Pooling and Servicing Agreement"), dated as of _____ 1, __
Residential Accredit Loans, Inc., as seller (the "Company"), Residential Funding Corporation,
Servicer, and the Trustee.  All terms used herein and not otherwise defined shall have the mea
in the Pooling and Servicing Agreement.  The Lender hereby certifies, represents and warrants
covenants with, the Master Servicer and the Trustee that:

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 173 of 180

(i)      the Mortgage Loan is secured by Mortgaged Property located in a jurisdiction in which
lieu of satisfaction is required to preserve lien priority, minimize or avoid mortgage recordi
otherwise comply with, or facilitate a refinancing under, the laws of such jurisdiction;

(ii)      the substance of the assignment is, and is intended to be, a refinancing of suc
and the form of the transaction is solely to comply with, or facilitate the transaction under,
laws;

(iii)      the Mortgage Loan following the proposed assignment will be modified to have a
at least 0.25 percent below or above the rate of interest on such Mortgage Loan prior to such
assignment; and

(iv)      such assignment is at the request of the borrower under the related Mortgage Lo


Very truly yours,


(Lender)


By: _____
Name:
Title:

---

EXHIBIT N


FORM OF REQUEST FOR EXCHANGE


_____
_____
_____


Re:    Residential Accredit Loans, Inc.,
Mortgage Asset-Backed Pass-Through Certificates,
Series ____-___


Residential Funding Corporation, as the Holder of a _____% Percentage Inter
[Interest Only/Class A-V][-1] Certificates, hereby requests the Trustee to exchange the above-
Certificates for the Subclasses referred to below:

1.    [Interest Only/Class A-V]-  Certificates, corresponding to the following Uncertificat
Interests: [List numbers corresponding to the related loans and Pool St
the Mortgage Loan Schedule].  The initial Subclass Notional Amount and t
Pass-Through Rate on the [Interest Only/Class A-V]-  Certificates will
$ _____ and  _____%, respectively.

2.    [Repeat as appropriate.]

The Subclasses requested above will represent in the aggregate all of the Uncer
Regular Interests represented by the [Interest Only/Class A-V][-1] Certificates surrendered fo

All capitalized terms used but not defined herein shall have the meanings set f
Pooling and Servicing Agreement, dated as of _____ 1, _____, among Residential Accredit L
Residential Funding Corporation and _____, as trustee.

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 174 of 180

RESIDENTIAL FUNDING CORPORATION


By:    _____
Name:
Title:


_____


EXHIBIT O

Form of Form 10-K Certification


I, [identify the certifying individual], certify that:

1.    I have reviewed this report on Form 10-K and all reports on Form 10-D required
respect of the period covered by this report on Form 10-K of the trust (the "Exchange Act peri
created pursuant to the Series Supplement dated _____ to the Standard Terms of F
Servicing Agreement dated _____ (together, the "P&S Agreement") among Residenti
Loans, Inc., Residential Funding Corporation (the "Master Servicer") and [Name of Trustee] (th

2.    Based on my knowledge, the Exchange Act periodic reports, taken as a whole, do
untrue statement of a material fact or omit to state a material fact necessary to make the sta
in light of the circumstances under which such statements were made, not misleading with respe
period covered by this report;

3.    Based on my knowledge, all of the distribution, servicing and other informatior
provided under Form 10-D for the period covered by this report is included in the Exchange Act
reports;

4.    I am responsible for reviewing the activities performed by the Master Servicer
knowledge and the compliance review conducted in preparing the servicer compliance statement r
report under Item 1123 of Regulation AB, and except a disclosed in the Exchange Act periodic r
Master Servicer has fulfilled its obligations under the P&S Agreement; and

5.    All of the reports on assessment of compliance with servicing criteria for asse
securities and their related attestation reports on assessment of compliance with servicing cr
asset-backed securities required to be included in this report in accordance with Item 1122 of
and Exchange Act Rules 13a-18 and 15d-18 have been included as an exhibit to this report, exce
disclosed in this report.  Any material instances of noncompliance described in such reports h
disclosed in this report on Form 10-K.

In giving the certifications above, I have reasonably relied on the information provid
following unaffiliated parties: [the Trustee].

Date:_____


_____*
[Signature]
[Title:]


* to be signed by the senior officer in charge of the servicing functions of the Master Servic

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 175 of 180

EXHIBIT P

[FORM OF BACK-UP CERTIFICATION TO FORM 10-K CERTIFICATE]

The undersigned, a Responsible Officer of [_____] (the "Trustee") certifies that:

(a)    The Trustee has performed all of the duties specifically required to be perform
pursuant to the provisions of the Pooling and Servicing Agreement dated as of [_____], 20[
"Agreement") by and among [_____], as depositor, Residential Funding Corporation, as Mast
the Trustee in accordance with the standards set forth therein.

(b)    Based on my knowledge, the list of Certificateholders as shown on the Certifica
of the end of each calendar year that is provided by the Trustee pursuant to the  Agreement is
the last day of the 20[__] calendar year.

Capitalized terms used and not defined herein shall have the meanings given such terms in the

IN WITNESS WHEREOF, I have duly executed this certificate as of _____, 20__.]

Name:_____
Title:

EXHIBIT Q

INFORMATION TO BE PROVIDED BY THE MASTER SERVICER TO THE RATING AGENCIES RELATING TO REPORT
MORTGAGE LOANS

Account number

Transaction Identifier
Unpaid Principal Balance prior to Modification
Next Due Date
Monthly Principal and Interest Payment
Total Servicing Advances
Current Interest Rate
Original Maturity Date
Original Term to Maturity (Months)
Remaining Term to Maturity (Months)
Trial Modification Indicator
Mortgagor Equity Contribution
Total Servicer Advances
Trial Modification Term (Months)
Trial Modification Start Date

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 176 of 180

```
Trial Modification End Date
Trial Modification Period Principal and Interest Payment
Trial Modification Interest Rate
Trial Modification Term
Rate Reduction Indicator
Interest Rate Post Modification
Rate Reduction Start Date
Rate Reduction End Date
Rate Reduction Term

Term Modified Indicator
Modified Amortization Period
Modified Final Maturity Date
Total Advances Written Off
Unpaid Principal Balance Written Off
Other Past Due Amounts Written Off
Write Off Date
Unpaid Principal Balance Post Write Off
Capitalization Indicator
Mortgagor Contribution
Total Capitalized Amount
Modification Close Date
Unpaid Principal Balance  Post Capitalization Modification
Next Payment Due Date per Modification Plan
Principal and Interest Payment Post Modification

Interest Rate Post Modification
Payment Made Post Capitalization
Delinquency Status to Modification Plan
```

---

EXHIBIT R

SERVICING CRITERIA TO BE ADDRESSED IN ASSESSMENT OF COMPLIANCE

The assessment of compliance to be delivered by the Trustee shall address, at a minimu
identified as below as "Applicable Servicing Criteria":

| REFERENCE | SERVICING CRITERIA<br>CRITERIA | APPLICABLE<br>SERVICING<br>CRITERIA |
| --- | --- | --- |
| | GENERAL SERVICING CONSIDERATIONS | |
| 1122(d)(1)(i) | Policies and procedures are instituted to monitor any performance or other triggers and events of default in accordance with the transaction agreements. | |
| 1122(d)(1)(ii) | If any material servicing activities are outsourced to third parties, policies and procedures are instituted to monitor the third party's performance and compliance with such servicing activities. | |
| 1122(d)(1)(iii) | Any requirements in the transaction agreements to maintain a back-up servicer for the pool assets are | |

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 177 of 180

maintained.

| | | |
|---|---|---|
| 1122(d)(1)(iv) | A fidelity bond and errors and omissions policy is in effect on the party participating in the servicing function throughout the reporting period in the amount of coverage required by and otherwise in accordance with the terms of the transaction agreements. | |

## CASH COLLECTION AND ADMINISTRATION

| | | |
|---|---|---|
| 1122(d)(2)(i) | Payments on pool assets are deposited into the appropriate custodial bank accounts and related bank clearing accounts no more than two business days following receipt, or such other number of days specified in the transaction agreements. | \|X\| (as to accounts held by Trustee) |
| 1122(d)(2)(ii) | Disbursements made via wire transfer on behalf of an obligor or to an investor are made only by authorized personnel. | \|X\| (as to investors only) |
| 1122(d)(2)(iii) | Advances of funds or guarantees regarding collections, cash flows or distributions, and any interest or other fees charged for such advances, are made, reviewed and approved as specified in the transaction agreements. | |
| 1122(d)(2)(iv) | The related accounts for the transaction, such as cash reserve accounts or accounts established as a form of overcollateralization, are separately maintained (e.g., with respect to commingling of cash) as set forth in the transaction agreements. | \|X\| (as to accounts held by Trustee) |
| 1122(d)(2)(v) | Each custodial account is maintained at a federally insured depository institution as set forth in the transaction agreements. For purposes of this criterion, "federally insured depository institution" with respect to a foreign financial institution means a foreign financial institution that meets the requirements of Rule 13k-1(b)(1) of the Securities Exchange Act. | |
| 1122(d)(2)(vi) | Unissued checks are safeguarded so as to prevent unauthorized access. | |
| 1122(d)(2)(vii) | Reconciliations are prepared on a monthly basis for all asset-backed securities related bank accounts, including custodial accounts and related bank clearing accounts. These reconciliations are (A) mathematically accurate; (B) prepared within 30 calendar days after the bank statement cutoff date, or such other number of days specified in the transaction agreements; (C) reviewed and approved by someone other than the person who prepared the reconciliation; and (D) contain explanations for reconciling items. These reconciling items are resolved within 90 calendar days of their original identification, or such other number of days specified in the transaction agreements. | |

## INVESTOR REMITTANCES AND REPORTING

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 178 of 180

| | | |
|---|---|---|
| 1122(d)(3)(i) | Reports to investors, including those to be filed with the Commission, are maintained in accordance with the transaction agreements and applicable Commission requirements. Specifically, such reports (A) are prepared in accordance with timeframes and other terms set forth in the transaction agreements; (B) provide information calculated in accordance with the terms specified in the transaction agreements; (C) are filed with the Commission as required by its rules and regulations; and (D) agree with investors' or the trustee's records as to the total unpaid principal balance and number of pool assets serviced by the servicer. | |
| 1122(d)(3)(ii) | Amounts due to investors are allocated and remitted in accordance with timeframes, distribution priority and other terms set forth in the transaction agreements. | \|X\| |
| 1122(d)(3)(iii) | Disbursements made to an investor are posted within two business days to the servicer's investor records, or such other number of days specified in the transaction agreements. | \|X\| |
| 1122(d)(3)(iv) | Amounts remitted to investors per the investor reports agree with cancelled checks, or other form of payment, or custodial bank statements. | \|X\| |

POOL ASSET ADMINISTRATION

| | | |
|---|---|---|
| 1122(d)(4)(i) | Collateral or security on pool assets is maintained as required by the transaction agreements or related asset pool documents. | |
| 1122(d)(4)(ii) | Pool assets and related documents are safeguarded as required by the transaction agreements | |
| 1122(d)(4)(iii) | Any additions, removals or substitutions to the asset pool are made, reviewed and approved in accordance with any conditions or requirements in the transaction agreements. | |
| 1122(d)(4)(iv) | Payments on pool assets, including any payoffs, made in accordance with the related pool asset documents are posted to the servicer's obligor records maintained no more than two business days after receipt, or such other number of days specified in the transaction agreements, and allocated to principal, interest or other items (e.g., escrow) in accordance with the related pool asset documents. | |
| 1122(d)(4)(v) | The servicer's records regarding the pool assets agree with the servicer's records with respect to an obligor's unpaid principal balance. | |
| 1122(d)(4)(vi) | Changes with respect to the terms or status of an obligor's pool asset  (e.g., loan modifications or | |

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg   Doc 2285-1   Filed 11/27/12   Entered 11/27/12 21:32:02   Exhibit A
Pg 179 of 180

re-agings) are made, reviewed and approved by authorized personnel in accordance with the transaction agreements and related pool asset documents.

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(vii) | Loss mitigation or recovery actions (e.g., forbearance plans, modifications and deeds in lieu of foreclosure, foreclosures and repossessions, as applicable) are initiated, conducted and concluded in accordance with the timeframes or other requirements established by the transaction agreements. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(viii) | Records documenting collection efforts are maintained during the period a pool asset is delinquent in accordance with the transaction agreements. Such records are maintained on at least a monthly basis, or such other period specified in the transaction agreements, and describe the entity's activities in monitoring delinquent pool assets including, for example, phone calls, letters and payment rescheduling plans in cases where delinquency is deemed temporary (e.g., illness or unemployment). | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(ix) | Adjustments to interest rates or rates of return for pool assets with variable rates are computed based on the related pool asset documents. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(x) | Regarding any funds held in trust for an obligor (such as escrow accounts): (A) such funds are analyzed, in accordance with the obligor's pool asset documents, on at least an annual basis, or such other period specified in the transaction agreements; (B) interest on such funds is paid, or credited, to obligors in accordance with applicable pool asset documents and state laws; and (C) such funds are returned to the obligor within 30 calendar days of full repayment of the related pool asset, or such other number of days specified in the transaction agreements. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(xi) | Payments made on behalf of an obligor (such as tax or insurance payments) are made on or before the related penalty or expiration dates, as indicated on the appropriate bills or notices for such payments, provided that such support has been received by the servicer at least 30 calendar days prior to these dates, or such other number of days specified in the transaction agreements. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(xii) | Any late payment penalties in connection with any payment to be made on behalf of an obligor are paid from the servicer's funds and not charged to the obligor, unless the late payment was due to the obligor's error or omission. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(xiii) | Disbursements made on behalf of an obligor are posted within two business days to the obligor's records maintained by the servicer, or such other number of days specified in the transaction agreements. | |

----------------- -------------------------------------------------- -----------------
----------------- -------------------------------------------------- -----------------

| 1122(d)(4)(xiv) | Delinquencies, charge-offs and uncollectible accounts | |

file:///C:/Documents and Settings/olgaurbieta/Local Settings/Temporary In...

12-12020-mg    Doc 2285-1    Filed 11/27/12    Entered 11/27/12 21:32:02    Exhibit A
Pg 180 of 180

```
                          are recognized and recorded in accordance with the
                          transaction agreements.
-----------------  -----------------------------------------------------------  -----------------
-----------------  -----------------------------------------------------------  -----------------
                          Any external enhancement or other support, identified
                          in Item 1114(a)(1) through (3) or Item 1115 of
                          Regulation AB, is maintained as set forth in the                |X|
1122(d)(4)(xv)            transaction agreements.

-----------------  -----------------------------------------------------------  -----------------
```