**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (DF-8070)
Joshua P. Weisser (JW-0185)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Amherst Advisory & Management, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

----------------------------------------------------------------

**LIMITED OBJECTION TO DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF THE RMBS TRUST SETTLEMENT AGREEMENTS**

Amherst Advisory & Management, LLC, acting in its capacity as investment manager ("***AAM***") for holder(s) of trust certificates issued by RALI Series 2006-QO7 Trust (the "***RALI 2006-QO7***"), hereby submits this limited objection (the "*Objection*") to the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (as supplemented, the "***Motion***")[1] [Docket No. 320] and, in support of this Objection, respectfully represents as follows:

---

[1] The Motion has been twice supplemented, first by the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 1176] and second by the *Debtors Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 1887]. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion, as supplemented.

- 1 -

**BACKGROUND**

1.  AAM serves as investment manager for a holder of approximately 50% of a class of residential mortgage-backed securities ("**RMBS**") issued by RALI 2006-QO7, a securitization trust that originally issued over $1.5 billion of RMBS. Prior to the commencement of these cases, copies of loan files underlying the RALI 2006-QO7 RMBS were requested, and AAM retained a third party forensic review firm to perform an analysis of a large sub-set of those loan files. The forensic review firm analyzed loan files underlying all RALI 2006-QO7 RMBS for breaches of applicable representations and warranties in the subject loan documentation (the "**Forensic Review**"). As a result of the Forensic Review, on or about March 1, 2012 and May 7, 2012, Deutsche Bank Trust Company Americas, in its capacity as trustee for RALI 2006-QO7, delivered notices to Residential Funding Company, LLC (formerly known as Residential Funding Corporation) ("**RFC**"), requesting that RFC either cure the asserted breaches or repurchase the mortgage loans specified in the notices. To date, RFC has failed to satisfy the terms of the notices.

2.  By the Motion, the Debtors seek to settle billions of dollars of R&W Claims held by 392 securitization trusts (each, a "**Trust**" and collectively, the "**Trusts**"), including RALI 2006-QO7 (the "**Settlement**"). The Settlement consists of the compromise of the R&W Claims for an allowed claim in the Debtors' Chapter 11 Cases of up to $8.7 billion (the "**Allowed Claim**") and the allocation of the Allowed Claim among the Trusts which elect to participate (the "**Accepting Trusts**").

3.  In the Motion and associated declarations, the Debtors support the proposed aggregate amount of the Allowed Claim with a number of assumptions regarding Trust losses and breach of the representations and warranties (*e.g.,* Alleged Breach Rate, Agree Rate, Loss

Share Rate and Estimated Lifetime Losses). The Debtors do not suggest or assert that the assumptions apply equally across all Trusts.

4. The Motion and the Amended and Restated RMBS Trust Settlement Agreements (the "***Settlement Agreements***") provide little information as to method of allocating the Allowed Claim among the settling Trusts. The "agreed-upon formulation" guiding allocation, as set forth in Exhibit B to the Settlement Agreements, consists of retaining a third-party professional (the "***Outside Professional***") and providing that professional with unfettered discretion to estimate the Trusts' relative Net Losses (as defined in the Settlement Agreements).

## LIMITED OBJECTION

**A. AAM Reserves All Rights To Direct the Prosecution of RALI 2006-QO7's R&W Claims**

5. AAM spent significant time, effort and expense with respect to the pre-petition loan-file-by-loan-file review of loans in the RALI 2006-QO7 portfolio and compiling the results of that analysis. Based on that review, AAM submits that many of the breach and agree assumptions referenced in the declarations supporting the Debtors' requests for relief in the Motion conflict with actual characteristics of the RALI 2006-QO7 loan portfolio. For example, the actual breach rate for RALI 2006-QO7 is higher than the breach rate the Debtors use to support their proposed Settlement. Even more troubling, however, is the Debtors' almost arbitrary and universal use of the concept of an "agree" rate in the claim calculation mechanic discussed in the Sillman Declaration. Use of an agree rate presumes the appropriateness of reducing the breach rate for all Trusts by over 50% (purportedly reflecting how often the Debtors will "agree" that a breach occurred), to achieve a loss share rate of approximately 20%. In contrast, the Forensic Review reveals a loss share rate (with respect to the RALI 2006-QO7 portfolio) that is significantly higher than the Debtors' 20% guesstimate. Accordingly, AAM

reserves all rights for Investor(s) managed by AAM to elect to not participate in the Settlement and to direct the prosecution of any proof of claim filed in respect of the RALI 2006-QO7 R&W Claims to the full extent permissible under the Governing Agreements and applicable law.

### B. The Claim Allocation Process Is Flawed

6. One major disincentive to participating in the Settlement is the method of allocation. While AAM understands that the proposed Settlement is based on assumptions and estimates as to loss and breach, the actual facts regarding a particular loan portfolio's R&W Claims should not be ignored.

7. A flaw in the Debtor's proposed claim allocation structure – providing the Outside Professional with the unchecked power to guesstimate Net Losses – is that it does not provide any Investor or the Trustees with adequate information as to the expected claim allocation or recoveries or permit any Investor or Trustee to introduce actual facts into the process. To participate in the Settlement, Trustees and Investors must blindly compromise their claims.

8. AAM's concerns regarding the use of assumptions to allocate the Allowed Claim here are well founded. The Outside Professional's Net Loss calculations will include an estimate of projected future losses. To date, the Debtors have been unclear regarding how future losses will be calculated.

9. Ideally, a complete analysis of all Trusts' Net Losses would be made available prior to the proposed deadline for Trustees to opt into or out of the Settlement (the "*Settlement Deadline*"). However, if the Debtors intend to go forward with a Settlement process that requires Trustees and Investors to opt in prior to the Debtors' providing information as to the allocation of the Allowed Claim, Exhibit B to the Settlement Agreements should be modified to permit

Investors and Trustees to challenge the Outside Professional's estimates as to relative Net Losses (based on, among other things, actual loan file reviews) or to opt out of the Settlement based on the proposed allocation of the Allowed Claim or the terms of any plan of reorganization or liquidation (a "**Plan**") filed by the Debtors (or any other party) in the Chapter 11 Cases. Investors should only be forced to fully commit to the Settlement once they have adequate information as to its economics and the Plan. This is particularly true in the case of the Investor(s) managed by AAM. AAM has caused considerable work to be performed in analyzing the applicable RALI 2006-QO7 loan files in respect of breaches of representations and warranties and is in a significantly better position to calculate RALI 2006-QO7's representation and warranty related losses than the Outside Professional. Where it believes the Outside Professional has erred with respect to its assumptions and estimates in this regard, AAM should not be denied the opportunity to challenge the professional's calculations with actual analysis.

WHEREFORE, AAM respectfully requests that (i) the Motion be denied, unless and until <u>Exhibit B</u> to the Settlement Agreements is modified on the terms set forth herein and (ii) the Court grant AAM such other and further relief as it may deem just and proper.

Dated:  New York, New York
        November 28, 2012           Respectfully submitted,

                                    /s/ David M. Feldman
                                    David M. Feldman (DF-8070)
                                    Joshua P. Weisser (JW-0185)
                                    **GIBSON, DUNN & CRUTCHER LLP**
                                    200 Park Avenue
                                    New York, New York  10166-0193
                                    Telephone:  (212) 351-4000
                                    Facsimile:  (212) 351-4035

                                    *Attorneys for*
                                    *Amherst Advisory & Management, LLC*