QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Daniel L. Brockett
Susheel Kirpalani
Jennifer Barrett
Maria Ginzburg
Scott C. Shelley
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
Eric D. Winston (admitted *pro hac vice*)
Jeremy D. Andersen (admitted *pro hac vice*)
865 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for*

*AIG Asset Management (U.S.), LLC. et al.,*
*Allstate Insurance Company, et al.,*
*Massachusetts Mutual Life Insurance Company, and*
*Prudential Insurance Company of America, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**RESPONSE OF AIG ASSET MANAGEMENT (U.S.), LLC, THE ALLSTATE ENTITIES, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, AND THE PRUDENTIAL ENTITIES TO DEBTORS' SUPPLEMENTAL MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF THE RMBS TRUST SETTLEMENT AGREEMENT**

**INTRODUCTION**

AIG Asset Management (U.S.), LLC and affiliated entities (collectively, "AIG"), Allstate

Insurance Company and affiliated entities (collectively, "Allstate"), Massachusetts Mutual Life

Insurance Company ("MassMutual"), and Prudential Insurance Company of America and

affiliated entities (collectively, "Prudential," and, with AIG, Allstate, and MassMutual, the "Investors"), holders of general unsecured claims against Residential Capital, LLC and its debtor-subsidiaries ("the Debtors"), by and through their undersigned counsel, hereby respectfully submit this response to the Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. Pro. 9019 for Approval of the RMBS Trust Settlement Agreements (the "RMBS Trust Settlement Motion").[1]

Pursuant to the RMBS Trust Settlement Motion, the Debtors seek to resolve, in exchange for the Allowed Claim in an amount up to $8.7 billion, alleged and potential representation and warranty claims (the "R&W Claims") held by up to 392 bankruptcy-remote trusts (the "Trusts"). *See* RMBS Trust Settlement Motion at ¶ 1.

The Investors all hold residential mortgage-backed securities (the "RMBS Certificates") that were marketed by the Debtors and issued by bankruptcy remote trusts established by, but not affiliated with, the Debtors. An RMBS Certificate entitles the holder to a capped share of the cash flows coming from a pool of mortgage loans (the "Mortgage Loans"). Payments from homeowner/borrowers in respect of the Mortgage Loans flow through the Trusts to holders of RMBS Certificates. The Investors all hold claims arising under federal and state securities laws and common law (the "Misrepresentation Claims").

While there are certain legal distinctions outside of bankruptcy, both the R&W Claims and the Misrepresentation Claims are based on the same underlying facts demonstrating that the loans contained in the relevant RMBS pools did not possess the qualities attributed to them in the offering materials by which they were sold.

---

[1] All terms not otherwise defined herein have the same meanings as defined in the RMBS Trust Settlement Motion.

The RMBS Trust Settlement Motion's stated purpose of removing the risks associated with litigation over the R&W Claims is legitimate in the context of these chapter 11 cases, and the Investors take no position on the merits of the RMBS Trust Settlement Motion, whether the Allowed Claim amount is a defensible amount, or whether it is appropriate (or even legal under the relevant Governing Documents) for part of its value to be shifted from certificate holders to a group of attorneys.  The Investors, however, respectfully submit that approval of the settlement may, without clarification, severely prejudice the ability of creditors such as the Investors to ensure that at the plan confirmation stage that they and other similarly situated creditors are provided fair and equal treatment.

The classification and treatment of the Allowed Claim has not been put before the Court by way of the RMBS Trust Settlement Motion.  And no evidence has been presented on such issues.  Nonetheless, it appears that the Debtors presume the R&W Claims will be allowed, ***unsubordinated***, general unsecured claims—claims that will apparently be given preferential treatment over the Investors' Misrepresentation Claims.  While not raised in the pending settlement motion, the Debtors' intentions in this regard appear clear.  The Debtors stated early-on that they would seek to subordinate the Misrepresentation Claims under section 510(b).  (Docket No. 320, fn. 37.)  To that end, the Debtors' draft plan classifies the Allowed Claim (in respect of the R&W Claims) separately from any claims subordinated under section 510(b), providing a recovery for the holders of R&W Claims and providing no recovery for holders of claims subject to section 510(b).  (Docket No. 1248, at Ex. 1 pp. 19-20.)

This insidious disconnect between the Debtors' long-term intentions and the settlement motion's current silence on claim-treatment issues puts holders of Misrepresentation Claims in a difficult position.  Failing to object to the RMBS Trust Settlement Motion now places the

3

Investors at risk of later being subject to arguments that approval of the settlement implicitly determined that the R&W Claims should be given preferential treatment over the Misrepresentation Claims.

The Investors' concerns can be easily addressed. All the Court need do is to expressly provide in any order approving the RMBS Trust Settlement Motion that any Allowed Claim is not deemed to be an unsubordinated claim (or that any such determination is without prejudice to later challenges), and that all arguments as to the classification and treatment of any Allowed Claim as compared to any other claims are fully reserved, without prejudice. These provisions would do no violence to the merits of the settlement, but would ensure that, through this settlement, the Debtors do not improperly prejudice parties in later plan confirmation stages.

## FACTUAL BACKGROUND

The Debtors negotiated and executed the RMBS Trust Settlement prior to the Petition Date, a process that did not involve the Investors. The RMBS Trust Settlement Motion purports to resolve the R&W Claims arising out of certain transactional documents used in the Debtors' securitization scheme, such as the pooling and servicing agreements. RMBS Trust Settlement Motion ¶ 2. The settlement provides, among other things, that the Trusts will be granted an allowed claim in exchange for granting releases to the Debtors, Ally Financial, Inc. ("AFI") and certain AFI affiliates. However, the settlement does not expressly state whether the Allowed Claim is intended to be an unsubordinated one. Nor have arguments on the issue of subordination been presented in the RMBS Trust Settlement Motion. There is a very real danger that the Debtors may later argue (unjustly) that challenges to the eventual treatment of the R&W Claims did not survive approval of the settlement, despite having never been squarely presented to the Court.

To ensure that the plan process, including classification and claim treatment, in this case is fair, the Investors have filed their "Motion of AIG Asset Management (U.S.) LLC, the Allstate Entities, Massachusetts Mutual Life Insurance Company, and the Prudential Entities for an Order Under Bankruptcy Rule 3013 (i) Classifying RMBS Fraud Claims in the Same Class as the Securitization Trusts' Claims for Purposes of Any Chapter 11 Plan for the Debtors and (ii) Directing That Misrepresentation Claims Cannot Be Placed in a Plan Class That Will Be Subordinated Under Bankruptcy Code Section 510(B)" (the "<u>Classification Motion</u>"). As set forth in the Classification Motion, the Investors seek the entry of an order pursuant to section 1122 of Title 11, United States Code (the "<u>Bankruptcy Code</u>") and Rule 3013 of the Federal Rules of Bankruptcy Procedure determining that, for purposes of any chapter 11 plan concerning the Debtors, (i) the Misrepresentation Claims and the R&W Claims should be classified together, and (ii) the Misrepresentation Claims cannot be classified in a class of claims that are subject to Bankruptcy Code section 510(b). The Investors do not wish to cause delay in the approval of the settlement merely because their subordination and classification arguments will themselves take time for the Court to resolve. The Investors merely want protection of their rights in respect of subordination issues.

## RESPONSE

The Investors respond to the RMBS Trust Settlement Motion only to the extent that any R&W Claim allowed by the settlement is intended to provide the settling Trusts an unsubordinated claim, and to the extent that the RMBS Trust Settlement Motion is intended to prevent arguments that any allowed R&W Claim needs to be treated the same as the similar Misrepresentation Claims. If any order makes clear that these issues will be preserved, the Investors' concerns will be satisfied. This should be noncontroversial. The RMBS Trust Settlement Motion and the settlement agreement itself do not expressly provide that any allowed

5

R&W Claim is an unsubordinated general unsecured claim.  The RMBS Trust Settlement Motion did not request such relief and the form of order submitted with the motion failed to provide for such relief.  In the absence of such request, the issue has not been submitted to the Court, and must await resolution on a future date.

Nonetheless, the Investors are compelled to respond because absent clarification their ability to pursue fair treatment for their Misrepresentation Claims may be impaired.  Though not stated in the current RMBS Trust Settlement Motion, it appears the Debtors intend to: (1) separately classify the R&W Claims on an unsubordinated basis, giving the Debtors an impaired class that they claim will satisfy Bankruptcy Code section 1129(a)(10); (2) treat the Misrepresentation Claims as subordinated under Bankruptcy Code section 510(b); and (3) use the votes of the Trusts to help them push through a plan that provides for non-consensual releases of the (subordinated, and thus likely uncompensated) Misrepresentation Claims in favor of non-debtor affiliates.  Absent Court clarification of what is and is not being resolved by way of the RMBS Trust Settlement Motion, the Investors' ability to defend their Misrepresentation Claims may be unfairly prejudiced merely because the Debtors' long-term strategy is being implemented in deliberately piecemeal fashion.

As set forth in the Classification Motion, the Investors believe the Misrepresentation Claims and the R&W Claim should be classified together.  The Investors also believe that the Misrepresentation Claims *and* the R&W Claim need to be allowed on an unsubordinated basis, because Bankruptcy Code section 510(b) is inapplicable to either set of claims.  Based on the inclusion of a class for subordinated claims in the current draft chapter 11 plan and the separate classification of allowed R&W Claims held by settling Trusts, it appears the Debtors may believe otherwise.

6

The Debtors should not be able to somehow leverage the approval of a RMBS Trust Settlement Motion that is silent in all relevant respects on such issues into an excuse to avoid responding to the merits of the Investors' arguments.  In short, the Debtors should not be permitted to use this proposed settlement, which is intended only to avoid the expense and uncertainty of litigation over the *merits* of the R&W Claims, to give themselves and settling Trusts a leg up when it comes to resolution of legal questions regarding subordination and classification of the R&W Claims and the Misrepresentation Claims.

## CONCLUSION

For all the foregoing reasons, the Investors respectfully request that the Court, to the extent it approves the RMBS Trust Settlement Motion, provide that any allowed R&W Claim is not deemed to be an unsubordinated claim (or that any such determination is without prejudice to later challenges), and that all arguments as to the legally similar nature of the Allowed Claim to any other claims are fully reserved, without prejudice.

*[signature page follows]*

Respectfully submitted,

Dated: November 29, 2012
       New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

   /s/  Susheel Kirpalani
Daniel L. Brockett
Susheel Kirpalani
Jennifer Barrett
Maria Ginzburg
Scott C. Shelley

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100

Eric D. Winston (admitted *pro hac vice*)
Jeremy D. Andersen (admitted *pro hac vice*)
865 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for AIG Asset Management (U.S.), LLC, et al., Allstate Insurance Company, et al., Massachusetts Mutual Life Insurance Company, and Prudential Insurance Company of America, et al.*