# EXHIBIT B

**FBI** FEDERAL BUREAU OF INVESTIGATION

*Reports and Publications*

Home • Stats & Services • Reports and Publications • Mortgage Fraud Report 2006

## Mortgage Fraud Report 2006

May 2007



This house was used in a Mortgage Fraud Scheme

### Table of Contents

- Key Findings
- Introduction
- Top Areas for Mortgage Fraud
- Emerging Schemes
- FBI and Industry Respond to Escalating Mortgage Fraud

### Key Findings

*Top Areas for Mortgage Fraud*

- Analysis of available law enforcement and industry resources indicates that the top ten mortgage fraud areas are California, Florida, Georgia, Illinois, Indiana, Michigan, New York, Ohio, Texas, and Utah. Other areas significantly affected by mortgage fraud include Arizona, Colorado, Maryland, Minnesota, Missouri, Nevada, North Carolina, Tennessee, and Virginia.
- There is a strong correlation between mortgage fraud and loans which result in default and foreclosure.

*Emerging Schemes*

- Recent statistics suggest that escalating foreclosures provide criminals with the opportunity to exploit and defraud vulnerable homeowners seeking financial guidance.
- Perpetrators are exploiting the home equity line of credit (HELOC) application process to conduct mortgage fraud, check fraud, and potentially money laundering-related activity.

*FBI and Industry Respond to Escalating Mortgage Fraud*

- The FBI is proactively working with the mortgage industry in an effort to curb mortgage fraud crimes. The FBI signed a memorandum of agreement with the MBA to promote the FBI's Mortgage Fraud Warning Notice.

### Introduction

The Prieston Group, a risk management solutions provider that administers an insurance product covering losses due to fraud and misrepresentation, calculated that losses attributed to mortgage fraud will most likely reach $4.2 billion for 2006. This figure does not take into account another estimated $1.2 billion spent on fraud prevention tools. - The Prieston Group, 2006 Data, 16 February 2007, and 2 April 2007.

Mortgage Fraud is defined as the intentional misstatement, misrepresentation, or omission by an applicant or other interested parties, relied on by a lender or underwriter to provide funding for, to purchase, or to insure a mortgage loan. Although no central repository collects all mortgage fraud complaints, statistics from multiple sources indicate that mortgage fraud is on the rise. Some industry explanations for this increase point to recent high mortgage loan origination volumes that strained quality control efforts, the persistent desire of mortgage lenders to hasten the mortgage loan process, the escalation of home prices in recent years, and the introduction of non-traditional loans which contain fewer quality control restraints such as low documentation and no documentation loans[1].

Mortgage loan fraud is divided into two categories: fraud for property and fraud for profit. Fraud for property/housing entails minor misrepresentations by the applicant solely for the purpose of purchasing a property for a primary residence. This scheme usually involves a single loan. Although applicants may embellish income and conceal debt, their intent is to repay the loan. Fraud for profit, however, often involves multiple loans and elaborate schemes perpetrated to gain illicit proceeds from property sales. It is this second category that is of most concern to law enforcement and the mortgage industry. Gross misrepresentations concerning appraisals and loan documents are common in fraud for profit schemes and participants are frequently paid for their participation. Recent events likely resulted in an increase in mortgage fraud as higher housing prices tempted borrowers to commit fraud for property in order to qualify for a mortgage loan. Also, mortgage fraud perpetrators likely seized the opportunity to take advantage of the relaxed lending practices to commit fraud for profit.

The most common form of mortgage fraud is illegal property flipping which entails false appraisals and other fraudulent loan documents (see figure 1). Combating mortgage fraud effectively requires the cooperation of law enforcement and industry entities. No single regulatory agency is charged with monitoring this crime. The FBI, Department of Housing and Urban Development-Office of Inspector General (HUD-OIG), Internal Revenue Service, Postal Inspection Service, and state and local agencies are among those investigating mortgage fraud.

**Figure 1: Illegal Property Flipping Scheme**



Mortgage fraud is a relatively low-risk, high-yield criminal activity that tempts many. However, according a May 2006 Financial Crimes Enforcement Network (FinCEN) report, finance-related occupations, including accountants, mortgage brokers, and lenders, were the most common suspect occupations associated with reported mortgage fraud[2]. Perpetrators in these occupations are familiar with the mortgage loan process and therefore know how to exploit vulnerabilities in the system.

Victims of mortgage fraud may include borrowers, mortgage industry entities, and those living in the neighborhoods affected by mortgage fraud. Lenders are plagued with high foreclosure costs, broker commissions, reappraisals, attorney fees, rehabilitation costs, and other related expenses when a mortgage fraud is committed[3]. As properties affected by mortgage fraud are sold at artificially inflated prices, properties in surrounding neighborhoods also become artificially inflated. When property values increase, property taxes increase as well. Legitimate homeowners also find it difficult to sell their homes as surrounding properties affected by fraud deteriorate.

During boom periods, high mortgage loan volume impacts expedited quality control efforts which often focus on production. Therefore, perpetrators may submit loans based on fraudulent information anticipating that the bogus information will be overlooked. On the other hand, loan officers, brokers, and others in the industry are paid by commission and may be tempted to approve questionable loans when the housing market is down to maintain current levels of income.



**Figure 2: MBA Mortgage Finance Forecast Figures (2007 Estimated)**

Analysis of mortgage originations indicates a decrease in demand. As a result of the declining housing market, mortgage fraud perpetrators may take advantage of eager loan originators attempting to generate loans for commission. Mortgage loan originations, including purchases and refinances declined during 2006 across the United States. The Mortgage Bankers Association (MBA) estimates that mortgage loan originations will reach $2.28 trillion during 2007 (see figure 2)[4]. According to an MBA December 2006 report, total home sales during 2006 decreased by approximately 10 percent from 2005 sales. New home sales declined by 17 percent and existing home sales dipped by 8 percent. In response to a decrease in demand for housing, builders reduced single-family starts (through November 2006) which were 14 percent lower than during the same time period in 2005. The MBA estimates that the oversupply of housing will continue to affect new home construction, home sales, and home prices until mid-2007[5].

**Top Areas for Mortgage Fraud**

Data was compiled and analyzed from law enforcement and industry sources to determine those areas of the country most affected by mortgage fraud during 2006. Information from the FBI, HUD-OIG, FinCEN, Mortgage Asset Research Institute (MARI), Federal National Mortgage Association (Fannie Mae), RealtyTrac Inc. (foreclosure statistics), and Radian Guaranty Inc., indicate that the top ten mortgage fraud areas for 2006 were California, Florida, Georgia, Illinois, Indiana, Michigan, New York, Ohio, Texas,

and Utah. Other areas significantly affected by mortgage fraud include Arizona, Colorado, Maryland,
Minnesota, Missouri, Nevada, North Carolina, Tennessee, and Virginia (see figure 3).



Figure 3: Top Mortgage Fraud Affected Areas Based on Data from FBI, HUD/OIG, FinCEN, MARI, RealtyTrac Inc., Fannie Mae, and Radian Guaranty Inc.

Analysis of available information indicates that mortgage fraud is most concentrated in the north central region of the United States. The north central region is followed by the southeast and west regions.

Regional analysis of FBI pending mortgage fraud-related investigations as of FY 2006 reveals that the north central region of the United States led the nation with the most pending investigations. The north central region was followed by the southeast, west, south central, and northeast, respectively (see figure 4).



Figure 4: FY 2006 FBI Pending Mortgage Fraud Investigations by Region

The aggregate amount of ARM loans containing fraudulent misrepresentations is unknown. However, since mortgage fraud perpetrators hope to inflate the value of their properties and quickly sell them, they would likely gravitate towards mortgage loans that offered low and short-term interest rates such as those offered by ARMs.

*Delinquency, Default, and Foreclosure: Potential Fraud Indicators*

Mortgage loans based on fraudulent information usually result in delinquency, default, or foreclosure in a bear market. According to the MBA, both delinquency and foreclosures rates increased during 2006 and were largely concentrated in adjustable rate mortgage (ARM) loans, especially sub-prime ARMs. This is partly attributable to the recent rise in interest rates, placing a strain on ARMs borrowers[6].

BasePoint Analytics, a fraud analytics company, analyzed more than 3 million loans and found that between 30 and 70 percent of early payment defaults (EPDs) are linked to significant misrepresentations in the original loan applications[7]. Radian Guaranty, Inc. is a leading provider of mortgage insurance which protects lenders against loan default. Of the top ten states Radian Guaranty Inc. ranked highest for mortgage fraud, seven of them also ranked in the company's top ten for EPDs. This suggests that EPDs are a good mortgage fraud indicator.

During 2006 there were more than 1.2 million foreclosure filings nationally, which represents a 42 percent increase from 2005 figures. The foreclosure rate for 2006 was one foreclosure filing for every 92 households[8]. Foreclosures for 2006 surpassed foreclosures for 2005 during every month of the year[9].

**Emerging Schemes**

*Foreclosure Fraud*

Recent statistics suggest that escalating foreclosures provide criminals with the opportunity to exploit and defraud vulnerable homeowners seeking financial guidance. The perpetrators convince homeowners that they can save their homes from foreclosure through deed transfers and the payment of up-front fees. This "foreclosure rescue" often involves a manipulated deed process that results in the preparation of forged deeds. In extreme instances, perpetrators may sell the home or secure a second loan without the homeowners' knowledge, stripping the property's equity for personal enrichment.

While foreclosure scams vary, they may be used in combination with other fraudulent schemes. For instance, perpetrators may view foreclosure-rescue scams as a new method for fraudulently acquiring properties to facilitate illegal property-flipping and equity-skimming.

*Home Equity Lines of Credit*

According to a DOJ press release, Mi Su Yi and her husband, Paul Amorello, were sentenced in California in July 2006 for operating a $3 million bust-out scheme involving business lines of credit and HELOCs. The couple accessed lines of credit that had been obtained by others and paid the balances with worthless checks. They subsequently withdrew cash from the lines of credit before the checks were returned for insufficient funds. The couple laundered their proceeds through bank accounts opened under three false identities. In an attempt to avoid detection, the couple deposited cash amounts of less than $10,000 into these accounts. -US DOJ, "New Jersey Residents Sentenced to Prison for Running a $3 Million 'Bust-Out' Scheme," Press Release, 25 July 2006, available at http://www.usdoj.gov

Individuals and criminal groups are exploiting the home equity line of credit (HELOC) application process to conduct multiple-funding mortgage fraud schemes, check fraud schemes, and potentially money laundering-related activity. HELOCs differ from standard home equity loans because the homeowner may borrow against the line of credit over a period of time using a checkbook or credit card. HELOCs are aggressively marketed by lenders as an easy, fast, and inexpensive means to obtain funds. HELOC funds are normally withdrawn on an as-needed basis to conduct home repairs or to pay bills, but fraud perpetrators may withdraw the entire amount within a short time period. Lenders typically focus on property equity prior to funding HELOCs. As such, many lenders do not demand a full property appraisal or a full property title search.

Perpetrators apply for multiple HELOCs to different lending institutions for a single property within a short time period. Prior to providing the funding, lenders conduct searches to determine if the property is encumbered by a lien. However, liens on a property may not be recorded for several days or months and thus cannot be immediately verified. Consequently, lenders do not discover that they hold a third, fourth, or fifth lien on a property (rather than the expected second lien) until later. The money obtained from the multiple HELOCs totals more than the original property purchase price, exceeding the out-of-pocket expenses incurred to secure the property.

Perpetrators conducting check fraud schemes may manipulate HELOC accounts and cause lenders to incur losses. For example, a perpetrator secures a HELOC and withdraws the entire allotted amount. A fraudulent check is then used to pay the balance owed on the HELOC. However, the perpetrator quickly withdraws the check amount from the HELOC before the bank realizes the check is worthless. When the check is returned for insufficient funds, the line of credit surpasses its maximum limit and the lender experiences a loss. HELOC accounts have also been used in common check frauds where perpetrators stole HELOC checks, fraudulently completed them, and deposited the funds into their own personal accounts.

HELOCs may also be used as a means of depositing and withdrawing laundered proceeds to further conceal the original funding source. As long as withdrawals from the HELOC do not exceed the line of credit limit, payments deposited into the account may be withdrawn later.

**FBI and Industry Respond to Escalating Mortgage Fraud**

The FBI is proactively working with the mortgage industry in an effort to curb mortgage fraud crimes. On March 8, 2007, the FBI signed a memorandum of agreement with the MBA to promote the FBI's Mortgage Fraud Warning Notice (see figure 5). The Notice states that it is illegal to make any false statement regarding income, assets, debt or matters of identification, or to willfully inflate property value to influence the action of a financial institution. Under the agreement, the MBA and the FBI will make the notice available to mortgage lenders to use voluntarily as a means of educating consumers and mortgage professionals of the penalties and consequences of mortgage fraud.[10]



Figure 5: FBI Mortgage Fraud Warning Notice

[1] Mortgage Asset Research Institute, "Eighth Periodic Mortgage Fraud Case Report to MBA," p. 3, 11, 12, April 2006.

[2] FinCEN, "The SAR Activity Review Trends, Tips and Issues," p. 15, May 2006, available at http://www.fincen.gov/sarreviewissue10.pdf

[3] Bits Financial Round Table, "Fraud Production Strategies for Consumer, Commercial, and Mortgage Loan Documents," A Publication of the Bits Fraud Reductions Steering Committee, p. 7, January 2005.

[4] Mortgage Bankers Association Mortgage Finance Forecast, 13 March 2007, 8 November 2006, 7 December 2005, and MBA 1-4 Family Mortgage Originations 1990-2005.

[5] Mortgage Bankers Association, "Year in Review: Normalization of the Housing Market," 29 December 2006.

[6] Mortgage Bankers Association, "Year in Review, Normalization of the Housing Market, 29 December 2006.

[7] BasePoint White Paper, "New Early Payment Default-Links to Fraud and Impact on Mortgage Lenders and Investment Banks," p. 2, 2007.

[8] RealtyTrac Staff, "More Than 1.2 Million Foreclosures Reported in 2006," RealtyTrac Inc. Press Release, 25 January 2007

[9] RealtyTrac Incorporated, 2005 and 2006 Percent of Households in Foreclosure, data provided 17 January 2007.

[10] Mortgage Bankers Association, "MBA Signs Memorandum of Agreement with FBI to Promote Use of FBI's Mortgage Fraud Warning Notice," Press Release, 8 March 2007.

*Criminal Investigative Division, Criminal Intelligence Section*

Close