EX 1

# COURT OF COMMON PLEAS

# OF MONTGOMERY COUNTY

No: 09-25338

GMAC Mortgage, LLC
LBA Financial Group, LLC
Eagle Nationwide Mortgage Company

Plaintiffs

v.

Kenneth J Taggart

Defendant

2009-25338-0277
6/4/2012 11:29:52 AM
Motion
Receipt # Z1542955    Fee    $0.00
Mark Levy - Montgomery County Prothonotary

**"Motion for Stay" Pursuant to Bankruptcy of GMAC Mortgage, LLC**

**(Automatic Stay as of May 14, 2012 should have been entered – The date of bankruptcy filing of GMAC Mortgage, LLC)**

Defendant hereby motions the court for "Stay" in this case pursuant The Automatic Stay in The Bankruptcy Case of GMAC Mortgage, LLC. Pending in The United States Bankruptcy District Court in the Southern District of New York.

GMAC Mortgage, LLC should have filed for "Satay" with a copy of the Order from the Bankruptcy Court that Litigation and claims made regarding GMAC Mortgage, LLC are stayed pending court approval. GMAC Mortgage, LLC has willfully ignored the order from the Bankruptcy Court as well as court rules and laws regarding the filing of their bankruptcy. Defendant Motions the court for "Stay" in the case pending approval from the Bankruptcy Court. Furthermore, this stay should have been entered immediately



as GMAC Mortgage, LLC has filed for bankruptcy on May 14, 2012; All Orders shall be

null and void as the bankruptcy court did not approve any lifting of the stay imposed by

null and void as the bankruptcy court did not approve any lifting of the stay imposed by

the bankruptcy court.

Copies of filing of Stay on other cases of GMAC Mortgage, LLC pending in

court. See attached Exhibits including another case regarding Taggart v GMAC

Mortgage, LLC, et al that has been stayed and GMAC Mortgage has in fact filed a

Motion for Stay.

Plaintiff will file a notice of claim and confirmation of Stay with the bankruptcy

court in the next few days.

Respectfully Submitted

Kenneth J Taggart, Pro Se

June 4, 2012

2

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **Kenneth J. Taggart,** | : | No. 2:12-cv-00415 |
| Plaintiff, | : | |
| v. | : | |
| **GMAC Mortgage, LLC,** *et al.* | : | |
| Defendants. | : | |

## NOTICE OF BANKRUPTCY
## AND EFFECT OF AUTOMATIC STAY

Defendant GMAC Mortgage, LLC ("GMAC" or "Debtor"), by and through its undersigned counsel, in accordance and consistent with section 362(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully submits this Notice of Bankruptcy and Effect of Automatic Stay, and states as follows:

1.    On May 14, 2012 ("Petition Date"), the Debtor and certain of its affiliates filed voluntary petitions ("Petitions") under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). The Debtor's case is jointly administered under the Chapter 11 Case for Debtor Residential Capital, LLC, et al., and is indexed as case number 12-12020.

2.    The "automatic stay" is codified in section 362 of the Bankruptcy Code. Section 362(a), *inter alia*, imposes an automatic stay of: (i) the commencement or continuation of a "judicial, administrative, or other action or proceeding" against the Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.    The above-captioned action constitutes a "judicial, administrative, or other action or proceeding" against the Debtor, an act to obtain possession of the Debtor's property, and/or an act to collect or recover on a claim against the Debtor.

4.    Accordingly, the above-captioned lawsuit and claims filed against GMAC must be stayed as to the Debtor pursuant to 11 U.S.C. § 362(a).

5.    Any action taken by the Plaintiff against the Debtor without obtaining relief from the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in finding of contempt against Plaintiff by the Bankruptcy Court. The Debtor reserves and retains all of its statutory rights to seek relief in Bankruptcy Court from any action, judgment, order, or ruling entered in violation of the Automatic Stay.

Respectfully submitted,

By: */s/ Maria T. Guerin*
    Diane Bettino (PA ID 64111)
    Maria T. Guerin (PA ID 207378)
    **REED SMITH LLP**
    2500 One Liberty Place
    1650 Market Street
    Philadelphia, PA 19103

    *Attorneys for Defendant*
    *GMAC Mortgage, LLC*

May 25, 2012

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing NOTICE OF

BANKRUPTCY AND EFFECT OF AUTOMATIC STAY has been filed electronically this 25th

day of May, 2012, and the following party/counsel of record will be notified by the Court's ECF

system and Regular U.S. Mail.

> Kenneth Taggart
> 46 Heron Road
> Heron, PA 13366
> *Plaintiff, Pro Se*
>
> and
>
> Susan Dein Bricklin, Esq.
> U.S. Attorney's Office
> 615 Chestnut Street
> Suite 1250
> Philadelphia, PA 19106
> *Counsel for Federal Government Defendants*


> /s/ Maria T. Guerin
> Maria T. Guerin

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NICOLLE BRADBURY, THOMAS TRUE,
SHAWN MORRISSETTE, JOSEPH
PHILLIPS, and MICHAEL HOLMES

Plaintiffs,

v.                                                      Docket No. 2:10-cv-00458-DBH

GMAC MORTGAGE, LLC,

Defendant

## NOTICE OF BANKRUPTCY
## AND EFFECT OF AUTOMATIC STAY

Defendant and debtor, GMAC Mortgage, LLC (collectively, the "Debtor"), by and

through its undersigned counsel, in accordance and consistent with section 362(a) of the United

States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), respectfully submits

this Notice of Bankruptcy and Effect of Automatic Stay, and states as follows:

1.      On May 14, 2012 (the "Petition Date"), the Debtor and certain of its affiliates

filed voluntary petitions (the "Petitions") under Chapter 11 of Title 11 of the Bankruptcy Code

in the United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, New York, NY 10004-1408 (the "Bankruptcy Code"). The Debtor's case is jointly

administered under the Chapter 11 Case for the Debtor Residential Capital, LLC, et al., indexed

as case number 12-12020.

2.      The "automatic stay" is codified in section 362 of the Bankruptcy Code. Section

362(a), inter alia, operates as an automatic stay of: (i) the commencement or continuation of a

"judicial, administrative, or other action or proceeding" against the Debtor (11 U.S.C. §

362(a)(1)); (ii) acts to "obtain possession of property" of the Debtor's estates (11 U.S.C. §

{W3113965.1}

362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtor arising prior to

362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtor arising prior to

the Petition Date (11 U.S.C. § 362(a)(6)).

3.    The above-captioned action constitutes a "judicial, administrative, or other action

or proceeding" against the Debtor, an act to obtain possession of the Debtor's property, and/or an

act to collect or recover on a claim against the Debtor.

4.    Accordingly, the above-captioned lawsuit should be stayed pursuant to 11 U.S.C.

§ 362(a).

5.    Any action taken by the Plaintiffs against the Debtor without obtaining relief from

the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in finding of

contempt against Plaintiffs by the Bankruptcy Court. The Debtor reserves and retains all of its

statutory rights to seek relief in Bankruptcy Court from any action, judgment, order, or ruling

entered in violation of the Automatic Stay.


Dated at Portland, Maine, this 15th day of May, 2012

                                  /s/ John J. Aromando
                                  John J. Aromando
                                  Catherine R. Connors
                                  PIERCE ATWOOD, LLP
                                  Merrill's Wharf
                                  254 Commercial Street
                                  Portland, ME  04101
                                  207-791-1100
                                  jaromando@pierceatwood.com
                                  cconnors@pierceatwood.com


                                  *Attorneys for Defendant GMAC Mortgage, LLC*


{W3113965.1}                                        2

Case 2:10-cv-00458-DBH   Document 101   Filed 05/15/12   Page 3 of 3   PageID #: 1513

## CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2012, I electronically filed the foregoing document

entitled Defendant's Notice of Bankruptcy and Effect of Automatic Stay with the Clerk of Courts

using the CM/ECF system, which will send the notification of such filing to the following:

Andrea Bopp Stark.      andrea@molleurlaw.com
Thomas Cox              tac@gwi.net
Nina Simon              Nina.Simon@self-help.org

DATED: May 15, 2012

/s/ John J. Aromando
John J. Aromando
Catherine R. Connors
PIERCE ATWOOD, LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
207-791-1100
jaromando@pierceatwood.com
cconnors@pierceatwood.com

*Attorneys for Defendant GMAC Mortgage, LLC*

{W3113965.1}

# COURT OF COMMON PLEAS

# MONTGOMERY COUNTY, PA

Court of Common Pleas            Term # 09-25338
Civil Division

---

GMAC Mortgage, LLC
LBA Financial Group, LLC
Eagle Nationwide Mortgage Company, et al
And Does

Plaintiffs

v.

Kenneth J Taggart, Pro Se

Defendant

---

# O R D E R

AND NOW, this_____ day of_____, 2012, upon consideration of

Defendant, Kenneth J Taggart's, "Motion for Stay" and any response thereto, it is so

**ORDERED** that the case be immediately "Stayed" with the effective date of **May 14, 2012**.

**It is further Ordered that the Stay remain in place until The Bankruptcy court issues**

**an Order in this case permitting the case to proceed.**

It is ORDERED that the Motion is GRANTED

BY THE COURT:

_____

EX 2

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

**REED SMITH LLP**                                   *Attorneys for Plaintiff*
Diane A. Bettino, Esq. (Id. No. 64111)               *GMAC Mortgage, LLC*
Maria T. Guerin, Esq. (Id. No. 207378)
1650 Market Street
2500 One Liberty Place
Philadelphia, PA 19103
215-851-8100

| | | |
|---|---|---|
| **GMAC Mortgage, LLC,** | : | COURT OF COMMON PLEAS |
| | : | MONTGOMERY COUNTY |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **Kenneth J. Taggart,** *Pro Se,* | : | CIVIL DIVISION |
| | : | |
| Defendant/Third Party Plaintiff, | : | No:  09-25338 |
| | : | |
| v. | : | |
| | : | |
| **LBA Financial Group, LLC,** | : | |
| | : | |
| Third Party Defendant, | : | |
| | : | |
| v. | : | |
| | : | |
| **Eagle Nationwide Mortgage Company,** | : | |
| | : | |
| Third Party Defendant. | : | |

### NOTICE OF BANKRUPTCY
### AND EFFECT OF AUTOMATIC STAY & INTERIM ORDER GRANTING
### LIMITED RELIEF TO BORROWERS IN FORECLOSURE PROCEEDINGS

Plaintiff and debtor, GMAC Mortgage, LLC ("Plaintiff" or "Debtor"), by and through its

undersigned counsel, in accordance and consistent with section 362(a) of the United States

Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), respectfully submits this

Notice of Bankruptcy and Effect of Automatic Stay and Interim Order, and states as follows:

1.       On May 14, 2012 ("Petition Date"), the Debtor and certain of its affiliates filed

voluntary petitions (the "Petitions") under Chapter 11 of Title 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Court"). The Debtor's case is jointly administered under the Chapter 11 Case for the Debtor Residential Capital, LLC, *et al.*, and is indexed as case number 12-12020.

2.      The "automatic stay" is codified in section 362 of the Bankruptcy Code. Section 362(a), *inter alia*, operates as an automatic stay of: (i) the commencement or continuation of a "judicial, administrative, or other action or proceeding" against the Debtors (11 U.S.C. § 362(a)(1)); (ii) acts to "obtain possession of property" of the Debtors' estates (11 U.S.C. § 362(a)(3)); and (iii) acts to "collect, assess, or recover a claim" against the Debtors arising prior to the Petition Date (11 U.S.C. § 362(a)(6)).

3.      The above-captioned action commenced as a foreclosure, but also containing counterclaims asserted against Plaintiff/Debtor, constitutes a "judicial, administrative, or other action or proceeding" against the Debtor, an act to obtain possession of the Debtor's property, and/or an act to collect or recover on a claim against the Debtor.

4.      On May 15, 2012, the Bankruptcy Court entered an Interim Order under Bankruptcy Code Sections 105(a), 361, 362, 363, 1107(a), and 1108, and Bankruptcy Rule 6003 (the "Interim Order"), which authorized, *inter alia*, Debtors to continue in the ordinary course of business of servicing loans and conducting foreclosure activities, including for the loan at issue in this case, and granting limited borrower relief from the automatic stay, which enables borrowers to assert limited counterclaims in foreclosure matters. A true and correct copy of the Interim Order is attached hereto as **Exhibit A**.

5.      Specifically, the Interim Order provides:

> The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified solely to enable (a) borrowers to assert and prosecute counter-claims related to the subject matter of the foreclosure complaint in connection with foreclosure proceedings, …

> Interim Order ¶ 17.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

6.    In this case, the only Counterclaim arguably asserting a purported defense to Plaintiff's claim of default, and thereby arguably related to the foreclosure complaint for purposes of the Interim Order, is Counterclaim 32 (alleging in the context of a claim asserted under 7 P.S. §§ 6701 & 6703, that Plaintiff's escrow requirements caused Defendant's default), through which Defendant appears to raise a defense to the foreclosure complaint allegations relating to his default under the mortgage.   To the limited extent that this Counterclaim is liberally read to constitute an asserted defense to allegations of default, this specific Counterclaim may proceed under the limited borrower relief from the Automatic Stay, as provided in the Interim Order.

7.    The remaining Counterclaims allege disclosure-related violations of TILA, RESPA, HOEPA, FDCPA, and the FCRA, which allegations are asserted in numerous separately named claims, but which do not relate to the foreclosure complaint allegations of default under the terms of the mortgage, such that they could be pursued under the limited relief afforded by the Interim Order.

8.    Accordingly, pursuant to 11 U.S.C. § 362(a), Counterclaims 1-31, as asserted against the Debtor, must be stayed.

9.    Any further action against the Debtor without obtaining relief from the automatic stay from the Bankruptcy Court may be void *ab initio* and may result in finding of contempt against Defendant by the Bankruptcy Court.   The Debtor reserves and retains all of its statutory rights to seek relief in Bankruptcy Court from any action, judgment, order, or ruling entered in violation of the Automatic Stay.

10.    Upon information and belief, a hearing on the Motion and Interim Order will be conducted in the Bankruptcy Court on June 12, 2012, at 10:00 AM, after which it is expected

that a Final Order will issue, and any material changes that would affect the issues, claims or

progress of this matter will be reported to the Court by counsel for Plaintiff/Debtor.

Respectfully submitted,

By: /s/ Maria T. Guerin
    Dianne Bettino
    Maria T. Guerin
    **REED SMITH LLP**
    2500 One Liberty Place
    1650 Market Street
    Philadelphia, PA 19103
    *Attorneys for Plaintiff*
    *GMAC Mortgage, LLC*

June 6, 2012

Case:# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Exhibit A

6/6/12 2:54 PM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

In re:                                          )        Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )        Chapter 11
                                                )
                                  Debtors.       )        Jointly Administered
                                                )

.................................................................

**INTERIM ORDER UNDER SECTIONS 105(a), 361, 362, 363, 1107(a),
AND 1108 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE DEBTORS
TO CONTINUE IN THE ORDINARY COURSE OF BUSINESS (A) SERVICING
GOVERNMENTAL ASSOCIATION LOANS AND (B) FORECLOSURE ACTIVITIES
RELATED TO CERTAIN REAL ESTATE OWNED BY FANNIE MAE, FREDDIE MAC,
AND GINNIE MAE; (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION AMOUNTS DUE TO CRITICAL SERVICING VENDORS AND
FORECLOSURE PROFESSIONALS; (III) GRANTING LIMITED STAY RELIEF
TO ENABLE BORROWERS TO ASSERT RELATED COUNTER-CLAIMS IN
FORECLOSURE AND EVICTION PROCEEDINGS; (IV) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL UNDER THE FANNIE MAE EAF
FACILITY; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of interim

and final orders, under Bankruptcy Code sections 105(a), 361, 362, 363, 1107(a) and 1108 and

Bankruptcy Rule 6003, (i) authorizing the Debtors to continue in the ordinary course of business

(a) servicing the GA Loans; and (b) foreclosure activities related to certain real estate owned by

the Governmental Associations; (ii) authorizing the Debtors to pay certain prepetition amounts

due to critical servicing vendors and foreclosure professionals; (iii) granting limited stay relief to

enable borrowers or their tenants, as applicable, to assert related counter-claims in foreclosure

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to http://www.kccllc.net/rescap for additional information.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

and eviction proceedings; (iv) authorizing the Debtors to use cash collateral under the Fannie

Mae EAF Facility; and (v) granting related relief; and upon the Whitlinger Affidavit; and it

appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given under the particular circumstances; and it appearing that no other or further

notice need be provided; and it appearing that the relief requested by the Motion is in the best

interests of the Debtors' estates, their creditors, and other parties in interest; and after due

deliberation thereon; and sufficient cause appearing therefor, it is hereby

## ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED on an interim basis, as set forth herein.

Servicing of GA Loans

2.    The Debtors are authorized, but not directed, in their sole discretion and

subject to available funding, to continue servicing GA Loans in the ordinary course, including,

but not limited to:

(a)    performing the Servicing Functions and honoring all obligations arising under the
GA Servicing Agreements;

(b)    making all Advances related to the GA Loans in accordance with the applicable
GA Guides and GA Servicing Agreements; and

(c)    entering into loan modifications and Deferment and Forbearance Arrangements,
including participating in HAMP.

3.    The Debtors are authorized to honor their obligations under the Consent

Order and the DOJ/AG Settlement in connection with the Servicing Functions, and to use estate

assets and take such actions as, in their reasonable business judgment, are necessary to comply

with and adhere to the terms of the Consent Order and the DOJ/AG Settlement. The Debtors are further authorized to implement new servicing standards and procedures and to perform reviews of their past foreclosure proceedings and reports regarding the results of such reviews, in each case as may be required to comply with the Consent Order and the DOJ/AG Settlement.

    4.      Nothing set forth in this Order or in the Motion shall alter the Debtors' obligations under the Consent Order and the DOJ/AG Settlement.

<u>GA Loans in Foreclosure and GA REO</u>

    5.      The Debtors are authorized, but not directed, in their sole and absolute discretion and subject to available funding, to continue servicing GA Loans in foreclosure and GA REO in the ordinary course, including, but not limited to:

    (a)    performing the Servicing Functions for GA Loans in foreclosure and GA REO in accordance with the applicable GA Servicing Agreements or other governing documents;

    (b)    conducting foreclosures of GA REO property and, to the extent necessary, transferring or assigning deeds relating to GA REO to the applicable Governmental Association, as owner of the REO;

    (c)    paying foreclosure professionals' and brokers' fees, as applicable, in the ordinary course of business;

    (d)    paying Advances related to the GA Loans in foreclosure and GA REO in accordance with the relevant GA Servicing Agreements;

    (e)    satisfying any Foreclosure Timeline Penalties assessed against the Debtors; and

    (f)    remitting the proceeds from the sale of GA Loans in foreclosure and GA REO in accordance with the relevant GA Servicing Agreements or other governing documents.

    6.      Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any foreclosure professionals' and brokers' fees or Foreclosure Timeline Penalties that may be assessed against them.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

7.    Nothing herein shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement with any foreclosure professional or broker, or to require the Debtors to make any of the payments to any foreclosure professional or broker authorized herein.

Critical Servicing Vendors

8.    Pursuant to section 105(a) of the Bankruptcy Code, the Debtors are authorized, but not directed, in the reasonable exercise of their business judgment, to pay some or all of the prepetition claims of Critical Servicing Vendors, upon such terms and in the manner provided in this Order and the Motion and subject to the Management Approval Process (as defined below); provided, that payments to Critical Servicing Vendors on account of prepetition claims shall not exceed $10,820,000 during the first thirty (30) days following the Petition Date; provided, further, that payments to Critical Servicing Vendors on account of such prepetition claims may not be accelerated and shall be made only in the ordinary course in accordance with Customary Trade Terms.

9.    As used herein, the term "Management Approval Process" means the advance review and approval by James L. Whitlinger, Chief Financial Officer of Residential Capital, LLC, following consultation with the Debtors' management and FTI Consulting, of any prepetition payment made to a Critical Servicing Vendor.

10.    Notwithstanding payment to any party of a prepetition claim made in accordance with the terms of this Order, any statutory committee appointed in the Debtors' cases (the "Committee") shall retain the right to review and seek recovery of any such payment by an appropriate motion.

4

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

11.    Promptly after entry of this Order and weekly thereafter, the Debtors shall

provide to counsel for the Committee and the Office of the Office of the United States Trustee

for the Southern District of New York with a schedule of all payments made to Critical Servicing

Vendors on account of prepetition claims in accordance with the terms of this Order, which shall

include the name and address of the Critical Servicing Vendor and the amount and date of the

payment.

12.    If a Critical Servicing Vendor refuses to supply products and/or services to

the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties)

following receipt of payment on its prepetition claim, then the Debtors may, in their sole

discretion and without further order of the Court:

(a)    declare that payments made to the Critical Servicing Vendor on account of such
claim be deemed to have been in payment of then-outstanding (or subsequently
accruing) postpetition claims of the Critical Servicing Vendor without further
order of the Court or action by any person or entity; and

(b)    take actions to recover or seek disgorgement of any payment made to the Critical
Servicing Vendor on account of its prepetition claim to the extent that the
payments exceeded the postpetition claims of the Critical Servicing Vendor,
without giving effect to any rights of setoff, claims, provision for payment of
reclamation or trust fund claims, or other defense.

Under any such circumstances, such Critical Servicing Vendor shall immediately repay to the

Debtors any payment made to it on account of its Critical Servicing Vendor claims to the extent

that such payments exceed the postpetition claims of the Critical Servicing Vendor, without

giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund

claims, or other defense.

13.    Nothing herein shall:

(a)    constitute a waiver of the Debtors' rights to seek damages, disgorgement or other
appropriate remedies against any breaching Critical Servicing Vendor;

Pg 6 of 27

(b)     be construed to waive, limit, or in any way affect, the Debtors' ability to dispute a claim of a Critical Servicing Vendor;

(c)     be deemed an admission to the validity of the underlying obligation, including any payment made pursuant to this Order;

(d)     be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Critical Servicing Vendor; or

(e)     be deemed to require the Debtors to make any of the payments to Critical Servicing Vendors authorized herein.

14.     Notwithstanding entry of this Order, the Debtors' rights to enforce the automatic stay provisions of section 362 of the Bankruptcy Code with respect to any creditor who demands payment of its prepetition claims as a condition to doing business with the Debtors postpetition are preserved. The automatic stay shall be modified to the extent necessary to permit the setoff and recoupment rights of Fannie Mae to continue unimpaired following the Petition Date with respect to the Fannie Mae EAF Facility.

15.     The banks and other financial institutions at which the Debtors maintain their disbursement accounts are authorized and directed at the Debtors' direction, to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors in respect of the claims of Critical Servicing Vendors.

16.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic fund transfers, on account of the claims of Critical Servicing Vendors to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Limited Borrower Relief from Automatic Stay

17.    The stay imposed by section 362(a) of the Bankruptcy Code is hereby modified solely to enable (a) borrowers to assert and prosecute counter-claims related to the subject matter of the foreclosure complaint in connection with foreclosure proceedings, and (b) tenants to assert and prosecute counter-claims related to the subject matter of the eviction complaint in connection with eviction proceedings for which the underlying property is the subject of a foreclosure proceeding or has been foreclosed upon.

Use of Cash Collateral Under Fannie Mae EAF Facility

18.    Pursuant to section 363(c)(2) and (4) of the Bankruptcy Code, the Debtors are authorized to use the funds held in the EAF Collection Account as of the Petition Date, which constitute Fannie Mae's cash collateral (the "Fannie Mae Cash Collateral"), subject to the provision by the Debtors of adequate protection pursuant to the EAF Terms set forth in Exhibit A to this Order.

19.    In accordance with the EAF Terms and pursuant to section 363(e) of the Bankruptcy Code, Fannie Mae shall be granted replacement liens and security interests in the Fannie Mae Cash Collateral (the "Fannie Mae Replacement Liens"), which shall be senior to all security interests in, liens on, or claims against any of the Fannie Mae Cash Collateral. The Fannie Mae Replacement Liens granted pursuant to this Order shall be perfected by operation of law immediately upon entry of this Order by the Court and Fannie Mae shall not be required to take any action in order to validate and to perfect the liens granted pursuant to this Order.

20.    Any undisputed, noncontingent and liquidated postpetition claims of Fannie Mae with respect to any diminution of the value of the interest of Fannie Mae in the Fannie Mae Cash Collateral shall be granted administrative expense superpriority pursuant to

sections 503 and 507 of the Bankruptcy Code, with priority over any and all administrative

expense claims and unsecured claims against the Debtors and their estates, now existing or

hereafter arising, with the exception of (a) any priority administrative expense claims granted to

any lender of debtor in possession financing (or such lender's agent) or other party extending

postpetition secured credit in these Chapter 11 cases and (b) the proceeds of Chapter 5 avoidance

actions.

21.    No expenses of administration of the Chapter 11 Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings

under the Bankruptcy Code, shall be charged against or recovered from the Fannie Mae Cash

Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of

Fannie Mae.

Senior Priority of Interests with Respect to the Freddie Mac
Purchase Documents, Fannie Mae Contract Documents and Ginnie Mae

22.    *The Freddie Mac Senior Interests.* Notwithstanding anything to the

contrary herein or in any other order, the Debtors acknowledge and agree that any security

interest granted in the Freddie Mac mortgage servicing rights is subject and subordinate in all

respects to all rights, powers, and prerogatives of the senior priority interests of Freddie Mac

pursuant to the Freddie Mac Purchase Documents (as defined in the Freddie Mac Guide).  The

Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary or

in any other order, no secured party has any claim or entitlement as a secured creditor against

Freddie Mac, and Freddie Mac has no duty or obligation to any secured party, except as

otherwise expressly agreed to in writing by Freddie Mac; provided, however, that nothing herein

affects any obligations of Freddie Mac to Citibank, N.A. ("Citibank") pursuant to the Federal

Home Loan Mortgage Corporation Acknowledgement Agreement among Freddie Mac, GMAC

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Mortgage and Citibank dated March 12, 2009 (the "Freddie Mac Acknowledgement Agreement").

        23.    *The Fannie Mae Senior Interests.*  Notwithstanding anything to the contrary herein or in any other order, the Debtors acknowledge and agree that any security interest granted in the Fannie Mae mortgage servicing rights is subject and subordinate in all respects to all rights, powers, and prerogatives of the senior priority interests of Fannie Mae pursuant to that certain Mortgage Selling and Servicing Contract, dated as of August 9, 2006, which incorporates the provisions of the Fannie Mae Selling and Servicing Guides and any Master Contracts or pool purchase contracts that Fannie Mae and GMAC Mortgage have entered into, as each such document may be amended, supplemented or otherwise modified from time to time.  The Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary or in any other order, no secured party has any claim or entitlement as a secured creditor against Fannie Mae, and Fannie Mae has no duty or obligation to any secured party, except as otherwise expressly agreed to in writing by Fannie Mae; provided, however, that nothing herein affects any obligations of Fannie Mae to Citibank pursuant to the Acknowledgement Agreement (Single Secured Party) among Citibank, GMAC Mortgage and Fannie Mae dated September 7, 2007 (the "Fannie Mae Acknowledgement Agreement" and, together with the Freddie Mac Acknowledgement Agreement, the "Acknowledgement Agreements").

        24.    *The Ginnie Mae Senior Interests.*  Notwithstanding anything to the contrary herein or in any other order, the Debtors acknowledge and agree that any security interest granted in the Ginnie Mae mortgage servicing rights is subject and subordinate in all respects to all rights, powers, and prerogatives of the senior priority interests of Ginnie Mae. The Debtors further acknowledge and agree that, notwithstanding anything herein to the contrary

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

or in any other order, no secured party has any claim or entitlement as a secured creditor against

Ginnie Mae, and Ginnie Mae has no duty or obligation to any secured party, except as otherwise

expressly agreed to in writing by Ginnie Mae.

Enhanced Reporting Requirements, Transfer of Servicing, and Provision of Adequate Assurance

       25.    The Debtors are directed and empowered to provide the Governmental

Associations with reasonable access to the Debtors' books, records, and accounts in accordance

with the applicable GA Guides including, without limitation, to provide Freddie Mac and Fannie

Mae personnel with physical, on-site access to the Debtors' offices and records during all

business hours, and to provide Fannie Mae and Freddie Mac with reasonable access to:

     (a)    information relating to the Freddie Mac Loans and Fannie Mae Loans, respectively;

     (b)    monthly custodial account reconciliations via tapes, delivered to Freddie Mac on or before the fifth (5th) day of the month immediately following the reconciliation period, and to Fannie Mae on or before the fifteenth (15th) day of the month immediately following the reconciliation period, of all P&I and T&I accounts relating to Freddie Mac Loans and Fannie Mae Loans;

     (c)    monthly reports, delivered to Freddie Mac and Fannie Mae, respectively, on or before the fifteenth (15th) day of each month, disclosing the Debtors' employee attrition, identifying departing employees by name, position, and principle duties;

     (d)    monthly reports, delivered to Freddie Mac and Fannie Mae, respectively, on or before the fifth (5th) business day of each month, disclosing the Debtors' compliance or non-compliance with all foreclosure-related timelines required by the Freddie Mac Guide and Fannie Mac Contract; and

     (e)    until such time as a "hot back-up" servicer is in place with respect to Freddie Mac Loans as described below, a daily data tape providing enhanced servicing information requested by Freddie Mac and Fannie Mae, respectively.

       26.    The Debtors are directed and empowered to use reasonable best efforts to

assist Freddie Mac to engage a "hot back-up" servicer for purposes of servicing the Freddie Mac

Loans in the event the Debtors are unable to adequately service those loans or servicing of the

loans is otherwise transferred during the Debtors' bankruptcy cases by, among other things,

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

providing access to data, technology and systems support, in order to complete the engagement

of a hot back up servicer on or before July 31, 2012.

       27.     The Debtors are authorized and required, without further order of the

Court, to transfer servicing to one or more third-party servicers designated by Freddie Mac with

respect to Freddie Mac Loans, if the Debtors fail to satisfy one or more of the Metrics set forth in

Exhibit D to the Motion; provided, that any such servicing transfer shall be subject to any rights

of Citibank pursuant to the Freddie Mac Acknowledgement Agreement.  The Debtors shall

transfer servicing within thirty (30) days of the receipt of a Transfer Notice and shall execute and

transfer all documents and files requested by Freddie Mac to complete the servicing transfer.

With respect to any Freddie Mac Loan transferred for failure to satisfy the Metrics, the Debtors'

servicing rights shall be considered terminated with cause within the meaning of the Freddie Mac

Guide.  The Debtors shall file any Transfer Notice with the Court.

       28.     Pursuant to section 363(e) of the Bankruptcy Code, the Debtors are

authorized to provide to Fannie Mae and Freddie Mac adequate assurance of future performance

under the applicable GA Servicing Agreements on the terms and conditions set forth in

Exhibits B and C to this Order; provided, that nothing herein, including the provision of such

adequate assurance, shall be deemed to constitute an assumption or rejection of any executory

contract or prepetition or postpetition agreement between the Debtors and Fannie Mae or Freddie

Mac, as applicable.  The acceptance by the Governmental Associations of the adequate

protection and related relief granted pursuant to this Order shall not be deemed to constitute

consent by the Governmental Associations of the assumption and assignment of the GA

Servicing Agreements.  Notwithstanding anything herein or in any order to the contrary, Fannie

Mae may seek additional adequate protection or modification to its grant of adequate protection

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

11

Pg 12 of 27

provided herein so as to provide different or additional adequate protection, without prejudice to the right of the Debtors or any other party in interest to contest any such addition or modification.

29.    For the avoidance of doubt, all payments by the Debtors to the Governmental Associations (including, without limitation, payments of principal and interest, Advances, foreclosure timeline compensatory fees, post-claim reimbursements, and other servicing-related fees and claims) shall be made free and clear of any lien, security interest, or other interest of any party, including, without limitation, any prepetition or postpetition lenders.

30.    To the extent that the automatic stay under Bankruptcy Code section 362(a) applies to requests by Fannie Mae and Freddie Mac that the Debtors honor their servicing-related commitments and obligations, the automatic stay is hereby modified to the limited extent necessary to allow the Fannie Mae and Freddie Mac to make servicing-related requests to the Debtors, including, without limitation, requests for payment of principal and interest, Advances, foreclosure timeline compensatory fees, post-claim reimbursements, and other servicing-related fees and claims, in each case to the extent provided under the relevant GA Guide, GA Servicing Agreement, or other related documents; provided, however, that to the extent the automatic stay is applicable, Fannie Mae and Freddie Mac may not proceed to take any enforcement actions against the Debtors, or property of their estates with respect to such requests, including the collection thereof, without further order of the Court, except with respect to a transfer of servicing for Freddie Mac Loans arising from the Debtors' failure to satisfy the Metrics, pursuant to paragraph 27 of this Order.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

## Other Relief

31.     The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

32.     Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

33.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

34.     Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings. All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

35.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

36.     Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

37.     The Debtors shall serve a copy of the Motion and this Order by United

States mail, first class postage, on (a) the Office of the United States Trustee for the Southern

District of New York; (b) the office of the United States Attorney General; (c) the office of the

New York Attorney General; (d) the office of the United States Attorney for the Southern

District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange

Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each

of the indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc. and

its counsel; (j) counsel to the administrative agent for the Debtors' proposed providers of debtor

in possession financing; (k) Nationstar Mortgage LLC and its counsel; (l) the parties included on

the Debtors' list of fifty (50) largest unsecured creditors; (m) each of the Governmental

Associations and their counsel; (n) counsel for the United States of America; and (o) the trustees

for each of the GA Securitization Trusts, within two (2) days of entry of this Order.

38.     The Final Hearing, if required, to consider the Motion and proposed final

order is scheduled for June 12, 2012 at 10:00 a.m. (prevailing Eastern Time) before the Court.

Any objections or responses to the Motion must be filed with the Clerk of the Bankruptcy Court

and served upon and received by: (a) proposed counsel for the Debtors, Morrison & Foerster

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Larren M. Nashelsky, Gary Lee, Lorenzo Marinuzzi); (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) counsel for Ally Financial Inc., Kirkland & Ellis, LLP, Citigroup Center, 601 Lexington Avenue, New York, NY 10022 (Attn: Richard M. Cieri, Ray C. Schrock, and Stephen E. Hessler) (d) counsel to the administrative agent for the Debtors' proposed providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attention: Kenneth S. Ziman and Jonathan H. Hofer); (e) counsel for any statutory committee appointed in the Debtors' cases; (f) counsel for the United States of America and Ginnie Mae, U.S. Department of Justice, Civil Division, 1100 L Street NW, Room 10018, Washington, D.C. 20005 (Attn: Glenn D. Gillett) and United States Attorney's Office for the Southern District of New York, Civil Division, 86 Chambers Street. 3rd Floor, New York City, NY 10007 (Attn: Joseph Cordaro); (g) counsel for Fannie Mae, Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166 (Attn: David Neier, Desiree M. Ripo and Alan Moskowitz); and (h) counsel for Freddie Mac, McKool Smith, 600 Travis St., Suite 7000, Houston, Texas 77002 (Attn: Paul D. Moak), on or before June 5, 2012 at 4:00 p.m. prevailing EST. If no objections are filed to the Motion, the Court may enter the proposed final order without further notice or hearing.

39.    The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

40.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

41.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

42.    Upon notice to parties-in-interest and no objection having been interposed, an affiliated debtor shall be deemed to be a "Future Debtor" upon the Court's entry of an order authorizing the joint administration of such Future Debtor's Chapter 11 case with the Chapter 11 cases of the Debtors.  Upon notice to the parties and no objection having been interposed, the relief granted by this Order shall apply to the Future Debtor in these jointly-administered cases.

43.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:        May 15, 2012
              New York, New York

                                    _____s/ James M. Peck_____
                                    Honorable James M. Peck
                                    United States Bankruptcy Judge

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

**EXHIBIT A**

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

**Residential Capital, LLC**

**Fannie Mae Early Advance Funding**

Agreed terms regarding Early Advance Funding ("EAF") pursuant to the Amended and Restated as of January 18, 2011 (the "EAF Facility") between Debtor GMAC Mortgage L.L.C. ("GMAC Mortgage") and Federal National Mortgage Association ("Fannie Mae") in connection with the Debtors operating their servicing business in the ordinary course during the Chapter 11 Cases and to preserve the value of their assets pending one or more sales of their business.[1]

| | |
|---|---|
| **Continuation of the EAF Facility During the Chapter 11 Cases** | Following the commencement of the Chapter 11 Cases (the "Petition Date") and through the earlier of (i) consummation of a sale of all or substantially all of the Eligible Advances, and (ii) the effective date of the Debtors' plan of reorganization (collectively, the "Termination Date"), the Debtors shall honor the terms of the EAF Facility, subject to the modifications set forth herein. |
| **EAF Facility Maximum Amount** | The Early Reimbursement Amount Limit for the EAF Facility shall continue to be a maximum outstanding amount of $125 million. |
| **Fannie Mae's Setoff and Recoupment Rights** | The automatic stay shall be modified to the extent necessary to permit Fannie Mae's setoff and recoupment rights to continue unimpaired following the Petition Date. The Debtors agree and acknowledge that the EAF Facility is an integral part of the Master Agreement and that Fannie Mae has valid setoff and recoupment rights with respect to all of the Debtors' obligations arising under the Master Agreement, including, without limitation, the EAF Facility. Accordingly, Fannie Mae shall continue to have unimpaired setoff and recoupment rights against both Collection Accounts (defined below) and all Fannie Mae collections, Advances and reimbursements received by the Debtors (i) from Fannie Mae, (ii) from Fannie Mae mortgagors, or (iii) as liquidation proceeds or other recoveries with respect to certain Fannie Mae Eligible Advances (in the aggregate, the "Collections"). |
| **EAF Payments** | Fannie Mae shall continue making periodic early partial reimbursement payments of Eligible Advances and the Debtors shall continue to make all deposits into the Collection Accounts. |
| **Modifications to EAF** | • The combined funding for T&I Escrow Advances and Corporate Servicing Advances shall be limited to a maximum outstanding amount of $61 million. |
| | • Reimbursement by Fannie Mae of P&I Delinquency Advances shall be limited to only the 5% amount that GMAC Mortgage has actually advanced. Fannie Mae will no longer reimburse 100% of the P&I Delinquency Advances amount, since GMAC Mortgage has only actually advanced 5% of P&I Delinquency Advances. |
| | • Following the Petition Date, the definition of "P&I Delinquency |

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the EAF Facility.

ny-1040871

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

Advances" in the EAF Facility shall be revised to only include foreclosure buyouts. Delinquent SS P&I payments shall not be eligible.

- There shall be non-material operational reasonable adjustments and modifications to the EAF Facility following the Petition Date and continuing as necessary until the Termination Date, including with respect establishment of accounts, payments, settlements, incentives and reconciliations, each in Fannie Mae's sole discretion.

**Reporting**

Reporting requirements under the EAF Facility shall continue uninterrupted. Reasonable modifications in reporting requirements to be determined by Fannie Mae in its sole discretion.

**EAF Account and Security Interest**

The Debtors shall continue to deposit all Collections into custodial trust accounts for the benefit of Fannie Mae or Fannie Mae controlled accounts (collectively, the "Collection Accounts").

Fannie Mae shall receive a grant of adequate protection and as part of such grant shall have:

- A first priority perfected security interest in all funds in Collections and Collection Accounts superior to the rights of any creditor, including, without limitation, any creditor providing postpetition financing or use of cash collateral;

- Valid, enforceable, unavoidable, and fully perfected replacement liens and security interests in the senior to all security interests in, liens on, or claims against any of the Collections and Collection Accounts;

- Pursuant to sections 503 and 507 of the Bankruptcy Code, with respect to any diminution of the value of the interest of Fannie Mae in its collateral, allowed superpriority administrative expense claims, subject and subordinate only to (i) DIP Liens granted to the DIP Agent, (ii) the "Superpriority Claims" granted in respect of the obligations under the DIP Facility, as provided in paragraph 10 of the Barclays DIP Order[2], (iii) the "Superpriority Claims"

---

[2] The "Barclays DIP Order" means either the *Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, (II) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and (III) Granting Related Relief or the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, (II) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(B) and (C) and (III) Granting Related Relief,* as applicable.

ny-1040871

granted in respect of the obligations under the Ally DIP Loan, as provided in paragraph 7 of the Ally DIP Order[3]; and (iv) as otherwise provided in the GA Servicing Order[4]; and

- waiver of any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise, including, without limitation, any claim under the equitable doctrine of marshaling or any similar doctrine, for any costs and expenses incurred in connection with the preservation, protection or enhancement of the Collection Accounts.

Fannie Mae may seek additional adequate protection or to seek modification to its grant of adequate protection provided herein so as to provide different or additional adequate protection, without prejudice to the right of the Debtors or any other party in interest to contest any such addition or modification to adequate protection.

**Termination of EAF Facility**

Upon the Termination Date, (i) all Advances must be acquired by any purchaser of the servicing business or by any reorganized Debtor entity engaged in the servicing business; (ii) GMAC Mortgage shall pay to Fannie Mae all amounts outstanding under the EAF Facility; and (iii) the EAF arrangement shall terminate.

---

[3] The "Ally DIP Order" means either (a) the *Interim Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing* or (b) the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing,* as applicable.

[4] The "GA Servicing Order" means either (a) the *Interim Order Under Sections 105(a), 361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Governmental Association Loans And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae; (Ii) Authorizing The Debtors To Pay Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure And Eviction Proceedings; (IV) Authorizing The Debtors To Use Cash Collateral Under The Fannie Mae EAF Facility; And (V) Granting Related Relief* or (b) the *Final Order Under Sections 105(a), 361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Governmental Association Loans And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae; (Ii) Authorizing The Debtors To Pay Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals; (III) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure And Eviction Proceedings; (IV) Authorizing The Debtors To Use Cash Collateral Under The Fannie Mae EAF Facility; And (V) Granting Related Relief,* as applicable.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

ny-1040871

12-12020-mg   Doc 87   Filed 05/15/12   Entered 05/15/12 18:30:36   Main Document
Pg 21 of 27
Pg 21 of 27

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

-4-

ny-1040871

## EXHIBIT B

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

## Fannie Mae
## Adequate Assurance of Future Performance[1]

- Regular access of Fannie Mae staff to GMAC Mortgage facilities to provide oversight on GMAC Mortgage's performance of its servicing duties.

- GMAC Mortgage shall at all times maintain its servicing performance to the standards set forth in the Fannie Mae Contract and to the following supplemental standards:

  - GMAC Mortgage must maintain a quarterly STAR score exceeding 75;

  - No STAR overall operational assessment can result in a rating of "red";

  - Any formal servicing compliance review, including, but not limited to SQRR (f/k/a LARC) and LMQC, must not return an overall risk rating of 'high', and GMAC Mortgage must submit and comply with all related Action Plans timely;

  - GMAC Mortgage will be drafted 50% of billed compensatory fees on the due date, and must submit compensatory fee and servicing repurchase documentation, as well as pay the balance of compensatory fees, within prescribed timelines;

  - GMAC Mortgage must use best efforts to reduce the net population of seriously delinquent loans, as measured by ensuring that performance continues to exceed the comp rate;

  - GMAC Mortgage shall at all times maintain staffing in servicing functions at levels consistent with pre-filing staffing levels and commensurate with portfolio, including maintaining staffing within each of the separate specific departments;

  - GMAC Mortgage shall provide notice to Fannie Mae of departures of management and other loss of personnel and shall provide a retention plan for servicing employees to prevent departures during the bankruptcy proceedings;

  - GMAC Mortgage shall provide all reporting and other servicing information as reasonably requested by Fannie Mae, including such additional reports that may be requested as needed, as currently permitted under the Fannie Mae Contract;

---

[1] Capitalized terms used and not otherwise defined in the Motion shall have the meanings ascribed to such terms in the Fannie Mae Guide.

ny-1039647

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

(Page 29 of 32)

12-12020-mg     Doc 2314-1     Filed 11/29/12     Entered 11/30/12 10:34:48     Exhibit 1
Pg 42 of 47

12-12020-mg     Doc 87     Filed 05/15/12     Entered 05/15/12 18:30:36     Main Document
Pg 24 of 27

Pg 24 of 27

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

- GMAC Mortgage will confer and consult with Fannie Mae in good faith with respect to the implementation of any new programs/directives, and policy changes, including upcoming HAMP/loss-mitigation changes, to the extent such changes are required by Fannie Mae to be implemented by large servicers generally, and will use commercially reasonable efforts to comply with such changes, notwithstanding possible additional costs to implement those changes; and

- GMAC Mortgage will keep Fannie Mae apprised of its ongoing compliance efforts, and shall be entitled to apply for and obtain any extensions as it deems appropriate. As with other lenders, Fannie Mae will acknowledge, but not approve, extension requests and will not assert a breach based solely on such non-compliance for up to 90 days of non-compliance, but Fannie Mae reserves the right to assess compensatory fees related thereto.

• GMAC Mortgage shall commit to continuation of regularly scheduled engagements with Fannie Mae, such as the monthly Account Performance Reviews at current participation level, including GMAC Mortgage senior management.

• GMAC Mortgage shall maintain response times to file requests (for both origination and servicing files) timely (within 30 days) as is current practice and GMAC Mortgage shall comply with Fannie Mae timelines for appeal letters, identifying "impasse loans", and for supplying missing docs as well as timely addressing aged repurchase issues.

• GMAC Mortgage shall post funds to meet margin requirements as may be necessary.

ny-1039647

(Page 30 of 32)

12-12020-mg    Doc 2314-1    Filed 11/29/12    Entered 11/30/12 10:34:48    Exhibit 1
Pg 43 of 47

12-12020-mg    Doc 87    Filed 05/15/12    Entered 05/15/12 18:30:36    Main Document
Pg 25 of 27

Pg 25 of 27

**EXHIBIT C**

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

(Page 31 of 32)

12-12020-mg    Doc 2314-1    Filed 11/29/12    Entered 11/30/12 10:34:48    Exhibit 1
Pg 44 of 47

12-12020-mg    Doc 87    Filed 05/15/12    Entered 05/15/12 18:30:36    Main Document
Pg 26 of 27

Pg 26 of 27

### Freddie Mac
### Adequate Assurance of Future Performance

GMAC Mortgage shall at all times maintain its servicing performance consistent with the standards set forth in the Freddie Mac Guide and the Freddie Mac Purchase Documents and with the following supplemental standards (nothing herein is intended, however, to waive or release any of GMAC Mortgage's current obligations under the Freddie Mac Guide or the Freddie Mac Purchase Documents):

- In connection with any operation assessment by Freddie Mac's Counterparty Operations Risk Evaluation group ("CORE"), GMAC Mortgage must maintain an operational assessment that is above "critical" or "major" for each finding in connection with such assessment. If there is a finding by CORE of "critical," "major" or "other" for any matter that is within the scope of any CORE review, GMAC Mortgage must remediate and address each such finding;

- GMAC Mortgage must (i) pay 50% of all billed and outstanding compensatory fees no later than ten (10) calendar days after the due date for such fees, irrespective of the pendency of any appeal, and (ii) submit compensatory fee and servicing repurchase documentation, as well as pay the balance of compensatory fees, within prescribed timelines;

- GMAC Mortgage shall at all times maintain staffing in servicing functions at levels consistent with pre-filing staffing levels and requirements under the Freddie Mac Guide and the Freddie Mac Purchase Documents (appropriately taking into account, however, changes affecting the servicing portfolio generally, such as increases or decreases in the level of loan delinquencies), including maintaining staffing within each of the separate specific departments;

- GMAC Mortgage shall provide notice to Freddie Mac of departures of GMAC Mortgage management and other loss of GMAC Mortgage personnel and shall provide (or continue in place, as applicable) a retention plan for servicing employees to prevent departures during the bankruptcy proceedings;

- GMAC Mortgage shall provide all reporting and other servicing information as reasonably requested by Freddie Mac, including (without limitation) fraud reports and such additional reports that may be requested by Freddie Mac, in accordance with the Freddie Mac Guide and the Freddie Mac Purchase Documents;

- GMAC Mortgage will confer and consult with Freddie Mac in good faith with respect to the implementation of any new programs/directives, and policy changes, including (without limitation) upcoming HAMP/loss-mitigation changes, to the extent such changes are required by Freddie Mac to be implemented by all servicers generally, and GMAC Mortgage will (i) comply with such changes if compliance is required pursuant to applicable law or regulation, or if noncompliance would itself constitute grounds for termination of GMAC

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

ny-1040465

Mortgage as a seller/servicer under the Freddie Mac Purchase Documents, and (ii) use commercially reasonable efforts to comply with such changes in all other cases, notwithstanding possible additional costs to implement those changes;

- GMAC Mortgage will keep Freddie Mac apprised of its ongoing compliance efforts, and shall be entitled to apply for any applicable extensions, which extensions will not be withheld solely on the basis of GMAC Mortgage's bankruptcy proceedings;

- GMAC Mortgage shall continue (post-filing) its regularly scheduled meetings and engagements with Freddie Mac, including (without limitation) monthly executive meetings and any and all reviews relating to the servicing of the Freddie Mac servicing portfolio; and

- GMAC Mortgage shall maintain response times to file requests (for both origination and servicing files) timely (within 30 days), as is current practice, and GMAC Mortgage shall comply with Freddie Mac timelines for appeal letters, and for supplying missing documents, as well as timely addressing aged repurchase issues.

Case# 2009-25338-280 Received at Montgomery County Prothonotary on 06/06/2012 3:04 PM, Fee = $0.00

## Certificate of Service

Case # Civil Case#  12 – cv 12020

The undersigned certifies that on November 28, 2012, he caused a copy of :

Residential Mortgage Capital, et al

# Movant/Appellants (Kenneth Taggart)
## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON
## APPEAL AND ISSUES TO BE PRESERVED ON APPEAL

to be delivered to The United States Bankruptcy Court for The Southern District
of New York via United States Post Office & UPS.  Additionally, the undersigned
certifies that he caused a true and correct copy of the foregoing Notice to be sent
via to United States Post Office on November 28, 2012 to the following parties :

Counsel for Debtors  (copy also e-mailed to this party)
Morrison  & Foster,LLP, Larren M Nashelsky, Gary Lee, Lorenzo Marinuzzi
1290 Avenue of the Americas
New York, NY. 10104

Office of the United States Trustee for the Southern District of New York
33 Whitehall St, 21st Floor, Tracy Hope Davis, Linda Riffkin, Brian S Masumoto
New York, NY. 10104

Counsel for Ally Financial
Kirkland & Ellis, LLP, Richard Ceieri, Ray Schrock, Stephan Hessler
Citigroup Center,
601 Lexington Ave.
New York, NY. 10022

Counsel for Administrative Agent for Debtors,
Skaddam, Arps, Slate, Meagher, & Flon, LLP
Kenneth Ziman and Johnathan Hofer
4 Times Square
New York, NY. 10036

Counsel for United States of America, Ginnnie Mae, US Dept of Justice,
Glenn Gillett
1100 "L" St NW , Room 10018
Washington, D.C. 20005

Gmac serve 11-28-12

# Certificate of Service

Case # **Civil Case# 12 – cv 12020**          **Residential Mortgage Capital, et al**

U.S Attorney for Southern District of New York
Joseph Cordero – Civil Division
86 Chambers St, 3rd Floor
New York, NY. 10007.

Counsel for Fannie Mae
Winston & Strawn, LLP
David Neier, Deseiree M Ripo, Alan Moskowitz
200 Park Ave
New York, NY. 10166

Counsel for Freddie Mac
McKool Smith
Paul DMoak
600 Travis St, suite 7000,
Houston, TX 77002

Kenneth J Taggart
Pro se

November 28, 2012

Gmac serve 11-28-12