Hearing Date and Time:  December 20, 2012 at 10:00 a.m. (ET)
Objection Deadline:  December 3, 2012

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards

BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, California 94105
Telephone: (415) 268-2000
Facsimile: (415) 268-1999
K. Lee Marshall

One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
Michael G. Biggers
Darci F. Madden

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————
                                                        )
In re:                                                  )       Case No. 12-12020 (MG)
                                                        )
RESIDENTIAL CAPITAL, LLC, et al.,      )       Chapter 11
                                                        )
                                    Debtors.         )       Jointly Administered
------------------------------------------------------------  )

**DEBTORS' OPPOSITION TO MOTION TO APPLY BANKRUPTCY RULE 7023
AND TO CERTIFY CLASS CLAIMS**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................1

II.   FACTUAL BACKGROUND ...........................................................................2

III.  LEGAL ARGUMENT ...................................................................................3

    A.    Applicable Analytical Framework.................................................................3

    B.    Movants Have Failed To Demonstrate That The Court Should Exercise Its Discretion Under Bankruptcy Rule 9014 To Apply Bankruptcy Rule 7023..........3

        1.    The Putative Class Is Not Certified .................................................4

        2.    Adequate Notice Has Been Provided To Class Members .........................4

        3.    Class Certification Will Adversely Impact Administration Of The Debtors' Bankruptcy Cases ....................................................................6

    C.    Movants Do Not Meet The Requirements For Certification Under FRCP 23 ...............................................................................................9

        1.    Movants Have Not Satisfied Their Evidentiary Burden............................9

        2.    Movants Do Not Satisfy The Adequacy Requirement Of FRCP 23(a)(4) ...............................................................................11

            (a)    Movants Have Exacerbated The Adequacy Problems With Class Certification Found By The Third Circuit .........................11

                (i)    The Intra-Class Conflict Between Those With Timely Claims And Those Without Has Not Been Resolved ........................................................................12

                (ii)   The Intra-Class Conflict Between Those With Allegedly Superior State Law Claims And Those Without Has Not Been Resolved....................................13

            (b)    Additional Adequacy Problems Exist...........................................14

                 (i)    Several Proposed Representatives Lack Standing............14

                (ii)   Movants Have Not Established The Adequacy of Proposed Class Counsel ....................................................15

        3.    Movants Do Not Satisfy The Commonality Requirement Of FRCP 23(a)(2) Or The Predominance Requirement Of FRCP 23(b)(3) ........................................................................................17

            (a)    The Third Circuit's Prior Comments Regarding Movants' Satisfaction Of Commonality and Predominance Requirements Are Not Controlling...............................................17

            (b)    Individualized Questions Of Law And Fact Predominate The Class Claims And Are Not Susceptible Of Common Answers ..........................................................................................19

(i)      Statute Of Limitations For RESPA And
        TILA/HOEPA Claims .......................................................20

(ii)     RESPA Claims Require Examination Of Individual
        Loans ...............................................................................21

(iii)    TILA/HOEPA Claims Involve Individualized Issues ......22

(iv)     Rescission And RICO Claims Are Not Appropriate
        For Class Treatment ........................................................24

D.    Movants Do Not Satisfy the Superiority Requirement of FRCP 23(b)(3)
      Because Benefits That Generally Support Class Certification In Civil
      Litigation Are Not Applicable Here ....................................................25

IV.  CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................................................ 17

*Bjustrom v. Trust One Mortg. Corp.,*
322 F.3d 1201 (9th Cir. 2003) ............................................................................... 21

*Bosch v. Lamattina,*
No. 08-cv-0238, 2012 U.S. Dist. LEXIS 147693 (E.D.N.Y. Sept. 28, 2012) ........................ 10

*Broussard v. Meineké Discount Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) .................................................................................. 20

*Brown v. Kelly,*
609 F.3d 467 (2d Cir. 2010) ................................................................................... 10

*CIGNA Corp. v. Amara,*
131 S. Ct. 1866 (2011) ........................................................................................... 24

*Copp v. Am. Enterprise Servcs. Co.,*
No. 11-CV-189, 2012 WL 1555097 (S.D. Iowa Apr. 24, 2012) .............................................. 14

*Cornell Research Found., Inc. v. Hewlett-Packard Co.,*
No. 01-cv-1974, 2007 U.S. Dist. LEXIS 89637 (N.D.N.Y. Jan. 31, 2007) ........................... 10

*Culpepper v. Irwin Mortg. Corp.,*
491 F.3d 1260 (11th Cir. 2007) .............................................................................. 21

*Davidson v. Citizens Gas & Coke Utility,*
238 F.R.D. 225 (S.D. Ind. 2006) ...................................................................... 14, 15

*Drennen v. PNC Bank, N.A. (In re Cmty. Bank of N. Va.),*
622 F.3d 275 (3d Cir. 2010) ............................................................................passim

*Egerer v. Woodland Realty, Inc.,*
556 F.3d 415 (6th Cir. 2009) .................................................................................. 21

*Encarnacion v. Astrue,*
491 F. Supp. 2d 453 (S.D.N.Y. 2007), *aff'd*, 568 F.3d 72 (2d Cir. 2009) ............................. 10

*Estate of LTC Scott v. Scott,*
907 F. Supp. 1495 (M.D. Ala. 1995) ...................................................................... 25

*Gen. Telephone Co. of the Sw. v. Falcon,*
457 U.S. 147 (1982) ................................................................................................. 9

iii

*Gentry v. Siegel*,
   668 F.3d 83 (4th Cir. 2012) ............................................................................................. 3, 25

*Glover v. Standard Fed. Bank*,
   283 F.3d 953 (8th Cir. 2002) ................................................................................................ 21

*Hall v. Burger King Corp.*,
   No. 89-0260, 1992 WL 372354 (S.D. Fla. Oct. 26, 1992) ..................................................... 21

*In re Am. Reserve Corp.*,
   840 F.2d 487 (7th Cir. 1988) ............................................................................................. 3, 4

*In re Bally Total Fitness of Greater N.Y., Inc.*,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Carrera Plaintiffs v. Bally
   Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.)*,
   411 B.R. 142 (S.D.N.Y. 2009) ............................................................................................. 7, 8

*In re BGI, Inc.*,
   476 B.R. 812 (Bankr. S.D.N.Y. 2012) ...................................................................................... 5

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ........................................................................................... passim

*In re Diet Drugs Prods. Liab. Litig.*,
   385 F.3d 386 (3d Cir. 2004) .................................................................................................. 11

*In re Donald J. Trump Casino Secs. Litig.*,
   7 F.3d 357 (3d Cir. 1993) ...................................................................................................... 23

*In re Ephedra Prods. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005) ..................................................................................................... 7

*In re Initial Public Offering Secs. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................................................... 18

*In re Motors Liquidation Co.*,
   447 B.R. 150 (Bankr. S.D.N.Y. 2011) ..................................................................................... 4

*In re Musicland Holding Corp.*,
   362 B.R. 644 (Bankr. S.D.N.Y. 2007) ............................................................................. 4, 6, 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
   MDL No. 1023, 1996 U.S. Dist. LEXIS 4969 (S.D.N.Y. Apr. 17, 1996) ............................... 9

*In re Woodward & Lothrop Holdings, Inc.*,
   205 B.R. 365 (Bankr. S.D.N.Y. 1997) ............................................................................... 3, 7

iv

*Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*,
  No. 08-cv-761C, 2012 WL 370319 (W.D.N.Y. Feb. 3, 2012)................................................15

*Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,
  No.98-CIV-2570, 2000 U.S. Dist. LEXIS 7952 (S.D.N.Y. June 9, 2000).............................10

*Mars Steel Corp. v. Cont'l Bank*,
  880 F.2d 928 (7th Cir. 1989).............................................................................................11

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)..............................................................................................25

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Secs. Litig.)*,
  471 F.3d 24 (2d Cir. 2006).................................................................................................9

*Muchnick v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.)*,
  654 F.3d 242 (2d Cir. 2011) ........................................................................................12, 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ..............................................................................................19

*O'Brien v. J.I. Kislak Mortg. Corp.*,
  934 F. Supp. 1348 (S.D. Fla. 1996)...................................................................................23

*O'Sullivan v. Countrywide Home Loans, Inc.*,
  319 F.3d 732 (5th Cir. 2003) .............................................................................................21

*Ohio Pub. Employers Ret. Sys. V. Gen. Reins. Corp. (In re Am. Int'l Grp., Inc. Secs. Litig.)*,
  689 F.3d 229 (2d Cir. 2012) ..............................................................................................18

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ..........................................................................................................13

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
  38 F.3d 1380 (3d Cir. 1994) ..............................................................................................20

*R2 Invs., LDC v. Charter Commc'ns., Inc. (In re Charter Commc'ns., Inc.)*,
  449 B.R. 14 (S.D.N.Y. 2011) ...............................................................................................6

*Reid v. White Motor Corp.*,
  886 F.2d 1462 (6th Cir. 1989) .............................................................................................4

*Reiser v. Res. Funding Corp.*,
  No. 03-CV-0619-DRH, 2005 WL 3934728 (S.D. Ill. Jan 19, 2005) ....................................23

*Rios v. Marshall*,
  100 F.R.D. 395 (S.D.N.Y. 1983).........................................................................................14

v

*Risco v. McHugh*,
No. 10-cv-6314, 2012 U.S. Dist. LEXIS 83002 (S.D.N.Y. June 14, 2012)..........................10

*Romero v. H.B. Auto. Grp., Inc.*,
No. 11-cv-386, 2012 U.S. Dist. Lexis 61151 (S.D.N.Y. May 1, 2012) ................................11

*Severin v. Project OHR, Inc.*,
No. 10-CIV-9696, 2012 WL 2357410 (S.D.N.Y. June 20, 2012).........................................10

*Szabo v. Bridgeport Machs., Inc.*,
249 F.3d 672 (7th Cir. 2001) ...............................................................................................10

*Twp. of Susquehanna v. H & M, Inc.*,
98 F.R.D. 658 (M.D. Pa. 1983) ............................................................................................21

*Turner v. Beneficial Corp.*,
242 F.3d 1023 (11th Cir. 2001) ............................................................................................24

*Vallies v. Sky Bank*,
591 F.3d 152 (3d Cir. 2009) .................................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ...................................................................................................17, 19

## OTHER AUTHORITIES

C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil* § 1760 (3d ed.
2005).....................................................................................................................................14

*Moore's Federal Practice* §23.120[1][a] (3d ed. 2012) ................................................................13

FED. R. BANKR. P. 9014 ................................................................................................................3

FED. R. CIV. P. 23(g)(1)(A)...................................................................................................11, 12

FED. R. CIV. PROC. 23(a) .............................................................................................................9

FED. R. CIV. PROC. 23(a)(2).......................................................................................................17

FED. R. CIV. PROC. 23(a)(4).......................................................................................................11

FED. R. CIV. PROC. 23(b)(3)...........................................................................................9, 17, 25

FED. R. CIV. PROC. 23(b)(3)(d)..................................................................................................17

15 H.R. CONF. REP. NO. 103-652, 1994 U.S.C.C.A.N. 1992 (1994)............................................23

ny-1066625

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") submit this objection (the "Objection") to the *Motion To Apply Bankruptcy Rule 7023 And To Certify Class Claims* [Docket No. 2044] (the "Motion")[1] filed by Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard, and Rebecca Picard (collectively, "Movants").  In support of the Objection, the Debtors submit the Declaration of K. Lee Marshall, dated December 3, 2012 (the "Marshall Decl."), filed contemporaneously herewith, and respectfully represent:

## I.  PRELIMINARY STATEMENT

Movants are trying for a third time to achieve what has eluded proponents of class certification against Debtor Residential Funding Company, LLC ("RFC") during the past eleven years—certification of a class of over 44,000 individuals residing across the country.  The claims at issue in the Motion relate to the lending practices of two non-debtor banks, Community Bank of Northern Virginia ("CBNV") and Guaranty National Bank of Tallahassee ("GNBT") and the relationship of these two banks with the "Shumway/Bapst Organization" in making second mortgage loans.  A total of eleven cases asserting claims arising out of those transactions have been consolidated and/or are being jointly administered in a multi-district litigation (collectively, the "Putative Class Action") pending before the United States District Court for the Western District of Pennsylvania (the "District Court").  RFC is named as a defendant because it purchased many of those loans and thus allegedly funded the Shumway/Bapst Organization. These claims have been in litigation in one form or another for over eleven years, and prior settlement approvals have been twice reversed on appeal by the U.S. Court of Appeals for the

---

[1]    Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Motion or in the accompanying *Memorandum of Law in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims* [Docket No. 2045] ("MOL").

ny-1066625

Third Circuit (the "Third Circuit").  Notwithstanding that lengthy history, to date, no certified

class exists and little discovery has taken place on the issue of certification, much less on the

merits of the claimants' allegations.

Relief similar to that sought by Movants has been granted only when the court exercises

its discretion under Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") to apply Bankruptcy Rule 7023 and confirms that the movant has satisfied the requisite

elements of Rule 23 (a) and (b) of the Federal Rules of Civil Procedure ("FRCP"), as

incorporated by reference under Bankruptcy Rule 7023.  Here, the Court should not exercise its

discretion under Bankruptcy Rule 9014 to apply Bankruptcy Rule 7023 to this contested matter

because (a) the Putative Class was not certified as a class prepetition, (b) the putative class

members received sufficient notice of the bar date and should have been on notice that they

could not rely on class representation, and (c) the benefits and costs of class litigation are far

outweighed by the efficiencies created by the bankruptcy claims resolution process.  Similarly,

Movants have failed to satisfy the requirements for class certification pursuant to FRCP 23 due

to the absence of competent evidence sufficient to carry their burden of proof.  Finally, Movants'

reliance on the Third Circuit's earlier decisions is misplaced because that court did not in fact

bless the certification of a litigation class.  Therefore, for the reasons discussed herein, the

Motion should be denied.

## II.  FACTUAL BACKGROUND

1.      The relevant factual and procedural history of the Putative Class Action is set

forth in detail in the Marshall Decl., and is incorporated herein in its entirety.

2.      Most recently, the plaintiffs in the Putative Class Action filed a Consolidated

Amended Complaint (the "CAC") on behalf of forty-three named plaintiffs, asserting claims

based exclusively on federal law:  namely, the Real Estate Settlement Practices Act ("RESPA"),

2

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Truth in Lending Act

("TILA"), as amended by the Homeowner Equity Protection Act ("HOEPA").[2]  State law claims

that had been included in prior complaints were abandoned.  Marshall Decl., ¶¶ 15, 16, & Ex. 16.

### III.  LEGAL ARGUMENT

**A.    Applicable Analytical Framework**

3.    When considering the relief requested in the Motion, courts in this district apply

the following multi-step analysis:  first, pursuant to Bankruptcy Rule 9014, the court must

determine whether to exercise its discretion to direct that Bankruptcy Rule 7023, which

incorporates FRCP 23 by reference, be applied; second, the court must determine that Movants

have satisfied the requirements for certification under FRCP 23(a) and (b); and third, the court

must determine that the benefits that generally support class certification in civil litigation will be

realizable in the bankruptcy case.  *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369

(Bankr. S.D.N.Y. 1997).

**B.    Movants Have Failed To Demonstrate That The Court Should Exercise Its
Discretion Under Bankruptcy Rule 9014 To Apply Bankruptcy Rule 7023**

4.    Bankruptcy Rule 9014 governs contested matters that are commenced by motion,

and therefore applies to the Motion as a result of this Objection.  *See* FED. R. BANKR. P. 9014,

advisory committee's note; *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988) ("All

disputes in bankruptcy are either adversary proceedings or contested matters…." (internal

citation omitted)).  "[Bankruptcy] Rule 9014 authorizes the bankruptcy court to 'direct' that one

or more of the adversary rules, including [Bankruptcy] Rule 7023, 'shall apply' to a contested

matter, and the court is given broad discretion in making this determination."  *See Gentry v.*

---

[2]    *See* Consolidated Amended Complaint, annexed as Exhibit 16 to Marshall Decl.

*Siegel*, 668 F.3d 83, 92 (4th Cir. 2012) (*citing Reid v. White Motor Corp.*, 886 F.2d 1462, 1470

(6th Cir. 1989); *In re Am. Reserve Corp.*, 840 F.2d at 492; *In re Motors Liquidation Co.*, 447

B.R. 150, 157 (Bankr. S.D.N.Y. 2011) ("The decision to extend [FRCP] 23's application is

committed to the court's discretion.").  Factors that inform a court's discretion include

(1) whether the class was certified prepetition, (2) whether the members of the putative class

received notice of the bar date and (3) whether class certification will adversely affect

administration of the case.  *In re Musicland Holding Corp.*, 362 B.R. 644, 654-55 (Bankr.

S.D.N.Y. 2007) (citations omitted).  "The first two considerations—pre-petition certification and

notice of the bar date—are critical."  *Id.* at 655.  As discussed in greater detail herein, each factor

weighs against application of Bankruptcy Rule 7023 in this case.

### 1.    The Putative Class Is Not Certified

5.    Litigation of the claims asserted in the Putative Class Action commenced over

eleven years ago.  Plaintiffs in several of the cases now in the Putative Class Action, including

two of the Movants, have twice failed to maintain certification of a settlement class (which, as

discussed below is less demanding than certification of a litigation class) and during this time,

have never obtained certification of a litigation class.  Marshall Decl., ¶¶ 3-7 & n.5, 11, 14, 16,

18.  Movants acknowledge as much in their papers.  *See* Motion at 18 ("[T]his case was not

technically certified prepetition….").

### 2.    Adequate Notice Has Been Provided To Class Members

6.    Pursuant to the Bar Date Order[3], the Bar Date Notice was served on all parties to

litigation with the Debtors, which included counsel for the named plaintiffs for each of the ten

---

[3]    On August 29, 2012 the Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "Bar Date Order"), which set November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for filing proofs of claim against the Debtors (the

actions consolidated in the Putative Class Action.  *See Affidavit of Service* [Docket No. 1412].

*See also Amended Schedules of Assets and Liabilities for Residential Funding Company, LLC*

(Case No. 12-12019 (MG)) [Docket No. 684] at Schedule F3 (listing the consolidated cases and

MDL that comprise the Putative Class Action).  Pursuant to the Bar Date Order, the Debtors also

published the Bar Date Notice at least twenty-eight (28) days prior to the General Bar Date in

(a) the national edition of *The Wall Street Journal* and (b) the national edition of *USA Today*,

which publication was approved by the Court and deemed good, adequate, and sufficient

publication notice of the General Bar Date.  *See Affidavit Of Publication Re Notice Of Deadlines*

*For Filing Proofs Of Claim In The Wall Street Journal And USA Today* [Docket No. 1528]; Bar

Date Order at ¶ 15.  In addition, the Debtors prominently posted the Bar Date Notice on the

website maintained by their claims and noticing agent.

7.    Publication in national sources, particularly when accompanied by other forms of

notice, as is the case here, has been held to constitute adequate notice to potential class action

claimants.  *See, e.g.*, *In re BGI, Inc.*, 476 B.R. 812, 824 (Bankr. S.D.N.Y. 2012) (holding that

publication in *New York Times* and on website maintained by claims agent constituted adequate

notice to potential class claimants).

8.    Notwithstanding the adequacy of notice provided to class members, Movants

argue that class representation is warranted because members "may not realize their entitlement

to file" a claim, or may be unable or unwilling to undertake the investigation necessary to

substantiate their individual proofs of claim.  *See* MOL at 15, 19.  As previously recognized in

---

"General Bar Date") and approved the form of notice of the General Bar Date (the "Bar Date Notice").  On
November 7, 2012, the Court entered the *Order Extending Deadline for Filing Proofs of Claim* [Docket No. 2093]
(the "Extended Bar Date Order"), extending the General Bar Date through November 16, 2012 at 5:00 p.m.
(Prevailing Eastern Time) (the "Extended General Bar Date").

this district, "that problem is not unique to class actions," and does not warrant class treatment. *In re Musicland Holding Corp.*, 362 B.R. at 656.

9.    Arguably, the risk that potential class claimants fail to file a proof of claim because they did not realize they had a claim is substantially reduced here, because litigation in connection with potential claims has been pending for over a decade, and during the Pennsylvania litigation Putative Class members were sent settlement notices with respect to both of the proposed settlement agreements and were the target of intensive letter-writing campaigns by various law firms encouraging them to object or opt out of the Initial Settlement, further placing them on notice of the existence of potential claims.  Marshall Decl., ¶¶ 8, 9, 10, 13 & Ex. 11, 12, 13, 15.  As stated above, notices about the bankruptcy were also published in several national publications, and this proceeding has also been the subject of extensive news coverage. Given the overwhelming duration of this litigation and the numerous notices provided, the Debtors question whether the Putative Class members are truly as unaware as Movants portray.

10.    Finality is a key tenet of the Bankruptcy Code, and in enacting the Bankruptcy Code, the legislature impliedly determined that the benefits of finality outweigh the harm to creditors who, despite being given notice that comports with due process, fail to file timely claims for any reason.  *See, e.g.*, *R2 Invs., LDC v. Charter Commc'ns., Inc. (In re Charter Commc'ns., Inc.)*, 449 B.R. 14, 22 (S.D.N.Y. 2011) (noting that "[i]n the bankruptcy context,…'the ability to achieve finality is essential to the fashioning of effective remedies'") (citations omitted).

**3.    Class Certification Will Adversely Impact Administration Of The Debtors' Bankruptcy Cases**

11.    The third factor to be considered by the Court in determining whether to extend Bankruptcy Rule 7023 to a proof of claim—whether class certification will adversely affect the

administration of the case—"often centers on (a) the timing of the motion for certification,…and (b) whether a plan has been negotiated, voted on or confirmed." *Musicland Holding Corp.*, 362 B.R. at 655 (internal citations omitted). Movants attempt to distinguish this case from others in this district denying class certification on that basis alone, suggesting that because the Motion was filed relatively early in the Debtors' bankruptcy cases, this factor necessarily weighs in favor of applying Bankruptcy Rule 7023. MOL at 17 (distinguishing *Musicland*, *Woodward*, *Bally*, *Ephedra*, and *General Motors* cases based on timing). That position overstates the importance of this factor, and ignores the fact that, notwithstanding the timeliness of the Motion, this class claim would still "seriously delay the administration of the case" due to the procedural posture and complexity of the Putative Class Action. *Musicland Holding Corp.*, 362 B.R. at 656.

12.    Permitting the Putative Class Action to proceed as a class action would "unduly delay distributions" in the Bankruptcy Case due to the inevitable expense and delay such class action litigation would entail, *id.*, and "[a]pplying Rule 23 to the [purported] class claims now would initiate protracted litigation that might delay distribution of the estate for years." *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005). "[C]lass certification would adversely affect the administration of these cases adding layers of procedural and factual complexity that accompany class-based claims, siphoning the Debtors' resources and interfering with the orderly progression of the reorganization." *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 621 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Carrera Plaintiffs v. Bally Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.)*, 411 B.R. 142 (S.D.N.Y. 2009). It is the Debtors' intention to continue with the expeditious  administration of these Chapter 11 cases and seek confirmation of a plan as soon as is practicable given the inherent complexities of these cases. Certification of the Class Claims would, at a minimum,

7

substantially complicate the process of proposing, confirming and consummating any plan by introducing wholly unnecessary delay (at a significant expense to the Debtors' estates) because the "bankruptcy court cannot determine the entitlement of other creditors" until the Class Claims are quantified. [4]  As in *Bally*, adjudicating Movants' claims through class action mechanics will "gum up the works" because there are numerous procedural and substantive hurdles to overcome.

13.    According to the Motion, Movants are seeking damages of at least $1.87 billion (Motion at ¶ 7), suggesting that the establishment of adequate reserves might well require delaying distributions to all unsecured creditors while the exact amount of any recoveries owed to the class is determined.  Movants have never been certified as a litigation class under FRCP 23, yet they believe that they are entitled to have their proofs of claim treated as class claims before this Court.  However, in the underlying proceedings, no scheduling order has been entered, and little discovery has been taken on the issue of whether class certification is even appropriate. In addition, RFC's alleged liability is in large part based on a theory of derivative liability for the acts of CBNV and GNBT as the lenders and primary actors.  (MOL at 4.) Therefore, in order to quantify their claim against RFC, Movants would first need to establish their right to proceed under Rule 7023, which based on their own filing in the Putative Class Action could take well over a year.  Marshall Decl. at ¶ 19.[5]  If the claimants are permitted to

---

[4]    *Bally*, 402 B.R. at 621, n. 5 (in assessing difficulty of quantifying class claim, bankruptcy court noted that "the parties have yet to undertake the significant amount of discovery that will be required to litigate a class certification motion.  After completion of the class certification discovery and the inevitable briefing, the Court will conduct a hearing on class certification.  If the Court ultimately certifies a class, class members will need to be noticed and given an opportunity to "opt out" under [FRCP] 23. The parties will then engage in merits discovery, which, in turn, will be followed by a complex and lengthy trial.").

[5]    In fact, although no scheduling order has been entered by the District Court, the Proposed Scheduling Order submitted by the parties in the District Court is indicative of the typical timeframes in class action litigation.  *See* Proposed Scheduling Order, annexed as Exhibit 21 to Marshall Decl.

proceed as a class, they must then establish the liability of CBNV and GNBT.  Only after the

claimants successfully establish the liability of CBNV and GNBT can the liability, if any, of

RFC on these derivative claims be estimated or quantified.  Given the current procedural posture

of the Putative Class Action against the non-Debtor parties, the liability of CBNV and GNBT

may not be quantified until 2015 or later.  Clearly, the class action mechanism will not benefit

the Debtors' creditors and will impair the efficient administration of these Chapter 11 cases.

## C.    Movants Do Not Meet The Requirements For Certification Under FRCP 23

14.    Movants are seeking certification under FRCP 23(b)(3), which requires a finding

by the Court that:  (a) the requirements of FRCP 23(a) (i.e., numerosity, commonality, typicality,

and adequacy) have been satisfied, and (b) "the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  FED. R. CIV. PROC. 23(a), (b)(3).  As set forth below, Movants fail to satisfy both

their evidentiary burden under either subsection, as well as the specific requirements of

adequacy, commonality, predominance, and superiority.

### 1.    Movants Have Not Satisfied Their Evidentiary Burden

15.    "[T]he [class] certification decision requires 'rigorous analysis.'"  *Miles v. Merrill

Lynch & Co. (In re Initial Pub. Offering Secs. Litig.)*, 471 F.3d 24, 33 (2d Cir. 2006) (quoting

*Gen. Telephone Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  A court may certify a class

only after resolving "factual disputes relevant to each [FRCP] 23 requirement" and finding "that

whatever underlying facts are relevant to a particular [FRCP] 23 requirement have been

established…."  *In re Initial Pub. Offering Secs. Litig.*, 471 F.3d at 41; *see also In re NASDAQ

Market-Makers Antitrust Litig.*, MDL No. 1023, 1996 U.S. Dist. LEXIS 4969, at *7 (S.D.N.Y.

Apr. 17, 1996) ("In order to rule on an application for class certification, a court must ensure that

9

an adequate factual basis exists for a full evaluation of each of the four criteria set out in Rule 23

of the Federal Rules of Civil Procedure….").

16.    There is no competent evidence whatsoever accompanying the Motion.  Movants'

only supporting submission is a "declaration" of counsel[6] that is almost entirely comprised of a

description of the allegations of the CAC (Movants Decl. ¶¶ 9-23), attorney argument and legal

conclusions (*id.* ¶¶ 24-47, 65-79), and information about the procedural history of these claims

(*id.* ¶¶ 48-64).[7]  The FRCP 23 requirements "must be established by at least a preponderance of

the evidence."  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).  "In other words, the district

judge 'must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that

each Rule 23 requirement has been met.'"  *Severin v. Project OHR, Inc.*, No. 10-CIV-9696, 2012

WL 2357410, at *4 (S.D.N.Y. June 20, 2012) (citation omitted); *Szabo v. Bridgeport Machs.,*

*Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) ("Before deciding whether to allow a case to proceed as a

class action, therefore, a judge should make whatever factual and legal inquiries are necessary

under Rule 23.").  To the extent there are any relevant factual averments contained within

Movants Decl., they are undermined by the admission that the averments set forth are based, in

part, on nothing more than "information and belief acquired during the noted representations."

---

[6]    *Declaration of R. Fredrick Walters, David M. Skeens and R. Bruce Carlson in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims* [Docket No. 2047] ("Movants Decl.")

[7]    Debtors reserve the right to object to the Movants Decl., and to move for the exclusion of the declaration from evidence, on two grounds.  First, the declaration does not sufficiently identify the foundation of knowledge for each attorney declarant.  *See Encarnacion v. Astrue*, 491 F. Supp. 2d 453, 462 (S.D.N.Y. 2007), *aff'd*, 568 F.3d 72 (2d Cir. 2009) (declaration based on attorney hearsay does not present a factual case); *Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,No. 98-CIV-2570, 2000 U.S. Dist. LEXIS 7952, at *12 (S.D.N.Y. June 9, 2000) (striking declaration that amounted to conclusory statements of law); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 01-cv-1974, 2007 U.S. Dist. LEXIS 89637, at *34 (N.D.N.Y. Jan. 31, 2007) (granting motion to strike declaration, in part, where declarant lacked specialized knowledge to testify). Second, the declaration constitutes improper testimony of an attorney testifying about facts more properly done so by a fact witness.  *See Risco v. McHugh*, No. 10-cv-6314, 2012 U.S. Dist. LEXIS 83002, at *1 n.2 (S.D.N.Y. June 14, 2012) (rejecting attorney affirmation that was not based on personal knowledge); *Bosch v. Lamattina*, No. 08-cv-0238, 2012 U.S. Dist. LEXIS 147693, at *16-17 (E.D.N.Y. Sept. 28, 2012). (excluding portions of attorney declaration to the extent that counsel made factual averments).

(*id.* ¶ 4).  *See Romero v. H.B. Auto. Grp., Inc.*, No. 11-cv-386, 2012 U.S. Dist. Lexis 61151, at

*27-29 (S.D.N.Y. May 1, 2012) (holding that "allegations made on knowledge and belief are not

sufficient" to satisfy burden of proof on FRCP 23 motions).  This slender reed of a declaration

can hardly support the evidentiary requirements and rigorous analysis mandated by FRCP 23.

*See Mars Steel Corp. v. Cont'l Bank*, 880 F.2d 928, 938 (7th Cir. 1989) (class certification

hearing not exempted from Federal Rules of Evidence).

### 2.      Movants Do Not Satisfy The Adequacy Requirement Of FRCP 23(a)(4)

17.      The adequacy inquiry under FRCP 23(a)(4) "is vital, as 'class members with

divergent or conflicting interests [from the named plaintiffs and class counsel] cannot be

adequately represented.'"  *Drennen v. PNC Bank, N.A. (In re Cmty. Bank of N. Va.)*, 622 F.3d

275, 291-92 (3d Cir. 2010) ("*CBNV II*") (*citing In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d

386, 396 (3d Cir. 2004)).  In addition, under FRCP 23(g), class counsel's "ability to fairly and

adequately represent the interests of the class" requires a court to examine relevant factors,

including but not limited to: (1) "the work counsel has done in identifying or investigating

potential claims in the action," (2) "counsel's experience in handling class actions, other

complex litigation, and the types of claims asserted in the action," (3) "counsel's knowledge of

the applicable law," and (4) "the resources that counsel will commit to representing the class."

*CBNV II*, 622 F.3d at 292 (citing FED. R. CIV. P. 23(g)(1)(A)).

18.      Movants submit no evidence that the "representative parties will fairly and

adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).

### (a)      Movants Have Exacerbated The Adequacy Problems With Class Certification Found By The Third Circuit

19.      Movants recognize that the Third Circuit did not agree that the Putative Class

should be certified for settlement purposes, yet they assert (MOL at 6-7, 11) that they have

addressed all of the Third Circuit's concerns as to the adequacy of representation through (a) the

cooperation of counsel (Carlson Lynch and Walters Bender) and (b) making certain refinements

in the CAC.  However, these changes do not cure the concerns expressed by the Third Circuit

because they have failed to propose subclasses, and the representation of all of the putative

plaintiffs by the same group of lawyers exacerbates, rather than cures, this conflict.

>            **(i)**      **The Intra-Class Conflict Between Those With Timely Claims
>                     And Those Without Has Not Been Resolved**

20.      In *CBNV II*, the Third Circuit again identified "an obvious and fundamental intra-

class conflict of interest … the named plaintiffs' claims – whether under RESPA, TILA, or

HOEPA – are untimely, and they must rely on equitable tolling to save them."  *CBNV II*, 622

F.3d at 303; *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306-07 (3d Cir. 2005) ("*CBNV I*").  The

Third Circuit explicitly indicated that before any class could be certified, the District Court

needed to consider "whether a subclass of class members with <u>timely</u> RESPA and/or

TILA/HOEPA claims [*i.e.*, borrowers whose loans closed within one-year of the filing of the

relevant complaint] should be created."  *CBNV II*, 622 F.3d at 315 (emphasis added).   This is

consistent with the Second Circuit's rule regarding when subclasses are required.  *See Muchnick*

*v. Thomson Corp. (In re Literary Works in Elec. Databases Copyright Litig.)*, 654 F.3d 242, 249

(2d Cir. 2011) (curing intra-class conflict requires dividing the class into "homogeneous

subclasses").

21.      Furthermore, when there are subclasses, each subclass has to be represented

separately by its own counsel.  *See Advisory Committee's 2003 Notes* on FRCP 23(g)(1)(A)

("Class counsel must be appointed for all classes, including each subclass that the court certifies

to represent divergent interests.").  An attorney attempting to represent multiple subclasses

would have a disqualifying conflict of interest, particularly where there is the type of "obvious

12

and fundamental intra-class conflict of interest" present here.  *Moore's Federal Practice* §23.120[1][a] (3d ed. 2012).  *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999); *In re Literary Works in Elec. Databases*, 654 F.3d at 249.  Here, none of the putative class counsel is confining its proposed representation to a single subclass.  Rather, Carlson Lynch and Walters Bender apparently intend to jointly represent <u>all</u> members of the proposed class, thus, exacerbating the intra-class conflict raised by the Third Circuit.[8]

22.     Accordingly, the Motion and the CAC neither address the existence of an "obvious and fundamental intra-class conflict of interest" nor propose subclasses.  The fact that certain of the named plaintiffs may belong to subgroups (*see* MOL at 8) does not resolve the Third Circuit's stated concern because those plaintiffs are not seeking to represent only an appropriate subclass.  Nor is the "cooperation" of counsel a curative development.  No matter what help cooperation may be in some respects, it does not address the Third Circuit's concern for adequate representation of subgroups with divergent interests.

> **(ii)     The Intra-Class Conflict Between Those With Allegedly Superior State Law Claims And Those Without Has Not Been Resolved**

23.     In *CBNV II*, the Third Circuit also held that the possibility that certain state claimants had "uniquely valuable" claims "merited more discussion," 622 F.3d at 310, and expressly directed that in assessing adequacy of representation the District Court should consider "whether a subclass of class members from North Carolina should be created."  *Id.* at 315.  Again, the CAC neither addresses any state law variations nor proposes any subclasses.  To the contrary, the CAC eliminates such considerations by abandoning the state law claims altogether.

---

[8]    Movants' reference to the appointment of Messrs. Carlson and Walters as interim class counsel (MOL 6) in no way resolves issues as to whether they are appropriate class counsel.  The order appointing them expressly states

ny-1066625

This transparent effort to make the case appear superficially more appropriate for national certification aggravates the very adequacy concern the Third Circuit said "deserves more scrutiny," 622 F.3d at 305, with respect to Carlson Lynch. The Third Circuit was concerned that Carlson Lynch's reasons for not pursuing the TILA/HOEPA claims cast doubt on its adequacy, *id.* at 305-06 and 315. The abandonment of the state law claims by all of the putative class counsel raises a similar and equally unresolved issue of inadequacy as to all of them.

### (b)    Additional Adequacy Problems Exist

24.    Beyond the issues identified by the Third Circuit, there are additional adequacy problems raised by the Movants' proposed representation of the Putative Class.

### (i)    Several Proposed Representatives Lack Standing

25.    Rowena Drennen, the only GNBT borrower whose claim would be timely without resorting to equitable tolling (and thus the only Movant who could fall within a subclass the Third Circuit directed be considered), twice declared Chapter 7 personal bankruptcy[9] without identifying her claim against RFC as an "asset" in her schedules, much less receiving an exemption of the asset from being administered in the bankruptcy, Marshall Decl. at ¶¶ 21-21 & Exs. 22, 23, so she may no longer have a claim and, thus, may not be an adequate class representative.[10] *See Davidson v. Citizens Gas & Coke Utility*, 238 F.R.D. 225 (S.D. Ind. 2006)

---

that "This appointment is, of course, without prejudice to defendants' right to oppose the appointment of Mr. Carlson and Mr. Walters at the class certification stage." Marshall Decl. at ¶ 16 & Ex. 17.

[9]    Case Nos. 04-46476 (Bankr. W.D. Mo.) and 05-45392 (Bankr. W.D. Mo.)

[10]    Ms. Drennen is not alone; at least fifteen of the forty-one named plaintiffs in the CAC declared bankruptcy without scheduling these claims or obtaining an exemption, Marshall Decl. at ¶24 & Ex. 24, which fact dooms the proposed class for yet another reason. An essential prerequisite of an action under FRCP 23 is that there be an ascertainable 'class.'" 7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil* § 1760, at 134 (3d ed. 2005). A class is overbroad or indefinite if it includes a large number of people who could not assert a claim. *Copp v. Am. Enterprise Servcs. Co.*, No. 11-CV-189, 2012 WL 1555097, at *2 (S.D. Iowa Apr. 24, 2012). Redefining the class to exclude those people is no solution here because to have an appropriately ascertainable class it must be "administratively feasible for the court to determine whether a particular individual is a member." *E.g., Federal Practice and Procedure: Civil* § 1760, at 140; *Rios v. Marshall*, 100 F.R.D. 395, 403 (S.D.N.Y. 1983). Determining a membership of a class of those otherwise included borrowers who do not have standing as a result of

14

(denying class certification where representative had filed bankruptcy and lost standing to sue).[11]

26.    Flora Gaskin is the sole Movant who would belong to another of the subclasses the Third Circuit directed be considered—CBNV borrowers whose claims are timely without regard to equitable tolling.  However, Ms. Gaskin's loan closed on August 8, 2001, Marshall Decl. Ex. 16, ¶ 329, after the time when her initial complaint states that CBNV had ceased dealing with the "Shumway/Bapst Organization" that Plaintiffs accuse of improper actions. Marshall Decl. Ex. 16, ¶ 76 (stating that the Shumway/Bapst Organization did not have a relationship with CBNV after the middle of 2000).  Therefore, even according to Plaintiffs' own theory, the alleged "scheme" had nothing to do with Ms. Gaskin's loan, rendering her an inadequate class representative.  *See CBNV I*, 418 F.3d at 303 (noting court's understanding that "the claims of all class members here depend upon the existence of the Shumway scheme").

### (ii)    Movants Have Not Established The Adequacy of Proposed Class Counsel

27.    In *CBNV II*, the Third Circuit raised questions regarding the adequacy of Mr. Carlson as class counsel, based on his "justifications for the decision not to assert TILA/HOEPA claims on behalf of the class…."  *CBNV II*, 622 F.3d at 303; *see also id.* at 315.  The "justifications" to which the court referred were Mr. Carlson's repeated assertions (including ones made under oath) about the lack of viability of class-wide TILA/HOEPA claims, which are now central claims in this putative class action.[12]  Importantly, the Third Circuit held that Mr.

---

bankruptcy would not be administratively feasible because it would require examination of thousands of individual bankruptcy records across the country.  *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.*, No. 08-cv-761C, 2012 WL 370319, at *2-*3 (W.D.N.Y. Feb. 3, 2012).

[11]    While the bankruptcy trustee for Ms. Drennen's bankruptcy might have standing to pursue an individual claim on behalf of the estate, he or she would still not be an adequate class representative, by virtue of the conflicting nature of the trustee's duties to Ms. Drennen's unsecured creditors and a named plaintiff's duties to absent class members.  *See, e.g., Davidson*, 238 F.R.D. 225 (explaining that bankruptcy trustees cannot act as class representatives due to these conflicts).

[12]    *See* Marshall Decl. at ¶ 26 & Exs. 24 & 25.

Carlson's adequacy must be resolved prior to any determination that a class could be certified. *CBNV II*, 622 F.3d at 305-06, 308-311.

28.    Mr. Carlson's earlier views and decisions about the TILA/HOEPA claims are relevant to his adequacy for two reasons: (1) it is difficult to see how he can now effectively argue on behalf of class members that he believes these claims to be meritorious and capable of litigation in a class proceeding, and (2) (more fundamentally) he made the decision to omit these claims—that he now claims are worth tens of thousands of dollars to each of at least a portion of the Putative Class—primarily to ease the path to class certification. The strategic and tactical decisions Mr. Carlson made in the course of prosecuting these claims raise serious concerns about his adequacy.

29.    The other firm seeking to represent the class, Walters Bender, was found by the District Court to have sent misleading communications to class members. The District Court agreed that the communications were misleading, and on October 14, 2003, issued an order invalidating all solicited opt-outs in the states that had been targeted.[13] While the Third Circuit later invalidated that order, it did so because it considered any restraint on alleged attorney-client communications to be improper, and it directed the District Court to make further findings in support of its order.[14] The Third Circuit did not suggest that the communications were, in fact, proper or truthful, and therefore a court addressing certification has an obligation to investigate whether Walters Bender could be adequate as class counsel in light of the conduct that so troubled the District Court.

---

[13]    *See Order Granting Joint Motion to Invalidate Solicited Opt-outs and for Court Approved Notice to Address False, Misleading and Deceptive Solicitations of Opt-outs*, annexed as Exhibit 12 to Marshall Decl., ¶ 9.

[14]    *CBNV I*, 418 F.3d at 312-13.

**3.      Movants Do Not Satisfy The Commonality Requirement Of FRCP 23(a)(2)
Or The Predominance Requirement Of FRCP 23(b)(3)**

30.      FRCP 23(a)(2) requires that class certification may be granted only where "there
are questions of law or fact common to the class." FED. R. CIV. PROC. 23(a)(2).  FRCP 23(b)(3)
further requires that a class action may be maintained under that subsection only if "the court
finds that the questions of law or fact common to class members predominate over any question
affecting only individual members…." FED. R. CIV. PROC. 23(b)(3).  Movants suggest that
because they have purportedly resolved the Third Circuit's concerns regarding adequacy for
settlement purposes (which, as set forth above, is incorrect), the Third Circuit's prior statements
regarding their satisfaction of the other certification requirements for settlement purposes
mandate a finding that certification is appropriate here for litigation purposes.  MOL at 6.  This
suggestion is erroneous because the certification analysis for settlement purposes is less
demanding than for litigation, and, in any event, since the Third Circuit opinion, the Supreme
Court has adopted a higher standard for analyzing commonality under FRCP 23(a)(2) than the
one applied by the Third Circuit.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551
(2011) ("*Dukes*"), As set forth below, Movants neither satisfy the test set forth in *Dukes*, nor do
they met the predominance requirement under FRCP 23(b)(3).

**(a)      The Third Circuit's Prior Comments Regarding Movants'
Satisfaction Of Commonality and Predominance Requirements Are
Not Controlling**

31.      Certifying a settlement class is not the same as certifying a class for litigation.  As
the Supreme Court stated in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997),
"Confronted with a request for settlement-only class certification, a district court need not
inquire whether the case, if tried, would present intractable management problems, for the
proposal is that there be no trial. (*citing* FED. R. CIV. PROC. 23(b)(3)(D))."  The issue of

manageability is a basic, essential part of the predominance standard that a plaintiff must satisfy

in order for the court to certify a (b)(3) class.  The Third Circuit's decisions in *CBNV I* and

*CBNV II* do not speak to, much less decide, the predominance determination this Court would

have to make to certify a class for litigation.[15]  Given the lesser level of proof required for

predominance for a settlement-only class that need not address trial management issues,  it is

possible to have a class certified for settlement that could not be certified for litigation.  *See In re*

*Initial Public Offering Secs. Litig.*, 226 F.R.D. 186, 195-96 (S.D.N.Y. 2005).

32.     The Second Circuit has held that, "[w]hen evaluating litigation classes,…the

predominance requirement is satisfied 'if resolution of some of the legal or factual questions that

qualify each class member's case a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to

individualized proof.'"  *Ohio Pub. Employers Ret. Sys. V. Gen. Reins. Corp. (In re Am. Int'l*

*Grp., Inc. Secs. Litig.)*, 689 F.3d 229, 240 (2d Cir. 2012) (citations omitted).  The Third Circuit

did not apply anything like this standard, much less make a decision under this standard.  To the

contrary, it described a relaxed approach in this settlement class context that reduced the

predominance requirement to a reiteration of the typicality test.  *CBNV I*, 418 F.3d at 309.  *See*

*also CBNV II*, 622 F.3d at 291 (noting that the only contested issue in either *CBNV I* or *CBNV II*

was adequacy of representation, effectively designating as *dicta* its remarks in the first opinion

about predominance).[16]

33.     Moreover, since *CBNV I* or *CBNV II* were decided, there has been a major

development in the law governing the commonality requirement.  In *Dukes*, the Supreme Court

---

[15]     *See* Marshall Decl. at ¶ 11.

clarified the requirement of commonality in a manner that plainly raised the bar above where the

Third Circuit thought it was back when it rendered its decisions in the Putative Class Action.

The Supreme Court held that, "What matters to class certification … is not the raising of

common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to

generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the

proposed class are what have the potential to impede the generation of common questions."

*Dukes*, 131 S. Ct. at 2251 (emphasis in original; citations omitted).  This stands in stark contrast

to the Third Circuit's prior description of commonality as a "low threshold" requiring

identification of only a single common question.  *See, e.g., Newton v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).  Movants' Motion and MOL identify

some common questions but, as demonstrated below, do not establish the capacity of class

litigation to generate common answers.

> **(b)    Individualized Questions Of Law And Fact Predominate The Class**
> **Claims And Are Not Susceptible Of Common Answers**

34.    Movants' argument as to common questions (MOL at 9) is fatally defective for

the very reason identified in *Dukes*.  It is merely a list of common questions, not an evidentiary

showing that there are common answers that can be established by generalized proof.  Nor is it

an answer to argue, as Movants do (MOL at 13), that many of their claims involve standardized

forms, because the proof of a violation is not made out by the forms, but rather by the individual

loan information contained on the forms.  The process of assessing that information is not

susceptible to generalized proof, as required for certification.

---

[16]    There is also nothing in the Third Circuit opinions that prejudge the separate issue of whether plaintiffs have met or can meet their burden of proof on the FRCP 23(a)(2) requirement of commonality, which was regarded as unchallenged in the appeals.  *See* 418 F.3d at 303.

ny-1066625

35.    In fact, proving the Class Claims raises a slew of individual issues that prevent

them from satisfying the FRCP 23(a)(2) and 23(b)(3) requirements.  The amount of time and

judicial energy that would have to be devoted to these individual issues far outweighs any

economies that could be gained by any class-wide determinations.  By way of illustration, the

following issues turn in whole or in part on individualized proof.

(i)    <b>Statute Of Limitations For RESPA And TILA/HOEPA Claims</b>

36.    The RESPA and TILA/HOEPA claims have a one year statute of limitations.  The

claims of (a) all CBNV borrowers whose loans closed before May 1, 2000, (b) the non-

Pennsylvania CBNV borrowers whose loans closed before June 12, 2001, and (c) all GNBT

borrowers whose loans closed before September 19, 2001, are barred by the statute of

limitations, unless they can establish equitable tolling.  Equitable tolling requires a showing that

the defendant took steps to affirmatively mislead them as to their claim and that they exercised

due diligence to discover their claims.  *See, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman*,

38 F.3d 1380 (3d Cir. 1994).  Such a showing cannot be made on a class-wide basis and creates

individualized issues that turn on specific evidence as to:

- What actions, if any, were taken to mislead individual class members as to their claims;

- When individual class members knew or should have known of their claims; and

- How, if at all, individual class members relied on the disclosures (or lack thereof) that were made by defendants.

These individualized issues make class certification inappropriate.  *See, e.g.*, *Broussard v.

Meineké Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (extent of knowledge

of omitted facts or reliance on misrepresented facts that vary from class member to class

member, requiring individual inquiry and making class treatment impossible; tolling the statute

of limitations on each putative class member's claim would depend on the individualized

20

showings unique to each potential class member); *Egerer v. Woodland Realty, Inc.*, 556 F.3d

415, 424 (6th Cir. 2009); *Hall v. Burger King Corp.*, No. 89-0260, 1992 WL 372354, at *15 n.8

(S.D. Fla. Oct. 26, 1992) (claims raising fraudulent concealment issues involve highly

individualized questions of fact and cannot be tried on a class-wide basis); *Twp. of Susquehanna

v. H & M, Inc.*, 98 F.R.D. 658, 668 (M.D. Pa. 1983) (individual issues predominated over

common issues where fraudulent concealment would likely be a centrally litigated issue).

### (ii)     RESPA Claims Require Examination Of Individual Loans

37.     Putative class actions alleging violations of RESPA have frequently been denied

class certification when, as here, the claims require an examination of each class member's loan

file.  *See e, g, Bjustrom v. Trust One Mortg. Corp.*, 322 F.3d 1201, 1208-09 (9th Cir. 2003)

(noting that "RESPA requires a loan-specific analysis of whether total mortgage broker

compensation from all sources is reasonable," and vacating class certification sua sponte);

*Culpepper v. Irwin Mortg. Corp.,* 491 F.3d 1260, 1276-77 (11th Cir. 2007) (affirming the district

court's order decertifying the class because the legality of a yield spread premium payment to a

mortgage broker "is to be assessed in light of the particular facts and circumstances of the

borrower's transaction" and thus requires an individualized inquiry under RESPA); *O'Sullivan v.

Countrywide Home Loans, Inc*., 319 F.3d 732, 741-42 (5th Cir. 2003) (finding class certification

inappropriate for a section 8(b) RESPA action because the HUD reasonable relationship test

requires individualized factfinding for each transaction, and stating that the "a single finding of

liability based on an unreasonable relationship between goods and services does not necessitate

the conclusion that such unreasonableness exists on a classwide basis"); *Glover v. Standard Fed.

Bank*, 283 F.3d 953, 965 (8th Cir. 2002) (concluding that class certification is impractical in

RESPA actions involving yield spread premium payments to brokers, since the district court

would need to undertake a "loan specific inquiry").

38.     Whether or not class RESPA claims can ever be certified, the specific RESPA

claims at issue here are ones in which individual issues, rather than common ones, predominate.

For example, the title fees imposed, the extent to which actual title services were provided, and

the reasonable value of those services, will vary based on provider, local standards, and the type

of title records in the locality.  Marshall Decl., Ex. 16, ¶¶ 115-406.  In this case, title

examinations were performed by several different title companies, and no standard or uniform

fee was imposed.[17]  Movants have cited no evidence that these fees were standard or uniform.

39.     In addition, whether and how fees were divided for alleged kickbacks, and the

question of whether an impermissible business arrangement existed between CBNV or GNBT,

on the one hand, and the Shumway/Bapst Organization, on the other, are issues that will vary

because there were several different loan production offices and several different title companies

working with CBNV and GNBT.  Marshall Decl., Ex. 16 ¶¶ 64, 67-70, 83, 120, 130, 159, 188,

275, 505, 520.  Notably, the CAC indicates that there is a group of CBNV borrowers who took

out loans after CBNV had stopped dealing with the Shumway/Bapst Organization, and that there

were three distinctly different types of relationships between CBNV and the Shumway/Bapst

Organization during the time those parties were transacting business with each other.  *Id.*, Ex. 16,

¶¶ 678-69, 72-73, 76, 77, 231, 240, 270, 317, 328, 398.  All of these issues require laboriously

time-consuming attention to individualized proof.

### (iii)     TILA/HOEPA Claims Involve Individualized Issues

40.     The Class Claims include assertions that their APR should have reflected fees

charged for title services that were never provided, Marshall Decl. Ex. 16, ¶¶ 124, 133, 143, 153,

162, 172, 182, 465, but these claims (in addition to being false) are certainly not provable on a

---

[17]     *See* Marshall Decl. at ¶ 27 & n.10.

class-wide basis, and the determination of "reasonable" fees will vary from loan to loan.  *See*

*Reiser v. Res. Funding Corp.*, No. 03-CV-0619-DRH, 2005 WL 3934728, at *4 (S.D. Ill. Jan 19,

2005) (reasoning that mini-trials would be necessary to determine value of services performed,

fees actually charged, whether such fees qualify as a finance charge, and whether inclusion of

any alleged overcharge would cause material adjustment in APR).  *See, e.g., O'Brien v.*

*J.I. Kislak Mortg. Corp.*, 934 F. Supp. 1348, 1356-59 (S.D. Fla. 1996) (denying class

certification of TILA finance charge disclosure action where issue requiring extensive

individualized inquiries predominated over common issues including thousands of individualized

fact inquiries regarding loan fees destroyed commonality).  Accordingly, the extent to which the

APR was allegedly understated is necessarily a loan-by-loan issue.

   41. The extent to which the supposedly understated APR or other alleged

TILA/HOEPA nondisclosures were material to the borrower's decision to proceed with the loan,

required for enhanced damages under section 1640(a)(4) of HOEPA, is also a loan-by-loan issue.

The legislative history makes clear that Congress intended this materiality requirement "to

reference a common legal standard, not to reference 'material disclosures' under TILA."

15 H.R. Conf. Rep. No. 103-652, at 162, 1994 U.S.C.C.A.N. 1992 (1994).  Accordingly, a court

cannot award HOEPA enhanced damages in any case if the alleged failure to comply was not

likely to influence the borrower's decision to obtain the loan.  This type of materiality is a

"relative concept," so a court must evaluate a given misrepresentation or omission in the

complete context in which it was made.  *In re Donald J. Trump Casino Secs. Litig.*, 7 F.3d 357,

369 (3d Cir. 1993).  This fact-specific review is necessary because "a particular

misrepresentation or omission significant to a reasonable investor in one document or

circumstance may not influence a reasonable investor in another."  *Id.*

42.     The TILA claims also challenge the sufficiency of the disclosures made to borrowers, Marshall Decl., Ex. 16, ¶ 15, which will require study of each loan file.  Movants do not assert—and certainly have not come forward with evidence—of a uniform process that might allow them to prove insufficiency of the disclosures on a class-wide basis.  To the contrary, Movants assert that only "certain of the class members' promissory notes" lacked allegedly required disclosures.  *See* MOL at 9.  Moreover, while it is not RFC's burden to disprove the elements for class certification, RFC is aware that there were a variety of forms of HOEPA disclosures.  The timing of the disclosures will also be individualized and involve individualized proof.[18]

43.     Finally, the CAC seeks (among other things) actual damages for violation of TILA.  Marshall Decl., Ex. 16, ¶ 468.  Detrimental reliance is required for actual damages under TILA.  *See, e.g., Vallies v. Sky Bank*, 591 F.3d 152, 157-58 (3d Cir. 2009); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 & 1028 (11th Cir. 2001).  By definition, detrimental reliance requires individualized proof.  *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1885 (2011) (noting that questions of detrimental reliance are individualized and therefore potentially inappropriate for class-action treatment).

                    **(iv)     Rescission And RICO Claims Are Not Appropriate For Class Treatment**

44.     The CAC also contains a rescission claim.  Marshall Decl., Ex. 16 ¶¶ 15, 468.  As the Third Circuit indicated, numerous courts have held that rescission claims are not appropriate for class treatment.  *See CBNV II*, 622 F.3d at 308 n.27.  In addition, the RICO claims are premised on vague allegations of mail and wire fraud.  It is well established that RICO mail and

---

[18]     *See* Marshall Decl. at ¶ 28 & Ex. 24.

wire fraud claims require individualized reliance and hence are not suitable for class treatment.

*See, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *Estate of LTC Scott v. Scott*, 907 F. Supp. 1495, 1499 (M.D. Ala. 1995).

**D.      Movants Do Not Satisfy the Superiority Requirement of FRCP 23(b)(3) Because Benefits That Generally Support Class Certification In Civil Litigation Are Not Applicable Here**

45.      Finally, in analyzing whether to permit a class proof of claim to be filed in a bankruptcy case, courts weigh "the benefits and costs of class litigation against the efficiencies created by the bankruptcy claims resolution process…." *Gentry*, 668 F.3d at 92; FRCP 23(b)(3). Here, as in *Gentry*, systemic considerations favor the bankruptcy claims process over class action litigation of the claims under the CAC. *See supra* III.B.3 (allowing class claim will delay administration of case). Specifically, the claims process in bankruptcy provides "(1) established mechanisms for notice, (2) established mechanisms for managing large numbers of claimants, (3) proceedings centralized in a single court with nationwide service of process, and (4) protection against a race to judgment since all of the debtor's assets are under control of the bankruptcy court." *Gentry*, 668 F.3d at 93. Both the general and governmental entity bar dates have passed. Accordingly, the Debtors are engaged in the process of reviewing and evaluating the filed claims and anticipate submitting in the near future, for the Court's consideration, omnibus objection, settlement, and alternative dispute resolution procedures in an effort to efficiently address and reconcile the numerous categories of claims filed against their estates.

## IV.  CONCLUSION

Accordingly, for the reasons set forth herein, the Debtors respectfully request that the Court deny the Motion and grant such other and further relief as it deems just and proper.

Dated:  December 3, 2012
         New York, New York

_____/s/ Norman S. Rosenbaum_____
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
Erica J. Richards
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

K. Lee Marshall
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, California 94105
Telephone: (415) 268-2000
Facsimile: (415) 268-1999

Michael G. Biggers
Darci F. Madden
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Counsel for the Debtors and
Debtors in Possession*