| | |
|---|---|
| MORRISON & FOERSTER LLP | BRYAN CAVE LLP |
| 1290 Avenue of the Americas | 560 Mission Street, 25th Floor |
| New York, New York 10104 | San Francisco, California 94105 |
| Telephone: (212) 468-8000 | Telephone: (415) 268-2000 |
| Facsimile: (212) 468-7900 | Facsimile: (415) 268-1999 |
| Gary S. Lee | K. Lee Marshall |
| Norman S. Rosenbaum | |
| Jordan A. Wishnew | One Metropolitan Square |
| Erica J. Richards | 211 North Broadway, Suite 3600 |
| | St. Louis, Missouri 63102-2750 |
| | Telephone: (314) 259-2000 |
| | Facsimile: (314) 259-2020 |
| | Michael G. Biggers |
| | Darci F. Madden |

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF K. LEE MARSHALL IN SUPPORT OF
DEBTORS' OPPOSITION TO MOTION TO APPLY BANKRUPTCY RULE 7023
AND TO CERTIFY CLASS CLAIMS**

I, K. Lee Marshall, being duly sworn, state the following under penalty of perjury:

**A.    Background and Qualifications**

1.      I am a partner in the law firm of Bryan Cave LLP ("Bryan Cave" or the "Firm"). The Firm maintains offices for the practice of law at, among other locations in the United States and worldwide, 560 Mission Street, 25th Floor, San Francisco, CA 94105. I am an attorney duly admitted and in good standing to practice before the courts of Missouri and California, as well as federal trial and appellate courts across the country.

ny-1066952

2.      I submit this declaration (the "Declaration") in support of the *Debtors' Opposition to Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims* filed contemporaneously herewith (the "Objection").[1]  Bryan Cave has been counsel to certain of the Debtors on this matter since the Spring of 2011.  Except as otherwise indicated, the facts set forth in this Declaration are based on (i) personal knowledge, and (ii) my review of the records obtained in connection with the Consolidated Cases and MDL Cases (each as defined herein).  If called as a witness, I could and would testify thereto.

**B.   Procedural History Of The Putative Class Actions**

    **1.   Initiation of Putative Class Actions**

3.      On May 1, 2001, *Davis v. CBNV*, currently Case No. 02-1201 (W.D. Pa.) ("*Davis*"), was filed in the Court of Common Pleas of Allegheny County, Pennsylvania, by borrowers against Community Bank of Northern Virginia ("CBNV") and Debtor Residential Funding Company, LLC ("RFC"),[2] and purported to be brought on behalf of a class of Pennsylvania CBNV borrowers.  A copy of the Complaint in Class Action, filed May 1, 2001 in Davis v. Community Bank of Northern Virginia, C.C.P. Allegheny County, Pennsylvania, No. GD-01-8643, is annexed hereto as **Exhibit 1**.  On June 12, 2002, *Davis* was amended to assert a putative nationwide class, and to assert claims relating to the Shumway/Bapst Organization.  A copy of the Second Amended Complaint in Class Action, filed June 12, 2002, in *Davis v. Community Bank of Northern Virginia*, C.C.P. Allegheny County, Pennsylvania, No. GD-01-8643, is annexed hereto as **Exhibit 2**. On July 9, 2002, *Davis* was removed to the Federal District Court for the Western District of Pennsylvania (the "District Court"), Case No. 02-1201.

---

[1]   Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

[2]   The case was originally brought against GMAC-Residential Funding Corporation.

A copy of the Notice of Removal, filed July 9, 2002, Case No. 02-1201 (W.D. Pa.), is annexed hereto as **Exhibit 3**.

4.     On September 19, 2002, *Ulrich v. GNBT*, Case No. 02-1616 (W.D. Pa.) ("*Ulrich*"), was filed in the District Court by borrowers against Guaranty National Bank of Tallahassee ("GNBT") and RFC[3] as a putative nationwide class action, also asserting claims relating to the Shumway/Bapst Organization. Bruce Carlson, then of Specter, Specter, Evans and Manogue, P.C., and later of Carlson Lynch Ltd. ("Carlson Lynch") was the lead plaintiffs' counsel in both *Davis* and *Ulrich*. A copy of the Complaint in Class Action, filed September 19, 2002, Case No. 02-1616 (W.D. Pa.), is annexed hereto as **Exhibit 4**.

5.     The *Davis* and *Ulrich* cases were ultimately consolidated with four other cases[4] pending in the District Court (collectively, the "Consolidated Cases").[5] *See* Findings and Order Conditionally Certifying A Class for Settlement Purposes, Preliminarily Approving the Class Settlement, Directing the Issuance of a Class Notice to the Class and Scheduling a Settlement Hearing, filed July 17, 2003, Case No. 03-0345 (W.D. Pa.), annexed hereto as

---

[3]  This case was also originally brought against GMAC-Residential Funding Corporation.

[4]  The procedural history is described in the Third Circuit opinions found at 418 F.3d 277 (3d Cir. 2005) and 622 F.3d 275 (3d Cir. 2010), each discussed in detail below. Due to statute of limitation and equitable tolling issues that figure prominently in both the settlements of the Consolidated Cases and the Third Circuit's subsequent rulings, *Davis* and *Ulrich* are the most important procedurally. *See CBNV* I, 418 F.3d at 285, 303-08, 317-18 & n.3; *see generally* 622 F.3d 275.

[5]  *See Sabo v. CBNV*, No. 02-1563; *Picard v. CBNV*, No. 02-2000; *Mathis v. GBNT*, No. 02-1999; and *Kessler v. RFC*, No. 03-0425, consolidated in the Findings and Order Conditionally Certifying A Class for Settlement Purposes, Preliminarily Approving the Class Settlement, Directing the Issuance of a Class Notice to the Class and Scheduling a Settlement Hearing, filed July 17, 2003, Case No. 03-0345 (W.D. Pa.), and annexed hereto as **Exhibit 5**. *See also CBNV* I, 418 F.3d at 284-86. While the Initial Settlement was on appeal, the Judicial Panel for Multidistrict Litigation transferred three other cases to the District Court as part of MDL No. 1674, and later transferred two others (collectively, the "MDL Cases"). The MDL Cases are: *Hobson v. Irwin Union Bank & Trust Co.*, No. 04-2351 (N.D. Ala.); *Chatfield v. CBNV*, No. 04-2235 (D. Md.); *Ransom v. CBNV*, No. 04-2236 (D. Md.); *Drennen v. PNC Bank, N.A.*, No. 05-0665 (W.D. Mo.); and *Spann v. CBNV*, No. 03-7022 (N.D. Ill.). See MDL transfer orders annexed hereto as **Exhibit 6**.

**Exhibit 5**. *See also In re Community Bank of Northern Virginia*, 418 F.3d 277, 284-86 (3d Cir. 2005) [hereafter "*CBNV I*"].

6. The Consolidated Cases asserted claims for violation of various state laws, including usury, unfair trade practices, and certain consumer protection laws, and a claim under the Real Estate Settlement Practices Act ("RESPA"). *See CBNV I*, 418 F.3d 277, 285-86. The Consolidated Cases eventually also asserted violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See CBNV I*, 418 F.3d at 285, 291, 298. None of the Consolidated Cases alleged violations of the federal Truth in Lending Act ("TILA"), as amended by the Homeowner Equity Protection Act ("HOEPA").[6] *Id.* at 307-08.

### 2. Initial Proceedings and Settlement

7. In July 2003, the named plaintiffs and defendants to the Consolidated Cases reached a settlement agreement ("Initial Settlement") and moved the District Court for preliminary approval of a proposed nationwide class action settlement. *CBNV I*, 418 F.3d at 286; *In re Community Bank of Northern Virginia*, 622 F.3d 275, 281 (3d Cir. 2010) [hereafter "*CBNV II*"]. The parties reached this agreement prior to formal discovery or a motion for class certification. *CBNV I*, 418 F.3d at 286, 307 ("Class counsel admitted during oral argument that no formal discovery was conducted whatsoever -- either in *Kessler* or in any of the five consolidated actions."). The Initial Settlement contemplated that the defendants would pay up to

---

[6] Only the MDL Cases asserted TILA violations. More specifically, Edelman, Combs & Latturner, LLC filed *Spann v. CBNV*, No. 03-7022 (N.D. Ill.) on October 6, 2003, asserting causes of action for violations of TILA as amended by HOEPA, and violations of the Illinois Interest Act. Walters, Bender, Strohbehn & Vaughan, P.C. and several other law firms jointly filed *Hobson v. Irwin Union Bank & Trust Co.*, No. 04-2351 (N.D. Ala.) on July 30, 2004, asserting causes of action for violations of TILA as amended by HOEPA, and violations of RESPA. Scott Borison of Legg Law Firm, LLC filed *Chatfield v. CBNV*, No. 04-2235 (D. Md.) and *Ransom v. CBNV*, No. 04-2236 (D. Md.), on June 9, 2004, with each action asserting counts for violation of TILA, violation of HOEPA, and breach of contract. Walters, Bender, Strohbehn & Vaughan, P.C. filed *Drennen v. PNC Bank, N.A.*, No. 05-0665 (W.D. Mo.), on July 25, 2005, asserting a cause of action for rescission. Copies of the July 30, 2001, *Hobson* Complaint, the June 9, 2004, *Chatfield & Ransom* Complaints, and the July 25, 2005, *Drennen* Complaint are annexed hereto as **Exhibits 7, 8, 9, 10**, **and 26** respectively. As originally filed, RFC is named as a defendant in *Spann*, *Hobson*, and *Drennan*, but not *Chatfield* and *Ransom*.

$33 million, with class members receiving between $250 and $925 each. *Id.* The settlement fund was to be allocated among class members based on two core factors: (1) when the class member's loan closed (which affected whether the claim required a showing of equitable tolling to save it); and (2) the class member's state of residence when the loan closed (to take into account differences in the relevant state's laws). *Id.*; *CBNV* II, 622 F.3d at 281-82.

8. On July 17, 2003, the District Court entered an order "conditionally certifying a class for settlement purposes" and preliminarily approving the settlement. The Findings and Order Conditionally Certifying a Class for Settlement Purposes, Preliminarily Approving the Class Settlement, Directing the Issuance of a Class Notice to the Class and Scheduling a Settlement Hearing, filed July 17, 2003, Case No. 03-0345 (W.D. Pa.), is annexed hereto as **Exhibit 5**. Thereafter, a settlement administrator sent direct mail notices to the class members and caused the Class Publication Notice to be published in a weekday national edition of USA Today, once a week for two weeks. *See* Final Order Approving Class Action Settlement and Class Mail Notice, Class Publication Notice, and Notice Plan, annexed hereto as **Exhibit 11** (Final Order incorporating the Class Mail Notice, Class Publication Notice, and Notice Plan by reference in paragraph 1, and finding in paragraph 5 that the Class Mail Notice and its distribution to the Class, and the publication of the Class Publication Notice, implemented pursuant to the Initial Settlement and Notice Plan, constituted satisfactory notice under all applicable law).

9. After the class notice was mailed, several law firms (including Walters, Bender, Strohbehn & Vaughan, P.C. ("Walters Bender")) mailed correspondence to the members of the putative class within Missouri, Illinois, Georgia, Alabama, Maryland, and Florida urging them to object to or opt out of the settlement. *See* Order Granting Joint Motion to Invalidate

Solicited Opt-outs and for Court Approved Notice to Address False, Misleading and Deceptive Solicitations of Opt-outs, annexed hereto as **Exhibit 12**; Brief in Support of Joint Motion to Invalidate Solicited Opt-Outs and Exhibits 1, 5, 6, 7, 9, and 11 thereto, annexed to this declaration as **Exhibit 13**. *See also CBNV I*, 418 F.3d at 287.

10. In October 2003, the named plaintiffs and defendants filed a joint motion seeking to invalidate the resulting opt outs, arguing that the letters sent by Walters Bender and others contained misleading statements and inappropriately solicited class members. *See* Brief in Support of Joint Motion to Invalidate Solicited Opt-Outs, annexed hereto as **Exhibit 13**. The District Court agreed and directed that curative notices be sent to these class members. *See* Order Granting Joint Motion to Invalidate Solicited Opt-outs and for Court Approved Notice to Address False, Misleading and Deceptive Solicitations of Opt-outs, annexed hereto as **Exhibit 12**. As a result, another set of notices concerning this litigation were sent to class members in Missouri, Illinois, Georgia, Alabama, Maryland, and Florida. *CBNV I*, 418 F.3d at 289. After a fairness hearing, the District Court approved the Initial Settlement on December 4, 2003. *See* Final Order Approving Class Action Settlement, annexed hereto as **Exhibit 14**. (the "<u>Initial Settlement Approval Order</u>").

11. The parties objecting to the Initial Settlement, represented by Walters Bender and others, appealed the approval of the Initial Settlement Approval Order. *CBNV I*, 418 F.3d 277. On August 11, 2005, the Third Circuit issued an Opinion ("<u>CBNV I</u>") vacating the Initial Settlement Approval Order and remanding for further proceedings. *Id.* at 302. The Third Circuit acknowledged that certification of a settlement class is subject to a more relaxed standard than a litigation class (in that the settlement class can be certified without regard to whether a

class-wide trial would present "intractable management problems")[7], but nevertheless found that the District Court failed to appropriately analyze the requirements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure ("FRCP"). *See CBNV I*, 418 F.3d at 300 ("Our review of the record makes plain that the District Court did not engage in the *Rule 23(a)* and *(b)* inquiry required by *Amchem*.").

        12.      The Third Circuit determined that the "central inquiry" and "dominant concern" in analyzing the proposed settlement class is the "adequacy of representation" requirement under FRCP 23(a)(4). *Id.* at 300. In particular, the Third Circuit noted that "[i]f the Court determines that the TILA and HOEPA claims are viable, there may be serious questions whether the named plaintiffs' interests are sufficiently aligned with those of absent claims members as required by Rule 23(a)." *Id.* at 306. Accordingly, the Third Circuit directed the District Court to further investigate the viability of the claims and class counsel's rationale for failing to pursue them. *Id.* at 309-10 (concluding that "adequacy of representation [under FRCP 23(a)] . . . requires additional analysis," and that "[o]n remand, the District Court should pay particular attention to the prevalence of colorable TILA, HOEPA, and other claims that the individual class members may have which were not asserted by class counsel in the consolidated complaint (or presumably in settlement negotiations)").The Third Circuit also directed the District Court to consider establishing subclasses for class members, if any, with potential claims under TILA/HOEPA that would not be required to rely on equitable tolling arguments for relief. *Id.* at 310 (stating that "if the District Court were to find that class certification is appropriate, the Court should determine whether subclasses are necessary or appropriate based on [whether the

---

[7] For example, the Third Circuit noted that the "settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *CBNV I*, 418 F.3d at 299.

class members have colorable TILA, HOEPA, and other claims not asserted by class counsel in the consolidated complaint]").

### 3. Proceedings on Remand; The Second Settlement

13. On remand, Carlson Lynch advised the District Court that it intended to pursue approval of the Initial Settlement. *CBNV II*, 622 F.3d 275, 285 (3d Cir. 2010) ("Class counsel advised the Court that it intended to continue to pursue approval of the Initial Settlement."). The District Court indicated that it would address the viability of potential TILA/HOEPA claims and then address adequacy and the other FRCP 23 elements. *Id.* at 285-86. As the parties were briefing the viability of potential TILA/HOEPA claims, the named plaintiffs and defendants negotiated a new settlement agreement ("Second Settlement"). *Id.* at 286-87. Thereafter, the District Court again conditionally certified the class for settlement purposes, preliminarily approved the Second Settlement, and ordered that class notice be sent. *Id.* at 289. As with the First Settlement, a settlement administrator sent out a new set of direct mail notices to the class members informing them of the proposed settlement. *See* the Final Order Approving Class Action Settlement and Revised Joint Plan of Class Action Settlement Notice, Class Mail Notice, Class Publication Notice, and Notice Plan, annexed hereto as **Exhibit 15** (the "Second Settlement Approval Order") (Final Order incorporating the Revised Joint Plan of Class Action Settlement Notice and Class Mail Notice, Class Publication Notice, and Notice Plan by reference in paragraph 1, and finding in paragraph 5 that the Class Mail Notice and its distribution to the Class, and the publication of the Class Publication Notice, implemented pursuant to the Initial Settlement and Revised Notice Plan, constituted satisfactory notice under all applicable law). After a fairness hearing, the District Court approved the Second Settlement on August 15, 2008. *See id.* Because it had previously found the TILA/HOEPA claims were not

timely and thus not viable, the District Court never considered the creation of subclasses. *CBNV II*, 622 F.3d at 290 (noting that the District Court's 2006 Memorandum "concluded that the [proposed TILA/HOEPA] claims were time-barred," and "[a]s a result of these determinations, the Court never considered the creation of a subclass").Once again, the objecting parties, led by Walters Bender, appealed to the Third Circuit. *Id.*

### 3.    *CBNV II* – The Second Third Circuit Opinion

14.    On September 22, 2010, the Third Circuit issued an opinion ("*CBNV II*") vacating the Second Settlement Approval Order and remanding for yet further proceedings. *CBNV II*, 622 F.3d 275, 279, 315 (3d Cir. 2010). The Third Circuit held that the District Court again failed to give proper consideration to whether named plaintiffs and their counsel were adequate to represent the entire proposed class. *Id.* at 303. The Third Circuit also held that the District Court erred by engaging in an analysis under FRCP 12(b)(6) to determine whether a new plaintiff could file an amended pleading asserting TILA/HOEPA claims. *CBNV II*, 622 F.3d at 303. In connection with its ruling regarding the adequacy of representation issue, the Third Circuit focused on "an obvious and fundamental intra-class conflict of interest" between those plaintiffs with untimely claims, who "must rely on equitable tolling to save them," and a "sizeable subgroup of the class . . . with timely claims." *Id.* at 303. The Third Circuit held that the District Court should consider this intra-class conflict on remand and once again suggested that "the most obvious remedy would be to create subclasses." *Id.* at 304. The Third Circuit also directed the District Court to give "more scrutiny" to Carlson Lynch's justification for their decision not to bring TILA/HOEPA claims, noting in particular that the same limitations issues cited by Carlson Lynch as the basis for declining to pursue TILA/HOEPA claims likely apply to the RESPA claims that Carlson Lynch did bring. *Id.* at 305-06. The Third Circuit further held

ny-1066952                                          9

that the District Court had given insufficient consideration to whether class members residing in North Carolina had "uniquely valuable" claims, and directed the District Court to consider subclasses to address this issue as well. *Id.* at 309-11 (concluding North Carolina Objectors' arguments that their claims were "uniquely" valuable "merited more discussion than the Court gave them," and ordering the Court to "consider the North Carolina Objectors' arguments and determine whether the creation of a subclass is necessary to represent their interests adequately"). Accordingly, as with the First Settlement, neither a settlement class nor a litigation class was certified pursuant to Federal Rule 23.

C. **THE CONSOLIDATED AMENDED COMPLAINT**

15. Following the second remand, Carlson Lynch and Walters Bender, proceeding jointly, obtained leave to file a Consolidated Amended Complaint (the "<u>CAC</u>") on behalf of forty-three named plaintiffs, including the majority of the named plaintiffs in the Consolidated Cases and the MDL Cases. *See* Consolidated Amended Complaint, annexed hereto as **Exhibit 16**. This time, the claims were based exclusively on federal law: RESPA, RICO, TILA, and HOEPA. *See id.* Rather than suggesting a subclass for certain state residents who may have had "uniquely valuable" state law claims, Carlson Lynch and Walters Bender omitted the state law claims altogether. *See id.*

16. The District Court granted leave to file the CAC in a Memorandum and Case Management Order dated September 20, 2011, annexed hereto as **Exhibit 17**. Among other things, the court appointed R. Bruce Carlson and R. Frederick Walters as interim co-lead class counsel but stated, "This appointment is, of course, without prejudice to defendants' right to oppose the appointment of Mr. Carlson and Mr. Walters at the class certification stage." *Id.* at page 5.

17. As summarized for the District Court in the Brief of Defendants Residential Funding Company, LLC, PNC Bank, N.A., and Federal Deposit Insurance Corp. as Receiver for Guaranty National Bank of Tallahassee and as Receiver for Irwin Union Bank and Trust Company in Support of Their Motions to Dismiss, annexed hereto as **Exhibit 18**:

(a)     Plaintiffs' RESPA claims in Count I of the CAC, paragraphs 436-447, consist of four general categories of allegations.

- That the loan discount fees were unearned in that no loan discounts were given, allegedly in violation of RESPA Section 8(b), 12 U.S.C. § 2607(b);

- That the title fees appearing in section 1100 of the Plaintiffs' HUD-1 statements were not bona fide and reasonable in that they were either excessive or marked up, that no services were performed or that any fees for post-settlement title document review are illegal, or that title document preparation fees were either illegal or charged for work that was not done, all allegedly in violation of RESPA Sections 8(b) and 10;

- That the origination and loan discount fees appearing in section 800 of the Plaintiffs' HUD-1 statements were kicked back to the Shumway/Bapst Organization in exchange for the referral of the loans to CBNV and GNBT, allegedly in violation of RESPA Section 8(a), 12 U.S.C. § 2607(a);

- That there was an undisclosed affiliated business arrangement between CBNV and the Shumway/Bapst Organization, allegedly in violation of an unspecified RESPA provision.

(b)     Counts II and III of the CAC, paragraphs 448-491, allege five distinct theories of liability under TILA/HOEPA:

- That the disclosed annual percentage rate ("APR") and Finance Charge were understated materially in that title charges were excluded from the finance charges as bona fide and reasonable when, for the reasons stated in the RESPA claims, they were not, allegedly in violation of 15 U.S.C. §§ 1606(c), 1635, 1638 & 1639;

- That CBNV and GNBT failed to provide borrowers the required HOEPA disclosure three business days prior to the loan closings, allegedly in violation of 15 U.S.C. § 1639(b)(1);

- That certain disclosures were not "clear and conspicuous," allegedly in violation of 15 U.S.C. § 1639(a);

- That CBNV and GNBT required borrowers to falsely acknowledge timely receipt of the required HOEPA disclosure, allegedly in violation of an unspecified HOEPA provision;

- That the promissory notes did not disclose one of several circumstances when a prepayment penalty could not be assessed, allegedly in violation of 15 U.S.C. § 1639(c)(2)(B).

(c)  Count IV, CAC paragraphs 492-497, purports to state a stand-alone TILA/HOEPA claim for rescission.

(d)  Count V, CAC paragraphs 498-529, alleges that the conduct described above, effected in part by means of mail and wire fraud, constitutes the conduct of a RICO enterprise through a pattern of racketeering activity, in violation of 15 U.S.C. § 1962(c), and a conspiracy to violate RICO under 15 U.S.C. § 1962(d).

**D.   CURRENT STATUS OF CONSOLIDATED CASES**

18.   On November 8, 2011, RFC, PNC, and the FDIC[8] filed motions to dismiss the CAC. See Brief of Defendants Residential Funding Company, LLC, PNC Bank, N.A., and Federal Deposit Insurance Corp. as Receiver for Guaranty National Bank of Tallahassee and as Receiver for Irwin Union Bank and Trust Company in Support of Their Motions to Dismiss, annexed hereto as **Exhibit 18**. Following commencement of the Debtors' Bankruptcy Case, the District Court took the motions to dismiss under submission. A copy of the Minute Entry for Hearing on Motions to Dismiss/Status Conference is annexed hereto as **Exhibit 19**. No decision has been announced yet. Because the claims against RFC have been stayed, I do not expect the District Court to address grounds for dismissal specific to RFC. A copy of the Order

---

[8]  PNC Bank is the successor-in-interest to CBNV, while GNBT is in receivership under the supervision of the FDIC.

Administratively Closing Case as to defendant Residential Funding Company, LLC only due to pending bankruptcy is annexed hereto as **Exhibit 20**.

19. On October 10, 2012, PNC, the FDIC, and the District Court plaintiffs submitted a Proposed Discovery Schedule, in which plaintiffs identified eleven subjects "on which class discovery may be needed" and proposed that they file their motion for class certification by June 1, 2013. *See* Proposed Discovery Schedule, No. 03-0425 (W.D. Pa.), ECF #589, annexed hereto as **Exhibit 21**.

20. The District Court has not yet entered a scheduling order in connection with the CAC. As of the filing of this bankrupcty, little discovery had taken place, and I am not aware of any significant discovery since then. There has been no subsequent discovery involving any Debtor.

E. **Facts Pertaining to Movants and Other Putative Class Members**

21. The CAC alleges that Rowena Drennen obtained her loan from GNBT on July 28, 2001. *See* Consolidated Amended Complaint ¶ 377, annexed hereto as **Exhibit 16**. Flora Gaskin obtained her loan from CBNV on August 8, 2001. *See id.* ¶ 329, annexed hereto as **Exhibit 16**. Roger and Christie Turner obtained their loan from GNBT on October 10, 2000. *See id.* ¶ 341, annexed hereto as **Exhibit 16**.

22. Rowena Drennen is the sole Movant who was a GNBT borrower whose loan closed less than a year before the filing of the first claims based on GNBT loans. Flora Gaskin is the sole Movant who was a CBNV borrower whose loan closed less than a year before the filing of the first claims based on CBNV loans.

23. Rowena Drennen has twice declared Chapter 7 personal bankruptcy[9] without identifying her claim against RFC as an "asset" in her schedules or receiving an exemption of the asset from being administered in those bankruptcies. Copies of Rowena Drennen's Bankruptcy records, filed in the Bankruptcy Court for the Western District of Missouri, Case Nos. 04-46476 and 05-45391, are annexed hereto as **Exhibits 22 & 23**.

24. Fifteen other CBNV or GNBT borrowers who are plaintiffs in the CAC have filed Chapter 7 personal bankruptcies without identifying a claim against RFC as an asset in their schedules or receiving an exemption of the asset from being administered in those bankruptcies. *See* Brief of Defendants Residential Funding Company, LLC, PNC Bank, N.A., and Federal Deposit Insurance Corp. as Receiver for Guaranty National Bank of Tallahassee in Further Support of Their Motions to Dismiss, annexed hereto as **Exhibit 32**.

25. The CAC states that "[i]n the spring of 2000, EquityPlus, Inc. began to wind down its relationship with CBNV." *See* CAC, ¶ 76, annexed hereto as **Exhibit 16**.

26. In its September 2010 Opinion, the Third Circuit raised questions regarding the adequacy of Bruce Carlson as class counsel, based on his "justifications for the decision not to assert TILA/HOEPA claims on behalf of the class." *CBNV II*, 622 F.3d at 303, 315. Mr. Carlson had made assertions (including ones made under oath) about the viability of class-wide TILA/HOEPA claims, which are now central claims in this putative class action. In both 2003 and 2007, Mr. Carlson submitted affidavits to the District Court calling into question the ability to certify TILA and HOEPA claims on a class-wide basis. *See* November 11, 2003, Declaration of Bruce Carlson, ¶¶ 35-40, annexed hereto as **Exhibit 24**, *and* January 16, 2007, Declaration of Bruce Carlson in Support of Modified and Enhanced Settlement, ¶¶ 18-20,

---

[9] Case Nos.: 04-46476 (Bankr. W.D. Mo.) and Case No.: 05-45391 (Bankr. W.D. Mo.).

annexed hereto as **Exhibit 25** (exhibits to declaration omitted).  Paragraph 35 of the November 2003 Declaration includes the following sentences: "Before filing the first complaint in this litigation, class counsel considered and rejected various federal claims, including the HOEPA disclosure and TILA claims being advocated by the objecting Missouri Law Firm.  In fact, class counsel Bruce Carlson discussed these claims specifically with objecting counsel Mike Vaughan early in this litigation and expressed his view that the HOEPA and TILA claims could not be certified on a class basis.  Class counsel now, more than ever, believe that their initial view regarding the viability of the HOEPA and TILA claims on a class basis was correct."  Paragraph 20 of this Declaration contains the sentence: "As explained previously, class counsel specifically considered the possibility of asserting the posited TILA/HOEPA claims and, in light of their investigation and in light of the obstacles to the claims, including the potential statute of limitations defense, made a strategic decision not to assert the TILA/HOEPA claims in the consolidated case."

27.     With regard to the RESPA claims, the putative class members dealt with several different title companies.[10]  Movants did not cite to any evidence that these fees were standard or uniform.

28.     Based on the November 11, 2003, Declaration of Bruce Carlson, many loan files contain signed acknowledgements of timeliness, but as Movants admit, there are

---

[10] *See* Affidavit of Benjamin Soto of Paramount Title ¶ 6, annexed hereto as **Exhibit 27** and filed with the District Court on January 16, 2007 in connection with the Settling Parties' Brief in Support of Certification of a Settlement Class and Approval of Proposed Modified Settlement ("Brief in Support of Modified Settlement"); Millard Rubenstein of Resource Title ¶ 5, annexed hereto as **Exhibit 28** and filed with the Brief in Support of Modified Settlement; Dennis Hoover of Home Title ¶ 4, annexed hereto as **Exhibit 29** and filed with the Brief in Support of Modified Settlement; Stephen J. Papermaster of First Title & Escrow ¶ 6, annexed hereto as **Exhibit 30** and filed with the Brief in Support of Modified Settlement; Joseph Grinder Aff. ¶¶ 53-57 (explaining that USA Title performed work for its fees, including identifying title problems such as "outstanding judgments against borrowers, additional liens on title or additional owners of the property"), annexed hereto as **Exhibit 31** and filed with the Brief in Support of Modified Settlement.

ny-1066952                            15

somewhat different wordings.  *See* November 11, 2003, Declaration of Bruce Carlson, ¶¶ 36-38 & Ex. B thereto, annexed hereto as **Exhibit 24;** Pl.'s Mem. at 9.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 3, 2012

                                                  /s/ K. Lee Marshall
                                                  K. Lee Marshall