UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: December 20, 2012 at 10:00 a.m.
Objection Deadline: December 7, 2012 at 4:00 p.m.

------------------------------------------------------- x
: 
In re                                                    :            Chapter 11
                                                         :
RESIDENTIAL CAPITAL, LLC,                                :            Case No. 12-12020 (MG)
                                                         :
                                        Debtors.         :            Jointly Administered
                                                         :
------------------------------------------------------- x


**OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE
REGARDING FEE APPLICATIONS FOR FIRST INTERIM
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**


TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:    Brian S. Masumoto
       Michael T. Driscoll
       Trial Attorneys
       33 Whitehall Street, 21st Floor
       New York, New York 10004
       Tel. No. (212) 510-0500
       Fax No. (212) 668-2255

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .......................................................................iii

I.      JURISDICTION, VENUE, AND STATUTORY PREDICATE ......................................3

II.     FACTUAL BACKGROUND...............................................................3
        A.    Filing of Chapter 11 Proceedings ................................................3
        B.    General Status of Cases ..........................................................4
        C.    KEIP/KERP Motion.................................................................5

III.    LEGAL STANDARDS .................................................................6
        A.    Reasonableness ..................................................................6
        B.    Vague Time Entries ...............................................................8
        C.    Overhead and Other Administrative Activities...................................10
        D.    Unadmitted Attorneys ...........................................................12
        E.    Preparation of Fee Applications...............................................13
        F.    "Lumping" or Block Billing.....................................................14
        G.    Actual and Necessary Expenses..................................................15
        H.    Interim Compensation ..........................................................16

IV.     OBJECTIONS.......................................................................17
        A.    Bradley Arant...................................................................17
        B.    Carpenter Lipps.................................................................18
        C.    Centerview......................................................................21
        D.    Curtis Mallet...................................................................22
        E.    Deloitte........................................................................23
        F.    Dorsey .........................................................................24
        G.    Dykema..........................................................................25
        H.    Fortlace .......................................................................26
        I.    FTI……...........................................................................27
        J.    KPMG............................................................................29
        K.    KCC……..........................................................................29
        L.    Locke Lord......................................................................30
        M.    Mercer .........................................................................30
        N.    Morrison Cohen .................................................................31
        O.    Morrison Foerster...............................................................33
        P.    Orrick .........................................................................37
        Q.    Prince Lobel....................................................................39
        R.    Reed Smith......................................................................42
        S.    Rubenstein......................................................................43
        T.    Severson........................................................................46
        U.    Troutman........................................................................46
        V.    AlixPartners....................................................................47

W.    Kramer Levin ......................................................................................................48
X.    Moelis ...............................................................................................................51
Y.    Chadbourne .......................................................................................................52
Z.    Mesirow .............................................................................................................56

V.    CONCLUSION..........................................................................................................59

# TABLE OF AUTHORITIES

**Cases**

In re In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002)................................................16

In re American Preferred Prescription, Inc., 218 B.R. 680 (Bankr. E.D.N.Y. 1998) ...................15

In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) ......................................................11

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007)...............................................................7, 8, 13

In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987)..........................................................16, 17

In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997)................................. *passim*

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988). ........................................................7, 8

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007).............................................................3, 7, 15

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) ....................................................8

In re Castorena, 270 B.R. 504 (Bankr. D. Idaho 2001) ...............................................................11

In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947
       (Bankr. S.D.N.Y. Aug. 24, 2010) ............................................................................ *passim*

In re Cenargo Intern, PLC, 294 B.R. 571 (Bankr. S.D.N.Y. 2005)..............................................33

In re CF & I Fabricators of Utah, Inc., 131 B.R. 474 (Bankr. D. Utah 1991) ........................12, 13

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995) .................................................8, 16

In re Computer Learning Centers, Inc., 285 B.R. 191 (Bankr. E.D. Va. 2002)............................13

In re Dana Corp., 351 B.R. 96 (Bankr. S.D.N.Y. 2006) ................................................................33

In re Dimas, LLC, 357 B.R. 563 (Bankr. N.D. Cal. 2006) ...........................................................11

In re Engel, 124 F.3d 567, 573 (3d Cir. 1997)........................................................................7, 18

In re Fibermark, Inc., 349 B.R. 385 (Bankr. D. Vt. 2006)................................................... *passim*

In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982) .........................................16

In re First Software Corp., 79 B.R. 108 (Bankr. D. Mass. 1987) .................................................11

In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057
        (Bankr. E.D.N.Y. Dec. 11, 2009)......................................................................10

In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007) ........................................9, 10

In re Jefsaba, 172 B.R. 786 (Bankr. E.D. Pa. 1994) ............................................. passim

In re Joseph Charles & Associates, Inc., 295 B.R. 399 (Bankr. S.D. Fla. 2003)...........11

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ........................................7, 8

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005) ............15

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993) ...................................7, 18

In re Market Resources Dev., 320 B.R. 841 (Bankr. E.D. Va. 2004)...........................11

In re Maruko, 160 B.R. 633, 641 (Bankr. S.D. Cal. 1993) ...........................................12

In re Mesa Air Group Inc., 449 B.R. 441 (Bankr. S.D.N.Y. 2011) ..............................13

In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB)
        (Bankr. S.D.N.Y. Jan. 13, 2009)....................................................................15

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008).....................7, 8

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987).......................................15

In re Tan, Lie Hung & Mountain States Investments, LLC, 413 B.R. 851
        (Bankr. D. Or. 2009) ......................................................................................10

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995) ..............................................7

In re Temple Retirement Community, Inc., 97 B.R. 333 (Bankr. W.D. Tex. 1989) ........8

In re Value City Holdings, Inc., 436 B.R. 300 (Bankr. S.D.N.Y. 2010) ....................7, 8

Masino v. Columbus Cost. Corp., No. 08-CV-1592 (RRM)(CLP), 2009 WL 2566956
        (E.D.N.Y. Aug. 19, 2009)..........................................................................11, 12

Matter of Navis Realty, Inc., 126 B.R. 137, 142 (Bankr. E.D. N.Y. 1991)..................54

Ousmane v. City of New York, No. 402648/04, 880 N.Y.S. 2d 874, 2009 WL 722294
        (N.Y. Sup. 2009)............................................................................................12

<u>Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.)</u>, 210 B.R. 19
(2d Cir. B.A.P. 1997) ........................................................................................7

<u>Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.</u>, 50 F.3d 253 (3d Cir. 1995) .........................7, 8

**Statutes & Rules**

11 U.S.C. § 330................................................................................................. *passim*
11 U.S.C. § 331................................................................................................3
28 U.S.C. § 157................................................................................................3
28 U.S.C. § 1334..............................................................................................3
28 U.S.C. § 1408..............................................................................................3

**Other Authorities**

Administrative Order M-389 .............................................................................. *passim*
United States Trustee Guidelines for Reviewing Applications for Compensation and
Reimbursement of Expenses Filed Under 11 U.S.C. § 330.................................................. *passim*

TO:    THE HONORABLE MARTIN GLENN,
       UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

respectfully submits this omnibus objection (the "Objection") to the first interim fee applications

(the "Applications") of the retained professionals (the "Retained Professionals") seeking awards

of interim compensation and reimbursement of out-of-pocket expenses for the periods set forth

below (the "Fee Period"):[1]

| Name | Retained As | Period | Fees | Expenses |
|---|---|---|---|---|
| Bradley Arant Boult Cummings LLP ("Bradley Arant"), ECF Doc. No. 1882. | Debtors' Special Litigation and Compliance Counsel | 5/14/12 to 8/31/12 | $4,207,515.65 | $157,682.41 |
| Carpenter Lipps & Leland LLP ("Carpenter Lipps"), ECF Doc. No. 1889. | Debtors' Special Litigation Counsel | 5/14/12 to 8/31/12 | $955,735.00 | $334,924.08 |
| Centerview Partners LLC ("Centerview"), ECF Doc. No. 1883. | Debtors' Investment Banker | 5/14/12 to 8/31/12 | $900,000 | $18,761.48 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis Mallet"), ECF Doc. No. 1890. | Debtors' Conflicts Counsel | 5/14/12 to 8/31/12 | $496,548.50 | $3,093.40 |
| Deloitte & Touche LLP ("Deloitte"), ECF Doc. No. 1902. | Debtors' Independent Auditor | 5/14/12 to 8/31/12 | $690,583.50 | $0 |
| Dorsey & Whitney LLP ("Dorsey"), ECF Doc. No. 1872. | Debtors' Special Securitization and Investigatory Counsel | 5/14/12 to 8/31/12 | $412,188.83 | $5,105.22 |
| Dykema Gossett PLLC ("Dykema"), ECF Doc. No. 2272. | Debtors' Ordinary Course Professional | 6/1/12 to 8/31/12 | $85,772.60 | $2,192.49 |
| Fortace LLC ("Fortace"), ECF Doc. No. 1863. | Debtors' Consultant | 5/21/12 to 8/31/12 | $337,939.00 | $119,073.93 |
| FTI Consulting, Inc. ("FTI"), ECF Doc. No. 1905. | Debtors' Financial Advisor | 5/14/12 to 8/31/12 | $7,500,000 | $385,757.98 |
| KPMG LLP ("KPMG"), ECF Doc. No. 1891. | Debtors' Tax Compliance Professionals and Information Technology Advisors | 5/14/12 to 8/31/12 | $656,390.00 | $46,449.02 |

---

[1] The United States Trustee has no objection to the following fee applications for this Fee Period: Towers Watson Delaware Inc., LLP, ECF Doc. No. 1858; and Arthur J. Gonzalez, ECF Doc. No. 1900. The United States Trustee reserves the right to raise issues for these professionals at the hearing on the final fee applications.

| | | | | |
|---|---|---|---|---|
| Kurtzman Carson Consultants, LLC ("KCC"), ECF Doc. No. 1859. | Debtors' Administrative Agent | 5/14/12 to 8/31/12 | $94,074.00 | $0 |
| Locke Lord LLP ("Locke Lord"), ECF Doc. No. 1886. | Debtors' Ordinary Course Professional | 5/14/12 to 8/31/12 | $261,177.78 | $2,628.99 |
| Mercer (US) Inc. ("Mercer"), ECF Doc. No. 1888. | Debtors' Compensation Consultant | 5/14/12 to 8/31/12 | $43,618.92 | $6,118.74 |
| Morrison Cohen LLP ("Morrison Cohen"), ECF Doc. No. 1904. | Attorneys for the Independent Directors | 5/14/12 to 8/31/12 | $325,625.50 | $4,248.73 |
| Morrison & Foerster LLP ("Morrison Foerster"), ECF Doc. No. 1885. | Debtors' Bankruptcy Counsel | 5/14/12 to 8/31/12 | $14,667,747.50 | $598,549.72 |
| Orrick, Herrington & Sutcliffe LLP ("Orrick"), ECF Doc. No. 1871. | Debtors' Special Securitization Transactional and Litigation Counsel | 5/14/12 to 8/31/12 | $733,357.07 | $678.12 |
| Prince Lobel Tye LLP ("Prince Lobel"), ECF Doc. No. 2025. | Debtors' Ordinary Course Professional | 5/14/12 to 8/31/12 | $152,107.20 | $12,661.62 |
| Reed Smith LLP ("Reed Smith"), ECF Doc. Nos. 1892 & 1895. | Debtors' Ordinary Course Professional | 7/1/12 to 8/31/12 | $67,224.50 | $81.22 |
| Rubenstein Associates, Inc. ("Rubenstein"), ECF Doc. No. 1794. | Debtors' Communications Consultant | 5/14/12 to 8/31/12 | $25,709.75 | $5,055.83 |
| Severson & Werson, P.C. ("Severson"), ECF Doc. No. 1850. | Debtors' Special California Litigation Counsel | 5/15/12 to 8/31/12 | $1,242,804.45 | $124,486.44 |
| Troutman Sanders, LLP ("Troutman Sanders"), ECF Doc. No. 1894. | Debtors' Ordinary Course Professional | 8/1/12 to 8/31/12 | $125,540.50 | $3,086.97 |
| AlixPartners, LLP ("AlixPartners"), ECF Doc. No. 1884. | Committee's Financial Advisor | 5/21/12 to 8/31/12 | $2,205,724.75 | $34,011.46 |
| Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), ECF Doc. No. 1896. | Committee's Bankruptcy Counsel | 5/16/12 to 8/31/12 | 10,675,061.50 | 305,820.34 |
| Moelis & Company LLC ("Moelis"), ECF Doc. No. 1898. | Committee's Investment Banker | 5/16/12 to 8/31/12 | $1,391,129.03 | $20,194.72 |
| Chadbourne & Parke LLP ("Chadbourne"), ECF Doc. No. 1897. | Examiner's Counsel | 7/11/12 to 8/31/12 | $3,295,849.50 | $127,003.11 |
| Mesirow Financial Consulting, LLC ("Mesirow"), ECF Doc. No. 1906. | Examiner's Financial Advisor | 7/24/12 to 8/31/12 | 3,007,275.00 | $30,048.00 |
| Total | | | $54,318,820.23 | $2,232,859.91 |

The United States Trustee submits this Objection to the Applications in the amounts sought for the reasons set forth below.

## I.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1408.

2.    The statutory predicates are Sections 330 and 331 of title 11, of the United States Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), Administrative Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "UST Guidelines," together with the Local Guidelines and the Amended Guidelines, the "Guidelines").[2]

## II.    FACTUAL BACKGROUND

### A.    <u>Filing of Chapter 11 Proceedings</u>

3.    On May 14, 2012 (the "Petition Date"), Residential Capital, LLC ("ResCap") and certain of its direct and indirect subsidiaries (collectively, the "Debtors") each filed petitions for relief under Chapter 11 of the Bankruptcy Code.  ECF Doc. No. 1.

---

[2] The Bankruptcy Court for this district has adopted the UST Guidelines.  <u>See</u> In re Brous, 370 B.R. 563, 569, n.8. (Bankr. S.D.N.Y. 2007); and Administrative Order M-389, at p. 1.

4.      On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United

States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors'

Committee") in these cases.  ECF Doc. No. 102.

5.      The Debtors currently are operating their business and managing their affairs

pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.      On July 3, 2012, the Court entered an order approving the United States Trustee's

appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner in these cases.  ECF Doc.

No. 674.

**B.      General Status of Cases**

7.      By Order entered July 17, 2012, the Court approved procedures for monthly

compensation and reimbursement of out-of-pocket expenses (the "Monthly Compensation

Order").  ECF Doc. No. 797.  Under the Monthly Compensation Order, the Retained

Professionals may be paid 80% of fees incurred and 100% of expenses on a monthly basis.  Id.

8.      By Order entered on July 17, 2012, the Court approved procedures for the

employment of professionals utilized in the ordinary course (the "Ordinary Course Professional

Order").  ECF Doc. No. 799.  Under the Ordinary Course Professional Order, an ordinary course

professional is not required to file a fee application provided that the professional's

compensation does not exceed $50,000 per month or $500,000 during the pendency of the case.

Id.

9.      On September 11, 2012, the Court entered an order granting an extension of the

Debtors' exclusive period to file a plan to December 20, 2012 and granting an extension of the

period to solicit votes to February 18, 2013.  ECF Doc. No. 1413.  On December 6, 2012, the

Debtors filed a motion to extend the exclusive period to file a plan to February 28, 2013 and extend the period to solicit votes to April 29, 2013.  ECF Doc. No. 2355.

10.     As of the date hereof, the Debtors are current with the filing of their monthly operating reports and the payment of their United States Trustee Quarterly Fees.

**C.     KEIP/KERP Motion**

11.     On July 17, 2012, the Debtors filed a motion requesting authorization of (a) a Key Employee Incentive Program ("KEIP") covering seventeen senior executive insiders of the Debtors and (b) a Key Employee Retention Program ("KERP"), covering 174 purported non-insiders (collectively, the "KEIP/KERP Motion").  ECF Doc. No. 812.

12.     On August 2, 2012, the United States Trustee filed an objection to the KEIP/KERP Motion.  ECF Doc. No. 987.

13.     On August 15, 2012, the Court entered an order approving the KERP.  ECF Doc. No. 1169.

14.     On August 28, 2012, the Court issued the Memorandum Opinion and Order Denying Debtors' Motion for Approval of a Key Employee Incentive Plan (the "Memorandum Opinion").  ECF Doc. No. 1286.  The Court found that the Debtors failed to carry their burden to show that vesting 63% of the KEIP awards merely by remaining until the sales closed is not primarily retentive.  Memorandum Opinion at 24.

15.     On October 9, 2012, the Debtors filed an amended motion requesting the approval of a modified KEIP (the "Amended KEIP Motion").  ECF Doc. No. 1762.

16.     On October 18, 2012, the Court entered an order approving the Amended KEIP Motion.  ECF Doc. No. 1854.

### III.    LEGAL STANDARDS

**A.    <u>Reasonableness</u>**

17.    Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, … an examiner, … or a professional person employed under section 327 or 1103 –

>    (A)    reasonable compensation for actual, necessary services rendered by the trustee, examiner, . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

>    (B)    reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

18.    To determine reasonableness, Section 330(a)(3) instructs that:

the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

a.    the time spent on such services;

b.    the rates charged for such services;

c.    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

d.    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

e.    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

f.    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).[3]  To determine "reasonable compensation," bankruptcy courts in this

district are guided by, among other things, the Guidelines.  See In re Value City Holdings, Inc.,

436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of

the Bankruptcy Code, requests for professional compensation must also conform with the

Bankruptcy Rules, UST Fee Guidelines and the SDNY Guidelines.") (footnotes omitted);  Brous,

370 B.R. at 569, n.8. (adopting the UST Guidelines).

19.    Section 330 requires the applicant to establish both reasonableness and benefit to

the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323

(10th Cir. 1993).  To be compensable, the professional's services must have been necessary and

beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

20.    Each applicant bears the burden of proving the reasonableness of its fees and

expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24

(2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210

(SMB), 2010 WL 3386947, *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines Corp.,

382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205 B.R. 690,

695 (Bankr. S.D.N.Y. 1997).  To satisfy its burden, an applicant must justify its charges with

detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr. E.D.N.Y.

2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

21.    If an applicant fails to sustain its burden on reasonableness, a court may properly

deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir.

---

[3] Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

> An entity seeking interim or final compensation for services, or reimbursement of necessary
> expenses, from the estate shall file with the court an application setting forth a detailed statement
> of (1) the services rendered, the time expended and expenses incurred and (2) the amounts
> requested.

Fed. R. Bankr. P. 2016(a).

1988).  Similarly, a court may reduce a professional's fees or expenses when they are

disproportionate to the benefit to the estate, even if it already has approved the professional's

retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co., 49

F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253,

262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and

inadequately detailed expenses).

22.     The Court has an independent burden to review fee applications "lest

overreaching . . . professionals drain [the estate] of wealth which by right should inure to the

benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg.

Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436

B.R. at 305.  Accordingly, courts serve a vitally important gate-keeping role in enforcing the

Code's requirements that only reasonable fees be approved and paid as well as maintaining

public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc., 97

B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given the

sensitivities they generate and the need to promote public confidence in the system."  In re Child

World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

**B.     Vague Time Entries**

23.     In addition, time entries may not be vague.  The Retained Professionals have the

burden of proving the reasonableness of their fee requests; accordingly, they must provide

specific and detailed time records.  To that end, the UST Guidelines require:

> Time entries for telephone calls, letters, and other communications should give
> sufficient detail to identify the parties to and the nature of the communication.
> Time entries for court hearings and conferences should identify the subject of the
> hearing or conference.

See UST Guidelines, (b)(4)(v).

8

24.     In order to enable the Court to determine whether a professional's time spent on a task is reasonable, time entries must be specific and the records must clearly identify each discrete task billed.  Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also Bennett Funding, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services.").  Such vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work extremely difficult, if not impossible." In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

25.     Instead of embarking in a treasure hunt to determine what services were performed on a specific date, the time entries submitted should allow the Court and a reviewer to determine "the legal issues involved, the difficulties of the issues, and the resolution or results obtained." Id.  References to telephone calls that do not make clear who the call was with or the subject matter discussed, preparation of memoranda of law that do not indicate the legal issues involved, email communications without a description of the substance of the communications and the recipients of such communications, and the review of documents without providing a description of the document reviewed are all examples of vague time entries that make a fair evaluation of the work done and its reasonableness impossible.  See id.; CCT, 2010 WL 3386947, *7 (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97 (Bankr. D. Vt.

9

2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec.

11, 2009) ("Entries that contain such vague characterization of the services performed as

'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to'

fail to adequately describe the services provided and are routinely disallowed.").

## C.    <u>Overhead and Other Administrative Activities</u>

26.    When determining whether requested fees are reasonable, courts consider, among

other things, the professional's expertise or skills.  See, e.g., Fibermark, 349 B.R. at 396–97

("The Court specifically considers where the task at hand could have been performed

competently by a less experienced professional at a lower cost to the estate.  Whether it is

reasonable for a certain professional to complete a task is to be determined by the level and skill

reasonably required for the task.").

27.    Accordingly, many courts have taken the position that tasks that are clerical in

nature and that are appropriate for office staff, which is considered part of a professional's

overhead, may not be billed to the estate.  Id. (concluding that non-compensable administrative

activities include tasks such as "mailing or delivering papers; photocopying; word processing,

including but not limited to creating templates, adding pages to various stipulations, formatting,

creating spreadsheets, scanning and saving files into the firm's computer system, creating and

revising charts, inserting case numbers into orders and printing documents; organizing files;

maintaining an internal calendar; checking for docket updates; updating a master service list;

creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney;

and making travel arrangements"); see also In re Tan, Lie Hung & Mountain States Investments,

LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in

compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at

paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing

of various motions and other documents); Hudson, 364 B.R. at 881 (holding that photocopying,

organizing documents, and assembling exhibits constituted clerical tasks included in the firm's

overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services

performed by professionals which were clerical in nature, such as indexing, organizing and

copying documents, conducting PACER searches to locate an order or other pleading, uploading

pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846

(Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents,

printing, and copying were non-compensable overhead); In re Joseph Charles & Associates, Inc.,

295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing

of an objection fell within the purview of clerical duties which were non-compensable); In re

Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter,

may not charge professional rates for clerical functions").

      28.    Word processing is also "a clerical service regardless of who performs it."

Bennett Funding, 213 B.R. at 428; UST Guidelines, 4(b)(5)(vii).  As an overhead expense, word

processing cannot be billed to the client.   Moreover, time spent by a firm's library staff is

considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting

that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate);

In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the

compensation for research performed by a librarian).  A court should therefore deny fees

associated with clerical tasks.

**D.**     <u>**Unadmitted Attorneys**</u>

29.     To the extent that a firm uses the services of a law school graduate who has not

yet been admitted to practice law in any jurisdiction during a fee period in question, then such

attorney's compensation rates should be reduced to be consistent with those of the firm's non-

attorney employees.  <u>See</u> <u>Ousmane v. City of New York</u>, No. 402648/04, 880 N.Y.S. 2d 874,

2009 WL 722294, at *11 (N.Y. Sup. 2009) (concluding that an attorney's hourly rate prior to

admission to the bar cannot be the same as a fully admitted counsel and noting that while it was

clear that even before the bar admission the attorney at issue possessed skills and experience far

exceeding that of a typical law school graduate, "[n]evertheless, the fact remains that the

[attorney]'s work done prior to his admission simply cannot be compensated at the same rate as

that of a fully admitted attorney.  The integrity of our system of legal representation requires that

this be the case."); <u>see</u> <u>also</u> <u>Masino v. Columbus Cost. Corp.</u>, No. 08-CV-1592 (RRM) (CLP),

2009 WL 2566956, at *8 (E.D.N.Y. Aug. 19, 2009) (holding, in a non-bankruptcy matter, that

$175 per hour is a reasonable rate for an associate admitted to practice in the same year as the

case commenced); <u>In re Maruko</u>, 160 B.R. 633, 641 (Bankr. S.D. Cal. 1993) (reducing by one-

half the fees of an attorney who was admitted to the bar half way through the fee period because

significant time was spent on routine matters and education of the attorney).

30.     Law firm partners should exercise billing judgment with respect to personnel not

yet admitted to the bar, so that the estate does not bear the cost of educating new lawyers with

little experience.  Moreover, the Bankruptcy Code is clear that one of the factors to be taken into

account when determining the "reasonableness" of the compensation to be awarded is "with

respect to a professional person, whether the person is board certified or otherwise has

demonstrated skill and experience in the bankruptcy field."  11 U.S.C. § 330(a)(3)(E).  To charge

a professional who is not yet admitted to the bar the same rate as an admitted attorney provides

an implication that the attorney is board certified and authorized to practice law in the

jurisdiction – when, in reality, that is not the case.

## E.    Preparation of Fee Applications

31.    While the United States Trustee acknowledges the allowance of a reasonable

amount of time for fee application preparation under the Bankruptcy Code, the fees related to

such task should be limited to the preparation of the actual fee application, and should not

encompass the review and correction of bills and response to the Fee Committee or other parties

in interest to inquiries or objections raised with respect to the fee applications.  Said differently,

the Bankruptcy Code does not give professionals carte blanche to charge debtors' estates for

unreasonable fees to prepare fee applications.  As a court in In re Computer Learning Centers,

Inc., held:

> [T]his does not mean that every aspect of preparing a fee application is
> compensable.  In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88
> (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each
> aspect for purposes of compensation under 11 U.S.C. §330.  It holds that those
> portions of the billing process common to billing both bankruptcy clients and non-
> bankruptcy clients are not compensable under §330 because they are part of the
> professional's overhead.   They are not separately charged to non-bankruptcy
> clients and no additional effort is required to complete them for a bankruptcy
> client.  For example, maintaining time records does not require additional effort.
> Lawyers and accountants maintain the same time records in a non-bankruptcy
> matter as in bankruptcy matters.   Nor do lawyers or accountants charge for
> preparing their bills.  Bills must be prepared in non-bankruptcy matters as well as
> bankruptcy matters.   There may be some additional effort in putting the time
> records into the format required by the court.  For example, the court requires
> time records to be maintained chronologically by task.  While this may sometimes
> differ from the format of a non-bankruptcy bill, the additional effort is not
> generally significant if the records are initially properly set-up.  Time records are
> almost universally maintained on computers with software that shows multiple
> formats, one of which will usually satisfy the bankruptcy requirements.   "A
> computer billing package used by a professional that does not retrieve information
> in a format compatible with bankruptcy requirements and requires revisions to
> rectify the inadequacies, is not a deficiency the estate should pay for. This is

13

especially true for professionals who regularly practice in this court and regularly
prepare fee applications.    Only those aspects of preparing a bankruptcy fee
application that require additional-not merely different-efforts are compensable
under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group

Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9)

("'[T]he review and editing of time records – as opposed to fee applications – is not

compensable.'").  Accordingly, billing a debtor's estate for time spent reviewing the firm's time

entries to ensure compliance with the guidelines imposed by case law, the Court, and the United

States Trustee as well as handling administrative matters in connection with billing for the

engagement should not be compensable.

**F.    "Lumping" or Block Billing**

      32.    According to the UST Guidelines, billing records must clearly identify each

discrete task billed, indicate the date the task was performed, the precise amount of time spent

(not to be billed in increments greater than one-tenth of an hour), who performed the task, the

level of experience, and that person's hourly rate.  See UST Guidelines at (b)(4)(v).  Moreover,

the UST Guidelines provide that "[s]ervices should be noted in detail and not combined or

'lumped' together, with each service showing a separate time entry."  Id.  The UST Guidelines

only permit "lumping" where the aggregate time does not exceed a half-hour.  Id.

      33.    Recording multiple tasks as one billing entry, typically referred to as "block

billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine

the reasonableness of the time spent on each of the individual tasks performed.  See Baker, 374

B.R. at 494 (citations omitted) ("A professional is required to bill each task separately.  That

way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted

to inflate the actual time spent and group multiple tasks together hoping to camouflage the true

length of an individual task.").  As a result of "lumping" time, the "timekeeper fails to sustain

[his] burden of providing that [his] fees are reasonable."  <u>Brous</u>, 370 B.R. at 576.  Consequently,

courts summarily will disallow time for discrete legal services merged together in a fee

application.  <u>See</u>, <u>e.g.</u>, <u>Baker</u>, 374 B.R. at 496 (deducting 20% from the requested fees for

improper block billing); <u>see also</u>, <u>In re M. Fabrikant & Sons, Inc.</u>, Case No. 06-12737 (SMB)

(Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for

Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes

for each "lumped" entry, irrespective of the aggregate time billed for that entry); <u>CCT</u>, 2010 WL

3386947at *7 (allowing only 30 minutes of time for lumped entries).

**G.    <u>Actual and Necessary Expenses</u>**

34.    Under Section 330(a)(1)(B), only documented expenses that are actual and

necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough

specificity for the Court to establish whether a given expense was both actual and necessary."  <u>In</u>

<u>re Korea Chosun Daily Times, Inc.</u>, 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting <u>In re</u>

<u>S.T.N. Enters., Inc.</u>, 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are

incurred and not based on a formula or <u>pro</u> <u>rata</u> calculation.  <u>Bennett Funding</u>, 213 B.R. at 398.

Expenses are "necessary" if they were "reasonably needed to accomplish proper representation

of the client."  <u>In re American Preferred Prescription, Inc.</u>, 218 B.R. 680, 686–87 (Bankr.

E.D.N.Y. 1998).

35.    With respect to photocopying charges, the Amended Guidelines, however,

provide as follows: "Photocopying shall be reimbursable <u>at the lesser</u> of $.20 or cost." Amended

Guidelines at p.3, F.2 (emphasis added).  Since <u>In re Enron</u>, Case No. 01-16034 (AJG), the

standard rate for photocopies has been $.10 per page.  This standard has been adopted in large

Chapter 11 cases in the Southern District of New York, including in In re Delphi, Case No. 05-44481 (RDD), In re Worldcom, Case No. 02-13533 (AJG), and In re Adelphia, Case No. 02-41729 (REG), in which all professionals, including many of those who are involved in these Cases, have adhered to the $.10 limit.

**H.    Interim Compensation**

36.    Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court. In re Barron, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987). Therefore, the Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications. Id.

37.    In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court." Id. Because the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion. Id. Furthermore, courts have discretion to defer ruling on any or all of the Applications, until the time for final applications is proper. In re ACT Mfg., Inc., 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

38.    Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation. See Bennett Funding, 213 B.R. at 244. At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award." Child World, 185 B.R. at 17. Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation." Id. Thus, the statute "authorizes the award of interim compensation, but does not mandate it." In re First Hartford Corp., 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); see also Barron, 73 B.R. at 814 (noting that

Congressional intent underlying Section 331 "was only to give officers of the estate an opportunity to apply for reimbursement.") (emphasis in original).

### IV.    OBJECTIONS

#### A.    **Bradley Arant**

Bradley Arant seeks an allowance of fees aggregating $4,207,515.65 and reimbursement of expenses aggregating $157,682.41 for the Fee Period.  The United States Trustee objects to the allowance of $121,489 in fees for the reasons set forth below.

#### (i)    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $22,656 for the 46 Bradley Arant timekeepers that billed less than five hours during this Fee Period.  The transitory nature of these services raises the question of what value, if any, these individuals provided to the estate.  See In re Jefsaba, 172 B.R. 786, 806 (Bankr. E.D. Pa. 1994) (holding that a estate bears the cost of a professional's learning curve, unless the applicant explains the value conferred by transitory timekeepers, their fees should be disallowed).  Absent satisfactory explanation, the United States Trustee requests that the Court reduce the request by $22,656 related to services rendered by transitory timekeepers.

**Services related to Retention and Fee Application**

Bradley Arant seeks compensation for services under the project category "Fee/Employment Applications" in the amount of $113,834.70.  Of that amount, services incurred through August 12, 2012 totaling $96,260.80 appear to be related to Bradley Arant's efforts to be employed in the Bankruptcy case.  The balance of the fees totaling $17,573.90 is related to services in preparing the fee application.

17

The United States Trustee requests that Bradley Arant's allowed fees not exceed $15,000 in connection with their efforts to be retained.  See Engel, 124 F.3d at 573 (stating that the professional's services must have been necessary and beneficial to the estate or its creditors); Lederman Enter., 997 F.2d at 1323 (requiring applicant to establish both reasonableness and benefit to the estate from the professional's services).  A time entry containing the description "[r]eview May 2012 bills for purposes of preparig [sic] iterim [sic] fee application" as well as other similar time entries suggests that a portion of the $17,573.90 in fees requested contain time entries that are attributable to impermissible review and editing of time entries.  Unless satisfactory details regarding the time entries are provided, the full amount of fees totaling $17,573.90 should be disallowed.  For these reasons, the United States Trustee requests a reduction of approximately $98,833.

## B.    **Carpenter Lipps**

Carpenter Lipps seeks an allowance of fees aggregating $955,735 and reimbursement of expenses aggregating $334,924.08 for the Fee Period.  The United States Trustee objects to the allowance of $8,499 in fees and reimbursement of $221,262.29 in expenses for the reasons set forth below.

### (i)    **Fees**

### **Fees of Associate Not Yet Admitted to Practice**

The United States Trustee objects to the charges to the estate for the work for an associate whose admission to a state bar is pending.  Specifically, Carpenter Lipps seeks to charge the estate $6,304 for 39.40 hours of services provided by associate Mallory M. Mohler.  For the reasons set forth above, the estate should not bear the cost of paying the rate of an attorney when the individual is not in fact an attorney.  The United States Trustee requests that the court reduce

18

the hourly billing rate for this associate to the highest rate charged by Carpenter Lipps paraprofessionals, which is $75 per hour.  Such a reduction would result in a reduction of charges in the amount of $3,349.

### Transitory Timekeepers

The United States Trustee's review of the time records indicates that one attorney that billed less than five hours during this Fee Period.  As noted above, timekeepers who work on large matters for only a few hours are often referred to as "transitory timekeepers."  See In re Jefsaba, 172 B.R. at 806.  Thus, absent satisfactory explanation, the United States Trustee requests that the Court reduce any compensation allowed to Carpenter Lipps in the amount of $435, which is the amount of fees generated by the transitory timekeeper.

### Review of Billing Invoices/Billing Matters

Carpenter Lipps seeks compensation of $15,756 under the project category "Administrative."  Of this amount, the United States Trustee objects to $4,715 because the time records indicate that such work was expended relating to revising the billing records for the June and July Monthly Fee Statements.  Specifically, Carpenter Lipps personnel charged the estate $2,668 for reviewing Fee statements in July and $2,047 for reviewing Fee Statements in August. As discussed above, these services are overheard and thus are not compensable by the estate. See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable). Therefore, the United States Trustee requests that the Court reduce Carpenter Lipps' compensation in this project category by $4,715.

(ii)    **Expenses**

**Hotel Bellman**

Carpenter Lipps seeks reimbursement of $46 for expenses incurred relating to service

provided by hotel bellmen.  In the absence of further justification, the United States Trustee

requests that the Court reduce the reimbursement for this expense by $46.

**Outside Legal Service Providers**

Carpenter Lipps seeks reimbursement of $204,706.52 for Lumen Legal Service, $2,160

for Litigation Support Services, and $307 for Lazare Potter & Giacovas during this Fee Period.

Although Carpenter Lipps's fee application provided disbursement amounts and dates, the

United States Trustee notes that the Carpenter Lipps did not provide the underlying invoices for

these charges.  As a result, the United States Trustee cannot determine whether the underlying

expenses comply with the Guidelines.  Therefore, the United States Trustee requests that the

Court not award the above expenses aggregating $207,173.52 unless and until Carpenter Lipps

provides the additional documentation to support this reimbursement request.

**Out of Town Meals**

Carpenter Lipps seeks reimbursement of $2,021.97 for out of town meals incurred by

employees in connection with this case.  The United States Trustee objects to the reimbursement

of $910, which represents the aggregate amount that the meals exceed the $20 per person limit

on meal reimbursements.  By way of example only, Carpenter Lipps requests reimbursement of

$74.24 for a meal that occurred on May 18, 2012; however, the billing records do not provide the

number of attendees for the meal.   Therefore, the United States Trustee requests that the Court

reduce the meal reimbursement by $910.

20

**Air Transportation**

Carpenter Lipps seeks reimbursement of $16,273.95 for expenses related to airfare.  The

United States Trustee objects to the reimbursement of $13,132.77 because, based on the billing

records provided by Carpenter Lipps, it is unclear whether the air transportation was coach or

first-class travel.  The specific flights and charges at issue are:  May 14, 2012 ($1,027.60); May

22, 2012 ($1,126.25); May 22, 2012 ($1,152.22); June 6, 2012 ($1,027.60); June 26, 2012

($1,674); June 26, 2012 ($962); June 28, 2012 ($1,035.70); July 5, 2012 ($1,012.30); July 10,

2012 ($1,052.60); July 10, 2012 ($977.30); July 13, 2012 ($1,047.60); and August 21, 2012

($1,037.60).  Accordingly, the United States Trustee requests that the Court deny the

reimbursement of $13,132.77 unless and until Carpenter Lipps provides an adequate

documentation that satisfies this concern.

**C.**    **Centerview**

Centerview seeks an allowance of fees in the total amount of $900,000 and

reimbursement of out-of-pocket expenses in the total amount of $18,761.48 during the Fee

Period.  The United States Trustee objects to the allowance of expenses in the amount of

$18,761.48 for the reasons set forth below.

**(i)**    **Expenses**

Centerview requests a reimbursement of $18,761.48 for expenses incurred during the Fee

Period.  The United State Trustee objects to the entire amount of expenses for which

reimbursement is sought because Centerview did not provide sufficient supporting

documentation evidencing expenses incurred.  The only support provided is a basic chart

depicting expenses in the following categories: Transportation, Meals, Conference Calls,

FedEx/Shipping, and Other Expenses.  <u>See</u> UST Guidelines (b)(5).  Accordingly, until the

underlying documentation is provided, the Court should deny the request for expense reimbursement.

**D.**    **Curtis Mallet**

Curtis Mallet seeks an allowance of fees aggregating $496,548.50 and reimbursement of expenses aggregating $3,093.40 for the Fee Period.  The United States Trustee objects to the allowance of $36,686 in fees for the reasons set forth below.

**(i)**    **Fees**

**Transitory Timekeepers**

A review of Curtis Mallet's time records indicates that two attorneys, Daniel Lenhihan and Andrew Zinman, billed less than five hours during this Fee Period.  Absent satisfactory explanation, the United States Trustee requests that the Court reduce any compensation allowed to Curtis Mallet in the amount of $1,885, which is the amount of fees generated by the two transitory timekeepers.

**Multiple Attendees at Court Hearings**

Curtis Mallet seeks compensation of $56,035 for services rendered under the project category "Hearings and Court Matters (Matter #350)."  A review of the billing records related to this project category reveals that multiple attorneys attended several court hearings.  By way of example only, on June 18, 2012, four Curtis Mallet attorneys attended a court hearing, which resulted in a $27,306 charge to the estate.  Similarly, on July 24, 2012, the attendance by two Curtis Mallet attorneys at a court hearing resulted in a $9,894 charge to the estate.  Further, on August 14, 2012 and August 16, 2012, two attorneys charged the estate a combined amount of $6,282.5 for attendance at court hearings.  The United States Trustee objects to the amount of $33,014, which represents the amount where more than one attorney attended a hearing without

22

an explanation for the necessity of more than one attorney at the hearing.  Accordingly, absent an adequate explanation, the United States Trustee requests that the Court reduce the request for compensation under this project category by $33,014.

**Review of Billing Invoices/Billing Matters**

Curtis Mallet seeks to bill the estate the sum of $55,292.50 under the project category "Retention/Billing/Fee Applications."  Of this amount, the United States Trustee objects to $1,718 because the time records indicate that the services rendered relate to revising the billing records for the June and July Monthly Fee Statements.  These services are overheard and thus are not compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  Therefore, the United States Trustee requests that the Court reduce Curtis Mallet's compensation in this project category by $1,718.

**E.     Deloitte**

Deloitte seeks an allowance of fees aggregating $690,583.50 for the Fee Period.  The United States Trustee objects to the allowance of $5,323 in fees for the reasons set forth below.

**(i)     Fees**

**Transitory Timekeeper**

The United States Trustee has identified time entries by nine timekeepers that billed less than five hours during the Fee Period.  Specifically, nine professionals with the business titles "Partner," "Director," "Senior Manager," and "Manager" that billed less than five hours during this Fee Period.[4]  Absent a satisfactory explanation, the United States Trustee requests that the Court reduce Deloitte's compensation by $5,323, which is the amount of fees generated by the nine transitory timekeepers.

---

[4] The individuals at issue are: L. Ellerbrock, S. Freshour, S. Herrygers, A. Sasso, L. Smith, J. Earl Alaba, M. Anderson, E. Quinn, and J. Krebsbach.

F.     **Dorsey**

Dorsey seeks an allowance of fees aggregating $412,188.83 and reimbursement of expenses aggregating $5,105.22 for the Fee Period.  The United States Trustee objects to the allowance of $6,514 in fees and reimbursement of $3,982 in expenses for the reasons set forth below.

(i)     **Fees**

**Transitory Timekeeper**

The United States Trustee has identified time entries by seven timekeepers that billed less than five hours during the Fee Period.  Specifically, these individuals billed less than five hours.[5] Absent a satisfactory explanation, the United States Trustee requests that the Court reduce any compensation allowed to Dorsey in the amount of $6,514, which is the amount of fees generated by the seven transitory timekeepers.

(ii)    **Expenses**

**Transportation**

Dorsey included two travel expenses in the Dorsey Fee Application ($2,491.44 for B. Smith and $1,491.46 for J. Langdon).  Dorsey has informed the United States Trustee that it billed the J. Langdon expense in error.  Further, the United States Trustee objects to the request of B. Smith because it is not evident whether the airline travel was coach class travel.  The United States Trustee requests that the Court deny the amount requested for B. Smith unless and until Dorsey provides an adequate documentation that satisfies this concern.

---

[5] The individuals at issue are: K. Constantine, C. Sawyer, K. Jorgensen, M. Grant, R. Mallard, H. McCann, and E. Detlefsen.

24

G.    **Dykema**

Dykema seeks an allowance of fees aggregating $85,772.60 and reimbursement of

expenses aggregating $2,192.49 for the Fee Period.  The United States Trustee objects to the

allowance of $17,981 in fees and reimbursement of $153.62 in expenses for the reasons set forth

below.

(i)    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the charges of $6,923.45 because twelve Dykema

attorneys billed less than five hours during the Fee Period.  Absent a satisfactory explanation, the

United States Trustee requests that the Court reduce any compensation allowed to Dykema in the

amount of $6,923.45.

**Vagueness and Lumping**

Dykema's application includes many vague and lumped time entries.  Annexed hereto as

Exhibit A, is a copy of Dykema's time records marked with the letter "V" or "L" to highlight the

non-compliant, vague or lumped time entries.  The objectionable time entries add up to

approximately $36,861.35.  As a result of the identified vague and lumped time entries, the

United States Trustee proposes that the Court reduce Dykema's fees for those services by

approximately $11,058, which represents the fees related to 30% of the aggregate vague and

lumped time entries.

(ii)    **Expenses**

**Pre-Petition Expenses**

A review of the expense records reveals that Dykema seeks reimbursement of $153.62 in

expenses incurred pre-petition.  Annexed hereto as Exhibit A is a copy of the relevant expense

25

records.  As the expenses were not incurred during this period, the United States Trustee requests

that the Court reduce the expense reimbursement by $153.62.

**H.**    **Fortace**

Fortace seeks an allowance of fees aggregating $337,939 and reimbursement of expenses

aggregating $119,073.93 for the Fee Period.  The United States Trustee objects to the allowance

of $54,840 in fees and reimbursement of $117,818.36 in expenses for the reasons set forth

below.

**(i)**    **Fees**

**Vague Time Entries**

Fortace's application includes various impermissible vague time entries.  Annexed hereto

as Exhibit B, is a copy of Fortace's time records marked with the annotations "V" to highlight

the non-compliant, vague time entries.  By way of example only, one Managing Partner of

Fortace incurred $31,876.5 for 80.7 hours of billing between June 1 to 11, 2012 that only

includes the following entry per day:  "Drafting 9019 Expert Declaration."  In another example,

a different Managing Partner charged the estate $32,429.50 for 82.1 hours of billing between

June 1 to June 11 that contains the following substantially duplicate entry: "Reviewing and

validating Debtor & Intex and Modeling Loss and Audit assumptions."   In total, the United

States Trustee has identified $182,801 in vague, non-compliant entries.  As a result of the vague

time entries, the United States Trustee proposes that the Court reduce the fee for those services

by approximately $54,840, which represents the fees related to 30% of the aggregate vague time

entries.

**(ii)**     **Expenses**

**Transportation**

Fortace seeks reimbursement of a total of $2,418.36 for airline travel expenses incurred

by a Managing Partner on May 22, 2012. The United States Trustee objects to this request

because it is not evident whether the airline travel was coach class travel. The United States

Trustee requests that the Court deny the amount requested unless and until Fortace provides an

adequate documentation that satisfies this concern.

**WestPAT LLC Expense**

Fortace seeks reimbursement of $115,400 for expenses incurred by Fortace in employing

WestPAT LLC ("WestPAT"). In support of these expenditures, Fortace attaches two invoices

from WestPAT. A July 5, 2012 invoice indicates that WestPAT was due $100,000 for providing

"[l]oss projection, analysis, and consultation for RESCAP Trusts." A September 26, 2012

invoice, covering the period of August 1 – 31, 2012, indicates that WestPAT was due $15,400

for 77 hours at $200 per hour for services rendered relating to "[h]istorical data summary and

analysis for RESCAP RMBS deals." The United States Trustee objects to the above amounts

because Fortace has not provided adequate information that justifies a reimbursement for

WestPAT expenses.

**I.**     **FTI**

FTI seeks an allowance of fees aggregating $7,500,000 and reimbursement of expenses

aggregating $385,757.98 for the Fee Period. The United States Trustee objects to the allowance

of $220,245.50 in fees and reimbursement of $24,423.64 in expenses for the reasons set forth

below.

**(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $12,596.50 for the eleven FTI timekeepers that billed less than five hours during this Fee Period.  The transitory nature of these services raises the question of what value, if any, these individuals provided to the estate.  See Jefsaba, 172 B.R. at 806.  Thus, absent satisfactory explanation, the United States Trustee requests that the Court reduce the request by $12,596.50.

**Fees Related to KEIP/KERP**

FTI seeks $236,903 for services related under the project category "KEIP/KERP."  The United States Trustee objects 25% of this amount, or approximately $59,225, for the reasons discussed infra under the section for Morrison Foerster.  See infra Section III.O(i).

**Review and Editing of Time Entries and Educational Efforts**

FTI seeks compensation of $148,424 under the project category "Task Code 24 - Fee Application Process."  The United States Trustee objects to the entire amount because the time records indicate that such work was expended relating to either (i) educational expenses that should be included as overhead or (ii) revisions to the time entries for the current interim billing period.  As discussed above, the review and editing of time entries are overheard and thus are not compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  Therefore, the United States Trustee requests that the Court reduce FTI compensation in this project category by $148,424.

**Non-Working Travel**

FTI voluntarily reduced its request for fees for non-working travel time in the amount of $198,130.50.  The United States Trustee has no further reductions with respect to this category.

### (ii)    **Expenses**

### **Out of Town Meals**

FTI seeks $24,423.64 for "Business Meals" wherein FTI limited its overtime meals to $20.00 per person and $40.00 per meal for out of town meals.  The United States Trustee objects to the reimbursement of expenses that exceed the $20 per person limit on meal reimbursements.

### J.    **KPMG**

KPMG seeks an allowance of fees aggregating $656,390 and reimbursement of expenses aggregating $46,449.02 for the Fee Period.  The United States Trustee objects to the reimbursement of $2,051 in expenses for the reasons set forth below.

### (i)    **Expenses**

### **Meals**

KPMG seeks reimbursement of $2,051.00 incurred by KPMG employees for out of town dinners.  Pursuant to the Amended Guidelines, meal charges are reimbursable up to a maximum of $20 per person if they are overtime meals after 8:00 p.m., provided that, if the professional dines before 8:00 p.m., the expense is reimbursable only if the professional returns to the office to work at least one and one half hours.  Amended Guidelines, E(5).  Here, while the meal totals are within the $20 per person limit, the reimbursement of these meals is objectionable because KPMG does not indicate whether the meal expenses were incurred after 8:00 p.m. and whether the employees returned to the office for at least one and one half hours.

### K.    **KCC**

KCC seeks an allowance of $94,074 in fees during the Fee Period.  The United States Trustee objects to the allowance of $2,518 in fees for the reasons set forth below.

(i)    **Fees**

**Transitory Timekeepers**

The United States Trustee has identified time entries by six timekeepers that billed less than five hours during the Fee Period.  Specifically, of the eleven individuals that KCC assigned to these cases, six billed less than five hours.[6]  Thus, absent satisfactory explanation, the United States Trustee requests that the Court reduce any compensation allowed to KCC in the amount of $2,518, which is the amount of fees generated by the six transitory timekeepers.

**L.    Locke Lord**

Locke Lord seeks an allowance of fees aggregating $261,177.80 and reimbursement of expenses aggregating $2,628.99 for the Fee Period.  The United States Trustee objects to the allowance of $8,216 in fees for the reasons set forth below.

(i)    **Fees**

**Transitory Timekeeper**

The United States Trustee objects to the fees aggregating to $8,216.3 by fourteen attorneys because these individuals billed less than five hours during this Fee Period.[7]  The transitory nature of these services raises the question of what value, if any, this individual provided to the estate.  Thus, absent satisfactory explanation, the United States Trustee requests that the Court reduce the request by $8,216.3.

**M.    Mercer**

Mercer seeks an allowance of fees in the total amount of $43,618.92 and reimbursement of out-of-pocket expenses in the total amount of $6,118.74 during the Fee Period.  The United States Trustee objects to the allowance of $295 in fees for the reasons set forth below.

---

[6] The individuals at issue are G. Hopenstand, A. Salas, H. Soto, A. Kass, C. Schepper, and E. Gershbein.
[7] The attorneys at issue at J. Brissette, S. Chambers, T. Connop, M. H. Davis, M. Eggerding, D. B. Foster, J. N. Froelich, K. H. Harris, A. M. Knuckey, M. Lafontaine, S. Mimms, P. R. Perdew, K. Weiner, and T. Yoxall.

**(i)**    **Fees**

**Transitory Timekeeper**

The United States Trustee objects to the fees of $295.80 for .75 hours of billing by

timekeeper K. Moriarty because this individual billed less than five hours during this Fee

Period.  The transitory nature of these services raises the question of what value, if any, this

individual provided to the estate.  Thus, absent satisfactory explanation, the United States

Trustee requests that the Court reduce the request by $295.80.

**N.**    **Morrison Cohen**

Morrison Cohen seeks an allowance of fees in the total amount of $325,625.50 and

reimbursement of out-of-pocket expenses in the total amount of $4,248.73 during the Fee

Period.  The United States Trustee objects to the allowance of $14,693 in fees and expenses in

the amount of $1,999.7 for the reasons set forth below.

**(i)**    **Fees**

**Transitory Timekeeper**

The United States Trustee objects to the fees of $1,521 for 2.60 hours of billing by a

Morrison Cohen partner because this individual billed less than five hours.  Thus, absent

satisfactory explanation, the United States Trustee requests that the Court reduce the request by

$1,521.

**Multiple Attendees at Court Hearings**

The United States Trustee objects to billings of $15,204.5, which represents the amount

where more than one attorney attended a hearing in the case.  For example, three attorneys

attended the first day hearings held on May 14 – 15, 2012.  For these hearing, Morrison Cohen

billed the estate $10,181.5.  In another example, on June 18, 2012, one Morrison Cohen attorney

31

attended a court hearing in person while two attorneys listened by telephone. This instance

resulted in billing the estate $8,123.5. Further, on July 24, 2012, two attorneys attended a

hearing in person and billed the estate $2,847. Finally, on August 8, 2012, two attorneys

attended a hearing that resulting in an additional $3,263. The combined amount of attendance at

the above hearings resulted in charging the estates $26,345. The United States Trustee requests

that the Court reduce the fees by half, or by approximately $13,172.

### (ii)    **Expenses**

**Transportation**

Morrison Cohen seeks reimbursement of $1,277.21 for transportation costs. Of this

amount, the United States Trustee objects to $1,059.82. First, Morrison Cohen seeks

reimbursement totaling $150.36 for car services of two independent directors on May 14 and

May 24. As these independent directors are not employees of Morrison Cohen, these expenses

are inappropriate for reimbursement.

In addition, the United States Trustee objects to reimbursement for various car services

and taxis to and from local meetings and court hearings totaling approximately $909.46. As

public transportation is available as an alternative to these expenses, the Court should deny this

request for reimbursement.

**Meals**

Morrison Cohen seeks reimbursement for $939.88 associated with its representation the

Independent Directors in these cases. The United States Trustee objects to the entire amount

because the meals violate the strictures of the Guidelines. Specifically, Morrison Cohen seeks

reimbursement of $120.29 for a lunch on February 21, 2012 and $40.00 for refreshments on May

13, 2012. As these meals expenses were incurred pre-petition, these meals are not

reimbursable.   Further, the United States Trustee objects to meals expenses that occurred on

May 14 and 15 because these meals exceed the $20 per person limit on meal reimbursement.

**O.**     **Morrison Foerster**

Morrison Foerster seeks an allowance of fees aggregating $14,667,747.50 and

reimbursement of expenses aggregating $598,549.72 for the Fee Period.  The United States

Trustee objects to the allowance of $570,254 in fees and reimbursement of $54,734.90 in

expenses for the reasons set forth below.

**(i)**     **Fees**

**Fees Related to KEIP/KERP**

The United States Trustee objects to reimbursement of fees that Morrison Foerster, as

counsel to the Debtors, and FTI, as the financial advisor to the Debtors, seek related to the

Debtors' unsuccessful prosecution of the KEIP portion of the KEIP/KERP Motion.  Morrison

Foerster seeks $1,234,156 for services related to the KEIP/KERP under the project category

"Employee Matters" (Task Code 024).  As discussed supra at Section (I)(i), FTI seeks

compensation of $236,903.00 under the project category "KEIP/KERP."  On August 28, 2012,

the Court rendered its Memorandum Opinion denying without prejudice the KEIP.  ECF Doc.

No. 1286.

The United States Trustee objects to a portion of the fees associated with the KEIP/KERP

because such fees are excessive.  The aggregate fees for both Morrison Foerster and FTI for the

KEIP/KERP services are $1,471,059 for the period ending August 31, 2012.  For Morrison

Foerster, the KEIP/KERP services represent the third largest project category during this interim

period, exceeded only by the project categories for "Discovery or Rule 2004 Requests"

($1,714,765) and "First Day Hearings" ($1,299,207).  See Morrison Foerster Fee Application at

Exhibit B, ECF Doc. No. 1885.

Although a debtor's professionals may be entitled to compensation under appropriate

circumstances for unsuccessfully litigating a matter, in this case, the KEIP/KERP Motion fell so

far short of the standards for approval that the services associated with it did not provide, and

could not have provided, a benefit to the estate.  Fee applications are judged on whether the

professional's actions taken were reasonable at the time taken.  See In re Kohl, 421 B.R. 115,

127 (Bankr. S.D.N.Y. 2009); In re Cenargo Intern, PLC, 294 B.R. 571, 595 (Bankr. S.D.N.Y.

2005).  In the instant case, the Court found that the Debtors failed to carry their burden to show

that vesting 63% of the KEIP awards merely by remaining until the sales closed is not primarily

retentive.  Memorandum Opinion at 24.  The Court also held that the KEIP bore a striking

similarity to the plan proposed and rejected in In re Dana Corp., 351 B.R. 96 (Bankr. S.D.N.Y.

2006).  Memorandum Opinion at 25.  Accordingly, not only are the amounts sought in

connection with the KEIP excessive, but the services associated with the KEIP were not

reasonable at the time they were taken.

For these reasons, the fees sought in connection with the KEIP (as opposed the fees

attributable to the approved KERP and the non-retentive portion of the KEIP) should be reduced

by 25%, or by approximately $308,539.  Fibermark, 349 B.R. at 395 (in order to be compensated

from a debtor's estate, a professional must demonstrate that the fees sought are for services that

were a benefit to the estate).

### Lumped Time Entries

Morrison Foerster's application includes various "lumped" time entries.  Annexed hereto

as Exhibit C, is a copy of Morrison Foester's time records marked with the annotations "L" to

highlight the non-compliant, vague time entries.   The lumped time entries identified in Exhibit C

total $47,907.  As a result of the Lumped time entries, the United States Trustee proposes that the

Court reduce the fee for those services by approximately $14,372, which represents the fees

related to 30% of the aggregate lumped time entries.

### Vague Time Entries

Morrison Foerster's application includes various impermissible vague time entries.

Annexed hereto as Exhibit C, is a copy of Morrison Foester's time records marked with the

annotations "V" to highlight the non-compliant, vague time entries.  The vague time entries

identified in Exhibit C total $214,986.  As a result of the vague time entries, the United States

Trustee proposes that the Court reduce the fee for those services by approximately $64,495,

which represents the fees related to 30% of the aggregate vague time entries.

### Mis-Matched and Non-Matched Entries

Morrison Foerster's application includes various time entries describing meeting and

telephone calls with various parties in interest.  The time entries do not always identify the actual

individual or individuals involved in the meetings or calls.  Certain time entries will only refer to

the company or firm involved without identifying the specific individual.  Time entries by

timekeepers participating in the same meeting or call that do not match either in describing the

participants and/or the amount of time (where the discrepancy is more than .1 hours) have been

identified with the annotation "MM" (matching time entries were only sought within a single

project category).  A time entry by a timekeeper involving a meeting or call that included

multiple timekeepers from Morrison Foerster that was not accompanied by matching time entry

(within the same project category) by the other participant have been annotated with

"NM."  Annexed hereto as Exhibit C, is a copy of Morrison Foester's time records marked with

the annotations "MM" and "NM" totaling $23,264 and $24,676, respectively.  As a result of the

mis-matched and non-matched time entries, the United States Trustee proposes that the Court

reduce the fee for those services by approximately $10,883, which represents the fees related to

15% of the mis-matched time entries and 30% of non-matched time entries.

### Multiple Attendees at Court Hearings

Morrison Foerster seeks an amount in compensation of $506,538.00 for services rendered

under the project category "Hearings."  The United States Trustee objects to approximately

$189,321.50, which represents 50% of the time incurred by multiple attendees attending various

hearings.  By way of example only, on May 31, 2012, five attorneys from Morrison Foerster

attended a court hearing in person.  In another example, twelve attorneys (seven partners and five

associates) attended by telephone or in person the court hearing held on June 18, 2012.  As a

result, while the number of multiple attendees at different hearings varied according to the

hearing, the United States believes that a request that the Court reduce the request for

compensation by the multiple attendees at the various hearings by $186,321.50, representing

50% of the amount requested, is appropriate.

### Retention of Professionals

Morrison Foerster seeks compensation of $417,387.50 under the project categories of

"Fee/Employment Applications" and $97,980 for "Fee/Employment Objections."  It appears that

this requested amount is excessive in light of the numbers of professionals employed by the

estate and the amount of the overall request.  Accordingly, the United States Trustee requests

that the Court reduce the compensation under this project category by 15%, or by approximately

$77,305.

**Transitory Timekeepers, Reviewing Time Entries and Non-Work Travel**

Morrison Foerster voluntarily reduced its fees for Transitory Timekeepers ($106,511.50), time spent reviewing time entries ($35,266.50) and non-working travel ($52,528.00). The United States Trustee does not object to any further time entries in those categories.

**(ii)    Expenses**

**Business Meals**

The United States Trustee requests additional substantiation regarding the expense for "Business Meals" totaling $19,236.29, including, the individual authorizing the expense, the date the expense was incurred and the identity of the of the participants in the business meal.

**Photocopies**

Morrison Foerster must identify the actual cost per page incurred by the firm for "Photocopies" totaling $25,446.61 and "Color Copies" totaling $10,052, unless the copies did not exceed $.10 per page and $.20 per page, respectively. Absent further supporting documentation justifying these expenses, the United States Trustee requests that the Court deny this request for reimbursement.

**P.    Orrick**

Orrick seeks an allowance of fees in the total amount of $733,357.07 and reimbursement of out-of-pocket expenses in the total amount of $678.12 during the Fee Period. The United States Trustee objects to the allowance of $55,690 in fees and expenses in the amount of $116.42 for the reasons set forth below.

**(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $16,299.93 for the eleven Orrick

attorneys[8] that billed less than five hours during this Fee Period.  The transitory nature of these

services raises the question of what value, if any, these individuals provided to the estate.  See

Jefsaba, 172 B.R. at 806.  Thus, absent satisfactory explanation, the United States Trustee

requests that the Court reduce the request by $1,521.00.

**Pre-Petition Matters**

Orrick seeks compensation for $1,215 for matters billed pre-petition on May 11, 2012

under the project categories "142 – General Bankruptcy Administration" and "144 –

Compensation."  The United States Trustee objects to this entire amount because such

compensation is not covered during this Fee Period.

**Retention Matters**

Orrick seeks an allowance of $99,421 for matters billed under the billing category

"Retention (Matter 143)."  The United States Trustee objects to this amount because this project

category represents approximately 13.5% of the overall application.  The United States Trustee

acknowledges that Orrick reduced its fees under this project category by $33,629.85 (see Orrick

Application n.2); however, the resulting fees appear to be excessive in light of the overall size of

the fee request.  Accordingly, the United States Trustee requests that the Court reduce Orrick's

compensation under this billing category by half, or approximately $49,710.

---

[8] The Orrick attorneys are E. D. Echtman, S. J. Jackson, N. Mathews, J. A. Meyers, L. P. Sanzari, T. J. Walsh, S. Willis, K. Bartlett, J. Drury-Smith, J. Duff, and K. F. Moskowitz.

38

### Compensation Matters

Orrick seeks an allowance of $33,812 for matters billed under the billing category "144 – Compensation." The United States Trustee objects to the payment of $3,244 in charges incurred between May 11 through May 15, 2012 because such billings involved researching the Guidelines and summarizing such information into a memorandum (see Orrick Application at 34). While the United States Trustee acknowledges that Orrick voluntarily reduced its billings under this project category by $8,606.5 (see Orrick Application n.3), the Debtors' estates should not be required to compensate Orrick for information on the Guidelines that is typically used by law firms in bankruptcy cases.

**(ii)    Expenses**

### Taxi Transportation

Orrick seeks reimbursement of $116.42 for taxi transportation expenses incurred during the Fee Period. Of this amount, the United States Trustee objects to the entire amount because Orrick has not provided additional information on whether the taxi expenses comply with the Guidelines.

**Q.    Prince Lobel**

Prince Lobel seeks an allowance of fees aggregating $152,107.20 and reimbursement of expenses aggregating $12,661.62 for the Fee Period. The United States Trustee objects to the allowance of $8,362 in fees and reimbursement of $2,990.65 in expenses for the reasons set forth below.

(i)    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the compensation for the services for two attorneys,

Joseph Steinfield and William Worth, because these individuals billed less than five hours during

the Fee Period.  Absent a satisfactory explanation, the United States Trustee requests that the

Court reduce any compensation allowed to Prince Lobel in the amount of $545, which is the

amount of fees generated by the two transitory timekeepers.

**Law Clerk Charges**

The United States Trustee objects to the charges of $2,198 for the services of two law

clerks at the hourly billing rate of $140 per hour.  An applicant may not seek compensation under

Section 330 for services performed by the work of a firm's "summer associates and law clerks,"

because the work performed by them is part of a firm's overhead.  See In re New Boston Coke

Corp., 299 B.R. 432, 442 (Bankr. E.D. Mich. 2003) (denying compensation for all attorney and

para-professional time for the work of summer associates and law clerks); cf. Wise v. Kelly, No.

05 Civ. 5442 (SAS) (THK), 2008 WL 482399, at *11 (S.D.N.Y.  Feb. 21, 2008) (holding, in a

non-bankruptcy case, that the billing rate for summer associates should be reduced from $150

per hour to $125 per hour).  Accordingly, the United States Trustee requests that the Court

reduce Prince Lobel's compensation by $2,198.

**Vagueness and Lumping**

Prince Lobel's time records contain several instances of vague or lumped time entries.

Annexed hereto as Exhibit D, is a copy of Prince Lobel's time records marked with the letter "V"

or "L" to highlight the non-compliant, vague or lumped time entries.  The objectionable time

entries aggregate to approximately $18,731.5.  As a result of the vagueness and lumping of the

40

identified time entries, the United States Trustee proposes that the Court reduce the fees for those

services by approximately $5,619, which represents the fees related to 30% of the aggregate

vague and lumped time entries.

(ii)   **Expenses**

**Local Counsel**

Prince Lobel seeks a $2,229.65 reimbursement associated with expenses relating to

"Local Counsel."  The United States Trustee objects to this amount because it is not evident,

based on a review of the time records, the value that the services rendered by the outsourced law

firms.  The United States Trustee requests that the Court disallow the reimbursement of these

expenses unless and until Prince Lobel provides an adequate explanation of the services provided

by these law firms.

**Bar Fund/Admissions to Federal Jurisdictions**

Prince Lobel requests reimbursement of approximately $761 in expenses related to the

admission of Prince Lobel attorneys into federal court bar admissions.  For example, Prince

Lobel seeks $150 for expenses related to an undisclosed "Bar Fund."  In another example, under

the matter "Beaudoin, Marc," Prince Lobel seeks reimbursement of $241 in expenses related to

admission of a Prince Lobel attorney to the United States Court of Appeals for the First Circuit

on July 2 and 5, 2012.  Further, the United States Trustee notes that Prince Lobel expense

records show that Prince Lobel paid for pro hac vice admission for the same attorney on the

same date in at least four different matters.  Specifically, on July 16, 2012, Prince Lobel charged

$50 for pro hac vice admission for attorney Richard Briansky in each of the following matters:

"Fonseca 60 Calder," "Barionnette," "Fitzpatrick," and "Gammino."  Finally, in another

example, in June 13, 2012, Prince Lobel paid $110 in expenses related to another instance of pro

41

hac vice admission  for an undisclosed attorney in the "Fricke" matter.  The estate should not

bear the cost of these expenses because the attorneys assigned to represent this estate should be

fully admitted to practice in the jurisdictions where they may represent the estate.   Absent an

adequate explanation explaining a justification for these expenses, the United States Trustee

requests the Court reduce the expense reimbursement by approximately $761.

**R.**     **Reed Smith**

Reed Smith seeks an allowance of fees aggregating $67,224.50 and reimbursement of

expenses aggregating $81.22 for the Fee Period.  The United States Trustee objects to the

allowance of $7,204 in fees for the reasons set forth below.

**(i)**     **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $3,346 by three Reed Smith attorneys, J.

McIntyre, K. Gwynne, and D. Bird, because these individuals billed less than five hours during

this Fee Period.  The transitory nature of these services raises the question of what value, if any,

this individual provided to the estate.  See Jefsaba, 172 B.R. at 806.  Thus, absent satisfactory

explanation, the United States Trustee requests that the Court reduce the request by $3,346.

**Duplicate Entries**

A review of Reed Smith's time records indicates that Reed Smith may have billed the

estate for duplicate time entries under separate project categories.  For example, as shown by

Exhibit E attached hereto, Reed Smith's time entries for August 2, 2012 shows that Reed Smith

associate M. T. Guerin billed the estate under four separate project categories with the following

duplicate time entry: "Attend to numerous federal and state case management issues, including

ongoing internal communications with J. Martin, B. Axe, D. Bettino, and H. Reichner regarding

42

motions, strategy and case management."  In total, M. T. Guerin billed the estate $2,518.50 for

7.3 hours in these duplicate entries.  Accordingly, the United States Trustee objects to the

allowance of $2,518.50 unless and until Reed Smith provides additional documentation to justify

these duplicate time entries.

### Vague Time Entries

The United States Trustee objects to the $1,339.50 in compensation because Reed Smith

time records show instances where professionals billed time entries that were vague.  For

example, by of example only, as depicted on Exhibit E attached hereto, Reed Smith time records

between July 3 to July 31, 2012, indicate that an attorney billed the $4,465 for 9.40 hours to

"Review recent court filings" and "Review recent Ninth Circuit filings."  In the absence of an

adequate explanation of these time entries through the filing of a supplemental declaration, the

United States Trustee requests that the Court reduce Reed Smith's request by 30%, or by

approximately $1,339.50.

## S.    Rubenstein

Rubenstein seeks an allowance of fees aggregating $25,709.75 and reimbursement of

expenses aggregating $5,055.83 for the Fee Period.  The United States Trustee objects to the

allowance of $5,625 in fees and reimbursement of $2,310.45 in expenses for the reasons set forth

below.

### (i)    Fees

### Vague Entries/Duplication

In addition to the above concern, the United States Trustee objects to the $5,625 in

compensation for Rubenstein.  Rubenstein time records show two instances where professionals

billed time entries that were vague and/or duplicative.  For instance, on May 14, 2012, "A.

Stockholm" billed 8.5 hours at an hourly rate of $375 for "corresponded with Morrison &

Foerster/ResCap," which totals $3,187.50 in requested compensation.  Similarly, on the same

date, "T. Kresler" billed 6.5 hours at an hourly rate of $375, totaling $2,437.50, for

"Corresponded with Morrison & Foerster/ResCap."  In the absence of an adequate explanation of

these time entries through the filing of a supplemental declaration, the United States Trustee

requests that the Court deny Rubenstein's request in the amount of $5,625.

    **(ii)**    <u>**Expenses**</u>

<u>**Transportation**</u>

Rubenstein requests reimbursement of $724.60 for air transportation and $322.26 for

ground transportation.  Of these amounts, the United States Trustee objects to $362.30 of the air

transportation expenses and $122.18 in ground transportation expenses.  With respect to air

transportation, the United States Trustee objects to half of the requested amount, or $362.30,

because the request includes reimbursement for a round trip flight with one flight that occurred

on May 11, 2012, which was three days prior to the bankruptcy filing.

With respect to the ground transportation, the United States Trustee objects to

reimbursement of $99.38 because such expenses were incurred pre-petition on May 11–13, 2012.

In addition, the United States Trustee objects to the reimbursement of $22.80 for the following

charge, "Taxi – Office to Court hearing."   As public transportation is available, Rubenstein

should not be compensated for this amount.  Therefore, the United States Trustee objects to

$484.48 in transportation expenses incurred by Rubenstein.

<u>**Lodging**</u>

Rubenstein requests $1,644.17 for lodging expenses incurred at two hotels from May 11

to May 16, 2012.  The United States Trustee objects to these expenses for two reasons.  First, to

the extent that these fees occurred pre-petition, the fees should not be compensable.  The daily

rate of the hotel rooms is not disclosed so the United States Trustee cannot determine the

appropriate reimbursable cost for the post-petition hotel expenses.

Second, the United States Trustee notes that Rubenstein seeks reimbursement for paying

for two hotels for "A. Stockholm" on a single evening in two locations.  For example,

Rubenstein paid for a hotel room for A. Stockholm at the Parc Central New York Hotel from

May 11 to May 16, 2012, which cost $1,526.45.  Rubenstein paid for another hotel room for A.

Stockholm during one night of this period, on May 13 to 14, 2012, which cost $117.72.

Therefore, the United States Trustee requests that the Court deny the amount requested unless

and until Rubenstein provides an adequate explanation regarding the United States Trustee's

concerns.

### **Meals**

Rubenstein seeks reimbursement for meals totaling $181.80.   As a preliminary matter,

the United States Trustee objects to the reimbursement of $113.94 in meal expenses because

such expenses were incurred in the two days prior to the bankruptcy case.   In addition, the

United States Trustee objects to reimbursement of $27.86 for daytime meals because Rubenstein

must submit proof that the daytime meals expenses were incurred during a necessary meeting on

the case.  See Administrative Order M-389(E)(6) ("Daytime meals are not reimbursable unless

the individual is participating, during the meal, in a necessary meeting respecting the case.").

Further, the United States Trustee objects to the reimbursement of $40 for dinner meals because

it is unclear whether these expenses were incurred after 8:00 p.m. and that the professional

returned to the office for at leat one and one half hours.  Id. at (E)(5) ("The reasonable expenses

of a professional required to work on the case after 8:00 p.m. are reimbursable provided that, if

the professional dines before 8:00 p.m., the expense is reimbursable only if the professional

returns to the office to work for at least one and one half hours.").

**T.**    **Severson**

Severson seeks an allowance of fees aggregating $1,242,804.45 and reimbursement of

expenses aggregating $124,486.44 for the Fee Period.  The United States Trustee objects to the

allowance of $4,290.75 in fees for the reason set forth below.

**(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $4,290.75 for the 14 Severson & Werson

timekeepers that billed less than five hours during this Fee Period.  The transitory nature of these

services raises the question of what value, if any, these individuals provided to the estate.  See

Jefsaba, 172 B.R. at 806.  Thus, absent satisfactory explanation, the United States Trustee

requests that the Court reduce the request by $4,290.75.

**U.**    **Troutman**

Troutman seeks an allowance of fees in the total amount of $344,050.24 and

reimbursement of out-of-pocket expenses in the total amount of $6,801.79 during the Fee

Period.  The United States Trustee objects to the allowance of $2,590.55 in fees for the reasons

set forth below.

**(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $1,937.55 for the three Troutman

attorneys, B. B. Ruhling, M. I. Schlesinger, and M. Y. Jones, that billed less than five hours

during this Fee Period.  The transitory nature of these services raises the question of what value,

46

if any, these individuals provided to the estate.  See Jefsaba, 172 B.R. at 806.  Thus, absent

satisfactory explanation, the United States Trustee requests that the Court reduce the request by

$1,937.55.

### Pre-Petition Matters

Troutman seeks compensation for $653 for matters billed pre-petition between May 10

through 11, 2012 under the various project category task codes.  The United States Trustee

objects to this entire amount because such compensation is not covered during this Fee Period.

## V.    AlixPartners

AlixPartners seeks an allowance of fees in the total amount of $2,205,724.75 and

reimbursement of out-of-pocket expenses in the total amount of $34,011.46 during the Fee

Period.  The United States Trustee objects to the allowance of $102,514 in fees and expenses in

the amount of $317.99 for the reasons set forth below.

### (i)    Fees

### Multiple Attendees at Meetings

AlixPartners requests compensation of $168,617 for 249.1 hours under the billing

category "UCC Meetings."  The billing records associated with this project category indicates

that four or more AlixPartners personnel the same meetings.  It is unclear based on the United

States Trustee's analysis of these billing records the value provided by the multiple attendees at

these meetings.  Accordingly, the United States Trustee requests that the Court reduce

AlixPartner's request under this project category by half, or approximately $84,308.

### Preparation and Review of Billing Invoices/Billing Matters

AlixPartners seeks to bill the estate the sum of $48,229.5 for 75.3 hours of work in the

project category "Billing and Retention."  Of this amount, the United States Trustee objects to

$18,206 because the time records show that such work was expended relating to revising billing statements and reviewing time entries.  Annexed hereto as Exhibit F is a copy of AlixPartners time records containing the notation "fee review" adjacent to time entries that the objected to time entries.  As discussed above in previous sections to this Objection, reviewing time records is overhead and thus is not compensable.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  Therefore, the United States Trustee requests that the court reduce AlixPartners' compensation by $18,206 under this project category.

**(ii)    Expenses**

**Out of Town Meals**

AlixPartners seeks reimbursement of $1,808.36 for meals incurred by employees in connection with this case.  The United States Trustee objects to the reimbursement of $317.99, which represents the aggregate amount that the meals exceed the $20 per person limit on meal reimbursements.  Therefore, the United States Trustee requests that the Court reduce the meal reimbursement by $317.99.

**W.    Kramer Levin**

Kramer Levin seeks an allowance of fees aggregating $10,675,061.50 and reimbursement of expenses aggregating $305,820.34 for the Fee Period.  The United States Trustee objects to the allowance of $377,601 in fees and reimbursement of $50,460.30 in expenses for the reasons set forth below.

48

**(i)**     **Fees**

**Transitory Timekeepers**

A review of Kramer Levin's time records indicates that four attorneys billed less than five hours during this Fee Period.[9]   Timekeepers who work on large matters for only a few hours are often referred to as "transitory timekeepers."   See In re Jefsaba, 172 B.R. 786, 806 (Bankr. E.D. Pa. 1994) (to avoid having the estates bear the cost of a firm's professional's learning curve, unless the applicant explains the value conferred by transitory timekeepers, their fees should be disallowed).   Absent satisfactory explanation, the United States Trustee requests that the Court reduce Kramer Levin's compensation $6,041, which is the amount of fees generated by the four transitory timekeepers.

**Preparation and Review of Billing Invoices/Billing Matters**

Kramer Levin seeks to bill the estate the sum of $125,757 for 334.5 hours of work in the project category "Fee Statements/Applications."   Of this amount, the United States Trustee objects to $70,313 because the time records show that Kramer Levin personnel expended these hours relating to revising billing statements and reviewing time entries.   Annexed hereto as Exhibit G is a copy of Kramer Levin's time records containing the notation "R" adjacent to time entries that the objected to time entries.   As discussed above in previous sections to this Objection, these services are part of Kramer Levin's overhead and thus is not compensable.   See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).   Accordingly, the United States Trustee requests that Kramer Levin's compensation by $70,313 under this project category.

**Vague Time Entries**

---

[9] The attorneys are A. L. Dienstag, T. Helwick, D. H. Michaelson, and J. R. Tomitz.

Kramer Levin's time entries include various impermissible vague time entries.  Annexed

hereto as Exhibit G, is a copy of time records marked with the annotations "V" to highlight the

non-compliant, vague time entries, which total $22,210.  Accordingly, the United States Trustee

proposes that the Court reduce the fee for those services by approximately $6,663, which

represents the fees related to 30% of the aggregate vague time entries.

### Multiple Attendees at Committee Meetings

Kramer Levin seeks $602,626.50 in compensation for services rendered under the project

category "Committee Meetings/Compensation."  The United States Trustee's review of the

billing records related to these project categories reveal that multiple attorneys attended various

Committee meetings and court hearings.  By way of example only, five attorneys attended a

Committee meeting on May 17, 2012 that resulted in a charge to the estate $5,322.  In another

example, on May 21, 2012, seven attorneys attended a Committee meeting and financial advisor

interviews that resulted in a $16,548 charge to the estate.  Taking into consideration that the

present project category includes attendance at meetings where the multiple attendee issue is not

implicated, the United States Trustee believes that a reduction of $140,656, which represents

25% of the billing under this project category, is an appropriate adjustment.   Accordingly, the

United States Trustee requests that the Court reduce the request for compensation under this

project category by approximately $150,656.

### Multiple Attendees at Court Hearings

Kramer Levin seeks an amount in compensation of $364,931.50 for services rendered

under the project category "Court Hearings."  The United States Trustee objects to

approximately $91,232, which represents 25% of the billing under this project category, because

it appears that multiple attorneys attended these hearings.  By way of example only, on May 31,

2012, six Kramer Levin attended a court hearing in person or by telephone that resulted in a

charge to the estate of $6,738.  In another example, on June 18, 2012, fifteen attorneys attended

by telephone or in person the court hearing that resulted in a charge to the estate of $55,365.50.

Taking into consideration that the present project category includes attendance at meetings where

the multiple attendee issue is not implicated, the United States Trustee believes that an objection

to $91,232, which represents 25% of the billing under this project category, is an appropriate

adjustment.

### Retention of Professionals

Kramer Levin seeks compensation of $351,312 under the project category of "Retention

of Professionals."  It appears that this requested amount is excessive in light of the number of

professionals employed by the estate and the amount of the overall request.  Accordingly, the

United States Trustee requests that the Court reduce the compensation under this project

category by 15%, or by approximately $52,696.

**(ii)**    **Expenses**

### Meeting Expenses

Kramer Levin seeks reimbursement of $19,995.50 for expenses related to "Meetings."

For example, the billing records indicate that Kramer Levin incurred the following costs for

these meetings:  May - $3,740.57; June - $7,247.91; July - $5,665.28; and August - $3,341.74.

The billing records, however, do not provide information that explains the basis for these

expenses.  Accordingly, unless and until Kramer Levin provides additional supporting

documentation relating to these meeting expenses, the United States Trustee requests that the

Court deny the expense request in the amount of $19,995.50.

**Filing Fee Expesnes**

Kramer Levin seeks reimbursement of $30,464.8 for expenses related to "Corp. Svc.

Filing Fees."  For example, Kramer Levin incurred the following expense for the filing fees:

May – $2,154.68; June – $28,125.04; July – $47.04; and August – $138.04.  Kramer Levin did

not provide additional information that explains the purpose of these expenses.  Therefore, in the

absence of supporting documentation, the United States Trustee requests that the Court deny the

expense reimbursement $30,464.80 .

**X.    Moelis**

Moelis seeks an allowance of fees aggregating $1,391,129.03 and reimbursement of

expenses aggregating $20,194.72 for the Fee Period.  The United States Trustee objects to the

reimbursement of $3,901.33 in expenses for the reasons set forth below.[10]

**(i)    Expenses**

**Cell Phone Charges**

Moelis seeks reimbursement of $1,294.05 for cell phone charges incurred by Moelis

employees.  The United States Trustee objects to this entire amount because it is unclear whether

this reimbursement is permitted.  Specifically, Administrative Order M-389 states, "[c]ellular

telephone charges shall be reimbursable if reasonably incurred and if the calls cannot be timely

made from a conventional telephone. Routine use of cellular telephones is not acceptable."

Accordingly, unless and until Moelis demonstrates that such charges where in compliance with

Administrative Order M-389, the United States Trustee requests that the Court reduce the

expense reimbursement by $1,294.05.

---

[10] On November 8, 2012, a representative of the United States Trustee requested a calculation of Moelis' fee request.
On November 26, 2012, Moelis filed a supplemental application that provided additional information on the fee
request.  ECF Doc. No. 2271. As a result, the United States Trustee has no objection to the fee allowance of
$1,391,129.03.

**Staff Meals**

Moelis seeks reimbursement of $581.68 for meals incurred by Moelis staff in connection

with this case.  A review of these expense records shows that Moelis did not provide the names

of the Moelis employees that received the meals.  Specifically, the staff meals in question are as

follows: $124.11 on May 22, 2012; $91.10 on June 11, 2012; $206.20 on June 18, 2012; and

$160.27 on June 19, 2012.  As it is unclear whether these meals comply with the limit of $20 per

person, the United States Trustee objects to this entire reimbursement request.  Accordingly,

absent additional information regarding whether the limits and restrictions set forth in the

Guidelines were satisfied, the United States Trustee requests that the Court disallow the expense

reimbursement by $581.68.

**Taxi/Courier Delivery**

Moelis seeks reimbursement of $2,025.15 for "Courier – Document Delivery" under

Moelis' taxi expenses.  The United States Trustee objects to a reimbursement of this amount

because it is unclear, based on the expense records, whether these expenses were for a third-party

courier service or whether Moelis employee's used taxis to deliver documents.  To the extent that

these expenses were not third-party courier services, the United States Trustee objects because

such expenditures are not reasonable under the circumstances.  Accordingly, without additional

information supporting this reimbursement request, the United States Trustee requests that the

Court reduce the request by $2,025.15.

Y.    **Chadbourne**

Chadbourne seeks an allowance of fees aggregating $3,295,849.50 and reimbursement of

expenses aggregating $127,003.11 for the Fee Period.  The United States Trustee objects to the

allowance of $74,052 in fees and reimbursement of $93,880.77 in expenses for the reasons set forth below.

**(i)**    **Fees**

**Transitory Timekeepers**

Chadbourne's time records indicate that two attorneys, J. Stenger and C. Miller, billed less than five hours during this Fee Period.  See Jefsaba, 172 B.R. at 806.  Absent satisfactory explanation, the United States Trustee requests that the Court reduce Chadbourne's compensation by $3,170 which is the amount of fees generated by the two attorneys.

**Librarian**

Chadbourne seeks to charge the estate for fees incurred by three librarians during the Fee Period in the aggregate amount of $3,652.  Time spent by a firm's library staff is generally viewed as part of the firm's overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate); In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the compensation for research performed by a librarian).  Accordingly, the United States Trustee seeks a reduction in fees to be awarded by $3,652.

**Vague Time Entries**

Chadbourne's time entries include various impermissible vague time entries under the project categories "Case Administration/General Bankruptcy Matters" and "Document Review and Analysis."  Annexed hereto as Exhibit H, is a copy of time records marked with the annotations "V" to highlight the non-compliant, vague time entries, which total $192,839. Accordingly, the United States Trustee proposes that the Court reduce the fee for those services

by approximately $57,851, which represents the fees related to 30% of the aggregate vague time entries.

### Staffing Inefficiencies

A review of the project category "Case Administration/General Bankruptcy Matters" reflects that a total of $7,918.5 in fees incurred by a Chadbourne attorney that could have been performed by a paraprofessional.  Annexed hereto as Exhibit H, is a copy of Chadbourne's time records marked with the annotations "S" to the time entries that are objectionable.  This attorney billed the estate $595 per hour for approximately 13.3 hours of work related to reviewing and updating a case calendars and similar administrative tasks.

Absent explanation regarding why Chadbourne could not utilize paraprofessionals to perform these tasks, the attorney's hourly rate for these tasks should be reduced to the rate of the highest paraprofessional, which is $330 per hour.  See, e.g., Fibermark, 349 B.R. at 410 (fees disallowed where applicant failed to demonstrate why lower billing associates did not perform service); Matter of Navis Realty, Inc., 126 B.R. 137, 142 (Bankr. E.D. N.Y. 1991) (noting that senior partner rates will be paid only for work that warrants the attention of a senior partner). Accordingly, the United States Trustee requests that the Court reduce the fee award for Chadbourne by approximately $3,529.

### Preparation and Review of Billing Invoices/Billing Matters

Chadbourne seeks to bill the estate the sum of $169,431.5 under the project category "Fee/Retention Applications."  Of this amount, the United States Trustee objects to $5,852 because the time records indicate that Chadbourne personnel expended these hours relating to revising/revising billing statements and reviewing internal billing procedures and the Guidelines. Annexed hereto as Exhibit H is a copy of Chadbourne's time records containing the notation "R"

adjacent to time entries that the objected to time entries.  As discussed above in previous sections

to this Objection, these services are part of Kramer Levin's overhead and thus are not

compensable.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not

compensable).  Accordingly, the United States Trustee requests that the Court reduce

Chadbourne's compensation by approximately $5,852.

### (iii)    **Expenses**

### **Paralegal Overtime**

Chadbourne seeks reimbursement of $1,901.88 for expenses related to "[p]aralegal

overtime."  The United States Trustee objects to this entire amount because such overtime is not

permitted without additional justification according to Administrative Order M-389, which states

in pertinent part, "No overtime expense for non-professional and paraprofessional staff shall be

reimbursable unless fully explained and justified.   Any such justification must indicate, at a

minimum, that (i) services after normal closing hours are absolutely necessary for the case and

(ii) that charges are for overtime expenses paid." Administrative Order M-389 at E.5.  Absent

additional justification, the United States Trustee requests the Court to reduce the expense

reimbursement by $1,901.88.

### **Business Meals/Catering**

Chadbourne seeks reimbursement of $1,436.57 for expenses related to "Business

Meals/Catering."  The United States Trustee objects to this entire amount because Chadbourne

has not provided the number of attendees at the meals so ensure that the meals comply with the

limit of $20 per person.  Accordingly, absent additional information regarding whether the limits

and restrictions set forth in the Amended Guidelines were satisfied, the United States Trustee

requests that the Court disallow the expense reimbursement by $1,436.57.

**Late Night/Weekend Meals**

Chadbourne seeks $2,066.83 in reimbursement for expenses related to "Late Night/Weekend Meals." Of this amount, the United States Trustee objects to $446.52, which is the aggregate amount that these meals exceed the $20 per person limit on meal expenses. Absent an additional justification for exceeding the $20 per person limit, the United States Trustee requests that the Court reduce the reimbursement by $446.52.

**Photocopying**

Chadbourne seeks an expense reimbursement of $90,095.80 related to photocopying. As noted in Chadbourne's fee application, Chadbourne charges its clients photocopy expense of $.20 per page. See Chadbourne Fee Application ¶ 30. The United States Trustee objects to this entire amount because charging the estate $.20 per page violates the Guidelines. See Administrative Order M-389 at E.2 ("Photocopying shall be reimbursable at the lesser of $.20 or cost.") (emphasis added). Accordingly, absent supporting documentation that Chadbourne's actual cost for photocopy was $.20 per page, the Court should reduce Chadbourne's reimbursement to $.10 per page.

**Z.    Mesirow**

Mesirow seeks an allowance of fees in the total amount of $3,007,275 and reimbursement of out-of-pocket expenses in the total amount of $30,048 during the Fee Period. The United States Trustee objects to the allowance of $67,793 in fees and expenses in the amount of $3,619 for the reasons set forth below.

**(i)**     **Fees**

**Vague Time Entries**

The United States Trustee objects to $21,774 in compensation because Mesirow time

records show instances where professionals billed time entries that were vague.   Annexed hereto

as Exhibit I, is a copy of Mesirow's time records marked with the annotations "V" to highlight

the non-compliant, vague time entries.   In total, the impermissible time entries aggregate to

$72,583.  In the absence of an adequate explanation of these time entries through the filing of a

supplemental declaration, the United States Trustee requests that the Court reduces Mesirow's

request by 30%, or by approximately $21,774.

**Charges Related to Retention and Fee Applications**

Mesirow seeks compensation of $133,600 under the project category "Fee/Retention

Applications."  While the United States Trustee acknowledges that Mesirow's fee application

states that Mesirow voluntarily reduced its compensation under this project category by $84,221,

the United States Trustee views the remaining request as excessive in light of the facts and

circumstances of the case.  For example, a review of the time records indicates that Mesirow

charged the estate $3,328 for 10.3 hours of work related to researching and reviewing the Court's

and the United States Trustee's Guidelines on July 27, 30-31, and August 1, 2012.  As

professionals employed by bankruptcy estates should be familiar with the Guidelines, the United

States Trustee requests that the Court further reduce Mesirow's compensation by $3,328.

**Charges Related to Overhead/Staffing Issues**

Mesirow seeks $269,003 in compensation under the project category "Case

Administration/General Bankruptcy Matters."  The billing records under this project category

show several instances where Mesirow charged the estate for overhead such as staff budgeting

and scheduling.  By way of example only, Mesirow employees charged the estate approximately

$28,388 for various instances of scheduling staff coverage and similar instances of overhead.

Annexed hereto as Exhibit I is a copy of Mesirow's time records containing the notation "O"

adjacent to time entries that the objected to time entries.  Accordingly, the United States Trustee

requests that in the absence of supporting justification for such charges that the Court reduce

Mesirow's compensation under this project category by approximately $28,388.

### Charges Related to Review of News Reports

Mesirow seeks compensation of $2,024,799 under the project category "Document

Review and Analysis."  The United States Trustee objects to $7,389 of this amount that relates to

the review of news articles and industry reports related to the Debtors.   As noted previously,

bankruptcy professionals should be compensated "commensurate with their expertise and the

benefit their efforts yield to the estate."  Fibermark, 349 B.R. at 396 (emphasis added).  Based on

the billing records alone, it is unclear to what extent Mesirow's services related to news reports

benefited the estate.  Therefore, unless and until Mesirow provides a further justification for

these charges, the Court should reduce Mesirow's compensation by $7,389.

### Internal Training

The United States Trustee objects to charges of approximately $6,914 related to the

attendance by multiple Mesirow employees on Synthesis training.  As noted in the Mesirow's

application, Synthesis is Mesirow's "proprietary web-based analytical tool designed to

synthesize and analyze data and information, manage workflows and coordinate engagement

activities . . . ."  See Mesirow Application at 7.  According to Mesirow's time records, at least

thirteen Mesirow employees attended a Synthesis training event on August 28, 2012.  In total,

this training resulted in a charge to the estate of $6,914 under the project category "Case

59

Administration/General Bankruptcy Matters." It is unclear why the estate must bear the costs of

training Mesirow's employees for training on software that is Mesirow's proprietary software.

Accordingly, unless and until Mesirow provides additional justification for this training, the

United States Trustee requests the Court reduce Mesirow's compensation by $6,914.

**(ii)    Expenses**

**Air Transportation**

Mesirow seeks reimbursement of $13,249.00 for air transportation expenses incurred

during the Fee Period. Of this amount, the United States Trustee objects to $3,186, which

represents the aggregate amount of two round trip flights between New York and Chicago on

July 31, 2012 and New York and Dallas on August 12, 2012, because it is unclear whether these

flights were for coach or business/first class travel. Accordingly, until the underlying

documentation for the expenses sough is provided to satisfy this concern, the Court should deny

the request for expense reimbursement

**Meals**

Mesirow seeks reimbursement of $1,220.00 for meals incurred by employees in

connection with this case. The United States Trustee objects to the reimbursement of $433.00,

which represents the aggregate amount that these meals exceed the $20 per person limit on meal

reimbursements. Therefore, the United States Trustee requests that the Court reduce the meal

reimbursement by $433.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court enter an

order (i) reducing the fees allowed to the Retained Professionals by the amounts set forth herein,

(ii) directing the Retained Professionals to supplement the Applications as set forth herein, (iii)

60

reducing the reimbursement of expenses to the Retained Professionals by the amounts set forth

herein, and (iv) granting such other relief as is just.

Dated: New York, New York
      December 7, 2012

                              Respectfully submitted,


                              TRACY HOPE DAVIS
                              UNITED STATES TRUSTEE

By:     */s/ Brian S. Masumoto*
            Brian S. Masumoto
            Michael T. Driscoll
            Trial Attorneys
            33 Whitehall Street, 21st Floor
            New York, New York 10004
            Tel. No. (212) 510-0500
            Fax No. (212) 668-2255