Hearing Date and Time: December 20, 2012 at 10:00 a.m.
Objection Deadline: December 11, 2012 (by agreement)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official
Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                          :    Chapter 11
                                                :
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,        :    Case No. 12-12020 (MG)
                                                :
              Debtors.                          :    Jointly Administered
                                                :
------------------------------------------------------------ x

**STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS CONCERNING THE
DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY
CODE SECTIONS 105(a), 363, 503(b)(1), 507(a)(2), 1107(a) AND 1108 AND
BANKRUPTCY RULE 9019 TO THE FINAL WAGES ORDER (I) AUTHORIZING AND
DIRECTING THE DEBTORS TO REIMBURSE ALLY FINANCIAL INC. FOR
PAYMENTS MADE TO THE DEBTORS' EMPLOYEES ON ACCOUNT OF
COMPENSATION ISSUED ON OR AFTER THE PETITION DATE; (II) GRANTING
ALLY FINANCIAL INC. AN ADMINISTRATIVE EXPENSE CLAIM ON ACCOUNT
OF SUCH PAYMENTS; (III) GRANTING ALLY FINANCIAL INC. A LIMITED
RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO ESTABLISH AND FUND
AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY FINANCIAL INC. ON
ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS, INCLUDING
<u>ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY</u>**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submits this statement and reservation of rights (the "**Statement**") to the Debtors' motion seeking

authorization to, among other things, reimburse Ally Financial Inc. ("**AFI**") for certain payments made to the Debtors' employees, grant AFI an administrative expense claim for such reimbursement payments, and grant AFI a limited release [Docket No. 2049] (the "**Motion**").[1] In support of its Statement, the Committee respectfully states as follows:

## STATEMENT AND RESERVATION OF RIGHTS

1. While the Committee does not oppose the Motion, the Committee submits this Statement to (i) reserve its rights with respect to the continuing conflict of interest inherent in the compensation structure for the Debtors' senior management caused by TARP, (ii) provide the Court and other parties-in-interest with the Committee's position on the Motion, and (iii) propose certain modifications to the Proposed Order to clarify the terms of the Debtors' agreement with AFI.

### A.    The Committee Reserves its Rights on the Debtors' Compensation Structure

2. Due to restrictions imposed by TARP, most of the compensation for the 100 most highly paid employees of AFI (including its Debtor subsidiaries) is required to be tied to the value of AFI. Thus, for the past few years, the Debtors' senior executives have received a substantial majority[2] of all of their compensation in stock units that are directly linked to the value of AFI (the "**AFI-Linked Stock Units**").[3] In addition, the TARP rules require that a substantial percentage of the compensation for AFI's top 100 employees vest and/or be subject to deferred payments over a number of years. As a result, the Debtors' senior executives held approximately $49 million in AFI-Linked Stock Units as of the Petition Date.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] By way of illustration, approximately 88% of 2012 compensation for the Debtors' top 3 employees was set to be comprised of AFI-Linked Stock Units. The remaining 12% of compensation consists of cash.

[3] As explained in more detail in the Motion, the AFI Linked Stock Units include, among other things, DSUs, IRSUs, and RSUs.

3.     As the Court is well aware, the Examiner and the Committee are investigating the prepetition relationship between AFI and the Debtors, including numerous interested party transactions. In the Committee's view, the AFI-Linked Stock Units held by the Debtors' senior management created a conflict for these employees when dealing with issues between AFI and the Debtors. The AFI-Linked Stock Units caused, and continues to cause, the Debtors' management to be personally incentivized to maximize the value of AFI to the potential detriment of the Debtors and their creditors.

4.     However, the relief sought by the Motion is limited to identifying who is responsible for making payments on account of the AFI Linked Stock Units and, as discussed below, payments to management for their postpetition compensation will be paid in cash. Nothing in the Motion seeks to cure or excuse the conflict that the AFI-Linked Stock Units put the Debtors' management in when dealing with AFI. Thus, the issue of whether the Debtors' management is conflicted and its implications for the Debtors' prepetition transactions with AFI is not before the Court. The Committee reserves its rights on all issues pertaining to potential conflicts caused by the Debtors' compensation structure.[4]

### B.    The Committee has no Objection to the Debtors' Modified Agreement with AFI

5.     Shortly after the bankruptcy filing, the Committee was informed that there was a dispute between AFI and the Debtors regarding which entity would ultimately cash out the $49 million in AFI-Linked Stock Units outstanding as of the Petition Date and any AFI-Linked

---

[4] The Motion does not seek approval of the Debtors' senior management salaries for 2012, which had been authorized by the Debtors pre-petition. The Committee has determined not to revisit the Debtors' approval of these salaries for 2012. The Committee reserves all of its rights to contest the structure and/or amount of compensation to the Debtors' employees for the year 2013.

Stock Units to be issued postpetition.[5] AFI alleged that because the AFI-Linked Stock Units were held by the Debtors' employees, the Debtors should bear the responsibility for these payments. The Debtors, with the Committee's support, took the position that AFI, as issuer of the AFI-Linked Stock Units, is directly obligated to make these payments, and that AFI may have, at best, an unsecured claim for contribution against the Debtors. Moreover, many of the employees in question were, in fact, direct employees of AFI when they received AFI-Linked Stock Units. According to the Debtors, the dispute and resulting delay in payment to the employees caused tremendous concern and dislocation.

6. In late July, the Debtors informed the Committee that they entered into an agreement with AFI to resolve the dispute. AFI agreed to pay the approximately $49 million in accrued but unpaid AFI-Linked Stock Units as of the Petition Date in exchange for the Debtors' agreement to (i) pay for all compensation that accrues for the Debtors' employees post-petition,[6] and (ii) provide AFI with a release of claims related to the employment and compensation of certain employees holding AFI-Linked Stock Units (defined as "Qualifying Debtor Employees" in the Motion).[7]

7. The Committee had three primary concerns with the Debtors' initial agreement with AFI. First, the release agreed to by the Debtors, though limited to employment matters, could potentially deprive the estates of valuable causes of action that are within the scope of the investigations of the Examiner and the Committee. Second, it was unclear whether

---

[5] As discussed in the Motion, the parties also disputed the implementation of the OSM Letters (as defined in the Motion).

[6] Although the Motion states that AFI is assuming the obligation to pay $48.9 million in prepetition AFI-Linked Equity Units, the Committee understands that this amount is subject to reduction by approximately $4.5 million that will likely not vest as the result of the Debtors' sale of their servicing platform.

[7] The Debtors have also confirmed to the Committee that AFI's agreement to pay the pre-petition AFI-Linked Equity Units will avoid a purchase price adjustment under the Ocwen sale, increasing the net sale proceeds by up to $19.8 million.

AFI would retain the right to seek indemnification or contribution against the Debtors for payment of the prepetition AFI-Linked Stock Units. Third, the arrangement did nothing to resolve the conflict inherent in compensating the Debtors' senior management with AFI-Linked Stock Units.

8. As set forth below, because the Committee's first and second concerns were addressed through modifications and/or clarifications to the agreement, and because the propriety of the AFI-Linked Stock Units for the Debtors' senior management is not addressed by the Motion, the Committee has no objection to the Motion.

9. As an initial matter, in response to the Committee's concern on the release, AFI agreed to provide a significant carve-out for all claims and causes of action that are within the scope of the Examiner's investigation. This carve-out includes not only matters that are being investigated by the Examiner and/or identified and discussed in the Examiner's report, but also any other claims or causes of action falling within the scope of the Examiner's investigation, regardless of whether such claims or causes of action are actually investigated or identified by the Examiner. For example, to the extent the estates have claims against AFI for prepetition payments made by the Debtors to AFI on account of employees that were (or should have been considered) AFI employees, such claims would not be released. Therefore, the release has been sufficiently narrowed to ensure that the estates are not waiving any valuable causes of action that are within the scope of the ongoing investigations of the Examiner and the Committee.[8]

10. Additionally, AFI and the Debtors clarified to Committee counsel that AFI is waiving any right to seek indemnity or reimbursement from the Debtors, whether as an

---

[8] Although the Committee's investigation is not specifically carved out, the scope of the Examiner's investigation is congruous with the scope of the Committee's investigation.

administrative or unsecured claim, for payments made by AFI on account of the prepetition AFI-Linked Stock Units.

11.     Lastly, the Debtors sought and obtained approval from the U.S. Department of the Treasury's Office of the Special Master for TARP Executive Compensation ("**OSM**") to delink the Debtors' management compensation from AFI's value.[9]  On November 30, 2012, the OSM announced that the Debtors' employees may be paid with deferred cash awards in lieu of AFI-Linked Stock Units for the post-petition period.

12.     While this modification to the TARP rules represents a small step towards greater independence from AFI going forward, it clearly does not solve the conflict issue that continues to exist with respect to the AFI-Linked Stock Units outstanding as of the Petition Date and does not cure any conflicts that existed in connection with the numerous pre- and post-petition transactions between AFI and the Debtors.  Nevertheless, as discussed above, the conflict issue is not before the Court at this time, and the Committee reserves all rights on the issue.

### C.     The Proposed Order Should be Modified to Clarify the Agreement with AFI

13.     Both before and after the Motion was filed, the Committee had a number of questions for the Debtors on certain ambiguities in the agreement between AFI and the Debtors.  Each of these ambiguities was clarified by the Debtors to the satisfaction of the Committee. However, the Proposed Order does not yet reflect these clarifications.  Thus, the Proposed Order should be revised to:

- Explicitly set forth AFI's obligation to pay the Debtors' employees in accordance with the Term Sheet;

---

[9] Because compensation for the top 100 employees in the AFI organization (which includes the Debtors) is subject to TARP restrictions, any change to the structure of these employees' compensation must be approved by the OSM.

- Clarify that AFI waives any claim—whether administrative or unsecured—for contribution or reimbursement on account of payments made to Qualified Debtor Employees for prepetition compensation;

- Remove all references to AFI-linked equity in light of the OSM's determination that all postpetition compensation to employees covered by the Motion will be comprised of deferred cash payments;

- Incorporate the clarification requested by the New Jersey Carpenters Health Fund, as lead plaintiff in the securities class action New Jersey Carpenters Health Fund, et al., on Behalf of Themselves and All Others Similarly Situated v. Residential Capital, LLC, et al., as the Committee agrees that the Proposed Order should be made clear, without any doubt, that no third party claims against AFI will be released by the Limited Debtor Release; and

- Provide that payments to AFI from the escrow account will not be made upon the effective date of the chapter 11 plan, but will remain in escrow and will only be paid to AFI if and when they make the required payments; any remaining funds in the escrow account after all payments are made to AFI should be included in amounts available for distributions to unsecured creditors.

14. These additions and clarifications are critical to the Committee's determination not to object to the agreement with AFI. To the extent these modifications are not incorporated into the Proposed Order, the Committee reserves all of its rights with respect to the Motion, including the right to raise any objections or issues at the hearing.

Dated: New York, New York
       December 11, 2012

                                         KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                         /s/ Kenneth H. Eckstein
                                         Kenneth H. Eckstein
                                         Douglas H. Mannal
                                         Stephen D. Zide
                                         1177 Avenue of the Americas
                                         New York, New York 10036
                                         Telephone: (212) 715-9100
                                         Facsimile: (212) 715-8000
                                         *Counsel for the Official Committee
                                         of Unsecured Creditors*