GIBBS & BRUNS LLP
Kathy D. Patrick, Esq. (*pro hac vice*)
Robert J. Madden, Esq. (*pro hac vice*)
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

-AND-

ROPES & GRAY LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for the Steering*
*Committee Group of RMBS Holders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Residential Capital, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered |

**LIMITED OBJECTION OF THE STEERING COMMITTEE GROUP OF**
**RMBS HOLDERS TO DEBTORS' MOTIONS (I) TO FURTHER EXTEND**
**THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT**
**ACCEPTANCES THEREOF, AND (II) FOR APPOINTMENT OF A MEDIATOR**

The Steering Committee Group of RMBS Holders (the "Steering Committee Group"),[1]

by and through its undersigned counsel, hereby submits this limited objection (the "Limited

---

[1] The Steering Committee Group consists of AEGON USA Investment Management, LLC; Angelo, Gordon & Co., L.P.; Cascade Investment, LLC; Federal Home Loan Bank of Atlanta; Goldman Sachs Asset Management, L.P.; ING Investment Management Co. LLC; ING Investment Management, LLC; Bayerische Landesbank; BlackRock Financial Management Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Metropolitan

Objection") to the Debtors' (i) *Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 2355] (the "Exclusivity Motion") and (ii) *Motion for Appointment of a Mediator* [Docket No. 2357] (the "Mediation Motion").[2]  In support of this Limited Objection, the Steering Committee Group respectfully represents as follows:

**LIMITED OBJECTION**

I.  THE MEDIATION SHOULD NOT BE EMPLOYED TO FURTHER DELAY THE RMBS SETTLEMENT HEARING BEYOND MARCH, 2013.

1. The RMBS Settlement paved the way for a consensual sale process without the need for Debtors to resolve billions of dollars of cure claims and setoff rights.  The Debtors and all creditors, as a result of the RMBS Settlement, have reaped the benefits of a sale of their origination platform through a competitive auction that stands to bring $3 billion into the Debtors' estates. The RMBS Settlement and the Scheduling Order included provisions that were intended to, and in fact did, encourage bidding; in exchange for those provisions, the Debtors committed to a timely hearing to approve the RMBS Settlement and to important remedies and rights for the RMBS Trustees.  Key provisions were included in the RMBS Scheduling Order to avoid the risk that Debtors would take many of the benefits of the RMBS Settlement without responsibility to provide the benefits promised to the RMBS Trusts, the Trustees and the investors.

2. Despite the fact that many of these protective provisions were included in a Scheduling Order agreed not only with Debtors, but also with the Unsecured Creditors

---

Life Insurance Company; Neuberger Berman Europe Limited; SNB StabFund; The TCW Group, Inc.; Teachers Insurance and Annuity Association of America; Thrivent Financial for Lutherans; Western Asset Management Company; and certain of their affiliates, either in their own capacities or as advisors or investment managers.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Mediation Motion or the Exclusivity Motion.

Committee and others, including the monolines, many of the parties that agreed to that Order have nonetheless taken every opportunity to delay the settlement hearing. Now, more than seven months after the RMBS Settlement was negotiated and these cases commenced, the Debtors and the UCC propose to further delay the settlement hearing for an additional two months to conduct mediation of not only the RMBS Settlement, but of numerous plan issues.

3. The Steering Committee Group does not object to mediation of issues surrounding the RMBS Settlement or plan issues. Indeed, the appointment of a sitting bankruptcy judge as mediator will help cut through many of the empty issues that have been raised as objections to the settlement. However, given the determination of the monoline insurers and the Creditors Committee (which acts almost exclusively for the monolines' benefit at the expense of other creditors)[3] to continually delay the hearing on the settlement, mediation will provide opportunity for further gamesmanship to delay the RMBS Settlement hearing well beyond March, 2013.

4. The Steering Committee Group respectfully submits that mediation will only assist in narrowing the disputed issues of the RMBS Settlement if there is a firm deadline requiring the mediation to conclude well in advance of the March 18, 2013 settlement hearing. Of course, if the parties make substantial progress and additional time would assist in further narrowing the issues, the parties may choose to agree to continue mediation instead of litigation, but nothing will be accomplished without a firm deadline. Without a firm deadline, certain parties may continue their efforts to delay the RMBS Settlement. Accordingly, the Steering Committee Group requests that the order for mediation expressly provide that the mediation shall conclude no later than March 1, 2013, except as extended by the Court for good cause shown.

---

[3] Counsel to the Steering Committee Group has separately written to counsel for the Creditors Committee to express the deep concern of the Steering Committee Group regarding the failure of the Committee to act *impartially* for the benefit of all creditors. See Exhibit A.

3

5. The Steering Committee Group is also concerned about the economic impact on creditor recoveries that would result from an open-ended mediation. The administrate costs of these cases is running in the hundreds of millions of dollars per year, and given the successful auction result, it is almost certain that the junior secured bondholders will assert claims for post-petition interest (which claims, while disputed, will be for hundreds of millions of dollars per year in accruals). Any delay in extending the mediation will cause massive incremental costs to these estates, which will be borne mostly by the RMBS Trusts in the form of reduced recoveries.

II. ALL PARTES TO THE MEDIATION SHOULD HAVE A SIMILAR BODY OF INFORMATION.

6. The order proposed by the Debtors in the Mediation Motion provides in paragraph 5 that any party that received confidential information pursuant to a confidentiality agreement shall not provide such information to any party other than the Mediator. Of course, if the parties do not have access to the same information or arguments made by the other parties, the mediation will have little chance of progressing these cases. Such concern is heightened in this case by the fact that the majority of discovery conducted on the RMBS Settlement has been produced pursuant to confidentiality agreements. The Debtors' proposed restriction would effectively preclude parties from exchanging any information regarding the settlement in the mediation.

7. There are better alternatives to address confidentiality concerns than to limit such information solely to the Mediator. In this case most of the Mediation Parties have already entered into confidentiality agreements with the Debtors. Confidential information provided to the Mediator should, at a minimum, be provided to all parties that have entered or agree to be bound by confidentiality agreements. Alternatively, the order approving the Mediation Order can expressly order confidential treatment of any information shared in the mediation.

4

III.   EXCLUSIVITY SHOULD BE EXTENDED BEYOND FEBRUARY, 2013 TO AVOID AN EXCLUSIVITY CONTEST IN THE MIDST OF MEDIATION.

8.   The Debtors have proposed to extend the exclusive period for proposing a plan to February 28, 2013. Mediation of the numerous plan issues will not conclude by a sufficiently early date in February that the Debtors will not need to file a further motion to extend exclusivity. Requiring the Debtors to request a further extension of exclusivity in the middle of plan mediation will only force a sideshow that will distract from efforts to reach a deal in the mediation. Accordingly, if the Mediation Motion is to be granted, then exclusivity should be extended through the end of March, 2013.

**WHEREFORE**, the Steering Committee Group respectfully requests that (A) the order approving the Mediation Motion provide that (i) the mediation shall conclude no later than March 1, 2013, except as extended by the Court for good cause shown; and (ii) confidential information provided to the Mediator shall also be provided to all other Mediation Parties that have agreed to confidentiality restrictions and subject to appropriate protective language in any mediation order entered by the Court; and (B) the Exclusive Plan Period be extended to no earlier than March 29, 2013.

Dated: December 13, 2012
      New York, New York

/s/ Keith H. Wofford

GIBBS & BRUNS LLP
Kathy D. Patrick, Esq. (*pro hac vice*)
Robert J. Madden, Esq. (*pro hac vice*)
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

-AND-

ROPES & GRAY LLP
Keith H. Wofford, Esq. (KW-2225)
D. Ross Martin, Esq. (DM-2947)
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for the Steering Committee Group of RMBS Holders*