DAY PITNEY LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:   (860) 275-0100
Facsimile:   (860) 275-0343
  - and -
7 Times Square
New York, New York 10036-7311
Telephone:   (212) 297-5800
Facsimile:   (212) 916-2940
JAMES J. TANCREDI, ESQ. (JT-3269)
HERBERT K. RYDER, ESQ. (HR-5137)
*Attorneys for Connecticut Housing Finance Authority*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | **Case No. : 12-12020 (MG)** |
| Debtors. | **(Jointly Administered)** |

### MOTION OF CONNECTICUT HOUSING FINANCE AUTHORITY ("CHFA") FOR THE ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

The Connecticut Housing Finance Authority ("CHFA"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for an entry of an order granting CHFA relief from the automatic stay, pursuant to Sections 105 and 362(d) of Title 11 of the United States Code (the "Bankruptcy Code") in order to recover its mortgage servicing portfolio with related reliefs from the above-captioned Debtors (collectively, the "Debtors.") In support thereof, CHFA respectfully submits as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

4. The statutory predicate for the relief sought in this Motion is Section 362(d) of the Bankruptcy Code.

**PRELIMINARY STATEMENT**

5. Allowing CHFA relief from the automatic stay in order to retrieve its portfolio from the Debtors is critical to ensure a smooth transition that minimizes chances for costly errors. And, unfortunately, a court-imposed sequestration of assets and documents along with a final accounting is necessary given the Debtors' lackadaisical approach to CHFA's portfolio as they wind down their business. As this Court is aware, the Debtors have stated their intentions to exit the servicing business, and to terminate their servicing agreement with CHFA. On information and belief, the Debtors are currently failing to provide key servicing functions, such as maintaining records, filing default insurance claims, and continuing to service defaulted mortgage loans through to eviction. At the same time, the Debtors are undertaking a massive effort to transfer huge numbers of loans to Ocwen Loan Services, LLC ("Ocwen") beginning sometime in early January, a process that would obviously stress the operations of even the best run servicers. Ordering the turnover of CHFA's portfolio, with accompanying relief from the automatic stay, would help avoid transfer problems while imposing a minimal burden on the Debtors who no longer wish to do business with CHFA. Otherwise, CHFA would be faced with the burden of trying to get its portfolio back just as the Debtors – who have been minimally

communicative at best – will have the fewest resources with which to devote to fulfilling their fiduciary responsibilities to CHFA.

## BACKGROUND

6. The Court is respectfully referred to the Affidavit of Elizabeth Vallera In Support of CHFA'S Limited Protective Objection to Ocwen's Assumption and Assignment of Its Servicing Agreement with GMAC ResCap that was filed by CHFA with this Court on November 15, 2012, along with the exhibits thereto (ECF No. 2186) (the "Vallera Affidavit"), which this Motion incorporates by reference.

### CHFA's Business

7. CHFA is a body politic established by the legislature of the State of Connecticut dedicated to alleviating housing shortages by helping low and moderate-income people achieve home ownership. *See* CONN. GEN. STAT. § 8-250. CHFA originates home mortgage loans to buyers with limited credit and/or income, with funds derived from the issuance of tax-exempt government bonds, in order to facilitate such individuals' access to the market for Connecticut residential property. (Vallera Affidavit at ¶ 3.)

8. Once it originates a mortgage loan, CHFA does not, in the main, handle day-to-day tasks associated with managing and servicing a residential loan and mortgage. Instead, CHFA contracts with outside approved service providers to service its loans. These pre-qualified service providers handle critical tasks like customer service, funds collection and remittance, foreclosure processing, compliance with consumer laws, and the submission of insurance claims on defaulted loans. As the direct link between CHFA and its mortgagees, therefore, any servicing failures on the part of contracted service providers have the potential to cause CHFA, the State of Connecticut, and its bondholders, significant economic harm. CHFA, as an issuer of

public bonds, has a Aaa rating with Moody's Investors Service. As its servicer, the Debtors are entrusted with public funds, and are fiduciaries to CHFA and its bondholders.

### CHFA's Servicing Agreement with GMAC Mortgage

9. CHFA and GMAC Mortgage, LLC, f/k/a GMAC Mortgage of Pennsylvania ("GMAC Mortgage"), were parties to a Home Mortgage Servicing Agreement dated July 15, 1987, incorporating a Master Commitment Agreement for Mortgage Purchases dated July 15, 1987, as amended from time to time (collectively, the "Servicing Agreement"). (Vallera Affidavit, Ex. A.) The Servicing Agreement provides for cancellation by GMAC Mortgage of the agreement on sixty days written notice. (Servicing Agreement at § 5(C).)

10. On or about September 18, 2008, GMAC Mortgage sent CHFA a letter purporting to terminate the Servicing Agreement (the "Termination Letter"). A copy of the Termination Letter is attached hereto as Exhibit A. Notwithstanding the delivery of the Termination Letter, both parties have continued to perform at least some of their obligations under the Servicing Agreement.

11. GMAC Mortgage, as of September 30, 2012, serviced a portfolio of approximately 880 residential mortgage loans belonging to CHFA, worth approximately $83,981,213.46. (Vallera Affidavit at ¶ 5.)

12. On November 21, 2012, this Court entered an Order under 11 U.S.C. §§ 105, 363, and 365, and Bankruptcy Rules 2002, 6004, 6006, and 9014: (I) Approving: (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief (ECF No. 2246) (the "Sale Order").

On information and belief the Sale to Ocwen will close shortly, commencing in early January 2013.

13. On July 26, 2012, the Debtors filed a Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto (ECF No. 924) (the "Notice"). In the Notice, the Debtors identified four agreements with CHFA, each dated September 8, 1994, which are each described as the "Connecticut Housing Finance Authority Servicing Agreement of September 8, 1994." (Notice, Ex. 3a – Primary Contracts Schedule at 10.)

14. CHFA has no record of any agreements between it and the Debtors made or amended in 1994. Subsequent conversations between the Debtors and counsel revealed that the identification of four agreements from 1994 was an error on the Debtors' part. Later, the Debtors' counsel identified in an e-mail the Servicing Agreement first executed in 1987 as the executory contract that the Debtors intended to assume and assign to its purchaser. Nonetheless, the Debtors' counsel informed CHFA that the Debtors no longer intend to assume and assign the Servicing Agreement, but instead plan to terminate it. The Debtors removed the Servicing Agreement from Schedule E of the Asset Purchase Agreement with Ocwen.

15. As noted above, under the Servicing Agreement, the Debtors, as service providers, are obligated to provide a variety of critical functions for CHFA. Such functions include collecting and remitting monies due to CHFA from mortgagees, ensuring that mortgagees have proper insurance arrangements, paying property taxes on mortgaged property, reporting defaults, initiating and completing foreclosure proceedings at CHFA's direction, and submitting timely claims to insurers and government guarantors on defaulted loans. (Servicing

Agreement at § 3.)  Failure to complete any one of such tasks risks substantial costs and liabilities to CHFA.

16. In addition, pursuant to the Servicing Agreement, the Debtors are obligated to maintain all of CHFA's records on the loans, including foreclosure filings, payment history, and insurance and property tax information. (*Id.*) Any loss of this information, or any failure to properly record such information, would also have a serious financial impact on CHFA.

17. Moreover, the Servicing Agreement provides for CHFA's indemnification by the Debtors for failure to perform duties under the Servicing Agreement. (Servicing Agreement at § 11.)  The filing of the Debtors' bankruptcy petition devalued any such indemnification as any claims by CHFA against the Debtors under the indemnity would now be claims (including administrative claims for post-petition misconduct) against the Debtors' bankruptcy estates.  This provides the Debtors with substantially fewer incentives to perform in compliance with the Servicing Agreement.

18. The Debtors have failed to meaningfully respond to any requests for a dialogue about transitioning the portfolio back to CHFA in an appropriate fashion.  On November 16, 2012 CHFA sent a letter to the Debtors' counsel asking to discuss an accounting and possible servicing errors. CHFA received no response.  On November 23, 2012, CHFA sent a letter to the Debtors' counsel asking to make arrangements for an orderly turnover of CHFA's portfolio in the event that they would not be assuming and assigning the Servicing Agreement to Ocwen.  CHFA again received no response.  In addition, CHFA has made numerous attempts -- by phone and by email -- to schedule meetings with both Ocwen and the Debtors regarding turnover of the portfolio.  While the Debtors' counsel did offer one date to meet with Ocwen, that commitment was cancelled.  Subsequently, in response to CHFA's requests for a meaningful dialogue,

Debtors' counsel has informed CHFA that Ocwen and the Debtors are not able to discuss any matters until late December.

19. Meanwhile, CHFA has seen a serious deterioration in GMAC Mortgage's performance of its servicing obligations. CHFA recently received a request from the Debtors' document services provider, Xerox, for documents that should be in the Debtors' possession pursuant to the Servicing Agreement. Also, as noted in the Vallera Affidavit, the Debtors have failed to properly submit insurance claims on defaulted loans. (Vallera Affidavit at ¶ 5.) They have also failed to continue providing foreclosure services on defaulted loans through eviction. (*Id.*)

## RELIEF REQUESTED

20. By this Motion, CHFA seeks the entry of an order, pursuant to Sections 105 and 362(d) of the Bankruptcy Code, granting CHFA relief from the automatic stay in order to allow it to recover its loan portfolio and related property from the Debtors. Given the errors in servicing pursuant to the Servicing Agreement by GMAC Mortgage to date, CHFA also requests that the Court enter an order directing the Debtors, through their subsidiary GMAC Mortgage, to turn over the loan portfolio in an orderly fashion, segregate the documents, computer data, and assets related to the portfolio, and provide CHFA a complete accounting with respect to the portfolio.

## ARGUMENT

21. Pursuant to Section 362(d) of the Bankruptcy Code, the automatic stay shall be lifted "for cause, including the lack of adequate protection of an interest in property . . . ." 11 U.S.C. § 362(d). However:

> "Cause" as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis. *In re MacDonald*, 755

> F.2d 715, 717 (9th Cir. 1986). "Cause" is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact sensitive situations. *In re Sentry Park, Ltd.* 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988).

*In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995).

22. In this case, traditional equitable considerations such as the balance of harms and judicial interest in a speedy resolution weigh in favor of granting stay relief to CHFA. The Debtors are leaving the servicing business and thus have little incentive to continue to provide a high level of service in their mortgage servicing operations. Any servicing errors that occur during this transition period could be compounded and significantly damage CHFA's interests in the portfolio. Without the provision of transfer protocols imposed by this Court, there appear to be no policies, procedures, trained personnel, or other necessary safeguards in place to ensure a smooth transition from GMAC Mortgage back to CHFA or its designee. Furthermore, a speedy resolution would allow both parties to transition CHFA's relatively small portfolio before the Debtors undertake the massive effort needed to transition the majority of the Debtors' servicing contracts to Ocwen. Otherwise, CHFA faces the task of balancing a risky high-wire act of moving its portfolio back just as the apparently unprepared or overextended Debtors will have the fewest resources to devote to its account.

23. Just as importantly, the Debtors plan to leave the servicing business – making any harm to them minimal. Meanwhile, CHFA relies on the Debtors to provide key services to homeowners for tens of millions of dollars worth of mortgage loans. The balance of harm clearly favors CHFA, making relief from the automatic stay appropriate.

24. Moreover, in this case, the purported termination of the contract pre-petition by the Debtors would make granting relief from stay appropriate. Without an executory contract to assume (and no intention to reinstate it), there is no reason for a court to deny relief from the

automatic stay to a party seeking its property back under an expired agreement. *See In re Tornado Pizza, LLC*, 431 B.R. 503, 519 (Bankr. D. Kansas 2010); *see also In re Nat'l Envtl. Waste Corp.*, 191 B.R. 832, 837-38 (Bankr. C.D.Cal. 1996) (allowing for relief from automatic stay by city to terminate contract with waste service provider where city had reason to believe that contract had been terminated).

25.  As such, CHFA requests that this Court order an orderly turnover of the portfolio, with assets and documents segregated per the Servicing Agreement, and with a complete accounting. Given the Debtors' failures to fully comply with the Servicing Agreement to date, court ordered relief of the sort would be appropriate.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, and based upon the facts set forth in the Vallera Affidavit and the Termination Letter attached hereto, CHFA respectfully requests that this Court enter an order:

a.  Granting CHFA expedited interim relief whereunder the Debtors would be directed to sequester CHFA's funds, documents, data and rights related to the Servicing Agreement, and to provide an appropriate accounting to facilitate the orderly transfer of the portfolio;

b.  Directing the Debtors, through their subsidiary GMAC Mortgage, to turn CHFA's portfolio and related rights over to CHFA or its designee;

c.  Directing the Debtors, through their subsidiary GMAC Mortgage, to segregate the documents, data and funds associated with CHFA's portfolio, and to provide CHFA with a final accounting of same; and

d.  Granting such other or further relief as this Court deems just and proper.

Dated: December 13, 2012   **CONNECTICUT HOUSING FINANCE AUTHORITY**

*/s/ James J. Tancredi*
JAMES J. TANCREDI (JT-3269)
HERBERT K. RYDER (HR-5137)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
Telephone:   (860) 275-0100
Facsimile:   (860) 275-0343
jjtancredi@daypitney.com