Hearing Date: December 20, 2012 at 10:00 a.m. (ET)
Objection Deadline: December 13, 2012 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) | Chapter 11 |
| Debtors. | ) ) ) | Jointly Administered |

**DEBTORS' OBJECTION TO MOTION FOR CLARIFICATION REGARDING RELIEF
FROM STAY FILED BY GREGORY BALENSIEFER [DOCKET NO. 1244]**

ny-1068262

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................2

      A.      General Chapter 11 Case Background...................................................................2

      B.      The State Court Action Background .....................................................................3

OBJECTION ..................................................................................................................................5

      A.      Claims for Attorneys' Fees and Costs are Subject to the Automatic Stay .............5

      B.      Applicable Authority ..............................................................................................8

      C.      Analysis of the Relevant <u>Sonnax</u> Factors ...............................................................10

CONCLUSION .............................................................................................................................15

Exhibits:

Exhibit 1 – Scoliard Declaration
        Exhibit A – Adjustable Rate Note
        Exhibit B – Deed of Trust
        Exhibit C – Corporation Assignment of Deed of Trust
        Exhibit D – Notice of Trustee's Sale
        Exhibit E – Verified First Amended Complaint
        Exhibit F – Preliminary Injunction, dated March 1, 2011
        Exhibit G – Proof of Claim No. 4904
        Exhibit H – Proof of Claim No. 4918

Exhibit 2 – Unpublished Decisions, Orders, Pleadings, and Transcripts

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
  126 F.3d 43 (2d Cir. 1997) ................................................................................................... 10

City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),
  28 B.R. 324 (Bankr. S.D.N.Y. 1983) ..................................................................................... 12

Crommie v. Cal.,
  No. 89-4433-BAC, 1993 WL 106472 (N.D. Cal. Apr. 5, 1993) .............................................. 7

In re Bally Total Fitness of Greater N.Y., Inc.,
  402 B.R. 616 (Bankr. S.D.N.Y. 2009), aff'd, Carrera Plaintiffs v. Bally Total Fitness
  of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.), 411 B.R. 142
  (S.D.N.Y. 2009) ...................................................................................................................... 12

In re Leibowitz,
  147 B.R. 341 (Bankr. S.D.N.Y. 1992) ................................................................................... 10

In re Motors Liquidation Co.,
  Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ......................... 10

Mazzeo v. Lenhart (In re Mazzeo),
  167 F.3d 139 (2d Cir. 1999) ................................................................................................... 10

Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection,
  474 U.S. 494 (1986) ................................................................................................................. 9

Reynolds v. Ala. Dep't of Transp.,
  CV-85-T-665-MHT, 2012 WL 1119559 (M.D. Ala. Mar. 8, 2012) ........................................ 7

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
  922 F.2d 984 (2d Cir. 1990) ..................................................................................................... 9

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
  907 F.2d 1280 (2d Cir. 1990) ................................................................................................. 10

Teachers Ins. & Annuity Ass'n of Am. v. Butler,
  803 F.2d 61 (2d Cir. 1986) ....................................................................................................... 9

Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),
  104 B.R. 659 (D.N.J. 1989) .................................................................................................... 15

**STATUTES**

11 U.S.C. § 362(a)(1) ...................................................................................................................9

11 U.S.C. § 362(d)(1) ...................................................................................................................9

A.R.S. § 33-810(B) .......................................................................................................................4

iii

ny-1068262

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this objection (the "**Objection**") to the *Motion for Clarification Regarding Relief from Stay,* filed by Gregory Balensiefer ("**Movant**"), on August 23, 2012 [Docket No. 1244] (the "**Motion**"). In support of hereof, the Debtors submit the Declaration of Jennifer Scoliard, dated October 29, 2012 (the "**Scoliard Decl.**"), attached hereto as **Exhibit 1**, and respectfully represent:

## PRELIMINARY STATEMENT

1. Movant seeks relief from the automatic stay to proceed with prepetition claims against Debtors Homecomings Financial, LLC ("**Homecomings**"), GMAC Mortgage, LLC ("**GMAC Mortgage**"), and Executive Trustee Services, LLC ("**ETS**" and collectively with Homecomings and GMAC Mortgage, the, "**Debtor Defendants**") in an action pending in the Maricopa County Superior Court in Arizona (the "**State Court Action**"), which Movant instituted on February 16, 2011. (Motion at ¶ 1; see Verified First Amended Complaint, Ex. E to Scoliard Decl.) According to the Motion, Movant seeks to pursue claims for equitable relief in the State Court Action in accordance with the Supplemental Servicing Order entered by this Court on July 13, 2012 (the "**Supplemental Servicing Order**").[1] Movant also seeks clarification from this Court that the Supplemental Servicing Order permits Movant to liquidate an award of attorneys' fees and costs in the event that he prevails on his equitable claims in the State Court Action. While the equitable claims Movant assert in the State Court Action are unique, Movant and the Debtors are prepared to stipulate that Movant may proceed with those

---

[1] See *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774].

claims under the Supplemental Servicing Order, or to the extent necessary, consent to limited relief from the automatic stay for this purpose. The Supplemental Servicing Order, however, does not exempt claims for attorneys' fees and costs from the imposition of the automatic stay. Any attempt by Movant to liquidate such claims in the State Court Action should be denied because Movant cannot satisfy his burden of establishing sufficient cause as to why such claims should be permitted to proceed notwithstanding the statutorily imposed breathing spell to which the Debtors are entitled under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.  Movant has not analyzed any of the relevant <u>Sonnax</u> factors in support of his request for relief from the stay, and has failed to satisfy his requisite burden of proof.

3.  For the above reasons, and as more fully set forth below, the Debtors respectfully request that this Court deny the Motion.

## BACKGROUND

A.  **General Chapter 11 Case Background**

4.  On the Petition Date, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). No trustee has been appointed in the Chapter 11 Cases.

5.  On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

6. On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T. Gonzalez, former Chief Judge of this Court, as examiner (the "**Examiner**").

B. **The State Court Action Background**

7. On December 2, 2005, Movant executed an adjustable rate note (the "**Note**") in the amount of $113,000 in favor of New Century Mortgage Corporation ("**New Century**"). Contemporaneously therewith, as security for the Note, Movant also executed a deed of trust (the "**Deed of Trust**") for the property known as 2808 West Rosewood Drive, Chandler, Arizona (the "**Property**") in favor of New Century. (Scoliard Decl. ¶ 4.)

8. The Note was endorsed in blank by New Century and the Deed of Trust was assigned to Mortgage Electronic Registration Systems, Inc., its successors and assigns. Homecomings was the initial servicer of Movant's loan until April of 2007, when GMAC Mortgage took over the servicing of Movant's loan. (Scoliard Decl. ¶ 5.)

9. The Motion contains a brief recitation of Movant's factual allegations and the procedural history of the litigation between the parties. As noted above, because the Debtors are not challenging Movant's right to pursue his equitable defenses in the State Court Action, Movant's allegations, which are not supported by a declaration, are wholly irrelevant to the relief requested. Nonetheless, Movant's allegations are both inaccurate and incomplete, and the Debtors reserve all rights in connection therewith.

10. In short, the State Court Action stems from an action filed by Movant on June 16, 2009 (the "**Prior State Court Action**") against the Debtor Defendants and others to enjoin the non-judicial foreclosure sale of the Property and to seek specific performance of a loan modification offered by GMAC Mortgage in August of 2008 (the "**2008 Loan Modification**"). (Scoliard Decl. ¶ 6.) The crux of the Prior State Court Action was whether the 2008 Loan Modification ever became effective. Id.

3

ny-1068262

11. On January 22, 2010, Movant, Homecomings and GMAC Mortgage reached a preliminary agreement to settle the Prior State Court Action and entered into a Settlement Agreement and Mutual Release in connection therewith (the "**Settlement Agreement**").[2] Under the Settlement Agreement, the parties agreed that they would update and enter into the 2008 Loan Modification. (See Ex. A to Motion; Scoliard Decl. ¶ 7.)[3]

12. Eventually, after repeated attempts to finalize the loan modification failed, and as Movant remained in default under the Note, GMAC Mortgage, through its affiliate, Executive Trustee Services, recommenced the non-judicial foreclosure sale (the "**Foreclosure Sale**") on the Property, rescheduling the sale date of the Property for February 24, 2011.[4] (Scoliard Decl. ¶ 8.)

13. Movant initiated the State Court Action on February 16, 2011. (Scoliard Decl. ¶ 9.) In the State Court Action, Movant alleges, *inter alia*, that the Debtor Defendants are in breach of the Settlement Agreement and asserts claims arising from the Debtor Defendants'

---

[2] See Ex. A to Motion.

[3] Although the Settlement Agreement has a confidentiality provision that expressly provides that the terms of the Settlement Agreement are confidential and shall not be disclosed, Movant filed a copy of the Settlement Agreement *and* the terms and conditions of the loan modification agreement as Exhibit A to the Motion. See id. The Debtors reserve all rights to bring a claim for breach of contract in connection therewith at the appropriate time.

[4] Pursuant to applicable Arizona law, the foreclosure sale had been postponed pending finalization of the loan modification, and was recommenced under the April 15, 2009 Notice of Trustee's Sale, (see Ex. D to Scoliard Decl.). See A.R.S. § 33-810(B):

> The person conducting the sale may postpone or continue the sale from time to time or change the place of the sale to any other location authorized pursuant to this chapter by giving notice of the new date, time and place by public declaration at the time and place last appointed for the sale. Any new sale date shall be a fixed date within ninety calendar days of the date of the declaration. After a sale has been postponed or continued, the trustee, on request, shall make available the date and time of the next scheduled sale and, if the location of the sale has been changed, the new location of the sale until the sale has been conducted or canceled and providing this information shall be without obligation or liability for the accuracy or completeness of the information. No other notice of the postponed, continued or relocated sale is required except as provided in subsection C of this section.

A.R.S. § 33-810(B)

4

ny-1068262

(i) alleged breach of contract, and (ii) alleged breach of the covenant of good faith and fair dealing, and seeking declaratory relief, and preliminary and permanent injunctive relief barring the sale of Movant's home. (See Complaint; Scoliard Decl. ¶ 9.) Movant also seeks specific performance of the Settlement Agreement, damages, and compensation for attorneys' fees and costs. (See Complaint; Scoliard Decl. ¶ 9.)

14. On March 1, 2011, an order was entered in the State Court Action granting a preliminary injunction enjoining the Debtor Defendants from proceeding with the Foreclosure Sale. (Scoliard Decl. ¶ 10; Ex. F.)

15. On November 15, 2012, Movant filed two proofs of claim, each in unliquidated amounts, against Homecomings (Number 4904) and GMAC Mortgage (Number 4918). (Scoliard Decl. ¶ 11.; Exs. G &H)

16. Counsel for Movant has informed the Debtors that Movant, by the Motion, does not intend to proceed with claims for monetary damages in the State Court Action at this time. Counsel for the Movant and the Debtor Defendants have conferred and are in agreement that the equitable relief sought by Movant in the State Court Action is permitted to continue under the Supplemental Servicing Order because such claims are state law defenses to foreclosure. The sole exception—and the only open issue with respect to the Motion—is the question of whether Movant is entitled to liquidate claims for attorneys' fees and court costs if Movant receives a judgment in his favor in the State Court Action.

17. Except with respect to the claims permitted to proceed under the Supplemental Servicing Order, Movant's claims for money damages, including the claims for attorneys' fees and costs, are stayed by the automatic stay as to the Debtors.

**OBJECTION**

### A.    Claims for Attorneys' Fees and Costs are Subject to the Automatic Stay

18.    Movant argues that, because the attorneys' fees and costs sought by Movant are incidental to Movant's claims for equitable relief, and because such equitable claims are permitted to proceed under the Supplemental Servicing Order, Movant asserts that his claims for attorneys' fees and costs should likewise be permitted to be liquidated in the State Court Action. There is no basis to assert that attorneys' fees and costs should be permitted to proceed pursuant to the Supplemental Servicing Order.

19.    There is no mention of attorneys' fees and costs in the Supplemental Servicing Order. In fact, the language of the order expressly leaves the automatic stay intact with respect to monetary claims. See Supplemental Servicing Order, ¶ 14(b) ("[A]bsent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) <u>for monetary relief of any kind and of any nature against the Debtors</u>, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim")…." (emphasis added)). Furthermore, this Court has repeatedly stated on the record in these Chapter 11 cases that monetary claims are stayed by the automatic stay.[5]

20.    To get around this insurmountable language in the Supplemental Servicing Order, Movant argues that attorneys' fees and costs ancillary to the equitable claims are not monetary claims. The cases Movant cites, however, do not provide legal support for this

---

[5] See, e.g., Transcript of Hearing at 42:13-16, In re Residential Capital, LLC, No. 12-12020 (Bankr. S.D.N.Y. July 10, 2012) (The Court: Okay, but Mr. Taggart, the one thing I want to be clear about is, I am not lifting -- I have not lifted the stay, and I'm not going to lift the stay to permit monetary claims to proceed against any of the debtors.")

conclusion. In Reynolds v. Alabama Department of Transportation, the United States District Court for the Middle District of Alabama considered whether a Chapter 13 debtor who had not disclosed a pending individual contempt claim it asserted against the defendants could ultimately proceed on such a claim given the lack of disclosure.[6] The Reynolds Court concluded that, because the debtors' claims for injunctive and declaratory relief would not add value to the bankruptcy estate, the court permitted such claims to proceed, along with a request for attorneys' fees. See Reynolds, 2012 WL 1119559, at *1. The Reynolds Court did not hold that attorneys' fees are not monetary claims. Likewise, Crommie v. California addresses the relief plaintiffs who prevail on discrimination claims under the Civil Rights Act of 1991 are entitled, as opposed whether a claim for attorneys' fees is a monetary claim. Crommie v. Cal., No. 89-4433-BAC, 1993 WL 106472, at *3 (N.D. Cal. Apr. 5, 1993).

21. Movant's acknowledgment that all that he is asking is to have the court in the State Court Action determine the propriety and amount of an award of fees and costs provides no comfort to the Debtors and runs counter to the policy—to protect the Debtors from having to defend claims and actions in hundreds of forums across the country—behind the automatic stay. The Bankruptcy Code provides an orderly and centralized claims process meant to prevent a debtor from being forced to litigate claims in a piecemeal, ad hoc manner. Permitting Movant to liquidate his attorneys' fees claims in the State Court Action would undermine this fundamental protection afforded to the Debtors.

22. Moreover, Movant's argument that, without relief to fix attorneys' fees and costs, he will be hampered because under Arizona state law, he will be unable to obtain an enforceable judgment with respect to the claims that are going forward until the attorneys' fee

---

[6] CV-85-T-665-MHT, 2012 WL 1119559 (M.D. Ala. Mar. 8, 2012)

7

ny-1068262

claims are fixed is premature. Because there is no judgment yet, Movant does not yet have a cognizable claim for attorneys' fees because such a claim presupposes that Movant will obtain a favorable judgment in the State Court Action. Moreover, the Debtors believe that given the imposition of the automatic stay, if Movant were to prevail on his equitable defenses, the court in the State Court Action would have the power to fashion appropriate final relief without an award of attorneys' fees.

23. Moreover, Movant has reserved his right to liquidate his contingent and unliquidated claims for attorneys' fees and cost in this Court by timely filing proofs of claims. Movant is no different than the thousands of other claimants in these cases who have asserted monetary claims against the Debtors, including a multitude of contingent and unliquidated claims. Movant's claims should be fixed through this Court's centralized claims resolution process.

24. In any event, because the Supplemental Servicing Order does not exempt claims against the Debtors for attorneys' fees or costs, Movant is required to make a showing that relief from the automatic stay to liquidate such claims in the State Court Action is warranted under section 362(d) of the Bankruptcy Code. As discussed in more detail below, Movant has not made the required showing and therefore the relief requested in the Motion should be denied.

B.  **Applicable Authority**

25. The automatic stay imposed by section 362(a) of the Bankruptcy Code is a core provision of bankruptcy law that promotes the reorganization process by providing the debtor with "a breathing spell from [its] creditors."[7] <u>Teachers Ins. & Annuity Ass'n of Am. v.</u>

---

[7] Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

> operates as a stay, applicable to all entities, of – (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the

8

ny-1068262

Butler, 803 F.2d 61, 64 (2d Cir. 1986) (citation omitted) (holding that the automatic stay applied to an appeal that otherwise would "distract . . . debtor's attention from its primary goal of reorganizing." Id. at 65). It affords "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted). Likewise, it allows the debtor to manage and, where appropriate, centralize all creditor actions against property of the estate, "so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990).

26.    Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause." See 11 U.S.C. § 362(d)(1). In the context of stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test to determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues, (2) the lack of any connection with or interference with the bankruptcy case, (3) whether the other proceeding involves the debtor as a fiduciary, (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action, (5) whether the debtor's insurer has assumed full responsibility for defending the action, (6) whether the action primarily involves third parties, (7) whether litigation in another forum would prejudice the interests of other creditors, (8) whether the judgment claim arising from the other action is subject to equitable subordination, (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor, (10) the interests of judicial economy and the expeditious and economical resolution of litigation, (11) whether the parties are ready for trial in the other proceeding and (12) the impact of the stay on the parties and the balance of harms.

---

debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

ny-1068262

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate…."). In a given case, however, not all of the factors will be relevant, and the court may disregard irrelevant factors. See Mazzeo, 167 F.3d at 143.

27.     The moving party bears the initial burden to demonstrate, using the relevant Sonnax factors, that good cause exists for lifting the stay.[8] The movant's burden is especially heavy if it is an unsecured creditor. "[T]he general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[9]

### C.     Analysis of the Relevant Sonnax Factors

28.     Here, the Movant has not performed any analysis of the Sonnax factors, and has failed to satisfy his burden of proof. However, even a cursory analysis of the relevant Sonnax factors[10] demonstrates that the stay should not be lifted.

29.     The second Sonnax factor (interference with the bankruptcy case) weighs in favor of denying the Motion. Significant attention must be devoted to address the

---

[8]   See Sonnax, 907 F.2d at 1285. See Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

[9]   In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

[10]  Sonnax Factors numbers 3 and 9 are not applicable to the facts here. The Debtors do not address Sonnax Factors 1 and 8 in their objection, but reserve all right with regard thereto.

10

extraordinary operational difficulties that arise in complex Chapter 11 cases such as these, particularly given that these Chapter 11 cases are in still in a relatively early phase.  In addition to addressing day-to-day challenges, it is of the utmost importance that in the near term, the Debtors devote their complete efforts on the critical tasks necessary to achieve a successful resolution of these cases— namely, maximizing the value of their assets through consummating the sales of their servicing platform and legacy assets approved by the Court on November 21, 2012, continuing the prosecution of the RMBS Settlement, complying in full with the Examiner's investigation, continuing negotiations and consultations with its various constituents in an effort to promulgate and confirm a Chapter 11 plan, and proceeding with the Chapter 11 claims resolution process.  Granting stay relief at this juncture would undoubtedly invite countless other lift stay motions from the Debtors' myriad other prepetition claimants, opening the "floodgates" to litigation which would impose a burden on the Debtors and their estates, thereby depriving them of the "breathing spell" the automatic stay provides and distracting them from addressing the critical tasks necessary to achieve a successful resolution of the Chapter 11 cases.  The Bankruptcy Code provides an orderly and centralized claims process meant to prevent a debtor from being forced to litigate claims in a piecemeal, ad hoc manner.  Granting relief from the stay would in effect require the Debtors to conduct the claims resolution process in hundreds of forums across the country.  (Scoliard Decl. ¶13-14.)

30. The fourth Sonnax factor (creation of a specialized tribunal) does not support relief from the stay because no specialized tribunal has been created to hear the attorneys' fees and costs claims brought in the State Court Action.  (Scoliard Decl. ¶ 15.)  The Bankruptcy Code specifically contemplates resolving such claims against the Debtors via a centralized claims resolution process shepherded by the bankruptcy courts.  This Court has

11

recognized that it can interpret and apply state law in resolving claims through the bankruptcy process.[11]  Movant's claims for attorneys' fees and costs are no exception.

31.  The fifth <u>Sonnax</u> factor (assumption of defense by insurer) does not support relief because the Debtors pay their legal defense fees and costs out-of-pocket for this action (and many others).  As a result, requiring the Debtors to defend the attorneys' fees and costs claims will result in increased out-of-pocket defense costs for outside counsel fees and expenses alone. (Scoliard Decl. ¶ 16.)

32.  The sixth <u>Sonnax</u> factor (whether the action primarily involves third parties) does not support relief because each of the Debtors are named defendants in the State Court Action, and, if the State Court Action were allowed to go forward, each of the Debtors would be required to actively participate in the attorneys' fees and costs claims to avoid facing an adverse judgment.[12]

33.  The seventh <u>Sonnax</u> factor (whether litigation in another forum would prejudice the interests of other creditors) also does not support relief, because the interests of the Debtors' other creditors will be prejudiced if the automatic stay is lifted to allow the attorneys' fees claims to proceed against the Debtors at this juncture in the Chapter 11 Cases.  Having to defend such claims would incrementally deplete estate resources, thereby prejudicing other creditors.  Of greater significance, lifting the stay would also expose the Debtors to have to defend countless other lift stay motions seeking to liquidate attorneys' fees and costs in their cases.  This would impose a heavy burden on the valuable time and efforts of the Debtors'

---

[11] See, e.g., <u>In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. 616, 624 (Bankr. S.D.N.Y.), <u>aff'd</u>, <u>Carrera Plaintiffs v. Bally Total Fitness of Greater N.Y., Inc. (In re Bally Total Fitness of Greater N.Y., Inc.)</u>, 411 B.R. 142 (S.D.N.Y. 2009) ("This Court has significant experience in applying state law….").

[12] See <u>City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's] estate, suggesting that continuance of the stay [was] proper.").

ny-1068262

employees and retained professionals, tax the Debtors' financial resources, and result in a wholly unnecessary distraction to the Debtors' focus on achieving the objectives of the Chapter 11 Cases—the maximization of value for creditors. (Scoliard Decl. ¶ 14.)

34. The tenth and eleventh Sonnax factors (judicial economy and readiness for trial, respectively) both weigh in favor of denying relief from the stay. The issue of prevailing party attorneys' fees is not currently being litigated in the State Court Action, and presumably the court in the State Court Action would only take up the matter if and when Movant prevails on his equitable defense to the foreclosure.

35. The Debtors' priority at this time is in ensuring a speedy and effective reorganization process, which may be hindered if they are forced to litigate this or any other stayed suit (or portion thereof) during the pendency of the Chapter 11 cases, and particularly during this critical phase of the Chapter 11 cases. (Scoliard Decl. ¶¶ 13-14.) Thus, the interests of judicial economy and the economical resolution of litigation would best be served by resolving Movant's attorneys' fees and costs claims against the Debtors through the uniform bankruptcy claims process, which will be utilized to address the thousands of claims filed against these estates, including claims asserted in the hundreds of legal actions pending against the Debtors.

36. The twelfth Sonnax factor (balance of harms) weighs in favor of denying the Motion. Movant has not demonstrated how the continued suspension of claims for legal expenses results in any material prejudice to Movant, particularly where he is able to come to this Court to fix such claims. Even if Movant obtains a judgment in the State Court Action, claims for attorneys' fees and costs will be accorded general unsecured claims against the Debtors' estates. Movant will experience no great benefit if awarded such claims sooner rather

than later (which contingent claims may never come to fruition).  On the other hand, the cost to the Debtors of lifting the automatic stay is substantial, particularly in light of the critical hearings and deadlines facing the Debtors over the course of the next several months.  (See Scoliard Decl. ¶¶ 13-14.)  As recognized by this Court in connection with other motions for stay relief,[13] the Debtors are working diligently towards consummating the asset sales, obtaining approval of the RMBS settlement, complying with the Examiner investigation, and participating in the chapter 11 plan process.  In the meantime, the Debtors need the protection of the automatic stay to afford themselves the "breathing space" necessary to allow them to restructure and preserve the value of their assets for the benefit of their creditors.  Since the first motion seeking relief from stay was filed, dozens of additional motions seeking relief from the automatic stay to proceed with litigation have been filed and the Debtors and their counsel have received several additional informal requests for such relief.  Forcing a debtor to defend against suits and proceedings brought in other venues distracts and hinders a debtor from focusing on its own reorganization efforts.[14]  The balance of the harms clearly favors maintaining the automatic stay with respect to the State Court Action.

---

[13]  See, e.g., Transcript of Hearing at 111:24-112:6, 114:6-8, In re Residential Capital, LLC, No. 12-12020 (Bankr. S.D.N.Y. Oct. 10, 2012) ("Court:  Now is clearly not the time to lift the stay to permit a trial to go forward in district court in Washington-- the state of Washington.  And I say that because of the very, very large number of contested matters and other important events in this Chapter 11 case that's scheduled between now and the end of January.  So on the basis of burden alone, I will not lift the stay at this point in time. . . [T]he debtors appropriately are consumed with very, very important matters that are critical to this Chapter 11 case.").

[14]  See Bally, 402 B.R. at 624 (finding that class actions distract the debtor from the central tasks of stabilizing operations and cash flows and hence harms all creditors); Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.), 104 B.R. 659, 666 (D.N.J. 1989) (finding that allowing debtors a sufficient window to reorganize their estates serves the public interest more than allowing class actions to be resolved sooner).

ny-1068262

## CONCLUSION

37.     Based on the weight of settled authority and its application to the Motion as described above, the Debtors respectfully submit that the Movant has failed to meet his burden.  Substantially all of the applicable Sonnax Factors weigh heavily in favor of maintaining the automatic stay as to Movant's claims for legal fees and costs.  As such, the Court should deny the Motion.

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an Order denying Movant's request to seek attorneys' fees and costs in the State Court Action and grant such other relief as the Court deems proper.

New York, New York                 /s/ Norman S. Rosenbaum
Dated: December 13, 2012           Gary S. Lee
                                   Norman S. Rosenbaum
                                   MORRISON & FOERSTER LLP
                                   1290 Avenue of the Americas
                                   New York, New York 10104
                                   Telephone: (212) 468-8000
                                   Facsimile: (212) 468-7900

                                   *Counsel to the Debtors and
                                   Debtors in Possession*