# Exhibit 2

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 2 of 19

Page 1

Not Reported in F.Supp., 1993 WL 106472 (N.D.Cal.), 61 Empl. Prac. Dec. P 42,286
**(Cite as: 1993 WL 106472 (N.D.Cal.))**

United States District Court, N.D. California.
Maurice F. CROMMIE, Plaintiff,
v.
STATE OF CALIFORNIA, PUBLIC UTILITIES COMMISSION, et al., Defendants.
Arthur A. MANGOLD, Plaintiff,
v.
STATE OF CALIFORNIA, PUBLIC UTILITIES COMMISSION, et al., Defendants.

Nos. C 89–4433 BAC, C 90–1150 BAC.
April 5, 1993.

MEMORANDUM DECISION AND SCHEDULING ORDER

CAULFIELD, District Judge.

**\*1** This order has two purposes: (1) to memorialize some of the court's rulings made orally during trial, and (2) to set forth a schedule for the issues remaining in this case.

MEMORANDUM DECISION

Comments made by counsel during trial and in subsequent filings have suggested to the court that the reasons behind the court's decisions were not always clear to counsel. To remedy this, the court has herein transcribed a number of its rulings.

A. *The Influence of the 1991 Civil Rights Act on the Jury Instructions Re Disparate Treatment and Disparate Impact*

On November 21, 1991, Congress passed the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (the "Act") (codified in sections of 2 and 42 U.S.C.), and shortly before this case went to trial, the Ninth Circuit found the Act to be retroactive, *Estate of Reynolds v. Martin,* 985 F.2d 470 (9th Cir.1993). The Act was passed in response to a number of recent Supreme Court decisions interpreting Title VII, § 3(4), 105 Stat. at 1071, including *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775 (1989), and *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115 (1989). In *Price Waterhouse,* the Supreme Court held that a Title VII plaintiff who proves that a protected characteristic was a motivating factor in the defendant's employment decision may not recover damages if the defendant proves he would have made the same employment decision in any event. Section 107(b) of the Civil Rights Act of 1991, 105 Stat. at 1075, endorses a modified version of *Price Waterhouse* : When an employer shows that she would have taken the adverse employment action in the absence of the plaintiff's protected characteristic, the plaintiff may not recover monetary or injunctive relief but is entitled to declaratory relief and attorneys' fees. In *Wards Cove,* the Supreme Court held that a Title VII plaintiff who relies on the disparate treatment theory of discrimination must prove both that the defendant's employment practices have a substantial disparate impact and that the practice is not job-related. The 1991 Civil Rights Act § 105(a), 105 Stat. at 1074, however, places the burden of proving job-relatedness on the defendant.

Defendants correctly note that §§ 105(a) and 107(b) amend Title VII, not the ADEA. However, defendants incorrectly conclude that the court therefore must ignore the Act altogether. *Price Waterhouse* and *Wards Cove,* as Title VII cases, are persuasive for claims brought under the ADEA. *See, e.g., Rutherford Food Corp. v. McComb,* 331 U.S. 722, 723, 67 S.Ct. 1473, 1473–74 (1947). "Persuasive authority" does not mean "mandatory authority." The Ninth Circuit has never applied *Wards Cove* to the ADEA, and in light of § 105(a) of the 1991 Civil Rights Act, this court believes the Ninth Circuit never will; accordingly, the court instructed the jury that defendants had the burden of proving job-relatedness. Section 107(b), on the other hand, does not restore earlier case law—it creates an entirely new remedy. The fact that this remedy exists for Title VII litigants does not necessarily mean that ADEA plaintiffs are entitled to it. Accordingly, the court chose not to instruct the jury that the plaintiffs would be entitled to declaratory relief if the jury found that their ages had been a motivating factor in the PUC's promotional decisions.[FN1]

B. *Age Discrimination as the Basis for the Tort of Wrongful Failure to Promote in Violation of Public Policy*

**\*2** Clearly, California law supplies a cause of action in tort to workers who are denied promotions in retaliation for challenging their employers' unlawful

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 3 of 19

Page 2

Not Reported in F.Supp., 1993 WL 106472 (N.D.Cal.), 61 Empl. Prac. Dec. P 42,286
**(Cite as: 1993 WL 106472 (N.D.Cal.))**

business practices. *See Gantt v. Sentry Ins.,* 1 Cal. 4th 1083, 4 Cal.Rptr.2d 874 (1992). However, the question of whether age discrimination is by itself a proper basis for the tort of wrongful employment action in violation of public policy is subject to debate. *Compare Soules v. Cadam, Inc.,* 2 Cal.App. 4th 390, 401–02, 3 Cal.Rptr.2d 6, 12 (1991), review denied, *with Dean v. Jet Serv. W., Inc.* 782 F.Supp. 498 (S.D.Cal.1991). The court concluded that the most sensible approach to this issue was to instruct the jury that either age discrimination or retaliation could form the basis for the tort, and then to ask the jury to note on the special verdict form which basis (if any) they had used in finding that plaintiffs had been denied promotions in violation of public policy. The question could thereby be preserved for appeal without requiring a new trial if the Ninth Circuit held that age discrimination was not a proper basis for the tort.

C. *The Definition of the Protected Group Under the ADEA*

In their statistical evidence, plaintiffs attempted to show that age was negatively related to promotions at the PUC—the older you were, the lower your chances of being promoted. Defendants argued that plaintiffs' evidence was insufficient as a matter of law. According to defendants, plaintiffs had to show that people within the protected group were less likely to be promoted than people outside of it—*i.e.,* that there had to be a statistically significant disparity at the age 40 line.

The ADEA makes it unlawful to discriminate on the basis of age against a person who is age 40 or over in favor of one who is younger, whether or not the younger person is over age 40. 29 C.F.R. § 1625.2(a); *see Douglas v. Anderson.* 656 F.2d 528 (9th Cir.1981) (54–year–old replaced by 49–year–old stated prima facie case). Accordingly, at plaintiffs' request, the court modified its proposed jury instructions to reflect to § 1625.2(a). The court denied defendants' motion for a directed verdict on the disparate impact claims for the same reason.

D. *Defendants' Motion to Disqualify Plaintiffs' Attorney*

On October 23, 1992, plaintiffs' counsel filed notices of appearance in *EEOC v. State of Cal. Pub. Utils. Comm'n,* No. C–90–0378 BAC, and *EEOC v. State of Cal. Pub. Utils. Comm'n,* No. C–91–2195 BAC, on behalf of class members opposed to the proposed consent decrees. Some of the persons on whose behalf plaintiffs' counsel appeared were also scheduled to be called as witnesses in *Crommie* and *Mangold,* and on the morning trial was to begin defense counsel moved to disqualify plaintiffs' counsel. Defendants argued that the joint representation violated Rule 2–100 of the Rules of Professional Conduct of the State Bar of California.

   *3 Rule 2–100 provides:

   (A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

   (B) For purposes of this rule, a "party" includes:

      (1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or

      (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for whose purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

   (C) This rule shall not prohibit:

      (2) Communication initiated by a party seeking advice or representation from an independent lawyer of the party's choice....

The court denied defendants' motion for two reasons. First, it was untimely. Plaintiffs' counsel filed an appearance in the EEOC cases four months before trial, yet defendants said nothing until the day trial was to begin. Second, plaintiffs' counsel stated to the court that his representation was limited to opposing the proposed consent decrees in the EEOC cases. Given the limited purpose for which plaintiffs' counsel represented the class members, the court does not see what plaintiffs' counsel could have learned that would

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 4 of 19

Page 3

Not Reported in F.Supp., 1993 WL 106472 (N.D.Cal.), 61 Empl. Prac. Dec. P 42,286
**(Cite as: 1993 WL 106472 (N.D.Cal.))**

bind the PUC in the *Crommie* and *Mangold* cases. In other words, there was no conflict of interest. The court notes further that, even if such matters were discussed, the conversations would probably come within the exception of 2–100(C)(2).

SCHEDULING OF REMAINING ISSUES

In addition to monetary relief, plaintiffs who prevail on ADEA claims are entitled to equitable relief, costs, and attorneys' fees. 29 U.S.C. § 626(b); 29 U.S.C. § 216(b). Thus far, plaintiffs have filed a request for injunctive relief and an accounting of their costs. The court anticipates that plaintiffs will move for attorneys' fees shortly. In the interest of judicial economy, the court wishes to have these issues consolidated for oral argument. Accordingly, if plaintiffs' intend to request attorneys' fees, they must do so no later than Monday, April 19, 1993. Defendants' opposition, if any, must be filed no later than Monday, April 26. Plaintiffs need not file a reply. Oral argument on plaintiffs' requests for injunctive relief, costs, and attorneys' fees is hereby set for Friday, May 7 at 10:00 a.m. in Courtroom G.

IT IS SO ORDERED.

> FN1. The court asked the jury to make element-specific findings on the special verdict form, so that a new trial could be avoided if the Ninth Circuit reversed this court's rulings regarding the applicability of § 107(b).

N.D.Cal.,1993.
Crommie v. State of Cal.
Not Reported in F.Supp., 1993 WL 106472 (N.D.Cal.), 61 Empl. Prac. Dec. P 42,286

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re MOTORS LIQUIDATION COMPANY, et al., Debtors.
Walter J. Lawrence, Appellant,
v.
Motors Liquidation Company, Appellee.

Nos. 09–50026 (REG), 10 Civ. 36(RJH).
Nov. 17, 2010.

### MEMORANDUM OPINION AND ORDER

RICHARD J. HOLWELL, District Judge.

*\*1* Appellant Walter J. Lawrence, appearing *pro se,* appeals from a judgment of the United States Bankruptcy Court for the Southern District of New York denying his motion for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code. Appellant seeks relief to proceed with an action he filed against General Motors ("GM"), the predecessor in interest to Appellee Motors Liquidation Company ("MLC"). Appellant contends that the Bankruptcy Court lacked subject matter jurisdiction over his motion and that the Bankruptcy Court erred in denying him relief. For the reasons stated below, the Court finds that the Bankruptcy Court had jurisdiction to consider Appellant's motion to lift the stay and did not abuse its discretion in denying that motion.[FN1]

> FN1. On September 21, 2010, Appellant also filed a "Motion for the Court to Rule on Appellant's Pending Appeal from the United States Bankruptcy Court." (Docket No. 8.) The Court's disposition of Appellant's appeal in this order vitiates Appellant's motion, and that motion is hereby dismissed as moot.

### BACKGROUND

The following facts are taken from Appellant's motion for relief from the automatic stay filed in the bankruptcy court. *See In re Motors Liqudiation Co.,* Ch. 11 Case No. 09–50026 (Bankr.S.D.N.Y.) (Docket No. 4202) ("App.Mot."). Appellant was an employee of GM until he retired on March 1, 1993. (*See* App. Mot. at 2–3.) As such, Appellant was a beneficiary of the General Motors Hourly–Rate Employees Pension Plan ("the Pension Plan") which was governed by the General Motors/United Auto Workers Pension Plan Agreement ("the Agreement"). (*See* App. Mot. at 2–3.)

On May 14, 2007, the Pension Plan wrote to Appellant informing him that Appellant had received $32,985.00 in overpayments and that Appellant was required to remit such overpayments to the Pension Plan. (*See* App. Mot. at 24.) The Pension Plan sent Appellant a second notice in September 2007, but Appellant refused to remit the overpayments. The Pension Plan then began reducing Appellant's ongoing payments to satisfy the outstanding overpayments. (*See* App. Mot. at 24–25.)

Appellant brought suit against the Pension Plan and GM in the United States District Court for the Middle District of Florida on October 9, 2007 alleging that GM and the Pension Plan had violated the Employee Retirement Income Security Act ("ERISA") by wrongfully reducing his pension payments and diverting some of those payments to the IRS to satisfy a tax levy against Appellant. (*See Walter J. Lawrence v. General Motors Hourly–Rate Employee Pension Plan,* 5:07–CV–408 OC (M.D.Fla.) (Docket No. 1) ("the ERISA suit").) Appellant amended his complaint in February 2008 and the parties subsequently filed cross motions for summary judgment, which remain pending. (*See* App. Br. at 11; App. Mot. at 25–26, 31.)[FN2]

> FN2. Appellant also seems to have filed a series of other motions in his ERISA suit, including motions to strike affirmative defenses, various discovery motions, and a motion for recusal. (*See* App. Mot. at

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 6 of 19

Page 2

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

31–33.) Thereafter, the United States District Court for the Middle District of Florida entered an order enjoining Appellant from filing any other documents with that court pending disposition of the parties' motions for summary judgment. (*See* App. Mot. at 33 .)

On June 1, 2009, MLC—an entity formed in conjunction with the United States Treasury to reorganize GM—filed a Title 11 bankruptcy petition in the bankruptcy court in this district. Pursuant to 11 U .S.C. § 362(a), the bankruptcy petition triggered the so-called "automatic stay" of all pre-petition litigation against GM which, in MLC's case, included the ERISA suit. Appellant filed a motion in the bankruptcy court for this district seeking relief from the automatic stay to allow the ERISA suit to proceed. (*See* App. Mot .; App. Br. at 7.) In an opinion from the bench after a hearing on November 6, 2009, Bankruptcy Judge Gerber denied Appellant's motion and later entered an order to that effect on November 24, 2009. (*See id.; see also* Tr. of Hr'g, Nov. 6, 2009, *In re Motors Liquidation Co.,* 09–50026 (Bank.S.D.N.Y.) (Docket No. 4416) ("Hr'g Tr.").) On December 3, 2009, Appellant filed a notice of appeal of that order to this court.

### STANDARD OF REVIEW

***2** "Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's conclusions of law de novo and reviews findings of fact for clear error." *In re Cavalry Const., Inc.,* 428 B.R. 25, 29 (S.D.N.Y.2010); *see also In re Bayshore Wire Prods. Corp.,* 209 F.3d 100, 103 (2d Cir.2000) ( "Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, [and] its conclusions of law de novo ...." (internal citations omitted). A district court reviews a bankruptcy court's denial of a motion for relief from the automatic stay for abuse of discretion. *See In re Dairy Mart Convenience Stores, Inc.,* 351 F.3d 86, 91 (2d Cir.2003) ("The decision to lift an automatic stay is left to the discretion of the bankruptcy court...."); *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990).* In such a review, the district court considers not whether it would have made the same decision, but only whether the decision was reasonable. *See In re Jamesway Corp.,* 179 B.R. 33, 39 (S.D.N.Y.1995).

### DISCUSSION
### A. Subject Matter Jurisdiction

Despite having moved the bankruptcy court to grant relief from the automatic stay, Appellant now contends that the bankruptcy court did not have jurisdiction over that motion. Appellant argues that, because the terms of the Agreement prohibited GM from transferring beneficial interests in the Pension Plan, the pension benefits at issue in the ERISA suit are not part of the bankruptcy estate.

Appellant's arguments are misplaced. Section 1334 of title 28 of the United States Code provides that the federal "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under 28 U.S.C. § 157(a), a "district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). "In this district, by standing order under 28 U.S.C. § 157(a), the district court refers all cases 'arising under,' 'arising in,' or 'related to' Title 11 proceedings to the bankruptcy court." *In re 131 Liquidating Corp.,* 222 B.R. 209, 211 (S.D.N.Y.1998) (citing Order of Acting Chief Judge Robert J. Ward, July 10, 1984). Accordingly, the bankruptcy court had jurisdiction if Appellant's motion concerned a proceeding "arising under title 11, or arising in or related to cases under title 11."

Appellant's motion was plainly a proceeding "arising under title 11." Not only does the provision governing the automatic stay from which Appellant seeks relief appear in 11 U.S.C. § 362, but Title 11 also defines "motions to terminate, annul, or modify the automatic stay" as "core proceedings" which reside "at the heart of federal bankruptcy power."

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 -
Transcripts and Unreported Decisions    Pg 7 of 19

Page 3

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

*Norkin v. DLA Piper Rudnick Gray Cary, LLP,* No. 05 Civ. 9137, 2006 WL 839079, at *3 (S.D.N.Y. Mar. 31, 2006). Accordingly, courts in this Circuit have consistently held that bankruptcy courts have jurisdiction over motions for relief from the automatic stay. *See, e.g., Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.,* 156 B.R. 890, 891 n. 2 (N.D.N.Y.1993) ("A motion to terminate, annul, or modify the automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157(2)(G) and is, therefore, a proceeding properly referred to a bankruptcy judge under 28 U.S.C. § 157."); *In re Gibson & Cushman Dredging Corp.,* 100 B.R. 634, 637 (E.D.N.Y.1989) ("[A] motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). As such, the Bankruptcy Court was empowered to enter judgment on that branch of the motion.") The same was true of the bankruptcy court here.

**B. Relief from the Automatic Stay**

   ***3** Motions for relief from the automatic stay are governed by 11 U.S.C. § 362(d), which provides in relevant part:

   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

   (2) with respect to a stay of an act against property under subsection (a) of this section, if—

   (A) the debtor does not have an equity in such property; and

   (B) such property is not necessary to an effective reorganization;

   11 U.S.C. § 362(d).

   Apparently challenging the substance of the bankruptcy court's denial of relief, Appellant argues that he "met his burden of proof under 11 U.S.C. § 362 ... because Debtor has no equity in the property that is excluded from the estate as a result of debtor's agreement with the UAW to include within the term of the GM/UAW ERISA and IRC supplemental pension plan the anti-alienation and anti-assignment clause." (App. Br. at 2.) That is, Appellant appears to argue that the provisions of the Agreement prohibiting GM from transferring beneficial interests in the Pension Plan deprived MLC of any equity in the property for purposes of Section 362(d)(2).

   This argument is directed at the wrong section of Section 362. "The legislative history makes clear that § 362(d)(2) is aimed at protecting a creditor's right to foreclosure, *not* a creditor's right to pursue any form of litigation against the debtor in another court." *In re Northwest Airlines Corp.,* No. 05–17930, 2006 WL 2583647, at *3 n. 2 (Bankr.S.D.N.Y. Aug. 28, 2006) (emphasis added); *see also* S.Rep. No. 95–589, at 5 (1978) ("In cases where the single asset of the debtor is *real property,* the court shall grant relief from the stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure.") (emphasis added). Since Appellant's ERISA action is not an action to enforce a secured interest in real property, Section 362(d)(2) does not apply and his motion for relief from the stay can only be granted for "cause" under Section 362(d)(1). *See Sonnax,* 907 F.2d at 1285 ("Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable.")

   In considering whether "cause" exists to grant relief from an automatic stay under Section 362(d)(1), courts in this Circuit apply a multifactor test pursuant to the Second Circuit's decision in *In re Sonnax Industries, Inc.,* 907 F.2d 1280 (2d Cir.1990). In *Sonnax,* the Second Circuit identified twelve factors relevant to a "cause" determination:

   (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 8 of 19

Page 4

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

**\*4** *Id.* at 1286. The bankruptcy court here concluded that the *Sonnax* factors weighed strongly against granting Appellant relief from the automatic stay. That decision was not an abuse of discretion.

Focusing on the second, seventh, and twelfth *Sonnax* factors, the bankruptcy court found that the *Sonnax* factors weighed against relief because, regardless of whether beneficial interests in the Pension Plan were property of the MLC estate, allowing Appellant to proceed with the ERISA suit would force MLC to expend estate resources to defend that action. Hence the bankruptcy court found that relief "would prejudice the interests of other creditors" and that there was no "lack of any connection with or interference with the bankruptcy case." (*See* Hr'g Tr. at 39:25–41:3.) By the same token, in assessing the "impact of the stay on the parties and the balance of harms," the bankruptcy court noted that denying Appellant relief would conserve the resources of the MLC estate without prejudicing Appellant because the ERISA suit against MLC could and would be adjudicated as part of the claims allowance process under Title 11. (*See* Hr'g Tr. at 41:4–42:4.) Far from an abuse of discretion, that reasoning accorded with the general rule that, "[g]enerally, unsecured claims should not be granted relief from the stay because to do so would result in a violation of one of the fundamental concepts of bankruptcy law[:] that there should be an equality of distribution among creditors. An unsecured claimant should not be entitled to obtain a distributive advantage over other unsecured claimants who are similarly enjoined from seeking distribution by any method other than in accordance with the distributive scheme under the Bankruptcy Code." *In re Leibowitz,* 147 B.R. 341, 345 (Bankr.S.D.N.Y.1992).

The bankruptcy court also found that the first *Sonnax* factor, "whether relief would result in a partial or complete resolution of the issues", weighed against relief because allowing the ERISA suit to proceed would merely enable the United States District Court for the Middle District of Florida to resolve the pending cross motions for summary judgment. (Hr'g Tr. at 42:5–19.) The outcome of those motions is at best uncertain, and it seems unlikely that the Florida court will grant a *plaintiff's* motion for summary judgment. *Cf. Norden v. Samper,* 503 F.Supp.2d 130, 136 (D.D.C.2007) ("This is that rare case in which a plaintiff wins on summary judgment."). Hence the bankruptcy court reasonably found that granting Appellant relief from the stay would more likely expose MLC to protracted litigation rather than speedily resolve the ERISA suit.

For much the same reason, the bankruptcy court found that the parties were not ready for trial in the ERISA action and that the eleventh *Sonnax* factor weighed against relief. (*See* Hr'g Tr. at 46:19–23.) That analysis, too, was far from an abuse of discretion. Appellant contends that he has completed discovery and that the "the district judge is right on the doorstep of resolving this case" (Hr'g Tr. at 25:7–8), but the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 9 of 19

Page 5

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

*\*5* The bankruptcy court also found that the United States District Court for the Middle District of Florida was not a "specialized tribunal" with any unique expertise in adjudicating ERISA actions. (*See* Hr'g Tr. at 43:9–14.) That decision was more than reasonable, for this Court has found bankruptcy courts well-equipped to adjudicate statutory actions involving employee benefits. *See, e.g., See In re Bally Total Fitness of Greater New York, Inc.,* 411 B.R. 142, 1471–148 (S.D.N.Y.2009) (finding no need for a specialized tribunal in wage and hour class action). *Cf. In re White Motor Corp.,* 42 B.R. 693, 705–706 (N.D.Ohio 1984) (finding no need for bankruptcy court to withdraw under Section 157 from suit involving ERISA and tax issues).

In addition, the bankruptcy court found that the presence of the Pension Plan as a defendant in Appellant's ERISA suit weighed against relief because the automatic stay would not apply to a suit against the Pension Plan alone. (Hr'g Tr. at 43:22–44:13.) *Cf. Buchanan v. Golden Castin Corp. Hourly Health Benefit Plan,* No. No. 4:03–CV–151, 2003 WL 22951936, at \*3 (S.D.Ind. Oct. 10, 2003) (holding that "a stay of claims against the employer does not stay claims against the employee benefit plan") (citing *Brengettys v. LTV Steel Hourly Pension Plan,* 241 F.3d 609, 609 n. 1 (7th Cir.2001)). Accordingly, Appellant could vitiate the effect of the automatic stay by severing the ERISA suit into two actions, one against the Pension Plan alone in the Middle District of Florida and another against MLC in the bankruptcy court. The fact that Appellant has the power to move his ERISA suit forward weighs strongly in favor of denying him relief.

Finally, the bankruptcy court found that "the interests of judicial economy and the expeditious and economical resolution of litigation" weighed against relief because allowing Appellant to proceed with his classic pre-petition action would open the "floodgates" to thousands of other litigants with garden variety claims against the MLC estate. (*See* Hr'g Tr. at 44:20–45:10.) That would usher in the very state of affairs the automatic stay was enacted to prevent. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989 (2d Cir.1990) ("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.").

In making these findings, the bankruptcy court clearly did not abuse its discretion. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S.Rep. No. 95–989, at 54–55 (1978). The only reason related to the *Sonnax* factors that Appellant has advanced as to why MLC should be stripped of the fundamental debtor protection embodied in the stay is that doing so would prevent the bankruptcy court from being "further burdened by more motions for pro hac vice attorneys to come in here and try to hear issues ... that have already been heard by the district court judge in Ocala, Florida...." (Hr'g Tr. at 23:9–24:13.) However, the minimal benefit, if any, of freeing the bankruptcy court of such routine motions is dwarfed by the burden on MLC of defending the ERISA suit outside the established claims process. Under *Sonnax,* that conclusion strongly militates against relief, particularly where Appellant could vitiate any burden to any party by severing his suit. In reaching the same conclusion, the bankruptcy court did not abuse its discretion.

## CONCLUSION

*\*6* For the foregoing reasons, the bankruptcy court's denial of Appellant's motion for relief from the automatic stay is AFFIRMED, Appellant's appeal [1] is DISMISSED, and Appellant's motion [8] to decide this appeal is DISMISSED as moot. The Clerk is directed to close this case.

SO ORDERED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 -
Transcripts and Unreported Decisions    Pg 10 of 19

Page 6

Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)
**(Cite as: 2010 WL 4966018 (S.D.N.Y.))**

S.D.N.Y.,2010.
In re Motors Liquidation Co.
Not Reported in F.Supp.2d, 2010 WL 4966018 (S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Slip Copy, 2012 WL 1119559 (M.D.Ala.)
**(Cite as: 2012 WL 1119559 (M.D.Ala.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Alabama,
Northern Division.
Johnny REYNOLDS, et al., Plaintiffs,
v.
ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.

No. CV–85–T–665–MHT.
March 8, 2012.

**REPORT AND RECOMMENDATION**
C.A. GONZÁLEZ, Special Master.

**I.**

*1 This case is before the special master on remand from the district court of the R & R on the individual-contempt claim of Gary Smith. (Hereinafter "ICC"). By order dated November 28, 2011, Docket No 8743, the Court rejected without prejudice the Smith R & R and remanded defendants' motion for summary judgment to the special master. In remanding the motion, the court noted the following:

> It appears that the special master was unaware that Smith had retired and thus the special master could not have taken into consideration what the implications are from Smith's retirement.
>
> ...
>
> [Therefore,] Smith's individual-contempt claim is referred back to the special master for further proceedings in light of claimant Smith's retirement.
>
> Docket No 8743 at 2, 3.

The parties were given a chance to brief the issues on remand. Docket No 8778 (scheduling order). Only the defendants chose to do so. Docket No 8785. On remand, the defendants argue two points: First, that the doctrine of judical estoppel precludes Smith's ability to secure an upward adjustment of his state retirement compensation,[FN1] and second, that Smith's January 2010 retirement from ALDOT precludes his standing to proceed with claims for declaratory and injunctive relief against the defendants.

> FN1. In Smith's objection to the original R & R, Docket No 8696, he argued that the doctrine of judical estoppel did not bar him from seeking an upward adjustment of his state retirement compensation. In their brief on remand, the defendants addressed Smith's argument and so the special master addresses the issue in this Report and Recommendation.

**II.**
**A.**

In June 2005, Smith filed a voluntary petition for Chapter 13 Bankruptcy in the in The United States Bankruptcy Court for the Southern District of Alabama. Docket No 8688 at 5(R & R). It is undisputed that Smith, who was represented by bankruptcy counsel, never revealed to the bankruptcy court the fact that he had an individual contempt claim pending against the defendants since 2003. *Id.* In his ICC, Smith sought promotion and instatement as well as "full make-whole relief ... including back pay, ... salary adjustment, and adjustment of retirement benefits." *Id.* The full "make-whole relief" that Smith sought included, in addition to a monetary component, claims for (1) a declaratory judgment that the defendants' contempt of the Consent Decree harmed him, (2) injunctive relief prohibiting the defendants from further illegal conduct, and (3) attorneys' fees and costs incurred in pursuit of his ICC. *Id.*

Applying the doctrine of judicial estoppel, the special master recommended that all of Smith's monetary claims be barred since he failed to disclose his ICC to the bankruptcy court. The claims barred were attempts to recover compensatory damages, back pay, salary adjustment, or adjustment of retirement benefits.[FN2] Since non-monetary claims such as those for injunctive relief do not add value to a bankruptcy estate, they are not affected by the judicial estoppel doctrine [FN3] and so, it was recommended that Smith's claim for injunctive and declaratory relief, and his claim for attorneys' fees and costs be allowed to proceed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 12 of 19

Page 2

Slip Copy, 2012 WL 1119559 (M.D.Ala.)
**(Cite as: 2012 WL 1119559 (M.D.Ala.))**

FN2. On appeal to the district court, neither the defendants nor Smith objected to the conclusion that judicial estoppel barred Smith's monetary claims.

FN3. *See* Burnes v. Pemco Aeroplex, 291 F3d 1282, 1288–89 (11th Cir.2002)(failure to disclose claims for injunctive relief that add no monetary value to the bankruptcy estate does not support the application of the judicial estoppel doctrine) and Barger v. City of Cartersville, Ga., 348 F.3d 1289, 1297 (11th Cir.2003)(same).

The defendants and Smith both objected to the R & R. Smith objected because he does not believe judicial estoppel barred his claim for adjustment to his State retirement account since any adjustment will be based on a direct payment to the Retirement System of Alabama, ("RSA"), by the defendants. Docket No 8696. The defendants objected to the R & R on the grounds that Smith's retirement meant he lacked the standing necessary to pursue injunctive and declaratory relief. Docket No 8694.

**\*2** On remand, in addition to the standing issues, the defendants also address the application of judicial estoppel to retirement payments made to the RSA. They argue for the first time that such payment would be exempt from the bankruptcy estate under Alabama law and are therefore not subject to the estoppel bar. Docket No 8785 at 5–6. Notwithstanding their conclusion, the defendants maintain that because Smith is ineligible for any adjustment to his pay, that he is still barred from seeking increased retirement compensation.

**1.**
Since under Alabama law, Smith's creditors do not have the ability to seek payment from Smith's RSA funds, "they are not disadvantaged by Smith's non-disclosure of the claims relating to his desire for additional RSA contributions as a result of his contempt claims." *Id.* at 6, *see also* ALA. CODE § 37–27–28 (exempting retirement funds held by the Retirement System of Alabama from "levy ... garnishment, attachment or any other process whatsoever ..."). Nevertheless, the defendants assert that Smith's claim for an upward adjustment of his retirement benefits still fails because any retirement adjustment by RSA depends first on his successfully pursuing claims for salary adjustment or back pay—claims the defendants continue to maintain are barred by judicial estoppel. Docket No 8785 at 6.

**2.**
It is settled, and unchallenged, that judicial estoppel bars Smith from receiving an award of back pay or a salary adjustment. That bar, together with the fact that Smith retired in January 2010, operates to preclude any increase in Smith's retirement payments from RSA.

Alabama law provides that RSA benefits are calculated based on the highest average annual three-year period of compensation during an employee's final ten years of service. ALA.CODE § 36–27–1(15). Since Smith is not entitled to any additional monetary payments from ALDOT that would adjust upward his three-year salary average, there is no source of additional compensation from which the RSA could increase Smith's retirement benefit.

**B.**
Because he is no longer employed by ALDOT and retired effective January 2010, Smith lacks the standing necessary to continue with his declaratory judgment or injunctive actions against ALDOT. "A plaintiff has standing to seek declaratory or injunctive relief only when he 'allege[s] facts from which it appears there is a substantial likelihood that he will suffer injury in the future.' " Bowen v. First Family Fin. Services, Inc., 233 F.3d 1331, 1340 (11th Cir.2000) quoting Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1346–47 (11th Cir.1999)(citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). Here there is no such likelihood since Smith has retired from ALDOT.

This case is indistinguishable from Eddie Curry's individual contempt claim where it was decided that because Curry was no longer an employee of ALDOT, he lacked the standing necessary to pursue claims for injunctive and declaratory relief. Docket No 8722 at 11–12(R & R) affirmed Docket No 8724.

**III.**
**\*3** Since Gary Smith cannot receive any monetary compensation from the defendants that would allow the RSA to adjust upward his three-year salary average, his RSA retirement benefit is not subject to recalculation. Moreover, given his retirement in 2010,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 -
Transcripts and Unreported Decisions    Pg 13 of 19

Page 3

Slip Copy, 2012 WL 1119559 (M.D.Ala.)
**(Cite as: 2012 WL 1119559 (M.D.Ala.))**

Smith lacks the standing necessary to pursue ongoing injunctive and declaratory relief against the defendants.

**ACCORDINGLY,** it is recommended that defendants' Motion for Summary Judgment on Gary Smith's Individual Contempt Claim, Docket No 8655 be GRANTED.

To the extent consistent herewith, the special master readopts his prior R & R on Gary Smith's ICC, Docket No 8688.

Objections to this Report and Recommendation must be filed with the Clerk of Court by March 30, 2012. Failure to file objections in a timely manner constitutes a waiver of the right to review by the district court.

IT IS SO RECOMMENDED.

M.D.Ala.,2012.
Reynolds v. Alabama Dept. of Transp.
Slip Copy, 2012 WL 1119559 (M.D.Ala.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

```
                                                                          1
 1  UNITED STATES BANKRUPTCY COURT
 2  SOUTHERN DISTRICT OF NEW YORK
 3  Lead Case No. 12-12020-mg   Adv. Proc. No. 12-01671-mg
 4  - - - - - - - - - - - - - - - - - - - - - - -x
 5  In the Matters of:
 6  RESIDENTIAL CAPITAL, LLC, et al.,
 7              Debtors.
 8  - - - - - - - - - - - - - - - - - - - - - - -x
 9  RESIDENTIAL CAPITAL, LLC, et al.,
10                    Plaintiffs,
11              - against -
12  ALLSTATE INSURANCE COMPANY, et al.,
13                    Defendants.
14  - - - - - - - - - - - - - - - - - - - - - - -x
15
16              United States Bankruptcy Court
17              One Bowling Green
18              New York, New York
19
20              July 10, 2012
21              10:07 AM
22
23  B E F O R E:
24  HON. MARTIN GLENN
25  U.S. BANKRUPTCY JUDGE
```

12-12020-mg    Doc 2410-2    Filed 12/13/12    Entered 12/13/12 16:58:26    Exhibit 2 - Transcripts and Unreported Decisions    Pg 15 of 19

**RESIDENTIAL CAPITAL, LLC, ET AL.**                                              42

1  Practices Act, Consumer Protection Law, in Pennsylvania, are
2  all defenses and claims that can be made regarding
3  foreclosures, all of which have been alleged.  It's -- clearly
4  what counsel is saying for ResCap or GMAC is clearly erroneous.
5  They're all clearly defenses that are alleged here that are
6  valid as defenses in foreclosure claims.
7              THE COURT:  Are you seeking a monetary judgment
8  against the defendants, Mr. Taggart?
9              MR. TAGGART:  Yeah -- yes, I am.
10             THE COURT:  Okay.
11             MR. TAGGART:  I'm seeking monetary judgment in claims,
12 but I'm also seeking --
13             ==THE COURT:==  ==Okay, but Mr. Taggart, the one thing I==
14 ==want to be clear about is, I am not lifting -- I have not==
15 ==lifted the stay, and I'm not going to lift the stay to permit==
16 ==monetary claims to proceed against any of the debtors.==  So --
17             MR. TAGGART:  Your Honor, I unders -- I fully
18 understand what you're saying.  I guess then -- I guess my
19 point would be that I should be able to proceed with the claims
20 regarding defenses.  I mean, obviously, if they're not able to
21 award monetary judgment at this point, and that would be
22 stayed.  Obviously, it's my right to allege breach of contract,
23 Truth in Lending and RESPA claims are all defenses, you know,
24 in the mortgage foreclosure defense.
25             THE COURT:  All right.  Let me stop you for a second,

# In Re:
*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*October 10, 2012*

eScribers, LLC

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



Min-U-Script® with Word Index

1  plaintiffs have filed a proof of claim; it's potential to
2  resolve it as a class action before this court. We could do it
3  on individual basis. We could have other procedures such as
4  mediation or ADR; and this is a process we're looking at
5  currently. As of today, there's been 1,000 claims filed.
6  We're a month away from the bar date.
7         So how we manage all these claims is an evolving one.
8  We have thirty-eight -- approximately thirty-eight pending
9  class actions, some of which have been certified, some of which
10 haven't. So this is really a --
11        THE COURT: I saw that in your papers that you
12 referred to the thirty-eight. How many certified class actions
13 are there?
14        MR. ROSENBAUM: I don't have that answer, Your Honor.
15        THE COURT: So here --
16        MR. ROSENBAUM: Can I just one other --
17        THE COURT: Go ahead, Mr. Rosenbaum.
18        MR. ROSENBAUM: Your Honor, we may come down the road
19 in two or three months or four months and decide perhaps it's
20 best to proceed before the district court to liquidate this
21 claim. We hadn't made that decision yet, particularly now.
22 Stay -- relief from the stay should not be granted to allow
23 that trial to go forward.
24        THE COURT: Let me interrupt, okay. ==Now is clearly==
25 ==not the time to lift the stay to permit a trial to go forward==

| | RESIDENTIAL CAPITAL, LLC, ET AL. | 112 |
|---|---|---|

1  in district court in Washington -- the state of Washington.
2  And I say that because of the very, very large number of
3  contested matters and other important events in this Chapter 11
4  case that's scheduled between now and the end of January.  So
5  on the basis of burden alone, I will not lift the stay at this
6  point in time.
7        You say this case is not trial ready, but other than
8  the issue that's been described to me, I read it in the papers,
9  about discovery and I don't know whether that's intended to be
10 discovery against AFI or against one of the debtors, it
11 nevertheless sounds like a limited amount of discovery.  It
12 also sounds like something that may be resolved by stipulation
13 of fact, I don't know but let's assume it's not.  It's a
14 limited amount of discovery.  You haven't done too well in this
15 case so far.  The Court granted summary judgment striking two
16 of the debtors' affirmative defenses, potentially the two most
17 significant affirmative defenses, maybe not.  And so the
18 district court in the state of Washington is very familiar with
19 this case.
20       I'm going to deny the motion to lift the stay without
21 prejudice.  I guess I should add to this list of important
22 matters that are going on here, and there's certainly some of
23 them reflected in the hearings this morning, the RMBS
24 settlement which is a contested hearing.  Expedited discovery
25 has been going on for quite some time, it's quite voluminous;

**RESIDENTIAL CAPITAL, LLC, ET AL.** 114

1  court's schedule, and I don't know whether in light of events
2  that have taken place or lack of events since the bankruptcy
3  was filed, whether that would be a realistic date or not but I
4  mean the earliest this matter ought to come back before this
5  court for consideration is in February or March.  I mean,
6  there's just -- the debtors appropriately are consumed with
7  very, very important matters that are critical to this Chapter
8  11 case.  And so I'm not saying that in February or March I
9  would lift the stay, but the debtors shouldn't assume that the
10 stay won't be lifted.
11         To me, I mean there are two issues:  one, when; and
12 maybe the more important issue is how, whether it's more
13 appropriate for this matter to be addressed in the claims
14 allowance process.  The fact of the matter is, there is a non-
15 debtor affiliate, AFI, it's a defendant in the case, and
16 certainly the district court can decide we're going to go
17 forward with a trial against AFI.  I mean that's for the
18 district court to decide.  Ordinarily, you know, if a separate
19 trial was required here as to the debtor that wouldn't be the
20 most efficient way to hear it but you ought to advise the
21 district court -- I'm certainly prepared to have a joint
22 conference, hear what the judge has to say about his own
23 calendar and the schedule.  But until matters settle down here,
24 which isn't going to happen until February or March, I'm not
25 going to lift the stay.  So for the reasons stated on the