**Hearing Date and Time: December 20, 2012 at 10:00 a.m. (ET)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

---------------------------------------------------------- x

**STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS WITH RESPECT
TO DEBTORS' MOTION FOR APPOINTMENT OF A MEDIATOR
AND DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FURTHER
EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11
<u>PLAN AND SOLICIT ACCEPTANCES THEREOF</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**<u>Committee</u>**") of the above-captioned debtors and debtors-in-possession (collectively, the "**<u>Debtors</u>**") hereby files this statement and reservation of rights (the "**<u>Statement</u>**") with respect to the Debtors' Motion for Appointment of a Mediator [Docket No. 2357] and the Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit

Acceptances Thereof [Docket No. 2355] (the "**Motions**").[1]  The Committee respectfully submits
as follows:

## STATEMENT

1.      The Motions reflect positive recent developments and provide a needed
framework for serious global negotiations rather than further pursuit of a divisive strategy that
burdened the first eight months of these cases.  The Debtors' recent decision to adjourn the
RMBS 9019 Motion for sixty days was constructive, and warrants a further extension of
exclusivity to encourage global settlement negotiations with AFI and among the creditor parties.
The Committee also supports the appointment of a mediator now, to allow the mediator
sufficient time to become familiar with the case and be in a position to assume an active and
effective role when needed to help resolve specific disputed issues, including the central
challenge in these cases: determining AFI's appropriate contribution to fund a chapter 11 plan
and obtain the requisite consent for estate and third-party releases.

2.      These cases have been burdened by a hotly contested prepetition strategy.
The views of the unsecured creditors and the Debtors have not been aligned on numerous major
issues throughout these cases, primarily due to the domination and control of the Debtors by their
parent, AFI.[2]  AFI's heavy footprint in these cases is evidenced by the prepetition plan support
agreements and other pleadings filed by the Debtors at the outset of these chapter 11 cases that
all had the ultimate goal of providing AFI with a broad release of both estate and third-party
claims.  Moreover, AFI's control of the Debtors' bankruptcy strategy was evident in several
other areas, including (i) the proposed asset sales (AFI agreed to serve as an original stalking

---

[1]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motions.

[2]  As this Court has recognized, "AFI's goal was obviously to separate and shed its money-losing residential
mortgage-related businesses and as much of the present and future liabilities associated with those businesses as
possible." *In re Residential Capital, LLC*, No. 12-12020, slip op. at 5 (Bankr. S.D.N.Y. Aug. 28, 2012).

horse bidder, but insisted that $200 million of the purchase price for the Whole Loan portfolio be credited towards its proposed settlement payment); (ii) AFI's DIP financing (the original proposed terms of AFI's DIP financing were contingent on the Debtors' ability to meet certain milestones under AFI's plan support agreement with the Debtors, as well as the Debtors' agreement to fund certain undisclosed indemnification payments to Ally Bank); (iii) the Ally Bank sub-servicing agreement (which required the Debtors to make certain indemnification payments in connection with modifications made to Ally Bank's loan portfolio); and (iv) the premature motion to approve an unprecedented RMBS settlement that was premised on an AFI release (the "**RMBS 9019 Motion**").[3]

3.     However, the Committee is satisfied that despite the hurdles, progress has been made to move this case in a positive direction.  The DIP and sub-servicing matters were resolved on terms that supported the operations in a more evenhanded fashion.  And perhaps most importantly, the sale procedures were significantly improved and the Debtors agreed to bifurcate the sale of the Debtors' Platform and Whole Loan Assets from the AFI release and plan confirmation process, the result of which was an auction that generated an incremental $946 million over the amount of the original stalking horse bids, producing a collective $4.5 billion in value for the Debtors' estates.  The Committee recognizes this process was an important accomplishment and continues to work closely with the Debtors to move the transactions to close in the first quarter of 2013.

---

[3] The Kathy Patrick group's limited objection to the Motions contains incorrect and unfounded assertions regarding the Committee's position on the RMBS 9019 Motion.  Neither Kathy Patrick, nor any member of her group is a member of the Committee.  Each Committee member takes seriously its responsibility as an estate fiduciary, and the Committee and its members have, at all times, conducted themselves in accordance with the Committee by-laws governing Committee procedures.  Only after a careful review of legal and factual considerations, numerous presentations by Committee professionals, and thorough Committee discussions, did the Committee determine to oppose the RMBS 9019 Motion.

4.      Additionally, while litigation of the RMBS 9019 Motion has consumed substantial cost, energy and focus since July, the Debtors' recent agreement to adjourn the hearing on the RMBS 9019 Motion reflects an important positive change in direction.  With the asset sales poised to close, the parties can, and should, turn their attention to resolving the complex claim and plan issues that must be addressed to confirm a chapter 11 plan – including addressing the RMBS issues in the larger context of the treatment of all competing claims and interests, as well as negotiating the appropriate contribution by AFI for a global settlement of the case.  By completing discovery and briefing during the adjournment, all parties retain the option to renew the hearing on the RMBS 9019 Motion in March if a negotiated resolution cannot be achieved.

5.      In connection with the adjournment of the RMBS 9019 Motion, the Committee agreed to (i) support an extension of the Debtors' exclusive periods for filing a chapter 11 plan for a period of approximately sixty (60) days, through February 28, 2013, and (ii) support the appointment of a mediator to be available in the event the parties determine that a mediation would be useful to facilitate a resolution of outstanding plan issues.  The Committee thus supports this relief, subject to the following additional observations:

6.      *First,* since the purpose of the adjournment of the RMBS 9019 Motion was to facilitate plan negotiations, the Committee has no objection to the extension of the Debtors' exclusive period for filing a chapter 11 plan through February 28, 2013.   The Committee agrees that progress in the case has been made, and believes that a further extension of exclusivity will provide the parties with the time needed to address the major outstanding issues among the creditors and with AFI, including the amount and form of AFI's contribution to the Debtors' estates.  The Committee understands that the Debtors will not file a chapter 11 plan during the extended exclusive period without the support of the Committee.  If, prior to the end

of the exclusive plan period, the Debtors determine it is appropriate to seek a further extension of their exclusive periods, they are free to do so, without prejudice to the Committee's right or the right of any other party to contest such further extensions.

7.    *Second*, the Committee supports the appointment of a mediator and believes that, in view of the size of these cases and complexity of the issues presented, a sitting bankruptcy judge would be an appropriate individual to fill this role.  It is important to note, however, that the primary purpose of the adjournment of the RMBS 9019 Motion was not to immediately commence a mediation, but rather to provide the parties with a framework to engage in negotiations among themselves and directly with AFI without the distraction of an active continuing litigation.  With the Debtors' cooperation, the Committee has already taken concrete steps to initiate discussions with AFI and to engage its own constituents in substantive discussions aimed at resolving inter-creditor issues that must be resolved under any plan.

8.    Meetings are planned during early January at which the Committee, its members, and AFI expect to engage in a detailed exchange of views on a range of legal and factual issues related to AFI's potential liability and its appropriate contribution under a consensual chapter 11 plan.  Moreover, discussions among the various creditor constituencies have begun in earnest and are expected to continue into next year.  The initial meetings with AFI and among the creditors are expected to be followed by working sessions in the latter part of January in which decision-makers for the key parties will directly engage in an attempt to reach agreement on as many issues as possible.

9.    As a result, by late January 2013, the parties should be in a better position to assess whether, and to what extent, a formal, facilitated mediation may be helpful.  The Committee agrees, however, that it makes sense for the Court to appoint a mediator at this time, without mandating mediation on any particular issues, which would permit the mediator to get

up to speed on the key issues over the next several weeks while the parties are negotiating among themselves. Potentially, the parties will have made sufficient progress that the involvement of the mediator will not be required. Alternatively, the parties may reach agreement with respect to most or all inter-creditor issues, and the mediation can focus on issues concerning AFI, including the central issue of its plan contribution and the scope of its desired releases. Whatever the appropriate focus of the mediation, the mediator would be educated and available to start working with the parties in a focused and expeditious manner.

          10. The Committee respectfully suggests that the Court may wish to schedule a status conference at the January 29, 2013 omnibus hearing for the parties to assess the progress of plan negotiations. At that juncture, the parties will be in a better position to determine whether mediation will be productive to the plan negotiation process and gauge the appropriate focus of that mediation.

Dated: New York, New York
       December 14, 2012

                    KRAMER LEVIN NAFTALIS & FRANKEL LLP

                    /s/ Kenneth H. Eckstein
                    Kenneth H. Eckstein
                    Douglas H. Mannal
                    1177 Avenue of the Americas
                    New York, New York 10036
                    Telephone: (212) 715-9100
                    Facsimile: (212) 715-8000
                    *Counsel for the Official Committee*
                    *of Unsecured Creditors*