# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTHERN NEW YORK

| | |
|---|---|
| RAHI Real Estate Holdings, LLC<br>Debtor<br><br>Bruce DeMustchine<br>Plaintiff<br>-v-<br><br><br>RAHI Real Estate Holdings, LLC<br>Defendant | CASE NO. 12-12020 (Southern NY)<br><br>CHAPTER 11<br>ADV. PROC.NO..___ |

## COMPLAINT

1. Bruce DeMustchine, the Plaintiff herein, by Thomas R. Mason, its undersigned counsel for its Complaint against the Defendant, alleges as follows:

### INTRODUCTION

2. This is a core proceeding over which this Court has jurisdiction under 28 U.S.C., Sec. 157(b).

3. RAHI Real Estate Holdings, LLC ("Defendant") is the debtor in this Chapter 11 case. The Plaintiff is a creditor of the Defendant. The Defendant is a wholly owned affiliated entity of Residential Capital LLC, et al. ("Residential Capital"). Residential Capital LLC and its affiliated entities declared Chapter 11 Bankruptcy in the United States Bankruptcy Court Southern District of New York.

4. The Defendant's bankruptcy petition was filed on May 14, 2012 with a docket number of 12-12020.

5. Schedules of assets and liabilities relating to the bankruptcy petition for Residential Capital and the Defendant were filed on June 30, 2012.

6. This is an adversary proceeding to determine whether the Defendant has violated the Automatic Stay under 11 USC § 362, seek declaratory relief, and to object to the Defendant's and Residential Capital's discharge of its entire debt and the debt owed to the Plaintiff.

7. The Plaintiff filed a Verified Complaint against the Defendant in Essex County, Massachusetts Superior Court on July 2, 2010. The complaint is appended to this complaint and marked as "Exhibit A".

8. The case was removed to the United States First District Court by Chase Bank, one of the defendants in the Superior Court case, on July 26, 2010. The Verified Complaint alleges that there are numerous deficiencies in the mortgage loan and assignments. The official docket sheet is appended to this complaint as marked as "Exhibit B".

9. The Plaintiff alleges that the Defendant does not own or hold a mortgage or a note on his primary residence located at 6 Vernon Street in Newburyport, Massachusetts.

10. The Plaintiff alleges that he has been victimized as a result of a predatory refinancing mortgage loan on his primary residence located in Newburyport, Massachusetts in the amount of $618,750.00 that closed in July 2003.

11. The Plaintiff claims that he was pressured by an overly aggressive loan officer who prepared a mortgage application that the Plaintiff never reviewed before signing off on the mortgage.

12. The Verified Complaint alleged that the appraisal of the Plaintiff's home was falsified and inflated to induce the Plaintiff to agree to pay an unaffordable mortgage.

13. The Verified Complaint alleged that mortgage payments made by the Plaintiff were not properly credited to his account by the Defendant causing the alleged deficiency to be inflated.

14. The appraised value of the Plaintiff's home at the time of the closing, in July 2003, was $ 985,000.00

15. A subsequent appraisal obtained by the Plaintiff in September 2008 indicated that his home's actual value was $550,000.00.

16. The Plaintiff alleges that the closing of the mortgage refinancing took place in his car.

17. The Plaintiff learned that the appraisal of his residence was over-inflated, and that certain payments he made to WMB were never credited to his mortgage loan account when the servicer changed to "GMAC," leaving the Plaintiff's balance to be more then he actually owed.

18. The Plaintiff attempted to obtain a reasonable loan modification from the Defendant but was ignored.

19. The Plaintiff asked the Defendant and its servicer, GMAC, to properly credit him for payments made but was denied.

20. On March 23, 2010, the Plaintiff sent a certified letter to GMAC's and the Defendant's legal counsel requesting that he be provided with a verified and certified copy of his original mortgage and note as required under M.G.L. c. 140, s.90B.

21. The Defendant and its agent, GMAC, did not fulfill its legal obligation to provide actual evidence, namely verified and certified copies of the mortgage and note, to the Plaintiff that prove it actually owns and the note and mortgage on his house.

22. Upon information and belief, the Defendant does not have any ownership rights to the Plaintiff's property.

23. The Defendant was unable to provide the original note and mortgage to the Plaintiff as legally required.

24. There is no evidence that Defendant has any ownership interest on the Plaintiff's home.

25. Instead of working with the Plaintiff to resolve issues regarding its failure to properly account for mortgage payments made, the Defendant initiated a number of steps to foreclose on Plaintiff's home.

26. Foreclosure proceedings on the Plaintiff's mortgage loan were commenced by the Defendant in January 2010.

27. The Plaintiff was making payments to the Defendant for a mortgage but stopped, under advice of counsel, when it would not credit him for payments made and stop the foreclosure of his home.

28. A foreclosure sale of Plaintiff's home was scheduled for August 27, 2010.

29. On July 14, 2010, the Plaintiff's attorney properly served the Verified Complaint regarding the above-referenced matter to the Defendant in Lawrence Superior Court.

30. The Verified Complaint was properly served to Defendant - RAHI at its resident agent's office in Massachusetts. The Plaintiff's Complaint had claims against the Defendant and sought to stop the foreclosure.

31. The Plaintiff's case was removed to federal court by another defendant to the case, Chase Bank, on July 26, 2010.

32. The Defendant was served notice by Chase's counsel that this lawsuit was being removed to federal court.

33. The Plaintiff's attorney filed a motion for a preliminary injunction to stop the foreclosure in federal court on August 16, 2010. The injunction, that was allowed on August 23, 2010, is appended to this complaint and marked as "Exhibit C".

34. On August 16, 2010, the Plaintiff's attorney also filed a motion to default the Defendant for failing to respond to the Verified Complaint by applicable deadlines.

35. After the motions to default and for a preliminary injunction were filed, the motions were scheduled to be heard by Judge Douglas Woodlock on August 23, 2010.

36. Plaintiff's attorney was ordered by Judge Woodlock to properly serve RAHI notice of the default and injunction.

37. The Plaintiff's attorney complied with Judge Woodlock's order and provided proper notice of the motions filed to RAHI.

38. Defendant- RAHI's counsel, Mr. Jeffrey Bovarnick of the law firm of Cohn and Dussi, received notice of the motion for a default and request for preliminary relief.

39. The Plaintiff's attorney discussed potential resolutions and a possible continuance of the case with Mr. Bovarnick.

40. The Plaintiff's attorney had only one condition before agreeing to continue the scheduled motions to default and stop the scheduled foreclosure. He asked that, before any agreement was made, that Mr. Bovarnick and his firm file an appearance with the Court to certify that he was actually representing the Defendant.

41. Mr. Bovarnick did not file an appearance as the attorney of record, as he said he would, in August 2010, for this matter.

42. No one appeared on behalf of the Defendant in court to argue against the motion to default and for a preliminary injunction in a hearing on August 23, 2010 at federal district court.

43. The Plaintiff's motion for a restraining order was granted by Judge Woodlock on August 23, 2010. Judge Woodlock's ruling is appended to this complaint and marked as "Exhibit C".

44. The official case docket states: "Judge Douglas P. Woodlock: RESTRAINING ORDER entered that Defendants RAHI Real Estate Holdings, LLC, and JP Morgan Chase Bank National Association, and their agents, servants, employees, attorneys and all persons in active concern or participation with them are restrained and enjoined pending further order of this Court from directly or indirectly holding a foreclosure sale (which had been scheduled on August 27, 2010) or any other sale of the plaintiffs residence, located at 6 Vernon Street in, Newburyport, Massachusetts, until the question of RAHIs ownership of the mortgage and note is adjudicated and IT IS FURTHER ORDERED that there being no just reason for delay, the Clerk shall enter this Order forthwith and without further notice. It shall be the responsibility of the plaintiff to insure that all addressees of and interested parties in this Order receive notice. No bond shall be required of plaintiff. (Woodlock, Douglas) (Entered: 08/23/2010)"

45. The Defendant did not contest the Plaintiff's motion for a default and for a preliminary injunction.

46. Plaintiff's attorney filed a motion for a default judgment on September 13, 2011. The motion is appended to this complaint and marked as "Exhibit D".

47. The Defendant, its attorney, and its law firm of Cohn and Dussi did not contest the Plaintiff's motion for a default judgment.

48. The Defendant was defaulted on December 15, 2010. The default is appended to this complaint and marked as "Exhibit E".

49. The Court issued a default judgment against the Defendant on December 20, 2011. The default judgment is attached to this complaint and marked as "Exhibit F".

50. The Plaintiff's attorney had no communication from RAHI, Attorney Bovarnick, or his law firm, Cohn and Dussi, until approximately June 2011.

51. The Plaintiff's counsel, in the June 2011 phone call, again asked Attorney Bovarnick and his firm to file an appearance for this case.

52. On or about August 12, 2011, Attorney Bovarnick filed an appearance for the Defendant in federal district court.

53. Plaintiff's counsel asked Attorney Bovarnick why it took so long for RAHI's attorney to file an appearance or try to have the default removed.

54. Attorney Bovarnick responded that his client, RAHI, and GMAC, its agent, had "screwed up."

55. The time to appeal the default judgment in federal district court expired on December 20, 2011 without any pleadings or motions filed by either the Defendant or its counsel to contest the outcome of the Plaintiff's case.

56. The case was officially closed by the court on December 20, 2010 and the default judgment is currently final according to the United States First District Court docket. The docket sheet is appended to this complaint and marked as "Exhibit B".

57. The deadline for vacating the default judgment has expired.

58. The Defendant's new counsel Richard Briansky of Prince Lobel Tye LLP filed a motion to vacate the final decision of Judge Woodlock on February 17, 2012 even though the deadline to appeal the judgment had passed. The docket is appended to this complaint and marked as "Exhibit G."

59. The Defendant's motion to vacate was denied by Judge Woodlock on September 24, 2012. Judge Woodlock's ruling is appended to this complaint and marked as "Exhibit H."

60. The Defendant's new counsel, Richard Briansky, filed a second motion to vacate this closed case on October 17, 2012 in federal district court. The docket is appended to this complaint and marked as "Exhibit B".

61. On its second motion to vacate its appeal, the Defendant's counsel, Richard Briansky, submitted a falsified document purportedly to demonstrate that the Defendant owns the mortgage on the Plaintiff's home.

62. The purported assignment of Plaintiff's home was signed by Jeffrey Stephan of GMAC Mortgage.

63. Jeffery Stephan signed an assignment that was recorded in Essex County Registry of Deeds, from WAMU to JP Morgan Chase on January 19, 2010 that was not witnessed by a notary. The assignment is appended to this complaint and marked as "Exhibit I".

64. According to the assignment, the document was actually notarized on January 15, 2010 but was signed by Jeffery Stephan on January 19, 2010. The assignment is appended to this complaint and marked as "Exhibit I".

65. Upon information and belief, Jeffrey Stephan, while employed by GMAC signed thousands of foreclosure affidavits and property assignment without any actual knowledge of any of the cases therein.

66. Under oath, in court proceeding(s) in other jurisdictions, Mr. Stephan has testified that, during his employment as a GMAC "robo-signer," he signed off on thousands of foreclosures a month without once looking at the paperwork demonstrating that the transfers occurred.

67. Upon information and belief, employees at the Defendant do not know whether or not the note and mortgage to Plaintiff's home were purchased by the Defendant.

68. There is no evidence that the Defendant ever acquired the note and mortgage of the Plaintiff's home.

69. Upon information and belief, Mr. Stephan falsely and fraudulently certified under oath that he had actual knowledge of the assignment of the Plaintiff's home to the Essex County Registry of Deeds.

70. Upon information and belief, agents of the Defendant, including its previous counsel, Orlans Morgan, have falsely claimed that it had actual knowledge of the purported assignment of the Plaintiff's mortgage to the Defendant.

71. The Defendant then appealed Judge Woodlock's decision not to reopen the case to the First Circuit Court of Appeals on October 23, 2012. The docket is appended to this complaint and marked as "Exhibit B".

72. Judge Woodlock's order, dated August 23, 2012, required RAHI to prove it actually owns the mortgage on the Plaintiff's home.

73. The Defendant has not proven that it owns the mortgage and note on the Plaintiff's home.

74. The Defendant does not have an executed original of the mortgage and the loan on Plaintiff's home.

75. The Defendant has no information about how much the Plaintiff has paid toward the mortgage on his home.

76. To date, the Defendant has no evidence that it holds a mortgage, or even has any authority to foreclose, on the Plaintiff's home.

77. The Defendant has no evidence of how, how much, or who was paid to purportedly purchase Mr. DeMustchine's mortgage and whether it actually owned the mortgage.

78. Under F.R.C.P. Rule 60(c)(1), the one year deadline for the Defendant to contest its default judgment has passed.

79. F.R.C.P. Rule 6(b)(1) specifically prohibits reopening default judgments past the one year deadline.

80. Defendant RAHI Real Estate Holdings, LLC and its parent entity, Resolution Trust LLC, filed for a Chapter 11 bankruptcy on May 14, 2012.

81. James Whitlinger, CFO of the Defendant, submitted an affidavit, under the pains and penalties of perjury, that stated that the Defendant's bankruptcy petitions and schedules were true and accurate. The affidavit is attached to this complaint and marked as "Exhibit J".

82. According to the schedule of assets and liabilities regarding RAHI Real Estate Holdings, LLC, submitted on June 30, 2012, this case was not been listed under the Defendant's Schedule of Assets and Liabilities as required. The schedule is attached to this complaint and marked as "Exhibit K".

83. Upon information and belief, RAHI's schedule of assets and liabilities does not have any information about the Plaintiff's claim and his judgment against the Defendant.

84. Upon information and belief, potential malpractice claims against Cohn and Dussi, the law firm that originally represented the Defendant, are not listed on RAHI or Residential Capital's schedule of assets and liabilities.

85. Upon information and belief, legal expenses owed to its current legal counsel, Prince Lobel Tye LLP, and its previous counsel, Cohn and Dussi, are not listed anywhere on RAHI's and Residential Capital's schedules of its assets and liabilities.

86. Upon information and belief, Resolution Capital and the Defendant have filed false, untrue, and inaccurate bankruptcy petitions with the Court.

## COUNT I (Violation of Automatic Bankruptcy Stay)

87. The Plaintiff repeats and realleges Paragraphs 1 through 86, herein and hereby incorporates the same by reference as set forth herein.

88. Defendant knew or should have known that the Plaintiff had obtained a final judgment in federal district court.

C) the Defendant shall immediately convey a valid deed and title of 6 Vernon Street in Newburyport, Massachusetts to the Plaintiff;

D) the Defendant shall immediately void any notes and mortgages it may hold against the property and file notice of its actions to void its assignment with the Essex County Registry of Deeds;

E) the Defendant and its successors and assigns shall immediately comply with Judge Woodlock's final order dated December 20, 2010;

F) the time to contest Judge Woodlock's default judgment has expired and is final;

G) all to appeal or remove default judgments in this matter shall be immediately withdrawn by the Defendant ;

H) the Defendant and its counsel have filed frivolous appeals with the Court to harass the Plaintiff;

I) the Defendant and its legal counsel at Prince Lobel Tye LLC have violated the automatic stay and are in contempt of this Honorable Court;

J) in light of the Defendant's failure to properly and accurately disclose its assets, liabilities, any debt owed to the Plaintiff shall not be discharged;

K) the Defendant and its parent entity Resolution Capital shall immediately amend its bankruptcy schedule and petitions to accurately reflect all assets, liabilities, contingencies, legal matters, and all matters that relate to the above- referenced bankruptcy. If the Defendant and Resolution Capital do not comply with an Order of the Court by a date certain, all bankruptcy petitions filed will be dismissed with prejudice;

L) the Plaintiff have judgment against the Defendant in the sum of $ 550,000.00, or in an amount to be proven at trial, that said sum be trebled, compensatory damages, damages for intentional infliction of emotional distress, punitive damages and attorney's fees awarded, and that the Plaintiff have such other and further relief as is just, including costs and interest and in amounts to be determined.

Respectfully Submitted,

Bruce Clark DeMustchine
By his Attorneys

/s/Thomas R. Mason/s/
Thomas R. Mason, Esq.
Law Office of Thomas Mason
15 New England Executive Park
Burlington, MA 01803
(781) 238-0260
BBO# 553968

December 14, 2012

89. Defendant knew or should of known that the Plaintiff is currently a creditor in a bankruptcy and, as such, all proceedings regarding its case in federal court are automatically stayed under 28 U.S.C., Sec. 157(b).

90. Defendant knew or should have known that Plaintiff's right to appeal the final judgment by Judge Woodlock had expired on December 20, 2010.

91. On October 17, 2012, the Defendant violated the automatic stay by filing a second motion to vacate the final judgment of the case in federal court without leave of the Court.

92. On October 23, 2012 the Defendant violated the automatic stay by filing an appeal of Judge Woodlock's decision, dated September 24, 2012, in the First United States District Court of Appeals without obtaining leave of the Court.

93. The Defendants have failed to obey a lawful order and are currently in contempt of the bankruptcy court.

94. As a result of the Defendant's conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the sum of $ 550,000.00, or in an amount to be proven at trial, that said sum be trebled, compensatory damages, punitive damages and attorney's fees awarded, and that the Plaintiff have such other and further relief as is just, including costs and interest and in amounts to be determined.

## COUNT II (Filing Untrue and Inaccurate Bankruptcy Petitions and Schedules)

95. The Plaintiff repeats and realleges Paragraphs 1 through 94, herein and hereby incorporates the same by reference as set forth herein.

96. The Plaintiff is a creditor of the Defendant.

97. The Plaintiff, as a creditor, has an interest in ensuring that assets in the bankruptcy estate are properly maintained and preserved for his own benefit.

98. The Defendant and its attorneys have attempted to foreclose on the Plaintiff's home without having any legal title or rights.

99. The Defendant and its attorneys have presented a fraudulently prepared assignment to the Court to assert its rights to appeal the Plaintiff's judgment.

100. The Defendant has knowingly misrepresented and concealed the fraudulent assignment of the Plaintiff's mortgage from its creditors and the United States Bankruptcy Trustee.

101. The Defendant has intentionally not disclosed anything about the money that may be owed to the Plaintiff on RAHI's schedule of assets and liabilities.

102. The Defendant has intentionally not disclosed potential malpractice claims against Cohn and Dussi for not filing responses to Plaintiff's motions and pleadings within applicable deadlines.

103. The Defendant has intentionally not disclosed how much is being paid to Prince Lobel Tye LLC to appeal the Plaintiff's previously closed case.

104. The Defendant has not kept and produced accurate financial records in the course of the bankruptcy proceedings.

105. The Defendant has provided false information on its bankruptcy petition and schedules to perpetuate fraud in selling these assets bankruptcy.

106. The Defendant has provided false information on its petition and schedules to avoid including it in the bankruptcy estate.

107. The Defendant has provided false information on its bankruptcy petition and schedules to conceal the nature and extent of its potentially fraudulent and illegal activities regarding its property foreclosures from its creditors.

108. As a result of the Defendant's conduct, the Plaintiff has been damaged.

Wherefore, the Plaintiff demands judgment against the Defendant in the sum of $ 550,000.00, or in an amount to be proven at trial, that said sum be trebled, compensatory damages, punitive damages and attorney's fees awarded, and that the Plaintiff have such other and further relief as is just, including costs and interest and in amounts to be determined.

### COUNT III (Intentional Infliction of Emotional Distress)

109. The Plaintiff repeats and realleges Paragraphs 1 through 108, herein and hereby incorporates the same by reference as set forth herein.

110. The illegal actions taken by the Defendant and its counsel to reopen a closed case and violate this Court's automatic stay have caused excessive stress to the Plaintiff and his companion who live in the Plaintiff's property.

111. Because of its actions and bullying, the Defendant has caused the Plaintiff and his companion to be hospitalized on multiple occasions due to excessive stress.

112. The Defendant's and its law firms' actions have caused Plaintff many sleepless nights which have required medication. As a result of the Defendant's actions, the Plaintiff has had nightmares, depression, use of alcohol, flooding emotions, apathy, tension headaches, anxiety, and chronic back pain. In addition, due to the Defendant's actions, the Plaintiff has continued to have difficulty focusing and making decisions.

113. The Defendant's actions have contributed to at least one, if not two, of the Plaintiff's companion's heart attacks during this period. She also had and still has chronic back pain which reoccurs when stress levels have been elevated due to the actions of the Defendant and its law firm, Prince Tye Lobel LLC.

114. The Defendant's actions, by falsely publishing the Plaintiff's mortgage default, have publicly humiliated the Plaintiff causing him embarrassment in the community and loss of professional opportunities.

115. Excessive stress caused by the Defendant has exacerbated the Plaintiff's ongoing health issues.

116. The law firm of Prince Lobel Tye has harassed the Plaintiff and his family by continuing to file frivolous motions on an already closed case.

117. The Defendant and its counsel, Prince Lobel Tye LLC have made false representations to the Court regarding title to the Plaintiff's property and has engaged in activities designed to frighten the Plaintiff and his family.

118. The Defendant hired Prince Lobel Tye, LLC in order to inflict severe emotional distress on the Plaintiff and his family.

119. The conduct of the Defendant, through Prince Lobel Tye, LLC and others, has been so extreme that it exceeded all possible bounds of human decency.

120. The conduct of the Defendant and its agents has been atrocious and is utterly intolerable in a civilized community.

121.   The Defendant's actions have caused Plaintiff and his family to suffer emotional distress so severe that no reasonable man could be expected to endure it.

122.   As a result of the Defendant's conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the sum of $ 550,000.00, or in an amount to be proven at trial, that said sum be trebled, compensatory damages, punitive damages and attorney's fees awarded, and that the Plaintiff have such other and further relief as is just, including costs and interest and in amounts to be determined.

## COUNT IV (Abuse of Process)

123.   Plaintiff repeats and realleges Paragraphs 1 through 122, herein and hereby incorporates the same by reference as set forth herein.

124.   The Defendant and its attorneys have attempted to foreclose on the Plaintiff's home without having any title or legal rights.

125.   The Defendant and its attorneys have presented a fraudulently prepared assignment to assert its rights to appeal the Plaintiff's judgment.

126.   The Defendant has knowingly misrepresented and concealed the fraudulent assignment of the Plaintiff's mortgage from its creditors and the United States Bankruptcy Trustee.

127.   The Defendant has not disclosed anything about what may be owed to the Plaintiff on its schedule of assets and liabilities.

128.   As a result of the Defendant's conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant in the sum of $ 550,000.00, or in an amount to be proven at trial, that said sum be trebled, compensatory damages, punitive damages and attorney's fees awarded, and that the Plaintiff have such other and further relief as is just, including costs and interest and in amounts to be determined.

## COUNT V (Declaratory Judgment)

129. The Plaintiff repeats and realleges Paragraphs 1 through 129, herein and hereby incorporates the same by reference as set forth herein.

130. A judgment in favor of the Plaintiff was made final in the First United District Court which is appended to this Complaint and marked "Exhibit F."

131. The Defendant has not made a timely appeal of the final judgment that was rendered by the United States First District Court and it no longer has any right to appeal.

132. The Defendant, due to its declaration of bankruptcy, is prohibited from taking action to overturn this judgment.

133. The Defendant and its law firm, Prince Lobel Tye, LLC, have violated the Court's automatic stay by acting on the above-referenced case after a declaration of bankruptcy was filed and without leave of the Court.

134. Under the final judgment, the Defendant has no ownership rights to the Plaintiff's home at 6 Vernon Street in Newburyport, Massachusetts.

135. As a result of the Defendant's conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant on all Counts and requests that this Honorable Court rule, by reason of the foregoing, that:

- A) the Plaintiff posseses the complete and unfettered right to own and possess the property without any encumbrances imposed by the Defendant at 6 Vernon Street in Newburyport, Massachusetts;
- B) the Defendant and its agents shall cease and desist from taking further action in any jurisdiction to assert any ownership of 6 Vernon Street in Newburyport, Massachusetts;

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2012, this document was filed through the ECF system electronically and to any registered participants and/or a paper copy was sent by mail to those indicated as non-registered participants.

/s/ Thomas R. Mason/s/