Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Counsel for Ally Financial Inc. and Ally Bank

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al. | ) ) ) | Case No. 12-12020 (MG) |
| Debtors. | ) ) ) | Jointly Administered |

**REPLY OF ALLY FINANCIAL INC. AND
ALLY BANK IN SUPPORT OF DEBTORS' MOTION FOR THE
ENTRY OF AN ORDER FURTHER EXTENDING THEIR EXCLUSIVE
PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES
THEREOF AND DEBTORS' MOTION FOR APPOINTMENT OF A MEDIATOR**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("*AFI*"), on behalf of itself and its non-debtor subsidiaries and Ally Bank (together with AFI, "*Ally*"), submits this reply in support of the *Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 2355] (the "*Exclusivity Motion*") and the *Debtors' Motion for Appointment of a Mediator* [Docket No. 2357] (the "*Mediator Motion*," and together with the Exclusivity Motion, collectively, the "*Motions*") and in response to the related pleadings filed by other parties.[1]

---

[1] Two parties filed responses: (a) the *Response of AIG Asset Management (U.S.), LLC, the Allstate Entities,*

**STATEMENT**

1.    Ally supports a further extension of the Exclusive Periods[2] and the appointment of a chapter 11 plan mediator. Ally also agrees with the RMBS Holders' request for a mediation structure with an established beginning and end to enable the parties to make the most of the time before the RMBS trial scheduled to begin on March 18, 2013. To that end, Ally believes the appointment of a mediator (preferably a Southern District of New York Bankruptcy Judge) would facilitate constructive claims and plan negotiations among the multitude of creditors who represent very divergent interests. With millions of estate dollars spent each month administering these estates, all rational economic stakeholders, especially unsecured creditors, should favor a prompt resolution of these chapter 11 cases.

2.    The unsubstantiated rhetoric in certain of the objections — none of which is constructive or supported by any evidence — only demonstrates the need for a plan mediator. Ally's past and ongoing extraordinary support for the Debtors' estates was made in good faith and created substantial value. Suffice to say that Ally vehemently disagrees with any objector's statements that suggest a claim could be made against Ally, and Ally will be prepared to withdraw its settlement offer and try all claims on the merits should it be necessary. Ally

---

Massachusetts Mutual Life Insurance Company, and the Prudential Entities to Debtors' Motion for Appointment of a Mediator [Docket No. 2403]; and (b) the *Omnibus Response of Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for the Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof and Debtors' Motion for the Appointment of a Mediator* [Docket No. 2406] (the "**Ad Hoc Group's Response**"). One party filed a limited objection: the *Limited Objection of the Steering Committee Group of RMBS Holders(the "**RMBS Holders**") to Debtors' Motions (I) to Further Extend Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof, and (II) for Appointment of a Mediator* [Docket No. 2400] (the "**RMBS Holders' Limited Objection**"). Finally, two parties filed statements: (a) the *Statement of Wilmington Trust, National Association in Respect of the Debtors' Motions for Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof and for Appointment of a Mediator* [Docket No. 2408]; and (b) the *Statement and Reservation of Rights of the Official Committee of Unsecured Creditors With Respect to the Exclusivity Motion and the Motion to Appoint a Mediator* [Docket No. 2418].

[2]    Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motions.

sincerely hopes that these chapter 11 cases do not devolve into litigation, resulting in millions more in fees and significantly delayed creditor distributions; however, Ally has seen first-hand the Committee's conflicted membership and its apparent inability to take an objective view of the merits of any alleged claims against Ally.[3]

3.   Accordingly, to enhance the prospects of a successful mediation process, Ally is supportive of the structured approach advocated in the RMBS Holders' Limited Objection and the Ad Hoc Group's Response. Clear milestones and a defined timetable for the claims and plan mediation process to start and finish will focus the parties on reaching a fair resolution (or determining that such a resolution cannot be reached consensually) within a timeframe that will minimize the substantial administrative costs in these chapter 11 cases.

4.   Further, Ally strongly urges the Court to order that the mediator become involved in the negotiations at the outset of the plan discussions as a participant and not a witness. The Committee's suggestion of delaying mediator involvement until the end of January is a recipe for further delay. Ally will meet with the Committee, of course, as it has been ready to do since the outset of these cases and tried to do so this month, but Ally has every reason to believe that delaying the mediator's involvement will only result in the parties returning to the Bankruptcy Court at the end of January with a renewed need for mediation. The needs of the organizations at the table and the realities of the Debtors' capital structure will not change between now and the end of January. Moreover, having the mediator move forward immediately will only help and has no downside to any party.

5.   Specifically, Ally makes the following suggestions for approaching the mediation,

---

[3] Once more, Ally reminds the junior secured bondholders that they are subject to a binding intercreditor agreement with AFI and that AFI must be paid in full prior to the junior bondholders receiving any recovery. *See generally* Intercreditor Agreement, dated as of June 6, 2008, §§ 2, 7, (as amended) [Exhibit A to Docket No. 1866]. Ally's rights under the intercreditor agreement are fully reserved.

understanding that any procedure would be subject, of course, to the mediator's and Court's direction, as well as Standing Orders.

- The mediation sessions should commence not later than January 15, 2013 to make the most of the time the Court has provided parties to consensually resolve their issues in advance of the RMBS trial.

- The mediation end date should be not later than February 28, 2013.

- To ensure that the mediator is fully apprised of the issues facing the parties in a fair manner, the parties should file simultaneous opening mediation statements five days prior to January 15, 2013 to apprise the mediator of the issues and lay out their positions. Additionally, parties should provide the mediator with weekly written updates on the progress of the claims and chapter 11 plan negotiations.

- The parties, including principals with the ability to make decisions and settle, should meet at least two times per week in person.

- Recognizing the realities of how often a mediator from the bench could be available, the mediator need to not be present for all negotiation sessions; however, following the initial presentation by all of the interested parties, official negotiation sessions with the mediator should occur at least once a week with principals physically present at the negotiation until the earlier of February 28, 2013 and a chapter 11 plan is agreed upon with executed plan support agreements.

- The mediation should be comprised of two principal components:  (a) the proper distribution of the assets of these estates to the Debtors' various

4

creditors; and (b) the value, if any, of the alleged claims asserted by the Committee and others against Ally.

6. With respect to the mediation component focused on the proper distribution of the Debtors' assets, the Committee and other unsecured creditors should be mindful that, as the Debtors make clear in the Motions, there are several unresolved chapter 11 plan issues that are primarily intercreditor issues that do not involve Ally. These issues include the proper allocation of proceeds from the sales of the Debtors' assets, the extent and validity of intercompany and third-party creditors' claims, and the allocation of administrative expenses among the Debtor entities, all which require careful and thoughtful resolution. The parties should not delay in resolving these issues.

*[Remainder of page intentionally left blank.]*

7. Ally continues to believe that a prompt resolution of disputes in these chapter 11 cases is critical. The continued administration of these chapter 11 cases comes at a significant cost to all creditors, especially unsecured creditors. Given Ally's senior secured claims and other claims in these cases, it should not be lost on parties that Ally and the estates must either come to terms or litigate before significant distributions can be made under any chapter 11 plan. Ally looks forward to working with the Debtors and their creditors in a constructive, efficient format to try to resolve the chapter 11 plan issues and supports the Debtors' efforts in this regard. Ally therefore supports the Debtors' requests for further exclusivity and the appointment of a mediator as set forth in the Motions, and with the additional suggestions stated herein.

New York, New York
Dated: December 18, 2012

/s/ Ray C. Schrock
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

*Counsel for Ally Financial Inc. and Ally Bank*