UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
                                            )
In re:                                      )      Case No. 12-12020 (MG)
                                            )
RESIDENTIAL CAPITAL, LLC, et al.,           )      Chapter 11
                                            )
                         Debtors.           )      Jointly Administered
                                            )
---------------------------------------------------------

**SUPPLEMENTAL DECLARATION OF ANNE JANICZEK IN SUPPORT OF DEBTORS'
MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS
105(a), 363, 503(b)(1), 507(a)(2), 1107(a) AND 1108 AND BANKRUPTCY RULE 9019 TO
THE FINAL WAGES ORDER (I) AUTHORIZING AND DIRECTING THE DEBTORS TO
REIMBURSE ALLY FINANCIAL INC. FOR PAYMENTS MADE TO THE DEBTORS'
EMPLOYEES ON ACCOUNT OF COMPENSATION ISSUED ON OR AFTER THE
PETITION DATE; (II) GRANTING ALLY FINANCIAL INC. AN ADMINISTRATIVE
EXPENSE CLAIM ON ACCOUNT OF SUCH PAYMENTS; (III) GRANTING ALLY
FINANCIAL INC. A LIMITED RELEASE; AND (IV) AUTHORIZING THE DEBTORS TO
ESTABLISH AND FUND AN ESCROW ACCOUNT FOR THE BENEFIT OF ALLY
FINANCIAL INC. ON ACCOUNT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS,
INCLUDING ADDITIONAL AMOUNTS TO THE ESCROW ACCOUNT AS NECESSARY**

I, Anne Janiczek, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.  I am the Executive Vice President, Chief Human Resources Officer for the Mortgage Division at Debtor[1] Residential Capital LLC and its affiliates ("**ResCap**"). I submit this Supplemental Declaration in further support of the Debtors' Motion under sections 105(a), 363, 503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure for entry of an order (i) authorizing and directing the Debtors to reimburse Ally Financial Inc. ("**AFI**") for payments made to the

---

[1] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Motion or the November Declaration.

ny-1068713

Debtors' employees on account of AFI stock issued as part of such employees' compensation on or after the Petition Date; (ii) granting AFI an administrative expense claim related to such Reimbursement Claims; (iii) granting AFI a limited release with respect to employee compensation obligations; and (iv) approving the establishment and funding of an escrow account to pay such Reimbursement Claims, including the funding of additional amounts to the escrow account as necessary (the "**Motion**").

2.  On November 2, 2012, I submitted a declaration in support of the Motion (the "**November Declaration**"), and this declaration is intended to apprise the Court and parties-in-interest of a recent development concerning the form of compensation being provided to the Debtors' employees whose compensation is subject to the TARP guidelines, as enforced by the OSM (defined herein).

**TARP Compensation Restrictions**

3.  As noted in the November Declaration, in October 2008, the United Stated Department of the Treasury ("**Treasury**") established the Troubled Asset Relief Program ("**TARP**") under the Emergency Economic Stabilization Act of 2008 ("**EESA**").[2] On February 13, 2009, Congress enacted the American Recovery and Reinvestment Act of 2009 ("**ARRA**"). Title VII of Division B of the ARRA amended in its entirety section 111 of the EESA. Section 111 of the EESA, as amended by the ARRA, "imposes corporate governance and executive compensation requirements on TARP recipients and requires Treasury to establish certain corporate governance and executive compensation standards with which TARP recipients must comply." See TARP Standards for Compensation and Corporate Governance, 74 Fed. Reg. 28,396 (June 15, 2009).

---

[2] See 12 U.S.C. § 5021 et seq.

4.    These restrictions apply to any entity of which a TARP recipient owns at least fifty percent. ResCap, its subsidiaries and their employees have been subject to compensation restrictions since AFI first received funds under TARP. These restrictions apply until AFI repays the exceptional financial assistance, or until the Debtors are no longer considered a TARP Recipient.

5.    As discussed in greater detail in the November Declaration, the United States Department of Treasury's Office of the Special Master (the "**OSM**") interprets the restrictions on executive compensation and corporate governance, and makes determinations as to compensation payments to, and compensation structures for, certain employees of TARP recipients receiving exceptional financial assistance.

**Prepetition Compensation Practices**

    i.    Top 25

6.    TARP regulations limit the amount of salary for the "Top 25" individuals that may be paid entirely in cash in a single year. Alternate forms of compensation, such as deferred stock units ("**DSUs**"), are issued to these individuals. As a result, the "Top 25" employees receive compensation in two principal elements: (a) base salary in the form of cash and DSUs, and (b) incentive restricted stock units ("**IRSUs**").

    ii.    Next 75

7.    For those employees counted among the "Next 75" most highly-compensated employees (i.e., nos. 26-100), the OSM determines the structure, but not the amount, of their annual compensation. As long as the "Next 75" compensation satisfies the OSM structural requirements, the company is free to determine compensation amounts and the form of compensation.

8.  The pay structure for the Next 75, which has been determined by the OSM to be TARP compliant, requires 50 percent of Discretionary Variable Pay that would otherwise be paid in cash to be paid in restricted stock units ("**RSUs**") that must be deferred for three years. Furthermore, of the 50 percent of Discretionary Variable Pay that remains eligible to be paid in cash (the "**AIP Cash**"), 50 percent must be deferred for one year (i.e., 25 percent of overall ResCap AIP) ("**AIP Outstanding Cash**") for individuals with total cash compensation exceeding $500,000.

9.  In the years before the commencement of these Chapter 11 cases, compensation awards were issued under plans administered by AFI to the Debtors' employees in the form of deferred cash, short-term DSUs, long-term DSUs and/or RSUs. The RSUs are equity units that are linked to the appraised value of AFI. RSUs do not vest at the time they are granted, but vest in thirds over a 3-year period and are paid three to four years after the grant date.[3]

**Concerns Voiced by Parties-in-Interest**

10. Certain parties, including, but not limited to, the Official Committee of Unsecured Creditors, advised the Debtors that they believed that the Debtors' existing compensation structure, in which certain individuals received a portion of their compensation in the form of equity units issued by AFI, presented a potential conflict of interest because an individual's compensation was tied directly to the fluctuating value of AFI's equity units (i.e., DSUs, RSUs and IRSUs), which could be affected by the actions taken in these Chapter 11 cases. *See, e.g.*, Statement of Wilmington Trust, N.A. [Docket No. 2265].

---

[3] Before the commencement of these Chapter 11 cases, the vesting and monetization terms for the RSU issued under AFI LTECIP were updated so that grants awarded after April 4, 2012 would vest ratably over the course of two years from the date of grant and monetize in full after two years from the date of grant. To date, none of the Debtors' employees have received RSU grants under the AFI LTECIP after April 4, 2012.

ny-1068713                              4

11.   Although the Debtors do not agree, on November 7, 2012, in response to these concerns and in an effort to avoid any appearance of a conflict of interest, the Debtors asked the OSM to consider modifying the existing compensation structure for the Debtors' employees. Specifically, the Debtors sought to compensate its members of the Top 25 and Next 75 in the form of deferred cash in lieu of equity units issued by AFI.

**Recent Decision by the OSM**

12.   On November 30, 2012, the OSM issued a letter ruling (the "**OSM November Letter**", a copy of which is attached hereto as **Exhibit 1**) in which she granted the Debtors' delinking request and allowed postpetition compensation in the form of specified dollar amounts of AFI stock or stock units to be replaced with identical amounts of deferred cash awards, with all other aspects of timing of the awards and deferral of vesting and transferability and/or ultimate payment to remain the same.

13.   The impact of the OSM November Letter is that:

   **(a)** members of the Top 25 will no longer receive DSUs on a bi-weekly basis on account of their 2012 compensation, but will only receive deferred cash payments on the deferred schedule previously determined by the OSM (i.e., one-third on 12/31/12, one-third pro rata during 2013 and the remaining one-third pro rata during 2014);

   **(b)** 2013 compensation for members of the Top 25 will only be in the form of base salary (payable in cash) and deferred cash; and

   **(c)** members of the Next 75 will no longer receive (i) DSUs as part of their vested KEIP awards or (ii) RSUs as part of their deferred AIP awards, and any future

compensation will only be in the form of cash or deferred cash, with the deferred cash paid out 1-2 years after an award is issued.

14. Notwithstanding the Debtors' ability to de-link its employees' compensation from the value of AFI's equity units, the Debtors' ordinary business practice of having AFI act as the Debtors' payroll processor will continue, and the Debtors will have to reimburse AFI for all postpetition compensation amounts paid by AFI to the Debtors' employees, including through the escrow account contemplated by the Term Sheet.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2012, at Fort Washington, Pennsylvania.

*Anne M Janiczek*
Anne Janiczek
EVP, Chief Human Resources Officer
Residential Capital, LLC

**EXHIBIT 1**

ny-1068713



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

November 30, 2012

Mr. James J. Duffy
Chief Human Resources Officer
Ally Financial Inc.
1177 Avenue of the Americas
New York, NY 10036

> Re:   *Compensation Payments and Structure for Certain Ally "Top 100" Employees*

Dear Mr. Duffy:

Pursuant to the Department of the Treasury's Interim Final Rule on TARP Standards for Compensation and Corporate Governance (the "Rule"),[1] the Office of the Special Master issued a determination letter regarding 2012 compensation payments and structures for the senior executive officers and next 20 most highly compensated employees (the "top 25 employees") of Ally Financial Inc. ("Ally" or the "Company") on April 6, 2012 (the "top 25 letter"). 31 C.F.R. § 30.16(a)(3)(i). The Office of the Special Master also issued a determination letter regarding 2012 compensation structures for employees who are either executive officers of Ally or are among Ally's 100 most highly compensated employees ("top 100 employees"), excluding the top 25 employees ("next 75 employees") on May 9, 2012 (the "next 75 letter" and, together with the top 25 letter, the "2012 Ally determination letters").

Certain of Ally's top 100 employees are employees of Ally's mortgage subsidiary Residential Capital, LLC ("ResCap"), which filed for bankruptcy in May 2012. Pursuant to the normal guidelines of the Office of the Special Master, as explained in the 2012 Ally determination letters, a large percentage of the 2012 compensation for those employees of ResCap was required to be in the form of compensation based on the value of Ally stock. ResCap has informed us that representatives of the unsecured creditors committee in the bankruptcy have raised concerns that compensation payments for services to the bankruptcy estate that are based on the value of Ally stock present an appearance of a conflict of interest for those individuals in Ally's top 100 employees who are employees of ResCap. Although ResCap representatives do not believe there is a conflict of interest, and believe that their employees are acting diligently in the best interests of the creditors of the bankruptcy estate, they also believe that modifying the compensation structure to address the concerns of the unsecured creditors committee will facilitate the bankruptcy process. Accordingly, Ally and ResCap have submitted to the Office of the Special Master a proposal to modify compensation for ResCap employees to avoid any appearance of a conflict of interest.

---

[1] The Interim Final Rule and all determination letters issued by the Office of the Special Master are available at www.financialstability.gov (click on "Executive Compensation").

In a statement at the time of the ResCap bankruptcy filing,[2] Timothy G. Massad, Treasury's Assistant Secretary for Financial Stability, emphasized that Treasury consented to the filing based on its belief that, by addressing the legacy mortgage liabilities at ResCap, the bankruptcy process would "put taxpayers in a stronger position to maximize the value of their remaining investment in Ally". Maximization of overall returns to taxpayers is one of the chief principles guiding the determinations of the Office of the Special Master. 31 C.F.R. § 30.16(b)(1).

The Office of the Special Master has reviewed the proposal regarding stock-based compensation for those individuals in the group of Ally's top 100 employees who are employees of ResCap, and has determined as follows. Commencing as of the ResCap bankruptcy filing on May 14, 2012, compensation awarded or to be awarded pursuant to the 2012 Ally determination letters, as modified by the June 8 and July 6, 2012 supplemental determination letters, to those individuals in Ally's top 100 employees who are employees of ResCap, in the form of specified dollar amounts of Ally stock or stock units shall be replaced with identical dollar amounts of deferred cash awards, with all other aspects of timing of awards and deferral of vesting and transferability and/or ultimate payment to remain the same.

The determination in this letter applies only to the employees referenced above and shall not be relied upon by anyone with respect to any other facts or circumstances. For the avoidance of doubt, this determination does not affect the compensation of any top 100 employee at Ally other than those who are employees of ResCap, and does not affect awards to ResCap employees made prior to May 14, 2012. Such conclusion is limited to the authority vested in the Office of the Special Master by Section 30.16(a)(3) of the Rule, and shall not constitute, or be construed to constitute, the judgment of the Office of the Special Master or the Department of the Treasury with respect to the compliance of the proposed compensation payments or structure or any other compensation payments or structure for the subject employees with any other provision of the Rule. Moreover, my evaluation and conclusion with respect to these employees have relied upon, and are qualified in their entirety by, the accuracy of the materials submitted by Ally and ResCap to the Office of the Special Master, and the absence of any material misstatement or omission in such materials.

Very truly yours,

Patricia Geoghegan
Office of the Special Master
for TARP Executive Compensation

cc:   Richard Strahota
      Drema M. Kalajian, Esq.

---

[2] Timothy G. Massad, *Putting Taxpayers in a Stronger Position to Continue Recovering Their Investment in Ally Financial* (May 14, 2012), available at www.financialstability.gov.