MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

In re:

RESIDENTIAL CAPITAL, LLC, et al.,

                Debtors.

-------------------------------------------------------------------

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' MOTION FOR
ORDER UNDER 11 U.S.C. §§ 105(a), 365(a) AND 554(a) AND FED. R. BANKR. P. 6006
AND 9014, AND LOCAL BANKRUPTCY RULE 6006-1 APPROVING PROCEDURES
REGARDING THE FUTURE REJECTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

       The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") submit this reply (the "Reply") to the responses[1] to the *Debtors' Motion for Order*

---

[1]    *The Objection of the RMBS Trustees to the Debtors' Motion for Order Under 11 U.S.C §§ 105(a), 365(a), and
554(a), Fed. R. Bankr. P. 6006 and 9014, and Local Bankruptcy Rule 6006-1 Approving Procedures Regarding the
Future Rejection of Executory Contracts and Unexpired Leases* [Docket No. 2412] (the "RMBS Trustees'
Objection"); the *Limited Joinder of Wells Fargo Bank, N.A., as Custodian for Residential Mortgage Backed
Securities Trusts, to Objection of the RMBS Trustees to Debtors' Motion for Order Under 11 U.S.C § § 105(a),
365(a), and 554(a), Fed. R. Bankr. P. 6006 and 9014, and Local Bankruptcy Rule 6006-1 Approving Procedures
Regarding the Future Rejection of Executory Contracts and Unexpired Lease*s [Docket No. 2413] (the "Wells Fargo
Joinder"); and the *Joinder of U.S. Bank National Association, the Bank of New York Mellon, the Bank of New York
Mellon Trust Company, N.A. and Wells Fargo Bank, N.A. as Matter Services for Residential Mortgage Backed
Securities Trusts to Objection of the RMBS Trustees to Debtors' Motion for Order Under 11 U.S.C §§ 105(a),
365(a), and 554, Fed. R. Bankr. P. 6006 and 9014, and Local Bankruptcy Rule 6006-1 Approving Procedures*

*Under 11 U.S.C. §§ 105(a), 365(a) and 554(a) and Fed. R. Bankr. P. 6006 and 9014, and Local*

*Bankruptcy Rule 6006-1 Approving Procedures Regarding the Future Rejection of Executory*

*Contracts and Unexpired Leases* [Docket No. 2326] (the "Motion"). In further support, the

Debtors respectively allege as follows:

## REPLY

1.        The Debtors have agreed to consensually resolve most of the issues raised by the

Respondents, as set forth in the revised proposed order (a copy of which is annexed hereto as

Exhibit 1, the "Proposed Order"). Specifically, the issues that the Debtors believe have been

resolved include the following:

- To the extent the Debtors seek to reject Servicing Agreements[2] relating to

  securitizations, the Debtors shall serve a Rejection Notice upon the current

  trustee and master servicer for the securitization;

- Any Servicing Agreements that the Debtors propose to reject shall not be

  included on Rejection Notices that contain other types of contracts and

  leases, but shall be set forth on separate Rejection Notices containing only

  Servicing Agreements (with no more than 100 Servicing Agreements

  contained on each such Rejection Notice);[3]

- If the Rejection Notice lists a Servicing Agreement, the Objection Notice

  Parties shall have 30 days to file with the Court and serve any objection;

  and

---

*Regarding the Future Rejection of Executory Contracts and Unexpired Leases* [Docket No. 2414] (the "Master
Servicers' Joinder" and collectively with the RMBS Trustees' Objection and the Wells Fargo Joinder, the
"Responses." Each of the respondents shall be referred to herein as the "Respondents").
[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Proposed Order.
[3] Substantially all of the Debtors' Servicing Agreements are being assumed and assigned to Ocwen Loan Servicing,
LLC, in connection with the sale of the Debtors' mortgage loan origination and servicing platform. Accordingly,
the Debtors anticipate that few, if any, Servicing Agreements will be rejected pursuant to the Rejection Procedures.

- Claims arising out of Rejected Contracts must be filed on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases, or (ii) forty-five (45) days after the Rejection Date, or, (iii) if an objection to the Rejection Notice with respect to a Servicing Agreement is timely filed and received, forty-five (45) days after the withdrawal or resolution of the objection.

2.    The Respondents also have raised a concern regarding the proposed Rejection Date of the Rejected Contracts with respect to Servicing Agreements. Specifically, the Respondents object to the Debtors' ability to reject Servicing Agreements as of the date of the Rejection Notice.

3.    The Debtors submit that a Rejection Date that is effective as of the date the Debtors file and serve a Rejection Notice is permitted under the Bankruptcy Code and fair and reasonable under the circumstances. "[C]ourts considering the issue of whether a bankruptcy court is authorized to assign a retroactive rejection date under section 365(a) have held that it may do so 'when the principles of equity so dictate.'" BP Energy Co. v. Bethlehem Steel Corp., No. 02-CV-6419, 2002 U.S. Dist. LEXIS 22052, at *10 (S.D.N.Y. Nov. 15, 2002) (citation omitted). Courts in this jurisdiction and others have authorized a rejection date as of the date of service of the rejection notice. See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos, 482 F.3d 602, 607 (2d Cir. 2007) (assuming without deciding that the bankruptcy court had equitable authority to make its order retroactive); BP Energy Co. v. Bethlehem Steel Corp., 2002 U.S. Dist. LEXIS 22052, at *14 (holding that "a bankruptcy court is not prohibited from assigning a pre-objection rejection date" and affirming the bankruptcy court's determination to assign a retroactive rejection date that preceded the counterparty's objection deadline); Constant Ltd. P'ship v.

3

Jamesway Corp. (In re Jamesway Corp.), 179 B.R. 33, 38 (S.D.N.Y. 1995) (authorizing the

debtor to reject a lease retroactively where the landlord caused delay in the bankruptcy court's

decision).  See also Colony Beach & Tennis Club, Inc. v. Colony Beach & Tennis Club Assoc.

(In re Colony Beach & Tennis Club Ass'n), No. 8:09-CV-535-T-33, 2010 U.S. Dist. LEXIS

18294, at *13 (M.D. Fla. Mar. 2, 2010) (holding that "the bankruptcy court did not err in making

the effective date of the rejection of the [lease] retroactive to the filing date of the Debtor's

Motion to Reject."); In re Mid Region Petroleum, Inc., 111 B.R. 968, 970 (Bankr. N.D. Okla.

1990), aff'd, Gen. Am. Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130

(10th Cir. 1993) (effective date of rejection of leases was the date the trustee gave notice to

lessor of intent to reject); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R.

524, 535 (Bankr. D.N.J. 1988) (debtor may reject executory contract by clearly communicating

intention to reject).

4.      Indeed, this Court has recently authorized rejection procedures that allow for

rejection to be retroactive to the date the rejection notice is served.  See In re MF Global

Holdings, Ltd., Case No. 11-15059 (MG) (Bankr. S.D.N.Y. Mar. 15, 2012) (Docket No. 566)

("the Rejection Notice shall set forth … the proposed effective date for the rejection of each such

Contract (which shall not be a date prior to the date of service of the Rejection Notice)"); In re

Borders Group, Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y. June 2, 2011) (Docket No. 964)

(same).

5.      In this case, in the event the Debtors determine to reject any Servicing

Agreements, it is critical that the Debtors be permitted to reject the Servicing Agreements

effective as of the date of service of the Rejection Notice.  Specifically, for each day the Debtors

remain obligated under the Servicing Agreements, it is possible that the Debtors could be

4

required to fund advances for taxes, insurance, principal, and interest on the mortgage loans

related to those Servicing Agreements.  The Debtors typically are reimbursed for these payments

under the terms of the Servicing Agreements, but are concerned that their ability to actually

collect advances could be challenged following the rejection of the Servicing Agreement.

6.    In response to the Respondents' concern regarding the transition of the servicing

obligations to a successor servicer, the Debtors have revised the Proposed Order to include a

transition period whereby the Debtors shall continue to perform their servicing obligations.

However, it would be overly burdensome for the Debtors to become obligated today to continue

funding servicing advances of principal and interest—at a significant cost—upon rejection when

there is no certainty that such payments will be reimbursed by the not-yet-identified successor

servicer.  Accordingly, the Debtors have modified the Proposed Order to make clear that even

following the rejection of a Servicing Agreement, they will continue to meet their servicing

obligations under the Servicing Agreements for a period of time without being obligated to make

advances of principal and interest.  Specifically, the Proposed Order has been modified to

provide as follows:

> (h) Notwithstanding anything to the contrary set forth in this paragraph 2,
>
> if the Rejection Notice lists a Servicing Agreement, any objection to the
>
> proposed rejection shall be filed with the Court and actually received by
>
> the Objection Notice Parties not later than 30 days after the Rejection
>
> Notice is filed.  Notwithstanding the foregoing, and subject to the
>
> limitations noted below, the Debtors will continue to perform their
>
> respective obligations under each applicable Servicing Agreement
>
> identified in the Rejection Notice in accordance with the terms and

5

provisions thereof and shall cooperate with any successor servicer and the

applicable trustee and master servicer in respect of the transition of such

servicing until the earlier of (i) the date the Servicing Agreements are

transitioned to a new servicer, and (ii) ninety (90) days after the date of

the service of the Rejection Notice; *provided* that if an objection is filed

to the rejection of the Servicing Agreement such ninety (90) day period

shall be extended to the earlier of (i) sixty (60) days after the Court

upholds the Debtors' determination to reject the Servicing Agreement, or

(ii) the date that the Servicing Agreement is transitioned to a new servicer

(either such period, the "Servicing Period"); *provided further, however,*

that the Debtors shall continue to receive any applicable servicing fees

during the Servicing Period, and *provided further,* that notwithstanding

the Debtors' agreement to continue performing servicing obligations,

nothing herein shall require the Debtors to make any advances of

principal and interest under the Servicing Agreements during the

Servicing Period, and any claims resulting from the Debtors' agreement

to perform under the Servicing Agreements during the Servicing Period

shall not be subject to administrative expense status as a result of this

Order.

7.      This language should satisfy the Respondents' concerns regarding the transition

of rejected Servicing Agreements to a successor servicer, while also eliminating the risk to the

Debtors of being forced to fund advances of principal and interest following the Rejection Date,

which may not be reimbursed.  Further, to the extent a counterparty to the Servicing Agreement

6

or the applicable successor servicer agrees in writing, on a case by case basis, to reimburse the

Debtors for servicing advances made, the Debtors may agree to continue making such advances

following the Rejection Date.

8.      The Debtors submit that the Proposed Order is reasonable and represents a sound

exercise of the Debtors' business judgment.  See NLRB v. Bildisco & Bildisco, 465 U.S. 513,

521 (1984); In re Balco Equities Ltd., 323 B.R. 85, 98 (Bankr. S.D.N.Y. 2005).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court overrule the Responses

and grant the relief requested in the Proposed Order, a copy of which is annexed hereto as

Exhibit 1, and grant such other and further relief as is just and proper.


New York, New York                      /s/ Gary S. Lee
Dated: December 18, 2012                Gary S. Lee
                                        Lorenzo Marinuzzi
                                        Samantha Martin
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Counsel to the Debtors and
                                          Debtors in Possession*

## EXHIBIT 1