**Hearing Date: December 20, 2012 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
|  |  |
| --- | --- |
| In re: | Case No. 12-12020 (MG) |
|  |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
|  |  |
| Debtors. | Jointly Administered |
-------------------------------------------------------------

**MORRISON & FOERSTER LLP'S REPLY TO OMNIBUS OBJECTION OF THE
UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR FIRST
<u>INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

# TABLE OF CONTENTS

Page(s)

BURDEN OF PROOF.................................................................................................1

BACKGROUND......................................................................................................2

GENERAL RESPONSES ...........................................................................................4

SPECIFIC RESPONSES ............................................................................................5

A.    KEIP/KERP ..............................................................................................5

B.    LUMPING .................................................................................................8

C.    VAGUE TIME ENTRIES ............................................................................9

D.    MIS-MATCHED/NON-MATCHED ENTRIES............................................10

E.    MULTIPLE ATTENDEES AT HEARINGS .................................................11

F.    FEE/EMPLOYMENT APPLICATIONS AND OBJECTIONS .......................12

G.    EXPENSES ...............................................................................................13

CONCLUSION .........................................................................................................14

**EXHIBITS**

Exhibit 1 – Excerpts of Hearing Transcript, In re Ambac Financial Group, Inc.,
          Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012)..……………………….4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship,
    369 B.R. 111 (S.D.N.Y. 2007) ................................................................................................. 1

In re Ames Dept. Stores, Inc.,
    76 F.3d 66 (2d Cir. 1996) ........................................................................................................ 6

In re Blackwood Assocs., L.P.,
    165 B.R. 108 (Bankr. E.D.N.Y. 1994) .................................................................................... 1

In re Cenargo Int'l, PLC,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003) .................................................................................... 6

In re Keene Corp.,
    205 B.R. 695 (Bankr. S.D.N.Y. 1997) ............................................................................... 1, 6

In re Kohl,
    421 B.R. 115 (Bankr. S.D.N.Y. 2009) .................................................................................... 6

In re Korea Chosun Daily Times, Inc.,
    337 B.R. 758 (Bankr. E.D.N.Y. 2005) .................................................................................... 6

**STATUTES**

11 U.S.C. § 330 ................................................................................................................................. 6

11 U.S.C. § 1106 and 1107 .............................................................................................................. 4

11 U.S.C. § 1107 .............................................................................................................................. 4

**OTHER AUTHORITIES**

Transcript of Hearing, In re Ambac Financial Group, Inc.,
    Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012) ................................................. 4

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Morrison & Foerster LLP ("M&F" or the "Firm"), bankruptcy counsel to the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), submits this reply (the "Reply") to the objections to the *Omnibus Objection Of The United States Trustee* (the "Trustee") *Regarding Fee Applications For First Interim Compensation And Reimbursement Of Expenses* [Docket No. 2361] (the "Objection").[1]  In further support of the *First Interim Application Of Morrison & Foerster LLP As Bankruptcy Counsel For The Debtors For Compensation And Reimbursement Of Expenses Incurred For The Period May 14, 2012 Through August 31, 2012* [Docket No. 1885] (the "Application"), M&F states as follows:

## BURDEN OF PROOF

1.        The applicant bears the burden of proof on its claim for compensation.  See, e.g., Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship, 369 B.R. 111, 115 (S.D.N.Y. 2007) (citing In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997). However, "[a] party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances.  Absent such evidence by the objectant, the opposition fails." In re Blackwood Assocs., L.P., 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994).  M&F submits that, except as otherwise noted herein, the Application is sufficient to establish the reasonableness of its requested compensation and expenses.  Set forth below are additional disclosures and information that rebut or respond to each of the points raised in the Trustee's Objection.

---

[1]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Objection.

ny-1069287

## **BACKGROUND**

2.     M&F understands, and takes seriously, its obligation to provide complete and accurate time records sufficient to enable the Court to ascertain the reasonableness of the fees being requested, and spends a great deal of (unbilled) time ensuring that time entries are both succinct and adequately descriptive in order to facilitate the Court's review.  However, M&F believes that, with respect to certain categories of fee objections, the Trustee has engaged in an overly formulaic application of the compensation guidelines, thereby placing form over function. Indeed, M&F submits that, in large part, the reasonableness of the fees incurred by M&F during the Fee Period speaks for itself.

3.     The Debtors' bankruptcy cases are unquestionably complex, involving 51 separate Debtor entities, as well as 13 wholly owned indirect subsidiaries organized under the laws of various international jurisdictions, with assets as of the Petition Date totaling approximately $15.7 billion, more than 3,625 employees, tens of thousands of creditors and potential creditors, and the involvement of many other parties in interest including various governmental entities, the Examiner, and the Creditors' Committee.  Despite that complexity, during the Fee Period, the Debtors secured and obtained court approval of over $1.5 billion of DIP financing which stabilized the Debtors' operations and gave the Debtors the opportunity to successfully sell its mortgage loan origination and servicing business and whole loan portfolio. In addition, the Debtors obtained the first-of-their-kind relief to allow them to continue servicing over 2.4 million loans during these Chapter 11 cases.  Moreover, the Debtors obtained Court approval of bidding procedures that allowed them to conduct an auction for the above-referenced assets, which laid the groundwork for the subsequent approval of the sales of those assets to the winning bidders for an aggregate sales price of approximately $4.5 billion—all for the benefit of the Debtors' creditors.  Managing the Debtors' bankruptcy cases, including in this Fee Period

2

alone, has also entailed, among other activities performed by M&F, preparing for and attending

the Debtors' first day hearings and addressing a multitude of issues arising therefrom, working

with the Creditors' Committee to help them understand the issues facing the Debtors, assisting

with the preparation of the Debtors' schedules and statements, seeking approval of programs

designed to ensure the Debtors can retain key employees during the restructuring process, and

assisting with the retention of approximately twenty-nine retained professionals and

approximately 250 ordinary course professionals, whose services are necessary to ensure that

both the bankruptcy process and the Debtors' day-to-day operations run smoothly.  These efforts

have required reliance on many attorneys at M&F with various areas of expertise, many of whom

worked on multiple aspects of the Debtors' cases.

4.      Due to the complexity described above, several of the hearings before this Court

have been, at times, tests of endurance, requiring agendas running to dozens of pages, and the

extended efforts and attendance of multiple teams of attorneys who participated in the

preparation of the underlying pleadings, transactions, and hearing materials.  Despite the

complexity of these cases, despite the critical importance of each step in moving this

restructuring forward, and despite the difficult negotiations between the Debtors and the

Committee and among the important stakeholders in these cases, the number of evidentiary

hearings and truly contested Court proceedings in these cases has been relatively minimal.  M&F

respectfully submits that such proceedings have been limited in great measure because of the

tireless dedication and efforts of the Debtors and their respective professionals.

5.      In light of the extraordinary accomplishments achieved in the Debtors'

Chapter 11 cases to date, M&F submits that the fees and expenses requested in the Application

were incurred in connection with services that provided a clear benefit to the Debtors' estates.

3

M&F further submits that its Application, including the time records appended thereto, provides

sufficient information to ascertain the reasonableness of the fees for which M&F seeks

allowance, which were incurred in furtherance of those accomplishments.  Accordingly, M&F

requests that the Court overrule the Trustee's Objection except as otherwise agreed herein, and

approve M&F's Application on an interim basis.

### <u>GENERAL RESPONSES</u>

6.    M&F notes that as part of its efforts to minimize the costs to the Debtors' estates,

M&F has staffed the matter as efficiently as possible, as described in greater detail below.

Moreover, M&F believes that all time billed to the matter provided a direct benefit to the

Debtors' estates in that it was incurred in the furtherance of the Debtors' fiduciary obligations

pursuant to sections 1106 and 1107 of the Bankruptcy Code.  Further, as set forth in the

Application, M&F has already taken a voluntary reduction of $106,511.50 in the aggregate for

all timekeepers that billed less than five hours in any given month during the Fee Period in

connection with this engagement.  This reduction exceeds by $51,667.00 the amount that would

be required to be written off under the standard typically applied by the Trustee, which

categorizes as transitory only those timekeepers that bill less than five hours during the entire

Fee Period.  M&F's voluntary reductions are even more generous in light of Judge Chapman's

recent pronouncement that the transitory timekeeper rule should not apply to partners or other

senior attorneys who, in light of their experience and expertise, can provide legal advice that

materially benefits the estate in a relatively brief period of time.[2]  M&F voluntarily reduced fees

for partners that billed less than five hours during the Fee Period in the aggregate amount of

$27,842.00, and for senior and of counsel that billed less than five hours during the Fee Period in

---

[2]    <u>See</u> Hearing Transcript at 6:12-9:1, <u>In re Ambac Financial Group, Inc.</u>, Case No. 10-15973 (SCC) (Bankr.
S.D.N.Y. Nov. 27, 2012), annexed hereto as <u>**Exhibit 1**</u>.

the aggregate amount of $9,337.00.  Accordingly, M&F has already taken approximately

$88,846.00 in voluntary fee reductions above and beyond those required under the Trustee's

guidelines, as construed in <u>Ambac</u>.

7.     Additionally, the reductions sought by the Trustee overlap in many cases.  For

example, with respect to single time entries, the Trustee is seeking both a 50% reduction for

multiple attendees, and a 30% reduction for lumping, for an aggregate reduction of 80%.  (<u>See</u>,

<u>e.g.</u>, Obj., Exhibit C at 96.)  Even if the individual reductions are warranted (which, as discussed

below, M&F does not concede), the total reduction resulting from the Trustee's "double dipping"

is not.

8.     M&F believes that, with the exception of certain expenses described below, its

requested compensation and expenses are reasonable and appropriate.  Nevertheless, in the

interest of avoiding the unnecessary expense and delay for the Debtors' estates that would

incurred if M&F were to engage in a detailed review and analysis of the backup documentation

relating to the requested fees and expenses that are cited in the Objection, M&F has proposed

aggregate reductions of $65,685.00 in fees and $11,180.00 in expenses, and deferral of interim

approval of the contested KEIP fees, as set forth in more detail below.[3]

## SPECIFIC RESPONSES

### A.  KEIP/KERP

9.     The Trustee objects to M&F's fees incurred in connection with the prosecution of

the "retentive" portion of the KEIP, on the grounds that (a) such fees are excessive and (b) the

actions taken by M&F in incurring such fees did not provide, and could not have provided, a

benefit to the estate, and seeks a reduction of $308,539, equal to 25% of the fees in the

---

[3]     To the extent the proposed reductions are not acceptable to the Trustee, M&F reserves its right to contest any
additional reductions recommended by the Trustee at the hearing to approve the Application.

ny-1069287

"Employee Matters" project code.  (Obj. at 33-34.)  As an initial matter, the Objection is unclear

regarding the basis for the Trustee's request that 25% of all fees in the "Employee Matters"

project code be disallowed (i.e., whether the Trustee assumed approximately 25% of the time in

that project code is allocable to the "retentive" KEIP and seeks to disallow such fees in their

entirety, or whether, in recognition of the fact that it is impossible to determine with any

precision which time entries related to that matter, the Trustee simply decided on a percentage

arbitrarily).  In the absence of a sufficient justification for the amount of the reduction requested,

the Trustee's Objection should be overruled.

10.    Regardless of the rationale underlying the 25% reduction in "Employee Matter"

fees sought by the Trustee, the Trustee applies the wrong legal standard.  In the Second Circuit,

the "necessary" standard in section 330 of the Bankruptcy Code is given broad interpretation.  In

re Kohl, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009).  Services are "necessary" if they benefit the

estate.  Id. (citing In re Keene Corp., 205 B.R. at 695).  The test considers whether services

provided were "reasonably likely to benefit the estate."  Id.  The test is objective, considering the

services that a reasonable lawyer would have performed in the same circumstances.  In re Kohl,

at 125.  (citing In re Ames Dept. Stores, Inc., 76 F.3d 66 (2d Cir. 1996)).  Because courts

reviewing fee applications have the benefit of perfect hindsight, caution should be exercised to

ensure that attorneys are not penalized for prosecuting actions that were reasonable at the time.

See In re Korea Chosun Daily Times, Inc., 337 B.R. 758, 767 (Bankr. E.D.N.Y. 2005)

(observing that while courts must exclude excessive and unnecessary expenses of time when

reviewing fee applications, courts "must not penalize attorneys by viewing the efforts of counsel

with the benefit of '20/20 hindsight'" (citation omitted)).  See also In re Cenargo Int'l, PLC, 294

B.R. 571, 595-96 (Bankr. S.D.N.Y. 2003):

> The appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive . . . Thus, section 330(a)'s "benefit" and "necessary" criteria do not require a professional to be 100% successful. They are satisfied if a reasonable attorney would have believed at the time that a particular service would benefit the estate, taking into consideration the chances of success and the reasonably-projected attendant costs.

11.    Here, the Trustee urges that M&F's prosecution of the KEIP in these cases was inherently unreasonable because the KEIP as initially proposed was denied and bore "a striking similarity" to a proposed KEIP that was denied in another case. (Obj. at 34.) The Trustee's Objection cannot be sustained on that basis, however. M&F respectfully suggests that this Court's time is at a premium. The fact that this Court spent a full twenty-five pages detailing the arguments for and against the KEIP and engaged in a reasoned analysis thereof belies the Trustee's assertion that the unreasonableness of the KEIP was clear on its face. Rather, the Trustee's objection to these fees on the basis that they were incurred in pursuit of an unreasonable incentive plan smacks of an attempt by the Trustee to discourage future debtors from seeking approval of a KEIP over the Trustee's objection. With all due respect, the opinions of this Court and others regarding the standards applicable to such plans should guide parties' actions, not the fear that fees incurred in connection with making good faith legal arguments will be challenged by the Trustee in the event the plan is not approved.

12.    Further, although the amount of time billed to that matter is significant, it is not unreasonable in light of the importance of key employees to the Debtors' ability to successfully operate their mortgage origination and servicing platforms as a going concern post-petition, a feat that is unprecedented. As with several of the other largest categories of fees incurred during this period—discovery, first days, asset sales—ensuring the retention of employees is a task that

may appear to consume an inordinate amount of time and energy at the outset of the chapter 11

process.  However, M&F is confident that, when viewed in the context of the overall case, the

proportion of fees incurred in connection with the KEIP will be demonstrably reasonable.

Accordingly, M&F is willing to postpone seeking interim approval of those disputed amounts,

which will be held over (or, to the extent already paid, credited against the 20% holdback) at this

time.

13.    Finally, the Trustee is seeking a 25% reduction of the <u>entire</u> amount of fees

incurred under the "Employee Matters" task code.  It is impossible in many instances to parse

what portion of a call or meeting on employee matters related specifically to the "retentive"

portion of the KEIP, M&F is unable to determine exactly what proportion of the time entries in

the "Employee Matters" task code is directly attributable to the retentive portion of the KEIP.

However, in addition to time incurred in connection with the development and prosecution of the

KEIP/KERP, that task code also contains time incurred in connection with other employee-

related matters, including, but not limited to, analysis of insurance coverage for directors and

liabilities, issues related to the termination or transitioning of employees among entities as a

result of the bankruptcy filing and/or the Debtors' asset sales, and the negotiation and revision of

the order approving the Debtors' employee wages motion.  Accordingly, to the extent a reduction

of such fees (as opposed to disallowance of such fees in their entirety) is subsequently

determined by the Court to be appropriate on the basis asserted by the Trustee, M&F submits

that the reduction should not be based on the entire fees in the "Employee Matters" project code.

**B.  Lumping**

14.    The Trustee seeks a reduction of approximately $14,372, which the Trustee

asserts represents 30% of aggregate fees related to lumped time entries. (Obj. at 34-35.)  M&F

respectfully suggests that in many instances, the Trustee has engaged in an unduly strict

8

application of the "lumping" rule.[4]   Nonetheless, M&F is willing to forego those fees in the

interest of saving the estates the expense that would be incurred in trying to provide a more

detailed description by engaging in a detailed and time consuming review and analysis of the

original time entries, and suggests that the Trustee's proposed reduction of $14,372 is acceptable.

### C.  Vague Time Entries

15.    The Trustee asserts that time entries totaling $214,986 are impermissibly vague,

and that the Court should reduce the fee for those services by approximately $64,495, or 30% of

the aggregate vague time entries.  (Obj. at 35.)  M&F respectfully suggests that if many of these

entries were reviewed in the context of surrounding time entries (including in particular

reference to the project code under which the entry is found) and/or by individuals familiar with

the Debtors' cases, no further detail would be required.  In fact, providing further detail, even

with respect to some of the entries cited by the Trustee as deficient, runs the risk of revealing

confidential information.  By way of example, the Trustee cites the following as time entries as

being vague:  "Call with UCC counsel and advisors and ResCap regarding 9019 discovery and

production of loan tapes and loan files (2.0)," Obj., Ex. C at 167; "Call with MoFo team

regarding memorandum to client regarding business operations and interim orders (.9)," id. at 15;

"call with working group to prepare for call with chambers regarding discovery schedule relating

to Ally servicing (1.0)," id. at 136; "call with client regarding additional revision to PwC 363

motion (1.0)" id. at 146; "Call with Carpenter Lipps regarding status of collection and review of

documents relating to second SEC subpoena (1.2)," id.  "M&F respectfully believes that such

time entries, particularly in the context of the full time records submitted and the Application

---

[4]     By way of example, the Trustee identifies the following  time entry as "lumped:  "meet with J. Newton
regarding analysis of servicing terminations and coordination of response, addressing creditor/borrower
inquiries on stay issues and pending litigations, and preparing responses to [b]uy back demands (1.0)," Obj.,
Ex. C at 42.  The entry clearly relates to a single meeting at which multiple topics were discussed.  Rather than
lumping time, the entry provides a detailed description of the topics covered at that single event.

itself, are sufficient to permit the reviewer to determine whether the requested fees are

reasonable in amount and were incurred in connection with the provision of services that were

both actual and necessary.

16.     Nonetheless, M&F is willing to forego a portion of its fees in the interest of

saving the estates the expense that would be incurred in trying to provide a more detailed

description by engaging in a detailed and time consuming review and analysis of the original

time entries, and suggests that a lesser reduction of $21,498, or 10% of the of the aggregate time

entries identified by the Trustee as vague, is acceptable.

**D.  Mis-Matched/Non-Matched Entries**

17.     The Trustee seeks aggregate reductions of $10,883.00 in fees for time entries

identified as "mis-matched" or "non-matched," but fails to identify the substantive basis for such

a reduction.  (Obj. at 36.)  The implication appears to be that if multiple individuals attend the

same hearing, meeting or call but record different times, at least one of the entries must be

incorrect.  This supposition ignores the reality that individuals may arrive or depart at different

times, may step out to attend to a different matter at some point during the period at issue, or

may be asked to participate in the meeting, hearing or call for only a subset of the full agenda.

Thus, the differences in recorded time do not reflect incorrect entries, but are, to the contrary,

indicative of accurate time keeping.  In the absence of clear evidence that time entries are

incorrect, M&F submits that its professionals should be accorded the benefit of the doubt.  In

fact, a determination to the contrary would penalize accurate timekeepers and might incentivize

less scrupulous professionals to simply round up all time entries for attendees at the same call or

meeting to the highest time billed by any individual in order to give the appearance of consistent

entries, thereby avoiding Trustee objections.  That cannot be a sound result.

10

18.     Nonetheless, M&F is willing to forego those fees in the interest of saving the estates the expense that would be incurred in litigating the relatively modest amount of fees at issue, and suggests that the Trustee's proposed reduction of $10,883.00 is acceptable.

### E. Multiple Attendees at Hearings

19.     The Trustee asserts that the amount of time incurred by multiple attendees at various hearings should be reduced by $189,321.50, or 50% of the time incurred by multiple attendees attending various hearings.  (Obj. at 36.)  As this Court is well aware, the Debtors' cases are extremely complex, and require the efforts of many attorneys working on a number of discrete workstreams.  At any given omnibus hearing, motions involving many, if not most, of those matters may be before the Court.  In order to ensure that the individuals with the most complete and accurate knowledge of such matters are available to address motions and objections and to provide timely responses to issues raised by the Court or other parties in interest, it is M&F's policy that the attorneys working on the motions scheduled to be heard attend the applicable hearings.  Rather than being excessive or unnecessarily duplicative, this practice helps to ensure that hearings—which are the only opportunity for the Court, as well as many parties in interest, to raise questions and receive answers from the Debtors' representative on a "real time" basis—are as efficient and productive as possible.  Moreover, to the extent attorneys were required to attend an omnibus hearing in connection with a discrete matter or matters, in many instances and to the extent practicable, those attorneys excused themselves once that matter was complete.  (Ironically, this practice, which was intended to reduce incurring of unnecessary fees, was itself the subject of an objection by the Trustee, as set forth in Part D, *supra*.)  M&F also notes that the Trustee raised a similar objection to the fees incurred by counsel for the Creditors' Committee, Kramer Levin, but only requested a 25% reduction of those fees.  M&F can ascertain no logical basis for this difference, particularly where Debtors'

11

counsel bears the burden of proof, and therefore the lions' share of the work, with respect to the majority of the motions before the Court at any hearing.

20.     Nonetheless, M&F is willing to forego a portion of its fees in the interest of saving the estates the expense that would be incurred in trying to provide a more detailed description by engaging in a detailed and time consuming review and analysis of the original time entries, and suggests that a lesser reduction of $18,932, or 5% of the of the aggregate time entries identified by the Trustee as being attributable to multiple attendees at hearings, is acceptable.  To the extent the Court determines that a greater reduction in fees for multiple attendees at hearings is warranted, M&F suggests that the reduction should be of no greater percentage than that required of other retained professionals in these cases.

**F.  Fee/Employment Applications and Objections**

21.     The Trustee objects to fees incurred under the project categories of "Fee/Employment Applications" (totaling $417,387.50) and "Fee/Employment Objections" (totaling $97,980) on the sole basis that such amounts appear to be excessive "in light of the numbers of professionals employed by the estate and the amount of the overall request," and seeks a 15% reduction of those fees.  (Obj. at 36.)  This conclusory statement is not borne out by the facts.

22.     The Debtors, the Committee and the Examiner have sought and obtained approval to retain and employ approximately twenty-nine separate professionals.  A number of those retentions have been contested, and a number of the Debtors' professionals have limited experience with the retention and fee application process in the context of a bankruptcy case, necessitating frequent correspondence.  In addition, the Debtors worked extensively with the Committee to try to resolve objections informally when possible.  The retention of those professionals was required in order to ensure that the Debtors' day-to-day servicing operations

12

continue uninterrupted and that they remain in compliance with the DOJ and FRB consent

orders, as acknowledged by this Court's approval of their retention applications. Accordingly,

M&F submits that the fees incurred in connection with these categories are both reasonable and

necessary, and requests that the Trustee's Objection on this point be overruled.

### G. Expenses

23.     With respect to the "Business Meals" expenses identified on page 37 of the

Objection, M&F has provided the requested substantiation to the Trustee. In the process of

compiling those materials, M&F identified certain expenses that appear to have exceeded the $20

per person reimbursement threshold, or for which M&F was unable to ascertain the exact

number of individuals present at a particular meal (primarily conference catering) without

requesting that each meeting organizer perform a laborious review of his or her notes and records

to confirm the attendees at a given meeting. However, conference catering is typically only

ordered for meetings with three attendees or more. Out of an abundance of caution and in order

to ensure full compliance with applicable expense reimbursement guidelines, M&F has reduced

its request for reimbursement for such expenses by an additional $4,000 to $15,236.29 in the

aggregate.

24.     The expense of $25,446.61 for black and white photocopying charges incurred

with respect to the Fee Period, as identified on page 37 of the Objection, represents 363,523

photocopies, or an at-cost charge of $0.07 per page. Accordingly, M&F submits that the request

for reimbursement of $25,446.61 is appropriate. The expense of $10.052.00 for color

photocopying charges incurred with respect to the Fee Period, as identified on page 37 of the

Objection, represents 14,360 photocopies, or an at-cost charge of $0.70 per page. Accordingly,

M&F agrees that a reduction of $7,180.00 to $2,872.00, reflecting a charge of $0.20 per page, is

appropriate.

ny-1069287

## CONCLUSION

In light of the points made above, M&F submits that an aggregate reduction of

$65,685.00 in fees and $11,180.00 in expenses, and deferral of interim approval of the contested

KEIP fees in the amount of $308,539, is appropriate.  Accordingly, M&F proposes to seek

interim compensation for the Fee Period in the amount of $14,293,523.50, and reimbursement

for expenses for the Fee Period in the amount of $587,369.72.


WHEREFORE, M&F respectfully requests that the Court enter an order (a) approving

interim compensation in the sum of $14,293,523.50 and interim reimbursement of expenses in

the sum of $587,369.72, and directing prompt payment of all compensation and expenses not

previously paid, and (b) granting to M&F such other and further relief as the Court may deem

proper.


New York, New York                    /s/ Lorenzo Marinuzzi
Dated: December 19, 2012               Gary S. Lee
                                       Lorenzo Marinuzzi
                                       Erica J. Richards
                                       MORRISON & FOERSTER LLP
                                       1290 Avenue of the Americas
                                       New York, New York 10104
                                       Telephone: (212) 468-8000
                                       Facsimile: (212) 468-7900

                                       *Counsel to the Debtors and*
                                       *  Debtors in Possession*

**<u>EXHIBIT 1</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2  ------------------------------

*In re:*                              Case No. 10-15973-scc
3                                      New York, New York
   AMBAC FINANCIAL GROUP, INC.        November 27, 2012
4                          *Debtor.*   10:13 a.m. - 10:30 a.m.
   ------------------------------

5          TRANSCRIPT - CASE 10-15973-SCC - CHAPTER 11

6     FIRST APPLICATION OF HOGAN LOVELLS US LLP AS ATTORNEYS FOR

7  THE DEBTOR FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES

      RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
8
         PERIOD APRIL 18, 2012 THROUGH AUGUST 31, 2012

9                       [DOCKET NO. 1106];

10   FIRST APPLICATION OF SHEARMAN & STERLING LLP AS ATTORNEYS FOR

11  THE DEBTOR FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES

       RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
12
          PERIOD MAY 29,2012 THROUGH AUGUST 31, 2012

13                      [DOCKET NO. 1121];

14     FIRST INTERIM APPLICATION OF MAYER BROWN LLP, AS SPECIAL

15      CORPORATE COUNSEL TO THE DEBTOR, FOR COMPENSATION AND

16  REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM APRIL

       12, 2012 THROUGH AUGUST 31,2012 [DOCKET NO. 1108];

17   THIRD INTERIM APPLICATION OF WHYTE HIRSCHBOECK DUDEK S.C. AS

18     SPECIAL COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED

19    CREDITORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

20  INCURRED FOR THE PERIOD APRIL 1, 2012 THROUGH AUGUST 31,2012

                        [DOCKET NO. 1105];
21
       FIFTH INTERIM APPLICATION OF LAZARD FRERES & CO. LLC AS

22      FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE OFFICIAL

23      COMMITTEE OF UNSECURED CREDITORS FOR COMPENSATION AND

     REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD APRIL 1,
24
        2012 THROUGH AUGUST 31, 2012 [DOCKET NO. 1104];

25

(Agenda Continued)

1

FIFTH INTERIM APPLICATION OF MORRISON & FOERSTER LLP AS

2

COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR

3

COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE

4

PERIOD APRIL 1, 2012 THROUGH AUGUST 31, 2012

5

[DOCKET NO. 1103];

6

FIFTH INTERIM FEE APPLICATION OF WACHTELL, LIPTON, ROSEN &

7

KATZ AS SPECIAL COUNSEL TO THE DEBTOR FOR INTERIM ALLOWANCE

FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED

8

FROM APRIL 1, 2012 THROUGH AUGUST 31, 2012

9

[DOCKET NO. 1102]

10

FIRST APPLICATION OF WINSTON & STRAWN LLP, AS SPECIAL COUNSEL

TO THE DEBTOR, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

11

FOR THE PERIOD MAY 9, 2012 THROUGH AUGUST 31, 2012

12

[DOCKET NO. 1096];

13

THIRD INTERIM FEE STATEMENT OF PRICEWATERHOUSECOOPERS LLP,

14

ACCOUNTING AND VALUATION ADVISORS TO THE DEBTOR, FOR

COMPENSATION FOR SERVICES AND FOR REIMBURSEMENT OF EXPENSES

15

[DOCKET NO. 1101];

16

FIFTH FEE APPLICATION OF KPMG LLP, AS AUDITORS, TAX

17

CONSULTANTS AND BANKRUPTCY ADMINISTRATION CONSULTANTS TO THE

18

DEBTOR AND DEBTOR IN POSSESSION, FOR INTERIM ALLOWANCE AND

COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND

19

REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM

20

APRIL 1, 2012 THROUGH AUGUST 31, 2012 [DOCKET NO. 1098];

21

THIRD INTERIM FEE APPLICATION OF BUTTNER HAMMOCK & CO. P.A.

22

AS LITIGATION CONSULTANTS FOR THE DEBTOR FOR INTERIM

ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES

23

RENDERED AND EXPENSES INCURRED FROM APRIL 1, 2012

24

THROUGH AUGUST 31, 2012 [DOCKET NO. 1099]; AND

25

(Agenda Continued)

FIFTH APPLICATION OF BLACKSTONE ADVISORY PARTNERS L.P. AS

FINANCIAL ADVISOR TO THE DEBTORS FOR INTERIM ALLOWANCE OF

COMPENSATION FOR ACTUAL AND NECESSARY SERVICES RENDERED AND

REIMBURSEMENT OF ACTUAL AND NECESSARY OUT-OF-POCKET EXPENSES

INCURRED FOR THE PERIOD OF APRIL 1, 2012 THROUGH

AUGUST 31, 2012 [DOCKET NO. 1100].

APPEARANCES ON BEHALF OF

*The Debtor:*              ALLISON H. WEISS, ESQ.
                           Hogan Lovells US, LLP
                           (212) 918-3000; (212) 918-3100 fax

*Unsecured Creditor's*     AARON KLEIN, ESQ.
  *Committee:*             Morrison & Foerster LLP
                           (212) 468-8000; (212) 468-7900 fax

*The U.S. Trustee:*        BRIAN S. MASUMOTO, ESQ.
                           (212) 510-0500; (212) 668-2255 fax

*The U.S. Attorney:*       CARINA H. SCHOENBERGER, ESQ.
                           (212) 637-2822; (212) 637-2717 fax

*Unsecured Creditor's*     BRUCE ARNOLD, ESQ.
  *Committee:*             Whyte Hirschboeck Dudek S.C.
  *(via telephone)*        (414) 978-5501; (414) 223-5000 fax

*Interested party:*        TIMOTHY BASS
*(via telephone)*          Barclays Capital, Inc.
                           (212) 412-3606

*Interested party:*        MICHAEL B. CUNNINGHAM
*(via telephone)*          Avenue Capital
                           (310) 882-3012

*Interested party:*        LUKE KWIATKOWSKI
*(via telephone)*          KPMG LLP
                           (212) 954-6273

*Transcribed by:*          AAA ELECTRONIC SOUND REPORTERS
                           (888) 866-5135; (888) 677-6131 fax
                           electronicsound@court-transcripts.net

          *(Proceedings recorded by electronic sound recording)*

In re Ambac Financial Group - 11/27/12                                    6

1          I'm sorry, Your Honor, we did have one other

2     application with respect to Shearman & Sterling.  With respect

3     to those objections, that begins on page 20, paragraph 40.  They

4     agreed to reduce their transitory timekeepers by $750.50.  And

5     they provided time records to review, and that's acceptable.

6     They're also taking a further reduction for the $40 in word

7     processing, and $123.75 for word processing and proofreading

8     expenses.

9                THE COURT:  Okay.  Thank you.

10               MR. KLEIN:  Good morning, Your Honor --

11               THE COURT:  Good morning.

12               MR. KLEIN:  -- Aaron Klein.  Morrison & Foerster for

13    the Committee.

14               Your Honor, we did have some substantive discussions

15    earlier with the Office of the United States Trustee regarding

16    our fee application.  I think the issues that are still on the

17    table are the objection to the so-called transitory timekeepers.

18               THE COURT:  Mm-hm.

19               MR. KLEIN:  Those timekeepers that throughout the fee

20    period billed less than five hours.  And also we have still some

21    open items with respect to review of our retained professionals'

22    fee applications.

23               If I can address the timekeepers' issue first; we

24    acknowledge the position of the United States Trustee with

25    respect to writing off time billed by those timekeepers that are

1   less than five hours.  We understand that's written into the

2   proposed rules for the United States Trustee fee guidelines that

3   are not yet in affect.  Our position is this -- and we're

4   definitely willing to be reasonable about who we can write off

5   and who we don't wrote off.

6          Our position is there were certain issues in this case

7   which required us to consult certain professionals who were not

8   regular timekeepers on this case.  The U.S. Trustee has

9   identified I think five of them, and I can go through each one

10  of them and say why they made a valuable contribution to the

11  case.

12         I think, taking it down the line, they mention Barbara

13  Mendelson who's a partner in our Corporate Department at

14  Morrison & Foerster.  We had an issue with a Bermuda entity.  We

15  wanted -- the Debtor wanted to liquidate.

16         THE COURT:  Let me stop you because this is a topic on

17  which I have an opinion that Mr. Masumoto may or may not have

18  had the pleasure of hearing from me before.  A transitory

19  timekeeper generally, as it's come to be called, is someone that

20  as you say bills fewer than -- I don't know what the particular

21  cutoff is -- ten hours/five hours; some small amount of hours.

22         There are two kinds of such timekeepers.  One, the

23  kind that you're describing, which is you have a discreet issue

24  that only requires someone to think about it for an hour; some

25  arcane issue of the law, a foreign jurisdiction, a tax issue,

1   something of that sort.  So somebody who works full time on the

2   case goes to that person and says, hey, I want to pick your

3   brain on this issue, and you talk.  And then you say to the

4   person, bill .5 to Ambac.  Here's the number and that's it.

5   That's compensable.  Whether it's .5 or whether it's five,

6   that's compensable because that person's given their expertise.

7           What's not compensable is junior associate is on

8   vacation so another junior associate gets asked to do some task,

9   or a paralegal is on vacation, and another paralegal gets asked

10  to do a task.  And part of that person's time is spent making up

11  for the fact that the other person really isn't there.  Those

12  are the kinds of transitory timekeepers that frankly

13  professionals should bill off by themselves without having to be

14  prompted by the U.S. Trustee.

15          So the only thing that I'm interested in is which is

16  which and that's the way it needs to be resolved.  So if you

17  want to go through each of them we're rapidly getting to the

18  point that this is going to cost more than what you're writing

19  off, which is another one of my pet peeves.

20          MR. KLEIN:  Agreed, Your Honor.  I can represent to

21  the Court that each of these are senior level people, where we

22  went to them with discreet issues of law for the very purpose of

23  picking their brain, as opposed to a junior associate --

24          THE COURT:  All right.  So to the extent that the U.S.

25  Trustee has a continuing objection to those timekeepers, it's

In re Ambac Financial Group - 11/27/12                               9

1    overruled.  Okay?  And then what's the other category?

2              MR. KLEIN:  The other category, Your Honor, is review

3    of our own fee applications, billing for the time taken for our

4    fee applications, and also the fee applications of our retained

5    professionals, Lazard and Whyte Hirschboeck.  The United States

6    Trustee noted in his objection that you can't -- it's

7    impermissible to bill for manipulation of time records or review

8    of time records.

9              THE COURT:  Not manipulation.  That's an unfortunate

10   choice of words.

11             MR. KLEIN:  Sorry.  Pardon me, Your Honor.  For

12   revision or review of time records.

13             THE COURT:  Right.

14             MR. KLEIN:  Verses a fee application.  Now, you

15   understand, Your Honor, when you go to build a fee application,

16   we're talking about a six month fee period; you have to review

17   the actual time records --

18             THE COURT:  Right.

19             MR. KLEIN:  -- in order to build out the narratives.

20             THE COURT:  Sure.

21             MR. KLEIN:  And so that's what we've had.  And I can

22   represent to the Court that in each of the line items that the

23   United States Trustee has highlighted in the objection that is

24   what was going on here, which is we were reviewing the time

25   records, and then we were building out, and reviewing and