**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF JENNIFER J. BARRETT IN SUPPORT OF THE MOTION OF
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY SEEKING LIMITED
DISCOVERY FROM THE DEBTORS AND RELIEF FROM STAY
IMPOSED BY THE FHFA ORDER**

I, Jennifer J. Barrett, make this declaration pursuant to 28 U.S.C. § 1746. I hereby state
as follows:

1.      I am a Partner at the law firm of Quinn Emanuel Urquhart & Sullivan, LLP,
attorneys for Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual"). I
respectfully submit this declaration in support of MassMutual's Motion Seeking Limited
Discovery From The Debtors And Relief From Stay Imposed By The FHFA Order (the
"Motion"). I make this declaration of personal, firsthand knowledge, and, if called and sworn as
a witness, I could and would testify competently thereto. All terms not otherwise defined herein
have the same meanings as defined in the Motion.

2.      Attached hereto as Exhibit A is a chart identifying the twelve (12) securitizations
that were sponsored by the Debtors and that form the basis of the action styled *Massachusetts
Mutual Life Insurance Company v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*, which
currently is pending in the United States District Court for the District of Massachusetts as Civil

Action No. 3:11-cv-30285. Exhibit A shows (in bolded print) three securitizations for which the

Debtors already have agreed to provide loan tapes to FHFA.

3.　　　Attached hereto as Exhibit B is a true and correct copy of MassMutual's First Set

of Joint Interrogatories to Defendants Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche

Bank Securities Inc., Goldman, Sachs & Co., J.P. Morgan Securities LLC., and RBS Securities

Inc. (collectively, the "Defendants in the MassMutual Action"), served in the MassMutual

Action on July 23, 2012.

4.　　　Attached hereto as Exhibit C is a true and correct copy of MassMutual's First Set

of Requests for Production to Merrill Lynch, Pierce, Fenner & Smith Inc., served in the

MassMutual Action on July 23, 2013. Substantially similar requests for production were served

on each of the Defendants in the MassMutual Action on July 23, 2013, and each request for

production included a request that the defendant produce "all loan tapes for each Securitization"

listed in Exhibit A.

5.　　　Attached hereto as Exhibit D are true and correct copies of (1) MassMutual's

Motion to Compel Further Discovery Responses; and (2) MassMutual's Memorandum of Law in

Support of its Motion to Compel Further Discovery Responses, filed by MassMutual in the

MassMutual Action as Document Numbers 73 and 74, respectively, on October 1, 2012.

6.　　　Attached hereto as Exhibit E is a true and correct copy of a letter sent by

MassMutual to Defendants in the MassMutual Action on November 20, 2012, identifying

deficiencies in the loan tapes produced by Defendants in the MassMutual Action.

7.　　　Attached hereto as Exhibit F is a true and correct copy of a letter sent by

Defendants in the MassMutual Action to MassMutual on November 30, 2012, representing that

the Defendants in the MassMutual Action have no additional loan tapes.

8.      Attached hereto as Exhibit G is a true and correct copy of a letter sent by MassMutual to counsel for the Debtors named in the above-captioned action on December 4, 2012, requesting that they produce the loan tapes for the securitizations listed in Exhibit A.

9.      Attached hereto as Exhibit H is a true and correct copy of a letter sent by counsel for the Debtors to MassMutual on December 4, 2012, indicating that the Debtors would not provide the loan tapes.

10.     Attached hereto as Exhibit I is a true and correct copy of a letter sent by MassMutual to counsel for Ally Financial, Inc. on December 11, 2012, requesting that Ally Financial, Inc. produce the loan tapes for the securitizations listed in Exhibit A.

11.     Attached hereto as Exhibit J is a true and correct copy of an email sent by counsel for Ally Financial, Inc. to MassMutual on December 13, 2012, indicating that Ally Financial, Inc. does not possess the loan tapes.

12.     Attached hereto as Exhibit K is a true and correct copy of the Scheduling Order entered by the Honorable Michael A. Ponsor in the MassMutual Action as Document Number 60 on June 27, 2012.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct, and that this declaration was executed this  20th day of December,

2012, at New York, New York.

Jennifer J. Barrett

# EXHIBIT A

December 11, 2012

**EXHIBIT A**

| Securitization Name | Certificate | Sponsor and Depositor |
|---|---|---|
| Residential Asset Mortgage Products, Inc. Series 2005-RZ1 | RAMP Series 2005-RZ1, Class M1 and Class M2 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| **Residential Accredit Loans, Inc. Series 2005-QO4** | **RALI Series 2005-QO4, Class 2A1** | **Residential Funding Corporation (Sponsor)**<br><br>**Residential Accredit Loans, Inc. (Depositor)** |
| Residential Accredit Loans, Inc. Series 2006-QO1 | RALI Series 2006-QO1, Class 3A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO3 | RALI Series 2006-QO3, Class A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| **Residential Accredit Loans, Inc. Series 2006-QO4** | **RALI Series 2006-QO4, Class 2A1** | **Residential Funding Corporation (Sponsor)**<br><br>**Residential Accredit Loans, Inc. (Depositor)** |
| Residential Asset Mortgage Products Series 2006-RS4 | RAMP Series 2006-RS4, Class M9 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |

December 11, 2012

| Securitization Name | Certificate | Sponsor and Depositor |
|---|---|---|
| Residential Accredit Loans, Inc. Series 2006-QO6 | RALI Series 2006-QO6, Class A2 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RZ3 | RAMP Series 2006-RZ3, Class M8 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RS6 | RAMP Series 2006-RS6, Class M7 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products, Inc. Series 2007-RZ1 | RAMP Series 2007-RZ1, Class M6, Class M7, and Class M8 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| **Residential Asset Securities Corp. Series 2007-KS3** | **RASC Series 2007-KS3, Class M3S** | **Residential Funding Company, LLC (Sponsor)**<br><br>**Residential Asset Securities Corporation (Depositor)** |
| Residential Accredit Loans, Inc. Series 2007-QH6 | RALI Series 2007-QH6, Class A1 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC.; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC.,<br><br>        Defendants. | Civil Action No. 3:11-cv-30285-MAP |

## MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S FIRST SET OF JOINT INTERROGATORIES TO DEFENDANTS

PLEASE TAKE NOTICE THAT, pursuant to Rule 33 of the Federal Rules of Civil

Procedure, Rule 33.1 of the Local Rules of the United States District Court for the District of

Massachusetts, and the Court's June 27, 2012 Scheduling Order, Plaintiff Massachusetts Mutual

Life Insurance Company, by its undersigned counsel, hereby demands that Defendants Merrill

Lynch, Pierce, Fenner & Smith, Inc.; Deutsche Bank Securities Inc.; Goldman, Sachs & Co.; J.P.

Morgan Securities LLC; and RBS Securities, Inc. respond to the following joint interrogatories

within thirty days after service of this First Set of Joint Interrogatories.

## DEFINITIONS

1.      The definitions set forth in Local Rule 26.5 of the United States District Court for

the District of Massachusetts are hereby incorporated into these Definitions.

2.      "Certificate" or "Certificates" means any certificate or note issued in any of the

Securitizations that entitles the holder or owner of the Certificate to certain distributions.

3.      "Mortgage Loans" means any and all mortgage loans included in the

Securitizations, including mortgage loans added to the loan pools after closing.

4.      "Offering Materials" refers to registration statements, preliminary and final

prospectuses, prospectus supplements, term sheets, presentations, summaries, reports, and any

other preliminary or final document used to market and solicit the Certificates or otherwise

describe the Certificates or each Securitization to investors, including all drafts of such

documents.

5.      "Originators" refers to those who provided a Mortgage Loan to a borrower or who

acquired the loan before transferring the loan to the Sponsor of the Securitizations.  Thus, for

purposes of these Interrogatories, a loan may have multiple "Originators" if it was transferred

multiple times before being transferred to the Sponsor.  The Originators shall include such

entities regardless of whether they are specifically identified in the Offering Materials.

6.      "Securitization" or "Securitizations" refers to any of:  (a) the Residential Asset

Mortgage Products, Inc. Series 2005-RZ1 securitization; (b) the Residential Accredit Loans, Inc.

Series 2005-QO4 securitization; (c) the Residential Accredit Loans, Inc. Series 2006-QO1

securitization; (d) the Residential Accredit Loans, Inc. Series 2006-QO3 securitization; (e) the

Residential Accredit Loans, Inc. Series 2006-QO4 securitization; (f) the Residential Asset

Mortgage Products, Inc. Series 2006-RS4 securitization; (g) the Residential Accredit Loans, Inc.

Series 2006-QO6 securitization; (h) the Residential Asset Mortgage Products, Inc. Series 2006-

RZ3 securitization; (i) the Residential Asset Mortgage Products, Inc. Series 2006-RS6

securitization; (j) the Residential Asset Mortgage Products, Inc. Series 2007-RZ1 securitization;

(k) the Residential Asset Securities Corp. Series 2007-KS3 securitization; and (l) the Residential

Accredit Loans, Inc. Series 2007-QH6 securitization.

7.      "Sponsor" refers to Residential Funding Corporation, which changed its name to

Residential Funding Company, LLC.

## JOINT INTERROGATORIES

## JOINT INTERROGATORY NO. 1:

For each Securitization, identify all Originators of the Mortgage Loans included in the

Securitization and the percentage of loans by number and original principal balance that each

originated.

## JOINT INTERROGATORY NO. 2:

For each Securitization, identify all third-party due diligence firms that assisted any

underwriter in conducting due diligence in connection with the Securitization, including without

limitation any due diligence conducted on the Mortgage Loans or the disclosures in the Offering

Materials.


DATED:  July 23, 2012            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                 By:  /s/ Harry A. Olivar
                                 Harry A. Olivar, Jr. (admitted *pro hac*)
                                 Molly Stephens (admitted *pro hac*)
                                 865 South Figueroa Street, 10th Floor
                                 Los Angeles, CA 90017
                                 Telephone:  (213) 443-3000
                                 Fax:  (213) 443-3100
                                 harryolivar@quinnemanuel.com
                                 mollystephens@quinnemanuel.com

                                 EGAN, FLANAGAN AND COHEN, P.C.

                                 Edward J. McDonough Jr. (BBO 331590)
                                 Stephen E. Spelman (BBO 632089)
                                 Egan, Flanagan and Cohen, P.C.
                                 67 Market Street, P.O. Box 9035
                                 Springfield, Massachusetts  01102
                                 Telephone:  (413) 737-0260
                                 Fax:  (413) 737-0121
                                 ejm@efclaw.com;
                                 ses@efclaw.com

                                 *Attorneys for Plaintiff Massachusetts Mutual Life
                                 Insurance Co.*

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the below-listed

attorneys-of-record for each other party by first-class mail and electronic mail on this 23rd day of

July, 2012.

Jeffrey B. Rudman (jeffrey.rudman@wilmerhale.com)
Andrea J. Robinson (andrea.robinson@wilmerhale.com)
Christopher B. Zimmerman (christopher.zimmerman@wilmerhale.com)
Adam Horstine (adam.hornstine@wilmerhale.com)
Brian J. Boyle (brian.boyle@wilmerhale.com)
Wilmer Hale LLP
60 State Street
Boston, MA 02109

Katherine B. Dirks (katherine.dirks@wilmerhale.com)
WilmerHale
399 Park Avenue
New York, NY 10022

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith Inc.*

Kathy B. Weinman (kweinman@collorallp.com)
Azure M. Abuirmeileh (aabuirmeileh@collorallp.com)
Collora LLP
600 Atlantic Avenue
12th Flr.
Boston, MA 02210

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendants Deutsche Bank Securities Inc. and RBS Securities Inc.*

Mark A. Berthiaume (berthiaumem@gtlaw.com)
Zachary C. Kleinsasser (kleinsasserz@gtlaw.com)
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Stephanie G. Wheeler (wheelers@sullcrom.com)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

*Attorneys for Defendant Goldman, Sachs & Co.*

Jeffrey L. McCormick (jmccormick@robinsondonovan.com)
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115

Robert H. Baron (rbaron@cravath.com)
Karin A. DeMasi (kdemasi@cravath.com)
J. Wesley Earnhardt (wearnhardt@cravath.com)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

*Attorneys for Defendant J.P. Morgan Securities LLC*

*/s/ Colleen M. Keating*

_____
Colleen M. Keating

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 3:11-cv-30285-MAP |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC.; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

### MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION TO MERRILL LYNCH, PIERCE, FENNER & SMITH INC.

PLEASE TAKE NOTICE THAT, pursuant to Rule 34 of the Federal Rules of Civil

Procedure, Plaintiff Massachusetts Mutual Life Insurance Company, by its undersigned counsel,

hereby demands that Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. produce the

following documents within thirty days after service of these Requests at the offices of Quinn

Emanuel Urquhart & Sullivan, LLP.  The documents requested are to be produced according to

the following definitions and instructions:

## **DEFINITIONS**

1.       The definitions set forth in Local Rule 26.5 of the United States District Court for

the District of Massachusetts are hereby incorporated into these Definitions.

2.       "BOA Securities" means Banc of America Securities LLC, an underwriter of the

Securitizations, as well as its officers, directors, agents, servants, employees, affiliates,

accountants, consultants, and attorneys, all other persons acting or purporting to act on its behalf.

3.       "Bloomberg Terminal" refers to the computer system provided by Bloomberg

L.P. that provides news, price quotes, and messaging across its proprietary secure network.

4.       "Certificate" or "Certificates" means any certificate or note issued in any of the

Securitizations that entitles the holder or owner of the Certificate to certain distributions.

5.       The words "referring" and/or "relating to" mean describing, discussing,

constituting, containing, considering, embodying, evaluating, mentioning, memorializing,

supporting, collaborating, demonstrating, providing, showing, refuting, disputing, rebutting,

controverting, contradicting, and made in connection with or by reason of or arising therefrom.

"Refer or relate to" has the same meaning as "referring or relating to."

6.       "MassMutual" means Plaintiff Massachusetts Mutual Life Insurance Company, as

well as its officers, directors, agents, servants, employees, affiliates, accountants, consultants,

and attorneys, all other persons acting or purporting to act on its behalf, and every entity that is

owned, controlled, operated by, or that is under common ownership, control or operation with

Massachusetts Mutual Life Insurance Company.

7.      "Mortgage Loans" means any and all mortgage loans included in each

Securitization, including mortgage loans added to the loan pools after closing.

8.      "Offering Materials" refers to registration statements, preliminary and final

prospectuses, prospectus supplements, term sheets, presentations, summaries, reports, and any

other preliminary or final document used to market and solicit the Certificates or otherwise

describe the Certificates or each Securitization to investors, including all drafts of such

documents.

9.      "Originators" refers to those who provided a Mortgage Loan to a borrower or who

acquired the loan before transferring the loan to the Sponsor of the Securitizations.  Thus, for

purposes of these Requests, a loan may have multiple "Originators" if it was transferred multiple

times before being transferred to the Sponsor.  The Originators shall include such entities

regardless of whether they are specifically identified in the Offering Materials.

10.      "RFC" refers to Residential Funding Corporation (now known as Residential

Funding Company, LLC), Residential Accredit Loans, Inc., Residential Asset Mortgage

Products, Inc., and Residential Asset Securities Corp., as well as their officers, directors, agents,

servants, employees, affiliates, accountants, consultants, and attorneys, all other persons acting

or purporting to act on their behalf, and every entity that is owned, controlled, operated by them,

or that is under common ownership, control or operation with them.

11.    "Securitization" or "Securitizations" refers to any of:  (a) the Residential Asset

Mortgage Products, Inc. Series 2006-RZ3 securitization; and (b) the Residential Asset Mortgage

Products, Inc. Series 2007-RZ1 securitization.

12.    "Sponsor" refers to Residential Funding Corporation, which changed its name to

Residential Funding Company, LLC.

13.    The "Trust" or "Trusts" refers to:  (a) RAMP Series 2006-RZ3 Trust; and (b)

RAMP Series 2007-RZ1 Trust.

14.    "You" and "Your" means Merrill Lynch, Pierce, Fenner & Smith Inc., as well as

its officers, directors, agents, servants, employees, affiliates, accountants, consultants, and

attorneys, all other persons acting or purporting to act on its behalf, and every entity that is

owned, controlled, operated by, or that is under common ownership, control or operation with

Merrill Lynch, Pierce, Fenner & Smith Inc.

## <u>INSTRUCTIONS</u>

1.    Unless otherwise indicated, the documents requested to be produced in this Notice

include all documents in Your possession, custody, or control or the possession, custody, or

control of anyone acting on Your behalf.  If any requested document was, but no longer is, in

Your possession, custody, or control, state the disposition of each such document.

2.    Responsive documents should be produced in the manner prescribed by the

Federal Rules of Civil Procedure, including producing the requested documents as they are kept

in the usual course of business or organized and labeled to correspond with the categories in the

requests, and identifying the name of the person from whose files the documents were produced.

3.      You are to produce the original and all non-identical copies, including all drafts, of each document requested.  If You are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.

4.      Electronic records and computerized information must be produced in their native format with all metadata preserved and intact.

5.      Selection of documents from the files and other sources and the numbering of such documents shall be performed in such a manner as to ensure that the source of each document may be determined, if necessary.

6.      File folders with tabs or labels or directories of files identifying documents must be produced intact with such documents.

7.      A document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy and copies of any document if there is no actual original or ribbon copy.

8.      The singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; reference to any gender includes the other gender; the words "any" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possibly the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including but not limited to."  Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

9.      Any references in these document requests to an individual or person include any and all agents, advisors, employees, representatives, attorneys, successors-in-interest, and all other persons or entities acting in his, her, or its behalf or under his, her or its control.

10.     If any document is withheld under any claim of privilege, including without limitation, attorney-client privilege and attorney work product,  please provide the following information with respect to such document: (a) the date of the document; (b) the title of the document; (c) the name of its author(s) or preparer(s) and an identification by employment and title of each such person; (d) the name of each person who was sent or furnished with, received, viewed or has custody of the document or a copy thereof together with an identification by employment and title of each such person; (e) the request to which the document relates; (f) the title and description of the document to identify it sufficiently without revealing the information for which privilege is claimed; (g) the claim of privilege under which it is withheld; and (h) a description of the subject matter of the document in sufficient detail to support Your contention that the document is privileged.

11.     If, after exercising due diligence to secure them, You cannot provide some or any of the requested documents, so state and provide all documents to the extent possible, specifying the reason for Your inability to produce the remainder of the documents, and stating whatever information or knowledge You have concerning each document not produced.

12.     If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

13.     If any document responsive to these requests is known to have existed and cannot

now be located, or has been destroyed or discarded, set forth a complete statement of the

circumstances surrounding such loss or destruction, including:  (a) a description of the document,

including the date, a summary of its contents and the identity of its author and the person(s) to

whom is was sent or shown; (b) the last known custodian; (c) whether the document is missing

or lost or was destroyed or discarded; (d) the date of loss, destruction or discard; (e) the manner

of destruction or discard; (f) the reason(s) for destruction or discard; (g) the person(s) authorizing

or carrying out such destruction or discard; and (h) the efforts made to locate lost or misplaced

documents.

14.     If an objection is made to any request, state your objection and the ground or

grounds with particularity in your written response.  If an objection is made only to part of the

request, identify that part in your written response and state your objection and the ground(s)

therefore.

15.     This request is a continuing one.  If, after producing the requested documents, you

obtain or become aware of any further documents responsive to this request, you are required to

produce such additional documents.  Supplemental responses should be served within thirty (30)

days after such information or documents become known to You.

16.     Unless otherwise specified, the time period covered by these requests is from

January 1, 2005 to the present, and shall encompass all documents and information relating in

whole or in part to such period, or to events or circumstances during such period, even though

dated, prepared, generated or received prior to that date.

## REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION NO. 1:

All documents referring or relating to any of the Securitizations.

### REQUEST FOR PRODUCTION NO. 2:

All documents referring or relating to any of the Certificates.

### REQUEST FOR PRODUCTION NO. 3:

All documents referring or relating to any of the Mortgage Loans.

### REQUEST FOR PRODUCTION NO. 4:

All documents referring or relating to BOA Securities' decision to arrange or underwrite each Securitization.

### REQUEST FOR PRODUCTION NO. 5:

All documents referring or relating to the underwriting agreement for each Securitization, including without limitation all drafts of the underwriting agreement.

### REQUEST FOR PRODUCTION NO. 6:

All documents referring or relating to the relationship between BOA Securities and any other underwriters for each Securitization, including without limitation the allocation of responsibilities among the underwriters for each Securitization.

### REQUEST FOR PRODUCTION NO. 7:

All communications between BOA or You and any other underwriters for each Securitization referring or relating to that Securitization.

8

**REQUEST FOR PRODUCTION NO. 8:**

All draft and final transaction documents for each Securitization, including without limitation any pooling and servicing agreement, indenture, insurance agreement, or third-party opinion.

**REQUEST FOR PRODUCTION NO. 9:**

All communications referring or relating to the transaction documents for each Securitization.

**REQUEST FOR PRODUCTION NO. 10:**

All documents referring or relating to BOA Securities' purchase of Certificates from RFC or any Trust for resale or for BOA Securities' own account.

**REQUEST FOR PRODUCTION NO. 11:**

All documents referring or relating to the structure of each Securitization, including without limitation the creation of tranches for the Securitization and the collateralization of each tranche by specific pools of Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 12:**

All documents referring or relating to the pricing of each Certificate.

**REQUEST FOR PRODUCTION NO. 13:**

All documents referring or relating to any fees or other compensation paid to BOA Securities or invoiced by BOA Securities for its role in each Securitization.

**REQUEST FOR PRODUCTION NO. 14**

All documents referring or relating to any financial or ownership interest held by BOA Securities or You in any of the Securitizations.

**REQUEST FOR PRODUCTION NO. 15:**

All documents referring or relating to the deadlines set for each Securitization, including without limitation any timelines for the Securitization and any communications concerning the issuance date for the Securitization.

**REQUEST FOR PRODUCTION NO. 16:**

All documents referring or relating to the actual or potential sale of the Certificates.

**REQUEST FOR PRODUCTION NO. 17:**

All documents referring or relating to the marketing of the Certificates to actual or potential investors.

**REQUEST FOR PRODUCTION NO. 18**

All communications with MassMutual referring or relating to any of the Securitizations or Certificates, including without limitation communications over the Bloomberg Terminal.

**REQUEST FOR PRODUCTION NO. 19**

All drafts of any of the Offering Materials for each Securitization.

**REQUEST FOR PRODUCTION NO. 20**

All documents referring or relating to the preparation of any of the Offering Materials, including without limitation documents referring or relating to the information to be included in or excluded from any of the Offering Materials.

## REQUEST FOR PRODUCTION NO. 21

All documents BOA Securities reviewed or relied on in the preparation of any of the

Offering Materials for each Securitization.

## REQUEST FOR PRODUCTION NO. 22

Documents sufficient to identify all persons involved in the preparation of any of the

Offering Materials for each Securitization.

## REQUEST FOR PRODUCTION NO. 23

All working group lists or working party lists for each Securitization.

## REQUEST FOR PRODUCTION NO. 24

All documents referring or relating to the filing of any of the Offering Materials for each

Securitization with any governmental or regulatory agency, including without limitation the

Securities and Exchange Commission.

## REQUEST FOR PRODUCTION NO. 25

All documents referring or relating to registering the offering of Certificates with any

governmental agency or securities exchange, including without limitation the Securities and

Exchange Commission.

## REQUEST FOR PRODUCTION NO. 26

All documents referring or relating to compliance with any federal or state securities

regulations or laws in marketing or selling any of the Certificates.

**REQUEST FOR PRODUCTION NO. 27**

All communications with any governmental or regulatory agency, including without limitation the Securities and Exchange Commission and the Massachusetts Securities Division, that refer or relate to any of the Securitizations or Certificates.

**REQUEST FOR PRODUCTION NO. 28:**

All documents referring or relating to any due diligence conducted in connection with each of the Securitizations, including without limitation the diligence conducted on the Mortgage Loans or the disclosures in the Offering Materials for each Securitization.

**REQUEST FOR PRODUCTION NO. 29:**

All documents referring or relating to the policies, procedures, guidelines, or instructions for conducting due diligence in connection with any of the Securitizations, including without limitation any changes to or deviations from those policies, procedures, or practices.

**REQUEST FOR PRODUCTION NO. 30:**

All due diligence plans and questionnaires for each Securitization.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to identify all persons employed by BOA Securities who were involved in any due diligence conducted in connection with each Securitization.

**REQUEST FOR PRODUCTION NO. 32:**

Documents sufficient to identify all third-party due diligence firms or auditors that assisted BOA Securities in conducting due diligence in connection with each Securitization.

**REQUEST FOR PRODUCTION NO. 33:**

All drafts of agreements entered into between BOA Securities and any third-party due diligence firm or auditor in connection with each Securitization, including without limitation retention agreements.

**REQUEST FOR PRODUCTION NO. 34:**

All invoices or bills exchanged between BOA Securities and any third-party due diligence firm or auditor in connection with each Securitization.

**REQUEST FOR PRODUCTION NO. 35:**

All communications between BOA Securities and any third-party due diligence firm or auditor referring or relating to the Securitizations, the Mortgage Loans, or the Certificates.

**REQUEST FOR PRODUCTION NO. 36:**

All policies, procedures, guidelines, or instructions applicable to the services or work performed by any third-party due diligence firm or auditor in connection with each Securitization.

**REQUEST FOR PRODUCTION NO. 37:**

All documents referring or relating to any analysis, conclusions, reports, or recommendations by BOA Securities, any third-party due diligence firm, or auditor concerning any of the Securitizations, the Mortgage Loans, or the Certificates.

**REQUEST FOR PRODUCTION NO. 38:**

All documents referring or relating to the actions BOA Securities took in response to any analysis, conclusions, reports, or recommendations by any third-party due diligence firm or auditor concerning any of the Securitizations, the Mortgage Loans, or the Certificates.

**REQUEST FOR PRODUCTION NO. 39**

All documents referring or relating to any recommendation to exclude any mortgage loans from any of the Securitizations, regardless whether the loans were actually excluded.

**REQUEST FOR PRODUCTION NO. 40:**

All documents referring or relating to the decision to accept, reject, substitute, or cure any Mortgage Loans identified as not compliant for any reason.

**REQUEST FOR PRODUCTION NO. 41:**

All documents referring or relating to the decision to waive any deviation from applicable underwriting guidelines or standards in connection with any Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 42:**

All documents provided to BOA Securities by RFC in connection with each of the Securitizations.

**REQUEST FOR PRODUCTION NO. 43:**

All documents provided to BOA Securities by any Trust in connection with each of the Securitizations.

**REQUEST FOR PRODUCTION NO. 44:**

Documents sufficient to identify all Originators for each Securitization and the

percentage of loans by number and original principal balance that each originated.

**REQUEST FOR PRODUCTION NO. 45:**

All documents provided to BOA Securities by any Originator in connection with each of

the Securitizations.

**REQUEST FOR PRODUCTION NO. 46:**

All loan files for the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 47:**

All loan tapes for each Securitization.

**REQUEST FOR PRODUCTION NO. 48:**

All documents referring or relating to the underwriting guidelines or standards applicable

to the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 49:**

All documents referring or relating to compliance with the underwriting guidelines or

standards applicable to the Mortgage Loans, including without limitation any exceptions made to

the underwriting guidelines or standards.

**REQUEST FOR PRODUCTION NO. 50:**

All documents referring or relating to any policies or procedures for detecting fraud in the

origination of the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 51**

All documents referring or relating to the selection of mortgage loans for each of the Securitizations, including without limitation the requirements, criteria, policies, or procedures for the selection of mortgage loans.

**REQUEST FOR PRODUCTION NO. 52**

All documents referring or relating to any requested or actual exchange, repurchase, or removal of any of the Mortgage Loans from the Securitizations.

**REQUEST FOR PRODUCTION NO. 53**

All communications with RFC concerning any of the Securitizations, the Certificates, or the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 54**

All communications with any Trust concerning any of the Securitizations, the Certificates, or the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 55**

All communications with any Originator concerning any of the Securitizations, the Certificates, or the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 56:**

All documents referring or relating to the credit quality of any of the Mortgage Loans, including without limitation the expected delinquency, default, or foreclosure rate of any of the Mortgage Loans.

**REQUEST FOR PRODUCTION NO. 57:**

All documents referring or relating to any quantitative analysis or modeling BOA

Securities or You conducted on the Mortgage Loans, including without limitation any cash flow

modeling or analysis of default risk.

**REQUEST FOR PRODUCTION NO. 58:**

All documents referring or relating to credit ratings for the Certificates, including without

limitation all communications between BOA Securities and any ratings agency in connection

with each Securitization.

**REQUEST FOR PRODUCTION NO. 59:**

All documents referring or relating to any ratings for the Certificates that were obtained

but not used.

**REQUEST FOR PRODUCTION NO. 60:**

All documents referring or relating to any fees paid to any ratings agency in connection

with each Securitization.

**REQUEST FOR PRODUCTION NO. 61**

All documents referring or relating to any appraisers or appraisals for the Mortgage

Loans.

**REQUEST FOR PRODUCTION NO. 62**

All communications between BOA Securities and any appraiser referring or relating to

the Mortgage Loans, the Securitizations, or the Certificates.

**REQUEST FOR PRODUCTION NO. 63**

All documents referring or relating to the quality of any securitizations sponsored by RFC from January 2005 to September 2007, including without limitation documents concerning the performance of mortgage loans or certificates from RFC-sponsored securitizations.

**REQUEST FOR PRODUCTION NO. 64**

All documents referring or relating to the quality of mortgage loans originated by each Originator from January 2005 to September 2007, including without limitation any studies or analyses concerning the Originator's compliance with underwriting guidelines or the rates of delinquency, default, or foreclosure with the Originator's mortgage loans.

**REQUEST FOR PRODUCTION NO. 65**

All documents referring or relating to any due diligence conducted by BOA Securities on RFC from January 2005 to September 2007, including without limitation any due diligence conducted in connection with whole loan purchases, warehouse lending arrangements, or other securitizations.

**REQUEST FOR PRODUCTION NO. 66**

All documents referring or relating to any due diligence conducted by BOA Securities on any Originator from January 2005 to September 2007, including without limitation any due diligence conducted in connection with whole loan purchases, warehouse lending arrangements, or other securitizations.

**REQUEST FOR PRODUCTION NO. 67**

All documents referring or relating to appraisal fraud from January 2005 to September 2007.

## REQUEST FOR PRODUCTION NO. 68

All documents referring or relating to borrower fraud from January 2005 to September 2007.

## REQUEST FOR PRODUCTION NO. 69:

All documents referring or relating to BOA Securities' analysis of the United States housing market from January 2005 to September 2007, including without limitation any reports or memoranda concerning how the housing market might affect the Mortgage Loans.

## REQUEST FOR PRODUCTION NO. 70

All documents referring or relating to any credit enhancements obtained for any of the Securitizations by way of insurance, swap, or other contracts, including without limitation all drafts of the contracts and all communications with the contract counterparties.

## REQUEST FOR PRODUCTION NO. 71

All communications with any mortgage insurer or financial guaranty insurer concerning any of the Securitizations, the Certificates, or the Mortgage Loans.

## REQUEST FOR PRODUCTION NO. 72

All documents BOA Securities or You produced or made available to any congressional body, regulatory agency, law enforcement agency, or other governmental agency or person referring or relating to residential mortgage-backed securitizations, including without limitation any documents You produced or made available to the Financial Crisis Inquiry Commission or the U.S. Senate Permanent Subcommittee on Investigations.

**REQUEST FOR PRODUCTION NO. 73**

All communications with RFC and/or any debtors named in the action *In re Residential*

*Capital, LLC, et al.*, Case No. 12-12020, pending in the bankruptcy court for the Southern

District of New York, concerning indemnification or other claims arising from BOA Securities'

underwriting of RFC-sponsored securitizations between January 2005 to September 2007.

**REQUEST FOR PRODUCTION NO. 74**

Documents sufficient to show BOA Securities' corporate structure from January 1, 2005

to the date it ceased its operations.

**REQUEST FOR PRODUCTION NO. 75**

Documents sufficient to show Your corporate structure from January 1, 2010 to the

present.

**REQUEST FOR PRODUCTION NO. 76**

BOA Securities' document retention policies in effect from January 1, 2005 to the date it

ceased its operations.

**REQUEST FOR PRODUCTION NO. 77**

Your document retention policies in effect from January 1, 2010 to the present.

**REQUEST FOR PRODUCTION NO. 78**

All draft and final transaction documents for the merger of BOA Securities and You that

was consummated on or about November 1, 2010.

**REQUEST FOR PRODUCTION NO. 79**

All documents referring or relating to Your assumption of BOA Securities' liabilities as a

result of the merger consummated on or about November 1, 2010.

DATED:  July 23, 2012            QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                By:  /s/ Harry A. Olivar
                                Harry A. Olivar, Jr. (admitted *pro hac*)
                                Molly Stephens (admitted *pro hac*)
                                865 South Figueroa Street, 10th Floor
                                Los Angeles, CA 90017
                                Telephone:  (213) 443-3000
                                Fax:  (213) 443-3100
                                harryolivar@quinnemanuel.com
                                mollystephens@quinnemanuel.com

                                EGAN, FLANAGAN AND COHEN, P.C.

                                Edward J. McDonough Jr. (BBO 331590)
                                Stephen E. Spelman (BBO 632089)
                                Egan, Flanagan and Cohen, P.C.
                                67 Market Street, P.O. Box 9035
                                Springfield, Massachusetts  01102
                                Telephone:  (413) 737-0260
                                Fax:  (413) 737-0121
                                ejm@efclaw.com;
                                ses@efclaw.com

                                *Attorneys for Plaintiff Massachusetts Mutual Life
                                Insurance Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the below-listed

attorneys-of-record for each other party by first-class mail and electronic mail on this 23rd day of

July, 2012.

Jeffrey B. Rudman (jeffrey.rudman@wilmerhale.com)
Andrea J. Robinson (andrea.robinson@wilmerhale.com)
Christopher B. Zimmerman (christopher.zimmerman@wilmerhale.com)
Adam Horstine (adam.hornstine@wilmerhale.com)
Brian J. Boyle (brian.boyle@wilmerhale.com)
Wilmer Hale LLP
60 State Street
Boston, MA 02109

Katherine B. Dirks (katherine.dirks@wilmerhale.com)
WilmerHale
399 Park Avenue
New York, NY 10022

*Attorneys for Defendant Merrill Lynch, Pierce, Fenner & Smith Inc.*

Kathy B. Weinman (kweinman@collorallp.com)
Azure M. Abuirmeileh (aabuirmeileh@collorallp.com)
Collora LLP
600 Atlantic Avenue
12th Flr.
Boston, MA 02210

Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017-3954

*Attorneys for Defendants Deutsche Bank Securities Inc. and RBS Securities Inc.*

Mark A. Berthiaume (berthiaumem@gtlaw.com)
Zachary C. Kleinsasser (kleinsasserz@gtlaw.com)
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

Richard H. Klapper (klapperr@sullcrom.com)
Theodore Edelman (edelmant@sullcrom.com)
Stephanie G. Wheeler (wheelers@sullcrom.com)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498

*Attorneys for Defendant Goldman, Sachs & Co.*

Jeffrey L. McCormick (jmccormick@robinsondonovan.com)
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115

Robert H. Baron (rbaron@cravath.com)
Karin A. DeMasi (kdemasi@cravath.com)
J. Wesley Earnhardt (wearnhardt@cravath.com)
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019

*Attorneys for Defendant J.P. Morgan Securities LLC*


/s/ Colleen M. Keating
_____
Colleen M. Keating

# EXHIBIT D

12-12020-mg    Doc 3509-1    Filed 12/20/12    Entered 12/20/12 20:34:40    Exhibit
Case 3:11-cv-30285-MAP    Document 73    Filed 10/03/12    Page 4 of 4
Declaration of Jennifer J. Barrett in Support of Motion    Pg 40 of 98

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 3:11-30285-MAP |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MASSMUTUAL'S NOTICE OF MOTION TO COMPEL
## FURTHER DISCOVERY RESPONSES

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") hereby moves, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Rule 37.1(b), for an order to compel further responses to MassMutual's (i) First Set of Joint Interrogatories to Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Deutsche Bank Securities Inc. ("Deutsche Bank"), Goldman, Sachs & Co. ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan"), and RBS Securities Inc. ("RBS") (collectively, "Defendants"); (ii) First Set of Requests for Production to each Defendant; and (iii) First Set of Requests for Admission to Merrill Lynch.

Specifically, MassMutual moves to compel further discovery responses as follows:

1

12-12020-mg   Doc 3503-1   Filed 12/20/12   Entered 12/20/12 20:34:40   Exhibit
Case 3:11-cv-30285-MAP   Document 73   Filed 10/02/12   Page 2 of 4
Declaration of Jennifer J. Barrett in Support of Motion   Pg 41 of 98

- <u>Merrill Lynch</u>:  MassMutual moves to compel (i) further responses to Joint Interrogatory Nos. 1-2; (ii) compliance with the timeframe generally governing the Requests for Production; (iii) a search for documents beyond the limitations imposed by Merrill Lynch's General Objections Nos. 14-16; (iv) further responses to Requests for Production Nos. 10, 12, 16-18, 25-27, 46, 58-59, 63-69, 72-73, 78-79; and (v) further responses to Request for Admission No. 1;

- <u>Deutsche Bank</u>:  MassMutual moves to compel (i) further responses to Joint Interrogatory Nos. 1-2; (ii) compliance with the timeframe generally governing the Requests for Production; and (iii) further responses to Requests for Production Nos. 27, 63-69, 72-73;

- <u>Goldman Sachs</u>:  MassMutual moves to compel (i) further responses to Joint Interrogatory Nos. 1-2; (ii) compliance with the timeframe generally governing the Requests for Production; and (iii) further responses to Requests for Production Nos. 1-73;

- <u>J.P. Morgan</u>:  MassMutual moves to compel (i) further responses to Joint Interrogatory Nos. 1-2; (ii) compliance with the timeframe generally governing the Requests for Production; (iii) a search for documents beyond the limitations imposed by J.P. Morgan's General Objection No. 7; and (iv) further responses to Requests for Production Nos. 27, 46, 63-69, 72-73; and

- <u>RBS</u>:  MassMutual moves to compel (i) further response to Joint Interrogatory Nos. 1-2; (ii) compliance with the timeframe generally governing the Requests for Production; and (iii) further responses to Requests for Production Nos. 27, 63-69, 72-73.

This Motion should be granted because, as more fully explained in MassMutual's accompanying Memorandum of Law, Defendants have failed to provide complete and diligent responses to MassMutual's two interrogatories seeking basic identification of third parties known to Defendants, but unknown to MassMutual.  Defendants have improperly objected to numerous document requests and have improperly limited the scope of documents to be searched.  And Merrill Lynch has failed to respond adequately to discovery regarding its successor liability.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Law in support thereof, the Appendices attached thereto, the attached Declaration of Molly Stephens

12-12020-mg  Doc 3508-1  Filed 12/20/12  Entered 12/20/12 20:34:40  Exhibit
Case 3:11-cv-30285-MAP  Document 73  Filed 10/01/12  Page 3 of 4
Declaration of Jennifer J. Barrett in Support of Motion    Pg 42 of 98

and exhibits thereto, the pleadings and records on file in this action, any matters of which the

Court may take judicial notice, and any further argument as may be present on this motion.

This Motion is made in conformity with Local Rule 37.1(b).  Opposing counsel failed to

attend a discovery conference within 14 calendar days after the request made on September 12,

2012, and refused to resolve the outstanding discovery disputes in a belated letter sent on

September 27, 2012.


DATED:  October 1, 2012                              EGAN, FLANAGAN AND COHEN, P.C.

                                       By:  _____/s/ Edward J. McDonough Jr._____
                                            Edward J. McDonough Jr. (BBO 331590)
                                            Stephen E. Spelman (BBO 632089)
                                            Egan, Flanagan and Cohen, P.C.
                                            67 Market Street, P.O. Box 9035
                                            Springfield, Massachusetts  01102
                                            Telephone:  (413) 737-0260
                                            Fax:  (413) 737-0121
                                            ejm@efclaw.com;
                                            ses@efclaw.com

Of counsel:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Philippe Z. Selendy (admitted *pro hac*)
Jennifer J. Barrett (admitted *pro hac*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Fax (212) 849-7100

A. William Urquhart (admitted *pro hac*)
Harry A. Olivar, Jr. (admitted *pro hac*)
Molly Stephens (admitted *pro hac*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax (213) 443-3100

Case 3:11-cv-30285-MAP   Document 73   Filed 10/01/12   Page 4 of 4

### CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of October, 2012.

*/s/ Edward J. McDonough Jr.*

_____
Edward J. McDonough Jr.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GOLDMAN, SACHS & CO., INC; J.P. MORGAN SECURITIES LLC; and RBS SECURITIES INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:11-30285-MAP |

### MASSMUTUAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION TO COMPEL FURTHER DISCOVERY RESPONSES

12-12020-mg    Doc 2503-3    Filed 12/20/14    Entered 12/20/12 20:34:40    Exhibit
Case 1-cv-02989-MAP   Document 74-2   Filed 10/31/12   Page 40 of 26
Declaration of Jennifer J. Barrett in Support of Motion    Pg 45 of 98

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL BACKGROUND................................................................................................3

LEGAL STANDARD....................................................................................................................6

ARGUMENT.................................................................................................................................7

I.     DEFENDANTS SHOULD BE COMPELLED TO PROVIDE COMPLETE
       RESPONSES TO THE TWO JOINT INTERROGATORIES WITHOUT
       FURTHER DELAY...........................................................................................................7

       A.    Defendants Must Identify All Originators of the Underlying Mortgage
             Loans.......................................................................................................................8

       B.    Defendants Must Provide a Complete Identification of the Due Diligence
             Firms That Assisted Them ...................................................................................10

II.    DEFENDANTS SHOULD BE COMPELLED TO PROVIDE FURTHER
       RESPONSES TO THE REQUESTS FOR PRODUCTION .............................................10

       A.    Defendants Have Improperly Limited the Relevant Time Frame .........................10

       B.    Merrill Lynch and J.P. Morgan Have Improperly Limited the Documents
             to Be Searched .....................................................................................................12

       C.    Goldman Sachs and Merrill Lynch Have Improperly Rewritten
             MassMutual's Requests ........................................................................................14

       D.    Defendants Have Improperly Refused to Produce Certain Categories of
             Documents ............................................................................................................16

III.   MERRILL LYNCH HAS FAILED TO RESPOND TO DISCOVERY
       REGARDING SUCCESSOR LIABILITY ......................................................................19

IV.    DEFENDANTS SHOULD BE ORDERED TO MAKE A PRODUCTION OF
       BASIC DOCUMENTS BY OCTOBER 26, 2012............................................................20

CONCLUSION...........................................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Addamax Corp. v. Open Software Found., Inc.,*
148 F.R.D. 462 (D. Mass. 1993)..................................................................................16, 17

*Am. Rock Salt Co., LLC v. Norfolk S. Corp.,*
228 F.R.D. 426 (W.D.N.Y. 2004)...................................................................................16

*Bank of China v. St. Paul Mercury Ins. Co.,*
No. 03 Civ. 9797, 2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004) .........................................7, 8

*In re Bear Stearns Mortg. Pass-Through Certs. Litig.,*
851 F. Supp. 2d 746 (S.D.N.Y. 2012)...............................................................................18

*Bourne v. Arruda,*
No. 10-cv-393, 2012 WL 1107694 (D.N.H. Apr. 2, 2012) .......................................................8

*Dodona I, LLC v. Goldman, Sachs & Co.,*
847 F. Supp. 2d 624 (S.D.N.Y. 2012)...............................................................................18

*Feit v. Leasco Data Processing Equip. Corp.,*
332 F. Supp. 544 (E.D.N.Y. 1971) ....................................................................................9

*Firkins v. Pfizer, Inc.,*
No. CV 10-5108, 2010 WL 4483825 (W.D.Wash. Oct. 29, 2010) ..........................................16

*Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.,*
224 F.R.D. 644 (N.D. Cal. 2004)........................................................................................9

*Gagne v. Reddy,*
104 F.R.D. 454 (D. Mass. 1984)........................................................................................6

*George v. Equifax Mortg. Servs.,*
375 F. App'x 76 (2d Cir. 2010) ......................................................................................14

*Haber v. ASN 50th St., LLC,*
272 F.R.D. 377 (S.D.N.Y. 2011) ....................................................................................16

*Hansel v. Shell Oil Corp.,*
169 F.R.D. 303 (E.D. Pa. 1996)........................................................................................10

*Harris v. Koenig,*
271 F.R.D. 356 (D.D.C. 2010)..........................................................................................8

*Ice Corp. v. Hamilton Sundstrand Inc.,*
Civ. No. 05-4135, 2007 WL 1297120 (D. Kan. Apr. 30, 2007)...............................................11

*In re Int'l Rectifier Sec. Litig.,*
No. CV91-3357, 1997 WL 529600 (C.D. Cal. Mar. 31, 1997) ................................................13

*Jackson v. Edwards,*
No. 99 Civ. 0982, 2000 WL 782947 (S.D.N.Y. June 16, 2000)..........................................11, 12

*MassMutual v. Residential Funding Co., LLC,*
843 F. Supp. 2d 191 (D. Mass. 2012).........................................................................................3

*Melendez v. Greiner,*
No. 01 Civ. 07888, 2003 WL 22434101 (S.D.N.Y. Oct. 23, 2003) .........................................15

*N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC,*
720 F. Supp. 2d 254 (S.D.N.Y. 2010).......................................................................................11

*SEC v. Savino,*
No. 01 Civ. 2438, 2006 WL 375074 (S.D.N.Y. Feb. 16, 2006) ...............................................15

*In re Software Toolworks Inc.,*
50 F.3d 615 (9th Cir. 1994) ......................................................................................................13

*Weinberger v. Jackson,*
No. C-89-2301, 1990 WL 260676 (N.D. Cal. Oct. 11, 1990) ...................................................13

*In re Worldcom, Inc. Sec. Litig.,*
352 F. Supp. 2d 472 (S.D.N.Y. 2005)..................................................................................13, 14

*In re Worldcom, Inc. Sec. Litig.,*
No. 02 Civ. 3288, 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) .................................................9

*Zakre v. Norddeutsche Landesbank Gironzentrale,*
No. 03 Civ. 0257, 2004 WL 764895 (S.D.N.Y. Apr. 9, 2004) .................................................15

*Zanowic v. Reno,*
No. 97 Civ. 5292, 2000 WL 1376251 (S.D.N.Y. Sept. 25, 2000) ..............................................6

### Statutes/Rules

Mass. Gen. L. ch. 110A, § 410(a)...............................................................................................7

Mass. Gen. L. ch. 110A, § 410(b).............................................................................................13

Fed. R. Civ. P. 26(b)(1)...............................................................................................................6

Fed. R. Civ. P. 34(a)(1)..............................................................................................................12

Loc. R. Civ. P. 26.5(c)(3).......................................................................................................2, 10

Loc. R. Civ. P. 37.1(b)…………………………………………………………………………….6

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") respectfully submits this memorandum of law in support of its motion to compel further responses to MassMutual's (i) First Set of Joint Interrogatories to Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Deutsche Bank Securities Inc. ("Deutsche Bank"), Goldman, Sachs & Co. ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan"), and RBS Securities Inc. ("RBS") (collectively, "Defendants"); (ii) First Set of Requests for Production to each of the Defendants; and (iii) First Set of Requests for Admission to Merrill Lynch.

## PRELIMINARY STATEMENT

MassMutual has been forced to file this motion to compel to address the numerous deficiencies in the discovery responses Defendants served over a month ago. After MassMutual sent a letter to Defendants on September 12, 2012 detailing the deficiencies and requesting a discovery conference, Defendants refused to meet and confer with MassMutual during the time required under the Local Rules. When Defendants finally sent their own substantive letter on September 27, 2012, they refused to correct any of the identified deficiencies and offered to engage in any further meet and confer only if the call were linked to MassMutual's responses to Defendants' discovery.

The belated, conditional offer to meet and confer will only delay discovery further. MassMutual's discovery requests sought basic information and documents relevant to MassMutual's claim for misrepresentations in the sale of residential mortgage-backed securities. Defendants have provided incomplete responses, improperly limited their responses, or outright refused to respond to multiple discovery requests:

• Defendants served notably incomplete responses to MassMutual's two interrogatories seeking the identification of the originators of the mortgage loans underlying the securities and the due diligence firms that Defendants retained to assist in the securitizations.

1

The early identification of these third parties was essential to the timely service of subpoenas. Despite Defendants' exclusive and ready access to this information, they identified only the few originators listed in the publicly available offering materials, resulting in their failure to identify originators for *up to 98%* of the mortgage loans underlying a securitization, and failed to comply with Local Rule 26.5(c)(3) in providing MassMutual with formal names and addresses of third parties, resulting in difficulties serving subpoenas. Defendants' continued delay in providing this basic information jeopardizes the discovery schedule in this action and risks the destruction of relevant documents by third parties that remain known to Defendants, but unknown to MassMutual. Defendants should be compelled to provide this information without further delay.

•    Defendants' responses to MassMutual's document requests also contained numerous deficiencies. For example, Defendants substantially limited the scope of their productions by narrowing the timeframe of the requests to some as-yet-determined period and refused to search for documents beyond those contained in files of employees with "significant involvement" in the securitizations. Two Defendants systematically rewrote MassMutual's requests, with one Defendant responding to 70 separate requests with the same agreement to produce a single category of "Core Documents" (defined by the Defendant). All Defendants objected to producing entire categories of documents, such as loan files and communications with government agencies, that are relevant to the claims and defenses at issue and are necessary for document and deposition discovery. None of these restrictions is justified, and a motion to compel is warranted.

•    Finally, Merrill Lynch refused to provide any discovery relating to its successor liability, in response to either MassMutual's document requests or its requests for admission.

2

12-12020-mg Doc 2503-1 Filed 12/20/12 Entered 12/20/12 20:34:40 Exhibit
Case 3:11-cv-00250-MAP Document 74-2 Filed 10/31/12 Page 50 of 98
Declaration of Jennifer J. Barrett in Support of Motion Pg 50 of 98

Merrill Lynch cannot have it both ways; if it refuses to admit it has successor liability, it must produce documents that enable MassMutual to prove successor liability.

MassMutual's motion to compel should be granted in its entirety. To meet the discovery deadlines in the Court's Scheduling Order, MassMutual respectfully requests that Defendants be ordered to produce the following documents by October 26, 2012: (i) final loan tapes for the securitizations at issue; (ii) organizational charts and working group lists; and (iii) loan files and underwriting guidelines for the underlying mortgage loans.

## PROCEDURAL BACKGROUND

MassMutual filed this action on December 29, 2011, asserting a single claim under Section 410(a) of the Massachusetts Uniform Securities Act (the "Massachusetts Securities Act") against Defendants for misrepresentations in connection with the sale of over $200 million in residential mortgage-backed securities (the "Certificates") to MassMutual. The Certificates were sold in 12 securitizations sponsored by Residential Funding Company, LLC, formerly known as Residential Funding Corporation ("RFC"). Compl. ¶¶ 1-3, 37. Deutsche Bank and J.P. Morgan each sold Certificates to MassMutual in one securitization; Merrill Lynch sold Certificates to MassMutual in two securitizations; and Goldman Sachs and RBS each sold Certificates to MassMutual in four securitizations. *Id.* ¶ 37.

On February 14, 2012, this Court largely denied motions to dismiss in nine other cases filed by MassMutual asserting similar claims under the Massachusetts Securities Act. *See MassMutual v. Residential Funding Co., LLC*, 843 F. Supp. 2d 191 (D. Mass. 2012). The Court held that MassMutual had stated a claim for primary liability under Section 410(a) of the Massachusetts Securities Act based on alleged false and misleading statements in the offering materials for the Certificates regarding (i) compliance with the underwriting standards applicable to the underlying mortgage loans; (ii) compliance with the applicable appraisal standards;

3

(iii) and the resulting loan-to-value ratios for the mortgage loans. *Id.* at 202-04. Following a stipulation between MassMutual and Defendants that applied the Court's ruling to this case, the Court set a pretrial scheduling conference in this action for May 30, 2012. On June 27, 2012, the Court entered the Scheduling Order in this action, setting January 31, 2013 as the date for substantial completion of document discovery.

Shortly after the Court entered the Scheduling Order, MassMutual served its First Set of Joint Interrogatories, First Set of Requests for Production, and First Set of Requests for Admission on July 23, 2012. The First Set of Joint Interrogatories contained two straight-forward interrogatories seeking the identification of originators and due diligence firms to enable MassMutual to serve third-party subpoenas. *See* Declaration of Molly Stephens, filed concurrently herewith ("Stephens Decl."), Ex. 1. The First Sets of Requests for Production were tailored to each Defendant's involvement in specific securitizations and contained between 75 and 79 requests. *See, e.g.*, Stephens Decl. Ex. 2. The First Set of Requests for Admission was directed only to Merrill Lynch and contained a single request to streamline discovery regarding Merrill Lynch's liability as successor to Banc of America Securities LLC, the underwriter for two securitizations. *See* Stephens Decl. Ex. 3.

Defendants obtained an extension of time from MassMutual to respond, and served their Responses and Objections on August 31, 2012. Defendants' responses were loaded with objections and contained significant deficiencies. For example, in response to the two basic Joint Interrogatories, certain Defendants served *more than 30* general objections, and all but one Defendant failed to provide information beyond that contained in the publicly available prospectus supplements. *See, e.g.*, Stephens Decl. Ex. 4. In response to the Requests for Production, Defendants served up to 55 general objections and agreed to produce only a limited

4

subset of documents, with one Defendant agreeing to produce only a single category of what it termed "Core Documents" in response to 70 requests. *See, e.g.*, Stephens Decl. Ex. 5. In response to the Requests for Admission, Merrill Lynch refused to admit successor liability, while simultaneously refusing to produce documents required to establish successor liability. *See* Stephens Decl. Ex. 6; Ex. 7 (Merrill Lynch Objs. to RFP Nos. 78-79).

On September 12, 2012, MassMutual sent a letter to Defendants detailing the significant deficiencies in Defendants' discovery responses, requesting amended responses by September 21, 2012, and proposing a schedule to prioritize the production of certain documents to enable the timely completion of discovery. *See* Stephens Decl. Ex. 8. MassMutual requested that a meet-and-confer conference take place on September 14, 2012. *See id.* at 8-9.

Defendants refused to meet and confer with MassMutual on September 14, 2012. Instead, they sent an email promising they would "respond in writing" to MassMutual's letter at some undisclosed future point, and would make themselves available for a meet and confer only after they identified alleged but as-yet-unknown deficiencies in MassMutual's responses to their discovery requests. Stephens Decl. Ex. 9. MassMutual promptly objected to this approach, noting that "MassMutual has identified the deficiencies in Defendants' discovery responses in detail, and there is no basis to link them to Defendants' discovery demands, which were served two weeks after MassMutual's discovery." Stephens Decl. Ex. 10. MassMutual again reiterated September 21, 2012 as the deadline to resolve the deficiencies identified in its letter. *Id.*

Over the next week, Defendants did not make themselves available for a meet and confer, did not send the written response letter they promised, and did not amend their discovery responses. Instead, Defendants sent another email on September 21, 2012 stating that MassMutual could expect a letter "next week" with proposed dates for a meet and confer.

5

Stephens Decl. Ex. 11. MassMutual promptly responded asking Defendants to provide their

availability for a meet and confer to take place on September 24, 25, or 26, 2012 (with

September 26 representing 14 days from MassMutual's September 12, 2012 letter requesting

such a conference). Stephens Decl. Ex. 12. Defendants never responded to this request. Instead,

Defendants belatedly sent a letter on September 27, 2012 that refused to correct any of their

discovery responses, trumped up purported (but unsustainable) issues with MassMutual's

responses to their document requests (which MassMutual is discussing with Defendants), and

offered to engage in a further meet and confer with MassMutual only if the parties would discuss

"the mutual scope of discovery in this action." Stephens Decl. Ex. 13.

Given that Defendants failed to attend a discovery conference within 14 days after

MassMutual's first request to meet and confer, and that Defendants' belated letter failed to

resolve a number of discovery disputes, MassMutual now files this motion to compel in

conformity with Local Rule 37.1(b).

## LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery

"regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R.

Civ. P. 26(b)(1). Although not unlimited, "relevance, for the purposes of discovery, is an

extremely broad concept." *Zanowic v. Reno*, No. 97 Civ. 5292, 2000 WL 1376251, at \*2

(S.D.N.Y. Sept. 25, 2000) (citations omitted). "[R]elevancy is broadly construed at the

discovery stage of litigation and a request for discovery should be considered if there is *any*

possibility that the information sought may be relevant to the subject matter of the action."

*Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984) (citation omitted).

6

## ARGUMENT

## I.  DEFENDANTS SHOULD BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO THE TWO JOINT INTERROGATORIES WITHOUT FURTHER DELAY

Joint Interrogatory Nos. 1 and 2 request the identification of (1) "all Originators of the Mortgage Loans" underlying "each Securitization"; and (2) "all third-party due diligence firms that assisted any [Defendant] in conducting due diligence in connection" with each Securitization. *See* App. A at 1, 8.[1] The purpose of these interrogatories was to enable MassMutual to identify early in discovery the proper recipients of third-party subpoenas to ensure the timely service of those subpoenas and the preservation and production of relevant documents. The Originators of the Mortgage Loans possess highly relevant documents relating to compliance with underwriting standards in the origination of the Mortgage Loans, including the loan files for the Mortgage Loans. Due diligence firms possess highly relevant documents relating to the due diligence affirmative defense available to Defendants under Section 410(a) of the Massachusetts Securities Act. *See* Mass. Gen. L. ch. 110A, § 410(a)(2).

Despite the compelling need for the prompt identification of these third parties (as Defendants themselves have admitted, collection of documents from third parties will be "difficult, time consuming, and uncertain," Stephens Decl. Ex. 14 at 3-4), Defendants failed to conduct even the most basic searches for information and failed to provide anything close to complete responses. *See* App. A at 1-13. Defendants' delay in providing complete responses to these two basic interrogatories over two months after MassMutual served them is improper and serves as grounds for a motion to compel. *See, e.g., Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797, 2004 WL 2624673, at *2 (S.D.N.Y. Nov. 18, 2004) (showing that an

---

[1]  The full text of each Joint Interrogatory and each Defendant's objection and response thereto are set forth in Appendix A.

interrogatory answer is "evasive or incomplete is good grounds for a motion to compel"); *Bourne v. Arruda*, No. 10-cv-393, 2012 WL 1107694, at *2 (D.N.H. Apr. 2, 2012) (motion to compel justified where "the answers at issue are incomplete, evasive, or inadequate").

## A. Defendants Must Identify All Originators of the Underlying Mortgage Loans

No Defendant provided a sufficient answer to Joint Interrogatory No. 1 seeking identification of all Originators of the Mortgage Loans. Four of the five Defendants (Merrill Lynch, Deutsche Bank, RBS, and Goldman Sachs) merely identified the Originators listed in the publicly available prospectus supplements for the Securitizations. As a result, Deutsche Bank failed to identify the Originators responsible for 96% of the loans underlying the RAMP Series 2006-RS6 securitization, and RBS failed to identify the Originators responsible for 98% of the loans underlying the RAMP Series 2006-RS4 securitization. Only J.P. Morgan identified any Originator beyond those listed in the prospectus supplements, but it failed to identify the percentage of Mortgage Loans these entities originated, as requested, and represented only that these additional entities could "potentially hav[e] been" Originators. *See* App. A at 1-8.

There is no excuse for Defendants' failure to provide this most basic information.[2] Defendants claim that they do not "have ready access" to loan tapes and other data that would allow them to identify all Originators. Stephens Decl. Ex. 13 at 7. To the extent that Defendants are suggesting that an incomplete search of what they deem to be "readily accessible files" is

---

[2] Every Defendant objected to Joint Interrogatory No. 1 as duplicative of RFP No. 44, which seeks "[d]ocuments sufficient to identify all Originators for each Securitization." Stephens Decl. Ex. 2 (RFP No. 44). To the extent that Defendants are suggesting their eventual document production can cure their insufficient interrogatory responses, they are wrong. *See Harris v. Koenig*, 271 F.R.D. 356, 366 (D.D.C. 2010) ("[I]nterrogatory responses that direct [the requesting party] to [the opposing party's] document production generally or to information available elsewhere are not an adequate alternative to answering interrogatories."). In addition, MassMutual has a compelling need for the identities of the Originators at this time, and the belated provision of this information through documents produced several months from now will jeopardize the discovery schedule and MassMutual's ability to obtain relevant documents.

8

12-12020-mg  Doc 2593-14  Filed 12/20/12  Entered 12/20/12 20:34:49  Exhibit
Declaration of Jennifer J. Barrett in Support of Motion    Pg 56 of 98

Case 1:11-cv-3028-MAP  Document 124-2  Filed 07/04/12  Page 49 of 26

enough to satisfy their obligation to respond to MassMutual's interrogatories, they are wrong.
*See Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004)
("When responding to interrogatories, a party has a duty to respond with all the information
under its custody and control."). In contrast to investors such as MassMutual, Defendants have
access to all Originator information through, among other things, their access to loan tapes. As
the SEC recently noted in a similar case involving fraud in connection with the sale of RFC-
sponsored securitizations, "[i]n connection with each securitization, ResCap would send to the
underwriter what is known in the industry as a 'loan tape,' which is a lengthy list of all of the
mortgage loans in the securitized pool." Stephens Decl. Ex. 15 ¶ 7. Indeed, in the *FHFA*
litigation before the Southern District of New York, these very Defendants were able to
"promptly provide the plaintiff with the final closing loan tapes . . . and loan-level origination
information for each of the securitizations at issue." Stephens Decl. Ex. 16 at 4. Because each
Defendant was responsible for only between one and four Securitizations, each has had more
than enough time (over two months since the interrogatories were served) to access, obtain,
review, or even produce the one to four loan tapes for originator information.[3]

Defendants' unwillingness to provide the information available to them is improper and
threatens to delay this litigation significantly. It also risks destruction of relevant documents by

---

[3] Defendants cannot seriously contend that they do not have access to loan tapes for the
additional reason that all Defendants agreed to produce documents responsive to MassMutual's
request for "[a]ll loan tapes for each Securitization." Stephens Decl. Ex 2 (RFP No. 47). If
Defendants continue to maintain, however, that they have access only to publicly available
originator information, they do not have a due diligence defense. The "task of the underwriter
[is] to go behind the publicly available information and . . . conduct a searching inquiry." *In re
Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 408137, at *3 (S.D.N.Y. Feb. 22, 2005).
If Defendants did not inquire into the source of the collateral underlying between 96% and 98%
of the securities they sold, they cannot establish the necessary investigation for a due diligence
defense. *See Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 582 (E.D.N.Y.
1971).

9

Originators that remain known to Defendants, but unknown to MassMutual. Defendants should
be compelled to identify all Originators without further delay. *See Hansel v. Shell Oil Corp.*, 169
F.R.D. 303, 305-06 (E.D. Pa. 1996) (motion to compel warranted where party responded with
incomplete list of the "buyers receiving the favorable prices from Shell").

## B. Defendants Must Provide a Complete Identification of the Due Diligence Firms That Assisted Them

Joint Interrogatory No. 2 seeks the identification of third parties relevant to Defendants'
due diligence affirmative defense. In responding to Interrogatory No. 2, all five Defendants
failed to comply with Local Rule 26.5(c)(3), which requires the "full name" and "present or last
known address" when identifying an entity. *See* App. A at 8-13.[4] Defendants' incomplete
responses have resulted in unnecessary burdens on MassMutual in locating third parties; for
example, because one Defendant merely identified "CRS" as a relevant due diligence firm,
MassMutual is having to wade through 163 entities registered in New York whose name starts
with "CRS." *See id.* at 12-13 (RBS Interrog. Resp. No. 2). Defendants know full well all the
due diligence firms they used in the Securitizations, and they should be compelled to provide a
full identification of those firms immediately.

## II. DEFENDANTS SHOULD BE COMPELLED TO PROVIDE FURTHER RESPONSES TO THE REQUESTS FOR PRODUCTION

### A. Defendants Have Improperly Limited the Relevant Time Frame

MassMutual identified the relevant time period governing its Requests for Production as
January 1, 2005 to the present. *See* App. B at 1 (Instruction No. 16). Each Defendant made a
general objection to this time frame as overly broad and unduly burdensome, *see id.* at 1-2, and

---

[4] MassMutual asked Defendants to amend their interrogatory responses to provide a
complete identification by September 21, 2012. Defendants did not do so, and confirmed in their
September 27, 2012 letter that they would not do so. *See* Stephens Decl. Ex. 13 at 8.

10

12-12020-mg    Doc 2563    Filed 12/20/12    Entered 12/20/12 20:34:49    Exhibit
Case 1-cv-30289-MAP    Document 74-2    Filed 07/04/12    Page 58 of 98
Declaration of Jennifer J. Barrett in Support of Motion    Pg 58 of 98

Defendants now claim that any search beyond the "matter of weeks" that "each Defendant worked on a particular securitization" would be improper. Stephens Decl. Ex. 13 at 8. These objections are surprising, given that Defendants requested that MassMutual search for responsive documents created between January 1, 2005 and December 29, 2011. *See* Stephens Decl. Ex. 17 (Instruction No. 1). MassMutual has agreed to produce documents created between January 1, 2005 and September 30, 2010, the date prior to MassMutual's October 2010 retention of counsel to investigate its claims in this and the related actions now before this Court.

There is no principled basis for Defendants' refusal to search for documents created during the same time period, especially given their own instruction to MassMutual. Documents received or created by Defendants post-Securitization are likely to lead to the discovery of admissible evidence relevant to the alleged misrepresentations and the asserted defenses. For example, post-Securitization documents regarding defects in or the poor performance of the Certificates or Mortgage Loans will likely demonstrate misrepresentations about the characteristics or quality of the Certificates or Mortgage Loans at the time of the Securitizations. Even at the pleading stage, courts have recognized that abnormally poor performance of mortgage loans post-securitization is relevant to underwriting abandonment at the time of the securitizations. *See N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, 720 F. Supp. 2d 254, 270 (S.D.N.Y. 2010) (abnormally poor performance of loan pools provided "credible inference" that the originators abandoned underwriting guidelines).

In addition, Defendants' conclusory burden objection is not a sufficient reason to prevent the discovery of relevant documents. *See Ice Corp. v. Hamilton Sundstrand Inc.*, Civ. No. 05-4135, 2007 WL 1297120, at *3 (D. Kan. Apr. 30, 2007) (overruling objection because "a mere conclusory and general assertion of overbreadth will not suffice"); *Jackson v. Edwards*, No. 99

11

Civ. 0982, 2000 WL 782947, at *3 (S.D.N.Y. June 16, 2000) (a "[c]onclusory assertion of
burdensomeness is entitled to no weight whatsoever"). Defendants should be compelled to
search for and produce documents between January 1, 2005 and September 30, 2010.

## B. Merrill Lynch and J.P. Morgan Have Improperly Limited the Documents to Be Searched

Merrill Lynch inserted general objections limiting the documents for which it intends to
search to "readily accessible and centrally located files maintained by, or on behalf of, persons
reasonably believed to have significant involvement in the Relevant Securitizations." App. B
at 4-5 (Merrill Lynch Gen. Objs. Nos. 14-16). J.P. Morgan inserted a similar general objection.
*Id.* at 5 (J.P. Morgan Gen. Objs. No. 7). These objections are improper. Merrill Lynch and J.P.
Morgan should be compelled to conduct a reasonably diligent search for responsive documents
in their possession, custody, or control—not merely in the central files of persons believed to
have significant involvement in the Securitizations. *See* Fed. R. Civ. P. 34(a)(1).

It is not "premature" to seek a ruling on this issue now, before the parties have discussed
the scope of a search for electronically stored information ("ESI"), as Defendants contend.
Stephens Decl. Ex 13 at 8. To the contrary, a ruling will allow the parties to streamline their ESI
discussion because there will be no ambiguity about the proper scope of a search, which cannot
be limited to the files of individuals with "significant involvement" in the Securitizations.

First, limiting a search to the files of the employees with "significant involvement" in the
Securitizations is too subjective, and would exclude relevant documents in the files of other
employees, such as low-level analysts, trading desk employees, or even supervisors, who worked
on or approved the Securitizations, but whose work did not cross whatever threshold Defendants
are using to define "significant involvement." Second, limiting a search to the files of any
employees involved in the Securitizations also is too narrow. Such a search would exclude, for

12

example, (i) relevant corporate documents, such as general accounting documents showing fees paid or received by Defendants as underwriters; (ii) documents of traders who sold the Certificates, but were not involved in structuring the Securitizations; and (iii) documents relevant to the due diligence affirmative defense.

A search outside the files of employees involved in the Securitizations is particularly important for the due diligence affirmative defense asserted by each Defendant. To establish this defense, a defendant must "sustain[] the burden of proof that [it] did not know, and in exercise of reasonable care could not have known, of the existence" of the misrepresentations at issue. Mass. Gen. L. ch. 110A, § 410(b). To challenge the defense, MassMutual is entitled to discover not only what the deal team actually knew regarding, for example, the underwriting practices of the Originators, Sponsor, or Depositors, but also what it *could have known* in the exercise of reasonable care. This requires Defendants to show that they made probative inquiries of any persons likely to possess relevant information. *See In re Software Toolworks Inc.*, 50 F.3d 615, 622 (9th Cir. 1994) (customers and retailers); *In re Int'l Rectifier Sec. Litig.*, No. CV91-3357, 1997 WL 529600, at *8 (C.D. Cal. Mar. 31, 1997) (customers, consultants, accountants, outside counsel); *Weinberger v. Jackson*, No. C-89-2301, 1990 WL 260676, at *3 (N.D. Cal. Oct. 11, 1990) (management, employees, suppliers, distributors, customers, stockholders). Defendants easily could have obtained information possessed by employees not involved in the specific Securitizations. MassMutual is therefore entitled to these documents, including those located in the files of Defendants' employees who worked in the department responsible for handling securitizations or in other departments that regularly communicated with that department.[5]

---

[5] The documents should be produced for the additional reason that the knowledge of Defendants' employees, even those without "significant involvement" in the specific Securitizations, is imputed to Defendants. *See In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d

13

Merrill Lynch and J.P. Morgan should be compelled to conduct a reasonably diligent

search for responsive documents in their possession, custody, or control without limiting their

search to the files of employees with significant involvement in the specific Securitizations at

issue.

## C.    Goldman Sachs and Merrill Lynch Have Improperly Rewritten MassMutual's Requests

1.    Goldman Sachs Cannot Produce Only a Single Category of Documents in Response to 70 Requests, as It Attempts to Do

In response to 70 out of 75 separate requests, Goldman Sachs agreed to produce only one

set of documents: what it terms the "Core Documents," defined as

[N]on-privileged documents relevant to the claims or defenses in the Action, if any,
to the extent that the documents are located in relevant central project or transaction
files or readily accessible files of those Goldman Sachs employees and former
employees to be identified by Goldman Sachs, upon reasonable inquiry and belief, as
the core team members for the Securitizations, using reasonable search terms and date
ranges to be identified by Goldman Sachs or agreed upon by the parties.

*See* App. B at 7-8; Stephens Decl. Ex. 5 at 22.  This is obviously improper.

First, as discussed above, Goldman Sachs cannot limit its search for documents to

"relevant central project or transaction files or readily accessible files of . . . the core team

members for the Securitizations," which will exclude substantial numbers of relevant documents

outside of the "core team members" for the specific Securitizations. *See supra* Section II(B).

Second, Goldman Sachs cannot respond to 70 separate requests by stating that it will produce a

single category of documents it unilaterally deems to be "relevant to the claims and defenses in

the Action," and then making a hollow offer to meet and confer about additional documents.

---

472, 497 (S.D.N.Y. 2005) ("[p]roof of a corporation's collective knowledge and intent" is
relevant in securities actions); *George* v. *Equifax Mortg. Servs.*, 375 F. App'x 76, 78 (2d Cir.
2010) ("[A]n employee's knowledge gained in the course and scope of the employment is
imputed to the corporation, and, therefore, to all of its departments.") (citation omitted).

14

12-12020-smg-Doc2563-1 Filed 12/30/12 Entered 12/30/12 20:34:49 Exhibit
Case 1:cv30289-MAP Document 124-2 Filed 07/01/12 Page 62 of 98
Declaration of Jennifer J. Barrett in Support of Motion   Pg 62 of 98

This is an obvious delay tactic without any justification in Goldman Sachs' boilerplate, conclusory objections. Goldman Sachs should be compelled to produce documents responsive to the 70 requests. *See Melendez v. Greiner*, No. 01 Civ. 07888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) ("General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information.").[6]

2.   Merrill Lynch Cannot Narrow MassMutual's Requests Without Any Basis

Similarly, Merrill Lynch has improperly narrowed Request Nos. 10, 12, 16-18, 25-26, and 58-59 by redefining "Certificate" to mean only the "certificates issued in the relevant Securitizations that were held or owned by MassMutual (the 'MassMutual Certificates')." App. B at 9-16. Not only is Merrill Lynch's new definition unclear (read literally, it excludes any documents referring to the types of certificates purchased by MassMutual if the documents do not specifically involve MassMutual's certificates), but it is also unworkable in the context of the requests. The requests intentionally seek documents relating to any Certificates issued in the Securitizations because Defendants were engaged as underwriters for all Certificates and did their work, such as pricing, preparing marketing materials, and obtaining credit ratings, for all Certificates. *See, e.g.*, Stephens Decl. Ex. 2 (RFP Nos. 12 (pricing), 17 (marketing), 25 (offering materials), 58 (ratings)).

Because Merrill Lynch cannot narrow or alter MassMutual's requests in order to avoid the production of relevant documents, it should be compelled to supplement its responses to

_____

[6] Goldman Sachs' agreement to produce "Core Documents" also excludes communications over a Bloomberg Terminal, *see* Stephens Decl Ex. 5 ¶ 30, which "[s]ecurities professionals often use[] . . . to communicate pricing and other information." *SEC v. Savino*, No. 01 Civ. 2438, 2006 WL 375074, at *2 n.2 (S.D.N.Y. Feb. 16, 2006). Bloomberg messages are regularly produced in litigation, *see, e.g., Zakre v. Norddeutsche Landesbank Gironzentrale*, No. 03 Civ. 0257, 2004 WL 764895, at *1 (S.D.N.Y. Apr. 9, 2004), and should be here because Goldman Sachs has access to these communications, which are highly relevant to this case.

15

Request Nos. 10, 12, 16-18, 25-26, and 58-59 to remove the identified limitations and respond to the requests as drafted. *See Firkins v. Pfizer, Inc.*, No. CV 10-5108, 2010 WL 4483825, at *1 (W.D.Wash. Oct. 29, 2010) (granting motion to compel where "Defendants have unilaterally rewritten her discovery requests into what they deem appropriate"); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 434 (W.D.N.Y. 2004) (granting motion to compel where "Defendants' qualifications on the nature of the records sought by Plaintiff constitute an attempt to unilaterally 'rewrite' Plaintiff's Requests so as to avoid compliance").

## D. Defendants Have Improperly Refused to Produce Certain Categories of Documents

### 1. Defendants Should Be Compelled to Produce Loan Files

Both Merrill Lynch and J.P. Morgan refused to respond to MassMutual's Request No. 46, which seeks loan files in Defendants' possession, custody, or control. *See* App. B at 17-18. This is improper. The loan files are plainly relevant; they contain evidence regarding whether each loan was underwritten in compliance with the represented underwriting standards, whether the appraisal was conducted in compliance with the represented appraisal standards, and whether the loan-to-value ratio had any basis in fact.[7] Defendants should be compelled to produce the loan files for the Mortgage Loans in their possession, custody, or control. This includes loan files in the possession of their affiliates or subsidiaries which—contrary to Defendants' objection, Stephens Decl. Ex. 13 at 9—must be produced under the Federal Rules. *See Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993) ("control" over documents is "broadly construed," and a party must produce documents from subsidiaries/affiliates where it

---

[7] If Defendants do not have possession of or access to the loan files relevant to the mortgages underlying MassMutual's Certificates, as they now claim ("subject to perhaps a few exceptions"), Stephens Decl. Ex. 13 at 8-9, they were required to state as much in their objections and responses. *See Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 380 (S.D.N.Y. 2011) (a party must "produce responsive documents . . . or state that he does not possess any").

16

has "not only 'legal right' but also 'access to documents' and 'ability to obtain the documents'").

2. Defendants Should Be Compelled to Produce Documents Relating to the Sponsor, Originators, and Housing Market

MassMutual requested all documents between January 2005 and September 2007 referring or relating to: (i) the quality of any securitizations sponsored by RFC, and Defendants' due diligence conducted on RFC; (ii) the quality of the mortgage loans originated by each Originator, and Defendants' due diligence conducted on these Originators; (iii) appraisal and borrower fraud in the housing market generally; and (iv) Defendants' analysis of the U.S. housing market. *See* Stephens Decl. Ex. 2 (RFP Nos. 63-69). Although Defendants served nearly-identical requests on MassMutual, *see* Stephens Decl. Ex. 17 (Defs.' RFP Nos. 12-13, 23-26, 36-37, 47, 49, 52-53, 61, 65, 73-86), they either substantially narrowed their responses to MassMutual's requests or outright refused to respond to the requests. *See* App. B at 19-42.

Defendants' limitations and refusals are improper. Documents regarding Defendants' knowledge of the underwriting practices of the Sponsor (RFC), Depositors, and Originators, and of trends in the U.S. housing market generally, are plainly relevant to Defendants' due diligence defense. Such documents also are relevant to MassMutual's claims that the Originators and RFC engaged in a wholesale abandonment of underwriting standards throughout the time of the Securitizations and that Defendants securitized and sold mortgage loans without regard to their quality. Defendants must not be permitted to evade production of these relevant documents.

3. Defendants Should Be Compelled to Produce Communications with Government Agencies

Defendants refused to produce "communications with any governmental or regulatory agency . . . that refer or relate to the Securitization[s] or Certificates" or any documents Defendants "made available to any congressional body, regulatory agency, law enforcement agency, or other governmental agency or person referring or relating to mortgage-backed

17

securities." Stephens Decl. Ex. 2 (RFP Nos. 27, 72); App. B at 43-48. This is inappropriate.

To the extent that these documents relate to the Securitizations or Certificates at issue, their relevance is beyond dispute. Indeed, Defendants subsequently offered no defense of their refusal to produce such communications. *See* Stephens Decl. Ex. 13 at 9 (focused only on RFP No. 72). To the extent that these documents relate to Defendants' general practices in underwriting residential mortgage-backed securities, their relevance is also clear. Defendants have been the target of governmental investigations relating to their role in the sale of residential mortgage-backed securities, and the practices of Merrill Lynch, Deutsche Bank, Goldman Sachs, and J.P. Morgan have been specifically criticized in the January 27, 2011 Financial Crisis Inquiry Report. *See* FCIC Report, *available at* http://www.gpo.gov/fdsys/pkg/GPO-FCIC/pdf/ GPO-FCIC.pdf. Courts have frequently found that the documents and testimony provided by Defendants to government agencies regarding the securitization of residential mortgage loans, as well as the related findings of governmental investigations, are highly relevant to investors' securities or fraud claims. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 635-36 (S.D.N.Y. 2012) (noting relevance of FCIC Report); *In re Bear Stearns Mortg. Pass-Through Certs. Litig.*, 851 F. Supp. 2d 746, 758, 767-68 (S.D.N.Y. 2012) (same).

Defendants cannot refuse to produce these relevant documents simply because they are damaging. The documents sought by Request Nos. 27 and 72 are not categorically subject to any privilege, and to the extent they are privileged (and the privilege has not been waived), they should be logged. Nor is confidentiality a proper basis for any withholding, in light of the Confidentiality Agreement in place.[8] Defendants should be compelled to produce documents

---

[8] The parties jointly submitted a Confidentiality Agreement for the Court's approval on July 13, 2012. The parties agreed to all terms except a single provision relating to the claw back of privileged documents at a deposition. Because third parties are delaying their productions

responsive to these requests.

4.    Defendants Should Be Compelled to Produce Documents Relevant to
Their Indemnification Defense

MassMutual's Request No. 73 sought "[a]ll communications with RFC and/or any

debtors named in the action *In re Residential Capital, LLC*, Case No. 12-12020 . . . concerning

indemnification or other claims arising from Your underwriting of RFC-sponsored

securitizations between January 2005 to September 2007." *See* App. B at 50-52. Defendants

initially refused to produce any documents responsive to this request, *see id.*, and have now

offered to produce only the indemnification agreements. *See* Stephens Decl. Ex. 13 at 10. Their

continued refusal to respond fully to this request is inexplicable because all communications

sought by this request are likely to lead to the discovery of admissible evidence regarding

underwriting violations and are plainly relevant to the indemnification/contribution defenses

asserted by all Defendants. MassMutual is entitled to documents relevant to any party's claim or

defense, and the requested materials fall within these parameters. Defendants should be

compelled to produce documents responsive to Request No. 73.

## III.    MERRILL LYNCH HAS FAILED TO RESPOND TO DISCOVERY
## REGARDING SUCCESSOR LIABILITY

MassMutual's claim against Merrill Lynch is based on Merrill Lynch's status as the

successor-in-interest to Banc of America Securities LLC ("BOA Securities"), the underwriter for

two Securitizations. Compl. ¶ 9. To confirm that Merrill Lynch in fact succeeded to the

liabilities of BOA Securities, MassMutual requested that Merrill Lynch admit that it is

"successor by merger" to BOA Securities (*see* RFA No. 1), or produce documents relating to the

merger and Merrill Lynch's assumption of BOA Securities' liabilities (*see* RFP Nos. 78-79). *See*

until the entry of a protective order, MassMutual respectfully requests that the Court approve and
enter the Confidentiality Agreement, with the exception of the disputed provision.

19

12-12020-mg - Doc 2593-4 Filed 12/30/12 Entered 12/30/12 20:34:40 of Exhibit
Case 1:11-cv-30285-MAP Document 124-2 Filed 07/03/12 Page 49 of 28
Declaration of Jennifer J. Barrett in Support of Motion    Pg 67 of 98

App. B at 52-53; App. C at 1. Merrill Lynch has (i) denied that it is the "successor by merger" to BOA Securities (despite such an identification in proceedings before securities regulators, *see* Stephens Decl. Exs. 18-19); and (ii) objected to producing documents relating to the merger or its assumption of BOA Securities' liabilities. *See id.*

Merrill Lynch cannot deny MassMutual basic discovery regarding successor liability. If Merrill Lynch is successor by merger to the liabilities of BOA Securities, it should be compelled to admit this fact in its answer to RFA No. 1. If Merrill Lynch continues to insist that it is not BOA Securities' successor by merger, it should be compelled to produce the documents relating to its successor liability so that MassMutual may prove its claims.

## IV.    DEFENDANTS SHOULD BE ORDERED TO MAKE A PRODUCTION OF BASIC DOCUMENTS BY OCTOBER 26, 2012

Although Defendants should not delay the production of any responsive documents, MassMutual respectfully requests that Defendants be ordered to produce three categories of documents by October 26, 2012, at the latest: (i) loan tapes; (ii) organizational charts and working party lists; and (iii) loan files and underwriting guidelines. The early receipt of these documents is necessary to conduct third-party discovery, electronic discovery, and expert discovery by the deadlines in the Scheduling Order. In particular, loan tapes contain the loan-level information, including loan numbers and property addresses, that third-party Originators require before searching for documents. Organizational charts and working party lists contain the identification of individuals and departments necessary to identify potential custodians for an ESI search. And loan files and underwriting guidelines must be received by MassMutual as early as possible to conduct a re-underwriting, which could take months.

20

## **CONCLUSION**

For the reasons set forth above, MassMutual respectfully requests that the Court grant its

motion to compel further discovery responses.

DATED: October 1, 2012          EGAN, FLANAGAN AND COHEN, P.C.

By:    /s/ Edward J. McDonough Jr.
       Edward J. McDonough Jr. (BBO 331590)
       Stephen E. Spelman (BBO 632089)
       Egan, Flanagan and Cohen, P.C.
       67 Market Street, P.O. Box 9035
       Springfield, Massachusetts 01102
       Telephone: (413) 737-0260
       Fax: (413) 737-0121
       ejm@efclaw.com;
       ses@efclaw.com

Of counsel:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Philippe Z. Selendy (admitted *pro hac*)
Jennifer J. Barrett (admitted *pro hac*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Fax (212) 849-7100

A. William Urquhart (admitted *pro hac*)
Harry A. Olivar, Jr. (admitted *pro hac*)
Molly Stephens (admitted *pro hac*)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Fax (213) 443-3100

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 1st day of October, 2012.

*/s/ Edward J. McDonough Jr.*

Edward J. McDonough Jr.

22

# EXHIBIT E

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, CA  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO. AND INTERNET ACCESS
**(213) 443-3635**

WRITER'S INTERNET ADDRESS
**mollystephens@quinnemanuel.com**

November 20, 2012

VIA EMAIL

Alan Turner                                          J. Wesley Earnhardt
Simpson Thacher & Bartlett LLP                       Cravath, Swaine & Moore LLP
425 Lexington Ave.                                   825 Eighth Avenue
New York, NY 10017                                   New York, NY 10019

Andrea J. Robinson                                   David M.J. Rein
Christopher B. Zimmerman                             Sullivan & Cromwell LLP
Wilmer Cutler Pickering Hale and Dorr LLP            125 Broad St.
60 State Street                                      New York, NY 10004
Boston, MA 02109

Re:    *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*,
       Case No. 3:11cv30285 (D. Mass.)

Dear Counsel:

       We write on behalf of Plaintiff Massachusetts Mutual Life Insurance Company
("MassMutual") to address deficiencies in the loan tapes produced by Defendants in the above-
captioned action and to seek production of working party lists and organizational charts by all
Defendants in the action.

Deficiencies in Loan Tapes

       All loan tapes produced by Defendants appear to lack key, industry-standard variables
that prevent MassMutual from moving forward with fact and expert discovery.  MassMutual
requests that Defendants perform a supplemental search for loan tapes and produce additional

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788  | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139  | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510  | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400  | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000  FAX +49 40 89728 7100

All Counsel of Record
November 20, 2012

loan tapes by November 30, 2012.

First, none of the loan tapes produced by Defendants identifies the correct originator for the mortgage loans.  In particular, the loan tapes for the following nine securitizations do not contain any originator information:  RALI 2005-QO4, RALI 2006-QO3, RALI 2006-QO6, RAMP 2005-RZ1, RAMP 2006-RS4, RAMP 2006-RS6, RAMP 2006-RZ3, RAMP 2007-RZ1, and RASC 2007-KS3.  Although the loan tapes for the remaining three securitizations (RALI 2006-QO1, RALI 2006-QO4, and RALI 2007-QH6) contain an originator variable, it appears the originator information is incorrect.  For example, the loan tape for RALI 2006-QO1 lists "RFC" as the originator for all loans in the securitization, even though the relevant Prospectus Supplement lists Homecomings Financial Network, Inc. (33.8%) and SCME Mortgage Bankers, Inc. (17.7%) as originators, while leaving the remaining originators (48.5%) unidentified.  As Defendants are aware, the failure to identify the originators for the securitizations underwritten by Defendants risks the destruction of relevant documents by these third parties.  Given the importance of originator information made available to Defendants (but not to MassMutual), MassMutual requests that Defendants not only perform a supplemental search for loan tapes, but also provide complete responses to Joint Interrogatory No. 1 by November 30, 2012.

Second, the loan tape for the RAMP 2006-RS6 securitization is missing FICO scores for the underlying loans.  This is standard information for a loan tape.  Please produce a corrected loan tape by November 30, 2012 or provide information sufficient for MassMutual to ascertain the FICO scores for the loans in this securitization.

Third, both the principal balance and the number of the loans identified in the loan tapes for three securitizations (RAMP 2006-RS6, RAMP 2006-RZ3, and RASC 2007-KS3) do not match the figures represented in the relevant Prospectus Supplements.  Most notably, the loan tape for RASC 2007-KS3 identifies 8,242 loans in total, which is 71 loans more than the 8,171 loans represented in the Prospectus Supplement.  The total collateral balance shown on the loan tape is $1,343,555,581, which is approximately $8.8 million dollars more than that represented in the Prospectus Supplement.  MassMutual requests a corrected loan tape for RASC 2007-KS3 by November 30, 2012.  The loan tapes for the other two identified securitizations contain similar, although slightly smaller, incongruities.  Please produce corrected loan tapes for these securitizations or advise as to the reason for the discrepancies by November 30, 2012.

Fourth, the relevant supporting loans groups for two securitizations (RALI 2006-QO1 and RALI 2006-QO4) are unclear from the loan tapes.  Please confirm that the variables PPOTERM and SEC_POOL contain the data for the supporting loan groups for RALI 2006-Q01 and RALI 2006-QO4, respectively, or produce corrected loan tapes showing the supporting loan groups by November 30, 2012.

Finally, in addition to the deficiencies outlined above, the following loan tapes contain missing data variables for the underlying loans.  Please provide the missing data or a corrected loan tape by November 30, 2012:

All Counsel of Record
November 20, 2012

- <u>RALI 2005-QO4</u>:  missing borrower name, address, and LoanType

- <u>RALI 2006-QO1</u>:  missing DTI, group, I/O terms, borrower name, and address

- <u>RALI 2006-QO3</u>:  missing DTI, DocType, LoanType, lien, group, borrower name, address, and a Data Dictionary for PropType and PurpType

- <u>RALI 2006-QO4</u>:  missing group, borrower name, and address

- <u>RALI 2006-QO6</u>:  missing LoanType, borrower name, and address

- <u>RALI 2007-QH6</u>:  missing I/O terms, group, borrower name, and address

- <u>RAMP 2005-RZ1</u>:  missing Data Dictionary for DocType, PropType, and PurpType

- <u>RAMP 2006-RS4</u>:  missing group, borrower, name, address, and city

- <u>RAMP 2006-RS6</u>:  missing DTI, CLTV, original balance, DocType, PropType, PurpType, terms, I/O terms, LoanType, lien, origination date, group, borrower name, address, city, state, and zip code

- <u>RAMP 2006-RZ3</u>:  missing DocType, group, and Data Dictionary for PropType and PurpType

- <u>RAMP 2007-RZ1</u>:  missing group, borrower name, and address

- <u>RASC 2007-KS3</u>:  missing borrower name, address, and city

<u>Missing Working Party Lists and Organizational Charts</u>

The parties are scheduled to discuss custodians and search terms on November 21, 2012. Working party lists for the securitizations at issue and Defendants' organizational charts are necessary for that discussion.  Although MassMutual requested a priority production of these documents, MassMutual cannot locate working party lists for the following six securitizations: (i) RALI 2006-Q01 (Goldman, Sachs & Co.); (ii) RALI 2006-Q03 (Goldman, Sachs & Co.); (iii) RALI 2006-Q04 (RBS Securities Inc.); (iv) RALI 2006-Q06 (Goldman, Sachs & Co.); (v) RAMP 2006-RS4 (RBS Securities Inc.); and (vi) RALI 2007-QH6 (Goldman, Sachs & Co.). MassMutual also cannot locate organizational charts for the following Defendants:  (i) RBS Securities Inc.; and (ii) Deutsche Bank Securities Inc.  Please identify the Bates ranges for the missing working party lists and organizational charts or produce the missing documents by November 28, 2012.

All Counsel of Record
November 20, 2012


      In addition, MassMutual requests that J.P. Morgan Securities LLC produce another version of the organizational charts Bates labeled JPMS_MM285_000001884-1906 because certain pages in the document are unreadable.


      We look forward to receiving the missing information.  Please do not hesitate to contact me if you would like to discuss further.

Sincerely,

Molly Stephens

# EXHIBIT F

# CRAVATH, SWAINE & MOORE LLP

STUART W. GOLD
JOHN W. WHITE
EVAN R. CHESLER
MICHAEL L. SCHLER
RICHARD LEVIN
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON
DANIEL L. MOSLEY
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
SUSAN WEBSTER

DAVID MERCADO
ROWAN D. WILSON
CHRISTINE A. VARNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KEITH R. HUMMEL
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
SARKIS JEBEJIAN

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1513

DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
TEENA-ANN V. SANKOORIKAL
ANDREW R. THOMPSON
DAMIEN R. ZOUBEK

LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ERIC L. SCHIELE
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III

OF COUNSEL
PAUL C. SAUNDERS

November 30, 2012

<u>*Massachusetts Mutual Life Insurance Company v. Merrill Lynch, Pierce, Fenner &*
*Smith, Inc., et al.,*
No. 11-cv-30285-MAP</u>

Dear Molly:

We write on behalf of all Defendants in response to your November 20, 2012 letter (the "November 20 Letter") regarding the loan tapes that Defendants previously produced to Massachusetts Mutual Life Insurance Company ("MassMutual"). Contrary to MassMutual's assertions, the loan tapes produced by Defendants are not "deficient" simply because they do not contain the information that MassMutual believes it requires for it to "mov[e] forward with fact and expert discovery."  (11/20/12 Letter from M. Stephens to Defense Counsel, at 1.)

*First*, there are no "key, industry-standard variables" (*id.* at 1) or "standard information" (*id.* at 2) that can be found in all loan tapes.  To the contrary, loan tapes have different data elements, reside on different proprietary systems and are not standardized across the industry.  These distinctions vitiate MassMutual's claim that "standard information" is "missing" (*id.* at 2-3) from each of the loan tapes.  Indeed, for each of the twelve deals at issue, your complaints about the *different* data missing from each loan tape illustrate the lack of any purported "standard".  (*Id.*)

*Second*, Defendants produced to MassMutual the loan tapes in their possession as they existed in the ordinary course of business, in full compliance with their discovery obligations.[1]  Defendants have no obligation to alter or modify the loan tapes in their possession to generate "corrected loan tape[s]" (*id.* at 2) that did not exist in the ordinary course of business.

---

[1] In one instance (*i.e.*, RAMP 2006-RS6), a loan tape was reconstructed from information in Deutsche Bank Securities Inc.'s possession.

*Third*, with respect to MassMutual's request for originator information, Defendants conducted reasonable and appropriate searches in response to this request. (*See, e.g.*, 9/27/12 Letter from Defense Counsel to M. Stephens, at 7.)  Furthermore, this information is subject to MassMutual's pending motion to compel (Mot. to Compel, Dkt. No. 74) in which MassMutual incorrectly asserted, without any basis, that "Defendants have access to all Originator information through . . . their access to loan tapes." (*Id.* at 9; *see also* Reply in Support of Mot. to Compel, Dkt. No. 89, at 1 ("Defendants still refuse to identify the originators for the mortgage loans, although they indisputably have access to the information through their access to loan tapes.").)

*Fourth*, you take issue with minor "incongruities" between the loan tapes produced for three of the securitizations (*i.e.*, RAMP 2006-RS6, RAMP 2006-RZ3 and RASC 2007-KS3) and the relevant prospectus supplements for those securitizations' principal balances and number of loans. (11/20/12 Letter from M. Stephens to Defense Counsel, at 2.)  Defendants never represented that each tape is identical to the final loan tape for each securitization.  (*See, e.g.*, 11/7/12 Letter from C. Belelieu to M. Stephens, at 2; 10/31/12 Letter from P. Connorton to M. Stephens, at 1.)  In any event, the prospectus supplements contain only estimates of the final number of loans and principal balance for a particular securitization.[2]  Indeed, the loans in a given pool for which the prospectus supplement provides information will, in almost all cases, not match exactly the loans in the securitization as of the closing date because loans may be dropped between the cut-off date and the closing date for any number of reasons, including prepayment.[3] Therefore, the more appropriate comparison for purposes of identifying a "final loan tape," as the Complaint acknowledges, would be the figures in the first monthly Trustee

---

[2] *See, e.g.*, RASC 2007-KS3 Prospectus Supplement, at S-5 ("The aggregate certificate principal balance of the offered certificates may vary by up to 5% from the amount presented in this prospectus supplement."); *id.* at S-57 ("Unless otherwise specified, all principal balances of the mortgage loans are as of the cut-off date, after deducting payments of principal due in the month of the cut-off date, and are rounded to the nearest dollar.  The aggregate principal balance of the mortgage loans may vary from the amounts presented in this prospectus supplement and this variance may affect the characteristics of the final mortgage pool."); *id.* at S-64 ("The description in this prospectus supplement of the mortgage pool and the mortgaged properties is based upon the mortgage pool as constituted at the close of business on the cut-off date, as adjusted for the scheduled principal payments due during the month of the cut-off date.  Prior to the issuance of the offered certificates, Residential Funding Company LLC may remove mortgage loans from the mortgage pool as a result of incomplete or defective documentation, or if it determines that the mortgage loan does not satisfy the characteristics described in the prospectus supplement.").

[3] The figures in the loan tapes produced for RASC 2007-KS3 (*see, e.g.*, JPMS_MM285_000001883) correspond to the figures for that securitization as of March 1, 2007.  (*See, e.g.*, JPMS_MM285_0000001331-1341.)

12-12020-mg    Doc 2503-1    Filed 12/20/12    Entered 12/20/12 20:34:40    Exhibit
Declaration of Jennifer J. Barrett in Support of Motion    Pg 78 of 98

3

Report[4] for each securitization.[5]  (*See, e.g.*, Compl. (Dkt. No. 1), ¶57 (alleging "Number of Loans in Pool at Closing" for RAMP 2006-RZ3 as reflected on first monthly Trustee Report).)

       *Fifth*, where appropriate, Defendants have conducted additional searches for loan tapes and have not identified any other loan tapes in their possession that provide the information MassMutual seeks for the securitizations at issue.

Sincerely,

Christopher D. Belelieu

Molly Stephens
    Quinn Emanuel Urquhart & Sullivan, LLP
      865 S. Figueroa Street, 10th Floor
        Los Angeles, CA 90017

VIA ELECTRONIC EMAIL

---

   [4] For example, the loan tapes produced by Goldman, Sachs & Co. for RALI 2007-QH6 (GS-MM-000006503), RALI 2006-QO6 (GS-MM-000004967), RALI 2006-QO3 (GS-MM-000003372) and RALI 2006-QO1 (GS-MM-000002484), and by Merrill Lynch, Pierce, Fenner & Smith, Inc. for RAMP 2006-RZ3 (ML_MassMutual_285-00002687) and RAMP 2007-RZ1 (ML_MassMutual_285-00000029), each match the total loan numbers and the total principal balances provided in the respective first monthly Trustee Report for the relevant securitization.

   [5] Defendants note that MassMutual has already subpoenaed certain trustees, and that the broad requests in those subpoenas should cover the "final loan tapes" in the trustees' possession, custody and control. (*See, e.g.*, 8/13/12 Subpoena to Deutsche Bank Trust Company America; 11/28/12 Subpoena to U.S. Bank National Association, at Req. No. 2 ("all documents referring or relating to the Securitizations, the Certificates, or the Mortgage Loans").)  To the extent MassMutual has received documents, including such loan tapes, from the subpoenaed trustees, or from any of the originators or due diligence firms that it subpoenaed, Defendants request that MassMutual promptly produce those materials to Defendants as the return dates on all but one of the subpoenas have long passed.  Furthermore, Defendants request that for any future subpoenas that MassMutual may serve on third parties, MassMutual provide Defendants with prompt notice of such subpoenas.  For example, on November 28, 2012, MassMutual provided notice to Defendants for the first time of subpoenas that it had served as early as September 18, 2012. (*See, e.g.*, 9/18/12 Revised Subpoenas to New Century Mortgage Corporation, Decision One Mortgage Company LLC and SCME Mortgage Bankers, Inc.; 10/9/12 Subpoena to Southstar Funding, LLC.)

Copy to:

Counsel of Record

# EXHIBIT G

quinn emanuel    trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, CA  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO. AND INTERNET ACCESS
**(213) 443-3635**

WRITER'S INTERNET ADDRESS
**mollystephens@quinnemanuel.com**

December 4, 2012

<u>VIA E-MAIL</u>

Gary S. Lee
Joel C. Haims
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

Re:    *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*,
<u>Case No. 3:11cv30285 (D. Mass.)</u>

Dear Counsel:

        We represent Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual")
in the above-referenced action against five underwriters that sold MassMutual residential
mortgage-backed securities in 12 securitizations sponsored by Residential Funding Corporation
or Residential Funding Company, LLC ("RFC").  No RFC debtor or affiliate has been named in
the action, and the action has not been stayed by the Bankruptcy Court.  The parties are
proceeding with discovery, and we are writing to request production of the loan tapes for the 12
securitizations identified on Exhibit A to this letter.

        As you know, the loan tape for a securitization contains information about the underlying
loan pool that is critical for fact and expert discovery in a civil action.  For example, without the
final loan tapes for the 12 securitizations, MassMutual cannot identify all originators of the loans
in the securitizations to serve document subpoenas and ensure the preservation of documents.  In
addition, the final loan tapes are necessary for MassMutual to identify a statistically significant
sample of loans to conduct loan file discovery and an expert re-underwriting analysis.

quinn emanuel urquhart & sullivan, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601  | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788  | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139  | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510  | TEL (312) 705-7400  FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400  | TEL (202) 538-8000  FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000  FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan  | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany  | TEL +49 621 43298 6000  FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia  | TEL +7 499 277 1000  FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany  | TEL +49 40 89728 7000  FAX +49 40 89728 7100

December 4, 2012

MassMutual has attempted to obtain the final loan tapes for the 12 securitizations from the five underwriter defendants, but the loan tapes that have been produced do not appear to be final and are missing key pieces of information, including originator information that cannot be obtained from any other available source.  MassMutual has asked the underwriter defendants to search for additional loan tapes, and they have represented they have none.  Given that the deadline for the substantial completion of document discovery in MassMutual's action is January 31, 2013, MassMutual cannot wait any longer to obtain complete loan tapes that contain the basic information necessary to serve subpoenas and to select a sample of loans for fact and expert discovery.

Given that RFC and its affiliates served as the sponsor and depositors of the 12 securitizations, RFC and its affiliates are the only entities (other than the five underwriter defendants) with access to loan tapes for the 12 securitizations.  We are therefore writing to you as bankruptcy counsel for RFC and certain affiliates to obtain the necessary loan tapes.  Because MassMutual's request for loan tapes is part of a broader discovery process, MassMutual may need to obtain other documents from RFC or its affiliates as discovery progresses if MassMutual is unable to obtain the documents from other sources.  But obtaining loan tapes is a necessary prerequisite for moving the action forward, and MassMutual will use the loan tapes to streamline discovery and obtain as many documents as possible from other third parties.

Please let us know by December 7, 2012 whether RFC or any affiliate will agree to produce the loan tapes for the 12 securitizations to MassMutual, and what, if any, procedures MassMutual should follow to obtain the loan tapes.  If MassMutual cannot work with RFC or any affiliate to obtain the loan tapes, it will have no choice but to serve a subpoena and/or commence motion practice, which could be time-consuming and costly for all parties.  We therefore hope that we can work together to obtain the limited number of loan tapes MassMutual requires to meet the discovery deadlines in its case.

Please do not hesitate to contact me if you would like to discuss further.  Thank you for your prompt attention to this matter.

Sincerely,

Molly Stephens

December 4, 2012

**EXHIBIT A**

| Securitization Name | Certificate | Sponsor and Depositor |
|---|---|---|
| Residential Asset Mortgage Products, Inc. Series 2005-RZ1 | RAMP Series 2005-RZ1, Class M1 and Class M2 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2005-QO4 | RALI Series 2005-QO4, Class 2A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO1 | RALI Series 2006-QO1, Class 3A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO3 | RALI Series 2006-QO3, Class A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO4 | RALI Series 2006-QO4, Class 2A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RS4 | RAMP Series 2006-RS4, Class M9 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |

December 4, 2012

| Securitization Name | Certificate | Sponsor and Depositor |
|---|---|---|
| Residential Accredit Loans, Inc. Series 2006-QO6 | RALI Series 2006-QO6, Class A2 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RZ3 | RAMP Series 2006-RZ3, Class M8 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RS6 | RAMP Series 2006-RS6, Class M7 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products, Inc. Series 2007-RZ1 | RAMP Series 2007-RZ1, Class M6, Class M7, and Class M8 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Securities Corp. Series 2007-KS3 | RASC Series 2007-KS3, Class M3S | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Securities Corporation (Depositor) |
| Residential Accredit Loans, Inc. Series 2007-QH6 | RALI Series 2007-QH6, Class A1 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |

# EXHIBIT H

M O R R I S O N | F O E R S T E R

1290 AVENUE OF THE AMERICAS
NEW YORK, NY  10104-0050

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

December 4, 2012

Writer's Direct Contact
212.468.8238
JHaims@mofo.com

**VIA EMAIL**

Molly Stephens, Esq.
Quinn, Emanuel, Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   *Mass. Mut. Life. Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*, Case No.
      3:11-cv-30285 (D. Mass)

Dear Molly:

I write in response to your letter dated December 4, 2012.

On October 12, 2012, the Bankruptcy Court issued a "Memorandum Opinion and Order Denying
the Motions of the Federal Housing Finance Agency and Underwriter Defendants to Compel
Document Discovery From the Debtors" (the "Discovery Stay Order") which precludes the
Debtors from providing any third party document discovery at this time.[1]  Specifically, the
Discovery Stay Order states that

> the Court concludes that the Debtors have established that section
> 105 [of the Bankruptcy Code] should be applied to *limit* or *restrict*
> third-party discovery from the Debtors absent further order of the
> Court . . . . The Court is extending the protection of the stay
> pursuant to section 105(a) to *anyone* seeking discovery from the
> Debtors . . . .

(Discovery Stay Order at 11) (emphasis in original).

As a result, the Debtors will not agree to produce the documents you have requested.

Sincerely,

Joel C. Haims

cc:   Gary Lee, Esq.

---

[1] The Discovery Stay Order is enclosed for your reference.

EXHIBIT I

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, CA  90017-2543 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO. AND INTERNET ACCESS
**(213) 443-3635**

WRITER'S INTERNET ADDRESS
**mollystephens@quinnemanuel.com**

December 11, 2012

<u>VIA E-MAIL</u>

Jeffrey S. Powell
Daniel T. Donovan
Judson D. Brown
Kirkland & Ellis LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005

Re:    *Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.*,
       <u>Case No. 3:11cv30285 (D. Mass.)</u>

Dear Counsel:

We represent Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") in the above-referenced action against five underwriters that sold MassMutual residential mortgage-backed securities in 12 securitizations sponsored by Residential Funding Corporation or Residential Funding Company, LLC ("RFC").  Neither RFC nor the parent company, Ally Financial, Inc ("AFI"), has been named in the action, and the action has not been stayed by the Bankruptcy Court.  The parties are proceeding with discovery, and we are writing to request production of the loan tapes for the 12 securitizations identified on Exhibit A to this letter.

As you know, the loan tape for a securitization contains information about the underlying loan pool that is critical for fact and expert discovery in a civil action.  For example, without the final loan tapes for the 12 securitizations, MassMutual cannot identify all originators of the loans in the securitizations to serve document subpoenas and ensure the preservation of documents.  In

**quinn emanuel urquhart & sullivan, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
WASHINGTON, DC | 1299 Pennsylvania Avenue NW, Suite 825, Washington, District of Columbia  20004-2400 | TEL (202) 538-8000 FAX (202) 538-8100
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100
TOKYO | NBF Hibiya Building, 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Mollstraße 42, 68165 Mannheim, Germany | TEL +49 621 43298 6000 FAX +49 621 43298 6100
MOSCOW | Paveletskaya Plaza, Paveletskaya Square, 2/3, 115054 Moscow, Russia | TEL +7 499 277 1000 FAX +7 499 277 1001
HAMBURG | An der Alster 3, 20099 Hamburg, Germany | TEL +49 40 89728 7000 FAX +49 40 89728 7100

December 11, 2012

addition, the final loan tapes are necessary for MassMutual to identify a statistically significant sample of loans to conduct loan file discovery and an expert re-underwriting analysis.

MassMutual has attempted to obtain the final loan tapes for the 12 securitizations from the five underwriter defendants, but the loan tapes that have been produced do not appear to be final and are missing key pieces of information, including originator information that cannot be obtained from any other available source. MassMutual has asked the underwriter defendants to search for additional loan tapes, and they have represented they have none. MassMutual also has requested that RFC produce the complete loan tapes, but RFC rejected MassMutual's request, claiming that a decision by the Bankruptcy Court concerning loan files sought by the Federal Housing Finance Agency ("FHFA") precludes it from providing any third party document discovery. Given that the deadline for the substantial completion of document discovery in MassMutual's action is January 31, 2013, MassMutual cannot wait any longer to obtain complete loan tapes that contain the basic information necessary to serve subpoenas and to select a sample of loans for fact and expert discovery.

MassMutual is therefore writing to request that AFI produce the loan tapes. Under Section 3.2 of the Shared Services Agreement between AFI and Residential Capital, LLC, AFI may request the loan tapes from RFC as an additional service, and then produce the loan tapes to MassMutual. The 12 loan tapes, which are essentially electronic spreadsheets, are substantially less burdensome to produce than the thousands of loan files AFI agreed to produce to FHFA. MassMutual may need to obtain other documents from AFI or its affiliates as discovery progresses, but obtaining loan tapes is a necessary prerequisite for moving the action forward, and MassMutual will use the loan tapes to streamline discovery and obtain as many documents as possible from other third parties.

Please let us know by December 13, 2012 whether AFI will agree to produce the loan tapes for the 12 securitizations to MassMutual, and what, if any, procedures MassMutual should follow to obtain the loan tapes. If MassMutual cannot work with AFI to obtain the loan tapes, it will have no choice but to proceed with motion practice in the Bankruptcy Court against RFC or other Debtors and/or to proceed with formal discovery and motion practice against AFI, which likely will be time-consuming and costly for all parties. We therefore hope that we can work together to obtain the limited number of loan tapes MassMutual requires to meet the discovery deadlines in its case.

Please do not hesitate to contact me if you would like to discuss further. Thank you for your prompt attention to this matter.

Sincerely,

Molly Stephens

December 11, 2012

## EXHIBIT A

| Securitization Name | Certificate | Sponsor and Depositor |
|---|---|---|
| Residential Asset Mortgage Products, Inc. Series 2005-RZ1 | RAMP Series 2005-RZ1, Class M1 and Class M2 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2005-QO4 | RALI Series 2005-QO4, Class 2A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO1 | RALI Series 2006-QO1, Class 3A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO3 | RALI Series 2006-QO3, Class A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Accredit Loans, Inc. Series 2006-QO4 | RALI Series 2006-QO4, Class 2A1 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RS4 | RAMP Series 2006-RS4, Class M9 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |

December 11, 2012

| Securitization Name | Certificate | Sponsor and Depositor |
| --- | --- | --- |
| Residential Accredit Loans, Inc. Series 2006-QO6 | RALI Series 2006-QO6, Class A2 | Residential Funding Corporation (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RZ3 | RAMP Series 2006-RZ3, Class M8 | Residential Funding Corporation (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products Series 2006-RS6 | RAMP Series 2006-RS6, Class M7 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Mortgage Products, Inc. Series 2007-RZ1 | RAMP Series 2007-RZ1, Class M6, Class M7, and Class M8 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Mortgage Products, Inc. (Depositor) |
| Residential Asset Securities Corp. Series 2007-KS3 | RASC Series 2007-KS3, Class M3S | Residential Funding Company, LLC (Sponsor)<br><br>Residential Asset Securities Corporation (Depositor) |
| Residential Accredit Loans, Inc. Series 2007-QH6 | RALI Series 2007-QH6, Class A1 | Residential Funding Company, LLC (Sponsor)<br><br>Residential Accredit Loans, Inc. (Depositor) |

# EXHIBIT J

| | |
|---|---|
| **From:** | Bryan, Patrick M. <pbryan@kirkland.com> |
| **Sent:** | Thursday, December 13, 2012 9:01 AM |
| **To:** | Molly Stephens |
| **Subject:** | FW: MassMutual v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al., Case No. 11-cv-30285 (D. Mass.) |
| **Attachments:** | 2012-12-11 Letter to Ally.pdf |

Molly -- I write in response to your 12/11 letter to Jeff Powell and Dan Donovan.  AFI does not possess the loan tapes sought in your letter.  Please direct any request for loan tapes to counsel for ResCap.

Thanks,
Patrick

Patrick M. Bryan | Partner | Kirkland & Ellis LLP
655 Fifteenth Street, N.W. | Suite 1200 | Washington , D.C. 20005
Direct: (202) 879-5285 | Cellular : (202) 834-9043  | patrick.bryan@kirkland.com

**From:** Molly Stephens [mailto:mollystephens@quinnemanuel.com]
**Sent:** Tuesday, December 11, 2012 3:31 PM
**To:** Powell, Jeff; Donovan, Daniel T.; Brown, Judson
**Cc:** MassMutual; Eric Winston
**Subject:** MassMutual v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al., Case No. 11-cv-30285 (D. Mass.)

Counsel –

Please see the attached letter regarding loan tapes for 12 securitizations sponsored by Residential Funding Corporation or Residential Funding Company, LLC.

Thanks,

Molly Stephens

***********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
***********************************************************

# EXHIBIT K

12-12020-mg Doc 3508-1 Filed 12/20/12 Entered 12/20/12 20:34:40 Exhibit
Case 3:11-cv-30285-MAP Document 60 Filed 06/27/12 Page 4 of 4
Declaration of Jennifer J. Barrett in Support of Motion    Pg 95 of 98

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


MASSACHUSETTS MUTUAL LIFE          )
INSURANCE COMPANY,                 )
            Plaintiff              )
                                   )
        v.                         )  C.A. NO. 11-30285-MAP
                                   )
MERRILL LYNCH, PIERCE, FENNER      )
& SMITH, INC., ET AL,              )
            Defendants             )


SCHEDULING ORDER

June 27, 2012

PONSOR, U.S.D.J.

Plaintiff Massachusetts Mutual Life Insurance Company has brought eleven nearly identical actions against dozens of Defendants, corporate and individual, seeking to rescind purchases of certain residential mortgage-backed securities and to recover damages arising from those transactions.

On May 30, 2012, counsel appeared for a pretrial scheduling conference pursuant to Fed. R. Civ. P. 16. Ordinarily, pretrial scheduling conferences are handled by Magistrate Judge Kenneth P. Neiman, but Judge Neiman has recused himself with regard to this case. The rationale for his recusal also appears to apply to Massachusetts Mutual Life Insurance Company v. Countrywide Financial Corporation, 11-cv-30215, which is not yet ripe for a Rule 16 conference.

At least nine other cases are pending before this court

12-12020-mg  Doc 3503-1  Filed 12/20/12  Entered 12/20/12 20:34:40  Exhibit
Declaration of Jennifer J. Barrett in Support of Motion    Pg 96 of 98
Case 3:11-cv-30285-MAP Document 60  Filed 06/27/12  Page 2 of 4

as to which Judge Neiman has not recused himself, 11-cv-30035, 11-cv-30039, 11-cv-30044, 11-cv-30047, 11-cv-30048, 11-cv-30094, 11-cv-30126, 11-cv-30127, and 11-cv-30141. These nine cases will be referred to Judge Neiman for a pretrial scheduling conference. Depending upon the timing of the conferences in these nine cases, it may be efficient to craft the pretrial scheduling orders in those cases in light of the pretrial scheduling order set forth below.

Based upon the proposals contained in the parties' joint statement as set forth in Docket No. 50 and upon the oral representations made at the May 30, 2012 conference, the court orders as follows:

1.  Initial disclosures will be exchanged by July 13, 2012.

2.  A joint proposed protective order will be submitted by July 13, 2012.

3.  Any motion for joinder of parties will be filed by July 30, 2012.

4.  A proposal for expert discovery will be filed by October 26, 2012.

5.  Document discovery will be completed by January 31, 2013.

6.  All non-expert depositions and all other non-expert discovery will be completed by June 30, 2013.

7.  Plaintiff will convey to Defendant a report as required by Fed. R. Civ. P. 26(a)(2), regarding any expert whose testimony will be offered at trial, no later than July 31, 2013.

8.  Defendant's Rule 26(a)(2) reports will be

2

12-12020-mg Doc 3502-51 Filed 12/20/12 Entered 12/20/12 20:34:40 Exhibit
Case 3:11-cv-30285-MAP Document 60 Filed 06/27/12 Page 97 of 4
Declaration of Jennifer J. Barrett in Support of Motion   Pg 97 of 98

conveyed to Plaintiff no later than September 30,
2013.

9. All expert depositions will be completed and all
discovery will close by December 31, 2013.

10. Any motions for summary judgment will be filed
by February 28, 2014 and opposed by March 31, 2014.

11. Reply briefs, if necessary, may be filed within
fifteen days thereafter and sur-replies may be filed
fifteen days after that.

12. Once the motions for summary judgment are
filed, the court will set the motions for a prompt
hearing, with a final pretrial conference to follow,
if appropriate, after the court's rulings.

13. Each party will be permitted to serve fifty
joint interrogatories per opposing party, along with
twenty additional interrogatories, to address
matters unique to the particular party.

14. Each party will be permitted to serve twenty-
five requests for admission per opposing party,
excluding admissions as to the authenticity of
documents, which will not count against this total.

15. Each party will be permitted to submit two sets
of document requests per opposing party as set forth
in Local Rule 26.1(c), with the understanding that
any party may for good cause request that additional
sets of documents be permitted.

As noted above, the other nine cases raising a similar
constellation of issues, as to which Judge Neiman has not
recused himself, are hereby referred to Judge Neiman for a
pretrial scheduling conference pursuant to Fed. R. Civ. P. 16,
at a time when, in his opinion, the cases are ripe for such a
conference. Judge Neiman, as noted, may wish to consider the
schedule outlined in this order to assist in establishing the

3

12-12020-mg   Doc 3503-1   Filed 12/20/12   Entered 12/20/12 20:34:40   Exhibit
Case 3:11-cv-30285-MAP   Document 60   Filed 06/27/12   Page 4 of 4
Declaration of Jennifer J. Barrett in Support of Motion   Pg 98 of 98

pretrial schedule for the other cases.

In addition, in some or all of the eleven cases, Plaintiff has filed a motion to strike.  <u>See</u> <u>e.g.</u>, Dkt. No. 47.  To the extent Judge Neiman has not recused himself, all such motions to strike are hereby referred to Judge Neiman for ruling.

Once 11-cv-30215 (as to which Judge Neiman will likely recuse himself) is ready for a Rule 16 conference, counsel will appear before this court.  Alternatively, they may stipulate to a schedule along the lines set forth in this order.

It is So Ordered.


                              /s/ Michael A. Ponsor
                              MICHAEL A. PONSOR
                              United States District Judge