UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**RESIDENTIAL CAPITAL, LLC, et al.**
1177 Avenue of Americas
New York, NY 10036

Case No. 12-12020
Chapter 11

Jointly Administered

Monthly Operating Report for
the period from November 1, 2012 through November 30, 2012

**MORRISON & FOERSTER LLP**
(Debtors' Attorneys)

Monthly Operating Income (Loss): ($52,221,221)

Report Preparer:

The undersigned, having reviewed the attached report and being familiar with the Debtors'
financial affairs, verifies under the penalty of perjury that the information contained therein
is complete, accurate and truthful to the best of my knowledge.

Date: December 26, 2012

James Whitlinger
Chief Financial Officer

RESIDENTIAL CAPITAL, L.L.C., et al.
Case No. 12-12020
JOINTLY ADMINISTERED
DEBTORS IN POSSESSION
INDEX TO MONTHLY OPERATING REPORT

|  | Page |
|---|---|
| Global Notes | 1-6 |
| Corporate Monthly Operating Report | |
| Schedule of Cash Receipts and Disbursements | MOR-1 |
| Schedule of Bank Account Balances | MOR-1 CON'T |
| Consolidated Statement of Operations | MOR-2 |
| Consolidated Balance Sheet | MOR-3 |
| Status of Post-Petition Taxes | MOR-4 |
| Summary of Unpaid Post-Petition Debts | MOR-4 |
| Accounts Receivable Reconciliation and Aging | MOR-5 |
| Payments to Insiders and Professionals | MOR-6 |
| Post-Petition Status of Leases Payable | MOR-6 |
| Post-Petition Status of Secured Notes | MOR-6 |
| Debtor Questionnaire | MOR-7 |

A.    **Global Notes**

1.    **Background**

Residential Capital, LLC ("ResCap"), together with its subsidiaries, is a real estate finance company that primarily focuses on residential mortgage markets in the United States. Their primary and most valuable business operations consist of servicing mortgage loans for investors, including loans originated by Ally Bank and other third parties. As of June 30, 2012, ResCap was servicing approximately 2.3 million domestic residential mortgage loans.

2.    **Introduction**

On May 14, 2012 (the "Commencement Date"), ResCap and certain of its subsidiaries (each a "Debtor" and collectively, the "Debtors"), filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a statutory committee of creditors pursuant to section 1102(a)(1) of the Bankruptcy Code. Information contained herein may differ from the Debtors' filings on the Commencement Date due to more accurate information becoming available.

3.    **Accounting Principles**

The financial statements and supplemental information contained herein are preliminary and unaudited. In addition, the financial statements included in MOR-2 and MOR-3 represent the financial condition and results of operations of the consolidated ResCap group, which includes the Debtors and their non-Debtor affiliates. The financial statements have been prepared in accordance with generally accepted accounting principles ("GAAP"), other than as noted, as it applies to debtors in possession. The preparation of the financial statements requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities at the date of the financial statements and income and expenses during the reporting period. In developing these estimates and assumptions, management uses available evidence at the time of the financial statements. Because of uncertainties associated with estimating the amounts, timing and likelihood of possible outcomes, actual results could differ from our estimates. Supplemental information contained herein is generally presented on a cash and/or invoiced basis.

4.    **General Methodology**

The Debtors prepared this Monthly Operating Report ("MOR") relying primarily upon the information set forth in its books and records. In preparing this MOR, the Debtors made reasonable efforts to supplement the information set forth in its books and records

1

with additional information concerning transactions that may not have been identified
therein to the extent necessary.

## 5.    Past Performance

The financial position and results of operations contained herein are not necessarily
indicative of results which may be expected for any other period or for the full year and as
a result, may not reflect the consolidated financial position and results of operations of the
Debtors in the future.

## 6.    Carrying Value of Assets

Unless otherwise indicated, the values for assets contained in this MOR are book
values as of the reporting period. Amounts ultimately realized from the disposition of the
Debtors' assets may vary materially from their book value. The Debtors reserve their right
to amend or adjust the value of each asset or liability set forth herein.

In connection with the Debtors' Section 363 asset sales, the Debtors conducted two
separate auctions in accordance with procedures approved by the Bankruptcy Court on
June 28, 2012.  These auctions were completed on October 24 and October 25, 2012.  The
Bankruptcy Court approved the auction results on November 20, 2012.  The ultimate
proceeds to be received in connection with the sales will be determined on the closing
date(s), and may differ materially from the auction proceeds, which were based upon the
business platform and assets as of August 31, 2012. In accordance with the Debtors'
accounting policy as it relates to ASC 360, Impairment and Disposal of Long-lived Assets,
the business platforms and related assets ("Section 363 Disposal Group") were classified
as operations held for sale as of November 30, 2012.

The Debtors recognize there are steps remaining to be completed in connection
with the sales, including the completion of certain conditions precedent in the respective
contracts, which the Debtors believe to be usual and customary and which the Debtors
expect to resolve in due course.  Under ASC 360, the assets held for sale are carried at the
lower of carrying value or fair value less transaction costs.  There was no impairment
recorded at November 30, 2012 as the estimated fair value less transaction costs exceeds
the carrying value.

## 7.    Liabilities Not Subject to Compromise

Although payment of prepetition claims generally is not permitted, the Bankruptcy
Court has granted the Debtors the authority, but not the requirement, to pay certain
pre-petition claims in designated categories and subject to certain terms and conditions.
This relief generally was designed to preserve the value of the Debtors' businesses and
assets. To the extent such claims have been categorized as "Liabilities Not Subject to
Compromise," the Debtors reserve their right not to pay those amounts if they believe the
payment not to be in the best interest of the Debtors' estates (collectively, the "Estate").
The Debtors have paid and intend to continue to pay undisputed post-petition obligations
incurred in the ordinary course of their businesses.

2

8.      **Liabilities Subject to Compromise**

As a result of commencing the Chapter 11 Cases, the payment of prepetition indebtedness is "Subject to Compromise" or other treatment under a chapter 11 plan. Generally, actions to enforce or otherwise effect payment of prepetition liabilities are stayed.

The filing of the Chapter 11 Cases constituted an event of default under, or otherwise triggered accelerated repayment obligations with respect to, a number of debt instruments and agreements relating to direct and indirect financial obligations of the Debtors (collectively, the "Prepetition Debt"). As a result, the Debtors' Prepetition Debt became automatically and immediately due and payable. The Debtors believe that any efforts to enforce the payment obligations in connection with the Prepetition Debt have been stayed as a result of the filing of the Chapter 11 Cases.

Following a hearing on August 29, 2012, the Bankruptcy Court approved the motion to set the Bar Date, which required general claimants to submit claims no later than the close of business on November 9, 2012 (subsequently extended to November 16, 2012) and governmental units to submit claims no later than the close of business on November 30, 2012.  Approximately 6,300 proofs of claim totaling approximately $97.3 billion were filed against the Debtors in connection with the Bar Date.  The Debtors' Claim Agent continues to receive proofs of claim after the Bar Date. Certain parties have been granted extensions for the filing of their proofs of claims beyond the Bar Date. Claims by creditors will be investigated and resolved in connection with a claims resolution process, which could include the Debtors filing objections to claims that are deemed to be unsubstantiated. This process is expected to take a considerable amount of time to complete.  As a result, the number and amount of allowed claims is not known, nor can the ultimate recovery with respect to allowed claims be estimated at this time.

9.      **Executory Contracts**

Under Section 365 of the Bankruptcy Code, the Debtors may assume, assume and assign or reject certain executory contracts and unexpired leases, subject to approval of the Bankruptcy Court.  In general, rejection of an executory contract or unexpired lease is treated as a pre-petition breach and, subject to certain exceptions, relieves the Debtors from performing their future obligations.  To the extent the Debtors reject an executory contract or unexpired lease, the contract counterparty or lessor is entitled to a pre-petition general unsecured claim for damages caused by such a breach.  Generally, the assumption and assignment of an executory contract or unexpired lease requires the Debtors to cure, or satisfy, all pre-petition obligations under such contracts or leases.

On July 26, 2012, the Debtors filed a notice of intent to assume and assign certain executory contracts, unexpired leases of personal property and unexpired leases of nonresidential real property and cure amounts related thereto.  The Debtors expect certain of their contracts and unexpired leases ("Assumed Contracts") to be assumed and assigned as part of the Section 363 asset sales.  The deadline for counterparties objecting to the approval of any cure amounts so provided in the notice was September 28, 2012.  The

3

deadline for counterparties to object to the assumption by the Debtors and assignment of an Assumed Contract was November 19, 2012.

The Debtors received 39 objections from counterparties with respect to cure amounts and/or assumption and assignment of the Assumed Contracts. The Debtors are investigating all cure objections and working with counterparties to resolve their objections. To the extent the Debtors and the counterparties cannot reach an agreement, the Debtors may choose to reject the contract. The Debtors cannot estimate the impact, if any, of the resolution of these objections.

### 10.    Reservation of Rights

Given the complexity of the Debtors' businesses, inadvertent errors or omissions may have occurred in the preparation of this MOR. Accordingly, the Debtors hereby reserve all rights to dispute the validity, status, enforceability or the executory nature of any claim amounts, representations or other statements in this MOR and reserve the right to amend or supplement this MOR, if necessary.

Nothing contained in this MOR shall constitute a waiver of the Debtors' rights or an admission with respect to the Chapter 11 Cases, including with respect to any issues involving the Debtors' ownership interests, substantive consolidation, equitable subordination, defenses and/or causes of action arising under chapter 5 of the Bankruptcy Code and any other applicable non-bankruptcy law.

### B.    Notes to Statement of Income (MOR-2)

Prior to the bankruptcy filing, the Debtors economically hedged the value of their mortgage servicing rights ("MSR") with both derivative and nonderivative financial instruments. Subsequent to the Commencement Date, the Debtors no longer hedge the MSR asset. Under the terms of the stalking horse agreement, the ultimate purchase price paid for the MSRs being acquired is based on the unpaid principal balance of the underlying loans. As a result, while the MSR asset is economically exposed to changes in market conditions, in particular interest rates, the Debtors are no longer hedging this risk as it will not impact the proceeds received upon completion of the asset sales. Until the asset sales are completed, the value of the MSR will fluctuate with market conditions, impacting the Debtors' results of operations.

### C.    Notes to Balance Sheet (MOR-3)

As noted above in 6. Carrying Value of Assets, the Debtors have reclassified the Section 363 Disposal Group to assets and liabilities of operations held for sale. The Debtors have reclassified all purchased assets and assumed liabilities, including certain assets and related liabilities that were legally transferred to variable interest entities through securitization transactions that were required to be re-recognized under ASC 810, Consolidation or ASC 860, Transfers and Servicing and will be de-recognized upon sale of the related servicing and any retained financial interest in the securitization. There was no impairment of the Section 363 Disposal Group required at November 30, 2012 as the estimated proceeds less cost to sell is greater than the carrying value.

4

In accordance with GAAP, ResCap is required to recognize certain assets and related liabilities that were legally transferred to variable interest entities through securitization transactions. These assets are not considered assets of the Debtors as the transfers satisfied the conditions of a legal sale to a bankruptcy-remote entity. At November 30, 2012, Assets of operations held for sale includes $2.4 billion of delinquent loans (primarily GNMA loans) subject to conditional repurchase options whereby the Debtors have the option, but not the obligation, to repurchase delinquent assets from off-balance sheet securitizations. The corresponding $2.4 billion liability is recorded in Liabilities of operations held for sale. At November 30, 2012, Finance receivables and loans, net, includes $662.0 million related to private-label securitizations and secured borrowings that the Debtors are required to consolidate under GAAP. The corresponding liabilities are recorded in Collateralized borrowings in securitization trusts, $455.9 million, and Other borrowings, $131.6 million.

**D.      Notes to Accounts Receivable Reconciliation and Aging (MOR-5)**

Due to the nature of the Debtors' businesses, an aging of accounts receivable is not indicative of collectability and therefore an aging of accounts receivables is not maintained. The majority of the accounts receivable are comprised of servicer advances made by the Debtors to the investors in mortgage loans serviced by the Debtors. Such advances are made to maintain the scheduled cash flows in the event of borrower default or delinquency and have a priority claim to the cash flows in the event of foreclosure or liquidation. The next largest component of the Debtors' accounts receivable balance is for governmental guarantees for loans in foreclosure.

**E.      Notes to Debtor Questionnaire (MOR-7)**

**1.      Question 2 Notes**

a.      The Debtors have control over custodial accounts which are used to disburse non-debtor owned funds to various parties pursuant to the Debtors' servicing business. The Debtors obtained Bankruptcy Court approval to continue to operate their servicing business in the ordinary course, including the disbursement of funds from these custodial accounts.

b.      The Debtors are in compliance with the *Final Order under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre- And Post-Petition Lenders' Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash Management Order"), approved on June 15, 2012.

5

c.      As part of the Debtors' normal course of business, certain third parties make payments on the Debtors' behalf and the Debtors also disburse custodial funds from various custodial accounts which are not debtor-in-possession accounts. These payments are made in accordance with the applicable Court orders and are a necessary part of the Debtors' business operations.

2.      **Question 4 & 5 Notes**

Insurance coverage for the Debtors is provided through policies maintained by Ally Financial Inc. ("Ally"). The Debtors reimburse Ally for their share of the insurance coverage in accordance with the terms and conditions of the shared service agreement approved by the Bankruptcy Court. The Debtors have made all reimbursement payments to Ally for its insurance obligations. Since the Debtors do not directly contract for their own insurance coverage, the Debtors would not be the party to receive notices from the insurance providers regarding any lapse in coverage. The Debtors have confirmed with Ally that all necessary insurance policies remain in effect as of the date of this MOR.

3.      **Question 6 Notes**

The Debtors have received Bankruptcy Court authority to pay certain pre-petition liabilities pursuant to the *Order under Bankruptcy Code sections 105, 507 and 541 and Bankruptcy Rule 6003, Authorizing, but not directing, the Debtors to Honor Certain Prepetition Obligations* [Docket No. 95] and the *Supplemental Order for Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 391] (collectively, the "Payment Orders"). The Debtors have established procedures for the evaluation and approval of payments related to these specific prepetition liabilities. The Debtors are in compliance with the caps and noticing requirements in the Payment Orders.

4.      **Question 7 Notes**

In the ordinary course of their businesses, the Debtors generate receivables from Ally Bank, Ally, and other affiliates as a result of hedging, servicing, origination, shared services, and other transactions between the Debtors and these affiliates. The Debtors are collecting amounts owed on these receivables in accordance with the agreements related to these services and post-petition practices.

5.      **Question 8 Notes**

Consistent with relief granted by the Bankruptcy Court under the *Final Order Under Bankruptcy Code Sections 105(a), 363(b), 507(a), 1107 and 1108 and Bankruptcy Rule 6003 (i) Authorizing, but not directing, the Debtors to (a) Pay and Honor Prepetition Wages, Compensation, Employee Expense and Employee Benefit Obligations; and (b)*

6

*Maintain and Continue Employee Compensation and Benefit Programs, and (ii) Directing Banks to Honor Prepetition Checks and Transfer Requests for Payment of Prepetition Employee Obligations* [Docket No. 393] (the "Wages Order") and past practices, the Debtors' payroll and related taxes are paid by Ally on the Debtors' behalf, and the Debtors reimburse Ally for these payments. The Debtors are current with their payments to Ally and Ally has paid these obligations on the Debtors' behalf.

**6.     Question 12 Notes**

The Debtors have received Bankruptcy Court authority to pay pre-petition taxes pursuant to the *Final Order Under Bankruptcy Code Sections 105(a), 363, 506(a), 507(a)(8), 541 and 1129 and Bankruptcy Rule 6003 Authorizing Payment of Taxes and Regulatory Fees* [Docket No. 384]. The Debtors are in compliance with the relief granted under this order.

**7.     Question 13 Notes**

The Debtors do not consider post-petition invoices as past due or delinquent if such invoices are subject to dispute, or further review and/or reconciliation with the vendor.

As a result of the Bankruptcy Filing (the "Filing"), the Debtors have instituted new procedures surrounding their Procurement to Pay function to ensure that prepetition obligations are not inadvertently paid.  These processes require significantly higher levels of manual intervention in the review, approval and vouchering of invoices.  During the period from May 14, 2012 to November 30, 2012, the Debtors have received a large volume of invoices that were in whole or part for prepetition goods and services. Over the past several months the organization has shifted to processing primarily post petition obligations. At November 30, 2012 the accounts payable aging continues to reflect certain amounts as delinquent. The Debtors consider this to be reflective of the normal accounts payable process, due to the fact that certain key vendors are on immediate payments terms, and in some cases invoices are not received timely. The additional review procedures instituted as a result of the filing may also continue to result in some processing delays.

**8.     Question 14 Notes**

Consistent with the agreements in place pre-petition, the Debtors' payroll and related taxes are paid by Ally on the Debtors' behalf.  In accordance with the Wages Order, the Debtors continue to reimburse Ally for these payments. The Debtors are current with their payments to Ally and Ally has paid these obligations on the Debtors' behalf in a timely manner.

**9.     Question 15 Notes**

The Debtors borrowed $3.5 million under the Ally DIP loan during November 2012.  In addition, the Debtors received $17.6 million under the FNMA EAF facility in November 2012.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Residential Capital, LLC, et al.

**Debtor**

Case No. 12-12020

Reporting Period: November 1, 2012 - November 30, 2012

Federal Tax I.D. #   20-1770738

### CORPORATE MONTHLY OPERATING REPORT

File with the Court and submit a copy to the United States Trustee within 20 days after the end of the month and
submit a copy of the report to any official committee appointed in the case.
*(Reports for Rochester and Buffalo Divisions of Western District of New York are due 15 days after the end of
the month, as are the reports for Southern District of New York.)*

| REQUIRED DOCUMENTS | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1 (CON'T) | | X |
| Copies of bank statements | | | X |
| Cash disbursements journals | | N/A | |
| Statement of Operations | MOR-2 | X | |
| Balance Sheet | MOR-3 | X | |
| Status of Post-petition Taxes | MOR-4 (CON'T) | | X |
| Copies of IRS Form 6123 or payment receipt | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Post-petition Debts | MOR-4 | X | |
| Listing of Aged Accounts Payable | | | X |
| Accounts Receivable Reconciliation and Aging | MOR-5 | X | |
| Taxes Reconciliation and Aging | MOR-5 | | X |
| Payments to Insiders and Professional | MOR-6 | X | |
| Post-petition Status of Secured Notes, Leases Payable | MOR-6 | X | |
| Debtor Questionnaire | MOR-7 | | X |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents
are true and correct to the best of my knowledge and belief.

Signature of Authorized Individual*                                     Date          12/26/2012

Printed Name of Authorized Individual          James Whitlinger          Date          12/26/2012

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a
partnership; a manager or member if debtor is a limited liability company.

In re Residential Capital, LLC, et al.

**Debtor**

Case No. 12-12020

Reporting Period: November 1-30, 2012

**Debtors' Cash Flow by Line Item (unaudited)** [3](4)
November 1, 2012 - November 30, 2012
($ in thousands)

| Case Number | Consolidated Entities [1] | Ditech, LLC | DOA Holding Properties, LLC | ETS of Washington, Inc. | Executive Trustee Services. LLC | GMAC Mortgage USA Corporation | GMAC Residential Holding Company, LLC | Home Connects Lending Services, LLC | Homecomings Financial, LLC |
|---|---|---|---|---|---|---|---|---|---|
| | | 12-12021 | 12-12022 | 12-12027 | 12-12028 | 12-12031 | 12-12033 | 12-12039 | 12-12042 |
| **Beginning Cash Balance** | $ 1,497,728 | $ 856 | $ 11 | $ 13 | $ - | $ - | $ 9 | $ - | $ - |
| **Receipts** | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | 216,931 | - | - | - | - | - | - | - | - |
| Hedge Proceeds | 150 | - | - | - | - | - | - | - | - |
| Returns on Servicer Advances | 647,744 | - | - | - | - | - | - | - | - |
| Loan and Securities Collections | 38,844 | - | - | - | - | - | - | - | - |
| Fee Income | 92,815 | - | - | - | - | - | - | - | - |
| Other Receipts, net | 18,250 | - | - | - | - | - | - | - | - |
| **Total Receipts** | 1,014,734 | - | - | - | - | - | - | - | - |
| **Disbursements** [2] | | | | | | | | | |
| Servicer Advances | (779,571) | - | - | - | - | - | - | - | - |
| Hedge Disbursements | - | - | - | - | - | - | - | - | - |
| Originations/Repurchases | (128,945) | - | - | - | - | - | - | - | - |
| Accounts Payable and Payroll | (91,936.26) | - | - | - | - | - | (3) | - | - |
| Other Disbursements | (3,532) | - | - | - | - | - | - | - | - |
| **Subtotal Disbursements** | (1,003,985) | - | - | - | - | - | (3) | - | - |
| Retained Professional Fees / Reorganization Costs | (28,755) | - | - | - | - | - | - | - | - |
| Debt Interest/Fees/Expenses | (22,045) | - | - | - | - | - | - | - | - |
| **Total Disbursements** | (1,054,785) | - | - | - | - | - | (3) | - | - |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | (40,051) | - | - | - | - | - | (3) | - | - |
| Intercompany | 7,609 | - | - | - | - | - | - | - | - |
| Debt Draws/(Paydowns) | 21,084 | - | - | - | - | - | - | - | - |
| **Net Cash Flow** | (11,358) | - | - | - | - | - | (3) | - | - |
| **Ending Cash Balance** | $ 1,486,371 | $ 856 | $ 11 | $ 13 | $ - | $ - | $ 6 | $ - | $ - |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ 3,070 | $ (0) | $ - | $ (12) | $ (490) | $ - | $ (5) | $ (8) | $ (1,527) |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); Residential Funding Company, LLC (12-12019); GMACM Borrower, LLC (12-12035); and RFC Borrower, LLC (12-12068)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only

In re Residential Capital, LLC, et al.
**Debtor**

Case No. 12-12020
Reporting Period: November 1-30, 2012

**Debtors' Cash Flow by Line Item (unaudited)[3][4]**
November 1, 2012 - November 30, 2012
($ in thousands)

| | Passive Asset Transactions LLC | RCSFJV2004 LLC | Residential Consumer Services, LLC | Residential Funding Mortgage Exchange, LLC | RFC Asset Holdings II, LLC | RFC Asset Management, LLC | RFC SFJV 2002, LLC | RFC Construction Funding, LLC | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Case Number** | 12-12044 | 12-12051 | 12-12058 | 12-12059 | 12-12065 | 12-12066 | 12-12071 | 12-12069 | |
| **Beginning Cash Balance** | $ 2,976 | $ 4 | $ 1,019 | $ 25 | $ 214 | $ 6 | $ 7 | $ 483 | $ 1,503,351 |
| **Receipts** | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | - | - | - | - | - | - | - | - | 216,931 |
| Hedge Proceeds | - | - | - | - | - | - | - | - | 150 |
| Returns on Servicer Advances | - | - | - | - | - | - | - | - | 647,744 |
| Loan and Securities Collections | 2,800 | - | - | - | 1,726 | - | - | - | 43,369 |
| Fee Income | - | - | - | - | - | - | - | - | 92,815 |
| Other Receipts, net | - | - | 263 | - | - | - | - | - | 18,514 |
| **Total Receipts** | 2,800 | - | 263 | - | 1,726 | - | - | - | 1,019,523 |
| **Disbursements[2]** | | | | | | | | | |
| Servicer Advances | - | - | - | - | - | - | - | - | (779,571) |
| Hedge Disbursements | - | - | - | - | - | - | - | - | - |
| Origination/Repurchases | - | - | (1) | - | - | - | - | - | (128,945) |
| Accounts Payable and Payroll | - | (1) | - | - | (2) | (1) | (1) | - | (91,944) |
| Other Disbursements | (0) | - | - | - | - | - | - | - | (3,532) |
| **Subtotal Disbursements** | (0) | (1) | - | - | (2) | (1) | (1) | - | (1,003,992) |
| Retained Professional Fees / Reorganization Costs | - | - | - | - | - | - | - | - | (28,755) |
| Debt Interest/Fees/Expenses | - | - | - | - | - | - | - | - | (22,045) |
| **Total Disbursements** | (0) | (1) | - | - | (2) | (1) | (1) | - | (1,054,792) |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | 2,800 | (1) | 263 | - | 1,724 | (1) | (1) | - | (35,270) |
| Intercompany | (5,721) | - | - | - | (1,888) | - | - | - | - |
| Debt Draws/(Paydowns) | - | - | - | - | - | - | - | - | 21,084 |
| **Net Cash Flow** | (2,921) | (1) | 263 | - | (165) | (1) | (1) | - | (14,185) |
| **Ending Cash Balance** | $ 55 | $ 3 | $ 1,282 | $ 25 | $ 49 | $ 5 | $ 5 | $ 483 | $ 1,489,165 |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ - | $ (1) | $ (273) | $ - | $ (753) | $ (1) | $ (1) | $ - | |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); Residential Funding Company, LLC (12-12019); GMACM Borrower, LLC (12-12035); and RFC Borrower, LLC (12-12068)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only

In re Residential Capital, LLC, et al.
Debtor

Case No. 12-12020
Reporting Period: November 1-30, 2012

**Debtors' Cash Flow by Line Item (unaudited)** [1][3][4]
May 14, 2012 - November 30, 2012
($ in thousands)

| Case Number | Consolidated Entities [1] | Ditech, LLC 12-12021 | DOA Holding Properties, LLC 12-12022 | ETS of Washington, Inc. 12-12027 | Executive Trustee Services. LLC 12-12028 | GMAC Mortgage USA Corporation 12-12031 | GMAC Residential Holding Company, LLC 12-12033 | Home Connects Lending Services, LLC 12-12039 | Homecomings Financial, LLC 12-12042 |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash Balance** | $ 472,830 | $ 856 | $ 11 | $ 13 | $ - | $ 500 | $ 23 | $ 5 | $ - |
| **Receipts** | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | 1,568,848 | - | - | - | - | - | - | - | - |
| Hedge Proceeds | 121,989 | - | - | - | - | - | - | - | - |
| Returns on Servicer Advances | 4,379,509 | - | - | - | - | - | - | - | - |
| Loan and Securities Collections | 319,947 | - | - | - | - | - | - | - | - |
| Fee Income | 523,169 | - | - | - | - | - | - | - | - |
| Other Receipts, net | 94,810 | - | - | - | - | - | - | - | - |
| **Total Receipts** | 7,008,271 | - | - | - | - | - | - | - | - |
| **Disbursements** [2] | | | | | | | | | |
| Servicer Advances | (4,752,930) | - | - | - | - | - | - | - | - |
| Hedge Disbursements | (32,448) | - | - | - | - | - | - | - | - |
| Originations/Repurchases | (1,460,488) | - | - | - | - | - | - | - | - |
| Accounts Payable and Payroll | (400,472) | - | - | - | - | - | (16) | - | - |
| Other Disbursements | (67,470) | - | - | - | - | - | - | - | - |
| **Subtotal Disbursements** | (6,713,808) | - | - | - | - | - | (16) | - | - |
| Retained Professional Fees / Reorganization Costs | (47,685) | - | - | - | - | - | - | - | - |
| Debt Interest/Fees/Expenses | (105,587) | - | - | - | - | - | - | - | - |
| **Total Disbursements** | (6,867,080) | - | - | - | - | - | (16) | - | - |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | 141,192 | - | - | - | - | - | (16) | - | - |
| Intercompany | 28,010 | - | - | - | - | (500) | - | (5) | - |
| Debt Draws/(Paydowns) | 844,340 | - | - | - | - | - | - | - | - |
| **Net Cash Flow** | 1,013,541 | - | - | - | - | (500) | (16) | (5) | - |
| **Ending Cash Balance** | $ 1,486,371 | $ 856 | $ 11 | $ 13 | $ - | $ - | $ 6 | $ - | $ - |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ 8,708 | $ (1) | $ - | $ (81) | $ (4,079) | $ (0) | $ (17) | $ (50) | $ (1,647) |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); Residential Funding Company, LLC (12-12019); GMACM Borrower, LLC (12-12035); and RFC Borrower, LLC (12-12068)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only

In re Residential Capital, LLC, et al.

**Debtor**

Case No. 12-12020

Reporting Period: November 1-30, 2012

**Debtors' Cash Flow by Line Item (unaudited)**[3)(4)]

May 14, 2012 - November 30, 2012

($ in thousands)

| | Passive Asset Transactions LLC | RCSFJV2004 LLC | Residential Consumer Services, LLC | Residential Funding Mortgage Exchange, LLC | RFC Asset Holdings II, LLC | RFC Asset Management, LLC | RFC SFJV 2002, LLC | RFC Construction Funding, LLC | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Case Number** | 12-12044 | 12-12051 | 12-12058 | 12-12059 | 12-12065 | 12-12066 | 12-12071 | 12-12069 | |
| **Beginning Cash Balance** | $ 1,315 | $ 4 | $ - | $ 25 | $ 55 | $ 6 | $ 6 | $ 483 | $ 476,131 |
| **Receipts** | | | | | | | | | |
| Loan Sales/Redeliveries/Claims Proceeds | - | - | - | - | - | - | - | - | 1,568,848 |
| Hedge Proceeds | - | - | - | - | - | - | - | - | 121,989 |
| Returns on Servicer Advances | - | - | - | - | - | - | - | - | 4,379,509 |
| Loan and Securities Collections | 16,573 | - | - | - | 9,474 | - | - | - | 345,994 |
| Fee Income | - | - | - | - | - | - | - | - | 523,169 |
| Other Receipts, net | 55 | - | 1,485 | - | - | - | - | - | 96,350 |
| **Total Receipts** | 16,628 | - | 1,485 | - | 9,474 | - | - | - | 7,035,859 |
| **Disbursements**[2] | | | | | | | | | |
| Servicer Advances | - | - | - | - | - | - | - | - | (4,752,930) |
| Hedge Disbursements | - | - | - | - | - | - | - | - | (32,448) |
| Origination/Repurchases | - | - | - | - | - | - | - | - | (1,460,488) |
| Accounts Payable and Payroll | (29) | (9) | - | - | (13) | (8) | (8) | - | (400,527) |
| Other Disbursements | - | - | - | - | - | - | - | - | (67,500) |
| **Subtotal Disbursements** | (29) | (9) | - | - | (13) | (8) | (8) | - | (6,713,892) |
| Retained Professional Fees / Reorganization Costs | - | - | - | - | - | - | - | - | (47,685) |
| Debt Interest/Fees/Expenses | - | - | - | - | - | - | - | - | (105,587) |
| **Total Disbursements** | (29) | (9) | - | - | (13) | (8) | (8) | - | (6,867,164) |
| **Net Cash Flow (excl. intercompany, debt draws/paydowns)** | 16,599 | (9) | 1,485 | - | 9,461 | (8) | (8) | - | 168,695 |
| Intercompany | (17,859) | 8 | (203) | - | (9,467) | 7 | 8 | - | (0) |
| Debt Draws/(Paydowns) | - | - | - | - | - | - | - | - | 844,340 |
| **Net Cash Flow** | (1,260) | (1) | 1,282 | - | (6) | (1) | (0) | - | 1,013,034 |
| **Ending Cash Balance** | $ 55 | $ 3 | $ 1,282 | $ 25 | $ 49 | $ 5 | $ 5 | $ 483 | $ 1,489,165 |
| **Expenses Paid On Behalf of / (By) Other Debtor Entities** | $ - | (5) | (1,515) | $ - | (1,303) | (5) | (5) | $ - | $ - |

Note - Cash balances represent bank cash balances, and excludes cash accounts classified as restricted cash on the balance sheet
(1) Includes Residential Capital, LLC (12-12020); GMAC Mortgage, LLC (12-12032); Residential Funding Company, LLC (12-12019); GMACM Borrower, LLC (12-12035); and RFC Borrower, LLC (12-12068)
(2) See MOR 6 for details of disbursements to affiliates
(3) Debtors not listed in MOR-1 had no cash activity, expenses or balances in the MOR reporting period
(4) Above schedule uses direct cash flow method and pertains to Debtor entities only

In re Residential Capital, LLC, et al.

**Debtor**

Case No. 12-12020

Reporting Period: November 1-30, 2012

**US Trustee Disbursement / Expense Summary**
November 2012 (USD)

| Debtor | Case Number | Tax ID | November 2012 Monthy Disbursements | Expenses Paid On Behalf of / (By) Other Debtor Entities for November 2012 | Allocated November 2012 Monthly Disbursements |
|---|---|---|---|---|---|
| Residential Funding Company, LLC[1] | 12-12019 | 23-1694840 | N/A | N/A | N/A |
| Residential Capital, LLC[1] | 12-12020 | 45-5064887 | N/A | N/A | N/A |
| GMAC Mortgage, LLC[1] | 12-12032 | 20-1770738 | N/A | N/A | N/A |
| GMACM Borrower LLC[1] | 12-12035 | 93-0891336 | N/A | N/A | N/A |
| RFC Borrower LLC[1] | 12-12068 | 45-5065558 | N/A | N/A | N/A |
| **Consolidated Subtotal- 5 Debtor Entities** | | | $ (1,054,784,679) | $ 3,069,838 | $ (1,051,714,841) |

| Debtor | Case Number | Tax ID | November 2012 Monthy Disbursements | Expenses Paid On Behalf of / (By) Other Debtor Entities for November 2012 | Allocated November 2012 Monthly Disbursements |
|---|---|---|---|---|---|
| Ditech, LLC | 12-12021 | 23-2887228 | $ - | $ (73) | $ (73) |
| DOA Holding Properties, LLC | 12-12022 | 26-1424257 | - | - | - |
| DOA Properties IX (Lots-Other), LLC | 12-12023 | 26-2783274 | - | - | - |
| EPRE LLC | 12-12024 | 26-2747974 | - | - | - |
| Equity Investments I, LLC | 12-12025 | 02-0632797 | - | - | - |
| ETS of Virginia, Inc. | 12-12026 | 26-4051445 | - | - | - |
| ETS of Washington, Inc. | 12-12027 | 45-2910665 | - | (12,397) | (12,397) |
| Executive Trustee Services, LLC | 12-12028 | 23-2778943 | - | (489,507) | (489,507) |
| GMAC – RFC Holding Company, LLC | 12-12029 | 23-2593763 | - | - | - |
| GMAC Model Home Finance I, LLC | 12-12030 | 26-2748469 | - | - | - |
| GMAC Mortgage USA Corporation | 12-12031 | 20-4796930 | - | - | - |
| GMAC Residential Holding Company, LLC | 12-12033 | 91-1902190 | (2,987) | (4,644) | (7,631) |
| GMACRH Settlement Service, LLC | 12-12034 | 23-3036156 | - | - | - |
| GMACR REO LLC | 12-12036 | 45-5222043 | - | - | - |
| GMACR Mortgage Products, LLC | 12-12037 | 03-0536369 | - | - | - |
| HFN REO SUB II, LLC | 12-12038 | None | - | - | - |
| Home Connects Lending Services, LLC | 12-12039 | 25-1849412 | - | (7,567) | (7,567) |
| Homecomings Financial Real Estate Holdings, LLC | 12-12040 | 26-2736869 | - | - | - |
| Homecomings Financial, LLC | 12-12042 | 51-0369458 | - | (1,527,250) | (1,527,250) |
| Ladue Associates, Inc. | 12-12043 | 23-1893048 | - | - | - |
| Passive Asset Transactions, LLC | 12-12044 | 51-0404130 | (158) | - | (158) |
| PATI A, LLC | 12-12045 | 26-3722729 | - | - | - |
| PATI B, LLC | 12-12046 | 26-3722937 | - | - | - |
| PATI Real Estate Holdings, LLC | 12-12047 | 27-0515201 | - | - | - |
| RAHI A, LLC | 12-12048 | 26-3723321 | - | - | - |
| RAHI B, LLC | 12-12049 | 26-3723553 | - | - | - |
| RAHI Real Estate Holdings, LLC | 12-12050 | 27-0515287 | - | - | - |
| RCSFJV2004, LLC | 12-12051 | 20-3802772 | (787) | (787) | (1,575) |
| Residential Accredit Loans, Inc. | 12-12052 | 51-0368240 | - | - | - |
| Residential Asset Mortgage Products, Inc. | 12-12053 | 41-1955181 | - | - | - |
| Residential Asset Securities Corporation | 12-12054 | 51-0362653 | - | - | - |
| Residential Consumer Services of Alabama, LLC | 12-12055 | 63-1105449 | - | - | - |
| Residential Consumer Services of Ohio, LLC | 12-12056 | 34-1754796 | - | - | - |
| Residential Consumer Services of Texas, LLC | 12-12057 | 75-2510515 | - | - | - |
| Residential Consumer Services, LLC | 12-12058 | 20-4812167 | - | (273,076) | (273,076) |
| Residential Funding Mortgage Exchange, LLC | 12-12059 | 41-1674247 | - | - | - |
| Residential Funding Mortgage Securities I, Inc. | 12-12060 | 75-2006294 | - | - | - |
| Residential Funding Mortgage Securities II, Inc. | 12-12061 | 41-1808858 | - | - | - |
| Residential Funding Real Estate Holdings, LLC | 12-12062 | 26-2736505 | - | - | - |
| Residential Mortgage Real Estate Holdings, LLC | 12-12063 | 26-2737180 | - | - | - |
| RFC – GSAP Servicer Advance, LLC | 12-12064 | 26-1960289 | - | - | - |
| RFC Asset Holdings II, LLC | 12-12065 | 41-1984034 | (1,846) | (752,946) | (754,792) |
| RFC Asset Management, LLC | 12-12066 | 06-1664678 | (758) | (796) | (1,553) |
| RFC Construction Funding, LLC | 12-12069 | 41-1925730 | - | - | - |
| RFC REO LLC | 12-12070 | 45-5222407 | - | - | - |
| RFC SFJV-2002, LLC | 12-12071 | 06-1664670 | (1,083) | (796) | (1,878) |
| **Subtotal - 46 Other Debtor Entities** | | | $ (7,619) | $ (3,069,838) | $ (3,077,457) |

| Total Amounts for All Debtor Entities | | | $ (1,054,792,298) | $ - | $ (1,054,792,298) |
|---|---|---|---|---|---|

| Notes |
|---|
| [1] Disbursements of Residential Capital, LLC; GMAC Mortgage, LLC; Residential Funding Company, LLC; GMACM Borrower, LLC; and RFC Borrower, LLC were consolidated due to the difficulty of separating each individual entity. |

FORM MOR - 1

**CONTINUATION SHEET FOR MOR-1**

Re: Residential Capital, LLC, et al.
SDNY. Bankr. No. 12-12020

**Debtors' Statements with respect to Bank Account Reconciliations and Copies of Bank Statements**

<u>Bank Account Reconciliations</u>

The Debtors affirm that reconciliations for all open and active non-custodial accounts are prepared and maintained by the Debtors. Bank account reconciliations are not attached to this monthly operating report, however, if the U.S. Trustee requests copies, the Debtors will provide all reconciliations as soon as practical. Accounts are reconciled on a monthly basis. The Debtors maintain approximately 100 non-custodial accounts, attaching bank reconciliations would be administratively burdensome.

<u>Bank Statements</u>

The Debtors affirm that bank statements for all open and active non-custodial accounts are maintained by the Debtors.

Copies of bank statements are not attached to this monthly operating report, however, if the U.S. Trustee requests copies, the Debtors will provide them as soon as practical. The Debtors maintain approximately 100 non-custodial accounts, attaching bank statements would be administratively burdensome.

FORM MOR-1 (CON'T)

**In re** Residential Capital, LLC, et al.

**Debtor**

**Case No.** 12-12020

**Reporting Period:** November 1-30, 2012

**Condensed Consolidated Statement of Income (unaudited)** (A)

Debtor-in-possession

*($ in thousands)*

| | 11/01/2012 - 11/30/2012 | 05/14/2012 - 11/30/2012 |
|---|---|---|
| **Revenue** | | |
| Interest income | $ 24,378 | $ 155,548 |
| Interest expense | 17,172 | 117,063 |
| Net financing revenue | 7,206 | 38,485 |
| **Other revenue** | | |
| Servicing fees | 62,802 | 399,447 |
| Servicing asset valuation and hedge activities, net | (39,941) | (328,238) |
| Total servicing income, net | 22,861 | 71,209 |
| Gain on mortgage loans, net | 12,515 | 85,886 |
| (Loss) gain on foreclosed real estate | (116) | 4,310 |
| Other revenue, net | 29,463 | 120,724 |
| Total other revenue | 64,723 | 282,129 |
| **Total net revenue** | 71,929 | 320,614 |
| **Provision for loan losses** | (885) | (2,844) |
| **Noninterest expense** | | |
| Representation and warranty expense, net | - | 30,988 |
| Mortgage fines and penalties | - | (3,278) |
| Compensation and benefits | 26,891 | 256,184 |
| Other noninterest expense, net | 36,199 | 305,067 |
| Total noninterest expense | 63,090 | 588,961 |
| **Income (loss) from continuing operations before reorganization expense and income tax expense** | 9,724 | (265,503) |
| **Reorganization expense** | | |
| Professional fees | 58,472 | 171,463 |
| Compensation and benefits | 1,637 | 12,356 |
| Debt issuance and facility commitment fees | 119 | 61,597 |
| Total reorganization expense | 60,228 | 245,416 |
| **Loss from continuing operations before income tax expense** | (50,504) | (510,919) |
| Income tax expense | 1,717 | 8,510 |
| **Net loss from continuing operations** | (52,221) | (519,429) |
| Loss from discontinued operations, net of tax | - | (127) |
| **Net loss** | $ (52,221) | $ (519,556) |
| | | |
| **(A) Non-debtor entity net income (loss)** | $ 79 | $ (532) |

Non-debtor entity net income (loss) is before the elimination of transactions with debtor entities.

The accompanying financial statements have been prepared in accordance with guidelines applicable in a Chapter 11 reorganization. These financial statements are subject to change as a result of determinations of the bankruptcy court.

FORM MOR-2

In re Residential Capital, LLC, et al.                                                          Case No. 12-12020
Debtor                                                                      Reporting Period: November 1-30, 2012

**Condensed Consolidated Balance Sheet (unaudited)**[A]
Debtor-in-possession
($ in thousands)

| | | November 30, 2012 | | October 31, 2012 |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ | 1,551,752 | $ | 1,563,577 |
| Mortgage loans held-for-sale | | 330,875 | | 4,100,264 |
| Finance receivables and loans, net | | | | |
| Consumer | | 606,136 | | 676,914 |
| Commercial | | 492 | | 466 |
| Allowance for loan losses | | (6,019) | | (7,244) |
| Total finance receivables and loans, net | | 600,609 | | 670,136 |
| Mortgage servicing rights | | - | | 844,429 |
| Accounts receivable, net | | 1,058,986 | | 3,118,121 |
| Other assets | | 271,279 | | 364,106 |
| Assets of operations held-for-sale | | 6,860,457 | | - |
| Total assets | $ | 10,673,958 | $ | 10,660,633 |
| **Liabilities** | | | | |
| **Liabilities not subject to compromise:** | | | | |
| Borrowings | | | | |
| Debtor-in-Possession  superpriority secured credit facility | $ | 1,260,000 | $ | 1,260,000 |
| Debtor-in-Possession  superpriority secured credit facility - Ally Financial Inc. | | 188,004 | | 184,472 |
| Borrowings from Ally Financial Inc. | | 1,133,128 | | 1,133,128 |
| Collateralized borrowings in securitization trusts | | 455,864 | | 515,627 |
| Other borrowings | | 283,617 | | 293,518 |
| Total borrowings | | 3,320,613 | | 3,386,745 |
| Other liabilities | | 498,762 | | 3,071,267 |
| Liabilities of operations held-for-sale | | 2,716,297 | | - |
| Total liabilities not subject to compromise | | 6,535,672 | | 6,458,012 |
| **Liabilities subject to compromise** | | 4,217,244 | | 4,229,708  (B) |
| Total liabilities | | 10,752,916 | | 10,687,720 |
| **Equity** | | | | |
| Member's interest | | 11,755,962 | | 11,755,962 |
| Accumulated deficit | | (11,767,705) | | (11,715,484) |
| Accumulated other comprehensive loss | | (67,215) | | (67,565) |
| Total equity | | (78,958) | | (27,087) |
| Total liabilities and equity | $ | 10,673,958 | $ | 10,660,633 |
| **(A) Non-Debtor Entity Balances** | | | | |
| Total assets | $ | 316,271 | $ | 329,214 |
| Total liabilities | $ | 187,754 | $ | 250,815 |

Non-debtor entity balances are before the elimination of balances and transactions with debtor entities.

| **(B) Liabilities subject to compromise consist of the following:** | | | | |
|---|---|---|---|---|
| Junior secured notes | $ | 2,328,292 | $ | 2,328,292 |
| Senior unsecured notes | | 672,480 | | 672,480 |
| Foreign unsecured notes | | 296,578 | | 296,866 |
| Interest payable | | 149,154 | | 149,168 |
| Liability for representation and warranty obligations | | 640,052 | | 639,812 |
| Reserve for legal proceedings | | 68,051 | | 68,207 |
| Accounts payable | | 12,833 | | 13,078 |
| Other | | 49,804 | | 61,805 |
| **Total liabilities subject to compromise** | $ | 4,217,244 | $ | 4,229,708 |

The accompanying financial statements have been prepared in accordance with guidelines applicable in a Chapter 11 reorganization. These financial statements are subject to change as a result of determinations of the bankruptcy court.

FORM MOR-3

| In re | Residential Capital, LLC, et al. | **Case No.** | 12-12020 |
|---|---|---|---|
| | **Debtor** | **Reporting Period:** | November 1-30, 2012 |

## SUMMARY OF UNPAID POST-PETITION DEBTS

Attach aged listing of accounts payable.

| | Number of Days Past Due | | | | | |
|---|---|---|---|---|---|---|
| | Current | 1-30 | 31-60 | 61-90 | Over 91 | Total |
| Accounts Payable[(1),(2)] | $  1,191,483 | $  892,115 | $  - | $  17,209 | $  61,350 | $  2,162,157 |
| **Total Post-petition Debts[(3),(4)]** | $  1,191,483 | $  892,115 | $  - | $  17,209 | $  61,350 | $  2,162,157 |

[(1)] Aging is based on date due, terms are generally 30-60 day

[(2)] The Debtors do not consider post-petition invoices as past due or delinquent if such invoices are subject to dispute, or further review and/or reconciliation with the vendor.

[(3)] The aging of accounts payable is only done for those invoices that have been vouchered in the Debtors' accounts payable system. The incurred and unpaid amounts on MOR-6 are vouchered when paid and are not included in the aging.

[(4)] Employee wages for the Debtors are paid by Ally. The Debtors reimburse Ally for their share of the employee wages. The Debtors sought and received Bankruptcy Court approval to continue this practice post-petition. The Debtors are current with their reimbursements to Ally.

**Explain how and when the Debtor intends to pay any past due post-petition debts.**

Please refer to the Global Footnotes E.7: Notes to Debtor Questionnaire (MOR-7): Question 13 Notes

## STATUS OF POST-PETITION TAXES

**Debtors' Statement with Respect to Status of Post-Petition Taxes**

Post-petition taxes for the Debtors, which are not subject to dispute or reconciliation, and are authorized to be paid under the relief granted by the Bankruptcy Court are current. There are no material tax disputes or reconciliations. Post-petition tax information is not attached to this monthly operating report, however if the U.S. Trustee requests copies, the Debtors will provide a status update on post-petition taxes as soon as practical.

The Debtors are parties to Tax Sharing Agreements with Ally, which provide for the filing of consolidated returns by Ally for Federal and certain state income taxes. Prior to the filing of bankruptcy, the Debtors would reimburse Ally for the Debtors' portion of the tax liability, if any. As a result of the filing for Chapter 11, the Debtors do not have authority to pay either pre or post-petition tax obligations under these Tax Sharing Agreements.

FORM MOR-4

In re  Residential Capital, LLC, et al.                                   Case No. 12-12020
        **Debtor**                                              Reporting Period: November 1-30, 2012

### ACCOUNTS RECEIVABLE RECONCILIATION

| Accounts Receivable Reconciliation | Amount |
|---|---|
| Total Accounts Receivable Advances, net of reserves | $ 2,091,881,086 |
| Plus:  Accounts Receivable Claims/Fees, net of reserves | 966,312,731 |
| **Total Accounts Receivable at the end of the reporting period[1]** | **$ 3,058,193,817** |

| Accounts Receivable | Total Advances[2] | Service Fees | Late Fees | Gov't Claims[3] | Interest HFS | Total |
|---|---|---|---|---|---|---|
| Primary | $ 558,848,421 | - | - | - | - | $ 558,848,421 |
| Master | 218,905,954 | - | | | - | 218,905,954 |
| FHLMC | 94,249,523 | 4,755,702 | 3,612,384 | - | - | 102,617,609 |
| FNMA | 195,023,300 | 12,339,578 | 7,938,718 | - | - | 215,301,596 |
| GNMA | 81,886,810 | 10,714,314 | 5,484,532 | 930,520,382 | - | 1,028,606,039 |
| Third Party Investors | 611,512,142 | 15,485,995 | 9,683,877 | - | - | 636,682,014 |
| Subserviced | 212,411,064 | 7,575,061 | 248,471 | - | - | 220,234,596 |
| ResCap HFS | 163,658,795 | - | 304,880 | - | 13,041,213 | 177,004,887 |
| Other | (231) | 25,736,434 | 11,964,836 | - | - | 37,701,039 |
| **Total Accounts Receivable** | **$ 2,136,495,777** | **$ 76,607,085** | **$ 39,237,698** | **$ 930,520,382** | **$ 13,041,213** | **$ 3,195,902,155** |
| Less: Reserve for Bad Debt | 44,614,691 | 25,736,434 | 11,964,836 | 55,392,377 | - | 137,708,338 |
| **Net Accounts Receivable** | **$ 2,091,881,086** | **$ 50,870,651** | **$ 27,272,862** | **$ 875,128,005** | **$ 13,041,213** | **$ 3,058,193,817** |

(1) Effective November 30, 2012, in accordance with GAAP, a significant portion of the accounts receivable balance has been reclassified to Assets of operations held for sale.
(2) Primary & Master represent P&I only
(3) Government claims include accrued interest

Note: Due to the nature of the Debtors' businesses, an aging of accounts receivable is not indicative of collectability and therefore an aging of accounts receivables is not maintained.  The majority of the Debtors' accounts receivable are comprised of servicer advances made to investors in mortgage loans serviced by the Debtors.  Such advances are made to maintain the scheduled cash flows current in the event of borrower default or delinquency and the Debtors have a priority claim to the cash flows in the event of foreclosure or liquidation.  The next largest component of the Debtors' accounts receivable balance is related to governmental guarantees for loans in foreclosure.

12-12020-mg    Doc 2517    Filed 12/26/12    Entered 12/26/12 16:00:21    Main Document
Pg 21 of 22

In re Residential Capital, LLC, et al.                                    Case No. 12-12020
Debtor                                                    Reporting Period: November 1-30, 2012

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown on the Cash Receipts and Disbursements Report (MOR-1) list the amount paid to insiders (as defined in Section 101(31) (A)-(F) of the U.S. Bankruptcy Code) and to professionals.  For payments to insiders, identify the type of compensation paid (e.g. Salary, Bonus, Commissions, Insurance, Housing Allowance, Travel, Car Allowance, Etc.). Attach additional sheets if necessary.

| INSIDERS | | | |
|---|---|---|---|
| NAME | TYPE OF PAYMENT | AMOUNT PAID DURING MONTH | TOTAL PAID TO DATE |
| Ally Bank | Servicing/Origination Related | $ 60,389,165 | $ 401,746,132 |
| Ally Bank | Loan Purchases | 24,820,069 | 134,574,701 |
| Ally Bank | DOJ Settlement | 3,532,000 | 38,004,479 |
| Ally Commercial Finance LLC | Servicing Related | 495,405 | 3,180,808 |
| Ally Financial Inc. | Payments for Shared Service | 11,429,939 | 52,083,875 |
| Ally Financial Inc. | Payroll | 22,624,707 | 162,991,504 |
| Ally Financial Inc. | Interest on Affiliated Borrowings | 3,710,293 | 20,557,355 |
| Ally Investment Management, LLC | Derivatives Collateral, net | - | 32,447,595 |
| Debtors' Officers & Directors, paid via Ally | Payroll | 4,634,245 | 9,784,319 |
| Independent Directors (Board of Directors) | Payroll, Travel | 77,285 | 561,140 |
| TOTAL PAYMENTS TO INSIDERS | | $ 131,713,112 | $ 855,931,909 |

Note: Certain of the affiliate transactions with Ally Bank are pass-through cash flows that the Debtor receives into its account and remits to Ally Bank the same day.  Due to the requirements of the loan servicing system, cash is received into Debtor accounts on behalf of Ally Bank; these funds are then remitted from the Debtor accounts to Ally Bank on a daily basis in accordance with Regulation W.

| PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| NAME | DATE OF COURT ORDER AUTHORIZING PAYMENT[3] | AMOUNT APPROVED DURING MONTH[4] | AMOUNT PAID DURING MONTH | TOTAL PAID TO DATE | TOTAL INCURRED & UNPAID* |
| AlixPartners LLP | 7/17/2012 | $ 1,106,191 | $ 1,106,191 | $ 1,798,591 | $ 1,660,658 |
| Analytic Focus LLC | | - | - | - | 602,709 |
| Arthur J. Gonzalez, Examiner | 7/17/2012 | 68,910 | 68,910 | 68,910 | 41,753 |
| Bradley Arant Boult Cummings LLP | 7/17/2012 | 2,252,056 | 2,252,056 | 2,252,056 | 4,171,341 |
| Carpenter Lipps & Leland LLP | 7/17/2012 | 359,226 | 359,226 | 756,181 | 1,863,449 |
| Centerview Partners LLC | 7/17/2012 | 240,000 | 240,000 | 720,000 | 780,000 |
| Chadbourne & Parke LLP | 7/17/2012 | 2,763,683 | 2,763,683 | 2,763,683 | 4,293,888 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | 7/17/2012 | 280,641 | 280,641 | 280,641 | 254,762 |
| Deloitte & Touche LLP[1] | 7/17/2012 | 315,774 | 315,774 | 552,467 | 848,121 |
| Dorsey & Whitney LLP | 7/17/2012 | 137,836 | 137,836 | 137,836 | 395,509 |
| Fortace, LLC | 7/17/2012 | 140,335 | 140,335 | 529,760 | 341,578 |
| FTI Consulting, Inc. | 7/17/2012 | 5,035,758 | 5,035,758 | 5,035,758 | 1,500,000 |
| Hudson Cook, LLP | 7/17/2012 | 469,327 | 469,327 | 469,327 | 115,280 |
| J.F. "Chip" Morrow | | - | - | - | 62,316 |
| KPMG LLP | 7/17/2012 | - | 571,561 | 571,561 | 131,278 |
| Kramer Levin Naftalis & Frankel LLP | 7/17/2012 | 4,607,490 | 4,607,490 | 8,845,951 | 5,999,286 |
| Kurtzman Carson Consultants LLC[2] | 5/16/2012 | 136,594 | 136,594 | 7,032,061 | 6,660,006 |
| Kurtzman Carson Consultants LLC | 7/17/2012 | - | 75,259 | 75,259 | 18,815 |
| Mercer (US) Inc. | 7/17/2012 | 41,014 | - | - | 49,738 |
| Mesirow Financial Consulting, LLC | 7/17/2012 | 2,435,868 | 2,435,868 | 2,435,868 | 3,116,041 |
| Moelis & Company LLC | 7/17/2012 | - | - | 470,258 | 2,483,453 |
| Morrison & Foerster LLP | 7/17/2012 | 6,486,437 | 6,486,437 | 10,789,837 | 7,028,533 |
| Orrick, Herrington & Sutcliffe LLP | 7/17/2012 | 371,821 | 371,821 | 371,821 | 400,340 |
| Pepper Hamilton LLP | 7/17/2012 | 888,743 | 888,743 | 888,743 | 206,158 |
| Rubenstein Associates, Inc. | 7/17/2012 | - | - | 25,444 | 16,680 |
| Towers Watson | 7/17/2012 | - | 11,856 | 27,484 | 6,871 |
| Severson & Werson, P.C. | 7/17/2012 | - | - | 620,199 | 998,365 |
| TOTAL PAYMENTS TO PROFESSIONALS | | $ 28,137,704 | $ 28,755,366 | $ 47,519,696 | $ 44,046,926 |

* INCLUDE ALL FEES INCURRED, BOTH APPROVED AND UNAPPROVED

[1] A portion of the monthly invoices will be reimbursed by Nationstar Mortgage for services performed at their request.

[2] The Debtors are authorized to compensate the Claims and Noticing Agent in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by the Claims and Noticing Agent.  The payments only include invoiced fees, no accruals are listed.

[3] Monthly fee statements do not require specific court approval, but are paid in accordance with the Interim Compensation Order approved by the Bankruptcy Court on July 17, 2012.

[4] With the exception of Kurtzman Carson Consultants LLC's fees and expenses related to their role as Claims and Noticing Agent, the amounts approved for the monthly fee statements are 80% of fees and 100% of expenses.

### POST-PETITION STATUS OF SECURED NOTES, LEASES PAYABLE AND ADEQUATE PROTECTION PAYMENTS

| NAME OF CREDITOR | SCHEDULED MONTHLY PAYMENT DUE | AMOUNT PAID DURING MONTH | TOTAL UNPAID POST PETITION |
|---|---|---|---|
| Ally Financial Inc. | $ - | $ 3,710,293 | $ - |
| Barclays Bank, PLC | - | 17,117,153 | - |
| Citibank, N.A. | - | 1,140,507 | - |
| Digital Lewisville LLC | 182,746 | 182,746 | - |
| FannieMae | - | 76,641 | - |
| Houlihan Lokey | 206,447 | 206,447 | - |
| Milbank, Tweed, Hadley & McCloy LLP | 218,482 | 218,482 | - |
| Skadden, Arps, Slate, Meagher & Flohm | 204,795 | 204,795 | 67,784 |
| Shearman & Sterling LLP | 363,118 | 363,118 | - |
| White & Case LLP | - | - | 586,116 |
| US Bank | - | - | 322,080 |
| TOTAL AMOUNTS | $ 1,175,587 | $ 23,220,182 | $ 975,980 |

Note: The Debtors have failed to satisfy certain milestone requirements in the plan support agreements (PSAs) with the junior secured note holders and Ally Financial Inc., which relieves these parties of their obligations to perform under their PSAs.  Throughout September 2012, the Debtors received notification that the junior secured note holders and Ally Financial Inc., respectively, were terminating their PSA.  As a result, the Debtors will continue developing a plan of reorganization for submission consistent with the Exclusive Plan Period, as may be amended, subject to the approval of the Bankruptcy Court.

FORM MOR-6

In re Residential Capital, LLC, et al.                                    Case No. 12-12020
Debtor                                                          Reporting Period: November 1-30, 2012

| | DEBTOR QUESTIONNAIRE | | |
|---|---|---|---|
| | **Must be completed each month. If the answer to any of the questions is "Yes", provide a detailed explanation of each item. Attach additional sheets if necessary.** | **Yes** | **No** |
| 1 | Have any assets been sold or transferred outside the normal course of business this reporting period? | | X |
| 2 | Have any funds been disbursed from any account other than a debtor in possession account this reporting period? | X | |
| 3 | Is the Debtor delinquent in the timely filing of any post-petition tax returns? | | X |
| 4 | Are workers compensation, general liability or other necessary insurance coverages expired or cancelled, or has the debtor received notice of expiration or cancellation of such policies? | | X |
| 5 | Is the Debtor delinquent in paying any insurance premium payment? | | X |
| 6 | Have any payments been made on prepetition liabilities this reporting period? | X | |
| 7 | Are any post-petition receivables (accounts, notes or loans) due from related parties? | X | |
| 8 | Are any post-petition payroll taxes past due? | | X |
| 9 | Are any post-petition State or Federal income taxes past due? | | X |
| 10 | Are any post-petition real estate taxes past due? | | X |
| 11 | Are any other post-petition taxes past due? | | X |
| 12 | Have any prepetition taxes been paid during this reporting period? | | X |
| 13 | Are any amounts owed to post-petition creditors delinquent? | X | |
| 14 | Are any wage payments past due? | | X |
| 15 | Have any post-petition loans been received by the Debtor from any party? | X | |
| 16 | Is the Debtor delinquent in paying any U.S. Trustee fees? | | X |
| 17 | Is the Debtor delinquent with any court ordered payments to attorneys or other professionals? | | X |
| 18 | Have the owners or shareholders received any compensation outside of the normal course of business? | | X |

*See Global Notes Section E. Notes to Debtor Questionnaire (MOR-7) for form explanations