**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DECLARATION OF ANNE JANICZEK IN SUPPORT OF DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 363, 1107(a) AND 1108 TO THE FINAL WAGES ORDER AUTHORIZING THE DEBTORS TO MAKE PAYMENTS TO THEIR EMPLOYEES UNDER THE RESIDENTIAL CAPITAL, LLC ANNUAL INCENTIVE PLAN**

I, Anne Janiczek, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am the Executive Vice President, Chief Human Resources Officer for the Mortgage Division at Debtor[1] Residential Capital LLC and its affiliates ("**ResCap**"). I submit this Declaration in support of the Debtors' Motion under sections 363, 1107(a) and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") To Supplement The Final Wages Order And Authorize The Debtors To Make Payments To Their Employees Under The Residential Capital, LLC Annual Incentive Plan (the "**Motion**").

2. I have been at ResCap for 13 years, the last 4 in my current position. In my current position, I am responsible for leading and managing a team that supports the business in all aspects of human resources, including: management and executive development; investing and preserving critical talent acquisition; learning and development; employee relations;

---

[1] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Motion.

ny-1070904

performance management, planning and appraisal; oversight of incentive, long-term and executive compensation plans; diversity; organizational design and effectiveness; and succession planning.  Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' operations, financial condition and history.  In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare, collect, and/or verify any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

      **A.**      **Debtors' Compensation Structure**

      3.      The aggregate compensation earned by an employee of the Debtors during a calendar year is referred to as total direction compensation ("**TDC**"), which is comprised of base salary plus discretionary variable pay.  One form of variable pay offered to a majority of the Debtors' employees is a year-end award under AIP, which has been in place at ResCap for twenty years.

      4.      As of October 31, 2012, the Debtors had 3,926 employees.  Not every employee is eligible to participate in AIP.  Approximately 3,000 employees (the "**AIP Participants**") participate in this annual plan.  The AIP Participants include all of the individuals (17) who participated in the key employee incentive plan as well as substantially all of the participants in the key employee retention plan (168 of 182).

5.  The business purpose of the AIP is to establish a set objectives for an employee to work towards throughout the year, which will contribute to the company's overall success; ensure that the employee meets/exceeds those goals by periodically evaluating the individuals on their efforts in accomplishing those goals; and thereafter, reward their efforts by issuing an award under the AIP.

6.  Each year, the Debtors accrue for the estimated annual cost of payments under discretionary variable pay plans. The accrual is predicated on the award payments made in the prior year.

7.  In financial services companies, annual incentive awards are an important part of an employee's TDC. For the senior business leaders (i.e., the KEIP Participants), the AIP award is approximately 58% of their TDC; for the managers and other key personnel (i.e., those in the KERP), the AIP award is approximately 33% of their TDC; and for the remainder of eligible employees, the AIP award is approximately 8% of their TDC.[2]

### B.  Individual AIP Award Determinations

8.  Once the Board authorizes the aggregate AIP funding pool, it has been the Debtors' historical practice for the Chief Executive Officer and President to provide the business unit leaders with their respective budgets for AIP distributions.

9.  Ordinarily, in the first quarter of each calendar year, business leaders meet with their employees and set individual objectives for the employee to work towards throughout the year, which are consistent with the objectives of the business unit and mortgage business organization. An employee's goals are not static and vary from year to year based on the company's broader strategic objectives. For example, in 2012, the goals set for the employees

---

[2] The Debtors' top 3 executives, who are a part of AFI's Top 25 most-highly compensated employees, are <u>not</u> eligible for AIP.

were focused on stabilizing the business, preserving the company's assets, complying with the different regulatory programs and ensuring that asset value was maximized for the company's stakeholders.

10. Over the course of the year, the employee will meet with their manager to evaluate the employee's interim performance. At that time, objectives may be refined in order to, for example, address the company's changing operational and personnel needs. At the end of the year, the employee then completes a self-evaluation of whether they have met their stated goals and objectives, and their supervisor uses that form together with the supervisor's own evaluation to grade the employee's overall performance.

11. The amount of the AIP award is entirely discretionary. The employee's supervisor will not only consider the individual's performance; they will also consider the size of the allocated pool, how the individual employee compared to his peers and the contributions the individual made to the organization. Accordingly, the AIP award is not guaranteed; rather, it is a reflection of one's value to the company as a whole.

  **C. Timing of AIP Payments**

12. Ordinarily, AIP payments are made in mid-February. To the extent an employee is not transferred to one of the asset purchasers, the estate will remit payments to individuals at the estate in mid-February.

13. However, if an individual is transferred to an asset purchaser on or about the anticipated closing date of January 31, 2013, then the asset purchaser, consistent with its contractual obligation under its respective asset purchase agreement, will assume the accrued AIP liability currently on the Debtors' books and records. This amount will then be treated as an adjustment against the overall purchase price.

### D. Distinction between AIP and Key Employee Plans

14. Earlier this year, the Debtors obtained the Court's approval of a key employee incentive plan as well as a key employee retention plan. The latter plan was intended to ensure that the Debtors retained personnel critical to closing the asset sales; it was not incentive-based. Accordingly, the KERP is not duplicative of the AIP award because the KERP compensated an individual for remaining with the company through a critical time in its reorganization while the AIP rewards that same individual for their contribution to the overall success of the mortgage business.

15. The key employee incentive plan did contain specific performance metrics, which were intended to motivate the individuals to improve the purchase prices, meet very specific financial and operational goals and close the asset sales. By contrast, the AIP goals for the individuals in the KEIP are very different from the specific milestones provided for in the KEIP. As noted above, the AIP objectives are established in the first quarter of the year by an employee's manager and are focused on addressing the company's daily organizational needs, improving the Debtors' overall business performance and maintaining the processes and programs necessary to allow the business to run properly. For example, the leaders of the servicing and origination units are supposed to strive for specific income targets that represent an improvement on the historical performance levels. One way to do that is to work towards enhancing the volume of loans serviced and expanding the channels for new lending opportunities. Another way of improving the company's performance is to limit employee attrition and ensure the continuity of institutional knowledge and customer service. In addition, like any other business, the senior executives are charged with meeting budget reduction targets and maintaining operational efficiencies.

16.     Therefore, each senior executive's AIP objectives are customized to be consistent with their role within the organization and not easily measured or quantified in the manner of the KEIP.  As a result, the KEIP (like the KERP) is not duplicative of the AIP award because the AIP award compensates an individual for fulfilling their unique performance objectives throughout the course of the year, whereas the KEIP rewarded that same individual for achieving very specific and measured goals for a limited period of time in connection with a very discrete task (i.e., completing asset sales).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 26, 2012, at Fort Washington, Pennsylvania.

*Anne M Janiczek*
Anne Janiczek
EVP, Chief Human Resources Officer
Residential Capital, LLC