**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---

**DECLARATION OF JOHN E. MACK IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 363, 1107(a) AND 1108 TO SUPPLEMENT THE FINAL WAGES ORDER AND AUTHORIZE THE DEBTORS TO MAKE PAYMENTS TO THEIR EMPLOYEES UNDER THE RESIDENTIAL CAPITAL, LLC ANNUAL INCENTIVE PLAN**

I, John E. Mack, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a member of the Board of Directors (the "**Board**") of Residential Capital, LLC ("**ResCap**"), the parent debtor in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") commenced on May 14, 2012 (the "**Petition Date**"). I have been a director and served on the board of directors of ResCap and its committees in various capacities since November 2011. I received an AB in Economics from Davidson College in 1972 and a Masters in Business Administration in May 1974 from The Darden School of Business at the University of Virginia. Beginning in 1974 and continuing through September 2005, I worked in the financial services industry and held senior executive positions at major financial institutions, including Shinsei Bank and Bank of America, in which I managed billions of dollars of assets as well as overseeing teams of personnel charged with financial reporting, planning and budgeting responsibility. Since then, I have served as a director as well as in a variety of board roles for both financial and non-financial service companies.

1

2. Based on my service on the ResCap Board and in connection with my responsibilities as chairman of the Board's compensation committee (the "**Compensation Committee**"), which I became a member of in March 2012 when it was formed, I am familiar with the businesses of ResCap and the other above-captioned debtors (collectively, the "**Debtors**") as well as their overall compensation structure, including the Residential Capital LLC Annual Incentive Plan.

3. I submit this declaration to support the relief requested in *Debtors' Motion For A Supplemental Order Under Bankruptcy Code Sections 363, 1107(a) and 1108 To The Final Wages Order Authorizing The Debtors To Make Payments To Their Employees Under The Residential Capital, LLC Annual Incentive Plan* (the "**Motion**"). Unless otherwise indicated, all facts set forth in this declaration are based upon (i) my personal knowledge of the Debtors' current operations and financial performance, (ii) information learned from my review of relevant documents and (iii) information that I received from the Debtors' management or advisors. I am authorized to submit this declaration on behalf of the Debtors, and if I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. Consistent with its historical practices, in the fourth quarter of the calendar year, the Compensation Committee of the Debtors' Board of Directors assessed the company's overall performance throughout the year and evaluated the recommendation from the Debtors' Chief Executive Officer as to the size of the funding pool for the AIP.[1] This year, the CEO's recommendation to the Compensation Committee was to fund the pool at levels either flat to or less than the 2011 awards. In sum, (i) non-KERP employees (approximately 2,800) and KERP employees will be eligible for the same payments as 2011 and (ii) employees participating in the KEIP will be eligible for an award that is seventy (70%) percent of the amount they received in

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

2

2011. The Compensation Committee approved the CEO's recommendation, and as a result, the aggregate AIP funding pool for 2012 will be approximately $33.4 million.

5. As part of its evaluation of the proper size of the AIP pool, the Compensation Committee considered (i) the Debtors' overall performance in 2012; (ii) how the 2012 funding pool compared to funding levels in 2011 and 2010; (iii) how the Debtors' proposed funding levels compared to the market; and (iv) how the estimated AIP payments, when added to payments certain employees are eligible to receive under "key employee" programs compares to the relevant market levels.

### i. *Debtors' Overall Performance*

6. ResCap's performance leading up to and during the Chapter 11 proceeding has been exemplary. The Debtors' actions throughout 2012 have been focused on ensuring that the value of their assets is preserved while operating in bankruptcy. The management team has been able to preserve their critical talent, avoid any degradation in value, efficiently manage their operating budget and maintain and grow the business throughout the year, while also complying with extraordinary government decrees and preserving their relationship with key governmental entities. The management team, together with the first-class employees, have accomplished what others in Chapter 11 have been unable to do – preserve one of the largest going-concern servicing and origination businesses in the United States while simultaneously (and successfully) marketing the platforms to numerous interested parties, and facilitating a productive section 363 auction and sale that is anticipated to yield approximately $4.5 billion in sale proceeds to the estate.

7. **Servicing:** this group successfully implemented all 318 U.S. Department of Justice Settlement and Consent Order servicing standards, and prevented delinquency levels

from significantly spiking while operating in bankruptcy, which translated into lower servicing advance requirements (i.e., net cash required year-to-date was $172.5mm less than the original DIP budget).

8. **Capital Markets:** throughout 2012, this group has had significant accomplishments, including:

    (a)    Preserving $255mm of liquidity through negotiations with Ginnie Mae that eliminated the Debtors' buyback obligations,

    (b)    generating $58mm of incremental gains from originations pipeline and hedge management,

    (c)    enhancing value of legacy loan portfolio through effective monitoring and call campaigns, and

    (d)    unwinding $55bn of pipeline and mortgage servicing rights hedges before the filing enabling the full return of collateral held by counterparties with no corresponding negative impacts on the business.

9. **Originations**: Like the servicing team, the performance of the Originations team has been equally impressive. To date, this group has generated $15.2bn of origination production versus a plan level of $8.7bn, while at the same time lowering the per loan cost by $334. Moreover, in October, this group closed 8,061 loans – a level not seen in the past two years.

10. **Risks & Controls:** while operating in bankruptcy, Debtors have met all necessary compliance measures, including those relating to the federal Consent Order. For example, (i) the Debtors have completed testing of 215 of 306 Sarbanes-Oxley controls with no significant deficiencies identified within the ResCap control environment, (ii) as of October 24, 2012, Consent Order deliverables were 96% complete and any outstanding deliverables are <u>not</u> past due, and (iii) as of November 1, 2012, mandatory compliance training is 99.47% complete.

4

11.     **Global Functions:**  while the benefits to the company and estate provided by this business unit are not easily quantified in dollars and cents, the work of Global Functions has been equally outstanding.  This group maintained a stable workforce and efficiently managed costs.  For example, (i) after adjusting for bankruptcy costs, costs were $13mm less than plan, (ii) all employee engagement and retention objectives were met, (iii) since the Petition Date, the Debtors have been able to attract and hire approximately 600 employees (as of November 5, 2012), and (iv) year-to-date employee turnover has been consistent with 2011 attrition rates.

        **ii.**     *Quantitative Comparisons*

12.     The Debtors' AIP accrual is the lowest it has been in three years and is in line with market practices in the financial services industry.  For example, the AIP pool amount for 2012 is 6.4% lower than the pool level for 2011, and 30.4% lower than the pool level in 2010.  In addition, the Compensation Committee conferred with Mercer (US), Inc., the Debtors' compensation consultant, and Mercer advised the Committee that bonus accrual among organizations with mortgage servicing businesses range from being approximately 10% below to 10% above the 2011 funding levels.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on December 26, 2012, at Breckenridge, Colorado.

_____
John E. Mack