MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Todd M. Goren
Jennifer L. Marines
Melissa M. Crespo

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, et al.,         )    Chapter 11
                                          )
                              Debtors.    )    Jointly Administered
                                          )
-------------------------------------------------------------- )

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), (f), AND (m) AND FED R. BANKR. P. 2002, 6004, AND 9007 FOR ORDERS: (A)(I) AUTHORIZING AND APPROVING SALE PROCEDURES; (II) SCHEDULING BID DEADLINE AND SALE HEARING; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF AND (B)(I) AUTHORIZING THE SALE OF CERTAIN FHA LOANS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT; AND <u>(III) GRANTING RELATED RELIEF</u>**

# TABLE OF CONTENTS

**Page**

JURISDICTION AND VENUE ................................................................................. 2

PRELIMINARY STATEMENT .............................................................................. 2

BACKGROUND ..................................................................................................... 4

    A.    FHA Loans ........................................................................................... 4

    B.    The Mortgage Loan Purchase and Interim Servicing Agreement ........... 6

DESCRIPTION OF PROPOSED SALE PROCEDURES ........................................ 6

    A.    The Sale Procedures ............................................................................ 8

    B.    Extraordinary Provisions of the Sale ................................................... 10

APPLICABLE AUTHORITY .................................................................................. 11

    A.    The Sale Is an Exercise of the Debtors' Sound Business Judgment and Should Be Approved ............................................................................ 11

    B.    The Sale Should Be Approved Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Because the Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code ..................... 13

    C.    No Consumer Privacy Ombudsman Is Required .................................... 15

    D.    Relief From the Fourteen-Day Waiting Periods Under Bankruptcy Rule 6004(h) Is Appropriate ....................................................................... 16

NO PREVIOUS REQUEST ..................................................................................... 17

LOCAL RULE 9013-1(B) ........................................................................................ 17

CONCLUSION ....................................................................................................... 18

ny-1068567

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.),*
   56 B.R. 186 (Bankr. N.D. Ga. 1986), *aff'd sub nom.*, *Griffin v. Bonapfel (In re All
   Am. of Ashburn, Inc.)*, 805 F.2d 1515 (11th Cir. 1986) .............................................. 14

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville
   Corp.),*
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ......................................................................... 12

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re The Lionel Corp.),*
   722 F.2d 1063 (2d Cir. 1983) ..................................................................................... 12

*In re Borders Grp., Inc.,*
   453 B.R. 477 (Bankr. S.D.N.Y. 2011) ....................................................................... 14

*In re Boston Generating, LLC,*
   440 B.R. 302 (Bankr. S.D.N.Y. 2010) ....................................................................... 12

*In re Chrysler LLC,*
   405 B.R. 84 (Bankr. S.D.N.Y.), *aff'd*, 576 F.3d 108 (2d Cir. 2009) ........................... 14

*In re Grubb and Ellis Co.,*
   No. 12-10685 (MG), 2012 Bankr. LEXIS 1279 (Bankr. S.D.N.Y. Mar. 27, 2012) ............... 12

*In re MF Global Inc.,*
   467 B.R. 726 (Bankr. S.D.N.Y. 2012) ....................................................................... 12

*In re Trans World Airlines, Inc.,*
   322 F.3d 283 (3d Cir. 2003) ....................................................................................... 14

*Rubinstein v. Alaska Pac. Consortium (In re New England Fish Co.),*
   19 B.R. 323 (Bankr. W.D. Wash. 1982) ..................................................................... 14

*Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),*
   423 F.3d 166 (2d Cir. 2005) ....................................................................................... 13

Statutes

11 U.S.C. §§:
   105(a) ............................................................................................................................ 2
   363(b) ................................................................................................................... 1, 2, 11
   363(b)(1) ................................................................................................................ 11, 12
   363(f) ................................................................................................................. 2, 13, 14
   363 (m) .......................................................................................................................... 2

28 U.S.C. §§:

    157 .................................................................................................................................2
    157(b) ............................................................................................................................2
    1334 ..............................................................................................................................2
    1408 ..............................................................................................................................2
    1409 ..............................................................................................................................2

OTHER AUTHORITIES

10 COLLIER ON BANKRUPTCY ¶ 6004.11 (Alan N. Resnick & Henry J. Sommers eds.,
    16th ed.) .......................................................................................................................17

Fed. R. Bankr. P.:

    2002 .........................................................................................................................1, 2
    6004 .........................................................................................................................1, 2
    6004(h) ...........................................................................................................11, 16, 17
    6006 .........................................................................................................................1, 2
    9007 .........................................................................................................................1, 2
    9008 .........................................................................................................................1, 2

In re Matter of Adoption of Amended Guidelines for the Conduct of Assets Sales (General
    Order Amending M-331 (M-383))
    (Bankr. S.D.N.Y. Nov. 18, 2009) (the "Sale Guidelines") ........................................1

Local Bankruptcy Rule 9013-1(b) ..............................................................................................17

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors")[1] hereby move this Court (the "Motion")[2] for approval of a sale transaction pursuant to

sections 105(a) and 363 of Title 11, United States Code (the "Bankruptcy Code") and Rules

2002, 6004, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and entry of two orders to be considered at two hearings:[3]

(A) The first order, substantially in the form annexed hereto as Exhibit 1 (the "Sale

Procedures Order"), pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 2002, 6004,

and 9007, which requests approval of the following sale procedures:

(i)  authorizing and approving procedures (the "Sale Procedures"), annexed to the

Sale Procedures Order as Exhibit 1, with respect to a proposed sale pursuant

to Bankruptcy Code section 363(b) (the "Sale") of certain loans in the

Debtors' portfolio that are insured by the Federal Housing Administration (the

"FHA") (collectively, the "FHA Loans");

(ii)  scheduling a deadline by which interested bidders may submit bids for the

FHA Loans (the "Bid Deadline") and a hearing to consider approval of the

Sale (the "Sale Hearing") and setting objection deadlines with respect to the

Sale;

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC in Support of the Chapter 11 Petitions and First Day Pleadings* [Docket No. 6] (the "Whitlinger Affidavit").

[2] Creditors and parties-in-interest with questions or concerns regarding the Debtors' chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

[3] *See In re Matter of Adoption of Amended Guidelines for the Conduct of Assets Sales (General Order Amending M-331 (M-383)) (Bankr. S.D.N.Y. Nov. 18, 2009)* ("General Order M-383").

(iii)  approving the form of notice of the Bid Deadline and the Sale Hearing (the

"Sale Notice"), annexed to the Sale Procedures Order as Exhibit 2; and

(iv) granting related relief.

(B) The second order, substantially in the form annexed hereto as Exhibit 2, subject to the

terms of the Sale Procedures Order (the "Sale Order"), pursuant to sections 105(a), 363(b), (f),

and (m) of the Bankruptcy Code and Bankruptcy Rule 6004, authorizing the Sale pursuant to a

mortgage loan purchase and interim servicing agreement (the "MLPISA") between GMAC

Mortgage, LLC (the "Seller") and the Purchaser (as defined in the MLPISA), free and clear of

liens, claims, encumbrances, and other interests.

In support of this Motion, the Debtors rely on (i) the Whitlinger Affidavit, (ii) the

*Declaration of Marc D. Puntus in Support of the Debtors' FHA Loan Sale*, filed

contemporaneously herewith; and (iii) the *Amended Declaration of Peter Giamporcaro in*

*Support of the Sale of the Nationstar Purchased Assets Without a Privacy Ombudsman* [Docket

No. 189] (the "Giamporcaro Declaration").  In further support of this Motion, the Debtors

respectfully represent as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the

relief requested herein are Bankruptcy Code sections 105 and 363, as supplemented by

Bankruptcy Rules 2002, 6004, and 9007, and General Order M-383.

## PRELIMINARY STATEMENT

2.       Since the Petition Date, the Debtors have expended tremendous effort to preserve

and maximize the value of the Debtors' assets for the benefit of their estates.  In furtherance of

2

this goal, the Debtors entered into sale agreements for their servicing and origination platform

and a number of their whole loan assets for an aggregate amount of approximately $4.5 billion.

These sales have been approved by the Court, and the Debtors and the purchasers are working

diligently towards an expeditious closing of the transactions.

3.      Following the closing of the sales, the Debtors will still have material assets

remaining that will require monetization, and significant operations will be required to do so.

Specifically, the primary assets remaining in the Debtors' estates are approximately $1 billion of

loans insured by the FHA or the U.S. Department of Veterans Affairs (the "VA").  Holding and

liquidating these loans requires the Debtors to maintain certain licenses and regulatory approvals.

 In light of the substantial expertise and operational complexity required to monetize these assets,

the Debtors believe it is in the best interests of their estates to sell a portion of these loans in the

near term (subject to receiving an acceptable price).  Thus, the Debtors now seek to sell a

material and valuable portion of their remaining assets consisting of a subset of mortgage loans

that are insured by the FHA.  While, in the ordinary course of the Debtors' business, the Debtors

have routinely sold pools of loans, they are seeking Court authority for this proposed marketing

and sale process out of an abundance of caution because the unpaid principal balance of the pool

of loans the Debtors are seeking to sell is meaningful—approximately $130 million.  The FHA

Loans that are proposed to be sold pursuant to this Motion were selected because the Debtors

believe that the loan pool will be attractive to a number of prospective bidders, which will result

in the highest average market price for the loans sold.

4.      The Debtors believe that the proposed Sale Procedures are the best way to

maximize the value of these assets for the benefit of the Debtors' estates.

3

## BACKGROUND

### A.    FHA Loans

5.      The Debtors have historically originated or purchased loans insured by the FHA

for purposes of securitizing and selling them to securitized trusts sponsored by Ginnie Mae.

FHA insurance protects lenders against losses resulting from homeowner defaults on mortgage

loans by covering 100% of a lender's principal loss.  The FHA pays mortgage lenders the

difference between the price obtained for a repossessed home and the outstanding loan balance

with insurance proceeds that are paid after the foreclosure process is completed.

6.      The Debtors currently hold approximately $1 billion by UPB of loans insured by

the FHA or guaranteed by the VA and are seeking to sell $130 million by UPB of the

FHA-insured loans.  These FHA Loans were sold into Ginnie Mae securitizations, and later

became non-performing loans, which the Debtors were required to repurchase under the

applicable Ginnie Mae guidelines.  With respect to many of the loans the Debtors repurchase,

they are able to perform modifications on such loans that would enable the loans to become

performing and then resell the loans into Ginnie Mae securitization pools.  Loans that the

Debtors are unable to modify are typically held on the Debtors' books until the foreclosure

process is completed and an insurance claim is submitted to the FHA, or until the loan becomes

current and the Debtors are able to resell the loan into Ginnie Mae securitization pools.

7.      In the ordinary course of business, the Debtors generally sell pools of loans as a

standard practice to provide balance sheet relief, reduce servicing costs, or monetize assets that

could otherwise require significant time to liquidate in the normal course.  The Debtors now seek

to sell the FHA Loans in accordance with their prepetition practice.  The Debtors have identified

those loans that will be attractive to a number of prospective bidders, which are expected to

result in the highest average market price for the loans sold.  Specifically, these loans are those

4

for which the collateral documentation is readily available and has been reviewed to confirm that such loans adhere to acceptable industry standards. In addition, the Successful Bidder (as defined in the Sale Procedures) can be assured that the FHA Loans will qualify for the FHA insurance payment in the event the collateral securing the loan does not fully cover the loan.

8.    Outside of a section 363 sale, the FHA Loans would typically monetize over a period of approximately 30-36 months on average. Though 30-36 months is the average timeline to monetization, due to extended foreclosure timelines in several states and borrower bankruptcy proceedings, certain loans insured by the FHA could take significantly longer to monetize. By allowing the loans insured by the FHA to monetize in the ordinary course, the Debtors believe they would likely realize close to the carry value on the FHA Loans over time.[4] Nonetheless, the Debtors believe it may be in the best interest of their estates and creditors to expedite the monetization of those assets. Importantly, however, if the Debtors are unable to achieve an acceptable target value (as determined in consultation with the Interested Parties (as defined below)) for these assets under the Sale Procedures, the Debtors will retain the FHA Loans and allow them to monetize in the ordinary course or seek to sell them at a later time.

9.    The Debtors have consulted with the Official Committee of Unsecured Creditors (the "Committee"), the advisors to the Ad Hoc Group of Junior Secured Noteholders (the "JSBs"), and the advisors to Ally Financial Inc. and Ally Bank (collectively, "AFI," and together with the Committee and the JSBs, the "Interested Parties") regarding the Sale, and have received the support of the Interested Parties to pursue a sale of the FHA Loans.

10.    Subject to the foregoing, the Debtors, in their business judgment, have determined that the sale of the FHA Loans and related Sale Procedures will maximize value and are in the best interest of the Debtors' estates.

---

[4] Carry value per the Debtors' books and records.

**B.      The Mortgage Loan Purchase and Interim Servicing Agreement**

11.      Subject to the Court's approval, GMAC Mortgage LLC, a Debtor, will enter into

the MLPISA with the Purchaser.  The Debtors are finalizing a proposed form of the MLPISA,

which will be filed with the Court before the hearing on the Sale Procedures.  The Debtors and

the Purchaser, subject to the Sale Procedures, will agree upon a revised form of MLPISA that

will be filed not later than 14 days before the Sale Hearing.

## DESCRIPTION OF PROPOSED SALE PROCEDURES

12.      While the Debtors do not intend to utilize a typical bankruptcy auction process,

the Sale Procedures will allow the Debtors to market the FHA Loans to a broad pool of potential

purchasers and seek the highest and best bid for the FHA Loans.  Accordingly, the Debtors seek

this Court's approval of the following Sale Procedures, which are also attached as Exhibit 1 to

the proposed Sale Procedures Order.[5]

13.      The Debtors have identified approximately 15-20 parties who will receive an

offering memorandum for the FHA Loans.  These parties include those who have previously

purchased loans from the Debtors in the ordinary course of business, those who expressed an

interest in purchasing the whole loan assets sold to Berkshire Hathaway Inc., and those parties

who are known to purchase similar assets in the whole loan market.

14.      The Debtors' proposed Sale Procedures require two stages of diligence.  First, the

Debtors will allow potential bidders to review loan tapes for the FHA Loans in order to enable

potential bidders to formulate a bid.  This stage is intended to require potential bidders to expend

minimal time to encourage bidder participation.  Second, once the Successful Bidder is selected

(which selection will be made in consultation with the Interested Parties), the Debtors will allow

---

[5] To the extent the description of the Sale Procedures set forth herein differs from those set forth in Exhibit 1 to the
Sale Procedures Order, the terms of Exhibit 1 to the Sale Procedures Order shall control.

ny-1068567

that bidder to engage in more extensive diligence on each individual loan.  The second stage of diligence will allow the Successful Bidder to review servicing, credit, and mortgage files to further assess the value of each loan, the validity of FHA insurance, and compliance with federal and local guidelines.

15.    Based on its diligence, the Successful Bidder will submit a final bid on a loan-by-loan basis.  The Debtors may then remove loans from the portfolio to be sold if the Debtors determine such bid does not maximize the value of the individual loan.  This removal process allows the Debtors to select a loan pool that will realize the highest and best value for each individual loan.  If the Debtors, in consultation with the Interested Parties, determine that either (i) the bids submitted after the first diligence stage, or (ii) the final bid do not allow the Debtors to realize sufficient value for the FHA Loans, the Debtors reserve their right, upon consultation with the Interested Parties, to monetize the FHA Loans in the ordinary course or to terminate the Sale without prejudice to the Debtors' right to seek Court approval of a sale of the FHA Loans at a later date.

16.    The Debtors submit that pursuing the Sale outside of a traditional bankruptcy auction process and allowing for the proposed dual-stage due diligence process will encourage participation and prevent "bid chilling" because interested bidders will not be required to incur extensive diligence expenses at a preliminary stage in the sale process without certainty of entry into a purchase agreement.  In addition, because the FHA Loans can be monetized at substantial value without the need to sell the loans, the Debtors believe they face little downside in the event certain loans are removed from the sale as result of diligence occurring following selection of the winning bidder.

## A.    The Sale Procedures

17.    The Sale Procedures are designed to mirror the loan sale process utilized by the

Debtors in the ordinary course of business, which the Debtors believe will maximize buyer

interest and ensure that the Debtors receive the highest and best value for the FHA Loans.

18.    The Sale Procedures provide in relevant part, as follows:

(a)    **Notice**:  Not later than five days after the entry of the Sale Procedures
Order, the Debtors will serve copies of the Sale Notice, the Sale Procedures, and
the Sale Procedures Order on the following parties by overnight, postage prepaid
to: (i) the Office of the United States Trustee for the Southern District of New
York, (ii)  the attorneys for the U.S. Treasury, (iii) the attorneys for the Debtors'
prepetition secured credit facilities, (iv) the attorneys for the agent under the
Debtors' prepetition amended and restated secured revolving credit agreement,
(v) the attorneys for the Committee, (vi) the attorneys for the JSBs, (vii) the
attorneys for AFI, (viii) the attorneys for the Federal National Mortgage
Association, the Federal Home Loan Mortgage Corporation, and the Government
National Mortgage Association, (ix) any party who, in the past year, expressed in
writing to the Debtors an interest in the FHA Loans and who the Debtors and their
representatives reasonably and in good faith determine potentially have the
financial wherewithal to effectuate the transaction contemplated by the proposed
sale, (x) all parties who are known to have asserted or believed by the Debtors to
hold any lien, claim, encumbrance, or interest in or on the FHA Loans, (xi) the
Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all
applicable state attorneys' general, and local authorities, (xiv) all applicable state
and local taxing authorities, (xv) the Federal Trade Commission, (xvi) the United
States Department of Justice, (xvii) the United States Attorney's Office,
(xviii) the office of the New York Attorney General; and (xix) all entities that
requested notice in these chapter 11 cases under Bankruptcy Rule 2002; and not
later than one day after the entry of the Sale Procedures Order, the Sale
Procedures Order will be posted on the website of the Debtors' claims and
noticing agent, Kurtzman Carson Consultants, at http://kccllc.net/rescap, which
methods shall be deemed proper notice to any interested parties whose identities
are unknown to the Debtors.

(b)    **Participation Requirements**:  The Debtors will distribute an offering
memorandum not later than two business days after the entry of the Sale
Procedures Order.  In order to participate in the bidding process, a person or entity
interested in purchasing the FHA Loans must first deliver an executed
confidentiality agreement in form and substance reasonably satisfactory to the
Debtors, to the following parties: (i) the Debtors, c/o Morrison & Foerster LLP,
1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee and
Todd M. Goren) and Centerview Partners, 31 West 52nd Street, New York, NY
10019 (Attn: Marc D. Puntus and Karn Chopra); (ii) the Committee, c/o Kramer

8

Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Kenneth H. Eckstein  and Douglas H. Mannal), and Moelis & Company, 399 Park Ave, 5th Floor, New York, NY 10022 (Attn: Jared Dermont and Syed Hasan); (iii) the JSBs, c/o White & Case LLP, 1155 Avenue of the Americas, New York, NY 10036 (Attn: J. Christopher Shore, and Harrison L. Denman) and Milbank, Tweed, Hadley & McCloy, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Gerard Uzzi); and (iv) AFI, c/o Kirkland & Ellis LLP, 601 Lexington Ave New York, NY 10022 (Attn: Richard M. Cieri, Ray C. Schrock, and Stephen E. Hessler).

(c)      **Due Diligence**:  Bidders executing a confidentiality agreement will be afforded the opportunity to conduct preliminary due diligence, including the ability to review loan data tapes for the FHA Loans.

(d)      **Bid Deadline**:  **The deadline for submitting Bid Packages (as defined below) by a bidder shall be February 6, 2013, at 5:00 p.m. (Eastern Time) (the "Bid Deadline").**

On or prior to the Bid Deadline, a bidder that desires to make a bid shall deliver to the Debtors and the Interested Parties the following (collectively, a "Bid Package"): (i) one written copy of its bid (a "Bid Proposal"); (ii) a copy of such bidder's proposed MLPISA that has been marked to show amendments and modifications to the MLPISA filed with the Court, including price and terms, with respect to which the bidder agrees to be bound (the "Marked Agreement"); (iii) a copy of such bidder's proposed sale order that has been marked to show amendments and modifications to the Proposed Sale Order  (the "Marked Proposed Sale Order"); (iv) evidence of corporate authority to commit to the Sale, including the most current audited and latest unaudited financial statements (collectively, the "Financials") of such person or entity, or, if the bidder is an entity formed for the purpose of the Sale: (a) Financials of the equity holder(s) of the entity or such other form of financial disclosure as is acceptable to the Debtors, and (b) a written commitment acceptable to the Debtors of the equity holder(s) of the entity to be responsible for the entity's obligations in connection with the Sale; (v) evidence that such bidder is a HUD-approved mortgagee with all licenses and regulatory approvals necessary to own and service (either itself or through a sub-servicer) the FHA Loans; and (vi) evidence that such bidder (either itself or through a sub-servicer) has entered into a Servicer Participation Agreement (as defined in the MLPISA) with Fannie Mae (or, if applicable another government entity), that will enable such bidder to service the FHA Loans in accordance with the guidelines for HUD and HAMP, and such agreement is in full force and effect.

(e)      **Review of Bids**:  A timely Bid Package received from a bidder that meets the requirements set forth above shall be reviewed by the Debtors, in consultation with the Interested Parties, to determine which Bid Package, if any, offers the highest and best bid for the FHA Loans.  If the Debtors, in consultation with the Interested Parties, determine that no Bid Package offers sufficient value for the

FHA Loans, the Debtors reserve their right to terminate the Sale without prejudice to the Debtors' right to monetize the FHA Loans in the ordinary course or seek Court approval of a sale of the FHA Loans at a later date.

(f)    **Acceptance of the Highest and Best Bid**: If the Debtors, in consultation with the Interested Parties, determine that a Bid Package offers sufficient value for the FHA Loans and is the highest and best bid, such bid shall be deemed the "Successful Bid" and such bidder shall be deemed the "Successful Bidder," and the Debtors shall promptly notify all bidders of such determination.  The Debtors and the Successful Bidder shall execute a trade confirmation and the Successful Bidder shall provide loan level prices within one business day of designation of the Successful Bid.

The Debtors reserve their right in their sole and absolute discretion, in consultation with the Interested Parties, to (i) reject any and all bids and to accept any bid prior to the execution of a definitive MLPISA, and (ii) to withdraw any FHA Loan from the Sale at any time on or prior to the closing of the Sale.  The Debtors may also, in their sole discretion, exclude any FHA Loans that do not satisfy certain servicing and/or documentation criteria.

(g)    **Post-Bid Due Diligence Access**:  The Successful Bidder shall be afforded the opportunity to conduct further due diligence of the FHA Loans, including a review of collateral documents and loan servicing files for a period of 4 weeks (the "Post-Bid Diligence Period").  The Successful Bidder will be permitted to reduce the bid on individual FHA Loans as a result of the Post-Bid Diligence, but will not be permitted to cancel the Sale entirely.  No adjustments to the purchase price will be permitted for any reason other than those that can be documented by the Purchaser as a result of the Post-Bid Diligence.  After the Post-Bid Diligence is complete, the Successful Bidder will distribute a revised purchase price schedule on a loan-by-loan basis to the Debtors.  The Debtors will determine, in consultation with the Interested Parties, whether any individual FHA Loan should be removed from the Sale.

(h)    **Preservation of Rights**:  All of the Interested Parties' rights are preserved to object to a sale of the FHA Loans notwithstanding the above-described consultation rights provided in these procedures.

## B.    Extraordinary Provisions of the Sale

19.    General Order M-383 requires that a debtor highlight certain provisions requested as part of its sale or sale procedures conspicuously in the sale motion (the "Extraordinary Provisions").  Below are the relevant Extraordinary Provisions of which the Debtors are seeking approval:

10

- **Private Sale/No Competitive Bidding.** No formal auction is contemplated. However, the Debtors are actively soliciting bids from a broad pool of potential purchasers in order to obtain the highest and best offer for the FHA Loans. The Sale Procedures allow the Debtors to sell the FHA Loans if a value-maximizing price can be achieved through a bulk sale rather than simply allowing the FHA Loans to monetize in the ordinary course. However, should the bidding process result in a bid, or bids, that the Debtors, in consultation with the Interested Parties, determine does, or do, not sufficiently reflect the value of the FHA Loans, the Debtors can elect to terminate the Sale and allow the FHA Loans to monetize in the ordinary course or pursue a Court-approved sale at a later date.

- **Successor Liability.** The Debtors request a finding that neither the Purchaser, nor any of its successors, assigns, nor any affiliates shall have any successor liability. As detailed below, the Debtors' notice protocol will apprise all interested parties of the proposed successor liability provisions of the Sale Order. In addition, the Debtors will be publishing the Sale Notice on the website of the Debtors' claims and noticing agent Kurtzman Carson Consultants, LLC at http://www.kccllc.net/rescap. The Sale Notice apprises parties that the Sale will be free and clear of all claims, liabilities, interests, liens, obligations and encumbrances, including those that are based upon, without limitation, any successor or transferee theory of liability. Accordingly, the Debtors submit that no further notice concerning this provision need be provided and that good cause exists for the approval of the Sale Order's successor liability findings.

- **Relief from Bankruptcy Rule 6004(h).** The Debtors request relief from the 14-day stay imposed by Bankruptcy Rule 6004(h). Industry standards dictate that loan sales of this kind typically close shortly after the parties have finalized the loan pool to be sold and entered into a purchase agreement. In order to ensure interest and participation in the Sale, the Debtors submit that such relief is necessary and supported by legitimate business reasons because the Debtors believe that a potential purchaser will not be willing to deviate from industry standards in closing a sale of this kind.

## APPLICABLE AUTHORITY

**A.    The Sale Is an Exercise of the Debtors' Sound Business Judgment and Should Be Approved**

20.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a trustee or debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . " 11 U.S.C. § 363(b)(1). To sell property under section 363(b), the Debtors must demonstrate to the Court a legitimate business justification for the proposed Sale. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re The*

*Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *see also In re Grubb and Ellis Co.*, No. 12-

10685 (MG), 2012 Bankr. LEXIS 1279, at *10-11 (Bankr. S.D.N.Y. Mar. 27, 2012) ("In

approving a transaction conducted pursuant to section 363(b)(1), courts consider whether the

debtor exercised sound business judgment.").  "Where the debtor articulates a reasonable basis

for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts

will generally not entertain objections to the debtor's conduct."  *Comm. of Asbestos-Related*

*Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr.

S.D.N.Y. 1986).  The Sale should be approved if the Court is satisfied that (a) the Debtors

exercised sound business judgment; (b) the Debtors provided adequate notice; (c) the purchasers

proceeded in good faith; and (d) the purchase price is fair.  *See In re MF Global Inc.*, 467 B.R.

726, 730 (Bankr. S.D.N.Y. 2012)*; In re Boston Generating, LLC*, 440 B.R. 302, 329-30 (Bankr.

S.D.N.Y. 2010) (citing *In re General Motors Corp.*, 407 B.R. 463, 489-93 (Bankr. S.D.N.Y.

2009)).

21.    The Debtors submit that ample business justification exists to sell the FHA Loans

to the Successful Bidder pursuant to the Sale Procedures.  The Debtors believe that selling the

FHA Loans at an acceptable price pursuant to a section 363 sale and recognizing immediate

value for their estates, rather than allowing the FHA Loans to monetize in the ordinary course is

in the best interest of their estates.  The Debtors also believe that a targeted sale process

involving a broad pool of bidders for the FHA Loans is most likely to achieve the highest and

best price for the FHA Loans.

22.    **Adequate and Reasonable Notice.**  The notice described herein and the Sale

Procedures are designed to provide adequate notice to all potentially interested parties, including

those who have previously expressed an interest in purchasing the FHA Loans.  All creditors and

parties in interest will receive notice of the Sale and a reasonable opportunity to object or be

heard with respect to the Sale Procedures.  Accordingly, the proposed Sale Procedures satisfy the

notice requirement under section 363 of the Bankruptcy Code.

23.    **Fair and Reasonable Price.**  The Sale Procedures, including the Sale Notice, are

designed to maximize the value received for the FHA Loans.  The Sale Procedures are designed

to ensure that the FHA Loans will be sold for the highest or otherwise best possible purchase

price.  The Debtors are subjecting the value of the FHA Loans to market testing.  Under the Sale

Procedures, the Debtors may reject bids in the aggregate or on a loan-by-loan basis for those

loans where the Debtors determine the bid does not sufficiently reflect the value of  the loans.

24.    **Good Faith.**  The terms of the MLPISA will be negotiated by the Debtors, the

Successful Bidder, and their respective advisors at arm's length and in good faith, in consultation

with the Interested Parties.  The Sale is proposed in good faith and the Sale Procedures are

designed to ensure that the Successful Bidder is a good faith purchaser under section 363(m).

**B.    The Sale Should Be Approved Free and Clear of All Liens, Claims, Encumbrances,
and Other Interests Because the Sale Satisfies the Requirements of Section 363(f) of
the Bankruptcy Code**

25.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all

or any part of its property free and clear of any and all liens, claims, or interests in such property

if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such

a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for

the property is greater than the aggregate amount of all liens on the property; (4) the interest is

the subject of a *bona fide* dispute; or (5) the party asserting the lien, claim, or interest could be

compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

11 U.S.C. § 363(f).  *See also Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart*

*World Techs., LLC)*, 423 F.3d 166, 169 n.3 (2d Cir. 2005); ("Section 363 permits sales of assets

13

free and clear of claims and interests.  It thus allows purchasers . . . to acquire assets [from a

debtor] without any accompanying liabilities.").  Section 363(f) requires only that one of the five

requirements be satisfied with respect to each such interest.  *In re Borders Grp., Inc.*, 453 B.R.

477, 483 (Bankr. S.D.N.Y. 2011).

26.     The Second Circuit has held that the reference in section 363(f) of the Bankruptcy

Code to the sale being free and clear of "any interest" permits the sale of a debtor's assets free

and clear of claims, including successor liability claims.  *See, e.g., In re Trans World Airlines,

Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (sale of assets pursuant to section 363(f) barred

successor liability claims for employment discrimination and rights under travel voucher

program); *see also In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y.), *aff'd*, 576 F.3d 108

(2d Cir. 2009) (sale of assets pursuant to section 363(f) extinguished any potential state

successor or transferee liability claims); *Am. Living Sys. v. Bonapfel (In re All Am. of Ashburn,

Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986) (sale pursuant to section 363(f) barred

successor liability for product defects claims), *aff'd sub nom., Griffin v. Bonapfel (In re All Am.

of Ashburn, Inc.)*, 805 F.2d 1515 (11th Cir. 1986); *Rubinstein v. Alaska Pac. Consortium (In re

New England Fish Co.)*, 19 B.R. 323, 328 (Bankr. W.D. Wash. 1982) (sale pursuant to section

363(f) was free and clear of successor liability claims for employment discrimination and civil

rights violations).

27.     The Debtors expect that they will satisfy the second and fifth requirements set

forth in section 363(f) of the Bankruptcy Code, if not others as well.  Thus, the FHA Loans

should be transferred to the purchaser free and clear of all liens, claims, encumbrances, and other

interests, including rights or claims based on any successor or transferee liability.

14

C.    **No Consumer Privacy Ombudsman Is Required**

28.    Section 363(b)(1) of the Bankruptcy Code states that if a debtor is selling

personally identifiable information ("PII") in bankruptcy and the debtor has a privacy policy in

place that limits the transfer of PII to unaffiliated parties, then a debtor must either (i) comply

with its privacy policies in connection with the sale, or (ii) a consumer privacy ombudsperson

must be appointed.  11 U.S.C. § 363(b)(1).

29.    Separately, the Gramm-Leach-Bliley Act (the "GLBA"), as implemented by rules

made by the Consumer Financial Protection Bureau, requires that a financial institution deliver to

any individual with whom it has a "customer relationship," an annual notice describing its

practices with respect to the disclosure of PII to nonaffiliated third parties.  *See* 12 C.F.R. 1016.5.

The GLBA prohibits financial institutions from disclosing PII to non-affiliated third parties,

except as provided in their privacy notice.  *See* 12 C.F.R. 1016.10.  The GLBA, however,

specifically permits a financial institution to disclose PII to unaffiliated third parties "[i]n

connection with a proposed or actual sale, merger, transfer, or exchange of all or a portion of a

business or operating unit if the disclosure of [PII] concerns solely consumers of such business

or unit."  12 C.F.R. 1016.15(a)(6).

30.    The Court has previously approved sales of the Debtors' assets and found that the

appointment of a consumer privacy ombudsperson was not required under section 363(b) of the

Bankruptcy Code because the Debtors' disclosure of personally identifiable information pursuant

to these sales was in compliance with the Gramm-Leach-Bliley Act and was consistent with the

privacy notices delivered by the Debtors to mortgage borrowers.  *See Order Under 11 U.S.C.*

*§§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of*

*Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC;*

*(B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other*

15

Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases

Thereto; (D) Related Agreements; and (II) Granting Related Relief [Docket No. 2246] and *Order*

*Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014*

*(I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire*

*Hathaway, Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances,*

*and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* [Docket No.

2247].  As previously set forth in further detail in the Giamporcaro Declaration, the Debtors

maintain that in connection with the sale of the FHA Loans pursuant to the MLPISA, the Debtors

will be able to comply with existing privacy policies in connection with the Sale.  The Debtors

also maintain that the disclosure of PII pursuant to the MLPISA will comply with the GLBA and

the terms of the privacy notices delivered by the Debtors to mortgage borrowers.  In turn, the

Debtors believe that borrower data can be disclosed in connection with the Sale without the need

for a consumer privacy ombudsperson. [6]

**D.    Relief From the Fourteen-Day Waiting Periods Under Bankruptcy Rule 6004(h) Is
Appropriate**

31.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or

lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the

court orders otherwise."  The Debtors request that the Sale Procedures Order and the Sale Order

be effective immediately by providing that 14-day stays under Bankruptcy Rule 6004(h) be

waived.

32.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to

---

[6] In the unlikely event it is determined that a consumer privacy ombudsperson must be appointed in this sale, the MLPISA will provide that the sale, if any, of customer lists, customer data and other consumer privacy information pursuant to the MLPISA is subject to and shall conform to the recommendations of any consumer privacy ombudsperson that may be appointed pursuant to section 332 of the Bankruptcy Code.

Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day

stay period, Collier on Bankruptcy suggests that the 14-day stay period should be eliminated to

allow a sale or other transaction to close immediately "where there has been no objection to the

procedure."  10 COLLIER ON BANKRUPTCY ¶ 6004.11 (Alan N. Resnick & Henry J. Sommers

eds., 16th ed.).

33.    The Debtors submit that the proposed Sale will enable the Debtors to recognize

significant value for the estate.  However, as industry standards dictate that loan sales close

shortly after the parties enter into a sale agreement, the Sale must be consummated as promptly

as practicable in order to ensure bidder interest and participation, so that the Debtors may

recognize immediate value for the FHA Loans.  Therefore, the Debtors hereby request that the

Court waive the 14-day stay period under Bankruptcy Rule 6004(h).

## NO PREVIOUS REQUEST

34.    No previous request for the relief sought herein has been made by the Debtors to

this or any other court.

## LOCAL RULE 9013-1(b)

35.    Because this Motion raises no novel issues of law, and the authorities relied upon

are set forth herein, the Debtors respectfully submit that the Motion itself satisfies the

requirements of Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New

York regarding the submission of a memorandum of law.

ny-1068567

## CONCLUSION

WHEREFORE the Debtors respectfully request that this Court (i) enter the

proposed Sale Procedures Order, substantially in the form attached hereto as <u>Exhibit 1</u>; (ii) enter

the proposed Sale Approval Order, substantially in the forms attached hereto as <u>Exhibit 2</u> or as

otherwise agreed upon with the Purchaser; and (iii) grant such other and further relief as this

Court deems just and proper.

Dated:  January 2, 2013
     New York, New York

/s/ Gary S. Lee
Gary S. Lee
Todd M. Goren
Jennifer L. Marines
Melissa M. Crespo

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and*
*Debtors in Possession*

18