MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:   (212) 468-7900
Gary S. Lee
Todd M. Goren
Jennifer L. Marines
Melissa M. Crespo

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF MARC D. PUNTUS IN SUPPORT OF
DEBTORS' SALE MOTION**

I, Marc D. Puntus, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1.      I am a Partner and co-head of the Restructuring Group at Centerview Partners LLC ("Centerview"), financial advisor to Residential Capital LLC ("ResCap") and the other above-captioned debtors and debtors in possession (collectively the "Debtors").[1] I submit this declaration in support of the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and*

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit filed on the first day of these Chapter 11 cases.

ny-1070766

*(m) and Fed R. Bankr. P. 2002, 6004, and 9007 for Orders: (A)(I) Authorizing and Approving Sale Procedures'; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain FHA Loans Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Mortgage Loan Purchase and Sale Agreement and; and (III) Granting Related Relief* (the "<u>Motion</u>").[2]

## QUALIFICATIONS

2. I previously have conveyed to the Court my qualifications and Centerview's qualifications in my Declaration in support of the application for Centerview's retention, my Declaration in support of the motion for approval of the Barclays DIP Facility and the AFI DIP Facility and my Declaration in support of the motion for approval of certain amendments to the Barclays DIP Facility, as well as my Declaration in support of the Debtors' sale motion [Docket Nos. 20, 1784, and 2137 respectively].

## THE PROPOSED FHA LOAN SALE

3. Centerview has worked closely with the Debtors in the development and management of the Sale Procedures in an effort to maximize value for the Debtors' estates and stakeholders. For the reasons set forth herein, I believe that the Sale Procedures will allow for a successful sale of the FHA Loans, which will create significant value for the Debtors and their estates.

## FHA LOAN OVERVIEW

4. The Debtors have historically originated or purchased loans insured by the FHA for purposes of securitizing and selling them to securitized trusts sponsored by Ginnie Mae.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

FHA insurance protects lenders against losses resulting from homeowner defaults on mortgage loans by covering 100% of a lender's principal loss. FHA pays mortgage lenders the difference between the price obtained for a repossessed home and the outstanding loan balance; however, it is important to note that insurance proceeds are paid after the foreclosure process is completed.

5. The Debtors currently hold approximately $1 billion in UPB of loans insured by the FHA or VA and are seeking to sell $130 million of UPB of loans insured by the FHA pursuant to the Motion. These FHA Loans were sold into Ginnie Mae securitizations, and later became non-performing loans, which the Debtors were required to repurchase under the applicable Ginnie Mae guidelines. With respect to many of the loans the Debtors repurchase, they are able to perform modifications on such loans that would enable the loans to become performing and then resell the loans into Ginnie Mae securitization pools. Loans that the Debtors are unable to modify are typically held on the Debtors' books until the foreclosure process is completed and an insurance claim is submitted with the FHA, or until the loan becomes current and the Debtors are able to resell the loan into Ginnie Mae securitization pools.

## THE DEBTORS' WHOLE LOAN SALES IN THE ORDINARY COURSE

6. In the ordinary course of business, the Debtors generally sell pools of loans as a standard practice to provide balance sheet relief, reduce servicing costs, or monetize assets that could otherwise require significant time to liquidate in the normal course. The Debtors now seek to sell a subset of FHA Loans in accordance with their prepetition practice. The Debtors, with the assistance of Centerview, have identified those FHA Loans that will be attractive to a number of prospective bidders, which are expected to result in the highest average market price for the loans sold. Specifically, these loans are those for which the collateral documentation is readily available and has been reviewed to confirm that such loans adhere to

acceptable industry standards. In addition, the Purchaser can be assured that the FHA Loans will qualify for the FHA insurance payment in the event the collateral securing the loan does not fully cover the loan.

7.  Outside of a section 363 sale, the FHA Loans would typically monetize over a period of approximately 30-36 months on average. Though 30-36 months is the average timeline to monetization, due to extended foreclosure timelines in several states and borrower bankruptcy proceedings, certain FHA Loans could take significantly longer to monetize. By allowing the loans insured by the FHA to monetize in the ordinary course, the Debtors believe they would likely realize close to the carry value on the FHA Loans over time.[3] Nonetheless, I believe that it may be in the best interest of the Debtors and their estates and creditors to expedite the monetization of these assets. If the Debtors are unable to achieve an acceptable target value (as determined in consultation with Interested Parties, as defined below) for these assets under the Sale Procedures, the Debtors will retain the FHA Loans and allow them to monetize in the ordinary course or seek to sell them at a later time.

8.  The Debtors have consulted with the Official Committee of Unsecured Creditors (the "Committee"), the advisors to the Ad Hoc Group of Junior Secured Noteholders (the "JSBs"), and the advisors to Ally Financial Inc. and Ally Bank (collectively, "AFI," and together with the Committee and the JSBs, the "Interested Parties") regarding the Sale, and have received the support of the Interested Parties to pursue a sale of the FHA Loans.

## PROPOSED SALE PROCEDURES

9.  It is my opinion the Sale Procedures will maximize the value that the Debtors can achieve in a sale of the FHA Loans.

---

[3] Carry value per the Debtors' books and records.

10. The Debtors, with the assistance of Centerview, have prepared a list of 15-20 potential purchasers for the FHA Loans. These parties include those who have previously purchased loans from the Debtors in the ordinary course of business, those who expressed an interest in purchasing the whole loan assets that were sold to Berkshire Hathaway Inc., and those parties who are known to purchase similar assets in the whole loan market.

11. The Sale Procedures are designed to mirror the loan sale process utilized by the Debtors in the ordinary course of business, which I believe will maximize buyer interest and ensure that the Debtors receive the highest and best possible bids for the FHA Loans. I believe that pursuing the Sale in accordance with the Debtors' ordinary course sale process, rather than by a traditional bankruptcy auction process, will maximize buyer interest.

12. It is my opinion that the dual-stage due diligence process proposed by the Sale Procedures will encourage bidder participation. In my experience, and specifically in my experience with the Debtors' previous whole loan sale, the substantial diligence required by these assets may chill bidding where such bidders are required to engage in diligence and incur related expenses without certainty of entry into a purchase agreement or reimbursement of such expenses. The Sale Procedures are designed to address this concern by providing for two stages of diligence, which, after selection of a Successful Bidder from the pool of potential bidders, require only the Successful Bidder to conduct extensive diligence on a loan-by-loan basis.

13. The Successful Bidder will be permitted to reduce the bid on individual FHA Loans as a result of the Post-Bid Diligence, but will not be permitted to cancel the Sale entirely. After the Post-Bid Diligence is complete, the Successful Bidder will distribute a revised purchase price schedule on a loan-by-loan basis to the Debtors. The Debtors will determine, in consultation with the Interested Parties, whether any individual FHA Loan should be removed

from the sale. I believe that this process will ensure that the Debtors will realize the highest and best value for each individual loan.

14. The Sale Procedures provide for sufficient notice of the proposed Sale, Bid Deadline, and Sale Hearing to all interested parties.

## **CONCLUSION**

15. For the reasons set forth herein, I believe that the Sale Procedures and Sale should be approved in all respects.

16. I declare, under penalty of perjury, that the foregoing is true and correct, to the best of my knowledge.

Dated: January 2, 2013
     New York, New York

                                                                 /s/   Marc D. Puntus
                                                                  Marc D. Puntus