UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: January 16, 2013 at 10:00 a.m.
Objection Deadline: January 10, 2013 at 4:00 p.m.

------------------------------------------------------------ x
:
In re                                                        :       Chapter 11
:
RESIDENTIAL CAPITAL, LLC,                                    :       Case No. 12-12020 (MG)
:
                                    Debtors.                 :       Jointly Administered
:
------------------------------------------------------------ x

TO:   THE HONORABLE MARTIN GLENN,
      UNITED STATES BANKRUPTCY JUDGE:

**OBJECTION OF THE UNITED STATES TRUSTEE TO
DEBTORS' MOTION FOR A SUPPLEMENTAL ORDER UNDER
BANKRUPTCY CODE SECTIONS 363, 1107(a) AND 1108 TO THE
FINAL WAGES ORDER AUTHORIZING THE DEBTORS TO
MAKE PAYMENTS TO THEIR EMPLOYEES UNDER THE
<u>RESIDENTIAL CAPITAL, LLC ANNUAL INCENTIVE PLAN</u>**

Tracy Hope Davis, the United States Trustee for Region 2, in furtherance of the duties and responsibilities set forth in 28 U.S.C. §§ 586(a)(3) and (5), hereby respectfully files her objection (the "Objection") to the Debtors' Motion for a Supplemental Order Under Bankruptcy Code Sections 363, 1107(a) and 1108 to the Final Wages Order Authorizing the Debtors to Make Payments to their Employees Under the Residential Capital, LLC Annual Incentive Plan (the "AIP Motion"). ECF Doc. No. 2520.

## I.  PRELIMINARY STATEMENT

The Debtors seek an order from this Court permitting them to pay bonuses to approximately 3,000 out of 3,926 employees.  Rather than providing information and setting forth the reasons why they have met the strict requirements of Section 503 of the Bankruptcy Code, which governs bonus and incentive play payments to employees, the Debtors assert that because these proposed payments are ordinary course transactions, they do not need to meet the

specific requirements of Section 503 of the Bankruptcy Code. As shown below, the proposed AIP payments under the AIP Motion should not be treated as an ordinary course transaction. Therefore, the Debtors must demonstrate that they have met the requirements of Section 503(c) before the relief they have requested can be granted.

With respect to that portion of the AIP Motion that seeks to make payments to non-KEIP/KERP Participants (i.e., AIP Participants excluding the 185 KEIP/KERP Participants), Section 503(c)(3) governs. Under this section, the payments may be made if justified under the circumstances of these cases. Here, the determination as to whether the payments are justified under the circumstances of these cases should be left to the Official Committee of Unsecured Creditors and the Debtors.

With respect to the 185 KEIP/KERP Participants, the proposed AIP payments to the KEIP Participants are retentive and therefore barred by Section 503(c)(1). Furthermore, even if the AIP payments to the KEIP Participants were determined to be incentive-based, both the KEIP Participants and the KERP Participants would have to satisfy Section 503(c)(3) and justify the AIP payments under the circumstances of these cases, which, at a minimum, would require the Debtors to establish that the previously approved KEIP and KERP awards did not contemplate the entirety of the compensation to be paid to the KEIP/KERP Participants.

## II. BACKGROUND

**A.    General**

1.    Residential Capital, LLC and fifty of its affiliates (collectively "the Debtors") commenced voluntary cases under Chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date").

2. By order entered on May 14, 2012, the Court authorized joint administration of the cases. ECF Docket No. 59.

3. The Debtors' primary and most valuable business operations consist of servicing mortgage loans for investors, including loans originated by the Debtors, Ally Bank (f/k/a GMAC Bank), and other third parties. As of March 31, 2012, the Debtors were servicing over 2.4 million mortgage loans with an aggregate unpaid principal balance of approximately $374 billion. Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings ("Whitlinger Affidavit."), ¶ 6. ECF Docket No. 6.

4. On May 16, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors pursuant to Section 1102(a) of the Bankruptcy Code. ECF Docket No. 102.

5. On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Examiner in these cases. ECF Docket No. 674.

6. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**B.    KEIP/KERP Motion**

7. On July 17, 2012, the Debtors filed a motion (the "KEIP/KERP Motion") requesting authorization of (a) a Key Employee Incentive Program ("KEIP") covering seventeen senior executive insiders (the "KEIP Participants") of the Debtors and (b) a Key Employee Retention Program ("KERP") covering 174 purported non-insiders (the "KERP Participants" and collectively, the "KEIP/KERP Participants"). ECF Doc. No. 812.

8. On August 2, 2012, the United States Trustee filed an objection to the KEIP/KERP Motion. ECF Doc. No. 987.

3

9. On August 15, 2012, the Court entered an order approving the KERP. ECF Doc. No. 1169.

10. On August 28, 2012, the Court issued the Memorandum Opinion and Order Denying Debtors' Motion for Approval of a Key Employee Incentive Plan (the "Memorandum Opinion"). ECF Doc. No. 1286. The Court found that the Debtors failed to carry their burden to show that vesting 63 percent of the KEIP awards merely by remaining until the sales closed is not primarily retentive. Memorandum Opinion at 24.

11. On October 9, 2012, the Debtors filed an amended motion requesting the approval of a modified KEIP (the "Amended KEIP Motion"). ECF Doc. No. 1762.

12. On October 18, 2012, the Court entered an order approving the Amended KEIP Motion. ECF Doc. No. 1854.

**C.    Sale of Assets**

13. On November 3, 2012, the Debtors filed an "Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing, LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc." and "Notice of Filing (A) Ocwen APA and (B) Amended and Restated BH Legacy APA." ECF Doc. No. 2050.

14. On November 21, 2012, the Court entered the "Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale Of Debtors' Assets Pursuant To Asset Purchase Agreement With Berkshire Hathaway Inc.; (B) Sale Of Purchased Assets Free and Clear Of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief." ECF Doc. No. 2247.

15. On January 4, 2013, the Debtors filed a "Notice of Filing of Amended Proposed Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014

(I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief." ECF Doc. No. 2563.

### D. The AIP Motion

16. On June 12, 2012, the Court entered a final order (the "Wages Order")[1] approving the Debtors' motion seeking authority to pay and honor prepetition wages, compensation, employee expense and employee benefit obligations; and maintain and continue employee compensation and benefit programs (the "Wages Motion"). ECF Doc. No. 386; AIP Motion, ¶ 3, p. 2.

17. The Debtors have acknowledged that the Wages Order provides, in pertinent part, provides that the Debtors may "not make payments under AFI LTECIP and ResCap AIP without further order of this Court." AIP Motion, ¶ 11, p. 5.

18. The AIP Motion provides that under the Annual Incentive Plan (the "AIP") approximately 3,000 out of approximately 3,926 employees (the "AIP Participants") will be eligible to participate in the AIP. AIP Motion, ¶ 13, p. 5–6.

19. The AIP Participants include the 17 individuals who participated in the key employee incentive plan (the "KEIP"), as well as 168 of the 182 individuals who participated in the key employee retention plan (the "KERP"). Id.

20. The Debtors' top three executives (i.e., Chief Executive Officer, President and Chief Capital Markets Officer), who are a part of AFI's Top 25 most-highly compensated employees, are not eligible for AIP. AIP Motion, n. 9, p. 7.

---

[1] All capitalized terms will refer to the terms as set forth in the AIP Motion.

5

21.     The AIP Motion seeks authority to pay (i) the KEIP Participants not more than 70 percent of the AIP awards they receive for their services in 2011 and (ii) the KERP Participants and all other eligible employees will not receive more than the award amount they received for their services in 2011.  AIP Motion, ¶ 125, p. 5.

22.     The AIP funding pool will be approximately $33.4 million.  AIP Motion, ¶ 18, p. 7.

23.     The amount of the AIP award is entirely within the discretion of an employee's supervisor, and is generally made in mid-February.  AIP Motion, ¶¶ 31–32, pp. 11–12.

24.     If an AIP Participant is transferred to an asset purchaser on or about the anticipated closing date of January 31, 2013, then the asset purchaser will assume the liability for the AIP payment and the amount will be treated as an adjustment against the overall purchase price.  AIP Motion, ¶ 33, p. 13.

25.     The AIP Motion submits that the AIP, which has been in place for twenty years, is an ordinary course transaction.  AIP Motion, ¶ 42, pp. 15–16.

### III.  DISCUSSION

**A.     The Legal Framework:  Section 503 of the Bankruptcy Code**

Section 503(c) of the Bankruptcy Code provides in relevant part:

Notwithstanding subsection (b), there shall neither be allowed, nor paid –

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that

    (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

    (B) the services provided by the person are essential to the survival of the business; and

6

(C)    either –

   (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

   (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2)    a severance payment to an insider of the debtor, unless -

   (A) the payment is part of a program that is generally applicable to all full-time employees; and

   (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to non-management employees during the calendar year in which the payment is made; or

(3)    other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c).

Congress added Section 503(c) in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act to end abusive compensation practices in bankruptcy case. In particular, Congress imposed significant limits on the payments of retention and incentive bonuses and severance to insiders and on the payments of retention bonuses granted to non-insiders without factual and circumstantial justification. See In re Journal Register Co., 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009). "The intent of Section 503(c) is to 'limit the scope of "key employee retention plans" and other programs providing incentives to management of the

7

debtor as a means of inducing management to remain employed by the debtor.'" In re Velo Holdings Inc., Case No. 12-11384 (MG), 2012 WL 2015870, at *5 (Bankr. S.D.N.Y. June 6, 2012) (quoting 4 COLLIER ON BANKRUPTCY, ¶ 503.17 (15th ed. 2007)). Section 503(c) requires "'a set of challenging standards' and 'high hurdles'" before debtors can pay before retention bonuses. In re Mesa Air Group, Inc., Case No. 10-10018 (MG), 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing In re Global Home Prods., LLC, 369 B.R. 778, 784–85 (Bankr. D. Del. 2007).

Not only must bonus plans comply with Section 503(c), but as administrative expenses they must also be "actual, necessary costs and expenses of preserving the estate," as required by Section 503(b).

B.    **The AIP is Not an Ordinary Course Transaction**

Contrary to the Debtors' assertion, the AIP cannot automatically be treated as an ordinary course transaction based merely on a longstanding practice prior to the filing of a bankruptcy petition. Although there is support for the treatment of bonus or incentive plans as an ordinary course transaction where a debtor's business operations continue through a reorganization, where a debtor files a bankruptcy case with the intention of liquidating, and is liquidating as herein, the characterization of AIP as an ordinary course transaction may not be appropriate.

In these cases, the Debtors entered bankruptcy with the express intention of selling their servicing platform as well as a legacy portfolio of loans. The Debtors argue that the AIP is an ordinary course transaction by citing to the cases that analyze the transactions under a two-step test – (i) a horizontal test and (ii) a vertical test. The horizontal dimension examines whether the transaction is of the type commonly undertaken by companies in that industry while the vertical dimension adopts the creditor's perspective examining whether the transaction subjects the

creditor to economic risk of a nature different from those accepted when credit was initially extended. See In re Nellson Neutraceutical, Inc., 369, B.R. 787, 797 (Bankr. D.Del. 2007). In determining whether a bonus or incentive plan, even a longstanding plan, is an ordinary course transaction, ignoring whether a company expects to continue to operate as compared to a company planning to liquidate, misapplies the two step horizontal and vertical tests. It appears to be inappropriate to compare bonus or incentive plans for operating companies with companies undergoing liquidation. Accordingly, while the AIP proposed herein might satisfy the two-step horizontal and vertical test as an ordinary course transaction for a company continuing its operations, in the context of a company being liquidated, the AIP cannot be said to satisfy the horizontal or vertical test for an ordinary course transaction

### 1.     Non-KEIP/KERP Participants

As applied to the AIP Motion, a bifurcation between KEIP/KERP Participants and the remaining Non-KEIP/KERP Participants appears appropriate. The latter group includes no insiders, and, therefore the AIP payments to this group, as a non-ordinary course transaction, would be subject to evaluation under Section 503(c)(3) as to whether the AIP payments are justified by the facts and circumstances of the case. With respect to this group of Non-KEIP/KERP Participants, constituting the bulk of the AIP Participants (approximately 3,000 AIP Participants less the 185 KEIP/KERP Participants), the United States Trustee defers to the Official Committee of Unsecured Creditors and the Debtors on whether the AIP payments are justified under the circumstances of these cases.[2]

---

[2] Nevertheless, the Debtors should be required to disclose the amount of AIP payments being made to the AIP Participants.

### 2. **KEIP/KERP Participants**

The Debtors should not be permitted to seek approval of KEIP/KERP plans while withholding information regarding undisclosed AIP payments for which they subsequently seek approval as ordinary course payments subject to minimal scrutiny. With respect to the KEIP/KERP Participants, the detailed analysis undertaken by the Court during the KEIP/KERP Motions took into consideration past compensation to the recipients without considering the effect of undisclosed future AIP payments. See Orders set forth in ECF Doc. Nos. 1169, 1286, and 1854. The underlying assumption of the Court and United States Trustee was that the contemplated KEIP/KERP payments constituted the entirety of the retentive and incentive payments to the recipients. Allowing the Debtors to separate the undisclosed AIP payments from the KEIP/KERP payments undermines the integrity of the process of evaluating the propriety of the KEIP/KERP plans. The possibility of abuse is self-evident and, under these circumstances, compounded by the Debtors' failure to disclose what portion of the $33.4 million AIP funding pool is intended for the KEIP/KERP Participants and the amounts to be paid to the each individual.

### 3. **KERP Participants**

With respect to the KERP Participants, as non-insiders, the contemplated non-ordinary course AIP payments are subject to the Section 503(c)(3) inquiry of whether the payments were justified under the circumstances of these cases. In order to conduct this inquiry, the Debtors must disclose the AIP amounts contemplated to be paid to the KERP Participants and why the KERP Motion did not already take into consideration the entirety of the compensation to be paid to the KERP Participant. Unless and until this information is provided, the Court, the United States Trustee and interested parties cannot conduct this inquiry.

### 4. **KEIP Participants**

With respect to the KEIP Participants, there is nothing in the AIP Motion that establishes that the contemplated AIP payments are other than retentive. Accordingly, any AIP payments to the KEIP Participants not disclosed in the AIP Motion must satisfy the criteria set forth in Section 503(c)(1). The AIP Motion contains no evidence that any of the conditions set forth in Section 503(c)(1) have been satisfied. Therefore, incorporating the analysis set forth in the United States Trustee's objection to the KEIP Motion (ECF Doc. No. 987, pp. 14-5), the proposed AIP payments to the KEIP Participants should be denied for failure to satisfy Section 503(c)(1). Even if the Debtors establish that the proposed AIP payments are incentive based rather than retentive, the Debtors bear the burden of establishing that the KEIP Motion did not take into consideration the entirety of the compensation to be paid to the KEIP Participants.

### IV. CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that the Court sustain the foregoing Objection, deny the AIP Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      January 10, 2013

                                            TRACY HOPE DAVIS
                                            UNITED STATES TRUSTEE

By:  */s/ Brian S. Masumoto*
       Brian S. Masumoto
       Michael Driscoll
       Trial Attorneys
       33 Whitehall Street, 21st Floor
       New York, New York 10004
       Tel. No. (212) 510-0500