**Richard Sax (SBN 80632)** *richard@rsaxlaw.com*
**LAW OFFICES OF RICHARD SAX**
448 Sebastopol Avenue
Santa Rosa, CA. 95401
Telephone: (707) 525-1824
Facsimile:  (707) 525-8119

Attorney for Movant/Creditor Julio Solano

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RESIDENTIAL CAPITAL, LLC,<br><br>Debtor. | CASE NO.: 12-12020-MG<br><br>Chapter 11<br><br>Jointly Administered |

**MOTION OF CREDITOR JULIO SOLANO FOR ORDER PURSUANT TO SECTION 362(d)b OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 4001 AND LOCAL BANKRUPTCY RULE 4001-1 MODIFYING THE AUTOMATIC STAY TO ALLOW CONTINUATION OF PRE-PETITION LITIGATION**

1.      Movant/Creditor Julio Solano, as plaintiff in a State Court action To Set Aside Trustee's Sale,  To Cancel Written Instrument, Declaratory Relief, Unjust Enrichment, Imposition of Constructive Trust, Unfair Competition Under Business & Professions Code § 17200 et seq. (Unfair Business Act or Practice), Promissory Estoppel, Conversion, Conversion, Negligence, and Negligent Infliction of Emotional Distress ('the state court action"), brings this motion pursuant to section 362(d) of Title 11, 11 U.S.C. §§ 101 *et seq.*, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules for an order modifying the automatic stay to allow Solano's action against GMAC, as defendant, to continue in the Superior Court of California.

1

## PRELIMINARY STATEMENT

2. Good cause exists to modify the automatic stay to permit the actions in which this Creditor is a party to proceed. A review of the balance of harms between this Creditor and the Debtor demonstrates that allowing the litigation to proceed in the state court as scheduled is proper.

3. The action against GMAC dates back to 2011, and negotiations between this Creditor and the Debtor regarding this matter began in 2009. Among other things, GMAC wrongfully foreclosed upon Creditor and Creditor sustained emotional distress as a result.

4. The state Superior Court requires Relief from the Automatic Stay to be granted in order for the action to proceed in the Superior Court of California.

## STATEMENT OF FACTS

5. On June 7, 2011, Creditor Julio Solano filed the state court action in Superior Court of California. Solano filed a Second Amended Complaint on April 2, 2012. Plaintiff alleges in relevant part as follows:

**Plaintiff's Tender of the Reinstatement Amount**

In or about 2010, after making many improvements, plaintiff had at least $500,000.00 in equity in the Real Property, or according to proof, which represents the difference between the fair market value and all encumbrances on the Real Property on the date of the Trustee's Sale.

In or about December of 2010, plaintiff received a letter from GMAC representing that the reinstatement amount due was $53,114.11, which was also reflected on plaintiff's December 20, 2010 Mortgage Account Statement.

Plaintiff confirmed the reinstatement amount with a GMAC employee/agent on or about January 5, 2011.

On or about January 7, 2011, plaintiff tendered the reinstatement amount to GMAC, by remitting a cashier's check for $53,114.11 to GMAC by overnight mail. GMAC received the reinstatement

2

amount of $53,114.11 on January 8, 2011. As a result, plaintiff was not in default.

On or about January 11, 2011, plaintiff contacted GMAC, which confirmed possession of the cashier's check in the remittance amount of $53,114.11.

However, on or about January 11, 2011, employees/agents of GMAC illegally and unlawfully rejected plaintiff's tender and represented to plaintiff that he owed an additional amount of approximately $1,400.00 in order to reinstate his account. GMAC employees and agents represented to plaintiff that the additional funds were necessary to pay attorney fees.

Plaintiff immediately tendered the additional payment of approximately $1,400.00 over the telephone by way of a credit card.

However, GMAC employees and agents refused to accept Plaintiff's credit card payment and tender, which would have reinstated Plaintiff's account and brought his house payments current. The plaintiff was not in default.

GMAC employees and agents insisted that they needed a new cashier's check that included both the reinstatement amount of $53,114.11 and approximately $1,400.00 for attorney fees in the total amount of $54,514.11.

Plaintiff found himself in a "Catch-22" situation as his fervent attempts to tender the reinstatement funds to GMAC, and thus save his home, were stymied and rebuffed by GMAC.

Although GMAC representatives demanded a new cashier's check, they failed and refused to return in a timely manner plaintiff's cashier's check for $53,114.11 that he had sent them and that remained in their possession. Therefore, plaintiff was prevented from forwarding a new cashier's check that would include both the $53,114.11 and the approximately $1,400.00 in attorney's fees that they demanded, thereby avoiding the foreclosure sale of his Real Property.

GMAC intentionally held plaintiff's cashier's check in its possession, and failed and refused to return plaintiff's $53,114.11 for approximately four (4) weeks, from January 8, 2011 to well into

February, 2011, after the foreclosure sale of plaintiff's Real Property, so that GMAC and The Bank of New York Mellon Trust Co. could foreclose and obtain the equity in the Real Property.

Prior to the Trustee's Sale on February 15, 2011, plaintiff had made many verbal requests to GMAC to honor his tendered reinstatement payments or return his cashier's check, so that he could send a new cashier's check to GMAC that would add and incorporate the demanded attorney fees, thereby preventing the foreclosure sale of his Real Property. As a result, plaintiff was not in default.

On at least January 15, January 20, January 30, and February 5 or 10, 2011, plaintiff sought the aid of Redwood Credit Union, which had issued his $53,114.11 cashier's check, to request that GMAC honor the cashier's check or return the funds, so that he could obtain a new cashier's check in order to again tender the reinstatement funds. The Branch Manager and Supervisor of Redwood Credit Union and two bank tellers contacted GMAC and sought to void the cashier's check in GMAC's possession in order to issue a new cashier's check. Plaintiff also signed a Claim for Refund or Replacement of Official Check Affidavit form given to him by Redwood Credit Union, made to the attention of GMAC Mortgage.

However, GMAC intentionally concealed and refused to provide a facsimile number or other contact information that would allow them to receive the Claim for Refund or Replacement of Official Check Affidavit form in a timely manner, and thereby avoid the foreclosure sale of his Real Property, so that GMAC and The Bank of New York Mellon Trust Co. could obtain the valuable equity in the Real Property.

Finally, on February 24, 2011, GMAC returned plaintiff's above-referenced cashier's check, after the foreclosure sale of his home had been held, with correspondence which stated, in pertinent part, as follows:

> "This letter serves as our response to the correspondence...regarding the above-referenced account dated February 1, 2011 and received in our office on February 7, 2011.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> We sincerely apologize for any inconvenience or frustration you have experienced. The correspondence indicates you received a letter reflecting the reinstatement amount due was $53,114.11, which amount was reflected on the December 20, 2010 Mortgage Account Statement and which amount was confirmed with a Bankruptcy Department Representative on January 5, 2011. However, a Motion for Relief from the automatic stay placed by the Chapter 7 bankruptcy filing was granted on January 8, 2011, and foreclosure proceedings resumed.
>
> Due to the foreclosure status, the amount quoted was no long sufficient to reinstate the account...The check was received by GMAC Mortgage and subsequently returned to you...
>
> The above-listed property went to trustee sale on February 15, 2011. If you wish to discuss the process of foreclosure, please contact Executive Trustee Services..."

On March 11, 2011, ETS requested that a Trustee's Deed Upon Sale be recorded in the official records of Sonoma County, California as instrument No. 2011023076, indicating that plaintiff's home was sold at a public action on February 15, 2011 to The Bank of New York Mellon Trust Co.

After the Trustee's Sale, plaintiff and his wife and children, who were in a state of shock, immediately moved out of the Real Property and into a motel room, because of their fear of being evicted from their home on the Real Property by the Sonoma County Sheriff.

The Trustee's Sale was improperly held and the Trustee's Deed Upon Sale was wrongfully executed, delivered, and recorded, because there was arguably no breach of the obligation; there were invalid, irregular, and improper presale procedures; and the trustee illegally, fraudulently, and oppressively sold plaintiff's Real Property under a power of sale contained in the deed of trust to defendant The Bank of New York Mellon Trust Co.

The Trustee's Sale was improper and illegal because plaintiff tendered the reimbursement amounts that GMAC demanded, but

GMAC rejected and wrongfully retained plaintiff's tender. On or about January 7, 2011, plaintiff tendered by cashier's check to GMAC the full amount that GMAC demanded to bring his loan current, thus extinguishing the Notice of Default and making the subsequent Trustee's Sale void. On or about January 11, 2011, Plaintiff offered to tender to GMAC by telephone all of the additional monies that GMAC had subsequently claimed were due, which would have cured the alleged problem, if any, with plaintiff's initial tender; but GMAC refused plaintiff's good faith offer. Then GMAC wrongfully withheld plaintiff's cashier's check for over a month, until after the foreclosure, making a new tender by plaintiff impossible.

GMAC rejected plaintiff's tender in order to make it impossible for plaintiff to reimburse the amounts that GMAC claimed were due and owing before plaintiff's Real Property was sold at the Trustee's Sale, by withholding plaintiff's cashier's check and refusing to allow plaintiff to reimburse GMAC for the attorney fees by credit card.

The Trustee's Sale was improperly held, in violation of the terms and conditions of the promissory note and deed of trust and in violation of the duties and obligations of defendant beneficiary and defendant trustee to plaintiff, all to plaintiff's loss and damage, in that plaintiff has been wrongfully deprived of at least $500,000.00, or according to proof, of equity in the Real Property, the beneficial use and enjoyment of the Real Property, and legal title by forfeiture.

Plaintiff has offered, and offers to tender, to defendant beneficiary or defendant trustee all amounts due and owing so that the claimed default may be cured and plaintiff may be reinstated to all former rights and privileges under the promissory note and deed of trust. Plaintiff is ready, willing, and able to tender those sums, if any, that the Court finds due and owing on rendering the accounting requested in this First Amended Complaint.

Plaintiff properly tendered the reinstatement amount to defendants and was not in default. Defendants knew this and nevertheless illegally rejected plaintiff's tender and sold plaintiff's home. The acts alleged above were willful, wanton, malicious, and oppressive,

were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages."

## BANKRUPTCY PROCEEDINGS

6. Debtors filed voluntary petitions in this court under Chapter 11 of Title 11 of the Bankruptcy Code on May 14, 2012.

7. On or about May 25, 2012, GMAC file Notice of Stay and Effect of Automatic Stay in the state court action. GMAC's notice states the state court action should be stayed pursuant to 11 U.S.C. § 3962(a).

8. On July 13, 2012, this court granted at least partial relief from the automatic stay and issued Final Supplemental Order. The Final Supplemental Order provides at Item 14 on page 7 as follows:

> "The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:
>
> (a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;
> (b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors,

7

except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c) absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d) under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e) the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(f) nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest."

Creditor seeks to obtain clarification because debtor's counsel in the state court action contends that Order does not give Debtor relief on all of his causes of action.

## JURISDICTION

9.    This court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this motion is proper in that this district pursuant to 28 U.S.C. §§ 1408 and 1409. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

//

//

# ARGUMENT

## THE COURT SHOULD LIFT OR MODIFY THE AUTOMATIC STAY TO ALLOW THE STATE COURT LITIGATION TO PROCEED TO JUDGMENT

10. The statutory predicates for the relief requested herein are sections 362(a) and (d) of the Bankruptcy Code. Under the Bankruptcy Code, a stay is both temporary in duration and subject to being modified or terminated. The Court should enter an order lifting or modifying the automatic stay pursuant to section 362(d) of the Bankruptcy Code allowing the California litigation to proceed to judgment against Debtor for a number of reasons.

11. In Northern Pipeline Constr. Co. v. Marathon Pipe Line Co. (1982) 458 U.S. 50, the Supreme Court considered constitutional restraints on bankruptcy court jurisdiction. The plurality distinguished those issues "at the cord of the federal bankruptcy power...from the adjudication of state-created private rights." Id. at 71. The bankruptcy court can exercise jurisdiction over the former, but cannot exercise jurisdiction over a state law claim that arose pre-petition. Such a claim can be adjudicated only in an Article III court. The claims within the state Superior Courts involve state real property law, and should be adjudicated by the state courts. In each action, the court must determine the priority of multiple encumbrances upon each property, the validity of foreclosure proceedings, the enforceability of documents recorded in county recorder's offices within California whether subsequent buyers of this property are bona fide purchasers under the state recording statutes, whether subsequent encumbrances of these properties are bona fide encumbrances under state law, and/or other complex issues of state law. Such claims should be adjudicated by the state Superior Courts in which the claims were filed.

12. Moreover, if the Court does not modify the automatic stay, this Creditor will be forced to choose between waiting indefinitely to proceed with the state court action against all defendants in the pending state Superior Court, or moving to sever the Debtor from the other non-debtor defendant, proceeding with the litigation as to

the non-debtor defendant and then litigating the claims against the Debtor defendant at some later point. Judicial efficiency will be served if the California State Superior Court action is permitted to resolve all of the litigation against all of the defendants in a single trial, and the balance of hardships mandates that the trial proceed now rather than later.

13. Finally, permitting the state Superior Court action to proceed will have minimal impact upon the debtor and its estates. On information and belief, the Debtor has insurance coverage for most if not all of any judgment against it. The facts mandate modification of the automatic stay to permit this Creditor to proceed against the Debtors.

### A. Standards for Modification of the Automatic Stay

14. Section 362(d) of the Bankruptcy Code provides that the automatic stay shall be modified for "cause." 11 U.S.C. § 362(d)(1). The Sonnax factors require a court to consider (1) whether relief would result in a particular or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether other proceedings involve the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceedings; and (12) impact of the stay on other parties and the balance of the harms. Sonnax Indus., Inc. v. TRI Component Products Corp. (In re Sonnaz Indus., Inc.) (2nd Cir. 1990) 907 F.2d 1280, 1286.

12-12020-mg    Doc 2604    Filed 01/10/13    Entered 01/10/13 19:21:24    Main Document

In applying Sonnax standard, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relive the bankruptcy court from many duties that may be handled elsewhere." Matter of Holtkamp (7th Cir. 1982) 669 R.2d 505, 508 (citing S. Rep. No. 989, 95th Cong., 2d Sess. 50 *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836) (affirming decision to lift stay to allow personal injury case to proceed because civil action did not jeopardize estate where insurer assumed full responsibility for defending the litigation). Not all of the Somax factors are relevant in each case, and the Court need not assign equal weight to each factor. In re New York Med. Group. P.C. (Bankr. S.D.N.Y. 2001) 265 B.R. 408, 413 (modifying automatic stay to allow medical malpractice suit to proceed against liquidating debtor).

### B.   Both the Balancing Test and the Sonnax Factors Require Modification of the Automatic Stay to Permit this Creditor to Continue to Judgment

15.   All of the relevant factors under the three-pronged test and Sonnax mandate modification of the automatic stay to permit this Creditor to proceed to judgment in the state Superior Court. First, this Court should allow the California Court to decide the issues of state real property law. When the bankruptcy court cannot adjudicate pre-petition claims, the stay should be modified to permit the action to continue in the original court. See In re Cooke 2007 WL 2102687, at *3.

16.   Furthermore, severe prejudice to Creditor may result if the stay is not modified. The action has been pending over a year and a half. Further delay would effectively prevent justice and reward Debtor for its delay. In contrast, neither the Debtor not the chapter 11 estate will be prejudiced in any significant degree, not will material burdens be imposed on the Debtor, if the Court permits the state Superior Court action to proceed in the state court. In their bankruptcy filings, Debtor indicated

that sufficient assets exist to pay unsecured claims, and Debtor intends to continue operations after the conclusion of the bankruptcy. *See Voluntary Petition of GMAC Mortgage, LLC.*

17.  Relief from the automatic stay will ensure judicial economy and will allow the most efficient and expeditious resolution of this Creditor's claims, which were pending in the state court before the bankruptcy petitions were filed. In similar circumstances, courts have frequently modified the automatic stay to allow prepetition litigation to continue where discovery not required or had already taken place. *See* In re Fischer (1996) 202 B.R. 341, 355 (granting stay relief to allow civil RICO claims to proceed where discovery was near completion); In re Rexene (1992) 141 B.R. 574 (granting relief from stay where document discovery had been completed and only a few depositions remained).

18.  Modifying the stay to allow this Creditor to continue would be the most efficient and cost effective way to achieve complete resolution of the issues raised in this case. This creditor has alleged claims against other defendants based on the same facts at issue in the claims against the Debtor, and only the state trial court may render a judgment binding on all parties in that state court action. *See* New York Med. Group (2001) 265 B.R. 408, 413 (modifying the stay to allow prepetition litigation to continue where only state court could render complete judgment). While it is possible that the litigation against the non-debtor defendant could proceed if the claims against them are severed from the claims against the Debtor, it would be extremely expensive and inefficient to force this Creditor to try the case twice against two sets of defendants, and it would be unfair to force this Creditor to wait indefinitely to obtain recovery from the Debtor's insurance when the burden on the Debtors of permitting the trial to go forward is minimal. For these reasons, judicial economy and the interest in expediting complete resolution of the issues raised by this Creditor requires that claims that may be decided in a non-bankruptcy court be resolved in the non-bankruptcy courts in

which the claims were commenced. See <u>In re Larkham</u> (1983) 31 B.R. 273, 276; <u>In re Cooke</u> (2007) 2007 WL 2102687 at *3.

19. The automatic stay should be modified where the purposes of section 362(a) of the Bankruptcy Code would not be served by leaving the stay in effect. *See e.g.* <u>In re Continental Airlines, Inc.</u> (1993) 152 B.R. 420, 426 (finding cause to lift the automatic stay to permit movant in federal district court). In this case, enforcing the automatic stay would not promote any of the general policies of the Bankruptcy Code (i.e. "protect[ing] property that may be necessary for the debtor's fresh start and… provid[ing] the dismemberment of a debtor's assets by individual creditors levying on the property." <u>Collier on Bankruptcy</u> § 362.03 at 362-13 (15th ed. Rev. 2006).

20. Finally, policy concerns mandate modification of the automatic stay in this case. In enacting the Bankruptcy Code, Congress noted that, while the automatic stay had broad application, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere." <u>In re Holtkamp</u> (1982) 669 F.2d 505, 508 (citing S. rep. No. 989, 95th Cong. 2d Sess. 50). Here, it would increase efficiency to have the claims outlined above, which involve California state law.

21. A discharge in bankruptcy does not affect the liability of insurers and does not prevent an injured party from establishing the insurers' liability by proceeding against a discharged debtor. <u>Houston v. Edgeworth (In re Edgeworth)</u>, 993 F.2d 51, 53-55 (5th Cir. 1993).

THEREFORE, for the above-stated reasons, this Creditor should be granted Relief from the Automatic Stay to pursue his claims against Debtor in state court.

Dated: January 10, 2013

_____
Richard Sax
Attorney for movant/creditor Julio Solano