**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**STIPULATION AND PROPOSED ORDER WITH RESPECT TO (A) THE AMENDED AND RESTATED MASTER MORTGAGE LOAN PURCHASE AND SALE AGREEMENT BY AND BETWEEN GMAC MORTGAGE LLC AND ALLY BANK AND (B) CLIENT CONTRACT BETWEEN GMAC MORTGAGE, LLC AND ALLY BANK**

Subject to the approval of the Court, this stipulation (the "*Stipulation*") is entered by and between debtor GMAC Mortgage, LLC ("*GMACM*") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (each a "*Debtor*" and collectively, the "*Debtors*"), and Ally Bank ("*Ally Bank*," together with its non-debtor affiliates and subsidiaries, collectively, "*Ally*").

WHEREAS, Ally Bank and GMACM are parties (the "*Parties*") to a certain Client Contract and Addendum dated as of November 29, 2011, (the "*Client Contract*"), whereby Ally Bank originates certain residential mortgage loans for which GMACM has submitted brokered mortgage application packages pursuant to the terms and conditions of the Client Contract and the related GMAC Bank Client Guide (the "*Client Guide*");

WHEREAS, by and through the Client Contract, GMACM agreed to maintain certain compliance obligations under the Client Guide, Commitment Letters, and related documents (together with the Client Contract, the "*Program Documents*");

WHEREAS, Ally Bank and GMACM are also parties to a certain Amended and Restated Master Mortgage Loan Purchase and Sale Agreement (FHA, USDA and VA Residential

Mortgage Loans) dated as of May 1, 2012, and amended on December 31, 2012 (the "**MMLPSA**"), whereby Ally Bank sells, and GMACM purchases, certain mortgage loans originated or acquired by Ally Bank;

WHEREAS, on May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief with the United States Bankruptcy Court for the Southern District of New York (the "**Court**");

WHEREAS, on July 25, 2012, the Court entered the *Final Order Under Sections 105(A), 363, 364, 503(B), 1107(A), and 1108 of the Bankruptcy Code Authorizing the Debtors to (I) Process and Where Applicable Fund Prepetition Mortgage Loan Commitments, (II) Continue Brokerage, Origination and Sale Activities Related to Loan Securitization, (III) Continue to Perform, and Incur Postpetition Secured Indebtedness, Under the Mortgage Loan Purchase and Sale Agreement with Ally Bank and Related Agreements, (IV) Pay Certain Prepetition Amounts Due to Critical Origination Vendors, and (V) Continue Honoring Mortgage Loan Repurchase Obligations Arising In Connection With Loan Sales and Servicing, Each In the Ordinary Course of Business* [Docket No. 898] (the "**Final GNMA Origination Order**");

WHEREAS, under the Final GNMA Origination Order, GMACM has continuing authority to operate in the ordinary course of business, including transacting the purchase, sale, and securitization of mortgage loans with Ally Bank under the Client Contract and the MMLPSA;

WHEREAS, under the Final GNMA Origination Order, Ally Bank was granted limited relief from the automatic stay to terminate the MMLPSA, subject to the terms and conditions thereof;

WHEREAS, on November 21, 2012, the Court entered an *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006 and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "***Ocwen Platform Sale***"), approving the sale of the Debtors' servicing platform;

WHEREAS, under Section 6.1 of the MMLPSA, the MMLPSA shall terminate without cause on the date that is the earlier of (i) January 7, 2012, and (ii) the date on which GMACM has in place all authorities, systems and procedures necessary to originate residential mortgage loans to be endorsed and included in pools of mortgage loans backing Ginnie Mae securities;

WHEREAS, the Client Contract requires GMACM to comply with the terms and conditions of the Program Documents, including the representations, warranties, and covenants thereto. The Client Contract also provides that the Parties may terminate the Client Contract and the Program Documents by giving the other party thirty (30) days written notice. Moreover, Ally Bank may suspend, inactivate, or terminate the Client Contract and the Program Documents immediately if GMACM defaults on any of its obligations under the Client Contract or Client Guide or any other agreements between GMACM and Ally Bank, and such default is not cured within thirty (30) business days after notice is provided to GMACM of such default. And Ally Bank may refuse to register or fund any or all loans after the effective date of the suspension, inactivation, or termination;

WHEREAS, Ally Bank informed GMACM via correspondence from the Chief Executive Officer of Ally Bank on December 13, 2012, of certain compliance deficiencies of GMACM

3

under the Program Documents (the "***Specified Compliance Issues***");

WHEREAS, the Chief Executive Officer of Residential Capital, LLC responded to Ally Bank's correspondence detailing the significant efforts undertaken to resolve and otherwise remedy the identified deficiencies on an expedient basis;

WHEREAS, on January 4, 2013, the Parties agreed to the Third Amendment to the MMLPSA (the "***Amendment***"), a form of which is annexed hereto as **Exhibit A**, subject to approval by the Ally Bank board of directors and approval of the Court pursuant to the Amendment and this Stipulation, which extends the date on which the MMLPSA will automatically terminate without further order of the Court until the earlier of (i) the date on which the Ocwen Platform Sale closes, and (ii) the date on which GMACM has in place all authorities, systems and procedures necessary to originate residential mortgage loans to be endorsed and included in pools of mortgage loans backing Ginnie Mae securities, provided that GMACM remediates the Specified Compliance Issues pursuant to the terms of this Stipulation;

WHEREAS, the Parties further agree that, notwithstanding anything in the Client Contract to the contrary, the Client Contract will automatically terminate without further notice or order of the Court on the earlier of (i) termination of the MMLPSA, (ii) failure by GMACM to remediate the Specified Compliance Issues, and (iii) failure by GMACM to remediate any other compliance deficiencies under the Program Documents, pursuant to the terms of this Stipulation.

NOW THEREFORE, it is hereby STIPULATED and AGREED by the Parties that:

1. Subject to the terms of this Stipulation, the Debtors are authorized and directed to continue to perform under the terms of the MMLPSA and Client Contract, as modified by this Stipulation and the Amendment, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code.

2.     GMACM shall provide Ally Bank with documentation reasonably acceptable to Ally Bank evidencing full remediation of the Specified Compliance Issues in accordance with the Program Documents, this Stipulation, and the Amendment by January 31, 2013, other than Internal Audit Issue #11-058.1, <u>provided</u> that GMACM shall provide Ally Bank with documentation reasonably acceptable to Ally Bank evidencing full remediation of Issue Number SI-2012-RCSA-MO-3330 as detailed in the Specific Compliance Issues by March 31, 2013. The foregoing dates may be extended to future dates at Ally Bank's sole discretion.

3.     If GMACM does not remediate all Specified Compliance Issues in accordance with this Stipulation, notwithstanding any provision of the MMLPSA or the Client Contract, Ally Bank is granted limited relief from the automatic stay to terminate the Client Contract and the MMLPSA with cause pursuant to section 6.2(h) of the MMLPSA upon three (3) business days notice to GMACM, which such notice shall be filed with the Court. For the avoidance of doubt, the MMLPSA and the Client Contract shall automatically terminate, without further notice or order of the Court, upon the date on which the Ocwen Platform Sale closes.

4.     GMACM shall comply with all of the terms and conditions of the Program Documents. Ally Bank is granted limited relief from the automatic stay to provide GMACM with notice of any failure to comply with the terms and conditions of the Program Documents. Following the delivery of such notice, GMACM shall have thirty (30) days to provide Ally Bank with an action plan that satisfies the standards set forth in that certain Ally Bank Compliance Risk Management Program. Following the receipt of such action plan, Ally Bank shall deliver within fourteen (14) days to GMACM a notice that the action plan satisfies the standards of the Ally Bank Compliance Risk Management Program or the details of any deficiencies of such action plan, and is granted limited relief from the automatic stay to deliver such notice.

Following the receipt of a notice from Ally Bank of any deficiencies in a proposed action plan, GMACM shall have fourteen (14) days to cure any of the detailed deficiencies in the proposed action plan (collectively, the "***Compliance Cure Process***").

5. Notwithstanding any provision of the Client Contract or the MMLPSA, Ally Bank is granted limited relief from the automatic stay to terminate the Client Contract and the MMLPSA for cause pursuant to section 6.2(i) of the MMLPSA on three (3) business days' notice that GMACM failed to remediate any failure to comply with the terms and conditions of the Client Contract, Client Guide, and any other Program Documents (other than the Specified Compliance Issues) in accordance with an action plan that satisfies the standards of the Ally Bank Compliance Risk Management Program reasonable acceptable to Ally Bank in the time period specified therein, or such additional time period provided by Ally Bank at Ally Bank's sole discretion, or fails to submit an action plan that satisfies the standards of the Ally Bank Compliance Risk Management Program, pursuant to the Compliance Cure Process.

6. Notwithstanding anything in the Client Contract to the contrary, the Client Contract will automatically terminate, without further order of the Court, upon the termination of the MMLPSA, <u>provided</u> that Ally Bank agrees not to deliver any termination notice without cause pursuant to section 6.1(a) of the MMLPSA or other Program Documents until after January 31, 2013.

7. Notwithstanding anything in the MMLPSA to the contrary, the MMLPSA will automatically terminate, without further order of the Court, upon the termination of the Client Contract.

8. Notwithstanding the termination of the Client Contract and MMLPSA (whether for cause or otherwise), Ally Bank agrees to use commercially reasonable efforts to wind down

all locked commitments or mortgage loans subject to outstanding confirmations in order to prevent harm to consumers.  In the event of such termination, GMACM agrees to purchase pursuant to the terms of the MMLPSA (i) Mortgage Loans (as defined in the MMLPSA) subject to the terms and conditions of any outstanding confirmation issued prior to the effective date of such termination (including mortgage loan commitments made by Ally Bank but not yet funded), and (ii) Mortgage Loans (as defined in the MMLPSA) that are subject to locked commitments issued prior to the effective date of such termination, and shall use commercially reasonable efforts to wind down such Mortgage Loan confirmations and locked commitments.

9. Notwithstanding the termination of the Client Contract and MMLPSA (whether for cause or otherwise), GMACM agrees to use commercially reasonable efforts to cause the remediation of any outstanding compliance deficiencies under the Program Documents, including any Specified Compliance Issues that have not yet been remediated, that exist on the date of termination.

10. The Debtors and Ally Financial Inc. agree to use commercially reasonable efforts to assist in or cause the execution of those certain Transition Services Agreements (and all related statements of work) among (i) Ocwen Loan Servicing, LLC, Walter Investment Management Corp., and Ally Financial Inc., and among (ii) the Debtors, Ocwen Loan Servicing, LLC, and Walter Investment Management Corp. by January 31, 2013.  Notwithstanding any provision in the MMLPSA or the Client Contract, Ally Bank is granted limited relief from the automatic stay to terminate the MMLPSA and Client Contract on seven (7) days notice of failure by the Debtors to cause the execution of such Transition Services Agreements by January 31, 2013, _provided_ that such termination notice shall be waived if the Transition Services

7

Agreements are executed within the seven (7) day termination notice period, <u>further provided</u> that the January 31, 2013, date may be extended to another date at Ally Bank's sole discretion.

11. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation.

12. This Stipulation shall be binding on the Parties upon execution and approval by this Court, and any prior agreements between the Debtors and Ally Bank shall not in any way alter, modify, or affect the terms of this Stipulation.

13. This Stipulation shall not alter or affect past Court orders, including the Final GNMA Origination Order.

14. The Amendment to the MMLPSA shall not be effective unless and until the Court approves this Stipulation. However, Ally Bank agreed to extend termination date of the MMLPSA to January 11, 2013, to allow the Debtors to obtain Court approval and provided this Stipulation is filed with the Court and set for presentment on or before January 11, 2013.

[*Remainder of page intentionally left blank.*]

15. In the event of any inconsistency among the terms of this Stipulation, the provisions in the MMLPSA as amended by the Amendment, and the Client Contract, then the terms of this Stipulation shall govern.

Dated: January 4, 2013

/s/ Todd M. Goren
Gary S. Lee
Todd M. Goren

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and Debtors in Possession*

Dated: January 4, 2013

/s/ Ray C. Schrock
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
Craig A. Bruens

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: 212-446-4800
Facsimile: 212-446-4900

*Counsel to Ally Financial Inc. and Ally Bank*

**IT IS SO ORDERED**

Dated: January 11, 2013
     New York, New York

                    **/s/Martin Glenn**
                    MARTIN GLENN
                    United States Bankruptcy Judge

9

**Exhibit A**

**Form of Third Amendment to the Amended and Restated
Master Mortgage Loan Purchase and Sale Agreement**

EXECUTION VERSION

# THIRD AMENDMENT TO AMENDED AND RESTATED
# MASTER MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

This Third Amendment (the "Amendment") to the Amended and Restated Master Mortgage Loan Purchase and Sale Agreement (FHA, USDA and VA Residential Mortgage Loans) dated as of May 1, 2012, and amended on December 31, 2012 and January 3, 2013 (the "Agreement"), is made as of January [ ], 2013, by and between GMAC MORTGAGE, LLC, a Delaware limited liability company ("Purchaser" or "GMACM") and ALLY BANK, a state bank organized and existing under the laws of the State of Utah ("Seller").

**Explanatory Statement**

A.  Ally Bank and GMACM are parties to (1) the Client Contract and Addendum dated November 29, 2011 (the "Client Contract"), whereby Ally Bank originates certain residential mortgage loans for which GMACM has submitted brokered mortgage application packages pursuant to the terms and conditions of the Client Contract and the related Client Guide, and (2) this Agreement, whereby Ally Bank sells, and GMACM purchases, certain Mortgage Loans originated or acquired by Ally Bank.

B.  Pursuant to Section 6.1, the Agreement, as amended, shall terminate without cause on the date that is the earlier of (i) January 11, 2013, or (ii) the date on which GMACM has in place all authorities, systems and procedures necessary to originate residential mortgage loans to be endorsed and included in pools of mortgage loans backing Ginnie Mae securities.

C.  By letter dated December 13, 2012 (the "December 13, 2012 Letter"), Ally Bank provided GMACM with a detailed list of regulatory compliance deficiencies and defects (the "Specified Compliance Issues") relating to the consumer loan brokerage activities of GMACM.  By response letter dated December 21, 2012, GMACM provided Ally Bank with the details of the significant efforts undertaken to resolve and otherwise remedy the identified deficiencies in the December 13, 2012, Letter on an expedient basis.

D.  The parties wish to extend the date on which the Agreement will expire until the earlier of (i) the date on which the Ocwen Platform Sale closes, or (ii) the date on which GMACM has in place all authorities, systems and procedures necessary to originate residential mortgage loans to be endorsed and included in pools of mortgage loans backing Ginnie Mae securities.  The Seller agrees to extend the expiration of the Agreement provided that GMACM remediates the Specified Compliance Issues and any other failure of GMACM to comply with the Client Contract, Client Guide, and any other Program Documents as provided for in this Amendment.

E.  The parties have agreed to a stipulation (the "Stipulation) granting limited relief from the automatic stay to, among other things, enable the Seller to terminate the Agreement as provided in this Amendment and the Stipulation.

F.  All capitalized terms not defined herein shall have the meanings ascribed to them in the Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and promises expressed herein, the parties hereto, intending to be legally bound, hereby agree as follows.

1. Amendments to the Agreement.

A. Seller and Purchaser hereby agree that, effective as of the Effective Date, Section 6.1 of the Agreement shall be deleted in its entirety and replaced with the following:

    6.1 **Termination without Cause.**

        (a) Seller or Purchaser may terminate this Agreement without cause on 30 days prior written notice (such notice in compliance with Section 7.4 below) to the other party.

        (b) This Agreement shall also terminate without cause on the date that is the earlier of (i) the date on which the Ocwen Platform Sale closes, or (ii) the date on which Purchaser has in place all authorities, systems and procedures necessary to originate residential mortgage loans to be endorsed and included in pools of mortgage loans backing Ginnie Mae securities.

        (c) Following the effective date of any such termination, Purchaser will purchase (i) Mortgage Loans subject to the terms and conditions of any outstanding Confirmation issued prior to such effective date (including Mortgage Loan commitments made by Seller but not yet funded) and (ii) Mortgage Loans that are subject to Locked Commitments issued prior to such effective date, and both Purchaser and Seller shall use commercially reasonable efforts to wind down such Mortgage Loans Confirmations and Locked Commitments. In addition, notwithstanding any termination of the Agreement, Purchaser shall use commercially reasonable efforts to cause the continuation of any remaining remediation required as to any Specified Compliance Issues that exist as of the termination date.

B. Seller and Purchaser hereby agree that, effective as of the Effective Date, Section 6.2 of the Agreement shall be amended by deleting the words "and/or" in Section 6.2(f).

C. Seller and Purchaser hereby agree that, effective as of the Effective Date, Section 6.2 of the Agreement shall be amended by deleting the period at the end of Section 6.2(g) and replacing it with a semi-colon.

D. Seller and Purchaser hereby agree that, effective as of the Effective Date, Section 6.2 of the Agreement shall be amended by inserting the following new Section 6.2(h):

2

(h) Purchaser fails to provide Seller with documentation reasonably acceptable to Seller evidencing full remediation of the Specified Compliance Issues in accordance with the Client Contract, Client Guide, and any other Program Documents by January 31, 2013, other than Internal Audit Issue #11-058.1, <u>provided</u> that Purchaser shall provide such documentation with respect to that Issue Number SI-2012-RCSA-MO-3330 as detailed in the Specific Compliance Issues by March 31, 2013. The foregoing dates may be extended to future dates at Ally Bank's sole discretion; and/or

E. Seller and Purchaser hereby agree that, effective as of the Effective Date, Section 6.2 of the Agreement shall be amended by inserting the following new Section 6.2(i):

(i) Purchaser fails to remediate any failure to comply with the terms and conditions of the Client Contract, Client Guide, and any other Program Documents (other than the Specified Compliance Issues) in accordance with an action plan that satisfies the standards of the Ally Bank Compliance Risk Management Program reasonably acceptable to Seller in the time period specified therein, or such additional time period provided by Seller at Seller's sole discretion, or fails to submit an action plan that satisfies the standards of the Ally Bank Compliance Risk Management Program, pursuant to the "Compliance Cure Process" described herein. The Compliance Cure Process means that:

(1) Seller shall provide Purchaser with notice of any failure to comply with the terms and conditions of the Client Contract, Client Guide, and any other Program Documents.

(2) Purchaser shall have thirty (30) days following the delivery of such notice to provide Seller with an action plan that satisfies the standards set forth in that certain Ally Bank Compliance Risk Management Program.

(3) Following the receipt of such action plan, Seller will deliver within fourteen (14) days to Purchaser a notice that the action plan satisfies the standards of the Ally Bank Compliance Risk Management Program or the details of any deficiencies of such action plan.

(4) Following the receipt of a notice from Seller of any deficiencies in a proposed action plan, Purchaser shall have fourteen (14) days to cure any of the detailed deficiencies in the proposed action plan.

2. <u>Agreement Remains in Effect</u>. Except as otherwise specifically set forth in Section 1 above, no other provision of the Agreement is being amended hereby, and all other terms, provisions and conditions of the Agreement shall remain in full force and effect without modification or amendment.

3. **<u>Governing Law</u>. THIS AMENDMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CHOICE OF LAW DOCTRINE).**

4.      **Waiver of Jury Trial.**  EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING RELATING TO THIS AMENDMENT.

5.      Amendments.  An amendment, modification or waiver in respect of this Amendment will only be effective if in writing (including a writing evidenced by facsimile transmission) and executed by each of the parties or confirmed by an exchange of electronic messages on an electronic messaging system.

6.      Counterparts.  This Amendment may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  Signatures of the parties transmitted electronically or by facsimile shall be deemed to be their original signatures for all purposes.

7.      Effectiveness Pending Court Approval.  This Amendment shall not be effective unless and until the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), approves the Amendment and the Stipulation (the "Effective Date").

[SPACE INTENTIONALLY LEFT BLANK, SIGNATURES FOLLOW]

IN WITNESS WHEREOF, the parties have executed this Amendment in two counterparts by their duly authorized representatives the day first above written.

Purchaser:

GMAC MORTGAGE, LLC

By: _____
    Name:
    Title:

Seller:

ALLY BANK

By: _____
    Name:
    Title:

*[Signature Page to MMLPSA Amendment]*