Hearing Date:  January 16, 2013 at 10:00 a.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY TO (I) OBJECTION OF THE UNITED STATES TRUSTEE
AND (II) RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO DEBTORS' MOTION FOR A SUPPLEMENTAL
ORDER UNDER BANKRUPTCY CODE SECTIONS 363, 1107(a) AND 1108
TO THE FINAL WAGES ORDER AUTHORIZING THE DEBTORS
TO MAKE PAYMENTS TO THEIR EMPLOYEES UNDER THE RESIDENTIAL
CAPITAL, LLC ANNUAL INCENTIVE PLAN**

ny-1073014

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Debtors, by and through their undersigned counsel, Morrison & Foerster LLP, hereby submit their reply (the "**Reply**") to (i) the Objection of the Office of the U.S. Trustee [Docket No.2600] (the "**UST Objection**") and (ii) the Reservation of Rights of the Official Committee of Unsecured Creditors [Docket No. 2609] (the "**Committee Reservation**") to the Debtors' *Motion for Supplemental Order Under Sections 363, 1107(a) and 1108 To The Final Wages Order Authorizing The Debtors To Make Payments To Their Employees Under The Residential Capital, LLC Annual Incentive Plan* (the "**Motion**") [Docket No. 2520].[1]  In support thereof, the Debtors rely, in part, on the Supplemental Declaration of Anne Janiczek, dated January 14, 2013 (the "**Janiczek Supp. Decl.**"), which is filed contemporaneously herewith.  In further support thereof, the Debtors respectfully allege as follows:

## INTRODUCTION

1. AIP has historically been, and remains, a component of an employee's annual compensation.  The Debtors have utilized AIP as an incentive-driven compensation mechanism for their employees for nearly twenty years, and the plan operates the same way today.  For the 2012 calendar year, 3,035 people, which amounts to more than 3 of every 4 of the Debtors' employees, are eligible to receive AIP awards, including employees previously included in the KEIP and KERP programs.  To be clear, because AIP has always been a part of an employee's annual compensation, the Debtors' employees (not in a variable pay plan) have come to rely on the payment of an AIP award provided that they achieve the defined goals set for them by their supervisor at the beginning of the calendar year.[2]

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[2]  The "target" AIP award is communicated to the employee in February at the same time when their manager defines their objectives for the year; however, the final award is not determined until the end of the year when the manager

ny-1073014

2. As the Debtors' creditors previously acknowledged, and as described in greater detail in the Motion, this is a "good performing company."[3] The Debtors' accomplishments throughout 2012 were significant and would not have been possible if the employees did not have substantially similar compensation opportunities this year as they did in years past, including the ability to receive AIP at the accrued amounts approved by the Compensation Committee. Accordingly, from the outset of these Chapter 11 cases, the Debtors have made it abundantly clear that all of their employees would have similar compensation opportunities as they did before the bankruptcy filing, including being eligible to receive an annual incentive payment in addition to their base salary.

3. Before the filing, certain individuals took on new roles with enhanced responsibilities entitling them to augmented base salaries and as a result, certain individuals have the opportunity to receive more in aggregate compensation for 2012 than in 2011. Throughout 2012, the Debtors have maintained the world-class and highly-ranked servicing and originations businesses, and also encountered the challenges of separating their operations from those of their parent and preparing for what turned out to be two platform sales. Therefore, the Debtors assert that the circumstances of these Chapter 11 cases warrant higher compensation amounts for such employees.

4. It would appear from the UST Objection[4] and the Committee Reservation that the only dispute is to the Debtors' determination to pay AIP to employees in the KEIP/KERP. First, the Debtors wish to clarify that despite assertions to the contrary in the UST Objection, at the time the KEIP/KERP programs were proposed, the Debtors both disclosed that the covered employees would have the <u>ability</u> to earn an AIP award, and provided parties-in-interest with target AIP awards for the

---

performs his or her evaluation of the employee's performance over the past year. *See* Janiczek Decl. (*in support of AIP Motion*), D.E. 2520-1 at ¶¶ 9-11.

[3]   *See* Transcript of August 8, 2012 Hearing on the Debtors' motion for approval of the KEIP and KERP programs (D.E. No. 812, the "**KEIP/KERP Motion**") at 54:20 (hereinafter, "Hr'g Tr. at __").

[4]   The UST did not take a position on whether the group of 2800+ employees not included in the KEIP and KERP populations should be entitled to receive AIP payments. It deferred to the Creditors' Committee on this point. In its submission to the Court, the Creditors' Committee represents that it has no objection to the AIP awards being made to

KEIP and KERP participants. The KEIP/KERP programs were priced so that the aggregate annual compensation, including the key employee awards, would be consistent with the company's historical market compensation target. In fact, in recognition of this Court's comments in connection with its analysis of the proposed KEIP/KERP Motion, the Debtors took the proactive approach to reduce the AIP pool for KEIP participants by 30% for 2012, and after discussions with the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") over the past several days, the Debtors have agreed to further reduce the aggregate AIP pool for KEIP and KERP participants by an additional 10%, which results in (i) an overall reduction of the AIP pool for KEIP participants by 37% and (ii) a reduction of the AIP pool for KERP participants by 10%, as compared to the AIP pool for those same individuals in 2011.

5. Accordingly, the proposed AIP funding levels are appropriate under the circumstances of these Chapter 11 cases, represent a reasonable exercise of the Debtors' business judgment and should be approved by the Court. Therefore, the Debtors respectfully request that the Court grant the relief requested in the Motion. The Debtors will also be continuing to review with the Creditors' Committee the size of an acceptable AIP pool for the KEIP and KERP participants in order to gain their support for the Motion. The Debtors remain hopeful that the additional reduction of 10% of the AIP pool for KEIP and KERP participants will be satisfactory to the Creditors' Committee.

## THE OBJECTION & RESERVATION OF RIGHTS

### A. *U.S. TRUSTEE'S OBJECTION*

6. On January 10, 2013, the Office of the U.S. Trustee for the Southern District of New York ("**UST**") filed the UST Objection. The UST proffers four arguments, and it is wrong on all counts. First, the UST argues that the AIP is not an ordinary course transaction. The UST fails to

---

these individuals. *See* Committee Reservation at 2. Therefore, the Debtors respectfully request that the Court grant the

3

ny-1073014

acknowledge that the Debtors maintained their operations throughout 2012 and (subject to the Court's approval of paying the award amounts) are administering the AIP program this year as they have for the past twenty years, which is the definition of ordinary course. *See In re Dana Corp.,* 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006) ("[A] short-term incentive plan has been a common component of compensation plans for the past fifty years and does not differ significantly from Dana's prepetition practice. Accordingly, it is within the ordinary course of Debtors' business."). Second, the UST argues that the Debtors advised the Court that the KEIP/KERP payments constituted the entirety of the retentive and incentive payments to those recipients. This is entirely inaccurate and unfairly so, as a mere review of the KEIP/KERP record makes it abundantly clear that the Debtors always intended to provide key employees with the opportunity to receive an AIP award, subject to Court approval, as well as KEIP or KERP awards. Third, the UST asserts that the AIP payments are retentive payments as it pertains to the insiders, but the UST fails to point to any facts in the record that suggest these payments are made to employees to ensure they remain employed with the Debtors, when in fact the record is quite clear that these payments are incentive-based to reward employees for past performance – indeed, 2012 is over. Finally, the UST argues that the AIP payments to the KEIP and KERP recipients are not justified by the circumstances of the case, when in fact the record makes it very clear that employees have made extraordinary contributions throughout 2012, that AIP bonuses have been paid for 20 years, and that it is entirely appropriate and reasonable to provide employees with the same compensation opportunities as they have had in the past.

### i. *AIP Is An Ordinary Course Transaction*

7.    AIP is an incentive plan that motivates employees to produce the best results throughout the year in the hopes of being rewarded for their efforts at year end. *See* Janiczek. Supp.

---

Motion as to the non-KEIP/KERP population.

Decl. at ¶ 7. In the financial services industry in which the Debtors operate, AIP-type programs are considered by employees to be a material part of their annual compensation provided the employee performs consistent with the standards established by his or her supervisors to justify the payment of AIP. *See Id*. at ¶ 6. It is undisputed that in 2012 the Debtors continued their operations as a going concern. The Debtors continued servicing loans at levels consistent with prior years, continued brokering and originating loans, even while operating under bankruptcy protection, and the Debtors' employee population grew from 2011 in order to establish a free-standing platform that could be transferred to an interested third party. *See* Mack Decl. at ¶6-11. At the end of 2012, as a result of the collective efforts of the Debtors' employees, the Debtors had accomplished one of their primary goals - - maintaining a going-concern entity that could be transferred to an interested third-party purchaser. *See* Janiczek. Supp. Decl. at ¶ 7. These are not indicia of a company undergoing liquidation; but rather, evidence of a company continuing its business as a going concern, while also preserving its assets, in order to deliver maximum value to its creditors as part of a going-concern asset sale.

8.      The UST proffers an overly broad and unsupported generalization that even if the AIP is a longstanding plan, by "ignoring whether a company expects to continue to operate as compared to a company planning to liquidate, [the Debtor] misapplies the two step horizontal and vertical tests." *See* UST Objection at 9. The lack of foundation for this statement is demonstrated by the statement that follows in which the UST proffers that, "[i]t **appears** to be inappropriate to compare bonus or incentive plans for operating companies with companies undergoing liquidation." *Id*. (emphasis added). The UST is attempting to create a distinction where none exists, and its statements are not supported by caselaw or objective evidence. Moreover, the UST's statements ignore the evidence set forth in the Motion as well as the events that have transpired throughout 2012.

ny-1073014

9. The UST does not offer any evidence to suggest that the Debtors have not otherwise met the horizontal-vertical test. In fact, the UST acknowledges that "the AIP proposed herein might satisfy the two-step horizontal and vertical test as an ordinary course transaction for a company continuing its operations…." *See* UST Objection at 9. Therefore, the uncontroverted evidence before the Court clearly demonstrates that the Debtors successfully maintained their operations as a going concern throughout 2012 and continue to do so today. Accordingly, the Debtors respectfully request that the Court find the AIP to be a transaction undertaken in the ordinary course of the Debtors' business pursuant to 11 U.S.C. §363(c).

### ii. *The Debtors Always Preserved Their Ability to Propose AIP Awards To All of Their Eligible Employees – Even Those In The KEIP & KERP*

10. The UST incorrectly states that the "underlying assumption of the Court and the United States Trustee was that the contemplated KEIP/KERP payments constituted the entirety of the retentive and incentive payments to the recipients." *See* UST Objection at 10. The UST mischaracterizes the record before the Court in connection with the KEIP/KERP Motion. In fact, the record is abundantly clear that both before and during the KEIP/KERP proceedings, the Debtors disclosed to the Court and all parties-in-interest that the KEIP/KERP programs were additive to the AIP. In addition, the Debtors clearly preserved their right to come back to this Court, pursuant to the terms of the Wages Order, and seek approval to pay the AIP to its employees. Therefore, to be absolutely crystal clear, the UST's assertions are not simply incorrect, but also improper and unfair.

11. Neither the Debtors' filings nor their representations to the Court ever suggested that the KEIP/KERP awards were intended to replace the Debtors' discretionary pay awards, such as the AIP. Rather, the Debtors asserted that the KEIP/KERP programs were necessary to keep the employees motivated for the sale process and because the AIP awards were discretionary, not

6

ny-1073014

guaranteed and remained subject to the Court's approval.[5] As stated at numerous points throughout the KEIP/KERP proceedings, the KEIP/KERP awards only replaced a prepetition program called the "BCIP."[6] In fact, in her supplemental declaration in support of the Debtors' reply to objections to the KEIP/KERP Motion, *see* Exhibit 1 to D.E. 1005-4, Ms. Janiczek identifies the estimated AIP payments for both KEIP and KERP participants. In addition, on August 10, 2012, less than 48 hours after the conclusion of the KEIP/KERP hearing, the Debtors provided the UST, the Court and counsel to the Creditors' Committee with a spreadsheet[7] identifying the 2012 compensation opportunities for the KEIP participants (which included the estimated KEIP award, the <u>estimated</u> AIP/LTECIP award, and base salary) and compared those figures to the individuals' 2010 and 2011 total compensation packages. The fact that the KEIP/KERP participants remained eligible for AIP payments was never hidden from the Court or any party-in-interest.

12. The UST faults the Debtors for not disclosing those portions of the aggregate AIP pool being allocated to the KEIP and KERP participants. At the time the Motion was filed, it was estimated that $17.6mm of the total $33.4mm AIP pool is slated to go to the KEIP and KERP participants. Approximately $5.3mm will go to the KEIP individuals,[8] and approximately $12.3mm will go to the KERP individuals. *See* Janiczek. Supp. Decl. at ¶ 10. Under separate cover (and before the filing of this Reply), the Debtors provided the UST with a current schedule of the estimated award opportunities for each of the individuals in the KEIP and KERP as well as a

---

[5] *See*, *e.g.*, KEIP/KERP Motion, D.E. 812 at ¶ 21 ("The Debtors cannot pay any Discretionary Variable Pay without further order of the Bankruptcy Court."); Greenspan Decl. (*in support of KEIP/KERP Motion*), D.E. 812-2 at ¶15 ("The Discretionary Variable pay awards are just that, discretionary."); KEIP/KERP Reply, D.E. 1005 at ¶¶26, 32; Dempsey Supp. Decl. (*in support of KEIP/KERP Reply*), D.E. 1005-3 at ¶¶10, 11; Janiczek Supp. Decl. (*in support of KEIP/KERP Reply*), D.E. 1005-4 at ¶35; Hr'g Tr. at 66:20-25.

[6] *See*, *e.g.*, Greenspan Decl. (*in support of KEIP/KERP Motion*), D.E. 812-2 at ¶26; Janiczek Decl. (*in support of KEIP/KERP Motion*), D.E. 812-3 at ¶32;

[7] *See* 478 B.R. 154, 162-63, n.14, in which the Court acknowledges that the Debtors provided the Court, counsel for the Committee and the UST with a letter and a confidential spreadsheet in response to the Court's request for "the total amounts that the seventeen proposed KEIP participants could receive under [AFI LTECIP and the KEIP]" and "how would the total compensation for the seventeen proposed KEIP participants compare to their compensation in prior years?"

[8] The Debtors provided this figure to the UST approximately two weeks before the Motion was filed.

7

ny-1073014

comparison of the total compensation for the KEIP and KERP individuals for 2011 and the estimated amounts for 2012.[9]

### iii. The Debtors' Position Has Always Been That The KEIP & KERP Are Additive To The AIP Award

13.  In order to maintain their world-class operations and preserve their most valuable assets – i.e., the mortgage servicing platform and the loan originations business – the Debtors had to offer their employees the opportunity to receive market-competitive wages and benefits. For those individuals in either the KEIP or KERP populations, this meant seeking the Court's approval of a key employee retention award and also allowing the employee to remain eligible for an AIP award. *See* Dempsey Decl. at ¶11.

14.  A concern voiced by the Court at the hearing on the KEIP/KERP Motion was whether it is appropriate for these individuals to have the opportunity to earn more in 2012 than they earned in 2011. *See* Hr'g Tr. at 58:3-10. The Debtors' firm belief is that it is certainly appropriate to provide their employees an opportunity to receive both a key employee award as well as an AIP award. As Mr. Dempsey affirmed in his supporting declaration – "the design of the KEIP and KERP assumed that the AIP would be paid in addition to the KEIP or KERP awards." *See* Dempsey Decl. (*in support of AIP Motion*), D.E. 2520-3 at ¶10. Mr. Dempsey also noted that it was his experience that for companies involved in mergers and acquisitions in Chapter 11, it was both "reasonable and appropriate to provide individuals considered critical to the preservation of asset value with a retention payment [] in addition to their ordinary annual compensation." *See Id*. at ¶11.

15.  For substantially all of the employees in the KERP, their total direct compensation ("**TDC**," which includes base salary and annual incentive compensation) is the same in 2012 as it was in 2011 because the Compensation Committee of the Debtors' board of directors authorized the

---

[9] The Debtors will provide the same to the Court contemporaneous with the Debtors' filing of this Reply (but for reasons of confidentiality, will not file such information on the docket).

AIP awards to be no greater than the sums paid in 2011.[10] To the extent there is any substantial difference in the aggregate compensation for certain individuals from 2011 to 2012, the most fundamental reason for the improvement is the individual's ability to receive the KERP award for 2012.[11]

16.  Other possible reasons for a year-over-year increase in aggregate compensation from 2011 to 2012 would be because (i) the individual was placed into a role with new and augmented responsibilities as a result of the Debtors' operational separation from AFI, which has required the individual to assume a role and take on duties previously provided by AFI, (ii) the individual has been asked to take on more responsibility and, in order to ensure that the individual's compensation is commensurate with their job responsibilities, their salary was adjusted to correlate to the new, enhanced role in the organization, or (iii) at the outset of 2012, at the recommendation of their supervisor, the individual received a merit increase to his or her base salary. *See* Janiczek. Supp. Decl. at ¶ 13.  Therefore, the Debtors' business reasons for augmenting one's base salary from year-to-year is consistent with general business practices, represents an exercise of reasonable business judgment, and is consistent with the Debtors' efforts to keep its employees' compensation in line with market compensation levels in order to ensure workforce stability and preservation of the business as a going concern.

17.  The Committee Reservation raises a concern about the amounts of the AIP payments for the KEIP participants. *See* Committee Reservation at 2.  As with the KERP, to the extent an individual participating in the KEIP has had their aggregate compensation increase from 2011 to 2012, such an increase is substantially because of the individual's receipt of the KEIP award.

---

[10] For the sake of clarification, to the extent an individual either did not participate in the AIP last year or only received a pro rated amount of AIP because they were not employed with the Debtors for the full year, they will be eligible to receive a full award this year that is consistent with what they could have or would have earned in the prior year.

[11] The Board of Directors recently decided not to authorize merit increases for the Debtors' employees for 2013. *See* Janiczek. Supp. Decl. at ¶ 12.

9

ny-1073014

Recognizing the potential amounts to be earned by the KEIP participants, the Compensation Committee took a proactive approach and authorized a pool for this group in which annual incentive compensation is thirty percent less than the pool made available for these individuals in 2011. Moreover, after discussions with the Creditors' Committee, the Compensation Committee further reduced the aggregate AIP pool for KEIP and KERP participants by an additional 10%. The implication of these decisions is that with limited exceptions, the base salary and annual incentive compensation for KEIP participants is targeted to be lower than in years past. *See* Janiczek. Supp. Decl. at ¶ 8.

18.    Certain of the KEIP participants (8 of 17) did receive modest, pre-petition increases in their 2012 base salary before the filing, but only because these senior officers took on new positions with increased responsibilities as a result of the Debtors separating from AFI throughout 2012. More specifically, as an entity seeking independence from AFI, the Debtors needed to fill certain roles that had been performed previously by AFI. It also meant overseeing additional personnel. The roles to be filled were primarily global functions roles – finance, IT, compliance and risk management, and legal. In addition, the bankruptcy filing also created additional responsibilities for certain individuals, which included overseeing additional employees. *See* Janiczek. Supp. Decl. at ¶ 14.

19.    Notwithstanding the increase in aggregate compensation, the total proposed target 2012 compensation (which includes base salary, AIP and KEIP awards) for the KEIP participants is actually below the market for similarly situated professionals of equal stature. *See* Dempsey Decl. (*in support of AIP Motion*), D.E. 2520-3 at ¶10. Therefore, the proposed AIP payments, when combined with the base salary and all of the estimated KEIP payments for 2012 are in line with the Debtors' historical market compensation targets, *Id*., and may ultimately prove to be lower than

10

ny-1073014

estimated. For example, the Debtors did not meet the threshold Fannie Mae servicer ranking and are not eligible to receive 10% of the aggregate KEIP award.[12] *See* Janiczek. Supp. Decl. at ¶ 15.

### iv.     The Annual Incentive Plan Is Not Retentive

20.     Finally, the UST incorrectly asserts that the Debtors are required to satisfy section 503(c) in order to make payments under the AIP. *See* Objection at 11. As already stated, AIP is an ordinary course transaction, and section 503(c) does not apply. *See In re Dana Corp.,* 358 B.R. at 581 (debtors' use of prepetition short-term incentive plan, which had been used for fifty years, is ordinary course). Even if section 503(c) of the Bankruptcy Code does apply to the AIP payments, neither section 503(c)(1) nor 503(c)(3) prohibits the Debtors from making these payments. Section 503(c)(1) of the Bankruptcy Code is not implicated by the AIP because these payments are not being made for the purpose of inducing these employees to remain with the Debtors' business. The AIP payments reward an employee for his or her performance in 2012, not retention for 2013, and there is nothing before the Court to suggest otherwise. *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 802 (Bankr. D. Del. 2007) (concluding that 503(c)(1) was not applicable because although the bonus program had retentive effects, its primary purpose was to motivate employees). However, even if not considered to be "ordinary course transactions," the AIP is "'justified by the facts and circumstances of the case' under section 503(c)(3) as they are within the 'sound business judgment' of the Debtors." *In re Mesa Air Group, Inc.,* 2010 WL 3810899, *4 (Bankr. S.D.N.Y. 2010), *quoting In re Dana Corp.,* 358 B.R. at 576–77.

21.     The UST makes unproven and overly broad statements to support its legal theory when the uncontroverted evidence demonstrates that the AIP has, and continues to be, a mechanism to motivate employees to work towards achieving the company's business goals. *See* Janiczek Decl. (*in support of AIP Motion*), D.E. 2520-1 at ¶5. While the Debtors' employees have come to expect

---

[12] The economic impact of this is that $410,300 will not be distributed, which is an average award of approximately

ny-1073014

an AIP payment as part of their annual compensation, the amount of the AIP award is entirely discretionary, and the AIP award is not guaranteed. *See Id*. at ¶11.  Therefore, employees are not automatically entitled to their target AIP award if they are still in their seat at the end of the year. Rather, the supervisor will assess each individual's performance, compare that individual to his or her peers and evaluate the individual's contribution to the organization before making a determination as to the appropriate award amount.  *Id*.

22. The Debtors' President and Chief Executive Officer set specific business plan objectives at the beginning of the year – for example, manage and reduce risk, preserve liquidity, manage expenses to plan, minimize employee attrition and improve competitiveness through lower funding costs.  Business leaders and managers are then tasked with specific goals tailored to achieving and contributing to the business unit's ability to meet these overarching goals. Accordingly, by setting performance goals throughout the employee population that are tied to specific objectives defined by the Debtors' senior leadership, the employees' collective efforts facilitate the company's success.  As the company succeeds, it is then able to share that success with the employees through the allocation of the AIP pool; and the opposite holds true, to the extent the company is less successful, then there would potentially be less of an AIP pool to allocate to the employees.  As a result, AIP drives the employees to perform at the highest level in order to improve their year-end compensation opportunity. *See* Janiczek Supp. Decl. at ¶ 6.  Such a program is not retentive.

    **B.**    ***CREDITORS' COMMITTEE'S RESERVATION OF RIGHTS***

23. Notwithstanding that the Debtors reduced the AIP opportunity for the KEIP participants by thirty percent (30%) from 2011 levels before filing the Motion, the Creditors' Committee is seeking a further reduction in the AIP payment amounts of the KEIP and KERP

---

$24,000 to each KEIP participant.

participants. After discussions with the Creditors' Committee over the past several days, the Debtors have agreed to further reduce the aggregate AIP pool for KEIP and KERP participants by an additional 10%, which results in (i) an overall reduction of the AIP pool for KEIP participants by 37% and (ii) a reduction of the AIP pool for KERP participants by 10% as compared to the AIP pool for those same individuals in 2011. The Debtors are continuing to work with the Creditors' Committee to come to a payment figure that will hopefully be acceptable to the Committee and expects to have reached a resolution before the start of the hearing on the Motion.

# CONCLUSION

Accordingly, for the reasons set forth herein, the Debtors respectfully request (a) that the Court enter the grant the relief requested in the Motion and (b) such other and further relief as this Court deems just and proper.

Dated: January 14, 2013
       New York, New York

*/s/ Lorenzo Marinuzzi*
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in Possession*