UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) ) | Chapter 11 |
| Debtors. | ) ) ) | Jointly Administered |

**SUPPLEMENTAL DECLARATION OF ANNE JANICZEK IN SUPPORT OF DEBTORS'
MOTION FOR A SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS
363, 1107(a) AND 1108 TO THE FINAL WAGES ORDER AUTHORIZING THE DEBTORS
TO MAKE PAYMENTS TO THEIR EMPLOYEES UNDER THE RESIDENTIAL
CAPITAL, LLC ANNUAL INCENTIVE PLAN**

I, Anne Janiczek, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.  I am the Executive Vice President, Chief Human Resources Officer for the Mortgage Division at Debtor[1] Residential Capital LLC and its affiliates ("**ResCap**").

2.  On December 26, 2012, I submitted my declaration [Docket No. 2520] (the "**Janiczek Declaration**") in support of the *Debtors' Motion for a Supplemental Order under Bankruptcy Code sections 363, 1107(a) and 1108 of title 11 To The Final Wages Order Authorizing The Debtors To Make Payments To Their Employees Under The Residential Capital, LLC Annual Incentive Plan* (the "**Motion**").

3.  I respectfully submit this supplemental declaration (the "**Janiczek Supp. Decl.**") in further support of the Motion, and in support of the Debtors' reply to (i) the objection of the Office of the United States Trustee and (ii) the Reservation of Rights of the Official Committee of Unsecured Creditors' thereto (the "**Reply**"), filed contemporaneously herewith. I am duly

---

[1] Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Motion.

ny-1073194

authorized to do so. I hereby incorporate by reference into this Janiczek Supp. Decl. the entirety of the Janiczek Declaration, as if fully set forth herein.

A. **Employee Compensation**

4. The vast majority of the Debtors' employees receive a substantial portion of their annual compensation in the form of variable pay awarded based on company, unit and individual performance targets established by management and approved by the compensation committee (the "**Compensation Committee**") of the Debtors' board of directors (the "**Discretionary Variable Pay**"). The aggregate compensation earned by an employee during a calendar year is referred to as total direction compensation ("**TDC**"), which is comprised of base salary plus Discretionary Variable Pay.

5. Discretionary Variable Pay takes one of two forms: (i) monthly or quarterly awards under the Debtors' several variable pay plans or (ii) annual awards under the AIP. Employees eligible for awards under the Debtors' variable pay plans are not eligible for awards under the AIP.

6. Tying a portion of the employees' salaries to discretionary pay plans is typical in the financial services industry and, therefore, the employees (not in a variable pay plan) generally view these programs as part of their base compensation and have come to rely on receiving payment of an AIP award provided they accomplish the defined goals established by their supervisors to justify the payment of AIP. As a result, AIP drives the employees to perform at the highest level in order to improve their year-end compensation opportunity.

B. **The AIP**

7. AIP is an incentive plan that is designed to motivate employees to produce the best results throughout the year in the hopes of being rewarded for their efforts at year end. The

AIP covers more than 3,000 of the Debtors' employees, including over 2,800 employees who are not eligible for KEIP/KERP awards. During 2012, the Debtors' employees were charged with operating the Debtors' businesses, including under the auspices of bankruptcy protection. At year end, as a result of the extraordinary collective efforts of the Debtors' employees, the Debtors had accomplished one of their primary goals of maintaining a going-concern entity that could be transferred to an interested third-party purchaser. This is quite an accomplishment since no other mortgage company has been able to maintain its origination and servicing platforms in a chapter 11 proceeding.

8. In fact, in recognition of this Court's comments in connection with its analysis of the proposed KEIP/KERP Motion, the Debtors took the proactive approach to reduce the AIP pool for KEIP participants by 30% for 2012, and after discussions with the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") over the past several days, the Debtors have agreed to further reduce the aggregate AIP pool for KEIP and KERP participants by an additional 10%, which results in (i) an overall reduction of the AIP pool for KEIP participants by 37% and (ii) a reduction of the AIP pool for KERP participants by 10% as compared to the AIP pool for those same individuals in 2011. As a result, the Debtors now seek to pay AIP awards to eligible employees as they have every year for the past twenty years of their operations, but at a level that is significantly less than prior years (*e.g.*, AIP is at least $2.8 million less than what was accrued for the KEIP Participants alone).

9. The Debtors' filings with the Court have also maintained that the KEIP/KERP were necessary to keep the employees motivated because the AIP awards were discretionary, not guaranteed and remained subject to the Court's approval. As stated in prior declarations I have filed with the Court, the KEIP/KERP awards only replaced a prepetition program called the

"BCIP." In fact, on August 10, 2012, at the Court's request, the Debtors provided the UST, the Court and counsel to the Creditors' Committee with a spreadsheet identifying the 2012 compensation opportunities for the KEIP participants (which included the estimated KEIP award, the estimated AIP/LTECIP award, and base salary) and compared those figures to the individuals' 2010 and 2011 total compensation packages.

10. At the time the Motion was filed, it was estimated that $17.6 million of the total AIP pool is slated to go to the KEIP and KERP participants. Approximately $5.3 million will go to the KEIP individuals, and approximately $12.3 million will go to the KERP individuals.

11. Under separate cover (and before the filing of this Reply), the Debtors provided the Creditors' Committee and UST with the estimated award opportunities for each of the individuals in the KEIP and KERP as well as a comparison of the total compensation for the KEIP and KERP individuals for 2011 and the estimated amounts for 2012, including, but not limited to, the following information:

- **2012 Base** – this is cash salary that each individual received in calendar year 2012;

- **Discretionary Incentive Pay (2012 AIP Incentive Target)** – in addition to cash salary, an employee's annual compensation also includes discretionary variable pay, which is remitted in cash and in certain instances, deferred cash payments. The amount in this column is the aggregate amount of Discretionary Variable Pay that the individual is eligible to receive in the first quarter of 2013 for their efforts in calendar year 2012. This amount serves as the comparison for 2011 incentive awards, AIP and RSU;

- **KEIP / KERP Amount** – this is the target award for each individual;

- **2012 TDC** – this is cash salary plus AIP Target;

- **2012 TDC + KEIP/KERP** – this is cash salary plus AIP Incentive Target plus Target KEIP/KERP award;

- **2012 Base + KEIP/KERP** – this is cash salary plus Target KEIP/KERP award;

- **2011 TDC + Other Comp** – This is 2011 TDC <u>plus</u> other compensation paid in 2011.

- **2011 Base** – this is the cash salary that each individual received in calendar year 2011;

- **2011 AIP** –this is the aggregate amount of cash discretionary variable pay that the individual received in the first quarter of 2012 for their efforts in calendar year 2011;

- **2011 RSU** – this is cash value of discretionary variable pay that the individual received in the form of AFI equity units in the first quarter of 2012 for their efforts in 2011; and

- **2011 TDC** – this is cash salary <u>plus</u> AIP and RSU awards.

12. For substantially all key employees in the KERP, their AIP award is the same for 2012 as it was in 2011 because the Compensation Committee authorized the AIP awards to be no greater than the sums paid in 2011. To the extent there is any substantial difference in the aggregate compensation for certain individuals from 2011 to 2012, the most fundamental reason for the improvement is the individual's ability to receive the KERP award for 2012. Because of the pending asset sales, the Board of Directors recently decided not to authorize merit increases for the Debtors' employees for 2013.

13. Other possible reasons for a year-over-year increase in aggregate compensation from 2011 to 2012 would be because (i) the individual was placed into a role with new and augmented responsibilities as a result of the Debtors' operational separation from AFI, which has required the individual to assume a role and take on duties previously provided by AFI, (ii) the individual has been asked to take on more responsibility and, in order to ensure that the individual's compensation is commensurate with their job responsibilities, their salary was adjusted to correlate to the new, enhanced role in the organization, (iii) at the outset of 2012, at the recommendation of their supervisor, the individual received a merit increase to his or her base salary, (iv) the individual's 2011 AIP was pro-rated because the employee was not

employed for the full year or (v) the employee was hired in 2012.  Therefore, the business reasons for augmenting one's base salary from year-to-year is consistent with the Debtors' general business practices and represents an exercise of reasonable business judgment and is consistent with the Debtors' efforts to ensure that keep its employees' compensation in line with market compensation levels in order to ensure workforce stability and preservation of the business as a going concern.

14.     As with the KERP, to the extent an individual participating in the KEIP has had their aggregate compensation increase from 2011 to 2012, such an increase is substantially because of the individual's receipt of the KEIP award.  Certain of the KEIP Participants (8 of 17) did receive modest, pre-petition increases in their base salary before the filing, but only because these senior officers took on new positions with increased responsibilities as a result of the Debtors operational separation from AFI throughout 2012.  More specifically, as an entity seeking independence from AFI, the Debtors needed to fill certain roles that had been performed previously by AFI.  It also meant overseeing additional personnel. The roles to be filled were primarily global functions roles – finance, IT, compliance and risk management, and legal.  In addition, the bankruptcy filing also created additional responsibilities for certain individuals, which included overseeing additional employees.

15.     Notwithstanding the increase in potential aggregate compensation, the actual compensation may ultimately prove to be lower than estimated.  For example, the Debtors did not meet the threshold Fannie Mae servicer ranking and are not eligible to receive 10% of the aggregate KEIP award.  Therefore, any blanket assertions over employee compensation for 2012 when compared to 2011 is over-simplistic and does not consider the various factors that are considered when reviewing this very complex issue.  While the Debtors are sensitive to how

compensation is viewed in light of the Debtors' bankruptcy petitions, employees with these skills are sought after and highly transportable. The Debtors' Compensation Committee uses its best judgment in balancing the needs of the various stakeholders while maintaining the stability necessary to deliver value to those same stakeholders that have different motives driving their actions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 14, 2013, at Fort Washington, Pennsylvania.

/s/ Anne Janiczek
Anne Janiczek
EVP, Chief Human Resources Officer
Residential Capital, LLC