## EXHIBIT 1

**Form of Mortgage Loan Purchase and Interim Servicing Agreement**

**MORTGAGE LOAN PURCHASE**

**AND**

**INTERIM SERVICING AGREEMENT**

**Between**

**GMAC MORTGAGE, LLC**

**(as Seller and as Interim Servicer)**

**and**

_____

**(Purchaser)**

**Dated as of _____, 2013**

**[FHA Residential Mortgage Loans]**

# TABLE OF CONTENTS

**Page**

ARTICLE 1. DEFINITIONS ..................................................................................................1

ARTICLE 2. SALE AND CONVEYANCE OF MORTGAGE LOANS; POSSESSION
    OF FILES; PAYMENT OF PURCHASE PRICE; DELIVERY OF MORTGAGE
    DOCUMENTS ...................................................................................................7

    Section 2.1.    Sale and Conveyance of Mortgage Loans; Possession of Files ................7
    Section 2.2.    Delivery of Mortgage Documents and Credit Files ...................................8
    Section 2.3.    Purchaser's Due Diligence Review .............................................................9

ARTICLE 3. REPRESENTATIONS AND WARRANTIES OF THE SELLER
    CONCERNING MORTGAGE LOANS; REPURCHASE OF MORTGAGE
    LOANS; REPRESENTATIONS AND WARRANTIES OF PURCHASER ...................10

    Section 3.1.    Individual Mortgage Loans .......................................................................10
    Section 3.2.    Seller and Interim Servicer Representations .............................................12
    Section 3.3.    Remedies for Breach of Representations and Warranties .........................13
    Section 3.4.    Purchaser Representations .........................................................................15

ARTICLE 4. COVENANTS ................................................................................................16

    Section 4.1.    Continued Cooperation .............................................................................16
    Section 4.2.    Delivery of Documents .............................................................................17
    Section 4.3.    Reserved ....................................................................................................17
    Section 4.4.    Compliance with HAMP; Existing Modifications ....................................17
    Section 4.5.    Regulatory Compliance ............................................................................17

ARTICLE 5. CLOSING CONDITIONS ...............................................................................17

    Section 5.1.    Closing Date Documents ...........................................................................18
    Section 5.2.    Correctness of Representations and Warranties ........................................18
    Section 5.3.    HAMP Assignment and Assumption Agreement .....................................18
    Section 5.4.    Bankruptcy Court Approval ......................................................................18
    Section 5.5.    Compliance With Conditions ....................................................................18

ARTICLE 6. INTERIM SERVICING ..................................................................................18

    Section 6.1.    General ......................................................................................................18
    Section 6.2.    Advances; Reimbursement of Advances ...................................................19
    Section 6.3.    Insured Mortgaged Properties ...................................................................20
    Section 6.4.    Transfer of Servicing ................................................................................20
    Section 6.5.    [Reserved] .................................................................................................20
    Section 6.6.    Pending Legal Proceedings .......................................................................20
    Section 6.7.    Mortgage Loans in Litigation ...................................................................21
    Section 6.8.    Mortgage Loans Subject to HAMP ...........................................................23

Section 6.9.    Subservicing Agreements Between the Interim Servicer and
Subservicers ......................................................................................23

ARTICLE 7. MISCELLANEOUS PROVISIONS ........................................................24
Section 7.1.    Amendment.........................................................................................24
Section 7.2.    Governing Law ..................................................................................24
Section 7.3.    General Interpretive Principles .........................................................24
Section 7.4.    Reproduction of Documents .............................................................25
Section 7.5.    Notices ...............................................................................................25
Section 7.6.    Severability of Provisions.................................................................26
Section 7.7.    Counterparts; Successors and Assigns...............................................26
Section 7.8.    Effect of Headings.............................................................................26
Section 7.9.    Other Agreements Superseded; Entire Agreement ...........................27
Section 7.10.   Survival..............................................................................................27
Section 7.11.   Intention of the Parties .....................................................................27
Section 7.12.   Costs...................................................................................................27
Section 7.13.   Limitation on Liability of Interim Servicer ......................................27
Section 7.14.   Third Party Beneficiary ....................................................................28
Section 7.15.   Waiver of Jury Trial..........................................................................28
Section 7.16.   Exhibits and Schedules .....................................................................28
Section 7.17.   No Special Damages..........................................................................28

## EXHIBITS & SCHEDULES

Exhibit A            CONTENTS OF CREDIT FILE

Exhibit B            FORM OF SALE APPROVAL ORDER

Exhibit C            REPORT OF ADVANCES

Schedule I           MORTGAGE LOAN SCHEDULE

Schedule II          PURCHASE PRICE PERCENTAGES

Schedule III         COLLATERAL EXCEPTIONS REPORT

## MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT

**THIS MORTGAGE LOAN PURCHASE AND INTERIM SERVICING AGREEMENT** ("Agreement") dated as of _____, 2013 is by and between _____, a _____, as purchaser ("Purchaser") and GMAC Mortgage, LLC, a Delaware limited liability company, as seller (in such capacity, the "Seller") and as interim servicer (solely with respect to such rights and obligations, "Interim Servicer").

## PRELIMINARY STATEMENT

**WHEREAS**, the Seller desires to sell to Purchaser, and Purchaser desires to purchase from the Seller, subject to the terms and conditions of this Agreement, without recourse, certain residential mortgage loans (a) some of which as of the Cut-Off Date (as hereinafter defined) will be fewer than sixty (60) days past due with respect to the related mortgagor's payment of principal and interest (a "Performing Mortgage Loan"), and (b) some of which as of the Cut-Off Date will be sixty (60) or more days past due with respect to the related mortgagor's payment of principal and interest under the terms of the related Mortgage Note or Mortgage (as such terms are hereinafter defined) (a "Non-Performing Mortgage Loan").  The Performing Mortgage Loans and the Non-Performing Mortgage Loans are referred to individually as a "Mortgage Loan" or collectively as the "Mortgage Loans";

**WHEREAS**, the Mortgage Loans shall be sold to Purchaser on a servicing-released basis; and

**WHEREAS**, Purchaser desires that Interim Servicer service the Mortgage Loans on an interim basis as described herein;

**NOW, THEREFORE**, in consideration of the premises and the mutual agreements set forth herein and other good and valuable consideration, Purchaser, Seller and Interim Servicer agree as follows:

## ARTICLE 1.

## DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Acceptable Servicing Procedures:    The procedures, including collection and loan administration procedures set forth in the FHA Guidelines (provided that, if the FHA Guidelines are silent on a particular procedure, the Interim Servicer shall utilize the procedures, including collection and loan administration procedures, for servicing mortgage loans using the same standard of care that the Interim Servicer customarily employs and exercises in servicing and administering similar mortgage loans for its own account, which shall be in material compliance with applicable federal, state and local laws).    As applied to Purchaser or its designated Successor Servicer, such procedures and standard of care shall not be lower than the procedures and standard of care that Purchaser or its designated Successor Servicer customarily employs

and exercises in servicing and administering similar mortgage loans for its own account and shall be in material compliance with all applicable federal, state and local laws and the FHA Guidelines.

Account:  The account or accounts maintained by Interim Servicer (or its designee) in connection with its servicing of the Mortgage Loans.

Advances:  All monetary advances made by Interim Servicer or the Seller's designated servicer in connection with or related to a Mortgage Loan, including but not limited to (i) any amounts advanced by Interim Servicer or Seller's designated servicer for the purpose of effecting the payment of taxes, assessments and any insurance premiums relating to a Mortgaged Property and (ii) all customary, reasonable and necessary "out-of-pocket" costs and expenses incurred in the performance by Interim Servicer or Seller's designated servicer of its servicing obligations, including but not limited to, the cost (including reasonable attorneys' fees and disbursements), related to (a) the preservation, restoration and protection of the Mortgaged Property, (b) any enforcement or judicial proceedings, including, but not limited to, foreclosures and any expenses incurred in connection with any such proceedings that result from the Mortgage Loan being registered on the MERS system and (c) the management and liquidation of the Mortgaged Property if the Mortgaged Property is acquired in satisfaction of the Mortgage (including default management and similar services, appraisal services and real estate broker services).  For the avoidance of doubt, any such cost or expense shall be deemed to include services rendered regardless of whether the related invoice has been received and paid by the Interim Servicer or Seller's designated servicer.

Agreement:  This Mortgage Loan Purchase and Interim Servicing Agreement, including all exhibits, attachments and schedules hereto, and all amendments hereof and supplements hereto.

ALTA:  The American Land Title Association or any successor thereto.

Assignment of Mortgage:  An assignment of mortgage, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect of record the transfer of the Mortgage Loan to the assignee named therein.

Business Day:  A day other than (i) a Saturday or Sunday, or (ii) a day on which banking or savings and loan institutions in the States of California, Iowa, Minnesota or Texas or the Commonwealth of Pennsylvania are authorized or obligated by law or executive order to be closed.

Claim:  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown.

Closing Date:  [_____], 2013.

Collateral Exceptions Report:  As defined in Section 2.2 herein.

Collection Period:  The period that begins on the first day of each calendar month and ends on the last day of such month.

Credit File:  With respect to any Mortgage Loan, a file pertaining to such Mortgage Loan that contains, to the extent available to the Seller, the documents described on **Exhibit A** attached hereto, together with the credit documentation relating to the origination of such Mortgage Loan and copies of the Mortgage Documents, which may be maintained on microfilm, optical storage or any other comparable medium.

Cut-Off Date:  [_____], 2013.

Cut-Off Date Principal Balance:  As to each Mortgage Loan, the unpaid principal balance of such Mortgage Loan as of the close of business on the Cut-Off Date, after deduction and application of all payments of principal received by the Cut-Off Date, as specified on the Mortgage Loan Schedule.

Debenture Rate:  With respect to each Mortgage Loan, the rate set forth under the column "Debenture Rate" for such Mortgage Loan on the Mortgage Loan Schedule.

Due Date:  With respect to any Mortgage Loan, the day of the month on which Monthly Payments on such Mortgage Loan are due, exclusive of any days of grace, which day shall be the first day of the month unless otherwise specified on the Mortgage Loan Schedule.

Escrow Account:  An account maintained by Interim Servicer or Seller's designated servicer for the deposit of Escrow Payments received in respect of one or more Mortgage Loans.

Escrow Payments:  The aggregate amount of the escrows for real estate taxes, insurance, private mortgage insurance, and other payments required to be escrowed by the Mortgagor with the mortgagee pursuant to any Mortgage Loan.

Fannie Mae:   The Federal National Mortgage Association, a federally chartered corporation, or any successor thereto.

FHA:   The Federal Housing Administration, an administrative unit within the United States Department of Housing and Urban Development.

FHA Guidelines:   Any statute, law or regulation currently in effect relating to mortgage loans issued pursuant to Title 42 of the United States Code (the Fair Housing Act) as well as any requirements under the FHA connect program.

FHA Mortgage Loan:   Each of the Mortgage Loans identified on the Mortgage Loan Schedule as a FHA Mortgage Loan which has the benefit of a FHA Policy.

FHA Policy:  A certificate of insurance issued by the FHA for the benefit of the mortgagee.

HAMP:  The Home Affordable Modification Program administered by Fannie Mae as a program under the Making Home Affordable Program pursuant to section 101 and 109 of the Emergency Economic Stabilization Act of 2008, as section 109 of such Act has been amended by section 7002 of the American Recovery and Reinvestment Act of 2009.

HAMP Loan:  Each Mortgage Loan as to which a modification pursuant to HAMP has commenced prior to the Cut-Off Date, as designated on the Mortgage Loan Schedule.

HUD:  The United States Department of Housing and Urban Development.

Interim Servicer:  GMAC Mortgage, LLC, in its capacity as Interim Servicer under this Agreement and all successors in interest pursuant to Section 7.7 hereof.

Interim Servicing Period:  The period from the Closing Date to the Servicing Transfer Date.

Lien:  Any lien, charge, pledge, deed of trust, right of first refusal, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, option, proxy, hypothecation, voting trust agreement, transfer restriction, easement, servitude, encroachment, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction)

Litigation Proceeding:  As defined in Section 6.7 herein.

MERS:  Mortgage Electronic Registration Systems, Inc., a Delaware corporation, and any successor thereto.

MERS Loan:  Any Mortgage Loan registered on the MERS® System and for which MERS is listed as the record mortgagee or beneficiary on the related Mortgage or assignment thereof.

MERS® System:  The system of electronically recording transfers of mortgages maintained by MERS.

MIN:  The mortgage identification number issued to each MERS Loan.

MOM Loan:  A Mortgage Loan that was registered on the MERS® System at the time of origination thereof and for which MERS appears as the record mortgagee or beneficiary on the related Mortgage.

Monthly Payment:  The scheduled monthly payment of principal and interest (or, in the case of an interest-only Mortgage Loan, interest) on a Mortgage Loan that is payable by a Mortgagor from time to time under the related Mortgage Note.

Mortgage:  The mortgage, deed of trust, or other instrument creating a lien on real property, in each case, including any riders, addenda, assumption agreements, or modification relating thereto.

Mortgage Documents:  With respect to any Mortgage Loan, the mortgage loan documents pertaining to such Mortgage Loan that are specified in Section 2.2.

Mortgage File:  With respect to any Mortgage Loan, a file pertaining to such Mortgage Loan that contains each of the Mortgage Documents except as specified in any applicable Collateral Exceptions Report.

Mortgage Interest Rate:  With respect to each Mortgage Loan, the annual rate at which interest accrues on such Mortgage Loan.

Mortgage Loan:  An individual mortgage loan that is sold pursuant and subject to this Agreement, each such Mortgage Loan being identified on the Mortgage Loan Schedule.

Mortgage Loan Schedule:  With respect to the Mortgage Loans to be sold pursuant to this Agreement and set forth on **Schedule I** to this Agreement, such schedule shall set forth the following information, as of the Cut-Off Date unless otherwise stated, with respect to each Mortgage Loan to the extent such information is readily available to Seller:  (a) the Mortgage Loan identifying number; (b) the Mortgage Interest Rate; (c) the amount of the Monthly Payment; (d) the Cut-Off Date Principal Balance of the Mortgage Loan; (e) the last Due Date on which a Monthly Payment was actually applied to the Unpaid Principal Balance; (f) the original principal amount of the Mortgage Loan; (g) a code indicating if the Mortgage Loan is a MERS Loan and if so, the MIN; (h) the street address, city, state and zip code of the Mortgaged Property; (i) unreimbursed amount of Advances, if applicable; (j) a code indicating if the Mortgage Loan is in foreclosure, bankruptcy or litigation; (k) the lien position; (l) the Debenture Rate; (m) the FHA case number; (n) whether such Mortgage Loan is a HAMP Loan and (o) whether such Mortgage Loan has been modified.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

Mortgaged Property:  The property securing a Mortgage Note pursuant to the related Mortgage.

Mortgagor:  The obligor(s) on a Mortgage Note.

Non-Performing Mortgage Loan:  As defined in the Preliminary Statement.

Pending Proceeding:  As defined in Section 6.6 herein.

Performing Mortgage Loan:  As defined in the Preliminary Statement.

Permitted Liens:  With respect to each Mortgage Loan, (i) the lien of current real property taxes and assessments not yet due and payable and (ii) covenants, conditions, and restrictions, rights-of-way, easements, mineral right reservations and other matters of public

record as of the date of recording of such Mortgage, such exceptions generally being (a) acceptable to mortgage lending institutions making mortgage loans of the quality of the Mortgage Loan in the area where the Mortgage Property is located, (b) specifically referred to in the mortgagee's policy of title insurance or (c) other matters that do not materially interfere with the benefits of the security intended to be provided by the Mortgage.

Purchase Price:  For each Mortgage Loan purchased hereunder, an amount equal to the sum of (i) the product of the Purchase Price Percentage and the Cut-Off Date Principal Balance of such Mortgage Loan and (ii) with respect to any Performing Mortgage Loans only, the accrued and unpaid interest at the Mortgage Interest Rate for the period from the latest interest paid to date to the day prior to the Closing Date and (iii) with respect to any Non-Performing Mortgage Loans only, the accrued and unpaid interest at the Debenture Rate for the period from the latest interest paid to date to the day prior to sixty (60) days prior to the Closing Date.

Purchase Price Adjustment:  As defined in Section 3.3(a) hereof.

Purchase Price Percentage:  For each Mortgage Loan, the percentage set forth in **Schedule II** to this Agreement that is used to calculate the Purchase Price of such Mortgage Loan.

Purchaser:  _____, and all successors in interest pursuant to Section 7.7 hereof.

Remittance Date:  Ten (10) Business Days following the last day of each Collection Period.

Repurchase Price:  With respect to any Mortgage Loan, an amount equal to (a) the Purchase Price for such Mortgage Loan, plus (b) Purchaser's reasonable and customary out-of-pocket expenses incurred by Purchaser in transferring such Mortgage Loan back to Seller, minus (c) any amounts received by Purchaser with respect to such Mortgage Loan on or prior to the date of repurchase, minus (d) any unreimbursed Advances payable to Interim Servicer pursuant to this Agreement.

Sale Approval Order:  An order of the Bankruptcy Court issued pursuant to sections 105 and 363 of the Bankruptcy Code, in substantially the form set forth in **Exhibit B** hereto, authorizing and approving, among other things, (i) the sale, transfer and assignment of the Mortgage Loans to Purchaser in accordance with the terms and conditions of this Agreement, free and clear of all Claims and Liens and (ii) that Purchaser is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code.

Seller:  GMAC Mortgage, LLC and its respective successors in interest pursuant to Section 7.7 hereof.

Servicer Participation Agreement: As defined in Section 3.4(f) herein.

Servicing File:  For each Mortgage Loan, the loan documents and information (including any servicing tapes, images and conversion reports) received or obtained through the efforts of

servicing the Mortgage Loan, which may be maintained on microfilm, optical storage or any other comparable medium.  To the extent available to the Seller, each Servicing File may contain:  (a) the tax service contract, (b) documentation relating to any releases of collateral, (c) any correspondence between the Interim Servicer or the Seller's designated servicer, as applicable, and the Mortgagor, (d) payment history, (e) collection letters or form notices, (f) foreclosure correspondence and legal notification, and (g) copy of deed with respect to any REO property.

Servicing Transfer Date:  May 15, 2013, which is the date on which Interim Servicer shall discontinue servicing the Mortgage Loans pursuant to Section 6.1.

Successor Servicer:  The servicer selected by Purchaser to assume all of Interim Servicer's responsibilities, rights, duties and obligations to service the Mortgage Loans on the Servicing Transfer Date.

Unpaid Principal Balance:  With respect to each Mortgage Loan, as of any date of determination, (i) the Cut-Off Date Principal Balance, minus (ii) the principal portion of all payments made by or on behalf of the Mortgagor after the Cut-Off Date and received by Interim Servicer or Successor Servicer, as applicable.

## ARTICLE 2.

## SALE AND CONVEYANCE OF MORTGAGE LOANS; POSSESSION OF FILES; PAYMENT OF PURCHASE PRICE; DELIVERY OF MORTGAGE DOCUMENTS

### Section 2.1.        Sale and Conveyance of Mortgage Loans; Possession of Files

(a) On the Closing Date and upon the receipt of the Purchase Price set forth in this Agreement, the Seller shall sell, transfer, assign, set over, and convey to Purchaser, without recourse, but subject to the representations, warranties, terms and provisions of this Agreement all the right, title, and interest of the Seller in and to the Mortgage Loans, servicing released.

(b) The documents comprising each Credit File shall, subject to payment for the related Mortgage Loan pursuant to Section 2.1(c) below, be held in trust by Interim Servicer until the Servicing Transfer Date, for the benefit of Purchaser as the owner thereof.  Interim Servicer's possession of such documents so held is at the will of Purchaser, and such holding and possession is in trust for Purchaser as the owner thereof and only for the purpose of servicing the Mortgage Loans until the Servicing Transfer Date.  Upon payment for the related Mortgage Loan pursuant to Section 2.1(c) below, the legal and beneficial ownership of each Mortgage Note, each Mortgage, and each of the other documents comprising the Mortgage File and the Credit File with respect to such Mortgage Loan shall be vested in Purchaser, and the ownership of all records and documents with respect to such Mortgage Loan prepared by or which come into the possession of Seller or any agent or designee thereof shall immediately vest in Purchaser and shall be delivered to Purchaser in the case of the Mortgage Files on the Closing Date.

(c) In full consideration for the sale of each of the Mortgage Loans pursuant to Section 2.1(a), and upon the terms and conditions of this Agreement, on the Closing Date Purchaser shall pay to Seller by wire transfer of immediately available funds (i) the Purchase Price as set forth in this Agreement for the Mortgage Loans purchased on the Closing Date and (ii) any unreimbursed Advances made by the Seller or Interim Servicer up to and including the Cut-Off Date as set forth in Section 6.2(a) of this Agreement.  Purchaser shall also be required to reimburse Interim Servicer for any unreimbursed Advances made by the Interim Servicer as set forth in Sections 6.2(b) and 6.2(c) of this Agreement.

(d) As of the Closing Date, Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased on the Closing Date all Monthly Payments and all other collections of principal and interest and all proceeds on the Mortgage Loans received on and after the Cut-Off Date, subject to the rights of Interim Servicer under Section 6.2 to reimbursement for certain costs, expenses, Advances, any ancillary fees incurred or made pursuant thereto and interim servicing fees.  All such amounts that are collected after the Cut-Off Date through and including the Servicing Transfer Date shall be held and remitted by Interim Servicer on each related Remittance Date.

(e) Notwithstanding anything to the contrary in this Agreement, the Purchaser will be required to purchase all of the Mortgage Loans on the Mortgage Loan Schedule unless a Mortgage Loan was liquidated or otherwise paid-in-full between the date of this Agreement and the Closing Date.

### Section 2.2.        Delivery of Mortgage Documents and Credit Files

(a) Not later than two (2) Business Days prior to the Closing Date, the Seller shall deliver to Purchaser or Purchaser's designee, to the extent in the Seller's possession, the following documents for each Mortgage Loan (the "Mortgage Documents"):

(i)        Either:

(A) the original Mortgage Note, endorsed (on the Mortgage Note or an allonge attached thereto) "Pay to the order of _____ without recourse," and signed by original or facsimile signature in the name of the last holder of record by an authorized officer; or

(B) a copy of the Mortgage Note (endorsed as provided above) together with a lost note affidavit.

(ii)        the original recorded Mortgage or copy with recording information (and, in the case of a MOM Loan, with evidence of the MIN); provided that if such mortgage is not available or if such public recording office retains or otherwise has not returned the original recorded mortgage, the Seller may deliver or cause to be delivered to Purchaser a photocopy of such Mortgage certified by such Seller to be a copy of the original mortgage sent for recording;

(iii)    unless such Mortgage Loan is a MERS Loan, the original Assignment of Mortgage, from the applicable seller signed by an authorized officer, to Purchaser's designee, which assignment shall be in form and substance acceptable for recording;

(iv)    unless such Mortgage Loan is a MOM Loan, all intervening Assignments of Mortgage with evidence of recordation provided that if such Assignment of Mortgage is not available or if such public recording office retains or otherwise has not returned the original Assignment of Mortgage, the Seller may deliver or cause to be delivered to Purchaser a photocopy of such Assignment of Mortgage certified by such Seller to be a copy of the original Assignment of Mortgage sent for recording;

(v)    originals or copies of all assumption, extension or modification agreements, if any; and

(vi)    original or copy of the title policy or, in the event such title policy is unavailable, an imaged copy of the related policy binder or commitment for title.

(b) Set forth on **Schedule III** to this Agreement is the collateral exceptions report (the "Collateral Exceptions Report") generated by Purchaser or Purchaser's custodian, with respect to each Mortgage Loan sold by Seller hereunder, identifying which of the Mortgage Documents are not in its possession, to the extent applicable, or have document deficiencies.  The Seller shall not have any obligation to deliver any documents included in a Collateral Exceptions Report or cure any document deficiencies identified in a Collateral Exceptions Report.

(c) In connection with the transfer of any MERS Loan pursuant to Section 2.1 hereof, Interim Servicer shall request that the MERS® System indicate that such MERS Loan has been assigned to Purchaser.  Purchaser may, at its cost and in its discretion, direct the Interim Servicer to deliver for recording to the appropriate public recording office of the jurisdiction in which the Mortgaged Property is located, and cause to be duly recorded, any of the original Assignments of Mortgage referred to in Section 2.2(a)(iii).  Purchaser shall pay all recording fees relating to the recordation of the Assignments of Mortgage from Seller to Purchaser and any intervening assignments.

(d) Unless otherwise provided herein, the Seller or its designee shall deliver the Credit Files with respect to all Mortgage Loans to Purchaser or its designee on or before the Servicing Transfer Date.  The Seller or its designee shall deliver the Servicing Files with respect to all Mortgage Loans to Purchaser or its designee within five (5) Business Days of the Servicing Transfer Date.

Section 2.3.        **Purchaser's Due Diligence Review**

Purchaser agrees and acknowledges that Purchaser or its custodian has conducted a due diligence review on (i) the Mortgage Loans and (ii) a sample of twenty percent (20%) of the related Credit Files, and that any document defects in the Mortgage Files and the Credit Files

have been resolved to its satisfaction and taken into account in determining the Purchase Price Percentage specified in this Agreement.

## ARTICLE 3.

## REPRESENTATIONS AND WARRANTIES OF
## THE SELLER CONCERNING MORTGAGE LOANS;
## REPURCHASE OF MORTGAGE LOANS; REPRESENTATIONS AND
## WARRANTIES OF PURCHASER

Section 3.1.       **Individual Mortgage Loans**

The Seller hereby represents and warrants to Purchaser that, as to each Mortgage Loan sold by the Seller hereunder, as of the Closing Date (except as otherwise indicated below):

(a) The information with respect to such Mortgage Loan set forth on the Mortgage Loan Schedule is true and correct in all material respects, as of the dates specified therein or, if no such date is indicated therein, as of the Cut-Off Date.

(b) Upon both (a) the entry of the Sale Approval Order and (b) the transfer of the Mortgage Loans to the Purchaser, the Purchaser will have good and valid title to the Mortgage Loans, free and clear of any liens, claims, encumbrances, participation interests, equities, pledges, charges, or security interests of any nature, and the Seller had full right and authority to sell and assign such Mortgage Loan pursuant to this Agreement.

(c) With respect to each Mortgage Loan, the Mortgage is a valid, subsisting and enforceable first-lien, as indicated on the Mortgage Loan Schedule, on the Mortgaged Property. The lien of the Mortgage is subject only to Permitted Liens.

(d) Other than as indicated in the Mortgage Loan Schedule, the terms of the Mortgage and the Mortgage Note have not been waived, altered, or modified in any material respect, except by a written instrument that has been recorded, if necessary, and that is a part of the Mortgage File; provided, however, that under certain circumstances where the modification, waiver or alteration of the terms of such Mortgage or Mortgage Note has been effected pursuant to a written instrument that is favorable to the Mortgagor, such written instrument may or may not have been executed by the related Mortgagor.

(e) No Mortgagor has been released, in whole or in part, except as indicated in the Mortgage Loan Schedule.

(f) With respect to each Mortgage Loan, the applicable FHA Policy is in full force and effect, and there exists no defense or impairment to full recovery thereunder to the maximum extent provided thereby, without, in the case of any FHA Mortgage Loan, indemnity to HUD or FHA. Each FHA Policy is the valid, binding and enforceable obligation of FHA, to the full extent provided thereby, without surcharge, set-off or defense, and all actions that are necessary to ensure that each FHA Policy remains so valid, binding and enforceable have been taken. As of the Cut-Off Date, the guaranty amount with respect to each FHA Mortgage Loan

will be an amount that is payable in accordance with the FHA Guidelines and such amount will be at least equal to the unpaid principal balance of the related Mortgage Loan.  All provisions of such FHA Policy have been and are being complied with and all premiums due thereunder have been paid.  The Mortgage Loan obligates the Mortgagor thereunder to maintain the FHA Policy and to pay all premiums and charges in connection therewith.

(g) All improvements upon the Mortgaged Property are insured against loss by fire and such other hazards as are customary in the area where the Mortgaged Property is located, pursuant to insurance policies maintained by the Mortgagor or a blanket insurance policy maintained by Seller or Interim Servicer.  All such insurance premiums that previously became due and owing prior to or on the Cut-Off Date in respect thereof have been paid. If the Mortgaged Property is in an area that, at the time of origination of the related Mortgage Loan, was identified on a flood hazard boundary map or flood insurance rate map issued by the Federal Emergency Management Agency as having special flood hazards and such flood insurance is available, a flood insurance policy was obtained meeting the requirements of the guidelines of the Federal Insurance Administration with an insurance carrier acceptable to Seller.

(h) The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms in all material respects, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws affecting the enforcement of creditors' rights generally and except that the equitable remedy of specific performance and other equitable remedies are subject to the discretion of the courts.  To Seller's knowledge, all parties to the Mortgage Note and the Mortgage had legal capacity to execute the Mortgage Note and the Mortgage and convey the estate therein purported to be conveyed, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties or pursuant to a valid power-of-attorney that has been recorded with the Mortgage.

(i)  The Mortgage has been duly assigned and the Mortgage Note has been duly endorsed as provided in Section 2.2(a).  Any Assignment of Mortgage delivered to Purchaser pursuant to Section 2.2 above is in recordable form except for the insertion of the name of the assignee and recording information and is acceptable for recording under the laws of the applicable jurisdiction.

(j)  Each Mortgage Loan as of the time of its origination complied in all material respects with all applicable local, state and federal laws, rules and regulations including, but not limited to, usury, consumer credit protection, equal credit opportunity, or disclosure laws applicable to such Mortgage Loan at the time of origination.

(k) Each Mortgage is covered by either an ALTA mortgage title insurance policy acceptable to Seller, or such other generally used and acceptable form of policy and applicable endorsements acceptable to prudent mortgage lending institutions making loans in the area where the Mortgaged Property is located.

(l)  The Mortgage Loan is not subject to any right of rescission, setoff, counterclaim or defense, and no such claim has been asserted with respect to any Mortgage

Loan, except as such rights, counterclaims, defenses and claims may be asserted in connection with the litigation and bankruptcy proceedings disclosed under the column [_____] on the Mortgage Loan Schedule.

(m)The Mortgage contains customary and enforceable provisions that render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale and (ii) otherwise by judicial foreclosure.  The Mortgage or Mortgage Note contains a provision that is, to the extent not prohibited by federal or state law, enforceable and that provides for the acceleration of the payment of the Unpaid Principal Balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder.

(n) If the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in such Mortgage, and no fees or expenses are or shall become payable to the trustee under the deed of trust except in connection with a trustee's sale after default by the Mortgagor.

(o) Each Mortgage Loan has been serviced by Interim Servicer (or Seller's sub-servicer) in all material respects in accordance with Acceptable Servicing Procedures.

(p) To Seller's knowledge, the Mortgaged Property is in material compliance with applicable environmental laws pertaining to environmental hazards and Seller has not received any notice of any violation of such law.

(q) There is no litigation or bankruptcy proceeding pending or, to Seller's knowledge, threatened with respect to a Mortgage Loan that will adversely affect Purchaser's right, title or interest thereon or the priority of the Mortgage other than litigation and bankruptcy proceedings and their related claims as disclosed under the column [_____] on the Mortgage Loan Schedule.

### Section 3.2.        Seller and Interim Servicer Representations

The Seller and the Interim Servicer, severally and not jointly, hereby represents and warrants to Purchaser that, with respect to itself only, and subject to Bankruptcy Court approval of this Agreement as set forth in Section 5.4 hereof, on the Closing Date:

(a) Seller is a Delaware limited liability company, duly organized, validly existing and in good standing under the laws of the State of Delaware.

(b) Seller has the power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, to enter into, execute and deliver this Agreement and all documents and instruments executed and delivered pursuant hereto and to perform its obligations in accordance therewith.   The execution, delivery and performance of this Agreement by Seller and the consummation of the transactions contemplated hereby have been duly and validly authorized. This Agreement and all other documents and instruments contemplated hereby, in each case assuming due authorization, execution and delivery by Purchaser, if applicable, evidence the

valid, binding and enforceable obligations of Seller, subject as to enforcement, (i) to bankruptcy, insolvency, receivership, conservatorship, reorganization, arrangement, moratorium, and other laws of general applicability relating to or affecting creditor's rights and (ii) to general principles of equity, whether such enforcement is sought in a proceeding in equity or at law.  All requisite limited liability company action has been taken by Seller to make this Agreement and all documents and instruments executed and delivered pursuant hereto, valid and binding upon Seller in accordance with its terms.

(c) No consent, approval, authorization, or order of any court or governmental agency or body relating to the transactions contemplated by this Agreement and the transfer of title to the Mortgage Loans to Purchaser, is required as to Seller or, if required, such consent, approval, authorization, or order has been or shall, prior to the Closing Date, be obtained, except for any recordation of Assignments of the Mortgages to or for the benefit of Purchaser pursuant to this Agreement.

(d) The consummation of the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Mortgage Loans to or for the benefit of Purchaser pursuant to this Agreement and the fulfillment of or compliance with the terms and conditions of this Agreement, are in the ordinary course of business of Seller and shall not (i) result in the breach of any term or provision of the certificate of formation or limited liability company agreement of Seller, (ii) result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any material agreement, indenture, loan or credit agreement or other instrument to which Seller or its property is subject, or (iii) result in the violation of any law, rule, regulation, order, judgment, or decree to which Seller or its property is subject.

(e) There is no action, suit, proceeding or investigation pending or, to the best of Seller's knowledge, threatened against Seller that is likely (in Seller's judgment) to materially and adversely affect the sale of the Mortgage Loans, or that would be likely to materially impair the ability of Seller to perform its obligations under the terms of this Agreement.

### Section 3.3.        Remedies for Breach of Representations and Warranties

(a) Upon discovery by Purchaser prior to the date which is one year following the Closing Date of a breach of any of the representations and warranties set forth in Sections 3.1 or 3.2 made by the Seller (either as Seller or Interim Servicer) that materially and adversely affects the value of any Mortgage Loan, Purchaser shall give written notice to the Seller within ten (10) Business Days of such discovery.  The Seller shall cure in all material respects any such breach within 90 days of receipt of such notice of said breach, and, if such breach cannot be or is not cured within such 90-day period, the Seller shall, in its sole discretion, either (i) repurchase the affected Mortgage Loan(s) at the Repurchase Price or (ii) reimburse Purchaser an amount (the "Purchase Price Adjustment") equal to the reduction in value (as reasonably determined by the Purchaser and Seller) of the affected Mortgage Loans based upon the breach; provided that if the Seller and Purchaser are unable to agree upon the Purchase Price Adjustment, the Seller shall repurchase such Mortgage Loan.  Any such repurchase shall be at a price equal to the applicable Repurchase Price and shall be accomplished by prompt payment to

Purchaser of the amount of the Repurchase Price.  Notwithstanding anything to the contrary in this Agreement, the Seller is under no obligation to repurchase any Mortgage Loan or pay any Purchase Price Adjustment if Purchaser or its designee has renewed, renegotiated, modified, compromised, settled or released the Mortgage Loan, Mortgaged Property, or Mortgagor in whole or in part in any material respect or impaired such Mortgage Loan or the related FHA Policy in any material respect.

(b) It is understood and agreed that all representation, warranties and covenants made by the Seller (either as Seller or Interim Servicer) as set forth in this Agreement shall survive for a period of one year following the Closing Date and shall inure to the benefit of Purchaser.

(c) Upon receipt of the Repurchase Price, Purchaser shall immediately take all steps necessary to effect the transfer of any repurchased Mortgage Loan, including all documentation with respect thereto, to the Seller.  In connection with any repurchase by the Seller of a Mortgage Loan pursuant to this Section 3.3 of this Agreement, Purchaser shall be deemed to have represented and warranted that (i) such Mortgage Loan has been serviced in accordance with Acceptable Servicing Procedures from the Servicing Transfer Date to the date of repurchase and (ii) if such Mortgage Loan is also a HAMP Loan, that such HAMP Loan has been serviced in accordance with HAMP.  In the event Purchaser breaches the representation or warranty deemed to have been made by it in this clause (c), depending on the severity of such breach, the Seller may not be obligated to repurchase the affected Mortgage Loan, and in addition, Purchaser shall be responsible for indemnifying the Seller pursuant to the terms of this Agreement.  If, in accordance with this Section 3.3, the Seller repurchases any MERS Loan, Purchaser shall promptly (i) cause the MERS® System to reflect such repurchase, as the case may be, or (ii) cause MERS to remove the repurchased Mortgage Loan from registration on the MERS® System and execute and deliver an Assignment of Mortgage to reflect the transfer of such Mortgage Loan to the Seller or its designee.

(d) It is understood and agreed that the obligations of the Seller set forth in this Section 3.3 constitute the sole remedies available to Purchaser respecting a breach of the representations and warranties by the Seller set forth in Sections 3.1 and 3.2.  In no event shall the Seller be liable for any additional damages, including without limitation, consequential, punitive, or exemplary damages, with respect to any breach.

(e) Any cause of action against the Seller relating to or arising out of the breach of any representation and warranty made by the Seller in Sections 3.1 and 3.2 shall accrue as to any Mortgage Loan only upon (i) discovery of such breach by Purchaser, (ii) failure by the Seller to cure such breach or repurchase or pay any Purchase Price Adjustment with respect to such Mortgage Loan as specified above, (iii) demand upon the Seller by Purchaser for all amounts payable in respect of such Mortgage Loan and (iv) certification by the Purchaser that the breach alleged by Purchaser was not discovered by it or its representatives during the due diligence review performed by it or its representatives.

**Section 3.4.**          **Purchaser Representations**

Purchaser hereby represents and warrants, as of the Closing Date, that:

(a) Purchaser is a _____ duly [incorporated/organized], validly existing, and in good standing under the laws of the state in which it is [incorporated/organized].

(b) Purchaser has the [corporate] power and authority to purchase each Mortgage Loan, to enter into, execute and deliver this Agreement and all documents and instruments executed and delivered pursuant hereto and to perform its obligations in accordance therewith. The execution, delivery and performance of this Agreement by Purchaser and the consummation of the transactions contemplated hereby, including without limitation, repurchase obligations, have been duly and validly authorized.  This Agreement and all other documents and instruments contemplated hereby, in each case assuming due authorization, execution and delivery by Seller, evidence the valid, binding and enforceable obligations of Purchaser, subject as to enforcement, (i) to bankruptcy, insolvency, receivership, conservatorship, reorganization, arrangement, moratorium, and other laws of general applicability relating to or affecting creditor's rights and (ii) to general principles of equity, whether such enforcement is sought in a proceeding in equity or at law.  All requisite [corporate] action has been taken by Purchaser to make this Agreement valid and binding upon Purchaser in accordance with its terms.

(c) No consent, approval, authorization or order of any court or governmental agency or body relating to the transactions contemplated by this Agreement is required as to Purchaser, or, if required, such consent, approval, authorization or order has been or will, prior to the Closing Date, be obtained.

(d) The consummation of the transactions contemplated by this Agreement and the fulfillment of or compliance with the terms and conditions of this Agreement, are in the ordinary course of business of Purchaser, will not (i) result in the breach of any term or provision of the [certificate of incorporation or bylaws/certificate of formation or partnership agreement] of Purchaser, (ii) result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any material agreement, indenture, loan or credit agreement or other instrument to which Purchaser or its property is subject, or (iii) result in the violation of any law, rule, regulation, order, judgment, or decree to which Purchaser or its property is subject.

(e) There is no action, suit, proceeding or investigation pending or, to the best of Purchaser's knowledge, threatened against Purchaser that is likely (in Purchaser's judgment) to materially and adversely affect the consummation of the transactions contemplated hereby, or that would be likely to materially impair the ability of Purchaser to perform its obligations under the terms of this Agreement.

(f) Purchaser has entered into a servicer participation agreement (the "Servicer Participation Agreement") with Fannie Mae that will enable the Purchaser to service the Mortgage Loans in accordance with the FHA Guidelines and HAMP, as applicable, and such Servicer Participation Agreement is in full force and effect.

(g) The Purchaser is a HUD-approved mortgagee.

(h) The Purchaser (or its Successor Servicer) holds all licenses, approvals, permits, and other authorizations, or exemptions therefrom, required under FHA Guidelines to own and service the Mortgage Loans and is approved to service 1-4 family and multifamily mortgage loans under the FHA Title II of Lenders Profile.

(i) The Purchaser is a sophisticated investor and the Purchaser's offer and decision to purchase the Mortgage Loans is based upon its own independent expert evaluations of its due diligence and other materials deemed relevant by the Purchaser and its agents together with such records as are generally available to the public from local, county, state and federal authorities, record-keeping offices and courts (including, without limitation, any bankruptcy courts in which any mortgagors, guarantor or surety, if any, may be subject to any pending bankruptcy proceedings), as Purchaser deemed necessary, proper or appropriate in order to make a complete informed decision with respect to the purchase and acquisition of the Mortgage Loans.  Purchaser acknowledges that it has had the opportunity to conduct legal, environmental, on-site and other appropriate due diligence as to each Mortgage Loan.  The Purchaser has not relied in entering into this Agreement upon any oral or written information from the Seller, or any of its employees, affiliates, agents, legal counsel or other representatives. Purchaser is aware of the level of and form of documentation with respect to each Mortgage Loan and takes each Mortgage Loan and the Mortgage File, respectively, with the knowledge that such documentation may be incomplete.

(j) Purchaser acknowledges that the Mortgage Loans (including the loan documents) may have limited or no liquidity and Purchaser has the financial wherewithal to own the Mortgage Loans and the loan documents for an indefinite period of time and to bear the economic risk of an outright purchase of the Mortgage Loans and the loan documents and a total loss of the Purchase Price for the Mortgage Loans.

## ARTICLE 4.

## COVENANTS

### Section 4.1.        Continued Cooperation

The Seller, Interim Servicer and Purchaser shall cooperate fully with each other and their respective counsel and other representatives and advisors in connection with the steps required to be taken as part of their respective obligations under this Agreement.  At any time, and from time to time after the Closing Date, upon the reasonable request of either party hereto, and at the expense of the requesting party, the non-requesting party shall do, execute, acknowledge and deliver, and shall cause to be done, executed, acknowledged and delivered, all such further acts, deeds, assignments, transfers, conveyances, and assurances as may be reasonably required in order to accomplish any provision herein; provided that neither the Seller nor the Interim Servicer will be obligated to execute any agreement or provide any consent, disclosures, reports or any other information in connection with any assignment, transfer or reconstitution of the Mortgage Loans by the Purchaser as set forth in Section 7.7 hereto.  In addition, in the event the Seller or Interim Servicer determines

subsequent to the Closing Date that it needs reasonable access to any documents relating to any Mortgage Loan for accounting, tax or litigation purposes, Purchaser shall, upon reasonable notice by the Seller or Interim Servicer, as the case may be, at said party's reasonable expense promptly provide, or cause to be provided, copies of such documents to the extent reasonably necessary to satisfy such purposes, subject to appropriate confidentiality requirements.  Notwithstanding the foregoing, the Seller and Interim Servicer shall not be required to take any action that it reasonably concludes would violate the United States Bankruptcy Code or any order entered in its bankruptcy case, and neither the Seller nor the Interim Servicer shall be required to take any action to the extent that it no longer has staff that perform such action.

Section 4.2.        **Delivery of Documents**

On the dates specified herein, each party shall deliver to the appropriate persons specified herein all documents and instruments provided for hereunder.

Section 4.3.        **Reserved.**

Section 4.4.        **Compliance with HAMP; Existing Modifications**

With respect to each HAMP Loan and each Mortgage Loan that becomes subject to a HAMP modification agreement after the Cut-Off Date, Purchaser shall, or shall cause its servicer to, comply with the terms of each modification agreement applicable to such Mortgage Loan and all guidelines, procedures and directives issued by the United States Treasury, Fannie Mae or Freddie Mac applicable to the servicing of such Mortgage Loan.  With respect to any Mortgage Loan that is the subject of an application for modification or is in its trial period pursuant to the terms of the related modification, and is not a HAMP Loan, the Purchaser shall, or shall cause its servicer to, accept and continue processing the pending loan modification requests and shall honor trial and permanent loan modifications entered into by the prior servicer.  The parties hereto acknowledge and agree that any such Mortgagor shall be deemed a third party beneficiary of this Section 4.4.

Section 4.5.        **Regulatory Compliance**

From and after the Closing Date, the Purchaser agrees to use its commercially reasonable efforts to cooperate with and assist the Seller and its counsel and other advisors with respect to the Seller's compliance with any of its regulatory obligations.

# ARTICLE 5.

# CLOSING CONDITIONS

The closing for the purchase and sale of the Mortgage Loans identified on the Mortgage Loan Schedule shall take place on the Closing Date.  The obligation of the Seller to sell each Mortgage Loan and the obligation of Purchaser to purchase each Mortgage Loan shall be subject to the conditions set forth in this Article 5.

### Section 5.1.        Closing Date Documents

On the Closing Date, if the Mortgage Files are in the possession of a custodian, Purchaser shall have a received a trust receipt or similar document from such custodian acknowledging that such custodian holds the Mortgage Files for the benefit of Purchaser.    Such custodian shall provide a copy of such trust receipt or similar document to Seller.

### Section 5.2.        Correctness of Representations and Warranties

All of the representations and warranties of the Seller and Purchaser under this Agreement shall be true and correct in all material respects as of the Closing Date (except as otherwise expressly provided for herein).

### Section 5.3.        HAMP Assignment and Assumption Agreement

Seller and Purchaser shall have entered into an Assignment and Assumption Agreement in the form of Exhibit C to the Amended and Restated Servicer Participation Agreement dated as of September 30, 2010 between Seller and Fannie Mae with respect to the HAMP Loans and any Mortgage Loans that become subject to a HAMP modification agreement after the Cut-Off Date.

### Section 5.4.        Bankruptcy Court Approval

The United States Bankruptcy Court for the Southern District of New York shall have entered an order in the bankruptcy case of the Seller and Interim Servicer approving this Agreement substantially in the form of the Sale Approval Order and such Sale Approval Order shall not be subject to any stay of effectiveness.

### Section 5.5.        Compliance With Conditions

All other terms and conditions of this Agreement shall have been complied with in all material respects.

Subject to the foregoing conditions, Purchaser shall pay to the Seller on the Closing Date (i) the Purchase Price for the Mortgage Loans and (i) any unreimbursed Advances made by the Seller or Interim Servicer up to the Cut-Off Date as set forth in Section 6.2(a) of this Agreement by wire transfer of immediately available funds to the account designated by the Seller.

## ARTICLE 6.

## INTERIM SERVICING

### Section 6.1.        General

The Mortgage Loans will be purchased by Purchaser and sold by Seller on a servicing-released basis.  As of the Servicing Transfer Date, all servicing responsibilities with respect to the Mortgage Loans shall pass to Purchaser and its designated Successor Servicer, if

any, and Interim Servicer shall cease all servicing responsibilities with respect to the Mortgage Loans and shall be discharged from all liability therefor with respect to any servicing following such Servicing Transfer Date.  Without limiting its other obligations herein, neither Seller nor Interim Servicer shall have any obligation to perform any servicing activities with respect to the Mortgage Loans from and after the Servicing Transfer Date.

Purchaser shall pay a servicing fee to the Interim Servicer of $12.50 per month or portion thereof from the Cut-Off Date until the Servicing Transfer Date for each Mortgage Loan subject to this Agreement that is 29 days or less delinquent as of the Cut-Off Date.  Purchaser shall pay a servicing fee to the Interim Servicer of $40.00 per month or portion thereof from the Cut-Off Date until the Servicing Transfer Date for each Mortgage Loan subject to this Agreement that is 30 to 59 days delinquent as of the Cut-Off Date.  Purchaser shall pay a servicing fee to the Interim Servicer of $65.00 per month or portion thereof from the Cut-Off Date until the Servicing Transfer Date for each Mortgage Loan subject to this Agreement that is 60 to 89 days delinquent as of the Cut-Off Date.  Purchaser shall pay a servicing fee to the Interim Servicer of $90.00 per month or portion thereof from the Cut-Off Date until the Servicing Transfer Date for each Mortgage Loan subject to this Agreement that is 90 or more days delinquent as of the Cut-Off Date.

### Section 6.2.          Advances; Reimbursement of Advances

On the Servicing Transfer Date, Purchaser shall pay or cause its designated Successor Servicer to pay Interim Servicer the following amounts:

(a) with respect to the Mortgage Loans, all unreimbursed Advances incurred by Interim Servicer on or prior to the Cut-Off Date (to the extent not already paid to Seller as of the Closing Date); and

(b) with respect to the Mortgage Loans, all Advances incurred by Seller between the Cut-Off Date and Closing Date (to the extent not already paid to Seller as of the Closing Date) and all Advances incurred by Interim Servicer during the Interim Servicing Period; and

(c) any other reasonable and customary expenses incurred by the Interim Servicer in connection with the Mortgage Loans during the Interim Servicing Period and not previously reimbursed;

provided, however, that to the extent Interim Servicer is billed for any expenses in connection with the performance of its servicing obligations after the Servicing Transfer Date, the Interim Servicer shall forward such invoices to Purchaser as soon as practicable after receipt and Purchaser shall be responsible for processing and paying all such invoices.  In the event, however, any such invoice is processed and paid by Interim Servicer following the Servicing Transfer Date, Purchaser shall reimburse Interim Servicer for the same within ten (10) Business Days of request.

Interim Servicer may set-off all Advances and expenses owed to it pursuant to this Agreement as of the Servicing Transfer Date against any funds due to Purchaser on the Servicing Transfer Date; provided that Interim Servicer shall deliver an electronic report or reports relating

to such Advances and expenses to Purchaser.  A form of such electronic report is attached hereto as **Exhibit C**.

Notwithstanding the foregoing, nothing in this Agreement or related transfer instructions shall be construed to require Interim Servicer to make any Advances (other than Advances required to be made in accordance with Acceptable Servicing Procedures). Interim Servicer shall be entitled to additional servicing compensation in the form of interest realized from any investment of funds in an Account, non-sufficient funds check fees, assumption fees, conversion fees, other related administrative fees, late payment charges, prepayment charges and fees, HAMP modification fees and other similar types of ancillary fees and charges that are actually received by Interim Servicer.  All such amounts may be retained by Interim Servicer.

### Section 6.3.        Insured Mortgaged Properties

Purchaser is responsible for having itself substituted, as of the Servicing Transfer Date, as loss payee on, and obtaining any additional or substitute coverage for any risk insurance on any Mortgaged Property in which the Seller is currently listed as a loss payee.  Nothing in this Agreement shall prevent Purchaser from obtaining, at its own expense, such risk insurance as Purchaser deems necessary or appropriate to insure its interest hereunder or in any Mortgaged Property.

### Section 6.4.        Transfer of Servicing

During the Interim Servicing Period, Interim Servicer shall service the Mortgage Loans in accordance with Acceptable Servicing Procedures and the terms of this Agreement.  On and after the Closing Date, Purchaser shall have the sole responsibility for the direction and strategy of any enforcement actions, at Purchaser's expense.

### Section 6.5.        [Reserved]

### Section 6.6.        Pending Legal Proceedings

Certain of the Mortgage Loans may be the subject of foreclosure or bankruptcy proceedings (and related claims), the outcome of which may affect the status of the Mortgage Loan, including the collectability thereof ("Pending Proceedings").  The provisions below apply to Pending Proceedings:

(a) Purchaser shall, at its cost, within thirty (30) days after the Closing Date, (i) notify the appropriate court officer and all counsel of record with respect to each Mortgage Loan that is in foreclosure or bankruptcy, of the transfer of the Mortgage Loan from the Seller to Purchaser, (ii) file pleadings to substitute counsel (unless said counsel has agreed to represent Purchaser in the proceedings at Purchaser's expense), and (iii) where possible, remove the Seller as a party in the proceedings and substitute Purchaser as the real party in interest, and change the caption thereof accordingly.  Notwithstanding the preceding sentence, Purchaser may continue any proceeding in the Seller's name with respect to any Mortgage Loan if

necessary to prevent a material adverse effect on Purchaser's interest with respect thereto or a delay in the proceeding, it being understood that Purchaser shall indemnify and hold harmless the Seller from all costs and fees arising after the Closing Date and relating to any such proceeding and shall further indemnify and hold harmless the Seller for any loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses resulting from any claim, investigation, inquiry, demand, defense or assertion relating to, based upon or otherwise pertaining to the proceeding continuing in the name of the Seller after the Closing Date.  If Purchaser fails to use commercially reasonable efforts to comply with the above requirements, the Seller may, upon prior written notice to Purchaser, complete any of the actions specified in clauses (i), (ii) and (iii) above on Purchaser's behalf.  In such event, Purchaser hereby appoints the Seller as its attorney-in-fact to complete any of the actions specified in clauses (i), (ii) and (iii) above.  Purchaser acknowledges that its failure to comply with the provisions of this paragraph may affect Purchaser's rights in any such proceeding including, without limitation, a dismissal with prejudice or the running of any statute of limitations if any such proceeding is dismissed.

(b) On and after the Closing Date, Purchaser shall have the sole responsibility for the direction and strategy of the related Pending Proceedings, at Purchaser's expense.

(c) Reimbursement for the Seller's expenses shall be made in accordance with the following procedure:

(i) Purchaser shall reimburse and indemnify the Seller for any expenses, including reasonable legal fees, incurred by the Seller in connection with Pending Proceedings from and after the Cut-Off Date for services rendered after the Cut-Off Date, including without limitation, any such expenses incurred by the Seller in connection with Purchaser's failure to comply with the requirements of subparagraph (c)(i)-(iii).  Purchaser shall reimburse such expenses no later than five (5) days after receipt of a request from the Seller for reimbursement;

(ii) Within ninety (90) days after the Servicing Transfer Date, the Seller shall deliver an electronic report to Purchaser of any expenses billed to the Seller incurred in connection with Pending Proceedings from and after the Cut-Off Date for services rendered after the Cut-Off Date, whereupon Purchaser shall reimburse the Seller for amounts so incurred; and

(iii) The Seller shall be responsible for any expenses, including legal fees, incurred by the Seller in connection with Pending Proceedings prior to the Cut-Off Date.

## Section 6.7.        Mortgage Loans in Litigation

If any Mortgage Loan becomes subject to litigation ("Litigation Proceedings") commenced by a Mortgagor or other third party or commenced by Interim Servicer at the direction of Purchaser following the Closing Date (but before the Servicing Transfer Date), the provisions below apply to such Litigation Proceedings:

(a) Purchaser shall, at its cost, within thirty (30) days after the Servicing Transfer Date, (i) notify the appropriate court officer and all counsel of record in each Litigation Proceeding of the transfer of the Mortgage Loan from the Seller to Purchaser, (ii) file pleadings to substitute counsel (unless said counsel has agreed to represent Purchaser in the proceedings at Purchaser's expense), and (iii) where possible, remove the Seller as a party in Litigation Proceedings and substitute Purchaser as the real party in interest, and change the caption thereof accordingly.   Notwithstanding the preceding sentence, Purchaser shall not be under an obligation to take the actions set forth in this subsection (c)(i), (ii) or (iii) if the allegations raised in the Litigation Proceedings pertain or otherwise relate to the Seller and/or Interim Servicer's breach of any of the representations and warranties set forth in this Agreement; provided, that such breach of any representations and warranties was not due to the Seller and/or Interim Servicer taking action or refraining from taking action at the express written direction or consent of Purchaser during the Interim Servicing Period ("Seller Litigation Proceeding").   Purchaser may continue any Litigation Proceeding (other than any Seller Litigation Proceeding) in the Seller's name with respect to any Mortgage Loan if necessary to prevent a material adverse effect on Purchaser's interest with respect thereto or a delay in the Litigation Proceeding, it being understood that Purchaser shall indemnify and hold harmless the Seller from all costs and fees arising after the Closing Date and relating to any such Litigation Proceeding, other than any Seller Litigation Proceeding) and shall further indemnify and hold harmless the Seller for any loss, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and other costs and expenses resulting from any claim, investigation, inquiry, demand, defense or assertion relating to, based upon or otherwise pertaining to the proceeding continuing in the name of the Seller after the Closing Date.   If Purchaser fails to use commercially reasonable efforts to comply with the above requirements, the Seller may, upon prior written notice to Purchaser, complete any of the actions specified in clauses (i), (ii) and (iii) above on Purchaser's behalf.   In such event, Purchaser hereby appoints the Seller its attorney-in-fact to complete any of the actions specified in clauses (i), (ii) and (iii) above. Purchaser acknowledges that its failure to comply with the provisions of this paragraph may affect Purchaser's rights in any such proceeding including, without limitation, dismissal with prejudice or the running of any statute of limitations if any such proceeding is dismissed.

(b) On and after the Closing Date, Purchaser shall have the sole responsibility for the direction and strategy of the related Litigation Proceedings (other than Seller Litigation Proceedings), at Purchaser's expense.

(c) Reimbursement for the Seller's expenses shall be made in accordance with the following procedure:

(i) Purchaser shall reimburse and indemnify the Seller for any expenses, including reasonable legal fees, incurred by the Seller in connection with Litigation Proceedings (other than Seller Litigation Proceedings) from and after the Closing Date for services rendered after the Closing Date, including without limitation, any such expenses incurred by the Seller in connection with Purchaser's failure to comply with the requirements of subparagraph (c)(i)-(iii) above.   Purchaser shall reimburse such expenses no later than five (5) days after receipt of a request from the Seller for reimbursement;

(ii) Within ninety (90) days after the Servicing Transfer Date, the Seller shall deliver an electronic report to Purchaser of any expenses billed to the Seller incurred in connection with Litigation Proceedings (other than Seller Litigation Proceedings) from and after the Closing Date for services rendered after the Closing Date, whereupon Purchaser shall reimburse the Seller for amounts so incurred; and

(iii) The Seller shall be responsible for any expenses, including legal fees, incurred by the Seller in connection with (A) Litigation Proceedings prior to the Cut-Off Date and (B) any Seller Litigation Proceedings.

### Section 6.8.        Mortgage Loans Subject to HAMP

If a Mortgage Loan becomes subject to a modification agreement pursuant to HAMP during the Interim Servicing Period, Seller may, at its sole option, elect to repurchase such Mortgage Loan by paying the applicable Repurchase Price to Purchaser, and upon receipt of such Repurchase Price Purchaser shall release its interest in such Mortgage Loan as set forth in Section 3.3.  If Seller does not elect to repurchase such Mortgage Loan, Seller and Purchaser shall enter into an Assignment and Assumption Agreement in the form of Exhibit C to the Amended and Restated Servicer Participation Agreement dated as of September 30, 2010 between Seller and Fannie Mae with respect to such Mortgage Loan.

### Section 6.9.        Subservicing Agreements Between the Interim Servicer and Subservicers

The Interim Servicer may arrange for the subservicing of any or all of the Mortgage Loans by a subservicer pursuant to a sub-servicing agreement; provided, that such sub-servicing arrangement and the terms of the related sub-servicing agreement must provide for the servicing of such Mortgage Loans in a manner consistent with the servicing arrangements contemplated hereunder; provided, further, that any fees or expenses of such subservicer shall be payable solely by the Interim Servicer.  Each subservicer shall be authorized to transact business in the state or states where the related Mortgaged Properties it is to service are situated, if and to the extent required by law applicable to the subservicer to enable the subservicer to perform its obligations hereunder and under the sub-servicing agreement. Notwithstanding the provisions of any sub-servicing agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Interim Servicer or a subservicer or reference to actions taken through the Interim Servicer or otherwise, the Interim Servicer shall remain obligated and liable to the Purchaser for the servicing and administration of the Mortgage Loans in accordance with the provisions of this Agreement without diminution of such obligation or liability by virtue of such sub-servicing agreements or arrangements or by virtue of indemnification from the subservicer and to the same extent and under the same terms and conditions as if the Interim Servicer alone were servicing and administering the Mortgage Loans.  Every sub-servicing agreement entered into by the Interim Servicer shall contain a provision that such sub-servicing agreement shall terminate with respect to any Mortgage Loans that are sold and transferred to a successor servicer.   All actions of each subservicer performed pursuant to the related sub-servicing

agreement shall be performed as an agent of the Interim Servicer with the same force and effect as if performed directly by the Interim Servicer.

For purposes of this Agreement, the Interim Servicer shall be deemed to have received any collections, recoveries or payments with respect to the Mortgage Loans that are received by a subservicer regardless of whether such payments are remitted by the subservicer to the Interim Servicer.

## ARTICLE 7.

## MISCELLANEOUS PROVISIONS

### Section 7.1.       Amendment

This Agreement may be amended from time to time by Seller, Interim Servicer and Purchaser solely by written agreement signed by Seller, Interim Servicer and Purchaser.

### Section 7.2.       Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws without giving effect to conflict of laws principles thereof.

### Section 7.3.       General Interpretive Principles

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs, and other subdivisions of this Agreement;

(d) a reference to a subsection without further reference to a Section is a reference to such subsection as contained in the same Section in which the reference appears, and this Rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)  the term "include" or "including" shall mean without limitation by reason of enumeration.

### Section 7.4.        Reproduction of Documents

This Agreement and all schedules, exhibits and documents relating hereto may be reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic, or other similar process.  The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile, or further reproduction of such reproduction shall likewise be admissible in evidence.

### Section 7.5.        Notices

All demands, notices, consents, waivers and other communications hereunder shall be in writing and shall be deemed to have been duly given upon receipt if personally delivered, sent by facsimile, mailed by registered mail, postage prepaid or delivered by a nationally recognized overnight courier, to

(i) in the case of the Seller:

GMAC Mortgage, LLC
8400 Normandale Lake Blvd., Suite 350
Minneapolis, Minnesota 55437
Attention:  General Counsel

and

GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, Pennsylvania 19034
Attention:  Capital Markets

(ii) in the case of Interim Servicer:

GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, Iowa 50702

or such other address as may hereafter be furnished to Purchaser in writing by Seller or Interim Servicer, and

(iii) in the case of Purchaser:

_____
_____
_____
Attention:  _____

or such other address as may hereafter be furnished to Seller and Interim Servicer in writing by Purchaser.

Notwithstanding the foregoing, any demand, notice, consent, waiver or communication may be given by any other means if the parties hereto agree to such alternative means in writing.

### Section 7.6.        Severability of Provisions

If any one or more of the covenants, agreements, provisions, or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions, or terms shall be deemed severable from the remaining covenants, agreements, provisions, or terms of this Agreement and shall in no way affect the validity or enforceability of the other covenants, agreements, provisions, or terms of this Agreement or the rights of the parties hereunder.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate in good faith to develop a structure the economic effect of which is as nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

### Section 7.7.        Counterparts; Successors and Assigns

This Agreement may be executed in one or more counterparts, and by the different parties hereto on separate counterparts, each of which, when so executed, shall be deemed to be an original; such counterparts, together, shall constitute one and the same agreement.  This Agreement shall inure to the benefit of and be binding upon Seller, Interim Servicer and Purchaser. The Purchaser shall not (i) transfer any Mortgage Loan during the Interim Servicing Period or (ii) assign its rights, duties or any of its obligations under this Agreement.  None of the Seller nor the Interim Servicer will be obligated to execute any agreement or provide any consent, disclosures, reports or any other information in connection with any assignment, transfer or reconstitution of the Mortgage Loans by the Purchaser (or any successor-in-interest to the Purchaser) or otherwise. This Agreement and all rights, obligations and responsibilities under the Agreement may not be assigned by the Seller without the prior written consent of the Purchaser except for an assignment to any entity for which the Seller controls more than 50% of the voting rights.

### Section 7.8.        Effect of Headings

The headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning hereof.

**Section 7.9.          Other Agreements Superseded; Entire Agreement**

This Agreement supersedes all prior agreements and understandings relating to the subject matter hereof.  This Agreement delivered or entered into pursuant hereto constitutes the entire agreement of the parties with respect to the subject matter hereof.

**Section 7.10.          Survival**

Except as provided in Section 3.3, the representations, warranties, indemnities, covenants and agreements of the parties provided in this Agreement and the parties' obligations hereunder shall survive the execution and delivery and the termination or expiration of this Agreement.

**Section 7.11.          Intention of the Parties**

It is the express intention of the Seller and the Purchaser that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge of the Mortgage Loans by the Seller to the Purchaser to secure a debt or other obligation of the Seller.  Consequently, the sale of each Mortgage Loan shall be reflected as a sale on the Seller's and the Purchaser's business records, tax returns and financial statements.

**Section 7.12.          Costs**

Each party will pay all of its own costs, fees, and expenses incurred (including the fees of its attorneys) in connection with the negotiations for, documenting of and closing of the transactions contemplated by this Agreement.

**Section 7.13.          Limitation on Liability of Interim Servicer**

Interim Servicer and the directors, officers, employees or agents of Interim Servicer shall not be under any liability to Purchaser (i) for any action taken, or for refraining from the taking of any action, in good faith pursuant to this Agreement, (ii) for errors in judgment made in good faith, or (iii) for any action or inaction in accordance with the written direction or consent of Purchaser, provided, however, this provision shall not protect Interim Servicer against any failure to perform its obligations in accordance with any standard of care set forth in this Agreement (unless in accordance with the written direction or consent of Purchaser) or any liability that would otherwise be imposed by reason of willful misconduct, bad faith or negligence in the performance of its duties.  Interim Servicer and any of its directors, officers, employees or agents, may rely in good faith on any document of any kind that appears, on its face, to be properly executed and submitted by any person or entity respecting any matters arising hereunder.

**Section 7.14.          Third Party Beneficiary**

Interim Servicer shall be a third party beneficiary of all of the covenants and representations and warranties made to Seller by Purchaser, and Interim Servicer shall be entitled to enforce the provisions hereof.

**Section 7.15.          Waiver of Jury Trial**

Each party hereby knowingly, voluntarily and intentionally, waives (to the extent permitted by applicable law) any right it may have to a trial by jury of any dispute arising under or relating to this Agreement and agrees that any such dispute shall be tried before a judge sitting without a jury.

**Section 7.16.          Exhibits and Schedules**

The exhibits and schedules to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

**Section 7.17.          No Special Damages.**

Except to the extent necessary to reimburse an indemnified party for judgments actually awarded to third parties, in no event shall any party hereto be liable for any indirect damages, including consequential, incidental, exemplary or special damages, or any punitive damages.

[Signature page follows]

**TO WITNESS THIS**, the Seller, Interim Servicer and Purchaser have caused their names to be signed to this Mortgage Loan Purchase and Interim Servicing Agreement by their duly authorized respective officers as of the day and year first above written.

**GMAC MORTGAGE, LLC,** as Seller and Interim Servicer

By:    _____

Name:_____

Title: _____


_____, as Purchaser

By:    _____

Name:_____

Title: _____

**EXHIBIT A**

**CONTENTS OF CREDIT FILE**

With respect to each Mortgage Loan, the Credit File may include each of the following items if in Seller's possession:

1.      Copy of survey of the Mortgaged Property.

2.      Copy of each instrument necessary to complete identification of any exception set forth in the exception schedule in the title policy (i.e., map or plat, restrictions, easements, sewer agreements, home association declarations, etc.).

3.      Evidence of a hazard insurance policy and, if required by law, a flood insurance policy, with extended coverage of the hazard insurance policy. (Note:  Evidence shall be maintained by Seller in electronic form.  Seller shall produce a paper copy of such evidence upon request by Purchaser.)

4.      Mortgage Loan closing statement (Form HUD-1) and any other truth-in-lending or real estate settlement procedure forms required by law.

5.      Residential loan application.

6.      Verification of employment and income (if required pursuant to the originator's underwriting criteria at the time of origination).

7.      Verification of acceptable evidence of source and amount of down payment (to the extent required under the originator's underwriting guidelines at the time of origination).

8.      Credit report on the Mortgagor.

9.      Residential appraisal report.

10.     Photograph of the property.

11.     Executed disclosure statement.

12.     Insurance premium receipts, tax receipts, ledger sheets, payment records, insurance claim files and correspondence, correspondence, current and historical computerized data files, underwriting standards used for origination, and all other papers and records developed or originated by Seller or others required to document the Mortgage Loan or to service the Mortgage Loan, as available.

13.    A copy or an imaged copy on CD-ROM of the policy of title insurance, including any endorsements thereto or marked commitment (or if such policy has not yet been issued by the insurer, the preliminary title report).

14.    A copy or an imaged copy on CD-ROM of the executed Power of Attorney, if any.

A-2

**EXHIBIT B**

**FORM OF SALE APPROVAL ORDER**

**EXHIBIT C**

**REPORT OF ADVANCES**

## SCHEDULE I

## MORTGAGE LOAN SCHEDULE

[SEE ATTACHED]

**SCHEDULE II**

**PURCHASE PRICE PERCENTAGES**

[SEE ATTACHED]

**SCHEDULE III**

**COLLATERAL EXCEPTIONS REPORT**

[SEE ATTACHED]