# The Haffey-GMACM Action Pleadings



Case 3:08-cv-00919-JBC    Doc # 142    Filed: 12/15/09    Page 1 of 6 - Page ID#: 3

# EXHIBIT A
# STATE COURT RECORD

| AOC-105 | Doc. Code: CI | | Case No. | 08-CI-5970 |
| Rev. 1-07 | 11/21/2008 12:26 pm | | Court | ☑ Circuit ☐ District |
| Page 1 of 1 | Ver. 1.02 | | County | Fayette |
| Commonwealth of Kentucky | | | | |
| Court of Justice    www.courts.ky.gov | | | | |
| CR 4.02; CR Official Form 1 | CIVIL SUMMONS | | | |

08330 00400

**PLAINTIFF**

Shane Haffey and

Heather McKeever

Best Available Copy

**VS.**

Mortgage Electronic Registration System,

**DEFENDANT**

**Service of Process Agent for Defendant:**

MERS CORP

3300 S.W. 34th Ave

Suite 101

Ocala, FL                                                    Florida            34474

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within 20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date:        NOV 21 2008        , 2____

WILMA F. LYNCH, CLERK
FAYETTE CIRCUIT COURT
FAYETTE COUNTY
120 N. LIMESTONE STREET C103                    Clerk
LEXINGTON, KENTUCKY 40507                              D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____Title

| AOC-105     Doc. Code: CI | | Case No. _____ |
|---|---|---|
| Rev. 1-07   11/21/2008 12:37 pm | | Court   ✓ Circuit  ☐ District |
| Page 1 of 1    Ver. 1.02 | **CIVIL SUMMONS** | County   Fayette |
| Commonwealth of Kentucky | | |
| Court of Justice   www.courts.ky.gov | | |
| CR 4.02; CR Official Form 1 | | |

**PLAINTIFF**

Shane Haffey and

Heather McKeever

**VS.**

**DEFENDANT**

GMAC Mortgage, LLC

**Service of Process Agent for Defendant:**

CT Corporation Systems

4169 Westport Road

Louisville

                                  Kentucky        40207

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

     You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

     The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date:   **NOV 2 1 2008**  , 2 _____

WILMA F. LYNCH, CLERK
FAYETTE CIRCUIT COURT
FAYETTE COUNTY
120 N. LIMESTONE STREET C103
LEXINGTON, KENTUCKY 40507

                  By _____ Clerk
                                      D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

               Served by: _____

                                           Title

COMMONWEALTH OF KENTUCKY
FAYETTE COUNTY CIRCUIT COURT
DIVISION _____ 7
CIVIL ACTION NUMBER 08-CI-5970

SHANE HAFFEY AND                                     PLAINTIFFS
HEATHER McKEEVER

NOV 2 1 2008

V.                          **COMPLAINT**

MORTGAGE ELECTRONIC REGISTRATION                    DEFENDANTS
SYSTEMS, INC.;
(an unregistered foreign corporation)

GMAC MORTGAGE, LLC;

GMAC MORTGAGE, LLC
*As Loan Servicing Agent for the Bank of the Bluegrass and Trust Co.;*

GMAC MORTGAGE, LLC
*As Loan Servicing Agent for the Concealed and Unknown Person(s)*
*who are the "Real Parties in Interest,"*
*As the Agent for the Concealed True Lender(s) and/or*
*The Holder(s) in Due Course of an Original Promissory Note*
*who Claim any Interest in the Subject Matter of this Action,* and;

THE CONCEALED AND
UNKNOWN PERSONS WHO ARE THE "REAL PARTIES IN INTEREST,"
AS THE CONCEALED TRUE LENDER(S) AND/OR THE
HOLDER(S) IN DUE COURSE OF AN ORIGINAL PROMISSORY NOTE
WHO CLAIM ANY INTEREST IN THE SUBJECT MATTER OF THIS ACTION
*By and through their Agent for Service of Process GMAC Mortgage, LLC*

*****************************

Come the Plaintiffs, Shane Haffey and Heather McKeever, a married couple,
hereinafter, ("Haffey") and ("McKeever") and collectively hereinafter, ("the
Homeowners") and for their Complaint state the following:

## The Parties

1. The Homeowners are the legal and equitable owners of the real property known as 3250 Delong Road, (Fayette County) Lexington, Kentucky, 40515. The Homeowners have legal title to and are in possession of the following property:

> BEING all of Tract 2, as shown by Final Record Plat of a Portion of The Sandlin Farm Subdivision to the City of Lexington, Fayette County, Kentucky thereof of record in Plat Cabinet H, Slide 595, in the Fayette County Clerk's Office; and the improvements thereon being known and designated as 3250 Delong Road )formally known as 3250 Walnut Hill Road, Lexington, Kentucky.
>
> BEING the same property conveyed to Heather McKeever and Shane M. Haffey, by deed, dated October 24, 2003 of record in DEED BOOK 2408, PAGE 505 in the Fayette County Clerk's Office.

2. The Defendant, Mortgage Electronic Registration Systems, hereinafter, ("MERS,") is a foreign entity, which is unregistered and unlicensed in Kentucky to transact business and thus, has been and continues to transact and conduct business and operates fraudulently and illegally in the Commonwealth of Kentucky. MERS claims an interest in said property as a recorded Mortgage Assignee, adverse and hostile to Plaintiff's right and title by the recording of "Assignment of Mortgage," found in BOOK 449 PAGE 380 of the Fayette County Clerk and which contains a date of May 14, 2007. The Defendant, MERS is illegally and fraudulently listed in the public records of Fayette County as an Assigned Mortgagee against Heather M. Haffey and Shane M. Haffey. No Mortgage Agreement was ever signed by the Plaintiffs with the Defendant, MERS. No Notice or Disclosure was ever given to the Plaintiffs of any Assignment. No Promissory Note or other evidence exists which could ever make the Plaintiffs indebted to the Defendant, MERS in any way. MERS has never had nor will it ever have standing to enforce the illegal and fraudulent Mortgage and/or Mortgage Assignment in the

2

Commonwealth of Kentucky. MERS has no claim or interest in said land whatsoever. MERS may have a business relationship with the other Defendants to this action and has conspired with and colluded with the other Defendants to commit fraudulent and illegal acts.

3.    The Defendant GMAC Mortgage, LLC, hereinafter, ("GMAC"), is a foreign corporation which is served as a Defendant in several capacities:    As a corporate Defendant in its own right, as the Loan Servicing Agent for the Kentucky based Bank of the Bluegrass and Trust, hereinafter ("the Bank") and as both the Loan Servicing Agent and Agent for Service of Process for the Defendants named as the Concealed and Unknown Persons who are the "Real Parties in Interest," who are the Concealed True Lender(s) and/or Holder(s) in Due Course as to Claim any Interest in the Subject Matter of this Action and who are not registered or chartered to do business in the State of Kentucky as a lender or bank.

4.    At all times relevant hereto the Bank was a "correspondent lender" who was lending according to the assignee's underwriting guidelines. The Bank was at all times acting as an agent of all the other Defendants included in this action.    Collectively, GMAC in all its capacities, MERS and the Concealed "Real Parties in Interest" are hereinafter ("the Defendants"), are considered jointly and severally liable as "Predatory Lenders" and are jointly and severally liable for any and all causes of actions, which are the subject matter of this claim.

5.    At all time relevant hereto and in relation to the matters at hand, McKeever was the sole signatory of a May 18, 2007, Promissory Note, hereinafter, ("the Note"), and all

other loan documents pertaining thereto.   Both McKeever and Haffey, were Mortgagors under the Note.

### Preliminary Statement

6.   The Homeowners seek a remedy under a multitude of State and Federal Statutes, TILA, HOEPA, RESPA, FDCPA and FCRA, and make multiple Common Law Claims to obtain rescission recognition, injunctive relief, redress, restitution, disgorgement, monetary damages, statutory penalties, damages for mental anguish, punitive damages, pro se time reimbursement, attorney's fees and costs, and  equitable relief against the Defendants for statutory violations, for engaging in fraudulent acts and practices, and for acting in bad faith in relation to the Note and Mortgage, executed on May 18, 2007, and for acting in bad faith in regards to the settlement of those claims.   The Homeowners assert additional and separate claims for any and all causes of action stemming from subsequent violations of the TILA and RESPA pertaining to Loan Rescission and a Qualified Written Request noticed on October 15, 2008.    The Homeowners assert separate and additional claims for the Defendants failure to respond to the Homeowners attempts to settle the Rescission and Qualified Written Request claims, prior to the filing of litigation and keep the claims "out of Court" and "between the parties" as required by the stated purposes of TILA and RESPA and the accompanying case law pertinent thereto.   Under the undisputed facts of the case as applied tot the law, there is no one party legally entitled to enforce the Note and Mortgage.   A separate claim is made as to the Defendants' continued acts of bad faith in relation to the Homeowners attempt at settlement of the claims and the Homeowners' unilateral attempt to mitigate damages.

4

## Statement of the Facts and History

7.    Prior to the execution of the Note and Mortgage on May 18, 2007, the Homeowners had a longstanding relationship with the Bank of the Bluegrass, a locally owned Community Bank in Lexington, Kentucky, hereinafter, ("the Bank") dating back to 2001.    Over the years, the relationship involved day to day banking, multiple real estate loans and mortgages and lines of credit secured by real estate.    The Homeowners and the Bank had a history of re-financing these loan and Mortgages.

8.    In the first quarter of 2007, the Homeowners were approached by a representative of the Bank to refinance their February 21, 2007, in-house, interest only open-ended high interest indexed loan, to an in-house, interest only, closed-end, fixed rate loan.    Said February 21, 2007, Promissory Note is attached hereto and incorporated herewith as Exhibit "A."    In exchange for the agreement to re-finance, the Bank agreed to fix and lower the interest rate to below seven percent (7%) and consistent with their previous course of conduct over the years, remain open to re-negotiation.    The terms of the loan were to remain the same as the February 21, 2007 loan, save for the fact that the interest rate would no longer be tied to an index and would be fixed.

9.    The Bank expressed its need to convert the loan to a closed-end loan, due to the fact that the Bank examiners were due at the Bank in the third quarter of 2007.    The Bank was subsequently placed under a Cease and Desist Order by the FDIC and Kentucky Department of Financial Institutions on July 8, 2008.

10. Upon the agreement of the terms, the closing for the re-financing was set for May 14, 2007 at 4:00pm. No documents pertaining to the loan were ever presented to McKeever prior to the closing. At least three days before the loan was to be consummated, a request for the Hud-1 and other disclosure documents was made to the Bank. McKeever was informed the documents were not "ready." The documents were never made available.

11. On May 14, 2007, a Bank representative appeared for the 4:00pm closing one hour late, at approximately 5:00pm, with a package of loan documents; which were presented to McKeever to sign. All of the documents were being seen for the first time by McKeever. Many of the documents were fraudulently back dated to an erroneous date of March 28, 2007. These back dated documents included, but may not be limited to the following: Uniform Residential Loan Application, Addendum to Good Faith Estimate Required Use of Settlement Providers, Servicing Disclosure Statement, Lock-in Confirmation, General Disclosure, Borrower's Certification and Authorization, Good Faith Estimate, and Truth in Lending Disclosure. The back dated documents were signed by McKeever, with the correct date and time. The HUD-1 was also signed at this time. The aforementioned documents are attached hereto and incorporated herewith as Exhibit "B." The HUD-1 executed on May 14, 2007, is attached hereto as Exhibit "C." The May 14, 2007, transaction is referred heretofore and throughout as ("The Bogus Loan.")

12. The Loan Application referred to in Exhibit "B," was filled out by a Bank representative without the knowledge or consent of the Homeowners. The application

6

was presented to McKeever for the first time for her signature at the Bogus Loan Closing on May 14, 2007, and was to be utilized as part of the official documentation of the Bogus Loan. The application was signed by McKeever on May 14, 2007, under duress and in spite of the fact that mistakes were pointed out to the Bank as to its content.

13. On May 14, 2007, at approximately 5:30pm and subsequent to the execution of the documents referred to as Exhibit "B," the amortization schedule was presented. It was then McKeever discovered that she had been given the wrong loan. The loan presented and the documents previously presented and executed pertained to a 30 year fully amortized conventional loan, bearing no relation to the agreed upon loan.

14. On May 14, 2007, at approximately 5:30pm, the Bank representative informed McKeever that no mistake had been made; that it was in McKeever's best interest to sign the Note and Mortgage as presented, and that the bank representative was doubled parked and in a hurry to get home. McKeever refused to execute the Note and Mortgage, now realizing that she was a victim of a "Bait and Switch" scheme and the victim of Predatory Lending Practices. The Bank representative left, stating that McKeever's failure to sign the remainder of the Bogus Loan documents, was "a big mistake."

15. On May 14, 2007, at approximately 5:45pm, the President of the Bank was reached by telephone for the purpose of notice and the seeking of advice. The Homeowners had a history of transacting all business by and through the President of the Bank directly. By telephone, the President of the Bank responded that he had nothing to do with the actual paperwork produced for the loan, but did give McKeever this advice, "I know one thing, if you don't close this loan today, you'll be considered in default of

7

your existing loan to us, and this will probably keep you from getting another loan somewhere else." True to their threat and irregardless of an agreement otherwise, the February 21, 2007, loan was reported by the Bank to the major credit bureaus as delinquent as of May 14, 2007.

16.   The Note and mortgage presented on May 14, 2007, substantially differed and bore no relation to the in-house interest-only agreed upon transaction.   The attempted transaction known as the Bogus Loan, was base in fraud.

17.   On May 18, 2007, under duress, and believing that her future borrowing power was at stake, McKeever agreed to execute a "new" loan with the Bank, with the original agreed upon terms of the re-financing. However, the bank refused to issue the loan without an additional twenty-five hundred dollar ($2500.00) discount fee.

18.   McKeever appeared alone to sign the documents the afternoon of May 18, 2007. The Bank representative failed to appear.    After an hour and a half wait, certain documents appeared, including a Note, Mortgage and HUD-1.   The HUD-1 from the May 18, 2007, transaction reveals the collection of a twenty-five hundred dollar ($2500.00) discount fee, which is not found on the May 14, 2007, Bogus Loan HUD-1 and when compared to the Bogus Loan HUD-1, reveals the fact that additional interest was collected by the Bank.   Both the May 14, 2007 Bogus Loan HUD-1 and the HUD-1 from the consummated May 18, 2007 transaction, contain a beginning interest collection date of May 18, 2007.    The HUD-1 from the May 18, 2007 executed transaction is attached hereto and incorporated herewith as Exhibit "D."

19.  The only executed document received by McKeever on May 18, 2007, was the HUD-1.  No Notice of Right to Rescind was received.   McKeever left the closing with the understanding that the transaction was not consummated until Haffey signed the Mortgage.

20.  On May 18, 2007, Haffey arrived alone after-hours and subsequent to McKeever, for the purpose of executing the Mortgage only.   The only document Haffey signed in relation to McKeever's May 18, 2007, loan was the Mortgage.   Haffey did not execute any other document or receive any documents, upon his departure, including a Notice of Right to Rescind.   The Homeowners did not receive a Notice of Right to Rescind at any time relevant to the May 18, 2007 transaction. The required Truth-In-Lending documents were never presented or executed by McKeever pertaining to the May 18, 2008 transaction, including, but in no way limited to, interest rate and escrow disclosures or payment and amortization schedules.   The Homeowners were never sent any documents in relation to the May 18, 2007 Note and Mortgage, subsequent to the closing.

21.  The Note, Mortgage and HUD-1 for the consummated May 18, 2007 transaction, filed in the public record, incorrectly lists the date of the transaction as May 14, 2007. On or about August 1, 2007, McKeever discovered the date mistake on the HUD-1 and the Bank was notified by and through their servicing agent, GMAC.    The Note, Mortgage and HUD-1, signed on May 18, 2007, should have been revised to reflect the correct date.    On August 16, 2007, a Response Letter from GMAC was sent to McKeever, wherein GMAC refused to make the correction.   The letter is attached hereto and incorporated herewith as Exhibit "E."

22.     The May 18, 2007, executed HUD-1, improperly contains the same Loan Number as the rejected May 14, 2007, Bogus Loan transaction.   The loan consummated on May 18, 2007 and the rejected Bogus Loan of May14, 2007, bear no relationship to each other and should have been numbered accordingly.

23.   GMAC began collecting interest on the May 18, 2007, re-financed loan, (which the Homeowners believed was on behalf of the Bank,) on May 18, 2007.   Interest was charged and collected in spite of the fact that the transaction was consummated after 5:00pm on May 18, 2007.   The funds for the transaction were illegally disbursed on the either the same day or some day prior to the signing of the Note and Mortgage.

24.     In September of 2008, McKeever discovered through a telephone conversation with a representative of GMAC that the Bank had likely never served as a "true" Lender or holder in due course of the Note or as Mortgagee.     It was then discovered that the loan was table funded and that The Bank of the Bluegrass had fraudulently acted only as an agent for the concealed "Real Party in Interest." The identity of the "Real Party in Interest" remains concealed.   Before September 2008, the Homeowners believed that the Note and Mortgage were held by the Bank of the Bluegrass and that GMAC was merely acting as the Servicing Agent for the Bank of the Bluegrass.   In September 2008, the Homeowners learned, through the public record, that the Mortgage had been assigned on May 14, 2007, to the entity called MERS.   The table funding and assignment occurred without the Homeowners' knowledge or consent and before the execution of the Note and Mortgage.

25.   The Homeowners believed at all times relevant hereto, that their loan was being re-financed by and throught he same Community Bank they had been working with for

10

the better part of a decade.   The Defendants failed to disclose and reveal the real parties in interest before, during or after the loan closing.   The Homeowners to this date, have no knowledge as to the identity of the True Lender, the identity of the party in possession of the original Promissory Note, the beneficial owner and/or the holder(s) in due course.

26.   By failing to disclose the True Lender, and any and all transfers and assignments of the Note and Mortgage, the Defendants have deliberately and fraudulently hidden behind an opaque curtain and deprived the Homeowners of the knowledge of who they had contracted with and were indebted to pursuant to the Note and Mortgage.

27.   By failing to disclose the True Lender, the Homeowners were put in an untenable position, and have now discovered, that there was a concealed "True Lender" and that the Bank of the Bluegrass, the lender listed on the Note, Mortgage and HUD-1, was a pretender lender; and have discovered that the Bank was paid an undisclosed and fraudulent fee for pretending to be the lender.   The Homeowners were left not knowing who to pay, not knowing who has authority to communicate with them, and not knowing to whom they should address objections and claims.

28.   By failing to disclose the True Lender, the Defendants deliberately and fraudulently induced the Homeowners to execute a transaction they would not otherwise have executed.

29.   Through ommission and fraud, McKeever  paid undisclosed closing fees, yield spread premiums, undisclosed finance charges, payments, kickbacks, re-insurance and insurance premiums and kickbacks to parties hiding behind the Defendants' opaque curtain, and to unknowingly pay undisclosed parties who were not in privity with the

Homeowners and deprived the Homeowners of information and material disclosures vital to the decision of whether to execute the Note and Mortgage.

30.   In September 2008, the Homeowners discovered that on May 14, 2007, a yet to be executed Mortgage bearing their names had been separated and bifurcated from the May 18, 2007 Note and Assigned to an unrelated party, MERS, thereby making the Mortgage unenforceable.   The assigment was made before the actual Morgtgage was executed by the Homeowners on May 18, 2007.   The Mortgage was fraudulently and illegally assigned to MERS before the execution of the Mortgage; thereby making the Mortgage unenforceable.

31.   The Concealed and Unknown "True Lender," other "Real Parties in Interest" and all other Defendants named herein, may be parties to unnoticed and illegal insurance contracts, credit default swaps, cross guarantees, and buyback provisions with other unknown parties and have likely moved the Note through the chain of securitization, replacing McKeever's Note, with other Notes,  and may have disregarded buyback and substitution requirements.

32.   The Homeowners have no way of knowing whether the Note, even if initially assigned to a specific securitized pool remains in that pool, or has been supplemented with another note, and/or has been satisfied by by a third party guarantee contract or insurance policy.  A concealed  mortgage aggregator may have paid at least 102.5% of the principal of the Note to a "lender" under a Pooling and Service Agreement or under an Assignment and Assumption Agreement, which could even predate the closing.

33.   The Note, having been satisfied by a third party guarantee contract or insurance

policy, may have been satisfied in full, and hence relieved the Homeowners from further

obligation from the Note and Mortgage as of the date that payoff occurred.

34.     Through overcollateralization and reserve pools, and hierarchical pledges

between divisions, hereinafter ("tranches") of a Special Purpose Vehicle corporation, the

Defendants may have assigned the funds paid from unknown borrowers and unknown

promissory notes in a tranche below the tranche  assigned to the Homeowners without

their knowledge or consent.     Additionally, the payments made by the Homeowners on

the Note may have been fraudulently and illegally allocated to other loans in tranches

above the tranche  assigned to the Note.

35.     On October 15, 2008, with proper notice to all parties involved, the fraudulent,

illegal and undisclosed Note and Mortgage were de facto and legally rescinded under the

Truth in lending Act, hereinafter ("TILA").   A Qualified Written Request pursuant to the

Real  Estate  Settlement  and  Procedure  Act,  hereinafter,  ("RESPA")  was  sent

simultaneously with the Rescission Notice to GMAC.   Said Notices and the Qualified

Written Request to GMAC, are attached hereto as Exhibit "F."   Under the TILA, the

parties had twenty (20) days, up and until November 4, 2008, to sign any and all

necessary documents releasing the mortgage and rescinding the May 18, 2007

transaction.   Under RESPA, GMAC had twenty (20) days, up and until November 4,

2007, to provide the requested information.   The transaction was not rescinded as

required by TILA, nor has the Qualified Written Request pursuant to RESPA been

answered. The Defendants have failed in their duty to abide by both TILA and RESPA.

36.   Numerous attempts to procure a Settlement have been made by the Homeowners

prior to the filing of this action, with at least two separate written letters and the unilateral

voluntary Production of Documents to Defendants' counsel. The Homeowners attempts at communication and settlement have been ignored by and through the Defendants' counsel, the law firm of Dinsmore & Shohl. The last "good faith" attempt at settlement was served and received on November 13, 2008. Said letter and is attached hereto and made part hereof as Exhibit "G." To date, no response has been made.

37. Although the Consummated May 18, 2007, transaction was rescinded as a matter of law on October 15, 2008, the Defendants have attempted to collect on the Note and have failed to release the Mortgage. A written notice was sent to McKeever on November 15, 2008, from GMAC, stating that the Mortgage payment was due and owing as of that date. On November 13, 2008, through the "good faith" written settlement attempt, McKeever attempted to procure by written agreement recognition of the fact that pursuant to RESPA, TILA, the Consumer Protection Act, and the Fair Credit Reporting Act, the Defendants are prohibited from attempted collection on the Note and/or Mortgage; or reporting such illegal collection to any of the Credit Bureaus. The request has been ignored, along with settlement attempts. The Defendants jointly and severally continue their course of fraud and "bad faith" as of the day of the filing of this Complaint.

38. On October 16, 2007, the day after the Notice of Recission, GMAC reported in writing to McKeever the fact that her October 2008 payment would be recorded as "late" by GMAC. Said payment, which was the last payment due and owing prior to Rescission was timely made and the notation in the file that the payment was "late" is based in fraud.

**Causes of Action**

**Count I.**
**Violations of the Truth in Lending Act, 15 U.S.C. § 1601**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 38 and for their cause of action state the following:

39.    The Defendants have jointly and severally violated the strict liability and remedial statute, namely, TILA, 15 U.S.C. § 1601 *et seq.*, and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1 *et seq.*, by failing to clearly and accurately provide the Homeowners with most of the required material disclosures under the Act, including, but in no way limited to, the receipt of a Notice to Cancel/Rescind, the conspicuous disclosure of the prepaid finance charges as defined by 15 U.S.C. §§ 1602(u), 1635(a), 12 C.F.R. § 226.23(a)(3), 15 U.S.C. § 1605(a), and 12 C.F.R. § 226.4; the payment of a mortgage broker fee that should have been included in the finance charge;  as well as the deliberate concealment of the true identity of the Lender and Mortgagee.    Moreover, the few disclosures actually received by the Homeowners were materially inaccurate. 12 C.F.R. § 226.23(g)(1).

40.    The core purpose of the Act, which is to assure a meaningful disclosure of credit terms, including the identity of the real party in interest with which the Agreement is made, and the requirements of such, have been deliberately frustrated and violated by the Defendants.    Said violation entitled the Homeowners to rescind the Mortgage under the Act and receive a refund of all finance charges paid to date.

41.    In mortgage refinancing transactions, TILA provides borrowers a three-day period in which they can rescind their loans and the borrowers are to receive Notice of Right to Cancel in writing.    15 U.S.C. § 1635(a).(fn14).    When the Lender does not

15

comply with TILA's notice and disclosure requirements, the borrower has a three-year right of rescission period. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(3). The transaction was rescindable pursuant to the Act and the disclosures should have been made to each consumer who had the right to rescind. Those disclosures were not made to either McKeever or the Mortgagor, Haffey.

42. The Mortgage was timely and lawfully rescinded by The Homeowners and the rescission demand has been ignored by the Defendants, contrary to the requirements of the Act. The Rescission Statute was intended to be self-enforcing, failure to comply with the rescission is a de facto violation of the Act. Damages are based on a strict liability standard. The Act and Regulation Z make it clear the security interest and obligation to pay charges are automatically voided. Courts do not have equitable discretion to alter substantive provisions of TILA. The Court's modification authority extends only to the procedures specified by section 1625(b). The voiding of the security interest is not a procedure under the statute and has occurred ab initio. The statute, at section 1635(b) states: "When an obligor exercises his right to cancel..., any security interest given by the obligor... becomes void upon such rescission". The failure of the Defendants to timely fulfill the rescission and finance charge reimbursement requirements under the Act, has created an additional and separate claim under the Act. The Homeowners have suffered injury as to the additional separate claim.

43. In addition to canceling the security interest and mortgage, rescission canceled any liability of McKeever to pay finance and other charges, including accrued interest, points, broker fees, closing costs. The Defendants must refund all finance charges and fees paid. As of October 15, 2008, McKeever was no longer obligated to pay finance

charges and fees to any entity under the terms of the Note. The "lender" failed to respond within twenty (20) days to the notice of rescission, on or before November 4, 2008 and a clear title in relationship to the Defendants, vested in the Homeowners and they are no longer required to pay the loan. The Homeowners have suffered damages as a result of the violations of the Act and seek damages, statutory penalties, punitive damages, and attorney's fees, for the multitude of TILA violations suffered at the hand of the Defendants, and seek an Order from this Court refunding all finance charges and fees previously paid, an Order recognizing the fact that the Defendants have no standing to collect or foreclose and shall Cease and Desist from attempting to collect on the Note or attempting to enforce the Security Interest, and an Order releasing the Mortgage as a matter of law.

## Count II.
### Violations of the Home Ownership and Equity Protection Act 15 U.S.C. § 1639 and KRS 360

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 43 and for their cause of action state the following:

44. The Homeowners' Loan and Mortgage was a high-rate mortgage as defined by HOEPA and KRS 360. The Defendants failed to make additional disclosures regarding the loan, in violation of HOEPA, 15 U.S.C. § 1639 *et seq.* The claim is timely filed under 15 U.S.C. § 1635(f). HOEPA, required the defendants to disclose additional information at least three business days prior to the closing of the loan as a high-rate loan. 15 U.S.C. § 1639. The Act was violated as to the default interest rate, balloon payments, negative amortization, prepaid

payments, and improvident lending.  15 U.S.C. § 1639(c)-(h); 12 C.F.R. 226.32(d).

The failure to deliver the required HOEPA notice or inclusion of a prohibited term

triggers an extended three-year right of rescission pursuant to  15 U.S.C. § 1639(j); 12

C.F.R. 226.23(a)(3).  The violations give rise to "enhanced" monetary damages under 15

U.S.C. § 1640(a)(4), constituting a refund of all payments made by the borrower.   The

Defendants  failed to materially comply with the disclosure requirements, and the

Homeowners  seek damages jointly and severally against the Defendants and

rescission pursuant to 15 U.S.C. § 1640 and for the violations Kentucky's

Predatory Lender Act .

### Count III.
### Violations of the Real Estate Settlement Procedures Act 12 U.S.C. § 2601

The Homeowners adopt, affirm and reiterate each and every allegation set forth in

Paragraphs 1 through 44 and for their cause of action state the following:

45.  On October 15, 2008, the Homeowners gave notice in writing and served

GMAC, by Certified Mail, a "Qualified Written Request" pursuant to  12 U.S.C. § 2601

*et seq.*, namely RESPA.   Said Request was ignored by the Defendants and the

Defendants have failed to reply as required by RESPA.  The Lender's statutory duty to

provide the requested information was triggered.   The duty was breached and the Act

violated.  The failure to respond to the request constitutes a separate claim under the Act

in addition to the actual violations of the Act surrounding the actual loan.   The

Defendants are jointly and severally liable for such.   The Homeowners have suffered

damages as a result of the violations of RESPA and seek damages, statutory penalties,

18

punitive damages, and attorney's fees, for the multitude of RESPA violations suffered at the hand of the Defendants, and seek an Order from this Court requiring the information contained in the Request be submitted to this Court and made part of the record.

46.    Upon information and belief, money was disbursed, other than in an escrow account, services were performed and materials delivered on or before May 18, 2007, before the statutory rescission period had expired, and before the Loan and Mortgage were legally executed and in violation of RESPA and other related statutes.    Upon information and belief, disclosed and undisclosed parties were funneled money and paid undisclosed fees and kickbacks in relationship to the transaction  The HUD-1, relative to the transaction is materially inaccurate and based in fraud.

### Count IV.
### Defamation of Title
### Violations of the Fair Debt Collection Practices Act 15 U.S.C § 1692
### and the Fair Credit Reporting Act 15 U.S.C § 1681

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 46 and for their cause of action state the following:

47.    On October 15, 2008, the fraudulently concealed and unknown True Lender, and/or holder in due course of the original Promissory Note, executed on May 18, 2007, became an unsecured creditor as a matter of law; when the transaction was rescinded. On November 15, 2008, McKeever received a written Notice through electronic mail from GMAC, stating that a Mortgage payment was due and owing as of that date.    The Defendants' counsel has demanded that the Homeowners communicate only through the agents at their law firm.    The Homeowners have respected that request.    However,

19

Defendant's counsel has refused to respond to the November 13, 2008 request that collection cease and desist.

48. The transaction consummated on May 18, 2007, was rescinded on October 15, 2008. The rescission notice was sent along with the RESPA Qualified Written Request, which requested a full accounting of the transaction and a refund of all fees paid. The Defendants are fraudulently and illegally attempting to collect on the Note at this time; have failed to release the Mortgage, and are jointly and severally liable for damages and sanctions for their violation of the Federal Fair Debt Collection Practices Act, hereinafter ("FDCPA"), the Federal Fair Credit Reporting Act, hereinafter ("FCRA") and the defamation of title.

### Count V.
### Violations of Kentucky Revised Statute 365
### Unfair Trade Practices

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 48 and for their cause of action state the following:

49. The Defendants' actions constituted unfair and deceptive practices in violation of KRS 365. Violations of TILA, HOEPA, RESPA, FDCPA and FCRA constitute per se violations of the Act. The foundation of the Unfair Fair Trade Practice is fraud prevention. The illegal and unnoticed assignment of the Mortgage to the unlicensed, unregistered and unrelated entity, MERS shows a per se violation of the Act. The Homeowners justifiably relied on the Bank's fraudulent oral statements as to the transaction and on the authenticity and truthfulness as to the identity of the parties and the accurate and truthfulness of the information and dates on the transaction documents and the disclosure of the "true" identity of the parties and the "true" actual terms of the

20

transaction.  The Homeowners have been injured by the Defendants violation of the Act and are jointly and severally liable to the Homeowners for the violations of such.

**Count VI.**
**Breach of Fiduciary Duty**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 49 and for their cause of action state the following:

50.    By May 2006, a longstanding history existed and  relationship had been established between The Bank and The Homeowners.   There had been multiple previous loan transactions, promissory notes and mortgages between the Bank and the Homeowners over the years; on which a relationship of trust and confidence had been built and which created a Fiduciary Relationship.   The Fiduciary Relationship imposed a duty upon the bank to act in good faith and to fairly represent the Homeowners' interests as borrowers.  The Bank owed a Fiduciary Duty to The Homeowners to disclose material facts affecting the loan transaction.    The Bank was in a relationship with the Homeowners that was based on a high level of trust and confidence.    The facts as attested herein and the documentary evidence show that the Bank and the Defendants breached their affirmative duty to the Homeowners which existed by and through the Fiduciary Relationship.   As the Bank acted as a "pretender lender" and was hence, an agent of GMAC, the Defendants are jointly and severally liable for the breach of the Fiduciary Duty and all damages stemming from such.

51.  The Defendants owed a fiduciary duty to the Homeowners in their individual roles as "Lenders" in the lending process, separate and apart from their fiduciary duty imputed from the actions of their agent, the Bank, as referenced in the paragraph

21

beforehand.   They have jointly and severally breached that duty to the Homeowners and are liable accordingly.

## Count VII.
### Fraud by Misrepresentation

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 51 and for their cause of action state the following:

52.   The deceptive acts of the Defendants as to the inducement of the Homeowners to enter the transaction and as to a multitude of misrepresentations in the execution of such; including, but not limited to the true identity of the Lender and Mortgagee, constitute fraudulent misrepresentation. The record shows, by clear and convincing evidence, that there existed in the inducement and execution,  material representations which were false, were known to be false or made recklessly, which were made with inducement to be acted upon; that the Homeowners acted in reliance thereon and have suffered injury due to such.   The facts as attested herein, and the documentary evidence shows that the deceptive acts of the Defendants constitute fraudulent misrepresentation and the Defendants are jointly and severally liable for their acts of fraud by their misrepresentation and all damages stemming from such, including punitive damages and attorney's fees.

## Count VIII.
### Fraud by Omission

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 52 and for their cause of action state the following:

53.   The facts and documentary evidence show that the Bank had a duty to disclose

material facts, failed to disclose those facts, that the failure induced the Homeowners to

act, and the Homeowners suffered actual damages due to the fraudulent omissions.

54.  Prior to and leading up to the  May 18, 2007 closing, the Defendants had a duty

to disclose the true nature of their relationship and the fact that the Bank was merely a

"Pretender Lender" and thus, a agent for the Concealed and Unknown Lender.   The

Defendants fraudulently omitted to reveal to the Homeowners the fact that the Mortgage

had been bifurcated and separated from the note and had been assigned to the unrelated

foreign entity, the Defendant MERS.

55.  The failure to disclose the material fact, induced the Homeowners to enter into a

loan with unknown and unrevealed entities and the Homeowners have suffered actual

damages as a direct result of Fraud by Omission.   The Defendants are jointly and

severally liable for their acts of Fraud by Omission and all damages stemming from such.

### Count IX.
### Violations of Kentucky's Consumer Protection Act KRS 367

The Homeowners adopt, affirm and reiterate each and every allegation set forth in

Paragraphs 1 through 55 and for their cause of action state the following:

56.  KRS 367.170, states that   "(1) Unfair, false, misleading, or deceptive acts or

practices in the conduct of any trade or commerce are hereby declared unlawful [and] (2)

For the purposes of this section, unfair shall be construed to mean unconscionable."

57.  The Defendants committed "false, misleading, or deceptive acts" in their loan

transaction with the Homeowners.   The Violations of the Consumer Protection Act

demonstrate intentional or grossly negligent conduct that amount to substantial wrongs.

The Defendants are jointly and severally liable for their violation of the Act and all damages stemming from such.

## Count X.
### Conspiracy and Violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 58 and for their cause of action state the following:

59.   At all time relevant hereto;  agreements have been made by and between the Defendants to deceive the Homeowners;  and to break Kentucky and Federal law. The Defendants have and continue to collude together to achieve  unlawful aims by unlawful means.   The Defendants as co-conspirators took overt steps to accomplish their illegal acts and have clearly demonstrated their intention to break the law; thereby "breathing together" in their fraudulent and illegal acts.    The Defendants have engaged in a "Racketeering Activity" as defined by 18 U.S.C. § 1961, ("RICO").   The Homeowners have suffered injury as a result and are entitled to any and all relief jointly and severally from the Defendants for their particpation in the conspiracy and the violations under RICO.

## Count XI.
### Breach of Contract

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 59 and for their cause of action state the following:

60.   The Defendants materially breached the express and implied contracts pursuant to the Loan Agreement and Mortgage, by their acts and omissions including, but not limited to:    The disbursement of the Loan without the issuance of a Notice of Right to

24

Case 3:08-cv-00310-3679-4 Filed 01/22/13 Entered 01/22/13 15:16:09 Exhibit 1
(Part 4) Pg 30 of 107

12-12020-mg Doc 2679-4 Filed 01/22/13 Entered 01/22/13 15:16:09 Exhibit 5
Doc #: 1 11/4/08 12/15/08 Page 28 of 67 Page ID #: 5

Cancel and other TILA disclosures to the Homeowners; by the concealment of the "Real Parties in Interest;" by the fraudulent dating of the loan documents and mortgage; through their conspiracy and fraudulent acts in relation to the identity of the True Lender and Mortgagee and for the multitude of the violations of the aforementioned Statutory Acts contained and attested to herein.

### Count XII.
### Violations of the Kentucky Financial Services Code KRS 286

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 60 and for their cause of action state the following:

61. The Homeowners' loan was obtained and based in deception and fraud. The obligation under the Note and Mortgage was unwittingly made with a concealed and unknown "Lender." The "True Lender" is not registered, chartered or licensed to operate as a "Bank" and "Lender" as defined by KRS 286 and is operating illegally as a Financial Institution regularly engaged in business in Kentucky. The "True Lender" operated and continues to operate fraudulently and illegally in violation of the Code. The Homeowners have suffered injury and damages as a result of those violations and the Defendants are jointly and severally liable to the Homeowners for such.

WHEREFORE, the Plaintiffs respectfully request and pray for the following:

1. That the "Real Party in Interest" produce the original of the Note, which is the subject matter of this action, and that said original Note be kept in the custody of this Court;

2. That the Note and Mortgage be declared null and void by this Court, and that

the Note be destroyed by this Court in the presence of the Homeowners;

3.  That title to said land be quieted as to the Defendants in this action, the

    Mortgage canceled by Court Order, and the Fayette County Recording Clerk

    be Ordered to note in the public record that the Mortgage is released;

4.  That the Homeowners be awarded all damages and equitable relief under the

    myriad of State and Federal Statutes  which were and continue to be violated

    and be awarded damages and equitable relief for their Common Law Claims,

    said relief including, but not limited to:  Obtaining rescission, injunctive relief,

    redress,  restitution, disgorgement, monetary damages, statutory penalties and

    sanctions, damages for mental anguish, punitive damages, lost wages, pro se

    representation time reimbursement, attorney's fees and costs, and any and all

    other relief they are entitled to against the Defendants;

5.  That the Defendants be forever barred and enjoined from asserting any claim

    to the subject property;

6.  That Plaintiffs be declared the owner in fee simple and entitled to possession

    of the subject property free and clear of all encumbrances of the Defendants;

7.  A trial by jury and;

8.  Any and all relief the Plaintiffs are entitled and which this Court finds just and

    equitable.

                                           Respectfully Submitted,

HEATHER McKEEVER                           SHANE HAFFEY
3250 DELONG ROAD                           3250 DELONG ROAD
LEXINGTON, KY  40515                       LEXINGTON, KY  40515
(859) 552-7388                             (859) 552-7388

26

Case 3:08-cv-00920-2009    Doc # 1-4    Filed 12/15/09    Page 30 of 37    Page ID #: 7

EXHIBIT "A"

FEBRUARY 21, 2007, RE-FINANCED NOTE

WITH THE

BANK OF THE BLUEGRASS

| SHANE HAFFEY; HEATHER HAFFEY<br>3250 DELONG RD.<br>LEXINGTON, KY 40515 | BANK OF THE BLUEGRASS & TRUST CO<br>101 E HIGH STREET<br>LEXINGTON, KY 40507 | Loan Number 24130-15<br>Date 02-21-2007<br>Maturity Date 02-21-2008<br>Loan Amount $ 935,000.00<br>Renewal Of 24130-15 |
| BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, jointly and severally. | LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of NINE HUNDRED THIRTY FIVE THOUSAND AND NO/100 _____ Dollars $ 935,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____ . No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 02-21-2007
    ☐ I will receive the amount of $882,538.20 _____ and future principal advances are contemplated.
    **Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 02-21-2007 at the rate of 8.250 %

☒ **Variable Rate:** This rate may then change as stated below.
    ☒ **Index Rate:** The future rate will be EQUAL TO the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125
    ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
    ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 02-22-2007
        A change on the interest rate will take effect ON THE SAME DAY
    ☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than 24.000 % or less than 6.000 %. The rate may not change more than _____ % each _____
    **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
        ☒ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
    ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
    ☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% OF THE PAYMENT AMOUNT WITH A MAX OF $25.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN MONTHLY PAYMENTS OF ACCRUED INTEREST CALCULATED ON THE AMOUNT OF CREDIT OUTSTANDING BEGINNING ON 03-01-2007 AND PRINCIPAL DUE 02-21-2008. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE. THE FINAL PAYMENT MAY ALSO CHANGE.

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

1ST RE MTG. 3250 DELONG RD, LEXINGTON, DATED 02/21/07

(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**PURPOSE:** The purpose of this loan is CONSUMER COMPLETE RENOVATION AND INCREASE LINE OF CREDIT PURS TO KRS CH 290

**SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date.

Signature for Lender

_Bill Allen_
BILL ALLEN, PRESIDENT

_Shane Haffey_
SHANE HAFFEY

_Heather Haffey_
HEATHER HAFFEY

UNIVERSAL NOTE
© 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form CH-2 4/2/2002                    (page 1 of 2)

EXHIBIT "B"

MAY 14, 2007

BACK DATED EXECUTED

BOGUS LOAN DOCUMENTS

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | |

| Amount $ 1,000,000 | Interest Rate 6.875 % | No. of Months 360/360 | Amortization Type: ☑ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 3250 Delong Road, Lexington, KY 40515   County: Fayette | |
| Legal Description of Subject Property (attach description if necessary) | Year Built |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☑ Refinance  ☐ Construction-Permanent | ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☑ made ☐ to be made |
|---|---|---|---|---|
| 2003 | $ 429,000 | $ 933,538 | Cash-Out/Other | Completed renovations and additions  Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Shane M Haffey  Heather M Haffey | JTWROS | ☑ Free Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Equity from Subject Property |

## III. BORROWER INFORMATION

| | Borrower | | | | Co-Borrower | | | |
|---|---|---|---|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | | | | | Co-Borrower's Name (include Jr. or Sr. if applicable) | | | |
| Heather M Haffey | | | | | | | | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | 859-327-3277 | 02/08/1965 | 16 | | | | 9 |

| ☑ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower)  no. 1   ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower)  no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  4  No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  _____ No. Yrs. |
|---|---|
| 3250 Delong Road  Lexington, KY 40515 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  _____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  _____ No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  _____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  _____ No. Yrs. |
|---|---|

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | |
|---|---|---|---|---|

| Name & Address of Employer | ☑ Self Employed | Yrs. on this job |
|---|---|---|
| Heather Haffey<br>3250 Delong Road<br>Lexington, KY 40515 | | 12 yrs) 0 mth(s)<br><br>Yrs. employed in this line of work/profession<br><br>12 |

| Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
|---|---|---|
| | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|
| Contractor/Renovation/At | 859-552-7388 |

| Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|
| | |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income<br>$ | | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income<br>$ | | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income<br>$ | | | Monthly Income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income<br>$ | | | Monthly income<br>$ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 20,000.00 | $ | $ 20,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 6,304.00 | $ 5,729.17 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 250.00 | 250.00 |
| Dividends/Interest | | | | Real Estate Taxes | 833.00 | 833.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 20,000.00 | $ | $ 20,000.00 | Total | $ 7,387.00 | $ 6,812.17 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**    **Notice:** Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

| | | |
|---|---|---|
| Fannie Mae Form 1003  07/05<br>CALYX Form Loanapp2.frm 09/05 | Page 2 of 5 | Borrower _____<br>Co-Borrower _____ |
| | | Freddie Mac Form 65  07/05 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [✓] Jointly [ ] Not Jointly

| Description ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | Name and address of Company BK OF BLUE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Bank of the Bluegrass & Trust | | | | |
| | | Acct. no. 241300000000015 | (6,498.22) /0 | 933,538 |
| Acct. no. 110779 | $ 10,912 | Name and address of Company AMEX | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Bank of the Bluegrass & Trust | | | | |
| | | Acct. no. 069486866018392162 | 792 /0 | 15,830 |
| Acct. no. 125946 | $ 7,517 | Name and address of Company GEMB/LOWES | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union Bank of the Bluegrass & Trust | | | | |
| | | Acct. no. 7982222180157418 | 79 /82 | 6,405 |
| Acct. no. 219440 | $ 29 | Name and address of Company THD/CBSD | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| | | Acct. no. 6035320078186457 | 30 /134 | 4,016 |
| | | Name and address of Company BB&T | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 18,458 | Acct. no. 5680093123 | 16 /133 | 2,125 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 2,375,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | | | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 917 | |
| **Total Assets a.** | $ 2,393,458 | Net Worth (a minus b) ===> $ 1,431,544 | Total Liabilities b. | $ 961,914 |

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 3250 Delong Road Lexington, KY 40515 | SFR | $ 2,055,000 | $ 935,000 | $ | $ 6,304 | $ 1,083 | $ |
| 1821 Pac Vue Charleston, SC | CONDO | 220,000 | 0 | | | 400 | |
| Lot 804 Mt. Pleasant Charleston, SC | LAND | 100,000 | 0 | | | 100 | |
| | Totals | $ 2,375,000 | $ 935,000 | $ | $ 6,304 | $ 1,583 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

Fannie Mae Form 1003 07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 5

Borrower _____

Co-Borrower _____

Freddie Mac Form 65 07/05

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 935,000.00 | | | | | |
| e. Estimated prepaid items | 13,905.34 | d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| f. Estimated closing costs | 1,755.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h. Discount (if Borrower will pay) | | | | | | |
| i. Total costs (add items a through h) | 950,660.34 | | | | | |
| j. Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| k. Borrower's closing costs paid by Seller | | | | | | |
| l. Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| | | j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 1,000,000.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 1,000,000.00 | (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -49,339.66 | (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 5/28/07 | X _[signature]_ | 5/14/07 5:30 |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | | CO-BORROWER | ☐ I do not wish to furnish this information | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American | | Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American | |
| | ☐ Native Hawaiian or Other Pacific Islander ☑ White | | | ☐ Native Hawaiian or Other Pacific Islander ☐ White | |
| Sex: | ☑ Female ☐ Male | | Sex: | ☐ Female ☐ Male | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Jennifer Frye | Bank of the Bluegrass & Trust Co. |
| ☐ Face-to-face interview | Interviewer's Signature _[signature]_ Date 3/30/0 | 101 E. High Street |
| ☑ Mail | | Lexington, KY 40507 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | (P) 859-233-4500 |
| ☐ Internet | 859-233-4500 | (F) 859-260-2055 |

| Fannie Mae Form 1003 07/05 | | Freddie Mac Form 65 07/05 |
|---|---|---|
| CALYX Form Loanapp4.frm 09/05 | Page 4 of 5 | |

# BANK OF THE BLUEGRASS
& TRUST CO.

### Addendum to Good Faith Estimate
### REQUIRED USE OF SETTLEMENT PROVIDERS

Bank of the Bluegrass & Trust Company 101 East High Street, Lexington, KY 40507 *(Lender)* has not selected the particular providers for these services at this time, although the cost of these services has been estimated on your Good Faith Estimate. Bank of the Bluegrass & Trust Company does not have a business interest relationship and receives nothing of value outside the service provided, by any particular third party provider or settlement service, as defined in Part V of 24 DFR Part 3500 of the Real Estate Settlement Procedures Act published November 2, 1992 in the Federal Register.

Use of particular providers is required and our estimates are based on the charges of the provider. The following is a list of providers used by Bank of the Bluegrass & Trust Company. Within the last twelve (12) months the providers have either: maintained an account with the *lender*, had an outstanding loan with the *lender* or the *lender* has repeatedly used or required borrowers to use the services of these providers. Additional or alternative providers may be used at the sole discretion of Bank of the Bluegrass & Trust Company.

| Service | Name & Address of Provider | Telephone # | Nature of Relationship |
|---|---|---|---|
| 303. Appraiser | Freeman Appraisal Company 1015 High Point Drive Nicholasville, KY 40356 | 859-885-1665 | Independent Contractor |
| | Abbott Appraisal Company 3055 Abbott Road Lexington, KY 40502 | 859-278-3055 | Independent Contractor |
| | Thomas Mudd Appraisal Company 2025 Langhorne Drive Lexington, KY 40514 | 859-224-3937 | Independent Contractor |
| | Sumner Appraisal, Inc. 3500 Warwick Drive # 5 Lexington, KY 40517 | 859-225-1480 | Independent Contractor |
| 804. Credit Bureau | Fidelity National Credit Services 3470 Blazer Parkway Lexington, KY 40509 | 859-260-1120 | Independent Contractor |
| | Equifax , Inc. 205 West Fourth Street Cincinnati, OH 45202 | 800-753-1325 | Independent Contractor |
| 810. Flood Certification | Floodplain Consultants Incorporated 800 East 56th Street Brownsburg, IN 46112 | 317-858-4420 | Independent Contractor |
| 902. Mortgage Insurance | Republic Mortgage Insurance Company 150 East Wilson Bridge Road Suite 150 Worthington, OH 43085 | 800-888-7642 | Independent Contractor |
| | Mortgage Guaranty Insurance Corporation 270 E. Kilbourn Milwaukee, WI 53202 | 800-558-9900 | Independent Contractor |
| 1107 Attorney | Sherrow, Schrader & Sutherland 215 Southland Drive Suite 200 Lexington, KY 40503 | 859-685-0035 | Independent Contractor |
| | Webb, Hoskins, Glover & Thompson 2393 Alumni Drive #101 Lexington, KY 40517 | 859-296-9229 | Independent Contractor |
| | Bullock & Coffman, LLP 108 West Main Street Lexington, KY 40507 | 859-225-3939 | Independent Contractor |

Borrowers Signature _____ Date 3/8/07

Borrowers Signature _____ Date 5/14/07

5:30 p.m.

Rev 1-06

Bank Of The Bluegrass & Trust Company
101 E. High Street
Lexington, KY 40507
(859) 233-4500



# SERVICING DISCLOSURE STATEMENT

NOTICE TO MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. READ THIS STATEMENT AND SIGN IT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (1 2 U.S.C. 2601 et seq.) you have certain rights under that Federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. 'Servicing' refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

## Transfer Practices and Requirements

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you under certain limited circumstances, when your servicer is changed abruptly. This exception applies only if your servicer is fired for cause, is in bankruptcy proceedings, or is involved in a conservatorship or receivership initiated by a Federal agency.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

## Complaint Resolution

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. (A 'qualified written request' is a written correspondence, other than notes written on payment coupons or other payment mediums supplied by the servicer, which includes your name and account number, and your reasons for the request). Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to the period following your "qualified written request". A Business Day is any day, excluding Public Holidays (State or Federal), Saturday and Sunday.

## Damages and Costs

Section 6 of RESPA (12 U.S.C.A. 2605) also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

## Servicing Transfer Estimates by Lender

The following is the best estimate of what will happen to the servicing of your mortgage loan. We do not service mortgage loans. We intend to assign, sell, or transfer the servicing of your loan to another party.

The following is our record of transferring the servicing of the loans we have made in the past:

Percentage of Loans Transferred (rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%)

| | |
|---|---|
| 2004 | 50% |
| 2005 | 50% |
| 2006 | 50 % |

The estimates above include assignments, sales or transfers to affiliates or subsidiaries.

This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions. If the servicing of your loan is transferred to an affiliate or subsidiary in the future, you will be notified in accordance with RESPA.

I/We have read this disclosure form and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____   3/28/07        _____   5/14/07
Borrower's Signature        Date            Borrower's Signature        Date

Rev 1/07

5: 3⊃ P.M



# BANK OF THE BLUEGRASS
### & TRUST CO.

Phone:  859-233-4500
Fax:    859-260-2055 (Southland)
        859-233-3449 (Downtown)

**101 East High Street  Lexington, KY 40507**

## Lock-In Confirmation

Date Prepared:
Loan Number: Haffey

Borrower(s):
Heather Haffey

This is to confirm that the interest rate, discount points, and other terms set forth in your loan application with Bank of the Bluegrass & Trust Co. were locked-in according to the terms below:

| Description | | | | Value |
|---|---|---|---|---|
| Loan Type: | | | | Conv |
| Program Type: | | | | Fixed Rate |
| Loan Amount: | | | | $1,000,000 |
| Loan Term: | | | | 360 months |
| Interest Rate: | | | | 6.875% |
| Discount Points   (Percentage + Fee): | % | $ | | $ |
| Origination Fees (Percentage + Fee): | % | $ | | $ |
| Expiration Date: | | | | |
| Lock-in Fee: | | | $ | |

This Lock-In Confirmation guarantees that the above Interest Rate and Discount points will be available to you through the Expiration Date. This is not a commitment to make you a loan, and Bank of the Bluegrass & Trust Co. cannot guarantee that your loan application will be processed, approved, and closed by the Expiration Date. If the loan for which you have applied does not close by the Expiration Date above, the Interest Rate and Discount Points shown may no longer be available.  Refer to the Loan Disclosures you received when you applied for your loan for additional information regarding the processing of your loan application and the Bank of the Bluegrass & Trust Co. Lock-In Policy.

This Lock-In Confirmation guarantees only the loan terms shown above.  Other closing costs and loan terms may be subject to change.

Thank you for making your loan application with Bank of the Bluegrass & Trust Co.. We ask you to sign and return one copy of this Lock-In Confirmation to us in the enclosed envelope as acknowledgement that it was received by you.  Please contact your Bank of the Bluegrass & Trust Co. representative if you have any questions concerning this Lock-In Confirmation.

I hereby acknowledge receipt of this Lock-In Confirmation and accept the terms as set forth above.

_____  3/28/07          _____  5/14/07
Applicant's Signature      /Date           Applicant's Signature /   /Date

                                                               5:30 PM

**BANK OF THE BLUEGRASS**
& TRUST CO.

101 E. High Street
Lexington, KY 40507
(859) 233-4500

## GENERAL DISCLOSURE

The information provided below is given to provide a basic understanding with certain provisions of the loan documents.

### EQUAL CREDIT OPPORTUNITY ACT NOTICE:
The federal Equal Credit Opportunity Act prohibits creditors from discriminating against applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income is derived from any public assistance program, or because the applicant has in faith excercised any rights under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this concerning this mortgage company is the Federal Trade Commission, 710 Peachtree Street, N.E., Room 800, Atlanta, Georgia 30308. We are required to disclose to you that you need not disclose income from alimony, child support or seperate maintenance payments if you choose not to do so.

Having made this disclosure to you, we are permitted to inquire if any income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan which you are applying.

### FLOOD INSURANCE NOTIFICATION AND CERTIFICATION: The Flood Disaster Protection Act of 1973, Public Law
93.234, requires that properties located in certain areas must be insured for flood damage in an amount not less that the amount of the mortgage loan or the maximum allowable coverage permitted by law in the area. These areas are listed in the publication entitled AREAS ELIGIBLE FOR FLOOD INSURANCE BY U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, FEDERAL INSURANCE ADMINISTRATION and pinpointed on the latest FHA Flood Hazard Boundary Maps.

We the undersigned mortgagor(s) hereby acknowledge notification of the requirements of the Flood Disaster Protection Act of 1973, Public Law 93.234. We agree to obtain Flood insurance on our property in the amount of not less than the amount of the Mortgage Loan or the maximum allowable coverage permitted by the law in the area. We agree to obtain said coverage prior to or at any time during the time flood insurance would be deemed required.

### PREPAYMENT PENALTY:     None.

### ESCROW PAYMENTS:
An escrow account establishes the amount that is collected with each loan payment to pay property taxes, insurance and other escrow items. The security instrument empowers the lender to require that you pay funds, in addition to your monthly, payment of real estate taxes, assessments, ground rents, hazard insurance and mortgage insurance. The amount of the monthly escrow paid will be one twelfth (1/12) of the annual amount of the escrowed item. If you fail to pay the escrow items, the lender, can refuse to accept payment until you pay the full amount prior to the end of the grace period. If the lender must pay escrowed items, and the moneys are not available in your escrow account, the lender may at its option, add these sums to your principal balance or create a negative escrow balance. In any event, you will be required to pay the additional amount advanced by the lender, either by a lump sum payment or by increasing your payment over the next 12 month period.

### APPRAISAL DISCLOSURE: On December 14, 1993 the Federal Reserve Board put into effect a rule which
states that "creditors may automatically provide a copy of an appraisal report to all applicants for certain dwelling-secured loans or they may provide a copy upon the applicants request". Applicants may obtain a copy of the appraisal report by submitting a written request within 90 days of the loan application date. The applicant may be charged for copies. The Lender has 30 days from receipt of the request to provide a copy of the report.

### OWNERS INSURANCE REQUIREMENT: If your loan is approved, you will be required to furnish a policy of owners
insurance at loan closing. The property must be insured for not less that the original loan amount. The policy must be paid in advance or at loan closing. You have the right to choose whichever agent or insurer through or by which such insurance is to be placed. NOTE: AN ORIGINAL POLICY IS REQUIRED, BINDERS ARE NOT ACCEPTABLE. IT IS RECOMMENDED THAT YOU CONTACT YOUR INSURANCE AGENT AS SOON AS POSSIBLE TO DISCUSS THIS REQUIREMENT. FAILURE TO PROCURE A POLICY WILL DELAY YOUR LOAN CLOSING

I/We hereby understand and acknowledge receipt of these Bank of the Bluegrass & Trust Co. policies and/or consumer laws.

_____   3/2/07        _____   5/4/07
Borrower's Signature               Date         Borrower's Signature                Date   5:30

Rev 11.05

P.M.



## Borrower's Certification & Authorization

### Certification

1. I/We have applied for a mortgage loan from Bank of the Bluegrass & Trust Company *(Lender)*. In applying for the loan, I/We completed a loan application containing various information on the purpose of the loan; the amount and source of the down payment; employment and income information; and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no representations in the loan application or other documents, nor did I omit any pertinent information.

2. I/We understand and agree that Bank of the Bluegrass & Trust Company reserves the right to change the mortgage loan review process to a full documentation program, if the current application is for partial documentation processing. This may include verifying the information provided on the application with any sources and/or entities indicated.

3. I/We authorize Bank of the Bluegrass & Trust Company to obtain copies of my credit reports and authorize the use of any automated underwriting service.

4. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statement when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

1. I have applied for a mortgage loan from Bank of the Bluegrass & Trust Co. As part of the application process, Bank of the Bluegrass & Trust Company and any mortgage guaranty insurer, may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part it its quality control program.

2. I authorize you to provide to Bank of the Bluegrass & Trust Company, and to any investor to whom Bank of the Bluegrass & Trust Company may sell my mortgage, and to the mortgage guaranty insurer (if any), any and all information and documentation that they request. Such information includes, but is not limited to: sources and amounts of income, employment history, income, pension income, social security benefits; bank account(s), money market account(s), stock accounts(s) and similar account(s); credit history and credit reports; state federal and local tax returns.

3. I understand that following the loan closing my file may be selected by the *Lender*, its agents or assignee, for a quality control review. Such a review is intended to insure that the mortgage conforms to lending regulations and investor requirements. Such a review involves, but is not limited to, reverification of the credit, assets, property appraisal and employment information previously obtained. I agree to cooperate with the *Lender*, its Agent or Assignee to the extent necessary to accomplish this objective.

4. Bank of the Bluegrass & Trust Company or any investor that purchases the mortgage, or the mortgage guaranty insurer (if any), may address this authorization to any party named in the loan application.

5. **A photocopy or facsimile (fax) of this authorization may be accepted as an original and carries my full agreement, certification and authorization to release the information requested.**

6. This is a continuing authorization to release financial information and the undersigned indemnifies and holds Bank of the Bluegrass & Trust Company harmless from and against all claims or liability arising from or in connection with the release of such information or from this authorization to release financial information.

7. I agree and understand that no loan application shall be considered complete and acceptable for funding without this document, signed and dated by all parties to the loan, and thus made a part of the loan file.

I/We have read, understand and accept the terms of this agreement, certification and authorization.

| | |
|---|---|
| _____ | *Heather McKeever Haffey* |
| Borrower's Printed Name | Borrower's Printed Name |
| _____ | *Heather McKeever Haffey* |
| Borrower's Signature | Borrower's Signature |
| *3/28/07* | *5/14/07 5:30 PM* |
| Date Signed | Date Signed |

Rev 11/05

## GOOD FAITH ESTIMATE

| Applicants | Heather M Hatley | Application No | Hatley |
| Property Addr | 3330 Delong Road, Lexington, KY 40515 | Date Prepared | 05/14/2007 |
| Prepared By | Bank of the Bluegrass & Trust Co.   Ph. 859-233-4500 | Loan Program | 30 yr |
| | 185 E. High Street, Lexington, KY 40507 | | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $   1,000,000   Interest Rate   6.875 %   Term   360 / 360 mths.

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 801 | Loan Origination Fee | ✓ | | | | |
| 802 | Loan Discount | | $ | | | |
| 803 | Appraisal Fee | | | 250.00 | | |
| 804 | Credit Report | | | | | |
| 805 | Lender's Inspection Fee | | | | | |
| 806 | Mortgage Broker Fee | | | | | |
| 809 | Tax Related Service Fee | | | | | |
| 810 | Processing Fee | | | 30.00 | ✓ | |
| 811 | Underwriting Fee | | | 345.00 | ✓ | |
| 812 | Wire Transfer Fee | | | | | |
| | 2nd appraisal - Bill Faris Appraisal Company | | | 250.00 | | |
| | Flood Zone Determination Fee - FCI | | | 25.00 | ✓ | |
| | Final Inspection - Sumner Appraisal Company | | | 50.00 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 1100 | TITLE CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1101 | Closing or Escrow Fee | | $ | | | |
| 1105 | Document Preparation Fee | | | | | |
| 1106 | Notary Fees | | | | | |
| 1107 | Attorney Fees | | | 700.00 | | |
| 1108 | Title Insurance   Lender's Coverage | | | 2,047.50 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1201 | Recording Fees | | $ | 55.00 | | |
| 1202 | City/County Tax/Stamps | | | | | |
| 1203 | State Tax/Stamps | | | | | |
| | | | | | | |
| | | | | | | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | | | |
| | | | | | | |
| | | | | | | |
| | | Estimated Closing Costs | | 3,802.50 | | |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 901 | Interest for   14   days @ $   188.3562   per day | | $ | 2,636.99 | ✓ | |
| 902 | Mortgage Insurance Premium | | | | | |
| 903 | Hazard Insurance Premium | | | | | |
| 904 | State Farm Insurance | | | 1,019.97 | | |
| 905 | VA Funding Fee | | | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1001 | Hazard Insurance Premiums | 11 months @ $ | 259.99 | per month | $ | 2,859.89 | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ | | per month | | | |
| 1003 | School Tax | months @ $ | | per month | | | |
| 1004 | Taxes and Assessment Reserves | 10 months @ $ | 123.83 | per month | | 1,238.30 | |
| 1005 | Flood Insurance Reserves | months @ $ | | per month | | | |
| | | months @ $ | | per month | | | |
| | | months @ $ | | per month | | | |
| | Aggregate Adjustment | | | | | -259.92 | |
| | | | Estimated Prepaid Items/Reserves | | 7,515.13 | | |
| TOTAL ESTIMATED SETTLEMENT CHARGES | | | | | 10,778.73 | | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 950,063.68 | New First Mortgage(-) | |
| Loan Amount (-) | 1,000,000.00 | Sub Financing(-) | |
| Est. Closing Costs (+) | 3,802.50 | Hazard Ins (incl Closing Costs)(-) | |
| Est. Prepaid Items/Reserves (+) | 7,515.13 | | |
| Amount Paid by Seller (-) | | | |
| | | | |
| Total Est. Funds (in you) | | 35,212.63 | Total Monthly Payment | 6,911.11 |

Principal & Interest   6,568.29
Other Financing (P & I)
Hazard Insurance   259.99
Real Estate Taxes   123.83
Mortgage Insurance
Homeowner Assn. Dues
Other

The above estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the borrower will take a loan lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs" and if applicable the Consumer Handbook on ARM Mortgages.

X _____ 5/14/07
Applicant   Heather M Hatley   Date   Applicant   Date

Calyx Form gfe2 (rev 11/01)

*[handwritten]* First time Presented
to borrower at closing
Heather M. Hatley   5/14/07
8:15 PM

## GOOD FAITH ESTIMATE

| | |
|---|---|
| Applicants: Heather M Haffey | Application No: Haffey |
| Property Addr: 3250 Delong Road, Lexington, KY 40515 | Date Prepared: 03/28/2007 |
| Prepared By: Bank of the Bluegrass & Trust Co. Ph: 859-233-4500 | Loan Program: 30 yr |
| 101 E. High Street, Lexington, KY 40507 | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $ 1,000,000 Interest Rate: 6.875 % Term: 360 / 360 mths

| | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 800 | | | | | | |
| 801 | Loan Origination Fee | $ | | ✓ | | |
| 802 | Loan Discount | | | | | |
| 803 | Appraisal Fee | 250.00 | | | | |
| 804 | Credit Report | | | | | |
| 805 | Lender's Inspection Fee | | | | | |
| 808 | Mortgage Broker Fee | | | | | |
| 809 | Tax Related Service Fee | | | | | |
| 810 | Processing Fee | 30.00 | | ✓ | | |
| 811 | Underwriting Fee | 345.00 | | ✓ | | |
| 812 | Wire Transfer Fee | | | | | |
| | 2nd appraisal | 250.00 | | | | |
| | Flood Zone Determination Fee - FCI | 25.00 | | ✓ | | |

| | TITLE CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1100 | | | | | | |
| 1101 | Closing or Escrow Fee | $ | | | | |
| 1105 | Document Preparation Fee | | | | | |
| 1106 | Notary Fees | | | | | |
| 1107 | Attorney Fees | 350.00 | | | | |
| 1108 | Title Insurance Lender's Coverage | 400.00 | | | | |

| | GOVERNMENT RECORDING & TRANSFER CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1200 | | | | | | |
| 1201 | Recording Fees | $ 40.00 | | | | |
| 1202 | City/County Tax/Stamps | | | | | |
| 1203 | State Tax/Stamps | | | | | |

| | ADDITIONAL SETTLEMENT CHARGES: | | PFC | S | F | POC |
|---|---|---|---|---|---|---|
| 1300 | | | | | | |
| 1302 | Pest Inspection | $ 65.00 | | | | |

| | | Estimated Closing Costs | 1,755.00 | | | |
|---|---|---|---|---|---|---|

| | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 900 | | | | | | | |
| 901 | Interest for 15 days @ $ 188.3562 per day | $ 2,825.34 | | | ✓ | | |
| 902 | Mortgage Insurance Premium | | | | | | |
| 903 | Hazard Insurance Premium | | | | | | |
| 904 | | | | | | | |
| 905 | VA Funding Fee | | | | | | |

| | RESERVES DEPOSITED WITH LENDER: | | | PFC | S | F | POC |
|---|---|---|---|---|---|---|---|
| 1000 | | | | | | | |
| 1001 | Hazard Insurance Premiums | 11 months @ $ 250.00 per month | $ 2,750.00 | | | | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $ per month | | | | | |
| 1003 | School Tax | months @ $ per month | | | | | |
| 1004 | Taxes and Assessment Reserves | 10 months @ $ 833.00 per month | 8,330.00 | | | | |
| 1005 | Flood Insurance Reserves | months @ $ per month | | | | | |
| | | months @ $ per month | | | | | |
| | | months @ $ per month | | | | | |

| | | Estimated Prepaid Items/Reserves | 13,905.34 | | | |
|---|---|---|---|---|---|---|
| TOTAL ESTIMATED SETTLEMENT CHARGES | | | 15,660.34 | | | |

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|
| Purchase Price/Payoff (+) | 935,000.00 | Principal & Interest | 5,729.17 |
| New First Mortgage (-) | | Other Financing (P & I) | |
| Loan Amount (-) | 1,000,000.00 | Sub Financing (-) | |
| Est. Closing Costs (+) | 1,755.00 | Hazard Insurance | 250.00 |
| Est. Prepaid Items/Reserves (+) | 13,905.34 | New 2nd Mtg Closing Costs(+) | Real Estate Taxes | 833.00 |
| Amount Paid by Seller (-) | | Mortgage Insurance | |
| Payoff Interest - 1st mortgage | +3,200.00 | Homeowner Assn. Dues | |
| | | Other | |
| Total Est. Funds to you | 68,139.66 | Total Monthly Payment | 6,812.17 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and if applicable the Consumer Handbook on ARM Mortgages.

| | | | |
|---|---|---|---|
| Applicant Heather M Haffey | Date 3/28/07 | Applicant _Heather M. Haffey_ | Date 8/14/07 05:30 PM |

Calyx Form gfe2.frm 11/01

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | |
|---|---|
| Applicants: **Heather M Haffey** | Prepared By: **Bank of the Bluegrass & Trust Co.**<br>**101 E. High Street**<br>**Lexington , KY 40507**<br>**859-233-0500** |
| Property Address: **3250 Delong Road**<br>**Lexington, KY 40515** | |
| Application No: **Haffey** | Date Prepared: **03/28/2007** |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| **6.878 %** | $ **1,533,477.15** | $ **996,774.66** | $ **2,530,251.81** |

☐ REQUIRED DEPOSIT: The annual percentage rate does not take into account your required deposit
PAYMENTS:  Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 120 | 5,729.17 | 07/01/2007 | | | | | | |
| 239 | 7,678.14 | 07/01/2017 | | | | | | |
| 1 | 7,675.95 | 06/01/2037 | | | | | | |

☐ DEMAND FEATURE: This obligation has a demand feature.
☐ VARIABLE RATE FEATURE: This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

CREDIT LIFE/CREDIT DISABILITY: Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance.  Signature: |
| Credit Disability | | I want credit disability insurance.  Signature: |
| Credit Life and Disability | | I want credit life and disability insurance.  Signature: |

INSURANCE: The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☐ property  ☐ flood insurance from creditor you will pay $      POC for a one year term.
SECURITY: You are giving a security interest in: 3250 Delong Road, Lexington KY 40515
☐ The goods or property being purchased  ☑ Real property you already own.
FILING FEES: $    48.00
LATE CHARGE: If a payment is more than  15 days late, you will be charged  5.000 % of the payment
PREPAYMENT: If you pay off early, you
☐ may  ☑ will not  have to pay a penalty.
☐ may  ☑ will not  be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
☐ may  ☐ may, subject to conditions  ☑ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
☑ means an estimate  ☑ all dates and numerical disclosures except the late payment disclosures are estimates.
** NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | |
|---|---|
| Heather M Haffey    (Applicant) / (Date)  3/08/07 | _Heather M. Haffey_  5/14/07  (Applicant) (Date)  5:30 PM |
| _____  (Applicant) (Date) | |
| _____  (Applicant) (Date) | |
| _____  (Lender) (Date) | |

Calyx Form - til.hp (02/95)

Case: 3:08-cv-00920-JPG    Doc #: 1-1    Filed: 12/15/08    Page: 45 of 57    Page ID #: 52

# EXHIBIT "C"

# HUD-1

# MAY 14, 2007

# UNEXECUTED BOGUS LOAN

| A. Settlement Statement | WinClose | U.S. Department of Housing |
| --- | --- | --- |
| | Fee Simple Software, Inc | and Urban Development |
| | (205) 823-3993 | OMB No. 2502-0265 |

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☑ Conv. Unins | File Number | Loan Number | FHA/VA Case Number | Mortgage Ins. Number |
| --- | --- | --- | --- | --- | --- | --- |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 8507 | 601745572 | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | Heather M. Haffey |
| --- | --- |
| | 3250 Delong Road |
| | Lexington, Kentucky 40515 |

| E. NAME AND ADDRESS OF SELLER: | |
| --- | --- |
| (SELLER TIN | ) |

| F. NAME AND ADDRESS OF LENDER: | Bank of the Bluegrass and Trust Company |
| --- | --- |
| | 101 East High Street |
| | Lexington, Kentucky 40507 |

| G. PROPERTY LOCATION: | 3250 Delong Road |
| --- | --- |
| Tax ID: | Lexington, Kentucky 40515 |

| H. SETTLEMENT AGENT: | Mateous & Grant |
| --- | --- |
| | 201 West Vine Street |
| (TIN: 61-1239779) | Lexington, KY 40507 |

PLACE OF SETTLEMENT:
Lexington, KY 40507

| I. SETTLEMENT DATE: | May 14, 2007 | Disbursement Date: May 18, 2007 |
| --- | --- | --- |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
| --- | --- | --- | --- |
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $10,778.73 | 403. *(Gross Proceeds- ) | |
| 104. Payoff Mortgage: Bank of the Bluegrass | $950,003.66 | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | |
| 106. City/town taxes          to | | 405. City/town taxes | |
| 107. County taxes          to | | 407. County taxes | |
| 108. Assessments          to | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | $960,782.39 | **420. GROSS AMOUNT DUE TO SELLER:** | $0.00 |
| **200. AMOUNTS PAID ON OR ON BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $1,000,000.00 | 502. Settlement charges to seller (line 1400) | $0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff 1st mortgage loan | |
| 205. | | 505. Payoff 2nd mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210. City/town taxes          to | | 510. City/town taxes | |
| 211. County taxes          to | | 511. County taxes | |
| 212. Assessments          to | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER:** | $1,000,000.00 | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | $0.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross amount due from borrower (line 120) | $960,782.39 | 601. Gross amount due to seller (line 420) | $0.00 |
| 302. Less amount paid by/for borrower (line 220) | $1,000,000.00 | 602. Less reductions in amount due seller (line 520) | $0.00 |
| **303. CASH [ ] TO [ ☑ ] FROM BORROWER:** | $39,217.61 | **603. CASH [ ] TO [ ☑ ] FROM SELLER:** | $0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate. • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information

The agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

SUBSTITUTE FORM 1099 STATEMENT. The information contained in Blocks E, G, H, and I and on line 401 (or if line 401 is itemized, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTIONS. If this real estate was your principal residence, file form 2119, (Sale or Exchange of Principal Residence), for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required by law to provide [see box □] your correct taxpayer identification number. If you do not provide [see box □] your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller's Signature

JEM  HUD-1 (3-86) - RESPA, HB 4305.2   Page 1

| L | SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSIONS:** | | | | |
| | Based on price: | @ 0.000% = | | |
| | Division of Commission (Line 700) as follows: | | | |
| 701. | to: | | | |
| 702. | to: | | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | | |
| 801. | Loan origination fee | | | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee | to  Sumner Appraisal Company | $250.00 | |
| 804. | Credit report | | | |
| 805. | Final Inspection Fee: | to  Sumner Appraisal Company | $50.00 | |
| 806. | 2nd Appraisal Fee: | to  Bill Farris Appraisal Company | $250.00 | |
| 807. | Processing Fee: | to  Bank of the Bluegrass and Trust Company | $30.00 | |
| 808. | Flood Certification: | to  FCI | $25.00 | |
| 809. | Underwriting Fee: | to  Bank of the Bluegrass and Trust Company | $345.00 | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901. | Interest from  05/18/07 to  06/01/07  14  days @ $188.356200 | | $2,636.99 | |
| 902. | Mortgage Insurance premium for | mos. to | | |
| 903. | Hazard Insurance premium for  1  yrs. to  State Farm Insurance (Expires 09/29/07)  ($ 2,079.94 POC) | | $1,039.97 | |
| 904. | Flood Insurance premium for | yrs. to | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001. | Hazard Insurance  11  months @ | $259.99  per month | $2,859.89 | |
| 1002. | Mortgage Insurance | months @  per month | | |
| 1003. | City property taxes | months @  per month | | |
| 1004. | County property taxes  10  months @ | $123.83  per month | $1,238.30 | |
| 1005. | Annual assessments | months @  per month | | |
| 1006. | Flood Insurance | months @  per month | | |
| 1007. | School property taxes | months @  per month | | |
| 1008. | Village property taxes | months @  per month | | |
| 1009. | Aggregate adjustment | | ($259.92) | |
| **1100. TITLE CHARGES:** | | | | |
| 1101. | Settlement or closing fee | | | |
| 1102. | Abstract or title search: | | | |
| 1103. | Title examination: | | | |
| 1104. | Title insurance binder: | | | |
| 1105. | Document preparation: | | | |
| 1106. | Notary fees: | | | |
| 1107. | Attorney's fees | to  Mainous & Grant | $200.00 | |
| | (includes above item Numbers ) | | | |
| 1108. | Title insurance | to  Commonwealth Land Title Company | $1,950.00 | |
| | (includes above item Numbers ) | | | |
| 1109. | Lender's coverage  $1,000,000.00 | | | |
| 1110. | Owner's coverage | | | |
| 1111. | Municipal tax on title | to  Commonwealth Land Title Company | $97.50 | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | | |
| 1201. | Recording Deed  $0.00  Mortgage  53.00  Rel.  $0.00 | | $53.00 | |
| 1202. | City/county tax/stamps  Deed  Mortgage | | | |
| 1203. | State tax/stamps  Deed  $0.00  Mortgage | | | |
| 1204. | Record Assignment of Mortgage: | to  Fayette County Clerk | $13.00 | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | | | |
| 1301. | Survey | | | |
| 1302. | Pest inspection | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES:** | | | $10,778.73 | $0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Heather M Hafley        Borrower  Date 05/14/07                              Seller Date:

                        Borrower  Date                                      Seller Date:

                        Borrower  Date                                      Seller Date:

The HUD-1 Settlement Statement which I have prepared is a true    Settlement    Mainous & Grant
and accurate account of this transaction. I have caused or will    Agent:
cause the funds to be disbursed in accordance with this statement.                                          Date    05/14/07
                                                                  Joseph E. Mainous, Jr.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a
fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.          HUD-1 (Rev. 3/86)              Page 2

# EXHIBIT "D"

## HUD-1

## MAY 18, 2007

## EXECUTED LOAN TRANSACTION

**A. Settlement Statement**

WinClose
Fee Simple Software, Inc
(205) 823-3993

U.S. Department of Housing
and Urban Development
OMB No. 2502-0265

**B. TYPE OF LOAN**

| 1. ☐ FHA | 2. ☐ FmH | 3. ☑ Conv. Unins | File Number | Loan Number | FHA/VA Case Number | Mortgage Ins. Number |
|---|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 8507 | 6017455T2 | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
Heather M. Haffey
3250 Delong Road
Lexington, Kentucky 40515

**E. NAME AND ADDRESS OF SELLER:**
(SELLER TIN-          )

**F. NAME AND ADDRESS OF LENDER:**
Bank of the Bluegrass and Trust Company
101 East High Street
Lexington, Kentucky 40507

**G. PROPERTY LOCATION:**
3250 Delong Road
Tax ID
Lexington, Kentucky 40515

**H. SETTLEMENT AGENT:**
Malnous & Grant
201 West Vine Street
Lexington, KY 40507
(TIN- 61-1239779 )

**PLACE OF SETTLEMENT:**
201 West Vine Street
Lexington, KY 40507

**I. SETTLEMENT DATE:** May 14, 2007          **Disbursement Date** May 16, 2007

| J.  SUMMARY OF BORROWER'S TRANSACTION | | K.  SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100.  GROSS AMOUNT DUE FROM BORROWER:** | | **400.  GROSS AMOUNT DUE TO SELLER:** | |
| 101.  Contract sales price | | 401.  Contract sales price | |
| 102.  Personal property | | 402.  Personal property | |
| 103.  Settlement charges to borrower (line 1400) | $13,278.73 | 403. * (Gross Proceeds                    ) | |
| 104.  Payoff Mortgage: Bank of the Bluegrass | $951,059.72 | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | |
| 106.  City/town taxes          to | | 406.  City/town taxes | |
| 107.  County taxes          to | | 407.  County taxes | |
| 108.  Assessments          to | | 408.  Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120.  GROSS AMOUNT DUE FROM BORROWER:** | $964,338.45 | **420.  GROSS AMOUNT DUE TO SELLER:** | $0.00 |
| **200.  AMOUNTS PAID ON OR ON BEHALF OF BORROWER:** | | **500.  REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201.  Deposit or earnest money | | 501.  Excess deposit (see instructions) | |
| 202.  Principal amount of new loan(s) | $1,000,000.00 | 502.  Settlement charges to seller (line 1400) | $0.00 |
| 203.  Existing loan(s) taken subject to | | 503.  Existing loan(s) taken subject to | |
| 204. | | 504.  Payoff 1st mortgage loan | |
| 205. | | 505.  Payoff 2nd mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER:** | |
| 210.  City/town taxes          to | | 510.  City/town taxes | |
| 211.  County taxes          to | | 511.  County taxes | |
| 212.  Assessments          to | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.  TOTAL PAID BY/FOR BORROWER:** | $1,000,000.00 | **520.  TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | $0.00 |
| **300.  CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600.  CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301.  Gross amount due from borrower (line 120) | $964,338.45 | 601.  Gross amount due to seller (line 420) | $0.00 |
| 302.  Less amount paid by/for borrower (line 220) | $1,000,000.00 | 602.  Less reductions in amount due seller (line 520) | $0.00 |
| 303.  CASH  [ ☐ FROM] [ ☑ TO] BORROWER: | $35,661.55 | 603.  CASH  ( ☐ TO) [ ☑ FROM] SELLER: | $0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following – HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

SUBSTITUTE FORM 1099 STATEMENT:  The information contained in Blocks E, G, H, and I on line 401 (of if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service.  If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that is has not been reported.

SELLER INSTRUCTIONS  If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return, for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).  You are required by Law to provide [see box E] your correct taxpayer identification number.  If you do not provide [see box E] your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____
Seller's Signature

JEM HUD-1 (3-86) - RESPA, HB 4305.2   Page 1

**L.**

| | SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSIONS:** | | | | |
| | Based on price: | @ 0.000% = | | |
| | Division of Commission (Line 700) as follows: | | | |
| 701. | to: | | | |
| 702. | to: | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | | |
| 801. Loan origination fee | | | | |
| 802. Loan discount | 0.250% | to Bank of the Bluegrass and Trust Company | $2,500.00 | |
| 803. Appraisal fee | | to Sumner Appraisal Company | $250.00 | |
| 804. Credit report | | | | |
| 805. Final Inspection Fee: | | to Sumner Appraisal Company | $50.00 | |
| 806. 2nd Appraisal Fee: | | to Bill Farris Appraisal Company | $250.00 | |
| 807. Processing Fee: | | to Bank of the Bluegrass and Trust Company | $30.00 | |
| 808. Flood Certification: | | to FCI | $25.00 | |
| 809. Underwriting Fee: | | to Bank of the Bluegrass and Trust Company | $345.00 | |
| 810. | | | | |
| 811. | | | | |
| 812 | | | | |
| 813 | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901. Interest from 05/18/07 to 05/01/07 14 days @ $188.356200 | | | $2,636.99 | |
| 902. Mortgage insurance premium for mos. to | | | | |
| 903. Hazard insurance premium for yrs. to State Farm Insurance (Expires 05/29/07) ($ 2,079.94 POC) | | | $1,039.97 | |
| 904. Flood insurance premium for yrs. to | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001. Hazard insurance | 11 months @ | $259.99 per month | $2,859.89 | |
| 1002 Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004 County property taxes | 10 months @ | $123.83 per month | $1,238.30 | |
| 1005 Annual assessments | months @ | per month | | |
| 1006 Flood insurance | months @ | per month | | |
| 1007 School property taxes | months @ | per month | | |
| 1008 Village property taxes | months @ | per month | | |
| 1009 Aggregate adjustment | months @ | per month | ($259.92) | |
| **1100. TITLE CHARGES:** | | | | |
| 1101 Settlement or closing fee | | | | |
| 1102 Abstract or title search | | | | |
| 1103 Title examination | | | | |
| 1104 Title insurance binder | | | | |
| 1105 Document preparation | | | | |
| 1106 Notary fees: | | | | |
| 1107 Attorney's fees | | to Mainous & Grant | $200.00 | |
| (includes above item Numbers | | | | |
| 1108 Title insurance | | to Commonwealth Land Title Company | $1,950.00 | |
| (includes above item Numbers | | | | |
| 1109 Lender's coverage | $1,000,000.00 | | | |
| 1110 Owner's coverage | | | | |
| 1111 Municipal tax on title | | to Commonwealth Land Title Company | $97.50 | |
| 1112 | | | | |
| 1113 | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | | |
| 1201 Recording Deed $0.00 Mortgage 53.00 Rel $0.00 | | | $53.00 | |
| 1202 City/county tax/stamps Deed Mortgage | | | | |
| 1203 State tax/stamps Deed $0.00 Mortgage | | | | |
| 1204 Record Assignment of Mortgage: | | to Fayette County Clerk | $13.00 | |
| 1205 | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | | | |
| 1301 Survey | | | | |
| 1302 Pest inspection | | | | |
| 1303 | | | | |
| 1304 | | | | |
| 1305 | | | | |
| 1306 | | | | |
| 1307 | | | | |
| **1400. TOTAL SETTLEMENT CHARGES:** | | | $13,278.73 | $0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Heather M. Halfey_  Borrower Date 05/14/07   Seller Date:

   Borrower Date   Seller Date:

   Borrower Date   Seller Date:

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: Mainous & Grant   Date 05/14/07

Joseph E. Mainous, Jr.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title U.S. Code Section 1001 and Section 1010.

HUD-1 (Rev. 3/86)   Page 2

# EXHIBIT "E"

# AUGUST 16, 2007

# GMAC LETTER TO BORROWER

# GMAC Mortgage

August 16, 2007

Heather M Haffey
3250 Delong Road
Lexington KY 40515

RE:    Account Number    0601745572
          Property Address    3250 Delong Road
                           Lexington KY 40515

Dear Heather M Haffey:

This is in response to your inquiry regarding the above-referenced account.

Enclosed is a copy of the final HUD1 Settlement Statement reflecting this loan closed on
May 14, 2007 and the rescission date was May 18, 2007. Per the HUD1, you paid interest
starting May 18, 2007.  This was verified by Bank of the Bluegrass and Trust Company.

If you have any further questions regarding your closing and the interest collected at
closing you will need to contact the title company that held your closing.

Any questions regarding the servicing of your mortgage, please contact Customer Care at
1-800-766-4622.

Customer Care
Loan Servicing

Enclosure

3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

EXHIBIT "F"

OCTOBER 15, 2008

TILA AND RESPA NOTICES

TO GMAC, MERS, AND

THE BANK OF THE BLUEGRASS



**HEATHER BOONE MCKEEVER
FAIRYHOUSE HALL
3250 DELONG ROAD
LEXINGTON, KENTUCKY 40515
859-552-7388
h.mckeever@insightbb.com**

October 15, 2008                                VIA CERTIFIED MAIL

GMAC Mortgage LLC
Servicer For Lender (Bank of the Bluegrass)
3451 Hammond Ave.
Waterloo, Iowa   50702

**RE: Heather M. Haffey 3250 Delong Road Lexington, KY 40515
ACCOUNT #0601745572**

Dear Sir or Madame:

I will be representing myself as to the above-reference GMAC Service Provider Product, for which the Promissory Note and Mortgage are listed in the name of Heather M. Haffey, but which has never been my legal name. Please take note that the deed to this property is held in the name of Heather McKeever, thereby making the transaction invalid on its face.

With this letter, I hereby give notice of a Qualified Written Request and make a demand under the Real Estate Settlement and Procedures Act, RESPA, 12 USC §2605 as to the following:

1. Bank of the Bluegrass was fraudulently listed as the "Lender" in the transaction. The true Lender was never disclosed. The identity of the Lender and all the Holders in due course is demanded. The identity of the insurance carrier for the true Lender and all Holders in Due Course is also demanded for the purpose of filing claims for errors and omissions and to determine the payout schemes for default. The complete chronological and dated chain of title and transfer of the Note is demanded, including the re-purchase of the paper by any individual or entity.

In addition to the fraud perpetrated, the title to the Note and Mortgage executed on May 18, 2007 is tainted and unenforceable. Kentucky law requires the recorded Assignments of Mortgages. The Mortgagee in this case, MERS, is not a legally recognizable Holder in Due Course of the Note. There are no other recorded Assignments are on record with the Fayette County Clerk. The Assignment to MERS

from The Bank of the Bluegrass was done without notice to the borrower. The Note and Mortgage have been bifurcated and the Mortgage is illegal and unenforceable under Kentucky law.

2. On or about August 1, 2007, GMAC Mortgage was contacted by the borrower, for the purpose of disputing the date listed on the HUD-1, Note and Mortgage for the execution of such and the amounts collected at closing. A written response was made to the borrower on behalf of GMAC on or about August 16, 2007, stating that the date and amounts had been confirmed by The Bank of the Bluegrass. The confirmation was based in fraud. Although the documents reflect a date of May 14, 2007. The transaction and execution of the documents took place on May 18, 2007. The HUD-1 contains among other things, incorrect interest charges and an incorrect pay-off to The Bank of the Bluegrass. This Qualified Written Request demands that a legally and binding revision of the documents take place to reflect the correct date and that the HUD-1 be corrected to reflect the proper amounts for all items affected by the incorrect HUD-1.

3. There was no Initial Escrow Disclosure provided for the transaction in violation of the TILA and RESPA. The amount of escrow collected at closing was illegal under Kentucky law and the amount currently collected monthly is illegal. This Qualified Written Request demands a full accounting of the escrow funds, a recalculation of the amounts, correctly reflecting those amounts proper under the law and a refund of such.

4. Illegal fees and commissions were paid to individuals and entities from the funds of the transaction. This Qualified Written Request demands a complete list and accounting of any all entities receiving funds from the proceeds of the transaction, including those illegally missing form the HUD-1 and any hidden payments to unlisted individuals and entities listed as items on the HUD-1; including any and all kick backs to the Bank of the Bluegrass and any fees paid to MERS. This Request also demands an accounting as to monies paid to any and all individuals that were attached to the transaction in any way from outside sources in the stream of commerce.

5. The Note and Mortgage referenced hereto were rescinded as of this date, pursuant to the TILA. A refund off all funds and interest paid is due and owing. This Qualified Written Request demands a legally recognizable accounting of any and all monies paid by the borrower since the loans inception on May 18, 2007, and a complete refund of such as required by Federal law by November 4, 2008. Failure to refund all money paid on the transaction, including the monthly interest payments is a separate violation of the TILA and RESPA and entitles the borrower to additional damages.

During the 60-day period, beginning on the date of GMAC's receipt of this Qualified Written Request, relating these demands regarding the refund of borrower's payments, GMAC may not provide information regarding any allegedly owed overdue payments, including the actual monthly loan payment, relating to the May 18, 2007, rescinded loan transaction noticed in this Qualified Written Request; to any consumer reporting agency, as such term is defined under 15 U.S.C. §1681.

Any fraudulent and illegal derogatory reporting to any credit agency during the 60 day period will entitle the borrower to damages under RESPA as well as create a separate cause of action under a multitude of state and federal statutes, including, but not limited to the Federal Billing and Fair Credit Reporting Act, and the Kentucky and Federal Consumer Protection Acts.

This Qualified Written Request is being sent simultaneously, together and in addition to the October 15, 2008, TILA Recsission Notice served pursuant to 15 USC §1635; Regulation Z, which is enclosed herewith.

In addition to any private Complaints warranted, violations stemming from this Qualified Written Request, will be referred to and may be prosecuted by the Kentucky State Attorney General, Hon. Jack Conway and/or may create standing for a class action suit here in Kentucky.


Yours very truly,

Heather Boone McKeever


Enc/


Cc: Hon. Jack Conway, Attorney General Commonwealth of Kentucky



**HEATHER BOONE MCKEEVER
FAIRYHOUSE HALL
3250 DELONG ROAD
LEXINGTON, KENTUCKY 40515
859·552·7388
h.mckeever@insightbb.com**

October 15, 2008                    VIA CERTIFIED MAIL

GMAC Mortgage LLC
Servicer For Lender (Bank of the Bluegrass)
3451 Hammond Ave.
Waterloo, Iowa 50702

**RE: Heather M. Haffey 3250 Delong Road Lexington, KY 40515
ACCOUNT #0601745572**

Dear Sir or Madame:

I will be representing myself as to the above-reference GMAC Service Provider Product, for which the Promissory Note and Mortgage are listed in the name of Heather M. Haffey, but which has never been my legal name. Please take note that the deed to this property is held in the name of Heather McKeever, thereby making the transaction invalid on its face.

With this letter, I hereby exercise my rights under the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23, to rescind the above referenced Promissory Note and Mortgage for multiple violations of the Act. Additionally, public records indicate that you are not the assignee or legal holder of the mortgage, which is listed as Mortgage Electronic Registration Systems. Therefore, under current law, the Promissory Note is unsecured. The assignment to MERS was made without notice to me by the original lender Bank of the Bluegrass.

. Please be advised that as of October 15, 2008, The Promissory Note and any Security Interest you may have in my home is now void pursuant 15 U.S.C. § 1635; Regulation Z § 226.23.

Yours very truly,

Heather Boone McKeever



**HEATHER BOONE McKEEVER**
**FAIRYHOUSE HALL**
**3250 DELONG ROAD**
**LEXINGTON, KENTUCKY 40515**
**859-552-7388**
**h.mckeever@insightbb.com**

October 15, 2008                              VIA CERTIFIED MAIL

Mortgage Electronic Registration Systems, Inc.
3300 S.W. 34th Ave. Suite 101
Ocala, Florida 34474-7448

**RE: Heather M. Haffey  3250 Delong Road Lexington, KY 40515**
     **ACCOUNT #1003750601745527**

Dear Sir or Madame:

I will be representing myself as to the above-referenced mortgage assigned to your corporation without notice to me by the Bank of the Bluegrass, which is listed in the name of Heather M. Haffey, but which has never been my legal name. Please take note that the deed to this property is held in the name of Heather McKeever, making the mortgage void on its face.

With this letter, I hereby exercise my rights under the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23, to rescind the above referenced Mortgage for multiple violations of the Act. Additionally, public records indicate that you are not the legal or actual holder of the Promissory Note, which is listed as being serviced by GMAC Mortgage LLC. Therefore, the mortgage is invalid and unenforceable.

. Please be advised that as of October 15, 2008, the Promissory Note any Security Interest you may have in my home is now void pursuant 15 U.S.C. § 1635; Regulation Z § 226.23.

Yours very truly,

Heather Boone McKeever



**HEATHER BOONE MCKEEVER**
**FAIRYHOUSE HALL**
**3250 DELONG ROAD**
**LEXINGTON, KENTUCKY 40515**
**859-552-7388**
**h.mckeever@insightbb.com**

October 15, 2008                           VIA CERTIFIED MAIL

Bank of the Bluegrass and Trust Company
101 East High Street
Lexington, KY 40515

**RE: Heather M. Haffey 3250 Delong Road Lexington, KY 40515**
**ACCOUNT #0601745572**

Dear Sir:

I will be representing myself as to the above-reference GMAC Mortgage LLC Service Provider Product, for which the Promissory Note and Mortgage are listed in the name of Heather M. Haffey, originated by The Bank of the Bluegrass and Trust Company.

With this letter, I hereby exercise my rights under the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23, to rescind the above referenced Promissory Note and Mortgage for multiple violations of the Act. Although, public records indicate that you are not listed as the assignee or legal holder of the mortgage, which is recorded as Mortgage Electronic Registration Systems, notice is given to you due to your status as the original lender.

. Please be advised that as of October 15, 2008, The Promissory Note and any Security Interest are void pursuant 15 U.S.C. § 1635; Regulation Z § 226.23.

Yours very truly,

Heather Boone McKeever

EXHIBIT "G"

NOVEMBER 13, 2008

BORROWER'S UNILATERAL SETTLEMENT

ATTEMPT  AND

VOLUNTARY PRODUCTION OF DOCUMENTS

Case: 3:08-cv-00310-WHR    Doc #: 114    Filed: 12/15/09    Page: 81 of 87    PageID #: 68



**HEATHER BOONE MCKEEVER**
**ATTORNEY AT LAW**
**FAIRYHOUSE HALL**
**3250 DELONG ROAD**
**LEXINGTON, KENTUCKY 40515**
**h.mckeever@insightbb.com**
**859-552-7388**

# FACSIMILE COVER PAGE

**DATE:**   November 13, 2008

**TO:**       Hon. David Fornshell
              Dinsmore & Shohl LLP
              255 East Fifth Street
              Cincinnati, Ohio 45202
              FAX:   1-513-977-8141

**RE:**       **ACCOUNT #0601745572**

**TOTAL PAGES INCLUDING COVER:**   46

**NOTES:**



**HEATHER BOONE MCKEEVER
FAIRYHOUSE HALL
3250 DELONG ROAD
LEXINGTON, KENTUCKY 40515
859-552-7388
h.mckeever@insightbb.com**

November 13, 2008                    3:00pm VIA FACSIMILE/ORIGINAL BY POST

Hon. David Fornshell
Dinsmore & Shohl, LLP
255 East Fifth Street Suite 1900
Cincinnati, Ohio 45202


RE:     **3250 Delong Road Lexington, KY 40515
        ACCOUNT #0601745572**


Dear Mr. Fornshell:

This letter serves as acknowledgment of the receipt of Robert Zimmerman's correspondence to "Ms. Haffey", dated November 7, 2008, as to the above-referenced loan rescission, which was noticed on October 15, 2008. This letter does not address the Quiet Title Action already filed against MERS, which was recently noticed for removal by your firm to Federal Court. Please take note that my legal name is and has always been Heather McKeever. Haffey is the surname of my husband, Shane Haffey. On May 18, 2007, a Promissory Note and Mortgage were signed by me using the surname of Haffey. This was at the Bank's insistence, irregardless of the fact that they had knowledge to the contrary, and possessed a copy of my motor vehicle license.

Please confirm the fact that your firm will be representing the interests and will accept Service of Process for the following parties:
1.    GMAC Mortgage as the Servicing Agent for a Promissory Note Numbered 0601745572; and the Agent for the Concealed and Unknown Real Party in Interest (The Bearer of an Original Promissory Note Numbered 0501745572.)

2.    The Concealed and Unknown Real Party In Interest (The Bearer of an Original Promissory Note Numbered 0601745572.)

3.    Mortgage Electronic Registration Systems (MERS), the Mortgagee of Record; an Unlicensed and Unregistered Foreign Corporation Doing Business in the Commonwealth of Kentucky.

This letter also serves to confirm the fact that you will be representing the interests of the Executive Office's Advocacy Resolution and Loan Modification Departments of GMAC Mortgage and have instructed me by telephone to cease communication with such. As you are aware, the above-referenced Departments had been in communication with me previous to your involvement, for the purpose of forbearing and/or modifying the loan and had sent a Forbearance/Modification packet for me to return to the Modification Department. Based on your instruction, communication with GMAC has ceased, and as a result, the attempt at settlement and/or modification prior to the filing of litigation has now ceased as well.

As of today's date, my duty to attempt to mitigate damages has been fulfilled, having been made along with a good faith attempt at settlement; which would have benefited all parties. Therefore, please let this letter serve for all future litigated causes of action, evidence for the record for the award of punitive damages, costs and attorney's fees; as well as damages awarded pursuant to Rule 11 Motions, under Kentucky and Federal Law.

A skeletal outline of the undisputed facts are as follows:

The loan in question took place on May 18, 2007, not May 14, 2007. On or about August 1, 2007, I discovered the date mistake on the HUD-1 and The Bank of the Bluegrass was notified by and through their servicing agent, GMAC. The Note, Mortgage and HUD-1, signed on May 18, 2007, should have been revised to reflect the correct date. On August 16, 2007, a Response Letter from GMAC was sent, wherein GMAC refused to make the correction. The letter is attached hereto and incorporated herewith as Exhibit "A." The May 18, 2008, executed HUD-1, improperly contains the same Loan Number as a rejected May 14, 2007, transaction. The accepted May 18th loan and the rejected May14th loan bore no relationship to each other and should have been numbered accordingly.

The only executed document received by me on May 18, 2007 was the HUD-1. No Notice of Right To Cancel was received. I left the closing with the understanding that the transaction was not consummated until Mr. Haffey signed the Mortgage.

Mr. Haffey made an appearance separate and subsequent to me for the purpose of executing the mortgage only. He received no documents upon his departure. No Notice of Right To Cancel was received.

May 14, 2007, I had rejected a loan, after discovering that I was the victim of fraud and that a classic "bait and switch" scheme had been attempted. Until 5:15pm on May 14, 2007, I believed that I had applied for and was executing documents for an in-house interest only closed-end loan, thereby refinancing an in-house line of credit. This line of credit had been altered and extended on several occasions, the last of which was February 21, 2007. Mr. Haffey and I had been working with the Bank of the Bluegrass since 2002

and all the loan products, without exception, were signed with the understanding that the Paper and Mortgage were held internally and exclusively by the Bank of the Bluegrass.

The product fraudulently presented to me at he eleventh hour and rejected on May 14, 2007, was a conventional loan bearing no relation to the agreed upon in-house interest only closed end loan.   Upon rejection, the Bank representative left the closing.   I then had the closing attorney make a copy of the documents pertaining to the rejected loan.   A copy of those documents is attached hereto and incorporated herewith as Exhibit "B."

Any and all documents in Exhibit "B," containing a hand written date by me next to my signature, of May 14, 2007, were indeed signed on May 14, 2007, and are dated in my hand.      These documents, including any Truth-In-Lending Disclosures, were executed and pertain as a matter of law, solely to the rejected loan package.

The scheme as to the May 14, 2007, rejected loan, was discovered after much of the documentation, including the HUD-1, were signed; but before the Promissory Note and Mortgage were executed.   A review of the May 14, 2007, rejected loan's HUD-1 and the HUD-1 signed on May 18, 2007, reveal an increase in the pay-off to the Bank of the Bluegrass, as well as a newly added discount fee of two thousand five hundred dollars ($2500.00,) to the May 18, 2007, transaction.   Both HUD-1s contain a beginning interest collection date of May 18, 2007.   My loan was illegally dispersed on the same day the Note and Mortgage were signed.      The HUD-1 for the May 18, 2007, executed transaction is attached hereto and incorporated herewith as Exhibit "C."

Although Mr. Shane Haffey bears no duties under the Promissory Note, the Mortgage was signed by Shane Haffey, separately from and subsequent to me, after business hours, on May 18, 2008. The Bank refused to consummate the loan without his signature. There was no Bank of the Bluegrass representative present when Mr. Haffey executed the Mortgage. Mr. Haffey received no documents upon his execution of the Mortgage and departed empty handed on May 18, 2007.   Mr. Haffey is not a party to any other Agreements with the Bank.   However, by law, he is automatically included in the TILA rescission as a Mortgagor.

The May 14, 2007, rejected loan and the May 18, 2007, executed Promissory Note and Mortgage bear no legal relationship to each other whatsoever.   Any attempt to tie the rejected documents executed on May 14, 2007, to the actual events which took place on May 18, 2007 is based in fraud.   On May 14, 2007, there was nothing to cancel or rescind, as no loan ever took place.   The documents signed on May 14, 2007 are null and void and they pertain to a transaction which was never consummated.   The Bank of the Bluegrass representative failed to show up for the May 18, 2007 closing.   The documents were signed by me in her absence at approximately 3:00pm on May 18, 2008.   Neither Mr. Haffey nor myself received a Notice of Right To Cancel at any time.   Truth-In-Lending documents were never executed pertaining to the May 18, 2008 loan, nor was an escrow disclosure or payment/amortization  schedule ever presented relating to such.

3

Although it may or may not be relevant to the rescission case at hand, the fact that the Bank representative, Jennifer Frye, fraudulently and illegally back dated many of the documents presented for the May 14, 2007, rejected loan, to an invented date of March 28, 2007, shows a course of conduct for the Bank. As of July 8, 2008, The Bank of the Bluegrass in under a FDIC and Kentucky Financial Institutions Cease and Desist Order, as to the making of new loans, for its long standing and consistent course of misconduct.

It appears from the record, that the Bank has never served as a "true" holder in due course of the Note or as Mortgagee. The public record would indicate that the loan was table funded. Therefore, The Bank of the Bluegrass was arguably acting only as an agent for the "real party in interest," whose identity remains concealed, but in whom all damages will lay. If a table funding took place, it was done without mine or Mr. Haffey's knowledge or consent. Likewise, the Assignment to MERS was done without notice or consent. It was my belief until last month that the Paper and Mortgage were held by the Bank of the Bluegrass and that GMAC was merely acting as the Servicing Agent for the Bank of the Bluegrass.

As previously stated in my electronic mail of November 10, 2008, your firm is incorrect in your assertion that I seek to rescind the loan. The loan was de facto and legally rescinded under the Act on October 15, 2008. Under the Act, the parties had up and until November 9, 2008, to sign any and all necessary documents releasing the mortgage. The public record indicates that the Note and the Mortgage have been bifurcated and that the Mortgage is held by Mortgage Electronic Registration Systems, an unregistered foreign corporation, which, according to the Kentucky Finance Administration and the Secretary of State's Office, is not licensed to operate or registered in the State of Kentucky.

The failure to release the mortgage and return all funds paid by November 9, 2008, serves as an additional violation of the Act and will subject the claim to additional damages. The release will then be obtained through a Court Order. As far as damages are concerned, TILA is a "strict liability" statute." As previously stated in my electronic mail of November 10, 2008, the documents as to the RESPA Qualified Written Request were also due on or before November 9, 2008. The above-referenced October 15, 2008, TILA and RESPA notices are attached hereto and incorporated herewith as Exhibit "D."

Your firm's legal conclusion that there was "no basis to conclude that there were any material disclosure errors that would give rise to an extended right of rescission," blatantly flies in the face of the record.

As of today, no response has been made to my electronic mail of November 10, 2008. Once again, please let this letter serve as notice that an attempt to procure a Settlement has been made along with a third demand for the TILA required Mortgage Release and return of all funds paid since May 18, 2007. Additionally, this letter serves to attempt to procure by Agreed Order the recognition that pursuant to RESPA, TILA, the Consumer Protection Act, the Fair Billing and Fair Credit Reporting Act, your clients are prohibited at this time from attempting collection on the Note or reporting such illegal collection to

any of the Credit Bureaus.   If an Agreed Order is not made before the close of business today, a Cease and Desist Order will be procured from the Fayette Circuit Court as to the illegal collection and credit reporting issues.   The Order will serve as evidence of your client's "bad faith" in the matter.

Once again, let me reiterate that the channels of communication continue to remain open at this end.   I remain,

Yours respectfully,

Heather Mary Boone McKeever

Enc./Exhibits "A," "B," "C," and "D"

MERS CORP
3300 S.W. 34TH AVE.
SUITE 101
OCALA, FL 34474

08-CI-5970   MORTGAGE ELECTRONIC

**B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-CV-510-KSF

SHANE HAFFEY, et al.                                                   PLAINTIFF

vs.                              **OPINION AND ORDER**

                                                                     DEFENDANT

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., et al.


* * * * * * * *

    This matter is before the Court on the motion of GMAC Mortgage, LLC ("GMAC") to dismiss it as a party to these proceedings.  [DE 7].  Having been fully briefed, the motion is ripe for consideration.  For the reasons set out below, the motion will be granted.

**I.    BACKGROUND**

    Plaintiffs, Heather Boone McKeever and Shane M. Haffey, filed a twenty-six page complaint against "Mortgage Electronic Registration Systems, Inc.; GMAC Mortgage, LLC; GMAC Mortgage, LLC, as Loan Servicing Agent for the Bank of the Bluegrass and Trust Co.; GMAC Mortgage, LLC, as Loan Servicing Agent for the Concealed and Unknown Persons who are the 'Real Parties in Interest' and as the Agent for the Concealed True Lenders and/or the Holders in Due Course of an Original Promissory Note  Who Claim any Interest in the Subject Matter of this Action; and The Concealed and Unknown Persons Who Are the 'Real Parties in Interest,' as the Concealed True Lenders and/or the Holders in Due Course of an Original Promissory Note Who Claim any Interest in the Subject Matter of This Action."  [DE 1-4].

    The Complaint alleges that Plaintiffs are the owners of certain real property at 3250 Delong Road, Lexington, Kentucky, and that the Defendants have some relationship to Plaintiffs' mortgage loan transaction on May 18, 2007 ("Loan").  The Loan was a refinancing of an unsecured loan by

Bank of the Bluegrass and created a mortgage on Plaintiffs' Delong Road home. *See* Complaint

¶¶ 5, 7, 8. Plaintiffs claim a long-standing relationship with Bank of the Bluegrass involving multiple

real estate loans and lines of credit secured by real estate and a history of refinancing the loans

and mortgages. *Id.* at ¶ 7. Plaintiffs allege on this occasion, however, Bank of the Bluegrass

conducted a "Bait and Switch" scheme whereby Plaintiffs were forced to agree to the Loan and sign

documents under duress and under different terms than they discussed. *Id.* at ¶¶ 12-17.

Plaintiffs allege that Bank of the Bluegrass committed various wrongful acts associated with

the Loan closing, including failure to provide notices required by the federal Truth In Lending Act,

Real Estate Settlement Practices Act, and Home Ownership and Equity Protection Act. *Id.* at ¶¶

39, 44-45. They further claim that Bank of the Bluegrass defrauded them by assigning the

mortgage and by concealing the true nature of the transaction and the identity of the real lender.

*Id.* at ¶¶ 24-27. They allege they would not have entered into the transaction had they known that

the mortgage would not remain with Bank of the Bluegrass but, instead, would be assigned to

someone else, in this case, Mortgage Electronic Registration Systems, Inc. ("MERS").[1] *Id.* at ¶¶

24-28. Plaintiffs allege paying undisclosed fees, finance charges and kickbacks to the holder of

the Note and Mortgage. ¶ 29. They allege the Note may have been satisfied by a third party

guarantee contract or insurance policy and may have been paid in full. ¶¶ 32-33. They claim to

have rescinded the Note and Mortgage under the Truth In Lending Act ("TILA"). ¶ 35. They allege

that their settlement efforts have been ignored by GMAC's counsel. ¶36.

Count I of the Complaint alleges "the Defendants have jointly and severally violated" the

TILA, 15 U.S.C. § 1601 et seq. ¶¶ 39-43. Count II claims violations of HOEPA, 15 U.S.C. § 1639

et seq. ¶44. Count III claims violations of the Real Estate Settlement Procedures Act, 12 U.S.C.

---

[1] Plaintiffs filed a separate action against MERS, which was also removed to this Court
(Case No. 5:08-cv-456). MERS' motion to dismiss has been briefed. GMAC Mortgage, LLC on
behalf of Deutsche Bank filed suit against Haffey and McKeever for a declaration that the
purported recision by Defendants is invalid (Case No. 5:08-cv-459).

§ 2601, for which the "Defendants are jointly and severally liable." ¶¶ 45-46. Count IV alleges defamation of title, violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681. ¶¶ 47-48. The only factual allegation against GMAC is that it sent a notice through electronic mail that a mortgage payment was due and owing on November 15, 2008. Count V alleges violations of Kentucky's Unfair Trade Practices Act arising from the Bank's assignment of the Mortgage. ¶ 49. Count VI alleges breach of fiduciary duty by the Bank for failing "to disclose material facts affecting the loan transaction." Plaintiffs allege the Bank was "an agent of GMAC" and that all Defendants are jointly and severally liable for breach of fiduciary duty. ¶¶ 50-51. There is no factual support for the allegation of agency. Count VII alleges fraudulent misrepresentation relating to inducing Plaintiffs to enter into the Loan and in the execution of it. ¶ 52. Count VIII alleges fraud by omission for the Bank's failure to disclose that it was merely a "Pretender Lender." ¶¶53-55. Count IX alleges violations of Kentucky's Consumer Protection Act for deceptive acts in the loan transaction. ¶¶ 56-57. Count X alleges RICO violations as a result of the "Defendants" agreeing "to deceive the Homeowners." ¶ 59. Count XI is for breach of contract relating to the Loan and Mortgage. ¶ 60. Count XII is for violation of the Kentucky Financial Services Code because the Note and Mortgage were made with a concealed lender who is operating illegally as a financial institution. ¶ 61.

With respect to GMAC, Plaintiffs allege that GMAC and the other defendants are "jointly and severally liable as 'Predatory Lenders.'" ¶ 4. On August 16, 2007, GMAC sent a letter to Plaintiff McKeever responding to an inquiry and enclosing a copy of the final HUD-1 Settlement Statement. Complaint Ex. E; ¶ 21. Paragraph 23 alleges GMAC began collecting interest on the Loan on May 18, 2007, despite the fact the loan was not consummated until after 5:00 p.m. that day. Paragraph 24 alleges that Plaintiff learned from a GMAC representative that the Mortgage was assigned to MERS and that the "Bank of the Bluegrass had fraudulently acted only as an agent for the concealed 'Real Party in Interest.'" Paragraph 35 alleges that Plaintiffs rescinded the Note and

3

Mortgage on October 15, 2008, and sent notice, along with a Qualified Written Request under the Real Estate Settlement and Procedure Act ("RESPA"), to GMAC, but the transaction was not rescinded as required.  The letter is attached as Exhibit F.  Paragraph 37 alleges that GMAC sent a written notice on November 15, 2008 that the Mortgage payment was due and owing on that date.  Paragraph 38 alleges that GMAC wrote McKeever on October 16, 2007 that her payment would be recorded as "late."

GMAC moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim against GMAC.  [DE 7, 7-2].  Assuming Plaintiffs' factual allegations are true, GMAC argues those facts do not state any claim against GMAC.  They note the allegations involve the Loan from Bank of the Bluegrass, but the Bank is not named as a defendant.  They state there is no allegation that GMAC was involved in the origination, negotiation or closing of the Loan.  They also claim there is no allegation of a relationship between Bank of the Bluegrass and GMAC such that GMAC would be liable for the conduct of the Bank.  Accordingly, GMAC argues it should be dismissed.

Plaintiffs respond that GMAC was sued for its acts in three capacities:  (1) as a corporate entity; (2) as Loan Servicing Agent for the Bank of the Bluegrass; and (3) as Loan Servicing Agent for the "Concealed and Unknown Person(s) who are the 'Real Parties in Interest.'"  [DE 12, p. 1].  Plaintiffs argue that the principal whom GMAC serves has been concealed by GMAC.  *Id.*  They also note that GMAC was served in the capacity of "Agent for Service of Process" for "The Concealed and Unknown Persons who are the 'Real Parties in Interest.'"  Plaintiffs deny that the allegations in the Complaint pertain only to the Bank and refer to the term "Defendants" in the allegations in paragraphs 28 and 54.  Plaintiffs also reference exhibits to the Complaint reflecting that "GMAC ignored all pre-litigation requests for information and discovery."  Plaintiffs claim that "GMAC played and continues to play multiple roles in the conspiracy pertaining to Plaintiffs' transaction" and that it is "the cornerstone of the conspiracy and illegal and fraudulent acts."  [DE 12, p. 3].

GMAC replies that Plaintiffs' protestations in the Response are not supported by factual allegations in the complaint.  [DE 13].  Instead, the critical allegations in the complaint never mention GMAC or any role GMAC may have had.  The Complaint first mentions GMAC as servicing agent for the Bank in August 2007, three months after the Loan was consummated.  [Complaint ¶ 21].  GMAC further argues the use of the plural "Defendants" is not sufficient to state a claim. GMAC contends the complaint must be dismissed for failure "to raise a right to relief above the speculative level."  [DE 13, p. 2].

## II.    ANALYSIS

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Id.* at 1964-65 (citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)

In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's factual allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005).  However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at  556.

GMAC's motion to dismiss is well taken.  *Iqbal's* complaint was dismissed because its conclusory allegations were not supported by factual matter.  The court said:  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not

do.'  Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S.Ct. at 1949, quoting *Twombly*, 550 U.S. at 555, 557.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 1950.

The allegations in Plaintiffs' Complaint were set forth in detail to illustrate the absence of any claim against GMAC.  The vast majority of the allegations are mere "labels and conclusions" and are devoid of any factual connection whatsoever to GMAC.  The few factual allegations regarding GMAC do not support any legal claim.  In August 2007, GMAC responded to an inquiry from McKeever and enclosed a copy of a HUD-1.  McKeever alleges the Bank fraudulently substituted a HUD-1 dated May 14, 2007 for the May 18, 2007 loan documents she signed, but she makes no factual allegation that GMAC was involved with the loan documentation in any way.  McKeever alleges she learned from a GMAC representative that the Bank had assigned the Mortgage to MERS, but she does not make any factual allegation that GMAC was involved in or responsible for that assignment.  McKeever wrote GMAC, MERS and Bank of the Bluegrass on October 15, 2008 stating that the Note and Mortgage were in the name of Heather M. Haffey, but that had never been her legal name.  Complaint Exhibit F.  She stated the deed to the property was "in the name of Heather McKeever, thereby making the transaction invalid on its face."  *Id.*  The letters sought to rescind the Note and Mortgage and demanded a refund of all funds and interest paid.  *Id.*  There are no statements in the letters that GMAC had violated any statute and no factual support for any role by GMAC, other than providing information upon request.  The only other factual allegations in the Complaint regarding GMAC are that it notified her that an October payment would be recorded as late (¶ 38), and that a payment was due and owing on November 15, 2008 (¶ 37).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S.Ct. at 1949, quoting

*Twombly*.  Assuming all of the factual allegations in the Complaint regarding GMAC are true, Plaintiffs have not stated any "claim to relief that is plausible on its face" against GMAC.  *Twombly*, 550 U.S. at 570.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Iqbal*, 129 S.Ct. at 1949, quoting *Twombly*.  It is the opinion of this Court that Plaintiffs' factual allegations regarding GMAC do not even rise to the level of being "consistent with a defendant's liability."  At most, they show that GMAC serviced a mortgage and provided information.  Accordingly, GMAC's motion to dismiss will be granted.

III.    **CONCLUSION**

**IT IS ORDERED** that the motion of GMAC Mortgage, LLC to dismiss it as a party to this action [DE 7] is hereby **GRANTED**.

This September 4, 2009.

Signed By:

*Karl S. Forester*   K S F

**United States Senior Judge**

**C**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action No. 08-510)**
**GMAC MORTGAGE, LLC,**                                                                  **PLAINTIFF,**

**V.**                                    **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                                        **DEFENDANTS.**

* * * * * * * * * * *

This matter is before the court on the motion for summary judgment by the

remaining defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") in

an action styled *Haffey v. MERS*, Lexington Civil Action 08-510, which is part of

this consolidated action.  R. 20, R. 21.  For the reasons below, the court will grant

the motion.

**I.      Background**

This case is one of three pending consolidated actions involving property

located at 3250 Delong Road in Lexington, Kentucky.[1]  Heather McKeever and

Shane Haffey, a married couple, brought this action in Fayette Circuit Court on

November 21, 2008.  Lexington Civil Action 08-510, R. 1, Attach. 3.  The

defendants removed the case to federal court on December 15, 2008.  *Id.* at R. 1.

The claims against the other defendant, GMAC Mortgage, LLC, were dismissed on

_____

[1]*See* Lexington Civil Actions No. 08-459, 08-510, and 09-362.  Two other
consolidated actions, 08-456 and 09-255, have been dismissed.

1

September 4, 2009.  R. 17.  MERS moved for summary judgment on September

17, 2009.  R. 20.

## II.    Analysis

The plaintiffs have failed to establish numerous elements of their claims

against MERS, and summary judgment is appropriate "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp.* v. *Catrett*,  477 U.S. 317, 323 (1986).

### A.    Settlement agreement

MERS contends that a settlement agreement between Bank of the Bluegrass

and McKeever bars all of the plaintiffs' claims.  R. 21 at 6.  In response, the

plaintiffs point to their answer/counter-claim/third-party complaint in a related

consolidated case, R. 17 in Lexington Civil Action 09-362, which "condemn[s] in

totality" that settlement agreement.  Lexington Civil Action 08-510, R. 29 at 2.

#### 1.    Validity of the settlement agreement

A valid settlement agreement can be set aside only for fraud or mutual

mistake of fact.  *Estate of Jones v. Comm'r*, 795 F.2d 566, 573-74 (6th Cir.

1986).  First, the plaintiffs have not provided any support for their contention that

McKeever was "fraudulently induced" to enter into the settlement agreement.

Lexington Civil Action 09-362, R. 17 at 28; *see also Valente v. Univ. of Dayton*,

No. 08-cv-225, 2010 U.S. Dist. LEXIS 195, at *4 (S.D. Ohio Jan. 4, 2010)

(explaining that once the moving party meets its initial burden of showing there is no genuine issue of material fact, the non-moving party must go beyond the pleadings to show that there is a genuine issue for trial) (citation omitted).

In addition, the Bank of the Bluegrass's disclosure of this agreement did not invalidate the agreement. A confidential settlement agreement is not privileged and "the mere fact that parties agree to maintain the confidentiality of their agreement does not serve to shield the information from discovery . . . litigants may not shield otherwise discoverable information from disclosure to others merely by agreeing to maintain its confidentiality." *Am. Guarantee and Liab. Ins. Co. v. CTA Acoustics, Inc.,* No. 05-80, 2007 U.S. Dist. LEXIS 26485, at *12 (E.D. Ky. 2007).

### 2. Terms of the agreement

The terms of the agreement bar McKeever's claims. Under Kentucky law, which the parties agreed would govern the settlement agreement, an agreement to settle legal claims is treated as a contract subject to the rules of contract interpretation. *3D Enters. Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist.,*174 S.W.3d 440, 448 (Ky. 2005). The aim of settlement is to effectuate the intention of the parties. *Id*. In the absence of ambiguity, courts look only as far as the four corners of the settlement agreement to determine the parties' intentions. *Id.* (citing *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). Here, the agreement provides that

> [a]ll parties to this Settlement Agreement (Bank of the Bluegrass & Trust
> Company and Heather McKeever Haffey), their officers, agents, and

3

successors in interest, specifically release and forever discharge each other from any and all claims, actions, liability, causes of action of any kind, in law and in equity, arising out of the above referenced loan.

Lexington Civil Action 08-510, R. 21, Attach. 1 at 2. In exchange for this mutual release, Bank of the Bluegrass paid McKeever $2,500. *Id.* Thus the settlement agreement bars McKeever's claims against MERS "arising out of the above referenced loan." *Id.* Although MERS has not articulated a basis for binding Haffey, a non-signatory, to the agreement, the court need not reach that issue because the plaintiffs' claims fail on other grounds.

**B.    Count 1 and Count 2: Truth in Lending Act (TILA) 15 U.S.C. §§ 1601 et. seq., the Home Ownership and Equity Protection Act (HOEPA), and the Kentucky Predatory Lender Act, Ky. Rev. Stat. Ann. § 360.100.**

The Truth in Lending Act ("TILA") aims to ensure the meaningful disclosure of credit terms so that consumers can make informed decisions and to protect consumers from inaccurate and unfair credit billing and credit card practices. *See* 15 U.S.C. § 1601(a). TILA requires creditors to disclose certain information before consummating a transaction and defines a creditor as a person who both (1) regularly extends consumer credit and (2) is the entity to whom the debt arising from the consumer credit transaction is initially payable "on the face of the evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f).

**1.    Disclosure requirements**

Despite alleging that the defendants "jointly and severally" violated TILA and its implementing regulations through failing to disclose required information, the

4

plaintiffs have not shown that MERS was a creditor under TILA.  Specifically, the plaintiffs have not alleged, nor does the record does suggest, that MERS was the entity to whom the debt was originally payable:  Even construing the facts in a light most favorable to the plaintiffs, there is no indication that MERS was involved in the origination of the loan.  It follows that, because MERS was not a creditor under the statute, it was not obligated to make the disclosures that are the subject of Count One.

The plaintiffs have also failed to articulate a basis for assignee liability for any TILA disclosure violation.  Section 1641(a) provides that an assignee may be held liable for a creditor's TILA disclosure violations where the violation "is apparent on the face of the disclosure statement," including (1) an incomplete or inaccurate disclosure/document or (2) a disclosure that fails to use required terms.  *See* 15 U.S.C. § 1641(a).  The plaintiffs have not alleged, either in their complaint or in subsequent filings, that the alleged TILA violations were either apparent on the face of a disclosure statement or that they were incomplete or inaccurate, and TILA does not impose a duty upon assignees to determine whether appropriate disclosures were made.  *See Parker v. Potter*, 232 Fed. Appx. 861, 865 (11th Cir. 2007).  Thus the plaintiffs cannot sustain their claims on the basis of assignee liability.

Finally, the plaintiffs' claims fail due to TILA's one-year statute of limitations. This provision, which also applies to the plaintiffs' HOEPA claims, provides that

"[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  The plaintiffs have not argued that this statute of limitations should be tolled for any reason.  The relevant transaction occurred in May 2007, and the instant lawsuit was filed on November 21, 2008.  Accordingly, the plaintiffs' claims for failing to comply with TILA and HOEPA's disclosure requirements are barred by the applicable statute of limitations, entitling MERS to a judgment as a matter of law.

## 2.  Rescission

The plaintiffs also allege that they rescinded the loan transaction and that the defendants should be held liable for ignoring this rescission.  Specifically, the plaintiffs allege that their letters to GMAC and MERS automatically voided any security interest in their property and the plaintiffs' obligation to pay finance and other charges.  Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 37, ¶ 42, ¶ 43.  This allegation is based on a misreading of TILA's rescission provisions, however.

TILA provides that when a loan made in a consumer credit transaction is secured by the consumer's principal dwelling and the creditor fails to comply with certain disclosure requirements, then the consumer may rescind the transaction up to three years after the consummation of the transaction or until the property is sold, whichever occurs first.  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).  In October 2008, McKeever sent a letter to MERS in which she stated that she was

6

exercising her right to rescind and that any security interest MERS had in her home was therefore void.  Lexington Civil Action 08-510, R. 1, Attach. 3 at 57.  This letter did not have the effect of rescinding the loan transaction, however.  Where the lender or its assignees contest the basis for rescission "it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any."  *Yamamoto v. Tampon*, 329 F.3d 1167, 1172 (6th Cir. 2003).  Rather, a security interest becomes void only when the right to rescind is acknowledged by the creditor or deemed valid by an appropriate decision-maker, neither of which has happened here.  *See Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002).  Furthermore, because MERS no longer claims an interest in the subject property, the court need not address whether the transaction should now be rescinded.  *See* Lexington Civil Action 08-510, R. 30, Attach. 1 at 3.

### 3.    Kentucky Predatory Lending Act

The plaintiffs' claim under Ky. Rev. Stat. Ann. § 360.100 fails as a matter of law because the instant loan was for $1,000,000 and the statute applies to loans in which the principal amount of the loan is between $15,000 and $200,000.  Ky. Rev. Stat. Ann.  360.100(1)(a)(1) (LexisNexis 2010).

### C.    Count 3: Real Estate Settlement Procedures Act 12 U.S.C. § § 2601 et. seq.

The allegations in this count were directed at GMAC, not MERS.  The

7

plaintiffs' RESPA claim stems from GMAC's alleged failure to respond to a qualified written request pursuant to 12 U.S.C. § 2601.  Because the allegations do not involve conduct by MERS, and the plaintiffs have not articulated a basis for holding MERS liable for GMAC's conduct, there is no genuine issue of material fact with respect to this count, and MERS is entitled to a judgment as a matter of law.

    **D.**    **Count 4: Defamation of Title and Violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681**

First, in order to maintain a claim for defamation of title, a plaintiff must show that the defendant "knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging plaintiff's property title and must have pled and proven that they had incurred special damages resulting therefrom." *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995). The pleadings and other filings fail to meet these basic requirements, and MERS contends that no evidence exists to support this claim.  R. 30 at 8.  To date, the plaintiffs have not set forth specific facts showing that there is a genuine issue for trial with respect to their defamation claims, and therefore this claim fails.  *See Parsons v. FedEx Corp.*, 360 Fed. Appx. 642, 646 (6th Cir. 2010) (noting that once the movant meets its initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial) (citations omitted).

Second, the plaintiffs have not stated a claim against MERS under the Fair

Debt Collection Practices Act ("FDCPA") or the Fair Credit Reporting Act ("FCRA") . Generally, the FDCPA aims to eliminate abusive debt collection practices, and the FCRA regulates the collection and dissemination of consumer credit information. *See generally,* Fair Debt Collection Practices Act, Pub. L. No. 90-321, 82 Stat. 146 (1968); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq* (2010). The plaintiffs allege that "the defendants" were "fraudulently and illegally attempting to collect on the Note" and "failed to release the mortgage" despite the alleged rescission of the mortgage. Lexington Civil Action 08-510, R. 1, Attach. 3 at 23. Although the plaintiffs believe MERS and GMAC were "jointly and severally liable for damages," their allegations indicate that it was GMAC that serviced the loan (*id.* at R. 1, Attach.3 at ¶ 21) and that attempted to collect a debt from them (*id.* at¶ 23, 37, 38). GMAC is no longer a party to this lawsuit, however, and the plaintiffs have not established any factual basis for holding MERS liable under the FDCPA or the FCRA. Accordingly, because no genuine issue of material fact exists regarding the plaintiffs' FDCPA and FCRA claims as to MERS, Count Four fails as a matter of law.

**E.    Count Five: Unfair Trade Practices Act, Ken. Rev. Stat. Ann. § 365 (LexisNexis 2010)**

Because the plaintiffs' claims against MERS for violating TILA, HOEPA, RESPA, FDCPA, and the FCRA fail, these claims cannot serve as a basis for liability under the Kentucky Unfair Trade Practices Act, and this claim fails as a matter of law.

9

### F.      Count Six: Breach of Fiduciary Duty

The plaintiffs allege that MERS owed them a fiduciary duty due to its role as a "Lender[]," and that this duty was "separate and apart from" the actions of its "agent," Bank of the Bluegrass.  Although the plaintiffs repeatedly state that an entity other than Bank of the Bluegrass was the "True Lender," even construing the facts in a light most favorable to the plaintiffs, there is no indication that MERS served as a lender in this transaction.  Rather, the record indicates that MERS was an assignee of the plaintiffs' mortgage, and under Kentucky law a mortgagee-mortgagor relationship does not typically give rise to a fiduciary relationship.  *Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893 (6th Cir. 2002).  Accordingly, there is no genuine issue of material fact with respect to count six, and MERS is entitled to a judgment as a matter of law on this claim.

### G.      Counts Seven and Eight: Fraud Claims

The plaintiffs have failed to make a showing sufficient to establish the existence of the elements of their fraud claims, for which they would bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 323.  Kentucky law requires a party claiming fraud by misrepresentation to show the following by clear and convincing evidence: (a) a material misrepresentation by the defendant; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) that the plaintiff acted in reliance on the misrepresentation; and (f) that reliance caused the plaintiff injury.  *United*

10

*States Achievement Acad., LLC v. Pitney Bowers, Inc.,* 458 F. Supp. 2d 389, 395 (E.D. Ky. 2006).  As noted by MERS, "the record is completely devoid of any representation by MERS to [p]laintiffs, let alone one that would support plaintiff's claim for fraud against MERS."  R. 30 at 10.

Similarly, the plaintiffs fail to establish the basic elements of their fraud-by-omission claim.  In alleging fraud by omission, a plaintiff must show that the defendant owed a fiduciary duty to disclose facts to the plaintiff either because (1) the defendant owed a fiduciary duty to the plaintiff; (2) a statute imposed such a duty; (3) the defendant had superior knowledge about facts essential to a transaction and the plaintiff reasonably relied on the defendant to disclose that knowledge; or (4) because the defendant partially disclosed relevant facts, resulting in communication that was materially misleading.  *Gresh v. Waste Servs. of Am.*, 311 Fed. Appx  766, 772 (6th Cir. 2009).  As noted *supra*, the facts do not indicate the existence of a relationship between MERS and the plaintiffs that would give rise to a fiduciary duty, nor have the plaintiffs shown that the other three circumstances apply here.

Thus, the plaintiffs have failed to put forth specific facts showing there is a genuine issue for trial with respect to their fraud claims against MERS.  Accordingly, summary judgment for MERS is appropriate with respect to these counts.  *See Celotex,* 477 at 324 (explaining that Rule 56(e) requires a nonmoving party to go beyond the pleadings and to put forth "specific facts showing that there

11

is a genuine issue for trial").

**H. Count Nine: Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. 367.110 *et. seq.***

The plaintiffs allege that the defendants "committed false, misleading or deceptive acts in their loan transaction," yet have not provided any evidence indicating that MERS specifically did so. *See Hartsel v. Keys,* 87 F.2d 1472, 1477 (6th Cir. 1996) (explaining that a plaintiff must present evidence on which the trier of fact could find for the plaintiff). MERS contends that no evidence exists that would give rise to a violation of the Act. R. 30 at 11-12 The pleadings and other filings indicate that MERS became an assignee of the mortgage in May 2007, and that MERS transferred its interest in the mortgage to Deutsche Bank in September 2009. R. 30 at 12; *see also* Lexington Civil Action 08-456. These same materials lack any support for the plaintiffs' legal conclusion that MERS committed "false, misleading or deceptive acts." Because the plaintiffs have not put forth specific facts indicating that MERS violated the Act, their claim fails. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (noting that a plaintiff "may not rest upon the allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial) (citation omitted).

**I. Count Ten: Racketeer Influenced Corrupt Organizations Act (RICO), 8 U.S.C. 1961 et. seq.**

The plaintiffs allege that the "[d]efendants" agreed to "deceive" the plaintiffs; "have and continue to collude together to achieve unlawful aims by

12

Case: 5:08-cv-00310-JBC    Doc #: 31    Filed: 06/29/10    Page: 13 of 15 - Page ID#: 819

unlawful means"; and are "co-conspirators" who "took overt acts to accomplish their illegal acts and have clearly demonstrated their intention to break the law, thereby 'breathing together' in their fraudulent and illegal acts."  Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 59.  Because the plaintiffs rely on legal conclusions and fail to articulate any facts indicating that MERS committed any acts in violation of this statute, they have failed to establish a triable issue with respect to this claim.  *See Celotex*, 477 U.S. at 323 (noting that one of the purposes of summary judgment is to isolate and dispose of factually unsupported claims).

### J.    Count Eleven: Breach of Contract

The plaintiffs have failed to set forth sufficient evidence establishing that MERS breached any contractual obligation or that any alleged breach resulted in any harm to the plaintiffs.  Under Kentucky law, a breach-of-contract claim requires (1) the existence of a valid contract; (2) breach by the defendant; and (3) damage resulting from the breach.  *Sudamax Industria e Comercia de Cigarres, Ltda., v. Buttes,* 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007).  Here, the plaintiffs allege that the defendants "materially breached the express and implied contracts pursuant to the loan agreement and mortgage" by their "acts and omissions."  Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 60. Specifically, the plaintiffs allege that the following acts constituted breaches of contract: failing to issue certain TILA disclosures, incorrectly dating loan documents and the mortgage, and "conspiracy

13

and fraudulent acts" in relation to the identity of the "True Lender and Mortgagee .

. .."  Lexington Civil Action 08-510, R. 1, Attach. 3 at ¶ 60.  MERS contends that

it did not have a direct contractual relationship with the plaintiffs, and that

accordingly no breach or harm to the plaintiffs as a result of any breach could have

occurred.  *See* R. 30 at 13.  The plaintiffs have not identified any specific facts

refuting this contention.  Accordingly, there is no genuine issue of material fact

with respect to this claim, and summary judgment is appropriate.  *See Anderson*,

477 U.S. at 249.

### K.    Count Twelve: Kentucky Financial Services Code, Ky. Rev. Stat. Ann. 286 (LexisNexis 2010)

The plaintiffs allege that in violation of the Kentucky Financial Services Code

("KFSC"), their loan was "obtained and based in deception and fraud," that it was

made with a "concealed and unknown" lender, and that that lender is "operating

illegally" in Kentucky.  None of these allegations appears to be directed at MERS,

however.  Morever, MERS alleges that the plaintiffs have not shown and cannot

show that MERS is a "bank, mortgage company, or is otherwise subject to the

KFSC."  R. 30 at 13.  The plaintiffs have not put forth any facts disputing this

allegation, nor have they alleged any facts indicating that MERS was involved in the

origination of the loan or that MERS served as the "true" lender.  Accordingly, there

is no genuine issue of material fact regarding the applicability of the KFSC to MERS,

and this claim fails.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that the motion for summary judgment by MERS, R. 20, is

**GRANTED**.

A judgment in this case will issue separately.

Signed on  June 29, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

# D

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action No. 08-510)**
**GMAC MORTGAGE, LLC,**                                                          **PLAINTIFF,**

**V.**                                          **JUDGMENT**

**HEATHER BOONE MCKEEVER, ET AL.,**                                 **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

Having granted summary judgment to the remaining defendant, Mortgage

Electronic Registration Systems, Inc., the court enters judgment in favor of the

defendants.  **IT IS ORDERED** that the plaintiffs' complaint is **DISMISSED** with

prejudice.  This is a **FINAL** and **APPEALABLE** order, and no just cause for delay in

its entry exists.

Signed on  June 29, 2010

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

1

# E

Eastern District of Kentucky
**FILED**

JUL 2 6 2010

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**CIVIL ACTION NO.  5:08-459-JBC**
**(Relating to Action: 5:08-510)**

GMAC MORTGAGE, LLC                                **PLAINTIFF**

V.                        **MOTION FOR RECONSIDERATION**

**HEATHER BOONE McKEEVER, ET AL.,**               **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

Come Heather Boone McKeever and Shane M. Haffey, and prior to their appeal to the

United States Court of Appeals for the Sixth Circuit from the final judgment of an Order

of Dismissal with prejudice entered in this lender liability and fraud action, entered on

June 29, 2010, (R.72 of the consolidated cases.), ask to Court to Reconsider its Dismissal.

The Motion is based on the fact that the Order has failed to take into consideration the

law as applied to the undisputed factual allegations in regards to MERS' lack of any

pecuniary interest in the mortgage loan in question, the fact that the Mortgage assignment

to MERS was fraudulently executed three (3) days prior to the closing of the loan; and

the Court's mis-application of the law in regard to TILA rescission and MERS role as a

beneficiary of a Confidential Settlement Agreement between one of the Movant's,

McKeever, and the Bank of the Bluegrass and Trust Company..

Any statute of limitations in regards to statutory violations should be equitably tolled

due to the components of fraud and conspiracy which exist between MERS and the other

parties.   Additionally, these same violations have been brought as defenses to the illegal

foreclosure, filed by the unregistered entity, Deutsche Bank, as Trustee for the 2007-Qs10 Trust. Therefore, the Statute of Limitations are tolled.

Further, the Movants state that this case should not be stricken from the Court's active docket as there are other named "John Doe" Defendants, (the actual owners of McKeever's mortgage loan), yet to be identified. This lack of identification is due to the fact that the Court has prevented the parties from engaging in discovery as no Scheduling Order has been entered for this and all the consolidated cases.

Dated:   July 26, 2010

Respectfully submitted,

/s/ Heather Boone McKeever
Heather Boone McKeever

/s/ Shane M. Haffey
Shane M. Haffey
Fairyhouse Hall
3250 Delong Road
Lexington, Kentucky 40515
Tel:   859-552-7388
Fax:   859-327-3277
Email:   kentuckyforeclosuredefense@insightbb.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Notice of Appeal was served via first class mail, on this the 26th day of July, 2010 on the following:

Hon. Mark S. Fenzel, Esq.
Hon. David Kellerman, Esq.
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, Kentucky 40202
ATTORNEYS FOR DEFENDANT,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**F**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action No. 08-510)**

**GMAC MORTGAGE, LLC,**                                           **PLAINTIFF,**

**V.**                           **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                              **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion for reconsideration of the

plaintiffs, Heather Boone McKeever and Shane M. Haffey.  R. 81.  For the reasons

below, the court will deny the motion.

**I.    Legal standards**

In this action by McKeever and Haffey, a married couple, this court granted

summary judgment in favor of the remaining defendant, Mortgage Electronic

Registration Systems, Inc. ("MERS").  The plaintiffs, seeking reconsideration of that

order, fail to mention any of the Federal Rules of Civil Procedure.  The court,

however, will construe their motion as one to alter or amend judgment pursuant to

Rule 59(e) because it was filed within 28 days after the entry of judgment.[1]  *See*

Fed. R. Civ. P. 59.  Under Rule 59, a court may alter the judgment based on: "(1) a

---

[1]McKeever and Haffey do not appear to be seeking relief pursuant to Rule 60.
They do not refer to any provisions of that Rule, nor does their motion show that
relief under that rule is warranted.

1

clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish and Wildlife Serv.*, No. 09-6228, 2010 U.S. App. LEXIS 17252, at *4 (6th Cir. Aug. 19, 2010) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). A Rule 59(e) motion is not an opportunity to re-argue or to present a new legal theory. *See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2006) (citations omitted). Rather, it must clearly establish a manifest error of law or present newly discovered evidence. *See id.*

## II.    Claims

The plaintiffs fail to show that altering or amending the judgment is warranted. Instead of setting forth specific facts showing a genuine issue for trial in response to MERS's motion for summary judgment, the plaintiffs made several unsupported assertions and incorporated by reference McKeever's seventy-two-page answer/counter-claim/third-party complaint from a related action, Lexington Civil Action 09-362 (R. 17), as well as "all pleadings and Exhibits, to date contained in the Consolidated Cases which in any way touch upon the issues contained in this Motion." R. 29 at 2.

Incorporation by reference is not intended "to allow the use of a sweeping adoption clause which serves as nothing more than a boiler plate 'safety valve.'" *Wolfe v. Charter Forest Behavioral Health Sys., Inc.*, 185 F.R.D. 225, 239 (W.D. La. 1999); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171,1176 (5th Cir. 2006) (indicating that incorporation by reference must be done with "a degree of

specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation") (citations omitted). Moreover, it was not the court's responsibility to parse through the entire record in an attempt to divine which documents would be helpful to the plaintiffs' case. Rather, it was the plaintiffs' responsibility to put forth "specific evidence" to show that there was a genuine issue of material fact for trial. *See Dobrowiak v. Convenient Family Dentistry, Inc.*, Nos. 07-2373 & 08-1241, 2009 U.S. App. LEXIS 4605, at *13 (6th Cir. Mar. 4, 2009) (explaining that it was the non-movant's obligation to timely present evidence to the court in a way that would enable it to readily draw the conclusion that a genuine issue of material fact existed). Plaintiffs did not identify anything in any of the consolidated cases' records that would have compelled a different result, nor have they done so in their motion for reconsideration. *See id.* at *15 (explaining that in order to defeat a motion for summary judgment, the evidence must permit a reasonable jury to return a verdict for the plaintiff).

Although the plaintiffs discussed their pleadings in Lexington 08-456 and 09-362 in their response to the motion for summary judgment, by simply relying on their pleadings -- albeit pleadings from other cases -- the plaintiffs failed to meet their burden in opposing the motion for summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("an opposing party may not merely rely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial").

3

Similarly, the issues raised in the instant motion do not warrant altering or amending the judgment. With respect to the settlement agreement, McKeever provides no legal support for her assertion that the court "misapplied the law" regarding MERS's role as a beneficiary of the agreement. R. 81 at 1. In its motion for summary judgment, MERS alleged that as an assignee of the mortgage, it was a "successor in interest" and was therefore a beneficiary of the terms of the settlement agreement between McKeever and Bank of the Bluegrass. R. 21 at 6-7. In McKeever's pleading in Lexington 09-362, she alleged that she was fraudulently induced to settle her claims with Bank of the Bluegrass arising out of the May 2007 loan transaction, and that therefore that settlement agreement is void. *See* Lexington Civil Action 09-362, R. 17 at 28, 33 ("The fraudulent inducement to sign the [settlement agreement] negate the agreement."). Although the answer/counter-claim/third-party complaint from 09-362 indicated the existence of a factual dispute regarding the execution of the settlement agreement, it did not constitute "affirmative evidence" that could have defeated summary judgment. *See White v. Wyndham Vacation Ownership, Inc.*, No. 09-5626, 2010 U.S. App. LEXIS 16988, at *6-7 (6th Cir. Aug. 11, 2010) (explaining the plaintiff must present affirmative evidence sufficient to show a genuine issue for trial to survive summary judgment, and that evidence that is merely colorable or not significantly probative is not sufficient).

Moreover, the settlement agreement was only one of the reasons the court granted the motion for summary judgment. *See* Lexington Civil Action 08-459, R.

4

71 at 4-15. Thus, even if one assumes that the settlement agreement did not bar McKeever's claims, McKeever and Haffey still have not shown that summary judgment was inappropriate because there were alternate grounds for dismissing each claim.

First, the plaintiffs assert that the court ignored their "undisputed factual allegations in regard to MERS's lack of any pecuniary interest in the mortgage loan in question," but fail to explain how this would have defeated MERS's motion for summary judgment. R. 81 at 1.

Second, although the plaintiffs allege that the mortgage assignment to MERS was "fraudulently executed" three days prior to the closing of the loan, they did not put forth any evidence suggesting that MERS itself was involved in any fraud related to the execution of their loan, nor can they rely on their general claims of conspiracy in their pleadings. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986) (discussing a prior holding that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff could not rest on his allegations of a conspiracy without 'any significant probative evidence tending to support the complaint'") (citation omitted).

Third, the plaintiffs do not explain their assertion that the court "misapplied the law in regard to TILA rescission," nor have they provided any legal support for that contention. R. 81 at 1.

Finally, the plaintiffs also argue that any statues of limitation should be equitably tolled. *Id.* ("any statute of limitations . . . should be equitably tolled due

5

to the components of fraud and conspiracy which exist between MERS and the

other parties).”  The plaintiffs did not raise this in their response to the motion for

summary judgment, however, and Rule 59(e) motions should not be used to raise

arguments” that could, and should, have been made before judgment issued.”  See

*Wardle v. Lexington-Fayette Urban County Gov’t*, No. 01-5154, 2002 U.S. App.

LEXIS 18673, at *19-18 (6th Cir. Sept. 5, 2002)

Thus, the plaintiffs fail to show that any of the aforementioned issues

warrant altering or amending the judgment pursuant to Rule 59(e).

### III.    “John Doe” defendants

The plaintiffs also argue that the matter should not have been dismissed

because of the “John Doe” defendants.  The Kentucky Rules of Civil Procedure set

forth procedures for serving corporations that have no agent in the state known to

the plaintiff upon which a summons could be lawfully served.  *See* Ky. R. Civ. P.

4.05-4.07.  Specifically, if a party sought to be summoned is a corporation having

no agent in the state known to the plaintiff upon whom a summons may be

lawfully served, then the clerk shall make an order upon the complaint “warning the

party to appear and defend the action within 50 days.”  Ky. R. Civ. P. 4.05.  This

warning order is made “only upon an affidavit of the plaintiff or his attorney,” and

shall detail either the last known address of the defendant or the plaintiff’s stated

ignorance of “such of those facts he does not know.”  Ky. R. Civ. P. 4.06.  At the

time of making a warning order, the clerk shall appoint, as attorney for the

defendant, a practicing attorney of the court.  Ky. R. Civ. P. 4.07.

6

The plaintiffs effected service only on GMAC and MERS, and they did not follow the above procedures for serving unknown defendants.  Although McKeever requested confirmation from GMAC that it would accept service for these entities, nothing in the record indicates that GMAC agreed to do so.  R. 1, Attach. 3 at 62.  Because they failed to follow the procedures for serving unknown corporate entities, such entities were not parties to this lawsuit and did not need to be dismissed.

Moreover, the plaintiffs' allegation that they are precluded from identifying the John Doe defendants due to their inability to get discovery is without merit.  Pursuant to Rule 56(f), a party opposing a motion for summary judgment may show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition.   Fed. R. Civ. P. 56(f).  The plaintiffs did not present such an affidavit in response to the motion for summary judgment, nor have the plaintiffs otherwise identified materials with some degree of precision that they hoped to obtain through discovery or explained how those materials would have helped them in opposing summary judgment.  *See Westerfield v. United States*, No. 08-4458, 2010 U.S. App. LEXIS 3788, at *8-9 (6th Cir. Feb. 24, 2010) (explaining that although a party may invoke Rule 56(f) in response to a motion for summary judgment, that party must state with some precision the materials he hopes to obtain and exactly how those materials would help in opposing summary judgment).  Thus, the plaintiffs have not shown that the case should remain open so they can pursue their claims against the "John Doe" defendants.

**III.    Conclusion**

Accordingly,

**IT IS ORDERED** that the motion to alter or amend the judgment, R. 81, is

**DENIED.**

**IT IS FURTHER ORDERED** that this a copy of this order and the underlying

motion, response, and reply shall be docketed in Lexington Civil Action 08-510.

Signed on  September 13, 2010

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY