# The Bluegrass Action Pleadings



| AOC-105    Doc. Code: CI | | Case No. | CW-CI-3973 |
| Rev: C-07    07/5/2009 07:13 pm | | Court | ✓ Circuit ☐ District |
| Page 1 of 1    Ver. 1.02 | | | |
| Commonwealth of Kentucky | | County | Fayette |
| Court of Justice    www.courts.ky.gov | | | |
| CR 4.02; CR Official Form 1 | CIVIL SUMMONS | | |

**PLAINTIFF**

Shane                          Haffey
3250 Delong Road

Lexington
                    Kentucky            40515

**VS.**

**DEFENDANT**

Bill                          Allen
Bank of the Bluegrass and Trust Co.
101 East High Street
Lexington            Kentucky            40507

**Service of Process Agent for Defendant:**

_____

_____

_____

_____

**THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):**

       You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within 20 days following the day this paper is delivered to you, judgment by default may be taken against you** for the relief demanded in the attached Complaint.

       The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____ JUL 0 6 2009 , 2_____

                                   WILMA E. LYNCH
                                   FAYETTE CIRCUIT COURT
                                   FAYETTE COUNTY                              Clerk
                          By: ___120 N. LIMESTONE STREET C103___ Stho ___ D.C.
                                   LEXINGTON, KENTUCKY 40507

| **Proof of Service** |
|---|
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____ |
| this _____ day of _____, 2_____. |
| Served by: _____ |
| _____ Title |

COMMONWEALTH OF KENTUCKY
FAYETTE COUNTY CIRCUIT COURT
DIVISION _____
CIVIL ACTION NUMBER _09-CI-3473_

SHANE HAFFEY AND                                    PLAINTIFFS
HEATHER McKEEVER

V.                        **COMPLAINT**

                                                    JUL 0 6 2009

BILL ALLEN                                          DEFENDANTS
*In his individual capacity;*

MARK HERRON
*In his individual capacity;*

JENNIFER FRYE
*In her individual capacity, and;*

THE BANK OF THE BLUEGRASS AND TRUST CO.


****************************

   Come the Plaintiffs, Shane Haffey and Heather McKeever, a married couple,
hereinafter, ("Haffey") and ("McKeever") and collectively hereinafter, ("the
Homeowners") and for their Complaint state the following:


### The Parties

   1. The Homeowners are the legal and equitable owners of the real property known as
3250 Delong Road, (Fayette County) Lexington, Kentucky, 40515. The Homeowners
have legal title to and are in possession of the following property:

BEING all of Tract 2, as shown by Final Record Plat of a Portion of The Sandlin Farm Subdivision to the City of Lexington, Fayette County, Kentucky thereof of record in Plat Cabinet H, Slide 595, in the Fayette County Clerk's Office; and the improvements thereon being known and designated as 3250 Delong Road )formally known as 3250 Walnut Hill Road, Lexington, Kentucky.

BEING the same property conveyed to Heather McKeever and Shane M. Haffey, by deed, dated October 24, 2003 of record in DEED BOOK 2408, PAGE 505 in the Fayette County Clerk's Office.

2.    The Defendant, The Bank of the Bluegrass and Trust Co., hereinafter, ("the Bank") is a Kentucky Corporation, which acts as an independent private Financial Institution.

3.    The Defendant, Bill Allen, hereinafter, ("Allen") was at all times relevant hereto, the President of the Bank and was in personal contact with the Homeowners at all time relevant hereto.

4.    The Defendant Mark Herron, hereinafter, ("Herron") was at all times relevant hereto Chief Executive of the Bank, with personal knowledge and decision making authority as relating to this Complaint.

5.    The Defendant, Jennifer Frye, hereinafter ("Frye") was at all times relevant hereto an agent of the Bank, who acted as the Homeowners personal contact as it relates to the loan which is the subject matter of this action.

6. The entity, Mortgage Electronic Registration Systems, hereinafter, ("MERS,") is a foreign entity, which is unregistered and unlicensed in Kentucky to transact business and thus, has been and continues to transact and conduct business and operates fraudulently and illegally in the Commonwealth of Kentucky.    MERS claims an interest in said property as a recorded Mortgage Assignee, adverse and hostile to Plaintiff's right and title by the recording of "Assignment of Mortgage," found in BOOK 449 PAGE 380 of the Fayette County Clerk and which contains a date of May 14, 2007.    MERS is

2

illegally and fraudulently listed in the public records of Fayette County as an Assigned Mortgagee against Heather M. Haffey and Shane M. Haffey.   No Mortgage Agreement was ever signed by the Plaintiffs with the Defendant, MERS.   No Notice or Disclosure was ever given to the Plaintiffs of any Assignment.   No Promissory Note or other evidence exists which could ever make the Plaintiffs indebted to MERS in any way. MERS has never had nor will it ever have standing to enforce the illegal and fraudulent Mortgage and/or Mortgage Assignment in the Commonwealth of Kentucky.  MERS has no claim or interest in said land whatsoever.   MERS may have a business relationship with the other Defendants to this action and has conspired with and colluded with the other Defendants to commit fraudulent and illegal acts.

7.   The entity GMAC Mortgage, LLC, hereinafter, ("GMAC"), is a foreign corporation which may have Serviced the loan in several capacities:   As the Loan Servicing Agent for the Bank of the Bluegrass and Trust, hereinafter ("the Bank") and as both the Loan Servicing Agent for the Concealed and Unknown Persons who may be Parties in Interest who are the Concealed True Lender(s) and/or Holder(s) of the Note in question who may Claim an Interest in the Subject Matter of this Action and who are not registered or chartered to do business in the State of Kentucky as a lender or bank; but have acted illegally as such.

8.  At all time relevant hereto and in relation to the matters at hand, McKeever was the sole signatory of a May 18, 2007, Promissory Note, hereinafter, ("the Note"), and all other loan documents and post-agreements pertaining thereto.   Both McKeever and Haffey, were Mortgagors under the Note.

3

## Preliminary Statement

9.    The Homeowners seek a remedy under a multitude of State and Federal claims, namely fraud, breach of contract, breach of fiduciary duty, the Kentucky and Federal Consumer Protection Acts, Kentucky and Federal Banking Acts, TILA, HOEPA, RESPA, FDCPA, and FCRA, and the Kentucky Organized Crime and Federal RICO Acts. The claim seeks damages in excess of one million dollars ($1,000,000.00) and seeks to obtain enforcement of the defacto rescission of a of a Home Equity loan re-financing, injunctive relief, redress, restitution, disgorgement, monetary damages, statutory penalties, damages for mental anguish, punitive damages, pro se time reimbursement, attorney's fees and costs, and equitable relief against the Defendants for statutory violations, for engaging in fraudulent acts and practices, and for acting in bad faith in relation to the Note and Mortgage, executed on May 18, 2007, and for acting in bad faith in regards to the fraudulent attempt of the settlement of specific claims as to a fraudulently collected discount fee.    The Homeowners assert additional and separate claims for any and all causes of action stemming from subsequent violations of the Kentucky and Federal law pertaining to the Loan Rescission and a Qualified Written Request noticed on October 15, 2008.    The Homeowners assert separate and additional claims for the Defendants failure to respond to the Homeowners attempts to settle the Rescission and Qualified Written Request claims, the Homeowners' unilateral effort to mitigate damages prior to the filing of litigation and the Defendants' duty to keep the claims "out of Court" and "between the parties" as required by the stated purposes of TILA and RESPA and the accompanying case law pertinent thereto.

4

10 .   Separate claims for injunctive relief and damages are sought for breach of contract and fraud pertaining to a Confidential Settlement Agreement signed by McKeever and an unknown entity of the Bank.

11.   Under the undisputed facts of the case as applied to the law, there is no entity legally entitled to enforce or collect on the Note and Mortgage and injunctive relief is sought declaring the Note and Mortgage null and void and the Mortgage Ordered released and noted as released in the public record of the Fayette County Clerk.

**Statement of the Facts and History**

12.   A Promissory Note for one million dollars ($1,000,000.00) and Mortgage were executed by McKeever on May 18, 2007, as a re-financing of a February 21, 2007 line of credit.   Homeowner Haffey was not included on the Note and was at all times relative hereto, a Mortgagor only.

13.   Prior to the signing of the Note and Mortgage on May 18, 2007, the Homeowners had a longstanding relationship with the Bank of the Bluegrass, a locally owned Community Bank in Lexington, Kentucky, hereinafter, ("the Bank") dating back to 2001. Over the years, the relationship involved day to day banking, multiple real estate loans and mortgages and lines of credit secured by real estate.   The Homeowners and the Bank had a history of re-financing these loan and Mortgages.   All loans and home equity lines of credit were held in-house by the Bank and it was understood between the parties that the loans were not to be sold to the secondary market.

14.   Since the inception of the relationship and continuing thereafter, the Homeowners worked exclusively with the Bank for all their loan needs, and engaged in a personal and

5

intimate relationship with Allen and the Bank. The Bank held all the Homeowners loans in-house. The Homeowners had no experience with any other type of secured loan and had no contact or experience with the secondary loan market. Before working with the Bank, the Homeowners worked exclusively with another private lending institution, Vine Street Trust, where all transactions were again held in-house. At all time relative hereto the Defendants had a fiduciary duty to the Homeowners.

15.    In January of 2007, the Homeowners were approached by Bill Allen, the President of the Bank to refinance their, in-house, interest only open-ended high interest indexed loan, to an in-house, interest only, closed-end, fixed rate loan. The loan was current and not up for renewal.

16.   On February 21, 2007, the credit line had been extended with no change to the terms and conditions. At Allen and the Bank's request, and in exchange for the second re-financing, the Bank agreed to fix and lower the interest rate to below seven percent (7%) and consistent with their previous course of conduct over the years, agreed to remain open to re-negotiation. The terms of the loan were to remain the same as the February 21, 2007 loan, save for the fact that the interest rate would no longer be tied to an index and would be fixed.

17.    Allen expressed that the Bank had a need to convert the indexed equity line to fixed rate loan, due to the fact that the Bank examiners were due at the Bank in the third quarter of 2007. The benefit to the Homeowners would be a fixed rate and increased loan amount. The Bank was subsequently placed under a Cease and Desist Order by the FDIC and Kentucky Department of Financial Institutions on July 8, 2008 for its lending practices.

6

18.  Five months subsequent to being approached by Allen and upon agreement of the terms, the closing for the second 2007 re-financing was set for May 14, 2007 at 4:00pm. No documents pertaining to the loan were ever presented to McKeever prior to the closing.   Jennifer Frye, a loan officer for the Bank, worked with Allen to put the re-financing package together   At least three days before the loan was to be consummated, a request for the Hud-1 and other disclosure documents was made to Frye and Allen. McKeever was informed the documents were not "ready."   The documents were never made available to McKeever prior to the scheduled closing.

19.  On May 14, 2007, Frye appeared for the 4:00pm closing one hour late, at approximately 5:00pm, with a package of loan documents; which were presented to McKeever to sign.   All of the documents were being seen for the first time by McKeever.   Many of the documents were fraudulently back dated by Frye or Allen to an erroneous date of March 28, 2007.   These back dated documents included, but may not be limited to the following:   Uniform Residential Loan Application, Addendum to Good Faith Estimate Required Use of Settlement Providers, Servicing Disclosure Statement, Lock-in Confirmation, General Disclosure, Borrower's Certification and Authorization, Good Faith Estimate, and Truth in Lending Disclosure.   The back dated documents were signed by McKeever, with the correct date and time of May 14, 2007.

20.  The Loan Application was filled out by a Bank representative without the knowledge or consent of the Homeowners. The application was presented to McKeever for the first time for her signature at the May 14, 2007, Loan Closing and was to be utilized as part of the official documentation of the re-financing.   The application was

7

signed by McKeever on May 14, 2007, under duress and in spite of the fact that mistakes
were pointed out to Frye as to its content.

21.    On May 14, 2007, at approximately 5:30pm and subsequent to the execution of
the documents subsequently referred to,   the amortization schedule was presented.   It
was then McKeever discovered that she had been given, what she though at the time, was
the wrong loan.    The re-financing presented and the documents previously executed
pertained to a 30 year fully amortized conventional loan, bearing no relation to the agreed
to re-financing.

22.    On May 14, 2007, at approximately 5:30pm, Frye informed McKeever that no
mistake had been made; that it was in McKeever's best interest to sign the Note and
Mortgage as presented, and that Frye was doubled parked and in a hurry to get home.
McKeever refused to execute the Note and Mortgage, now realizing that she was a victim
of a "Bait and Switch" scheme and the victim of Predatory Lending Practices.

23.    Frye then left the closing, stating that McKeever's failure to sign the remainder
of the May 14, 2007, Loan documents, was "a big mistake."

24.    At the time Frye left the closing, the HUD-1 had already been signed by
McKeever.    A Notice to Cancel had also been signed by both McKeever and Haffey.
The Notice to Cancel signed on May 14, 2007, and the accompanying HUD-1 pertained
to a loan which never took place and pertains to a loan which was rejected and never
executed by the Homeowners.    As the Note and Mortgage were never executed for the
May 14, 2007 rejected loan, rescission by and through the Notice to Cancel was
unnecessary.   The documents are moot and a legal nullity.

8

25.   On May 14, 2007, at approximately 5:45pm, Allen, the President of the Bank and the Homeowners main personal contact, was reached by telephone for the purpose of notice and the seeking of advice.   The Homeowners had a history of transacting all business by and through the Allen directly.   By telephone, Allen responded that he had nothing to do with the actual paperwork produced for the loan, but did give McKeever this advice, "I know one thing, if you don't close this loan today, you'll be considered in default of your existing loan to us, and this will probably keep you from getting another loan somewhere else."

26.   Throughout May of 2007, the Homeowners had been specifically instructed by Allen and Frye, with Herron's approval to "hold off" on making final payment on the existing line of credit as the payment would be rolled into the re-financing.

27.   As of May 14, 2007, the Homeowners had never made a late payment or been delinquent on a single loan payment with the Bank, nor had they ever been delinquent on any Mortgage payment throughout their twelve year Mortgage history with any other lending institution.

28.   True to Allen's threat and irregardless of subsequent agreement otherwise, the February 21, 2007, loan was reported by the Bank to the credit bureaus as delinquent as of May 14, 2007, on both McKeever and Haffey's credit Reports.

29.   The attempted transaction known as the Rejected Loan, was base in fraud.   The fraud was perpetrated by all three individual parties to this action who had direct contact and/or approval authority for the transaction.

9

30.    On or about May 16, 2007, under duress, and believing that their future borrowing power was at stake, McKeever agreed to execute the re-financing with the Bank, with the original interest only, fixed below seven percent as originally agreed.

31.    However, the bank refused to honor the original terms of the re-financed loan without an additional five thousand dollar ($5000.00) discount fee.   McKeever believed that the discount fee was fraudulent and that she was the victim of extortion.   At all times relevant to the extortion, the Homeowners believed their future borrower power and credit was at stake and in the control of Frye, Herron, Allen and the Bank.

32.    The closing was set for May 18, 2007.   McKeever appeared alone to sign the documents the afternoon of May 18, 2007.   After an hour and a half wait, certain documents appeared, namely a Note, Mortgage and HUD-1 for McKeever's signature. No Bank representative ever appeared.

33.    Both the May 14, 2007, rejected Loan HUD-1 and the HUD-1 from the consummated May 18, 2007 transaction, contain a beginning interest collection date of May 18, 2007.

34.    The only document received by McKeever on May 18, 2007, was the HUD-1. No Notice of Right to Cancel or any other documents were received.   McKeever left the closing with the understanding that the transaction was not consummated until Haffey signed the Mortgage.

35.    On May 18, 2007, Haffey arrived alone and subsequent to McKeever, for the purpose of executing the Mortgage only.   The only document Haffey signed in relation to McKeever's May 18, 2007, loan was the Mortgage.   Haffey did not execute any other document or receive any documents, upon his departure, including a Notice of Right to

10

Cancel. The Homeowners did not receive a Notice of Right to Cancel at any time relevant to the May 18, 2007 transaction. The required Truth-In-Lending documents were never presented or executed by McKeever pertaining to the May 18, 2008 transaction. The Homeowners were never sent any documents in relation to the May 18, 2007 Note and Mortgage, subsequent to the closing.

36. The Note, Mortgage and HUD-1 for the consummated May 18, 2007 transaction, filed in the public record, incorrectly list the date of the transaction as May 14, 2007. On or about August 1, 2007, McKeever discovered the date mistake on the HUD-1 and the Bank was notified by and through their servicing agent, GMAC. The Note, Mortgage and HUD-1, signed on May 18, 2007, should have been revised to reflect the correct date. On August 16, 2007, a Response Letter from GMAC was sent to McKeever, wherein GMAC refused to make the correction.

37. The May 18, 2007, executed HUD-1, improperly contains the same Loan Number as the May 14, 2007, Rejected Loan transaction. The loan consummated on May 18, 2007 and the Rejected Loan of May14, 2007, bear no relationship to each other and should have been numbered differently accordingly.

38. The Bank began collecting interest on the May 18, 2007, re-financed loan, on May 18, 2007. Interest was charged and collected in spite of the fact that the transaction was consummated after 5:00pm on May 18, 2007. The funds for the transaction were illegally disbursed on the either the same day or some day prior to the signing of the Note and Mortgage.

39. On or about July 29, 2008, and believing that the Bank was the Lender and Holder of her Note, McKeever was fraudulently induced to sign a Confidential

11

Settlement Agreement and Mutual Release of Claims for the extortion perpetrated by the Bank in relation to the discount fee charged as to the May 18, 2007 loan   The settlement amount amount was two thousand five hundred dollars ($2500.00,) a little over one-third of the monthly interest the Bank was collecting on the Note.   The Settlement Agreement also states a fraudulent closing date of the loan as May 14, 2007.

40.   In September of 2008, McKeever discovered through a telephone conversation with the Bank's Servicing Agent, GMAC, that the Bank had likely never served as a "true" Lender or holder of the Note or as Mortgagee.    It was then discovered that the loan been fraudulently table funded and that The Bank of the Bluegrass acted only as an broker or "stand-in" for some other concealed "Real Party in Interest." The identity of the "Real Party in Interest" remains concealed.

41.   No Notice of Assignment or Transfer was ever received by the Homeowners and at the date of the filing of this Complaint, the public record in Fayette County, lists as the Mortgagee an entity called Mortgage Electronic Registration Systems, Inc., hereinafter, ("MERS".)   This entity is not a beneficiary under the terms of the Note or Mortgage and has no pecuniary interest in the Note.

42.    Before September 2008, the Homeowners believed that the Note and Mortgage were held by the Bank of the Bluegrass and that GMAC was merely acting as the Servicing Agent for the Bank of the Bluegrass.    In September 2008, the Homeowners learned, through the public record, that the Mortgage had been assigned on May 14, 2007, to the entity called MERS.   (A date which precedes the execution of the Note and Mortgage by four days.)   The Bank's funding and assignment of the Note and Mortgage

12

occurred without the Homeowners' knowledge or consent and <u>before</u> the execution of the Note and Mortgage.

43.    The Homeowners believed at all times relevant hereto, that their loan was being re-financed by and throught he same Community Bank they had been working with for the better part of a decade.   The Defendants failed to disclose and reveal the real parties in interest before, during or after the loan closing.   The identity of the True Lender, the identity of the party in possession of the original Promissory Note, the beneficial owner and/or the holder(s), if any is unknown.

44.    By failing to disclose the True Lender, and any and all transfers and assignments of the Note and Mortgage, the Defendants have deliberately and fraudulently hidden behind an opaque curtain and deprived the Homeowners of the knowledge of who they had contracted with and were indebted to pursuant to the Note and Mortgage.

45.    By failing to disclose the True Lender, the Homeowners were put in an untenable position, and have now discovered, that there was a concealed "True Lender" and that the Bank of the Bluegrass, the lender listed on the Note, Mortgage and HUD-1, was a pretender lender; and have discovered that the Bank was paid an undisclosed and fraudulent fee for pretending to be the lender.

46.    The Homeowners were left not knowing who to pay, not knowing who has authority to communicate with them, and not knowing to whom they should address objections and claims.

47.    By failing to disclose the True Lender, the Defendants deliberately and fraudulently induced the Homeowners to execute two transactions they would not

otherwise have executed; namely the Note and Mortgage and in McKeever's case a
Settlement Agreement for the extorted discount fee.

48. Through ommission and fraud, McKeever paid undisclosed closing fees, yield
spread premiums, undisclosed finance charges, payments, kickbacks, re-insurance and
insurance premiums and kickbacks to parties hiding behind the Defendants' opaque
curtain. She unknowingly paid undisclosed parties who were not in privity with the
Homeowners and deprived the Homeowners of information and material disclosures vital
to the decision of whether to execute the Note and Mortgage.

49. In September 2008, the Homeowners discovered that on May 14, 2007, a yet to be
executed Mortgage bearing their names had been separated and bifurcated from the May
18, 2007, Note and Assigned to an unrelated party, with no beneficail interest in the Note,
namely, MERS. Therefore the Mortage is unenforceable. The assigment was made
before the actual Morgtgage was executed by the Homeowners on May 18, 2007. The
Mortgage was fraudulently and illegally assigned to MERS before the execution of the a
Note and Mortgage; thereby making the Mortgage unenforceable.

50. The Concealed and Unknown "True Lender," other "Real Parties in Interest" and
all other Defendants, may be parties to unnoticed and illegal insurance contracts, credit
default swaps, cross guarantees, and buyback provisions with other unknown parties and
have likely moved the Note through the chain of securitization, replacing McKeever's
Note, with other Notes, and may have disregarded buyback and substitution
requirements.

14

51.   Upon information and belief and without the Homeowners knowledge or consent the Promissory Note has been illegally securitized by the Defendants and has been pooled and tranched into a Mortgage Backed Security, hereinafter ("MBS".)

52.   By the method of pooling and tranching, the Defendants have converted a negotiable instrument, (the Note) into a non-negotiable instrument; a publict traded MBS. As an MBS there can be no one holder or owner who could ever have standing to enforce the Note.

53.   By selling the Note and/or acting as a pass through entity, and upon receipt of payment from an unknown party, and the signing of a Pooling Servicing Agreement between concealed and unknown parties, a new obligation arose between the Seller and Buyer of the Note separate and apart from the Homeowners; therby the Homepwners obligation under the Note has been satisfied in full.

54.   The pretender lender/agent and securitization method utilized by the Bank, the Bank's representaives, Allen, Herron and Frye and the concealed partie and subsequent purchasers and/or Holders of the Note, calls for the proceeds of the Homeowners' Mortgage obligation, that which are those funds paid by the Homeowners throught the Servicing Agent, GMAC, to be used as collateral (cross collateralization) for another Note.   The Note as a Negotiable Instrument states that payments by the Homeowners will be applied to the amount the Homeowners owe under the Note.   Therefore, by cross collateralizing, the terms of the Note have been materially breached.

55. The Homeowners have no way of knowing whether the Note, even if initially assigned to a specific securitized pool remains in that pool, or has been supplemented with another note, and/or has been satisfied by by a third party guarantee contract, credit

15

default swap or insurance policy. A concealed mortgage aggregator may have paid at least 102.5% of the principal of the Note to a "lender" under a Pooling and Service Agreement or under an Assignment and Assumption Agreement, which in this case predates the closing. If a Cerificate of Non-recoverability has been issued the loan can not be enforced or collected upon.

56. Upon information and belief, the Note, has been satisfied by a third party guarantee contract, credit default swap or insurance policy, hence, has been satisfied in full, relieving the Homeowners from further obligation from the Note and Mortgage as of the date that payoff occurred.

57. Through over collateralization and reserve pools, and hierarchical pledges between divisions, hereinafter ("tranches") of a Special Purpose Vehicle corporation, the Defendants may have assigned the funds paid from unknown borrowers and unknown promissory notes in a tranche below the tranche which was assigned to the Homeowners' Note without their knowledge or consent. Additionally, the payments made by the Homeowners on the Note may have been fraudulently and illegally allocated to other loans in tranches above the tranche assigned to the Note.

58. Allen, Herron and Frye perpetrated the fraud as it related to the date of the loan and the loan was funded and transferred before the date of closing. The fraudulent funding and all other concealed actions of the Defendants as aforementioned negates the Settlement Agreement in total, thereby making the Agreement null and void. The fraudulent inducement to sign the Confidential Settlement Agreement and Mutual Release of Claims negate the Agreement.

59.   On October 15, 2008, upon discovery of the fraud in relation to the parties involved with the Note and the realization that McKeever had been fraudulently induced to execute a Release Agreement with the Bank and with proper notice to all parties involved, the Note and Mortgage were de facto and legally rescinded under the Truth in lending Act, hereinafter ("TILA").   A Qualified Written Request pursuant to the Real Estate Settlement and Procedure Act, hereinafter, ("RESPA") was sent simultaneously with the Rescission Notice to the Bank's Servicing Agent, GMAC.

60.   Under the law, the Settlement Agreement bears no relation and in no way serves as a bar to the actual rescission of a re-financed debt under the TILA.

61.   On the date the re-finance loan was rescinded, October 15, 2008, the loan was current and the monthly payments to the Bank by and through Servicing Agent, GMAC had never been delinquent.

62.   Under the TILA, the Bank and MERS had twenty (20) days, up and until November 4, 2008, to sign any and all necessary documents releasing the mortgage and rescinding the May 18, 2007 transaction.   Under RESPA, the Bank and GMAC had twenty (20) days, up and until November 4, 2007, to provide the requested information. The transaction was not rescinded by the Bank as required by TILA, nor has the Qualified Written Request pursuant to RESPA been answered by the Bank or GMAC. The Defendants have failed in their duty to abide by both TILA and RESPA.

63.   Numerous attempts to procure a Settlement have been made by the Homeowners prior to the filing of this action, with at least two separate written letters and the unilateral voluntary Production of Documents to Defendants' counsel.   The Homeowners attempts at communication and settlement have been ignored by and through the Bank's counsel,

Hon. Joseph Howard and GMAC's counsel, Dinsmore & Shohl.   The last "good faith"
attempt at settlement was served and received on November 13, 2008.   Although under
no obligation to do so, since the Mortgage had not been released between October 14,
2008 and November 7, 2008, an Offer of Tender was made for the unsecured debt.

64.   Although the May 18, 2007, transaction was rescinded as a matter of law on
October 15, 2008, the Defendants' Servicing Agent, GMAC has attempted to collect on
the Note and MERS has failed to release the Mortgage.   A written notice was sent to
McKeever on November 15, 2008, from GMAC, stating that the Mortgage payment was
due and owing as of that date.   On November 13, 2008, through the "good faith" written
settlement attempt, McKeever attempted to procure by written agreement recognition of
the fact that pursuant to RESPA, TILA, the Consumer Protection Act, and the Fair Credit
Reporting Act, the Defendants are prohibited from attempted collection on the Note
and/or Mortgage; or reporting such illegal collection to any of the Credit Bureaus.   The
request has been ignored, along with settlement attempts.   These actions warrant punitive
damages against the Bank.

65.   On or about December 13, 2008, the Servicing Agent, GMAC, served the
Homeowners with a Federal Declaratory Judgment action to declare whether the
rescission was valid.   GMAC is not a beneficiary, or Mortgagee, and has no interest in
the Note.   The action was filed on behalf of an entity other than the Bank.   The Bank is
not a party to the Declaratory Judgment and a jurisdictional Motion for Judgment on the
Pleadings in pending in federal Court   *See GMAC v. McKeever* 5:08-cv-459. (E.D. Ky.
2008.)

18

66.    Knowing that the Bank was not a party to the Declaratory Judgment action and knowing that the Declaratory Judgment failed to legally tie McKeever's loan to the Plaintiff GMAC, on or about May 20, 2009, Allen, with Herron's authority voluntarily provided GMAC with an affidavit and a copy of McKeever's Confidential Settlement Agreement.    The Settlement Agreement was not signed by Allen and the identity of its Signatory is unknown.    The affidavit was allegedly based on a subpoena from GMAC. The Homeowners were never served with a copy of the subpoena, in violation of Fed. R. Civ. P. 45 and the Homeowners are currently seeking sanctions against GMAC for the violation.

67.    According to GMAC's counsel and as confirmed in an electronic mail to McKeever, the subpoena was completely generic in nature in that it requested the records pertaining to the loan.    Allen filed no objection under Fed. R. Civ. P. 45(C)(2)(B) or(C)(3.)    As confirmed by GMAC's counsel, the presentation of the affidavit and the attachment of the Confidential Agreement were completely voluntary on Allen's part, and neither the affidavit or Agreement were requested by GMAC.

68.    For McKeever's part, the Agreement had never been shown or discussed with anyone, including Haffey.    Haffey was never a party to the Agreement.    Haffey was unaware of the Agreement's content.    The Agreement bears absolutely no relation to McKeever or Haffey's right to rescind the Mortgage or pursue any and all other claims pertaining to the Mortgage in question.

69.    The voluntary testimony by affidavit and the attachment of the confidential document was a material breach of the Settlement, thereby making the Settlement Agreement null and void.    As with the rescission of the re-financing transaction itself,

19

the Settlement Agreement has been canceled and the Homeowners have suffered and
entitled to damages for that material breach.

70. The Homeowners assert that the individual Defendants Allen, Herron and Frye,
unless specifically listed are at all times relevant hereto jointly and severally liable with
the Bank for the claims in this action wherein the term "Defendants" is utilized.

## Causes of Action

### COUNT I.
### Breach of Contract and Rescission

The Homeowners adopt, affirm and reiterate each and every allegation set forth in
Paragraphs 1 through 70 and for their cause of action state the following:

71. THE NOTE:  The Defendants materially breached the express and implied
contracts pursuant to the Loan Agreement and Mortgage, by their acts and omissions
including, but not limited to:    The consummation and disbursement of the Loan without
the issuance of a Notice of Right to Cancel and other TILA disclosures to the
Homeowners; by the concealment of the "Real Parties in Interest;" by the fraudulent
dating of the loan documents and mortgage; through their conspiracy and fraudulent acts
in relation to the identity of the True Lender and Mortgagee, securitizing the Note
without notice to the Homeowners; converting a Negotiable Instrument into a non-
negotiable Security, premature disbursement of funds on an unexecuted Note and for the
multitude of the violations of the aforementioned Statutory Acts contained and attested to
herein.  The Note is null and void and has been legally rescinded.

72. THE CONFIDENTIAL SETTLEMENT AGREEMENT:  The Defendants, Allen,
Herron and the Bank materially breached the express and implied contracts pursuant to

20

the Confidential Settlement Agreement, by their acts and omissions including, but not

limited to:  Their actions of fraudulently inducing McKeever to enter into an Agreement,

wherein the Bank was never the true lender and the concealment of material facts which,

if known would have prevented McKeeever from entering into the Agreement; and the

material breach of such whereby Allen and Herron voluntarily and with malice placed the

document in the public record through a Federal lawsuit for which they were not a party,

nor were they in privity with a party or acting as an agent on a party's  behalf, wherein

the Confidentiality clause of the Agreement was negated thereby negating the contract in

its entirety.   The Settlement Agreement is null and void and is legally rescinded.   The

Homeowners have suffered damages and request that the Court declare the Contract

rescinded.  Punitive damages are warranted.

**COUNT II**
**Violations of the Truth in Lending Act, 15 U.S.C. § 1601**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in

Paragraphs 1 through 72 and for their cause of action state the following:

73.    The Defendants have jointly and severally violated the strict liability and

remedial statute, namely, TILA, 15 U.S.C. § 1601 *et seq.,* and Regulation Z of the

Federal Reserve Board, 12 C.F.R. § 226.1 *et seq.,* by failing to clearly and accurately

provide the Homeowners with most of the required material disclosures under the Act,

including, but in no way limited to, the receipt of a Notice to Cancel/Rescind, the

conspicuous disclosure of the prepaid finance charges as defined by 15 U.S.C. §§

1602(u), 1635(a), 12 C.F.R. § 226.23(a)(3), 15 U.S.C. § 1605(a), and 12 C.F.R. § 226.4;

the payment of a mortgage broker fee that should have been included in the finance

charge;   as well as the deliberate concealment of the true identity of the Lender and

21

Mortgagee. Moreover, the received by the Homeowners were materially inaccurate. 12 C.F.R. § 226.23(g)(1).

74. The core purpose of the Act, which is to assure a meaningful disclosure of credit terms, including the identity of the real party in interest with which the Agreement is made, and the requirements of such, have been deliberately frustrated and violated by the Defendants. Said violation entitled the Homeowners to rescind the Mortgage under the Act and receive a refund of all finance charges paid to date.

75. In mortgage refinancing transactions, TILA provides borrowers a three-day period in which they can rescind their loans and the borrowers are to receive Notice of Right to Cancel in writing. 15 U.S.C. § 1635(a).(fn14). When the Lender does not comply with TILA's notice and disclosure requirements, the borrower has a three-year right of rescission period. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(3). The transaction was rescindable pursuant to the Act and the disclosures should have been made to each consumer who had the right to rescind. Those disclosures were not made to either McKeever or the Mortgagor, Haffey.

76. The Mortgage was timely and lawfully rescinded by The Homeowners and the rescission demand has been ignored by the Defendants, contrary to the requirements of the Act. The Rescission Statute was intended to be self-enforcing, failure to comply with the rescission is a de facto violation of the Act. Damages are based on a strict liability standard. The Act and Regulation Z make it clear the security interest and obligation to pay charges are automatically voided. Courts do not have equitable discretion to alter substantive provisions of TILA. The Court's modification authority extends only to the procedures specified by section 1625(b). The voiding of the security interest is not a

22

procedure under the statute and has occurred ab initio. The statute, at section 1635(b) states: "When an obligor exercises his right to cancel..., any security interest given by the obligor... becomes void upon such rescission". The failure of the Defendants to timely fulfill the rescission and finance charge reimbursement requirements under the Act, has created an additional and separate claim under the Act. The Homeowners have suffered injury as to the additional separate claim.

77.   In addition to canceling the security interest and mortgage, rescission canceled any liability of McKeever to pay finance and other charges, including accrued interest, points, broker fees, closing costs. The Defendants must refund all finance charges and fees paid.   As of October 15, 2008, McKeever was no longer obligated to pay finance charges and fees to any entity under the terms of the Note. The "lender" failed to respond within twenty (20) days to the notice of rescission, on or before November 4, 2008 and a clear title in relationship to the Defendants, vested in the Homeowners and they are no longer required to pay the loan.   The Homeowners have suffered damages as a result of the violations of the Act and seek damages, statutory penalties, punitive damages, and attorney's fees, for the multitude of TILA violations suffered at the hand of the Defendants, and seek an Order from this Court refunding all finance charges and fees previously paid, an Order recognizing the fact that the Defendants have no standing to collect or foreclose and shall Cease and Desist from attempting to collect on the Note or attempting to enforce the Security Interest, and an Order  releasing the Mortgage as a matter of law.

## COUNT III.
## Violations of the Home Ownership and Equity Protection Act 15 U.S.C. § 1639 and KRS 360

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 77 and for their cause of action state the following:

78.    The Homeowners' Loan and Mortgage was a high-rate mortgage as defined by HOEPA and KRS 360.    The Defendants failed to make additional disclosures regarding the loan, in violation of HOEPA, 15 U.S.C. § 1639 *et seq.* The claim is timely filed under 15 U.S.C. § 1635(f).    HOEPA, required the defendants to disclose additional information at least three business days prior to the closing of the loan as a high-rate loan. 15 U.S.C. § 1639.    The Act was violated as to the default interest rate, balloon payments, negative amortization, prepaid payments, and improvident lending.    15 U.S.C. § 1639(c)-(h); 12 C.F.R. 226.32(d). The failure to deliver the required HOEPA notice or inclusion of a prohibited term triggers an extended three-year right of rescission pursuant to 15 U.S.C. § 1639(j); 12 C.F.R. 226.23(a)(3). The violations give rise to "enhanced" monetary damages under 15 U.S.C. § 1640(a)(4), constituting a refund of all payments made by the borrower.    The Defendants  failed to materially comply with the disclosure requirements, and the Homeowners  seek damages jointly and severally against the Defendants and rescission pursuant to 15 U.S.C. § 1640 and for the violations Kentucky's Predatory Lender Act.

24

**Count IV.**

**Violations of the Real Estate Settlement Procedures Act 12 U.S.C. § 2601**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 78 and for their cause of action state the following:

79. On October 15, 2008, the Homeowners gave notice in writing and served Servicing Agent, GMAC, by Certified Mail, a "Qualified Written Request" pursuant to 12 U.S.C. § 2601 *et seq.,* namely RESPA. Said Request was ignored by the Defendants and the Defendants have failed to reply as required by RESPA. The Lender's statutory duty to provide the requested information was triggered. The duty was breached and the Act violated. The failure to respond to the request constitutes a separate claim under the Act in addition to the actual violations of the Act surrounding the actual loan. The Defendants are jointly and severally liable for such. The Homeowners have suffered damages as a result of the violations of RESPA and seek damages, statutory penalties, punitive damages, and attorney's fees, for the multitude of RESPA violations suffered at the hand of the Defendants, and seek an Order from this Court requiring the information contained in the Request be submitted to this Court and made part of the record.

80. Upon information and belief, money was disbursed, other than in an escrow account, services were performed and materials delivered on or before May 18, 2007, before the statutory rescission period had expired, and before the Loan and Mortgage were legally executed and in violation of RESPA and other related statutes. Upon information and belief, disclosed and undisclosed parties were funneled money and paid undisclosed fees and kickbacks in relationship to the transaction. The HUD-1, relative to the transaction is materially inaccurate and based in fraud.

25

## COUNT V.
### Defamation of Title
### Violations of the Fair Debt Collection Practices Act 15 U.S.C § 1692
### and the Fair Credit Reporting Act 15 U.S.C § 1681

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 80 and for their cause of action state the following:

81.   On October 15, 2008, the fraudulently concealed and unknown True Lender, and/or holder of the original Promissory Note, executed on May 18, 2007, became an unsecured creditor as a matter of law; when the transaction was rescinded.    On November 15, 2008, McKeever received a written Notice through electronic mail from Servicing Agent, GMAC, stating that a Mortgage payment was due and owing as of that date.   The Defendants' counsel has demanded that the Homeowners communicate only through the agents at their law firm.   The Homeowners have respected that request. However,  GMAC's counsel has refused to respond to the November 13, 2008 request.

82.   The transaction consummated on May 18, 2007, was rescinded on October 15, 2008.   The rescission notice was sent along with the RESPA Qualified Written Request, which requested a full accounting of the transaction and a refund of all fees paid.   The Defendants may be fraudulently and illegally attempting to collect on the Note at this time.   Defendants are jointly and severally liable for damages and sanctions for their violation of the Federal Fair Debt Collection Practices Act, hereinafter ("FDCPA"), the Federal Fair Credit Reporting Act, hereinafter ("FCRA") and the defamation of title.

### COUNT VI.
### Violations of Kentucky Revised Statute 365
### Unfair  Trade Practices

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 82 and for their cause of action state the following:

26

83. The Defendants' actions constituted unfair and deceptive practices in violation of KRS 365. Violations of TILA, HOEPA, RESPA, FDCPA and FCRA constitute per se violations of the Act. The foundation of the Unfair Fair Trade Practice is fraud prevention. In addition to the above-mentioned Federal Acts, The illegal and unnoticed assignment of the Mortgage to the unlicensed, unregistered and unrelated entity, MERS shows a per se violation of the Act. The Homeowners justifiably relied on the Bank's fraudulent oral statements as to the transaction and on the authenticity and truthfulness as to the identity of the parties and the accurate and truthfulness of the information and dates on the transaction documents and the disclosure of the "true" identity of the parties and the "true" actual terms of the transaction. The Homeowners have been injured by the Defendants violation of the Act and are jointly and severally liable to the Homeowners for the violations of such.

**Count VII.**
**Breach of Fiduciary Duty**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 83 and for their cause of action state the following:

84. By May 2006, a longstanding history existed and relationship had been established between The Allen, Herron, the Bank and The Homeowners. There had been multiple previous loan transactions, between the Bank and the Homeowners over the years; on which a relationship of trust and confidence had been built and which created a Fiduciary Relationship. The Fiduciary Relationship imposed a duty upon the bank to act in good faith and to fairly represent the Homeowners' interests as borrowers. The Bank owed a Fiduciary Duty to The Homeowners to disclose material facts affecting the loan transaction. The Bank was in a relationship with the Homeowners that was based on a

27

high level of trust and confidence. The facts as attested herein and the documentary evidence show that the Bank and the Defendants breached their affirmative duty to the Homeowners which existed by and through the Fiduciary Relationship. Additionally, the Bank acted as a "pretender lender" and was hence, an agent of GMAC and/or some other concealed entity. The Defendants are jointly and severally liable for the breach of the Fiduciary Duty and all damages stemming from such.

85. The Defendants owed a fiduciary duty to the Homeowners in their individual roles as "Lenders" in the lending process, separate and apart from their fiduciary duty imputed from the actions as an agent for GMAC and/or a concealed lender. Allen, Herron, Frye and the Bank and have jointly and severally breached that duty to the Homeowners and are jointly and severally liable accordingly.

## COUNT VIII.
## Fraud by Misrepresentation

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 85 and for their cause of action state the following:

86. The deceptive acts of the Defendants as to the inducement of the Homeowners to enter the transaction and as to a multitude of misrepresentations in the execution of such; including, but not limited to the true identity of the Lender and Mortgagee, falsified documents, and backdated documents constitute fraudulent misrepresentation. The record shows, by clear and convincing evidence, that there existed in the inducement and execution, material representations which were false, were known to be false or made recklessly, which were made with inducement to be acted upon; that the Homeowners acted in reliance thereon and have suffered injury due to such. The facts as attested herein, and the documentary evidence shows that the deceptive acts of the Defendants

28

constitute fraudulent misrepresentation and the Defendants are jointly and severally liable for their acts of fraud by their misrepresentation and all damages stemming from such, including punitive damages and attorney's fees.

87.   The deceptive acts of the Defendants as to the inducement of McKeever to enter the Confidential Settlement Agreement and as to a multitude of misrepresentations in the execution of such; including, but not limited to the true identity of the Lender and Mortgagee, the Securitization of the Note, falsified documents, and backdated documents constitute fraudulent misrepresentation. The record shows, by clear and convincing evidence, that there existed in the inducement and execution, material representations which were false, were known to be false or made recklessly, which were made with inducement to be acted upon; that McKeever acted in reliance thereon and the Homeowners have suffered injury due to such.   The facts as attested herein, and the documentary evidence shows that the deceptive acts of the Defendants constitute fraudulent misrepresentation as to the Confidential Settlement Agreement and the Defendants Allen, Heron and the Bank are jointly and severally liable for their acts of fraud by their misrepresentation; injunctive relief as to the voiding of the Agreement is warranted as well as all damages stemming from such, including punitive damages and attorney's fees.

<u>COUNT IX.</u>
<u>Fraud by Omission</u>

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 87 and for their cause of action state the following:

88.   The facts and documentary evidence show that the Bank had a duty to disclose

29

material facts, failed to disclose those facts, that the failure induced the Homeowners to act, and the Homeowners suffered actual damages due to the fraudulent omissions.

89. Prior to and leading up to the May 18, 2007 closing, the Defendants had a duty to disclose the true nature of their relationship and the fact that the Bank was merely a "Pretender Lender" and thus, a agent for the Concealed and Unknown Lender. The Defendants fraudulently omitted to reveal to the Homeowners the fact that the Mortgage had been bifurcated and separated from the note and had been assigned to the unrelated foreign entity, MERS.

90. The failure to disclose the material facts, induced the Homeowners to enter into a loan with unknown and unrevealed entities and the Homeowners have suffered actual damages as a direct result of Fraud by Omission. The Defendants are jointly and severally liable for their acts of Fraud by Omission and all damages stemming from such.

91. As to the Confidential Settlement Agreement, the facts and documentary evidence show that the Bank had a duty to disclose material facts, failed to disclose those facts, that the failure induced McKeever to act, and the Homeowners suffered actual damages due to the fraudulent omissions.

## Count X.
### Violations of Kentucky's Consumer Protection Act KRS 367

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 91 and for their cause of action state the following:

92. KRS 367.170, states that "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful [and] (2) For the purposes of this section, unfair shall be construed to mean unconscionable."

30

93.   The Defendants committed "false, misleading, or deceptive acts" in their loan transaction with the Homeowners.   The Violations of the Consumer Protection Act demonstrate intentional or grossly negligent conduct that amount to substantial wrongs.

94.   The Defendants, Allen, Herron and the Bank committed "false, misleading, or deceptive acts" in their inducement for McKeever to execute a Confidential Settlement Agreement.   The Violations of the Consumer Protection Act demonstrate intentional or grossly negligent conduct that amount to substantial wrongs.   Allen, Heron and the Bank are jointly and severally liable for their violation of the Act and all damages stemming from such.

### COUNT XI.
### Conspiracy and Violations of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961 and KRS 506.040

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 94 and for their cause of action state the following:

95.   At all time relevant hereto; agreements have been made by and between the Defendants to deceive the Homeowners; and to break Kentucky and Federal law. The Defendants have and continue to collude together to achieve unlawful aims by unlawful means.   The Defendants as co-conspirators took overt steps to accomplish their illegal acts and have clearly demonstrated their intention to break the law; thereby "breathing together" in their fraudulent and illegal acts.   The Defendants have engaged in a "Racketeering Activity" as defined by 18 U.S.C. § 1961, ("RICO").   The Homeowners have suffered injury as a result and are entitled to any and all relief jointly and severally from the Defendants for their particpation in the conspiracy and the violations under RICO. ").   The Homeowners have suffered injury as a result and are entitled to any and

31

all relief jointly and severally from the Defendants for their particpation in the Criminal conspiracy and the violations under RICO and the comparable Kentucky Act, KRS 506.040.

## COUNT XII.
## Violations of the Kentucky Financial Services Code KRS 286

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 95 and for their cause of action state the following:

96.     The Homeowners' loan was obtained and based in deception and fraud.    The obligation under the Note and Mortgage was unwittingly made with a concealed and unknown "Lender."     The "True Lender" is not registered, chartered or licensed to operate as a "Bank" and "Lender" as defined by KRS 286 and is operating illegally as a Financial Institution regularly engaged in business in Kentucky.    The "True Lender" operated and continues to operate fraudulently and illegally in violation of the Code. The Bank conspired with the True Lender to operate a Financial Institution in violation of the Actt..    The Homeowners have suffered injury and damages as a result of those violations and the Defendants are jointly and severally liable to the Homeowners for such.

97.    The Defendants had a fiduciary duty to the Homeowners in originating the loan. That Fiduciary Duty was breached by falsifying loan documents, knowingly placing borrower in a Mortgage with a much higher interest rate than she would otherwise qualify and which could help reasonable facilitate a default based on income; engaging in other acts of fraud for the procurement of the loan including but not limited to false information as to the Loan Application, appraisal, the acceptance of yield spread

32

premiums and other kickbacks, which violated certain Kentucky Revised Statutes and therefore constitute negligence per se, pursuant to KRS 286.8-220 and KRS 446.070. These claims, as well as the breach of contract claims entitle the Homeowners to file an additional claim for $250,000.00 on the Lender's and $50,000.00 Broker's Bond with the Office of Financial Institutions pursuant to KRS 268.8-060.

**COUNT XIII.**
**Kentucky Usury Statute, KRS 360.020**

The Homeowners adopt, affirm and reiterate each and every allegation set forth in Paragraphs 1 through 97 and for their cause of action state the following:

98. An examination of the HUD-1 and other TILA documents reveal violations of KRS 360.020. Said violation provides for forfeiture of interest, damages and allows recovery of twice the interest actually paid.

WHEREFORE, the Plaintiffs respectfully request and pray for the following:

1. That the Settlement Agreement of July 29, 2008, be declared rescinded, void and of no further effect.

2. That the Bank or the Party in Interest produce the original of the Note, which is the subject matter of this action, and that said original Note be kept in the custody of this Court;

3. That the Note and Mortgage be declared null and void by this Court, and that the Note be destroyed by this Court in the presence of the Homeowners;

4. That title to said land be quieted as to the Defendants in this action, the Mortgage canceled by Court Order, and the Fayette County Recording Clerk be Ordered to note in the public record that the Mortgage is released;

33

5. That the Homeowners be awarded all damages and equitable relief under the myriad of State and Federal Statutes which were and continue to be violated and be awarded damages and equitable relief for their Common Law Claims, said relief including, but not limited to: Obtaining rescission, injunctive relief, redress, restitution, disgorgement, monetary damages, statutory penalties and sanctions, damages for mental anguish, punitive damages, lost wages, pro se representation time reimbursement, attorney's fees and costs, and any and all other relief they are entitled to against the Defendants;

6. That the Defendants and any and all parties claiming an interest in the Note be forever barred and enjoined from asserting any claim to the subject property;

7. That Plaintiffs be declared the owner in fee simple and entitled to possession of the subject property free and clear of all encumbrances of the Defendants;

8. That all interest and fees paid on the Note to date be refunded pursuant to TILA;

9. That a punitive damage and pro se "Attorney's fees" instruction be given to the jury and awarded;

10. A trial by jury and;

11. Any and all relief the Plaintiffs are entitled and which this Court finds just and equitable.

Respectfully Submitted,

HEATHER McKEEVER
3250 DELONG ROAD
LEXINGTON, KY 40515

SHANE HAFFEY
3250 DELONG ROAD
LEXINGTON, KY 40515

34

**B**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC**

**GMAC MORTGAGE, LLC,**                                                    **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                        **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion of the Bank of the Bluegrass
and several of its employees to dismiss with prejudice the complaint in an action
styled *Haffey, et al. v. Allen, et.al.* ( Lexington Civil Action 09-255, R. 7), which is
part of this consolidated action.  For the reasons below, the court will deny the
motion.

**I.    Background**

This case is one of four[1] pending consolidated actions involving property
located at 3250 Delong Road in Lexington, Kentucky.  The plaintiffs, Shane Haffey
and Heather McKeever, a married couple, brought suit in Fayette County Circuit
Court on July 6, 2009, and the defendants removed the case to federal court on
July 27, 2009.  The plaintiffs allege numerous violations of federal and state law in
connection with a loan transaction they entered into with Bank of the Bluegrass in

_____

[1]*See* Lexington Civil Actions No. 08-459, 08-510, and 09-362.  Another
case, 08-456, was dismissed on March 16, 2010.

1

May 2007.  Specifically, the plaintiffs allege that they re-financed an existing line of

credit in May 2007, and that during the course of that transaction and the

subsequent assignment of their promissory note and mortgage, the defendants

committed fraud, breach of contract and breach of fiduciary duty, and conspiracy;

and that they violated Kentucky and federal consumer protection laws and banking

laws, the Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection

Act ("HOEPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Fair

Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act (FCRA), and

the Racketeer Influenced Corrupt Organizations Act ("RICO").

The defendants moved to dismiss the action in August of 2009.  The court

denied that motion without prejudice as part of the consolidation process, but

reinstated the motion in February 2010.  In response to the motion to dismiss, the

plaintiffs moved to voluntarily dismiss this action without prejudice.  R. 15.

**II.    Analysis**

The defendants' opposition to voluntary dismissal is not premised on the

applicable federal rule.  The issue is not whether dismissal is appropriate pursuant

to Fed. R. Civ. P. 41(a)(2), which allows for dismissal by court order at the

plaintiff's request "on terms that the court considers proper."  Fed. R. Civ. P.

41(a)(2).  Rather, because the defendants have not filed an answer or a motion for

summary judgment, at issue is whether the plaintiffs have moved for a voluntary

dismissal without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

Although the plaintiffs' filing contains no reference to any provision of Rule 41 or any citations to case law, it is styled in part as a voluntary dismissal without prejudice. Lexington Civil Action 09-255, R. 15 at 1. Pursuant to Rule 41(a)(1)(A)(i), a plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment. "Rule 41(a)(1) is clear and unambiguous on its face and admits of no exceptions that call for the exercise of judicial discretion by any court." *D.C. Electron., Inc. v. Nartron Corp.*, 511 2d. 294, 298 (6th Cir. 1975); *see also Aamot v. Kassel*, 1 F.3d 441, 443 (explaining that before a defendant files an answer or a motion for summary judgment, the court has no discretion to deny a dismissal pursuant to Fed. R. Civ. P. 41(a)(1), and that "once plaintiff gives his notice, the lawsuit is no more"). Thus, the defendants' arguments regarding legal prejudice are inapposite. Moreover, any legal prejudice could have been prevented by filing an answer or a motion for summary judgment, which would have precluded the plaintiffs from seeking a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See D.C. Electron.,* 511 2d. at 298; *Aamot,* 1F.3d at 444.

**III.    Conclusion**

Accordingly,

**IT IS ORDERED** that the motion to dismiss with prejudice by Bank of the Bluegrass, R. 7, is **DENIED.**

**IT IS FURTHER ORDERED** that all of the plaintiffs' claims are **DISMISSED**

**WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that this matter is **STRICKEN** from the active

docket.

**IT IS FURTHER ORDERED** that the Clerk is directed to file a copy of this

order in Lexington Civil Action 09-255.

Signed on  May 22, 2010

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY