# The Foreclosure Action Pleadings



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON
CASE NO. _____

**ELECTRONICALLY FILED**

DEUTSCHE BANK TRUST                                                    PLAINTIFF
COMPANY AMERICAS, AS
TRUSTEE FOR THE 2007
QS-10 TRUST
GMAC Mortgage, LLC
3451 Hammond Avenue
Waterloo, Iowa  50702

v.                            **COMPLAINT
                        FOR FORECLOSURE**

HEATHER McKEEVER HAFFEY a/k/a                              DEFENDANTS
HEATHER BOONE McKEEVER

Serve: Heather McKeever Haffey
        3250 Delong Road
        Lexington, Kentucky  40515,

and

SHANE M. HAFFEY

Serve: Shane M. Haffey
        3250 Delong Road
        Lexington, Kentucky  40515,

and

STATE FARM BANK, F.S.B.

Serve: State Farm Bank, F.S.B.
        c/o Registered Agent
        One State Farm Plaza
        Bloomington, IL 61710-0001,

and

Case: 5:09-cv-00362-JBC    Doc #: 1-1    Filed: 11/12/09    Page: 2 of 6 - Page ID#: 2

GENTRY MECHANICAL SYSTEMS,
INC.

Serve: Gentry Mechanical Systems, Inc.
        c/o Curtis J. Gentry
        900 Enterprise Drive
        Suite 150
        Lexington, Kentucky  40510.


** *** *** **

Comes the Plaintiff, Deutsche Bank Trust Company Americas, as trustee for the 2007 QS-10

Trust ("Plaintiff"), by counsel, and for its Complaint against Defendants Heather McKeever Haffey

a/k/a Heather Boone McKeever and Shane M. Haffey (the "Haffeys"),  hereby states as follows:

**THE PARTIES**

1.      The Plaintiff, Deutsche Bank Trust Company Americas is a New York corporation

with its principal place of business in New York, New York, and is therefore a citizen of New York.

2.      On information and belief, the Haffeys are individuals residing in Lexington,

Kentucky and are therefore citizens of Kentucky.

3.      On information and belief, State Farm Bank, F.S.B. is categorized under Commercial

Banks (Unclassified) with its principal place of business in Bloomington, Illinois, and is therefore a

citizen of Illinois.

4.      On information and belief, Gentry Mechanical Systems, Inc. is a Kentucky

corporation with its principal place of business in Lexington, Kentucky, and is therefore a citizen of

Kentucky.

2

## JURISDICTION AND VENUE

5.    Federal jurisdiction is conferred in this Court pursuant to 28 U.S.C. § 1332, in that the Plaintiff and the Defendants are citizens of different states, and the amount of controversy exceeds $75,000.00, exclusive of interest and costs.

6.    Personal jurisdiction exists over the Haffeys, as they are residents of the Commonwealth of Kentucky.

7.    Venue is appropriate pursuant to 28 U.S.C. § 1391(a) because the Haffeys reside in this district and pursuant to 28 U.S.C. § 1391(b) because the property that is the subject of the action is situated in this district.

## COUNT ONE
### (Promissory Note)

8.    Plaintiff incorporates the preceding allegations as if fully rewritten herein.

9.    Plaintiff is the holder of a Promissory Note (the "Note") executed by the Haffeys on May 14, 2007, in the amount of $1,000,000.00 (a copy of the Note is attached hereto as Exhibit A).

10.    The Haffeys have failed to pay the monthly installments of principal and interest due under the Note and are in default under the terms of the Note.  The default has not been cured.

11.    As a result of the Haffeys' breach of the Note, Plaintiff has accelerated the remaining principal balance due under the Note, plus all accrued interest and other sums due under the Note, and the Haffeys owe Plaintiff the sum of $1,082,278.49, plus interest that continues to accrue at the rate of 6.875 % per annum, together with late charges and the costs incurred in collection of the amounts due under the Note and attorneys' fees.

## COUNT TWO
### (Mortgage)

12.    Plaintiff incorporates the preceding allegations as if fully rewritten herein.

13.      In order to secure payment of the Note, on May 14, 2007, the Haffeys properly executed that certain Mortgage (the "Mortgage," attached hereto as Exhibit B), thereby granting and conveying a mortgage lien against the real property located at 3250 Delong Road, Lexington, Kentucky 40515 ("the Property"), and more particularly described in the Mortgage as follows:

> Being all of Tract 2 as shown by that final record plat of a portion of The Sandlin Farm, of record in Plat Cabinet H, Slide 595, in the Fayette County Clerk's Office, the improvements thereon being known and designated as 3250 Delong Road (formerly 3250 Walnut Hill Road).

> Being the same property conveyed to Shane M. Haffey and Heather McKeever Haffey, husband and wife, per General Warranty Deed filed of record October 28, 2003 in Deed Book 2408, Page 505, in the records of the Clerk of Fayette, Kentucky. TIN #26088250.

14.      The Mortgage, originally to Bank of the Bluegrass, was filed for record in the office of the Fayette County Clerk of Fayette County, Kentucky on May 25, 2007.  The Mortgage was subsequently assigned to Mortgage Electronic Registration Systems, Inc.  The Mortgage was then assigned from Mortgage Electronic Registration Systems, Inc. to Plaintiff on September 25, 2009, and filed for record in the office of the Recorder of Fayette County, Kentucky on October 8, 2009 (a true and accurate copy of this assignment attached hereto as Exhibit C).  The Mortgage is a valid and subsisting first lien upon the Property.

15.      The Mortgage provides that, upon an Event of Default (as defined in the Mortgage), Plaintiff is entitled to foreclose the Mortgage by judicial proceeding.

16.     The Haffeys' default under the Note constitutes an Event of Default under the Mortgage and Plaintiff is therefore entitled to have the Mortgage foreclosed, the provisions thereof enforced, the Premises sold and the proceeds therefrom applied in payment of Plaintiff's claims.

17.     A title examination reveals that the other entities named as defendants in this action may have or claim an interest in the Property.  A Preliminary Judicial Report is attached hereto as Exhibit D.

18.     According to the Preliminary Judicial Report, the Defendant, State Farm Bank, FSB may claim an interest on the Property by virtue of a mortgage filed on July 18, 2008, and said Defendant should come forward and assert a claim or be forever barred.  (*See* Exhibit D).

19.     According to the Preliminary Judicial Report, the Defendant, Gentry Mechanical Systems, Inc. may claim an interest on the Property by virtue of a Mechanics and Materialman's Lien filed on July 31, 2007 and a Lis Pendens Notice filed on July 31, 2008, and said Defendant should come forward and assert a claim or be forever barred.  (*See* Exhibit D).

WHEREFORE, Plaintiff prays for judgment against the Haffeys upon the Note as follows:

A.      The amount of $1,082,278.49, plus interest that continues to accrue;

B.      That the Mortgage be declared to be a valid and subsisting first and best lien upon the Premises described herein, subject only to any lien for unpaid *ad valorem* taxes due for the year 2009 that may be held by Fayette County;

C.      That the Mortgage be foreclosed, and cancelled;

D.      That the Court enter appropriate orders, including the appointment of a Master Commissioner, Special Master, U.S. Marshal, or other person appointed by the Court, enabling Plaintiff to foreclose on and take possession of said Premises free and clear of all liens, interests, and dower, and in accordance with the law and orders of this Court and that the proceeds of said sale be

first applied to satisfy the costs and expenses of the sale and next to the satisfaction of all amounts

due to Plaintiff under the Note;

E.    That all Defendants be required to set forth any claim, lien or interest which he, she or

it may have or claim to have in or upon the Property or be forever barred therefrom;

F.    For all costs and expenses, including attorneys' fees, incurred by Plaintiff in pursuing

this action; and

G.    For such other and further relief to which Plaintiff may be entitled in equity or at law.

Respectfully submitted,

/s/ MacKenzie M. Walter_____
MacKenzie M. Walter
DINSMORE & SHOHL LLP
250 West Main Street, Suite 1400
Lexington, Kentucky  40507
Phone: (859) 425-1000
Fax.:    (859) 425-1099
Email: mackenzie.walter@dinslaw.com

**Attorney for Plaintiff**
**Deutsche Bank Trust Company**

OF COUNSEL:

David P. Fornshell (OH# 0071582)
Robert M. Zimmerman (OH# 0079584)
DINSMORE & SHOHL LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax.:    (513) 977-8141
Email: david.fornshell@dinslaw.com
        robert.zimmerman@dinslaw.com

104230_1

**B**

Eastern District of Kentucky
**FILED**

FEB 09 2010

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON
CASE NO. 5:09-cv-00362-JBC

DEUTSCHE BANK TRUST COMPANY                    PLAINTIFF
AMERICAS, AS TRUSTEE FOR THE
2007-QS10 TRUST

v.      **VERIFID ANSWER, COUNTERCLAIM,  THIRD PARTY**
        **COMPLAINT AND DEMAND FOR JURY TRIAL**


HEATHER  McKEEVER HAFFEY, et al.              DEFENDANT/
                                              COUNTER CLAIMANT/
v.                                            THIRD PARTY
                                              PLAINTIFF

DEUTSCHE BANK TRUST COMPANY                   COUNTER
AMERICAS, AS TRUSTEE FOR THE                  RESPONDENT
2007-QS10 TRUST;

GMAC MORTGAGE LLC,                            THIRD PARTY
RESIDENTIAL ACCREDIT LOANS, INC., AND          DEFENDANTS
RESIDENTIAL FUNDING COMPANY, LLC
*collectively as GMAC-RFC ;*

THE BANK OF THE BLUEGRASS
AND TRUST COMPANY;

BILL ALLEN
*In his individual capacity;*

MARK HERRON
*In his individual capacity;*

JENNIFER FRYE
*In her individual capacity, and;*

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AND,
MERSCORP,
*collectively as MERS*

11

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Comes the Defendant Heather Mary Boone McKeever, ("McKeever"), a regular practicing attorney of this Court, *pro se* for her Answer, Counterclaim, Third Party Complaint and demand for a jury trial. The purpose of this Complaint in equity by the Deutsche Bank is to attempt to divest McKeever and her spouse of possession and title to their working "family farm." The loan to the original Creditor was rescinded with notice pursuant to TILA on October 15, 2008. Four (4) separate lawsuits relating to the October 15, 2008, rescission and Qualified Written Request are currently pending before this Court as the Consolidated Cases *Mckeever v. MERS* 08-cv-456-JBC. A Motion to consolidate this case into the Consolidated Cases has been filed previously and is pending before the Court. The Defendant McKeever states and attests to the following:

### ANSWER

1.    Defendant McKeever is without knowledge as to the averments contained in paragraph one (1) and therefore denies same.

2.    The averments contained in paragraph two (2) are admitted in as much that McKeever is a "citizen" of the United States and is currently a "resident" of Kentucky.

3.    Defendant McKeever is without knowledge as to the averments contained in paragraph three (3) and therefore denies same.

4.    Defendant McKeever is without knowledge as to the averments contained in paragraph four (4) and therefore denies same.

5.  The averments contained in paragraph five (5) are denied as McKeever is without knowledge as to the "citizenship" of the Plaintiff and denies that the controversy is in excess of $75,000.00 as the Complaint in Foreclosure is a Complaint in equity.

6.  The averment as it relates to Defendant McKeever only is admitted as to the fact that McKeever is currently a resident of Kentucky.   Jurisdiction is a legal conclusion and requires no response.

7.    The averments contained in paragraph seven (7) are admitted for Defendant McKeever.

8.  The averments in paragraph eight (8) do not require a response.

9.    The averments contained in paragraph nine (9) are vehemently denied and McKeever further states are based in fraud and violate Rule 11; as more specifically addressed in the Counterclaim and Third Party Complaint attached hereto and incorporated herewith.

10.  The averments contained in paragraph ten (10) are vehemently denied and McKeever further states are based in fraud and violate Rule 11; as more specifically addressed in the Counterclaim and Third Party Complaint attached hereto and incorporated herewith.

11.  The averments contained in paragraph eleven (11) are vehemently denied and McKeever further states are based in fraud and violate Rule 11; as more specifically addressed in the Counterclaim and Third Party Complaint attached hereto and incorporated herewith.

12.  The averments in paragraph twelve (12) do not require a response.

3

13.   The averments in paragraph thirteen (13) are denied in as much as the date specified is May 14, 2007.   Further McKeever states that a Mortgage to the entity Bank of the Bluegrasss and Trust Co. was signed by McKeever as a re-financing transaction with the Bank of the Bluegrass and Trust Co on May 18, 2007.

14.   The averment in the first sentence of paragraph fourteen (14) is a statement as to the public record and does not require a response.   The averment of the second sentence is vehemently denied and McKeever states is based in fraud and violates Rule 11 as the Mortgage in question was assigned to Mortgage Electronic Systems Inc. at closing. Defendant McKeever is without knowledge as to the averment of the third sentence and therefore denies same.   The averment contained in the fourth sentence is vehemently denied, based in fraud and violates Rule 11 as set out in the Counterclaim and Third Party Complaint attached to this Answer and incorporated herewith.

15. The averment contained in paragraph is denied, but does not actually require a response as it relates to the legal interpretation of a contract.

16.   The averments contained in paragraph sixteen (16) are vehemently denied and McKeever further states are based in fraud and violate Rule 11; as more specifically addressed in the Counterclaim and Third Party Complaint attached hereto and incorporated herewith.

17.   Defendant McKeever is without knowledge as to the averments contained in paragraph seventeen (17) and therefore denies same.

18.   Defendant McKeever is without knowledge as to the averments contained in paragraph eighteen (18) and therefore denies same.

4

19.   Defendant McKeever is without knowledge as to the averments contained in paragraph nineteen (19) and therefore denies same.

### FIRST AFFIRMATIVE DEFENSE

The Plaintiff has failed to state a claim for which relief can be granted and this Court lacks jurisdiction.

### SECOND AFFIRMATIVE DEFENSE

The claim is barred as the Plaintiff lacks standing.   No enforceable note is attached to the Complaint; the mortgage on the date of filing was made in favor of MERS, not the Plaintiff. Plaintiff does not own or hold the original  note; and Plaintiff does not and cannot act as the agent for the certificate holders for purposes of foreclosure.

There is no case or controversy between Plaintiff and Defendants. The Plaintiff is not a holder or an owner of the original note as required by Kentucky law. The Plaintiff will never be a real party in interest nor is it entitled to the benefits or proceeds of the Note.   Plaintiff was not a Mortgagee on the Note upon the filing of this action, nor is any purported assignment from the entity MERS valid or enforceable.    For the foregoing reasons, without limitation, the Complaint fails to state a cause of action upon which relief can be granted. For the filing of a false pleading as to standing, the Plaintiffs and its law firm, Dinsmore and attorneys Fornshell and Zimmerman should be sanctioned.

### THIRD AFFIRMATIVE DEFENSE

McKeever denies specifically denies that Deutsche has complied with all conditions precedent to foreclosure, including, without limitation, furnishing a 30 day notice of default and right to cure as required.    Further, the claim is barred by the  Emergency Economic Stabilization Act of 2008, 12 U.S.C. §5201, SEC. 109: FORECLOSURE

5

MITIGATION for failure to comply with a statutorily mandated condition precedent. The "condition precedent" found in Section 109 the Emergency Economic Stabilization Act of 2008, 12 U.S.C §5201 bars the claim.

### FOURTH AFFIRMATIVE DEFENSE

The claim is barred under the Fair Debt Collections Practices Act for which the state of Kentucky shares jurisdiction and enforcement power.

### FIFTH AFFIRMATIVE DEFENSE

The claim is barred by accord and satisfaction. The debt within the MBS where the loan allegedly was pooled and securitized has been paid more than once and in excess of its face value by a CDS, CLO and/or another derivative contract. Prior to such, the debt was continuously paid through loan payments by and through GMAC and by the junior tranches of the MBS for which McKeever's securitized debt was Senior.

### SIXTH AFFIRMATIVE DEFENSE

The claim is barred by waiver and estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The claim is barred by the Plaintiff's unclean hands.

### EIGHTH AFFIRMATIVE DEFNSE

The claim filed by Plaintiff's counsel is based in fraud and violates Rule 11.

### NINTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to join necessary and indispensable parties to the action.

### TENTH AFFIRMATIVE DEFENSE

The Plaintiff has failed to mitigate damages before the filing of the claim.

### ELEVENTH AFFIRMATIVE DEFENSE

The claim is barred by Plaintiff's own negligence, breach of contract, willful, wanton and/or intentional and fraudulent misconduct.

## TWELFTH AFFIRMATIVE DEFENSE

Foreclosure is precluded by rescission. The loan is not and can never be in default having been rescinded on October 15, 2008 with notice to all appropriate parties. The accusation of default is made in violation of Rule 11 and Deutsche and its attorneys, Dinsmore, Fornshell and Zimmerman, individually should be sanctioned accordingly.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Note and Mortgage will never be enforceable as a Mortgage Loan:

1. Securitization removes the note holder from the note thereby rendering the note unenforceable.

2. The note cannot be severed from the mortgage to attempt to enforce the mortgage without the note holder.

3. The note and mortgage are unenforceable because the mortgagor never consented to the securitization of the mortgage.

4. The mortgagor never consented to the restrictions placed upon the note and mortgage by the Pooling Agreement.

5. The incidence of financial loss is separated from the authority to modify the loan.

6. The underlying debt of the loan is no longer in the form of a Secured Negotiable Instrument.

## FOURTEENTH AFFIRMATIVE DEFENSE

MERS lacked authority and standing to act as a Mortgagee on the underlying Note. MERS has never had an interest in the Mortgage or underlying debt, rendering the Mortgage invalid, unenforceable and non-assignable for the purposes of this action.

### FIFTEENTH AFFIRMATIVE DEFENSE

The transference of the mortgage, subsequent to its origination, caused others to modify the mortgage contract without the consent of the mortgagor and without consideration.

### SIXTEENTH AFFIRMATIVE DEFENSE

Securitization clogged the equity of redemption.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint is barred by the precluding Consolidated Cases currently before this Court, including, but no limited to a Declaratory Judgment action on the October 15, 2008 (Regulation Z Rescission,) the Quiet Title action against the Mortgagee MERS, and the claims for damages and for equitable relief against GMAC, MERS , BBG and the Concealed and Unknown Parties.

### EIGHTEENTH AFFIRMATIVE DEFENSE

McKeever reserves the right to amend and assert additional statutory and common law defenses as deemed appropriate and as revealed through discovery and the ignored October 15, 2008, Qualified Written Request for information pursuant to RESPA.

### COUNTERCLAIM AND THIRD PARTY COMPLAINT

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction based upon federal questions pursuant to 28 U.S.C. 1331 and 1367 and 15 U.S.C. 1692 and 1640(e).    This is an action for

8

damages and injunctive relief asserting violations of federal statutes with additional claims under Kentucky law.    These claims arise out of the same transaction or occurrence and from the same controversy and sequence of events.

2.  Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) as the real property in question is located in Lexington, Kentucky and all, or a substantial part of the events giving rise to the claims asserted occurred in the Eastern District of Kentucky, Lexington Division.

3.  This Court has personal jurisdiction over the parties and their agents, employees and representatives as all Defendants engage in business, whether legal or otherwise, within the state of Kentucky, County of Fayette.

4.  This Court has jurisdiction over the Kentucky State claims by virtue of pendant jurisdiction.

## II.  GLOSSARY OF TERMS AND ANACRONYMS

5.  **MBS=Mortgage Backed Security**. Regulated by the Securities and Exchange Commission.    The bundling of Mortgage loans into a tradeable investment vehicle. Shares or certificates of the MBS are sold to investors.    The certificates were often sold and are held by pension funds and sometimes municipalites.    Although Deutsche refers to the Security as a "Trust" and itself as a "Trustee" it is not a Trust as defined by the Kentucky Revised Statutes.    Deutsche is acting as the administrative and sales Manager of an MBS as any other investment house may manage a Security Fund.    McKeever's loan allegedly resides inside the Security refered to as 2007 QS-10.    The actual certificates issued by an MBS were sold to investors/certificate holders. The certificates weren't just sold, they were "sold forward." This is a form of short selling wherein the

9

investment bank sells the security first and THEN waits until it can get the underlying

mortgage and note at the cheapest possible price to fulfill the description in the indenture

of the MBS (bond). The transaction does not start with the loan, but ends with such.

Although at first glance it would seem logical that the order would be first the loan then

the pooling, then the securitizing, then the sale to investors.   However, the process is

completely reversed.   If McKeever's loan has been securitzede and placed in an MBS it

is no longer a negotiable instrument, but an asset of a SEC regulated Security.

   6.    **SPV=SPECIAL PURPOSE VEHICLE.** A so-called Mortgage Investment

Trustee, like Deutsche, will administer a Special Purpose Vehicle (SPV), which contains

various investment assets.   The SPV is regulated as a "Security" by the Security and

Exchange Commission. A MBS is a SPV.   Mortgage Investment Trustees have no

ownership, control, or financial interest in the SPV.   A SPV is owned by a group of

investors or "Certificate Holders."   The investors or "Certificate Holders are the only

parties with an interest in the assets inside the SPV.   Assuming that an enforceable

original Note and authentic original assignments exist, it is only the Certificate Holders

who have an interest in the Note and are the only entities who could ever demonstrate

that they have suffered an actual or threatened injury as a consequence of an alleged

default.   The Certificate Holders would in turn also prove that they are the bearers of the

original documentation and original legitimate Assignments.

   7.  **CDS=CREDIT DEFAULT SWAPS.  A** CDS acts as an insurance policy for the

MBS.   Once it has been declared under the terms of the CDS to have a triggering loss

event.   The loss or triggering event is not directly tied to an individual mortgage loan,

but the value ratio of the MBS.   Since the CDS is not registered or regulated by the SEC

10

anyone can receive a fee in exchange for their promise to pay if the underlying obligation goes into default. In other words selling CDS does not require any pledge of capital or reserves. AIG sold billions of dollars worth of CDS, without the capital to back it up. This is akin to a bookmaker who lacks capital to cover his book when too many punters have bet the long shot. Hence forth, the TARP bailout of AIG. TARP rewarded AIG for its uncapitalized risk and directly benefitted the investment banks (like Deutsche and GMAC). They were doubly rewarded for their their bad business practices and sold CDS back and forth to each other in order to artificially raise reported earnings and thus raise the price of their stock. The payoff on a CDS typically fars exceeds the face value of the mortgage loans on the books of the MBS.

8.  **CLO=COLLATERIZED LOAN OBLIGATION**.  Another tool like a CDS, the CLO is used as the primary means of transferring risk from a bank loan portfolio to third-party investors.  While CDS transfer the credit risk of one single refernce entity (in the case at hand Deutsche's 2007 QS-10 MBS), CLOs transfer the credit risk of a portfolio of refernce entities.  In other words, the Deutsche 2007 QS-10 MBS would be bundled with other MBS.  This gives the investors additional insurance and a payoff on top of the insurance provided by the CDS, backed by AIG, but actually funded by the TARP.

*CDS and CLOs are discussed in further detail in a treatise written by Mr. Claas Becker (Director in Deutsche's Loan Exposure Management Group) and Mr. Gene D. Guill, (Managing Director Director and Head of Risk Management in Deutsche's Loan Exposure Management Group.)   Both gentlemen will be called as witnesses at trial on behalf of McKeever.

9.  **TOXIC ASSETS.** Contrary to the public's perception, the Toxic Assets referred to in the TARP program  are neither the MBS nor the loans assigned within the MBS. The toxic assets are the CDS=credit default swaps or insurance policies backing up the

MBS. The TARP has not acquired any toxic assets, but merely paid the policy holders of the CDS, (like Deutsche and GMAC-RFC) through AIG and have henceforth covered the gambling debts of AIG and the investment banks like GMAC-RFC, Deutsche, and the others which were selected as "too big to fail."

    10. **TARP=TROUBLED ASSEST RELIEF PROGRAM.** Need we say more.

    11. **AIG=AMERICAN INTERNATIONAL GROUP, INC.** The insurance company responsible for the majority of CDS. AIG backed the CDS for which the 2007-QS10 MBS is hedged. AIG has either already paid on the CDS or is legally obligated to so in the future. In 2008, AIG was deemed by the United States Government as "too big to fail" or "too big to touch" as it served as Goldman Sachs' and other investment banks, like Deutsche's, CDS insurer. AIG was then "Bailed out" by the United States taxpayers with the receipt of TARP funds.

\* A thorough law review article on the subject by William K. Sjostrom, Jr. *The AIG Bailout,* 66 WASH. & LEE L. REV.) 943 (2009).

    12. **MERS=MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** According to the MERS website **("MERS"):** "A bankruptcy-remote subsidiary of MERSCORP, Inc., whose sole purpose is to serve as mortgagee in the land records for loans registered on the MERS® System. Registration vs. Recording. MERS is not a system of legal record nor a replacement for the public land records. Mortgages must be recorded in the county land records. MERS is a tracking system. No interests are transferred on the MERS® System, only tracked." MERS never has any financial, equitable or legal interest in Mortgage loans. By illegally and fraudulently registering Mortgages, MERS has thus so far been able to successfully defraud millions of homeowners and defraud County clerks across the nation out of millions of dollars worth

12

of statutorily mandated Mortgage Recording Fees. As MBS Securities are traded back and forth, the Mortgages are never transferred or recorded in the public record. It is vital to note that MERS does not keep track of the trading in CDS or the secondary trading of MBS. This fact can be applied to each and every Mortgage in America for which MERS has registered itself and a Mortgagee, including McKeever's Mortgage.

13. **MERSCORP, Inc.** According to the MERS website MERSCORP is "[t]he operating company that owns the MERS® System. Owned by 25 leading mortgage industry companies." MERSCORP is named as a Defendant as the owner of MERS. They are referred to in all instances jointly, severally and collectively as MERS hereinafter.

14. **TILA=Truth in Lending Act, 15 U.S.C. §§ 1601-1666(j) as amended**. TILA took effect on July 1, 1969, to promote the informed use of Consumer Credit by requiring creditors to disclose credit terms and costs. TILA requires additional disclosures for loans secured by consumer's homes and permits consumers to rescind certain transactions involving Mortgages on their homes. This case and the Consolidated Cases revolve around the rescission of the McKeever's loan and Mortgage under TILA, the actual legality of the loan and the identity of the "true lender" for the purposes of standing.

15. **Regulation Z=12 C.F.R. § 226 as amended**. Regulation Z was promulgated to implement TILA. It is the Regulation that call for and spells out the procedure for the rescission of a Mortgage Loan. The term shall also include the FRB Official Staff Commentary on Regulation Z 12 C.F.R. § 226, Supp. 1 as amended.

13

16.    **The RALI Series 2007-QS10 Trust**=This is the MBS McKeever's Mortgage loan allegedly resides with hundreds or thousands of other mortgage backed "assets." If the allegation is factually and legally correct, McKeever's loan was assigned to a "Senior Tranche" and has either been paid off by a CDS or is currently being paid by a "Junior Tranche" in the MBS.    It is believed that the MBS Certificates were originally underwritten by Bear Stearns.

17.    **RALI=RESIDENTIAL ACCREDITED LOANS, INC.** Upon information and belief, RALI is the entity that actually formed and sold McKeever's Mortgage loan, acting then as "depositor" for the 2007-QS10 Trust.    RALI does not appear on McKeever's loan; leaving the "originator," BBG merely as a straw man for RALI.    It is asserted that RALI was legally the sole entity at the closing table.    Its involvement was accomplished without the knowledge or consent of McKeever.

18.    **GMAC-RFC=GMAC MORTGAGE/RESIDENTIAL FUNDING, LLC.** The Master Servicer and Sponsor for the RALI 2007-QS10 Trust.    The payments on the loan were sent to GMAC and GMAC held itself out as the Servicing Agent for BBG. GMAC-RFC and RALI are before the Court collectively and will be referred to throughout jointly, severally and collectively as GMAC=RFC for purposes of this action.

### III.  THE PARTIES

19.  McKeever has been the legal and equitable owner of her family farm and home since October 2003 in (Fayette County) Lexington, Kentucky, 40515. McKeever owns and possesses the property with her spouse, Mr. Shane Haffey, hereinafter, ("Haffey") as "tenants by the entirety;" the property being more particularly described as follows:

14

**BEING all of Tract 2, as shown by Final Record Plat of a Portion of The Sandlin Farm Subdivision to the City of Lexington, Fayette County, Kentucky thereof of record in Plat Cabinet H, Slide 595, in the Fayette County Clerk's Office; and the improvements thereon being known and designated as 3250 Delong Road ) formally known as 3250 Walnut Hill Road, Lexington, Kentucky.**

**BEING the same property conveyed to Heather McKeever and Shane M. Haffey, by deed, dated October 24, 2003 of record in DEED BOOK 2408, PAGE 505 in the Fayette County Clerk's Office.**

.   At all time relevant hereto and in relation to the matters at hand, McKeever was the sole signatory of a May 18, 2007, Promissory Note, hereinafter, ("the Note"), and all other loan documents and post-agreements pertaining thereto.   Both McKeever and her spouse, Haffey, were Mortgagors under the Note which was also signed on May 18, 2007.

20.   Plaintiff, Deutsche Bank Trust Companies Americas, hereinafter ("Deutsche") is a foreign corporation.   Deutsche has alleged that it is a "trustee" for a SEC regulated Security registered as the 2007 Qs-10 Trust.   Deutsche is not licensed or registered to do business in the state of Kentucky as a "trustee."   According to the Deutsche website, the term "trustee" is held out to the public and is sold to the public as follows:   "Deutsche Bank`s Trust & Securities Services is a leading provider of trust and administrative services to the securitization market. The group combines global reach with a full range of integrated products to offer its clients one-stop shopping. Whether the issue is straightforward or highly structured, Deutsche Bank delivers smooth execution and superior ongoing <u>administration.</u>"   (emphasis added.)   Based on its web assertions, to state that Deutsche is the holder/owner of McKeever's Promissory Note is by definition a lie.   The self-proclaimed description lends itself to a bookkeeping and secretarial service.

Even if Deutsche could show that it is a legally definable "trustee" under Kentucky law of the above-referenced "trust," it would only serve to strengthen the fact that

15

Deutsche's assertion that it has ANY interest in McKeever's Note as a holder or owner as the "trustee" is a lie.

21. The Third Party Defendant, The Bank of the Bluegrass and Trust Co., hereinafter, ("BBG") is a Kentucky Corporation, which acts as an independent private Financial Institution. BBG is the originator of the May 18, 2007 loan in question. McKeever and her spouse had a long term lending relationship with BBG dating back to 2001.

22. The Third Party Defendant, Bill Allen, hereinafter, ("Allen") was at all times relevant hereto, the President of the Bank and was in personal contact with the Homeowners at all time relevant hereto.

23. The Third Party Defendant Mark Herron, hereinafter, ("Herron") was at all times relevant hereto Chief Executive of the Bank, with personal knowledge and decision making authority as relating to this Complaint.

24. The Third Party Defendant, Jennifer Frye, hereinafter ("Frye") was at all times relevant hereto an agent of the Bank, who acted as the Homeowners personal contact and generated the paperwork as it relates to the loan which is the subject matter of this action.

25. The Third Party Defendant MERS is a foreign entity, which is unregistered and unlicensed in Kentucky to transact business and thus, has been and continues to transact and conduct business and operates fraudulently and illegally in the Commonwealth of Kentucky. MER and MERSCORP are one and the same for purposes of this action. MERS claims an interest in said property as a recorded Mortgage Assignee, adverse and hostile to Plaintiff's right and title by the recording of "Assignment of Mortgage," found in BOOK 449 PAGE 380 of the Fayette County Clerk and which contains a date of May

16

14, 2007.    MERS was illegally and fraudulently listed in the public records of Fayette

County as an Assigned Mortgagee against Heather M. Haffey and Shane M. Haffey.    No

Mortgage Agreement was ever signed by McKeever  with the Third Party Defendant,

MERS.   No Notice or Disclosure was ever given to McKeever of any Assignment.   No

Promissory Note or other evidence exists which could ever make or have made

McKeever indebted to MERS in any way.      MERS has never had nor will it ever have

standing to enforce the illegal and fraudulent Mortgage and/or Mortgage Assignment in

the Commonwealth of Kentucky.    MERS has no claim or interest in said land

whatsoever.   MERS may have a business relationship with the other Defendants to this

action and has conspired with and colluded with the other Defendants to commit

fraudulent and illegal acts.

26.  There is a Quiet Title action as the MERS mortgage pending before this Court in

the Consolidated cases known as *McKeever v. Mers, 08-cv-.456-JBC*.   Deutsche and all

other Defendants to this action had notice of the Quiet Title and did not make a claim or

attempt to enter the Quiet Title action.

27.  MERS, is a Virginia Corporation owned by the company, MERSCORP, which is

in turn owned by a group of Wall Street investment Banks, most of which remain in

existence solely due to taxpayer welfare, otherwise known as T.A.R.P. Funds.    The

names of the owners will be presented at trial.

28.  MERS is unregistered and unlicensed to conduct mortgage lending or any other

type of  business in the Commonwealth of Kentucky and has been and continues to

knowingly and intentionally illegally and fraudulently record mortgages and conduct

business in Kentucky on a large scale and systematic fashion..

17

29.   No promissory Note or other evidence exists which could ever make McKeever indebted to MERS in any way.

30.   MERS never had nor will it ever have standing to enforce the illegal and fraudulent mortgage it filed against the property in question.   MERS never had nor will it ever have the authority to assign the Mortgage to any entity.

31.   MERS has never had any right to collect on the Note or enforce the Mortgage, nor has it had a right to hold, enforce or collect upon any of the thousands of Mortgages it has fraudulently recorded throughout the Commonwealth of Kentucky.

32.   Any purported assignments from entity MERS are based in fraud, are not authentic and were made in violation of Kentucky and Federal law.

33.   GMAC Mortgage, LLC, hereinafter, ("GMAC"), is a foreign corporation which may have Serviced the loan and collected fees and commissions on the loan in several capacities:   As the Loan Servicing Agent for the Bank of the Bluegrass and Trust, hereinafter ("the Bank") and as both the Loan Servicing Agent for the Concealed and Unknown Persons who may be Parties in Interest who are the Concealed True Lender(s) and/or Holder(s) of the Note in question who may Claim an Interest in the Subject Matter of this Action.

34.   Residential Funding Company, LLC, hereinafter, ("RFC") is a foreign entity which is not licensed as a lending, mortgage or Financial Institution, authorized to make Mortgage loans in the state of Kentucky.   Upon information and belief, RFC services the loan as "Master Servicer" of RALI 2007-QS10 Trust.

35.   Third Party Defendant, Residential Accredit Loans, Inc., hereinafter ("RALI") is a foreign Corporation, not licensed as a financial Institution or Mortgage broker in the

18

state of Kentucky.   RALI lists its address as 8400 Normandale Lake Boulevard Suite 250, Minneapolis, Minnesota 55437.   Upon information and belief, RALI funded the 2007-QS10 MBS and served as "depositor" under the 2007-QS10 Pooling and Servicing Agreement.   For puroses of this action GMAC, RFC and RALI are collectively referred to at all times as GMAC-RFC.

## IV. STATEMENT OF CLAIMS AND DAMAGES

36.   McKeever seeks remedies under a multitude of State and Federal claims, namely fraud, breach of contract, breach of fiduciary duty, the Kentucky and Federal Consumer Protection Acts, Kentucky and Federal Banking Acts, TILA, HOEPA, RESPA, FDCPA, and FCRA, Kentucky's fraudulent recording and false records acts and the Kentucky Organized Crime and Federal RICO Acts.

37.  The claim seeks damages in excess of the original principal amount of the Note of one million dollars ($1,000,000.00) and seeks to obtain enforcement of the defacto rescission of a of a Home Equity loan re-financing, injunctive relief, redress, restitution, disgorgement, monetary damages, statutory penalties, damages for mental anguish, punitive damages, pro se time reimbursement, attorney's fees and costs, and  equitable relief against the Defendants for statutory violations, for engaging in fraudulent acts and practices, and for acting in bad faith in relation to the Note and Mortgage, executed on May 18, 2007.   The claim also seeks damages and sanctions pursuant to Fed. R. Civ. P. 11 for acts of bad faith against the Plaintiff Deutsche, its law firm, Dinsmore & Shohl and specifically and individually, Fornshell and Zimmerman, for the filing of the Foreclosure action during the pendency of the Consolidated cases; for filing two separate actions whererin they knew their client's statements were false, and for their bad faith in failing

19

to acknowledge and settle the action upon notice of the October 15, 2008 rescission, and for their unclean hands and bad faith in bring the vernacular term of art "milking a file" to a new egregious level.  Damages are sought against BBG and the other Defendants for fraudulent inducement in regards to the origination of the loan itself.  McKeever asserts additional and separate claims and sanctions for any and all causes of action stemming from subsequent violations of the Kentucky and Federal law pertaining to the Loan Rescission and the ignored Qualified Written Request noticed on October 15, 2008. McKeever asserts separate and additional claims for the Defendants failure to respond to the Homeowners attempts to settle the Rescission and Qualified Written Request claims, the Homeowners' unilateral effort to mitigate damages prior to the filing of litigation and the Defendants' duty to keep the claims "out of Court" and "between the parties" as required by the stated purposes of TILA and RESPA and the accompanying case law pertinent thereto.

38.     Separate claims for injunctive relief and damages are sought for breach of contract and fraudulent inducement pertaining to a Confidential Settlement Agreement signed by McKeever and an unknown entity of the Bank. Pertaining to an attempt of the BBG to fraudulently settle a specific claim relating to an illegally collected closing cost.

39.     Under the undisputed facts of the case as applied to the law, there is no entity currently before the Court which is legally entitled to enforce or collect on the Note and Mortgage and injunctive relief is sought declaring the Note and Mortgage null and void and the Mortgage Ordered released and noted as released in the public record of the Fayette County Clerk as of October 15, 2008.   Statutory $500.00 per day damages are also sought under KRS for the failure of the Defendant MERS to release the Mortgage.

Said daily damages to be calculated from October 15, 2008 and until and when the public record reflects that the Mortgage has been released.

## V. STATEMENT OF THE FACTS AND HISTORY

40.   A Promissory Note for one million dollars ($1,000,000.00) and Mortgage were executed by McKeever on May 18, 2007, as a re-financing of a February 21, 2007 line of credit.   Homeowner Haffey was not included on the Note and was at all times relative hereto, a Mortgagor only.

41.   The Loan and Mortgage were fraudulently back dated to May 14, 2007.

42.   Prior to the signing of the Note and Mortgage on May 18, 2007, the Homeowners had a longstanding relationship with the Bank of the Bluegrass, a locally owned Community Bank in Lexington, Kentucky, hereinafter, ("BBG") dating back to 2001. Over the years, the relationship involved day to day banking, multiple real estate loans and mortgages and lines of credit secured by real estate.   The Homeowners and BBG had a history of re-financing these loan and Mortgages.   All loans and home equity lines of credit were held in-house by BBG and it was understood between the parties that the loans were not to be sold to the secondary market.

43.   Since the inception of the relationship and continuing thereafter, the Homeowners worked exclusively with the Bank for all their loan needs, and engaged in a personal and intimate relationship with Allen and the Bank.   The Bank held all the Homeowners loans in-house.   The Homeowners had no experience with any other type of secured loan and had no contact or experience with the secondary loan market.   Before working BBG, the Homeowners worked exclusively with another private lending institution, Vine Street

21

Trust, where all transactions were again held in-house.    At all time relative hereto the Defendants had a fiduciary duty to the Homeowners.

44.    In January of 2007, the Homeowners were approached by Bill Allen, the President of the Bank to refinance their, in-house, interest only open-ended high interest indexed loan, to an in-house, interest only, closed-end, fixed rate loan.    The loan was current and not up for renewal.

45.  On February 21, 2007, the credit line had been extended with no change to the terms and conditions.    At Allen and the Bank's request, and in exchange for the second re-financing, the Bank agreed to fix and lower the interest rate to below seven percent (7%) and consistent with their previous course of conduct over the years, agreed to remain open to re-negotiation.    The terms of the loan were to remain the same as the February 21, 2007 loan, save for the fact that the interest rate would no longer be tied to an index and would be fixed.

46.    Allen expressed that the Bank had a need to convert the indexed equity line to fixed rate loan, due to the fact that the Bank examiners were due at the Bank in the third quarter of 2007.    The benefit to the Homeowners would be a fixed rate and increased loan amount.    The Bank was subsequently placed under a Cease and Desist Order by the FDIC and Kentucky Department of Financial Institutions on July 8, 2008 for its lending practices.

47.  Five months subsequent to being approached by Allen and upon  agreement of the terms, the closing for the second 2007 re-financing was set for May 14, 2007 at 4:00pm. No documents pertaining to the loan were ever presented to McKeever prior to the closing.    Jennifer Frye, a loan officer for the Bank, worked with Allen to put the re-

financing package together   At least three days before the loan was to be consummated, a request for the Hud-1 and other disclosure documents was made to Frye and Allen. McKeever was informed the documents were not "ready."   The documents were never made available to McKeever prior to the scheduled closing.

48.   On May 14, 2007, Frye appeared for the 4:00pm closing one hour late, at approximately 5:00pm, with a package of loan documents; which were presented to McKeever to sign.   All of the documents were being seen for the first time by McKeever.   Many of the documents were fraudulently back dated for McKeever's signature by Frye or Allen to an erroneous date of March 28, 2007.   These back dated documents included, but may not be limited to the following:   Uniform Residential Loan Application, Addendum to Good Faith Estimate Required Use of Settlement Providers, Servicing Disclosure Statement, Lock-in Confirmation, General Disclosure, Borrower's Certification and Authorization, Good Faith Estimate, and Truth in Lending Disclosure. The back dated documents were signed by McKeever, with the correct date and time of May 14, 2007.

49.   The Loan Application was filled out by a Bank representative without the knowledge or consent of the Homeowners. The application was presented to McKeever for the first time for her signature at the May 14, 2007, Loan Closing and was to be utilized as part of the official documentation of the re-financing.   The application was signed by McKeever on May 14, 2007, under duress and in spite of the fact that mistakes were pointed out to Frye as to its content, specifically in regards to the fact that the impending sale of another piece of McKeever's property was listed as "income."   Frye

23

told McKeever that the sale would be considered income for the purposes of the application even though it had yet to take place.

50.   On May 14, 2007, at approximately 5:30pm and subsequent to the execution of the documents subsequently referred to, the amortization schedule was presented.   It was then McKeever discovered that she had been given, what she though at the time, was the wrong loan package.   The re-financing presented and the documents previously executed pertained to a 30 year fully amortized conventional loan, bearing no relation to the agreed to re-financing of the long held interest only line of credit.

51.   On May 14, 2007, at approximately 5:30pm, Frye informed McKeever that no mistake had been made; that it was in McKeever's best interest to sign the Note and Mortgage as presented, and that Frye was doubled parked and in a hurry to get home. McKeever refused to execute the Note and Mortgage, now realizing that she was a victim of a "Bait and Switch" scheme and possibly the victim of Predatory Lending Practices.

52.   Frye then left the closing, stating that McKeever's failure to sign the remainder of the May 14, 2007, Loan documents, was "a big mistake."

53.   At the time Frye left the closing, the HUD-1 had already been signed by McKeever.   A Notice to Cancel had also been signed by both McKeever and Haffey. The Notice to Cancel signed on May 14, 2007,  and the accompanying HUD-1 pertained to a loan which never took place and pertains to a loan which was rejected and never executed by the Homeowners.   As the Note and Mortgage were never executed for the May 14, 2007 rejected loan, rescission by and through the Notice to Cancel was unnecessary.   The documents are moot and a legal nullity and should have been destroyed in the presence of McKeever and Haffey.

54.   On May 14, 2007, at approximately 5:45pm, Allen, the President of the Bank and the Homeowners main personal contact, was reached by telephone for the purpose of notice and the seeking of advice.   The Homeowners had a history of transacting all business by and through the Allen personally and directly.   By telephone, Allen responded that he had nothing to do with the actual paperwork produced for the loan, but did give McKeever this advice, "I know one thing, if you don't close this loan today, you'll be considered in default of your existing loan to us, and this will probably keep you from getting another loan somewhere else."

55.   Throughout May of 2007, the Homeowners had been specifically instructed by Allen and Frye, with Herron's approval to "hold off" on making final payment on the existing line of credit as the payment would be rolled into the re-financing pay off.

56.   As of May 14, 2007, the Homeowners had never made a late payment or been delinquent on a single loan payment with the Bank, nor had they ever been delinquent on any Mortgage payment throughout their twelve year Mortgage history with any other lending institution.

57.   True to Allen's threat and irregardless of subsequent agreement otherwise, the February 21, 2007, loan was reported by the Bank to the credit bureaus as delinquent as of May 14, 2007, on both McKeever and Haffey's credit Reports.

58.   The attempted transaction known as the "Rejected Loan," was base in fraud.   The loan was presented knowingly and intentinally on May 14, 2007 with the intent to defraud.   The fraud was perpetrated by all three individual parties to this action who had direct contact and/or approval authority for the transaction, including BBG, Allen, Frye and Herron.

25

59.    On or about May 16, 2007, under duress, and believing that their future borrowing power was at stake, McKeever agreed to execute the re-financing with the Bank, with the original interest only, fixed below seven percent loan as originally agreed.

60.    However, the bank refused to honor the original terms of the re-financed loan without an additional five thousand dollar ($5000.00) fee. McKeever believed that the discount fee was fraudulent and that she was the victim of extortion. At all times relevant to the extortion, the Homeowners believed their future borrowing power and credit was at stake and in the control of Frye, Herron, Allen and BBG.

61.    The closing was set for May 18, 2007. McKeever appeared alone to sign the documents the afternoon of May 18, 2007. After an hour and a half wait, certain documents appeared, namely a Note, Mortgage and HUD-1 for McKeever's signature. No Bank representative ever appeared.

62.    Both the May 14, 2007, rejected Loan HUD-1 and the HUD-1 from the consummated May 18, 2007 transaction, contain a beginning interest collection date of May 18, 2007.

63.    The only document received by McKeever on May 18, 2007, was the HUD-1. No Notice of Right to Cancel or any other documents were received. McKeever left the closing with the understanding that the transaction was not consummated until Haffey signed the Mortgage.

64.    On May 18, 2007, Haffey arrived alone and subsequent to McKeever, for the purpose of executing the Mortgage only. The Mortgage was opened and marked to the signature page. Haffey did not see a date on the Mortgage. The only document Haffey signed in relation to McKeever's May 18, 2007, loan was the Mortgage. Haffey did not

execute any other document, see or receive any documents, upon his departure, including a Notice of Right to Cancel.    The Homeowners did not receive a Notice of Right to Cancel at any time relevant to the May 18, 2007 transaction.   The required Truth-In-Lending documents were never presented or executed by McKeever pertaining to the May 18, 2008 transaction.   The Homeowners were never sent any documents in relation to the May 18, 2007 Note and Mortgage, subsequent to the closing.

65.   The Note, Mortgage and HUD-1 for the consummated May 18, 2007 transaction, filed in the public record, incorrectly list the date of the transaction as May 14, 2007.   On or about August 1, 2007,  McKeever discovered the date mistake on the HUD-1 and the Bank was notified by and through their servicing agent, GMAC.   The Note, Mortgage and HUD-1, signed on May 18, 2007, should have been revised to reflect the correct date. On August 16, 2007, a Response Letter from GMAC was sent to McKeever, wherein GMAC refused to make the correction.

66.   The May 18, 2007, executed HUD-1, improperly contains the same Loan Number as the May 14, 2007, Rejected Loan transaction.    The loan consummated on May 18, 2007 and the Rejected Loan of May14, 2007, bear no relationship to each other and should have been numbered differently accordingly.

67.    The Bank began collecting interest on the May 18, 2007, re-financed loan, on May 18, 2007.   Interest was charged and collected in spite of the fact that the transaction was consummated after 5:00pm on May 18, 2007.   The funds for the transaction were illegally disbursed on the either the same day or some day prior to the signing of the Note and Mortgage.

68.    On or about July 29, 2008, and believing that the Bank was the Lender and Holder of her Note, McKeever was fraudulently induced to sign a Confidential Settlement Agreement and Mutual Release of Claims for the extortion perpetrated by the Bank in relation to the discount fee charged as to the May 18, 2007 loan.  The settlement amount amount was two thousand five hundred dollars ($2500.00,) a little over one-third of the monthly interest the Bank was collecting on the Note.  The Settlement Agreement also states a fraudulent closing date of the loan as May 14, 2007.

69.    In September of 2008, McKeever discovered through a telephone conversation with the Bank's Servicing Agent, GMAC, that the Bank had likely never served as a "true" Lender or holder of the Note or as Mortgagee.    It was then discovered that the loan been fraudulently table funded and that The Bank of the Bluegrass acted only as an broker or "stand-in" for some other concealed "Real Party in Interest." The identity of the "Real Party in Interest" remained concealed.  The GMAC representative refused to give out the name of the party who had actually funded and originated the loan or the name of the party on whose behalf GMAC was collecting and distributing McKeever's loan payments.

70.   No Notice of Assignment or Transfer was ever received by the Homeowners and at the date of the filing of this Complaint, the public record in Fayette County, lists as the Mortgagee an entity called Mortgage Electronic Registration Systems, Inc., hereinafter, ("MERS".)  This entity is not a beneficiary under the terms of the Note or Mortgage and has no pecuniary interest in the Note.

71.   Before September 2008, the Homeowners believed that the Note and Mortgage were held by the Bank of the Bluegrass and that GMAC was merely acting as the

Servicing Agent for the Bank of the Bluegrass.    In September 2008, the Homeowners learned, through the public record, that the Mortgage had been assigned on May 14, 2007, to the entity called MERS.  (A date which precedes the execution of the Note and Mortgage by four days.)    The concealed "true lender's" funding and assignment of the Note and Mortgage occurred without the Homeowners' knowledge or consent before the execution of the Note and Mortgage.

72.  The Homeowners believed at all times relevant hereto, that their loan was being re-financed by and throught he same Community Bank they had been working with for the better part of a decade.   The Defendants failed to disclose and reveal the real parties in interest before, during or after the loan closing.   The identity of the True Lender, the identity of the party in possession of the original Promissory Note, the beneficial owner and/or the holder(s), if any is unknown.

73.  By failing to disclose the True Lender, and any and all transfers and assignments of the Note and Mortgage, the Defendants have deliberately and fraudulently hidden behind an opaque curtain and deprived the Homeowners of the knowledge of who they had contracted with and were indebted to pursuant to the Note and Mortgage.

74.  By failing to disclose the True Lender, the Homeowners were put in an untenable position, and have now discovered, that there was a concealed "True Lender" and that the Bank of the Bluegrass, the lender listed on the Note, Mortgage and HUD-1, was a pretender lender; and have discovered that the Bank was paid an undisclosed and fraudulent fee for pretending to be the lender.

75.    The Homeowners were left not knowing who to pay, not knowing who has authority to communicate with them, and not knowing  to whom they should address objections and claims.

76.    By failing to disclose the True Lender, the Defendants deliberately and fraudulently induced the Homeowners to execute two transactions they would not otherwise have executed; namely the Note and Mortgage and in McKeever's case a Settlement Agreement for the extorted discount fee.

77.    Through ommission and fraud, McKeever  paid undisclosed closing fees, yield spread premiums, undisclosed finance charges, payments, kickbacks, re-insurance and insurance premiums and kickbacks to parties hiding behind the Defendants' opaque curtain. She unknowingly paid undisclosed parties who were not in privity with the Homeowners and deprived the Homeowners of information and material disclosures vital to the decision of whether to execute the Note and Mortgage.

78.    In September 2008, the Homeowners discovered that on May 14, 2007, a yet to be executed Mortgage bearing their names had been separated and bifurcated from the Note executed on May 18, 2007, and Assigned to an unrelated party, with no beneficail interest in the Note, namely, MERS.    Therefore the Mortage is unenforceable.    The assigment was made before the actual Morgtgage was executed by the Homeowners on May 18, 2007.    The Mortgage was  fraudulently and illegally assigned to MERS before the execution of the a Note and Mortgage; thereby making the Mortgage unenforceable.

79.    The Concealed and Unknown "True Lender," other "Real Parties in Interest" and all other Defendants,  may be parties to unnoticed and illegal insurance contracts, credit default swaps, cross guarantees, and buyback provisions with other unknown parties and

30

have likely moved the Note through the chain of securitization, replacing McKeever's Note, with other Notes, and may have disregarded buyback and substitution requirements.

80. Upon information and belief and without the Homeowners knowledge or consent the Promissory Note has been illegally securitized by the Defendants and has been pooled and tranched into a Mortgage Backed Security, hereinafter ("MBS".)

81. By the method of pooling and tranching, the Defendants have converted a negotiable instrument, (the Note) into a non-negotiable instrument; a publict traded MBS. As an MBS there can be no one holder or owner who could ever have standing to enforce the Note.

82. By selling the Note and/or acting as a pass through entity, and upon receipt of payment from an unknown party, and the signing of a Pooling Servicing Agreement between concealed and unknown parties, a new obligation arose between the Seller and Buyer of the Note separate and apart from the Homeowners; therby the Homepwners obligation under the Note has been satisfied in full.

83. The pretender lender/agent and securitization method utilized by the Bank, the Bank's representaives, Allen, Herron and Frye and the concealed partie and subsequent purchasers and/or Holders of the Note, calls for the proceeds of the Homeowners' Mortgage obligation, that which are those funds paid by the Homeowners throught the Servicing Agent, GMAC, to be used as collateral (cross collateralization) for another Note.   The Note as a Negotiable Instrument states that payments by the Homeowners will be applied to the amount the Homeowners owe under the Note.   Therefore, by cross collateralizing, the terms of the Note have been materially breached.

31

84.    The Homeowners have no way of knowing whether the Note, even if initially assigned to a specific securitized pool remains in that pool, or has been supplemented with another note, and/or has been satisfied by by a third party guarantee contract, credit default swap or insurance policy.  A concealed  mortgage aggregator may have paid at least 102.5% of the principal of the Note to a "lender" under a Pooling and Service Agreement or under an Assignment and Assumption Agreement, which in this case predates the closing.   If a Cerificate of Non-recoverability has been issued the loan can not be enforced or collected upon.

85.    Upon information and belief, the Note, has been satisfied by a third party guarantee contract, credit default swap or insurance policy, hence, has been satisfied in full, relieving the Homeowners from further obligation from the Note and Mortgage as of the date that payoff occurred.

86.    Through over collateralization and reserve pools, and hierarchical pledges between divisions, hereinafter ("tranches") of a Special Purpose Vehicle corporation, the Defendants may have assigned the funds paid from unknown borrowers and unknown promissory notes in a tranche below the tranche which was assigned to the Homeowners' Note without their knowledge or consent.    Additionally, the payments made by the Homeowners on the Note may have been fraudulently and illegally allocated to other loans in tranches above the tranche  assigned to the Note.

87.  BBG, Allen, Herron and Frye, RALI, RFC, and GMAC perpetrated the fraud as it related to the date of the loan and the loan was funded and transferred before the date of closing.   The fraudulent funding and all other concealed actions of the Defendants as aforementioned negates the Settlement Agreement in total, thereby making the

32

Agreement null and void.   The fraudulent inducement to sign the Confidential Settlement
Agreement and Mutual Release of Claims negate the Agreement.

88.    On October 15, 2008, upon discovery of the fraud in relation to the parties
involved with the Note and the realization that McKeever had been fraudulently induced
to execute a Release Agreement with the Bank and with proper notice to all parties
involved, the Note and Mortgage were de facto and legally rescinded under the Truth in
lending Act, hereinafter ("TILA").    A Qualified Written Request pursuant to the Real
Estate Settlement and Procedure Act, hereinafter, ("RESPA") was sent simultaneously
with the Rescission Notice to the Bank's Servicing Agent, GMAC.      To date, the
Qualifed Written Request for information as statutorily provided for in RESPA, has been
ignored.

89.   Under the law, the Settlement Agreement bears no relation and in no way serves
as a bar to the actual rescission of a re-financed debt under the TILA.

90.   On the date the re-finance loan was rescinded, October 15, 2008, the loan was
current.   The monthly payments to what McKeever thought was BBG, by and through
Servicing Agent, GMAC had never been delinquent.     McKeever deliberately ceased
making payments beginning November 2008, pursuant to Regulation Z.

91.    Under the TILA, the Bank and MERS had twenty (20) days, up and until
November 4, 2008, to sign any and all necessary documents releasing the mortgage and
rescinding the May 18, 2007 transaction.    Under RESPA, the Bank and GMAC had
twenty (20) days, up and until November 4, 2007, to provide the requested information.
The transaction was not rescinded by the Bank as required by TILA, nor has the

Qualified Written Request pursuant to RESPA been answered by the Bank or GMAC. The Defendants have failed in their duty to abide by both TILA and RESPA.

92.     Numerous attempts to procure a Settlement have been made by the Homeowners prior to the filing of this action, with at least two separate written letters and the unilateral voluntary Production of Documents to Defendants' counsel.  The Homeowners attempts at communication and settlement have been ignored by and through  the Bank's counsel, Hon. Joseph Howard and GMAC's and now Deutsche's counsel, Dinsmore & Shohl; specifically by and through attorneys David Fornsehell and Robert Zimmerman. Although under no obligation to do so, since the Mortgage had not been released between October 14, 2008 and November 4, 2008, an Offer of Tender was made in writing for the unsecured debt.

93.     Although the May 18, 2007, transaction was rescinded as a matter of law on October 15, 2008, the Defendants' Servicing Agent, GMAC has attempted to collect on the Note and MERS has failed to release the Mortgage.   A written notice was sent to McKeever on November 15, 2008, from GMAC, stating that the Mortgage payment was due and owing as of that date.  On November 13, 2008, through the "good faith" written settlement attempt, McKeever attempted to procure by written recognition of the fact that pursuant to RESPA, TILA, the Consumer Protection Act, and the Fair Credit Reporting Act, the Defendants are prohibited from attempted collection on the Note and/or Mortgage; or reporting such illegal collection to any of the Credit Bureaus.  The request has been ignored, along with settlement attempts.    These actions warrant punitive damages against the GMAC, Deutsche, RALI and RFC.

34

94.    On or about December 13, 2008, the Servicing Agent, GMAC, served the Homeowners with a Federal Declaratory Judgment action to declare whether the rescission was valid.    GMAC is not a beneficiary, or Mortgagee, and has no interest in the Note.    The current Plaintiff, Deutsche is not a party to the Declaratory Judgment and a jurisdictional Motion for Judgment on the Pleadings was filed based on standing. *See GMAC v. McKeever* 5:08-cv-459. (E.D. Ky. 2008.)    The Declaratory Judgment has since been consolidated with the Quiet Title action against the registered Mortgage holder, MERS and two (2) other cases filed by McKeever and Haffey against BBG, GMAC and the other "concealed parties." Within the Consolidated Cases.

95.    Knowing that BBG was not a party to the Declaratory Judgment action and knowing that the Declaratory Judgment failed to legally tie McKeever's loan to the Plaintiff GMAC, on or about May 20, 2009, Allen, with Herron's authority voluntarily provided GMAC with an affidavit and a copy of McKeever's Confidential Settlement Agreement.    The Settlement Agreement was not signed by Allen and the identity of its Signatory is unknown.    The affidavit was allegedly based on a subpoena from GMAC. The Homeowners were never served with a copy of the subpoena, in violation of Fed. R. Civ. P. 45 and the Homeowners are seeking sanctions against GMAC, Dinsmore and Fornshell and Zimmerman for the violation.

96.    According to GMAC's counsel and as confirmed in an electronic mail to McKeever, the subpoena was completely generic in nature in that it requested the records pertaining to the loan.    Allen filed no objection under Fed. R. Civ. P. 45(C)(2)(B) or(C)(3.)    As confirmed by GMAC's counsel, the presentation of the affidavit and the

attachment of the Confidential Agreement were completely voluntary on Allen's part, and neither the affidavit or Agreement were requested by GMAC.

97.    Haffey was never a party to the Agreement.    Haffey was unaware of the Agreement's content.    The Agreement bears absolutely no relation to McKeever or Haffey's right to rescind the Mortgage or pursue any and all other claims pertaining to the Mortgage in question.    McKeever was fraudulently induced to sign the Agreement. The loan was table funded at closing.    Therefore there can exist no "assignees" of the agreement as BBG  never had any rights in the loan at the loan's inception.    BBG was paid to pretend to be McKeever's lender.

98.    Additionally, the voluntary testimony by affidavit and the attachment of the confidential document was a material breach of the Settlement, thereby making the Settlement Agreement null and void.    As with the rescission of the re-financing transaction itself, the Settlement Agreement has been canceled and the Homeowners have suffered and entitled to damages for that material breach from BBG, Herron and Allen.

99.    In May of 2007, all the Defendants, save for Dinsmore, Fornshell and Zimerman withheld vital information from McKeever by concealing and lying about the true nature of her line of credit re-financing transaction.    The transaction was never intended as a Mortgage loan, but was instead, a scheme to obtain McKeever's signature  as a vehicle for the collection of "on the books" collateral for the issuance of an investment security.

100.  McKeever's signature was obtained under false pretenses. McKeever believed she was issuing an instrument intended to be conveyed and held by BBG as a negotiable instrument.   McKeever allowed a mortgage to be taken on her farm, and relinquished a line of credit  which had been saatisfactorily in place with BBG for many years.   Instead,

36

McKeever was fraudulently induced to give her signature to create a "Security" as defined by the Securities and Exchange Commission.

101.    The Defendants as aforementioned acted with full knowledge and conspired together to induce McKeever into signing the transaction.    The Defendants failed to disclose the right to rescind under securities laws, rules and regulations.  The identity of thr true "lender was concealed from McKeever.  The Defendants had a duty to disclosure the idenity and scope of activities of all the players involved as well as their compensation.  The Defendants actions created an absolute right to rescind in addition to the statutory rescissions  pursuant to TILA.

102.  In addition to being a Mortgage loan as defined by TILA, the transaction was a securities transaction under the single transaction theory.    The primary purpose of obtaining McKeever's signature was not to create an asset (i.e., a loan that would be repaid) but rather to fill in the blanks in order to place the loan number onto a list inside a MBS and to legitmize the filing with the SEC so that the MBS could be sold to investors. It should be noted once again that the deception, sale and conversion of the loan into a MBS  took place before te loan was ever executed by McKeever.

103.    The true value and nature of the loan "MBS asset" was concealed so that investors would be misled into thinking that the MBS deserved its triple AAA rating and that insurance from AIG could be obtained and/or the MBS could be hedged through unregulated CDS vehicles and acquired by CLOs.

104.    The Defendants' had no intention of creating a Mortgage loan or negotiable instrument on May 18, 2007.  Their economic incentive on May 18, 2007, was to collect undisclosed fees, commissions  and bonuses, create, put the loan into SPV in order to

register and sell a SEC defined Security, create the delusion that their MBS fund was outperforming the market and unload the MBS on unsuspecting investors.

105. The Defendants were involved jointly and severally in the securitization process, in a joint venture. BBG served as the "front man", the enticer and "originator", while GMAC oversaw the pools of loans backing the securities, that RALI funded and which were sold to and managed by Deutsche, who then sold the MBS to the investors; and which Mortgages were publicly held by MERS, who had absolutely to financial involvement with the loan.

106. Although the Pooling and Serving Agreemnt speaks to the legal arrangement between Deutsche, RALI. RFC and GMAC, it remains to be discovered if there are any written agreements existing between BBG and the other Defendants and to what extent the Defendants were shaping the action and practices of BBG.

107. Deutsche and the other Defendants have direct liability regardless of the whether they were sitting at the closing table as they were the orchestrators of the securitization and profited from it.    The prospectus for the 2007-QS10 Security had been written before the McKeever's loan was closed.   The loan was funded prior to McKeever ever signing a document on May 18, 2007, having been fraudulently back dated to May 14, 2007.    If McKeever's loan was not going to be assigned to a MBS by fraqudulently utilizing McKeever's signature, the re-fiancing would not have otherwise been made by McKeever or the Defendants.

## VI.  PRELIMINARY STATEMENT OF RELEVANT LAW

108. The alleged Note in question, started its life as a negotiable instrument. It was similar to a check. The negotiation and enforceability of both notes and checks are

governed by Article Three (3) of the Uniform Commercial Code. To enforce a negotiable instrument, a person must be a holder of the note. KRS 355.3-301. To meet the definition of a "holder," the person must possess the note, and the note must be issued or endorsed to him or to his order or to bearer or in blank. KRS 355.1-201(2)(u). The record reflects that Deutsche is not the "holder" or "owner" of the Note. Neither does it appear in the record of this case to be any evidence that Deutsche will ever be the "Bearer" of the Note, under KRS 355.1-201(2)(u), wherein the Plaintiff could ever be "a person in possession of a negotiable instrument, document of title, or certificated security that is payable to bearer or indorsed in blank." KRS 355.1-201(2)(e). The Plaintiff is not in possession of the original negotiable instrument with any legally binding original endorsement.

109. If Deutsche, at a later date, attempts to claim that the original documentation was somehow "lost," the Note will never be enforceable, as made obvious by official comments to the UCC § 355.3-203, that read as follows: " X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y."

110. Based on the record in the case, as submitted, the Note and the Mortgage were bifurcated at inception and were and remain unenforceable as a Secured Transaction under the Uniform Commercial Code and Kentucky law. The most the Plaintiff could ever be is an unsecured creditor. However, under the facts of this case as applied to the law, Deutche not a "creditor" who is attempting to deceive this Court.

111.   Upon information and belief, the Note, the Note was "securitized," was paid off in excess of the principal balance and is no longer enforceable as a Secured Negotiable Instrument.

112.   If an enforceable transaction can be proven, McKeever was deceived into such transaction without notice that she were encumbering the property as a "Security" under the Rules and regulations of the Securities and Exchange Commission. With the securitization of the debt and its placement into a SPV.

113.   Deutsche does not hold, bear or own the original Note, is not a Mortgagee and has no legally enforceable interest in the loan or standing to file this action.

114. The Note as Exhibit "A" bears no relationship to Deutsche.   There is no endorsement to Deutsche or any other party.   It is legally irrelevant and will remain so until and at which time the original is presented for the Court and other parties. Deutsche and Dinsmore have had the arrogance to ask a Federal Court to order the Foreclosure of McKeever farm and ostensibly cash a check written to BBG.

115.   The alleged Assignment of the Mortgage to Deutsche from MERS contains legally fictitious signatures of an officer of the corporation and have been fraudulently affixed to such by an unknown party alleging to be a representative of MERS.

116.   The alleged Assignments of the Note and Mortgage are believed to be forged instruments and if those forged instruments have been uttered or published into the public record, Mortgage Fraud and Forgery violations have occurred.

117.   The claim violates Rule 11 of the Kentucky Rules of Civil Procedure, is based in fraud and violates the multitude of state and federal laws.   Additionally and upon examination of its own records, the Court will find that in the majority of the foreclosure

actions filed in the "post-securitization" years of 2007, 2008, and 2009, Deutsche obtained judgments and removed families from their homes by Default. When the parties and the documents submitted therewith are examined on their face en mass, the records in the cases will reveal that the majority were based in fraud and violate Rule 11. Where the debt has been insured by a derivative contract and collected upon, Deutsche has received a second fraudulent "double dip" by collecting on the debt twice.

118. It is asserted that the Law Firm initiating this action, Dinsmore and Deutsche, have conspired with each other and their other agents and principals to file a false and fraudulent Foreclosure Action. It is asserted that such action is part of the Law Firm's regular practice and procedure, whereby it engages in systemic fraud across the Commonwealth of Kentucky, in conspiracy with its clients.

119. Any provable transaction between McKeever, Deutsche and MERS was a "federally related mortgage loan" within the meaning of the Real Estate Settlement Procedures Act ("RESPA") at 12 U.S.C. Sec. 2602(1). At all times relevant, the transaction has been subject to the requirements of RESPA. The funding of the transaction was a "settlement service" as defined in RESPA at 12 U.S.C. § 2601(3).

120. During the origination of the loan, the Lender, RALI/RFC, MERS, the Broker, BBG, and Deutsche, and possibly the Title Company, conspired together commit illegal acts pursuant Federal and State law.

121. All Assignees, and Agents of such are Jointly, Several, & Vicarious Liable pursuant to 15 USC § 1641. Additionally, all Assignees and Agents are liable for set off claims.

122.   MERS has conspired with its agent and principals to serve as a false and illegal Mortgagee as well as create a false public record and Title Slanderer.

123.   All Assignees, and Agents of MERS are Jointly, Several, & Vicarious Liable pursuant to 15 USC § 1641.   Additionally, all Assignees and Agents are liable for set off claims.

124.  Moreover, the so-called "bogus note" submitted with this Complaint and other Deutsche "lost note" Complaints, filed by the thousands in the past three (3) years in Kentucky, present issues of more interest than the basic enforcement of the Uniform Commercial Code.    When a Court Orders the Foreclosure and Order of Sale on Kentucky real estate, based solely on sham pleadings, the entire community is affected as well as the home owner.    If a Kentucky citizen sat through the average foreclosure chocked Circuit Court Motion docket, in any given County, he would see that very few, foreclosures are defended.    Therefore, most Kentucky families lose their property and their homes by default, regardless of whether the foreclosing entity has any rights in the debt.1

125.  In other jurisdictions, such as Ohio, New York and Florida, the judiciary has taken upon itself to recognize its duty to protect its property owners and communities from illegal Foreclosures, especially when the property owner is not represented by counsel and a Foreclosure by Default has been requested.   Judge Boyko's now oft cited and infamous tongue lashing decision in the *In Re Foreclosure Cases* is attached hereto and incorporated herewith as Exhibit "A."    Ohio, Florida, New York, and California have adopted *Certificate of Readiness Orders* wherein the Plaintiff in a Foreclosure must

---

1   Since Foreclosure defense has not proved financially lucrative for attorneys, most property owners are left out in the cold and without legal representation.

prove with documentation to the Court it has standing to sue and that formal loan modification efforts have failed. Additionally, these Courts have wisely recognized that Rule 11 sanctions are warranted in such circumstances where attorneys have knowingly appeared with a client who lacks standing or who is not in possession of the original Note and has a valid mortgage registered in its name at the time the foreclosure is filed.

126.  In today's environment, in which mortgage notes are freely traded, and serve as collateral for various investment vehicles this "owner of the claim issue" is more important than ever to families facing the loss of their home:

(a) To determine whether the Note and Mortgage have been bifurcated and issued to separate entities, making neither enforceable;

(b) to determine whether a real "holder" or "bearer" of the Note even exists;

(c) to determine whether the debt has been paid in a credit default swap (Insurance Policy) a derivative contract, or by the Servicer under a Pooling Agreement;

(d)  to determine that if the Note was in fact "securitized," hence becoming a "Security" it was no longer a Negotiable Instrument/Mortgage Note and under Kentucky law, was paid in full, has been satisfied and is no longer enforceable as a Mortgage Note; and

(e)  are entitled to have Mortgages declared void and titles quieted whenever mortgages have been recorded in the name of the entity MERS.

## CAUSES OF ACTION

### COUNT I.
### Breach of Contract and Rescission

The Homeowner McKeever adopts, affirms and reiterate each and every allegation set forth in Paragraphs 1 through 126 and for her cause of action state the following:

43

127.    The Defendants, jointly and acting with knowledge and in concert materially breached the express and implied contracts pursuant to the Loan Agreement and Mortgage, by their acts and omissions including, but not limited to:   Notice that the loan was table funded, was meant to be securitized and placed in an MBS, TILA, RESPA, and the disclosure of the "Real Parties in Interest;" and for the multitude of the violations of the aforementioned Statutory Acts contained and attested to herein.  The Plaintiff, if ever proven an "assignee" of the contract, is liable for violations of the breach of contract and all damages stemming from such.

128.    The Defendants "materially" breached the express and implied contracts pursuant to the Loan Agreement and Mortgage, by their acts and omissions including, but not limited to:   The consummation and disbursement of the Loan without the issuance of a Notice of Right to Cancel and other TILA disclosures to the Homeowners; by the concealment of the "Real Parties in Interest;" by the fraudulent back dating and the loan documents and mortgage; through their conspiracy and fraudulent acts in relation to the identity of the True Lender and Mortgagee, securitizing the Note without notice to the Homeowners; converting a Negotiable Instrument into a non-negotiable Security, premature disbursement of funds on an unexecuted Note and for the multitude of the violations of the aforementioned Statutory Acts contained and attested to herein.   The Note is null and void and has been legally rescinded for the material breach of contract.

129.    THE CONFIDENTIAL SETTLEMENT AGREEMENT:    The Defendants, Allen, Herron and the Bank materially breached the express and implied contracts pursuant to the Confidential Settlement Agreement,   by their acts and omissions including, but not limited to:   Their actions of fraudulently inducing McKeever to enter

44

into an Agreement, wherein the Bank was never the true lender and the concealment of material facts which, if known would have prevented McKeeever from entering into the Agreement; and the material breach of such whereby Allen and Herron voluntarily and with malice placed the document in the public record through a Federal lawsuit for which they were not a party, nor were they in privity with a party or acting as an agent on a party's behalf, wherein the Confidentiality clause of the Agreement was negated thereby negating the contract in its entirety. The Settlement Agreement is null and void and is legally rescinded. The Homeowners have suffered damages and request that the Court declare the Contract rescinded. Punitive damages are warranted.

## COUNT II
### Violations of the Truth in Lending Act, 15 U.S.C. § 1601

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 129 and for her cause of action state the following:

130. The Defendants have jointly and severally violated the strict liability and remedial statute, namely, TILA, 15 U.S.C. § 1601 *et seq.,* and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1 *et seq.,* by failing to clearly and accurately provide the Homeowners with most of the required material disclosures under the Act, including, but in no way limited to, the receipt of a Notice to Cancel/Rescind, the conspicuous disclosure of the prepaid finance charges as defined by 15 U.S.C. §§ 1602(u), 1635(a), 12 C.F.R. § 226.23(a)(3), 15 U.S.C. § 1605(a), and 12 C.F.R. § 226.4; the payment of a mortgage broker fee that should have been included in the finance charge; as well as the deliberate concealment of the true identity of the Lender and Mortgagee. Moreover, the received by the Homeowners were materially inaccurate. 12 C.F.R. § 226.23(g)(1).

45

131.   The core purpose of the Act, which is to assure a meaningful disclosure of credit terms, including the identity of the real party in interest with which the Agreement is made, and the requirements of such, have been deliberately frustrated and violated by the Defendants.   Said violation entitled the Homeowners to rescind the Mortgage under the Act and receive a refund of all finance charges paid to date.

132.   In mortgage refinancing transactions, TILA provides borrowers a three-day period in which they can rescind their loans and the borrowers are to receive Notice of Right to Cancel in writing.   15 U.S.C. § 1635(a).(fn14).   When the Lender does not comply with TILA's notice and disclosure requirements, the borrower has a three-year right of rescission period. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(3).   The transaction was rescindable pursuant to the Act and the disclosures should have been made to each consumer who had the right to rescind.   Those disclosures were not made to either McKeever or the Mortgagor, Haffey.

133.   The Mortgage was timely and lawfully rescinded by The Homeowners and the rescission demand has been ignored by the Defendants, contrary to the requirements of the Act. The Rescission Statute was intended to be self-enforcing, failure to comply with the rescission is a de facto violation of the Act.   Damages are based on a strict liability standard. The Act and Regulation Z make it clear the security interest and obligation to pay charges are automatically voided.   Courts do not have equitable discretion to alter substantive provisions of TILA.   The Court's modification authority extends only to the procedures specified by section 1625(b).   The voiding of the security interest is not a procedure under the statute and has occurred ab initio.   The statute, at section 1635(b) states: "When an obligor exercises his right to cancel…, any security interest given by the

46

obligor… becomes void upon such rescission".   The failure of the Defendants to timely fulfill the rescission and finance charge reimbursement requirements under the Act, has created an additional and separate claim  under the Act.  The Homeowners have suffered injury as to the additional separate claim.

134.   In addition to canceling the security interest and mortgage, rescission canceled any liability of McKeever to pay finance and other charges, including accrued interest, points, broker fees, closing costs. The Defendants must refund all finance charges and fees paid.   As of October 15, 2008, McKeever was no longer obligated to pay finance charges and fees to any entity under the terms of the Note. The "lender" failed to respond within twenty (20) days to the notice of rescission, on or before November 4, 2008 and a clear title in relationship to the Defendants, vested in the Homeowners and they are no longer required to pay the loan.   The Homeowners have suffered damages as a result of the violations of the Act and seek damages, statutory penalties, punitive damages, and attorney's fees, for the multitude of TILA violations suffered at the hand of the Defendants, and seek an Order from this Court refunding all finance charges and fees previously paid, an Order recognizing the fact that the Defendants have no standing to collect or foreclose and shall Cease and Desist from attempting to collect on the Note or attempting to enforce the Security Interest, and an Order  releasing the Mortgage as a matter of law.

## COUNT III.
## Violations of the Home Ownership and Equity Protection Act 15 U.S.C. § 1639 and KRS 360

The Homeowners adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 134 and for her cause of action state the following:

135.    The Homeowners' Loan and Mortgage was a high-rate mortgage as defined by HOEPA and KRS 360.    The Defendants failed to make additional disclosures regarding the loan, in violation of HOEPA, 15 U.S.C. § 1639 *et seq.* The claim is timely filed under 15 U.S.C. § 1635(f).    HOEPA, required the defendants to disclose additional information at least three business days prior to the closing of the loan as a high-rate loan. 15 U.S.C. § 1639.    The Act was violated as to the default interest rate, balloon payments, negative amortization, prepaid payments, and improvident lending.    15 U.S.C. § 1639(c)-(h); 12 C.F.R. 226.32(d).    The failure to deliver the required HOEPA notice or inclusion of a prohibited term triggers an extended three-year right of rescission pursuant to 15 U.S.C. § 1639(j); 12 C.F.R. 226.23(a)(3).    The violations give rise to "enhanced" monetary damages under 15 U.S.C. § 1640(a)(4), constituting a refund of all payments made by the borrower.    The Defendants failed to materially comply with the disclosure requirements, and the Homeowners seek damages jointly and severally against the Defendants and rescission pursuant to 15 U.S.C. § 1640 and for the violations Kentucky's Predatory Lender Act .    At all times relevant hereto, all named Defendants, while acting alone or in concert in an illegal conspiracy, met the definition of "Predatory Lender."

## Count IV.
## Violations of the Real Estate Settlement Procedures Act 12 U.S.C. § 2601

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 135 and for their cause of action state the following:

48

136.    RESPA Prohibits providers of settlement services paying referral fees and kickbacks, engaging in fee splitting, or charging for settlement services other than for services actually provided. See 12 USC § 2607.   There were undisclosed fees collected at the closing of the loan in violation of the Act.    There were Yield Spread Premiums ("YSP"s),  brokers commissions paid by the lender to the broker for arranging a loan at a higher interest rate than the par rate that the lender normally would have charged the borrower in violation of the Act. and understated certain finance charges by more than $35.00.    The withholding and misleading of information was in accordance with the standard business practices of the BBG, GMAC-RFC and MERS.    The Defendants principals and agents, including individual employees, such as Defendants Allen, Frye and Herron, and all are liable for jointly and severally for the violations.

137.   On October 15, 2008, the Homeowners gave notice in writing and served Servicing Agent, GMAC, by Certified Mail, a "Qualified Written Request" pursuant to 12 U.S.C. § 2601 *et seq.,* namely RESPA.   Said Request was ignored by the Defendants and the Defendants have failed to reply as required by RESPA.   The Lender's statutory duty to provide the requested information was triggered.   The duty was breached and the Act violated.   The failure to respond to the request constitutes a separate claim under the Act in addition to the actual violations of the Act surrounding the actual loan.    The Defendants are jointly and severally liable for such.    The Homeowners have suffered damages as a result of the violations of RESPA and seek damages, statutory penalties, punitive damages, and attorney's fees, for the multitude of RESPA violations suffered at the hand of the Defendants, and seek an Order from this Court requiring the information contained in the Request be submitted to this Court and made part of the record.

138.    Upon information and belief, money was disbursed, other than in an escrow account, services were performed and materials delivered on or before May 18, 2007, before the statutory rescission period had expired, and before the Loan and Mortgage were legally executed and in violation of RESPA and other related statutes.    Upon information and belief, disclosed and undisclosed parties were funneled money and paid undisclosed fees and kickbacks in relationship to the transaction  The HUD-1, relative to the transaction is materially inaccurate and based in fraud.

**COUNT V.**
**Defamation of Title**

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 138 and for her cause of action state the following:

139.    On October 15, 2008, the fraudulently concealed and unknown True Lender, and/or holder of the original Promissory Note, executed on May 18, 2007, became an unsecured creditor as a matter of law; when the transaction was rescinded.   The MERS Mortgage was a blight on McKeever's title the day it was filed.    Although McKeever contends that MERS's assignment to Deutsche is a legal nullity, the assignment, if recorded, acts as the same blight.

140.    MERS, the Mortgagee listed on the Mortgage attached to the Complaint, was illegally and fraudulently listed in the public record as a Mortgagee, having no pecuniary interest in said property and no standing to ever collect upon or enforce a debt connected to the property.  Any proposed post-foreclosure Assignments from MERS to the Plaintiff or any other entity are a legal nullity and if placed in the public record, were based in fraud and subject to prosecution.

50

141. An action to Quiet Title has been pending before this Court since November 2008. Deutsche has no legally enforceable claim, interest or standing to sue as to the Note or Mortgage in question and the claim is a cloud on McKeever's title and should be quieted as against Deutsche and MERS. Damages in the amount of the market value of the property are warranted.

## COUNT VI.
### Violations of the Fair Debt Collection Practices Act 15 U.S.C § 1692 and the Fair Credit Reporting Act 15 U.S.C § 1681

The allegations of paragraphs 1-141 are incorporated herewith as if they were fully stated herein.

142. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt…" including the "false representation of … the character, amount, or legal status of any debt…" and the "treat to take any action that cannot legally be taken."

143. The foreclosure action violates the Act as to the following: (a) false, misleading representations as to the Plaintiff's standing to sue and the Plaintiff's interest in the debt, (b) the Plaintiff falsely represented the status of the debt, that it was due and owing to the Plaintiff, that the Plaintiff had any rights in the Mortgage, and that the debt was in default, having been previously paid in full. (c) engaging in collection activities as a trustee which were illegal and (d) obtained access to Kentucky and Federal Courts to collect on Note and Mortgages under false pretenses as a bogus "trustee."

144. BBG, GMAC-RFC and MERS conspired to fraudulently conceal the "True Lender" at closing, and the Note was securitized and converted into an investment vehicle within a Special Purpose Vehicle (SPV). McKeever has received a Foreclosure

51

action from a party with no standing and which was filed by a Law Firm which routinely engages in the filing of such. Deutsche is fraudulently and illegally attempting to collect on the Note, and report such debt in a negative fashion to credit reporting bureaus, and is liable for damages and sanctions for its violation of the Federal Fair Debt Collection Practices Act, hereinafter ("FDCPA"), the Federal Fair Credit Reporting Act, hereinafter ("FCRA").

145. The transaction consummated on May 18, 2007, was rescinded on October 15, 2008. The rescission notice was sent along with the RESPA Qualified Written Request, which requested a full accounting of the transaction and a refund of all fees paid. Deutsche is fraudulently and illegally attempting to collect on the Note at this time. Deutsche is liable for statutory damages and Rule 11 sanctions for their violation of the Federal Fair Debt Collection Practices Act, hereinafter ("FDCPA"), the Federal Fair Credit Reporting Act, hereinafter ("FCRA"). Dinsmore, Fornshell and Zimmerman have violated the acts as "debt collectors" for Deutsche and GMAC-RFC. McKeever reserves the right to Amend this cause of action in the future and to name Dinsmore, Fornshell and Zimmerman as Third Party Defendants, upon completion of their depositions and discovery.

## COUNT VII.
### Violations of Kentucky Consumer Protection Act KRS 367.170

The Homeowner affirms, and reiterates the allegations of paragraphs 1-145 and they are incorporated herewith as if they were fully stated herein.

146. KRS 367.170 states "(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. (2) For the purposes of this section, unfair shall be construed to mean unconscionable."

147.   BBG, GMAC-RFC, Deutsche and MERS' actions in from the inception, where the loan was never meant to be a Mortgage Loan with BBG, but a pre-sold Security for the benefit of GMAC_RFC and Deutsche; to GMAC-RFC, Deutsche and Dinsmore's coverup of the nature of the loan and the filing of two separate lawsuits with two separate parties claiming to be the "owner" of the Note to the attempted foreclosure before the Court today, which was filed in spite of the fact that this Court has yet to rule on the Rescission and Quiet Title in the consolidated cases.    These acts are clearly "unconscionable" unfair, false, misleading and unconscionable and deceptive practices in violation of KRS 365 and 367.170.   Until a jury sends a clear message through trial, this unconscionable behavior will continue against other unsuspecting homeowners, who do no have the benefit of legal counsel.

148.    Violations of TILA, HOEPA, RESPA, FDCPA and FCRA constitute per se violations of the Act.    The foundation of the Unfair Fair Trade Practice is fraud prevention.    McKeever justifiably relied on BBGs', Allen and Frye's fraudulent oral statements as to the transaction and on the authenticity and truthfulness as to the identity of the parties, the truthfulness of the documents and public record created by MERS, the accurate and truthfulness of the information and dates on the transaction documents and the disclosure of the "true" identity of the parties and the "true" actual terms of the transaction.

149.   McKeever has been injured by the Defendants violation of the Act.   All named Third Party Defendants acted in concert to violate the act and all are jointly and severally liable to McKeever for the violations of such.    The statute allows for the award of

punitive damages and the violations of such constitute a separate violation under RICO and Kentucky's comparable statute.

### COUNT VIII.
### Breach of Fiduciary Duty

The Homeowner affirms and reiterates the allegations of paragraphs 1-149 and they are incorporated herewith as if they were fully stated herein.

150.    By May 2007, a longstanding history existed and a relationship had been established between BBG, Allen, Herron, and The Homeowners.   Over the years from 2001, there had been multiple in-house interest only loan transactions and lines of credit, between the Bank and the Homeowners; on which a relationship of trust and confidence had been built and which created a Fiduciary Relationship.   In fact many transactions were performed over the phone.   All transactions between BBG and the Homeowners were handle personally by Allen and Herron and with Allen's predecessor before him.

151.    The Fiduciary Relationship imposed a duty upon the bank to act in good faith and to fairly represent the Homeowners' interests as borrowers.   The Bank owed a Fiduciary Duty to The Homeowners to disclose material facts affecting the loan transaction.   The Bank was in a relationship with the Homeowners that was based on a high level of trust and confidence.   The facts as attested herein and the documentary evidence show that the Bank, Allen, Herron and Frye breached their affirmative duty to the Homeowners which existed by and through the Fiduciary Relationship.

152.    However, as to the May 18, 2007 transaction, BBG acted as a "pretender lender" and was hence, an agent of GMAC-RFC and/or some other concealed entity and MERS.   Under the facts as so attested, GMAC-RFC and MERS stood in the shoes of BBG for the May 18, 2007 transaction and hence have become a two headed monster of

sorts with BBG in that  BBG, Allen, Herron, Frye, MERS and GMAC-RFC are jointly
and severally liable for the breach of the Fiduciary Duty and all damages stemming from
such.

## COUNT IX.
### Fraud by Misrepresentation

The Homeowner adopts, affirms and reiterates each and every allegation set forth in
Paragraphs 1 through 152 and for their cause of action state the following:

153.    The deceptive acts of the Defendants as to a multitude of misrepresentations
in the execution of the loan; including, but not limited to the true identity of the Lender
and Mortgagee, falsified documents, and backdated documents constitute fraudulent
misrepresentation. The record shows, by clear and convincing evidence, that there existed
in the inducement and execution,  material representations which were false, were known
to be false or made recklessly, which were made with inducement to be acted upon; that
the Homeowners acted in reliance thereon and have suffered injury due to such.   The
facts as attested herein, and the documentary evidence shows that the deceptive acts of
the Defendants constitute fraudulent misrepresentation and the Defendants are jointly and
severally liable for their acts of fraud by their misrepresentation and all damages
stemming from such, including punitive damages and attorney's fees.

154.    Fraud by misrepresentation was also present from the beginning with Dinsmore
and Fornshell's representations that they represented McKeever's creditor and continue
today in the public record with the filing a Declaratory Judgment in the name of GMAC
and the subsequent filing of a Foreclosure claiming that each of their clients is entitled to
standing simultaneously.

## COUNT X.

## Fraud by Omission

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 154 and for her cause of action state the following:

155. The facts and documentary evidence show that BBG had a duty to disclose material facts, knowingly failed to disclose those facts, that the failure induced the Homeowners to act, and the Homeowners suffered actual damages due to the fraudulent omissions.

156. Prior to and leading up to the May 18, 2007 closing, the Defendants had a duty to disclose the true nature of their relationship and the fact that BBG was merely a "Pretender Lender" and thus, a agent for the Concealed and Unknown Lender. The Defendants fraudulently omitted to reveal to the Homeowners the fact that the Mortgage had been bifurcated and separated from the note and had been assigned to the unrelated foreign entity, MERS. The Defendants, knowingly and with the intention to deceive omitted to disclose the fact that loan had been securitized and was pledged to a SPV before the transaction took place. If the Defendants had not fraudulently omitted the true nature of the transaction, McKeever would have never signed the Note or Mortgage.

157. As to the Confidential Settlement Agreement, the facts and documentary evidence show that the Bank had a duty to disclose material facts, failed to disclose those facts, that the failure induced McKeever to act, and the Homeowners suffered actual damages due to the fraudulent omissions.

158. The Lender conspired to fraudulently conceal the "True Lender" at closing, and the Note may have been securitized and converted into an investment vehicle within a Special Purpose Vehicle. The Lender, the Plaintiff and MERS had a duty to disclose

56

material facts, failed to disclose those facts; and that failure induced the Moodys to act, and they have suffered actual damages due to the fraudulent omissions. The parties had a duty to disclose the true nature of their relationship and the fact that the Lender was merely a "Pretender Lender" and thus, the agent for the Concealed and Unknown Lender. The failure to disclose the material facts, induced the Moodys to enter into a loan with unknown and unrevealed entities and he has suffered actual damages as a direct result of Fraud by Omission. The plaintiff and MERS are jointly and severally liable for their acts of Fraud by Omission and all damages stemming from such.

## COUNT XI.
## Fraud by Inducement

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 158 and for her cause of action state the following:

159. The failure knowingly to omit material facts, and the fact that facts were intentionally and knowingly misrepresented with the intent to defraud and deceive, induced the Homeowners to enter into a loan with unknown and unrevealed entities and the Homeowners have suffered actual damages as a direct result of Fraud by Inducement. The Defendants are jointly and severally liable for their acts of Fraud by Inducement and all damages stemming from such.

## Fraudulent Inducement into a Joint Venture by co-conspirators

160. In May of 2007, the Defendants jointly and severally withheld vital information from McKeever by concealing and lying about the true nature of her line of credit re-financing transaction. The transaction was never intended as a Mortgage loan, but was instead, a scheme to obtain McKeever's signature as a vehicle for the issuance of an unregulated security. McKeever's signature was obtained under false pretenses.

57

McKeever believed she was issuing of an instrument intended to be conveyed and held by BBG as a negotiable instrument. McKeever allowed a mortgage to be taken on her farm, and relinquished a line of credit which had been saatisfactorily in place with BBG for many years.

161. McKeever was fraudulently induced to give her signature to create a "Security" as defined by the Securities and Exchange Commission. The Defendants acted with full knowledge and conspired together to induce McKeever into signing the transaction. The Defendants failed to disclose the right to rescind under securities laws.

162. In addition to being a Mortgage loan as defined by TILA, the transaction was a securities transaction under the single transaction theory. The primary purpose of obtaining McKeever's signature was not to create an asset (i.e., a loan that would be repaid) but rather to fill in the blanks in order to place the loan number onto a list inside a MBS and to legitmize the 8k filing with the SEC so that the MBS could be sold to investors. The true value and nature of the "asset" was concealed so that investors would be misled into thinking that the MBS deserved its triple AAA rating and that insurance from AIG could be obtained and/or the MBS could be hedged through unregulated CDS vehicles. The Defendants' sole economic incentive on May 18, 2007, was to achieve a fees, commission and bonuses by creating a SEC defined Security and creating the delusion that their MBS fund was outperforming the market.

163. All the Defendants were involved in the inducement and securitization process, as conspirators in a joint venture. BBG served as the "front man", enticer, while GMAC-RFC was the lender and securitzer, RALI, funded the pools of loans backing the

securities,and which were sold to investors, and managed by Deutsche; and which Mortgages were publicly and illegally held by MERS.

164. It is contended that Deutsche and the other Defendants have joinnt liability as co-conspirators, under RICO, regardless of whether they were physically sitting at the closing table as they were calling the shots for BBG for the fraudulent inducment.

## Fraud by BBG as to the Fraudulent Inducement of a Confidential Settlement Agreement

165. The deceptive acts of the Defendants as to the inducement of McKeever to enter the Confidential Settlement Agreement and as to a multitude of misrepresentations in the execution of such; including, but not limited to the true identity of the Lender and Mortgagee, the Securitization of the Note, falsified documents, and backdated documents constitute fraudulent misrepresentation. The record shows, by clear and convincing evidence, that there existed in the inducement and execution, material representations which were false, were known to be false or made recklessly, which were made with inducement to be acted upon; that McKeever acted in reliance thereon and the Homeowners have suffered injury due to such. The facts as attested herein, and the documentary evidence shows that the deceptive acts of the Defendants constitute fraudulent misrepresentation as to the Confidential Settlement Agreement and the Defendants Allen, Heron and the Bank are jointly and severally liable for their acts of fraud by their misrepresentation; injunctive relief as to the voiding of the Agreement is warranted as well as all damages stemming from such, including punitive damages and attorney's fees.

**COUNT XII.**
**Conspiracy and Violations of the Racketeer Influenced and Corrupt**
**Organizations Act 18 U.S.C. § 1961 and KRS 506.040**

The Homeowner affirms and reiterates the allegations of paragraphs 1-165 and they are incorporated herewith as if they were fully stated herein.

166.    At all times relevant hereto, agreements were made by and between BBG, GMAC-RFC, RALI, Deutsche and MERS to deceive the Homeowners; and to break Kentucky and Federal law. It is McKeever's contention that each and every cause of action and the facts tied there could only beeen achieved by and through a legally definable conspiracy and that the actions of the Defendants constitute ata least twelve separate acts of the conspiracy.

167.    The Defendants colluded together to achieve unlawful aims by unlawful means. The Defendants, as co-conspirators, took overt steps to accomplish their illegal acts and have clearly demonstrated their _intention_ to break the law; thereby "breathing together" in their fraudulent and illegal acts. The entities engaged in a "Racketeering Activity" as defined by _18 U.S.C. § 1961,_ ("RICO").

168.    Upon information and belief, Defendants Deutsche, GMAC-RFC, RALI and MERS conduct constitutes a pattern of corrupt activity pursuant to RICO. Together as a team, they have maintained more than two and as the public record dictates thousands of foreclosures in Kentucky under the fraudulent and misleading circumstances as fully outlined in this Claim.

169.    Through the filing of foreclosure under false pretenses and in violation of Kentucky and Federal law, Deutsche, GMAC-RFC, RALI and MERS with the assistance of the foreclosure factory law firms, who knowingly file the fraudulent actions, Deutsche

has acquired an illegal interest and illegally repossessed thousands of Kentuckian's homes. The practice continues today with a "certifiable class" in the millions nationwide.

170. RICO entitles the title holders McKeever and Haffey to treble damages. As a result of the conspiracy's illegal conduct, the title holders have been injured and as a result and are entitled to any and all relief jointly and severally from all the named Defendants for their particpation in the Criminal conspiracy, and violations under RICO and the comparable Kentucky Act, KRS 506.040.

## COUNT XIII.
## Violations of the Kentucky Financial Services Code KRS 286

The homeowner affirms and reiterates the allegations of paragraphs 1-170 and they are incorporated herewith as if they were fully stated herein.

171. BBG was at all times relevant hereto obligated to the statutory mandates of KRS 286. However, the obligation under the Note and Mortgage was unwittingly made with a concealed and unknown "Lender." The "True Lender," namely GMAC-RFC and Mortgagee, MERS, are not registered, chartered or licensed to operate as a "Bank" and "Lender" as defined by KRS 286. GMAC-RFC and MERS were operating by and through BBG and is operating illegally as a Financial Institution engaged in business in Kentucky. GMAC-RFC and Mortgagee MERS, operate and continue to operate fraudulently and illegally in violation of the Code. The Homeowners have suffered injury and damages as a result of those violations. The Plaintiff, is proved the "true lender" is also operating as an illegal "bank" and if ever proven an "assignee", is liable for the violations jointly and severally as a conspirator in the joint venture.

172. BBG, GMAC-RFC and MERS in their conspiracy, are responsible for the breach of the existing Fiduciary Duty between McKeever and BBG as the lender. Said

duty was breached by falsifying loan documents, knowingly placing borrower in a

Mortgage with a much higher interest rate than she would otherwise qualify.  In concert

and together BBG, GMAC-RFC and MERS engaged in acts of fraud for the procurement

of the loan including but not limited to false information as to the Loan Application,

appraisal, the acceptance of yield spread premiums and other kickbacks, violate certain

Kentucky Revised Statute and there act as negligence per se, pursuant to KRS 286.8-220

and KRS 446.070; as well as act as the factual grounds for claims based in breach of

contract.  The claim entitles McKeever to file a claim for $250,000.00 on BBGs lender

Bond and $50,000.00 Broker's Bond with the Office of Financial Institutions pursuant to

KRS 268.8-060.   If BBG, GMAC-RFC, or MERS have failed to  put up the required

Bond, punitive damages may be awarded under the Act.

### Count XIV.

### Violations of the Kentucky Residential Mortgage Fraud Act KRS 286.8-990

The Homeowner affirms and reiterates the allegations of paragraphs 1-172 and they

are incorporated herewith as if they were fully stated herein.

173.   KRS 286.8-990 states:

> (2) A person is guilty of residential mortgage fraud when, with the intent
> to defraud, that person does any of the following in connection with the
> mortgage lending process:
> (a) Employs a device, scheme, or artifice to defraud;
> (b) Engages in any act, practice, or course of business that operates or
> would operate as a fraud or deceit upon any person;
> (c) Fails to disburse funds in accordance with a loan commitment;
> (d) Knowingly makes or attempts to make any material misstatement,
> misrepresentation, or omission within the mortgage lending process with
> the intention that a mortgage lender, mortgage broker, borrower, or any
> other person or entity involved in the mortgage lending process relies on
> it;
> (e) Knowingly uses or facilitates or attempts to use any misstatement,
> misrepresentation, or omission within the mortgage lending process with

the intention that a mortgage lender, borrower, or any other person or
entity involved in the mortgage lending process relies on it;
(f) Receives or attempts to receive proceeds or any other funds in
connection with a residential mortgage closing that the person knew, or
should have known, resulted from a violation of paragraph (a), (b), (c),
(d), or (e) of this subsection;
(g) Knowingly causes to be filed with the executive director or in any
proceeding under this subtitle any document that is, at the time and in the
light of the circumstances under which it is made, false or misleading in
any material respect; or
(h) Conspires or solicits another to violate any of the provisions of this
subsection.
(3) It shall be sufficient in any prosecution under this section for
residential mortgage fraud to show that the party accused acted with the
intent to deceive or defraud. It shall be unnecessary to show that any
particular person or entity was harmed financially in the transaction or that
the person or entity to whom the deliberate misstatement,
misrepresentation, or omission was made relied upon the misstatement,
misrepresentation, or omission.

174.   All named Defendants conspired together and acted in concert under the facts as

previously set out in both the fraudulent inducement and subsequent dispersal of the

original transaction and the bifurcation and transfer of the Note and Mortgage. Their

fraudulent attempt to enforce such is an act of fraud and a violation of the Act as to

sections (2)(a-h).   Although damages have been suffered, a statutory violation has taken

place regardless as the parties committed the violations of the Act with the "intent to

deceive or defraud."

## Count XV.
### Forgery in the second degree KRS 516.030

The Homeowner affirms and reiterates the allegations of paragraphs 1-174 and they

are incorporated herewith as if they were fully stated  herein.

175.  Under KRS 516.030:

(1) A person is guilty of forgery in the second degree when, with intent to
defraud, deceive or injure another, he falsely makes, completes or alters a
written instrument which is or purports to be or which is calculated to
become or to represent when completed:

(a) A deed, will, codicil, contract, <u>assignment, commercial instrument,</u> credit card or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or

(b) A public record or an instrument filed or required or authorized by law to be filed in or with a public office or public employee.

(emphasis added.)

176.    MERS, an entity not licensed to engage in the practice of mortgage lending, committed forgery as to both subsections (1)(a) when it placed a Mortgage into the records of the Fayette County clerk for which it had no pecuniary right rights or interest in the Mortgage Note and (1)(b) when it forged an assignment on behalf of the bankrupt American Home Mortgage to the Plaintiff.    Deutsche violated the statute upon the recording of the Mortgage. Both entities are liable for the damages resulting from their acts and constitute a separate act of conspiracy under RICO

<u>Count XVI.</u>
<u>Criminal possession of forged instrument in the second degree KRS 516.060</u>

The homeowner affirms and reiterates the allegations of paragraphs 1-176 and they are incorporated herewith as if they were fully stated herein.

177.    "(1) A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in KRS 516.030." Further, "(2) Criminal possession of a forged instrument in the second degree is a Class D felony."

178.    Deutsche is in criminal possession of at least two (2) separate forged instruments, Mortgage and a Mortgage Assignment.    They will be in possession of a third should the original promissory ever be produced.    Deutsche has attempted to utter, publish and pass the Mortgage, assignment and a copy of a Note (which lacks Deutsche's

name) as true.    Deutsche took possession of a Mortgage which according to its Complaint, is in default. That Mortgage, was fraudulently placed in the public records by MERS.  Deutsche is in possession and has published as true the forged  Assignment of said "defaulted" Mortgage and is in violation of the Act.

### COUNT XVII.
### Violations of the Kentucky Financial Services Code KRS 286

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 178 and for her cause of action state the following:

179.   The Homeowners' loan was obtained and based in deception and fraud.   The obligation under the Note and Mortgage was unwittingly made with a concealed and unknown "Lender."    The "True Lender" is not registered, chartered or licensed to operate as a "Bank" and "Lender" as defined by KRS 286 and is operating illegally as a Financial Institution regularly engaged in business in Kentucky.    The "True Lender" operated and continues to operate fraudulently and illegally in violation of the Code. The Bank conspired with the True Lender to operate a Financial Institution in violation of the Act.

180.   The Defendants had a fiduciary duty to the Homeowners in originating the loan.    That Fiduciary Duty was breached by falsifying loan documents, knowingly placing borrower in a Mortgage with a much higher interest rate than she would otherwise  qualify and which could help reasonable facilitate a default based on income; engaging in other acts of fraud for the procurement of the loan including but not limited to false information as to the Loan Application, appraisal, the acceptance of yield spread premiums and other kickbacks, which violate KRS 286.8-990 Kentucky Residential Mortgage Fraud Act -- Provisions -- Criminal proceedings -- Penalties.

The Defendant's acts constitute negligence per se, pursuant to KRS 286.8-220 and KRS 446.070. The Homeowners are entitled to file an additional claim for $250,000.00 on the Lender's and $50,000.00 Broker's Bond with the Office of Financial Institutions pursuant to KRS 268.8-060. The Defendants acted in concert and were engaged in a conspiracy to perform the aforementioned acts and crimes as a separate cause of action pursuant to RICO.

## COUNT XVIII.
### Kentucky Usury Statute, KRS 360.020

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 180 and for her cause of action state the following:

181. A forensic examination of the HUD-1 and other TILA documents reveal violations of KRS 360.020 wherein the fees and interest actually collected are higher than the written disclosures dictate. Said violation provides for forfeiture of interest, damages and allows recovery of twice the interest actually paid.

182. The Securitization of the loan violates KRS 360.020's provision. As a result of the Securitization, the sum of the fees, interest and commissions to the various parties throughout the food chain total and have created an effective interest rate exceeding the legally allowable rate set by Kentucky law.

183. Defendants BBG, GMAC-RFC and MERS knowingly acted in concert in violating Kentucky's Usury law. An examination of the HUD-1 and other TILA documents reveals a conspiracy to violate KRS 360.020. Said violation provides for forfeiture of all interest and allows recovery of twice the interest actually paid. In the case at hand statutory damages under the statute are conservatively estimated at two hundred twenty-five thousand dollars ($225,000.00). As a separate act of conspirators

under RICO, treble damages will be applied to the interest paid by McKeever, seven hundred seventy-five thousand dollars ($775,000.00).

### COUNT XIX.
## The Quiet Title Action Precludes the Filing of This Action and the MERS Mortgage and Subsequent Transfer are a Legal Nullity and Based in Fraud

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 183 and for her cause of action state the following:

184. Despite the fact that a Quiet Title action has pending before this very Court against MERS since November , 2008, Defendants Deutsche, and Dinsmore filed a Foreclosure on a property in which they claim to have received an interest as of 2009. Dinsmore served as MERS' original attorneys in the Quiet Title action. There can be no factual dispute that both GMAC and Deutsch had notice of the action. Neither party made a claim in the Mortgage. The Assignment from BBG to MERS is fraudulently backdated to May 14, 2007, prior to the May 18, 2007 closing. The Mortgage was bifurcated from the Note before the Note was actually signed.

185. By registering the Mortgage, MERS gave (a) notice to the world that there would be act as fraudulent Mortgagee up so that transfers of the Mortgage could occur off record in violation of Kentucky law and (b) withheld the information on the recipients of those interests. At the time the loan was "closed" an immediate cloud on the title was created on the title rendering the deed unmarketable. MERS is not a named insured on the title policy. This raises the spectre of claims against the Title Insurance carrier who will no doubt claim that there is no coverage because of fraud. When the title insusrance carrier succeeds succeed, theQuiet Title's case in chief is proved again.

### COUNT XX.

## The October 15, 2008 Rescission of the Mortgage Precludes the Foreclosure and the Filing of the Foreclosure is Based in Fraud and Violates Rule 11

The Homeowner adopts, affirms and reiterates each and every allegation set forth in Paragraphs 1 through 185 and for her cause of action state the following:

186.    When McKeever and Haffey validly rescinded the Mortgage pursuant to 15 U.S.C. §1635, McKeever the Mortgage held by MERS was autoatically voided as a matter of law as of October 15, 2008.    Prior to the rescisssion and up and until the November payment was due, McKeever had never been late on a Mortgage payment on this or any other loan.    Upon the filing of the Declaratory Judgment, McKeever then learned that she had been "duped" by attorney Fornshell by his claim that he actually represented the real party in interest, namely the "creditor" and learned that the "creditor" had no intention of meeting for the proposed pre-litigation meeting at Fornshell's Cincinnati office.    McKeever deliberately and consciously refrained from making the November payment. In order to rescind the loan, the Movants, were required to follow the instruction of 12 C.F.R. § 226 *et seq*. ("Reg. Z"):

> (a) *Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.
> (2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

187.    As part of the Consolidated Cases, GMAC filed a Declaratory Judgment asking the Court to decide whether the Rescission was valid.    The Declaratory Judgement was filed outside the twenty (20) day period in which the Mortgage should have been released pursuant to Regulation Z.    GMAC's Standing was challenged by both McKeever and

Haffey in a Motion for Summary Judgment.   GMAC and Dinsmore enthisiastically defended its right to file the action.   At the time the Decalratory Judgment was filed and up and until November 2008, the Mortgage GMAC was claiming an interest in was registered to MERS.   MERS is NOT is party to the Declaratory Judgment action and has waived its right to participate.   A year later, Dinsmore filed a action on behalf of Deutsche, contradicting its executed pleading in the GMAC Declaratory Judgment case, claiming that it is Deutsche that has standing to have the Mortgage declared in default. During the year the consolidated cases have been pending, no demand for payment was ever made by any "creditor" until a default letter was sent out by GMAC a month prior to the Foreclosure action.  Deutsche is not listed as a creditor in the letter. The default letter claims that GMAC is the "creditor."    The Declaratory Judgment in Rescission filed by GMAC and the Declaratory Judgment in Foreclosure by Deutsche are now occurring simultanously.  This begs the question "were GMAC, Deutsche and Dinsmore lying then or are they lying now."

188.    Pursuant to Regulation Z it is the "creditor"  to whom the rescission is to be addressed and it is only the "creditor" who can bring suit.   McKeever will prove at trial that neither GMAC or Deutsche is a "creditor" or the real party in interest and that neither entity is entitled to nor will they ever be entitled to the benefits of the loan.  Dinsmore, GMAC and Deutsche had full knowledge of these facts and the applicable law and have chosen to ignore both, placing their signatures on the fraudulent pleadings in the two separate actions accordingly.

WHEREFORE, McKeever respectfully request and prays for the following:

1. That the Bank or the Party in Interest produce the original of the Note, which is the subject matter of this action, and that said original Note be kept in the custody of this Court;

2. That the Note and Mortgage be declared null and void by this Court, and that the Note be destroyed by this Court in the presence of the Homeowners;

3. That title to said land be quieted as to the Defendants in this action, the Mortgage canceled by Court Order, and the Fayette County Recording Clerk be Ordered to note in the public record that the Mortgage is released;

4. That the Homeowners be awarded all damages and equitable relief under the myriad of State and Federal Statutes which were and continue to be violated and be awarded damages and equitable relief for their Common Law Claims, said relief including, but not limited to:  Obtaining rescission, injunctive relief, redress,  restitution, disgorgement, monetary damages, statutory penalties and sanctions, damages for mental anguish, punitive damages, lost wages, pro se representation time reimbursement, attorney's fees and costs, and any and all other relief they are entitled to against the Defendants;

5. That the Defendants and any and all parties claiming an interest in the Note be forever barred and enjoined from asserting any claim to the subject property;

6. That Plaintiffs be declared the owner in fee simple and entitled to possession of the subject property free and clear of all encumbrances of the Defendants;

7. That all interest and fees paid on the Note to date be refunded pursuant to TILA's Regulation Z;

8.  That the Settlement Agreement of July 29, 2008, with BBG be declared rescinded, void and of no further effect.

9.  That a punitive damage and pro se "Attorney's fees" instruction be given to the jury and awarded;

10.  A trial by jury and;

11.  Any and all relief the Plaintiffs are entitled and which this Court finds just and equitable.

Dated:  February 8, 2010

Respectfully Submitted,

Heather Boone McKeever
3250 Delong Road
Lexington KY  40515
859-552-7388
kentuckyforeclosuredefense@insightbb.com
PRO SE DEFENDANT
COUNTER CLAIMANT
THIRD PARTY PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer was served by

hand delivery on the following on this the 9th day of February, 2010:

Hon. MacKenzie M. Walter
Dinsmore & Shohl, LLP
250 West Main Street Suite 1400
Lexington, Kentucky 40507

Heather Boone McKeever

C

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action 09-362)**

**GMAC MORTGAGE, LLC,**                                                      **PLAINTIFF,**

**V.**                              **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                            **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of several parties in an action

styled *Deutsche Bank Trust Company Americas v. Haffey, et. al.*, Lexington Civil

Action 09-362, which is part of this consolidated action. Specifically, Deutsche

Bank Trust Company, as trustee for the 2007 QS-10 Trust, and third-party

defendants GMAC, RALI, and RFC moved to dismiss the counter-claim and third-

party complaint (R. 33). For the reasons below, the court will grant the motion.

## I.    Background

This case is one of three pending consolidated actions involving property

located at 3250 Delong Road in Lexington, Kentucky.[1] Deutsche Bank brought this

foreclosure action against Heather McKeever and Shane Haffey, a married couple,

on November 9, 2009. Lexington Civil Action 09-362, R. 1. McKeever filed a

counter-claim and third-party complaint on February 9, 2010, naming Deutsche

---

[1] *See* Lexington Civil Actions No. 08-459, 08-510, and 09-362. Two other
consolidated actions, 08-456 and 09-255, have been dismissed.

1

Bank; GMAC Mortgage, LLC; Residential Accredit Loans, Inc.("RALI"); Residential

Funding Company, LLC ("RFC"); the Bank of the Bluegrass and several of its

employees individually ("BoB"); and Mortgage Electronic Registration Systems, Inc.,

and MERSCORP (collectively referred to as "MERS."). *Id.* at R. 17.

The instant third-party defendants, Deutsche, GMAC, RALI, and RFC, moved

to dismiss the counter-claim/third-party complaint on March 1, 2010. R. 33. To

date, McKeever and Haffey have not responded to this motion. On May 11, 2010,

well beyond the deadline for responding, McKeever moved (R. 55) for an extension

of time to respond to the motion to dismiss filed by the instant third-party

defendants and to respond to the motion to dismiss filed by BoB on May 4, 2010

(R.53). This court denied that request (R. 68) with respect to the motion to

dismiss by the instant third-party defendants (R. 33).

## II.    Analysis

### A.    *Res judicata*

McKeever's counter-claims against GMAC and Deutsche Bank are barred by

*res judicata.* Under federal law, a claim is barred by *res judicata* if the following

requirements have been met: (1) a final decision on the merits by a court of

competent jurisdiction; (2) a subsequent action between the same parties or their

privies; (3) an issue in the subsequent action which was litigated or which should

have been litigated in the prior action; and (4) an identity of the causes of action.

*Hudson v. The Springs Inn*, No. 05-cv-384, 2006 U.S. Dist. LEXIS 1008, at *5

2

(E.D. Ky. Jan. 12, 2006).

First, a prior order in one of the consolidated cases constitutes a final decision on the merits by a court of competent jurisdiction. In September 2009, the Honorable Karl Forester concluded that the plaintiffs' factual allegations regarding GMAC "[did] not even rise to the level of being 'consistent with a defendant's liability[,]'" and dismissed their claims pursuant to Fed. R. Civ. P. 12(b)(6). *See* Lexington Civil Action 08-510, R. 17 at 7 (citations omitted). "In the federal courts, a dismissal pursuant to Rule 12(b)(6) is considered a final decision on the merits with full *res judicata* effect." *Dyer v. Intera Corp.*, 870 F.2d 1063, 1066 (6th Cir. 1989). Thus, the first requirement was met by Judge Forester's order.

Second, this issue involves some of the same parties and their privies as Lexington Civil Action 08-510. Haffey, McKeever, and GMAC LLC were parties in the prior action, and here Haffey and McKeever have simply added Deutsche Bank, RALI, and RFC[2] to the instant action.

Third, the issues raised have already been litigated or should have been

---

[2] GMAC asserts that GMAC, Deutsche Bank, RALI and RFC are "related to GMAC in the servicing and securitizing of []the loan" and are "related entities to GMAC," and are therefore in privity with one another. GMAC does not detail the nature of these relationships, however. Based on the information available, it is not apparent that RALI and RFC were in privity with GMAC or Deutsche. In contrast, the pleadings indicate that GMAC and Deutsche are in privity with one another because GMAC services the loan note held by Deutsche. R. 33 at 3 n.2. There is no indication that McKeever disputes this relationship, and indeed, she characterizes the third-party defendants as one collective entity.

3

litigated in the related action. Most of the allegations contained in the counter-

claim against GMAC appear to have been recycled from the claims against GMAC

that Judge Forester dismissed in Lexington Civil Action 08-510. R. 1, Attach. 3.

Because the current claims against Deutsche are related to the same series of

events described in the complaint in Lexington Civil Action 08-510, the plaintiffs

could have added Deutsche as a party to that action, but failed to do so.

Accordingly, the plaintiffs' claims against GMAC and Deutsche are subject to

dismissal under the *res judicata* doctrine. *See Jeter v. Morgan*, No. 05-cv-357,

2006 U.S. Dist. LEXIS 663, at *6 (E.D. Ky. Jan. 10, 2006) (dismissing under *res*

*judicata* doctrine where current claims related to the same events described in first

complaint and the plaintiff could have named new party as a defendant in first

complaint but failed to do so).

Fourth, there is an identity of the causes of action. Here, the plaintiffs seek

to maintain an action based on the same transaction that was at issue in their now-

dismissed claims. *See Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1228

(6th Cir. 1981)(defining an identity of causes of action as an identity of the facts

creating the right of action and of the evidence necessary to sustain it); *Hendereen*

*v. Champion Int'l Corp.*, 525 F.2d 130, 135 (2d Cir. 1975).

**B.    Failure to state a claim upon which relief can be granted**

McKeever has also failed to state claims upon which relief can be granted.

The crux of her factual allegations against Deustche, GMAC, RALI, and RFC are as

follows: these entities "perpetrated the fraud as it related to the date of the loan" (R. 17, ¶87); GMAC ignored a qualified written request for information (*id.* at ¶88); GMAC attempted to collect on the note even though the transaction had been "rescinded as a matter of law" (*id.* at ¶ 93); all the third-party defendants were involved in the "illegal" securitization process (*id.* At ¶ 80); Deustche is not the holder or owner of the note (*id.* at ¶ 108)[3]; and the third-party defendants conspired with BoB to "commit illegal acts pursuant to Federal and State law" (*id.* at ¶ 120). These allegations, which serve as the factual basis for the twenty claims, are insufficient to sustain her claims against the instant defendants for the reasons discussed below.

### 1. Count One: Breach of Contract and Rescission

McKeever alleges that the third-party defendants materially breached express and implied contracts pursuant to the loan agreement and mortgage by their acts and omissions. She provides no basis for her assertion that each of the third-party defendants is "jointly and severally liable" for any breach. In addition, the allegations in paragraphs 128 and 129 are directed at BoB, the entity that originated the loan, and not subsequent holders or servicers. McKeever therefore has failed to state a claim for breach of contract and rescission against the instant third-party defendants.

---

[3]The court takes judicial notice of Lexington Civil Action 08-456. In that case, the claims against MERS were dismissed because MERS assigned the loan note to Deutsche Bank. Accordingly, even if it had been valid at the time, this claim is now moot.

### 2.   Counts Two, Three, and Four: Violations of TILA, HOEPA, and RESPA

The bulk of McKeever's TILA allegations stem from the origination of the loan, and she has not pled facts indicating that Deutsche, GMAC, RALI, or RFC were involved in that process.  McKeever also alleges that GMAC failed to respond to a qualified written request, but as noted before, this allegation has already been rejected by this court.  *See* Lexington Civil Action 08-510, R. 17 at 6.  Moreover, McKeever fails to articulate a basis of liability for RALI, RFC, or Deutsche stemming from this alleged violation.

### 3.   Counts Five and Six: Defamation of Title and Violations of the FDCPA and FCRA

First, in order to maintain a claim for defamation of title, a plaintiff must show that the defendant "knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging plaintiff's property title and must have pled and proven that they had incurred special damages resulting therefrom."  *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995).  Here, McKeever asserts that the assignment of the mortgage to MERS was "a blight on McKeever's title the day it was filed."  Lexington Civil Action 09-362, R. 17 ¶139.  McKeever's allegation is thus devoid of any facts that would support the basic elements of this claim, and her assertion that the assignment itself constituted defamation of title is merely a legal conclusion.

With respect to the FDCPA and the FCRA, the plaintiffs have not identified

6

any provisions of either statute that they believe was violated.  Generally speaking, the FDCPA aims to eliminate abusive debt collection practices, and the FCRA regulates the collection and dissemination of consumer credit information.  *See generally,* Fair Debt Collection Practices Act, Pub. L. No. 90-321, 82 Stat. 146 (1968); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq* (2010).  Again, in lieu of facts, McKeever has simply stated several legal conclusions, namely that Deutsche made false representations; engaged in" illegal" collection activities; brought suit under "false pretenses": and conspired to "fraudulently conceal" the "true lender."  R. 17 at ¶144.  These legal conclusions are not entitled to a presumption of truth, and cannot sustain these causes of action.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

### 4.   Count 7: Kentucky Consumer Protection Act

McKeever's claim under the Kentucky Consumer Protection Act fails as a matter of law because that statute does not apply to real estate transactions.  *See* Ky. Rev. Stat. Ann. § 367.110 et. seq. (LexisNexis 2010); *Todd v. Ky. Heartland Mortgage, Inc.,* No. 2002-CA-002038, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003) (citing *Craig v. Keane*, 32 S.W.3d 90, 90-91 (Ky. Ct. App. 2000)).

### 5.   Count 8: Breach of Fiduciary Duty

McKeever asserts that an agency relationship exists between BoB and GMAC, and that GMAC "stood in the shoes of" BoB and has since become "a two headed monster of sorts with [BoB], Allen, Herron, Frye, MERS, and GMAC-RFC,"

who are all jointly and severally liable.  R. 17 at ¶152.  As a preliminary matter, the
relationship between a bank and a borrower does not impose a fiduciary duty on
the bank.  *In re Sallee*, 286 F.3d 878, 885 (6th Cir. 2002); *see also Steelvest, Inc.
v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (noting that courts
typically do not impose a fiduciary duty of disclosure on banks in debtor/creditor
relationships).  Moreover, the plaintiffs have not pled facts indicating that any
fiduciary duty owed by BoB would have extended to any of the instant third-party
defendants.

### 6.    Counts 9, 10, 11, 14 and 17: Fraud Claims

All of the fraud claims fail to meet the pleading requirements of Rule 9(b) of
the Federal Rules of Civil Procedure.  Rule 9(b) requires that "a party must state
with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P.
9(b).  At a minimum, a plaintiff must allege the "time, place, and content of the
alleged misrepresentation on which he or she relied," in addition to other
requirements.  *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (noting
that a plaintiff's complaint must "state where and when the [fraudulent] statements
were made"); *see also Brightman v. Freeway Assoc.,* No. 90-4072, 1991 U.S.
App. LEXIS 19069, at *7 (6th Cir. Aug. 8, 1991) (explaining that plaintiffs in Rule
9(b) cases must relate particular misrepresentation to dates).  McKeever has not
pled facts linking Deutsche, GMAC, RALI, or RFC to any of her allegations of fraud
contained in these counts.  Instead of providing factual information, including the

time, place, and content of the alleged misconduct, McKeever's fraud claims largely consist of a litany of legal conclusions. *See Iqbal*, 129 S.Ct. at 1950 (2009) (holding that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot sustain a claim).

### 7.    Count 12: RICO

McKeever uses conspiracy as the predicate act for the RICO claim, alleging that the third-party defendants and others conspired to "deceive the Homeowners"; "to break Kentucky and federal law"; and to achieve "unlawful aims by unlawful means." R. 17 at ¶167. Because McKeever relies on legal conclusions, not facts, in pleading conspiracy, her RICO claim fails. *See Iqbal*, 129 S.Ct. at 1950 (holding that an assertion of an unlawful agreement constituted a legal conclusion and was therefore not entitled to the assumption of truth).

### 8.    Counts 13: Kentucky Financial Services Code

McKeever seeks relief for violations of Ky. Rev. Stat. Ann. § 286.8-220 (LexisNexis 2010). Specifically, she contends that the "true lender[s]," GMAC and MERS, are operating illegally in Kentucky because they are not registered, chartered, or licensed to operate as a "Bank" and "Lender" under the Act. McKeever contends that the defendants committed negligence per se by violating this statute. McKeever has not pled facts in support of her theory that any of the instant third-party defendants constituted a lender in this transaction, however. Although McKeever repeatedly refers to the "True Lender," she has not alleged that

9

any entity other than BoB actually disbursed the loan.  Because McKeever failed to

adequately plead a violation of the underlying statute, she cannot sustain her claim

on the basis of negligence per se.

### 9. Counts 15 and16: Forgery in the second degree and criminal possession of a forged instrument in the second degree

McKeever alleges that Deutsche committed second degree forgery by

recording the mortgage, which allegedly contained "legally fictitious signatures by

an officer of [MERS]."  McKeever fails to articulate any facts indicating that

Deutsche recorded or possessed the allegedly forged mortgage "with an intent to

defraud, deceive, or injure another."  Ky. Rev. Stat. Ann. § 516.030 (LexisNexis

2010); Ky. Rev. Stat. Ann. § 516.060 (LexisNexis 2010).  Accordingly, even

accepting her allegations as true, she has not stated sufficient factual matter that

would enable this court to reasonably infer that Deutsche is liable.  *See Iqbal*, 129

S. Ct. at 1949.

### 10. Count 18: Kentucky Usury Statute

McKeever's claim under the Kentucky Usury Statute is barred by the

applicable statute of limitations.  Ky. Rev. Stat. Ann. § 360.020 (LexisNexis 2010)

provides that any action must be commenced "within two years from the time the

usurious transaction occurred."  The instant suit was not commenced until July

2009, which was more than two years from the date of the May 2007 transaction.

### 11. Count 19: Lexington Civil Action 08-456

McKeever provides no support for her erroneous contention that the quiet

title action, Lexington Civil Action 08-456, precluded the filing of this action.

Moreover, the dismissal of that action renders this argument moot.

### 12.    Count 20: Validity of the instant lawsuit

Although this count contains several allegations against MERS, it does not

contain any new factual allegations or legal claims with respect to the instant third-

party defendants.

## III.    Conclusion

Accordingly,

**IT IS ORDERED** that the motion to dismiss by Deutsche, GMAC, RALI and

RFC, R. 33, is **GRANTED.**

**IT IS FURTHER ORDERED** that a copy of these motions, any responses or

replies, and this order shall be filed in the individual case, Lexington Civil Action 09-

362.

Signed on  June 22, 2010

Jennifer B. Coffman

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**D**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC
(Related action: Lexington Civil Action No. 09-362)**

**GMAC MORTGAGE, LLC,**                                    **PLAINTIFF,**

**V.**              **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the motion (R. 53 in Lexington Civil Action 08-459) of third-party defendants Bank of the Bluegrass ("BoB"), Bill Allen, Mark Heron (here collectively "BoB"), and Jennifer Frye to dismiss the third-party complaint in an action styled *Deutsche Bank & Trust Company of the Americas v. Haffey, et. al.*, Lexington Civil Action 09-362, which is part of this consolidated action. For the reasons below, the court will grant the motion

**I.    Background**

This case is one of two remaining consolidated actions involving property located at 3250 Delong Road in Lexington, Kentucky.[1]  Deutsche Bank brought this foreclosure action against Heather McKeever and Shane Haffey, a married couple, on November 12, 2009.  McKeever filed an answer/counter-claim/third-party

---

[1]  The other remaining action is the lead case, Lexington Civil Action 08-459. The other consolidated cases have been dismissed.  *See* Lexington Civil Action 08-456, 08-510, and 09-255.

complaint naming the instant third-party defendants, among others. *Id.* at R. 17.

The instant third-party defendants have moved to dismiss the third-party complaint.

## II.    Analysis

### A.    Claim-splitting

BoB's argument of claim-splitting is not persuasive.  In the context of another consolidated case, Lexington Civil Action 09-255, McKeever and Haffey sued BoB and the same employees named in the third-party complaint, raising similar allegations of fraud and violations of state and federal law.  McKeever and Haffey have since voluntarily dismissed that case.  BoB now maintains that the instant third-party claims should have been brought against BoB in the context of one of the other consolidated cases "if at all," and cites *The Louisville Trust Co. v. Smith* in support of its assertion that a party is required to bring their "whole case when filing suit."  330 F.2d 483, 486 (6th Cir. 1964).  The consolidation of these cases, however, undermines BoB's arguments regarding judicial economy and prolonged litigation.  See *Twaddle v. Diem*, 200 Fed. Appx. 435, 438 (6th Cir. 2006) (noting that the potential burdens of dual litigation would be addressed by consolidation).  Accordingly, BoB has not shown that dismissal is appropriate due to claim-splitting.

### B.    Settlement Agreement

McKeever's claims against BoB are barred by the settlement agreement between them.  BoB and McKeever entered into the agreement on July, 29, 2008.

The agreement provides as follows:

> All parties to this Settlement Agreement (Bank of the Bluegrass & Trust
> Company and Heather McKeever Haffey), their officers, agents, and
> successors in interest, specifically release and forever discharge each other
> from any and all claims, actions, liability, causes of action of any kind, in law
> and in equity, arising out of the above referenced loan.

Lexington Civil Action 09-255, R. 7.[2]  In exchange for this mutual release, BoB paid

McKeever $2,500.  *Id.*

McKeever alleges that the settlement agreement is invalid because she was

fraudulently induced to enter into the agreement.   Specifically, she alleges that she

believed that the Bank was the lender and holder of her note.   She also alleges that

the settlement agreement stated a fraudulent closing date of the loan as May 14,

2007.

A valid settlement agreement can be set aside only for fraud or mutual

mistake of fact.  *Estate of Jones v. Comm'r*, 795 F.2d 566, 573-74 (6th Cir.

1986).  Under Kentucky law, which the parties agreed would govern their

---

[2]A document that is not formally incorporated by reference or attached to a
complaint, such as the settlement agreement, may still be considered part of the
pleadings.  This occurs when a document is referred to in the complaint and is
central to the plaintiff's claim.  *See Greenberg v. Rossman*, 177 F.3d 507, 514
(6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).
Because McKeever's fraudulent inducement claim alleges that the settlement
agreement contains an incorrect loan date, and that in turn constitutes an act of
fraud, that agreement is central to her claims.  Similarly, given her breach of
contract claims, the court has also considered the loan and mortgage in ruling on
this motion.  Given the centrality of these documents to McKeever's claims,
consideration of these additional documents does not require converting the instant
motion to dismiss into one for summary judgment.

settlement agreement, in order to establish a claim for fraud a plaintiff must prove: (1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4)which was  made with an inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) which causes injury.  *See United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999) (citation omitted).

McKeever does not allege that at the time she entered into the settlement agreement, BoB represented that it was still the holder of the loan note.  *See, e.g.,* R. 17 at ¶ 68.  Where a party claiming fraudulent inducement does not rely on any misstatement by the other party, a claim for fraudulent inducement does not lie. *The First Capital Bank of Ky. v. Hamman*, No. 08-646, 2010 U.S. Dist. LEXIS 53724, at *8 (W.D. Ky. June 1, 2010).  In addition, McKeever alleges that the settlement agreement "states a fraudulent closing date of the loan as May 14, 2007," yet the actual language of the agreement states that the loan transaction occurred "*on or about* May 14, 2007."  Lexington Civil Action 09-255, R. 7 (emphasis added).  Thus, even taking the facts alleged as true, the date contained in the settlement agreement did not constitute a material misrepresentation.

Moreover, McKeever's allegations with respect to the settlement agreement fail to meet the particularity requirements of Fed. R. Civ. P. 9(b).  McKeever alleges in Count Eleven that the "deceptive acts" of the "Defendants" in inducing her to enter into the settlement agreement and as to a "multitude of misrepresentations in the execution of such," including but not limited to the "true identity of the Lender

4

and Mortgagee"; "the Securitization of the Note"; "falsified documents"; and "backdated documents" constitute fraudulent misrepresentation.  R. 17 at ¶ 165.  Rule 9(b) of the Federal Rules of Civil Procedure requires that a plaintiff allege the "time, place, and content of the misrepresentation on which he or she relied," and that when a complaint involves multiple defendants, "each defendant's role must be particularized with respect to their alleged involvement in the fraud."  *See Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993); *Anderson v. Pine South Cap., LLC*, 177 F. Supp. 2d 591, 596-97 (W.D. Ky. 2001).  McKeever's vague and general references fall short of that particularity requirement.

Thus, because she has not pled the elements of fraud or met the pleading requirements of Rule 9(b), McKeever fails to state a claim upon which relief can be granted with respect to setting aside the settlement agreement.  Accordingly, the terms of the agreement bar McKeever's claims, which arise out of the loan transaction.

### C.    Individual claims

Even in the absence of the settlement agreement, McKeever cannot sustain her claims because her pleadings fail to state a claim for relief that is plausible on its face and do not comply with the pleading requirements of Rule 8 and, where applicable, Rule 9 of the Federal Rules of Civil Procedure.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that factual allegations must be enough to raise a right to relief above the speculative level and that the pleading

must contain more than a statement of facts that merely creates a suspicion of a cognizable right of action) (citations omitted).

### 1.    Count One: Breach of contract and rescission

McKeever alleges that the defendants "breached the express and implied contracts pursuant to the Loan Agreement and Mortgage" by failing to provide her with notice that her loan would be securitized, by failing to provide her with a notice of a right to cancel and other TILA disclosures, by backdating the loan documents and mortgage, and by "fraudulently inducing" her to enter into the settlement agreement.  R. 17 at ¶ 126-129.

McKeever has not identified any provisions of the loan note or mortgage or any other contract that she believes has been breached.  Even accepting her allegations as true, it is not clear how backdating loan documents or failing to provide TILA disclosures would constitute a breach of contract.  Moreover, McKeever has not articulated why rescission would be an appropriate remedy for any alleged breach.  *See C. C. Leonard Lumber Co. v. Reed*, 314 Ky. 703, 705 (Ky. 1951) (noting that rescission will not be allowed for a slight or casual breach of the contract, or even for a substantial breach, unless the former status of the parties can be restored).

Thus, because McKeever's claim fails to create a "reasonable inference that the defendant is liable for the conduct alleged," her claim for breach of contract and rescission fails.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## 2.   Counts 9, 10, 11, and 14: Fraud Claims

The essence of McKeever's fraud claims against BoB is that BoB concealed

the "true lender," and that BoB committed fraud by transferring the loan note and

mortgage.  She asserts that the loan was "table-funded,"[3] but does not articulate

any facts that led her to this conclusion.  Moreover, the loan documents provided

that BoB could transfer the note and the security interest, and the mortgage

expressly contemplated that MERS would be the lender's nominee.  *See* Lexington

Civil Action 09-362, R. 1, Exh. A at 1 ("I understand that the Lender may transfer

this Note.  The Lender or anyone who takes this Note by transfer and who is

entitled to receive payments under this Note is called the 'Note Holder.'"); Exh. B.

at 3 (noting that MERS would hold legal title as the lender's nominee); Exh. B. at

11 ("The Note or a partial interest in this Note (together with the Security

Instrument) can be sold one or more times without prior notice to Borrower.").

McKeever has not identified any representations by BoB that conflict with these

provisions.  McKeever thus fails to plead facts in support of her claim for fraud by

---

[3]"Some mortgage brokers process loans and close loans in their own names.
However, at or about the time of settlement, they transfer these loans to lenders
that simultaneously advance funds for the loans. This transaction is known in the
lending industry as "table-funding." In table-funded transactions, the mortgage
broker does not furnish the capital for the loans. Instead the lender provides the
capital and, immediately after the loan is consummated, the mortgage broker
delivers the loan package to that lender, including the promissory note, mortgage
evidence of insurance, and assignments of all rights the mortgage broker held."
U.S. Department of Housing and Urban Development, Disclosure of Fees Paid to
Mortgage Brokers; Proposed Rule and Notice of Proposed Information Collection
Requirements, *http://www.hud.gov/offices/hsg/ramh/res/mrgbrkrl.cfm.*

misrepresentation.

McKeever also alleges that "The Lender" conspired to conceal the "True Lender" at the closing and that "The Lender" had a duty to "disclose material facts," including the "true nature of their relationship," and that this omission induced her to enter into the loan transaction. R. 17 at ¶ 158. These legal conclusions are not entitled to a presumption of truth, nor are they accompanied by sufficient factual enhancement indicating that BoB violated any duty to disclose or that it partially disclosed information that was materially misleading, much less with the particularity required by Rule 9(b). *See Gresh v. Water Servs. of America, Inc.*, 311 Fed. Appx. 766, 772 (6th Cir. 2009); Fed. R. Civ. P. 9(b).

Finally, McKeever's claims for fraudulent inducement and for violations of the Kentucky Residential Mortgage Fraud Act, Ky. Rev. Stat. Ann. § 286.8-990, fail because she appears to rely on her fraud claims as the basis for these claims, and her fraud claims fail for the reasons discussed above.

### 3.   Counts Two, Three, and Four: TILA, HOEPA, and RESPA claims

McKeever seeks statutory damages for BoB's alleged failure to provide certain disclosures pursuant to the Truth-in-Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA") during the loan transaction. Claims for damages under TILA and HOEPA are governed by 15 U.S.C. § 1640(e), which provides that any claim under that section must be brought within one year from the date that the violation occurred. The instant lawsuit was not initiated

within that time-frame.

McKeever states that "any and all claims involving [BoB] are raised as affirmative defenses and set offs to a foreclosure and that the third[-]party complaint stems from the defense of a foreclosure."  R. 75 at 3.  Accordingly, she contends that the "various" statutes of limitation do not apply.  Section 1640(e) provides an exception only "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law."  15 U.S.C. 1640(e).  "The right to set off allows parties that owe each other money to apply their mutual debts against each other." *Nix v. Option One Mortgage Co.*, No. 05-3685, 2006 U.S. Dist. LEXIS 2289, at *21 (D.N.J. Jan. 19, 2006).  The doctrine of recoupment allows a creditor that owes a debt to a debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor, and applies only where two debts arise out of the same transaction. *Id.*  Here, McKeever's claims against BoB were not asserted as an offset to an attempt to collect a debt – rather, Deutsche Bank is the entity attempting to collect a debt, and the claims against BoB were asserted offensively.  Accordingly, McKeever's claims for statutory damages against BoB due to non-disclosure under TILA and her HOEPA claims are barred by the one-year statute of limitations.

Finally, McKeever alleges several violations of the Real Estate Settlement and Procedures Act (RESPA).  She claims that, in violation of 12 U.S.C. § 2607 of the

9

RESPA, there were various undisclosed and unauthorized fees and commissions, kickbacks, yield spread premiums collected; broker commissions paid by the lender to the broker for arranging the loan at a higher interest rate than that lender normally would have charged; and that certain finance charges were understated. R. 17 at ¶ 136. She does not indicate who paid and accepted kickbacks, fees, or commissions; what those kickbacks, fees, and commissions were; or the circumstances surrounding these transactions. *See Silvas v. GMAC Mortgage, LLC*, No. CV 09-265, 2009 U.S. Dist. LEXIS 118854, at *33-34 (D. Ariz. Dec. 1, 2009) (dismissing claims based on similar deficiencies). These legal conclusions thus lack sufficient factual support. *See Iqbal*, 129 S.Ct. at 1949 (explaining that a complaint does not suffice if it contains bare assertions devoid of further factual enhancement) (citations omitted). In addition, she does not indicate when these allegedly illegal transactions occurred. Section 2614 requires that any action for a violation of § 2607 must be brought within one year from the date of occurrence of the violation. *See* 12 U.S.C. § 2614. Thus, to the extent that these alleged transactions occurred in conjunction with the disbursement of the loan transaction, her claims are also time-barred.

McKeever counters that the statute of limitations should be equitably tolled due to "fraudulent concealment." R. 75 at 3-4. Although she alleges in her response that BoB "fraudulently concealed the identity of the lender making the loan," her fraud claims fail, as discussed above. Moreover, McKeever cannot rely

10

on the same factual allegations to show that BoB violated federal statutes – namely that BoB failed to make required disclosures pursuant to TILA, HOEPA, and RESPA – as to toll the limitations period for those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges a violation of TILA, HOEPA and RESPA, and would render the statutes of limitation meaningless. *See Gates v. The Ohio Sav. Bank Assoc.,* No. 06-678, 2007 U.S. Dist. LEXIS 68509, at *13 (N.D. Ohio Sept. 17, 2007) (explaining that mere non-disclosure by a defendant is insufficient to establish fraudulent concealment) (citations omitted); *Jacob v. Aurora Loan Servs.*, No. 10-1789, 2010 U.S. Dist. LEXIS 65999, at *8-9 (N.D. Cal. July 2, 2010) (explaining that violations of TILA, HOEPA and RESPA do not automatically entitle a plaintiff to equitable tolling).

Finally, to the extent that McKeever seeks to rescind the transaction due to a failure to disclose under TILA, it is not clear that claim is directed at BoB. McKeever's repeated references to the defendants collectively makes it difficult to determine which defendant she intends to implicate in each claim. Here, McKeever has not pled facts indicating that BoB is in a position to effectuate rescission, and therefore to the extent she sought to rescind the loan as to BoB, that claim will be dismissed.

### 4. Counts Five and Six: Defamation of Title and Violations of the FDCPA and FCRA

In order to maintain a claim for defamation of title, a plaintiff must show that the defendant "knowingly and maliciously communicated, orally or in writing, a

false statement which has the effect of disparaging plaintiff's property title and must have pled and proven that they had incurred special damages resulting therefrom." *Montgomery v. Milam*, 910 S.W.2d 237, 240 (Ky. 1995). Here, McKeever asserts that the assignment of the mortgage to MERS was "a blight on McKeever's title the day it was filed." Lexington Civil Action 09-362, R. 17 ¶139. McKeever's allegation is thus devoid of any facts that would support the basic elements of this claim, and her assertion that the assignment itself constituted defamation of title is merely a legal conclusion.

With respect to the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), McKeever fails to identify any provisions of either statute that she believes was violated. Generally speaking, the FDCPA aims to eliminate abusive debt collection practices, and the FCRA regulates the collection and dissemination of consumer credit information. *See generally,* Fair Debt Collection Practices Act, Pub. L. No. 90-321, 82 Stat. 146 (1968); Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq* (2010). Again, in lieu of facts, McKeever has simply stated several legal conclusions, including that BoB "conspired to conceal the 'True Lender' at closing," and she implies that the alleged securitization of the note was illegal, she invokes clearly no statute in support of this allegation. R. 17 at ¶144. Such conclusory statements cannot sustain these causes of action. *See Iqbal*, 129 S.Ct. at 1950.

### 5.    Count Seven: Kentucky Consumer Protection Act

McKeever's claim under the Kentucky Consumer Protection Act because that statute does not apply to real estate transactions.  *See* Ky. Rev. Stat. Ann. § 367.110 et. seq. (LexisNexis 2010); *Todd v. Ky. Heartland Mortgage, Inc.,* No. 2002-CA-002038, 2003 WL 21770805, at *3 (Ky. Ct. App. Aug. 1, 2003) (citing *Craig v. Keane*, 32 S.W.3d 90, 90-91 (Ky. Ct. App. 2000)).

### 6.    Counts Eight, Thirteen, and Seventeen: Breach of Fiduciary Duty and Violations of the Kentucky Financial Services Code

McKeever fails to state a claim for breach of fiduciary duty because she has not pled facts indicating the existence of a fiduciary relationship between her and BoB.  Rather, a relationship between a bank and a borrower does not impose a fiduciary duty on the bank.  *In re Sallee*, 286 F.3d 878, 885 (6th Cir. 2002); *see also Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991) (noting that courts typically do not impose a fiduciary duty of disclosure on banks in debtor/creditor relationships).

McKeever's claim for violations of the Kentucky Financial Services Code largely reiterates her allegations that BoB breached its fiduciary duty and that it committed fraud.  Because these allegations are insufficient for the reasons articulated above, she cannot rely on them to sustain her claims for violating the Kentucky Financial Services Code, and that claim fails as well.

### 7.    Count Twelve: Conspiracy and Violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §1961

McKeever uses conspiracy as the predicate act for her RICO claim, alleging that BoB and others conspired to "deceive the Homeowners"; "to break Kentucky and federal law"; and to achieve "unlawful aims by unlawful means." R. 17 at ¶167. Although she states that "the actions of the Defendants constitute at least twelve separate acts of the conspiracy," it is not clear what acts she is referring to or the extent to which BoB was involved in these alleged acts. Although McKeever might be alleging that the defendants conspired to commit fraud, her fraud claims fail for the reasons discussed above. Thus, because McKeever relies on legal conclusions, not facts, in pleading conspiracy, her RICO claim fails. *See Iqbal*, 129 S.Ct. at 1950 (holding that an assertion of an unlawful agreement constituted a legal conclusion and was therefore not entitled to the assumption of truth).

### 8. Count 18: Kentucky Usury Statute

McKeever's claim under the Kentucky Usury Statute is barred by the applicable statute of limitations. Ky. Rev. Stat. Ann. § 360.020 (LexisNexis 2010) provides that any action must be commenced "within two years from the time the usurious transaction occurred." The instant claims were filed in February 2010, which was more than two years from the date of the May 2007 transaction. McKeever provides no legal support for her bare assertion that this statute of limitations does not apply.

### 9. Counts 15, 16, 19, and 20: Forgery Claims and Other Consolidated Case Issues

14

Counts Fifteen and Sixteen do not contain any factual allegations that would give rise to liability against BoB.  Counts Nineteen and Twenty, although framed as counts of the complaint, are arguments regarding the management of this litigation, not separate legal claims.  First, in Count Nineteen, McKeever alleges that the quiet title action (presumably Lexington 08-456) precluded the underlying foreclosure action against her (Lexington 09-362).  The quiet title action has since been dismissed, and she provides no legal support for this assertion.  Second, in Count Twenty, McKeever alleges that the "October 15, 2008 rescission of the mortgage precludes the foreclosure and the filing of the foreclosure is based in fraud and violates Rule 11."  R. 17 ¶¶ 184-88.  Because these are arguments regarding the case overall as opposed to claims against BoB, these counts will be dismissed as to BoB as well.

### III.    Conclusion

Accordingly, **IT IS ORDERED** that the motion to dismiss (R. 53 in 08-459) the third-party claims against Bank of the Bluegrass, Bill Allen, Mark Heron, and Jennifer Frye is **GRANTED** and those claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that this order and the underlying motion and briefs shall be docketed in Lexington Civil Action 09-362.

Case: 5:09-cv-00392-JBC    Doc #: 39-1    Filed: 08/31/10    Page: 16 of 16 - Page ID#: 233

Signed on  August 31, 2010

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

16

**E**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-459-JBC**
**(Related action: Lexington Civil Action No. 09-362)**

**GMAC MORTGAGE, LLC,**

**PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**HEATHER BOONE MCKEEVER, ET AL.,**                          **DEFENDANTS.**

* * * * * * * * * * *

This matter is before the court on the motion of third-party defendants,

Mortage Electronic Registration Systems Inc. and Merscorp, Inc. ("MERS

Defendants") to dismiss the third-party complaint. For the reasons below, the court

will grant the motion.

**I.      Background**

This case is the lead case in consolidated actions involving property located

at 3250 Delong Road in Lexington, Kentucky. Deutsche Bank brought this

foreclosure action against Heather McKeever and Shane Haffey, a married couple,

on November 9, 2009. Lexington Civil Action 09-362, R. 1. McKeever filed a

counter-claim and third-party complaint on February 9, 2010, naming Deutsche

Bank; GMAC Mortgage, LLC; Residential Accredit Loans, Inc.("RALI"); Residential

Funding Company, LLC ("RFC"); the Bank of the Bluegrass and several of its

employees individually ("BoB"); and Mortgage Electronic Registration Systems, Inc.,

1

and MERSCORP (collectively referred to as "MERS defendants."). *Id.* at R. 17.

The MERS defendants moved to dismiss the third-party complaint against them on January 14, 2011. Within the time allotted to respond, McKeever filed a notice of dismissal without prejudice, which this court construed as a response. The MERS Defendants filed no reply.

## II.    Analysis

The third-party plaintiffs have failed to state a claim upon which relief can be granted.

### A.    Law of the Case

Several of the claims McKeever makes have already been dismissed in another consolidated action and will therefore be dismissed in this action under the doctrine of "law of the case." Several of the counts fail because a decision has already been made upon a rule of law in one of the consolidated cases.  "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-570 (6th Cir. 2004)) (internal citation removed). Since the instant case was consolidated, earlier decisions in other consolidated cases are part of the same case. *In re Aetna Cas. & Surety Co.*, 919 F.2d 1136, 1143 (6th Cir.1990) (noting in dicta that a decision on the merits of an issue in consolidated cases "could or might constitute law of the case in all of

2

them, or involve collateral estoppel, or be highly persuasive as precedent").

In consolidated case LEX 5:08-CV-510, this court ruled that MERS was entitled to a judgment as a matter of law and granted a motion for summary judgment for MERS on a number of the same counts. *Id.* at R. 31. In McKeever's third-party complaint, she makes several claims which are identical to the claims which were dismissed by this court previously. Those claims are:

- Count 1 - Breach of Contract and Rescission
- Count 2 - Violations of the Truth in Lending Act
- Count 3 - Violations of the Home Ownership and Equity Protection Act
- Count 4 - Violations of the Real Estate Settlement Procedures Act
- Count 5 - Defamation of Title
- Count 6 - Violations of the Fair Debt Collection Practices Act and the Fair Credit Reporting Act
- Count 7 - Violations of Kentucky Consumer Protection Act
- Count 8 - Breach of Fiduciary Duty
- Counts 9 through 11 - Fraud
- Count 12 - Conspiracy and Violations of the Racketeer Influenced and Corrupt Organizations Act
- Counts 13 and 17 -  Violations of the Kentucky Financial Services Code

This court dismissed those claims because the plaintiffs failed to establish numerous elements of their claims and the settlement agreement bars claims against MERS arising out of the loan at issue. *See Id.* at R. 31. Because the above claims against MERS have been dismissed as a matter of law, this court is bound by the law of the case.

McKeever states that she has named MERSCORP as a defendant because it is "the owner of MERS." R. 17 at 13.  MERSCORP, as owner of MERS, would fall under the same "successors in interest" clause that this court determined bars the

3

above-mentioned claims against MERS.

McKeever has failed to show that she is entitled to reconsideration under the three exceptions to "law of the case." She has not presented substantially different evidence, shown a subsequent contrary view of the law by a controlling authority or shown the previous decision is clearly erroneous and would work a manifest injustice. *Hanover Ins. Co. v. American Engineering Co.*, 105 F.3d 306, 312 (6th Cir. 1997). Therefore, this court will grant the motion to dismiss on the aforementioned counts.

**B.    Failure to state a claim upon which relief can be granted**

McKeever cannot sustain her remaining claims because her pleadings fail to state a claim for relief that is plausible on its face and they do not comply with the pleading requirements of Rule 8 and, where applicable, Rule 9 of the Federal Rules of Civil Procedure. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that factual allegations must be enough to raise a right to relief above the speculative level and that the pleading must contain more than a statement of facts that merely creates a suspicion of a cognizable right of action) (citations omitted).

**1.    Count Fourteen: Violations of the Kentucky Residential Mortgage Fraud Act**

McKeever's claim for violations of the Kentucky Residential Mortgage Fraud Act ("Fraud Act"), Ky. Rev. Stat. Ann. § 286.8-990 (2011), fails because she fails

to state a basis for her claim that the MERS Defendants intended to commit fraud. In her third-party complaint, McKeever fails to plead facts to support her claim and her legal conclusions are not entitled to a presumption of truth. Further, McKeever's claim under the Fraud Act fails because she appears to rely on her fraud claims, which this court has denied based on "law of the case." Therefore, since her claim under the Fraud Act is based on her fraud claims, this claim also fails.

### 2.    Count Fifteen: Forgery in the second degree

McKeever alleges that MERS committed forgery when "it placed the Mortgage into the records of the Fayette County clerk for which it had no pecuniary right . . . or interest in" and when it "forged an assignment on behalf of the bankrupt American Home Mortgage . . . ." McKeever fails to articulate any facts indicating that the MERS Defendants recorded or possessed the allegedly forged mortgage "with an intent to defraud, deceive or injure another." Ky. Rev. Stat. Ann. § 516.030 (2011); Ky. Rev. Stat. Ann. § 516.060 (2011). A "complaint does not suffice if it tenders 'naked assertions' devoid of 'further factual enchantments.'" *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 557 (1995)). As the complaint does not contain sufficient factual matter, this court will grant the motion to dismiss.

### 3.    Count Sixteen: Criminal possession of forged instrument in the second degree

Count Sixteen does not contain any factual allegations that would give rise

to liability against the MERS Defendants. Therefore this count will be dismissed.

### 4.    Count Eighteen: Kentucky Usury Statute

Count Eighteen under the Kentucky Usury Statute is barred by the application of the statute of limitations. Ky. Rev. Stat. Ann. § 360.020 (2011) provides that any action must be commenced "within two years from the time the usurious transaction occurred." The loan at issue was closed in May of 2007. The third-party complaint was filed over two years later, on February 9, 2010.

### 5.    Count Nineteen: The Quiet Title Action Precludes the Filing of this Action and the MERS Mortgage and Subsequent Transfer are a Legal Nullity and Based on Fraud.

Count Nineteen fails because McKeever has failed to provide any support for her contention that Lexington Civil Action 08-456 precluded the filing of this action. Moreover, the dismissal of that action renders this argument moot.

### 6.    Count Twenty: The October 15, 2008, Rescission of the Mortgage Precludes the Foreclosure and the Filing of the Foreclosure is Based on Fraud and Violates Rule 11.

Count Twenty does not contain any factual allegations that would give rise to liability against the MERS Defendants. Therefore this count will be dismissed.

6

III.    **Conclusion**

Accordingly

**IT IS ORDERED** that the motion to dismiss (R. 103) is **GRANTED**.

Signed on  May 19, 2011

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**F**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**CIVIL ACTION NO. 09-362-JBC**

**DEUTSCHE BANK TRUST COMPANY AMERICA,**                               **PLAINTIFF,**

**V.**                               **JUDGMENT**

**HEATHER MCKEEVER HAFFEY, et al.,**                               **DEFENDANTS.**

* * * * * * * * * * *

The court, having granted the plaintiff Deutsche Bank's motion for summary

judgment, R.114, in *Deutsche Bank, etc. v. Heather McKeever Haffey, etc., et al.*,

Lexington Civil Action No. 09-362, enters **JUDGMENT** in accordance with that

order.

There being no just cause for delay, this order is **FINAL** and **APPEALABLE.**

This matter is **STRICKEN** from the court's active docket.

Signed on June 1, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY