MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------
                                                    )
In re:                                              )    Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )    Chapter 11
                                                    )
                                   Debtors.          )    Jointly Administered
                                                    )
--------------------------------------------------------------------------

**DEBTORS' OBJECTION TO PLAINTIFFS' MOTION TO LIFT STAY
FILED BY RICHARD D. RODE [DOCKET NOS. 2153, 2154, AND 2157]**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

    A.     General Chapter 11 Case Background ................................................................. 2

    B.     The Texas Action ................................................................................................ 3

OBJECTION ......................................................................................................................... 4

    A.     Applicable Authority .......................................................................................... 4

    B.     Analysis of the Relevant Sonnax Factors ......................................................... 6

CONCLUSION ..................................................................................................................... 10

Exhibits:

Exhibit 1       Delehey Declaration

ny-1073501

# TABLE OF AUTHORITIES

Page(s)

CASES

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
   126 F.3d 43 (2d Cir. 1997) ..................................................................................6

City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),
   28 B.R. 324 (Bankr. S.D.N.Y. 1983) .................................................................8

In re Bally Total Fitness of Greater N.Y., Inc.,
   402 B.R. 616 (Bankr. S.D.N.Y. 2009) ...........................................................8, 10

In re Leibowitz,
   147 B.R. 341 (Bankr. S.D.N.Y. 1992) ...............................................................6

In re Motors Liquidation Co.,
   Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ..........................6

Mazzeo v. Lenhart (In re Mazzeo),
   167 F.3d 139 (2d Cir. 1999) ............................................................................5, 6

Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection,
   474 U.S. 494 (1986) ........................................................................................4

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
   922 F.2d 984 (2d Cir. 1990) .............................................................................5

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
   907 F.2d 1280 (2d Cir. 1990) ................................................................... passim

Teachers Ins. & Annuity Ass'n of Am. v. Butler,
   803 F.2d 61 (2d Cir. 1986) ................................................................................4

Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.),
   104 B.R. 659 (D.N.J. 1989) ..............................................................................10

STATUTES

11 U.S.C. § 105 ....................................................................................................2

11 U.S.C. § 363 ....................................................................................................2

11 U.S.C. § 365 ....................................................................................................2

ii

11 U.S.C. § 362(a) .........................................................................................................4

11 U.S.C. § 362(a)(1) ....................................................................................................4

11 U.S.C. § 362(d)(1) .................................................................................................5, 6

11 U.S.C. § 1108...........................................................................................................2

Fed. R. Bankr. P. 2002...................................................................................................2

Fed. R. Bankr. P. 6004...................................................................................................2

Fed. R. Bankr. P. 6006...................................................................................................2

Fed. R. Bankr. P. 9014 (I)..............................................................................................2

Fed. R. Bankr. P.1015(b)...............................................................................................2

ny-1073501

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession

in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this

objection (the "**Objection**") to the *Plaintiff's Motion to Lift Stay,* filed by *pro se* party Richard D.

Rode ("**Movant**"), as of November 7, 2012 [Docket No. 2153] (the "**Motion**").[1]  In support of

hereof, the Debtors submit the Declaration of Lauren Graham Delehey, dated January 22, 2013

(the "**Delehey Decl.**"), attached hereto as Exhibit 1, and respectfully represent:

## PRELIMINARY STATEMENT

1.      Movant seeks relief from the automatic stay to proceed with prepetition

claims against Debtors GMAC Mortgage, LLC ("**GMACM**") and Homecomings Financial, LLC

("**Homecomings**" and, together with GMACM, the "**Defendants**"), and all their subsidiaries in

an action (the "**Texas Action**") pending in United States District Court for the Southern District

of Texas (the "**District Court**").  (Motion at ¶ 3.)  The Motion should be denied because Movant

has not satisfied his burden of establishing sufficient cause as to why his case should be

permitted to proceed notwithstanding the statutorily imposed breathing spell to which the

Debtors are entitled under section 362 of title 11 of the United States Code (the "**Bankruptcy

Code**").

2.      Movant has not analyzed any of the relevant Sonnax factors in support of

his request for relief from the stay, and has failed to satisfy his requisite burden of proof.  For the

above reasons, and as more fully set forth below, the Debtors respectfully request that this Court

deny the Motion.

---

[1]      Identical copies of the Motion were also filed as Docket Nos. 2154 and 2157.  This Objection encompasses all
of those pleadings.

1

## BACKGROUND

**A.      General Chapter 11 Case Background**

3.      On the Petition Date, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  No trustee has been appointed in the Chapter 11 Cases.

4.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

5.      On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T. Gonzalez, former Chief Judge of this Court, as examiner (the "**Examiner**").

6.      On November 21, 2011, the Court entered an orders approving the sales of a substantial portion of the Debtors' assets to Ocwen Loan Servicing, LLC[2] ("**Ocwen**") and Berkshire Hathaway, Inc.[3] (collectively, the "**Asset Sales**").

7.      On December 26, 2012, this Court entered an order appointing Judge James M. Peck as mediator for an initial period through February 28, 2013, subject to extension,

---

[2]    See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246].

[3]    See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway, Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* [Docket No. 2247].

ny-1073501

to assist parties in interest in resolving certain issues relating to the formulation and confirmation of a Chapter 11 plan (the "**Mediation**").

     **B.**    **The Texas Action**

     8.    On July 21, 2011, Movant filed a petition commencing the Texas Action in the in the District Court of the 125th Judicial District of Harris County, Texas (Cause No. 2011-43161) (the "**Original Petition**").  (Delehey Dec. at ¶ 4].)  By the Original Petition, Movant sought unspecified damages (actual, exemplary, and attorneys' fees) on account of various state law causes of action related to the Debtors' servicing of Movant's mortgage loan—specifically, breach of contract (Original Petition, ¶ 6.01), fraud in the inducement (Original Petition, ¶ 6.02), fraud (Original Petition, ¶ 6.03), negligent misrepresentation (Original Petition, ¶ 6.04), and violation of the Texas Deceptive Trade Practices Act (Original Petition, ¶ 6.05).

     9.    The Defendants filed their Answer to the Original Petition on August 11, 2011.  (Delehey Dec. at ¶ 5.)

     10.    On February 6, 2012, Movant served a settlement demand on the Defendants in the amount of $1.2 million.  (Delehey Dec. at ¶ 6.)

     11.    Also on February 6, 2012, Movant filed Plaintiff's First Amended Petition (the "**Amended Petition**") (Delehey Decl. at ¶ 7.), in which he asserted additional causes of action against the Defendants, namely, conversion (Amended Petition, ¶ 6.01), breach of fiduciary duty (Amended Petition, ¶ 6.02), common law and statutory fraud (Amended Petition, ¶ 6.05), accounting (Amended Petition, ¶ 6.06), and violations of the Texas Finance Code (Amended Petition, ¶ 6.09) and the Texas Theft Liability Act (Amended Petition, ¶ 6.10).

     12.    The Texas Action was subsequently removed to the District Court on February 9, 2012.  (Delehey Decl. at ¶ 8.)

3

13.    On April 2, 2012, the District Court entered a scheduling order (the

"**Scheduling Order**"), which provided that discovery was to conclude by December 31, 2012,

and trial would commence on April 1, 2013.  (See Scheduling Order, annexed to Delehey Dec. as

Exhibit F.)

14.    The Texas Action stayed as a result of the imposition of the automatic stay

under section 362(a) of the Bankruptcy Code as of the Petition Date and, as of the date hereof,

remains pending in the District Court.

15.    On November 7, 2012, Movant filed the Motion.

## OBJECTION

### A.    Applicable Authority

16.    The automatic stay imposed by section 362(a) of the Bankruptcy Code is a

core provision of bankruptcy law that promotes the reorganization process by providing the

debtor with "a breathing spell from [its] creditors."[4]  Teachers Ins. & Annuity Ass'n of Am. v.

Butler, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that

otherwise would "distract . . . debtor's attention from its primary goal of reorganizing").  It

affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic

Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (citation and

internal quotation marks omitted).  Likewise, it allows the debtor to manage and, where

---

[4]    Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a
judicial, administrative, or other action or proceeding against the debtor that was or could have
been commenced before the commencement of the case under this title, or to recover a claim
against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

ny-1073501

appropriate, centralize all creditor actions against property of the estate, "so that

reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other

arenas." Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984,

989 (2d Cir. 1990).

       17.     Section 362(d)(1) of the Bankruptcy Code provides that a court may

grant relief from the automatic stay for "cause." See 11 U.S.C. § 362(d)(1). In the context of

stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test to

determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending the action; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir.

1999) (vacating a district court order granting stay relief where the bankruptcy court had not

applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the

appellate court "with sufficient information to determine what facts and circumstances specific to

the present case the court believed made relief from the automatic stay appropriate…."). In a

given case, however, not all of the factors will be relevant, and the court may disregard

irrelevant factors.  See Mazzeo, 167 F.3d at 143.

18.    The moving party bears the initial burden to demonstrate, using the

relevant Sonnax factors, that good cause exists for lifting the stay.[5]  The movant's burden is

especially heavy if it is an unsecured creditor.  "The general rule is that claims that are not

viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless

extraordinary circumstances are established to justify such relief."[6]

### B.    Analysis of the Relevant Sonnax Factors

19.    Here, Movant has not performed any analysis of the Sonnax factors, and

has failed to satisfy his burden of proof.  However, even a cursory analysis of the relevant

Sonnax factors[7] demonstrates that the stay should not be lifted.

20.    The first Sonnax factor (complete resolution of the issues) does not

support stay relief.  The Texas Action is in its preliminary phases.  Under the Scheduling Order,

discovery was scheduled to continue for more than six months after it was stayed upon the

commencement of the Debtors' chapter 11 cases.  Assuming Movant was granted stay relief in

order to recommence prosecuting the Texas Action, lifting the stay would only give rise to

resumption of discovery and preliminary motion practice.

21.    The second Sonnax factor (interference with the bankruptcy case) weighs

in favor of denying the Motion.  Significant attention must be devoted to address the

---

[5]    See Sonnax, 907 F.2d at 1285.  See Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

[6]    In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

[7]    Sonnax Factors numbers 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax Factor 8 in their objection, but reserve all right with regard thereto.

extraordinary operational difficulties that arise in complex Chapter 11 cases such as these,

particularly given that these Chapter 11 cases are in a critical phase.  In addition to addressing

day-to-day challenges, it is of the utmost importance that the Debtors devote their complete

efforts on the essential tasks necessary to achieve a successful resolution of these cases—namely,

maximizing the value of their assets by working to achieve a timely closing of the Asset Sales,

consummating various settlements, complying in full with the Examiner's investigation,

participating in the Mediation in order to facilitate the formulation of a Chapter 11 plan, and

proceeding with the Chapter 11 claims resolution process.  Importantly, upon the closing of the

Asset Sales, a number of the Debtors' current employees, including personnel in the Debtors'

legal department, will become employees of Ocwen.  As a result, the Debtors will be operating

with reduced staff, further constraining their ability at this juncture to attend to matters that are

neither urgent operational issues nor directly related to the Debtors' restructuring.  Granting stay

relief at this juncture would undoubtedly invite countless other lift stay motions from the

Debtors' myriad other prepetition claimants, opening the "floodgates" to litigation which would

impose a significant burden on the Debtors and their estates, thereby depriving them of the

"breathing spell" the automatic stay provides and distracting them from addressing the critical

tasks necessary to achieve a successful resolution of the Chapter 11 cases.  The Bankruptcy Code

provides an orderly and centralized claims process meant to prevent a debtor from being forced

to litigate claims in a piecemeal, ad hoc manner.  Granting relief from the stay at this point would

in effect require the Debtors to conduct the claims resolution process in hundreds of forums

across the country.

22.    The fourth <u>Sonnax</u> factor (creation of a specialized tribunal) does not

support relief from the stay because no specialized tribunal has been created to hear the claims

7

brought in the Texas Action.  (Delehey Decl. ¶ 14.)  The Bankruptcy Code specifically

contemplates resolving prepetition claims against the Debtors via a centralized claims resolution

process shepherded by the bankruptcy courts.  This Court has recognized that it can interpret and

apply state law in resolving claims through the bankruptcy process.[8]  Movant's claims are no

exception.

23.    The fifth <u>Sonnax</u> factor (assumption of defense by insurer) does not

support relief because the Debtors pay their legal defense fees and costs out-of-pocket for this

action (and many others).  As a result, requiring the Debtors to defend the Texas Action will

result in increased out-of-pocket defense costs for outside counsel fees and expenses alone.

(Delehey Decl. ¶ 15.)

24.    The sixth <u>Sonnax</u> factor (whether the action primarily involves third

parties) does not support relief because each of the named defendants in the Texas Action are

Debtors, and, if the Texas Action were allowed to go forward, each of the Debtors would be

required to actively participate in the Texas Action to avoid facing an adverse judgment.[9]

25.    The seventh <u>Sonnax</u> factor (whether litigation in another forum would

prejudice the interests of other creditors) also does not support relief, because the interests of the

Debtors' other creditors will be prejudiced if the automatic stay is lifted to allow the Texas

Action to proceed against the Debtors at this juncture in the Chapter 11 Cases.  Having to defend

such an action would deplete estate resources, thereby prejudicing other creditors.  Of greater

significance, lifting the stay would also expose the Debtors to have to defend countless other lift

---

[8]    <u>See</u>, <u>e.g.</u>, <u>In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[T]his
       Court has significant experience in applying state law….").

[9]    <u>See</u> <u>City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)</u>, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying
       motion to lift the automatic stay where the debtor was more than a mere conduit for the flow of proceeds and
       the action impacted the "property and administration of [debtor's] estate, suggesting that continuance of the
       stay [was] proper.").

stay motions.  This would impose a heavy burden on the valuable time and efforts of the Debtors'

employees and retained professionals, tax the Debtors' financial resources, and result in a wholly

unnecessary distraction to the Debtors' focus on achieving the objectives of the Chapter 11

Cases—the maximization of value for creditors.

26.    The tenth and eleventh <u>Sonnax</u> factors (judicial economy and readiness for

trial, respectively) both weigh in favor of denying relief from the stay.  As set forth above, the

Texas Action is in its preliminary phases as the Scheduling Order provided for approximately

nine months of discovery and dispositive motion practice, which process was stayed after just a

few months.  Accordingly, the Texas Action is not ready for trial, and few judicial resources

have been expended in resolving the Texas Action.  The Debtors' priority at this time is in

ensuring a speedy and effective reorganization process, which may be hindered if they are

forced to litigate this or any other stayed suit during the pendency of the Chapter 11 cases, and

particularly at this juncture in the Chapter 11 cases.  (Delehey Decl. ¶¶ 11-13.)  Thus, the

interests of judicial economy and the economical resolution of litigation would best be served by

resolving Movant's claims against the Debtors through the uniform bankruptcy claims process,

which will be utilized to address the thousands of claims filed against these estates, including

claims asserted in the hundreds of legal actions pending against the Debtors.

27.    The twelfth <u>Sonnax</u> factor (balance of harms) weighs in favor of denying

the Motion.  Movant has not demonstrated how the continued suspension of the Texas Action

results in any material prejudice to Movant.  Even if the Movant's claims are meritorious,

they will be accorded general unsecured claims against the Debtors' estates.  Movant will

experience no great benefit if awarded such claims sooner rather than later.  On the other hand,

the cost to the Debtors of lifting the automatic stay at this relatively early stage of the Chapter 11

9

Cases is substantial, particularly in light of the critical hearings and deadlines facing the Debtors over the course of the next several months.  (See Delehey Decl. ¶¶ 11-13.)  As recognized by this Court in connection with other motions for stay relief,[10] the Debtors are working diligently towards consummating the Asset Sales, obtaining approval of the RMBS settlement, complying with the Examiner investigation, and participating in the Mediation.  In the meantime, the Debtors need the protection of the automatic stay to afford themselves the "breathing space" necessary to allow them to restructure and preserve the value of their assets for the benefit of their creditors.  Since the first motion seeking relief from stay was filed, dozens of additional motions seeking relief from the automatic stay to proceed with litigation have been filed and the Debtors and their counsel have received several additional informal requests for such relief.  Forcing a debtor to defend against suits and proceedings brought in other venues distracts and hinders a debtor from focusing on its own reorganization efforts.[11]  The balance of the harms clearly favors maintaining the automatic stay with respect to the Texas Action.

## CONCLUSION

28.    Based on the weight of settled authority and its application to the Motion as described above, the Debtors respectfully submit that Movant have failed to meet his burden.  Substantially all of the applicable Sonnax Factors weigh heavily in favor of maintaining the automatic stay.  As such, the Court should deny the Motion.

---

[10]  See, e.g., Oct. 10, 2012 Hr'g. Tr., at 111:24-112:6; 114:6-8 ("Court:  Now is clearly not the time to lift the stay to permit a trial to go forward in district court in Washington-- the state of Washington.  And I say that because of the very, very large number of contested matters and other important events in this Chapter 11 case that's scheduled between now and the end of January.  So on the basis of burden alone, I will not lift the stay at this point in time. . .  [T]he debtors appropriately are consumed with very, very important matters that are critical to this Chapter 11 case.").

[11]  See Bally, 402 B.R. at 624 (finding that class actions distract the debtor from the central tasks of stabilizing operations and cash flows and hence harms all creditors); Zenith Labs., Inc. v. Sinay (In re Zenith Labs., Inc.), 104 B.R. 659, 666 (D.N.J. 1989) (finding that allowing debtors a sufficient window to reorganize their estates serves the public interest more than allowing class actions to be resolved sooner).

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motion and grant such other relief as the Court deems proper.


New York, New York                    /s/ Norman S. Rosenbaum
Dated: January 22, 2013               Gary S. Lee
                                      Norman S. Rosenbaum
                                      Erica J. Richards
                                      MORRISON & FOERSTER LLP
                                      1290 Avenue of the Americas
                                      New York, New York 10104
                                      Telephone: (212) 468-8000
                                      Facsimile: (212) 468-7900

                                      *Counsel to the Debtors and
                                      Debtors in Possession*

11

**EXHIBIT 1**

**Delehey Declaration**