MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF LAUREN GRAHAM DELEHEY,**
**IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC,**
**IN SUPPORT OF DEBTORS' OBJECTION TO PLAINTIFFS' MOTION TO LIFT**
**STAY FILED BY RICHARD D. RODE [DOCKET NOS. 2153, 2154, AND 2157]**

I, Lauren Graham Delehey, declare as follows:

**A.    Background and Qualifications**

1.    I serve as In-House Litigation Counsel in the legal department (the "**Legal Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have held this position since I joined ResCap on August 1, 2011. In my role as In-House Litigation Counsel at ResCap, I am responsible for the management of residential mortgage-related litigation, including class actions, mass actions and multi-district litigation. I am authorized to

ny-1073589

submit this declaration (the "**Declaration**") in support of the *Debtors' Objection To Plaintiff's Motion for Stay Relief* filed by *pro se* party Richard D. Rode, as of November 7, 2012 (the "**Objection**").[1]

      2.    In my capacity as In-House Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the Texas Action. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' litigation case files, books and records as well as other relevant documents; my discussions with other members of the Legal Department; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters, financial condition and history. In making my statements based on my review of the Debtors' litigation case files, books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants accurately recording, preparing, collecting, or verifying any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

      **B.**    **Litigation Pending Against the Debtors**

      3.    As of January 21, 2013, the Debtors by way of direct claims and counter-claims are defendants, respondents, or are contractually obligated to defend third parties in 1,630 pending litigation and contested foreclosure and bankruptcy matters filed in jurisdictions all around the country. Approximately sixty percent (60%) of these matters concern either (i) defenses asserted in foreclosure, eviction, or borrower bankruptcy proceedings or (ii) title

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

disputes, both of which are exempted from the automatic stay by the Supplemental Servicing Order; twelve percent (12%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not subject to the stay, notwithstanding the Supplemental Servicing Order; and twenty-eight (28%) are stayed. Thus, approximately seventy-two percent (72%) of ResCap's pending litigation and contested foreclosure and bankruptcy matters are not stayed and continue to proceed in various jurisdictions across the country. This is in addition to the tens of thousands of foreclosure actions and borrower bankruptcies the Debtors are parties to in actions pending throughout the fifty states primarily managed by the Debtors' mortgage default group. Notwithstanding the application of the Supplemental Servicing Order, there are still a substantial number of cases –approximately 28% of 1,630 (or 452) cases – that are stayed by the automatic stay, including the action that is the subject of the Motion.

      C.      **The Texas Action**

      4.      On July 21, 2011, Movant filed a petition commencing the Texas Action in the in the District Court of the 125th Judicial District of Harris County, Texas (Cause No. 2011-43161) (the "**Original Petition**"). See Plaintiff's Original Petition, annexed hereto as **Exhibit A**.

      5.      The Defendants filed their Answer to the Original Petition on August 11, 2011. See Answer, annexed hereto as **Exhibit B**.

      6.      On February 6, 2012, Movant served a settlement demand on the Defendants in the amount of $1.2 million. See Demand Letter, annexed hereto as **Exhibit C**.

      7.      Also on February 6, 2012, Movant filed Plaintiff's First Amended Petition (the "**Amended Petition**"). See Plaintiff's First Amended Petition, annexed hereto as **Exhibit D**.

8. The Texas Action was subsequently removed to the District Court on February 9, 2012. See Notice of Removal, annexed hereto as **Exhibit E**.

9. On April 2, 2012, the District Court entered a scheduling order. See Order Following Telephone Scheduling Conference, annexed hereto as **Exhibit F**.

10. As of the Petition Date, the Texas Action remained pending in the District Court.

### D. Lifting the Automatic Stay Will Interfere With the Chapter 11 Cases

11. The Legal Department is tasked with managing litigation in which the Debtors are defendants or respondents in state and federal court, including bankruptcy courts, as well as managing litigation for third parties for which the Debtors have a contractual obligation to defend. The Legal Department plays a very active role in analyzing and strategizing on active litigation matters, working with various departments within the Debtors' various regional offices, collecting all documents and information necessary to analyze each case, including, but not limited to, the following: (i) reviewing documents and information related to discovery, (ii) reviewing all draft pleadings and discovery responses, (iii) witness preparation of deposition and trial witnesses, (iv) directing settlement negotiations, (v) coordinating discussion with internal business personnel, (vi) maintaining the Legal Staff database, (vii) coordinating with local litigation counsel and ResCap bankruptcy counsel, (viii) attending mediations and settlement conferences and (ix) preparing for trial. The Legal Department has been the primary group tasked with assisting in the development and implementation of the Supplemental Servicing Order.

12. As a result of the Debtors' bankruptcy filings and the entry of the Supplemental Servicing Order, the Legal Department's responsibilities have increased to include (i) the review and analysis of individual claims as they arise in conjunction with internal business

ny-1073589                                    4

personnel, local litigation counsel and ResCap bankruptcy counsel to determine the applicability of the Supplemental Servicing Order; (ii) fielding inquiries daily from both its outside litigation counsel and its mortgage default counsel regarding the application of the Supplemental Servicing Order (and will continue to do so as new legal actions arise); (iii) assisting Chapter 11 counsel with the preparation of various motions, responses to motions for relief from stay and other Court filings,[2] as well as various bankruptcy related tasks; (iv) assisting Chapter 11 counsel and internal business personnel with Chapter 11 reporting requirements; (v) assisting with pending discovery with respect to the 9019 settlement with RMBS litigation plaintiffs; (vi) assisting with matters pertaining to the closing of the Asset Sales; (vii) complying with the Examiner's investigation; (viii) assisting with the Mediation and issues related to the formulation of a Chapter 11 plan; and (ix) assisting with the claims reconciliation process. These responsibilities are ongoing and will continue and no doubt expand as these Chapter 11 Cases progress.

13.    Given the multi-faceted role the Legal Department plays in (i) the managing of the Debtors' litigation and contested foreclosure and bankruptcy matters; (ii) addressing the oversight of said litigation; (iii) responding to daily inquiries from outside litigation counsel and mortgage loan default counsel; and (iv) assisting ResCap's bankruptcy counsel and financial advisors with various tasks associated with the closing of the Asset Sales, obtaining approval of the RMBS settlement, participating in the Mediation, cooperating with the Examiner's investigation, and attendant litigation with respect to each of the above, not to mention the various motions and other filings in the Debtors' bankruptcy case, carrying out its

---

[2]    By way of example, the Legal Department had a significant role in the drafting of the motion to approve the Supplemental Servicing Order and the interim Supplemental Servicing Order [Docket No. 181] and participated in the negotiation of the final Supplemental Servicing Order. The Legal Department also, *inter alia*, assisted in the preparation of the Debtors' schedules and statement of financial affairs, their motion to approve ordinary course professionals, and all of the responses to the motions for relief from the automatic stay, as well as other motions filed to date.

ny-1073589                                    5

ordinary course tasks while at the same time discharging its duties in the Chapter 11 Cases has been and will continue to be a monumental task. Following the closing of the Asset Sales, these duties will continue to consume a significant amount of the Legal Department's attention as a number of the Debtors' current employees, including personnel in the Legal Department, will become employees of Ocwen, causing the Debtors to operate with a streamlined staff. Permitting legal actions otherwise stayed by the Debtors' bankruptcy to proceed (not to mention allowing entirely new actions to be commenced), therefore, would create a significant burden on the Debtors by adding an additional workload of up to approximately 452 cases. This in turn would divert the Legal Department's and other critical employees' attention from the critical tasks of running the Debtors' businesses, the administration of the Chapter 11 cases and significantly increase the Debtors' out-of-pocket legal costs.

### E.    Other Sonnax Factors

14.    As far as I am aware, no specialized tribunal has been created to hear any of the claims involved in the Texas Action, which raises both federal and state law claims.

15.    In the vast majority of the cases, including the Texas Action, the Debtors pay their legal defense fees and costs out-of-pocket. As a result, requiring the Debtors to defend the Texas Action will result in increased out-of-pocket defense costs for outside counsel fees and expenses alone.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 22, 2013

          /s/ Lauren Graham Delehey
          Lauren Graham Delehey
          In-House Litigation Counsel for
          Residential Capital, LLC