**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---

**STIPULATION AND ORDER**

Subject to the approval of the Court, this stipulation and order (the "**Stipulation**") is made and entered into by, between, and among the debtors and debtors in possession in the above-captioned bankruptcy case (collectively, the "**Debtors**") and Berkshire Hathaway Inc. ("**Berkshire**"), in connection with the (i) *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed R. Bankr. P. 2002, 6004, 6006, and 9014 for Orders: (I)(A) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. # 61] (the "**Sale Motion**") and (ii) *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Berkshire Hathaway, Inc.; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances,*

*and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief* [Docket No. 2247] (the "**Berkshire Sale Approval Order**").

WHEREAS, venue of this proceeding and the Sale Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

WHEREAS, subsequent to entry of the Berkshire Sale Approval Order, the Debtors and Berkshire negotiated an amendment to the Berkshire APA, which amendment is attached hereto as Ex. 1 (the "Amendment");

WHEREAS, if the Stipulation is not approved, a hearing on the Amendment will take place before this Court on January 29, 2013 at 10:00 a.m. ET;

NOW THEREFORE, it is hereby STIPULATED and AGREED by the Parties that:

1. This Stipulation shall be binding on the Debtors and Berkshire upon execution and approval by this Court, and any prior agreements between or among the parties shall not in any way alter, modify, or affect the terms of this Stipulation.

2. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation.

3. Notwithstanding, anything herein to the contrary, this Stipulation shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMACM, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the United States District Court for the District of Columbia, dated February 9, 2012, and (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012.  The foregoing sentence shall not

modify or amend the terms or provisions of, nor the rights and obligations, under the Berkshire APA and/or the Berkshire Sale Approval Order.

4. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Stipulation.

Dated: January 15, 2013

/s/ Gary S. Lee
Gary S. Lee
Todd Goren
Alexandra Steinberg Barrage

**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-800
Facsimile:  (212) 468-7900

*Counsel to the Debtors and*
*Debtors-in-Possession*

Dated: January 15, 2013

/s/ Thomas Walper
Thomas Walper
Seth Goldman
**MUNGER TOLLES & OLSON LLP**
355 South Grand Avenue
Los Angeles, California  90071
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Counsel for Berkshire Hathaway Inc.*

**IT IS SO ORDERED**

Dated: January 24, 2013
      New York, New York

                                      **_____/s/Martin Glenn_____**
                                        MARTIN GLENN
                            United States Bankruptcy Judge

# Exhibit 1

**EXECUTED AMENDMENT**

<u>EXECUTION COPY</u>

# AMENDMENT NO. 1 TO ASSET PURCHASE AGREEMENT

This AMENDMENT NO. 1 (this "<u>Amendment No. 1</u>"), dated as of January 11, 2013, to the Amended and Restated Asset Purchase Agreement, dated as of November 2, 2012 (the "<u>Asset Purchase Agreement</u>"), is made by and among Berkshire Hathaway Inc., a Delaware corporation ("<u>Purchaser</u>"), and Residential Capital, LLC ("<u>ResCap</u>"), Residential Funding Company, LLC ("<u>RFC</u>"), GMAC Mortgage, LLC ("<u>GMAC Mortgage</u>"), GMACM Borrower LLC ("<u>GMACM Borrower</u>"), and RFC Borrower LLC, each of which is a Delaware limited liability company ("<u>RFC Borrower</u>" and together with ResCap, RFC, GMAC Mortgage and GMACM Borrower, the "<u>Sellers</u>").

**WHEREAS**, the parties hereto desire to amend and restate certain sections of the Asset Purchase Agreement as set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing and intending to be legally bound hereby, the parties hereto agree as follows:

1. <u>Defined Terms</u>. Except as otherwise specified herein or as the context may otherwise require, capitalized terms used in this Amendment No. 1 shall have the respective meanings set forth in the Asset Purchase Agreement.

2. <u>Amendments to Section 1.1</u>.

The following definitions are added to Section 1.1 of the Asset Purchase Agreement, to be included in the appropriate alphabetical location:

" "<u>Adjusted UPB</u>" has the meaning specified in <u>Section 3.2(e)</u>."

" "<u>Principal Reduction</u>" has the meaning specified in <u>Section 3.2(e)</u>."

" "<u>Principal Reduction Adjustment Statement</u>" has the meaning specified in <u>Section 3.2(e)</u>."

" "<u>Purchase Price Adjustment</u>" has the meaning specified in <u>Section 3.2(e)</u>."

" "<u>Reduced Principal Mortgage Loan</u>" has the meaning specified in <u>Section 3.2(e)</u>."

3. <u>Amendment to Section 3.2</u>. Section 3.2 of the Asset Purchase Agreement is hereby amended to add the following after Section (d) thereof:

"(e) **Post-Closing Adjustments for Reduced Mortgage Loans.** The parties hereto acknowledge that the Mortgagors under certain of the Mortgage Loans have been or may be solicited to enter into modifications of such Mortgage Loans pursuant to the DOJ/AG Settlement, and that these solicitations are likely to result in principal reductions of certain Mortgage Loans after the Closing Date (each, a "<u>Principal Reduction</u>"). No later than the fifth Business Day of each month following the Closing Date, commencing in the second month following the Closing Date, Sellers (or their designee) shall prepare and deliver to Purchaser a schedule (the "<u>Principal</u>

Reduction Adjustment Schedule") setting forth, for each Mortgage Loan subject to a Principal Reduction (a "Reduced Principal Mortgage Loan") during the immediately preceding calendar month, the following information:

    (i)    borrower name;

    (ii)    loan number;

    (iii)    the dollar amount of the Principal Reduction;

    (iv)    the effective date of the Principal Reduction;

    (v)    the Closing Date UPB;

    (vi)    the Closing Date UPB minus the dollar amount of the Principal Reduction (the "Adjusted UPB");

    (vii)    the Closing Date Purchase Price (as adjusted pursuant to Section 3.2(b), if applicable);

    (viii)    the Adjusted Purchase Price (determined as set forth below in this Section 3.2(e)), including the details of the calculation thereof;

    (ix)    the difference between the Closing Date Purchase Price and the Adjusted Purchase Price (the "Purchase Price Adjustment"); and

    (x)    if the Reduced Principal Mortgage Loan was subject to a modification in connection with the Principal Reduction that changed the Whole Loan Bucket applicable to such Mortgage Loan from the Whole Loan Bucket that applied for purposes of calculating the Closing Date Purchase Price, a summary of the terms thereof.

    The Adjusted Purchase Price for each Reduced Principal Mortgage Loan shall equal the Adjusted UPB of such Mortgage Loan multiplied by the Whole Loan Purchase Price Percentage for such Mortgage Loan, based on the Whole Loan Bucket applicable to such Mortgage Loan after giving effect to any loan modification entered into in connection with the Principal Reduction as described in clause (x) above, further multiplied by the Purchase Price Document Deficiency Multiplier applicable to the calculation of the Closing Date Purchase Price. If the Adjusted Purchase Price is less than the Closing Date Purchase Price, Sellers shall owe Purchaser the amount of the Purchase Price Adjustment. If the Adjusted Purchase Price is greater than the Closing Date Purchase Price, Purchaser shall owe Sellers the amount of the Purchase Price Adjustment. In the event the Principal Reduction Adjustment Schedule includes more than one Reduced Principal Mortgage Loan, the schedule shall also set forth the net amount owing from the party who owes the greater amount to the other party. No later than the twentieth day of the month in which the Principal Reduction Adjustment Schedule is delivered (or, if such twentieth day is not a Business Day, the next succeeding Business Day), the party owing the net amount shall pay the other party such net amount by wire transfer of immediately available funds to an account or account designated by the recipient thereof.

2

In the event Purchaser disagrees with any of the foregoing calculations with respect to any Mortgage Loan, it shall so notify Sellers no later than the fifteenth day of the month in which the Principal Reduction Adjustment Schedule is delivered (or, if such day is not a Business Day, on the next succeeding Business Day), and the parties shall attempt in good faith to reconcile and agree on the correct Purchase Price Adjustment prior to the twentieth day of such month. If Seller and Purchaser cannot reconcile and agree on the correct Purchase Price Adjustment, they shall submit the calculations to an Independent Accounting Firm for resolution in accordance with Section 3.2(d).

(f) <u>Provision of Information</u>. Purchaser shall, and shall cause its affiliates, servicers and other agents to, prepare and provide Sellers with such information and documents in its or their possession or control (including, without limitation, the terms of any loan modification) as may be reasonably necessary to enable Sellers to prepare, calculate or confirm any report, statement, calculation or amount to be determined or delivered by Sellers under <u>Section 3.2(e)</u>."

4. <u>Conditions to Effectiveness; Reference to and Effect on the Asset Purchase Agreement</u>.

(a) This Amendment No. 1 shall be effective upon (i) the execution and delivery hereof by each of Purchaser and Sellers and (ii) entry of a Final Order of the Bankruptcy Court.

(b) Each reference in the Asset Purchase Agreement to "this Agreement", "hereunder", "hereof" or words of like import shall mean and be a reference to the Asset Purchase Agreement as amended and supplemented by this Amendment No. 1.

(c) Except to the extent specifically set forth herein, the provisions of the Asset Purchase Agreement shall not be amended, modified, waived, impaired or otherwise affected hereby, and the Asset Purchase Agreement and the obligations thereunder are hereby confirmed as being in full force and effect.

5. <u>Governing Law</u>. This Amendment No. 1 shall be governed by and construed in accordance with the Laws of the State of New York without regard to any conflicts of law principles thereof or any other jurisdiction that would apply the law of another jurisdiction and, to the extent applicable, the Bankruptcy Code.

6. <u>Counterparts</u>. This Amendment No. 1 may be signed upon any number of counterparts with the same effect as if the signatures on all counterparts are upon the same instrument.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 1 to the Asset Purchase Agreement as of the day and year first above written.

**BERKSHIRE HATHAWAY INC.**

By _____
   Name: A. Ted Weschler
   Title: Authorized Signatory

**RESIDENTIAL CAPITAL, LLC**

By _____
   Name:
   Title:

**RESIDENTIAL FUNDING COMPANY, LLC**

By _____
   Name:
   Title:

**GMAC MORTGAGE, LLC**

By _____
   Name:
   Title:

**GMACM BORROWER LLC**

By _____
   Name:
   Title:

**RFC BORROWER LLC**

By _____
   Name:
   Title:

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 1 to the Asset Purchase Agreement as of the day and year first above written.

**BERKSHIRE HATHAWAY INC.**

By _____
   Name:
   Title:

**RESIDENTIAL CAPITAL, LLC**

By _/s/ James Whitlinger_____
   Name: JAMES WHITLINGER
   Title: CFO

**RESIDENTIAL FUNDING COMPANY, LLC**

By _/s/ James Whitlinger_____
   Name: JAMES WHITLINGER
   Title: CFO

**GMAC MORTGAGE, LLC**

By _/s/ James Whitlinger_____
   Name: JAMES WHITLINGER
   Title: CFO

**GMACM BORROWER LLC**

By _/s/ James Whitlinger_____
   Name: JAMES WHITLINGER
   Title: CFO

**RFC BORROWER LLC**

By _/s/ James Whitlinger_____
   Name: JAMES WHITLINGER
   Title: CFO