**Presentment Date and Time:  February 6, 2013 at 12:00 p.m. (ET)**
**Objection Deadline:  February 5, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Todd M. Goren
Alexandra Steinberg Barrage
Meryl L. Rothchild

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
|  | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) | |
| Debtors. | ) | Jointly Administered |
|  | ) | |
-------------------------------------------------------------

**NOTICE OF PRESENTMENT OF STIPULATION AND**
**ORDER BETWEEN THE DEBTORS AND OCWEN LOAN SERVICING, LLC**
**APPROVING AMENDMENT NO. 2 TO THE OCWEN APA**

  **PLEASE TAKE NOTICE** that in connection with the *Debtors' Motion Pursuant*

*to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006,*

*and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up*

*Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing;*

*(III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and*

*(B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances,*

*and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto;*

*(III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired*

*Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 61] and the Court's

*Order Under 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014*

*(I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen*

*Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims,*

*Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory*

*Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Related Relief*

[Docket No. 2246], the undersigned will present the attached *Stipulation and Order Between the*

*Debtors and Ocwen Loan Servicing, LLC Approving Amendment No. 2 to the Ocwen APA* (the

"Stipulation and Order") to the Honorable Martin Glenn, United States Bankruptcy Judge, at the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004,

Room 501, for signature on **February 6, 2013 at 12:00 p.m. (Prevailing Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation

and Order must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case

filing system, and be served, so as to be received no later than **February 5, 2013 at 4:00 p.m.**

**(Prevailing Eastern Time)**, upon (a) counsel for the Debtors, Morrison & Foerster LLP,

1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee and Todd M. Goren);

(b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin and Brian S.

Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice,

950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attn: U.S. Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attn: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attn: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attn: Richard M. Cieri); (g) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Ken Ziman & Jonathan H. Hofer)**;**  (h) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Kenneth Eckstein & Douglas Mannal); (i) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attn: Jennifer C. DeMarco & Adam Lesman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (k) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attn: George S. Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that, if a party-in-interest timely files and serves an objection to the Stipulation and Order in accordance with this Notice, a hearing on the Stipulation and Order will take place before this Court on **February 7, 2013 at 10:00 a.m. (prevailing Eastern Time)**.  If no objections to the Stipulation and Order are timely filed, served and received in accordance with this Notice, the Court may enter the Stipulation and Order without further notice or hearing.

NY-1074838

**PLEASE TAKE FURTHER NOTICE** that, due to a power outage, ECF is currently unavailable as of approximately 9:20 a.m. Wednesday, January 30, 2013.  Until ECF resumes functionality, the Debtors are unable to electronically file the Stipulation and Order.  So as to provide due and proper notice of this Stipulation and Order, the Debtors have provided their claims and noticing agent, Kurtzman Carson Consultants, LLC, with the Stipulation and Order so that they may effectuate service and post the filing on the website maintained in these chapter 11 cases.

Dated: January 30, 2013               Respectfully submitted,
       New York, New York

                                         */s/* Gary S. Lee
                                         Gary S. Lee
                                         Todd M. Goren
 Alexandra Steinberg Barrage
 Meryl L. Rothchild
 MORRISON & FOERSTER LLP
 1290 Avenue of the Americas
 New York, New York 10104
 Telephone: (212) 468-8000
 Facsimile: (212) 468-7900

 *Counsel for the Debtors and*
 *Debtors in Possession*

NY-1074838

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- )
                                                           )
In re:                                                     )    Case No. 12-12020 (MG)
                                                           )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                   )    Chapter 11
                                                           )
                                        Debtors.           )    Jointly Administered
                                                           )
---------------------------------------------------------- )

### STIPULATION AND ORDER BETWEEN THE DEBTORS AND OCWEN LOAN SERVICING, LLC APPROVING AMENDMENT NO. 2 TO THE OCWEN APA

Subject to the approval of the Court, this stipulation and order (the "**<u>Stipulation</u>**")
is made and entered into on January 30, 2013 by, between, and among the debtors and debtors in
possession in the above-captioned chapter 11 cases (collectively, the "**<u>Debtors</u>**") and Ocwen
Loan Servicing, LLC ("**<u>Ocwen</u>**" and together with the Debtors, the "**<u>Parties</u>**").

**WHEREAS**, on May 14, 2012 (the "**<u>Petition Date</u>**"), each of the Debtors filed a
voluntary petition for relief under chapter 11 of title 11 of the United States Code (the
"**<u>Bankruptcy Code</u>**") in the United States Bankruptcy Court for the Southern District of New
York (the "**<u>Court</u>**");

**WHEREAS**, on the Petition Date, the Court entered an order jointly
administering the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy
Procedure. Since the Petition Date, the Debtors have operated and managed their businesses as
debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

**WHEREAS**, on the Petition Date, the Debtors filed the *Debtors' Motion
Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002,
6004, 6006, and 9014 for Orders: (I)(A) Authorizing and Approving Sale Procedures, Including*

*Break-Up Fee and Expenses Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 61] (the "**Sale Motion**");

**WHEREAS**, on May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine-member official committee of unsecured creditors [Docket No. 102] (the "**Creditors' Committee**");

**WHEREAS**, on June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket Nos. 454, 674];

**WHEREAS**, on October 23, 2012, the Debtors, pursuant to the Sales Procedures Order,[1] conducted an auction with respect to the Servicing Platform assets at the conclusion of which it was determined that Ocwen offered the highest and best bid for the purchase of the Servicing Platform assets and, accordingly, Ocwen was deemed the successful bidder [Docket No. 2050];

**WHEREAS**, certain Debtors and Ocwen entered into an asset purchase agreement, dated as of November 2, 2012 and amended on November 20, 2012, for the sale of substantially all of the Debtors' loan origination and servicing platform assets (the "**Ocwen**

---

[1]    The "Sale Procedures Order" refers to the Court's *Order Under 11 U.S.C. §§ 105, 363(b) and 365 (I) Authorizing and Approving Sale Procedures, Including Payment of Break-Up Fees; (II) Scheduling Bid Deadline, Auction (If Necessary) and Sale Hearing; (III) Establishing Assumption and Assignment Procedures, Including Procedures for Fixing Cure Amounts; and (IV) Establishing Notice Procedures and Approving Forms of Notice* [Docket No. 538], entered on June 28, 2012.

2

**APA**");[2]

      **WHEREAS**, on November 21, 2012, after the occurrence of a hearing to consider the Debtors' proposed order approving the sale, asset purchase agreement, and assumption and assignment of certain contracts for the proposed sale transaction, the Court entered the *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) (A) Sale Of Debtors' Assets Pursuant to Asset Purchase Agreement With Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "**Ocwen Sale Approval Order**");

      **WHEREAS**, the Ocwen Sale Approval Order, among other things, contemplated the transfer of the Debtors' rights in respect of governmental agency loans owned or guaranteed by Fannie Mae,[3] Freddie Mac, or Ginnie Mae that are serviced by the Debtors (collectively, the "**Agency Loans**").   Specifically, in connection with Ginnie Mae Loans, the Ocwen Sale Approval Order required that Ginnie Mae provide express written consent, in its sole and absolute discretion, before the Debtors could take the following actions: (i) transfer the Mortgage Servicing relating to the Agency Loans of Ginnie Mae to Ocwen; (ii) assume and assign any agreements between any of the Debtors and Ginnie Mae; (iii) propose modification of any agreement between any of the Debtors and Ginnie Mae; and (iv) apply the Ocwen Sale Approval Order to any agreements among the Debtors and Ginnie Mae.  *See* Ocwen Sale Approval Order at ¶ 48;

---

[2]    The Ocwen APA is attached as <u>Exhibit 1</u> to the Ocwen Sale Approval Order (defined herein).

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Ocwen APA.

3

WHEREAS, subsequent to the Court's entry of the Ocwen Sale Approval Order, Ginnie Mae provided the Debtors with a consent letter, dated January 16, 2013 (the "**Consent Letter**") and attached hereto as Exhibit 1, whereby Ginnie Mae conferred continued Ginnie Mae Issuer[4] status to GMAC Mortgage, LLC ("**GMACM**"), one of the Debtors, for a limited time post-Closing, and authorized GMACM to securitize certain loans that are eligible to be pooled under the Pool Issuance and Immediate Transfer program (the "**PIIT Program**") administered by Ginnie Mae. Ginnie Mae's consent to GMACM's continued existence as a Ginnie Mae Issuer is contingent on GMACM's (i) immediate transfer to another Ginnie Mae Issuer of the servicing obligations and "Issuer responsibility" ) for the Mortgage Loans included in each Ginnie Mae Pool, and (ii) successful implementation of the PIIT Program. The Consent Letter thus serves to facilitate GMACM's disposition of Ginnie Mae Loans -by permitting GMACM to sell such loans into Ginnie Mae sponsored securitizations, while simultaneously selling the associated Mortgage Servicing Rights ("**MSRs**") to another Ginnie Mae Issuer, who, in turn, will assume all repurchase, servicing, and Issuer responsibilities in connection with the purchase of the MSRs;

WHEREAS, pursuant to discussions amongst the Parties, the Creditors' Committee, Ginnie Mae, and other third parties, the Debtors determined that it would be in their estates' best interests to facilitate the Debtors' liquidation and disposition of their remaining portfolio of Ginnie Mae Loans;

WHEREAS, the Amendment generally provides that Ocwen, a Ginnie Mae Issuer, would (i) facilitate GMACM's securitization of Mortgage Loans eligible for Ginnie Mae pooling and securitization, (ii) assume the servicing obligations and Issuer responsibility for such

---

[4]    Capitalized and quoted terms used but not defined in this paragraph shall be used and have the meanings ascribed to such terms as provided in the Amendment (as defined below).

4

Mortgage Loans, and (iii) purchase the resulting MSRs in accordance with the PIIT Program at the approximately same purchase price Ocwen agreed to pay in the Ocwen APA for existing Ginnie Mae MSRs on the Closing Date, and the Debtors will now be able to sell the Ginnie Mae Loans into Ginnie Mae securitizations;

WHEREAS, subsequent to the Debtors' receipt of the Consent Letter and the Debtors' discussions with the Creditors' Committee, Ocwen, and Ginnie Mae, the Parties negotiated a second amendment to the Ocwen APA (the "**Amendment**"), attached hereto as Exhibit 2. The Amendment outlines the structure and the terms and conditions by which (i) the Debtors will pool Mortgage Loans and create Ginnie Mae securities, and (ii) Ocwen will purchase the resulting MSRs and assume the related servicing obligations post-Closing. The Debtors believe that the structure for the disposition of the Ginnie Mae Loans as provided for by the Amendment is expected to result in material additional proceeds for the estates;

WHEREAS, the Debtors have determined that executing the Amendment is an exercise of their reasonable business judgment and entering into this Stipulation is in the best interests of the Debtors, their estates, and their creditors; and

WHEREAS, venue of this Stipulation in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

NOW THEREFORE, it is hereby STIPULATED and AGREED by the Parties that:

1.      The Debtors are authorized to enter into the Amendment with Ocwen and take all other actions necessary to effectuate the Amendment pursuant to this Stipulation.

2.      The Amendment, together with the APA (as may be further amended as provided pursuant the terms of the Sale Order) shall be governed by the Sale Order.

3.    The Stipulation and Amendment constitute the entire agreement and understanding between the Parties with regard to the matters addressed herein, and supersede all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between and among the Parties hereto regarding the subject matter of the Stipulation and Amendment.

4.    To the extent there is any inconsistency between the terms of this Stipulation and the Amendment, the terms of the Amendment shall control.

5.    Notwithstanding anything herein to the contrary, this Stipulation shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMACM, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the United States District Court for the District of Columbia, dated February 9, 2012, and (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012.

6.    Neither the Stipulation nor the Amendment may be altered, modified, changed or vacated without the prior written consent of the Parties.

7.    This Stipulation shall be binding upon the Parties as well as any successor, trustee or receiver appointed in these chapter 11 cases.    No provision in any plan of reorganization or liquidation subsequently confirmed in these chapter 11 cases shall contain any provisions inconsistent with the terms of this Stipulation.

8.    This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which taken together shall constitute one

6

and the same agreement.  Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

9.      The Amendment and Stipulation are both subject to the approval of the Court, and each shall become effective upon the Court's entry of this Stipulation.  No other or further notice to creditors or parties-in-interest is required to effectuate the Stipulation or Amendment.

10.      The Parties represent and warrant that each has full power and authority to enter into and perform under the Stipulation, and each of the undersigned counsel represents that he or she is authorized to execute this Stipulation on behalf of his or her respective client.

*[ Remainder of Page Intentionally Left Blank ]*

7

Dated: January 30, 2013                /s/ Gary S. Lee_____
                                       Gary S. Lee
                                       Todd M. Goren
                                       Alexandra Steinberg Barrage
                                       **MORRISON & FOERSTER LLP**
                                       1290 Avenue of the Americas
                                       New York, New York 10104
                                       Telephone:  (212) 468-8000
                                       Facsimile:  (212) 468-7900

                                       *Counsel to the Debtors and*
                                       *Debtors in Possession*


Dated: January 30, 2013                /s/ Jennifer C. DeMarco_____
                                       Jennifer C. DeMarco
                                       Adam Lesman
                                       **CLIFFORD CHANCE US LLP**
                                       31 West 52nd Street
                                       New York, New York  10019
                                       Telephone: (212) 878-8000
                                       Facsimile: (212) 878-8375

                                       *Counsel to Ocwen Loan Servicing, LLC*

**IT IS SO ORDERED**

Dated: _____, 2013
           New York, New York


                                       _____
                                       HONORABLE MARTIN GLENN
                                       UNITED STATES BANKRUPTCY JUDGE

8

## Exhibit 1

**CONSENT LETTER**

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, DC  20410-9000

GOVERNMENT NATIONAL
MORTGAGE ASSOCIATION

**VIA FACSIMILE (PDF) AND CERTIFIED MAIL**           70100780000198465532

Mr. Thomas Marano
Chief Capital Markets Officer
CEO Mortgage Operations
CEO Residential Capital, LLC
1100 Virginia Drive
Ft. Washington, PA  19034

Re:  GMAC Mortgage, LLC - Issuer ID # 1463

Dear Mr. Marano:

        This letter concerns the transfer of Issuer responsibility from GMAC Mortgage LLC
(GMACM) to Ocwen Financial Corporation (Ocwen), in connection with the bankruptcy court sale
of GMACM's assets, which will take place on January 31, 2013.  Ginnie Mae hereby approves and
consents to the transfer subject to, and based on our understanding of, the conditions discussed
below.

        Discussions between GMACM, Ocwen, and Ginnie Mae staff about the structure of the
proposed transfer have been ongoing.  We appreciate, and hereby incorporate, the letter of
understanding sent to Ginnie Mae jointly by Ocwen and GMACM on December 20, 2012.  Ginnie
Mae's primary understanding is that Ocwen will continue GMACM operations on a virtually "as is"
basis for approximately one year from the sale date, to allow for a successful inclusion of the
GMACM technology and portfolio into existing Ocwen systems.  All key areas, including, but not
limited to, loan administration, customer care, home retention, foreclosure, bankruptcy and REO,
will proceed to function under Ocwen as those areas are currently managed by GMACM.  Ocwen's
primary data center, located in Norcross, GA with Denver, Co as the back-up, will continue to be
the repository of all FHA, VA and Ginnie Mae loan/pool level information.

        Any planned operational deviation by Ocwen from GMACM's current servicing approach
to Ginnie Mae loans will require prior notification to Ginnie Mae and subsequent approval for
implementation.  Ocwen will assume full Issuer responsibility for GMACM's Ginnie Mae portfolio
on the effective date of the Ginnie Mae Assignment Agreement, scheduled to coincide with the
bankruptcy sale date of January 31, 2013.  Per the transfer obligations stated in Chapter 21 of
Ginnie Mae's Mortgage Backed Securities Guide, Ocwen will continue to utilize GMACM's
existing custodial accounts and Issuer reporting number for the month of February, leading up to the
systems effective date of March 1, 2013.

GMACM will continue to exist as a Ginnie Mae Issuer for a limited time after the transfer date, solely for the purpose of winding down the Ally bank and GMACM modification pipeline. Ginnie Mae's approval of this limited Issuer status is contingent upon GMACM's successful implementation of PIIT pooling, and will be discussed under separate cover addressed to GMACM. However, if Ginnie Mae acquires additional information that, in Ginnie Mae's sole discretion, causes Ginnie Mae to determine that further forbearance increases Ginnie Mae's risk, Ginnie Mae may at any time effect the termination and extinguishment of GMACM. GMACM's obligations to Ginnie Mae under existing Guaranty Agreements survive the transfer of its Issuer responsibility and portfolio until all conditions under the Guaranty Agreements are satisfied.

If you have any questions, please contact Roy Hormuth, Director, Single Family Division, at (202) 708-1535.

Sincerely,

Michael R. Drayne
Senior Vice President
Office of Issuer and Portfolio Management

## Exhibit 2

**EXECUTED AMENDMENT NO. 2**

EXECUTION COPY

## AMENDMENT NO. 2 TO ASSET PURCHASE AGREEMENT

This AMENDMENT NO. 2 (this "Amendment No. 2" or this "Agreement"), dated as of January 29, 2013, to the Asset Purchase Agreement, dated as of November 2, 2012 and amended as of November 20, 2012 (the "Asset Purchase Agreement"), is made by and among Ocwen Loan Servicing, LLC, a Delaware limited liability company ("Purchaser"), and Residential Capital, LLC ("ResCap"), Residential Funding Company, LLC ("RFC"), GMAC Mortgage, LLC ("GMAC Mortgage"), each of which is a Delaware limited liability company, Executive Trustee Services, LLC, a Delaware limited liability company ("ETS LLC"), ETS of Washington, Inc., a Washington corporation ("ETS WA" and together with ETS LLC, "ETS"), EPRE LLC, a Delaware limited liability company ("EPRE"), GMACM Borrower LLC, a Delaware limited liability company ("GMACM Borrower"), and RFC Borrower LLC, a Delaware limited liability company ("RFC Borrower" and together with ResCap, RFC, GMAC Mortgage, ETS, EPRE and GMACM Borrower, the "Sellers").

WHEREAS, the Asset Purchase Agreement, as in effect immediately prior to giving effect to this Amendment No. 2 (the "Current APA") provides in Section 2.1(c) thereof that, subject to the terms and conditions of the Current APA, Sellers shall sell, and Purchaser shall purchase, the "Ginnie Mae Loans" (as defined in the Current APA), consisting of certain recently originated mortgage loans eligible for inclusion in pools underlying Ginnie Mae-guaranteed securities (the "Ginnie Mae Buy-Sell Obligation");

WHEREAS, notwithstanding the terms of the Current APA, Sellers now desire to retain such recently originated mortgage loans and to pool such mortgage loans, together with other mortgage loans owned or acquired by Sellers which are also eligible for inclusion in pools underlying Ginnie Mae-guaranteed securities but which are not subject to the Ginnie Mae Buy-Sell Obligation, in order to create and sell Ginnie Mae-guaranteed securities into the capital markets;

WHEREAS, Ginnie Mae has authorized GMAC Mortgage to retain its status as an issuer approved by Ginnie Mae (a "Ginnie Mae Issuer") for a limited time after the Closing Date for the purpose of winding down GMAC Mortgage's portfolio of mortgage loans eligible for inclusion in pools underlying Ginnie Mae securities so long as GMACM immediately transfers the servicing obligations and "Issuer responsibility" (as defined by Ginnie Mae) to another Ginnie Mae Issuer;

WHEREAS, Purchaser is a Ginnie Mae Issuer and has agreed to facilitate GMAC Mortgage's securitization of mortgage loans eligible for Ginnie Mae pooling and securitization, to assume the servicing obligations and Issuer responsibility for such mortgage loans, and to purchase the resulting Mortgage Servicing Rights from Sellers at the same price it has agreed to pay for existing Ginnie Mae Mortgage Servicing Rights at the Closing; and

WHEREAS, based on the foregoing, Sellers and Purchaser have agreed to amend the Current APA to remove the Ginnie Mae Buy-Sell Obligation and to set forth the terms on which Sellers shall pool and create Ginnie Mae securities and Purchaser shall purchase the resulting Mortgage Servicing Rights and assume the related servicing obligations.

**NOW**, **THEREFORE**, in consideration of the foregoing and intending to be legally bound hereby, the parties hereto agree as follows:

1.    Defined Terms.  Except as otherwise specified herein or as the context may otherwise require, capitalized terms used in this Amendment No. 2 shall have the respective meanings set forth in the Asset Purchase Agreement.

2.    Amendments to Section 1.1.

(a)    The following definitions are added to Section 1.1 of the Asset Purchase Agreement, to be included in the appropriate alphabetical locations:

" "Ginnie Mae Guide" has the meaning specified in Section 2.16."

" "Ginnie Mae MBS" has the meaning specified in Section 2.16."

" "Ginnie Mae Pool" has the meaning specified in Section 2.16."

" "Ginnie Mae Transfer" has the meaning specified in Section 2.16."

" "Ginnie Mae Transfer Date" has the meaning specified in Section 2.16."

" "Ginnie Mae Transfer Liabilities" means the Assumed Liabilities specified in clause (vi) of the definition of Assumed Liabilities."

" "Holdback Amount" has the meaning specified in Section 3.1(c)."

" "Issue Date" means, with respect to any Ginnie Mae MBS, or Ginnie Mae Pool underlying such Ginnie Mae MBS, the date on which such Ginnie Mae MBS is issued in accordance with the Ginnie Mae Guide."

" "Modified Eligible Loan" means a Ginnie Mae Loan previously repurchased by a Seller from a Ginnie Mae Pool and subsequently modified or otherwise remedied such that it is acceptable for inclusion in a Ginnie Mae Pool in accordance with the Ginnie Mae Guide."

" "New Eligible Loan" means a Ginnie Mae Loan originated by Ally Bank and acquired by a Seller on or after May 1, 2012, which has not previously been included in a Ginnie Mae Pool."

" "PIIT Program" has the meaning specified in Section 2.16."

" "Transfer Date Loans" has the meaning specified in Section 4.17."

" "USDA" means the United States Department of Agriculture, or any successor thereof.

(b)    The definition of "Ginnie Mae Loans" in Section 1.1 of the Asset Purchase Agreement is hereby amended and restated in its entirety to read as follows:

" "Ginnie Mae Loan" means a Mortgage Loan that (i) has been originated or is in the pipeline as of the Closing Date and (ii) is acceptable for inclusion in a Ginnie Mae Pool in accordance with the Ginnie Mae Guide, and as to which, in the case of an FHA Loan, an electronic Mortgage Insurance Certificate (MIC) has been issued by the FHA."

3.    Amendment to Section 2.1(c).    Subsection (c) of Section 2.1 of the Asset Purchase Agreement is hereby amended to read as follows:

" (c) [Reserved],".

4.    Amendment to Section 2.7.    Section 2.7 of the Asset Purchase Agreement is hereby amended by adding the following proviso at the end of the first sentence: ", provided, however, that with respect to the Ginnie Mae Transfer Liabilities: (i) on the Closing Date, Purchaser shall assume and be responsible for only those Ginnie Mae Transfer Liabilities that relate to the applicable Mortgage Servicing Rights transferred and sold to Purchaser on the Closing Date, and Sellers shall have no further obligations with respect thereto; and (ii) thereafter, on each Ginnie Mae Transfer Date, Purchaser shall assume and be responsible for only those Ginnie Mae Transfer Liabilities that relate to the applicable Mortgage Servicing Rights transferred and sold to Purchaser on such Ginnie Mae Transfer Date, and Sellers shall have no further obligations with respect thereto."

5.    Amendment to Section 2.12.    Subsection (a)(ii) of Section 2.12 of the Asset Purchase Agreement is hereby amended by deleting the words "payable in accordance with Section 3.1(c)".

6.    Amendment to Section 2.16.    Section 2.16 of the Asset Purchase Agreement is hereby amended and restated in its entirety to read as follows:

**"Section 2.16 Post-Closing Sale of Ginnie Mae Mortgage Servicing Rights.**

From time to time following the Closing Date, in order to facilitate the liquidation of their remaining Ginnie Mae Loan portfolio, Sellers may pool Ginnie Mae Loans and submit the resulting pools (each, a "Ginnie Mae Pool") for inclusion in Ginnie Mae Mortgage-Backed Securities ("Ginnie Mae MBS") pursuant to the Pool Issuance and Immediate Transfer program (the "PIIT Program") administered by Ginnie Mae pursuant to Section 10-10 of the Ginnie Mae MBS Guide (the "Ginnie Mae Guide").  Purchaser agrees to accept Sellers' transfer  of Issuer responsibility (as defined for purposes of the Ginnie Mae Guide), with respect to each Ginnie

NY2-714014

Mae Pool immediately upon the issuance of the related Ginnie Mae MBS in accordance with the requirements of the PIIT Program, whereupon Purchaser shall automatically become responsible for servicing the Mortgage Loans included in such Ginnie Mae Pool. Sellers and Purchaser shall comply with all applicable requirements of the PIIT Program and the Ginnie Mae Guide in connection with the creation of Ginnie Mae Pools and the issuance of the Ginnie Mae MBS under this Section 2.16.

Simultaneously with the issuance of each Ginnie Mae MBS by Sellers under the PIIT Program, Sellers shall sell, convey, transfer, assign and deliver to Purchaser, and Purchaser shall purchase from Sellers, all of Sellers' right, title and interest in, to and under the Mortgage Servicing Rights with respect to the Mortgage Loans included in the Ginnie Mae Pool underlying such Ginnie Mae MBS (each such simultaneous transfer and sale transaction, a "Ginnie Mae Transfer" and each date such a transaction is effective, the "Ginnie Mae Transfer Date").

The obligation of Purchaser to consummate each Ginnie Mae Transfer shall be subject to the condition that Purchaser shall have received a certificate, signed by duly authorized officers of the applicable Seller or Sellers and dated the applicable Ginnie Mae Transfer Date, to the effect that (i) the representations and warranties of Sellers or any Affiliate Seller contained in Section 4.17 that are qualified by materiality are accurate, true and correct in all respects as of the date of such Ginnie Mae Transfer Date with respect to the related Transfer Date Loans as though made at and as of such date, and (ii) all other representations and warranties of Sellers or any Affiliate Seller contained in Section 4.17 are accurate, true and correct in all material respects as of such Ginnie Mae Transfer Date with respect to the related Transfer Date Loans as though made at and as of such date.

7.    Amendment to Section 3.1. Section 3.1 of the Asset Purchase Agreement is amended to add subsection (c) as follows:

"(c)    (i) The Purchase Price for the Mortgage Servicing Rights relating to any Ginnie Mae Pool created in accordance with Section 2.16 shall be determined on a loan-level basis based on the composition of such Ginnie Mae Pool on the related Issue Date. The portion of the Purchase Price allocable to any New Eligible Loan shall be the servicing value ascribed to such loan as determined by the matrix set forth in Annex A to Schedule 3.1(a). The portion of the Purchase Price allocable to any Modified Eligible Loan shall be determined in accordance with the pricing for "Ginnie Mae MSRs" set forth in Section 1 of Schedule 3.1(a), substituting the "Issue Date" for the term "Closing Date" where such term appears in such section.

(ii) No later than two (2) Business Days following the Issue Date of any Ginnie Mae MBS issued pursuant to Section 2.16, Sellers shall deliver to Purchaser a statement setting forth Sellers' good faith calculation of the Purchase Price due for the related Mortgage Servicing Rights

determined in accordance with Section 3.1(c)(i) above. No later than two (2) Business Days following Sellers' delivery of such statement, Purchaser shall pay the Purchase Price for such Mortgage Servicing Rights, less ten percent (10%) of such amount (the "Holdback Amount"), to Sellers by wire transfer in immediately available funds to the account designated by Sellers.

(iii) Within fifteen (15) Business Days of delivery of the statement setting forth Sellers' calculation of the Purchase Price for such Mortgage Servicing Rights, Purchaser shall either (A) pay the Holdback Amount to Sellers by wire transfer in immediately available funds to the account designated by Sellers; or (B) in the event Purchaser disagrees in good faith with Sellers' calculation of the Purchase Price delivered pursuant to Section 3.1(c)(ii) above, it shall notify Sellers of its disagreement and the basis therefor, including its calculation of the Purchase Price. The parties shall thereupon attempt in good faith to reconcile and agree on the correct Purchase Price. If Sellers and Purchaser cannot agree on the correct Purchase Price within ten (10) days of Purchaser's notice of disagreement, Sellers and Purchaser shall submit the calculations to an Independent Accounting Firm for resolution in accordance with Section 3.2(d). Within three (3) Business Days of the final determination of the Purchase Price for such Mortgage Servicing Rights pursuant to this Section 3.1(c)(iii) or Section 3.2(d), appropriate remittance shall be made (i) in the event the final Purchase Price exceeds the amount paid pursuant to Section 3.1(c)(ii), by Purchaser or (ii) in the event the amount paid pursuant to Section 3.1(c)(ii) exceeds the final Purchase Price, from the Holdback Amount and, if the adjustment exceeds the Holdback Amount, by Sellers (it being understood and agreed that if the adjustment does not exceed the Holdback Amount then Purchaser shall promptly release the balance of the Holdback Amount to Sellers).

8.    Amendment to Article IV. The introductory paragraph to Article IV of the Asset Purchase Agreement is hereby amended to add the following language immediately after the parenthetical in such paragraph: "and, with respect to Section 4.17, as of each Ginnie Mae Transfer Date".

9.    Amendment to Section 4.17. Section 4.17 of the Asset Purchase Agreement is hereby amended by adding the words "and as of each Ginnie Mae Transfer Date as to the Ginnie Mae Loans underlying the Mortgage Servicing Rights transferred and sold to Purchaser on such

5

Ginnie Mae Transfer Date (the "<u>Transfer Date Loans</u>")," immediately following the words "Closing Date".

10.    <u>Amendment to Section 6.29</u>.    The entire text of Section 6.29 of the Asset Purchase Agreement following the Section number is hereby deleted and replaced with "[Reserved]."

11.    <u>Deletion of Schedule M</u>.    Schedule M to the Asset Purchase Agreement is hereby deleted.

12.    <u>Conditions to Effectiveness; Reference to and Effect on the Asset Purchase Agreement</u>.

    (a)    This Amendment No. 2 shall be effective upon (i) the execution and delivery hereof by each of Purchaser and Sellers and (ii) entry of a Final Order of the Bankruptcy Court authorizing the effectiveness hereof.

    (b)    Each reference in the Asset Purchase Agreement to "this Agreement", "hereunder", "hereof" or words of like import shall mean and be a reference to the Asset Purchase Agreement as amended and supplemented by this Amendment No. 2.

    (c)    Except to the extent specifically set forth herein, the provisions of the Asset Purchase Agreement shall not be amended, modified, waived, impaired or otherwise affected hereby, and the Asset Purchase Agreement and the obligations thereunder are hereby confirmed as being in full force and effect.

13.    <u>Governing Law</u>.    This Amendment No. 2 shall be governed by and construed in accordance with the Laws of the State of New York without regard to any conflicts of law principles thereof or any other jurisdiction that would apply the law of another jurisdiction and, to the extent applicable, the Bankruptcy Code.

14.    <u>Counterparts</u>.    This Amendment No. 2 may be signed upon any number of counterparts with the same effect as if the signatures on all counterparts are upon the same instrument.

*[Signature Page Follows]*

NY2-714014

IN WITNESS WHEREOF, the parties hereto have executed this Amendment No. 2 to the Asset Purchase Agreement as of the day and year first above written.

**OCWEN LOAN SERVICING, LLC**

By  /s/ John V. Britti
    Name:  John V. Britti
    Title:  Authorized Signatory

**RESIDENTIAL CAPITAL, LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**RESIDENTIAL FUNDING COMPANY, LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**GMAC MORTGAGE, LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**EXECUTIVE TRUSTEE SERVICES, LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**ETS OF WASHINGTON, INC.**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

7

**EPRE LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**GMACM BORROWER LLC**

By /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

**RFC BORROWER LLC**

By  /s/ James Whitlinger
    Name:  James Whitlinger
    Title:  Chief Financial Officer

8