# EXHIBIT 3

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

| | |
|---|---|
| MICHAEL WHEELER,<br>Plaintiff,<br><br>vs.<br><br>ANGELA C. EADDY; ALLISON<br>CURTIS; JULIE WILLIS; LAUREN<br>ERNST; NANCY MARKS;<br>HOMECOMINGS FINANCIAL,<br>Defendant. | *<br>* Civil Action File Number:<br>* 05-1-10429-34<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## ORDER

The above-styled case came before this Court on Defendant Homecomings Financial Network, Inc's (hereinafter "Homecomings") Motion for Partial Summary Judgment, filed August 7th, 2008. Plaintiff filed his Response to Defendant's Motion for Partial Summary Judgment on October 24th, 2008. Defendant filed its Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment on November 12th, 2008. Plaintiff filed his Amendment to the Original Response to Defendant's Motion for Partial Summary Judgment on November 25th, 2008. Plaintiff, acting pro se, and Defendant, through counsel, appeared before this Court for oral argument on all pending motions on January 5th, 2009.

At oral argument, the Court heard and granted Defendant's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment.

### Findings of Fact

Plaintiff refinanced the mortgage debt for real property located at 6 London Court, Cartersville, Georgia 30120 (the "London Court Property") with Terrace

Mortgage Company on or about September 26th, 2002. Plaintiff secured payment of this loan by executing a Security Deed in favor of Terrace Mortgage ("Terrace"). Plaintiff's mortgage called for 360 monthly payments of principal and interest beginning November 1st, 2002, and continuing every month thereafter until the total amount of the loan was satisfied. Furthermore, Plaintiff was to pay an additional monthly sum to be escrowed for payment of the ad valorem taxes and hazard insurance for the property.

In 2002, shortly after Plaintiff made his first monthly mortgage payment to Terrace, Plaintiff's mortgage was transferred from Terrace to Homecomings. Terrace mistakenly forwarded Plaintiff's first mortgage payment to Homecomings rather than crediting the payment to its own account. In addition, as part of the closing transaction with Terrace, Plaintiff made a Two Thousand dollar ($2,000.00) payment to Terrace for the 2002 ad valorem taxes due on the London Court Property, however, Terrace failed to use said sums to pay the taxes and, as a result, Plaintiff was forced to pay the taxes himself.

Following the transfer of Plaintiff's mortgage from Terrace to Homecomings, Plaintiff began submitting monthly payments to Homecomings, however, Plaintiff failed to include the portion of his payments that was attributable to escrow. Plaintiff stated, "I withheld the escrow when I paid the property tax myself on the London Court Property. I withheld the escrow money for several months deliberately." (Plaintiff's depo. p. 75). Plaintiff made ten (10) consecutive partial payments to Homecomings. Homecomings contends this was a breach of the Security Deed executed by Plaintiff, which specifies that a borrower may only

2

withhold escrow payments with Homecomings' written permission. Homecomings applied the first nine (9) payments to Plaintiff's account, notifying Plaintiff after each payment that the payment was insufficient and that Homecomings maintained the right to return future payments. After receipt of the tenth (10th) partial payment, Homecomings returned same and demanded that Plaintiff make payment of the full amount due under the terms of the Security Deed. Plaintiff failed to either resubmit a full monthly payment or pay the full amount of the mortgage loan due as demanded by Homecomings.

On February 3rd, 2004, Homecomings returned the mistakenly forwarded first mortgage payment to Terrance. As a result of the returned payment to Terrace and Plaintiff's failure to submit a full payment in lieu of the returned tenth (10th) partial payment, Plaintiff's account was two (2) months delinquent. As such, Homecomings notified Plaintiff of the default and began applying late charges to the delinquency. Plaintiff continued to make partial payments each month and, as a result, Homecomings reported Plaintiff's payment delinquency to the credit reporting agencies.

In March 2004, Terrace forwarded to Homecomings the Two Thousand dollars ($2,000.00) it collected from Plaintiff at closing for payment of the 2002 ad valorem taxes on the London Court Property. Homecomings applied those funds to Plaintiff's escrow account.

On or about August 4th, 2004, Plaintiff refinanced a mortgage loan on a separate piece of property located at 1728 Victoria Way, Kennesaw, Georgia 30152 ("Victoria Way Property"). In order to secure repayment of the loan, Plaintiff

executed a Security Deed in favor of the mortgagee, EquiFirst Corporation. In November 2004, servicing of this loan was transferred and assigned to Homecomings. On or about June 25th, 2005, Homecomings sent a letter to Plaintiff notifying him that Homecomings did not have confirmation that a hazard insurance policy had been placed on the Victoria Way Property as was required by the terms of the loan. Plaintiff was informed that unless Homecomings received written confirmation that such a policy was in place, Homecomings would purchase a forced placed insurance policy, and that Plaintiff would be billed for the full costs of that policy - which was Two Thousand Eighty-Four dollars ($2,084.00). Upon receiving no written confirmation from Plaintiff, Homecomings purchased the hazard policy, and Plaintiff was billed for same. Shortly thereafter, Homecomings received written confirmation that a hazard policy had been in place, and, on January 5th, 2006, Homecomings issued Plaintiff a full refund of the cost of the policy.

## Conclusions of Law

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of

4

the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Lau's Corp., Inc., v. Haskins, 261 Ga. 491 (1991).

Homecomings seeks a partial summary judgment with regard to Plaintiff's claims that (1) Homecomings improperly applied monies paid to an escrow account, (2) Plaintiff is entitled to a recovery based on his personal payment of the 2002 ad valorem taxes with respect to the London Court Property, (3) Homecomings improperly reported Plaintiff to credit reporting agencies, (4) Plaintiff is entitled to a recovery based on Homecomings purchase of a forced placed hazard insurance policy with regard to the Victory Way property, and (5) Plaintiff's is entitled to punitive damages.

Plaintiff claims that Homecomings improperly applied certain mortgage payments to escrow as opposed to applying those sums to his principal and interest on the London Court Property loan. Plaintiff specifically references two (2) payments: (1) His initial payment to Homecomings - that was mistakenly forwarded by Terrace and later returned, and (2) The Two Thousand dollar ($2,000.00) payment Plaintiff made to Terrance for the purpose of paying the 2002 ad valorem taxes. This Two Thousand dollar ($2,000.00) payment was eventually forwarded to

5

Homecomings on March 1st, 2004, and was applied directly to Plaintiff's escrow account. Plaintiff contends that, because he was forced to pay the 2002 ad valorem taxes out of pocket when Terrace failed to do so, there was no need to fund an escrow account and, as such, all payments should have been applied directly to the principal and interest on the loan.

Homecomings contends that Plaintiff's first mortgage payment was initially credited by Homecomings as an extraneous payment (as it has been incorrectly forwarded by Terrace) and thus credited to escrow account pursuant to the London Court Security Deed (London Court Security Deed, ¶4). As such, there is no evidence that Homecomings committed any wrongdoing or breached any duty owed to Plaintiff in relation to these funds.

As to the Two Thousand dollars ($2,000.00) payment, Plaintiff concedes that this amount reflected the escrow established when the loan was originally closed in 2002 (Plaintiff's Depo. p. 42). As such, Homecomings asserts that, upon the transfer of those escrow funds from Terrace to Homecomings, they were properly applied to Plaintiff's escrow account pursuant to the Security Deed (Deed, ¶3). Finally, Homecomings notes, with regard to both payments in question, Plaintiff has failed to show either the breach of any contractual provision or legal duty owned him which Homecomings breached or that he suffered any damages on account of the escrow deposits.

"When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of this pleading, but his response, by affidavits or as otherwise provided in this Code section, must set

6

forth specific facts showing there is a genuine issue for trial." O.C.G.A. §9-11-56(e). Upon consideration of the arguments of the parties, the submitted briefs, and pertinent statutory and case law, the Court concludes that Plaintiff has failed to show that Homecomings breached any duty, contractual or otherwise, owed to Plaintiff by the application of the sums in question to Plaintiff's escrow account. As such, the Court concludes that no genuine issue of material fact exists as to this issue.

Plaintiff also claims that Homecomings failed to pay the 2002 property taxes for the London Court Property and that, as a result, Plaintiff was forced to personally pay the taxes on February 19th, 2003 in the amount of Two Thousand Four Hundred and Eleven dollars and Fifty-Two cents ($2,411.52), which included additional interest and penalties.

In response, Homecomings notes that Plaintiff does not specify whether his claim is in tort or contract. However, Homecomings asserts that, if Plaintiff is proceeding with a tort claim, there is no evidence that it was Homecomings' responsibility to pay the taxes. Homecomings contends that Terrace was to make the tax payment with money it collected from Plaintiff at the refinancing closing. If, instead, Plaintiff's claim sounds in contract, Homecomings argues that it would still fail as Plaintiff has not identified any term or provision of the relevant contracts that Homecomings has breached.

Upon consideration of the arguments of the parties, the submitted briefs, and pertinent statutory and case law, the Court concludes that Plaintiff has failed to establish specific facts that would support a genuine issue of material fact as to

7

Homecomings' obligation to pay the 2002 ad valorem taxes. As such, the Court concludes that no genuine issue of material fact exists as to this issue.

Plaintiff also claims his credit rating has been reduced from "Excellent" to "Poor" based on Homecomings' reports to credit agencies that Plaintiff's loan was in default and that, as a result of his new lower credit score, Plaintiff was prevented from refinancing the mortgage on the London Court Property with a third party, Peach Plus Financial. Homecomings asserts that, as Plaintiff has admitted that he purposefully withheld portions of his monthly payment attributable to escrow, it is undisputed that Plaintiff did not make payment of the amount due under the mortgage contract and therefore defaulted on the loan. In addition, Homecomings contends that Plaintiff is not entitled to relief inasmuch as the Federal Fair Credit Reporting Act requires a showing that false information was furnished with malice or willful intent to injure a consumer. 15 U.S.C.A. §1681(h).

Upon consideration of the arguments of the parties, the submitted briefs, and pertinent statutory and case law, the Court concludes that Plaintiff has failed to set forth specific facts that establish Homecomings' negligence in reporting Plaintiff's late payments to credit reporting agencies. As such, the Court concludes that no genuine issue of material fact exists as to this issue.

Plaintiff also contends that he suffered damages as a result of Homecomings' forced purchase of a hazard insurance policy on his Victoria Way Property - even though Plaintiff already had an existing policy on the property. It is undisputed that Homecomings mailed Plaintiff a letter dated June 25th, 2005, stating that Homecomings did not have satisfactory proof of an insurance policy on the

8

Victoria Way Property, and that, if Plaintiff did not provide proof of coverage within thirty (30) days, Homecomings would purchase a policy for the property at Plaintiff's expense. The estimated annual premium for this insurance was listed as Two Thousand Eighty-Four dollars ($2,084.00). Plaintiff testified that he received and read the June 25th, 2005 letter, and that, instead of providing written proof to Homecomings of his existing policy on the Victoria Way Property, he called Homecomings and provided the name and phone number of the store that held the policy on the property.

When Homecomings had not received written proof of coverage, it purchased the insurance policy and billed Plaintiff for same in the amount of Two Thousand Eighty-Four dollars ($2,084.00). In January, 2006, upon discovering that there was an existing insurance policy covering the property, Homecomings issued Plaintiff a full refund of the policy premium. Homecomings asserts that Plaintiff's claim must fail because the purchase of the insurance policy was authorized by the terms of the Security Deed. (Victoria Way Security Deed, ¶5). Additionally, Homecomings argues that Plaintiff has failed to prove damages as the cost of the policy was refunded in full.

Upon consideration of the arguments of the parties, the submitted briefs, and pertinent statutory and case law, the Court concludes that Plaintiff has failed to set forth specific facts that establish Homecomings' negligence/breach of contract or damages in purchasing a hazard insurance policy. As such, the Court concludes that no genuine issue of material fact exists as to this issue.

Finally, Plaintiff seeks an award of punitive damages in the amount of Twenty Million dollars ($20,000,000.00), "for Defendant's recklessness, negligence, property damage and total disregard in the management of both 6 London Court and 1728 Victoria Way, mortgage's." [sic] (Plaintiff's First Amended Complaint, ¶3). Plaintiff acknowledged and confirmed at oral argument that his claim for punitive damages arises from Homecomings' act of reporting Plaintiff to credit reporting agencies.

As the Court has already established that no genuine issue of material fact exists as to Plaintiff's credit reporting claim, Plaintiff's claim for punitive damages based on Homecomings' actions must also fail. "Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." Lewis v. Meredith Corp., 293 Ga. App. 747, 750 (2008).

Upon consideration of all evidence and argument put forth by both parties, and in light of pertinent statutory and case law, Defendant's Motion for Partial Summary Judgment is hereby **GRANTED**. The Court notes that several issues remain pending between the parties. This Order shall not be interpreted to comment on whether Homecomings made errors in handling Plaintiff's two (2) mortgages as to those outstanding matters.

**SO ORDERED**, this ___10___ day of February, 2009.

_____
JUDGE S. LARK INGRAM
COBB SUPERIOR COURT
COBB JUDICIAL CIRCUIT

## CERTIFICATE OF SERVICE

    This is to certify that I have this day mailed (through the United States Postal System) a copy of the foregoing document to the following, to wit:

Michael Wheeler
1728 Victoria Way
Kennesaw, Georgia 30152

Dylan Wilson Howard
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
3414 Peachtree Road, N.E., Suite 1600
Atlanta, GA 30326

This __10__ day of __February__, 2009.

*Mary Catherine Begnaud*
Mary Catherine Begnaud
Staff Attorney
to Judge S. Lark Ingram

11