**EXHIBIT 6**

ny-1073925

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>RESIDENTIAL CAPITAL LLC. et-al. | Case Number:<br>12-12020 |
|---|---|

**RECEIVED**

NOV 1 5 2012

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**MICHAEL WHEELER**

Name and address where notices should be sent:

1728 VICTORIA WAY NW
KENNESAW, GEORGIA 30152

Telephone number: (770) 428-8268    email: msmhw@mindspring.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    *(If known)*

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $_____2,180,000.00_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** THEFT, CONVERSION, MONTHLY MORT. PAYMENTS,_____
    (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>    3  8  7  6 | 3a. Debtor may have scheduled account as:<br><br><br>    (See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br><br>    (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☐Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate**_____% ☐Fixed or ☐Variable
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

    $_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.



B 10 (Official Form 10) (12/11)                                                                                                                                2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.  If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:                                              **RECEIVED**

**8. Signature:** (See instruction #8)                                                           NOV 1 5 2012

Check the appropriate box.

                                                                                                 **KURTZMAN CARSON CONSULTANTS**

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                         (Attach copy of power of attorney, if any.)   or their authorized agent.         (See Bankruptcy Rule 3005.)
                                                                        (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  MICHAEL WHEELER
Title:
Company:                                                                  *Michael Wheeler*                         11/04/2012
Address and telephone number (if different from notice address above):    (Signature)                               (Date)



Telephone number:                    email:
              *Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case.  A separate space is provided for the payment address if it differs from the notice address.  The creditor has a continuing obligation to keep the court informed of its current address.  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing.  Follow the instructions concerning whether to complete items 4 and 5.  Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred.  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.  You may be required to provide additional disclosure if an interested party objects to the claim.

**3.  Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As**:
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here.  A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4.  Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5.  Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.)  A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6.  Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7.  Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt.  You must also attach copies of documents that evidence perfection of any security interest.  You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d).  If the claim is based on delivering health care goods or services, limit disclosing confidential health care information.  Do not send original documents, as attachments may be destroyed after scanning.

**8.  Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011.  If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature.  If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b).  Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration.  Print the name and title, if any, of the creditor or other person authorized to file this claim.  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent.  If the authorized agent is a servicer, identify the corporate servicer as the company.  Criminal penalties apply for making a false statement on a proof of claim.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served:

Attorney for the Defendant's

ALEXANDRIA J. REYES

TROUTMAN SANDERS LLP

5200 BANK OF AMERICA PLAZA

600 PEACHTREE STREET, N.E.

ATLANTA, GEORGIA 30308-2216


Residential Capital

C/o KCC

2335 Alaska Avenue

EL Segundo, Ca. 90245


Superior Court, Cobb County Georgia

Clerk Of The Court

70 Haynes Street

Marietta, Georgia 30090

Hand Delivered


1. Motion for leave of the Automatic Stay, Proof of claim.


By depositing a copy of same in the United States Mail, Priority Mail, properly addressed.

1.

This 9th day of November 2012.


Michael Wheeler


1728 Victoria Way NW
Kennesaw, Georgia 30152
PH 770.428.8268, 770.235.5344
E-mail: msmhw@mindspring.com

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:  Residential Capital, LLC                )
                                                )
     Homecomings Financial LLC.                )
                                                )
     GMAC Mortgage LLC.                       )        Case No. 12-12020
                                                )
     Et-al                                   )
                                                )
Residential Capital, LLC                        )        Chapter 11
c/o KCC                                         )
2335 Alaska Avenue                              )
EL Segundo, Ca. 90245                           )

---

### NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Michael Wheeler has filed papers with the Court seeking relief from the automatic stay under rule 4001 (a), Federal rules of Bankruptcy Procedure, 9014.

This Motion is filed with the Court to allow for the continuation of a Civil Action against Homecomings Financial LLC, and GMAC Mortgage LLC.

The Civil action was filed with the Superior Court, Cobb County, Marietta Georgia 30090 on December 28, 2005. Case No. 05-1-10429-34, S. Lark Ingram, Judge.

Since the original filing of this Civil action, the Petitioner/Defendants have committed the criminal act of "THEFT BY CONVERSION", FORTY FOUR (44) COUNTS, as clearly described by O.C.G.A 16-8-4 2012. This is just the beginning of many offences'.

The Petitioner of the Bankruptcy Court (RESIDENTIAL CAPITAL, HOMECOMINGS FINANCIAL & GMAC MORTGAGE) should file a written response if there is an objection to this Motion, to the Bankruptcy Court for the Southern District of New York.

1.

November 9th, 2012.

Respectfully Submitted,



Michael Wheeler
1728 Victoria Way NW
Kennesaw, Georgia 30152
PH: 770-428-8268
PH: Mobile 770-235-5344
E-mail; msmhw@mindspring.com

Pro-Se

2.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re:  Residential Capital, LLC | ) | |
| | ) | |
| Homecomings Financial LLC. | ) | |
| | ) | |
| GMAC Mortgage LLC. | ) | Case No. 12-12020 |
| | ) | |
| Et-al | ) | |
| | ) | |
| Residential Capital, LLC | ) | Chapter 11 |
| c/o KCC | ) | |
| 2335 Alaska Avenue | ) | |
| EL Segundo, Ca. 90245 | ) | |

---

### BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

The Movant, Michael Wheeler states the following and that all statements are true and correct.

In September of 2002 a mortgage loan was made on a property known as 6 London Court, Cartersville Georgia 30120. Loan number 5477661 with Terrace Mortgage Atlanta, Georgia.

This mortgage loan was transferred or sold to Homecomings Financial LLC., the account number assigned by Homecomings Financial is #7434763876.

In September of 2004 a mortgage loan was made on a property known as 1728 Victoria Way, NW, Kennesaw Georgia 30152. With Equifirst Mortgage loan number 54766.

This mortgage was transferred or sold to Homecomings Financial LLC., the account number assigned by Homecomings Financial is #7438594632.

1.

Both mortgage loans were transferred or sold immediately after there origination.

From the very first payment regarding each mortgage loan the escrow money was misused or not used at all, taxes not paid, payments converted to escrow even though each mortgage loan had its own escrow established at the closing of both mortgage loans.

Over the course of time I was in constant contact with Homecomings Financial, phone calls, letters, certified letters regarding the misuse of and conversion of monthly payment to escrow, as well as non-payment of property taxes for the London Court loan.

The time period as referenced covered a span of three years beginning in December of 2002 up until Homecomings Financial was served with my civil action on December 28, 2005 in the Superior Court, Cobb County Marietta, Georgia 30090.

During this time span every effort was made to aid and assist Homecomings Financial to correct the negligent record/bookkeeping. I was completely ignored in my efforts.

Almost seven years have past since the original civil action was filed against Homecomings Financial. GMAC Mortgage began servicing both mortgage loans during the calendar year of 2009, with devastating results.

Whereas delays were the main mode of action by the now named Defendants, with excessive damage to my credit rating resulting in damage of more than $2,180,000.00 because of the negative reporting of the total dollar amounts of past due mortgage payments.

To date the dollar amount reported by GMAC Mortgage to all credit-reporting agencies, now total over $116,000.00 for both mortgage loans.

2.

1. Attached is a copy of the original civil action and copy of the first amendment to the original complaint, marked as EXHIBIT 1.

2. Attached is a copy of the most recent Superior Court action, Motion For Temporary Leave to Amend The Original Complaint. And a copy of Judge S. Lark Ingram's decision after oral arguments regarding the Defendants Motion For Summary Judgment. EXHIBIT 2.

3. Attached is a copy of a letter from GMAC Mortgage demanding money for what they claim are amounts past due. This is clear "EXTORTION", as the letters are threatening foreclosure. This money has already been paid. EXHIBIT 3.

4. Attached are copies of checks that were issued to GMAC Mortgage covering the period after September of 2009. Which proves that payments were made regarding the London Court mortgage loan. EXHIBIT 4.

5. Attached is a copy of the September 2012 statement for the London Court loan showing the date of the statement September 18, 2012, total amount due $75,168.47, with the due date of September 1, 2009!
Absolutely, not one single payment made was posted to this mortgage loan after September 1, 2009. EXHIBIT 5.

6. Attached is a copy of the most recent monthly mortgage statement regarding the London Court loan which shows the loan balance increased after the October 2012 payment was paid at Wells Fargo Bank on October 1, 2012. EXHIBIT 6.

The checks are factual proof of theft by conversion, which now total more than $71,000.00, or 44 counts of theft by conversion as defined by O.C.G.A. 16-8-4 (2012).

7. Residential Capital, GMAC Mortgage have now resumed to there old tactics which violate there CONSENT ORDER with the Board of Governors of the Federal Reserve System and Federal Deposit Insurance Corporation, Washington D.C.

The document is forty seven pages (47), therefore attached is page one (1) and page forty seven (47), www.federal/reserve.gov/newsevents/press/enforcement/20110413a.htm.

All documents included are copies of the originals, un-altered.

Due to the extended deadline rapidly closing/bar date, documents for Victoria Way mortgage loan are not included, however at the courts request these documents can be produced.

From the motion for Temporary Leave, Superior Court in Cobb County Georgia, "QUOTE" (the mortgage loan for Victoria Way is just as messed up as the London Court mortgage loan).

SUMMARY

My understanding of Title 11, 362(d) (1) & (f), I have no protection from the petitioners of the Bankruptcy Court (Residential capital, Homecomings Financial, GMAC Mortgage) if this Motion to leave the Automatic Stay is denied.

I am sixty six years old, retired and living on a fixed income, (depending on what the stock market does), and if both London Court and Victoria Way properties are foreclosed, who would make a mortgage loan to an individual who's credit report shows three single family homes foreclosed in the past six years. Lexington Plantation Lane was foreclosed in 2006.

My home in Kennesaw Georgia is a northwest suburban city of Atlanta, therefore making an appearance in person would most certainly be a hardship.

Photocopies of checks issued prior to July 1, 2012 have not been redacted the account was closed on July1, 2012. Checks issued after July1, 2012 are redacted.

4.

I am of this opinion, Residential Capital, Homecomings Financial and GMAC Mortgage now feel they are under the protection of the Bankruptcy Court, therefore they can resume accepting my monthly mortgage payments (checks), but do not post each payment as required by contract. A pattern that has existed since the filing of my Civil Action dating back to 2006.

The previous paragraph is not to be construed in any manner other than what I have already proven to be material facts in a court of law before the honorable, S. Lark Ingram, Judge of the Superior Court, Cobb County Marietta, Georgia.

.

Respectfully Submitted,

Michael Wheeler
1728 Victoria Way NW
Kennesaw, Georgia 30152
PH: 770-428-8268
PH: Mobile 770-235-5344
e-mail: msmhw@mindspring.com
Pro-Se

November 9, 2012

"EXHIBIT 1"

*Jay C. Stephenson*
Jay C. Stephenson
Clerk of Superior Court Cobb County

SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

PLAINTIFF;

MICHAEL WHEELER
1728 VICTORIA WAY
KENNESAW, GEORGIA 30152
(Pro-se )

CASE NO. 05-1-10429-34

DEFENDANT'(S);

ANGELA C. EADDY
ALLISON CURTIS
JULIE WILLIS
LAUREN ERNST
NANCY MARKS

HOMECOMINGS FINANCIAL
P. O. BOX 100585
FLORENCE, SC. 29501-0585

HOMECOMINGS FINANCIAL
2711 NORTH HASKELL AVE.
SUITE 900
DALLAS, TX. 75204

HOMECOMINGS FINANCIAL
8400 NORMANDALE LAKE BLVD.
MINNEAPLOLIS, MN. 55437-1083

(Et-al)

---

"Plaintiff's First Amendment To The Original Complaint", ( O.C.G.A. 9-11-15 ).

Comes now, Michael Wheeler, Plaintiff in the above styled Civil Action and files this amendment
to the original complaint against the Defendant's as named:

---

2.

1. The Defendants, Homecomings Financial (ET-AL), by order to Fidelity National Field
Services, Incorporated. Broke into 6 London Court on February 1, 2006 causing damage and theft
of personal property belonging to the Plaintiff. Total cost to replace and repair $7,000.00.
The house was left in an unsecured condition whereas, the exterior and interior garage doors were
standing wide open along with the fence gate that surrounds the back yard which contains an in
ground swimming pool. Creating a dangerous liability situation for the Plaintiff.

2. The resulting break-in at 6 London Court was done under the guise of a Foreclosure, but was
nothing less than retribution because the Plaintiff sued the Defendant the previous month.

3. Subsequently, the Defendants have on two other occasions cut the locks on the fence gate and
back garage door, entering 6 London Court, then leaving the house in an unsecured condition.

4. The Defendants provided false financial information regarding the fraudulent foreclosure of 6
London Court, to MORRIS, SCHNEIDER & PRIOR, L.L.C., Attorneys and Counselors at Law,
1587 Northeast Expressway, Atlanta Georgia.
Who then mailed the fraudulent financial information to the Plaintiff on behalf of the Defendants
using the United States Postal Service.

5. Plaintiff has sustained further financial damage whereas, 13520 Lexington Plantation Lane,
Alpharetta Georgia, a single family residence was foreclosed on October 4, 2006, at a loss of
$1,400,000.00.

6. The foreclosure of Lexington Plantation Lane was a direct result of the Plaintiff's credit rating
being severely damaged by the Defendant's negligent actions.

7. The Defendants have been accepting and cashing checks drawn on the Plaintiffs business for
more than five years, (Wheeler Construction company), amounting to almost $140,000.00 in
mortgage payments for both 6 London Court and 1728 Victoria Way.

3.

8. The Plaintiff's checks which were issued for mortgage payments 6 London Court, have been destroyed or returned by the Defendant's whereas;

  A. The defendants held the check for more than five months before presenting the check for payment even though the check has a type written watermark clearly stating:
  (THIS CHECK IS VOID 30 DAYS FROM ISSUE)
  Check issued for the October 2006 mortgage payment was destroyed..

  B. On three occasions, the Defendant states that the check is a third party check., and were returned to the Plaintiff.

  C. Defendant states that they cannot find the mortgage account, the check was returned to the Plaintiff.

The Plaintiff seeks actual damages which now total $1,800,000.00. This amount changes every six months due to the fact of escalating interest for the Victoria Way mortgage, held by the Defendants.

The Plaintiff seeks to increase the punitive and exemplary damages to an amount not less than $20,000,000.00. For the Defendant's recklessness, negligence, property damage and total disregard in the management of both 6 London Court and 1728 Victoria Way, mortgage's.

Michael Wheeler

*Michael Wheele.*

Attorney Pro-Se
1728 Victoria Way
Kennesaw, Georgia 30152
770.428.9527

ID# 2007-91681114CV
Page 4

## AFFIDAVIT

STATE OF GEORGIA

COBB COUNTY

The following affidavit affixed to the " Plaintiff's First Amendment To The Original
Complaint", states the allegations are true and correct.

*Michael Wheeler*

Michael Wheeler, Pro-se.

NOTARY PUBLIC:

This _29th_ day of November, 2007.

*Jill Scott*

NOTARY PUBLIC



SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

PLAINTIFF;

MICHAEL WHEELER
1728 VICTORIA WAY
KENNESAW, GEORGIA 30152
(Pro-se )

CASE NO. CS-1-10-029-34

DEFENDANT'(S);

ANGELA C. EADDY
ALLISON CURTIS
JULIE WILLIS
LAUREN ERNST
NANCY MARKS

HOMECOMINGS FINANCIAL
P. O. BOX 100585
FLORENCE, SC. 29501-0585

HOMECOMINGS FINANCIAL
2711 NORTH HASKELL AVE.
SUITE 900
DALLAS, TX. 75204

HOMECOMINGS FINANCIAL
8400 NORMANDALE LAKE BLVD.
MINNEAPLOLIS, MN. 55437-1083

(Et-al)

_____

IN ACCORDANCE WITH THE LAWS SET FORTH BY THE STATE OF GEORGIA, YOU

HAVE  (30) THIRTY DAYS FROM DATE OF SERVICE TO FILE AN ANSWER WITH THE

CLERK OF THE SUPERIOR COURT OF COBB COUNTY, GEORGIA.

2.

Defendant(s) can be served at:

CORPORATION PROCESS COMPANY
180 CHEROKEE STREET N.E.
MARIETTA, GEORGIA 30060

Now comes Michael Wheeler and will be referred to in this civil action as the "Plaintiff".

Homecomings Financial, Angela C. Eaddy, Allison Curtis, Julie Willis, Lauren Ernst, Nancy Marks, all will be referred to as the "Defendant(s)", here after.

The Defendant(s) Et-al, does business in Cobb County Georgia, therefore this venue is proper.

The Defendant(s) on or about October 30, 2002 purchased a mortgage from Terrace Mortgage, Atlanta Georgia. This mortgage is for improved property known as 6 LONDON COURT, CARTERSVILLE GEORGIA 30120.
The Plaintiff is the named debtor on the mortgage.

Since the purchase of this mortgage by the Defendant(s) the Plaintiff's credit rating has been greatly damaged by the Defendant(s) due to there complete "Negligence".
Defendant(s) have "Converted" two monthly payments to escrow creating an escrow amount greater than which is allowed by Hud Rules or RESPA. Also other acts of using the escrow funds for purpose not of the intended purpose.

Plaintiff stands to loose three improved properties with a real fair market value of not less than $1,965,000.00. Therefore "Actual Damages" can and will arise from the Defendants(s)
" Negligence and Actions".

3.

WHEREAS:

1. The first payment made by Plaintiff to Defendants was indeed "Converted" to escrow notwithstanding the fact that there was already an escrow account established in an amount over $2,000.00.

2. The Defendants failed to pay the 2002 property tax for 6 London Court, Cartersville Georgia, Plaintiff paid the property tax on February 19, 2003 with late charges and interest, $2,411.52.

3. On or about March 1, 2004 the March payment made by the Plaintiff was "Converted" to escrow notwithstanding the fact that the additional escrow was not needed.

4. On or about April 6, 2005, the Defendants paid out of escrow for 6 London Court, insurance cost for 1728 Victoria Way, Kennesaw Georgia 30152.
1728 Victoria Way, Kennesaw Georgia is NOT part of the loan/mortgage escrow in any manner.

5. On or about July 28, 2005 the defendants proceeded to obtain insurance coverage for 1728 Victoria Way, Kennesaw Georgia, the personal home of the Plaintiff. The amount of this insurance coverage, $2,084.00 which is grossly inflated an unwarranted.

6. The plaintiff warned by way of telephone conversation that the insurance coverage for Victoria Way, Kennesaw Georgia had been paid by the Defendants from an established escrow account.

7. The insurance cost for a full year for 1728 Victoria Way, Kennesaw Georgia, should have been paid from escrow which was in place, for that particular mortgage, from it's own escrow account. Not from escrow for 6 London Court, Cartersville Georgia.

4.

8. Notwithstanding the fact, the Defendants proceeded to purchase the grossly inflated insurance coverage for 1728 Victoria Way, Kennesaw Georgia and was paid from the established escrow account, from Homecomings Financial, P. O. Box 100585, Florence, South Carolina 29501-0585.

9. The plaintiff does have another mortgage with the Defendants, and that mortgage is for 1728 Victoria Way, Kennesaw, Georgia 30152.

10. Both mortgage's, 6 London Court, Cartersville, Georgia 30120 and 1728 Victoria Way, Kennesaw, Georgia 30152, were bought by the Defendants from other mortgage companies. But not at the Plaintiff's request. This is legal.

11. Paying for insurance coverage from one escrow account that has no connection or relation to another mortgage/escrow in regards to insurance coverage, is a strict violation of HUD RULES, REAL ESTATE SETTLEMENT PROTECTION ACT. This is not legal.

12. Since the purchase of the mortgage for 6 London Court, Cartersville Georgia, the Defendants have collected $11,306.83 for escrow dating 10-31-2002 through 11-30-2005.

13. The Defendants have paid out $9,566.30 from the collected $11,306.83 for property tax and insurance, leaving a balance of $1,740.53. While $774.62 of the $11,306.83 was actually paid for insurance coverage for 1728 Victoria Way, Kennesaw Georgia.
Violation of HUD RULES, REAL ESTATE SETTLEMENT PROTECTION ACT.

14. Actual escrow balance is unknown by the Plaintiff because of the "Negligent" manner of the Defendants book keeping or the lack of book keeping.

15. Plaintiff has made all monthly payments as agreed per real estate closing documents from start of loan up to November 1, 2005.

5.

16. The Defendants on no less than (14) fourteen occasions has reported to all major credit reporting business's late payments ranging from 31 to 60 days being late. According to Trans Union Credit Reporting, also Experian and Equifax.

17. Plaintiffs credit rating has been reduced from EXCELLENT TO POOR! And the sole responsible party for this "NEGLIGENT ACT" is HOMECOMINGS FINANCIAL, Et-al, the Defendants.

18. Plaintiff was scheduled to re-finance the existing mortgage with the Defendants for 6 London Court, Cartersville Georgia, with Peach Plus Financial on December 23, 2005 at 10:00AM, this real estate closing did not take place. Canceled one day before scheduled closing.

  A. Peach Plus Financial stated that the Defendants have now reported that a late payment exist in regards to 1728 Victoria Way, Kennesaw Georgia. Therefore, the lender refused to close based on this new information, which is "Fraudulent". And is willfully done to inflict greater harm to the Plaintiff.

  B. The Defendants deliberately withheld posting the November 2005 payment until December 6, 2005, therefore creating a late payment. Plaintiff strongly believes this was done intentionally to create a "Breach of Contract".

19. Plaintiff has made no less than (12) twelve phone calls to the Defendants to help the Defendants rectify there gross errors which are most harmful to the Plaintiff.

20. Plaintiff by way of U. S. Certified Mail, on (4) four occasions, has tried to help the Defendants rectify there gross errors, again which are most harmful to the Plaintiff.

21. The Defendants have call the Plaintiff no less than (600) SIX HUNDRED TIMES, wanting to know when the late payment (s) would be made. Plaintiff explained there were no existing late payments due!

6.

22. On September 6, 2004, Labor Day, the Plaintiff received a call from a person who stated that his name was Ben, and was calling on behalf of Homecomings Financial and wanted to know when the Plaintiff would make a payment which Ben stated was late!

A. Plaintiff speaking to Ben, went through all payment coupons outlining the date each payment was made, and the date each check was paid at Plaintiffs bank. Clearly pointing out there were no late payments. This conversation lasted approximately one hour and twenty minutes. Ben's response, THE COMPUTER SAYS YOU ARE LATE.

B. After my long conversation with Ben, I consider all calls to my self from the defendants to be nothing less than deliberate "HARRASSMENT".

---

The Plaintiff has exercised due care and exhausted all avenues in regards to having the Defendants correct there "Fraudulent and Negligent" actions, and gross misuse of escrow funds for both 6 London Court and 1728 Victoria Way properties.

Therefore, the Plaintiff seeks "Actual Damages" in an amount of not less than $203,295.60, additional interest now paying on the existing mortgage for 1728 Victoria Way, because of damaged credit.

Plaintiff does reserve the right to "Amend this Complaint" based on real additional damages as they occur, which additional damages are looming in the very near future.

In the event of any improved property currently owned by the Plaintiff, is foreclosed, the Plaintiff intends to amend this complaint to include all cost in regards to Monthly Payment Made, Cost of Insurance, Cost of Tax Payment, Cost of Improvements, Loss of Equity. No amount shall be less than actual fair market value as outlined earlier in this Civil Complaint.

7.

Plaintiff seeks "Damages due to Negligence" in an amount of not less than $5,000,000.00.

Plaintiff will seek "Future Damages" in the event that the "Negligence" of the Defendants continues to harm the Plaintiff.

Plaintiff seeks "Punitive Damages" in an amount of not less than $5,000,000.00, based on the outlying fact that the Plaintiffs credit rating has been severely damaged due to the reporting of "Fraudulent" information to all Credit Reporting Business's.

Plaintiff begs of the Superior Court of Cobb County Georgia for a "Speedy Trial" by Jury whereas additional "Actual Damages" can and most likely will occur.


Michael Wheeler

Attorney Pro-Se
1728 Victoria Way
Kennesaw, Georgia 30152
770.428.9527

```
        Cobb County Superior Court
     Ja; C. Stephenson, Clerk of Court
        Transaction Date: 12/26/2005

Case #      : 05-1-10429-CV
Judge       : INGRAM
Transaction #: 451989
Receipt #   : 451889

DESCRIPTION                           TOTAL
----------------------------------------------

DAMAGES TORT                          $80.00
  Base Cost: 1 *    $80.00
Paid By 1st DEF
SHERIFF                               $25.00
  Base Cost: 1 @    $25.00

Case Total                           $105.00
----------------------------------------------

Amount Paid                          $105.00

  Recie of: 1 - WHEELER MICHAEL
```

```
        Cobb County Superior Court
     Ja; C. Stephenson, Clerk of Court
        Transaction Date: 12/26/2005

Transaction #: 451989
Received of: 1 - WHEELER MICHAEL

CASE INFORMATION                     AMOUNT
----------------------------------------------

Case # 05-1-10429-CV                 $105.00
Receipt # 451889

Transaction Total                    $105.00

PAYMENT TYPE                 PAYMENT AMOUNT
----------------------------------------------

Cash Payment                         $105.00

Payment Total                        $105.00
```

**SHERIFF'S ENTRY OF SERVICE**

Marietta. Georgia       COBB COUNTY

Superior Court ❏       State Court ❏

Attorney's Address

Civil Action No. _____

Date Filed _____

Name and Address of Party to be Served

_____ Plaintiff

VS.

_____ Garnishee _____ Defendant

| | |
|---|---|
| **PERSONAL** ☐ | I have this day served the defendant _____ personally with a copy of the within action and summons |
| **NOTORIOUS** ☐ | I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.<br><br>Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant. |
| **CORPORATION** ☐ | Served the defendant _____ a corporation by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in this County. |
| **TACK & MAIL** ☐ | I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail. First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons. |
| **NON EST** ☐ | Diligent search made and defendant _____ not to be found in the jurisdiction of this Court. |

This _____ day of _____, 20____

_____
**DEPUTY**

SHERIFF DOCKET _____   PAGE _____

_____
**COBB COUNTY, GEORGIA**

WHITE: Clerk    CANARY: Plaintiff Attorney    PINK: Defendant

"EXHIBIT 2"

COBB COUNTY GA.
IN THE SUPERIOR COURT OF COBB COUNTY
FILED IN OFFICE

STATE OF GEORGIA        2012 JUL 16 PM 3: 55

MICHAEL WHEELER,              *
    Plaintiff,                         *    Civil Action File Number:
                                       *    05-1-10429-36  COBB SUPERIOR COURT CLERK
vs.                                 *
                                       *
HOMECOMINGS FINANCIAL,       *
    Defendant.                          *

## ORDER

    The above-styled case came before this Court on Defendant Homecomings

Financial Network, Inc's (hereinafter "Homecomings") Motion for Summary

Judgment, filed January 17th, 2012. Plaintiff filed his Response to Defendant's

Motion for Summary Judgment on February 16th, 2012. Defendant filed its Reply

Brief in Support of its Motion for Summary Judgment on March 16th, 2012.

Plaintiff, acting pro se, and Defendant, through counsel, appeared before this Court

for oral argument on Defendant's Motion for Summary Judgment on June 18th,

2012.

### Findings of Fact

    The Court refers to and hereby adopts the Findings of Fact set forth in its

February 10th, 2009 Order granting Defendant's previous Motion for Partial

Summary Judgment. Defendant now moves for summary judgment on Plaintiff's

remaining claims arising out of the insurance payment from the London Court

escrow account and the alleged trespass on London Court by Homecoming's agent.

## Conclusions of Law

"To prevail at summary judgment under OCGA § 9-11-56, the moving party

must demonstrate that there is no genuine issue of material fact and that the

undisputed facts, viewed in the light most favorable to the nonmoving party, warrant

judgment as a matter of law. A defendant may do this by showing the court that the

documents, affidavits, depositions and other evidence in the record reveal that there

is no evidence sufficient to create a jury issue on at least one essential element of

plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any

essential element of plaintiff's claim, that claim tumbles like a house of cards. All of

the other disputes of fact are rendered immaterial. A defendant who will not bear the

burden of proof at trial need not affirmatively disprove the nonmoving party's case;

instead, the burden on the moving party may be discharged by pointing out by

reference to the affidavits, depositions and other documents in the record that there

is an absence of evidence to support the nonmoving party's case. If the moving party

discharges this burden, the nonmoving party cannot rest on its pleadings, but rather

must point to specific evidence giving rise to a triable issue." Lau's Corp., Inc., v.

Haskins, 261 Ga. 491 (1991).

In his amended complaint, Plaintiff asserts that Homecomings is liable for

trespass because Defendant's agent allegedly entered London Court without

permission and left the property unsecured, resulting in a theft of personal property

from the premises. Defendant contends that the security deed authorized

Homecomings to enter London Court in the event of Plaintiff's default under the

deed. More specifically, Defendant assets that Plaintiff's decision to withhold

2

escrow payments for multiple months amounted to a default under the deed, thus giving Homecomings the right to access the property.

Upon consideration of the arguments of the parties, and pertinent statutory and case law, most notably <u>Tacon v. Equity One, et al</u>, 280 Ga.App. 183 (2006), the Court finds that, as a matter of law, Defendant's Motion for Summary Judgment as to Plaintiff's claims for trespass is hereby **GRANTED**. As to all remaining claims, the Court finds that a genuine issue of material fact exists such that a grant of summary judgment on those claims would be inappropriate at this time. To that end, Defendant's Motion for Summary Judgment as to all other claims is hereby **DENIED**.

**SO ORDERED**, this ___16___ day of July, 2012.

JUDGE S. LARK INGRAM
COBB SUPERIOR COURT
COBB JUDICIAL CIRCUIT

## CERTIFICATE OF SERVICE

This is to certify that I have this day mailed (through the United States Postal System) a copy of the foregoing document to the following, to wit:

Michael Wheeler
1728 Victoria Way
Kennesaw, Georgia 30152

A. William Loeffler
Troutman Sanders LLP
5200 Bank of America Plaza
600 Peachtree Street NE
Atlanta, Georgia 30308-2216

This __16__ day of __July__ , 2012.


Mary Catherine Begnaud
Staff Attorney
to Judge S. Lark Ingram

4

CERTIFICATE OF SERVICE

This is to certify that I have this day served:

ALEXANDRIA J. REYES

TROUTMAN SANDERS LLP

5200 BANK OF AMERICA PLAZA

600 PEACHTREE STREET, N.E.

ATLANTA, GEORGIA 30308-2216

Attorney for the Defendant's, with a copy of:

1. Plaintiffs motion for temporary leave to amend the original complaint.

By depositing a copy of same in the United States Mail, Certified Mail, properly addressed.

This 29th Day Of June 2012.

Michael Wheeler

*[signature]*

Pro-se
1728 Victoria Way
Kennesaw, Georgia 30152
770.428.8268, 770-235-5344

SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA


PLAINTIFF;

MICHAEL WHEELER
1728 VICTORIA WAY
KENNESAW, GEORGIA 30152
(Pro-se )

CIVIL ACTION

DEFENDANT'(S);                          FILE NO. 05-1-10429-34

S. LARK INGRAM, JUDGE

HOMECOMINGS FINANCIAL
P. O. BOX 100585
FLORENCE, SC. 29501-0585

HOMECOMINGS FINANCIAL
2711 NORTH HASKELL AVE.
SUITE 900
DALLAS, TX. 75204

HOMECOMINGS FINANCIAL
8400 NORMANDALE LAKE BLVD.
MINNEAPLOLIS, MN. 55437-1083

(Et-al)

_____

MOTION FOR TEMPORARY LEAVE  TO AMEND THE ORIGINAL COMPLAIANT

_____


1.

Plaintiff files this motion for temporary leave to allow for additional pleadings regarding the conduct of the Defendants during the past six years and after the filing of the Original Complaint. As provided  (O.C.G.A. 9-11-15 AMENDED AND SUPPLEMENTAL PLEADINGS).

## BRIEF HISTORY

During the past six years and six months the Defendants have changed law firms at least three times, changed attorneys within the three law firms on countless occasions as a means to delay, delay, delay, hoping that the Plaintiff will quit, stop or just go away, not going to happen!

As of this date June 27, 2012 the Plaintiff has mailed to the Defendants each and every monthly mortgage payment for both London Court and Victoria Way mortgage loans.

It is the Plaintiffs understanding that GMAC Mortgage is the Parent Mortgage Company of Homecomings Financial Network LLC, Homecomings Financial, Mortgage Servicing, all are subsidiaries of there Parent Company "ALLY BANK". Therefore reference to GMAC Mortgage will be made in this Motion.

GMAC Mortgage begin servicing the mortgage loans for London Court and Victoria Way During the calendar year of 2009

Since the Defendants retained the services of Troutman Sanders, each and every monthly mortgage payment has been returned to the Plaintiff beginning in October of 2011 and continuing through June of 2012. This is done deliberately to inflict additional harm to the plaintiffs credit rating.

Since early 2006 just after Plaintiff filed his original complaint (December 28, 2005), the Defendants including GMAC Mortgage at random return monthly mortgage payments for various reasons as stated, Cannot find the account, not the amount due, third party check, or even posting payments to mortgage loan in which the payment was not intended.

2.

During 2006, 2007, 2008, 2009, 2010 and 2011 the Defendants have accepted monthly mortgage payments drawn on the Wheeler Construction Account but have not credited the payments to London Court or Victoria Way mortgage loans, as of this date June 27, 2012, more than $55,920.00 is missing and the Defendants have "UNJUST ENRICHED THEMSELVES" and have "MADOFF" with a minimum of $55,920.00 of the Plaintiffs money.

As of June 27, 2012 the Defendants are reporting the combined mortgage loans are past due in an amount of $101,000.00. This is absolutely not true. Therefore the Plaintiff must express the importance of providing the actual photo copies of each check that was issued to the Defendants which clearly indicates the date, amounts and account numbers. Further stipulating that many checks issued for the monthly mortgage payments were not credited to the account as intended.

At Plaintiffs request, (not a Discovery request) Wells Fargo Bank (FORMALY KNOWN IN GEORGIA AS WACHOVIA BANK), is in the process of providing photo copies of each individual check, made payable to Homecomings Financial, Homecomings Mortgage and GMAC Mortgage.
The difficulty has been retrieving the photo copies from the old Wachovia bank records, most of the requested photo copies have been completed, or about 90% as of June 27, 2012.

---

## CITE

1. CATALAN v. GMAC MORTGAGE CORP. NO. 09-2182 (FINDLAW) UNITED STATES COURT OF APPEALS, SEVENTH CIRCUIT. This Civil Action by Catalan and Morris Plaintiffs-Appellants v. GMAC Mortgage Corp., Defendant-Appellee is almost an exact mirror to the Plaintiff's Complaint against the Defendants on file with this court.
A copy of the Courts finding is attached.
"EXHIBIT 1".

## MATERIAL FACTS

2. The "REAL ESTATE SETTLEMENT PROCEDURES ACT", USC TITLE 12,
CHAPTER 27, SECTIONS 2600 and all, also HOUSING AND URBAN DEVELOPMENT,
TITLE 24, PART 3500, SECTION 3500:17, "THE REAL ESTATE SETTLEMENT
PROCEDURES ACT", control, regulate and set forth rules which are mandated in relationship to
Government backed mortgage loans as well as none backed Government loans.

3. The original loan for London Court was established with Terrace Mortgage on September
26, 2002, with the first payment due date of November 1, 2002. Loan number 21171. The first
payment was made using personal check #1981.
However the funds were paid to Homecomings Mortgage by Terrace Mortgage as evidenced by
Homecomings on loan number 0434763876 which was and remains the loan account number for
London Court.
Proof that Homecomings Financial was the mortgage loan servicer.
"EXHIBIT 2".

4. This first payment was converted entirely as escrow ($1754.02) as demonstrated in the
Defendants on loan history and made available to the Plaintiff and dated August 14, 2004.
"EXHIBIT 3".

5. At closing of the London Court mortgage loan an escrow amount was created $1809.00,
(Mortgage loan documents) plus escrow amounts included with the first four monthly mortgage
loan payments, $808.11, these two amounts along with the converted monthly payment totals,
$4371.46. This amount of escrow is more than triple the amount allowed by Title 24 Housing
And Urban Development Act, Part 3500 Real Estate Settlement Procedures Act, Section 3500:17.
Wherein the rules are clear, a Mortgage Company may not collect more than $1/12^{th}$ of the
expected amount needed to payout for Taxes and Insurance on a monthly basis, and the maximum
amount can not be greater than $1/6^{th}$ of the total.
"EXHIBIT 4".

4.

6. The defendants never responded to the Plaintiff's qualified written request regarding the escrow money, letter dated February 27th 2003, and second notice of the same letter. Both letters were mailed Certified.

"EXHIBIT 5".

7. The defendants only responded to my letters regarding the escrow money dated February 17, and February 22, 2004, but only after stating in the letters that legal action would take place if the Defendants continue to refuse, respond and correct the escrow account.
Both letters were mailed certified a year after the first and second letters in February 2003.
A complete failure to adhere to the rules set forth, Title 12, Chapter 27, Section 2605 of the Real Estate Settlement Procedures Act U.S.C.

"EXHIBIT 6".

8. Stating that legal action against the Defendants in the letter dated February 17, 2004, this was clear notice, required notice of impending legal action in accordance with RESPA.

9. The Defendants begin reporting negative credit information in April of 2004, therefore preventing any chance of refinancing the mortgage loan for London Court in an effort to get away from Homecomings Financial, in other words locking the Plaintiff into the existing mortgage. The Plaintiff made four attempts to refinance London Court but was denied on each occasion due to negative information on the Plaintiff's credit history.

10. The Defendants paid out of escrow from the London Court mortgage loan to Auto-Owners Insurance Co. for the "Annual Insurance Coverage" on the Victoria Way mortgage loan.
Then the Defendants paid out of escrow from the London Court mortgage loan for it's own "Annual Insurance Coverage", which is proper.
However the Defendants never replaced the escrow money used for the Victoria Way insurance back into the London Court escrow. Ignorance is not a defense in the eyes of the law.

"EXHIBIT 7".

5.

11. Moving forward to November of 2005 for the London Court mortgage which was paid by the Plaintiff of November 4, 2005 but not submitted for payment by the Defendant until December 5, 2005, clearly holding this check is a violation and breech of contract as referenced in GATALAN v. GMAC MORTGAGE.

Secondly, the mortgage statement indicates an amount past due, collection of late charges, additional escrow. This is a result by the Defendants having never correcting there error after returning the first monthly payment to Terrace Mortgage.
"EXHIBIT 8".

12. The Plaintiff mailed to the Defendants the monthly payments for December 2005 and January 2006, ( London Court & Victoria Way) all checks issued for these payments were never presented for payment at Main Street Bank, the Plaintiff's Bank of record through and until the end of March of 2006, also checks were never returned to the Plaintiff, the whereabouts of these four checks are unknown.

13. On December 28, 2006 the Plaintiff begin this Civil Action, realizing every effort made would not change the thought process of mindless robots.

14. The Plaintiff issued checks for the London Court mortgage payments with amounts that included the December 2005, January 2006 and February 2006 including late charges, escrow, principal and interest.

Also checks were issued to Homecomings Mortgage for the March and April 2006 monthly payments, all of these checks were returned by the Defendants Attorney of record in 2006, GAMBRELL & STOLZ LLP, by Jonathan Green.
"EXHIBIT 9".

6.

15. The Defendants stop mailing to the Plaintiff the required monthly mortgage statements covering a period of "TWENTY MONTHS" beginning in March of 2006 and continuing until November 19, 2007, London Court Mortgage.

The November statement for London Court clearly shows an amount due of $42,217.82 and a due date of May 1, 2006.

Attached are Photo Copies of checks drawn on the Wheeler Construction Company account, made payable to Homecomings Mortgage and paid at Wachovia Bank (Wells Fargo Bank) with the total of all checks amounting to $30,545.98. The check photo copies, cover this "TWENTY MONTH" period of the required monthly mortgage payments for London Court.

"EXHIBIT 10".

16. The most recent copy of the London Court mortgage statement shows an amount of $69,292.46, total amount due. Also showing the due date on the mortgage payment coupon of September 1, 2009. The Defendants are reporting $29,000.00 are past due for Victoria Way to all credit reporting agency's, business, company's, etc,. Not including June, 2012.

"EXHIBIT 11".

17. Today June 28, 2012, at 2:55 PM my door bell sounded, I the Plaintiff answered the door bell and there was an individual female stating she represented GMAC Mortgage LLC., and handed to myself a short torn note which contained the message that I should contact the mortgage company by calling 1-800-850-4622. Not only have the defendants returned all mortgage payments since October 2011, now the Defendants are resuming there "HARRASSMENT" by making there unannounced visits. This idiotic, stupid maddening behavior must stop.

"EXHIBIT 12".

Therefore, the Plaintiff is requesting the Superior Court of Cobb County Georgia issue a Restraining Order against the Defendants, halting all contact with the exception of only the monthly mortgage statement and/or the annual escrow statement.

The restraining order to remain in effect until this Civil Action is complete.

7.

SUMMARY

Paragraph 15 which includes exhibit 10 is just the beginning of what will and is to follow upon
the Superior Court granting this Motion For Temporary leave. This is just the tip of the proverbial
ice burg.

The Plaintiff has clearly demonstrated that the Defendant has indeed "CONVERTED"
$30,545.98 of monthly mortgage payments to use as "THEY" choose, as proven in paragraph 15,
Exhibit 10.

It is proven and clear the Defendants, Homecomings Financial/Mortgage, have committed  the
criminal act of "CONVERSION" of real money, also the criminal act of "THIEFT BY TAKING"
after the conversion.

The total sum of all checks/money was intended for monthly payments in relationship to the
Servicing of the London Court mortgage loan, The Plaintiff did not at any time submit or give
permission for the Defendants to use this money for any purpose except for the intended purpose.

The Victoria Way mortgage loan with the Defendants, nothing has changed, the Defendants
have this mortgage loan messed up and mismanaged as bad as London Court.

At 12:26 PM, June 29th 2012 the Plaintiff received a phone call from Wells Fargo Bank, they
now have retrieved the final photo copies of the monthly mortgage payment checks, monthly
mortgage payments made to the Defendants, HOMECOMINGS FINANCIAL/MORTGAGE
AND GMAC MORTGAGE.

Therefore, an amendment to this motion will be forth coming which will clearly demonstrate
the mortgage loan activity for both London Court and Victoria Way, 2008, 2009, 2010, 2011 and
2012. In addition this forth coming amendment will clearly show that the Plaintiff never stopped
making his monthly mortgage payments.

The Defendants have never at any time during the past "SIX YEARS & SIX MONTHS", filed a complete loan history (ACTUAL RECORD) with this Court pertaining to the London Court & Victoria Way mortgage loans. The Defendants claims are nothing more than "HEARSAY" without the production of the loan history's.

Therefore the Plaintiff urgently request the granting of , "motion for temporary leave".

Respectfully Submitted,

Michael Wheeler

Michael Wheeler, Pro-Se
1728 Victoria Way
Kennesaw, Georgia 30152
770-428-8268 & 770-235-5344

9.

"EXHIBIT 1"

 FOR LEGAL PROFESSIONALS

United States Court of Appeals,Seventh Circuit.

# CATALAN v. GMAC MORTGAGE CORP

### Saul H. CATALAN and Mia Morris, Plaintiffs-Appellants, v. GMAC MORTGAGE CORP., Defendant-Appellee.

### No. 09-2182.

### Argued Feb. 12, 2010. -- January 10, 2011

Before EASTERBROOK, Chief Judge, HAMILTON, Circuit Judge, and SPRINGMANN, District Judge.*

Keith J. Keogh (argued), Keogh Law, Ltd., Chicago, IL, for Plaintiffs-Appellants.Steven P. Blonder, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Thomas J. Cunningham, Simon A. Fleischmann (argued), Locke Lord Bissell & Liddell LLP, Chicago, IL, for Defendants-Appellees.

Plaintiffs Saul H. Catalan and Mia Morris sued defendants RBC Mortgage Company and GMAC Mortgage Company under the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and under Illinois law for gross negligence, breach of contract, and willful and wanton negligence. The district court dismissed the plaintiffs' gross negligence claim as merely duplicating the willful and wanton negligence claim. The court granted summary judgment to GMAC Mortgage on the plaintiffs' RESPA, breach of contract, and remaining negligence claims. The plaintiffs appeal those decisions. We reverse the grant of summary judgment for GMAC Mortgage on the plaintiffs' RESPA and breach of contract claims, and we affirm summary judgment on their negligence claims.[1]

I. The Real Estate Settlement Practices Act

Before digging into the details of plaintiffs' maddening troubles with their mortgage, we provide a sketch of the relevant RESPA requirements. RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and

assignment of those loans. See 12 U.S.C. § 2601 (Congressional findings). The statute imposes a number of duties on lenders and loan servicers. Most relevant here are the requirements that borrowers be given notice by both transferor and transferee when their loan is transferred to a new lender or servicer, 12 U.S.C. § 2605(b) and (c), and that loan servicers respond promptly to borrowers' written requests for information, § 2605(e).

The details of the requirement for responding to written requests will become relevant here. First, it takes a "qualified written request" to trigger the loan servicer's duties under RESPA to acknowledge and respond. The statute defines a qualified written request as written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B). To qualify, the written request must also include the name and account of the borrower or must enable the servicer to identify them. Id.

Within 60 days after receiving a qualified written request, the servicer must take one of three actions: either (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable. See 12 U.S.C. § 2605(e)(2)(A), (B), and (C). No matter which action the servicer takes, the servicer must provide a name and telephone number of a representative of the servicer who can assist the borrower. See id. During the 60-day period after a servicer receives a qualified written request relating to a dispute regarding the borrower's payments, "a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." 12 U.S.C. § 2605(e)(3).

RESPA provides for a private right of action for violations of its requirements. 12 U.S.C. § 2605(f). The provision for a private right of action includes a "safe harbor" provision, which provides in relevant part that a transferee service provider like GMAC Mortgage shall not be liable for a violation of section 2605 if, "within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid." 12 U.S.C. § 2605(f)(4).

II. The Facts

Because the plaintiffs appeal the district court's grant of summary judgment, we review the trial court's decision de novo, viewing all evidence in the light most favorable to and drawing all reasonable inferences for the plaintiffs, as the non-moving parties. See

Fed.R.Civ.P. 56(c); Hukic v. Aurora Loan Services, 588 F.3d 420, 432 (7th Cir.2009); Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir.2006). We trace the plaintiffs' problems with their original mortgage servicer, then with the transfer of the mortgage to GMAC Mortgage, as relevant to plaintiffs' claims that GMAC Mortgage violated RESPA by failing to provide notice of the transfer and by failing to respond to their qualified written requests, and by failing to correct erroneous information it had given to credit-reporting services.

Plaintiffs' Problems with RBC Mortgage: In June 2003, the plaintiffs bought a home in Matteson, Illinois. They obtained a Federal Housing Administration loan by executing a mortgage and note in favor of RBC. At the outset, theirs was a 30-year fixed loan at 5.5% annual interest with a monthly payment of $1,598 that included principal, interest, and escrow.

Although the plaintiffs' first payment was not due until August 1, 2003, RBC incorrectly entered the plaintiffs' mortgage into its computer accounting system to show a first payment due date of July 1, 2003. Because of this error, when the plaintiffs made their first payment they were already behind-at least according to RBC's system. By the time the plaintiffs made their second payment, RBC had determined that their loan was in default, and it increased their monthly payment amount to $1,787. The plaintiffs, at first unaware of the increase, and then, without receiving an explanation of the increase, continued to send their mortgage payments for the original amount. RBC returned those checks uncashed.

RBC filed for foreclosure on the plaintiffs' home on February 26, 2004. In May and June, the plaintiffs provided checks to RBC in an attempt to make up for the uncashed payments. However, the plaintiffs' May 2004 payment was still due even after this reconciliation of their account. RBC did not provide the plaintiffs with an account statement or otherwise inform them of that delinquency. Then, when the plaintiffs sent their August 2004 payment to RBC, RBC did not apply that payment to the loan.

GMAC Mortgage Steps In: In September 2004, RBC assigned the plaintiffs' loan to GMAC Mortgage. When GMAC Mortgage assumed the plaintiffs' mortgage, it did not send the plaintiffs a letter notifying them of the transfer. Plaintiffs, not knowing that GMAC Mortgage was their new mortgage holder, sent their September payment to RBC. RBC did not cash it but forwarded it to GMAC Mortgage.

At some point in this period, GMAC Mortgage sent the plaintiffs an account statement dated September 15, 2004, which they received. That account statement was based on information that GMAC Mortgage had received from RBC. It showed that the plaintiffs' account was past due in the amount of $7,990 and that GMAC Mortgage had already assessed late fees totaling $255. On September 23, 2004, GMAC Mortgage sent the plaintiffs a letter demanding proof of their homeowners' insurance coverage. Then, on September 27th, GMAC Mortgage returned the plaintiffs' September payment, which they had sent to RBC. The letter returning the payment informed the plaintiffs that the payment represented only one of five payments that were then due (from May to September), and provided the plaintiffs with a phone number.

On October 6, 2004, the plaintiffs wrote to the United States Department of Housing and Urban Development ("HUD") detailing what they understandably described as their "nightmare" with RBC. They explained:

Despite admissions by RBC that they made errors, they feel no obligation to correct the grievance [sic] wrongs by supplying information necessary to bring closure to this situation, and they have cashed checks as if there was never any question raised or breach of obligation on their part. This is the same company that as of a few weeks ago was in hot pursuit of our home by means of foreclosure and had for months refused to accept our payments. The last message we received from RBC stated that there were updates on our account yet they have continually refused to operate in a professional manner by providing a written explanation that would offer us clarity and accountability on their part.

The letter provided a detailed outline of the plaintiffs' account history with RBC, including the fact that their first payment had been due in August 2003. It also recounted that RBC did not cash their August or September 2004 payments, and that on October 4th they received a letter from GMAC Mortgage returning their September 2004 payment and informing them that the payment was not enough to cover the past due balance because five payments were then due. The plaintiffs wrote: "GMAC claims that they took over our mortgage in May 04. No information to that effect had ever previously been provided by RBC or GMAC." Finally, their letter asked several questions about RBC's and GMAC Mortgage's servicing practices, among them:

• Why did [RBC] cash checks in July for an account that they did not hold and according to GMAC had purportedly been sold in May?

• What happened to the funds that were taken in July?

• Why were previous checks not forwarded to the new company?

• Why would GMAC just now initiate contact?

• Why would GMAC purchase a "nonperforming" mortgage?

The plaintiffs sent their letter to HUD, which forwarded it to GMAC Mortgage, which received it on October 14, 2004.

In the meantime, on October 7th and again on October 15th, the plaintiffs wrote to GMAC Mortgage directly, requesting information concerning the transfer of their loan, including the date of the transfer, the amount transferred, confirmation of their monthly payment amount, and the payment address. The October 15th letter further sought "any information available about this account."

On October 13th, in response to the plaintiffs' October 7th letter, GMAC Mortgage advised the plaintiffs that their account had been transferred on September 1, 2004 and that a monthly payment of $1,661 had been due on May 1st. The response also listed plaintiffs' then-current principal balance. Then, under separate cover, when GMAC Mortgage did not receive the plaintiffs' October 2004 payment, the company demanded $9,588 for payments on the plaintiffs' account since May 2004, plus $255 in late fees. In that letter dated October 15, 2004, GMAC Mortgage informed the plaintiffs that they were in default and stated that they could cure by paying the total amount due within 30 days. Days later on October 20th, GMAC sent an odd letter informing plaintiffs that their monthly payment was $1,598, their "next payment due date" was May 1, 2004, and that there was an escrow shortage in their account of $7,022.

On October 21, 2004, GMAC Mortgage responded to the letter that it had received from HUD in a letter to HUD captioned "Re: Saul Catalan and Mia Morris . Payment Dispute." GMAC Mortgage informed HUD that there was no indication that the plaintiffs' funds were missing or misapplied based on the records that GMAC Mortgage had received from RBC. GMAC Mortgage also told HUD that those records reflected that the plaintiffs' first payment had been due in July 2003.

GMAC Mortgage sent a letter to the plaintiffs on October 25, 2004 to advise them that their mortgage had "reached an advanced stage of delinquency" and to offer alternatives, such as a repayment plan, loan modification, or deed in lieu of foreclosure, to avoid a completed foreclosure.

On November 15, 2004, the plaintiffs sent a letter to GMAC Mortgage, describing their history with RBC and enclosing a check for $11,186 to cover seven payments of $1,598. In that letter they informed GMAC Mortgage that "RBC received payments from us that were not applied promptly, other payments that were never applied and they never provided a clear explanation for their refusal to accept our payments, an action which resulted in our home being wrongfully placed in foreclosure." They also set forth their "expectations" for how their account would be handled, advising GMAC Mortgage that they expected that "any request from us for information will be provided," "any changes to our account or information that requires correspondence will be forwarded to us in writing," and "all payments will be processed in a timely manner." Finally, they advised GMAC Mortgage that "if you have any questions regarding this account I would appreciate them being asked in writing from the standpoint that documentation is clarity. It is an unsafe approach to take the word of RBC as fact because as a company they have proven to me that fact for them is evasive."[2] On November 24, 2004, GMAC Mortgage commenced foreclosure proceedings. By December 2004, GMAC Mortgage was reporting the plaintiffs' loan as delinquent to the credit bureaus.

On December 2, 2004, the plaintiffs sent GMAC Mortgage another letter to request that GMAC Mortgage apply the $11,186 payment to their account, explaining that "it becomes a major disruption to have large sums of money unaccounted for." They wrote again on December 9th, again asking GMAC Mortgage to process the $11,186 check and requesting

"quick resolution of whatever issues remain since the transfer of this account to your company by processing and updating this and all future payments received immediately." The plaintiffs sent their December mortgage payment on the same date under separate cover. On December 13th, GMAC Mortgage returned the $11,186 check, explaining that the funds did not represent the full amount required to bring the plaintiffs' account current and advising the plaintiffs that their account had been sent to an attorney to begin foreclosure proceedings. It then responded to the plaintiffs' December 2nd and 9th letters on December 23rd and 30th. In each of those letters, it stated, "thank you for your inquiry on your account. We are currently processing your request and will respond in writing within 20 days." The record does not contain these promised follow-up responses.

The plaintiffs then wrote GMAC Mortgage's outside foreclosure counsel a letter dated December 17th stating that they disputed GMAC Mortgage's attempt to collect on their account and that they had sent everything necessary to bring their account current. They also requested an explanation for why, according to the letter they had received from foreclosure counsel, the balance of their account had been increased by $19,200 between September and November 2004. That same day (and 23 days after it had filed for foreclosure), GMAC Mortgage dismissed the foreclosure proceedings. Then, inexplicably, on December 22nd, GMAC Mortgage sent another letter to the plaintiffs advising them that their account had been transferred to GMAC Mortgage's attorney for foreclosure proceedings and returning their December 2004 payment!

On January 25, 2005, HUD again intervened, requesting that, upon receipt of ten mortgage payments from the plaintiffs (for the months of May 2004 to February 2005), GMAC Mortgage reinstate the plaintiffs' loan as current and waive any and all extra charges and attorney fees. The plaintiffs sent a check for $15,980 to GMAC Mortgage on February 3, 2005. That amount represented ten mortgage payments and included no account fees or costs, and thus amounted to what the plaintiffs would have otherwise paid in regular mortgage payments over ten months. Once it had received the plaintiffs' check, GMAC Mortgage brought their account current without charging them penalties or additional interest.

In April 2005, HUD contacted GMAC Mortgage on the plaintiffs' behalf to request that GMAC Mortgage stop reporting them as delinquent to the credit bureaus. On May 4, 2005, GMAC Mortgage complied, and in August 2005 it sent the plaintiffs a letter claiming that its records indicated that it had not reported any derogatory credit information on the plaintiffs' account from September 2004 through July 2005.

The District Court Proceedings: GMAC Mortgage moved for summary judgment on all of the plaintiffs' claims. Without reaching the merits of the plaintiffs' RESPA claims, the court found that GMAC Mortgage qualified for RESPA's safe harbor provision and was therefore not liable for any violations under that statute. The court dismissed the plaintiffs' gross negligence claim, finding that it duplicated the plaintiffs' willful-and-wanton negligence claim. The court granted summary judgment for GMAC Mortgage on the plaintiffs' willful-and-wanton negligence claim after finding that GMAC Mortgage promptly corrected the

errors relating to the plaintiffs' account when it received notice of the plaintiffs' payment dispute, so that its conduct could not be deemed willful or wanton. The court found that the plaintiffs could not recover for breach of contract because the plaintiffs had purposely withheld their October 2004 mortgage payment and were themselves in breach.

III. Plaintiffs' RESPA Claims

Plaintiffs contend that GMAC Mortgage violated RESPA in a number of ways, including failing to give notice of the transfer of their mortgage, failing to respond promptly to qualified written requests for information, and failing to correct wrong information provided to credit-reporting agencies. The district court did not reach the merits of those claims because it found that GMAC Mortgage was entitled to the protection of the RESPA safe harbor provision in 12 U.S.C. § 2605(f)(4). We address first the safe harbor provision and then the substantive claims.

A. RESPA's "Safe Harbor"

Although RESPA provides a private right of action for violations of its requirements, it also includes a non-liability or "safe harbor" provision, which provides:

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

12 U.S.C. § 2605(f)(4).

GMAC Mortgage is not entitled to the protection of the safe harbor in section 2605(f)(4). Although the parties have debated other requirements in the safe harbor provision, GMAC Mortgage did not argue, and nothing in the record shows, that GMAC Mortgage "notif[ied] the person concerned of the error," as required to invoke the protection. On this basis alone, GMAC Mortgage was not eligible for protection in the RESPA safe harbor. The district court's finding otherwise was error.

In the district court, GMAC Mortgage argued that it was protected by the safe harbor because, when all was said and done, the plaintiffs did not pay any money in excess of what they otherwise would have paid, and GMAC Mortgage corrected all errors in the plaintiffs' account within 60 days after receiving the plaintiffs' December 17, 2004 letter, and before the plaintiffs filed suit. Under this view of the statute, the defendant must have corrected the error only before plaintiffs filed suit, even if the defendant did not discover and correct the error before receiving written notice of it from the borrower. Plaintiffs contend that the

safe harbor provision requires the defendant to have corrected the error both before suit was filed and before the defendant received written notice of the error from the borrower. Because GMAC Mortgage's failure to provide notice keeps it out of the safe harbor in this case, we express no view on the district court's reasoning on this point.

B. The "Qualified Written Request" Issue

The plaintiffs argue that the letters they sent on October 6, November 15, December 2, December 9 and December 17 were qualified written requests. They contend that GMAC Mortgage violated RESPA by reporting their account as delinquent to the credit bureaus within the 60-day window after each of those qualified written requests was received, and that GMAC Mortgage also failed to investigate properly or to take corrective action in response to the October 6, November 15, December 2 and December 9 qualified written requests.

RESPA defines a qualified written request as follows:

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

GMAC Mortgage argues that the letters in question were not qualified written requests because the letters "do not identify an error in plaintiffs' account or provide any statement of the reasons plaintiffs believe their account was in error." GMAC Mortgage Br. 16.[3] Relying on several district court decisions, GMAC Mortgage contends that letters that "merely dispute a debt or request information are not 'qualified written requests,' and do not trigger the obligations under section 2605." Id., citing Moore v. Federal Deposit Ins. Corp., 2009 WL 4405538, at *4 (N.D.Ill. Nov.30, 2009) (plaintiffs' letters requesting information regarding reinstatement of a defaulted mortgage loan and the amounts of delinquent mortgage payments due did not relate to "servicing" and thus were not qualified written requests), Champlaie v. BAC Home Loans Servicing, LP, 706 F.Supp.2d 1029, 1042-43 (E.D.Cal.2009) (plaintiffs' claim that lender failed to respond in violation of RESPA was dismissed because plaintiff did not allege that his written request for rescission of the loan related to the servicing of his loan and thus his communication was not a qualified written request), Keen v. American Home Mortgage Servicing, 664 F.Supp.2d 1086, 1097 (E.D.Cal.2009) (plaintiff's demand to cancel trustee's sale of home and for

rescission disputed the validity of the loan but did not dispute the servicing of the loan and was not a qualified written request), Pettie v. Saxon Mortgage Services, 2009 WL 1325947, at *2 (W.D.Wash. May 12, 2009) (plaintiffs' "inquiry letter" disputing amount owed and requesting 26 sets of documents did not offer reasons for their dispute and thus was not a qualified written request under section 2605(e)(1)(B)); MorEquity, Inc. v. Naeem, 118 F.Supp.2d 885, 900-01 (N.D.Ill.2000) (letter seeking information about the validity of a loan and mortgage documents but making no inquiry as to the account balance or credit for periodic payments did not relate to "servicing" and was thus not a qualified written request). By GMAC Mortgage's argument, a lender would have no obligation to respond to a borrower who expressed her belief that her account was in error but was unable to provide specific reasons for that belief, an untenable result under the language of the statute.

RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. See 12 U.S.C. § 2605(e)(1)(A), (e)(2), and (e)(3); see also Garcia v. Wachovia Mortgage Corp., 676 F.Supp.2d 895, 909 (C.D.Cal.2009) (when construed in light most favorable to borrower, letter was a qualified written request even though it did not contain a statement of reasons for borrower's belief of error; letter provided sufficient detail regarding "other information" being sought); Rawlings v. Dovenmuehle Mortgage, Inc., 64 F.Supp.2d 1156, 1162 (M.D.Ala.1999) (plaintiffs' claims survived summary judgment where court found that descriptions of payments made to a prior servicer sufficiently stated plaintiffs' reasons for their belief that their account was in error and were qualified written requests). We turn to the disputed letters.

1. Letter of October 6, 2004

The plaintiffs' October 6th letter included content that was clearly sufficient to be a qualified written request. The three-page letter described in great detail the difficulties the plaintiffs encountered at the hands of RBC. The letter recounted that their first payment was due in August 2003, but that RBC failed to process the plaintiffs' August payment in a timely manner, and that a discrepancy arose between the plaintiffs and RBC as to whether the plaintiffs had made their payments or not. The letter described how RBC raised the plaintiffs' monthly payment amount without informing them of the change, and that each of the plaintiffs' attempts to communicate with RBC was rebuffed until RBC at last

acknowledged its error and dismissed its foreclosure action against the plaintiffs in July 2004. The letter then reported that RBC did not cash the plaintiffs' August and September 2004 payments, but that GMAC Mortgage returned the plaintiffs' September 2004 payment uncashed, even though that payment had been sent to RBC, and that GMAC Mortgage informed the plaintiffs that their September 2004 payment was insufficient to cover the amount they then owed on their mortgage account, which, according to GMAC Mortgage, was five months overdue. The plaintiffs, naturally, wrote this description of the history of their loan's servicing from their perspective, and without access to the (incorrect) information that GMAC Mortgage had acquired from RBC. But the letter was certainly a thorough statement of "the reasons for the belief of the borrower, to the extent applicable, that the account is in error" under section 2605(e)(1)(B).

The letter then continued, requesting very specific information. Plaintiffs asked that RBC explain why it had cashed the checks they had sent in July if, as they had been told by GMAC Mortgage, RBC had sold their account to GMAC Mortgage in May. The letter also sought an accounting of the funds plaintiffs had paid in July and sought information related to the transfer-specifically, why RBC had not forwarded their checks to GMAC Mortgage, why GMAC Mortgage had delayed initiating contact with them after purchasing their account, and why GMAC Mortgage would purchase a "nonperforming" mortgage. Some of this information might have been "unavailable or [unable] to be obtained by the servicer" under section 2605(e)(2)(C), but whether the information the plaintiffs sought was unavailable or whether their questions were unanswerable does not negate the fact that they had "provide[d] sufficient detail to the servicer regarding other information sought by the borrower" under section 2605(e)(1)(B). Their October 6th letter was a qualified written request, and GMAC Mortgage was obligated to respond.

Of course, the plaintiffs did not send their October 6, 2004 letter directly to GMAC Mortgage. They sent it to HUD, which forwarded it to GMAC Mortgage. The statute requires that qualified written requests be received "from the borrower (or an agent of the borrower)." 12 U.S.C. § 2605(e)(1)(A). We do not have difficulty interpreting that requirement, under the circumstances of this case, to include HUD's intercession on the plaintiffs' behalf. RESPA is a consumer protection statute, and on summary judgment we must view the facts in the plaintiffs' favor. Here, the record amply demonstrates that the plaintiffs had exhausted every reasonable avenue in their communications with RBC, yet in the fall of 2004, they were back in the same nightmare with a different company. Again they were being accused of not paying their mortgage, and again they were being threatened with foreclosure. Their confusion and desperation at this point were palpable, and they reasonably sought help from HUD. Besides, when it received the plaintiffs' letter, GMAC Mortgage tacitly acknowledged that the letter was a request for information and raised a dispute with their account. After all, in its response to HUD, GMAC Mortgage provided a detailed accounting of the history and transfer of the plaintiffs' mortgage and captioned its letter as a response to the plaintiffs' "payment dispute." After the months the plaintiffs had spent writing to and getting nowhere with RBC, and due to the fact that GMAC Mortgage received the plaintiffs' October 6th letter and treated it as a payment

dispute and as a request for information, the fact that GMAC Mortgage received the letter from HUD and not directly from the plaintiffs does not prevent the plaintiffs' October 6th letter from being a qualified written request under RESPA.

2. Letter of November 15, 2004

In the plaintiffs' November 15th letter, they explained their understanding that, based on information they had received from GMAC Mortgage, there were seven payments due on their mortgage of $1,598 each, for a total of $11,186. A check for that amount was enclosed with the letter. The plaintiffs also set forth their expectations for how GMAC Mortgage would handle their account going forward, including that GMAC Mortgage would provide any information they request, that any requested information and any changes to their account would be in writing, and that their mortgage payments would be applied in a timely manner. However, the plaintiffs did not raise any disputes or errors in their account, and their "expectations" were not requests for information. We cannot construe the plaintiffs' November 15th letter as a qualified written request under RESPA.

3. Letter of December 2, 2004

In the plaintiffs' letter of December 2nd, they explained that they sent a check to GMAC Mortgage for $11,186 on November 26, 2004, which GMAC Mortgage had not yet cashed. Their letter requested that GMAC Mortgage cash their check and apply the funds to their account because "it becomes a major disruption to have large sums of money unaccounted for." Although this letter certainly pertained to the servicing of their account, the plaintiffs were not requesting information and were not stating a belief that their account was in error. The plaintiffs were requesting that GMAC Mortgage process their payment more quickly, but in and of itself, that request does not seem to be based on any belief that an underlying error was causing the delay. The plaintiffs' December 2nd letter was not a qualified written request under RESPA.

4. Letter of December 9, 2004

The plaintiffs' letter of December 9th was similar to their letter of December 2nd. They recounted how GMAC Mortgage returned their August and September 2004 mortgage payments and how they sent a check for $11,186 in response to GMAC Mortgage's statement that $9,843 was necessary to bring the plaintiffs' account current. They stated that GMAC Mortgage's "refusal to process this check when only having an association with the account for two months raises questions in our minds about your motivation for acquiring our account," and that:

the chaotic state that existed when you acquired the account was a direct result of the extreme mismanagement of our account by RBC. However your actions also give me pause to wonder if your interest is more in acquiring our home than servicing the account. Additionally, it is extremely questionable as to why your company would assume an account that appeared to be in as severe disarray as the one received from RBC.

The plaintiffs then asked for "quick resolution of whatever issues remain since the transfer of this account to your company by processing this and all future payments immediately." Although the plaintiffs were understandably frustrated that GMAC Mortgage had not yet cashed their $11,186 check and applied that amount to their account, we do not interpret the plaintiffs' December 2nd letter as a statement of their belief that GMAC Mortgage's servicing of their account was in error. Again, their letter expressed their desire that GMAC Mortgage process their payment more quickly, which is not a statement of error or a request for information. They also hinted at "issues" remaining since GMAC Mortgage acquired their account from RBC, but we cannot reasonably construe the plaintiffs' use of the word "issues" as a statement of error, or as a request for information. The plaintiffs' December 9th letter was not a qualified written request.

5. Letter of December 17, 2004

The plaintiff's December 17th letter was unequivocally a qualified written request under RESPA. The first sentence of the letter said: "I am disputing your attempt to collect on the above referenced account." The plaintiffs stated that they had sent GMAC Mortgage the full amount required to bring the account current, but by then GMAC Mortgage had returned their $11,186 check and had advised them that it was seeking foreclosure against them. Against this backdrop, the plaintiffs' statement that GMAC Mortgage had "refused to process checks to alleviate any unnecessary actions or undue harm" was a statement of their belief that their account was in error.[4] They also very clearly requested specific information regarding their account-namely, an explanation of how their account balance increased from $229,098 to $248,298 over a two-month time span. The December 17th was also a qualified written request.

Having found that the plaintiffs' October 6th and December 17th letters were qualified written requests under RESPA, we leave it to the district court to resolve on remand whether GMAC Mortgage satisfied its obligations to investigate and respond under 12 U.S.C. §§ 2605(e)(1)(A) and 2605(e)(2) and to refrain from reporting the plaintiffs as delinquent to the credit reporting bureaus under 12 U.S.C. § 2605(e)(3). On remand, the district court will also need to consider the plaintiffs' claims that GMAC Mortgage violated RESPA by not sending them an appropriate notice that their loan had been transferred and by charging them late fees within 60 days of the transfer. See 12 U.S.C. § 2605(c) (requiring transferee servicer to notify the borrower of the transfer within 15 days of the effective date of transfer, with certain exceptions); 12 U.S.C. § 2605(d) (prohibiting transferee servicer from imposing a late fee if borrower's payment is received by the transferor servicer before the payment due date). Summary judgment for GMAC Mortgage on the plaintiffs' RESPA claims is reversed, and we remand to the district court for further proceedings.

IV. Common Law Claims

A. Breach of Contract

The plaintiffs also claimed that GMAC Mortgage breached the mortgage-and-note contract when it refused to accept the payments they sent on September 27, 2004 and November 15, 2004.[5] The district court dismissed the plaintiffs' breach of contract claim on summary judgment. The court found that the plaintiffs had purposely withheld their October 2004 payment and that this withholding was itself a breach. We agree with plaintiffs that this was an error.

GMAC Mortgage does not dispute that it refused the plaintiffs' September 27th and November 15th payments and did not immediately apply those payments to the plaintiffs' debt. It argues instead that its failure to do so did not amount to a breach of the contract. Nothing in the contract required GMAC Mortgage to apply the payments according to any sort of schedule, it argues, and it attempts to reframe the plaintiffs' breach of contract claim as nothing more than a "gripe" that the payments "were not applied as plaintiffs would have liked," pointing out that in time, all of the plaintiffs' payments were applied properly. GMAC Mortgage Br. 25.

To swallow GMAC Mortgage's argument, we would have to accept, as a matter of law, that a lender is free to refuse a tendered payment and then to hold the borrower responsible for having failed to make the payment. We would have to accept, as a matter of law, that it does not matter if a holder of a promissory note without a specified time period for its own performance performs its obligations under the contract in a reasonable time, so long as the party performs its obligations . eventually. We do not accept that argument. It is a basic tenet of contract law, recognized in Illinois, that where no time for performance is specified, the law implies a reasonable time. See In re Marriage of Tabassum and Younis, 377 Ill.App.3d 761, 317 Ill.Dec. 228, 881 N.E.2d 396, 408 (2007); Rose v. Mavrakis, 343 Ill.App.3d 1086, 278 Ill.Dec. 751, 799 N.E.2d 469, 475 (2003); Meyer v. Marilyn Miglin, Inc., 273 Ill.App.3d 882, 210 Ill.Dec. 257, 652 N.E.2d 1233, 1239 (1995). Whether or not GMAC Mortgage's delay in applying the plaintiffs' payments was reasonable-especially when GMAC Mortgage was claiming that plaintiffs were in breach by failing to make those same payments-is an issue of material fact that precludes summary judgment for GMAC Mortgage on the claim.

GMAC Mortgage also argues that its breach should be excused because the plaintiffs breached the contract first when they failed to remit their October 2004 payment.[6] True, another general tenet of contract law is that plaintiffs cannot succeed on a breach of contract claim unless they demonstrate their own performance of the contract's requirements. See Hukic v. Aurora Loan Services, 588 F.3d 420, 433 (7th Cir.2009); Solai & Cameron, Inc. v. Plainfield Community Consolidated School Dist. No. 202, 374 Ill.App.3d 825, 313 Ill.Dec. 217, 871 N.E.2d 944, 953 (2007) (" 'under general contract principles, a material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations' "), quoting Mohanty v. St. John Heart Clinic, S.C., 225 Ill.2d 52, 310 Ill.Dec. 274, 866 N.E.2d 85, 95 (2006); Borys v. Rudd, 207 Ill.App.3d 610, 152 Ill.Dec. 623, 566 N.E.2d 310, 315 (1990) (only material breach of a contract provision will justify non-performance by the other party). The

plaintiffs were certainly obligated to make timely payments under the note-and-mortgage contract. But the servicers had their own obligations under the contract, one of which was to provide timely and accurate information about where and to whom those payments should be sent in the event of a transfer. Such notice was also required under RESPA. See 12 U.S.C. § 2605(b) and (c). On these facts, which party breached first is not a question with a clear answer. A reasonable jury could find that the plaintiffs' failure to submit their October 2004 payment in a timely manner was justified by earlier wrongs by RBC Mortgage and GMAC Mortgage.

In September 2004, GMAC Mortgage assumed the plaintiffs' mortgage from RBC, but the plaintiffs were not informed of the transfer. Not knowing that GMAC Mortgage was their new mortgage holder, the plaintiffs sent their September payment to RBC. That payment was later returned to the plaintiffs uncashed, not by RBC but by GMAC Mortgage, along with a letter informing them that they owed not one payment but five, relying on inaccurate information from RBC. When, on October 15th, GMAC Mortgage told the plaintiffs that they could bring their account current by paying $9,588, the plaintiffs paid $11,186-a check that GMAC Mortgage again returned, uncashed. (Why GMAC Mortgage did not accept the plaintiffs' September and November checks as partial payment of the total amount it believed the plaintiffs owed is not explained by the parties and remains a mystery.) A reasonable jury could conclude that the plaintiffs were doing their best to hold up their end of the bargain-after all, they were not squandering their uncashed mortgage payments, and in November they were able to send GMAC Mortgage more than it asked for. A jury could also find that plaintiffs' attempts were thwarted, first by RBC's and then by GMAC Mortgage's mismanagement of their account. Given the plaintiffs' understandable confusion and frustration with the servicing of their loan in the fall of 2004 and GMAC Mortgage's mixed messages regarding how they might fix the problems, a reasonable jury could conclude that the plaintiffs' failure to submit their October 2004 payment to GMAC Mortgage was excused.

GMAC Mortgage cites our decision in Hukic, arguing that any misstep by a borrower in performance of the contract absolves a lender from liability for a later breach of the contract. We do not read Hukic so broadly. Hukic paid his property taxes and insurance directly, as his mortgage contract permitted him to do so long as he also submitted proof of payment to his mortgage company (or companies-Hukic's mortgage was also transferred from one servicer to another several times). Hukic, 588 F.3d at 425. This he failed to do despite his servicers' repeated requests for the required proof. Because they were unaware that Hukic had already paid those items, the mortgage servicers also paid them, which put Hukic's mortgage account in arrears. Hukic brought suit against the servicers for breach of contract. We upheld summary judgment for the mortgage servicers, finding that Hukic had breached the contract by not informing the companies that he had paid the property taxes and homeowner's insurance, as he was contractually obligated to do. Id. at 433. Hukic's failure to comply with his contractual obligations was material and absolved the servicers from liability because it directly caused the servicers' actions that were the basis of his own

breach of contract claims. There was no issue in Hukic concerning whether or not Hukic's breach was excusable.

Here, even assuming that the plaintiffs delayed in making their October payment as GMAC Mortgage contends, that delay did nothing to exacerbate the already serious problems with GMAC Mortgage's servicing of the plaintiffs' mortgage account. Their delay in submitting their October 2004 payment, viewed in light of RBC's and GMAC Mortgage's repeated failures to provide them with information regarding their account or to conduct an investigation into the errors in transferring their account, is not comparable to Hukic's stonewalling. A reasonable trier of fact could find that the plaintiffs' failure to remit their October 2004 payment in a timely manner, although a breach of the contract, was excused due to the lenders' earlier breaches and errors and the resulting confusion surrounding their account. Summary judgment for GMAC Mortgage on the plaintiffs' breach of contract claim is reversed.

## B. Negligence

Finding that GMAC Mortgage promptly corrected the errors in the plaintiffs' account, the district court held that GMAC Mortgage could not be found to have acted willfully or wantonly for its own financial gain, and the court dismissed the plaintiffs' consolidated negligence claims on summary judgment. The plaintiffs appeal. They describe their negligence claims as "willful and wanton negligence or negligence based on willful or wanton misconduct." They argue that, however described, the issue of willfulness or wantonness is one for a jury and that the trial court erred in dismissing their negligence claims.

Plaintiffs are foreclosed from recovering on their negligence claims under the economic loss doctrine, which bars tort recovery for purely economic losses based on failure to perform contractual obligations. See Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 448-49 (1982). In Moorman, the Illinois Supreme Court found that contract law protects the contracting parties' expectation interests and "provides the proper standard when a qualitative defect is involved," so a contracting party may not "recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." Id. at 448, 453. Illinois recognizes three general exceptions to the doctrine, which its Supreme Court recently set forth as follows: "(1) where the plaintiff sustained damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill.2d 326, 300 Ill.Dec. 69, 843 N.E.2d 327, 333-34 (2006) (internal citations omitted). These exceptions have in common the existence of an extra-contractual duty between the parties, giving rise to a cause of action in tort separate from one based on the contract itself.

The plaintiffs do not argue that their negligence claim falls into one of the three recognized exceptions, but they attempt to fashion a duty from the note-and-mortgage contract, from common law, and from GMAC Mortgage's obligations under RESPA. See Pl. Reply Br. 8-15. However, each duty that the plaintiffs identify has its root in the note-and-mortgage contract itself. No matter GMAC Mortgage's failings, the contract itself cannot give rise to an extra-contractual duty without some showing of a fiduciary relationship between the parties. See Judd v. First Federal Sav. & Loan Ass'n of Indianapolis, 710 F.2d 1237, 1241-42 (7th Cir.1983) (holding under Indiana law that mortgage contract did not create a trust requiring the mortgagee to account to the mortgagors as beneficiaries, nor did it transform a traditional debtor-creditor relationship into a fiduciary relationship); Ploog v. HomeSide Lending. Inc., 209 F.Supp.2d 863, 874-75 (N.D.Ill.2002) (denying lender's motion to dismiss borrower's negligence claim because lender's duty to manage escrow funds properly could give rise to fiduciary relationship between lender and borrower); Choi v. Chase Manhattan Mortgage Co., 63 F.Supp.2d 874, 885 (N.D.Ill.1999) (same). The plaintiffs have made no such showing, and the trial court's dismissal of their negligence claims is affirmed.

## V. Damages

We are not quite done yet. GMAC Mortgage argues in the alternative that even if plaintiffs' claims survive summary judgment on the issues already addressed, their RESPA and breach of contract claims cannot survive because they do not have competent evidence of damages. The district court did not address the question of damages. In doing so now, we conclude that the plaintiffs have raised disputed issues of material fact that bar summary judgment on this basis.

Plaintiffs must come forward with evidence sufficient to support an award of actual damages to pursue their RESPA and breach of contract claims. RESPA allows for damages in an amount equal to the sum of:

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f)(1). The plaintiffs do not contend that GMAC Mortgage engaged in a "pattern or practice" of noncompliance, and so to prevail under RESPA they must prove actual damages. Damages are also an essential element of their surviving breach of contract claim. See Akinyemi v. JP Morgan Chase Bank, N.A., 391 Ill.App.3d 334, 330 Ill.Dec. 311, 908 N.E.2d 163, 169 (2009) (dismissal of breach of contract claim upheld where plaintiff pled only that he "suffered damages in an amount to be proven at trial"). The plaintiffs contend that, as a result of GMAC Mortgage's conduct, they were denied home-equity lines of credit and a small business loan, and that they suffered emotional distress.[7] Keeping in mind the standard applicable for summary judgment, we review the relevant evidence in the light reasonably most favorable to plaintiffs as the non-moving parties.

A. Denials of Credit Applications

While the issues with plaintiffs' mortgage were still ongoing, they applied for four home equity lines of credit, three with LaSalle Bank and one with Quicken Loans. Plaintiff Morris also applied for a business loan with First American Bank. Each of these applications was denied. In response to the plaintiffs' contentions that they were denied loans and credit lines as a result of GMAC Mortgage's actions, GMAC Mortgage counters that no admissible facts support the plaintiffs' claim that they were denied credit as a result of GMAC Mortgage's report of negative information to the credit bureaus.

A representative of LaSalle Bank testified that the bank's decisions to deny the plaintiffs' applications of December 1, 2004, March 7, 2005, and October 14, 2005 would have been no different regardless of the issues between RBC, GMAC Mortgage, and the plaintiffs. The plaintiffs presented contrary evidence. Morris testified that a LaSalle Bank loan officer told her that the plaintiffs' home-equity loan applications would not be approved until their foreclosure was removed.

GMAC Mortgage argues that the plaintiffs' evidence about what the LaSalle Bank loan officer said is not sufficient to avoid summary judgment because it is "classic" hearsay. We disagree. Hearsay, of course, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The loan officer's statement to Morris was not hearsay. It was not an assertion of a factual matter but a statement describing the bank's collective intentions: we won't approve a loan until you get the foreclosure issue resolved. There is also an exception to the exclusion of hearsay for "a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." Fed.R.Evid. 803(3); see Citizens Financial Group, Inc. v. Citizens National Bank, 383 F.3d 110, 133 (3d Cir.2004) (bank tellers' statements regarding their personal experiences with certain customers were not hearsay because the tellers described the actions they took with regard to those customers and why); United States v. Heath, 970 F.2d 1397, 1404 (5th Cir.1992) (statement by vice president and loan officer of bank that he was concerned a loan was a sham was not hearsay; his statement was offered not to show that the loan was a sham but to reveal whether the loan had aroused the witness's suspicions and whether the witness had notified any other bank officer about it); United States v. Visa U.S.A., Inc., 2007 WL 1741885, at *9 (S.D.N.Y. June 15, 2007) (statements of bank employees regarding the banks' reasons for dealing with one supplier rather than another were not hearsay). Also, because the loan officer was speaking during the employment relationship concerning matters within the scope of her employment, her statement may be imputed to the bank. Thus, the LaSalle loan officer's statements to plaintiff Morris about the need to resolve the mortgage problem were expressions of the intentions of the bank made by its representative. The statements fall outside the definition of hearsay, and even if they amounted to hearsay, the Rule 803(3) hearsay exception would apply. The testimony from Morris about the bank representative's

statements is admissible. The evidence presented by the parties presents a disputed issue of material fact that bars summary judgment on this issue.

The plaintiffs also applied for a fourth home equity loan with Quicken Loans in October 2005. The denial letter informed them that their application was rejected because of their poor credit scores. GMAC Mortgage argues that the denial of this loan cannot be attributed to its conduct because a different lender pulled the plaintiffs' credit report on the same day that Quicken did, and the report relied on by the other lender showed only positive information being reported by GMAC Mortgage on that date. However, without additional evidence to connect the dots, there is no way to conclude beyond reasonable dispute that Quicken did not rely on the negative and erroneous credit information that GMAC Mortgage had reported to the credit bureaus only five months earlier. GMAC Mortgage's unbolstered assumption is speculative and insufficient to support summary judgment.

The plaintiffs support their claim that Morris was denied a business loan through First American Bank due to GMAC Mortgage's actions with an email sent by a representative of the bank to a First American loan officer expressing concern regarding Morris's "mortgage situation."[8] GMAC Mortgage argues that the representative who sent that email later testified that Morris's application was denied for reasons having nothing to do with GMAC Mortgage. GMAC Mortgage's argument goes to weight, not admissibility, and does not resolve this dispute of material fact. Taken in the light most favorable to the plaintiffs, a reasonable jury could conclude that GMAC Mortgage's actions resulted in plaintiff Morris's business loan application being denied.[9]

B. Emotional Distress Damages

Regarding the plaintiffs' claim of emotional distress, Plaintiff Morris's medical records indicate that she was under increased stress during this time period because of her "house situation." Also, both of the plaintiffs testified regarding their emotional distress. Plaintiff Morris explained:

It is hard to feel like people aren't listening to you, that they're ignoring you. It makes me nervous. It makes me shaky. It depresses me. It concerns me. It embarrasses me.

I can't sleep. I don't like people ringing my doorbell. Any and every way that you should feel in your own home, I don't feel, and only now are we really starting to do things in our house because I was concerned that it wasn't going to be my house. It makes me sad because I've taken time away from my husband and from my child and from myself because I have been consumed with this and dealing with this, and I'm angry about it.

I understand to an extent that [GMAC Mortgage] inherited an issue that was preexisting, but it seemed like [GMAC Mortgage] jumped on the bandwagon and didn't listen, ignored what was said to you.

I get headaches thinking about it and dealing with it. I'm just tired of it.

And, plaintiff Catalan testified:

If I see my wife upset, I can't let her know that I'm upset. So the whole time that we were going through this process, I had to deal with my wife every day crying and being upset, not being able to take care of my son the way she was supposed to. And I had to take care of my son . try to console my wife, and at the same time, I couldn't let anybody know how I felt about it.

.

Every day I just felt useless. I couldn't do anything to help her. I couldn't resolve the situation. I couldn't fix her problem.

.

It was killing me every day.

GMAC Mortgage concedes that emotional distress damages are available as actual damages under RESPA, at least as a matter of law, but argues that the plaintiffs's evidence is not sufficient to support a damages award because it did not show "extreme" emotional distress and was "self-serving and conclusory." GMAC Mortgage Br. 35, 36. We disagree. Although not extensive, the plaintiffs' testimony is not conclusory. They described their emotional turmoil in reasonable detail and explained what they believe to be the source of that turmoil. Although also "self-serving," most testimony by a party is, see, e.g., Payne v. Pauley, 337 F.3d 767, 772 (7th Cir.2003) (reversing summary judgment), so that characterization does not assist GMAC Mortgage. So long as the statements were made with personal knowledge, which they certainly were, plaintiffs' testimony on this point is admissible. GMAC Mortgage will be free to argue on remand that any such distress was minor and that other stressors in the plaintiffs' lives were the true causes of their distress, but the plaintiffs' testimony is sufficient to preclude summary judgment for GMAC Mortgage on the question of whether the plaintiffs suffered emotional harm as a result of GMAC Mortgage's actions-and inaction.[10]

Conclusion

The district court's grant of summary judgment for GMAC Mortgage on the plaintiffs' RESPA claims and breach of contract claim is Reversed and Remanded for further proceedings. The court's grant of summary judgment to GMAC Mortgage on the plaintiffs' negligence claims is Affirmed.

HAMILTON, Circuit Judge.

Copyright © 2012 FindLaw, a Thomson Reuters business. All rights reserved.

"EXHIBIT 2"

FIRST PAYMENT LETTER AND COUPON

Terrace Loan Number:        21171            Closing Date:  September 26, 2002

Borrower:                   MICHAEL H. WHEELER

Property Address:           6 LONDON COURT
                            CARTERSVILLE, GA   30120

Your first monthly payment is due November 1, 2002.  Your payment will be late if received more than 15 days past the due date and will be subject to a late charge penalty.  Your monthly payment will consist of the following:

Principal and Interest:           $ 1,551.91

Hazard Insurance Escrow:             51.33          *Pd. 10.28.02*
                                                    *per ck. 1981*
County Tax Escrow*:                 150.78

City Tax Escrow*:

Mortgage Insurance Escrow:

Flood Insurance Escrow:                             *Terrace Mortgage Co.*
                                                    *900 Ashwood Pky. Suite 130*
                              =========             *Atl. 30338*
TOTAL PAYMENT:               $ 1,754.02

*Please note that if your property is assessed as an unimproved lot, the loan wil   *First Payment on New*
to have a "short year statement/analysis" done the month the taxes are due so    *Mortgage mailed on 10-28-02*
on this loan for the increased tax amount.  Your payment will increase when the    *Returned ck. # 1981*
reflect the assessment on the improved property.                                   *See copy of check*
                                                                                   *paid at My Bank on*
                                                                                   *11-18-02*

_____
MICHAEL H. WHEELER

_____


# FIRST PAYMENT COUPON

IF YOU HAVE NOT RECEIVED A STATEMENT OR COUPON
PLEASE USE THIS TEMPORARY COUPON.

-------------------------------------CUT HERE---- -------------------------------------



"EXHIBIT 3"

Loan History

## For the period from
## 11/01/2002 to 08/13/2004

*Landon Ct!*

| Date | Description | Amount |
|------|-------------|--------|
| 08/12/2003 | Hazard Insurance  Auto-Owners Insurance Company | $729.19 |
| 11/05/2003 | County Tax  BARTOW COUNTY | $2,098.18 |
| 12/31/2002 | Escrow Payment | $1,754.02 |
| 12/02/2002 | Payment Received | $1,727.76 |
| | Principal Payment Applied | $142.86 |
| | Interest Payment Applied | $1,409.05 |
| | Escrow Payment Applied | $175.85 |
| 01/06/2003 | Payment Received | $1,754.02 |
| | Principal Payment Applied | $143.81 |
| | Interest Payment Applied | $1,408.10 |
| | Escrow Payment Applied | $202.11 |
| 01/06/2003 | Escrow Payment | $26.26 |
| 02/07/2003 | Payment Received | $1,754.02 |
| | Principal Payment Applied | $144.77 |
| | Interest Payment Applied | $1,407.14 |
| | Escrow Payment Applied | $202.11 |
| 03/04/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $145.73 |
| | Interest Payment Applied | $1,406.18 |
| 04/28/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $146.70 |
| | Interest Payment Applied | $1,405.21 |
| 06/03/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $147.68 |
| | Interest Payment Applied | $1,404.23 |
| 06/18/2003 | Escrow Payment | $304.92 |
| 07/14/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $148.67 |
| | Interest Payment Applied | $1,403.24 |
| 07/31/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $149.66 |

| | | |
|---|---|---:|
| | Interest Payment Applied | $1,402.25 |
| 09/15/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $150.66 |
| | Interest Payment Applied | $1,401.25 |
| 10/03/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $151.66 |
| | Interest Payment Applied | $1,400.25 |
| 11/17/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $152.67 |
| | Interest Payment Applied | $1,399.24 |
| 12/15/2003 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $153.69 |
| | Interest Payment Applied | $1,398.22 |
| 02/03/2004 | SUBSERVICING SELLER CORRECTION Terrace Mortgage Co | $1,754.02 |
| 02/23/2004 | Payment Received | $1,629.51 |
| | Principal Payment Applied | $154.71 |
| | Interest Payment Applied | $1,397.20 |
| | Late Charge | $77.60 |
| 02/23/2004 | Payment Received | $1,629.51 |
| | Principal Payment Applied | $155.74 |
| | Interest Payment Applied | $1,396.17 |
| | Late Charge | $77.60 |
| 03/01/2004 | Escrow Payment | $1,809.32 |
| 03/09/2004 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $156.78 |
| | Interest Payment Applied | $1,395.13 |
| 04/08/2004 | Payment Received | $1,551.91 |
| | Principal Payment Applied | $157.83 |
| | Interest Payment Applied | $1,394.08 |
| 04/08/2004 | Suspense Payment Applied | $0.10 |
| 05/01/2004 | Payment Received | $1,860.91 |
| | Principal Payment Applied | $158.88 |
| | Interest Payment Applied | $1,393.03 |
| | Escrow Payment Applied | $309.00 |
| 05/28/2004 | Payment Received | $1,860.91 |
| | Principal Payment Applied | $159.94 |
| | Interest Payment Applied | $1,391.97 |

|            |                                                   |            |
|------------|---------------------------------------------------|------------|
|            | Escrow Payment Applied                            | $309.00    |
| 07/06/2004 | Payment Received                                  | $1,860.91  |
|            | Principal Payment Applied                         | $161.01    |
|            | Interest Payment Applied                          | $1,390.90  |
|            | Escrow Payment Applied                            | $309.00    |
| 07/30/2004 | Payment Received                                  | $1,860.91  |
|            | Principal Payment Applied                         | $162.08    |
|            | Interest Payment Applied                          | $1,389.83  |
|            | Escrow Payment Applied                            | $309.00    |
| 07/30/2004 | Suspense Payment Applied                          | $0.10      |
| 08/11/2004 | Hazard Insurance  Auto-Owners Insurance Company    | $824.67    |

To view transactions in a date range other than the one displayed, type in new dates and click on the More History button. Or, click on the More History button to scroll back three months at a time.

## Next Date Range

07/31/2002  - **To**  10/31/2002

More History

"EXHIBIT 4"

# FAQs About Escrow Accounts for Consumers

**Table of Contents**

- **RESPA and Escrow Accounts in General**
  - **What is covered under RESPA**
  - **About Escrow Account Cushions**
  - **Figuring Escrow Accounts**
  - **Variations in Escrow Accounts and Payments**
  - **Disbursement Date**
  - **Dealing with Your Lender or Insurance Company:
    Taxes, Insurance, Force-Placement, Escrow and RESPA**

**Section 10: Escrow Accounts**

**RESPA and Escrow Accounts in General**

Section 10 of the Real Estate Settlement Procedures Act (RESPA) limits the amount of money a lender may require the borrower to hold in an escrow account for payment of taxes, insurance, etc. RESPA also requires the lender to provide initial and annual escrow account statements. The additional escrow account regulations became effective in October 1997.

**What is covered under RESPA**

**Does RESPA require borrowers to maintain an escrow account?**

**NO.** It is the lender's decision whether the borrower must maintain an escrow account for the purpose of paying taxes and other items. The HUD regulations only limit the maximum amount that a lender can require a borrower to maintain in an account.

**About Escrow Account Cushions**

**Does RESPA require lenders to maintain a cushion?**

**NO.** The RESPA statute and regulations **do not require** the lender to maintain a cushion. However, since 1976 the RESPA statute has **allowed** lenders to maintain a cushion equal to one-sixth of the total amount of items paid out of the account, or approximately two months of escrow payments. If state law or mortgage documents allow for a lesser amount, the lesser amount prevails.

The accounting method generally requires borrowers to maintain lesser amount in the account than the single-item method predominately used by lenders. However, many lenders have recently increased the escrow account cushion to the maximum allowed by law.

The regulations require lenders to reduce the size of the cushion in some accounts. Unfortunately, to avoid customer disapproval, some lenders may be giving their customers the impression that the HUD regulations require them to make this increase. This is a false impression. The lender, not HUD, has chosen to increase the cushion.

### Can HUD require lenders to pay interest on escrow accounts?

**NO.** In 1992 and 1993, legislation was introduced in Congress that would have required lenders to pay interest on escrow account balances, but it never passed. Some states do require interest to be paid on escrow account funds, but many do not.

### Back to top

### Figuring Escrow Accounts

### How do I figure how much money the lender is allowed to require in my escrow account?

HUD **cannot** figure out your own escrow account cushion and payments. Please use the following steps and example to help you estimate the amount of money you may be required to put into your own escrow account, either a new or existing account, under aggregate accounting:

1. List all the payment amounts for items that will be paid
   out of your escrow account, and when paid, for the
   next 12 months (e.g., taxes- $1200 -- $500 paid July
   25 and $700 paid December 10; hazard insurance --
   $360 paid September 20).

[If you have a payment like flood insurance, which is paid
every 3 years, you must project a trial balance over that 3-
year period.]

Divide this total amount by 12 monthly payments ($1560 divided
by 12 = $130).

Create a trial running balance for the next 12 months listing all
payments to the escrow account and all payments out of the
account, when these items are paid.

Increase all the monthly balances to bring the lowest point in the
account (December -$780) up to 0.

|      | pmt | dis | 3) bal | 4) bal |
|------|-----|-----|--------|--------|
| Jun  | -   | -   | 0      | 780    |
| Jul  | 130 | 500 | - 370  | 410    |
| Aug  | 130 | 0   | - 240  | 540    |
| Sep  | 130 | 360 | - 470  | 310    |
| Oct  | 130 | 0   | - 340  | 440    |
| Nov  | 130 | 0   | - 210  | 570    |
| Dec  | 130 | 700 | * - 780 | * 0   |
| Jan  | 130 | 0   | - 650  | 130    |
| Feb  | 130 | 0   | - 520  | 260    |
| Mar  | 130 | 0   | - 390  | 390    |
| Apr  | 130 | 0   | - 260  | 520    |
| May  | 130 | 0   | - 130  | 650    |
| Jun  | 130 | 0   | 0      | 780    |

Add any cushion your lender requires to the monthly
balances. The cushion may be a maximum of 1/6 of the
total escrow charges (1/6 of $1560 = $260).

|     | pmt | dis | bal |
|-----|-----|-----|-----|
| Jun | -   | -   | 1040 |
| Jul | 130 | 500 | 670 |
| Aug | 130 | 0   | 800 |
| Sep | 130 | 360 | 570 |
| Oct | 130 | 0   | 700 |
| Nov | 130 | 0   | 830 |
| DEC | 130 | 700 | *260 |
| Jan | 130 | 0   | 390 |
| Feb | 130 | 0   | 520 |
| Mar | 130 | 0   | 650 |
| APR | 130 | 300 | 780 |
| May | 130 | 0   | 910 |
| Jun | 130 | 0   | 1040 |

In this example, $1040 is the maximum amount the lender should require in the account. The account should fall to the cushion at least once during the year. In this example, it is in December ($260).

New Accounts -- In this example, if you settled May 15, and the first payment was due in July, $1040 would be the maximum amount you should be required to place in an escrow account. If your lender requires less than the maximum cushion, the amount would be less.

Existing Aggregate Accounts -- In this example, during escrow analysis, the lender would compare the required amount of $1040 to the actual balance in your account in June. For example:

If your balance is $1076, there is a surplus of $36. Your lender may choose to apply any surplus less than $50 to future payments, reducing your monthly escrow payment to $127, or may choose to return the surplus to you.

If your balance is $1090, there is a surplus of $50. The lender must return any surplus of $50 or more to you within 30 days of the analysis.

If your balance was $940, there is a shortage of $100. This amount is less than one month's escrow payment and the lender may ask you to pay this amount within 30 day or may spread it out over a year.

If your balance was $800, there is a shortage of $240. The
lender must spread the collection over at least 12 months.
If the lender spreads the shortage over 12 months, your
monthly escrow payment would increase to $150.

If you have a deficiency in your account (where the lender
has to use his own funds to pay a bill), you may have to
reimburse the lender sooner than over 12 months. If the
deficiency is less than one monthly escrow payment, you
may have to repay the lender in 30 days. If the deficiency
is more than or equal to one monthly escrow payment, the
lender may require you to repay the amount over 2-12
months.

**Back to top**


### Variations in Escrow Accounts and Payments

### My escrow account payments went up, rather than down. Why?

There could be a couple of reasons why your servicer is
charging more for your escrow account. First, your bills
may have gone up and the account changed to reflect that.
Or, the servicer has changed the amount of cushion to the
maximum amount allowed by RESPA. Check your
statement from the servicer. You may also want to check
your loan documents to figure out what is the appropriate
cushion. If the mortgage loan documents are silent on the
amount of the cushion or pre-accrual practices, then the
RESPA "two month" limits apply, unless state law provides
for a lower amount.

**Back to top**


### Disbursement Date

### What is the disbursement date for paying escrow account items?

The disbursement date means the date on which the lender
actually pays an escrow item from the escrow account.
However, the lender must pay the items in a timely

manner, that is, on or before the deadline to avoid a penalty. This is required as long as the borrower's payment is not more than 30 days overdue. Borrowers should review their annual escrow statement to make certain the lender did not make late payments and charge any penalties to the borrower's account. (See Homeowner Alert)

**Back to top**

**Dealing with Your Lender or Insurance Company: Taxes, Insurance, RESPA and Escrow**

**I got a notice from the county that my lender did not pay my taxes on time and the county is assessing a penalty. Do I have to pay this bill?**

Send the bill to the lender. The lender should pay the penalty for failing to pay the taxes on time as long you were current in your mortgage payments. If the lender refuses, you may wish to follow the guidelines for filing a complaint.

**Are lenders required to pay taxes on an annual basis if a discount is offered to the consumer?**

**NO.** The Department published a rule in the Federal Register in January 1998. The rule clarifies what a lender should do when a taxing jurisdiction offers a choice of payment on an installment basis or an annual basis. If there is a discount to the consumer when disbursing on an annual basis or there is an additional charge for disbursing on an installment basis, the lender may disburse on an annual basis. Otherwise, the lender should disburse tax payments on an installment basis. The borrower and the lender may mutually agree to another disbursement basis or date. The Department encourages lenders to follow the preference of the borrower.

**What steps should I take if the lender does not pay my hazard insurance on time or at all and my insurance is canceled?**

Lenders are required by Section 6 to make escrow account disbursements on time. If a lender fails to do so, a borrower may bring a private law suit under this Section. Therefore, if you incur any damages due to the lender's negligence, you may wish to consult an attorney.

You should also contact your lender immediately and send a copy of the bill. Some lenders list a special address and/or FAX number for insurance and tax bills. Keep checking with the insurance company to make certain the bill is paid. You may wish to pay the insurance company directly to avoid cancellation of your policy and then seek a refund from your lender. Keep copies of all your correspondence and payments. If you incur any damages due to the lender's negligence, you may wish to consult an attorney.

**I got a notice that my hazard insurance has been canceled. My lender force-placed hazard insurance with a different company and it costs a lot more. Can a lender do this?**

As long as your mortgage payment is not more than 30 days late, Section 6 of RESPA requires the lender to make escrow payments, for taxes, insurance, etc., in a timely manner. You should write to your lender and complain. If your lender does not refund the difference or otherwise resolve your complaint satisfactorily, you may wish to file a complaint with HUD or the Consumer Protection Office of your State Attorney General's Office. You may also wish to consult an attorney.

**What steps should I take if I think the lender is requiring too much money in my escrow account?**

First, figure out the maximum amount RESPA allows to be required in your escrow account from the example. If you still believe your lender is requiring too much money, you should contact your lender for an explanation.

Section 6 of RESPA provides that borrowers may make a "qualified written request" to the lender concerning the servicing of their loan account. The request should not be included with the monthly mortgage payment. The lender must acknowledge the complaint within 20 business days and must resolve the complaint within 60 business days by correcting the account or giving a statement of the reasons for its position. If you do not get a satisfactory answer from

the lender, you may wish to file a complaint with HUD. You should continue to make your mortgage payment during this time.

**Back to top**

November 13, 2002

Michael H Wheeler
1728 Victoria Way
Kennesaw, GA 30152

### Welcome to Homecomings Financial

Dear Michael H Wheeler:

This letter confirms notification that your loan was transferred to the Homecomings Financial Servicing Center, located in Dallas, Texas. We are sending you this confirmation notice since you did not receive the welcome letter previously mailed to you. Effective with your December 1, 2002, installment, all monthly mortgage payments for the first mortgage on your 6 London Court property should be sent to the payment address given below. The transfer of servicing does not in any way change the terms and conditions of your original mortgage contract.

Your new Homecomings Financial loan number is **0434763876**. We ask that you please write this number on all payments and correspondence, for use of your personal loan number will allow us to post your installments and respond to your inquiries quickly and accurately.

A Homecomings Financial monthly statement will be mailed to you each month. You may make your monthly payment with or without the statement, provided you write your loan number on your check. Our records indicate that your monthly payment is $1754.02. Please mail your future installments to our payment address below, and please send correspondence (including your loan number) to our correspondence address:

| **Payments** | **Correspondence** |
|---|---|
| Homecomings Financial | Homecomings Financial |
| P.O. Box 650515 | Attn: Correspondence |
| Dallas, TX 75265-0515 | P.O. Box 890036 |
| | Dallas, TX 75389 |

We at Homecomings Financial value and appreciate your business, and we will strive to provide you the highest level of customer service possible. Please call our Customer Service Department at 1.800.206.2901 whenever we can be of assistance. You may also access your account information 24 hours a day at www.homecomings.com.

Sincerely,

Donald Morrison
Account Manager

*pd. 11-28-02*
*w. ch 5142*
*1d. at my bank on 12-4-02*
*#1727.26*



Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX  75389

#BWNFNYZ
#ZSRSWVRXWV4#          014392 3225 P268    9HFST

Michael H Wheeler
1728 Victoria Way NW
Kennesaw GA 30152-6911

## CUSTOMER INFORMATION

| | |
|---|---|
| Loan Number: | 0434763876 |
| Borrower: | Michael H Wheeler |
| Property Address: | 6 London Court |
| | Cartersvill GA 30120 |
| Home Phone #: | 770-428-9527 |
| Work Phone #1: | 000000000000 |

*Please use the form on the back of the coupon to update this information.*

## CURRENT ACCOUNT DETAILS

### Mortgage Amount(s) Due

| | |
|---|---|
| Principal | 144.77 |
| Interest | 1,407.14 |
| Monthly Escrow Installment | 202.11 |
| **Previously Unpaid Escrow | 26.26 |

Your recent payment was less than the total due.  An additional payment component referred to as "Previously Unpaid Escrow" is included in the "Remit with Coupon" amount shown above.  Payments that do not equal the amount due may be rejected and returned to you. This could result in late charges and negative credit reporting.

**IMPORTANT YEAR END 1098 INFORMATION**

Your Form 1098 will be included with January's statement.  Form 1098 is used to report to the Internal Revenue Service (IRS) the mortgage interest you paid in 2002.  A Form 1098 will be sent only one time. Please be sure to retain it for your 2002 tax records.  You will also be able to access your 1098 information as of January 10th through our website.

| | |
|---|---|
| Total Amount Due on 02-01-03 | 1,780.28 |

Pd. 1-2-03
Co. Ck
5201

### PAYMENT ACCOUNT DETAILS

| | |
|---|---|
| Payment Due Date: | 02/01/03 |
| Statement Date: | 12/03/02 |
| Account Information as of 12/03/02 | |
| Current Principal Balance * | 211,071.42 |
| Current Escrow Balance | 782.18 |
| Year to Date Interest | 2,817.15 |
| Interest Rate: | 8.000% |

### ACCOUNT ACTIVITY DETAILS

Activity from 11/13/02 to 12/03/02

| | |
|---|---|
| 11/13/02   12/01/02 Payment: 142.86 principal, 1,409.05 interest, 202.11 escrow | 1,754.02 |
| 12/02/02   01/01/03 Payment: 143.81 principal, 1,408.10 interest, 175.85 escrow | 1,727.76 |



* The Current Principal Balance does not reflect the total amount required to pay your loan in full.



14392 3225 P268    9HFST



Homecoming Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

#BWNFNYZ
#ZSRSWVRXWV4#          027830 4725 P68    9HFT3

||.|||.|.....||.||.|.|.|||.||.|..|....||...||.|.|.|..|.|.|||
Michael H Wheeler
1728 Victoria Way NW
Kennesaw GA 30152-6911

## CUSTOMER INFORMATION

| | |
|---|---|
| Loan Number: | 0434763876 |
| Borrower: | Michael H Wheeler |
| Property Address: | 6 London Court |
| | Cartersvill GA 30120 |
| Home Phone #: | 770-428-9527 |
| Work Phone #1: | (000)000-0000 |

*Please use the form on the back of the coupon to update this information.*

Mortgage Amount(s) Due

| | |
|---|---|
| Principal | 145.73 |
| Interest | 1,406.18 |
| Monthly Escrow Installment | 202.11 |

**\*\* IMPORTANT YEAR-END 1098 INFORMATION \*\***

Your Form 1098 is included with this statement. Form 1098 is used to report to the Internal Revenue Service, the interest you paid to Homecomings Financial for this mortgage. A Form 1098 will be sent only one time. Please be sure to retain it for your 2002 income tax records. You will be able to access your 1098 information as of January 10th through our website.

| | |
|---|---|
| Total Amount Due on 03/01/03 | 1,754.02 |

*fd. = 308*
*cu. up. 5256*

| | |
|---|---|
| Payment Due Date: | 03/01/03 |
| Statement Date: | 01/06/03 |

Account Information as of 01/06/03

| | |
|---|---|
| Current Principal Balance * | 210,926.65 |
| Current Escrow Balance | 1,010.55 |
| Year to Date Interest | 1,407.14 |
| Interest Rate: | 8.000% |

Activity from 12/04/02 to 01/06/03

| | |
|---|---|
| 01/06/03   02/01/03 Payment: 144.77 principal, 1,407.14 interest, 202.11 escrow | 1,754.02 |
| 01/06/03   02/01/03 Payment: 26.26 escrow | 26.26 |



* The Current Principal Balance does not reflect the total amount required to pay your loan in full.

7630 4725 P68    9HFT3



"EXHIBIT 5"

February 27, 2003


Homecomings Financial
P O Box 650515
Dallas, Texas 75265-0515


Re: Tax Escrow Payment Loan #0434763876


Previously I have contacted you by phone in regards to you not paying the property tax's
for calendar year 2002.

During the second phone conversation I was assured the property tax would be paid with
late charges before the Fifteenth of February. This did not happen.

I paid the property tax, penalty, interest and cost due on February 19, 2003.
Included you will find a copy of the paid tax bill with all additional cost.

As of this date February 19, 2003 I am holding Homecomings Financial in breach of
contract. And will do so until this matter meets my satisfaction with all money paid by
myself in regards to this matter is refunded in full $2411.52.

After thirty (30) days I will add 10% interest to the amount of $2411.52, also this matter
will be remitted to my attorney.

Between Homecomings Financial and Terrace Mortgage, whom you bought the
mortgage,
The escrow should be around $3400.00, which is more than adequate to pay the tax and
insurance as the contract stipulates, the contract I signed at closing last year.


Sincerely,



Michael Wheeler

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   FRANKIE VONDRA   C. Date of Delivery

1. Article Addressed to:

Homecomings Financial
P.O. Box 78126
Dallas, TX. 85061-8426

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)   7002 2030 0000 9010 5137

PS Form **3811**, August 2001      Domestic Return Receipt      102595-02-M-1540



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7002 2030 0000 9010 5137

Homecomings Financial
Box 78926
Dallas, TX. 85061-8926

February 27, 2003                              SECOND NOTICE

Homecomings Financial
P O Box 650515
Dallas, Texas 75265-0515


Re: Tax Escrow Payment Loan #0434763876


Previously I have contacted you by phone in regards to you not paying the property tax's
for calendar year 2002.

During the second phone conversation I was assured the property tax would be paid with
late charges before the Fifteenth of February. This did not happen.

I paid the property tax, penalty, interest and cost due on February 19, 2003.
Included you will find a copy of the paid tax bill with all additional cost.

As of this date February 19, 2003 I am holding Homecomings Financial in breach of
contract. And will do so until this matter meets my satisfaction with all money paid by
myself in regards to this matter is refunded in full $2411.52.

After thirty (30) days I will add 10% interest to the amount of $2411.52, also this matter
will be remitted to my attorney.

Between Homecomings Financial and Terrace Mortgage, whom you bought the
mortgage.
The escrow should be around $3400.00, which is more than adequate to pay the tax and
insurance as the contract stipulates, the contract I signed at closing last year.


Sincerely,



Michael Wheeler

| **SENDER:** *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br><br>X | ☐ Agent<br>☐ Addressee |
| | B. Received by *(Printed Name)* | C. Date of Delivery |
| 1. Article Addressed to:<br><br>*Homecomings Financial*<br><br>*P.O. Box 78416*<br><br>*Phoenix, Az 85008-8426* | D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:  ☐ No | |
| | 3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D. | |
| | 4. Restricted Delivery? *(Extra Fee)*      ☐ Yes | |
| 2. Article Number<br>*(Transfer from service label)* | 7002 3150 0005 7936 1566 | |
| PS Form **3811**, August 2001 | Domestic Return Receipt | 2ACPRI-03-P-4081 |



PHOENIX AZ 85062

$0.37
$2.30
$1.75
$0.00
$4.42

MAY 0 2003
05/30/2003
USPS

*Homecoming Financial*
*P.O. Box 78426*
*Phoenix, Az  85062-8426*

7002 3150 0005 7936 1566

"EXHIBIT 6"

# WHEELER CONSTRUCTION COMPANY

*1728 Victoria Way*
*Kennesaw, Georgia 30152-6911*
*PH: 770.428.9527*
*FAX: 770.428.2847*
*MOBILE: 770.235.5344*

*msmhw@mindspring.com*

*February 17, 2004*

*CERTIFIED MAIL, REGULAR MAIL*

*ATTN: NANCY MARKS*
*HOMECOMINGS FINANCIAL*
*P O BOX 890033*
*DALLAS, TEXAS 75389-0036*

*RE: ESCROW MONEY/REJECTED PAYMENTS*

*This is the third and final attempt by letter, also I have called four times, in an attempt to have my escrow account corrected, and now stop rejecting the monthly payments.*

*Homecomings Financial did not pay the taxes for the tax year 2002 for 6 London Court, Cartersville Georgia 30120.*
*I paid the tax myself on February 19, 2003, one day before the Bartow County Tax Commissioner was to place a Tax Lien Against this property.*

*One year has past and nothing has been done to correct this serious error on your part.*

| | |
|---|---|
| *Tax amount that I paid;* | *$2106.60* |
| *Penalty;* | *210.66* |
| *Interest;* | *84.26* |
| *Cost due;* | *10.00* |
| *Total amount paid;* | *$2411.52* |
| *Interest on amount I paid @ 10%;* | *241.15* |
| *Net total amount credit to my escrow account;* | *$2652.67* |

*Nothing less is acceptable.*

*See copy's of all documents which I have provided.*

*I'm included the rejected payment plus the one and only due payment as of this date, February 17, 2004.*

*You have until March 15, 2004 to completely rectify this matter to my satisfaction and I will not entertain any excuse on your behalf. Don't Try.*

*If you have made any negative information to any/or all credit reporting companies, business, agency or organizations, correct it now with urgency.*

*After March 15, 2004 if this is not done in its entirety, legal action will be brought against you in the Superior Court of Bartow County, Cartersville Georgia.*

*I own other properties which I plan to refinance in the next couple of months, and if I am required to pay a higher rate of interest because of negative information placed on my credit file (s), I will bring legal action to recover these additional cost. Amounts which could be over several Million Dollars.*

*In regards to your letter dated February 4, 2004, indicating a default and foreclosure, Homecomings Financial is stepping in a direction that will result in certain legal action being brought against you. This action will not wait until March 15, 2004, this legal action will be sever concise and swift.*

*I will not tolerate further incompetence on behalf of Homecomings Financial.*

*I will not accept any phone calls or e-mail communications, letter form is the only accepted method of communication and mailed to Michael Wheeler, 1728 Victoria Way, Kennesaw Georgia 30152.*

*The clock is running.*

*Sincerely,*

*Michael Wheeler*

*Michael Wheeler*



**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Marlene Ennis_   ☐ Agent  ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

   ATTN: NANCY MARKS
   HOMECOMINGS FINANCIAL
   P.O. BOX 890033
   DALLAS, TEXAS  75389

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7003 3110 0000 5023 2065

PS Form 3811, August 2001     Domestic Return Receipt     2ACPRI-03-P-4081

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

DALLAS TX 75389

| | |
|---|---|
| Postage | $ $1.06 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.11 |

0364
17
02/18/2004

Sent To   HOMECOMINGS FINANCIAL
Street, Apt. No.; or PO Box No.   P.O. BOX 890053
City, State, ZIP+4   DALLAS, TEXAS  75389

PS Form 3800, June 2002     See Reverse for Instructions

7003 3110 0000 5023 2065

W 0185

## WHEELER CONSTRUCTION COMPANY
*1728 Victoria Way*
*Kennesaw, Georgia 30152-6911*
*PH: 770.428.9527*
*FAX: 770.428.2847*
*MOBILE: 770.235.5344*

*msmhw@mindspring.com*

February 22, 2004

*CERTIFIED MAIL*

*ATTN: JULIE WILLIS*
HOMECOMINGS FINANCIAL
*2711 NORTH HASKELL AVENUE*
*SUITE 900*
*DALLAS, TEXAS 75204*

*RE: ESCROW MONEY/ACCOUNT LOAN #0434763876*

*This is the fourth and final attempt by letter, also I have called Homecomings Financial four times in an attempt to have my escrow account corrected.*

*When Homecomings Financial bought/assumed this mortgage from Terrace Mortgage in Atlanta Georgia, there was an existing escrow in place in the amount of $2011.43 total after aggregate credit.*

*In addition one payment was made to Terrace Mortgage which included $202.11 for escrow.*
*Making the total of all escrow $2213.54 when you bought/assumed this mortgage.*

*Where is this escrow money?*

*More than a year has past and nothing has been done to correct this serious error on your part.*
*I strongly suggest someone at Homecomings Financial take this matter in hand and see through that all corrections are made.*

*After March 15, 2004 if this is not done in its entirety, legal action will be brought against you in the Superior Court of Bartow County, Cartersville Georgia.*

*I own other properties which I plan to refinance in the next couple of months, and if I am required to pay a higher rate of interest because of negative information placed on my credit file (s), I will bring legal action to recover these additional cost. Amounts which could be over several Million Dollars.*

*In regards to a letter dated February 4, 2004, indicating a default and foreclosure, Homecomings Financial is stepping in a direction that will certainly result in legal action brought against you. This action will not wait until March 15, 2004, this legal action will be sever concise and swift.*

*I will not tolerate further incompetence on behalf of Homecomings Financial.*

*I will not accept any phone calls or e-mail communications, letter form is the only accepted method of communication and mailed to Michael Wheeler, 1728 Victoria Way, Kennesaw Georgia 30152.*

*Included you will find copy's of another certified letter along with additional information which will aid any reasonable person in regards to correcting what is now extremely aggravating, tireless and appears to be a futile attempt to rectify this matter.*

*The clock is running.*

*Sincerely,*

*Michael Wheeler*

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ATTN: JULIE WILLIS
HOMECOMINGS FINANCIAL
2711 NORTH HASKELL AVENUE
SUITE 900
DALLAS, TEXAS 75204

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _Drevey M Dee_
☐ Agent
☐ Addressee

B. Received by ( *Printed Name* )    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   if YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*    ☐ Yes

2. Article Number
   *(Transfer from service label)*    7003 3110 0000 5023 2218

PS Form 3811, August 2001    Domestic Return Receipt    2ACPRI-03-P-4081

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

DALLAS TX 75204

| | |
|---|---|
| Postage | $ $1.29 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.34 |

0366
18   Postmark
02/23/2004

Sent To
_Home comings Financial_
Street, Apt. No.; or PO Box No. _2711 N. Haskell Ave. Suite 900_
City, State, ZIP+4 _Dallas Texas 75204_

PS Form 3800, June 2002    See Reverse for Instructions

7003 3110 0000 5023 2218

"EXHIBIT 7"

**Homecomings Financial**
A GMAC Company

Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

www.homecomings.com

#BWNFNYZ
#ZSRSWVRXWV4#

+ 0008546 000007243 09HFST  P8

Michael H Wheeler
1728 Victoria Way NW
Kennesaw GA 30152-6911

## CUSTOMER INFORMATION

| | |
|---|---|
| Loan Number: | 0434763876 |
| Borrower: | Michael H Wheeler |
| Property Address: | 6 London Court<br>Cartersville GA 30120 |
| Home Phone #: | 770-428-9527 |
| Work Phone #1: | 000000000000 |

*Please use the form on the back of the coupon to update this information.*

## CURRENT ACCOUNT DETAILS

Mortgage Amount(s) Due

| | |
|---|---|
| Principal & Interest | 1,551.91 |
| Monthly Escrow Installment | 302.39 |
| *Previous Partial Payment | 6.61- |
| Unpaid Late fee(s) | 620.80 |
| 05/01/05 Payment | 1,854.30 |

| | |
|---|---|
| Non-Mortgage Amount(s) | |
| Prop Inspection Fee | 9.00 |

| | |
|---|---|
| Total Amount Due on 06/01/05 | 4,331.79 |



**Information About Your Account**

* We received funds that did not total the monthly payment due. Since we do not post partial payments, we have subtracted these funds from the "Total Amount Due".

**DELAYED PAYMENT?**

Our records do not reflect receipt of the last payment due on your loan. Due to timing issues, this statement and your payment may have crossed in the mail. To verify that your payment has been received please call us at 1.800.206.2901. Our automated phone system will be able to verify receipt of your payment.

Please be aware that payments received after the due date are considered late. Payments received past the late fee date will incur a late charge. If your loan becomes a full month past due, we are required to report this delinquency to the credit bureaus.

If you are experiencing a problem which caused your last payment to be delayed, please call us. We may be able to assist.

## MORTGAGE ACCOUNT SUMMARY

| | |
|---|---|
| Payment Due Date: | 06/01/05 |
| Statement Date: | 05/03/05 |

Account Information as of 05/03/05

| | |
|---|---|
| Current Principal Balance * | 206,804.35 |
| Current Escrow Balance | 495.53 |
| Year to Date Interest | 6,910.53 |
| Interest Rate: | 8.000% |

## PRIOR PERIOD ACTIVITY

Activity from 04/06/05 to 05/03/05

| | | |
|---|---|---|
| 04/06/05 | Hazard Insurance paid to Auto-Owners Ins | 774.62 |
| 05/03/05 | 04/01/05 Payment: 172.07 principal,<br>1,379.84 interest, 302.39 escrow | 1,854.30 |

*pd. 9-30.05*
*Co. Ck. 6387,*



Like Coming Home

* The Current Principal Balance does not reflect the total amount required to pay your loan in full.



Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX  75389

**Homecomings Financial**
*A GMAC Company*

www.homecomings.com

#BWNFNYZ
#ZSRSWVRXWV4#

+ 0005626 000002707 09HFST  P8

Michael H Wheeler
1728 Victoria Way NW
Kennesaw GA 30152-6911

## CUSTOMER INFORMATION

| | |
|---|---|
| Loan Number: | 0434763876 |
| Borrower: | Michael H Wheeler |
| Property Address: | 6 London Court Cartersvill GA 30120 |
| Home Phone #: | 770-428-9527 |
| Work Phone #1: | 0000000000000 |

*Please use the form on the back of the coupon to update this information.*

## CURRENT ACCOUNT DETAILS

Mortgage Amount(s) Due
| | |
|---|---|
| Principal & Interest | 1,551.91 |
| Monthly Escrow Installment | 302.39 |
| *Previous Partial Payment | 6.61- |
| Unpaid Late fee(s) | 931.20 |
| 09/01/05 Payment | 1,854.30 |

Non-Mortgage Amount(s)
| | |
|---|---|
| Prop Inspection Fee | 9.00 |

| | |
|---|---|
| Total Amount Due on 10/01/05 | 4,642.19 |

## MORTGAGE ACCOUNT SUMMARY

| | |
|---|---|
| Payment Due Date: | 10/01/05 |
| Statement Date: | 09/12/05 |

Account Information as of 09/12/05
| | |
|---|---|
| Current Principal Balance * | 206,104.54 |
| Current Escrow Balance | 817.28 |
| Year to Date Interest | 12,418.36 |
| Interest Rate: | 8.000% |

## PRIOR PERIOD ACTIVITY

Activity from 08/09/05 to 09/12/05

| | | |
|---|---|---|
| 08/11/05 | Hazard Insurance paid to Auto-Owners Ins | 887.81 |
| 09/12/05 | 08/01/05 Payment: 176.70 principal, 1,375.21 interest, 302.39 escrow | 1,854.30 |

*11. 80-3-05*
*Co. Ch. 6549*

### Information About Your Account

All bankruptcy correspondence, including any notices of bankruptcy filings, must be delivered or mailed to Homecomings Financial at the following address:  Bankruptcy Department, P.O. Box 939072, San Diego, CA 92193-9072.  If you are interested in alternative solutions to your current financial hardship, bankruptcy is not your only option.  Please contact us at 1.800.206.2901.

* We received funds that did not total the monthly payment due. Since we do not post partial payments, we have subtracted these funds from the "Total Amount Due".

DELAYED PAYMENT?

Our records do not reflect receipt of the last payment due on your loan.  Due to timing issues, this statement and your payment may have crossed in the mail.  To verify that your payment has been received please call us at 1.800.206.2901.  Our automated phone system will be able to verify receipt of your payment.

Please be aware that payments received after the due date are considered late.  Payments received past the late fee date will incur a late charge.  If your loan becomes a full month past due, we are required to report this delinquency to the credit bureaus.

If you are experiencing a problem which caused your last payment to be delayed, please call us.  We may be able to assist.

Make same-day mortgage payments with your ATM/Debit card. Call 1.800.206.2901 or visit www.homecomings.com.

Like Coming Home

* The Current Principal Balance does not reflect the total amount required to pay your loan in full.

Pay online: www.homecomings.com





"EXHIBIT 8"

**Homecomings Financial**
*A GMAC Company*

Homecomings Financial
(NOT A PAYMENT ADDRESS)
P.O. Box 890036
Dallas TX 75389

www.homecomings.com

#BWNFNYZ
#ZSRSWVRXWV4#

+ 0006874 000006125 09HFST  P8

Michael H Wheeler
1728 Victoria Way NW
Kennesaw GA 30152-6911

## CUSTOMER INFORMATION

| | |
|---|---|
| Loan Number: | 0434763876 |
| Borrower: | Michael H Wheeler |
| Property Address: | 6 London Court<br>Cartersvill GA 30120 |
| Home Phone #: | 770-428-9527 |
| Work Phone #1: | 000000000000 |

*Please use the form on the back of the coupon to update this information.*

## CURRENT ACCOUNT DETAILS

| Mortgage Amount(s) Due | |
|---|---|
| Principal & Interest | 1,551.91 |
| Monthly Escrow Installment | 302.39 |
| *Previous Partial Payment | 6.61- |
| Unpaid Late fee(s) | 1,008.80 |
| 10/01/05 Payment | 1,854.30 |

| Non-Mortgage Amount(s) | |
|---|---|
| Prop Inspection Fee | 9.00 |

| | |
|---|---|
| **Total Amount Due on 11/01/05** | **4,719.79** |

## MORTGAGE ACCOUNT SUMMARY

| | |
|---|---|
| Payment Due Date: | 11/01/05 |
| Statement Date: | 10/10/05 |

Account Information as of 10/10/05

| | |
|---|---|
| Current Principal Balance * | 205,926.66 |
| Current Escrow Balance | 1,654.97- |
| Year to Date Interest | 13,792.39 |
| Interest Rate: | 8.000% |

## PRIOR PERIOD ACTIVITY

Activity from 09/13/05 to 10/10/05

| | | |
|---|---|---|
| 10/05/05 | County Tax paid to BARTOW COUNTY | 2,774.64 |
| 10/08/05 | 09/01/05 Payment: 177.88 principal,<br>1,374.03 interest, 302.39 escrow | 1,854.30 |

*18. 11.4.05*
*Co. Ub. 6595*

### Information About Your Account

All bankruptcy correspondence, including any notices of bankruptcy filings, must be delivered or mailed to Homecomings Financial at the following address: Bankruptcy Department, P.O. Box 939072, San Diego, CA 92193-9072.

**\* We received funds that did not total the monthly payment due.** Since we do not post partial payments, we have subtracted these funds from the "Total Amount Due".

### DELAYED PAYMENT?

Our records do not reflect receipt of the last payment due on your loan. Due to timing issues, this statement and your payment may have crossed in the mail. To verify that your payment has been received please call us at 1.800.206.2901. Our automated phone system will be able to verify receipt of your payment.

Please be aware that payments received after the due date are considered late. Payments received past the late fee date will incur a late charge. If your loan becomes a full month past due, we are required to report this delinquency to the credit bureaus.

If you are experiencing a problem which caused your last payment to be delayed, please call us. We may be able to assist.

### INFORMATION ABOUT YOUR PROPERTY TAXES

We are currently collecting funds in your escrow account for the payment of your real estate property taxes. You may be receiving your real estate tax bill directly from your tax collector. If you receive a bill, please write your loan number on the bill and forward the original to Homecomings Financial, P.O. Box 890037, Dallas, TX 75389 (be sure to make a copy for your records).

Make same-day mortgage payments with your ATM/Debit card. Call 1.800.206.2901 or visit www.homecomings.com.

*Like Coming Home*

* The Current Principal Balance does not reflect the total amount required to pay your loan in full.



"EXHIBIT 9"





# GAMBRELL & STOLZ LLP
## ATTORNEYS AT LAW

Jonathan E. Green, Esq.
404-221-6518
jgreen@gambrell.com

May 2, 2006

**VIA FEDERAL EXPRESS**

Mr. Michael Wheeler
1728 Victoria Way
Kennesaw, GA 30152

   Re: <u>Michael Wheeler v. Allison C. Eaddy, et al,</u>
      In the Superior Court of Cobb County, State of Georgia,
      Civil Action No.05-1-10429-34
      Loan No: 0434763876
      Property Address: 6 London Court

Dear Mr. Wheeler:

   Our client Homecomings Financial received several checks from you in payment towards the delinquent amounts due on the above-referenced mortgage loan. Specifically, Homecomings received check number 6735 for $5,795.70 for the December, January, and February payments. Homecomings Financial also received check number 6773 in the amount of $1,854.30 for the March payment and check number 6812 in the amount of $1,851.00 for the April payment. However, these payments, either individually or together are insufficient to bring the mortgage payments current and reinstate the loan.

   The amount to reinstate the loan as of April 15, 2006 was $14,034.59. This figure continues to increase. Homecomings cannot accept partial payment of your mortgage as foreclosure has begun and the entire balance has been called due. Please note that the provisions of your loan allow you to reinstate the loan and halt the foreclosure proceedings by paying the entire past due balance and bringing the loan payment current. Should you decide to make a payment sufficient to bring your loan current, please contact me and I shall provide you with the present amount due to bring your loan current.

   As Homecomings cannot accept the above-referenced checks, check numbers 6735, 6773, and 6812, which are drawn on the Wheeler Construction Company's account with Main Street Bank, they are enclosed.

   Please contact me if you have any questions.

        Sincerely,

        Jonathan Green

cc: Linda S. Finley, Esq.

MONARCH PLAZA
Suite 1600 3414 Peachtree Road Atlanta, Georgia 30326 404.577.6000 fax: 404.221.6501 www.gambrell.com
MACON OFFICE
923 Washington Avenue Macon, Georgia 31208 478.750.0777 fax: 478.750.1777 www.gambrell.com

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

6735

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

MAINSTREET BANK
KENNESAW GEORGIA 30144

2/15/2006

65-453 / 611

PAY TO THE
ORDER OF        HOMECOMINGS MORTGAGE

$   **5,795.70

Five Thousand Seven Hundred Ninety-Five and 70/100********************************************************    DOLLARS

AUTHORIZED SIGNATURE

MEMO    LONDON COURT, DEC 05, JAN 06, FEB 06

⑈006735⑈ ⑆061102277⑆ 3 010375 8⑈

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

6773

MAINSTREET BANK
KENNESAW GEORGIA 30144

65-453 / 611

3/4/2006

PAY TO THE
ORDER OF    HOMECOMINGS MORTGAGE

$ ***1,854.30

One Thousand Eight Hundred Fifty-Four and 30/100************************************************************* DOLLARS

MEMO    LONDON COURT, MARCH 06

Michael Wheeler
AUTHORIZED SIGNATURE

⑈006773⑈ ⑆061102277⑆ 3 010375 8⑈

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**6812**

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

64-22 / 610

3/31/2006

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ ***1,851.00

One Thousand Eight Hundred Fifty-One and 00/100*************************************************************** DOLLARS

MEMO    LONDON COURT, APRIL 06

Michael Wheeler
AUTHORIZED SIGNATURE

⑈006812⑈ ⑆061000222⑈ 20000261501523⑈

"EXHIBIT 10"

# Payee Report

1/1/2006 through 6/28/2012

| Date | Account | Num | Description | Memo | Category | Clr | Amount |
|------|---------|-----|-------------|------|----------|-----|--------|
| 5/1/2006 | WHEELER C... | 6854 | HOMECOMIN... | LONDON C... | | c | -1,851.00 |
| 6/9/2006 | WHEELER C... | 6905 | HOMECOMIN... | LONDON C... | | c | -1,851.00 |
| 7/12/2006 | WHEELER C... | 6952 | HOMECOMIN... | LONDON C... | | c | -1,851.00 |
| 8/5/2006 | WHEELER C... | 6990 | HOMECOMIN... | LONDON C... | | c | -1,851.00 |
| 9/12/2006 | WHEELER C... | 7044 | HOMECOMIN... | LONDON C... | | c | -1,851.00 |
| 11/30/2006 | WHEELER C... | 7139 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 2/19/2007 | WHEELER C... | 7224 | HOMECOMIN... | LONDON C... | | c | -5,319.00 |
| 3/6/2007 | WHEELER C... | 7233 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 4/3/2007 | WHEELER C... | 7252 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 5/4/2007 | WHEELER C... | 7262 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 5/30/2007 | WHEELER C... | 7279 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 7/28/2007 | WHEELER C... | 7302 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 11/29/2007 | WHEELER C... | 7346 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 11/29/2007 | WHEELER C... | 7347 | HOMECOMIN... | LONDON C... | | c | -1,773.00 |
| 12/31/2007 | WHEELER C... | 7357 | HOMECOMIN... | LONDON C... | | c | -1,787.98 |
| **1/1/2006 - 6/28/2012** | | | | | | | **-30,545.98** |

|  |  |
|---|---|
| **TOTAL INFLOWS** | **0.00** |
| **TOTAL OUTFLOWS** | -30,545.98 |
| **NET TOTAL** | -30,545.98 |

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

6854

# 04385 94632

64-22 / 610

08

5/1/2006

PAY TO THE
ORDER OF    HOMECOMINGS MORTGAGE

$ **1,851.00

One Thousand Eight Hundred Fifty-One and 00/100************************************************************************ DOLLARS

THIS CHECK IS VIOD 30 DAYS FROM ISSUE

*Michael Wheeler*
AUTHORIZED SIGNATURE

MEMO    LONDON COURT, MAY 06

⑆006854⑆ ⑆061000227⑆ 20000261501 23⑆    ⑆0000185100⑆

⑆061000227⑆    ⑆0000185100⑆

CREDITED TO THE
ACCOUNT OF THE
WITHIN NAMED PAYEE.

050906

JP MORGAN CHASE BANK, NA
FORT WORTH, TX 95102052
1119000574 005 2074 22

07302391243

PRIOR ENDORSEMENT
GUARANTEED PAYMENT
WITHOUT PREJUDICE

005    7540    22
05112006
1119000574
0330666630

05/10/2006 2074 22 11
111900057
8930076528

063107513
COLLECTING BANK    1128T
SVC-057    05123006    61PX
6210035092

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 5/9/2006 | $37.50 | | 0000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

6905

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

64-22 / 610

6/9/2006

PAY TO THE
ORDER OF      HOMECOMINGS MORTGAGE                                $  **1,851.00

One Thousand Eight Hundred Fifty-One and 00/100************************************************************************ DOLLARS

MEMO    LONDON COURT, JUNE 06

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑈006905⑈ ⑆061000227⑆ 20000261501 23⑈            ⑈0000185100⑈

⑆061000227⑆            ⑈0000185100⑈

07500630134EE 20614060438594632      07303109600 CREDIT ACCT OF
0018510062?520                         PAYEE: AEG MFS DALLAS
0730583461

JP MORGAN CHASE BANK, NA
FORT WORTH, TX 00140050
▶111900057 045 2171 AU

06/14/2006 2171 22 11
111900057
9730206470

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000000200002615 0123 | 5/9/2006 | $37.50 | | 000000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

6952

64-22 / 610

7/12/2006

| PAY TO THE ORDER OF | HOMECOMINGS MORTGAGE | $ **1,851.00 |

One Thousand Eight Hundred Fifty-One and 00/100*************************************************** DOLLARS

THIS CHECK IS VOID 30 DAYS FROM ISSUE

_Michael Wheeler_
AUTHORIZED SIGNATURE

MEMO   LONDON COURT, JULY 06

⑆006952⑆ ⑆061000227⑆ 20000261501 23⑈   ⑆0000185100⑆

---

⑆061000227⑆   ⑆0000185100⑆

DEPOSITED TO THE
ACCOUNT OF THE
WITHIN NAMED PAYEE

072106

JP MORGAN CHASE BANK, NA
FORT WORTH, TX  072420
111900057 005 0884 RJ
0430870154

ABSENCE OF ENDORSEMENT
GUARANTEED PAYMENT
WITHOUT PREJUDICE

025  2016  22
ATTN:DAN
07262006
111900057
C3

07307907321/0005  0884  6  1
111900057
J50007353

063107513
COLLECTING BANK   4410T
SVC-057  07262006  01PK
5812379093

---

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 7/12/2006 | $45.00 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of the original item issued by the named customer, and was produced from original data stored in the archives of Wachovia Bank, N.A. or its predecessors.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

6990

64-22 / 610

8/5/2006

PAY TO THE
ORDER OF      HOMECOMINGS MORTGAGE                                $ **1,851.00

One Thousand Eight Hundred Fifty-One and 00/100************************************************************** DOLLARS

THIS CHECK IS VIOD 30 DAYS FROM ISSUE

04347638 76

MEMO   LONDON COURT, AUGUST 06                    Michael Wheeler
                                                  AUTHORIZED SIGNATURE

⑈006990⑈ ⑆061000227⑆ 20000261501 23⑈        ⑈0000185100⑈

ENDORSE HERE
PAY TO THE ORDER OF
WACHOVIA BANK OF GEORGIA
FOR DEPOSIT ONLY
GAMBRELL & STOLZ, LLP
Account No. 15 456 104

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

437

DAL
081106 608495 034 068 070 06
063107513
URLANO FL 0920806 41PK
0213408562

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 9/28/2006 | $1,851.00 | | 00000000008213408562 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

7044

0438594632

84-22 / 610

9/12/2006

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100************************************************** DOLLARS

THIS CHECK IS VIOD 30 DAYS FROM ISSUE

MEMO    LONDON COURT, SEPT. 06

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑈007044⑈ ⑈061000227⑈ 20000261501 23⑈ ⑈0000177300⑈

⑈061000227⑈ ⑈0000177300⑈

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 9/25/2006 | $1,773.00 | | 0000000000611 0299808 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

7139

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

64-22 / 610

11/30/2006

PAY TO THE
ORDER OF    HOMECOMINGS MORTGAGE

$ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100************************************************* DOLLARS

1438594632

MEMO    LONDON COURT, NOV. 06

AUTHORIZED SIGNATURE

⑈007139⑈ ⑈061000227⑈ 2000026150123⑈    ⑈0000177300⑈

⑈061000227⑈    ⑈0000177300⑈

120406

JP MORGAN CHASE BANK NA
FORT WORTH, TX
▶111900957◀ 005    ABSENCE OF ENDORSEMENT
065005470    GUARANTEED PAYMENT
WITHOUT PREJUDICE

1016 51698

005  2179  22
12865606
11900957
0730410206

063187513
COLLECTING BANK  4610T
SVC-057   12072096  01PK
5217861964

12/05/2006  1606 22 11.
111900057
9730626510

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 7/12/2006 | $45.00 | | 0000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

7224

0434 763876

64-22 / 610

2/19/2007

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ **5,319.00

Five Thousand Three Hundred Nineteen and 00/100************************************************************************* DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO    LONDON COURT, DEC. 06, JAN. 07, FEB. 07

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑈007224⑈ ⑆061000227⑆ 20000261501 23⑈        ⑈0000531900⑈

⑆061000227⑆        ⑈0000531900⑈

DEPOSITED TO THE
ACCOUNT OF THE
WITHIN NAMED PAYEE

ABSENCE OF
ENDORSEMENT
GUARANTEED PAYMENT
WITHOUT PREJUDICE

JP MORGAN CHASE BANK, NA
FORT WORTH, TX 84132007

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 1/10/2007 | $72.52 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

7233

64-22 / 610

3/6/2007

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100***************************************************

DOLLARS

0434763876

MEMO    LONDON CT.MARCH 07

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑈007233⑈ ⑈061000227⑈ 200002615 0123⑈              ⑈0000177300⑈

⑈061000227⑈              ⑈0000177300⑈

DEPOSITED TO THE
ACCOUNT OF THE
WITHIN NAMED PAYEE

JP MORGAN CHASE BANK, NA
FORT WORTH, TX 04132007
►111900057◄ 020 3945 RJ

1030480643

04/13/2007 3945 0 1
111900057
9230674096

041307

ABSENCE OF
ENDORSEMENT
GUARANTEED PAYMENT
WITHOUT PREJUDICE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE          IDORSE HERE

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000000200026150123 | 1/10/2007 | $72.52 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

04347 63876

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
wachovia.com

7252

64-22 / 610

4/3/2007

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE                                    $ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100****************************************** DOLLARS

THIS CHECK IS VOID AFTER 90 DAYS FROM ISSUE

Michael Wheeler
AUTHORIZED SIGNATURE

MEMO    LONDON CT. APRIL 07

⑆007252⑆ ⑆061000227⑆ 20000261501 23⑆        ⑈0000177300⑈

⑆061000227⑆        ⑈0000177300⑈

DEPOSITED TO THE
ACCOUNT OF THE
WITHIN NAMED PAYEE

0534014577

ABSENCE OF
ENDORSEMENT
GUARANTEED PAYMENT
WITHOUT PREJUDICE

04/17/2007 1684 22 11
111900057
8930031100

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000000200026150123 | 1/10/2007 | $72.52 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7262

64-22 / 610

5/4/2007

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100**************************************************** DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO     LONDON COURT, MAY 07

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑆007262⑆ ⑆061000227⑆ 20000261501 23⑆     ⑆0000177300⑆

⑆0000007262⑆ ⑆061000227⑆ 20000261501 23⑆     ⑆0000177300⑆

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 5/9/2006 | $37.50 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

64-22 / 610

**7279**

5/30/2007

PAY TO THE
ORDER OF   HOMECOMINGS MORTGAGE                                     $ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100*************************************************************** DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

1st Day Express 687

MEMO   LONDON COURT, OCT. 06 (CK7099)  7434763876          _Michael Wheeler_
                                                          AUTHORIZED SIGNATURE

⑃007279⑃ ⑆061000227⑆ 20000261501 23⑈

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 1/10/2007 | $72.52 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND ... THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7302

7434 763874

64-22 / 610

7/28/2007

PAY TO THE
ORDER OF     HOMECOMINGS MORTGAGE

$ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100************************************

DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

1st Day Exp
681

*Michael Wheeler*
AUTHORIZED SIGNATURE

MEMO   LONDON COURT, AUGUST 07

⑈007302⑈ ⑆061000227⑆ 20000261501 23⑈     ⑆0000177300⑈

---

ENDORSE HERE:

FOR DEPOSIT ONLY
TO THE NAMED PAYEE
GM00001
85070241

030230164  08-29-07  5805  52
@@@@@@@@  50342412  000000000000
LPSI LOU KY

030230164  08-28-07

030230168  08-30-07  5389  08
2016   50342412  000000000000
0830   OU KY

0830 2007

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE

---

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000000200026150123 | 1/10/2007 | $72.52 | | 00000000000000000000 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of the original item issued by the named customer, and was produced from original data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

**7346**

64-22 / 610

11/29/2007

PAY TO THE ORDER OF   HOMECOMINGS MORTGAGE   7434763876   $ ***1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100******************************************************************** DOLLARS

MEMO   LONDON COURT, NOV. 07

Michael Wheeler
AUTHORIZED SIGNATURE

⑈007346⑈ ⑈061000227⑈ 20000261501 23⑈

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 12/10/2007 | $1,773.00 | 000000000007346 | 00000000005657045640 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7347

64-22 / 610

11/29/2007

PAY TO THE
ORDER OF   HOMECOMINGS MORTGAGE   7434763876   $ **1,773.00

One Thousand Seven Hundred Seventy-Three and 00/100********************************************************************* DOLLARS

MEMO   LONDON COURT, DEC. 07

AUTHORIZED SIGNATURE

⑈007347⑈ ⑆061000227⑆ 20000261501 23⑈

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 12/10/2007 | $1,773.00 | 000000000007347 | 00000000005657045670 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7357

*74347638* 76 64-22 / 810

12/31/2007

PAY TO THE ORDER OF    HOMECOMINGS MORTGAGE

$ **1,787.98

One Thousand Seven Hundred Eighty-Seven and 98/100**************************************************** DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

*Midori Wheeler*
AUTHORIZED SIGNATURE

MEMO    LONDON COURT, JAN. 08

⑈007357⑈ ⑆061000227⑆ 20000261501 23⑈    ⑈0000178798⑈

⑆061000227⑆    ⑈0000178798⑈

ENDORSE HERE

0317620157
0122200B
0610-0014-6
ENT=1040  TRC=1079  PK=02

| Account | Date | Amount | Serial Number | Sequence | Status |
|---|---|---|---|---|---|
| 000002000026150123 | 1/22/2008 | $1,787.98 | | 00000000006216646990 | Posted Items |

Wachovia Bank, N.A. certifies that the above image is a true and exact copy of
the original item issued by the named customer, and was produced from original
data stored in the archives of Wachovia Bank, N.A. or its predecessors.



| CUSTOMER INFORMATION | | PROPERTY ADDRESS | | **Homecomings Financial** |
|---|---|---|---|---|
| Name: | MICHAEL H WHEELER | 6 LONDON COURT | | *A GMAC Company* |
| Account Number: | 7434763876 | CARTERSVILLE | GA 30120 | |
| Home Phone #: | (770)428-9527 | | | Visit us at www.homecomings.com for account information or to apply on-line. |

91791 04760P7 08 SE 0037171 3607/139 CA296109 HOMEL    I 07 OOM CA296109009 1657H    NO
/BWNHJPY
/KW75571F71971#

MICHAEL H WHEELER
1728 VICTORIA WAY
KENNESAW GA 30152-6911

| Customer Care Inquiries: | 1-800-206-2901 |
|---|---|
| Home Financing Needs: | 1-877-695-3633 |

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | 7434763876 |
| Current Statement Date | November 19, 2007 |
| Maturity Date | October 01, 2032 |
| Interest Rate | 8.00000 |
| Current Principal Balance* | $204,647.85 |
| Current Escrow Balance | $7,382.63- |
| Interest Paid Year-to-Date | $8,211.72 |
| Taxes Paid Year-to-Date | $2,877.85 |

For Customer Care inquiries call: 1-800-206-2901
For Insurance inquiries call:     1-800-237-6787
For Payment Arrangements call:  1-800-799-9250

## Details of Amount Due Paid

| | |
|---|---|
| Principal and Interest | $1,551.91 |
| Subsidy/Buydown | $0.00 |
| Escrow | $576.97 |
| Amount Past Due | $37,927.80 |
| Outstanding Late Charges | $475.94 |
| Other | $1,685.20 |
| Total Amount Due | $42,217.82 |
| Account Due Date | May 01, 2006 |

## Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| EXPENSE ADVANCES | 04/01/06 | 11/15/07 | $20.00 | | | | | | $20.00 |
| County Tax Paid | 04/01/06 | 11/08/07 | $2,877.85 | | | $2,877.85 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions call the Customer Care number above (or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

Pay down debt! Fund a home improvement project or tuition! Call the number above to apply for a Home Equity Line or Loan!

### See Reverse Side For Important Information

## Mail This Portion With Your Payment

## Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amt. Due | Amount Due With Late Fee if Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| 7434763876 | 05/01/06 | $2,128.88 | $42,217.82 | $2,206.47 | *Homecomings Financial* |
| MICHAEL H WHEELER | | | | | |

| Please assist Homecomings in applying your payment | |
|---|---|
| Full Payment(s) | $ |
| *ADDITIONAL* Principal | $ |
| *ADDITIONAL* Escrow | $ |
| Late Charge | $ |
| Other Fees (please specify) | $ |
| Total Amount Enclosed | $ |

Sign here to enroll in monthly ACH.
(See back for details.)

HOMECOMINGS FINANCIAL
PO BOX 9001719
LOUISVILLE KY 40290-1719

02  0506  7434763876  00212888  07759  22222  0

"EXHIBIT 11"

## GMAC Mortgage Account Statement

### CUSTOMER INFORMATION

Name:                Michael H Wheeler
Account Number:      7434763876
Home Phone #:        (770)428-9527

### PROPERTY ADDRESS

6 LONDON COURT
CARTERSVILLE      GA 30120

**GMAC Mortgage**

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

MICHAEL H WHEELER
1728 VICTORIA WAY
KENNESAW GA  30152-6911

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information   Make necessary corrections on this portion of the statement, detach and mail to address listed   for inquiries on the reverse side.

| ACCOUNT INFORMATION | |
|---|---|
| Account Number | 7434763876 |
| Statement Date | June 18, 2012 |
| Maturity Date | October 01, 2032 |
| Interest Rate | 8.00000 |
| Interest Paid Year-to-Date | $0.00 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $3,814.68- |
| Principal Balance(PB)* | $196,081.05 |

| PAYMENT INFORMATION | |
|---|---|
| Principal and Interest | $1,551.91 |
| Subsidy/Buydown | $0.00 |
| Escrow | $329.17 |
| Amount Past Due | $63,708.42 |
| Outstanding Late Charges | $2,803.64 |
| Other | $899.32 |
| Total Amount Due | $69,292.46 |
| Account Due Date | September 01, 2009 |

For Customer Care inquiries call:  1-800-766-4622
For Insurance inquiries call:       1-800-256-9962
For Payment Arrangements call:      1-800-850-4622

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Now is a great time to buy a home! If you're in the market for your next home, our trained loan
agents will help you review all of the financing options available to you – call 877-528-3817 today!

### See Reverse Side For Important Information And State Specific Disclosures

## Mail This Portion With Your Payment

### Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee If Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| 7434763876 | 09/01/09 | $1,881.08 | $69,292.46 | $1,958.67 | **GMAC Mortgage** |
| MICHAEL H WHEELER | | | | | |

**Please assist GMAC Mortgage
in applying your payment**

| | |
|---|---|
| Full Payment(s) | $ |
| ADDITIONAL Principal | $ |
| ADDITIONAL Escrow | $ |
| Late Charge | $ |
| Other Fees (please specify) | $ |
| Total Amount Enclosed | $ |

Sign here to enroll in monthly ACH.
(See back for details.)

GMAC MORTGAGE
PO BOX 9001719
LOUISVILLE KY 40290-1719

02   0909   7434763876   00188108   07759   22222   9

"EXHIBIT 12"

CONFIDENTIAL FOR:

Please call: GMAC Mortgage, LLC800-850-462ZLoan Counselor

An independent property inspector visited your property today for
Bank Name : 130

/HEELER,MICHAEL

"EXHIBIT 3"



GMAC Mortgage
3451 Hammond Ave
PO Box 780
Waterloo, IA 50704-0780

October 5, 2012

03/14/12 10:00 3  0000295 20121006 HJ1LU/01 GMACDUPL 1 OZ DOM HJ1LU10000* 160275  DM

MICHAEL H WHEELER
1728 VICTORIA WAY
KENNESAW GA  30152-6911



RE:    Account Number        7434763876
       Property Address      6 LONDON COURT
                             CARTERSVILLE GA 30120

Dear MICHAEL H WHEELER:

We have not received your mortgage payments for the months of 10/01/09 through 10/01/12. This means your account is now in default. This is a demand for payment of the total amount due as of October 5, 2012:

| | | |
|---|---|---|
| Payments | $ | 69333.42 |
| Late charges | $ | 3036.41 |
| Fees, costs, and other accrued to date | $ | 1959.45 |
| Suspense | $ | - 941.94 |
| Total Amount Due | $ | 73387.34 |

To avoid foreclosure, you need to pay this amount no later than 35 days from the date of this notice. You also need to pay for all additional payments and fees that accumulate during this period.

Unless we receive full payment of all past-due amounts within 35 days from the date of this notice, we will require immediate payment of your entire loan and begin foreclosure proceedings. This could result in the loss of your home. You may have the right to bring a court action to challenge the default, or assert other defenses to immediate payment and sale that may be available in your mortgage documents or under state law.

If your payment is not accepted for any reason or your payment is for less than the total amount due (which we may accept without waiving any of our rights), this matter will not be resolved.

(Continued on next page)



October 5, 2012
Account Number 7434763876
Page Two

Once in foreclosure, you have the right to reinstate your account up to five days before the foreclosure sale of your home if: 1) you pay the total amount due plus any fees, costs, and other amounts that accumulate through the reinstatement date, and 2) you take any other action reasonably required by us to assure the security of the property. Your obligations under the loan documents will still apply during this time.

Your credit rating may be negatively affected if you do not resolve this matter. We may visit your property from time to time to determine its condition and occupancy status. You will be responsible for the costs of these inspections.

HUD-approved counseling is available on FHA guaranteed loans by calling 1-800-569-4287. If you would like to discuss this letter, we encourage you to contact our loan counselors immediately at 800-850-4622 (weekdays, 8:00 a.m. - 11:00 p.m. CT; Saturday, 8:00 a.m. - 12:00 p.m.).

Sincerely,


Collection Department
Loan Servicing


Please Note:
This is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt. Any action taken by us is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally. If you have surrendered your property during your bankruptcy case, please disregard this notice.

If you are currently in bankruptcy under Chapter 13, you should continue to make payments in accordance with your Chapter 13 Plan and disregard this notice.

5020

"EXHIBIT 4"

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | C: |
|------|-----------|--------|---------|---------|-----|--------|-----------|-----|
| VIEWPOINTE | 20121031 | 7952 | 6100022 | 5766665847 | 000060 | 1,781.13 | 8826517897 | |



WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8288

WELLS FARGO BANK, N A
GEORGIA

7952

04-22 / 610 6308

10/24/2012

PAY TO THE ORDER OF    GMAC MORTGAGE    7434763816    $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************* ___ DOLLARS

MEMO    LONDON COURT NOV. 2012

AUTHORIZED SIGNATURE

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|-----------|----|
| VIEWPOINTE | 20121001 | 7941 | 6100022 | 5766665847 | 000060 | 1,781.13 | 8820633298 | |

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N A
GEORGIA

**7941**

SEP 2 9 2012    64-22 / 610 6208

9/25/2012

PAY TO THE
ORDER OF    GMAC MORTGAGE 2                                     $  **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100***********************************************************    DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

ABSENCE OF SIGNATURE NOTED

MEMO                        7434763876
LONDON COURT OCT 2012                              AUTHORIZED SIGNATURE

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20111005 | 7845 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8824405969 | |

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N.A.
GEORGIA

7845

64-22 / 6108137

9/27/2011

PAY TO THE ORDER OF    GMAC MORTGAGE                743⊢763876        $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100******************************************************        DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

NB

*Michael Wheeler*
AUTHORIZED SIGNATURE

MEMO    LONDON COURT, OCT. 2011

⑈007845⑈ ⑆061000227⑈ 02000026150123⑈

ICL Deposit to JPMorgan Chase

Regulus LVL                    222222222222
.00000414    02    JoseDeogra    111111111
.311026    175250    10/ 05/ 11

414 2 311026 0051 20110105

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|-----------|-----|
| VIEWPOINTE | 20110908 | 7836 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8626286130 | |



Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | C |
|------|-----------|--------|---------|---------|----|--------|-----------|---|
| VIEWPOINTE | 20110808 | 7827 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8222587575 | |

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N. A.
GEORGIA

7827

64-22 / 6100137

7/29/2011

PAY TO THE ORDER OF    GMAC MORTGAGE

74 347765876

$ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100******************************************************************** DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

NB

Michael Wheeler
AUTHORIZED SIGNATURE

MEMO    LONDON COURT, AUGUST 2011

⑈007827⑈ ⑆061000227⑆ 20000261501 23⑈

ICL Deposit to JPMorgan Chase

Regulus LVL                          222222222222
00000414      04        brianwilso    111111111
311260        012454                  08/06/11

PLEASE DO NOT STAPLE

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20110603 | 7811 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8524633665 | |



**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.6268

WELLS FARGO BANK, N.A.
GEORGIA

7811

NB
5/28/2011

74 34763876

PAY TO THE ORDER OF    GMAC MORTGAGE                        $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************ DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO    LONDON COURT, JUNE 2011                    AUTHORIZED SIGNATURE

⑆007811⑆ ⑆061000227⑆ 2000026150123⑆

ICL Deposit to JPMorgan Chase

Regulus LVL                          222222222222
00000414        03        tercolebri        111111111
311504        194553                06/03/11

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20110504 | 7800 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8422617770 | |

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N. A.
GEORGIA

64-22 / 6106137

**NB**

7800

4/27/2011

PAY TO THE
ORDER OF    GMAC MORTGAGE                    7 4 3 4 7 6 3 8 7 6        $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100**************************************************************    DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO
LONDON COURT, MAY 2011

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑆007800⑆ ⑈061000227⑇ 2000026150123⑈

WHEELER CONSTRUCTION COMPANY

ICL Deposit to JPMorgan Chase

| | | |
|---|---|---|
| Regulus LVL | | 222222222222 |
| 00000414 | 04    Jermainebu | 111111111 |
| 311576 | 074451 | 05/04/11 |

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20110310 | 7785 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8328300974 | |

WARNING! THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N. A.
GEORGIA

7785

64-22 / 610513

2/25/2011

PAY TO THE
ORDER OF    GMAC MORTGAGE

$ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************************    DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO    LONDON COURT MARCH 2011

*Michael Wheeler*
AUTHORIZED SIGNATURE

⑈007785⑈ ⑆061000227⑆ 20000261501 23⑈

PLEASE ENDORSE HERE

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20110207 | 7771 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8226365842 | |

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8268

WELLS FARGO BANK, N. A.
GEORGIA

7771

64-22 / 6106137

1/27/2011

PAY TO THE ORDER OF    GMAC MORTGAGE    7434763876    **NB**    $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************    DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO    LONDON COURT FEB. 2011

AUTHORIZED SIGNATURE

⑆007771⑆ ⑉061000227⑉20000261501 23⑈

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20110218 | 7758 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 8526840475 | |



WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.8266

WELLS FARGO BANK, N. A.
GEORGIA

DEC 3 1 2010

7758

84-22 / 6108137

12/28/2010

PAY TO THE ORDER OF     GMAC MORTGAGE          7434763876          $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************ DOLLARS

MEMO     LONDON CT. JAN. 2011

Michael Wheeler
AUTHORIZED SIGNATURE

⑈OO 7758⑈ ⑈O6LOOO 227⑈ 2OOOO 26 L5O L23⑈

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

*Date: January 20, 2011*        *Wells Fargo PhotoCopy Request*        *Page 14 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*

---

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7749

64-22 / 610

11/26/2010

PAY TO THE ORDER OF    GMAC MORTGAGE        94.34763876        $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100******************************************************** DOLLARS

MEMO    LONDON COURT DEC 2010

AUTHORIZED SIGNATURE

⑈007749⑈ ⑆061000227⑆ 200002615 0123⑈

---

| | |
|---|---|
| **R/T Number** | 06100022 |
| **Sequence Number** | 8222871694 |
| **Account Number** | 02000026150123 |
| **Processing Date** | 20101206 |
| **Amount** | 1781.13 |
| **Check Number** | 7749 |

*Date: January 20, 2011*        *Wells Fargo PhotoCopy*        *Page 5 of 15*
                                        *Request*

*Reference: 2000103544662:2000103550662:2000103554662*



| R/T Number | 06100022 | Processing Date | 20101103 |
| Sequence Number | 5556516040 | Amount | 1781.13 |
| Account Number | 02000026150123 | Check Number | 7742 |

*Date: January 20, 2011*          *Wells Fargo PhotoCopy Request*          *Page 15 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*

---

WHEELER CONSTRUCTION COMPANY
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7740

64-22 / 610

10/19/2010

PAY TO THE ORDER OF    GMAC MORTGAGE                    $: **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100***************************************** DOLLARS

MEMO    LONDON COURT, OCT 2010

AUTHORIZED SIGNATURE

⑆007740⑆ ⑆061000227⑆ 20000261501 23⑈

---

**R/T Number** 06100022
**Sequence Number** 8421435309
**Account Number** 02000028150123

**Processing Date** 20101028
**Amount** 1781.13
**Check Number** 7740

*Date: January 20, 2011*        *Wells Fargo PhotoCopy Request*        *Page 11 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*



| R/T Number | 06100022 | Processing Date | 20100907 |
| Sequence Number | 6551659850 | Amount | 1781.13 |
| Account Number | 02000026150123 | Check Number | 7723 |

*Date: January 20, 2011*        *Wells Fargo PhotoCopy Request*        *Page 8 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*



| | | |
|---|---|---|
| **R/T Number** | 06100022 | |
| **Sequence Number** | 6057986180 | |
| **Account Number** | 02000026150123 | |
| **Processing Date** | 20100804 | |
| **Amount** | 1781.13 | |
| **Check Number** | 7711 | |

*Date: January 20, 2011*        *Wells Fargo PhotoCopy Request*        *Page 2 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*



THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7701

64-72 / 610

6/28/2010

PAY TO THE ORDER OF   GMAC MORTGAGE                               $ ***1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************ DOLLARS

MEMO   LONDON COURT, JULY 2010                    *Michael Wheeler*
                                                  AUTHORIZED SIGNATURE

⑈00770⑈⑈ ⑈061000227⑈⑈20000261501 23⑈

| | | |
|---|---|---|
| **R/T Number** | 06100022 | **Processing Date** 20100706 |
| **Sequence Number** | 5351078840 | **Amount** 1781.13 |
| **Account Number** | 02000026150123 | **Check Number** 7701 |

*Date: January 20, 2011*          *Wells Fargo PhotoCopy Request*          *Page 3 of 15*

*Reference: 2000103544662:2000103550662:2000103554662*



**R/T Number** 06100022
**Sequence Number** 5455575330
**Account Number** 02000026150123

**Processing Date** 20100602
**Amount** 1781.13
**Check Number** 7689

| Site | Paid Date | Serial | Routing | Account | PC | Amount | Sequence # | Ca |
|------|-----------|--------|---------|---------|-----|--------|------------|-----|
| VIEWPOINTE | 20100504 | 7679 | 6100022 | 02000026150123 | 000060 | 1,781.13 | 6858071540 | |

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770 428.9527

7434763876

WACHOVIA
WACHOVIA BANK, N.A
WACHOVIA.COM

64-22 / 610

7679

4/26/2010

PAY TO THE ORDER OF    GMAC MORTGAGE                                    $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************ DOLLARS

APR 3 0 2010

Michael Wheeler
AUTHORIZED SIGNATURE

MEMO    LONDON COURT MAY, 2010

⑴007679⑴ ⑴061000227⑴ 20000261501 23⑴

Copyright © 2002-06 Wells Fargo & Company. All rights reserved.

*Date: January 20, 2011*        *Wells Fargo PhotoCopy Request*        *Page 1 of 3*

*Reference: 2000103134537:2000103140537:2000103144537*

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7662

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

64-22 / 610

3/31/2010

PAY TO THE
ORDER OF     **GMAC MORTGAGE**                                    $ **1,781.13**

One Thousand Seven Hundred Eighty-One and 13/100************************************************************ DOLLARS

~7434763876~

MEMO     LONDON COURT APRIL 2010          *Michael Wheeler*
AUTHORIZED SIGNATURE

⑈007662⑈ ⑆061000227⑆20000261501 23⑈

| | |
|---|---|
| **R/T Number** | 06100022 |
| **Sequence Number** | 6457469130 |
| **Account Number** | 02000026150123 |

| | |
|---|---|
| **Processing Date** | 20100407 |
| **Amount** | 1781.13 |
| **Check Number** | 7662 |

*Date: January 20, 2011*          *Wells Fargo PhotoCopy*          *Page 4 of 6*
                                              *Request*

*Reference: 2000102918903:2000102924903:2000102928903*

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

7654

64-22 / 610

2/28/2010

PAY TO THE ORDER OF    **GMAC MORTGAGE**                    $ **1,781.13

One Thousand Seven Hundred Eighty-One and 13/100************************************************************ DOLLARS

MEMO    LONDON COURT MARCH 2010                    AUTHORIZED SIGNATURE

⑈007654⑈ ⑆061000227⑆ 20000261501 23⑈

| | |
|---|---|
| **R/T Number** 06100022 | **Processing Date** 20100308 |
| **Sequence Number** 6553686110 | **Amount** 1781.13 |
| **Account Number** 02000026150123 | **Check Number** 7654 |

*Date: January 20, 2011*          *Wells Fargo PhotoCopy*          *Page 5 of 6*
                                  *Request*

*Reference: 2000102918903:2000102924903:2000102928903*



**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

04-22 / 610

7638

1/28/2010

PAY TO THE
ORDER OF    GMAC MORTGAGE                    7 4 3 4 7 2 6 3 8 7 6     $ **1,787.98

One Thousand Seven Hundred Eighty-Seven and 98/100******************************************** DOLLARS

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

MEMO    LONDON COURT FEB. 2010                              AUTHORIZED SIGNATURE

⑆007638⑆ ⑆061000227⑆ 2000026150123⑈

| | |
|---|---|
| **R/T Number** | 06100022 |
| **Sequence Number** | 6557150150 |
| **Account Number** | 02000026150123 |

| | |
|---|---|
| **Processing Date** | 20100203 |
| **Amount** | 1787.98 |
| **Check Number** | 7638 |

*Date: January 20, 2011*          *Wells Fargo PhotoCopy*          *Page 1 of 6*
                                          *Request*

*Reference: 2000102918903:2000102924903:2000102928903*

---

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**7631**

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A.
WACHOVIA.COM

64-22 / 610                    1/2/2010

PAY TO THE
ORDER OF ____ **GMAC MORTGAGE**          7438 594637    **1,787.98**

One Thousand Seven Hundred Eighty-Seven and 98/100************************************************ **DOLLARS**

THIS CHECK IS VIOD AFTER 30 DAYS FROM ISSUE

*Michael Whele*
AUTHORIZED SIGNATURE

MEMO ____ LONDON COURT, JAN. 2010

⑈007631⑈ ⑆061000227⑆ 2000026150123⑈

---

**R/T Number**          06100022
**Sequence Number** 6356165330
**Account Number**  02000026150123

**Processing Date**  20100108
**Amount**           1787.98
**Check Number**     7631

*Date: January 20, 2011*         *Wells Fargo PhotoCopy Request*         *Page 7 of 7*

*Reference: 2000102918906:2000102924906:2000102928906*



| | | |
|---|---|---|
| **R/T Number** | 06100022 | **Processing Date** 20091207 |
| **Sequence Number** | 6752223920 | **Amount** 1787.98 |
| **Account Number** | 02000026150123 | **Check Number** 7624 |

*Date: January 20, 2011*        *Wells Fargo PhotoCopy*        *Page 3 of 7*
                                      *Request*

*Reference: 2000102918906:2000102924906:2000102928906*

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

**WHEELER CONSTRUCTION COMPANY**
1728 VICTORIA WAY
KENNESAW GEORGIA 30152
770.428.9527

WACHOVIA
WACHOVIA BANK, N.A
WACHOVIA.COM

64-22 / 610

7579

6/29/2009

PAY TO THE
ORDER OF    **HOMECOMINGS MORTGAGE**                    $ **616 56

Six Hundred Sixteen and 56/100************************************************************ **DOLLARS**

# 74385946 32
GMC5946 32

MEMO    LONDON COURT, NOV 09                    AUTHORIZED SIGNATURE

⑈007579⑈ ⑈061000227⑈ 20000261501 23⑈

**R/T Number**        06100022        **Processing Date**    20090728
**Sequence Number** 5958868880        **Amount**            616.56
**Account Number**  02000026150123   **Check Number**       7579

"EXHIBIT 5"

## GMAC Mortgage Account Statement

**CUSTOMER INFORMATION**

| | |
|---|---|
| Name: | Michael H Wheeler |
| Account Number: | 7434763876 |
| Home Phone #: | (770)428-9527 |

**PROPERTY ADDRESS**

6 LONDON COURT
CARTERSVILLE    GA 30120

### GMAC Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

MICHAEL H WHEELER
1728 VICTORIA WAY
KENNESAW GA  30152-6911

For information about your existing account,
please call: 1-800-766-4622.

For information about refinancing or obtaining
a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information   Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

| | |
|---|---|
| Account Number | 7434763876 |
| Statement Date | September 18, 2012 |
| Maturity Date | October 01, 2032 |
| Interest Rate | 8.00000 |
| Interest Paid Year-to-Date | $0.00 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $3,814.68- |
| Principal Balance(PB)* | $196,081.05 |

| | |
|---|---|
| Principal and Interest | $1,551.91 |
| Subsidy/Buydown | $0.00 |
| Escrow | $329.17 |
| Amount Past Due | $69,351.66 |
| Outstanding Late Charges | $3,036.41 |
| Other | $899.32 |
| Total Amount Due | $75,168.47 |
| Account Due Date | September 01, 2009 |

| | |
|---|---|
| For Customer Care inquiries call: | 1-800-766-4622 |
| For Insurance inquiries call: | 1-800-256-9962 |
| For Payment Arrangements call: | 1-800-850-4622 |

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.

**See Reverse Side For Important Information And State Specific Disclosures**

### Mail This Portion With Your Payment

#### Mortgage Payment Coupon

| Account Number | Due Date | Mortgage Payment | Total Amount Due | Amount Due With Late Fee If Received 15 Days AFTER Due Date | |
|---|---|---|---|---|---|
| 7434763876 | 09/01/09 | $1,881.08 | $75,168.47 | $1,958.67 | **GMAC** Mortgage |
| MICHAEL H WHEELER | | | | | |

**Please assist GMAC Mortgage in applying your payment**

Sign here to receive information on
monthly ACH. See back for details.

| Extra Funds | | |
|---|---|---|
| Full Payment(s) | $ | |
| ADDITIONAL Principal | $ | |
| ADDITIONAL Escrow | $ | |
| Late Charge | $ | |
| Other Fees (please specify) | $ | |
| Total Amount Enclosed | $ | |

GMAC MORTGAGE
PO BOX 9001719
LOUISVILLE KY  40290-1719

02   0909   7434763876   00188108   07759   22222   9

"EXHIBIT 6"

**CUSTOMER INFORMATION**

Name:        Michael H Wheeler

Account Number:     7434763876
Home Phone #:      (770)235-5344

**PROPERTY ADDRESS**

6 LONDON COURT
CARTERSVILLE     GA 30120

# **GMAC** Mortgage

Visit us at www.gmacmortgage.com for
account information or to apply on-line.

021V10 11 003  0014318 20121019 L.204804 GMREG  1 OZ DOM L.20480000* 145316  GM

MICHAEL H WHEELER
1728 VICTORIA WAY
KENNESAW GA  30152-6911



> For information about your existing account,
> please call: 1-800-766-4622.
>
> For information about refinancing or obtaining
> a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed  for inquiries on the reverse side

## Account Information

| | |
|---|---|
| Account Number | 7434763876 |
| Statement Date | October 18, 2012 |
| Maturity Date | October 01, 2032 |
| Interest Rate | 8.00000 |
| Interest Paid Year-to-Date | $1,307.21 |
| Taxes Paid Year-to-Date | $2,905.63 |
| Escrow Balance | $6,372.90- |
| Principal Balance(PB)* | $195,836.35 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $1,551.91 |
| Subsidy/Buydown | $0.00 |
| Escrow | $329.17 |
| Amount Past Due | $69,333.42 |
| Outstanding Late Charges | $3,114.00 |
| Other | $1,017.51 |
| Total Amount Due | $75,346.01 |
| Account Due Date | October 01, 2009 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:      1-800-256-9962**
**For Payment Arrangements call: 1-800-850-4622**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Escrow Receipt | 09/01/09 | 10/15/12 | $1,268.80 | | | $1,268.80 | | | |
| County Tax Paid | 09/01/09 | 10/04/12 | $2,905.63 | | | $2,905.63 | | | |
| Receipt | 09/01/09 | 09/28/12 | $941.94 | | | | | | $941.94 |
| Payment | 09/01/09 | 09/28/12 | $839.19 | $244.70 | $1,307.21 | $347.41 | | | $1,060.13- |
| Fire Ins Paid | 08/01/09 | 09/21/12 | $1,268.80 | | | $1,268.80 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**Considering a refinance or the purchase of a new home? We're here to help - call a loan
specialist today at 877-528-3817 to review all of the financing options available to you.**

### See Reverse Side For Important Information And State Specific Disclosures

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

FEDERAL DEPOSIT INSURANCE CORPORATION
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>ALLY FINANCIAL INC.<br>Detroit, Michigan<br><br>ALLY BANK<br>Midvale, Utah<br><br>RESIDENTIAL CAPITAL, LLC<br>Minneapolis, Minnesota<br><br>and<br><br>GMAC MORTGAGE, LLC<br>Fort Washington, Pennsylvania | FRB Docket No. 11-020-B-HC<br>11-020-B-DEO<br><br>FDIC-11-123b |

## CONSENT ORDER

WHEREAS, Ally Financial Inc., Detroit, Michigan ("Ally Financial"), a registered bank

holding company, indirectly owns and controls Ally Bank (f/k/a GMAC Bank), Midvale, Utah, a

state nonmember bank, and numerous direct and indirect nonbank subsidiaries, including

Residential Capital, LLC, Minneapolis, Minnesota ("ResCap"), and its direct and indirect

subsidiaries, including GMAC Mortgage, LLC, Fort Washington, Pennsylvania ("GMAC

Mortgage"), and its subsidiaries. Ally Financial, f/k/a GMAC LLC, became a bank holding

company on December 24, 2008, following approval by the Board of Governors of the Federal

Reserve System (the "Board of Governors") pursuant to section 3(a)(1) of the Bank Holding

30.   Nothing in this Order, express or implied, shall give to any person or entity, other

than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right,

remedy, or claim under this Order.

By Order of the Board of Governors effective this 13th day of April, 2011.

By Order of the Federal Deposit Insurance Corporation effective this 13th day of April,
2011.

ALLY FINANCIAL INC.

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM

By:  /s/ Michael A. Carpenter
     Michael A. Carpenter
     Chief Executive Officer

By:  /s/ Jennifer J. Johnson
     Jennifer J. Johnson
     Secretary of the Board

ALLY BANK

FEDERAL DEPOSIT INSURANCE
CORPORATION

By:  /s/ Mark B. Hales
     Mark B. Hales
     Chief Executive Officer

By:  /s/ Daniel E. Frye
     Daniel E. Frye
     Acting Regional Director
     New York Region

RESIDENTIAL CAPITAL, LLC

By:  /s/ Thomas Marano
     Thomas Marano
     Chairman & Chief Executive
     Officer

GMAC MORTGAGE, LLC

By:  /s/ Steven M. Abreu
     Steven M. Abreu
     President