CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (TJM-9775)
Sean A. O'Neal (SAO-4067)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Special Counsel for Wilmington Trust, National Association, as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

In re

**RESIDENTIAL CAPITAL, LLC, et al.,**

                  Debtors.

------------------------------------------------------X

Chapter 11 Case No.

12-12020 (MG)

(Jointly Administered)

**LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION TO MOTION BY ALLY FINANCIAL INC. AND ALLY BANK FOR AN ORDER ENFORCING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(a)(3) BY (1) ENJOINING PROSECUTION OF ALTER EGO AND VEIL PIERCING CLAIMS IN THE CLASS ACTION ENTITLED *LANDON ROTHSTEIN, ET AL. V. GMAC MORTGAGE, LLC, ET AL.*, AND (2) DECLARING SUCH CLAIMS VOID *AB INITIO***

**TO THE HONORABLE JUDGE GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

        Wilmington Trust, National Association (the "Trustee"), solely in its capacity as indenture trustee for various series of senior unsecured notes in the outstanding aggregate principal amount of approximately $1 billion (the "Notes," and the holders thereof, the "Noteholders") issued by Residential Capital, LLC ("Residential Capital," and with its debtor-

affiliates, the "Debtors"), under that certain indenture dated as of June 24, 2005, respectfully submits this limited objection to that certain motion by Ally Financial Inc. and Ally Bank (together with their affiliates other than the Debtors, "AFI") for an order enforcing the automatic stay pursuant to 11 U.S.C. § 362(a)(3) by (1) enjoining prosecution of alter ego and veil piercing claims in the class action entitled *Landon Rothstein, et al. v. GMAC Mortgage, LLC, et al.*, and (2) declaring such claims void *ab initio* (Doc. No. 2511) (the "Motion"). In support of this limited objection, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtors, the Official Committee of Unsecured Creditors, and certain interested parties, including the Trustee, have commenced mediation discussions with the goal of achieving a consensual plan of reorganization. A central focus of the mediation is the potential resolution of claims against AFI based on alter ego and veil-piercing theories of liability. The examiner is also investigating the merits and potential value of claims against AFI based on these same legal theories. The Trustee respectfully submits that it would be premature for the Court to rule on the Motion at this critical juncture in these cases because the parties are expending considerable time and effort in an attempt to resolve these matters consensually. Accordingly, the Trustee respectfully requests that this Court adjourn the Motion for a period of at least ninety (90) days to afford the parties the opportunity to resolve issues of alter ego liability on a global basis.

In the alternative, if the Court decides the Motion on the merits, the Trustee respectfully requests that any decision be limited solely to whether the claims presented in the *Rothstein* case represent an asset of the estate. On this question, the Trustee makes the following observations. First, this narrow question should be decided based on the unique facts presented

2

in the *Rothstein* case. Second, creditors have an interest in the resolution of this issue and in having the Motion delayed or decided narrowly because there are significant alter ego claims relating to conduct that goes far beyond the wrongful activity that is asserted in the *Rothstein* case. Third, claims against AFI include not only estate claims but also significant and unique alter ego claims against AFI that could be brought by the Trustee that are based on breaches of contractual duties owed to the Noteholders.

## BACKGROUND

### A.    Procedural Background

1.    On May 14, 2012, the Debtors commenced voluntary cases under chapter 11, title 11, of the United States Bankruptcy Code (the "Bankruptcy Code"). On May 14, 2012, the Court authorized joint administration of these chapter 11 cases, and the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On June 28, 2012, the Court directed the appointment of an examiner. The U.S. Trustee appointed Arthur J. Gonzalez, Esq. as examiner (the "Examiner"), and the Court approved the appointment on July 3, 2012. On July 27, 2012, the Court approved the Examiner's preliminary statement regarding the scope and timing of his investigation. The scope of the Examiner's investigation is broad and encompasses all corporate relationships between or among the Debtors, AFI, and Ally Bank. *See Order Approving Scope of Investigation of Arthur J Gonzalez, Examiner* (Doc. No. 925). The Examiner's investigation also includes an inquiry into all state and federal law claims or causes of action that the Debtors and third parties possess against AFI and/or its insiders, including current and former directors, officers, and shareholders, as well as the value of releases contemplated by the Debtors as well as third-party releases with respect to

3

those claims and causes of action. The Examiner's investigation remains ongoing and is unlikely to be finished before April.

3.      On December 6, 2012, the Debtors filed a motion seeking the appointment of a mediator (the "Mediation Motion"). As stated in the Mediation Motion, one of the main objectives of the mediation is to "foster discussion among AFI, the Debtors, and the Debtors' creditors on the strengths and weaknesses of estate and third party claims against AFI." Another key objective is to facilitate a consensus view as to how to best settle claims against AFI and allocate the proceeds as part of a mutually agreeable plan of reorganization.

4.      On December 26, 2012, the Court issued an order appointing the Honorable James M. Peck as mediator "to assist the parties in resolving certain issues relating to the formulation and confirmation of a Plan." *See Order Appointing Mediator* (Doc. No. 2519) (the "Mediation Order").

**B.    The Motion**

5.      On December 21, 2012, AFI filed the Motion. The Motion concerns that certain First Amended Class Action Complaint in the case captioned *Landon Rothstein, et al. v. GMAC Mortgage, LLC, et al.*, No. 1:12-cv-03412-AJN (S.D.N.Y.), which alleges claims against AFI for *inter alia* violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) and the Real Estate Settlement Procedures Act (RESPA), breach of contract, and breach of fiduciary duty under theories of alter ego and vicarious liability. *See* Motion ¶¶ 2-5. The plaintiffs in *Rothstein* allege that their mortgage servicer, GMAC Mortgage, LLC ("GMACM"), overcharged them by requiring them to purchase "force-placed insurance." *See* Decl. of Richard G. Haddad in Support of the Motion, Ex. B, ¶¶ 2, 45-46 (Doc. No. 2512). GMACM allegedly purchased the insurance on the plaintiffs' behalf and then received secret rebates or kickbacks from insurance companies that were not passed on to the plaintiffs. *Id.* ¶¶ 7-10, 66-73. The plaintiffs state that AFI is vicariously

4

responsible for the actions of GMACM on the theory that it controlled GMACM as its alter ego and facilitated the kickbacks through its global cash management system. *Id.* ¶¶ 11, 13, 76, 134-223.

6. Through the Motion, AFI seeks an order pursuant to section 362(a) of the Bankruptcy Code enjoining plaintiffs in the *Rothstein* litigation from pursuing alter ego and veil-piercing claims on the theory that such claims are the exclusive property of the Debtors. *See* Motion ¶¶ 14-22. Specifically, AFI argues that the *Rothstein* plaintiffs' alleged injuries are common to all GMACM and Residential Capital creditors, and therefore, the *Rothstein* plaintiffs' claims belong to the Debtors and are prohibited by the automatic stay. *Id.* ¶¶ 19-22. AFI requests that the Court declare the *Rothstein* plaintiffs' alter ego or veil-piercing claims void *ab initio* on the same basis. *Id.* ¶ 23.

## LIMITED OBJECTION

### A.    The Court Should Adjourn the Motion

7. This Court has previously determined that mediation is in the best interests of the Debtors, creditors, and all other interested parties. *See* Mediation Order at 1. Over the past several weeks, key constituencies have begun discussions with the objective of formulating a consensual plan. As noted above, an integral issue in the mediation, and a major focus of any consensual plan, is the resolution of claims against AFI, including estate and individual creditor claims for alter ego and veil piercing. Some claims for alter ego and veil piercing rightfully belong to the Debtors, but others do not.

8. In short, (i) the mediation process now underway could moot the need for the Court to decide the Motion, (ii) the Examiner has yet to make findings regarding the merits of any alter ego claim, and (iii) a significant part of the Examiner's investigation involves exploring and analyzing these claims and issues. Accordingly, the Trustee respectfully requests that the Court

adjourn the Motion for a period of not less than ninety (90) days so all parties can attempt to resolve these claims as part of the mediation process, and so the Examiner can publish his report.[1]

**B.    Alternatively, Any Decision Should Limit Its Findings and Conclusions to the Specific Facts and Circumstances Relating to the *Rothstein* Plaintiffs**

9.    If this Court elects to decide the merits of the Motion, the Court should expressly limit any decision to the particular facts in the *Rothstein* case. The issue raised by the Motion is not whether a claim for veil piercing exists or whether all potential alter ego claims against AFI are estate assets, but simply whether the claim asserted in the *Rothstein* case belongs to the Debtors' estates, which is an issue to be determined based on what the Court determines to be the relevant state law. *See St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989).

10.    The general rule followed by most, if not all, states, including Delaware, is that, "if the claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor," then the debtor is the proper party to assert the claim, and all creditors will thereby be bound by the results of any such legal action. *In re RSL COM PRIMECALL, Inc.*, No. 01-11457(ALG), 2003 WL 22989669, at *4 (Bankr. S.D.N.Y. Dec. 11, 2003). By contrast, however, if the underlying cause of action belongs to a creditor or third-party, rather than the estate, then the third-party and not the estate has standing to pursue that claim under an alter ego theory of liability. *See Shaoxing Cnty. Huayue Imp. & Exp. v. Bhaumik*, 191 Cal. App. 4th 1189, 1199 (2011) (holding that suit was not stayed by bankruptcy because creditor's claim against debtor's general manager for nonpayment under a contract was not asserting a right of action belonging to the corporation); *see also In re Chandre Corp.*, No. 03-35669 (CGM), 2005

---

[1]    The Court has express authority to assign any matter to mediation, and *a fortiori* this Court has the power to adjourn this matter for the same reason. *See* Bankr. S.D.N.Y. R. 9019-1 and Gen. Order M-390; *see also* 11 U.S.C. §105(a). Moreover, no party will be prejudiced by a modest adjournment because AFI and the *Rothstein* plaintiffs have executed a stipulation providing that the time for AFI and Ally Bank to respond to the *Rothstein* plaintiffs' Amended Complaint will be extended for a reasonable time following the filing of this Court's decision on the Motion. *See Decl. of Richard G. Haddad in Support of Motion,* Ex. D (Doc. No. 2512). Accordingly, the stipulation preserves the status quo and mitigates any harm that the parties might suffer from an adjournment.

WL 3789129, *6 -*7 (Bankr. S.D.N.Y. Oct. 28, 2005) (holding that debtor trustee lacked standing to bring alter ego claim against debtor's parent and sister subsidiary corporation for judgment obtained by creditor, since the underlying claim belonged to the creditor); *Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 607-08 (S.D.N.Y. 1996) (applying California law, which, like Delaware law, recognizes the standing of corporate entities to bring generalized alter ego claims, in holding that patent holder's alter ego claim against the debtor's shareholder that derived from a direct and particular injury was not property of corporate debtor's bankruptcy estate, and could be pursued by patent holder without violating automatic stay); *In re Phar-Mor, Inc. Sec. Litig.*, 164 B.R. 903, 905 (W.D. Pa. 1994) (holding that plaintiff equity investors' claims against debtor's former auditors for violations of the securities laws, fraud, and negligent misrepresentation belonged exclusively to the plaintiff-creditors and were not part of the debtor Phar-Mor's estate); *Begier v. Price Waterhouse*, 81 B.R. 303, 305-06 (E.D. Pa. 1987) (holding that breach of contract and negligence claims against a bankrupt corporation's outside accountant belonged to the creditors alone). *See generally* Kavita Gupta, *Chasing the Money, Pursuing a Debtor's Shareholders Under Alter-Ego Liability Theory*, ABI Journal, Dec. 2012 – Jan. 2013, at 14, 78-79. In other words, if the cause of action "belongs solely to the . . . creditors, the trustee has no standing to assert it." *McHale v. Alvarez* (*In re The 1031 Tax Group, LLC*), 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008) (citation omitted).

11. In determining whether a particular claim belongs to the creditor or the estate, the relevant inquiry is whether the claim could be alleged by all creditors, or by a particular creditor (or group of creditors), independently. *See In re RSL COM PRIMECALL, Inc.*, No. 01-11457(ALG), 2003 WL 22989669, at *4 (finding that the debtor trustee is the proper party to bring a claim "[that] could be brought by any creditor of the debtor"). *See also Labarbera v. United*

7

*Crane & Rigging Services, Inc.*, 2011 U.S. Dist. LEXIS 20939, at *6 (E.D.N.Y. Mar. 2, 2011) ("The relevant question is whether Plaintiffs' alter ego . . . claims could be made by other creditors . . . ."). The underlying rationale behind this rule is that one creditor should not be permitted to pursue self-interested redress for an injury suffered on a purely secondary or derivative basis, where the only direct injury was suffered by the debtor. *See St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 704 (applying Ohio law and holding that "[a]ll unsecured creditors are to be treated equally if their injuries are not different in kind").

12. Further, courts have recognized that both a debtor and creditor may have standing to bring different claims that arise out of the same course of conduct—that is, while a creditor must allege a personal injury in order to have standing, the course of conduct giving rise to that injury need not be unique or personal to that creditor. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 433 (Bankr. S.D.N.Y. 2010), *aff'd sub nom. In re Madoff*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012) ("[I]t is possible for a bankruptcy estate and a creditor to own separate claims against third parties arising out of the same general conduct."); *see also Variable-Parameter Fixture Dev. Corp.*, 945 F. Supp. at 607-08 (rejecting defendant's argument that creditor's claim was general merely because the complaint alleged siphoning of assets that damaged the debtor company, where creditor had also alleged a direct and personal injury).

13. Here, any decision by the Court on the merits of the Motion should apply only to the specific facts presented in *Rothstein*. The Court should decline to make a blanket determination regarding AFI's alter ego liability as to any claims not specifically presented in the *Rothstein* complaint. *See In re Chandre Corp.*, 2005 WL 3789129, at *7 (veil piercing is "not an independent cause of action, but rather a vehicle for holding a shareholder or a parent corporation liable for the debts of the corporate defendant"); *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)

8

(describing veil piercing as "a means of imposing liability on an underlying cause of action") (citation omitted). Any determination must be made on a case-by-case basis depending upon the particular claims and the alleged theory of alter ego liability. Indeed, there may be multiple creditor constituencies that have claims against AFI, including the Trustee's unique claims for alter ego and veil piercing, and the Examiner already has expended considerable estate resources analyzing both estate and third-party claims that could fall within the scope of a broad ruling on the Motion. Any decision should allow for a future potential case-by-case assessment based on the facts and claims giving rise to such liability.

## CONCLUSION

14. For the foregoing reasons, the Trustee respectfully requests that the Court adjourn the ruling on the Motion for a period of at least ninety (90) days to permit the mediation to proceed and allow the Examiner to publish his report in advance of a decision on the Motion. Alternatively, the Trustee respectfully requests that the Court limit any findings to the specific facts in the *Rothstein* case and clarify that any decision shall not foreclose the ability of other parties to bring alter ego claims against AFI and Ally Bank in the future.

| | |
|---|---|
| Dated: New York, New York<br>February 1, 2013 | Respectfully submitted,<br><br>CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br><br>By: /s/ Sean A. O'Neal<br>Thomas J. Moloney (TJM-9775)<br>Sean A. O'Neal (SAO-4067)<br>A Member of the Firm<br>One Liberty Plaza<br>New York, NY 10006<br>*(212) 225-2000*<br><br>*Special Counsel for Wilmington Trust, National Association, as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC* |