# EXHIBIT G

| | |
|---|---|
| **From:** | Solomon, William Legal |
| **Sent:** | Wednesday, October 19, 2011 1:47 PM |
| **To:** | Carpenter, Michael; Yastine, Barbara; Marano, Tom; Hamzehpour, Tammy; Brown, Jeff; Mackey, James; Pinkston, Corey |
| **Subject:** | PLS Claimant |

Yesterday, I received the attached letter from Kathy Patrick, a Houston attorney, requesting to meet with Ally representatives next week to "seek a resolution of repurchase and servicing claims with Ally". Ms Patrick represented the claimants in the $8.5 billion settlement with BofA.

I am meeting with Tim Devine and the litigation team later today to develop a recommend approach for dealing with this.



1

Confidential                                                                                                       ALLY_0212895



Kathy D. Patrick
kpatrick@gibbsbruns.com
713.751.5253

October 17, 2011

<u>Via Federal Express</u>

William B. Solomon, Jr., Esq.
    General Counsel
Ally Financial Inc.
200 Renaissance Center
Detroit, Michigan 48265

Dear Mr. Solomon:

    This firm represents investment advisers and holders of Residential Mortgage Backed Securities (RMBS) issued and/ or underwritten by Ally Financial Inc. and/or its affiliates ("Ally"). The aggregate outstanding balance of the 242 Ally deals in which our clients collectively hold 25% or more of the voting rights of a class in that deal, exceeds $51 billion. The aggregate outstanding balance of the 173 Ally deals in which our clients collectively hold 50% or more of the voting rights of a class in that deal, exceeds $36 billion.

    There is widespread, readily available evidence suggesting that large numbers of mortgages securing the certificates held by our clients were sold or deposited into the RMBS pools based on false and/or fraudulent representations and warranties by the mortgage originators, sellers and/or depositors. This evidence includes, but is certainly not limited to:

- excessive early default and foreclosure rates experienced in the underlying mortgage pools;

- a loan-level analysis of Ally RMBS conducted by the Federal Housing Finance Agency (FHFA), which revealed that up to 13% of the mortgage loans in Ally RMBS breached owner-occupancy representations and warranties, and that up to 49% of the mortgage loans in Ally RMBS breached Loan-to-Value representations and warranties[1];

---

[1] Our clients collectively hold 25% or more of the voting rights of a class in 18 of the 21 Ally deals which FHFA analyzed.

- MBIA's lawsuits against Ally, reporting that its loan-level analysis of various Ally RMBS showed that high numbers of mortgages in the pools were ineligible at origination[2];

- detailed allegations in securities cases against Ally, which suggest widespread deficiencies in Ally's underwriting practices, including inaccurate representations and warranties regarding important loan characteristics such as borrower incomes and home appraisals[3];

- substantial downgrades of the certificates by credit rating agencies; and

- Ally's own apparent acknowledgement that it is potentially liable for violations of representations and warranties in Ally RMBS, evidenced by its $829 million reserve for repurchase liabilities as of June 30, 2011, which relates "primarily" to non-GSE exposure,[4] as well as its statement that such liabilities are "most significant for loans originated and sold between 2004 through 2008, specifically the 2006 and 2007 vintages *that were originated and sold prior to enhanced underwriting standards and risk-mitigation actions implemented in 2008 and forward.*"[5]

In addition, there is widespread, readily available evidence suggesting that Ally, as servicer and/or master servicer of mortgage loans securing the certificates held by our clients, has failed to observe and perform the covenants and agreements imposed on it by the governing agreements, and has failed to meet its duty to prudently service those mortgage loans, including, but certainly not limited to:

- Ally's admittedly flawed and "embarrassing"[6] mortgage loan servicing and foreclosure practices, including deficient document signing practices, leading to Ally's foreclosure suspension and review in Fall 2010;

- Ally's April 2011 consent order with the Board of Governors of the Federal Reserve System and the FDIC, which alleged that, in connection with certain

---

[2] MBIA has reported that 89% of adversely selected loans from 3 separate GMAC securitizations were not originated in material compliance with GMAC's underwriting guidelines or representations and warranties. *See* Complaint ¶ 6, *MBIA Ins. Co. v. GMAC Mortg., LLC*, No. 600837/2010 (N.Y. Sup. Ct.). MBIA has also reported that 93% of adversely selected loans from 5 separate RFC securitizations were not originated or acquired in material compliance with RFC's representations and warranties. *See* Complaint ¶ 46, *MBIA Ins. Co. v. Residential Funding Co., LLC*, No. 603552/2008 (N.Y. Sup. Ct.).

[3] *See, e.g.,* Complaint, *Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*, No. 3:11-cv-30035 (D. Mass.).

[4] *See* Ally Financial Inc.'s Second Quarter 2011 Form 10-Q at 83.

[5] *See id.* at 81 (emphasis added).

[6] *See* Dakin Campbell and Natalie Doss, *Ally Will Keep ResCap, 'Screwed Up' Using Robosigners*, BLOOMBERG NEWS, Nov. 3, 2010.

Gibbs & Bruns LLP · 1100 Louisiana · Suite 5300 · Houston, Texas 77002 · T 713.650.8805 · F 713.750.0903 · www.gibbsbruns.com

Confidential

ALLY_0212897

foreclosures of loans in Ally's servicing portfolio, Ally engaged in "unsafe or unsound banking practices" because, among other reasons, Ally filed or caused to be filed in courts inaccurate affidavits, filed or caused to be filed in courts or in land record offices improperly notarized mortgage-related documents, litigated or initiated foreclosure proceedings without ensuring proper assignment and possession of promissory notes or mortgage documents, failed to devote adequate resources to foreclosure processes, failed to ensure timely, effective, and efficient communication with borrowers with respect to loss mitigation and foreclosure activities, failed to subject its foreclosure processes to adequate oversight, internal controls, policies, and procedures, and failed to sufficiently oversee third parties handling foreclosure-related services;

- ongoing investigations by state attorneys general and other government agencies into Ally's mortgage loan servicing and foreclosure-related practices;

- evidence of wholly avoidable and unnecessary servicing fees to maintain mortgaged property, which have resulted from Ally's flawed mortgage loan servicing and foreclosure practices; and

- Ally's apparent failure to notify other parties to the governing agreements of mortgage loans in the pools that violated representations and warranties at the time they were sold into the pools, and its apparent failure to enforce the sellers' obligations to cure, substitute, or repurchase such loans, as Ally is required to do under the governing agreements.

Based on this and other evidence, our clients believe that large numbers of ineligible loans were sold or deposited into, and remain in, the RMBS pools securing the certificates. Under the governing agreements, Ally has substantial repurchase liability for such loans. Our clients further believe that Ally's failure to observe and perform the covenants and agreements imposed on it by the governing agreements, and to meet its duty to prudently service those mortgages, may constitute a servicer event of default under the governing agreements.

Our clients are not willing to suffer further losses resulting from ineligible loans in the pools and improper servicing of the loans in the pools, and they wish to seek a resolution of repurchase and servicing claims with Ally. As such, our clients hope and anticipate that Ally will begin a constructive dialogue with them regarding the concerns raised by this letter. If, however, Ally proves to be an obstacle to their efforts to mitigate such losses, our clients fully intend to exercise their rights under the governing agreements—including the issuance of binding instructions to Trustees—to pursue enforcement of repurchase and servicing claims against Ally.

Confidential                                                                                                    ALLY_0212898

4

Should Ally wish to begin a constructive dialogue regarding these issues, please make appropriately senior legal and business personnel available to meet with me and various of our clients on Thursday, October 27, 2011. To arrange the details of this meeting, please contact me as soon as possible.

Very truly yours,

Kathy Patrick

Gibbs & Bruns LLP · 1100 Louisiana · Suite 5300 · Houston, Texas 77002 · T 713.650.8805 · F 713.750.0903 · www.gibbsbruns.com

Confidential

ALLY_0212899