# EXHIBIT MM



26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

(The decision of the Court is referenced in a table in the New York Supplement.)

Supreme Court, New York County, New York.
**MBIA** INSURANCE COMPANY, Plaintiff,
v.
**RESIDENTIAL FUNDING** COMPANY, LLC, Defendant.

No. 603552/08.
Dec. 22, 2009.

Cadwalader, Wickersham & Taft LLP, (Gregory M. Petrick, Jonathan M. Hoff), New York, for plaintiff.

Otterbourg, Steindler, Houston & Rosen, P.C., (Richard G. Haddad, Daniel Wallen), New York, for defendant.

BERNARD J. FRIED, J.

*1 Defendant Residential Funding Company, LLC (RFC) moves, pursuant to CPLR 3211(a)(7), to dismiss Claims II through VI of the complaint, arguing, *inter alia,* that these claims for breach of the implied covenant of good faith and fair dealing, equitable or implied indemnification, unjust enrichment, negligent misrepresentation and fraud, are all duplicative of the breach of contract claim asserted in Claim I by plaintiff MBIA Insurance Company (MBIA). RFC also moves to strike MBIA's request for punitive and consequential damages as not recoverable in a mere breach of contract action.

Defendant RFC originates and sells residential mortgage loans through securitization transactions. In these transactions, RFC sells mortgage loans to trusts it creates, and the trusts, in turn, issue securities to investors. Investors receive distributions based primarily on the aggregate principal and interest cash flows from the mortgage loans included in the securitizations. Starting in June 2006, MBIA agreed to provide financial guaranty insurance policies (the Policies) for five RFC transactions, which contained, for the most part, second-lien, residential equity lines of credit. The five transactions involved some 60,000 mortgage loans, with an approximate initial principal loan balance of $2,973,733,419. *See* Complaint, ¶¶ 25–30. MBIA agreed to insure the investors in each transaction against shortfalls in the cash flows generated by the portfolio of mortgage loans that were included in the securitizations.

MBIA alleges that, in connection with each transaction, RFC made certain representations, warranties and disclosures to MBIA regarding the quality of the mortgages and RFC's underwriting practices, all of which MBIA relied on in deciding to issue the Policies. MBIA alleges that all financial guaranty insurers require these representations and warranties, because it was impractical and infeasible for MBIA or any insurer to review the almost 60,000 mortgage loans that were contributed to the RFC transactions. In addition to giving representations and warranties, RFC also provided information to MBIA with respect to the mortgage loans. This information included data tapes and schedules incorporated in offering materials provided to potential investors and filed with the SEC that contained statistics for the loans' combined loan-to-value ratios (CLTV), and the borrowers' debt-to-income ratios (DTI) and Fair, Isaac & Co. (FICO) credit scores. Additionally, MBIA was provided with shadow credit ratings for the securitization transactions, which were issued by rating agencies and which are allegedly based on the same representations, warranties and data provided to MBIA.

In connection with each RFC transaction, MBIA and RFC entered into Insurance Agreements. Each Insurance Agreement incorporated by reference, for the benefit of MBIA, the representations and warranties contained in the "Transaction Documents." For the most part, the Transaction Documents included the following: the purchase agreements that set forth the terms of the sale of the mortgage loans to the relevant trust (Purchase Agreements); a servicing agreement that set forth the terms for RFC's servicing of the mortgage loans (Servicing Agreements); and offering materials provided to potential investors and filed with the SEC (the Offering Documents). The documentation for the 2007–HSA2 transaction includes an assignment agreement and a pooling and servicing agreement.

*2 MBIA alleges that the RFC transactions have

26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

"performed poorly." Complaint, ¶ 42. Delinquencies and defaults on the underlying mortgages have been substantial, and MBIA alleges that, as of September 2008, it has paid approximately $264 million in claims in connection with the RFC transactions. As a result, MBIA requested access to all relevant documentation for all mortgage loans that were delinquent as of December 31, 2007. Although RFC allegedly thwarted MBIA's efforts to obtain this information, MBIA contends that its review of selected mortgage loans revealed startling and disturbing information. MBIA contends that 3% of the 60,000 loans were already in default, and that approximately 93% of the loans in default were not originated or acquired by RFC in material compliance with RFC's representations and warranties.

MBIA alleges that RFC breached the following representations and warranties: (a) that the mortgage loans were underwritten in compliance with RFC's Underwriting Guidelines; (b) that the mortgage loan files contained all necessary documents and complied with all applicable laws; and (c) that the RFC transactions would not contain high cost loans. RFC allegedly breached all of these representations and warranties, because a significant number of the mortgage loans have DTI or CLTV ratios far in excess of RFC's Underwriting Guidelines, were made on the basis of "stated income" [FN1] that was unreasonable, or were originated in violation of federal and state predatory lending laws.

> FN1. The complaint alleges that a "stated income" loan is based on the borrower's declaration of his or her income. Although RFC does not undertake to independently verify the borrower's income, it was required to determine that the stated income was reasonable for the borrower's type of employment, line of work and assets. Complaint, ¶¶ 37–38.

More specifically, MBIA alleges that RFC underwrote mortgage loans by intentionally and consistently engaging in three improper underwriting practices that it later claimed were "exceptions" to its Underwriting Guidelines. The first improper underwriting practice is called a "negotiated commitment," in which RFC prospectively entered into an agreement with a loan originator whereby RFC agreed that the loan originator could, in the future, originate non-compliant mortgage loans and that RFC would purchase these loans, notwithstanding the fact that RFC understood that these mortgage loans would not comply with RFC's Underwriting Guidelines. The second improper practice allegedly engaged in by RFC is called a "bulk purchase program." In such a program, RFC agreed to purchase a bulk amount of mortgage loans from a loan seller that had already been originated without undertaking to "re-underwrite" or confirm that the mortgage loans being acquired complied with RFC's Underwriting Guidelines. The third improper underwriting practice involved RFC's underwriting of, or purchase of, mortgage loans through a proprietary automated electronic loan underwriting program known as "Assetwise." Although Assetwise is a software program that allows a loan originator to determine whether a proposed mortgage loan meets pre-specified underwriting criteria that are set up in the program, MBIA alleges that Assetwise did not, in fact, analyze the proposed mortgage loans on the basis of RFC's Underwriting Guidelines.

*3 MBIA alleges that, pursuant to the parties' various written agreements, in the event that MBIA determined that RFC breached its representations and warranties such that the breach materially and adversely affected the interests of MBIA, the parties agreed to what is described as a "Loan Breach Remedy Procedure." Complaint, ¶ 70. This remedy could be invoked if MBIA determined that RFC had contributed mortgage loans to the mortgage loan pools that failed to comply with RFC's representations and warranties and its Underwriting Guidelines. MBIA contends that the parties established the Loan Breach Remedy Procedure, because they recognized that it was possible that "an isolated and limited number of mortgage loans," among the thousands of mortgage loans in the mortgage loan pools underlying the RFC transactions, may not comply with RFC's Underwriting Guidelines. *Id.,* ¶ 72. MBIA could give notice to RFC of the presence of a non-compliant mortgage loan, and RFC would have 90 days to cure the breach by either repurchasing the mortgage loan from the pool or substitute a performing, compliant mortgage loan. MBIA contends that, pursuant to Section 3.03 of the Insurance Agreements, RFC agreed to indemnify MBIA for damages as a result of RFC's failure to comply with the Transaction Documents, including RFC's failure to comply with the Loan Breach Remedy Procedure, with interest plus reasonable attorneys' fees and other expenses incurred to enforce its con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

tractual rights.

On May 22, 2008, MBIA sent notices to RFC identifying "numerous mortgage loans" that were in breach of one or more of RFC's representations and warranties. Complaint, ¶ 73. Subsequent notices were sent in September 2008 with respect to each of the five RFC transactions, but MBIA alleges that these notices did not identify all of the mortgage loans that were in breach of RFC's representations and warranties. Although the parties reached an agreement on approximately 20% of the mortgage loans identified in the May notice, RFC has allegedly failed to cure its breaches with respect to the remaining 80% of the mortgage loans and has failed or refused to repurchase or provide for a substitution of any of the mortgage loans identified in the September notices.

MBIA commenced this action on December 4, 2008. The complaint asserts six "Claims" for relief.[FN2] In Claim I, MBIA sues for breach of contract and seeks specific performance of the Loan Breach Remedy Procedure. MBIA also seeks indemnification from RFC for "any and all damages it has [sustained] as a result of RFC's breaches of its representations and warranties and RFC's failure to comply with the Loan Breach Remedy Procedure with respect to the mortgage loans identified in the Remedy Notices." Complaint, ¶ 82.

> FN2. The terminology of the CPLR and state court practice is "cause of action."

In Claim II, MBIA alleges that RFC breached the implied covenant of good faith and fair dealing, and, as such, "RFC is responsible for all losses incurred by MBIA whether or not such losses relate directly to non-compliant mortgage loans." Complaint, ¶ 89. Claim III is entitled "Equitable or Implied Indemnification," and seeks to hold RFC liable for all insurance claims against MBIA and other losses incurred by MBIA in connection with the RFC transactions. Claim IV seeks monetary damages on the theory of unjust enrichment. Claims V and VI are for negligent misrepresentation and fraudulent inducement.In addition to the other remedies alleged, the complaint seeks an award of punitive and consequential damages.

**\*4** In support of its motion for partial dismissal of the complaint, RFC contends that all of MBIA's claims, other than the first claim for breach of contract, should be dismissed as a matter of law for failure to state a cause of action. RFC maintains that MBIA's woes are the direct result of the economic downturn and recession the country began to experience in December 2007, and that rather than live up to insurance contracts that were made for the precise purpose of protecting against borrower defaults, MBIA is attempting to shift its losses to RFC based on a host of tort claims that are, in reality, merely a repackaging of its breach of contract claim.

Turning first to the most serious claim (Claim VI)—fraudulent inducement of the Insurance Agreements and Policies—the rule is that a fraud claim should be dismissed as redundant only when the fraud alleged is that the defendant was not sincere when it promised to perform under the contract. *Mañas v. VMS Assoc., LLC,* 53 AD3d 451, 453 (1st Dept 2008); 767 Third Ave. LLC v. Greble & Finger, LLP, 8 AD3d 75, 76 (1st Dept 2004); The Hawthorne Group, LLC v. RRE Ventures, 7 AD3d 320, 323–24 (1st Dept 2004). However,

> if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim ( RKB Enters. v. Ernst & Young, 182 A.D.2d 971, 972–973). Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty ( Deerfield Communications Corp. v. Chesebrough–Ponds, Inc., 68 N.Y.2d 954, 956).

First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 291–92 (1st Dept 1999); *see also* Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F3d 171, 184 (2d Cir2007).

MBIA argues that its fraud and breach of contract causes of action are entirely distinct. MBIA's fraudulent inducement cause of action is based on RFC's representations, warranties and disclosures with respect to the credit characteristics of the mortgage loan pools included in the data tapes, schedules and other statistical information that were provided to MBIA, as well as falsely-induced shadow credit ratings. The breach of contract cause of action is allegedly limited

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

to RFC's failure to comply with the Loan Breach Remedy Procedure with respect to specific, non-compliant loans identified in MBIA's May and September 2008 notice letters. MBIA further contends that the Loan Breach Remedy Procedure was never intended to address a scenario in which RFC's breaches of its representations and warranties were so massive and pervasive that RFC undermined the entire basis under which MBIA agreed to issue the Policies.

It is not necessary to reach the question of whether the Loan Breach Remedy Procedure was intended to be as limited a remedy as MBIA contends. However, the fraud cause of action survives here, because it is premised on allegations that RFC misrepresented various statistics and other existing facts about the underlying mortgage loans that RFC contributed to the mortgage loans pools. *See* Complaint, ¶¶ 49–50. This cannot be characterized merely as an insincere promise of future performance. The alleged fraud is that RFC intentionally misrepresented material existing facts about the credit risks of the underlying mortgage loans so that they would appear to satisfy RFC's contractual representations and warranties, inducing MBIA to issue the Policies. "[A] fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim." *First Bank of Americas v. Motor Car Funding, Inc.,* 257 A.D.2d at 292; *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F3d at 184; *In re CINAR Corp. Sec. Litigation,* 186 F Supp 2d 279, 303 (ED N.Y.2002) ("[i]t simply cannot be the case that any statement, no matter how false or fraudulent or pivotal, may be absolved of its tortious impact simply by incorporating it verbatim into the language of a contract"). Accordingly, the fraud cause of action is sustained, and RFC's request to strike MBIA's request for punitive and consequential damages is denied as premature.

**\*5** In order to state a claim for negligent misrepresentation, MBIA must plead facts showing a special relationship of trust and confidence between the parties, which created a duty on the part of RFC to impart correct information about the mortgage loans to MBIA, and that MBIA reasonably relied on incorrect information about the mortgage loans to its detriment. *J.A.O. Acquisition Corp. v. Stavitsky,* 8 NY3d 144, 148 (2007); *Hudson River Club v. Consolidated Edison Co. of New York,* 275 A.D.2d 218, 220 (1st Dept 2000).

Generally, the requisite "special relationship" does not exist between sophisticated commercial entities that enter into an agreement through an arm's-length business transaction. *Parisi v. Metroflag Polo, LLC,* 51 AD3d 424 (1st Dept 2008); *Atkins Nutritionals, Inc. v. Ernst & Young, LLP,* 301 A.D.2d 547, 548–49 (2d Dept 2003). However, in *Kimmell v. Schaefer* (89 N.Y.2d 257 [1996] ), the Court of Appeals recognized that a duty to speak with care may be imposed in a commercial transaction, but only "on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.* at 263.

MBIA argues that a special relationship could be found to exist here, because the complaint alleges that RFC was in a unique and superior position of knowledge with respect to the transactions. MBIA contends that RFC had superior knowledge of its own Underwriting Guidelines, the underwriting of the mortgage loans and the credit qualities of the mortgage loans, such as the DTI, CLTV and FICO scores. Because the credit shadow ratings were also based on RFC's disclosures, MBIA claims that it could not have determined from any other source that the mortgage loans failed to comply with RFC's representations and warranties. As for the requisite special relationship of trust and confidence, MBIA contends that it existed here because: (1) RFC sought MBIA's participation in the transactions; (2) RFC provided MBIA with credit ratings, data tapes and schedules regarding the mortgage loans, intending that MBIA would forbear from conducting additional due diligence; and (3) RFC induced MBIA to establish a continuous relationship as a financial guaranty insurer of RFC-sponsored securitization transactions.

While the question of whether a special relationship exists to support a negligent misrepresentation claim "generally raises an issue of fact" ( *Kimmell,* 89 N.Y.2d at 264), where the plaintiff's allegations, accepted as true and given all favorable inferences, simply do not support the finding of a special relationship, the claim is subject to pre-answer dismissal. *Saunders v. AOL Time Warner, Inc.,* 18 AD3d 216, 217 (1st Dept 2005); *Knight Securities, L.P. v. Fiduciary Trust Co.,* 5 AD3d 172, 174 (1st Dept 2004).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

MBIA argues that RFC was in a unique and superior position of knowledge with respect to the transactions. However, a company's knowledge of the particulars of its own business is not the type of unique or specialized knowledge that the Court of Appeals was talking about in Kimmel. *JP Morgan Chase Bank v. Winnick,* 350 F Supp 2d 393, 402 (SD N.Y.2004). Indeed, MBIA is a monoline insurer, experienced in writing financial guaranty insurance policies. In addition, despite counsel's claim of a "long-standing commercial relationship" between MBIA and RFC (Letter dated July 9, 2009 from Howard R. Hawkins), the only connection alleged between MBIA and RFC arose from MBIA's issuance of five insurance policies within a one-year period between June 2006 and May 2007. The relationship of trust and confidence must have existed prior to the very contractual relationship giving rise to the alleged wrong, and not as a result of it. *Emmigrant Bank v. UBS Real Estate Securities, Inc.,* 49 AD3d 382, 385 (1st Dept 2008); *Elghanian v. Harvey,* 249 A.D.2d 206 (1st Dept 1998). For these reasons, MBIA has failed to state a claim for negligent misrepresentation, and Claim V is dismissed.

**\*6** RFC argues that MBIA's good faith and fair dealing claim should be dismissed, because it is wholly duplicative of MBIA's claim for breach of contract, and because MBIA is attempting to create a new contractual obligation by seeking a remedy beyond those provided in the Insurance Agreements and other contract documents.

All contracts in New York imply a covenant of good faith and fair dealing in the course of performance. *511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153 (2002); *Security Pacific Natl. Bank v. Evans,* 62 AD3d 512, 514 (1st Dept 2009). "This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Dalton v. Educational Testing Serv.,* 87 N.Y.2d 384, 389 (1995), quoting *Kirke La Shelle Co. v. Armstrong Co.,* 263 N.Y. 79, 87 (1933). However, this duty will not serve to imply obligations "inconsistent with other terms of the contractual relationship" ( *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 304 [1983] ), will be dismissed as redundant if it merely pleads that the defendant did not act in good faith in performing its contractual obligations ( *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 319–20 (1995); *Rather v. CBS Corp.,* 68 AD3d 49, 886 N.Y.S.2d 121, 128 [1st Dept 2009] ), and cannot be used to seek damages or remedies not recoverable under the parties' written agreement ( *Levi v. Utica First Ins. Co.,* 12 AD3d 256, 257–58 [1st Dept 2004]; *Canstar v. J.A. Jones Const. Co.,* 212 A.D.2d 452, 453 [1st Dept 1995] ).

Claim II of the complaint alleges that RFC breached its implied duty of good faith and fair dealing in three ways. First, MBIA alleges that RFC had an implied good faith duty to ensure that the mortgage loan pools complied with RFC's representations and warranties, and that RFC, in bad faith, knowingly and systematically contributed mortgage loans to the mortgage loan pools that RFC knew breached one or more of RFC's representations and warranties. *See* Complaint, ¶¶ 85–86. Second, RFC failed to employ mortgage servicing procedures consistent with its obligations pursuant to the Transaction Documents, to service, in good faith, the mortgage loans for the RFC transactions. *Id.,* ¶ 86. Third, RFC has allegedly, in bad faith, denied MBIA reasonable access to information necessary to evaluate RFC's actions as servicer of the mortgage loans or to enforce MBIA's contractual rights in connection with the RFC Transactions. *Id.,* ¶ 87.

It appears that all MBIA has done is pick out clauses of the parties' written agreements that it feels RFC did not comply with and adding that RFC's non-performance was in "bad faith." MBIA has separately alleged specific breaches of the written agreements between itself and RFC that encompass each of these three alleged duties. *See* Complaint, ¶¶ 32–35, 41, 45. For example, the complaint alleges that RFC "covenanted, represented and warranted that it would service the mortgage loans in each of the RFC Transactions in a manner consistent with its servicing guidelines and the Servicing Agreements and would employ, in its good faith business judgment, all of its normal and usual' procedures in servicing the mortgage loans." Complaint, ¶ 41; *see also* Insurance Agreements, § 2.05[j] ["All Home Equity Line Loans will be serviced in all material respects in compliance with the Servicing Agreement and the Indenture ..."] ).

**\*7** Like the fraud cause of action, MBIA argues that its good faith claim is not duplicative of its contract cause of action, because Claim I is limited to enforcement of the Loan Breach Remedy Procedure

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)
**(Table, Text in WESTLAW), Unreported Disposition**
**(Cite as: 26 Misc.3d 1204(A), 2009 WL 5178337 (N.Y.Sup.))**

with regard to specific non-compliant loans identified in the May and September 2008 notices, and in Claim II, MBIA argues that RFC's actions have destroyed the fruits of the Insurance Agreements. In response, RFC contends that Sections 2.01, 3.03 and 3.04(a) of the Insurance Agreements specifically address the extent to which the parties agreed that MBIA would be reimbursed or indemnified for breaches by RFC of its contractual representations and warranties, and that MBIA has elected not to assert claims available under the Insurance Agreements for strategic reasons, or is seeking to improperly split a cause of action in an attempt to pursue remedies beyond those expressly agreed to by the parties.

I agree with MBIA that Claim II is not duplicative of the breach of contract cause of action asserted in Claim I. However, Claim II is, in essence, a contract-based cause of action, and thus, any damages or remedies recoverable for RFC's alleged breaches will be governed by the parties' written agreements. This Claim is, therefore dismissed.

Under New York law, "the existence of a valid and enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." American Tel. & Util. Consultants, Inc. v. Beth Israel Med. Ctr., 307 A.D.2d 834, 835 (1st Dept 2003), citing Clark–Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987); see also Goldman v. Metropolitan Life Ins. Co., 5 NY3d 561, 572 (2005) (unjust enrichment "is an obligation the law creates in the absence of any agreement"). "It is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Clark–Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d at 389.

In addition to the failure to plead facts demonstrating that there is something "special" about the relationship between MBIA and RFC that would warrant implying indemnification remedies not agreed to by sophisticated parties to such a complicated business transaction as these mortgage-backed securitizations (see LaSalle Bank Natl. Assoc. v. Citicorp Real Estate, Inc., 2003 WL 21671812 at *4 [SD N.Y.2003]; City of New York v. Black & Veatch, 1997 WL 624985, at *11 [SD NY1997] ), MBIA cannot be permitted to circumvent the express provisions of the Insurance Agreements through the assertion of quasi-contractual and equitable remedies that go beyond the negotiated terms of those agreements. Accordingly, Claims III and IV are dismissed.

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss Claims II through VI of the complaint, and to strike the requests for punitive and consequential damages, is granted only to the extent of dismissing Claims III, IV and V, and the motion is denied in all other respects; and it is further

**\*8 ORDERED** that defendant shall serve and file an answer to the remaining claims within twenty (20) days of service of a copy of this order with notice of entry.

N.Y.Sup.,2009.
MBIA Ins. Co. v. Residential Funding Co., LLC
26 Misc.3d 1204(A), 906 N.Y.S.2d 781, 2009 WL 5178337 (N.Y.Sup.), 2009 N.Y. Slip Op. 52662(U)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.