# EXHIBIT TT.1

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In Re:                                        Case No.

RESIDENTIAL CAPITAL, LLC, et. al,      12-12020(MG)

        Debtors.

------------------------------------x

DEPOSITION OF JEFFREY A. LIPPS

New York, New York

November 19, 2012

10:13 a.m.

Reported by:
JENNIFER OCAMPO-GUZMAN, CRR, CLR
JOB NO: 27971

| | 158 | | 160 |
|---|---|---|---|
| | Lipps | | Lipps |
| 1 | | 1 | |
| 2 | three times. I've read the opinion. | 2 | then applied the analysis that I've |
| 3 | MR. BENTLEY: Thank you, Mr. Lipps. | 3 | discussed. |
| 4 | Why don't we take a short break. I may | 4 | Q. So other than your own review of |
| 5 | be done, and then I know that others may | 5 | the settlement agreement, the scope of claims |
| 6 | have questions as well. | 6 | that were to be either included in the |
| 7 | THE WITNESS: All right. | 7 | settlement or released was based on your own |
| 8 | (A brief recess was taken.) | 8 | analysis? |
| 9 | MR. RAINS: Thank you. | 9 | A. For purposes of my opinion, yes. |
| 10 | MR. BENTLEY: Thank you, Mr. Lipps, | 10 | Q. Now, for purposes of your opinion, |
| 11 | I have nothing further. But I believe | 11 | did you assume that the release would not |
| 12 | one or two of my colleagues may have | 12 | include the monoline's fraudulent inducement |
| 13 | some questions. One or two friends in | 13 | claims arising from insurance agreements? |
| 14 | the room. | 14 | A. As you know from our time in court |
| 15 | EXAMINATION BY | 15 | together, some of the fraud claims can fairly |
| 16 | MR. NATBONY: | 16 | be described as, at least in my judgment as a |
| 17 | Q. Good afternoon, Mr. Lipps. | 17 | defense lawyer, as claims that are basically |
| 18 | A. Good afternoon, Mr. Natbony. | 18 | a breach of contract that's being dressed up |
| 19 | Q. I'm here today representing MBIA a | 19 | in fraud clothes. Having said that, I do |
| 20 | potential objector to the settlement, and I | 20 | believe that an independent fraudulent |
| 21 | just have a few questions for you today, if | 21 | inducement claim that would survive an |
| 22 | you don't mind. | 22 | argument that it is nothing more than just a |
| 23 | A. Certainly. | 23 | breach of contract dressed in fraud claims or |
| 24 | Q. Now, in connection with reaching | 24 | fraud clothes would be outside of the |
| 25 | your opinion concerning the reasonableness of | 25 | settlement. |
| | 159 | | 161 |
| | Lipps | | Lipps |
| 1 | | 1 | |
| 2 | the settlement, did you have an understanding | 2 | Q. Now, in conducting your analysis, |
| 3 | of what claims would be released against the | 3 | did you assume that the release would not |
| 4 | debtors? | 4 | include monoline's material breach of |
| 5 | A. I believe I testified earlier that | 5 | contract claims arising under the insurance |
| 6 | I saw the settlement agreement itself, the | 6 | agreement? |
| 7 | release language which discussed claims that | 7 | THE WITNESS: Can I have that read |
| 8 | were subject to the release as a result of | 8 | back? |
| 9 | the settlement, and I believe there was a | 9 | (A portion of the record was read.) |
| 10 | provision or two that made it clear certain | 10 | MS. PATRICK: Objection, form. |
| 11 | claims were not being settled. | 11 | A. The -- I know the insurance |
| 12 | Q. And in addition to your review of | 12 | agreements or at least some that I've looked |
| 13 | the settlement agreement, did any | 13 | at do have language which tracks what is in |
| 14 | representative of the debtors tell you to | 14 | the purchase agreements with respect to |
| 15 | assume that certain claims would be released? | 15 | repurchase demand and the repurchase process |
| 16 | A. In connection with this assignment? | 16 | being the sole remedy, so to the extent that |
| 17 | Q. Yes. | 17 | provision would in fact be preclusive of any |
| 18 | A. I looked at the executed and | 18 | independent claim other than a rep and |
| 19 | submitted settlement agreement. | 19 | warranty claim that a monoline would have |
| 20 | Q. And did you seek any advice from | 20 | through the repurchase process, then I think |
| 21 | anyone representing the debtors or anyone | 21 | those claims would be within the settlement. |
| 22 | else as to what would be included in the | 22 | The one uncertainty I have, as we |
| 23 | claims that were being released under the | 23 | sit here and have this conversation, is I |
| 24 | settlement agreement? | 24 | know that at least in the MBIA instance the |
| 25 | A. I read the settlement agreement and | 25 | insurance agreement did provide for certain |

162

Lipps

1  
2  direct claims that the insurer, specifically
3  MBIA would have and I just haven't sat and
4  thought about whether there is a path that
5  would allow the monoline to have something
6  that could sound or be based on allegations
7  or theories other than pure rep and warranty,
8  or something that's forced into the
9  repurchase price.
10     Q. I guess my question though still
11  remains is: When you do your analysis of
12  what claims were being released, did you
13  include in your analysis any monoline claims
14  in the scope of claims that were being
15  released?
16     MR. RAINS: Objection, asked and
17     answered.
18     A. I don't know that I could answer it
19  any differently than what I did. I believe
20  that certain of the monoline claims, by
21  virtue of the insurance agreement, are
22  confined to the repurchase process,
23  specifically you make a demand and then
24  there's a determination as to whether or not
25  that loan breaches the warranties and reps

163

Lipps

1  
2  such that repurchase would be required. To
3  the extent that is the monoline's claim, then
4  absolutely I took it into account.
5     Q. And other than that, is there any
6  other claim that you took into account that
7  would be released?
8     A. Released by, by whom?
9     Q. Released as part of the settlement
10  agreement.
11     A. Any other monoline claim?
12     Q. Yes.
13     MR. RAINS: Objection, asked and
14     answered.
15     A. I think I described the fact that
16  there may be, that there is carve-outs there,
17  in shorthand, that I would describe and I
18  don't think the carve-out -- I think the
19  carve-out would apply to a fraud claim if it
20  was not subject to being characterized as a
21  contract claim dressed in fraud clothes. And
22  I also think there is a path that I haven't
23  really looked at and thought about where
24  maybe a monoline could make a direct claim
25  and argue that's not embedded as a rep and

164

Lipps

1  
2  warranty claim, so to speak. Because if it
3  could be embedded as a warranty and rep claim
4  then, yes, I did take it into account and
5  considered it as part of the liability that I
6  was assessing.
7     Q. I'm just trying to understand the
8  scope of what you were determining was
9  released as part of the settlement, and I
10  understand you've said that there may be
11  paths for it, for certain liability. But I
12  want to know specifically, with respect to
13  your analysis of this settlement, what, if
14  any, claims did you actually consider in your
15  analysis as being released?
16     MR. RAINS: It's been asked and
17     answered.
18     MR. NATBONY: No, it hasn't.
19     MR. RAINS: It's been asked and
20     answered.
21     MR. NATBONY: You can make your
22     objection. I apologize.
23     MR. RAINS: Thank you. Asked and
24     answered about five times and you
25     misstated his prior testimony.

165

Lipps

1  
2     A. I don't think I could change what
3  I've said before, at least I don't intend to,
4  if somehow you can parse through the words.
5  To the extent the trusts or trust where there
6  was Financial Guaranty Insurance that was
7  issued, I evaluated the rep and warranty
8  claims in those trusts as being released in
9  the settlement. I recognize in this report
10  that there may be independent tort claims or
11  some independent claim, independent of rep
12  and warranty that would arguably not be
13  released, and I didn't evaluate those, and we
14  had a discussion about the insurance
15  agreement, as you raised, where I seem to
16  recall there may be a path. But I haven't
17  looked at that in a while and I haven't
18  reached a conclusion, as I sit here today,
19  whether that path would in fact be released
20  because it's dependent on rep and warranty or
21  individual loan reps being breached.
22     Q. Do you recall having any discussion
23  at the time the settlement was being
24  considered as to whether the allocation
25  methodology was reasonable with respect to

42 (Pages 162 to 165)

174

1  Lipps
2  defending and the nature of those claims, and
3  to the extent it's rep and warranty based, it
4  was part of what I was evaluating in terms of
5  whether the settlement was reasonable and
6  fair.
7      Q.  And when you say rep and warranty
8  based, do you mean rep and warranty based
9  irrespective of whether it's a rep and
10  warranty contained in the purchase and sale
11  agreement or the insurance agreement?
12      A.  It would be any loan level rep in
13  these securitization documents to the 392
14  trusts.  Typically they are in the sale
15  agreement.  I can't remember, as I sit here,
16  whether the insurance agreement replicated
17  it, in terms of listing them or simply
18  incorporated in the monoline instance, but
19  it's basically the rep and warranties that
20  are given in connection with the sale and
21  deposit of the loan, individual loans into
22  the trust.
23      Q.  What was your understanding when
24  you did your analysis as to what monoline
25  claims were being carved out of the

175

1      Lipps
2  settlement?
3      A.  The best example I can give you is
4  arguably the fraudulent inducement claim, to
5  the extent it's not found to be essentially a
6  breach of contract claim dressed up in fraud
7  clothes.
8      Q.  And other than that, is there any
9  other claim that you considered in your
10  analysis for monolines that was in the
11  released?
12      A.  I didn't really do that in my
13  analysis, as you know.  I started my analysis
14  based on the aspect of the release that
15  related to rep and warranty claims, and based
16  on my analysis, I concluded that that in and
17  of itself is a basis for the release was fair
18  and adequate and within an appropriate range.
19      Q.  So is it fair to say that in doing
20  your analysis of what was reasonable, you did
21  not consider what was or was not released
22  with respect to monolines?
23          MR. RAINS:  Objection, misstates
24      his testimony.
25      A.  No, I don't think that's fair at

176

1  Lipps
2  all.  I observed when I read the settlement
3  that there were claims that were not included
4  within the release for monolines.  I had
5  specific familiarity with, in at least the
6  case you and I have been litigating, fraud
7  claims.  I'm sure if I looked at -- well, I'm
8  not sure.  If I looked at the amended
9  complaint, there may be other claims out
10  there, but the core of what was being alleged
11  in the MBIA case was rep and warranty based.
12      Q.  Now, Mr. Lipps, I think you talked
13  earlier about common pathways to the rep and
14  warranty liability; do you remember using
15  that term?
16          MR. RAINS:  Objection, vague and
17      ambiguous.
18      A.  I don't know whether I actually
19  used "pathways."  I've used pathways before,
20  but I think I identified in paragraph 16, at
21  least that was one spot where there are --
22  there are certain concepts that I've observed
23  in the defense of these cases that plaintiffs
24  are asserting in terms of breaches of
25  warranties and reps at a one level.

177

1      Lipps
2      Q.  You would agree though that each
3  securitization involves a unique set of
4  mortgage loans, correct?
5      A.  I would agree if the securitization
6  process is done properly there are different
7  loans in each securitization pool.
8      Q.  And each securitization has a set
9  of transaction documents that are separately
10  negotiated and structured, correct?
11      A.  There will be separate documents
12  associated with each securitization, yes.
13      Q.  And each trust that has
14  securitization will have a securitization in
15  a particular shelf, correct?
16      A.  Ask me that again.
17      Q.  You are familiar with that the
18  ResCap had different shelves of products,
19  correct?
20      A.  I am aware that they had shelves.
21      Q.  And each securitization, that would
22  be part of a trust would involve a set of
23  loans that is in a particular shelf, correct?
24      A.  RFC made an effort to brand its
25  products by shelf that, for example, the

45 (Pages 174 to 177)