# Exhibit 31

Outlook E-mail

**From:** Levitt, Jamie A.
**Sent:** 5/12/2012 11:30:12 PM
**To:** Newton, James A.; Princi, Anthony; Clark, Daniel E.; 'Ornstein, Noah'
**Cc:** Lee, Gary S.
**Subject:** RE: RMBS Trust Settlement - Rule 408 Communication

---

Settlement Agreement is easy. They took our changes except for the following.

2.03 -- we need to ask them to add "sole and exclusive" before "purposes of enforcing" (this is new)

3.02 - they inserted their new "purchasers and assigns" language -- this is on hold while we raise the covenant idea.

4.02 -- they took back out "successors, assigns, pledges etc" in the no inconsistent diretions provision -- this however goes hand in hand with teh purchasers and assigns compromise -- so I think it's correct. ??

6.02(a) -- Tony/Noah -- do we need to ask them to add that attorneys fees are paid pursuant to the terms of the Plan?? (this is new)

7.01 - they took out again the general release -- and instead tied it to any claims "under the Governing Agreements" I think we want a broader release.

8.01 -- need to ask them to change "arising" to "that first arise" (this is new)

---

**From:** Lee, Gary S.
**Sent:** Saturday, May 12, 2012 10:55 PM
**To:** Levitt, Jamie A.; Princi, Anthony
**Cc:** Newton, James A.
**Subject:** Fw: RMBS Trust Settlement - Rule 408 Communication

Can you take a look.


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Scott A. Humphries <SHumphries@gibbsbruns.com>
**To:** rcieri@kirkland.com <rcieri@kirkland.com>; Devine, Timothy <Timothy.Devine@ally.com>; Lee, Gary S.
**Cc:** Ross.Martin@ropesgray.com <Ross.Martin@ropesgray.com>; Kathy D. Patrick <kpatrick@gibbsbruns.com>; Scott A. Humphries <SHumphries@gibbsbruns.com>
**Sent:** Sat May 12 22:52:54 2012
**Subject:** RE: RMBS Trust Settlement - Rule 408 Communication

Gentlemen,

Attached are the revisions Kathy mentioned. These also include the other, minor comments that were discussed among Ropes and Mofo today.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                       RC-9019_00050583

Thanks, Scott

---

**From:** Kathy D. Patrick
**Sent:** Saturday, May 12, 2012 7:50 PM
**To:** rcieri@kirkland.com; Devine, Timothy; Gary S. Lee (GLee@mofo.com)
**Cc:** Kathy D. Patrick; Scott A. Humphries; Martin, D. Ross [Ross.Martin@ropesgray.com]
**Subject:** RMBS Trust Settlement - Rule 408 Communication

Rick, Gary and Tim:

We spent a long time on the phone with our clients this afternoon and evening. Scott will shortly send you revisions that reflect where our clients landed. There were many issues of great sensitivity to them, but I believe we have arrived at a resolution that is consistent with what I discussed this afternoon with Rick and Tim. Specifically:

1. <u>Plan Support</u>

Our clients are prepared to sign a plan support agreement that includes the contemplated release of individual investors' securities or fraud claims against Ally, *provided that*: a) all parties acknowledge the right of individual investment advisers' clients to intervene to contest any such release, and b) all parties acknowledge that the investment advisors do not own those claims and thus are neither compromising nor releasing them in any of the agreements they sign. This will permit all of our clients and the investment advisers to:

    a. Ensure they do not release or purport to release what they do not own;
    b. Express their support for a settlement that they believe is in the best interests of all Certificateholders; and,
    c. Ensure that any release granted to Ally affects all investors equally and, if granted, will be implemented only upon Ally's performance of its commitments under the Plan.

This is the most we can do given the limitations on our clients' authority, but it was sufficient in Bank of America. We believe it should be sufficient here.
We also understand, and Thrivent will require, that its separate resolution with you will be accomplished *before* the Plan Support Agreement is signed. Please confirm this will happen.

2. <u>Maintenance of Holdings</u>

Your lockup proposal is a <u>deal breaking issue</u> for our clients. Our clients have thousands of individual clients; others have portfolios that must be managed to meet stated investment objectives. A prospective lockup of bonds simply will not (and can never) work for them. Though there are many reasons why a sale might be necessary, our clients do <u>not</u> intend to pursue sales for the purpose of defeating or undermining their obligations under these agreements. History has also demonstrated that our clients have been entirely faithful to the obligations they assumed under the Bank of America settlement agreement. They have advocated zealously for the approval of that settlement for over a year. This has been true even of those investors who are advisers for others and who stand to gain nothing for themselves from the exercise. With the exception of the Maiden Lane Portfolios, whose liquidation was contemplated by the Bank of America settlement, we confirmed this afternoon that our clients have not engaged in large scale selling of

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                    RC-9019_00050584

their portfolios even though their Countrywide securities have gone up in price.

Our clients can and will agree to do what they did in Bank of America: they will maintain holdings in at least one trust so as to ensure they retain standing. Though it should not be necessary, they also can and will agree that they will not sell for the purpose of undermining their obligations under the Plan Support Agreement. Our clients can and will agree to advocate publicly and openly for this settlement in court. Our clients cannot, and will not, do more than that.

3. Fortress Sale

The Fortress Sale is a condition to the Ally Settlement. The Ally Settlement is--in turn--a condition to the Plan our clients are agreeing to support. So long as the termination of the Ally Settlement or the Fortress Settlement are events of termination for our clients, and are made express (not inherent) termination events, that should largely suffice to address our earlier concerns. We therefore propose that we: a) make those conditions express, such that their failure permits our clients or the Trustees to terminate; and, b) that we agree on a simple, mechanical process in which we send you our clients' signatures in trust, pending the execution of the Fortress and Ally Agreements. Once the Fortress Agreement is signed, we will authorize you to affix our clients' signatures to it and we can all proceed.

4. Rule 2019 Confidentiality

The disclosure of our clients' holdings is a matter of confidential and proprietary information. We had earlier requested that the Debtors undertake to seek an order providing that those holdings would be confidential for all creditors; though this request was refused at the time, we trust this will not be an ongoing problem given the matters discussed above. It would be most unfortunate if obduracy on this essential requirement were to become an impediment to what otherwise appears capable of being accomplished.

Please advise us promptly whether these changes will work. I have one final call with my clients tomorrow at 1:30 Central and we *must* have final terms before that time. If you need to reach me this evening, please send me an email and I will call you back.

Thanks,

Kathy

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                                              RC-9019_00050585