# Exhibit 32

Outlook E-mail

| | |
|---|---|
| **From:** | Ornstein, Noah |
| **Sent:** | 5/10/2012 11:32:02 PM |
| **To:** | Lee, Gary S.; Clark, Daniel E.; Levitt, Jamie A.; Newton, James A. |
| **Subject:** | RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential |

---

Any claim that can come back to Ally/ResCap needs to be released. Re Ally, while we are looking for third-party releases in the plan, rather not rely on the plan but cut it off in the settlement.

Noah J. Ornstein
Kirkland & Ellis LLP
300 North LaSalle | Chicago, IL 60654
p. (312) 862-2122 | f. (312) 862-2200

---

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Thursday, May 10, 2012 10:15 PM
**To:** Clark, Daniel E.; Levitt, Jamie A.; Newton, James A.; Ornstein, Noah
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

for now keep in the securities in 5.01 as part of the class and clarify in 5.02 that securities claims are included (ie released). the 2 paras conflict on that point.

Also, if you look at talcotts agreement it seems to me that there are a host of claims they want to bring against third parties that may have indemnity rights against rescap or ally. those claims have to be released here too Jamie (add whatever talcott refuses to release). Noah, how do you think we should be addressing these indemnity claims which are going to come up.


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Clark, Daniel E.
**Sent:** Thursday, May 10, 2012 11:09 PM
**To:** Levitt, Jamie A.; Lee, Gary S.; Newton, James A.
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

I think that this may avoid some of the math, and get us to the same place:


      **Section 5.01    The Allowed Claim.** ResCap hereby makes an irrevocable offer to settle, expiring at 5:00 p.m. prevailing New York time on the date that is forty five (45) days after the Petition Date, with each of the Trusts that agrees to the terms of this Settlement Agreement. In consideration for such agreement, ResCap will provide a general unsecured claim of not more than $8,700,000,000 (the "**Maximum Allowed Claim**") which shall cover (i) any Trusts accepting the offer to settle contained in this Section 5.01, subject to the provisions of this Settlement Agreement and (ii) any Credit Enhancer asserting claims against ResCap or Ally arising out of the Governing Agreements [, and (iii) any claims of the Trusts or their respective Investors against ResCap or Ally for violations of the securities or anti-fraud laws of the United States or of any state] (collectively, the "**Total Claimant Pool**"). The portion of the Maximum Allowed Claim which ResCap will allow shall be limited by the percentage of claims available to the Total Claim Pool that are made in the Bankruptcy Court. Such percentage multiplied by the Maximum Allowed Claim shall be the "**Allowed Claim.**" Accordingly, each claim, including those of any settling Trust, shall be valued *pro rata* based on its relative share of total outstanding value, and

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00050246

each claim shall be *pari passu* with the claims of all other general unsecured creditors of ResCap or the relevant ResCap subsidiary.

   **Section 5.02**   Each accepting Trust's share of the Allowed Claim shall be in full and complete satisfaction of any and all claims the trustee may have under the Governing Agreements against ResCap, including but not limited to demands for ResCap to (A) repurchase or substitute for allegedly defective Mortgage Loans, (B) make any payment as compensation or restitution for allegedly defective Mortgage Loans, (C) make any payment or compensation for allegedly defective documentation with respect to any Mortgage Loan, (D) make any payment as compensation or restitution for any defective servicing practices, and (E) take any other action regarding or otherwise be responsible for the allegedly defective Mortgage Loans; *provided, however*, that the offer to settle set forth herein shall not and does not include any settlement, release, waiver, or discharge of any claims of the Trusts or their respective Investors against ResCap for violations of the securities or anti-fraud laws of the United States or of any state.  The Allowed Claim shall not be subject to offset, counterclaim, subordination and the order approving this settlement shall constitute full allowance in each of the relevant ResCap entity's respective estates.

---

**From:** Levitt, Jamie A.
**Sent:** Thursday, May 10, 2012 10:44 PM
**To:** 'David A. Beck'; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com; Lee, Gary S.
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

Thanks Dave.  Here's the landscape:

Total OPB:  $226B
KP Group:  $171B

Total Estimated Loss:  $44B
KP Group Estimated Loss:  $33B

Total Allowed Claim:  $8.7B
KP Group:  $6.6B

The Allowed Claim covers all R/W -- monoline and trustee.  So my understanding is that outside of KP's $6.6B (based on her group's OPB and Loss) is both monoline claims and trustee claims, for trusts she doesn't control or bring in.

Gary, please weigh in if I have this wrong.  The drafting of your ratchet idea is proving to be a difficult task.

---

**From:** David A. Beck [mailto:beck@CarpenterLipps.com]
**Sent:** May 10, 2012 10:35 PM
**To:** Levitt, Jamie A.; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

As I understood from Noah and Dan, we're trying to make two adjustments:

1.   Take off the $8.7 billion a number based on where the monolines reject the deal.  This is A and looks just at the monoline wrapped world.

2.   You then have to adjust the resulting number based on the percentage of the total universe which rejects the deal based on Kathy's schedule.  If we don't adjust this amount based on how the $8.7 is racheted down, you end up taking too much off.

It may make sense to talk this through on the phone so we're all on the same page.

-David

---

**From:** Levitt, Jamie A. [JLevitt@mofo.com]

**Sent:** Thursday, May 10, 2012 10:19 PM
**To:** David A. Beck; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

I don't understand why we are tying this to wrapped deals only?

---

**From:** David A. Beck [mailto:beck@CarpenterLipps.com]
**Sent:** May 10, 2012 10:17 PM
**To:** Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Levitt, Jamie A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

In following up on the conversation I just had with Dan Clark and Noah Ornstein on the phone, and with no pride of authorship, I think Section 5.02 should be revised to read as listed below. I've got brackets here for two spots were we need to plug in actual numbers. I also think we should walk through the formula with some hypothetical numbers and see if this is working in the way you want the ratchet to work. Please feel free to call me if you want to discuss at (614) 668-1064. Attorney fee adjuster will follow in a separate email.

Section 5.02    Reductions to Allowed Claim. The amount of the Allowed Claim shall be reduced by (A) an amount equal to the product of [total $ of outstanding debt wrapped by the monolines] times the percentage of the total debt outstanding for the trusts wrapped by the monolines which reject the deal times [Percentage Allowed Claim is of total debt currently outstanding] plus (B) an amount equal to (i) the sum of the Allocated Allowed Claims attributable to each Trust identified on Exhibit C that fail to accept the offer to settle described in Section 5.01 within the applicable time period times times (ii) 1 minus the percentage of total debt outstanding for trusts wrapped by monolines which reject the deal.

This is assuming that Kathy's exhibit gives an actual allocation and not just refers to having some valuation mechanism.

*************************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************