# Exhibit 47

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------

In re:

RESIDENTIAL CAPITAL, LLC, et al.,

Debtors

-----------------------------------------------

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

-----------------------------------------------

DEPOSITION OF CHRISTOPHER JOHN BROWN

DATE: December 18, 2012

HUDSON REPORTING & VIDEO, INC.

124 West 30th Street, 2nd Fl.

New York, New York 10001

Tel: 212-273-9911  Fax: 212-273-9915

TRANSCRIPT of the deposition, said
deposition being conducted pursuant to Rules
Governing Civil Practice in the Superior Court
of New Jersey, by and before MARK IUZZOLINO,
Certified Shorthand Reporter, License No.
X101103, at the offices of Morrison Foerster,
LLP, 1290 6th Avenue, New York, NY, on December
18, 2012, commencing at 9:34 a.m.

1    losses."

2         Are you familiar with that term?

3    A.    Yes.

4    Q.    What do you understand it to mean?

5    A.    I assume the word "aggregate losses"

6    refers to both losses incurred to date and

7    projected future losses for the trusts.  And by

8    "losses," that would be collateral losses.

9    Q.    Right.  And you recall that his range

10   of losses, depending on which of his two

11   reports you looked at, ranges from about

12   43 billion up to $48 billion?  Sound about

13   right?

14   A.    That sounds about right.

15   Q.    Do you have any opinion to offer us

16   as to whether that calculation of aggregate

17   losses is correct?

18        MR. JURGENS:  Objection to form.

19   A.    No.

20   Q.    I note that you applied discounts,

21   for example, for statute of limitations, but

22   you applied it to those numbers that he

23   calculated.  Right?

24   A.    Correct.

25   Q.    So you used his aggregate loss number

1    in performing your work.  Right?

2        A.    Correct.  As a critique of his

3    analysis, I assumed some things about his

4    analysis that may be correct.

5        Q.    In any event, you didn't embark as

6    part of your work on reevaluating or

7    criticizing his aggregate loss calculation?

8        A.    That's correct.

9        Q.    What you did is applied discounts to

10    it based on assumptions you were given by

11    counsel?

12        A.    Correct.

13        Q.    Could I ask you to turn to paragraph

14    6 of Exhibit 1?  This is where you introduce

15    your work.  And the last sentence says,

16    "Mr. Sillman used several incorrect inputs in a

17    formula he used in his analysis."

18            If I read your report correctly,

19    you've identified two incorrect inputs.

20    Correct?

21        A.    Correct.

22        Q.    I mean, you say several, but in

23    paragraph 7 you talk about the agree rate.   In

24    paragraph 8 you talk about statute of

25    limitations.