# Exhibit 57

EXECUTION COPY

# PLAN SUPPORT AGREEMENT

**THIS PLAN SUPPORT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF VOTES WITH RESPECT TO A CHAPTER 11 PLAN OF REORGANIZATION.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  ACCEPTANCES OR REJECTIONS WITH RESPECT TO A CHAPTER 11 PLAN OF REORGANIZATION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

This PLAN SUPPORT AGREEMENT (together with all exhibits attached hereto, the "<u>Agreement</u>") is made and entered into as of May 13, 2012, by and among:

(a)     Residential Capital, LLC ("<u>ResCap</u>") and certain of its direct and indirect subsidiaries (collectively, the "<u>Debtors</u>");[1]

(b)     Ally Financial Inc., on behalf of its direct and indirect subsidiaries other than the Debtors, (collectively, "<u>Ally</u>"); and

(c)     the undersigned holders, and authorized investment managers for holders, of Securities (as defined below) backed by mortgage loans held by the Covered Trusts (as defined below) (each, a "<u>Consenting Claimant</u>" and collectively, the "<u>Consenting Claimants</u>").

The Consenting Claimants, together with the Debtors and Ally, are defined collectively as the "<u>Parties</u>."

---

[1]     The Debtors are:  Ditech, LLC; DOA Holding Properties, LLC; DOA Holdings NoteCo, LLC; DOA Properties IX (Lots-Other), LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMAC Mortgage, LLC; GMAC Residential Holding Company, LLC; GMACM Borrower LLC; GMACR Mortgage Products, LLC; GMAC-RFC Holding Company, LLC; GMACRH Settlement Services, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecomings Financial, LLC; Homecomings Financial Real Estate Holdings, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI A, LLC; PATI B, LLC; PATI Real Estate Holdings, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; Residential Capital, LLC; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential Consumer Services of Texas, LLC; Residential Consumer Services, LLC; Residential Funding Company, LLC; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.; Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Borrower LLC; RFC Construction Funding, LLC; RFC SFJV-2002, LLC; and RFC-GSAP Servicer Advance, LLC.

## RECITALS

**WHEREAS**, each of the Debtors is contemplating filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

**WHEREAS**, the Consenting Claimants hold, and/or are authorized investment managers for holders of, certain notes, bonds and/or certificates (collectively, the "Securities") backed by mortgage loans held by certain of the securitization trusts identified on the attached **Exhibit A** (the "Covered Trusts"), and the Covered Trusts assert claims (each, a "Rep and Warranty Claim"), as defined in section 101(5) of the Bankruptcy Code, against the Debtors arising out of alleged breaches of representations and warranties and other provisions contained in Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements and/or other agreements governing the securitization of mortgage loans by and activities of the Covered Trusts (collectively, the "Governing Agreements");

**WHEREAS**, the Consenting Claimants have indicated their intent under the Governing Agreements to seek action by the trustees under the Covered Trusts (each a "Trustee") to compel the Debtors or Ally to cure the alleged breaches of representations and warranties, and to assert other breaches, and the Debtors and Ally dispute such allegations of breach and waive no rights, and preserve all of their defenses, with respect to such allegations and putative cure requirements;

**WHEREAS**, the Debtors and the Consenting Claimants have engaged in arm's-length, good faith negotiations regarding the restructuring of the Debtors and have agreed upon (i) a term sheet, as set forth in **Exhibit B** attached hereto (the "Plan Term Sheet"), for a chapter 11 plan of reorganization, (ii) a proposed settlement that the Debtors will pursue and diligently prosecute pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure that would resolve claims of the trustees for the Covered Trusts and other RMBS trusts (the "Other RMBS Trusts" and, together with the Covered Trusts, the "Trusts"), against the Debtors (the "RMBS Trust Settlement Agreement"), and (iii) a settlement between the Debtors and Ally, to be embodied in a chapter 11 plan of reorganization (such plan, the "Plan", and such agreement, the "AFI Settlement Agreement" a copy of which is attached as Exhibit 4 to the Plan Term Sheet), pursuant to which Ally will contribute value, including a cash contribution in an amount of no less than $750 million (the "Cash Contribution") to ResCap to facilitate the Plan in exchange for Ally and ResCap resolving claims asserted by each against the other and resolving third party claims alleged against Ally relating to ResCap;[2]

---

[2]   For the avoidance of doubt, as used herein, the term "Plan" means a chapter 11 plan of reorganization that contains the same terms set forth in, and is otherwise consistent with, the Plan Term Sheet, the AFI Settlement Agreement and this Agreement.  In the event of any inconsistencies with the terms and conditions of this Agreement and the Plan Term Sheet, the terms and conditions of the Plan Term Sheet shall control.  Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan Term Sheet and the AFI Settlement Agreement.

**WHEREAS**, in accordance with the terms of this Agreement, the Parties have agreed to work together to facilitate consummation of the RMBS Trust Settlement Agreement, the AFI Settlement Agreement, the Plan Term Sheet and confirmation of the Plan and the transactions contemplated thereby (collectively, the "Restructuring"); and

**NOW, THEREFORE**, in consideration of the foregoing and the promises, mutual covenants, and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**Section 1.**     **The Settlement and the Restructuring.**

(a)     The Restructuring will be implemented pursuant to cases commenced by the Debtors under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") in accordance with this Agreement;

(b)     On or prior to May 14, 2012, the Debtors shall file voluntary petitions commencing the Chapter 11 Cases in the Bankruptcy Court (the date of such filings, the "Petition Date");

(c)     Each of the Parties agrees to negotiate in good faith the Definitive Documents (as defined in the Plan Term Sheet), including the Plan and a disclosure statement describing the Plan (the "Disclosure Statement"), both of which shall contain the same terms set forth in, and be materially consistent with, the Plan Term Sheet and AFI Settlement Agreement, and, shall be materially consistent with the methodology of allocation of sale proceeds, settlement proceeds, and all other matters that determine distributions to creditors as set forth in the May 9, 2012 and May 12, 2012 Executive Summaries (the "Executive Summaries") given by Debtors' counsel to the steering committee appointed by the Consenting Claimants (the "Steering Committee"), and the Plan or a motion filed in connection with the sale of the Debtors' mortgage loan origination business shall provide for the assumption and assignment of all or substantially all of the pooling and servicing agreements (and any similar agreements) of the Trusts; and

(d)     Each of the Parties acknowledges that one or more of the Consenting Claimants may act as an investment manager or investment adviser for other entities that are not a Consenting Claimant (each, a "Consenting Claimant Client"). The Consenting Claimant Clients hold or may hold individual claims against one or more of the Debtors or against Ally that do not belong to the Consenting Claimants. Nothing in this Agreement shall be deemed to waive or compromise the right of any Consenting Claimant Client to appear on its own behalf in the Debtors' Chapter 11 cases to pursue any of their respective rights. By their signatures hereunder, all Parties acknowledge that the Consenting Claimants do not waive, release or extinguish any claims under the securities or anti-fraud laws of the United States or of any state belonging to any Consenting Claimant Client.

## Section 2.    The Debtors' Obligations Under this Agreement.

### 2.1    Settlement of Allowed Claims

As long as a Debtor Termination Event or Ally Termination Event (as defined herein) has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, the Debtors agree to:

(a)    orally present this RMBS Trust Settlement Agreement in court on the Petition Date, including the agreed allowed claim amount; file a motion in the Bankruptcy Court as soon as practicable, but in no event later than fourteen (14) days after the Petition Date for approval of the RMBS Trust Settlement Agreement and the compromise contained therein; and obtain an order from the Bankruptcy Court approving such motion by the earlier of (i) 60 days after the Petition Date and (ii) the date on which the Disclosure Statement is approved by the Bankruptcy Court;

(b)    for 60 days following the Petition Date, offer to all Other RMBS Trusts a settlement of their claims on the same economic terms as for the Covered Trusts; and

(c)    take any and all other reasonably necessary actions in furtherance of the RMBS Trust Settlement Agreement and the compromise contemplated thereby.

### 2.2    Implementation of the Restructuring.

As long as a Debtor Termination Event has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, the Debtors agree to:

(a)    Use best efforts to effectuate and consummate the Restructuring contemplated by the Plan Term Sheet, including the AFI Settlement Agreement, so long as the AFI Settlement Agreement includes the Cash Contribution, in accordance with the deadlines and conditions specified in the milestones set forth on **Exhibit C** attached hereto (the "Milestones");

(b)    file a motion in the Bankruptcy Court within 21 days after the Petition Date seeking authority to perform under this Agreement and to use their commercially reasonable efforts to obtain an order from the Bankruptcy Court approving such motion contemporaneously with approval of the Disclosure Statement;

(c)    obtain any and all required regulatory approvals and material third-party approvals for confirmation and effectiveness of the Plan; and

(d)    take any and all reasonably necessary actions in furtherance of the Plan.

Notwithstanding anything in this Agreement to the contrary, the Consenting Claimants have not waived their right to file an objection to a motion of the holders of the ResCap 9 5/8% bonds requesting payment of any interest on account of their ResCap 9 5/8% bond claims that may be due and owing after the Petition Date.

4

The Debtors also agree to move, as part of the motion to approve this Agreement, for permission for the filing under seal of any Rule 2019 disclosure required in the Bankruptcy Case, subject to confidential review solely by the Court, the Office of the United States Trustee, any official committee of unsecured creditors appointed in the Chapter 11 Cases, and Ally.

## 2.3    Conditions Precedent to Payment by Debtors.

Notwithstanding the filing of the motion described in section 2.1(a) with the Bankruptcy Court, or entry of an order of the Bankruptcy Court approving such motion, no payment shall be made to the Covered Trusts prior to the effective date of the Plan.

## 2.4    The Debtors' Fiduciary Obligations.

Notwithstanding anything contained in this Agreement to the contrary, following the good faith determination by the Debtors and their respective Boards of Directors that a proposal or offer for a chapter 11 plan or other restructuring transaction that is not consistent with the transaction contemplated hereby (an "Alternative Restructuring") constitutes a proposal that is reasonably likely to be more favorable than the Restructuring to the Debtors' estates, their creditors, and other parties to whom the Debtors owe fiduciary duties, and receipt of approval by the Debtors' Boards of Directors to pursue such Alternative Restructuring, the Debtors may immediately terminate their obligations under this Agreement by written notice to counsel for the Consenting Claimants and Ally, and all obligations of the Consenting Claimants and their obligees under this Agreement shall be terminated immediately; provided, however, that an Alternative Restructuring shall be no less favorable to the Consenting Claimants than the Restructuring contemplated by the Plan.

## Section 3.    The Consenting Claimants' Obligations Under this Agreement.

## 3.1    Support of Restructuring.

As long as a Consenting Claimant Termination Event (as defined herein) has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, the Consenting Claimants each agree to, and, promptly after the execution of this Agreement, shall Direct the Trustees, in accordance with the terms and conditions of the Governing Agreements, to:

(a)    Support (as defined below) the prosecution of the Debtors' first- and second-day pleadings (including interim and final relief thereof, as applicable) including those pleadings listed on **Exhibit D** hereto; provided that if giving any Direction is impracticable, the Consenting Claimant Steering Committee shall request and Support the Trustees to accommodate the relief sought by the Debtors;

(b)    Use commercially reasonable efforts (including a public statement of counsel requesting others to join), which do not require the expenditure of funds or undertaking of any obligation, to obtain agreement to this Agreement and the RMBS Trust Settlement Agreement from holders of Securities backed by mortgage loans held by the Covered Trusts other than the Consenting Claimants

5

party to this Agreement on the first day of its execution, substantially in the form attached hereto as **Exhibit E**;

(c)     Support the Debtors' efforts to pursue the Restructuring contemplated by the Plan Term Sheet and the AFI Settlement Agreement (including the Cash Contribution set forth therein);

(d)     Support the Debtors' prosecution of their Chapter 11 Cases consistent with this Agreement, the Plan Term Sheet, and the AFI Settlement Agreement, including the Cash Contribution set forth therein and take no action otherwise adverse to the Debtors during the Chapter 11 Cases;

(e)     Support entry of an injunction staying litigation against Ally and current and former directors and officers of Ally and ResCap during the pendency of the Chapter 11 Cases;

(f)     Permit all disclosures in the Disclosure Statement and any filings by the Debtors and Ally with any regulatory agency to which the Debtors and Ally may be subject, of the contents of this Agreement, including the aggregate amount and nature of Rep and Warranty Claims;

(g)     Support entry of any order approving the Disclosure Statement to permit solicitation of the Plan;

(h)     Direct the Trustees to vote to accept the Plan, provided, however, that (i) the Bankruptcy Court has entered an order approving the Disclosure Statement, (ii) the Consenting Claimants have been properly solicited pursuant to section 1125 of the Bankruptcy Code, and (iii) the material terms of the Plan and the Disclosure Statement are consistent with the terms of the Plan Term Sheet and incorporate terms no less favorable than the AFI Settlement Agreement; and

(i)     Support confirmation of the Plan and approval of any settlement with Ally, whether or not such settlement is provided for under a plan of reorganization, including approval of third party releases in Ally's favor, on terms no less favorable than the AFI Settlement Agreement (including the Cash Contribution set forth therein), or any comparable sale under Section 363 of the Bankruptcy Code that provides and is conditioned on the same AFI Settlement Agreement (including the Cash Contribution set forth therein) and provides the same benefits to the Trusts and take no action otherwise adverse to Ally during the Chapter 11 Cases.

"Support" means to take commercially reasonable actions that do not require the expenditure of funds or undertaking of any obligations, including active participation in court hearings by counsel to the Consenting Claimants, attending meetings, and working with the Trustees to facilitate acceptance of the compromise contemplated by the Settlement Agreement. The Debtors and Ally acknowledge that the Consenting Claimants' Support obligation is made for themselves and, to the extent each of them has the authority, with respect to any other entities, account holders, or accounts for which or on behalf of which it is signing this Agreement. The

6

Consenting Claimants reasonably believe, and will inform the Bankruptcy Court and the Trustees, that the contemplated Plan is in the best interests of holders of Securities in the Trusts. This agreement of Support does not bar any Consenting Claimant Client from taking any contrary position. "<u>Direct</u>" means to provide, and "<u>Direction</u>" means, a written direction, but does not require the giving of any indemnity or other payment obligation.

## 3.2 Amendments to Governing Agreements.

The Consenting Claimants agree to use commercially reasonable efforts (which shall not require the giving of any indemnity or other payment obligation or expenditure of out-of-pocket funds) to negotiate any request by the Debtors or the Trustees for Trusts that are being assumed, and if any Trustee shall require a vote of the certificate or note holders with respect thereto, shall vote in favor of (to the extent agreement is reached) any amendment to the relevant Governing Agreements and related documents requested by the Debtors in order to permit "Advances" (as it or any similar term may be defined in the Governing Agreements) to be financeable and to make such other amendments thereto as may be reasonably requested by the Debtors in accordance with any agreement to acquire all or substantially all of the Debtors' servicing assets pursuant to the Restructuring and the Plan, so long as such changes would not cause material financial detriment to the Trusts, their respective trustees, certificate or note holders, or the Consenting Claimants.

## 3.3    Transfer of Claims or Securities.

The Consenting Claimants currently and collectively hold Securities representing in aggregate 25% of the voting rights in one or more classes of Securities of not less than 290 of the Covered Trusts. The Consenting Claimants, collectively, shall maintain holdings aggregating 25% of the voting rights in one or more classes of Securities of not less than 235 of the Covered Trusts ("<u>Requisite Holdings</u>") until the earliest of: (i) confirmation of the Plan, (ii) December 31, 2012, (iii) a Consenting Claimant Termination Event, (iv) a Debtor Termination Event, or (v) an Ally Termination Event; <u>provided</u>, <u>however</u>, that any reduction in Requisite Holdings caused by: (a) sales by Maiden Lane I and Maiden Lane III; or(b) exclusion of one or more trusts due to the exercise of Voting Rights by a third party guarantor or financial guaranty provider, shall not be considered in determining whether the Requisite Holdings threshold has been met. If the Requisite Holdings are not maintained, each of Ally and ResCap shall have the right to terminate the Agreement, but neither Ally nor ResCap shall terminate the Agreement before each it has conferred in good faith with the Consenting Claimants concerning whether termination is warranted. For the avoidance of doubt, other than as set forth above, this Agreement shall not restrict the right of any Consenting Claimant to sell or exchange any Securities issued by a Trust free and clear of any encumbrance. The Consenting Claimants will not sell any of the Securities for the purpose of avoiding their obligations under this Agreement, and each Consenting Claimant (except Maiden Lane I and Maiden Lane III) commits to maintain at least one position in one of the Securities in one of the Trusts until the earliest of the dates set forth above. If the Debtor or Ally reach a similar agreement to this with another bondholder group, the Debtor and Ally will include a substantially similar proportionate holdings requirement in that agreement as contained herein.

7

**3.4    Further Acquisition of Claims or Securities.**

This Agreement shall in no way be construed to preclude the Consenting Claimants or any of their affiliates (as defined in section 101(2) of the Bankruptcy Code) from acquiring additional Securities or claims against the Debtors following the Consenting Claimants' execution of the Agreement; provided, however, that any such additional Securities acquired by a commonly managed portfolio of the Consenting Claimants that are signatory hereto shall automatically be deemed to be subject to the terms of this Agreement.  The Consenting Claimants further agree that they will not knowingly create any subsidiary or affiliate for the sole purpose of acquiring any Securities without causing such affiliate to become a Party hereto prior to such acquisition.

**3.5    Representation of the Consenting Claimants' Holdings.**

Each of the Consenting Claimants represents that:

(a)    it has the authority to take the actions contemplated by this Agreement, to the extent that it has the authority with respect to any other entities, account holders, or accounts for which or on behalf of which it is signing this Agreement;

(b)    it holds, or is the authorized investment manager for the holders of, the securities listed in the schedule attached hereto as **Exhibit F**, in the respective amounts set forth therein by CUSIP number, that such schedule was materially accurate as of the date set forth for the respective institution, and that since the date set forth for the Consenting Claimant the Consenting Claimant has not, in the aggregate, materially decreased the Consenting Claimant's holdings in the Securities;

(c)    in connection with the Direction to be provided to the Trustees hereunder, it shall deliver to the Debtors and Ally signed copies of the holdings certifications it provides to the Trustees of the Covered Trusts promptly after the certifications are provided to the Trustees; and

(d)    lead counsel to the Consenting Claimants, Gibbs & Bruns, has represented to ResCap that the Consenting Claimants have aggregate holdings of securities of greater than 25% of the voting rights in one or more classes of the securities, certificates or other instruments backed by the mortgages held by each of the Covered Trusts (as defined in the Plan Support Agreement).

The Debtors and the Consenting Claimants agree that the aggregate amount of the holdings of capitalized securities of the Consenting Claimants may be disclosed publicly, but that the individual holdings shall remain confidential, subject to review by the Bankruptcy Court, the Office of the United States Trustee, and any official committee of unsecured creditors appointed in the Chapter 11 Cases, and the Debtors shall, in connection with seeking approval of entry into this Agreement, seek a protective order as to such holdings.

**3.6    Fiduciary Obligations of Consenting Claimants if Serving On Creditors' Committee.**  Any Consenting Claimants who serve on the official committee of unsecured

8

EXECUTION COPY

creditors appointed in the Chapter 11 Cases shall not be restricted in any manner by this Agreement from taking any actions or inaction in its capacity as a member of that committee.

## Section 4.    Obligations of Ally Under this Agreement

(a)    Ally consents to, and shall not object to, approval of the RMBS Trust Settlement Agreement or any allowance of the claims of the Trusts in any amount at or less than the aggregate amount of $8,700,000,000, or to any allocation of such claims among the Trusts reasonably proposed by the Consenting Claimants.

(b)    Ally shall comply with the AFI Settlement Agreement in accordance with the terms and conditions thereof.

## Section 5.    <u>Mutual Obligations of the Parties Under this Agreement.</u>

As long as a Termination Event has not occurred or has occurred but has been duly waived in accordance with the terms hereof, each of the Parties agrees that it shall not:

(a)    directly or indirectly seek, solicit, support, or vote in favor of any Alternative Restructuring that could reasonably be expected to prevent, delay, or impede the Restructuring contemplated by the Plan Term Sheet and the AFI Settlement Agreement or that is inconsistent with this Agreement, unless the Debtors, the Requisite Consenting Claimants and Ally have all agreed, in writing, to pursue an Alternative Restructuring;

(b)    directly nor indirectly (i) engage in, continue, or otherwise participate in any negotiations regarding any Alternative Restructuring, (ii) enter into a letter of intent, memorandum of understanding, agreement in principle, or other agreement relating to any Alternative Restructuring, or (iii) withhold, withdraw, qualify, or modify its approval or recommendation of this Agreement, the Plan Term Sheet, the Plan, the Restructuring, or the AFI Settlement Agreement, including the Cash Contribution set forth therein;

(c)    encourage any other entity to object to, delay, impede, appeal, or take any other action, directly or indirectly, to interfere with the Restructuring;

(d)    take any action that is inconsistent with this Agreement, the Plan Term Sheet, the AFI Settlement Agreement, including the Cash Contribution set forth therein, or the Plan, or that would obstruct or delay approval of the Disclosure Statement or confirmation and consummation of the Plan; and

(e)    Notwithstanding anything else in this Agreement to the contrary (including Section 2), (i) if a Consenting Claimant or its investment advisor has in place an informational wall with respect to this matter, it shall not be a breach of this Agreement if persons screened from confidential information make public statements with respect to this matter, or take actions with respect to other claims and securities that are not subject to this Agreement, that do not support the Restructuring, Plan, or RMBS Trust Settlement Agreement, and (ii) the Debtors

9

and Ally shall have the right to consider and pursue any Alternative Restructuring that is not materially worse for the Consenting Claimants.

## Section 6.    Termination.

**6.1    Consenting Claimant Termination Events.**

The term "Consenting Claimant Termination Event," wherever used in this Agreement, means any of the following events (whatever the reason for such Termination Event and whether it is voluntary or involuntary):

(a)    Any of the Debtors or Ally has breached any material provision of this Agreement or the RMBS Trust Settlement Agreement and any such breach has not been duly waived by the Requisite Consenting Claimants;

(b)    any material modification is made to the Plan Term Sheet or the Plan that is not in form and substance satisfactory to the Requisite Consenting Claimants;

(c)    any of the Definitive Documents (as defined in the Plan Term Sheet), including the Plan, is filed with the Bankruptcy Court by the Debtors and is inconsistent with the Plan Term Sheet in any material respects, unless otherwise acceptable to the Requisite Consenting Claimants;

(d)    the Bankruptcy Court has entered an order in any of the Chapter 11 Cases appointing (i) a trustee under chapter 7 or chapter 11 of the Bankruptcy Code, (ii) a responsible officer, or (iii) an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in sub-clauses (3) and (4) of section 1106(a) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code;

(e)    conversion or dismissal of the Chapter 11 Cases of any of the Debtors;

(f)    any termination or lifting of any of the Debtors' exclusivity to file a plan of reorganization;

(g)    any breach or termination of (i) any purchase and sale agreement for the Debtors' mortgage loan origination business or loans held for sale business or (ii) the AFI Settlement Agreement;

(h)    any default or event of default under any debtor-in-possession financing obtained by the Debtors;

(i)    any order entered permitting Ally to lift the automatic stay provided under Bankruptcy Code section 362 (the "Automatic Stay") that has a material adverse effect on the Consenting Claimants;

10

(j)    any order granted to any other secured lender to lift the Automatic Stay with respect to any material assets of the Debtors that has a material adverse effect on the Consenting Claimants;

(k)    any court has entered a final, non-appealable judgment or order declaring this Agreement or any material portion hereof to be unenforceable, or the filing of a motion to reject this Agreement; or

(l)    the Debtors fail to comply with the deadlines and conditions set forth in the Milestones.

**6.2    Debtor and Ally Termination Events.**

The terms "Debtor Termination Event" and "Ally Termination Event," wherever used in this Agreement, mean a breach of any material provision of this Agreement or the RMBS Trust Settlement Agreement by Consenting Claimants, whatever the reason for such Termination Event and whether it is voluntary or involuntary.

**6.3    Beneficiaries of Termination Rights.**

The Consenting Claimant Termination Events, the Debtor Termination Events, and the Ally Termination Events (collectively, "Termination Events") in Section 6 are intended solely for the benefit of the Debtors, Ally and the Consenting Claimants; provided, however, that the Consenting Claimants, Ally or a Debtor may not seek to terminate this Agreement based upon a material breach or a failure of a condition (if any) in this Agreement arising out of its own actions or omissions.

**6.4    Termination Event Procedures.**

Upon the occurrence of a Debtor Termination Event or an Ally Termination Event, this Agreement shall automatically terminate without further action of the Parties or action or order of the Bankruptcy Court unless no later than five (5) business days after the occurrence of such Termination Event, the occurrence of such Termination Event is waived in writing by the Debtors or Ally, respectively.  Upon the occurrence of a Consenting Claimant Termination Event, this Agreement shall only terminate after the Requisite Consenting Claimants provide Ally and the Debtors with three-days' advance written notice of termination.  In the event the Agreement is terminated, the Parties shall not have any continuing liability or obligation under the Agreement and each Party shall have all the rights and remedies available to it under applicable law; provided, however, that no such termination shall relieve any Party from liability for its breach or non-performance of its obligations hereunder prior to the date of termination.

The Parties hereby waive any requirement under section 362 of the Bankruptcy Code to lift the Automatic Stay in connection with giving any such notice (and agree not to object to any non-breaching Party seeking to lift the Automatic Stay in connection with giving any such notice, if necessary).  Any such termination (or partial termination) of the Agreement shall not restrict the Parties' rights and remedies for any breach of the Agreement by any Party, including, but not limited to, the reservation of rights set forth in Section 8 hereof.

11

**6.5    Mutual Consent to Termination.**

In addition to the Termination Events set forth in sections 6.1 and 6.2 hereof, this Agreement shall be terminable immediately upon written notice to all of the Parties of the written agreement of the Requisite Consenting Claimants, the Debtors and Ally to terminate this Agreement.

**6.6    Termination As a Result of the Effective Date.**

On the effective date of the Plan, the Plan shall supersede and replace this Agreement.

**Section 7.    <u>Mutual Representations, Warranties, and Covenants.</u>**

Each Party makes the following representations, warranties, and covenants to each of the other Parties, each of which are continuing representations, warranties, and covenants:

**7.1    Good Faith.**

The Parties agree to negotiate in good faith all of the documents and transactions described in the Plan Term Sheet and in this Agreement.

**7.2    Enforceability.**

Subject to Section 10.8 of this Agreement and the provisions of sections 1125 and 1126 of the Bankruptcy Code, this Agreement is a legal, valid, and binding obligation, enforceable against the Debtors, Ally and the Consenting Claimants in accordance with its terms, except as enforcement may be limited by applicable laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

**7.3    No Consent or Approval.**

Except as expressly provided in this Agreement, no consent or approval is required by any other entity in order for it to carry out the provisions of this Agreement.

**7.4    Power and Authority.**

The Parties are duly organized, validly existing, and in good standing under the laws of their jurisdictions of organization and the Parties have all requisite corporate, partnership, or limited liability company power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement and the Plan Term Sheet.

**7.5    Authorization.**

The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate, partnership, or limited liability company action on its part.

**7.6    Governmental Consents.**

Subject to the provisions of section 10.8 of the Agreement, the execution, delivery, and performance by the Parties of this Agreement does not and shall not require any registration or filing with or consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body, except such filings as may be necessary and/or required under the federal securities laws or as necessary for the approval of a disclosure statement and confirmation of the Plan by the Bankruptcy Court.

**7.7    No Conflicts.**

The execution, delivery, and performance of this Agreement, after taking into account screening walls, does not and shall not: (a) violate any provision of law, rule, or regulation applicable to it or, in the case of the Debtors, any of its subsidiaries; (b) violate its certificate of incorporation, bylaws (or other formation documents in the case of a limited liability company) or, in the case of the Debtors, those of any of its subsidiaries; or (c) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or, in the case of the Debtors, any of its subsidiaries is a party.

**Section 8.        No Waiver of Participation and Preservation of Rights.**

The Plan Term Sheet provides for an agreed plan treatment with respect to claims held by the Consenting Claimants against the Debtors and for releases of claims held by, among others, the Consenting Claimants against Ally.  Subject to the terms and conditions contained in Plan Term Sheet and the RMBS Trust Settlement Agreement, nothing herein is intended to, does or shall be deemed in any manner to waive, limit, impair, or restrict the ability of the Consenting Claimants to protect and preserve their rights, remedies, and interests, including their claims against any of the Debtors, any liens or security interests they may have in any assets of any of the Debtors, or their full participation in the Chapter 11 Cases, except as may be inconsistent with the provisions of this Agreement.  Without limiting the foregoing sentence in any way, if the transactions contemplated by this Agreement or otherwise set forth in the Plan Term Sheet are not consummated as provided herein, if a Termination Event occurs or if this Agreement is otherwise terminated for any reason, the Parties each fully reserve any and all of their respective rights, remedies and interests.

**Section 9.        Acknowledgement.**

THIS AGREEMENT, THE PLAN TERM SHEET, AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN, ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES.   EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A CHAPTER 11 PLAN FOR THE PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE.    THE DEBTORS WILL NOT SOLICIT ACCEPTANCES OF THE PLAN FROM THE CONSENTING CLAIMANTS UNTIL THE CONSENTING CLAIMANTS HAVE BEEN PROVIDED WITH COPIES OF A DISCLOSURE STATEMENT APPROVED BY THE BANKRUPTCY COURT.    EACH

PARTY FURTHER ACKNOWLEDGES THAT NO SECURITIES OF ANY DEBTOR ARE BEING OFFERED OR SOLD HEREBY AND THAT THIS AGREEMENT DOES NOT CONSTITUTE AN OFFER TO SELL OR A SOLICITATION OF AN OFFER TO BUY ANY SECURITIES OF ANY DEBTOR.

**Section 10.** **Miscellaneous Terms.**

**10.1** **Voluntariness; Binding Obligation; Assignment.**

(a) **Voluntariness.** Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Agreement voluntarily and without duress.

(b) **Binding Obligation.** Subject to the provisions of sections 1125 and 1126 of the Bankruptcy Code, this Agreement is a legally valid and binding obligation of the Parties and their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, successors, assigns, heirs, executors, administrators, and representatives, other than a trustee or similar representative appointed in the Chapter 11 Cases, enforceable in accordance with its terms, and shall inure to the benefit of the Parties and their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, successors, assigns, heirs, executors, administrators, and representatives. Nothing in this Agreement, express or implied, shall give to any Entity, other than the Parties and their respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates, successors, assigns, heirs, executors, administrators, and representatives, any benefit or any legal or equitable right, remedy or claim under this Agreement.

(c) **Assignment.** No rights or obligations of any Party under this Agreement may be assigned or transferred to any other entity except as provided in Section 3.3.

(d) **Several Obligations of Consenting Claimants.** The representations, warranties and covenants applicable to each of the Consenting Claimants shall be several and neither joint nor joint and several.

**10.2** **Further Assurances.**

The Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, from time to time, to effectuate the agreements and understandings of the Parties, whether the same occurs before or after the date of this Agreement.

**10.3** **No Admission of Breach or Wrongdoing.**

The Debtors and Ally have denied and continue to deny any breach, fault, liability, or wrongdoing. This denial includes breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any

securitizations, including those for which the Debtors or Ally were the Seller, Servicer and/or Master Servicer.   Neither this Plan Support Agreement nor the RMBS Trust Settlement Agreement, whether or not consummated, any proceedings relating to this Plan Support Agreement or the RMBS Trust Settlement Agreement, nor any of the terms of the Plan Support Agreement or the RMBS Trust Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Debtors or Ally with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that the Debtors or Ally have or could have asserted.

**10.4    No Admission Regarding Claim Status.**

The Debtors and Ally expressly state that neither this Agreement, whether or not consummated, any proceedings relating to this Agreement, nor any of the terms of this Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Debtors or Ally that any claims asserted by the Consenting Claimants are not contingent, unliquidated or disputed.  The Consenting Claimants expressly state that in the event this Agreement is not consummated or is terminated, neither this Agreement, nor any proceedings relating to this Agreement, nor any of the terms of this Agreement, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Consenting Claimants that any claims asserted by the Consenting Claimants and Trustees are not limited to the amounts set forth in this Agreement or are of any particular priority.

**10.5    Headings.**

The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

**10.6    Governing Law.**

THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF.

Further, by its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that the United States District Court for the Southern District of New York shall have jurisdiction to enforce this Agreement, provided, however, that, upon commencement of the Chapter 11 Cases, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

**10.7    Complete Agreement, Interpretation, and Modification.**

(a)    **Complete Agreement.**  This Agreement and the Plan Term Sheet constitute the complete agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, between or among the Parties with respect thereto.

15

(b)    **Interpretation.**  This Agreement is the product of negotiation by and among the Parties.  Any Party enforcing or interpreting this Agreement shall interpret it in a neutral manner.  There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.

(c)    **Modification of Restructuring Agreements.**  This Agreement and the Plan Term Sheet may only be modified, altered, amended, or supplemented by an agreement in writing signed by the Debtors, Ally and the Consenting Claimants.

## 10.8    Execution.

This Agreement may be executed and delivered (by facsimile or otherwise) in any number of identical counterparts, each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute the same agreement.  Except as expressly provided in this Agreement, each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

## 10.9    Remedies.

(a)    Specific Performance.

It is understood that money damages are not a sufficient remedy for any breach of this Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief from the Bankruptcy Court as a remedy for any such breach.  The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

## 10.10    Settlement Discussions.

This Agreement and the Restructuring are part of a proposed settlement among the Parties with respect to the Plan treatment of claims including the Rep and Warranty Claims. Nothing herein shall be deemed an admission of any kind by ResCap, Ally and the Consenting Claimants.  To the extent provided by Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

## 10.11    Consideration.

The Debtors, Ally and the Consenting Claimants hereby acknowledge that no consideration, other than that specifically described herein and in the Plan shall be due or paid to the Consenting Claimants for their agreement to support confirmation of the Plan in accordance with the terms and conditions of this Agreement, other than the Debtors' agreement to use commercially reasonable efforts to obtain approval of the Disclosure Statement and to seek confirmation of the Plan in accordance with the terms and conditions of the Plan.

**10.12   Third Party Beneficiaries.**

There are no third party beneficiaries of this Agreement.

**10.13   Notices.**

All notices hereunder shall be deemed given if in writing and delivered, if sent by facsimile, courier, or by registered or certified mail (return receipt requested) to the following addresses (or at such other addresses or facsimile numbers as shall be specified by like notice):

(a)     if to the Debtors, to: Residential Capital, LLC, 8400 Normandale Lake Boulevard, Suite 350,  Minneapolis, Minnesota 55437; Attn: Tammy Hamzehpour; with copies to: Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York, 10104, Attn:  Larren Nashelsky, Gary Lee and Anthony Princi;

(b)     if to the Consenting Claimants to: Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, TX 77002; Attn: Kathy D. Patrick; and Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036-8704; Attn: D. Ross Martin and Keith H. Wofford; and

(c)     if to Ally to: Ally Financial, Inc., 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000, Attn: William Soloman; with copies to: Kirkland & Ellis, 601 Lexington Avenue, New York, NY 10022, Attn: Ray Schrock.

Any notice given by delivery, mail, or courier shall be effective when received.  Any notice given by facsimile shall be effective upon oral or machine confirmation of transmission.

*        *        *        *        *

12-12020-mg   Doc 2813-57   Filed 02/01/13   Entered 02/01/13 16:48:05   Exhibit 57
Pg 19 of 107

IN WITNESS WHEREOF, the Parties have entered into this Agreement on the day and year first above written.

**RESIDENTIAL CAPITAL, LLC, on behalf of itself and its subsidiaries**

By: _____
Name: _____
Its: _____

**ALLY FINANCIAL INC., on behalf of Ally**

By: _____
Name:  Michael A. Carpenter
Its:  Chief Executive Officer

Dated: _____, 2012

**CONSENTING CLAIMANT**

By: _____
Name: _____
Its: _____
Telephone: _____
Facsimile: _____

Description of Rep and Warranty Claims held by Consenting Claimant:

Description: _____

Description and aggregate amount of any additional claims against the Debtors other than Rep and Warranty Claims:

$ _____
Description: _____

IN WITNESS WHEREOF, the Parties have entered into this Agreement on the day and year first above written.

**RESIDENTIAL CAPITAL, LLC, on behalf of itself and its subsidiaries**

By: _Tammy Hamzehpour_
Name: _Tammy Hamzehpour_
Its: _General Counsel_

**ALLY FINANCIAL, INC., on behalf of Ally**

By: _____
Name: _____
Its: _____

Dated: _____, 2012

**CONSENTING CLAIMANT**

By: _____
Name: _____
Its: _____
Telephone: _____
Facsimile: _____

Description of Rep and Warranty Claims held by Consenting Claimant:

_____

Description and aggregate amount of any additional claims against the Debtors other than Rep and Warranty Claims:

_____

Description: _____

_Western Asset Management Company_

Name:        W. Stephen Venable, Jr.
Title:        Attorney

Dated: May ___, 2012

*Thrivent Financial for Lutherans*

Name: David S. Royal

Title: Vice President and Deputy General
Counsel

Dated: May 11, 2012

*Teachers Insurance and Annuity Association of America*

Name: SANJEEV HANDA

Title: MANAGING DIRECTOR

Dated: May 13, 2012

*The TCW Group, Inc. on behalf of itself and its subsidiaries*

Name:  Michael E. Cahill

Title:    Executive Vice President

Name:   David S. DeVito

Title:    Executive Vice President

Dated:  May ___, 2012

*Pacific Investment Management Company LLC*

Name:  Douglas M. Hodge

Title:   Chief Operating Officer

Dated:  May 13, 2012

*Maiden Lane LLC and Maiden Lane III LLC by*
*Federal Reserve Bank of New York, as*
*managing member*

Name:   Stephanie Heller

Title:     Senior Vice President and Deputy General Counsel

Dated:  May ___, 2012

Neuberger Berman Europe Limited

Name: HEATHER ZUCKERMAN

Title: DIRECTOR

Dated: May 13, 2012

_Metropolitan Life Insurance Company_

Name: Nancy Mueller Handal

Title:  Managing Director

Dated:  May __13__, 2012

_____

*Kore Advisors, L.P.*

Name:  Cory B. Nass

Title:  General Counsel

Dated:  May ___, 2012

_Gerald T. Lins_ _(signature)_
_____

*ING Investment Management Co. LLC*

Name: _Gerald T. Lins_

Title: _Managing Director and Secretary_

Dated: May 13, 2012

*ING Investment Management LLC*

Name: Christine Hurtsellers

Title: Executive Vice President

Dated:  May 11, 2012

*Goldman Sachs Asset Management, L.P.*

Name:

Title:

Dated:  May 10, 2012

12-12020-mg    Doc 2918-57   Filed 06/11/12   Entered 06/11/12 21:44:08   Exhibit B
Pg 33 of 107

_Federal Home Loan Bank of Atlanta_

Name:  Reginald T. O'Shields

Title:  General Counsel and Senior Vice President

Dated:  May ___, 2012

*Cascade Investment, L.L.C.*

Name:  Keith Traverse

Title:    Authorized Representative

Dated:  May ___, 2012

_Bayerische Landesbank, acting through
its New York Branch_

Name:   Oliver Molitor

Title:     Executive Vice President

Dated: May ___, 2012

_Bayerische Landesbank, acting through
its New York Branch_

Name:   Bert von Stuelpnagel

Title:     Executive Vice President

Dated: May ___, 2012

*BlackRock Financial Management Inc. and its advisory affiliates*

Name: Randy Robertson

Title: Managing Director

Dated: May 11, 2012

AEGON USA Investment Management, LLC

Name:

Title:

Dated: May 13, 2012

## Exhibit A- Trusts

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|-----------|--------------------------------------|-----------|--------------------------------------|
| 2004-AR1 | 635.0 | 2004-QS12 | 424.3 |
| 2004-AR2 | 510.1 | 2004-QS13 | 129.2 |
| 2004-GH1 | 224.1 | 2004-QS14 | 212.9 |
| 2004-HE1 | 1,292.3 | 2004-QS15 | 213.7 |
| 2004-HE2 | 711.5 | 2004-QS16 | 534.7 |
| 2004-HE3 | 977.3 | 2004-QS2 | 292.3 |
| 2004-HE4 | 1,018.0 | 2004-QS3 | 207.8 |
| 2004-HE5 | 700.0 | 2004-QS4 | 320.6 |
| 2004-HI1 | 235.0 | 2004-QS5 | 293.7 |
| 2004-HI2 | 275.0 | 2004-QS6 | 156.5 |
| 2004-HI3 | 220.0 | 2004-QS7 | 449.2 |
| 2004-HLTV1 | 175.0 | 2004-QS8 | 271.0 |
| 2004-HS1 | 477.1 | 2004-QS9 | 105.1 |
| 2004-HS2 | 604.1 | 2004-RP1 | 199.5 |
| 2004-HS3 | 284.0 | 2004-RS1 | 1,400.0 |
| 2004-J1 | 401.0 | 2004-RS10 | 1,250.0 |
| 2004-J2 | 400.6 | 2004-RS11 | 925.0 |
| 2004-J3 | 350.0 | 2004-RS12 | 975.0 |
| 2004-J4 | 600.1 | 2004-RS2 | 875.0 |
| 2004-J5 | 551.9 | 2004-RS3 | 600.0 |
| 2004-J6 | 408.0 | 2004-RS4 | 1,100.0 |
| 2004-KR1 | 2,000.0 | 2004-RS5 | 1,050.0 |
| 2004-KR2 | 1,250.0 | 2004-RS6 | 1,000.0 |
| 2004-KS1 | 950.0 | 2004-RS7 | 1,183.7 |
| 2004-KS10 | 986.0 | 2004-RS8 | 900.0 |
| 2004-KS11 | 692.7 | 2004-RS9 | 950.0 |
| 2004-KS12 | 541.8 | 2004-RZ1 | 485.0 |
| 2004-KS2 | 990.0 | 2004-RZ2 | 475.0 |
| 2004-KS3 | 675.0 | 2004-RZ3 | 360.0 |
| 2004-KS4 | 1,000.0 | 2004-RZ4 | 276.6 |
| 2004-KS5 | 1,175.0 | 2004-S1 | 307.7 |
| 2004-KS6 | 1,000.0 | 2004-S2 | 362.0 |
| 2004-KS7 | 850.0 | 2004-S3 | 228.3 |
| 2004-KS8 | 600.0 | 2004-S4 | 460.3 |
| 2004-KS9 | 600.0 | 2004-S5 | 423.5 |
| 2004-PS1 | 100.1 | 2004-S6 | 527.2 |
| 2004-QA1 | 201.3 | 2004-S7 | 105.3 |
| 2004-QA2 | 365.1 | 2004-S8 | 311.0 |
| 2004-QA3 | 320.1 | 2004-S9 | 645.9 |
| 2004-QA4 | 290.2 | 2004-SA1 | 250.1 |
| 2004-QA5 | 325.1 | 2004-SL1 | 632.9 |
| 2004-QA6 | 720.3 | 2004-SL2 | 499.0 |
| 2004-QS1 | 319.9 | 2004-SL3 | 222.5 |
| 2004-QS10 | 216.6 | 2004-SL4 | 206.5 |
| 2004-QS11 | 217.5 | 2004-SP1 | 233.7 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2004-SP2 | 145.1 | 2005-KS8 | 1,165.8 |
| 2004-SP3 | 306.9 | 2005-KS9 | 487.0 |
| 2004-VFT | 820.7 | 2005-NC1 | 870.8 |
| 2005-AA1 | 265.6 | 2005-QA1 | 296.7 |
| 2005-AF1 | 235.5 | 2005-QA10 | 621.8 |
| 2005-AF2 | 296.9 | 2005-QA11 | 525.1 |
| 2005-AHL1 | 463.7 | 2005-QA12 | 285.2 |
| 2005-AHL2 | 434.2 | 2005-QA13 | 560.2 |
| 2005-AHL3 | 488.8 | 2005-QA2 | 501.0 |
| 2005-AR1 | 399.8 | 2005-QA3 | 500.0 |
| 2005-AR2 | 458.4 | 2005-QA4 | 525.2 |
| 2005-AR3 | 523.7 | 2005-QA5 | 241.8 |
| 2005-AR4 | 386.1 | 2005-QA6 | 575.5 |
| 2005-AR5 | 597.2 | 2005-QA7 | 575.0 |
| 2005-AR6 | 592.0 | 2005-QA8 | 519.5 |
| 2005-EFC1 | 1,101.5 | 2005-QA9 | 650.5 |
| 2005-EFC2 | 679.3 | 2005-QO1 | 711.1 |
| 2005-EFC3 | 731.9 | 2005-QO2 | 425.1 |
| 2005-EFC4 | 707.8 | 2005-QO3 | 500.6 |
| 2005-EFC5 | 693.3 | 2005-QO4 | 797.0 |
| 2005-EFC6 | 672.7 | 2005-QO5 | 1,275.1 |
| 2005-EFC7 | 698.2 | 2005-QS1 | 214.6 |
| 2005-EMX1 | 792.8 | 2005-QS10 | 265.7 |
| 2005-EMX2 | 620.4 | 2005-QS11 | 213.6 |
| 2005-EMX3 | 674.5 | 2005-QS12 | 528.9 |
| 2005-EMX4 | 492.6 | 2005-QS13 | 639.2 |
| 2005-EMX5 | 380.0 | 2005-QS14 | 615.8 |
| 2005-HE1 | 991.1 | 2005-QS15 | 431.5 |
| 2005-HE2 | 1,113.5 | 2005-QS16 | 428.0 |
| 2005-HE3 | 988.0 | 2005-QS17 | 540.1 |
| 2005-HI1 | 240.0 | 2005-QS2 | 213.0 |
| 2005-HI2 | 240.0 | 2005-QS3 | 475.6 |
| 2005-HI3 | 224.9 | 2005-QS4 | 211.7 |
| 2005-HS1 | 853.8 | 2005-QS5 | 214.0 |
| 2005-HS2 | 577.5 | 2005-QS6 | 265.1 |
| 2005-HSA1 | 278.8 | 2005-QS7 | 370.0 |
| 2005-J1 | 525.5 | 2005-QS8 | 104.1 |
| 2005-KS1 | 708.8 | 2005-QS9 | 371.0 |
| 2005-KS10 | 1,299.2 | 2005-RP1 | 343.1 |
| 2005-KS11 | 1,339.3 | 2005-RP2 | 301.1 |
| 2005-KS12 | 1,117.2 | 2005-RP3 | 282.5 |
| 2005-KS2 | 543.4 | 2005-RS1 | 975.0 |
| 2005-KS3 | 413.5 | 2005-RS2 | 725.0 |
| 2005-KS4 | 411.1 | 2005-RS3 | 741.3 |
| 2005-KS5 | 401.8 | 2005-RS4 | 522.4 |
| 2005-KS6 | 596.2 | 2005-RS5 | 497.5 |
| 2005-KS7 | 387.6 | 2005-RS6 | 1,183.2 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2005-RS7 | 493.0 | 2006-HI4 | 272.7 |
| 2005-RS8 | 660.0 | 2006-HI5 | 247.5 |
| 2005-RS9 | 1,179.0 | 2006-HLTV1 | 229.9 |
| 2005-RZ1 | 203.8 | 2006-HSA1 | 461.4 |
| 2005-RZ2 | 333.7 | 2006-HSA2 | 447.9 |
| 2005-RZ3 | 340.0 | 2006-HSA3 | 201.0 |
| 2005-RZ4 | 411.2 | 2006-HSA4 | 402.1 |
| 2005-S1 | 463.1 | 2006-HSA5 | 295.6 |
| 2005-S2 | 260.9 | 2006-J1 | 550.0 |
| 2005-S3 | 183.1 | 2006-KS1 | 840.1 |
| 2005-S4 | 259.4 | 2006-KS2 | 977.5 |
| 2005-S5 | 258.2 | 2006-KS3 | 1,125.9 |
| 2005-S6 | 412.9 | 2006-KS4 | 687.8 |
| 2005-S7 | 311.7 | 2006-KS5 | 687.1 |
| 2005-S8 | 312.3 | 2006-KS6 | 529.1 |
| 2005-S9 | 366.6 | 2006-KS7 | 532.7 |
| 2005-SA1 | 295.2 | 2006-KS8 | 535.9 |
| 2005-SA2 | 500.8 | 2006-KS9 | 1,197.1 |
| 2005-SA3 | 675.2 | 2006-NC1 | 536.8 |
| 2005-SA4 | 850.5 | 2006-NC2 | 745.2 |
| 2005-SA5 | 355.3 | 2006-NC3 | 504.9 |
| 2005-SL1 | 370.5 | 2006-QA1 | 603.9 |
| 2005-SL2 | 168.9 | 2006-QA10 | 375.5 |
| 2005-SP1 | 831.0 | 2006-QA11 | 372.4 |
| 2005-SP2 | 490.2 | 2006-QA2 | 394.0 |
| 2005-SP3 | 285.7 | 2006-QA3 | 398.5 |
| 2006-AR1 | 508.7 | 2006-QA4 | 304.4 |
| 2006-AR2 | 373.0 | 2006-QA5 | 695.6 |
| 2006-EFC1 | 593.2 | 2006-QA6 | 625.8 |
| 2006-EFC2 | 387.6 | 2006-QA7 | 588.2 |
| 2006-EMX1 | 424.6 | 2006-QA8 | 795.1 |
| 2006-EMX2 | 550.1 | 2006-QA9 | 369.2 |
| 2006-EMX3 | 773.6 | 2006-QH1 | 337.9 |
| 2006-EMX4 | 661.7 | 2006-QO1 | 901.2 |
| 2006-EMX5 | 580.2 | 2006-QO10 | 895.7 |
| 2006-EMX6 | 620.5 | 2006-QO2 | 665.5 |
| 2006-EMX7 | 495.3 | 2006-QO3 | 644.8 |
| 2006-EMX8 | 698.6 | 2006-QO4 | 843.2 |
| 2006-EMX9 | 728.8 | 2006-QO5 | 1,071.6 |
| 2006-HE1 | 1,274.2 | 2006-QO6 | 1,290.3 |
| 2006-HE2 | 626.2 | 2006-QO7 | 1,542.4 |
| 2006-HE3 | 1,142.3 | 2006-QO8 | 1,288.1 |
| 2006-HE4 | 1,159.1 | 2006-QO9 | 895.6 |
| 2006-HE5 | 1,244.5 | 2006-QS1 | 323.8 |
| 2006-HI1 | 214.2 | 2006-QS10 | 533.6 |
| 2006-HI2 | 237.4 | 2006-QS11 | 751.5 |
| 2006-HI3 | 223.2 | 2006-QS12 | 541.3 |

| Deal Name | Original Issue Balance (in Thousands) | Deal Name | Original Issue Balance (in Thousands) |
|---|---|---|---|
| 2006-QS13 | 641.0 | 2006-SP3 | 291.9 |
| 2006-QS14 | 753.7 | 2006-SP4 | 303.9 |
| 2006-QS15 | 538.6 | 2007-EMX1 | 692.9 |
| 2006-QS16 | 752.1 | 2007-HE1 | 1,185.9 |
| 2006-QS17 | 537.0 | 2007-HE2 | 1,240.9 |
| 2006-QS18 | 1,181.9 | 2007-HE3 | 350.6 |
| 2006-QS2 | 881.7 | 2007-HI1 | 255.0 |
| 2006-QS3 | 969.8 | 2007-HSA1 | 546.8 |
| 2006-QS4 | 752.3 | 2007-HSA2 | 1,231.4 |
| 2006-QS5 | 698.0 | 2007-HSA3 | 796.4 |
| 2006-QS6 | 858.8 | 2007-KS1 | 415.6 |
| 2006-QS7 | 537.5 | 2007-KS2 | 961.5 |
| 2006-QS8 | 966.3 | 2007-KS3 | 1,270.3 |
| 2006-QS9 | 540.1 | 2007-KS4 | 235.9 |
| 2006-RP1 | 293.0 | 2007-QA1 | 410.1 |
| 2006-RP2 | 317.0 | 2007-QA2 | 367.0 |
| 2006-RP3 | 290.4 | 2007-QA3 | 882.4 |
| 2006-RP4 | 357.4 | 2007-QA4 | 243.5 |
| 2006-RS1 | 1,173.6 | 2007-QA5 | 504.1 |
| 2006-RS2 | 785.6 | 2007-QH1 | 522.3 |
| 2006-RS3 | 741.6 | 2007-QH2 | 348.4 |
| 2006-RS4 | 887.5 | 2007-QH3 | 349.5 |
| 2006-RS5 | 382.6 | 2007-QH4 | 401.0 |
| 2006-RS6 | 372.2 | 2007-QH5 | 497.5 |
| 2006-RZ1 | 483.8 | 2007-QH6 | 597.0 |
| 2006-RZ2 | 368.6 | 2007-QH7 | 347.0 |
| 2006-RZ3 | 688.3 | 2007-QH8 | 560.1 |
| 2006-RZ4 | 851.8 | 2007-QH9 | 594.4 |
| 2006-RZ5 | 505.1 | 2007-QO1 | 625.1 |
| 2006-S1 | 367.1 | 2007-QO2 | 529.3 |
| 2006-S10 | 1,087.7 | 2007-QO3 | 296.3 |
| 2006-S11 | 623.2 | 2007-QO4 | 502.8 |
| 2006-S12 | 1,204.3 | 2007-QO5 | 231.2 |
| 2006-S2 | 260.6 | 2007-QS1 | 1,297.4 |
| 2006-S3 | 337.8 | 2007-QS10 | 435.8 |
| 2006-S4 | 313.9 | 2007-QS11 | 305.8 |
| 2006-S5 | 678.1 | 2007-QS2 | 536.7 |
| 2006-S6 | 599.6 | 2007-QS3 | 971.6 |
| 2006-S7 | 469.7 | 2007-QS4 | 746.9 |
| 2006-S8 | 416.3 | 2007-QS5 | 432.7 |
| 2006-S9 | 442.3 | 2007-QS6 | 808.3 |
| 2006-SA1 | 275.1 | 2007-QS7 | 803.3 |
| 2006-SA2 | 791.3 | 2007-QS8 | 651.8 |
| 2006-SA3 | 350.9 | 2007-QS9 | 707.0 |
| 2006-SA4 | 282.3 | 2007-RP1 | 334.4 |
| 2006-SP1 | 275.9 | 2007-RP2 | 263.3 |
| 2006-SP2 | 348.1 | 2007-RP3 | 346.6 |

| Deal Name | Original Issue Balance (in Thousands) |
|---|---|
| 2007-RP4 | 239.2 |
| 2007-RS1 | 478.3 |
| 2007-RS2 | 376.8 |
| 2007-RZ1 | 329.3 |
| 2007-S1 | 522.5 |
| 2007-S2 | 472.2 |
| 2007-S3 | 575.3 |
| 2007-S4 | 314.5 |
| 2007-S5 | 524.8 |
| 2007-S6 | 707.7 |
| 2007-S7 | 419.1 |
| 2007-S8 | 488.8 |
| 2007-S9 | 172.4 |
| 2007-SA1 | 310.8 |
| 2007-SA2 | 385.1 |
| 2007-SA3 | 363.8 |
| 2007-SA4 | 414.9 |
| 2007-SP1 | 346.6 |
| 2007-SP2 | 279.3 |
| 2007-SP3 | 298.1 |
| **Grand Total** | **220,987.7** |

12-12020-mg    Doc 2918-57    Filed 02/01/13    Entered 02/01/13 16:48:05    Exhibit 57
Pg 43 of 107

## EXHIBIT B

### RESIDENTIAL CAPITAL LLC AND
### CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES

### TERM SHEET FOR PROPOSED
### JOINT CHAPTER 11 PLAN OF REORGANIZATION

This term sheet (the "Term Sheet") describes the principal terms of a proposed joint plan (the "Plan") of reorganization (the "Reorganization") of Residential Capital LLC ("ResCap" or the "Company") and each subsidiary of the Company that files as a debtor in possession in a case in the United States Bankruptcy Court for the Southern District of New York (collectively, the "Debtors").

**THIS TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN. SUCH OFFER OR SOLICITATION ONLY WILL BE MADE IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

| PARTIES: | |
|---|---|
| **Debtors** | The following entities are Debtors under the Plan: |
| | Ditech, LLC; DOA Holding Properties, LLC; DOA Holdings NoteCo, LLC; DOA Properties IX LLC; EPRE LLC; Equity Investment I, LLC; ETS of Virginia, Inc.; ETS of Washington, Inc.; Executive Trustee Services, LLC; Foreign Obligation Exchange, Inc. 2003-H12; Foreign Obligation Exchange, Inc. 2003-H14; GMAC Model Home Finance I, LLC; GMAC Mortgage USA Corporation; GMAC Mortgage, LLC; GMAC Residential Holding Company, LLC; GMACR Mortgage Products, LLC; GMAC-RFC Holding Company, LLC; GMACRH Settlement Services, LLC; HFN REO SUB II, LLC; Home Connects Lending Services, LLC; Homecoming Finanial, LLC; Homecomings Financial Real Estate Holdings, LLC; Ladue Associates, Inc.; Passive Asset Transactions, LLC; PATI A, LLC; PATI B, LLC; PATI Real Estate Holdings, LLC; Phoenix Residential Securities, LLC; RAHI A, LLC; RAHI B, LLC; RAHI Real Estate Holdings, LLC; RCSFJV2004, LLC; Residential Accredit Loans, Inc.; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; Residential Capital, LLC; Residential Consumer Services of Alabama, LLC; Residential Consumer Services of Ohio, LLC; Residential |

|  | Consumer Services of Texas, LLC; Residential Consumer Services, LLC; Residential Funding Company, LLC; Residential Funding Mortgage Exchange, LLC; Residential Funding Mortgage Securities I, Inc.; Residential Funding Mortgage Securities II, Inc.; Residential Funding Real Estate Holdings, LLC; Residential Mortgage Real Estate Holdings, LLC; RFC Asset Holdings II, LLC; RFC Asset Management, LLC; RFC Construction Funding, LLC; RFC SFJV-2002, LLC; and RFC-GSAP Servicer Advance, LLC.<br><br>The Plan proposes partial consolidation for Plan purposes only with the following Debtor entities: (a) ResCap, GMAC Residential Holding Company, LLC ("GMACM Holding"), and GMAC-RFC Holding Company, LLC ("RFC Holding" and, together with ResCap and GMACM Holding, the "ResCap Debtors"); (b) each of the Debtor subsidiaries of GMACM Holding (collectively, the "GMACM Debtors"); and (c) each of the Debtor subsidiaries of RFC Holding (collectively, the "RFC Debtors"). |
|---|---|
| **DIP Lenders** | Barclays Bank PLC and any other lenders that are parties to the DIP Financing Facility |
| **Purchaser** | Nationstar Mortgage LLC (the "Stalking Horse Bidder") or, if the Stalking Horse Bidder is not the Winning Bidder at the Auction, the Winning Bidder. |

| | |
|---|---|
| **Prepetition Secured Lenders**[1] | (a) Ally Financial Inc. ("AFI" and, together with its direct and indirect subsidiaries (other than ResCap and its subsidiaries, collectively, "Ally") under (i) that certain senior secured credit facility agreement (the "AFI Revolver"), as amended and restated on December 30, 2009, and (ii) that certain secured loan agreement, as amended and restated on December 30, 2009 (the "AFI LOC");<br><br>(b) Citibank N.A. ("Citibank") under that certain $158 million revolving facility (the "Citibank MSR Facility"); and<br><br>(c) Federal National Mortgage Association ("Fannie Mae"), under that certain Term Sheet dated August 10, 2010, as amended and restated as of January 18, 2011 and as further amended on July 29, 2011 (the "FNMA EAF Facility"). |
| **Junior Secured Noteholders** | Holders of 9.625% junior secured notes due 2015 issued by ResCap (the "Junior Secured Notes"). |
| **Senior Unsecured Noteholders** | Holders of senior unsecured notes (the "Senior Unsecured Notes") consisting of U.S. dollar denominated notes maturing between June 2012 and June 2015, euro denominated notes maturing in May 2012, and U.K. sterling denominated notes maturing between May 2013 and July 2014, each issued by ResCap, under the Indenture dated as of June 24, 2005, and certain supplements thereto. |
| **Treatment of Subservicing Agreement** | The Bankruptcy Court shall enter an order, approving the continued performance under the Subservicing Agreement attached hereto as Exhibit 1 on an interim basis within five (5) business days of the Petition Date, and on a final basis within fifty (50) days of the Petition Date, unless Ally in its sole discretion extends such dates. |
| **Treatment of Shared Services Agreement** | The Bankruptcy Court shall enter an order approving the performance under the Shared Services Agreement attached to the Ally Settlement Agreement as Exhibit 7 on an interim basis within five (5) business days of the Petition Date, and on a final basis within fifty (50) days of the Petition Date, unless Ally in its sole discretion extends such dates. |
| **Treatment of GNMA** | The Bankruptcy Court shall enter an order, approving the |

---

[1]   This Term Sheet is conditioned upon the GSAP Facility and BMMZ Repo Facility being refinanced by the DIP Financing Facility.

| Forward Flow Agreement | continued performance under the GNMA Forward Flow Agreement attached hereto as <u>Exhibit 2</u> on an interim basis within five (5) business days of the Petition Date, and on a final basis within fifty (50) days of the Petition Date, unless Ally in its sole discretion extends such dates. |
|---|---|
| **Automatic Stay Extension Motion** | The Debtors shall file a motion to extend the automatic stay under section 362 of the Bankruptcy Code to Ally during the Debtors' chapter 11 cases. |
| **Subordination Rights** | Except as expressly provided otherwise (including modification pursuant to the Plan Support Agreements), the Plan shall give effect to any subordination rights as required by section 510(a) of the Bankruptcy Code. |
| | |

## PLAN OF REORGANIZATION:

| Initiation of Chapter 11 Cases | No later than May 14, 2012 (the "<u>Petition Date</u>"), each of the Debtors shall file with the Bankruptcy Court a voluntary petition under Chapter 11 of the Bankruptcy Code. Within thirty (30) days of the Petition Date, the Debtors shall file the Plan and related disclosure statement (the "<u>Disclosure Statement</u>") that incorporate, and are consistent with, the terms of this Term Sheet, and shall use commercially reasonable efforts to satisfy the terms of this Term Sheet, including the Consummation of the Plan.<br><br>The Plan and Disclosure Statement shall be in form and substance satisfactory to the Debtors, Ally, and other parties that are party to the Plan Support Agreements. |
|---|---|
| **Plan Treatment** | The Plan shall address, among other things: (a) obligations under the DIP Financing Facility; (b) obligations under the Prepetition Secured Facilities; (c) obligations under the Junior Secured Notes; (d) other secured obligations; (e) obligations under the Senior Unsecured Notes; (f) general unsecured obligations; (g) statutorily subordinated obligations; (h) intercompany obligations; and (i) equity interests including common stock, partnership interests, or other ownership interests, and rights related thereto. |
| **Ally Settlement Agreement** | The Plan will incorporate a settlement with Ally, as described in this Term Sheet and as set forth in the Ally Settlement Agreement pursuant to which Ally will agree to |

| | contribute the value set forth in the Ally Settlement Agreement to the Debtors' estates for, among other things, Debtor Releases and Third Party Releases (each as defined below), subject to Bankruptcy Court approval as part of the Plan. |
|---|---|
| **Plan Funding** | The Plan will be funded with the proceeds derived from: (a) the Debtors' asset sale executed pursuant to the Platform Asset Purchase Agreement, attached hereto as <u>Exhibit 4</u>; (b) the Ally Settlement Agreement; (c) the Debtors' asset sale executed pursuant to the HFS Asset Purchase Agreement, attached to the Ally Settlement Agreement as <u>Exhibit 5</u>; and (d) other sales of the Debtors' assets (whether occurring before or after the Effective Date).<br><br>The Ally Settlement proceeds will be allocated in any manner consistent with the Plan Support Agreements among the ResCap Debtors, GMACM Debtors, and RFC Debtors in the Debtors' sole discretion. |

## TREATMENT OF CLAIMS AND INTERESTS:

### I.    RESCAP DEBTORS

| | |
|---|---|
| **Administrative Expense Claims** | Unclassified.   On or as soon as practicable after the Effective Date, each holder of an allowed Administrative Expense Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; <u>provided</u>, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. |
| **Priority Tax Claims** | Unclassified.   On or as soon as practicable after the Effective Date, each holder of an allowed Priority Tax Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class R-1:  Other Priority Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, |

| | each holder of an allowed Other Priority Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided, that Other Priority Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
|---|---|
| **Class R-2:  AFI Revolver Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Except as otherwise provided under the Ally Settlement Agreement, on or as soon as practicable after the Effective Date, each holder of an allowed AFI Revolver Claim shall be satisfied by payment in full in cash in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class R-3:  Other Secured Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, each holder of an allowed Other Secured Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class R-4:  Junior Secured Notes Claims** | Impaired; entitled to vote on the Plan.  The Junior Secured Notes Claims shall be Allowed in the aggregate amount of not less than $2,120,452,000.<br><br>Each holder of a Junior Secured Notes Claim shall receive, in full and final satisfaction of such a Claim and after giving full effect to the terms of the Junior Secured Notes Plan Support Agreement, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code. |
| **Class R-5: Senior Unsecured Notes Claims** | Impaired;  entitled  to  vote  on  the  Plan.    The  Senior Unsecured Notes Claims shall be Allowed in the aggregate amount of principal plus interest prior to the Petition Date.<br><br>Each holder of an Allowed Senior Unsecured Notes Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the ResCap Unsecured Claims Pool. |

6

| | |
|---|---|
| **Class R-6:  Junior Secured Notes Deficiency Claims** | Impaired; entitled to vote on the Plan.  Each holder of an Allowed Junior Secured Notes Deficiency Claim shall receive, in full and final satisfaction of such Claim, its pro rata share of the ResCap Unsecured Claims Pool; provided, that at the Debtors' option, if the Junior Secured Notes Plan Support Agreement becomes effective, each holder of a Junior Secured Note will be deemed to have waived its right to receive any recovery on account of the Class R-6 Junior Secured Notes Deficiency Claims. |
| **Class R-7:  General Unsecured Claims** | Impaired; entitled to vote on the Plan.  Each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the ResCap Unsecured Claims Pool, unless the holder and applicable Debtor otherwise agree to a different treatment. |
| **Class R-8:  Intercompany Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Unless the Junior Secured Claims have been paid in full based upon their Secured Claims, Allowed Intercompany Claims shall receive in full satisfaction of such Allowed Intercompany Claims an amount equal to its pro rata share of ResCap Unsecured Claims Pool. |
| **Class R-9:  Section 510(b) Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Section 510(b) Claims shall receive no recovery on account of such claims. |
| **Class R-10:  Equity Interests** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Equity Interests shall receive no recovery on account of such interests. |

| | |
|---|---|
| **II.    GMACM DEBTORS** | |
| **Administrative Expense Claims** | Unclassified.   On or as soon as practicable after the Effective Date, each holder of an allowed Administrative Expense Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms |

| | and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. |
|---|---|
| **Priority Tax Claims** | Unclassified.  On or as soon as practicable after the Effective Date, each holder of an allowed Priority Tax Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class GS-1:  Other Priority Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, each holder of an allowed Other Priority Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided, that Other Priority Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| **Class GS-2:  AFI Revolver Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Except as otherwise provided under the Ally Settlement Agreement, on or as soon as practicable after the Effective Date, each holder of an allowed AFI Revolver Claim shall be satisfied by payment in full in cash in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class GS-3:  AFI LOC Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Except as otherwise provided under the Ally Settlement Agreement, on or as soon as practicable after the Effective Date, each holder of an allowed AFI LOC Claim shall be satisfied by payment in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class GS-4:  Citibank Secured Lender Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, each holder of an allowed Citibank Secured Lender Claim |

| | shall be satisfied by payment in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
|---|---|
| **Class GS-5: FNMA EAF Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code. On or as soon as practicable after the Effective Date, each holder of an allowed FNMA EAF Claim shall be satisfied by payment in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class GS-6: Other Secured Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code. On or as soon as practicable after the Effective Date, each holder of an allowed Other Secured Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class GS-7: Junior Secured Notes Claims** | Impaired; entitled to vote on the Plan. The Junior Secured Notes Claims shall be Allowed in the aggregate amount of not less than $2,120,452,000.<br><br>Each holder of a Junior Secured Notes Claim shall receive, in full and final satisfaction of such a Claim and after giving full effect to the terms of the Junior Secured Notes Plan Support Agreement, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code. |
| **Class GS-8: Junior Secured Notes Deficiency Claims** | Impaired; entitled to vote on the Plan. Each holder of an Allowed Junior Secured Notes Deficiency Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the GMACM Unsecured Claims Pool, in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement, unless the holder and applicable Debtor otherwise agree to a different treatment.<br><br>Under no circumstances shall a Junior Secured Noteholder be entitled to receive aggregate distributions in excess of its Allowed Claims. |
| **Class GS-9: Rep and Warranty Contract** | Impaired; entitled to vote on the Plan. Each holder of an Allowed Rep and Warranty Contract Claim shall receive, in |

| Claims | full and final satisfaction of such Claim, an amount equal to its pro rata share of the GMACM Unsecured Claims Pool, unless the holder and applicable Debtor otherwise agree to a different treatment. |
|---|---|
| **Class GS-10: General Unsecured Claims**[2] | Impaired; entitled to vote on the Plan. Each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the GMACM Unsecured Claims Pool, unless the holder and applicable Debtor otherwise agree to a different treatment. |
| **Class GS-11: Intercompany Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Unless the Junior Secured Claims have been paid in full based upon their Secured Claim, Allowed Intercompany Claims shall receive in full satisfaction of such Allowed Intercompany Claims an amount equal to its pro rata share of ResCap Unsecured Claims Pool. |
| **Class GS-12: Section 510(b) Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Section 510(b) Claims shall receive no recovery on account of such claims. |
| **Class GS-13: Equity Interests** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Equity Interests shall receive no recovery on account of such interests. |
| | |
| **II.   RFC DEBTORS** | |
| **Administrative Expense Claims** | Unclassified.   On or as soon as practicable after the Effective Date, each holder of an allowed Administrative Expense Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. |

---

[2]   This Term Sheet assumes that the medium-term unsecured peso-denominated notes maturing in June 2012 issued by the non-Debtor Mexican subsidiary of ResCap and guaranteed by various Debtors will no longer constitute obligations of the Debtors following an exchange offer in Mexico in connection with the pending sale of equity of the subsidiary.

| | |
|---|---|
| **Priority Tax Claims** | Unclassified.  On or as soon as practicable after the Effective Date, each holder of an allowed Priority Tax Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class RS-1:  Other Priority Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, each holder of an allowed Other Priority Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code; provided, that Other Priority Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. |
| **Class RS-2:  AFI Revolver Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Except as otherwise provided under the Ally Settlement Agreement, on or as soon as practicable after the Effective Date, each holder of an allowed AFI Revolver Claim shall be satisfied by payment in full in cash in accordance with, and to the extent modified by the Junior Secured Notes Plan Support Agreement or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class RS-3:  AFI LOC Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Except as otherwise provided under the Ally Settlement Agreement, on or as soon as practicable after the Effective Date, each holder of an allowed AFI LOC Claim shall be satisfied by payment in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **Class RS-4:  Other Secured Claims** | Unimpaired; deemed to accept and not entitled to vote on the Plan pursuant to section 1126(f) of the Bankruptcy Code.  On or as soon as practicable after the Effective Date, each holder of an allowed Other Secured Claim shall be paid in full in cash or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |

| | |
|---|---|
| **Class RS-5:  Junior Secured Notes Claims** | Impaired; entitled to vote on the Plan.  The Junior Secured Notes Claims shall be Allowed in the aggregate amount of not less than $2,120,452,000.<br><br>Each holder of a Junior Secured Notes Claim shall receive, in full and final satisfaction of such a Claim and after giving full effect to the terms of the Junior Secured Notes Plan Support Agreement, treatment consistent with section 1129(b)(2)(A)(ii) of the Bankruptcy Code. |
| **Class RS-6:  Junior Secured Notes Deficiency Claims** | Impaired; entitled to vote on the Plan.  Each holder of an Allowed Junior Secured Notes Deficiency Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the RFC Unsecured Claims Pool in accordance with, and to the extent modified by, the Junior Secured Notes Plan Support Agreement, unless the holder and applicable Debtor otherwise agree to a different treatment.<br><br>Under no circumstances shall a Junior Secured Noteholder be entitled to receive aggregate distributions in excess of its Allowed Claims. |
| **Class RS-7:  Rep and Warranty Contract Claims** | Impaired; entitled to vote on the Plan.  Each holder of an Allowed Rep and Warranty Contract Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the RFC Unsecured Claims Pool, unless the holder and applicable Debtor otherwise agree to a different treatment. |
| **Class RS-8:  General Unsecured Claims** | Impaired; entitled to vote on the Plan.  Each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, an amount equal to its pro rata share of the RFC Unsecured Claims Pool, unless the holder and applicable Debtor otherwise agree to a different treatment. |
| **Class RS-9: Intercompany Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims shall receive no recovery on account of such claims. |
| **Class RS-10:  Section 510(b) Claims** | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Section 510(b) Claims shall receive no recovery on account of such claims. |

| Class RS-11: Equity Interests | Impaired; deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Equity Interests shall receive no recovery on account of such interests. |
|---|---|

**CONDITIONS TO CONFIRMATION & EFFECTIVE DATE:**

| | The Plan shall contain various usual and customary conditions precedent to confirmation and to the Effective Date that must be satisfied or waived.<br><br>Such conditions to the Effective Date shall include, without limitation, the following: |
|---|---|
| | (a) the Plan shall be in form and substance consistent in all material respects with this Term Sheet and satisfactory to the Debtors, Ally and the Consenting Holders;<br><br>(b) all AFI Revolver Claims and AFI LOC Claims, and additional Claims held by Ally, are Allowed in full and approved by the Bankruptcy Court without subordination of any kind unless otherwise agreed by Ally;<br><br>(c) the Bankruptcy Court shall have entered the Confirmation Order, which such order will grant final approval of the Plan, the Asset Sales, the Debtor Releases, the Third Party Releases, and the Ally Settlement Agreement, all in the form and substance satisfactory to the Debtors, Ally and the Consenting Holders;<br><br>(d) the Ally Settlement Agreement shall remain in full force and effect;<br><br>(e) the HFS Asset Purchase Agreement shall be approved by the Bankruptcy Court in form and substance acceptable to the Debtors, the Consenting Holders, and Ally if Ally is the purchaser of such assets;<br><br>(f) the Platform Asset Purchase Agreement shall have been approved by the Bankruptcy Court in form and substance satisfactory to the Debtors and Ally; |

(g)    all material governmental and third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Term Sheet, including the Asset Sales, shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(h)    at no time shall the Bankruptcy Court have approved the appointment of an examiner with expanded powers;

(i)    at no time shall the Bankruptcy Court have approved the appointment of a trustee; and

(j)    no reduction in the value of Petition Date Collateral (as defined in the Junior Notes Plan Support Agreement) due to (i) the successful challenge of the validity of the liens on such Petition Date Collateral or (ii) a determination that any asset or assets that were designated by a Debtor as being Petition Date Collateral do not constitute Joint Collateral (as defined in the Junior Notes Plan Support Agreement), in an aggregate amount (taking into account additional Joint Collateral that was not specified as Petition Date Collateral) for all such assets that exceeds one hundred million dollars ($100,000,000), based on the Debtors' book value as of February 29, 2012.

---

| **DEFINITIVE DOCUMENTS:** | |
| --- | --- |
| | The transactions described in this Plan Term Sheet are subject in all respects to, among other things, definitive documentation, including: |
| | (a)    the Ally Settlement Agreement; |
| | (b)    the Platform Asset Purchase Agreement, in which the Debtors shall, among other things, effectuate the sale to Purchaser of the Debtors' mortgage loan origination and servicing platform, including mortgage servicing rights and servicer advances, |

<table>
<tr><td></td><td>and certain other assets, in exchange for Purchaser's payment of a cash purchase price of approximately $2.3 billion, plus other consideration, including reimbursements for prior expenses and the assumption of certain liabilities as set forth in the Platform Asset Purchase Agreement;</td></tr>
<tr><td></td><td>(c)    the HFS Asset Purchase Agreement, in which the Debtors shall, among other things, effectuate the sale to Ally of the Purchased Assets, as defined in the HFS Asset Purchase Agreement;</td></tr>
<tr><td></td><td>(d)    the Plan, the Disclosure Statement and the documents to be included in the Plan Supplement;</td></tr>
<tr><td></td><td>(e)    the Cash Collateral Order;</td></tr>
<tr><td></td><td>(f)    the DIP Financing Facility;</td></tr>
<tr><td></td><td>(g)    the Subservicing Agreement;</td></tr>
<tr><td></td><td>(h)    the Shared Services Agreement;</td></tr>
<tr><td></td><td>(i)    the GNMA Forward Flow Agreement; and</td></tr>
<tr><td></td><td>(j)    the Transition Services Agreement.</td></tr>
</table>

**RELEASES AND EXCULPATIONS:**

| Releases | The Plan shall contain Debtor and third party releases consistent with the Ally Settlement Agreement. |
| --- | --- |
| | The Order of the Bankruptcy Court confirming the Plan will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, damages, demands, debts, rights, suits, Causes of Action, judgments, or liabilities released pursuant to the Plan. |
| | In addition, the Plan will include a mutual release of all claims between and among Ally and the holders of the Junior Secured Note Claims, which shall be in form and substance reasonably satisfactory to Ally and the Consenting Holders. |
| **Exculpation** | The Debtors, Ally, the Consenting Holders, Trustees for |

| | Trusts that accept the compromise proposed in the RMBS Trust Settlement Agreement in accordance with the terms therein, provided such agreement is approved and continues to be in effect, and their respective Representatives shall neither have, nor incur any liability to any entity for any pre-petition or post-petition act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming, or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other pre-petition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Company; provided, that the foregoing provisions of this exculpation shall have no effect on the liability of any entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan. |
|---|---|
| | |
| **OTHER PRINCIPAL PLAN TERMS:** | |
| | |
| **Executory Contracts and Unexpired Leases** | Executory contracts and unexpired leases shall be rejected by the Debtors unless set forth on a schedule of assumed contracts and leases to be attached to the Platform Asset Purchase Agreement with Purchaser or otherwise assumed or rejected, prior to the Effective Date. |
| **Indemnification of Officers and Directors** | As set forth in the Ally Settlement Agreement. |
| **Compromise and Settlement** | The Plan shall contain customary provisions for the compromise and settlement of Claims stating that, notwithstanding anything in the Plan to the contrary, the allowance, classification, and treatment of allowed Claims and equity interests and their respective distributions take into account and conform to the relative priority and rights of such Claims and interests. |
| **Retention of Jurisdiction** | The Plan shall provide for a broad retention of jurisdiction by the Bankruptcy Court, including for:  (a) resolution of Claims; (b) allowance of compensation and expenses for pre-Effective Date services; (c) resolution of motions, |

| | |
|---|---|
| | adversary proceedings, or other contested matters; (d) entering such orders as necessary to implement or consummate the Plan and any related documents or agreements; (e) enforcement of the Plan Injunction; and (f) other purposes. |
| **Resolution of Disputed Claims** | The Plan shall provide customary terms for the resolution of disputed Claims and any reserves therefore. |
| **Liquidating Trust** | The Plan shall contain customary provisions for the establishment of a Liquidating Trust to administer the assets of the Debtors' Estates on and after the Effective Date in accordance with the Plan. The Liquidating Trust shall be subject to the oversight committee consistent with the provisions of Junior Secured Notes Plan Support Agreement. |
| **Additional Provisions** | The Plan shall contain other provisions customarily found in other similar plans of reorganization. |
| | |
| **DEFINITIONS:** | |
| | "<u>Administrative Expense Claim</u>" means any claim for costs and expenses of administration under section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' estates and operating the businesses of the Debtors; (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 327, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtors' estates under section 1930, chapter 123, of title 28, United States Code. |
| | "<u>AFI</u>" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "<u>AFI LOC</u>" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "<u>AFI LOC Claim</u>" means any Secured Claim of AFI arising under the AFI LOC. |

| | |
|---|---|
| | "AFI Revolver" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "AFI Revolver Claim" means any Secured Claim of AFI arising under the AFI Revolver. |
| | "Allowed" means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is scheduled by the Debtors in their Schedules as neither disputed, contingent nor unliquidated, and as to which the Debtors or other party in interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim that either is not a Disputed Claim or has been Allowed by a Final Order; (c) a Claim that is Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; (d) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been Allowed by a Final Order; (e) a Claim that is Allowed pursuant to the terms of the Plan; or (f) a Disputed Claim as to which a proof of Claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date. |
| | "Ally" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "Ally DIP Financing Facility" means the debtor-in-possession financing facility to be provided to the Debtors, attached hereto as Exhibit 3. |
| | "Ally Settlement Agreement" means the agreement between Ally and the Debtors, attached hereto as Exhibit 5. |
| | "Asset Sales" means, collectively, the sale of the Debtors' servicing platform together with substantially all of the Debtors' owned agency mortgage servicing rights pursuant to the Platform Asset Purchase Agreement, and the sale of certain of Ally's collateral pursuant to the HFS Asset Purchase Agreement. |
| | "Auction" means an auction held in connection with the Asset Sales pursuant to the bidding procedures. |
| | "Bankruptcy Code" means Title 11 of the United States |

| | Code, 11 U.S.C. §§ 101 *et seq.* |
|---|---|
| | "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York. |
| | "Cash Collateral Order" means an order of the Bankruptcy Court authorizing the Debtors to use Ally's cash collateral. |
| | "Causes of Action" means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims, or any other claims, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date. |
| | "Chapter 11 Cases" mean (a) when used with reference to a particular Debtor, the chapter 11 case to be filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases for all of the Debtors. |
| | "Citibank" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "Citibank MSR Facility" means such term as defined in the section entitled "Prepetition Secured Lenders." |
| | "Citibank Secured Lender Claim" means any Secured Claim of Citibank arising under the Citibank MSR Facility. |
| | "Claim" has the meaning set forth in 11 U.S.C. § 101(5). |
| | "Company" means such term as defined in the preamble. |
| | "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code. |
| | "Consummation" means the occurrence of the Effective Date. |

|  | "Creditor" means any holder of a Claim. |
|--|--|
|  | "Debtor" means one of the Debtors, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases. |
|  | "Debtors" means such term as defined in the preamble. |
|  | "DIP Financing Facility" means that certain Debtor-in-Possession Credit Agreement, dated on or around May 14, 2012, by and between the Debtors and Barclays Bank Plc, attached hereto as Exhibit 6. |
|  | "Disclosure Statement" means such term as defined in the section entitled "Initiation of Chapter 11 Cases." |
|  | "DOJ/AG Settlement" means that certain Consent Judgment filed on March 12, 2012 in the United States District Court for the District of Columbia to which ResCap and AFI, among others, are parties. |
|  | "Effective Date" means the date of substantial consummation of the Plan, which shall be the first business day upon which all conditions precedent to the effectiveness of the Plan are satisfied or waived in accordance with the Plan. |
|  | "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 case pursuant to section 541 of the Bankruptcy Code. |
|  | "Equity Interest" means an equity security (as defined in section 101 of the Bankruptcy Code) in any of the Debtors. |
|  | "Fannie Mae" means such term as defined in the section entitled "Prepetition Secured Lenders." |
|  | "FNMA EAF Claim" means any Secured Claim of Fannie Mae arising under the FNMA EAF Facility. |
|  | "FNMA EAF Facility" means such term as defined in the section entitled "Prepetition Secured Lenders." |
|  | "FRB Consent Order" means that certain Consent Order dated April 13, 2011 among ResCap, GMAC Mortgage, |

| | |
|---|---|
| | LLC, AFI, the Federal Reserve Board and the Federal Deposit Insurance Company. |
| | "General Unsecured Claim" means any and all Claims against any of the Debtors that are not a/an (a) Administrative Expense Claim; (b) Priority Tax Claim; (c) Other Priority Claim; (d) Secured Lender Claim; (e) Junior Secured Notes Claim; (f) Other Secured Claim; (g) Senior Unsecured Notes Claim; (h) Junior Secured Notes Deficiency Claim; (i) Rep and Warranty Contract Claim; or (j) Intercompany Claim. |
| | "GMACM Debtors" means such term as defined in the section entitled "Debtors." |
| | "GMACM Unsecured Claims Pool" means the proceeds of any assets allocable to the GMACM Debtors remaining after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Clam, Secured Lender Claim, Junior Secured Notes Claim, or Other Secured Claim against the GMACM Debtors. |
| | "GNMA Forward Flow Agreement" means that Amended and Restated Master Mortgage Loan Purchase and Sale Agreement between Ally Bank as Seller, and GMAC Mortgage, LLC as Purchaser, dated as of May 1, 2012. |
| | "HFS Asset Purchase Agreement" means that certain asset purchase agreement dated on or around May 14 by and between Ally and the Debtors, attached to the Ally Settlement Agreement as Exhibit 5. |
| | "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code. |
| | "Intercompany Claims" means any and all Claims of a Debtor against another Debtor.  For the avoidance of doubt, Intercompany Claims do not include Claims that Ally may assert against the Debtors. |
| | "Intercreditor Agreement" means the agreement dated as of June 6, 2008, among Wells Fargo Bank, N.A., as First Priority Collateral Agent for the First Priority Secured Parties under the First Priority Documents, Wells Fargo Bank, N.A., as Second Priority Collateral Agent for the |

| | |
|---|---|
| | Second Priority Secured Parties under the Second Priority Documents, Wells Fargo Bank, N.A., as Third Priority Collateral Agent for the Third Priority Secured Parties under the Third Priority Documents, Ally, in its capacity as agent for the Lenders under the Loan Agreement, U.S. Bank National Association, as Trustee under the 2010 Indenture, U.S. Bank National Association, as Trustee under the 2015 Indenture, Residential Funding Company, LLC, GMAC Mortgage, LLC, and Residential Capital, LLC. |
| | "Junior Secured Notes" means such term as defined in the section entitled "Junior Secured Noteholders." |
| | "Junior Secured Notes Claim" means any Secured Claim of the Junior Secured Noteholders under the Junior Secured Notes. |
| | "Junior Secured Notes Deficiency Claims" means any Claim of the Junior Secured Noteholders under the Junior Secured Notes to the extent such Claims are not Secured Claims. |
| | "Liquidating Trust" means the trust formed pursuant to the Plan for the purpose of holding, administering, and liquidating Estate assets on and after the Effective Date. |
| | "Other Priority Claim" means any Claim, other than an Administrative Expense Claim or Priority Tax Claim, that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code. |
| | "Other Secured Claim" means any Secured Claim other than Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Secured Lender Claims or Junior Secured Claims. For the avoidance of doubt, Other Secured Claims shall include Claims arising under the Barclays GSAP Facility. |
| | "Petition Date" means such term as defined in the section entitled "Initiation of the Chapter 11 Cases." |
| | "Plan" means such term as defined in the preamble. |
| | "Plan Injunction" means that, from and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner, any Cause of |

| | Action released or to be released pursuant to the Plan or the Confirmation Order. |
| | "Plan Supplement" means, with respect to the Plan, all exhibits, appendices, Plan supplement documents and related documents. |
| | "Plan Support Agreements" means the three plan support agreements to support the Plan among the Debtors and each of (i) Ally and members of the ad hoc committee of unaffiliated holders of the Junior Secured Notes holding at least 50% of all Junior Secured Notes (the "Junior Secured Notes Plan Support Agreement"), (ii) Ally and certain holders of securities backed by mortgage loans sold by the Debtors, and (iii) Ally Financial Inc., respectively. |
| | "Platform Asset Purchase Agreement" means that certain asset purchase agreement dated on or around May 14 by and between Purchaser and the Debtors, attached hereto as Exhibit 4. |
| | "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| | "Reorganization" means such term as defined in the preamble. |
| | "Reorganized Debtors" means, collectively, the Debtors after the Effective Date. |
| | "Representatives" means such person or entity's respective members, partners, equity-holders, officers, directors, employees, representatives, advisors, attorneys, agents and professionals, each solely in its capacity as such. |
| | "ResCap" means such term as defined in the preamble. |
| | "ResCap Debtors" means such term as defined in the section entitled "Debtors." |
| | "ResCap Unsecured Claims Pool" means the proceeds of any assets allocable to the ResCap Debtors remaining after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Clam, Secured Lender Claim, |

| | |
|---|---|
| | Junior Secured Notes Claim, or Other Secured Claim against the GMACM Debtors. |
| | "RFC Debtors" means such term as defined in the section entitled "Debtors." |
| | "RFC Unsecured Claims Pool" means the proceeds of any assets allocable to the RFC Debtors remaining after distributions have been made under the Plan to each holder of an Allowed Administrative Expense Claim, Priority Tax Claim, Other Priority Tax Clam, Secured Lender Claim, Junior Secured Notes Claim, or Other Secured Claim against the RFC Debtors. |
| | "RMBS Trust Settlement Agreement" means the agreement dated as of May 13, 2012 among Residential Capital, LLC and its direct and indirect subsidiaries and certain Institutional Investors, attached hereto as Exhibit 7. |
| | "Section 510(b) Claims" means any Claim arising from rescission of a purchase or sale of security (including any Interest) of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim. |
| | "Secured Claim" means any Claim that is secured by a lien on property in which a Debtor's estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code. |
| | "Secured Lender Claim" means any AFI Revolver Claim, AFI LOC Claim, Citibank Secured Lender Claim, or FNMA EAF Claim. |
| | "Senior Unsecured Claim" means any Claim of the Senior Unsecured Noteholders under the Senior Unsecured Notes. |
| | "Senior Unsecured Notes" means such term as defined in the section entitled "Senior Unsecured Noteholders." |

|  | "Shared Services Agreement" means the agreement between Ally and the Debtors, attached hereto as Exhibit 8. |
|  | "Stalking Horse Bidder" means such term as defined in the section entitled "Purchaser." |
|  | "Subservicing Agreement" means the agreement between Ally Bank and the Debtors, attached hereto as Exhibit 1. |
|  | "Term Sheet" means such term as defined in the preamble. |
|  | "Transition Services Agreement" means the agreement between Ally and the Debtors, attached hereto as Exhibit 9. |
|  | "Trustees" means the indenture trustees for the Trusts. |
|  | "Trusts" means the securitization trusts identified on Exhibit A to the RMBS Trust Settlement Agreement. |
|  | "Unimpaired" means Claims that are not Impaired. |
|  | "Winning Bidder" means the party who submits the winning bid for the purchase of substantially all of the Debtors' assets with an accompanying asset purchase agreement. |

**EXHIBIT 1**
**"Subservicing Agreement"**

12-12020-mg    Doc 2913-3    Filed 06/11/12    Entered 06/11/12 21:44:08    Exhibit 3
Pg 69 of 107

**EXHIBIT 2**
**"GNMA Forward Flow Agreement"**

12-12020-mg    Doc 3183-3    Filed 06/11/12    Entered 06/11/12 21:44:08    Exhibit 3

**<u>EXHIBIT 3</u>**
**"Ally DIP Financing Facility"**

**EXHIBIT 4**
**"Platform Asset Purchase Agreement"**

12-12020-mg    Doc 3018-3  Filed 06/11/12  Entered 06/11/12 21:44:08   Exhibit 5
Pg 72 of 107

# EXHIBIT 5
### "Ally Settlement Agreement"

12-12020-mg    Doc 348-3    Filed 06/11/12    Entered 06/11/12 21:44:08    Exhibit 3
Pg 73 of 107

## EXHIBIT 6
**"Barclays DIP Financing Facility"**

**EXHIBIT 7**
**"RMBS Trust Agreement"**

# EXHIBIT 8
**"Shared Services Agreement"**

12-12020-mg    Doc 3413-3    Filed 06/11/12    Entered 06/11/12 21:44:08    Exhibit 3
Pg 76 of 107

## EXHIBIT 9
**"Transition Services Agreement"**

EXECUTION COPY

# EXHIBIT C

# MILESTONES

The Debtors' failure to comply with the following milestones will result in a Termination Event under Section 6 of this Agreement:

1. Obtain interim approval of debtor-possession financing on or before May 18, 2012.
2. Obtain, final approval of debtor-possession financing on or before 50 days following the Petition Date.
3. Obtain approval of this Agreement by the earlier of (i) 60 days following the Petition Date and (ii) the date on which the Bankruptcy Court enters an order approving the Disclosure Statement.
4. Obtain entry of an order of the Bankruptcy Court approving the compromises contemplated by the RMBS Trust Settlement Agreement on or before 60 days following the Petition Date,
5. Obtain approval the Disclosure Statement on or before 90 days following the Petition Date.
6. Obtain approval of proposed bidding procedures for the sales of assets contemplated in the Executive Summaries on or before 90 days following the Petition Date.
7. Obtain confirmation of the Plan on or before October 31, 2012.
8. On or before December 15, 2012, the effective date of the Plan shall have occurred.

## EXHIBIT D

### LIST OF FIRST DAY MOTIONS

1. Debtors' Motion For Order Under Bankruptcy Rule 1015 Authorizing Joint Administration Of The Debtors' Chapter 11 Cases

2. Debtors' Application For An Order Appointing Kurtzman Carson Consultants LLC As Claims And Noticing Agent For The Debtors Pursuant To 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), S.D.N.Y. LBR 5075-1 And General Order M-409

3. Debtors' Motion For Order Under Bankruptcy Code Section 521 And Bankruptcy Rule 1007(c) Extending Time For Filing Schedules And Statements

4. Debtors' Motion For An Order Under Bankruptcy Code Section 105(a) And Bankruptcy Rule 2002(a), (f), (l) And (m) (I) Waiving The Requirement That Each Debtor File A List Of Creditors, (II) Authorizing The Debtors To File A Consolidated List Of The Fifty Largest Unsecured Creditors, (III) Approving The Form And Manner Of Notice Of The Commencement Of The Debtors' Chapter 11 Cases And (IV) Approving Publication Notice To Borrowers

5. Debtors' Motion For Entry Of An Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 And Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management And Administrative Procedures

6. Debtors' Motion For Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, And 503(b)(1) Authorizing (I) Continued Use Of Existing Cash Management Practices, (II) Continued Use Of Existing Bank Accounts, Checks, And Business Forms, (III) Interim Waiver Of The Investment And Deposit Requirements Of Bankruptcy Code Section 345, (IV) Debtors To Honor Specified Outstanding Prepetition Payment Obligations, And (V) Continuation Of Intercompany Transactions, Including Intercompany Transactions With Future Debtors, And Granting Administrative Expense Status To Intercompany Claims

7. Debtors' Motion For Interim and Final Orders Under Bankruptcy Code Sections 105(a), 363(b), 507(a), 1107 And 1108 And Bankruptcy Rule 6003 (I) Authorizing But Not Directing Debtors To (A) Pay And Honor Prepetition Wages, Compensation, Employee Expense And Employee Benefit Obligations; And (B) Maintain and Continue Employee Compensation And Benefit Programs; And (II) Directing Banks To Honor Prepetition Checks And Transfer Requests For Payment Of Prepetition Employee Obligations

8. Debtors' Motion For Interim And Final Orders Under Bankruptcy Code Sections 105(a), 363, 506(a), 507(a)(8), 541 And 1129 And Bankruptcy Rule 6003 Authorizing Payment Of Taxes And Regulatory Fees

9. Debtors' Motion For Order Under Bankruptcy Code Sections 105, 507 And 541 And Bankruptcy Rule 6003 Authorizing Debtors To Honor Certain Prepetition Obligations To Customers

10. Debtors' Motion For Interim And Final Orders Pursuant To Sections 105(a), 363, 364, 503(b), 1107(a) and 1108 Of The Bankruptcy Code Authorizing The Debtors To (I) Process And Where Applicable Fund Prepetition Mortgage Loan Commitments, (II) Continue Brokerage, Origination And Sale Activities Related To Loan Securitization, (III) Continue To Perform Under The Mortgage Loan Purchase And Sale Agreement With Ally Bank And Related Agreements, (IV) Pay Certain Prepetition Amounts Due To Critical Origination Vendors, And (IV) Continue Honoring Mortgage Loan Repurchase Obligations Arising In Connection With Loan Sales And Servicing, Each In The Ordinary Course Of Business

11. Debtors' Motion For Interim And Final Orders Under Sections 105(a), 361, 362, 363, 1107(a), And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Agency Loans; And (B) Foreclosure Activities Related To Certain Real Estate Owned By Fannie Mae, Freddie Mac, And Ginnie Mae, (II) Authorizing The Debtors To Pay Certain Prepetition Amounts Due To Critical Servicing Vendors And Foreclosure Professionals, (III) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure Proceedings; (IV) Authorizing the Debtors To Use Cash Collateral Under The Fannie Mae EAF Facility; And (V) Granting Related Relief

12. Debtors' Motion For Interim And Final Orders Under Sections 105(a), 362, 363, 1107(a) And 1108 Of The Bankruptcy Code (I) Authorizing The Debtors To Continue In The Ordinary Course Of Business (A) Servicing Private Label Loans, And (B) Sale Activities Related To Certain Loans In Foreclosure And Real Estate Owned Property, And (II) Granting Limited Stay Relief To Enable Borrowers To Assert Related Counter-Claims In Foreclosure and Eviction Proceedings

13. Debtors' Motion For Interim And Final Orders Under Bankruptcy Code Sections 105(a) And 363 Authorizing The Debtors To Continue To Perform Under The Ally Bank Servicing Agreements In The Ordinary Course Of Business

14. Debtors' Motion Seeking Authority To Provide Notice To Borrowers That The Debtors Will Suspend Funding Draws Under Certain Home Equity Lines Of Credit

15. Debtors' Motion For Interim And Final Orders Under 11 U.S.C. §§ 105 And 363 Authorizing Residential Capital, LLC To Enter Into A Shared Services Agreement With Ally Financial Inc. *Nunc Pro Tunc* To The Petition Date For The Continued Receipt And Provision Of Shared Services Necessary For The Operation Of The Debtors' Businesses

16. Debtors' Motion For Entry Of Interim And Final Orders Pursuant To Bankruptcy Code Sections 361, 363, And 507(b) And Bankruptcy Rule 4001(b): (I) Authorizing The Use Of Cash Collateral And Related Relief, (II) Granting Adequate Protection And (III) Scheduling A Final Hearing (Citibank Cash Collateral)

17. Debtors' Motion For Interim And Final Orders Pursuant To Bankruptcy Code Sections 105, 361, 363, And 507(b) And Bankruptcy Rule 4001(b): (I) Authorizing The Use Of Cash Collateral And Related Relief, (II) Granting Adequate Protection And (III) Scheduling A Final Hearing (AFI/Secured Notes Cash Collateral)

18. Debtors' Motion Pursuant to 11 U.S.C.  §§ 105, 363(b), (f), And (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief.

19. Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), And (m) And 365 And 1123, And Fed R. Bankr. P. 2002, 6004, And 6006 For Orders: (a)(i) Authorizing And Approving Sale Procedures, Including Break-up Fee And Expense Reimbursement; (ii) Scheduling Bid Deadline And Sale Hearing; (iii) Approving Form And Manner Of Notice Thereof; And (iv ) Granting Related Relief And (b)(i) Authorizing The Sale Of Certain Assets Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (ii) Authorizing And Approving Asset Purchase Agreements Thereto; (iii) Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases Related Thereto; (iv) Granting Related Relief

**LIST OF SECOND DAY OR POTENTIAL SECOND DAY MOTIONS**

20. Motion To Assume And Assign Certain Executory Contracts And Unexpired Leases In Connection With The Proposed Sale of MSB Business And The Fixing Of Cure Amounts And Procedures Associated Therewith

21. Motion Pursuant To Section 365(a) Of The Bankruptcy Code For Authorization To Reject Executory Contract Between GMAC Mortgage Group, LLC, RESCAP Investments LLC, And Residential Capital, LLC

22. Debtors' Motion For Order Under Bankruptcy Code Sections 105(a) and 107(b) And Bankruptcy Rule 9018 Authorizing The Filing Under Seal of Certain Proposed Debtor In Possession Financing Fee Letters

23. Debtors' Motion For Order Under Bankruptcy Code Sections 105(a) And 107(a) And Bankruptcy Rule 9018 (I) Authorizing The Debtors To File Under Seal Confidentiality Exhibit To The Servicing Motion and (II) Limiting Notice Thereof

24. Debtors' Motion For Order Under Bankruptcy Code Sections 105(a) And 366 (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Service On Account Of Prepetition Invoices, (II) Approving Deposits As Adequate Assurance Of Payment, And (III) Establishing Procedures For Resolving Requests By Utility Companies For Additional Assurance Of Payment

25. Debtors' Application Pursuant To Section 327(a) Of The Bankruptcy Code, Bankruptcy Rules 2014 And 2016 And Local Rules 2014-1 And 2016-1, For Entry Of An Order Authorizing The Retention And Employment Of Morrison & Foerster LLP As Bankruptcy Counsel To The Debtors *Nunc Pro Tunc* To the Petition Date

26. Debtors' Application For Order Under Bankruptcy Code Sections 327(a) And 328(a), Bankruptcy Rule 2014(a) And Local Rule 2014-1 Authorizing The Employment And Retention Of FTI Consulting, Inc. As Financial Advisor *Nunc Pro Tunc* To The Petition Date

27. Debtors' Application For Order Under Bankruptcy Code Sections 327(a) And 328(a) Authorizing Employment And Retention Of Centerview Partners LLC As Investment Banker

28. Debtors' Motion For Order Pursuant to Section 327(a) Of The Bankruptcy Code And Bankruptcy Rule 2014(A) For Authorization To Employ And Retain Sitrick And Company As Corporate Communications Consultant For The Debtors, *Nunc Pro Tunc* To The Petition Date

29. Debtors' Motion For Order Pursuant To Bankruptcy Code Sections 105(a) and 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals

30. Debtors' Motion For Order Under bankruptcy Code Sections 105(a), 327(e), 328, And 330 And Bankruptcy Rule 2014 Authorizing Employment And Payment Of Professionals Utilized In The Ordinary Course Of Business *Nunc Pro Tunc* To The Petition Date

31. Debtors' Motion For An Order Authorizing Payment Of Retention Pay To Certain Employees Pursuant To Sections 105(A), 363(B)(1) And 503(C)(3) Of The Bankruptcy Code

32. Debtors' Motion For An Order Pursuant To Sections 105(a), 363(b)(1) and 503(c)(3) Of The Bankruptcy Code Authorizing (I) Implementation Of (A) A Key Employment Retention Plan For Certain Non-Insiders And (B) A Key Employee

Incentive Plan For Certain Insiders And (II) Payment Of Any Obligations Arising
Thereunder As Administrative Expenses

33. Motion Of The Debtors For An Order Providing That Creditors Committees Are
Not Authorized Or required To Provide Access To Confidential Information Of
The Debtors Or To Privileged Information

34. Plaintiffs' Motion For A Stay Or, In The Alternative, Injunctive Relief Enjoining
Prosecution Of Pending Litigation Against Debtors' Former Directors And
Officers

35. Plaintiffs' Motion For A Stay Or, In The Alternative, Injunctive Relief Enjoining
Prosecution Of Pending Litigation Against Non-Debtor Affiliates

# EXHIBIT E

## JOINDER ACKNOWLEDGEMENT

This joinder (this "Joinder") to the Plan Support Agreement, dated as of May 13, 2012 (the "Agreement"), by and among (i) Residential Capital, LLC ("ResCap") and certain of its direct and indirect subsidiaries (collectively, the "Debtors"), (ii) Ally Financial Inc. on behalf of its direct and indirect subsidiaries other than the Debtors, and (iii) the Consenting Claimants (as defined therein, is made by [_____] (the "Joining Party") and is executed and delivered as of [_____], 2012. Each capitalized term used herein but not otherwise defined shall have the meaning set forth in the Agreement.

1. **Agreement to be Bound**. The Joining Party hereby agrees to be bound by all of the terms of the Agreement, a copy of which is attached to this Joinder as Annex I (as the same has been or may be hereafter amended, restated or otherwise modified from time to time in accordance with the provisions hereof). The Joining Party shall hereafter be deemed to be a "Consenting Claimant" and a "Party" for all purposes under the Agreement.

2. **Representations and Warranties**. The Joining Party hereby represents and warrants that it holds, or is the authorized investment manager for the holders of, the securities listed on the signature page hereto, in the respective amounts set forth therein by CUSIP number, that such holdings are materially accurate as of the date hereof, and that since the date set forth the Joining Party (a) has not, in the aggregate, materially decreased the Joining Party's holdings in the Securities and (b) makes the representations and warranties set forth in Section 3 of the Agreement to each other Party.

3. **Governing Law**. This Joinder shall be governed by and construed in accordance with the internal laws of the State of New York, without regard to any conflicts of law provisions which would require the application of the law of any other jurisdiction.

4. **Notice**. All notices and other communications given or made pursuant to the Agreement shall be sent to:

To the Joining Party at:
[JOINING PARTY]
[ADDRESS]
Attn:
Facsimile: [FAX]
EMAIL:

IN WITNESS WHEREOF, the Joining Party has caused this Joinder to be executed as of the date first written above.

**[JOINING PARTY]**

By: _____

Name:

Title:

Holdings Information (by CUSIP #):

## Exhibit F

### Holdings Information

Consenting Claimant Names

1.    AEGON USA Investment Management LLC

2.    BlackRock Financial Management Inc and its Advisory affiliates

3.    Bayerische Landesbank, acting through its New York Branch

4.    Federal Home Loan Bank of Atlanta

5.    Goldman Sachs Asset Management L.P.

6.    ING Investment Management Co. LLC

7.    ING Investment Management LLC

8.    Kore Advisors, L.P.

9.    Pacific Investment Management Co. LLC

10.   Teachers Insurance and Annuity Association of America

11.   Thrivent Financial for Lutherans

12.   Western Asset Management Company

13.   Neuberger Berman Europe Limited

14.   Maiden Lane LLC and Maiden Lane III LLC by Federal Reserve Bank of New York, as managing member

15.   The TCW Group, Inc.

16.   Metropolitan Life Insurance Company

17.   Cascade Investment L.L.C.

Aggregate Holdings - CUSIP and Amount

| Deal Name | Cusip | SumOfOriginal Face | SumOfCurrent Face |
|-----------|-------|-------------------:|------------------:|
| GMACM 2004-AR1 | 36185NX39 | $59,525,000.00 | $8,175,172.37 |
| GMACM 2004-AR1 | 36185NX54 | $112,473,000.00 | $18,850,721.55 |
| GMACM 2004-AR1 | 36185NX62 | $14,902,800.00 | $779,440.52 |
| GMACM 2004-AR1 | 36185NX70 | $66,361,100.00 | $11,581,008.18 |
| GMACM 2004-AR1 | 36185NX88 | $11,279,800.00 | $1,494,687.97 |
| GMACM 2004-AR1 | 36185NX96 | $0.00 | $0.00 |
| GMACM 2004-AR2 | 36185N3T5 | $600,000.00 | $118,037.31 |
| GMACM 2004-AR2 | 36185N3U2 | $32,000,000.00 | $5,702,662.00 |
| GMACM 2004-AR2 | 36185N3V0 | $25,000,000.00 | $5,517,771.53 |
| GMACM 2004-AR2 | 36185N4A5 | $2,000,000.00 | $441,421.73 |
| GMACM 2004-HE2 | 361856DD6 | $20,085,000.00 | $5,653,540.45 |
| GMACM 2004-HE3 | 361856DG9 | $103,600,000.00 | $32,412,025.20 |
| GMACM 2004-HE4 | 361856DR5 | $1.00 | $0.38 |
| GMACM 2004-HE5 | 361856DX2 | $20,000,000.00 | $9,798,206.17 |
| GMACM 2004-HE5 | 361856DY0 | $7,000,000.00 | $3,139,785.06 |
| GMACM 2004-J1 | 36185NV64 | $2,005,000.00 | $1,286,938.57 |
| GMACM 2004-J1 | 36185NW48 | $6,014,000.00 | $3,426,858.69 |
| GMACM 2004-J1 | 36185NW55 | $2,406,000.00 | $1,370,971.40 |
| GMACM 2004-J3 | 36185N2Z2 | $17,680,250.00 | $12,943,219.33 |
| GMACM 2004-J3 | 36185N3B4 | $10,420,086.00 | $10,420,086.00 |
| GMACM 2004-J3 | 36185N3F5 | $14,008,000.00 | $21,022,980.38 |
| GMACM 2004-J3 | 36185N3G3 | $2,000,000.00 | $884,010.74 |
| GMACM 2004-J4 | 36185N4J6 | $26,000,000.00 | $34,448,182.05 |
| GMACM 2004-J4 | 36185N4K3 | $33,900,000.00 | $51,395,233.90 |
| GMACM 2004-J5 | 36185N5B2 | $11,250,000.00 | $7,263,675.06 |
| GMACM 2004-J5 | 36185N5C0 | $14,500,000.00 | $14,500,000.00 |
| GMACM 2004-JR1 | 36185NS35 | $10,000,000.00 | $8,686,073.08 |
| GMACM 2004-JR1 | 36185NS43 | $28,311,915.00 | $43,238,535.34 |
| GMACM 2004-VF1 | 36186FAA4 | $115,278,998.00 | $18,399,746.32 |
| GMACM 2005-AA1 | 76112BNN6 | $50,000,000.00 | $10,022,410.39 |
| GMACM 2005-AF1 | 36185MAJ1 | $30,935,205.00 | $17,992,750.89 |
| GMACM 2005-AF1 | 36185MAK8 | $58,719,000.00 | $7,860,050.53 |
| GMACM 2005-AF1 | 36185MAN2 | $1,000,000.00 | $1,479,905.60 |
| GMACM 2005-AR1 | 76112BKK5 | $10,000,000.00 | $687,431.34 |
| GMACM 2005-AR1 | 76112BKN9 | $53,559,000.00 | $14,272,877.71 |
| GMACM 2005-AR1 | 76112BKP4 | $16,390,000.00 | $4,684,637.43 |
| GMACM 2005-AR1 | 76112BKQ2 | $277,340.00 | $90,952.47 |
| GMACM 2005-AR1 | 76112BKS8 | $7,796,000.00 | $5,462,481.28 |
| GMACM 2005-AR2 | 36185N6M7 | $2,100,000.00 | $373,455.48 |
| GMACM 2005-AR2 | 36185N6N5 | $1,500,000.00 | $475,829.57 |
| GMACM 2005-AR2 | 36185N6Q8 | $37,293,000.00 | $14,492,493.16 |

| | | | |
|---|---|---|---|
| GMACM 2005-AR3 | 36185N6Y1 | $23,756,000.00 | $3,078,751.10 |
| GMACM 2005-AR3 | 36185N7D6 | $9,516,000.00 | $925,595.37 |
| GMACM 2005-AR3 | 36185N7E4 | $1,000,000.00 | $1,000,000.00 |
| GMACM 2005-AR3 | 36185N7H7 | $50,000,000.00 | $3,690,962.79 |
| GMACM 2005-AR3 | 36185N7L8 | $100,617,387.26 | $33,343,345.49 |
| GMACM 2005-AR3 | 36185N7M6 | $5,000,000.00 | $1,656,937.55 |
| GMACM 2005-AR4 | 76112BUD0 | $14,512,000.00 | $1,717,517.74 |
| GMACM 2005-AR4 | 76112BUG3 | $56,000,000.00 | $20,747,040.06 |
| GMACM 2005-AR4 | 76112BUK4 | $2,592,000.00 | $836,696.62 |
| GMACM 2005-AR4 | 76112BUM0 | $3,933,000.00 | $1,298,661.68 |
| GMACM 2005-AR5 | 76112BYB0 | $600,000.00 | $231,853.88 |
| GMACM 2005-AR5 | 76112BYD6 | $35,000,000.00 | $13,182,471.99 |
| GMACM 2005-AR5 | 76112BYF1 | $5,905,000.00 | $2,475,640.32 |
| GMACM 2005-AR6 | 36185MBG6 | $48,131,000.00 | $15,396,021.72 |
| GMACM 2005-AR6 | 36185MBJ0 | $81,693,026.00 | $30,858,233.47 |
| GMACM 2005-AR6 | 36185MBL5 | $27,986,000.00 | $12,501,009.30 |
| GMACM 2005-AR6 | 36185MBN1 | $44,030,945.00 | $22,277,176.61 |
| GMACM 2005-HE1 | 361856EB9 | $35,100,000.00 | $16,289,231.06 |
| GMACM 2005-HE1 | 361856EC7 | $45,000,000.00 | $20,883,629.47 |
| GMACM 2005-HE2 | 36185MAD4 | $5,000,000.00 | $2,666,379.03 |
| GMACM 2005-HE2 | 36185MAF9 | $44,000,000.00 | $26,323,988.66 |
| GMACM 2005-HE3 | 361856EH6 | $2,500,000.00 | $1,351,643.25 |
| GMACM 2005-J1 | 36185MBY7 | $13,650,000.00 | $2,595,782.18 |
| GMACM 2005-J1 | 36185MCJ9 | $20,000,000.00 | $17,253,639.71 |
| GMACM 2005-J1 | 36185MCL4 | $20,000,000.00 | $18,348,106.59 |
| GMACM 2005-J1 | 36185MCP5 | $24,000,000.00 | $24,000,000.00 |
| GMACM 2006-AR1 | 36185MDN9 | $8,840,000.00 | $3,784,623.44 |
| GMACM 2006-AR1 | 36185MDQ2 | $112,902,000.00 | $47,427,857.23 |
| GMACM 2006-AR2 | 36185MFB3 | $30,697,840.00 | $9,100,819.00 |
| GMACM 2006-HE1 | 361856ER4 | $49,485,000.00 | $21,833,699.68 |
| GMACM 2006-HE2 | 38011AAC8 | $25,150,000.00 | $16,046,139.33 |
| GMACM 2006-HE3 | 38012TAB8 | $8,620,000.00 | $3,248,873.04 |
| GMACM 2006-HE3 | 38012TAC6 | $1,360,000.00 | $787,581.94 |
| GMACM 2006-HE4 | 38012UAA7 | $46,310,000.00 | $21,844,576.85 |
| GMACM 2006-HE4 | 38012UAB5 | $4,100,000.00 | $1,933,983.19 |
| GMACM 2006-HLTV | 36185HEH2 | $9,700,000.00 | $138,887.96 |
| GMACM 2006-HLTV | 36185HEJ8 | $20,500,000.00 | $20,250,000.00 |
| GMACM 2006-J1 | 36185MEB4 | $58,877,000.00 | $10,286,054.12 |
| GMACM 2006-J1 | 36185MEG3 | $15,000,000.00 | $14,127,453.31 |
| GMACM 2007-HE1 | 36186KAB1 | $4,731,000.00 | $770,700.89 |
| GMACM 2007-HE1 | 36186KAD7 | $14,000,000.00 | $14,000,000.00 |

| GMACM 2007-HE2 | 36186LAB9 | $90,000.00 | $54,419.27 |
| GMACM 2007-HE2 | 36186LAG8 | $24,004,000.00 | $14,514,202.75 |
| GMACM 2007-HE3 | 36186MAA9 | $35,735,000.00 | $13,454,365.26 |
| GMACM 2007-HE3 | 36186MAC5 | $36,960,000.00 | $18,812,695.41 |
| RAAC 2004-SP1 | 7609855V9 | $49,812,000.00 | $5,700,976.26 |
| RAAC 2004-SP1 | 7609855Y3 | $2,337,000.00 | $704,462.52 |
| RAAC 2004-SP2 | 7609857N5 | $1,000,000.00 | $55,326.52 |
| RAAC 2004-SP3 | 76112BEN6 | $12,769,000.00 | $12,769,000.00 |
| RAAC 2004-SP3 | 76112BES5 | $30,000,000.00 | $5,442,471.66 |
| RAAC 2005-RP1 | 76112BJR2 | $7,000,000.00 | $7,000,000.00 |
| RAAC 2005-RP2 | 76112BXN5 | $66,360,000.00 | $640,466.76 |
| RAAC 2005-RP3 | 76112BP95 | $4,000,000.00 | $4,000,000.00 |
| RAAC 2005-SP1 | 76112BQL7 | $31,117,000.00 | $27,013,250.19 |
| RAAC 2005-SP1 | 76112BQN3 | $57,000,000.00 | $757,348.91 |
| RAAC 2005-SP1 | 76112BQS2 | $2,180,500.00 | $3,285,426.60 |
| RAAC 2005-SP1 | 76112BRE2 | $323,000.00 | $233,120.85 |
| RAAC 2005-SP1 | 76112BSA9 | $1,500,000.00 | $343,937.96 |
| RAAC 2005-SP2 | 76112BE48 | $13,000,000.00 | $3,365,502.68 |
| RAAC 2005-SP2 | 76112BE71 | $1,551,000.00 | $1,551,000.00 |
| RAAC 2005-SP2 | 76112BF54 | $113,800,000.00 | $23,201,012.00 |
| RAAC 2005-SP2 | 76112BF70 | $4,291,000.00 | $1,579,709.70 |
| RAAC 2005-SP3 | 76112BS43 | $2,600,000.00 | $2,455,539.56 |
| RAAC 2006-RP1 | 76112B2V1 | $2,880,055.00 | $2,880,055.00 |
| RAAC 2006-RP1 | 76112B2W9 | $8,000,000.00 | $8,000,000.00 |
| RAAC 2006-RP1 | 76112B3R9 | $42,483,000.00 | $5,659,607.67 |
| RAAC 2006-RP2 | 74919MAA4 | $132,274,000.00 | $24,870,249.66 |
| RAAC 2006-RP3 | 74919RAA3 | $151,820,000.00 | $37,512,966.12 |
| RAAC 2006-RP3 | 74919RAE5 | $15,000,000.00 | $15,000,000.00 |
| RAAC 2006-RP4 | 74919TAA9 | $105,576,520.00 | $28,972,532.49 |
| RAAC 2006-RP4 | 74919TAB7 | $20,700,000.00 | $20,700,000.00 |
| RAAC 2006-SP1 | 76112B3D0 | $3,200,000.00 | $752,301.25 |
| RAAC 2006-SP2 | 74919PAB5 | $35,409,000.00 | $9,478,791.84 |
| RAAC 2006-SP3 | 74919QAD9 | $4,364,000.00 | $4,364,000.00 |
| RAAC 2006-SP4 | 74919VAH9 | $5,000,000.00 | $5,000,000.00 |
| RAAC 2007-RP1 | 74977YAA7 | $184,091,000.00 | $67,091,939.37 |
| RAAC 2007-RP1 | 74977YAB5 | $11,800,000.00 | $11,800,000.00 |
| RAAC 2007-RP2 | 74919WAA2 | $74,860,000.00 | $25,790,180.45 |
| RAAC 2007-RP2 | 74919WAB0 | $9,800,000.00 | $9,800,000.00 |
| RAAC 2007-RP3 | 74978BAA6 | $60,200,000.00 | $22,780,459.57 |
| RAAC 2007-RP3 | 74978BAB4 | $6,900,000.00 | $6,900,000.00 |
| RAAC 2007-RP3 | 74978FAA7 | $14,400,000.00 | $5,672,315.02 |
| RAAC 2007-RP4 | 74919LAD0 | $35,700,000.00 | $17,303,135.56 |
| RAAC 2007-RP4 | 74919LAE8 | $16,513,000.00 | $16,513,000.00 |

| | | | |
|---|---|---|---|
| RAAC 2007-SP1 | 74978AAC4 | $51,211,000.00 | $51,211,000.00 |
| RAAC 2007-SP2 | 74919XAE2 | $9,900,000.00 | $9,900,000.00 |
| RAAC 2007-SP3 | 74978FAA7 | $117,076,000.00 | $46,117,492.22 |
| RALI 2004-QA1 | 76110HRM3 | $19,000,000.00 | $789,690.45 |
| RALI 2004-QA2 | 76110HVU0 | $25,000,000.00 | $3,499,008.16 |
| RALI 2004-QA3 | 76110HXR5 | $10,657,000.00 | $1,861,483.53 |
| RALI 2004-QA4 | 76110HZH5 | $10,564,000.00 | $1,362,671.05 |
| RALI 2004-QA4 | 76110HZP7 | $6,095,900.00 | $3,326,557.02 |
| RALI 2004-QA4 | 76110HZQ5 | $3,143,400.00 | $1,229,988.93 |
| RALI 2004-QA5 | 76110HC72 | $37,338,000.00 | $2,260,669.39 |
| RALI 2004-QA5 | 76110HC98 | $100,000.00 | $5,188.91 |
| RALI 2004-QA6 | 76110HH28 | $70,320,000.00 | $4,456,586.56 |
| RALI 2004-QA6 | 76110HH85 | $18,350,000.00 | $4,765,681.90 |
| RALI 2004-QR1 | 76110HB57 | $108,346,390.00 | $13,542,294.00 |
| RALI 2004-QS1 | 76110HQF9 | $36,482,573.00 | $3,351,246.65 |
| RALI 2004-QS10 | 76110HWC9 | $50,000,000.00 | $3,696,417.31 |
| RALI 2004-QS10 | 76110HWG0 | $21,200,000.00 | $33,543,864.51 |
| RALI 2004-QS10 | 76110HWK1 | $216,614,427.00 | $54,544,002.09 |
| RALI 2004-QS11 | 76110HWU9 | $40,633,600.00 | $3,411,076.00 |
| RALI 2004-QS11 | 76110HWV7 | $13,000,000.00 | $13,000,000.00 |
| RALI 2004-QS11 | 76110HWW5 | $3,380,000.00 | $283,741.48 |
| RALI 2004-QS11 | 76110HWX3 | $19,000,000.00 | $16,747,700.57 |
| RALI 2004-QS11 | 76110HXC8 | $217,512,005.00 | $56,892,689.34 |
| RALI 2004-QS13 | 76110HYF0 | $3,600,000.00 | $827,786.04 |
| RALI 2004-QS13 | 76110HYH6 | $129,166,655.00 | $28,131,284.43 |
| RALI 2004-QS16 | 76110HJ59 | $121,835,000.00 | $19,351,250.94 |
| RALI 2004-QS16 | 76110HJ91 | $17,500,000.00 | $15,779,390.45 |
| RALI 2004-QS16 | 76110HK24 | $3,200,000.00 | $728,620.56 |
| RALI 2004-QS2 | 76110HQG7 | $38,831,040.00 | $4,380,787.00 |
| RALI 2004-QS2 | 76110HQM4 | $95,777,000.00 | $21,124,010.62 |
| RALI 2004-QS2 | 76110HQS1 | $6,870,000.00 | $5,137,689.94 |
| RALI 2004-QS2 | 76110HQT9 | $3,215,800.00 | $2,510,081.95 |
| RALI 2004-QS3 | 76110HRA9 | $11,800,000.00 | $2,322,241.08 |
| RALI 2004-QS4 | 76110HRV3 | $690,000.00 | $81,890.07 |
| RALI 2004-QS4 | 76110HSA8 | $29,543,500.00 | $5,170,290.87 |
| RALI 2004-QS4 | 76110HSG5 | $7,694,900.00 | $5,699,173.40 |
| RALI 2004-QS4 | 76110HSH3 | $3,686,800.00 | $2,744,461.69 |
| RALI 2004-QS5 | 76110HSR1 | $16,725,000.00 | $2,370,928.64 |
| RALI 2004-QS5 | 76110HSU4 | $12,438,900.00 | $12,438,900.00 |
| RALI 2004-QS5 | 76110HSW0 | $2,805,000.00 | $389,577.36 |
| RALI 2004-QS6 | 76110HTG4 | $2,000,000.00 | $448,522.46 |
| RALI 2004-QS7 | 76110HTV1 | $40,457,000.00 | $2,607,829.90 |
| RALI 2004-QS7 | 76110HTW9 | $15,000,000.00 | $15,000,000.00 |

| RALI 2004-QS7 | 76110HTX7 | $2,000,000.00 | $890,694.16 |
| RALI 2004-QS8 | 76110HUL1 | $150,000.00 | $12,805.31 |
| RALI 2004-QS8 | 76110HUN7 | $9,630,166.00 | $726,675.12 |
| RALI 2004-QS8 | 76110HUR8 | $3,500,000.00 | $5,379,589.02 |
| RALI 2004-QS8 | 76110HUT4 | $25,174,900.00 | $7,265,375.54 |
| RALI 2004-QS9 | 76110HVH9 | $51,542,000.00 | $11,523,385.30 |
| RALI 2005-QA1 | 76110HM63 | $70,000,000.00 | $11,644,941.30 |
| RALI 2005-QA10 | 761118GD4 | $63,450,000.00 | $28,434,595.73 |
| RALI 2005-QA10 | 761118GE2 | $74,247,000.00 | $35,330,729.37 |
| RALI 2005-QA10 | 761118GL6 | $12,077,000.00 | $332,539.02 |
| RALI 2005-QA12 | 761118MY1 | $32,839,000.00 | $10,055,832.86 |
| RALI 2005-QA12 | 761118MZ8 | $24,000,000.00 | $6,139,991.23 |
| RALI 2005-QA12 | 761118NB0 | $24,031,000.00 | $9,296,623.99 |
| RALI 2005-QA12 | 761118NC8 | $4,050,000.00 | $1,592,391.26 |
| RALI 2005-QA13 | 761118PE2 | $197,550,000.00 | $80,522,480.40 |
| RALI 2005-QA13 | 761118PF9 | $375,000.00 | $127,465.58 |
| RALI 2005-QA2 | 76110HT90 | $38,817,000.00 | $12,132,243.89 |
| RALI 2005-QA3 | 76110H2H1 | $84,790,900.00 | $19,011,586.77 |
| RALI 2005-QA3 | 76110H2K4 | $31,402,800.00 | $7,949,443.21 |
| RALI 2005-QA3 | 76110H2L2 | $8,765,600.00 | $2,774,968.65 |
| RALI 2005-QA3 | 76110H2P3 | $17,924,800.00 | $2,937,306.19 |
| RALI 2005-QA4 | 76110H4F3 | $13,225,000.00 | $3,556,000.19 |
| RALI 2005-QA4 | 76110H4G1 | $96,000.00 | $23,602.35 |
| RALI 2005-QA4 | 76110H4K2 | $30,000.00 | $10,084.90 |
| RALI 2005-QA4 | 76110H4L0 | $87,930,000.00 | $33,362,341.52 |
| RALI 2005-QA5 | 76110H5A3 | $44,000,000.00 | $2,530,640.80 |
| RALI 2005-QA5 | 76110H5C9 | $3,859,900.00 | $1,427,833.31 |
| RALI 2005-QA6 | 76110H5Z8 | $3,882,000.00 | $798,192.82 |
| RALI 2005-QA6 | 76110H6E4 | $20,612,560.00 | $4,993,573.00 |
| RALI 2005-QA6 | 76110H6F1 | $230,000.00 | $230,000.00 |
| RALI 2005-QA7 | 76110H7B9 | $84,350,000.00 | $30,476,596.74 |
| RALI 2005-QA7 | 76110H7D5 | $5,000,000.00 | $1,806,555.90 |
| RALI 2005-QA7 | 76110H7J2 | $3,500,000.00 | $373,818.85 |
| RALI 2005-QA8 | 761118BP2 | $101,397,000.00 | $26,691,765.84 |
| RALI 2005-QA8 | 761118BS6 | $54,000,000.00 | $19,664,315.85 |
| RALI 2005-QA8 | 761118BW7 | $10,025,000.00 | $3,443,924.79 |
| RALI 2005-QA9 | 761118FG8 | $27,700,000.00 | $7,774,410.12 |
| RALI 2005-QA9 | 761118FJ2 | $27,000,000.00 | $7,424,605.83 |
| RALI 2005-QA9 | 761118FM5 | $42,390,000.00 | $18,981,051.78 |
| RALI 2005-QO1 | 761118EN4 | $99,400,000.00 | $29,924,469.79 |
| RALI 2005-QO1 | 761118EP9 | $6,330,000.00 | $1,905,653.50 |
| RALI 2005-QO2 | 761118HU5 | $111,860,000.00 | $35,809,815.74 |
| RALI 2005-QO3 | 761118KU1 | $129,849,000.00 | $44,254,225.46 |

| RALI 2005-QO3 | 761118KV9 | $36,156,400.00 | $11,762,228.18 |
| RALI 2005-QO4 | 761118NN4 | $131,410,000.00 | $47,913,396.79 |
| RALI 2005-QO4 | 761118NP9 | $35,953,000.00 | $11,792,949.44 |
| RALI 2005-QO5 | 761118QM3 | $257,979,000.00 | $98,220,567.34 |
| RALI 2005-QS1 | 76110HN88 | $80,000,000.00 | $22,370,403.00 |
| RALI 2005-QS1 | 76110HP45 | $40,410,000.00 | $11,299,850.02 |
| RALI 2005-QS1 | 76110HP78 | $214,597,361.00 | $76,877,951.15 |
| RALI 2005-QS10 | 761118CW6 | $25,000,000.00 | $9,824,052.31 |
| RALI 2005-QS10 | 761118CX4 | $25,000,000.00 | $7,277,629.12 |
| RALI 2005-QS10 | 761118CZ9 | $13,283,000.00 | $10,134,410.76 |
| RALI 2005-QS11 | 761118CE6 | $36,149,700.00 | $32,452,216.90 |
| RALI 2005-QS12 | 761118DN5 | $36,935,205.00 | $20,811,421.27 |
| RALI 2005-QS12 | 761118DR6 | $10,410,000.00 | $9,774,428.07 |
| RALI 2005-QS12 | 761118DU9 | $10,560,000.00 | $594,177.68 |
| RALI 2005-QS13 | 761118GW2 | $41,885,000.00 | $8,871,234.82 |
| RALI 2005-QS13 | 761118GX0 | $1,300,000.00 | $535,461.24 |
| RALI 2005-QS13 | 761118HA9 | $41,935,205.00 | $23,585,238.40 |
| RALI 2005-QS13 | 761118HC5 | $68,400,000.00 | $17,944,983.83 |
| RALI 2005-QS14 | 761118JG4 | $125,510,000.00 | $34,169,004.34 |
| RALI 2005-QS14 | 761118JH2 | $46,530,000.00 | $21,227,525.11 |
| RALI 2005-QS14 | 761118JJ8 | $99,999,999.68 | $36,579,683.96 |
| RALI 2005-QS14 | 761118JQ2 | $484,882,069.00 | $178,984,271.76 |
| RALI 2005-QS15 | 761118KG2 | $66,099,000.00 | $32,667,405.47 |
| RALI 2005-QS15 | 761118KJ6 | $18,861,000.00 | $7,825,497.29 |
| RALI 2005-QS16 | 761118MC9 | $25,450,000.00 | $23,333,695.90 |
| RALI 2005-QS17 | 761118PQ5 | $13,165,000.00 | $11,751,935.12 |
| RALI 2005-QS17 | 761118PS1 | $10,000,000.00 | $8,543,063.86 |
| RALI 2005-QS17 | 761118PU6 | $1,500,000.00 | $293,127.89 |
| RALI 2005-QS17 | 761118PY8 | $103,032,000.00 | $35,783,851.00 |
| RALI 2005-QS17 | 761118PZ5 | $53,366,200.00 | $15,208,445.59 |
| RALI 2005-QS2 | 76110HQ69 | $53,001,600.00 | $14,062,105.00 |
| RALI 2005-QS3 | 76110HX53 | $10,990,200.00 | $9,840,588.13 |
| RALI 2005-QS3 | 76110HX61 | $15,000,000.00 | $2,009,268.73 |
| RALI 2005-QS3 | 76110HX87 | $24,048,000.00 | $22,501,858.82 |
| RALI 2005-QS3 | 76110HY86 | $103,981,675.00 | $27,427,074.84 |
| RALI 2005-QS5 | 76110H2X6 | $81,000,000.00 | $20,210,307.25 |
| RALI 2005-QS5 | 76110H2Z1 | $58,392,577.00 | $14,745,643.72 |
| RALI 2005-QS6 | 76110H5F2 | $118,400,000.00 | $24,716,937.00 |
| RALI 2005-QS6 | 76110H5J4 | $13,083,333.00 | $5,929,652.65 |
| RALI 2005-QS6 | 76110H5L9 | $8,844,000.00 | $8,287,892.76 |
| RALI 2005-QS6 | 76110H5M7 | $250,000.00 | $234,280.10 |
| RALI 2005-QS7 | 761118AA6 | $20,100,000.00 | $4,967,334.76 |
| RALI 2005-QS7 | 761118AE8 | $22,827,000.00 | $21,309,278.84 |

| RALI 2005-QS7 | 761118AH1 | $99,840,000.00 | $38,586,890.82 |
| RALI 2005-QS9 | 761118AV0 | $42,000,000.00 | $9,277,846.07 |
| RALI 2005-QS9 | 761118AZ1 | $12,098,000.00 | $11,225,892.70 |
| RALI 2006-Q10 | 751153AA5 | $19,410,000.00 | $11,084,423.82 |
| RALI 2006-QA1 | 761118SZ2 | $50,000,000.00 | $12,606,050.84 |
| RALI 2006-QA1 | 761118TB4 | $147,482,000.00 | $65,247,325.86 |
| RALI 2006-QA1 | 761118TD0 | $9,800,000.00 | $3,304,827.88 |
| RALI 2006-QA10 | 74922NAA7 | $35,728,269.00 | $13,459,710.78 |
| RALI 2006-QA10 | 74922NAB5 | $91,295,092.00 | $38,214,542.99 |
| RALI 2006-QA2 | 761118TN8 | $25,849,397.00 | $10,099,810.44 |
| RALI 2006-QA2 | 761118TR9 | $25,000,000.00 | $10,435,351.77 |
| RALI 2006-QA2 | 761118TU2 | $27,106,000.00 | $13,682,175.07 |
| RALI 2006-QA3 | 75114RAD7 | $65,500,000.00 | $19,946,268.36 |
| RALI 2006-QA4 | 748939AA3 | $55,340,405.00 | $19,362,187.54 |
| RALI 2006-QA5 | 75115BAA7 | $48,463,281.00 | $17,088,242.50 |
| RALI 2006-QA5 | 75115BAB5 | $100,000,000.00 | $34,840,508.38 |
| RALI 2006-QA6 | 74922MAA9 | $69,181,483.00 | $22,240,617.04 |
| RALI 2006-QA6 | 74922MAB7 | $15,000,000.00 | $5,362,548.77 |
| RALI 2006-QA6 | 74922MAC5 | $6,370,000.00 | $2,277,295.71 |
| RALI 2006-QA7 | 751152AA7 | $122,384,675.00 | $40,803,254.28 |
| RALI 2006-QA8 | 74922QAA0 | $73,678,889.00 | $25,312,045.04 |
| RALI 2006-QA8 | 74922QAB8 | $25,000,000.00 | $9,542,936.62 |
| RALI 2006-QA9 | 75115VAA3 | $27,007,000.00 | $9,931,577.59 |
| RALI 2006-QH1 | 75115GAA6 | $15,000,000.00 | $8,515,112.78 |
| RALI 2006-QO1 | 761118RG5 | $5,400,000.00 | $838,109.67 |
| RALI 2006-QO1 | 761118RJ9 | $78,443,000.00 | $24,013,603.76 |
| RALI 2006-QO1 | 761118RK6 | $10,496,000.00 | $0.03 |
| RALI 2006-QO1 | 761118RM2 | $105,602,000.00 | $51,300,225.35 |
| RALI 2006-QO1 | 761118RN0 | $89,680,800.00 | $29,684,643.50 |
| RALI 2006-QO10 | 751153AA5 | $99,395,000.00 | $56,761,261.83 |
| RALI 2006-QO10 | 751153AB3 | $81,000,000.00 | $41,396,225.42 |
| RALI 2006-QO2 | 761118VY1 | $265,842,000.00 | $94,138,538.93 |
| RALI 2006-QO2 | 761118VZ8 | $99,413,600.00 | $38,595,980.48 |
| RALI 2006-QO3 | 761118WP9 | $164,541,000.00 | $70,431,593.54 |
| RALI 2006-QO3 | 761118WQ7 | $34,747,000.00 | $16,745,355.27 |
| RALI 2006-QO4 | 75114GAC3 | $5,470,000.00 | $2,647,461.19 |
| RALI 2006-QO5 | 75114HAD9 | $66,000,000.00 | $35,286,331.22 |
| RALI 2006-QO5 | 75114HAE7 | $10,800,000.00 | $4,274,581.07 |
| RALI 2006-QO5 | 75114HAH0 | $29,397,000.00 | $7,731,231.07 |
| RALI 2006-QO5 | 75114HAK3 | $11,000,000.00 | $9,974,691.10 |
| RALI 2006-QO6 | 75114NAA2 | $532,153,000.00 | $268,255,921.95 |
| RALI 2006-QO6 | 75114NAB0 | $249,055,000.00 | $127,674,640.47 |
| RALI 2006-QO7 | 751150AA1 | $12,000,000.00 | $7,142,533.74 |

| RALI 2006-QO7 | 751150AD5 | $80,751,000.00 | $48,796,184.34 |
| RALI 2006-QO7 | 751150AH6 | $64,378,000.00 | $46,855,661.04 |
| RALI 2006-QO7 | 751150AJ2 | $37,954,000.00 | $32,438,418.87 |
| RALI 2006-QO8 | 75115FAS9 | $15,000,000.00 | $13,791,616.34 |
| RALI 2006-QO9 | 75114PAA7 | $1,700,000.00 | $0.00 |
| RALI 2006-QO9 | 75114PAC3 | $85,000,000.00 | $79,706,842.10 |
| RALI 2006-QS1 | 761118SB5 | $22,000,000.00 | $5,271,753.67 |
| RALI 2006-QS10 | 751155AN2 | $15,810,666.00 | $6,941,953.19 |
| RALI 2006-QS10 | 751155BE1 | $5,293,385.00 | $2,509,526.92 |
| RALI 2006-QS11 | 75115EAA1 | $75,000,000.00 | $27,080,806.88 |
| RALI 2006-QS11 | 75115EAU7 | $17,284,000.00 | $13,187,758.02 |
| RALI 2006-QS12 | 751151AA9 | $85,000,000.00 | $25,462,526.17 |
| RALI 2006-QS12 | 751151AD3 | $25,177,000.00 | $18,110,058.92 |
| RALI 2006-QS12 | 751151AG6 | $7,000,000.00 | $2,647,360.10 |
| RALI 2006-QS12 | 751151AH4 | $10,300,000.00 | $7,059,103.39 |
| RALI 2006-QS12 | 751151AU5 | $20,000,000.00 | $8,455,282.29 |
| RALI 2006-QS12 | 751151AV3 | $40,744,973.00 | $17,225,512.65 |
| RALI 2006-QS13 | 75115DAA3 | $126,039,000.00 | $54,810,097.54 |
| RALI 2006-QS13 | 75115DAK1 | $3,338,000.00 | $2,543,031.36 |
| RALI 2006-QS14 | 74922GAE4 | $15,384,616.00 | $6,240,381.48 |
| RALI 2006-QS14 | 74922GAK0 | $5,547,285.00 | $3,920,867.58 |
| RALI 2006-QS14 | 74922GAP9 | $75,000,000.00 | $37,600,223.93 |
| RALI 2006-QS15 | 74922YAA3 | $32,000,000.00 | $14,218,626.83 |
| RALI 2006-QS15 | 74922YAD7 | $251,000.00 | $212,376.61 |
| RALI 2006-QS15 | 74922YAE5 | $14,697,000.00 | $10,796,952.80 |
| RALI 2006-QS16 | 74922LAA1 | $155,025,250.00 | $71,509,273.88 |
| RALI 2006-QS16 | 74922LAG8 | $500,000.00 | $210,221.71 |
| RALI 2006-QS17 | 74922SAA6 | $27,500,000.00 | $13,065,317.92 |
| RALI 2006-QS18 | 74922RAC4 | $116,032,000.00 | $42,573,048.93 |
| RALI 2006-QS18 | 74922RAF7 | $50,000,000.00 | $29,161,054.63 |
| RALI 2006-QS18 | 74922RAH3 | $256,013,950.00 | $119,929,539.25 |
| RALI 2006-QS18 | 74922RAM2 | $23,171,000.00 | $10,120,686.65 |
| RALI 2006-QS18 | 74922RAP5 | $2,690,000.00 | $960,359.87 |
| RALI 2006-QS18 | 74922RAR1 | $4,660,000.00 | $1,663,671.74 |
| RALI 2006-QS2 | 761118UL0 | $8,550,000.00 | $5,156,304.28 |
| RALI 2006-QS2 | 761118UQ9 | $29,500,000.00 | $8,330,539.80 |
| RALI 2006-QS2 | 761118UY2 | $100,000,000.00 | $60,908,920.86 |
| RALI 2006-QS2 | 761118VA3 | $106,430,000.00 | $26,481,615.06 |
| RALI 2006-QS3 | 761118XL7 | $88,458,000.00 | $22,276,987.61 |
| RALI 2006-QS4 | 749228AA0 | $25,553,000.00 | $20,021,007.78 |
| RALI 2006-QS4 | 749228AF9 | $10,000,000.00 | $3,081,460.09 |
| RALI 2006-QS4 | 749228AJ1 | $22,950,000.00 | $8,116,379.87 |
| RALI 2006-QS5 | 75114TAC5 | $40,000,000.00 | $23,719,955.70 |

| | | | |
|---|---|---|---|
| RALI 2006-QS5 | 75114TAD3 | $20,000,000.00 | $15,149,622.39 |
| RALI 2006-QS5 | 75114TAE1 | $33,909,000.00 | $25,685,427.28 |
| RALI 2006-QS6 | 74922EAA7 | $80,000,000.00 | $28,624,734.00 |
| RALI 2006-QS6 | 74922EAB5 | $450,000.00 | $147,346.81 |
| RALI 2006-QS6 | 74922EAN9 | $16,669,000.00 | $5,609,641.33 |
| RALI 2006-QS6 | 74922EAQ2 | $3,550,000.00 | $1,779,842.27 |
| RALI 2006-QS7 | 748940AA1 | $139,600,000.00 | $66,316,587.90 |
| RALI 2006-QS7 | 748940AD5 | $19,000,000.00 | $2,229,816.56 |
| RALI 2006-QS8 | 75115AAA9 | $116,485,000.00 | $56,007,745.08 |
| RALI 2006-QS8 | 75115AAB7 | $11,095,000.00 | $8,219,601.67 |
| RALI 2006-QS8 | 75115AAC5 | $26,500,000.00 | $19,632,216.64 |
| RALI 2006-QS8 | 75115AAD3 | $51,255,000.00 | $7,551,577.51 |
| RALI 2006-QS9 | 75115CAA5 | $43,000,000.00 | $7,531,962.67 |
| RALI 2006-QS9 | 75115CAG2 | $10,755,650.00 | $8,440,367.10 |
| RALI 2006-QS9 | 75115CAL1 | $12,000,000.00 | $4,250,967.47 |
| RALI 2007-QA1 | 74923GAA1 | $72,495,000.00 | $25,552,691.63 |
| RALI 2007-QA2 | 74922PAA2 | $40,000,000.00 | $12,631,088.43 |
| RALI 2007-QA2 | 74922PAC8 | $990,054.00 | $396,607.77 |
| RALI 2007-QA4 | 74923YAA2 | $128,000,000.00 | $46,308,406.45 |
| RALI 2007-QA5 | 749236AE5 | $36,360,960.00 | $24,506,067.00 |
| RALI 2007-QH1 | 74922HAA0 | $71,968,000.00 | $44,264,673.62 |
| RALI 2007-QH1 | 74922HAB8 | $17,551,200.00 | $10,795,050.00 |
| RALI 2007-QH2 | 74922JAA6 | $30,079,200.00 | $18,122,445.00 |
| RALI 2007-QH2 | 74922JAB4 | $29,862,600.00 | $17,991,945.01 |
| RALI 2007-QH3 | 74922WAA7 | $112,327,000.00 | $70,667,905.38 |
| RALI 2007-QH4 | 74922TAA4 | $48,200,000.00 | $31,590,638.47 |
| RALI 2007-QH4 | 74922TAB2 | $55,482,400.00 | $36,363,577.04 |
| RALI 2007-QH5 | 75116EAA0 | $30,000,000.00 | $19,360,377.15 |
| RALI 2007-QH5 | 75116EAB8 | $49,048,800.00 | $31,653,442.00 |
| RALI 2007-QH6 | 74922AAA5 | $146,600,000.00 | $96,850,905.58 |
| RALI 2007-QH6 | 74922AAB3 | $56,000,000.00 | $36,996,253.00 |
| RALI 2007-QH7 | 75115LAA5 | $45,957,480.00 | $30,899,122.00 |
| RALI 2007-QH9 | 749241AA3 | $102,885,000.00 | $78,363,668.81 |
| RALI 2007-QO1 | 75115YAA7 | $102,083,000.00 | $59,735,302.14 |
| RALI 2007-QO2 | 75116AAA8 | $88,030,000.00 | $51,729,339.74 |
| RALI 2007-QO2 | 75116AAB6 | $15,110,400.00 | $1,961,764.00 |
| RALI 2007-QO3 | 74923TAA3 | $63,615,000.00 | $38,905,015.60 |
| RALI 2007-QO3 | 74923TAC9 | $8,675,000.00 | $616,980.44 |
| RALI 2007-QO4 | 74923LAA0 | $3,250,000.00 | $1,980,917.06 |
| RALI 2007-QO4 | 74923LAB8 | $53,700,000.00 | $32,730,845.05 |
| RALI 2007-QO4 | 74923LAC6 | $11,325,000.00 | $6,902,734.06 |
| RALI 2007-QO4 | 74923LAD4 | $7,625,000.00 | $1,405,484.34 |
| RALI 2007-QS1 | 74922KAA3 | $15,000,000.00 | $4,871,042.36 |

| RALI 2007-QS1 | 74922KAB1 | $34,499,000.00 | $25,666,406.90 |
| RALI 2007-QS1 | 74922KAD7 | $5,000,000.00 | $3,949,705.88 |
| RALI 2007-QS1 | 74922KAH8 | $143,167,000.00 | $78,897,588.95 |
| RALI 2007-QS10 | 74924DAA7 | $1,385,000.00 | $831,511.26 |
| RALI 2007-QS11 | 74925GAA9 | $1,925,000.00 | $1,060,502.07 |
| RALI 2007-QS2 | 74923CAC6 | $3,200,000.00 | $2,452,121.99 |
| RALI 2007-QS2 | 74923CAD4 | $10,000,000.00 | $5,087,390.51 |
| RALI 2007-QS3 | 75116BAB4 | $240,000,000.00 | $119,345,672.00 |
| RALI 2007-QS3 | 75116BAE8 | $39,000,000.00 | $30,661,109.71 |
| RALI 2007-QS4 | 74923HAE1 | $39,661,000.00 | $20,632,988.04 |
| RALI 2007-QS4 | 74923HAM3 | $39,390,000.00 | $19,192,252.08 |
| RALI 2007-QS4 | 74923HAT8 | $23,203,000.00 | $18,859,618.00 |
| RALI 2007-QS4 | 74923HBA8 | $9,976,000.00 | $3,319,478.46 |
| RALI 2007-QS5 | 74923JAB3 | $100,000,000.00 | $67,741,718.36 |
| RALI 2007-QS5 | 74923JAH0 | $27,630,000.00 | $16,137,872.62 |
| RALI 2007-QS6 | 74923WAK4 | $55,127,000.00 | $29,693,716.77 |
| RALI 2007-QS6 | 75116CAA4 | $143,200,000.00 | $76,856,023.56 |
| RALI 2007-QS6 | 75116CAF3 | $25,213,000.00 | $18,947,451.15 |
| RALI 2007-QS6 | 75116CAM8 | $52,229,464.00 | $34,031,437.58 |
| RALI 2007-QS6 | 75116CBW5 | $20,000,000.00 | $9,250,604.24 |
| RALI 2007-QS6 | 75116CCP9 | $12,000,000.00 | $2,343,699.33 |
| RALI 2007-QS7 | 74923WAD0 | $43,289,000.00 | $35,231,826.19 |
| RALI 2007-QS7 | 74923WAE8 | $47,398,500.00 | $22,308,609.97 |
| RALI 2007-QS8 | 74922UAA1 | $75,345,750.00 | $44,970,920.70 |
| RALI 2007-QS8 | 74922UAB9 | $80,869,000.00 | $48,267,531.82 |
| RALI 2007-QS8 | 74922UAG8 | $149,706,000.00 | $84,999,326.00 |
| RALI 2007-QS8 | 74922UAH6 | $9,000,000.00 | $4,879,220.92 |
| RALI 2007-QS8 | 74922UAK9 | $10,585,000.00 | $5,107,615.58 |
| RALI 2007-QS8 | 74922UAN3 | $3,876,000.00 | $3,266,816.52 |
| RALI 2007-QS9 | 75116FBH1 | $125,543,462.00 | $73,847,619.44 |
| RAMP 2004-RS1 | 760985M73 | $15,620,000.00 | $8,714,738.52 |
| RAMP 2004-RS1 | 760985M81 | $18,787,000.00 | $10,504,735.65 |
| RAMP 2004-RS1 | 760985N49 | $16,250,000.00 | $8,099,314.24 |
| RAMP 2004-RS10 | 76112BDS6 | $10,285,000.00 | $193,886.84 |
| RAMP 2004-RS10 | 76112BDT4 | $7,100,000.00 | $7,100,000.00 |
| RAMP 2004-RS10 | 76112BDV9 | $250,000.00 | $201,745.48 |
| RAMP 2004-RS10 | 76112BED8 | $5,000,000.00 | $4,466,167.04 |
| RAMP 2004-RS11 | 76112BFJ4 | $3,000,000.00 | $1,602,696.08 |
| RAMP 2004-RS11 | 76112BFK1 | $2,000,000.00 | $949,025.56 |
| RAMP 2004-RS12 | 76112BGD6 | $5,000,000.00 | $1,970,412.37 |
| RAMP 2004-RS12 | 76112BGF1 | $2,500,000.00 | $2,500,000.00 |
| RAMP 2004-RS12 | 76112BGG9 | $4,500,000.00 | $4,500,000.00 |
| RAMP 2004-RS2 | 760985Q38 | $37,636,000.00 | $27,858,421.88 |

| RAMP 2004-RS2 | 760985Q46 | $8,000,000.00 | $3,405,596.23 |
| RAMP 2004-RS2 | 760985Q61 | $4,000,000.00 | $2,052,757.42 |
| RAMP 2004-RS2 | 760985Q79 | $1,813,000.00 | $811,954.38 |
| RAMP 2004-RS3 | 760985V32 | $31,030,000.00 | $23,136,930.34 |
| RAMP 2004-RS4 | 7609852X8 | $39,042,000.00 | $27,967,608.06 |
| RAMP 2004-RS4 | 7609852Y6 | $17,000,000.00 | $6,525,918.21 |
| RAMP 2004-RS4 | 7609853J8 | $16,100,000.00 | $8,295,682.31 |
| RAMP 2004-RS5 | 7609854A6 | $35,000,000.00 | $32,700,643.15 |
| RAMP 2004-RS5 | 7609854G3 | $5,000,000.00 | $2,493,091.93 |
| RAMP 2004-RS5 | 7609854H1 | $12,000,000.00 | $3,336,677.45 |
| RAMP 2004-RS5 | 7609854K4 | $5,000,000.00 | $1,323,313.48 |
| RAMP 2004-RS5 | 7609854L2 | $2,500,000.00 | $38,743.75 |
| RAMP 2004-RS6 | 7609855A5 | $498,000.00 | $78,442.97 |
| RAMP 2004-RS6 | 7609855B3 | $9,600,000.00 | $9,600,000.00 |
| RAMP 2004-RS6 | 7609855L1 | $15,000,000.00 | $7,309,699.69 |
| RAMP 2004-RS6 | 7609855M9 | $10,000,000.00 | $2,601,383.85 |
| RAMP 2004-RS7 | 7609857E5 | $7,000,000.00 | $6,974,642.27 |
| RAMP 2004-RS7 | 7609857D7 | $2,500,000.00 | $823,092.17 |
| RAMP 2004-RS7 | 7609857F2 | $2,000,000.00 | $969,387.95 |
| RAMP 2004-RS7 | 7609857K1 | $23,500,000.00 | $5,391,788.00 |
| RAMP 2004-RS8 | 76112BAE0 | $12,558,000.00 | $12,558,000.00 |
| RAMP 2004-RS8 | 76112BAM2 | $15,000,000.00 | $11,845,975.74 |
| RAMP 2004-RS9 | 76112BCG3 | $5,000,000.00 | $4,983,526.53 |
| RAMP 2004-RS9 | 76112BCM0 | $10,000,000.00 | $7,502,690.65 |
| RAMP 2004-RS9 | 76112BCQ1 | $4,200,000.00 | $953,082.87 |
| RAMP 2004-RZ1 | 760985T84 | $8,304,000.00 | $5,611,962.62 |
| RAMP 2004-RZ1 | 760985T92 | $19,533,000.00 | $6,722,418.53 |
| RAMP 2004-RZ1 | 760985U25 | $71,100,000.00 | $7,012,288.47 |
| RAMP 2004-RZ1 | 760985U33 | $2,000,000.00 | $671,187.13 |
| RAMP 2004-RZ1 | 760985U58 | $6,487,000.00 | $2,272,796.22 |
| RAMP 2004-RZ1 | 760985U66 | $2,000,000.00 | $584,166.15 |
| RAMP 2004-RZ2 | 7609854S7 | $7,500,000.00 | $2,706,475.59 |
| RAMP 2004-RZ3 | 76112BAY6 | $6,000,000.00 | $1,437,110.87 |
| RAMP 2004-RZ3 | 76112BAZ3 | $6,500,000.00 | $6,500,000.00 |
| RAMP 2004-RZ3 | 76112BBK5 | $7,125,000.00 | $7,125,000.00 |
| RAMP 2004-RZ4 | 76112BHF0 | $5,000,000.00 | $286,682.17 |
| RAMP 2004-SL1 | 760985W31 | $4,456,000.00 | $324,387.89 |
| RAMP 2004-SL1 | 760985W49 | $12,430,000.00 | $72,000.97 |
| RAMP 2004-SL1 | 760985W56 | $3,800,000.00 | $117,989.18 |
| RAMP 2004-SL1 | 760985W72 | $19,207,000.00 | $4,203,462.56 |
| RAMP 2004-SL1 | 760985W80 | $26,100,000.00 | $2,352,360.99 |
| RAMP 2004-SL1 | 760985W98 | $59,393,000.00 | $4,451,324.10 |
| RAMP 2004-SL1 | 760985X30 | $7,537,000.00 | $4,086,504.89 |

| | | | |
|---|---|---|---|
| RAMP 2004-SL1 | 760985Z53 | $3,913,200.00 | $1,434,146.17 |
| RAMP 2004-SL1 | 760985Z61 | $1,750,000.00 | $641,356.48 |
| RAMP 2004-SL1 | 760985Z79 | $1,206,600.00 | $442,206.18 |
| RAMP 2004-SL2 | 7609856A4 | $37,152,866.00 | $596,695.63 |
| RAMP 2004-SL2 | 7609856D8 | $76,187,665.00 | $12,461,237.03 |
| RAMP 2004-SL2 | 7609856L0 | $10,585,236.00 | $5,865,707.85 |
| RAMP 2004-SL3 | 76112BBP4 | $12,967,000.00 | $442,622.92 |
| RAMP 2004-SL3 | 76112BBQ2 | $76,115,000.00 | $10,383,340.35 |
| RAMP 2004-SL3 | 76112BBR0 | $18,005,000.00 | $2,180,343.75 |
| RAMP 2004-SL3 | 76112BBS8 | $31,380,000.00 | $5,993,322.42 |
| RAMP 2004-SL3 | 76112BBZ2 | $2,449,000.00 | $1,694,219.49 |
| RAMP 2004-SL4 | 76112BGK0 | $9,000,000.00 | $270,565.02 |
| RAMP 2004-SL4 | 76112BGM6 | $16,560,000.00 | $2,199,077.62 |
| RAMP 2004-SL4 | 76112BGP9 | $23,390,000.00 | $5,758,786.10 |
| RAMP 2004-SL4 | 76112BGU8 | $2,065,900.00 | $1,333,007.01 |
| RAMP 2005-EFC1 | 76112BRM4 | $6,000,000.00 | $6,000,000.00 |
| RAMP 2005-EFC1 | 76112BRN2 | $7,000,000.00 | $7,000,000.00 |
| RAMP 2005-EFC1 | 76112BRQ5 | $4,000,000.00 | $4,000,000.00 |
| RAMP 2005-EFC2 | 76112BVP2 | $8,423,000.00 | $1,411,499.91 |
| RAMP 2005-EFC2 | 76112BVQ0 | $1,331,000.00 | $1,331,000.00 |
| RAMP 2005-EFC2 | 76112BVW7 | $2,686,000.00 | $1,446,627.80 |
| RAMP 2005-EFC3 | 76112BYT1 | $9,626,000.00 | $3,911,256.23 |
| RAMP 2005-EFC3 | 76112BYU8 | $10,347,000.00 | $10,347,000.00 |
| RAMP 2005-EFC3 | 76112BYV6 | $4,069,272.00 | $4,069,272.00 |
| RAMP 2005-EFC3 | 76112BYY0 | $6,000,000.00 | $6,000,000.00 |
| RAMP 2005-EFC3 | 76112BZA1 | $2,708,000.00 | $2,708,000.00 |
| RAMP 2005-EFC3 | 76112BZB9 | $4,625,000.00 | $164,013.99 |
| RAMP 2005-EFC4 | 76112BC32 | $53,237,500.00 | $290,553.86 |
| RAMP 2005-EFC4 | 76112BC40 | $7,000,000.00 | $7,000,000.00 |
| RAMP 2005-EFC4 | 76112BC99 | $4,000,000.00 | $4,000,000.00 |
| RAMP 2005-EFC5 | 76112BH29 | $43,812,500.00 | $2,678,499.47 |
| RAMP 2005-EFC5 | 76112BH45 | $1,150,000.00 | $1,150,000.00 |
| RAMP 2005-EFC5 | 76112BH52 | $4,315,000.00 | $4,315,000.00 |
| RAMP 2005-EFC5 | 76112BH60 | $6,000,000.00 | $6,000,000.00 |
| RAMP 2005-EFC5 | 76112BH86 | $5,000,000.00 | $5,000,000.00 |
| RAMP 2005-EFC5 | 76112BH94 | $10,000,000.00 | $10,000,000.00 |
| RAMP 2005-EFC6 | 76112BJ84 | $2,000,000.00 | $110,644.68 |
| RAMP 2005-EFC6 | 76112BK25 | $8,000,000.00 | $8,000,000.00 |
| RAMP 2005-EFC7 | 76112BR69 | $35,000,000.00 | $12,084,337.06 |
| RAMP 2005-NC1 | 76112BQ94 | $62,423,000.00 | $25,177,881.59 |
| RAMP 2005-RS1 | 76112BHW3 | $8,139,000.00 | $2,335,511.15 |
| RAMP 2005-RS1 | 76112BHX1 | $10,000,000.00 | $10,000,000.00 |
| RAMP 2005-RS1 | 76112BHY9 | $4,165,000.00 | $2,546,583.13 |

| RAMP 2005-RS1 | 76112BHZ6 | $2,300,000.00 | $2,167,784.09 |
| RAMP 2005-RS1 | 76112BJB7 | $1,500,000.00 | $594,015.49 |
| RAMP 2005-RS1 | 76112BJG6 | $9,690,000.00 | $5,983,691.73 |
| RAMP 2005-RS1 | 76112BJH4 | $10,000,000.00 | $7,377,835.23 |
| RAMP 2005-RS2 | 76112BKC3 | $390,000.00 | $390,000.00 |
| RAMP 2005-RS2 | 76112BKE9 | $3,938,000.00 | $3,938,000.00 |
| RAMP 2005-RS2 | 76112BKF6 | $3,688,000.00 | $3,603,074.99 |
| RAMP 2005-RS3 | 76112BLH1 | $10,487,000.00 | $10,487,000.00 |
| RAMP 2005-RS3 | 76112BLJ7 | $4,625,000.00 | $4,625,000.00 |
| RAMP 2005-RS3 | 76112BLK4 | $4,906,000.00 | $4,906,000.00 |
| RAMP 2005-RS3 | 76112BLN8 | $2,000,000.00 | $2,000,000.00 |
| RAMP 2005-RS3 | 76112BLP3 | $5,587,000.00 | $5,587,000.00 |
| RAMP 2005-RS4 | 76112BPA2 | $14,660,000.00 | $6,228,978.94 |
| RAMP 2005-RS4 | 76112BPC8 | $5,000,000.00 | $5,000,000.00 |
| RAMP 2005-RS4 | 76112BPE4 | $2,500,000.00 | $2,500,000.00 |
| RAMP 2005-RS4 | 76112BPF1 | $3,000,000.00 | $3,000,000.00 |
| RAMP 2005-RS5 | 76112BPU8 | $20,289,000.00 | $12,169,437.02 |
| RAMP 2005-RS5 | 76112BPX2 | $11,500,000.00 | $11,500,000.00 |
| RAMP 2005-RS5 | 76112BPY0 | $8,750,000.00 | $8,750,000.00 |
| RAMP 2005-RS5 | 76112BPZ7 | $2,500,000.00 | $2,500,000.00 |
| RAMP 2005-RS5 | 76112BQA1 | $2,500,000.00 | $2,500,000.00 |
| RAMP 2005-RS6 | 76112BTS9 | $4,300,000.00 | $4,300,000.00 |
| RAMP 2005-RS6 | 76112BTU4 | $944,044.00 | $944,044.00 |
| RAMP 2005-RS7 | 76112BWU0 | $2,000,000.00 | $15,006.49 |
| RAMP 2005-RS7 | 76112BWV8 | $40,000,000.00 | $40,000,000.00 |
| RAMP 2005-RS8 | 76112BZF0 | $178,300,000.00 | $18,079,197.61 |
| RAMP 2005-RS8 | 76112BZK9 | $10,000,000.00 | $10,000,000.00 |
| RAMP 2005-RS8 | 76112BZL7 | $3,983,000.00 | $3,983,000.00 |
| RAMP 2005-RS8 | 76112BZM5 | $3,650,000.00 | $3,333,200.24 |
| RAMP 2005-RS9 | 76112BL81 | $10,000,000.00 | $8,144,162.23 |
| RAMP 2005-RZ3 | 76112BA42 | $7,350,000.00 | $7,350,000.00 |
| RAMP 2005-RZ3 | 76112BZY9 | $7,026,430.00 | $950,568.84 |
| RAMP 2005-RZ3 | 76112BZZ6 | $5,613,000.00 | $5,613,000.00 |
| RAMP 2005-RZ4 | 76112BM72 | $26,754,000.00 | $5,856,793.31 |
| RAMP 2005-SL1 | 76112BMM9 | $2,475,000.00 | $166,513.03 |
| RAMP 2005-SL1 | 76112BMQ0 | $34,244,200.00 | $5,363,872.76 |
| RAMP 2005-SL1 | 76112BMR8 | $19,354,700.00 | $3,673,290.70 |
| RAMP 2005-SL1 | 76112BMS6 | $76,216,000.00 | $20,669,574.90 |
| RAMP 2005-SL1 | 76112BMX5 | $4,076,800.00 | $2,888,121.24 |
| RAMP 2005-SL1 | 76112BMY3 | $3,520,100.00 | $1,920,074.18 |
| RAMP 2005-SL2 | 76112BUV0 | $7,000,000.00 | $303,221.92 |
| RAMP 2005-SL2 | 76112BUW8 | $24,780,000.00 | $4,107,671.07 |
| RAMP 2005-SL2 | 76112BUX6 | $7,350,000.00 | $1,926,493.93 |

| | | | |
|---|---|---|---|
| RAMP 2005-SL2 | 76112BUY4 | $2,519,000.00 | $657,614.11 |
| RAMP 2005-SL2 | 76112BUZ1 | $22,145,000.00 | $6,373,354.89 |
| RAMP 2005-SL2 | 76112BVB3 | $1,390,306.00 | $184,320.85 |
| RAMP 2005-SL2 | 76112BVE7 | $3,802,100.00 | $2,445,045.16 |
| RAMP 2005-SL2 | 76112BVF4 | $3,039,400.00 | $1,963,527.92 |
| RAMP 2006-EFC2 | 749238AB7 | $28,640,000.00 | $1,517,991.00 |
| RAMP 2006-NC1 | 76112BW97 | $132,750,000.00 | $26,358,652.87 |
| RAMP 2006-NC1 | 76112BX21 | $16,044,500.00 | $16,044,500.00 |
| RAMP 2006-NC2 | 75156TAB6 | $50,000,000.00 | $15,475,963.70 |
| RAMP 2006-NC2 | 75156TAC4 | $4,000,000.00 | $4,000,000.00 |
| RAMP 2006-NC2 | 75156TAD2 | $4,720,000.00 | $4,720,000.00 |
| RAMP 2006-NC2 | 75156TAE0 | $4,180,000.00 | $4,180,000.00 |
| RAMP 2006-NC2 | 75156TAF7 | $3,000,000.00 | $1,661,418.67 |
| RAMP 2006-NC3 | 76112B4M9 | $67,650,000.00 | $24,337,082.03 |
| RAMP 2006-RS1 | 76112BT83 | $142,400,000.00 | $40,984,787.83 |
| RAMP 2006-RS1 | 76112BU32 | $10,000,000.00 | $9,480,809.20 |
| RAMP 2006-RS2 | 76112B2C3 | $214,820,000.00 | $58,010,800.41 |
| RAMP 2006-RS2 | 76112B2E9 | $4,400,000.00 | $4,400,000.00 |
| RAMP 2006-RS2 | 76112B2F6 | $3,800,000.00 | $2,623,297.82 |
| RAMP 2006-RS3 | 75156VAC9 | $75,000,000.00 | $46,815,957.76 |
| RAMP 2006-RS4 | 75156WAC7 | $114,300,000.00 | $78,293,576.05 |
| RAMP 2006-RS4 | 75156WAD5 | $34,312,810.00 | $34,312,810.00 |
| RAMP 2006-RS4 | 75156WAF0 | $10,000,000.00 | $8,272,962.37 |
| RAMP 2006-RS5 | 75156YAC3 | $60,000,000.00 | $33,902,496.85 |
| RAMP 2006-RS6 | 75156QAC0 | $29,896,749.00 | $23,103,490.41 |
| RAMP 2006-RS6 | 75156QAD8 | $30,000,000.00 | $24,735,661.96 |
| RAMP 2006-RZ1 | 76112BY87 | $66,402,000.00 | $9,462,919.04 |
| RAMP 2006-RZ1 | 76112BZ78 | $4,000,000.00 | $1,457,622.54 |
| RAMP 2006-RZ2 | 75156UAB3 | $30,044,000.00 | $11,208,239.22 |
| RAMP 2006-RZ3 | 75156MAB1 | $73,066,000.00 | $37,281,085.61 |
| RAMP 2006-RZ3 | 75156MAD7 | $12,000,000.00 | $12,000,000.00 |
| RAMP 2006-RZ3 | 75156MAE5 | $2,000,000.00 | $2,000,000.00 |
| RAMP 2006-RZ3 | 75156MAF2 | $7,000,000.00 | $1,654,046.15 |
| RAMP 2006-RZ4 | 75156XAB7 | $190,256,318.55 | $107,160,858.53 |
| RAMP 2006-RZ4 | 75156XAE1 | $5,950,000.00 | $5,950,000.00 |
| RAMP 2006-RZ5 | 749239AD1 | $6,400,000.00 | $4,341,988.16 |
| RAMP 2007-RS1 | 74923RAC3 | $124,951,000.00 | $122,382,552.82 |
| RAMP 2007-RS1 | 74923RAD1 | $52,287,000.00 | $52,287,000.00 |
| RAMP 2007-RS2 | 75157DAA2 | $92,422,000.00 | $1,357,531.55 |
| RAMP 2007-RS2 | 75157DAB0 | $11,000,000.00 | $11,000,000.00 |
| RAMP 2007-RZ1 | 74923PAB9 | $645,000.00 | $568,928.73 |
| RASC 2004-KS1 | 74924PAE2 | $5,600,000.00 | $5,600,000.00 |
| RASC 2004-KS1 | 74924PAH5 | $1,200,000.00 | $432,225.48 |

| RASC 2004-KS1 | 74924PAJ1 | $5,600,000.00 | $2,170,170.60 |
| RASC 2004-KS1 | 74924PAM4 | $15,000,000.00 | $5,688,468.09 |
| RASC 2004-KS1 | 74924PAN2 | $250,000.00 | $27,172.46 |
| RASC 2004-KS10 | 76110WF84 | $13,614,000.00 | $10,272,334.60 |
| RASC 2004-KS10 | 76110WG26 | $9,000,000.00 | $248,459.26 |
| RASC 2004-KS10 | 76110WG34 | $7,000,000.00 | $4,282,973.02 |
| RASC 2004-KS12 | 76110WK88 | $5,180,000.00 | $3,701,602.32 |
| RASC 2004-KS2 | 76110WWE2 | $2,500,000.00 | $497,509.89 |
| RASC 2004-KS2 | 76110WWF9 | $7,500,000.00 | $7,500,000.00 |
| RASC 2004-KS2 | 76110WWG7 | $4,650,000.00 | $2,488,695.18 |
| RASC 2004-KS2 | 76110WWH5 | $4,000,000.00 | $1,646,616.79 |
| RASC 2004-KS2 | 76110WWJ1 | $5,375,000.00 | $2,221,100.75 |
| RASC 2004-KS2 | 76110WWK8 | $4,925,000.00 | $2,035,147.86 |
| RASC 2004-KS2 | 76110WWN2 | $5,000,000.00 | $1,910,537.87 |
| RASC 2004-KS2 | 76110WWP7 | $5,000,000.00 | $640,050.65 |
| RASC 2004-KS2 | 76110WWQ5 | $4,000,000.00 | $485,550.23 |
| RASC 2004-KS3 | 76110WWX0 | $1,150,000.00 | $263,332.71 |
| RASC 2004-KS3 | 76110WWY8 | $8,750,000.00 | $8,750,000.00 |
| RASC 2004-KS3 | 76110WXF8 | $8,375,000.00 | $4,453,747.86 |
| RASC 2004-KS3 | 76110WXG6 | $10,000,000.00 | $1,261,444.30 |
| RASC 2004-KS3 | 76110WXH4 | $4,000,000.00 | $684,922.67 |
| RASC 2004-KS4 | 76110WXR2 | $9,700,000.00 | $9,700,000.00 |
| RASC 2004-KS5 | 76110WYC4 | $3,000,000.00 | $1,206,793.58 |
| RASC 2004-KS5 | 76110WYD2 | $6,500,000.00 | $6,500,000.00 |
| RASC 2004-KS5 | 76110WYF7 | $8,500,000.00 | $4,163,788.62 |
| RASC 2004-KS5 | 76110WYG5 | $6,000,000.00 | $2,950,022.79 |
| RASC 2004-KS5 | 76110WYM2 | $22,000,000.00 | $13,257,445.50 |
| RASC 2004-KS5 | 76110WYN0 | $10,000,000.00 | $1,839,241.73 |
| RASC 2004-KS5 | 76110WYP5 | $14,500,000.00 | $865,310.17 |
| RASC 2004-KS6 | 76110WZN9 | $6,617,000.00 | $6,617,000.00 |
| RASC 2004-KS6 | 76110WZP4 | $3,000,000.00 | $1,638,231.02 |
| RASC 2004-KS6 | 76110WZU3 | $3,750,000.00 | $1,977,420.69 |
| RASC 2004-KS6 | 76110WZV1 | $2,750,000.00 | $1,855,137.45 |
| RASC 2004-KS6 | 76110WZX7 | $30,000,000.00 | $17,747,971.60 |
| RASC 2004-KS6 | 76110WZY5 | $10,000,000.00 | $2,074,463.58 |
| RASC 2004-KS8 | 76110WC79 | $3,000,000.00 | $1,522,638.57 |
| RASC 2004-KS8 | 76110WC95 | $2,300,000.00 | $1,461,157.45 |
| RASC 2004-KS8 | 76110WD52 | $3,700,000.00 | $2,100,986.84 |
| RASC 2004-KS9 | 76110WE51 | $9,000,000.00 | $2,798,705.96 |
| RASC 2004-KS9 | 76110WE69 | $11,000,000.00 | $11,000,000.00 |
| RASC 2004-KS9 | 76110WF35 | $55,700,000.00 | $3,580,968.41 |
| RASC 2005-AHL1 | 76110W4D5 | $16,500,000.00 | $225,410.86 |
| RASC 2005-AHL1 | 76110W4E3 | $3,000,000.00 | $3,000,000.00 |

| RASC 2005-AHL1 | 76110W4G8 | $3,564,000.00 | $3,564,000.00 |
|---|---|---|---|
| RASC 2005-AHL1 | 76110W4J2 | $500,000.00 | $500,000.00 |
| RASC 2005-AHL1 | 76110W4K9 | $2,112,000.00 | $1,073,321.57 |
| RASC 2005-AHL2 | 76110W5J1 | $2,200,000.00 | $2,200,000.00 |
| RASC 2005-AHL2 | 76110W5K8 | $1,500,000.00 | $1,500,000.00 |
| RASC 2005-AHL3 | 76110W6L5 | $49,000,000.00 | $8,762,120.45 |
| RASC 2005-EMX1 | 76110WQ66 | $7,500,000.00 | $2,441,957.10 |
| RASC 2005-EMX2 | 76110W2G0 | $8,274,837.00 | $8,274,837.00 |
| RASC 2005-EMX2 | 76110W2J4 | $6,839,000.00 | $6,839,000.00 |
| RASC 2005-EMX3 | 75405MAF1 | $1,000,000.00 | $978,212.49 |
| RASC 2005-EMX3 | 75405MAK0 | $5,000,000.00 | $5,000,000.00 |
| RASC 2005-EMX4 | 76110W5X0 | $24,140,000.00 | $608,980.59 |
| RASC 2005-EMX4 | 76110W6E1 | $10,000,000.00 | $8,958,505.52 |
| RASC 2005-KS1 | 76110WM37 | $12,350,000.00 | $10,255,314.10 |
| RASC 2005-KS10 | 75405WAB8 | $5,000,000.00 | $335,253.03 |
| RASC 2005-KS10 | 75405WAC6 | $12,372,000.00 | $12,372,000.00 |
| RASC 2005-KS10 | 75405WAE2 | $5,160,000.00 | $5,160,000.00 |
| RASC 2005-KS10 | 75405WAF9 | $6,500,000.00 | $6,500,000.00 |
| RASC 2005-KS10 | 75405WAG7 | $4,000,000.00 | $4,000,000.00 |
| RASC 2005-KS10 | 75405WAH5 | $6,500,000.00 | $6,500,000.00 |
| RASC 2005-KS10 | 75405WAJ1 | $5,000,000.00 | $4,260,613.89 |
| RASC 2005-KS11 | 76110W7A8 | $23,969,000.00 | $518,815.34 |
| RASC 2005-KS11 | 76110W7D2 | $7,000,000.00 | $7,000,000.00 |
| RASC 2005-KS11 | 76110W7E0 | $5,750,000.00 | $5,750,000.00 |
| RASC 2005-KS12 | 753910AB4 | $167,090,000.00 | $21,262,557.03 |
| RASC 2005-KS12 | 753910AC2 | $5,087,000.00 | $5,087,000.00 |
| RASC 2005-KS12 | 753910AD0 | $5,535,000.00 | $5,535,000.00 |
| RASC 2005-KS2 | 76110WN69 | $10,000,000.00 | $8,517,521.32 |
| RASC 2005-KS3 | 76110WS31 | $3,000,000.00 | $2,774,174.72 |
| RASC 2005-KS3 | 76110WS72 | $1,600,000.00 | $1,107,505.79 |
| RASC 2005-KS3 | 76110WS98 | $1,000,000.00 | $215,051.64 |
| RASC 2005-KS4 | 76110WU61 | $11,427,000.00 | $8,646,818.79 |
| RASC 2005-KS4 | 76110WU87 | $500,000.00 | $500,000.00 |
| RASC 2005-KS4 | 76110WV37 | $1,000,000.00 | $81,229.91 |
| RASC 2005-KS5 | 76110WW69 | $5,406,000.00 | $2,619,680.96 |
| RASC 2005-KS5 | 76110WW77 | $2,762,000.00 | $2,762,000.00 |
| RASC 2005-KS5 | 76110WX35 | $1,811,000.00 | $1,811,000.00 |
| RASC 2005-KS5 | 76110WX43 | $2,198,000.00 | $2,198,000.00 |
| RASC 2005-KS5 | 76110WX50 | $1,702,000.00 | $778,032.96 |
| RASC 2005-KS6 | 76110WY67 | $3,292,000.00 | $1,349,242.59 |
| RASC 2005-KS6 | 76110WY75 | $4,000,000.00 | $4,000,000.00 |
| RASC 2005-KS6 | 76110WY83 | $1,750,000.00 | $1,750,000.00 |
| RASC 2005-KS6 | 76110WY91 | $2,500,000.00 | $2,500,000.00 |

| RASC 2005-KS6 | 76110WZ25 | $3,500,000.00 | $3,500,000.00 |
|---|---|---|---|
| RASC 2005-KS7 | 76110W2V7 | $10,000,000.00 | $0.00 |
| RASC 2005-KS7 | 76110W2X3 | $3,402,000.00 | $3,168,683.66 |
| RASC 2005-KS7 | 76110W2Y1 | $1,202,000.00 | $1,202,000.00 |
| RASC 2005-KS7 | 76110W2Z8 | $4,001,000.00 | $4,001,000.00 |
| RASC 2005-KS7 | 76110W3B0 | $2,000,000.00 | $2,000,000.00 |
| RASC 2005-KS7 | 76110W3C8 | $4,000,000.00 | $4,000,000.00 |
| RASC 2005-KS8 | 76110W3S3 | $5,500,000.00 | $5,500,000.00 |
| RASC 2005-KS8 | 76110W3T1 | $7,000,000.00 | $7,000,000.00 |
| RASC 2005-KS8 | 76110W3U8 | $3,500,000.00 | $3,500,000.00 |
| RASC 2005-KS8 | 76110W3X2 | $5,900,000.00 | $5,900,000.00 |
| RASC 2005-KS9 | 754058AB1 | $28,000,000.00 | $0.00 |
| RASC 2005-KS9 | 754058AF2 | $1,779,941.00 | $1,779,941.00 |
| RASC 2005-KS9 | 754058AG0 | $3,000,000.00 | $3,000,000.00 |
| RASC 2005-KS9 | 754058AL9 | $3,250,000.00 | $3,250,000.00 |
| RASC 2006-EMX1 | 75405KAB4 | $8,400,000.00 | $1,118,039.34 |
| RASC 2006-EMX1 | 75405KAF5 | $3,020,000.00 | $3,020,000.00 |
| RASC 2006-EMX2 | 75406AAB5 | $60,139,000.00 | $13,559,341.24 |
| RASC 2006-EMX2 | 75406AAC3 | $16,596,000.00 | $16,596,000.00 |
| RASC 2006-EMX3 | 76113ABZ3 | $240,966,000.00 | $81,498,726.85 |
| RASC 2006-EMX4 | 75406DAC7 | $50,000,000.00 | $35,660,535.05 |
| RASC 2006-EMX5 | 74924QAC4 | $50,000,000.00 | $40,627,360.38 |
| RASC 2006-EMX6 | 754065AC4 | $22,070,000.00 | $21,903,194.98 |
| RASC 2006-EMX7 | 74924TAC8 | $49,437,000.00 | $49,437,000.00 |
| RASC 2006-EMX8 | 74924UAB7 | $62,403,000.00 | $15,957,746.09 |
| RASC 2006-EMX8 | 74924UAC5 | $41,325,000.00 | $41,325,000.00 |
| RASC 2006-EMX9 | 74924VAC3 | $19,350,000.00 | $19,350,000.00 |
| RASC 2006-EMX9 | 74924VAD1 | $10,000,000.00 | $10,000,000.00 |
| RASC 2006-KS1 | 76113AAE1 | $66,000,000.00 | $15,482,646.26 |
| RASC 2006-KS1 | 76113AAF8 | $26,783,000.00 | $26,783,000.00 |
| RASC 2006-KS1 | 76113AAG6 | $10,000,000.00 | $10,000,000.00 |
| RASC 2006-KS1 | 76113AAH4 | $5,000,000.00 | $5,000,000.00 |
| RASC 2006-KS2 | 75406BAC1 | $35,996,000.00 | $8,724,635.75 |
| RASC 2006-KS2 | 75406BAE7 | $14,230,000.00 | $14,230,000.00 |
| RASC 2006-KS2 | 75406BAF4 | $14,500,000.00 | $14,500,000.00 |
| RASC 2006-KS2 | 75406BAG2 | $7,000,000.00 | $7,000,000.00 |
| RASC 2006-KS2 | 75406BAJ6 | $2,500,000.00 | $743,081.43 |
| RASC 2006-KS3 | 76113ABH3 | $25,860,000.00 | $7,629,300.26 |
| RASC 2006-KS3 | 76113ABJ9 | $13,000,000.00 | $13,000,000.00 |
| RASC 2006-KS3 | 76113ABL4 | $12,700,000.00 | $12,700,000.00 |
| RASC 2006-KS3 | 76113ABM2 | $7,500,000.00 | $7,500,000.00 |
| RASC 2006-KS4 | 75406EAC5 | $32,000,000.00 | $17,265,755.42 |
| RASC 2006-KS4 | 75406EAD3 | $17,038,000.00 | $17,038,000.00 |

| RASC 2006-KS5 | 75406VAC7 | $84,000,000.00 | $68,431,902.21 |
| RASC 2006-KS5 | 75406VAD5 | $26,928,000.00 | $26,928,000.00 |
| RASC 2006-KS5 | 75406VAE3 | $12,300,000.00 | $12,300,000.00 |
| RASC 2006-KS6 | 75406WAC5 | $26,634,000.00 | $22,274,404.60 |
| RASC 2006-KS6 | 75406WAF8 | $2,000,000.00 | $2,000,000.00 |
| RASC 2006-KS6 | 75406WAG6 | $3,887,000.00 | $2,614,595.26 |
| RASC 2006-KS7 | 75406XAC3 | $44,647,000.00 | $38,240,894.29 |
| RASC 2006-KS8 | 74924RAC2 | $83,565,000.00 | $83,565,000.00 |
| RASC 2006-KS9 | 75406YAB3 | $15,000,000.00 | $5,748,734.94 |
| RASC 2006-KS9 | 75406YAC1 | $20,000,000.00 | $20,000,000.00 |
| RASC 2007-KS1 | 74924SAC0 | $13,600,000.00 | $13,600,000.00 |
| RASC 2007-KS1 | 74924SAF3 | $2,200,000.00 | $1,165,088.05 |
| RASC 2007-KS2 | 74924WAB3 | $2,500,000.00 | $2,053,337.73 |
| RASC 2007-KS2 | 74924WAC1 | $20,515,000.00 | $20,515,000.00 |
| RASC 2007-KS3 | 74924YAB9 | $50,082,000.00 | $46,323,949.39 |
| RASC 2007-KS3 | 74924YAC7 | $59,000,000.00 | $59,000,000.00 |
| RASC 2007-KS4 | 74924NAA5 | $50,210,000.00 | $1,632,885.32 |
| RASC 2007-KS4 | 74924NAB3 | $17,500,000.00 | $17,500,000.00 |
| RASC 2007-KS4 | 74924NAF4 | $800,000.00 | $595,300.37 |
| RFMS2 2004-HI1 | 76110VPR3 | $12,774,000.00 | $5,375,864.86 |
| RFMS2 2004-HI1 | 76110VPS1 | $2,000,000.00 | $431,477.93 |
| RFMS2 2004-HI1 | 76110VPT9 | $6,615,000.00 | $1,456,111.01 |
| RFMS2 2004-HI1 | 76110VPU6 | $3,400,000.00 | $751,602.81 |
| RFMS2 2004-HI1 | 76110VPV4 | $2,350,000.00 | $519,490.16 |
| RFMS2 2004-HI1 | 76110VPW2 | $1,125,000.00 | $248,692.11 |
| RFMS2 2004-HI2 | 76110VQS0 | $20,161,000.00 | $9,843,248.50 |
| RFMS2 2004-HS1 | 76110VQC5 | $15,000,000.00 | $3,704,850.20 |
| RFMS2 2004-HS2 | 76110VQJ0 | $10,000,000.00 | $1,279,156.28 |
| RFMS2 2004-HS2 | 76110VQM3 | $89,000,000.00 | $4,891,352.74 |
| RFMS2 2005-HI1 | 76110VRD2 | $8,000,000.00 | $5,222,408.91 |
| RFMS2 2005-HI2 | 76110VRJ9 | $10,154,000.00 | $9,898,144.21 |
| RFMS2 2005-HI2 | 76110VRK6 | $1,000,000.00 | $462,390.21 |
| RFMS2 2005-HI3 | 76110VSF6 | $2,325,000.00 | $2,325,000.00 |
| RFMS2 2005-HI3 | 76110VSG4 | $12,425,000.00 | $12,425,000.00 |
| RFMS2 2005-HS1 | 76110VRX8 | $75,000.00 | $75,000.00 |
| RFMS2 2005-HSA1 | 76110VSY5 | $20,544,000.00 | $17,135,868.39 |
| RFMS2 2006-HI1 | 76110VTV0 | $17,614,000.00 | $2,344,608.40 |
| RFMS2 2006-HI1 | 76110VUE6 | $2,850,000.00 | $1,546,289.62 |
| RFMS2 2006-HI2 | 437185AC5 | $1,200,000.00 | $839,102.88 |
| RFMS2 2006-HI3 | 43718NAC6 | $13,000,000.00 | $9,150,721.34 |
| RFMS2 2006-HI4 | 43718MAD6 | $15,000,000.00 | $15,000,000.00 |
| RFMS2 2006-HSA1 | 76110VTE8 | $155,000.00 | $118,648.19 |
| RFMS2 2006-HSA1 | 76110VTF5 | $167,000.00 | $136,765.03 |

| | | | |
|---|---|---|---|
| RFMS2 2006-HSA2 | 76110VTP3 | $125,000.00 | $104,019.92 |
| RFMS2 2006-HSA2 | 76110VTQ1 | $7,095,000.00 | $7,095,000.00 |
| RFMS2 2006-HSA2 | 76110VTR9 | $14,715,000.00 | $11,361,763.69 |
| RFMS2 2006-HSA2 | 76110VTS7 | $982,000.00 | $188,532.63 |
| RFMS2 2006-HSA3 | 76113JAA0 | $15,590,000.00 | $2,195,303.35 |
| RFMS2 2007-HI1 | 43718WAC6 | $7,550,000.00 | $7,550,000.00 |
| RFMS2 2007-HSA2 | 43710RAF8 | $35,478,000.00 | $35,478,000.00 |
| RFMS2 2007-HSA2 | 43710RAG6 | $34,000,000.00 | $31,953,124.86 |
| RFMS2 2007-HSA3 | 43710WAE0 | $15,000,000.00 | $15,000,000.00 |
| RFMS2 2007-HSA3 | 43710WAF7 | $31,124,000.00 | $29,517,173.99 |
| RFMSI 2004-S1 | 76111XFD0 | $18,000,000.00 | $27,489,967.95 |
| RFMSI 2004-S1 | 76111XFP3 | $923,100.00 | $518,269.40 |
| RFMSI 2004-S4 | 76111XHA4 | $21,141,000.00 | $19,887,000.00 |
| RFMSI 2004-S4 | 76111XHD8 | $19,898,000.00 | $10,033,772.06 |
| RFMSI 2004-S4 | 76111XHZ9 | $4,314,300.00 | $2,392,797.85 |
| RFMSI 2004-S4 | 76111XJB0 | $616,400.00 | $341,867.88 |
| RFMSI 2004-S5 | 76111XJW4 | $16,913,000.00 | $25,493,807.08 |
| RFMSI 2004-S6 | 76111XLX9 | $17,415,332.00 | $12,180,540.23 |
| RFMSI 2004-S6 | 76111XLZ4 | $10,553,000.00 | $10,553,000.00 |
| RFMSI 2004-S6 | 76111XNB5 | $155,008,185.00 | $24,602,302.03 |
| RFMSI 2004-S7 | 76111XNQ2 | $105,288.00 | $41,243.93 |
| RFMSI 2004-S8 | 76111XNU3 | $15,000,000.00 | $10,793,439.93 |
| RFMSI 2004-S8 | 76111XNZ2 | $15,300,000.00 | $23,090,241.73 |
| RFMSI 2004-S9 | 76111XRB1 | $19,800,000.00 | $19,800,000.00 |
| RFMSI 2004-S9 | 76111XRD7 | $32,000,000.00 | $24,057,029.27 |
| RFMSI 2004-S9 | 76111XRG0 | $3,660,000.00 | $562,571.06 |
| RFMSI 2004-S9 | 76111XRL9 | $127,000,000.00 | $19,672,338.67 |
| RFMSI 2005-S1 | 76111XRX3 | $100,000,000.00 | $14,886,339.31 |
| RFMSI 2005-S1 | 76111XSK0 | $203,320,667.00 | $30,158,419.03 |
| RFMSI 2005-S2 | 76111XTR4 | $23,903,000.00 | $20,013,781.66 |
| RFMSI 2005-S3 | 76111XUG6 | $89,368,000.00 | $14,799,184.98 |
| RFMSI 2005-S5 | 76111XWT6 | $12,310,000.00 | $10,396,236.97 |
| RFMSI 2005-S6 | 76111XXN8 | $28,000,000.00 | $23,795,750.59 |
| RFMSI 2005-S6 | 76111XXQ1 | $58,900,000.00 | $7,977,883.09 |
| RFMSI 2005-S6 | 76111XXR9 | $24,475,000.00 | $8,742,085.13 |
| RFMSI 2005-S7 | 76111XZR7 | $30,690,000.00 | $5,421,925.58 |
| RFMSI 2005-S7 | 76111XZV8 | $2,015,000.00 | $355,985.03 |
| RFMSI 2005-S8 | 76111XC50 | $100,000,000.00 | $25,497,258.50 |
| RFMSI 2005-S8 | 76111XC68 | $12,673,000.00 | $12,673,000.00 |
| RFMSI 2005-S8 | 76111XC76 | $29,879,000.00 | $27,926,722.41 |
| RFMSI 2005-S9 | 76111XE33 | $49,879,000.00 | $13,928,476.46 |
| RFMSI 2005-S9 | 76111XE90 | $10,000,000.00 | $14,091,189.32 |
| RFMSI 2005-S9 | 76111XF24 | $15,000,000.00 | $15,000,000.00 |

| | | | |
|---|---|---|---|
| RFMSI 2005-S9 | 76111XF99 | $5,300,000.00 | $733,021.98 |
| RFMSI 2005-SA1 | 76111XTB9 | $50,000,000.00 | $5,413,251.20 |
| RFMSI 2005-SA1 | 76111XTC7 | $21,040,000.00 | $2,277,896.16 |
| RFMSI 2005-SA1 | 76111XTF0 | $75,000,000.00 | $15,048,069.15 |
| RFMSI 2005-SA2 | 76111XVE0 | $7,455,000.00 | $1,761,469.27 |
| RFMSI 2005-SA2 | 76111XVG5 | $1,000,000.00 | $1,000,000.00 |
| RFMSI 2005-SA2 | 76111XVJ9 | $10,075,000.00 | $6,473,238.80 |
| RFMSI 2005-SA2 | 76111XVL4 | $33,760,000.00 | $11,277,484.98 |
| RFMSI 2005-SA3 | 76111XVZ3 | $69,930,000.00 | $20,570,507.34 |
| RFMSI 2005-SA3 | 76111XWE9 | $35,000,000.00 | $11,344,114.94 |
| RFMSI 2005-SA3 | 76111XWF6 | $10,804,000.00 | $6,833,798.54 |
| RFMSI 2005-SA4 | 76111XYC1 | $16,000,000.00 | $4,054,256.97 |
| RFMSI 2005-SA4 | 76111XYD9 | $82,781,000.00 | $41,979,229.93 |
| RFMSI 2005-SA4 | 76111XYE7 | $1,833,000.00 | $929,536.11 |
| RFMSI 2005-SA4 | 76111XYF4 | $17,530,000.00 | $7,659,100.73 |
| RFMSI 2005-SA4 | 76111XYH0 | $65,000,000.00 | $25,776,283.51 |
| RFMSI 2005-SA4 | 76111XYJ6 | $69,500,000.00 | $27,032,890.62 |
| RFMSI 2005-SA5 | 76111XZA4 | $70,173,900.00 | $22,568,835.50 |
| RFMSI 2005-SA5 | 76111XZB2 | $97,687,000.00 | $43,172,570.45 |
| RFMSI 2005-SA5 | 76111XZC0 | $11,000,000.00 | $4,324,195.78 |
| RFMSI 2006-KS6 | 75406WAD3 | $31,498,000.00 | $31,498,000.00 |
| RFMSI 2006-S1 | 76111XJ61 | $8,500,000.00 | $1,024,211.35 |
| RFMSI 2006-S10 | 74958DAA6 | $220,000,000.00 | $82,616,854.29 |
| RFMSI 2006-S10 | 74958DAG3 | $15,000,000.00 | $13,174,729.68 |
| RFMSI 2006-S10 | 74958DAH1 | $127,923,000.00 | $20,766,069.93 |
| RFMSI 2006-S11 | 74958FAA1 | $200,000,000.00 | $75,832,800.10 |
| RFMSI 2006-S11 | 74958FAB9 | $24,931,000.00 | $3,476,388.82 |
| RFMSI 2006-S11 | 74958FAD5 | $7,393,000.00 | $6,474,198.55 |
| RFMSI 2006-S12 | 74958EAC0 | $183,485,000.00 | $27,882,303.15 |
| RFMSI 2006-S12 | 74958EAD8 | $50,000,000.00 | $50,000,000.00 |
| RFMSI 2006-S12 | 74958EAF3 | $15,000,000.00 | $15,000,000.00 |
| RFMSI 2006-S12 | 74958EAJ5 | $46,926,805.00 | $12,084,524.62 |
| RFMSI 2006-S2 | 76111XL76 | $8,500,000.00 | $1,735,032.06 |
| RFMSI 2006-S2 | 76111XM26 | $14,000,000.00 | $19,290,394.90 |
| RFMSI 2006-S2 | 76111XM34 | $1,000,000.00 | $1,264,657.95 |
| RFMSI 2006-S2 | 76111XM42 | $45,141,000.00 | $37,393,781.29 |
| RFMSI 2006-S3 | 76111XN90 | $7,500,000.00 | $8,781,254.61 |
| RFMSI 2006-S3 | 76111XP56 | $50,000,000.00 | $13,594,001.60 |
| RFMSI 2006-S4 | 762010AB2 | $28,000,000.00 | $5,667,759.06 |
| RFMSI 2006-S4 | 762010AE6 | $10,032,000.00 | $10,032,000.00 |
| RFMSI 2006-S5 | 74957EAE7 | $19,184,000.00 | $17,798,440.17 |
| RFMSI 2006-S5 | 74957EAF4 | $39,131,000.00 | $35,650,071.62 |
| RFMSI 2006-S5 | 74957EAM9 | $1,000,000.00 | $901,063.48 |

| | | | |
|---|---|---|---|
| RFMSI 2006-S5 | 74957EAN7 | $5,930,000.00 | $5,343,306.42 |
| RFMSI 2006-S5 | 74957EAQ0 | $5,373,000.00 | $973,873.79 |
| RFMSI 2006-S5 | 74957EAR8 | $57,000,000.00 | $29,996,388.60 |
| RFMSI 2006-S6 | 74957VAJ8 | $22,000,000.00 | $6,868,488.98 |
| RFMSI 2006-S6 | 74957VAM1 | $69,999,999.93 | $22,616,534.52 |
| RFMSI 2006-S6 | 74957VAQ2 | $32,849,000.00 | $27,437,794.59 |
| RFMSI 2006-S7 | 74958AAC8 | $104,247,000.00 | $17,062,077.17 |
| RFMSI 2006-S7 | 74958AAD6 | $32,786,000.00 | $29,373,428.34 |
| RFMSI 2006-S7 | 74958AAH7 | $30,000,000.00 | $26,877,356.81 |
| RFMSI 2006-S7 | 74958AAJ3 | $6,000,000.00 | $5,328,507.22 |
| RFMSI 2006-S8 | 74957XAF2 | $37,400,000.00 | $35,769,546.93 |
| RFMSI 2006-S8 | 74957XAN5 | $50,080,000.00 | $9,585,917.80 |
| RFMSI 2006-S8 | 74957XAQ8 | $8,546,000.00 | $1,838,300.20 |
| RFMSI 2006-S9 | 749577AC6 | $15,000,000.00 | $2,468,178.10 |
| RFMSI 2006-S9 | 749577AL6 | $19,147,000.00 | $18,794,123.35 |
| RFMSI 2006-SA1 | 76111XG72 | $80,815,000.00 | $37,619,977.46 |
| RFMSI 2006-SA1 | 76111XG98 | $14,500,000.00 | $6,102,313.33 |
| RFMSI 2006-SA2 | 749574AC3 | $40,778,220.00 | $17,460,725.05 |
| RFMSI 2006-SA2 | 749574AG4 | $21,795,000.00 | $10,394,314.81 |
| RFMSI 2006-SA3 | 749575AA4 | $15,363,000.00 | $6,375,525.75 |
| RFMSI 2006-SA3 | 749575AD8 | $7,000,000.00 | $5,895,166.88 |
| RFMSI 2006-SA3 | 749575AG1 | $17,420,000.00 | $5,769,644.21 |
| RFMSI 2006-SA3 | 749575AJ5 | $5,000,000.00 | $2,007,792.86 |
| RFMSI 2006-SA4 | 74958CAB6 | $16,995,000.00 | $6,156,025.83 |
| RFMSI 2007-S1 | 749581AJ3 | $8,000,000.00 | $3,497,457.02 |
| RFMSI 2007-S1 | 749581AL8 | $15,000,000.00 | $13,367,809.87 |
| RFMSI 2007-S2 | 749583AH3 | $10,973,000.00 | $10,366,382.22 |
| RFMSI 2007-S2 | 749583AJ9 | $30,000,000.00 | $28,039,031.17 |
| RFMSI 2007-S2 | 749583AY6 | $27,978,000.00 | $21,010,285.72 |
| RFMSI 2007-S3 | 74958BAH5 | $28,115,000.00 | $22,934,450.48 |
| RFMSI 2007-S3 | 74958BAM4 | $20,000,000.00 | $16,065,109.52 |
| RFMSI 2007-S3 | 74958BAQ5 | $26,200,000.00 | $3,933,879.89 |
| RFMSI 2007-S4 | 74958YAB8 | $72,244,357.00 | $27,978,918.04 |
| RFMSI 2007-S4 | 74958YAE2 | $2,150,000.00 | $771,919.61 |
| RFMSI 2007-S4 | 74958YAN2 | $10,000,000.00 | $8,517,878.90 |
| RFMSI 2007-S5 | 749580AB2 | $100,000,000.00 | $39,944,339.80 |
| RFMSI 2007-S5 | 749580AC0 | $51,497,000.00 | $26,996,308.06 |
| RFMSI 2007-S6 | 762009AK4 | $4,000,000.00 | $1,475,398.94 |
| RFMSI 2007-S6 | 762009AL2 | $53,000,000.00 | $22,201,811.18 |
| RFMSI 2007-S6 | 762009AR9 | $18,899.43 | $8,479.71 |
| RFMSI 2007-S7 | 76200RAC2 | $75,000,000.00 | $41,919,876.53 |
| RFMSI 2007-S7 | 76200RAV0 | $170,622,000.00 | $97,354,764.97 |
| RFMSI 2007-S8 | 76200QAA8 | $2,500,000.00 | $1,304,277.38 |

| | | | |
|---|---|---|---|
| RFMSI 2007-S9 | 74958VAA6 | $78,440,000.00 | $38,019,490.47 |
| RFMSI 2007-SA1 | 74958WAA4 | $2,800,000.00 | $1,059,401.63 |
| RFMSI 2007-SA1 | 74958WAC0 | $66,660,000.00 | $25,350,819.97 |
| RFMSI 2007-SA1 | 74958WAF3 | $46,363,200.00 | $22,996,709.00 |
| RFMSI 2007-SA2 | 74958XAB0 | $14,000,000.00 | $5,526,124.30 |
| RFMSI 2007-SA2 | 74958XAC8 | $19,478,400.00 | $8,132,804.42 |
| RFMSI 2007-SA2 | 74958XAF1 | $27,804,800.00 | $13,901,970.00 |
| RFMSI 2007-SA3 | 74958TAB9 | $20,895,000.00 | $10,585,687.94 |
| RFMSI 2007-SA3 | 74958TAJ2 | $38,625,000.00 | $17,386,053.08 |
| RFMSI 2007-SA4 | 74959AAB9 | $35,000,000.00 | $17,040,241.21 |
| RFMSI 2007-SA4 | 74959AAF0 | $73,536,400.00 | $39,676,725.48 |
| RFSC 2004-RP1A | 760985S36 | $14,577,000.00 | $0.00 |
| RFSC 2004-RP1A | 760985S44 | $7,000,000.00 | $1,265,075.64 |