# Exhibit 98

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (Date of earliest event reported) July 28, 2006

RESIDENTIAL FUNDING MORTGAGE SECURITIES II, INC. (as depositor under an Amended
and Restated Trust Agreement, dated as of July 28, 2006, and pursuant to which
an Indenture was entered into, providing for, inter alia, the issuance of Home
Equity Loan-Backed Term Notes, Series 2006-HSA4)


Residential Funding Mortgage Securities II, Inc.
- --------------------------------------------------------------------------------
(Exact name of registrant as specified in its charter)

| DELAWARE | 333-131196-04 | 41-1808858 |
| -------- | ------------- | ---------- |
| (State or Other Jurisdiction | (Commission | (I.R.S. Employer |
| of Incorporation) | File Number) | Identification No.) |

8400 Normandale Lake Blvd., Suite 250, Minneapolis, Minnesota 55437
(Address of Principal Executive Offices)         (Zip Code)

Registrant's telephone number, including area code, is (952) 857-7000
N/A
(Former name or address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to
simultaneously satisfy the filing obligation of the registrant under any of the
following provisions (see General Instruction A.2. below):

[ ] Written communication pursuant to Rule 425 under the Securities Act (17 CFR
230.425)

[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR
240.14a-12)

[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange
Act (17 CFR 240.14d-2(b))

[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange
Act (17 CFR 240.13e-4(c))

HOME EQUITY LOAN TRUST 2006-HSA4

Issuer

AND

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Indenture Trustee

INDENTURE

Dated as of July 28, 2006

HOME EQUITY LOAN-BACKED TERM NOTES

HOME EQUITY LOAN-BACKED VARIABLE FUNDING NOTES

RECONCILIATION AND TIE BETWEEN TRUST INDENTURE
ACT OF 1939 AND INDENTURE PROVISIONS*

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1) | 6.11 |
| (a)(2) | 6.11 |
| (a)(3) | 6.10 |
| (a)(4) | Not Applicable |
| (a)(5) | 6.11 |
| (b) | 6.08, 6.11 |
| (c) | Not Applicable |
| 311(a) | 6.12 |
| (b) | 6.12 |
| (c) | Not Applicable |
| 312(a) | 7.01, 7.02(a) |
| (b) | 7.02(b) |
| (c) | 7.02(c) |
| 313(a) | 7.04 |
| (b) | 7.04 |
| (c) | 7.03(a)(iii), 7.04 |
| (d) | 7.04 |
| 314(a) | 3.10, 7.03(a) |
| (b) | 3.07 |
| (c)(1) | 8.05(c), 10.01(a) |
| (c)(2) | 8.05(c), 10.01(a) |
| (c)(3) | Not Applicable |
| (d)(1) | 8.05(c), 10.01(b) |
| (d)(2) | 8.05(c), 10.01(b) |
| (d)(3) | 8.05(c), 10.01(b) |
| (e) | 10.01(a) |
| 315(a) | 6.01(b) |
| (b) | 6.05 |
| (c) | 6.01(a) |
| (d) | 6.01(c) |
| (d)(1) | 6.01(c) |
| (d)(2) | 6.01(c) |
| (d)(3) | 6.01(c) |
| (e) | 5.13 |
| 316(a)(1)(A) | 5.11 |
| 316(a)(1)(B) | 5.12 |
| 316(a)(2) | Not Applicable |
| 316(b) | 5.07 |
| 317(a)(1) | 5.04 |
| 317(a)(2) | 5.03(d) |
| 317(b) | 3.03(a) |
| 318(a) | 10.07 |

*This reconciliation and tie shall not, for any purpose, be deemed to be part of the within indenture.

TABLE OF CONTENTS

PAGE

ARTICLE I          Definitions................................................................2

        Section 1.01.     Definitions.................................................2

        Section 1.02.     Incorporation by Reference of Trust Indenture Act................2

        Section 1.03.     Rules of Construction.......................................2

ARTICLE II         Original Issuance of Notes................................................3

        Section 2.01.     Form.......................................................3

        Section 2.02.     Execution, Authentication and Delivery......................3

ARTICLE III        Covenants.................................................................4

        Section 3.01.     Collection of Payments with Respect to the Home Equity Loans.....................4

        Section 3.02.     Maintenance of Office or Agency.............................4

        Section 3.03.     Money for Payments to Be Held in Trust; Paying Agent.............4

        Section 3.04.     Existence..................................................6

        Section 3.05.     Payment of Principal and Interest; Defaulted Interest............6

        Section 3.06.     Protection of Trust Estate..................................8

        Section 3.07.     Opinions as to Trust Estate.................................9

        Section 3.08.     Performance of Obligations; Servicing Agreement.................9

        Section 3.09.     Negative Covenants.........................................10

        Section 3.10.     Annual Statement as to Compliance..........................10

        Section 3.11.     Recording of Assignments...................................11

        Section 3.12.     Representations and Warranties Concerning the Home Equity Loans..................11

        Section 3.13.     Assignee of Record of the Home Equity Loans....................11

        Section 3.14.     Master Servicer as Agent and Bailee of the Indenture Trustee....................11

        Section 3.15.     Investment Company Act.....................................11

        Section 3.16.     Issuer May Consolidate, etc................................12

        Section 3.17.     Successor or Transferee....................................13

        Section 3.18.     No Other Business..........................................13

        Section 3.19.     No Borrowing...............................................13

        Section 3.20.     Guarantees, Loans, Advances and Other Liabilities..............13

        Section 3.21.     Capital Expenditures.......................................14

        Section 3.22.     Owner Trustee Not Liable for Certificates or Related Documents..................14

        Section 3.23.     Restricted Payments........................................14

        Section 3.24.     Notice of Events of Default.................................14

        Section 3.25.     Further Instruments and Act.................................14

        Section 3.26.     Statements to Noteholders..................................15

        Section 3.27.     Determination of Note Rates.................................15

        Section 3.28.     Payments under the Policy..................................15

        Section 3.29.     Additional Representations of the Issuer.......................15

ARTICLE IV         The Notes; Satisfaction and Discharge of Indenture.........................17

        Section 4.01.     The Notes; Increase of Maximum Variable Funding Balance; Variable Funding Notes...17

Section 4.02.    Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate Registrar...........................................................................................................................18

Section 4.03.    Mutilated, Destroyed, Lost or Stolen Notes........................................................................21

Section 4.04.    Persons Deemed Owners.......................................................................................................22

Section 4.05.    Cancellation............................................................................................................................22

Section 4.06.    Book-Entry Notes...................................................................................................................22

Section 4.07.    Notices to Depository.............................................................................................................23

Section 4.08.    Definitive Notes......................................................................................................................23

Section 4.09.    Tax Treatment.........................................................................................................................24

Section 4.10.    Satisfaction and Discharge of Indenture..............................................................................24

Section 4.11.    Application of Trust Money....................................................................................................25

Section 4.12.    Subrogation and Cooperation................................................................................................26

Section 4.13.    Repayment of Monies Held by Paying Agent........................................................................26

Section 4.14.    Temporary Notes.....................................................................................................................27

ARTICLE V        Default and Remedies..............................................................................................................27

Section 5.01.    Events of Default.....................................................................................................................27

Section 5.02.    Acceleration of Maturity; Rescission and Annulment..........................................................27

Section 5.03.    Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.........28

Section 5.04.    Remedies; Priorities................................................................................................................30

Section 5.05.    Optional Preservation of the Trust Estate............................................................................32

Section 5.06.    Limitation of Suits...................................................................................................................32

Section 5.07.    Unconditional Rights of Noteholders to Receive Principal and Interest.............33

Section 5.08.    Restoration of Rights and Remedies......................................................................................33

Section 5.09.    Rights and Remedies Cumulative...........................................................................................33

Section 5.10.    Delay or Omission Not a Waiver............................................................................................33

Section 5.11.    Control by the Credit Enhancer or Noteholders...................................................................33

Section 5.12.    Waiver of Past Default............................................................................................................34

Section 5.13.    Undertaking for Costs.............................................................................................................34

Section 5.14.    Waiver of Stay or Extension Laws.........................................................................................34

Section 5.15.    Sale of Trust Estate.................................................................................................................35

Section 5.16.    Action on Notes.......................................................................................................................36

Section 5.17.    Performance and Enforcement of Certain Obligations........................................................37

ARTICLE VI        The Indenture Trustee..............................................................................................................37

Section 6.01.    Duties of Indenture Trustee...................................................................................................37

Section 6.02.    Rights of Indenture Trustee...................................................................................................38

Section 6.03.    Individual Rights of Indenture Trustee.................................................................................39

Section 6.04.    Indenture Trustee's Disclaimer..............................................................................................39

Section 6.05.    Notice of Event of Default......................................................................................................39

Section 6.06.    Reports by Indenture Trustee to Holders.............................................................................39

Section 6.07.    Compensation and Indemnity................................................................................................39

Section 6.08.    Replacement of Indenture Trustee.........................................................................................40

Section 6.09.    Successor Indenture Trustee by Merger................................................................................41

Section 6.10.    Appointment of Co-Indenture Trustee or Separate Indenture Trustee.................41

Section 6.11.    Eligibility; Disqualification..............................................42

Section 6.12.    Preferential Collection of Claims Against Issuer..................................43

Section 6.13.    Representations and Warranties....................................................43

Section 6.14.    Directions to Indenture Trustee...................................................43

Section 6.15.    Indenture Trustee May Own Securities..............................................44

ARTICLE VII        Noteholders' Lists and Reports.................................................44

Section 7.01.    Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders...........44

Section 7.02.    Preservation of Information; Communications to Noteholders.......................44

Section 7.03.    Reports by Issuer.................................................................44

Section 7.04.    Reports by Indenture Trustee......................................................45

Section 7.05.    Exchange Act Reporting............................................................45

ARTICLE VIII        Accounts, Disbursements and Releases..........................................45

Section 8.01.    Collection of Money...............................................................45

Section 8.02.    Trust Accounts....................................................................46

Section 8.03.    Officer's Certificate.............................................................46

Section 8.04.    Termination Upon Distribution to Noteholders.....................................46

Section 8.05.    Release of Trust Estate...........................................................47

Section 8.06.    Surrender of Notes Upon Final Payment.............................................47

ARTICLE IX        SUPPLEMENTAL INDENTURES..........................................................47

Section 9.01.    Supplemental Indentures Without Consent of Noteholders...........................47

Section 9.02.    Supplemental Indentures With Consent of Noteholders..............................49

Section 9.03.    Execution of Supplemental Indentures..............................................50

Section 9.04.    Effect of Supplemental Indenture..................................................50

Section 9.05.    Conformity with Trust Indenture Act...............................................51

Section 9.06.    Reference in Notes to Supplemental Indentures....................................51

ARTICLE X        MISCELLANEOUS.....................................................................51

Section 10.01.    Compliance Certificates and Opinions, etc.......................................51

Section 10.02.    Form of Documents Delivered to Indenture Trustee................................53

Section 10.03.    Acts of Noteholders.............................................................53

Section 10.04.    Notices, etc., to Indenture Trustee, Issuer, Credit Enhancer and Rating Agencies..54

Section 10.05.    Notices to Noteholders; Waiver..................................................55

Section 10.06.    Alternate Payment and Notice Provisions.........................................55

Section 10.07.    Conflict with Trust Indenture Act...............................................55

Section 10.08.    Effect of Headings..............................................................56

Section 10.09.    Successors and Assigns..........................................................56

Section 10.10.    Separability....................................................................56

Section 10.11.    Benefits of Indenture...........................................................56

Section 10.12.    Legal Holidays..................................................................56

Section 10.13.    GOVERNING LAW...................................................................56

Section 10.14.    Counterparts....................................................................56

Section 10.15.    Recording of Indenture..........................................................56

Section 10.16.    Issuer Obligation...............................................................57

Section 10.17.    No Petition.....................................................................57

Section 10.18.    Inspection.................................................57

EXHIBIT

Exhibit A-1  .....Form of Class A Notes                                    A-1
Exhibit A-2 ......Form of Variable Funding Notes                           A-2
Exhibit B .......Form of Rule 144A Investment Representation               B-1
Exhibit C .......Form of Investor Representation Letter                    C-1
Exhibit D .......Form of Transferor Representation Letter                  D-1

---

This Indenture, dated as of July 28, 2006, between HOME EQUITY LOAN TRUST 2006-HSA4, a Delaware statutory tr Issuer (the "Issuer"), and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Indenture Trustee (the "Indenture Trustee"),

WITNESSETH THAT:

Each party hereto agrees as follows for the benefit of the other party and for the equal and ratable benefit Holders of the Issuer's Series 2006-HSA4 Home Equity Loan-Backed Term Notes and Home Equity Loan-Backed Variable Funding (together, the "Notes") and the Credit Enhancer.

GRANTING CLAUSE

The Issuer hereby Grants to the Indenture Trustee at the Closing Date, as trustee for the benefit of the Hol the Notes, all of the Issuer's right, title and interest in and to the Home Equity Loans and to all accounts, chattel paper, intangibles, payment intangibles, contract rights, certificates of deposit, deposit accounts, instruments, documents, let credit, money, advices of credit, investment property, goods and other property consisting of, arising under or related to now existing or hereafter created in (a) the Home Equity Loans, including, without limitation, the benefit of the representati warranties made by the Seller in Section 3.1(a) and Section 3.1(b) of the Purchase Agreement concerning the Home Equity Loans right to enforce the remedies against the Seller provided in such Section 3.1 to the same extent as though such representatio warranties were made directly to the Indenture Trustee, (b) the Payment Account, all funds on deposit or credited thereto fr to time and all proceeds thereof and (c) all present and future claims, demands, causes and choses in action in respect of any of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in respect of, any or all foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, volun involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, accep checks, deposit accounts, rights to payment of any and every kind, and other forms of obligations and receivables, instrume other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing (collectivel "Trust Estate" or the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any other owing in respect of, the Notes, equally and ratably without prejudice, priority or distinction, and to secure compliance w provisions of this Indenture, all as provided in this Indenture.

The foregoing Grant shall inure to the benefit of the Credit Enhancer in respect of draws made on the Pol amounts owing to the Credit Enhancer from time to time pursuant to the Insurance Agreement and payable to the Credit E pursuant to this Indenture, and such Grant shall continue in full force and effect for the benefit of the Credit Enhancer un such amounts owing to it have been repaid in full.

The Indenture Trustee, as trustee on behalf of the Holders of the Notes, (i) acknowledges such Grant, (ii) the trust under this Indenture in accordance with the provisions hereof, (iii) agrees to perform its duties as Indenture Tru required herein and (iv) acknowledges receipt of the Policy and shall hold such Policy in accordance with the terms of this In for the benefit of the Holders of the Notes.

---

ARTICLE I

Definitions

Section 1.01.    Definitions. For all purposes of this Indenture, except as otherwise expressly provided herein or unl context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings assigned to such terms Definitions attached hereto as Appendix A which is incorporated by reference herein. All other capitalized terms used herei have the meanings specified herein.

Section 1.02.    Incorporation by Reference of Trust Indenture Act. Whenever this Indenture refers to a provision of th Indenture Act (the "TIA"), the provision is incorporated by reference in and made a part of this Indenture. The following TI used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuer and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another or defined by Commission rule have the meaning assigned to them by such definitions.

Section 1.03.    Rules of Construction. Unless the context otherwise requires:

(i)    a term has the meaning assigned to it;

(ii)    an accounting term not otherwise defined has the meaning assigned to it in accordance with generally accepted acc principles as in effect from time to time;

(iii)    "or" is not exclusive;

(iv)    "including" means including without limitation;

(v)    words in the singular include the plural and words in the plural include the singular; and

(vi)    any agreement, instrument or statute defined or referred to herein or in any instrument or certificate delive connection herewith means such agreement, instrument or statute as from time to time amended, modified or supplemented and i (in the case of agreements or instruments) references to all attachments thereto and instruments incorporated therein; refere a Person are also to its permitted successors and assigns.

---

ARTICLE II

Original Issuance of Notes

Section 2.01.    Form. The Term Notes and the Variable Funding Notes, in each case together with the Indenture Trustee's cert of authentication, shall be in substantially the forms set forth in Exhibits A-1 and A-2, respectively, with such appr insertions, omissions, substitutions and other variations as are required or permitted by this Indenture and may have such l numbers or other marks of identification and such legends or endorsements placed thereon as may, consistently herewith, be det by the officers executing such Notes, as evidenced by their execution of the Notes. Any portion of the text of any Note may forth on the reverse thereof, with an appropriate reference thereto on the face of the Note.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of these methods ( without steel engraved borders), all as determined by the Authorized Officers executing such Notes, as evidenced by their ex of such Notes.

The terms of the Notes set forth in Exhibits A-1 and A-2 are part of the terms of this Indenture.

Section 2.02.    Execution, Authentication and Delivery. The Notes shall be executed on behalf of the Issuer by any Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers of the Issue bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authent and delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall upon Issuer Request authenticate and deliver Term Notes for original issue in an ag initial principal amount of $402,118,000 and Variable Funding Notes for original issue in an aggregate initial principal am $0. The Security Balance of the Variable Funding Notes in the aggregate may not exceed the Maximum Variable Funding Balance.

Each Note shall be dated the date of its authentication. The Notes shall be issuable as registered Notes and the Notes shall be issuable in the minimum initial Security Balances of $100,000 and in integral multiples of $1 in excess thereof.

Each Variable Funding Note shall be initially issued with a Security Balance of $0 or, if applicable, with a S Balance in the amount equal to the Additional Balance Differential for the Collection Period related to the Payment Date fo the date of issuance of such Variable Funding Note pursuant to Section 4.01(b).

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose, unless appears on such Note a certificate of authentication substantially in the form provided for herein executed by the Indenture by the manual signature of one of its authorized signatories, and such certificate upon any Note shall be conclusive evidenc the only evidence, that such Note has been duly authenticated and delivered hereunder.

---

ARTICLE III

Covenants

Section 3.01.    Collection of Payments with Respect to the Home Equity Loans. The Indenture Trustee shall establish and m with itself the Payment Account in which the Indenture Trustee shall, subject to the terms of this paragraph, deposit, on t day as it is received from the Master Servicer, each remittance received by the Indenture Trustee with respect to the Home Loans. The Indenture Trustee shall make all payments of principal of and interest on the Notes, subject to Section 3.03, as p in Section 3.05 herein from monies on deposit in the Payment Account.

Section 3.02.    Maintenance  of  Office  or  Agency.  The  Issuer  will  maintain  in  the  City  of  New  York,  an  office  or  agency subject  to  satisfaction  of  conditions  set  forth  herein,  Notes  may  be  surrendered  for  registration  of  transfer  or  exchange,  an notices  and  demands  to  or  upon  the  Issuer  in  respect  of  the  Notes  and  this  Indenture  may  be  served.  The  Issuer  hereby  in appoints  the  Indenture  Trustee  to  serve  as  its  agent  for  the  foregoing  purposes.  If  at  any  time  the  Issuer  shall  fail  to  m any  such  office  or  agency  or  shall  fail  to  furnish  the  Indenture  Trustee  with  the  address  thereof,  such  surrenders,  noti demands  may  be  made  or  served  at  the  Corporate  Trust  Office,  and  the  Issuer  hereby  appoints  the  Indenture  Trustee  as  its  a receive  all  such  surrenders,  notices  and  demands.

Section 3.03.    Money  for  Payments  to  Be  Held  in  Trust;  Paying  Agent.  (a)  As  provided  in  Section  3.01,  all  payments  of  amou and  payable  with  respect  to  any  Notes  that  are  to  be  made  from  amounts  withdrawn  from  the  Payment  Account  pursuant  to  Secti shall  be  made  on  behalf  of  the  Issuer  by  the  Indenture  Trustee  or  by  the  Paying  Agent,  and  no  amounts  so  withdrawn  from  the Account  for  payments  of  Notes  shall  be  paid  over  to  the  Issuer  except  as  provided  in  this  Section  3.03.

The  Issuer  will  cause  each  Paying  Agent  other  than  the  Indenture  Trustee  to  execute  and  deliver  to  the  Indenture  Tru instrument  in  which  such  Paying  Agent  shall  agree  with  the  Indenture  Trustee  (and  if  the  Indenture  Trustee  acts  as  Paying  Age hereby  so  agrees),  subject  to  the  provisions  of  this  Section  3.03,  that  such  Paying  Agent  will:

(i)    hold  all  sums  held  by  it  for  the  payment  of  amounts  due  with  respect  to  the  Notes  in  trust  for  the  benefit  of  the entitled  thereto  until  such  sums  shall  be  paid  to  such  Persons  or  otherwise  disposed  of  as  herein  provided  and  pay  such  sums Persons  as  herein  provided;

(ii)    give  the  Indenture  Trustee  and  the  Credit  Enhancer  written  notice  of  any  default  by  the  Issuer  of  which  it  has knowledge  in  the  making  of  any  payment  required  to  be  made  with  respect  to  the  Notes;

(iii)    at  any  time  during  the  continuance  of  any  such  default,  upon  the  written  request  of  the  Indenture  Trustee,  forthwith the  Indenture  Trustee  all  sums  so  held  in  trust  by  such  Paying  Agent;

(iv)    immediately  resign  as  Paying  Agent  and  forthwith  pay  to  the  Indenture  Trustee  all  sums  held  by  it  in  trust  for  the of  Notes,  if  at  any  time  it  ceases  to  meet  the  standards  required  to  be  met  by  a  Paying  Agent  at  the  time  of  its  appointment;

(v)    comply  with  all  requirements  of  the  Code  with  respect  to  the  withholding  from  any  payments  made  by  it  on  any  Notes applicable  withholding  taxes  imposed  thereon  and  with  respect  to  any  applicable  reporting  requirements  in  connection  therewith;

(vi)    deliver  to  the  Indenture  Trustee  a  copy  of  the  report  to  Noteholders  prepared  with  respect  to  each  Payment  Date Master  Servicer  pursuant  to  Section  4.01  of  the  Servicing  Agreement.

The  Issuer  may  at  any  time,  for  the  purpose  of  obtaining  the  satisfaction  and  discharge  of  this  Indenture  or  for  an purpose,  by  Issuer  Request  direct  any  Paying  Agent  to  pay  to  the  Indenture  Trustee  all  sums  held  in  trust  by  such  Paying  Agent sums  to  be  held  by  the  Indenture  Trustee  upon  the  same  trusts  as  those  upon  which  the  sums  were  held  by  such  Paying  Agent;  a such  payment  by  any  Paying  Agent  to  the  Indenture  Trustee,  such  Paying  Agent  shall  be  released  from  all  further  liabilit respect  to  such  money.

Subject  to  applicable  laws  with  respect  to  escheat  of  funds,  any  money  held  by  the  Indenture  Trustee  or  any  Paying  A trust  for  the  payment  of  any  amount  due  with  respect  to  any  Note  and  remaining  unclaimed  for  one  year  after  such  amount  has due  and  payable  shall  be  discharged  from  such  trust  and  be  paid  to  the  Issuer  on  Issuer  Request;  and  the  Holder  of  such  Not thereafter,  as  an  unsecured  general  creditor,  look  only  to  the  Issuer  for  payment  thereof  (but  only  to  the  extent  of  the  amo paid  to  the  Issuer),  and  all  liability  of  the  Indenture  Trustee  or  such  Paying  Agent  with  respect  to  such  trust  money  shall  th cease;  provided,  however,  that  the  Indenture  Trustee  or  such  Paying  Agent,  before  being  required  to  make  any  such  repayment,  s the  expense  and  direction  of  the  Issuer  cause  to  be  published  once,  in  an  Authorized  Newspaper,  notice  that  such  money unclaimed  and  that,  after  a  date  specified  therein,  which  shall  not  be  less  than  30  days  from  the  date  of  such  publicatio unclaimed  balance  of  such  money  then  remaining  will  be  repaid  to  the  Issuer.  The  Indenture  Trustee  may  also  adopt  and  employ, expense  and  direction  of  the  Issuer,  any  other  reasonable  means  of  notification  of  such  repayment  (including,  but  not  limi mailing  notice  of  such  repayment  to  Holders  whose  Notes  have  been  called  but  have  not  been  surrendered  for  redemption  or  whos to  or  interest  in  monies  due  and  payable  but  not  claimed  is  determinable  from  the  records  of  the  Indenture  Trustee  or  of  any Agent,  at  the  last  address  of  record  for  each  such  Holder).

Section 3.04.    Existence.  The  Issuer  will  keep  in  full  effect  its  existence,  rights  and  franchises  as  a  statutory  trust  un laws  of  the  State  of  Delaware  (unless  it  becomes,  or  any  successor  Issuer  hereunder  is  or  becomes,  organized  under  the  laws other  state  or  of  the  United  States  of  America,  in  which  case  the  Issuer  will  keep  in  full  effect  its  existence,  rig franchises  under  the  laws  of  such  other  jurisdiction)  and  will  obtain  and  preserve  its  qualification  to  do  business jurisdiction  in  which  such  qualification  is  or  shall  be  necessary  to  protect  the  validity  and  enforceability  of  this  Indentur Notes,  the  Home  Equity  Loans  and  each  other  instrument  or  agreement  included  in  the  Trust  Estate.

Section 3.05.    Payment  of  Principal  and  Interest;  Defaulted  Interest.  (a)  On  each  Payment  Date  from  amounts  on  deposit Payment  Account  (other  than  amounts  deposited  in  the  nature  of  prepayment  charges),  the  Paying  Agent  shall  pay  to  the  Noteh the  Certificate  Paying  Agent,  on  behalf  of  the  Certificateholders,  and  to  other  Persons  the  amounts  to  which  they  are  entitl set  forth  in  the  statements  delivered  to  the  Indenture  Trustee  pursuant  to  Section  4.01  of  the  Servicing  Agreement,  as  se below  in  the  following  order  of  priority:

(i)    first,  to  the  Class  A  Noteholders  and  the  Variable  Funding  Noteholders,  the  Interest  Distribution  Amount  for  the Notes  and  the  Variable  Funding  Notes  for  such  Payment  Date,  on  a  pro  rata  basis  in  accordance  with  their  respective  I Distribution  Amounts;

(ii)    second,  to  the  Class  A  Noteholders  and  the  Variable  Funding  Noteholders,  as  principal  on  the  Class  A  Notes  and  V Funding  Notes,  the  Principal  Collection  Distribution  Amount  with  respect  to  the  Class  A  Notes  and  the  Variable  Funding  Notes  f Payment  Date,  on  a  pro  rata  basis  in  accordance  with  the  outstanding  Security  Balances  thereof;

(iii)    third,  to  the  Class  A  Noteholders  and  the  Variable  Funding  Noteholders,  as  principal  on  the  Class  A  Notes  and  V Funding  Notes,  on  a  pro  rata  basis  in  accordance  with  the  outstanding  Security  Balances  thereof,  the  Liquidation  Loss  Distr Amount  for  such  Payment  Date;

(iv)    fourth,  to  the  Credit  Enhancer,  the  amount  of  the  premium  for  the  Policy  and  any  previously  unpaid  premiums  for  the with  interest  thereon  as  provided  in  the  Insurance  Agreement;

(v)      fifth, to the Credit Enhancer, to  reimburse  it for prior draws  on the Policy  related to payments of  princip
interest on the Class A Notes and the Variable Funding             est thereon as provided in the Insurance Agreement;

(vi)      sixth, to the Class A Noteholders  and the Variable Funding  Noteholders,  as principal on the Class A Notes and the V
Funding Notes, on a pro rata basis in accordance  with the outstanding  Security Balances thereof,  the  Overcollateralization  I
Amount, if any, for such Payment Date;

(vii)      seventh, to the Credit Enhancer, any other amounts owed to the Credit Enhancer pursuant to the Insurance Agreement;

(viii)    eighth, to the Class A Noteholders  and the Variable  Funding  Noteholders,  any Net WAC Cap Shortfalls for that Payme
and any Net WAC Cap Shortfalls for previous  Payment Dates and not  previously  paid (together with interest  thereon at the No
(as adjusted from time to time)),  on a pro rata basis in accordance  with the respective  amounts of Net WAC Cap Shortfalls  al
to each such Class for such Payment Date and any previous Payment Dates not previously paid (with interest thereon);

(ix)      ninth, to pay to  the holders of the Class A Notes and the  Variable Funding  Notes, pro rata,  any  Relief Act  Sho
incurred during the related Collection Period; and

(x)      tenth, any  remaining  amount  (other than amounts in the nature of prepayment  charges) to the  Certificate  Paying A
behalf of  the holders of the Class SB  Certificates  and any amounts in the nature of  prepayment  charges to the  Certificate
Agent, on behalf of the holders of the Class SB Certificates;

provided,  however,  in the event that on a Payment Date a Credit  Enhancer  Default  shall have occurred and be  continuing,  t
priorities of distributions  described above will be adjusted such that payments of any required  payments of principal on the N
each Payment Date pursuant to clause  3.05(a)(iii) above will include  all  Liquidation  Loss Amounts for such Payment Date and
previous  Collection  Periods  until paid or covered in full, to the extent not otherwise  covered by a Liquidation  Loss Distr
Amount, a reduction of the  Overcollateralization  Amount on such Payment Date or a draw on the Policy (up to the outstanding  S
Balance thereof).

On the  Final  Scheduled  Payment  Date or other final  Payment  Date for the Notes,  the amount to be paid  pursuant to
(iii) above shall be equal to the Security  Balances of the Notes  immediately  prior to such Payment  Date.  Notwithstanding  a
herein to the  contrary,  if the final  Payment Date is a date on which the Master  Servicer has exercised its right to purchase
the Home Equity Loans  pursuant to Section 8.08 of the  Servicing  Agreement,  the  priorities  set forth in clauses (i) through
above shall be  disregarded,  and  amounts on deposit in the  Payment  Account  with  respect to the Home Equity  Loans will be
first,  to pay the Interest  Distribution  Amount for the Class A Notes and Variable  Funding Notes,  on a pro rata basis in acc
with their respective Interest  Distribution  Amounts;  and second, to pay principal on the Class A Notes and Variable Funding N
a pro rata basis in accordance with their respective  Security Balances,  until the Security Balances thereof have been reduced
and then in accordance with the priorities set forth in clauses (iv) through (x) above.

(b)      Relief Act  Shortfalls  on the Home Equity Loans will be allocated  to the Class A Notes and Variable  Funding  Notes o
rata basis in accordance with the amount of accrued interest payable on that Class for such Payment Date, absent such reductions

(c)      On each Payment Date,  the  Certificate  Paying Agent shall  deposit in the  Certificate  Distribution  Account all amo
received pursuant to this Section 3.05 for the purpose of distributing such funds to the Certificateholders.

The amounts paid to Noteholders  shall be paid in respect of the Term Notes or Variable  Funding Notes,  as t
may be, in accordance  with the  applicable  percentage  as set forth in paragraph (d) below.  Interest will accrue on the Notes
an Interest  Period, on the basis of the actual number of days in such Interest Period and a year assumed to consist of 360 days.

Any installment of interest  or principal,  if any,  payable on any Note that is punctually paid or duly provi
by the Issuer on the applicable  Payment Date shall,  if such Holder holds Notes of an aggregate  initial  Security Balance or n
amount of at least  $1,000,000,  be paid to each  Holder of record  on the  preceding  Record Date,  by wire  transfer to an
specified in writing by such Holder  reasonably  satisfactory to the Indenture  Trustee as of the preceding Record Date or in al
cases or if no such  instructions  have been delivered to the Indenture  Trustee,  by check to such Noteholder  mailed to such H
address as it appears in the Note Register the amount  required to be  distributed to such Holder on such Payment Date pursuant
Holder's Securities;  provided,  however,  that the Indenture Trustee shall not pay to such Holders any amount required to be w
from a payment to such Holder by the Code.

(d)      Principal of each Note shall be due and payable in full on the Final  Scheduled  Payment Date for such Note as provided
related form of Note set forth in Exhibits A-1 and A-2. All  principal  payments on each of the Term Notes and Variable  Funding
shall be made in accordance  with the  priorities  set forth in paragraphs  (a) and (b) above to the  Noteholders  entitled  to
accordance with the related  Percentage  Interests  represented  thereby.  Upon written notice to the Indenture  Trustee by the
the Indenture  Trustee  shall  notify  the Person in whose  name a Note is  registered  at the close of  business  on the Recor
preceding the Final  Scheduled  Payment Date or other final Payment Date.  Such notice shall be mailed no later than five Busine
prior to such Final Scheduled  Payment Date or other final Payment Date and shall specify that payment of the principal  amount
interest  due with  respect to such Note at the Final  Scheduled  Payment  Date or other final  Payment  Date will be payable on
presentation  and surrender of such Note and shall specify the place where such Note may be presented  and  surrendered  for suc
payment.

Section 3.06.    Protection  of Trust Estate.  (a) The Issuer will from time to time  execute and  deliver all such  supplemen
amendments hereto and all such financing statements,  continuation statements,  instruments of further assurance and other instr
and will take such other action necessary or advisable to:

(i)      maintain  or  preserve  the lien  and  security  interest  (and the  priority  thereof)  of this  Indenture  or carry o
effectively the purposes hereof;

(ii)      perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii)      cause the Trust to enforce any of the Home Equity Loans; or

(iv)      preserve and defend  title to the Trust  Estate and the rights of the  Indenture  Trustee and the  Noteholders  and the
Enhancer in such Trust Estate against the claims of all persons and parties.

(b)      Except as otherwise  provided in this Indenture,  the Indenture  Trustee shall not remove any portion of the Trust Esta
consists of money or is evidenced by an  instrument,  certificate  or other writing from the  jurisdiction  in which it was held
date of the most  recent  Opinion of Counsel  delivered  pursuant  to Section  3.07 (or from the  jurisdiction  in which it was

described in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.07(a). If no Opinion of Counsel has y delivered pursuant to Section 3.07(b)) unless the Indenture Trustee shall have first received an Opinion of Counsel to the that the lien and security interest created by this Indenture with respect to such property will continue to be maintained giving effect to such action or actions.

The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact to execute any financing sta continuation statement or other instrument required to be executed pursuant to this Section 3.06.

Section 3.07.   Opinions as to Trust Estate. (a) On the Closing Date, the Issuer shall furnish to the Indenture Truste Credit Enhancer and the Owner Trustee an Opinion of Counsel at the expense of the Issuer stating that, upon delivery of t Agreements relating to the Initial Home Equity Loans to the Indenture Trustee or the Custodian, the Indenture Trustee will perfected, first priority security interest in the Home Equity Loans.

(b)     On or before December 31st in each calendar year, beginning in 2006, the Issuer shall furnish to the Indenture Tru Opinion of Counsel at the expense of the Issuer either stating that, in the opinion of such counsel, such action has been tak respect to the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and an requisite documents and with respect to the execution and filing of any financing statements and continuation statement necessary to maintain the lien and security interest in the Home Equity Loans and reciting the details of such action or stati in the opinion of such counsel no such action is necessary to maintain such lien and security interest. Such Opinion of Counse also describe the recording, filing, re-recording and refiling of this Indenture, any indentures supplemental hereto and an requisite documents and the execution and filing of any financing statements and continuation statements that will, in the opi such counsel, be required to maintain the lien and security interest in the Home Equity Loans until December 31 in the fo calendar year.

Section 3.08.   Performance of Obligations; Servicing Agreement. (a) The Issuer will punctually perform and observe all obligations and agreements contained in this Indenture, the Basic Documents and in the instruments and agreements included Trust Estate.

(b)     The Issuer may contract with other Persons to assist it in performing its duties under this Indenture, and any perf of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of the Issuer shall be deemed to be taken by the Issuer.

(c)     The Issuer will not take any action or permit any action to be taken by others which would release any Person from such Person's covenants or obligations under any of the documents relating to the Home Equity Loans or under any instrument i in the Trust Estate, or which would result in the amendment, hypothecation, subordination, termination or discharge of, or imp validity or effectiveness of, any of the documents relating to the Home Equity Loans or any such instrument, except such act the Master Servicer is expressly permitted to take in the Servicing Agreement.

(d)     The Issuer may retain an administrator and may enter into contracts with other Persons for the performance of the I obligations hereunder, and performance of such obligations by such Persons shall be deemed to be performance of such obligat the Issuer.

Section 3.09.   Negative Covenants. So long as any Notes are Outstanding, the Issuer shall not:

(a)     except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the Trust Estate, directed to do so by the Indenture Trustee;

(b)     claim any credit on, or make any deduction from the principal or interest payable in respect of, the Notes (oth amounts properly withheld from such payments under the Code) or assert any claim against any present or former Noteholder by of the payment of the taxes levied or assessed upon any part of the Trust Estate;

(c)     (i) permit the validity or effectiveness of this Indenture to be impaired, or permit the lien of this Indenture amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obli with respect to the Notes under this Indenture except as may be expressly permitted hereby, (ii) permit any lien, charge, claim, security interest, mortgage or other encumbrance (other than the lien of this Indenture) to be created on or exten otherwise arise upon or burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (iii) the lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate; or

(d)     impair or cause to be impaired the Issuer's interest in the Home Equity Loans, the Purchase Agreement or in an Document, if any such action would materially and adversely affect the interests of the Noteholders or the Credit Enhancer.

Section 3.10.   Annual Statement as to Compliance. The Issuer will deliver to the Indenture Trustee, within 120 days after of each fiscal year of the Issuer (commencing with the fiscal year 2006), an Officer's Certificate stating, as to the Aut Officer signing such Officer's Certificate, that:

(a)     a review of the activities of the Issuer during such year and of its performance under this Indenture and th Agreement has been made under such Authorized Officer's supervision; and

(b)     to the best of such Authorized Officer's knowledge, based on such review, the Issuer has complied with all conditi covenants under this Indenture and the provisions of the Trust Agreement throughout such year, or, if there has been a default compliance with any such condition or covenant, specifying each such default known to such Authorized Officer and the nat status thereof.

Section 3.11.   Recording of Assignments. The Issuer shall enforce the obligation of the Seller under the Purchase Agree submit or cause to be submitted for recordation all Assignments of Mortgages within 60 days of receipt of recording informa the Master Servicer.

Section 3.12.   Representations and Warranties Concerning the Home Equity Loans. The Indenture Trustee, as pledgee of t Equity Loans, has the benefit of the representations and warranties made by the Seller in Section 3.1(a) and Section 3.1(b) Purchase Agreement concerning the Home Equity Loans and the right to enforce the remedies against the Seller provided in such 3.1 to the same extent as though such representations and warranties were made directly to the Indenture Trustee.

Section 3.13.   Assignee of Record of the Home Equity Loans. As pledgee of the Home Equity Loans, the Indenture Trustee sha record title to the Home Equity Loans by being named as payee in the endorsements or assignments of the Loan Agreements and a in the Assignments of Mortgage to be recorded under Section 2.1 of the Purchase Agreement. Except as expressly provided

Purchase Agreement or in the Servicing Agreement with respect to any specific Home Equity Loan, the Indenture Trustee sh execute any endorsement or assignment or otherwise transfer such record title to any of the Home Equity Loans unt time as the remaining Trust Estate may be released pursuant to Section 8.05(b).

Section 3.14.    Master Servicer as Agent and Bailee of the Indenture Trustee. Solely for purposes of perfection under Sectio or 9-314 of the Uniform Commercial Code or other similar applicable law, rule or regulation of the state in which such prop held by the Master Servicer, the Issuer and the Indenture Trustee hereby acknowledge that the Master Servicer is acting as ag bailee of the Indenture Trustee in holding amounts on deposit in the Custodial Account pursuant to Section 3.02 of the Se Agreement that are allocable to the Home Equity Loans, as well as the agent and bailee of the Indenture Trustee in holdi Related Documents released to the Master Servicer pursuant to Section 3.06(c) of the Servicing Agreement, and any othe constituting a part of the Trust Estate which from time to time come into the possession of the Master Servicer. It is i that, by the Master Servicer's acceptance of such agency pursuant to Section 3.02 of the Servicing Agreement, the Indenture T as a pledgee of the Home Equity Loans, will be deemed to have possession of such Related Documents, such monies and such othe for purposes of Section 9-305 of the Uniform Commercial Code of the state in which such property is held by the Master Servicer.

Section 3.15.    Investment Company Act. The Issuer shall not become an "investment company" or under the "control" "investment company" as such terms are defined in the Investment Company Act of 1940, as amended (or any successor or ame statute), and the rules and regulations thereunder (taking into account not only the general definition of the term "inv company" but also any available exceptions to such general definition); provided, however, that the Issuer shall be in com with this Section 3.15 if it shall have obtained an order exempting it from regulation as an "investment company" so long as i compliance with the conditions imposed in such order.

Section 3.16.    Issuer May Consolidate, etc. (a)  The Issuer shall not consolidate or merge with or into any other Person, un

(i)    the Person (if other than the Issuer) formed by or surviving such consolidation or merger shall be a Person organi existing under the laws of the United States of America or any state or the District of Columbia and shall expressly assume, indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form reasonably satisfactory to the In Trustee, the due and punctual payment of the principal of and interest on all Notes and to the Certificate Paying Agent, on be the Certificateholders and the performance or observance of every agreement and covenant of this Indenture on the part of the to be performed or observed, all as provided herein;

(ii)    immediately after giving effect to such transaction, no Event of Default shall have occurred and be continuing;

(iii)    the Issuer receives the prior written consent of the Credit Enhancer and the Rating Agencies shall have notified the that such transaction shall not cause the rating of the Notes to be reduced, suspended or withdrawn or to be considered by Rating Agency to be below investment grade without taking into account the Policy;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trus the Credit Enhancer) to the effect that such transaction will not have any material adverse tax consequence to the Issue Noteholder or any Certificateholder;

(v)    any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken

(vi)    the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each that such consolidation or merger and such supplemental indenture comply with this Article III and that all conditions pr herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

(b)    The Issuer shall not convey or transfer any of its properties or assets, including those included in the Trust Esta any Person, unless:

(i)    the Person that acquires by conveyance or transfer the properties and assets of the Issuer the conveyance or tran which is hereby restricted shall (i) be a United States citizen or a Person organized and existing under the laws of the States of America or any state, (ii) expressly assumes, by an indenture supplemental hereto, executed and delivered to the In Trustee, in form satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on al and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be perfo observed, all as provided herein, (iii) expressly agrees by means of such supplemental indenture that all right, title and i so conveyed or transferred shall be subject and subordinate to the rights of Holders of the Notes, (iv) unless otherwise prov such supplemental indenture, expressly agrees to indemnify, defend and hold harmless the Issuer against and from any loss, li or expense arising under or related to this Indenture and the Notes and (v) expressly agrees by means of such supplemental in that such Person (or if a group of Persons, then one specified Person) shall make all filings with the Commission (and an appropriate Person) required by the Exchange Act in connection with the Notes;

(ii)    immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continui

(iii)    the Issuer receives the prior written consent of the Credit Enhancer and the Rating Agencies shall have notified the that such transaction shall not cause the rating of the Notes to be reduced, suspended or withdrawn, if determined without re the Policy;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trus the Credit Enhancer) to the effect that such transaction will not have any material adverse tax consequence to the Issuer Noteholder;

(v)    any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken

(vi)    the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions pr herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

Section 3.17.    Successor or Transferee. (a) Upon any consolidation or merger of the Issuer in accordance with Section 3 the Person formed by or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substitute and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person had been n the Issuer herein.

(b)    Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to Section 3.16(b), the Issuer released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuer with res

the Notes immediately upon the delivery of written notice to the Indenture Trustee of such conveyance or transfer.

Section 3.18.    No Other Business. The Issuer shall not engage in any business other than financing,  purchasing,  owning and and managing the Home Equity Loans and the issuance of the Notes and Certificates  in the manner  contemplated  by this  Indent the Basic Documents and all activities incidental thereto.

Section 3.19.    No Borrowing. The Issuer shall not issue, incur, assume,  guarantee  or otherwise  become liable,  dire indirectly, for any indebtedness except for the Notes.

Section 3.20.    Guarantees, Loans,  Advances and Other  Liabilities.  Except as  contemplated  by this  Indenture or the othe Documents,  the Issuer  shall not make any loan or advance or credit to, or  guarantee  (directly  or  indirectly  or by an  ins having the effect of assuring  another's  payment or performance on any obligation or capability of so doing or otherwise),  end otherwise become  contingently  liable,  directly or indirectly,  in connection with the  obligations,  stocks or dividends of, purchase,  repurchase  or acquire  (or agree  contingently  to do so) any stock,  obligations,  assets or  securities  of, or an interest in, or make any capital contribution to, any other Person.

Section 3.21.    Capital  Expenditures.  The Issuer shall not make any expenditure (by long- term or operating lease or otherwi capital assets (either realty or personally).

Section 3.22.    Owner Trustee Not Liable for Certificates or Related  Documents.  The recitals contained herein shall be taken statements of the Depositor,  and the Owner Trustee assumes no responsibility for the correctness  thereof.  The Owner Trustee m representations  as to the validity or sufficiency of this  Indenture,  of any Basic  Document or of the  Certificates  (other t signatures of the Owner Trustee on the  Certificates)  or the Notes,  or of any Related  Documents.  The Owner Trustee shall at have any  responsibility  or liability  with respect to the  sufficiency of the Trust Estate or its ability to generate the paym be distributed to Certificateholders  under the Trust Agreement or the Noteholders under this Indenture,  including,  the compli the  Depositor  or the Seller  with any  warranty  or  representation  made under any Basic  Document or in any related  document accuracy of any such warranty  or  representation,  or any action of the  Certificate  Paying Agent,  the  Certificate  Registrar Indenture Trustee taken in the name of the Owner Trustee.

Section 3.23.    Restricted  Payments.  The Issuer shall not,  directly or indirectly,  (i) pay any dividend or make any  distr (by reduction of capital or otherwise),  whether in cash,  property,  securities or a combination  thereof, to the Owner Trustee owner of a beneficial  interest in the Issuer or otherwise  with respect to any  ownership or equity  interest or security in or Issuer,  (ii) redeem,  purchase,  retire or otherwise  acquire for value any such ownership or equity interest or security or (i aside or otherwise segregate any amounts for any such purpose;  provided,  however,  that the Issuer may make, or cause to be ma distributions  to the Owner  Trustee and the  Certificateholders  as  contemplated  by, and to the extent funds are  available f purpose  under the Trust  Agreement  and (y) payments to the Master  Servicer  pursuant to the terms of the  Servicing  Agreemen Issuer will not,  directly or indirectly,  make payments to or distributions  from the Custodial Account except in accordance wi Indenture and the other Basic Documents.

Section 3.24.    Notice of Events of  Default.  The Issuer  shall give the  Indenture  Trustee,  the  Credit  Enhancer and the Agencies prompt written notice of each Event of Default hereunder and under the Trust Agreement.

Section 3.25.    Further  Instruments and Acts. Upon request of the Indenture Trustee or the Credit Enhancer,  the Issuer will and deliver such further  instruments and do such further acts as may be reasonably  necessary or proper to carry out more  effe the purpose of this Indenture.

Section 3.26.    Statements to Noteholders.  On each Payment Date, the Indenture  Trustee and the Certificate  Registrar shall by mail to each  Noteholder  or make  available  on its website  initially  located at "www.jpmorgan.com/sfr"  and  Certificate respectively,  the statement delivered to it, on the Business Day following the related  Determination Date pursuant to Section the Servicing Agreement.

Section 3.27.    Determination of Note Rates.  On the second LIBOR  Business Day immediately  preceding  (i) the Closing Date case of the first Interest  Period and (ii) the first day of each succeeding  Interest  Period,  the Indenture  Trustee shall de LIBOR and the Note Rate for such  Interest  Period and shall  inform  the  Issuer,  the Master  Servicer  and the Depositor  a respective facsimile numbers given to the Indenture Trustee in writing.

Section 3.28.    Payments  under the Policy. (a) On or prior to 12:00 noon New York City time on the second  Business  Day bef Payment Date,  the Indenture  Trustee  shall make a draw on the Policy,  in an amount,  if any,  equal to the Deficiency  Amou respect to the Notes.  For purposes of the  foregoing,  amounts in the Payment  Account  available  for interest  distributions Notes on any Payment Date shall be deemed to include all amounts  distributed  on the Home Equity Loans for such  Payment  Date, than the Principal  Collection  Distribution  Amount  distributed  thereon.  In addition,  on the Final  Scheduled  Payment  Dat Indenture  Trustee  shall make a draw on the Policy in the amount by which the  Security  Balances on the Notes  exceeds  the  p otherwise available to be made to the Holders thereof on the Final Scheduled Payment Date.

(b)      The Indenture  Trustee shall submit,  if any Deficiency  Amount is specified in any statement to Holders of the Notes p by the Master Servicer pursuant to Section 4.01 of the Servicing  Agreement and timely delivered to the Indenture  Trustee,  the (in the form  attached as Exhibit A to the Policy) in the amount of the  Deficiency  Amount to the Credit  Enhancer no later tha noon, New York City time,  on the second Business Day prior to the applicable  Payment Date.  Upon receipt of such Deficiency  Am accordance  with the terms of the Policy,  the Indenture  Trustee  shall  deposit such  Deficiency  Amount in the Payment  Acco distribution to the Noteholders pursuant to Section 3.05.

Section 3.29.    Additional Representations of the Issuer.

         The Issuer  represents  and warrants to the  Indenture  Trustee and the Credit  Enhancer that as of the Closin unless specifically stated otherwise:

(a)      This  Indenture  creates a valid and  continuing  security  interest (as defined in the New York UCC) in the Mortgage N favor of the Indenture  Trustee,  which security interest is prior to all other Liens (except as expressly  permitted  other this Indenture),  and is enforceable as such against creditors of and purchasers from the Issuer.

(b)      The Mortgage Notes constitute "instruments" within the meaning of the New York UCC and the Delaware UCC.

(c)      The Issuer owns and has good and marketable title to the Mortgage Notes free and clear of any Lien of any Person.

(d)      The original  executed copy of each  mortgage  Note (except for any Mortgage Note with respect to which a Lost Note  Af

has been delivered to the Custodian) has been delivered to the Custodian.

(e)     The Issuer has received a written  acknowledgment from the Custodian that the Custodian  is acting  solely as agent Indenture Trustee for the benefit of the Noteholders and the Credit Enhancer.

(f)     Other than the security  interest  granted to the Indenture  Trustee  pursuant to this Indenture,  the Issuer has not p assigned,  sold,  granted a security  interest in, or otherwise  conveyed any of the Mortgage Notes. The Issuer has not aut the filing of and is not aware of any financing  statements  against the Issuer that include a description of collateral  c the  Mortgage  Notes other than any  financing  statement  relating to the  security  interest  granted to the  Indenture hereunder or any security  interest that has been terminated.  The Issuer is not aware of any judgment or tax lien filings the Issuer.

(g)     None of the Mortgage Notes has any marks or notations  indicating that they have been pledged,  assigned or otherwise c to any Person other than the Indenture Trustee,  except for (i) any endorsements that are part of a complete chain of endor from the originator of the Mortgage Note to the Indenture Trustee,  and (ii) any marks or notations  pertaining to Liens th been terminated or released.

---

ARTICLE IV

The Notes; Satisfaction and Discharge of Indenture.

Section 4.01.     The Notes;  Increase  of Maximum Variable  Funding  Balance;  Variable  Funding  Notes. (a) The Term Notes s registered in the name of a nominee  designated by the  Depository.  Beneficial  Owners will hold interests in the Class A Notes forth in Section 4.06 herein in minimum  initial  Security  Balances of $100,000 and integral  multiples of $1 in excess  thereo Capped Funding Notes will be issued as definitive notes in fully  registered form in minimum initial  Security  Balances of $10, integral  multiples of $1 in excess thereof,  together with any additional amount necessary to cover (i) the aggregate initial S Balance of the Capped  Funding  Notes  surrendered  at the time of the  initial  denominational  exchange thereof  (with such Security  Balance  in each case  being  deemed to be the  Security  Balance  of the  Capped  Funding  Notes at the time of such denominational  exchange  thereof) or (ii) the aggregate  initial  Security  Balance of any Capped  Funding Notes issued in an e described in subsection (d) below.

The Indenture  Trustee may for all purposes  (including  the making of payments due on the Notes) deal with the  Deposi the  authorized  representative  of the  Beneficial  Owners with respect to the Term Notes for the purposes of exercising the ri Holders of Term Notes  hereunder.  Except as provided in the next  succeeding  paragraph of this Section 4.01, the rights of Ben Owners with respect to the Term Notes shall be limited to those  established by law and agreements  between such Beneficial  Own the  Depository  and  Depository  Participants.  Except as provided  in Section  4.08,  Beneficial  Owners  shall not be  entit definitive  certificates  for the Term Notes as to which they are the Beneficial  Owners.  Requests and directions  from, and vo the  Depository  as Holder of the Term Notes shall not be deemed  inconsistent  if they are made with respect to different  Ben Owners.  The Indenture  Trustee may establish a reasonable  record date in connection with  solicitations of consents from or vo Noteholders  and give notice to the  Depository of such record date.  Without the consent of the Issuer and the Indenture  Trust Term Note may be transferred by the Depository  except to a successor  Depository  that agrees to hold such Note for the account Beneficial Owners.

In the event the  Depository  Trust Company  resigns or is removed as Depository,  the Indenture  Trustee with the appr the Issuer may appoint a successor  Depository.  If no successor  Depository has been appointed within 30 days of the effective the  Depository's  resignation  or  removal,  each  Beneficial  Owner  shall  be  entitled  to  certificates  representing  the N beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuer by the Owner Trustee,  not in its individual  c but solely as Owner Trustee,  authenticated  by the Note  Registrar and delivered by the Indenture  Trustee to or upon the order Issuer.

(b)     On each Payment Date, the aggregate  Security  Balance of the Variable  Funding Notes shall be increased by an amount e the  Additional  Balance  Differential  for such Payment Date,  subject to the  Maximum  Variable  Funding  Balance and the te conditions set forth below.  The Maximum Variable Funding Balance may be increased as provided in Section 9.01(a)(viii).

(c)     The Variable  Funding Notes issued on the Closing Date shall bear the Designation  "VFN-1" and each new Variable  Fundi for such Class of Variable Funding Note will bear sequential numerical designations in the order of their issuance.

(d)     Subject to the following  conditions,  the Variable  Funding  Notes may be exchanged  pursuant to Section 4.02 for one Capped Funding Notes.  Prior to any such exchange,  the party requesting the exchange must provide an Opinion of Counsel,  addre the Credit  Enhancer,  the Issuer and the Indenture  Trustee,  to the effect that the Capped  Funding  Notes shall qualify for income tax purposes as  indebtedness  of the Issuer and the Issuer will not be  characterized  as an association  (or a publicly partnership)  taxable as a corporation  or a taxable  mortgage  pool within the meaning of Section  7701(i) of the Code. If requ the Opinion of Counsel,  the Capped Funding Notes may be issued  concurrently  with a reduction in the Security Balance of the V Funding Notes and an equivalent  increase  in the Security  Balance of the  Certificates,  pursuant to  Section  3.12 of th Agreement.  Upon  receipt of the Opinion of Counsel,  the Indenture  Trustee  shall  issue the Capped  Funding  Notes with a S Balance equal to the Security  Balance  permitted under such Opinion of Counsel,  in minimum  denominations  as set forth in sub (a) above.  The Capped  Funding  Notes shall bear the designation  "Capped"  in  addition  to any other  applicable  designati connection  with such  exchange,  any Security  Balance not  represented by either a Capped Funding Note or an increase in the S Balance of the  Certificates  referred to above shall result in the issuance of a new Variable  Funding Note having an initial S Balance equal to the excess of the outstanding  Security  Balance of the Variable  Funding Note so surrendered over the initial S Balances of the related  Capped  Funding Notes and an increase in the  Security  Balance of the  Certificates  referred to abov Indenture  Trustee and the Issuer agree to cooperate with each other and the party  requesting  the exchange of Variable  Fundin for Capped Funding Notes, the Credit Enhancer, the Depositor,  the Seller and the Owner Trustee and to cause no unreasonable  d issuing Capped Funding Notes in connection with this Section and Section 3.12 of the Trust Agreement.

Section 4.02.     Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate Registrar.  (a) The Issuer  shall  cause to be kept at the  Indenture  Trustee's  Corporate  Trust  Office a Note  Register  in which,  subject

reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transf
exchanges of Notes as herein provided.

(b)     Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of a
at the Corporate Trust Office, the Issuer shall execute and the Note Registrar shall authenticate and deliver, in the name
designated transferee or transferees, one or more new Notes in authorized initial Security Balances evidencing the same ag
Percentage Interests.

(c)     No Variable Funding Note, other than any Capped Funding Notes, may be transferred. Subject to the provisi
forth below, Capped Funding Notes may be transferred, provided that with respect to the initial transfer thereof by the Seller,
written notification of such transfer shall have been given to the Rating Agencies and to the Credit Enhancer by the Seller.

(d)     No transfer, sale, pledge or other disposition of a Capped Funding Note shall be made unless such transfer,
pledge or other disposition is exempt from the registration requirements of the Securities Act of 1933, as amended,
applicable state securities laws or is made in accordance with said Act and laws. In the event of any such transfer, the In
Trustee or the Issuer shall require the transferee to execute either (i)(a) an investment letter in substantially the form a
hereto as Exhibit B (or in such form and substance reasonably satisfactory to the Indenture Trustee and the Issuer) which inv
letters shall not be an expense of the Trust, the Owner Trustee, the Indenture Trustee, the Master Servicer, the Depositor
Issuer and which investment letter states that, among other things, such transferee (a) is a "qualified institutional bu
defined under Rule 144A, acting for its own account or the accounts of other "qualified institutional buyers" as defined und
144A, and (b) is aware that the proposed transferor intends to rely on the exemption from registration requirements un
Securities Act of 1933, as amended, provided by Rule 144A or (ii)(a) a written Opinion of Counsel (which may be in-house  c
acceptable to and in form and substance reasonably satisfactory to the Indenture Trustee and the Issuer that such transfer
made pursuant to an exemption, describing the applicable exemption and the basis therefor, from said Act and laws or is bei
pursuant to said Act and laws, which Opinion of Counsel shall not be an expense of the Indenture Trustee or the Issuer and
Indenture Trustee shall require the transferee executes an investment letter in substantially the form of Exhibit C hereto
transferor executes a representation letter, substantially in the form of Exhibit D hereto acceptable to and in form and su
reasonably satisfactory to the Issuer and the Indenture Trustee certifying to the Issuer and the Indenture Trustee th
surrounding such transfer, which investment letter shall not be an expense of the Indenture Trustee or the Issuer. The Hold
Capped Funding Note desiring to effect such transfer shall, and does hereby agree to, indemnify the Indenture Trustee, the
Enhancer and the Servicer against any liability that may result if the transfer is not so exempt or is not made in accordance  wi
federal and state laws. In addition, any Noteholder of a Capped Funding Note desiring to effect any such transfer shall deliv
any private placement memorandum or other offering document prepared in connection with the offering of such Capped Fundin
specifies that such delivery will be required, to the Indenture Trustee and the Master Servicer, either (i) a cert
substantially to the effect of the certification set forth in Exhibit G to the Trust Agreement or (ii) an Opinion of Counse
establishes to the satisfaction of the Indenture Trustee, the Credit Enhancer and the Master Servicer that the purch
Certificates is permissible under applicable law, will not constitute or result in any non-exempt prohibited transaction unde
or Section 4975 of the Code and will not subject the Indenture Trustee or the Master Servicer to any obligation or li
(including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in this Ind
which Opinion of Counsel shall not be an expense of the Indenture Trustee or the Master Servicer. Notwithstanding the foregoin
restrictions on transfer specified in this paragraph are not applicable to any Capped Funding Notes that have been registered
the Securities Act of 1933 pursuant to Section 2.4 of the Purchase Agreement.

(e)(i)   In the case of any Class A Note (each such Note, a "Book-Entry Non-Restricted Note") presented for registra
the name of any Person, such Person shall be deemed to have represented to the Indenture Trustee, the Depositor and the
Servicer that (A) the Person is not a Plan Investor, or (B) the acquisition of the Note by that Person does not constitute
rise to a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code for which no statutory, regulat
administrative exemption is available.

(ii)    (A) If any Class A Note (or any interest therein) is acquired or held in violation of the provisions of
(e)(i) above, then the last preceding Transferee that is not in violation of the provisions of clause (e)(i) above shall be re
to the extent permitted by law, to all rights and obligations as Note Owner thereof retroactive to the date of such Transfer
Book-Entry Non-Restricted Note. The Indenture Trustee shall be under no liability to any Person for making any payments due
Note to such preceding Transferee.

(iii)   Any Person investing assets of a Plan may not acquire any Note or any interest therein if the Depositor, the
Servicer, the Indenture Trustee, the Owner Trustee or any affiliates of any such person (A) has investment or adminis
discretion with respect to those plan assets of such Plan; (B) has authority or responsibility to give or regularly gives inv
advice with respect to those plan assets for a fee and pursuant to an agreement or understanding that such advice will ser
primary basis for investment decisions with respect to those plan assets and will be based on the particular investment needs
Plan; or (C) unless United States Department of Labor Prohibited Transaction Class Exemption 90-1, 91-38 or 95-60 applies,
employer maintaining or contributing to the Plan.

(iv)    Any purported Beneficial Owner whose acquisition or holding of any Book-Entry Non-Restricted Note (or i
therein) was effected in violation of the restrictions in this Section 4.02(e) shall indemnify and hold harmless the Deposito
Indenture Trustee, the Underwriter, the Master Servicer, any Subservicer, and the Trust from and against any and all liabi
claims, costs or expenses incurred by such parties as a result of such acquisition or holding.

(f)     Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged for other Notes of like te
each case in authorized initial Security Balances evidencing the same aggregate Percentage Interests upon surrender of the N
be exchanged at the Corporate Trust Office of the Note Registrar. With respect to any surrender of Capped Funding Notes for e
new Notes delivered in exchange therefor will bear the designation "Capped" in addition to any other applicable design
Whenever any Notes are so surrendered for exchange, the Indenture Trustee shall execute and the Note Registrar shall authentic
deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrender
registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a
instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by, the Holder thereof or his a
duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a corres
located in the city of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and
entitled to the same rights and privileges, as the Notes surrendered.

(g)     No service charge shall be imposed for any registration of transfer or exchange of Notes, but the Note Re
shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection w
registration of transfer or exchange of Notes.

(h)     All Notes surrendered for registration of transfer and exchange shall be cancelled by the Note Registr

delivered to the Indenture Trustee for subsequent destruction without liability on the part of either.

(i)      The Issuer hereby appoints the Indenture Trustee as Certificate Registrar to keep at its Corporate Trust O Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges pursuant to Section 3.05 of the Trust Agreement. The Indenture Trustee hereby accepts such appointment.

Section 4.03.    Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note is surrendered to the Indenture Trust the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) t delivered to the Indenture Trustee such security or indemnity as may be required by it to hold the Issuer and the Indenture harmless, then, in the absence of notice to the Issuer, the Note Registrar or the Indenture Trustee that such Note has been a by a bona fide purchaser, and provided that the requirements of Section 8-405 of the UCC are met, the Issuer shall execute, a its request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed or stolen Note, a replacement Note of the same class; provided, however, that if any such destroyed, lost or stolen Note, bu mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof. If, after the delivery replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bo purchaser of the original Note in lieu of which such replacement Note was issued presents for payment such original Note, the and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the Person to whom delivered or any Person taking such replacement Note from such Person to whom such replacement Note was delivered or any assi such Person, except a bona fide purchaser, and shall be entitled to recover upon the security or indemnity provided therefor extent of any loss, damage, cost or expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuer may require the payment by the Holder Note of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and an reasonable expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed, lost or stol shall constitute an original additional contractual obligation of the Issuer, whether or not the mutilated, destroyed, lost or Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equal proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other rights and r with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04.    Persons Deemed Owners. Prior to due presentment for registration of transfer of any Note, the Issuer, the In Trustee, the Credit Enhancer and any agent of the Issuer or the Indenture Trustee may treat the Person in whose name any registered (as of the day of determination) as the owner of such Note for the purpose of receiving payments of principal interest, if any, on such Note and for all other purposes whatsoever, whether or not such Note be overdue, and none of the the Indenture Trustee or any agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 4.05.    Cancellation. All Notes surrendered for payment, registration of transfer, exchange or redemption sha surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture Trustee and shall be promptly cance the Indenture Trustee. The Issuer may at any time deliver to the Indenture Trustee for cancellation any Notes pre authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Notes so delivere be promptly cancelled by the Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cance provided in this Section 4.05, except as expressly permitted by this Indenture. All cancelled Notes may be held or dispose the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at the time unless the Issue direct by an Issuer Request that they be destroyed or returned to it; provided however, that such Issuer Request is timely Notes have not been previously disposed of by the Indenture Trustee.

Section 4.06.    Book-Entry Notes. The Term Notes shall initially be issued as one or more Term Notes held by the Boo Custodian or, if appointed to hold such Term Notes as provided below, the Depository Trust Company, the initial Depositor registered in the name of its nominee Cede & Co. Except as provided below, registration of such Term Notes may not be transfe the Indenture Trustee except to another Depository that agrees to hold such Term Notes for the respective Beneficial Owner Indenture Trustee is hereby initially appointed as the Book-Entry Custodian and hereby agrees to act as such in accordance h and in accordance with the agreement that it has with the Depository authorizing it to act as such. The Book-Entry Custodi and, if it is no longer qualified to act as such, the Book-Entry Custodian shall, appoint, by a written instrument delivered Depositor, the Master Servicer and, if the Indenture Trustee is not the Book-Entry Custodian, the Indenture Trustee, an transfer agent (including the Depository or any successor Depository) to act as Book-Entry Custodian under such conditions predecessor Book-Entry Custodian and the Depository or any successor Depository may prescribe, provided that the pred Book-Entry Custodian shall not be relieved of any of its duties or responsibilities by reason of any new appointment, except Depository is the successor to the Book-Entry Custodian. If the Indenture Trustee resigns or is removed in accordance w terms hereof, the successor trustee or, if it so elects, the Depository shall immediately succeed to its predecessor's du Book-Entry Custodian. The Depositor shall have the right to inspect, and to obtain copies of, any Term Notes held as Boo Notes by the Book-Entry Custodian. No Beneficial Owner will receive a Definitive Note representing such Beneficial Owner's i in such Note, except as provided in Section 4.08. Unless and until definitive, fully registered Notes (the "Definitive Notes been issued to Beneficial Owners pursuant to Section 4.08:

(i)      the provisions of this Section 4.06 shall be in full force and effect;

(ii)     the Note Registrar and the Indenture Trustee shall be entitled to deal with the Depository for all purposes Indenture (including the payment of principal of and interest on the Notes and the giving of instructions or directions hereun the sole holder of the Term Notes, and shall have no obligation to the Owners of Term Notes;

(iii)    to the extent that the provisions of this Section 4.06 conflict with any other provisions of this Indenture, the pro of this Section 4.06 shall control;

(iv)     the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to those establi law and agreements between such Owners of Term Notes and the Depository and/or the Depository Participants. Unless an Definitive Term Notes are issued pursuant to Section 4.08, the initial Depository will make book-entry transfers among the Dep Participants and receive and transmit payments of principal of and interest on the Notes to such Depository Participants; and

(v)      whenever this Indenture requires or permits actions to be taken based upon instructions or directions of Holders Notes evidencing a specified percentage of the Security Balances of the Term Notes, the Depository shall be deemed to represe

percentage only to the extent that it has received  instructions to such effect from Beneficial Owners and/or  Depository Parti
owning or representing, respectively,  such required  percentage as the beneficial  interest in the Term Notes and has deliver
instructions to the Indenture Trustee.

Section 4.07.    Notices to Depository.  Whenever a notice or other  communication to the Term Note  Holders is required  und
Indenture,  unless and until Definitive Term Notes shall have been issued to Beneficial  Owners pursuant to Section 4.08, the In
Trustee shall give all such notices and  communications  specified  herein to be given to Holders of the Term Notes to the  Depo
and shall have no obligation to the Beneficial Owners.

Section 4.08.    Definitive  Notes.  If (i) the Depositor  advises the Indenture  Trustee in writing that the  Depository is no
willing or able to properly  discharge  its  responsibilities  with  respect to the Term Notes and the  Depositor is unable to l
qualified  successor,  (ii) the Depositor  notifies the Depository of its intent to terminate the book-entry system and, upon rec
a notice of intent from the  Depository,  the  participants  holding  beneficial  interest in the book-entry  notes agree to ini
termination or (iii) after the occurrence of an Event of Default,  Owners of Term Notes representing  beneficial interests  aggr
at least a majority of the Security  Balances of the Term Notes advise the Depository in writing that the  continuation of a boo
system  through the  Depository is no longer in the best  interests of the  Beneficial  Owners,  then the  Depository  shall not
Beneficial  Owners and the Indenture  Trustee of the occurrence of any such event and of the  availability  of Definitive Term N
Beneficial  Owners requesting the same.  Upon  surrender to the Indenture  Trustee of the  typewritten  Term Notes representi
Book-Entry Notes by the Book-Entry Custodian or the Depository,  as applicable,  accompanied by registration  instructions,  the
shall execute and the Indenture  Trustee shall  authenticate  the  Definitive  Term Notes in accordance  with the  instructions
Depository.  None of the  Issuer,  the  Note  Registrar  or the  Indenture  Trustee  shall be liable for any delay in  delivery
instructions and may  conclusively  rely on, and shall be protected in relying on, such  instructions.  Upon the issuance of Def
Notes, the Indenture Trustee shall recognize the Holders of the Definitive Notes as Noteholders.

In addition,  if an Event of Default has occurred and is continuing,  each  Beneficial  Owner  materially  adversely  a
thereby may at its option request a Definitive Note evidencing such  Beneficial  Owner's  Percentage  Interest in the related C
Notes. In order to make such request,  such  Beneficial  Owner shall,  subject to the rules and procedures of the  Depository,
the Depository or the related  Depository  Participant  with directions for the Note Registrar to exchange or cause the exchange
Beneficial  Owner's interest in such Class of Notes for an equivalent  Percentage  Interest in fully  registered  definitive for
receipt by the Note  Registrar  of  instructions  from the  Depository  directing the Note  Registrar  to effect such  exchange
instructions to contain information regarding the Class of Notes and the Security  Balance being exchanged,  the Depository  Part
account to be debited with the decrease,  the  registered  holder of and delivery  instructions  for the Definitive  Note, and an
information  reasonably  required by the Note  Registrar),  (i) the Note Registrar  shall instruct the Depository to reduce the
Depository  Participant's  account by the aggregate Security Balance of the Definitive Note, (ii) the Issuer shall execute and t
Registrar shall authenticate and deliver,  in accordance with the registration and delivery instructions  provided by the Deposit
Definitive Note evidencing such Beneficial  Owner's  Percentage  Interest in such Class of Notes and (iii) the Issuer shall exec
the Note Registrar shall  authenticate a new Book-Entry Note reflecting the reduction in the aggregate  Security  Balance of suc
of Notes by the amount of the Definitive Notes.

Section 4.09.    Tax Treatment. The Issuer has entered into this  Indenture,  and the Notes will be issued,  with the intentio
for federal,  state and local  income,  single  business and  franchise tax  purposes,  the Notes will be treated as  indebtedne
purposes of such taxes.  The  Issuer,  by entering into this  Indenture,  and each  Noteholder,  by its acceptance of its Note (a
Beneficial  Owner by its acceptance of an interest in the applicable  Book-Entry Note), agree to treat the Notes for federal,  st
local income, single business and franchise tax purposes as indebtedness for purposes of such taxes.

Section 4.10.    Satisfaction  and  Discharge of Indenture.  This  Indenture  shall cease to be of further  effect with respect
Notes except as to (i) rights  of  registration of transfer and exchange,  (ii)  substitution of mutilated,  destroyed,  lost or
Notes,  (iii) rights of Noteholders to receive  payments of principal  thereof and interest  thereon,  (iv) Sections 3.03,  3.04
3.09, 3.16, 3.18 and 3.19, (v) the rights,  obligations and immunities of the Indenture Trustee hereunder  (including the rights
Indenture  Trustee under  Section  6.07 and the obligations  of the  Indenture  Trustee under  Section 4.11) and (vi) the ri
Noteholders  and the Credit  Enhancer as beneficiaries  hereof with respect to the property so deposited  with the  Indenture
payable  to all or any of them,  and the  Indenture  Trustee,  on demand of and at the  expense of the  Issuer,  shall  execute
instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when

(A)    either

(1)    all Notes thereofore  authenticated  and delivered (other than (i) Notes that have been destroyed,
stolen  and that have  been  replaced  or paid as provided  in Section  4.03 and (ii)  Notes  for whose payment  mo
thereofore  been  deposited in trust or  segregated  and held in trust by the Issuer and  thereafter  repaid to the Is
discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation;

(2)    all Notes not thereofore delivered to the Indenture Trustee for cancellation

a.    have become due and payable,

b.    will become due and payable at the Final Scheduled Payment Date within one year, or

c.    have been declared immediately due and payable pursuant to Section 5.02.

and the Issuer,  in the case of a. or b. above,  has  irrevocably  deposited or caused to be  irrevocably  deposited with the In
Trustee cash or direct  obligations of or  obligations  guaranteed by the United States of America (which will mature prior to t
such amounts are payable),  in trust for such purpose,  in an amount  sufficient to pay and discharge the entire  indebtedness
Notes and Certificates  then  outstanding not thereofore  delivered  to the Indenture  Trustee  for  cancellation  when due on th
Scheduled Payment Date;

(B)    the Issuer has paid or caused to be paid all other sums payable hereunder and under the Insurance  Ag
by the Issuer; and

(C)    the Issuer has delivered to the Indenture  Trustee and the Credit  Enhancer an Officer's  Certificate
Opinion of Counsel,  each meeting the applicable  requirements of Section 10.01 and each stating that all conditions pr
herein provided for relating to the  satisfaction  and discharge of this Indenture have been complied with and, if the
of Counsel  relates to a deposit made in  connection  with Section  4.10(A)(2)b. above,  such opinion shall further be
effect  that such  deposit  will not have any  material  adverse tax  consequences to the Issuer,  any Noteholders
Certificateholders.

Section 4.11.    Application of Trust Money.  All monies  deposited with the Indenture  Trustee  pursuant to Section 4.10 hereof be held in trust and applied  by it, in  accordance  with the  provisions  of the Notes and this  Indenture,  to the  payment, directly or through  any Paying Agent or  Certificate  Paying Agent,  as the  Indenture  Trustee  may  determine,  to the Holders Securities,  of all sums due and to become due thereon for principal and  interest;  but such monies need not be segregated  from funds except to the extent required herein or required by law.

Section 4.12.    Subrogation  and  Cooperation.  The Issuer and the  Indenture  Trustee  acknowledge  that (i) to the extent the Enhancer makes payments under the Policy on account of principal of or interest on the Home Equity Loans, the Credit  Enhancer fully subrogated  to the rights of the  Noteholders  to receive such  principal  and interest from the Home Equity Loans and any Collateral  and (ii) the  Credit  Enhancer  shall be paid such  principal  and  interest  but only from the  sources  and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

     The Indenture  Trustee shall  cooperate in all respects with any  reasonable  request or direction by the Credit  Enhancer in action to  preserve or enforce the Credit  Enhancer's  rights or interest  under this Indenture or the Insurance  Agreement,  consistent with this Indenture and without  limiting the rights of the  Noteholders as otherwise set forth in the  Indenture,  including,  without limitation,  upon the occurrence and continuance of a default under the Insurance  Agreement,  a request to take any one or more of the following actions:

(i)      institute  Proceedings  for the  collection of all amounts then payable on the Notes or under this Indenture in respect of Notes and all amounts  payable  under the Insurance  Agreement and to enforce any judgment  obtained and collect from the Issuer monies adjudged due;

(ii)      sell the Trust  Estate or any  portion  thereof or rights or  interest  therein,  at one or more  public or private  Sale (as defined in Section 5.15 hereof) called and conducted in any manner permitted by law;

(iii)      file or record all assignments that have not previously been recorded;

(iv)      institute Proceedings from time to time for the complete or partial foreclosure of this Indenture; and

(v)      exercise any remedies of a secured party under the Uniform  Commercial Code and take any other  appropriate  action to protect and enforce the rights and remedies of the Credit Enhancer hereunder.

     Following the payment in full of the Notes,  the Credit Enhancer shall continue to have all rights and privileges  provided it under this Section and in all other  provisions of this Indenture,  until all amounts owing to the Credit Enhancer have been paid in full.

Section 4.13.    Repayment of Monies Held by Paying Agent.  In connection with the  satisfaction  and discharge of this Indenture with respect to the Notes,  all monies then held by any Person other than the Indenture  Trustee under the provisions of this Indenture with respect to such Notes shall,  upon demand of the Issuer,  be paid to the Indenture  Trustee to be held and applied according to Section 3.05 and thereupon such Paying Agent shall be released from all further liability with respect to such monies.

Section 4.14.    Temporary  Notes.  Pending  the  preparation  of any  Definitive  Notes,  the Issuer may execute and upon its written direction,  the Indenture  Trustee may  authenticate and make available for delivery,  temporary Notes that are printed,  lithographed, typewritten,  photocopied or otherwise  produced,  in any  denomination,  substantially of the tenor of the Definitive Notes in lieu of which they are issued and with such appropriate  insertions,  omissions,  substitutions and other variations as the officers  executing such Notes may determine,  as evidenced by their execution of such Notes.

     If temporary Notes are issued, the Issuer will cause Definitive Notes to be prepared without  unreasonable  delay.  After preparation of the Definitive  Notes,  the temporary Notes shall be exchangeable  for Definitive  Notes upon surrender of the temporary Notes at the office or agency of the Indenture  Trustee,  without charge to the Holder.  Upon surrender for  cancellation of any one or more  temporary  Notes,  the Issuer shall execute and the Indenture  Trustee shall  authenticate and make  available for delivery in exchange therefor,  Definitive  Notes of  authorized  denominations  and of like  tenor and  aggregate  principal  amount.  Until so exchanged, such temporary Notes shall in all respects be entitled to the same benefits under this Indenture as Definitive Notes.

---

ARTICLE V

Default and Remedies

Section 5.01.    Events of Default.  The Issuer  shall  deliver to the  Indenture  Trustee and the Credit  Enhancer,  within five days after  learning of the  occurrence  any event  which with the  giving of notice and the lapse of time would  become an Event of Default under clause (iii) of the  definition of "Event of Default"  written  notice in the form of an Officer's  Certificate of its status and what action the Issuer is taking or proposes to take with respect thereto.

Section 5.02.    Acceleration of Maturity; Rescission and Annulment.  If an Event of Default should occur and be continuing or the Master  Servicer  shall purchase all of the Home Equity Loans  pursuant to Section 8.08 of the Servicing  Agreement,  then and in such case the Indenture  Trustee or the Holders of Notes  representing not less than a majority of the Security  Balances of all Notes in each case, with the written consent of the Credit  Enhancer,  or the Credit Enhancer may declare the Notes to be immediately due and payable,  by a notice in writing to the Issuer (and to the Indenture  Trustee if given by  Noteholders),  and upon any such declaration the  unpaid  principal  amount of such  class of  Notes,  together  with accrued  and  unpaid  interest  thereon  through  the date of acceleration, shall become immediately due and payable.

     At any time after such  declaration of  acceleration  of maturity with respect to an Event of Default has been made and before a judgment or decree for payment of the money due has been obtained by the Indenture  Trustee as  hereinafter  provided in this Article V,  the Holders of Notes  representing a majority of the  Security  Balances  of all Notes,  by written  notice to the Issuer and the Indenture  Trustee with the written consent of the Credit  Enhancer,  or the Credit  Enhancer,  may in writing waive the related Event of Default and rescind and annul such declaration and its consequences if:

(i)      the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

          (A)      all payments of  principal  of and  interest on the Notes and all other  amounts that would

due hereunder, or upon the Notes, the Event of Default giving rise to such acceleration had not occurred; and

(B)     all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compen expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

(ii)     all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03.     Collection of Indebtedness and Suits for Enforcement by Indenture Trustee. (a) The Issuer covenants default in the payment of (i) any interest on any Note when the same becomes due and payable, and such default continues for a of five days, or (ii) the principal of or any installment of the principal of any Note when the same becomes due and payabl Issuer shall, upon demand of the Indenture Trustee, pay to it, for the benefit of the Holders of Notes or the Credit Enhancer extent the Credit Enhancer has made a payment on the Policy, the whole amount then due and payable on the Notes for princip interest, with interest upon the overdue principal, and in addition thereto such further amount as shall be sufficient to co costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the In Trustee and its agents and counsel.

(b)     In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name trustee of an express trust, subject to the provisions of Section 10.17 hereof may institute a Proceeding for the collection sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Is other obligor upon the Notes and collect in the manner provided by law out of the property of the Issuer or other obligor u Notes, wherever situated, the monies adjudged or decreed to be payable.

(c)     If an Event of Default shall occur and be continuing, the Indenture Trustee subject to the provisions of Sectio hereof may, as more particularly provided in Section 5.04, in its discretion, proceed to protect and enforce its rights rights of the Noteholders and the Credit Enhancer, by such appropriate Proceedings as the Indenture Trustee shall deem most ef to protect and enforce any such rights, whether for the specific enforcement of any covenant or agreement in this Indenture or of the exercise of any power granted herein, or to enforce any other proper remedy or legal or equitable right vested Indenture Trustee by this Indenture or by law.

(d)     In case there shall be pending, relative to the Issuer or any other obligor upon the Notes or any Person having or c an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or any other applicable fed state bankruptcy, insolvency or other similar law, or in case a receiver, assignee or trustee in bankruptcy or reorgani liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Issuer or its property other obligor or Person, or in case of any other comparable judicial Proceedings relative to the Issuer or other obligor u Notes, or to the creditors or property of the Issuer or such other obligor, the Indenture Trustee, irrespective of whet principal of any Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of the Indenture Trustee shall have made any demand pursuant to the provisions of this Section, shall be entitled and empower intervention in such Proceedings or otherwise:

(i)     to file and prove a claim or claims for the entire amount of principal and interest owing and unpaid in respect of th and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Indenture (including any claim for reasonable compensation to the Indenture Trustee and each predecessor Indenture Trustee, an respective agents, attorneys and counsel, and for reimbursement of all expenses and liabilities incurred, and all advances m the Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful misconduct or bad fai of the Noteholders allowed in such Proceedings;

(ii)     unless prohibited by applicable law and regulations, to vote on behalf of the Holders of Notes in any election of a t a standby trustee or Person performing similar functions in any such Proceedings;

(iii)     to collect and receive any monies or other property payable or deliverable on any such claims and to distribute all received with respect to the claims of the Noteholders and of the Indenture Trustee on their behalf; and

(iv)     to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the cl the Indenture Trustee or the Holders of Notes allowed in any judicial proceedings relative to the Issuer, its creditors property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby authorized by such Noteholders to make payments to the Indenture Trustee, and, in the event that the Indenture Trustee shall consent to the of payments directly to such Noteholders, to pay to the Indenture Trustee such amounts as shall be sufficient to cover rea compensation to the Indenture Trustee, each predecessor Indenture Trustee and their respective agents, attorneys and counsel, other expenses and liabilities incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture except as a result of negligence, willful misconduct or bad faith.

(e)     Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to or vote for or or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes rights of any Holder thereof or to authorize the Indenture Trustee to vote in respect of the claim of any Noteholder in a proceeding except, as aforesaid, to vote for the election of a trustee in bankruptcy or similar Person.

(f)     All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be enforced Indenture Trustee without the possession of any of the Notes or the production thereof in any trial or other Proceedings r thereto, and any such action or proceedings instituted by the Indenture Trustee shall be brought in its own name as truste express trust, and any recovery of judgment, subject to the payment of the expenses, disbursements and compensation of the In Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall be for the ratable benefit Holders of the Term Notes or the Variable Funding Notes, as applicable.

(g)     In any Proceedings brought by the Indenture Trustee (and also any Proceedings involving the interpretation of any pr of this Indenture to which the Indenture Trustee shall be a party), the Indenture Trustee shall be held to represent all the of the Notes, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04.     Remedies; Priorities. (a) If an Event of Default shall have occurred and be continuing, the Indenture subject to the provisions of Section 10.17 hereof may with the written consent of the Credit Enhancer, or shall at the direction of the Credit Enhancer do one or more of the following (subject to Section 5.05):

(i)      institute Proceedings  in its own name and as trustee of an express trust  for the collection of all amounts then pay the Notes or under this  Indenture  with respect  thereto,  or under such declaration  or  otherwise,  and all amounts  payable un Insurance Agreement,  enforce any judgment obtained,  and collect from the Issuer and any other obligor upon such Notes monies a due;

(ii)     institute  Proceedings  from time to time for the complete or partial  foreclosure of this Indenture with respect to th Estate;

(iii)    exercise  any  remedies  of a secured  party  under the UCC and take any other  appropriate  action to protect and enfo rights and remedies of the Indenture Trustee and the Holders of the Notes; and

(iv)     sell the Trust  Estate or any portion  thereof or rights or interest  therein,  at one or more public or private  sales and conducted in any manner permitted by law;

provided,  however,  that the Indenture  Trustee may not sell or otherwise  liquidate  the Trust Estate  following an Event of D unless (A) the Indenture Trustee obtains the consent of the Credit Enhancer,  which consent will not be unreasonably  withheld, a Credit  Enhancer  Default has occurred and is continuing,  the consent of the Holders of 100% of the aggregate  Security  Bala the Notes, (B) the proceeds of such sale or liquidation  distributable to Holders are sufficient to discharge in full all amoun due and unpaid upon the Notes for principal  and interest and to reimburse the Credit  Enhancer for any amounts drawn under the and any other amounts due the Credit  Enhancer  under the Insurance  Agreement or (C) the Indenture  Trustee  determines  that t Equity  Loans will not continue to provide  sufficient  funds for the payment of  principal of and interest on the Notes as the have  become due if the Notes had not been  declared  due and  payable,  and the  Indenture  Trustee  obtains the consent of the Enhancer,  which consent will not be unreasonably  withheld;  provided  further that the Indenture  Trustee shall not sell or ot liquidate  the Trust  Estate if the  proceeds of such sale or  liquidation  together  with  amounts  drawn under the Policy will sufficient  to discharge in full all amounts then due and unpaid upon the Notes for  principal and interest and to reimburse the Enhancer for any amounts drawn under the Policy and any other amounts due the Credit  Enhancer  under the  Insurance  Agreement the Indenture  Trustee  obtains the consent of the Holders of 66-2/3% of the aggregate  Security  Balances of the Notes. In dete such  sufficiency or  insufficiency  with respect to clause (B) and (C), the Indenture  Trustee may, but need not, obtain and re an opinion of an  Independent  investment  banking or accounting  firm of national  reputation as to the  feasibility of such p action and as to the sufficiency of the Trust Estate for such purpose.  Notwithstanding  the foregoing,  so long as a Servicing has not  occurred,  any Sale of the Trust  Estate  shall be made  subject to the  continued  servicing  of the Home Equity Loans Master Servicer as provided in the Servicing Agreement.

(b)      If the  Indenture  Trustee  collects any money or property  pursuant to this Article V, it shall pay out the money or p in the following order:

          FIRST:   to the Indenture Trustee for amounts due under Section 6.07;

          SECOND:  to Holders of the Class A Notes and Variable  Funding  Notes for amounts due and unpaid on the relate
          for interest,  ratably,  without  preference  or priority of any kind,  according to the amounts due and payable on suc
          for interest from amounts available in the Trust Estate for such Noteholders;

          THIRD:   to Holders of the Class A Notes and Variable  Funding  Notes for amounts due and unpaid on the relate
          for principal,  ratably,  without  preference  or priority of any kind,  according to the amounts due and payable on suc
          for principal,  from amounts  available in the Trust Estate for such  Noteholders,  until the Security  Balances of suc
          have been reduced to zero;

          FOURTH:  to the payment of all amounts due and owing to the Credit Enhancer under the Insurance Agreement;

          FIFTH:   to the Certificate Paying Agent for amounts due under Article VIII of the Trust Agreement; and

          SIXTH:   to the payment of the remainder, if any, to the Issuer or any other person legally entitled thereto.

     The  Indenture  Trustee may fix a record date and payment date for any payment to  Noteholders  pursuant to this Sectio At least 15 days before such record date,  the  Indenture  Trustee  shall mail to each  Noteholder a notice that states the recor the payment date and the amount to be paid.

Section 5.05.   Optional  Preservation of the Trust Estate.  If the Notes have been declared to be due and payable under Secti following an Event of Default and such declaration and its  consequences  have not been rescinded and annulled,  the Indenture may, but need not,  (but shall at the written  direction of the Credit  Enhancer)  elect to take and maintain  possession  of th Estate.  It is the desire of the parties  hereto and the  Noteholders  that there be at all times  sufficient  funds for the pay principal  of and  interest  on the Notes and other  obligations  of the  Issuer  including  payment to the Credit  Enhancer, Indenture  Trustee  shall take such desire into account when  determining  whether or not to take and maintain  possession of th Estate.  In determining  whether to take and maintain  possession of the Trust Estate,  the Indenture Trustee may, but need not, and rely upon an opinion of an Independent  investment banking or accounting firm of national  reputation as to the feasibility proposed action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06.    Limitation of Suits. No Holder of any Note shall have any right to institute any  Proceeding,  judicial or oth with  respect to this  Indenture,  or for the  appointment  of a receiver or trustee,  or for any other  remedy  hereunder,  unl subject to the provisions of Section 10.17 hereof:

(i)      such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;

(ii)     the Holders of not less than 25% of the Security  Balances of the Notes have made written request to the Indenture  Tru institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(iii)    such Holder or Holders  have  offered to the  Indenture  Trustee  reasonable  indemnity  against  the costs,  expens liabilities to be incurred in complying with such request;

(iv)     the  Indenture  Trustee for 60 days after its receipt of such notice,  request and offer of indemnity  has failed to in such Proceedings; and

(v)      no direction  inconsistent  with such written request has been given to the Indenture Trustee during such 60-day period Holders of a majority of the Security Balances of the Notes or by the Credit Enhancer.

It is  understood  and  intended  that no one or more  Holders of Notes shall have any right in any manner  whatever by virtue of
availing of, any provision of this  Indenture to affect,  disturb or prejudice the rights of any other Holders of Notes or to ob
to seek to obtain  priority  or  preference  over any other Holders or to enforce any right under this  Indenture, except in the
herein provided.

In the event the Indenture  Trustee shall receive  conflicting or inconsistent  requests and indemnity from two or more
of Holders of Notes,  each  representing  less than a majority of the Security Balances of the Notes, the Indenture Trustee in i
discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of this Indenture.

Section 5.07.    Unconditional  Rights of Noteholders to Receive Principal and Interest.  Notwithstanding any other provisions
Indenture,  the Holder of any Note shall have the right,  which is absolute and  unconditional,  to receive payment of the princ
and interest,  if any, on such Note on or after the  respective  due dates thereof  expressed in such Note or in this  Indenture
institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 5.08.    Restoration  of Rights and Remedies.  If the Indenture  Trustee or any  Noteholder  has  instituted any Procee
enforce any right or remedy under this  Indenture and such  Proceeding  has been  discontinued  or abandoned for any reason or h
determined  adversely to the Indenture  Trustee or to such Noteholder,  then and in every such case the Issuer,  the Indenture
and the Noteholders  shall,  subject to any  determination in such Proceeding,  be restored  severally and respectively to their
positions  hereunder,  and thereafter all rights and remedies of the Indenture  Trustee and the Noteholders shall continue as th
such Proceeding had been instituted.

Section 5.09.    Rights and Remedies  Cumulative.  No right or remedy herein conferred upon or reserved to the Indenture Truste
Credit  Enhancer or to the Noteholders is intended to be exclusive of any other right or remedy,  and every right and remedy sh
the extent  permitted  by law, be  cumulative  and in addition to every other  right and remedy  given  hereunder  or now or  he
existing at law or in equity or  otherwise.  The  assertion or employment  of any right or remedy hereunder,  or otherwise,  sh
prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 5.10.    Delay or Omission Not a Waiver. No delay or omission of the Indenture  Trustee,  the Credit Enhancer or any Ho
any Note to exercise  any right or remedy  accruing  upon any Event of Default  shall  impair any such right or remedy or  const
waiver of any such  Event of Default or an  acquiescence  therein.  Every right and  remedy  given by this  Article V or by law
Indenture Trustee or to the Noteholders may be exercised from time to time, and as often as may be deemed  expedient,  by the In
Trustee or by the Noteholders, as the case may be.

Section 5.11.    Control by the Credit Enhancer or Noteholders.  The Holders of a majority of the Security  Balances of Notes w
consent of the Credit  Enhancer,  or the Credit Enhancer (so long as no Credit Enhancer  Default exists) shall have the right to
the time,  method and place of conducting any Proceeding  for any remedy  available to the Indenture  Trustee with respect to th
or exercising any trust or power conferred on the Indenture Trustee; provided that:

(i)    such direction shall not be in conflict with any rule of law or with this Indenture;

(ii)    subject to the express  terms of Section 5.04,  any  direction to the Indenture  Trustee to sell or liquidate the Trust
shall be by Holders of Notes  representing  not less than 100% of the Security  Balances of Notes with the  consent of the
Enhancer, or the Credit Enhancer (so long as no Credit Enhancer Default exists);

(iii)    if the conditions  set forth in Section 5.05 have been  satisfied and the Indenture  Trustee elects to retain the Trust
pursuant to such Section,  then any direction to the Indenture Trustee by Holders of Notes  representing less than 100% of the S
Balances of Notes to sell or liquidate the Trust Estate shall be of no force and effect; and

(iv)    the Indenture  Trustee may take any other action deemed proper by the  Indenture  Trustee that is not  inconsistent  wi
direction.

Notwithstanding  the rights of Noteholders set forth in this Section,  subject to Section 6.01, the Indenture Trustee need not t
action that it  determines  might  involve it in liability  or might  materially  adversely  affect the rights of any  Notehold
consenting  to such action  unless  the Indenture  Trustee  has  received  satisfactory  indemnity  from the Credit  Enhancer  o
Noteholders.

Section 5.12.    Waiver of Past Default.  Prior to the  declaration  of the  acceleration  of the maturity of the Notes as prov
Section  5.02,  the Holders of Notes of not less than a majority of the  Security Balances of the Notes with the consent of the
Enhancer,  or the  Credit  Enhancer (so long as no  Credit  Enhancer  Default exists)  may waive any past  Event of  Default
consequences  except an Event of  Default  (i) with  respect  to payment of  principal  of or  interest  on any of the Notes or
respect of a covenant or provision  hereof which cannot be modified or amended  without the consent of the Holder of each Note.
case of any such waiver,  the Issuer,  the Indenture  Trustee and the Holders of the Notes shall be restored to their respective
positions and rights  hereunder;  but no such  waiver  shall  extend to any  subsequent  or other Event of Default or impair an
consequent thereto.

Upon any such waiver,  any Event of Default  arising  therefrom  shall be deemed to have been cured and not to have  oc
for every purpose of this  Indenture;  but no such waiver shall extend to any  subsequent or other Event of Default or impair an
consequent thereto.

Section 5.13.    Undertaking for Costs. All parties to this Indenture  agree, and each Holder of any Note by such Holder's  acc
thereof shall be deemed to have agreed,  that any court may in its discretion  require, in any suit for the enforcement of any r
remedy  under this  Indenture, or in any suit  against the  Indenture  Trustee for any action  taken,  suffered  or omitted b
Indenture  Trustee,  the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that suc
may in its discretion assess reasonable costs,  including  reasonable  attorneys' fees, against any party litigant in such suit,
due regard to the merits and good faith of the claims or defenses  made by such party  litigant;  but the  provisions  of this
5.13 shall not apply to (a) any suit  instituted by the Indenture  Trustee, (b) any suit  instituted by any  Noteholder,  or g
Noteholders,  in each case holding in the aggregate more than 10% of the Security  Balances of the Notes or (c) any suit  instit
any  Noteholder  for the  enforcement  of the payment of  principal  of or interest  on any Note on or after the  respective du
expressed in such Note and in this Indenture.

Section 5.14.    Waiver of Stay or Extension  Laws.  The Issuer  covenants (to the extent that it may lawfully do so) that it w
at any time insist upon,  or plead or in any manner  whatsoever,  claim or take the benefit or advantage  of, any stay or extens
wherever enacted,  now or at any time hereafter in force,  that may affect the covenants or the performance of this Indenture;
Issuer (to the extent that it may lawfully do so) hereby  expressly  waives all benefit or  advantage  of any such law,  and  co
that it shall not hinder,  delay or impede  the  execution  of any power herein  granted to the  Indenture  Trustee,  but will suf

permit the execution of every such power as though no such law had been enacted.

Section 5.15.    Sale of Trust Estate. (a) The power to effect any sale or other disposition (a "Sale") of any portion of th Estate pursuant to Section 5.04 is expressly subject to the provisions of Section 5.05 and this Section 5.15. The power to any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate remaining unsold, bu continue unimpaired until the entire Trust Estate shall have been sold and all amounts payable on the Notes and under this In and under the Insurance Agreement shall have been paid. The Indenture Trustee may from time to time postpone any public public announcement made at the time and place of such Sale. The Indenture Trustee hereby expressly waives its right to any fixed by law as compensation for any Sale.

(b)    The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof, unless:

(1)    the Holders of all Notes and the Credit Enhancer consent to, or direct the Indenture Trustee to mak Sale, or

(2)    the proceeds of such Sale would be not less than the entire amount which would be payable Noteholders under the Notes, the Certificateholders under the Certificates and the Credit Enhancer in respect of drawn under the Policy and any other amounts due the Credit Enhancer under the Insurance Agreement, in full payment in accordance with Section 5.02, on the Payment Date next succeeding the date of such Sale, or

(3)    the Indenture Trustee determines, in its sole discretion, that the conditions for retention of th Estate set forth in Section 5.05 cannot be satisfied (in making any such determination, the Indenture Trustee may re an opinion of an Independent investment banking firm obtained and delivered as provided in Section 5.05), and the Enhancer consents to such Sale, which consent will not be unreasonably withheld and the Holders representing a 66-2/3% of the Security Balances of the Notes consent to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be deemed a Sale o disposition thereof for purposes of this Section 5.15(b).

(c)    Unless the Holders and the Credit Enhancer have otherwise consented or directed the Indenture Trustee, at any public all or any portion of the Trust Estate at which a minimum bid equal to or greater than the amount described in paragraph subsection (b) of this Section 5.15 has not been established by the Indenture Trustee and no Person bids an amount equa greater than such amount, the Indenture Trustee shall bid an amount at least $1.00 more than the highest other bid.

(d)    In connection with a Sale of all or any portion of the Trust Estate:

(1)    any Holder or Holders of Notes may bid for and with the consent of the Credit Enhancer purcha property offered for sale, and upon compliance with the terms of sale may hold, retain and possess and dispose property, without further accountability, and may, in paying the purchase money therefor, deliver any Notes or cla interest thereon in lieu of cash up to the amount which shall, upon distribution of the net proceeds of such sa payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, s returned to the Holders thereof after being appropriately stamped to show such partial payment;

(2)    the Indenture Trustee may bid for and acquire the property offered for Sale in connection with a thereof, and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewit purchase all or any portion of the Trust Estate in a private sale, and, in lieu of paying cash therefor, may make set for the purchase price by crediting the gross Sale price against the sum of (A) the amount which would be distributa the Holders of the Notes and Holders of Certificates and amounts owing to the Credit Enhancer as a result of such accordance with Section 5.04(b) on the Payment Date next succeeding the date of such Sale and (B) the expenses of t and of any Proceedings in connection therewith which are reimbursable to it, without being required to produce the N order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any prop acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indentur

(3)    the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance transferri interest in any portion of the Trust Estate in connection with a Sale thereof;

(4)    the Indenture Trustee is hereby irrevocably appointed the agent and attorney- in-fact of the Is transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to t action necessary to effect such Sale; and

(5)    no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture Trustee's aut inquire into the satisfaction of any conditions precedent or see to the application of any monies.

Section 5.16.    Action on Notes. The Indenture Trustee's right to seek and recover judgment on the Notes or under this In shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture. the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Noteholders shall be impaired by the r of any judgment by the Indenture Trustee against the Issuer or by the levy of any execution under such judgment upon any por the Trust Estate or upon any of the assets of the Issuer. Any money or property collected by the Indenture Trustee shall be in accordance with Section 5.04(b).

Section 5.17.    Performance and Enforcement of Certain Obligations. (a) Promptly following a written request from the Enhancer or the Indenture Trustee with the written consent of the Credit Enhancer to do so, the Issuer, in its capacity as ho the Home Equity Loans, shall, with the written consent of the Credit Enhancer, take all such lawful action as the Indenture may request to cause the Issuer to compel or secure the performance and observance by the Seller and the Master Servic applicable, of each of their obligations to the Issuer under or in connection with the Purchase Agreement and the Se Agreement, and to exercise any and all rights, remedies, powers and privileges lawfully available to the Issuer unde connection with the Purchase Agreement and the Servicing Agreement to the extent and in the manner directed by the Indenture T as pledgee of the Home Equity Loans, including the transmission of notices of default on the part of the Seller or the Servicer thereunder and the institution of legal or administrative actions or proceedings to compel or secure performance Seller or the Master Servicer of each of their obligations under the Purchase Agreement and the Servicing Agreement.

(b)    If an Event of Default has occurred and is continuing, the Indenture Trustee, as pledgee of the Home Equity Loans, to the rights of the Credit Enhancer under the Servicing Agreement may, and at the direction (which direction shall be in wri by telephone (confirmed in writing promptly thereafter)) of the Credit Enhancer (or if a Credit Enhancer Default has occurre is continuing, Holders of 66-2/3% of the Security Balances of the Notes) shall, exercise all rights, remedies, powers, privile

claims of the Issuer against the Seller or the Master Servicer under or in connection with the Purchase  Agreement and the Se
Agreement,  including the right or power to take any action to enforce or secure performance  or observance by the Seller or the
Servicer,  as the case may be,  of each of their  obligations  to the Issuer  thereunder  and to give any consent,  request,
direction,  approval,  extension or waiver under the Purchase Agreement and the Servicing Agreement,  as the case may be,  and an
of the Issuer to take such action shall not be suspended.  In connection therewith,  as determined by the Indenture  Truste
Issuer shall take all actions necessary to effect the transfer of the Home Equity Loans to the Indenture Trustee.

ARTICLE VI

The Indenture Trustee

Section 6.01.    Duties of Indenture  Trustee.  (a) If an Event of Default has  occurred and is  continuing,  the Indenture
shall  exercise the rights and powers vested in it by this  Indenture and use the same degree of care and skill in their  exerci
prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(b)    Except during the continuance of an Event of Default:

(i)    the Indenture  Trustee  undertakes to perform such duties and only such duties as are specifically set forth in this In
and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

(ii)    in the absence of bad faith on its part, the Indenture  Trustee may  conclusively  rely, as to the truth of the stateme
the correctness of the opinions expressed  therein,  upon certificates or opinions furnished to the Indenture Trustee and confor
the requirements of this Indenture; provided,  however,  the Indenture Trustee shall examine the certificates and opinions to de
whether or not they conform to the requirements of this Indenture.

(c)    The Indenture  Trustee may not be relieved from liability for its own negligent  action,  its own negligent  failure to
its own willful misconduct, except that:

(i)    this paragraph does not limit the effect of paragraph (b) of this Section 6.01;

(ii)    the Indenture  Trustee shall not be liable for any error of judgment made in good faith by a Responsible  Officer unles
proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; and

(iii)    the Indenture  Trustee  shall not be liable with respect to any action it takes or omits to take in good faith in  acc
with a direction  received by it (A) pursuant to Section 5.11 or (B) from the Credit  Enhancer,  which it is entitled to give un
of the Basic Documents.

(d)    The Indenture  Trustee shall not be liable for interest on any money received by it except as the Indenture  Trustee ma
in writing with the Issuer.

(e)    Money held in trust by the Indenture  Trustee need not be segregated  from other funds except to the extent required by
the terms of this Indenture or the Trust Agreement.

(f)    No provision  of this  Indenture  shall  require the  Indenture  Trustee to expend or risk its own funds or  otherwise
financial  liability in the performance of any of its duties  hereunder or in the exercise of any of its rights or powers,  if i
have  reasonable  grounds to believe  that  repayment  of such funds or  adequate  indemnity  against  such risk or  liability
reasonably assured to it.

(g)    Every  provision  of this  Indenture  relating to the conduct or affecting  the  liability  of or affording  protection
Indenture Trustee shall be subject to the provisions of this Section and to the provisions of the TIA.

Section 6.02.    Rights of Indenture Trustee.  (a) The  Indenture  Trustee may rely on any document  believed by it to be genu
to have been signed or presented by the proper  person.  The Indenture  Trustee need not  investigate  any fact or matter stated
document.

(b)    Before the  Indenture  Trustee  acts or  refrains  from  acting,  it may  require an  Officer's  Certificate  or an Opi
Counsel.  The Indenture  Trustee shall not be  liable  for any  action  it takes or omits to take in good  faith in  reliance
Officer's Certificate or Opinion of Counsel.

(c)    The Indenture  Trustee may execute any of the trusts or powers  hereunder or perform any duties  hereunder  either dire
by or through agents or attorneys or a custodian or nominee,  and the Indenture  Trustee shall not be  responsible for any miscon
negligence on the part of, or for the  supervision  of, any such agent,  attorney,  custodian or nominee  appointed with due car
hereunder.

(d)    The  Indenture  Trustee  shall not be liable for any action it takes or omits to take in good faith  which it  believes
authorized  or within its rights or powers; provided,  however,  that the Indenture  Trustee's  conduct does not  constitute
misconduct, negligence or bad faith.

(e)    The Indenture  Trustee may consult with counsel,  and the advice or opinion of counsel with respect to legal matters  r
to this  Indenture  and the Notes shall be full and  complete  authorization  and  protection  from  liability in respect to any
taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

Section 6.03.    Individual  Rights of Indenture  Trustee.  The Indenture  Trustee in its  individual or any other capacity may
the  owner or pledgee of Notes and may otherwise  deal with the Issuer or its  Affiliates  with the same rights it would have if
not Indenture Trustee.  Any Note Registrar,  co-registrar or co-paying agent may do the same with like rights.  However,  the In
Trustee must comply with Sections 6.11 and 6.12.

Section 6.04.    Indenture  Trustee's Disclaimer.  The Indenture Trustee shall not be (i)  responsible for and makes no represe
as to the  validity or adequacy of this  Indenture or the Notes,  (ii)  accountable  for the Issuer's use of the proceeds from th
or (iii)  responsible  for any statement of the Issuer in this Indenture or in any document  issued in connection  with the sale

Notes or in the Notes other than the Indenture Trustee's Certificate of Authentication.

12-12020-mg    Doc 2813-98    Filed 02/01/13    Entered 02/01/13 16:43:05    Exhibit 98
Pg 24 of 35

Section 6.05.    Notice of Event of Default. If an Event of Default occurs and is continuing and if it is known to a Resp Officer of the Indenture Trustee, the Indenture Trustee shall give notice thereof to the Credit Enhancer. The Indenture shall mail to each Noteholder notice of the Event of Default within 90 days after it occurs. Except in the case of an E Default in payment of principal of or interest on any Note, the Indenture Trustee may withhold the notice if and so lo committee of its Responsible Officers in good faith determines that withholding the notice is in the interests of Noteholders.

Section 6.06.    Reports by Indenture Trustee to Holders. The Indenture Trustee shall deliver to each Noteholder such info as may be required to enable such holder to prepare its federal and state income tax returns. In addition, upon the Issuer's request, the Indenture Trustee shall promptly furnish information reasonably requested by the Issuer that is reasonably avail the Indenture Trustee to enable the Issuer to perform its federal and state income tax reporting obligations.

Section 6.07.    Compensation and Indemnity. The Indenture Trustee shall be compensated and indemnified by the Master Serv accordance with Section 6.06 of the Servicing Agreement. The Indenture Trustee's compensation shall not be limited by any compensation of a trustee of an express trust.

Section 6.08.    Replacement of Indenture Trustee. No resignation or removal of the Indenture Trustee and no appointmen successor Indenture Trustee shall become effective until the acceptance of appointment by the successor Indenture Trustee purs this Section 6.08. The Indenture Trustee may resign at any time by so notifying the Issuer and the Credit Enhancer. The Hol a majority of Security Balances of the Notes or the Credit Enhancer may remove the Indenture Trustee by so notifying the In Trustee and the Credit Enhancer and may appoint a successor Indenture Trustee. The Issuer shall remove the Indenture Trustee if

(i)    the Indenture Trustee fails to comply with Section 6.11;

(ii)    the Indenture Trustee is adjudged a bankrupt or insolvent;

(iii)    a receiver or other public officer takes charge of the Indenture Trustee or its property; or

(iv)    the Indenture Trustee otherwise becomes incapable of acting.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the office of the Indenture Trustee for any (the Indenture Trustee in such event being referred to herein as the retiring Indenture Trustee), the Issuer shall promptly ap successor Indenture Trustee with the consent of the Credit Enhancer which consent will not be unreasonably withheld. In ad the Indenture Trustee will resign to avoid being directly or indirectly controlled by the Issuer.

A successor Indenture Trustee shall deliver a written acceptance of its appointment to the retiring Indenture Trustee the Issuer. Thereupon, the resignation or removal of the retiring Indenture Trustee shall become effective, and the su Indenture Trustee shall have all the rights, powers and duties of the Indenture Trustee under this Indenture. The su Indenture Trustee shall mail a notice of its succession to Noteholders. The retiring Indenture Trustee shall promptly trans property held by it as Indenture Trustee to the successor Indenture Trustee.

If a successor Indenture Trustee does not take office within 60 days after the retiring Indenture Trustee resign removed, the retiring Indenture Trustee, the Issuer or the Holders of a majority of Security Balances of the Notes may petit court of competent jurisdiction for the appointment of a successor Indenture Trustee.

If the Indenture Trustee fails to comply with Section 6.11, any Noteholder may petition any court of competent juris for the removal of the Indenture Trustee and the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section, the Issuer's obligations under 6.07 shall continue for the benefit of the retiring Indenture Trustee.

Section 6.09.    Successor Indenture Trustee by Merger. If the Indenture Trustee consolidates with, merges or converts i transfers all or substantially all its corporate trust business or assets to, another corporation or banking associatio resulting, surviving or transferee corporation without any further act shall be the successor Indenture Trustee; provided, th corporation or banking association shall be otherwise qualified and eligible under Section 6.11. The Indenture Trustee shall the Rating Agencies written notice of any such transaction occurring after the Closing Date.

In case at the time such successor or successors by merger, conversion or consolidation to the Indenture Truste succeed to the trusts created by this Indenture any of the Notes shall have been authenticated but not delivered, any such su to the Indenture Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such N authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Indenture may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Indenture T and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture p that the certificate of the Indenture Trustee shall have.

Section 6.10.    Appointment of Co-Indenture Trustee or Separate Indenture Trustee. (a) Notwithstanding any other provis this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of th Estate may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of th Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders, such title to th Estate, or any part thereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rig trusts as the Indenture Trustee may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be r to meet the terms of eligibility as a successor trustee under Section 6.11 and no notice to Noteholders of the appointment co-trustee or separate trustee shall be required under Section 6.08 hereof.

(b)    Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the fo provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understoo such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), ex the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Truste be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (includ holding of title to the Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly

separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii)   the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c)    Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of t separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate tru co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, u acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Ind specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or af protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d)    Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact wi power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permi law, without the appointment of a new or successor trustee.

Section 6.11.    Eligibility; Disqualification. The Indenture Trustee shall at all times satisfy the requirements of TIAss. The Indenture Trustee shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent pu annual report of condition and it or its parent shall have a long-term debt rating of A or better by Moody's. The Indenture shall comply with TIAss.310(b), including the optional provision permitted by the second sentence of TIAss.310(b)(9); pr however, that there shall be excluded from the operation of TIAss.310(b)(1) any indenture or indentures under which other sec of the Issuer are outstanding if the requirements for such exclusion set forth in TIAss.310(b)(1) are met.

Within 90 days after ascertaining the occurrence of an Event of Default which shall not have been cured or unless authorized by the Securities and Exchange Commission, the Indenture Trustee shall resign with respect to one or more of Notes in accordance with Section 6.08 of this Indenture, and the Issuer shall appoint a successor Indenture Trustee f Classes in accordance with Section 6.08 of this Indenture. In the event the Indenture Trustee fails to comply with the terms preceding sentence, the Indenture Trustee shall comply with clause (ii) of TIAss.310(b).

In the case of the appointment hereunder of a successor Indenture Trustee with respect to any Class o pursuant to this Section 6.11, the Issuer, the retiring Indenture Trustee and the successor Indenture Trustee with respect Class of Notes shall execute and deliver an indenture supplemental hereto wherein each successor Indenture Trustee shall acce appointment and which (i) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and in, the successor Indenture Trustee all the rights, powers, trusts and duties of the retiring Indenture Trustee with respect Notes of the Class to which the appointment of such successor Indenture Trustee relates, (ii) if the retiring Indenture Tru not retiring with respect to all Classes of Notes, shall contain such provisions as shall be deemed necessary or desirable to that all the rights, powers, trusts and duties of the retiring Indenture Trustee with respect to the Notes of each Class as t the retiring Indenture Trustee is not retiring shall continue to be vested in the Indenture Trustee, and (iii) shall add to or any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts he by more than one Indenture Trustee, it being understood that nothing herein or in such supplemental indenture shall constitu Indenture Trustees co-trustees of the same trust and that each such Indenture Trustee shall be trustee of a trust or trusts he separate and apart from any trust or trusts hereunder administered by any other such Indenture Trustee; and upon the removal retiring Indenture Trustee shall become effective to the extent provided therein.

Section 6.12.    Preferential Collection of Claims Against Issuer. The Indenture Trustee shall comply with TIAss.311(a), ex any creditor relationship listed in TIAss.311(b). An Indenture Trustee who has resigned or been removed shall be subject t 311(a) to the extent indicated.

Section 6.13.    Representations and Warranties. The Indenture Trustee hereby represents that:

(i)    The Indenture Trustee is duly organized, validly existing and in good standing under the laws of the United Stat power and authority to own its properties and to conduct its business as such properties are currently owned and such busi presently conducted.

(ii)   The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out its terms; execution, delivery and performance of this Indenture have been duly authorized by the Indenture Trustee by all necessary co action.

(iii)  The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms hereof do not c with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a under, the articles of organization or bylaws of the Indenture Trustee or any agreement or other instrument to which the In Trustee is a party or by which it is bound.

(iv)   To the Indenture Trustee's best knowledge, there are no proceedings or investigations pending or threatened bef court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Indenture Tru its properties: (A) asserting the invalidity of this Indenture (B) seeking to prevent the consummation of any of the trans contemplated by this Indenture or (C) seeking any determination or ruling that might materially and adversely affect the perf by the Indenture Trustee of its obligations under, or the validity or enforceability of, this Indenture.

(v)    The Indenture Trustee does not have notice of any adverse claim (as such terms are used in Delaware UCC Section 8-30 respect to the Home Equity Loans.

Section 6.14.    Directions to Indenture Trustee. The Indenture Trustee is hereby directed:

(a)    to accept the pledge of the Home Equity Loans and hold the assets of the Trust in trust for the Noteholders and the Enhancer;

(b)    to authenticate and deliver the Notes substantially in the form prescribed by Exhibit A in accordance with the terms Indenture; and

(c)    to take all other actions as shall be required to be taken by the terms of this Indenture.

Section 6.15.       Indenture Trustee May Own Securities. The Indenture Trustee,  in its individual or any other capacity may bec
owner or pledgee of Securities with the same rights it would have if it were not Indenture Trustee.

---

ARTICLE VII

Noteholders' Lists and Reports

Section 7.01.       Issuer to Furnish  Indenture  Trustee  Names  and  Addresses  of  Noteholders.  The Issuer will furnish or caus
furnished to the Indenture  Trustee (a) not more than five days after each Record Date, a list,  in such form as the Indenture
may reasonably  require,  of the names and addresses of the Holders of Notes as of such Record Date and, (b) at such other times
Indenture  Trustee and the Credit  Enhancer may request in writing,  within 30 days after receipt by the Issuer of any such requ
list of similar form and content as of a date not more than 10 days prior to the time such list is furnished;  provided,  howeve
so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

Section 7.02.       Preservation  of  Information;  Communications  to Noteholders.  (a) The  Indenture  Trustee shall  preserve,
current  a form as is  reasonably  practicable,  the names  and  addresses  of the Holders of Notes  contained  in the most  rece
furnished to  the Indenture  Trustee as provided  in Section  7.01 and the names  and  addresses  of Holders of Notes  received
Indenture  Trustee in its capacity as Note  Registrar.  The Indenture  Trustee may destroy any list furnished to it as provided
Section 7.01 upon receipt of a new list so furnished.

(b)       Noteholders  may  communicate  pursuant  to TIAss.312(b)  with  other  Noteholders  with  respect to their  rights  und
Indenture or under the Notes.

(c)       The Issuer, the Indenture Trustee and the Note Registrar shall have the protection of TIAss.312(c).

Section 7.03.       Reports by Issuer.  (a)  The Issuer shall:

(i)       file with the Indenture Trustee,  within 15 days after the Issuer is required to file the same with the Commission,  co
the annual  reports and the information,  documents  and other  reports (or copies of such  portions  of any of the  foregoing
Commission  may from time to time by rules and  regulations  prescribe)  that the Issuer may be  required  to file with the  Com
pursuant to Section 13 or 15(d) of the Exchange Act;

(ii)       file with the Indenture Trustee,  and the Commission in accordance with rules and regulations  prescribed from time to
the  Commission  such  additional  information,  documents and reports with respect to compliance by the Issuer with the conditi
covenants of this Indenture as may be required from time to time by such rules and regulations; and

(iii)       supply to the  Indenture  Trustee (and the  Indenture  Trustee shall  transmit by mail to all  Noteholders  described i
313(c)) such summaries of any  information,  documents and reports  required to be filed by the Issuer pursuant to clauses (i) a
of this Section 7.03(a) and by rules and regulations prescribed from time to time by the Commission.

(b)       Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on December 31 of each year.

Section 7.04.       Reports by  Indenture  Trustee.  If required by TIAss.313(a),  within 60 days after each  January 1,  beginnin
January 1, 2007,  the Indenture  Trustee shall mail to each  Noteholder as required by TIAss.313(c) and to the Credit  Enhancer
report dated as of such date that complies with TIAss.313(a).  The Indenture Trustee also shall comply with TIAss.313(b).

A copy of each report at the time of its mailing to Noteholders  shall be filed by the Indenture  Trustee with the Comm
if required,  and each stock  exchange,  if any, on which the Term Notes are listed.  The Issuer shall notify the Indenture  Tru
and when the Term Notes are listed on any stock exchange.

Section 7.05.       Exchange Act Reporting In  connection  with the  preparation  and filing of periodic  reports by the Master  S
pursuant to Section 4.01 of the Servicing  Agreement,  the Indenture  Trustee shall timely provide to the Master Servicer (I) a
Holders as shown on the Note  Register or  Certificate  Register as of the end of each  calendar  year,  (II) copies of all  ple
other legal  process and any other  documents  relating to any claims,  charges or  complaints  involving  the Indenture  Trust
indenture trustee hereunder,  or the Trust Estate that are received by the Indenture Trustee,  (III) notice of all matters that,
actual  knowledge of a Responsible  Officer of the Indenture  Trustee,  have been submitted to a vote of the Holders,  other tha
matters that have been  submitted to a vote of the Holders at the request of the Depositor or the Master  Servicer,  and (IV) no
any failure of the  Indenture  Trustee to make any payment to the Holders as required  pursuant to this  Indenture.  Neither the
Servicer nor the Indenture Trustee shall have any liability with respect to the Master  Servicer's  failure to properly prepare
such  periodic  reports  resulting  from  or  relating  to the Master  Servicer's  inability  or failure to obtain any  informati
resulting from the Master Servicer's own negligence or willful misconduct.

---

ARTICLE VIII

Accounts, Disbursements and Releases

Section 8.01.       Collection of Money.  Except as otherwise  expressly  provided  herein,  the Indenture  Trustee may demand pay
delivery  of,  and  shall  receive  and  collect,  directly  and  without  intervention  or  assistance  of any  fiscal  agent o
intermediary,  all money and other  property  payable to or  receivable  by the  Indenture  Trustee  pursuant  to this  Indentur
Indenture Trustee shall apply all such money received by it as provided in this Indenture.  Except as otherwise  expressly  prov
this  Indenture,  if any default occurs in the making of any payment or performance  under any agreement or instrument  that is
the Trust Estate,  the  Indenture  Trustee may take such action as may be appropriate to enforce such payment or performance,  in
the  institution  and  prosecution  of  appropriate  Proceedings.  Any such action  shall be without  prejudice to any right to
Default or Event of Default under this Indenture and any right to proceed thereafter as provided in Article V.

Section 8.02.       Trust  Accounts.  (a) On or prior to the Closing Date, the Issuer shall cause the Indenture  Trustee to establ

maintain, in the name of the Indenture Trustee, for the benefit of the Noteholders and the Certificate Paying Agent, on behalf Certificateholders and the Credit Enhancer, the Payment Account as provided in Section 3.01 of this Indenture.

(b)      All monies  deposited from time to time in the Payment Account  pursuant to the Servicing  Agreement and all deposits pursuant to this Indenture are for the benefit of the Noteholders  and the Credit Enhancer and the Certificate  Paying Agent, on of the  Certificateholders  and all investments  made with such monies including all income or other gain from such investments the benefit of the Master Servicer as provided in Section 5.01 of the Servicing Agreement.

On each Payment Date, the Indenture  Trustee shall  distribute all amounts on deposit in the Payment Account to Notehol respect of the Notes and in its  capacity as  Certificate  Paying Agent to  Certificateholders  in the order of priority  set f Section 3.05 (except as otherwise provided in Section 5.04(b).

The Master  Servicer  shall direct the  Indenture Trustee in writing to invest any funds in the Payment  Account in Pe Investments  maturing no later than the  Business Day  preceding each  Payment Date and shall not be sold or disposed of prior maturity.

Section 8.03.    Officer's  Certificate.  The Indenture  Trustee shall receive at least seven days notice when requested by the to take any action  pursuant to Section  8.05(a), accompanied by copies of any instruments to be executed,  and the Indenture shall also  require,  as a condition to such action,  an Officer's  Certificate,  in form and substance  satisfactory to the In Trustee, stating the legal effect of any such action,  outlining  the steps  required to complete the same,  and  concluding  t conditions precedent to the taking of such action have been complied with.

Section 8.04.    Termination Upon Distribution to Noteholders.  This Indenture and the respective  obligations and responsibili the Issuer and the Indenture  Trustee created hereby shall terminate upon the distribution to the Noteholders,  the Certificate Agent (on behalf of the  Certificateholders)  and Indenture  Trustee of all amounts required to be distributed  pursuant to III and the Insurance Agreement;  provided,  however, that in no event shall the trust created hereby continue beyond the expira 21 years from the death of the survivor of the  descendants  of Joseph P.  Kennedy,  the late  ambassador  of the United  States Court of St. James's, living on the date hereof.

Section 8.05.    Release of Trust  Estate.  (a) Subject to the payment of its fees and expenses, the Indenture  Trustee may, a required by the provisions of this Indenture or the Servicing  Agreement shall,  execute  instruments to release property from t of this Indenture,  or convey the  Indenture  Trustee's interest in the same,  in a manner  and under  circumstances  that inconsistent with the  provisions  of this Indenture.  No party relying  upon an instrument  executed by the  Indenture Tru provided in Article VIII hereunder  shall be bound to ascertain the  Indenture  Trustee's  authority,  inquire into the satisfac any conditions precedent, or see to the application of any monies.

(b)      The Indenture  Trustee  shall,  at such time as (i) there are no Notes  Outstanding,  (ii) all sums due the Indenture pursuant to this  Indenture have been paid, and (iii) all sums due the Credit  Enhancer have been paid,  release any remaining of the Trust Estate that secured the Notes from the lien of this Indenture.

(c)      The Indenture  Trustee shall release property from the lien of this Indenture  pursuant to this Section 8.05 only upon of a request from the Issuer  accompanied by an Officers'  Certificate and a letter from the Credit  Enhancer,  stating that the Enhancer has no objection to such request from the Issuer.

(d)      The Indenture  Trustee shall,  at the request of the Issuer or the Depositor,  surrender the Policy to the Credit Enhan cancellation, upon final payment of principal of and interest on the Notes.

Section 8.06.    Surrender of Notes Upon Final  Payment.  By acceptance of any Note,  the Holder thereof agrees to surrender su to the Indenture Trustee promptly, prior to such Noteholder's receipt of the final payment thereon.

ARTICLE IX

SUPPLEMENTAL INDENTURES

Section 9.01.    Supplemental  Indentures  Without  Consent of  Noteholders.  (a)  Without the consent of the Holders of any No with prior notice to the Rating  Agencies and with the written  consent of the Credit  Enhancer (which consent shall not be unrea withheld),  unless a Credit  Enhancer  Default shall have  occurred and is continuing,  the Issuer and the Indenture  Trustee authorized by an Issuer Request,  at any time and from time to time, may enter into one or more indentures  supplemental  hereto shall conform to the provisions of the TIA as in force at the date of the execution  thereof),  in form  satisfactory  to the In Trustee, for any of the following purposes:

(i)      to correct or  amplify  the  description  of any  property  at any time  subject to the lien of this  Indenture,  or be assure,  convey and confirm unto the Indenture  Trustee any property subject or required to be subjected to the lien of this Ind or to subject to the lien of this Indenture additional property;

(ii)      to evidence the  succession,  in compliance with the  applicable  provisions  hereof,  of another person to the Issuer, assumption by any such successor of the covenants of the Issuer herein and in the Notes contained;

(iii)      to add to the  covenants of the Issuer,  for the benefit of the Holders of the Notes or the Credit  Enhancer,  or to su any right or power herein conferred upon the Issuer;

(iv)      to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v)      to cure any  ambiguity,  to  correct  any error or to  correct  or  supplement  any  provision  herein or in any  suppl indenture that may be inconsistent with any other provision herein or in any supplemental indenture;

(vi)      to make any other  provisions  with  respect to matters or  questions  arising  under this  Indenture  or in any  suppl indenture;  provided,  that such action shall not  materially  and  adversely  affect the  interests of the Holders of the Notes Credit Enhancer;

(vii)    to evidence and provide for the acceptance of the appointment hereunder by a successor  trustee with respect to the No
to add to or change any of the  provisions of this  Indenture as shall be necessary to  facilitate  the  administration of the
hereunder by more than one trustee, pursuant to the requirements of Article VI;

(viii)   to increase the Maximum Variable Funding Balance with the written consent of the Credit Enhancer; or

(ix)    to modify, eliminate or add to the  provisions of this  Indenture to such  extent as shall be  necessary  to  effe
qualification  of this Indenture  under the TIA or under any similar  federal statute  hereafter  enacted and to add to this In
such other provisions as may be expressly required by the TIA;

provided,  however,  that no such  supplemental  indenture  shall be entered into unless the Indenture  Trustee and the Credit E
shall have received an Opinion of Counsel to the effect that the  execution of such  supplemental  indenture  will not give rise
material adverse tax consequence to the Noteholders.

    The  Indenture  Trustee is hereby  authorized  to join in the  execution of any such  supplemental  indenture  and to m
further appropriate agreements and stipulations that may be therein contained.

(b)    The Issuer and the  Indenture  Trustee, when  authorized by an Issuer Request, may, also without the consent of any
Holders  of the Notes but with  prior  notice to the  Rating  Agencies  and with the  consent of the  Credit  Enhancer,  enter
indenture or indentures  supplemental  hereto for the purpose of adding any provisions to, or changing in any manner or eliminat
of the  provisions of, this  Indenture or of  modifying  in any manner the rights of the  Holders of the Notes under this  Ind
provided,  however,  that such action shall not, as evidenced by an Opinion of Counsel, (i) adversely  affect in any material
the interests of any Noteholder or the Credit Enhancer or (ii) cause the Issuer to be subject to an entity level tax.

Section 9.02.    Supplemental  Indentures With Consent of  Noteholders.  The Issuer and the Indenture  Trustee, when authorize
Issuer  Request,  also may, with prior notice to the Rating Agencies and with the consent of the Holders of not less than a majo
the Security  Balances of the Notes  affected  thereby and the Credit  Enhancer,  by Act (as defined in Section  10.03 hereof)
Holders delivered to the Issuer and the Indenture Trustee,  enter into an indenture or indentures  supplemental  hereto for the
of adding any provisions  to, or changing in any manner or eliminating  any of the provisions of, this Indenture or of modifying
manner the rights of the Holders of the Notes under this Indenture;  provided,  however,  that no such  supplemental  indenture
without the consent of the Holder of each Note affected thereby and the Credit Enhancer:

(i)    change the date of payment of any  installment of  principal of or  interest on any Note, or reduce the  principal
thereof or the Note Rate thereon,  change the  provisions of this  Indenture  relating to the  application  of  collections  on,
proceeds of the sale of, the Trust Estate to payment of principal  or of interest on the Notes,  or change any place of payment
or the coin or  currency in which,  any Note or the  interest  thereon is  payable,  or impair  the right to  institute  suit
enforcement  of the  provisions of this Indenture  requiring the  application of funds available  therefor, as provided in Articl
the payment of any such amount due on the Notes on or after the respective due dates thereof;

(ii)    reduce the  percentage  of the  Security  Balances of any Class of Notes,  the consent of the Holders of which is requi
any such  supplemental  indenture,  or the  consent of the  Holders of which is  required  for any waiver of  compliance  with
provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(iii)    modify or alter the  provisions of the proviso to the  definition of the term  "Outstanding"  or modify or alter the ex
in the definition of the term "Noteholder";

(iv)    modify or alter the  provisions of this  Indenture  regarding the voting of Notes held by the Issuer, the Depositor or
them;

(v)    reduce the percentage of the Security  Balances of the Notes required to direct the Indenture  Trustee to direct the Is
sell or liquidate the Trust Estate pursuant to Section 5.04;

(vi)    modify any provision  of this  Section 9.02 except to increase any  percentage  specified  herein or to provide that
additional  provisions of this  Indenture or the other Basic  Documents  cannot be modified or waived without the consent of the
of each Note affected thereby;

(vii)    modify any of the  provisions of this  Indenture in such manner as to affect the  calculation  of the amount of any pay
interest or principal  due on any Note on any Payment Date  (including  the  calculation  of any of the  individual  components
calculation); or

(viii)    permit the creation of any lien ranking  prior to or on a parity with the lien of this  Indenture  with respect to any
the Trust Estate or, except as otherwise  permitted or  contemplated  herein,  terminate the lien of this  Indenture on any prop
any time  subject  hereto or  deprive  the Holder of any Note or the  Credit  Enhancer  of the  security  provided by the lien
Indenture;

and provided,  further,  that any action  listed in clauses (i) through  (viii) above shall not, as evidenced by an Opinion of C
cause the Issuer to be subject to an entity level tax.

    The  Indenture  Trustee may in its  discretion  determine  whether or not any Notes  would be  affected  by any  suppl
indenture  and any such  determination  shall be  conclusive  upon the  Holders  of all Notes,  whether  theretofore  or the
authenticated and delivered hereunder.  The Indenture Trustee shall not be liable for any such determination made in good faith.

    It shall not be necessary for any Act (as defined in Section 10.03 hereof) of  Noteholders  under this Section 9.02 to
the  particular  form of any proposed  supplemental  indenture,  but it shall be  sufficient  if such Act shall  approve the  su
thereof.

    Promptly after the execution by the Issuer and the Indenture  Trustee of any supplemental  indenture  pursuant to this
9.02, the Indenture  Trustee shall mail to the Holders of the Notes to which such amendment or supplemental  indenture relates a
setting  forth in general  terms the substance  of such  supplemental  indenture.  Any failure of the  Indenture  Trustee to ma
notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental  indenture.

    So long as there does not exist a failure by the  Credit  Enhancer  to make a required  payment  under the  Policy,  the
Enhancer  shall have the right to  exercise  all rights of the  Holders of the Notes  under this  Indenture  without any consent
Holders,  and such Holders may exercise  such rights only with the prior  written  consent of the Credit  Enhancer, except as p

herein.

Section 9.03.    Execution of Supplemental Indentures. In executing, or permitting the additional trusts created b supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indentur Indenture Trustee shall be entitled to receive, and subject to Sections 6.01 and 6.02, shall be fully protected in relying u Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indentur Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Tr own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04.    Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the pro hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to th affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities und Indenture of the Indenture Trustee, the Issuer and the Holders of the Notes shall thereafter be determined, exercised and e hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such suppl indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05.    Conformity with Trust Indenture Act. Every amendment of this Indenture and every supplemental indenture e pursuant to this Article IX shall conform to the requirements of the TIA as then in effect so long as this Indenture shall qualified under the TIA.

Section 9.06.    Reference in Notes to Supplemental Indentures. Notes authenticated and delivered after the execution supplemental indenture pursuant to this Article IX may, and if required by the Indenture Trustee shall, bear a notation approved by the Indenture Trustee as to any matter provided for in such supplemental indenture. If the Issuer or the In Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Indenture Trustee and the Issuer, to a supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Indenture Tru exchange for Outstanding Notes.

---

ARTICLE X

MISCELLANEOUS

Section 10.01.    Compliance Certificates and Opinions, etc. (a) Upon any application or request by the Issuer to the In Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Indenture Trustee and to the Enhancer (i) an Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such counsel a conditions precedent, if any, have been complied with, except that, in the case of any such application or request as to wh furnishing of such documents is specifically required by any provision of this Indenture, no additional certificate or opini be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture include:

(i)    a statement that each signatory of such certificate or opinion has read or has caused to be read such covenant or co and the definitions herein relating thereto;

(ii)    a brief statement as to the nature and scope of the examination or investigation upon which the statements or o contained in such certificate or opinion are based;

(iii)    a statement that, in the opinion of each such signatory, such signatory has made such examination or investigation necessary to enable such signatory to express an informed opinion as to whether or not such covenant or condition has been c with;

(iv)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been complied with; an

(v)    if the signer of such certificate or Opinion is required to be Independent, the statement required by the definition term "Independent".

(b)    (i) Prior to the deposit of any Collateral or other property or securities with the Indenture Trustee that is to the basis for the release of any property or securities subject to the lien of this Indenture, the Issuer shall, in addition obligation imposed in Section 10.01(a) or elsewhere in this Indenture, furnish to the Indenture Trustee an Officer's Cert certifying or stating the opinion of each person signing such certificate as to the fair value (within 90 days of such depo the Issuer of the Collateral or other property or securities to be so deposited.

(ii)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stat opinion of any signer thereof as to the matters described in clause (i) above, the Issuer shall also deliver to the Indenture an Independent Certificate as to the same matters, if the fair value to the Issuer of the securities to be so deposited and other such securities made the basis of any such withdrawal or release since the commencement of the then-current fiscal year Issuer, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is 10% or more of the S Balances of the Notes, but such a certificate need not be furnished with respect to any securities so deposited, if the fai thereof to the Issuer as set forth in the related Officer's Certificate is less than $25,000 or less than one percent of the S Balances of the Notes.

(iii)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuer shall also furnish Indenture Trustee an Officer's Certificate certifying or stating the opinion of each person signing such certificate as to t value (within 90 days of such release) of the property or securities proposed to be released and stating that in the opinion person the proposed release will not impair the security under this Indenture in contravention of the provisions hereof.

(iv)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying or stat opinion of any signer thereof as to the matters described in clause (iii) above, the Issuer shall also furnish to the In Trustee an Independent Certificate as to the same matters if the fair value of the property or securities and of all other pr

other than property as contemplated by clause (v) below or Securities released from the lien of this Indenture since the comme
of the then-current calendar year, as set forth in the Officer's Certificate required by clause (iii) above and this clause (iv),  equ
or more of the Security Balances of the Notes, but such certificate need not be furnished in the case of any release of prop
securities if the fair value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one
of the then Security Balances of the Notes.

(v)      Notwithstanding any provision of this Indenture, the Issuer may, without compliance with the requirements of th
provisions of this Section 10.01, (A) collect upon, sell or otherwise dispose of the Home Equity Loans as and to the extent pe
or required by the Basic Documents or (B) make cash payments out of the Payment Account as and to the extent permitted or requ
the Basic Documents, so long as the Issuer shall deliver to the Indenture Trustee every six months, commencing December 31, 2
Officer's Certificate of the Issuer stating that all the dispositions of Collateral described in clauses (A) or (B) abo
occurred during the preceding six calendar months were in the ordinary course of the Issuer's business and that the proceeds
were applied in accordance with the Basic Documents.

Section 10.02.    Form of Documents Delivered to Indenture Trustee.  In any case where several matters are required to be ce
by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered
opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may cer
give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may
or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to legal matters
a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care
know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion i
are erroneous. Any such certificate of an Authorized Officer or Opinion of Counsel may be based, insofar as it relates to
matters, upon a certificate or opinion of, or representations by, an officer or officers of the Seller or the Issuer, stati
the information with respect to such factual matters is in the possession of the Seller or the Issuer, unless such counsel kn
in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matt
erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certif
statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture Trustee,
provided that the Issuer shall deliver any document as a condition of the granting of such application, or as evidence
Issuer's compliance with any term hereof, it is intended that the truth and accuracy, at the time of the granting of such appl
or at the effective date of such certificate or report (as the case may be), of the facts and opinions stated in such documen
in such case be conditions precedent to the right of the Issuer to have such application granted or to the sufficiency
certificate or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon th
and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 10.03.    Acts of Noteholders.  (a) Any request, demand, authorization, direction, notice, consent, waiver or other
provided by this Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instrume
substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and except as
otherwise expressly provided such action shall become effective when such instrument or instruments are delivered to the In
Trustee, and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action embodied
and evidenced thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such instrument or instr
Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose
Indenture and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner p
in this Section 10.03.

(b)      The fact and date of the execution by any person of any such instrument or writing may be proved in any manner t
Indenture Trustee deems sufficient.

(c)      The ownership of Notes shall be proved by the Note Registrar.

(d)      Any request, demand, authorization, direction, notice, consent, waiver or other action by the Holder of any Note sha
the Holder of every Note issued upon the registration thereof or in exchange therefor or in lieu thereof, in respect of a
done, omitted or suffered to be done by the Indenture Trustee or the Issuer in reliance thereon, whether or not notation
action is made upon such Note.

Section 10.04.    Notices, etc., to Indenture Trustee, Issuer, Credit Enhancer and Rating Agencies. Any request,
authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this In
shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders i
made upon, given or furnished to or filed with:

(i)      the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every purpose hereunder if made,
furnished or filed in writing to or with the Indenture Trustee at the Corporate Trust Office. The Indenture Trustee shall p
transmit any notice received by it from the Noteholders to the Issuer, or

(ii)      the Issuer by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if in writ
mailed first-class, postage prepaid to the Issuer addressed to: Home Equity Loan Trust 2006-HSA4, in care of Wilmington
Company, or at any other address previously furnished in writing to the Indenture Trustee by the Issuer. The Issuer shall p
transmit any notice received by it from the Noteholders to the Indenture Trustee, or

(iii)      the Credit Enhancer by the Issuer, the Indenture Trustee or by any Noteholders shall be sufficient for every
hereunder to in writing and mailed, first-class postage pre-paid, or personally delivered or telecopied to: MBIA In
Corporation, 113 King Street, Armonk, New York 10504, Attention: IPM-SF, Re: Home Equity Loan Trust 2006-HSA4. The Credit E
shall promptly transmit any notice received by it from the Issuer, the Indenture Trustee or the Noteholders to the Is
Indenture Trustee, as the case may be.

Any consent or waiver under this Indenture or any Basic Document by the Credit Enhancer must be in writing and signed
Credit Enhancer to be effective.

Notices required to be given to the Rating Agencies by the Issuer, the Indenture Trustee or the Owner Trustee shal
writing, personally delivered or mailed by certified mail, return receipt requested, to (i) in the case of Standard & Poor's,

following address:  Standard & Poor's Ratings Services, 55 Water Street, New York, New York 10041, Attention of Asset Surveillance Department and (ii) in the case of Moody's, to the following address:  Moody's Investors Service, Inc., ABS Mon Department, 99 Church Street, New York, New York 10007; or as to each of the foregoing, at such other address as shall be des by written notice to the other parties.

Section 10.05.    Notices to Noteholders; Waiver. Where this Indenture provides for notice to Noteholders of any event, such shall be sufficiently given (unless otherwise herein expressly provided) if in writing and mailed, first-class, postage pre each Noteholder affected by such event, at such Person's address as it appears on the Note Register, not later than the lates and not earlier than the earliest date, prescribed for the giving of such notice. In any case where notice to Noteholders i by mail, neither the failure to mail such notice nor any defect in any notice so mailed to any particular Noteholder shall aff sufficiency of such notice with respect to other Noteholders, and any notice that is mailed in the manner herein provided conclusively be presumed to have been duly given regardless of whether such notice is in fact actually received.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by any Person entit receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of no Noteholders shall be filed with the Indenture Trustee but such filing shall not be a condition precedent to the validity action taken in reliance upon such a waiver.

In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activi shall be impractical to mail notice of any event to Noteholders when such notice is required to be given pursuant to any provi this Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture Trustee shall be deemed sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect an rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 10.06.    Alternate Payment and Notice Provisions. Notwithstanding any provision of this Indenture or any of the N the contrary, the Issuer may enter into any agreement with any Holder of a Note providing for a method of payment, or notice Indenture Trustee to such Holder, that is different from the methods provided for in this Indenture for such payments or n The Issuer shall furnish to the Indenture Trustee a copy of each such agreement and the Indenture Trustee shall cause payment made and notices to be given in accordance with such agreements.

Section 10.07.    Conflict with Trust Indenture Act. If any provision hereof limits, qualifies or conflicts with another pr hereof that is required to be included in this Indenture by any of the provisions of the TIA, such required provision shall cont

The provisions of TIAss.ss.310 through 317 that impose duties on any Person (including the provisions automaticall included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not phy contained herein.

Section 10.08.    Effect of Headings. The Article and Section headings herein are for convenience only and shall not aff construction hereof.

Section 10.09.    Successors and Assigns. All covenants and agreements in this Indenture and the Notes by the Issuer shall b successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall b successors, co-trustees and agents.

Section 10.10.    Separability. In case any provision in this Indenture or in the Notes shall be held invalid, ille unenforceable, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affe impaired thereby.

Section 10.11.    Benefits of Indenture. Nothing in this Indenture or in the Notes, express or implied, shall give to any other than the parties hereto and their successors hereunder, and the Noteholders, the Credit Enhancer, and any other party hereunder, and any other Person with an ownership interest in any part of the Trust Estate, any benefit or any legal or eq right, remedy or claim under this Indenture. The Credit Enhancer is a third-party beneficiary of this Indenture.

Section 10.12.    Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest accrue for the period from and after any such nominal date.

Section 10.13.    GOVERNING LAW. THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, REFERENCE TO ITS CONFLICTS OF LAW PROVISIONS (OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW), OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.14.    Counterparts. This Indenture may be executed in any number of counterparts, each of which so executed s deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.15.    Recording of Indenture. If this Indenture is subject to recording in any appropriate public recording offices recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel (which may be counsel Indenture Trustee or any other counsel reasonably acceptable to the Indenture Trustee) to the effect that such recording is ne either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or granted to the Indenture Trustee under this Indenture.

Section 10.16.    Issuer Obligation. No recourse may be taken, directly or indirectly, with respect to the obligations of the the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing deliv connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) an of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, th Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its ind capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner have no such obligations in their respective individual capacities) and except that any such partner, owner or beneficiary s fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribut failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any du obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and pro of Articles VI, VII and VIII of the Trust Agreement.

Section 10.17.    No Petition.  The Indenture  Trustee,   [text obscured] to this Indenture,  and each Noteholder,  by its acceptan Note,  hereby  covenant  and agree  that they will not at any time  institute  against  the Depositor or the Issuer,  or join institution  against  the  Depositor  or the  Issuer  of,  any  bankruptcy,  reorganization,  arrangement,  insolvency  or liqu proceedings,  or other  proceedings  under any  United  States  federal  or state  bankruptcy  or similar  law in  connection  w obligations relating to the Notes, this Indenture or any of other the Basic Documents.

Section 10.18.    Inspection.  The Issuer agrees that, on reasonable prior notice, it shall permit any  representative of the In Trustee,  during the Issuer's  normal business  hours,  to examine all the books of account,  records,  reports and other papers Issuer,  to make copies and extracts therefrom,  to cause such books to be audited by Independent  certified public accountants, discuss the  Issuer's affairs,  finances  and accounts  with the  Issuer's officers,  employees,  and Independent  certified accountants,  all at such reasonable  times and as often as may be reasonably  requested.  The Indenture  Trustee shall and shal its  representatives  to hold in  confidence  all such  information  except to the extent  disclosure  may be  required by law ( reasonable  applications for confidential  treatment are unavailing) and except to the extent that the Indenture Trustee may rea determine that such disclosure is consistent with its obligations hereunder.

---

        IN WITNESS  WHEREOF,  the Issuer and the  Indenture  Trustee have caused their names to be signed  hereto by their  res officers thereunto duly authorized, all as of the day and year first above written.

                                    HOME EQUITY LOAN TRUST 2006-HSA4,
                                    as Issuer

                                    By:      WILMINGTON TRUST COMPANY,
                                             not in its individual capacity
                                             but solely as Owner Trustee

                                    By:         /s/ Robert J. Perkins
                                         Name:  Robert J. Perkins
                                         Title:  Sr. Financial Services Officer

                                    JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
                                    as Indenture Trustee

                                    By:      /s/Joanne Murray
                                         Name: Joanne Murray
                                         Title:  Assistant Vice President

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
hereby accepts the appointment as
Paying Agent pursuant to Section 3.03
hereof and as Note Registrar pursuant
to Section 4.02 hereof.

By:    /s/ Joanne Murray
     Name:  Joanne Murray
     Title:  Assistant Vice President

---

STATE OF DELAWARE              )
                              ) ss.:
COUNTY OF NEWCASTLE            )

        On this 28th day of July,  2006,  before me personally  appeared Robert J. Perkins,  to me known,  who being by me duly did depose and say, that s/he resides at in Wilmington,  DE, that s/he is the Assistant  Vice  President of the Owner  Trustee, the corporations  described in and which executed the above  instrument;  that s/he knows the seal of said  corporation;  that t affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said  corporatio that s/he signed her/his name thereto by like order.

                                    /s/Michele C. Harra

STATE OF TEXAS            )
                         ) ss.:
COUNTY OF HARRIS         )

On this 28th day of July, 2006, before me personally appeared Joanne Murray, to me known, who being by me duly swo depose and say, that s/he resides at _Houston, TX_ that s/he is the Assistant Vice President of JPMorgan Chase Bank, N. Indenture Trustee, one of the corporations described in and which executed the above instrument; that s/he knows the seal corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the B Directors of said corporation; and that s/he signed her/his name thereto by like order.

                    /s/Mary Phu Yeung
                    Notary Public

NOTORIAL SEAL

---

EXHIBIT A-1

FORM OF CLASS A NOTES

UNLESS THIS TERM NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A N CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY TERM NOTE IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAY MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OT HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN I HEREIN.

THE PRINCIPAL OF THIS TERM NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY, THE OUTS PRINCIPAL AMOUNT OF THIS TERM NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN ON THE FACE HEREOF.

THIS TERM NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLER, THE DEPOSITOR, THE MASTER SE THE INDENTURE TRUSTEE, THE TRUSTEE OR GMAC MORTGAGE GROUP, INC. OR ANY OF THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY P IN THE INDENTURE OR THE BASIC DOCUMENTS.

HOME EQUITY LOAN TRUST 2006-HSA4
Home Equity Loan-Backed Term Note, Class A

Registered                                    Principal Amount: $[          ]

No. 1                                            Note Rate: Floating

CUSIP NO.

Home Equity Loan Trust 2006-HSA4, a statutory trust duly organized and existing under the laws of the S Delaware (herein referred to as the "Issuer", for value received, hereby promises to pay to Cede & Co. or registered assign principal sum of $[ ], payable on each Payment Date in an amount equal to the Percentage Interest evidenced by this Term Note aggregate amount, if any, payable from the Payment Account in respect of principal on the Term Notes pursuant to Section 3.05 Indenture dated as of July 28, 2006 (the "Indenture") between the Issuer, as Issuer, and JPMorgan Chase Bank, N.A., as In Trustee (the "Indenture Trustee"; provided, however, that the entire unpaid principal amount of this Term Note shall be payable on the Payment Date in July 2036, to the extent not previously paid on a prior Payment Date. Capitalized terms used defined herein are defined in Appendix A of the Indenture.

Interest on the Class A Notes will be paid monthly on each Payment Date at the Note Rate for the related I Period subject to limitations which may result in Net WAC Cap Shortfalls (as further described in the Indenture). The Note R each Interest Period will be a floating rate equal to the least of (i) LIBOR plus 0.14% per annum, (ii) 17.25% per annum an the Net WAC Rate. LIBOR for each applicable Interest Period will be determined on the second LIBOR Business Day imme preceding (i) the Closing Date in the case of the first Interest Period and (ii) the first day of each succeeding Interest Pe the Indenture Trustee as set forth in the Indenture. All determinations of LIBOR by the Indenture Trustee shall, in the abs manifest error, be conclusive for all purposes, and each holder of this Term Note, by accepting this Term Note, agrees to be b such determination. Interest on this Term Note will accrue for each Payment Date from the most recent Payment Date on which i has been paid (in the case of the first Payment Date, from the Closing Date) to but excluding such Payment Date. Interest computed on the basis of the actual number of days in each Interest Period and a year assumed to consist of 360 days. Princ and interest on this Term Note shall be paid in the manner specified on the reverse hereof.

Principal of and interest on this Term Note are payable in such coin or currency of the United States of Ame at the time of payment is legal tender for payment of public and private debts. All payments made by the Issuer with respect Term Note shall be applied first to interest due and payable on this Term Note as provided above and then to the unpaid princ this Term Note.

Reference is made to the further provisions of this Term Note set forth on the reverse hereof, which shall h same effect as though fully set forth on the face of this Term Note.

Unless the certificate of authentication hereon has been executed by the Indenture Trustee whose name appear by manual signature, this Term Note shall not be entitled to any benefit under the Indenture referred to on the reverse hereof valid or obligatory for any purpose.

This Term Note is one of a duly authorized issue of Term Notes of the Issuer, designated as its Home Loan-Backed Term Notes, all issued under the Indenture, to which Indenture and all indentures supplemental thereto refer hereby made for a statement of the respective rights and obligations thereunder of the Issuer, the Indenture Trustee and the of the Term Notes. The Term Notes are subject to all terms of the Indenture.

The Term Notes and the Variable Funding Notes (collectively, the "Notes") are and will be equally and secured by the collateral pledged as security therefor as provided in the Indenture.

This Term Note is entitled to the benefits of an irrevocable and unconditional financial guaranty insurance issued by MBIA Insurance Corporation.

Principal of and interest on this Term Note will be payable on each Payment Date, commencing August 25, 20 described in the Indenture. "Payment Date" means the twenty-fifth day of each month, or, if any such date is not a Busines then the next Business Day.

The entire unpaid principal amount of this Term Note shall be due and payable in full on the Payment Date 2036 pursuant to the Indenture, to the extent not previously paid on a prior Payment Date. Notwithstanding the foregoing, Event of Default shall have occurred and be continuing, then the Indenture Trustee or the holders of Notes representing not le a majority of the Security Balances of all Notes with the consent of the Credit Enhancer, or the Credit Enhancer may decl Notes to be immediately due and payable in the manner provided in Section 5.02 of the Indenture. All principal payments on t Notes shall be made pro rata to the holders of Term Notes entitled thereto.

Payments of interest on this Term Note due and payable on each Payment Date, together with the installm principal, if any, to the extent not in full payment of this Term Note, shall be made by check mailed to the Person who appears as the Registered Holder of this Term Note (or one or more Predecessor Notes) on the Note Register as of the c business on each Record Date, except that with respect to Term Notes registered on the Record Date in the name of the nominee Depository Agency (initially, such nominee to be Cede & Co.), payments will be made by wire transfer in immediately availabl to the account designated by such nominee. Such checks shall be mailed to the Person entitled thereto at the address of such as it appears on the Note Register as of the applicable Record Date without requiring that this Term Note be submitted for n of payment. Any reduction in the principal amount of this Term Note (or any one or more Predecessor Notes) effected by any p made on any Payment Date shall be binding upon all future holders of this Term Note and of any Term Note issued upon the regis of transfer hereof or in exchange hereof or in lieu hereof, whether or not noted hereon. If funds are expected to be availab provided in the Indenture, for payment in full of the then remaining unpaid principal amount of this Term Note on a Paymen then the Indenture Trustee, in the name of and on behalf of the Issuer, will notify the Person who was the Registered Holder as of the Record Date preceding such Payment Date by notice mailed or transmitted by facsimile prior to such Payment Date, amount then due and payable shall be payable only upon presentation and surrender of this Term Note at the address specified notice of final payment.

As provided in the Indenture and subject to certain limitations set forth therein, the transfer of this Te may be registered on the Note Register upon surrender of this Term Note for registration of transfer at the Corporate Trust duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the Indenture Trustee duly execu the holder hereof or such holder's attorney duly authorized in writing, with such signature guaranteed by an "eligible gu institution" meeting the requirements of the Note Registrar, which requirements include membership or participation in the Sec Transfer Agent's Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Note Re in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended, and th one or more new Term Notes in authorized denominations and in the same aggregate principal amount will be issued to the des transferee or transferees. No service charge will be charged for any registration of transfer or exchange of this Term Note, Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in con with any registration of transfer or exchange of this Term Note.

Each holder or Beneficial Owner of a Term Note, by acceptance of a Term Note, or, in the case of a Beneficial of a Term Note, a beneficial interest in a Term Note, covenants and agrees that no recourse may be taken, directly or indi with respect to the obligations of the Issuer, the Owner Trustee, the Seller, the Master Servicer, the Depositor or the In Trustee on the Term Notes or under the Indenture or any certificate or other writing delivered in connection therewith, agai the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Is (iii) any partner, owner, beneficiary, agent, officer, director or employee of the Indenture Trustee or the Owner Trustee individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person m expressly agreed and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by app law for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing entity.

Each holder or Beneficial Owner of a Term Note, by acceptance of a Term Note or, in the case of a Beneficial of a Term Note, a beneficial interest in a Term Note, covenants and agrees by accepting the benefits of the Indenture th holder or Beneficial Owner of a Term Note will not at any time institute against the Depositor or the Issuer, or join institution against the Depositor, the Seller, the Master Servicer, GMAC Mortgage Group, Inc. or the Issuer of, any bank reorganization, arrangement, insolvency or liquidation proceedings under any United States federal or state bankruptcy or simi in connection with any obligations relating to the Term Notes, the Indenture or the Basic Documents.

The Issuer has entered into the Indenture and this Term Note is issued with the intention that, for federal, and local income, single business and franchise tax purposes, the Term Notes will qualify as indebtedness of the Issuer. Each of a Term Note, by acceptance of a Term Note (and each Beneficial Owner of a Term Note by acceptance of a beneficial intere Term Note), agrees to treat the Term Notes for federal, state and local income, single business and franchise tax purp indebtedness of the Issuer.

Prior to the due presentment for registration of transfer of this Term Note, the Issuer, the Indenture Trus any agent of the Issuer or the Indenture Trustee may treat the Person in whose name this Term Note is registered (as of the determination or as of such other date as may be specified in the Indenture) as the owner hereof for all purposes, whether

this Term Note be overdue) and none of the Issuer, the Indenture Trustee or any such agent shall be affected by notice to the contrary.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modifica the rights and obligations of the Issuer and the Indenture Trustee and the rights of the holders of the Term Notes un Indenture at any time by the Issuer and the Indenture Trustee with the consent of the holders of Notes representing a majority Security Balances of all Notes at the time Outstanding and the Credit Enhancer and with prior notice to the Rating Agencie Indenture also contains provisions permitting the holders of Notes representing specified percentages of the Security Balances Notes, on behalf of the holders of all the Notes, to waive compliance by the Issuer with certain provisions of the Indent certain past defaults under the Indenture and their consequences. Any such consent or waiver by the holder of this Term Note one or more Predecessor Notes) shall be conclusive and binding upon such holder and upon all future holders of this Term Note any Term Note issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof whether or not notation consent or waiver is made upon this Term Note. The Indenture also permits the Issuer and the Indenture Trustee to amend o certain terms and conditions set forth in the Indenture without the consent of holders of the Term Notes issued thereunder b prior notice to the Rating Agencies and the Credit Enhancer.

The term "Issuer" as used in this Term Note includes any successor or the Issuer under the Indenture.

The Issuer is permitted by the Indenture, under certain circumstances, to merge or consolidate, subject rights of the Indenture Trustee and the holders of Term Notes under the Indenture.

The Term Notes are issuable only in registered form in denominations as provided in the Indenture, sub certain limitations therein set forth.

This Term Note and the Indenture shall be construed in accordance with the laws of the State of New York, reference to its conflict of law provisions and the obligations, rights and remedies of the parties hereunder and thereunder s determined in accordance with such laws.

No reference herein to the Indenture and no provision of this Term Note or of the Indenture shall alter or the obligation of the Issuer, which is absolute and unconditional, to pay the principal of and interest on this Term Note times, place and rate, and in the coin or currency herein prescribed.

Anything herein to the contrary notwithstanding, except as expressly provided in the Basic Documents, Wilmington Trust Company in its individual capacity, JPMorgan Chase Bank, N.A., in its individual capacity, any owner of a ben interest in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or succes assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest Term Note or performance of, or omission to perform, any of the covenants, obligations or indemnifications contained Indenture. The holder of this Term Note by its acceptance hereof agrees that, except as expressly provided in the Basic Doc in the case of an Event of Default under the Indenture, the holder shall have no claim against any of the foregoing deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Inden in this Term Note.

---

IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its individual capacity, has caused this Term Note to be duly executed.

HOME EQUITY LOAN TRUST 2006-HSA4,

By        WILMINGTON TRUST COMPANY, not
          in its individual capacity but solely as
          Owner Trustee

Dated: July 28, 2006

By: _____
     Authorized Signatory

CERTIFICATE OF AUTHENTICATION

This is one of the Term Notes referred to in the within mentioned Indenture.

JPMORGAN CHASE BANK, N.A., not in
its individual capacity but solely as Indenture
Trustee

Dated: July 28, 2006

By: _____
     Authorized Signatory