# EXHIBIT Q
# (REDACTED)

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In Re:                                      Case No.

RESIDENTIAL CAPITAL, LLC, et. al,        12-12020(MG)

Debtors.

------------------------------------x




VIDEOTAPE DEPOSITION OF MARK RENZI

New York, New York

November 7, 2012

1:08 p.m.






Reported by:
ERICA L. RUGGIERI, RPR
JOB NO:  27640

182

1                    MARK RENZI

2      A.    We were presenting ranges.

3      Q.    What was the high end of

4  debtors' range when Kathy Patrick was at

5  $10 billion?

6           MR. RAINS:   Same objection.   No

7      foundation.   Calls for speculation.

8      A.    █ ████████████████  ████████

9  ████████  ████████████████████████

10 ██████████████████████████

11     Q.    ██████

12     A.    ███████████████████████

13 ████████████████████  ████████████

14 █████████████████████████

15 ██████████████████

16     Q.    But at that point in time, to

17 the best of your recollection, the number

18 that debtors were presenting to Kathy

19 Patrick was less than $8 billion, it was

20 7.8 billion; is that correct?

21          MR. RAINS:   Calls for

22     speculation.   No foundation.

23          MR. JURGENS:   I'm asking for the

24     witness's recollection.

25     Q.    Is it 7.08?

183

1          MARK RENZI

2          A.    That's what -- yeah.  Just say

3     seven -- I would say 7.1 is what you are

4     referring to in terms of the number but

5     your question is the final -- I believe

6     you asked me if I was there for the final

7     part of the negotiations to arrive at 8.7

8     and I was not present for -- for that

9     portion.

10         Q.    But am I correct that the

11    debtors were at 7.1, Kathy Patrick was at

12    10 and in some way they met at 8.7; is

13    that correct?

14              MR. RAINS:   Objection.  Calls

15         for speculation.  No foundation.

16         Q.    To the best of your

17    understanding.

18         A.    We were presenting a range.  So

19    we didn't present a number.  I did not

20    present a number, just as Kathy Patrick.

21    I believe MoFo was the one describing the

22    final portions of the negotiation.  So you

23    are asking me if it's one number.  On

24    May 8th we were presenting a range of

25    numbers.

184

MARK RENZI

Q.    Correct.  But $8.7 billion falls

outside that range that you presented to

Kathy Patrick on May 8th, correct?

A.    Yes, it does.

Q.    Did you do any subsequent

analysis after that May 8th analysis that

created ranges where the $8.7 billion fell

within the range discussed with Kathy

Patrick?

A.    I don't remember a specific

chronology at that point in time but

certainly we were evaluating other ranges

at that point in time.

Q.    Did debtors' counsel ever ask

you to come up with an analysis to justify

settling at $8.7 billion?

A.    I would say debtors' counsel

said if you hold other levers constant,

what does that mean for an implied defect

rate.

Q.    Was the total allowed claim that

was going to be agreed with Kathy Patrick

a lever in that analysis that you just

described?

185

1                          MARK RENZI

2          A.      Could you -- it --

3          Q.      You just focused on the defect

4    rate.  I know from reading e-mails that

5    Kathy Patrick's crew was very focused on

6    defect rates.  My question is, did you

7    move -- let me withdraw that.

8                  Was one of the levers that you

9    were moving to reach a 22 percent defect

10   rate --

11         A.      I don't recognize 22 percent.

12         Q.      The total allowed claim.

13         A.      I don't recognize 22 percent.

14         Q.      You don't recall Kathy Patrick

15   requesting a, that the final total allowed

16   claim reflect a 22 percent defect rate?

17         A.      I recollect an $8.7 billion

18   claim.

19         Q.      Did anybody ask you to conduct

20   an analysis that would allow the debtors

21   to back into the $8.7 billion number?

22         A.      Well, we had done analyses prior

23   to the settlement based on the range of

24   defect rates that showed numbers higher

25   than $8.7 billion.

186

1                    MARK RENZI

2        Q.    But not in the context of

3   presenting those ranges to Kathy Patrick,

4   correct?

5        A.    Correct.  We were in

6   negotiation -- we were negotiating.  So in

7   the process of negotiating she had a

8   higher number and we had a lower number.

9   The information we presented was a range

10  of reasonable numbers to continue with

11  negotiations.

12       Q.    Okay.

13             MR. JURGENS:  I'll use the

14       balance of my time --

15             MR. RAINS:  You've used eight

16       minutes of your five, so I don't think

17       you have more time.

18             MR. JURGENS:  Well, Mr. Rains, I

19       believe there is one question.

20             MR. RAINS:  Go ahead.

21  EXAMINATION BY

22  MR. DENMAN:

23       Q.    Very quickly, Harrison Denman

24  from White & Case on behalf of the ad hoc

25  junior secured bondholders.