# EXHIBIT Y

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In Re: Case No:

RESIDENTIAL CAPITAL, LLC, et. al,        12-12020(MG)

       Debtors.

------------------------------------x

VIDEOTAPE DEPOSITION OF TAMMY HAMZEPHOUR

New York, New York

November 13, 2012

9:43 a.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27903

TAMMY HAMZEPHOUR

(9019 Exhibit 88, e-mail chain dated August 15, 2012, Bates RC 9019_00093188, marked for identification, as of this date.)

Q. Did you receive a copy of each of the two e-mails in this exhibit?

A. Yes, I did.

Q. In the earlier e-mail from Gary Lee, Mr. Lee reported on the court's approval of an amendment to the RMBS trust settlement agreement, correct?

A. I think it's a court order, not a court approval of agreement. I don't know what the distinguishing factor is.

Q. Okay. He reported to an order by the court with respect to an amendment to the RMBS trust settlement agreement, right?

MR. RAINS: Misstates the document.

A. The order is the scheduling order on hearing dates and things. I think that's what the order is referring to here.

```
                                                        88
 1                  TAMMY HAMZEPHOUR
 2        Q.    Okay.  You understood Mr. Lee
 3   was at least talking about or writing
 4   about an amendment to the RMBS trust
 5   settlement agreement?
 6        A.    Yes.
 7        Q.    Are we in agreement on that?
 8        A.    Yes.
 9        Q.    Okay.  And the amendment he was
10   describing allowed ResCap to sell its
11   platform and HFS book with limited
12   objections from the trustees; is that
13   right?
14        A.    Yes.
15        Q.    In the next to last paragraph of
16   his e-mail Mr. Lee also made note of what
17   he referred to as one "interesting
18   change."  Do you see that?
19        A.    Yes.
20        Q.    And there he said, "Previously
21   the settlement agreement left open the
22   allocation of the RMBS claim between the
23   different ResCap legal entities.  The
24   agreement now allows the settling trusts
25   to elect to allocate no more than
```

89

TAMMY HAMZEPHOUR

20 percent of their allowed claim to ResCap LLC.  This provision was added to protect the investors in the event that a larger than expected portion of the Ally settlement proceeds is allocated to ResCap LLC based on alter ego type claims (as opposed to RFC and GMACM as we anticipate)."

    Do you see that?

A.   Yes.

Q.   That was a description of the so-called Holdco election, wasn't it?

A.   Yes.

Q.   Was ResCap's board of directors asked to consider and approve that amendment to the RMBS trust settlement agreement?

A.   I don't remember that there were.

Q.   Weren't you the one who approved that?

A.   I approved it -- I signed it after discussing with counsel and Mr. Marano.

90

TAMMY HAMZEPHOUR

Q. Who authorized you to sign it?

A. I don't think anyone gave a specific direction to sign it.

MR. KAUFMAN: Just take a few minute break.

THE VIDEOGRAPHER: The time is 11:36 a.m. and we are off the record.

(Whereupon, there is a recess in the proceedings.)

THE VIDEOGRAPHER: The time is 11:55 a.m. and we are back on the record.

Q. Ms. Hamzephour, I just have a couple of questions more.

A. Sure.

Q. I understand that you may have had one or two telephone calls with Ms. Patrick in or around November of 2011 in connection with the first meeting with her in Minneapolis. Did you have any telephone calls with her in 2012?

A. Not one-on-one that I remember.

Q. You have been identified as the debtors -- one of the debtors fact

91

1  TAMMY HAMZEPHOUR

2  witnesses at the hearing of the 9019

3  motion.  What exactly is going to be the

4  substance of your testimony?

5      A.    I don't know.  I'll answer

6  whatever questions I'm asked I suppose.

7          MR. KAUFMAN:  Okay.  I have

8      nothing further.

9  EXAMINATION BY

10  MR. DENMAN:

11      Q.    Harrison Denman from White &

12  Case for the ad hoc secured junior

13  noteholders.  I just have a few quick

14  questions.

15          Ms. Hamzephour, your title is

16  that of general counsel of Residential

17  Capital, LLC, correct?

18      A.    Yes.

19      Q.    Do you have any titles or

20  positions with respect to subsidiaries

21  GMAC Mortgage or Residential Funding?

22      A.    Yes.  Also general counsel.

23      Q.    Okay.  And at the beginning of

24  this deposition you mentioned that you had

25  attended a meeting with Kathy Patrick in

92

TAMMY HAMZEPHOUR

1
2  November 2011, correct?
3      A.   Yes.
4      Q.   And you mentioned that at that
5  meeting Kathy Patrick had informed you
6  that she believed her clients had claims
7  against GMAC Mortgage, Residential Funding
8  and I believe you included Ally, correct?
9      A.   Yes.
10     Q.   Did she inform you at that
11 meeting that she believed her clients had
12 claims against Residential Capital?
13     A.   Yes.  She included ResCap
14 debtors, the ResCap family of companies.
15 And she didn't have an organizational
16 chart.  Her goal was to be communicating
17 with both Ally and ResCap.
18     Q.   And was it your understanding at
19 the time of that meeting that her clients
20 possessed claims against Residential
21 Capital, LLC as opposed to GMAC Mortgage
22 and RFC?
23     A.   There wasn't a distinction drawn
24 at that meeting.  She was saying she had
25 claims against the entire enterprise.

111

TAMMY HAMZEPHOUR

Q. And when was that?

A. It was in early May.

Q. And how many drafts of this agreement did you read?

A. I don't remember.

Q. Was it more than five? Less than five?

A. I don't remember how many drafts.

Q. Okay. I'm going to turn your attention to section 6.04, which is on page 7. And the section is entitled Legal Fees.

A. Yes.

Q. Do you recall reviewing this section of the agreement?

A. I remember this section of the agreement, yes.

Q. And what does this section generally provide?

A. It provides for counsel to the Steering Committee of investors to receive legal fee payments.

Q. And what is your understanding

112

TAMMY HAMZEPHOUR

of how that -- how those legal fee payments work?

A. That they come out of the allowed claim.

Q. And do you have an understanding of the amount of those legal fees?

A. It's some percentage. I don't recall.

Q. Did you provide any comments or edits or other instructions with respect to the legal fees section of the RMBS settlement?

A. I don't -- I don't believe I did.

Q. Who negotiated the legal fees section of the RMBS settlement agreement?

A. That would be Morrison & Foerster.

Q. Do you know if they commented or provided any edits or other communications with respect to the legal fees section?

A. I don't remember. There were a number of drafts. I don't remember what the markups were of each one.

113

1          TAMMY HAMZEPHOUR

2     Q.    Do you recall -- withdrawn.

3           In reviewing the settlement

4    agreement and section 6.04, did you make

5    any assessment of whether or not the legal

6    fees provided for for the Steering

7    Committee counsel were reasonable?

8     A.    No.   I didn't -- I didn't

9    determine it one way or the other.

10    Q.    You didn't do it at all?

11    A.    No.   I mean I didn't -- I didn't

12   consider an analysis of whether I thought

13   they were reasonable fees.

14    Q.    Do you think that was an

15   important thing to do?

16    A.    No.

17    Q.    Why not?

18    A.    They weren't -- they weren't

19   fees that the debtors were paying.  So I'm

20   not sure why I would set the fees for

21   these investors between themselves and

22   their lawyer.

23    Q.    Right.  But you testified

24   earlier that the fees that they received

25   were going to come out of the allowed

114

TAMMY HAMZEPHOUR

claim.

    A.    That's right.

    Q.    Okay. Do you know if anybody at ResCap made any determination as to whether the legal fees in provision RMBS settlement agreement was -- provided reasonable fees for the Steering Committee's counsel?

    A.    I don't believe so.

    Q.    Let's turn to section 8.02. Are you familiar with -- section 8.02 is entitled Financial Guarantee Provider Rights and Obligations. Do you see that?

    A.    Yes.

    Q.    Are you familiar with this section of the agreement?

    A.    Yes.

    Q.    What is your understanding of this section of the agreement.

    A.    That the releases provided don't act to release claims of financial guarantee providers.

    Q.    Is that any claims of financial guarantee providers or certain claims?

115

TAMMY HAMZEPHOUR

A. That relate to the settlement trust.

Q. So any claims of the financial guarantee providers that relate to the settlement trust, it is your understanding that section 8.02 carves those out of the agreement?

MR. RAINS: Objection. Calls for a legal conclusion.

MR. SIDMAN: I'm just asking her to clarify her statement.

MR. RAINS: My objection stands. You can go ahead and answer.

A. I think the language speaks for itself.

Q. What is your understanding of the claims of financial guarantee providers?

A. My understanding is that there were certain securitizations that had bond insurance coverage. And that as those trusts took losses, some of the insurers paid out claims. And so they have made claims against us with respect to their

116

TAMMY HAMZEPHOUR

insurance contracts as well as representation and warranty claims under those pooling and servicing agreements.

Q. So you talk about two sets of claims. You are talking about claims under the insurance contracts and then claims with respect -- representation and warranty claims --

A. Yes.

Q. -- under the PSA?

A. Right.

Q. Let's break that down. What is your understanding with respect to the financial guarantee with respect to their insurance agreements?

A. The insurance carriers have alleged that they were fraudulently induced to issue those insurance policies.

Q. Any other claims based on the insurance agreement that you are aware of?

A. I don't recall all the claims that were spelled out in the complaints.

Q. Sure. Who has filed complaints if you recall?