A. 46

Outlook E-mail

| | |
|---|---|
| **From:** | Cancelliere, Jeff - PA |
| **Sent:** | 5/8/2012 11:00:44 AM |
| **To:** | Lee, Gary S.; Devine, Timothy; rcieri@kirkland.com |
| **Cc:** | Ruckdaschel, John; rschrock@kirkland.com; Levitt, Jamie A.; mark.renzi@fticonsulting.com; Solomon, William Legal |
| **Subject:** | RE: Are you available |

One of the drivers for the lower defect from her standpoint is due to better performance on the loans as well as servicing efficiency.

From: Lee, Gary S. [GLee@mofo.com]
Sent: Tuesday, May 08, 2012 9:59 AM
To: Devine, Timothy; rcieri@kirkland.com
Cc: Ruckdaschel, John; Cancelliere, Jeff - PA; rschrock@kirkland.com; Levitt, Jamie A.; mark.renzi@fticonsulting.com; Solomon, William Legal; Lee, Gary S.
Subject: Re: Are you available

Jeff is trying to understand her BoA exhibit and then we may have a clearer view. In reality - lehman was 35pc, she says boa was 36, and 22pc is lower than we thought we would end up with. She is taking the discount already because its bk dollars not boa dollars.

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

From: Devine, Timothy
To: Devine, Timothy ; Lee, Gary S. ; 'rcieri@kirkland.com'
Cc: Ruckdaschel, John ; Cancelliere, Jeff - PA ; 'rschrock@kirkland.com' ; Levitt, Jamie A.; 'Renzi, Mark' ; Solomon, William Legal
Sent: Tue May 08 10:46:04 2012
Subject: RE: Are you available
Folks:

Light bulb moment:

Isn't the obvious answer that KP states her 22% - 11 billion or whatever – and then takes an appropriate haircut (analogous to the 36% to 14% haircut she took in BoA) to get to a lower $ number ($8B?) as stipulated allowed claim?

If you all agree, please help me enunciate in simple terms what the haircut is based on and we can work out who talks it through with KP.

Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477

From: Devine, Timothy
Sent: Tuesday, May 08, 2012 7:15 AM
To: Lee, Gary S.; 'rcieri@kirkland.com'
Cc: Ruckdaschel, John; Cancelliere, Jeff - PA; 'rschrock@kirkland.com'; JLevitt@mofo.com; Renzi, Mark; Solomon, William Legal
Subject: FW: Are you available

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

Here's KP's version – the BoA settlement was not at 14% but at 36% and then haircut to the risk that BoA would not be responsible for Countrywide if the matter was litigated rather than settled.

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477

_____

From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
Sent: Tuesday, May 08, 2012 1:19 AM
To: Devine, Timothy
Subject: Re: Are you available

No, that's wrong:  the BofA defect rate was over 30%.  BofA ARGUED with us that the defect rate was 14%, which is why that is scenario 1 in the spreadsheet that BNY's expert used--but the ACTUAL defect rate we used, and settled on, was 36%.  That would be scenario 3 or 4 in our spreadsheet, which is in the BNY expert report, too.  I'm at a loss to understand why ResCap and Ally won't just look at the spreadsheet we used in BofA--because the scenarios in it track exactly what I've said.  BofA argued for a vastly lower defect rate, which we rejected; they paid based on our much higher defect rate, which we accepted.

Importantly, the 36% defect rate we used for BofA was before litigation discounts, a primary one of which was the risk-- which has obtained here--that Countrywide would go into bankruptcy.  But for that risk, and the insolvency of Countrywide, the size of the CLAIM that we calculated against BofA was $32 billion.  That's why I keep telling you that what we got from them was 25.7 cents on the dollar:  the CLAIM size was $32 billion against them, and we settled for $8.5 billion, which is a recovery of 25.7 cents on the dollar based on a defect rate of 36%.  Here, we've got a CLAIM size of more than $10 billion on which, as a practical matter, the recovery will be far less due to ResCap's bankruptcy.

Below is the relevant set of comparisons:

| | |
|---|---|
| BofA Original Face:  $432 billion | ResCap OF:  $220 billion |
| BofA Current Face at Settlement:  $163 billion | ResCap CF:  $63 billion |
| BofA Claim Size:       $32.5 billion | ResCap Claim Size:  $10 billion |
| BofA Defect vs. Losses:  36% | ResCap Defect vs. Losses  22.2% |
| BofA Settlement:  $8.5 billion | ResCap Settlement:   whatever is distributed |
| BofA Settlement vs. Claim Size:  25.7 cents | ResCap Settlement:  distrib. amt / $10 billion |

That's why the numbers you're giving me don't make any sense, either with regard to our BofA Settlement--because the numbers you have are just wrong--or by virtue what we know about ResCap.  We've analyzed and assessed what we think is ResCap's actual exposure:  if we were using the same, 36% defect rate we used with Bank of America, the claim size for ResCap would be well in excess of $18 billion.  Instead, we've offered to resolve by agreeing to a claim size of $10 billion.

Thus, the claim size is not just ratably lower based on issuance size, it is actually lower as a result of our analysis of the ResCap defect rate vs. Countrywide's.  ResCap will have problems not just with us but with every investor if you try to suggest that the defect rate is a lot lower than where we've analyzed it:  you can't reconcile that with the data, the accrued losses or the allegations in existing and future lawsuits.

Bottom line:  you are getting a lower defect rate, but it's a realistic rate based on accurate data and using the same methodology we used before.

Kathy Patrick
Gibbs & Bruns LLP
713.751.5253

On May 8, 2012, at 12:12 AM, "Devine, Timothy" > wrote:

I'm getting lots of pressure on valuation now.  BoA 8.5 billion represents 14 defect rate, correct?  Everything we know about our product - from origination through pooling through reps and diligence throughg servicing - makes our folks believe we are better (lower) than Countrywide by a large margin.  I am being asked to explain how we could agree to a defect rate 150 of Countrywide's.

----- Original Message -----
From: Kathy D. Patrick >
To: Devine, Timothy; Kathy D. Patrick >
Sent: Mon May 07 21:15:14 2012
Subject: Re: Are you available

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

Sure.  713 972 4695

Kathy D. Patrick
Gibbs & Bruns, L.L.P.

----- Original Message -----
From: Devine, Timothy [mailto:Timothy.Devine@ally.com]
Sent: Monday, May 07, 2012 08:10 PM
To: Kathy D. Patrick
Subject: Re: Are you available

May I call you in 15 minutes?  Sorry.

----- Original Message -----
From: Kathy D. Patrick >
To: Devine, Timothy
Sent: Mon May 07 19:57:18 2012
Subject: Are you available

At 830 Eastern tonight?
Where can I reach you?

Kathy D. Patrick
Gibbs & Bruns, L.L.P.

-------------------------------------------------------------------

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

===========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-------------------------------------------------------------------

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

A. 47

Outlook E-mail

**From:**     Lee, Gary S.
**Sent:**     5/9/2012 9:12:19 AM
**To:**       'Timothy.Devine@ally.com'; 'tammy.hamzehpour@ally.com'; 'john.ruckdaschel@ally.com'; 'rcieri@kirkland.com'; 'rschrock@kirkland.com'; Levitt, Jamie A.; 'jeff.cancelliere@gmacrescap.com'; 'William.Thompson@ally.com'; 'Lauren.Delehy@gmacrescap.com'; 'mark.renzi@fticonsulting.com'
**Cc:**       Lee, Gary S.
**Subject:**  Re: Talcott Franklin

We can send him a revised agreement and psa when we get next draft from kp.


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Devine, Timothy
**To:** Hamzehpour, Tammy ; Ruckdaschel, John ; Cieri, Richard M. ; Lee, Gary S.; Schrock, Ray C. ; Levitt, Jamie A.; Cancelliere, Jeff - PA ; Thompson, William - Legal Dept - PA ; Delehey, Lauren - PA ; Renzi, Mark
**Sent:** Wed May 09 09:04:24 2012
**Subject:** Talcott Franklin

Good news.

Talcott Franklin called me.

He is very favorably inclined to support and participate in what we're doing.

He says he can move quickly, but he has not yet obtained client support - given his very diffuse client pool. He is confident he can deliver.

He is, on his own, speaking with trustee DB on potential mechanics of a potential deal. I told him I assume he will do what he needs to do subject to all the nda and other considerations to be in position to deliver instructions to trustees, etc. as any settlement will require.

Jeff C: will you please update the team as to how much more participation in RFC and GMACM that Talcott Franklin's participation would deliver?

I let him know that there are deals moving quickly and that he should be prepared to show full support. He stated that he sees the value in the plan we have developed and that the alternatives are all much worse.

I told him that the BK lawyers will be in best position from our side to tell him how to manifest his support.

I think he would like to sign something pre-petition. I certainly am not the right person to negotiate that with him. As you recall, we sent him a draft of the settlement agreement and PSA early on.

I would appreciate feedback as to next steps.

Thanks.

Tim


Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477



CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00049197

A. 48

Confidential

# ResCap

Steve Abreu
Jonathan Ilany
John Mack
Tom Marano
Ted Smith
Pam West
Jim Whitlinger

**Residential Capital, LLC Board of Directors Meeting**
**Wednesday, May 9, 2012, 3:00 pm (ET)**
Dial-in No.:  866-203-0920 / International No.:  206-445-0056
Conference Code: 53396-93036

A special telephonic meeting of the ResCap Board of Directors will be held
Wednesday, May 9, 2012, at 3:00 pm (ET).  An agenda is attached.  Supporting
materials will be distributed just before the meeting.

Please let me know if you are unable to participate.  Feel free to contact me by
phone (313.656.6301) or email (cathy.quenneville@ally.com) should you have
any questions.  Thank you.

Cathy Quenneville
Secretary
5/9/12

cc:  Tammy Hamzehpour
     Morrison Cohen
     Morrison & Foerster



**ResCap Confidential**

Confidential

Confidential

**Residential Capital, LLC**
**Board of Directors**
**Wednesday, May 9, 2012, 3:00 pm (ET)**

## Agenda

|  |  | Length | Start |
|---|---|---|---|
| 1. | Proposed Legal Settlement | (30 min) | 3:00 pm |
| 2. | Project Bounce Update | (30 min) | 3:30 pm |

Confidential

CONFIDENTIAL - PROFESSIONALS' EYES ONLY

RC-9019_00054002

Confidential

# ResCap Private Label Securities
# Rep & Warrant Settlement Discussion
# Supporting Information
# May 9th, 2012

Confidential







R E S C A P

1 of 1

CONFIDENTIAL - PROFESSIONALS' EYES ONLY

Confidential

RC-9019_00054003

Confidential

**Privileged and Confidential**
**For Settlement Purposes Only**

### 2004-2007 PLS R&W Analysis

| | | | A | B | C | D |
|---|---|---|---|---|---|---|
| | | | **ResCap Issued Deals** | | | |
| | | | | ResCap Issuance | KP Group | % of Total Issue |
| 1 | | Original Balance | | 226,029.3 | 171,250.8 | 76% |
| 2 | Deal Collat (a) | Current Balance | | 63,284.8 | 49,238.1 | 78% |
| | | % Delinquent | | 28% | 29% | |
| 3 | | Cume Loss To Date | | 29,891.9 | 22,694.1 | 76% |
| 4 | | Projected Loss | | 14,225.7 | 10,937.4 | 77% |
| 5 | | Est Lifetime Loss | | 44,117.5 | 33,631.5 | 76% |
| 6 | | Est Lifetime Loss % of Orig Bal | | 19.5% | 19.6% | |
| 13 | Settle Amt | **ResCap Settlement - 19.72% Defect** | | **8,700.0** | **6,632.1** | 76% |
| 14 | | Lehman Claim Amount - 35% Defect | | 15,441.1 | 11,771.0 | 76% |
| 15 | | BofA Baseline - 36% Defect | | 15,882.3 | 12,107.4 | 76% |

(a) Collateral and Bond information sourced from Intex files

**Key Notes:**
1) KP's Investor group covers 82% of RFC issued non-wrapped deals and 88% of GMACM issued non-wrapped deals
2) KP's Investor group covers 63% of RFC issued wrapped deals and 28% of GMACM issued wrapped deals

4) ResCap projected losses based on third party vendor model (ADCO LDM), and the model was calibrated to fit ResCap collateral performance by product/vintage
5) ResCap projected severity based on Moody's baseline HPI forecast and ADCO model loss estimations
6) There could be amounts conceded if the true defect rate is below the 19.72% based on actual loan file reviews and application of litigation defenses.
7) Lehman bankruptcy estimated claim amount for plan voting based on 35% defect rate. The defect rate could be higher as claims are resolved.
8) BofA proposed settlement defect rate set at 36% prior to litigation adjustments
9) KP has factored into the analysis the estimated recovery amount through bankruptcy, as well as third party releases.

CONFIDENTIAL - PROFESSIONALS' EYES ONLY

Confidential

*FOR SETTLEMENT DISCUSSION PURPOSES ONLY*
*SUBJECT TO MATERIAL CHANGE*

CENTER|VIEW PARTNERS

*ATTORNEY – CLIENT PRIVILEGE*
*PREPARED IN ANTICIPATION OF LITIGATION*

1



A. 49

Outlook E-mail

**From:**    Lee, Gary S.
**Sent:**    5/9/2012 2:38:44 PM
**To:**    John Mack (john_e_mack@msn.com); Jonathan Ilany (jonathan@ilany.net); Pamela West (alemapew45@bellsouth.net); Abreu, Steve - PA; Ted Smith (efs345@gmail.com); Whitlinger, Jim - PA; Marano, Tom
**Cc:**    Hamzehpour, Tammy; Evans, Nilene R.; Tanenbaum, James R.; Nashelsky, Larren M.; Joe Moldovan (jmoldovan@morrisoncohen.com); Jack Levy (jlevy@morrisoncohen.com); David Lerner (dlerner@morrisoncohen.com); Connolly, Michael
**Subject:**    Meeting Notice - ResCap Board Meeting, May 9, 2012, 3:00 pm (ET) - privileged and confidential attorney-client communication
**Attachments**    0804_001.pdf

Materials for 3 pm attached. They have been prepared for settlement and illustrative purposes only.

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Ellenburg, April A. [mailto:april.ellenburg@ally.com]
**Sent:** Wednesday, May 09, 2012 2:08 PM
**To:** John Mack (john_e_mack@msn.com); Jonathan Ilany (jonathan@ilany.net); Pamela West (alemapew45@bellsouth.net); Abreu, Steve - PA; Ted Smith (efs345@gmail.com); Whitlinger, Jim - PA; Marano, Tom
**Cc:** Hamzehpour, Tammy; Evans, Nilene R.; Tanenbaum, James R.; Nashelsky, Larren M.; Lee, Gary S.; Joe Moldovan (jmoldovan@morrisoncohen.com); Jack Levy (jlevy@morrisoncohen.com); David Lerner (dlerner@morrisoncohen.com); Connolly, Michael; Grzeskiewicz, Terry - PA; Klepchick, Dottie - PA; Shank, Jennifer - PA; Dillard, Thalia; Dicicco, Donna; Quenneville, Cathy L.; Skover, Katherine M.; Taylor, Barbara N.
**Subject:** Meeting Notice - ResCap Board Meeting, May 9, 2012, 3:00 pm (ET)
**Importance:** High

**Residential Capital, LLC Board of Directors Meeting**
**Wednesday, May 9, 2012, 3:00 pm (ET)**
Dial-in No.:  866-203-0920 / International No.:  206-445-0056
Conference Code:  53396-93036

A special telephonic meeting of the ResCap Board of Directors will be held Wednesday, May 9, 2012, at 3:00 pm (ET).  An agenda is attached.  Supporting materials will be distributed just before the meeting.

Please let me know if you are unable to participate.  Feel free to contact me by phone (313.656.6301) or email (cathy.quenneville@ally.com) should you have any questions.  Thank you.

Cathy Quenneville
Secretary
5/9/12



CONFIDENTIAL – PROFESSIONALS' EYES ONLY

CONFIDENTIAL – PROFESSIONALS' EYES ONLY



ResCap Private Label Securities
Rep & Warrant Settlement Discussion
Supporting Information
May 9th, 2012

Confidential







RESCAP

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00093182

**Privileged and Confidential**
**For Settlement Purposes Only**

### 2004-2007 PLS R&W Analysis

|  |  |  | A | B | C | D |
|---|---|---|---|---|---|---|
|  |  |  |  | ResCap Issued Deals | | |
|  |  |  |  | ResCap Issuance | KP Group | % of Total Issue |
| 1 | | Original Balance | | 226,029.3 | 171,250.8 | 76% |
| 2 | | Current Balance | | 63,284.8 | 49,238.1 | 78% |
|  | Deal Collat (a) | % Delinquent | | 28% | 29% | |
| 3 | | Cume Loss To Date | | 29,891.9 | 22,694.1 | 76% |
| 4 | | Projected Loss | | 14,225.7 | 10,937.4 | 77% |
| 5 | | Est Lifetime Loss | | 44,117.5 | 33,631.5 | 76% |
| 6 | | Est Lifetime Loss % of Orig Bal | | 19.5% | 19.6% | |
| 13 | | **ResCap Settlement - 19.72% Defect** | | **8,700.0** | **6,632.1** | **76%** |
| 14 | Settle Amt | Lehman Claim Amount - 35% Defect | | 15,441.1 | 11,771.0 | 76% |
| 15 | | BofA Baseline - 36% Defect | | 15,882.3 | 12,107.4 | 76% |

*(a) Collateral and Bond information sourced from Intex files*

Key Notes:
1) KP's Investor group covers 82% of RFC issued non-wrapped deals and 88% of GMACM issued non-wrapped deals
2) KP's Investor group covers 63% of RFC issued wrapped deals and 28% of GMACM issued wrapped deals
3) ████████████████████████████████████████
4) ResCap projected losses based on third party vendor model (ADCO LDM), and the model was calibrated to fit ResCap collateral performance by product/vintage
5) ResCap projected severity based on Moody's baseline HPI forecast and ADCO model loss estimations
6) There could be amounts conceded if the true defect rate is below the 19.72% based on actual loan file reviews and application of litigation defenses.
7) Lehman bankruptcy estimated claim amount for plan voting based on 35% defect rate. The defect rate could be higher as claims are resolved.
8) BofA proposed settlement defect rate set at 36% prior to litigation adjustments
9) KP has factored into the analysis the estimated recovery amount through bankruptcy, as well as third party releases.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00093183

*FOR SETTLEMENT DISCUSSION PURPOSES ONLY*
*SUBJECT TO MATERIAL CHANGE*



Center|view Partners

*ATTORNEY – CLIENT PRIVILEGE*
*PREPARED IN ANTICIPATION OF LITIGATION*

1



A. 50

MINUTES of a Special Meeting of the Board of Residential Capital, LLC ("ResCap" or the "Company"), held by teleconference on due notice on May 9, 2012, at 3:00 p.m. (ET).

PRESENT:      Steven M. Abreu
              John E. Mack
              Thomas F. Marano
              Edward F. Smith III
              Pamela E. West
              James M. Whitlinger

constituting a quorum of the Board. Mr. Jonathan Ilany was unable to attend the meeting.

Invited guests in attendance were Jeffrey M. Cancelliere, Tammy Hamzehpour, and Cathy L. Quenneville.

Invited advisers in attendance were Nilene R. Evans, Gary S. Lee, Larren M. Nashelsky, and James R. Tanenbaum from Morrison & Foerster LLP; David Lerner and Joseph T. Moldovan from Morrison Cohen LLP; and Mark A. Renzi from FTI Consulting, Inc. (collectively, the "advisers").

The Chairman, Mr. Marano, presided and the Secretary, Ms. Quenneville, recorded.

_Proposed Legal Settlement_

The Committee engaged in full discussion with the advisers in attendance at the meeting regarding the proposed settlement of certain representation and warranty ("R&W") and private label securitization ("PLS") litigation claims. Discussion was given to the claims analysis that was detailed in the written presentation materials distributed in advance of the meeting. During the discussion that took place and at the request of a member of the Board, Mr. Cancelliere described the breakdown of collateral included in the proposed PLS settlement vis-à-vis the proposed settlement amount. He also discussed settlement defect rates and the percentage of R&W and PLS litigation claims that are attributed to GMAC Mortgage, LLC and to Residential Funding Company, LLC.

Mr. Renzi reviewed and discussed the key assumptions in the preliminary economic recovery analysis of preliminary agreements reached with certain constituencies. During the discussion, Mr. Marano requested that a report with separate line items identifying the different settlement amounts be prepared to provide the Board with additional details on the settlements.

Mr. Cancelliere, Mr. Lee, and Mr. Marano responded to various related questions asked by the members of the Board throughout the discussion of the proposed legal settlement.



1

CONFIDENTIAL - PROFESSIONALS' EYES ONLY
Confidential

Confidential

After the conclusion of the discussion and consideration of the matters discussed with management and the advisers in attendance at the meeting, upon motion made, seconded and carried, it was unanimously

RESOLVED, that this Board approves Residential Capital, LLC entering into a private label securities and representation and warranty legal settlement agreement substantially as reviewed at its meeting on May 9, 2012, subject to such changes as Residential Capital, LLC management, upon the advice of legal counsel, shall make with the understanding that if such changes are material they will be reviewed with the Board.

*Project Bounce Update*

Mr. Nashelsky and Mr. Marano briefed the Board on the status of various matters related to a potential ResCap Chapter 11 filing including, but not limited to, the Ally Financial Inc. ("AFI") settlement agreement, the term sheet for a Plan of Reorganization, the debtor-in-possession facility, and negations for possible sales of certain assets to Fortress Investment Group LLC and to AFI.

Mr. Nashelsky commented on next steps and the Chapter 11 filing process.

ADJOURNMENT

There being no further business to come before the Board, the meeting was adjourned at 4:00 p.m. The charts presented at this meeting are on file with the Secretary.

DATED May 9, 2012.

*Secretary*

2

A. 51

Outlook E-mail

**From:**    Devine, Timothy
**Sent:**    5/9/2012 9:04:24 AM
**To:**    Hamzehpour, Tammy; Ruckdaschel, John; Cieri, Richard M.; Lee, Gary S.; Schrock, Ray C.; Levitt, Jamie A.;
Cancelliere, Jeff - PA; Thompson, William - Legal Dept - PA; Delehey, Lauren - PA; Renzi, Mark
**Subject:**    Talcott Franklin

Good news.

Talcott Franklin called me.

He is very favorably inclined to support and participate in what we're doing.

He says he can move quickly, but he has not yet obtained client support – given his very diffuse client pool.  He is confident he can deliver.

He is, on his own, speaking with trustee DB on potential mechanics of a potential deal.  I told him I assume he will do what he needs to do subject to all the nda and other considerations to be in position to deliver instructions to trustees, etc. as any settlement will require.

Jeff C: will you please update the team as to how much more participation in RFC and GMACM that Talcott Franklin's participation would deliver?

I let him know that there are deals moving quickly and that he should be prepared to show full support.  He stated that he sees the value in the plan we have developed and that the alternatives are all much worse.

I told him that the BK lawyers will be in best position from our side to tell him how to manifest his support.

I think he would like to sign something pre-petition.  I certainly am not the right person to negotiate that with him.  As you recall, we sent him a draft of the settlement agreement and PSA early on.

I would appreciate feedback as to next steps.

Thanks.

Tim


Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477



EXHIBIT
9019-87
11/13/12

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

A. 52

Outlook E-mail

**From:**      Cancelliere, Jeff - PA
**Sent:**      5/9/2012 7:16:02 AM
**To:**        Devine, Timothy
**Subject:**   Re: Defect rate

---

Using our 44.1B losses the defect rate would be about 19.7. Using her loss method which puts me at 48.7B the defect rate would be around 17.9

----- Original Message -----
From: Devine, Timothy
Sent: Wednesday, May 09, 2012 05:50 AM
To: Cancelliere, Jeff - PA
Subject: Defect rate

Jeff: what is the defect rate at 8.7 billion, according to her severities etc and according to ours?  Thanks. Tim.



EXHIBIT
9019-117
11/14/12

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00060360

A. 53

Outlook E-mail

**From:**      Devine, Timothy
**Sent:**      5/9/2012 9:03:30 AM
**To:**        Lee, Gary S.
**Cc:**        Cieri, Richard M.; Schrock, Ray C.
**Subject:**   KP

Gary: as I told you on the phone, Ally will support the $8.7 billion allowed claim.  There is no new Ally money.  Hard stop at 750 + 200 + 100.  Thanks. Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477



CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00049196

A. 54

Outlook E-mail

**From:**    Kathy D. Patrick
**Sent:**    5/9/2012 11:20:21 AM
**To:**    Lee, Gary S.
**Subject:**    Update

I've talked to Ally this morning.  They confirmed they will do 8.7 bn for the stipulated claim.  Waiting on the waterfall from you.

Where does it stand?


Kathy D. Patrick
Gibbs & Bruns, L.L.P.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                    RC-9019_00049218

A. 55

Outlook E-mail

| | |
|---|---|
| **From:** | Kathy D. Patrick |
| **Sent:** | 5/9/2012 1:02:36 PM |
| **To:** | Lee, Gary S.; Timothy.Devine@ally.com |
| **Cc:** | Kathy D. Patrick; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com |
| **Subject:** | RMBS Stipulated Claim |

Gary and Tim:

I have heard separately from each of you that: a) ResCap is going to its board today for approval of execution and filing of a settlement that includes a stipulated claim of 8.7 billion for the RMBS Trusts and the diligent pursuit of such settlement by the debtors; and, b) that Ally does not object to ResCap's approval and decision to proceed in that fashion and will execute a plan support agreement contemplating that settlement.

We understand that, under applicable governance structures, Ally has the right to approve a commitment of this type by ResCap.

Please confirm, in response to this email, that Ally is aware of ResCap's plan and will today provide either: a) the necessary approval or  b) a confirmation that it has waived its right to approve and does not and will not object to ResCap's action.


Kathy D. Patrick
Gibbs & Bruns, L.L.P.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

A. 56

| | |
|---|---|
| **From:** | Kathy D. Patrick <kpatrick@gibbsbruns.com> |
| **Sent:** | Thursday, May 10, 2012 3:41 AM |
| **To:** | Devine, Timothy |
| **Subject:** | Re: Settlement |

Good.  Gary just called me, too.  I explained to him that this will never get done if he tries that:  we only valued the putback claims, we didn't even look at or consider a valuation of securities claims, and if he tried to take the position now that securities claims are covered then:

1.  The Trustees will say it is now too little, because it doesn't adequately compensate the Putback claims;

2.  The securities claimants will say it is too little, because it didn't even value--much less compensate, their claims;

3.  MBIA and Freddie will have to fight like demons, when the alternative would be that this settlement goes through and they get their securities claims estimated and resolved later.

We're all on a ragged edge of fatigue, but we can't do something that will never get approved:  the deal is simple and will work as it is--it will never work if he tries to do that, and we can't support it.

Kathy Patrick
Gibbs & Bruns LLP
713.751.5253

On May 9, 2012, at 10:27 PM, "Devine, Timothy" <Timothy.Devine@ally.com> wrote:

> I'll try to straighten everything out.  I noticed some strange questions coming from Freddie's counsel this evening. Let me work on it.
>
>
> Tim
>
> Timothy A. Devine
> Chief Counsel - Litigation
> Ally Financial Inc. Legal Staff
> 200 Renaissance Center
> M/C: 482-B09-B11
> Detroit, MI 48265
> (313) 656-3477
>
>
> -----Original Message-----
> From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
> Sent: Wednesday, May 09, 2012 10:52 PM
> To: Devine, Timothy
> Subject: Settlement
>
> Tim -
>
> I need your help.
>
> Gary is claiming he was "told" that our clients would release securities claims in the plan.
> We never told him that and we have never offered or agreed to release securities claims.  We've been very clear about that from the very beginning.  It's the basis on which I got my clients to approve it, it's what I've told the Trustees this morning, it's also what I assured Freddie Mac, as you and I discussed:  a release of securities claims is not part of this putback

1

Confidential



ALLY_0143982

settlement.

Gary's misunderstanding—or his effort to extract something that we never offered and don't have to give--is impeding getting the deal documented.

Would you please intercede with him and tell him to move on?  Insisting on this will destroy any chance of the deal happening.  I understand his determination to try again, but we need to move on.

I'm sorry to bother you, but we need you to intercede here.

Thanks,

Kathy


Kathy D. Patrick
Gibbs & Bruns, L.L.P.

2

Confidential

ALLY_0143983

A. 57

## Outlook E-mail

**From:**      Levitt, Jamie A.
**Sent:**      5/10/2012 7:02:56 AM
**To:**      'Timothy.Devine@ally.com'; Lee, Gary S.; 'rcieri@kirkland.com'; Nashelsky, Larren M.; 'nornstein@kirkland.com'
**Cc:**      'William.b.Solomon@ally.com'
**Subject:**      Re: RMBS Stipulated Claim

I apologize, but with the lateness of the hour I believe I sent a confusing email, so I will clarify:

1. First, we have NOT sent anything back yet to Ropes or KP re these revisions. They are for your review and further revision.

2. Although we know we will have to eventually trade this point, based on the deal Gary discussed with KP, the agreement currently makes the $8.7B a cap, such that all claims including securities claims, come out of it.

3. Once we reach agreement on the rest of the terms, we will eventually give on the point that KP's clients are not releasing securities claims, but for now we are going to put the full release back into the draft settlement agreement. In other words we will, for this turn state that all claims, including securities claims are released.

Sorry if I created any confusion.

Jamie

---

**From:** Levitt, Jamie A.
**To:** 'Timothy.Devine@ally.com' ; Lee, Gary S.; 'rcieri@kirkland.com' ; Nashelsky, Larren M.; 'nornstein@kirkland.com'
**Cc:** 'William.b.Solomon@ally.com'
**Sent:** Thu May 10 02:01:17 2012
**Subject:** Re: RMBS Stipulated Claim

Tim,

Consistent with what you state below, we have accepted their revision to the release in the settlement agreement to exclude securities law claims. We are marking up the settlement agr and PSA based on our discussions tonight with Ropes and will circulate internally before sending back to them.

Assume we should agree to the same change for Talcott when we talk to them tomorrow?

Jamie

---

**From:** Devine, Timothy
**To:** Lee, Gary S.; rcieri@kirkland.com ; Nashelsky, Larren M.; nornstein@kirkland.com ; Levitt, Jamie A.
**Cc:** Solomon, William Legal
**Sent:** Thu May 10 01:55:08 2012
**Subject:** RE: RMBS Stipulated Claim

CONFIDENTIAL

Folks:

The KP settlement is for _everything_ except securities claims.  And we can define securities claims narrowly.

Is that what the language in the current/final draft settlement agreement reads?  Remember, we talked about this in some detail.

Please let me know what the main remaining arguments are and I will weigh in.  I want to read the drafts before Ally agrees to them.

The circle is squared at the Plan.  KP can only get us the "everything-but-securities" settlement release because that is the full extent of her representation.  She has been clear about that.  Same as in her BoA/BoNYM work.  Etc.

But notice: though her clients don't release securities claims, they sign Plan Support Agreements, and the Plan includes very simple comprehensive releases, which of course include third party release of all claims, which of course includes securities

EXHIBIT
9019- 151
11/19/12
PENGAD 800-631-6989

claims.

Presto.

So while she can't represent parties in giving up their securities claims, clients face a choice: either sign up with the settlement to make sure your trust receives monies under the waterfall, in which case you need to sign the Plan Support Agreement and support the Plan.  And the Plan wipes out all their claims of any sort.

This is the beauty of it.

It is also the reason that FHFA/Freddie probably can't sign the settlement agreement.  They believe their securities law claims are worth something, even in the filing; and they are also hedging against the contingency that the Plan fails, in which case they would like to be able to get on with a lawsuit against Ally Financial Inc. on the $1 billion loss on Freddie's securities.

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477

---

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Wednesday, May 09, 2012 11:35 PM
**To:** Devine, Timothy; rcieri@kirkland.com; Nashelsky, Larren M.; nornstein@kirkland.com; Levitt, Jamie A.
**Subject:** Re: RMBS Stipulated Claim

I'm around.

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Devine, Timothy
**To:** Lee, Gary S.; rcieri@kirkland.com ; Nashelsky, Larren M.; nornstein@kirkland.com
**Sent:** Wed May 09 23:26:53 2012
**Subject:** RE: RMBS Stipulated Claim
Can we pull a call together this evening?

Would folks be available at 11:45?

Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477

---

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Wednesday, May 09, 2012 11:17 PM
**To:** rcieri@kirkland.com; Nashelsky, Larren M.; Devine, Timothy; nornstein@kirkland.com

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00049487

**Subject:** Fw: RMBS Stipulated Claim

Fyi


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Lee, Gary S.
**To:** 'Kathy D. Patrick'
**Sent:** Wed May 09 23:08:24 2012
**Subject:** RMBS Stipulated Claim

Kathy, the waterfall is attached. It is not yet ready for distribution beyond the two of us. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮That is clearly and materially better than where we were.

There seems to be disagreement (based on our call with Ropes) on one fundamental point. So we are clear, I am writing it down so you and I can discuss.

My understanding of our deal is that the $8.7bn number settles all claims arising from the sale and servicing of the RMBS. That's what I was agreeing to when I said "8.7 to be all deals wrapped and unwrapped as per all our waterfalls" in response to your email to me. The waterfall clearly delineates and separates pls and rw claims from all other unsecured claims (that's the purpose of the separate categories). The pls and rw lines cover all claims of any kind by that creditor class - we don't distinguish between servicing claims, contract breach claims, fraud claims or securities. These claims are - simply - claims arising from wrapped and unwrapped securitisations and nothing more. That's why I said everyone gets one claim full stop.

So if your clients do not or can not release their securities claims through you, and we cannot defeat them entirely in the bk court, then they get a share in the $8.7bn. But either way, the $8.7bn is the number for wrapped and unwrapped deals.

So when Ross tells me an unknown amount of securities claims comes on top of this I get spooked - because that renders a deal at $8.7bn illusory. And if you ask why I care - which is what Ross screamed at me this evening - beyond the fact that this is the deal I sold to our board and thought we had, it (a) gives everyone an incentive to manage attacks by other claimants to get into the class or attempt to get a bigger share and (b) is consistent with the need to maintain recoveries for other constituents who are key to the success of the plan.

Aside from my lack of interest in aggressive behavior from counsel, I like you don't expect to be re-traded. I remind you I said I would get you $8.7bn and that's what I did. Please call me after you have reviewed. There are some other smaller points that fall into this category and we can discuss those as well.


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

**From:** Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
**Sent:** Wednesday, May 09, 2012 8:52 PM
**To:** Ross.Martin@ropesgray.com; Lee, Gary S.; Wishnew, Jordan A.; Kathy D. Patrick
**Cc:** Keith.Wofford@ropesgray.com; Levitt, Jamie A.; David Sheeren
**Subject:** Re: RMBS Stipulated Claim

We do. David, what's the total holdings number (not just our holdings in deals where we have 25 per cent)?

Kathy D. Patrick
Gibbs & Bruns, L.L.P.

---

**From:** Martin, D. Ross [mailto:Ross.Martin@ropesgray.com]
**Sent:** Wednesday, May 09, 2012 04:57 PM
**To:** 'Lee, Gary S.' <GLee@mofo.com>; Wishnew, Jordan A. <JWishnew@mofo.com>; Kathy D. Patrick
**Cc:** Wofford, Keith H. <Keith.Wofford@ropesgray.com>; Levitt, Jamie A. <JLevitt@mofo.com>
**Subject:** RE: RMBS Stipulated Claim

I think Kathy is in transit at the moment, but I do believe we have a number like that.

**D. Ross Martin**
**ROPES & GRAY LLP**
T(BOS) +1 617 951 7266 | T(NY) +1 212 596 9177 | M +1 617 872 1574 | F +1 617 235 0454
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
ross.martin@ropesgray.com
www.ropesgray.com

---

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Wednesday, May 09, 2012 5:56 PM
**To:** Wishnew, Jordan A.; kpatrick@gibbsbruns.com; Martin, D. Ross
**Cc:** Wofford, Keith H.; Levitt, Jamie A.; Lee, Gary S.
**Subject:** Re: RMBS Stipulated Claim

If possible we would like to say investors holding x dollars in aggregate.

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

----- Original Message -----
From: Wishnew, Jordan A.
To: 'kpatrick@gibbsbruns.com' <kpatrick@gibbsbruns.com>: 'ross.martin@ropesgray.com' <ross.martin@ropesgray.com>
Cc: 'Keith.Wofford@ropesgray.com' <Keith.Wofford@ropesgray.com>: Levitt, Jamie A.; Lee, Gary S.
Sent: Wed May 09 17:47:33 2012
Subject: RE: RMBS Stipulated Claim

Kathy:

One question - in our documents, we want to note that the Debtors have come to terms with your clients as memorialized in a plan support agreement. We would propose to refer to your clients as "investors in residential mortgage-backed securities", but are open to any other suggestions that you may have or prefer.

The sentence would read, in part, "The debtors intend to implement a comprehensive reorganization by consummating the Asset Sales through a plan of reorganization consistent with the terms of a plan support agreement with ...[ ]."

We look forward to hearing from you.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00049489

Thank you.

Regards,

Jordan

Jordan A. Wishnew
jwishnew@mofo.com
212-336-4328

-----Original Message-----
From: Lee, Gary S.
Sent: Wednesday, May 09, 2012 4:28 PM
To: 'kpatrick@gibbsbruns.com'; 'ross.martin@ropesgray.com'
Cc: 'Keith.Wofford@ropesgray.com'; Levitt, Jamie A.; Wishnew, Jordan A.; Lee, Gary S.
Subject: Re: RMBS Stipulated Claim

Jordan, let Kathy and Ross know when we get a time. Kathy, we will want to talk about messaging and preparation for your remarks at the hearing. Pick a time saturday afternoon.
-----Original Message------
From: Kathy D. Patrick
To: Gary Lee
To: Ross Martin
To: Kathy D. Patrick
Cc: Keith.Wofford@ropesgray.com
Cc: Jamie A. Levitt
Subject: Re: RMBS Stipulated Claim
Sent: May 9, 2012 4:13 PM

Before you do, who on your team will let us know time to show up for first day? Thanks. Kathy D. Patrick Gibbs & Bruns, L.L.P.   From: Lee, Gary S. [mailto:GLee@mofo.com] Sent: Wednesday, May 09, 2012 03:10 PM To: ross.martin@ropesgray.com <ross.martin@ropesgray.com>; Kathy D. Patrick Cc: Keith.Wofford@ropesgray.com <Keith.Wofford@ropesgray.com>; Levitt, Jamie A. <JLevitt@mofo.com> Subject: Re: RMBS Stipulated Claim   Jamie and Tony Princi. I am slowly vanishing. Gary S. Lee Morrison & Foerster LLP 1290 Avenue of the Americas New York, NY 10104-0050 T. 212.468.8042 F. 212.468.7900 glee@mofo.com
From: Martin, D. Ross To: Lee, Gary S.; kpatrick@gibbsbruns.com Cc: Wofford, Keith H. Sent: Wed May 09 16:05:44 2012 Subject: RE: RMBS Stipulated Claim Obviously you've been tied up; just let us know when (and with whom) you want to discuss the Plan Support Agreement.

D. Ross Martin ROPES & GRAY LLP T(BOS) +1 617 951 7266 | T(NY) +1 212 596 9177 | M +1 617 872 1574 | F +1 617 235 0454 Prudential Tower, 800 Boylston Street Boston, MA 02199-3600 ross.martin@ropesgray.com www.ropesgray.com Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

--------------------------------------------------------------------

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                        RC-9019_00049490

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---

A. 58

Outlook E-mail

| | |
|---|---|
| **From:** | Ornstein, Noah |
| **Sent:** | 5/10/2012 11:32:02 PM |
| **To:** | Lee, Gary S.; Clark, Daniel E.; Levitt, Jamie A.; Newton, James A. |
| **Subject:** | RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential |

Any claim that can come back to Ally/ResCap needs to be released. Re Ally, while we are looking for third-party releases in the plan, rather not rely on the plan but cut it off in the settlement.

Noah J. Ornstein
Kirkland & Ellis LLP
300 North LaSalle | Chicago, IL 60654
p. (312) 862-2122 | f. (312) 862-2200

---

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Thursday, May 10, 2012 10:15 PM
**To:** Clark, Daniel E.; Levitt, Jamie A.; Newton, James A.; Ornstein, Noah
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

for now keep in the securities in 5.01 as part of the class and clarify in 5.02 that securities claims are included (ie released). the 2 paras conflict on that point.

Also, if you look at talcotts agreement it seems to me that there are a host of claims they want to bring against third parties that may have indemnity rights against rescap or ally. those claims have to be released here too Jamie (add whatever talcott refuses to release). Noah, how do you think we should be addressing these indemnity claims which are going to come up.


Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

---

**From:** Clark, Daniel E.
**Sent:** Thursday, May 10, 2012 11:09 PM
**To:** Levitt, Jamie A.; Lee, Gary S.; Newton, James A.
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

I think that this may avoid some of the math, and get us to the same place:

  **Section 5.01  The Allowed Claim. ResCap hereby makes an irrevocable offer to settle, expiring at 5:00 p.m. prevailing New York time on the date that is forty five (45) days after the Petition Date, with each of the Trusts that agrees to the terms of this Settlement Agreement. In consideration for such agreement, ResCap will provide a general unsecured claim of not more than $8,700,000,000 (the "Maximum Allowed Claim") which shall cover (i) any Trusts accepting the offer to settle contained in this Section 5.01, subject to the provisions of this Settlement Agreement and (ii) any Credit Enhancer asserting claims against ResCap or Ally arising out of the Governing Agreements [, and (iii) any claims of the Trusts or their respective Investors against ResCap or Ally for violations of the securities or anti-fraud laws of the United States or of any state] (collectively, the "Total Claimant Pool"). The portion of the Maximum Allowed Claim which ResCap will allow shall be limited by the percentage of claims available to the Total Claim Pool that are made in the Bankruptcy Court. Such percentage multiplied by the Maximum Allowed Claim shall be the "Allowed Claim." Accordingly, each claim, including those of any settling Trust, shall be valued *pro rata* based on its relative share of total outstanding value, and**

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

each claim shall be *pari passu* with the claims of all other general unsecured creditors of ResCap or the relevant ResCap subsidiary.

**Section 5.02      Each accepting Trust's share of the Allowed Claim shall be in full and complete satisfaction of any and all claims the trustee may have under the Governing Agreements against ResCap, including but not limited to demands for ResCap to (A) repurchase or substitute for allegedly defective Mortgage Loans, (B) make any payment as compensation or restitution for allegedly defective Mortgage Loans, (C) make any payment or compensation for allegedly defective documentation with respect to any Mortgage Loan, (D) make any payment as compensation or restitution for any defective servicing practices, and (E) take any other action regarding or otherwise be responsible for the allegedly defective Mortgage Loans; *provided, however*, that the offer to settle set forth herein shall not and does not include any settlement, release, waiver, or discharge of any claims of the Trusts or their respective Investors against ResCap for violations of the securities or anti-fraud laws of the United States or of any state.  The Allowed Claim shall not be subject to offset, counterclaim, subordination and the order approving this settlement shall constitute full allowance in each of the relevant ResCap entity's respective estates.**

---

**From:** Levitt, Jamie A.
**Sent:** Thursday, May 10, 2012 10:44 PM
**To:** 'David A. Beck'; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com; Lee, Gary S.
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

Thanks Dave.  Here's the landscape:

Total OPB:  $226B
KP Group:  $171B

Total Estimated Loss:  $44B
KP Group Estimated Loss:  $33B

Total Allowed Claim:  $8.7B
KP Group:  $6.6B

The Allowed Claim covers all R/W -- monoline and trustee.  So my understanding is that outside of KP's $6.6B (based on her group's OPB and Loss) is both monoline claims and trustee claims, for trusts she doesn't control or bring in.

Gary, please weigh in if I have this wrong.  The drafting of your ratchet idea is proving to be a difficult task.

---

**From:** David A. Beck [mailto:beck@CarpenterLipps.com]
**Sent:** May 10, 2012 10:35 PM
**To:** Levitt, Jamie A.; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

As I understood from Noah and Dan, we're trying to make two adjustments:

1.    Take off the $8.7 billion a number based on where the monolines reject the deal.  This is A and looks just at the monoline wrapped world.

2.    You then have to adjust the resulting number based on the percentage of the total universe which rejects the deal based on Kathy's schedule.  If we don't adjust this amount based on how the $8.7 is racheted down, you end up taking too much off.

It may make sense to talk this through on the phone so we're all on the same page.

-David

**From:** Levitt, Jamie A. [JLevitt@mofo.com]

Confidential

**Sent:** Thursday, May 10, 2012 10:19 PM
**To:** David A. Beck; Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

I don't understand why we are tying this to wrapped deals only?

---

**From:** David A. Beck [mailto:beck@CarpenterLipps.com]
**Sent:** May 10, 2012 10:17 PM
**To:** Clark, Daniel E.; Jennifer A.L. Battle; nornstein@kirkland.com
**Cc:** Newton, James A.; Levitt, Jamie A.; Jeffrey A. Lipps
**Subject:** RE: Kathy Patrick PSA and Settlement Agreement - Privileged and Confidential

In following up on the conversation I just had with Dan Clark and Noah Ornstein on the phone, and with no pride of authorship, I think Section 5.02 should be revised to read as listed below. I've got brackets here for two spots were we need to plug in actual numbers.  I also think we should walk through the formula with some hypothetical numbers and see if this is working in the way you want the ratchet to work.  Please feel free to call me if you want to discuss at (614) 668-1064.  Attorney fee adjuster will follow in a separate email.

Section 5.02    Reductions to Allowed Claim.  The amount of the Allowed Claim shall be reduced by (A) an amount equal to the product of [total $ of outstanding debt wrapped by the monolines] times the percentage of the total debt outstanding for the trusts wrapped by the monolines which reject the deal times [Percentage Allowed Claim is of total debt currently outstanding] plus (B) an amount equal to (i) the sum of the Allocated Allowed Claims attributable to each Trust identified on Exhibit C that fail to accept the offer to settle described in Section 5.01 within the applicable time period times times (ii) 1 minus the percentage of total debt outstanding for trusts wrapped by monolines which reject the deal.

This is assuming that Kathy's exhibit gives an actual allocation and not just refers to having some valuation mechanism.

*************************************************************

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

RC-9019_00050248

A. 59

## Outlook E-mail

**From:**      Levitt, Jamie A.
**Sent:**      5/11/2012 1:16:06 AM
**To:**        'Devine, Timothy'
**Cc:**        Lee, Gary S.; Ornstein, Noah
**Subject:**   RE: turning drafts

**PRIVILEGED AND CONFIDENTIAL -- SUBJECT TO ATTORNEY-CLIENT PRIVILEGE - FOR SETTLEMENT PURPOSES ONLY**

Tim,

I think Noah has passed along to you the mark up we sent to Ropes of the KP settlement agreement. We are heavily negotiating, but also making progress, and have added the ratchet on the Allowed Claim as well as the Fees sharing provisions, which I'm sure we'll hear much about from them tomorrow.

We also spent a considerable amount of time today talking first with Talcott Franklin and then on two occasions with his gaggle of lawyers. It is pretty clear they are coming to understand the economics and advantages of the proposal and want in. A light bulb also went on for them as to why the trustees might comply here -- because the event of default triggers a prudent investor standard and so there is exposure to the trust in ignoring an instruction. Talcott's group says they are actively collecting certificates of ownership from their clients on the standard trustee form and are updating their schedule of holdings. Their comments on the settlement agreement were pretty minimal, and those we didn't like they backed away from pretty quickly. But their big issue now is that they want to get the same terms and deal Kathy is getting and don't want to be treated less favorably. We told them that Kathy got out of the gate first and we are farther along on negotiations with her but can share fee and other provisions with them once they are settled. Although Talcott didn't drive as hard a bargain, in the end we probably need to give him what Kathy ends up getting in the negotiations.

With all this in mind, we would like to pick your brain tomorrow on how you best see fit to maneuver the Kathy/Talcott discussions and intrigue. Talcott seems to want to reach out to Kathy and join forces. We want to be sure that you have discussed this with Kathy -- and recall that you said she was in favor of this too (that the dilution is minimal compared to the value of having another 9.5B on board) -- but need to confirm that with you. There may be more than one way to combine these forces and handle the negotiations, so we should discuss. We are set to talk to KP's lawyers at 12:30pm tomorrow -- and will talk to Talcott's lawyers once we get and review their comments on the PSA.

Thanks.

Jamie

---

**From:** Devine, Timothy [mailto:Timothy.Devine@ally.com]
**Sent:** May 10, 2012 8:33 PM
**To:** Levitt, Jamie A.; Ornstein, Noah
**Subject:** turning drafts

Jamie and Noah:

Will you please update me as to whether our side has turned the draft settlement agreement and PSA back over to Ropes/KP?

If so, pls fwd to me.

Also, have we sent them a Plan Term Sheet?

If so, pls fwd to me.

Thanks.

Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477



CONFIDENTIAL – PROFESSIONALS' EYES ONLY

A. 60

| From: | Ornstein, Noah <nornstein@kirkland.com> |
| --- | --- |
| Sent: | Friday, May 11, 2012 8:15 AM |
| To: | Martin, D. Ross <Ross.Martin@ropesgray.com> |
| Subject: | Re: One concept for PSA not captured yet (I don't believe) - subject to FRE 408 |

We'll talk. It is a baseline requirement

----- Original Message -----
From: Martin, D. Ross [mailto:Ross.Martin@ropesgray.com]
Sent: Friday, May 11, 2012 07:09 AM
To: Ornstein, Noah
Subject: Re: One concept for PSA not captured yet (I don't believe) - subject to FRE 408

I did. I don't know whether we agree with it.

-- Ross

On May 11, 2012, at 8:08 AM, "Ornstein, Noah" <nornstein@kirkland.com<mailto:nornstein@kirkland.com>> wrote:

Ross, pls confirm you received this.

From: Ornstein, Noah
Sent: Thursday, May 10, 2012 06:03 PM
To: Martin, D. Ross <Ross.Martin@ropesgray.com<mailto:Ross.Martin@ropesgray.com>>
Cc: Levitt, Jamie A. <JLevitt@mofo.com<mailto:JLevitt@mofo.com>>
Subject: One concept for PSA not captured yet (I don't believe)

If, in the case of a section 363, the Debtors seek approval of releases of Ally via a 9019, Consenting Claimants have to support (presuming their settlement is in place). Presuming you have no issue with that concept, kindly have your team work it into the draft.

Noah J. Ornstein
Kirkland & Ellis LLP
300 North LaSalle | Chicago, IL 60654
p. (312) 862-2122 | f. (312) 862-2200

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com<mailto:postmaster@kirkland.com>, and destroy this communication and all copies thereof, including all attachments.

*********************************************************

D. Ross Martin

ROPES & GRAY LLP

T(BOS) +1 617 951 7266 | T(NY) +1 212 596 9177 | M +1 617 872 1574 | F +1 617 235 0454

Prudential Tower, 800 Boylston Street

Boston, MA 02199-3600

ross.martin@ropesgray.com<mailto:ross.martin@ropesgray.com>

www.ropesgray.com<http://www.ropesgray.com>

Circular 230 Disclosure (R&G): To ensure compliance with Treasury Department regulations, we inform you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. tax-related penalties or promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message (including attachments) is privileged and confidential. If you are not the intended recipient, please delete it without further distribution and reply to the sender that you have received the message in error.

**********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**********************************************************

ALLY_0182658

A. 61

## Outlook E-mail

**From:**       Devine, Timothy
**Sent:**       5/12/2012 4:29:50 PM
**To:**         Lee, Gary S.; Levitt, Jamie A.; Ornstein, Noah; Ruckdaschel, John
**Cc:**         Cieri, Richard M.; Schrock, Ray C.
**Subject:**       RE: Has Talcott Franklin signed on without reservation to support the Plan, including broad third party release of all claims against Ally etc including security claims?

Got it.

Had call with KP.

We told her PSA support – whole hog – is drop dead.

Her aversion to lock up is, she said, drop dead for her clients.

What are our best fall-backs on the lockup?

Thanks.

Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477

**From:** Lee, Gary S. [mailto:GLee@mofo.com]
**Sent:** Saturday, May 12, 2012 4:26 PM
**To:** Devine, Timothy; Levitt, Jamie A.; Ornstein, Noah; Ruckdaschel, John
**Subject:** RE: Has Talcott Franklin signed on without reservation to support the Plan, including broad third party release of all claims against Ally etc including security claims?

Its complicated - they are trying to preserve lots of other claims, their clients dont seem to have brought equity claims. I dont even know whether their clients are 40 act advisors (anyone?). we sent Talcott the agreement the way we wanted it and told him he couldn't really negotiate it - but if KP doesnt sign I dont know if he will.

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
T. 212.468.8042
F. 212.468.7900
glee@mofo.com

**From:** Devine, Timothy [mailto:Timothy.Devine@ally.com]
**Sent:** Saturday, May 12, 2012 4:22 PM
**To:** Levitt, Jamie A.; Lee, Gary S.; Ornstein, Noah; Ruckdaschel, John
**Subject:** Has Talcott Franklin signed on without reservation to support the Plan, including broad third party release of all claims against Ally etc including security claims?

CONFIDENTIAL – PROFESSIONALS' EYES ONLY


EXHIBIT
9019-154
11/19/12

RC-9019_00050455

Thanks.

Tim


Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI  48265
(313) 656-3477


-----------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/


=================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-----------------------------------------------------------------

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

A. 62

**From:**    Solomon, William Legal
**Sent:**    Wednesday, October 26, 2011 7:48 PM
**To:**    Carpenter, Michael; Yastine, Barbara; Marano, Tom; Brown, Jeff; Pinkston, Corey; Mackey, Jim; Devine, Timothy; Hamzehpour, Tammy
**Cc:**    Hagens, David; Ruckdaschel, John
**Subject:**    PLS Claimant -- PRIVILEGED AND CONFIDENTIAL

Attached please find the response from attorney Kathy Patrick in reply to my reply to her original letter.  The issues are beginning to crystallize.  I do not intend answering.



EXHIBIT
9019-51
11/12/12

1

Confidential

ALLY_PEO_0042786



Kathy D. Patrick
kpatrick@gibbsbruns.com
713.751.5253

October 25, 2011

<u>Via Federal Express</u>

William B. Solomon, Jr., Esq.
    General Counsel
Ally Financial Inc.
200 Renaissance Center
Detroit, Michigan 48265

Dear Mr. Solomon:

    I am in receipt of your October 21st, 2011 letter. As you know, Ally Financial Inc. ("Ally") is the parent and 100% owner of GMAC Mortgage Group, Inc. ("GMACM"). Residential Capital, LLC ("ResCap"), in turn, is a wholly-owned subsidiary of GMACM. ResCap is the direct or indirect parent of the parties to the pooling and servicing agreements at issue, including GMAC Mortgage and Residential Funding, to which you referred in your letter.

    In response to your suggestion, I will forward my October 17th, 2011 letter to Ms. Hamzehpour, who appears to be the General Counsel of Ally's Mortgage Operations, as well as the General Counsel of ResCap.

    Our clients do not, however, accept your assertion that Ally Financial Inc. does not ultimately bear the liability associated with the repurchase and servicing claims described in my October 17th letter. Ally does.

                    Very truly yours,

                    Kathy Patrick

Confidential

A. 63

EXHIBIT

9019-158

11/19/12

**Outlook E-mail**                                    Confidential

**From:**    Kathy D. Patrick
**Sent:**    5/13/2012 7:03:15 PM
**To:**    Levitt, Jamie A.; Scott A. Humphries
**Cc:**    Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com; Princi, Anthony
**Subject:**    RE: Settlement documents -- confidential

Sure.  Use our dial in:  1 866 228 9900, passcode 763234.  Suggest you under-react to the red and focus on the substance of it, as this is what we discussed this morning:  a) the monolines have rights as subrogated certificateholders when they pay claims, those arise under the Trust agreements (which contain that language) so all you need to do for that is to say the Trusts; b) separately, the Credit Enhancers have separate indemnity claims, and those arise under separate agreements.  This is exactly what we discussed on the earlier call and it corrects an error in your draft which, otherwise, would have put the indemnity claims in the 8.7billion.  Simple enough to explain and not a reason for this to go sideways.  KP

---

From: Levitt, Jamie A. [mailto:JLevitt@mofo.com]
Sent: Sun 5/13/2012 5:59 PM
To: Scott A. Humphries; Kathy D. Patrick
Cc: Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com; Princi, Anthony
Subject: RE: Settlement documents -- confidential

Kathy -- we need a call at 7:30.  You took out all reference to the monolines in 5.01 (and the whereas), which as we discussed is in neither of our interest.

Call in 800-650-4949, code 4688203.

-----Original Message-----
From: Scott A. Humphries [mailto:SHumphries@gibbsbruns.com]
Sent: May 13, 2012 6:54 PM
To: Scott A. Humphries; Princi, Anthony; Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
Subject: RE: Settlement documents -- confidential

Belay that.  These correct one reference.  Can you make the nits re the holdings that you sent in a couple of emails, please?

-----Original Message-----
From: Scott A. Humphries
Sent: Sunday, May 13, 2012 5:52 PM
To: 'Princi, Anthony'; Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
Subject: RE: Settlement documents -- confidential

Here is the Settlement Agreement.  PSA to follow momentarily.

-----Original Message-----
From: Princi, Anthony [mailto:APrinci@mofo.com]
Sent: Sunday, May 13, 2012 5:49 PM
To: Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Scott A. Humphries; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
Subject: RE: Settlement documents -- confidential

Kathy, we received the exhibits and they appear to be in order. We will

therefore shortly be sending you final, execution versions of both the
SA and PSA for your and your clients' signatures. As we are severely
under the press of time we would ask that once you receive them you
please promptly forward us your executed signature pages. We will hold
the signature pages and not release them until we forward you our
client's and Ally's signature pages. Thanks for your cooperation.

-----Original Message-----
From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
Sent: Sunday, May 13, 2012 6:14 PM
To: Princi, Anthony; Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Scott A. Humphries; Clark, Daniel E.; Newton, James
A.; nornstein@kirkland.com; Timothy.Devine@ally.com;
Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
Subject: Re: Settlement documents -- confidential

Ropes is running the blackline on that now--I think we addressed it
appropriately, but am happy to discuss


Kathy D. Patrick
Gibbs & Bruns, L.L.P.

----- Original Message -----
From: Princi, Anthony [mailto:APrinci@mofo.com]
Sent: Sunday, May 13, 2012 05:00 PM
To: Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S. ; Scott A. Humphries; Clark, Daniel E.
; Newton, James A. ;
nornstein@kirkland.com ; Timothy.Devine@ally.com
; Ross.Martin@ropesgray.com
; Keith.Wofford@ropesgray.com

Subject: RE: Settlement documents -- confidential

Thanks Kathy. As it turned out, my rushing like a madman led me to screw
up the wording below so I've asked Noah at K&E to send corrected
language (it will remain minor changes so I don't expect that you'll
have a problem with it).

More importantly, we need to get your exhibits relating to allocation
methodology and list of investor holdings by cusips -- can you have
somebody forward that to us ASAP?

-----Original Message-----
From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
Sent: Sunday, May 13, 2012 5:57 PM
To: Princi, Anthony; Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Scott A. Humphries; Clark, Daniel E.; Newton, James
A.; nornstein@kirkland.com; Timothy.Devine@ally.com;
Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
Subject: Re: Settlement documents -- confidential

This is fine.

Kathy D. Patrick
Gibbs & Bruns, L.L.P.

----- Original Message -----
From: Princi, Anthony [mailto:APrinci@mofo.com]
Sent: Sunday, May 13, 2012 04:47 PM
To: Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S. ; Scott A. Humphries; Clark, Daniel E.
; Newton, James A. ;
nornstein@kirkland.com ; Timothy.Devine@ally.com
; Ross.Martin@ropesgray.com
; Wofford, Keith H.

Subject: RE: Settlement documents -- confidential


CONFIDENTIAL – PROFESSIONALS' EYES ONLY    Confidential

Confidential

Kathy, we have made a couple of minor word changes (see below in caps)
and with that ResCap and Ally are both good with this language. We will
revise the agreement accordingly and send you a final execution version
shortly.

-----Original Message-----
From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]
Sent: Sunday, May 13, 2012 5:04 PM
To: Princi, Anthony; Levitt, Jamie A.
Cc: Lee, Gary S.; Scott A. Humphries; Clark, Daniel E.; Newton, James
A.; nornstein@kirkland.com; Timothy.Devine@ally.com;
Ross.Martin@ropesgray.com; Wofford, Keith H.
Subject: RE: Settlement documents -- confidential


Here's the holdings section.  You chunked a bunch of extraneous stuff
into the rest of the agreement, but here's the holdings language.


Section 1.01      Purchasers and Assigns.  The Consenting Claimants
currently and collectively hold Securities representing in aggregate 25%
of the voting rights in one or more classes of Securities of not less
than 290 of the Covered Trusts.  The Consenting Claimants, collectively,
shall maintain holdings aggregating 25% of the voting rights in one or
more classes of Securities of not less than 235 of the Covered Trusts
(Requisite Holdings) until the earliest of: (i) confirmation of the
Plan, (ii) December 31, 2012, (iii) a Consenting Claimant Termination
Event, (iv) a Debtor Termination Event, or (v) an Ally Termination
Event; provided, however, that any reduction in Requisite Holdings
caused by: a) sales by Maiden Lane I and Maiden Lane III; or b)
exclusion of one or more trusts due to the exercise of Voting Rights by
a Credit Enhancer, shall not be considered in determining whether the
Requisite Holdings threshold has been met.  If the Requisite Holdings
are not maintained, EACH OF Ally and ResCap shall have the right to
terminate the agreement, but shall not terminate the agreement before
EACH OF ALLY AND RESCAP HAVE conferrED in good faith with the Consenting
Claimants concerning whether termination is warranted.  For the
avoidance of doubt, other than as set forth above, this Agreement shall
not restrict the right of any Consenting Claimant to sell or exchange
any Securities issued by a Trust free and clear of any encumbrance.  The
Consenting Claimants will not sell OR PURCHASE any of the Securities for
the purpose of avoiding their obligations under this Agreement, and each
Consenting Claimant commits to maintain at least one position in one of
the Securities in one of the Trusts until the earliest of the dates set
forth above.  If the Debtor or Ally reach a similar agreement to this
with another bondholder group, the Debtor and Ally will include a
substantially similar proportionate holdings requirement in that
agreement as contained herein.


_____

From: Princi, Anthony [mailto:APrinci@mofo.com]
Sent: Sun 5/13/2012 3:48 PM
To: Kathy D. Patrick; Levitt, Jamie A.
Cc: Lee, Gary S.; Scott A. Humphries; Clark, Daniel E.; Newton, James
A.; nornstein@kirkland.com; Timothy.Devine@ally.com
Subject: RE: Settlement documents -- confidential


Thanks Kathy.

Scott, to underscore Jamie's message, we truly are running out of time
so we need to see the transfer language ASAP so that we can finalize the
agreements and have them signed. Thanks.


_____

From: Kathy D. Patrick [mailto:kpatrick@gibbsbruns.com]

CONFIDENTIAL – PROFESSIONALS' EYES ONLY   Confidential                     RC-9019_00055574

Sent: Sunday, May 13, 2012 4:49 PM
To: Levitt, Jamie A.; Kathy D. Patrick
Cc: Princi, Anthony; Lee, Gary S.; Scott A. Humphries
Subject: Re: Settlement documents -- confidential

Confidential

Scott -

Can we get them the docs?

Thanks,

KP


Kathy D. Patrick
Gibbs & Bruns, L.L.P.


From: Levitt, Jamie A. [mailto:JLevitt@mofo.com]
Sent: Sunday, May 13, 2012 03:43 PM
To: Kathy D. Patrick
Cc: Princi, Anthony ; Lee, Gary S.
Subject: Fw: Settlement documents -- confidential


Kathy -- can you have someone send us the documents. We really need to review asap -- time is even shorter. Thanks.

---

From: Levitt, Jamie A.
To: 'Ross.Martin@ropesgray.com' ; 'Kathy D. Patrick' ; 'Scott A. Humphries'

Cc: 'Ornstein, Noah' ; Princi, Anthony; Lee, Gary S.; 'Devine, Timothy' ; 'rcieri@kirkland.com'
Sent: Sun May 13 14:02:28 2012
Subject: Settlement documents -- confidential


Kathy and Scott,

Attached are the settlement documents redlined against the documents Scott sent last night. I thought you might want to see the changes we think exist from last night and this morning. Noah will separately send a set of redlines against what we sent last night in case you prefer to review that way. Please let us know if you have changes on the monoline references as Gary discussed. We have not addressed the sale/transfer point because that language is being revised by you and I understand you will be sending the allocation exhibit including the bypass language you propose.

Our goal needs to be to get your additions and thoughts and get these documents finalized asap.

Thanks.

Jamie

---------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to

CONFIDENTIAL – PROFESSIONALS' EYES ONLY    Confidential    RC-9019_00055575

another party any transaction or matter addressed herein. Confidential

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================
====

This message contains information which may be confidential and
privileged. Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.

------------------------------------------------------------------


------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison &
Foerster LLP informs you that, if any advice concerning one or more U.S.
Federal tax issues is contained in this communication (including any
attachments), such advice is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================
====

This message contains information which may be confidential and
privileged. Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.

------------------------------------------------------------------


------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison &
Foerster LLP informs you that, if any advice concerning one or more U.S.
Federal tax issues is contained in this communication (including any
attachments), such advice is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================
====

This message contains information which may be confidential and
privileged.  Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.

------------------------------------------------------------------

CONFIDENTIAL – PROFESSIONALS' EYES ONLY  Confidential

Confidential

--------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison &
Foerster LLP informs you that, if any advice concerning one or more U.S.
Federal tax issues is contained in this communication (including any
attachments), such advice is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================
====

This message contains information which may be confidential and
privileged.  Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.

--------------------------------------------------------------

--------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison &
Foerster LLP informs you that, if any advice concerning one or more U.S.
Federal tax issues is contained in this communication (including any
attachments), such advice is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================
====

This message contains information which may be confidential and
privileged.  Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose to anyone the message
or any information contained in the message. If you have received the
message in error, please advise the sender by reply e-mail @mofo.com,
and delete the message.

--------------------------------------------------------------

--------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice
concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice
is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==================================================================

This message contains information which may be confidential and privileged.  Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

------------------------------------------------------------------------

A. 64

**Outlook E-mail**



EXHIBIT
9019 159
11|19|12
PENGAD 800-631-6989

**From:**    Levitt, Jamie A.
**Sent:**    5/13/2012 7:34:16 PM
**To:**    'nornstein@kirkland.com'; Princi, Anthony
**Cc:**    Lee, Gary S.
**Subject:**    Re: Settlement documents -- confidential

I'll call and explain. It's all good. I just explained to Tim.

---

**From:** Ornstein, Noah <nornstein@kirkland.com>
**To:** Princi, Anthony
**Cc:** Lee, Gary S.; Levitt, Jamie A.
**Sent:** Sun May 13 19:33:17 2012
**Subject:** RE: Settlement documents -- confidential

To be clear, does that mean the indemnity claims are or are not covered by the $8.7 billion?

**From:** Princi, Anthony [mailto:APrinci@mofo.com]
**Sent:** Sunday, May 13, 2012 7:31 PM
**To:** Ornstein, Noah
**Cc:** Lee, Gary S.; Levitt, Jamie A.
**Subject:** RE: Settlement documents -- confidential

It didn't work from a mechanical vantage point under the Governing Agreements (she actually knows how this stuff works a lot better than we do I'm sorry to admit).

**From:** Ornstein, Noah [mailto:nornstein@kirkland.com]
**Sent:** Sunday, May 13, 2012 7:29 PM
**To:** Princi, Anthony
**Subject:** RE: Settlement documents -- confidential

Didn't she ask to stip out indemnity claims. I understood those were to be in the bucket. Is that not the deal?

**From:** Princi, Anthony [mailto:APrinci@mofo.com]
**Sent:** Sunday, May 13, 2012 7:26 PM
**To:** Devine, Timothy; Scott A. Humphries; Kathy D. Patrick; Levitt, Jamie A.
**Cc:** Lee, Gary S.; Clark, Daniel E.; Newton, James A.; Ornstein, Noah; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
**Subject:** RE: Settlement documents -- confidential

Don't believe the terms of the agreements allow for that but if K&E disagrees please let us know ASAP.

We spoke to Kathy and resolved the issues and are going to be circulating final, execution versions of the agreements soon.

---

**From:** Devine, Timothy [mailto:Timothy.Devine@ally.com]
**Sent:** Sunday, May 13, 2012 7:09 PM
**To:** Princi, Anthony; Scott A. Humphries; Kathy D. Patrick; Levitt, Jamie A.
**Cc:** Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
**Subject:** RE: Settlement documents -- confidential

If there is any discussion about the total $ for allowed claims arising out of these issuances – wrapped, unwrapped, monoline, trust, whatever (excepting securities law claims) – going over $8.7 billion then we have no deal. Ally did not, cannot and will not approve it.

I am sure I misunderstood the notes below.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                    RC-9019_00055615

Thanks.

Tim

Timothy A. Devine
Chief Counsel - Litigation
Ally Financial Inc. Legal Staff
200 Renaissance Center
M/C: 482-B09-B11
Detroit, MI 48265
(313) 656-3477

---

**From:** Princi, Anthony [mailto:APrinci@mofo.com]
**Sent:** Sunday, May 13, 2012 7:05 PM
**To:** Scott A. Humphries; Kathy D. Patrick; Levitt, Jamie A.
**Cc:** Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Devine, Timothy; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com
**Subject:** RE: Settlement documents -- confidential

Gary is calling Kathy to deal with all this.

---

**From:**  Scott A. Humphries [mailto:SHumphries@gibbsbruns.com]
**Sent:**  Sunday, May 13, 2012 7:05 PM
**To:**  Scott A. Humphries; Princi, Anthony; Kathy D. Patrick; Levitt, Jamie A.
**Cc:**  Lee, Gary S.; Clark, Daniel E.; Newton, James A.; nornstein@kirkland.com; Timothy.Devine@ally.com; Ross.Martin@ropesgray.com; Keith.Wofford@ropesgray.com

**Subject:**    RE: Settlement documents -- confidential

<< File: 30507447-v11-Revised Plan Support Agreement (RG 513 draft).docx >>   << File: Change-Pro Redline - 30507447-v10-Revised Plan Support Agreement (MoFo 513 draft) and 30507447-v11-Revised Plan Support Agreement (RG 513 draft).pdf >>

---------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

====================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

---------------------------------------------------------------

---------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments),

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

=============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

----------------------------------------------------------------

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

----------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

=============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

----------------------------------------------------------------

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside

RC-9019_00055617

information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis
International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may
be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to
postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*************************************************************

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                    RC-9019_00055618

A. 65

Outlook E-mail

**From:**     Levitt, Jamie A.
**Sent:**      5/13/2012 5:45:58 PM
**To:**        'Ornstein, Noah'; 'Timothy.Devine@ally.com'
**Cc:**        Lee, Gary S.; Princi, Anthony; Clark, Daniel E.
**Subject:**   FW: Confidential Draft -- For Settlement Purposes Only
**Attachments**    KP Settlement 5-13-12 - 3[1].doc

Tim -- we are almost across the finish line with Talcott. Please confirm you are fine with his small changes and we will put in the transfer language from the KP agreement once everyone signs off on it. Two things I wanted to be sure everyone is aware of:

1. Tal is going to give an Exhibit with list of holders now, but will supplement it on a rolling basis as he recruits more signatories. We are going to draft language that says he can do this rolling basis addition until 45 day offer period ends (to correspond with 5.01). Then we'll base his sale/transfer rep off of that total of holders.

2. Tal's clients instructed the trustee a month ago to sue Ally -- he confirmed they will change that instruction as part of this agreement. We thought it would be best not to have that information as a whereas or otherwise in the agreement because you don't want that public.

Please let me know if we have your ok on all this.

Jamie

**From:** Talcott J. Franklin [mailto:Tal@talcottfranklin.com]
**Sent:** May 13, 2012 5:22 PM
**To:** Levitt, Jamie A.; Ornstein, Noah
**Subject:** Re: Confidential Draft -- For Settlement Purposes Only

Actually, the Whereas works fine so I added it back in unchanged. You'll handle the "search and replace" Gibbs and Bruns and Ropes and Gray with Talcott Franklin P.C.; Miller, Johnson, Snell & Cummiskey, P.L.C.; and Carter Ledyard & Milburn LLP when you get the final document. Thanks!

**From:** <Levitt>, "Jamie A." <JLevitt@mofo.com>
**To:** Talcott Franklin <tal@talcottfranklin.com>
**Subject:** Re: Confidential Draft -- For Settlement Purposes Only

Can I call you in 2 mins just so I understand -- what number to call?

**From**: Talcott J. Franklin <Tal@talcottfranklin.com>
**To:** Newton, James A.
**Cc:** Levitt, Jamie A.; Ornstein, Noah <nornstein@kirkland.com>; Clark, Daniel E.
**Sent**: Sun May 13 16:51:08 2012
**Subject:** Re: Confidential Draft -- For Settlement Purposes Only

Here is the revised language.

**From:** <Newton>, "James A." <JNewton@mofo.com>
**To:** Talcott Franklin <tal@talcottfranklin.com>
**Cc:** "Levitt, Jamie A." <JLevitt@mofo.com>, "Ornstein, Noah" <nornstein@kirkland.com>, "Clark, Daniel E." <DClark@mofo.com>
**Subject:** RE: Confidential Draft -- For Settlement Purposes Only

Tal,

Jamie requested that I forward you a copy of the most recent draft of the G&B documents. They are attached. These documents are subject to a few additional changes, particularly in the transfer

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

language.

-James

---

**From**: Talcott J. Franklin <Tal@talcottfranklin.com>
**To**: Levitt, Jamie A.; Jerry Phelps <Jerry@talcottfranklin.com>
**Cc**: sarbt@millerjohnson.com <sarbt@millerjohnson.com>; Gadsden, James <gadsden@clm.com>; wolfordr@millerjohnson.com <wolfordr@millerjohnson.com>; Paul Snyder <paul@talcottfranklin.com>; Derek Witte <derek@talcottfranklin.com>; Lee, Gary S.; Princi, Anthony; rcieri@kirkland.com <rcieri@kirkland.com>; nornstein@kirkland.com <nornstein@kirkland.com>; Devine, Timothy <Timothy.Devine@ally.com>
**Sent**: Sun May 13 15:08:19 2012
**Subject**: Re: Confidential Draft -- For Settlement Purposes Only

Jamie:
Just spoke with Tim — he says we need to get the deal done now.  I'm good with Noah's addition to 7.05 — good work Noah — so we're over that.

I need the latest documents for G&B, apparently there have been some changes, and I need to push it out to clients.  I'm working on a press release that I will provide to Ally/RFC and they can release it whenever — we will not release it.  Tim agreed to a slight modification to the representation that we have 25% in order to get us on board.  I'll give you that language when I see the new documents.

Tim understands we'll do everything we can to get signatures tonight, but given the holiday and that it is a Sunday, he's understanding if we cannot.  We'll push forward on Monday, etc. with additional clients and help create momentum for the settlement throughout the week.  I've already discussed in general terms with DB's outside counsel how we'd do the instruction — we weren't able to specifically talk about RFC because of the NDA, but we've done it before on many other deals, so I don't see this as a problem.  Thanks!

Tal

---

**From:** <Levitt>, "Jamie A." <JLevitt@mofo.com>
**To:** Talcott Franklin <tal@talcottfranklin.com>, Jerry Phelps <Jerry@talcottfranklin.com>
**Cc:** "sarbt@millerjohnson.com" <sarbt@millerjohnson.com>, "Gadsden, James" <gadsden@clm.com>, "wolfordr@millerjohnson.com" <wolfordr@millerjohnson.com>, Paul Snyder <paul@talcottfranklin.com>, Derek Witte <derek@talcottfranklin.com>, "Lee, Gary S." <GLee@mofo.com>, "Princi, Anthony" <APrinci@mofo.com>, "rcieri@kirkland.com" <rcieri@kirkland.com>, "nornstein@kirkland.com" <nornstein@kirkland.com>
**Subject:** RE: Confidential Draft -- For Settlement Purposes Only

Tal -- confidentially, attached is the AFI-ResCap settlement agreement.

---

**From:** Talcott J. Franklin [mailto:Tal@talcottfranklin.com]
**Sent:** Saturday, May 12, 2012 6:36 AM
**To:** Levitt, Jamie A.; Jerry Phelps
**Cc:** sarbt@millerjohnson.com; Gadsden, James; wolfordr@millerjohnson.com; Paul Snyder; Derek Witte; Lee, Gary S.; Princi, Anthony; rcieri@kirkland.com; nornstein@kirkland.com
**Subject:** Re: Confidential Draft -- For Settlement Purposes Only
**Importance:** High

May we please have exhibit B?

---

**From:** <Levitt>, "Jamie A." <JLevitt@mofo.com>
**To:** Jerry Phelps <Jerry@talcottfranklin.com>, Talcott Franklin <tal@talcottfranklin.com>
**Cc:** "sarbt@millerjohnson.com" <sarbt@millerjohnson.com>, "Gadsden, James"

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

<gadsden@cfm.com>, "wolford@millerjohnson.com" <wolford@millerjohnson.com>, Paul Snyder
<paul@talcottfranklin.com>, Derek Witte <derek@talcottfranklin.com>, "Lee, Gary S." <GLee@mofo.com>, "Princi, Anthony"
<APrinci@mofo.com>, "rcieri@kirkland.com" <rcieri@kirkland.com>, "nornstein@kirkland.com" <nornstein@kirkland.com>
**Subject:** Confidential Draft -- For Settlement Purposes Only

**CONFIDENTIAL DRAFT -- FOR SETTLEMENT PURPOSES ONLY**

Tal and Jerry,

As has been discussed, attached is a working-draft of the settlement agreement we are negotiating with
Kathy Patrick's groupthat, when final, will reflect the deal we would agree to enter with your group.  I
apologize for the lateness of the hour, but understand you hoped to see this for your morning
meeting.  We provide the draft to  that end, with all the caveats that it is still subject to review and
negotiation on our side.

Please let us know if you would like to discuss.  Although we do not have time left to negotiate the
terms with you, we are happy to explain and discuss them.

Thank you.

Jamie

-------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one
or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written
to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

==========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive
for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have
received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-------------------------------------------------------------------

DISCLAIMER:
The information contained in this message may be privileged, confidential, and protected from disclosure. You, the recipient, are obligated to maintain it in a safe, secure
and confidential manner. If you are not the intended recipient, or an employee, or agent responsible for delivering this message to the intended recipient, you are hereby
notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us
immediately by replying to the message. Re-disclosure without additional consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain
confidentiality could subject you to penalties described in federal and state law.

IRS Circular 230 disclosure: ANY STATEMENTS CONTAINED HEREIN ARE NOT INTENDED BY THE WRITER TO BE USED, AND NOTHING CONTAINED HEREIN
CAN BE USED, BY YOU OR ANY OTHER PERSON, FOR THE PURPOSE OF (1) AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW, OR
(2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED TRANSACTION OR MATTER ADDRESSED HEREIN.

-------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one
or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written
to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-------------------------------------------------------------------

_____

DISCLAIMER:
The information contained in this message may be privileged, confidential, and protected from disclosure. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. If you are not the intended recipient, or an employee, or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message. Re-disclosure without additional consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

IRS Circular 230 disclosure: ANY STATEMENTS CONTAINED HEREIN ARE NOT INTENDED BY THE WRITER TO BE USED, AND NOTHING CONTAINED HEREIN CAN BE USED, BY YOU OR ANY OTHER PERSON, FOR THE PURPOSE OF (1) AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED TRANSACTION OR MATTER ADDRESSED HEREIN.

-------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

========================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-------------------------------------------------------------------

*********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
*********************************************************

-------------------------------------------------------------------
To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting,

or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-----------------------------------------------------------------------

DISCLAIMER:
The information contained in this message may be privileged, confidential, and protected from disclosure. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. If you are not the intended recipient, or an employee, or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message. Re-disclosure without additional consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

IRS Circular 230 disclosure: ANY STATEMENTS CONTAINED HEREIN ARE NOT INTENDED BY THE WRITER TO BE USED, AND NOTHING CONTAINED HEREIN CAN BE USED, BY YOU OR ANY OTHER PERSON, FOR THE PURPOSE OF (1) AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED TRANSACTION OR MATTER ADDRESSED HEREIN.

-----------------------------------------------------------------------

To ensure compliance with requirements imposed by the IRS, Morrison & Foerster LLP informs you that, if any advice concerning one or more U.S. Federal tax issues is contained in this communication (including any attachments), such advice is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

For information about this legend, go to
http://www.mofo.com/Circular230/

============================================================================

This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose to anyone the message or any information contained in the message. If you have received the message in error, please advise the sender by reply e-mail @mofo.com, and delete the message.

-----------------------------------------------------------------------

DISCLAIMER:
The information contained in this message may be privileged, confidential, and protected from disclosure. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. If you are not the intended recipient, or an employee, or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message. Re-disclosure without additional consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

IRS Circular 230 disclosure: ANY STATEMENTS CONTAINED HEREIN ARE NOT INTENDED BY THE WRITER TO BE USED, AND NOTHING CONTAINED HEREIN CAN BE USED, BY YOU OR ANY OTHER PERSON, FOR THE PURPOSE OF (1) AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAW, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TAX-RELATED TRANSACTION OR MATTER ADDRESSED HEREIN.

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

## RMBS TRUST SETTLEMENT AGREEMENT

This RMBS Trust Settlement Agreement is entered into as of May 13, 2012, by and between Residential Capital, LLC and its direct and indirect subsidiaries (collectively, "ResCap" or the "Debtors"), on the one hand, and the Institutional Investors (as defined below), on the other hand (the "Settlement Agreement"). Each of ResCap and the Institutional Investors may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain ResCap entities were the Seller, Depositor, Servicer and/or Master Servicer for the securitizations identified on the attached Exhibit A (the "Trusts");

WHEREAS, certain ResCap entities are parties to certain applicable Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements and/or other agreements governing the Trusts (the "Governing Agreements"), and certain ResCap entities have, at times, acted as Master Servicer and/or Servicer for the Trusts pursuant to certain of the Governing Agreements;

WHEREAS, certain third party guarantor or financial guaranty providers (the "Credit Enhancers") are parties to certain applicable Insurance Agreements, Insurance Policies, and/or other agreements relating to the Trusts (the "Credit Enhancer Agreements");

WHEREAS, pursuant to the Governing Agreements, certain ResCap entities have contributed or sold loans into the Trusts (the "Mortgage Loans");

WHEREAS, the Institutional Investors have alleged that certain loans held by the Trusts were originally contributed in breach of representations and warranties contained in the Governing Agreements, allowing the Investors in such Trusts to seek to compel the trustee or indenture trustee (each, a "Trustee") to take certain actions with respect to those loans, and further have asserted past and continuing covenant breaches and defaults by various ResCap entities under the Governing Agreements;

WHEREAS, the Institutional Investors have indicated their intent under the Governing Agreements for each Trust in which the Institutional Investors collectively hold or are authorized investment managers for holders of at least 25% of a particular tranche of the Securities (as defined below) held by such Trust either to seek action by the Trustee for such Trust or to pursue claims, including but not limited to claims to compel ResCap to cure the alleged breaches of representations and warranties, and ResCap disputes such claims and allegations of breach and waives no rights, and preserves all of its defenses, with respect to such allegations and putative cure requirements;

WHEREAS, the Institutional Investors are jointly represented by Gibbs & Bruns, LLP ("Gibbs & Bruns") and Ropes & Gray LLP ("Ropes & Gray") and have, through counsel,

{00315282-4}
30511482_7

30511482_9
ny-1040888

**MoFo Draft of 5/13/12**
**Attorneys' Work Product**
**Privileged and Confidential**
**For Settlement Purposes Only**

engaged in arm's length settlement negotiations with ResCap that included the exchange of confidential materials;

WHEREAS, ResCap contemplates filing petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, ResCap and the Institutional Investors have reached agreement on a plan support agreement (the "Plan Support Agreement") pursuant to which the Institutional Investors will support the confirmation of a chapter 11 plan for ResCap;

WHEREAS, Ally Financial Inc. and its subsidiaries and affiliates, other than ResCap (collectively, "Ally") have agreed to a settlement with ResCap in return for releases of any alleged claims held by ResCap and certain third parties against Ally;

WHEREAS, ResCap and the Institutional Investors have reached agreement concerning all claims under the Governing Agreements; and

WHEREAS, the Parties therefore enter into this Settlement Agreement to set forth their mutual understandings and agreements for terms for resolving the disputes regarding the Governing Agreements.

<u>**AGREEMENT**</u>

NOW, THEREFORE, after good faith, arm's length negotiations without collusion, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

ARTICLE I.    <u>DEFINITIONS</u>.

As used in this Settlement Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement).  Any capitalized terms not defined in this Settlement Agreement shall have the definition given to them in the Governing Agreements.

Section 1.01    "Bankruptcy Code" shall mean title 11 of the United States Code;

Section 1.02    "Direction" shall mean the direction by the Institutional Investors, to the extent permitted by the Governing Agreements, directing any Trustee to take or refrain from taking any action; *provided, however*, that in no event shall the Institutional Investors be required to provide a Trustee with any security or indemnity for action or inaction taken at the direction of the Institutional Investors and the Institutional Investors shall not be required to directly or

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                    RC-9019_00048603

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

indirectly incur any costs, fees, or expenses to compel any action or inaction by a Trustee, except that the Institutional Investors shall continue to retain contingency counsel;

Section 1.03    "Effective Date" shall have the meaning ascribed in Section 2.01;

> **Deleted:** Section 2.01

Section 1.04    "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority);

Section 1.05    "Institutional Investors" shall mean the authorized investment managers and Investors identified in the attached signature pages;

Section 1.06    "Investors" shall mean all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees, and/or transferees;

Section 1.07    "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority;

Section 1.08    "Petition Date" means the date on which ResCap files petitions under chapter 11 of the Bankruptcy Code;

Section 1.09    "Plan" has the meaning ascribed to it in the Plan Support Agreement; and

Section 1.10    "Restructuring" shall have the meaning ascribed to it in the Plan Support Agreement.

ARTICLE II.    SETTLEMENT PROCESS.

Section 2.01    Effective Date.    This Settlement Agreement shall be effective immediately except as to the granting of allowed claims to the Trusts and the releases set forth herein.  The claims allowance and releases shall only be effective, with respect to Trusts that timely accept the compromise, on the date on which the Bankruptcy Court enters an order approving the settlement contemplated hereby (the "Effective Date").

Section 2.02    Bankruptcy Court Approval.    The Debtors shall (a) orally present this Settlement Agreement in Court on the Petition Date, including the agreed amount of the Allowed Claim (as defined below), (b) file a motion in the Bankruptcy Court as soon as practicable, but in

CONFIDENTIAL – PROFESSIONALS' EYES ONLY

**MoFo Draft of 5/13/12**
**Attorneys' Work Product**
**Privileged and Confidential**
**For Settlement Purposes Only**

no event later than fourteen (14) days after the Petition Date, seeking authority to perform under this Settlement Agreement and for approval of this Settlement Agreement and the compromise contained herein, and (c) obtain an order from the Bankruptcy Court approving such motion by the earlier of (i) 60 days after the Petition Date and (ii) the date on which the Disclosure Statement is approved by the Bankruptcy Court. The Trustee for each Trust may accept the offer of a compromise contemplated by this Settlement Agreement in writing pursuant to a form of acceptance to be included in the proposed order for approval of this Settlement Agreement to be submitted to the Bankruptcy Court.

Section 2.03    <u>Standing</u>.  The Debtors agree that the Institutional Investors are parties in interest in the chapter 11 cases of ResCap for the sole and exclusive purposes of enforcing rights and complying with obligations under this Agreement and the Plan Support Agreement.

{00315282-4}
30511482_7

30511482_9
ny-1040888

-4-

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

ARTICLE III. REPRESENTATIONS AND WARRANTIES.

Section 3.01    Holdings and Authority.  Lead counsel to the Institutional Investors, Gibbs & Bruns, has represented to ResCap that its clients have or will seek to obtain in combination with others, aggregate holdings of securities of greater than 25% of the voting rights in one or more classes of the securities, certificates or other instruments backed by the mortgages held by each of the Covered Trusts (as defined in the Plan Support Agreement).  Each Institutional Investor represents that (i) it has the authority to take the actions contemplated by this Settlement Agreement, to the extent that it has the authority with respect to any other entities, account holders, or accounts for which or on behalf of which it is signing this Settlement Agreement, and (ii) it holds, or is the authorized investment manager for the holders of, the securities listed in the schedule attached to the Plan Support Agreement as Exhibit G thereto, in the respective amounts set forth therein by CUSIP number, that such schedule was accurate as of the date set forth for the respective institution, and that since the date set forth for the Institutional Investor, the Institutional Investor has not, in the aggregate, materially decreased the Institutional Investor's holdings in the Securities.  The Parties agree that the aggregate amounts of Securities collectively held by the Institutional Investors for each Trust may be disclosed publicly, but that the individual holdings shall remain confidential, subject to review only by ResCap, Ally, the Bankruptcy Court, the Office of the United States Trustee, and any official committee of creditors that may be appointed in the Chapter 11 Cases.

Section 3.02    Purchasers and Assigns.  The Consenting Claimants collectively shall hold or obtain instruction to the Trustee from, including in the capacity, as applicable, of an authorized investment manager, Securities representing in aggregate 25% of the voting rights in one or more classes of Securities of each of the Covered Trusts until the earliest of:  (i) confirmation of the Plan, (ii) December 31, 2012, (iii) a Consenting Claimant Termination Event, (iv) a Debtor Termination Event, or (v) an Ally Termination Event.  For the avoidance of doubt, other than as set forth above, this Agreement shall not restrict the right of any Consenting Claimant to sell or exchange any Securities issued by a Trust free and clear of any encumbrance.

ARTICLE IV. DIRECTION TO TRUSTEES AND INDENTURE TRUSTEES.

Section 4.01    Direction to Trustees and Indenture Trustees.  The relevant Institutional Investors for each Trust shall, by the time of the filing of a motion to approve this Settlement Agreement, provide the relevant Trustee with Direction to accept the settlement and compromises set forth herein.  The Institutional Investors hereby agree to confer in good faith with ResCap as to any further or other Direction that may be reasonably necessary to effectuate the settlement contemplated herein, including those actions listed in Section 3.1 of the Plan Support Agreement, filing motions and pleadings with the Bankruptcy Court and making statements in open court in support of the Restructuring.

Section 4.02    No Inconsistent Directions.  Except for providing instructions in accordance with Section 4.01, the Institutional Investors agree that (i) between the date hereof and the Effective Date, with respect to the Securities on the Holdings Schedule, they will not,

{00315282-4}                                           -5-
30511482_7

30511482_9
ny-1040888

Deleted: the Institutional Investors have or advise clients who have

Deleted: ; provided, however, that Maiden Lane I and Maiden Lane III may liquidate the entirety of their holdings if required by an action of the Federal Reserve Board of Governors; provided, further, however, that Maiden Lane I and Maiden Lane III each represent to the best of its knowledge that the Federal Reserve Board of Governors has taken and anticipates taking no action to require it to liquidate any of its holdings

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                    RC-9019_00048606

**MoFo Draft of 5/13/12**
**Attorneys' Work Product**
**Privileged and Confidential**
**For Settlement Purposes Only**

individually or collectively, direct, vote for, or take any other action that they may have the right or the option to take under the Governing Agreements or to join with any other holders or the trustee of any note, bond or other security issued by the Trusts, to cause the Trustees to enforce (or seek derivatively to enforce) any representations and warranties regarding the Mortgage Loans or the servicing of the Mortgage Loans, and (ii) to the extent that any of the Institutional Investors have already taken any such action, the applicable Institutional Investor will promptly rescind or terminate such action.  Nothing in the foregoing shall restrict the ability of the Institutional Investors to demand that any other Investor who seeks to direct the Trustee for a Trust post any indemnity or bond required by the Governing Agreements for the applicable Trust.

Section 4.03    Amendments to Governing Agreements Regarding Financing of Advances.  The Institutional Investors agree to use commercially reasonable efforts (which shall not require the giving of any indemnity or other payment obligation or expenditure of out-of-pocket funds) to negotiate any request by the Debtors or the Trustees for Trusts that are being assumed, and if any Trustee shall require a vote of the certificate or note holders with respect thereto, shall vote in favor of (to the extent agreement is reached) any amendment to the relevant Governing Agreements and related documents requested by the Debtors in order to permit "Advances" (as it or any similar term may be defined in the Governing Agreements) to be financeable and to make such other amendments thereto as may be reasonably requested by the Debtors in accordance with any agreement to acquire all or substantially all of the Debtors' servicing assets pursuant to the Restructuring and the Plan, so long as such changes would not cause material financial detriment to the Trusts, their respective trustees, certificate or note holders, or the Institutional Investors.

ARTICLE V.  ALLOWANCE OF CLAIM.

Section 5.01    The Allowed Claim.  ResCap hereby makes an irrevocable offer to settle, expiring at 5:00 p.m. prevailing New York time on the date that is forty five (45) days after the Petition Date, with each of the Trusts that timely agrees to the terms of this Settlement Agreement (the "Accepting Trusts"). In consideration for such agreement, ResCap will provide a general unsecured claim of $8,700,000,000 (the "Total Allowed Claim").  For the avoidance of doubt, the Total Allowed Claim shall be shared among (i) any Trusts accepting the offer contained in this Section 5.01, subject to the provisions of this Settlement Agreement, (ii) claims allowed by ResCap which are brought by Credit Enhancers and arise out of the Governing Agreements and/or the Credit Enhancer Agreements, which claims will not include claims for indemnity brought by the Credit Enhancers.  Any Trusts accepting the offer contained in this Section 5.01, subject to the provisions of this Settlement Agreement shall be allowed claims in an amount calculated as set forth below (the "Allowed Claim"), but in no case shall the amount of the Allowed Claim exceed $8,700,000,000.  The amount of the Allowed Claim shall equal (i) $8,700,000,000, multiplied by (ii) the percentage represented by (a) the total dollar amount of original principal balance for the Accepting Trusts, divided by (b) the total dollar amount of original principal balance for all Trusts.

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                          RC-9019_00048607

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

Section 5.02    Waiver of Setoff and Recoupment.  By accepting the offer to settle contained in Section 5.01, each accepting Trust irrevocably waives any right to setoff and/or recoupment such Trust may have against Ally and ResCap.

**Deleted:** Section 5.01

ARTICLE VI. ALLOCATION OF ALLOWED CLAIM.

Section 6.01    The Allocation Schedule.  The allocation of the amounts of the Allowed Claim as to each Trust (each, an "Allocated Allowed Claim"), is set forth on Exhibit C hereto.

Section 6.02    Legal Fees.

(a)    ResCap and the Institutional Investors agree that Gibbs & Bruns and Ropes & Gray shall, on the Effective Date of the Plan, be paid legal fees as follows, as an integrated and nonseverable part of this Settlement Agreement.  First, Gibbs & Bruns and Ropes & Gray, as counsel to the Institutional Investors, shall be allocated by ResCap without conveyance to the Trustees the percentages of the Allowed Claim set forth on Exhibit B, without requirement of submitting any form of estate retention or fee application, for their work relating to these cases and the settlement.  Second, the Debtors and Institutional Investors may further agree at any time, that the Debtors may pay Gibbs & Bruns and Ropes & Gray in cash, in an amount that Gibbs & Bruns and Ropes & Gray respectively agree is equal to the cash value of their respective portions of the Allowed Claim, and in any such event, no estate retention application, fee application or further order of the Bankruptcy Court shall be required as a condition of the Debtors making such agreed payment.  Third, the Debtors agree and the settlement approval order shall provide that the amount of the Allowed Claim payable to Gibbs & Bruns and Ropes & Gray may be reduced to a separate claim stipulation for convenience of the parties.

(b)    In the event that, prior to acceptance of this compromise by a Trustee for a Trust other than an original Covered Trust (as defined in the Plan Support Agreement), counsel to Investors in such Trust cause a direction to be given by more than 25% of the holders of a tranche of such Trust to accept this compromise, then the same provisions as contained in Section 6.02(a) shall apply to such counsel, solely as to the amounts allocated to such Trust.  Such counsel shall be entitled to a share of the fee for such trust equal to the ratio of (a) 25% minus the percentage of such tranche held by Institutional Investors divided by (b) 25%.  Counsel would be required to identify itself and satisfy the Debtors and Institutional Investors as to the holdings of client-investors and that counsel caused such directions.

ARTICLE VII.        RELEASES.

Section 7.01    Releases.  Except as set forth in Article VIII, as of the Effective Date, with respect to each and every Trust for whom the Trustee accepts the compromise contemplated by this Agreement, the Investors, Trustee, Trust, and any Persons claiming by, through or on behalf of such Trustee (including Institutional Investors claiming derivatively) or such Trust

**Deleted:** Article VIII

{00315282-4}
30511482_7

-7-

30511482_9
ny-1040888

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

(collectively, the "Releasors"), irrevocably and unconditionally grant a full, final, and complete release, waiver, and discharge of all alleged or actual claims, demands to repurchase, demands to cure, demands to substitute, counterclaims, defenses, rights of setoff, rights of rescission, liens, disputes, liabilities, losses, debts, costs, expenses, obligations, demands, claims for accountings or audits, alleged events of default, damages, rights, and causes of action of any kind or nature whatsoever, whether asserted or unasserted, known or unknown, suspected or unsuspected, fixed or contingent, in contract, tort, or otherwise, secured or unsecured, accrued or unaccrued, whether direct or derivative, arising under law or equity, against ResCap that arise under the Governing Agreements. Such released claims include, but are not limited to, claims arising out of and/or relating to (i) the origination, sale, or delivery of Mortgage Loans to the Trusts, including the representations and warranties made in connection with the origination, sale, or delivery of Mortgage Loans to the Trusts or any alleged obligation of ResCap to repurchase or otherwise compensate the Trusts for any Mortgage Loan on the basis of any representations or warranties or otherwise or failure to cure any alleged breaches of representations and warranties, (ii) the documentation of the Mortgage Loans held by the Trusts including with respect to allegedly defective, incomplete, or non-existent documentation, as well as issues arising out of or relating to recordation, title, assignment, or any other matter relating to legal enforceability of a Mortgage or Mortgage Note, or any alleged failure to provide notice of such defective, incomplete or non-existent documentation, (iii) the servicing of the Mortgage Loans held by the Trusts (including any claim relating to the timing of collection efforts or foreclosure efforts, loss mitigation, transfers to subservicers, advances, servicing advances, or claims that servicing includes an obligation to take any action or provide any notice towards, or with respect to, the possible repurchase of Mortgage Loans by the applicable Master Servicer, Seller, or any other Person), (iv) setoff or recoupment under the Governing Agreements against ResCap, and (v) any loan seller that either sold loans to ResCap or AFI that were sold and transferred to such Trust or sold loans directly to such Trust, in all cases prior to the Petition Date (collectively, all such claims being defined as the "Released Claims"). For the avoidance of doubt, this release does not include individual direct claims for securities fraud or other disclosure-related claims arising from the purchase or sale of Securities.

Section 7.02   Release of Claims Against Investors. Except as set forth in Article VIII, as of the Effective Date, ResCap irrevocably and unconditionally grants to the Investors a full, final, and complete release, waiver, and discharge of all alleged or actual claims from any claim it may have under or arising out of the Governing Agreements. For the avoidance of doubt, nothing in this provision shall affect Ally's rights in any way.

Section 7.03   Agreement Not to Pursue Relief from the Stay. The Institutional Investors agree that neither they nor their successors in interest, assigns, pledges, delegates, affiliates, subsidiaries, and/or transferees, will seek relief from the automatic stay imposed by section 362 of the Bankruptcy Code in order to institute, continue or otherwise prosecute any action relating to the Released Claims; provided, however, nothing contained herein shall preclude the Institutional Investors or their advised clients from seeking any such relief with respect to direct

CONFIDENTIAL – PROFESSIONALS' EYES ONLY                                    RC-9019_00048609

**MoFo Draft of 5/13/12**
**Attorneys' Work Product**
**Privileged and Confidential**
**For Settlement Purposes Only**

claims for securities fraud or other disclosure-related claims arising from the purchase or sale of Securities.  ResCap reserves its rights and defenses therewith.

Section 7.04    Inclusion of Accepting Trustees in Plan Exculpation Provisions.  The Trustees of any Trust accepting the offer to settle described in Section 5.01 and their respective counsel shall be entitled to the benefit of any plan exculpation provision, if any, included in the Plan, which exculpation shall be no less favorable than the plan exculpation provisions extended to similarly situated creditors or parties in interest who are parties to any plan support agreement with ResCap.

Section 7.05    Servicing of the Mortgage Loans.  Except as provided in Section 8.01, the release and waiver in Article VII includes all claims based in whole or in part on any actions, inactions, or practices of the Master Servicer, Servicer, or Subservicer as to the servicing of the Mortgage Loans held by the Trusts prior to the Petition Date.  Provided, the foregoing language is not intended to release any claims against any person other than ResCap and Ally; provided, further, that the applicable Consenting Claimant shall indemnify (i) any direct or indirect subsidiary of ResCap that is not a Debtor and/or (ii) Ally, against any and all harm in connection with any Consenting Claimant pursuing such claim.

ARTICLE VIII.    CLAIMS NOT RELEASED

Section 8.01    Administration of the Mortgage Loans.  The releases and waivers in Article VII herein do not include claims that first arise after the Effective Date which are based in whole or in part on any actions, inactions, or practices of the Master Servicer, Servicer, or Subservicer as to the servicing of the Mortgage Loans held by the Trusts in their aggregation and remittance of Mortgage Loan Payments, accounting for principal and interest, and preparation of tax-related information, in connection with the Mortgage Loans and the ministerial operation and administration of the Trusts and the Mortgage Loans held by the Trusts, for which the Master Servicer, Servicer, or Subservicer received servicing fees, unless, as of the date hereof, the Institutional Investors, have or should have knowledge of the actions, inactions, or practices of ResCap in connection with such matters.

Section 8.02    Financial-Guaranty Provider Rights and Obligations.  To the extent that any third party guarantor or financial-guaranty provider with respect to any Trust has rights or obligations independent of the rights or obligations of the Investors, the Trustees, or the Trusts, the releases and waivers in Article VII are not intended to and shall not release such rights.

Section 8.03    Settlement Agreement Rights.  The Parties do not release or waive any rights or claims against each other to enforce the terms of this Settlement Agreement or the Allowed Claim.

Section 8.04    Disclosure Claims.  The releases and waivers in Article VII do not include any claims based on improper disclosures under federal or state securities law.

{00315282-4}                                    -9-
30511482_7

30511482_9
ny-1040888

**Deleted:** Section 5.01

**Formatted:** Font: Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Formatted:** Font: (Default) Times New Roman, 12 pt, Not Bold

**Deleted:** Article VII

**Deleted:** Article VII

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

Section 8.05    Reservation of Rights.  Notwithstanding anything in this Settlement Agreement to the contrary, the Institutional Investors have not waived their right to file an objection to a motion of the holders of the ResCap 9 5/8% bonds requesting payment of any interest on account of their ResCap 9 5/8% bond claims that may be due and owing after the Petition Date.

ARTICLE IX. RELEASE OF UNKNOWN CLAIMS.

Each of the Parties acknowledges that it has been advised by its attorneys concerning, and is familiar with, California Civil Code Section 1542 and expressly waives any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to the provisions of the California Civil Code Section 1542, including that provision itself, which reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Parties acknowledge that inclusion of the provisions of this Article IX to this Settlement Agreement was a material and separately bargained for element of this Settlement Agreement.

ARTICLE X. OTHER PROVISIONS

Section 10.01    Voluntary Agreement.  Each Party acknowledges that it has read all of the terms of this Settlement Agreement, has had an opportunity to consult with counsel of its own choosing or voluntarily waived such right and enters into this Settlement Agreement voluntarily and without duress.

Section 10.02    No Admission of Breach or Wrongdoing.  ResCap has denied and continues to deny any breach, fault, liability, or wrongdoing.  This denial includes, but is not limited to, breaches of representations and warranties, violations of state or federal securities laws, and other claims sounding in contract or tort in connection with any securitizations, including those for which ResCap was the Seller, Servicer and/or Master Servicer.  Neither this Settlement Agreement, whether or not consummated, any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, whether or not consummated, shall be construed as, or deemed to be evidence of, an admission or concession on the part of ResCap with respect to any claim or of any breach, liability, fault, wrongdoing, or damage whatsoever, or with respect to any infirmity in any defense that ResCap has or could have asserted.

Section 10.03    No Admission Regarding Claim Status.  ResCap expressly states that in the event this Settlement Agreement is not consummated or is terminated prior to the Effective

{00315282-4}
30511482_7
                                            -10-

30511482_9
ny-1040888

MoFo Draft of 5/13/12
Attorneys' Work Product
Privileged and Confidential
For Settlement Purposes Only

Date, then neither this Settlement Agreement, nor any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, shall be construed as, or deemed to be evidence of, an admission or concession on the part of ResCap that any claims asserted by the Institutional Investors are not contingent, unliquidated or disputed. The Institutional Investors expressly state that in the event this Settlement Agreement is not consummated or is terminated prior to the Effective Date, neither this Settlement Agreement, nor any proceedings relating to this Settlement Agreement, nor any of the terms of the Settlement Agreement, shall be construed as, or deemed to be evidence of, an admission or concession on the part of the Institutional Investors that any claims asserted by the Institutional Investors and Trustees are not limited to the amounts set forth in this Settlement Agreement or are of any particular priority.

Section 10.04 Counterparts. This Settlement Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Settlement Agreement. Delivery of a signature page to this Settlement Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Settlement Agreement.

Section 10.05 Joint Drafting. This Settlement Agreement shall be deemed to have been jointly drafted by the Parties, and in construing and interpreting this Settlement Agreement, no provision shall be construed and interpreted for or against any of the Parties because such provision or any other provision of the Settlement Agreement as a whole is purportedly prepared or requested by such Party.

Section 10.06 Entire Agreement. This document contains the entire agreement between the Parties, and may only be modified, altered, amended, or supplemented in writing signed by the Parties or their duly appointed agents. All prior agreements and understandings between the Parties concerning the subject matter hereof are superseded by the terms of this Settlement Agreement and the Plan Support Agreement.

Section 10.07 Specific Performance. It is understood that money damages are not a sufficient remedy for any breach of this Settlement Agreement, and the Parties shall have the right, in addition to any other rights and remedies contained herein, to seek specific performance, injunctive, or other equitable relief from the Bankruptcy Court as a remedy for any such breach. The Parties hereby agree that specific performance shall be their only remedy for any violation of this Agreement.

Section 10.08 Authority. Each Party represents and warrants that each Person who executes this Settlement Agreement on its behalf is duly authorized to execute this Settlement Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Settlement Agreement.

Section 10.09 No Third Party Beneficiaries. There are no third party beneficiaries of this Agreement.

{00315282-4}                                     -11-
30511482_7

30511482_9
ny-1040888