# Exhibit 20

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In Re:                                  Case No.

RESIDENTIAL CAPITAL, LLC, et. al,       12-12020(MG)

       Debtors.

------------------------------------x

VIDEOTAPE DEPOSITION OF JOHN MACK

New York, New York

November 14, 2012

9:53 a.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27647-A

2

November 14, 2012

9:53 a.m.


Deposition of JOHN MACK, held at the offices of Kramer, Levin, Naftalis & Frankel, 1177 Avenue of the Americas, New York, New York, pursuant to Notice, before Erica L. Ruggieri, Registered Professional Reporter and Notary Public of the State of New York.

81

1           JOHN MACK



18    Q.    Okay.  Who negotiated that
19 number, the 1 million -- 1 billion 50
20 million dollar number?
21          MR. PRINCI:  Objection as to
22    form.
23    A.    The Ally settlement was
24 primarily Jonathan Ilany and myself.  But
25 at this point this was an assumption.

```
                                                              107
 1                      JOHN MACK
```



```
15       A.    There have been two amendments
16   to the agreement with the RMBS trustees.
17   The first agreement, which was deemed to
18   be administerial and therefore not
19   approved by the board, did have an
20   allocation to Holdco.
21            The second agreement, which is
22   the one that is currently in place,
23   specifically excludes an allocation to
24   Holdco.
25       Q.    I think we are talking about
```

134

JOHN MACK

Q. And did you ever approve a change to that original deal?

A. This was the change that we approved. There was a previous amendment which, as I say, was deemed administerial, we did not approve.

Q. You say the board actually approved the change to eliminate the -- to assume the liability for Holdco?

A. Yeah. Because, again, it was a capped claim of 8.7 billion. They were released, Holdco was both released and wasn't going to be engaged in the process.

So, yeah, that was the recommendation of our advisors, both sets of legal advisors, both the MoFo team and the Morrison & Cohen team.

Q. At what point in time did this happen?

A. I believe our approval, we had a meeting, and we approved this in September.

Q. In September of, of this year?

A. 2000 -- yes.

135

1      JOHN MACK

2      Now, that's why this, the date
3  on this e-mail makes me question whether
4  this was the final.
5      Q.    Okay.  You approved the final
6  deal?
7      A.    We approved the final deal.  We
8  didn't approve any interim deals.
9      Q.    There was an interim deal that
10 provided for a Holdco, eliminated your
11 release and provided for a Holdco
12 election, a potential claim of
13 $1.7 million?
14     A.    I don't recall.
15     Q.    You didn't approve that deal?
16     A.    I don't recall.
17     Q.    Why did you approve any change
18 from the original deal that allowed ResCap
19 LLC to obtain a release?
20     MR. PRINCI:  Objection as to
21     form.
22     A.    Again, you are into a little bit
23 of a legal issue, and I relied on my
24 advisors with regard to the legal issues.
25 The economics didn't seem to change, to

```
                                                          148
 1                   JOHN MACK
 2        Q.    Mr. Mack, I'm Harrison Denman
 3   from White & Case, for the ad hoc group.
 4             Earlier you mentioned that you
 5   perceived your role as on behalf of the
 6   consolidated group of ResCap debtors; is
 7   that correct?
 8        A.    Correct.
 9        Q.    And how was that perception of
10   yours informed?
11        A.    Generally speaking, I mean
12   that's -- I am an independent director,
13   that is my profession now.  And I take
14   that view with all of my clients or the
15   companies that I work for, that is, I am a
16   director of the consolidated company, and
17   that is the company that I have the
18   fiduciary duty to.
19        Q.    So it was based --
20        A.    And that company is responsible
21   for all of its subsidiaries.
22        Q.    Okay.  So that conclusion was
23   not reached as the result of discussions
24   with counsel?
25        A.    No.  No, it's a view I hold
```