# EXHIBIT B

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

In Re:                                          Case No:

RESIDENTIAL CAPITAL, LLC, et. al,     12-12020(MG)

        Debtors.

-----------------------------------x

VIDEOTAPE DEPOSITION OF JEFFREY CANCELLIERI

New York, New York

November 14, 2012

2:03 p.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27647-B

                                                                        2

                    November 14, 2012

                    2:03 p.m.


              Deposition of JEFFREY

         CANCELLIERI, held at the offices of

         Kramer, Levin, Naftalis & Frankel,

         1177 Avenue of the Americas, New York,

         New York, pursuant to Notice, before

         Erica L. Ruggieri, Registered

         Professional Reporter and Notary

         Public of the State of New York.

42

1    JEFF CANCELLIERI
2    specifically where actual repurchase
3    claims were received.  Meaning we did not
4    calculate reserves on every private label
5    securitization that we issued.
6        Q.    So the reserve numbers that you
7    were calculating were strictly limited to
8    those repurchase requests, as opposed to
9    any other trusts that had not, in fact,
10   submitted repurchase requests?
11       A.    That's correct.
12       Q.    Are you aware of any repurchase
13   requests that were made, other than by
14   monolines?  To ResCap, excuse me.
15       A.    In the first quarter we had
16   repurchase requests come in from one deal,
17   at the direction of Deutsche Bank, who was
18   directed by one of the investors.
19       Q.    And that was the first quarter
20   of 2012?
21       A.    That was the first quarter of
22   2012.
23       Q.    Now, with respect to the trusts
24   that were part of the settlement that's at
25   issue here today, did you do any

75

1       JEFF CANCELLIERI

2       the proceedings.)

3           THE VIDEOGRAPHER:  The time is

4       3:24 p.m.  We are back on the record.

5           MR. MOLONEY:  Thank you.  Just

6       for the record I checked with the

7       videographer.  We have an hour and

8       seven minutes of testimony so far.

9       Q.    Mr. Cancelliere, I just want to

10      go back to a couple of points that we

11      talked about earlier.  I believe you

12      testified previously that you were aware

13      of a repurchase request made by a

14      nonmonoline in the first quarter of 2012,

15      correct?

16      A.    Yes.

17      Q.    So prior to the first quarter of

18      2012 are you aware of any repurchase

19      requests that were made in nonwrapped

20      deals?

21      A.    I am not.

22      Q.    And secondly, you indicated that

23      you provided a dollar range and defect

24      rate range to FTI, amongst others.  Once

25      you gave that information to them, did you

205

1         JEFF CANCELLIERI

2      Q.   And that was at the board

3  meeting before, before it concluded at

4  4:00 p.m., correct?

5      A.   As far as I can recall.

6      Q.   Do you recall if Mr. Marano ever

7  received any additional information?

8      A.   I don't recall.

9      Q.   Just give me one moment.

10         MR. DAILEY:  That's all I have

11     thank you.

12 EXAMINATION BY

13 MR. DOLAN:

14     Q.   Mr. Cancelliere, I'm Matt Dolan,

15 from Cleary Gottlieb, on behalf of

16 Wilmington Trust.

17         You previously testified that

18 you had a call with Kathy Patrick on

19 May 8th, during which you challenged a

20 number of assumptions that she had,

21 related to the defect rate?

22         MR. RAINS:  Misstates the

23     witness's testimony.

24     A.   I had a conversation with her

25 around their assumptions and discussed and

206

1        JEFF CANCELLIERI

2   challenged all of their assumptions.

3        Q.   And you also discussed and

4   challenged her use of the 36 percent Bank

5   of America default -- defect rate?

6        A.   In some form, yes.  And used

7   that information to provide our legal

8   team, who was working through the

9   negotiations, to have discussions with

10  Kathy Patrick.

11       Q.   So you relayed to the legal team

12  that you had challenged her use of that?

13       A.   I had relayed to the legal team

14  the items where I believe we could

15  challenge her assumptions.

16       Q.   And included in that list of

17  items was the 36 percent?

18       A.   It was all of her assumptions,

19  yes.

20       Q.   Was anyone else on that call,

21  besides you and Ms. Patrick?

22       A.   I believe David Sheeren, from

23  Kathy Patrick's side, was on the call as

24  well.

25       Q.   Do you know why you were on that

207

1  JEFF CANCELLIERI
2  call?
3      A.    Gary Lee had asked me to talk to
4  Kathy about her specific assumptions, to
5  get an idea of their calculated numbers.
6      Q.    And after that call, you relayed
7  to Gary Lee and others on the legal team
8  your concerns you had with her
9  assumptions?
10     A.    Yes.  I relayed to Gary Lee her
11 assumptions and potential concerns with
12 her assumptions.
13     Q.    And then you were shown a second
14 ago Exhibit 60, which is the board
15 presentation from May 9th.
16          Do you recall that?
17     A.    I do recall that.
18     Q.    And that presentation includes
19 the 36 percent Bank of America default
20 rate?
21          Do you recall that?
22     A.    It includes, yes, the baseline
23 Bank of America defect rate.
24     Q.    Was the board of directors of
25 ResCap ever informed that you had raised

208

1        JEFF CANCELLIERI
2   concerns about using that 36 percent
3   defect rate?
4        A.    I don't know.
5        Q.    But no -- you don't recall from
6   that --
7        A.    I don't recall from that
8   meeting.
9        Q.    Nothing, there was no discussion
10  of that?
11           MR. RAINS:  He says he doesn't
12       recall.
13       A.    I don't recall.
14       Q.    But as you previously testified,
15  that 36 percent was used as a comparison.
16  It was presented to the board as a
17  comparison to the 19.72 defect rate?
18       A.    That is correct, at the
19  direction of our legal counsel.
20           MR. DOLAN:  I don't have
21       anything else.  Thank you,
22       Mr. Cancelliere.
23           MR. RAINS:  Any other takers?
24           MR. SHEEREN:  David Sheeren from
25       Gibbs & Bruns.  Can we just take a