# EXHIBIT K

# In Re:
## *RESIDENTIAL CAPITAL, LLC, et al.*
## *Case No. 12-12020-mg*

*October 4, 2012*

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*

To purchase copies of this transcript, please contact us by phone or email



Min-U-Script® with Word Index

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


          Debtors.


- - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          October 4, 2012

          11:12 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

RESIDENTIAL CAPITAL, LLC, et al.                                        46

1  THE COURT:  The same thing.  You know, that's not the
2  same thing as saying he saw the document.
3  MR. MALONEY:  No, he may have seen the documents, but,
4  Your Honor, it goes to the same question as --
5  THE COURT:  You're overstating your position, Mr.
6  Maloney.
7  MR. MALONEY:  Right, and I apologize.  But let me cut
8  back to why I stood up besides pointing out we got zero
9  documents.  It's the same story of self-selection by Mr. Mack
10 of what was relevant, as best I can tell from the meet and
11 confer, rather than the lawyer looking to prove his documents.
12 And Rule 26, lawyers have to certify that the production is
13 reasonable.  You can't do this.
14 MR. PRINCI:  Your Honor, we'd be happy to continue to
15 speak to the debtors' counsel about this.  If it requires
16 briefing -- we don't believe that the case cited is the
17 standard, but if it requires briefing we'll brief the issue for
18 the Court.  I'd like my partner Mr. Rains though to address the
19 specific allegations about our document production not being
20 complete or timely.  So, Mr. Rains, if you can address the
21 Court on that please?
22 MR. RAINS:  Thank you, Tommy.  Good morning, Your
23 Honor, I apologize for finding myself stuck on the West Coast
24 today.  Just a couple of quick points.  I'm not sure I captured
25 every criticism, but let me hit the highlights if I can.

First, the April 1 cut-off is a date range that we applied for our e-mail searches, and we did it for the simple reason that our review of the documents shows that the negotiations began on April 16, and that's based on documents that the creditors' committee has. So, based on our review of documents and our confirmation that the negotiations began in April we began our searches on April 1st.

Search terms. Yes, we used domain names for the -- well, let me back up. There are two ways to collect emails for some groups of people including the people at my law firm. We went to our IT department and actually collected all e-mails in their mailboxes, and as to those people we applied search terms. The search terms we used for the lawyers in our firm were largely e-mail addresses and domain names, which, as the Court can imagine, are much more inclusive than subject matter search terms. We searched for all communications to anyone who could have been involved in the settlement process. That is the search that we ran, adding search terms on subject matter to that would produce subsets, but subsets are the documents we've already produced.

As to other people such as consultants, FTI and Centerview, in particular, we did begin by interviewing them and asking them where they stored documents relevant to the settlement process. As you can imagine, they are involved in many activities for the debtor, most of which have nothing to