# EXHIBIT N

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

In Re:                                  Case No.

RESIDENTIAL CAPITAL, LLC, et. al,    12-12020(MG)

        Debtors.

-----------------------------------x

VIDEOTAPE DEPOSITION OF JOHN RUCKDASCHEL

New York, New York

November 8, 2012

9:37 a.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27643

```
                                                              2
 1
 2
 3
 4                     November 8, 2012
 5                        9:37 a.m.
 6
 7          Deposition of JOHN RUCKDASCHEL,
 8    held at the offices of Kramer, Levin,
 9    Naftalis & Frankel, 1177 Avenue of the
10    Americas, New York, New York, pursuant to
11    Notice, before Erica L. Ruggieri,
12    Registered Professional Reporter and
13    Notary Public of the State of New York.
14
15
16
17
18
19
20
21
22
23
24
25
```

36

1        JOHN   RUCKDASCHEL
2    made by the seller.  They are passed to
3    the depositor and then passed to the -- to
4    the trust.  So one of the -- if somebody
5    sends you a loan and says you need to
6    repurchase this loan because, because it
7    defaulted, the first response would be,
8    well, what representation or warranty are
9    you suggesting that this loan breaches.
10   Because you would not, you would not
11   repurchase a loan that doesn't -- that
12   doesn't breach a rep or warranty.  So that
13   would be, you know, that would be an
14   example of the document based discussion.
15        Q.    Is that a defense that it didn't
16   breach a representation or warranty?
17        A.    If the person who is throwing
18   the loan over the fence saying, you know,
19   buy this loan back cannot point to a
20   representation or warranty that's been
21   breached, the depositor and the sponsor
22   actually cannot repurchase the loan.  It
23   does not trigger the repurchase
24   obligation.
25        Q.    And this is even if the loan has

37

```
 1                JOHN   RUCKDASCHEL
 2    defaulted?
 3         A.    Even if the loan has defaulted.
 4    There's not -- there's not a guarantee put
 5    on the transaction.
 6         Q.    What other defenses did you
 7    raise?
 8         A.    So another example of -- and
 9    this won't come as a surprise to any of
10    the securitization folks, there's the
11    concept of loss causation.  That even if,
12    even if you say a plaintiff or just a
13    counterparty says here's a loan, you need
14    to buy it back, it has defaulted, you
15    know, because it has breached the
16    representation or warranty and the breach
17    in question has nothing to do with the
18    default, the argument is that, well, the
19    loss in question was not caused by the
20    default, it was caused because the
21    borrower, you know, lost his job, you
22    know, got sick.  Those sorts of things.
23         Q.    And in that situation you
24    wouldn't repurchase the loan?
25         A.    The -- the argument is that no,
```

38

1         JOHN   RUCKDASCHEL

2    we would not.  The sponsor and depositor

3    would not have to repurchase the loan

4    under those circumstances because the

5    breach in question did not cause the loss.

6        Q.    In your time at ResCap, are you

7    aware if ResCap did repurchase some loans

8    under this rule or did they refuse to

9    purchase loans which didn't show loss

10   causations while you were there?

11       A.    I don't have, you know, personal

12   knowledge of that.  But my understanding

13   is that, you know, we have a repurchase

14   group and the repurchase group would not

15   repurchase a loan where the -- the loss

16   was not caused by a breach of a

17   representation or warranty.  You know, the

18   classic example is there's supposed to be

19   some document in the file.  You can't find

20   the document.  But the borrower has --

21   has defaulted because they lost their job.

22   Well, a missing document has nothing to do

23   with the default in question.

24       Q.    And you weren't the person in

25   charge of putting numbers to any of these

142

JOHN  RUCKDASCHEL

2    A.    The --

3          MR. RAINS:  Wait for a question.

4          THE WITNESS:  Okay.  Sorry.

5    Q.    Did you understand Mr. Devine in
that conversation to be representing Ally
or ResCap?

8    A.    As I said earlier, my
understanding is that in the RMBS
settlement discussions that Tim was
representing Ally.

12   Q.    Do you recall Mr. Devine's
response to your indemnification issue
that you raised?

15   A.    I don't -- I don't recall the
specifics.

17   Q.    Do you recall if he agreed or
disagreed?

19   A.    I think he -- I think he agreed
with me that it was -- it was a good idea
but as I recall I think it wasn't
something that we were -- that the parties
wanted to, you know, have the deal fall
apart just on a trustee indemnity issue.

25   Q.    So it wasn't drop dead for the