# EXHIBIT V

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

In Re:                              Case No.

RESIDENTIAL CAPITAL, LLC, et. al,    12-12020(MG)

          Debtors.

------------------------------------x

VIDEOTAPE DEPOSITION OF JOHN MACK

New York, New York

November 14, 2012

9:53 a.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27647-A

2

1

2

3

4              November 14, 2012

5              9:53 a.m.

6

7

8         Deposition of JOHN MACK, held at

9    the offices of Kramer, Levin, Naftalis

10   & Frankel, 1177 Avenue of the

11   Americas, New York, New York, pursuant

12   to Notice, before Erica L. Ruggieri,

13   Registered Professional Reporter and

14   Notary Public of the State of New

15   York.

16

17

18

19

20

21

22

23

24

25

41

                    JOHN MACK

1  steps to protect against the risk that I

2  just identified?

3        MR. PIEDRA:  Objection to form.

4        MR. PRINCI:  Objection as to

5     form.

6     A.    Could you -- I'm not sure I

7  understand your question.

8     Q.    Okay.  I identified what I

9  believe is a risk, which is, which is that

10 to the extent that AFI controlled the

11 negotiations with Ms. Patrick, their

12 primary objective would be to obtain a

13 settlement, rather than a lower claim.

14 And I'm asking whether the board took any

15 steps to protect against that risk.

16       MR. PRINCI:  Objection, assumes

17    a facta not in evidence.  Object to

18    the form.

19       But if you understand the

20    question, you may answer.

21    A.    Well, I can't speak for AFI.  I

22 can only say that at ResCap, I didn't know

23 AFI was having conversations with

24 Ms. Patrick.  I had no idea.

43

JOHN MACK

1

2      Q.     What about K&E and Timothy

3   Devine, did you view them as your lawyers

4   or as AFI's lawyers or something else?

5          MR. PRINCI:  Objection as to

6      form.

7      A.     AFI's lawyers.

8          MR. PRINCI:  Excuse me one

9      second.  Just pause for one second,

10     Tom.

11         MR. MOLONEY:  Wait a second.

12     You can just tell them that he needs

13     to wait -- I'll put it on the record

14     that you need to wait to allow

15     Mr. Princi to state his objection.

16         I think we should note now that

17     counsel is conferring with the

18     witness, and it's not appropriate.

19     Q.     What did you understand Timothy

20   Devine's position to be?

21     A.     I don't know Timothy Devine.

22     Q.     Okay.  Do you know whether or

23   not he had a role in negotiating the RMBS

24   deal with Ms. Patrick?

25     A.     No.

44

                        JOHN MACK

1

2        Q.    Did it concern you, if he was

3    the chief of litigation for AFI, and he

4    took the lead in the settlement

5    negotiations and negotiated material terms

6    of the RMBS with Kathy Patrick, without

7    the involvement of Morrison & Foerster?

8              MR. PIEDRA:  Objection to form.

9              MR. PRINCI:  Objection to form.

10             MR. MOLONEY:  Noted.

11       Q.    You may answer.

12       A.    Generically speaking, yes, I

13   would not understand that.

14       Q.    As of May 2012, was there any

15   real connection between the amount that

16   the ResCap board was going to require AFI

17   to contribute to a Chapter 11 resolution

18   and the size of the RMBS claim that was

19   negotiated with Ms. Patrick?

20       A.    No.

21       Q.    So at least as of May 2012,

22   there was no additional cost to AFI in

23   agreeing to a larger claim from

24   Ms. Patrick's clients, in return for an

25   AFI release, correct?

53

```
 1              JOHN MACK
 2         I'm asking, did you ever get an
 3    explanation of what litigation defenses
 4    might be available to ResCap to defend
 5    against these potential claims?
 6         MR. PIEDRA:  Object to the form.
 7    A.    No.
 8    Q.    For example, were you ever
 9    informed that a number of the claims could
10    be eliminated, due to statute of
11    limitations defenses?
12         MR. PRINCI:  Just to the extent
13         that you were informed of any such
14         thing by counsel, then I'm going to
15         direct you not to answer.
16         MR. MOLONEY:  Okay.  I'm just
17         withdrawing my question.  We will go
18         on to another area.
19    Q.    Now, if we look at the -- before
20    we leave this page, if we look at the
21    number 400, that's -- this estimate
22    includes securities litigation, right?
23    A.    Yes, it says so.
24    Q.    Okay.  Thank you.
25         And now, going on in the same
```

57

JOHN MACK

1

2      Q.    Okay.  Now, did anyone tell you

3      that this was really a low ball estimate,

4      the zero to $4 billion, that it was

5      really, the real liability, potential

6      liability was substantially higher --

7              MR. PIEDRA:  Object to the form.

8      Q.    -- as of this point in time?

9      A.    No.

10     Q.    On the audit committee you

11     wouldn't have approved making this

12     disclosure, if you thought that was the

13     case, right?

14     A.    That is correct.

15     Q.    So you thought the reason, to

16     use the words, going back to what we

17     looked at before, you thought that the

18     reasonable possible losses for ResCap

19     could not possibly exceed $4 billion,

20     correct?

21             MR. PIEDRA:  Objection to form.

22             MR. PRINCI:  Objection as to

23         form.

24             MR. MOLONEY:  Let me rephrase.

25     Q.    You thought that, based on

58

1          JOHN MACK

2    reasonable possibilities, the outside

3    level of exposure for ResCap, with respect

4    to these R&W claims, including securities

5    claims, was $4 billion, right?

6          MR. PRINCI:  Objection as to

7       form.

8          MR. PIEDRA:  Object to form.

9       A.    In an accounting sense, that is

10   correct.

11      Q.    In what other sense is it not

12   correct, if any?

13         MR. PIEDRA:  Object to the form.

14         MR. PRINCI:  Objection as to

15      form.

16      A.    Well, there are rules about how

17   you put together an account, a number that

18   you would put in your financial

19   statements.  It would conform, this number

20   would conform to those rules.

21      Q.    The $4 billion was not that

22   rule.  There's another number in this

23   financial statement that's that rule,

24   right?

25         If you look at page 47 of the

59

1                    JOHN MACK

2      financial statements, and you look at the

3      actual reserves on page 47, which is the

4      column on page 47, that $824 million

5      reserve is the number that conforms with

6      the rules, right?

7               MR. PRINCI:  Excuse me.

8               MR. PIEDRA:  Objection to form.

9               MR. PRINCI:  Just hold on.  I

10         need to look at what he's referring

11         to.

12      A.    I don't see it.

13      Q.    You see on page 47, you see that

14      table?

15               Maybe it would be helpful, if

16      you look at page 46 at the bottom, you'll

17      see the explanation, it says, "Liability

18      for rep and warranty obligations."

19               The actual accounting reserve

20      being taken was, at this point in time,

21      810,805,000, right?

22               MR. PIEDRA:  Objection to form.

23      A.    Yes, that's what it says.

24      Q.    So the $4 billion number was not

25      the actual accounting number, that was

60

JOHN MACK

1
2  some other number, which was really based

3  on the prior -- the beginning of this

4  exhibit was the reasonable possible losses

5  that you could expect, the outside range.

6  The farthest end of the outside range of

7  reasonable possible losses was $4 billion,

8  right?

9        MR. PRINCI:  Objection to form.

10        Do you understand the question?

11        MR. KAUFMAN:  I just want to

12    interject.

13        MR. MOLONEY:  Please, nobody

14    interject.  Let him answer.  He's

15    about to answer.  Let him answer the

16    question.

17        Go ahead.

18    A.    $4 billion was the upper end of

19    the range.

20    Q.    Thank you.

21        MR. KAUFMAN:  May I now make my

22    comment?

23        MR. MOLONEY:  I wish you

24    wouldn't, but go ahead.

25        MR. KAUFMAN:  I think that it is

62

1                          JOHN MACK

2          Q.    And this is a meeting to settle

3     the same claims we have just been talking

4     about, right?

5          MR. PRINCI:  Objection as to

6          form.  It misstates -- excuse me.  It

7          assumes facts not in evidence.

8          Q.    You may answer.

9          A.    It's where the board discussed

10    the R&W settlement, yes.

11         Q.    Now, did you attend the meeting?

12         A.    Yes, telephonically.

13         Q.    Telephonically, okay.

14               And prior to -- did you receive

15    materials?

16         A.    Yes.

17         Q.    And prior to attending the

18    meeting, were you aware that an agreement

19    had been reached with Ms. Patrick's group

20    along the lines that were disclosed at the

21    meeting?

22         MR. PRINCI:  Objection as to

23         form.

24         A.    No.

25         Q.    You didn't get a heads up from

63

JOHN MACK

anyone, saying, look, we reached a deal,

this is the terms, before the meeting?

    MR. PRINCI:  Objection as to

form.

    A.    That is correct.  I did not get

an advanced briefing.

    Q.    Okay.  So when you saw that the

settlement amount was $8.7 billion, did

that number surprise you?

    MR. PIEDRA:  Objection to form.

    MR. PRINCI:  Objection as to

form.

    A.    No.

    Q.    Why weren't you surprised by a

number that was twice as high as the

number in the highest possible range of

outcomes you were given only a week

before?

    MR. PIEDRA:  Objection to form.

    MR. PRINCI:  Objection to form.

Misstates the facts.

    MR. MOLONEY:  Noted.

    Q.    You may answer.

    A.    Well, the numbers aren't apples

66

JOHN MACK

1   $4 billion was an estimate, but this was a

2   negotiated number, the 8.7?

3       A.    Correct.

4       Q.    Now, it wasn't determined by a

5   court that ResCap was liable for $8.7

6   billion, right?

7       A.    That is correct.

8       Q.    So it was just determined by two

9   human beings who negotiated a number, $8.7

10  billion, right?

11          MR. PRINCI:  Objection as to

12      form.

13      A.    It was a negotiated number.

14      Q.    Who were the two people who

15  negotiated the number?

16          MR. PRINCI:  Objection as to

17      form.

18      A.    Our advisors from MoFo, and

19  Kathy Patrick, representing the investors.

20      Q.    Now, the person who was

21  representing you, your advisor for MoFo,

22  you would think that they should negotiate

23  a number that's consistent with what they

24  think are their potential liabilities, if

67

JOHN MACK

1

2  they go to court, right?

3        MR. PIEDRA:  Objection to form.

4        MR. PRINCI:  Objection as to

5  form.

6     A.   No.

7     Q.   No?  Why?

8     A.   They can negotiate a number that

9  is in the best interests of trying to get

10  a transaction accomplished.

11    Q.   Even if it doesn't bear any

12  resemblance to what the outcome would be,

13  if the case was actually tried in court?

14        MR. PIEDRA:  Objection to form.

15    A.   I don't know that it would or

16  wouldn't bear any resemblance to what the

17  actual number would be.  I couldn't

18  predict the future like that.

19    Q.   Did you get any guidance at the

20  board meeting as to what the number would

21  be, if this claim was actually litigated

22  rather than settled?

23    A.   No, not that I recall.

24    Q.   So this was just a number needed

25  to do a transaction, is what you are

68

1                      JOHN MACK

2       saying, like an M&A deal?

3              MR. PIEDRA:  Objection to form.

4              MR. PRINCI:  Objection as to

5          form.

6       A.      No.

7       Q.      How was it different?

8       A.      It was different, because we

9       were, we thought the number was -- well,

10      it was, by evidence, lower than two other

11      settlements, one of which Ms. Patrick had

12      been engaged with.  That was the Bank of

13      America.  And it was within the range of

14      defects that we his -- we, ResCap,

15      historically had.  It was kind of the

16      midpoint of that range.  So in a market

17      sense, it seemed to be a reasonable

18      number.

19      Q.      Other than those two criteria,

20      were there any other criteria that you

21      relied on, in terms of approving the

22      settlement?

23             MR. PIEDRA:  Object to the form.

24             MR. PRINCI:  Objection as to

25          form.

69

JOHN MACK

1

2   A.    Not that I recall at the time.

3   Q.    Okay.  Let's see if we can

4   understand whether it's lower than the

5   BofA settlement.

6

14  Q.    Okay.  And now, when we looked

15  at Exhibit -- the prior exhibit, there was

16  also a further discount of the number for

17  legal defenses.

18        Do you recall seeing that?

19  A.    Uh-hum, uh-hum.

20  Q.    Was a legal defense discount

21  applied to the number that's on this page?

22        MR. PIEDRA:  Object to the form.

23  A.    Not that I recall.

24  Q.    Okay.  So no consideration of

25  legal defenses?

70

1              JOHN MACK

2         MR. PIEDRA:  Objection to form.

3         MR. PRINCI:  Objection.

4     A.    No, I don't think that was part

5     of what my consideration was.

6     Q.    Now, you say it was less than

7     the BofA settlement; is that what you are

8     telling us?

9     A.    The defect rate, our defect

10    rate.

11    Q.    I know your defect rate.  But

12    the settlement amount actually was,

13    ironically, more than the BofA settlement,

14    right?

15        MR. PIEDRA:  Objection to the

16        form.

17    Q.    BofA settled for $8.5 billion,

18    we saw in the prior exhibit.

19        MR. PIEDRA:  Do you want an

20        answer to the last question?

21        MR. PRINCI:  Which question do

22        you want him to answer?

23    Q.    The settlement amount proposed

24    to be paid by ResCap is actually more than

25    the amount proposed to be paid by BofA to

108

JOHN MACK

2    apples and oranges.  Let's see if we can

3    ████████████████     ████████████████

     ████████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████

7       A.    Okay.

8       Q.    So just kind of retrace it.

9       A.    To my knowledge, no part of the

10   Ally settlement has been allocated to

11   anybody.

12      Q.    You certainly as a board didn't

13   make a judgment that -- that weighing the

14   relative merits of the claims of -- that

15   belonged to ResCap LLC versus other claims

16   that might belong to other entities that

17   ████████████████████████████████████████

     ████████████████████████████████████████

     ████████████

20          MR. PRINCI:  Objection as to

21      form.

22      Q.    You didn't make that judgment,

23   right?

24      A.    We did not make that judgment.

25      Q.    Now, did you understand that as

109

JOHN MACK

1   part of the settlement that was approved,

2   the $8.7 million settlement, that you were

3   also settling securities claims?

4       A.   Yes, it was reps and warranties

5   and securities claims.

6       Q.   At any point in time did you

7   ever learn that securities claims were not

8   being picked up by this $8.7 billion

9   settlement?

10      A.   No.

11      Q.   So as far as you are concerned,

12  the board has not approved the deal that

13  does not resolve securities claims as part

14  of the $8.7 billion payment?

15          MR. PRINCI:  Objection as to

16      form.

17      A.   This is a slightly technical

18  matter.  I don't know.

19      Q.   Okay.

20          (9019 Exhibit 100, e-mail with

21      attachment, Bates RC 40088324-337,

22      marked for identification, as of this

23      date.)

24      Q.   Please look at Exhibit 100 in

131

JOHN MACK

2   presented an 8 or $9 billion claim against

3   Ally that is now totally gone."

4           Do you see that statement?

5   A.    Yes.

6   Q.    What knowledge, if any, do you

7   have of an 8 to $9 billion claim that

8   ResCap presented to Ally?

9   A.    I would have to speculate that

10  in an early meeting between MoFo and K&E,

11  that that would have been a number that we

12  presented them.

13  Q.    Did MoFo -- did you ever present

14  an 8 or $9 billion ask?

15  A.    Did I?  No.

16  Q.    Why not?

17          MR. PRINCI:  Objection as to

18  form.

19  A.    These are legal matters.  I'm

20  not going to discuss legal matters with

21  principals.

22  Q.    Okay.  So you weren't settling

23  legal claims?

24  A.    No.

25          MR. PRINCI:  Objection as to

168

```
 1                    JOHN MACK
 2   of the companies.
 3        Q.    Who told you it was an
 4   $8.7 billion obligation of ResCap LLC?
 5        A.    It was described that way when
 6   the document was presented.
 7        Q.    Apart from it being in the
 8   document, were you ever told there was a
 9   legal basis for ResCap LLC to have any
10   liability here?
11             MR. PRINCI:  Objection as to
12        form.
13             Do you understand the question?
14             THE WITNESS:  I'm not sure.
15        Because if it's a legal issue, I
16        don't -- the answer is I wasn't.
17             MR. MOLONEY:  I'm finished.
18        Thanks.
19             MR. PRINCI:  Thank you.
20             MR. BULL:  Before we go off the
21        record, this is Nathan Bull again.  I
22        just want to make clear you are
23        precluding me from asking questions
24        without a basis, and we reserve our
25        rights to follow up.
```