**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee of Certain Mortgage-Backed Securities Trusts*

**DECHERT LLP**
Hector Gonzalez
Glenn E. Siegel
Mauricio A. Espana
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Dale C. Christensen, Jr.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of New York, as Separate Trustee of Certain Mortgage-Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |

**RMBS TRUSTEES' STATEMENT REGARDING**
**DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019**
**FOR APPROVAL OF RMBS TRUST SETTLEMENT AGREEMENTS**

The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust

Company Americas, Deutsche Bank National Trust Company, U.S. Bank National Association

and Law Debenture Trust Company of New York,[1] solely in their respective capacities as trustees or indenture trustees for certain mortgage backed securities trusts (collectively, the "**RMBS Trustees**"), hereby submit this statement (the "**Statement**")[2] regarding the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (as supplemented, the "**9019 Motion**")[Docket No. 320].[3]  This Statement, moreover, is submitted in furtherance of this Court's request at the October 10, 2012 Omnibus Hearing that the RMBS Trustees advise the Court of their views of the RMBS Trust Settlement in advance of the hearing on the 9019 Motion. Oct. 10, 2012 Tr. at 38.  In submitting this Statement, the RMBS Trustees expressly reserve their rights to respond more fully to the 9019 Motion, including, without limitation, to reply to any objections filed to the 9019 Motion.

        1.        With the assistance of their counsel working with Duff & Phelps LLC ("**Duff**"), a well respected and well qualified financial advisor, the RMBS Trustees conducted an analysis of the RMBS Trust Settlement, with particular focus on the quantum of Repurchase Claims (defined below), the amount of the proposed Allowed Claim (defined below) and the

---

[1] By Orders issued by the District Court, Fourth Judicial District, State of Minnesota, dated November 8, 2012, Law Debenture Trust Company of New York was appointed Separate Trustee for certain mortgage-backed securities trusts for which Wells Fargo Bank, National Association is trustee for the purpose of, *inter alia*, pursuing the claims covered by the RMBS Settlement Agreements.

[2] The RMBS Trustees file this Statement solely in their capacity as trustees of the RMBS Trusts and not, in the case of all of the RMBS Trustees other than Law Debenture Trust Company of New York, in any of their capacities as members of the Official Committee of Unsecured Creditors ("**Committee**").  Law Debenture Trust Company of New York is not a member of the Committee.

[3] The 9019 Motion has been twice supplemented, first by the Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for the Approval of the RMBS Trust Settlement Agreements [Docket No. 1176] and second by the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements [Docket No. 1887].  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 9019 Motion, as supplemented.

allocation of that claim among the Settling Trusts (defined below), including a review of the objections to the 9019 Motion.

2.    Based upon that analysis, the RMBS Trustees have determined that the Allowed Claim falls within a reasonable range to resolve the Settling Trusts' Repurchase Claims and the Debtors' proposed revised methodology for allocating the Allowed Claim among the Settling Trusts is fair and equitable to those trusts.

## BACKGROUND

3.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the Petition Date, the Debtors' business operations included originating and purchasing residential mortgages. The Debtors' business operations also included securitizing or selling substantially all of the mortgage loans they purchased or originated. Prior to the collapse of the mortgage industry in 2007, the Debtors were active sponsors of private label securitizations, which they pooled into securitization trusts and also contributed loans and provided servicing to private label securitizations sponsored by third parties (collectively, the "**PLS Trusts**"). The RMBS Trustees are trustees for hundreds of PLS Trusts, which the RMBS Trustees believe currently contain in excess of $100 billion in principal amount of mortgage loans serviced by Debtor entities.

4.    Each PLS Trust was formed pursuant to either a "Pooling and Servicing Agreement" or pursuant to a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements," which, when combined, provided for administration of trust assets and the related RMBS. For convenience of reference

herein, the integrated contract governing each PLS Trust will be referred to herein as a "PSA," even if the arrangements are memorialized in one or more differently styled contracts.

5. Each PSA specifies the rights and obligations of the Debtors, the RMBS Trustees and investors and, as applicable, other parties in interest to the specific transaction. The RMBS Trustees hold several different types of claims against the Debtors under the PSAs arising from the Debtors' obligations in their capacities as originator and as servicer. Among other claims, the RMBS Trustees have repurchase claims against the Debtors on account of any defective mortgage loans sold by the Debtors to the PLS Trusts (the "**Repurchase Claims**"). According to the Debtors' estimates, the Repurchase Claims "represent tens of billions of dollars in potential contingent claims against the Debtors' estates." 9019 Motion ¶ 1.

## THE 9019 MOTION

6. On June 11, 2012, the Debtors' filed the 9019 Motion, in which they seek entry of an order approving the compromise and settlement of potential Repurchase Claims against the Debtors held by certain of the PLS Trusts (the "**Settling Trusts**") by providing allowed claims of up to $8.7 billion against certain Debtors that acted as "Depositors" and "Sellers" of mortgage loans (including Residential Funding Company, LLC and GMAC Mortgage LLC) (the "**Allowed Claim**") to be offered to and allocated among the Settling Trusts in accordance with the terms and conditions of the RMBS Trust Settlement. The 9019 Motion contemplates that the Allowed Claim will be allocated (the "**Claim Allocation Methodology**") among the Settling Trusts by an independent expert "based on net expected lifetime losses among the accepting Trusts, including expected lifetime claims to be paid by the monoline insurers on the securitizations they insured." 9019 Motion ¶ 18.

4

7.      As described in the 9019 Motion, the Debtors did not negotiate the RMBS Trust Settlement with the RMBS Trustees; rather, the Debtors and two groups of investors (the "**Institutional Investors**") negotiated the RMBS Trust Settlement in the period leading up to the Petition Date. *See* 9019 Motion ¶ 3. As a result, the 9019 Motion contemplates that if the Debtors are authorized to propose the RMBS Trust Settlement, the RMBS Trustees would evaluate the reasonableness and appropriateness of the RMBS Trust Settlement and determine whether to accept or reject it on behalf of the Settling Trusts in accordance with the RMBS Trustees' rights and duties under the PSAs.

### THE RMBS TRUSTEES' EVALUATION OF THE RMBS TRUST SETTLEMENT

8.      Following the filing of the 9019 Motion, the RMBS Trustees engaged Duff to advise the RMBS Trustees regarding whether the RMBS Trust Settlement is a fair and reasonable settlement of the Settling Trusts' Repurchase Claims.

9.      The RMBS Trustees, after consulting with Duff, asked the Debtors and the Institutional Investors to adjust the Claim Allocation Methodology. Though they advised the RMBS Trustees of their view that the existing formula was both adequate and reasonable, the parties to the RMBS Trust Settlement were amenable to the RMBS Trustees' requested change, which we understand will be embodied in an amendment (the "Revised Claim Allocation Methodology"). Given time constraints, however, the Debtors have not had the opportunity to file that amended RMBS Trust Settlement as of the date of this Statement.[4] Based on that agreement, the RMBS Trustees do not object to the allocation formula.

---

[4]    If the Debtors fail to amend the RMBS Trust Settlement to incorporate the Revised Claim Allocation Methodology, the RMBS Trustees expressly reserve their right to object to the 9019 Motion on that basis.

5

10. After careful consideration of relevant factors and analysis, including (a) the results of its review of a statistically significant number of loan files in the Settling Trusts provided by the Debtors, (b) the estimation of projected total collateral losses and underwriting breach rates in the Settling Trusts, (c) the estimation of likely agree rates with respect to the Settling Trusts (which take into account the litigation risk associated with the relative characteristics of the breach), and (d) consideration of causality factors (which take into account the litigation risk associated with a lack of causal relationship between the breach and loss), Duff advised the RMBS Trustees that the amount of the Allowed Claim is within a reasonable range to settle the Settling Trusts' Repurchase Claims, and that the Revised Claim Allocation Methodology would fairly allocate the Allowed Claim among the Settling Trusts.

11. The objections to the 9019 Motion do not alter the advice that Duff provided to the RMBS Trustees. The RMBS Trustees believe that the Revised Claim Allocation Methodology addresses the objections filed to the Debtors' Claim Allocation Methodology because it sufficiently accounts for the differences among the characteristics of each Settling Trust. Moreover, the legal defenses to the Repurchase Claims asserted by certain of the objectors do not alter the Duff analysis, nor the conclusion of the Trustees of the reasonableness of the RMBS Settlement.

## CONCLUSION

12.     Assuming no changes in the facts and controlling law underlying the Repurchase Claims, and subject to the RMBS Trustees' determination that all provisions of the RMBS Trust Settlement are fair, equitable and reasonable to the Settling Trusts, the RMBS Trustees have determined that the Allowed Claim falls within a reasonable range to resolve the Settling Trusts' Repurchase Claims and the Debtors' proposed Revised Claim Allocation Methodology for allocating the Allowed Claim among the Settling Trusts is fair and equitable to those trusts.

**[REMAINDER OF PAGE INTENTIONALLY OMITTED]**

Dated: December 14, 2012
      New York, New York

Respectfully submitted,

| **MORGAN, LEWIS & BOCKIUS LLP** | **DECHERT LLP** |
|---|---|
| By: ___s/James L. Garrity, Jr._____<br>James L. Garrity, Jr.<br>John C. Goodchild, III (*pro hac vice*)<br>101 Park Avenue<br>New York, New York 10178-0600<br>Telephone: (212) 309-6000<br>Facsimile: (212) 309-6001 | By: ___s/Hector Gonzalez_____<br>Hector Gonzalez<br>Glenn E. Siegel<br>Mauricio A. Espana<br>1095 Avenue of the Americas<br>New York, New York 10036-6797<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599 |
| *Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee of Certain Mortgage-Backed Securities Trusts* | *Counsel to The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts* |
| **SEWARD & KISSEL LLP** | **SEWARD & KISSEL LLP** |
| By: ___s/Dale C. Christensen, Jr._____<br>Dale C. Christensen, Jr.<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421 | By: ___s/Mark D. Kotwick_____<br>Mark D. Kotwick<br>Ronald L. Cohen<br>Arlene R. Alves<br>One Battery Park Plaza<br>New York, New York 10004<br>Telephone: (212) 574-1200<br>Facsimile: (212) 480-8421 |
| *Counsel to Law Debenture Trust Company of New York, as Separate Trustee of Certain Mortgage-Backed Securities Trusts* | *Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts* |