1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - - - - - - - - -x

4  In the Matter of:          Case No. 12-12020-mg

5  RESIDENTIAL CAPITAL, LLC, et al.,

6             Debtors.

7  - - - - - - - - - - - - - - - - - - - -x

8  In the Matter of:          Case No. 12-12019-mg

9  RESIDENTIAL CAPITAL FUNDING COMPANY, LLC, et al.,

10             Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12  BURNETT,

13                  Plaintiff,

14      -against-              Adv. Proc. No. 12-02049-mg

15  GMAC MORTGAGE, LLC,

16                  Defendant.

17  - - - - - - - - - - - - - - - - - - - -x

18  WILLIAMS,

19                  Plaintiff,

20      -against-              Adv. Proc. No. 12-01896-mg

21  GMAC MORTGAGE, LLC,

22                  Defendant.

23  - - - - - - - - - - - - - - - - - - - -x

24

25

1  - - - - - - - - - - - - - - - - - - - -x

2  VAN WAGNER,

3                       Plaintiff,

4        -against-                    Adv. Proc. No. 12-01913-mg

5  RESIDENTIAL FUNDING COMPANY, LLC, ET, AL.,

6                       Defendants.

7  - - - - - - - - - - - - - - - - - - - -x

8  JENKINS, ET AL.,

9                       Plaintiffs,

10       -against-                    Adv. Proc. No. 12-01935-mg

11  RESIDENTIAL FUNDING COMPANY, LLC, ET, AL.,

12                       Defendants.

13  - - - - - - - - - - - - - - - - - - - -x

14

15

16               United States Bankruptcy Court

17                One Bowling Green

18                New York, New York

19                January 29, 2013

20                10:11 AM

21

22

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1

2  Adversary proceeding: 12-02049-mg   Burnett v. GMAC MORTGAGE,

3  LLC  Adjourned Pre-trial Conference

4

5  Adversary proceeding: 12-01935-mg  Jenkins et al v. Residential

6  Funding Company, LLC et al.  (CC: Doc no. 1)

7  Pre-trial Conference

8

9  Adversary proceeding: 12-01896-mg Williams v. GMAC Mortgage LLC

10  (Successor by Merger to GMAC Mor

11  (CC: Doc no. 1) Adjourned Pre-trial Conference.

12

13  (CC: Doc# 7) Motion for Dismissal of Adversary Proceeding

14  Pursuant to Bankruptcy Rule 7012(b)(5) and (b)(6) Or, in the

15  Alternative, Permissive Abstention Pursuant to 28 U.S.C.

16  Section 1334(c)(1) (related document(s)3)

17

18  12-12020-mg   Residential Capital, LLC    Ch. 11

19  Adversary proceeding: 12-01913-mg   Van Wagner v. Residential

20  Funding Company, LLC, et, al., et al.

21  (CC: Doc no. 1) Pretrial Conference.

22

23

24

25

1

2  Adversary proceeding: 12-01913-mg Van Wagner v. Residential

3  Funding Company, LLC, et, al., et al.

4  (CC: Doc no 7, 9) Motion for Dismissal of Adversary Proceeding

5  Pursuant to Bankruptcy Rule 7012(b) and FRCP 12(b)(5), and (6)

6  Or, in the Alternative, Permissive Abstention Pursuant to 28

7  U.S.C. Section 1334(c)(1).

8

9  (CC: Doc# 10) Motion to Dismiss Adversary Proceeding

10  12-12020-mg   Residential Capital, LLC    Ch. 11

11  (CC: Doc# 2255) Motion to Dismiss Case filed by Kiyam J.

12  Poulson.

13

14  Adversary proceeding: 12-01913-mg Van Wagner v. Residential

15  Funding Company, LLC, et, al., et al.

16  (CC: Doc# 15) Motion to Dismiss Case

17

18  (CC: Doc no. 20) Motion to Dismiss Case filed by David A.

19  Abrams on behalf of Peter T. Demasters, Flaherty, Sesabaugh,

20  Bonasso PLLC, Susan Romain.

21

22

23

24

25

1

2   12-12020-mg   Residential Capital, LLC     Ch. 11

3   (CC: Doc# 2630) Debtors Motion for Order Under 11 U.S.C. 105(a)

4   and 365(a), Fed. R. Bankr. P. 6006 and 9014 and Local

5   Bankruptcy Rule 6006-1 Authorizing Assumption and Assignment of

6   Executory Contract.  Certificate of No Objection has Been

7   Filed.

8

9   Doc# 2687 Motion to Assume Leases or Executory Contracts /

10  Debtors Second Motion for Order Under 11 U.S.C. 105(a) and

11  365(a) and (f), Fed. R. Bankr. P. 6006 and 9014 and Local

12  Bankruptcy Rule 6006-1 Authorizing Assumption and Assignment of

13  Executory Contracts In Connection with the Sale of the Debtors

14  Platform Assets

15

16  Doc# 2688 Motion to Assume Leases or Executory Contracts /

17  Debtors Motion for Order Under 11 U.S.C. 105(a) and 365(a) and

18  (f), Fed. R. Bankr. P. 6006 and 9014 and Local Bankruptcy Rule

19  6006-1 Authorizing Assumption and Assignment of Executory

20  Contracts In Connection with the Sale of the Debtors Platform

21  Assets or the Sale of the Debtors Whole Loan Assets

22

23  (CC: Doc# 1536, 1541) Adjourned Hearing Motion for Relief from

24  Stay Filed on behalf of Kenneth L. Kral and Lisa A. Stricker.

25

1  (CC: Doc# 2153, 2154, 2157) Motion for Relief from Stay.

2

3  (CC: Doc# 2546) Motion for Relief from Stay as it applies to

4  the real property commonly known as 234 Milton Avenue, West

5  Haven, CT 06516.

6

7  Doc# 2686 Motion to Assume Leases or Executory Contracts/

8  Debtors First Motion for Order Under 11 U.S.C. 105(a) and

9  365(a) and (f), Fed. R. Bankr. P. 6006 and 9014 and Local

10  Bankruptcy Rule 6006-1 Authorizing Assumption and Assignment of

11  Executory Contracts In Connection with the Sale of the Debtors

12  Platform Assets

13

14  Adj. Hearing Re: Cure Objections. (Related Document no. 61)

15

16  (Doc no. 1649) Hearing Re: Cure Objection of Digital Lewisville

17  LLC to: (I) Debtors Motion for Orders: (A)(I) Authorizing and

18  Approving Sale Procedures, Including Break-Up Fee and Expense

19  Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing;

20  etc.

21

22  (CC: Doc no. 1979) Adjourned Hearing RE: Objection of Wells

23  Fargo Bank, N.A. to Debtors Sale Motion [Docket No. 1979]

24

25

1   (CC: Doc no. 2069) Adjourned Hearing RE: Limited Objection of

2   Ally Financial Inc. and Ally Bank to the Debtors Proposed

3   Platform Sale Motion [Docket No. 2069]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   TODD M. GOREN, ESQ.

9        STEFAN W. ENGELHARDT, ESQ.

10       NORMAN S. ROSENBAUM, ESQ.

11       JAMES A. NEWTON, ESQ.

12       LORENZO MARINUZZI, ESQ.

13       ERICA J. RICHARDS, ESQ.

14

15

16  MORRISON & FOERSTER LLP

17       Attorneys for Debtors

18       2000 Pennsylvania Avenue NW

19       Suite 5500

20       Washington, DC 20006

21

22  BY:   ALEXANDRA STEINBERG BARRAGE, ESQ.

23

24

25

```
 1
 2  CLIFFORD CHANCE US LLP
 3          Attorneys for Ocwen Loan Servicing, LLC
 4          31 West 52nd Street
 5          New York, NY 10019
 6
 7  BY:   ADAM LESMAN, ESQ.
 8
 9
10  HOGAN LOVELLS US LLP
11          Attorneys for U.S. Bank as trustee and
12           America's Servicing Company
13          875 Third Avenue
14          New York, NY 10022
15
16  BY:   NICOLE E. SCHIAVO, ESQ.
17
18
19  KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
20          Attorneys for Official Creditors' Committee
21          1177 Avenue of the Americas
22          New York, NY 10036
23
24  BY:   STEPHEN D. ZIDE, ESQ.
25          ELISE S. FREJKA, ESQ.
```

1

2   WEIL, GOTSHAL & MANGES LLP

3         Attorneys for Syncora Guarantee, Inc.

4         767 Fifth Avenue

5         New York, NY 10153

6

7   BY:   SARA COELHO, ESQ.

8

9

10   WINSTON & STRAWN LLP

11         Attorneys for Fannie Mae

12         200 Park Avenue

13         New York, NY 10166

14

15   BY:   DAVID NEIER, ESQ.

16

17

18   KIRKLAND & ELLIS, LLP

19         Attorneys for Ally Financial Inc. and Ally Bank

20         200 North LaSalle

21         Chicago, IL 60654

22

23   BY:   NOAH J. ORNSTEIN, ESQ.

24

25

1

2    CLEARY GOTTLIEB STEEN & HAMILTON LLP

3          Attorneys for Wilmington Trust

4          One Liberty Plaza

5          New York, NY 10006

6

7    BY:   MARK A. LIGHTNER, ESQ.

8

9

10   SILVERMANACAMPORA LLP

11         Special Counsel to the Committee

12         100 Jericho Quadrangle

13         Suite 300

14         Jericho, NY 11753

15

16   BY:   RONALD J. FRIEDMAN, ESQ.

17         JUSTIN S. KRELL, ESQ.

18

19

20   WHITE & CASE LLP

21         Attorneys for Ad Hoc Group Of Junior Secured Noteholders

22         1155 Avenue of the Americas

23         New York, NY 10036

24

25   BY:   HARRISON DENMAN, ESQ.

1

2  GIBBONS P.C.

3          Attorneys for Wells Fargo as Servicer/Subservicer

4          One Pennsylvania Plaza, 37th Floor

5          New York, NY 10119

6

7  BY:   JEFFREY S. BERKOWITZ, ESQ.

8          CHRISTOPHER A. ALBANESE, ESQ.

9

10

11  KELLEY DRYE & WARREN LLP

12          Attorneys for UMB Bank

13          101 Park Avenue

14          New York, NY 10178

15

16  BY:   CATHERINE L. THOMPSON, ESQ.

17

18

19  PATTERSON BELKNAP WEBB & TYLER LLP

20          Attorneys for Ambac Assurance Corporation

21          1133 Avenue of the Americas

22          New York, NY 10036

23

24  BY:   BRIAN P. GUINEY, ESQ.

25

1

2   STRONGIN ROTHMAN & ABRAMS, LLP

3        Attorneys for Defendants Peter T. DeMasters, Flaherty,

4          Sesabaugh, Bonasso PLLC, and Susan Romain

5        5 Hanover Square

6        4th Floor

7        New York, NY 10004

8

9   BY:   DAVID ABRAMS, ESQ.

10

11

12  MCKOOL SMITH

13       Attorneys for Freddie Mac

14       600 Travis Street

15       Suite 7000

16       Houston, TX 77002

17

18  BY:   KIRK S. CHENEY, ESQ.   (TELEPHONICALLY)

19

20

21

22

23

24

25

1

2   SULLIVAN HAZELTINE ALLINSON LLC

3        Attorneys for Creditor Merscorp

4        901 North Market Street

5        Suite 1300

6        Wilmington, DE 19801

7

8   BY:   WILLIAM A. HAZELTINE, ESQ. (TELEPHONICALLY)

9

10

11   SAMUEL I. WHITE, P.C.

12        Attorneys for Seneca Trustees, Inc.

13        5040 Corporate Woods Drive,  Suite 120

14        Virginia Beach, VA 23462

15

16   BY:   CHRIS R. ARTHUR, ESQ. (TELEPHONICALLY)

17

18

19   LOCKE LORD BISSELL & LIDDELL LLP

20        Attorneys for GMAC Mortgage

21        111 South Wacker Drive

22        Chicago, Illinois 60606

23

24   BY:   J. MATTHEW GOODIN, ESQ.  (TELEPHONICALLY)

25

1

2    ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

3          Attorneys for Digital Lewisville

4          1900 Main Street

5          5th Floor

6          Irvine, CA 92614

7

8    BY:   IVAN GOLD, ESQ. (TELEPHONICALLY)

9

10

11   FELDERSTEIN FITZGERALD WILLOUGHBY & PASCUZZI LLP

12          Attorneys for Creditor, CHFA

13          The Wells Fargo Center

14          400 Capitol Mall,  Suite 1450

15          Sacramento, CA 95814

16

17   BY:   PAUL PASCUZZI, ESQ. (TELEPHONICALLY)

18

19

20   LAW OFFICES OF J. ARTHUR ROBERTS

21          Attorneys for Creditor, Kenneth Kral

22          3345 Newport Blvd. Suite 213

23          Newport Beach, CA 92663

24

25   BY:   JOSEPH A. ROBERTS, ESQ. (TELEPHONICALLY)

1

2   MUNGER, TOLLES & OLSON LLP

3         Attorneys for Berkshire Hathaway Inc.

4         355 South Grand Avenue

5         35th Floor

6         Los Angeles, CA 90071

7

8   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11  GOLDEN & AMOS, P.L.L.C.

12        Attorneys for Tim Amos, individually,

13          and Golden & Amos, PLLC

14        543 Fifth Street

15        Parkersburg, West Virginia 26101

16

17  BY:   TIMOTHY J. AMOS, ESQ. (TELEPHONICALLY)

18

19  BRADLEY, ARANT, BOULT & CUMMINGS, LLP

20        Attorneys for Defendant Judy Faber

21        One Federal Place

22        1819 Fifth Avenue North

23        Birmingham, AL 35203

24

25  BY:   CHRISTOPHER L. HAWKINS, ESQ. (TELEPHONICALLY)

1

2    ALSO PRESENT:   (TELEPHONICALLY)

3          MARION JENKINS, Pro Se

4          RICH RODE, Pro Se

5          CONRAD P. BURNETT, Pro Se

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2          THE COURT:  Please be seated.
 3          All right.  We're here in Residential Capital, number
 4   12-12020.  There's also some adversary proceedings; I'll call
 5   out those numbers when we get to them.
 6          MR. GOREN:  Thank you, Your Honor.  Todd Goren,
 7   Morrison & Foerster, on behalf of the debtors.  I thought we'd
 8   start off with another brief update on where we stand with the
 9   sale.
10          THE COURT:  Okay.
11          MR. GOREN:  There's been some movement since we were
12   last here, so I just wanted to keep you up to date.
13          First, as I'm sure you saw, we reached a resolution
14   with Fannie Mae on their cure claim, and they've now consented
15   to the transfer of the debtors' Fannie Mae servicing rights to
16   Green Tree, which is the servicing platform of Walter
17   Investment Management, one of the parties to the APA.
18          Yesterday was the objection deadline, and we received
19   no objections.  We did receive one informal comment from
20   Wilmington Trust on this DIP, which was just -- the stipulation
21   provides that the debtors will pay the cure claim; Wilmington
22   Trust just wanted us to clarify that it will be GMAC Mortgage
23   who is the party to the --
24          THE COURT:  The counter-party to the contract?
25          MR. GOREN:  -- the counter-party to the contract
```

RESIDENTIAL CAPITAL, LLC, ET AL.                    19

 1   that's receiving all of the payment that will also be making

 2   the cure claim.

 3           THE COURT:  Okay.

 4           MR. GOREN:  That resolution was subject to approval by

 5   the debtors' board of directors as well as Fannie's board of

 6   directors and the FHFA, Fannie and Freddie's conservator.  All

 7   of those parties have now approved it.

 8           So as a result -- well, just to take a step back, as

 9   you may recall under the APA, Ocwen, who was our counter-party

10   in the APA, had the right to assign certain of its rights under

11   the APA, namely the right to purchase the Fannie assets and the

12   origination and capital market functions of the debtors to

13   Walter Investment Management.  As a result of the resolution

14   with Fannie, we think we're now ready to close that portion of

15   the platform sale.

16           There are a few issues still remaining with Ocwen,

17   which I'll get to in a minute, but we think we're close to

18   resolution on.  But as a result of the resolution with Fannie,

19   we think what we're now in a position to do is close both the

20   Berkshire Hathaway transaction and the Walter portion of the

21   platform sale.  So there will, effectively, two different

22   closings on the 31st, for the assets, and then the Fannie Mae

23   servicing and origination and capital markets functions will be

24   transferred on January 31st.

25           THE COURT:  Whoever's on the phone, you have to put

RESIDENTIAL CAPITAL, LLC, ET AL.                           20

1   your phone on mute, because we're picking up some additional

2   noise.  If it continues, you'll have to be cut off.

3          So go ahead, Mr. Goren.

4          MR. GOREN:  Okay.  The combination of these two

5   transactions on the 31st will allow us to pay down about 400

6   million of the Barclays DIP facility, to repay the Ally DIP

7   facility, and to repay the city MSR facility, and bring in

8   hundreds of millions of additional dollars into the estate.

9          With respect to Ocwen, the primary open point is the

10  approval of Freddie Mac for the servicing transfer of their

11  assets.  And I'm pleased to report that, based on discussions

12  with Freddie Mac, the debtors believe we now have an agreement

13  in principle with Freddie for the resolution of their cure

14  claims and servicing transfer to Ocwen.  That resolution is

15  still subject to documentation and the approval of the debtors'

16  board, as well as Freddie's board and the FHFA, but we believe

17  we are there, in principle, at this point, with Freddie.

18  So assuming all those deals get appropriately finalized, and

19  the mountains of other piles of work that my corporate

20  colleagues are working on gets appropriately documented, we

21  believe we'll be in a position to close the Ocwen portion of

22  the platform sale on February 15th.

23         So that's where we stand with the sale, unless you

24  have any questions, Your Honor.

25         THE COURT:  No, I don't.  Go ahead.

1          MR. GOREN:  I will now turn it over to my colleague,

2     Norm Rosenbaum, who will be handling some of the adversary

3     proceedings.

4          THE COURT:  Okay.

5          MR. ROSENBAUM:  Good morning, Your Honor --

6          THE COURT:  Hang on.

7          MR. ROSENBAUM:  -- Norm Rosenbaum.

8          THE COURT:  Whoever is on the phone, you're either

9     touching the phone with papers or otherwise; we're picking up

10    background noise.  Put your phone on mute or you will be cut

11    off.

12         Go ahead, Mr. Rosenbaum.

13         MR. ROSENBAUM:  Good morning, Your Honor.

14         THE COURT:  I guess you didn't hear me on the phone.

15         Do we have an operator on the phone?

16         THE OPERATOR:  Yes, Your Honor.

17         THE COURT:  Okay.  Can you tell who is making that

18    noise on the phone?

19         THE OPERATOR:  I'm actually trying to locate that line

20    at this time.

21         THE COURT:  Okay.  You locate it, you tell me you've

22    located it, I'll give one last warning, and then they will be

23    cut off.

24         Go ahead, Mr. Rosenbaum.

25         MR. ROSENBAUM:  Thank you, Your Honor.  I'm actually

1    going to cede the podium to a couple of my colleagues on the

2    adversary proceedings.  Before I do, I just wanted to report to

3    Your Honor that following the hearing we had on December 20th,

4    SilvermanAcampora has made substantial efforts to contact

5    several of the adversary plaintiffs, including a couple that

6    have matters and status conferences on for today, with some

7    degree of success.  And there's been -- part of the problem has

8    been the lack of information that was originally provided by

9    the plaintiffs.  That's something we hope we can rectify.

10           We've been sharing a draft of proposed adversary

11   procedures, that would apply to these types of proceedings,

12   with the committee and SilvermanAcampora.  We're hoping to get

13   that filed a little later this week.  What we'd like to put in

14   place is a process where we could have at least an initial meet

15   and confer, obtain relevant contact information from the

16   adversary plaintiffs, and then have at least an initial status

17   conference before the Court before proceeding with any

18   additional litigation.

19           THE COURT:  I think that would be very helpful.

20           MR. ROSENBAUM:  With that, Your Honor, I will cede the

21   podium to Mr. Newton.

22           MR. NEWTON:  Good morning, Your Honor.  James Newton

23   of Morrison & Foerster on behalf of the debtors.

24           The next item on the agenda in the scheduled adversary

25   proceeding matters is a pre-trial conference in the adversary

RESIDENTIAL CAPITAL, LLC, ET AL.                    23

 1  filed by Conrad Burnett.  It's adversary proceeding number 12-
 2  02049.  I believe Mr. Burnett is on the phone.  And I'm happy
 3  to report that I believe we have reached a consensual
 4  resolution of this adversary, with the help of
 5  SilvermanAcampora, and Mr. Krell is here from SilvermanAcampora
 6  as well.  I'll turn it over to Mr. Burnett for now.
 7          THE COURT:  All right.  Mr. Burnett?
 8          MR. BURNETT:  Yes, Your Honor.
 9          THE COURT:  Do you believe you have reached a
10  satisfactory resolution at this point?  It's not --
11          MR. BURNETT:  I do believe we have.  We've had a good
12  conversation, and I'm ready to withdraw my complaint without
13  prejudice.
14          THE COURT:  Let me hear from -- you are, I'm sorry?
15          MR. KRELL:  Good morning, Your Honor.  Justin Krell,
16  SilvermanAcampora, special counsel to the committee.
17          Yes, Your Honor, Mr. Burnett is correct; we've had
18  substantial conversations.  Pursuant to those conversations,
19  Mr. Burnett has agreed to withdraw his adversary proceeding
20  without prejudice, and we will deal with his claim in the
21  claims process.  He did file a timely proof of claim asserting
22  certain damages that he's alleging. He's provided supporting
23  documents with respect to that claim which I have already
24  forwarded on to debtors' counsel.  So I made a representation
25  to Mr. Burnett that I am his direct contact.  Any information

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1  that he believes supports his claim he can forward to me; I'll

2  make sure that it gets to the debtors into the right hands for

3  analysis.  Based on that, he's willing to withdraw without

4  prejudice, Your Honor.

5        THE COURT:  Okay.  So what is going to get filed in

6  court to reflect the understanding of the parties?

7        MR. KRELL:  I spoke to Mr. Burnett about that.  If

8  Your Honor so wants, we could provide Mr. Burnett with a

9  stipulation or voluntary dismissal without prejudice.  I have

10 Mr. Burnett's contact information; I can send it to him and we

11 can file it with the Court, Your Honor.

12       THE COURT:  All right.  Mr. Burnett, is that

13 satisfactory with you?

14       MR. BURNETT:  Yes, it is.

15       THE COURT:  All right.  Let's proceed that way.  I'm

16 glad you were able to work this out.  Thank you very much.

17       MR. KRELL:  Thank you, Your Honor.

18       MR. BURNETT:  Thank you for your help.

19       THE COURT:  Thank you, Mr. Burnett.

20       MR. NEWTON:  Mr. Burnett, can you hold on?

21       Your Honor, before we move on to the next matter, I

22 just wanted to bring to the Court's attention, Mr. Burnett had

23 filed two proofs of claim.  Attached to one of his proofs of

24 claim appears to be a relief from stay motion seeking relief

25 from the stay to proceed with this adversary proceeding.  In

 1  light of the resolution, I think that should be moot, but I

 2  just wanted to give --

 3          THE COURT:  Okay.

 4          MR. NEWTON:  -- Mr. Burnett a chance in case --

 5          THE COURT:  Well, is there anything you want to say

 6  about that?  I think with what happened, you ought to try and

 7  reflect the full agreement in the stipulation that you'll

 8  present to the Court.  If there continue to be any issues, you

 9  can raise it at the next hearing.  Okay?

10          MR. NEWTON:  Will do, Your Honor.

11          THE COURT:  Is that satisfactory, Mr. Burnett?

12          MR. BURNETT:  Yes, it is.  I'll work with Mr. Krell on

13  all issues.

14          THE COURT:  Okay.  Thank you very much.  I appreciate

15  it.

16          MR. BURNETT:  Thank you.

17          MR. KRELL:  Thank you, Your Honor.

18          THE COURT:  And Mr. Burnett, you're certainly excused.

19  You don't have to remain on the line.

20          MR. BURNETT:  Thank you.

21          MR. NEWTON:  Your Honor, the next matter on the agenda

22  is a pre-trial conference in an adversary proceeding initiated

23  by Marion L. And Sharon Jenkins.  This is adversary proceeding

24  number 12-01935.  This is an adversary proceeding filed by the

25  Jenkins --

1        THE COURT:  Whoever is on the phone that is resulting

2   in all of the background noise -- Operator, have you identified

3   who it is?

4        THE OPERATOR:  And it's actually coming from Ms.

5   Jenkins' line.

6        MR. JENKINS:  I just muted the phone.  This is Mr.

7   Marion Jenkins, Your Honor.  I just took my phone off of mute.

8        THE COURT:  Okay.  All right.  You've just got to be

9   careful about brushing against it because we pick up a lot of

10   noise in the court.

11        Okay, go ahead.

12        MR. NEWTON:  Your Honor, this is an adversary

13   proceeding filed by the Jenkins, naming nine defendants:  RFC;

14   Mortgage Lenders Network; and Emax Financial Group, who appear

15   to be the prior holders of the Jenkins note.  And as I'll get

16   into a little bit, RFC is also the master servicer of the

17   Jenkins loan.  They also named Michele Morales and Judy Faber,

18   current former employees of Emax Financial and RFC,

19   respectively, who appear to have signed assignments on the

20   Jenkins note.  U.S. Bank N.A., as trustee, who is the current

21   holder of the note, and America's Servicing Company, who acts

22   as primary servicer.  And their counsel's here in court as

23   well.  And then Shapiro and Swertfeger -- Jack L. Swertfeger,

24   Jr. and Gerald M. Shapiro, who I understand act as counsel to

25   ASC and U.S. Bank in the Georgia foreclosure of the Jenkins

1   home.  And finally, MERS is named as a defendant as well.

2         As a further note, the Jenkins have also filed a proof

3   of claim in the case against RFC for two million dollars.

4         THE COURT:  Mr. Jenkins, if you continue to brush

5   against the phone and we get a lot of background noise, you're

6   going to get cut off.  So step back from the telephone.

7         Go ahead, Mr. Newton.

8         MR. JENKINS:  Yes, sir.

9         MR. NEWTON:  Just by way of a short background, as far

10  as the debtors were able to ascertain from the complaint, the

11  Jenkins appear to assert that they received a mortgage from

12  Mortgage Lenders Network.  There were two assignments.

13  Eventually the mortgage note ended up with U.S. Bank.  At some

14  point, a corrective assignment of the security deed was also

15  filed, assigning the mortgage to U.S. Bank as trustee.

16        ASC never notified the Jenkins of assignment, but

17  instead provided misleading information regarding the loan and

18  ultimately commenced the foreclosure.  And for purposes of the

19  attorney's named, the Shapiro firm and its attorneys failed to

20  appropriately verify the factual allegations provided in

21  connection with the foreclosure.

22        The Jenkins appear to request that the Court void the

23  security deed, enjoin the defendants from foreclosing, and

24  require the defendants to give an accounting, and finally, to

25  award the Jenkins ten million dollars in damages.  However, the

1   Jenkins haven't set forth any legal causes of action in the

2   complaint, and therefore, RFC is unable to determine what

3   claims are being brought against it.

4           One reason the debtors are concerned with this -- with

5   the Jenkins' failure to include the cause of action is because

6   RFC doesn't own the loan, is not the primary servicer of the

7   loan.  Instead, the loan, as I mentioned, is owned by U.S.

8   Bank, serviced by Wells Fargo doing business as America's

9   Servicing Company.  As a result, RFC is not involved in the

10  day-to-day servicing or the foreclosure efforts.  And finally,

11  the debtors are --

12          THE COURT:  Is the current servicer a sub-servicer?  I

13  mean, what is the debtors' role at all.

14          MR. NEWTON:  The debtor acts as master servicer.  And

15  counsel for America's Servicing Company, who is the primary

16  servicer who interfaces with the borrowers and also is in

17  charge of conducting any foreclosure activities, is here as

18  well.

19          THE COURT:  What's the status of the foreclosure

20  effort in the case?

21          MR. NEWTON:  My understanding is the foreclosure sale

22  was scheduled, and recently, on December 31st, Mr. Jenkins

23  filed a Chapter 13 bankruptcy in the Northern District of

24  Georgia, which would postpone the foreclosure sale.  And in

25  fact, on January 14th, my understanding is that the Jenkins

1  actually filed an adversary proceeding in that Chapter 13

2  proceeding in the Northern District of Georgia, which is

3  substantially similar to the adversary proceeding filed here as

4  well.

5          THE COURT:  Are any of the debtors named in the

6  adversary proceeding in Georgia?

7          MR. NEWTON:  Yes, RFC is named in the adversary

8  proceeding.

9          THE COURT:  What judge is the bankruptcy pending in

10  front of?

11          MR. NEWTON:  Just give me one second.

12          THE COURT:  Mr. Jenkins, do you know who the judge who

13  has your bankruptcy case in Georgia?

14          MR. JENKINS:  No, sir, I don't know his name offhand.

15  I can -- if you give me one second, I'm trying to look here.

16          Your Honor, if I may, may I speak?

17          THE COURT:  I'll give you a chance in a minute.

18          Mr. Friedman, do you know?

19          MR. FRIEDMAN:  It's Judge Paul Bonapfel, B-O-N-A-P-F-

20  E-L.  The case number is 12-82018-pwb.

21          THE COURT:  Just give me the number one more time, 12-

22  82018?

23          MR. FRIEDMAN:  Sorry, Your Honor.  It's in the

24  Northern District of Georgia, Atlanta, 12-82018-pwb, Paul W.

25  Bonapfel.

1          THE COURT:  Okay.  Mr. Newton, anything you want to

2    add at this point?  So which one of the debtors is the master

3    servicer?

4          MR. NEWTON:  Residential Funding Company is the master

5    servicer.

6          MR. JENKINS:  I'm sorry, sir.  I have the judge's

7    name.  It's Judge Paul W. Bonapfel, B-O-N-A-P-F-E-L.

8          THE COURT:  Okay.  Thank you, Mr. Jenkins.

9          MR. JENKINS:  Yes, sir.

10          MR. NEWTON:  The only other thing I would add is the

11    debtors did file a Rule 12(e) motion for a more definite

12    statement, scheduled to be heard on the 28th.  And one of the

13    co-defendants, Judy Faber, who's an employee of the debtors,

14    also filed a motion to dismiss.  And I believe counsel for Ms.

15    Faber is on the phone as well.

16          THE COURT:  Okay.  Counsel, do you want to be heard?

17          MS. SCHIAVO:  Nicole Schiavo for U.S. Bank as trustee

18    and America's Servicing Company.

19          Just reiterating quickly that the adversary proceeding

20    that was filed in this case is nearly identical to the

21    adversary proceeding that was filed in Georgia.  The claims

22    don't seem to actually relate to RFC, with the exception that

23    at some point they were the holder of the note.  I think the

24    fact that they are the master servicer is extraneous to the

25    issues that are actually set forth.  It's simply because the

1    note passed through their hand at some point that they appear

2    to have been named -- they're named in a single paragraph in

3    the complaint, without any allegations really being against

4    them.  The allegations are predominantly against U.S. Bank as

5    trustee and America's Servicing Company.  And the allegations

6    that are set forth in this complaint are nearly identical to

7    the allegations set forth in the complaints in the Georgia

8    bankruptcy.

9           THE COURT:  Do you have a view whether there is

10   subject matter jurisdiction here against any of the defendants

11   other than RFC?

12          MS. SCHIAVO:  My argument would be that they do not.

13   The U.S. Bank and ASC and the other defendants that are named

14   are nondebtors here, and the Jenkins are a nondebtor in this

15   district.

16          THE COURT:  But that is --

17          MS. SCHIAVO:  And I also --

18          THE COURT:  That isn't necessarily the end of the

19   story.  I guess the Second Circuit's Quigley decision is one of

20   the more recent articulations of when there is related-to

21   jurisdiction.  Is there a conceivable effect on the debtors

22   from the claims against your client, for example?

23          MS. SCHIAVO:  There are against my client.  There are

24   claims that, while I believe are very -- can be very quickly

25   dealt with on the face of the complaint, there are claims that

1  are properly alleged, to the extent that --

2          THE COURT:  No, but is there, for example -- which is

3  your client, America's Servicing?

4          MS. SCHIAVO:  And U.S. Bank as trustee.

5          THE COURT:  Okay.  And do they have contractual

6  indemnity claims against any of the debtors?  I mean, I'm

7  focusing --

8          MS. SCHIAVO:  I am not aware of that.

9          THE COURT:  Okay.  I'm focusing now specifically on

10  whether there is subject matter jurisdiction on the claims

11  asserted against the nondebtors.  The plaintiffs are not before

12  me as debtors, other than RFC.  The defendants are not debtors.

13  In order to find related-to jurisdiction, there would have to

14  be conceivable effect on the race of the estate.  From looking

15  at the complaint I don't see it, but I wanted to know what your

16  position would be on that.

17          MS. SCHIAVO:  I'm in agreement with Your Honor that I

18  don't see any --

19          THE COURT:  Whether or not the complaint could survive

20  a 12(b)(6) motion, the issue is can it survive a 12(b)(1)

21  motion with respect to the defendants other than the debtor.

22  And as to the debtor, while jurisdiction might exist, the issue

23  of whether the complaint states a claim is a separate issue.

24  So what's your intention, Ms. Schiavo, as to how you plan to

25  proceed?

1        MS. SCHIAVO:  If Your Honor would like to maintain
2   this action in this court we, first off, have not been served,
3   so there's that concern.  And then obviously the jurisdiction
4   and venue arguments are a concern as well.  And I believe that
5   in just looking at the exhibits that are annexed to the
6   complaint, if we even got to the merits, they could -- they're
7   very easily disposed of as well.

8        THE COURT:  Okay.  Mr. Jenkins, have you served any of
9   the defendants with the complaint?

10       MR. JENKINS:  Yes, sir.  I served all the defendants
11  via registered mail receipt, Your Honor.  And thank you for
12  allowing me to speak.

13       And Your Honor, if you look at the main document that
14  gives U.S. Bank permission to have my mortgage, it is -- and I
15  put on the record -- the note Michele Morales supposedly signed
16  is a forgery.  You, and anyone there at the court, may look at
17  that note right now and see that it was copied.  Her signature
18  is copied on allonge that tran -- gave Residential Funding the
19  note to U.S. Bank, so therefore, that's what I alleged in my
20  complaint.

21       Now, I don't know the attorney's name that just spoke
22  right now, but if she was doing -- if she could look at that
23  and she can see herself that that was put on a copy machine and
24  her signature was put there and it picked up everything that
25  was copied.  It copied her name and everything that was there.

1   That's what transferred -- that was what gave U.S. Bank

2   permission to have my mortgage.  So if that allonge note is a

3   fraudulent document, therefore U.S. Bank does not have

4   permission, nor America's Servicing Center, to foreclose on me.

5         THE COURT:  Okay.  The bankruptcy court is a court of

6   limited jurisdiction.  You need to establish a basis for

7   subject matter jurisdiction and personal jurisdiction as to

8   every defendant that you name in the complaint.

9         MR. JENKINS:  Yes.

10        THE COURT:  For pers --

11        MR. JENKINS:  We -- I --

12        THE COURT:  Hold on just a second.  Just a second, Mr.

13  Jenkins.  Just bear with me a second; I want to look at

14  something.

15     Okay.  I'm looking at the docket in this case, Mr.

16  Jenkins.  There is a certificate of service that was filed on

17  November 9th, 2012, and it's signed by Sharon Jenkins.  I take

18  it -- is that your wife, Mr. Jenkins?

19        MR. JENKINS:  That's correct, sir.

20        THE COURT:  Okay.  And it has a box checked for

21  certified mail on insured depository institution by sending the

22  process by certified mail addressed to the following officer of

23  the defendant at -- and then it has no information below it.

24  So the Bankruptcy Rules and the rules of this court require

25  that you file a certificate of service showing that each

1   defendant was served, when, how.  Okay?

2           The only -- by looking at the docket, the only

3   certificate of service I've seen, and it's filed on our docket

4   as -- ECF is the electronic case filing system -- it's docket

5   number 4.  We assign numbers to each pleading that's filed.  So

6   for example, your complaint is number 1, and number 4 is a

7   certificate of service.  I don't see any other certificate of

8   service.  So I don't see any proof of service that each of the

9   defendants named in the complaint has been served.

10          Additionally, the summons, which is a document that's

11  issued by the bankruptcy court, which you have to serve with

12  the complaint, was issued on November 14th, 2012.  Federal Rule

13  of Bankruptcy Procedure 7004 requires that you serve the

14  summons within fourteen days after it's issued.  So if the

15  summons wasn't served within the fourteen days, the rules

16  require that a second summons issue from the clerk's office and

17  it be served within fourteen days.

18          I know these rules may seem technical, but they are

19  the rules that are set out in the Federal Rules of Bankruptcy

20  Procedure and have to be followed.  So unless -- if a defendant

21  asserts that it wasn't properly served with the summons and

22  complaint, they can certainly move to dismiss on those grounds.

23  They don't have to, but they can.  It's ordinarily fairly easy

24  to serve an adversary proceeding in bankruptcy because the

25  rules allow service by First-Class Mail.  But nevertheless, the

 1  rules have to be followed.  So at this stage I'm raising it

 2  now, because this is the pre-trial -- the first pre-trial

 3  conference in the case, Mr. Jenkins.  There's no indication

 4  that your complaint was properly served.

 5          But let me go beyond that and raise some other

 6  questions with you.  You may or you may not have claims against

 7  some or all of the defendants.  The only one of the defendants

 8  that you've named -- excuse me just a second; I need to pull up

 9  another pleading.

10          Okay.  The only one of the debtors that you've named

11  as a defendant is Residential Funding, LLC.  The Court would

12  have subject matter jurisdiction over claims against

13  Residential Funding, but it is not at all clear that the Court

14  would have subject matter jurisdiction on any claims you may

15  have against any of the other defendants that are not debtors

16  here.

17          So each of those defendants -- if you decide that you

18  want to proceed in this court against them, each of those

19  defendants may well move to dismiss the case for lack of

20  subject matter jurisdiction.  I couldn't tell, from reading

21  your complaint, whether there was any possible basis for

22  subject matter jurisdiction against any of the defendants other

23  than Residential Funding.

24          Your complaint alleges, as a basis for jurisdiction,

25  28 U.S.C., Section 1334, which is the section of the United

  1   States Code that would provide a bankruptcy court with

  2   jurisdiction, but it's not over every defendant in every case.

  3         Mr. Friedman, has your firm at all tried to

  4   communicate with the Jenkins?

  5         MR. FRIEDMAN:  We have, Your Honor.  For the record,

  6   Ronald Friedman from SilvermanAcampora.

  7         My office spoke with Mr. Jenkins' wife Sharon on

  8   January 9th.  At that time, Ms. Jenkins has indicated that they

  9   were hopeful to try and resolve the suit if they could work

 10   towards a loan modification, making it clear in the

 11   conversation, from Ms. Jenkins' perspective, that her main goal

 12   was the preservation of her home.

 13         We thereafter contacted the Jenkins and left a message

 14   on January 18th, January 22nd and January 24th, in an effort to

 15   have some of the colloquy that Your Honor has just had now to

 16   prepare for the conference, and we unfortunately did not hear

 17   back from them.

 18         With respect to this case, it is beneficial we at

 19   least had a phone number and we were able to reach out and

 20   contact, as opposed to some of the others that we'll discuss

 21   today we were only able to communicate via writing and

 22   overnight mail and certified mailings to try and communicate.

 23   But we did have some discussion on January the 9th; thereafter

 24   we were unable to receive a return call to address some of the

 25   issues.

1          And certainly we are aware of the Chapter 13 that was

2     filed on December 31st of 2012 that's pending in the Northern

3     District of Georgia.  And I believe that our last look at the

4     docket, within the last twenty-four hours, was that the Chapter

5     13 Trustee, who had been appointed, Ms. Mary Ida Townson, had

6     filed a motion to dismiss that Chapter 13 case on procedural

7     grounds.  But certainly we think that there may be a couple of

8     alternatives to try and bring this matter to conclusion,

9     although we are aware that, unlike some of the other cases,

10    this matter, the Chapter 13 was filed on the eve of the

11    foreclosure, so they are fairly well developed on that process.

12          THE COURT:  Are any of the other defendants

13    represented by counsel in the courtroom?

14          Any other counsel on the telephone?

15          MR. HAWKINS:  Your Honor, this is Chris Hawkins from

16    Bradley, Arant, Boult & Cummings; I represent Judy Faber.

17          THE COURT:  And you filed a motion to dismiss already?

18          MR. HAWKINS:  Yes, Your Honor, a 12(b)(6) motion.

19          THE COURT:  And is that already calendered to be

20    heard?

21          MR. HAWKINS:  Not that I'm aware of, Your Honor.

22          THE COURT:  Okay.  All right.  Here's what I would

23    like to do, since this is the first pre-trial conference.  I'm

24    going to adjourn the pre-trial conference to the next regularly

25    scheduled ResCap date, which is February 7th.

 1           And Mr. Jenkins, it's really quite important that you

 2   speak with Mr. Friedman from SilvermanAcampora or one of his

 3   colleagues.  They've indicated you or your wife had one

 4   conversation with them, and they tried to reach out to you on a

 5   number of other occasions.  You ought to speak with them, and

 6   before you decide how to proceed -- I mean, when we get to the

 7   February 7th date, I'm going to -- I don't want any more

 8   motions to dismiss before then.  Okay?  At that hearing, if

 9   there isn't any agreement -- voluntary agreement to dismiss

10   some of the defendants, for example, I'm going to set a

11   deadline for motions to dismiss, and we'll proceed with that.

12   When I set that schedule, Mr. Jenkins, I'll give the defendants

13   two or three weeks to file their motions, and I'll set a

14   deadline for you to respond to the motions.

15           You ought to speak again -- Mr. Friedman's firm,

16   SilvermanAcampora, is special counsel to the creditors'

17   committee for borrower issues, and while he doesn't represent

18   you, his firm doesn't represent you, special counsel was

19   appointed to sort of facilitate communication with people such

20   as yourself with borrower-related issues.

21           If we have to move forward with motions to dismiss,

22   we'll do that.  I mean, I'll tell you, from looking at the

23   complaint, even though I generally provide some leeway for

24   plaintiffs not represented by counsel, I think your complaint

25   is woefully deficient in stating any causes of action against

1   any of the defendants.  Your biggest problem you're going to

2   face immediately is with respect to the defendants other than

3   Residential Funding.  Residential Funding, at least, you may

4   not have stated a claim; the Court would have subject matter

5   jurisdiction.  What I would do is -- we'd have to wait and see,

6   but as to the other defendants, you're going to have, I

7   suspect, a real fight on your hands when they -- I'm assuming

8   they'll move to dismiss for lack of subject matter

9   jurisdiction.  Okay.

10          So Mr. Newton (sic), will you communicate with Mr.

11  Friedman and his colleagues?  They'll try and reach out to you,

12  but you need to talk to them.  I'll find out on February 7th

13  whether you did.  Don't duck their calls.  Okay, I can't be any

14  clearer about it.  Mr. Newton (sic), anything you want to add?

15          MR. NEWTON:  That's Mr. Jenkins.

16          THE COURT:  I'm sorry.  Mr. Jenkins, I apologize.

17          Mr. Jenkins, anything you want to add?

18          MR. JENKINS:  No, sir.  I'll be in contact with Mr.

19  Newton as soon as possible.

20          THE COURT:  Okay, or with Mr. Friedman and his firm.

21  One of them will be in touch with you.

22          Ms. Schiavo, anything you wanted to add?

23          No.  So hold off on filing any motions.  Let's --

24  hopefully it'll be a shorter conference on February 7th, but if

25  there is no resolution as to some or all of the defendants, at

1  that point I'll set a briefing schedule and you can all have at

2  it.

3          MS. SCHIAVO:  Thank you, Your Honor.

4          THE COURT:  Okay.  Mr. Newton, is there anything you

5  wanted to add?

6          MR. NEWTON:  No, thank you.  Thank you, Your Honor.

7          THE COURT:  Mr. Friedman, is there anything you wanted

8  to say?

9          MR. FRIEDMAN:  Not on this matter, Your Honor.

10          THE COURT:  Okay.  All right.  Thank you very much.

11  Thank you, Mr. Jenkins.

12          MR. JENKINS:  Thank you, sir.

13          THE COURT:  And you're certainly excused.  You don't

14  have to stay on the phone.

15          All right.  Mr. Newton, what's next?

16          MR. NEWTON:  Now, Your Honor, I'll turn the podium

17  over to my colleague Erica Richards.

18          MS. RICHARDS:  Good morning, Your Honor.  Erica

19  Richards of Morrison & Foerster, appearing on behalf of the

20  debtors.

21          The next matter on the agenda relates to the adversary

22  proceeding initiated by Todd Williams.  He's, I understand, a

23  pro se plaintiff under case number 12-01896.

24          THE COURT:  Let me find my notes, okay?

25          Go ahead.

1        MS. RICHARDS:  Your Honor, there are two items in this

2   case scheduled today.  There's a pre-trial conference

3   scheduled, and also the debtors have filed a motion to dismiss,

4   or in the alternative, seeking abstention.  I don't know if you

5   have a preference as to which we take first, and I'm not sure

6   if Mr. Williams is on the phone.

7        THE COURT:  Mr. Williams, are you on the phone?

8        Is anyone for Mr. Williams on the phone?  Anyone in

9   the court?

10       Just bear with me a second, Ms. Richards.

11        Go ahead in any order you wish.

12       MS. RICHARDS:  Your Honor, I think I'll give you a

13   little background on the case then.  So Mr. Williams commenced

14   the adversary proceeding on September 28th.  The defendants or

15   debtors, GMAC Mortgage, LLC, and Homecoming Financial, LLC and

16   nondebtor MERS.  We don't represent MERS in this matter, and I

17   don't know if they've been served with a complaint and summons.

18   To date, they have not appeared or filed anything in the case.

19       Mr. Williams appears to be asserting a single cause of

20   action to set aside the foreclosure sale of his property by

21   GMAC Mortgage's servicer.  That sale took place on September

22   4th, and the deed of foreclosure was recorded on November 14th.

23       THE COURT:  It was recorded?

24       MS. RICHARDS:  It was recorded, yes.

25       As directed by the Court on the hearing on December

1    20th, I understand SilvermanAcampora has attempted to reach out

2    to Mr. Williams.  They can certainly provide more details on

3    their efforts.  Unfortunately, we only have a mailing address

4    for Mr. Williams.  I understand they sent letters.  They've

5    obtained --

6            THE COURT:  There was no good address in any of his

7    seven prior bankruptcies?

8            MR. FRIEDMAN:  No telephone number, Your Honor.  We

9    sent an overnight letter on January the 15th.

10           Again, Ronald Friedman from SilvermanAcampora.

11           The overnight letter requested the plaintiff to

12   contact us regarding this adversary proceeding.  We have a

13   delivery receipt that shows it was delivered on January the

14   16th.  We have not received any response.  Mr. Williams has

15   filed seven Chapter 13 bankruptcies in Georgia to stop the

16   foreclosure.  On the sixth bankruptcy, GMAC received relief

17   from the stay to continue the foreclosure.  And the seventh

18   bankruptcy was recently dismissed sua sponte by the court.

19   We've had no contact with Mr. Williams and he hasn't responded

20   to our letter.

21           THE COURT:  Thank you, Mr. Friedman.

22           Go ahead, Ms. Richards.

23           MS. RICHARDS:  With that, Your Honor, I think I'll

24   take up our motion to dismiss or abstain.  By way of --

25           THE COURT:  I guess I don't understand why you've

1    moved to abstain.  I mean, do you really want him going

2    somewhere else?  I mean, every time somebody tries to lift the

3    stay to proceed with a lawsuit somewhere else, you oppose it.

4    And now on several of these, in the alternative, you've moved

5    for me to abstain so that somebody can go somewhere else to

6    litigate.  I mean --

7             MS. RICHARDS:  Your Honor, I think it's our position

8    that to the extent he's actually seeking to defend the

9    foreclosure, he can already proceed with that under the

10   supplemental servicing order that Your Honor has already

11   entered in his home court, and that's where he should seek to

12   do it, if he indeed has valid claims.

13            THE COURT:  The property was sold already.  I mean --

14            MS. RICHARDS:  The property was already sold.  I

15   understand under Georgia state law he can bring a cause of

16   action for rescission of the foreclosure, so there's that.  I'm

17   not suggesting he should do that, or that, of course, that we

18   wouldn't oppose it or seek to dismiss it on other grounds,

19   but --

20            THE COURT:  Yeah, I mean, do you really want to go

21   fight him in another court?  I mean, tell me if that's what you

22   want.

23            MS. RICHARDS:  If you're willing to --

24            THE COURT:  Well, I don't know what I'm --

25            MS. RICHARDS:  -- dismiss, Your Honor --

1      THE COURT:  I'm not saying what I'm going to do, but

2  when you ask -- be careful what you ask for --

3      MS. RICHARDS:  Understood.

4      THE COURT:  -- because you might get it.

5      MS. RICHARDS:  Your Honor --

6      THE COURT:  I'd get rid of the case, but then, you

7  know --

8      MS. RICHARDS:  Your Honor, we do think there are

9  certainly plenty of grounds, both procedural and substantive,

10  for dismissal of the matter before Your Honor today.

11      THE COURT:  So why don't you argue that?

12      MS. RICHARDS:  Okay.  As an initial matter, we think

13  Mr. Williams' service is deficient and warrants dismissal under

14  Rule 12(b)(5).  There was no affidavit of service --

15      THE COURT:  You know, there's a --

16      MS. RICHARDS:  -- filed.

17      THE COURT:  -- Second Circuit case, Montalbano v.

18  Easco Hand Tools, Inc., 766 F.2d 737, 740 (2d Cir.1985), and I

19  think it's a reasonably well-established proposition that where

20  a party makes a 12(b)(5) motion to dismiss for insufficient

21  service, the Court has the option of dismissing the case or

22  quashing service and not dismissing the case.  I mean, let's

23  face it, the easiest -- in bankruptcy, because service can be

24  by First-Class Mail, all they've got to do is address it to the

25  debtors.  I mean, okay, he failed to -- he didn't file an

1   affidavit of service.  You've put in evidence that you weren't

2   served.  Clearly, service is insufficient.  You really want me

3   to just dismiss the case for failure to serve the complaint?

4         MS. RICHARDS:  Your Honor, we're comfortable that

5   there are other grounds warranting dismissal.  We raise it

6   because obviously if we don't raise it we waive this objection.

7   So --

8         THE COURT:  But at least in the Second Circuit, I

9   wouldn't have to dismiss it for insufficient service.  I could

10  quash their service, but there's nothing to quash; it was never

11  served.  But let's deal with the 12(b)(6) motion, okay?

12        MS. RICHARDS:  Okay, Your Honor.  So turning to the

13  12(b)(6) arguments, the debtors contend that Mr. Williams

14  failed to state relief -- pardon me.

15        THE COURT:  Failure to state a cause of action, okay?

16        MS. RICHARDS:  Yes.  Mr. Williams' complaint is

17  premised on allegations that GMAC Mortgage's interest in the

18  property is invalid.  We think those claims are barred under

19  the doctrines of waiver and laches.  As Mr. Friedman already

20  explained to the Court, Mr. Williams is a serial bankruptcy

21  filer.  He's filed seven bankruptcy cases in the last six

22  years; the last was dismissed sua sponte by the bankruptcy

23  court under 109(g).

24        At no time did Mr. Williams assert that GMAC Mortgage

25  did not have standing to foreclose.  Foreclosure proceedings

RESIDENTIAL CAPITAL, LLC, ET AL.                    47

1  were actually initially commenced by the debtors in 2007, which

2  is when Mr. Williams began filing these bankruptcy cases.  At

3  no time did he seek to file an action in Georgia state court

4  otherwise enjoining or defending the foreclosure.  He had

5  access to appropriate legal means to defend the foreclosure and

6  ample opportunity to do so; he didn't.  The time to bring those

7  claims is well past.  And on that basis, Your Honor, we think

8  dismissal of the complaint is warranted.

9          THE COURT:  Anything else you want to add?

10          MS. RICHARDS:  Not at this time, Your Honor, unless

11  you have any questions.

12          THE COURT:  Well, what's happened with the other

13  def -- have you had any communication with the other

14  defendants?  He's got a long list of defendants.

15          MS. RICHARDS:  Williams is -- Williams, I think,

16  actually has a fairly short list of defendants.

17          THE COURT:  Well, he's got Bank of New York Mellon

18  Trust.

19          MS. RICHARDS:  I think those parties were all GMAC

20  Mortgage's --

21          THE COURT:  JPMorgan --

22          MS. RICHARDS:  -- that's in interest to them.

23          THE COURT:  -- well --

24          MS. RICHARDS:  We have no knowledge --

25          THE COURT:  Oh, I see --

 1          MS. RICHARDS:  -- that those parties have been served.

 2          THE COURT:  -- GMAC Mortgage, as servicer for, so GMAC

 3   Mortgage is the only defendant?

 4          MS. RICHARDS:  GMAC Mortgage and Homecoming Financial

 5   are all he -- and MERS are the only parties he actually names.

 6       (Pause)

 7          THE COURT:  So if I grant the debtors' motion to

 8   dismiss, what happens to the claim against MERS?  I mean,

 9   you're not the only defendant in the case.  I'm just -- I'm

10   really trying to be very practical about what happens here.

11          MS. RICHARDS:  Your Honor, as I think I mentioned

12   before, I don't know if MERS has been served.  We don't

13   represent MERS.

14          THE COURT:  I don't think anybody's been served.

15          MS. RICHARDS:  So I will also mention, Mr. Williams

16   has filed proofs of claim in the bankruptcy case against the

17   debtors.

18          THE COURT:  All right.  Pending before the Court is

19   the debtors' motion for dismissal of the adversary proceeding

20   pursuant to Bankruptcy Rule 7012(b)(5) and (b)(6), or in the

21   alternative, permissive abstention pursuant to 28 U.S.C.

22   1334(c)(1).  That's ECF docket number 3.

23          In the motion, GMAC and debtor and debtor-in-

24   possession seeks to dismiss the adversary proceeding, commenced

25   by pro se plaintiff Todd A. Williams, for insufficient service

1   of process and failure to state a claim upon which relief can

2   be granted, or in the alternative, requesting that the Court

3   exercises its discretion to abstain from exercising

4   jurisdiction of the adversary proceeding.

5        In support of its motion, GMAC Mortgage submits the

6   declaration of Jennifer Scoliard, dated November 12, 2012.

7   It's ECF docket number 3, Exhibit A.

8        The plaintiff filed a response to the debtors' motion

9   to dismiss.  That's ECF docket number 11.

10       The Court grants the debtors' motion to dismiss for

11  insufficient service under 12(b)(5) and failure to state a

12  claim under 12(b)(6).  I won't recount the history that's set

13  forth in the papers, other than the reference already made to

14  the fact that Mr. Williams is a serial bankruptcy filer, having

15  filed seven bankruptcy petitions in the Northern District of

16  Georgia.  His sixth bankruptcy case was dismissed on August 17,

17  2012, pursuant to Section 109(g) of the Bankruptcy Code,

18  precluding Williams from filing another bankruptcy for 180 days

19  after entry of the dismissal order.  Notwithstanding Williams'

20  statutory ineligibility for bankruptcy protection, on September

21  4, 2012 he filed a seventh petition in case number 12-72201.

22  That petition was dismissed sua sponte.  In dismissing the

23  seventh petition, the bankruptcy court also ordered that: "the

24  filing of the seventh case did not give rise to the automatic

25  stay so that any foreclosure sale that took place after the

1  filing of the petition in the present case is valid to the

2  extent otherwise valid under state law."

3          On September 4th, that same day, the foreclosure sale

4  took place and the property was sold.

5          On September 28, 2012, Williams filed his adversary

6  complaint in this case.  The summons and notice of pre-trial

7  conference was issued on October 2, 2012.  As of today's date,

8  the plaintiff has not filed an affidavit of service of the

9  complaint and summons, and GMAC Mortgage asserts it has no

10 record of being served, either directly or through its counsel

11 or registered agent.

12         The complaint recites a fairly incomprehensible group

13 of allegations with things such as alleged robo-signing,

14 fraudulent assignment of note, lack of permission to sell the

15 property, rescission of the foreclosure sale.  In his response

16 that he filed, Mr. Williams said that GMAC moves to dismiss the

17 complaint "on the basis that the plaintiff failed to allege

18 sufficient facts to support his preference, avoidance and

19 fraudulent transfer claims."  I don't know where he got that

20 from.  Those were new and unsupported allegations, not in the

21 complaint.

22         With respect to 12(b)(5), there is no affidavit of

23 service that's been filed.  The defendant has come forward with

24 evidence that it was never served with the complaint.  And

25 clearly, 12(b)(5) provides a basis for dismissing the

1  complaint, although the law in the Second Circuit would give

2  the court the discretion whether to simply serve this and not

3  dismiss the complaint, but I choose to dismiss the complaint.

4        With respect to 12(b)(6), Rule 8(a)(2) requires the

5  complaint to contain a short and plain statement of the claim

6  showing that the pleader is entitled to relief.

7        And to survive a motion to dismiss under Rule

8  12(b)(6), a complaint must contain sufficient factual matter,

9  accepted as true, to state a claim to relief that is plausible

10 on its face.  That's the Iqbal case, 129 S. Ct. 1937, 1949

11 (2009).

12       The Court draws all reasonable inferences in favor of

13 the nonmoving party, and I'm more solicitous of the complaint

14 filed by a pro se party, as is the case here.

15       The Court uses a two-prong approach when it's

16 considering a motion to dismiss.  First, the Court must accept

17 all factual allegations in the complaint as true, discounting

18 legal conclusions clothed in factual garb.  Second, the Court

19 must determine if these well-pleaded factual allegations state

20 a plausible claim for relief.  And plausibility determination

21 is not done in a vacuum; it's a context-specific task that

22 requires the reviewing court to draw on its judicial experience

23 and common sense.

24       I've applied all of those standards here, and this

25 complaint simply fails to state a claim for relief.  Therefore,

1    the defendant's motion to dismiss is granted.  The order should

2    provide that for the reasons stated on the record during the

3    hearing the motion to dismiss is granted under 12(b)(5) and

4    12(b)(6).

5            MS. RICHARDS:  Thank you, Your Honor.

6            Moving on, the next matter on the agenda is the

7    adversary proceeding filed by George V. (sic) Wagner, case

8    number --

9            THE COURT:  Van Wagner.

10           MS. RICHARDS:  Van Wagner, yes.  It's case number 12-

11   01913.  Your Honor, we understand Mr. Van Wagner is pro se, and

12   as we advised your chambers yesterday, we have reason to

13   believe his is incarcerated.  We do not know if he's appearing

14   telephonically.  I don't know if you're able to --

15           THE COURT:  Mr. Van Wagner, are you on the telephone?

16           What is the basis for your belief that he's

17   incarcerated?

18           MS. RICHARDS:  Your Honor, SilvermanAcampora has

19   attempted to reach out.  I will let them give you a little

20   background --

21           THE COURT:  Okay.

22           MS. RICHARDS:  -- on the information they've obtained.

23           MR. FRIEDMAN:  Your Honor, on January -- Ronald

24   Friedman from SilvermanAcampora.  On January 15th, 2013, our

25   office sent an overnight letter to Mr. Van Wagner requesting

1  that he contact our firm regarding the adversary proceeding.

2  We then, a week thereafter, sent a certified return receipt in

3  First-Class Mail to Mr. Van Wagner at the P.O. box address that

4  we were able to locate for him.  We then --

5          THE COURT:  Is that a prison address?

6          MR. FRIEDMAN:  I believe that the P.O. box is not a

7  prison address.  We received an e-mail yesterday directed to my

8  office, at 11:41, regarding George Van Wagner.  It had

9  regarding the case number, the main ResCap case number of 12-

10  12020.

11          And I'll read the letter -- the e-mail:  "Dear sir, I

12  am writing upon request to inform you that due to unforeseen

13  circumstances, Mr. George Van Wagner is unable to communicate

14  with anyone at this time.  I am sure he will contact you to

15  discuss any pending matters, or designate someone to do so on

16  his behalf, as soon as he is able.  I apologize for the lack of

17  information provided.  However, we do not have permission to

18  convey anything additional.  Correspondence can be sent and

19  will be received and held for Mr. Van Wagner at the address you

20  have on file, the P.O. box in Martinsburg, West Virginia."  And

21  then it just says "Thanks", with no signature or other frame of

22  reference.  The basis --

23          MR. ARTHUR:  Your Honor, this is Chris Arthur.  I can

24  give a more definitive answer on this.  The circuit court of

25  Berkeley County, West Virginia held a hearing in late November.

RESIDENTIAL CAPITAL, LLC, ET AL.                    54

1   The circuit judge confirmed that Mr. Van Wagner was

2   incarcerated, and that's why he was unable to appear at the

3   hearing.  I don't know the charges, and I didn't inquire, but

4   as of end of November he definitely was incarcerated.

5          THE COURT:  I'm sorry, may I ask who you are?

6          MR. ARTHUR:  I'm sorry, sir.  It's Chris Arthur on

7   behalf of Seneca Trustees.

8          THE COURT:  Okay.  Thank you.

9          Anything else, Mr. Friedman?  Mr. Friedman, anything

10  else?

11         MR. FRIEDMAN:  Just to note, we did a search on a

12  docket, and it looked like he was still incarcerated, based on

13  a docket online on January 10th of 2013.  So we believe that to

14  be the case, based on the best available information we have,

15  Your Honor, which you now have as well.

16         THE COURT:  Thank you.

17         Ms. Richards?

18         MS. RICHARDS:  So, firstly, I understand the Court

19  wants to proceed in --

20         THE COURT:  I do.

21         MS. RICHARDS:  -- his absence.  Okay.  Your Honor,

22  today is scheduled, again, as both a pre-trial conference in

23  the case; in addition, the debtors had filed a motion to

24  dismiss, and we understand three groups of other named

25  defendants have also filed their own motions to dismiss.  In

1    addition, several defendants filed a joint answer.

2        Again, I guess we'll take the pre-trial conference

3    first, unless you want to --

4        THE COURT:  No --

5        MS. RICHARDS:  -- dive into the motions to dismiss?

6        THE COURT:  -- let's deal with the motion to dismiss.

7        MS. RICHARDS:  Okay.

8        THE COURT:  Let me just sort of get to the point.  Mr.

9    Van Wagner is a debtor in a bankruptcy case pending in the

10   Northern District of West Virginia, case number 08-00435.  It

11   was originally filed as a Chapter 11, converted to a Chapter 7.

12   I looked at the docket this morning, it's 111 pages long.  The

13   case remains open.  Many of the issues that Mr. Van Wagner

14   raises in this case have been raised in bankruptcy court, state

15   court, federal district court, and now here.

16       Let me ask, this does have the long list of

17   defendants, Residential Funding, being the lead defendant, but

18   the other eleven defendants are not debtors in this court.

19   When I read the complaint, I don't understand what causes of

20   action Mr. Van Wagner is purporting to allege against which

21   defendants because he doesn't make that clear.  And I realize

22   you represent the debtor and not -- and we have some lawyers on

23   the phone, I guess, for nondebtor defendants.  Is there subject

24   matter jurisdiction as to the nondebtor defendants?  These are

25   all state -- well, I guess they're not all state law causes of

1    action.  I guess he purports to allege, perhaps, some federal

2    statutory claims.  But I don't see the basis for 1334

3    jurisdiction.

4         I should also say that the complaint alleges, as the

5    basis for jurisdiction, 1332, diversity of citizenship

6    jurisdiction.  There are nondiver -- in any event, there -- I

7    guess his case in federal district court was already dismissed

8    for lack of jurisdiction, because there are nondiverse

9    defendants that are named.  So I mean, the only basis for the

10   nondebtor defendants to be here would be 1334.  But I didn't

11   see anything that would show the conceivable effect on the race

12   of the debtors' estate from claims that had preceded when the

13   debtor became the servicer of the loan.

14        But let me hear from -- do we have counsel for any of

15   the other moving parties on the phone or in the court?  Come on

16   up.

17        MR. ABRAMS:  Good morning, Judge.

18        MR. ARTHUR:  Chris Arthur appearing for --

19        THE COURT:  Let -- we have one in the courtroom, and

20   then I'll let you speak from the phone, okay?

21        All right, go ahead.

22        MR. ABRAMS:  Good morning, Judge.  David Abrams,

23   Strongin Rothman & Abrams, here on behalf of the law firm

24   Flaherty, Sesabaugh & Bonasso, as well as attorneys Peter

25   DeMasters and Susan Romain who are partners in that law firm.

1          THE COURT:  Okay.

2          MR. ABRAMS:  We have moved to dismiss, essentially, on

3    failure to state a claim grounds.  There are no allegations

4    whatsoever in the complaint.

5          THE COURT:  But what I've got to deal with first is,

6    is there subject matter jurisdiction?  The first thing I have

7    to decide is whether there's subject matter jurisdiction.

8          MR. ABRAMS:  Your Honor, I would tell you no, except

9    that there's insufficient factual allegations in the complaint

10   for our clients to even know what the claims are.  So other

11   than being listed as parties involved and the law firm being

12   listed as counsel to PNC, who's the successor, as alleged, just

13   in the "parties involved" section, to National City, there is

14   not a single allegation in the complaint.  So while I would

15   like to tell you there's no subject matter jurisdiction in the

16   case, the fact of the matter is there's no allegations at all.

17   I will tell you --

18         THE COURT:  But he certainly hasn't alleged a basis

19   for subject matter jurisdiction.

20         MR. ABRAMS:  That is correct, Your Honor.

21         THE COURT:  Okay.  I mean, in order for me to get to

22   the 12(b)(6) motion, I first have to conclude that I have

23   subject matter jurisdiction, or at least there's a colorable

24   basis for concluding there's subject matter jurisdiction.  As

25   to the clients you represent, I didn't see it in the complaint.

1       MR. ABRAMS:  Your Honor is correct; there are no

2   allegations --

3       THE COURT:  Okay.

4       MR. ABRAMS:  -- upon which this Court could exercise

5   subject matter jurisdiction.

6       THE COURT:  All right.  Let me -- when we get to the

7   12(b)(6) I'll listen to you further, okay?

8       Anybody else on the phone that wants to be heard?

9       MR. AMOS:  Your Honor, Timothy Amos for Tim Amos

10  and Golden & Amos, PLLC in West Virginia.

11      THE COURT:  Go ahead.

12      MR. AMOS:  Your Honor, it's basically the same

13  argument.  The subject property is in West Virginia, the

14  plaintiffs live in West Virginia, the vast majority of the

15  defendants are in West Virginia.  There is no subject matter

16  jurisdiction --

17      THE COURT:  Well, but that doesn't --

18      MR. AMOS:  -- and there's been no allegation --

19      THE COURT:  What you just said doesn't connect, okay?

20  The property can be in West Virginia, the defendants can be in

21  West Virginia, but that doesn't tell me whether there's a basis

22  for subject matter jurisdiction under 1334.  There could be

23  subject matter jurisdiction, there could be failure to state a

24  claim, lots of other things, but in your view, sir, is there a

25  basis for subject matter jurisdiction against your clients?

RESIDENTIAL CAPITAL, LLC, ET AL.                    59

1          MR. AMOS:  No, Your Honor.

2          THE COURT:  Okay.  Anything else you want to add?

3          MR. AMOS:  No, sir.

4          MR. ARTHUR:  Your Honor, this is Chris Arthur, if I

5     may, on behalf of Seneca Trustees.

6          THE COURT:  Yes.

7          MR. ARTHUR:  It goes a little bit further than just

8     subject matter jurisdiction.  Mr. Van Wagner has filed these

9     types of suits in at least three other courts including the

10    bankruptcy court in the State of West Virginia.  So our

11    position also is this lawsuit is barred as it relates to Mr.

12    Van Wagner.

13         THE COURT:  It may be --

14         MR. ARTHUR:  I also would assert --

15         THE COURT:  Stop.

16         MR. ARTHUR:  -- related to the -- excuse me.

17         THE COURT:  Stop.  It may be barred against him if I

18    ever got to the merits, but the first inquiry is is there

19    subject matter jurisdiction.  Is it your view --

20         MR. ARTHUR:  Yes, I'd like to add -- relay to the

21    Court, at least allegations against my client relate to state

22    law, whether or not we can proceed with foreclosure in the

23    State of West Virginia under the laws of West Virginia.  So I

24    don't think there's core -- this is a core proceeding and this

25    particular court has jurisdiction.

RESIDENTIAL CAPITAL, LLC, ET AL.                    60

1        THE COURT:  Anybody else for any of the other

2    defendants?  Ms. Richards, is there a basis for subject matter

3    jurisdiction against any of the defendants other than

4    Residential Funding?

5        MS. RICHARDS:  Not that the debtors are aware of, Your

6    Honor.

7        THE COURT:  You're not aware that there is conceivable

8    effect on the race of the estate regarding any purported claims

9    asserted in this document against the nondebtors?

10        MS. RICHARDS:  Not that I'm aware of, Your Honor.  I

11    will say I can't speak to whether there may be some

12    indemnification obligations to the extent any of these parties

13    were agents of the debtors, but I -- we got a --

14        THE COURT:  Can't hear you.  You're got -- your

15    trail -- your voice is trailing off.

16        MS. RICHARDS:  I don't want -- I don't know the

17    answer, but at this point I'm unaware of any basis.

18        THE COURT:  All right.  So go on with your argument on

19    the 12(b) -- there would be subject matter jurisdiction against

20    the debtor.  So let me hear your argument on dismissal as to

21    the claims against the debtor.

22        MS. RICHARDS:  Your Honor, the arguments for dismissal

23    are under 12(b)(6).  Mr. Van Wagner has failed to state a claim

24    upon which relief can be granted.  His complaint lacks any

25    factual allegations that will support any cause of action.

RESIDENTIAL CAPITAL, LLC, ET AL.                    61

1          THE COURT:  All right.  Anybody else want to be heard?

2          All right.  With respect to the motions to dismiss

3   that the Van Wagner adversary complaint and it's adversary

4   proceeding 12-01913, Mr. Van Wagner was a borrower under a

5   mortgage loan originated by Shenandoah Mortgage, LLC as of

6   October 30, 2006.  The loan was evidenced by a note in the

7   amount of 240,000 dollars which was secured by real property

8   located at 409 Three Run Road, Bunker Hill, West Virginia 25413

9   pursuant to a security deed executed as the same time as the

10  note.

11         Shenandoah signed the security deed on December 6th,

12  2006 to National City Mortgage Co.  On December 8, 2006,

13  National City assigned the security deed to mortgage to MERS.

14  The note as an allonge showing an endorsement from Shenandoah

15  to National City and National City an endor -- with an

16  endorsement in blank.

17         On July 11, 2007, plaintiff allegedly conveyed the

18  property to VAC, LLC, an entity formed and managed by plaintiff

19  subject to the note.

20         I won't go through the entire history of VAC but in

21  Mr. Van Wagner's bankruptcy case in the Northern District of

22  West Virginia, the transfer -- his transfer of the property to

23  VAC, LLC was set aside as a fraudulent conveyance and the

24  property was reconveyed to Mr. Van Wagner.

25         Again, I won't go through the entire history of --

1    it's a 111-page docket including two trips to the Fourth -- to

2    the district court, to the Fourth Circuit, each time affirming

3    decisions adverse to Mr. Van Wagner.

4            On or about February 1, 2009, GMAC replaced National

5    City as loan servicer and notified plaintiff of the transfer on

6    February 4th, 2009 and GMAC again notified plaintiff of the

7    transfer in a letter dated February 6th, 2009 which directed

8    that all payments effective February 1, 2009 be sent to GMAC.

9    Plaintiff acknowledged in his complaint that he ceased making

10   payments on the loan after receiving the notice of transfer.

11           With respect to all of the defendants other than

12   Residential Funding -- and that's National City Mortgage,

13   Golden & Amos, PLLC, Tim Amos, GMAC Mortgage -- well, GMAC

14   Mortgage, I'll leave aside -- Peter DeMasters, Flaherty,

15   Sesabaugh, Bonasso, PLLC, Susan Romain, PNC Bank National

16   Association, Seneca Trustees, Inc., Jason Manning and Troutman

17   Sanders, LLP.  So with everybody except Residential Funding and

18   GMAC Mortgage, the Court dismisses the complaint for lack of

19   subject matter jurisdiction.

20           Complaint alleges diversity jurisdiction is the basis

21   for jurisdiction here.  Clearly, there is no diversity

22   jurisdiction.  First, his action in the district -- federal

23   district court against all of the same defendants was dismissed

24   by the district court and that dismissal was affirmed by the

25   Fourth Circuit for lack of subject matter jurisdiction.  The

1   only basis for subject matter jurisdiction here would be 1334,

2   and as to the nondebtor defendants, there does not appear to

3   be -- there's certainly no basis alleged for 1334 jurisdiction

4   as to the nondebtor defendants.  There is no allegation that

5   would support any conceivable effect on the debtors' estate by

6   virtue of the claims against the nondebtors.

7           With respect to the debtors --

8       (Pause)

9           THE COURT:  -- there is a certificate of service on

10  the docket from Mr. Van Wagner.  It's ECF docket number 5, and

11  it shows service by mail -- first class mail on Residential

12  Funding, LLC, 8400 Normandale Boulevard, Suite 250,

13  Minneapolis, Minnesota 55437.  It also shows service by mail on

14  other defendants but I've already dismissed the case as to the

15  other defendants for lack of subject matter jurisdiction.

16          With respect to Residential Funding, debtors argue

17  that there is insufficient service of process and that the case

18  be dismissed under 12(b)(5).  And they allege that rather than

19  Suite 250, it should be Suite 350.  I find that this is not a

20  material shortcoming in service and, therefore -- and the

21  debtors have, obviously, received a copy of the complaint.  So

22  there was substantial compliance with the service requirements

23  with respect to Residential Funding.  So I deny the motion to

24  dismiss on 12(b)(5) grounds.

25          With respect to failure to stay the claim under

1  12(b)(6), a complaint must set out only enough facts to state a

2  claim for relief as plausible on its face.  See Vaughn v.

3  Airline Pilots Association 604 F.3d 703, 709, (2nd Cir. 2010)

4  citing the Apollo case, 129 S.Ct. 1937, 1949 (2009), where

5  complaint pleads facts that are merely consistent with

6  defendant's liability and stop short of the line between

7  possibility and plausibility of entitlement to relief.

8  Plausibility is not akin to a probability requirement but

9  rather requires more than a sheer possibility that the

10 defendant has acted unlawfully.

11         The courts use a two-prong approach when considering a

12 motion to dismiss.  First, the court must accept all factual

13 allegations in the complaint as true, discounting legal

14 conclusions clothed in factual garb.  Second, the court must

15 determine if these well-pleaded factual allegations state a

16 plausible claim for relief.  The plausibility of determination

17 is not made in a vacuum; it is a context specific task that

18 requires a reviewing court to draw on its traditional

19 experience and common sense.

20         The claim is plausible when the factual allegations

21 permit the court to draw the reasonable inference that the

22 defendant is liable for misconduct alleged.  A complaint that

23 only pleads facts that are merely consistent with the

24 defendant's liability does not meet the plausibility

25 requirement.  A pleading that offers labels and conclusions or

RESIDENTIAL CAPITAL, LLC, ET AL.                    65

1  a formulaic recitation of the elements that the cause of action

2  will not do.  Threadbare recitals of the elements of the cause

3  of action supported by mere conclusory statements do not

4  suffice.  The pleadings must create the possibility of a right

5  to relief that is more than speculative.

6      Any fraud allegations must also satisfy Rule 9(b)

7  carried forward in Bankruptcy Rule 7009 requires that the

8  plaintiff state with particularity the circumstances

9  constituting fraud or mistake.

10      There are three elements required to plead common law

11  fraud in West Virginia.  One, that the act claim to be

12  fraudulent was the act of a defendant or induced by him.  Two,

13  that it was material and false.  The plaintiff relied upon it

14  and was justified under the circumstances in relying upon it.

15  And three, that he was damaged because he relied upon it.  See

16  Bowens v. Allied Warehouse Housing Servicing, 729 S.E. 2d 845,

17  851, 852, (W.Va. 2012).

18      Each fraud claim must be pled with particularity as to

19  each defendant against which plaintiff raises such claims.  And

20  to the extent the Court construes a complaint to include a

21  claim for wrongful foreclosure or attempted foreclosure, West

22  Virginia state courts have recognized a cause of action for

23  legal pursuit of foreclosure.  See Lucas v. Fairbanks Capital

24  Corp. 618 S.E.2d 488, 489-90 (W.Va. 2005).  Lucas held that

25  under West Virginia law, creditors in a deed of trust or their

1   representatives are not required to pursue remedies that are

2   not set out in the deed of trust or in any relevant statute to

3   attempt to cure or default prior to pursuing a foreclosure

4   under West Virginia Code Section 38-1-3 which governs

5   nonjudicial foreclosure sales.

6          Now, there are substantial arguments here that both

7   res judicata and collateral estoppel further bar Mr. Van

8   Wagner's claims in light of the extensive proceedings before

9   Judge Flatley of the Bankruptcy Court in the Northern District

10  of West Virginia.  It's unnecessary for me to reach those

11  issues, however.

12         The Court grants the motion, the 12(b)(6) motion to

13  dismiss.  Even allowing for the leeway ordinarily given to a

14  pro se debtor, the Court concludes that the complaint simply

15  fails to state a claim for relief against the debtors.

16         The plaintiff has not alleged that he is not in

17  default on the loan or the GMAC-M caused his failure to make

18  loan payments.  He asserted he stopped making payments because

19  he did not know to whom he should remit funds or that he was

20  advised to stop making payments.  But the evidence attached to

21  the complaint clearly establishes that both National City and

22  GMAC clearly instructed Mr. Van Wagner where and when to make

23  the payments and it's clear he acknowledges he didn't make the

24  payments.

25         Mr. Van Wagner has also failed to allege facts that

1  would support his request for injunctive relief.  West Virginia

2  courts held that an injunction of a nonjudicial foreclosure may

3  be appropriate in certain circumstances including when the

4  proper amount due and the debt is in dispute if the loan

5  secured by the deed of trust is usurious or if the public sale

6  violates the law.  None of those circumstances are alleged

7  here, nor are they supported by any of the allegations made in

8  the complaint.  Consequently, the debtor's motion to dismiss

9  under 12(b)(6) is granted.  The order should reflect for the

10 reasons stated on the record, the complaint is dismissed under

11 12(b)(6).

12        MS. RICHARDS:  Thank you, Your Honor.

13        THE COURT:  Okay.

14        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

15        THE COURT:  And somebody in the -- I have to -- you

16 ought to -- I ought to get one order.  I need an order that

17 makes clear that I've dismissed all the nondebtor defendants

18 for lack of subject matter jurisdiction.  Okay.

19        MS. RICHARDS:  We'll incorporate that in the same

20 order, Your Honor.

21        THE COURT:  Okay.  All right.  What's next?

22        MS. RICHARDS:  With that, Your Honor, I will cede the

23 podium to my colleague, Norm Rosenbaum.

24        THE COURT:  Thank you.

25        MR. ROSENBAUM:  Your Honor, Norm Rosenbaum for the

1    debtors.  The next matter -- matters on are the uncontested

2    matters, IV at page 8 of the docket, Your Honor, of the agenda.

3           Just to review them, for the first matter the --

4           THE COURT:  I'm sorry; what page is this on?

5           MR. ROSENBAUM:  Page 8.

6           THE COURT:  Okay.  Go ahead.

7           MR. ROSENBAUM:  Looking at document 2734 -- unless I'm

8    an agenda behind.

9           THE COURT:  Anybody wish to be heard or speak?  This

10   is the debtors' motion for an order under Section 105 and 365

11   authorizing assumption and assignment of the executory

12   contracts -- contract.  Anybody wish to be heard?

13          All right.  There was no objection.  It was filed.

14   The motion's granted.

15          MR. ROSENBAUM:  Your Honor, the second matter was a

16   motion filed by Wells Fargo to foreclose on a first lien.  We

17   advised counsel that they were the procedures in effect and

18   advised them that they had to operate under those procedures

19   and they're in the process of doing so.  And that's the

20   situation as well with the third matter.

21          THE COURT:  Well, I know you say you advised them, but

22   I got two motions pending.

23          MR. ROSENBAUM:  Well, the procedures provide that if a

24   party files a motion, notwithstanding the standing order that

25   Your Honor had entered to govern these procedures, if they file

RESIDENTIAL CAPITAL, LLC, ET AL.                    69

1    a motion, the motion is treated as if they made the informal

2    request which does not require the filing of motions, so we're

3    treating the motion under the procedures.

4           THE COURT:  All right.  Does anybody wish to be heard

5    from Wells Fargo Delaware Trust Company?

6           Does anybody wish to be heard on the First Niagara

7    Bank motion for relief from stay?

8           How is it going to work now?  I mean I have to enter a

9    disposition.  I got two pending motions.  I know you say that

10   there is an order that covers it, but I need to enter -- I

11   can't leave --

12          MR. ROSENBAUM:  Your Honor --

13          THE COURT:  -- I'm not going to leave an open docket.

14          MR. ROSENBAUM:  -- Your Honor, we can -- we'll submit

15   an order to chambers on both matters advising that those

16   motions are subject to the standing order --

17          THE COURT:  Right.

18          MR. ROSENBAUM:  -- on the first lien procedures and

19   could be dealt with --

20          THE COURT:  All right.

21          MR. ROSENBAUM:  -- will be dealt with in that manner.

22          THE COURT:  I want two orders denying the motions

23   without prejudice and indicating that they'll be dealt with

24   under the standing order.  I need to deal -- we need a

25   disposition for the pending -- it isn't enough to say they'll

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1   be dealt with under something else.  I need to either grant,

2   deny or enter some other order with respect to these.  So I'm

3   denying them without prejudice and indicate that they'll be

4   dealt with in accordance with the procedures.

5           MR. ROSENBAUM:  Your Honor, we're happy to do that and

6   I don't want to waste the Court's time, and if you don't want

7   to hear this that's fine, but the order -- the order

8   specifically provides the manner in which those motions -- if

9   the parties file a motion, that's how it's handled under the

10  procedures.  So we could save the Court the effort but we're

11  happy to do it.

12          THE COURT:  Okay.  I'm going to enter an order.  If

13  you -- I'm not locked in cement about having it saying denied

14  without prejudice, but I need to enter an -- I've been

15  having -- we've been having fits in chambers trying to track

16  back to make sure there's a disposition of all pending motions.

17  Someone in your office is going to facilitate that effort by a

18  report that they're working on.  So on each of these pending

19  motions, you need to submit an order that shows what the

20  disposition is.  If it's -- that they will be processed in

21  accordance with whatever that prior order is, that's fine with

22  me.

23          MR. ROSENBAUM:  I understand.

24          THE COURT:  I just need to make sure there's an order

25  that disposes the motion.  I can't leave two open motions on

RESIDENTIAL CAPITAL, LLC, ET AL.                    71

1    the docket.

2            MR. ROSENBAUM:  Understood, Your Honor.  We'll do

3    that.

4            THE COURT:  Okay.

5            MR. ROSENBAUM:  All right.  Your Honor, the next

6    matter is number 4 on page 9.  And this was the debtors' second

7    motion for assumption and assignment of executory contracts.

8    I'll be ceding the podium to my colleague, Alexandra Barrage.

9            MS. BARRAGE:  Good morning, Your Honor.  Alexandra

10   Barrage, Morrison & Foerster, on behalf of the debtors.

11           Your Honor, items 4 and 5 on the agenda under IV are

12   two separate motions to request approval for assumption and

13   assignment of various executory contracts that are listed on

14   the schedules to Ocwen and to Berkshire.  We received --

15           THE COURT:  And the first of those motions is ECF

16   docket number 2687 and the second of them is 2689.

17           MS. BARRAGE:  That's correct, Your Honor.  And we

18   received no objections.

19           THE COURT:  Actually, it's 2688; I'm sorry.

20           MS. BARRAGE:  That's correct, Your Honor.  I'm --

21           THE COURT:  2688.

22           MS. BARRAGE:  2687 --

23           THE COURT:  87 and 88 are the two.

24           MS. BARRAGE:  -- and 88.  And we received no

25   objections to those --

RESIDENTIAL CAPITAL, LLC, ET AL.                    72

1          THE COURT:  Okay.  Anybody wish to be heard with

2     respect --

3          MS. BARRAGE:  -- motions.

4          THE COURT:  -- to those two motions?

5          All right, they're both granted.

6          MS. BARRAGE:  Thank you, Your Honor.

7          All right.  Your Honor, if I may, we have a request to

8     skip over V and just deal first with the cure objections under

9     VI.

10          THE COURT:  Fine.

11          MS. BARRAGE:  I think those are --

12          THE COURT:  Fine.

13          MS. BARRAGE:  -- fairly straightforward.

14          THE COURT:  Okay.

15          MS. BARRAGE:  I'd like to cede the podium to Mr.

16     Goren.  Thank you, Your Honor.

17          MR. ENGELHARDT:  Hello, Your Honor.  Despite previous

18     advertisement, Stefan Engelhardt for Morrison & Foerster.  I'm

19     here just to quickly brief Your Honor on the status update for

20     the Digital Lewisville lease.

21          The debtors and the landlord have successfully

22     resolved a cure claim asserted by the landlord.  There is

23     pending before the Court, it's on for presentation tomorrow, a

24     stipulation resolving that claim.  The parties are currently

25     working through -- resolving the objection of the landlord to

RESIDENTIAL CAPITAL, LLC, ET AL.                    73

1  the assumption and assignment of the lease.  And those are

2  four-party negotiations that are progressing.  There is a

3  working stipulation between the debtors, Ocwen, and the

4  landlord in circulation.  We hope it to be resolved this week.

5  With that, we'd like to hold this over to the next -- for the

6  next omnibus hearing.

7      THE COURT:  So that's February 7th, I guess.  Right?

8      MR. ENGELHARDT:  February 7th.

9      THE COURT:  Okay.  That's fine.

10     MR. ENGELHARDT:  Thank you very much, Your Honor.

11     THE COURT:  Thank you.

12     MR. GOREN:  Now, it's my turn again.  Todd Goren,

13  Morrison & Foerster on behalf of the debtors.

14     Just wanted to give you a brief update on where we

15  stand with Wells Fargo.  It was listed as going forward but we

16  managed to reach a tentative resolution with them late last

17  night which is still subject to documentation.  Essentially, we

18  agreed that we would provide Wells Fargo sixty days post-

19  closing to assert any cure claims.  An escrow will be

20  established in an amount of one million or less.  The exact

21  amount is still being negotiated but we're comfortable it will

22  be in that range.  And that's for reimbursement of unpaid

23  claims after the sixty-day period.

24     Wells has asserted that there's approximately 2.7

25  million in non-P&I advances for which they have asserted claims

1    but the debtors have not yet paid.  The debtors have reviewed

2    those claims and determined that about 1.4 million is properly

3    due and payable, some of which may already have been paid in

4    the ordinary course.  To the extent it hasn't already been

5    paid, it will be paid promptly in the ordinary course.

6         With respect to the balance of the last 1.3 million,

7    the issue is in many cases one of -- simply one of timing.  The

8    claim asserted by Wells is not currently due and payable.  The

9    debtors --

10        THE COURT:  They just wanted to be sure somebody was

11   going to pay them.

12        MR. GOREN:  That's basically right.  And they wanted

13   some period of time post-closing to figure out that they're

14   getting paid properly.  So the debtors or the purchaser, as

15   required by the sale order, will pay it post-closing and to the

16   extent any amounts remain unpaid after the sixty days, we'll

17   work with Wells to see if we can come to an agreement on what

18   that number is and look to the escrow for that or come back to

19   Your Honor if we have to.

20        Based on this resolution, Wells -- the Wells

21   agreements are being assigned to both Berkshire Hathaway and

22   Ocwen.  So Wells has agreed to consent to the assumption and

23   assignment, based on this agreement on the record, on the 31st.

24   We'll hopefully get this documented in the next couple days so

25   this won't be an issue with respect to the Ocwen sale but just

RESIDENTIAL CAPITAL, LLC, ET AL.                    75

1  to adjourn this matter to the February 7th hearing, just in

2  case.

3          THE COURT:  Thank you, Mr. Goren.

4          MR. GOREN:  And counsel for Wells is in the courtroom.

5          THE COURT:  Okay.  Come on up.

6          MR. ALBANESE:  Good morning, Your Honor.  Chris

7  Albanese, Gibbons PC on behalf of Wells Fargo Bank as servicer,

8  and we're just agreeing to what debtors said.

9          THE COURT:  Thanks very much.

10         Mr. Goren.

11         MR. GOREN:  I'll turn it over to my colleague, Norm

12  Rosenbaum, who will be handling the last two lift stays, I

13  believe.

14         THE COURT:  Okay.

15         UNIDENTIFIED SPEAKER:  Your Honor, may I be excused?

16         THE COURT:  Yes.

17         MR. ROSENBAUM:  Norm Rosenbaum, again, Your Honor, for

18  Morrison & Foerster.

19         Your Honor, the last two items on the agenda today are

20  the motion of Kenneth Kral and other similarly situated relief

21  from the stay.  That's docket number 1536.  Your Honor, this

22  matter was adjourned on consent with counsel to the Krals, and

23  a notice of adjournment was filed; an affidavit of service was

24  filed.  I don't believe counsel for Mr. Kral has made an

25  appearance.

 1          MR. ROBERTS:  That's incorrect, Your Honor.  Joseph
 2   Roberts appearing --
 3          MR. ROSENBAUM:  Excuse me.
 4          MR. ROBERTS:  -- for Mr. Kral and the proposed class.
 5          THE COURT:  Okay.
 6          MR. ROSENBAUM:  I apologize.  I will cede to Mr.
 7   Roberts.
 8          THE COURT:  All right.  Go ahead.
 9          MR. ROBERTS:  Well, Your Honor, there's a class action
10   pending against GMAC related to the filing of improperly
11   notarized documents to facilitate foreclosure.  We've got two
12   similar cases pending:  one against Chase and one against
13   Aurora.  And we've run into subject matter jurisdiction issues
14   in federal court and those court cases are now in state court.
15          We're seeking relief so that we can pursue the cases
16   which seek purely equitable remedies; a purging, in a sense, of
17   those documents that have been filed based on these improper
18   notarizations that are documented in the OCC consent order with
19   GMAC.  If we are not able to obtain relief, then these
20   documents will remain in the public record, and what they
21   create, in essence, is an evidentiary presumption under
22   California law as to the validity of the documents and they're
23   on a daily basis used against homeowners so that the debtor can
24   prevail -- and GMAC can prevail in individual foreclosure
25   defense cases, in relief of stay matters, and it creates an

1   unlevel playing field in that these documents should not carry

2   with them this presumption of validity because they were mostly

3   improperly notarized.  And the remedy that we're seeking is

4   somewhat of a purging or some type of way to unpollute this

5   public record so as to relevel the playing field for

6   individuals who are either in foreclosure or in bankruptcy

7   where standing is an issue.

8           THE COURT:  Anything else you want to add?  Have

9   you -- you want to discuss the Sonnax factors?  Do you know

10  what you --

11          MR. ROBERTS:  Well, Your Honor, all I saw in terms of

12  a defense was the cost of having to potentially go through the

13  public record and purge these issues and the fact that it would

14  inhibit the ability of the debtor to reorganize.  However,

15  we've heard about the progress that's been made in terms of the

16  selling of the major assets of the debtor.  I don't see that we

17  can -- sure, we can say because of the cost that this remedy

18  should be completely ignored and these folks will not have the

19  ability to go forward and have their day in court, in a sense,

20  without having to battle this presumption of validity based on

21  these documents.

22          THE COURT:  If I --

23          MR. ROBERTS:  But something besides cost has to be

24  argued, I would think.

25          THE COURT:  As I understand it, the California action

1   is in the early stages of litigation.  It's not trial ready.

2   You have a bunch of other cases pending against other

3   defendants, but this case -- which court is it pending in?

4        MR. ROBERTS:  They're in the -- well, this particular

5   court case is in the central district federal court and the

6   other two have now been moved over to the superior court in --

7   both in Orange County, California.

8        THE COURT:  What's the basis for federal jurisdiction

9   in the federal district court action?

10       MR. ROBERTS:  Well, there's none as we've learned from

11  what's happened in the other cases.  Both courts in the Chase

12  and the Aurora cases have said we don't have subject matter

13  jurisdiction because this impinges on the regulator, the OCC's

14  regulatory powers.  And, therefore, we're not going to reach

15  the merits, we're going to dismiss.  You can take this into

16  state court.  So we've refiled in state court on these other

17  two cases and we're going to have to do the same thing --

18       THE COURT:  Right.

19       MR. ROBERTS:  -- if we can get relief of stay and go

20  into Superior Court.

21       THE COURT:  So, if --

22       MR. ROBERTS:  But we don't have the issues.

23       THE COURT:  All right.  So basically, what you're

24  telling me is that not much has happened in the federal

25  district court, and in all likelihood if I lift the stay, the

1   federal court action is going to be dismissed and you're going

2   to have to refile the case in Los Angeles Superior Court.  Is

3   that a fair summary?

4        MR. ROBERTS:  That's my intention, Your Honor, based

5   on what's happened since this matter's begun and we've got the

6   rulings in the other two cases.

7        THE COURT:  Okay.

8        MR. ROBERTS:  We know we've got some subject matter

9   jurisdiction issues and if -- regardless of what happens here

10  today, I'll advise the court in Los Angeles that based on the

11  precedent of the other two judges, we should probably dismiss

12  the case and then move this into state court.  But it's the

13  right to sue without the stay being in the way that I'm really

14  seeking today whether it is in the federal case or in the

15  subsequent state court that I expect to file.

16       THE COURT:  Well, nothing stops you -- if what you're

17  seeking is equitable relief, nothing stops you from filing an

18  adversary proceeding in this court under 7001(7); if you're

19  seeking equitable relief, that's a basis for an adversary

20  proceeding here against the defendants.  The question is what

21  basis have you shown for me to lift the stay to have you go off

22  initially in federal district court and you acknowledge that

23  you're going to have to dismiss that case and refile in

24  Superior Court in Los Angeles.  That triggers clearly the

25  twelve-prong test that the Second Circuit Sonnax decision sets

1   forth; nonexclusive factors, not all applicable in every case.

2   Do you want to briefly address how, under the Sonnax factors,

3   you believe you're entitled to have this Court lift the stay?

4          MR. ROBERTS:  Well, Your Honor, the first thing I

5   would argue would be that we're going to run into the same

6   jurisdictional problems if I file an adversary proceeding.  And

7   I have to admit that I'm not familiar enough with adversary

8   proceedings to say that we're not going to run into the issue

9   of are we going to be bump -- is this Court going to be

10  restricted by the regulator's power in the same way that the

11  federal court was restricted and not have the ability to modify

12  or affect this consent order.  It's part of the subject matter

13  of the underlying lawsuit.

14         THE COURT:  Well, let's assume I can't -- if there's a

15  consent order and if it's valid and binding and I can't do

16  anything about it, that's the law that will apply.  But if

17  that -- are you acknowledging that under the consent order that

18  you have no right to relief?

19         MR. ROBERTS:  I do not.  In the federal court I do

20  not.  In state court, we clearly do.  And that's why we're back

21  in state court.  The state courts are not courts of limited

22  jurisdiction and the actions, in a sense, are having an effect

23  on the public records, they're disregarding the notary laws.

24  This is clearly the domain of a superior court.

25         The first thought was to bring it into federal court

1  because we thought there would be a better understanding of

2  these issues but Chase and Aurora both effectively raised the

3  issue of subject matter jurisdiction.  And I'm just concerned

4  if I bring an adversary proceeding we're going to be arguing

5  about the same issues and we're going to end up in the same

6  place where the court's going to say, well, we don't have

7  jurisdiction because of the consent order.  But there is a

8  venue out there and that would be the California Superior Court

9  that could address the issues.

10        THE COURT:  All right.  Mr. Rosenbaum, let me hear

11  from the debtors' counsel.

12        MR. ROSENBAUM:  Thank you, Your Honor.

13        THE COURT:  Would this Court have jurisdiction in an

14  adversary proceeding?

15        MR. ROSENBAUM:  This Court would have jurisdiction for

16  injunctive relief, Your Honor.

17        Your Honor --

18        THE COURT:  1334 would provide the basis for

19  jurisdiction over the debtors and Rule 7001(7) is the provision

20  in the Bankruptcy Rules on bringing an adversary proceeding

21  where you're seeking equitable relief.  What's the impact of

22  the OCC consent order?  I guess here, it's really the Federal

23  Reserve Board consent order.

24        MR. ROSENBAUM:  Your Honor, we haven't addressed the

25  merits of that in the context of this action.  This is only a

1    motion for relief.  We did argue in our opposition that the

2    conduct alleged in the complaint was the very same conduct that

3    was the subject of the consent order.  And so in terms of

4    monitoring and correcting those wrongs, that has been addressed

5    by the consent order.  This seemed, from the face of the

6    complaint, entirely duplicative of that.

7              THE COURT:  So if there are improperly notarized or

8    prepared documents that have been filed in the California land

9    records, how does the consent order -- what does it require the

10   debtors to do?

11             MR. ROSENBAUM:  Well, I think it would be part of the

12   review that's required of the foreclosure review and to

13   correct --

14             MR. ROBERTS:  Which has just been cancelled because it

15   was ineffective.

16             THE COURT:  Stop.  I will allow you to speak but only

17   after Mr. Rosenbaum has completed and I've asked him my

18   questions.  Don't interrupt.

19             MR. ROBERTS:  I apologize, Your Honor.

20             THE COURT:  Go ahead, Mr. Rosenbaum.

21             MR. ROSENBAUM:  I believe what it requires, Your

22   Honor, and frankly there's other counsel here and other

23   attorneys at our firm and other firms working on this that are

24   better prepared to speak to this than I, but I believe that it

25   requires the review of the foreclosures and to the extent there

1   are things that need to be corrected are corrected in terms of

2   the robo-signing type allegations.

3           THE COURT:  All right.

4           All right.  Counsel, do you want to be heard further?

5   Go ahead.

6           MR. ROBERTS:  Just briefly, Your Honor.

7           First of all, the consent orders do not address

8   California law and the criminal element of soliciting and

9   influencing individuals to engage in improper notarial acts.

10  That's unique to California.  It's not mentioned -- there's one

11  line about notarization in the consent order.

12          Furthermore, the independent foreclosure reviews that

13  counsel refers to have just been abandoned by the OCC and the

14  Fed because of -- because of the fact that they were

15  ineffectual.  They were spending too much money on the reviews,

16  and we're waiting to hear how they're going to proceed.  Last

17  we heard, they're just going to simply let the banks determine

18  who's going to get funds and who's not.

19          The problem is is those borrowers that are not going

20  to be affected by the consent order as well.  The consent order

21  applies to 2009, 2010, 2011 but this foreclosure crisis

22  continues and these documents are still in the public record

23  and will continue well after the consent order is over.  And

24  now that California has instituted a homeowner bill of rights,

25  standing is more of a cause of action and there's going to

1  probably be more suits based on these standing issues.  When an

2  individual debtor files their claim and standing is an issue,

3  or if they're in a Chapter 7 or Chapter 13 relief of stay is at

4  issue, when they challenge standing, the response of the debtor

5  is to bring in these improperly notarized assignments and rely

6  on the presumption of validity that is attached to them

7  uniquely pursuant to California law, and that is what makes the

8  playing field unlevel, in a sense.  Debtors individually can't

9  overcome that presumption.  So the class needs to combine its

10 resources to try to remedy the fact that these documents have

11 been put in the public record and will remain in the public

12 record as this foreclosure crisis continues.

13         THE COURT:  All right.  Anything else, Mr. Rosenbaum?

14         MR. ROSENBAUM:  Your Honor, we set forth in our papers

15 we don't believe movant has satisfied the Sonnax factors.

16         I would also add, Your Honor, Mr. Kral himself is in a

17 debtor in his own bankruptcy proceeding.  I question the

18 standing to bring these actions.  He has --

19         THE COURT:  Yes, but automatic stay doesn't prevent a

20 debtor in a bankruptcy from bringing an action.

21         MR. ROSENBAUM:  I question the standing -- it's a

22 Chapter 7, Your Honor, and I question the standing --

23         THE COURT:  Okay.

24         MR. ROSENBAUM:  -- as whether -- who really has the

25 right to bring these type of --

1       THE COURT:  I don't have those papers in front of me.

2   So -- all right, the Court's prepared to rule.

3       Pending before the Court is the motion for relief from

4   stay.  It's filed as ECF docket number 1536 filed by Kenneth

5   Kral, Lisa Strickler (sic) and all other similarly situated

6   asking the Court to lift the automatic stay to allow their

7   California tort action to proceed.  Debtors filed an objection

8   to the motion; that's ECF 1938.  The motion to lift the stay is

9   denied.

10      On February 7th, 2012, Kral and Strickler (sic)

11  commenced an action against the debtors, GMAC Mortgage LLC and

12  Executive Trustee Services LLC in California Federal Court on

13  behalf of themselves and other similarly situated; caption:

14  Kenneth L. Kral v. GMAC Mortgage LLC, Civil Number

15  2:2012cv01023 GW (OPx) Central District California 2012.

16      The first amended complaint was filed on April 25th,

17  2012 and the movants allege claims were unfair -- unlawful,

18  unfair acts pursuant to California law violation of the Truth

19  in Lending Act for failing to notify borrowers of the alleged

20  assignment of their mortgages in accordance with the law.  I

21  believe the case has been resolved as to Lisa Strickler (sic)

22  but no dismissals have been filed with respect to her.

23      The claims were based on GMAC's alleged improper

24  notarization practices with respect to mortgage documents, and

25  the movants allege that these claims arise in part from the

1  consent order issued by the Office of the Comptroller of the

2  Currency.

3          Movants seek an injunction to enjoin GMAC from

4  continuing its improper business practices and damages for less

5  than 500,000 dollars based on the TILA claim.

6          On September 24th, 2012, the movants filed this motion

7  seeking relief from the automatic stay.  They allege that the

8  Sonnax factors weigh in their favor.  They also allege that

9  Stern v. Marshall -- as a result of Stern v. Marshall, this

10  Court would lack the ability to finally adjudicate their

11  claims.  That's clearly wrong.  Any claims that would be

12  asserted by creditors against the estate are clearly part of

13  the claim's allowance process, and this Court would have the

14  power and authority to adjudicate those claims.

15          A bankruptcy petition initiates an automatic stay

16  against the debtors' estate including any act to obtain

17  possession of property of the estate or it would exercise

18  control of their property of the estate; see Section 362(a)(3).

19          Under Section 362(d), a creditor can request relief

20  from the stay either for cause including lack of adequate

21  protection.  In determining whether cause exists to lift the

22  stay, courts consider, at least in the Second Circuit, the

23  twelve nonexclusive factors set forth by the Second Circuit in

24  Sonnax Industries, 907 F.2d 1280, 1286 (2d Cir. 1990).  Not all

25  of the factors are relevant in every case and cause is a broad

1    and inflexible concept that must be determined on a case-by-

2    case basis.

3         In a request for stay relief, the moving party bears

4    the initial burden to demonstrate that good cause exists for

5    lifting the stay using the Sonnax factors, and the Court may

6    deny the motion if the movant fails to make an initial showing

7    of cause.  See Sonnax 907 F.2d at 1285.  Also, Capital

8    Commercial Federal Credit Union v. Boodrow, (In re Boodrow) 126

9    F.3d 43, 48 (2d Cir. 1997), ("We have emphasized that a

10   bankruptcy court should deny relief from stay if the movant

11   fails to make an initial showing of cause.")  Internal

12   quotations omitted.

13        As the debtors argue in their objection, nearly all of

14   the Sonnax factors applied by courts in the Second Circuit

15   weigh in the debtors' favor against lifting the automatic stay.

16   The California action is in the early stages of litigation and,

17   indeed, counsel today has acknowledged that the federal court

18   action is likely to be dismissed and a new action filed in Los

19   Angeles Superior Court.  That hasn't been filed yet.

20        No insurer has assumed responsibility for paying the

21   debtors' defense cost for the action and the case does not

22   involve third parties.

23        Overall, the balance of harms favors maintaining the

24   stay.  The movants have not put forth evidence they will suffer

25   prejudice or severe harm if the stay is not immediately lifted,

RESIDENTIAL CAPITAL, LLC, ET AL.                    88

1    and there's no evidence that GMAC initiated foreclosure

2    proceedings on the movant's property.  In fact, it is not even

3    clear that the movants have a mortgage with GMAC.

4          The movants allege that GMAC is still engaging in

5    improper business practices and the movants and purported class

6    are continuing to be harmed by such action; however, the

7    government is now strictly regulating mortgage servicers, and

8    if the consent decree has not made GMAC improve its practices,

9    it does not seem likely that an injunction issued in the

10   movant's case would make any difference.  On the other hand,

11   permitting this case to go forward would impose substantial

12   cost to the debtors and possibly its creditors.

13         Moreover, lifting the stay in this case might open the

14   floodgates to similar claims which would be contrary to the

15   prior lift stay decisions issued by this Court on similar

16   facts.

17         Should the movants wish to pursue claims for monetary

18   damages against the debtors, they can do so through the claims

19   allowance process.  If they're going to seek injunctive relief

20   against the debtors, Rule 7001(7) permits an adversary

21   proceeding to be brought against the debtors to do so.  The

22   Court makes no determination whether any consent order entered

23   into by the debtors will have any effect on what relief, if

24   any, can be granted in the event that any case is filed.

25         That will be the ruling of the Court.  The debtors'

1    counsel should prepare an order reflecting that the motion to

2    lift the automatic stay is denied for the reasons stated on the

3    record.

4            MR. ROSENBAUM:  Thank you, Your Honor.

5            MR. ROBERTS:  Thank you, Your Honor.

6            THE COURT:  Thank you.

7            MR. ROSENBAUM:  Your Honor, the last matter on the

8    agenda and at page 10, it's number 2, this is Richard D. Rode's

9    motion to lift the stay.  It was filed, I believe the same --

10   the same document was filed multiple times -- or three times,

11   excuse me, it's docket numbers 2153, 2154 and 2157.  And I

12   believe Mr. Rode, and I apologize if I'm pronouncing his name

13   wrong, has made a telephonic appearance.

14           THE COURT:  And, Mr. Rode, are you on the phone?  Mr.

15   Rode, are you on the phone?

16           Mr. Rode had checked in.  He's checked off on my phone

17   list from earlier.  In light of the fact that Mr. Rode does not

18   appear to be on the phone at this time, I'm not going to hear

19   argument.  I'll rule based on the papers.  I've read all of the

20   papers.

21           Before the Court is the motion of Richard D. Rode to

22   lift the automatic stay with duplicative filings at 2153, 2154

23   and 2157.  Debtors filed an objection.  It's at 2682.  And the

24   objection is supported by the declaration of Lauren Graham

25   Delehey.  It's Exhibit 1 to the objection.   And the motion to

1  lift the stay is denied.

2          On July 21, 2011, Mr. Rode filed a petition commencing

3  the inaction in the district court of 125th Judicial District

4  of Harris County, Texas.  It's case number 2011-43161.  By the

5  original petition, Mr. Rode sought unspecified damages, actual,

6  exemplary and attorneys' fees on account of various state law

7  causes of action related to the debtors' servicing of his

8  mortgage loan.  It specifically includes breach of contract,

9  fraud in the inducement, fraud and negligent misrepresentation

10  in violation of the Texas Deceptive Trade Practices Act.

11  Defendants filed their answer to the original petition on

12  August 11th, 2011.

13          On February 6th, 2012, Mr. Rode filed a first amended

14  petition in which he asserted additional causes of action

15  against the defendants namely for conversion, breach of

16  fiduciary duty, common law and statutory fraud and accounting

17  in violations of Texas Finance Code and the Texas Theft

18  Liability Act.  The Texas action was subsequently removed to

19  the federal district court on February 9, 2012.  The debtors

20  filed their bankruptcy on May 14th of 2012.

21          The automatic stay affords one of the fundamental

22  debtor protections provided by the bankruptcy laws.  See the

23  Supreme Court's decision in Midlantic National Bank, 474 U.S.

24  494, 503 (1986).  The automatic stay maintains the status quo

25  and protects the debtors' ability to formulate a plan for the

1   sale or disposition of property of the estate.  See Collier on

2   Bankruptcy, paragraph 362.03.

3        The automatic stay is intended to allow the bankruptcy

4   court to centralize all disputes concerning property of the

5   debtors' estates so that reorganization can proceed efficiently

6   unimpeded by uncoordinated proceedings in other arenas.  See

7   SEC v. Brennan 230 F.3d 65, 71 (2d Cir. 2000).  In this regard,

8   the automatic stay promotes equal treatment and gives debtors a

9   breathing spell.

10        In any motion to lift the stay under Section 362(d),

11   the Second Circuit has set out twelve nonexclusive factors for

12   courts to consider and it's in the Sonnax Industries case, 907

13   F.2d 1280, 1286 (2d Cir. 1990).  Not all Sonnax factors are

14   relevant in every case and cause is a broad and flexible

15   concept and must be determined on a case-by-case basis.  The

16   moving party bears the initial burden to demonstrate that cause

17   exists to lift the stay.

18        If the movant is an unsecured creditor, the policies

19   of the automatic stay weigh against granting the relief

20   requested.  The general rule is that the claim -- claims that

21   are not viewed as secured in the context of 362(d)(1) should

22   not be granted relief from the stay unless extraordinary

23   circumstances are established to establish such relief -- to

24   justify such relief.  See In re Leibowitz 147 B.R. 341, 345

25   (Bankr. S.D.N.Y. 1992).  See also Lawrence v. Motors

RESIDENTIAL CAPITAL, LLC, ET AL.                    92

1  Liquidation Co, (In re Motors Liquidation Co.) 2010 WL 4966018

2  at *4 (SDNY Nov. 17, 2010).

3         The Court initially observed that Mr. Rode has not

4  performed any analysis of the Sonnax factors and he has failed

5  to satisfy his burden of proof.  However, even a cursory

6  analysis of most of the relevant Sonnax factors demonstrates

7  that the stay should not be lifted in this case.

8         The Texas action was at a very early stage.

9         MR. RODE:  Your Honor?

10         THE COURT:  Yes.  Who's speaking?

11         MR. RODE:  I apologize.  This is Mr. Rode.  I was

12  disconnected and I just got called back in.

13         THE COURT:  Okay.  Mr. Rode, when you weren't on the

14  phone when I called the case, I declined to permit the debtors'

15  counsel to argue either and I'm going through and making my

16  ruling on the record.  There will be a transcript that will be

17  available.  I'm not going to summar -- I don't know when you

18  came on the line -- I'm going through in some detail and the

19  basis for my ruling denying your motion to lift the stay.  So

20  I'm not going to hear argument now.  I'm going to go ahead and

21  continue with my ruling.  If you missed the first part of it,

22  you'll have to get a copy of the transcript but --

23         MR. RODE:  Your Honor, I was --

24         THE COURT:  No.  Stop.  You were not disadvantaged.

25  I've read all the papers.  If you were on the phone when the

1    Court -- when the case was called, I would have permitted you

2    to argue.  Since you weren't there then, I'm not faulting you

3    for that.  I know you had -- I did indicate on the record

4    earlier that you had checked in before the court hearing

5    started.  You were not present on the phone when the case was

6    called.  So based on the papers before me, I'm going ahead and

7    issuing my ruling.  So you'll be able to get a transcript of

8    it.  Let me continue on with my ruling.

9            As I indicated, the Texas action is at an early stage.

10   And so even if stay relief were granted, it would not be near a

11   conclusion in the Texas court.

12           The second Sonnax factor interferes with the

13   bankruptcy case, weighs in favor of denying the motion.  In

14   addition to addressing day-to-day challenges, it is of the

15   utmost importance that the debtors devote their complete

16   efforts to the essential tasks necessary to achieve a

17   successful resolution of these cases, namely, maximizing the

18   value of their assets by working to achieve a timely closing of

19   the asset sales, consummating various settlements, complying in

20   full with the examiner's investigation, participating in the

21   mediation in order to facilitate the formulation of a Chapter

22   11 plan, and proceeding with Chapter 11 claims resolution

23   process.

24           In addition, upon the closing of the asset sales, a

25   number of the debtors' current employees, including personnel

RESIDENTIAL CAPITAL, LLC, ET AL.                94

1   and the debtors' legal department will become employees of

2   Ocwen.  As a result, the debtors will be operating with reduced

3   staff, further constraining their ability at this juncture to

4   attend to matters that are neither urgent, operational issues

5   nor directly related to the debtors' restructuring.

6        At this juncture, granting stay relief would

7   undoubtedly invite countless other lift stay motions -- I've

8   already had numerous lift stay motions -- additional lift stay

9   motions from the debtors myriad other pre-petition claimants

10  opening the floodgates to litigation that would impose

11  significant burdens on the debtors and their estates and

12  depriving the debtors of the continued breathing spell which

13  the automatic stay provides.

14       The Bankruptcy Code provides for an orderly and

15  centralized claims process.  And, Mr. Rode, if he's filed a

16  timely proof of claim will certainly have his claim considered

17  as part of the process if there are any objections to the

18  claim.

19       The seventh Sonnax factor where the litigation in

20  another forum would prejudice the interests of other creditors

21  also does not support relief because the interest of the

22  debtors or the creditors will be prejudiced if the automatic

23  stay is lifted to allow the Texas action to proceed against

24  debtors at this juncture in the Chapter 11 cases.  Having to

25  defend such an action would deplete the estate resources,

1    thereby, prejudicing other creditors of greater significance.

2    Lifting the stay would also expose the debtors to have to

3    defend countless other lift stay motions.  This would impose a

4    heavy burden on the valuable time and efforts of the debtors'

5    employees and retained professionals.

6         The tenth and eleventh Sonnax factors, judicial

7    economy and readiness for trial, respectively, both weigh in

8    favor of denying a relief from stay.  As set forth above, the

9    Texas action is in its preliminary phases.  It is not trial-

10   ready and few judicial resources have been expended in

11   resolving a Texas action.

12        The debtors' priority at this time is ensuring a

13   speedy and effective reorganization process which may be

14   hindered if they are forced to litigate this and other stayed

15   lawsuits during the pendency of these cases.

16        Thus, the interest of judicial economy and economical

17   resolution of litigation are best served by denying the relief

18   from stay.

19        The twelfth Sonnax factor, balance of harms, weighs in

20   favor of denying the motion.  Mr. Rode has not demonstrated how

21   the continued suspension of the Texas action results in any

22   material prejudice to him.  Even if Mr. Rode's claims are

23   meritorious, they will be accorded general unsecured creditor

24   status against the debtors' estates.  And Mr. Rode will

25   experience no great benefit if awarded such claims sooner

1   rather than later.  On the other hand, the cost to the debtors

2   of lifting the automatic stay at this stage of the Chapter 11

3   case is substantial.

4          And since the first motion seeking relief from stay

5   was filed, dozens of similar motions have been filed in this

6   case.  The Court has issued many written opinions dealing with

7   similar lift stay motions and analyzing the Sonnax factors.

8          For the reasons summarized by the Court, the Sonnax

9   factors weigh heavily against granting Mr. Rode's motion to

10  lift the stay, therefore, the motion is denied for the reasons

11  stated on the record.

12         Mr. Rosenbaum, please prepare an appropriate order.

13         MR. ROSENBAUM:  Will do so, Your Honor.  Thank you.

14         Your Honor, I spoke too soon.  We do need to address

15  the third matter on page 10 and Ms. Barrage will be handling

16  it.

17         THE COURT:  Ms. Barrage, what is this one?

18         MS. BARRAGE:  Your Honor, Alexandra Barrage, Morrison

19  & Foerster on behalf of the debtors.

20         This is V, item number 3 on page 10 of the agenda, ECF

21  docket number 2686.  This is the debtors' first motion for

22  order under 105(a) and 365(a) on shortened notice to assume and

23  assign various executory contracts to Ocwen.

24         Your Honor, we received one objection to this motion.

25  That was an objection that was filed by CalHFA at docket number

1    2702 which is reflected on page 11 of the agenda.

2           Your Honor, I'm pleased to report that we have

3    resolved the concerns of CalHFA in terms of the cure amount and

4    the stipulation that will accompany that.  A resolution is now

5    being negotiated between the debtors and CalHFA's counsel.

6           I'm also -- I'd also like to update the Court and

7    state that Ocwen has now, as of the filing of the objection,

8    has submitted an application to CalHFA for servicer approval.

9    So that process will run its course, and hopefully the

10   remaining cure amount -- or excuse me -- cure objection issues

11   will be resolved.

12          THE COURT:  I read the papers.  What took them so

13   long?

14          MS. BARRAGE:  Your Honor, when you say "you" --

15          THE COURT:  I didn't -- it wasn't you, I understand.

16   You know, Ocwen can't sit back and, if I -- am I remembering

17   correctly because I think that the California Housing Finance

18   Agency laid out at some length their efforts to get Ocwen off

19   the dime to do something.  Okay.  I understand there's a lot to

20   be done in this.  This is -- you're the one who's standing up

21   there, I understand.  It's not you who has -- is there a lawyer

22   for Ocwen here?

23          MS. BARRAGE:  Yes, Your Honor.

24          THE COURT:  Come on up.

25          MR. LESMAN:  Good morning, Your Honor.  Adam Lesman,

1  Clifford Chance on behalf of Ocwen Loan Servicing.

2          With respect to the timing delay, I don't have much to

3  report other than it had been a --

4          THE COURT:  That you're completely asleep at the

5  switch and you wanted nothing to do with Cal --

6          MR. LESMAN:  I think there were a lot --

7          THE COURT:  -- Housing Finance.

8          MR. LESMAN:  I'm sorry.  I think there were a lot of

9  internal processes that we're still working through to get

10  ready to application which they did submit --

11          THE COURT:  You could at least respond to them and

12  tell them what -- give them a status report.

13          So you choke up this Court's calendar to deal with

14  issues.  I'm glad that Ms. Barrage indicates that there's been

15  a resolution not documented yet, but you frustrate the process

16  of this court in trying to expeditiously deal with this very

17  complex bankruptcy case.

18          MR. LESMAN:  I apologize for the delay, Your Honor.  I

19  know that they were working pretty hard to get the application

20  in prior to the hearing which the application was submitted and

21  approved -- I'm sorry -- it was submitted and is going through

22  the process and --

23          THE COURT:  When was it -- when was it submitted?

24          MR. LESMAN:  It was submitted yesterday, Your Honor.

25          THE COURT:  Oh.  Just in time for the hearing.

RESIDENTIAL CAPITAL, LLC, ET AL.                    99

1          MR. LESMAN:  Yes.

2          THE COURT:  Well, that's progress, I suppose.  Thank

3    you.

4          MR. LESMAN:  Thank you, Your Honor.

5          MS. BARRAGE:  All right.  Your Honor, with --

6    Alexandra Barrage, Morrison & Foerster again on behalf of the

7    debtors.

8          We will be filing a revised form of order to reflect

9    some language that the California Housing Finance Authority

10   (sic) has requested.

11         THE COURT:  Okay.  Is anybody from California Housing

12   Finance Agency on the phone?

13         MR. PASCUZZI:  Yes, Your Honor.  Paul Pascuzzi,

14   Felderstein, Fitzgerald, Willoughby & Pascuzzi for California

15   Housing Finance Agency.

16         THE COURT:  Thank you.  Are you satisfied that you've

17   reached, subject to documentation, you've reached a resolution

18   with the debtor?

19         MR. PASCUZZI:  Yes, Your Honor.  And I appreciate the

20   Court's comments about the timing of the application and we'll

21   do our best to get it reviewed and approved as soon as

22   possible.  I missed the February date that was reported earlier

23   about a target closing date, and I've been in contact with Ms.

24   Barrage about what will happen if we're not quite through with

25   the review process at their target closing date, but we'll keep

1    working on it, Your Honor.

2            THE COURT:  Okay.  Do the best you can.  I appreciate

3    the efforts.  Okay.

4            MS. BARRAGE:  Thank you, Your Honor.

5            MR. PASCUZZI:  Thank you.

6            THE COURT:  Thank you.

7            MS. BARRAGE:  And thank you, Mr. Pascuzzi.  That's all

8    I have on this motion.

9            THE COURT:  Thank you.

10           MS. BARRAGE:  Thank you, Your Honor.

11           THE COURT:  So are we going to --

12           MS. BARRAGE:  We will -- Your Honor, we will --

13           THE COURT:  Let's put it on the calendar for February

14   7th.  Let's see where you are.  Hopefully, it will be resolved.

15   If not, let me get a status on it.  Okay?

16           MS. BARRAGE:  That's fine with us, Your Honor.

17           THE COURT:  Thank you very much.

18           MS. BARRAGE:  Thank you.

19           THE COURT:  Mr. Marinuzzi?

20           MR. MARINUZZI:  Good afternoon, Your Honor.  I think

21   that concludes our agenda for today.  The only reason I rise is

22   to remind the Court that we were scheduled to be here later

23   this afternoon for a trial on the debtors' motion to make AIP

24   payments.  We're happy to report that we've resolved the

25   objections of the official committee of unsecured creditors and

RESIDENTIAL CAPITAL, LLC, ET AL.                    101

1   the United States Trustee's office and submitted earlier this

2   morning, just before the hearing, a form of agreed order.  I

3   don't know if Your Honor's had a chance --

4          THE COURT:  I've reviewed the order and it's

5   satisfactory with the Court and it will be entered.

6          MR. MARTINUZZI:  Thank you, Your Honor.

7          THE COURT:  Mr. Driscoll, the U.S. Trustee is

8   satisfied?

9          MR. DRISCOLL:  Yes, Your Honor.

10          THE COURT:  Thank you.  It's Mr. Driscoll from the

11   U.S. Trustee's office in the back of the courtroom.  Okay.

12          MR. MARINUZZI:  That's all we have for today, Your

13   Honor.  Thank you.

14          MR. CHENEY:  Your Honor?

15          THE COURT:  Yes.

16          MR. CHENEY:  Your Honor, if I may.  This is Kirk

17   Cheney, McKool Smith representing Freddie Mac.

18          THE COURT:  Yes.

19          MR. CHENEY:  I just want to -- we just want to make

20   one comment on the debtors' status report at the beginning

21   about that Ocwen platform sale.

22          THE COURT:  Sure.  Go ahead.

23          MR. CHENEY:  The debtor is --

24          THE COURT:  I'm sorry; just tell me your name one more

25   time.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    102

1          MR. CHENEY:  Kirk Cheney from McKool Smith.

2          THE COURT:  Okay.  Go ahead.

3          MR. CHENEY:  The debtor reported that we had an

4     agreement in principle.  We do agree with the debtor that we

5     are targeting a February 15th closing date and that internal

6     and conservator approval still need to be obtained.  And we

7     expect and hope to reach that closing target.  We just wanted

8     to note that we are still negotiating the appropriate cure

9     amount and the terms of the servicing transfer and when we do

10    arrive at an agreement we expect to file a stipulation order as

11    Freddie Mac -- as Fannie Mae has done.  But we are still

12    negotiating on those terms.

13         THE COURT:  Thank you very much.

14         MR. CHENEY:  Yes.

15         THE COURT:  All right.  Mr. Marinuzzi, anything else?

16         MR. MARINUZZI:  That's all if have, Your Honor.

17         THE COURT:  All right.  We're adjourned.  Thank you

18    very much everybody.

19         IN UNISON:  Thank you, Your Honor.

20      (Whereupon these proceedings were concluded at 12:17 PM)

21

22

23

24

25

```
 1
 2                              I N D E X
 3
 4                              RULINGS
 5                                              Page     Line
 6   Adversary proceeding 12-01935 pre-trial      38       23
 7   conference adjourned to February 7, 2013
 8   Adversary proceeding 12-01896, motion to      49       10
 9   dismiss granted under 12(b)(5) and 12(b)(6)
10   Adversary proceeding 12-01913, Van Wagner,    62       17
11   et al., except Residential Funding and GMAC
12   Mortgage, complaint dismissed for lack of
13   subject matter jurisdiction
14   Adversary Proceeding 12-01913 motion to       63       23
15   dismiss on 12(b)(5) grounds for Residential
16   Funding dismissed
17   Adversary proceeding 12-01913 12(b)(6)        66       12
18   debtors' motion granted
19   Adversary proceeding 12-01913 12(b)(6)        67        9
20   complaint motion dismissed.
21   Debtors' motion under Sections 105 and 364,   68       14
22   motion granted
23   Wells Fargo Bank motions denied without       70        2
24   prejudice pending further procedures
25
```

1                          I N D E X (Contd.)

2

3                              RULINGS

4                                              Page      Line

5   Two separate motions for assumption and        85        5

6   assignment of various executory contracts

7   granted

8   Motion of Kenneth Kral and other similarly     85        8

9   situated for relief from stay is denied

10  Motion by Richard D. Rode to lift stay denied  89        25

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          C E R T I F I C A T I O N

3

4     I, Sharona Shapiro, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8

9     _____

10    SHARONA SHAPIRO

11    AAERT Certified Electronic Transcriber CET**D-492

12

13    eScribers

14    700 West 192nd Street, Suite #607

15    New York, NY 10040

16

17    Date:  January 30, 2013

18

19

20

21

22

23

24

25