**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

# MOTION OF MASAYO RICHARDSON SEEKING LIMITED DISCOVERY FROM THE DEBTORS AND RELIEF FROM STAY IMPOSED BY THE FHFA ORDER

MFY LEGAL SERVICES, INC.

Carolyn E. Coffey, of counsel to
Jeanette Zelhoff, Esq.
299 Broadway, 4th Floor
New York, NY 10007
Telephone: (212) 417-3700
Fax: (212) 417-3891

*Attorneys for Masayo Richardson*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………….…………..… i
PRELIMINARY STATEMENT …………………………………………………….…...… 1
FACTUAL BACKGROUND ………………………………………..….………………… 2
ARGUMENT……………………………………………………………….……………. 7

    I.    THE COURT SHOULD MODIFY THE STAY TO PERMIT MS. RICHARDSON TO ACCESS INFORMATION REGARDING OWNERSHIP OF HER SECOND MORTGAGE

        A.  Six Factors Govern Whether Discovery of the Debtors Should Be Permitted…………….…………………………………………………….… 7

        B.  Ms. Richardson Should Be Granted Relief from the Temporary Stay in Order to Obtain the Information Regarding Ownership of Her Second Mortgage……………………………………………………………………. 8

CONCLUSION…………………………….……………………………...……………..……. 10

# TABLE OF AUTHORITIES

## CASES

*In re Johns-Manville Corp.*,
39 B.R. 659 (S.D.N.Y. 1984)……………………………………………………………………...8-9

*In re Residential Capital, LLC*,
480 B.R. 529 (Bankr. S.D.N.Y. 2012)………………………………………………..…...7-8

## STATUTES

11 U.S.C. § 105…………………..……………………………………………………………….7
11 U.S.C. § 362(a)………………………………………………………………………………...7

**PRELIMINARY STATEMENT**

Masayo Richardson, a Staten Island homeowner, respectfully requests a modification of the limitation on discovery of the debtors that was imposed by this Court's decision in *In re Residential Capital, LLC*, 480 B.R. 529 (Bankr. S.D.N.Y. 2012) ("FHFA Order"). Ms. Richardson is trying to prevent a foreclosure on her home and is currently in a three-month Home Affordable Mortgage Program Trial Period Plan ("HAMP TPP") with the servicer of her first mortgage, America's Servicing Company ("ASC"). *See* Affidavit of Masayo Richardson ("Richardson Aff.") at ¶¶ 2-3, 6, 8; Exhibit B. ASC, however, will not offer Ms. Richardson a permanent modification of her primary mortgage loan until her second mortgage is either satisfied or subordinated to ASC's modified mortgage. *See* Affidavit of Renee Cadmus ("Cadmus Aff.") at ¶ 3. ASC's demand is standard of first lien holders when modifying mortgage agreements. *Id.*

The only act remaining for Ms. Richardson to perform to save her home is to negotiate a resolution of the second mortgage debt. But to do that, she needs to know **who** owns and/or services ("owns") that mortgage. GMAC Mortgage, LLC ("GMAC") very recently claimed to own the second mortgage loan and likely even today owns it, but has made conflicting and confused statements about its ownership or transfer of the loan. *Id.* at ¶¶ 4-20. Citing the protection of the FHFA Order, in January 2013 GMAC refused to comply with a subpoena issued in the state court foreclosure action seeking ownership information. *See id.* at ¶ 17; Exhibit G.

By this Motion, Ms. Richardson seeks narrowly tailored relief compelling the Debtors to produce 1) information regarding the entity that currently owns Ms. Richardson's second mortgage; 2) if GMAC currently owns the second mortgage, contact information for a GMAC

1

representative who has authority to negotiate a settlement; and 3) if GMAC does not currently own the second mortgage, any pertinent information in GMAC's possession regarding the sale or transfer of the second mortgage. Discovery of this basic loan-level information as to a solitary mortgage, which is unavailable from other sources, is necessary in connection with the action *US Bank National Association, as Trustee v. Masayo Richardson, et al.* (the "Foreclosure Action"). The Foreclosure Action is not subject to any bankruptcy stay and is pending before the Honorable Joseph J. Maltese in the Supreme Court of the State of New York, Richmond County as Index No. 130451/09.[1] Accordingly, for the reasons set forth herein, this Court should grant Ms. Richardson relief from the stay of third-party discovery in order that she be afforded an opportunity to save her Staten Island home from foreclosure.

## FACTUAL BACKGROUND

In or around July 2006, Ms. Richardson purchased her home located at 1283 Bay Street, Staten Island, New York 10305. *See* Richardson Aff. at ¶ 2. Ms. Richardson financed the purchase with a first mortgage in the amount of $420,800 with an adjustable interest rate starting at 7.55% and a second mortgage in the amount of $105, 200 with an adjustable interest rate starting at 11.65%. *Id.* In or around August 2010, Ms. Richardson retained MFY Legal Services ("MFY") to defend her in the Foreclosure Action, which was filed in state court and seeks to foreclose on her first mortgage. *See* Cadmus Aff. at ¶ 2; Richardson Aff. at ¶ 3. No Debtor or affiliate is named in the Foreclosure Action.[2] MFY has engaged in extensive negotiations and attended numerous court conferences on Ms. Richardson's behalf. *See* Cadmus Aff. at ¶ 2. On

---

[1] This Motion is supported by the Affidavit of Renee Cadmus ("Cadmus Aff.") and the Affidavit of Masayo Richardson ("Richardson Aff.") filed concurrently herewith.
[2] The Foreclosure Action was brought by US Bank National Association as Trustee. Defendants in the Foreclosure Action are Masayo Richardson, Mortgage Electronic Registration Systems Inc. as nominee for Mortgage Lenders Network USA Inc., New York City Environmental Control Board, New York City Transit Adjudication Bureau, People of the state of New York, Crystal Heffeny, Ms. Masayo Richardson, and Robert Ellis. *See* Exhibit D.

2

or about September 21, 2012, ASC offered a HAMP TPP to Ms. Richardson. *See id.* at ¶ 2; Richardson Aff. at ¶ 6; Exhibit B. Counsel for ASC stated that Ms. Richardson's second mortgage would either need to be satisfied or subordinated to Plaintiff's modified mortgage in order to fully resolve the Foreclosure Action. *See* Cadmus Aff. at ¶ 3.

GMAC is an affiliated entity of Residential Capital, LLC ("Residential Capital"). *Voluntary Petition of Residential Capital, LLC for Chapter 11 Bankruptcy*, Dkt. No. 1 at 4. On May 14, 2012, Residential Capital and certain of its direct and indirect subsidiaries (the "Debtors"), including GMAC, filed petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. *Id.* (Case No. 12-12020 (MG). GMAC either does own or has recently owned Ms. Richardson's second mortgage. *See* Richardson Aff. at ¶ 4; Exhibit A. GMAC has provided MFY with incorrect and conflicting information regarding its current ownership of Ms. Richardson's second mortgage and has apparently sold and recalled the debt multiple times, effectively rendering it impossible for MFY to resolve the second mortgage issue. *See* Cadmus Aff. at ¶¶ 5-7, 10-14; Exhibit E.

MFY has made reasonable attempts to ascertain the identity of the second mortgage debt holder so that a resolution can be reached on the second mortgage debt. *See* Cadmus Aff. at ¶¶ 4-15, 18-20; Exhibits E, G, H, I, J. In or around April 2012 FBCS, Inc. ("FBCS") informed MFY that it owned Ms. Richardson's second mortgage. *See* Cadmus Aff. at ¶ 4. Upon Ms. Richardson's receiving a HAMP TPP in September 2012, MFY contacted FBCS to negotiate a resolution of the second mortgage. *Id.* On or about October 9, 2012, FBCS advised MFY that GMAC had "recalled" the second mortgage and that all discussions regarding the second mortgage must be conducted with GMAC. *Id* at ¶ 5.

3

On or about October 23, 2012, MFY spoke with a GMAC representative who stated that Ms. Richardson's second mortgage loan showed a zero balance and had been forgiven. *Id.* at ¶ 6. MFY requested that GMAC send Ms. Richardson a letter stating that the loan had a zero balance. *Id.* In or around late October 2012, Ms. Richardson received a letter from GMAC dated October 23, 2012 stating that Ms. Richardson's second mortgage had a zero balance. *Id.*; Richardson Aff. at ¶ 7; Exhibit C.

On or about November 16, 2012, MFY contacted GMAC to request that it file a satisfaction of mortgage for the second mortgage debt with the Richmond County Clerk's Office in order to remove any obstacle to conversion of her trial modification to a permanent loan modification. *See* Cadmus Aff. at ¶ 7. During that telephone call, GMAC stated that it had taken the debt from FBCS and sold it to Dyck O'Neal ("Dyck"). *Id.* The GMAC representative explained that the loan had a zero balance with GMAC because it had been sold to Dyck. *Id.*

On or about November 27, 2012, MFY called Dyck to negotiate a resolution of the second mortgage. *Id.* at ¶ 8. Dyck requested MFY send an authorization signed by Ms. Richardson giving Dyck permission to speak with MFY. *Id.* MFY sent the authorization to Dyck on November 27, 2012, via facsimile. *Id.*

On December 13, 2012, MFY called Dyck to negotiate a resolution of the second mortgage. *Id.* at ¶ 9. MFY spoke to Christina Gonzalez, who instructed MFY to e-mail her a copy of the authorization allowing Dyck to speak with MFY. *Id.* Ms. Gonzalez also stated she would send MFY a settlement checklist so that MFY could prepare a settlement offer on Ms. Richardson's behalf. *Id.*

On December 17, 2012, Ms. Gonzalez informed MFY via e-mail that the second mortgage had been recalled by Residential Funding Company. *Id.* at ¶ 10; Exhibit E**.**

4

On December 17, 2012, MFY called GMAC to again try to negotiate a resolution of Ms. Richardson's second mortgage debt. *See* Cadmus Aff. at ¶ 12. GMAC informed MFY that the loan had been sent to FBCS. *Id.* The GMAC representative was unaware that the loan had already been recalled from both FBCS and Dyck and could not say whether the file note which showed that the loan was transferred to FBCS was current. *Id.* GMAC insisted that MFY contact FBCS to negotiate a resolution of the second mortgage debt. *Id.*

On December 19, 2012, MFY contacted FBCS and FBCS replied that Ms. Richardson's second mortgage had been recalled by GMAC. *Id.* at 13. MFY explained that GMAC claimed that Ms. Richardson's second mortgage was again with FBCS. *Id.* FBCS told MFY that as long as the file showed the loan had been recalled by GMAC, FBCS could not negotiate a resolution of the second mortgage debt. *Id.*

On December 19, 2012, MFY called GMAC and informed it that FBCS had no record of currently owning the second mortgage. *Id.* at ¶ 14. GMAC informed MFY that the loan had a zero balance and was marked "paid in full." *Id.* Upon further discussion, GMAC stated that the loan had been sold to FBCS. *Id.* The GMAC representative was again unaware that the loan had already been recalled from both FBCS and Dyck. *Id.* GMAC told MFY that the loan was with FBCS and refused all requests that GMAC contact FBCS directly to let FBCS know it owned the debt. *Id.*

On January 2, 2013, MFY personally served a Subpoena Duces Tecum and Ad Testificandum (the "Subpoena") on GMAC. *Id.* at ¶ 15. The Subpoena ordered GMAC to appear at the January 11, 2013 court appearance in Ms. Richardson's foreclosure action in Richmond County Supreme Court to testify about and produce certain documents relating to the ownership of Ms. Richardson's second mortgage. *Id.* Included with the subpoena was a cover

5

letter which made clear that all Ms. Richardson sought was information regarding the entity that currently owns the second mortgage and contact information for a representative at the entity who is aware their entity owns the second mortgage and has authority to negotiate a settlement of it. *Id.*; Exhibit F. GMAC did not contact MFY in response to the Subpoena nor did it appear in court on January 11, 2013 as ordered by the Subpoena. *See* Cadmus Aff. at ¶ 16.

On or about January 18, 2013, MFY received a letter from GMAC stating that it was not obligated to respond and would not respond to the subpoena because of the FHFA Order, which extended the protection of the automatic stay to apply to anyone seeking discovery from GMAC. *Id.* at ¶ 17; Exhibit G. The letter provided contact information for Norm Rosenbaum, a Partner at Morrison Foerster LLP, the law firm representing GMAC in the bankruptcy proceeding, should MFY have any questions. *See* Cadmus Aff. at ¶ 17; Exhibit G.

On January 22, 2013, MFY telephoned Norm Rosenbaum to inform him that MFY intended to file a motion seeking limited discovery from GMAC and relief from the stay imposed by the FHFA Order if GMAC continued refusing to provide information about the ownership of the second mortgage to MFY. *See* Cadmus Aff. at ¶ 18. Mr. Rosenbaum asked that MFY send him an e-mail detailing exactly what information MFY sought from GMAC. *Id.* On January 22, 2013, MFY sent Mr. Rosenbaum an e-mail with the requested information. *Id.*; Exhibit H.

Mr. Rosenbaum did not respond to MFY's January 22, 2013 e-mail. *See* Cadmus Aff. at ¶ 19. MFY subsequently sent a follow-up email to Mr. Rosenbaum on January 28, 2013, asking whether and, if so, when GMAC would provide the second mortgage information to MFY. *Id.*; Exhibit I. On January 30, 2013, MFY sent Mr. Rosenbaum another e-mail encouraging GMAC to provide the second mortgage information to MFY in order to avoid the necessity of the instant

6

motion. *See* Cadmus Aff. at ¶ 20; Exhibit J. On January 31, 2013, MFY received an e-mail from Morrison Foerster attorney James Newton, who explained that he was looking into the matter. *See* Cadmus Aff. at ¶ 20; Exhibit J. That same day, MFY replied to Mr. Newton's e-mail and explicitly set forth the necessary information to be contained in a letter from GMAC to avoid the instant motion. *See* Cadmus Aff. at ¶ 20; Exhibit J. On February 1, 2013, after failing to receive a response from the January 31, 2013 e-mail, MFY again e-mailed Mr. Newton requesting the loan ownership information sought from GMAC. *See* Cadmus Aff. at ¶ 20; Exhibit J.

As of the date of the filing of the Motion, neither GMAC nor its counsel has provided the requested second mortgage information to MFY. *See* Cadmus Aff. at ¶ 21. The absence of the requested second mortgage information will prevent Ms. Richardson from obtaining a permanent modification of her first mortgage, and she will lose her home to foreclosure.

## ARGUMENT

**I. THE COURT SHOULD MODIFY THE STAY TO PERMIT MS. RICHARDSON TO ACCESS INFORMATION REGARDING OWNERSHIP OF HER SECOND MORTGAGE**

**A. Six Factors Govern Whether Discovery of the Debtors Should Be Permitted**

In the FHFA Order, this Court held that section 362(a) of the Bankruptcy Code does not protect the Debtors from discovery in third-party actions. *See* FHFA Order at 537. The Court nevertheless extended the protection of section 362(a) to the Debtors pursuant to section 105 of the Bankruptcy Code, thus barring any discovery from the Debtors (as third parties) absent further order of the Court. *See id.* ("To be clear . . . the Court is extending the protection of the stay pursuant to section 105(a) to *anyone* seeking discovery from the Debtors absent further order of the Court.") (emphasis in original).

7

The Court identified six factors to be considered in deciding whether to permit third-party discovery: (1) the scope of the requested discovery; (2) the context in which the request arises; (3) the need for the discovery; (4) the timing of the discovery; (5) the burden on the debtors from the requested discovery; and (6) the expense of the discovery and who should bear the cost. *Id.* at 539. The Court explained that the party seeking discovery bears the burden to establish scope (factor 1), context (factor 2), and need (factor 3). *Id.* at 544. Although both parties must come forward with evidence with respect to timing (factor 4), it is the Debtors that must demonstrate the burden and expense of the discovery being sought (factors 5 and 6). *Id.* The Court also reasoned that "[t]he greater the limitations or conditions the debtor seeks to impose on discovery, and the greater the interference that will result in the nonbankruptcy matter if limitations and conditions are imposed, the stronger the debtor's evidence and argument will need to be." *Id.*

For the reasons explained below, the factors identified by the Court in the FHFA Order overwhelmingly weigh in favor of granting relief from the temporary stay to permit Ms. Richardson to obtain access to the requested second mortgage information.

### B. Ms. Richardson Should Be Granted Relief from the Temporary Stay in Order to Obtain the Information Regarding Ownership of Her Second Mortgage

The discovery sought from the Debtors in this Motion is extremely limited. Ms. Richardson seeks to obtain information regarding ownership of her second mortgage. The Debtors can provide the requested information to Ms. Richardson at almost no cost and with minimal effort. For instance, GMAC can include the requested information in a letter. Obtaining and delivering the information regarding ownership of Ms. Richardson's second mortgage should not require substantial internal resources of the Debtors or extensive collaboration with outside vendors, nor would the task require involvement of any key decision-makers involved in strategic planning, formulation, or negotiation of the Debtor's reorganization.

*See In re Johns-Manville Corp.*, 39 B.R. 659, 661 (S.D.N.Y. 1984) (ordering production of third-party discovery requests because the requests "involve[d] primarily, or exclusively, local [ ] documents and personnel" from the debtor's manufacturing plant, and the debtor had "made no showing that this discovery would involve anyone significantly responsible for high level corporate management or reorganization negotiations").

The scope of discovery that Ms. Richardson seeks is less burdensome than the discovery the Debtors agreed to produce to FHFA in a stipulation entered in this Court. *See Stipulation and Order with Respect to the Federal Housing Finance Agency's July 17, 2012 Motion Pursuant to the July 11, 2012 Order of the Honorable Denise L. Cote Seeking Limited Discovery from the Debtors and, if necessary, to that Purpose, Relief from the Automatic* Stay, Dkt. No. 1444. The Debtors agreed to produce the loan tapes and originator information for 21 securitizations involving thousands of mortgages to FHFA. *Id.* at 2, ¶ 1. In contrast, Ms. Richardson is seeking information as to a solitary second mortgage that GMAC currently owns or has recently owned and sold. Furthermore, the Debtors entered into a stipulation with Massachusetts Mutual Life Insurance Company ("MassMutual") agreeing to produce "twelve 'collateral files,' including originator information and other loan identification information requested by MassMutual." *See Stipulation and Order with Respect to the Motion of Massachusetts Mutual Life Insurance Company Seeking Limited Discovery from the Debtors and Relief from the Stay Imposed by the FHFA Order*, Dkt. No. 2616 at 2, ¶ 1. Similar to this Motion, MassMutual sought requested discovery pertinent to a pending action in which no debtor is a party. *Id.* at 1. Ms. Richardson, however, requests narrower discovery than the agreed-upon twelve collateral files between the Debtors and MassMutual. All Ms. Richardson

9

requests is information regarding ownership of her second mortgage—information that GMAC is in the best position to provide.

In contrast to the limited burden this discovery would place on the Debtors, Ms. Richardson will experience extensive harm and prejudice if she is precluded from promptly obtaining the second mortgage information that she requires to resolve the Foreclosure Action. Whether Ms. Richardson's home will avoid being foreclosed upon depends on GMAC providing information regarding ownership of her second mortgage. Accordingly, relief from the FHFA Order is justified here because the minimal burden placed upon the Debtors if they are required to provide the requested information is far outweighed by the extensive prejudice that will befall Ms. Richardson if she is unable to determine what entity owns her second mortgage.

## CONCLUSION

For the foregoing reasons, the Court should permit Ms. Richardson to access information regarding the ownership of her second mortgage as identified in the Proposed Order and grant any such other and further relief to Ms. Richardson as deemed just and proper.

DATED:    February 6, 2013
          New York, New York

                                        MFY LEGAL SERVICES, INC.

                                        By: ____/s/ Carolyn E. Coffey_____
                                        Carolyn E. Coffey, of counsel to
                                        Jeanette Zelhoff, Esq.
                                        299 Broadway, 4th Floor
                                        New York, NY 10007
                                        Telephone: (212) 417-3700
                                        Fax: (212) 417-3891
                                        *Attorneys for Masayo Richardson*