1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - - - -x

4   In the Matter of:                    Case No. 12-12020-mg

5   RESIDENTIAL CAPITAL, LLC, et al.,

6            Debtors.

7   - - - - - - - - - - - - - - - - - - - -x

8   In the Matter of:                    Case No. 12-12019-mg

9   RESIDENTIAL CAPITAL FUNDING COMPANY, LLC, et al.,

10            Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12  JENKINS, ET AL.,

13                    Plaintiffs,

14        -against-                Adv. Proc. No. 12-01935-mg

15  RESIDENTIAL FUNDING COMPANY, LLC, ET, AL.,

16                    Defendants.

17  - - - - - - - - - - - - - - - - - - - -x

18                United States Bankruptcy Court

19                 One Bowling Green

20                 New York, New York

21                 February 7, 2013

22                 10:14 AM

23  B E F O R E:

24  HON. MARTIN GLENN

25  U.S. BANKRUPTCY JUDGE

1   12-12019-mg   Residential Funding Company, LLC   Ch. 11

2   Adversary proceeding: 12-01935-mg   Jenkins et al v.

3   Residential Funding Company, LLC et al

4   (CC: Doc no. 1)  Adjourned Pre-trial Conference

5

6   12-12020-mg   Residential Capital, LLC   Ch. 11

7   (CC: Doc# 2648)  Debtors Motion for Order Under 11 U.S.C.

8   105(a) and 365(a), Fed.  R. Bankr.  P. 6006 and 9014 and Local

9   Bankruptcy Rule 6006-1 Authorizing Assumption of Unexpired

10  Lease Between DeVry Inc. and GMAC Mortgage, LLC.

11

12  Adj. Hearing Re: Cure Objections.  (Related Document no. 61)

13

14  (Doc no. 1649)  Status Update on Hearing Re: Cure Objection of

15  Digital Lewisville LLC to: (I) Debtors'  Motion for Orders:

16  (A)(I) Authorizing and Approving Sale Procedures, Including

17  Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid

18  Deadline and Sale Hearing; etc.

19

20  (CC: Doc no. 1979)  Adjourned Hearing RE: Objection of Wells

21  Fargo Bank, N.A. to Debtors' Sale Motion [Docket No. 1979]

22

23

24

25

1  (CC: Doc no. 2069)  Adjourned Hearing RE: Limited Objection of

2  Ally Financial Inc. and Ally Bank to the Debtors' Proposed

3  Platform Sale Motion [Docket No. 2069]

4

5  (CC: Doc# 2251)  Motion for Relief from Stay filed by Michael

6  Wheeler.

7

8  (CC: Doc# 2646)  Motion for Relief from Stay

9  Moot Motion has been resolved by stipulation.  The Debtors will

10  present the stipulation at the hearing.

11

12

13

14

15

16

17

18

19  Transcribed by:  Sharona Shapiro

20  eScribers, LLC

21  700 West 192nd Street, Suite #607

22  New York, NY 10040

23  (973)406-2250

24  operations@escribers.net

25

4

1    A P P E A R A N C E S :

2    MORRISON & FOERSTER LLP

3         Attorneys for Debtors

4         1290 Avenue of the Americas

5         New York, NY 10104

6

7    BY:   TODD M. GOREN, ESQ.

8         STEFAN W. ENGELHARDT, ESQ.

9         NORMAN S. ROSENBAUM, ESQ.

10        JAMES A. NEWTON, ESQ.

11        JAMIE A. LEVITT, ESQ.

12        SAMANTHA MARTIN, ESQ.

13

14

15   CHADBOURNE & PARKE LLP

16          Attorneys for the Examiner

17          30 Rockefeller Plaza

18          New York, NY 10112

19

20   BY:      HOWARD SEIFE, ESQ.

21

22

23

24

25

5

```
 1   CLIFFORD CHANCE US LLP
 2          Attorneys for Ocwen Loan Servicing, LLC
 3          31 West 52nd Street
 4          New York, NY 10019
 5
 6   BY:   JENNIFER C. DEMARCO, ESQ.
 7
 8
 9   HOGAN LOVELLS US LLP
10          Attorneys for U.S. Bank as trustee and
11           America's Servicing Company
12          875 Third Avenue
13          New York, NY 10022
14
15   BY:   BRIAN J. GRIECO, ESQ.
16
17
18   KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
19          Attorneys for Official Creditors' Committee
20          1177 Avenue of the Americas
21          New York, NY 10036
22
23   BY:   STEPHEN D. ZIDE, ESQ.
24          ELISE S. FREJKA, ESQ.
25
```

6

1 | WEIL, GOTSHAL & MANGES LLP

2 |       Attorneys for Syncora Guarantee, Inc.

3 |       767 Fifth Avenue

4 |       New York, NY 10153

5 |

6 | BY:   SARA COELHO, ESQ.

7 |

8 |

9 | CLEARY GOTTLIEB STEEN & HAMILTON LLP

10 |       Attorneys for Wilmington Trust

11 |       One Liberty Plaza

12 |       New York, NY 10006

13 |

14 | BY:   JEREMY R. OPOLSKY, ESQ.

15 |

16 |

17 | SILVERMANACAMPORA LLP

18 |       Special Counsel to the Committee

19 |       100 Jericho Quadrangle

20 |       Suite 300

21 |       Jericho, NY 11753

22 |

23 | BY:   JUSTIN S. KRELL, ESQ.

24 |

25 |

1    WHITE & CASE LLP

2         Attorneys for Ad Hoc Group Of Junior Secured Noteholders

3         1155 Avenue of the Americas

4         New York, NY 10036

5

6    BY:   HARRISON DENMAN, ESQ.

7

8

9    GIBBONS P.C.

10        Attorneys for Wells Fargo as Servicer/Subservicer

11        One Pennsylvania Plaza, 37th Floor

12        New York, NY 10119

13

14   BY:   CHRISTOPHER A. ALBANESE, ESQ.

15

16

17   KELLEY DRYE & WARREN LLP

18        Attorneys for UMB Bank

19        101 Park Avenue

20        New York, NY 10178

21

22   BY:   CATHERINE L. THOMPSON, ESQ.

23

24

25

```
 1   PATTERSON BELKNAP WEBB & TYLER LLP

 2          Attorneys for Ambac Assurance Corporation

 3          1133 Avenue of the Americas

 4          New York, NY 10036

 5

 6   BY:   DAVID W. DYKHOUSE, ESQ.

 7

 8

 9   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10          Attorneys for Barclays Bank PLC

11          Four Times Square

12          New York, NY 10036

13

14   BY:      JONATHAN H. HOFER, ESQ.

15

16

17   ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

18          Attorneys for Digital Lewisville

19          1900 Main Street

20          5th Floor

21          Irvine, CA 92614

22

23   BY:   IVAN GOLD, ESQ.

24

25
```

9

1   KIRKLAND & ELLIS LLP

2          Attorneys for Ally Financial Inc. and Ally Bank

3          601 Lexington Avenue

4          New York, NY 10022

5

6   BY:   ANTHONY GROSSI, ESQ.

7

8

9

10   FELDERSTEIN FITZGERALD WILLOUGHBY & PASCUZZI LLP

11          Attorneys for Creditor, CHFA

12          The Wells Fargo Center

13          400 Capitol Mall,  Suite 1450

14          Sacramento, CA 95814

15

16   BY:   PAUL PASCUZZI, ESQ. (TELEPHONICALLY)

17

18

19   MUNGER, TOLLES & OLSON LLP

20          Attorneys for Berkshire Hathaway Inc.

21          355 South Grand Avenue, 35th Floor

22          Los Angeles, CA 90071

23

24   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

25

10

1   BRADLEY, ARANT, BOULT & CUMMINGS, LLP

2         Attorneys for Defendant Judy Faber

3         One Federal Place

4         1819 Fifth Avenue North

5         Birmingham, AL 35203

6

7   BY:   CHRISTOPHER L. HAWKINS, ESQ. (TELEPHONICALLY)

8

9   TROUTMAN SANDERS LLP

10        Attorneys for Troutman Sanders LLP

11        222 Central Park Avenue

12        Suite 2000

13        Virginia Beach, VA 23462

14

15  BY:   JASON E. MANNING, ESQ.  (TELEPHONICALLY)

16

17  WOMBLE CARLYLE SANDRIDGE & RICE, PLLC

18        Attorneys for JPMorgan Mortgage Acquisition

19        222 Delaware Avenue

20        Wilmington, DE 19801

21

22  BY:   THOMAS HORAN, ESQ. (TELEPHONICALLY)

23

24  ALSO PRESENT:  (TELEPHONICALLY)

25        MICHAEL WHEELER, Pro Se

1                        P R O C E E D I N G S

2            THE COURT:  Please be seated.  We're here on

3    Residential Capital, number 12-12020.  We're going to begin

4    with a report from the examiner's counsel.

5            Mr. Seife?

6            MR. SEIFE:  Thank you, Your Honor.  Howard Seife,

7    Chadbourne & Parke, counsel for the examiner.

8            We'd like to give the Court an update, a status report

9    on our activities.  To date, we've received, through

10   production, approximately 1.1 million documents, which amount

11   to more than seven and a half million pages, and they come from

12   twenty producing parties.

13           We have, to date, completed fifty interviews, and we

14   have seventeen additional scheduled, and perhaps an additional

15   twenty-five or so that remain to be scheduled.

16           When we were last here in court to give you a status

17   report, we at that time anticipated delivery of the report by

18   early April.  And as we discussed on the record, that date,

19   however, was contingent upon the production of documents from

20   parties on a timely basis and on a rolling basis, such that we

21   could review them in a timely fashion and use them, as

22   appropriate, for interviews and for incorporation in the

23   report.

24           As we reported to Your Honor in chambers,

25   unfortunately, there's been an enormous delivery of documents

12

1    at the end of January and early February, far in excess of what

2    we anticipated and what would have complied with a rolling

3    production.  Faced with this additional two million-plus pages

4    of recently produced documents from the debtors, it will

5    require reassessment of the ability to complete the report as

6    we had previously hoped.

7         So given all of the elements which would be required

8    to review this new and very substantial document production, to

9    incorporate it into interviews, to perhaps recall some of the

10   parties already interviewed for additional questioning, we now

11   anticipate a delay and rescheduling for an anticipated time of

12   filing the report to early May, so that would be an additional

13   month.

14        The examiner certainly regrets the inability to

15   produce a report, as anticipated, in early April, but this

16   unanticipated production no longer makes that a feasible date.

17   So with Your Honor's permission, we're suggesting a later

18   delivery of the report.

19        THE COURT:  Just if you could, tell me what, if any,

20   additional document requests are outstanding, not the specific

21   request, but what additional production are you anticipating?

22   Is there a schedule for that to occur?

23        MR. SEIFE:  We have requested that all parties finish

24   their production of documents, substantial finish them, by the

25   end of January.  Most parties have complied with that.  Of

1    course there are always additional follow-ups and

2    clarifications and issues that are dealt with.  However, there

3    are some parties that have not finished production.  You may

4    recall we have conflicts counsel that came into the case; they

5    are seeking production from four financial institutions.  Those

6    four have not finished their production.  We feel at least

7    three of them are substantially advanced; a fourth has produced

8    a voluminous amount of documents, but there remains more that

9    we anticipate we should have by the middle of February.

10            As to other third parties -- and my colleagues can

11   correct me if I'm wrong -- I believe we have substantially all

12   productions, but let me just verify that.

13            THE COURT:  Okay.

14            MR. SEIFE:  Ally has produced substantial amounts of

15   documents.  There remain some issues in dispute that we are

16   working through with Ally.  Without getting into the details,

17   because the parties are trying to resolve it, there are some

18   what we refer to as clawback requests.  Parties have produced

19   documents, reserving their right on privilege issues to

20   clawback some documents that were either inadvertently produced

21   or improperly produced, and we're trying to work through those,

22   particularly on some regulatory privileges.  And if we cannot

23   resolve that, we may be before Your Honor on an expedited basis

24   to resolve those.

25            So that's a long way of saying we have substantially

14

1  received documents that we've requested, but there remain some

2  open issues with some of the parties.

3         THE COURT:  Have you had to issue subpoenas for

4  documents, or has it all been through informal requests?

5         MR. SEIFE:  We've been issuing subpoenas.

6         THE COURT:  And you talked about interviews; have they

7  been under oath or not?

8         MR. SEIFE:  The interviews are recorded and

9  transcribed; they're not under oath.

10         THE COURT:  Have any of the people that you want to

11  interview declined to be interviewed?

12         MR. SEIFE:  No.  Everyone we've requested, to date,

13  has appeared.  There are still some remaining, as I said, a

14  substantial number of interviews, but to date, everyone has

15  appeared and spoken on our recorded interviews.

16         THE COURT:  Okay.  I have no doubt that you and your

17  colleagues and the examiner are working diligently to complete

18  a very large task.  I certainly believe that the completion of

19  the examiner report is very important to progress in this case

20  with respect to development of a plan, negotiating a consensual

21  plan, hopefully.  So getting a report completed as soon as

22  possible, I think, is important.  I have no doubt that the

23  examiner and his professionals want to assure that the report

24  is of the highest quality, and I really don't have any question

25  about that.  If you and your colleagues are meeting with any

15

1    resistance with respect to parties producing documents in a

2    timely fashion, I want to hear about it sooner rather than

3    later.

4           It's important, and I'm committed to do everything I

5    can -- and the power of the pen on orders sometimes has that

6    effect -- to enable you and your colleagues and the examiner to

7    get everything you need so that you can complete the report as

8    quickly as possible.  So I can't emphasize enough that yes, I

9    hope you will be able to consensually resolve issues, things --

10   you know, you raised the issue about clawback and privileges,

11   and in any substantial production those issues always arise,

12   and virtually always they get worked out, where the lawyers are

13   capable lawyers.  And I'm not trying to get into the middle of

14   that process at all, but it has to happen quickly, so that if

15   you need a hearing with respect to a discovery dispute, you

16   call chambers, and you'll -- in virtually all instances, you'll

17   have a hearing that day or the next day, usually, in the first

18   instance, by telephone.  I don't want letter briefs or anything

19   unless and until I've heard the parties out; I'm usually able

20   to resolve it.  But just in all matters, any kinds of discovery

21   disputes, they get heard very, very promptly.  So I just

22   encourage you, if you need to -- I mean, in the first instance,

23   I hope you'll resolve things as they're usually done,

24   consensually.

25          It's very important, in my view, to the progress in

this case, that the report be done in early May.  And if things
occur that you think raise questions about it, I want to hear
about it immediately and not in April.  Okay.  And we have to
see if there's anything that can be done to keep the process
moving to make sure it's done.  But I appreciate your report,
Mr. Seife, and I certainly appreciate the work of you and your
colleagues and of the examiner.

MR. SEIFE:  I would just add, Your Honor, the examiner
is fully cognizant of the importance of the report to this case
and progress in the case, and he and his professionals are
fully committed to working as hard as we can and in an
expedited fashion as possible to get it done, and --

THE COURT:  Thank you very much.

MR. SEIFE:  -- we appreciate your offer of assistance.

THE COURT:  All right, thank you.

MR. SEIFE:  Thank you, Your Honor.

THE COURT:  Does anybody else want to be heard on the
subject of the examiner report?

All right.  Let's go on to the agenda, Mr. Rosenbaum.
And anyone who was for this is certainly excused.

MR. ROSENBAUM:  Good morning, Your Honor.  Norm
Rosenbaum, Morrison & Foerster for the debtors.

Your Honor, it's a relatively short calendar this
morning.  We've noted all the adjourned matters, and the first
matters on for today are on page 5 under resolved matters.

1          THE COURT:  Yes.

2          MR. ROSENBAUM:  The first matter was the motion of

3   JPMorgan Acquisition Corporation for relief from stay; that's

4   docket number 2646.  That's been resolved among the parties and

5   a stipulation will be presented to the Court.

6          THE COURT:  Okay.  And that will be approved.

7          Go ahead.

8          MR. ROSENBAUM:  The next matter is under Roman numeral

9   III, uncontested matters.  This is the debtors' motion for an

10  order authorizing the assumption of unexpired lease; that's

11  docket number 2648.  That is uncontested, and an order will be

12  submitted to chambers.

13         THE COURT:  All right.  Anybody wish to be heard?

14         All right.  That'll be approved.

15         Go ahead.

16         MR. ROSENBAUM:  Your Honor, that brings us to the cure

17  objections, and there's a couple matters to be discussed.  One

18  of the issues I don't think we properly noted here was the

19  scheduling conference on the objection interposed by Ambac to

20  the sale order and the cure objection.  We've had discussions

21  with chambers on dates.  Mr. Dykhouse is in the courtroom, and

22  Mr. Marco as well.  I think one of the -- I think where we're

23  coming out is, if necessary, the parties are prepared to go

24  forward on March 29th;  Your Honor had offered that date.  I

25  think that did present a problem because it is Good Friday.

1          THE COURT:  Yeah, I think I heard about that

2     yesterday, and I think I said we would and try and work out

3     dates that will work.  Certainly anyone who has a problem with

4     coming here on Good Friday, I respect that.

5          (Pause)

6          THE COURT:  I had a telephone -- for those who weren't

7     party to this, I had a telephone conference with counsel about

8     this dispute and about scheduling.  And one of the questions I

9     had then -- I don't know whether you've been able to discuss

10    it -- is, I mean, how many witnesses.  I know we talked about

11    written direct, but I raised the question about whether you're

12    going to be able to stipulate to facts or whether you think we

13    need live testimony, cross-examination of declarants.  Were you

14    able to firm that up at all?

15         MR. ROSENBAUM:  Your Honor, Norm Rosenbaum.  We

16    haven't firmed it up.  We discussed the possibility and the

17    likelihood that we would stipulate to facts.  I think, at most,

18    it would be three witnesses, but no more than three witnesses:

19    one for Ambac, and potentially two for the debtors.

20         (Pause)

21         THE COURT:  All right.  I'll have to move some things

22    around, but let's schedule this for Thursday the 28th, March

23    28th, at 2 p.m.  I've got a calendar in the morning.  I had a

24    calendar in the afternoon.  Jeannie and Alex will move Velo

25    from the 28th.  I'm assuming that one afternoon should be

1    enough.  Hopefully you'll be able to stipulate to facts, but it

2    sounds like limited cross-examination in any event.  So --

3              MR. ROSENBAUM:  And noncontroversial legal principles.

4    So --

5              THE COURT:  Oh, really?  I'm sure.

6              MR. ROSENBAUM:  -- we're not going to be --

7              THE COURT:  For noncontroversial legal principles, why

8    don't you just settle the matter?

9              MR. ROSENBAUM:  We're hoping --

10             THE COURT:  That still may happen.

11             MR. ROSENBAUM:  -- hoping that the hearing won't be

12   necessary.  That's clearly our objective.

13             THE COURT:  All right.  So we'll -- but what I'm going

14   to do is hold off on rescheduling the other matters.  I will do

15   so if need be.  I'm going to leave them for now, and so give me

16   a written status report by 5 p.m., Thursday, March 14th.  I'm

17   going to hold off rescheduling my afternoon -- that afternoon

18   calendar for the hearing.  So that gives you time to hopefully

19   get this done.  Don't wait until the last minute before the

20   status report, but -- and what I indicated, what I would like

21   you to do is put together a stipulation, and what I told you on

22   the phone, my standard operating rule is that I get everything

23   a week before.  So I would want a full package of briefs,

24   declarations -- I don't know, is discovery going to be needed,

25   Mr. Dykhouse, or is --

20

1          MR. DYKHOUSE:  We don't believe so, Your Honor.

2          THE COURT:  Mr. Rosenbaum, do you --

3          MR. ROSENBAUM:  There may be limited discovery.

4          THE COURT:  Well, if -- you'll work that out.  If you

5     can't, call chambers and we'll work it out.  But so, I mean, I

6     literally -- I want everything that -- documents, exhibits need

7     to be pre-marked for the hearing.  The debtors should use

8     numbers.  Ambac should use letters.  Every -- because the

9     reporter doesn't mark exhibits, so everything needs to be pre-

10    marked.  I want two copies of all exhibits delivered to

11    chambers by the 21st.  Briefs should be filed on ECF by then.

12    So a week before is 2 p.m. on the 21st for everything.  This

13    doesn't strike me as a matter where there's going to be motions

14    in limine or anything, but it just -- so just get me

15    everything, because I like to have a week to be able to make

16    sure that I'm fully prepared for a hearing.  Okay?  And I gave

17    you the date for a status report.  Hopefully you'll be able to

18    get it resolved.  Okay?

19          Anything else, Mr. Dykhouse?

20          MR. DYKHOUSE:  No, Your Honor.

21          THE COURT:  Okay.  Mr. Rosenbaum, on this?

22          MR. ROSENBAUM:  Thank you, Your Honor.

23          THE COURT:  Thank you very much.

24          MR. ROSENBAUM:  Your Honor, moving on on the agenda,

25    the next matter is at page 8 of the status report on the

21

 1  Digital Lewisville matter, and I'll turn the podium over to my

 2  colleague, Stef Engelhardt.

 3          MR. ENGELHARDT:  Good morning, Your Honor.  Stefan

 4  Engelhardt, Morrison & Foerster on behalf the debtors.

 5          Your Honor, I'm pleased to report that the parties

 6  have reached an agreement in principle on a resolution that

 7  will allow the assumption and assignment of the Digital Lease

 8  to Ocwen prior to the closing.  We expect to finalize the

 9  papering of that stipulation this afternoon and file it for

10  presentment before Your Honor later today.

11          I do believe that counsel from both Ocwen and Digital

12  Lewisville are here, and with Your Honor's indulgence, I

13  believe there are some matters they'd like to put on the

14  record.

15          THE COURT:  Okay.  Thank you.

16          MR. GOLD:  Good morning, Your Honor.  Ivan Gold of

17  Allen Matkins for Digital Lewisville, the landlord.

18          The issue that had been holding us up with resolution

19  of the stipulation to permit the assignment and assumption of

20  the lease -- and Your Honor previously entered an order

21  approving our stipulation resolving the cure issues on January

22  31st.  Since then, counsel have been working diligently and

23  constructively to get the remaining issues with respect to the

24  assignment done.  Our holdup had been related to Ally and their

25  desire for a sublease to effectuate the transition services

22

agreement.  We've got enough closure with Ally; as of literally
this morning I received an e-mail at 10:17, pretty much as Your
Honor was taking the bench, as big a breakthrough as we've had
in weeks.  But we've been -- we will be able to, effectively,
draft around it.  But since that's not going to be final --
it'll be provided for in the stip -- I've been asked to state
on the record that Digital will agree to consent to a
commercially reasonable form of sublease for a term of no more
than eighteen months in order to accommodate the implementation
of the TSA with respect to the Lewisville facility.  And pre-
closing, we will execute a commercially reasonable form of
consent to the sublease to allow that sliver to go forward.

            With respect to Mr. Engelhardt's comments about us
being able to do it this afternoon, literally, Your Honor, all
of the final changes are on a single page, and here it is.  So
we will head back and implement that and upload that for you
later today.

            THE COURT:  Good luck.

            MR. GOLD:  Thank you.

            THE COURT:  Thank you very much.

            MR. ENGELHARDT:  Your Honor, nothing further.

            THE COURT:  Thank you very much, Mr. Engelhardt.

            MR. ENGELHARDT:  Thank you.

            THE COURT:  Okay.

            MR. ENGELHARDT:  With that, I'll turn the podium over

23

1    to --

2            THE COURT:  Let's hold on.

3            MR. ENGELHARDT:  -- Mr. Goren.

4            THE COURT:  Hold on.

5            MR. ZIDE:  Stephen Zide from Kramer Levin on behalf of

6    the committee.

7            THE COURT:  Mr. Zide?

8            MR. ZIDE:  We didn't know about this settlement, so I

9    guess they could file it, it'll be on presentment, we'll have a

10   chance to review it, but --

11           THE COURT:  Why don't you try and see it even before

12   they file it, if you can resolve that or any issues before,

13   because to have them file it and then you want tweaks or

14   something, it just is another whole round.  So why don't you

15   see -- if it's held up from filing until tomorrow to allow the

16   committee to get its look at it, that would probably be better

17   than filing and then having it on presentment and then having

18   amended agreements filed.  All right?  All right, okay.

19           MR. ZIDE:  Thank you, Your Honor.

20           THE COURT:  I think that's what you ought to do.

21           MR. ENGELHARDT:  Your Honor, Stefan Engelhardt,

22   Morrison & Foerster.  We will definitely attempt to get that

23   worked out this afternoon.  Under Your Honor's January 31st

24   order regarding the settlement of the cure claim, the debtors'

25   time to reject or assume that lease expires today.

24

1              THE COURT:  Okay.

2              MR. ENGELHARDT:  So we'll have to get that filed --

3              THE COURT:  Well --

4              MR. ENGELHARDT:  -- unless Mr. --

5              THE COURT:  -- let me see.  Go ahead.

6              MR. GOLD:  Let me solve that problem, Your Honor.

7    First, with respect to the committee's concern, first off,

8    there is no new monetary consideration flowing from the debtor

9    to effectuate this phase, so I expect the committee's review

10   will be very short.

11             THE COURT:  Okay.  Why don't you just agree on the

12   record --

13             MR. GOLD:  But I would be happy to --

14             THE COURT:  -- to extend the --

15             MR. GOLD:  -- facilitate their review by agreeing to

16   extend the time to assume or reject under 365(d)(4) to

17   tomorrow, to allow this to be uploaded.

18             THE COURT:  5 o'clock tomorrow?

19             MR. GOLD:  Certainly, Your Honor, and I'll circulate

20   an e-mail today, so --

21             THE COURT:  Okay.  It's on the record.  Your

22   agreement's on the record.

23             MR. GOLD:  Okay.

24             THE COURT:  I think everybody -- you know, circulate

25   an e-mail, but I appreciate that --

25

1              MR. GOLD:  Not a problem.

2              THE COURT:  -- Digital Lewisville has agreed to extend

3    the debtors' time to assume or reject until 5 p.m. tomorrow.

4              MR. GOLD:  Thank you, Your Honor.

5              THE COURT:  Thank you very much.

6              MR. ENGELHARDT:  With that, Your Honor, I will turn

7    the podium over to my colleague, Todd Goren.

8              THE COURT:  Thank you.

9              Mr. Goren?

10             MR. GOREN:  Thank you, Your Honor.  Todd Goren,

11   Morrison & Foerster, on behalf of the debtors.

12             Two other cure matters we'll address very briefly for

13   Your Honor.  The first is the Wells Fargo cure objection.  As

14   we reported at the January 31st hearing, we had reached an

15   agreement in principle on that.  That agreement has now been

16   substantially documented.

17             We received some comments from the committee last

18   night on that stipulation.  We've reviewed them with Wells'

19   counsel who advised he believes they're acceptable but still

20   needs to confirm with his client.  So hopefully we'll get that

21   confirmation later today and we'll upload it for presentment

22   later today.

23             THE COURT:  Thank you very much.

24             MR. GOREN:  Then finally, Your Honor, we have the AFI

25   cure objection, which I believe has also been resolved.  There

1    should not be a stipulation required on this one.  The

2    resolution is sort of multi-faceted since there are several

3    different agreements.  One of the agreements is the

4    subservicing agreement that was the topic of dispute earlier in

5    the case.  That agreement is not being assumed and assigned to

6    Ocwen.  It will be subserviced through Ocwen under an estate

7    subservicing agreement, so there's no real assumption and

8    assignment issue with that one.

9          There is also a custodial agreement that was

10   originally going to be assumed and assigned to Ocwen, and Ocwen

11   has now determined it will just enter into a new custodial

12   agreement directly with Ally.  So I think Ocwen was still

13   confirming 100 percent, but I think everyone's understanding,

14   at this point, that that agreement is no longer being assumed

15   and assigned.

16         And then the final agreement was a master servicing

17   agreement.  With respect to that, Ally doesn't really believe

18   that there's any cure owed on that.  That agreement is being

19   assumed and assigned to Ocwen.  But what we've agreed to do

20   with Ally, just so they can confirm everything, is that we'll

21   give them sixty days, post-close, to assert the cure.  They've

22   agreed to cap that cure claim at 100,000 dollars.  And to the

23   extent there's any cure owed over and above that, it would be a

24   general unsecured claim.

25         THE COURT:  Thank you.

1          MR. GOREN:  We've reviewed that with the committee and

2     they found that acceptable as well.

3          THE COURT:  Thank you, Mr. Goren.

4          MR. GOREN:  Yep.  That's it, Your Honor.

5          THE COURT:  Thank you.

6          MR. GOREN:  And I'll turn it over to Samantha Martin

7     for the next matter.

8          THE COURT:  Ms. Martin?

9          MS. MARTIN:  Good morning, Your Honor.  Samantha

10    Martin from Morrison & Foerster on behalf of the debtors.

11          The next item on the agenda is the motion for stay

12    relief that was filed by Mr. Wheeler, docket number 2251.  I

13    believe Mr. Wheeler is on the phone, so I would defer to him to

14    make any arguments in further support of his motion.

15          THE COURT:  Okay.  Mr. Wheeler?

16          MR. WHEELER:  Yes, Your Honor, I am present; Michael

17    Wheeler.

18          Your Honor, in reviewing the documents that I've

19    provided to support the motion before the Court, the primary

20    reason I felt compassionate for this motion is in the state of

21    Georgia, foreclosure is a nonjudicial event.  In other words,

22    the law in Georgia relies on the honesty and the integrity and

23    the accurate accounting of any mortgage company that would file

24    foreclosure on anyone's property.  In my situation it is two

25    single-family residences.

1          The only way that I can fight a foreclosure action is

2    to have leave of the automatic stay or to be released from the

3    automatic stay so that I can file a perpetual injunction

4    against foreclosure until my civil action is resolved in the

5    superior court here in Georgia, or possibly moved to the

6    federal district court in Rome, Georgia.

7          Now, I am making reference to two properties that I

8    own, residential.  One is my Victoria Way property here in Cobb

9    County, Georgia.  And the other referenced property is 6 London

10   Court in Cartersville, Georgia.  I've owned these homes

11   eighteen and thirteen years.  I am the original owner of both

12   homes which were new.

13         In my documents provided to the bankruptcy court, I

14   stipulated that the amount of money regarding my monthly

15   payments that I've made to both before-mentioned mortgages,

16   that 71,000 dollars was missing.  And the court has photocopies

17   of the checks that made those monthly mortgage payments for

18   which I never received credit.  An update to that amount is now

19   beyond 74,000 dollars.  And this is an important aspect; in the

20   last week I have been flooded with letters from a local law

21   firm, apparently retained by GMAC Mortgage, announcing

22   foreclosure has started on both properties.

23         So no other way that I can put this:  GMAC has placed

24   me -- or excuse me, I have been trapped in a very severe

25   Catch-22 situation.  So I am asking this Court to grant me

1    relief from the automatic stay so that I may: one, protect my

2    properties; two, that I may continue with my civil action

3    against GMAC in the superior court of Cobb County, Georgia.

4    And I further ask that the Court do not leave me a position

5    where I cannot protect my property until the civil action that

6    I just stated is completely resolved.

7              Other than that, Your Honor, there's not much I can

8    add.  The documents that I provided with my motion pretty much

9    spell out everything that has taken place in the past ten-plus

10   years.  So I revert back to you, Your Honor.  Thank you.

11             THE COURT:  Thank you, Mr. Wheeler.  Let me hear from

12   Ms. Martin.

13             MS. MARTIN:  Sure.  Your Honor, I guess we have

14   several responses to what is in the papers as well as what was

15   just stated on the record by Mr. Wheeler.

16             MR. WHEELER:  Your Honor, this is Michael Wheeler.  I

17   can barely hear the person speaking.

18             THE COURT:  Okay.  She's going to pull the microphone

19   closer to her, Mr. Wheeler.  If you can't hear, just go ahead

20   and speak up; it's important that you hear the arguments.

21   Okay?

22             MR. WHEELER:  Okay, thank you.

23             THE COURT:  Go ahead, Ms. Martin.

24             MS. MARTIN:  Your Honor, to start with, I should note

25   that the debtors actually do not object to Mr. Wheeler's

30

1    limited stay relief, solely for the purpose of allowing him to

2    pursue his claims for monetary relief in the state court

3    action.  Mr. Wheeler has litigation pending in the superior

4    court for Cobb County, Georgia, which is near ready for trial,

5    and that case has been pending since 2005.  He filed two proofs

6    of claim in these cases that appear to relate to that

7    litigation, and continuing this litigation through the trial

8    would allow him to liquidate his claims in these cases, so we

9    have no issue with that.

10           In other respects, Your Honor, we believe that the

11   automatic stay should remain in effect and should enjoin Mr.

12   Wheeler from enforcing any monetary award obtained in the

13   action against the debtors and their estates.  We believe he

14   could amend his proof of claim to reflect the final amount of

15   any judgment that's awarded in those actions.  And to the

16   extent that the debtors are found to have no liability, then

17   those proofs of claim could be deemed disallowed.

18           And with respect to Mr. Wheeler's comments regarding

19   the foreclosure, just to elaborate, on the two properties that

20   he owns, one of them the loan was referred to McCurdy & Candler

21   for foreclosure in December of 2012, and there's no sale date

22   set yet on that one.

23           And with respect to the London Court property, a new

24   breach letter was recently sent to Mr. Wheeler on January 30th.

25   The breach would expire on March 6th of 2013.  So if he

1    reinstates his account by that time, then the foreclosure would

2    not be started.  And if he does not reinstate his account, it

3    will be referred to foreclosure after March 6th.

4          Those foreclosure concepts are separate and apart from

5    the action that's been pending since 2005.  And as Your Honor

6    knows, under the supplemental servicing order, Mr. Wheeler is

7    entitled to defend himself against those foreclosures.

8          THE COURT:  That's what I wanted to -- first, let me

9    ask someone from SilvermanAcampora whether -- and Mr. Wheeler,

10   the law firm of SilvermanAcampora is special counsel to the

11   creditors' committee for borrowers' issues, and they have a

12   lawyer present in court.

13         And my question is -- and you can make your appearance

14   on the record -- whether you or anyone from your firm has

15   spoken with Mr. Wheeler, most specifically about the

16   supplemental servicing order and what that would permit, what

17   rights that would provide Mr. Wheeler if he was seeking to

18   avoid foreclosure on his properties.

19         MR. KRELL:  Good morning, Your Honor.  Justin Krell,

20   SilvermanAcampora, special counsel to the committee.

21         Your Honor, yes, Mr. Wheeler and I have spoken

22   directly.  I explained Mr. Wheeler the debtors' proposed

23   stipulation with limited relief to liquidate his claim.  Also I

24   advised Mr. Wheeler about the supplemental procedures order

25   that he could defend the foreclosure action.  We did have a

32

very nice conversation; however, Mr. Wheeler was adamant that
he would be entitled to unfettered relief from stay based upon
his claims alleged in his complaint, Your Honor.

THE COURT:  All right.  Thank you.  All right.  I've
reviewed all of the papers and the Court's ruling is as
follows.

Before the Court is Michael Wheeler's motion for
relief from stay filed at ECF 2251.  The debtors filed an
objection which is at ECF 2777.  The Court will lift the stay
solely for the purpose of permitting Mr. Wheeler to pursue his
claims for monetary relief in the context of his pending
lawsuit in the Superior Court of Cobb County, Georgia which is
case number 01-5-10429-34.  And I'll refer to that as the
action.

So, Mr. Wheeler, the stay is lifted to permit you to
go forward with the action in order to liquidate your claims
that you filed in this Chapter 11 case to the extent that they
relate to that action.

As Mr. Wheeler indicated he's the mortgagor of two
properties:  6 London Court, Cartersville, Georgia and 1728
Victoria Way Northwest, Kennesaw, Georgia.  The debtor,
Homecomings Financial LLC services the loans on the properties.

Mr. Wheeler's claims in the action arise out of
alleged misallocation of funds by Homecomings from 2002 to
2005.  And in the action, Mr. Wheeler seeks money damages

33

against Homecomings.  The action does not involve or relate to
any foreclosure against the properties.  In the action, the
Superior Court of Georgia has granted partial summary judgment
in favor of Homecomings.  See the order dated February 10th,
2009.  It's annexed to the debtors' response as Exhibit 3.  The
order is dated July 16th, 2012.

And with respect to the remaining counts not disposed
of through summary judgment, the parties have completed
discovery and the action is trial ready.  Because the action is
ready for trial, in the interest of judicial economy, the
debtors do not object to a limited modification of the
automatic stay for the purpose of permitting Mr. Wheeler to
pursue his claims for monetary relief in the context of the
action in order to liquidate Mr. Wheeler's claims in the
Chapter 11 cases to the extent they relate to the action.  In
all other respects, however, the debtor requested the automatic
stay remain in full force and effect and that Mr. Wheeler
continue to be enjoined from enforcing any monetary award
obtained in the action against the debtors, their assets or the
estates.

So lifting the stay to the extent the Court is doing
so will permit the Georgia court to proceed with this trial
ready case and determine what, if any, damages should be
rewarded to Mr. Wheeler.  His proof of claims in this case
should then be amended to reflect the amount of the judgment.

1    And it'll be treated the way all other claims in this case

2    would be treated except it would've been liquidated an amount.

3        The debtors propose that any proofs or claim filed by

4    Mr. Wheeler arising from the facts and circumstances relating

5    the action should be amended to reflect the amount of the final

6    judgment, if any, obtained in the action, promptly filing the

7    entry thereof, and I agree with that.  And those claims will be

8    deemed disallowed and expunged without further order of the

9    court to the extent that the debtors are found to have no

10   liability to Mr. Wheeler by a final order or judgment entered

11   in the Georgia action.  Mr. Wheeler has filed two proofs of

12   claim in the case and they're proofs of claims number 4820 and

13   4940.

14       With respect to issues concerning foreclosure of the

15   properties, the stay is not lifted.  The supplemental servicing

16   order carefully sets forth the rights of any borrower seeking

17   to oppose foreclosure of their properties.  And those

18   procedures have worked quite well in many of the matters in

19   this Residential Capital case including those specifically in

20   Georgia and -- which is a nonjudicial foreclosure state.

21       In making the determination to lift the stay in part

22   and deny the motion in part, the Court has carefully considered

23   the twelve nonexclusive factors set forth by the Second Circuit

24   in Sonnax Industries, 907 F.2d 1280, (2d Cir. 1990).  Not all

25   of the factors are relevant in every case and cause -- cause to

1    lift the stay -- is a broad and flexible concept.  It must be

2    determined on a case-by-case basis.

3            Applying the standard set forth in Sonnax to the facts

4    and circumstances set forth by the parties in their papers

5    submitted in connection with the motion, the Court concludes

6    that it is appropriate to lift the stay in part to allow the

7    trial to go forward in the trial ready action in Cobb County,

8    Georgia but to deny the motion with respect to foreclosure

9    because the supplemental servicing order already substantially

10   sets forth the rights and protections of any borrower seeking

11   to avoid foreclosure of their properties.

12           In the event that Mr. Wheeler, or any other borrower

13   faced with imminent foreclosure, believes that they are

14   entitled to some other relief from this court, they of course

15   can seek that protection in a filed motion at an appropriate

16   time.  In this case, at this time, because the creditor's

17   committee now has special counsel for borrower issues, I would

18   encourage Mr. Wheeler to further confer, as needed, with a

19   lawyer from SilvermanAcampora if Mr. Wheeler doesn't believe

20   that -- he's clearly in at my view, adequately protected at

21   this time -- sufficiently protected by -- and I'm not using

22   that in a sense of the adequate protection context but his

23   rights with respect to avoiding foreclosure are dealt with in

24   the supplemental servicing order.  And it would take something

25   unusual to lead the Court to lift the stay beyond that.  So

36

1  that'll be the Court's disposition.

2        Ms. Martin, if you would prepare an order reflecting

3  the Court's ruling --

4        MS. MARTIN:  Yes, of course.

5        THE COURT:  -- I would appreciate it.

6        Thank you very much, Mr. Wheeler.

7        MR. WHEELER:  Thank you, Your Honor.

8        THE COURT:  All right.

9        MS. MARTIN:  Thank you.  I am going to cede the podium

10  to my colleague, Mr. James Newton.

11        MR. NEWTON:  Good morning, Your Honor.  James Newton,

12  of Morrison and Foerster, on behalf of the debtors.

13        The next item on the item on the agenda is a continued

14  pre-trial conference in an adversary proceeding initiated by

15  Marion L. and Sharon Jenkins.  It's case number 12-01935.  I

16  believe Mr. Jenkins is on the phone; counsel for co-defendants

17  U.S. Bank and America's Serving Company are -- is here in the

18  courtroom.  And I believe I heard counsel for Judy Faber, an

19  employee of the debtor, on the phone as well.

20        You recall that at the prior hearing, you directed Mr.

21  Jenkins to reach out to special borrowers counsel.  Mr. Jenkins

22  did reach out to our offices the afternoon of that hearing and

23  the next day special borrowers counsel and I attempted to reach

24  back out to Mr. Jenkins.  We were able to speak with him only

25  briefly.  He indicated that he would like to call us back and

1   we didn't hear back from him.  We've also reached out several

2   other times since then, on Monday and then yesterday after

3   business hours -- well, both special borrowers counsel and I

4   have reached out to Mr. Jenkins.

5          So I'm happy to answer any questions you like, here

6   from co-defendant's counsel as well.

7          THE COURT:  All right.  Mr. Jenkins, do you want to be

8   heard?

9          MR. JENKINS:  Yes, sir, Your Honor.  Yes, Your Honor,

10  the clients -- thank you for taking the call -- did reach out

11  to me and I did try to call them back.  I've been sick with my

12  high blood pressure.  But I have reached out to an attorney,

13  Mr. David Ate which I have a meeting with tomorrow at 11

14  o'clock and I was going to request to see if counsel for the

15  debtor would be willing to speak with the attorney tomorrow at

16  11:30.

17         Just got off the phone with Mr. Ate and he stated that

18  he would be willing to speak with them tomorrow at 11 o'clock.

19  I have to be in his office, myself and my wife, at 11 tomorrow

20  morning.  And I can give them the number now to give him a call

21  or we could just call him tomorrow morning.

22         THE COURT:  Mr. Newton?

23         MR. NEWTON:  I'm willing to speak with them at 11:30

24  tomorrow morning.

25         THE COURT:  Okay.  And the special borrowers counsel,

1    as well?  I think you ought to be involved?

2             MR. KRELL:  Yes, Your Honor.  Just so you know, the

3    past calls, Mr. Newton and I did on conference call.

4             THE COURT:  Yes.  And I think you should do that

5    again.

6             I take it, Mr. Jenkins, you have no objection to the

7    special borrowers counsel also participating in the call

8    tomorrow?

9             MR. JENKINS:  No, sir.  Not at all.

10            THE COURT:  Okay.  So you have a phone number you want

11   to give Mr. Newton?

12            MR. JENKINS:  Yes, sir, I do.

13            THE COURT:  Okay.  Go ahead.

14            MR. JENKINS:  You ready, Mr. Newton?

15            MR. NEWTON:  Yes, sir.

16            THE COURT:  Go ahead.

17            MR. JENKINS:  Mr. Ate's number is (404) 348-6361.

18   That's his office number.  And his direct line to his cell

19   phone is (404) 382-5324.  And the spelling of his last name is

20   A, as in apple, T, as in Tom, E as eight.  And the first name

21   is David.

22            MR. NEWTON:  Okay.  All right.

23            THE COURT:  All right.  What we'll do then is further

24   continue this pre-trial conference until what -- Mr. Rosenbaum,

25   what's the next date?  The 28th?

39

1              MR. ROSENBAUM:  February 28th, Your Honor.

2              THE COURT:  It's a long calendar on the --

3              MR. ROSENBAUM:  There's a March 5th.

4              THE COURT:  Well, let's do it the February 28th.

5    We'll get an update.

6              If, Mr. Newton, if after the call you're able to reach

7    a resolution, please advise the Court even if it's subject to

8    further documentation, but just let my chambers know, hopefully

9    well in advance of the 28th.

10             Mr. Jenkins, if -- and I know there are other

11   defendant's counsel here as well.

12             Mr. Newton, I -- if this matter can't be resolved is

13   it the defendant's intention to move to dismiss?  Is that --

14             MR. NEWTON:  Your Honor, we've filed a Rule 12(e)

15   motion.  It's actually scheduled for the 28th.

16             THE COURT:  Okay.

17             MR. NEWTON:  I'd have to defer to other defendant's

18   counsel, but I believe that would be their plan.

19             MR. GRIECO:  Brian Grieco, Hogan Lovells for U.S.

20   Bank --

21             THE COURT:  Sure.

22             MR. GRIECO:  -- and America's Servicing Company.  We

23   would file a motion to dismiss at any -- prior to any deadline

24   you set --

25             THE COURT:  Okay.

1          MR. GRIECO:  -- any time after February 28th.

2          THE COURT:  Well, what I -- I'm going to ask -- we're

3  not going to put motions to dismiss on the calendar for

4  February 28th.  And we'll give it one last shot to see whether

5  the matter can be consensually resolved without the necessity

6  of the parties incurring additional expense of filing motions.

7  It sounds like the debtors' already filed a 12(e) motion but

8  so -- but I will -- if it's not resolved by the 28th, I will

9  definitely set a schedule for filing of motions, any responses

10  and argument.  Okay?

11          MR. GRIECO:  Thank you.

12          THE COURT:  Anybody else wish to be heard with respect

13  to the matter?  So let me just -- let me make sure.

14          Mr. Jenkins, do you want counsel to call Mr. Ate's

15  office tomorrow at -- what'd you say 11 o'clock?

16          MR. JENKINS:  11:30, sir.  We have a meeting at 11

17  o'clock.

18          THE COURT:  Okay.

19          MR. JENKINS:  And Mr. Ate's said it would be better

20  for counsel there to call him at 11:30.

21          THE COURT:  Okay.  They will call at 11:30 tomorrow.

22          MR. JENKINS:  Yes, sir.

23          THE COURT:  And hopefully there won't be any

24  miscommunications so let's try and move this along.  Okay?

25          All right.  Thank you very much, Mr. Jenkins.

1          MR. JENKINS:  Sure.

2          THE COURT:  Anybody -- well, before, does anybody else

3     want anything else they want to raise?  No.  Okay.  Thank you.

4          MR. ROSENBAUM:  Thank you, Your Honor.

5          MR. JENKINS:  Thank you.

6          MR. ROSENBAUM:  And I believe that the last matter on

7     the agenda is the Allstate adversary proceeding.  My

8     understanding is it's been resolved and approved by the Court.

9          THE COURT:  Mr. Rosenbaum?  It's the Western and

10    Southern?

11         MR. ROSENBUAM:  Yes, Your Honor.  And that concludes

12    today's calendar.

13         THE COURT:  How have you resolved the Western and

14    Southern matter?

15         MR. ROSENBAUM:  I believe that they agreed to the

16    similar extension of the other parties.

17         THE COURT:  And what is the new date that people have

18    agreed to?

19         MR. ROSENBAUM:  I'm not clear, Your Honor.  Let me see

20    if any of my colleagues --

21         THE COURT:  Does anybody know?

22         MR. ROSENBAUM:  I'm sorry, Your Honor.  We'll --

23         THE COURT:  Okay.

24         MR. ROSENBAUM:  -- follow up with you on that.

25         THE COURT:  Well, if you would do this.  Call one of

42

1   my law clerks and just make sure we know what the new date is

2   that everybody's agreed to.

3          MR. ROSENBAUM:  We'll do so, Your Honor.

4          THE COURT:  Oaky.  All right.  Anything else anybody

5   wants to raise today?

6            All right.  We're adjourned.  Thank you very much

7   everybody.

8          MR. ROSENBAUM:  Thank you, Your Honor.

9       (Whereupon these proceedings were concluded at 11:06 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

43

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Stipulation regarding JPMorgan's request for relief from stay approved | 18 | 6 |
| Debtors' motion for order authorizing assumption of unexpired lease between DeVry Inc. and GMAC Mortgage, LLC approved | 18 | 14 |
| Michael Wheeler's motion for relief from stay is granted solely for the purpose of permitting Mr. Wheeler to pursue his claims for monetary relief in the context of his pending lawsuit in the Superior Court of Cobb County, Georgia | 33 | 9 |
| Motion concerning foreclosure of the properties, request for relief from stay is denied | 35 | 14 |

44

C E R T I F I C A T I O N

I, Sharona Shapiro, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

SHARONA SHAPIRO

AAERT Certified Electronic Transcriber CET**D-492

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  February 8, 2013

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg

February 7, 2013

**#**

**#607 (1)**
3:21

**[**

**[Docket (1)**
3:3

**A**

**ability (1)**
12:5
**able (12)**
15:9,19;18:9,12,
14;19:1;20:15,17;
22:4,14;36:24;39:6
**above (1)**
26:23
**acceptable (2)**
25:19;27:2
**accommodate (1)**
22:9
**account (2)**
31:1,2
**accounting (1)**
27:23
**accurate (1)**
27:23
**Acquisition (2)**
10:18;17:3
**action (24)**
28:1,4;29:2,5;30:3,
13;31:5,25;32:14,16,
18,23,25;33:1,2,9,9,
14,15,19;34:5,6,11;
35:7
**actions (1)**
30:15
**activities (1)**
11:9
**actually (2)**
29:25;39:15
**Ad (1)**
7:2
**adamant (1)**
32:1
**add (2)**
16:8;29:8
**additional (9)**
11:14,14;12:3,10,
12,20,21;13:1;40:6
**address (1)**
25:12
**adequate (1)**
35:22
**adequately (1)**
35:20
**Adjourned (3)**
3:1;16:24;42:6
**advance (1)**

**39:9**
**advanced (1)**
13:7
**adversary (2)**
36:14;41:7
**advise (1)**
39:7
**advised (2)**
25:19;31:24
**AFI (1)**
25:24
**afternoon (8)**
18:24,25;19:17,17;
21:9;22:14;23:23;
36:22
**again (1)**
38:5
**against (7)**
28:4;29:3;30:13;
31:7;33:1,2,19
**agenda (5)**
16:19;20:24;27:11;
36:13;41:7
**agree (3)**
22:7;24:11;34:7
**agreed (6)**
25:2;26:19,22;
41:15,18;42:2
**agreeing (1)**
24:15
**agreement (13)**
21:6;22:1;25:15,
15;26:4,5,7,9,12,14,
16,17,18
**agreements (3)**
23:18;26:3,3
**agreement's (1)**
24:22
**ahead (7)**
17:7,15;24:5;
29:19,23;38:13,16
**AL (1)**
10:5
**ALBANESE (1)**
7:14
**Alex (1)**
18:24
**alleged (2)**
32:3,24
**ALLEN (2)**
8:17;21:17
**allow (6)**
21:7;22:12;23:15;
24:17;30:8;35:6
**allowing (1)**
30:1
**Allstate (1)**
41:7
**Ally (11)**
3:2,2;9:2,2;13:14,
16;21:24;22:1;26:12,
17,20
**along (1)**

**40:24**
**always (3)**
13:1;15:11,12
**Ambac (4)**
8:2;17:19;18:19;
20:8
**amend (1)**
30:14
**amended (3)**
23:18;33:25;34:5
**Americas (1)**
5:20;7:3;8:3
**America's (3)**
5:11;36:17;39:22
**among (1)**
17:4
**amount (8)**
11:10;13:8;28:14,
18;30:14;33:25;34:2,
5
**amounts (1)**
13:14
**Angeles (1)**
9:22
**annexed (1)**
33:5
**announcing (1)**
28:21
**ANTHONY (1)**
9:6
**anticipate (2)**
12:11;13:9
**anticipated (4)**
11:17;12:2,11,15
**anticipating (1)**
12:21
**apart (1)**
31:4
**apparently (1)**
28:21
**appear (1)**
30:6
**appearance (1)**
31:13
**appeared (2)**
14:13,15
**apple (1)**
38:20
**Applying (1)**
35:3
**appreciate (5)**
16:5,6,14;24:25;
36:5
**appropriate (3)**
11:22;35:6,15
**approved (3)**
17:6,14;41:8
**approving (1)**
21:21
**approximately (1)**
11:10
**April (3)**
11:18;12:15;16:3

**ARANT (1)**
10:1
**argument (1)**
40:10
**arguments (2)**
27:14;29:20
**arise (2)**
15:11;32:23
**arising (1)**
34:4
**around (2)**
18:22;22:5
**ARPS (1)**
8:9
**aspect (1)**
28:19
**assert (1)**
26:21
**assets (1)**
33:19
**assigned (4)**
26:5,10,15,19
**assignment (2)**
21:7;19,24;26:8
**assistance (1)**
16:14
**assume (3)**
23:25;24:16;25:3
**assumed (4)**
26:5,10,14,19
**assuming (1)**
18:25
**assumption (4)**
17:10;21:7,19;26:7
**Assurance (1)**
8:2
**assure (1)**
14:23
**Ate (2)**
37:13,17
**Ate's (3)**
38:17;40:14,19
**attempt (1)**
23:22
**attempted (1)**
36:23
**attorney (2)**
37:12,15
**Attorneys (17)**
5:2,10,19;6:2,10;
7:2,10,18;8:2,10,18;
9:2,11,20;10:2,10,18
**authorizing (1)**
17:10
**automatic (6)**
28:2,3;29:1;30:11;
33:12,16
**Avenue (11)**
5:12,20;6:3;7:3,19;
8:3;9:3,21;10:4,11,19
**avoid (2)**
31:18;35:11
**avoiding (1)**

**35:23**
**award (2)**
30:12;33:18
**awarded (1)**
30:15

**B**

**back (6)**
22:16;29:10;36:24,
25;37:1,11
**Bank (7)**
3:2;5:10;7:18;
8:10;9:2;36:17;39:20
**bankruptcy (1)**
28:13
**Barclays (1)**
8:10
**barely (1)**
29:17
**based (2)**
32:2
**basis (4)**
11:20,20;13:23;
35:2
**Beach (1)**
10:13
**before-mentioned (1)**
28:15
**begin (1)**
11:3
**behalf (5)**
21:4;23:5;25:11;
27:10;36:12
**believes (2)**
25:19;35:13
**BELKNAP (1)**
8:1
**bench (1)**
22:3
**Berkshire (1)**
9:20
**better (2)**
23:16;40:19
**beyond (2)**
28:19;35:25
**big (1)**
22:3
**Birmingham (1)**
10:5
**blood (1)**
37:12
**borrower (4)**
34:16;35:10,12,17
**borrowers (5)**
36:21,23;37:3,25;
38:7
**borrowers' (1)**
31:11
**both (5)**
21:11;28:11,15,22;
37:3
**BOULT (1)**

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg                February 7, 2013

10:1
**BRADLEY (1)**
10:1
**breach (2)**
30:24,25
**breakthrough (1)**
22:3
**BRIAN (2)**
5:15;39:19
**briefly (2)**
25:12;36:25
**briefs (3)**
15:18;19:23;20:11
**brings (1)**
17:16
**broad (1)**
35:1
**business (1)**
37:3

**C**

**CA (3)**
8:21;9:14,22
**calendar (7)**
16:23;18:23,24;
19:18;39:2;40:3;
41:12
**call (14)**
15:16;20:5;36:25;
37:10,11,20,21;38:3,
7;39:6;40:14,20,21;
41:25
**calls (1)**
38:3
**came (1)**
13:4
**can (16)**
13:10;15:5,7;16:4,
11;23:12;26:20;28:1,
3,23;29:7,17;31:13;
35:15;37:20;40:5
**Candler (1)**
30:20
**cap (1)**
26:22
**capable (1)**
15:13
**Capital (2)**
11:3;34:19
**Capitol (1)**
9:13
**carefully (2)**
34:16,22
**CARLYLE (1)**
10:17
**Cartersville (2)**
28:10;32:20
**CASE (18)**
7:1;13:4;14:19;
16:1,9,10;26:5;30:5;
32:13,17;33:23,24;
34:1,12,19,25;35:16;

36:15
**case-by-case (1)**
35:2
**cases (3)**
30:6,8;33:15
**Catch-22 (1)**
28:25
**CATHERINE (1)**
7:22
**cause (2)**
34:25,25
**CC (3)**
3:1,5,8
**cede (1)**
36:9
**cell (1)**
38:18
**Center (1)**
9:12
**Central (1)**
10:11
**certainly (6)**
12:14;14:18;16:6,
20;18:3;24:19
**Chadbourne (1)**
11:7
**chambers (7)**
11:24;15:16;17:12,
21;20:5,11;39:8
**CHANCE (2)**
5:1;23:10
**changes (1)**
22:15
**Chapter (2)**
32:17;33:15
**checks (1)**
28:17
**CHFA (1)**
9:11
**CHRISTOPHER (2)**
7:14;10:7
**Cir (1)**
34:24
**Circuit (1)**
34:23
**circulate (1)**
24:19,24
**circumstances (2)**
34:4;35:4
**civil (3)**
28:4;29:2,5
**claim (9)**
23:24;26:22,24;
30:6,14,17;31:23;
34:3,12
**claims (12)**
30:2,8;32:3,11,16,
23;33:13,14,24;34:1,
7,12
**clarifications (1)**
13:2
**clawback (3)**
13:18,20;15:10

**clear (1)**
41:19
**clearly (2)**
19:12;35:20
**CLEARY (1)**
6:9
**clerks (1)**
42:1
**client (1)**
25:20
**clients (1)**
37:10
**CLIFFORD (1)**
5:1
**closer (1)**
29:19
**closing (2)**
21:8;22:11
**closure (1)**
22:1
**Cobb (3)**
28:8;29:3;30:4;
32:12;35:7
**co-defendants (1)**
36:16
**co-defendant's (1)**
37:6
**COELHO (1)**
6:6
**cognizant (1)**
16:9
**colleague (3)**
21:2;25:7;36:10
**colleagues (6)**
13:10;14:17,25;
15:6;16:7;41:20
**coming (2)**
17:23;18:4
**comments (3)**
22:13;25:17;30:18
**commercially (2)**
22:8,11
**committed (2)**
15:4;16:11
**Committee (9)**
5:19;6:18;23:6,16;
25:17;27:1;31:11,20;
35:17
**committee's (2)**
24:7,9
**Company (4)**
5:11;27:23;36:17;
39:22
**compassionate (1)**
27:20
**complaint (1)**
32:3
**complete (3)**
12:5;14:17;15:7
**completed (3)**
11:13;14:21;33:8
**completely (1)**
29:6

**completion (1)**
14:18
**complied (2)**
12:2,25
**concept (1)**
35:1
**concepts (1)**
31:4
**concern (1)**
24:7
**concerning (1)**
34:14
**concluded (1)**
42:9
**concludes (2)**
35:5;41:11
**confer (1)**
35:18
**conference (5)**
17:19;18:7;36:14;
38:3,24
**confirm (2)**
25:20;26:20
**confirmation (1)**
25:21
**confirming (1)**
26:13
**conflicts (1)**
13:4
**connection (1)**
35:5
**consensual (1)**
14:20
**consensually (3)**
15:9,24;40:5
**consent (2)**
22:7,12
**consideration (1)**
24:8
**considered (1)**
34:22
**constructively (1)**
21:23
**context (3)**
32:11;33:13;35:22
**contingent (1)**
11:19
**continue (3)**
29:2;33:18;38:24
**continued (1)**
36:13
**continuing (1)**
30:7
**conversation (1)**
32:1
**copies (1)**
20:10
**Corporation (2)**
8:2;17:3
**Counsel (24)**
6:18;11:4,7;13:4;
18:7;21:11,22;25:19;
31:10,20;35:17;

36:16,18,21,23;37:3,
6,14,25;38:7;39:11,
18;40:14,20
**counts (1)**
33:7
**County (5)**
28:9;29:3;30:4;
32:12;35:7
**couple (1)**
17:17
**course (3)**
13:1;35:14;36:4
**COURT (114)**
11:2,8,16;12:19;
13:13;14:3,6,10,16;
16:13,15,17;17:1,5,6,
13;18:1,6,21;19:5,7,
10,13;20:2,4,21,23;
21:15;22:18,20,22,
24;23:2,4,7,11,20;
24:1,3,5,11,14,18,21,
24;25:2,5,8,23;26:25;
27:3,5,8,15,19;28:5,
6,10,13,16,25;29:3,4,
11,18,23;30:2,4,23;
31:8,12;32:4,7,9,12,
20;33:3,21,22;34:9,
22;35:5,14,25;36:5,8;
37:7,22,25;38:4,10,
13,16,23;39:2,4,7,16,
21,25;40:2,12,18,21,
23;41:2,8,9,13,17,21,
23,25;42:4
**courtroom (2)**
17:21;36:18
**Court's (3)**
32:5;36:1,3
**credit (1)**
28:18
**Creditor (1)**
9:11
**Creditors' (2)**
5:19;31:11
**creditor's (1)**
35:16
**cross-examination (2)**
18:13;19:2
**CUMMINGS (1)**
10:1
**cure (11)**
17:16,20;21:21;
23:24;25:12,13,25;
26:18,21,22,23
**custodial (2)**
26:9,11

**D**

**damages (2)**
32:25;33:23
**date (12)**
11:9,13,18;12:16;
14:12,14;17:24;

12-12020-mg    Doc 2866    Filed 02/08/13    Entered 02/08/13 11:15:28    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 47 of 54
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg                February 7, 2013

20:17;30:21;38:25;
41:17;42:1
**dated (2)**
33:4,6
**dates (2)**
17:21;18:3
**DAVID (3)**
8:6;37:13;38:21
**day (3)**
15:17,17;36:23
**days (1)**
26:21
**DE (1)**
10:20
**deadline (1)**
39:23
**dealt (2)**
13:2;35:23
**debtor (5)**
24:8;32:21;33:16;
36:19;37:15
**Debtors (17)**
3:9;12:4;16:22;
18:19;20:7;21:4;
25:11;27:10;29:25;
30:13,16;32:8;33:11,
19;34:3,9;36:12
**Debtors' (7)**
3:2;17:9;23:24;
25:3;31:22;33:5;40:7
**December (1)**
30:21
**declarants (1)**
18:13
**declarations (1)**
19:24
**declined (1)**
14:11
**deemed (2)**
30:17;34:8
**defend (2)**
31:7,25
**Defendant (1)**
10:2
**defendant's (3)**
39:11,13,17
**defer (2)**
27:13;39:17
**definitely (1)**
23:22;40:9
**Delaware (1)**
10:19
**delay (1)**
12:11
**delivered (1)**
20:10
**delivery (3)**
11:17,25;12:18
**DEMARCO (1)**
5:6
**DENMAN (1)**
7:6
**deny (2)**

34:22;35:8
**desire (1)**
21:25
**details (1)**
13:16
**determination (1)**
34:21
**determine (1)**
33:23
**determined (2)**
26:11;35:2
**development (1)**
14:20
**different (1)**
26:3
**Digital (7)**
8:18;21:1,7,11,17;
22:7;25:2
**diligently (2)**
14:17;21:22
**direct (2)**
18:11;38:18
**directed (1)**
36:20
**directly (2)**
26:12;31:22
**disallowed (2)**
30:17;34:8
**discovery (5)**
15:15,20;19:24;
20:3;33:9
**discuss (1)**
18:9
**discussed (3)**
11:18;17:17;18:16
**discussions (1)**
17:20
**dismiss (3)**
39:13,23;40:3
**disposed (1)**
33:7
**disposition (1)**
36:1
**dispute (4)**
13:15;15:15;18:8;
26:4
**disputes (1)**
15:21
**district (1)**
28:6
**Doc (1)**
3:1
**Doc# (2)**
3:5,8
**docket (3)**
17:4,11;27:12
**document (2)**
12:8,20
**documentation (1)**
39:8
**documented (1)**
25:16
**documents (16)**

11:10,19,25;12:4,
24;13:8,15,19,20;
14:1,4;15:1;20:6;
27:18;28:13;29:8
**dollars (3)**
26:22;28:16,19
**done (7)**
15:23;16:1,4,5,12;
19:19;21:24
**doubt (2)**
14:16,22
**draft (1)**
22:5
**DRYE (1)**
7:17
**DYKHOUSE (6)**
8:6;17:21;19:25;
20:1,19,20

**E**

**earlier (1)**
26:4
**early (5)**
11:18;12:1,12,15;
16:1
**ECF (3)**
20:11;32:8,9
**economy (1)**
33:10
**effect (3)**
15:6;30:11;33:17
**effectively (1)**
22:4
**effectuate (2)**
21:25;24:9
**eight (1)**
38:20
**eighteen (2)**
22:9;28:11
**either (1)**
13:20
**elaborate (1)**
30:19
**elements (1)**
12:7
**ELISE (1)**
5:24
**ELLIS (1)**
9:1
**else (6)**
16:17;20:19;40:12;
41:2,3;42:4
**e-mail (3)**
22:2;24:20,25
**emphasize (1)**
15:8
**employee (1)**
36:19
**enable (1)**
15:6
**encourage (2)**
15:22;35:18

**end (2)**
12:1,25
**enforcing (2)**
30:12;33:18
**Engelhardt (13)**
21:2,3,4;22:21,22,
23,25;23:3,21,21;
24:2,4;25:6
**Engelhardt's (1)**
22:13
**enjoin (1)**
30:11
**enjoined (1)**
33:18
**enormous (1)**
11:25
**enough (3)**
15:8;19:1;22:1
**enter (1)**
26:11
**entered (2)**
21:20;34:10
**entitled (1)**
31:7;32:2;35:14
**entry (1)**
34:7
**eScribers (1)**
3:20
**ESQ (19)**
5:6,15,23,24;6:6,
14,23;7:6,14,22;8:6,
14,23;9:6,16,24;10:7,
15,22
**estate (1)**
26:6
**estates (2)**
30:13;33:20
**even (2)**
23:11;39:7
**event (3)**
19:2;27:21;35:12
**everybody (2)**
24:24;42:7
**everybody's (1)**
42:2
**Everyone (2)**
14:12,14
**everyone's (1)**
26:13
**examiner (9)**
11:7;12:14;14:17,
19,23;15:6;16:7,8,18
**examiner's (1)**
11:4
**except (1)**
34:2
**excess (1)**
12:1
**excuse (1)**
28:24
**excused (1)**
16:20
**execute (1)**

22:11
**Exhibit (1)**
33:5
**exhibits (3)**
20:6,9,10
**expect (2)**
21:8;24:9
**expedited (2)**
13:23;16:12
**expense (1)**
40:6
**expire (1)**
30:25
**expires (1)**
23:25
**explained (1)**
31:22
**expunged (1)**
34:8
**extend (3)**
24:14,16;25:2
**extension (1)**
41:16
**extent (6)**
26:23;30:16;32:17;
33:15,21;34:9

**F**

**F2d (1)**
34:24
**Faber (2)**
10:2;36:18
**Faced (2)**
12:3;35:13
**facilitate (1)**
24:15
**facility (1)**
22:10
**factors (2)**
34:23,25
**facts (5)**
18:12,17;19:1;
34:4;35:3
**far (1)**
12:1
**Fargo (3)**
7:10;9:12;25:13
**fashion (3)**
11:21;15:2;16:12
**favor (1)**
33:4
**feasible (1)**
12:16
**February (7)**
12:1;13:9;33:4;
39:1,4;40:1,4
**Federal (2)**
10:3;28:6
**feel (1)**
13:6
**FELDERSTEIN (1)**
9:10

12-12020-mg    Doc 2866    Filed 02/08/13    Entered 02/08/13 11:15:28    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 48 of 54
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg
February 7, 2013

**felt (1)**
33:17
27:20
**Fifth (2)**
6:3;10:4
**fifty (1)**
11:13
**fight (1)**
28:1
**file (7)**
21:9;23:9,12,13;
27:23;28:3;39:23
**filed (14)**
3:5;20:11;23:18;
24:2;27:12;30:5;
32:8,8,17;34:3,11;
35:15;39:14;40:7
**filing (6)**
12:12;23:15,17;
34:6;40:6,9
**final (6)**
22:5,15;26:16;
30:14;34:5,10
**finalize (1)**
21:8
**finally (1)**
25:24
**Financial (4)**
3:2;9:2;13:5;32:22
**finish (2)**
12:23,24
**finished (2)**
13:3,6
**firm (4)**
18:14;28:21;31:10,
14
**firmed (1)**
18:16
**first (9)**
15:17,22;16:24;
17:2;24:7,7;25:13;
31:8;38:20
**FITZGERALD (1)**
9:10
**flexible (1)**
35:1
**FLOM (1)**
8:9
**flooded (1)**
28:20
**Floor (3)**
7:11;8:20;9:21
**flowing (1)**
24:8
**Foerster (6)**
16:22;21:4;23:22;
25:11;27:10;36:12
**follow (1)**
41:24
**follows (1)**
32:6
**follow-ups (1)**
13:1
**force (1)**

**foreclosure (20)**
27:21,24;28:1,4,
22;30:19,21;31:1,3,4,
18,25;33:2;34:14,17,
20;35:8,11,13,23
**foreclosures (1)**
31:7
**form (2)**
22:8,11
**forth (5)**
34:16,23;35:3,4,10
**forward (4)**
17:24;22:12;32:16;
35:7
**found (3)**
27:2;30:16;34:9
**Four (3)**
8:11;13:5,6
**fourth (1)**
13:7
**FRANKEL (1)**
5:18
**FREJKA (1)**
5:24
**Friday (2)**
17:25;18:4
**full (2)**
19:23;33:17
**fully (3)**
16:9,11;20:16
**funds (1)**
32:24
**further (7)**
22:21;27:14;29:4;
34:8;35:18;38:23;
39:8

**G**

**GAMBLE (1)**
8:17
**gave (1)**
20:16
**general (1)**
26:24
**Georgia (16)**
27:21,22;28:5,6,9,
10;29:3;30:4;32:12,
20,21;33:3,22;34:11,
20;35:8
**GIBBONS (1)**
7:9
**given (1)**
12:7
**gives (1)**
19:18
**GMAC (3)**
28:21,23;29:3
**GOLD (11)**
8:23;21:16,16;
22:19;24:6,13,15,19,
23;25:1,4

**Good (9)**
16:21;17:25;18:4;
21:3,16;22:18;27:9;
31:19;36:11
**Goren (10)**
23:3;25:7,9,10,10,
24;27:1,3,4,6
**GOTSHAL (1)**
6:1
**GOTTLIEB (1)**
6:9
**Grand (1)**
9:21
**grant (1)**
28:25
**granted (1)**
33:3
**GRIECO (6)**
5:15;39:19,19,22;
40:1,11
**GROSSI (1)**
9:6
**Group (1)**
7:2
**Guarantee (1)**
6:2
**guess (2)**
23:9;29:13

**H**

**half (1)**
11:11
**HAMILTON (1)**
6:9
**happen (2)**
15:14;19:10
**happy (2)**
24:13;37:5
**hard (1)**
16:11
**HARRISON (1)**
7:6
**Hathaway (1)**
9:20
**HAWKINS (1)**
10:7
**head (1)**
22:16
**hear (7)**
15:2;16:2;29:11,
17,19,20;37:1
**heard (8)**
15:19,21;16:17;
17:13;18:1;36:18;
37:8;40:12
**Hearing (11)**
3:1,10;15:15,17;
19:11,18;20:7,16;
25:14;36:20,22
**held (1)**
23:15
**high (1)**

37:12
**highest (1)**
14:24
**himself (1)**
31:7
**Hoc (1)**
7:2
**HOFER (1)**
8:14
**HOGAN (2)**
5:9;39:19
**hold (4)**
19:14,17;23:2,4
**holding (1)**
21:18
**holdup (1)**
21:24
**Homecomings (4)**
32:22,24;33:1,4
**homes (2)**
28:10,12
**honesty (1)**
27:22
**Honor (58)**
11:6,24;13:23;
16:8,16,21,23;17:16,
24;18:15;20:1,20,22,
24;21:3,5,10,16,20;
22:3,14,21;23:19,21;
24:6,19;25:4,6,10,13,
24;27:4,9,16,18;29:7,
10,13,16,24;30:10;
31:5,19,21;32:3;36:7,
11;37:9,9;38:2;39:1,
14;41:4,11,19,22;
42:3,8
**Honor's (3)**
12:17;21:12;23:23
**hope (2)**
15:9,23
**hoped (1)**
12:6
**hopefully (7)**
14:21;19:1,18;
20:17;25:20;39:8;
40:23
**hoping (2)**
19:9,11
**HORAN (1)**
10:22
**hours (1)**
37:3
**Howard (1)**
11:6

**I**

**III (1)**
17:9
**immediately (1)**
16:3
**imminent (1)**
35:13

**implement (1)**
22:16
**implementation (1)**
22:9
**importance (1)**
16:9
**important (6)**
14:19,22;15:4,25;
28:19;29:20
**improperly (1)**
13:21
**inability (1)**
12:14
**inadvertently (1)**
13:20
**Inc (4)**
3:2;6:2;9:2,20
**including (1)**
34:19
**incorporate (1)**
12:9
**incorporation (1)**
11:22
**incurring (1)**
40:6
**indicated (3)**
19:20;32:19;36:25
**indulgence (1)**
21:12
**Industries (1)**
34:24
**informal (1)**
14:4
**initiated (1)**
36:14
**injunction (1)**
28:3
**instance (2)**
15:18,22
**instances (1)**
15:16
**institutions (1)**
13:5
**integrity (1)**
27:22
**intention (1)**
39:13
**interest (1)**
33:10
**interposed (1)**
17:19
**interview (1)**
14:11
**interviewed (2)**
12:10;14:11
**interviews (7)**
11:13,22;12:9;
14:6,8,14,15
**into (5)**
12:9;13:4,16;
15:13;26:11
**involve (1)**
33:1

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg

February 7, 2013

**involved (1)**
38:1
**Irvine (1)**
8:21
**issue (5)**
14:3;15:10;21:18;
26:8;30:9
**issues (13)**
13:2,15,19;14:2;
15:9,11;17:18;21:21,
23;23:12;31:11;
34:14;35:17
**issuing (1)**
14:5
**item (3)**
27:11;36:13,13
**IVAN (2)**
8:23;21:16

**J**

**James (2)**
36:10,11
**January (6)**
12:1,25;21:21;
23:23;25:14;30:24
**JASON (1)**
10:15
**Jeannie (1)**
18:24
**Jenkins (21)**
36:15,16,21,21,24;
37:4,7,9;38:6,9,12,
14,17;39:10;40:14,
16,19,22,25;41:1,5
**JENNIFER (1)**
5:6
**JEREMY (1)**
6:14
**Jericho (2)**
6:19,21
**JONATHAN (1)**
8:14
**JPMorgan (2)**
10:18;17:3
**judgment (6)**
30:15;33:3,8,25;
34:6,10
**judicial (1)**
33:10
**Judy (2)**
10:2;36:18
**July (1)**
33:6
**Junior (1)**
7:2
**JUSTIN (2)**
6:23;31:19

**K**

**keep (1)**
16:4

**KELLEY (1)**
7:17
**Kennesaw (1)**
32:21
**kinds (1)**
15:20
**KIRKLAND (1)**
9:1
**knows (1)**
31:6
**KRAMER (2)**
5:18;23:5
**KRELL (4)**
6:23;31:19,19;38:2

**L**

**landlord (1)**
21:17
**large (1)**
14:18
**last (7)**
11:16;19:19;25:17;
28:20;38:19;40:4;
41:6
**later (6)**
12:17;15:3;21:10;
22:17;25:21,22
**law (4)**
27:22;28:20;31:10;
42:1
**lawsuit (1)**
32:12
**lawyer (2)**
31:12;35:19
**lawyers (2)**
15:12,13
**lead (1)**
35:25
**lease (4)**
17:10;21:7,20;
23:25
**least (1)**
13:6
**leave (3)**
19:15;28:2;29:4
**LECK (1)**
8:17
**legal (2)**
19:3,7
**letter (2)**
15:18;30:24
**letters (2)**
20:8;28:20
**LEVIN (2)**
5:18;23:5
**Lewisville (6)**
8:18;21:1,12,17;
22:10;25:2
**Lexington (1)**
9:3
**liability (2)**
30:16;34:10

**Liberty (1)**
6:11
**lift (5)**
32:9;34:21;35:1,6,
25
**lifted (2)**
32:15;34:15
**lifting (1)**
33:21
**likelihood (1)**
18:17
**limine (1)**
20:14
**Limited (6)**
3:1;19:2;20:3;
30:1;31:23;33:11
**line (1)**
38:18
**liquidate (4)**
30:8;31:23;32:16;
33:14
**liquidated (1)**
34:2
**literally (3)**
20:6;22:1,14
**litigation (3)**
30:3,7,7
**live (1)**
18:13
**LLC (3)**
3:20;5:2;32:22
**LLP (17)**
5:1,9,18;6:1,9,17;
7:1,17;8:1,9,17;9:1,
10,19;10:1,9,10
**Loan (2)**
5:2;30:20
**loans (1)**
32:22
**local (1)**
28:20
**London (3)**
28:9;30:23;32:20
**long (2)**
13:25;39:2
**longer (2)**
12:16;26:14
**look (1)**
23:16
**Los (1)**
9:22
**LOVELLS (2)**
5:9;39:19
**luck (1)**
22:18

**M**

**Main (1)**
8:19
**makes (1)**
12:16
**making (2)**

28:7;34:21
**Mall (1)**
9:13
**MALLORY (1)**
8:17
**MANGES (1)**
6:1
**MANNING (1)**
10:15
**many (2)**
18:10;34:18
**March (6)**
17:24;18:22;19:16;
30:25;31:3;39:3
**Marco (1)**
17:22
**Marion (1)**
36:15
**mark (1)**
20:9
**marked (1)**
20:10
**Martin (11)**
27:6,8,9,10;29:12,
13,23,24;36:2,4,9
**master (1)**
26:16
**MATKINS (2)**
8:17;21:17
**matter (12)**
17:2,8;19:8;20:13,
25;21:1;27:7;39:12;
40:5,13;41:6,14
**matters (10)**
15:20;16:24,25,25;
17:9,17;19:14;21:13;
25:12;34:18
**May (8)**
12:12;13:3,23;
16:1;19:10;20:3;
29:1,2
**McCurdy (1)**
30:20
**MEAGHER (1)**
8:9
**mean (3)**
15:22;18:10;20:5
**meeting (3)**
14:25;37:13;40:16
**Michael (5)**
3:5;10:25;27:16;
29:16;32:7
**microphone (1)**
29:18
**middle (2)**
13:9;15:13
**million (2)**
11:10,11
**million-plus (1)**
12:3
**minute (1)**
19:19
**misallocation (1)**

32:24
**miscommunications (1)**
40:24
**missing (1)**
28:16
**modification (1)**
33:11
**Monday (1)**
37:2
**monetary (6)**
24:8;30:2,12;
32:11;33:13,18
**money (2)**
28:14;32:25
**month (1)**
12:13
**monthly (2)**
28:14,17
**months (1)**
22:9
**Moot (1)**
3:9
**more (4)**
11:11;13:8;18:18;
22:8
**morning (12)**
16:21,24;18:23;
21:3,16;22:2;27:9;
31:19;36:11;37:20,
21,24
**Morrison (6)**
16:22;21:4;23:22;
25:11;27:10;36:12
**Mortgage (4)**
10:18;27:23;28:17,
21
**mortgages (1)**
28:15
**mortgagor (1)**
32:19
**Most (3)**
12:25;18:17;31:15
**Motion (19)**
3:3,5,8,9;17:2,9;
27:11,14,19,20;29:8;
32:7;34:22;35:5,8,
15;39:15,23;40:7
**motions (4)**
20:13;40:3,6,9
**move (4)**
18:21,24;39:13;
40:24
**moved (1)**
28:5
**moving (2)**
16:5;20:24
**much (12)**
16:13;20:23;22:2,
20,22;25:5,23;29:7,8;
36:6;40:25;42:6
**multi-faceted (1)**
26:2
**MUNGER (1)**

12-12020-mg    Doc 2866    Filed 02/08/13    Entered 02/08/13 11:15:28    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 50 of 54
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg
February 7, 2013

9:19
**must (1)**
  35:1
**myself (1)**
  37:19

## N

**NAFTALIS (1)**
  5:18
**name (2)**
  38:19,20
**NATSIS (1)**
  8:17
**near (1)**
  30:4
**necessary (2)**
  17:23;19:12
**necessity (1)**
  40:5
**need (6)**
  15:7,15,22;18:13;
  19:15;20:6
**needed (2)**
  19:24;35:18
**needs (2)**
  20:9;25:20
**negotiating (1)**
  14:20
**New (19)**
  3:22;5:4,13,21;6:4,
  12;7:4,12,20;8:4,12;
  9:4;12:8;24:8;26:11;
  28:12;30:23;41:17;
  42:1
**Newton (14)**
  36:10,11,11;37:22,
  23;38:3,11,14,15,22;
  39:6,12,14,17
**next (8)**
  15:17;17:8;20:25;
  27:7,11;36:13,23;
  38:25
**nice (1)**
  32:1
**night (1)**
  25:18
**noncontroversial (2)**
  19:3,7
**nonexclusive (1)**
  34:23
**nonjudicial (2)**
  27:21;34:20
**Norm (2)**
  16:21;18:15
**North (1)**
  10:4
**Northwest (1)**
  32:21
**note (1)**
  29:24
**noted (2)**
  16:24;17:18

**Noteholders (12)**
  7:2
**number (12)**
  11:3;14:14;17:4,
  11;27:12;32:13;
  34:12;36:15;37:20;
  38:10,17,18
**numbers (1)**
  20:8
**numeral (1)**
  17:8
**NY (13)**
  3:22;5:4,13,21;6:4,
  12,21;7:4,12,20;8:4,
  12;9:4

## O

**Oaky (1)**
  42:4
**oath (2)**
  14:7,9
**object (2)**
  29:25;33:11
**Objection (7)**
  3:1;17:19,20;
  25:13,25;32:9;38:6
**objections (1)**
  17:17
**objective (1)**
  19:12
**obtained (3)**
  30:12;33:19;34:6
**occur (2)**
  12:22;16:2
**o'clock (5)**
  24:18;37:14,18;
  40:15,17
**Ocwen (9)**
  5:2;21:8,11;26:6,6,
  10,10,12,19
**off (4)**
  19:14,17;24:7;
  37:17
**offer (1)**
  16:14
**offered (1)**
  17:24
**office (3)**
  37:19;38:18;40:15
**offices (1)**
  36:22
**Official (1)**
  5:19
**OLSON (1)**
  9:19
**One (17)**
  6:11;7:11;10:3;
  17:17,22;18:8,19,25;
  26:1,3,8;28:8;29:1;
  30:20,22;40:4;41:25
**only (2)**
  28:1;36:24

**open (1)**
  14:2
**operating (1)**
  19:22
**operations@escribersnet (1)**
  3:24
**OPOLSKY (1)**
  6:14
**oppose (1)**
  34:17
**order (19)**
  17:10,11,20;21:20;
  22:9;23:24;31:6,16,
  24;32:16;33:4,6,14;
  34:8,10,16;35:9,24;
  36:2
**orders (1)**
  15:5
**original (1)**
  28:11
**originally (1)**
  26:10
**ought (2)**
  23:20;38:1
**out (16)**
  15:12,19;17:23;
  18:2;20:4,5;23:23;
  29:9;32:23;36:21,22,
  24;37:1,4,10,12
**outstanding (1)**
  12:20
**over (5)**
  21:1;22:25;25:7;
  26:23;27:6
**owed (2)**
  26:18,23
**own (1)**
  28:8
**owned (1)**
  28:10
**owner (1)**
  28:11
**owns (1)**
  30:20

## P

**package (1)**
  19:23
**page (3)**
  16:25;20:25;22:15
**pages (2)**
  11:11;12:3
**papering (1)**
  21:9
**papers (3)**
  29:14;32:5;35:4
**Park (2)**
  7:19;10:11
**Parke (1)**
  11:7
**part (3)**
  34:21,22;35:6

**partial (1)**
  33:3
**participating (1)**
  38:7
**particularly (1)**
  13:22
**parties (19)**
  11:12,20;12:10,23,
  25;13:3,10,17,18;
  14:2;15:1,19;17:4,
  23;21:5;33:8;35:4;
  40:6;41:16
**party (1)**
  18:7
**PASCUZZI (2)**
  9:10,16
**past (2)**
  29:9;38:3
**PATTERSON (1)**
  8:1
**PAUL (1)**
  9:16
**Pause (2)**
  18:5,20
**payments (2)**
  28:15,17
**PC (1)**
  7:9
**pen (1)**
  15:5
**pending (4)**
  30:3,5;31:5;32:11
**Pennsylvania (1)**
  7:11
**people (2)**
  14:10;41:17
**percent (1)**
  26:13
**perhaps (2)**
  11:14;12:9
**permission (1)**
  12:17
**permit (4)**
  21:19;31:16;32:15;
  33:22
**permitting (2)**
  32:10;33:12
**perpetual (1)**
  28:3
**person (1)**
  29:17
**phase (1)**
  24:9
**phone (7)**
  19:22;27:13;36:16,
  19;37:17;38:10,19
**photocopies (1)**
  28:16
**Place (2)**
  10:3;29:9
**placed (1)**
  28:23
**plan (3)**

14:20,21;39:18
**Platform (1)**
  3:3
**Plaza (2)**
  6:11;7:11
**PLC (1)**
  8:10
**Please (2)**
  11:2;39:7
**pleased (1)**
  21:5
**PLLC (1)**
  10:17
**pm (4)**
  18:23;19:16;20:12;
  25:3
**podium (4)**
  21:1;22:25;25:7;
  36:9
**point (1)**
  26:14
**position (1)**
  29:4
**possibility (1)**
  18:16
**possible (3)**
  14:22;15:8;16:12
**possibly (1)**
  28:5
**post-close (1)**
  26:21
**potentially (1)**
  18:19
**power (1)**
  15:5
**pre- (2)**
  20:9;22:10
**pre-marked (1)**
  20:7
**prepare (1)**
  36:2
**prepared (2)**
  17:23;20:16
**present (3)**
  3:10;10:24;17:25;
  27:16;31:12
**presented (1)**
  17:5
**presentment (4)**
  21:10;23:9,17;
  25:21
**pressure (1)**
  37:12
**pre-trial (2)**
  36:14;38:24
**pretty (2)**
  22:2;29:8
**previously (2)**
  12:6;21:20
**primary (1)**
  27:19
**principle (2)**
  21:6;25:15

12-12020-mg    Doc 2866    Filed 02/08/13    Entered 02/08/13 11:15:28    Main Document
RESIDENTIAL CAPITAL, LLC, et al.    Pg 51 of 54
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg                    February 7, 2013

**principles (2)**
19:3,7
**prior (3)**
21:8;36:20;39:23
**privilege (1)**
13:19
**privileges (2)**
13:22;15:10
**Pro (1)**
10:25
**probably (1)**
23:16
**problem (4)**
17:25;18:3;24:6;
25:1
**procedures (2)**
31:24;34:18
**proceed (1)**
33:22
**proceeding (2)**
36:14;41:7
**proceedings (1)**
42:9
**process (2)**
15:14;16:4
**produce (1)**
12:15
**produced (6)**
12:4;13:7,14,18,20,
21
**producing (2)**
11:12;15:1
**production (11)**
11:10,19;12:3,8,16,
21,24;13:3,5,6;15:11
**productions (1)**
13:12
**professionals (2)**
14:23;16:10
**progress (3)**
14:19;15:25;16:10
**promptly (2)**
15:21;34:6
**proof (2)**
30:14;33:24
**proofs (5)**
30:5,17;34:3,11,12
**properly (1)**
17:18
**properties (11)**
28:7,22;29:2;
30:19;31:18;32:20,
22;33:2;34:15,17;
35:11
**property (5)**
27:24;28:8,9;29:5;
30:23
**propose (1)**
34:3
**Proposed (2)**
3:2;31:22
**protect (2)**
29:1,5

**protected (2)**
35:20,21
**protection (2)**
35:15,22
**protections (1)**
35:10
**provide (1)**
31:17
**provided (4)**
22:6;27:19;28:13;
29:8
**pull (1)**
29:18
**purpose (3)**
30:1;32:10;33:12
**pursue (3)**
30:2;32:10;33:13
**put (4)**
19:21;21:13;28:23;
40:3

## Q

**Quadrangle (1)**
6:19
**quality (1)**
14:24
**quickly (2)**
15:8,14
**quite (1)**
34:18

## R

**raise (3)**
16:2;41:3;42:5
**raised (2)**
15:10;18:11
**rather (1)**
15:2
**RE (1)**
3:1
**reach (5)**
36:21,22,23;37:10;
39:6
**reached (5)**
21:6;25:14;37:1,4,
12
**ready (6)**
30:4;33:9,10,23;
35:7;38:14
**real (1)**
26:7
**really (3)**
14:24;19:5;26:17
**reason (1)**
27:20
**reasonable (2)**
22:8,11
**reassessment (1)**
12:5
**recall (3)**
12:9;13:4;36:20

**received (5)**
11:9;14:1;22:2;
25:17;28:18
**recently (1)**
12:4;30:24
**record (8)**
11:18;21:14;22:7;
24:12,21,22;29:15;
31:14
**recorded (2)**
14:8,15
**refer (2)**
13:18;32:13
**reference (1)**
28:7
**referenced (1)**
28:9
**referred (2)**
30:20;31:3
**reflect (3)**
30:14;33:25;34:5
**reflecting (1)**
36:2
**regarding (3)**
23:24;28:14;30:18
**regrets (1)**
12:14
**regulatory (1)**
13:22
**reinstate (1)**
31:2
**reinstates (1)**
31:1
**reject (3)**
23:25;24:16;25:3
**relate (3)**
30:6;32:18;33:1,15
**related (1)**
21:24
**relating (1)**
34:4
**relatively (1)**
16:23
**released (1)**
28:2
**relevant (1)**
34:25
**Relief (13)**
3:5,8;17:3;27:12;
29:1;30:1,2;31:23;
32:2,8,11;33:13;
35:14
**relies (1)**
27:22
**remain (5)**
11:15;13:15;14:1;
30:11;33:17
**remaining (3)**
14:13;21:23;33:7
**remains (1)**
13:8
**report (22)**
11:4,8,17,17,23;

12:5,12,15,18;14:19,
21,23;15:7;16:1,5,9,
18;19:16,20;20:17,
25;21:5
**reported (2)**
11:24;25:14
**reporter (1)**
20:9
**request (2)**
12:21;37:14
**requested (4)**
12:23;14:1,12;
33:16
**requests (3)**
12:20;13:18;14:4
**require (1)**
12:5
**required (2)**
12:7;26:1
**rescheduling (3)**
12:11;19:14,17
**reserving (1)**
13:19
**residences (1)**
27:25
**Residential (3)**
11:3;28:8;34:19
**resistance (1)**
15:1
**resolution (4)**
21:6,18;26:2;39:7
**resolve (7)**
13:17,23,24;15:9,
20,23;23:12
**resolved (12)**
3:9;16:25;17:4;
20:18;25:25;28:4;
29:6;39:12;40:5,8;
41:8,13
**resolving (1)**
21:21
**respect (16)**
14:20;15:1,15;
18:4;21:23;22:10,13;
24:7;26:17;30:18,23;
33:7;34:14;35:8,23;
40:12
**respects (2)**
30:10;33:16
**response (1)**
33:5
**responses (2)**
29:14;40:9
**retained (1)**
28:21
**revert (1)**
29:10
**review (5)**
11:21;12:8;23:10;
24:9,15
**reviewed (3)**
25:18;27:1;32:5
**reviewing (1)**

12:5,12,15,18;14:19,
21,23;15:7;16:1,5,9,
18;19:16,20;20:17,
25;21:5

27:18
**rewarded (1)**
33:24
**RICE (1)**
10:17
**right (18)**
13:19;16:15,19;
17:13,14;18:21;
19:13;23:18,18;32:4,
4;36:8;37:7;38:22,
23;40:25;42:4,6
**rights (4)**
31:17;34:16;35:10,
23
**rolling (2)**
11:20;12:2
**Roman (1)**
17:8
**Rome (1)**
28:6
**Rosenbaum (29)**
16:19,21,22;17:2,8,
16;18:15,15;19:19:3,6,9,
11;20:2,3,21,22,24;
38:24;39:1,3;41:4,6,
9,15,19,22,24;42:3,8
**ROSENBUAM (1)**
41:11
**round (1)**
23:14
**rule (2)**
19:22;39:14
**ruling (2)**
32:5;36:3

## S

**Sacramento (1)**
9:14
**Sale (3)**
3:3;17:20;30:21
**Samantha (2)**
27:6,9
**SANDERS (2)**
10:9,10
**SANDRIDGE (1)**
10:17
**SARA (1)**
6:6
**saying (1)**
13:25
**schedule (3)**
12:22;18:22;40:9
**scheduled (3)**
11:14,15;39:15
**scheduling (2)**
17:19;18:8
**Se (1)**
10:25
**seated (1)**
11:2
**Second (1)**
34:23

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg

February 7, 2013

**Secured (1)**
7:2
**seek (1)**
35:15
**seeking (4)**
13:5;31:17;34:16;
35:10
**seeks (1)**
32:25
**Seife (12)**
11:5,6,6;12:23;
13:14;14:5,8,12;16:6,
8,14,16
**sense (1)**
35:22
**sent (1)**
30:24
**separate (1)**
31:4
**Servicer/Subservicer (1)**
7:10
**services (2)**
21:25;32:22
**Servicing (9)**
5:2,11;26:16;31:6,
16;34:15;35:9,24;
39:22
**Serving (1)**
36:17
**set (6)**
30:22;34:23;35:3,
4;39:24;40:9
**sets (2)**
34:16;35:10
**settle (1)**
19:8
**settlement (2)**
23:8,24
**seven (1)**
11:11
**seventeen (1)**
11:14
**several (3)**
26:2;29:14;37:1
**severe (1)**
28:24
**Shapiro (1)**
3:19
**Sharon (1)**
36:15
**Sharona (1)**
3:19
**short (2)**
16:23;24:10
**shot (1)**
40:4
**sick (1)**
37:11
**SILVERMANACAMPORA (5)**
6:17;31:9,10,20;
35:19
**similar (1)**
41:16

**single (1)**
22:15
**single-family (1)**
27:25
**situation (2)**
27:24;28:25
**sixty (1)**
26:21
**SKADDEN (1)**
8:9
**SLATE (1)**
8:9
**sliver (1)**
22:12
**solely (2)**
30:1;32:10
**solve (1)**
24:6
**someone (1)**
31:9
**sometimes (1)**
15:5
**Sonnax (2)**
34:24;35:3
**soon (1)**
14:21
**sooner (1)**
15:2
**sorry (1)**
41:22
**sort (1)**
26:2
**sounds (2)**
19:2;40:7
**South (1)**
9:21
**Southern (2)**
41:10,14
**speak (5)**
29:20;36:24;37:15,
18,23
**speaking (1)**
29:17
**Special (9)**
6:18;31:10,20;
35:17;36:21,23;37:3,
25;38:7
**specific (1)**
12:20
**specifically (2)**
31:15;34:19
**spell (1)**
29:9
**spelling (1)**
38:19
**spoken (3)**
14:15;31:15,21
**Square (1)**
8:11
**standard (2)**
19:22;35:3
**start (1)**
29:24

**started (2)**
28:22;31:2
**state (4)**
22:6;27:20;30:2;
34:20
**stated (3)**
29:6,15;37:17
**status (6)**
11:8,16;19:16,20;
20:17,25
**Stay (21)**
3:5,8;17:3;27:11;
28:2,3;29:1;30:1,11;
32:2,8,9,15;33:12,17,
21;34:15,21;35:1,6,
25
**STEEN (1)**
6:9
**Stef (1)**
21:2
**Stefan (2)**
21:3;23:21
**STEPHEN (2)**
5:23;23:5
**still (4)**
14:13;19:10;25:19;
26:12
**stip (1)**
22:6
**stipulate (3)**
18:12,17;19:1
**stipulated (1)**
28:14
**stipulation (10)**
3:9,10;17:5;19:21;
21:9,19,21;25:18;
26:1;31:23
**Street (3)**
3:21;5:3;8:19
**strike (1)**
20:13
**subject (2)**
16:18;39:7
**sublease (3)**
21:25;22:8,12
**submitted (2)**
17:12;35:5
**subpoenas (2)**
14:3,5
**subserviced (1)**
26:6
**subservicing (2)**
26:4,7
**substantial (5)**
12:8,24;13:14;
14:14;15:11
**substantially (5)**
13:7,11,25;25:16;
35:9
**sufficiently (1)**
35:21
**suggesting (1)**
12:17

**Suite (4)**
3:21;6:20;9:13;
10:12
**summary (2)**
33:3,8
**superior (5)**
28:5;29:3;30:3;
32:12;33:3
**supplemental (6)**
31:6,16,24;34:15;
35:9,24
**support (2)**
27:14,19
**sure (8)**
16:5;19:5;20:16;
29:13;39:21;40:13;
41:1;42:1
**Syncora (1)**
6:2

**T**

**talked (2)**
14:6;18:10
**task (1)**
14:18
**telephone (3)**
15:18;18:6,7
**TELEPHONICALLY (6)**
9:16,24;10:7,15,22,
24
**ten-plus (1)**
29:9
**term (1)**
22:8
**testimony (1)**
18:13
**That'll (2)**
17:14;36:1
**thereof (1)**
34:7
**Third (2)**
5:12;13:10
**thirteen (1)**
28:11
**THOMAS (2)**
9:24;10:22
**THOMPSON (1)**
7:22
**three (3)**
13:7;18:18,18
**Thursday (2)**
18:22;19:16
**timely (3)**
11:20,21;15:2
**Times (2)**
8:11;37:2
**today (8)**
16:25;21:10;22:17;
23:25;24:20;25:21,
22;42:5
**today's (1)**
41:12

**Todd (2)**
25:7,10
**together (1)**
19:21
**told (1)**
19:21
**TOLLES (1)**
9:19
**Tom (1)**
38:20
**tomorrow (13)**
23:15;24:17,18;
25:3;37:13,15,18,19,
21,24;38:8;40:15,21
**topic (1)**
26:4
**Transcribed (2)**
3:19;14:9
**transition (1)**
21:25
**trapped (1)**
28:24
**treated (2)**
34:1,2
**trial (7)**
30:4,7;33:9,10,22;
35:7,7
**TROUTMAN (2)**
10:9,10
**Trust (1)**
6:10
**trustee (1)**
5:10
**try (4)**
18:2;23:11;37:11;
40:24
**trying (3)**
13:17,21;15:13
**TSA (1)**
22:10
**turn (4)**
21:1;22:25;25:6;
27:6
**tweaks (1)**
23:13
**twelve (1)**
34:23
**twenty (1)**
11:12
**twenty-five (1)**
11:15
**two (11)**
12:3;18:19;20:10;
25:12;27:24;28:7;
29:2;30:5,19;32:19;
34:11
**TYLER (1)**
8:1

**U**

**UMB (1)**
7:18

12-12020-mg    Doc 2866    Filed 02/08/13    Entered 02/08/13 11:15:28    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 53 of 54
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg                    February 7, 2013

**unanticipated (1)**
12:16
**uncontested (2)**
17:9,11
**under (8)**
14:7,9;16:25;17:8;
23:23;24:16;26:6;
31:6
**unexpired (1)**
17:10
**unfettered (1)**
32:2
**unfortunately (1)**
11:25
**unless (2)**
15:19;24:4
**unsecured (1)**
26:24
**unusual (1)**
35:25
**up (6)**
18:14,16;21:18;
23:15;29:20;41:24
**update (3)**
11:8;28:18;39:5
**upload (2)**
22:16;25:21
**uploaded (1)**
24:17
**upon (2)**
11:19;32:2
**use (3)**
11:21;20:7,8
**using (1)**
35:21
**usually (3)**
15:17,19,23

## V

**VA (1)**
10:13
**Velo (1)**
18:24
**verify (1)**
13:12
**Victoria (2)**
28:8;32:21
**view (2)**
15:25;35:20
**Virginia (1)**
10:13
**virtually (2)**
15:12,16
**voluminous (1)**
13:8

## W

**wait (1)**
19:19
**WALPER (1)**
9:24

**wants (1)**
42:5
**WARREN (1)**
7:17
**way (6)**
13:25;28:1,8,23;
32:21;34:1
**WEBB (1)**
8:1
**week (4)**
19:23;20:12,15;
28:20
**weeks (1)**
22:4
**WEIL (1)**
6:1
**Wells (3)**
7:10;9:12;25:13
**Wells' (1)**
25:18
**weren't (1)**
18:6
**West (2)**
3:21;5:3
**Western (2)**
41:9,13
**what'd (1)**
40:15
**what's (1)**
38:25
**Wheeler (39)**
3:6;10:25;27:12,
13,15,16,17;29:11,
15,16,16,19,22;30:3,
12,24;31:6,9,15,17,
21,22,24;32:1,1,10,15,
19,25;33:12,17,24;
34:4,10,11;35:12,18,
19;36:6,7
**Wheeler's (5)**
29:25;30:18;32:7,
23;33:14
**Whereupon (1)**
42:9
**WHITE (1)**
7:1
**whole (1)**
23:14
**wife (1)**
37:19
**willing (3)**
37:15,18,23
**WILLOUGHBY (1)**
9:10
**Wilmington (2)**
6:10;10:20
**wish (2)**
17:13;40:12
**Without (3)**
13:16;34:8;40:5
**witnesses (3)**
18:10,18,18
**WOMBLE (1)**

10:17
**words (1)**
27:21
**work (6)**
13:21;16:6;18:2,3;
20:4,5
**worked (3)**
15:12;23:23;34:18
**working (4)**
13:16;14:17;16:11;
21:22
**written (2)**
18:11;19:16
**wrong (1)**
13:11

## Y

**years (2)**
28:11;29:10
**Yep (1)**
27:4
**yesterday (2)**
18:2;37:2
**York (12)**
3:22;5:4,13,21;6:4,
12;7:4,12,20;8:4,12;
9:4

## Z

**ZIDE (6)**
5:23;23:5,5,7,8,19

## 0

**01-5-10429-34 (1)**
32:13

## 1

**1.1 (1)**
11:10
**10:17 (1)**
22:2
**100 (2)**
6:19;26:13
**100,000 (1)**
26:22
**10006 (1)**
6:12
**10019 (1)**
5:4
**10022 (2)**
5:13;9:4
**10036 (4)**
5:21;7:4;8:4,12
**10040 (1)**
3:22
**101 (1)**
7:19
**10119 (1)**
7:12

**10153 (1)**
6:4
**10178 (1)**
7:20
**10th (1)**
33:4
**11 (7)**
32:17;33:15;37:13,
18,19;40:15,16
**11:06 (1)**
42:9
**11:30 (5)**
37:16,23;40:16,20,
21
**1133 (1)**
8:3
**1155 (1)**
7:3
**11753 (1)**
6:21
**1177 (1)**
5:20
**12-01935 (1)**
36:15
**12-12020 (1)**
11:3
**1280 (1)**
34:24
**12e (2)**
39:14;40:7
**1450 (1)**
9:13
**14th (1)**
19:16
**16th (1)**
33:6
**1728 (1)**
32:20
**1819 (1)**
10:4
**1900 (1)**
8:19
**192nd (1)**
3:21
**19801 (1)**
10:20
**1990 (1)**
34:24

## 2

**2 (2)**
18:23;20:12
**2000 (1)**
10:12
**2002 (1)**
32:24
**2005 (3)**
30:5;31:5;32:25
**2009 (1)**
33:5
**2012 (2)**
30:21;33:6

**2013 (1)**
30:25
**2069 (1)**
3:1
**2069] (1)**
3:3
**21st (2)**
20:11,12
**222 (2)**
10:11,19
**2251 (3)**
3:5;27:12;32:8
**23462 (1)**
10:13
**2646 (2)**
3:8;17:4
**2648 (1)**
17:11
**2777 (1)**
32:9
**28th (11)**
18:22,23,25;38:25;
39:1,4,9,15;40:1,4,8
**29th (1)**
17:24
**2d (1)**
34:24

## 3

**3 (1)**
33:5
**300 (1)**
6:20
**30th (1)**
30:24
**31 (1)**
5:3
**31st (3)**
21:22;23:23;25:14
**348-6361 (1)**
38:17
**35203 (1)**
10:5
**355 (1)**
9:21
**35th (1)**
9:21
**365d4 (1)**
24:16
**37th (1)**
7:11
**382-5324 (1)**
38:19

## 4

**400 (1)**
9:13
**404 (2)**
38:17,19
**4820 (1)**
34:12

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg;12-12019-mg; Adv. Proc.12-01935-mg                February 7, 2013

**4940 (1)**
  34:13

### 5

**5 (4)**
  16:25;19:16;24:18;
  25:3
**52nd (1)**
  5:3
**5th (2)**
  8:20;39:3

### 6

**6 (2)**
  28:9;32:20
**601 (1)**
  9:3
**6th (2)**
  30:25;31:3

### 7

**700 (1)**
  3:21
**71,000 (1)**
  28:16
**74,000 (1)**
  28:19
**767 (1)**
  6:3

### 8

**8 (1)**
  20:25
**875 (1)**
  5:12

### 9

**90071 (1)**
  9:22
**907 (1)**
  34:24
**92614 (1)**
  8:21
**95814 (1)**
  9:14
**973406-2250 (1)**
  3:23