BEFORE THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re RESCAP,                          Case No. 12-12020
    Debtor

---

WENDY ALISON NORA,                          Adversary No.
    Plaintiff

                      **COMPLAINT**

    v.                          **JURY TRIAL DEMANDED**

RESIDENTIAL FUNDING COMPANY, LLC, a Delaware limited liability company and wholly
    owned  subsidiary of GMAC-RFC HOLDING COMPANY, LLC, a Delaware limited
    liability company
RESIDENTIAL ASSET SECURITIES CORPORATION, a Delaware corporation,
RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities
    created by RESIDENTIAL ASSET SECURITIES CORPORATION,
GMAC-RFC HOLDING COMPANY, LLC, a Delaware limited liability company and wholly
    owned subsidiary of RESIDENTIAL CAPITAL, LLC, a Delaware limited liability
    company,
RESIDENTIAL CAPITAL, LLC, a Delaware limited liability company, owned by GMAC
    MORTGAGE GROUP, LLC, a Delaware limited liability company which holds 99%
    interest and RESCAP INVESTMENTS, LLC, a Delaware limited liability company holds
    1% interest,
GMAC MORTGAGE, LLC, is a Delaware limited liability company and is a wholly owned
    subsidiary of  ALLY FINANCIAL, INC., Delaware corporation,
HOMECOMINGS FINANCIAL, LLC is a Delaware limited liability company and is a wholly
    owned subsidiary of GMAC  MORTGAGE GROUP, LLC, a Delaware corporation, the
    loan servicing duties of which were absorbed by GMAC MORTGAGE, LLC in 2009,
GMAC  MORTGAGE GROUP, LLC (hereinafter "GMAC GROUP") is a Delaware
    corporation and is wholly owned subsidiary of ALLY FINANCIAL, INC., a Delaware
    corporation,
GMAC FINANCIAL SERVICES (hereinafter "GMAC-FS") is an international private equities
    group in partnership with CEREBUS CAPITAL MANAGMENT, LP, a private equities
    group, whose operations in the United States of America were granted Troubled Asset
    Relief Program (TARP) funds to become a bank holding company,
AEGIS MORTGAGE CORPORATION, a Delaware Corporation, in Chapter 11 Reorganization
    Proceedings in the United States Bankruptcy Court for the District of Delaware Case
    No. 07-11119-BLS by Notice of Claim only
ALLY FINANCIAL, INC., a Delaware corporation,
CERBERUS CAPITAL MANAGEMENT, LP, is a Delaware limited partnership,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation,
MERSCORP HOLDINGS, INC., a Delaware Corporation and the parent company of Mortgage

Electronic Registration Systems, Inc.,
LENDER PROCESSING SERVICES, INC., a Delaware corporation,
MICHAEL A. CARPENTER, CEO of Ally Financial Inc., in his individual capacity,
STEPHEN A. FEINBERG, CEO of CERBERUS CAPITAL MANAGEMENT, LP, in his
    individual capacity,
GRAY & ASSOCIATES, LLP, a Wisconsin professional limited liability association,
DUNCAN C. DELHEY, a member of GRAY & ASSOCIATES, LLP,
JAY J. PITNER, a member of GRAY & ASSOCIATES, LLP, in his corporate individual
    capacity,
MICHAEL M. RILEY, a member or associate of GRAY & ASSOCIATES, LLP, in his corporate
    and individual capacity,
WILLIAM N. FOSHAG, an associate with GRAY & ASSOCIATES, LLP,
BASS & MOGLOWSKY, S.C., a Wisconsin professional corporation,
ARTHUR M. MOGLOWSKY, a shareholder of BASS & MOGLOWKSY, S.C., in his corporate
    and individual capacity,
DAVID M. POTTEIGER, an associate with BASS & MOGLOWSKY, S.C., in his corporate
    and individual capacity,
PENNY G. GENTGES, a shareholder of BASS & MOGLOWKY, S.C., in his corporate
    and individual capacity,
JEFFREY STEPHAN, an employee of GMAC MORTGAGE, LLC, in his individual capacity,
KENNETH URGWUADU, a former employee of GMAC MORTGAGE, LLC, in his individual
    capacity,
MANISH VERMA, an employee of GMAC MORTAGE, LLC, in his individual capacity,
JUDY FABER, an employee or former employee of RESIDENTIAL FUNDING COMPANY,
    LLC, in her individual capacity,
AMY NELSON, a former employee of RESIDENTIAL FUNDING COMPANY, LLC, in her
    individual capacity,
and
YET UNNAMED CO-CONSPIRATORS,
    Defendants

---

COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT AND VIOLATIONS [18 U.S.C. sec. 1964],  THE FAIR DEBT
COLLECTION PRACTICES ACT [15 U.S.C. sec. 1692e], AND  COMPLAINT TO
DETERMINE THESE CLAIMS NONDISCHARGEABLE FOR FRAUD AND THEFT [11
U.S.C. sec. 523(a)(2)] AND MALICIOUS INJURY [11 U.S.C. sec. 523(a)(6)], FOR
TURNOVER OF PLAINTIFF'S HOME AND THE PERSONAL PROPERTY SEIZED FROM
THE PREMISES WHICH ARE NOT ASSETS OF THE ESTATE HAVING BEEN TAKEN BY
FORGED DOCUMENTS AND EX PARTE PROCESS PURSUANT TO 11 U.S.C. sec. 548
AND FOR DECLARATORY RELIEF
(JURY TRIAL DEMANDED)

---

**NOW COMES** the Plaintiff, and for her Complaint against the Defendants above-named and yet to be named, and shows the Court:

1. This Court has jurisdiction under 28 U.S.C. secs. 1331, 1334 and 1349 because the Plaintiff's claims arise under the laws of the United States of America.

    a. Federal question jurisdiction under 28 U.S.C. sec. 1331 is based on the allegations herein that the Defendants have violated the Racketeer Influenced Corrupt Organizations Act (RICO) by engaging in conduct prohibited by 18 U.S.C. sec. 1961, et seq. and have violated the Fair Debt Collection Practices Act (FDCPA) by engaging in conduct prohibited by15 U.S.C. sec. 1692e.

    b. This case pertains to bankruptcy proceedings under 28 U.S.C. sec. 1334 which have been filed by the following Debtors, whose cases have been administratively consolidated under Case No. 12-12020: RESIDENTIAL FUNDING COMPANY, LLC, GMAC-RFC HOLDING COMPANY, LLC, RESIDENTIAL ASSET SECURITIES CORPORATION, RESIDENTIAL CAPITAL, LLC, GMAC MORTGAGE, LLC, HOMECOMINGS FINANCIAL, LLC, and GMAC MORTGAGE, LLC (hereinafter the "RESCAP Debtors" when all are referenced together.)

    c. Federal jurisdiction arises under 28 U.S.C. sec. 1349 because the equity interest represented by stock in  Ally Financial, Inc., parent company of the above-named RESCAP Debtors, is more than 50% owned by the United States of America.

3. Plaintiff is one of thousands of victims of violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. secs. 1961-1968) and the Fair Debt Collections Practices Act (15 U.S.C. sec. 1692, et seq.) by the Defendants name above, who have conspired to and engaged in direct action to, without limitation, deceive, defraud, intimidate, harass and deprive homeowners of their homes in foreclosure proceedings initiated without evidence that the foreclosing entity has the promissory note and lawfully assigned mortgages, rendering the debts upon which foreclosure is commenced unsecured.

4. The foreclosing entities are continuing to proceed with the confiscation of homes which they were without standing to seize in thousands of cases before and after when they entered into the National Mortgage Settlement in the <u>United States District Court for the District of Columbia, entitled United States of America, et al. v.  Bank of America Corporation, et al.</u> in Case No. 12-cv-361 and are openly pursuing the sale of illegally confiscated homes during the pendency of the bankruptcy proceedings.

5. RESIDENTIAL FUNDING COMPANY, LLC (hereinafter "RFC") is a Delaware limited liability company and is a Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings which breached a Home Affordable Loan Modification Program (HAMP) Agreement through the conduct of its named attorneys herein, ordered  criminal trespass and

damage to her home, seized her personal property on an ex parte order and persists in attempting to sell her home taken upon forged documents in these proceedings.  It used a post office box located in Bloomington, Minnesota for its interstate fraud operation.  It is Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings.

6.   RESIDENTIAL ASSET SECURITIES CORPORATION (hereinafter "RASC") is a Delaware corporation and is a Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings.

7.   RFC TRUST 03 Loan Pool Number RASC2002KSSCONF (hereinafter "THE TRUST") purported to be a pool of mortgage loans upon which securities were purportedly issued in violation of the sec. 10(b) of the Securities Exchange Act of 1934.

8.   GMAC-RFC HOLDING COMPANY, LLC, (hereinafter "GMAC-RFC") is  a Delaware limited liability company and is a Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings.

9.   RESIDENTIAL CAPITAL, LLC (hereinafter "RESCAP") is a Delaware limited liability company, owned by GMAC MORTGAGE, LLC, a Delaware limited liability company which holds 99% interest both of which are Debtors in these consolidated bankruptcy proceedings.

10.   RESCAP's  primary business location is at One Meridian Crossing, Suite 100, Minneapolis, Minnesota and it uses a post office box located in Bloomington, Minnesota  for its interstate fraud operation.

11.   GMAC MORTGAGE, LLC, (hereinafter "GMAC")  is Delaware limited liability company and is a wholly owned subsidiary of GMAC MORTGAGE GROUP and is a Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings.

12.   HOMECOMINGS FINANCIAL, LLC is a Delaware limited liability company and is, upon information and belief, a wholly owned subsidiary of GMAC  MORTGAGE GROUP, LLC, a Delaware corporation, which was absorbed by GMAC MORTGAGE, LLC in 2008 received Plaintiff's payments on her loan and charged her excessive fees and costs, refused her payments, forced her into a first foreclosure fraudulently commenced in the name of Mortgage Electronic Registration Systems, Inc.,  by refusing her payments, entered into a bad faith settlement agreement with her, ordered  criminal trespass and damage to her home.  It used a post office box located in Bloomington, Minnesota for its interstate fraud operation.  It is Debtor in the RESCAP Debtors' consolidated bankruptcy proceedings.

13.   GMAC  MORTGAGE GROUP, LLC (hereinafter "GMAC GROUP") is a Delaware limited liablity company and is wholly owned subsidiary of ALLY FINANCIAL, INC., a Delaware corporation, and is a Debtor in the RESCAP Debtors' consolidated bankruptcy

proceedings.

14.  ALLY FINANCIAL, INC. is a Delaware corporation, which used a post office box located in Bloomington, Minnesota  for its interstate fraud operations, more than 50% of the stock of which is owned by the United States of America and which placed its subsidiaries into the RESCAP Debtors' bankruptcy proceedings for the primary purpose of attempting to absolve itself of its own liability for its control and direction of the racketeering Enterprise which used mail fraud and wire fraud to confiscate homes based on forged documents, perjured affidavits and false claims in bankruptcy courts, which it admitted by entering into the Consent Judgment in the National Mortgage Settlement.

15.  GMAC FINANCIAL SERVICES (hereinafter "GMAC-FS") was an international private equities group in partnership with CEREBUS CAPITAL MANAGMENT, LP, a private equities group before it received Troubled Asset Relief Program (TARP) funds by being converted into a U.S. Bank holding company of the Utah state-chartered bank, now known as Ally Bank.  It has business locations in the U.S., Europe, Asia and the Middle East.  Its primary business location for U.S. operations  is in  New York, New York.

16.  GMAC-FS and its partner, CERBERUS CAPITAL MANAGEMENT, LP (hereinafter "CERBERUS") defrauded the United States of America purportedly to prevent General Motors from failing, when, in fact, it took over 12 Billion Dollars of TARP funds based upon its false claim of losses on mortgage-backed securities, which had been sold to private investors and the Federal National Mortgage Association (Fannie Mae) and the Federal National Mortgage Corporation (Freddie Mac) which are government sponsored entities (GSEs) now under the conservatorship of the Federal Housing Finance Authority (FHFA.)

17.  GMAC-FS adopted the name of ALLY FINANCIAL, INC. (AFI) in 2010 when it took Troubled Asset Relief Funds (TARP) in order to capitalize a bank holding company with taxpayer funds as part of the U.S. Treasury-supported General Motors (GM) bankruptcy reorganization on the basis of losses on mortgages which were not owned by its subsidiaries and had already been sold to private pension funds and individuals and GSEs.

18.  AFI and its partner CERBERUS (now a shareholder in AFI)  have engineered the bankruptcy proceedings of the RESCAP Debtors to conceal the facts that they have taken TARP funds based upon losses in value on the mortgage backed securities (MBS) which were not owned by GMAC-FS and CERBERUS.

19.  The TARP funds have been used to offset losses which were not incurred by AFI and CERBERUS and AFI directed the fraudulent foreclosure of hundreds of thousands of U.S. homes through its subsidiaries for the false claim of debt not owed to them and for which mortgage notes and assignments of mortgages were directed to be prepared by the employees of their wholly owned subsidiaries, the RESCAP Debtors, fraudulently prosecuted by private attorneys hired by the RESCAP Debtors in the 23 judicial foreclosure states of this nation and by forged

documents purporting to authorize the sales of homes in the nonjudicial foreclosure states.

20.   In the underlying bankruptcy case, the RESCAP Debtors now seek to sell real estate which has been confiscated on forged documents and false claims of standing in order to repay the investors in the MBS securities frauds on them for which GMAC-FS and CERBERUS obtained TARP funds in order to create AFI, in which CERBERUS continues as a shareholder.

21.   The RESCAP Debtors have been directed by AFI to sell the illegally confiscated real estate consisting of thousands of homes by AFI and its partner CERBERUS in an attempt to absolve AFI and CERBERUS of liability for damages to the defrauded investors in the MBS securities frauds and for damages claims by homeowners for the unlawful confiscation of their homes, so that the obligations of AFI for the securities fraud may be paid by the value of illegally confiscated homes and not by the TARP funds which were respresented to the US Treasury as being necessary to compensate the investors for their losses from the AFI/RESCAP frauds.

22.   Instead of using the TARP funds to pay the defrauded MBS investors, AFI took and has retained the TARP funds for its own capitalization as a bank holding company. It is attempting  to "ring-fence" the investors' losses from the MBS fraud it engineered,  as GMAC-FS in partnership with CERBERUS,  by transferring the liability for MBS fraud to its wholly-owned subsidiaries, the RESCAP Debtors, and denying the MBS investors the TARP compensation which AFI has fraudulently retained.

23.   AFI and CERBERUS are the top of the food chain of the GMAC RACKETEERING ENTERPRISE as it has operated through many subsidiaries in the mortgage market since at least 2002.

24.   MICHAEL A. CARPENTER, is the CEO of AFI, who was specifically put on notice of the so-called "robo-signing" frauds (more accurately characterized as forgeries) being committed at GMAC, by Florida Assistant Attorney General Bill McCollum, by letter directed to him on October 12, 2010.

24.   MICHAEL A. CARPENTER (hereinafter "CARPENTER") is joined herein for intentionally allowing the forged documents created by GMAC to continue to be used to confiscate homes throughout the nation after being formally put on notice of the crimes by the McCollum letter.

25.   CERBERUS CAPITAL MANAGMENT, LP (hereinafter "CERBERUS"), a Delaware limited partnership of which Stephen A. Feinberg is the CEO.  CERBERUS is a private equities group, in partnership with GMAC-FS is a private equities group which defrauded the U.S. Treasury with its partner GMAC-FS  by claiming own an interest in General Motors but was actually when GMAC-FS was far more substantially invested in mortgage-backed securities than in automobile financing.   CERBERUS has investments in the U.S., Europe, Asia and the Middle East.  Its primary business location for U.S. operations is in New York, New York.  Its

CEO is Stephen A. Feinberg, who will be served with the Summons and Complaint by personal or substituted service on Stephen A. Feinberg at CEREBUS offices located at 299 Park Ave., New York, New York 10171.

26.    STEPHEN A. FEINBERG (hereinafter "FEINBERG") is joined herein for intentionally putting AEGIS in bankruptcy proceedings in order to conceal CERBERUS' use of its subsidiary loan originator to obtain loans for the purpose of securitization in order to defraud homeowners, who thought they were obtaining loans from AEGIS, and to defraud MBS investors, who thought they were purchasing mortgage-backed securities in trusts such as RFC TRUST 03 Loan Pool Number RASC2002KSSCONF, when, in fact, he knew that the loan documents were never delivered to the trustees of the trusts.

27. CERBERUS and FEINBERG conspired with AFI and CARPENTER to obtain and retain TARP through the device of recreating the on-shore business of GMAC-FS into a bank holding company to receive the TARP funds, falsely allocating the losses they engineered and directed to the RESCAP Debtors to "ring-fence" the losses engineered by them in order to retain the TARP funds in AFI rather than pay those funds to the defrauded MBS investors who purchased certificates backed by nothing, and directing the liquidation of homes confiscated by forged documents to repay the MBS investors by attempting to discharge their fraud liabilities to the homeowners in these proceedings.

28.    CERBERUS owns AEGIS MORTGAGE CORPORATION (AEGIS) which is in Chapter 11 Bankruptcy Proceedings in the United States Bankruptcy Court for the District of Delaware in Case No. 07-11119-BLS filed on August 13, 2007.

29.    CERBERUS and FEINBERG fraudulently arranged the AEGIS bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware and arrogated to CERBERUS the status of a AEGIS' largest creditor through another subsidiary, without disclosing CERBERUS' ownership interest in AEGIS, in order to gain control over the mortgage loan assets which had never been delivered to the securitization trusts.

30.    The parties Defendant identified herein have all participated in what will be referred to collectively, from time to time,  as the GMAC RACKETEERING ENTERPRISE, or the RACKETEERING ENTERPRISE,  conspired to produced forged documents in order to confiscate Plaintiff's home and those of  thousands of other homeowners, to continue litigation against thousands of other homeowners upon forged documents, with the attendant damages to each homeowner whose home have been and are subjected to foreclosure claims based on forged documents by sale to purported holders in due course, without notice of the homeowners' claims now sought to be extinguished by this bankruptcy proceeding.

31.    The underlying bankruptcy case is the greatest bankruptcy fraud ever committed in the history of United States bankruptcy law and will become a template for future bankruptcy cases in which damages owed to homeowners who are victims of the Bank of America-

Countrywide, JPMorgan Chase-Washington Mutual, Wells Fargo-Wachovia, One West Bank-Indymac/MERS/LPS, for fraudulent foreclosures upon forged documents may be sought to be extinguished, if this RACKETEERING ENTERPRISE is not fully exposed and held accountable.

32.   AEGIS MORTGAGE CORPORATION (hereinafter "AEGIS") is a Delaware Corporation which has been in Chapter 11 Reorganization Proceedings in the United States Bankruptcy Court for the District of Delaware Case No. 07-11119-BLS since August 13, 2007. (Exhibit A.)

33.   AEGIS is merely an alter-ego for CERBERUS which pretended to be the lender of mortgage funds but only used funds obtained from securities fraud on MBS investors.

34.   CERBERUS is not protected by the automatic stay in AEGIS' bankruptcy proceedings.

35.   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (hereinafter "MERS") is a Delaware Corporation which was created for the purpose of defrauding homeowners as to the identity of the holders of promissory notes and mortgages, courts (as to the real parties in interest in mortgage foreclosures, and local municipalities in avoiding recording fees on mortgage assignments in the sum of billions of dollars nationwide.

36.   MERSCORP HOLDINGS, INC. (MERSCORP) is a Delaware corporation and the parent company of MERS, which controls and enables the forged mortgage assignment element of the RACKETEERING ENTERPRISE.

37.   The GMAC RACKETEERING ENTERPRISE used the MERS data base to defraud Plaintiff, the Wisconsin Courts and the Dane County Register of Deeds and homeowners, courts, and deed registries throughout the nation.

38.   LENDER PROCESSING SERVICES, INC. (LPS) is a Delaware corporation which provided the RESCAP Debtors with imaged copies of the mortgage notes for reproduction as forgeries at the GMAC headquarters in Fort Washington, Pennsylvania and the RFC headquarters in Bloomington, Minnesota.

39.   The GMAC RACKETEERING ENTERPRISE used the LPS platform to access images of loan documents, which were never delivered to the securitization trusts, to create false evidence of ownership of the mortgage notes by creating forged copies of the notes, in order to confiscate homes for debt not owed to it.

40.   MERS is a wholly owned subsidiary of MERSCORP HOLDINGS, INC. and receives income entirely from its illegal operation by which anyone paying $25.00 to MERS could become an "officer" of MERS and commit forgery to defraud homeowners and courts as to the identity of the real party in interest in receiving payments for mortgage loans.

41.   Under the cover of MERS, the MBS fraud on the investors and the illegal confiscation of millions of homes throughout the nation were concealed by MERS members, whose employees falsely represented that they were officers of MERS, when they were documents processors with exaggerated titles in the employ of loan servicers.

42. GRAY & ASSOCIATES, LLP, (hereinafter "FORECLOSURE MILL #1) is a Wisconsin professional limited liability association located in the metropolitan area of Milwaukee, Wisconsin and engages in a type of practice of law which has become known in commercial parlance as a foreclosure mill.  GRAY & ASSOCIATES, LLP will, from time to time herein, be referred to as FORECLOSURE MILL #1 and is part of the GMAC RACKETEERING ENTERPRISE because it directly engaged in the racketeering activities.  It will be served with process upon its registered agent, Duncan C. Delhey at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

43.   GRAY & ASSOCIATES, LLP is being compensated to continue to foreclose on Wisconsin homeowners by court order in the underlying bankruptcy case.

44.  DUNCAN C. DELHEY, is a member of GRAY & ASSOCIATES, LLP and contributed to the MERS Foreclosure manual directing Wisconsin foreclosure proceedings to be commenced in the name of MERS.

45.  JAY J.  PITNER, (hereinafter "PITNER")  a member of GRAY & ASSOCIATES, LLP and is an adult resident of the State of Wisconsin.  He will be served with process at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

46.  MICHAEL M. RILEY, (hereinafter "RILEY") is a  member or associate of Foreclosure Mill #1 and is an adult resident of the State of Wisconsin. He will be served  with process at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

47.  RILEY and FORECLOSURE MILL #1 commenced a fraudulent foreclosure action against Plaintiff in the name of MERS in 2003, which was fraudulently settled in the name of MERS.

51.  WILLIAM N. FOSHAG (hereinafter "FOSHAG") is an associate with GRAY & ASSOCIATES, LLP and is an adult resident of the State of Wisconsin.  He will be served with process at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

52. FOSHAG  refused to accept Plaintiff's payments into FORECLOSURE MILL #1's Attorney Trust Account pending resolution of the dispute over the settlement agreement, thereby creating the appearance of Plaintiff defaulting on the settlement agreement, whereas the settlement agreement was a fraud ab initio.

53. FOSHAG appeared in Wisconsin state court on behalf of FORECLOSURE MILL #1

9

representing MERS to oppose the rescission of the fraudulently procured settlement agreement of the 2003 foreclosure case in furtherance of the GMAC RACKETEERING ENTERPRISE.

54.  PITNER, of  FORECLOSURE MILL #1, created the fraudulent assignment of mortgage in order to commence a second foreclosure proceeding against the Plaintiff as is plainly evident by the fraudulent assignment (Exhibit B) itself.   The mortgage assignment states: "Document Prepared by JAY PITNER/GRAY & ASSOCIATES, L.L.P., was filed with the Dane County, Wisconsin Register of Deeds on February 23, 2009 and was returned by mail to the Defendant FORECLOSURE MILL #1 upon being publicly recorded in February, 2009.

55.  On or about March 2, 2009,  PITNER commenced a foreclosure proceeding against the Plaintiff in the Dane County Circuit Court, in Madison, Wisconsin by mailing a copy of the forged mortgage assignment attached to the Complaint, as well as the copy of image of the mortgage note transmitted to his office by wire from the LPS platform and fraudulently claimed that RFC had standing to obtain the equitable remedy of foreclose on the Plaintiff's home based on forged documents.

56.  BASS & MOGLOWSKY, S.C. is a Wisconsin professional corporation, located in the Milwaukee, Wisconsin and engages in a type of practice of law which has become known in commercial parlance as a foreclosure mill.  BASS & MOGLOWSKY, S.C. will, from time to time herein, be referred to as FORECLOSURE MILL #2.  The registered agent for service of process Steven W. Moglowsky at 501 West Northshore Drive, Suite 300, Milwaukee, Wisconsin 53217 and Steven W. Moglowsky will be served at that address.

56.  ARTHUR M.  MOGLOWSKY (hereinafter "MOGLOWSKY")  is a shareholder of BASS & MOGLOWKSY, S.C. and is an adult resident of the State of Wisconsin.  He will be served with process at 501 West Northshore Drive,  Suite 300, Milwaukee, Wisconsin 53217.

57.  MOGLOWSKY and FORECLOSURE MILL #2 became co-counsel with FORECLOSURE MILL #1 in furtherance of the GMAC RACKETEERING ENTERPRISE.

58.  MOGLOWSKY knew that AEGIS had filed bankruptcy but proceeded to commit fraud on Plaintiff and the Wisconsin state court,  arguing that the assignment of mortgage purportedly from MERS but actually from GMAC employees was a valid assignment in order to conceal the fact that MERS had no authority to authorize the execution of a mortgage assignment to a stranger to title executed by employees of the transferees' parent company (assignee to assignee void assignment)  from the state foreclosure court and Plaintiff.

59.  DAVID M. POTTEIGER, (hereinafter "POTTEIGER") is an associate with BASS & MOGLOWSKY, S.C. and is an adult resident of the State of Wisconsin.  He will be served, personally or by substitution of service, at 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217.

60.   PENNY M. GENTGES (hereinafter "GENTGES")  is a shareholder of BASS & MOGLOWSKY, S.C.  She will be served, personally or by substitution of service, at 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217.

61.  MANISH VERMA (hereinafter "VERMA") is an employee of GMAC MORTGAGE, LLC who signed an Affidavit in Support of Summary Judgment prepared by POTTEIGER who filed it in the GMAC RACKETEERING ENTERPRISE's second foreclosure lawsuit against the Plaintiff in furtherance of the frauds.

62.  VERMA is an adult resident of the State of Pennsylvania and  will be served with process, personally or by substitution of service at GMAC Mortgage, 1100 Virginia Drive, Fort Washington, Pennsylvania.   His home address is 42 Lenape Drive, Sellersville, Pennsylvania 18960.

63.   Under the MERS scheme, employees of loan services assign MERS nominated mortgages from MERS to their employers, without the authority of the original lender for which MERS was nominated to be the mortgagee of record.

64.   The assignments of mortgages on behalf of MERS are executed by employees of the loan servicers to their employers and, as such, are assignee-to-assignee assignments (a legal impossibility) enabled by MERS to conceal their identity as employees of the assignee by making it fraudulently appear that MERS assigned the mortgage for the original lender, would have been the assignor, but frequently no longer exist or no longer have a transferrable interest in the mortgage, having long since sold the beneficial interest in the loan obligation to securitization trusts or GSEs or have filed for bankruptcy, as in the case of AEGIS.

65.   The original mortgage notes were scanned into computers and are never delivered to the securitization trusts and the GSEs, which failed delivery was transacted by electronic transmission of their computer image only and not by actual surrender of possession of the original mortgage notes to the purchaser of the loans.

66.   The electronic images of the mortgage notes are generally available in a computer data base and accessible through servers owned by LENDER PROCESSING SERVICES, INC.

67.   LPS provides the platform by which servicers are able to access the central data base of all documents which were scanned into the LPS system upon loan origination and  LPS explains the platform it offers to loan servicers (in its own words: "the industry's leading loan-servicing platform") is used to "service approximately 50 percent of all U.S. mortgages by dollar volume" and admits:

These integrated solutions support origination, servicing, portfolio retention and default servicing. LPS' servicing solutions include MSP, the industry's leading loan-servicing platform, which is used to service approximately 50 percent of all U.S. mortgages by

11

dollar volume. The company also provides proprietary data and analytics for the
mortgage, real estate and capital markets industries.

Source:
http://www.ibtimes.com/press-release/20120904/lender-processing-services-inc-present-barclays-global-f
inancial-services

68.    LPS is the mechanism whereby electronic copies of the mortgage notes are falsely
created to be produced as real and used in court proceedings to confiscate homes based upon
false claims of standing of loan servicers to proceed on what are merely computer images of
original mortgage notes in order to foreclose on real property using forged mortgage assignments
executed by their employees who falsely claim to be officers of MERS.

69.    The MERS/LPS scheme is the core mechanism whereby the GMAC
RACKETEERING ENTERPRISE illegally seized homes which the Debtors are now liquidating
in order to pay the MBS investors with the proceeds of the liquidation rather than the TARP
funds, credit default swaps, mortgage insurance and government guarantees provided by the
GSEs so that AFI/CERBERUS can retain the TARP funds and other payments which were
intended to indemnify the victims of their frauds.

70.    AEGIS Mortgage Corporation, which had originated Plaintiff's mortgage loan,
provided  LPS with the original documents and those documents were scanned into the LPS data
base.

71.    When it was decided that RFC (a party with which the Plaintiff had no prior contact)
would attempt to confiscate her home, a copy of her mortgage note was printed from the LPS
data base and GMAC employees Defendants Stephan and Verma falsely executed an assignment
of mortgage from MERS to RFC, its subsidiary, which had been prepared by Defendant PITNER
of the Defendant law firm GRAY & ASSOCIATES, LP.

72.    In reality, MERS is merely a computer data base, which loaned no money on any
mortgage loan, holds no mortgage notes, services no loans and claims only to be the nominee for
the "lender" to hold bare legal title on mortgage interests on behalf of the "lender" and had no
lawful authority from the bankrupt AEGIS to assign Plaintiff's mortgage without an order of the
Delaware bankruptcy court.

73.    AEGIS participated in the GMAC RACKETEERING ENTERPRISE as an alter ego
of CERBERUS and AEGIS purported to be the original lender to Plaintiff in order to procure
Plaintiff's promissory note payable to AEGIS and created MERS as its nominee for Plaintiff's
mortgage.  MERS was formed for the purposes described at paragraph 35., above.

74.    PITNER prepared and recorded a fraudulent assignment of mortgage to RFC,
executed by the now-famous robo-signer, JEFFREY STEPHAN and his trainer, KENNETH
URGWUADU, both of whom were GMAC.Mortgage, LLC employees and both of whom

fraudulently signed the mortgage assignment on behalf of MERS as mortgagee of record for
AEGIS on January 6, 2010.  (See Attached Exhibit B)

75.  The purpose of the fraudulent assignment of mortgage, as is the practice of the
GMAC RACKETEERING ENTERPRISE in thousands of foreclosure actions commenced
throughout the U.S., is deceive and defraud the homeowner, homeowner's legal counsel, if any,
the courts, the Registers of Deeds and the public by fabricating a secured interest in homes where
the GMAC RACKETEERING ENTERPRISE knows that it does not have lawful assignments of
mortgages.

76.  PITNER created the assignment of mortgage purporting to be assigned from MERS
on behalf of AEGIS to RFC specifically to commence foreclosure proceedings against the
Plaintiff who knew that MERS did not have standing to foreclose against her home.  In so doing
he was a direct participant in the GMAC RACKETEERING ENTERPRISE.

77.  PITNER knew or should have known that AEGIS was then and there in bankruptcy
and could not have lawfully transferred any interest to RFC without approval of the Delaware
Bankruptcy Court.

78.  PITNER should have known that MERS did not have the rights to assign any greater
interest than it had as a mere nominee of AEGIS, which was in bankruptcy proceedings and
could not assign any interests it held in assets, but made it to appear that AEGIS authorized
MERS to assign the Plaintiff's mortgage to RFC, LLC by creating a fraudulent assignment of the
mortgage from MERS (a mere nominee) to RFC, LLC, through the signatures of JEFFREY
STEPHAN and KENNETH URGWAUDU, as "Vice President" and "Assistant Secretary" of
MERS respectively .

79.  PITNER knew that JEFFREY STEPHAN and KENNETH URGWAUDU  were not
in the employ of MERS and were not "Vice President" an "Assistant Secretary" of MERS
respectively because they were employees of GMAC Mortgage, LLC and worked at the office of
GMAC Mortgage, 1100 Virginia Drive, Fort Washington, Pennsylvania, whereas MERS is
located in Reston, Virginia.

80.  FOSHAG  refused to accept Plaintiff's payments to FORECLOSURE MILL #1's
Attorney Trust Account pending resolution of the dispute over the settlement agreement, thereby
creating the appearance of Plaintiff defaulting on the settlement agreement, which was a fraud ab
initio because it settled the 2003 case fraudulently commenced by MERS.

81.  PITNER, of  FORECLOSURE MILL #1, created the fraudulent assignment of
mortgage in order to commence a second foreclosure proceeding against the Plaintiff as is plainly
evident by the fraudulent assignment (Exhibit B) itself.  It states Document Prepared by JAY
PITNER/GRAY & ASSOCIATES, L.L.P.

82.   It is clear from the face of Exhibit B that the fraudulent assignment of a bankrupt's party's interest was barred by the automatic stay.

83.   It was eventually discovered by Plaintiff in late September, 2010 that the assignment (Exhibit B) was fraudulently executed by GMAC employees and was not an unlawful assignment of the bankrupt AEGIS' asset.

84.   It is an essential element of  of the GMAC RACKETEERING ENTERPRISE's pattern of conduct to deceive and defraud homeowners, courts and the courts and to conceal and obfuscate the identities of the owners of mortgage instruments.

85.   The concealment and obfuscation includes a plan to defraud homeowners and courts using the concept of "holder in due course" to pretend that the successive imaginary mortgagees paid market value for the mortgage interest and take the interest without liability for claims against prior mortgagees.

86.   As will be demonstrated below, the "holder in due course" fraud is created merely by using rubber stamps to create the impression that the note and mortgage have been transferred "without recourse" when in fact, in Plaintiff's case and thousands of other cases, the mortgage interests were placed into trusts consisting of mortgage backed securities and recreated as collateralized debt obligations and were not otherwise transferred to "holders in due course."

87.   The fraudulent document passed off as the assignment of Plaintiff's mortgage was executed by a Pennsylvania notary.  MERS is located in Reston, Virginia, but this fact was concealed from Plaintiff because the face of the assignment states that JEFFREY STEPHAN was "Vice President" of the assignor MERS signing on behalf of AEGIS and KENNETH URGWUADU held himself out as "Assistant Secretary" of MERS signing on behalf of AEGIS.

88.   The Bradbury deposition (Exhibit C-1)  refers to an earlier deposition taken in the Florida state court foreclosure action entitled GMAC v. Neu, et al.  That deposition, taken on December 10, 2009  is an admission by an employee of the GMAC RACKETEERING ENTERPRISE that STEPHAN signed as Vice-President or Assistant Secretary of MERS even though he was not associated in any way with MERS.  The attached portion of that deposition (Exhibit C-2) plainly states this aspect of the GMAC RACKETEERING ENTERPRISE and conclusively proves that Exhibit B, which was submitted to the Dane County Circuit Court, the Dane County Register of Deeds and the Plaintiff was and is a fraudulent document created for the the continuing GMAC RACKETEERING ENTERPRISE of committing fraud on Plaintiff, the courts, the Register of Deeds and the public.

89.   The Bradbury and Neu depositions conclusively demonstrate that the GMAC RACKETEERING ENTERPRISE committed thousands of identical frauds throughout the nation for the purpose of taking homes in foreclosure using fraudulently documents.

14

90.   The Bradbury robo-signing deposition became national news in September, 2010.

91.   Plaintiff herself had been denied discovery by deposition in the second foreclosure case by an incomprehensible order of the state court judge which stayed **all** discovery because he was "too busy" to rule on the GMAC RACKETEERING ENTERPRISEs' Motion to Quash Subpoenas Duces Tecum.

92.   Therefore, Plaintiff could not have discovered that the assignment was fraudulent until the deposition of STEPHAN taken by Attorney Thomas Cox was released to the media in late September, 2010.

93.   Plaintiff immediately notified the lawyers at Foreclosure Mills #1 of the nationally-reported proof of the fraud being perpetrated against her and thousands of other homeowners. She notified them on September 27, 2010 and asked them to cease and desist from proceeding on the fraudulently procured Summary Judgment, in which the false and fraudulent assignment of mortgage was submitted with the Complaint.

94.   Nevertheless, FORECLOSURE MILL #1 and #2, which are a part of the GMAC RACKETEERING ENTERPRISE,  have taken no action to re-open and dismiss the fraudulently documented foreclosure proceedings against the Plaintiff and return her home to her and the Debtors in these proceedings have claimed to own Plaintiff's home as an asset of the RFC estate despite the fact that the foreclosure is on appeal to the Wisconsin Court of Appeals by upon denial of her motion to vacate the judgment procured based upon a forged copy of the mortgage note and the forged assignment of mortgage.

95.   In September, 2011, FORECLOSURE MILL #2 obtained an ex parte Writ of Assistance to seize Plaintiff's home and personal property consisting of 5000 pounds of confidential client files stored therein, along with appliances, bank records and sundries, while she was awaiting the lawful process of a Petition for Writ of Assistance required by Wis. Stats. sec. 815.63 to which she could respond.

96.   In the 2003 fraudulent foreclosure, RILEY settled the dispute by false promises on behalf of MERS, in September, 2004 knowing that MERS did not have the authority to settle the claim and he did so in furtherance of the racketeering conspiracy, using the US mail to transmit the fraudulently procured stipulation for voluntary dismissal, signed by an agent of HOMECOMINGS pretending to sign for MERS which was based settlement agreement to the Dane County Circuit Court.

97.   RILEY intentionally and in furtherance of the RACKETEERING ENTERPRISE deceived Plaintiff so that she would believe that he was also forwarding the settlement agreement to the Dane County Circuit Court or she would have handled the filing of the stipulation and agreement herself.

98.   In 2006, Plaintiff discovered that the settlement agreement had been breached and proposed to make her mortgage  payments into GRAY's Attorney Trust Account pending resolution of the dispute over the settlement agreement, which RILEY refused,  thereby creating the appearance of Plaintiff defaulting on the settlement agreement in furtherance of the RACKETEERING ENTERPRISE.

99.   Plaintiff sought relief from what she then believed was a breached settlement agreement in Dane County Circuit Court at the end of 2006, in which FOSHAG then appeared and argued against her motion for relief based upon the breach in furtherance of the RACKETEERING ENTERPRISE, which Plaintiff ultimately dismissed because RILEY told her that she had settled with the wrong party and she decided, upon the advice of counsel then appearing, to raise the breach of the settlement agreement defensively in the event of a second foreclosure action being commenced.

100.   After creating the forged documents in January or February, 2009, PITNER commenced the second action and attached a copy of her mortgage note "endorsed in blank" by AEGIS and the assignment of mortgage forged by GMAC employees consistent with the MERS fraud scheme, she moved to dismiss the second foreclosure brought by FORECLOSURE MILL #1. (See Exhibit D, the first version of the copy of her mortgage note.)

101.   New co-counsel for the RACKETEERING ENTERPRISE, MOGLOWSKY then argued to the Dane County Circuit Court that Plaintiff's mortgage note had been endorsed "in blank" in order to deceive the state court and Plaintiff when Plaintiff was questioning RFC's standing on what was ultimately discovered to be a forged mortgage assignment executed not by STEPHAN and URGWUADU, as officers of MERS, but as document forgery processors at GMAC.

102.   MOGLOWSKY  knew that the note was endorsed by AEGIS that the mortgage note was not the type of instrument which could be endorsed in blank and separated from the mortgage instrument because to do so would render the secured debt resulting from the issuance of the mortgage note and mortgage instrument to AEGIS to be unsecured debt in the hands of a third party.

103.   MOGLOWSKY made the "endorsed in blank" argument in furtherance of the GMAC racketeering conspiracy to mislead the court in order to complete the second attempted foreclosure on Plaintiff's home in furtherance of the RACKETEERING ENTERPRISE.

104.   On June 17, 2010, FORECLOSURE MILL #2 changed its legal position on contrary to the "endorsed in blank" argument of MOGLOWSKY, POTTEIGER used the U.S. mail to send Plaintiff a copy of the now-known-to-be forged,  attached Exhibit E (the second version of a copy of her mortgage note now conveniently specifically endorsed) in order to deceive Plaintiff into believing that RFC was secured in the home, in furtherance of the RACKETEERING ENTERPRISE.

102.    JUDY FABER was an employee of RFC in its Minnesota offices who was not an officer of the LLC but was a document preparation supervisor, who falsely executed documents as "Vice President" of the organization in order to defraud courts and homeowners and which conduct constitutes forgery under the criminal codes of both Minnesota and Wisconsin.

103.    FABER directed and controlled an essential part of the RACKETEERING ENTERPRISE by claiming the false authority as "Vice President" of RFC and signing or allowing mortgage documents to be forged in RFC's Minnesota offices.

103.    AMY NELSON was an employee of RFC in its Minnesota offices, who was never an officer of the organization, and who twice admitted to the Plaintiff in telephone interviews that she was never Assistant Vice President of RFC, Bank of New York Trust Company, N.A. or any other financial institution.  The use of her signature, which appears to be a stamp, purporting to have official authority is a forgery under the criminal codes of both Minnesota and Wisconsin.

104.    Despite an offer of immunity from suit by Plaintiff to AMY NELSON, Ms. Nelson refused to come forward to voluntarily testify to the circumstances under which the allonge was created and forged, how a stamp bearing her signature came to be created and used by the RACKETEERING ENTERPRISE in furtherance of its fraud.

105.    NELSON directed and controlled the continuing cover-up of the fraud by which her signature was used in the forgery scheme even after she left her employment at RFC.

106.    On the second version of the Plaintiff's mortgage note produced in the state court foreclosure proceedings (Exhibit E) there is an additional endorsement on the last page of the note executed by one Judy Faber as "Vice President" of Residential Funding Corporation, now RFC, and there is a copy of an allonge to the mortgage note purportedly specifically endorsed by one Amy Nelson as Assistant Vice President of "Bank of New York Trust Company as successor to JPMorgan Chase as Trustee [by] Residential Funding Company, LLC f/k/a Residential Funding Corporation, Attorney in Fact" both of which are forgeries.

107.    Exhibit E is the second version of the mortgage note and is badly reconstructed copy of the LPS scanned version of her original mortgage note which was intended to defraud the Plaintiff and the Court that the mortgage note was specifically endorsed in favor of  Residential Funding Corporation.

108.    Exhibit E takes the FABER's fraudulently created, suddenly appearing endorsement  to JP Morgan Chase Bank as Trustee (which is out of the chain of title) and then adds to a new level of fraud: a newly created allonge.

109.    Attached to the second promissory note (Exhibit E) is an allonge purportedly signed by Amy Nelson, fraudulently holding herself out as "Assistant Vice President of Bank of New York Trust Company as successor to JP Morgan Chase Bank, N.A. as Trustee and Residential

Funding Company, LLC f/k/a Residential Funding Corporation, Attorney in Fact."

110.   FABER, NELSON, STEPHAN, URGWUADU and VERMA were all employees of the GMAC RACKETEERING ENTERPRISE who controlled the execution of forged documents to further the its frauds described herein.

111.   The Defendant FORECLOSURE MILLS #1 and #2 and the named lawyers herein controlled and directed the frauds on Wisconsin courts.

112.   None of the endorsements on the Exhibit E (the forged promissory note) contain any dates or warranties of authority, nor is a power of attorney attached.

113.   Exhibit F plainly shows that the GMAC RACKETEERING ENTERPRISE had taken the mortgage given to AEGIS and given to MERS as mere nominee was to have been delivered into the "RFC Trust 03" soon after the fraudulent transaction between Plaintiff and AEGIS closed, but the original note was never delivered to the Trust and the mortgage was never assigned to it, thereby failing to back its supposed mortgage backed securities with anything.

114.   As further evidence of MERS complicity in the RACKETEERING ENTERPRISE and as evidence of scienter, Plaintiff's access to the computer registration on the MERS system was blocked shortly after she presented the MERS data (Exhibit F)  to the Dane County Circuit Court in connection with a renewed Motion to Dismiss the fraudulent foreclosure filed by Plaintiff on the basis of the forged mortgage note provided to her by POTTEIGER.

115.   Because FORECLOSURE MILL #1 had fraudulently joined Plaintiff's estranged husband, who had no legal interest in the her home–they each had their own homes and agreed to make no claim on the home of the other–in order to cause him to defend his lack of interest in the property, Plaintiff decided to protect him from the continuing litigation by filing Chapter 13 bankruptcy in order to call FORECLOSURE MILL #1's bluff by requiring them to lift the co-debtor stay if they wanted to continue to falsely contend that he was liable for the debt on her individual home.

116.   FORECLOSURE MILL #1 then honored the automatic stay consistent with its fraudulent position that he was a co-debtor, which he never was, and ultimately dismissed the fraudulent action against Plaintiff's estranged husband after forcing him to defend and her to defend him and forcing her into bankruptcy to stop the frivolous litigation against him.

115.   Once Plaintiff filed for bankruptcy relief,   GENTGES acted in furtherance of the GMAC RACKETEERING ENTERPRISE by moving to lift the automatic stay in Plaintiff's bankruptcy, knowing that RFC did not have a lawfully endorsed mortgage note nor a lawful assignment of the AEGIS mortgage of which MERS was the mere nominee.

116.   GENTGES caused a version of the forged note (Exhibit E) to be electronically filed

18

along with the forged mortgage assignment in RFC's Motion to Lift the Stay in Plaintiff's bankruptcy case in the Western District of Wisconsin in Case No. 01-09-16622 as false evidence of its standing to obtain relief from the stay as to Plaintiff individually (no effort was made to lift the co-debtor stay because the FORECLOSURE MILL lawyers had fraudulent joined her estranged husband in the proceedings for a claim of debt he did not owe.)

117.  As further evidence of scienter, GENTGES refused to file a claim in the name of RFC in Plaintiff's bankruptcy proceedings, knowing that to do so would constitute federal crime of bankruptcy fraud, although she should have known that her submission of the forged documents by wire into the bankruptcy court record was a predicate act of racketeering by wire fraud.

118.  JEFFREY STEPHAN (hereinafter "STEPHAN") is an employee of GMAC MORTGAGE, LLC controlled and directed the creation of thousands of forgeries at GMAC for the benefit of the RACKETEERING ENTERPRISE of which Plaintiff's mortgage assignment is but one example.

119.  In Plaintiff's specific fact situation, as in thousands of other cases, STEPHAN signed the assignment of mortgage in Plaintiff's case, as an officer of MERS and claimed to be Vice President of MERS when he signed the mortgage assignment in Plaintiff's case,  knowing that he was not an employee of MERS nor an officer thereof,  and, in claiming to hold that position, committed fraud in furtherance of the GMAC RACKETEERING ENTERPRISE.

120.   KENNETH URGWAUDU (hereinafter "URGWAUDU") is  a former employee of GMAC MORTGAGE, LLC who controlled and directed the mortgage assignment forgery element of the RACKETEERING ENTERPRISE by training STEPHAN in the document forgery practice at GMAC.

121.  In Plaintiff's specific fact situation, URGWAUDU falsely claimed to be Assistant Secretary of MERS, knowing that he was not an employee of MERS nor its Assistant Secretary and, in claiming to hold that position, committed fraud in furtherance of the GMAC RACKETEERING ENTERPRISE.

122.  The VERMA Affidavit introduced by POTTEIGER in the second foreclosure case against Plaintiff is perjurious in many respects, including the concocted amount of the Plaintiff's alleged indebtedness of which he claimed personal knowledge when he had no such knowledge, and  VERMA swore under oath that the forged second appearing mortgage note was a true and correct copy of the original mortgage note signed by the Plaintiff, when he knew it was a forgery.

123.   POTTEIGER prepared the perjurious Affidavit for VERMA's signature after telling Plaintiff that all he had to do to take her home was to prepare an Affidavit stating that the second version of the mortgage note was a true and correct copy of the original note and that she could not disprove the facts asserted in the Affidavit that POTTEIGER and VERMA conspired

19

to prepare in furtherance of the GMAC RACKETEERING ENTERPRISE.

120.  Plaintiff repeatedly sought the production of the original mortgage note, which was never produced and which she now knows was merely a computer image of the mortgage note which LPS had scanned into its platform and allowed to be accessed in order to be printed which is part of the service which LPS sold to the RACKETEERING ENTERPRISE in which it knowingly participated.

121.  The Defendants acted at all times in furtherance of the GMAC RACKETEERING ENTERPRISE.

122.  POTTEIGER, acting in conspiracy with VERMA,  prevented GMAC Mortgage, LLC from providing Plaintiff with a loan modification under the HAMP Program in furtherance of the GMAC RACKETEERING ENTERPRISE.

123.  POTTEIGER issued FORECLOSURE MILL #2's own trust account check to return Plaintiff's first payment under the HAMP modification offered to her by GMAC Mortgage, LLC in order to violate her rights to a litigation stay under HAMP.

124.  GENTGES falsely represented to the Wisconsin bankruptcy court that HAMP was a voluntary program, whereas all TARP funded entities promised to use all reasonable efforts to keep homeowners in their homes, AFI had received TARP funds and its subsidiaries had a duty to their investors, including the United States of America,  to mitigate their losses.

125.  Plaintiff was at all times ready, willing and able to participate in the HAMP program, pending  determination of whether or not the note and mortgage were lawfully endorsed and assigned, which they clearly were not, and also asked only that there be an accounting of the amount of indebtedness claimed by RFC, which was merely the servicer of the loan for the MBS investors.

126.  POTTEIGER's action in returning the Plaintiff's first HAMP program and canceling her HAMP process was undertaken in furtherance of the GMAC RACKETEERING ENTERPRISE in order to confiscate her home based upon forged documents.

127.  GRAY AND ASSOCIATES, LLP, PITNER, RILEY, FOSHAG, BASS & MOGLOWSKY, S.C., MOGLOWSKY, POTTEIGER and GENTGES are not entitled to qualified immunity from suit for their actions as the legal representatives of the GMAC RACKETEERING ENTERPRISE because there actions were fraudulent and lawyers enjoy no immunity from suit by the opposing party  for fraudulent conduct in legal proceedings.

129. On September 27, 2010, as soon as Plaintiff discovered that STEPHAN and URGWUADU were not officers of MERS, she immediately notified the lawyers at FORECLOSURE MILLS #1 AND  #2 of the nationally-reported proof of the fraud being

perpetrated against her and thousands of other homeowners.

130.  Plaintiff notified them of the false identity of STEPHAN and URGWUADU, who were not officers of MERS but were GMAC employees and asked them to cease and desist from proceeding on the fraudulently procured Summary Judgment, in which the false and fraudulent assignment of mortgage was submitted with the Complaint.

131.  The GMAC RACKETEERING ENTERPRISE continues to proceed to take Plaintiff's home and thousands of other homes on the basis of false, fraudulent and perjured documents, while making false and misleading statements to Plaintiff, the courts, the Congress, regulatory agencies and the United States Treasury.

132.  From the date AEGIS took Plaintiff's promissory note and mortgage on June 5, 2002 and nominated MERS as the register of Plaintiff's mortgage, the GMAC RACKETEERING ENTERPRISE intentionally and fraudulently concealed their unlawful conduct and the existence of their enterprise from the Plaintiff and intended to keep their unlawful activities secret from the Plaintiff, all homeowners affected by similar frauds, the courts and the public records.

133.  The GMAC RACKETEERING ENTERPRISE engaged in its fraudulent conduct which, by its nature, is inherently self-concealing and when Plaintiff would discover one layer of the fraudulent activity, the racketeering enterprise would create new fraudulent and perjured documents to continue the practice of fraudulent concealment of the enterprise in an effort to avoid detection.

134.  By virtue of the fraudulent concealment by the GMAC RACKETEERING ENTERPRISE, the date from which the statute of limitations on any claim arising from any part of the scheme to defraud did not commence until the fraud was discovered in sufficient detail to allow the proper pleading of the racketeering frauds.

135.  Additionally, each act of fraud has a statute of limitations of six (6) years from the date of discovery thereof.

136.  Plaintiff has discovered more of racketeering fraud scheme when the Bradbury deposition was made public (and referred to the Neu deposition) at the end of September, 2010. (Exhibits C-1 and C-2.)

137.  As evidence of scienter, the GMAC RACKETEERING ENTERPRISE sought a protective order from the Maine court in GMAC v. Bradbury, et al. to prevent the disclosure of the Bradbury deposition, which protective order was denied and sanctions awarded to Bradbury for the frauds.

138.  The GMAC RACKETEERING ENTERPRISE chose multiple names and changed

names of its various fictitious entities in furtherance of the racketeering enterprise to conceal their operations and through AFI fka GMAC-FS created various alter egos to confuse their investors and the homeowners from which they were taking funds on behalf of their investors which are all subsidiaries of what is now AFI.

139.   The RESCAP Debtors were directed and controlled by AFI and CERBERUS, through CARPENTER and FEINBERG to file these consolidated bankruptcy proceedings to attempt to avoid liability for their frauds on the investors and their crimes and frauds perpetrated against the homeowners.

140.   Plaintiff was accidentally  notified of the multiple racketeering fictitious entities which are involved in the GMAC RACKETEERING ENTERPRISE by a privacy rights notice mailed from the post office box in Bloomington, Minnesota and listing the Defendant fictitious entities and numerous other fictitious entities associated with the GMAC RACKETEERING ENTERPRISE on or about March 3, 2010.

141.   The disclosure described at paragraph 140., above, was insufficient to determine the relationship between the tentacles of the racketeering enterprise and Plaintiff was ultimately informed of the relationship of the aspect of the GMAC RACKETEERING ENTERPRISE responsible for the frauds being committed against her by the filing of a corporate disclosure form filed in the Seventh Circuit Court of Appeals by RFC and GENTGES in October, 2010.

142.   The disclosure form referred to in paragraph 141 is still incomplete, but did allow sufficient identification of the multiply concealed identities for Plaintiff to form this Complaint, along with information from her own records.

143.   As part of the GMAC RACKETEERING ENTERPRISE, Plaintiff's efforts to make payments to the real party entitled thereto were repeated refused by RILEY, FOSHAG, POTTEIGER and GENTGES for which misconduct the FORECLOSURE MILLS and their client, RFC, are liable as respondeat superior and the law of agency.

144.   As part of the GMAC RACKETEERING ENTERPRISE, false late fees, false and excessive property insurance payments, attorneys' fees for the racketeering enterprise, payment of real estate taxes in violation of the 2004 settlement agreement which Plaintiff sought to rescind for fraud, excessive interest, interest on the accumulating false charges were added to the Plaintiff's alleged indebtedness to the real party in interest which is still concealed by multiple frauds.

145.   As an additional part of the GMAC RACKETEERING ENTERPRISE, the Plaintiff's payments to the racketeering enterprise were never credited to the loan obligation claimed on behalf of a yet unknown party in interest, believed to be RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities which was  managed by RESIDENTIAL FUNDING COMPANY, LLC.

146.  As a further part of the GMAC RACKETEERING ENTERPRISE, RFC de-registered its securities to prevent the Securities Exchange Commission, the investors in the mortgage backed securities and the public from knowing the status of the fraudulently administered loans.

147.  The de-registration of the RFC securities took place after Moody's discovered commingling of funds by RFC in conflict with the investors in the investment trusts and is further evidence of the fraud scheme of the GMAC RACKETEERING ENTERPRISE.

148.   The GMAC RACKETEERING ENTERPRISE is a business plan using the MERS to conceal the identities of the real parties in interest and LPS to access images of loan documents in order to create the forgeries necessary to illegally confiscate homes and to liquidate them so that the AFI subsidiaries can pay the defrauded investors with the liquidation proceeds for their fraud losses and to enable AFI and its nongovernment shareholder, CERBERUS to retain TARP funds for its own capitalization.

149.   Plaintiff's case is merely one of thousands of cases in which the GMAC RACKETEERING ENTERPRISE used forged documents to illegally foreclose and to illegally proceed in judicial and nonjudicial foreclosure states in order to confiscate homes where they have no lawful standing to foreclose.

## FIRST CAUSE OF ACTION:
## RACKETEERING AGAINST ALL DEFENDANTS

150.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint and specifically pleads that this court has jurisdiction over these proceedings under the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. secs. 1961-1968.

151.  The facts set forth herein establish the GMAC RACKETEERING ENTERPRISE which creates false, fraudulent and perjured documents in order to defrauds homeowners, such as the Plaintiff, the Registers of Deed and the courts in order to fraudulently foreclosure on homes and to inflict injury and damages upon homeowners through a course of patten of conduct established for that purpose.

152.  More than two acts of fraud committed by mail fraud in violation of 18 U.S.C. sec, 1341 and wire fraud in violation of 18 U.S.C. sec. 1342 as part of the GMAC RACKETEERING ENTERPRISE have been committed in Plaintiff's case alone.

153.  Thousands of acts of fraud are established by the depositions attached hereto as Exhibit C-1 and C-2.

154.  In the course of its RACKETEERING ENTERPRISE, the Defendants RESCAP Debtors and the controlling and directing parent company, AFI and its largest nonpublic

shareholder CERBERUS,  have engaged in thousands of predicate acts of  mail fraud and wire
fraud over from at least 2002 through the present date by transmitting forged documents by mail
and wire in order to seize homes in which their investors have no secured interest due to the
misconduct of AFI and CERBERUS briefly described in this Complaint.

155.  Plaintiff is entitled to treble damages pursuant to 18 U.S.C. sec. 1964( c) and all
other relief available under 18 U.S.C. sec. 1961-1968.

156.  Because of the extent of the fraud in her own case, Plaintiff was required to take
time from other clients' cases to discover and disclose the frauds complained of herein and she
should be allowed her actual attorney's fees for time spent on her own case as further damages.

157.  Plaintiff has incurred court costs and litigation expenses over the ten (10) years that
she has been subjected to the GMAC RACKETEERING ENTERPRISE.

158.  Plaintiff is also entitled to actual attorney's fees under the RICO Act because she is
an attorney and has commenced this case as a quasi-qui tam proceeding for the public benefit.

159.  Plaintiff is entitled to costs and disbursements in this action.


## SECOND CAUSE OF ACTION:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")
## AGAINST MERS, RFC, GMAC, FORECLOSURE MILLS #1 AND #2
## AND THEIR NAMED ATTORNEYS

152.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint
and specifically pleads that this court has jurisdiction over these proceedings under the FDCPA
at 15 U.S.C. 1692, et seq.

153.  Defendants MERS, RFC, GMAC and FORECLOSURE MILLS #1 and #2 and their
named attorneys are debt collectors  as defined by 15 U.S.C. sec. 1692a(6).

154.  Defendants filed false, deceptive, misleading and perjured documents in connection
with the collection of Plaintiff's alleged debt in violation of 15 U.S.C. sec. 1692e.

155.  Plaintiff suffered actual damages from the violations of the FDCPA and is also
entitled to statutory damages and reasonable attorney's fees in these quasi-qui tam proceedings
for the public benefit.


## THIRD CAUSE OF ACTION:
## COMPLAINT TO DETERMINE THESE CLAIMS NONDISCHARGEABLE FOR
## FRAUD AND THEFT [11 U.S.C. sec. 523(a)(2)]

24

**AS AGAINST THE RESCAP DEBTORS NAMED HEREIN**

156.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint and specifically pleads that this court has jurisdiction over these proceedings under 11 U.S.C. sec. 523(a)(2).

157.  Plaintiff's home was illegally taken by forged documents through the fraudulent conduct of the named RESCAP Debtors and her personal property was taken from her home without her authority and consent by its agents.

158.  The conduct described herein throughout the Complaint violates RICO, which is a federal crime, actionable by a private civil right of action at 18 U.S.C. sec. 1964 and damages arising therefrom are not dischargeable in bankruptcy.

**FOURTH CAUSE OF ACTION:**
**COMPLAINT TO DETERMINE THESE CLAIMS NONDISCHARGEABLE FOR**
**MALICIOUS INJURY [11 U.S.C. sec. 523(a)(6)]**
**AS TO THE NAMED RESCAP DEBTORS**

159.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint and specifically pleads that this court has jurisdiction over these proceedings under 11 U.S.C. sec. 523(a)(6).

160.  Plaintiff's home was illegally taken by forged documents through the fraudulent conduct of the named RESCAP Debtors and her personal property was taken from her home without her authority and consent by its agents with the intent to maliciously injure the Plaintiff's business and personal life for attempting to investigate the frauds being perpetrated by them.

161.  The conduct described herein throughout the Complaint violates RICO, which is a federal crime, actionable by a private civil right of action at 18 U.S.C. sec. 1964 and damages arising therefrom are not dischargeable in bankruptcy.

**FIFTH CAUSE OF ACTION:**
**COMPLAINT  FOR TURNOVER OF PLAINTIFF'S HOME AND THE PERSONAL**
**PROPERTY SEIZED FROM THE PREMISES WHICH ARE NOT ASSETS OF THE**
**ESTATE HAVING BEEN TAKEN BY FORGED DOCUMENTS**
**AND EX PARTE PROCESS PURSUANT TO 11 U.S.C. sec. 548**
**AS TO DEFENDANT RFC**

162.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint and specifically pleads that this court has jurisdiction over these proceedings under 11 U.S.C. sec. 548.

163.  RFC obtained a Sheriff's deed to Plaintiff's home by forgery and fraud.

164.  RFC had no standing to take Plaintiff's home because no legal rights can be founded upon forged documents.

165.  Plaintiff's home is not an asset of the estate of RFC because it was taken upon forged documents and the state court foreclosure is void.

166.  Plaintiff's home must be returned to her forthwith and the Sheriff's deed must be declared a nullity.

166.  Plaintiff's personal property which was stored at her home was illegally seized upon an ex parte Writ of Assistance, which is unconstitutionally void, upon a void judgment of foreclosure and Sheriff's sale based upon the void judgment is a nullity.

167.  Her personal property must be returned to her home as soon as she is again in possession of it.

## SIXTH CAUSE OF ACTION:
## DECLARATORY AND INJUNCTIVE RELIEF
## UNDER 28 U.S.C. SECS. 2201 AND 2202 UPON WITHDRAWAL OF THE REFERENCE AND PURSUANT TO11 U.S.C. SEC. 105.

168.  Plaintiff incorporates and re-alleges paragraphs 1. through 149. of the Complaint and specifically pleads that this court has jurisdiction to grant declaratory relief under 28 U.S.C. secs. 2201 and 2202 upon withdrawal of the reference and pursuant to11 U.S.C. sec. 105.

169.  Plaintiff seeks a declaratory judgment that the forged mortgage note and mortgage assignment by which her home was taken is void, that the foreclosure proceeding in state court is void and the Sheriff's deed is a nullity.

170.  Plaintiff seeks an injunction prohibiting the RESCAP Debtors and their agents from attempting to sell homes which they have taken by void foreclosure processes in these proceedings.

171.  Plaintiff seeks an injunction against MERS continuing to act as nominee for original "lenders" to effectuate any transfer not authorized by the original lender.

172.  Plaintiff seeks an injunction against LPS continuing to provide access to its platform when to do so results in the printing and manipulation of images of scanned notes to facilitate the creation of forged documents for the purpose of foreclosure.

173.  Appointing a special master to administer the punitive damages distribution as set forth in paragraphs K.-O. of the Requests for Relief herein.

## REQUESTS FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

A.  Awarding Plaintiff title to her home free and clear of the fraudulent claim of the GMAC RACKETEERING ENTERPRISE;

B.  Granting Plaintiff an injunction against the continuation of the GMAC RACKETEERING ENTERPRISE effort to take her home;

C.  Awarding Plaintiff a declaratory judgment that RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities managed by RESIDENTIAL FUNDING COMPANY, LLC is not entitled to any payment from Plaintiff because it did not lend her any money, but rather loaned money to RFC Trust 03 or, in the alternative, declaring that the loan pool is obviously unsecured.

D.  Awarding Plaintiff her actual damages for losses compensable for violation of FDCPA;

E.  Awarding Plaintiff treble damages for violations of RICO  for all of her losses, including but not limited to,  pain and suffering, loss of economic opportunity, loss of prospective economic opportunity, payment for attorney's fees for her own time as an attorney in defending against the GMAC RACKETEERING ENTERPRISES and extensive litigation costs incurred over a period of ten (10) years of the continuing defense against the GMAC RACKETEERING ENTERPRISE.

F.  Awarding Plaintiff statutory damages under FDCPA pursuant to 15 U.S.C. sec. 1692k starting one year before the commencement of this action in the United States District Court for the Western District of Wisconsin on November 30, 2010, still pending on her Motion for Reconsideration, which case must be transferred to this district for litigation of her claims because of the bankruptcy filings of the RESCAP Debtors.

G.  Awarding Plaintiff all costs of litigation against the GMAC RACKETEERING ENTERPRISE over the period of ten (10) years.

H. Awarding Plaintiff her attorneys' fees for any attorney whom she may hire to assist her in these proceedings under RICO and FDCPA and her own fees as an attorney for prosecuting this matter for a punitive damages award for the benefit of victims of the GMAC RACKETEERING ENTERPRISE.

I.  Ordering joint and several liability against each and all of the members of the GMAC

RACKETEERING ENTERPRISE, excluding the bankrupct AEGIS,  but limiting the liability of the Wisconsin Foreclosure Mills to Plaintiff's actual damages and her pro rata share of punitive damages.

J.  Awarding punitive damages  of $10,000,000,000.00 in order to fully deter the GMAC RACKETEERING ENTERPRISE from continuing its frauds throughout the nation and ordering that the punitive damages be paid from their cash reserves, exclusive of any federal bail out funding.

K.  Ordering that the first amount of the punitive damages award up to the amount of an amount to be determined to be a fair allocation of the punitive damages award to Plaintiff  and that the remaining balance of the up to $10,000,000,000.00 be paid to a Trust Fund to be administered for the benefit of all persons whose homes were taken by the GMAC RACKETEERING ENTERPRISE and to appoint a special master to administer the Trust Fund from which funds will  be distributed pro rata to the fraud victims on the basis of the fair market value of their homes at the time their homes were unlawfully taken by the GMAC RACKETEERING ENTERPRISE.

L.  Ordering that the balance of the punitive damages award, after Plaintiff's pro rata fair share, be  paid to the Trust Fund  be deposited in insured accounts in banks and credit unions in the State of Wisconsin, except that no Wisconsin bank which has received TARP funding and failed to comply with HAMP policies shall be entitled to receive any such deposit.

M.  Ordering the Trustee to provide public notice in the <u>Wall Street Journal</u> of the availability of the Trust Fund for compensation to victims of the GMAC RACKETEERING ENTERPRISE and to provide such other notice of the funds available for compensation as the Court may deem sufficient to provide adequate notice of the victims' rights to distributions from the Trust Fund.

N.  Ordering the appointed Trustee to make bi-annual reports to the Court until the funds are fully distributed.

O.  Ordering the remainder, if any, of the balance of the Trust Funds be paid to the Community Investment Credit Corporation, a Wisconsin corporation, for the purpose of improving the business economy in the State of Wisconsin up to the amount of $20,000,000.00 and any further remaining balance to be paid to non-profit legal assistance programs throughout the State of Wisconsin by the State Bar of Wisconsin, in its sole discretion.

P.  Finding Plaintiff's claims to be nondischargeable in the underlying bankruptcy proceeding for the reasons stated at Counts III and IV pursuant to 11 U.S.C. secs. 523(a)(2) and 523(a)(6).

Q.  Ordering the turnover of her home and personal property for the reasons stated at

28

Count V pursuant to 11 U.S.C. sec. 548.

R.  Entering the declaratory and injunctive relief requested at Count VI under 28 U.S.C. secs. 2201 and 2202 and 11 U.S.C. sec. 105.

S.  For such other relief as may be just and appropriate in these premises.

Dated at Minneapolis, Minnesota  this 8th  day of February, 2013.

*/s/ Wendy Alison Nora*
_____
Wendy Alison Nora, pro hac vice,
for herself and all homeowner victims of foreclosure based on forged documents
ACCESS LEGAL SERVICES
210 Second Street NE
Minneapolis, Minnesota 55413
(612) 333-4144
FAX (612) 885-2444
Wisconsin Attorney ID #1017043
Minnesota Attorney ID #0165896

### DECLARATION OF WENDY ALISON NORA

Wendy Alison Nora states, under penalty of perjury, that she has read the foregoing Complaint the facts  contained therein are true and correct, according to her personal knowledge to the best of her knowledge, information and belief and the documents attached hereto are true and correct copies of what they purport to be.

Dated at Minneapolis, Minnesota this 8th day of February, 2013.

*/s/Wendy Alison Nora*
Wendy Alison Nora

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial to all issues triable to by a jury.

### UNSWORN DECLARATION OF SERVICE

Wendy Alison Nora declares, under penalty of perjury, that the above-captioned document was filed with United States Bankruptcy Court for the Southern District of New York

29

by CM/ECF as an adversary proceeding in associated with the RESCAP bankruptcy proceedings in Case No. 12-12020 on February 8, 2013.

*/s/Wendy Alison Nora*
Wendy Alison Nora