1

MAINE DISTRICT COURT, DISTRICT NINE
DIVISION OF NORTHERN CUMBERLAND
-  -  -

FEDERAL NATIONAL               :
MORTGAGE ASSOCIATION      :  DOCKET NO.
                    Plaintiff   :  BRI-RE-09-65
                               :
       V.                      :
                               :
NICOLE M. BRADBURY        :
                Defendant:
       and                     :
GMAC MORTGAGE, LLC       :
d/b/a DITECH, LLC.COM     :
and BANK OF AMERICA, NA:
       Parties in Interest:
                    -  -  -

June 7, 2010

-  -  -

Oral deposition of JEFFREY D.
STEPHAN, taken pursuant to notice, was
held at the law offices of LUNDY FLITTER
BELDECOS & BERGER, P.C., 450 N. Narberth
Avenue, Narberth, Pennsylvania 19072,
commencing at 10:10 a.m., on the above
date, before Susan B. Berkowitz, a
Registered Professional Reporter and
Notary Public in the Commonwealth of
Pennsylvania.

-  -  -

Exhibit C-1

C-1-1

**2**

APPEARANCES:

BRIAN M. FLEISCHER, ESQUIRE
FLEISCHER, FLEISCHER & SUGLIA, P.C.
   Plaza 1000 at Main Street
   Suite 208
   Voorhees, New Jersey  08043
   (856) 489-8977
   bfleischer@fleischerlaw.com
   Counsel for GMAC

THOMAS A. COX, ESQUIRE
LAW OFFICES OF THOMAS A. COX
   P.O. Box 1315
   Portland, Maine 04104
   (207) 749-6671
   tac@gwi.net
   Counsel for Defendant,
   Nicole M. Bradbury

VIA TELEPHONE:
JULIA G. PITNEY, ESQUIRE
DRUMMOND & DRUMMOND
   One Monument Way
   Portland, Maine 04101
   (207) 774-0317
   JPitney@ddlaw.com
   Counsel for GMAC and Fannie Mae

**3**

     (Document marked Exhibit-1
for identification.)
   - - -
     (It is hereby stipulated and
agreed by and between counsel that
sealing, filing and certification
are waived; and that all
objections, except as to the form
of questions, be reserved until
the time of trial.)
   - - -
     JEFFREY D. STEPHAN, after
having been duly sworn, was
examined and testified as follows:
   - - -
     MS. PITNEY:  I would like to
put on the record that we
requested a stipulation, and
Attorney Cox has denied our
request for that stipulation.  And
that would be a stipulation that
this deposition transcript be used
for this case, FNMA versus
Bradbury, only.

**4**

            STEPHAN
     MR. COX:  Mr. Fleischer, we
understand that Julia Pitney
represents the plaintiff in this
case.  Who do you represent today?
     MR. FLEISCHER:  I believe
Ms. Pitney both represents Fannie
Mae and GMAC, and I am here on
GMAC's behalf.
     MR. COX:  GMAC is neither a
plaintiff nor defendant in this
case, so we may have some issues
around that, but we'll cross that
bridge when we get to it.
   - - -
           EXAMINATION
     - - -
BY MR. COX:
     Q.  Mr. Stephan, for the record,
would you state your full name, please?
     A.  Jeffrey Stephan.
     Q.  How old are you?
     A.  I am 41, in June.
     Q.  You live in Sellersville,
Pennsylvania?

**5**

            STEPHAN
     A.  That is correct.
     Q.  Have you had your deposition
taken previously?
     A.  In other cases, yes.
     Q.  How many other cases?
     A.  This will be my third time.
     Q.  What other cases were you
deposed in, to your recollection?
     A.  In what kind of cases?
     Q.  Well, can you remember the
names of the cases?
     A.  No, I don't.
     Q.  When is the last time that
you've had your deposition taken?
     A.  I would approximate two,
three months ago.
     Q.  Was that in Florida?
     A.  No.  That was in New Jersey.
     Q.  That would have been in
2010?
     A.  Yes.
     Q.  Then you were deposed in
Florida in December of 2009?
     A.  That is correct.

C-1-2

6

STEPHAN

1
2    Q.   When was the other
3    deposition, the third deposition?
4    A.   This one today is the third.
5    Q.   Have you testified in court
6    as a witness before?
7    A.   No.
8    Q.   Did you review any documents
9    to prepare for this deposition?
10   A.   Yes.
11   Q.   What documents did you
12   review?
13   A.   I looked at the deposition
14   that was sent to me.  And I went over the
15   Complaint with Brian.
16   THE WITNESS:  When was that,
17   Thursday, Wednesday?
18   MR. FLEISCHER:  You're
19   directed not to say anything with
20   regard to what we spoke about,
21   but, yes, you can answer to what
22   you looked at.
23   THE WITNESS:  Yes.
24   MS. PITNEY:  I'm sorry to
25   interrupt.  I'm just having a

7

STEPHAN

1
2    little difficulty hearing you.  Is
3    there any way to push the phone a
4    little closer to Mr. Stephan?
5    MR. FLEISCHER:  Okay.  And,
6    Julia, let me know during the
7    course if there's still a problem.
8    MS. PITNEY:  You were doing
9    fine, and then it got a little
10   fuzzy.
11   THE WITNESS:  I'll talk
12   louder.
13   MS. PITNEY:  Thank you.
14   BY MR. COX:
15   Q.   What deposition did you look
16   at?
17   A.   The deposition for this
18   case.
19   Q.   The Deposition Notice?
20   A.   Right, the Deposition
21   Notice.
22   Q.   It was not another
23   deposition transcript --
24   A.   No.
25   Q.   -- that you were referring

8

STEPHAN

1
2    to?
3    A.   No.
4    MR. FLEISCHER:  Let him
5    finish the question, and then
6    respond, because it makes it
7    cleaner for the transcript.
8    THE WITNESS:  Thank you.
9    BY MR. COX:
10   Q.   What is your educational
11   background?
12   A.   I have a four-year degree at
13   Penn State University in liberal arts.
14   Q.   When did you go to work for
15   GMAC?
16   A.   I began work at GMAC
17   September 30th of '04.
18   Q.   What was your work history,
19   in a summary form, before you went to
20   work for GMAC?
21   A.   I have done collections and
22   mortgage foreclosures for other
23   companies.
24   Q.   Who have you done mortgage
25   foreclosure work for?

9

STEPHAN

1
2    A.   ContiMortgage, Fairbanks
3    Capital, GMAC.
4    Q.   The first one, I'm not sure
5    about.  Is that Conti, C-O-N-T-E (sic)?
6    A.   C-O-N-T-I.
7    Q.   What period of time did you
8    work for ContiMortgage?
9    A.   I began there in '92.  I
10   believe I left there in '98.
11   Q.   What years, approximately,
12   did you work for Fairbanks Capital?
13   A.   '98 to '04.
14   Q.   You work in the GMAC
15   Mortgage office in Fort Washington,
16   Pennsylvania; is that correct?
17   A.   That is correct.
18   Q.   Approximately, how many
19   people work in that office?
20   A.   I can't estimate the number
21   of people.  I can say my department,
22   approximately 50 to 60 people.
23   Q.   What's the name of your
24   department?
25   A.   Foreclosures.    C-1-3

3  (Pages 6 to 9)

10

STEPHAN

1  Q.   When you began working for
2  GMAC Mortgage in 2004, what position did
3  you begin working in?
4  A.   I was a foreclosure
5  specialist.
6  Q.   What kinds of duties did
7  that involve?
8  A.   That involved the day-to-day
9  handling and servicing of a portfolio of
10  loans that fell into a foreclosure
11  category.
12  Q.   What kinds of duties did you
13  carry out with respect to those matters?
14  MS. PITNEY:  Object to form.
15  MR. COX:  You have to
16  answer.
17  MS. PITNEY:  You can answer
18  the question.
19  THE WITNESS:  The everyday
20  servicing of the file, from
21  contacting the attorney, supplying
22  an attorney who's handling a case
23  within my portfolio with any
24  information they may need, a copy

11

STEPHAN

1  of documents that may be needed
2  through a fax form or e-mail form,
3  the calculation of figures for
4  judgments, reporting sale results
5  at that time, and properly
6  conveying properties to the proper
7  departments for post sale action.
8  BY MR. COX:
9  Q.   How long did you hold the
10  position of foreclosure specialist?
11  A.   With GMAC, three years.
12  Q.   So you would have assumed a
13  new position sometime in 2007?
14  A.   Yes.
15  Q.   What position did you assume
16  in 2007?
17  A.   I became a team lead within
18  the foreclosure department.
19  Q.   What duties did you assume
20  as the team lead in the foreclosure
21  department?
22  A.   At that time, GMAC
23  segregated our department into teams, and
24  I was put into place as the supervisor or

12

STEPHAN

1  team lead for our bidding team, which
2  would be a team of individuals who
3  calculate the bids for sales.
4  Q.   Calculate the bids for sales
5  of mortgage --
6  A.   Foreclosure sales.
7  MR. FLEISCHER:  Again, let
8  him finish the question.
9  BY MR. COX:
10  Q.   Just so I can understand it,
11  your role in that position was to help
12  GMAC calculate what it was going to bid
13  at any given foreclosure sale?
14  A.   That would be correct.
15  Q.   The foreclosure
16  department -- is that what it's called?
17  A.   Yes.
18  Q.   That has units within it?
19  A.   Yes.
20  Q.   And when you were doing the
21  bidding work, what unit were you a part
22  of at that time?
23  A.   The bid team.
24  Q.   How long did you serve on

13

STEPHAN

1  the bid team?
2  A.   I'm going to estimate six
3  months to a year, at the most.
4  Q.   Does it sound roughly
5  correct that sometime in 2008, you
6  assumed a new position?
7  A.   Yes.
8  Q.   What was the next position
9  that you held after working on the bid
10  team?
11  A.   My present position, which
12  is the team lead of the document
13  execution team.
14  Q.   Is there also a service
15  transfer unit?
16  A.   Yes, there is.
17  Q.   Are you the team lead of
18  that as well?
19  A.   Yes, I am.  That falls into
20  the document execution team.
21  Q.   So I talk your language,
22  there's a foreclosure department?
23  A.   Yes.
24  Q.   And the subdivisions within

*C 1-4*

14

STEPHAN

2 that, do you call them teams or units?
3    A.   Teams.
4    Q.   So there's a foreclosure
5 department, and then within it are a
6 group of teams that do different
7 functions; is that correct?
8    A.   That is correct.
9    Q.   What does the document
10 execution team do?
11        MR. FLEISCHER:  Objection as
12 to form.
13        THE WITNESS:  Can you
14 rephrase that?
15 BY MR. COX:
16    Q.   What are the functions of
17 the document execution team?
18    A.   The functions of my document
19 execution team is, I have staff that
20 prints documents, from our computer
21 system, that are submitted from our
22 attorney network.  I have staff, also, on
23 that team who prepares the documents
24 which have already received figures from
25 our attorneys.  So there are completed

15

STEPHAN

2 documents.  They fill in the blanks, they
3 stamp names.  They ensure that all of the
4 notary lines are completed properly once
5 it's returned from the notary.  And that
6 staff also is in charge of making sure
7 they Federal Express the document back to
8 the designated attorney within our
9 network.
10    Q.   What does the service
11 transfer team do?
12    A.   The service transfer team
13 receives a list of loans from our
14 transfer management team, which is
15 located in Iowa.  The service transfer
16 team within foreclosure only handles
17 loans that fall into a bankruptcy or
18 foreclosure category.  They prepare files
19 or CDs, and transfer them to the new
20 servicer.  So they're loans that are
21 either acquired, or they're loans that
22 are being transferred to a new servicer
23 for service.
24    Q.   How many employees are on
25 the document execution team?

16

STEPHAN

2    A.   14.
3    Q.   Including yourself?
4    A.   No; including me, 15.
5    Q.   What training have you
6 received from GMAC to function in your
7 capacity as the team lead for the
8 document execution team?
9        MS. PITNEY:  Object to form.
10 BY MR. COX:
11    Q.   Let me restate the question.
12 Have you received any training from GMAC
13 to use in conjunction with your
14 performance as the team lead for the
15 document execution team?
16    A.   Yes.
17    Q.   What training have you
18 received?
19    A.   I received side-by-side
20 training from another team lead to
21 instruct me on how to review the
22 documents when they are received from my
23 staff.
24    Q.   Who was that person?
25    A.   That person, at the time, I

17

STEPHAN

2 believe was a gentleman by the name of
3 Kenneth Ugwuadu, U-G-W-U-A-D-U.  He is no
4 longer with GMAC.
5    Q.   How long did that training
6 last?
7    A.   Three days.
8    Q.   Were there any written or
9 printed training materials or manuals
10 used as a part of that training?
11    A.   No.
12    Q.   Again, just so I understand
13 what your testimony was, that training
14 involved your learning how to review the
15 documents that were being processed
16 through your hands; is that correct?
17    A.   That's correct.
18    Q.   What were you trained to do
19 with respect to those documents by that
20 gentleman?
21    A.   Basically, how to review the
22 system, which I already basically knew
23 from preparing documents in my prior
24 position before becoming a team lead.  So
25 it was more or less a rehash, let's say.  C - 1 - 5

5 (Pages 14 to 17)

18

STEPHAN

1  or retraining, to confirm that I was
2  looking at things correctly in the
3  system.
4      Q.   When you refer to a system,
5  you're referring to a computer system?
6      A.   Yes.
7      Q.   Other than what you might
8  call it when you're not happy, does that
9  system have a name?
10      A.   Yes.  That system is called
11  Fiserv, F-I-S-E-R-V.
12      Q.   Have you received any
13  training on how to use that system?
14      A.   Yes, when I was hired.
15      Q.   Are there any manuals or
16  training materials associated with your
17  training on that system?
18      A.   Yes, there is.
19      Q.   Do you have those manuals in
20  your possession?
21      A.   Presently, no.
22      Q.   Do they exist in your office
23  at GMAC?
24      A.   I honestly don't know.

19

STEPHAN

1      Q.   In your role as team lead
2  for the document execution team, do you
3  have any duties with respect to the
4  receipt, application, or counting for
5  loan payments?
6      A.   No.
7      MS. PITNEY:  Object to the
8  form of the question.
9  BY MR. COX:
10      Q.   What department has that
11  responsibility?
12      A.   To my understanding, that
13  would be customer service.  And within
14  customer service, I believe there is a
15  cash unit.
16      Q.   Have you ever worked in that
17  cash unit?
18      A.   No.
19      Q.   Have you ever worked in that
20  customer service department?
21      A.   No.
22      Q.   Have you ever had any
23  training in how that department and unit
24  work?

20

STEPHAN

1      A.   No.
2      Q.   In your capacity as team
3  lead for the document execution team, do
4  you have any responsibility for data
5  entry into the computer system regarding
6  payments received by GMAC?
7      A.   No.
8      Q.   In your capacity as the team
9  lead for the document execution team, do
10  you have any role in the foreclosure
11  process at GMAC, other than the signing
12  of documents?
13      MR. FLEISCHER:  Objection as
14  to the form of the question.
15      THE WITNESS:  Can you
16  rephrase?
17  BY MR. COX:
18      Q.   In your capacity as the team
19  lead for the document execution team, do
20  you have any role in the foreclosure
21  process, other than the signing of
22  documents?
23      A.   No.
24      Q.   I'm going to hand you what

21

STEPHAN

1  we have marked as Deposition Exhibit
2  Number 1, which is your affidavit in this
3  case, dated August 5, 2009.
4      MS. PITNEY:  Excuse me, Tom.
5  This is Julia.  Am I to presume
6  that this is the only exhibit
7  you're going to be introducing?
8  Because I haven't received any
9  exhibits that you plan to produce
10  at this deposition today.
11      MR. COX:  I had no idea you
12  were going to be participating
13  today, Julia.
14      MS. PITNEY:  Well, I
15  represent the plaintiff.  It
16  shouldn't come as any surprise.
17      MR. COX:  We're not going to
18  have a debate on the record.  The
19  exhibits are here.  You're welcome
20  to come see them.  I had no idea
21  that you were going to participate
22  in this fashion.
23      MS. PITNEY:  You had no
24  idea?

C-1-6

DiscoveryWorks Global        888.557.8650        www.dw-global.com

22

```
 1            STEPHAN
 2       MR. COX:  I'm not going to
 3   have this exchange on the record
 4   with you.  If you want to go off
 5   the record for a minute, I'll be
 6   happy to do it.
 7       MS. PITNEY:  No, we're going
 8   to stay right on the record, Tom.
 9       MR. COX:  That's fine.
10       MS. PITNEY:  Is it your
11   intent to introduce these exhibits
12   that have not been produced to the
13   opposing party?
14       MR. COX:  I'm not going to
15   respond to that.  I will entertain
16   objections that you are going to
17   make.  But I'm not going to
18   respond to your questions on the
19   record.
20       MS. PITNEY:  I'm going to
21   object to each and every exhibit.
22       MR. COX:  That's your right
23   to do that.
24   BY MR. COX:
25       Q.  I've handed you Deposition
```

23

```
 1            STEPHAN
 2   Exhibit Number 1, Mr. Stephan.  Is that a
 3   document signed by you?
 4       A.  Yes, that is my signature.
 5       Q.  And that's dated August 5,
 6   2009?
 7       A.  That is correct.
 8       Q.  Do you have any memory of
 9   signing that document?
10       A.  No, I do not.
11       MS. PITNEY:  I'd like to
12   take a brief break and speak with
13   Attorney Fleischer separately.
14   There's no question pending.
15       (Whereupon, a short recess
16   was taken.)
17       MR. COX:  I gather you have
18   something you want to say on the
19   record, Julia?
20       MS. PITNEY:  Yes.  I object
21   to not being provided copies of
22   the documents that you intend to
23   introduce in this deposition.  And
24   in an effort to make things more
25   efficient, my proposal is that --
```

24

```
 1            STEPHAN
 2   I understand there's not a large
 3   number of documents.  I propose
 4   that we have Attorney Fleischer
 5   fax them to me, or e-mail, in
 6   bulk, or we're going to have to
 7   stop.  I would object.  And each
 8   time I'm going to stop and have
 9   each document sent to me.
10       MR. COX:  Your objection is
11   noted.
12       MR. FLEISCHER:  Why don't we
13   at least just deal with the one
14   document that's in front of us at
15   this point, which is the
16   affidavit, and then we'll address
17   each one as they come up.
18       MS. PITNEY:  Fair enough.
19   BY MR. COX:
20       Q.  Mr. Stephan, you've
21   testified that in addition to yourself,
22   there are 14 other employees in your
23   document execution team.
24       A.  That is correct.
25       Q.  You have a title of limited
```

25

```
 1            STEPHAN
 2   signing officer; is that correct?
 3       A.  That is correct.
 4       Q.  How long have you been a
 5   limited signing officer for GMAC
 6   Mortgage?
 7       A.  I'm going to estimate, two
 8   years.
 9       Q.  Are there any other limited
10   signing officers among the 14 people on
11   your team?
12       A.  No, not amongst my 14
13   people.
14       Q.  Exhibit-1, on the bottom of
15   the first page, says:  I have under my
16   custody and control the records relating
17   to the mortgage transaction referenced
18   below.
19       What records does GMAC
20   maintain with respect to mortgage
21   transactions?
22       MS. PITNEY:  Object to the
23   form.
24       THE WITNESS:  Please
25   rephrase.
```

*C - 1 - 7*

26

STEPHAN

BY MR. COX:

Q.   What records does GMAC maintain with respect to mortgage loans?

A.   We keep our records for the foreclosure department and the rest of the company on our Fiserv system for availability throughout our company.

Q.   Do paper records exist anywhere within GMAC Mortgage?

A.   Yes, they do.

Q.   Where do they exist?

A.   I believe they are housed either in our Iowa office or in Minnesota, or with any of our custodians involved within the company.

Q.   Do you have any responsibilities for making entries in the Fiserv system?

A.   Other than just usual notes, no.

Q.   What kind of usual notes do you enter?

MS. PITNEY:  Object. I'm objecting to the form of the

27

STEPHAN

question.  And, furthermore, I'm objecting to the extent that you're basically asking him an incredibly broad-based question here, Tom.  If you want to ask him about this case and any entries he made with respect to this case, then that's fine.  But your question is pretty sweeping there.

BY MR. COX:

Q.   What is your usual business practice and routine with respect to making usual notes in the Fiserv system?

A.   If a customer were to call in, I would make a note in our computer system.

Q.   Do customers call you in your capacity as team lead for the document execution team?

A.   No, they do not.

Q.   So if that's the only kind of notes that you would make in the system, is it fair to say that you don't make notes in that system?

28

STEPHAN

A.   That would be correct.

Q.   And you have no role in the entry of any other data into that system; isn't that correct?

A.   That is correct.

Q.   What department maintains that system?

MR. FLEISCHER:  Objection as to form.

BY MR. COX:

Q.   Do you know what department maintains that system?

A.   The system is used by the entire company.

Q.   Do you know what department maintains the security for that system?

A.   The IT department.

Q.   Where is that located?

A.   Throughout the entire country.

Q.   Do you know what department makes entries into that system?

A.   Numerous departments.

Q.   Do you know what departments

29

STEPHAN

have the ability to change entries in that system?

A.   Nobody has the ability to change an entry in the system, as far as a note would go.

Q.   What do you mean by that?

A.   Such as if a customer calls in, you type in the system.  Once you type it, it's entered.

Q.   Does GMAC keep a paper record of loan payments made by mortgage customers?

A.   I do not know.

Q.   I think you said that the cash department receives payments -- customer payments; is that correct?

A.   To my knowledge, yes.

Q.   That's the department that you've said you have not worked in; is that correct?

A.   That is correct.

Q.   So you don't have firsthand knowledge about how it operates; is that correct?

C-1-8

DiscoveryWorks Global         888.557.8650         www.dw-global.com

30

STEPHAN

1  A.   That is correct.
2      MS. PITNEY:  Object.
3  BY MR. COX:
4      Q.   Do you have any knowledge
5  about how the data relating to those
6  payments are entered into the system?
7      A.   I do not have that
8  knowledge.
9      Q.   Do you have any knowledge
10 about how GMAC ensures the accuracy of
11 the data entered into the system?
12     A.   No, I do not.
13     Q.   Do you have any knowledge as
14 to what measures GMAC takes to preserve
15 the integrity and security of the system?
16     A.   No, I do not.
17     MS. PITNEY:  Object to the
18 form of that question.
19 BY MR. COX:
20     Q.   In your capacity as team
21 lead for the document execution team,
22 what kinds of documents do you sign?
23     A.   The types of documents I
24 sign are assignments of mortgage,

31

STEPHAN

1  numerous types of affidavits, deeds that
2  need to be done post sale, a substitution
3  of trustees.  And that covers it in a
4  general span.
5      Q.   You said you sign a variety
6  of affidavits.  What kinds of affidavits
7  do you sign?
8      A.   I sign judgment affidavits
9  for judicial foreclosure actions.  I will
10 sign an affidavit verifying military
11 duty.  I sign affidavits in reference to
12 -- if GMAC has exhausted all options
13 through lost mitigation upon reviewing
14 notes in our Fiserv system.  That's a
15 general description of different types
16 of affidavits.
17     Q.   Your document execution team
18 provides documents for foreclosures in
19 what states?
20     A.   Throughout the country.
21     Q.   Are there other document
22 execution teams within the GMAC system?
23     A.   I believe our bankruptcy
24 unit also has a document execution team.

32

STEPHAN

1      Q.   That's the only other
2  document execution team that you're aware
3  of?
4      A.   To my knowledge, yes.
5      Q.   When you referred in one of
6  your answers a few moments ago to
7  judgment affidavits, are you referring to
8  the type of affidavit in front of you, as
9  Deposition Exhibit-1?
10     A.   That is a similar type of
11 affidavit, yes.  This states Affidavit in
12 Support of the Plaintiff's Motion for
13 Summary Judgment.
14     Q.   Have you received any
15 training regarding the summary judgment
16 process in judicial foreclosure states?
17     A.   No.
18     Q.   Do you have any knowledge as
19 to what a summary judgment affidavit is
20 used for in the State of Maine?
21     MR. FLEISCHER:  Objection as
22 to form.
23 BY MR. COX:
24     Q.   Would you please answer the

33

STEPHAN

1  question?
2      A.   To my knowledge, a borrower
3  would have filed a contested answer.  And
4  this would be our next step within the
5  process, to confirm the amount that is
6  due to support the summary judgment.
7      Q.   Do you understand how the
8  affidavit is used, that is, Deposition
9  Exhibit Number 1?
10     MS. PITNEY:  Objection.
11 Tom, you're getting dangerously
12 close here to the privileged area.
13 I mean, this affidavit, in itself,
14 was prepared in preparation for
15 litigation -- in litigation; not
16 even preparation for it, but
17 during litigation.
18     MR. COX:  I have not the
19 slightest interest in getting into
20 attorney/client privilege.  I'll
21 rephrase the question.
22 BY MR. COX:
23     Q.   Do you have any knowledge of
24 how summary judgment affidavits are used

C-1-9

9  (Pages 30 to 33)

34

```
 1            STEPHAN
 2   in judicial foreclosure states?
 3        A.   No.
 4        Q.   Are you aware that they are
 5   given to a judge?
 6        A.   Yes.
 7        Q.   And do you understand that
 8   the judge relies upon them?
 9        A.   Yes.
10        Q.   At the time that you
11   executed Deposition Exhibit-1 on August
12   5, 2009, you were, at that time, in your
13   position as team lead for the document
14   execution department?
15        A.   Yes.
16        Q.   Has the manner in which you
17   perform your duties as the team lead for
18   the document execution department changed
19   in any way over the period from August 5,
20   2009 to the present date?
21        A.   No.
22        Q.   Has your job description
23   changed in any manner during that time?
24        A.   I assumed the responsibility
25   at that time of also handling the service
```

35

```
 1            STEPHAN
 2   transfer team as an additional
 3   responsibility; other than document
 4   execution, no.
 5        Q.   In your usual business
 6   practice as a team lead for the document
 7   execution team, how does a summary
 8   judgment affidavit come to you, such as
 9   the one that is Deposition Exhibit Number
10   1?
11        MS. PITNEY:  Objection.
12        Tom, if you'd like to ask him
13        about how this specific affidavit
14        came to him, that's fine.  But,
15        again, you're asking way too
16        broad.
17   BY MR. COX:
18        Q.   Do you know how this
19   specific affidavit got to you, Mr.
20   Stephan?
21        A.   We have a process in place
22   that if our attorney network needs an
23   affidavit, they will upload it into our
24   system, which is called LPS.  We have
25   another system, which is a communication
```

36

```
 1            STEPHAN
 2   tool, between our attorneys.  They load
 3   it into a process called signature
 4   required.
 5        MS. PITNEY:  Jeff, I'm going
 6        to interrupt you right there.  To
 7        the extent that this answer or
 8        anything else that you say has to
 9        do with your communication between
10        you and your attorney -- GMAC and
11        its attorney, it's attorney/client
12        privilege.
13        THE WITNESS:  So I won't
14        answer.
15        MR. COX:  Well, let's go
16        back and ask the question again.
17        MS. PITNEY:  He's answered
18        the question.  He gets the
19        affidavit from the attorney.
20   BY MR. COX:
21        Q.   What is the LPS system?
22        A.   That is a communication tool
23   with our attorney network.
24        Q.   Is LPS a separate company?
25        A.   Yes.
```

37

```
 1            STEPHAN
 2        MS. PITNEY:  Objection.  The
 3        means by which he communicates any
 4        details about -- the means by
 5        which he communicates with his
 6        attorneys is privileged.
 7   BY MR. COX:
 8        Q.   What does LPS do?
 9        MS. PITNEY:  I'm going to
10        object again on privilege grounds.
11        Same objection.  Do not answer
12        that question.
13        THE WITNESS:  Okay.
14   BY MR. COX:
15        Q.   Is the source of what you
16   know about what LPS does based upon any
17   communication that you've had with
18   lawyers?
19        A.   Sorry.  Please rephrase
20   that.  I don't understand your question.
21        Q.   Do you know what LPS does
22   with respect to documents processed by
23   your unit?                        C- 1-10
24        MS. PITNEY:  Objection.
25        Same objection.
```

10  (Pages 34 to 37)

38

```
1              STEPHAN
2          MR. COX:  He can answer that
3     yes or no.
4          THE WITNESS:  I still don't
5     understand what you're asking.
6     BY MR. COX:
7          Q.   You've mentioned LPS.
8          A.   Right.
9          Q.   That's a separate company;
10    is that correct?
11         A.   It's a system that we have
12    acquired from a company by the name of
13    Fidelity, in order to have communication
14    between our attorneys.
15         Q.   Do you have any memory of
16    specifically receiving Deposition
17    Exhibit-1?
18         A.   No.
19         Q.   Again, I'm asking you, based
20    upon that, to describe what the usual
21    business practice is within your unit, as
22    far as how affidavits, such as Deposition
23    Exhibit-1, come to you.
24         A.   Our attorney will load it to
25    the LPS system.  Members of my team will
```

39

```
1              STEPHAN
2     print it.  Other members will prepare it.
3     The figures have already been loaded from
4     our network of attorneys.  So my team
5     does not have any input on the affidavit,
6     other than filling in my name.  They
7     bring it to me.  I review it against our
8     Fiserv system, execute it, hand it back.
9     They get it notarized.  It's Federal
10    Expressed back to the individual attorney
11    asking.
12         Q.   Do you keep a log of any
13    sort of what documents you execute?
14         MS. PITNEY:  I'm sorry.  Can
15    you repeat the question, Tom?  I
16    could not hear that.
17    BY MR. COX:
18         Q.   Do you keep a log of any
19    sort of what documents you execute?
20         MS. PITNEY:  Objection.
21    Work product.  Any type of log
22    that he keeps relative to these
23    affidavits is prepared in
24    preparation for litigation; to the
25    extent that one even exists.
```

40

```
1              STEPHAN
2          MR. COX:  He can answer the
3     question of whether or not he
4     keeps a log, before I ask him what
5     goes into the log.
6          MS. PITNEY:  Fine.
7          THE WITNESS:  No, I don't
8     have a log.
9     BY MR. COX:
10         Q.   Does anybody keep a log of
11    what documents you sign?
12         MS. PITNEY:  Object to the
13    form of that question.
14         THE WITNESS:  Please
15    rephrase.
16    BY MR. COX:
17         Q.   Do you know if anybody keeps
18    a log of what documents you execute?
19         A.   We have notaries in our
20    department, approximately six, who keep a
21    log for what they notarize.
22         Q.   These are notaries within
23    your department?
24         A.   That is correct.
25         Q.   As I understand it, the
```

41

```
1              STEPHAN
2     first step is, in your department, a
3     document comes in on the LPS system from
4     the outside lawyer; is that correct?
5          A.   That is correct.
6          Q.   And then an employee in your
7     department prints it out; is that
8     correct?
9          A.   That is correct.
10         Q.   And then you said that the
11    employee prepares the document.  What
12    does that mean?
13         MS. PITNEY:  Objection.  The
14    document is prepared for
15    litigation.  It is privileged.
16    How it is prepared is privileged.
17    Do not answer that question.
18    BY MR. COX:
19         Q.   Do your employees have any
20    direct communication with outside
21    counsel?
22         A.   Yes, through the LPS system.
23         MS. PITNEY:  Objection.  How
24    and what he communicates with his
25    attorney is privileged, Tom.
```

C - 1 - 11

DiscoveryWorks Global        888.557.8650        www.dw-global.com

42

```
 1            STEPHAN
 2        MR. COX:  I haven't asked
 3     for the content.  I asked if it
 4     happens.
 5   BY MR. COX:
 6        Q.   Would you answer the
 7     question, please?
 8        A.   Yes, through the LPS system.
 9        Q.   Is anything done to a
10     document submitted to the LPS system by
11     an outside lawyer before it reaches your
12     hands?
13            MS. PITNEY:  Objection.
14        Preparation of the document is
15        privileged.  It's for litigation.
16        Do not answer the question.
17   BY MR. COX:
18        Q.   Is the document that is
19     received in the LPS system from outside
20     counsel presented to you in exactly the
21     form that it is received in from outside
22     counsel?
23            MS. PITNEY:  Objection.
24        Same objection.
25            MR. COX:  Is it an
```

43

```
 1            STEPHAN
 2     objection, or are you instructing
 3     him not to answer?
 4            MS. PITNEY:  I'm instructing
 5        him not to answer, to the extent
 6        you're asking him questions about
 7        a document that was prepared
 8        specifically during the course of
 9        litigation.  It's protected by
10        privilege, and you can't ask him
11        questions about it.
12   BY MR. COX:
13        Q.   Deposition Exhibit-1 has
14     your name stamped on it with a stamp; is
15     that correct?
16        A.   That is correct.
17        Q.   And below your name, the
18     words "limited signing officer" appear;
19     is that correct?
20        A.   That is correct.
21        Q.   Who puts that stamp on these
22     affidavits?
23        A.   My team.
24        Q.   On this particular
25     affidavit, your name and title is stamped
```

44

```
 1            STEPHAN
 2     twice on the first page, and once on the
 3     signature page for you; is that correct?
 4        A.   That is correct.
 5        Q.   And then it's stamped again
 6     on the notary page; is that correct?
 7        A.   That is correct.
 8        Q.   So as I understand it, an
 9     affidavit, such as Deposition Exhibit-1,
10     is initially prepared by outside counsel?
11            MS. PITNEY:  Objection.
12   BY MR. COX:
13        Q.   Is that correct?
14        A.   Yes, that is correct.
15        Q.   Does anybody on your team
16     verify the accuracy of any of the
17     contents of the affidavit before it
18     reaches your hands?
19            MS. PITNEY:  Objection
20        again.  How the document is
21        prepared -- you can ask him
22        questions about the document and
23        what's stated in the document.
24        The preparation of the document,
25        which is prepared for litigation,
```

45

```
 1            STEPHAN
 2     is privileged.  Do not answer the
 3     question, Jeff.
 4   BY MR. COX:
 5        Q.   Mr. Stephan, do you recall
 6     testifying in your Florida deposition in
 7     December, with regard to your employees,
 8     and you said, quote, they do not go into
 9     the system and verify the information as
10     accurate?
11        A.   That is correct.
12            MS. PITNEY:  I'm sorry.
13        Tom, could you please repeat what
14        you just said?  I just couldn't
15        hear.
16            MR. COX:  Quote:  They do
17        not go into the system and verify
18        the information as accurate.
19   BY MR. COX:
20        Q.   Is that correct?
21        A.   That is correct.
22            MR. FLEISCHER:  Tom, can you
23        reference what litigation that was
24        in, do you know?
25            MR. COX:  The Florida case
```

C - 1 - 12

12  (Pages 42 to 45)

46

STEPHAN

1 that he testified in.
2       MR. FLEISCHER: I just
3 thought you might have a reference
4 there.
5       MR. COX: I'll get it
6 shortly.
7 BY MR. COX:
8       Q.   Do you and your 14-person
9 team all work in the same physical space?
10      A.   Yes. We're all in the same
11 department.
12      Q.   Do you have an office or a
13 cubicle, or what?
14      A.   Cubicle.
15      Q.   Do the employees bring
16 documents to you to sign?
17      A.   That is correct.
18      Q.   How many do they bring to
19 you at a time, on average?
20      A.   For a month, anywhere from
21 six to 8,000 documents.
22      Q.   Do you recall testifying in
23 your Florida deposition in December that
24 you estimated it was 10,000 documents a
25

47

STEPHAN

1 month?
2       A.   I do not recall. I'm going
3 off of numbers within the past month or
4 so.
5       Q.   Have those numbers gone down
6 in the past month or so?
7       A.   There has been a decrease.
8       Q.   Back in December, were you
9 signing in the range of 10,000 documents
10 a month?
11      A.   I may have been.
12      Q.   Back in August of 2009,
13 roughly, how many documents a month were
14 you signing?
15      A.   I cannot estimate. I don't
16 know.
17      Q.   Do you believe that it was
18 more or less than the number you were
19 signing in December?
20      A.   I'm going to assume, more.
21      Q.   And on a given day, I
22 understand an employee brings you a group
23 of documents for you to sign; is that
24 correct?
25

48

STEPHAN

1       A.   That would be correct.
2       Q.   Roughly, how many are
3 brought to you in a group, on average?
4       A.   Throughout a day, I believe
5 we are averaging approximately 400 new
6 requests coming in from our attorney
7 network. So I would say approximately
8 400 per day.
9       Q.   This sounds very basic.
10 But, physically, are you handed a pile of
11 100 documents, 300 documents? How does
12 that work?
13      A.   They bring them to me in
14 individual folders from each one of the
15 members of my team. I do not count how
16 many are in the files.
17      Q.   So each team employee has a
18 folder of document; is that correct?
19      A.   That is correct.
20      Q.   When you receive a summary
21 judgment affidavit to be signed by you,
22 is it accompanied by any other documents
23 relating to the loan?
24      MS. PITNEY: Objection. The
25

49

STEPHAN

1 document is prepared for
2 litigation. And anything he does
3 when he's preparing it is
4 privileged.
5       MR. COX: Are you telling
6 him not to answer?
7       MS. PITNEY: I am. Tom, if
8 you want to ask him about general
9 procedures, which you have been,
10 then I'm not going to object as
11 much. But if you want to ask him
12 about what goes into preparing a
13 document that was used for summary
14 judgment, that's clearly prepared
15 for litigation, and it's
16 privileged and protected.
17      MR. COX: I think you
18 haven't heard my question, Julia.
19 I'll state it again.
20 BY MR. COX:                    C-1-13
21      Q.   When you receive a summary
22 judgment document for your execution, is
23 it accompanied by any other documents?
24      MS. PITNEY: My objection is

50

STEPHAN

1 -- you can answer that question,
2 Jeff.
3 THE WITNESS: There are
4 times when it has the Complaint
5 connected. There are times when
6 it is brought to me just as the
7 affidavit.
8 BY MR. COX:
9 Q. When you say that there are
10 times when it comes to you with a
11 Complaint connected, you mean attached as
12 an exhibit?
13 A. Such as this one, yes.
14 Q. When you say "this one,"
15 you're referring to Deposition Exhibit-1?
16 A. Yes, that is correct.
17 Q. Deposition Exhibit-1 has
18 several exhibits attached to it; is that
19 correct?
20 MS. PITNEY: Could you
21 please tell me what the exhibits
22 that are attached are, because I
23 don't have the benefit of having
24 them in front of me?

*(Note: line numbering on left column reads 1–25)*

51

STEPHAN

1 THE WITNESS: Exhibit-A is a
2 copy of the note and the --
3 MR. COX: Julia, this is
4 your summary judgment affidavit.
5 MS. PITNEY: I'm not
6 doubting that it is. I just don't
7 know what these other exhibits
8 attached are.
9 MR. COX: Don't you have
10 your copy?
11 MS. PITNEY: You're the one
12 verifying if they're the same as
13 the one I'm looking at, Tom.
14 THE WITNESS: Exhibit-B is
15 the mortgage. Exhibit-C is the
16 assignment of note and mortgage.
17 Exhibit-D -- I believe we're
18 looking at the demand, or the
19 breach letter. And those are the
20 four documents that are connected
21 to this affidavit of summary
22 judgment.
23 BY MR. COX:
24 Q. In your usual practice, are

52

STEPHAN

1 those exhibits attached to the affidavit
2 at the time that you sign them?
3 MS. PITNEY: Objection.
4 You're asking about a document
5 that was prepared by an attorney.
6 Anything that comes with it that
7 he's asked to review is
8 privileged -- the communication
9 between a client and an attorney.
10 Do not answer the question.
11 BY MR. COX:
12 Q. Mr. Stephan, would you
13 please look at Paragraph 3 of Exhibit-1.
14 Do you see there the statement: That a
15 true and correct copy of which is
16 attached hereto is Exhibit-A?
17 A. Where are you looking?
18 Q. Paragraph 3. Do you see
19 that statement?
20 A. Yes, I do.
21 Q. When you sign an affidavit
22 such as Exhibit-1, are the exhibits
23 attached to it?
24 MS. PITNEY: Objection. A

53

STEPHAN

1 document that's provided to him by
2 an attorney is privileged.
3 MR. COX: Are you telling
4 him not to answer that question?
5 MS. PITNEY: Yes. I'll say
6 again, Tom, if you would like to
7 ask him about the facts that are
8 in the affidavit, the details
9 about this loan -- which I might
10 remind you involves a woman by the
11 name of Nicole Bradbury -- then
12 I'm sure Jeff will answer your
13 question?
14 MR. COX: Well, he has the
15 affidavit in front of him in this
16 case. And the affidavit which he
17 swore to says a true and correct
18 copy of the note is attached to
19 it. And I asking him if that
20 document was attached to it at the
21 time that he signed it.
22 BY MR. COX:       C-1-14
23 Q. Would you please answer that
24 question?

DiscoveryWorks Global      888.557.8650      www.dw-global.com

54

STEPHAN

1
2    A.   To my knowledge, I do not
3  recall.
4    Q.   Is it your usual business
5  practice to have exhibits attached to
6  affidavits that you sign?
7    A.   Yes.
8    Q.   All exhibits?
9        MS. PITNEY:  Object to form.
10       THE WITNESS:  I do not know.
11 BY MR. COX:
12   Q.   When you sign a summary
13 judgment affidavit, do you check to see
14 if all the exhibits are attached to it?
15   A.   No.
16   Q.   Does anybody in your
17 department check to see if all the
18 exhibits are attached to it at the time
19 that it is presented to you for your
20 signature?
21   A.   No.
22   Q.   When you sign a summary
23 judgment affidavit, do you inspect any
24 exhibits attached to it?
25   A.   No.

55

STEPHAN

1
2        MS. PITNEY:  Could you
3  repeat the question, Tom?  Did you
4  say -- or can you have it read
5  back, please?
6        (Whereupon, the pertinent
7  portion of the record was read.)
8        MS. PITNEY:  Object to the
9  form.
10 BY MR. COX:
11   Q.   What happens to an affidavit
12 in your department after you sign it?
13       MS. PITNEY:  Objection.
14 What happes to the document
15 afterwards is -- it's in the
16 course of litigation.  The same
17 objection as I said before.  Where
18 it goes is privileged.
19       MR. COX:  Where it goes is
20 not a communication.  It is not
21 privileged.
22       MS. PITNEY:  You don't know
23 that.
24       MR. COX:  Pardon me?
25       MS. PITNEY:  You don't

56

STEPHAN

1
2  necessarily know that.
3        MR. COX:  The physical
4  movement of a document is not a
5  communication.  It's a fact.
6  BY MR. COX:
7    Q.   My question to you is, where
8  does a summary judgment go after you sign
9  it?
10   A.   After I sign it, it is
11 handed back to my staff.  My staff hands
12 it to a notary for notarization.  It is
13 then handed back to my staff.  They send
14 it back to the network attorney
15 requesting any type of affidavit.
16   Q.   So you do not appear before
17 the notary; is that correct?
18   A.   I do not.
19   Q.   What does your staff do with
20 a summary judgment affidavit, such as
21 Deposition Exhibit-1, after it receives
22 it back from the notary?
23   A.   They go into our LPS system,
24 close out process, stating it's being
25 sent back to --

57

STEPHAN

1
2        MS. PITNEY:  Objection.
3  Sorry.  I don't mean to interrupt
4  you, Jeff.  I'm going to instruct
5  you not to answer anything else,
6  because you've already testified
7  that the LPS system is the means
8  by which you communicate with your
9  attorney.  The attorney/client
10 communication is privileged.  So
11 don't continue to answer the
12 question.
13       Actually, if there is no
14 question, pending, I'd like to
15 take a brief break to discuss
16 something with Brian Fleischer.
17       (Whereupon, a short recess
18 was taken.)
19 BY MR. COX:
20   Q.   Mr. Stephan, do you recall
21 testifying in your Florida deposition in
22 December that you rely on your attorney
23 network to ensure that the documents that
24 you receive are correct and accurate?
25   A.   That is correct.

*C - 1 - 15*

15 (Pages 54 to 57)

58

STEPHAN

1  Q.   And is that, in fact, the
2  case?
3  A.   Yes.
4  Q.   And your department does not
5  do any independent accuracy check of
6  those records; isn't that correct?
7  MR. FLEISCHER:  Objection as
8  form.
9  THE WITNESS:  Can you
10  rephrase?
11  BY MR. COX:
12  Q.   Your department does not do
13  any independent check of the accuracy of
14  the information on the summary judgments
15  coming to you; isn't that correct?
16  A.   I review, quickly, the
17  figures.  Other than that, that's about
18  it.
19  Q.   Do you recall testifying in
20  your Florida deposition in December, that
21  the affidavits that you sign are not
22  based upon your own personal knowledge?
23  A.   I do not recall.
24  MS. PITNEY:  Objection to

59

STEPHAN

1  the form.
2  BY MR. COX:
3  Q.   You do not recall that?
4  A.   I do not recall.
5  Q.   When you receive a summary
6  judgment affidavit from one of your staff
7  members, what do you do with it?
8  A.   I will first review it
9  against our computer system, which is
10  Fiserv, in general terms, to verify that
11  the figures are correct.  And then I will
12  execute it and hand it back to my staff
13  to have it notarized.
14  Q.   You say "in general terms"
15  you review it.  What do you mean?
16  MS. PITNEY:  Objection.
17  THE WITNESS:  I compare the
18  principal balance.  I review the
19  interests.  I take a look at the
20  late charges.  I look at the
21  outstanding escrow amounts.  When
22  I say "general terms," I mean I'm
23  not looking at the escrow and
24  breaking it down to the penny.

60

STEPHAN

1  I'm saying, yes, it looks correct
2  in my computer system.
3  BY MR. COX:
4  Q.   Is there anything else that
5  you look at in your computer system when
6  you're signing a summary judgment
7  affidavit?
8  MS. PITNEY:  I'm sorry.  I
9  couldn't hear the last part of
10  that.
11  BY MR. COX:
12  Q.   Is there anything else that
13  you look at in your computer system at
14  the time that you sign a summary judgment
15  affidavit?
16  A.   The only other thing I
17  can --
18  MS. PITNEY:  One second.
19  Are we talking about the computer
20  system, the communication system?
21  I just was asking for
22  clarification of --
23  MR. COX:  Let me clarify it.
24  MS. PITNEY:  What computer

61

STEPHAN

1  communication system Tom was
2  asking him about.
3  BY MR. COX:
4  Q.   You testify that you go into
5  the First Serve (sic) system; is that
6  correct?
7  A.   Yes, Fiserv.
8  Q.   Fiserv.  Do you go into any
9  other computer system at the time that
10  you're signing a summary judgment
11  affidavit?
12  A.   No.
13  Q.   And you just testified that
14  you look at principal, interest, late
15  charges and escrow; is that correct?
16  A.   That is correct.
17  Q.   Is there anything else that
18  you look at in your computer system when
19  you're signing a summary judgment
20  affidavit?
21  A.   The only thing I review,
22  other than that, is who the borrower is.
23  Q.   When you receive a summary
24  judgment affidavit to sign, do you read

C-1-16

62

STEPHAN

1 every paragraph of it?
2 A.  No.
3 Q.  What do you read?
4 A.  I look for the figures.
5 Q.  That's all that you look at
6 when you sign a summary judgment
7 affidavit?
8 A.  Yes, to ensure that the
9 figures are correct.
10 Q.  Is it fair to say then that
11 when you sign a summary judgment
12 affidavit, you do not know what it says,
13 other than what the figures are that are
14 contained within it?
15 MR. FLEISCHER: Objection as
16 to form.
17 MS. PITNEY: Objection to
18 the form of the question.
19 THE WITNESS: Please
20 rephrase.
21 BY MR. COX:
22 Q.  It fair to say that when you
23 sign a summary judgment affidavit, you
24 don't know what information it contains,

63

STEPHAN

1 other than the figures that are set forth
2 within it?
3 A.  Other than the borrower's
4 name, and if I have signing authority for
5 that entity. That is correct.
6 Q.  The practice that you've
7 just described for signing summary
8 judgment affidavits is the practice that
9 you use signing all summary judgment
10 affidavits that you handle; is that
11 correct?
12 MR. FLEISCHER: Again, I'm
13 going to object to the form of the
14 question.
15 BY MR. COX:
16 Q.  Is that correct?
17 A.  The practice that I use for
18 summary judgment affidavits is the same
19 practice that I use for all affidavits.
20 Q.  And that's the one that
21 you've just described?
22 A.  Yes.
23 Q.  Is any part of your
24 compensation at GMAC Mortgage tied to the

64

STEPHAN

1 volume of documents that you sign?
2 A.  No.
3 Q.  Is any part of your
4 compensation tied to the volume of
5 documents that your department processes?
6 A.  No.
7 Q.  Is it your understanding
8 that the process that you follow in
9 signing summary judgment affidavits is
10 in accordance with the policies and
11 procedures required of you by GMAC
12 Mortgage?
13 A.  Yes.
14 Q.  Does GMAC do any quality
15 assurance training for your department?
16 A.  Presently, no.
17 Q.  Has it in the past?
18 A.  I do not know.
19 Q.  You don't recall any?
20 A.  I never received any.
21 Q.  Do you have any memory of
22 checking the numbers on the Bradbury
23 affidavit that's in front of you as
24 Deposition Exhibit-1?

65

STEPHAN

1 A.  I do not recall.
2 Q.  If a loan has been modified,
3 does that show up in the Fiserv system
4 that you look at?
5 A.  When you say "modified," are
6 you stating a loan modification?
7 Q.  Yes.
8 A.  Yes.
9 Q.  Does that show up?
10 A.  Yes.
11 Q.  If a loan has been modified,
12 is any information put in the summary
13 judgment affidavits that you sign about
14 that?
15 MR. FLEISCHER: Objection.
16 Are you talking about modified, or
17 his term was loan modification. I
18 just want to make sure we're
19 clear.
20 MR. COX: That's fine.
21 BY MR. COX:
22 Q.  If there's a loan
23 modification, does information about a
24 loan modification appear in the summary

DiscoveryWorks Global        888.557.8650        www.dw-global.com

66

STEPHAN

1  judgment affidavits that you sign?
2      A.   I do not know.
3          MS. PITNEY:  In all of them,
4  or in this one?
5          MR. COX:  In any of them.
6          THE WITNESS:  I don't know.
7  BY MR. COX:
8      Q.   Based upon your testimony,
9  Mr. Stephan, is it correct that when you
10 sign a summary judgment affidavit, such
11 as Deposition Exhibit-1 that is in front
12 of you, you don't know whether any
13 portion of it is true, other than the
14 paragraph containing the numbers that
15 you just described; is that correct?
16         MS. PITNEY:  Object to the
17 form.  Tom, are you asking him
18 about this affidavit?
19         MR. COX:  Well, he's
20 testified that doesn't recall
21 signing this particular affidavit,
22 so that was not my question.  Let
23 me restate it.
24 BY MR. COX:

67

STEPHAN

1      Q.   In your practice of signing
2  summary judgment affidavits, Mr. Stephan,
3  is it correct that they always have a
4  paragraph containing the numbers of the
5  amounts claiming to be due?
6      A.   That would be correct.
7      Q.   And is it correct that when
8  you sign those affidavits, you don't know
9  whether any other part of the affidavit
10 is true or correct?
11     A.   Please advise me.  What do
12 you mean by "any other part"?
13     Q.   Any other paragraph, other
14 than the one containing the numbers.
15     A.   I review it for the due
16 date, if that's included in there.
17     Q.   So all of them --
18     A.   So that would be the
19 numbers.
20     Q.   So other than the due date
21 and the balances due, is it correct that
22 you do not know whether any other part of
23 the affidavit that you sign is true?
24     A.   That could be correct.

68

STEPHAN

1      Q.   Is it correct?
2      A.   That is correct.
3      Q.   And isn't it also correct
4  that you do not check the numbers on
5  every single summary judgment affidavit
6  that you sign?
7      A.   That is not correct.
8      Q.   You check every single one?
9      A.   Yes.
10     Q.   How long does it take you,
11 on average, to process the execution of a
12 summary judgment affidavit?
13         MS. PITNEY:  Object to the
14 form.
15         MR. COX:  Please answer.
16         THE WITNESS:  Anywhere from
17 five to 10 minutes, off the top of
18 my head.
19         MR. COX:  If we can take a
20 break.  I may be done, but we can
21 take a break for five minutes.
22         (Whereupon, a short recess
23 was taken.)
24 BY MR. COX:

69

STEPHAN

1      Q.   Mr. Stephan, referring you
2  again to the bottom line on Page 1 of
3  Exhibit-1, it states:  I have under my
4  custody and control, the records relating
5  to the mortgage transaction referenced
6  below.
7          It's correct, is it not,
8  that you did not have in your custody any
9  records of GMAC at the time that you
10 signed a summary judgment affidavit?
11         MS. PITNEY:  Objection to
12 the form.
13         THE WITNESS:  I have the
14 electronic record.  I do not have
15 papers.
16 BY MR. COX:
17     Q.   You have access to a
18 computer.  Is that what you mean?
19     A.   Yes.
20     Q.   You have no control over
21 that system, do you?
22         MR. FLEISCHER:  Objection as
23 to form.
24 BY MR. COX:

C - 1 - 18

18 (Pages 66 to 69)

70

STEPHAN
Q. You have no control over
that Fiserv computer system, do you?
A. No, I do not.
Q. And someone else within GMAC
is responsible for ensuring the accuracy
of that system; isn't that correct?
A. That would be correct.
MR. COX: I have no further
questions.
MR. FLEISCHER: We're done,
Julia, unless you have something
to add.
MS. PITNEY: No.
(Witness excused.)
- - -
(Whereupon, the deposition
concluded at 11:45 a.m.)

71

I N D E X
Testimony of: Jeffrey Stephan
By Mr. Cox . . . . . . . . . 4


- - -
E X H I B I T S
- - -

NO.    DESCRIPTION        PAGE

1      Affidavit          3
       August 5, 2009

72

I have read the foregoing transcript
of my deposition given on June 7, 2010,
and it is true, correct and complete, to the
best of my knowledge, recollection and belief,
except for the corrections noted hereon and/or
list of corrections, if any, attached on a
separate sheet herewith.


_____
JEFFREY STEPHAN


Subscribed and sworn to
before me this _____ day
of _____, 2010.


_____
Notary Public

73

CERTIFICATE
I HEREBY CERTIFY that the witness
was duly sworn by me and that the
deposition is a true record of the
testimony given by the witness.


Susan B. Berkowitz, a
Registered Professional Reporter
and Notary Public
Dated: June 9, 2010


(The foregoing certification
of this transcript does not apply to any
reproduction of the same by any means,
unless under the direct control and/or
supervision of the certifying
reporter.)

C-1-19

19 (Pages 70 to 73)

74

1
2          LAWYER'S NOTES
3     ____ ____ _____
4     ____ ____ _____
5     ____ ____ _____
6     ____ ____ _____
7     ____ ____ _____
8     ____ ____ _____
9     ____ ____ _____
10    ____ ____ _____
11    ____ ____ _____
12    ____ ____ _____
13    ____ ____ _____
14    ____ ____ _____
15    ____ ____ _____
16    ____ ____ _____
17    ____ ____ _____
18    ____ ____ _____
19    ____ ____ _____
20    ____ ____ _____
21    ____ ____ _____
22    ____ ____ _____
23    ____ ____ _____
24    ____ ____ _____
25    ____ ____ _____

C - i - 20

DiscoveryWorks Global          888.557.8650          www.dw-global.com

12-12020-mg    Doc 2871-3    Filed 02/08/13    Entered 02/08/13 15:14:18    Exhibit C-1: Stephan Depositon of Jeffrey Stephan in FNMA v. Bradbury    et al.    Pg 21 of 26

1

## A

**ability** 29:2,4
**access** 69:18
**accompanied** 48:23 49:24
**accuracy** 30:11 44:16 58:6,14 70:6
**accurate** 45:10,18 57:24
**acquired** 15:21 38:12
**action** 11:8
**actions** 31:10
**add** 70:13
**addition** 24:21
**additional** 35:2
**address** 24:16
**advise** 67:12
**affidavit** 21:3 24:16 31:11 32:9,12 32:20 33:9,14 35:8,13,19,23 36:19 39:5 43:25 44:9,17 48:22 50:8 51:5,22 52:2 52:22 53:9,16,17 54:13,23 55:11 56:15,20 59:7 60:8,16 61:12,21 61:25 62:8,13,24 64:24 66:11,19,22 67:10,24 68:6,13 69:11 71:13
**affidavits** 31:2,7,7,9 31:12,17 32:8 33:25 38:22 39:23 43:22 54:6 58:22 63:9,11,19,20 64:10 65:14 66:2 67:3,9
**ago** 5:17 32:7
**agreed** 3:6
**AMERICA** 1:9
**amount** 33:6
**amounts** 59:22 67:6
**and/or** 72:6 73:21
**answer** 6:21 10:17 10:18 32:25 33:4 36:7,14 37:11 38:2 40:2 41:17 42:6,16 43:3,5 45:2 49:7 50:2 52:11 53:5,13,24 57:5,11 68:16
**answered** 36:17
**answers** 32:7

**anybody** 40:10,17 44:15 54:16
**appear** 43:18 56:16 65:25
**APPEARANCES** 2:2
**application** 19:5
**apply** 73:19
**approximate** 5:16
**approximately** 9:11 9:18,22 40:20 48:6,8
**area** 33:13
**arts** 8:13
**asked** 42:2,3 52:8
**asking** 27:4 35:15 38:5,19 39:11 43:6 52:5 53:20 60:22 61:3 66:18
**assignment** 51:17
**assignments** 30:25
**associated** 18:17
**ASSOCIATION** 1:4
**assume** 11:16,20 47:21
**assumed** 11:13 13:7 34:24
**assurance** 64:16
**attached** 50:12,19 50:23 51:9 52:2 52:17,24 53:19,21 54:5,14,18,24 72:7
**attorney** 3:20 10:22 10:23 14:22 15:8 23:13 24:4 35:22 36:10,11,19,23 38:24 39:10 41:25 48:7 52:6,10 53:3 56:14 57:9,22
**attorneys** 14:25 36:2 37:6 38:14 39:4
**attorney/client** 33:21 36:11 57:9
**August** 21:4 23:5 34:11,19 47:13 71:14
**authority** 63:5
**availability** 26:8
**Avenue** 1:17
**average** 46:20 48:4 68:12
**averaging** 48:6
**aware** 32:3 34:4
**a.m** 1:18 70:18

## B

**B** 1:19 71:8 73:10
**back** 15:7 36:16 39:8,10 47:9,13 55:5 56:11,13,14 56:22,25 59:13
**background** 8:11
**balance** 59:19
**balances** 67:22
**BANK** 1:9
**bankruptcy** 15:17 31:24
**based** 37:16 38:19 58:23 66:9
**basic** 48:10
**basically** 17:21,22 27:4
**becoming** 17:24
**began** 8:16 9:9 10:2
**behalf** 4:9
**BELDECOS** 1:16
**belief** 72:5
**believe** 4:6 9:10 17:2 19:15 26:13 31:24 47:18 48:5 51:18
**benefit** 50:24
**BERGER** 1:16
**Berkowitz** 1:19 73:10
**best** 72:5
**bfleischer@fleisch...** 2:6
**bid** 12:13,24 13:2,10
**bidding** 12:2,22
**bids** 12:4,5
**blanks** 15:2
**borrower** 33:3 61:23
**borrower's** 63:4
**bottom** 25:14 69:3
**Box** 2:10
**Bradbury** 1:6 2:13 3:25 53:12 64:23
**breach** 51:20
**break** 23:12 57:15 68:21,22
**breaking** 59:25
**Brian** 2:3 6:15 57:16
**bridge** 4:14
**brief** 23:12 57:15
**bring** 39:7 46:16,19 48:14
**brings** 47:23
**BRI-RE-09-65** 1:4
**broad** 35:16

**broad-based** 27:5
**brought** 48:4 50:7
**bulk** 24:6
**business** 27:12 35:5 38:21 54:4

## C

**calculate** 12:4,5,13
**calculation** 11:4
**call** 14:2 18:9 27:15 27:18
**called** 12:17 18:11 35:24 36:3
**calls** 29:8
**capacity** 16:7 20:3,9 20:19 27:19 30:21
**Capital** 9:3,12
**carry** 10:14
**case** 3:24 4:5,12 7:18 10:23 21:4 27:7,8 45:25 53:17 58:3
**cases** 5:5,6,8,10,13
**cash** 19:16,18 29:16
**category** 10:12 15:18
**CDs** 15:19
**CERTIFICATE** 73:2
**certification** 3:7 73:18
**CERTIFY** 73:3
**certifying** 73:22
**change** 29:2,5
**changed** 34:18,23
**charge** 15:6
**charges** 59:21 61:16
**check** 54:13,17 58:6 58:14 68:5,9
**checking** 64:23
**claiming** 67:6
**clarification** 60:23
**clarify** 60:24
**cleaner** 8:7
**clear** 65:20
**clearly** 49:15
**client** 52:10
**close** 33:13 56:24
**closer** 7:4
**collections** 8:21
**come** 21:17,21 24:17 35:8 38:23
**comes** 41:3 50:11 52:7
**coming** 48:7 58:16
**commencing** 1:18
**Commonwealth**

1:21
**communicate** 57:8
**communicates** 37:3 37:5 41:24
**communication** 35:25 36:9,22 37:17 38:13 41:20 52:9 55:20 56:5 57:10 60:21 61:2
**companies** 8:23
**company** 26:7,8,16 28:15 36:24 38:9 38:12
**compare** 59:18
**compensation** 63:25 64:5
**Complaint** 6:15 50:5,12
**complete** 72:4
**completed** 14:25 15:4
**computer** 14:20 18:6 20:6 27:16 59:10 60:3,6,14 60:20,25 61:10,19 69:19 70:3
**concluded** 70:18
**confirm** 18:2 33:6
**conjunction** 16:13
**connected** 50:6,12 51:21
**contacting** 10:22
**contained** 62:15
**containing** 66:15 67:5,15
**contains** 62:25
**content** 42:3
**contents** 44:17
**contested** 33:4
**Conti** 9:5
**ContiMortgage** 9:2 9:8
**continue** 57:11
**control** 25:16 69:5 69:21 70:2 73:21
**conveying** 11:7
**copies** 23:21
**copy** 10:25 51:3,11 52:16 53:19
**correct** 5:2,25 9:16 9:17 12:15 13:6 14:7,8 17:16,17 23:7 24:24 25:2,3 28:2,5,6 29:17,21 29:22,25 30:2 38:10 40:24 41:4 41:5,8,9 43:15,16

12-12020-mg   Doc 2871-3   Filed 02/08/13   Entered 02/08/13 15:14:18   Exhibit C-1:
Stephan Depositon of Jeffrey Stephan in FNMA v. Bradbury   et al.   Pg 22 of 26

2

43:19,20 44:3,4,6
44:7,13,14 45:11
45:20,21 46:18
47:25 48:2,19,20
50:17,20 52:16
53:18 56:17 57:24
57:25 58:7,16
59:12 60:2 61:7
61:16,17 62:10
63:6,12,17 66:10
66:16 67:4,7,8,11
67:22,25 68:2,3,4
68:8 69:8 70:7,8
72:4
corrections 72:6,7
correctly 18:3
counsel 2:7,12,19
3:6 41:21 42:20
42:22 44:10
count 48:16
counting 19:5
country 28:21 31:21
course 7:7 43:8
55:16
court 1:2 6:5
covers 31:4
Cox 2:9,10 3:20 4:2
4:10,18 7:14 8:9
10:16 11:9 12:10
14:15 16:10 19:10
20:18 21:12,18
22:2,9,14,22,24
23:17 24:10,19
26:2 27:11 28:11
30:4,20 32:24
33:19,23 35:17
36:15,20 37:7,14
38:2,6 39:17 40:2
40:9,16 41:18
42:2,5,17,25
43:12 44:12 45:4
45:16,19,25 46:6
46:8 49:6,18,21
50:9 51:4,10,24
52:12 53:4,15,23
54:11 55:10,19,24
56:3,6 57:19
58:12 59:3 60:4
60:12,24 61:4
62:22 63:16 65:21
65:22 66:6,8,20
66:25 68:16,20,25
69:17,25 70:9
71:4
cross 4:13
cubicle 46:14,15
CUMBERLAND

1:2
custodians 26:15
custody 25:16 69:5
69:9
customer 19:14,15
19:21 27:15 29:8
29:17
customers 27:18
29:13
C-O-N-T-E 9:5
C-O-N-T-I 9:6

D

D 1:13 3:13 71:2
dangerously 33:12
data 20:5 28:4 30:6
30:12
date 1:19 34:20
67:17,21
dated 21:4 23:5
73:12
day 47:22 48:5,9
72:18
days 17:7
day-to-day 10:9
deal 24:13
debate 21:19
December 5:24 45:7
46:24 47:9,20
57:22 58:21
decrease 47:8
deeds 31:2
defendant 1:7 2:12
4:11
degree 8:12
demand 51:19
denied 3:20
department 9:21,24
11:19,22,24 12:17
13:23 14:5 19:11
19:21,24 26:6
28:7,12,16,18,22
29:16,19 34:14,18
40:20,23 41:2,7
46:12 54:17 55:12
58:5,13 64:6,16
departments 11:8
28:24,25
deposed 5:9,23
deposition 1:13 3:23
5:3,15 6:3,3,9,13
7:15,17,19,20,23
21:2,11 22:25
23:23 32:10 33:9
34:11 35:9 38:16
38:22 43:13 44:9
45:6 46:24 50:16

50:18 56:21 57:21
58:21 64:25 66:12
70:17 72:3 73:5
describe 38:20
described 63:8,22
66:16
description 31:16
34:22 71:11
designated 15:8
details 37:4 53:9
different 14:6 31:16
difficulty 7:2
direct 41:20 73:21
directed 6:19
discuss 57:15
DISTRICT 1:2,2
DITECH 1:8
DIVISION 1:2
DOCKET 1:4
document 3:2 13:13
13:21 14:9,17,18
15:7,25 16:8,15
19:3 20:4,10,20
23:3,9 24:9,14,23
27:20 30:22 31:18
31:22,25 32:3
34:13,18 35:3,6
41:3,11,14 42:10
42:14,18 43:7
44:20,22,23,24
48:19 49:2,14,23
52:5 53:2,21
55:14 56:4
documents 6:8,11
11:2 14:20,23
15:2 16:22 17:15
17:19,23 20:13,23
23:22 24:3 30:23
30:24 31:19 37:22
39:13,19 40:11,18
46:17,22,25 47:10
47:14,24 48:12,12
48:23 49:24 51:21
57:23 64:2,6
doing 7:8 12:21
doubting 51:7
DRUMMOND 2:16
2:16
due 33:7 67:6,16,21
67:22
duly 3:14 73:4
duties 10:7,13 11:20
19:4 34:17
duty 31:12
d/b/a 1:8

E

E 71:2,8
educational 8:10
efficient 23:25
effort 23:24
either 15:21 26:14
electronic 69:15
employee 41:6,11
47:23 48:18
employees 15:24
24:22 41:19 45:7
46:16
ensure 15:3 57:23
62:9
ensures 30:11
ensuring 70:6
enter 26:23
entered 29:10 30:7
30:12
entertain 22:15
entire 28:15,20
entity 63:6
entries 26:18 27:7
28:23 29:2
entry 20:6 28:4 29:5
escrow 59:22,24
61:16
ESQUIRE 2:3,9,16
estimate 9:20 13:3
25:7 47:16
estimated 46:25
everyday 10:20
exactly 42:20
EXAMINATION
4:16
examined 3:15
exchange 22:3
Excuse 21:5
excused 70:15
execute 39:8,13,19
40:18 59:13
executed 34:11
execution 13:14,21
14:10,17,19 15:25
16:8,15 19:3 20:4
20:10,20 24:23
27:20 30:22 31:18
31:23,25 32:3
34:14,18 35:4,7
49:23 68:12
exhausted 31:13
exhibit 21:2,7 22:21
23:2 33:10 35:9
50:13
exhibits 21:10,20
22:11 50:19,22
51:8 52:2,23 54:5
54:8,14,18,24

Exhibit-A 51:2
52:17
Exhibit-B 51:15
Exhibit-C 51:16
Exhibit-D 51:18
Exhibit-1 3:2 25:14
32:10 34:11 38:17
38:23 43:13 44:9
50:16,18 52:14,23
56:21 64:25 66:12
69:4
exist 18:23 26:9,12
exists 39:25
Express 15:7
Expressed 39:10
extent 27:3 36:7
39:25 43:5
e-mail 11:3 24:5

F

fact 56:5 58:2
facts 53:8
fair 24:18 27:24
62:11,23
Fairbanks 9:2,12
fall 15:17
falls 13:20
Fannie 2:19 4:7
far 29:5 38:22
fashion 21:23
fax 11:3 24:5
Federal 1:3 15:7
39:9
fell 10:11
Fidelity 38:13
figures 11:4 14:24
39:3 58:18 59:12
62:5,10,14 63:2
file 10:21
filed 33:4
files 15:18 48:17
filing 3:7
fill 15:2
filling 39:6
fine 7:9 22:9 27:9
35:14 40:6 65:21
finish 8:5 12:9
first 9:4 25:15 41:2
44:2 59:9 61:6
firsthand 29:23
Fiserv 18:12 26:7,19
27:14 31:15 39:8
59:11 61:8,9 65:4
70:3
five 68:18,22
Fleischer 2:3,4,4 4:2
4:6 6:18 7:5 8:4

C - 1 - 22

12-12020-mg  Doc 2871-3  Filed 02/08/13  Entered 02/08/13 15:14:18  Exhibit C-1:
Stephan Depositon of Jeffrey Stephan  in FNMA v. Bradbury  et al.  Pg 23 of 26

3

12:8 14:11 20:14
23:13 24:4,12
28:9 32:22 45:22
46:3 57:16 58:8
62:16 63:13 65:16
69:23 70:11
**FLITTER** 1:15
**Florida** 5:18,24 45:6
45:25 46:24 57:21
58:21
**FNMA** 3:24
**folder** 48:19
**folders** 48:15
**follow** 64:9
**follows** 3:15
**foreclosure** 8:25
10:5.11 11:11,19
11:21 12:7,14,16
13:23 14:4 15:16
15:18 20:11,21
26:6 31:10 32:17
34:2
**foreclosures** 8:22
9:25 31:19
**foregoing** 72:2
73:18
**form** 3:9 8:19 10:15
11:3,3 14:12 16:9
19:9 20:15 25:23
26:25 28:10 30:19
32:23 40:13 42:21
54:9 55:9 58:9
59:2 62:17,19
63:14 66:18 68:15
69:13,24
**Fort** 9:15
**forth** 63:2
**four** 51:21
**four-year** 8:12
**front** 24:14 32:9
50:25 53:16 64:24
66:12
**full** 4:20
**function** 16:6
**functions** 14:7,16,18
**further** 70:9
**furthermore** 27:2
**fuzzy** 7:10
**F-I-S-E-R-V** 18:12

**G**
**G** 2:16
**gather** 23:17
**general** 31:5,16 49:9
59:11,15,23
**gentleman** 17:2,20
**getting** 33:12,20

**given** 12:14 34:5
47:22 72:3 73:6
**GMAC** 1:8 2:7,19
4:8,10 8:15,16,20
9:3,14 10:3 11:12
11:23 12:13 16:6
16:12 17:4 18:24
20:7,12 25:5,19
26:3,10 29:11
30:11,15 31:13,23
36:10 63:25 64:12
64:15 69:10 70:5
**GMAC's** 4:9
**go** 8:14 22:4 29:6
36:15 45:8,17
56:8,23 61:5,9
**goes** 40:5 49:13
55:18,19
**going** 12:13 13:3
20:25 21:8,13,18
21:22 22:2,7,14
22:16,17,20 24:6
24:8 25:7 36:5
37:9 47:3,21
49:11 57:4 63:14
**grounds** 37:10
**group** 14:6 47:23
48:4

**H**
**H** 71:8
**hand** 20:25 39:8
59:13
**handed** 22:25 48:11
56:11,13
**handle** 63:11
**handles** 15:16
**handling** 10:10,23
34:25
**hands** 17:16 42:12
44:18 56:11
**happens** 42:4 55:11
55:14
**happy** 18:9 22:6
**head** 68:19
**hear** 39:16 45:15
60:10
**heard** 49:19
**hearing** 7:2
**held** 1:15 13:10
**help** 12:12
**hereon** 72:6
**hereto** 52:17
**herewith** 72:8
**hired** 18:15
**history** 8:18
**hold** 11:10

**honestly** 18:25
**housed** 26:13

**I**
**idea** 21:12,21,25
**identification** 3:3
**included** 67:17
**including** 16:3,4
**incredibly** 27:5
**independent** 58:6
58:14
**individual** 39:10
48:15
**individuals** 12:3
**information** 10:25
45:9,18 58:15
62:25 65:13,24
**initially** 44:10
**input** 39:5
**inspect** 54:23
**instruct** 16:21 57:4
**instructing** 43:2,4
**integrity** 30:16
**intend** 23:22
**intent** 22:11
**interest** 19:3 33:20
61:15
**interests** 59:20
**interrupt** 6:25 36:6
57:3
**introduce** 22:11
23:23
**introducing** 21:8
**involve** 10:8
**involved** 10:9 17:14
26:16
**involves** 53:11
**Iowa** 15:15 26:14
**issues** 4:12

**J**
**Jeff** 36:5 45:3 50:3
53:13 57:4
**Jeffrey** 1:13 3:13
4:21 71:3 72:12
**Jersey** 2:5 5:19
**job** 34:22
**JPitney@ddlaw.c...**
2:18
**judge** 34:5,8
**judgment** 31:9 32:8
32:14,16,20 33:7
33:25 35:8 48:22
49:15,23 51:5,23
54:13,23 56:8,20
59:7 60:7,15
61:11,20,25 62:7

**62:**12,24 63:9,10
63:19 64:10 65:14
66:2,11 67:3 68:6
68:13 69:11
**judgments** 11:5
58:15
**judicial** 31:10 32:17
34:2
**Julia** 2:16 4:3 7:6
21:6,14 23:19
49:19 51:4 70:12
**June** 1:11 4:23 72:3
73:12

**K**
**keep** 26:5 29:11
39:12,18 40:10,20
**keeps** 39:22 40:4,17
**Kenneth** 17:3
**kind** 5:10 26:22
27:22
**kinds** 10:7.13 30:23
31:7
**knew** 17:22
**know** 7:6 18:25
28:12,16,22,25
29:14 35:18 37:16
37:21 40:17 45:24
47:17 51:8 54:10
55:22 56:2 62:13
62:25 64:19 66:3
66:7,13 67:9,23
**knowledge** 29:18,24
30:5,9,10,14 32:5
32:19 33:3,24
54:2 58:23 72:5

**L**
**language** 13:22
**large** 24:2
**late** 59:21 61:15
**law** 1:15 2:10
**lawyer** 41:4 42:11
**lawyers** 37:18
**LAWYER'S** 74:2
**lead** 11:18,21 12:2
13:13,18 16:7,14
16:20 17:24 19:2
20:4,10,20 27:19
30:22 34:13,17
35:6
**learning** 17:14
**left** 9:10
**letter** 51:20
**let's** 17:25 36:15
**liberal** 8:13
**limited** 24:25 25:5,9

43:18
**line** 69:3
**lines** 72:7
**list** 15:13 72:7
**litigation** 33:16,16
33:18 39:24 41:15
42:15 43:9 44:25
45:23 49:3,16
55:16
**little** 7:2,4,9
**live** 4:24
**LLC** 1:8
**LLC.COM** 1:8
**load** 36:2 38:24
**loaded** 39:3
**loan** 19:6 29:12
48:24 53:10 65:3
65:7,12,18,23,25
**loans** 10:11 15:13
15:17,20,21 26:4
**located** 15:15 28:19
**log** 39:12,18,21 40:4
40:5,8,10,18,21
**long** 11:10 12:25
17:5 25:4 68:11
**longer** 17:4
**look** 7:15 52:14
59:20,21 60:6,14
61:15,19 62:5,6
65:5
**looked** 6:13,22
**looking** 18:3 51:14
51:19 52:18 59:24
**looks** 60:2
**lost** 31:14
**louder** 7:12
**LPS** 35:24 36:21,24
37:8,16,21 38:7
38:25 41:3,22
42:8,10,19 56:23
57:7
**LUNDY** 1:15

**M**
**M** 1:6 2:3,13
**Mae** 2:19 4:8
**Main** 2:4
**Maine** 1:2 2:11,17
32:21
**maintain** 35:20 26:4
28:17
**maintains** 28:7,13
28:17
**making** 15:6 26:18
27:14
**management** 15:14
**manner** 34:16,23
**manuals** 17:9 18:16

12-12020-mg    Doc 2871-3    Filed 02/08/13    Entered 02/08/13 15:14:18    Exhibit C-1:
Stephan Depositon of Jeffrey Stephan  in FNMA v. Bradbury    et al.    Pg 24 of 26

4

18:20
marked 3:2 21:2
materials 17:9
   18:17
matters 10:14
mean 29:7 33:14
   41:12 50:12 57:3
   59:16,23 67:13
   69:19
means 37:3,4 57:7
   73:20
measures 30:15
members 38:25 39:2
   48:16 59:8
memory 23:8 38:15
   64:22
mentioned 38:7
military 31:11
Minnesota 26:15
minute 22:5
minutes 68:18,22
mitigation 31:14
modification 65:7
   65:18,24,25
modified 65:3,6.12
   65:17
moments 32:7
month 46:21 47:2,4
   47:7,11,14
months 5:17 13:4
Monument 2:17
mortgage 1:4,8 8:22
   8:24 9:15 10:3
   12:6 25:6,17,20
   26:4,10 29:12
   30:25 51:16,17
   63:25 64:13 69:6
Motion 32:13
movement 56:4

N
N 1:16 71:2
name 4:20 9:23 17:2
   18:10 38:12 39:6
   43:14,17,25 53:12
   63:5
names 5:12 15:3
Narberth 1:16,17
NATIONAL 1:3
necessarily 56:2
need 10:25 31:3
needed 11:2
needs 35:22
neither 4:10
network 14:22 15:9
   35:22 36:23 39:4
   48:8 56:14 57:23

never 64:21
new 2:5 5:19 11:14
   13:7 15:19,22
   48:6
Nicole 1:6 2:13
   53:12
NINE 1:2
NORTHERN 1:2
notaries 40:19,22
notarization 56:12
notarize 40:21
notarized 39:9
   59:14
notary 1:21 15:4,5
   44:6 56:12,17,22
   72:23 73:11
note 27:16 29:6 51:3
   51:17 53:19
noted 24:11 72:6
notes 26:20,22
   27:14,23,25 31:15
   74:2
notice 1:14 7:19,21
number 9:20 21:3
   23:2 24:3 33:10
   35:9 47:19
numbers 47:4,6
   64:23 66:15 67:5
   67:15,20 68:5
numerous 28:24
   31:2

O
object 10:15 16:9
   19:8 22:21 23:20
   24:7 25:22 26:24
   30:3,18 37:10
   40:12 49:11 54:9
   55:8 63:14 66:17
   68:14
objecting 26:25
   27:3
objection 14:11
   20:14 24:10 28:9
   32:22 33:11 35:11
   37:2,11,24,25
   39:20 41:13,23
   42:13,23,24 43:2
   44:11,19 48:25
   49:25 52:4,25
   55:13,17 57:2
   58:8,25 59:17
   62:16,18 65:16
   69:12,23
objections 3:9 22:16
office 9:15,19 18:23
   26:14 46:13

officer 25:2,5 43:18
officers 25:10
offices 1:15 2:10
Okay 7:5 37:13
old 4:22
once 15:4 29:9 44:2
operates 29:24
opposing 22:13
options 31:13
Oral 1:13
order 38:13
outside 41:4,20
   42:11,19,21 44:10
outstanding 59:22

P
page 25:15 44:2,3,6
   69:3 71:11
paper 26:9 29:11
papers 69:16
paragraph 52:14,19
   62:2 66:15 67:5
   67:14
Pardon 55:24
part 12:22 17:10
   60:10 63:24 64:4
   67:10,13,23
participate 21:22
participating 21:13
particular 43:24
   66:22
Parties 1:9
party 22:13
payments 19:6 20:7
   29:12,16,17 30:7
pending 23:14
   57:14
Penn 8:13
Pennsylvania 1:17
   1:22 4:25 9:16
penny 59:25
people 9:19,21,22
   25:10,13
perform 34:17
performance 16:14
period 9:7 34:19
person 16:24,25
personal 58:23
pertinent 55:6
phone 7:3
physical 46:10 56:3
physically 48:11
pile 48:11
Pitney 2:16 3:17 4:3
   4:7 6:24 7:8,13
   10:15,18 16:9
   19:8 21:5,15,24

22:7,10,20 23:11
   23:20 24:18 25:22
   26:24 30:3,18
   33:11 35:11 36:5
   36:17 37:2,9,24
   39:14,20 40:6,12
   41:13,23 42:13,23
   43:4 44:11,19
   45:12 48:25 49:8
   49:25 50:21 51:6
   51:12 52:4,25
   53:6 54:9 55:2,8
   55:13,22,25 57:2
   58:25 59:17 60:9
   60:19,25 62:18
   66:4,17 68:14
   69:12 70:14
place 11:25 35:21
plaintiff 1:4 4:4,11
   21:16
Plaintiff's 32:13
plan 21:10
Plaza 2:4
please 4:20 25:24
   32:25 37:19 40:14
   42:7 45:13 50:22
   52:14 53:24 55:5
   62:20 67:12 68:16
point 24:15
policies 64:11
portfolio 10:10,24
portion 55:7 66:14
Portland 2:11,17
position 10:3 11:11
   11:14,16 12:12
   13:7,9,12 17:24
   34:13
possession 18:21
post 11:8 31:3
practice 27:13 35:6
   38:21 51:25 54:5
   63:7,9,18,20 67:2
preparation 33:15
   33:17 39:24 42:14
   44:24
prepare 6:9 15:18
   39:2
prepared 33:15
   39:23 41:14,16
   43:7 44:10,21,25
   49:2,15 52:6
prepares 14:23
   41:11
preparing 17:23
   49:4,13
present 13:12 34:20
presented 42:20

54:19
Presently 18:22
   64:17
preserve 30:15
presume 21:6
pretty 27:10
previously 5:4
principal 59:19
   61:15
print 39:2
printed 17:9
prints 14:20 41:7
prior 17:23
privilege 33:21
   36:12 37:10 43:10
privileged 33:13
   37:6 41:15,16,25
   42:15 45:2 49:5
   49:17 52:9 53:3
   55:18,21 57:10
problem 7:7
procedures 49:10
   64:12
process 20:12,22
   32:17 33:6 35:21
   36:3 56:24 64:9
   68:12
processed 17:15
   37:22
processes 64:6
produce 21:10
produced 22:12
product 39:21
Professional 1:20
   73:11
proper 11:7
properly 11:6 15:4
properties 11:7
proposal 23:25
propose 24:3
protected 43:9
   49:17
provided 23:21 53:2
provides 31:19
Public 1:21 72:23
   73:11
pursuant 1:14
push 7:3
put 3:18 11:25
   65:13
puts 43:21
P.C 1:16 2:4
P.O 2:10

Q
quality 64:15
question 8:5 10:19

C. 1-24

12-12020-mg    Doc 2871-3    Filed 02/08/13    Entered 02/08/13 15:14:18    Exhibit C-1:
Stephan Deposition of Jeffrey Stephan  in FNMA v. Bradbury    et al.    Pg 25 of 26

5

12:9 16:11 19:9
20:15 23:14 27:2
27:5,10 30:19
33:2,22 36:16,18
37:12,20 39:15
40:3,13 41:17
42:7,16 45:3
49:19 50:2 52:11
53:5,14,25 55:3
56:7 57:12,14
62:19 63:15 66:23
**questions** 3:10
22:18 43:6,11
44:22 70:10
**quickly** 58:17
**quote** 45:8,16

**R**

**range** 47:10
**reaches** 42:11 44:18
**read** 55:4,7 61:25
62:4 72:2
**recall** 45:5 46:23
47:3 54:3 57:20
58:20,24 59:4,5
64:20 65:2 66:21
**receipt** 19:5
**receive** 48:21 49:22
57:24 59:6 61:24
**received** 14:24 16:6
16:12,18,19,22
18:13 20:7 21:9
32:15 42:19,21
64:21
**receives** 15:13 29:16
56:21
**receiving** 38:16
**recess** 23:15 57:17
68:23
**recollection** 5:9 72:5
**record** 3:18 4:19
21:19 22:3,5,8,19
23:19 29:12 55:7
69:15 73:5
**records** 25:16,19
26:3,5,9 58:7 69:5
69:10
**refer** 18:5
**reference** 31:12
45:23 46:4
**referenced** 25:17
69:6
**referred** 32:6
**referring** 7:25 18:6
32:8 50:16 69:2
**regard** 6:20 45:7
**regarding** 20:6

32:16
**Registered** 1:20
73:11
**rehash** 17:25
**relating** 25:16 30:6
48:24 69:5
**relative** 39:22
**relies** 34:8
**rely** 57:22
**remember** 5:11
**remind** 53:11
**repeat** 39:15 45:13
55:3
**rephrase** 14:14
20:17 25:25 33:22
37:19 40:15 58:11
62:21
**reporter** 1:20 73:11
73:23
**reporting** 11:5
**represent** 4:5 21:16
**represents** 4:4,7
**reproduction** 73:20
**request** 3:21
**requested** 3:19
**requesting** 56:15
**requests** 48:7
**required** 36:4 64:12
**reserved** 3:10
**respect** 10:14 17:19
19:4 25:20 26:4
27:8,13 37:22
**respond** 8:6 22:15
22:18
**responsibilities**
26:18
**responsibility** 19:12
20:5 34:24 35:3
**responsible** 70:6
**rest** 26:6
**restate** 16:11 66:24
**results** 11:5
**retraining** 18:2
**returned** 15:5
**review** 6:8,12 16:21
17:14,21 39:7
52:8 58:17 59:9
59:16,19 61:22
67:16
**reviewing** 31:14
**right** 7:20 22:8,22
36:6 38:8
**role** 12:12 19:2
20:11,21 28:3
**roughly** 13:5 47:14
48:3
**routine** 27:13

**S**

S 71:8
**sale** 11:5,8 12:14
31:3
**sales** 12:4,5,7
**saying** 60:2
**says** 25:15 53:18
62:13
**sealing** 3:7
**second** 60:19
**security** 28:17 30:16
**see** 21:21 52:15,19
54:13,17
**segregated** 11:24
**Sellersville** 4:24
**send** 56:13
**sent** 6:14 24:9 56:25
**separate** 36:24 38:9
72:8
**separately** 23:13
**September** 8:17
**serve** 12:25 61:6
**service** 13:15 15:10
15:12,15,23 19:14
19:15,21 34:25
**servicer** 15:20,22
**servicing** 10:10,21
**set** 63:2
**sheet** 72:8
**short** 23:15 57:17
68:23
**shortly** 46:7
**show** 65:4,10
**sic** 9:5 61:6
**side-by-side** 16:19
**sign** 30:23,25 31:6,8
31:9,11,12 40:11
46:17 47:24 52:3
52:22 54:6,12,22
55:12 56:8,10
58:22 60:15 61:25
62:7,12,24 64:2
65:14 66:2,11
67:9,24 68:7
**signature** 23:4 36:3
44:3 54:20
**signed** 23:3 48:22
53:22 69:11
**signing** 20:12,22
23:9 25:2,5,10
43:18 47:10,15,20
60:7 61:11,20
63:5,8,10 64:10
66:22 67:2
**similar** 32:11
**single** 68:6,9
**six** 13:3 40:20 46:22

**slightest** 33:20
**sorry** 6:24 37:19
39:14 45:12 57:3
60:9
**sort** 39:13,19
**sound** 13:5
**sounds** 48:10
**source** 37:15
**space** 46:10
**span** 31:5
**speak** 23:12
**specialist** 10:6 11:11
**specific** 35:13,19
**specifically** 38:16
43:8
**spoke** 6:20
**staff** 14:19,22 15:6
16:23 56:11,11,13
56:19 59:7,13
**stamp** 15:3 43:14,21
**stamped** 43:14,25
44:5
**state** 4:20 8:13
32:21 49:20
**stated** 44:23
**statement** 52:15,20
**states** 31:20 32:12
32:17 34:2 69:4
**stating** 56:24 65:7
**stay** 22:8
**step** 33:5 41:2
**Stephan** 1:14 3:13
4:1,19,21 5:1 6:1
7:1,4 8:1 9:1 10:1
11:1 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
23:1,2 24:1,20
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1,20 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1,5
46:1 47:1 48:1
49:1 50:1 51:1
52:1,13 53:1 54:1
55:1 56:1 57:1,20
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1 66:1,10
67:1,3 68:1 69:1,2
70:1 71:3 72:12
**stipulated** 3:5
**stipulation** 3:19,21

3:22
**stop** 24:7,8
**Street** 2:4
**subdivisions** 13:25
**submitted** 14:21
42:10
**Subscribed** 72:17
**substitution** 31:3
**SUGLIA** 2:4
**Suite** 2:5
**summary** 8:19
32:14,16,20 33:7
33:25 35:7 48:21
49:14,22 51:5,22
54:12,22 56:8,20
58:15 59:6 60:7
60:15 61:11,20,24
62:7,12,24 63:8
63:10,19 64:10
65:13,25 66:11
67:3 68:6,13
69:11
**supervision** 73:22
**supervisor** 11:25
**supplying** 10:22
**support** 32:13 33:7
**sure** 9:4 15:6 53:13
65:19
**surprise** 21:17
**Susan** 1:19 73:10
**sweeping** 27:10
**swore** 53:18
**sworn** 3:14 72:17
73:4
**system** 14:21 17:22
18:4,5,6,10,11,14
18:18 20:6 26:7
26:19 27:14,17,24
27:25 28:4,8,13
28:14,17,23 29:3
29:5,9 30:7,12,16
31:15,23 35:24,25
36:21 38:11,25
39:8 41:3,22 42:8
42:10,19 45:9,17
56:23 57:7 59:10
60:3,6,14,21,21
61:2,6,10,19 65:4
69:22 70:3,7

**T**

T 71:8
**tac@gwi.net** 2:12
**take** 23:12 57:15
59:20 68:11,20,22
**taken** 1:14 5:4,15
23:16 57:18 68:24

C-1-25

12-12020-mg    Doc 2871-3    Filed 02/08/13    Entered 02/08/13 15:14:18    Exhibit C-1:
Stephan Depositon of Jeffrey Stephan  in FNMA v. Bradbury    et al.    Pg 26 of 26

6

takes 30:15
talk 7:11 13:22
talking 60:20 65:17
team 11:18,21 12:2
  12:2,3,24 13:2,11
  13:13,14,18,21
  14:10,17,19,23
  15:11,12,14,16,25
  16:7,8,14,15,20
  17:24 19:2,3 20:3
  20:4,9,10,19,20
  24:23 25:11 27:19
  27:20 30:21,22
  31:18,25 32:3
  34:13,17 35:2,6,7
  38:25 39:4 43:23
  44:15 46:10 48:16
  48:18
teams 11:24 14:2,3
  14:6 31:23
TELEPHONE 2:15
tell 50:22
telling 49:6 53:4
term 65:18
terms 59:11,15,23
testified 3:15 6:5
  24:21 46:2 57:6
  61:14 66:21
testify 61:5
testifying 45:6
  46:23 57:21 58:20
testimony 17:13
  66:9 71:3 73:6
Thank 7:13 8:8
thing 60:17 61:22
things 18:3 23:24
think 29:15 49:18
third 5:7 6:3,4
THOMAS 2:9,10
thought 46:4
three 5:17 11:12
  17:7
Thursday 6:17
tied 63:25 64:5
time 3:11 5:7,14 9:7
  11:6,23 12:23
  16:25 24:8 34:10
  34:12,23,25 46:20
  52:3 53:22 54:18
  60:15 61:10 69:10
times 50:5,6,11
title 24:25 43:25
today 4:5 6:4 21:11
  21:14
Tom 21:5 22:8 27:6
  33:12 35:12 39:15
  41:25 45:13,22

49:8 51:14 53:7
  55:3 61:2 66:18
tool 36:2,22
top 68:18
trained 17:18
training 16:5,12,17
  16:20 17:5,9,10
  17:13 18:14,17,18
  19:24 32:16 64:16
transaction 25:17
  69:6
transactions 25:21
transcript 3:23 7:23
  8:7 72:2 73:19
transfer 13:16
  15:11,12,14,15,19
  35:2
transferred 15:22
trial 3:11
true 52:16 53:18
  66:14 67:11,24
  72:4 73:5
trustees 31:4
twice 44:2
two 5:16 25:7
type 29:9,10 32:9,11
  39:21 56:15
types 30:24 31:2,16

**U**

Ugwuadu 17:3
understand 4:3
  12:11 17:12 24:2
  33:8 34:7 37:20
  38:5 40:25 44:8
  47:23
understanding
  19:13 64:8
unit 12:22 13:16
  19:16,18,24 31:25
  37:23 38:21
units 12:19 14:2
University 8:13
upload 35:23
use 16:13 18:14
  63:10,18,20
usual 26:20,22
  27:12,14 35:5
  38:20 51:25 54:4
U-G-W-U-A-D-U
  17:3

**V**

V 1:5
variety 31:6
verify 44:16 45:9,17
  59:11

verifying 31:11
  51:13
versus 3:24
volume 64:2,5
Voorhees 2:5

**W**

waived 3:8
want 22:4 23:18
  27:6 49:9,12
  65:19
Washington 9:15
way 2:17 7:3 34:19
  35:15
Wednesday 6:17
welcome 21:20
went 6:14 8:19
we'll 4:13 24:16
we're 21:18 22:7
  24:6 46:11 51:18
  65:19 70:11
witness 6:6,16,23
  7:11 8:8 10:20
  14:13 20:16 25:24
  36:13 37:13 38:4
  40:7,14 50:4 51:2
  51:15 54:10 58:10
  59:18 62:20 66:7
  68:17 69:14 70:15
  73:3,6
woman 53:11
words 43:18
work 8:14,16,18,20
  8:25 9:8,12,14,19
  12:22 19:25 39:21
  46:10 48:13
worked 19:17,20
  29:20
working 10:2,4
  13:10
written 17:8

**X**

X 71:2,8

**Y**

year 13:4
years 9:11 11:12
  25:8

**1**

1 21:3 23:2 33:10
  35:10 69:3 71:13
10 68:18
10,000 46:25 47:10
10:10 1:18
100 48:12
1000 2:4
11:45 70:18
1315 2:10
14 16:2 24:22 25:10
  25:12
14-person 46:9
15 16:4
19072 1:17

**2**

2004 10:3
2007 11:14,17
2008 13:6
2009 5:24 21:4 23:6
  34:12,20 47:13
  71:14
2010 1:11 5:21 72:3
  72:19 73:12
207 2:11,18
208 2:5

**3**

3 52:14,19 71:13
30th 8:17
300 48:12

**4**

4 71:4
400 48:6,9
41 4:23
450 1:16
489-8977 2:6

**5**

5 21:4 23:5 34:12,19
  71:14
50 9:22

**6**

60 9:22

**7**

7 1:11 72:3
749-6671 2:11
774-0317 2:18

**8**

8,000 46:22
856 2:6

**9**

9 73:12
92 9:9
98 9:10,13

**0**

04 8:17 9:13
04101 2:17
04104 2:5
08043 2:5

**1**

C-1-26