**Hearing Date and Time:  February 28, 2013 at 2:00 p.m. (ET)**

**POLSINELLI SHUGHART**
Daniel J. Flanigan, Esq.
805 Third Avenue, Suite 2020
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for Class Claimants*

**WALTERS, BENDER,
STROHBEHN & VAUGHAN**
David M. Skeens, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Class Claimants*

**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq.
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Class Claimants*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | **Case No. 12-12020 (MG)** |
| **Debtors.** | **(Jointly Administered)** |

**REPLY TO DEBTORS' OBJECTION TO CLASS CERTIFICATION
MOTION TO APPLY BANKRUPTCY RULE 7023
AND TO CERTIFY CLASS CLAIMS**

The compensatory function is as important inside bankruptcy as outside. Under § 101(4)(A) there may be "claims" of uncertain value, and holders of contingent claims—such as the policyholders—may not recognize their entitlement to file unless some champion appears. The representative (presumably) has done substantial investigation to identify and shape the claim. Even though there is no fee to file claims in bankruptcy, the opportunity costs of the time needed to investigate and decide whether to file may be substantial, especially because Bankruptcy Rule 9011(a) (a parallel to FED. R. CIV. P. 11) requires every claimant to investigate the facts and do necessary legal research before filing. The combination of contingent claims (which many people may not identify as something they are entitled to pursue) and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing.

In re Am. Reserve Corp., 840 F.2d 487, 489 (7th Cir. 1988).

[T]he bankruptcy statute has the goal of facilitating creditor compensation. It would be incongruous for this bedrock policy to be thwarted by reading a procedural limitation into the Code. Bankruptcy also seeks to achieve equitable distribution of the estate. Persons holding small claims, who absent class procedures might not prosecute them, are no less creditors under the Code than someone with a large, easily filed claim. Applying Rule 23 to filing procedures will bring all claims forward, as contemplated by the Bankruptcy Code.

In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989).

Given that § 502(c)(1) specifically provides for the expeditious estimation of unliquidated contingent claims such as the class claims made in the case at hand, and bankruptcy courts are experienced in this procedure, there is no reason to think that permitting the filing of class claims will cause special delay or uncertainty in settling the debtor's estate. Even if this were not so, however, any potential marginal increase in delay or in difficulty of valuation of claims would be justified in order to protect the right of small claimants (who might not otherwise be aware of the existence of or be able to process their claims) to be represented by the filing of a class proof of claim.

In re Chateaugay Corp., 104 B.R. 626, 632 (S.D.N.Y. 1989).

The Class is also superior to other methods of resolving the controversy because individually adjudicating each of these substantially similar claims would be impractical and consume significant judicial resources . . . . Moreover, proceeding individually would likely be impractical for individual members because each holds a relatively small claim. In such circumstances, the class action device is frequently superior to individual actions.

In re BGI, Inc., 465 B.R. 365, 377 (Bankr. S.D.N.Y. 2012).

## TABLE OF CONTENTS

I.  **Rule 23 Requirements Are Met And The Class Is Eligible For Immediate Certification.** ....................... 1

    A.  *Community Bank I and II* ................................................................................................. 1

    B.  *Rule 23 Analysis Is Not More "Lenient" In The Case Of A Settlement Class Than A Litigation Class—The Opposite Is True.* .......................................................... 2

    C.  *The Third Circuit's Community Bank I and II Decisions And Second Circuit And SDNY Case Law, Including This Court's Recent BGI Decision, Overwhelmingly Support Immediate Certification.* ......................................................... 3

        Numerosity. ......................................................................................................4

        Commonality. ....................................................................................................4

        Typicality..........................................................................................................5

        Adequacy. .........................................................................................................6

        Predominance: The RESPA Claims....................................................................6

        Predominance:  TILA/HOEPA And Other Claims................................................7

    D.  *Alleged Intra-Class Conflict Related To Limitations Issues* ........................................... 9

    E.  *Class Members' Standing* ................................................................................................ 12

II.  **The Debtors Did Not Either Schedule These Creditors Or Send The Bar Date Notice To Them And Thus Have Treated The Putative Class As A Class, Not As Individuals.** .................................... 13

III.  **Superiority And "Gumming Up The Works":  For These Creditors It Is A "Class Action Or Nothing"; For The Debtors, Although They Cannot Afford To Admit It, It A Far More Convenient Form Of Adjudication Than Processing Potentially Thousands Of Individual Claims.** ........................................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

A.D. Alberton v. Commonwealth Land Title Ins. Co.,
264 F.R.D. 203 (E.D. Pa. 2010) .......................................................................................... 11

Bridge v. Phoenix Bond & Indem. Co.,
553 U.S. 639 (2008) .............................................................................................................. 9

Busby v. JRHBW Realty, Inc.,
513 F.3d 1314 (11th Cir. 2008) ............................................................................................ 8

De Milia v. Cybernetics Int'l Corp.,
15 Fed. R. Serv. 2d ............................................................................................................. 11

DePippo v. Kmart Corp.,
335 B.R. 290 (S.D.N.Y. 2005) ........................................................................................... 14

First Nat'l Bank of Council Bluffs, Iowa v. Office of Comptroller of Currency,
956 F.2d 1456 (8th Cir. 1992) .............................................................................................. 9

In re Am. Int'l Grp., Inc. Secs. Litig.,
689 F.3d 229 (2d Cir. 2012) ................................................................................................. 3

In re Arch Wireless,
332 B.R. 241 (Bankr. D. Mass. 2005), aff'd, 534 F.3d 76 (1st Cir. 2008) .................... 14, 15

In re BGI, Inc.,
476 B.R. 812 (Bankr. S.D.N.Y. 2012) ("**BGI II**") ...................................................... 3, 4, 14

In re Cmty. Bank of N. Va.,
418 F.3d 277 (3d Cir. 2005) ("**Community Bank I**") ................................................ passim

In re Cmty. Bank of N. Va.,
622 F.3d 275 (3d Cir. 2010) ("**Community Bank II**") ...................................... 1, 2, 9, 10

In re Drexel Burnham Lambert Grp. Inc.,
151 B.R. 674 (Bankr. S.D.N.Y. 1993), aff'd, 157 B.R. 532 (S.D.N.Y. 1993) .................. 14

In re Enron Corp.,
No. 01-16034 (AJG), 2006 WL 898031 (Bankr. S.D.N.Y. Mar. 29, 2006) ...................... 14

In re M3 Power Razor System Marketing & Sales Practice Litigation,
270 F.R.D. 45 (D. Mass. 2010) .......................................................................................... 12

In re Partsearch Techs., Inc.,
453 B.R. 84 (Bankr. S.D.N.Y. 2011) ("**Partsearch**") .................................................. 4, 5

i

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010)............................................................................................................. 3

*In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*,
   471 B.R. 331 (Bankr. S.D.N.Y. 2012)......................................................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................................................................ 9

*In re WorldCom, Inc. Secs. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ....................................................................................... 5, 6, 7, 11

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012), cert. denied, No. 12-578, 2013 WL 141194 (Jan. 14, 2013) ..................... 10

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004).................................................................................................... 9

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)...................................................................................................... 9

*Proctor v. Metro. Money Store Corp.*,
   645 F. Supp. 2d 464 (D. Md. 2009).......................................................................................... 12

*Prof'l Firefighters Ass'n of Omaha v. Zalewski*,
   678 F.3d 640 (8th Cir. 2012) ..................................................................................................... 11

*Steinberger v. Sullivan*,
   738 F. Supp. 716 (S.D.N.Y. 1990) ............................................................................................ 11

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................................................................... 5

*Sykes v. Mel Harris & Assocs., LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) .......................................................................................... 9, 12

*Walmart Stores, Inc. v. Dukes*,
   131 S.Ct 2541 (2011) ................................................................................................................. 5

*Weil v. Long Island Sav. Bank*,
   200 F.R.D. 164 (E.D.N.Y. 2001)................................................................................................. 8

**STATUTES**

15 U.S.C. § 1602(v) .......................................................................................................................... 9

15 U.S.C. § 1602(u) .......................................................................................................................... 9

15 U.S.C. §1606(c) ........................................................................................................................... 9

15 U.S.C. § 1640(a)(4) ................................................................................................. 9

15 U.S.C. § 1640(c) ...................................................................................................... 9

C.C.A.N. 1977, 1992 .................................................................................................... 9

### OTHER AUTHORITIES

12 C.F.R. § 226.4(c)(7) ................................................................................................ 8

12 C.F.R. § 226.22(a)(2) .............................................................................................. 9

12 C.F.R. § 226.23(a)(3) n.48 ...................................................................................... 9

12 C.F.R. § 226.32(c) ................................................................................................... 9

10 COLLIER ON BANKRUPTCY ¶ 7023.01 .................................................................... 3

Debtors, and only the Debtors ...................................................................................... 15

H.R. Conf. Rep. No. 652, 103rd .................................................................................... 9

*Order (i)* ....................................................................................................................... 15

**Rule 23** ................................................................................................................ passim

Rule 23(a) and (b) ......................................................................................................... 3

Rule 23(c)(2)(B) ............................................................................................................ 17

Rule 23(d) ...................................................................................................................... 10

Rule 7023 ................................................................................................................... 1, 4

Wall Street Journal ........................................................................................................ 14

## I.    Rule 23 Requirements Are Met And The Class Is Eligible For Immediate Certification.

### A.    Community Bank I and II

After twice arguing vociferously and at length to the Third Circuit that the claims at issue are paradigmatic class claims that easily satisfy Fed. R. Civ. P. 23—a proposition with which the Third Circuit agreed on both occasions—the Debtors now argue precisely the opposite position to this Court.[1]   Their dramatic but entirely misleading opening sentence states that "Movants are trying for a third time to achieve what has eluded proponents of class certification. . . for the last eleven years . . .," deviously omitting the fact that RFC was a primary "Movant" in the previous efforts to certify the settlement classes and that it was RFC who desperately tried to cling to the settlement even after the Third Circuit rejected the approval of the settlement for the second time.[1] It is not mere duplicity, however, that dooms the Debtors but the inescapable fact that the Third Circuit largely accepted Debtors' original position on certification.  The Third Circuit did so because the factual predicate of the claims at issue could not be more straightforward and susceptible to class proof in that the entities that received the overwhelming majority of the hundreds of millions of dollars in mortgage settlement fees generated from the scheme did not perform <u>any</u> settlement services in connection with those loans <u>and were in fact contractually precluded from providing any settlement services</u>.[2]  Therefore, it was unlawful for these entities to be paid from loan settlement proceeds. It is precisely because the claims are so simple that the Debtors attempted on two occasions to settle them for tens of millions of dollars.

Holding that the claims at issue satisfy the elements of Rule 23 (with one no longer applicable exception), the Third Circuit summarized its view regarding the propriety of class certification as follows:

---

[1]   <u>In re Cmty. Bank of N. Va.</u>, 622 F.3d 275, 284, 284-85, 291, 308 (3d Cir. 2010) ("**Community Bank  II**"); <u>see</u> <u>also</u> <u>In re Cmty. Bank of N. Va.</u>, 418 F.3d 277 (3d Cir. 2005) ("**Community Bank I**").  <u>See</u> <u>also</u> Suppl. Carlson Decl. at ¶s 39-47.

[2]   <u>See</u> Amended Complaint attached as Exhibit A to the Walters/Skeens/Carlson Declaration that was submitted in support of the Class Claimants' Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims; <u>see</u> <u>also</u> Suppl. Carlson Decl. at ¶s 8-15 and Ex. 2-9.

> With respect to the District Court's certification decision, we concluded that three of the four Rule 23(a) requirements-numerosity, typicality, and commonality-were met, as well as the Rule 23(b)(3) predominance and superiority requirements. (internal citation omitted) We expressed serious concerns, however, as to whether the adequacy requirement of Rule 23(a) could be met, specifically in the context of whether the named plaintiffs and class counsel were adequate representatives in light of their failure to assert colorable TILA/HOEPA claims . . . The sole disputed Rule 23 requirement in this case, as it was in <u>Community Bank I</u>, is adequacy of representation.

<u>Cmty. Bank II</u>, 622 F.3d at 284, 291.  Thus, the Third Circuit's <u>sole</u> concern regarding the propriety of class certification derived from the fact that the prior iteration of the claims that were asserted by the named plaintiffs did not include TILA/HOEPA claims:

> We again stress that we do not hold that class counsel are necessarily inadequate representatives for the class (or any subclass that is created).  We conclude, however, that class counsel's justifications for their decision not to plead TILA/HOEPA claims against the defendants on behalf of the class merits closer scrutiny.

<u>Id.</u> at 308.  This concern was eliminated in total when previously antagonistic counsel for the original named plaintiffs and objecting plaintiffs combined their efforts in the best interests of the class and—as co-counsel—filed a Joint Consolidated Amended Class Action Complaint that asserted the TILA/HOEPA claims.[3]

### B.    Rule 23 Analysis Is Not More "Lenient" In The Case Of A Settlement Class Than A Litigation Class—The Opposite Is True.

The Third Circuit rulings are entitled to great deference if not collateral estoppel effect.[4] Despite their prior and unconditional support of certification, the Debtors now seek to undermine the Third Circuit rulings by intimating throughout their objection that the Third Circuit's holdings in <u>Community Bank I</u> and <u>II</u> are not entitled to deference because compliance with Rule 23 is allegedly subject to a more lenient review in the context of a settlement class vs. a litigation class.  But precisely the opposite is true.  <u>See, e.g., In re Pet Food</u>

---

[3]  Supp. Carlson Decl. ¶¶ 38-48.

[4]  "When a final class action determination has been made in a prior or pending civil action in a state or federal court, principles of collateral estoppel will be applied in the bankruptcy court to issues such as class representation in the class proof of claim proceeding."  10 COLLIER ON BANKRUPTCY ¶ 7023.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing <u>In re Livaditis</u>, 122 B.R. 330 (Bankr. N.D. Ill. 1990)).

Prods. Liab. Litig., 629 F.3d 333, 341-42 (3d Cir. 2010) ("In order to approve a class settlement agreement, a

district court must first determine that the requirements for class certification under Rule 23(a) and (b) are met.

. . . Confronted with a request for settlement-only class certification, a district court need not inquire whether

the case, if tried, would present intractable management problems, for the proposal is that there be no trial.  But

other specifications of [Rule 23] those designed to protect absentees by blocking unwarranted or overbroad

class definitions—demand undiluted, even heightened, attention in the settlement context.  Such attention is of

vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is

litigated, to adjust the class, informed by the proceedings as they unfold.") (quoting Amchem Prods. Inc. v.

Windsor, 521 U.S. 591, 619 (1997)).[5]

> **C.    The Third Circuit's _Community Bank I_ and _II_ Decisions And Second Circuit And SDNY Case Law, Including This Court's Recent _BGI_ Decision, Overwhelmingly Support Immediate Certification.**

Beyond the holding of the Third Circuit on certifiability of this very class, the propriety of class

certification is demonstrated by applicable and very current Second Circuit and Southern District of New York

case law, which is easily and clearly applicable to the instant facts.[6]  In the recent case of Shahriar v. Smith &

---

[5]   See also In re Am. Int'l Grp., Inc. Secs. Litig., 689 F.3d 229, 238-39 (2d Cir. 2012).

[6]   In regard to the facts that underlie these class claims and the motion for class certification, as a threshold matter, the Debtors inaccurately denigrate the nature of the evidence submitted by way of the originally submitted WSC Declaration.

> There is no competent evidence whatsoever accompanying the Motion.  Movants' only supporting submission is a 'declaration' of counsel that is almost entirely comprised of a description of the allegations of the CAC, attorney argument and legal conclusions, and information about the procedural history of these claims . . .  To the extent there are any relevant factual averments contained within Movants' Declaration, they are undermined by the admission that the averments set forth are based, in part, on nothing more than 'information and belief acquired during the noted representations.' . . . This slender reed of a declaration can hardly support the evidentiary requirements and rigorous analysis mandated by FRCP 23.

(Debtors' Opposition to Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims [D.I. 2337] ("**Debtors' Objection**") ¶ 16.)  In fact, as the original Declaration expressly acknowledges, it is based on the same evidence that routinely guides counsel and courts in connection with class action certification motions and otherwise; namely information based upon: (a) personal knowledge; (b)  the review of testimony and records obtained in discovery or subpoenas to third parties; and (c) information and belief acquired during the representation.  (WSC Decl. ¶ 4.)  Although we believe the original Declaration plus the Memorandum were sufficient to support certification, the Supplemental Declarations filed contemporaneously herewith, reviewed in light of the applicable case law, plainly

3

Wollensky Restaurant Group, Inc., the Second Circuit panel provided a detailed roadmap regarding the evidentiary showing that must be made to support the elements of Rule 23. See 659 F.3d 234, 251-53 (2d Cir. 2011); see also Amaranth Natural Gas Commodities Litig., 269 F.R.D. 366, 378 (S.D.N.Y. 2010). The Amended Complaint, the *Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims* [D.I. 2044] and the accompanying *Memorandum in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims* [D.I. 2045] (the "**Motion Memorandum**"), and the Declarations follow that roadmap. This Court recently applied this same analysis in In re BGI, Inc., certifying a settlement class.[7] 465 B.R. 365, 384 (Bankr. S.D.N.Y. 2012) ("**BGI I**"); see also In re Partsearch Techs., Inc., 453 B.R. 84 (Bankr. S.D.N.Y. 2011).

Numerosity.

In BGI I and Partsearch, this Court noted that the Second Circuit finds numerosity established at only forty class members. BGI I, 465 B.R. at 375; see In re WorldCom, Inc. Secs. Litig., 219 F.R.D. 267, 279 (S.D.N.Y. 2003). Here, numerosity is uncontested as the proposed class consists of the borrowers under 44,535 loans.

Commonality.

In BGI I this Court, discussed the commonality element as follows:

With respect to commonality, the Court finds that common questions of law and fact exist between the Class Members. Rule 23(a)(2) does not require that all of the questions of law and fact raised by the dispute must be completely common. Rather, Rule 23(a)(2) suggests that more than one issue of law or fact must be common to members of the class. Minor factual differences will not preclude class certification if there is a common issue of law.

---

satisfy Class Claimants' evidentiary burden. Moreover, this same evidence was more than enough to twice satisfy a Federal District Court concerning class certification and those determinations, save adequacy issues, were of course twice ratified by the Third Circuit.

[7]  As previously noted, the fact that it was a settlement versus a litigation class matters not except that the scrutiny required in the litigation class context is actually less stringent. This Court made no distinction in BGI I or Partsearch other than in noting that the Court did not need to make a manageability analysis in reviewing a settlement class.

465 B.R. at 375 (internal citations and quotations omitted); Partsearch, 453 B.R. at 94; see also Shahriar, 659 F.3d at 252; Cmty. Bank I, 418 F.3d at 303; Amaranth, 269 F.R.D. at 376 ("Commonality requires a showing that common issues of fact or law affect all class members. 'Commonality does not mandate that all class members make identical claims and arguments . . . ."); WorldCom, 219 F.R.D. at 280.  See (Motion Memorandum at 8-9) (listing of some of the common questions of law and fact); WSC Decl. ¶ 15; Exs. 2-9.[8]

Typicality.

In BGI I the Court pointed out that:

> As to the typicality prong the Second Circuit has held in Drexel Burham that Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes the same legal arguments to prove the defendant's liability. . . .  All Class members rely on the same facts and legal argument to prove that the Debtors violated the WARN Act.

465 B.R. at 375-76; see WorldCom, 219 F.R.D. at 280.  As the Third Circuit has already held, the claims of the proposed class here are based on "the existence of the Shumway scheme, 'their interests are sufficiently aligned such that the class representatives can be expected to adequately pursue the interests of the absentee class members.'" Cmty. Bank I, 418 F.3d at 303, see Shahriar, 659 F.3d at 252; Amaranth, 269 F.R.D. at 376, 382-87.[9]  See also (Motion Memorandum at 9-10); Supp. Carlson Decl. ¶ 16.

---

[8] The Debtors misstate the impact of the Supreme Court's Dukes decision.  See Walmart Stores, Inc. v. Dukes, 131 S.Ct 2541 (2011).  The Third Circuit recently rejected an argument identical to the one being made here by the Debtors and in doing so the court underscored the propriety of class certification when the wrong flows, as here, from a common scheme:

> [Dukes] actually bolsters our [i.e. the Third Circuit majority] position, making clear that the focus is on whether the defendant's conduct was common to all of the class members, not on whether each plaintiff has a 'colorable' claim.  In Dukes, the Court held that commonality and predominance are defeated when it cannot be said that there was a common course of conduct in which the defendant engaged with respect to each individual.  But commonality is satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'  That is exactly what is presented here, for the answers to questions about DeBeer's alleged misconduct and the harm it caused would be common as to all class members, and would thus inform the resolution of the litigation if it were not settled.

Sullivan v. DB Invs., Inc., 667 F.3d 273, 299 (3d Cir. 2011) (internal citations omitted).  This Court interpreted Dukes similarly in Partsearch.  See 453 B.R. at 94.  In short, Dukes has no impact on the reality that the Claimants and the Class pose common questions susceptible to common answers.

[9] "'Typicality' requires that the clams of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same court of events." Amaranth, 269 F.R.D. at 376.

Adequacy.

The Debtors, contrary to their position in the Third Circuit, now reverse themselves and argue that the adequacy of representation condition of Rule 23 (the only condition that the Third Circuit ordered the district court review more closely on remand) is not satisfied.  See WorldCom, 219 F.R.D. at 282 ("To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: '1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").  However, any potential adequacy issue has been eliminated by: (1) a recalibrated class counsel structure that includes both the original class counsel, who represented the settlement classes discussed by the Third Circuit in Community Bank I and II, and the counsel who represented the objectors to those settlements; and (2) the filing of the Joint Consolidated Amended Class Action Complaint, which asserts the TILA/HOEPA claims that were at issue in Community Bank I and II.  See (Motion Memorandum at 10-11); Supp. Carlson Decl. ¶¶ 21; 38-48 & Ex. 10; Declaration of Roy Frederick Walters ¶¶ 1-2, 30-41 & Ex. A for qualifications of class counsel.

Predominance: The RESPA Claims.

Class Claimants firmly established compliance with the predominance requirement in their Motion Memorandum.  See (Motion Memorandum at 11-14).  "The Predominance Requirement evaluates whether a proposed class is cohesive enough to permit adjudication by representation." WorldCom, 219 F.R.D. at 287.  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Amaranth, 269 F.R.D. at 382

6

n.113 (quoting <u>Moore v. PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002) (emphasis added)).

 The Debtors invoke inapposite yield spread premium authority in support of their argument that the Class Claimants' RESPA claims raise individual issues that destroy predominance. This argument has been specifically rejected in cases presenting claims like the Class Claimants'—where the allegation is that the Shumway entities were paid a majority of the settlement fees at issue notwithstanding that they were contractually precluded from performing—and in fact did not perform—any settlement services:

> We conclude that <u>O'Sullivan</u> [one of the cases invoked by the Debtors] is materially distinguishable from this case. The challenged payments in <u>O'Sullivan</u> were much more analogous to YSPs [yield spread premiums] than the fees challenged here because, again, Busby claims that *no services at all* were provided in return for the ABC Fee. If RealtySouth provided any services for the ABC Fee, then, as Busby's counsel made clear at oral argument, the class action cannot continue. However, that question—whether RealtySouth did or did not provide 'any services' in exchange for the ABC Fee—is a binary and predominant issue here. We conclude, therefore, that this matter is suited for class review. The district court applied the wrong legal standard by engaging in a YSP-type reasonableness analysis for Busby's § 8(b) claim, and as such, the district court abused its discretion in finding that individual issues predominate and that class treatment was precluded.

<u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314, 1325-26 (11th Cir. 2008) (emphasis in original); <u>Weil v. Long Island Sav. Bank</u>, 200 F.R.D. 164, 174 (E.D.N.Y. 2001) (distinguishing yield spread premium authority and certifying RESPA class, stating, "In this case, the plaintiffs claim that the kickback scheme is illegal *per se*, and therefore does not trigger individual inquiries into the appropriateness of the fees.") (emphasis in original).

 The Class Claimants' RESPA claims are better and more certifiable than any reported RESPA case. That is because they paid hundreds of millions of dollars in settlement fees to entities that not only did not perform settlement services in exchange for the fees, but were contractually precluded from performing any settlement services.

 <u>Predominance: TILA/HOEPA And Other Claims</u>.

7

The TILA/HOEPA claims do not present individualized issues precluding class certification. First, the Third Circuit concluded that TILA/HOEPA claims were appropriate for class treatment. Cmty. Bank I, 418 F.3d at 302, 305. That determination was certainly correct as from a review of evidence obtained during discovery and directly from class members, including primarily the review of a sampling of hundreds of loan closing papers, including the HUD-1 settlement sheet, Class Claimants' experts concluded that the Banks charged uniform fees for title examinations and "abstracts of title" on Lines 1102 and 1103 of all Class Members' HUD-1A Settlement Statements that were neither necessary nor in fact performed. Such fees cannot be excluded from the Finance Charge under 12 C.F.R. § 226.4(c)(7) because they are neither bona fide nor reasonable as a matter of law. As a result, the evidence establishes a uniform and mathematically proven material misstatement of the APR (which is derived from the Finance Charge) as to every loan–a plain violation of HOEPA. See Walters Decl. ¶ 19.

The Debtors also misstate the provisions of HOEPA and its legislative history in their attempt to create individualized issues pertaining to the "materiality" of the TILA/HOEPA nondisclosures. TILA and its regulations expressly define the APR and Finance Charge as "material" disclosures such that there are no "reliance" issues. See 15 U.S.C. § 1602(v); 12 C.F.R. § 226.23(a)(3) n.48; 12 C.F.R. § 226.32(c); First Nat'l Bank of Council Bluffs, Iowa v. Office of Comptroller of Currency, 956 F.2d 1456, 1462 (8th Cir. 1992). Contrary to Debtors' contention, the legislative history conclusively establishes that the use of the word "material" in 15 U.S.C. § 1640(a)(4) with respect to HOEPA was to incorporate the then-existing case law on the "bona fide" error defense under 15 U.S.C. § 1640(c). See H.R. Conf. Rep. No. 652, 103rd Cong. 2d Sess. 147, 165, reprinted in 1994 U.S.C.C.A.N. 1977, 1992. This bona fide error defense (which the Debtors cannot and have not asserted) relieves a lender from liability only when the error is the result of a mechanical error in calculation, not where, as here, the lender has

8

decided, wrongly, to exclude title charges from the finance charge. Upholding the Debtors' argument would also make superfluous the entire statutory scheme and regulations that establish precise, mathematical tolerance for the determination of materiality. See 15 U.S.C. §1606(c); 12 C.F.R. § 226.22(a)(2).[10]

### D. Alleged Intra-Class Conflict Related To Limitations Issues

The Debtors misrepresent Community Bank II by implying that the Third Circuit held that intra-class conflicts between borrowers who have timely claims and borrowers who must invoke equitable tolling precludes class certification. (Debtors' Obj. at 12.) It is important to recognize the context of the Third Circuit's discussion regarding the limitations issue. In both Community Bank I and II, the Third Circuit was evaluating a proposed settlement that allocated greater settlement amounts to those class members who had loans that closed within one year of the operative case filings compared to those class members who rely upon equitable tolling to advance their claims. It was in that context that the Third Circuit addressed the existence of a potential conflict of interest. In the current litigation posture, however, there is no scenario which potentially pits one subgroup of the class against other class members. Against that backdrop, what the Third Circuit actually stated was the opposite of what the Debtors assert: "As we noted in Community Bank I, however, this intra-class conflict is by no means fatal to whether these cases can be maintained as a class action. The most obvious remedy would be to create subclasses . . . ." Cmty. Bank II, 622 F.3d at 304.

Subclasses, of course, are not the only remedy. First, as noted, in the context of a litigation class the idea of a conflict between subclasses is muted. Moreover, the concern of the Third Circuit related to the fact

---

[10] Further, contrary to Debtors' assertions, RICO cases are appropriate for class treatment, including those based on allegations of mail and wire fraud where reliance may be at issue. See, e.g., Klay v. Humana, Inc., 382 F.3d 1241, 1255-56 (11th Cir. 2004), abrogated in part on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir. 2004); Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 293 (S.D.N.Y. 2012). Again, here the "materiality" and uniformity of the fraudulent misrepresentations is established by other law (TILA/HOEPA) such that there are no individualized reliance issues. See 15 U.S.C. § 1602(u); 12 C.F.R. § 226.23(a)(3) n.48; 12 C.F.R. § 226.32(c); Moore v. PaineWebber, Inc., 306 F.3d 1247, 1255 (2d Cir. 2002).

9

that the settling class in both <u>Community Bank I</u> and <u>II</u> consisted only of class representatives who relied upon equitable tolling to establish a timely claim. Now, the proposed class representatives, in both the underlying action in the Western District of Pennsylvania and the class proposed before this Court, include class representatives as to both originating lenders that do not rely on equitable tolling and those that do, such that each temporal period is represented.

Contrary to the Debtors' contention, there is no requirement that members of a putative class must be broken into subclasses if they have potentially conflicting interests as a result of class action litigation. The most recent case to address this issue, and to reject that suggestion, is <u>Juris v. Inamed Corp.</u>, 685 F.3d 1294, 1323-24 (11th Cir. 2012), <u>cert. denied</u>, No. 12-578, 2013 WL 141194, at *1 (Jan. 14, 2013). Since each class action case is unique, the court always retains discretion under Rule 23(d) to address the interests of the Class members and to provide whatever structure it deems necessary to ensure that the Class members are adequately represented. The key, the Eleventh Circuit noted, and Plantiffs have done here, is to make sure that the groupings of class members with different interests or issues have representatives that understand the interests that they represent. And the notion that an attorney cannot represent multiple groups of plaintiffs or separate subclasses is baseless. <u>See Prof'l Firefighters Ass'n of Omaha v. Zalewski</u>, 678 F.3d 640, 648 (8th Cir. 2012)("Given the nature of this case and the potential conflict at issue, the district court did not abuse its discretion in certifying the class or by ensuring fair and adequate representation for the entire class by means other than appointing separate counsel for each subclass."); <u>A.D. Alberton v. Commonwealth Land Title Ins. Co.</u>, 264 F.R.D. 203, 208 (E.D. Pa. 2010) ("[I]t is only necessary to appoint separate subclass counsel if actual conflict exists between subclasses as to evidence that will be produced at trial"). Notably, at no time when they were advocating approval of the now vacated settlements did the Debtors express concern about class counsel not being able to adequately represent the Class Claimants with loans within one year of the operative complaints filing dates and those outside the one year dates.

10

Additionally, and consistent with the Third Circuit's holdings in <u>Community Bank I</u> and <u>II</u>, other courts have routinely held that the existence of potential statute of limitations defenses does not preclude class certification. <u>See</u>, <u>e.g.</u>, <u>WorldCom</u>, 219 F.R.D. at 304 ("[D]espite the possible presence of statute of limitations defenses, class members . . . are bound by a 'constellation of common issues' that predominate over any individual questions."); <u>Steinberger v. Sullivan</u>, 738 F. Supp. 716, 727 (S.D.N.Y. 1990) ("However, the presence of unresolved issues of compliance with the statute of limitations does not prevent class actions from proceeding."); <u>De Milia v. Cybernetics Int'l Corp.</u>, 15 Fed. R. Serv. 2d 1385, at *5 (S.D.N.Y. 1972) ("Without passing on the merits of the defense of statute of limitations, we hold that defendants' argument is insufficient to defeat the motion for a class action at this stage of the litigation. If it should prove that some individual claimants are in fact barred by the statute of limitations, they may be severed from the class.").[11]

The Debtors are also mistaken in arguing that an equitable tolling analysis will require a class member-by-class member inquiry that defeats certification. The fundamental flaw in the Debtors' argument is that it ignores the nature of the wrongful scheme, which is based on the wrongful conduct of <u>the Banks</u> and thus was common to all of the thousands of <u>borrowers</u>. Here Class Claimants complain that, through a systematic and uniform scheme involving standardized loan closing documentation, the borrowers paid excessive and illegal closing costs and were not provided accurate disclosures of the true costs of the loan, all in violation of RESPA, TILA, HOEPA and RICO. The key to the scheme was that it was hidden behind the morass of standardized loan closing papers and/or the true information about those fees and costs and who was

---

[11]   The Debtors' argument regarding a North Carolina sub-class is another red-herring. The only reason that that issue was even discussed by the Third Circuit in the <u>Community Bank I</u> and <u>II</u> opinions is because both the original and modified settlement being analyzed applied an allocation formula that used state of residence-and alleged strength of corresponding state second mortgage statutes-as a variable in the allocation formula. A group of North Carolina borrowers objected to the settlement, arguing that the allocation formula did not provide enough value to those borrowers. Here, in the context of evaluating a litigation class, the Class Claimants have not alleged any state law claims. Instead, they have alleged only the same federal claims on behalf of all borrowers that will yield as much or more damages than could be recovered under any state statute and every class member is similarly motivated to maximize that amount. <u>See</u>, <u>e.g.</u>, <u>In re M3 Power Razor System Marketing & Sales Practice Litigation</u>, 270 F.R.D. 45, 61 (D. Mass. 2010) ("All plaintiffs have the motivation to establish the same factual and legal findings and conclusions regarding Gillette's conduct. No meaningful allocation dilemmas are presented by the range of remedies available once those findings and conclusions are made.")

11

receiving them did not appear in the loan documents. In this exact circumstance, other courts have certified a class action and rejected the "individualized inquiry" argument the Debtors advance. Minter, 279 F.R.D. at 327-29 (rejecting the lender-defendant's argument that to impose equitable tolling would require individual proof as to what representations were made to each borrower and what actual knowledge each borrower had and noting that the test for equitable tolling rested on the defendant's "uniform and consistent conduct").[12]

###    E.    Class Members' Standing

Of the named Class Claimants only Rowena Drennen has filed for bankruptcy. Based on this fact, the Debtors mistakenly contend that Ms. Drennen has no standing. Debtors did not fully review the filings from Ms. Drennen's bankruptcy. Had they done so, they would have seen that the Trustee determined that the claims asserted in this action were not property of her bankruptcy estate. See Decl. of David M. Skeens/R. Keith Johnston ¶¶ 12-16 & Ex. B thereto, filed contemporaneously herewith.

The Debtors argument that Flora Gaskin is an inadequate representative is also spurious. Contrary to the Debtors' assertions, paragraph 76 of Class Claimants' Complaint does not state that "the Shumway/Bapst Organization did not have a relationship with CBNV after the middle of 2000"; it instead alleges that that organization "began to wind down its relationship with CBNV" in the spring of 2000." Marshall Decl. Ex. 16, ¶ 76. Moreover, the HUD-1 for Ms. Gaskin's loan clearly shows that CBNV was the lender, that the same illegal fees were kicked back to a consultant of CBNV and that the loan otherwise violated TILA, HOEPA and RESPA in the same manner as the other loans involved in the defendants' scheme. See Id. ¶ 332-38.

---

[12] See also Sykes v. Mel Harris and Assocs., LLC., 285 F.R.D. 279, 292 (S.D.N.Y. 2012) (in certifying RICO and FDCPA claims relating to a common scheme to fraudulently obtain default judgments to collect debts, the court rejected defendants' argument that typicality was not met because some members of the class may need to rely on equitable tolling to assert a timely claim); Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 486 (D. Md. 2009) (certifying class action RESPA claim where certain class plaintiffs needed equitable tolling to assert a timely RESPA claim).

In any event, with regard to Ms. Drennen, Ms. Gaskin, or any other of the group included as representative class members, if any of them are determined to be inadequate, <u>class representatives are routinely substituted in class action and here there are borrowers under 44,533 other loans to choose from</u>.

## II.    The Debtors Did Not Either Schedule These Creditors Or Send The Bar Date Notice To Them And Thus Have Treated The Putative Class As A Class, Not As Individuals.

As the Debtors acknowledged in their Objection, they did not send notice to the 60,000 plus members of the putative class.[13]   Instead they rely on (1) Bar Date Notices to various attorneys who have not yet been authorized to represent the class either in the Western District of Pennsylvania or in this bankruptcy case and (2) notice by publication in the Wall Street Journal.[14]

Nothing could be clearer under the case law than that notice by publication is not adequate for <u>known</u> creditors: "For purposes of determining constitutionally acceptable notice of an impending bar date, bankruptcy law divides creditors into two groups: known and unknown. According to well-established case law, due process requires that a debtor's known creditors be afforded actual notice of the bar date." <u>In re Drexel Burnham Lambert Grp. Inc.</u>, 151 B.R. 674, 680 (Bankr. S.D.N.Y. 1993), <u>aff'd</u>, 157 B.R. 532 (S.D.N.Y. 1993).[15]

A claimant is a known creditor when the debtor may reasonably ascertain the creditor's identity. <u>See</u> <u>In re BGI, Inc.</u>, 476 B.R. 812, 820 (Bankr. S.D.N.Y. 2012) ("<b>BGI II</b>").[16]   "A creditor's identity is reasonably ascertainable if that creditor can be identified through reasonably diligent efforts." <u>In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.</u>, 471 B.R. 331, 339 (Bankr. S.D.N.Y. 2012) (internal quotations omitted).

---

[13]   There are 44,535 loans many of which were made jointly to spouses, which under a very conservative estimation puts the total number in the class above 60,000.  See also *Declaration Of David M. Skeens and R. Keith Johnston* filed contemporaneously herewith ("*Skeens/Johnston Decl.*").

[14]   <u>See</u> *Debtors' Obj.* ¶¶ 6-7, 6 n.3 and Skeens/Johnson Decl.

[15]   The Second Circuit's recent ruling in <u>Hecht v. United Collection Bureau, Inc.</u> casts serious doubt even on the Debtors' chosen method of notice by publication to <u>unknown</u> claimants.  <u>See</u> 691 F.3d 218 (2d Cir. 2012).  One might fairly conclude that the Wall Street Journal would not be the most likely publication to reach a class of consumer second mortgage borrowers.

[16]   Remarkably, the Debtors cite to <u>BGI II</u> although, as applied to these facts, it entirely supports the Class Claimants.  In <u>BGI II</u> the gift card holders were obviously unknown creditors and just the opposite is true here, which is all the distinction required although there are many others (no pending lawsuit, no prior notification of class members, claims filed eight months after the bar date, claims filed after substantial consummation of the plan, etc.).

The debtor is required to review his own books and records to identify known creditors. DePippo v. Kmart Corp., 335 B.R. 290, 296 (S.D.N.Y. 2005). "Because the debtor thus controls who receives notice, it is the debtor's knowledge of a creditor, not the creditor's knowledge of his claim, which controls whether the debtor has a duty to list that creditor." In re Arch Wireless, 332 B.R. 241, 255 (Bankr. D. Mass. 2005).

In In re Spring Ford Industries, Inc., the court held that class claimants in a non-certified class action were known creditors and required actual notice. See No. 02–15015DWS, 2003 WL 21785960, at *3 (Bankr. E.D. Pa. July 25, 2003). The claimants' class action commenced, but was not certified, prior to the petition date and the debtor noted the action on its bankruptcy schedules and sent its petition to class counsel. Id. at *1. Yet the debtor never provided notice of the bar date to the class claimants. Id. The bankruptcy court concluded that the class claimants were known creditors because they had a lawsuit prepetition, the debtor noted the action on its schedules, and sent its petition to class counsel, thus entitling the claimants to receive actual notice of the bar date. Id. at *4. Judge Bernstein favorably cited Spring Ford in In re DDi Corp., in which he stated, "[I]f a class was certified prior to the bar date, or the class action was commenced against the debtor prior to the petition date, the class may be a 'known creditor.' Known creditors are entitled to actual notice of the bar date . . . ." 304 B.R. 626, 629 (Bankr. S.D.N.Y. 2004).[17]

The Debtors cannot claim that it would have been difficult for them to identify the members of the class because, in the main lawsuit in the Western District of Pennsylvania, the Debtors twice gave notice of proposed settlements to the class members. In that process they took pains to ensure that proposed class counsel would not be able to obtain access to the list. Thus, the Debtors, and only the Debtors, had access to the list of class members.[18] Incredibly, in failing to send the Bar Date Notice to the class members, the

---

[17] Spring Ford (and several cases cited therein) is very interesting and useful precedent with respect to a number of issues in the instant case, especially on the issue of "prejudice" to the debtor. For example, the Court had no sympathy with the debtor's claim that it would be prejudiced because it would be required to liquidate the class claim after the plan had been confirmed and distributions had begun because "no prejudice has been found where a liquidating Chapter 11 plan was filed since the late claim merely reduced the percentage each creditor would receive from the total distribution . . . ." 2003 WL 21785960, at *4.

[18] Second Supplemental Declaration Of Bruce Carlson . . . Notice Issue.

14

Debtors failed to comply with the Bar Date Order[19] itself, which provided at 12(h) that notice of the bar date "shall be deemed adequate and sufficient *if* a copy is served by first-class mail at least thirty-five (35 days prior to the applicable Bar Date on . . . (h) all <u>known</u> <u>members</u> of <u>potential</u> class action lawsuits."

The Debtors' attempts to overcome their inexcusable failure to provide the Bar Date Notice directly to known creditors including "know members of potential class actions" are pathetic. They claim, for example, that serving the Bar Date Notice to class action counsel, rather than to all "known members," was sufficient. (Debtors' Obj. ¶ 6.) But nothing in the Bar Date Order, the Code, the Rules, or case law allows the Debtors to foist off on class counsel the duty to provide bar date notices, let alone when the class has not yet been certified and <u>proposed</u> counsel has limited to no authority. This is especially disingenuous when the Debtors well know that they alone possess the list and have kept it from the very people on which they wish to foist one of the Debtors' essential duties.

The Debtors seek to treat these creditors as a class for Bar Date Notice purposes but for no other purpose. By failing to notify the individual class members and claiming that serving the Bar Date Notice on proposed class counsel is sufficient, the Debtors <u>have admitted that these creditors are a class, have dealt with them only as such, and should be estopped from claiming otherwise</u>.

**III.    Superiority And "Gumming Up The Works": For These Creditors It Is A "Class Action Or Nothing"; For The Debtors, Although They Cannot Afford To Admit It, It A Far More Convenient Form Of Adjudication Than Processing Potentially Thousands Of Individual Claims.**

The purpose of pointing out the Debtors' failure to notify these creditors of the bankruptcy case or the Bar Date is simply to show that the Debtors themselves have dealt with these creditors <u>as a class and not as individuals</u>. One of the virtues of allowing a class claim to proceed will be to cure any problems created by the Debtors' failure to list these creditors on the Schedules or provide them actual notice by mail of the Bar Date as

---

[19] *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [D.I. 1309]; *see also Debtors' Application for Order (i) Establishing Deadline For Filing Proofs of Claim and (ii) Approving the Form and Manner of Notice Thereof* [D.I. 1014] ¶ 21 ("[T]he Debtors propose to provide notice of the Bar Date [to] . . . (h) all known members of potential class action lawsuits.").

provided in the Bar Date Order and as constitutionally required.  But we hasten to add that the idea of sending a Bar Date Notice and expecting that these creditors would understand whether they had a claim at all, let alone what to do about it, would be yet another example of myopic fantasy or masked cynicism.

A mere glance at the Bar Date Notice is more than enough to make clear how absurd it would be to expect someone to file a claim in response to it based on the facts alleged in the Class Proof of Claim. Imagining oneself in the shoes of a lay person, one must begin with the fact that these borrowers closed their loans with the Banks involved in the scheme, not "Residential Capital LLC Or Its Affiliated Entities,"[20] so they would not be likely to know even who Residential Capital is, certainly not how "Residential Capital LLC Or Its Affiliates" is relevant in any way to them.  Then consider the abstruse language in the definition of "claim."  This kind of language goes on for five pages of legalistic density.  The reader then arrives at the Proof of Claim form, which is itself confusing and replete with legalistic jargon.

Not only would the class members not understand the Notice or the Proof of Claim Form, they would not even know they had a claim.  They would not even know about the kickback scheme that is the source of the claim.  Even if they did, they would not know that it might be a violation of RESPA or, for that matter, what RESPA is in any way meaningful to them.  They would not know that the inaccurate APR provided to them violated TILA and HOEPA or, for that matter, what TILA and HOEPA are in any way meaningful to them.[21]  There is a "right way" for this to be done, which is the Rule 23(c)(2)(B) class action notice.  In contrast to the opaque, even impenetrable, nature of the Bar Date Notice and Proof of Claim Form, Rule 23 (c)(2)(B) provides:  "Class members are entitled to the best notice that is practicable under the

---

[20]  Compounding the confusion, even if a loan buyer would be aware that the loan was sold and to whom, the name of the loan buyer was Residential Funding Company, not Residential Capital LLC.

[21]  "In this case, by contrast, the individual members of the . . . proposed class--hourly female employees--should not be expected to understand bankruptcy procedure; many may not even know that they have a claim for sex discrimination."  Chateaugay, 104 B.R. at 629 n.5.

16

circumstances. Such notice must clearly and concisely state in <u>plain language</u>: (i) The <u>nature of the action</u>; (ii) The definition of the class certified; (iii) The class <u>claims, issues, or defenses</u>."

Even if these creditors were aware of the conduct that gave rise to their claims, even if they were aware of the legal basis of their claims, they would face the dilemma poignantly described in <u>In re Zenith Laboratories, Inc.</u>:

> To the individual litigant, the perceived costs of investigating a smaller potential claim may be thought to exceed the expected benefits. The individual litigant is unsure of his or her rights, wary of expending resources in an uncertain endeavor with an unknowable outcome, and, because of the modest size of the claim, frequently unable to secure legal representation. Thus the potential litigant may conclude that his or her resources are better spent on some other pursuit. The class action provides a champion to investigate similar claims, diminishes uncertainty regarding the legal status of the claim, and, by aggregating the claims, effectively distributes the costs of investigation that would otherwise be borne on an individual basis over the class membership. This procedural device thus readjusts the cost-benefit analysis and ensures that smaller claims whose combined value is significant cannot be avoided by a wrongdoer merely because of their individual size.

104 B.R. 659, 663 n.3 (D.N.J. 1989). If the real motivation of the wrongdoer here was other than to make sure these particular creditors never find their way to the courthouse at all, the Debtors too would support class rather than individualized treatment of these thousands of claims. The only reason the Debtors want to defeat the class claim is that they know that the rejection will ensure that few to no claims are filed. It is true here, just as in <u>In re Bill Heard Enterprises, Inc.</u>, that:

> If the Court refused to allow the adversaries to proceed and required these [2300] claimants to proceed alone through the claims procedure, it is evident that Bill Heard would vigorously defend against these claims leaving the claimants to defend their proofs of claims on their own which would be impracticable given the small nature[22] of many of the claims. The Court finds

---

[22] But these claims are "small" only in terms of assessing the difficulty of identifying, investigating, and pursuing them on an individual basis. As we said, "In the instant case, where the average claim is far in excess of $2,000 per claimant (and in some cases exponentially so), the potential recovery may still seem relatively small in gross dollars compared to other creditor interests, but the potential recovery is likely to be far more meaningful to these consumers and represent a far larger percentage of their net worth and annual income than the recoveries likely to be obtained by the great financial institutions and commercial entities that are dominating this case will mean and represent to them." Motion Memorandum at 22-23. This class action is by no means a mere "lawyer's vehicle" (<u>Woodward & Lothrop</u>, 205 B.R. at 376).

that it is in the best interest of the putative class members, judicial economy, and even Bill
Heard to an extent to adjudicate these matters in one single action."[23]

400 B.R. 795, 803 (Bankr. N.D. Ala. 2009).

Applicable precedent is both persuasive and very near to hand.  Although much more case law could

be cited, this Court's recent holding in BGI I is more than enough:

> The Class is also superior to other methods of resolving the controversy because individually
> adjudicating each of these substantially similar claims would be impractical and consume
> significant judicial resources. Moreover, proceeding individually would likely be impractical
> for individual members because each holds a relatively small claim. In such circumstances,
> the class action device is frequently superior to individual actions. 466 B.R. at 377

The Debtors' strategy is to conjure up various bogeymen that, when examined, turn out to be only

phantoms.  This case can be very expeditiously administered.  Merely technical and easily solvable and

manageable issues with respect to how these claims are to be adjudicated are being exaggerated or just

fabricated in an effort to slam the courthouse door shut and deny these borrowers not only their claims but

even an opportunity to bring them.  A class liability determination on the few points of legitimate contention

can happen relatively quickly with little to no need for actual presentation of evidence.  Indeed, the participants

to the scheme here contracted themselves into a RESPA violation.  And on the TILA/HOEPA side, a detailed

determination by Plaintiffs' experts, including a nationally recognized attorney for the National Consumer

Law Center, all of whom analyzed hundreds of loan transactions, confirmed the existence across the board of

the systemic and purposeful understatement to the borrower/class members of their loan's APR.[24]

Once liability is established, the damages are somewhat individualized yet not dependent on anyone's

mental state but upon written records easily identified and from which the damage calculation truly is just

arithmetic.    The RESPA and TILA/HOEPA damages are in no way speculative or amorphous but are

calculations based on settlement fees paid by the borrowers (as evidenced on their HUD-1 settlement

---

[23]  For additional discussion of this point, see Motion Memorandum at 14, 20-21.

[24]  See Suppl. Carlson Decl. ¶¶ 9-10, 12, 15 and 19.

18

statements) or in the case of finance charges as a measure of damages under HOEPA, numbers reflected on the HUD-1 settlement statements as well as the interest paid on the loan as reflected in the mandatory IRS form 1098's each borrower must be provided.   Notably, these claims differ substantially from the unliquidated claims of the vast majority of the other unsecured creditors.  Ascertaining these damages will be much easier than dealing with foreclosure-related claims where damages may include property valuation, emotional distress, lost profits, and other more speculative damage elements.  It will be much easier than dealing with the RMBS claims, which are essentially fraud claims.   Here there are no issues of duty or intent or whether a statement was false when made or whether there was reasonable reliance.  And there are no correspondingly speculative or amorphous claims of damage. Once liability is established, the damages flow precisely from the loan documents (the illegal charges and fees paid), the statutory treatment of those amounts (trebling under RESPA) and, as to the HOEPA damage of all finance charges, determining not just the upfront fees but also the interest paid over the life of the loan.   These statutory damages are not subject to interpretation or estimation – they are truly just arithmetic.

This bankruptcy case was filed by the whales for the whales.  The minnows are to be, as usual, simply consumed.  Witness the Debtors bending over backwards to extend the bar date for Morgan Stanley compared to its all-out fight against the effort to make any room at all at the table for these aggrieved borrowers.  Or observe the Debtors' willingness to relax its vigilance, to put it charitably, on the issue of proof of damages in connection with the $8.7 billion RMBS settlement when AFI and the Debtors wanted to use that large claim to cram down a plan.  And of course there is the Debtors' relationship with AFI before and throughout the case.

The truth is that you really cannot gum up these works more than they are already gummed up.  Any complexity that a determination of these claims will entail pales in comparison to the complexities involved in what the Debtors have repeatedly characterized as "unquestionably amongst the largest and most complex cases ever filed"—for example, the RMBS settlement (and geometrically more so in the litigation that will

19

2341608.1

ensue if the settlement is not approved), the <u>monoline claims and their collision with the RMBS trust claims</u>, <u>the subordination issues around the securities law claims</u>, and, above all, <u>the estates' veil piercing, equitable</u> <u>subordination, and fraudulent transfer claims against AFI</u>.   These are just the most obvious examples of the "gumming up" process, just the tip, actually, of the claims resolution iceberg.  In an irony appropriate for the conclusion of this Reply, we observe that, despite the Debtors' shedding of crocodile tears over the alleged delay and expense that certification of this class claim will allegedly cause, the Debtors' plan itself recognizes and seeks to accommodate such massive complexity by allowing the Trustee <u>six months</u> following the Effective Date to object to claims and <u>up to five years</u> for the Liquidating Trustee to litigate, liquidate, settle, or seek estimation of claims.  In fact, immediate certification of this class and the aggressive scheduling that this Court routinely employs will position these claims for resolution far in advance of most other unliquidated and disputed claims.  In this situation "gumming up the works" actually would mean "denial of justice in the interest of mere convenience and expediency."

Dated:  February 8, 2013
         New York, New York

/s/ Daniel J. Flanigan
**POLSINELLI SHUGHART**
Daniel J. Flanigan, Esq.
805 Third Avenue, Suite 2020
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for*
*Class Claimants*

/s/ David M. Skeens
**WALTERS, BENDER,**
**STROHBEHN & VAUGHAN**
David M. Skeens, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Class Claimants*

/s/ R. Bruce Carlson
**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq.
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Class Claimants*

20