# Exhibit 7

# CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (this "Agreement") is made and entered into as of the 29th day of __October__, __1998__ by and between Community Bank of Northern Virginia ("Bank") and __EquityPlus Financial, Inc.__ ("Consultant").

WHEREAS, Bank is a Virginia state-chartered financial institution which is operating a mortgage banking operation that complements its products and services; and

WHEREAS, Consultant has delivered to Bank a Corporate Resolution authorizing __David Shumway__, whose title is __President__, to enter into this Agreement on behalf of Consultant; and

WHEREAS, Consultant has extensive experience in the establishment, operation and administration of mortgage banking operations, has business and marketing expertise related thereto, and is in the business of providing various business consulting and advisory services.

NOW THEREFORE, in consideration of the above premises and of the benefits to be obtained by the covenants contained herein, and for other good, valuable and legal consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1. **ENGAGEMENT OF CONSULTANT AS INDEPENDENT CONTRACTOR**

    Bank hereby engages Consultant as an independent contractor to provide advice and consultation relating to the establishment, operation and administration of a Loan origination Office (the "Office") for first and subordinate lien residential mortgage loans ("Mortgage Loans"), which will be presented to the public as the __EquityPlus Division of Community Bank of Northern Virginia__ program (the "Program"). The office will be located at __11417 Sunset Hills Road, Reston, VA 20190__. It is understood and agreed that Consultant has an independent business, and is not required nor expected to exclusively serve Bank. Rather, Consultant is free to be engaged by other persons or firms that Consultant may from time to time deem advisable or appropriate, while not interfering with its duties to Bank under this Agreement. However, Consultant agrees to exclusively serve Bank with respect to mortgage operations and will not be engaged in the business of mortgage banking with any other person or firm during the term of this Agreement. It is understood and agreed that Consultant will not directly solicit customers on behalf of Bank and will not act as a mortgage broker for Bank. Consultant will act as an independent contractor, and will not be treated as an employee of Bank for any purpose whatsoever. Consultant agrees that employees of Consultant will not be employees of Bank and will not participate in and/or receive any of Bank's employee benefits that may be provided to Bank's employees from time to time during the term of this Agreement, and hereby waives any participation therein. It is understood that Bank has no right to control or direct the details and means by which Consultant performs his duties under this Agreement, and that Consultant is solely responsible for the manner and nature of providing the services to Bank hereunder. However, Consultant will perform its duties under this Agreement in a manner consistent with the prevailing image and reputation of Bank.

2. **MANUAL**

   Bank's operations manual, policies, procedures, guidelines, letters and memoranda to Office, including but not limited to, the electronic transmission to Bank of the Office's scanned residential Mortgage Loan files using Bank's approved mortgage origination computer system (the "System"), as issued and amended from time to time (the "Manual"), are supplements to this Agreement and may be amended or supplemented by Bank in its sole and absolute discretion and are hereby incorporated into this Agreement in full by reference and made a part hereof as if set forth at length herein, and will be binding upon the parties hereto. The Manual will conform to generally accepted mortgage banking industry standards for companies using comparable technology, business systems and operational structures.

3. **DUTIES OF CONSULTANT**

   Consultant will consult with and provide assistance to Bank in the administration of the Office. In addition to duties of Consultant otherwise set forth in the Agreement, Consultant will be responsible for the following duties as they relate to the administration of the Office and the origination of Mortgage Loans under the Program:

   A) Recommending hardware equipment and software programs, configurations and solutions for the Office's operation and activities.

   B) Providing advice and recommendations regarding the hiring by Bank of Mortgage Loan Originators (the "Originators") in the Office.

   C) Providing advisory and consulting support and recommendations for the administration of the Office loan pipeline and managing interest rate exposures.

   D) Providing advice and recommendations regarding the establishing and maintaining of necessary and appropriate policies and procedures for the administration of the Office.

   E) ~~Directing all advertising campaigns for the Program, including market research, marketing material design and marketing material distribution.~~

   F) Overseeing the Office's business systems including, but not limited to, the telephone system and computer network.

   G) Providing at no expense to Bank all hardware, software, furniture, telephone systems and other equipment and capital items deemed necessary by Bank and Consultant for use by the Office. Bank will not purchase capital items for use in the Office.

   H) Except as otherwise provided for in this Agreement, paying for all expenses incurred in the operation of the Office including courier fees, express delivery fees, equipment and software leases, late charges and recording fees, rent, maintenance, postage, stationery, supplies, telephone, advertising, appraisal fees, credit report fees, flood certification fees, legal fees, accounting fees, travel, entertainment and licensing fees.

   I) Such other duties as Bank may request.

4. **REGULATORY COMPLIANCE RESPONSIBILITIES**

   Consultant represents, warrants, covenants and agrees that all Mortgage Loans originated by the Office and any ~~software it uses will be in compliance~~ with the Manual, all applicable secondary market investor guidelines, as such guidelines may be modified, altered or amended from time to time, all applicable federal, state and local statutes, ordinances, rules

and regulations, including, but not limited to, all consumer protection laws, such as consumer credit laws, the Equal Credit Opportunity Act ("ECOA"), the Truth in Lending Act, state and federal usury laws, the Real Estate Settlement Procedures Act, the Privacy Act, the Fair Credit Reporting Act ("FCRA"), the Home Mortgage Disclosure Act ("HMDA") the Flood Disaster Protection Act and all regulations promulgated pursuant thereto and all regulations and directives issued by the secondary market investors of the Client, the Virginia Bureau of Financial Institutions, the Federal Reserve Board, HUD, FHA, VA, FNMA, FHLMC, GNMA, CDA, VHDA, FDIC and all other state and federal governmental agencies to the extent applicable, (the "Criteria"). Consultant represents and warrants to Bank that the Office has taken all necessary action before December 31, 1998 to ensure that its computer systems and all other devices will be able to perform date-sensitive functions accurately and without interruption or ambiguity before, on or after January 1, 2000. Consultant represents and warrants to Bank that the Office will comply with the adverse action notification requirements of ECOA, FCRA and all other requirements under state or federal law for notification to applicants for Mortgage Loans. Consultant represents, warrants, covenants and agrees that all required disclosures to the Office's applicants were made in a timely and correct manner and in compliance with the Criteria. Bank's approval or rejection of a Mortgage Loan for funding will be at the sole discretion of Bank.

5. **BANK INVESTMENT**

It is understood that Bank will be hiring employees to staff the Office, obtaining licenses and governmental approvals, and incurring other expenses in order for Bank to establish and operate the Program and its Mortgage Loan operations. All final decisions as to entering into agreements, hiring employees, obtaining licenses and incurring other expenses will be made in the sole discretion of Bank.

6. **PAYMENT OF TAXES**

Consultant will have full responsibility for payment of self-employment and income taxes resulting from compensation under this Agreement. Bank will periodically issue to Consultant an IRS Form 1099 showing fees paid to Consultant under this Agreement and file copies with the IRS as required by law.

7. **APPROVED PROGRAMS**

Consultant is approved by Bank to consult with and provide assistance to Bank in the administration of the Office as it relates to Mortgage Loans only of the types agreed upon in Addendum C, attached hereto and made a part hereof. All final decisions as to those secondary market investors to whom Mortgage Loans will be sold and the underwriting guidelines under which Mortgage Loans will be originated will be made by Bank.

8. **COMPENSATION**

As compensation for its services hereunder during the term of this Agreement, Consultant will be entitled to receive compensation equal to 100% of the Net Profit of the Office that is earned by Bank on a monthly basis during the term of this Agreement within 10 days of the end of each month. Bank will deposit such compensation into an account at Bank that is held in the name of Consultant (the "Account"). It is understood that Bank will maintain a separate department for the Office in Bank's books and records to which all revenue related to the Office's business activities as referenced in Addendum A, attached hereto and made a part hereof, will be credited and to which all directly related expenditures and certain indirect expenditures allocable to the Office's business activities will be charged, all in accordance with generally accepted accounting principles consistently applied by Bank. It is understood that for a Mortgage Loan to qualify to be included as part of the Gross Income for a month, it must close and funds must disburse prior to the end of the month. The direct expenditures

include, but are not limited to, those referenced in Addendum A and the funding expenses referenced in Addendum B attached hereto and made a part hereof. The term "Net Profit" for purposes of this Agreement will mean the gross income of the Office, including the income referenced in Addendum A, less all expenditures (before taxes) directly related to and/or the indirect expenditures allocable to the Office in accordance with generally accepted accounting principles consistently applied by Bank. Net Profit or Loss of the Office will be calculated in accordance with Addendum A during the term of this Agreement with compensation payments made in accordance with Addendum A during the term of this Agreement. Any losses will be due and payable in accordance with Addendum A and deducted from the Account. To the extent there are any questions regarding the calculations of Net Profit for purposes of this Agreement, the independent auditors then regularly auditing Bank, whose determination will be final and binding upon all parties and interested persons, will conclusively resolve them. As solely an example of the Net Income calculation, see attached Addendum A to this Agreement.

9. **REMEDIES FOR REPURCHASE**

In the event that Bank is required to repurchase a Mortgage Loan originated by the Office, Bank will reduce the monthly compensation due Consultant by the amount of the principal balance advanced plus any fees and costs associated therewith. If Bank subsequently sells a repurchased Mortgage Loan, Consultant will receive compensation in the amount of the principal balance funded plus any revenue and less any expenses received from the secondary market investor who purchased the Mortgage Loan from Bank. To the extent that the provisions of this paragraph reduce the monthly compensation to zero, Bank may debit the Account.

10. **REMEDIES FOR UNPURCHASED MORTGAGE LOANS**

In the event that Bank has a Mortgage Loan originated by the Office that is not purchased by Bank's secondary market investors within 60 days of closing, Bank will reduce the monthly compensation due Consultant by the amount of the outstanding principal balance. A single 30-day extension may be granted at the sole discretion of Bank. If a mortgage loan is not purchased after the expiration of the 30-day extension or if Bank does not grant the 30-day extension, Bank will reduce the monthly compensation due Consultant by the amount of the outstanding principal balance. Bank will have the sole authority to determine the secondary market investor to which such Mortgage Loans will be sold. If a Mortgage Loan is not purchased by Bank's secondary market investors within 45 days of closing, Bank will receive all interest collected after the 46th day from closing and debit from the Office all interest received regardless of the stipulations in Addendum B. If Bank subsequently sells an un-purchased Mortgage Loan, Consultant will receive compensation in the amount of the principal balance funded plus any revenue and less any expenses received from the secondary market investor who purchased the Mortgage Loan from Bank. To the extent that the provisions of this paragraph reduce the monthly compensation to zero, Bank may debit the Account.

11. **AGREEMENTS WITH SECONDARY MARKET INVESTORS**

At no time will Consultant enter into any agreement whatsoever with the secondary market investors of Bank. Consultant agrees to terminate, upon entering into this Agreement, any existing agreements between Consultant and the secondary market investors Bank.

12. **AUTHORITY**

At no time will Consultant have any authority to charge items or incur debts or other obligations on behalf of Bank or enter into any agreements on behalf of Bank, and Consultant agrees that it will not at any time represent that employees of Consultant are employees of

Bank or that they are authorized to enter into any contract or obligations of any kind on behalf of Bank.

### 13. LICENSING

Consultant will be responsible for paying and keeping current any license(s) and permit(s) necessary to engage in its business and provide services under this Agreement. Consultant represents and warrants that it possesses all necessary corporate, business and consulting licenses that are required by applicable local, state and federal law. In the event that Consultant does not have a license because it believes it is exempt from such license requirements, Consultant represents and warrants that it fully qualifies for an exemption for such license under applicable law, that it has confirmed with the appropriate licensing authority that Consultant qualifies for such exemption and that, to the best of its knowledge and belief, it would be entitled to receive such licenses if it were required to apply therefor. Consultant further represents and warrants that it has never had an application for a license rejected and that it has never surrendered a license nor had a license suspended, revoked or terminated.

### 14. INDEMNIFICATION

Consultant hereby agrees to indemnify, defend, hold harmless and release Bank and its officers, directors and employees from any claim, loss, damage, cost, expense (including all attorney fees) or liability arising out of or relating to the performance or non-performance by Consultant of any services to be performed or provided by Consultant under this Agreement or for any taxes or employment or worker compensation fees, taxes, or benefits and the like. Consultant will maintain at all times during the term of this Agreement a daily balance in excess of $500,000.00 in the Account. Consultant hereby grants to Bank a security interest in, and hereby assigns, conveys, delivers, pledges and transfers to Bank all of Consultant's right, title and interest in and to the Account. Consultant authorizes Bank, to the extent permitted by the applicable law, to charge or set off against the Account for all sums owing under this Agreement.

### 15. CONFIDENTIAL AND PROPRIETARY INFORMATION

Consultant hereby acknowledges that any and all information emanating from or concerning this Agreement or computer software (including all files, input and output materials, the media upon which they are located or stored, and all software programs, and databases, including any related documentation, source code or codes, object codes, upgrades, revisions, modifications, and any related materials which are developed or compiled by Bank) used by or proposed to be used by Bank, and any methods, systems, or other elements created, learned or developed by Bank is "Confidential and Proprietary Information". Consultant and employees of Consultant will not permit the duplication or disclosure of any such Confidential and Proprietary Information to any person unless Bank in writing specifically authorizes such duplication, use or disclosure. The requirements of this Paragraph and of Paragraph 12 will survive termination of this Agreement.

### 16. TERM

The initial term of this Agreement will begin on  October 29, 1998  and end on  October 29, 1999  (the "Initial Term"). This Agreement shall renew automatically after the end of the Initial Term for successive terms of one year unless terminated as provided elsewhere in this Agreement.

## 17. TERMINATION

Either party may terminate the consulting services of Consultant under this Agreement at any time and without liability for doing so, by giving the other party at least __90__ days prior written notice by certified, registered, or express mail, return receipt requested. Termination will not otherwise affect any existing commitment from either party to the other. The engagement of Consultant under this Agreement may be terminated immediately by Bank upon the loss by Consultant of any license required to perform services under this Agreement or if Consultant otherwise fails to abide by the provisions of this Agreement.

## 18. NOTICES

All notices, requests, demands and other communications which are required or permitted to be given under this Agreement must be in writing and will be deemed to have been duly given upon the delivery or three days after the mailing sent by registered or certified mail, return receipt requested, postage paid:

If to Bank, to:

Community Bank of Northern Virginia
107 Free Court
Sterling, Virginia 20164
David P. Summers, President and CEO

If to Consultant, to:

EquityPlus Financial, Inc.
11417 Sunset Hills Road
Reston, VA 20190
David Shumway, Present

or to such other address as Bank or Consultant has specified in writing to the other.

## 19. HEADINGS

The headings in this Agreement are intended solely for convenience or reference and shall be given no effect in the construction or interpretation of this Agreement.

## 20. NO ASSIGNMENT

Consultant may not assign or encumber this Agreement (other than with Bank), and any attempt to do so will be void, and, at the option of Bank, will constitute grounds for immediate termination by Bank of this Agreement.

## 21. AMENDMENTS

This Agreement cannot be modified or amended, nor any of the terms and conditions waived, except by a writing signed by each of the parties, and, in such event, such waiver or consent will be effective only in such instance and for the specific purpose for which it is given.

## 22. MISCELLANEOUS

All representations and warranties contained herein, and all rights of the parties arising hereunder, will survive the termination of this Agreement. This Agreement constitutes the final, entire and exclusive agreement among the parties, and no representations, inducements or agreements, oral or otherwise, not contained herein will have any force or effect. The language used in this Agreement will be deemed to be the language chosen by the parties hereto to express their mutual intent, and no rule of strict construction will be applied against any person. While the parties intend and expect that all provisions of this Agreement are enforceable and valid, to the extent any provision hereof is deemed unenforceable, all other provisions will continue to be fully enforceable as if the unenforceable or invalid provisions were absent. Time is of the essence hereunder. This Agreement may be executed in any number of counterparts, is effective only when signed by all signatories, will be interpreted in accordance with the laws of the Commonwealth of

Virginia, and be binding upon and inure to the benefit of all parties hereto, their personal representatives, heirs, successors, and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

COMMUNITY BANK OF NORTHERN VIRGINIA

By: _____
David P. Summers, President and CEO

CONSULTANT: EquityPlus Financial, Inc.

By: _____
Name: David Shumway
Title: President

## ADDENDUM A

### Sample Profit and Loss Statement

The following is a sample Profit and Loss Statement that is for illustrative purposes only and may not include all profit and loss statement entries:

Gross Income from Origination and Sale of Mortgage Loans
    Discount Points and Origination Fees
    Credit Report, Appraisal and Flood Certification Fees
    Other Lender Fees
    Volume Bonuses
    Interest on Loans Held for Sale
    Investor Premiums on Sold Loans
    Less: Investor Discounts on Sold Loans
    Less: Investor Fees

Funding Fees (e.g. 150 basis points plus $125 per loan)

Personnel Expenses
    Salaries and Wages
    FICA and Employee Benefits

General & Administrative Expenses

Other Expenses
    Principal Balance of Repurchased Loans
    Repurchase Costs
    Foreclosure Costs

Net Profit (Loss)

Example of Net Profit Calculation
Gross Income of $1,000.00 less Funding Expenses of $100, Personnel Expenses of $500.00, General and Administrative Expenses of $100.00 and Other Expenses of $50.00 will result in a Net Profit of $250.00 payable to Consultant.

Note Regarding Volume Bonuses
The amount of Volume Bonuses received from Bank's secondary market investors and credited as Gross Income to the Office will be based solely on the higher of the secondary market investor's published standard Volume Bonus schedule or the actual amount of bonus received.

## ADDENDUM B

### Funding Expenses

For the purposes of this Addendum, reference to "Prime" will mean the published Wall Street Journal Prime Interest Rate. Bank will debit a funding fee and interest on Loans Held for Sale in accordance with the following schedule and lender fees shall be credited as income according to the following schedule:

| PROGRAM | FUNDING FEE | INTEREST | LENDER FEES |
|---|---|---|---|
| 1. Conventional closed-end subordinate lien Mortgage Loans | _100.00_ basis points of the principal balance and $_75.00_ per disbursed Mortgage Loan* | All interest earned in excess of Prime plus _1.000_ % | Credited as Income to:_Consultant_. |
| 2. Conventional first lien sub-prime Mortgage Loans | _50.00_ basis points of the principal balance and $_0.00_ per disbursed Mortgage Loan | All interest earned in excess of Prime plus _1.000_ % | Credited as Income to:_Consultant_. |
| 3. Conventional first lien agency eligible and "A-Paper" Mortgage Loans | _____basis points of the principal balance and $_____per disbursed Mortgage Loan | All interest earned in excess of Prime plus _____% | Credited as Income to: _____ |
| 4. FHA Mortgage Loans | _____basis points of the principal balance and $_____per disbursed Mortgage Loan | All interest earned in excess of Prime plus _____% | Credited as Income to: _____ |
| 5. VA Mortgage Loans | _____basis points of the principal balance and $_____per disbursed Mortgage Loan | All interest earned in excess of Prime plus _____% | Credited as Income to: _____ |

* The funding fee will be reduced to 100.00 basis points of the principal balance and $25.00 per disbursed Mortgage Loan in any month in which Bank disburses over $10,000,000.00 of Mortgage Loans originated by the Office. Regardless of the amount of Mortgage Loans disbursed, the funding fee will be 100.00 basis points of the principal balance and $25.00 per disbursed Mortgage Loan for the months of November and December 1998.



## ADDENDUM C

### Approved Programs

The parties acknowledge and agree that the Office will not originate any mortgage loans except those of the types described below in accordance with the Agreement:

| PROGRAM | INITIALS | |
| --- | --- | --- |
| 1. Conventional closed-end subordinate lien mortgage loans | Bank _DS_ | Consultant _DS_ |
| 2. Conventional first lien sub-prime mortgage loans | Bank _DS_ | Consultant _DS_ |
| 3. Conventional first lien agency eligible and "A-Paper" mortgage loans | Bank ____ | Consultant ____ |
| 4. FHA mortgage loans | Bank ____ | Consultant ____ |
| 5. VA mortgage loans | Bank ____ | Consultant ____ |

The above list may be expanded by written agreement between Bank and Consultant.

## ADDENDUM D

### Additional Stipulations

### ADVANCES OF COMPENSATION

On the following Friday, Bank will deposit into the Account the net income as referenced in Addendum A for Mortgage Loans originated by the Office and disbursed by Bank in a given week and Mortgage Loans sold by Bank and purchased by a secondary market investor in a given week.

### ADVANCES OF ABOVE PAR COMPENSATION

On the following Friday, Bank will deposit into the Account the above par fees for all subordinate lien mortgage loans that disburse in a given week based on a detailed listing of such above par fees that Consultant will provide Bank.

### VOLUME BONUSES

Volume bonuses for subordinate lien mortgage loans that disburse during a given month will be deposited within one week of receipt by Bank.

### RECONCILIATION

Bank will reconcile weekly advances deposited into the Account and make withdrawals or deposits into the Account on the 10th of each and every month for the previous month's advances.

### SETTLEMENT AGENT

On or before February 1, 1999, Consultant will deliver written notice to Bank of a settlement agent who will conduct settlements of Mortgage Loans closed by the Office. Consultant will require the settlement agent to open an account with Bank out of which funds for closing Mortgage Loans will be disbursed and into which Bank will deposit funds for the disbursement of funds for the closing of Mortgage Loans closed by the Office.

### USE OF THE NAME "EQUITYPLUS"

Consultant will cause EquityPlus Financial, Inc. to deliver an assignment of the name "EquityPlus" to the Bank. The Bank will have the right to use the name EquityPlus for the marketing of Mortgage Loans by the Office. The Bank's right to the use of the name EquityPlus will cease upon termination of this Agreement.

### APPLICABILITY OF THE MANUAL

Consultant will ensure that the administration of the Office will be in conformity with Manual at all times.

### BANK'S AUTHORITY

At no time will Bank have any authority to charge items or incur debts or other obligations on behalf of Bank or enter into any agreements on behalf of Consultant, and Bank agrees that it will not at any time represent that employees of Bank are employees of Consultant or that they are authorized to enter into any contract or obligations of any kind on behalf of Consultant.

**CONSULTANT'S CONFIDENTIAL AND PROPRIETARY INFORMATION**

Bank hereby acknowledges that any and all information emanating from or concerning this Agreement or computer software (including all files, input and output materials, the media upon which they are located or stored, and all software programs, and databases, including any related documentation, source code or codes, object codes, upgrades, revisions, modifications, and any related materials which are developed or compiled by Consultant) used by or proposed to be used by Consultant, and any methods, systems, or other elements created, learned or developed by Consultant is "Confidential and Proprietary Information". Bank and employees of Bank will not permit the duplication or disclosure of any such Confidential and Proprietary Information to any person unless Consultant in writing specifically authorizes such duplication, use or disclosure.

**NEGOTIATIONS WITH SECONDARY MARKET INVESTORS**

Bank will consider the advice and recommendations of Consultant in negotiations with secondary market investors.

**ADDITIONAL TERMINATION STIPULATIONS**

In the event of termination of this Agreement, Consultant (and/or its successors and assigns) will be permitted to realign its post-termination operating structure in a manner wholly consistent with its operating structure prior to the execution of this Agreement in all material respects. This realignment will necessarily include, but would not be limited to, the rehiring of any and all individuals employed by Consultant, immediately prior to the execution of this Agreement, normal turnover excepted.

**COMMUNITY BANK OF NORTHERN VIRGINIA**
**MORTGAGE DEPARTMENT**
Income Statement
*Example Month*

|  | Example Month | Example Year-to-date |
|---|---:|---:|
| **REVENUE** | | |
| Revenue on Loan Sales: | | |
| Loan Origination Revenue | $2,140,168.38 | $4,783,990.48 |
| Loan Discount Revenue | $50,725.89 | $356,119.07 |
| Community Home Mtg Fees Remittance | ($32,454.39) | ($366,640.24) |
| Americas Mortgage Fees Remittance | ($404,198.82) | ($1,866,714.13) |
| EquityPlus Mortgage Fees Remittance | ($1,448,253.37) | ($2,194,567.77) |
| Service Release Revenue | $111,792.24 | $700,615.08 |
| Underwriting Fee Revenue | $12,100.00 | $61,765.00 |
| Tax Service Fee Revenue | $2,720.00 | $15,265.00 |
| Investor Premium/Discount Revenue | ($57,220.75) | ($349,937.44) |
| Buydown Escrows | ($6,201.20) | ($11,881.81) |
| Lender Funded Closing Costs | ($3,070.00) | ($30,366.68) |
| Administrative Fees | $0.00 | ($380.00) |
| Total Revenue on Loan Sales | $366,107.98 | $1,277,266.56 |
| Less: Investor Administrative Fees | $7,966.50 | $51,352.91 |
| Net Revenue on Sale of Loans | $358,141.48 | $1,225,913.65 |
| Other Revenue: | | |
| Application Fees | $13,625.00 | $130,574.00 |
| Mortgage Loan Processing Fees Income | $11,450.00 | $98,500.00 |
| Community Home Mtg Appl Fees Remit. | ($2,400.00) | ($14,175.00) |
| Other Service Charges and Fees on Loans | $2,250.00 | $16,470.00 |
| Equipment Lease Income | $1,932.32 | $20,521.63 |
| Mortgage Company Start-up Fees | $0.00 | $2,083.30 |
| Miscellaneous Income | $352.20 | $1,138.96 |
| Total Other Revenue: | $27,209.52 | $254,112.89 |
| **TOTAL REVENUE:** | **$385,351.00** | **$1,480,026.54** |
| **EXPENSES** | | |
| Personnel: | | |
| Loan Officer Commissions | $42,548.07 | $238,657.16 |
| Loan Officer Commissions-Signing Bonuses | $1,072.92 | $9,218.76 |
| Employee Salaries | $38,988.91 | $194,586.10 |
| Employee Overtime | $0.00 | $0.00 |
| FICA Tax | $4,471.89 | $31,655.80 |
| Group Insurance - Major Medical | $2,341.32 | $6,349.42 |
| Group Insurance - Dental | $132.61 | $691.57 |
| Life & Disibility Insurance | $61.05 | $457.81 |
| Temporary Help | $598.18 | $698.18 |
| Total Personnel: | $90,314.95 | $482,324.79 |
| General & Administrative: | | |
| Courier Expense - External | $233.40 | $11,474.37 |
| Recording and Filing Fees | $869.50 | $9,404.20 |
| Credit Reports | $648.00 | $24,716.75 |
| Appraisal Fees | $5,365.00 | $77,312.34 |
| Flood Certification Services | $1,150.00 | $7,179.50 |
| Automated Underwriting Fee Exp | $0.00 | $1,949.61 |
| Seminars and Training | $0.00 | $885.00 |
| Rental Expense | $2,632.00 | $18,424.00 |
| Depreciation FF&E | $7,096.20 | $44,867.23 |
| FF&E Maintenance | $1,020.33 | $17,139.41 |
| Other Furniture & Equip Expense | $525.36 | $1,456.33 |
| Postage | $50.00 | $354.60 |
| Stationery, Printing & Supplies | $2,337.89 | $11,606.34 |
| Telephone | $2,091.00 | $11,735.67 |
| Advertising Expense | $0.00 | $0.00 |

|  | Example Month | Example Year-to-date |
|---|---|---|
| Travel | $257.00 | $730.40 |
| Meals & Entertainment | $32.55 | $514.07 |
| Dues and Memberships | $0.00 | $0.00 |
| Audit and Accounting Fees | $0.00 | $4,100.00 |
| Legal and Professional Fees | $10,805.50 | $31,623.83 |
| Licenses | $1,633.96 | $8,900.31 |
| Provision for Loan Losses | $2,000.00 | $10,000.00 |
| Miscellaneous Expense | $514.72 | $16,270.02 |
| Total General & Administrative: | $39,282.43 | $310,643.98 |
| TOTAL EXPENSES: | $129,597.38 | $792,968.77 |
| Net Income Before Consultant Pay: | $255,753.62 | $687,057.77 |

**CONSULTANT PAY FROM NET INCOME:**

|  |  | Example Month Pay to Consultant |
|---|---|---|
| First $100,000.00 | (60/40) | $40,000.00 |
| From $100,000.01 - $200,000.00 | (50/50) | $50,000.00 |
| From $200,000.01 - $300,000.00 | (45/55) | $30,664.49 |
| Over $300,000.00 * | (90/10) | — |
| Total Distribution of Net Income |  | $120,664.49 |