# Exhibit 18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Case No. 03-0425<br>Case No. 02-01201<br>Case No. 05-0688<br>Case No. 05-1386<br>Hon. Gary L. Lancaster<br>Filed Electronically |

THIS DOCUMENT RELATES TO ALL ACTIONS

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR ENTRY OF MULTIDISTRICT CASE MANAGEMENT ORDER NUMBER ONE

I.  **Entry of Case Management Order Including the Appointment of Co-Lead Interim Counsel is Proper and Necessary**

The Court is well-familiar with the lengthy procedural history of these consolidated actions, and Plaintiffs will refrain from repeating that history here for the sake of brevity. In relevant part, the stakeholders in these cases convened in New York City on June 9, 2011, and participated in a settlement mediation that was ultimately unsuccessful.[1] Subsequently, on June 21, 2011, counsel for all Plaintiffs filed a Joint Motion for Multidistrict Case Management Order Number One ("Joint Motion")(Docket No. 491). The proposed leadership structure among Plaintiffs' counsel that is set forth in the Joint Motion—and the suggested preliminary case management order-- reflect nothing more than a pragmatic recognition of the fact that reality – as defined by the Third Circuit—has changed, and counsel for the Plaintiffs are fully prepared to react to that change to facilitate the orderly progress of this litigation consistent with the best

---

[1] Eric Green served as mediator. Plaintiffs suggested Mr. Green based on his history of successfully mediating a number of large, complex matters, including the Microsoft antitrust litigation. Mr. Green remains willing and available should the parties wish to engage in future settlement discussions.

1

interests of the class.

There are well known standards that inform the Court's discretion. For example, the 2003 committee note to Fed. R. Civ. P. 23(g)(2)(A) (now re-numbered as Rule 23(g)(3)) speak to the appointment of interim class counsel:

> Paragraph (2)(A) authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class. Rule 23(c)(1)(B) directs that the order certifying the class includes appointment of class counsel. Before class certification, however, it will usually be important for an attorney to take action to prepare for the certification decision. **The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. Settlement may be discussed before certification. Ordinarily, such work is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate. Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made.** . . .

(*emphasis added*). Similarly, the *Manual for Complex Litigation* (4th ed. 2004)(the "Manual") states:

> *Whether to appoint interim class counsel during the period before class certification is decided.* If the lawyer who filed the suit is likely to be the only lawyer seeking appointment as class counsel, appointing interim class counsel may be unnecessary. If, however, there are a number of overlapping, duplicative, or competing suits pending in other courts, and some or all of those suits may be consolidated, a number of lawyers may compete for class counsel appointment. In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, **such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement** . . . .

(*italicized emphasis in original, bolded emphasis added*).

Plaintiffs respectfully suggest that application of these standards to the Joint Motion counsels that the Court should appoint proposed Co-Lead Counsel Bruce Carlson and Fred Walters as interim Class Counsel and should enter the Proposed Multidistrict Case Management Order Number One. To that end, Plaintiffs state as follows:

A.   **The Third Circuit's Guidance**

The Third Circuit summarized its most recent holding as follows:

> In summary, we conclude the District Court applied an incorrect legal standard, and thus abused its discretion, in determining that the named plaintiffs and class counsel are adequate representatives for the class. In addressing the adequacy requirements on remand, the Court should in particular consider, consistent with the standards we have discussed, (1) whether a subclass of class members with timely RESPA and/or TILA/HOEPA claims should be created; (2) whether a subclass of class members from North Carolina should be created; and (3) whether class counsel are adequate representatives for the class, and/or any subclasses that might be created, in light of counsel's justifications given for their decision not to bring TILA/HOEPA claims on behalf of the class.

*In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation*, 622 F.3d 275, 315 (3d Cir. 2010)("CBNV II").

Against the backdrop of this holding, the Joint Motion seeks to employ the methodology suggested by the *Manual*, and contemplated by Fed. R. Civ. P. 23(g), to simplify the Court's post-remand supervision of this litigation. Plaintiffs have accordingly proposed a leadership structure which, if approved, would result in all advocacy for Plaintiffs in this litigation coming from a single source. Given the history of this litigation on the Plaintiffs side – which most current defense counsel have not experienced directly – such a structure would significantly simplify this Court's management of this litigation going forward.

Most obviously, the proposed leadership structure would eliminate the third issue identified in the Third Circuit's summary of its holding (i.e. proposed interim counsel seek leave to file a Joint Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint") on behalf of all Plaintiffs that in fact asserts TILA/HOEPA claims on behalf of all Plaintiffs. *See* Dkt. No. 488. With respect to the first two issues identified by the Third Circuit – whether sub-classes might be appropriate in the context of the TILA/HOEPA claims and the RESPA claims, in the first instance, and with respect to the claims of North Carolina class

members, in the second instance, several points are relevant: First, Plaintiffs have addressed the potential intra-class conflict regarding the RESPA and TILA/HOEPA claims by including named Plaintiffs in the proposed Consolidated Amended Complaint who closed loans within one year of the date of the relevant underlying complaints (i.e. the *Davis* and *Ulrich* Complaints).[2] Furthermore and more pertinently for purposes of the Joint Motion, the proposed leadership structure insures that in every context in which the statute of limitations/intra-class conflict issue arises (i.e. motions practice, discovery, class certification, etc.), Plaintiffs will be addressing that issue with one voice rather than multiple briefs from the several counsel for Plaintiffs. Stated otherwise, counsel for Plaintiffs have been working cooperatively post-remand, and if the Court grants the Joint Motion, it has gone a long way toward guaranteeing that such cooperation continues as the Court steers this litigation to an orderly conclusion.

## B.    Orderly Procedures for Captioning and Filing Documents

The proposed Case Management Order ("CMO")contemplates the establishment of orderly procedures for the captioning, filing and docketing of pleadings in these actions, and in any case that might hereafter be filed and transferred to this Court. These procedures include the maintenance of a uniform caption and master docket for the filing of documents relating to the

---

[2] Defendants' opposition to the Joint Motion suggests that the directive of the Third Circuit is not met because the members of the putative class should be broken into subclasses depending on loan dates and that it would be improper for any counsel for plaintiffs to represent both classes. The notion that an attorney cannot represent multiple subclasses is baseless. *A.D. Alberton v. Commonwealth Land Title Insurance Co.*, 264 F.R.D. 203, 208 (E.D. Pa. 2010) ( "only necessary to appoint separate subclass counsel if actual conflict exists between subclasses as to evidence that will be produced at trial"); 32B Am. Jur. 2d Federal Courts § 2092 ("subclasses of plaintiffs may be adequately represented by the same counsel where there is no antagonism among the classes and where there is a common certifiable class, whose representatives and members fall into one of the subclasses"). Missing from Defendants' arguments is any contention as to why there is a conflict between claimants whose loan dates differ. Some may have to rely on equitable tolling for RESPA, TILA or HOEPA claims, which very much applies under the facts of this case, but establishing equitable tolling for some class members does not diminish and is not at odds with the claims of those putative class members with loan dates within one year. This is not a limited fund case in which subclasses are competing for a limited recovery. Notably, at no time previously when they were advocating approval of the now vacated settlements did any of the Defendants express concern about class counsel not being able to adequately represent plaintiffs with loans within one year of the operative complaints and those outside those one year dates.

consolidated actions.

Such procedures, designed to enhance efficiency, are particularly necessary and appropriate in complex class action litigation such as this. *See Manual* § 21.11.

### C.  Organization of Plaintiffs' Counsel

The proposed case management order further implements the procedures suggested by the *Manual* for complex, multi-party cases such as this by proposing a structure designating an interim co-lead counsel for all plaintiffs. *See Manual* § 20.22  Plaintiffs respectfully submit that such designation—particularly in this case—will promote the orderly progress of this litigation, and ensure that Plaintiffs are able to prosecute this litigation in an efficient and coordinated fashion. To that end, certainly Mr. Carlson and Mr. Walters, and their respective firms, are adequate and very well suited for this task, and their appointment would be in the best interests of the Plaintiffs and the proposed Class.

#### 1.  Carlson Lynch

Carlson Lynch Ltd.'s practice is highly concentrated in representing consumers and working people in class litigation in federal and state courts nationwide. Carlson Lynch has been designated as Class Counsel in dozens of class actions. *See* **Exhibit 1** for a fuller description of Carlson Lynch's relevant experience. In fact, Carlson Lynch has been deemed adequate counsel in multiple class actions against Defendant PNC. *See Byers v. The PNC Financial Services Group, Inc. and PNC Investments*, Civil Action No. 07-123 (W.D.Pa.); *Arthur v. National City Bank*, 09-cv-1409 (N.D. Ohio).

Carlson Lynch is committed to expending all resources necessary to achieve the best possible results for its clients and class members and has adopted a high standard that guides its prosecutorial efforts, including a commitment to producing only the highest quality work

5

product. Furthermore, Bruce Carlson and Carlson Lynch are keenly familiar with the facts and law related to the specific claims at issue in this litigation. Bruce Carlson played a significant role in exposing the underlying facts of the predatory lending scheme being challenged in this litigation, and he continued to exchange information with regulators relating to the underlying facts during the pendency of the two appeals in this action.

### 2. Walters Bender Strohbehn & Vaughan, P.C.

Fred Walters and Walters Bender Strohbehn & Vaughan, P.C ("WBSV"). have substantial experience as class counsel in large, complex class actions. WBSV has been involved in class litigation as both plaintiffs' and defendants' counsel in numerous class actions in state and federal court. *See* exhibit 2 for a listing of the WBSV relevant experience. Most pertinent to this case, Fred Walters and WBSV have been appointed class counsel in 13 separate predatory lending cases. Fred Walters was lead trial counsel in a predatory lending class action against Residential Funding Corporation (one of the primary Defendants in this case) which was tried to conclusion, and resulted in a verdict in excess of $100,000,000.00 for plaintiffs and a class of Missouri second mortgage borrowers.[3] WBSV has likewise successfully settled a number of these predatory, second mortgage lending class action cases. Recent settlements across 9 separate cases have resulted in recoveries for over 3800 borrowers s that average some $26,600 per borrower.

WBSV remains committed to expending all resources necessary to achieve the best possible results for its clients and class members consistent with the high standards that guide its prosecutorial efforts on behalf of consumers nationwide.

---

[3] The Plaintiff Class was the prevailing party on appeal with the finding as to liability, actual damages and the submissibility of punitive damages affirmed by the appellate court. *Mitchell v. Residential Funding Corporation*, 334 S.W.3d 477, 515 (Mo. App. W.D. 2010). The appellate court, however, found that there was instructional error as to the punitive damage awards and remanded the matter for retrial on punitive damages alone. *Id* at 513-14. That re-trial is scheduled for March of 2012.

### 3. The Team

Defendant's hollow rhetoric notwithstanding, it is difficult to conceive of more adequate counsel for the Class in this case than Carlson Lynch and WBSV.

Defendants chide Bruce Carlson because he initially questioned the strategic desirability of asserting TILA/HOEPA claims on behalf of Plaintiffs, and now proposes to champion those same claims. However, a significant event occurred that caused Carlson to reconsider his position on that issue: The Third Circuit issued a lengthy opinion which strongly intimates that the claims are likely viable on a class basis.

Defendants further accuse Carlson of "abandoning" the Class because he no longer supports a class settlement that he once deemed to be fair, adequate and reasonable. Carlson has not "abandoned" the Class. Instead, the Third Circuit has reversed the Order certifying the Class, and thus there is no "Class" to abandon.

Further, the occurrence of events since the time of the modified settlement has caused Carlson to reevaluate his position regarding the fairness and adequacy of the Modified Settlement. First, the Third Circuit has reinforced its initial suggestion that class certification of the claims in dispute should be granted so long as Plaintiffs can satisfy the adequacy of representation requirements of Rule 23(a)(4). Plaintiffs will take all steps necessary to satisfy that deficiency and obtain certification of the Class.

In addition, Third Circuit law regarding the RESPA claims at issue has evolved in a manner that is favorable to Plaintiffs. Specifically, it is now settled law in the Third Circuit that the proper damage calculation regarding the RESPA claims at issue requires mandatory trebling of _**all**_ of the settlement fees at issue, not just the amount that reflects an arguable overcharge.

*Alston v. Countrywide Financial Corporation*, 585 F.3d 753 (3d Cir. 2009).[4] This calculus causes the RESPA claims in dispute to have a value in excess of $600,000,000.00.

Relatedly, Plaintiffs have confirmed additional facts regarding the conduct at issue which significantly reinforces their ability to prove Defendants' liability under Section 8(a) of RESPA. Specifically, the structure that was in place during the majority of the time when most of the residential mortgage loans at issue were made resulted in the vast majority of the settlement fees being kicked-back to an entity that was contractually precluded from providing any compensable settlement services in connection with the loan.

In short, Carlson's view of what constitutes a "fair, adequate and reasonable" settlement has evolved consonant with the variables set forth above—all of which make Plaintiffs claims much more valuable currently than they were at the time that the Modified Settlement was negotiated. Given the evolution of these cases, prudence and good judgment suggest that Plaintiffs' counsel must take into account the change in circumstances that has occurred in order to best serve the interests of the class.

As to Mr. Walters, Defendants point to prior statements or positions taken by the previously objecting plaintiffs requesting reassignment of this matter on remand. These efforts are not legitimate advocacy but only an attempt to prejudice this Court against Mr. Walters and his firm and, therefore, the Plaintiff Class. The reassignment arguments have been ruled upon by the Third Circuit. They are of no import going forward to Mr. Walters or any of Plaintiffs' counsel and we are certain the Court feels the same way. What is troubling about the argument, however, is that it could only be relevant and Defendants would only make it if they believe that such argument could create in the Court a vindictive bias.

---

[4] The analysis adopted by the Third Circuit in *Alston* was spawned by the holding in *Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748, 753 (W.D. Pa. 2006), a case handled by Carlson Lynch.

8

## II. Defendants' Opposition to Entry of the CMO Fails

Defendants' opposition to the Joint Motion and entry of the proposed CMO focuses almost entirely on the portion of the CMO requesting the appointment of Mr. Carlson and Mr. Walters as interim co-lead class counsel. Such an appointment is improper, contend the Defendants, because: (1) it is sought pursuant to an agreement between Mr. Carlson and Mr. Walters and with the consent of other counsel for plaintiffs rather than through some process of competing applicants; (2) to put a CMO in place is premature because Defendants are going to move to dismiss the Consolidated Amended Complaint; and (3) the request fails under the Rule 23(g)(1) criteria (which "argument" is really just a mudslinging exercise against Mr. Walters and Mr. Carlson intended, apparently, to prejudice the Court against Plaintiffs). None of these arguments are well taken.

### A. The Agreement Among Plaintiffs' Counsel as to the Appointment of Interim Class Counsel is the Preferred Method of Designating Such Counsel

Defendants' primary argument is that the requested appointment of counsel should be denied because there is no rivalry or competition for the appointment, an argument they highlight by pointing out that all the various counsel for plaintiffs concur with the request. Defendants' position that agreement among counsel is a bad thing is curious as it is universally recognized that the preferred method of appointing interim class counsel is by agreement among plaintiffs' counsel.

> Case law and experience indicate that the dominate scenario for appointing class counsel is deference to private ordering. The Task Force believes that there is generally no reason to hold an auction when the court is presented with qualified counsel who has been chosen through private ordering.

*Third Circuit Task Force of the Selection of Class Counsel, Final Report,* 208 F.R.D. 340, 416 (2002); *Four in One Company, Inc., v. SK Foods,* 2009 WL 747160 *2 (E.D. Cal.) ("the most

9

common means of selecting class counsel is the so called 'private ordering' approach, whereby involved counsel jointly come to a representational consensus and submit their recommendation in that regard to the court for approval"); *Newberg on Class Actions,* § 9.35 ("the court should always encourage the parties to agree on lead counsel, while imposing its own choice only in extraordinary circumstances.") Additionally, by agreement or otherwise, it is common for courts to appoint co-lead interim counsel. *See Ehler v. IPEX,* 2009 WL 1392075 * 2 (D. Colo.) (appointing five law firms as co-lead interim class counsel pursuant to their agreement and the approval of some eighteen plaintiffs firms in several related class action cases); *In re Bank of America Corp. Securities Derivative and ERISA Litigation,* 258 F.R.D. 260, 272-73 (S.D.N.Y. 2009) (appointing co-lead interim class counsel based on the benefit gained by their ability to share resources and expertise).

Plaintiffs cite to several cases for the proposition that the lack of competing applicants supports the denial of an application for appointment of interim class counsel. A review of each of such case reveals that all are "oversold" for the cited proposition and in fact support the appointment of Mr. Carlson and Mr. Walters as co-lead interim class counsel. In *Jenkins v. Hyundi Motor Financing Co.,* 2008 WL 781862 at *4,9 (S.D. Ohio), for example, the court did decline to appoint an attorney who moved unopposed to be interim counsel but only because the court was at the same time taking up the issue of class certification, which it granted in part and in doing so appointed that attorney as class counsel. The court in *Lyons v. Coxcom,* 2009 WL 6607949 (S.D. Cal.) dismissed without prejudice as premature a motion for appointment of interim counsel in a single class action matter in which it was questionable that the case would proceed as a motion to dismiss had already been granted (with leave to re-plead). In *Issuer Plaintiff Initial Public Offering Antitrust Litigation,* 234 F.R.D. 67, 69-70 (S.D. N.Y. 2006) the

motion for appointment of interim class counsel by the sole moving attorney was denied because the court viewed the primary basis for such an appointment to be the coordination of moving for class certification, the coordination of pre-certification motion practice and to perhaps advance settlement. None of those factors existed as certification briefing was already completed, dispositive motion practice was stayed and there had been failed settlement talks. In the final case relied upon by Defendants, appointment of interim class counsel was denied because the sole moving attorney was the only attorney in this single, non-complex class action. *Parrish v. National Football League Players, Inc.*, 2007 WL 1624601, at * 9 (N.D. Cal. June 4, 2007).

The factors underlying these decisions are not at issue here. This is not a simple, single case involving only one lawyer. This is not a case in which certification has already been decided or is pending, or a case that has been dismissed once. Rather, this is a complex MDL proceeding that concerns five consolidated lawsuits (and *Kessler* is itself the result of the prior consolidation of six actions). The claims asserted arise under a number of intricate federal laws. The putative class numbers some 50,000 homeowners nationwide. As the Third Circuit has recognized, the damages under the RESPA claims alone as to the 44,000 loans acquired by RFC, with the mandatory RESPA trebling, could be $600 million dollars. *In re Community Bank II*, 622 F.3d 275, 281 at n. 4 (3rd Cir. 2010). The Third Circuit has already commented extensively on the propriety of certification of these claims. *In re Community Bank II*, 622 F.3d 275, 284 (3rd Cir. 2010) (noting that in *In re Community Bank I* the Third Circuit had "concluded that three of the four Rule 23(a) requirements-numerosity, typicality, and commonality-were met, as well as the Rule 23(b)(3) predominance and superiority requirements.") (citing to *In re Community Bank I*, 418 F.3d at 303-10). At this point, however, Plaintiffs have not moved for certification and Defendants will most certainly, despite the Third Circuit's view and these Defendants' prior

11

support of a settlement class, oppose certification. Defendants have noted that they intend to file a host of dispositive motions. While much is known about the underlying predatory lending scheme, based on the collective efforts of all counsel for Plaintiffs, formal discovery has been done only on a limited basis. In short, given the undeniable complexity, size and current posture of this MDL litigation, to adequately represent the entire class and to coordinate all the work that Plaintiffs must do to advance their class claims, the appointment of interim co-lead class counsel as part of the implementation of the CMO is a necessary and proper step for the orderly prosecution of this litigation.

**B.    Implementation of the CMO at this Time is Proper**

Defendants also argue that implementation of a CMO at this time is premature because they are going to file a number of motions to dismiss which, they contend, should be decided before engaging in discovery or efforts to advance the case. It is hard to imagine that any steps to move these consolidated cases toward resolution, the earliest of which was filed in May of 2000, could be deemed premature. Further, it is clear from Judge Lancaster's statements at this past February's hearing that the Court contemplated that if the latest mediation effort were not successful, then a case management order would be entered and the litigation would advance: "If it [a new settlement] doesn't happen, I would put in a case management order that is consistent with the manual for complex litigation, and we're off and running, assuming that the motions are filed and the case keeps going." *See* Case 2:03-cv-00245, Dkt. No. 477 at p. 17, lines 13-16. Further, as noted, factors compelling appointment of interim counsel include clarifying responsibility for making and responding to motions. *See Manual for Complex Litigation*, Fourth, § 21.11 at 246 (emphasis added). Thus, contrary to the Defendants' contentions, the fact that motions to dismiss are apparently forthcoming only serves to

12

underscore the need for the appointment of interim class counsel.

### C. The Rule 23(g)(1) Factors Overwhelming Support the Appointment of Mr. Carlson and Mr. Walters As Co-Lead Interim Class Counsel

Rule 23(g)(3) regarding the appointment of interim class counsel simply states that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." It is silent as to the factors a court is to consider in making such appointment. Courts, however, generally look to the Rule 23(g)(1) factors in making an interim counsel appointment. *In re Municipal Derivatives Antitrust Litigation*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). Those factors are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Defendants briefing acknowledges these are the factors to be considered but they provide no analysis under these factors (instead, they provide the baseless attacks on Mr. Carlson and Mr. Walters, addressed in section C.3. above). [5] This avoidance is understandable as there is no question that each factor overwhelmingly supports the requested appointment.

<u>The Work of Counsel</u>

The depth and quality of the respective work of each of the applicants and their firms is considerable. As part of their attacks on Mr. Carlson and Mr. Walters, Defendants contend that

---

[5] Defendants also state that by referring the court to the procedural history of the case in regard to the request to appoint Mr. Carlson and Mr. Walters as co-lead interim class, Plaintiffs failed to meet their burden under Rule 23(g)(3). As noted, there are no express factors for the Court to consider under Rule 23(g)(3). But in pointing to the long history of this case, which of course includes the courts' familiarity with the work of Mr. Carlson and Mr. Walters and their firms, Plaintiffs have more than referenced facts that support all the Rule 23(g)(1) factors. Indeed, the long history of this case including the multiple appellate proceedings in and of themselves demonstrates the substantial work done to date, the extensive consumer class action experience, the detailed knowledge of the applicable law and their ample resources and willingness to commit resources to further the interests of the putative class members as to both applicants and their respective law firms.

Mr. Walters and others that previously objected to the settlements have done nothing but take issue with the efforts of Mr. Carlson. That contention is not true. Long ago, when the Court was considering the first settlement, Objectors' counsel praised Mr. Carlson's investigative efforts to uncover the Shumway-Bapst scheme (which praise Defendants have pointed to over and over in the years of briefing). In the *Hobson* matter, Mr. Walters, his firm and other counsel for plaintiffs undertook substantial discovery and obtained a host of documentary evidence to support the class claims. They also engaged the work of experts to analyze the loan data they obtained, which work demonstrating the high percentage of HOEPA loans made by the Banks, the common charges and fees to all borrowers and other typical facts, all of which will continue to be utilized for class certification and other efforts as the case goes forward. And each applicant and their firms did an extraordinary amount of work in the two appeals, the result of which is the Third Circuit's framework for the litigation of these consolidated matters going forward.

### Counsel's Experience

No legitimate challenge could be raised to the experience of both Mr. Carlson and Mr. Walters and their respective firms in handling class action and other complex litigation. *See* Section I.C. above.

### Counsel's Knowledge of Applicable Law

There is no suggestion that either Mr. Carlson's or Mr. Walters' knowledge of the applicable law is deficient. Nor could anyone do so in good faith. Indeed, as demonstrated by the two trips to the Third Circuit, the extensive viability briefing to this Court and the depth and detail in the Consolidated Amended Complaint, the applicants are very knowledgeable about consumer lending laws including RESPA, TILA and HOEPA and also in regard to RICO.

Counsels' Resources to Commit to the Class

There is likewise no suggestion that the applicants do not have the resources to commit to the class to prosecute this action. The Court previously stated, "[n]o one has suggested that Class Counsel lack the experience, expertise, or resources to prosecute this consumer class action." *See* Memorandum, Order and Final Judgment, August 14, 2008, at p 6., Case No. 00425 [Dkt. No. 434]. The additional experiences and successes of Mr. Carlson and his firm since the Court made that observation nearly 3 years ago only serve to bolster his adequacy under this factor. Mr. Walters and his firm likewise have substantial resources to commit to the class, having successfully prosecuted plaintiff class actions in the predatory lending arena for many years. Further, while either applicant independently has sufficient resources to satisfy this factor, it is all-the-better for the class that they be appointed co-lead counsel which will result in the combining of their resources in the prosecution of the claims of the putative class. Indeed, when you consider that the Defendants are behemoths like Residential Funding Company (represented by Bryan Cave LLP and Reed Smith LLP), PNC Bank (represented by Ballard Spahr LLP) and the FDIC (represented by Treanor Pope & Hughes, P.A), the class of individual homeowners is most certainly benefited by the merger of the proposed co-lead interim counsels' abilities and resources.

### III. Conclusion

For the above reasons and those set forth in Plaintiffs' Joint Motion for Multidistrict Case Management Order Number One, Plaintiffs ask that the Court enter Case Management Order Number One.

Dated: July 22, 20111

By /s/ R. Bruce Carlson
R. Bruce Carlson (PA ID #56657)
Gary Lynch (PA ID # 56887)
Stephanie K. Goldin (PA ID # 202865)
CARLSON LYNCH LTD.
– Proposed Co-Lead Counsel
P.O. Box 367
231 Melville Lane
Sewickley, PA 15143
(412) 749-1677
(412) 749-1686 (Facsimile)

Daniel O. Myers
LAW OFFFICES OF DANIEL O. MYERS
1127 Queensborough Blvd., Suite 105
Mt. Pleasant, SC 29464
(843) 654-7440
(843) 654-7441

A. Hoyt Rowell, III
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
(843) 727-6550

By/s/ David M. Skeens
R. Frederick Walters
J. Michael Vaughan
David M. Skeens
Garrett M. Hodes
WALTERS BENDER STROHBEHN &
   VAUGHAN, P.C.
– Proposed Co-Lead Counsel
2500 City Center Square
12th & Baltimore
P.O. Box 26188
Kansas City, MO 64196
(816) 421-6620
(816) 421-4747 (Facsimile)

Scott C. Borison, Esq.
LEGG LAW FIRM, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016
(301) 620-1018 (Facsimile)

Franklin R. Nix, Esq.
LAW OFFICES OF FRANKLIN NIX
1020 Foxcroft Road, N.W.
Atlanta, GA 30327-2624
(404) 261-9759
(404) 261-1458 (Facsimile)

Knox McLaney, Esq.
MCLANEY & ASSOCIATES, P.C.
P. O. Box 4276
Montgomery, AL 36104
(334) 265-1282
(334) 265-2319 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the United States District Court for the Western District of Pennsylvania with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 22nd day of July 2011.

/s/ *David M. Skeens*