UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>(Jointly Administered) |

### DECLARATION OF ROY FREDRICK WALTERS

Roy Frederick Walters, pursuant to 28 U.S.C. §1746, hereby declares as follows:

1.  I am 65 years of age and am one of the attorneys representing the Plaintiff in this lawsuit. I am a shareholder, director and officer of Walters, Bender, Strohbehn & Vaughan, P.C. ("Walters Bender" or "WBSV"). I am a member in good standing of the Missouri Bar and the United States District Court for the Western District of Missouri. I am admitted to practice in the following courts:

| Court | Year of Admission |
|---|---|
| State of Missouri | 1973 |
| United States District Court | |
|     Western District of Missouri | 1973 |
| 8th Circuit | 1979 |
| 10th Circuit | 1983 |
| US Court of Appeals | |
|     D.C. Court | July 27, 1993 |
| 7th Circuit | 1994 |
| United States District Court | |
|     District for Kansas | 2001 |
| 3rd Circuit | 2003 |
| US Supreme Court | 2010 |

2.  I have been engaged in a litigation practice since my admission to the bar. In the ensuing 39 plus years, I have been involved in numerous commercial litigation matters in state

1

and federal courts as well as other forums including those that involve consumer protection laws. I have considerable experience in class actions and multi-district litigation matters. I or other shareholders of WBSV are currently actively involved as lead class counsel, co-lead counsel, liaison counsel or plaintiffs' counsel in at least 25 other class or putative class actions. I have and continue to be actively involved in the actual trial of matters to juries in state and federal courts and to other fact finding bodies.

3. Walters Bender and myself in particular have been actively involved in litigation against GMAC-Residential Funding Corp., n/k/a Residential Funding Company, LLC, one of the debtor entities in the above captioned bankruptcy and which shall sometimes be referred to in this Declaration as "Debtor" or "RFC", in various matters since 2001 and since 2003 with respect to the particular claims against Debtor that are the subject of the *Motion to Apply Bankruptcy Rule 7023* and have personal knowledge of the matters set forth in this Declaration and if called and sworn as a witness, I could and would testify competently to the matters set forth herein.. I provide this Declaration to the Court in connection with *Motion to Apply Bankruptcy Rule 7023* and the related requirements of Rule 23(a)(4) and 23(g), which speak to the adequacy of representation and the appointment of class counsel.

4. Federal Rule 23(g)(1)(A) provides that the court must consider the following factors when appointing class counsel:

- (i) The work counsel has done in identifying or investigating potential claims in the action;
- (ii) Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
- (iii) Counsel's knowledge of the applicable law; and
- (iv) The resources that counsel will commit to representing the class.

These factors are addressed below.

2

***The Work Walters Bender Has Done in Identifying or Investigating the Claims against the Debtor in This Action***

5.  Without disclosing attorney work product or any privileged communications, this Declaration will chronicle WBSV's investigation of the Debtors' loan acquisition and securitization practices and the predatory lending scheme described in the Joint Consolidated Amended Class Action Complaint, which investigation began back in 2001.

6.  In the summer of 2001 WBSV, as counsel for a putative plaintiff class, filed an action against Community Bank of Northern Virginia ("CBNV") and Debtor Residential Funding Company, which was then known as GMAC-Residential Funding Corp. ("RFC") in the Circuit Court of Jackson County, Missouri seeking damages on behalf of hundreds of borrowers victimized by this predatory lending scheme in which RFC was involved.

7.  As the result of our investigatory efforts, we learned also the relationship between Community Bank of Northern Virginia, Guaranty National Bank of Tallahassee ("GNBT") and RFC. As we continued our investigation of this relationship, we developed an understanding of the totality of the predatory lending scheme that is described in the Joint Consolidated Amended Class Action Complaint. And in April of 2003, WBSV as counsel for a putative plaintiff class, filed an action against GNBT in the Circuit Court of Clay County, Missouri for violations of Missouri's Second Mortgage Loans Act, §§408.231 Mo. Rev. Stat., *et seq.*

8.  The damages available under the Missouri Second Mortgage Loan Act are substantial and duplicate or in some cases exceed those available under Federal consumer protection laws. But during or investigation of the claims against CBNV, GNBT and RFC, we did also research possible causes of action to be asserted against the Debtor and these two banks under federal law, in a national class action, resulting from this same predatory lending scheme. Our research focused on claims under the Real Estate Settlement Procedures Act, 12 U.S.C.

3

§§2601, *et seq.* ("RESPA"), the Truth in Lending Act and the Home Ownership and Equity Protection Act, 15 U.S.C. §§1601, *et seq.* ("TILA" and "HOEPA"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961, *et seq.* ("RICO").

9. And, because of our pursuit of these and other like cases, we also became familiar with other counsel around the country pursuing claims relating to predatory second mortgage loans, including Bruce Carlson and the claims he and others were bringing, as counsel for a putative class, against CBNV, GNBT and RFC.

10. In July 2003 we became aware of a proposed national class action settlement of actions pending in the United States District Court for the Western District of Pennsylvania involving Community Bank of Northern Virginia, Guaranty National Bank of Tallahassee and the Debtor which would encompass our two Missouri class actions and Missouri law claims and also release the federal claims we had been researching for our own planned nationwide action against these same entities. Mr. Carlson was lead counsel for the settling plaintiff class.

11. The proposed settlement was designed to resolve the claims of the plaintiffs in six separate class actions: (1) *Davis v. Community Bank of Northern Virginia*, Case No. 2:02-1202, United States District Court for the Western District of Pennsylvania ("*Davis*"); (2) *Sabo v. Community Bank of Northern Virginia, et al.*, Case No., 02-1563, United States District Court for the Western District of Pennsylvania ("*Sabo*"); (3) *Ulrich v. Guaranty National Bank of Tallahassee, et al.*, Case No. 02-1616, United States District Court for the Western District of Pennsylvania ("*Ulrich*"); (4) *Mathis v. Guaranty National Bank of Tallahassee, et al.*, Case No. 02-1999, United States District Court for the Western District of Pennsylvania ("*Mathis*"); (5) *Picard v. Community Bank of Northern Virginia, et al.*, Case No. 02-2000, United States District Court for the Western District of Pennsylvania ("*Picard*"); and (6) *Kessler v. GMAC-Residential Funding Corporation*, Case No. 03-0425, United States District Court for the Western District of

Pennsylvania ("*Kessler*"). These cases were consolidated under the last filed case, which was captioned as *Kessler v. RFC, et al.*, Case No. 03-0425, in the United States District Court for the Western District of Pennsylvania. The first-filed case, *Davis v. CBNV,* which named CBNV and RFC as defendants-was filed in Pennsylvania state court in May 2001 as a putative state-wide class action and was later removed to federal court (on federal preemption grounds).

12. The settlement class was defined to include all persons (1) who entered into a loan agreement with CBNV or GNBT, (2) whose loan was secured by a second mortgage or deed of trust on property located in the United States, and (3) whose loan was purchased by RFC. The class encompassed some 44,535 loans (dating back to as early as 1998).

13. The claims being released in the *Kessler* settlement included TILA and HOEPA claims that had not been asserted in the underlying actions being settled, but had significant monetary value. Therefore, on October 1, 2003 on behalf of borrowers from Missouri and Illinois our firm filed Notice of Objections to this settlement and a Motion to Intervene in the action being settled. Counsel for borrowers from other states also joined in this objection.

14. On December 4, 2003, the district court entered a final order approving the settlement. Our firm, as counsel for the Objectors, appealed the judgment approving the settlement to the United States Court of Appeals for the Third Circuit. In the late summer of 2005, the Third Circuit vacated the District Court's certification of the class and approval of the settlement. *See In re Community Bank of Northern Virginia.*, 418 F.3d 277 (3rd Cir. 2005) ("*Community Bank*"). As part of that ruling, the Third Circuit confirmed the propriety of the district court's decision to certify the settlement class under all the Rule 23 factors other than the concerns the court expressed about the adequacy of representation factor as related to class counsel having failed to assert the TILA an HOEPA claims that the Objectors championed.

15. While this first series of appeals to the Third Circuit were pending, our firm, along with others, filed the action captioned as *Hobson v. Irwin Union Bank & Trust Co.*, Case No. 7:04-2351, in the United States District Court for the Northern District of Alabama ("*Hobson*"). The *Hobson* action was a direct effort to pursue the TILA and HOEPA claims that were being released in the *Kessler* actions, as well as the RESPA and RICO claims that were actually asserted in *Kessler*.

16. In April 2005, the Judicial Panel on Multidistrict Litigation transferred Hobson and other following matters to the United States District Court for the Western District of Pennsylvania as part of a multidistrict proceeding captioned as "*In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation*" (MDL No.1674). The multidistrict proceeding consisted of the following actions:

    a.   *Hobson v. Irwin Union Bank & Trust Co.*, Case No. 7:04-2351, United States District Court for the Northern District of Alabama ("*Hobson*");

    b.   *Chatfield v. Community Bank of Northern Virginia*, Case No. 1:04-2235, United States District Court for the District of Maryland ("*Chatfield*");

    c.   *Ransom v. Community Bank of Northern Virginia*, Case No. 1:04-2236, United States District Court for the District of Maryland ("*Ransom*");

    d.   *Davis v. Community Bank of Northern Virginia*, Case No. 2:02-1202, United States District Court for the Western District of Pennsylvania ("*Davis*");

    e.   *Drennen v. Community Bank of Northern Virginia*, Case No. 05-0665-CV-WGAF, United States District Court for the Northern District of Illinois ("*Drennen*");

    f.   *Kessler v. GMAC-Residential Funding Corporation*, Case No. 03-0425, United States District Court for the Western District of Pennsylvania ("*Kessler*");

    g.   *Sabo v. Community Bank of Northern Virginia, et al.*, Case No., 02-1563, United States District Court for the Western District of Pennsylvania ("*Sabo*");

    h.   *Ulrich v. Guaranty National Bank of Tallahassee, et al.*, Case No. 02-1616, United States District Court for the Western District of Pennsylvania ("*Ulrich*");

i. *Mathis v. Guaranty National Bank of Tallahassee, et al.,* Case No. 02-1999, United States District Court for the Western District of Pennsylvania ("*Mathis*"); and

j. *Picard v. Community Bank of Northern Virginia, et al.,* Case No. 02-2000, United States District Court for the Western District of Pennsylvania ("*Picard*").

17. After the Third Circuit's 2005 decision, *Kessler* consisted of and remained a consolidation of the original *Kessler, Davis, Sabo, Ulrich, Mathis* and *Picard* actions.

18. After the Third Circuit remanded the *Kessler* matter back to the Western District of Pennsylvania, this firm continued to prosecute the *Hobson* action and to represent the Objecting Class Members in the *Kessler* action as part of the multidistrict proceeding. In connection with the prosecution of these claims, the undersigned counsel prepared extensive briefing on the merits of the RESPA, TILA/HOEPA and RICO claims which was referred to as the "Viability" analysis. We also served multiple interrogatories and requests for production on Community Bank of Northern Virginia; RFC; and Irwin Union Bank and Trust Company, Obtained and reviewed tens of thousands of pages of RFC's business records, served a *subpoena duces tecum* on the Federal Deposit Insurance Corporation, as receiver for GNBT and obtained thousands of pages of records related this predatory lending scheme.

19. As part of the "Viability" analysis in connection with the TILA and HOEPA claims, the Objectors retained a number of experts to review factual information and opine about the existence of TILA and HOEPA violations. One such expert was Margo Saunders an attorney with the National Consumer Law Center and an expert on predatory lending and federal lending laws, including TILA and HOEPA. Ms. Saunders reviewed full loan files from 10 borrowers and summaries relating to some 150 additional borrowers. Other experts we retained included Hasbrouck Haynes, Jr., CPA, William H. Dodson, a Georgia attorney specializing in real estate transactions and real estate title work and Missouri attorney John T. Coghlan, a title insurance

7

specialist; these experts reviewed hundreds of loan files. Such work by these experts confirmed the existence of TILA/HOEPA violations common to and arising from the same uniform actions as evidenced by these expert's review of hundreds of loans as a representative samplings of the loans of the putative class. Specifically, Plaintiffs' experts concluded that the Banks charged uniform fees for title examinations and "abstracts of title" on Lines 1102 and 1103 of all Class Members' HUD-1A Settlement Statements that were neither necessary nor in fact performed. Such fees cannot be excluded from the Finance Charge under 12 C.F.R. § 226.4(c) (7) because they are neither bona fide nor reasonable as a matter of law. As a result, the evidence establishes a uniform and mathematically proven material misstatement of the APR (which is derived from the Finance Charge) as to every loan -- a plain violation of HOEPA.

20. Based upon this work and our own investigations and experience, we presented extensive "Viability" briefing to the district court. WBSV also sought class certification in *Hobson*, to be appointed as interim lead class counsel in *Hobson* as well as the consolidated *Kessler* action and to file a Proposed Second Amended Class Action Complaint in the consolidated *Kessler* action.

21. During the summer of 2006, RFC and the two originating lenders reached an agreement to modify the previously vacated class action settlement. WBSV continued to represent Objectors to this settlement.

22. On August 14, 2008, after the parties had exhaustively briefed the matter, the United States District Court for the Western District of Pennsylvania approved the modified settlement finding that all the requirements for class certification under Rule 23 had been established. On behalf of the Objectors, we led a second appeal to the Third Circuit.

23. On September 22, 2010 the Third Circuit vacated the underlying settlement for a second time. *See In re Community Bank of Northern Virginia.*, 622 F.3d 275 (3rd Cir. 2010)

("*Community Bank II*"). The Third Circuit again noted the propriety of certification of these claims (RESPA and TILA/HOEPA) but for some adequacy of representation concerns that remained. Specifically, the Third Circuit found that because no class representatives for the Settling Plaintiffs had loans within one year of the operative filings, it was concerned about their ability to represent those class members who were within one-year. In this regard, the Third Circuit also took issue with the district court's limitation ruling and its application of the principals of relation back under Fed. R. Civ. P. 15 as related to the TILA/HOEPA claims.

24. Following remand from *Community Bank II*, counsel for Plaintiffs who had entered into the prior settlements, led by Mr. Carlson, and counsel for Objectors, led by WBSV, joined forces.

25. In connection with this allegiance, on September 20, 2011, the District Court appointed Bruce Carlson and me as co-lead Interim Class Counsel pursuant to Fed.R.Civ.P. 23(d) and 23(g)(3).

26. The efforts of our Firm and Mr. Carlson and his firm to identify and investigate the claims of the Plaintiffs are further demonstrated by the Joint Consolidated Amended Class Action Complaint and First Amended RICO Case Statements filed in the *In re Community Bank of Northern Virginia* multidistrict proceeding. The Complaint is attached as Exhibit A to the Declaration of R. Fredrick Walters, David M. Skeens and R. Bruce Carlson in Support of Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims [Doc. 2047]. The First Amended RICO case statement is 155 pages in length and so it would be cumbersome to attach but it can be viewed on PACER (U.S. District Court for the Western District of Pennsylvania, *In Re: Community Bank of Northern Virginia Mortgage Lending Practices Litigation*, Case No. 2:03-cv-00425, ECF No. 511). Both pleadings are indicative of the high level of factual and legal

understanding of the scheme at issue, the legal elements of their claims, and the requirements for class certification.

27. Since the *In re Community Bank* matter was remanded back to the district court, the case has proceeded on a litigation track. The parties have exchanged written discovery and Rule 26 disclosures. All Defendants moved to dismiss nearly all portions of the claims of the putative class. The district court scheduled oral argument on the Motions to Dismiss on September 18, 2012. That day, the district court announced that it would decide the Motion to Dismiss of PNC Bank (successor to CBNV) on the briefing and the Court also conferred with lead counsel for the parties and instructed them to submit a scheduling order to move forward with discovery relating to class certification. The district court did hear oral argument as to the separate motion to dismiss of the FDIC relating to its claim that class action claims cannot proceed against the FDIC as Receiver. As of the date of this Declaration, the district court has not issued a ruling on either PNC's or the FDIC's motions to dismiss.

28. With respect to the selection of the Named Plaintiffs in these matters, and for purposes of the Motion to Apply Bankruptcy Rule 7023, Movants sought to avoid potential intra-class conflict regarding the RESPA and TILA/HOEPA claims by selecting named Plaintiffs who closed loans within one year of the date of the relevant underlying complaints (*i.e.* the *Davis* and *Ulrich* Complaints) and those whose loans closed outside the one-year periods. As such, we have class representatives, as to both loans originated by CBNV and by GNBT, on "both sides" of the limitations issue.

29. As we explain with citations to authority in our Reply briefing, there is no requirement that members of a putative class must be broken into subclasses even if they have potentially conflicting interests as a result of class action litigation. And the notion that an attorney cannot represent multiple groups of Plaintiffs or separate subclasses is incorrect.

10

*Walters Bender's Class Action and Complex Litigation Experience*

30.     WBSV has extensive experience in complex and class action litigation. In support of the Rule 23(g) requirements, I have attached as **Exhibit A** the "*Walters, Bender, Strohbehn & Vaughan, P.C., Firm Biography – Complex and Class Action Litigation*" which is current as of today's date. This *Firm Biography* identifies a number of the class action cases involving the undersigned counsel and the members of this firm, and provides information concerning the attorneys at this firm including individual peer review ratings by Martindale Hubbell and brief biographies for each of the principal counsel who work on this matter. Each of the Firm's shareholders working on this matter is an experienced, AV-rated attorney.

31.     WBSV was class counsel and lead trial counsel in a predatory lending class action against the Debtor (*Mitchell v. Residential Funding Corp., at al.*, Case No. 03-CV-220489, Circuit Court of Jackson County, Missouri) which was tried to conclusion, and resulted in a verdict in excess of $100,000,000.00 for plaintiffs and a class of 302 Missouri second mortgage borrowers ($5.1million in actual damages and $99 million in punitive damages). Liability including the propriety of the punitive damage submission and actual damages were affirmed on appeal but the punitive award was reversed on an instructional error. Actual damages and interest and attorney fees were paid out under the judgment and the remaining punitive damages claim was settled to a cumulative total of nearly $34 million dollars.

32.     The Mitchell matter is just one of a number of class action cases pursued by our Firm on behalf of aggrieved second mortgage loan borrowers. Indeed, we have brought a dozen class action lawsuits relating to predatory second mortgage or other consumer lending schemes relating to excessive and illegal settlement fees or charges. In none of these cases have we ever been determined to be inadequate class counsel – nor have we ever been subject to any challenge

on that issue, including any challenge by RFC in the several cases in which they were a defendant.

33. From such cases, since 2007, WBSV has successfully achieved and gained court approval of 23 class action settlements relating primarily to predatory second mortgage lending schemes and a few predatory auto financing schemes, along with some 21 related individual settlements. From those efforts we obtained total recoveries of nearly $260 million dollars for the benefit of some 11,603 class members.

### *Walters Bender's Knowledge of the Applicable Law*

34. Our Firm has extensive knowledge of the applicable law underlying the Class members' claims which includes but is not limited to the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Home Ownership and Equity Protection Act, and the Racketeer Influenced and Corrupt Organizations Act, as well as the law and procedure related to class actions in federal court.

35. As noted above, prior to filing this lawsuit, WBSV dedicated significant time as part of its pre-filing investigation researching the law and possible claims in this lawsuit. WBSV has been litigating claims arising from the predatory lending scheme at issue since early 2001. That experience has of course educated us about the factual circumstances underlying this scheme and the legal theories and law that support the borrowers' claims.

36. The extensive briefing in the *In re Community Bank of Northern Virginia Second Mortgage Loan Litigation* multidistrict proceeding and in Third Circuit throughout two successful appeals demonstrate that WBSV is well-versed in TILA, HOEPA, RESPA and RICO, as well as the intricacies of federal law upon which class certification is premised and upon which Debtors base their legal defenses.

37. WBSV has also been actively involved since 1999 in class action litigation and class action litigation related specifically to predatory lending on second mortgage loans. We are intimately familiar with the various factual and legal defenses raised by similarly-situated defendants. In short, we have unparalleled expertise in class actions and commercial and lending law.

*The Resources That Walters Bender Will Commit to Representing the Class.*

38. Walters, Bender, Strohbehn & Vaughan, P.C. is comprised of 20 attorneys. We also currently employ 10 legal and administrative assistants, each of whom are familiar with and have worked or continue to work on consumer class action cases. We also currently have two other employees (and this number increases at times based on need) whose sole job is to store and organize loan file information for the individual class members we represent such that we can establish their damage claims and see that settlement payments reach them.

39. The Firm incorporates nationally recognized litigation support software (CT, Summation, Concordance and Sanctions) and case management strategies. Therefore, beyond the substantial individual capabilities of the above described staff, we have equipped them with the technology to handle large document organization, retention and production and have created in-house extensive document databases for complex multi-district litigation and class action cases. For example, our staff has created and managed databases for organization and production in excess of 500,000 documents in-house, and they have received training from certified experts relating to case management and trial software.

40. In sum, we have a "well-oiled machine" here at WBSV that has years of experience in managing consumer class action matters such as that presently before the Court.

41. WBSV will continue to commit all resources necessary to represent the Class through a trial and any related appeals. Thousands of hours and hundreds of thousands in

expenses have already been incurred in pursuing this litigation. Our commitment is evidenced by our willingness to come forward and participate substantially in this bankruptcy as counsel to a member of the Unsecured Creditors Committee, Rowena Drennen. Ms. Drennen is a long time client who was formerly an objector and is now a class representative in the Pittsburgh action and in the proposed class action that is the subject of the Rule 7023 Motion. In connection with her status as a member of the Creditor's Committee, we have hired experienced bankruptcy counsel – Dan Flanigan of Polsinelli Shughart – to represent Ms. Drennen and those similarly situated, which effort has cost our Firm, to date, in excess of $200,000. I believe we have more than demonstrated our commitment to this case and the putative class members and we remain willing and able to expend all resources reasonably necessary to achieve the best possible results for the class members consistent with the high standards that always guide our prosecutorial efforts.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 8, 2013

R. Frederick Walters