# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: COMMUNITY BANK OF NORTHERN VIRGINIA MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Hon. Gary L. Lancaster<br><br>Electronically Filed |

THIS DOCUMENT RELATES TO THESE ACTIONS:

| | |
|---|---|
| In re:<br>COMMUNITY BANK OF NORTHERN VIRGINIA AND GUARANTY NATIONAL BANK OF TALLAHASSEE SECOND MORTGAGE LOAN LITIGATION | Case No. 03-425 |

**JOINT MOTION FOR APPROVAL OF
MODIFIED AND ENHANCED SETTLEMENT AGREEMENT AND REQUEST FOR
BRIEFING SCHEDULE REGARDING FAIRNESS OF THE MODIFIED SETTLEMENT**

The Named Plaintiffs,[1] individually and as representatives of the Plaintiff Class, together with Defendants Mercantile Safe-Deposit & Trust Company, as successor to Community Bank of Northern Virginia ("CBNV"), the Federal Deposit Insurance Corporation (FDIC), as receiver for Guaranty National Bank of Tallahassee ("GNBT") (GNBT and CBNV, collectively, the "Banks"), and Residential Funding Corporation ("RFC") (collectively, the "Settling Parties"), respectfully advise this Court that they have reached a material modification of the Settlement Agreement and Release dated July 11, 2003 (the "Settlement Agreement"). A true and correct copy of Modification No. 1 to the Settlement Agreement (the "Modification") is attached as Exhibit 1. By this Motion, the Settling Parties summarize the essential terms of the Modification, explain how this Modification may impact the proceedings on remand and request that the Court establish a briefing schedule for the submission of briefs relating to the fairness of the class settlement set forth in the Settlement Agreement and the Modification ("the Modified

---

[1] Brian and Carla Kessler, Ruth J. Davis, John and Rebecca Picard, Nora Miller, William and Ellen Sabo, Robert and Rebecca Clark, Edward Kruska, Russell and Kathleen Ulrich, Thomas Mathis, Stephen and Amy Haney, and Patrice Porco.

Settlement") and any objections to the Modified Settlement by the Objectors. In support of this Motion, the Settling Parties state as follows:

1. As the Settling Parties make clear in the Modification, the Settling Parties are not making any admissions or concessions whatsoever with respect to any factual or legal assertions made with regard to the Settlement Agreement or any of the other issues before this Court on remand. Modification, Ex. 1 at ¶1. Indeed, the Settling Parties continue to believe that the original settlement was reasonable, adequate, and fair to the Class.

2. However, in an effort to move forward and resolve this Litigation and to remove any potential cloud over the settlement, Class Counsel undertook to negotiate a modification of the Settlement Agreement specifically designed to address the Third Circuit's concern that the posited claims under the Truth in Lending Act and the Home Ownership Equity Protection Act ("TILA/HOEPA") had not been asserted by Class Counsel "during negotiations of the settlement." In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation, 418 F.3d 277, 303 (3d Cir. 2005). The Settling Parties originally involved counsel for the Objectors in those discussions and attended a mediation in Florida with retired Judge Nicholas Politan. The mediation with the Objectors was unsuccessful, however.

3. Following the completion of the briefing pursuant to the Agreed Scheduling Order dated December 14, 2005, the Defendants and Class Counsel attended a mediation with former Judge Timothy K. Lewis in Washington D.C. on July 6, 2006. The mediation continued via telephonic meetings at various times over the course of the following 11 days. The Settling Parties, aided by Judge Lewis, reached the material terms of an enhancement to the original settlement on July 17, 2006.

4. On July 18, 2006, the Settling Parties and the Objectors presented extensive arguments to the Court regarding the "viability" (or lack thereof) of the TILA/HOEPA claims.

On July 24 and 25, 2006, after having reached an agreement on the modification of certain provisions of the Settlement Agreement relating to the relief available to Class Members, the Settling Parties attended a separate mediation with Judge Lewis regarding attorneys fees.

5. Without conceding or acknowledging the viability of any purported claims, the Modification provides an opportunity for Class Members to obtain significant additional benefits, which Class Counsel negotiated based on the assumption, for the sake of argument, that some borrower(s) might be able to overcome a motion to dismiss the TILA/HOEPA claims under Federal Rule of Civil Procedure 12(b)(6). The Modification enhances the Settlement Agreement to allow Class Members who submit a properly completed Proof of Claim Form to receive *an additional $332.00* from the Defendants.

6. By negotiating the Modification, Class Counsel has directly addressed the Third Circuit's concern regarding the assertion of the hypothetical TILA/HOEPA claims in settlement negotiations. The Settling Parties additionally have allocated specific consideration toward the hypothetical TILA/HOEPA claims (notwithstanding the very serious issues regarding their purported viability as evidenced by the extensive record on remand), and the Settling Parties have done so with the assistance of experienced mediators with extensive mediation and judicial experience.

7. The Settling Parties therefore respectfully submit that the Modification fully addresses the TILA/HOEPA issues discussed in the Third Circuit opinion and briefed on remand. The Court may consider the alleged TILA/HOEPA issues in evaluating the Modified Settlement under Rule 23.

8. Further details about the Modification are set forth below.

### A.    Overview

9.    On July 17, 2003, this Court conditionally certified a class in this case for settlement, preliminarily approved the original settlement, appointed Class Counsel, directed the mailing of notice to the Class and scheduled a fairness hearing on November 14, 2003. Following this conditional certification and preliminary approval, certain Class Members elected to opt out of the Class and exclude themselves from the original settlement. Other Class Members represented by various law firms lodged objections to the original settlement.

10.    On December 4, 2003, after a hearing, the Court issued an Order approving the original settlement of this class action on behalf of over 44,000 persons who obtained second mortgage loans from the Banks. Thereafter, certain law firms who had objected to the original settlement (the "Objectors") appealed to the U.S. Court of Appeals for the Third Circuit. On August 11, 2005, the Third Circuit issued an opinion and order which vacated this Court's Order finally approving the original settlement and remanded for further proceedings and additional findings in this Court. In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Second Mortgage Loan Litigation, 418 F.3d 277 (3d Cir. 2005). The Third Circuit did not vacate the July 17, 2003 Order conditionally certifying the settlement class.

11.    As they previously reported to the Court in their November 2, 2005 status report, the Settling Parties met with former Judge Timothy K. Lewis, as a mediator, on October 24, 2005 to discuss the Third Circuit opinion and to determine an appropriate course of action. Following the meeting with former Judge Lewis, the Settling Parties attended a status conference with the Court and the Objectors, and reiterated their belief that the original settlement agreement was fair, adequate and reasonable and should be approved. See Transcript of November 5, 2005 Status Conference at 9.

12.     Pursuant to the Agreed Scheduling Order, the Defendants filed extensive briefs and evidentiary submissions demonstrating that the hypothetical TILA/HOEPA claims were time barred and otherwise lacked factual and legal support.

13.     In addition, on March 31, 2006, Class Counsel filed a brief and other evidentiary submissions delineating their factual investigation of the hypothetical TILA/HOEPA claims, their strategic decision to forego asserting any such claims, and why those claims were not legally viable.

**B.     The Negotiations That Culminated In The Modification To The Original Settlement**

14.     Without conceding that the purported TILA/HOEPA claims are viable, the Settling Parties invited the Objectors to participate in a mediation aimed at addressing the Third Circuit's stated concerns. Specifically, on March 9 and 10, 2006, counsel for Defendants RFC and CBNV together with client representatives, Class Counsel, and counsel for the Objectors, participated in a mediation in Florida before former Judge Nicholas Politan (U.S. District Court for the New Jersey, retired). Judge Politan's best efforts notwithstanding, those mediated negotiations were unsuccessful. 2

15.     Class Counsel and counsel for the Defendants nonetheless continued extensive arm's length negotiations. Following the completion of the "viability" briefing, Class Counsel and counsel for Defendants agreed to attend a further mediation. This follow-up mediation was conducted July 6, 2006, in Washington, D.C. before Judge Timothy K. Lewis (U.S. Court of Appeals for the Third Circuit, retired). Judge Lewis continued the mediation via a series of telephone calls the following week, up to and including July 17, 2006. As Class Counsel advised

---

2       All parties, including the Objectors, signed a confidentiality agreement with respect to the mediation with Judge Politan. The Objectors, however, disclosed the mediation and its unsuccessful outcome in their brief filed with the Court on April 21, 2006.

the Court on July 18, 2006, the parties reached an agreement in principle on the material terms of a modification to the settlement agreement at that time.

16. Judge Lewis remained actively involved in the mediation of the remaining issues, including separate negotiations regarding attorneys fees. The Settling Parties signed the Modification to Settlement Agreement and Release on or before August 10, 2006.

**C.    The Terms Of The Modification**

    **1.    Additional Consideration To Class Members**

17. The original settlement committed the Defendants to paying up to $33 million to Class Members. Under the original settlement each Class Member would receive a minimum payment of $250.00 (and recipients of the $250 payment would be entitled to receive an additional $302 based on submission of a properly completed Proof of Claim Form). Certain Class Members would receive up to $925.00.[3] The original settlement was allocated to Class Members based on two factors: (1) when the loan closed; and (2) the borrower's state of residence when the loan closed.

18. The Modification does not reduce or impair Class Members' rights to receive the settlement payments under the original settlement. Rather, the Modification entitles Class Members who submit a properly completed Proof of Claim Form to receive an <u>additional</u> payment of $332.[4] Accordingly, recipients of the maximum $925 payment under the original settlement would be entitled to receive an additional $332 based on submission of a properly completed Proof of Claim Form, for a total maximum potential payment of $1,257. Recipients of the minimum $250 payment under the original settlement would be entitled to receive an

---

[3]    The Named Class Representatives also receive an additional payment of $1,500.00.

[4]    If two or more Class Members obtained a single loan from CBNV or GNB, they would be entitled to only one $332.00 payment.

additional $634 based on submission of a properly completed Proof of Claim Form ($302 under the original settlement plus $332 under the Modification) for a total potential payment of $884.

19.    More specifically, under the Modification every Class Member will be required to respond appropriately to four questions in order to be entitled to receive the additional $332.00 payment:

>    1.    Did you read your Settlement Statement (Form HUD-1) prior to obtaining your loan?
>
>    2.    At the time that you obtained your CBNV [or GNB] loan, did you believe that the Statement of Settlement Charges listed on your HUD-1 was accurate?
>
>    3.    At the time that you obtained your CBNV [or GNB] loan, did you believe that the Settlement Charges listed on your HUD-1 were for services actually performed?
>
>    4.    At the time that you obtained your CBNV [or GNB] loan, did you believe that the Settlement Charges listed on your HUD-1 were reasonable and appropriate?[5]

See Proof of Claim and Verification, Exhibit B (attached to Modification).

---

[5]    The Settling Parties further agreed that these same questions would be used to determine certain class members' eligibility for the additional $302 payment under the original settlement. The claim form in its original form and in its modified form represents a heavily negotiated and vigorously contested proxy for the burden on Class Members to plead and prove facts sufficient to invoke fraudulent concealment/equitable tolling. By agreeing to the claim form, none of the Settling Parties concede that the responses to these questions would be sufficient in the context of litigation. Nor do the Named Plaintiffs or Class Counsel concede that each of these inquiries would be necessary. Further, the need to plead and prove facts sufficient to warrant fraudulent concealment/equitable tolling is relevant to the analysis regarding class certification of any such claims.

20.    Notwithstanding Defendants' vigorous resistance to a further reduction in the borrowers' burden of proof, Class Counsel, with Judge Lewis' assistance, ultimately secured Defendants' agreement to the modified Proof of Claim Form.

21.    As the Settling Parties previously advised the Court, there are approximately 44,000 members of the Class. Accordingly, the Modification commits the Defendants to paying up to an *additional* $14.6 million to Class Members (for a total of up to $47.6 million) to settle this Litigation.

### 2.    Attorneys' Fees

22.    The Settling Parties also re-negotiated the provisions relating to attorneys' fees and costs payable by the Defendants. Specifically, under the modified Settlement, the Defendants will create a fund for the award of attorneys' fees and costs in the amount of $7.5 million. Class Counsel will petition the Court for an award of fees and costs in an amount not to exceed $7.5 million, to be paid from that fund.[6] Defendants also agree to pay up to an additional $2 million in attorneys' fees and costs, if so ordered by the Court. But, in no event shall the Defendants be required to pay more than $9.5 million.

### D.    Implications Of The Modification On The Proceedings Before This Court

#### 1.    Impact On The TILA/HOEPA Viability Briefing

23.    The Settling Parties' view of the original Settlement took into account the Defendants' and Class Counsel's independent assessments of (among other factors) the hypothetical TILA/HOEPA claims the Objectors later described to the Third Circuit and to this Court. After considering the Third Circuit's professed concerns and carefully studying the arguments set forth in the Objectors' TILA/HOEPA Viability Briefs, the Settling Parties have

---

6    The Defendants previously agreed to pay $8.1 million and the Court awarded Class Counsel $8.1 million by Order dated December 4, 2003.

not changed their views as to the viability of those claims.7 The Settling Parties also remain of the view that the Named Plaintiffs are adequate representatives of the Class because their interests are aligned with other members of the Class, in that: (a) their claims (and the claims of Class Members) are subject to Defendants' argument that all Class Members' TILA/HOEPA claims are barred by the one-year statute of limitations and/or by the three-year statute of repose; and (b) the argument has been raised that all Class Members may invoke one or more legal doctrines to toll the running of such statutes of limitation and/or repose (which argument Defendants strongly dispute).

24.     Class Counsel nonetheless has successfully negotiated an enhancement of the Settlement that commits Defendants to paying up to an additional $14.6 million to Members of the Class in consideration of those potential TILA/HOEPA claims. Moreover, although the Defendants vigorously dispute that the "viability" of the posited TILA/HOEPA claims should be examined under a Rule 12(b)(6) standard, Class Counsel negotiated the Modification as if the (relatively lenient) Rule 12(b)(6) standard applied.

**2.     No New Notice**

25.     After reviewing the relevant legal authorities, the Settling Parties have concluded that the law does not require additional notice to Class Members about the Modified Settlement, inasmuch as the Modification increases the amount of money potentially to be paid to Class Members, and does not diminish Class Members' rights under the original Settlement Agreement in any way. *See, e.g.*, In re Diet Drugs Products Liability Litigation, 2002 U.S. Dist. LEXIS 24771 (E.D.Pa. 2002); Denney v. Deutsche Bank AG, 443 F.3d 253, 270-71 (2d Cir. 2006). The notice to the previously "invalidated opt outs" discussed in the Third Circuit opinion remains a

---

7       Defendants continue to maintain that the TILA/HOEPA claims are not viable for all the reasons set forth in their briefs. Class Counsel continues to maintain their position that the purported TILA/HOEPA claims face serious obstacles and that Class Counsel made a reasonable and appropriate tactical decision in not asserting these claims.

separate issue and the determination that no additional notice should be required as to the existing Class Members does not affect this separate notice as contemplated by the Third Circuit.

### 3. The Settling Parties' Proposal

26. The Settling Parties submit that this Court should give the Objectors a reasonable period of time in which to comment on the Modification. The Court could then proceed to the final certification of the settlement class and analysis of the fairness, reasonableness, and adequacy of the Modified Settlement under Girsh v. Jepson, 521 F.2d 153, 156-57 (3d Cir. 1975), and In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liabl. Litig. ("GM Pick-Up Truck Litig."), 55 F.3d 768, 805 (3d Cir. 1995). Ultimately, the Settling Parties ask this Court to approve the Modified Settlement pursuant to Fed. R. Civ. P. 23(e).

27. The Settling Parties propose the following briefing schedule:

    a. The Settling Parties shall file any briefs and evidence relating to the final certification for settlement purposes and fairness of the Modified Settlement on or before September 15, 2006;

    b. The Objectors shall file any briefs and evidence relating to the final certification for settlement purposes and fairness of the Modified Settlement, including any objections thereto, on or before October 15, 2006; and

    c. The Settling Parties shall file any briefs and evidence in reply on or before October 31, 2006.

WHEREFORE, the Settling Parties respectfully request that this Court establish a briefing schedule regarding the final certification of the settlement class and analysis of the reasonableness, adequacy and fairness of the Modified Settlement.

Respectfully submitted,

RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC

s/Daniel Myers
A. Hoyt Rowell, III
Daniel Myers
**RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC**
1037 Chuck Dawley Blvd. Bldg A
Mt. Pleasant, SC 29464
**Counsel For The Named Plaintiffs And The Class**


CARLSON LYNCH LTD.

s/R. Bruce Carlson
R. Bruce Carlson
Gary Lynch
**CARLSON LYNCH LTD.**
P.O. Box 367
231 Melville Lane
Sewickley, PA 15143
(412) 749-1677
**Counsel For The Named Plaintiffs And The Class**

REED SMITH LLP

s/Thomas L. Allen
Thomas L. Allen
Roy W. Arnold
Donna M. Doblick
**REED SMITH LLP**
435 Sixth Avenue
Pittsburgh, PA 15219
Phone: 412.288.3066/3916/7274
Fax: 412.288.3063
tallen@reedsmith.com
rarnold@reedsmith.com
ddoblick@reedsmith.com
**Counsel for Residential Funding Corporation**

MEYER UNKOVIC & SCOTT LLP

s/David G. Oberdick
David G. Oberdick
MEYER UNKOVIC & SCOTT LLP
1300 Oliver Building
Pittsburgh, PA 15222
(412) 456-2800

F. Douglas Ross
ODIN FELDMAN & PITTLEMAN, P.C.
9302 Lee Highway, Suite 1100
Fairfax, VA 22031
(703) 218-2127
**Counsel For Community Bank of Northern Virginia**

FEDERAL DEPOSIT INSURANCE CORP.

s/William A. Dyess
William A Dyess
Legal Division, Commercial Litigation Unit
Federal Deposit Insurance Corporation
1717 H Street, N.W.
Room H-10166
Washington, D.C. 20429
**Counsel for FDIC, As Receiver for Guaranty National Bank of Tallahassee**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Joint Motion for Approval of Modified and Enhanced Settlement Agreement And for Briefing Schedule Regarding Fairness of Modified Settlement was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        s/Daniel Myers
                                        A. Hoyt Rowell, III
                                        Daniel Myers
                                        **RICHARDSON, PATRICK, WESTBROOK**
                                        **& BRICKMAN, LLC**
                                        1037 Chuck Dawley Blvd. Bldg A
                                        Mt. Pleasant, SC 29464