Hearing Date:  March 5, 2013 at 10:00 a.m. (ET)
Objection Deadline:  February 21, 2013 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jennifer L. Marines
Naomi Moss

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE DEBTORS TO <u>APPOINT LEWIS KRUGER AS CHIEF RESTRUCTURING OFFICER</u>**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION ..............................................................................................................................4

BACKGROUND .............................................................................................................................4

RELIEF REQUESTED ...................................................................................................................6

BASIS TO APPOINT LEWIS KRUGER AS CRO........................................................................6

    A.    The Post Asset Sales Estates and the Plan Process Warrant the
Appointment of a CRO........................................................................................................6

    B.    Mr. Kruger is Uniquely Qualified to Act as CRO ..............................................................8

    C.    Scope of Services ................................................................................................................9

COMPENSATION........................................................................................................................10

DISINTERESTEDNESS...............................................................................................................11

INDEMNIFICATION ...................................................................................................................12

BASIS FOR RELIEF REQUESTED ............................................................................................12

NOTICE ........................................................................................................................................15

NO PRIOR REQUEST..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
   60 B.R. 612 (Bankr. S.D.N.Y. 1986) ...................................................................................13

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re The Lionel Corp.)*,
   722 F.2d 1063 (2d Cir. 1983) ...............................................................................................12

*In re Del. & Hudson Ry. Co.*,
   124 B.R. 169 (D. Del. 1991) .................................................................................................13

*Fulton State Bank v. Schipper (In re Schipper)*,
   933 F.2d 513 (7th Cir. 1991) ................................................................................................13

*Myers v. Martin (In re Martin)*,
   91 F.3d 389 (3d Cir. 1996) ...................................................................................................13

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
   147 B.R. 650 (S.D.N.Y. 1992) .............................................................................................13

*Smith v. Van Gorkom*,
   488 A.2d 858 (Del. 1985) ....................................................................................................13

**STATUTES**

11 U.S.C. § 105(a) .......................................................................................................................12

11 U.S.C. § 363(b)(1) ..................................................................................................................12

**OTHER AUTHORITIES**

*In re The 1031 Tax Group, LLC*,
   Case No. 07-11448 (MG) (Bankr. S.D.N.Y. 2007) ..............................................................12

*In re AGH Liquidating, LLC (f/k/a Alexander Gallo Holdings, LLC)*,
   Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 13, 2011) ...............................................13

*In re Dana Corp.*,
   Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) ...............................................14

*In re Eastman Kodak Co.*,
   Case No. 12-10202 (REG) (Bankr. S.D.N.Y. Feb. 28, 2012) ...............................................13

*In re Harnischfeger Industries Inc.*,
   Case No. 99-2171 (Bankr. D. Del. Sept. 11, 2001) [Docket No. 11665] ..............................14

# TABLE OF AUTHORITIES

**Page(s)**

*In re Lehman Brothers Holdings Inc.*,
 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2278] .................. 14

*In re Motors Liquidation Corp. f/k/a In re General Motors Corp.*,
 Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) [Docket No. 2534].................. 13

*In re PRC, LLC*,
 Case No 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182]....................... 14

*In re Safety-Kleen Corp.*,
 Case No. 00-2303 (Bankr. D. Del. Sept. 11, 2001) [Docket No. 2825].................................. 14

*In re Tokheim Corp.*,
 Case No. 02-13437 (RJN) (Bankr. D. Del. Feb 25, 2003) [Docket No. 327] ......................... 13

*In re Velo Holdings, Inc.*,
 Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012) [Docket No. 204] ..................... 14

Transcript of Hearing, *In re Velo Holdings, Inc.*,
 Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012) .................................................. 14

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>"),[1] hereby move (the "<u>Motion</u>") for the entry of an order substantially in the form attached hereto as <u>Exhibit 1</u>, authorizing the Debtors to appoint Lewis Kruger ("<u>Mr. Kruger</u>") as Chief Restructuring Officer ("<u>CRO</u>") of the Debtors. In support of this Motion, the Debtors submit the Declaration of Pamela E. West (the "<u>West Declaration</u>") and the Declaration of Lewis Kruger (the "<u>Kruger Declaration</u>"), copies of which are attached hereto as <u>Exhibit 2</u> and <u>Exhibit 3</u> respectively, and incorporated by reference herein. In further support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1. Since the Debtors commenced these Chapter 11 cases on May 14, 2012 (the "<u>Petition Date</u>"), the members of the Debtors' existing senior management have worked exhaustively with the Debtors' advisors to maximize the value of the Debtors' estates, including through the sale of the Debtors' whole loan portfolio (the "<u>Whole Loan Sale</u>") and the sale of the Debtors' servicing and origination platform (the "<u>Platform Sale</u>" and together with the Whole Loan Sale, the "<u>Asset Sales</u>"). Following the Asset Sales, which the Debtors expect to close by mid-February, the Debtors' primary focus will be on (i) reaching and confirming a consensual Chapter 11 plan, (ii) resolving major disputed proofs of claim, (iii) managing the monetization of the Debtors' remaining regulated loan portfolio and other remaining assets, which collectively have a book value of approximately $1 billion, (iv) compliance with certain

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions [Docket No. 6] (the "<u>Whitlinger Affidavit</u>").

-1-

ny-1066764

governmental servicing-related obligations, and (v) managing the transition of information and personnel following the Asset Sales.

2. To bring these goals to fruition, the Debtors will need the continued support of a strong management team. Even after the Asset Sales are fully consummated, a critical group of management with the institutional knowledge necessary to carry out these goals will remain with the estates. However, the Debtors believe that a business level leader with restructuring experience is necessary to resolve the significant disputes with the Debtors' major stakeholders and remove barriers to the filing of a Chapter 11 plan. The Debtors' board of directors (the "Board") has long contemplated that the retention of an individual chief restructuring officer with significant restructuring expertise would be necessary. The Board has determined that it is in the best interests of the Debtors, their estates, and their creditors to appoint Mr. Kruger at this juncture as the CRO in these Chapter 11 cases to lead the Debtors through the complex restructuring issues remaining in the Debtors' cases.

3. The CRO's role will primarily comprise of spearheading the plan process and assisting remaining management with his restructuring expertise. The Debtors and their major stakeholders have been actively mediating important plan issues with the goal of achieving a consensual Chapter 11 plan. Because certain of the Debtors' creditors are critical of the Debtors' historical relationship with Ally Financial Inc. ("AFI"), the Debtors believe it is important to appoint an independent CRO to direct these plan discussions and lead the Debtors in the ongoing mediation. As such, the CRO will: (i) lead the Debtors in plan mediation and assist in the formation of a Chapter 11 plan; (ii) assist in the resolution of inter-estate claims; (iii) work with creditors to resolve interdebtor and intercreditor disputes, including the allocation of assets among the Debtors; (iv) work with the Debtors' major stakeholders and AFI

to continue the pursuit of a global settlement of the Debtors' claims against AFI that is acceptable to key parties (the "AFI Settlement"); and (v) assist the remaining management team with the resolution, settlement, and, as necessary, litigation of large disputed claims against the Debtors (collectively, the "CRO Duties").

4.  The Debtors believe that the CRO's efforts will complement, and not duplicate, the efforts of the remaining members of the Debtors' management team and the Debtors' professionals. The remaining members of management, who possess critical institutional knowledge, are integral to successfully managing the Debtors' transitional issues and addressing the substantial legacy issues with various government entities. This includes the ongoing foreclosure reviews in connection with both the FRB Consent Order and DOJ/AG settlement, and assuring that the new servicers (Ocwen Financial Corp. and Walter Management Investment Management Corp.) continue to comply with the terms of the DOJ/AG settlement in order to minimize risk to the estate during the enforcement period of that settlement. In addition, after the close of the Asset Sales, there will remain significant and material assets – approximately $1 billion of loans, real estate owned properties, securities, and insurance claims with respect to certain federally insured loans – that require existing management's knowledge and expertise to administer and monetize for the benefit of the Debtors' estates. Finally, members of management who remain with the estate will be integral to the assessment and resolution of the approximately 5,800 creditor claims that have been filed in these cases.

5.  The remaining employees and management possess vast institutional knowledge that makes them intrinsically invaluable and irreplaceable to the administration and ultimate disposition of these cases. Among the remaining employees is ResCap's general counsel, Tammy Hamzehpour, who has played an extensive role and will continue to do so throughout

these cases as chief business officer for the Debtors. However, the Debtors anticipate that Ms. Hamzehpour and her team will require additional assistance from an officer with restructuring expertise to tackle the numerous and complex restructuring issues that are paramount to reaching a successful resolution of these cases. Accordingly, the Debtors, in the exercise of their business judgment, have determined that the appointment of Mr. Kruger as CRO is necessary and warranted at this time.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

7. As of the Petition Date, the Debtors were a leading residential real estate finance company indirectly owned by AFI, which is not a Debtor. The Debtors were the fifth largest servicer of residential mortgage loans in the United States, servicing over 2.4 million domestic mortgage loans with an aggregate unpaid principal balance of approximately $374.2 billion. In addition, prior to the Petition Date, the Debtors and their non-debtor affiliates, including Ally Bank, were collectively the tenth largest originator of residential mortgage loans in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

8. On the Petition Date, each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating

ny-1066764

-4-

their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

9. On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine-member official committee of unsecured creditors (the "Creditors' Committee").

10. On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the Examiner [Docket No. 674].

11. On July 27, 2012, the Court entered the *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* [Docket No. 925], including the issuance of a report. On November 26, 2012, the Examiner filed the *Second Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 2263]. On February 8, 2013, the Examiner filed the *Third Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 2870].

12. On September 11, 2012, the Court entered an order granting extensions of the Debtors' exclusive periods to file a plan to December 20, 2012 [Docket No. 2489].

13. On October 23, 2012 and October 24, 2012, the Debtors successfully conducted an auction for the sale of the Platform Sale assets for $3 billion. On October 25, 2012, the Debtors conducted an auction for the sale of the Legacy Sale assets for $1.5 billion.

14. At a hearing held on November 19, 2012, the Court approved the Sale Motion on the record. On November 21, 2012, the Court entered orders approving the Sale Motion [Docket Nos. 2246 and 2247].

15. On December 20, 2012, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to February 28, 2013 [Docket No. 2489].

16. On December 26, 2012, the Court entered an order appointing the Honorable James M. Peck as mediator (the "Mediator") to assist in the structuring of a Chapter 11 plan and to assist in resolving other related disputes [Docket No. 2519].

17. The Debtors partially closed the Platform Sale on January 31, 2013. The Debtors closed the Legacy Sale on February 5, 2013. The Debtors anticipate that the balance of the Platform Sale will close on or about February 15, 2013.

## RELIEF REQUESTED

18. By this Motion, the Debtors seek an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code authorizing the appointment of Lewis Kruger as CRO for the Debtors, upon the terms and conditions set forth in the letter dated as of February 11, 2013 (the "Engagement Letter"), a copy of which is attached as Exhibit 4.

## BASIS TO APPOINT LEWIS KRUGER AS CRO

**A. The Post Asset Sales Estates and the Plan Process Warrant the Appointment of a CRO**

19. When the Debtors filed these cases, they did so contemplating the sale of an ongoing origination and servicing business. The Debtors were aware that any purchaser could determine to hire their senior officers. As a result, the Debtors anticipated that at an appropriate juncture a chief restructuring officer could be appointed to assist the Debtors' management. ResCap's Board has determined that at this juncture, it is essential that the Debtors appoint a chief restructuring officer to perform the CRO Duties. *See* West Declaration ¶ 4. Following an extensive diligence and interview process, on February 7, 2013, the Board, by unanimous vote,

approved the appointment of Mr. Kruger as CRO to the Debtors, and Mr. Kruger has functioned in such capacity since then. *See* West Declaration ¶ 4. The appointment of the CRO is crucial because post-closing of the Asset Sales, the Debtors expect that plan negotiations will move forward at a faster and more intense pace. The Debtors believe that the CRO will be able to provide the necessary restructuring experience to spearhead aggressive plan negotiations, lead the Debtors in plan mediation, and perform the CRO Duties.

20. The Debtors believe that the CRO will provide invaluable assistance during the ongoing mediation process and to lead the plan negotiations with the goal of reaching a consensual Chapter 11 plan. The CRO will participate in mediation and provide specialized restructuring advice to the Board in connection with the complex issues that are necessary to confirming a Chapter 11 plan.

21. The CRO's efforts will complement and not duplicate the efforts of the remaining management team. The Debtors' management team possesses the information and experience necessary to correctly assess certain interdebtor claims issues and the approximately 5,800 creditor claims that have been filed in these cases. Notably, as mentioned above, among those remaining with the Debtors post-Asset Sales is Tammy Hamzehpour, ResCap's general counsel. Ms. Hamzehpour has played an extensive role throughout these cases and has been vital in shepherding the Debtors to where they are today. She and the CRO will work hand-in-hand to guide the Debtors on the path to a successful conclusion of these cases. However, because Ms. Hamzehpour and the members of her team do not individually or collectively have experience with many of the complex restructuring issues that must be resolved in order to confirm a plan of reorganization in these cases, the appointment of an estate representative with such experience will provide significant assistance and guidance in forging a consensual plan.

B. **Mr. Kruger is Uniquely Qualified to Act as CRO**

22. In consideration of the complex issues remaining to be resolved after closing of the Asset Sales in connection with the paramount goal of formulating a consensual Chapter 11 plan and necessity of resolving large disputed claims in connection therewith, the Debtors have determined that Mr. Kruger is well qualified to assist the Debtors and their advisors given his extensive knowledge and expertise regarding Chapter 11 proceedings and professional standing in connection therewith.

23. As noted above, even after the Asset Sales there will remain a core group of senior officers and management personnel that possess a wealth of knowledge regarding the complex operations and history of the Debtors' businesses. Wrongfully or correctly, a number of stakeholders view that historical experience as an impediment to tackling matters such as the AFI Settlement and the allowance of intercompany claims. Putting aside the merits of such views, an independent CRO eliminates these concerns.

24. Mr. Kruger, who will act as CRO for the Debtors, has worked as a restructuring attorney for over forty years. Mr. Kruger has substantial knowledge and experience advising large companies and assisting troubled companies with stabilizing their financial condition, analyzing their restructuring options, and developing Chapter 11 plans. *See* Kruger Declaration ¶ 2. Accordingly, the proposed CRO possesses relevant experience and expertise regarding the Debtors that will assist him in providing effective and efficient services in these Chapter 11 cases.

25. Mr. Kruger is a partner and Co-Chair of the Financial Restructuring Group at Stroock & Stroock & Lavan LLP ("Stroock"), a law firm that has extensive experience in all aspects of restructuring and insolvency matters. As of the date of the Kruger Declaration, Mr.

Kruger was on official leave of absence from Stroock. *See* Kruger Declaration ¶ 3. Upon the Court's approval of the Engagement Letter and Mr. Kruger's appointment as CRO, Mr. Kruger will withdraw as a partner and Co-Chair of the Financial Restructuring Group at Stroock. *See* Kruger Declaration ¶ 3. Mr. Kruger played a major role in many of the significant reorganization proceedings in the United States, representing debtors, official and ad hoc creditors' committees, financial institutions and acquirers of assets. He has substantial knowledge and experience advising large companies and assisting troubled companies developing appropriate business plans to accomplish restructuring initiatives. The Debtors believe that Mr. Kruger's vast restructuring experience will be invaluable in leading plan negotiations and in the ongoing mediation.

**C.    Scope of Services**

26.    The Debtors anticipate that the CRO will assist the remaining members of the Debtors' management team with the following responsibilities:[2]

- Communicate and negotiate with major stakeholders;

- Participate in plan mediation, plan-related negotiations and provide assistance in all aspects of the plan process;

- Participate in negotiations with AFI;

- Provide advice regarding the allocation of any AFI Settlement;

- Assist the management team with the resolution, settlement and/or litigation of large disputed claims against the Debtors;

- Work with creditors to resolve interdebtor and intercreditor disputes; and

- Report directly to the Board.

---

[2] This summary is solely for the convenience of the Court and parties in interest. To the extent that this summary and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

27. The Debtors and the CRO intend that all of the services that the CRO will provide to the Debtors will be: (a) appropriately directed by the Board so as to avoid duplicative efforts among the other estate employees and the other professionals appointed in the case, and (b) performed in accordance with applicable ethical and fiduciary standards of the profession.

## COMPENSATION

28. Subject to approval by the Court, the Debtors propose to pay Mr. Kruger for the services as CRO at the hourly rate of $895 (the "Hourly Rate"), plus reimbursement, on a monthly basis, for all reasonable and necessary expenses incurred in connection with these Chapter 11 cases, including transportation costs, lodging, food, telephone, copying, and messenger services.

29. In addition to the Hourly Rate and expense reimbursement, the Engagement Letter provides that Mr. Kruger will have the right to earn a fee for the successful completion of his engagement (the "Success Fee"). Mr. Kruger and the Board are in the process of negotiating the amount of the Success Fee and the targets required to be achieved in order to earn such Success Fee. Once the parameters of the Success Fee are determined, the Debtors will separately seek Court approval for the Success Fee.[3]

30. Because the CRO is not being employed as a professional under section 327 of the Bankruptcy Code, Mr. Kruger will not submit quarterly fee applications pursuant to Bankruptcy Code sections 330 and 331. Mr. Kruger will, however, file with the Court, and provide notice to the U.S. Trustee and the Creditors' Committee, reports of compensation earned and expenses incurred on at least a quarterly basis, and parties in interest in these

---

[3] Consistent with the Jay Alix Protocol, the Debtors propose that approval of any Success Fee will be considered at the close of Mr. Kruger's engagement, subject to a reasonableness standard.

Chapter 11 cases shall have the right to object to fees paid and expenses reimbursed to Mr. Kruger within 20 days after Mr. Kruger files such reports. Such reports shall summarize the services provided and itemize the expenses incurred. Such compensation and expenses will be subject to Court review in the event an objection is filed.

31. Given the complex issues which the CRO may be required to address in the performance of his services, Mr. Kruger's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature, the Debtors submit that the fee arrangements in the Engagement Letter are reasonable.

### DISINTERESTEDNESS

32. The Debtors do not believe that Mr. Kruger is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code because of the role he has been elected to perform. Nonetheless, to the best of Debtors' knowledge, and as disclosed in the Kruger Declaration, Mr. Kruger does not have any connection or any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective advisors, except as may be set forth in the Kruger Declaration.

33. In connection with this proposed appointment, Mr. Kruger reviewed his business and personal relationships to determine the existence of any adverse interests to the Debtors or the entities identified as potential parties in interest in these Chapter 11 cases (collectively, the "Potential Parties in Interest"), listed on Appendix A to the Kruger Declaration.

ny-1066764

34. To the extent that Mr. Kruger discovers any new material relevant facts or disqualifying relationships that require disclosure, Mr. Kruger will file a supplemental declaration with the Court.

## INDEMNIFICATION

35. Consistent with the Jay Alix Protocol, Mr. Kruger agrees that as CRO, he will be entitled to receive whatever indemnities are made available during the term of the Engagement Letter to other officers of the Debtors, whether under ResCap's limited liability company agreements, whether by contract of otherwise, to the officers of the Debtors.

## BASIS FOR RELIEF REQUESTED

36. The Debtors seek approval of the appointment of Mr. Kruger pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) provides, in relevant part, that the trustee or debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

37. Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use may be approved. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re The Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (requiring an "articulated business justification"); *see also In re The 1031 Tax Group, LLC,* Case No. 07-11448 (MG) (Bankr. S.D.N.Y. 2007); *Myers v. Martin (In re Martin)*, 91 F.3d 389,

395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Courts have applied the section 363(b) standard when a debtor employs one or more individuals to serve as restructuring officers. *See, e.g., In re AGH Liquidating, LLC (f/k/a Alexander Gallo Holdings, LLC)*, Case No. 11-14220 (ALG) (Bankr. S.D.N.Y. Oct. 13, 2011) [Docket No. 187]; *In re Eastman Kodak Co.*, Case No. 12-10202 (REG) (Bankr. S.D.N.Y. Feb. 28, 2012) [Docket No. 448]; *In re Motors Liquidation Corp. f/k/a In re General Motors Corp.*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. June 25, 2009) [Docket No. 2534]; *In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb 25, 2003) [Docket No. 327].

38.    The Debtors have articulated a valid business justification for appointing and compensating the CRO. The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (Quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985).

39.    Moreover, as noted by this Court in *In re Velo Holdings Inc.*, in approving a debtor's valid exercise of its business judgment in appointing a chief restructuring officer, "…Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-

interest or gross negligence." Transcript of Hearing at 19:21-23, *In re Velo Holdings, Inc.,* Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012).

40. Therefore, because the Board has determined in good faith that the appointment of Mr. Kruger is in the best interests of these estates, the appointment of the CRO should be approved pursuant to section 363(b) of the Bankruptcy Code as an exercise of the Debtors business judgment.

41. In fact, this Court has authorized the appointment of officers utilizing this provision of the Bankruptcy Code on numerous occasions. *See In re Velo Holdings, Inc.,* Case No. 12-11384 (MG) (Bankr. S.D.N.Y. May 29, 2012) [Docket No. 204]; *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2278]; *In re PRC, LLC*, Case No 08-10239 (MG) (Bankr. S.D.N.Y. Feb. 27, 2008) [Docket No. 182]; *In re Dana Corp.,* Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 29, 2006) [Docket No. 740]. In addition, the appointment of Mr. Kruger is in compliance with the Jay Alix Protocol, which has been adopted by this Court.[4]

42. The Debtors believe that the appointment of Mr. Kruger as set forth herein is a sound exercise of the Debtors' business judgment. The proposed CRO has extensive experience as a restructuring professional. As described above, the Debtors believe that the CRO will provide services that benefit the Debtors' estates and creditors. In light of the foregoing, the

---

[4] On October 4, 2001, the Bankruptcy Court for the District of Delaware approved a settlement between the United States Trustee and Jay Alix and Associates ("JAA''), under which JAA, along with its affiliates, agreed to abide by certain guidelines in seeking to be appointed in future chapter 11 bankruptcy cases. The Stipulations, each dated September 11, 2001, were entered in the cases, *In re Safety-Kleen Corp.*, Case No. 00-2303 (Bankr. D. Del.) [Docket No. 2825] and *In re Hamischfeger Industries Inc.*, Case No. 99-2171 (Bankr. D. Del.) [Docket No. 11665], respectively. The Jay Alix Protocol has been followed by the United States Trustee and the United States Bankruptcy Court for the Southern District of New York.

-14-

ny-1066764

Debtors believe that appointment of Mr. Kruger is appropriate and in the best interests of the Debtors and their estates and creditors.

## NOTICE

43.   The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

44.   No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as <u>Exhibit 1</u>, (i) granting the relief requested herein approving the appointment of Lewis Kruger as CRO of the Debtors; and (ii) granting such other and further relief as the Court deems appropriate.

New York, New York
Dated: February 11, 2013

/s/ Gary S. Lee
Gary S. Lee
Lorenzo Marinuzzi
Jennifer L. Marines
Naomi Moss
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors
and Debtors in Possession*