## <u>EXHIBIT 4</u>

Engagement Letter

# ResCap

February 11, 2013

Lewis Kruger
Chief Restructuring Officer
180 Maiden Lane
New York, NY 10036

Re: Engagement Letter Between Residential Capital, LLC and Lewis Kruger

Dear Mr. Kruger:

This letter (the "Engagement Letter") confirms and sets forth the terms and conditions of the engagement between you, Lewis Kruger ("Mr. Kruger"), and Residential Capital, LLC, along with its affiliates, (collectively, the "Company"), including the scope of services (the "Services") to be performed and the basis of compensation for those Services. Upon execution of this letter by each of the parties below, this Engagement Letter will constitute an agreement between you and the Company.

Residential Capital, LLC and fifty (50) of its subsidiary-affiliates (collectively, the "Debtors") filed voluntary chapter 11 cases (the "Chapter 11 Cases") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on May 14, 2012 (captioned as *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG)). Accordingly, your appointment will be required to be approved by the Bankruptcy Court.

The Company understands that as of the date of this Engagement Letter, Mr. Kruger is on an official leave of absence from Stroock & Stroock & Lavan LLP ("Stroock"). Upon the Bankruptcy Court's approval of this Engagement Letter and Mr. Kruger's appointment as CRO, Mr. Kruger will withdraw as a partner from Stroock. Accordingly, Mr. Kruger will act as CRO in his capacity as an independent party.

1.    **Scope of Services**

In connection with this engagement, Mr. Kruger shall serve as the Chief Restructuring Officer (the "CRO") of the Debtors. During the term of this engagement, Mr. Kruger will not take on any new engagement without the express prior written consent of the Company. The Services to be performed by the CRO are as follows:

a.    Duties:

    i.    The CRO, in cooperation with the Company's executive management team, shall assist in developing and implementing a confirmable Chapter 11 plan to go effective in these Chapter 11 Cases;

    ii.    The CRO shall communicate and negotiate with the Debtors' lenders and key stakeholders and assist all participating parties to work towards a consensual plan of reorganization;

    iii.    The CRO shall participate in plan mediation efforts;

    iv.    The CRO shall be authorized by the Company's Board of Directors to make decisions on the Debtors' behalf, consistent with the Board's overall direction, with

respect to all aspects of plan negotiations and formation, in such a manner as is consistent with the business judgment rule, the provisions of local law, and the Bankruptcy Code;

v.    The CRO shall oversee and direct the implementation of a confirmed Chapter 11 plan so as to assist in efforts leading to and achieving plan effectiveness, to the extent necessary or appropriate;

vi.    The CRO shall assist the Company's management team with the resolution, settlement, and/or litigation of large disputed claims against the Debtors in connection with achieving a confirmed Chapter 11 plan;

vii.    The CRO shall work with creditors to resolve inter-Debtor and intercreditor disputes;

viii.    The CRO shall participate in negotiations with Ally Financial Inc. ("AFI") and the Debtors' major stakeholders to attempt to pursue a global settlement of the Debtors' claims against AFI that is acceptable to all key parties (the "AFI Settlement") to the extent any issue concerning the interpretation or implementation of the AFI Settlement arises;

ix.    The CRO shall provide advice regarding the allocation of any AFI Settlement proceeds amongst the Debtors' creditors;

x.    The CRO shall assist in the allocation of assets among the Debtors;

xi.    The CRO shall provide testimony in Bankruptcy Court as required or appropriate during the Chapter 11 Cases;

xii.    The CRO shall participate in meetings internally or with outside constituencies as requested by the Company; and

xiii.    The CRO shall provide such other services, advice, or assistance as may be requested by the Company from time to time in connection with this engagement.

b.    Additional Responsibilities: While Mr. Kruger's engagement does not extend to representing the Company's individual directors, officers, employees, or shareholders, upon the mutual agreement of the Company and Mr. Kruger, Mr. Kruger may provide information or advice to directors, officers, or employees in their corporate capacities.

The CRO shall not be obligated to be available to perform Services hereunder for any specific minimum number of hours or at any specific location during any period, it being understood that Mr. Kruger shall be obligated to furnish such hours of Services as he deems necessary to perform his duties as CRO.

February 11, 2013
Page 3 of 6

The Services, as outlined above, are subject to change as mutually agreed between the Company and Mr. Kruger, and at all times shall encompass those consistent with the parties' ethical and fiduciary obligations.

   c.   <u>Reporting</u>:  The CRO shall report to the Board of Directors of the Company.

2.     **Compensation**

   a.   <u>Fee</u>:  Mr. Kruger will be paid by the Company for the Services of the CRO at the hourly billing rate of $895 per hour.  Such rate shall be subject to adjustment annually at such time as mutually agreed upon by the Company and Mr. Kruger, but in no event will such rate change prior to December 31, 2013.

   b.   <u>Expenses</u>:  Mr. Kruger will be reimbursed by the Company for the reasonable actual out-of-pocket expenses of the CRO incurred in connection with and specifically related to this engagement, such as travel, accommodations, meals, duplications, computer research, messenger, and certain telephone charges.  In addition, Mr. Kruger shall be reimbursed by the Company for the reasonable fees and expenses of his counsel incurred in connection with the drafting and enforcement of the Engagement Letter, if necessary.  The reimbursement of expenses will be consistent with the Local Bankruptcy Rules of the Bankruptcy Court.

   c.   <u>Billing</u>:  All fees and expenses due to Mr. Kruger will be billed to the Company on a monthly basis.  Bills are payable within ten (10) business days of presentation.  All bills will be accompanied by reasonable back-up documentation.

   d.   <u>Success Fee</u>:  In addition to regular fees, the Company and Mr. Kruger agree that Mr. Kruger may, in the future, request a Success Fee upon the confirmation of a plan of reorganization or upon the occurrence of a significant milestone to be later defined and determined in these Chapter 11 Cases.  The approval of the amount and the appropriateness of the Success Fee, if any, will be at the sole discretion of the Company's Board of Directors after consultation with the Official Committee of Unsecured Creditors of the Chapter 11 Cases.  The parties acknowledge that any Success Fee would require appropriate notice and ultimately Bankruptcy Court approval.

3.     **Term**

The engagement will commence as of the date of this Engagement Letter, and shall continue on a month to month basis until terminated by either party, whereby such termination may be effected by either party without cause by giving thirty (30) days' written notice to the other party.

In the event of any such termination, any fees and expenses due to Mr. Kruger shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).  The Company may immediately terminate Mr. Kruger's Services as CRO for cause by giving written notice to Mr. Kruger.  Upon any such termination, the Company shall be relieved of all of its payment obligations under this Engagement Letter, except for the payment of

February 11, 2013
Page 4 of 6

fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). For purposes of this agreement, "Cause" shall mean if: (i) the CRO is convicted of, admits guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony; (ii) the CRO willfully disobeys a lawful direction of the Company's Board of Directors; or (iii) a material breach of any of the CRO's material obligations under this Engagement Letter that is not cured within thirty (30) days of the Company's written notice thereof to Mr. Kruger describing in reasonable detail the nature of the alleged breach.

4. **Conflicts**

   a. The Company and Mr. Kruger have undertaken a review of their records to determine Mr. Kruger's professional relationships with the Debtors, their creditors, and other related parties. Neither party is currently aware of any relationship that would create a conflict of interest with Mr. Kruger and the Debtors or those parties in interest of which the Company has so listed. Because Mr. Kruger is a restructuring attorney who serves clients in numerous cases and on a broad basis, both in and out of court, it is likely that Mr. Kruger may have rendered or will render services to, or have business associations with, other entities or people which had, have, or may have relationships with the Debtors and their lenders. In the event that Mr. Kruger accepts the terms of this engagement, Mr. Kruger will not represent, and Mr. Kruger has not represented, the interests of any such entities or people in connection with the Chapter 11 Cases. Each of the Debtors acknowledges and agrees that the Services being provided hereunder are being provided on behalf of them, and the Company, on behalf of each Debtor, hereby waives any and all conflicts of interest that may arise on account of the Services being provided on behalf of any other entity.

   b. Stroock will not be considered to have been retained by the Company or the Debtors. Mr. Kruger will not disclose to Debtors any confidence of any kind of any client of Stroock.

   c. For purposes of ethical rules governing conflicts, Mr. Kruger will not be deemed associated with Stroock, and Stroock will not check the matters on which Mr. Kruger will be working while employed as CRO to ensure that Stroock will not have a conflict.

   d. The Debtors will not assert that any knowledge obtained by Mr. Kruger should be attributed to Stroock, nor will the Debtors assert this for any other aspect of Mr. Kruger's employment as CRO as a basis for a conflict of interest with the Debtors if Stroock is engaged, or becomes engaged, in representing any client in relation to matters on which Mr. Kruger has been engaged on behalf of the Debtors.

5. **Confidentiality**

The CRO shall keep as confidential all non-public information received from the Debtors and major stakeholders in these Chapter 11 Cases in conjunction with this engagement, except (i) as requested from the Company or its legal counsel, (ii) as required by legal proceedings, or

February 11, 2013
Page 5 of 6

    (iii) as reasonably required in the performance of duties as CRO.  Mr. Kruger will not disclose to Stroock any confidences or work product regarding his work for the Debtors.  All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public, other than as a result of a breach of this provision.

6.    **Indemnification**

    a.    The Company shall indemnify, defend and hold harmless Mr. Kruger in his capacity as CRO from and against any and all losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including the reasonable fees and expenses of counsel), taxes and penalties of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted at any time against Mr. Kruger with respect to the performance of his Services under this Engagement Contract, or the transactions contemplated hereby; *provided, however,* that such limitation shall not relieve the CRO of any personal liability he may have to the Company or any Debtor for the CRO's own bad faith, willful misconduct, or gross negligence.  Furthermore, the Company shall indemnify Mr. Kruger to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's limited liability company agreements, by contract, or otherwise.  The CRO will have the same coverage as an officer of the Company as provided currently under D&O coverage maintained by AFI.  The Company shall, to the extent it is aware or so informed by AFI, give thirty (30) days' prior written notice to Mr. Kruger of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy.  The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws, or other organizational documents or policies shall affect the CRO's rights hereunder.

    b.    Mr. Kruger shall defend, indemnify, and hold harmless each of the Debtors and its officers, directors, employees, agents, and representatives, and the heirs, successors, and assigns thereof (collectively, the "Debtor Indemnitiees") from and against any and all claims against the Debtor Indemnities arising from any acts by Mr. Kruger of bad faith, willful misconduct, or gross negligence.

    c.    Mr. Kruger's work as CRO is not work performed as an attorney at Stroock.  Stroock will not indemnify or provide insurance coverage for Mr. Kruger's work as CRO.

    d.    The indemnification provisions of this section shall survive the termination of the engagement.

7.    **Direction**

The CRO shall not be required to take or refrain from taking any such action if it shall have determined, or shall have been advised by counsel, that such performance is likely to involve the CRO being personally liable or is contrary to the terms of the Engagement Letter, or is otherwise contrary to law.

February 11, 2013
Page 6 of 6

8.      **Miscellaneous**

This Engagement Letter: (i) shall be governed and construed in accordance with the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (ii) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (iii) may not be amended or modified, except in writing executed by each of the signatories hereto.

The Company and Mr. Kruger agree to waive a trial by jury in any action, proceeding, or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or Mr. Kruger hereunder. The Company and Mr. Kruger agree, to the extent permitted by applicable law, that any Federal Court sitting within the Southern District of New York shall have exclusive jurisdiction over any litigation arising out of his Engagement Letter; to submit to the personal jurisdiction of the Courts of the United States District Court for the Southern District of New York; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of New York for any litigation arising in connection with this Engagement Letter. The Company and Mr. Kruger agree that the Bankruptcy Court, having jurisdiction over the Chapter 11 Cases (or any case into which it may be converted), shall have exclusive jurisdiction over any and all matters arising under, or in connection with, their obligations hereunder.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms and its effective date, and return an executed copy of it to Residential Capital, LLC at the above address.

Yours truly,

**Residential Capital, LLC**

By:     _____
        Tammy Hamzehpour
        General Counsel

**Accepted and Agreed:**

**Lewis Kruger**

By:     _____
        Lewis Kruger
        Chief Restructuring Officer