**Proposed Hearing Date and Time: February 27, 2013 at 2:00 p.m. (prevailing Eastern Time)**
**Proposed Objection Deadline: February 20, 2013 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Arielle Warshall Katz
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
In re:                                    :   Chapter 11
                                          :
RESIDENTIAL CAPITAL, LLC, et al.,         :   Case No. 12-12020 (MG)
                                          :
Debtors.                                  :   Jointly Administered
                                          :
------------------------------------------------------------ x
```

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO PRECLUDE THE DEBTORS FROM OFFERING
ANY EVIDENCE OF THEIR RELIANCE ON COUNSEL FOR ADVICE
CONCERNING THE EVALUATION, NEGOTIATION
OR APPROVAL OF THE RMBS SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 3

    A.    The Debtors Invoked Privilege Throughout Discovery to Block Inquiry
into Their Communications with Counsel ................................................................ 3

    B.    Questions Seeking the Substance of Attorney-Client Communications
Were Scrupulously Avoided During the Depositions of the Debtors'
Witnesses, and The Debtors Refused to Allow Their Witnesses to
Testify Whenever Questions Of That Type Were
Asked…………………………………………………………………………5

    C.    After Asserting Privilege, the Debtors Would Now Rely on
Communications with Counsel to Defend the RMBS Settlement ........................... 7

JURISDICTION AND VENUE ............................................................................................. 10

RELIEF REQUESTED ........................................................................................................... 10

ARGUMENT .......................................................................................................................... 10

    HAVING CHOSEN TO SEEK APPROVAL OF THE RMBS SETTLEMENT
WITHOUT PROOF OF THEIR RELIANCE ON THE ADVICE OF COUNSEL,
THE DEBTORS SHOULD NOW BE PRECLUDED FROM OFFERING SUCH
PROOF ........................................................................................................................ 10

NOTICE .................................................................................................................................. 15

NO PRIOR REQUEST ........................................................................................................... 15

CONCLUSION ....................................................................................................................... 16

## EXHIBITS

**Exhibit A** -- Proposed Order

**Exhibit B** -- Letter from the Debtors to Judge Glenn, dated November 4, 2012 [Dkt. 2052].

**Exhibit C** -- Debtors' Privilege Log, dated October 12, 2012.

**Exhibit D** -- Debtors' Supplemental Privilege Log, dated Oct. 26, 2012.

**Exhibit E** -- Excerpts from Deposition Transcript of Thomas Marano, dated November 12, 2012.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arista Records LLC v. Lime Group LLC*,
06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. April 20, 2011) .........................11, 12, 14

*Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*,
257 F. Supp. 2d 751 (S.D.N.Y. 2003) ....................................................................................12

*Chesapeake Corp. v. Shore*,
771 A.2d 293 (Del. Ch. 2000) ..........................................................................................13, 14

*In re County of Erie*,
546 F.3d 222 (2d Cir 2008) ...........................................................................................13 n.4

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d. Cir. 2000) ................................................................................................11

*In re Kidder Peabody Sec. Litig.*,
168 F.R.D. 459 (S.D.N.Y. 1996) ..........................................................................................11

*E.G.L Gem Lab Ltd. v. Gem Quality Inst., Inc.*,
90 F. Supp. 2d 277 (S.D.NY. 2000), *aff'd*, 4 F.App'x 81 (2d Cir. 2001) ..............................12

*McLean v. Garage Mgmt. Corp.*,
10 Civ. 3950 (DLC), 2012 WL 1358739 (S.D.N.Y. April 19, 2012) .....................................12

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ..............................................................................................................13

*Trouble v. The Wet Seal, Inc.*,
179 F. Supp. 2d 291 (S.D.N.Y. 2001) ........................................................................11, 12, 13

*U.S. v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991) ................................................................................................11

*Vicinanzo v. Brunscwig & Fils, Inc.*,
739 F. Supp. 891 (S.D.N.Y. 2008) ................................................................................13 n.4

STATUTES

11 U.S.C. § 105(a) .................................................................................................................10

28 U.S.C. § 157(b) .................................................................................................................10

28 U.S.C. § 1334....................................................................................................................10

28 U.S.C. § 1408.................................................................................................................10

28 U.S.C. § 1409.................................................................................................................10

**OTHER AUTHORITIES**

Restatement (Third) of the Law Governing Lawyers § 80......................................................13 n.4

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT:

    The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby files this motion (the "**Motion**") to preclude the Debtors from offering at the hearing of their Rule 9019 motion (as supplemented, the "**9019 Motion**") [Dkt. Nos. 320, 1176, 1887] for approval of proposed RMBS Trust Settlement Agreements (the "**RMBS Settlement**" or "**Settlement**") any evidence of their reliance on counsel for advice concerning the evaluation, negotiation, or approval of the Settlement.  In support of this Motion, the Committee states as follows:[1]

## PRELIMINARY STATEMENT

    1.    By letter to the Court dated November 4, 2012 (Exh. B) [Dkt. 2052], the Debtors contested the Committee's challenge to their privilege logs identifying more than 2,200 documents withheld based on the attorney-client privilege.  To defeat that challenge, the Debtors represented to the Court that the 9019 Motion "does not put attorney advice regarding [the Settlement] at issue or waive the privilege." *Id*. at 8.  Leaving no doubt about their intention not to use the advice of counsel to prove the reasonableness of the Settlement, the Debtors "explicitly disclaim[ed]" any such intention. *Id*. at 9.  Based on these unequivocal statements to the Court, the Committee withdrew its challenge, recognizing that the sword-shield doctrine on which the challenge largely hinged would no longer apply.  As a result, discovery proceeded without any of the withheld documents, and at the depositions of the Debtors' witnesses, effort was made to avoid posing any questions that might require disclosure of privileged

---

[1]    Each of the RMBS Trustees that serves on the Committee (i.e., The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, and U.S. Bank National Association) has abstained from all Committee votes on and deliberations concerning this Motion.

communications with counsel.  In those instances where the Debtors' counsel believed questions did invade the privilege, they consistently instructed the witnesses not to answer any questions that might reveal attorney-client communications.

2.      The factual record developed through this discovery led the Committee, as well as a number of other parties, to file objections to the RMBS Settlement as both unreasonable and the product of a deeply flawed process that did not involve arm's length bargaining.  With these objections in hand, however, the Debtors have now done an abrupt about-face, filing on February 1, 2013 reply briefs seeking to defend the Settlement based on their reliance on the advice of counsel.  The reply briefs demonstrate that the Debtors propose to support this defense through still undisclosed evidence completely blocked from discovery, including proof that the "critical negotiations" for the Settlement were handled by their attorneys and that the directors who approved the Settlement did so based on extensive information they had gleaned from the "advice and counsel of their legal and financial advisors." [Dkt. 2803 at 29; Dkt. 2804 at 2, 9].

3.      Such tactics must not be tolerated.  The position now adopted by the Debtors not only flies in the face of the Debtors' own prior representations to the Court, but also runs afoul of established law prohibiting the use of the privilege as both a sword and a shield. For these reasons, as discussed more fully below, the Debtors should be barred from asserting the advice of counsel and precluded from introducing at trial any evidence, oral or written, of their reliance on such advice with respect to (i) the evaluation of the claims encompassed by the RMBS Settlement, (ii) the negotiation of the Settlement, or (iii) the approval of the Settlement. Particularly since the direct testimony of the Debtors' witnesses will be introduced through

declarations rather than live, it is important that an order to this effect be entered before those

declarations are submitted.

## BACKGROUND

A.    **The Debtors Invoked Privilege Throughout Discovery**
**to Block Inquiry into Their Communications with Counsel**

4.    Discovery relating to the 9019 Motion began last August and continued at

a breakneck pace over the next four months.  During that time, the parties — and this Court —

spent countless hours litigating discovery disputes.  As the Court is aware, no less than seven

judicial conferences were held to address a host of discovery skirmishes between the parties,

including disagreements over the scope and adequacy of document production, the identity and

number of witnesses to be deposed, the length of depositions, and the Debtors' extensive

assertions of privilege.  All of these disputes stemmed from the Debtors' staunch resistance to

full disclosure of the process by which the RMBS Settlement was made.

5.    At the September 19, 2012 hearing, the Court made clear that creditors

were entitled to full and fair discovery into the negotiation and approval of the Settlement,

including discovery of the Debtors' settlement communications.  Sept. 19, 2012 Hr'g Tr. 41-45.

Despite the Court's statements in this regard, however, the Debtors continued to resist the

Committee's inquiry into the facts giving rise to the Settlement.

6.    After supposedly completing their production of requested documents, the

Debtors provided the Committee with privilege logs reflecting more than 2,200 documents

withheld as protected by the attorney-client privilege.[2]   Of those documents, hundreds were

emails authored by the attorneys at Morrison & Foerster, who, according to the Debtors, had

"conducted the negotiations" regarding the RMBS Settlement.  [Dkt. 2803 at 3; Dkt. 2813, Exh.

99].  The logs also showed at least 70 emails sent on May 9, 2012 alone — the day the Board of

Residential Capital, LLC ("ResCap") approved the Settlement.  The documents withheld by the

Debtors encompassed a range of categories involving communications with counsel, including:

- Emails between attorneys at Morrison & Foerster and Thomas Marano, ResCap's CEO and Board Chairman, concerning the RMBS Settlement.

- Emails between attorneys at Morrison & Foerster and James Whitlinger, ResCap's CFO and Board member, concerning the "ask" of Kathy Patrick for the Steering Committee she represented.

- Emails between attorneys at Morrison & Foerster and Tammy Hamzehpour, ResCap's in-house General Counsel, concerning the RMBS Settlement.

- Presentations to the ResCap Board concerning representation and warranty ("R&W") claims of government sponsored entities ("GSEs"), including those made less than a week before the RMBS Settlement was approved by the ResCap Board.

- Emails with ResCap Board members concerning the amendments to the RMBS Settlement.

- Communications between the Debtors and Carpenter Lipps, the Debtors' principal outside counsel for RMBS-related litigation.[3]

7.      Throughout the discovery process, the Committee protested the Debtors'

assertions of privilege, and pressed for the production of all documents bearing on the

---

[2]   On October 12, 2012, the Debtors submitted an updated privilege log identifying 1,280 documents withheld on privilege grounds.  Exh. C.  Two weeks later, on October 26, they supplemented their privilege log with an additional 1,041 documents.  Exh. D.

[3]   Not surprisingly, Ally Financial, Inc. ("AFI") stood firmly with the Debtors in withholding documents on privilege grounds, submitting privilege logs including more than 30 presentations made by AFI's Chief Litigation Counsel, Timothy Devine, to the ResCap Board concerning R&W claims held by private label securitization ("PLS") trusts, as well as many other communications between Mr. Devine and ResCap's employees and counsel. [Dkt. 2053-1, Ex. C].

evaluation, negotiation, and approval of the RMBS Settlement, including any containing legal advice or analyses of claims and/or potential liabilities communicated to the ResCap Board or its individual members. *See, e.g.,* Oct. 4, 2012 Hr'g Tr. 48-53. Following a series of largely unsuccessful meet-and-confer sessions regarding the Debtors' withheld documents, the parties entered into a stipulation in which the Debtors agreed to produce, under a limited waiver, an extremely narrow range of documents concerning the approval of the RMBS Settlement. [Dkt. 2066].[4] The mere handful of documents thereafter produced pursuant to the stipulation included a single two-page presentation distributed to the ResCap Board on May 9, 2012, just minutes before the Board approved the Settlement. The Debtors refused to produce any of their remaining withheld documents, including either presentations made to the ResCap Board concerning R&W claims in general or even communications between individual ResCap Board members and counsel with respect to the RMBS Settlement itself. The Committee was accordingly denied access to any of these documents.

**B.    Questions Seeking the Substance of Attorney-Client Communications Were Scrupulously Avoided During the Depositions of the Debtors' Witnesses, and The Debtors Refused to Allow Their Witnesses to Testify Whenever Questions Of That Type Were Asked**

8.    Besides shielding from discovery their written communications with counsel, the Debtors also denied the Committee an opportunity to inquire into the substance of attorney-client communications during the depositions of the Debtors' witnesses. At the September 19 hearing, the Debtors strongly objected to depositions of their outside counsel, representing to the Court that their internal business persons, including their in-house counsel,

---

[4]    The stipulation expressly preserved the Committee's rights to contest the Debtors' (or AFI's) assertion of the attorney-client privilege, the attorney work product doctrine, and/or the common interest privilege with respect to all documents.

had been "substantially involved" in the negotiation of the RMBS Settlement.  Sept. 19, 2012

Hr'g Tr. 16-19, 39-41.  As a result, the depositions of fact witnesses in connection with the 9019

Motion were limited to those persons as well as to ResCap's directors.  *Id*.  In so limiting the

depositions, however, the Court admonished the Debtors:

> [Y]ou're going to have a real problem if you're going to assert
> privilege with respect to communications from counsel that form
> any part of the basis for directors approving the settlement.

*Id*. at 28.  The Court's warning appears to have fallen on deaf ears.

9.    Based on the Debtors' representations that they were not relying on the

advice of counsel in connection with their 9019 Motion, the Committee and others who

examined the Debtors' witnesses at depositions did not seek to elicit the substance of privileged

communications.  But whenever the Debtors believed questions crossed into privileged territory,

they consistently invoked the attorney-client privilege in instructing witnesses not to answer.

The deposition of Mr. Marano, ResCap's CEO and Chairman, typified the Debtors' approach in

this regard.  Mr. Marano was repeatedly instructed not to reveal the substance of any of his

communications with counsel concerning the RMBS Settlement — *despite* his clear and

unequivocal testimony that he in fact "relied" on the advice of counsel in approving the

Settlement.  Exh. E at 188-89.  Indeed, Mr. Marano was instructed not to answer questions

concerning an array of subjects that bear directly on the reasonableness of the Settlement and the

process through which it was negotiated and approved:

- His understanding of the legal defenses available to defeat the R&W claims
  encompassed by the Settlement (*Id*. at 108-14, 116-18);

- His communications with counsel concerning ResCap's potential liability for
  the R&W claims (*Id*. at 217-20);

- His knowledge concerning the extent to which the Plan Support Agreements were integral to the RMBS Settlement (*Id*. at 122-24);

- The legal advice given to the ResCap Board concerning the Debtors' potential claims against AFI (*Id*. at 69-73); and

- His communications with counsel concerning his experience as ResCap's CEO with transactions between ResCap and AFI during the period leading up to the RMBS Settlement (*Id*. at 42-49).

The Committee was thus prevented from discovering any of the communications Mr. Marano had with counsel that informed his decision to approve the RMBS Settlement.

## C.    After Asserting Privilege, the Debtors Would Now Rely on Communications with Counsel to Defend the RMBS Settlement

10.    On February 1, 2013, the Debtors filed two separate reply briefs — spanning nearly 100 pages — in response to the objections filed by the Committee and various creditors to the 9019 Motion.   [Dkt. 2803, 2804].   They used the opportunity to flout the representations they had made to the Court disavowing any intention to use advice of counsel to defend the RMBS Settlement, and to rewrite the record developed in discovery by including in their briefs numerous alleged facts — nowhere found in the record — involving the legal advice they received and relied upon in making the Settlement.

11.    The Debtors now flatly admit that ResCap's directors relied on communications from counsel in approving the $8.7 billion RMBS Settlement:

> [T]he evidence shows the directors approved the settlement in good faith and after carefully considering its pros and cons.  **They approved it after receiving the advice and counsel of their legal and financial advisors.**   And they approved it after considering the consequences of not settling .…

[Dkt. 2804 at 2] (emphasis added).   The Debtors state that "when it came to the critical
negotiations, the Debtors relied exclusively on Ms. Hamzehpour and their outside counsel at
Morrison & Foerster." [Dkt. 2803 at 29]. On this basis, the Debtors argue that the ResCap
directors "cannot be found to have acted without due care if they relied, in good faith, on the
recommendations and advice of the board's advisors."  [Dkt. 2804 at 9].

12.     In a further retreat from their prior claims of privilege, the Debtors now
also assert that the ResCap Board had a "deep well" of information from which to draw in
evaluating the RMBS Settlement — much, if not all, of it derived from communications with
counsel withheld from discovery.  This information purportedly included, among other things,
numerous presentations concerning the Debtors' RMBS liabilities that were delivered by counsel
in connection with proposed settlements with Fannie Mae, Freddie Mac, the U.S. Department of
Justice, and the Federal Reserve, as well as "almost every day" meetings and calls with
"financial and legal advisors" concerning the status of negotiations with respect to the RMBS
Settlement itself.  [Dkt. 2804 at 5-7].

13.     Despite their refusal to allow the Board members to testify about their
communications with counsel, the Debtors would now ask the Court to treat as fact their mere
say-so that "[t]he directors' advisors all recommended the settlement as fair, equitable, and in the
best interests of the estate." [Dkt. 2804 at 10 n.7].  And based on the purported "advice and
presentation materials from their advisors that were fair, accurate and adequate to the task" –
communications that the Committee never saw – the Debtors now contend that "ResCap LLC's
directors, of course, were entitled to rely on the advice of their professional advisors." [*Id.* at 4,
8].

- 8 -

14.     Unable to cite evidence in the *existing* record for these and other communications with counsel, the Debtors litter their reply briefs with references — indicated by blanks — to the *anticipated* direct testimony of their witnesses at trial. Thus, the Debtors rely on the would-be testimony of Ms. Hamzehpour to reveal what Gary Lee of Morrison & Foerster presumably told her about his negotiations with Kathy Patrick [*e.g.,* Dkt. 2803 at 16, 17] — despite having withheld numerous emails between Mr. Lee and Ms. Hamzehpour on privilege grounds. Exhs. C, D. Moreover, according to the Debtors, the "key negotiations" for the RMBS Settlement occurred during a "marathon" meeting held on May 8 and 9, 2012 at Morrison & Foerster's offices. [Dkt. 2803 at 4, 17]. The Debtors now assert that, during that meeting, Ms. Patrick made a "final" demand of $9 billion, which Mr. Lee rejected on their behalf "after consulting with Ms. Hamzehpour." [*Id.* at 17]. But having withheld Mr. Lee's emails with Ms. Hamzehpour and refused to permit testimony about attorney-client communications, the Debtors barred all discovery of their reliance on counsel in the negotiation of the RMBS Settlement.

15.     In a similar vein, the Debtors now contend that their "directors and lawyers were fully up-to-speed on the strengths and weaknesses of the Debtors' legal defenses" to RMBS claims, and say they plan to offer the expert testimony of their principal RMBS defense lawyer, Mr. Lipps, to "explain these strengths and weaknesses." [Dkt. 2803 at 44]. Yet the Debtors withheld numerous attorney-client communications with Mr. Lipps (*see* Exh. C), and they remain silent even in their reply briefs as to which of their witnesses will be asked to testify at trial to the understanding of RMBS claims they supposedly obtained from Mr. Lipps or other counsel.

16.     In short, after representing emphatically to the Court that they would not do so, the Debtors now rely heavily on communications with their counsel to defend the process

- 9 -

through which the RMBS Settlement was evaluated, negotiated, and approved.  But having made

those representations and chosen the course they did, the Debtors have forfeited the right to offer

any evidence reflecting or revealing such evidence.

## JURISDICTION AND VENUE

17.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§ 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief sought

herein is Section 105(a) of the Bankruptcy Code.

## RELIEF REQUESTED

18.    The Committee seeks an order in the form annexed hereto as Exhibit A

precluding the Debtors from introducing at the hearing of the 9019 Motion any evidence of their

reliance on counsel for advice concerning (i) the evaluation of the claims encompassed by the

RMBS Settlement, (ii) the negotiation of the Settlement, or (iii) the approval of the Settlement.

## ARGUMENT

### HAVING CHOSEN TO SEEK APPROVAL OF THE RMBS SETTLEMENT WITHOUT PROOF OF THEIR RELIANCE ON THE ADVICE OF COUNSEL, THE DEBTORS SHOULD NOW BE PRECLUDED FROM OFFERING SUCH PROOF

19.    When the Debtors represented to the Court that their 9019 Motion "does

not put attorney advice … at issue or waive the privilege," and "explicitly disclaim[ed]" any

intention to use the advice of counsel to prove the reasonableness of the RMBS Settlement (Exh.

B [Dkt. 2052] at 8, 9), they made the deliberate tactical decision to subject the Settlement to

Court scrutiny without evidence of such advice.  Their decision had both procedural and legal consequences that cannot be undone.

20.    As a procedural matter, the Debtors succeeded in blocking from discovery all of their communications with counsel that informed their evaluation, negotiation, and approval of the Settlement, and in thereby shaping the discovery process to exclude evidence of those communications.  Millions of dollars of estate assets were thereafter spent pursuing the contoured discovery that the Debtors had chosen, and an evidentiary record on which the parties could rely at trial was developed as a result.

21.    While the Debtors now appear to regret their choice, and have signaled in their reply briefs an intention to introduce proof of their communications with counsel to support the 9019 Motion, their prior representations to the Court and the law bar their way.

22.    It has long been settled in this Circuit that "the attorney-client privilege cannot at once be used as a shield and a sword."  *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).  *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 468 (S.D.N.Y. 1996).  The rationale for this rule is simple: "A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."  *Trouble v. The Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (precluding advice of counsel defense because defendant waived defense "by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests.").

23.    If the Debtors had wanted to use their communications with counsel to prove the reasonableness of the RMBS Settlement and the adequacy of the process through which it was evaluated, negotiated, and approved, they were required to make full disclosure of

those communications during discovery. "A party 'who intends to rely at trial' on the advice of counsel 'must make a full disclosure during discovery; *failure to do so constitutes a waiver' of the advice-of-counsel defense."* *Arista Records LLC v. Lime Group LLC*, 06 CV 5936 (KMW), 2011 WL 1642434 at *2 (S.D.N.Y. April 20, 2011) (citation omitted) (emphasis in original). Courts have repeatedly held that, where a party "blocked his adversary from conducting discovery on [his communications with counsel], he will not now be heard to advance reliance on counsel." *E.G.L Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 296 n.133 (S.D.NY. 2000), *aff'd*, 4 F.App'x 81 (2d Cir. 2001). *See also McLean v. Garage Mgmt. Corp.*, 10 Civ. 3950 (DLC), 2012 WL 1358739 at *7 (S.D.N.Y. April 19, 2012) (precluding party from offering defense based on good faith reliance on the advice of counsel after previous invocation of attorney-client privilege); *Arista Records, LLC*, 2011 WL 1642434 at *2 (precluding defendants from offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct where defendants had blocked inquiry on the basis of privilege).

24.     Indeed, where a party "invoke[s] attorney-client privilege throughout discovery, [this] *automatically* 'constitutes a waiver of the advice-of-counsel defense.'" *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003) (citation omitted) (emphasis added). A court should "exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id.*

25.     Here, the Debtors not only *failed* to make full disclosure of their communications with counsel during discovery, but "explicitly disclaim[ed]" any intention to use the advice of counsel to prove the reasonableness of the RMBS Settlement. Exh. B [Dkt. 2052] at 9. As a matter of law, both in application of the sword-shield doctrine and under established

principles of estoppel, they are now precluded from introducing any evidence of their reliance on

attorney-client communications in connection with the Settlement. *See Trouble*, 179 F. Supp. 2d

at 304 (precluding party from referring to advice of counsel — even in response to argument of

bad faith — where party previously stated in court filings that it had no intention of using advice

of counsel); *cf. Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("[j]udicial estoppel generally

prevents a party from prevailing in one phase of a case on an argument and then relying on a

contradictory argument to prevail in another phase").[5]

26.     *Chesapeake Corp. v. Shore,* 771 A.2d 293, 301 (Del. Ch. 2000), is directly

on point.[6]  There, defendants had invoked the attorney-client privilege to block from discovery

much of the professional advice they had received in taking action as directors of a corporation's

board.   The defendants later "attempted to use some of this concealed advice as a sword,"

arguing that the board had considered several items that the opposing party had been prevented

from discovering.  *Id.*  The court condemned that tactic as "inequitable" and refused to consider

any evidence of the advice given to the board:

> One would think that a board having [a burden of showing the
> reasonableness of their process and also of the result that they
> reached] would want to expose their deliberative process to full
> view, but they are not legally required to do so.  The defendants
> are the masters of the evidence they will present in their defense,

---

[5]   The Debtors cannot avoid waiver of the advice of counsel defense by asserting they would present evidence that they only *sought* the advice of counsel. Their own reply briefs purport to describe the *substance* of counsel's advice. [*See e.g.,* Dkt. 2804 at 10 n.7]. It is well settled that "opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised." *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 891, 894 (S.D.N.Y 1990). *See also In re County of Erie,* 546 F.3d 222, 229 (2d Cir. 2008) (implied waiver of the attorney-client privilege prevents "'the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion'.") (citation omitted); Restatement (Third) of Law Governing Lawyers § 80 (2000).

[6]   The Debtors admit that the substantive law of Delaware applies in this case. [Dkt. 2804 at 2 n.2].

> but they must accept the consequences of their tactical choice.
> Here the defendants' tactical decision to bar on privilege[e]
> grounds discovery into what the board was advised was their
> fiduciary duty and into the content of the board's deliberations will
> in turn preclude them from proving those deliberations at trial to
> defend their position that their decision was reasonable and made
> with due care.

*Id.* at n.8 (quoting *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, Del.Ch., C.A. No.

16584, tr. at 505, Jacobs, V.C. (Oct. 23, 1998)).

27.     As in *Chesapeake Corp.*, the Debtors chose to shield from discovery all of

their communications with counsel that informed their evaluation, negotiation, and approval of

the RMBS Settlement, and would now attempt to use those communications as a sword to show

that they properly entered into the Settlement "after receiving the advice and counsel of their

legal and financial advisors."  [Dkt. 2804 at 2].  They should be prohibited from doing so.

28.     Nor should the Debtors now be allowed to escape the consequences of

their decision by offering to re-open discovery and reveal the communications they previously

refused to disclose.  That would require not only the production of all of the documents withheld

as privileged, but also the re-deposition of all of the Debtors' witnesses — an undertaking that

would compound the millions of dollars in legal and other discovery-related expenses already

borne by the estates.  The Debtors should be compelled to proceed within the confines of the

record that currently exists:

> Plaintiffs are not seeking privileged communications; rather they
> are seeking to preclude argument and testimony where Defendants
> have already blocked inquiry on the basis of privilege…[A] motion
> to compel is not a prerequisite to invoking [preclusion].

*Arista Records, LLC,* 2011 WL 1642434 at *2.

## NOTICE

29.     In accordance with the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9008 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures [Docket No. 141] (the "**Case Management Order**"), notice of this Motion has been given to all parties listed on the Monthly Service List (as defined in the Case Management Order) (collectively, the "**Notice Parties**").  Because of the nature of the relief requested, the Committee submits that such notice is sufficient and that no other or further notice need be given.

## NO PRIOR REQUEST

30.     No prior request for the relief sought in this Motion has been made to this or any other Court in connection with these chapter 11 cases.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order precluding the Debtors from offering at the hearing of their 9019 Motion any evidence, oral or written, of their reliance on counsel for advice regarding the evaluation, negotiation, or approval of the RMBS Settlement, and granting such other and further relief as may be just and proper.

Dated: New York, New York
        February 13, 2013

                        KRAMER LEVIN NAFTALIS & FRANKEL LLP


                        /s/ Kenneth H. Eckstein
                        Kenneth H. Eckstein
                        Philip S. Kaufman
                        Adina C. Levine
                        Arielle Warshall Katz
                        1177 Avenue of the Americas
                        New York, New York 10036
                        Telephone:  (212) 715-9100
                        Facsimile:  (212) 715-8000

                        *Counsel for the Official Committee Of Unsecured
                        Creditors*

# EXHIBIT  A

# PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
In re:                                              :        Chapter 11
:
Residential Capital LLC, et al.,                    :        Case No. 12-12020 (MG)
:
                              Debtors.              :        Jointly Administered
:
:
------------------------------------------------------------ x

### ORDER APPROVING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PRECLUDE THE DEBTORS FROM OFFERING ANY EVIDENCE OF THEIR RELIANCE ON COUNSEL FOR ADVICE CONCERNING THE EVALUATION, NEGOTIATION OR APPROVAL OF THE RMBS SETTLEMENT

Upon consideration of the motion (the "**Motion**"),[1] of the Official Committee of Unsecured Creditors (the "**Committee**") to preclude the Debtors from offering any evidence of their reliance on counsel for advice concerning the evaluation, negotiation or approval of the RMBS Settlement; and due and proper notice of the Motion having been provided; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having jurisdiction to order the relief provided herein in accordance with 28 U.S.C. §§ 157 and 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given, and no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1

**IT IS HEREBY FOUND ORDERED THAT:**

A.    The Motion is hereby granted to the extent provided herein.

B.    The Debtors shall be precluded from introducing at the hearing of their 9019 motion any evidence, oral or written, of their reliance on counsel for advice with respect to (i) the evaluation of the claims encompassed by the RMBS Settlement, (ii) the negotiation of the Settlement, or (iii) the approval of the Settlement.

C.    The Court retains jurisdiction with respect to all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____, 2013
      New York, New York

_____
MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

2

# EXHIBIT  B

MORRISON | FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA  94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

November 4, 2012

Writer's Direct Contact
650.813.5866
DRains@mofo.com

The Honorable Martin Glenn
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Re:  In re Residential Capital, LLC, et al. (Case No. 12-12020 MG)

Dear Judge Glenn:

The Debtors write in response to the letter sent to the Court late Friday by counsel for the
Official Committee of Unsecured Creditors (the "Committee"). That letter asks the Court to
resolve what the Committee calls "two significant discovery disputes."

The Committee's description of the first dispute — concerning the Debtors' "claw back"
request — is seriously misleading in several ways. For example, the Committee says the
dispute concerns 367 documents. But, as the Committee knows, AFI has already agreed to
shorten the list of documents subject to the request. The current request is for the return of
109 documents. Moreover, the Committee informed us on Friday morning that it does not
dispute the validity of the privilege assertion with respect to 103 documents. By our count,
the claw back dispute now involves only six documents, not 367 documents.

This accords with the view taken consistently by the Debtors. From the beginning, while
AFI demanded the return of all documents, and the Committee refused to return any
documents, the Debtors have occupied a middle position. The Debtors understand the
attorney-client privilege, and common interest doctrine, to protect confidential
communications concerning the Debtors' and AFI's litigation against third parties. That is
because, as against third-parties, the Debtors and AFI share common interests, as co-
defendants, in assessing their risks and litigation exposure, and in coordinating their common
defense strategy. By contrast, the Debtors believe that communications between the Debtors
and AFI concerning the negotiation of the RMBS settlement are not protected by the
attorney-client privilege or common interest doctrine. That is because, in this settlement
context, the Debtors and AFI did not share common legal interests.

For this reason, the Debtors informed the Committee and AFI earlier this week that, with
regard to the 367 documents identified in the original claw back letter, the Debtors believed

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Two

that 109 documents were properly subject to privilege, while the remaining 258 documents
were not covered by privilege. (The Debtors' assessment of the 367 documents is attached
as Exhibit A.)

In subsequent conversations, the Debtors were informed that both the Committee and AFI
largely agree with the Debtors' position. AFI sent a letter containing a dramatically
shortened claw back list, and the documents dropped from the original list are the same
documents identified by the Debtors as not subject to privilege. AFI, in essence, adopted the
position taken by the Debtors. For its part, the Committee said, on a telephone call on
Friday, that it is prepared to drop its efforts to pierce the privilege with respect to 103 of the
109 documents identified by the Debtors as properly subject to privilege.

None of these facts appears in the Committee's letter. The Committee instead has asked for
production of 367 documents — as though none of the communications described above ever
happened.

The Committee's letter also misstates the nature of its obligations under its confidentiality
agreement with the Debtors. (The confidentiality agreement is attached as Exhibit B.) It
argues there is no "legitimate" basis for the claw back request, as though it could claim, for
itself, the right to determine whether a claw back request is legitimate or not. But the
confidentiality agreement does not grant the Committee that power. The Committee's
obligation to return or destroy documents that are the subject of a claw back request is
absolute and automatic. The Committee's only proper course of action is to comply with the
claw back request and then seek production of the withheld documents by motion.

Accordingly, the Committee's letter is improper under the express terms of the
confidentiality agreement, and its refusal to return or destroy documents upon request is a
breach of the agreement. The letter also compounds the breach, because, in it, the
Committee quotes from several privileged documents. The Committee also posted the
documents on line and shared them with third parties. This conduct directly violates the
procedures set out in the confidentiality agreement for the use and protection of privileged
documents.

The Committee's description of the second dispute — concerning documents listed on the
Debtors' privilege log — is also seriously misleading. For example, the Committee's letter
asserts that its "challenges to these assertions of privilege" have been the subject of "multiple
meet-and-confer sessions among the parties." But the Committee has never mentioned any
of these documents in any meet-and-confer session with the Debtors and it never has stated
any basis for challenging the assertion of privilege.

At the last chambers conference with the Court on discovery matters, the Committee
challenged the adequacy of the Debtors' privilege log, arguing that the "description" entries

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Three

on the log were too vague. The Court suggested a meeting at which the Committee's
lawyers could go through the log with Debtors' counsel and seek additional descriptions of
the withheld documents. The meeting was held the following day. Lawyers for the
Committee spent five hours with Debtors' counsel asking for additional descriptions of
approximately 400 documents. The Debtors provided additional information about every
document, and also provided a supplemental privilege log recording the additional
information. The Committee acknowledged, at the time, that the Debtors had provided
adequate answers to every question it posed.

At no point did the Committee say it believed the assertion of privilege was incorrect as to
any document. Nor did the Committee say it had not received enough information about the
documents. To the contrary — the Debtors offered promptly to respond to any additional
information requests, but the Committee never asked for more information.

Now, weeks later, the Committee has demanded production of hundreds of documents
without ever previously identifying any basis for challenging the Debtors' assertion of
privilege.

For these reasons, addressed more fully below, the Debtors respectfully request that:

- The Committee be compelled immediately to comply with its obligations under the
  confidentiality agreement by returning or destroying the documents subject to the
  claw back request;

- The Committee be compelled immediately to withdraw its disclosures of privileged
  documents and take all steps necessary to protect those documents from further
  disclosure;

- The Committee be compelled to comply with its meet-and-confer obligations
  regarding its new request for production of privileged documents, and withdraw its
  current request for the production of privileged documents until it has complied with
  its meet-and-confer obligations.

I.      **The Committee Has Breached Its Confidentiality Agreement By Refusing to
        Honor the Claw Back Request.**

On June 18, 2012, the Debtors entered into a Confidentiality Agreement with the Committee.
Many other parties have similar agreements with the Debtors.

On October 17, 2012, the Debtors sent a claw back letter to the Committee. The letter
advised these parties that the Debtors had received a letter from AFI claiming that a number
of documents previously produced by the Debtors had been inadvertently or mistakenly

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Four

produced. The Debtors' claw back letter enclosed the letter received from AFI and also enclosed a list of documents that were the subject of the claw back request. The Debtors' claw back letter, as required by the Confidentiality Agreement, informed the Committee and others that the production of the documents resulted from "errors" and was inadvertent or mistaken.

The Debtors' "claw back" request triggered an automatic obligation on the part of the Committee to "use all commercially reasonable efforts to return or destroy the" clawed back documents. (Exh. B, ¶ 22.) Paragraph 22 gives a party that has "inadvertently or mistakenly" produced privileged documents the right to make a "claw back" request. And it requires the immediate return or destruction of any document as to which a written claw back request has been made. It provides:

> If a Disclosing Party <u>inadvertently or mistakenly</u> produces information that is protected or prohibited from disclosure, <u>upon written request</u> by the Disclosing Party after the discovery of such inadvertent or mistaken production, the Receiving Party <u>shall use all commercially reasonable efforts to return or destroy the information</u> for which a <u>claim of inadvertent production</u> is made and all copies of it, including any work product containing, identifying, or referencing such information, within five (5) business days of such request, and the Receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of the information. <u>If the Receiving Party returns such information, it may then move the Court for an order compelling production</u> of the information, but that motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information.

(*Id*, ¶ 22.) (emphasis supplied.)

Under Paragraph 22, the Committee had an immediate and automatic obligation to "use all commercially reasonable efforts to return or destroy the information for which a claim of inadvertent production is made." All that is required to trigger the obligation to return or destroy documents, under paragraph 22, is a "written request" asserting a "claim of inadvertent production." Nothing else is required, and the Committee has no discretion in the matter.

Note that the Committee has no power, under this provision, to challenge the merits of the "written request" containing a "claim of inadvertent production." It is not empowered to argue that the claim of inadvertent production was, as its letter argues, not "legitimate," or

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Five

that the production was not truly "inadvertent." Its obligation to "return or destroy" documents arises as soon as it receives a "written request" containing a "claim of inadvertent production."

Moreover, paragraph 22 precludes the Committee from moving to compel production of the clawed back documents until after it "returns such information." In other words, compliance with a claw back request is an essential contractual precondition to the right to "move the Court for an order compelling production" of the documents.

The Committee's only proper and acceptable course of conduct, under the Confidentiality Agreement, is to return or destroy the requested documents and then, after it has done so, make a motion to compel production of the requested documents. But that is not what the Committee did. The Committee has, instead, taken it upon itself to adjudicate the merits of the claw back request and, on that basis, to conclude it no longer needs to meet its contractual commitments. That is not what the confidentiality agreement requires.

The Debtors therefore request that the Committee be compelled immediately to comply with its obligations under the confidentiality agreement by returning or destroying the documents subject to the claw back request.

## II.    The Debtors Did Not Waive Any Privilege With Respect to the Documents Sought By the Claw Back Request.

The Committee seeks to justify its conduct by asserting that the Debtors have "clearly waived" the protections of the attorney-client privilege, work product doctrine, and common interest doctrine with respect to the documents that are the subject of the claw back request. This argument is wrong for four reasons.

*First*, the Committee's waiver argument is not an excuse for breaching the confidentiality agreement. As noted above, the Committee's contractual obligation is to return or destroy the clawed back documents once a "written request" for their return has been made. Nothing in the agreement allows the Committee to excuse its breach by raising a waiver argument.

*Second*, the Committee offers no evidence of any waiver and there is none. A waiver occurs when a party knowingly relinquishes its rights, and evidence of such a waiver must be clear and explicit. *See United States v. Defonte*, 441 F.3d 92, 94 (2d Cir. 2006) (inmate had not "knowingly waive[d]" attorney-client privilege where she had not consented to the removal of privileged documents from her cell); *cf.* Fed. R. Evid. 502(a)(1) ("When [a] disclosure . . . waives the attorney-client privilege or work product protection, the waiver extents to an undisclosed communication or information . . . only if . . . the waiver is intentional"). The Debtors have never said, in words or in substance, that they waive the protections of the

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Six

attorney-client privilege, work product doctrine, or common interest doctrine with respect to
the requested documents.

The Committee claims that an email from Debtors' counsel constitutes a waiver, but even a
quick review of the email shows it is no such thing. The email expressly states that the
Debtors would produce "the settlement documents you requested with the exception only of
those documents protected by attorney/client privilege and work product." (Exhibit C.) The
email then goes on to say that the Debtors are not "withholding settlement negotiation
documents on the basis of a common interest privilege." These are true statements, and they
do not constitute a waiver. They are, in fact, a clear summary of the position the Debtors
have taken from the beginning — communications between AFI and the Debtors regarding
the negotiation of the RMBS settlement are not covered by privilege, because AFI and the
Debtors did not share a common legal interest in that context. But the Committee's letter
doesn't limit the Committee's request to just settlement negotiations — the Committee seeks
all communications between AFI and the Debtors, even on topics as to which they share a
common legal interest. The email cited by the Committee does not address these privileged
documents, and does not waive any privilege applicable to them.

*Third*, the Committee argues that the mere fact of production constitutes a waiver. But the
confidentiality agreement clearly states that the fact of production is not evidence of any
waiver. Indeed, the Committee is barred from even making this argument: any motion to
compel production of clawed back documents "shall not assert as a ground for entering such
an order the fact or circumstance of the inadvertent production of the information." (Exh. B,
¶ 22.)

Moreover, the Committee's claim that the production of documents could not have been
"inadvertent" tellingly omits the other term of the confidentiality agreement. The agreement
permits the Debtors to claw back documents that have been "inadvertently or mistakenly"
produced. The Debtors' and AFI's position is that the Debtors "mistakenly" produced
documents as to which AFI claims a common interest privilege. The Debtors are
contractually obligated, under a joint defense agreement with AFI, not to disclose documents
as to which AFI asserts a common interest privilege, even if the Debtors disagree with AFI's
privilege position. It was a mistake for the Debtors to produce the documents without first
giving AFI the opportunity to assert and litigate its privilege position.

And *fourth*, the Committee's waiver argument ignores AFI's rights. The Debtors had no
ability to waive the protection of the common interest privilege with regard to documents as
to which Ally also asserts privilege. One party that shares a common interest privilege
cannot waive it without the consent of all parties that share the privilege. *See, e.g., In re Asia
Global Crossing, Ltd.*, 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005) ("Once established, the
[common interest] privilege cannot be waived without the consent of all of the parties that
share it."); In re *Quigley Co.*, 2009 Bankr. LEXIS 1352 (Bankr. S.D.N.Y. Apr. 24, 2009)

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Seven

(same); *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3d Cir. 2007)
("[W]aiving the joint-client privilege requires consent of all joint clients.")

The Committee's argument that the Debtors somehow waived the protections of the attorney-client privilege, work product doctrine, and/or common interest doctrine, is without any basis and is contrary to law. The Court should therefore reject the Committee's waiver argument.

### III. The Committee Failed to Comply With Its Meet-and-Confer Obligations Regarding the Documents Referenced on Pages 6 through 8 of Its Letter.

In what has become a disturbing trend, the Committee has dropped another "Friday Night Surprise" on the Debtors by raising entirely new discovery disputes on the eve of a scheduled hearing. The Committee has done the same thing in advance of several previous hearings.

This time, the Committee has requested the production of several hundred privileged documents without ever holding any meet-and-confer session about the documents and without ever informing the Debtors of the basis for its challenge to the assertion of privilege. The Committee's letter claims, falsely, that its "challenges to these assertions of privilege" have been the subject of "multiple meet-and-confer sessions among the parties." But the Committee has never mentioned any of these documents in any meet-and-confer session with the Debtors. Nor has the Committee ever previously asserted any ground for concluding the assertion of privilege was improper as to any of the documents.

This is "shoot, ready, aim" litigation. The Committee seeks to force *in camera* review of documents without ever permitting the Debtors to defend their assertions of privilege. The Committee should be compelled to comply with its meet-and-confer obligations regarding its new request for production of privileged documents, and it should be ordered to withdraw its current request for the production of privileged documents until it has complied with its meet-and-confer obligations.

### IV. The Committee Has Failed to Overcome the Assertion of Privilege With Respect to the Documents Referenced on Pages 6 Though 8 of Its Letter.

The Committee argues, without any motion or opportunity for briefing, that the Debtors' privileged communications should be produced "under the sword-shield doctrine and/or the fiduciary exception to the attorney-client privilege." Neither doctrine applies here.[1]

---

[1] The Committee also raises for the first time an argument that the Debtors must produce privilege communications with attorney Jeffrey A. Lipps because he will testify as an expert witness. It relies only on *Herrick Co., Inc. v. Vetta Sports, Inc.*, No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS 14544, 1998 WL 637468 (S.D.N.Y. Sept. 17, 1998). *Herrick*

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Eight

The Debtors' motion for approval of the RMBS settlement does not put attorney advice regarding those agreements at issue or waive the privilege.  As explained in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011):

> It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues. The Court itself can evaluate the likelihood of the parties' prevailing in that litigation to determine whether the settlement is reasonable.

*See also Deutsche Bank Trust Co. v. Tri-Links Investment Trust*, 837 N.Y.S. 2d 15, 21-25 (App. Div. 2007) (assertion of reasonableness of amounts expended to defend and settle action did not waive attorney-client privilege).

Nor will presentation of evidence that the Debtors sought the advice of counsel waive the privilege.  A party does not waive the privilege merely by presenting evidence that it sought the advice of counsel, but only by affirmatively asserting that its actions were reasonable *because* it relied on an opinion of counsel. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, et al.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009).  In *Aristocrat*, the plaintiff argued that defendant Bondholders should not be able to state that they sought the advice of counsel regarding matters the reasonableness of which was at issue without waiving the attorney-client privilege.  The court rejected that argument, holding that "merely stating that individual Bondholders sought advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive the privilege." *Id.* at *45.

Nor, as the Committee suggests, did the Debtors waive the privilege by answering "Yes" at a prior hearing to the Court's impromptu question, "Are the debtors' directors relying on advice of counsel supporting their approval of the RMBS settlement?"  Courts have regularly rejected waiver claims based on similar statements in the course of litigation that do not represent a formally asserted claim or defense.  In *Miteva v. Third Point Management Co., L.L.C.*, 218 F.R.D. 397-98 (S.D.N.Y. 2003) (rejecting waiver claim based on deposition testimony of defendant's principal and sole owner that defendant "intended to rely on that advice of counsel as a defense in this action"); *Deutsche Bank*, 837 N.Y.S. 2d at 25 (rejecting argument that plaintiff waived privilege through deposition testimony of plaintiff's managing

---

was decided before the recent amendments to Federal Rule of Civil Procedure 26(b)(4), which strictly circumscribe discovery of communications with a testifying expert.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Nine

director that he "rel[ied] on the advice of counsel in determining whether or not to approve . . . the settlement of the [underlying] action"). The court noted in *Deutsche Bank* that the plaintiff had not "stated an intention to use the advice of counsel to prove the reasonableness of the [underlying] settlement, and it now explicitly disclaims any such intention." *Id.* at 27. The same is true here.

Nor does the fiduciary exception apply here. The mere existence of a fiduciary relationship is not enough to invoke the exception. The party seeking discovery must also show there is good cause to invade the privilege. *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 424 (S.D.N.Y. 2006) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir.1970).) Courts in this district have identified four factors to consider in determining whether there is good cause: (1) the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the discovering party's claim; (3) the need of the discovering party for the information; and (4) the nature of the communication itself. *Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 424 (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 U.S. Dist. LEXIS 18215, at *13 (S.D.N.Y. Dec. 23, 1993)). "The apparent necessity of the information and its availability from other sources is considered the most important factor and is stressed by courts when undertaking the *Garner* analysis." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 71, at *17 (S.D.N.Y. Jan. 3, 2003) (citations omitted).

The Committee has not even attempted to demonstrate that it satisfies the relevant factors here. Nor could it. The Committee has demonstrated no substantial need for the privileged communications. This is not a case where the Committee needs privileged communications to prove an element of their claim or to rebut an affirmative defense. *See Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 425. As noted above, assessment of the reasonableness of the settlement agreements can be evaluated without the need for privileged communications. *See In re Washington Mutual*, 424 B.R. at 330 ("It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues.")

Finally, a word about the Committee's descriptions of the documents it seeks. The Committee's letter sets out ten bullet points, each relating to a category of withheld documents. For most of the categories, the Committee states that the documents are "concerning" or "regarding" "the RMBS Settlement." This conclusory statement, applied indiscriminately to eight of the ten categories, is largely false. The withheld documents do not, in the main, concern or relate to the RMBS settlement. Instead, they largely concern unrelated litigation, general issues regarding representation and warranty liability or litigation, or other aspects of the Debtors' bankruptcy.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Ten

The proof of this can be found in the Debtors' privilege logs, as updated after the Debtor's lengthy meeting with counsel for the Committee. The logs describe most of the withheld documents as relating to a variety of topics other than the RMBS settlement negotiations, including PLS litigation generally, SEC filings, settlement negotiations with various regulators, other bankruptcy filings, and the like. The Committee has ignored the Debtors' privilege logs, and ignored the information it obtained in its meeting regarding the logs, in asserting falsely that the requested documents are all "concerning" or "relating" to the RMBS settlement. The Committee's letter thus offers no basis upon which to order the production of privileged documents.

The Committee has not offered any valid argument for lifting the protection of the attorney-client privilege, work product doctrine, or common interest doctrine with respect to the documents identified on pages 6 through 8 of its letter. Its request for production of these documents, without allowing adequate time for briefing, should be rejected.

Respectfully submitted,

Darryl P. Rains

# EXHIBIT C

# FILED UNDER SEAL

# EXHIBIT  D

# FILED UNDER SEAL

# EXHIBIT  E

# FILED UNDER SEAL