Richard Sax (SBN 80632) *richard@rsaxlaw.com*
LAW OFFICES OF RICHARD SAX
448 Sebastopol Avenue
Santa Rosa, CA. 95401
Telephone: (707) 525-1824
Facsimile:  (707) 525-8119

Attorney for Movant/Creditor Julio Solano

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re RESIDENTIAL CAPITAL, LLC,<br><br>Debtor. | CASE NO.: 12-12020-MG<br><br>Chapter 11<br><br>Jointly Administered |

MOTION FOR PERMISSION TO EXTEND DEADLINE
FOR JULIO SOLANO TO FILE PROOF OF CLAIM

I.    INTRODUCTION

Julio Solano ("Solano") brings this Motion for Permission to Extend the Deadline to File a Proof of Claim. A copy of Solano's proposed Proof of Claim is attached to the Declaration of Richard Sax as Exhibit 1.

The underlying California state court action is an action by Solano against GMAC Mortgage, LLC ("GMAC") To Set Aside Trustee Sale, for Declaratory Relief, Unjust Enrichment, Imposition of Constructive Trust, Unfair Competition Under B & P Code §17200, Promissory Estoppel, Conversion, Negligence, and Negligent Infliction of Emotional Distress. California is a nonjudicial foreclosure state. A copy of the operative Second Amended Complaint is attached to the Declaration of Richard Sax as Exhibit 4.

Solano has alleged that he tendered the $53,114.11 reimbursement amounts that

1

GMAC demanded, which GMAC accepted, rejected, then illegally and fraudulently retained his tender. GMAC's acceptance, rejection, and withholding of his tender made it impossible for Solano to reimburse the total amounts that GMAC claimed were due and owing before his home was sold at an illegal Trustee's Sale. As a result, Solano was wrongfully deprived of approximately $485,000.00 of equity in his home and legal title by forfeiture, as well as the beneficial use and enjoyment of his home. Solano has properly pleaded that if the Trustees Sale of his home is not set aside, he is entitled to damages for the conversion of the equity in his home at the time of the illegal Trustees Sale. Because of the wrongful foreclosure, Solano and his family were evicted from their beautiful home, and he has suffered serious emotional distress.

The provisions of the Final Supplemental Order filed on July 13, 2012 are internally inconsistent, contradictory and confusing because on the one hand they provide for counterclaims and settlement of these claims for monetary damages in excess of $100,000.00 and they also provide for no monetary relief at all. In addition, nowhere in the Order does it provide that a party moving for relief from the automatic stay must file a Proof of Claim.

There is no danger of prejudice to the debtor whatsoever, the length of the delay has been approximately 60 days and there appears to be little or no impact on judicial proceedings, the delay was caused by misunderstanding of the July 13, 2012 Order and the movant acted in good faith.

Paragraph 14 of the Final Supplemental Order filed on July 13, 2012 says we can bring a Motion for Relief from the Automatic Stay.

## II. FACTS OF THE CASE

### A. Second Amended Complaint Sonoma County Superior Court California

The Second Amended Complaint states in relevant part as follows:

> 30. On or about this time, after making many improvements, plaintiff had at least $500,000.00 in equity in the Real Property, or according to proof, which represents the difference between the fair

2

market value and all encumbrances on the Real Property on the date of the Trustee's Sale.

31. In or about December of 2010, plaintiff received a letter from GMAC representing that the reinstatement amount due was $53,114.11, which was also reflected on plaintiff's December 20, 2010 Mortgage Account Statement. (See Exhibit 5: a true and correct copy of an invoice from GMAC showing an unpaid amount of $53,114.11.)

32. Plaintiff confirmed the reinstatement amount with a GMAC employee/agent on or about January 5, 2011.

33. On or about January 7, 2011, plaintiff tendered the reinstatement amount to GMAC, by remitting a cashier's check for $53,114.11 to GMAC by overnight mail. GMAC received the reinstatement amount of $53,114.11 on January 8, 2011. (See Exhibit 6: a true and correct copy of a cashier's check for $53,114.11 issued by Redwood Credit Union on January 7, 2011; Exhibit 7: a true and correct copy of a Fed Ex label showing shipment by Priority Overnight of the cashier's check to the Payment Processing Department of GMAC Mortgage; Exhibit 8: a true and correct copy of a Fed Ex Shipment Receipt showing shipment by Priority Overnight of the cashier's check to the Payment Processing Department of GMAC Mortgage on January 7, 2011.) As a result, plaintiff was not in default.

34. On or about January 11, 2011, plaintiff contacted GMAC, which confirmed possession of the cashier's check in the remittance amount of $53,114.11.

35. However, on or about January 11, 2011, employees/agents of GMAC illegally and unlawfully rejected plaintiff's tender and represented to plaintiff that he owed an additional amount of approximately $1,400.00 in order to reinstate his account. GMAC employees and agents represented to plaintiff that the additional funds were necessary to pay attorney fees.

36. Plaintiff immediately tendered the additional payment of approximately $1,400.00 over the telephone by way of a credit card.
37. However, GMAC employees and agents refused to accept Plaintiff's credit card payment and tender, which would have

3

reinstated Plaintiff's account and brought his house payments current. The plaintiff was not in default.

38. GMAC employees and agents insisted that they needed a new cashier's check that included both the reinstatement amount of $53,114.11 and approximately $1,400.00 for attorney fees in the total amount of $54,514.11.

39. Plaintiff found himself in a "Catch-22" situation as his fervent attempts to tender the reinstatement funds to GMAC, and thus save his home, were stymied and rebuffed by GMAC.

40. Although GMAC representatives demanded a new cashier's check, they failed and refused to return in a timely manner plaintiff's cashier's check for $53,114.11 that he had sent them and that remained in their possession. Therefore, plaintiff was prevented from forwarding a new cashier's check that would include both the $53,114.11 and the approximately $1,400.00 in attorney's fees that they demanded, thereby avoiding the foreclosure sale of his Real Property.

41. GMAC intentionally held plaintiff's cashier's check in its possession, and failed and refused to return plaintiff's $53,114.11 for approximately four (4) weeks, from January 8, 2011 to well into February, 2011, after the foreclosure sale of plaintiff's Real Property, so that GMAC and The Bank of New York Mellon Trust Co. could foreclose and obtain the equity in the Real Property.

42. Prior to the Trustee's Sale on February 15, 2011, plaintiff had made many verbal requests to GMAC to honor his tendered reinstatement payments or return his cashier's check, so that he could send a new cashier's check to GMAC that would add and incorporate the demanded attorney fees, thereby preventing the foreclosure sale of his Real Property. As a result, plaintiff was not in default.

43. On at least January 15, January 20, January 30, and February 5 or 10, 2011, plaintiff sought the aid of Redwood Credit Union, which had issued his $53,114.11 cashier's check, to request that GMAC honor the cashier's check or return the funds, so that he could obtain a new cashier's check in order to again tender the reinstatement funds. The Branch Manager and Supervisor of

4

Redwood Credit Union and two bank tellers contacted GMAC and sought to void the cashier's check in GMAC's possession in order to issue a new cashier's check. Plaintiff also signed a Claim for Refund or Replacement of Official Check Affidavit form given to him by Redwood Credit Union, made to the attention of GMAC Mortgage. (See Exhibit 9: Claim for Refund or Replacement of Official Check Affidavit form issued by Redwood Credit Union and signed by Plaintiff.)

44. However, GMAC intentionally concealed and refused to provide a facsimile number or other contact information that would allow them to receive the Claim for Refund or Replacement of Official Check Affidavit form in a timely manner, and thereby avoid the foreclosure sale of his Real Property, so that GMAC and The Bank of New York Mellon Trust Co. could obtain the valuable equity in the Real Property.

45. Finally, on February 24, 2011, GMAC returned plaintiff's above-referenced cashier's check, after the foreclosure sale of his home had been held, with correspondence which stated, in pertinent part, as follows:

> "This letter serves as our response to the correspondence...regarding the above-referenced account dated February 1, 2011 and received in our office on February 7, 2011.
>
> "We sincerely apologize for any inconvenience or frustration you have experienced. The correspondence indicates you received a letter reflecting the reinstatement amount due was $53,114.11, which amount was reflected on the December 20, 2010 Mortgage Account Statement and which amount was confirmed with a Bankruptcy Department Representative on January 5, 2011. However, a Motion for Relief from the automatic stay placed by the Chapter 7 bankruptcy filing was granted on January 8, 2011, and foreclosure proceedings resumed.
>
> "Due to the foreclosure status, the amount quoted was no long sufficient to reinstate the account...The check was received by GMAC Mortgage and subsequently returned to you...

5

"The above-listed property went to trustee sale on February 15, 2011. If you wish to discuss the process of foreclosure, please contact Executive Trustee Services…"

(Exhibit 10: a true and correct copy of a letter dated February 24, 2011.)

46. On March 11, 2011, ETS requested that a Trustee's Deed Upon Sale be recorded in the official records of Sonoma County, California as instrument No. 2011023076, indicating that plaintiff's home was sold at a public action on February 15, 2011 to The Bank of New York Mellon Trust Co. (Exhibit 11: Notice of Trustee's Deed Upon Sale recorded on March 11, 2011.)

47. After the Trustee's Sale, plaintiff and his wife and children, who were in a state of shock, immediately moved out of the Real Property and into a motel room, because of their fear of being evicted from their home on the Real Property by the Sonoma County Sheriff.

48. The Trustee's Sale was improperly held and the Trustee's Deed Upon Sale was wrongfully executed, delivered, and recorded, because there was arguably no breach of the obligation; there were invalid, irregular, and improper presale procedures; and the trustee illegally, fraudulently, and oppressively sold plaintiff's Real Property under a power of sale contained in the deed of trust to defendant The Bank of New York Mellon Trust Co.

49. The Trustee's Sale was improper and illegal because plaintiff tendered the reimbursement amounts that GMAC demanded, but GMAC rejected and wrongfully retained plaintiff's tender. On or about January 7, 2011, plaintiff tendered by cashier's check to GMAC the full amount that GMAC demanded to bring his loan current, thus extinguishing the Notice of Default and making the subsequent Trustee's Sale void. On or about January 11, 2011, Plaintiff offered to tender to GMAC by telephone all of the additional monies that GMAC had subsequently claimed were due, which would have cured the alleged problem, if any, with plaintiff's initial tender; but GMAC refused plaintiff's good faith offer. Then GMAC wrongfully withheld plaintiff's cashier's check

for over a month, until after the foreclosure, making a new tender by plaintiff impossible.

50. GMAC rejected plaintiff's tender in order to make it impossible for plaintiff to reimburse the amounts that GMAC claimed were due and owing before plaintiff's Real Property was sold at the Trustee's Sale, by withholding plaintiff's cashier's check and refusing to allow plaintiff to reimburse GMAC for the attorney fees by credit card.

51.  The Trustee's Sale was improperly held, in violation of the terms and conditions of the promissory note and deed of trust and in violation of the duties and obligations of defendant beneficiary and defendant trustee to plaintiff, all to plaintiff's loss and damage, in that plaintiff has been wrongfully deprived of at least $500,000.00, or according to proof, of equity in the Real Property, the beneficial use and enjoyment of the Real Property, and legal title by forfeiture.

52. Plaintiff has offered, and offers to tender, to defendant beneficiary or defendant trustee all amounts due and owing so that the claimed default may be cured and plaintiff may be reinstated to all former rights and privileges under the promissory note and deed of trust. Plaintiff is ready, willing, and able to tender those sums, if any, that the Court finds due and owing on rendering the accounting requested in this First Amended Complaint.

53. Plaintiff properly tendered the reinstatement amount to defendants and was not in default. Defendants knew this and nevertheless illegally rejected plaintiff's tender and sold plaintiff's home. The acts alleged above were willful, wanton, malicious, and oppressive, were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages."

B.   **Debtor's Motion For Supplemental Order Filed May 31, 2012**

Debtor's Motion for Supplemental Order filed on May 31, 2012 states in relevant part as follows at pages 10-11, paragraphs 22-23:

"The direct claims and counter-claims asserted by (a) borrowers in foreclosure actions (including in Non-Judicial States) or (b) tenants in eviction actions described above are or may be subject to the

automatic stay under Bankruptcy Code section 362(a). Principles of fundamental fairness and administrative efficiency weigh in favor of a limited modification of the automatic stay in order to allow borrowers, or their tenants, as applicable, to assert those claims that would be a defense to the foreclosure or eviction actions. However, as Judge Peck recognized during the continued first day hearing, crafting a definition of the modification that is both precise enough to provide borrowers with adequate guidance but flexible enough to be useful is an iterative process.

To address Judge Peck's concerns, and following consultation with parties in interest, the Debtors agreed that the best course of action under the circumstances would be to allow blanket relief for any counter-claim in a foreclosure or eviction proceeding or an interim basis, subject to the ability of the Debtors to return to the Court for clarification or modification as necessary and appropriate in light of subsequent actions by borrowers. As Judge Peck aptly predicted, in the brief period of time that has elapsed since the first day hearing, the Debtors have been confronted with numerous issues and requests for clarification by both their counsel and borrowers' counsel regarding the scope of blanket stay relief. Among other things, the Debtors seek to clarify that the stay modification applies to foreclosure proceedings in Non-Judicial States. Additionally, the Debtors request that the Court make clear that the stay relief granted pursuant to the Interim Servicing Orders does not apply to any class action or similar proceedings."

The Final Supplemental Order filed on July 13, 2012 provides in relevant part as follows at pages 4-5, paragraphs 4-5:

Settlement Procedures

4. The Debtors are authorized, but not directed to compromise and settle certain claims brought by... a Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-tiered procedures (the "Settlement Procedures"):

Tier I: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash

payments or allowed prepetition claims in amounts not to exceed $40,000 in full settlement of such Claim (each, a "Tier I Settlement").

Tier II: The Debtors may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $40,000 but less than $100,000 in full settlement of such Claims (each, a "Tier II Settlement"); provided, that in each case:

5. The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000."

Under the provisions of the Settlement Procedures, it appeared to Richard Sax that the Order provides that monetary relief may be paid to a creditor such as Solano.

Under the section on limited relief from the automatic stay it appeared to Sax that Solano was granted permission to proceed with his lawsuit in the California state court.

The Final Supplemental Order filed on July 13, 2012 provides in relevant part as follows at pages 7-9, paragraph 14:

"Limited Relief From Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14. The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a) except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(d) under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(f) nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest. "

Nowhere in the Order does it state that Solano is required to file a Proof of Claim to obtain relief from the automatic stay.

1    The debtor has known about Solano's action all along as we received notice of
2  these proceedings from counsel for GMAC. Solano learned of these proceedings when
3  the Sax Law Office received Notice of Stay of Proceedings dated May 25, 2012 (Dec. of
4  Sax, Exhibit 2).
5    Sax's offices reviewed the Order dated July 13, 2012 and Sax was advised that the
6  Solano case was the type of case that was granted relief from the automatic stay
7  pursuant to paragraph 14(a). Whereupon Solano sent the California trial court a Notice
8  of Relief from the Automatic Stay (Dec. of Sax, Exhibit 3) so that the matter could be
9  placed on the Case Management Calendar for trial setting.
10    In open court on November 29, 2012, it was first brought to Sax's attention that it
11  was GMAC's position that Solano did not have relief from the automatic stay on all of
12  our causes of action and that Solano did not have relief from the automatic stay to
13  pursue monetary damages. Thereafter Sax filed Motion for Relief from Automatic Stay
14  on January 10, 2013.
15    On January 29, 2013, attorney for debtor, James Newton, advised Sax and Sax
16  understood for the first time that it was the position of the debtor that Solano could not
17  pursue his claims for monetary damages due to failure to file a Proof of Claim.
18    Sax considered filing a Proof of Claim but did not think it was required since the
19  July 13, 2012 Order provided for relief from the automatic stay.
20    Sax did not plan on litigating this case in the bankruptcy court.

### III.    LAW OF THE CASE

#### A.    Motion To Extend Made After Deadline-Excusable Neglect Required

A motion to extend that is not made until after the claim bar date has expired may only be granted on a finding of excusable neglect. FRBP 9006(b); <u>Pioneer Investment Services Co. v. Brunswick Assocs. Ltd. Partnership</u> (1993) 507 US 380, 382.

Whether neglect is excusable calls for an equitable determination, taking into account all relevant circumstances. Factors considered include:

- Danger of prejudice to the debtor;

11

- Length of the delay and its potential impact on judicial proceedings;
- Reasons for the delay, including whether it was within the movant's reasonable control; and
- Whether the movant acted in good faith. <u>Pioneer Investment Services Co. v. Brunswick Assocs. Ltd.</u> Partnership, supra, 507 US at 385.

Of the four factors above, fault in the delay is preeminent. <u>Matter of Kmart Corp.</u> (7th Cir. 2004) 381 F3d 709, 715.

The provisions of the Final Supplemental Order filed on July 13, 2012 are internally inconsistent, contradictory and confusing because on the one hand they provide for counterclaims and settlement of these claims for monetary damages in excess of $100,000.00 and they also provide for no monetary relief at all. In addition, nowhere in the Order does it provide that a party moving for relief from the automatic stay must file a Proof of Claim.

There is no danger of prejudice to the debtor whatsoever, the length of the delay has been approximately 60 days and there appears to be little or no impact on judicial proceedings, the delay was caused by misunderstanding of the July 13, 2012 Order and the movant acted in good faith.

## IV. CONCLUSION

Based on the foregoing facts and law, Julio Solano respectfully requests the Court extend the deadline for him to file a proof of claim.

Dated: February 13, 2013

_____
Richard Sax
Attorney for movant/creditor Julio Solano

12