Gregory M. Petrick
Ingrid Bagby
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

-and-

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

*Attorneys for MBIA Insurance Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
In re:                                             :    **Chapter 11**
:
**RESIDENTIAL CAPITAL, LLC**, *et al.*,            :    **Case No. 12-12020 (MG)**
:
Debtors.                                 :    **(Jointly Administered)**
:
---------------------------------------------------------------x

**OBJECTION OF MBIA INSURANCE CORPORATION TO MOTION OF AIG ASSET MANAGEMENT (U.S.), LLC, THE ALLSTATE ENTITIES, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, AND THE PRUDENTIAL ENTITIES FOR AN ORDER UNDER BANKRUPTCY RULE 3013(i) CLASSIFYING RMBS FRAUD CLAIMS IN THE SAME CLASS AS THE SECURITIZATION TRUSTS' CLAIMS FOR PURPOSES OF ANY CHAPTER 11 PLAN FOR THE DEBTORS AND (ii) DIRECTING THAT MISREPRESENTATION CLAIMS CANNOT BE PLACED IN A PLAN CLASS THAT WILL BE SUBORDINATED UNDER BANKRUPTCY CODE SECTION 510(b)**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... ii

Preliminary Statement ..................................................................................................................1

Argument .......................................................................................................................................2

I.   The Motion Should Be Denied as Premature ........................................................................2

II.  There Is No Requirement That the Securities Claims Be Placed in the Same Class As
     the Trust R&W Claims ...........................................................................................................5

     A.   "Substantially Similar" Claims May Be Placed in Separate Classes............................5

III. The Securities Claims Are Subject to Subordination under Section 510(b).............................7

     A.   The RMBS Certificates Are Securities "Of" The Debtors ............................................7

     B.   Section 510(b) Applies to Debt as Well as Equity Securities......................................10

Conclusion ..................................................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          Page(s)

In re 500 Fifth Ave. Assocs., 148 B.R. 1010 (Bankr. S.D.N.Y. 1993), aff'd, No. 93 Civ. 844
    (LJF), 1993 WL 316183 (S.D.N.Y. May 21, 1993) ................................................................3

Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.), 89 F.3d 942
    (2d Cir. 1996) ........................................................................................................................5

Allen v. Geneva Steel Co. (In re Geneva Steel Co.), 281 F.3d 1173 (10th Cir. 2002) ....................7

Allstate Ins. Co. v. GMAC Mortg., LLC, No. 27-cv-11-3480 (Minn. Dist. Ct. Nov. 28, 2011).....7

Allstate Ins. Co. v. GMAC Mortg., LLC, No. 27-cv-11-3480 (Minn. D. Ct. Apr. 15, 2011) .........8

Brown v. Owens Corning Inv. Review Comm., 541 F. Supp. 2d 958 (N.D. Ohio 2008),
    aff'd, 622 F.3d 564 (6th Cir. 2010) .......................................................................................7

In re DRW Prop. Co., 82, 60 B.R. 505 (Bankr. N.D. Tex. 1986) .....................................................3

In re Dana Corp., No. 06–10354, 2007 WL 4589331 (Bankr. S.D.N.Y. Dec. 26, 2007) ................6

In re Drexel Burnham Lambert Group, Inc., 138 B.R. 714 (Bankr. S.D.N.Y.) , aff'd, 140
    B.R. 347 (S.DN.Y. 1992) ................................................................................................5, 6

In re Elsinore Shore Assocs., 91 B.R. 238 (Bankr. D.N.J. 1988) ...................................................3

Enron Corp. v. New Power Co. (In re New Power Co.), 438 F.3d 1113 (11th Cir. 2006) ..............6

Federal Housing Fin. Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306 (S.D.N.Y. 2012) .......8

JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter
    Commc'ns), 419 B.R. 221 (Bankr. S.D.N.Y. 2009) , appeal dismissed, 449 B.R. 14
    (S.D.N.Y. 2011), aff'd, 691 F.3d 476 (2d Cir. 2010) ............................................................6

In re Lernout & Hauspie Speech Prods., N.V., 301 B.R. 651 (Bankr. D. Del. 2003), aff'd,
    308 B.R. 672 (D. Del. 2004) .................................................................................................6

Levine v. Resolution Trust Corp. (In re Coronet Capital Co.), No. 94 Civ. 1187 (LAP), 1995
    WL 429494 (S.D.N.Y. July 20, 1995) ................................................................................11

In re Main Rd. Props., 144 B.R. 217 (Bankr. D.R.I. 1992) ......................................................3, 4

In re Meadow Glen, Ltd., 87 B.R. 421 (Bankr. W.D. Tex. 1988) ...................................................3

12-12020-mg    Doc 2955    Filed 02/19/13    Entered 02/19/13 15:57:36    Main Document
Pg 4 of 18

In re Mid-American Waste Sys., Inc., 228 B.R. 816 (Bankr. D. Del. 1999) ...............................11

In re Monroe Well Serv., Inc., 80 B.R. 324 (Bankr. E.D. Pa. 1987) ...............................................3

In re NII Holdings, Inc., 288 B.R. 356 (Bankr. D. Del. 2002) .......................................................6

NationsBank, N.A. v. Commercial Fin. Servs., Inc. (In re Commercial Fin. Servs., Inc.),
    268 B.R. 579 (Bankr. N.D. Okla. 2001)................................................................................11, 12

In re One Canandaigua Props., Inc., 140 B.R. 616 (Bankr. W.D.N.Y. 1992) .............................3, 4

In re Patriot Aviation Servs., Inc., 396 B.R. 780 (Bankr. S.D. Fla. 2008) ...................................11

Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),
    995 F.2d 1274 (5th Cir. 1992)....................................................................................................6

Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632
    F.3d 762 (1st Cir. 2011) .............................................................................................................8

In re Resorts Int'l., Inc., 145 B.R. 412 (Bankr. D.N.J. 1990) .........................................................3

In re Vencor, Inc., No. 99-3199, 2001 WL 34135323 (Bankr. D. Del. Mar. 2001) .......................6

WHBA Real Estate Ltd. P'Ship v. Lafayette Hotel P'Ship (In re Lafayette Hotel P'ship),
    198 F.3d 234 (2d Cir. 1999) ......................................................................................................6

In re Walnut Equip. Leasing Co., No. 97–19699, 1999 WL 12717621 (Bankr. E.D. Pa.
    Dec. 28, 1999) ..........................................................................................................................11

In re Washington Mut., Inc., 442 B.R. 314 (Bankr. D. Del. 2011)................................................11

In re Washington Mut., Inc., 462 B.R. 137 (Bankr. D. Del. 2011)............................................ 9, 10

**Statutes & Legislative History**

11 U.S.C. § 510(b) ...........................................................................................................................7

15 U.S.C.A. § 77b(a)(4)...................................................................................................................7

15 U.S.C.A. § 78(3)(a)(8) ................................................................................................................7

H.R. Rep. No. 95-595, at 195 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963,
    6154-6155..................................................................................................................................9

**Rules & Regulations**

Fed. R. Bankr. P. 3013......................................................................................................................3

Fed. R. Bankr. P. 7001(8)-(9) .................................................................................................... 2

17 CFR § 230.191(a) ............................................................................................................. 7, 8

**Other Authorities**

Slain & Kripke, The Interface Between Securities Regulation and Bankruptcy: Allocating
   the Risk of Illegal Securities Issuance Between Security Holders and the Issuer's
   Creditors, 48 N.Y.U.L. Rev. 261 (1973) .................................................................... 8-9

Fed. R. Bankr. P. 7001(8)-(9) .................................................................................................... 2

17 CFR § 230.191(a) ............................................................................................................. 7, 8

**Other Authorities**

Slain & Kripke, The Interface Between Securities Regulation and Bankruptcy: Allocating
   the Risk of Illegal Securities Issuance Between Security Holders and the Issuer's
   Creditors, 48 N.Y.U.L. Rev. 261 (1973) .................................................................... 8-9

MBIA Insurance Corporation ("**MBIA**"), a creditor of the debtors in the above-captioned chapter 11 cases (the "**Debtors**"), respectfully submits this objection (the **"Objection"**) to the Motion of AIG Asset Management (U.S.), LLC, the Allstate Entities, and the Prudential Entities for an Order under Bankruptcy Rule 3013(i) Classifying RMBS Fraud Claims in the Same Class as the Securitization Trusts' Claims for Purposes of any Chapter 11 Plan for the Debtors and (ii) Directing that Misrepresentation Claims Cannot be Placed in a Plan Class that Will Be Subordinated under Bankruptcy Code Section 510(b) (the "**Motion**") [Docket No. 2284]. In support of its Objection, MBIA respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      The present Motion was brought by certain holders of securities (the "***Securities Claimants***") issued in the context of Debtor-sponsored securitization transactions, who are asserting claims against the Debtors based primarily on violations of federal and state securities laws (the "***Securities Claims***"). By their Motion, the Securities Claimants have asked this Court to rule that the Securities Claims must be in the same class as all other general unsecured claims, even though a plan of reorganization and disclosure statement have not been formally filed and serious plan negotiations are just beginning. The Motion also seeks a ruling that the Securities Claims are not subject to subordination under section 510(b) of the Bankruptcy Code.

2.      At the threshold, the motion is premature. Given the absence of a plan and the nascent state of plan negotiations, there is no reason to address the classification question now. Indeed, the issue is not ripe.

3.      The Motion also should be denied on its substance, as it is clear that the Securities Claims (a) do not need to be classified together with other general unsecured claims against the Debtors, and (b) are subject to mandatory subordination under section 510(b) of the Code. The

1

Bankruptcy Code does not require that all similar claims be classified together, only that claims must be substantially similar to be placed in the same class. Similar claims may be classified separately, provided that the plan proponent does not do so solely to create artificially an impaired accepting class. In the absence of a concrete plan, there is no basis on which the classification issue can be determined.

4. Moreover, the Securities Claims are subject to mandatory subordination pursuant to section 510(b) of the Bankruptcy Code. The sole basis on which the movants are asserting direct securities law claims against the Debtors is that federal securities law deems the Debtors the issuers of the securitization trust certificates. Movants cannot rely on a law that effectively conflates the Debtors and the securitization trusts and simultaneously assert that the law is not relevant to the applicability, *vel non,* of section 510(b). If they are going to live by that sword, they have to be prepared to die by it.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED AS PREMATURE

5. The Debtors' Motion is premature, because the issues it raises are not yet ripe for decision[1]. Generally, rulings concerning claims classification are made only at the confirmation hearing, or, at the earliest, after a chapter 11 plan and/or a disclosure statement have been filed.

---

[1] In addition to being premature, the Motion is also procedurally improper because a determination with respect to subordination requires the commencement of an adversary proceeding. Fed. R. Bankr. P. 7001(8)-(9). The Securities Claimants attempt to circumvent this requirement by noting that, under Rule 7001, an adversary proceeding is not required "when a . . . chapter 11 . . . plan provides for subordination." See Motion, at 11 n.9. Here, no plan has been filed, much less confirmed, so this exception does not apply. Although the Securities Claimants also suggest that Rule 3013 permits this Court to rule on subordination issues outside of an adversary proceeding, they cite no authority to that effect. Rule 7001, which expressly governs procedures with respect to "subordination," is clear that in the absence of either an adversary proceeding or a filed plan, there is presently nothing for this Court to rule on, and the subordination issue should accordingly be deferred.

2

Bankruptcy Rule 3013 provides, "For purposes of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine classes of creditors and equity security holders pursuant to [] § 1122 . . . of the Code." Fed. R. Bankr. P. 3013. Here, the Securities Claimants seek such a ruling in the absence of a formally filed chapter 11 plan. In support of this novel request, they cite only a single case, In re 500 Fifth Ave. Assocs., 148 B.R. 1010 (Bankr. S.D.N.Y. 1993), aff'd, No. 93 Civ.844 (LJF), 1993 WL 316183 (S.D.N.Y. May 21, 1993). As an initial matter, it must be both "desirable *and* necessary" for claims classification issues to be decided before a plan is formulated.[2] Motion, at 10, citing In re 500 Fifth Ave. Assocs., 148 B.R. at 1017 n.7 (emphasis added). Moreover, 500 Fifth Ave. Assocs. was at a much more advanced procedural stage than the current case, as the debtor had already filed a plan of reorganization.[3] Id. at 1013. In contrast, here, the parties have only recently begun serious plan negotiations and a plan has not been formally filed.

6. The Securities Claimants also ignore even more relevant precedent. For example, in In re One Canandaigua Properties, Inc., 140 B.R. 616 (Bankr. W.D.N.Y. 1992), the parties requested that the Court determine the propriety of the proposed classification of claims in the amended plan under § 1122 of the Bankruptcy Code. The Court denied the motion, holding that

---

[2] The Securities Claimants initially misstate the relevant standard in their "Preliminary Statement," writing that "Bankruptcy Rule 3013 permits this Court to consider classification issues in advance of plan confirmation if it is desirable *or* necessary to establish proper classification before a plan can be formulated" (emphasis added). Motion, at 4.

[3] The In re 500 Fifth Ave. Assocs., court cites to additional cases in which claims classification issues were addressed under Fed. R. Bankr. P. 3013, but in each and every case cited therein, a chapter 11 plan and/or a disclosure statement had already been filed at the time the Rule 3013 determination was sought. See In re Resorts Int'l., Inc., 145 B.R. 412, 466 (Bankr. D.N.J. 1990) (plan filed); In re Main Rd. Props., 144 B.R. 217, 218 (Bankr. D.R.I. 1992) (disclosure statement filed); In re Elsinore Shore Assocs., 91 B.R. 238, 251 (Bankr. D.N.J. 1988) (plan proposed); In re Meadow Glen, Ltd., 87 B.R. 421, 427 (Bankr. W.D. Tex. 1988) (plan proposed); In re Monroe Well Serv., Inc., 80 B.R. 324, 333 (Bankr. E.D. Pa. 1987) (plan proposed); In re DRW Prop. Co., 82, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986) (plan proposed). The Motion omits any mention of this overwhelming authority.

the propriety of the proposed classification was not ripe in that the classification motion "essentially ask[ed] the Court to set the parameters of these [plan] negotiations by means of something that is akin to an advisory opinion." Id. at 618. The Court acknowledged that there were cases where a "court [might] exercise its discretion to rule on 'confirmability' issues prior to a hearing on confirmation, and thereby achieve economy of resources and time,"[4] but nonetheless concluded that a court should generally exercise this discretion only "where the plan of reorganization is either non-confirmable on its face, or where the issue requiring resolution would have to be resolved sooner or later, and a sooner resolution is in the economic best interest of all parties." Id.; see also In re Main Rd. Props., 144 B.R. 217, 219 (Bankr. D.R.I. 1992) (holding that it is proper to consider and rule on classification issues prior to confirmation only when an already-proposed plan is "arguably unconfirmable on its face"). Notwithstanding the advanced posture of the Canandaigua case, the Court declined to exercise its discretion to decide claims classification issues prior to the confirmation hearing, recognizing that the classification issue could be resolved consensually: "However elusive a global accord might be in this case . . . the Court will leave the parties to negotiate toward that end. If, ultimately, there are disputes requiring determination at a hearing on confirmation, the Court will rule upon them as the interests of justice require." Canandaigua, 140 B.R. at 618-19. In sum, "the Court ought not to be drawn into the process of drafting of plans." Id. at 618. What was true in Canandaigua is true *a fortiori* in the present case, where no formal plan is on file.

---

[4] Id. The examples enumerated by the court, however, all arose in the context of approval of a disclosure statement. The Securities Claimants are unable to point to any precedent for such a ruling on classification before a disclosure statement or plan has been filed and where plan negotiations remain in their early stages.

4

**II.  THERE IS NO REQUIREMENT THAT THE SECURITIES CLAIMS BE PLACED IN THE SAME CLASS AS THE TRUST R&W CLAIMS**

      **A.  "Substantially Similar" Claims May Be Placed in Separate Classes**

7.  The Securities Claimants assert that their Securities Claims "must" be classified in the same class as the representation and warranty claims held by the RMBS trusts (the "***Trust R&W Claims***").[5]  This contention ignores the fact that the Bankruptcy Code provides only that claims in a class have to be "substantially similar."  Nowhere does the Code mandate that substantially similar claims have to be in the same class.  See, e.g., In re Drexel Burnham Lambert Group, Inc., 138 B.R. 714, 715 (Bankr. S.D.N.Y.) ("Bankruptcy Code § 1122(a) . . . does not require that similar classes be grouped together, but merely that any group be homogenous"), aff'd, 140 B.R. 347 (S.DN.Y. 1992).  The Second Circuit has determined that a plan proponent may classify similar claims in separate classes, provided that there is a "legitimate reason" for the separate classification "supported by credible proof."  Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Ct. (In re Chateaugay Corp.), 89 F.3d 942, 949 (2d Cir. 1996).  In other words, the similarity of claims "does not pose an insurmountable barrier to separate classification."  Id.

---

[5] Motion, at 3.

5

8. Indeed, courts have recognized many legitimate reasons for claims and interests with similar priority to be classified separately.[6] One court has observed that only "one clear rule" has emerged regarding the circumstances under which similar claims may *not* be classified separately: *"thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."* Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture), 995 F.2d 1274 (5th Cir. 1992), cited in Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship), 21 F.3d 477 (2d Cir. 1994). Confirmed plans frequently classify securities claims separately from other general unsecured claims, thus the Securities Claimants' argument that the separate classification of securities claims is unusual rings hollow.[7]

9. Absent a concrete plan, there is simply no basis for making any determination about the appropriate classification of claims.

---

[6] See, e.g., WHBA Real Estate Ltd. P'Ship v. Lafayette Hotel P'Ship (In re Lafayette Hotel P'ship), 198 F.3d 234 (2d Cir. 1999) (permitting separate classification of a single unsecured claim where the claimant was "an integral part of the reorganization process"); JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating LLC (In re Charter Commc'ns), 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (finding separate classification of unsecured claims permissible where claimants had disparate legal rights and payment expectations), appeal dismissed, 449 B.R. 14 (S.D.N.Y. 2011), aff'd, 691 F.3d 476 (2d Cir. 2010); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 714 (Bankr. S.D.N.Y. 1992) (holding that various equity holders could be placed in different classes under a plan where members of each class "own[ed] distinct securities and possess[ed] different legal rights").

[7] See, e.g., In re Dana Corp., No. 06–10354, 2007 WL 4589331, at *9 (Bankr. S.D.N.Y. Dec. 26, 2007) (confirmed plan provided for a class of "Section 510(b) Securities Claims Against the Consolidated Debtors"); Enron Corp. v. New Power Co. (In re New Power Co.), 438 F.3d 1113 (11th Cir. 2006) (confirmed plan provided for eleven separate classes, one of which was "Securities Claims"); In re Lernout & Hauspie Speech Prods., N.V., 301 B.R. 651 (Bankr. D. Del. 2003) (Class 3 of confirmed plan included all unsecured claims, while Class 6 included securities law claims), aff'd, 308 B.R. 672 (D. Del. 2004); In re NII Holdings, Inc., 288 B.R. 356, 360 (Bankr. D. Del. 2002) (confirmed plan contained a separate class of "Subordinated Securities Claims"); In re Vencor, Inc., No. 99-3199, 2001 WL 34135323 (Bankr. D. Del. Mar. 2001) (plan provided for separate classes for "Noteholder Securities Fraud Claims," "Preferred Equity Securities Fraud Claims," and "Common Equity Securities Fraud Claims").

6

### III. THE SECURITIES CLAIMS ARE SUBJECT TO SUBORDINATION UNDER SECTION 510(B)

#### A. The RMBS Certificates Are Securities "Of" The Debtors

10. Section 510(b) of the Bankruptcy Code provides that "a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, [or] for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security . . . ." 11 U.S.C. § 510(b). For purposes of section 510(b), securities are securities "of a debtor" if the securities were "**issued by the debtor.**" See, e.g., Allen v. Geneva Steel Co. (In re Geneva Steel Co.), 281 F.3d 1173, 1177 (10th Cir. 2002); Brown v. Owens Corning Inv. Review Comm., 541 F. Supp. 2d 958, 970 (N.D. Ohio 2008), aff'd, 622 F.3d 564 (6th Cir. 2010).

11. The Securities Claimants go to great lengths to demonstrate that the securities they own (or owned) represented interests in trusts that are not Debtors. They further assert that these trusts are not even affiliates of the Debtors. All of this begs an obvious question: if the trusts and securities are not related to the Debtors, on what basis can the Securities Claimants assert securities law claims against the Debtors? The answer, according to the Securities Claimants, is that federal securities law deems certain of the Debtors to be the issuers of the securities.[8]

12. Specifically, the Securities Claimants rely on the Securities Act of 1933 and the Securities Exchange Act of 1934, which, they say, provides that the "issuer" of collateral-trust certificates is "the person or persons performing the acts and assuming the duties of **depositor** or

---

[8] In denying the defendants' motion to dismiss the Allstate complaint, the court, citing the complaint, noted that the "Depositor Defendants were the depositors for the loan pools underlying the Certificates at issue, Registrants for some Registration Statement filed with the SEC, and **issuers of mortgage-backed Certificates that Allstate purchased**." Allstate Ins. Co. v. GMAC Mortg., LLC, No. 27-cv-11-3480, slip op. at 2 (Minn. Dist. Ct. Nov. 28, 2011) (emphasis added).

7

manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued." 15 U.S.C.A. § 77b(a)(4); 15 U.S.C.A. § 78(3)(a)(8) (emphasis added); see also 17 CFR § 230.191(a) ("The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the 'issuer' for purposes of the asset-backed securities of that issuing entity"); 17 CFR § 230.191(a) (identical regulation under the Securities Exchange Act); Federal Housing Fin. Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012) ("the term 'issuer' means the person or persons performing the acts and assuming the duties of *depositor*").[9] Thus, by way of example, Allstate's complaint cites to the relevant securities laws in support of its assertion that the depositor Debtors are the "issuers" of the RMBS certificates.[10]

13. Although they necessarily rely on the federal securities law to assert their claims against the Debtors, The Securities Claimants argue that the federal securities laws are "irrelevant"[11] to the interpretation of section 510(b). While it would be nice to have your cake and eat it, too, you can't. Indeed, the legislative history of section 510(b) shows that the provision was drafted specifically to address the interface between the securities laws and the Bankruptcy Code. The relevant House Report notes that "the argument for mandatory subordination" as ultimately codified in section 510(b) was "best described by Professors Slain and Kripke" in an article entitled The Interface Between Securities Regulation and Bankruptcy:

---

[9] To the extent securitization depositors are deemed issuers, they are subject to liability under the federal securities laws with respect to the securities issued in the relevant securitization transactions. See, e.g., Federal Housing Fin. Agency v. UBS Americas, Inc., 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012); Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762 (1st Cir. 2011).

[10] See Allstate Ins. Co. v. GMAC Mortg., LLC, No. 27-cv-11-3480 (Minn. D. Ct. Apr. 15, 2011), ¶ 20: "The Depositors are considered issuers of the Certificates within the meaning of Section 2(a)(4) of the Securities Act of 1933, 15 U.S.C. §77b(a)(4), and in accordance with Section 11(a), 15 U.S.C. §77k(a)."

[11] Motion, at 19.

<u>Allocating the Risk of Illegal Securities Issuance Between Security Holders and the Issuer's Creditors</u>[12], which focused on cases in which a dissatisfied investor seeks to improve the relative priority of his securities claims by asserting tort claims pursuant to federal securities laws. See Slain & Kripke at 261. Because section 510(b) was drafted specifically to address the priority of securities law claims in bankruptcy, it is clear that the federal and state securities laws are not only relevant, but are integral to the proper interpretation of section 510(b).

14. The Securities Claimants rely heavily upon <u>In re Washington Mutual, Inc.</u>, 462 B.R. 137, 146 (Bankr. D. Del. 2011). In <u>Washington Mutual</u> the court declined to subordinate the securities law claims asserted by a holder of mortgage-backed securities, finding that the securities had been issued by the securitization trust, which was neither a debtor nor the affiliate of a debtor pursuant to the Bankruptcy Code. However, the <u>Washington Mutual</u> decision cited by the Securities Claimants fails to take into account the applicable federal securities laws discussed above. This omission was due to the fact that the parties did not raise the issue for the court. In fact, the official creditors' committee in <u>Washington Mutual</u> subsequently filed a motion to alter or amend the opinion in order to bring to the court's attention the "explicit definitional sections of the Securities Act, the Exchange Act, SEC Rule 1919, SEC Rule 3b-19, [or] SEC Regulation AB."[13] The committee correctly noted that:

> The statutes and regulations regarding asset-back securities . . . draw a very clear distinction between an "issuer" and an "issuing entity." The "issuer" is the "depositor," and "*Depositor* means the depositor who receives or purchases and transfers or sells the pool assets to the issuing entity." The "issuing entity," by contrast, means "the trust or other entity created at the direction of the sponsor or depositor that owns or holds the

---

[12] 48 N.Y.U.L. Rev. 261 (1973). See H.R. Rep. No. 95-595, at 195 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5963, 6154-6155.

[13] Motion of the Official Committee of Unsecured Creditor to Alter or Amend the Court's Opinion and Order Regarding Subordination of the Claim of Tranquility Master Fund, Ltd. at 3, <u>In re Washington Mutual, Inc.</u>, No. 08-12229 (Bankr. D. Del. Jan. 3. 2012) [Docket No. 9301].

9

pool assets and in whose name the asset-backed securities supported or serviced by the pool assets are issued"—here, the Trusts. 17 C.F.R. § 17 C.F.R. § 229.1101(f).  See also Talcott J. Franklin & Thomas F. Nealon III, Mortgage Asset Backed Securities Litigation Handbook Appendix A (2011) .

15.    But, the Washington Mutual court never ruled on the Committee's motion to amend or alter the prior decision because the parties settled their dispute, therefore resulting in a published decision that was not truly dispositive with respect to the issue before the court.[14] Notably, however, under the settlement, the Washington Mutual security holder's federal securities claims were, in fact, subordinated.  See WaMu Settlement Motion, at ¶ 24.  The Securities Claimants' Motion ignores all of this and just relies on the opinion in Washington Mutual.  But a careful review of the events in the case, along with the application of the federal securities laws and the Bankruptcy Code, clearly demonstrate that the Securities Claims are subject to section 510(b) subordination.

### B.    Section 510(b) Applies to Debt as Well as Equity Securities

16.    The Securities Claimants also contend that, because they are not equity holders, their Securities Claims are not subject to subordination under section 510(b).  In other words, the Securities Claimants suggest that section 510(b) applies only to claims based on the purchase or sale of equity securities.  The plain language of the Bankruptcy Code refutes this notion.  Section 510(b) applies to claims arising from a purchase or sale of a "security," and the Bankruptcy Code's definition of "security" includes, among other things, a "note" (11 U.S.C. § 101(49)(i))

---

[14] See Motion of Debtors for an Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Stipulation and Agreement between the Debtors and Tranquility Master Fund, Ltd. (A) Resolving Amended Proof of Claim Number 3925 and (B) Allowing Claims for Voting Purposes, In re Washington Mutual, Inc., No. 08-12229 (Bankr. D. Del. Jan. 3. 2012) [Docket No. 9521] (the "***WaMu Settlement Motion***").

10

and a "collateral trust certificate" (11 U.S.C. § 101(49)(vi)). Case law also confirms that section 510(b) applies to debt as well as to equity securities.[15]

17. In the case most relevant to the instant facts, NationsBank, N.A. v. Commercial Fin. Servs., Inc. (In re Commercial Fin. Servs., Inc.), 268 B.R. 579 (Bankr. N.D. Okla. 2001), the court held not only that a "Note" issued in the context of a securitization transaction was a "security" for purposes of section 510(b), but also that the policies underlying section 510(b) mandated the subordination of debt securities issued in the securitization context to the extent such securities were issued by the debtor or an affiliate of the debtor. The court noted that the basic policy underlying section 510(b) is that "in exchange for the upside benefits not shared with general creditors, security holders should be allocated the risk that the security transaction was tainted by fraud." Id. at 594. The court acknowledged that purchasers of securities issued in securitization transactions do not receive exactly the same benefits as traditional equity holders (e.g., profits or dividends), but noted that purchasing securities in a securitization transaction, rather than lending money directly to the securitization sponsor, does provide security holders with significant benefits not accorded to general unsecured creditors. Id. at 599. Specifically,

---

[15] See, e.g., Levine v. Resolution Trust Corp. (In re Coronet Capital Co.), No. 94 Civ. 1187 (LAP), 1995 WL 429494, *8 (S.D.N.Y. July 20, 1995) (holding that § 510(b) is "written in terms of 'any claim for rescission of a purchase or sale of a security' without distinction between equity securities and debt securities" and noting that "[c]ommentators have construed the statute to apply to both"); In re Washington Mutual, 442 B.R. 314, 363 (Bankr. D. Del. 2011) ("[t]he term 'security' [as used in section 510(b)] is defined to include a debt security such as a note or bond"); In re Patriot Aviation Servs., Inc., 396 B.R. 780, 787 (Bankr. S.D. Fla. 2008) ("The unambiguous language of [section 510(b)] specifically includes debt securities such as promissory notes"); NationsBank, N.A. v. Commercial Fin. Servs., Inc. (In re Commercial Fin. Servs., Inc.), 268 B.R. 579, 600 (Bankr. N.D. Okla. 2001) (finding that a "Note" issued in the context of a securitization transaction was a security encompassed by the language of section 510(b)); In re Walnut Equip. Leasing Co., No. 97–19699, 1999 WL 1271762, *10-11 (Bankr. E.D. Pa. Dec. 28, 1999) ("The legislative history of the original § 510(b) reflects Congress's intent to include security holders' claims generally—both debtholder claims as well as shareholder claims"); In re Mid-American Waste Sys., Inc., 228 B.R. 816, 825 (Bankr. D. Del. 1999) ("by its plain terms § 510(b) is intended to apply to both debtholders and equityholders").

the securities issued in loan securitizations (like those sponsored by the Debtors here) entitle the security holders to be repaid from pools of loans held in bankruptcy-remote entities, which shields those assets from the securitization sponsor's general unsecured creditors. Id. Like the security holder whose arguments against subordination the court rejected in Commercial Fin. Servs., the Securities Claimants here "were to reap the benefits of . . . segregated collateral to the exclusion of [the Debtors'] general unsecured creditors." Id. Thus, as in Commercial Fin. Servs., it would be "inequitable" to allow the Securities Claimants to make a claim against the Debtors' *unsegregated assets*, diluting the general unsecured creditors' potential recovery yet a second time. Id. Again, the Securities' Claimants' Motion ignores the most relevant authority and the clear language of the Bankruptcy Code, all of which support the subordination of their claims.

# CONCLUSION

18. For all of these reasons, MBIA respectfully requests that the Court deny the Motion, and award MBIA such relief as is just and proper.

Dated: New York, New York
February 19, 2013

**CADWALADER, WICKERSHAM & TAFT LLP**

*/s/ Mark C. Ellenberg*
Gregory M. Petrick
Ingrid Bagby
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

-and-

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

*Attorneys for MBIA Insurance Corporation*