# Exhibit B

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re : Chapter 11
:
WASHINGTON MUTUAL, INC., et al.,[1] : Case No. 08-12229 (MFW)
:
Debtors. : (Jointly Administered)
:
: Requested Hearing Date: Prior to 2/9/2012
---------------------------------------------------------------x Requested Obj. Deadline: At the Hearing

**MOTION OF DEBTORS FOR AN ORDER PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING STIPULATION AND AGREEMENT BETWEEN THE DEBTORS AND TRANQUILITY MASTER FUND, LTD. (A) RESOLVING AMENDED PROOF OF CLAIM NUMBER 3925 AND (B) ALLOWING CLAIMS FOR VOTING PURPOSES**

Washington Mutual, Inc. ("WMI") and WMI Investment Corp., as debtors and debtors in possession (the "Debtors"), as and for their motion (the "Motion") for an order, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving that certain *Stipulation and Agreement Between the Debtors and Tranquility Master Fund, Ltd. (A) Resolving Amended Proof of Claim Number 3925 and (B) Allowing Claims for Voting Purposes*, dated January 27, 2012 (the "Stipulation"),[2] between the Debtors and Tranquility Master Fund, Ltd. ("Tranquility") (now known as Spectrum Master Fund, Ltd.), respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's federal tax identification number are: (i) Washington Mutual, Inc. (3725); and (ii) WMI Investment Corp. (5395). The Debtors' principal offices are located at 925 Fourth Avenue, Suite 2500, Seattle, Washington 98104.

[2] A copy of the Stipulation is attached hereto as Exhibit A.

## Jurisdiction

1.  The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### Bankruptcy Background

2.  Prior to September 25, 2008, WMI was a savings and loan holding company that owned WMB and such bank's subsidiaries, including Washington Mutual Bank fsb.

3.  On September 25, 2008, the Office of Thrift Supervision, by order number 2008-36, closed WMB, appointed Federal Deposit Insurance Corporation ("FDIC") as receiver for WMB (the "FDIC Receiver") and advised that the FDIC Receiver was immediately taking possession of WMB's assets.

4.  On or about September 25, 2008, the FDIC, in its corporate capacity and as receiver of WMB, and JPMorgan Chase Bank, N.A. ("JPMC") entered into that certain *Purchase and Assumption Agreement, Whole Bank*, dated as of September 25, 2008.

5.  On September 26, 2008, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). As of the date hereof, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On October 3, 2008, the Bankruptcy Court entered an order pursuant to Bankruptcy Rule 1015(b) authorizing the joint administration of the Debtors' chapter 11 cases for procedural purposes only as Chapter 11 Case No. 08-12229 (MFW).

6.       On October 15, 2008, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On January 11, 2010, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

7.       On December 12, 2011, the Debtors filed the *Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, dated December 12, 2011 [D.I. 9178] (as it has and may be amended from time to time, the "Seventh Amended Plan"), and a related disclosure statement (the "Disclosure Statement").

8.       By order, dated January 13, 2012 [D. I. 9414] (the "Solicitation Order"), the Bankruptcy Court (1) approved the adequacy of the information contained in the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, (2) established solicitation procedures with respect to acceptances and rejections of, as well as elections in connection with, the Seventh Amended Plan and (3) set February 16, 2012, at 9:30 a.m., as the commencement of the hearing to consider confirmation of the Seventh Amended Plan.

**The Tranquility Claim and the Claims Process**

9.       By order, dated January 30, 2009 (the "Bar Date Order"), the Bankruptcy Court established March 31, 2009 (the "Bar Date") as the deadline for filing proofs of claim against the Debtors in these chapter 11 cases. Pursuant to the Bar Date Order, each creditor, subject to certain limited exceptions, was required to file a proof of claim on or before the Bar Date.

10.       On March 27, 2009, Tranquility filed proof of claim number 2206 against WMI in these chapter 11 cases in the amount of $49,603,057.24 (the "Original Tranquility Claim"). Tranquility alleged that, from 2006 through 2007, it purchased approximately $71

million in certain mortgage backed securities issued by certain special-purpose trusts created by WMB. Tranquility further alleged that WMI was liable under California Corp. Code §§ 25401, 25501, 25504, and 25504.1 and Sections 11 and 15 of the Securities Act of 1933, related to material misrepresentations and omissions in the offer and sale of certain mortgage-backed securities. The Original Tranquility Claim alleged that the mortgage-backed securities were issued and sold by WaMu Capital Corp., in conjunction with WMB, WaMu Asset Acceptance Corp., Washington Mutual Mortgage Securities Corp., Washington Mutual Bank, fsb, and certain special purpose trusts. The Original Tranquility Claim further alleged that such entities were engaged in a scheme with two appraiser companies, Lender Services, Inc. and First American eAppraiseIT, LLC, to artificially inflate the appraised value of the homes serving as collateral for the loans originated by WMB and its subsidiaries that underlie the mortgage backed securities at issue. The Original Tranquility Claim allegations asserted that the various related entities and trusts were either owned or controlled by WMI.

11. On March 15, 2010, the Debtors filed the *Debtors' Objection to Proof of Claim of Tranquility Master Fund, Ltd. (Claim No. 2206)* (D.I. 2531) (the "Objection"), asserting, among other objections, that the Original Tranquility Claim failed to assert a claim against those securities issued pursuant to the private placement exemption, that Tranquility failed to plead fraud with particularity, that Tranquility's claims lack jurisdiction and should be dismissed, that the Original Tranquility Claim failed to establish that WMI was a controlling person or materially assisted in an alleged securities violation, that Tranquility failed to allege loss causation, and that there were no underlying securities law violations of either federal or California law.

12. The parties agreed to bifurcate the proceedings involving the Objection, proceeding initially with only Sections II(A)-(C)(1) of the Objection (the "Initial Issues"), while deferring discovery and argument on the remaining portions of the Objection.

13. Upon completion of briefing, a hearing was held on October 22, 2010 before the Bankruptcy Court on the Initial Issues. On November 12, 2010, the Bankruptcy Court entered its *Order Sustaining in Part and Overruling in Part Debtors' Objection to Proof of Claim of Tranquility Master Fund, Ltd.* (Claim 2206) [D.I. 5882] (the "Initial Order"). In the Initial Order, the Bankruptcy Court sustained the Debtors' Objection in part and disallowed Tranquility's federal claims as to those securities that were not issued pursuant to a registration statement. Additionally, the Bankruptcy Court sustained the Objection in part based on failure to allege facts sufficient to plead control person or material assistance liability against WMI, but granted Tranquility leave to file an amended proof of claim.

14. On November 30, 2010, Tranquility filed an amended proof of claim (No. 3925) (the "Amended Tranquility Claim") in the amount of $49,603,057.24. The Amended Tranquility Claim also contains allegations that WMI is liable under California Corp. Code §§ 25401, 25501, 25504, and 25504.1 and Sections 11 and 15 of the Securities Act of 1933, for rescission and damages related to Tranquility's purchases in 2006 and 2007 of mortgage-backed securities based on material misrepresentations and omissions in the offer and sale thereof. The substantive allegations in the Amended Tranquility Claim also relate in part to the third-party appraisal vendor practices described in the Original Tranquility Claim.

15. On December 16, 2010, the Debtors filed their *Supplemental Objection to Proof of Claim of Tranquility Master Fund Ltd. (Claim No. 2206)* [D.I. 6426] (the "Supplemental Objection"). In the Supplemental Objection, the Debtors objected to the

Amended Tranquility Claim, incorporating, by reference, the original Objection and also asserting that Amended Tranquility Claim should be subordinated pursuant to section 510(b) of the Bankruptcy Code.

16. On January 21, 2011, Tranquility filed its *Response to Debtors' Supplemental Objection to Proof of Claim of Tranquility Master Fund, Ltd.* [D.I. 6606].

17. On January 31, 2011, the Debtors filed their *Reply to Tranquility Master Fund, Ltd's Response to Debtors' Supplemental Objection to Proof of Claim of Tranquility Master Fund, Ltd.* [D.I. 6647].

18. On June 22, 2011 Tranquility filed its *Notice of Supplemental Authority in Opposition to Debtors' Supplemental Objection to Proof of Claim of Tranquility (Claim No. 2206)* [D.I. 7964].

19. On June 28, 2011, a hearing was held before the Bankruptcy Court concerning certain issues in the Supplemental Objection, including whether Tranquility's claims were subject to subordination and whether Tranquility had properly pled control person liability. At the conclusion of the hearing, the Bankruptcy Court granted the request of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to submit additional briefing on the subordination issue.

20. On July 8, 2011 and July 18, 2011, the Creditors' Committee filed its *Supplemental Brief in Support of Debtors' Supplemental Objection to the Amended Proof of Claim of Tranquility Master Fund Ltd. (Claim No. 3925)* [D.I. 8116] and Tranquility filed its *Response to the Official Committee of Unsecured Creditors Supplemental Brief Objecting to Tranquility's Amended Proof of Claim* [D.I. 8265], respectively.

21. On December 20, 2011, the Bankruptcy Court entered its *Order Regarding Tranquility Claim* [D.I. 9225] and corresponding *Memorandum Opinion Regarding Tranquility Claim* [D.I. 9224] (collectively, the "December Order"), which found that Tranquility had sufficiently stated a claim against the Debtors, and that the Debtors had not stated a basis for subordinating Tranquility's claim under section 510(b) of the Bankruptcy Code.

22. The portions of the Supplemental Objection not previously decided in the Initial Order and the December Order are currently pending discovery, further motion practice, and an evidentiary hearing if not otherwise resolved.

23. On January 3, 2012, (1) the Creditor's Committee filed the *Motion of the Official Committee of Unsecured Creditors to Alter or Amend the Court's Opinion and Order Regarding Subordination of the Claim of Tranquility Master Fund, Ltd.* [D.I. 9301] (the "Motion to Alter or Amend"), asserting that, in light of the Bankruptcy Court's ruling in the December Order that "[n]either the Debtors nor their affiliates are the issuers of the Certificates", and, therefore, "subordination under section 510(b) is not available", (December Op., 20-21), the Bankruptcy Court should consider (1) the definition of "issuer" under both federal and California securities laws, which both provide that the issuer of asset backed securities (like those at issue in the Amended Tranquility Claim;) is the securities' depositor, and (2) that for each of the securities purchased by Tranquility, the depositor is an affiliate of the Debtor. Also on January 3, 2012, the Debtors' filed a *Joinder to the Motion of the Official Committee of Unsecured Creditors to Alter or Amend the Court's Opinion and Order Regarding Subordination of the Claim of Tranquility Master Fund, LTD.* [D.I. 9302]. By agreement of the parties, Tranquility's deadline to respond to the Motion to Alter or Amend was extended.

Tranquility has not yet filed such a response, and no final order has been entered regarding the Supplemental Objection or regarding subordination of the Amended Tranquility Claim.

### **The Stipulation**

24.  WMI and Tranquility have disputed, and continue to dispute, the validity of the claims asserted in the Amended Tranquility Claim. Nevertheless, subject to the Bankruptcy Court's approval, the Debtors and the Tranquility (collectively, the "Parties") have agreed to, among other things, fully resolve and settle, with finality, all the claims and causes of action asserted by Tranquility in the Amended Tranquility Claim. The salient terms of the Stipulation are as follows:[3]

- Upon the effective date of the Stipulation (the "Effective Date"), Tranquility shall receive, in the aggregate:

    - On account of the claims asserted in the Amended Tranquility Claim relating to alleged violations of the California Corporations Code, an Allowed General Unsecured Claim (as such term is defined in the Seventh Amended Plan) in Class 12 in the amount of Nine Million Dollars ($9,000,000.00) (the "Allowed GUC Claim"); and

    - On account of the claims asserted in the Amended Tranquility Claim relating to alleged violations of the federal Securities Act of 1933, an Allowed Subordinated Claim (as such term is defined in the Seventh Amended Plan) in Class 18 in the amount of One Million Dollars ($1,000,000.00) (the "Allowed Subordinated Claim").

- Tranquility shall receive distributions with respect to the Allowed GUC Claim and the Allowed Subordinated Claim pursuant to the terms and conditions of the Seventh Amended Plan (or such other chapter 11 plan as is ultimately confirmed by the Bankruptcy Court), including, without limitation, the elections permitted thereunder and the execution and delivery of releases in accordance with Section 41.6 of the Seventh Amended Plan.

---

[3] The following is a summary of the Stipulation, which is attached hereto and incorporated by reference as if fully set forth herein. In the event of any inconsistency between this summary and the Stipulation, the Stipulation controls.

- Upon the Effective Date, and except as otherwise provided pursuant to the Seventh Amended Plan and the Stipulation, Tranquility unconditionally, fully, finally, and forever waives and releases the Debtors, each of the Debtors' chapter 11 estates, the Reorganized Debtors (as defined in the Seventh Amended Plan), and their respective past or present parent entities and directors and officers, from any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which Tranquility or anyone claiming through Tranquility, on their behalf or for their benefit have or may have or claim to have, now or in the future, against the Debtors, or any of them, that are based upon, related to, or arise out of or in connection with the Amended Tranquility Claim, or any claim, act, fact, transaction, occurrence, statement, or omission in connection with, or alleged or that could have been alleged in connection with the Amended Tranquility Claim; _provided, however_, that Tranquility may assert any such claims defensively in connection with any action brought against it; _provided, further_, that Tranquility shall be entitled to any and all distributions pursuant to the Seventh Amended Plan (or such other chapter 11 plan as is ultimately confirmed by the Bankruptcy Court) relating to the Allowed GUC Claims and the Allowed Subordinated Claim; and _provided further_, that the foregoing release shall not preclude Tranquility from protecting, preserving, or enforcing any and all of its rights under the Stipulation.

- Upon the Effective Date, Kurtzman Carson Consultants, LLC, the Debtors' court-appointed claims and noticing agent, shall be authorized and directed to take such action as is necessary to record the Amended Tranquility Claim as allowed in the amounts set forth herein, including, without limitation, reflecting on the official claims register in these chapter 11 cases the Allowed GUC Claim and the Allowed Subordinated Claim. In addition, Kurtzman Carson Consultants, LLC shall be authorized and directed to take such action as is necessary to record as removed and expunged any portion of the Amended Tranquility Claim currently listed on the official claims register in these chapter 11 cases that does not reflect and conform to the Stipulation and the amounts specified in the Allowed GUC Claim and the Allowed Subordinated Claim.

- Upon the Effective Date, Tranquility shall be deemed to have withdrawn, to the extent filed, any objections to the Disclosure Statement and the Seventh Amended Plan.

- Tranquility shall (i) not oppose and shall otherwise support, and take any and all actions reasonably requested by the Debtors to support confirmation of the Seventh Amended Plan, or any other chapter 11 plan proposed by the Debtors that does not materially reduce recovery to the general unsecured creditors class, in accordance with section 1129 of the Bankruptcy Code, including, without limitation, voting to accept the Seventh Amended Plan in the amounts of the Allowed GUC Claim and the Allowed Subordinated Claim; (ii) not vote for or support any chapter 11 plan not proposed or supported by the Debtors; and (iii) otherwise take no action to impede or preclude the administration of the Debtors' chapter 11 cases, the approval of any disclosure statement offered by the Debtors, the entry of a confirmation order confirming, or the consummation, implementation and administration of, the Seventh Amended Plan, or any other chapter 11 plan proposed by the Debtors that does not materially reduce recovery to the general unsecured creditors class.

**Relief Requested**

25. The Debtors seek entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 approving the Stipulation as fair, reasonable, and adequate, and authorizing the Parties to take all steps necessary to consummate the Stipulation in its entirety.

**The Stipulation Is Fair and Reasonable and Should Be Approved**

26. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy Rule 9019, which governs the approval of compromises and settlements, provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The decision to approve a particular settlement lies "within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).

27. A starting point in analyzing any proposed settlement is the general policy of encouraging settlements and favoring compromises. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Washington Mutual, Inc.*, Case No. 08-12229 (MFW), 2011 WL 57111 at *6 (Bankr. D. Del. Jan. 7, 2011). To approve a settlement, a bankruptcy court must determine that such settlement is in the best interest of a debtor's estate. *Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91, 95-96 (D. Del. 2006). In addition, a court must

> "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

*Id.* at 96 (quoting *Martin*, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable, and in the best interest of a debtor's estate. *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).

28. "The court does not have to be convinced that the settlement is the best possible compromise, but only that the settlement falls within a reasonable range of litigation possibilities." *In re Washington Mutual, Inc.*, 2011 WL 57111 at *5; *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (explaining that a court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'") (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re World Health Alternatives, Inc.*, 344 B.R.

at 296; *In re Key3Media Group, Inc.*, 336 B.R. at 92-93. An analysis of the four factors that bankruptcy courts use to determine whether to approve a compromise or settlement demonstrates that the Stipulation is fair, reasonable, and in the best interests of WMI's estate and all parties in interest.

**Probability of Success in Prevailing**

29. The Debtors have objected to the Amended Tranquility Claim and dispute liability on the merits of the allegations asserted. The Court sustained the Debtors' initial objection to the Tranquility claim, in part, but permitted Tranquility to replead, and on renewed objection determined in the December Opinion that the Amended Tranquility Claim asserted sufficient facts from which the Court could find liability against the Debtors. While the Debtors are confident they eventually would prevail and the Amended Tranquility Claim would be disallowed, Tranquility is equally confident that it would prevail on the merits. Similarly, the parties continue to dispute the applicability of section 510(b) of the Bankruptcy Code to the Amended Tranquility Claim. The Motion to Alter or Amend is currently pending, and the Court has not entered a final order regarding the issue of 510(b) subordination. That issue would likewise have to be litigated to conclusion posing risk for each side. In light of the risks for each party of continued litigation, the settlement is appropriate under the probability-of-success prong of the Rule 9019 analysis.

**Difficulties in Collection**

30. Because Tranquility has asserted the Amended Tranquility Claim against the Debtors, analysis of the second factor is not warranted here.

**Complexity, Expense, Inconvenience and Delay**

31. The third factor also weighs in favor of approving the Stipulation. Most significantly, the Amended Tranquility Claim presents a highly complex dispute. Indeed, there

are multiple layers of complexity. The underlying claims of misrepresentation and omission will require extensive analysis of residential real property appraisal and mortgage securitization practices at WMI's former subsidiaries, as well as investigation of Tranquility's own knowledge of the relevant facts and circumstances. That alone is an extraordinarily complex dispute, but layered on top of that are Tranquility's control person allegations, requiring exploration of WMI's historic corporate organization and its relationship to its subsidiaries. To date, the Court has only touched on these issues, addressing only the sufficiency of the pleadings under a Rule 12(b)(6) standard. Furthermore, even apart from these highly complex issues on the merits of the dispute, the Motion to Alter or Amend remains outstanding and would have to be litigated to conclusion to determine the applicability of section 510(b) of the Bankruptcy Code.

32. The result of the Court's December Opinion is that the parties will have to commence discovery regarding this complex dispute. Discovery in this case will be exceedingly long, difficult and expensive because the prosecution and defense of Tranquility's claims will require significant third party discovery of numerous appraisal firms as well as former Washington Mutual employees, officers, and directors. In addition, the discovery process will be complicated, and the litigation particularly complex, because the nature of Tranquility's claims will require detailed examination of potentially tens or hundreds of thousands of mortgage appraisals underlying the mortgage-backed securities involved in the Amended Tranquility Claim.

33. Accordingly, absent the settlement the parties will have to litigate a complex factual and legal case to conclusion at substantial cost. Indeed, because of the extensive discovery involved, the litigation of the Amended Tranquility Claim likely would last years just in this Court, and any appeals would take still more time.

**Paramount Interest of the Debtors' Creditors**

34.     Application of the fourth factor, which addresses whether a settlement is in creditors' best interests, also demonstrates that approval of the Stipulation is warranted. Tranquility has asserted claims of over $49 million. The Stipulation reduces this substantial exposure to the estate to $10 million, $9 million of which will be allowed as a general unsecured claim and $1 million of which will be allowed as a subordinated claim.

35.     The substantial reduction in the amount of the Amended Tranquility Claim inures to the benefit of creditors and the lower end of the Debtors' capital structure, in particular the PIERS class. Due to the application of contractual subordination provisions, the recovery of the PIERS class under the Seventh Amended Plan is affected by the amount of allowed general unsecured claims in Class 12. Reduction of the Amended Tranquility Claim by approximately $40 million protects the PIERS' recovery by eliminating the risk of a higher judgment and will help to ensure that the actual recoveries achieved for the PIERS class meets or exceeds anticipated distributions for that class based on the Debtors' estimates of the total allowed claims in the general unsecured class. Although there remain substantial contingencies in connection with the remaining disputed general unsecured claims, in the Debtors' judgment resolution of the Amended Tranquility Claim as set forth in the Stipulation is not likely to result in a lower distribution to the PIERS class than estimated in the disclosure statement for the Seventh Amended Plan, nor would it result in dilution of estimated recoveries to any other class. The settlement thus is in the best interest of creditors.

36.     Further, the Stipulation advances the interests of creditors by facilitating confirmation of the Seventh Amended Plan. Tranquility has agreed to support the Seventh Amended Plan and will vote its claims in favor of the plan. Securing the support of the holder of

a large disputed claim likewise inures to the benefit of the creditor constituency as a whole, and the PIERS class in particular, which stands to see recoveries reduced or eliminated by further delay in confirmation.

37.     Based on the foregoing, the Debtors submit that ample cause exists to approve the Stipulation pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Notice

38.     No trustee has been appointed in these Chapter 11 Cases. Notice of this Motion shall be provided to: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel for the Equity Committee; (iv) counsel for Tranquility; and (v) other parties entitled to receive notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Bankruptcy Court enter an order substantially in the form of the proposed order annexed hereto as <u>Exhibit B</u> and granting such other and further relief as is just.

Dated: January 30, 2012
       Wilmington, Delaware

                                  /s/ illegible
                                  Mark D. Collins (No. 2981)
                                  Michael J. Merchant (No. 3854)
                                  Travis A. McRoberts (No. 5274)
                                  RICHARDS, LAYTON & FINGER, P.A.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, DE 19801
                                  Telephone: (302) 651-7700
                                  Facsimile: (302) 651-7701

                                  – and –

                                  Brian S. Rosen, Esq.
                                  Adam P. Strochak, Esq.
                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York 10153
                                  Telephone: (212) 310-8000
                                  Facsimile: (212) 310-8007

                                  ATTORNEYS TO THE DEBTORS
                                  AND DEBTORS IN POSSESSION