**DECHERT LLP**
Glenn E. Siegel
Craig Druehl
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and
The Bank of New York Mellon Trust Company,
N.A., as Trustee of Certain Mortgage-Backed
Securities Trusts*

**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (pro hac vice)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust
Company and Deutsche Bank Trust Company
Americas, as Trustee of Certain Mortgage-
Backed Securities Trusts*

**ALSTON & BIRD LLP**
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
William Hao
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee
of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as
Trustee of Certain Mortgage-Backed
Securities Trusts*

**SEWARD & KISSEL LLP**
Dale C. Christensen, Jr.
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of
New York, as Separate Trustee of Certain
Mortgage-Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) |
| | ) Chapter 11 |
| Debtors. | ) |
| | ) Jointly Administered |

**RMBS TRUSTEES' OBJECTION TO MOTION OF AIG ASSET MANAGEMENT
(U.S.), LLC, THE ALLSTATE ENTITIES, MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, AND THE PRUDENTIAL ENTITIES FOR AN ORDER
UNDER BANKRUPTCY RULE 3013 (I) CLASSIFYING RMBS FRAUD CLAIMS IN
THE SAME CLASS AS THE SECURITIZATION TRUSTS' CLAIMS FOR PURPOSES
OF ANY CHAPTER 11 PLAN FOR THE DEBTORS AND (II) DIRECTING THAT
MISREPRESENTATION CLAIMS CANNOT BE PLACED IN A PLAN CLASS THAT
WILL BE SUBORDINATED UNDER BANKRUPTCY CODE SECTION 510(b)**

14825003

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

A.    THE DEBTORS' RMBS SECURITIZATION BUSINESS ............................................. 4

B.    THE SECURITIES CLAIMS ........................................................................................ 5

C.    THE RMBS TRUSTS' CLAIMS ................................................................................. 6

ARGUMENT ........................................................................................................................ 8

I.      The Motion Should Be Denied Because It Is Premature and Improper ................ 8

II.    The Securities Claims and the RMBS Trusts' Claims Are Distinct and
Dissimilar and Should Not Be Classified Together for Purposes of a Plan ........ 11

III.   Although the Issue Is Not before the Court at this Juncture, the Securities
Claims May Be Subordinated under Bankruptcy Code Section 510(b) .............. 13

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

### CASES

*Commissioner v. Fifth Ave. Coach Lines, Inc.*,
    281 F.2d 556 (2d Cir. 1960)................................................................18

*Feng Chen v. Holder*,
    367 Fed. Appx. 237 (2d Cir. 2010)....................................................18

*In re 500 Fifth Ave. Assocs.*,
    148 B.R. 1010 (Bankr. S.D.N.Y. 1993)............................................10

*In re American Family Enters*,
    256 B.R. 377 (Bankr. D. N.J. 2000) ..................................................10

*In re American Solar King Corp.*,
    90 B.R. 808 (Bankr. W.D. Tex. 1988)...............................................11

*In re DRW Property Co. 82*,
    60 B.R. 505 (Bankr. N.D. Tex. 1986).................................................10

*In re Geneva Steel Co.*,
    281 F.3d 1173 (10th Cir. 2002) .........................................................14

*In re Granite Partners, L.P.*,
    208 B.R. 332 (Bankr. S.D.N.Y. 1997)..............................................14

*In re Rancher Energy Corp.*,
    2011 Bankr. LEXIS 2537 (Bankr. D.Colo. June 30, 2011) ...............14

*In re Unbreakable Nation Co.*,
    437 B.R. 189 (Bankr. E.D. Pa. 2010) ................................................12

*In re Washington Mutual, Inc.*,
    462 B.R. 137 (Bankr. D. Del. 2011) .....................................14, 17, 18

*Northcross v. Bd. Of Educ.*,
    412 U.S. 427 (1973) (per curiam).......................................................14

*Portnoy v. Kawecki Berylco Indus., Inc.*,
    607 F.2d 765 (7th Cir. 1979) .......................................................16, 17

*Smith v. City of Jackson*,
    544 U.S. 228 (2005)...........................................................................14

*United States v. Mang Sun Wong*,
    884 F.2d 1537 (2d Cir. 1989).............................................................18

# TABLE OF AUTHORITIES
(continued)

Page

STATUTES

11 U.S.C. § 510(b) ................................................................ passim

11 U.S.C. § 1121 ..................................................................2, 9, 10

11 U.S.C. § 1122 ..................................................................11, 12

15 U.S.C. § 77b(a)(4) ...........................................................15

15 U.S.C. § 77o .....................................................................5

15 U.S.C. § 78c(a)(8) ............................................................15

RULES AND REGULATIONS

17 C.F.R. § 229.1101 ............................................................16

17 C.F.R. § 230.191 ..............................................................15, 16

17 C.F.R. § 240.3b-19 ..........................................................16, 17,

17 C.F.R. § 240.10b-5 ..........................................................5

Fed. R. Bankr. P. 3013 .........................................................8, 9, 10

OTHER AUTHORITIES

7-1122 COLLIER ON BANKR. 1122.03[3][d] (16th Rev. ed. 2012) ...........................12, 13

9 COLLIER ON BANKR. 1001.01[1] (16th Rev. ed. 2012) ..............................9

*Allstate Ins. Co. v. GMAC Mortg. LLC*,
No. 27-CV-11-3480 (D. Minn. Feb. 15, 2011) .......................................20

*Asset-Backed Securities*, 70 Fed. Reg. 1506 (Jan. 7, 2005) ...........................17

H.R. Rep. No. 85, 73 Cong., 1st Sess. (1933) ...................................17

Talcott J. Franklin & Thomas F. Nealon III, *Mortgage and Asset Backed Securities
Litigation Handbook* Appendix A (2011) ...........................................16

*In re Washington Mutual, Inc. et al.*
Case No. 08-12229 (MFW) (Bankr. D. Del.) .......................................12, 18, 19

The BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK TRUST COMPANY AMERICAS, DEUTSCHE BANK NATIONAL TRUST COMPANY, U.S. BANK NATIONAL ASSOCIATION, WELLS FARGO BANK, N.A. and LAW DEBENTURE TRUST COMPANY OF NEW YORK[1] solely in their respective capacities as trustees or indenture trustees (collectively, the "RMBS Trustees") for certain residential mortgage-backed securitization trusts (the "RMBS Trusts"), hereby submit this objection (the "Objection")[2] to the *Motion of AIG Asset Management (U.S.), LLC, The Allstate Entities, Massachusetts Mutual Life Insurance Company, and The Prudential Entities for an Order under Bankruptcy Rule 3013 (I) Classifying RMBS Fraud Claims in the Same Class as the Securitization Trusts' Claims for Purposes of Any Chapter 11 Plan for the Debtors and (II) Directing That Misrepresentation Claims Cannot Be Placed in a Plan Class That Will Be Subordinated under Bankruptcy Code Section 510(b)* (the "Motion") [Docket No. 2284].  In support of the Objection, the RMBS Trustees respectfully state as follows:

## PRELIMINARY STATEMENT

1.     In the Motion, AIG Asset Management (U.S.), LLC and affiliated entities ("AIG"), Allstate Insurance Company and affiliated entities ("Allstate"), Massachusetts Mutual Life Insurance Company ("Mass Mutual") and Prudential Insurance Company of America and

---

[1]     For certain mortgage-backed securities trusts for which Wells Fargo Bank, N. A. ("Wells Fargo") serves as Trustee, Law Debenture Trust Company of New York ("Law Debenture") was appointed Separate Trustee, pursuant to orders (the "Minnesota Orders") issued by the District Court, Fourth Judicial District, State of Minnesota.  As Separate Trustee, Law Debenture is authorized, among other things, to pursue the claims covered by the RMBS Settlement Agreements.  Each of Wells Fargo and Law Debenture joins in the Objection to the extent of their respective obligations as Trustee or Separate Trustee under the Instrument of Appointment and Acceptance attached to the Minnesota Orders.

[2]     The RMBS Trustees file this Objection solely in their capacity as trustees of the RMBS Trusts and not, in the case of all of the RMBS Trustees other than Law Debenture and Wells Fargo, in any of their capacities as members of the Official Committee of Unsecured Creditors ("Committee").  Law Debenture and Wells Fargo are not members of the Committee.  While all of the RMBS Trustees join in this Objection, counsel for some of the RMBS Trustees may be unable going forward to represent interests adverse to some of the Securities Claimants.  It has been determined, however, that counsel for at least one, if not more, of the RMBS Trustees is able to represent interests adverse to each of the Securities Claimants.

1

affiliated entities ("<u>Prudential</u>" and together with AIG, Allstate and Mass Mutual, collectively, the "<u>Securities Claimants</u>") argue that, for purposes of any chapter 11 plan of reorganization concerning the Debtors, their claims (i) should be classified together with the claims asserted by the RMBS Trustees on behalf of the RMBS Trusts and (ii) cannot be classified in a class of claims subject to section 510(b) of Title 11, United States Code (the "<u>Bankruptcy Code</u>").

2.        Without even reaching the merits of the relief requested in the Motion, the Motion itself is at best premature and improper and should therefore be denied.  There is no law that allows a creditor to object to its classification under a plan that has not yet been filed.  Allowing such an objection would impinge on the Debtors' exclusive right to file a plan under Section 1121 of the Bankruptcy Code and is advisory because there is no plan about which these movants can complain.[3]  Moreover, the Motion is premature in light of the open legal and factual issues that would be predetermined if the Motion were granted.

3.        Even if the Motion were timely, the claims asserted by the Securities Claimants (the "<u>Securities Claims</u>") cannot be classified with the claims of the RMBS Trusts (the "<u>RMBS Trusts' Claims</u>").  Despite going to great lengths in the Motion to allege their claims are for the same losses suffered by the RMBS Trusts based on false statements, the Securities Claimants concede that there are differences among the claims.  *See* Motion at 14 n.11.  Indeed, investors *holding* (the "<u>Certificateholders</u>") the residential mortgage-backed securities (the "<u>RMBS Certificates</u>") at the applicable "record date" for any distributions that are ultimately made under a confirmed plan will be entitled to the benefit of the contractual claims of the RMBS Trusts, while the Securities Claimants and parties like them *who have sold* their certificates possess only the Securities Claims against the Debtors as the issuers, registrants and affiliates of issuers and registrants of the RMBS Certificates.

---

[3]        The Motion also seeks a determination as to the subordination and priority of a claim and is actually required to be made in the form of an adversary proceeding.

2

4.      This distinction demonstrates precisely why the Securities Claims must be separately classified from the RMBS Trusts' Claims and subordinated to avoid a patently inequitable result.  The Securities Claimants sold their claims under the RMBS Certificates, thereby taking a loss upon the sale of their claims.  The purchaser of their claims acquired the right to benefit from the assertion of the RMBS Trusts' Claims.  Although the RMBS Trustees do not, in this Objection, seek to subordinate the Securities Claims,[4] it must be noted that, unless the Securities Claimants' claims are subordinated under section 510(b), they will have effectively circumvented the allocation of risk between the purchaser and seller of these securities.  This is exactly the result Section 510(b) seeks to avoid; because in the absence of subordination, the recovery on the Securities Claims would dilute the recovery of the purchasers of their certificates (through the assertion of the RMBS Trusts' claims) and all other general unsecured creditors.

5.      In any event, the Securities Claims would fall within Section 510(b) because those claims "aris[e] from rescission of a purchase or sale of a security of the debtor… [or] for damages arising from the purchase or sale of such a security."  11 U.S.C. § 510(b).  Namely, those claims arise from the Securities Claimants' purchase of the RMBS Certificates issued by the Debtors or their affiliates.  Securities law makes clear that the Debtors who deposited the securities into the RMBS Trusts and promoted the offering of the RMBS Certificates are issuers of those securities.  All of the other Debtors are their affiliates.

6.      Indeed, despite their attempt to characterize the Motion as an objection to classification under a plan that has not yet been filed and may not be filed in the near future, the Motion is actually a thinly disguised attempt by the Securities Claimants to use classification to gerrymander around their otherwise inevitable treatment under a plan (absent a settlement of this

---

[4]        Subordination of claims must be pursued through an adversary proceeding.  Bankruptcy Rule 7001(8).  As the Securities Claimants have noted, *see* Motion at 10, the Debtors have indicated their intent to seek the subordination of the Securities Claimants.  The RMBS Trustees reserve the right to seek similar relief at the appropriate time.

case with a gift to them) – by classifying their claims with the RMBS Trusts' Claims they avoid being crammed down with no recovery. This is a result the Securities Claimants do not come close to explaining forthrightly in the Motion, and there is simply no basis for such relief.

## FACTUAL BACKGROUND

### A.     The Debtors' RMBS Securitization Business

7.      A fundamental business strategy of the Debtors involved the sale and/or securitization of mortgage loans that they purchased or originated. Whitlinger Aff. ¶ 21. [5] Prior to the collapse of the mortgage industry in 2007, the Debtors originated, sponsored and sold private label securitizations. The Debtors also provided administration services to those securitization trusts and to other private label securitizations sponsored by third parties. *Id.* ¶ 23 & n15.

8.      The Debtors and their affiliates originated hundreds of thousands of mortgage loans. Once originated, the mortgage loans were pooled and transferred first to Debtor entities called "sponsors" and then to other Debtor entities called "depositors," which are special purpose entities that have been specifically formed for these transactions. Upon receiving the mortgage loans, the Debtor-depositors established the RMBS Trusts as the separate and distinct legal entities into which the mortgage loans were deposited and through which the RMBS Certificates were issued to the Certificateholders, with the Debtor-depositors receiving the sale proceeds. The RMBS Certificates evidence an interest in the cash flow generated by the mortgages that are pooled in each respective trust.

---

[5]      The term "Whitlinger Aff." refers to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 6].

**B.    The Securities Claims**

9.    The Securities Claims are based on the Debtors' alleged violations of the federal

securities laws, state blue sky laws, common law fraud and other similar theories for alleged

misrepresentations regarding the underlying mortgage loans pooled into the RMBS Trusts.

10.    Under Section 11 of the Securities Act of 1933 (the "Securities Act"), the

registrant of the securities is subject to strict liability for any material misstatements and

omissions made in a registration statement.  Because each Debtor-depositor is the registrant that

files an S-3 shelf registration statement with the SEC, the depositors, including their officers and

directors, can be liable under Section 11 of the Securities Act.  Section 12 of the Securities Act

imposes liability against individuals that sell securities by means of a prospectus or oral

communication that contains material misstatements and/or omissions.  Similarly, section 10 of

the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated

thereunder prohibits any act or omission resulting in fraud or deceit in connection with the

purchase or sale of any security.  Any of these types of actions could certainly be used to bring

an action against the Debtor-depositors.[6]

11.    In order to sustain an action against the sponsor or mortgage loan originator, the

Securities Claimants rely upon Section 15 of the Securities Act to recover their alleged damages

from any person or entity that "controls" a party that is liable under section 11 or 12 of the

Securities Act or Rule 10b-5.[7]  All such defendants would be jointly and severally liable.

12.    While only Allstate and MassMutual have commenced civil actions against

certain Debtors, each of the Securities Claimants would necessarily have to bring their claims on

the federal securities laws discussed above.  In each case, and as discussed below, the Securities

---

[6]    The underwriters, which are primarily non-debtors, would be liable under sections 11 and 12 of the Securities Act, and the Securities Claimants have asserted claims against them.

[7]    Control is broadly defined to mean every person "who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding…, controls any person liable under section 11 or 12…."  15 U.S.C. § 77o

Claims fit squarely within Bankruptcy Code section 510(b) because they "aris[e] from rescission of a purchase or sale of a security of the debtor…[or] for damages arising from the purchase or sale of such a security."  11 U.S.C. § 510(b).

## C.    The RMBS Trusts' Claims

13.    The RMBS Trustees are trustees of hundreds of the RMBS Trusts, which contain in excess of $100 billion in current principal value of mortgage loans serviced by certain Debtors.  Each RMBS Trust was formed pursuant to either a "Pooling and Servicing Agreement" or pursuant to a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements," which, when combined provide for the administration of the trusts and the underlying assets.  For the convenience of reference herein, the integrated contract governing each RMBS Trust will be referred to herein as a "Governing Agreement," even if the arrangements are physically memorialized in one or more differently styled contracts.  Each Governing Agreement delineates the rights and obligations of the Debtors, the RMBS Trustees, the Certificateholders and, as applicable, other parties in interest to the specific transaction.

14.    The RMBS Trustees have the right to bring several different types of claims on behalf of the RMBS Trusts (generally referred to as the "RMBS Trusts' Claims") against the Debtors under the Governing Agreements, arising from the Debtors' obligations in their capacities as, among other things, originator, seller, sponsor, depositor and similar capacities and as servicer, subservicer, master servicer, administrator, co- administrator and similar capacities. As described in greater detail below, the RMBS Trusts' Claims include claims against Debtors in their capacity as a seller of mortgages, which claims would have existed even if there had been no securitization.  The RMBS Trusts' Claims also include claims against Debtors as servicer of mortgages, which claims generally arose after the initial sale of securities.  Among other claims, the RMBS Trusts' Claims include repurchase claims against the Debtors on account of any

6

defective mortgage loans sold by the Debtors to the RMBS Trusts (the "Repurchase Claims").[8]

15.    Described below are the various RMBS Trusts' Claims.  In each case, the RMBS

Trusts' Claims arise out of the Debtors' breaches of their contractual obligations under the

Governing Agreements and, unlike the Securities Claims, do not arise out of the purchase or sale

of securities.

> First, the RMBS Trusts' Claims arise from the Debtors' obligations
> to notify the RMBS Trustees, and other parties in interest, of the
> existence of material mortgage loan defects, including breaches of
> representations and warranties, upon the Debtors' discovery
> thereof.
>
> Second, the RMBS Trusts have the Repurchase Claims against the
> Debtors with respect to mortgage loans sold by Debtors to the
> RMBS Trusts that breached certain representations and warranties.
> According to the Debtors' estimates, the Repurchase Claims
> "represent tens of billions of dollars in potential contingent claims
> against the Debtors' estates."  *Debtors' Motion Pursuant to Fed. R.*
> *Bankr. P. 9019 for Approval of RMBS Trust Settlement*
> *Agreements* ¶ 1 [Docket No. 320].
>
> Third, the RMBS Trusts have claims relating to the Debtors'
> (principally, Residential Funding LLC's and GMAC Mortgage
> LLC's) breaches of a number of their mortgage loan administration
> obligations as master, primary or subservicers of the RMBS
> Trusts' underlying mortgage loans (the "Loan Servicing Claims").[9]

---

[8]    The Repurchase Claims are the claims that the Motion seeks to classify together with the Securities Claims
for purposes of a chapter 11 plan.

[9]    In some instances, Loan Servicing Claims may include Repurchase Claims, particularly in respect of the
Debtors' obligation to enforce repurchase obligations of loan sellers. In proposing a settlement granting an
allowed claim of $8.7 billion in exchange for all of the above claims, including a release of both
Repurchase Claims and Loan Servicing Claims by certain of the RMBS Trusts, the Debtors have publicly
recognized that such claims are extensive and that they involve complex interactions between the Debtors'
loan origination, sale and servicing activities.  *See, e.g.*, Whitlinger Aff. ¶108, Exhs. 10-A and 10-B.
Similarly, the DOJ/AG Settlement entered into by certain of the Debtors and their affiliates addresses loan
origination and servicing claims on an integrated basis.  *See id.* ¶89. ("The DOJ/AG Settlement generally
resolves potential claims of the government parties arising out of the origination and servicing activities
and foreclosure matters….")  Under the DOJ/AG Settlement, among the unfair, deceptive and unlawful
servicing process claims resolved in the over 40 pages of Servicing Standards consented to by the Debtors
were: making or allowing false and/or improperly executed affidavits and assignments to be filed or
recorded—commonly called robo-signing; charging borrowers excessive or improper fees for default-
related services; imposing force-placed insurance on borrowers who already had adequate insurance
coverage; untimely application of borrowers' payments to their loans; failing to perform proper loan
modification underwriting; making false representations in bankruptcy lift-stay proceedings; filling
bankruptcy proofs of claims without compliance with bankruptcy procedure, rules and orders; filing proofs

> Fourth, the RMBS Trusts have claims against the Debtors for losses, liabilities, costs and expenses of administering the RMBS Trusts, including, but not limited to, costs relating to third-party claims concerning mortgage loans held in trust and the Debtors' loan origination and servicing activities (the "Indemnification Claims"). The Indemnification Claims also encompass the Debtors' failure to enforce mortgage loan sellers' (including the Debtors') obligations to repurchase defective mortgage loans sold to the RMBS Trusts.

16.     As the RMBS Trustees continue to conduct ongoing diligence on the myriad transactions in their portfolios involving the Debtors, they may discover that the RMBS Trusts have additional claims against the Debtors. The nature, scope and amount of all of the foregoing claims may also vary based on the documentation setting forth the obligations with respect to each RMBS Trust. All claims asserted by the RMBS Trusts against the Debtors are on account of contractual obligations relating to pools of mortgages, not securities that would be subject to Bankruptcy Code section 510(b).

## **ARGUMENT**

## I.     **The Motion Should Be Denied Because It Is Premature and Improper**.

17.     Without even reaching the merits of the substantive relief requested in the Motion, the Motion itself is at best premature and improper and should therefore be denied. There is no law that allows a creditor to object to its classification under a plan that has not yet been filed.

18.     To the extent the Securities Claimants base their position on Bankruptcy Rule 3013, it lacks merit. The Securities Claimants seek the creation of a favorable (to them) class of claims under Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which provides as follows:

> For the purpose of the plan and its acceptance, the court may, on motion after hearing on notice as the court may direct, determine

---

of claims seeking payments to which Debtors were not legally entitled; and charging non-legal excess interest to military service members.

classes of creditors and equity security holders pursuant to §§
1122, 1222(b)(1), and 1322(b)(1) of the Code.

Fed. R. Bankr. P. 3013.[10]

19.    Section 1121(b) of the Bankruptcy Code, however, places certain time limitations

on the plan process.  Section 1121(b) provides in relevant part that "only the debtor may file a

plan until after 120 days after the date of the order for relief under this chapter," which time

period may be extended pursuant to section 1121(d).  Thus, a debtor has an exclusive period in

which to file a plan of reorganization.  Because exclusivity has been extended and is continuing

in the present bankruptcy cases,[11] permitting the Securities Claimants to predetermine a portion

of the plan of reorganization at this time would violate the strictures of section 1121(b).

20.    Bankruptcy Rule 3013 cannot be read to provide creditors with authority to write

a portion of a debtor's plan during exclusivity, particularly where, as here, there has been no

motion to terminate the Debtors' exclusive period, pursuant to section 1121(d) of the Bankruptcy

Code.  In short, Rule 3013 cannot be construed to allow the Securities Claimants to contravene

the plain terms of section 1121(b) of the Bankruptcy Code.  *See* 9 COLLIER ON BANKR.

1001.01[1] (16th Rev. ed. 2012) ("In the event of an inconsistency between the statute and the

rules, the statute controls.").

21.    The Securities Claimants' attempt to have the Court mandate classification in a

plan that has not been submitted is, at best, premature and for this reason alone, the Motion

should be denied.  Allowing such a predetermination would impinge on the Debtors' exclusive

---

[10]    The purposeful inclusion of the language "and its acceptance" in Bankruptcy Rule 3013 indicates that, because the acceptance of a plan necessarily implicates voting on such plan, a bankruptcy court should not make a determination as to classification under Bankruptcy Rule 3013 until a plan has been filed detailing the relevant voting classes.

[11]    Following a second exclusivity hearing, the Court entered an order granting an extension of the Debtors' exclusive period to file a plan to February 28, 2013 [Docket No. 2849].

right to file a plan under Section 1121 of the Bankruptcy Code[12] and is advisory because there is

no plan about which the Securities Claimants can complain.[13]

22.    The Securities Claimants rely on *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010

(Bankr. S.D.N.Y. 1993) for the proposition that courts can consider classification issues *before* a

plan has been formulated.  But the facts and circumstances of *In re 500 Fifth Ave. Assocs.* are

distinguishable from the timing and implications of the Motion, as are other cases allowing

courts to predetermine claim classification issues.  *See also In re American Family Enters*, 256

B.R. 377, 401 (Bankr. D. N.J. 2000) ("Bankruptcy Rule 3013 permits the Court to make

determinations on the classification of claims before the Confirmation Hearing."); *In re DRW

Property Co. 82*, 60 B.R. 505, 506 (Bankr. N.D. Tex. 1986) ("Rule 3013 of the Bankruptcy

Rules … authorizes court approval of voter classification prior to the solicitation of voter

acceptances for confirmation of a proposed plan of reorganization.").

23.    In *In re 500 Fifth Ave. Assocs.*, the creditors sought a declaration pursuant to

Bankruptcy Rule 3013 that the debtor had improperly classified certain claims in the plan of

reorganization that the debtor *had already submitted* to the court.  *Id.* at 1013.  As a result, the

bankruptcy court assessed the ripeness of the classification motion pursuant to Bankruptcy Rule

3013, *not* before the reorganization plan was filed, but only prior to the plan confirmation

hearing. *Id.* at 1017 n.7.  Here, the Debtors have not yet filed a chapter 11 plan and yet the

Securities Claimants are seeking to predetermine how their claims will be classified in that plan.

24.    Moreover, the Motion is premature in light of the open legal and factual issues

that would be predetermined if the Motion were granted.  The Motion is not ripe for decision

---

[12]    The RMBS Trustees note that, on February 14, 2013, the Debtors filed the *Debtors' Motion For The Entry
Of An Order Further Extending Their Exclusive Periods To File A Chapter 11 Plan and Solicit
Acceptances Thereto* [Docket No. 2918].  This Objection takes no position on whether the Debtors'
exclusive period to file a chapter 11 plan should be further extended.

[13]    The Motion also seeks a determination as to the subordination and priority of a claim and is actually
required to be made in the form of an adversary proceeding.

because it involves open legal and factual issues that require further discovery and briefing.  The

Court should refrain from predetermining the substantive issues of classification and

subordination until the parties can clearly explain the nature of the Securities Claims.  In the

Motion, the Securities Claimants make contradictory statements about the Securities Claims.  For

example, the Motion states that the Securities Claimants "all hold residential mortgage-backed

securities…that were marketed by the Debtors," Motion at 2, and yet on the next page write that

"a portion of these claims is fixed based on the disposition of RMBS Certificates by certain of

the Investors."  Motion at 3 n.2.  Any ambiguities regarding the Securities Claims need to be

explored and understood before the Court can have any basis to find they are sufficiently similar

to the RMBS Trusts' Claims, which are clear and unambiguous claims for breach of contract.

## II.   The Securities Claims and the RMBS Trusts' Claims Are Distinct and Dissimilar and Should Not Be Classified Together for Purposes of a Plan.

25.      The Securities Claims and the RMBS Trusts' Claims should not be classified

together in the same class under a plan of reorganization.  Section 1122(a) of the Bankruptcy

Code provides, in relevant part, that "a plan may place a claim or an interest in a particular class

only if such claim or interest is substantially similar to the other claims or interests of such

class."  11 U.S.C. § 1122.  The Securities Claims and the RMBS Trusts' Claims are not

"substantially similar" claims.  As discussed above, the RMBS Trusts' Claims are general

unsecured claims that arise out of the Debtors' breaches of their contractual obligations, whereas

the Securities Claims arise out of the purchase or sale of securities of the Debtors and, for

reasons discussed below, may be, as the Debtors have stated, subject to mandatory subordination

under section 510(b) of the Bankruptcy Code.

26.      Bankruptcy courts have held that claims subject to mandatory subordination under

section 510(b) should be classified in a separate class.  *See*, *e.g.*, *In re American Solar King

Corp.*, 90 B.R. 808, 817-819 (Bankr. W.D. Tex. 1988) (holding that claims of parties to

securities litigation with the debtor are properly classified separately from ordinary unsecured claims because "Section 510(b) contemplates disparate treatment of such claims for distribution purposes. Separate classification which acknowledges that difference is not inappropriate under either Section 1122 (classification of claims) or Section 1129(b) (prohibition on unfair discrimination)."); *In re Unbreakable Nation Co.*, 437 B.R. 189, 200-201 (Bankr. E.D. Pa. 2010) ("the Claims belong in a separate class because they may well be subordinated pursuant to section 510(b) of the Code…. The Objectors' Claims… appear to fall within the scope of claims which would be subordinated pursuant to 11 U.S.C. § 510(b). As such, there is a reasonable basis for the Plan's separation of the Claims into a distinct class with separate treatment."); *see also* 7-1122 COLLIER ON BANKR. 1122.03[3][d] (16th Rev. ed. 2012) ("In structuring a chapter 11 plan, it may be necessary in a particular case to consider the effect of section 510 concerning subordination of claims…. Section 510(b) makes it clear that a subordinated debenture holder with a right to rescind the purchase of debentures under the securities laws does not have the right to rescind the subordination of his or her claim and thereby rank on a parity with those creditors who are beneficiaries of the subordination.").

27.     This reality was recognized in the Washington Mutual bankruptcy cases cited in the Motion. *See, e.g*, Motion at 16, 20 and 22. Subsequent to the bankruptcy court's decision, the Debtors and Tranquility entered into a stipulation, dated January 27, 2012, which subsequently was approved by the bankruptcy court. Pursuant to the Stipulation, Tranquility received "[o]n account of the claims asserted in the Amended Tranquility Claim relating to alleged violations of the federal Securities Act of 1933, an Allowed Subordinated Claim (as such term is defined in the Seventh Amended Plan) in Class 18." *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Stipulation and Agreement Between the Debtors and Tranquility Master Fund, Ltd.*, Case No. 08-12229 (MFW) (Bankr. D. Del. February 16, 2012) [Docket No. 9698] (the "WaMu Stipulation") at 9. Pursuant to the

chapter 11 plan of reorganization confirmed in the Washington Mutual bankruptcy cases,

Class 18 consisted solely of Allowed Subordinated Claims, defined to include claims

subordinated in accordance with section 510(b). *See Seventh Amended Joint Plan of Affiliated*

*Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code*, Case No. 08-12229

(MFW) (Bankr. D. Del. February 16, 2012) [Docket No. 9697, Exhibit B].

28.    Moreover, the RMBS Trusts' Claims and the Securities Claims are

distinguishable because the former are breach of contract claims while the latter are claims for

fraud and violations of securities laws and regulations.  The RMBS Trusts did not assume the

same risks as did the Securities Claimants.  That such claims are different is evident in the statute

of limitations applicable to such claims: the statute of limitations for fraud is three years while

the statute of limitations for breach of contract is six years.  Because the subordinated claims of

the Securities Claimants are not "substantially similar" claims to the general unsecured

contractual claims of the RMBS Trusts, the Securities Claims should not be placed in the same

class as the RMBS Trusts' Claims for purposes of a chapter 11 plan.

**III.    Although the Issue Is Not before the Court at this Juncture,
the Securities Claims May Be Subordinated under Bankruptcy Code Section 510(b).**

29.    Bankruptcy Code section 510(b) provides:

> For the purpose of distribution under this title, a claim arising from
> rescission of a purchase or sale of a security of the debtor or of an
> affiliate of the debtor, for damages arising from the purchase or
> sale of such a security, or for reimbursement or contribution
> allowed under section 502 on account of such a claim, shall be
> subordinated to all claims or interests that are senior to or equal the
> claim or interest represented by such security, except that if such
> security is common stock, such claim has the same priority as
> common stock.

11 U.S.C. § 510(b).  If the RMBS Certificates underlying the Securities Claims constitute "a

security of the debtor," then, as the Debtors have stated, the Securities Claims are subject to

being subordinated to "all claims or interests that are senior to or equal the claim or interest

represented by such security."  11 U.S.C. § 510(b).

30.    In *In re Washington Mutual, Inc.*, 462 B.R. 137 (Bankr. D. Del. 2011),[14] the Court

found that securities are "*of* the debtor" if issued *by* the debtor.  *Washington Mutual*, 462 B.R. at

147 (emphasis added); *see also In re Geneva Steel Co.*, 281 F.3d 1173, 1177 (10th Cir. 2002)

("[T]he statute subordinates…an actual attempt to rescind a purchase or sale of a security *issued*

*by the debtor* or one of its affiliates") (emphasis added); *In re Rancher Energy Corp.*, 2011

Bankr. LEXIS 2537, at *9 (Bankr. D.Colo. June 30, 2011) (same).  The interpretation of section

510(b) subordinating securities claims based on securities issued by debtors is consistent with

federal securities law and, to the extent that there is ambiguity in the phrase "of the debtor," it is

appropriate for the Court to look to federal securities law for guidance.  *See In re Granite*

*Partners, L.P.*, 208 B.R. 332, 339 (Bankr. S.D.N.Y. 1997) (noting with respect to section 510(b)

that, "[i]n searching for Congress's intent, a court may also look to similar language in unrelated

statutes that apply to similar persons, things or relationships.  The use of similar language

strongly indicates that the two statutes should be interpreted *pari passu*, particularly where they

share the same raison d'etre.") (internal citations omitted).

31.    The Supreme Court has held that the use of similar language in two different

statutes is "a strong indication that the two statutes should be interpreted pari passu," i.e., in the

same manner.  *See Northcross v. Bd. Of Educ.*, 412 U.S. 427, 428 (1973) (per curiam); *see also*

*Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion as to Part III) ("[W]hen

Congress uses the same language in two statutes having similar purposes . . . it is appropriate to

presume that Congress intended that text to have the same meaning in both statutes.").

---

[14]    As discussed in detail below, *Washington Mutual* was misguided in finding that the securities were not
issued by a debtor.  While *Washington Mutual* was incorrectly decided, because the court was not
presented with the applicable securities law on issuers in mortgage backed securities offerings, the result in
that case was reversed upon a motion to amend the opinion and a subsequent favorable settlement
reflecting subordination.  As noted below, even Judge Walrath backed away from her prior decision in light
of the pending motion to amend the opinion.  The Securities Claimants do not reference this subsequent
history in their pleadings.

32.    For all of the RMBS Trusts, the entities that were the "depositors" are Debtors.

Because federal securities laws unambiguously state that the Debtor-depositors of the RMBS

Trusts are the issuers of the RMBS Certificates, the RMBS Certificates are securities of the

debtor.  Specifically, section 2(a)(4) of the Securities Act provides, in pertinent part::

> When used in this title, unless the context otherwise requires—
>
> (4) The term "issuer" means every person who issues or proposes
> to issue any security; except that with respect to . . . collateral-trust
> certificates, or with respect to certificates of interest . . . , **the term
> "issuer" means the person or persons performing the acts and
> assuming the duties of depositor** or manager pursuant to the
> provisions of the trust or other agreement or instrument under
> which such securities are issued . . . .

15 U.S.C. § 77b(a)(4) (emphasis added).

33.    The Exchange Act's definition of "issuer" is identical.  Section 3(a)(8) of the

Exchange Act provides, in pertinent part:

> When used in this title, unless the context otherwise requires—
>
> (8) The term "issuer" means every person who issues or proposes
> to issue any security; except that with respect to . . . collateral-trust
> certificates, or with respect to certificates of interest . . . , **the term
> "issuer" means the person or persons performing the acts and
> assuming the duties of depositor** or manager pursuant to the
> provisions of the trust or other agreement or instrument under
> which such securities are issued . . . .

15 U.S.C. § 78c(a)(8) (emphasis added).

34.    The SEC's rules and recommendations further reinforce that the Debtor-

depositors are the issuers of the RMBS Certificates.  SEC Rule 191, promulgated under the

Securities Act, states:

> Rule 191 -- Definition of "issuer" in Section 2(a)(4) of the Act in
> Relation to Asset-Backed Securities.
>
> The following applies with respect to asset-backed securities under
> the Act. Terms used in this section have the same meaning as in
> Item 1101 of Regulation AB (Rule 229.1101 of this chapter).

> **a. The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the "issuer" for purposes of the asset-backed securities of that issuing entity.**

17 C.F.R. § 230.191 (emphasis added).

35.    SEC Rule 3b-19, promulgated under the Exchange Act, is substantively identical and states:

> Rule 3b-19 -- Definition of "issuer" in Section 3(a)(8) of the Act in Relation to Asset-Backed Securities.  (229.1101 of this chapter).
>
> The following applies with respect to asset-backed securities under the Act. Terms used in this section have the same meaning as in Item 1101 of Regulation AB.
>
> **a. The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the "issuer" for purposes of the asset-backed securities of that issuing entity.**

17 C.F.R. § 240.3b-19 (emphasis added).

36.    The SEC's regulations governing the registration and disclosure of asset-backed securities also assert that the depositor of a securitization trust is the issuer of securities issued by the trust.  Specifically, Item 1101 of Regulation AB states that the "depositor" is the "issuer," and defines the "depositor" as the entity that receives or purchases and transfers or sells the pool of assets to the issuing entity.  *See* Item 1101 of Regulation AB, 17 C.F.R. § 229.1101(e). Conversely, Item 1101 defines the "issuing entity" as "the trust or other entity created at the direction of the sponsor or depositor that owns or holds the pool assets and in whose name the asset-backed securities supported or serviced by the pool assets are issued."  17 C.F.R. § 229.1101(f); *see also* Talcott J. Franklin & Thomas F. Nealon III, *Mortgage and Asset Backed Securities Litigation Handbook* Appendix A (2011) (stating in definition of "Depositor" that "the Depositor is considered the statutory issuer of CMBS").

37.    In determining the identity of the "issuer" of a security under the federal securities laws, the Court "need not look beyond" the definition of "issuer" in the applicable statute. *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767-68 (7th Cir. 1979) (plaintiff did not

have standing to sue under section 16(b) of Exchange Act because he did not own securities of "issuer" as defined by Exchange Act). Thus, here, where both the Securities Act's and the Exchange Act's definition of "issuer" unequivocally states that the depositor is the issuer of securities issued by a securitization trust, the Court need not look beyond those definitions.

38.    The legislative history of the Securities Act illustrates that Congress intended for Courts to consider the depositor the issuer for RMBS Certificates because of the way securitizations are structured and the securitization trustee's limited role in the sale and distribution of those securities. The House Report regarding the Securities Act explains that "although the actual issuer is the trustee, the depositor is the person responsible for the flotation of the issue," so "information relative to the depositor and to the basic securities is what chiefly concerns the investor—information respecting the assets and liabilities of the trust rather than of the trustee." H.R. Rep. No. 85, 73 Cong., 1st Sess., 12 (1933). "For these reasons the duty of furnishing this information is placed upon the actual manager of the trust and not the passive trustee, and this purpose is accomplished by defining 'issuer' as in such instances referring to the depositor or manager." *Id.* This depositor-as-issuer structure was not an accident or anomaly, but rather part of a larger legislative and regulatory scheme, as evidenced by the SEC's simultaneous promulgation of Rule 191 and "an identical rule for purposes of the Exchange Act," which it codified at 17 C.F.R. § 240.3b-19. *Asset-Backed Securities*, 70 Fed. Reg. 1506, 1526 n.155 (Jan. 7, 2005); *see also id.* at 1526 ("We are clarifying that the depositor for the asset- backed securities, acting solely in its capacity as depositor to the issuing entity, is the 'issuer' for purposes of the asset-backed securities of that issuing entity").

39.    The Motion relies on Judge Walrath's decision in the Washington Mutual bankruptcy cases.[15] *See, e.g.*, Motion at 20. But *Washington Mutual* did not address the

---

[15]    *In re Washington Mutual, Inc.*, 462 B.R. at 145-46 (finding that a claim filed by Tranquility Master Fund, Ltd. ("Tranquility") was not subject to mandatory subordination because the trust certificates that Tranquility purchased were not securities of debtors or any debtor-affiliate).

question of who was the "issuer" of the certificates.  None of the parties in that case referenced

the explicit definitional sections cited above from the Securities Act, the Exchange Act, SEC

Rule 191, SEC Rule 3b-19 and SEC Regulation AB.  As a result, when this issues comes before

it, the Court should not consider *Washington Mutual* as having fully considered all the issues at

play.  The only point on which *Washington Mutual* should be informative for the Court is its

finding that securities are "of the debtor" when they are *issued* by the debtor.  *See Washington*

*Mutual*, 462 at 147.[16]

40.     In any event, although not described by the Securities Claimants in the Motion,

there is more to the story of *Washington Mutual*.  On January 3, 2012, after Judge Walrath had

entered her decision, the Official Committee of Unsecured Creditors appointed in the

Washington Mutual bankruptcy cases filed the *Motion Of The Official Committee Of Unsecured*

*Creditors To Alter Or Amend The Court's Opinion And Order Regarding Subordination Of The*

*Claim Of Tranquility Master Fund, Ltd.* [Docket No. 9301] (Bankr. D. Del.) (Case No. 08-

12229) (MFW), asserting that, in light of the bankruptcy court's ruling that "[n]either the

Debtors nor their affiliates are the issuers of the Certificates," and therefore, "subordination

under section 510(b) is not available," *see id.*, the Bankruptcy Court should consider (i) the

definition of "issuer" under both federal and state securities laws, which both provide that the

issuer of asset backed securities is the securities' depositor, and (2) that for each of the securities

purchased by Tranquility, the depositor is an affiliate of the Debtor.  The Washington Mutual

debtors filed a joinder to the motion [Docket No. 9302] (Bankr. D. Del.) (Case No. 08-12229)

(MFW).

---

[16]     *Washington Mutual* is a decision of the United States Bankruptcy Court for District of Delaware and is thus not binding precedent on the Court.  *Feng Chen v. Holder*, 367 Fed. Appx. 237, 238 (2d Cir. 2010) ("[C]ases from other circuits are not binding precedent in this Court."); *United States v. Mang Sun Wong*, 884 F.2d 1537, 1542 (2d Cir. 1989) (indicating that the court is not bound to follow decisions of another circuit); *Commissioner v. Fifth Ave. Coach Lines, Inc.,* 281 F.2d 556, 565 (2d Cir. 1960) ("other Circuits … of course, do not bind us in any event").

41.     Before Judge Walrath could reach a decision on the committee's motion, the

Washington Mutual debtors and Tranquility entered into the WaMu Stipulation.  Pursuant to the

terms of the WaMu Stipulation, the Washington Mutual debtors and Tranquility agreed to

compromise and settle Tranquility's claim, with Tranquility receiving an allowed *subordinated*

claim on account of its claims relating to alleged violations of the federal Securities Act of 1933.

42.     Even Judge Walrath recognized that her decision was not law of the case because

of the committee's pending motion for reconsideration.  Following the entry of the WaMu

Stipulation, another securities claimant argued that the *Washington Mutual* decision on the

Tranquility claim was law of the case when the securities claimant moved to classify its claim as

a general unsecured claim.  At a May 7, 2012 hearing, the parties argued the validity of

*Washington Mutual* in light of the provisions in the securities law.  Judge Walrath ruled that the

claimant improperly filed its securities claim too early based on a prior stipulation with the

debtors and did not rule on subordination.  Regarding her earlier decision, Judge Walrath stated

on the record:

> With respect to the applicability of the Tranquility decision, I don't
> think the MBS plaintiffs can rely on that.  It was not a decision
> with respect to their claim.  The claims are different.  In addition, it
> was not a final decision at all because of the pendency of the
> motion for reconsideration.  I did not get the chance to address that
> motion or make any ruling on those arguments.  So, quite frankly,
> it is not law of the case.  If it were, I would exercise my discretion
> not to apply it to this claim.

Transcript of May 7, 2012 Oral Argument at 125:7-15, *In re Washington Mutual, Inc. et al.*

(Bankr. D. Del.) (Case No. 08-12229) (MFW).

43.     In the Motion and in their proofs of claim, the Securities Claimants take great

pains to establish that the RMBS Certificates are not securities "of" the Debtors, or any

"affiliate" of the Debtors and, thus, they argue are outside the scope of Bankruptcy Code section

510(b).  In doing so, the Securities Claimants state that the RMBS Certificates were issued by the

RMBS Trusts.  *See, e.g.*, Motion at 17; Addendum to Allstate's proof of claim filed on

November 15, 2012 at ¶ 6 ("the Certificates…are not the securities of the Debtors.  The

securities were issued by the non-affiliated, bankruptcy-remote trusts"); *id.* at ¶ 13 ("Because the

RMBS certificates do not represent obligations of the Debtors, the Certificates are 'of' the

Trusts—not 'of' the Debtors.").  As explained above, the federal securities laws belie this

argument.

44.     The federal securities laws, as well as the rules and regulations promulgated by

the Securities and Exchange Commission, plainly and unambiguously construe the depositor,

here Debtors, [17] as the issuers of the RMBS Certificates.  Because the Depositors are Debtors and

affiliates of all of the other Debtors, the Securities Claims are subject to being subordinated to

the general unsecured claims of each Debtor's respective estate.  If subordination of these claims

is ordered, for the reasons mentioned above, the Securities Claims cannot be classified with the

RMBS Trusts' Claims.


*[The remainder of this page is intentionally left blank.]*

---

[17]     For example, Debtors Residential Accredit Loans, Inc., Residential Asset Mortgage Products, Inc.,
Residential Funding Mortgage Securities I, Inc., Residential Funding Mortgage Securities II, Inc. and
Residential Asset Securities Corporation, acted as depositors for the loan pools underlying the certificates
at issue in the Allstate complaint.  *Allstate Ins. Co. v. GMAC Mortg. LLC*, No. 27-CV-11-3480 (D. Minn.
Feb. 15, 2011).

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the RMBS Trustees respectfully request

that the Court deny the Motion.

Dated:  February 19, 2012
      New York, New York

**DECHERT LLP**

By:  _s/Glenn E. Siegel_____
Glenn E. Siegel
Craig Druehl
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and
The Bank of New York Mellon Trust Company,
N.A., as Trustee of Certain Mortgage-Backed
Securities Trusts*

**ALSTON & BIRD LLP**

By:  _s/John C. Weitnauer_____
John C. Weitnauer
Martin G. Bunin
William Hao
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee
of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**

BY:  _s/Dale C. Christensen, Jr._
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of
New York, as Separate Trustee of Certain
Mortgage-Backed Securities Trusts*

**MORGAN, LEWIS & BOCKIUS LLP**

By:  _s/James L. Garrity, Jr._____
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust
Company and Deutsche Bank Trust Company
Americas, as Trustee of Certain Mortgage-
Backed Securities Trusts*

**SEWARD & KISSEL LLP**

By:  _s/Mark D. Kotwick_____
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as
Trustee of Certain Mortgage-Backed Securities
Trusts*