Irena M. Goldstein
Jeffrey Chubak
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for Assured Guaranty*
*Municipal Corp. and Certain*
*of its Affiliates*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **RESIDENTIAL CAPITAL, LLC**, *et al.*, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------ x

**OBJECTION OF ASSURED GUARANTY MUNICIPAL CORP.**
**AND CERTAIN AFFILIATES TO INVESTORS' MOTION FOR ORDER**
**CLASSIFYING INVESTORS' SECURITIES CLAIMS IN SAME CLASS AS**
**SECURITIZATION TRUSTS' CONTRACT CLAIMS AND DIRECTING**
**THAT SUCH SECURITIES CLAIMS CANNOT BE SUBORDINATED**
**PURSUANT TO BANKRUPTCY CODE SECTION 510(b)**

Assured Guaranty Municipal Corp. and certain of its affiliates (together, "Assured") hereby object to the motion of AIG Asset Management (U.S.), LLC, Allstate Insurance Company, Massachusetts Mutual Life Insurance Company, Prudential Insurance Company of America, and certain of their affiliates (together, the "Investors"), filed November 27, 2012 [Docket No. 2284] (the "Motion"), for an order, pursuant to section 1122 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), determining that any plan of reorganization for the above-captioned debtors (the "Debtors") must (i) place the Investors' securities law claims (the "Securities Claims") in the same class as that containing the contract claims (the "Contract Claims") of residential mortgage-backed security ("RMBS") trusts (the "Trusts"), and (ii) not

subordinate the Securities Claims to the Trusts' Contract Claims pursuant to Bankruptcy Code section 510(b). In support of this objection, Assured respectfully represents:

## Preliminary Statement

1. The certificates issued by the Trusts (the "Certificates") are clearly "securities" under the Bankruptcy Code. *See* 11 U.S.C. § 101(49)(A) ("The term 'security' includes [a] note, stock, collateral trust certificate … [and] [any] other claim or interest commonly known as a 'security'"). Nonetheless, the Investors contend that their claims against the Debtors in connection with their purchase of the Certificates "based on violations of federal securities laws and state blue sky laws, common law fraud and other similar theories" (Motion at 2-3) should not be subordinated under Bankruptcy Code section 510(b) because the Trusts are neither Debtors nor "affiliates" of the Debtors. The Investors further assert that because section 510(b) does not subordinate the Securities Claims and such claims otherwise arise out of the same general nucleus of operative facts as the Trusts' Contract Claims, the Securities and Contract Claims are substantially similar and should be placed in the same class. The Investors are wrong on all fronts.

2. As set forth more fully below, under federal and state securities laws and Securities and Exchange Commission ("SEC") rules, the "issuer" in RMBS securitization transactions is the depositor that assigns loans to the Trust, *i.e.*, Debtors Residential Funding Mortgage Securities I, Residential Funding Mortgage Securities II, Residential Asset Securities Corp., Residential Accredit Loans, Inc., and Residential Asset Mortgage Products, Inc. (the "Depositors"). Although the Trusts are considered "issuing entities," they are not "issuers" as a matter of law. Accordingly, Securities Claims arising from the purchase or sale of Certificates must be subordinated because the Certificates are securities "of the debtor" Depositors under

2

section 510(b). To implement this mandatory subordination, the Securities Claims and Contract Claims must be placed in separate classes.

**Objection**

I. **The Debtor Depositors are the Certificate Issuers under Federal and State Securities Laws and Regulations**

3. The Investors argue that the Certificates, while securities, are not a "security of the debtor or an affiliate of the debtor" under Bankruptcy Code section 510(b) because the Certificates were issued by the Trusts, and the Trusts are neither Debtors nor affiliates of the Debtors under Bankruptcy Code section 101(2). While Bankruptcy Code section 101(49) defines "security," it does not provide guidance as to when a security is "of the debtor." As a result, to determine whether the Certificates (which are clearly securities under Bankruptcy Code section 101(49)) are securities "of the debtor," this Court should look to applicable securities law. *See Alfa, S.A.B. de C.V. v. Enron Creditors Recovery Corp. (In re Enron Creditors Recovery Corp.)*, 422 B.R. 423, 437 (S.D.N.Y. 2009), *aff'd*, 651 F.3d 329 (2d Cir. 2011) ("The securities laws, and their interpretations, are thus a natural and logical place to turn for definitions of terms within the Bankruptcy Code that are otherwise undefined."); *Picard v. Flinn Invs., LLC*, 463 B.R. 280, 285-86 (S.D.N.Y. 2011) (interpreting "in connection with" in Bankruptcy Code section 546(e) by reference to securities laws).

4. Under securities law, although the Trusts are considered "issuing entities," the Depositors are the "issuers" as a matter of law. In this regard, section 2(a)(4) of the Securities Act of 1933 (as amended, the "Securities Act") provides as follows:

> When used in this title, unless the context otherwise requires –
>
> (4) The term "issuer" means every person who issues or proposes to issue any security; except that **with respect to … collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a**

3

> **board of directors … the term "issuer" means the person or persons performing the acts and assuming the duties of depositor** or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued.

15 U.S.C. § 77b(2)(a)(4) (emphasis added).[1]

5.      The Securities Exchange Act of 1934 (as amended, the "Exchange Act") includes a substantially similar definition. Specifically, section 3(a)(8) of the Exchange Act provides as follows:

> When used in this title, unless the context otherwise requires –
>
> (8) The term "issuer" means any person who issues or proposes to issue any security; except that **with respect to … collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors … the term "issuer" means the person or persons performing the acts and assuming the duties of depositor** or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued.

15 U.S.C. § 78c(3)(a)(8) (emphasis added).

6.      The applicable federal regulation promulgated under the Securities Act, SEC Rule 191, also defines the issuer as the depositor of the RMBS:

> Rule 191 – Definition of "issuer" in Section 2(a)(4) of the Act in Relation to Asset-Backed Securities. The following applies with respect to asset-backed securities under the Act … **The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the "issuer" for the purposes of the asset-backed securities of that issuing entity**.

17 C.F.R. § 230.191 (emphasis added).

---

[1] The Certificates are collateral-trust certificates under the Securities Act. *See*, *e.g.*, Joseph C. Long, What is a Security? Miscellaneous Securities, 12 Blue Sky Law § 2:90 n.28 (Nov. 2012) (Certificates representing fractional interests in mortgage pools and issued by a trust "come within another part of the definition of a security, a collateral trust certificate").

7.      The corresponding regulation promulgated under the Exchange Act, SEC Rule 3b-19, is substantially similar:

> Rule 3b-19 – Definition of "issuer" in Section 3(a)(8) of the Act in Relation to Asset-Backed Securities. The following applies with respect to asset-backed securities under the Act … **The depositor for the asset-backed securities acting solely in its capacity as depositor to the issuing entity is the "issuer" for the purposes of the asset-backed securities of that issuing entity**.

17 C.F.R. § 240.3b-19 (emphasis added).

8.      In addition, almost every state's blue sky law defines the term "issuer," with respect to collateral trust certificates or certificates of interest or shares in an unincorporated investment trust not having a board of directors, as the person performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which the security is issued.[2]

9.      Thus, the statutes and regulations regarding asset-backed securities clearly distinguish between an "issuer" and an "issuing entity." The "issuer" is the "depositor," with the latter term defined as "the depositor who receives or purchases and transfer or sells the pool assets to the issuing entity." *See* Item 1101 of Regulation AB, 17 C.F.R. § 229.1101(e). In contrast, the "issuing entity" means "the trust or other entity created at the direction of the sponsor or depositor that owns or holds the pool assets and in whose name the asset-backed

---

[2] *See* Uniform Securities Act § 101(8)(i) ("The 'issuer' of a collateral trust certificate … or share in an investment [trust] without a board of directors or persons performing similar functions, is the person performing the acts and assuming the duties of depositor or manager pursuant to the trust or other agreement or instrument under which the security is issued"). Approximately 40 states use the Uniform Securities Act as the basis for their blue sky laws. *See, e.g.*, Ariz. Rev. Stat. § 44-1801(13)(a) (adopting a substantially identical definition for the term "issuer"); Cal. Corp. Code § 25010(a) (same); Conn. Gen. Stat. § 36b-3(13)(A) (same); 815 Ill. Comp. Stat. 5/2.2 (same); Iowa Code § 502.102(13)(a) (same); Ky. Rev. Stat. § 292.310(13) (same); La. Rev. Stat. § 51:702(8) (same); Mass. Gen. Laws ch. 110A § 401(f) (same); Miss. Code § 75-71-105(i) (same); Mont. Code § 30-10-103(13) (same); Neb. Rev. Stat. § 8-1101(9) (same); Nev. Rev. Stat. § 90.255(1) (same); N.J. Stat. § 49:3-49(h) (same); N.C. Gen. Stat. § 78A-2(5)(a) (same); N.D. Cent. Code § 10-04-02(12)(a) (same); Or. Rev. Stat. § 59.015(9) (same); 70 Pa. Cons. Stat. § 1-102(l) (same); W. Va. Code § 32-4-401(i) (same); Wash. Rev. Code § 21.20.005(10) (same); Wyo. Stat. § 17-4-113(vi) (same).

securities supported or serviced by the pool assets are issued," *i.e.*, the Trusts. *See* 17 C.F.R. § 229.1101(f).

10. This structure is explained in the legislative history to section 2(a)(4) of the Securities Act:

> Although the actual issuer is the trustee, the depositor is the person responsible for the flotation of the issue. Consequently, information relative to the depositor and to the basic securities is what chiefly concerns the investor – information respecting the assets and liabilities of the trust rather than of the trustee. For these reasons the duty of furnishing this information is placed upon the actual manager of the trust and not the passive trustee, and this purpose is accomplished by defining "issuer" as in such instances referring to the depositor or manager."

H.R. Rep. No. 85, 73d Cong., 1st Sess. 12 (1933).

11. The Investors ignore applicable securities law and instead focus on the representations in the relevant offering materials that the Certificates "represent interests only in the trust, as the issuing entity, and do not represent interests in or obligations of … the depositor." The Investors argue this statement "makes explicit" that the "Certificates are not securities of the Debtors." Motion at 18. This argument, however, is undermined by the fact that the Depositor can be an "issuer" and the Trust can simultaneously be the "issuing entity" under federal and state securities laws and regulations.

12. Moreover, the prospectus supplement (the "<u>Supplement</u>") relied upon by the Investors actually makes clear that the Debtor Depositors are the "issuers" for securities law purposes. In this regard, the Supplement, attached as Exhibit B to the Declaration of Eric D. Winston filed in support of the Motion [Docket No. 2285] provides that:

- The Depositors established the Trusts to issue the Certificates (Supplement, S-9).

- The Depositors filed the registration statement with the SEC and "[t]he [D]epositor and each issuing entity are also subject to some of the information

6

requirements of the" Exchange Act (Supplement, S-105 (Additional Information section)).

- "The net proceeds from the sale of the offered [C]ertificates to the underwriters will be paid to the [D]epositor. The [D]epositor will use the proceeds to purchase the mortgagee loans or for general corporate purposes" (Supplement, S-101 (Use of Proceeds section)).

- The Depositor controlled how the Certificates were offered (Supplement, S-104-105).

13. There is no question, therefore, that the Depositor Debtors were the "issuers" of the Certificates and the Trusts were mere "issuing entities" under federal and state securities laws and regulations.

14. The Investors also rely heavily on *In re Washington Mutual*, 462 B.R. 137, 145-46 (Bankr. D. Del. 2011), where Judge Walrath held a nondebtor trust's certificates were not considered securities "of the debtor" for the purpose of section 510(b). *See* Motion at 20. The Investors' reliance on the *Washington Mutual* decision is misplaced, however, because the matter was not properly presented to the court. The debtors and others in *Washington Mutual* seeking subordination of a claim arising from the purchase of RMBS certificates had argued that the securities "need not be 'issued by' the debtor or affiliate but need only be securities 'of' the debtor or 'of' an affiliate of the debtor." 462 B.R. at 146. The Court disagreed and held that the claim should not be subordinated because "[n]either the Debtors nor their affiliates are the issuers of the Certificates." *Id*. at 147.

15. After the decision was entered, the creditors' committee filed a motion for an order, pursuant to Bankruptcy Rule 9023, altering and amending the decision on the grounds that "none of the parties clearly and concisely referenced for the Court the difference" between an "issuer" and "issuing entity" under federal and state securities laws and regulations, and that correction of the court's "clear error of law" is necessary to prevent manifest injustice to

unsecured creditors. *See* Motion of the Official Committee of Unsecured Creditors to Alter or Amend the Court's Opinion and Order Regarding Subordination of the Claim of Tranquility Master Fund, Ltd., *In re Washington Mutual, Inc.*, No. 08-12229 (Bankr. D. Del. Jan. 3, 2012) [Docket No. 9301].[3]

16.    If the matter had been properly briefed and the Court had been advised that WaMu Asset Acceptance Corp., as depositor, was an "issuer" under applicable securities law, the result likely would have been very different in light of the fact that the Court held that (i) the security had to be issued by the debtor or an affiliate of the debtor for a claim arising therefrom to be subordinated under section 510(b), *see Washington Mutual*, 462 B.R. at 145; and (ii) WaMu Asset Acceptance Corp., as depositor, was an affiliate of the debtors, *id.* at 146 n.4.[4] As a result, the *Washington Mutual* decision is not persuasive precedent.

**II.    Because the Depositors are the Certificate Issuers and the Certificates are Securities under the Bankruptcy Code, the Certificates are Securities "of the Debtor" under Section 510(b) and the Securities Claims Must be Subordinated**

17.    Because the Certificates are "securities of the Debtors," a claim seeking damages arising from the purchase of the Certificates must be subordinated under Bankruptcy Code section 510(b). *See*, *e.g.*, *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 388 (Bankr. S.D.N.Y. 2007) (citing Collier on Bankruptcy ¶510.04 (15th ed. Rev. 2006)) ("Section 510(b) provides for … mandatory subordination" of classes of claims specified therein).[5]

---

[3] The creditors' committee's motion was not heard because the matter settled before the hearing. The motion was scheduled to be heard on February 1, 2012 and on January 30, 2012, the Washington Mutual debtors filed a motion for an order approving a stipulation and agreement between such debtors and Tranquility Master Fund, Ltd. resolving the contested matter [Docket No. 9521].

[4] Indeed, the matter was settled in advance of the hearing on the motion for reconsideration.

[5] Notably, the underlying securitized mortgage loans are not securities. *See*, *e.g.*, *Huelbig v. Aurora Loan Servs., LLC*, No. 10-cv-6215, 2011 WL 4348281, at *6 (S.D.N.Y. May 18, 2011) (citing *Reves v. Erns & Young*, 494 U.S. 56, 64-65 (1990)) ("The Supreme Court has determined that the term … 'note' in the statutory definition does not,

8

18. The Investors argue that "where section 510(b) is ambiguous," this Court "should be guided by purposes of subordination as revealed by the law's legislative history." Motion at 23. (citations omitted). The Investors do not identify which particular provision of section 510(b) they find ambiguous. Instead, they cite to two Second Circuit decisions involving efforts by debtors to subordinate claims on the basis that such claims arose from the purchase of equity interests. In those decisions, the Court relied upon legislative history because it found the phrase "arising from" ambiguous. *See CIT Group Inc. v. Tyco International, Inc. (In re CIT Group Inc.)*, 479 Fed. Appx. 393, 395 (2d. Cir. 2012) (debtor's attempt to subordinate claim based upon tax sharing agreement entered into with its former parent to smooth the initial public offering of the debtor's stock was denied because the claim did not arise from the purchase or sale of the debtor's securities); *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006) (claim arising from debtor's failure to issue common stock to a former executive was properly subordinated under Bankruptcy Code section 510(b)).

19. In this narrow context, the Second Circuit examined the relevant legislative history and stated: "Section 510(b) thus represents a Congressional judgment that, as between shareholders and general unsecured creditors, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy." *Med Diversified*, 461 F.3d at 256 (citations omitted).

---

literally, mean any note, but rather, 'must be understood against the backdrop of what Congress was attempting to accomplish' … To determine whether a note qualifies as a security, the 'family resemblance test' applies … Basically, if the note in question bears a 'family resemblance' to notes that have been judicially recognized as not qualifying as securities, then the note is not a security"); *Pollack v. Laidlaw Holdings, Inc.*, No. 90-cv-5788, 1993 WL 17302, at *3 (S.D.N.Y. Jan. 21, 1993) (citing *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2d Cir. 1976)) ("it is well settled that … notes secured by a mortgage on a home … are not securities"); *Pollack v. Laidlaw Holdings, Inc.*, No. 90-cv-5799, 1993 WL 254932, at *3 (S.D.N.Y. 1993) (citing *Banco Espanol de Credito v. Sec. Pacific Nat'l Bank*, 973 F.2d 51, 56 (2d Cir. 1992)) ("the Second Circuit has found that participations in mortgages may be considered securities despite the fact that the underlying instruments are not securities"); *Am. Fletcher Mortg. Co., Inc. v. U.S. Steel Credit Corp.*, 635 F.2d 1247, 1254 (7th Cir. 1980) ("a participation may be a security even though the underlying note is not").

9

20.     The Investors then argue, based upon the above Second Circuit decisions concerning the purchase and sale of equity interests, that subordination of their Securities Claims would not serve the purpose of section 510(b) because "[n]one of the Investors purchased or sold stock of any of the Debtors or had any expectation of taking on the risks or returns of a shareholder of a Debtor." Motion at 23. This leap in logic is undermined by the plain and unambiguous language of section 510(b) which clearly applies to "all securities of the debtor" and not just equity interests.[6]

21.     Indeed, Bankruptcy Code section 510(b) differentiates between a security that is an equity interest in a debtor versus one that gives rise to a claim against a debtor, and even differentiates further between types of equity interests, all of which would be unnecessary if section 510(b) only applied to equity interests. *See* 11 U.S.C. § 510(b) (Claims "shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock"); *see also In re Mid-Am. Waste Sys., Inc.*, 288 B.R. 816, 825 (D. Del. 1999) (citations omitted) ("by its plain terms § 510(b) is intended to apply to both debtholders and equityholders … The legislative history of the original § 510(b) [also] reflects Congress's intent to include security holders' claims generally – both debtholder as well as shareholder claims").

22.     Even though it is crystal clear that section 510(b) applies to all securities (not just equity securities), and it is not necessary to look to legislative history,[7] it should be noted that

---

[6] As set forth above, Bankruptcy Code section 101(49) applies to debt and equity instruments alike and even any "other claim or interest commonly known as 'security.'" 11 U.S.C. § 101(49)(A)(xiv).

[7] It is black letter law that where a statute is plain on its face, resort to legislative history is unnecessary and inappropriate. *See*, *e.g.*, *Enron*, 651 F.3d at 339 (quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534)) (declining to consider legislative history in evaluating the scope of the safe harbor set forth in Bankruptcy Code section 546(e) on the grounds that the statute is clear on its face and "[i]t is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms"); *Picard v. Katz*, 462 B.R. 447, 452 (S.D.N.Y. 2011) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)) ("resort to legislative history is inappropriate where, as here, the language of the

10

subordinating the Investors' Securities Claims is wholly consistent with section 510(b)'s policy rationale.  The Investors make much of the fact that they are not trying to bootstrap their way up the Debtors' capital structure because their returns as Certificateholders are capped.  However, the policy goals behind section 510(b) are not limited to preventing bootstrapping.  Per the statute's legislative history, the statute's main policy rationale was to ensure that securities purchasers, and not the general creditor body, bear the risks of securities fraud.  *See* H.R. Rep. No. 95-595, 95th Cong. 1st Sess. at 195-96 (1977) (citing John J. Slain and Homer Kripke, The Interface Between Securities Regulation and Bankruptcy – Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors, 48 N.Y.U. L. Rev. 261 (1973)) (emphasis added) ("[Slain and Kriple] conclude that allocation of assets in a bankruptcy case is a zero-sum situation, and rules of allocation in bankruptcy should be predicated on allocation of risk.  The two risks to be considered are the risk of insolvency of the debtor and the risk of an unlawful issuance of securities.  While both security holders and general creditors assume the risk of insolvency … **the risk of illegality in securities issuances should be borne by those investing in securities and not by general creditors**").  Accordingly, the main policy reason behind section 510(b) weighs in favor of subordinating the Investors' Securities Claims to the Trusts' and Assured's contractual claims.

### III. To Implement the Mandatory Subordination of the Investors' Securities Claims, Such Claims Must be Classified Separately from the Trusts' Contract Claims.

23. The Investors argue that because their Securities Claims and the Trusts' Contract Claims are both based on false statements about certain loans, "[t]hey are thus similar in the eyes of the Bankruptcy Code." Motion at 14.  According to the Investors, there are no meaningful differences between the Securities and Contract Claims as a legal matter and the Debtors are

---

statute is plain and controlling on its face. 'Courts must presume that a legislature says in a statute what it means and means in a statute what it says there'").

simply attempting to manufacture an impaired but accepting class in order to confirm their plan. *Id.* at 15-16.

24.     There are two problems with this argument, however.  First, the Securities and Contract Claims are not similar.  Claims are similar if they have "substantially similar rights to the debtor's assets." *In re Quigley Co.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992)); *accord In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986).  As a result of the mandatory subordination of the Securities Claims under section 510(b), however, the Investors and Trusts do not have similar rights to the Debtors' assets.

25.     Second, even if the Securities and Contract Claims were somehow considered similar, they would need to be separately classified to implement the subordination required by section 510(b).  Implementing such subordination is a more than adequate basis for separately classifying the Securities and Contract Claims.  *See, e.g.*, *WHBA Real Estate Ltd. v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 198 F.3d 234 (2d Cir. 1999) (citing *Boston Post Road L.P. v. FDIC (In re Boston Post Road L.P.)*, 21 F.3d 477, 483 (2d Cir. 1994)) (permitting separate classification of similar claims where a legitimate reason exists for such separate classification); *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) (same).

WHEREFORE, because the Investors' Securities Claims must be subordinated pursuant to Bankruptcy Code section 510(b), this Court should deny the Motion and grant such further relief as the Court deems just and proper.

Dated: February 19, 2013
      New York, New York

Respectfully submitted,

/s/ Irena M. Goldstein
Irena M. Goldstein
Jeffrey Chubak
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for Assured Guaranty Municipal Corp. and Certain of its Affiliate*