# Exhibit 4

MORRISON | FOERSTER

755 PAGE MILL ROAD
PALO ALTO
CALIFORNIA  94304-1018

TELEPHONE: 650.813.5600
FACSIMILE: 650.494.0792

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG

November 4, 2012

Writer's Direct Contact
650.813.5866
DRains@mofo.com

The Honorable Martin Glenn
United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Re:    In re Residential Capital, LLC, et al. (Case No. 12-12020 MG)

Dear Judge Glenn:

The Debtors write in response to the letter sent to the Court late Friday by counsel for the
Official Committee of Unsecured Creditors (the "Committee"). That letter asks the Court to
resolve what the Committee calls "two significant discovery disputes."

The Committee's description of the first dispute — concerning the Debtors' "claw back"
request — is seriously misleading in several ways. For example, the Committee says the
dispute concerns 367 documents. But, as the Committee knows, AFI has already agreed to
shorten the list of documents subject to the request. The current request is for the return of
109 documents. Moreover, the Committee informed us on Friday morning that it does not
dispute the validity of the privilege assertion with respect to 103 documents. By our count,
the claw back dispute now involves only six documents, not 367 documents.

This accords with the view taken consistently by the Debtors. From the beginning, while
AFI demanded the return of all documents, and the Committee refused to return any
documents, the Debtors have occupied a middle position. The Debtors understand the
attorney-client privilege, and common interest doctrine, to protect confidential
communications concerning the Debtors' and AFI's litigation against third parties. That is
because, as against third-parties, the Debtors and AFI share common interests, as co-
defendants, in assessing their risks and litigation exposure, and in coordinating their common
defense strategy. By contrast, the Debtors believe that communications between the Debtors
and AFI concerning the negotiation of the RMBS settlement are not protected by the
attorney-client privilege or common interest doctrine. That is because, in this settlement
context, the Debtors and AFI did not share common legal interests.

For this reason, the Debtors informed the Committee and AFI earlier this week that, with
regard to the 367 documents identified in the original claw back letter, the Debtors believed

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Two

that 109 documents were properly subject to privilege, while the remaining 258 documents
were not covered by privilege. (The Debtors' assessment of the 367 documents is attached
as Exhibit A.)

In subsequent conversations, the Debtors were informed that both the Committee and AFI
largely agree with the Debtors' position. AFI sent a letter containing a dramatically
shortened claw back list, and the documents dropped from the original list are the same
documents identified by the Debtors as not subject to privilege. AFI, in essence, adopted the
position taken by the Debtors. For its part, the Committee said, on a telephone call on
Friday, that it is prepared to drop its efforts to pierce the privilege with respect to 103 of the
109 documents identified by the Debtors as properly subject to privilege.

None of these facts appears in the Committee's letter. The Committee instead has asked for
production of 367 documents — as though none of the communications described above ever
happened.

The Committee's letter also misstates the nature of its obligations under its confidentiality
agreement with the Debtors. (The confidentiality agreement is attached as Exhibit B.) It
argues there is no "legitimate" basis for the claw back request, as though it could claim, for
itself, the right to determine whether a claw back request is legitimate or not. But the
confidentiality agreement does not grant the Committee that power. The Committee's
obligation to return or destroy documents that are the subject of a claw back request is
absolute and automatic. The Committee's only proper course of action is to comply with the
claw back request and then seek production of the withheld documents by motion.

Accordingly, the Committee's letter is improper under the express terms of the
confidentiality agreement, and its refusal to return or destroy documents upon request is a
breach of the agreement. The letter also compounds the breach, because, in it, the
Committee quotes from several privileged documents. The Committee also posted the
documents on line and shared them with third parties. This conduct directly violates the
procedures set out in the confidentiality agreement for the use and protection of privileged
documents.

The Committee's description of the second dispute — concerning documents listed on the
Debtors' privilege log — is also seriously misleading. For example, the Committee's letter
asserts that its "challenges to these assertions of privilege" have been the subject of "multiple
meet-and-confer sessions among the parties." But the Committee has never mentioned any
of these documents in any meet-and-confer session with the Debtors and it never has stated
any basis for challenging the assertion of privilege.

At the last chambers conference with the Court on discovery matters, the Committee
challenged the adequacy of the Debtors' privilege log, arguing that the "description" entries

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Three

on the log were too vague.  The Court suggested a meeting at which the Committee's lawyers could go through the log with Debtors' counsel and seek additional descriptions of the withheld documents.  The meeting was held the following day.  Lawyers for the Committee spent five hours with Debtors' counsel asking for additional descriptions of approximately 400 documents.  The Debtors provided additional information about every document, and also provided a supplemental privilege log recording the additional information.  The Committee acknowledged, at the time, that the Debtors had provided adequate answers to every question it posed.

At no point did the Committee say it believed the assertion of privilege was incorrect as to any document.  Nor did the Committee say it had not received enough information about the documents.  To the contrary — the Debtors offered promptly to respond to any additional information requests, but the Committee never asked for more information.

Now, weeks later, the Committee has demanded production of hundreds of documents without ever previously identifying any basis for challenging the Debtors' assertion of privilege.

For these reasons, addressed more fully below, the Debtors respectfully request that:

- The Committee be compelled immediately to comply with its obligations under the confidentiality agreement by returning or destroying the documents subject to the claw back request;

- The Committee be compelled immediately to withdraw its disclosures of privileged documents and take all steps necessary to protect those documents from further disclosure;

- The Committee be compelled to comply with its meet-and-confer obligations regarding its new request for production of privileged documents, and withdraw its current request for the production of privileged documents until it has complied with its meet-and-confer obligations.

## I.    The Committee Has Breached Its Confidentiality Agreement By Refusing to Honor the Claw Back Request.

On June 18, 2012, the Debtors entered into a Confidentiality Agreement with the Committee.  Many other parties have similar agreements with the Debtors.

On October 17, 2012, the Debtors sent a claw back letter to the Committee.  The letter advised these parties that the Debtors had received a letter from AFI claiming that a number of documents previously produced by the Debtors had been inadvertently or mistakenly

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Four

produced. The Debtors' claw back letter enclosed the letter received from AFI and also enclosed a list of documents that were the subject of the claw back request. The Debtors' claw back letter, as required by the Confidentiality Agreement, informed the Committee and others that the production of the documents resulted from "errors" and was inadvertent or mistaken.

The Debtors' "claw back" request triggered an automatic obligation on the part of the Committee to "use all commercially reasonable efforts to return or destroy the" clawed back documents. (Exh. B, ¶ 22.) Paragraph 22 gives a party that has "inadvertently or mistakenly" produced privileged documents the right to make a "claw back" request. And it requires the immediate return or destruction of any document as to which a written claw back request has been made. It provides:

> If a Disclosing Party <u>inadvertently or mistakenly</u> produces information that is protected or prohibited from disclosure, <u>upon written request</u> by the Disclosing Party after the discovery of such inadvertent or mistaken production, the Receiving Party <u>shall use all commercially reasonable efforts to return or destroy the information</u> for which a <u>claim of inadvertent production</u> is made and all copies of it, including any work product containing, identifying, or referencing such information, within five (5) business days of such request, and the Receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of the information. <u>If the Receiving Party returns such information, it may then move the Court for an order compelling production</u> of the information, but that motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information.

(*Id*, ¶ 22.) (emphasis supplied.)

Under Paragraph 22, the Committee had an immediate and automatic obligation to "use all commercially reasonable efforts to return or destroy the information for which a claim of inadvertent production is made." All that is required to trigger the obligation to return or destroy documents, under paragraph 22, is a "written request" asserting a "claim of inadvertent production." Nothing else is required, and the Committee has no discretion in the matter.

Note that the Committee has no power, under this provision, to challenge the merits of the "written request" containing a "claim of inadvertent production." It is not empowered to argue that the claim of inadvertent production was, as its letter argues, not "legitimate," or

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Five

that the production was not truly "inadvertent." Its obligation to "return or destroy"
documents arises as soon as it receives a "written request" containing a "claim of inadvertent
production."

Moreover, paragraph 22 precludes the Committee from moving to compel production of the
clawed back documents until after it "returns such information." In other words, compliance
with a claw back request is an essential contractual precondition to the right to "move the
Court for an order compelling production" of the documents.

The Committee's only proper and acceptable course of conduct, under the Confidentiality
Agreement, is to return or destroy the requested documents and then, after it has done so,
make a motion to compel production of the requested documents. But that is not what the
Committee did. The Committee has, instead, taken it upon itself to adjudicate the merits of
the claw back request and, on that basis, to conclude it no longer needs to meet its
contractual commitments. That is not what the confidentiality agreement requires.

The Debtors therefore request that the Committee be compelled immediately to comply with
its obligations under the confidentiality agreement by returning or destroying the documents
subject to the claw back request.

## II.     The Debtors Did Not Waive Any Privilege With Respect to the Documents Sought By the Claw Back Request.

The Committee seeks to justify its conduct by asserting that the Debtors have "clearly
waived" the protections of the attorney-client privilege, work product doctrine, and common
interest doctrine with respect to the documents that are the subject of the claw back request.
This argument is wrong for four reasons.

*First*, the Committee's waiver argument is not an excuse for breaching the confidentiality
agreement. As noted above, the Committee's contractual obligation is to return or destroy
the clawed back documents once a "written request" for their return has been made. Nothing
in the agreement allows the Committee to excuse its breach by raising a waiver argument.

*Second*, the Committee offers no evidence of any waiver and there is none. A waiver occurs
when a party knowingly relinquishes its rights, and evidence of such a waiver must be clear
and explicit. *See United States v. Defonte,* 441 F.3d 92, 94 (2d Cir. 2006) (inmate had not
"knowingly waive[d]" attorney-client privilege where she had not consented to the removal
of privileged documents from her cell); *cf.* Fed. R. Evid. 502(a)(1) ("When [a] disclosure . . .
waives the attorney-client privilege or work product protection, the waiver extents to an
undisclosed communication or information . . . only if . . . the waiver is intentional"). The
Debtors have never said, in words or in substance, that they waive the protections of the

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Six

attorney-client privilege, work product doctrine, or common interest doctrine with respect to the requested documents.

The Committee claims that an email from Debtors' counsel constitutes a waiver, but even a quick review of the email shows it is no such thing. The email expressly states that the Debtors would produce "the settlement documents you requested with the exception only of those documents protected by attorney/client privilege and work product." (Exhibit C.) The email then goes on to say that the Debtors are not "withholding settlement negotiation documents on the basis of a common interest privilege." These are true statements, and they do not constitute a waiver. They are, in fact, a clear summary of the position the Debtors have taken from the beginning — communications between AFI and the Debtors regarding the negotiation of the RMBS settlement are not covered by privilege, because AFI and the Debtors did not share a common legal interest in that context. But the Committee's letter doesn't limit the Committee's request to just settlement negotiations — the Committee seeks all communications between AFI and the Debtors, even on topics as to which they share a common legal interest. The email cited by the Committee does not address these privileged documents, and does not waive any privilege applicable to them.

*Third*, the Committee argues that the mere fact of production constitutes a waiver. But the confidentiality agreement clearly states that the fact of production is not evidence of any waiver. Indeed, the Committee is barred from even making this argument: any motion to compel production of clawed back documents "shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information." (Exh. B, ¶ 22.)

Moreover, the Committee's claim that the production of documents could not have been "inadvertent" tellingly omits the other term of the confidentiality agreement. The agreement permits the Debtors to claw back documents that have been "inadvertently or mistakenly" produced. The Debtors' and AFI's position is that the Debtors "mistakenly" produced documents as to which AFI claims a common interest privilege. The Debtors are contractually obligated, under a joint defense agreement with AFI, not to disclose documents as to which AFI asserts a common interest privilege, even if the Debtors disagree with AFI's privilege position. It was a mistake for the Debtors to produce the documents without first giving AFI the opportunity to assert and litigate its privilege position.

And *fourth*, the Committee's waiver argument ignores AFI's rights. The Debtors had no ability to waive the protection of the common interest privilege with regard to documents as to which Ally also asserts privilege. One party that shares a common interest privilege cannot waive it without the consent of all parties that share the privilege. *See, e.g.*, *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 264 (Bankr. S.D.N.Y. 2005) ("Once established, the [common interest] privilege cannot be waived without the consent of all of the parties that share it."); In re *Quigley Co.*, 2009 Bankr. LEXIS 1352 (Bankr. S.D.N.Y. Apr. 24, 2009)

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Seven

(same); *In re Teleglobe Communications Corp.*, 493 F.3d 345, 363 (3d Cir. 2007)
("[W]aiving the joint-client privilege requires consent of all joint clients.")

The Committee's argument that the Debtors somehow waived the protections of the attorney-client privilege, work product doctrine, and/or common interest doctrine, is without any basis and is contrary to law. The Court should therefore reject the Committee's waiver argument.

### III. The Committee Failed to Comply With Its Meet-and-Confer Obligations Regarding the Documents Referenced on Pages 6 through 8 of Its Letter.

In what has become a disturbing trend, the Committee has dropped another "Friday Night Surprise" on the Debtors by raising entirely new discovery disputes on the eve of a scheduled hearing. The Committee has done the same thing in advance of several previous hearings.

This time, the Committee has requested the production of several hundred privileged documents without ever holding any meet-and-confer session about the documents and without ever informing the Debtors of the basis for its challenge to the assertion of privilege. The Committee's letter claims, falsely, that its "challenges to these assertions of privilege" have been the subject of "multiple meet-and-confer sessions among the parties." But the Committee has never mentioned any of these documents in any meet-and-confer session with the Debtors. Nor has the Committee ever previously asserted any ground for concluding the assertion of privilege was improper as to any of the documents.

This is "shoot, ready, aim" litigation. The Committee seeks to force *in camera* review of documents without ever permitting the Debtors to defend their assertions of privilege. The Committee should be compelled to comply with its meet-and-confer obligations regarding its new request for production of privileged documents, and it should be ordered to withdraw its current request for the production of privileged documents until it has complied with its meet-and-confer obligations.

### IV. The Committee Has Failed to Overcome the Assertion of Privilege With Respect to the Documents Referenced on Pages 6 Though 8 of Its Letter.

The Committee argues, without any motion or opportunity for briefing, that the Debtors' privileged communications should be produced "under the sword-shield doctrine and/or the fiduciary exception to the attorney-client privilege." Neither doctrine applies here.[1]

---

[1] The Committee also raises for the first time an argument that the Debtors must produce privilege communications with attorney Jeffrey A. Lipps because he will testify as an expert witness. It relies only on *Herrick Co., Inc. v. Vetta Sports, Inc.,* No. 94 Civ. 0905 (RPP), 1998 U.S. Dist. LEXIS 14544, 1998 WL 637468 (S.D.N.Y. Sept. 17, 1998). *Herrick*

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Eight

The Debtors' motion for approval of the RMBS settlement does not put attorney advice regarding those agreements at issue or waive the privilege. As explained in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011):

> It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues. The Court itself can evaluate the likelihood of the parties' prevailing in that litigation to determine whether the settlement is reasonable.

*See also Deutsche Bank Trust Co. v. Tri-Links Investment Trust*, 837 N.Y.S. 2d 15, 21-25 (App. Div. 2007) (assertion of reasonableness of amounts expended to defend and settle action did not waive attorney-client privilege).

Nor will presentation of evidence that the Debtors sought the advice of counsel waive the privilege. A party does not waive the privilege merely by presenting evidence that it sought the advice of counsel, but only by affirmatively asserting that its actions were reasonable *because* it relied on an opinion of counsel. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, et al.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009). In *Aristocrat*, the plaintiff argued that defendant Bondholders should not be able to state that they sought the advice of counsel regarding matters the reasonableness of which was at issue without waiving the attorney-client privilege. The court rejected that argument, holding that "merely stating that individual Bondholders sought advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive the privilege." *Id.* at *45.

Nor, as the Committee suggests, did the Debtors waive the privilege by answering "Yes" at a prior hearing to the Court's impromptu question, "Are the debtors' directors relying on advice of counsel supporting their approval of the RMBS settlement?" Courts have regularly rejected waiver claims based on similar statements in the course of litigation that do not represent a formally asserted claim or defense. In *Miteva v. Third Point Management Co., L.L.C.*, 218 F.R.D. 397-98 (S.D.N.Y. 2003) (rejecting waiver claim based on deposition testimony of defendant's principal and sole owner that defendant "intended to rely on that advice of counsel as a defense in this action"); *Deutsche Bank*, 837 N.Y.S. 2d at 25 (rejecting argument that plaintiff waived privilege through deposition testimony of plaintiff's managing

---

was decided before the recent amendments to Federal Rule of Civil Procedure 26(b)(4), which strictly circumscribe discovery of communications with a testifying expert.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Nine

director that he "rel[ied] on the advice of counsel in determining whether or not to approve . . .the settlement of the [underlying] action"). The court noted in *Deutsche Bank* that the plaintiff had not "stated an intention to use the advice of counsel to prove the reasonableness of the [underlying] settlement, and it now explicitly disclaims any such intention." *Id.* at 27. The same is true here.

Nor does the fiduciary exception apply here. The mere existence of a fiduciary relationship is not enough to invoke the exception. The party seeking discovery must also show there is good cause to invade the privilege. *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 424 (S.D.N.Y. 2006) (citing *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir.1970).) Courts in this district have identified four factors to consider in determining whether there is good cause: (1) the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the discovering party's claim; (3) the need of the discovering party for the information; and (4) the nature of the communication itself. *Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 424 (quoting *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 U.S. Dist. LEXIS 18215, at *13 (S.D.N.Y. Dec. 23, 1993)). "The apparent necessity of the information and its availability from other sources is considered the most important factor and is stressed by courts when undertaking the *Garner* analysis." *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 71, at *17 (S.D.N.Y. Jan. 3, 2003) (citations omitted).

The Committee has not even attempted to demonstrate that it satisfies the relevant factors here. Nor could it. The Committee has demonstrated no substantial need for the privileged communications. This is not a case where the Committee needs privileged communications to prove an element of their claim or to rebut an affirmative defense. *See Official Comm. of Asbestos Claimants of G-I Holding*, 342 B.R. at 425. As noted above, assessment of the reasonableness of the settlement agreements can be evaluated without the need for privileged communications. *See In re Washington Mutual*, 424 B.R. at 330 ("It is not necessary for the Debtors to waive the attorney/client privilege by presenting testimony regarding what counsel felt was the likelihood they would win on the claims being settled. . . . It is sufficient to present the Court with legal positions asserted by each side and the facts relevant to those issues.")

Finally, a word about the Committee's descriptions of the documents it seeks. The Committee's letter sets out ten bullet points, each relating to a category of withheld documents. For most of the categories, the Committee states that the documents are "concerning" or "regarding" "the RMBS Settlement." This conclusory statement, applied indiscriminately to eight of the ten categories, is largely false. The withheld documents do not, in the main, concern or relate to the RMBS settlement. Instead, they largely concern unrelated litigation, general issues regarding representation and warranty liability or litigation, or other aspects of the Debtors' bankruptcy.

MORRISON | FOERSTER

The Honorable Martin Glenn
November 4, 2012
Page Ten

The proof of this can be found in the Debtors' privilege logs, as updated after the Debtor's lengthy meeting with counsel for the Committee. The logs describe most of the withheld documents as relating to a variety of topics other than the RMBS settlement negotiations, including PLS litigation generally, SEC filings, settlement negotiations with various regulators, other bankruptcy filings, and the like. The Committee has ignored the Debtors' privilege logs, and ignored the information it obtained in its meeting regarding the logs, in asserting falsely that the requested documents are all "concerning" or "relating" to the RMBS settlement. The Committee's letter thus offers no basis upon which to order the production of privileged documents.

The Committee has not offered any valid argument for lifting the protection of the attorney-client privilege, work product doctrine, or common interest doctrine with respect to the documents identified on pages 6 through 8 of its letter. Its request for production of these documents, without allowing adequate time for briefing, should be rejected.

Respectfully submitted,

Darryl P. Rains

# Exhibit A

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00045465 | RC-9019_00045467 | N | TSAN |
| RC-9019_00045468 | RC-9019_00045470 | N | TSAN |
| RC-9019_00045479 | RC-9019_00045483 | N | TSAN |
| RC-9019_00047222 | RC-9019_00047225 | N | R9019 |
| RC-9019_00047236 | RC-9019_00047236 | Y | GA |
| RC-9019_00047802 | RC-9019_00047802 | N | TSAN |
| RC-9019_00047807 | RC-9019_00047807 | N | GA |
| RC-9019_00047808 | RC-9019_00047808 | N | GA |
| RC-9019_00047809 | RC-9019_00047810 | N | GA |
| RC-9019_00047811 | RC-9019_00047811 | N | GA |
| RC-9019_00047814 | RC-9019_00047814 | N/Y (redact) | TSAN-OC |
| RC-9019_00047815 | RC-9019_00047816 | N/Y (redact) | TSAN-GA |
| RC-9019_00047817 | RC-9019_00047818 | N/Y (redact) | TSAN-GA |
| RC-9019_00047819 | RC-9019_00047821 | N/Y (redact) | TSAN-GA |
| RC-9019_00047823 | RC-9019_00047824 | N/Y (redact) | TSAN-GA |
| RC-9019_00047825 | RC-9019_00047826 | N/Y (redact) | TSAN-GA |
| RC-9019_00047827 | RC-9019_00047829 | N/Y (redact) | TSAN-OC |
| RC-9019_00047842 | RC-9019_00047842 | Y | OC |
| RC-9019_00047856 | RC-9019_00047857 | Y | GA |
| RC-9019_00047906 | RC-9019_00047906 | N | TSAN |
| RC-9019_00047907 | RC-9019_00047907 | N | GA |
| RC-9019_00047917 | RC-9019_00047917 | N | TSAN |
| RC-9019_00047918 | RC-9019_00047918 | N | TSAN |
| RC-9019_00047958 | RC-9019_00047958 | N | TSAN |
| RC-9019_00047959 | RC-9019_00047973 | N | TSAN |
| RC-9019_00047974 | RC-9019_00047974 | N | TSAN |
| RC-9019_00048006 | RC-9019_00048009 | Y | GA |

**Common Interest column:**

N = No; Y = Yes

**Category Column:**

TSAN = Trust Settlement Agreement negotiations;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00048956 | RC-9019_00048957 | N | TSAN |
| RC-9019_00048970 | RC-9019_00048971 | N | TSAN |
| RC-9019_00048972 | RC-9019_00048973 | N | TSAN |
| RC-9019_00048974 | RC-9019_00048975 | N | TSAN |
| RC-9019_00048983 | RC-9019_00048983 | N | TSAN |
| RC-9019_00048984 | RC-9019_00048984 | N | TSAN |
| RC-9019_00048989 | RC-9019_00048989 | Y | GA |
| RC-9019_00049080 | RC-9019_00049080 | N | TSAN |
| RC-9019_00049081 | RC-9019_00049081 | N | TSAN |
| RC-9019_00049082 | RC-9019_00049082 | N | TSAN |
| RC-9019_00049085 | RC-9019_00049085 | Y | GA |
| RC-9019_00049086 | RC-9019_00049087 | Y | OC |
| RC-9019_00049099 | RC-9019_00049099 | Y | GA |
| RC-9019_00049102 | RC-9019_00049103 | Y | OC |
| RC-9019_00049105 | RC-9019_00049105 | N | TSAN |
| RC-9019_00049106 | RC-9019_00049106 | N | TSAN |
| RC-9019_00049143 | RC-9019_00049144 | N | TSAN |
| RC-9019_00049145 | RC-9019_00049145 | N | TSAN |
| RC-9019_00049155 | RC-9019_00049156 | N | TSAN |
| RC-9019_00049157 | RC-9019_00049159 | N | TSAN |
| RC-9019_00049179 | RC-9019_00049182 | N | TSAN |
| RC-9019_00049194 | RC-9019_00049194 | N | TSAN |
| RC-9019_00049198 | RC-9019_00049199 | N | TSAN |
| RC-9019_00049209 | RC-9019_00049210 | N | TSAN |
| RC-9019_00049211 | RC-9019_00049212 | N | TSAN |
| RC-9019_00049377 | RC-9019_00049377 | Y | GA |
| RC-9019_00049385 | RC-9019_00049386 | Y | OC |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotiations;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00049387 | RC-9019_00049389 | Y | OC |
| RC-9019_00049390 | RC-9019_00049391 | Y | OC |
| RC-9019_00049396 | RC-9019_00049397 | Y | GA |
| RC-9019_00049398 | RC-9019_00049400 | N | TSAN |
| RC-9019_00049401 | RC-9019_00049403 | Y | GA |
| RC-9019_00049406 | RC-9019_00049408 | N | TSAN |
| RC-9019_00049483 | RC-9019_00049485 | N/Y (redact) | TSAN-GA |
| RC-9019_00049486 | RC-9019_00049491 | N | TSAN |
| RC-9019_00049492 | RC-9019_00049498 | N/Y (redact) | TSAN-GA |
| RC-9019_00049503 | RC-9019_00049503 | N | TSAN |
| RC-9019_00049533 | RC-9019_00049536 | N | TSAN |
| RC-9019_00049544 | RC-9019_00049551 | N | TSAN |
| RC-9019_00049593 | RC-9019_00049597 | Y | GA |
| RC-9019_00049598 | RC-9019_00049598 | N | TSAN |
| RC-9019_00049657 | RC-9019_00049659 | Y | GA |
| RC-9019_00049660 | RC-9019_00049660 | Y | GA |
| RC-9019_00049664 | RC-9019_00049665 | Y | OC |
| RC-9019_00049666 | RC-9019_00049667 | Y | OC |
| RC-9019_00049668 | RC-9019_00049670 | N | TSAN |
| RC-9019_00049725 | RC-9019_00049729 | Y | GA |
| RC-9019_00049808 | RC-9019_00049812 | Y | GA |
| RC-9019_00049980 | RC-9019_00049984 | N/Y (redact) | TSAN-GA |
| RC-9019_00050229 | RC-9019_00050232 | N | TSAN |
| RC-9019_00050233 | RC-9019_00050234 | N | TSAN |
| RC-9019_00050235 | RC-9019_00050236 | N | TSAN |
| RC-9019_00050237 | RC-9019_00050239 | N | TSAN |
| RC-9019_00050240 | RC-9019_00050242 | N | TSAN |

**Common Interest column:**

N = No; Y = Yes

**Category Column:**

TSAN = Trust Settlement Agreement negotiations;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00050243 | RC-9019_00050245 | N | TSAN |
| RC-9019_00050246 | RC-9019_00050248 | N | TSAN |
| RC-9019_00050249 | RC-9019_00050251 | N | TSAN |
| RC-9019_00050252 | RC-9019_00050255 | N | TSAN |
| RC-9019_00050270 | RC-9019_00050273 | N | TSAN |
| RC-9019_00050274 | RC-9019_00050278 | N | TSAN |
| RC-9019_00050306 | RC-9019_00050306 | N | TSAN |
| RC-9019_00050448 | RC-9019_00050448 | N | TSAN |
| RC-9019_00050452 | RC-9019_00050454 | N | TSAN |
| RC-9019_00050455 | RC-9019_00050456 | N | TSAN |
| RC-9019_00050478 | RC-9019_00050482 | N | TSAN |
| RC-9019_00050909 | RC-9019_00050912 | N/Y (redact) | TSAN-GA |
| RC-9019_00051761 | RC-9019_00051763 | Y | GA |
| RC-9019_00052337 | RC-9019_00052338 | N | R9019 |
| RC-9019_00053120 | RC-9019_00053120 | N | R9019 |
| RC-9019_00053182 | RC-9019_00053183 | N | R9019 |
| RC-9019_00053225 | RC-9019_00053227 | N | R9019 |
| RC-9019_00053240 | RC-9019_00053240 | N | R9019 |
| RC-9019_00055202 | RC-9019_00055207 | N | TSAN |
| RC-9019_00055651 | RC-9019_00055654 | N | TSAN |
| RC-9019_00055655 | RC-9019_00055658 | N | TSAN |
| RC-9019_00055797 | RC-9019_00055798 | Y | OC |
| RC-9019_00055803 | RC-9019_00055804 | Y | OC |
| RC-9019_00055805 | RC-9019_00055806 | Y | OC |
| RC-9019_00055807 | RC-9019_00055808 | Y | OC |
| RC-9019_00055876 | RC-9019_00055878 | N | R9019 |
| RC-9019_00055879 | RC-9019_00055881 | N | R9019 |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00055943 | RC-9019_00055945 | Y | GA |
| RC-9019_00055961 | RC-9019_00055962 | N | R9019 |
| RC-9019_00055967 | RC-9019_00055969 | N | R9019 |
| RC-9019_00055970 | RC-9019_00055972 | N | R9019 |
| RC-9019_00055973 | RC-9019_00055976 | N | R9019 |
| RC-9019_00055977 | RC-9019_00055980 | N | R9019 |
| RC-9019_00055982 | RC-9019_00055987 | N | R9019 |
| RC-9019_00055989 | RC-9019_00055994 | N | R9019 |
| RC-9019_00055996 | RC-9019_00056001 | N | R9019 |
| RC-9019_00056002 | RC-9019_00056008 | N | R9019 |
| RC-9019_00056009 | RC-9019_00056015 | N | R9019 |
| RC-9019_00056018 | RC-9019_00056023 | N | R9019 |
| RC-9019_00056024 | RC-9019_00056030 | N | R9019 |
| RC-9019_00060237 | RC-9019_00060237 | N | TSAN |
| RC-9019_00060238 | RC-9019_00060238 | Y | GA |
| RC-9019_00060239 | RC-9019_00060239 | Y | GA |
| RC-9019_00060241 | RC-9019_00060241 | N | TSAN |
| RC-9019_00060249 | RC-9019_00060249 | Y | GA |
| RC-9019_00060251 | RC-9019_00060252 | N | TSAN |
| RC-9019_00060253 | RC-9019_00060254 | N | TSAN |
| RC-9019_00060263 | RC-9019_00060263 | N | TSAN |
| RC-9019_00060264 | RC-9019_00060264 | N | TSAN |
| RC-9019_00060301 | RC-9019_00060302 | N | TSAN |
| RC-9019_00060340 | RC-9019_00060340 | N | TSAN |
| RC-9019_00060341 | RC-9019_00060342 | N | TSAN |
| RC-9019_00060343 | RC-9019_00060344 | N | TSAN |
| RC-9019_00060345 | RC-9019_00060346 | N | TSAN |

**Common Interest column:**

N = No; Y = Yes

**Category Column:**

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

SF-3214007

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00060355 | RC-9019_00060355 | Y | GA |
| RC-9019_00060360 | RC-9019_00060360 | N | TSAN |
| RC-9019_00060361 | RC-9019_00060361 | N | TSAN |
| RC-9019_00060362 | RC-9019_00060363 | N | TSAN |
| RC-9019_00060364 | RC-9019_00060365 | N | TSAN |
| RC-9019_00060375 | RC-9019_00060376 | N | TSAN |
| RC-9019_00060377 | RC-9019_00060378 | N | TSAN |
| RC-9019_00060379 | RC-9019_00060380 | N | TSAN |
| RC-9019_00060381 | RC-9019_00060383 | N | TSAN |
| RC-9019_00060384 | RC-9019_00060387 | N | TSAN |
| RC-9019_00060388 | RC-9019_00060389 | N | TSAN |
| RC-9019_00060390 | RC-9019_00060392 | N | TSAN |
| RC-9019_00060416 | RC-9019_00060420 | Y | GA |
| RC-9019_00060422 | RC-9019_00060424 | N | TSAN |
| RC-9019_00060426 | RC-9019_00060428 | N | TSAN |
| RC-9019_00060430 | RC-9019_00060432 | N | TSAN |
| RC-9019_00060434 | RC-9019_00060436 | N | TSAN |
| RC-9019_00060438 | RC-9019_00060440 | N | TSAN |
| RC-9019_00060442 | RC-9019_00060444 | N/Y (redact) | TSAN-GA |
| RC-9019_00060717 | RC-9019_00060718 | Y | GA |
| RC-9019_00060720 | RC-9019_00060721 | Y | OC |
| RC-9019_00060736 | RC-9019_00060736 | Y | GA |
| RC-9019_00060737 | RC-9019_00060737 | Y | GA |
| RC-9019_00060738 | RC-9019_00060739 | Y | GA |
| RC-9019_00060741 | RC-9019_00060742 | Y | GA |
| RC-9019_00060745 | RC-9019_00060746 | Y | GA |
| RC-9019_00060748 | RC-9019_00060748 | N | TSAN |

**Common Interest column:**

N = No; Y = Yes

**Category Column:**

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Privileged Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00060749 | RC-9019_00060749 | N | TSAN |
| RC-9019_00060750 | RC-9019_00060751 | N/Y (redact) | TSAN-GA |
| RC-9019_00060753 | RC-9019_00060754 | Y | GA |
| RC-9019_00060758 | RC-9019_00060762 | N | TSAN |
| RC-9019_00060764 | RC-9019_00060768 | N | TSAN |
| RC-9019_00060770 | RC-9019_00060774 | N | TSAN |
| RC-9019_00060777 | RC-9019_00060782 | N | TSAN |
| RC-9019_00060783 | RC-9019_00060788 | N | TSAN |
| RC-9019_00060791 | RC-9019_00060792 | N | TSAN |
| RC-9019_00060793 | RC-9019_00060795 | N | TSAN |
| RC-9019_00060796 | RC-9019_00060796 | Y | GA |
| RC-9019_00060797 | RC-9019_00060797 | Y | GA |
| RC-9019_00060798 | RC-9019_00060806 | Y | OC |
| RC-9019_00060815 | RC-9019_00060815 | Y | GA |
| RC-9019_00060816 | RC-9019_00060816 | Y | GA |
| RC-9019_00060817 | RC-9019_00060817 | Y | GA |
| RC-9019_00060819 | RC-9019_00060819 | Y | GA |
| RC-9019_00060822 | RC-9019_00060822 | Y | OC |
| RC-9019_00060823 | RC-9019_00060823 | N | TSAN |
| RC-9019_00060828 | RC-9019_00060829 | Y | OC |
| RC-9019_00060830 | RC-9019_00060831 | Y | OC |
| RC-9019_00060833 | RC-9019_00060835 | Y | OC |
| RC-9019_00060846 | RC-9019_00060846 | N | TSAN |
| RC-9019_00060871 | RC-9019_00060871 | Y | GA |
| RC-9019_00060872 | RC-9019_00060874 | N/Y (redact) | TSAN-OC |
| RC-9019_00060877 | RC-9019_00060877 | N | TSAN |
| RC-9019_00060878 | RC-9019_00060879 | N | TSAN |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Crawford Dock Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00060880 | RC-9019_00060881 | N | TSAN |
| RC-9019_00060882 | RC-9019_00060883 | N | TSAN |
| RC-9019_00060886 | RC-9019_00060887 | Y | GA |
| RC-9019_00060888 | RC-9019_00060900 | Y | GA |
| RC-9019_00060901 | RC-9019_00060902 | N | TSAN |
| RC-9019_00060931 | RC-9019_00060931 | N | TSAN |
| RC-9019_00060932 | RC-9019_00060932 | N | TSAN |
| RC-9019_00060949 | RC-9019_00060951 | N | TSAN |
| RC-9019_00060960 | RC-9019_00060963 | N | TSAN |
| RC-9019_00060964 | RC-9019_00060969 | N | TSAN |
| RC-9019_00060970 | RC-9019_00060974 | Y | GA |
| RC-9019_00060975 | RC-9019_00060978 | Y | GA |
| RC-9019_00060979 | RC-9019_00060983 | Y | GA |
| RC-9019_00060987 | RC-9019_00060992 | Y | GA |
| RC-9019_00060993 | RC-9019_00060993 | Y | GA |
| RC-9019_00060994 | RC-9019_00060994 | Y | GA |
| RC-9019_00060998 | RC-9019_00060999 | Y | GA |
| RC-9019_00061000 | RC-9019_00061001 | Y | GA |
| RC-9019_00061002 | RC-9019_00061004 | Y | GA |
| RC-9019_00061005 | RC-9019_00061007 | Y | GA |
| RC-9019_00061008 | RC-9019_00061010 | Y | GA |
| RC-9019_00061011 | RC-9019_00061013 | Y | GA |
| RC-9019_00061014 | RC-9019_00061017 | Y | GA |
| RC-9019_00061031 | RC-9019_00061031 | N | TSAN |
| RC-9019_00061032 | RC-9019_00061033 | N | TSAN |
| RC-9019_00061034 | RC-9019_00061035 | N | TSAN |
| RC-9019_00061036 | RC-9019_00061038 | N | TSAN |

**Common Interest column:**

N = No; Y = Yes

**Category Column:**

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Clawed-Back Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00061039 | RC-9019_00061041 | N | TSAN |
| RC-9019_00061042 | RC-9019_00061044 | N | TSAN |
| RC-9019_00061045 | RC-9019_00061047 | N | TSAN |
| RC-9019_00061054 | RC-9019_00061056 | N | TSAN |
| RC-9019_00061057 | RC-9019_00061059 | N | TSAN |
| RC-9019_00061060 | RC-9019_00061062 | N | TSAN |
| RC-9019_00061074 | RC-9019_00061076 | N | TSAN |
| RC-9019_00061077 | RC-9019_00061079 | N | TSAN |
| RC-9019_00061187 | RC-9019_00061188 | N | TSAN |
| RC-9019_00061189 | RC-9019_00061191 | N | TSAN |
| RC-9019_00061237 | RC-9019_00061237 | N | TSAN |
| RC-9019_00061246 | RC-9019_00061247 | N | TSAN |
| RC-9019_00061248 | RC-9019_00061250 | N | TSAN |
| RC-9019_00061251 | R9019_00061254 | N | TSAN |
| RC-9019_00061255 | RC-9019_00061258 | N | TSAN |
| RC-9019_00061264 | RC-9019_00061267 | N | TSAN |
| RC-9019_00061304 | RC-9019_00061305 | N | TSAN |
| RC-9019_00061306 | RC-9019_00061306 | N | TSAN |
| RC-9019_00061307 | RC-9019_00061309 | N | TSAN |
| RC-9019_00061311 | RC-9019_00061312 | N | TSAN |
| RC-9019_00061313 | RC-9019_00061315 | N | TSAN |
| RC-9019_00061320 | RC-9019_00061320 | N | TSAN |
| RC-9019_00061321 | RC-9019_00061321 | N | TSAN |
| RC-9019_00061329 | RC-9019_00061332 | N | TSAN |
| RC-9019_00061333 | RC-9019_00061336 | N | TSAN |
| RC-9019_00061337 | RC-9019_00061341 | N | TSAN |
| RC-9019_00061342 | RC-9019_00061342 | N | TSAN |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Categories of Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00061345 | RC-9019_00061346 | N | TSAN |
| RC-9019_00061347 | RC-9019_00061348 | N | TSAN |
| RC-9019_00061349 | RC-9019_00061351 | N | TSAN |
| RC-9019_00061352 | RC-9019_00061352 | N | TSAN |
| RC-9019_00061353 | RC-9019_00061353 | N | TSAN |
| RC-9019_00061354 | RC-9019_00061354 | N | TSAN |
| RC-9019_00061357 | RC-9019_00061358 | N | TSAN |
| RC-9019_00061359 | RC-9019_00061361 | N | TSAN |
| RC-9019_00061362 | RC-9019_00061363 | Y | OC |
| RC-9019_00061390 | RC-9019_00061392 | N | TSAN |
| RC-9019_00061411 | RC-9019_00061411 | N | TSAN |
| RC-9019_00061412 | RC-9019_00061412 | N | TSAN |
| RC-9019_00061413 | RC-9019_00061414 | N | TSAN |
| RC-9019_00061424 | RC-9019_00061425 | N | TSAN |
| RC-9019_00061442 | RC-9019_00061442 | N | TSAN |
| RC-9019_00061443 | RC-9019_00061443 | N | TSAN |
| RC-9019_00061449 | RC-9019_00061449 | N | TSAN |
| RC-9019_00061450 | RC-9019_00061451 | N | TSAN |
| RC-9019_00061453 | RC-9019_00061453 | N | TSAN |
| RC-9019_00061454 | RC-9019_00061455 | N | TSAN |
| RC-9019_00061461 | RC-9019_00061462 | N | TSAN |
| RC-9019_00061463 | RC-9019_00061464 | N | TSAN |
| RC-9019_00061465 | RC-9019_00061466 | N | TSAN |
| RC-9019_00061467 | RC-9019_00061467 | Y | GA |
| RC-9019_00061469 | RC-9019_00061470 | Y | GA |
| RC-9019_00061472 | RC-9019_00061473 | N | TSAN |
| RC-9019_00061482 | RC-9019_00061484 | N | TSAN |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Certain OC Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00061485 | RC-9019_00061487 | N | TSAN |
| RC-9019_00061494 | RC-9019_00061494 | N | TSAN |
| RC-9019_00061520 | RC-9019_00061520 | N | TSAN |
| RC-9019_00061521 | RC-9019_00061521 | N | TSAN |
| RC-9019_00061539 | RC-9019_00061539 | Y | OC |
| RC-9019_00061554 | RC-9019_00061557 | N | TSAN |
| RC-9019_00061558 | RC-9019_00061562 | N | TSAN |
| RC-9019_00061563 | RC-9019_00061567 | N | TSAN |
| RC-9019_00061568 | RC-9019_00061572 | N | TSAN |
| RC-9019_00061573 | RC-9019_00061573 | Y | OC |
| RC-9019_00061575 | RC-9019_00061579 | N | TSAN |
| RC-9019_00061580 | RC-9019_00061584 | N | TSAN |
| RC-9019_00061585 | RC-9019_00061585 | N | TSAN |
| RC-9019_00061624 | RC-9019_00061624 | Y | GA |
| RC-9019_00061657 | RC-9019_00061658 | N | TSAN |
| RC-9019_00061659 | RC-9019_00061660 | N | TSAN |
| RC-9019_00061661 | RC-9019_00061663 | N | TSAN |
| RC-9019_00061728 | RC-9019_00061730 | N | TSAN |
| RC-9019_00061731 | RC-9019_00061734 | N | TSAN |
| RC-9019_00061735 | RC-9019_00061738 | N | TSAN |
| RC-9019_00061874 | RC-9019_00061874 | N | TSAN |
| RC-9019_00061875 | RC-9019_00061878 | N | TSAN |
| RC-9019_00061884 | RC-9019_00061888 | N | TSAN |
| RC-9019_00061894 | RC-9019_00061895 | N | TSAN |
| RC-9019_00061902 | RC-9019_00061905 | N | TSAN |
| RC-9019_00061913 | RC-9019_00061914 | N | TSAN |
| RC-9019_00061919 | RC-9019_00061924 | N | TSAN |

**Common Interest column:**

**N = No; Y = Yes**

**Category Column:**

**TSAN** = Trust Settlement Agreement negotions;

**R9019** = motion for approval of Trust Settlement Agreements;

**OC** = other pending or potential claims;

**GA** = general assessment of pending or potential claims.

**Ch11** = Chapter 11 Plan

Exhibit A:  Designation of Common Interest Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00061928 | RC-9019_00061935 | N | TSAN |
| RC-9019_00061936 | RC-9019_00061938 | N | TSAN |
| RC-9019_00061939 | RC-9019_00061942 | N | TSAN |
| RC-9019_00061943 | RC-9019_00061946 | N | TSAN |
| RC-9019_00061947 | RC-9019_00061950 | N | TSAN |
| RC-9019_00061951 | RC-9019_00061954 | N | TSAN |
| RC-9019_00061984 | RC-9019_00061987 | Y | OC |
| RC-9019_00062049 | RC-9019_00062050 | N | TSAN |
| RC-9019_00062060 | RC-9019_00062068 | N | TSAN |
| RC-9019_00062069 | RC-9019_00062074 | Y | GA |
| RC-9019_00062075 | RC-9019_00062080 | Y | GA |
| RC-9019_00062176 | RC-9019_00062179 | N | R9019 |
| RC-9019_00062180 | RC-9019_00062184 | N | R9019 |
| RC-9019_00062286 | RC-9019_00062291 | Y | GA |
| RC-9019_00062292 | RC-9019_00062297 | Y | GA |
| RC-9019_00062298 | RC-9019_00062303 | Y | GA |
| RC-9019_00062304 | RC-9019_00062309 | Y | GA |
| RC-9019_00062396 | RC-9019_00062397 | N | TSAN |
| RC-9019_00062398 | RC-9019_00062400 | N | TSAN |
| RC-9019_00063132 | RC-9019_00063136 | Y | GA |
| RC-9019_00063137 | RC-9019_00063142 | Y | GA |
| RC-9019_00063143 | RC-9019_00063148 | Y | GA |
| RC-9019_00063165 | RC-9019_00063167 | N | TSAN |
| RC-9019_00063168 | RC-9019_00063170 | N | TSAN |
| RC-9019_00063171 | RC-9019_00063173 | N | TSAN |
| RC-9019_00063174 | RC-9019_00063177 | N | TSAN |
| RC-9019_00063178 | RC-9019_00063181 | N | TSAN |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

SF-3214007

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00063189 | RC-9019_00063193 | N | TSAN |
| RC-9019_00063194 | RC-9019_00063198 | N | TSAN |
| RC-9019_00063655 | RC-9019_00063657 | Y | OC |
| RC-9019_00063658 | RC-9019_00063662 | Y | R9019 |
| RC-9019_00063663 | RC-9019_00063667 | Y | R9019 |
| RC-9019_00063668 | RC-9019_00063672 | Y | R9019 |
| RC-9019_00063987 | RC-9019_00063988 | N | Ch11 |
| RC-9019_00064032 | RC-9019_00064035 | N | TSAN |
| RC-9019_00064036 | RC-9019_00064039 | N | TSAN |
| RC-9019_00064082 | RC-9019_00064087 | Y | GA |
| RC-9019_00064091 | RC-9019_00064096 | Y | GA |
| RC-9019_00064097 | RC-9019_00064102 | Y | GA |
| RC-9019_00064111 | RC-9019_00064113 | Y | GA |
| RC-9019_00064114 | RC-9019_00064116 | Y | GA |
| RC-9019_00064117 | RC-9019_00064120 | Y | GA |
| RC-9019_00064121 | RC-9019_00064125 | N | TSAN |
| RC-9019_00064224 | RC-9019_00064226 | N | TSAN |
| RC-9019_00064430 | RC-9019_00064432 | N | TSAN |
| RC-9019_00064433 | RC-9019_00064435 | N | TSAN |
| RC-9019_00064436 | RC-9019_00064438 | N | TSAN |
| RC-9019_00064439 | RC-9019_00064441 | N | TSAN |
| RC-9019_00064442 | RC-9019_00064444 | N | TSAN |
| RC-9019_00064445 | RC-9019_00064448 | N | TSAN |
| RC-9019_00064449 | RC-9019_00064452 | N | TSAN |
| RC-9019_00064453 | RC-9019_00064460 | N | TSAN |
| RC-9019_00064461 | RC-9019_00064467 | N | TSAN |
| RC-9019_00064468 | RC-9019_00064475 | N | TSAN |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

Exhibit A:  Designation of Original Documents and Attachments

| BegProdBate | EndProdBate | Common Interest | Category |
|---|---|---|---|
| RC-9019_00064476 | RC-9019_00064483 | N | TSAN |
| RC-9019_00064490 | RC-9019_00064491 | Y | OC |
| RC-9019_00064511 | RC-9019_00064519 | N | TSAN |
| RC-9019_00064520 | RC-9019_00064528 | N | TSAN |
| RC-9019_00064529 | RC-9019_00064537 | N | TSAN |
| RC-9019_00064538 | RC-9019_00064546 | N | TSAN |
| RC-9019_00064547 | RC-9019_00064556 | N | TSAN |
| RC-9019_00064557 | RC-9019_00064566 | N | TSAN |
| RC-9019_00064567 | RC-9019_00064576 | N | TSAN |
| RC-9019_00064577 | RC-9019_00064585 | N | TSAN |
| RC-9019_00064586 | RC-9019_00064595 | N | TSAN |
| RC-9019_00064596 | RC-9019_00064605 | N | TSAN |
| RC-9019_00064606 | RC-9019_00064615 | N | TSAN |
| RC-9019_00064616 | RC-9019_00064625 | N | TSAN |
| RC-9019_00064896 | RC-9019_00064900 | N | TSAN |
| RC-9019_00064901 | RC-9019_00064905 | N | `TSAN |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Common Interest column:

N = No; Y = Yes

Category Column:

TSAN = Trust Settlement Agreement negotions;

R9019 = motion for approval of Trust Settlement Agreements;

OC = other pending or potential claims;

GA = general assessment of pending or potential claims.

Ch11 = Chapter 11 Plan

# Exhibit B

Morrison & Foerster LLP
Gary S. Lee
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                :
In re:                              :       Chapter 11
                                  :
RESIDENTIAL CAPITAL, LLC, et al.,    :       Case No. 12-12020 (MG)
                                  :
                Debtors.          :       Jointly Administered
                                  :
------------------------------------------------------------ X

## CONFIDENTIALITY AGREEMENT

It is hereby stipulated and agreed, by and among the parties hereto by their

undersigned counsel, that discovery or disclosure in these Chapter 11 bankruptcy cases filed by

Residential Capital, LLC, et al., (collectively, the "Company" or the "Debtors"), jointly

administered under the caption In re Residential Capital, LLC, et al., Case No. 12-12020 (MG),

shall be subject to the terms and conditions of this Agreement to protect the confidentiality of

proprietary, non-public, and sensitive information:

         1.       For purposes of this Agreement, the following terms shall have the

following indicated meanings:

         "Advisors" shall include counsel, consultants, accountants, experts, auditors,

examiners, financial advisors, appraisers or other agents or professionals.

"Confidential Information" means any and all proprietary, confidential and nonpublic information (whether in writing or orally or in any other format) produced, provided, given or exchanged by a Disclosing Party (defined below) that is marked or designated by such Disclosing Party as being "Confidential," including, without limitation, information concerning the Disclosing Party's assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, corporate governance, intellectual property, trade secrets and compilations and studies relating to the foregoing. Confidential Information includes, but is not limited to, all analyses, compilations, forecasts, studies or other documents prepared by a Receiving Party in connection with its review of, or interest in, the Chapter 11 Cases, which contain or reflect or are based upon any such Confidential Information provided by the Disclosing Party.

The term Confidential Information will not include information that:

(i) is or becomes publicly available other than as a result of a disclosure by any Receiving Party or Representative or Advisor in breach of this Agreement,

(ii) a Receiving Party or its Representatives or Advisors obtains independently, not pursuant to this Agreement, provided that if such information is subject to another confidentiality agreement between the Receiving Party and the Disclosing Party, use of such Confidential Information by such Receiving Party is governed by such other confidentiality agreement and not by the terms of this Agreement,

(iii) is or becomes available to the Receiving Party or its Representatives or Advisors on a non-confidential basis from a source (other than a Disclosing Party), which source

- 2 -

is not to the Receiving Party's knowledge subject to any prohibition from disclosing such information to the Receiving Party,

(iv) is independently developed by such Receiving Party or its Representatives or Advisors without violating its obligations hereunder and without using any Confidential Information,

(v) is disclosed or is required to be disclosed by law, rule, regulation or legal process, subject to the requirements of paragraph 9 below, or

(vi) is determined by a court of competent jurisdiction not to be Confidential Information.

"Disclosing Party" means any party producing Discovery Material.

"Discovery Material" refers to all discovery documents, deposition testimony, interrogatory answers, and other information produced, given, provided or exchanged in connection with discovery in these Chapter 11 cases.

"or" shall not be construed as exclusive.

"Receiving Party" means any party receiving Discovery Material pursuant to this Agreement and any other party receiving Discovery Material that executes and delivers to the Disclosing Party a confidentiality agreement on substantially identical terms to this Agreement..

"Representatives" shall include affiliates, directors, officers, partners, members, and employees.

2.  Each Receiving Party hereby agrees that it will:

- 3 -

KL3 2880208.8

(a)      keep the Confidential Information confidential and will not (except as
required by applicable law, rule, regulation or legal process, and only after compliance with
paragraph 9 below), without the Disclosing Party's prior written consent, disclose any
Confidential Information to any other person or entity, except as provided for in this Agreement;

(b)      not use or allow any Confidential Information to be used for any purpose
other than for the purpose of performing its duties in the Chapter 11 cases; and

(c)      use reasonable efforts to safeguard the Confidential Information and to
protect the Confidential Information against disclosure, misuse, espionage, loss, and theft by any
corporation, company, partnership or individual.

3.      Notwithstanding the foregoing, Confidential Information (that is not
designated Professionals' Eyes Only as defined below) may be disclosed by the Receiving Party
to (i) its Representatives and Advisors who are involved with these Chapter 11 cases; (ii) any
other Receiving Party, including persons noticed for depositions or designated as trial witnesses
and their counsel to the extent deemed necessary by counsel for the Receiving Party in order to
prepare such witnesses.  For the avoidance of doubt, Kramer Levin Naftalis & Frankel LLP,
proposed counsel to the Official Committee of Unsecured Creditors (the "Creditors'
Committee"),  and the Receiving Party's other Advisors, may share Confidential Information
(that is not designated Professionals' Eyes Only) with the Creditors' Committee and members of
the Creditors' Committee, provided that the Committee has either executed a confidentiality
agreement on terms reasonably acceptable to the Debtors or enacted Committee bylaws that are
in effect that include confidentiality restrictions reasonably acceptable to the Debtors.  The
Receiving Party represents that each of its Representatives and Advisors who receives

- 4 -

Confidential Information pursuant to this Agreement, will be advised (i) of the terms of this Agreement, (ii) that upon receipt of any Confidential Information such party shall be deemed bound by the terms of this Agreement and (iii) of such party's obligations concerning the confidentiality of all such Confidential Information and the proper use thereof.  The parties may agree in writing to greater or lesser restrictions on the use of certain Confidential Information.

4.      The Disclosing Party shall be permitted to designate certain items of Confidential Information as "Professionals' Eyes Only" only if the Disclosing Party in good faith reasonably believes that (i) the items contain highly confidential and sensitive proprietary information related to the Disclosing Party's previous, existing or ongoing business operations for which restricted access is necessary to prevent a risk of competitive harm to the Disclosing Party in the ongoing operation of its business; or (ii) the items contain attorney work product or privileged information; or (iii) the items contain internal analyses regarding the treatment and/or valuation of existing or potential claims in connection with the sale of mortgages or mortgage backed securities; or (iv) the items are documents that were produced to the Disclosing Party in an existing litigation and are subject to a protective order or confidentiality agreement in connection with that litigation; provided that Committee Counsel and the Committee's Advisors may advise the Committee on Professionals' Eyes Only information solely in order to permit the Committee to exercise its fiduciary duties (which advice may not disclose material terms in the Professionals' Eyes Only documents).

5.      The Receiving Party agrees that information designated as Professionals' Eyes Only may not be disclosed to any Representatives of the Receiving Party and may be reviewed only by the following persons:

KL3 2880298.8

(a)     Advisors who represent or work for the Receiving Party in matters related to the Chapter 11 bankruptcy cases, as well as clerical, paralegal, other staff and agents of those Advisors whose functions require access to Professionals' Eyes Only Information;

(b)     Any person indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

(c)     A Committee Members' financial advisor if that advisor is not (a) currently assisting and will not later assist the Member or any party in any mortgage related litigation against the Debtors or its affiliates, and (b) is not itself a party nor does it intend to be a party in any mortgage related litigation against the Debtors or its affiliates; provided that the financial advisor will not share the Professionals' Eyes Only information with the Member;

(d)     Professional vendors to whom disclosure is reasonably necessary for Chapter 11 issues, provided they are informed that the material is Professionals' Eyes Only information;

(e)     The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party in connection with these Chapter 11 cases;

(f)     Any other person, only upon order of the Court or agreement of the Disclosing Party.

6.     The Disclosing Party may designate the specific testimony during a deposition or proceeding as "Confidential" or "Professionals' Eyes Only" either on the record at the deposition or other proceeding, or in writing no later than three (3) calendar days following

- 6 -

the date on which attorneys for the Disclosing Party has received the final version of the

transcript of the deposition or other proceeding (the "Transcript Designation Period"); provided

that testimony designated as Confidential or Professionals' Eyes Only shall remain subject to

such designation during the Transcript Designation Period.

        7.    Notwithstanding the foregoing, should the Receiving Party disagree with

the Disclosing Party's designation of information as Confidential Information or "Professionals'

Eyes Only," counsel for the Disclosing Party and the Receiving Party shall confer in good faith

to resolve the issue on an expedited basis.  Absent a consensual resolution, the Receiving Party

may request, upon written notice to the Disclosing Party and on an expedited basis, that the

Bankruptcy Court resolve the issue (subject to the Court's availability).  The material in question

shall be treated as it was initially designated by the Disclosing Party pending resolution of the

issue.  If challenged pursuant to this paragraph 7, the Disclosing Party shall bear the burden of

establishing that any such material challenged by the Receiving Party is entitled to the

designation of "Confidential" or "Professionals' Eyes Only" assigned by the Disclosing Party.

        8.    In the event that a Receiving Party intends to offer into evidence or

otherwise use Confidential Information in the Chapter 11 Case, then such Receiving Party shall

(i) obtain the advance written consent of the Disclosing Party (through the Disclosing Party's

counsel) to such offer or use; (ii) file under seal the Confidential Information or any substantive

references thereto; or (iii) obtain an order of the Bankruptcy Court permitting the disclosure after

advance written notice and a reasonable opportunity for the Disclosing Party to be heard on such

proposed relief.  Any such request for relief from the Bankruptcy Court may be heard on

expedited notice of no less than five (5) business days, subject to the Bankruptcy Court's

calendar.

KL3 2880298.8

9.     Notwithstanding anything to the contrary herein, if a Receiving Party or any of the Receiving Party's Representatives is requested pursuant to, or becomes legally compelled by, applicable law, rule, regulation, regulatory authority, or legal process to make any disclosure that is prohibited or otherwise constrained by this Agreement, the Receiving Party or such Representative, as the case may be, shall provide written notice of such legal proceedings or compelled disclosure (unless such notice is prohibited by applicable law) to the Disclosing Party and the Disclosing Party's counsel, pursuant to the notice provisions set forth herein, promptly upon receiving such notice and at least three (3) business days prior to compliance by the Receiving Party with the request for Confidential Information, so that the Disclosing Party may seek an appropriate protective order or other appropriate relief, or, in the Disclosing Party's sole discretion, waive compliance with the terms of this Agreement.  In the absence of a protective order or the Receiving Party's receiving such a waiver from disclosure, the Receiving Party or its Representative shall be permitted (with the Disclosing Party's cooperation) to disclose only that portion of the Confidential Information that the Receiving Party or the Representative is advised by the Receiving Party's counsel is legally required to disclose and shall inform (in writing) any person to whom any Confidential Information is so disclosed of the confidential nature of such Confidential Information.

10.     Each Receiving Party acknowledges that none of the Disclosing Parties makes any express or implied representation or warranty as to the accuracy or completeness of the Confidential Information, and each Receiving Party agrees that no Disclosing Party shall have any liability arising from disclosure of the Confidential Information or for any errors therein or omissions therefrom.

KL3 2880298.8

11.     Nothing in this Agreement shall prevent or limit any right of any
Receiving Party from seeking any information through subpoena, formal discovery or other
process, or prevent or limit any right of a Disclosing Party to object on any basis to any such
subpoena, formal discovery or other process.

12.     This Agreement shall be retroactively effective as of May 25, 2012 (the
"Effective Date"), and shall automatically terminate on the date that is the earliest of one year
following: (a) the effective date of a chapter 11 plan, (b) the dismissal of the chapter 11 cases, or
(c) the conversion of the chapter 11 cases to cases under chapter 7 (the "Termination Date").
After the Termination Date and upon the written request of the Disclosing Party or any of its
Representatives, the Receiving Party shall either (at the Receiving Party's election) (i) promptly
destroy all copies of the Confidential Information in its possession, or (ii) promptly deliver to the
Disclosing Party all copies of the Confidential Information in its possession; provided, however,
that the Receiving Parties may retain all analyses, compilations, forecasts, studies or other
documents prepared by the Receiving Parties and such other information that such Receiving
Party is required to retain by law or reasonable and customary internal document retention
policies (including any internal document retention policies in effect as of the date of this
Agreement) (collectively the "Retained Information"); provided, further, however, that the
Receiving Party shall not be required to return or destroy such Confidential Information if the
Disclosing Party agrees in writing that the Receiving Party may retain such Confidential
Information or the Receiving Party obtains an order of the Bankruptcy Court authorizing it to
retain such Confidential Information.  If requested by a Disclosing Party, a Receiving Party shall
provide a certification as to the destruction of any materials in accordance with the foregoing.
Any Receiving Party that retains any Retained Information or other Confidential Information

- 9 -

pursuant to the foregoing sentence will continue to be subject to the terms of this Agreement in respect of all such information, without regard to whether this Agreement has terminated in accordance with this Section 12.

13.     Each Receiving Party acknowledges that remedies at law would be inadequate to protect the Disclosing Party against any breach of this Agreement and, without prejudice to any other rights and remedies otherwise available to the Disclosing Party, each of the Receiving Parties agrees that the Disclosing Party may seek injunctive relief restricting the further release of Confidential Information, or the specific performance of the terms of this Agreement restricting the further release of Confidential Information, for any breach of this Agreement by one or more of the Receiving Parties without proof of actual damages and without the requirement of obtaining any bond or giving any security in connection with the granting of any such relief.

14.     The Receiving Parties and the Disclosing Parties hereby (a) submit to the jurisdiction of the Bankruptcy Court with respect to all disputes, action, suits and proceedings arising out of or relating to this Agreement, (b) agree that all claims with respect to any such dispute, action, suit or proceeding may be heard and determined in such court, (c) waive the defense of an inconvenient forum, (d) agree that service of any process, summons, notice or document by United States registered mail or as otherwise provided in this Agreement shall be effective service of process for any action, suit or proceeding brought against a Receiving Party in any such court, (e) agree that a final judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law and (f) waive a right to trial by jury of any dispute related to this Agreement.

KL3 2880298.8

15. Limitation on Use of Non-Party Borrower Information ("NPBI"). In addition to the conditions on use of Discovery Material designated "Confidential" and "Professional Eyes Only" set forth in the Confidentiality Agreement, which apply with equal force to NPBI, NPBI may not be used by the Receiving Party or its experts, consultants, professional vendors, counsel or other secondary recipients or affiliates for the purpose of contacting borrowers or their employers or accountants, whether through formal process or otherwise, or for the purpose of re-verifying borrower credit information, including, but not limited to, obtaining credit reports and/or verifying employment, income, place of residence, citizenship, debts or assets, except pursuant to an order from this court or a competent authority authorizing the specific request to seek such information.

16. Each Receiving Party agrees that no failure or delay by the Disclosing Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

17. This Agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts between residents of that State and executed in and to be performed in that State.

18. This Agreement contains the entire agreement between the parties hereto concerning the confidentiality of the Confidential Information, and except as provided herein, no modifications of this Agreement or waiver of the terms and conditions hereof will be binding upon the parties, unless approved in writing by each of the parties.

KL3 2880298.8

19.     All notices and other communications to the parties required or permitted
under this Agreement shall be in writing and shall become effective when delivered by facsimile
transmission, electronic mail, overnight courier service, registered or certified mail (postage
prepaid) or hand delivery, addressed as follows or to such other addresses as may be thereafter
designated in writing by such party to the other parties:

> If to the Company:
>
> Residential Capital, LLC
> 1100 Virginia Drive
> Fort Washington, Pennsylvania 19034
> Attn: Tammy Hamzehpour, General Counsel
> Tammy.hamzehpour@gmacrescap.com
>
> With a copy to:
>
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, New York 10104
> Attn: Jamie A. Levitt, Esq.
> jlevitt@mofo.com
>
> If to the Creditors' Committee:
>
> Kramer Levin Naftalis & Frankel LLP
> 1177 Avenue of the Americas
> New York, New York 10036
> Attn: Barry Berke, Esq.
> bberke@kramerlevin.com

Any subsequent signatories to this Agreement shall provide corresponding contact information
for notices or communications under this Agreement.

20.     This Agreement is non-assignable except with the prior written approval
of the authorized representatives of all parties.  This Agreement shall be binding upon and inure
to the benefit of all parties hereto and their respective successors and permitted assigns.

- 12 -

KL3 2880298.8

21.    This Agreement shall be executed in any number of counterparts, which counterparts may be delivered by facsimile or electronic mail, and it shall not be necessary that the signature of, or on behalf of, each party, appear on each counterpart; but it shall be sufficient that the signature of, or on behalf of, each party, appear on one or more counterparts. All such counterparts when taken together shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

22.    Subject to the Receiving Party's right to challenge any assertion of privilege or prohibition from disclosure, nothing in this Agreement shall require disclosure of information by a Disclosing Party that the Disclosing Party's Advisors contends is protected or prohibited from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege or other protection, including without limitation any applicable data privacy laws. If information protected or prohibited from disclosure is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information or any other information that may be protected from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege or other protection. If a Disclosing Party inadvertently or mistakenly produces information that is protected or prohibited from disclosure, upon written request by the Disclosing Party after the discovery of such inadvertent or mistaken production, the Receiving Party shall use all commercially reasonable efforts to return or destroy the information for which a claim of inadvertent production is made and all copies of it, including any work product containing, identifying, or referencing such information, within five (5) business days of such request, and the Receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of

- 13 -

the information.  If the Receiving Party returns such information, it may then move the Court for

an order compelling production of the information, but that motion shall not assert as a ground

for entering such an order the fact or circumstance of the inadvertent production of the

information.


Dated:  New York, New York

June 18, 2012

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____
     Barry H. Berke
1177 Avenue of the Americas
New York, New York 10036
Telephone:  212-715-9100
*Counsel to the Official Unsecured Creditors' Committee*


MORRISON & FOERSTER LLP

By: _____
     Gary S. Lee
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the Debtors*

KL3 2850298.8

# Exhibit C

## Rains, Darryl P.

| | |
|---|---|
| **From:** | Levitt, Jamie A. |
| **Sent:** | Wednesday, September 12, 2012 8:16 AM |
| **To:** | 'Bentley, Philip' |
| **Cc:** | 'Eckstein, Kenneth H.'; 'Kaufman, Philip S.'; Princi, Anthony; Rains, Darryl P.; Clark, Daniel E. |
| **Subject:** | RE: ResCap |

Phil – I was told that you are under the impression we are withholding settlement negotiation documents on the basis of a common interest privilege.  That is not correct.  We are producing the settlement documents you requested with the exception only of those protected by attorney/client privilege and work product.

**From:** Levitt, Jamie A.
**Sent:** Wednesday, August 29, 2012 12:16 PM
**To:** 'Bentley, Philip'
**Cc:** Lee, Gary S.; Eckstein, Kenneth H.; Kaufman, Philip S.; Princi, Anthony; Rains, Darryl P.
**Subject:** RE: ResCap

Phil,

After our meet and confer and further deliberations, we have decided that to continue to provide you with the information you believe you need to analyze the reasonableness of the RMBS Settlement (and putting aside our objection as the appropriateness of your request in the context of the 9019 analysis), we will agree to produce the non-privileged documents you have requested regarding our RMBS Settlement negotiations.   The interrogatories, however, are a separate issue and we must defer discussion on those until after our meetings with investor counsel.

I also want to confirm our prior understanding that with respect to all of your requests, although we are not serving written responses and are focusing all resources instead on the expeditious production of documents to you, all our objections are preserved.

Thanks.

Jamie

**From:** Bentley, Philip [mailto:PBentley@KRAMERLEVIN.com]
**Sent:** Friday, August 24, 2012 6:11 PM
**To:** Princi, Anthony; Levitt, Jamie A.
**Cc:** Lee, Gary S.; Eckstein, Kenneth H.; Kaufman, Philip S.
**Subject:** ResCap

Tony/Jamie,

Per the voicemail message that I left for each of you, I wanted to give you a heads-up that we will be serving discovery requests either this evening or tomorrow.  We are aware of your sensitivities on some of the topics covered by our requests, and we are prepared to discuss a potential resolution of your concerns.  To that end, we propose scheduling a conference call for Monday to discuss our requests and attempt to work out a resolution.

Please let us know if a call at 8 pm Eastern on Monday would work for you and Gary.  (Ken thought it would be useful for both him and Gary to be on the call, and he is not available prior to 8 pm.)