MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains

*Counsel for the Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' OPPOSITION TO CREDITORS' COMMITTEE'S MOTION TO PRECLUDE EVIDENCE OF RELIANCE ON COUNSEL REGARDING THE RMBS SETTLEMENT

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 5

I.    THE DEBTORS DID NOT DISCLAIM ANY INTENT TO OFFER EVIDENCE
REGARDING DIRECTORS' RELIANCE UPON PROFESSIONAL ADVICE ........... 5

    A.    The Debtors Expressly Disclosed Their Intention to Offer Reliance on
Counsel Evidence........................................................................................... 5

    B.    The Debtors Did Not Expressly Disclaim Any Intention to Offer Reliance
on Counsel Evidence....................................................................................... 6

    C.    The Debtors Made a Limited Waiver of the Attorney-Client Privilege so
They Could Offer Evidence of the Directors' Reliance on Counsel ..................... 9

II.    THE DEBTORS DO NOT INTEND TO OFFER UNDISCLOSED PRIVILEGED
EVIDENCE AT TRIAL .................................................................................... 10

    A.    That Critical Negotiations Were Conducted by the Debtors' Attorneys was
Disclosed in Discovery and is Not Privileged .................................................. 11

    B.    Ms. Hamzehpour's Personal Knowledge Regarding Settlement
Negotiations was Disclosed in Discovery and is Not Privileged.......................... 11

    C.    The Legal Advice Provided to Directors at the May 9 Board Meeting was
Disclosed in Discovery After the Privilege was Waived..................................... 12

    D.    The Debtors May Offer Evidence of the Directors' Experience With
Representation and Warranty Liability to Rebut a "Due Care" Challenge ......... 14

    E.    The Expert Testimony of Jeffrey Lipps was Disclosed in Discovery and is
Not Privileged .............................................................................................. 18

CONCLUSION................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arista Records LLC v. Lime Group LLC*,
  No. 06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. April 20, 2011) ............................17

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
  No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009) ................15, 16

*Berman v. Le Beau Inter-America, Inc.*,
  62 B.R. 262 (S.D.N.Y. 1986)...........................................................................15

*Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.)*,
  906 A.2d 27 (Del. 2006) ................................................................................15

*Cinerama, Inc. v. Technicolor*,
  663 A.2d 1134 (Del. Ch. 1994), *aff'd*, 663 A.2d 1156 (Del. 1995).........................15

*Citron v. E.I. DuPont de Nemours & Co.*,
  584 A. 2d 490 (Del. Ch. 1990).........................................................................16

*Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*,
  837 N.Y.S. 2d 15 (1st Dep't 2007) ...............................................................1, 2

*E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*,
  90 F. Supp. 2d 277 (S.D.N.Y. 2000), *aff'd*, 4 Fed. Appx. 81 (2d Cir. 2001) ...............17

*HSBC Bank USA, Inc. v. Fane (In re MF Global Inc.)*,
  466 B.R. 244 (Bankr. S.D.N.Y. 2012) ............................................................18

*In re Cheyenne Software, Inc. Shareholders Litig.*,
  No. C.A. 14941, 1996 Del. Ch. LEXIS 142 (Del. Ch. Nov. 7, 1996) ......................16

*In re Walt Disney Co. Deriv. Litig.*,
  907 A.2d 693 (Del Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).........................14, 15

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
  Nos. 16584, 16588, 1998 Del. Ch. LEXIS 187 (Del. Ch. Oct. 23, 1998) ...............17

*Minn. Invco of RSA #7, Inc. v. Midwest Wireless Holdings, LLC*,
  903 A.2d 786 (Del. Ch. 2006).........................................................................16

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
  478 F.3d 452 (2d Cir. 2007).........................................................................18

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*,
  420 B.R. 112 (Bankr. S.D.N.Y. 2009), *aff'd*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011) .............15

*Vicinanzo v. Brunschwig & Fils, Inc.*,
  739 F. Supp. 891 (S.D.N.Y. 1990) ......................................................................................17

Residential Capital, LLC, and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"), submit this opposition to the Motion of the Official Committee of Unsecured Creditors to Preclude the Debtors from Offering Any Evidence of Their Reliance on Counsel for Advice Concerning The Evaluation, Negotiation or Approval of the RMBS Settlement ("Committee's Br.," ECF No. 2906).

## INTRODUCTION

The Committee's motion is based on two false assertions. The first is the false assertion that the Debtors, on November 4, 2012, "explicitly disclaim[ed]" any intention to offer evidence that the Debtors' directors relied upon the advice of counsel in deciding to approve the RMBS settlement. (Committee's Br. ¶ 1.)

This first assertion is demonstrably false in at least three ways. First, rather than explicitly disclaim any intention to offer evidence of reliance on counsel, the Debtors have done just the opposite. Last September, the Debtors explicitly informed this Court, and the Committee, that it intended to offer reliance on counsel evidence. The Court asked Debtors' counsel: "Are the debtors' directors relying on advice of counsel supporting their approval of the RMBS settlement?" (Ex. 1[1] at 27:14-17.) The Debtors' counsel responded: "Yes, Your Honor." (*Id.*)

Second, the quote offered by the Committee – that the Debtors "explicitly disclaim[ed]" any intention to offer any reliance on counsel evidence – is not from any representation made by the Debtors. (Committee's Br. ¶¶ 1, 19.) It is, instead, lifted from the middle of a quote from a citation to a case (*Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*, 837 N.Y.S. 2d 15, 25 (1st Dep't 2007)) which held that a party had not waived the attorney-client privilege. The case was

---

[1] "Ex. __," refers to the exhibits attached to the Declaration of LaShann M. DeArcy, dated February 20, 2013.

cited by the Debtors as part of its argument to the Court that, contrary to the Committee's position, it had not previously waived the attorney-client privilege by acknowledging reliance on counsel. Nothing in the Debtors' letter, or its citation to *Deutsche Bank*, constituted a representation that the Debtors would not offer reliance on counsel evidence in support of its 9019 motion. And nothing in the letter took back the Debtors' very clear statement to the Court.

And third, on November 5, 2012, this Court entered an order approving a limited waiver of the Debtors' attorney-client privilege. Pursuant to the order, which was agreed to by the Committee, the Debtors "consented to disclose the communications, presentations, and documents exchanged between legal counsel and ResCap's Board of Directors in connection with the board's approval of the RMBS Trust Settlement." (Ex. 2 at 2-3.) The whole point of the waiver, as the Committee fully understood, was to allow evidence regarding the advice received by the Debtors' directors to be offered at trial. Documents relating to those communications were promptly produced, and the Committee was allowed free rein to inquire into the formerly-privileged communications falling within the scope of the waiver.

It is not true, therefore, that the Debtors represented they would not offer any evidence regarding their directors' reliance upon professionals, that the Debtors blocked all discovery of privileged information relating to the settlement, or that the Committee "never saw" the presentation materials provided to the board in connection with the settlement. (Committee's Br. ¶¶ 1, 8, 13.) The Debtors made it explicitly clear that they intended to offer evidence of the directors' reliance on counsel, waived the privilege so as to permit discovery concerning that advice, produced the written presentation made to the board of directors, and permitted full discovery of the legal advice provided to the Debtors at the meeting where the settlement was approved.

2

The Committee's second false assertion is that the Debtors intend to offer, at trial, "still undisclosed evidence completely blocked from discovery." (Committee's Br. ¶ 2.) This assertion is, quite simply, a fabrication. The Debtors do not intend to offer any evidence as to which they have asserted the attorney-client privilege. All five of the examples offered by the Committee prove the point.

The Committee argues, for example, that the Debtors intend to offer evidence showing the "critical negotiations" were conducted by the Debtors' attorneys. (Committee's Br. ¶¶ 2, 11.) That is true, but the evidence is not privileged. The identity of the Debtors' negotiators is not a confidential communication involving legal advice. The Committee also asserts the Debtors will offer the "testimony of Ms. Hamzehpour to reveal what Gary Lee of Morrison & Foerster presumably told her about his negotiations with Kathy Patrick." (Committee's Br. ¶ 14.) That assertion is false. The Debtors will not offer any evidence regarding privileged communications between Mr. Lee and Ms. Hamzehpour. But Ms. Hamzehpour was a direct participant in many of the key negotiations with Ms. Patrick and will be able to testify, of her own knowledge, about those negotiations (which, of course, are not privileged). Moreover, some of the communications between Mr. Lee and Ms. Hamzehpour were not privileged because they were not kept confidential from third parties. Ms. Hamzehpour is free to testify about those communications as well.

The Committee also claims the Debtors will offer evidence that the directors approved the RMBS settlement after receiving the "advice and counsel of their legal and financial advisors." (Committee's Br. ¶¶ 2, 11.) That is, of course, true, but the Debtors waived the privilege as to that advice and allowed full discovery regarding the advice given to the directors by the Debtors' lawyers and other professionals. The Committee complains, though, that the

3

Debtors also will offer evidence about the directors' years of experience concerning representation and warranty liability. (Committee's Br. ¶ 12.) That evidence is not privileged -- it is set out in board minutes, settlement agreements, SEC filings, and other documents produced in discovery. Moreover, it is entirely appropriate to rebut a charge that the directors acted without "due care" by showing the process by which the board reached its decision. That can be done by showing the directors received, over time, presentations from counsel, even if the privileged substance of those presentations is not disclosed.

Finally, the Committee argues that the Debtors will improperly offer evidence from Jeff Lipps regarding the strengths and weaknesses of the Debtors' legal defenses. (Committee's Br. ¶ 15.) That is true, but the evidence is not privileged and was fully disclosed to the Committee in discovery. Mr. Lipps did not advise the Debtors regarding the RMBS settlement; accordingly, none of his testimony concerns confidential communications with the Debtors. Mr. Lipps is, instead, testifying as an expert witness, and the substance of his testimony was fully disclosed in three expert reports and a four-hour deposition. The Committee will not be surprised by anything he says at trial.

The Committee's motion rests on the false claim that the Debtors have changed their position regarding their directors' reliance on counsel. That is not true. It rests on the false claim that the Debtors improperly withheld evidence from discovery and now intend to offer that evidence at trial. That is not true either.

The Debtors will offer, at trial, non-privileged evidence regarding the negotiations leading up to the RMBS settlement. They will offer non-privileged evidence showing their directors acted with due care in approving the settlement. And they will offer formerly-privileged information regarding the legal advice provided to the Debtors' directors in

4

connection with their approval of the settlement, pursuant to the stipulation of limited waiver agreed to by the Committee and approved by the Court.

There is, therefore, no basis for the Committee's motion or for the relief it seeks. The motion should therefore be denied.

## ARGUMENT

I.    **THE DEBTORS DID NOT DISCLAIM ANY INTENT TO OFFER EVIDENCE REGARDING DIRECTORS' RELIANCE UPON PROFESSIONAL ADVICE.**

The Committee argues it was promised by the Debtors that they would not offer any evidence showing their directors relied on legal advice in approving the RMBS settlement. They claim they "withdrew" their motion to compel production of privileged documents based on that representation, and that "discovery proceeded without any of the withheld documents." (Committee's Br. ¶ 1.)

Every one of the Committee's assertions is false. The Debtors informed the Court, and the Committee, that they *would* offer evidence of the directors' reliance on counsel. The Committee then attempted to use that statement to argue the Debtors had made a broad waiver of the attorney-client privilege. The Committee was wrong in making that argument and eventually backed down. Instead, the Committee agreed to a limited privilege waiver covering the legal advice and presentations of counsel at the board meeting at which the settlement was approved. The waiver also extended to the estimates of damages exposure provided to the board of directors.

### A.    The Debtors Expressly Disclosed Their Intention to Offer Reliance on Counsel Evidence.

The Committee has been pushing these same privilege issues for at least six months. Last September, the Committee filed a status report with the Court in which it argued, among other things, that the Debtors had waived the attorney-client privilege by asserting a reliance on

5

counsel defense.  The Court picked up on this argument and questioned the Debtors' counsel

about it at a status conference held on September 19, 2012:

> THE COURT:  Are the debtors' directors relying on advice of
> counsel supporting their approval of the RMBS settlement?
>
> MR. PRINCI:  Yes, Your Honor.
>
> THE COURT:  Doesn't that waive the privilege?
>
> MR. PRINCI:  We don't believe so and, you know, I would say
> this.  These are very important and not simple issues to address and
> if this is –
>
> THE COURT:  I'm not going to rule on the issue now.

(Ex. 1 at 27:14-22.)

So the Committee has known, since last September, that the Debtors will offer evidence

of the directors' reliance upon the advice of counsel and other professionals.  The issue, going

forward, was whether the Debtors' decision to offer that evidence constituted a waiver of the

attorney-client privilege.

**B.    The Debtors Did Not Expressly Disclaim Any Intention to Offer Reliance on
Counsel Evidence.**

The Committee returned to the issue last November.  In a letter to the Court, the

Committee's counsel argued that the Debtors' earlier disclosure – that they intended to offer

reliance on counsel evidence – constituted a broad waiver of the attorney-client privilege:

> [T]he Debtors have expressly conceded to the Court that they were
> "relying on advice of counsel supporting their approval of the
> RMBS Settlement." September 19, 2012 Hr'g Tr. at 28.  Under
> the well-established "sword-shield" doctrine, they cannot
> simultaneously rely on legal advice to support the reasonableness
> of their judgment in entering into the settlement and also refuse to
> disclose the advice they received in that regard.

(Ex. 3 at 3.)  The Committee's letter ended with a request for an order compelling production of

a broad swath of privileged materials.

6

The Debtors responded two days later. Because the Committee savagely misquotes the

Debtors' response, a careful review of the letter is in order. It states:

> The Debtors' motion for approval of the RMBS settlement does
> not put attorney advice regarding those agreements at issue or
> waive the privilege. As explained in *In re Washington Mutual,
> Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011):
>
>> It is not necessary for the Debtors to waive the
>> attorney/client privilege by presenting testimony regarding
>> what counsel felt was the likelihood they would win on the
>> claims being settled. . . . It is sufficient to present the Court
>> with legal positions asserted by each side and the facts
>> relevant to those issues. The Court itself can evaluate the
>> likelihood of the parties' prevailing in that litigation to
>> determine whether the settlement is reasonable.
>
> *See also Deutsche Bank Trust Co. v. Tri-Links Investment Trust,*
> 837 N.Y.S. 2d 15, 21-25 (App. Div. 2007) (assertion of
> reasonableness of amounts expended to defend and settle action
> did not waive attorney-client privilege).
>
> Nor will the presentation of evidence that the Debtors sought the
> advice of counsel waive the privilege. A party does not waive the
> privilege merely by presenting evidence that it sought the advice of
> counsel, but only by affirmatively asserting that its actions were
> reasonable *because* it relied on an opinion of counsel. *See
> Aristocrat Leisure Ltd. V. Deutsche Bank Trust Co. Americas, et
> al.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y.
> Sept. 28, 2009).
>
> . . . .
>
> Nor, as the Committee suggests, did the Debtors waive the
> privilege by answering "Yes" at a prior hearing to the Court's
> impromptu question, "Are the debtors' directors relying on advice
> of counsel supporting their approval of the RMBS settlement?"
> Courts have regularly rejected waiver claims based on similar
> statements in the course of litigation that do not represent a
> formally asserted claim or defense. *Miteva v. Third Point
> Management Co., LLC*, 218 F.R.D. 397-98 (S.D.N.Y. 2003)
> (rejecting waiver claim based on deposition testimony of
> defendant's principal and sole owner that defendant "intended to
> rely on that advice of counsel as a defense in this action");
> *Deutsche Bank*, 837 N.Y.S. 2d at 25 (rejecting argument that
> plaintiff waived privilege through deposition testimony of

7

> plaintiff's managing director that he "rel[ied] on the advice of
> counsel in determining whether or not to approve . . . the
> settlement of the [underlying] action"). The court noted in
> *Deutsche Bank* that the plaintiff had not "stated an intention to use
> the advice of counsel to prove the reasonableness of the
> [underlying] settlement, and it now explicitly disclaims any such
> intention." *Id.* at 27. The same is true here.

(Ex. 4 at 8-9.)

Several things are clear from these passages. First, the Debtors had not waived the

attorney-client privilege. Second, the Debtors intended to present evidence at trial that their

directors sought advice of counsel, and the Debtors did not believe offering that evidence would

constitute a waiver. Third, offering reliance on counsel evidence requires a privilege waiver only

if the evidence is offered to prove the reasonableness of the settlement amount, rather than just

the fact that legal advice was sought. And finally, the Debtors did not, as the Committee claims,

expressly disclaim any intention to offer reliance on counsel evidence at trial.

The Committee says it relied on these passages in deciding to withdraw its motion to

compel production of privileged documents. (Committee's Br. ¶¶ 1, 9.) That is not true. What

actually happened is that, on November 5 – the day after the Debtors' letter to the Court – the

Court entered the stipulated limited waiver order. (Ex. 2.) The Court also held an off-the-record

discovery conference on that day. At the conference, the Court heard extensive argument

regarding a clawback request made by Ally Financial Inc. ("Ally"). At the Court's direction, a

lengthy meet-and-confer session was held the following day, at which Ally withdrew large parts

of its clawback request and the Committee abandoned the remainder of its opposition to Ally's

request. On November 7, the parties notified the Court that the discovery matters had been

resolved. (Ex. 5.)

8

It was thus the entry of the limited waiver order, and the successful meet-and-confer session, that caused the Committee to drop its privilege motion, not any claimed misrepresentation by the Debtors.

### C.    The Debtors Made a Limited Waiver of the Attorney-Client Privilege so They Could Offer Evidence of the Directors' Reliance on Counsel.

On November 5, the Court entered an order approving a stipulation for the limited waiver of the attorney-client privilege. The impetus for the stipulation, of course, was the Debtors' statement, at the September 19 hearing, that it intended to offer reliance on counsel evidence at trial. The Court, of course, also encouraged the Debtors to make such a waiver. (Ex. 1 at 27:24-28:14.)

In the stipulation, the Debtors agreed to disclose "communications, presentations, and documents exchanged between legal counsel and the Board of Directors of [ResCap] in connection with its approval of the RMBS Trust Settlement and the Plan Support Agreements." (Ex. 2 at 2.) The waiver extended to:

> a.   Legal advice, presentations of counsel, and communications at the May 9, 2012, meeting of the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements;
>
> b.   Estimates of damages exposures and presentation materials prepared by Jeff Cancelliere and/or FTI Consulting in April 2012 for use by counsel in negotiating the RMBS Trust Settlement, the contents of which were summarized by counsel in oral communications and presentations to members of the ResCap Board of Directors;
>
> c.   Legal advice and communications of counsel to the ResCap Board of Directors in connection with amendments to the RMBS Trust Settlement.

(*Id.* at 4.)

sf-3251887

The Debtors promptly produced the documents covered by the waiver and allowed full

and extensive questioning of the directors (and other persons at the board meeting) regarding the

presentation made by counsel, and legal advice received by them, at the meeting at which the

settlement was approved.

The Committee pretends that it never stipulated to this limited waiver. It argues

repeatedly that it was forced to conduct discovery "without any of the withheld documents,"

without seeing the "advice and presentation materials" provided to the directors, and without

access to the communications shared with the directors in connection with their approval of the

settlement. (Committee's Br. ¶¶ 1, 13.) That simply is not true. The Debtors have produced all

of the documents covered by the waiver, produced the presentation materials used with the

board, and allowed full questioning of the directors and other board meeting attendees regarding

the professional advice provided to the directors when they approved the settlement.

The fundamental premise of the Committee's motion – that the Debtors promised not to

offer evidence of reliance on counsel and prevented discovery regarding that reliance – is

disproved by the evidence. The Debtors plainly disclosed their intention to offer evidence that

their directors relied on counsel and waived the attorney-client privilege in order to make

counsel's advice available in discovery.

## II.    THE DEBTORS DO NOT INTEND TO OFFER UNDISCLOSED PRIVILEGED EVIDENCE AT TRIAL.

The Committee says the Debtors intend to offer, at trial, "still undisclosed evidence

completely blocked from discovery." (Committee's Br. ¶ 2.) This assertion is not true. The

Debtors do not intend to offer any evidence as to which they have asserted the attorney-client

privilege. All the evidence the Debtors will offer at trial either never was privileged in the first

place or is covered by the Court's limited waiver order.

sf-3251887

The Committee has combed through the Debtors' brief supporting their 9019 motion and identified five "alleged facts – nowhere found in the record – involving the legal advice" provided to the Debtors' directors. (Committee's Br. ¶ 10.) A review of these five facts shows the evidence is "in the record," and was either never privileged or falls within the waiver order agreed to by the Committee and entered by the Court.

### A.    That Critical Negotiations Were Conducted by the Debtors' Attorneys was Disclosed in Discovery and is Not Privileged.

The Committee first argues that the Debtors improperly intend to offer evidence showing that "critical negotiations" were conducted by the Debtors' attorneys. (Committee's Br. ¶¶ 2, 11.) They complain the Debtors will offer "proof that the 'critical negotiations' for the Settlement were handled by their attorneys," and that "the Debtors relied exclusively on Ms. Hamzehpour and their outside counsel at Morrison & Foerster." (*Id.*)

It is true that Ms. Hamzehpour and Mr. Lee handled the critical negotiations with counsel for the investors. But the identity of the Debtors' lead negotiators was never privileged information. The evidence is "in the record," is plain from the written communications produced in discovery, and was covered exhaustively in depositions. The Committee has no valid complaint here.

### B.    Ms. Hamzehpour's Personal Knowledge Regarding Settlement Negotiations was Disclosed in Discovery and is Not Privileged.

The Committee next asserts the Debtors will improperly offer the "testimony of Ms. Hamzehpour to reveal what Gary Lee of Morrison & Foerster presumably told her about his negotiations with Kathy Patrick." (Committee's Br. ¶ 14.) That assertion is false.

Debtors will not offer any evidence regarding privileged communications between Mr. Lee and Ms. Hamzehpour. But Ms. Hamzehpour was a direct participant in many of the key negotiations with Ms. Patrick and will be able to testify, of her own knowledge, about those

11

negotiations. As the Committee acknowledges, "the 'key negotiations' for the RMBS Settlement occurred during a 'marathon' meeting held on May 8 and 9, 2012 at Morrison & Foerster's offices." (*Id.*) Ms. Hamzehpour was present for those negotiations and can testify regarding her personal observations, including the offers made by Ms. Patrick on behalf of the investors and the counter-offers made by Mr. Lee on behalf of the Debtors. The attorney-client privilege does not protect these settlement negotiations, and the Debtors never asserted privilege as to these communications. Moreover, as the Committee well knows, some of the communications between Mr. Lee and Ms. Hamzehpour were not privileged because they were not kept confidential from third parties. Ms. Hamzehpour is free to testify about those communications as well.

**C.      The Legal Advice Provided to Directors at the May 9 Board Meeting was Disclosed in Discovery After the Privilege was Waived.**

The Committee says the Debtors will offer evidence that the directors approved the RMBS settlement after receiving the "advice and counsel of their legal and financial advisors." (Committee's Br. ¶ 11.) The Committee complains the Debtors will show "that the directors who approved the Settlement did so based on extensive information they had gleaned from the 'advice and counsel of their legal and financial advisors.'" (*Id.* ¶ 2.)

The Debtors will certainly offer evidence showing that the directors relied on the advice and counsel of their lawyers and other professionals in connection with their approval of the settlement. That is the whole reason, of course, that the Debtors consented to a limited waiver of the attorney-client privilege. That waiver covered, among other things, all evidence concerning the "legal advice, presentations of counsel, and communications at the May 9, 2012, meeting of the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements." (Ex. 2 at 4.) The evidence the Debtors will offer at trial

12

regarding the advice and counsel given to the directors will be evidence that falls within the scope of the limited waiver agreed to by the Committee and approved by the Court.

So it is not true that the Debtors have "blocked" discovery regarding the advice and counsel provided to the Debtors' directors in connection with their approval of the settlement. The written presentation provided to the directors at the board meeting was produced in discovery, and the directors (and other attendees) were subjected to full questioning at their depositions regarding the presentations made at the board meeting. Indeed, the board presentation has been offered by the Debtors as an exhibit. (Ex. 6 at RC-9019_00054004.) The Committee has had full opportunity to conduct discovery regarding the advice and counsel provided to the Debtors' directors regarding their approval of the settlement.

The Committee also complains that Thomas Marano was not allowed to answer certain questions at his deposition that called for privileged communications with counsel. (Committee's Br. at ¶ 9.) The Committee says those questions concerned "communications Mr. Marano had with counsel that informed his decision to approve the RMBS Settlement." (*Id.*) That is not true. A quick review of the transcript shows that the questions called for privileged information regarding: potential contribution and indemnity claims against Ally; accounting reserves for loan repurchase demands; and potential liability for contract claims among a parent corporation and its subsidiaries. (*See* Committee's Br., Ex. E.) And the instruction Mr. Marano received from counsel was that he could testify to legal advice "he gained…from presentations that were made to the board" but not legal advice "he gained…from counseling he had as CEO." (*Id.* at 111:3-7, 123:22-124:9) ("just to be clear, is that to the extent that the board was advised in connection with the board's decisions you can make inquiry into that . . . to the extent that he's

13

advised outside of a board presentation we have not and do not intend to waive the privilege in that regard".)

The Committee also argues that the Debtors want the Court to "treat as fact their mere say-so that '[t]he directors' advisors all recommended the settlement as fair, equitable, and in the best interests of the estate.'" (Committee's Br. ¶ 13.) Not true. The Debtors do not want the Court to accept this fact only on their word. The Debtors will offer evidence showing that the Debtors' lawyers and financial advisors all recommended the settlement to the Debtors' directors. Those recommendations were made at the May 9, 2012, board meeting. The Debtors waived the privilege as to those recommendations; the Committee has those recommendations and has conducted full discovery regarding them. The Committee cannot now argue that no evidence on this subject should be allowed.

### D.    The Debtors May Offer Evidence of the Directors' Experience With Representation and Warranty Liability to Rebut a "Due Care" Challenge.

The Committee complains that the Debtors will offer evidence about the directors' years of experience concerning representation and warranty liability. (Committee's Br. ¶ 12.) But the Debtors are allowed to offer evidence of the directors' knowledge and experience, based on publicly-available documents and information, without waiving the attorney-client privilege. The Debtors may do this to rebut the Committee's allegations that the directors approved the settlement without exercising "due care" – that is, without gathering enough information, without deliberating long enough, or without enough analysis. The Debtors may properly offer evidence of the directors' process, including their prior knowledge and experience, to respond to the Committee's due care challenge to their approval of the settlement.

The Committee's attack on the directors' decision to approve the settlement necessarily focuses on the *process* by which the directors' decision was made. *See, e.g., In re Walt Disney*

14

*Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del Ch. 2005) (due care inquiry does not permit review of

the substance, or merits, of the challenged decision), *aff'd*, 906 A.2d 27 (Del. 2006); *Official*

*Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420

B.R. 112, 146-47 (Bankr. S.D.N.Y. 2009)*, aff'd*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011).  A

director facing such a "process" challenge may rebut it by offering evidence that he or she sought

the advice of counsel.  Under Delaware law, a director is protected when he relies "in good faith

upon information presented to them from various sources, including 'any other person as to

matters the member reasonably believes are within such person's professional or expert

competence and who has been selected with reasonable care by and on behalf of the

corporation.'"  *Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.*), 906 A.2d 27, 60 (Del.

2006) (*quoting* 8 Del. C. § 141(e)); *see also Cinerama, Inc. v. Technicolor*, 663 A.2d 1134, 1142

(Del. Ch. 1994) (board's "reasonable reliance upon expert counsel" is "pertinent factor in

evaluating whether" the board "met a standard of fairness in their dealings with respect to

corporate powers"), *aff'd*, 663 A.2d 1156 (Del. 1995); *Berman v. Le Beau Inter-America, Inc.*,

62 B.R. 262, 268 (S.D.N.Y. 1986) (directors had a "right . . . to rely upon the financial

statements of the accountants and . . . the reports of their highly qualified attorneys").

    A director need not waive the attorney-client privilege in order to offer such rebuttal

evidence.  Indeed, courts commonly allow directors to rebut due care challenges by showing

their processes included consultations with counsel, even though the substance of the counsels'

advice is not disclosed.  For example, in *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*

*Ams.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009), the plaintiff

sought to exclude evidence that the defendant had sought the advice of counsel without waiving

the attorney-client privilege.  The court rejected the argument, holding that "merely stating that

15

individual Bondholders sought advice of counsel on a particular topic does not place the actual

content of the advice at issue or otherwise waive privilege." *Id.* at *45. *See also Minn. Invco of

*RSA #7, Inc. v. Midwest Wireless Holdings, LLC*, 903 A.2d 786, 797-98 (Del. Ch. 2006) (no

waiver of attorney-client privilege; "evidence at trial shows that each [director] approved the

amendment, upon the advice of counsel and Bear Stearns . . . the court concludes that the board

members were fully informed and acted in the best interest of" the company); *In re Cheyenne*

*Software, Inc. Shareholders Litig.*, No. C.A. 14941, 1996 Del. Ch. LEXIS 142, at *8-9 (Del. Ch.

Nov. 7, 1996) (no waiver of attorney-client privilege; board of directors "retained two

investment banks and legal counsel for advice"); *Citron v. E.I. DuPont de Nemours & Co.*, 584

A. 2d 490, 510-12 (Del. Ch. 1990) (due care challenge rejected without waiver of attorney-client

privilege where directors were "counseled by [legal and financial] advisors").

        The Debtors' directors have had years of experience in dealing with claims for breaches

of representations and warranties. They have dealt with dozens of lawsuits, settlements with

Fannie Mae and Freddie Mac, settlements with the United States Department of Justice and the

Attorneys General of forty-nine states, and settlements with the Federal Reserve and other

regulators. They have received numerous presentations and updates regarding the Debtors'

exposure to potential liability in representation and warranty cases, and have also reviewed and

approved SEC filings and financial statements concerning that potential exposure. The Debtors

can prove up all these facts with non-privileged evidence. The Debtors are permitted to offer

this non-privileged evidence regarding the directors' knowledge and experience without having

to waive the attorney-client privilege. The proffered evidence will rebut the Committee's claim

that the directors acted without due care from a process standpoint, without getting into the

substance of attorney-client communications.

16

The Committee relies on cases in which a defendant invoked a "good faith" defense based on the defendant's asserted belief in the lawfulness of its conduct. In *Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 1642434 (S.D.N.Y. April 20, 2011), for example, the defendants attempted to assert, at the damages phase of a copyright infringement case, their good faith belief in the lawfulness of their conduct despite having asserted the privilege for communications with counsel. Similarly, in *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000), *aff'd*, 4 Fed. Appx. 81 (2d Cir. 2001), the defendant asserted, at trial, a good faith defense to willful trademark infringement based on advice of counsel despite having asserted the privilege with regard to such advice. In *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F. Supp. 891 (S.D.N.Y. 1990), the defendant insurance company asserted advice of counsel in defense of a bad faith claim in an ERISA lawsuit without offering any opinion of counsel. And in *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, Nos. 16584, 16588, 1998 Del. Ch. LEXIS 187 (Del. Ch. Oct. 23, 1998), the court denied a motion *in limine* and held that, even though the defendants refused to waive the privilege, they could still "refer to the fact that [the board] sought and received legal advice with respect to various issues." *Id.* at *1.

In all these cases, the defendants' state of mind was directly in issue. This is not such a case. The Debtors' directors are entitled to the protections of the business judgment rule, and the Committee has sought to overcome the presumptions of that rule by showing a lack of due care. The directors may rebut that charge by showing their decision-making process, which included reliance on attorneys and other professionals, was reasonable and within the protections of the business judgment rule.

17

E.    **The Expert Testimony of Jeffrey Lipps was Disclosed in Discovery and is Not Privileged.**

Finally, the Committee argues that the Debtors will improperly offer evidence from Jeff Lipps regarding the strengths and weaknesses of the Debtors' legal defenses. (Committee's Br. ¶ 15.) According to the Committee, the Debtors "remain silent . . . as to which of their witnesses will be asked to testify at trial to the understanding of RMBS claims they supposedly obtained from Mr. Lipps or other counsel." (Committee's Br. ¶ 15.)

The Committee's argument misconstrues both the nature of the Debtors' burden of proof and the evidence that the Debtors will present. The Debtors have the burden of showing, under *Iridium*, that the settlement strikes a fair "balance between the litigation's possibility of success and the settlement's future benefits." *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007). That is an objective factor. *See HSBC Bank USA, Inc. v. Fane (In re MF Global Inc.)*, 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) ("the court must inform itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated"). The Debtors may offer the expert testimony of Mr. Lipps concerning the litigation risks and potential benefits of further litigation to show that the proposed settlement strikes the proper balance of risk and reward. His expert testimony is directly relevant to this important *Iridium* factor.

But Mr. Lipps will not be offered to describe any legal advice he gave to the Debtors' directors, because Mr. Lipps did not advise the Debtors on the proposed RMBS settlement. Accordingly, the Debtors will not, as the Committee claims, offer any witness to testify "to the understanding of RMBS claims they supposedly obtained from Mr. Lipps." (Committee's Br. ¶ 15.)

18

Of course, this also means that no evidence regarding Mr. Lipps' testimony has been withheld from discovery. Mr. Lipps prepared three lengthy expert reports and submitted to a four-hour deposition. The Committee knows full well what he will say. And the Debtors will not offer any evidence from Mr. Lipps that was not provided in discovery.

## CONCLUSION

The Committee's motion rests on the false claim that the Debtors have changed their position regarding their directors' reliance on counsel and improperly withheld evidence during discovery. The evidence shows these charges are false.

The Debtors should be allowed to offer, at trial, non-privileged evidence regarding the negotiations leading up to the RMBS settlement. They should be allowed to offer non-privileged evidence showing their directors acted with due care in approving the settlement. And they should be allowed to offer formerly-privileged information regarding the legal advice provided to the Debtors' directors in connection with their approval of the settlement, pursuant to the stipulation of limited waiver agreed to by the Committee and approved by the Court.

sf-3251887

There is no basis for the Committee's motion or for the relief it seeks.  The motion should

therefore be denied.

Dated: New York, New York            MORRISON & FOERSTER LLP
February 20, 2013


                                     By: /s/ Darryl P. Rains
                                         Gary S. Lee
                                         Anthony Princi
                                         Darryl P. Rains
                                         MORRISON & FOERSTER LLP
                                         1290 Avenue of the Americas
                                         New York, New York 10104
                                         Telephone: (212) 468-8000
                                         Facsimile: (212) 468-7900

                                         *Counsel to the Debtors and Debtors
                                         in Possession*

sf-3251887