Hearing Date and Time:  February 28, 2013 at 2:00 p.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

    and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF AD HOC GROUP OF JUNIOR SECURED NOTEHOLDERS TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

      The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"),[1] by and through its undersigned counsel, hereby files this objection (the "Objection") to the Motion[2] of

---

[1] The Ad Hoc Group is comprised of certain entities that hold or manage holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008.  The Junior Secured Noteholders' claim is now equal to 113.5% of the face amount of the bonds and is currently increasing by virtue of the accrual of post-petition interest at the rate of approximately $250 million per year.

the debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") (i) for entry of an order (A) further extending the exclusive periods during which only the Debtors may file a chapter 11 plan by an additional ninety (90) days, and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof by ninety (90) days following the expiration of such period.  As and for its Objection, the Ad Hoc Group respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtors' latest request for yet another extension of exclusivity rests principally on a false assumption – that permitting the expiration of exclusivity at this critical juncture would be "detrimental" to current plan negotiations with "catastrophic" consequences for any consensual global resolution to these Chapter 11 Cases.  Motion pp. 5, 19.  While the Debtors' ultimate objective – a global consensual resolution to these cases' complex intercreditor and interdebtor issues – is laudable, their proposed approach is simplistic and deficient.  It is the expiration of exclusivity that will create the kind of balanced negotiation dynamic necessary to unite these cases' disparate creditor groups around a central plan construct.

A further extension of exclusivity, on the other hand, will only enshrine the *status quo* by encouraging parties to retrench, rather than reevaluate, their respective bargaining positions.  For the past two months, the Ad Hoc Group has patiently participated in a plan mediation process that has, to date, not resulted in the global compromise envisioned by the Court at its inception.  Perversely, these well-intentioned efforts to achieve consensus through mediation have seemingly emboldened certain parties to harden their negotiating positions, secure in the

---

[2] Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 2918] (the "Motion").  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

knowledge that the Debtors' present plan construct – with its non-consensual third party release provisions with Ally – remains the only show in town. Even the best efforts of a sitting bankruptcy judge and experienced and respected mediator have been unable to break this impasse.

As before, the Ad Hoc Group continues to support a rapid and consensual resolution of plan issues in these Chapter 11 Cases. But the surest path to "nuclear war" is that offered by the Debtors. See Dec. 20 H'rg Tr. 45:3 (Glenn, J.). To create a negotiating dynamic amenable to peace, certain parties in interest in these Chapter 11 Cases must first be incentivized to reconsider their present negotiation positions by facing the prospect of competing alternative plan structures, with potentially adverse treatment for certain constituencies. The Court should thus deny the Motion.

## OBJECTION

"Cause" does not exist to warrant any extension of the Debtors' exclusivity in light of the present impasse in these chapter 11 plan negotiations. Section 1121(d) of the Bankruptcy Code permits a court "for cause [to] reduce or increase the 120-day period" during which a chapter 11 debtor has the exclusive right to file and solicit a plan of reorganization. 11 U.S.C. § 1121(d). "Cause" is not defined in the Bankruptcy Code, and the determination of whether it exists is in a bankruptcy court's discretion. See In re Adelphia Commc'ns Corp., 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006). Among the factors considered by courts in determining whether cause exists to extend exclusivity is whether a debtor has made progress in negotiations with creditors of plan-related issues. See Adelphia, 352 B.R. at 587 (listing factors including "(c) the existence of good faith progress toward reorganization" and "(f) whether the debtor has made progress in negotiations with creditors").

The Court implicitly relied on the Adelphia factor focusing on progress in plan negotiations in granting the Debtors most recent request for an extension of exclusivity, hoping that the simultaneous appointment of a mediator could spur a breakthrough. See Dec. 20 H'rg Tr. at 44:15-45:17 (Glenn, J.) (stating that debtors had satisfied Adelphia factors and focusing on progress of plan negotiations); Id. at 53:16 – 54:1 (Glenn, J.) (expressing hope that mediator could "close the gap" between negotiating parties). The Court also expressed hope that the prospect of "nuclear war" absent a global deal could spur progress by encouraging parties to compromise on their negotiating positions. See id. at 45:3-19 (Glenn, J.).

Mediation has not, to date, spawned any breakthrough. Despite the Court's warnings, the prospect of "nuclear war" appears never to have been taken seriously by certain parties. Absent a meaningful possibility of a potentially adverse plan construct, certain parties simply lack the incentive to compromise their bargaining positions.[3] In fact, even the Debtors admit that progress has been nonexistent with respect to the single-most critical requirement for settlement -- the participation of constituency principals with settlement authority. See Motion p. 4. Unfortunately, the Debtors themselves are primarily responsible for that lack of participation. As before, certain Ad Hoc Group members' principals remain willing to participate in immediate plan negotiations. The Debtors, however, have effectively barred these principals from plan

---

[3] The lack of progress in plan negotiations may also be attributable to the conflicts that characterize these Chapter 11 Cases. It remains unclear whether and to what extent the Debtors, several of whose key employees remain financially interested in Ally, are capable of effectively responding to Ally's aggressive posturing. See Ally Financial Inc., Earnings Call Transcript, dated February 5, 2013, at p.3 (Ally chief executive officer Mr. Carpenter) ("Ally can withdraw the offer at any time … if we have to go the litigation route, we will"); *Objection of the Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 2824] ("RMBS Objection") at n.16. The Debtors have not rectified these persistent conflicts, notwithstanding the Ad Hoc Group's repeated protests. See, e.g., *Omnibus Response of the Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for the Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof and Debtors' Motion for the Appointment of a Mediator* [Docket No. 2406] at n.2 (discussing conflicts issues inherent in resolution of these chapter 11 cases); RMBS Objection at ¶¶ 3, 16-33 (noting conflicts among Debtor estates and with respect to Ally).

negotiations by continuing to insist that they first sign overly-broad, non-standard confidentiality agreements.

Permitting exclusivity to expire can and will incentivize all parties to reassess their respective negotiating positions. As in the Lehman Brothers chapter 11 cases, the submission of competing alternative plan structures is the means to drive to a consensual resolution. In the Lehman Brothers cases, exclusivity expired and two groups of creditors proposed competing alternative plans of reorganization. See In re Lehman Bros. Hldngs., Inc. Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.), *Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by the Ad Hoc Group of Lehman Brothers Creditors*, dated December 15, 2010, [Docket No. 13504]; *Joint Chapter 11 Plan for Lehman Brothers Holdings Inc. and its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC Proposed by Non-Consolidation Plan Proponents*, dated April 25, 2011, [Docket No. 16229]. The existence of those competing plans raised the prospect of costly and zero-sum litigation – thereby fostering the broad creditor consensus that had escaped the prior efforts of those debtors. See In re Lehman Bros. Hldngs., Inc. Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.), Sep. 19, 2012 H'rg. Tr. at 29:13 – 20 (Peck, J.) ("the dialectic of a consolidation plan, a non-consolidation plan and a plan in the middle prove to be a useful means to putting this case to a culmination of consensus"). As in Lehman, the submission of competing plan structures here need not entail a plan fight, but will assuredly cause parties to reassess their respective bargaining positions.

The time has thus come for the Court to enable the submission of plans other than the Debtors' preferred plan construct. The Motion is the Debtors' *third* request to extend

exclusivity. See *Debtors' Motion For the Entry of an Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 1248]; *Debtors' Motion For the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 2355]. The day of the hearing on this Motion will be the 290th day of these Chapter 11 Cases. 170 days will have passed since the Court first extended the Debtors' exclusive period. *Order Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof*, dated September 11, 2012, [Docket No. 1413]. Since that first extension, the pre-petition plan support agreement with certain Junior Secured Noteholders has been terminated. See Sep. 27 H'rg Tr. at 21:17 – 22:2 (counsel to Ad Hoc Group) (informing the Court that the Junior Secured Noteholder pre-petition plan support agreement has been terminated). The Debtors' plan support agreement with the steering committee of RMBS claimants has not been presented to the Court for approval and appears to have been breached. See Jun. 25 H'rg Tr. at 16:23 – 17:4 (Debtors' counsel) (stating that Debtors have decided to refrain from seeking court approval of the Debtors' motion to assume the plan support agreements). The Creditors' Committee will soon be filing a complaint challenging certain aspects of the liens and obligations owing to the Junior Secured Noteholders. See *Order Authorizing the Official Committee of Unsecured Creditors to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates* [Docket No. 2518].

   Meanwhile, the cost of the Debtors' single-minded pursuit of the *status quo* continues to be steep. The Junior Secured Noteholders alone have accrued post-petition interest in the amount of more than $180 million since the petition date, including more than $100 million since the Court first extended the Debtors' exclusive periods in September. Between the filing of these cases and December 31, 2012, the Debtors have incurred reorganization expenses of

approximately $285 million and losses from continuing operations prior to income tax expense of approximately $769 million – averages of approximately $40 million per month and $100 million per month, respectively.  See *Monthly Operating Report for Residential Capital, LLC et. al. for the Period December 1, 2012 through December 31, 2012* [Docket No. 2721].  And, additional costly litigation looms imminently, with the RMBS Settlement scheduled for trial in mid-March.  See *Fourth Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlements* [Docket No. 2528].

Faced with this costly lack of progress, the Debtors have desperately enlisted the help of yet another professional -- bankruptcy practitioner Lewis Kruger -- to assist the estates in their global plan negotiations.  See *Notice of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No. 2887].  It is unclear how yet another lawyer could accomplish what has eluded the Debtors' present army of advisors --  the creation of an environment in which parties are properly incentivized to come to the table with realistic assessments of their relative bargaining positions.  In any event, the substitution of a new estate representative for its existing team of advisors with respect to plan negotiations hardly constitutes "cause" for an extension of exclusivity.

As ever, the Ad Hoc Group remains supportive of a consensual resolution and cautiously optimistic that one could soon be attained.  But the relief requested in the Motion does not further that objective.  Instead, the surest path to consensual resolution requires the expiration of exclusivity and the resulting possibility of alternative competing plans. The Court should deny the Motion.

12-12020-mg    Doc 2997    Filed 02/21/13    Entered 02/21/13 16:01:42    Main Document
Pg 8 of 8

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Ad Hoc Group requests that the Court deny the Motion.

Dated:  February 21, 2013
      New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JS – 6031)
Harrison L. Denman (HD – 1945)

   and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders