Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ALLY FINANCIAL, INC'S REPLY TO THE OBJECTION OF THE AD HOC COMMITTEE OF JUNIOR SECURED NOTEHOLDERS TO THE DEBTORS' SECOND SUPPLEMENTAL MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF RMBS TRUST SETTLEMENT AGREEMENTS**

**TO THE HONORABLE JUDGE GLENN,
UNITED STATES BANKRUPTCY JUDGE:**

Non-debtor Ally Financial, Inc. ("Ally") submits this reply to address certain arguments made in the Objection Of The Ad Hoc Group Of Junior Secured Noteholders (the "Ad Hoc Group") To Debtors' Pursuant to Fed. R. Bankr. P. 9019 For Approval of RMBS Trust Settlement Agreements. In support of its reply, Ally respectfully states as follows:

## RESPONSE TO OBJECTION

The Ad Hoc Group's objection does little more than rehash the other Objecting Parties' arguments and misrepresentations of the factual record relating to Ally's discrete role in the RMBS Trust Settlement negotiations that resulted in the agreements between ResCap and the investors in the RMBS Trusts for which the Debtors seek approval. Ally submits this limited reply to again address—and correct—statements that contradict the evidentiary record.

*First*, the Ad Hoc Group's claim that Ally "played the primary role" (Obj. at ¶ 14) in the RMBS Trust Settlement negotiations is simply incorrect. As described in Ally's previous brief, the objecting parties can point to no witness testimony supporting their claim that Ally controlled the negotiations of the RMBS Trust settlement. Indeed, the evidence demonstrates that ResCap was represented throughout the negotiations by experienced independent counsel from Morrison & Foerster, including Gary Lee. (*See, e.g.,* Marano Tr. 251:13-19 (***"Gary [Lee] was there to represent our interest. Mr. Devine could talk until he was blue in the face.*** Until we looked at the numbers . . . there was going to be no agreement**.**" (emphasis added).)) As ResCap CEO Thomas Marano testified, it was Lee and ResCap in-house counsel Tammy Hamzehpour who had overall responsibility for the RMBS settlement negotiations and who provided independent information and analysis to the ResCap team. (*See* Marano Tr. 239:9-240:22 ("I'm asking you

1

overall who was responsible for the negotiations with Ms. Patrick?  A: Tammy and Gary Lee.");  Marano Tr. 243:4-12.)

The Ad Hoc Group's out-of-context citation of a handful of emails from Timothy Devine, Ally's chief litigation counsel, does not change this fact.  Indeed, the Ad Hoc Group's claim that Mr. Devine "took the lead role in communicating with the Settling Investors," (Obj. at 11), ignores the timeline of events.  Although Mr. Devine represented ResCap (in his capacity Chief Counsel for Litigation for Ally and ResCap) in Fall 2011 when the RMBS investors first reached out to ResCap, and participated in meetings and discussions with Ms. Patrick (Devine Tr. 359:20-361:3), Mr. Devine did not represent ResCap in the negotiations with Ms. Patrick that ultimately lead to the proposed RMBS Trust Settlement Agreement.  (Devine Tr. 363:5-11 ("I was not representing ResCap in connection with a potential resolution of claims against the ResCap estate.").)  By the time that the RMBS settlement negotiations began in earnest in April 2012, ResCap was using its own in-house legal staff in connection with mortgage-backed securities litigation and the eventual bankruptcy filing (*see* Devine Tr. 369:6-12; Ruckdaschel Tr. 22:13-16).  Accordingly, it was Ms. Hamzehpour and Mr. Lee, and not Mr. Devine, who represented ResCap in the negotiations with Kathy Patrick that lead to the proposed RMBS Trust Settlement Agreement, as the witnesses have universally testified.  (Devine Tr. 364:10-365:9; Marano Tr. 251:13-19; Hamzehpour Tr. 58:21-60:25; *see also* Committee Obj. at 15-16 (there was "universal acknowledgement that [Mr. Devine] did *not* represent ResCap" during the RMBS Settlement negotiations).)  And Ms. Hamzehpour has flatly rejected the notion that Mr. Devine was coordinating the negotiations, but rather was one of many participants in those discussions.  (Hamzehpour Tr. 80:16-22.)

*Second*, as described in Ally's prior brief, the notion that Ally sought to "'trade' a large allowed claim against [Debtors] in exchange for the Settling Investors support for a plan support agreement granting Ally a broad third party release and capping Ally's contribution at $750 million" (Obj. at 13), is wholly *inconsistent* with the evidence and without merit. The RMBS Trust Settlement is between the RMBS investors and ResCap, not Ally. And the Ally-ResCap settlement and RMBS Trust Settlement were negotiated by different people. The RMBS Trust Settlement was negotiated between Mr. Lee and Ms. Hamzehpour for ResCap and Ms. Patrick and her team for the RMBS Investors. The terms of the Ally-ResCap settlement were negotiated by two independent directors of ResCap, John Mack and Jonathan Ilany, and Ally CEO Michael Carpenter. (Mack Tr. 81:18-82:19; *see also* Devine Tr. 225:14-21; Marano Tr. 194:8-18.) Moreover, the two agreements were separately evaluated by ResCap and neither was contingent upon execution of the other. (Whitlinger Tr. 87:11-88:7 ("But they're two separate things. Because if -- if the AFI agreement, you know, falls apart, we are still -- we still have $8.7 billion claim settled, which we think is a very good deal based on litigation facts and what -- our professionals told us"); Hamzehpour Tr. 65:4-11 ("there were circumstances under which we would, ResCap, the debtors would have settled with Ms. Patrick whether or not Ally was contributing in getting third party releases"); Devine Tr. 143:10-22.)

The Ad Hoc Group's argument also ignores Ally's substantial support to the Debtors, which the Ad Hoc Group admits *has already been realized by the estate and accrued to the benefit of its creditors*. (*See* Obj. at ¶ 19 ("Some benefits of support have largely been achieved — Ally served as DIP lender to the Debtors' estates, stalking horse bidder with respect to the marketing of Debtors' held-for-sale mortgage loan assets, and supporter of the Debtors' efforts to obtain Court approval to continue their ordinary course business relationship with Ally,

3

including the compensation of Debtor employees and the subservicing business arrangement.").) Further, the Ad Hoc Group misses the fundamental point that the RMBS Trust settlement—the agreement presently before the court on Debtors' Rule 9019 Motion—was the result an arms'-length negotiation between the *Debtors* and *third-parties*—namely, the investors in the RMBS Trusts. The propriety of a third party release of Ally is not, contrary to the Ad Hoc Group's assertion, before the Court on Debtors' 9019 Motion.

## **CONCLUSION**

For all of these reasons, Ally respectfully requests that the Court reject the Objection Of The Ad Hoc Group Of Junior Secured Noteholders and accordingly approve the Debtors' Pursuant to Fed. R. Bankr. P. 9019 For Approval of RMBS Trust Settlement Agreements.

Dated:  February 22, 2013
          New York, New York

　　　　　　　　　　　　　　　　　　　　　 /s/ Daniel T. Donovan
Richard M. Cieri
Ray C. Schrock
Stephen E. Hessler
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel to Ally Financial, Inc.*

4