**Hearing Date and Time: March 1, 2013 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: February 20, 2013 at 4:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Arielle Warshall Katz
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
In re:                                              :     Chapter 11
                                                    :
RESIDENTIAL CAPITAL, LLC, et al.,                   :     Case No. 12-12020 (MG)
                                                    :
Debtors.                                            :     Jointly Administered
                                                    :
---------------------------------------------------------- x

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**IN FURTHER SUPPORT OF ITS MOTION TO PRECLUDE EVIDENCE OF**
**THE DEBTORS' RELIANCE ON ADVICE OF COUNSEL**
**<u>IN CONNECTION WITH THE RMBS SETTLEMENT</u>**

KL3 2916116.2

# TABLE OF CONTENTS

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................... 1

    I.    THE RECORD UTTERLY BELIES THE DEBTORS' ORWELLIAN VERSION OF THE FACTS ............................................................................ 1

    II.   HAVING PREVIOUSLY DISCLAIMED RELIANCE ON ADVICE OF COUNSEL IN CONNECTION WITH THE RMBS SETTLEMENT, THE DEBTORS SHOULD NOW BE BARRED FROM OFFERING EVIDENCE OF SUCH RELIANCE. ................................................................ 6

Conclusion ............................................................................................................................. 9

# EXHIBITS

**Exhibit A** – November 2, 2012 email from Philip S. Kaufman to Darryl Rains attaching signed Stipulation for Limited Waiver and Protective Order.

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
 No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009) ........................8

*Chesapeake Corp. v. Shore*,
 771 A.2d 293 (Del. Ch. 2000)..................................................................................................7

*In re Subpoena Issued to Dennis Friedman, Esq.*,
 286 B.R. 505 (Bankr. S.D.N.Y. 2002)......................................................................................7

*Newmarkets Partners, LLC v. Sal. Oppenheim Jr., et al.*,
 258 F.R.D. 95 (S.D.N.Y. 2009) ................................................................................................7

**OTHER AUTHORITIES**

Restatement (Third) of Law Governing Lawyers § 80 (2000) .........................................................9

**Preliminary Statement**

The Debtors oppose the Committee's preclusion motion through a string of hard-to-believe accusations that turn the facts on their head and defy a record that flatly refutes them. Their statement of the law would be incorrect even on the fictional record they invent, but it is pointless in the face of the record that actually exists. As a matter of both fact and law, therefore, the Debtors' opposition fails and the motion should be granted.[1]

**Argument**

I. **THE RECORD UTTERLY BELIES THE DEBTORS' ORWELLIAN VERSION OF THE FACTS**

This motion became necessary when the Debtors, after having represented to the Court that they had no intention of offering evidence of their reliance on the advice of counsel in connection with the RMBS Settlement, filed reply briefs in support of their 9019 Motion reflecting precisely the opposite intention. Accusing the Committee of misstatement, the Debtors now contend they have every right to offer such evidence because they supposedly never disclaimed their intention to do so. The assertion is breathtaking.

In their November 4, 2012 letter to the Court, the Debtors disclaimed – in black and white – an intention *not* to use advice of counsel as support for the RMBS Settlement:

> The Court noted in *Deutsche Bank* that the plaintiff had not "stated an intention to use the advice of counsel to prove the reasonableness of the [underlying] settlement, and it now explicitly disclaims any such intention." **The same is true here**.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Committee's motion. [Dkt. 2906]. References to "Motion Exh. __" are to the exhibits annexed to the motion. The exhibits annexed to this reply are designated as "Reply Exh. ___."

Motion Exh. B [Dkt. 2052] at 9 (emphasis added).  As if their letter had never been sent, the Debtors point to a contrary statement made in open court by their attorney two months earlier as justification for their current plan to rely on advice of counsel. Opposition ("Opp.") at 1.  But that prior statement was obviously superseded by the November 4 letter, in which the Debtors reversed course in order to protect from discovery all of their privileged communications with counsel, including the more than 2,200 emails listed on their privilege logs.  Indeed, the Debtors took pains in their November 4 letter to distance themselves from the statement of their attorney at the September 19 hearing [Sept. 19, 2012 Hr'g Tr. 27], characterizing that statement as merely a response to an "impromptu question" by the Court without legal effect. Motion Exh. B [Dkt. 2052] at 8.

Apparently recognizing that their November 4 letter could not simply be ignored, the Debtors next argue that the letter's explicit disclaimer of an intention to rely on advice of counsel evidence was no disclaimer at all, but rather only "the middle of a quote from a citation to a case" that in no way constituted a representation to the Court.  Opp. at 1-2.  But while the words "explicitly disclaims" certainly appeared in the quote from *Deutsche Bank* on which the Debtors relied in their November 4 letter, the Debtors conveniently fail to acknowledge the representation they made in the very next sentence, where they adopted wholesale the disclaimer in *Deutsche Bank*: "The same is true here."  Motion Exh. B [Dkt. 2052] at 8.

The Debtors find a prop in the Stipulation for Limited Waiver and Protection Order entered by the Court on November 5, 2012.  Opp. Exh. 2 [Dkt. 2066].  They claim the "whole point" of this stipulation was to allow them to introduce evidence of their reliance on the advice of counsel, that they thereafter produced all communications relating to that advice, and

that the Committee was given "free rein to inquire" into their privileged communications. Opp. at 2. They further claim that the entry of an order approving the stipulation the day after their November 4 letter shows the Committee withdrew its objections to their assertion of privilege based on the limited privilege waiver in the stipulation, and not on the representation contained in their November 4 letter. Opp. at 8-9. The record belies each of these claims as well.

The stipulation on its face did not, as the Debtors claim, reflect a broad "consent[] to disclose the communications, presentations, and documents exchanged between legal counsel and ResCap's Board of Directors in connection with the board's approval of the RMBS Trust Settlement." Opp. at 2. The passage quoted by the Debtors is from one of the stipulation's "Whereas" clauses, and not from the stipulation itself. The stipulation contained an extremely limited privilege waiver, covering only "[l]egal advice, presentations of counsel, and communications *at the May 9, 2012* meeting of the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement Agreement and Plan Support Agreements," as well as "[e]stimates of damages exposures and presentation materials prepared by Jeff Cancelliere and/or FTI Consulting *in April 2012* for use by counsel in negotiating the RMBS Trust Settlement Agreement." Opp. Exh. 2 [Dkt. 2066] at 4 (emphasis added). As the Committee has previously noted (Motion at ¶ 7), that limited waiver led to the Debtors' production of a mere handful of documents, including a two-page presentation distributed to the ResCap Board at the May 9 meeting. The Debtors continued to withhold everything else, including all of the documents listed on their privilege logs and whatever additional communications the Debtors now claim provided the ResCap Board members with the "deep well" of information necessary to approve the RMBS Settlement.

The Debtors' assertions as to the timing of the stipulation are equally fictional. Although the stipulation was not approved by the Court until November 5, it was in fact agreed upon and signed by the parties *before* the Debtors submitted their November 4 letter to the Court – indeed, even before the Committee challenged the Debtors' privilege logs in the November 2 letter to which the November 4 letter responded. *See* Reply Exh. A. The Committee thus in fact dropped its attack on the Debtors' privilege position directly as a result of the representation in their November 4 letter that the Debtors were abandoning advice of counsel evidence in connection with their 9019 Motion. The stipulation, which the Committee regarded as woefully inadequate, had nothing to do with it.

While now openly admitting their intention to offer evidence of their reliance on the advice of counsel, the Debtors say they "waived the privilege as to that advice and allowed full discovery regarding the advice given to the directors by the Debtors' lawyers and professionals." Opp. at 3. But the only waiver for which the Debtors are willing to take responsibility is the highly limited one embodied in the stipulation, under which they disclosed merely what was communicated to the ResCap Board *on* May 9 when the RMBS Settlement was approved. The evidence they now propose to offer, as reflected in the reply briefs they filed on February 1, extends far beyond that miniscule package of communications, and all of that evidence was withheld from discovery. The following chart identifies just some of the proof involving advice of counsel that the Debtors have now said they will offer, and the corresponding categories of communications the Debtors blocked from discovery based on the representation in their November 4 letter:

| **Advice of Counsel Proof** | **Communications Withheld** |
|---|---|
| The directors "received regular briefings from their advisors about the Debtors' exposure to representation and warranty liabilities . . . The directors brought all this experience to bear when they considered the present settlement." [Dkt. 2804 at 1].<br><br>"ResCap LLC's board of directors received regular presentations and updates regarding these representation and warranty litigation matters. Periodically at board meetings, the Debtors' lawyers, risk managers, and accountants made presentations regarding the Debtors' potential liability, damages exposure, legal defenses and accounting reserves…. As a result, the directors were fully conversant with the claimed breaches of representations and warranties, defect rates, legal defenses, claimed damages and potential liability associated with the Debtors' representation and warranty litigation." [Dkt. 2804 at 5]. | Numerous presentations concerning the Debtors' RMBS liabilities that were delivered by counsel in connection with proposed settlements with Fannie Mae, Freddie Mac, the U.S. Department of Justice, and the Federal Reserve, including some presented less than a week before the Board approved the RMBS Settlement. |
| "The directors also were given periodic updates on the status of the settlement negotiations, and received presentations and advice from their legal and financial advisors before approving the settlement. The directors were entitled to rely on these experts' advice and counsel." [Dkt. 2804 at 1]<br><br>"In the weeks leading up to the Debtors' petition for bankruptcy, ResCap LLC's directors met, or held calls, almost every day, and sometimes did so several times a day. These meetings often included the board's financial and legal advisors. The Debtors' attorneys used these opportunities to brief the directors on the status of settlement negotiations." [Dkt. 2804 at 6-7].<br><br>Messrs. Marano, Abreu and Whitlinger "brought their intimate understanding of the Debtors' business, and risks, into the board's meetings." "The three executive directors, in particular, had day-to-day familiarity with the ins-and-outs of those litigation defenses." [Dkt. 2804 at 5, 12-13]. | Communications between counsel and individual Board members, and legal advice outside of the May 9, 2012 presentation. These include numerous emails between attorneys at Morrison & Foerster and Messrs. Marano and Whitlinger concerning the RMBS Settlement. |
| The Debtors' reply briefs are filled with statements concerning Mr. Lee's negotiations with Kathy Patrick that will supposedly be described by Ms. Hamzehpour based on her communications with Mr. Lee. [*E.g.,* Dkt. 2803 at 16-17]. | Emails between attorneys at Morrison & Foerster and Tammy Hamzehpour, ResCap's in-house General Counsel. |

- 5 -

| | |
|---|---|
| "The evidence shows, though, that ResCap LLC's directors carefully considered the removal of the HoldCo Election and acted in the Debtors' best interests in removing it . . . Ms. Hamzehpour and the Debtors' counsel then presented the substance of the proposed amendment eliminating the HoldCo Election to ResCap LLC's directors." [Dkt. 2804 at 14]. | Emails with ResCap Board members concerning the amendments to the RMBS Settlement. |
| "[T]he Debtors' directors and lawyers were fully up-to-speed on the strengths and weaknesses of the Debtors' legal defenses. The Debtors will offer the testimony of Jeffrey Lipps, the Debtors' principal outside counsel for RMBS-related litigation to explain these strengths and weaknesses." [Dkt. 2803 at 44]. | Communications between the Debtors and Carpenter Lipps, the Debtors' principal outside counsel for RMBS-related litigation. |

Based on the Debtors' fictional version of the record, in which no disclaimer of an intent to offer evidence of advice of counsel was ever made, the communications shielded from discovery by the Debtors might properly have been protected by the privilege. But such a disclaimer *was* made, and the ensuing discovery – which cost the estates millions of dollars – was framed to exclude all advice of counsel evidence except the few communications occurring on May 9. As will now be shown, the law precludes the Debtors from introducing any of that withheld evidence.

II.  **HAVING PREVIOUSLY DISCLAIMED RELIANCE ON ADVICE OF COUNSEL IN CONNECTION WITH THE RMBS SETTLEMENT, THE DEBTORS SHOULD NOW BE BARRED FROM OFFERING EVIDENCE OF SUCH RELIANCE**

The Debtors attempt to sidestep their disclaimer by arguing they are entitled to "rebut" the Committee's challenge to the process by which the RMBS Settlement was made through evidence that they "sought" the advice of counsel, without disclosing the substance of those communications. Opp. at 14-16. As support for this thesis, the Debtors contend that the rules differ where the challenge involves "due care" rather than "good faith," and that the

- 6 -

Committee's challenge to the RMBS Settlement implicates only the Debtors' "due care," not their "good faith." Opp. at 17. The argument fails on multiple levels.

For starters, parties waive the privilege when they use advice of counsel to substantiate their due care just as much as they do when they use it to defend their good faith. *Chesapeake Corp. v. Shore,* 771 A.2d 293 (Del. Ch. 2000), a case discussed by the Committee in its initial submission (Motion [Dkt. 2906] ¶¶ 26-27) but totally ignored by the Debtors, specifically addressed the element of due care, holding that the defendants' "tactical decision" to shield from discovery much of the professional advice they had received "will in turn preclude them from proving those deliberations at trial to defend their position that their decision was reasonable and made with due care." *Id.* at 301 & n.8. Other cases have likewise so held. *See, e.g.*, *In re Subpoena Issued to Dennis Friedman, Esq.,* 286 B.R. 505, 509 n.4 [*9-10] (Bankr. S.D.N.Y. 2002) (directors who proposed to use advice of counsel to substantiate their due care "created the situation where their attorney's advice is both relevant and possibly crucial to the plaintiff's preparation of its case."); *cf. Newmarkets Partners, LLC v. Sal. Oppenheim Jr.*, 258 F.R.D. 95, 108 (S.D.N.Y. 2009) (privilege deemed waived and communications with counsel required to be disclosed to support "due care" defense based on advice of counsel).

Moreover, even if the law actually recognized the distinction between "good faith" and "due care" that the Debtors attempt to draw, it would be of no consequence here. Contrary to the Debtors' assertion, the Committee's objection to the RMBS Settlement challenges not only the Debtors' due care, but *also* their good faith. Specifically, the record shows that the RMBS Settlement, far from being made at arm's length, was the product of a process rife with conflicts – having been orchestrated by the Debtors' parent, AFI, principally for

- 7 -

its own benefit, and approved by a ResCap Board whose inside members held dual roles with both the Debtors and AFI and whose supposedly independent members were all appointed by AFI and subject to removal at AFI's will. *See* Objection of the Committee to the Debtors' 9019 Motion [Dkt. 2825] at 14-21. As even the Debtors concede, directors cannot use the advice of counsel to defend a challenge to their good faith without disclosing the substance of their communications with counsel. Opp. at 17.

Nor can the Debtors avail themselves of decisions such as *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,* No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009), by arguing that "merely stating that [one] *sought* the advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive privilege." *Id.* at *45 (emphasis added). *See* Opp. at 16. The Debtors have made clear in their reply briefs that they did not merely "seek" the advice of counsel but in fact relied heavily on the advice in the evaluation, negotiation, and approval of the RMBS Settlement. *See, e.g.,* Dkt. 2804 at 1, 2, 4-7, 9-10 & n.7, 12-14; Dkt. 2803 at 15-17, 29, 44. Had they wanted to introduce evidence of their reliance on counsel in connection with their 9019 Motion, they were compelled to waive the privilege and disclose their attorney-client communications. *See* Restatement (Third) of Law Governing Lawyers § 80 cmt. b. (2000) ("If the communication could not be introduced, a client could present the justification of legal advice in an inaccurate, incomplete and self-serving way."). But having expressly disclaimed their intention to use advice of counsel to defend the RMBS Settlement, the Debtors forfeited the right to offer evidence of their reliance on that advice. *See* Motion [Dkt. 2906] at ¶¶ 22-24 (collecting cases).

**Conclusion**

For these reasons, as well as those set forth in the Committee's initial submission, an order precluding the Debtors from offering evidence of their reliance on advice of counsel should be entered.

Dated: New York, New York
       February 25, 2013

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Arielle Warshall Katz
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile:  (212) 715-8000

*Counsel for the Official Committee Of Unsecured Creditors*

**EXHIBIT A**

| | |
|---|---|
| **From:** | Kaufman, Philip S. |
| **Sent:** | Friday, November 02, 2012 3:28 PM |
| **To:** | Rains, Darryl P. (DRains@mofo.com) |
| **Cc:** | Levitt, Jamie A. (JLevitt@mofo.com); Eckstein, Kenneth H.; Mannal, Douglas; Katz, Arielle Warshall; Levine, Adina C. |
| **Subject:** | Limited Waiver Stipulation |
| **Attachments:** | 20121102152251.PDF |

Darryl -- Attached is a PDF of the stipulation, which we have signed. I assume you'll send me a fully-executed copy when you file it. Thanks for your cooperation and patience in resolving at least some of our outstanding issues.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                              :
                                                   :    Chapter 11
RESIDENTIAL CAPITAL, LLC, *et al.*                 :
                                                   :    Case No. 12-12020 (MG)
                    Debtors.                       :
                                                   :    (Jointly Administered)
-------------------------------------------------------x

## STIPULATION FOR LIMITED WAIVER AND PROTECTIVE ORDER

WHEREAS, on May 14, 2012 (the "Commencement Date"), Residential Capital, LLC and its direct and indirect subsidiaries ("Debtors") filed Chapter 11 bankruptcy petitions in this Court;

WHEREAS, Ally Financial ("AFI") asserts that, prior to the Commencement Date, certain in-house attorneys of AFI performed services for the Debtors, including the provision of legal advice;

WHEREAS, certain in-house attorneys of AFI, external legal counsel representing AFI, in-house attorneys of the Debtors, and external legal counsel representing the Debtors, have had communications regarding litigation and potential litigation that the Debtors and/or AFI assert are protected by the attorney-client privilege, the work product doctrine, and/or the common interest doctrine;

WHEREAS, on June 5, 2012, AFI and the Debtors assert that they entered into a Joint Defense, Common Interest, and Information Sharing Agreement which memorialized their agreement regarding confidential information protected against disclosure by the attorney-client privilege, the work product doctrine, and the common interest doctrine;

SF-3200708

WHEREAS, various parties in this proceeding seek discovery from the Debtors and AFI of certain materials relating to the motion by the Debtors pursuant to Rule 9019 for approval of a settlement permitting an allowed claim in favor of certain securitization trusts, including but not limited to all amendments to the settlement (the "RMBS Trust Settlement") and the RMBS Plan Support Agreements with the Steering Committee Group and theTalcott Franklin Group (the "Plan Support Agreements");

WHEREAS, among the documents and materials sought by parties in this proceeding are certain communications, presentations, and documents exchanged between legal counsel and the Board of Directors of Residential Capital LLC ("ResCap") in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements;

WHEREAS, the Debtors and/or AFI assert that the communications, presentations, and documents exchanged between legal counsel and ResCap's Board of Directors in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements are protected by the attorney-client privilege, the work product doctrine, and/or the common interest doctrine;

WHEREAS, the Committee of Unsecured Creditors and various parties dispute the Debtors' and/or AFI's assertion of attorney-client privilege, the work product doctrine, and/or the common interest doctrine regarding certain communications, presentations, and documents;

WHEREAS, pursuant to Federal Rule of Evidence 502, the Debtors have engaged in discussions with various parties, including the Committee of Unsecured Creditors, concerning their request for disclosure of communications, presentations, and documents between legal counsel and ResCap's Board of Directors;

WHEREAS, the Debtors have consented to disclose the communications, presentations, and documents exchanged between legal counsel and ResCap's Board of Directors in connection

with the board's approval of the RMBS Trust Settlement so long as such disclosures are not deemed to constitute a broader subject matter waiver pursuant to Federal Rule of Evidence 502(a);

WHEREAS, the Debtors assert that they have not waived any privilege with respect to any other communications, documents or communications other than those covered by this stiplation;

WHEREAS, the Committee of Unsecured Creditors has agreed not to argue that the production of documents pursuant to this stipulation would constitute a broader subject matter waiver of the attorney-client privilege, attorney work product doctrine, or common interest doctrine with regard to any other undisclosed communications;

WHEREAS, the Debtors agree that the Committee of Unsecured Creditors may disclose the documents produced pursuant to this stipulation to other members of the Creditors' Committee;

WHEREAS, the Committee of Unsecured Creditors reserves all rights to contest the Debtors' and/or AFI's assertion of the attorney-client privilege, the work product doctrine, and/or the common interest doctrine concerning the documents produced by the Debtors and/or AFI in this action, including the documents produced pursuant to this stipulation;

NOW THEREFORE, upon consideration of the record and proceedings in this matter, the stipulation of the parties, and good cause appearing:

IT IS HEREBY ORDERED AND DECREED, pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure and Rules 502(a), (e), (f), and (g) of the Federal rules of Evidence, as follows:

1. The Debtors shall be deemed to have waived the attorney-client privilege, the work product doctrine, and the common interest doctrine, solely with respect to communications, presentations, and documents exchanged between legal counsel and the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement and the Plan Support Agreements. The limited waiver extends to:

   a. Legal advice, presentations of counsel, and communications at the May 9, 2012, meeting of the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements;

   b. Estimates of damages exposures and presentation materials prepared by Jeff Cancelliere and/or FTI Consulting in April 2012 for use by counsel in negotiating the RMBS Trust Settlement, the contents of which were summarized by counsel in oral communications and presentations to members of the ResCap Board of Directors;

   c. Legal advice and communications of counsel to the ResCap Board of Directors in connection with amendments to the RMBS Trust Settlement.

2. The disclosure of communications, presentations, and/or documents exchanged between legal counsel and ResCap's Board of Directors in connection its the approval of the RMBS Trust Settlement and Plan Support Agreements shall not be deemed to be a waiver in this or any other federal or state proceeding of any applicable privilege or doctrine protecting any other undisclosed communications.

3. This Order shall not constitute an admission or agreement by any party with respect to any other undisclosed communications.

4. This Order shall be without prejudice to the rights of the Committee of Unsecured Creditors to contest the Debtors' and/or AFI's assertion of the attorney-client privilege, the work product doctrine, and/or the common interest doctrine concerning the documents produced by the Debtors and/or AFI in this action, including the documents produced pursuant to this Order.

5. The Committee of Unsecured Creditors shall be permitted to disclose the documents produced pursuant to this Order to other members of the Creditors' Committee.

SO STIPULATED.

By:_____
Gary S. Lee
Anthony Princi
Darryl P. Rains
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for Debtors
and Debtors in Possession*

By: /s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Douglas H. Mannal
Kramer Levin Naftallis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
T: 212-715-9100
F: 212-715-8000

*Counsel to the Official Committee of
Unsecured Creditors*

APPROVED AND SO ORDERED
This ___ day of _____ in New York

_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE