# **EXHIBIT 2**

**Marano Declaration**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Stefan W. Engelhardt
James A. Newton

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF THOMAS MARANO, CHIEF EXECUTIVE OFFICER OF RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION**

I, Thomas Marano, under penalty of perjury, declare as follows:

1. I am the Chief Executive Officer of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). I have held this position since July of 2008. From May 2009 through May 13, 2012, I also served as Chief Capital Markets Officer and Chief Mortgage Officer of Ally Financial Inc. ("**AFI**"), a non-Debtor affiliate. Prior to joining ResCap, I served as Managing

ny-1078684

Director for Cerberus Capital Management, L.P. in its Residential and Commercial Capital Markets Division from March 2008 to April 2009. Before my engagement at Cerberus, I spent 25 years at The Bear Stearns Companies, Inc., where I held numerous positions, most recently as Senior Managing Director and Global Head of Mortgage and Asset Backed Securities responsible for mortgage sales, trading, and origination. In my role as Chief Executive Officer of ResCap, I am responsible for overall leadership and management of the Debtors and their non-debtor subsidiaries. I am authorized to submit this declaration (the "**Declaration**") in further support of the *Debtors' Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination that (I) GMAC Mortgage's FRB Foreclosure Review Obligation is a General Unsecured Claim and (II) The Automatic Stay Prevents enforcement of the FRB Foreclosure Review Obligation* (the "**Motion**").[1]

        2.      In my capacity as Chief Executive Officer, I am familiar with the Debtors' day-to-day operations, financial condition, business affairs, books and records, and obligations under the Consent Order. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' operations, financial condition and history. In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ny-1078684

collect, and/or verify any such documentation and other information. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

## THE CONSENT ORDER

3. On April 13, 2011, GMAC Mortgage, ResCap, AFI, and Ally Bank entered into the Consent Order with the FDIC and the FRB. Pursuant to the Consent Order, the Consent Order Debtors, AFI and Ally Bank are required to implement, among other things, certain board oversight and risk management programs. The Debtors implemented policies and procedures in connection with these prospective obligations and, as far as I am aware, continued to comply with such obligations through the closing of the sale of their servicing platform.

4. Additionally, paragraph 3 of the Consent Order requires the engagement of an independent consultant to conduct a review (the "**FRB Foreclosure Review**") of foreclosure actions or proceedings, including foreclosure sales completed during the period from January 1, 2009 to December 31, 2010. GMAC Mortgage engaged PricewaterhouseCoopers, LLP ("**PwC**") as its independent consultant. The Consent Order requires the independent consultant to review loan files for compliance with various state and federal laws, including, but not limited to, bankruptcy laws and the Servicemembers Civil Relief Act ("**SCRA**"). The Consent Order also requires that the independent consultant review applicable loan files to determine if improper fees were charged, and to determine whether the Debtors complied with certain loss mitigation guidelines. In the event that PwC discovers any errors through the FRB Foreclosure Review that are deemed to have resulted in financial injury to the borrower, GMAC Mortgage will be required to remediate such errors.

ny-1078684

5.  At the time the Consent Order Debtors entered into the Consent Order, they were not provided the option to make a lump sum payment in satisfaction of their FRB Foreclosure Review obligation.

6.  As of December 31, 2012, the Debtors had paid PwC approximately $73 million for services rendered by PwC professionals in connection with the FRB Foreclosure Review. PwC continues to have over 100 employees on-site at Debtor locations (or locations that were leased for those PwC employees by the Debtors prior to the closing of their Court-approved asset sales) in connection with the FRB Foreclosure Review.

7.  As PwC continues to work, the costs of performing the FRB Foreclosure Review continue to increase. The continuously increasing costs of the FRB Foreclosure Review are due, in no small part, to the continued extension of the time period during which borrowers were allowed to request that their loan be reviewed through the FRB Foreclosure Review process. The opt-in window was originally scheduled to close in April 2012, but subsequently was extended at least three times through the end of 2012. Moreover, to date the FRB has yet to confirm with the Debtors that the opt-in window is now closed. These extensions resulted in receipt of approximately 20,000 additional borrower complaints[2] and the expense attendant with evaluating those complaints.

8.  Similarly, the costs have increased substantially as a result of lack of clarity regarding the exact review parameters. The continuously changing parameters of the review have increased the time required for PwC to review each file, resulting in substantially increased costs on a per file basis.

---

[2] As of the end of April 2012, the Debtors had received approximately 8,450 complaints. By the end of December 2012, the number of complaints received reached approximately 27,000.

ny-1078684

9. At this juncture, the Debtors continue to incur approximately $300,000 per day in FRB Foreclosure Review related expenses and they believe that the cost of completing the FRB Foreclosure Review and remediating any borrower harm may now reach as much as $415 to $459 million.

### THE FRB'S SETTLEMENT WITH OTHER MORTGAGE SERVICERS

10. The Debtors are aware that on January 7, 2013, the Federal Reserve Board announced a resolution of foreclosure review requirements contained in consent orders with ten major non-debtor mortgage servicers in exchange for the participating servicers' agreement, in the aggregate, to make $3.3 billion in payments to a paying agent and provide $5.2 billion in other borrower assistance. Under the settlement as announced, the participating mortgage servicers would be able to meet the foreclosure review requirements of their respective consent orders by making a lump sum payment and providing certain additional borrower assistance in the form of, for example, loan modifications. The related consent orders and the foreclosure review requirements contained in those orders are nearly identical to the Debtors' Consent Order and the FRB Foreclosure Review requirement.

New York, New York  /s/ Thomas Marano
Dated: February 27, 2013  Thomas Marano
  Chief Executive Officer of Residential Capital, LLC