**Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------
|                                        | )  |                              |
| In re:                                 | )  | Case No. 12-12020 (MG)       |
|                                        | )  |                              |
| RESIDENTIAL CAPITAL, LLC, et al.,      | )  | Chapter 11                   |
|                                        | )  |                              |
|                        Debtors.        | )  | Jointly Administered         |
|                                        | )  |                              |
--------------------------------------------------------------------

**NOTICE OF DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a)
AND 365(a), FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY
RULE 6006-1 AUTHORIZING ASSUMPTION OF UNEXPIRED
LEASE BETWEEN NORMANDALE HOLDINGS LLC AND
RESIDENTIAL FUNDING COMPANY LLC**

       **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*for Order Under 11 U.S.C. §§ 105(a) and 365(a), Fed. R. Bankr. P. 6006 and 9014 and*

*Local Bankruptcy Rule 6006-1 Authorizing Assumption of Unexpired Lease Between*

*Normandale Holdings LLC and Residential Funding Company LLC* (the "Motion").

       **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **March 21, 2013 at 10:00 a.m. (prevailing Eastern time)** before the Honorable

Martin Glenn, at the United States Bankruptcy Court for the Southern District of New

York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **March 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee, Lorenzo Marinuzzi and Samantha Martin); (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attn: US Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attn: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attn: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attn: Richard M. Cieri); (g) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attn: Ken Ziman & Jonathan H. Hofer); (h) counsel for the committee of unsecured

creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New

York, NY 10036 (Attn: Kenneth Eckstein & Greg Horowitz); (i) counsel for Ocwen Loan

Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attn: Jennifer C. DeMarco and Adam Lesman); (j) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071

(Attention:  Thomas Walper and Seth Goldman); (k) Internal Revenue Service, P.O. Box

7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail

Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (l) Securities and Exchange

Commission, New York Regional Office, 3 World Financial Center, Suite 400, New

York, NY 10281-1022 (Attn: George S. Canellos, Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: February 28, 2013              Respectfully submitted,
      New York, New York

                                     /s/ Gary S. Lee
                                   Gary S. Lee
                                   Lorenzo Marinuzzi
                                   Samantha Martin
                                   MORRISON & FOERSTER LLP
                                   1290 Avenue of the Americas
                                   New York, New York 10104
                                   Telephone: (212) 468-8000
                                   Facsimile: (212) 468-7900

                                   *Counsel for the Debtors and*
                                   *Debtors in Possession*

**Hearing Date and Time:  March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  March 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a) AND 365(a),**
**FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY**
**RULE 6006-1 AUTHORIZING ASSUMPTION OF UNEXPIRED**
**LEASE BETWEEN NORMANDALE HOLDINGS LLC AND**
**<u>RESIDENTIAL FUNDING COMPANY LLC</u>**

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1], hereby move (the "Motion") for entry of an order under sections 105(a)

and 365(a) of title 11 of the United States Code, as amended (the "Bankruptcy Code"),

rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New

York, authorizing the assumption of the unexpired lease set forth on Exhibit 1 annexed

hereto (including any amendments, modifications, or other agreements related thereto,

and without regard to whether such agreement, instrument or other document is listed on

Exhibit 1, the "Lease").  In support of the Motion, the Debtors rely upon and incorporate

by reference the Declaration of Erik Ferguson, Senior Vice President of Business

Excellence at GMAC Mortgage, LLC, a copy of which is annexed hereto as Exhibit 2.

In support of this Motion, the Debtors represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are

Bankruptcy Code sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014.

---

[1]  The names of the Debtors in these cases and their respective tax identification numbers are identified on
Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in
Support of Chapter 11 Petitions and First Day Motions (the "Whitlinger Affidavit") [Docket No. 6].

## BACKGROUND

3.        On May 14, 2012 (the "Petition Date"), each of the Debtors filed a

voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.

The Debtors are managing and operating their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly

administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in

these Chapter 11 cases.

4.        On May 16, 2012, the United States Trustee for the Southern District of

New York (the "U.S. Trustee") appointed a nine-member official committee of unsecured

creditors (the "Creditors' Committee").

5.        On June 20, 2012, the Court directed that an examiner be appointed

[Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the

examiner (the "Examiner") [Docket No. 674].[2]

6.        On November 21, 2012, the Court entered orders approving the sale of

(i) the Debtors' mortgage loan servicing and origination platform (the "Platform Sale") to

Ocwen Loan Servicing, LLC ("Ocwen") and Walter Investment Management Corp.

("Walter"), and (ii) the Debtors' legacy whole loan portfolio (the "Legacy Sale") to

Berkshire Hathaway Inc. (together with Ocwen and Walter, the "Purchasers").  [Docket

Nos.  2246 and 2247].

---

[2] The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc.
("AFI"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest
mortgage servicing business and the tenth largest mortgage origination business in the United States.  A
more detailed description of the Debtors, including their business operations, their capital and debt
structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger
Affidavit.

ny-1079889

## RELIEF REQUESTED

7.      By this Motion, the Debtors respectfully request, pursuant to Bankruptcy Code sections 105(a) and 365(a), Bankruptcy Rules 6006 and 9014, and Rule 6006-1 of the Local Bankruptcy Rules for the Southern District of New York, that this Court enter an order, substantially in the form annexed hereto as Exhibit 3, authorizing the assumption of the Lease identified on Exhibit 1.[3]  In connection with the proposed assumption, the Debtors and the Landlord have entered into a lease amendment (a copy of which is annexed hereto as Exhibit 4, the "Amendment").  In addition, the landlord under the Lease has agreed to an extension of the February 28, 2013 deadline to assume or reject the Lease through the earlier of (1) March 31, 2013, or (2) the date this Court rules on the Motion.  The Debtors submit that the assumption of the Lease is reasonable and represents an appropriate exercise of sound business judgment.

## BASIS FOR RELIEF

8.      The Debtors currently are in the process of evaluating which of the Debtors' executory contracts and unexpired leases should be assumed and assigned to the Purchasers in connection with the Platform Sale and the Legacy Sale, or assumed to facilitate the Debtors' wind down activities.  As part of this analysis, the Debtors have already determined that the Lease listed on Exhibit 1 is necessary to the Debtors' ongoing business operations and beneficial to the Debtors' estates.

---

[3] Consistent with Bankruptcy Rule 6006(f), Exhibit 1 contains no more than 100 executory contracts and unexpired leases to be assumed.  The Debtors are currently performing a review and evaluation of other executory contracts and unexpired leases that are not the subject of this Motion.  As this process continues, the Debtors expect to identify additional contracts and leases to be assumed or rejected.  Accordingly, the Debtors reserve the right to seek to assume or reject additional contracts and leases in the future.  This Motion should not be construed as a determination that any contracts or leases not listed herein are to be assumed or rejected.

ny-1079889

9.      The Lease, dated July 7, 2004, as amended, currently between Residential Funding Company, LLC, successor in interest to Residential Funding Corporation, as Tenant, and Normandale Holdings, L.L.C., successor in interest to Teachers Insurance and Annuity Association of America, as Landlord, is for the property located at 8400 Normandale Lake Boulevard, Bloomington, Minnesota (the "Premises").  The Debtors recently entered into the Amendment, which reduces the rentable square feet of the Premises and provides for the continued occupancy of the premises by employees of AFI and Walter, each of which has agreed to compensate the Debtors for such use pursuant to separate agreements.  The estimated gross lease liability for the period from March 1, 2013 through March 31, 2014 (the lease expiration date) is $1,318,311, and after reimbursements by AFI and Walter, the estimated net remaining lease liability to ResCap is $396,341.[4]  The Debtors currently occupy the Premises in the ordinary course of business and intend to continue occupying the Premises while administering the wind down of the Debtors' estates.  The Debtors have determined that it is critical for them to continue utilizing the Premises through the expiration of the lease term without any risk of eviction or termination.  The Debtors are current on all obligations under the Lease, and the Debtors believe there are no cure costs associated with the assumption of the Lease.

10.     Based on the foregoing, the Debtors have determined through the exercise of their business judgment that assumption of the Lease is in the best interests of the Debtors' estates, their creditors and other parties in interest.

---

[4] This calculation assumes that the third floor is surrendered on March 31, 2013 and the fourth floor is surrendered on May 31, 2013, per the terms of the Amendment.

ny-1079889

## APPLICABLE AUTHORITY

11.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a

debtor in possession, "subject to the court's approval, may assume or reject any

executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v.*

*Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins. Ass'n v. Hirsch (In*

*re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997). "The purpose behind allowing the

assumption or rejection of executory contracts is to permit the trustee or debtor-in-

possession to use valuable property of the estate and to renounce title to and abandon

burdensome property." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion*

*Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (internal quotation marks and reference

omitted).

12.    Courts defer to a debtor's business judgment in assuming an executory

contract or unexpired lease. *In re Orion Pictures Corp.*, 4 F.3d at 1098 (noting that

section 365 "permits the [debtor], subject to the approval of the bankruptcy court, to go

through the inventory of executory contracts of the debtor and decide which ones it

would be beneficial to adhere to and which ones it would be beneficial to reject."); *In re*

*Child World, Inc.*, 142 B.R. 87, 89 (S.D.N.Y. 1992) (a debtor may assume or reject an

unexpired lease under section 365(a) in the exercise of its "business judgment").

13.    Courts generally will not second-guess a debtor's business judgment

concerning whether the assumption or rejection of an executory contract or unexpired

lease would benefit the debtor's estate. *See In re Farmland Indus., Inc.*, 294 B.R. 903,

913 (Bankr. W.D. Mo. 2003) ("The Code favors the continued operation of a business by

a debtor and a presumption of reasonableness attaches to a debtor's management

decisions.") (citation omitted); *Phar-Mor, Inc. v. Strouss Bldg. Assocs.*, 204 B.R. 948,

951-52 (N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor.") (internal citations omitted).

14.     For the reasons set forth above, the Debtors clearly have satisfied the "business judgment" standard for assuming the Lease.  The Debtors currently occupy the Premises in the ordinary course of business.  The Debtors have determined that it is critical for the Debtors to continue utilizing the Premises through the expiration of the lease term.  Accordingly, the Debtors submit that the assumption of the Lease should be approved because it is in the best interests of the Debtors' estates and represents a proper exercise of the Debtors' business judgment.

## NOTICE

15.     The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto as Exhibit 3, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: February 28, 2013            /s/ Gary S. Lee
       New York, New York           Gary S. Lee
                                    Lorenzo Marinuzzi
                                    Samantha Martin
                                    MORRISON & FOERSTER LLP
                                    1290 Avenue of the Americas
                                    New York, New York 10104
                                    Telephone: (212) 468-8000
                                    Facsimile: (212) 468-7900

6

*Counsel to the Debtors*
*and Debtors in Possession*

**Exhibit 1 to the Motion**

**Assumed Lease**

|  | Debtor | Contract/Lease Counterparty (Name/Address) | Description of Contract/Lease | Cure Amount |
|---|---|---|---|---|
| 1 | Residential Funding Company, LLC | Normandale Holdings LLC<br><br>c/o Equity Group Investments<br>Two North Riverside Plaza, Suite 600<br>Chicago, IL  60606<br>Attn:  General Counsel and Leasing Coordinator<br><br>**With a copy to:**<br>Normandale Holdings, L.L.C.<br>c/o Cushman & Wakefield/NorthMarq Real Estate Services<br>8400 Normandale Lake Boulevard, #320 Bloomington, MN 55437<br><br>**and:**<br>David A. Libra, Esq.<br>Lapp, Libra, Thomson Stoebner & Pusch<br>120 South Sixth Street, Suite 2500 Minneapolis, MN 55402 | Standard Office Lease, dated July 7, 2004, as subsequently amended,<br><br>for the property located at<br><br>8400 Normandale Lake Boulevard, Bloomington, Minnesota 55437 | $0 |

**<u>Exhibit 2 to the Motion</u>**

**Declaration**

*(Please see attached)*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
|   )
In re:    |   )    Case No. 12-12020 (MG)
|   )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,    |   )    Chapter 11
|   )
Debtors.    |   )    Jointly Administered
|   )
---------------------------------------------------------

**DECLARATION OF ERIK FERGUSON, SENIOR VICE PRESIDENT OF
BUSINESS EXCELELNCE AT GMAC MORTGAGE, LLC, IN SUPPORT OF
THE DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a) AND 365(a),
FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY
RULE 6006-1 AUTHORIZING ASSUMPTION OF UNEXPIRED
LEASE BETWEEN NORMANDALE HOLDINGS LLC AND
<u>RESIDENTIAL FUNDING COMPANY LLC</u>**

I, Erik Ferguson declare as follows:

### A.    Background and Qualifications

I serve as Senior Vice President of Business Excellence at GMAC Mortgage, LLC,

one of the debtors and debtors in possession in the above-captioned Chapter 11 cases

(collectively, the "<u>Debtors</u>").  I have held this position since August 2010.  In my role as

Senior Vice President of Business Excellence at GMAC Mortgage, LLC, I am responsible

for, among other things, the management of owned and leased facilities from the Debtors,

conduct their respective business activities.  I am authorized to submit this declaration

(the "Declaration") in support of the *Debtors' Motion for Order Under 11 U.S.C. §§ 105(a) and 365(a), Fed. R. Bankr. P. 6006 and 9014 and Local Bankruptcy Rule 6006-1 Authorizing Assumption of Unexpired Lease Between Normandale Holdings LLC and Residential Funding Company LLC*, dated as of February 28, 2013 (the "Motion").[1]

Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge or information supplied or verified by personnel in departments within the Debtors' various business units.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

1.     The Debtors currently are in the process of evaluating which of the Debtors' executory contracts and unexpired leases should be assumed and assigned to the Purchasers in connection with the Platform Sale and the Legacy Sale, or assumed to facilitate the Debtors' wind down activities.  As part of this analysis, the Debtors have already determined that the Lease listed on Exhibit 1 is necessary to the Debtors' ongoing business operations and beneficial to the Debtors' estates.

2.     The Lease, dated July 7, 2004, as amended, currently between Residential Funding Company, LLC, successor in interest to Residential Funding Corporation, as Tenant, and Normandale Holdings, L.L.C., successor in interest to Teachers Insurance and Annuity Association of America, as Landlord, is for the property located at 8400 Normandale Lake Boulevard, Bloomington, Minnesota (the "Premises"). The Debtors recently entered into the Amendment, which reduces the rentable square feet of the Premises and provides for the continued occupancy of the premises by employees

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

of AFI and Walter, each of which has agreed to compensate the Debtors for such use pursuant to separate agreements. The estimated gross lease liability for the period from March 1, 2013 through March 31, 2014 (the lease expiration date) is $1,318,311, and after reimbursements by AFI and Walter, the estimated net remaining lease liability to ResCap is $396,341.[2] The Debtors currently occupy the Premises in the ordinary course of business and intend to continue occupying the Premises while administering the wind down of the Debtors' estates. The Debtors have determined that it is critical for them to continue utilizing the Premises through the expiration of the lease term without any risk of eviction or termination. The Debtors are current on all obligations under the Lease, and the Debtors believe there are no cure costs associated with the assumption of the Lease.

3.       Based on the foregoing, the Debtors have determined through the exercise of their business judgment that assumption of the Lease is in the best interests of the Debtors' estates, their creditors and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 28, 2013          /s/ Erik Ferguson
        New York, New York        ─────────────────────────
                                  Erik Ferguson
                                  Senior Vice President of Business
                                  Excellence at GMAC Mortgage, LLC

---

[2] This calculation assumes that the third floor is surrendered on March 31, 2013 and the fourth floor is surrendered on May 31, 2013, per the terms of the Amendment.

**<u>Exhibit 3 to the Motion</u>**

**Proposed Order**

(*Please see attached*)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

-------------------------------------------------------------------

### ORDER UNDER 11 U.S.C. §§ 105(a) AND 365(a), FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY RULE 6006-1 AUTHORIZING ASSUMPTION OF UNEXPIRED LEASE BETWEEN NORMANDALE HOLDINGS LLC AND RESIDENTIAL FUNDING COMPANY LLC

Upon the motion (the "Motion") of the Debtors[1] for entry of an order (the

"Order"), pursuant to sections 105(a) and 365(a), of title 11 of the United States Code, as

amended (the "Bankruptcy Code") and rules 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the assumption of the

unexpired lease set forth on Exhibit 1 annexed hereto (including any amendments,

modifications, or other agreements related thereto, and without regard to whether such

agreement, instrument or other document is listed on Exhibit 1, the "Lease") as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion

and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the

Court having reviewed the Motion and the Declaration of Erik Ferguson, Senior Vice

President of Business Excellence at GMAC Mortgage, LLC in support of the Motion; and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Court having determined that the relief requested in the Motion is in the best interests

of the Debtors, their estates, their creditors, and all parties in interest; and it appearing

that proper and adequate notice of the Motion has been given and that no other or further

notice is necessary; and the legal and factual bases set forth in the Motion establish just

and sufficient cause to grant the requested relief herein; and upon the record herein; and

after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:

1.    The Motion is GRANTED.

2.    Pursuant to Section 365(a) of the Bankruptcy Code and Bankruptcy Rules

6006 and 9014, the Debtors' assumption of the Lease identified on Exhibit 1 annexed

hereto is approved.

3.    The Amendment annexed as Exhibit 4 to the Motion is approved.

4.    The Debtors are hereby authorized to execute and deliver all instruments

and documents, and take all other actions, as may be necessary or appropriate to

implement and effectuate the relief granted in this Order.

5.    Any claims arising from the Debtors' early termination of the Termination

Space (as defined in the Amendment) must be filed with Kurtzman Carson Consultants,[2]

the Court-approved claims processing agent, on or before July 15, 2013.

6.    Upon the entry of this Order, (a) all non-monetary defaults under the

Lease arising prior to February 28, 2013 shall be deemed cured, (b) no amounts that arose

---

[2] Claims should be sent to the following address:
    ResCap Claims Processing Center,
    c/o KCC 2335 Alaska Ave.
    El Segundo, CA 90245

ny-1079889

prior to the Petition Date will be owed by Debtors or their estates with respect to the

Lease, and (c) any and all persons or entities shall be forever barred and estopped from

asserting a claim that any additional amounts are due or defaults exist under the Lease

that arose or accrued, relate to or are attributable to the period prior to the Petition Date,

against the Debtors or their estates.

7.    This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

Dated:    New York, New York
_____, 2013

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

3

**Exhibit 1 to the Order**

**Assumed Lease**

| | Debtor | Contract/Lease Counterparty (Name/Address) | Description of Contract/Lease | Cure Amount |
|---|---|---|---|---|
| 1 | Residential Funding Company, LLC | Normandale Holdings LLC<br><br>c/o Equity Group Investments<br>Two North Riverside Plaza, Suite 600<br>Chicago, IL  60606<br>Attn:  General Counsel and Leasing Coordinator<br><br>**With a copy to:**<br>Normandale Holdings, L.L.C.<br>c/o Cushman & Wakefield/NorthMarq Real Estate Services<br>8400 Normandale Lake Boulevard, #320<br>Bloomington, MN 55437<br><br>**and:**<br>David A. Libra, Esq.<br>Lapp, Libra, Thomson Stoebner & Pusch<br>120 South Sixth Street, Suite 2500<br>Minneapolis, MN 55402 | Standard Office Lease, dated July 7, 2004, as subsequently amended,<br><br>for the property located at<br><br>8400 Normandale Lake Boulevard, Bloomington, Minnesota 55437 | $0 |

**<u>Exhibit 4 to the Motion</u>**

**Lease Amendment**

(*Please see attached*)

## ELEVENTH AMENDMENT TO LEASE AGREEMENT

**THIS AMENDMENT** ("Amendment") is made as of February 1, 2013, between **NORMANDALE HOLDINGS, L.L.C.**, a Delaware limited liability company ("Landlord") and **RESIDENTIAL FUNDING COMPANY, LLC**, a Delaware limited liability company ("Tenant").

### RECITALS

A.  Landlord, as successor in interest to Teachers Insurance and Annuity Association of America, and Tenant executed a Lease Agreement dated as of July 7, 2004 ("Initial Lease"), as amended by that certain First Amendment to Lease Agreement dated November 3, 2004 ("First Amendment"), that certain Second Amendment to Lease Agreement dated November 8, 2004 ("Second Amendment"), that certain Third Amendment to Lease Agreement dated November 8, 2004 ("Third Amendment"), that certain Fourth Amendment to Lease Agreement dated April 7, 2005 ("Fourth Amendment"), that certain Fifth Amendment to Lease Agreement dated December 15, 2005 ("Fifth Amendment"), that certain Sixth Amendment to Lease Agreement dated July 14, 2006 ("Sixth Amendment"), that certain Seventh Amendment to Lease Agreement dated January 22, 2007 ("Seventh Amendment"), that certain Eighth Amendment to Lease Agreement dated June 20, 2008 ("Eighth Amendment"), that certain Ninth Amendment to Lease Agreement dated June 30, 2008 ("Ninth Amendment") and that certain Tenth Amendment to Lease Agreement dated October 1, 2010 ("Tenth Amendment") (collectively, the "Current Lease").

B.  The Current Lease relates to certain Premises consisting of approximately 60,034 rentable square feet (the "Current Premises") in the building located at 8400 Normandale Lake Boulevard, Bloomington, Minnesota ("Project").

C.  On May 14, 2012, Tenant and numerous related debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq., in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Tenant is one of the debtors in In re: Residential Capital, LLC et al. Case No. 12-12020 (MG) (the "Bankruptcy Case").

D.  The time for Tenant to assume or reject the Lease in the Bankruptcy Case has been extended to February 28, 2013.

E.  Subject to approval by the Bankruptcy Court, Landlord and Tenant desire to reduce the rentable square feet under the Current Lease and to amend the Current Lease as provided in this Amendment.

### AGREEMENT

Now, therefore, in consideration of the foregoing recitals, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant have agreed as follows:

1.  <u>Effect</u>. The Current Lease is hereby amended to the extent necessary to give effect to this Amendment, and the terms of this Amendment shall supersede any contrary terms in the Current Lease. All references in the Current Lease to "this Lease," and all references in this Amendment to "the Lease," shall be deemed to refer to the Current Lease as amended by this Amendment. In all other respects, the terms and conditions of the Current Lease shall remain unmodified and in effect. Unless otherwise defined herein, capitalized terms used in this Amendment shall have the same meanings as provided in the Current Lease.

1

2. <u>Partial Termination</u>.

A. For purposes of this Amendment:

(1) "Termination Space" means the following spaces in the Project as shown on Exhibit 1 to the Tenth Amendment:

| Suite | Agreed Upon Rentable Square Feet |
|-------|----------------------------------|
| 375   | 13,985                           |
| 450   | 11,148                           |
| 475   | 635                              |
| Total | 25,768                           |

(2) "Remaining Premises" means the following spaces in the Project as shown on Exhibit 1 to the Tenth Amendment:

| Suite | Agreed Upon Rentable Square Feet |
|-------|----------------------------------|
| 120   | 1,670                            |
| 175   | 6,810                            |
| 180   | 1,520                            |
| 1200  | 24,266                           |
| Total | 34,266                           |

(3) "Early Termination Date" means, with respect to each Suite, comprising the Termination Space, the later of (i) March 31, 2013, or (ii) the expiration of Tenant's Extension Period (as defined herein), Tenant shall have the option to extend the Early Termination Date for any or all of the three (3) Suites comprising the Termination Space for up to two (2) sequential calendar months immediately following March 31, 2013, upon thirty (30) days prior written notice to Landlord specifying the applicable Suite(s) and extension period for each Suite (the "Extension Period"). If such extension option is initially exercised for one (1) calendar month for any Suite comprising the Termination Space, such extension option may be exercised for one (1) additional calendar month for such Suite, but not beyond May 31, 2013, upon thirty (30) days prior written notice to Landlord. Notwithstanding anything to the contrary contained herein, if such extension option is exercised as to less than all of the Suites comprising the Termination Space or for different dates for such Suites, the terms of this Section 2 shall apply to each such Suite as of the Early Termination Date for such Suite.

B. As of the Early Termination Date for each Suite comprising the Termination Space, such Suite, shall be terminated and released from the Premises, and the Premises shall be reduced by the Agreed Upon Rentable Square Feet of such Suite. Once all three Suites comprising the Termination Space have reached their respective Early Termination Date, any reference in the Lease to the Premises shall thereafter be deemed to refer to the Remaining Premises, and the Lease shall continue with respect to the Remaining Premises through the end of the First Extension Term on March 31, 2014, upon the same terms and conditions except as otherwise provided in this Amendment.

C. As of the Early Termination Date for each Suite comprising the Termination Space, Tenant shall at its expense surrender possession of such Suite to Landlord in accordance with the terms of the Lease. If Tenant holds over in all or any portion of any Suite comprising the Termination Space after the

2

Early Termination Date for such Suite, (1) Tenant shall pay Base Rent and Tenant's Proportionate Share of Operating Costs for such Suite at the rate currently provided in the Lease for each day until the earlier of the date Tenant surrenders possession of such Suite to Landlord or May 31, 2013; and (ii) if such holdover continues after May 31, 2013, Tenant shall pay holdover rent for such Suite at the holdover rate provided in the Lease for each day of such holdover after May 31, 2013, and Landlord shall be entitled to exercise all other rights and remedies relating to a holdover under the Lease.

D. Tenant shall pay Rent for the Premises as follows:

(1) Tenant shall pay Base Rent for the Termination Space and the Remaining Premises through the Early Termination Date as currently provided in the Lease. Following the Early Termination Date and continuing through the end of the First Extension Term, Tenant shall pay Base Rent for the Remaining Premises determined at an annual rate per rentable square foot and payable in monthly installments as follows:

| Period | Annual Rate Per Square Foot | Monthly Installment |
|---|---|---|
| 4/1/13 – 3/31/14 | $17.75 | $50,685.13 |

(2) Landlord has updated the measurement of the Project using the Building Owners and Managers Association "Standard Method for Measuring Floor Area in Office Buildings, "ANSI/BOMA Z65.1-2010, Method B (the "BOMA 2010 Standard"), and, commencing as of January 1, 2013 ("Project Size Adjustment Effective Date"), the Project shall consist of 413,184 rentable square feet. Tenant's Proportionate Share of Operating Costs shall be determined as follows:

(a) During the period from the Project Size Adjustment Effective Date through the Early Termination Date, Tenant's Proportionate Share of Operating Costs shall be 14.53% (calculated by dividing the combined number of rentable square feet in the Termination Space and the Remaining Premises of 60,034 by the number of rentable square feet in the Project of 413,184), and during this period Tenant shall pay Operating Cost Rent for the Termination Space and the Remaining Premises as provided in the Lease based on Tenant's Proportionate Share of Operating Costs of 14.53%.

(b) Following the Early Termination Date and continuing through the end of the First Extension Term, Tenant's Proportionate Share of Operating Costs shall be 8.29% (calculated by dividing the number of rentable square feet in the Remaining Premises of 34,266 by the number of rentable square feet in the Project of 413,184) and during this period Tenant shall pay Operating Cost Rent for the Remaining Premises as provided in the Lease based on Tenant's Proportionate Share of Operating Costs of 8.29%.

(3) Notwithstanding anything to the contrary contained herein, if Tenant's option to extend the Early Termination Date pursuant to Section 2A(3) is exercised as to less than all of the Suites comprising the Termination Space or for different dates for such Suites, the Base Rent and Tenant's Proportionate Share of Operating Costs shall be prorated and paid based on the applicable Early Termination Dates for such Suites.

E. Within twenty (20) days after written request by Landlord, Tenant shall execute and deliver an instrument in form reasonably satisfactory to Landlord and Tenant confirming the applicable Early Termination Date(s) or any other matter reasonably requested by Landlord relating to the terms of this Amendment or the Lease.

910119 Eleventh Amendment 2-19-13v2

3. <u>Miscellaneous</u>.

A.  Section 7 (ROFO Right) and Section 8 (Extension Option) of the Tenth Amendment are hereby entirely deleted from the Lease.  Tenant shall have no further rights or options to expand the Premises or to extend or renew the Lease.

B.  Landlord's notice address for purposes of the Lease shall be as follows (or such other address as Landlord may from time to time designate by notice to Tenant):

Normandale Holdings, L.L.C.
c/o Cushman & Wakefield/NorthMarq Real Estate Services
8400 Normandale Lake Boulevard, #320
Bloomington, MN 55437

With a copy to:

Normandale Holdings, L.L.C.
c/o Equity Group Investments
Two North Riverside Plaza, Suite 600
Chicago, IL  60606
Attn:  General Counsel and Leasing Coordinator

C.  Commencing on March 1, 2013, Tenant is subleasing Suite 1200 of the Remaining Premises to its affiliate, Ally Financial Inc., on the terms and conditions set forth in the Sublease in the attached <u>Exhibit 1</u>.  Simultaneously with the execution of this Amendment, Landlord, Tenant and Ally Financial Inc. shall execute and deliver a Landlord's consent to such Sublease.

D.  Landlord and Tenant hereby agree as follows:

(1)  Until and unless this Amendment is approved by the Bankruptcy Court as hereafter provided, Landlord and Tenant reserve all of their respective claims, rights and remedies under the Lease, the Bankruptcy Code and other applicable law.

(2)  Upon approval of this Amendment by the Bankruptcy Court as hereafter provided, Landlord is granted an agreed and allowed general unsecured claim against Tenant in the Bankruptcy Case equal to, with respect to each Suite comprising the Termination Space, the total amount of all Rent which would be payable for the Termination Space from the Early Termination Date for such Suite through the last day of the First Extension Term of the Lease on March 31, 2014, subject to a credit for any mitigation of damages for any rent received on account of the Termination Space relating to such period.  Landlord's general unsecured claim shall be treated and satisfied in accordance with all other allowed general unsecured claims against Tenant in the Bankruptcy Case.  It is further expressly agreed and understood that Landlord does not waive and shall not be deemed to have waived any claims, rights or remedies, including without limitation, administrative expense claims or lease rejection claims, with respect to the Remaining Premises or the Rent payable under the Lease for the Remaining Premises from and after the Early Termination Date in the event that Tenant subsequently rejects the Lease or defaults under the Lease.

E.  Landlord acknowledges and agrees that during the period beginning on February 1, 2013 through the Early Termination Date, there may be employees of Walter Investment Management Corp., a Maryland corporation, and its affiliates and/or subsidiaries ("Occupant") occupying the Premises and the Common Areas, and that Occupant shall have the right to use and occupy the

910119 Eleventh Amendment 2-19-13v2

Premises and the Common Areas in accordance with the terms and conditions of the Lease. Notwithstanding the Occupant's right to use and occupy the Premises and the Common Areas, Tenant shall be solely responsible for the performance of all of the Tenant's obligations under the Lease including, without limitation, the payment of Rent and any other charges, costs and expenses payable by Tenant under the Lease. Prior to occupying any portion of the Premises, the Occupant shall provide Landlord with a certificate of insurance listing Landlord as an additional insured and evidencing the insurance coverage required under the Lease (except that the limits referenced in the Lease shall be reduced for purposes of the Occupants to One Million Dollars ($1,000,000) Combined Single Limit for Personal Injury (including death) and Property Damage and an annual aggregate limit of not less than Two Million Dollars ($2,000,000)). This Section 3E does not amend, modify or waive any provision of the Lease, release Tenant from any liability under the Lease, or constitute a consent to any further subletting or occupancy of all or any portion of the Premise except in compliance with the terms of the Lease.

4. <u>Brokers</u>. Landlord and Tenant each represents that it has not engaged or dealt with any real estate broker, agent or finder with respect to this Amendment, except for Cushman & Wakefield/NorthMarq Real Estate Services (representing Landlord) and no broker representing Tenant. Landlord and Tenant shall indemnify and hold each other harmless from all claims, liability or expense (including reasonable attorneys' fees) in connection with any claim for broker's, finder's or other fees or commissions by any other person or entity as a result of such party's actions or alleged actions.

5. <u>Tenant Representations</u>. Tenant hereby represents to Landlord that there has been no assignment of Tenant's interest under the Lease and, except as otherwise provided herein, no sublease of all or any portion of the Premises requiring Landlord's consent that has not been obtained; and, to the best of Tenant's actual knowledge and subject to the Bankruptcy Case, without any duty of inquiry, (i) there are no existing defenses, offsets or claims that Tenant has against enforcement of the Lease or Landlord, and (ii) Landlord and Tenant are not in default under the Lease. Subject to Section 7 below, Landlord and Tenant each represent and warrant that such party has the full power, authority and legal right to execute and deliver this Amendment; this Amendment constitutes the valid and binding obligation of such party; and the execution and delivery of this Amendment by such party has been duly authorized by all necessary actions on behalf of such party.

6. <u>Entire Agreement</u>. The Lease, including, without limitation, this Amendment and all exhibits which are attached hereto and hereby incorporated by reference, constitutes the entire agreement between Landlord and Tenant with respect to the subject matter hereof, and may not be amended or modified except in a writing signed by Landlord and Tenant. Tenant acknowledges that it has not been induced to enter into this Amendment by any agreements or representations which are not set forth in this Amendment. This Amendment shall not be effective until execution and delivery by both Landlord and Tenant.

7. <u>Bankruptcy Court Approval</u>. Notwithstanding anything to the contrary contained herein, this Amendment is subject to the condition precedent that, and this Amendment shall not be effective until and unless, Tenant shall obtain approval of this Amendment and Tenant's assumption of the Lease as so amended by the Bankruptcy Court. Tenant will use its reasonable best efforts to prepare and file as soon as reasonably possible (and no later than February 28, 2013) the motion papers necessary for obtaining Bankruptcy Court approval of this Agreement, and Landlord shall provide reasonable cooperation in an attempt to obtain such approval. Tenant shall pay all Rent and otherwise perform all of its obligations under the Lease pending such Bankruptcy Court approval. If such condition is not satisfied, this Amendment shall be null and void, and the Lease shall remain unmodified and in effect.

8. <u>Counterparts</u>. This Amendment may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same document.

910119 Eleventh Amendment 2-19-13v2

Signatures to this Amendment transmitted by e-mail in PDF format shall be valid and effective to bind the party so signing.  Each party agrees to promptly deliver an execution original of this Amendment with its actual signature to the other party by overnight courier, but a failure to do so shall not affect the enforceability of this Amendment.

*[SIGNATURE PAGE(S) FOLLOWS]*

6

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Amendment as of the day and year first above written.

LANDLORD:                                     TENANT:

NORMANDALE HOLDINGS, L.L.C.          RESIDENTIAL FUNDING COMPANY, LLC

DAL

By: _____          By: _____

Name: _____          Name: _____Patrick D. Lerch_____

Title: _____          Title: _____Portfolio Manager_____

7

## EXHIBIT 1

## SUBLEASE

## SUBLEASE

**THIS SUBLEASE** (this "Sublease") is entered into as of the 27th day of February, 2013, by and between Residential Funding Company, LLC, successor in interest to Residential Funding Corporation, ("Sublessor"), and Ally Financial Inc. ("Sublessee").

### W I T N E S S E T H :

Sublessor leases approximately 60,034 square feet of space on the 1st, 3rd, 4th & 12th floors of the building located at 8400 Normandale Lake Boulevard, Bloomington, Minnesota and commonly known as Normandale Lake Office Park (the "Leased Space"), pursuant to a Standard Office Lease dated as of July 7, 2004 (as amended) between Normandale Holdings, L.L.C., successor in interest to Teachers Insurance and Annuity Association of America ("Prime Lessor") and Sublessor (the "Prime Lease"). All initially capitalized terms not otherwise defined herein shall have the meanings set forth for such terms in the Prime Lease.

THE PARTIES HERETO COVENANT AND AGREE WITH EACH OTHER AS FOLLOWS:

**FIRST – SUBLEASE**:  Sublessor hereby lets to Sublessee and Sublessee hires from Sublessor approximately 24,266 rentable square feet of the Leased Space as shown on the attached Exhibit A (the "Premises").

**SECOND – USE, TERM AND RENT**:  The Premises are to be used only for general office purposes. The term of this Sublease shall commence on the earlier of Sublessee's occupancy of the Premises or March 1, 2013 (the "Commencement Date"), and expires March 30, 2014. Notwithstanding anything to the contrary in the Prime Lease, Sublessee shall have no options to renew or extend the term of this Sublease.  This Sublease shall be construed as a sublease rather than as an assignment of the Prime Lease. The base rent for the Premises shall be thirty four thousand eight hundred eighty two and 38/100 Dollars ($34,882.38) from the Commencement Date through March 31, 2013, increasing to thirty five thousand eight hundred ninety eight and 46/100 Dollars ($35,898.46) on April 1, 2013 until expiration, payable in advance on the first business day of each and every month during the term, without setoff or deduction of any kind (except as otherwise set forth herein).  In addition to the foregoing, during the term hereof, the Sublessee shall pay to the Sublessor, in connection with the Premises, when due and payable under the Prime Lease, the Sublessee's Proportionate Share (as hereinafter defined) of all Operating Cost Rent due under the Prime Lease. The "**Sublessee's Proportionate Share**" shall be 5.87%, which is the percentage determined by dividing the Rentable Area (24,266) of the Premises by the Rentable Area (413,184) of the building (as defined in the Prime Lease).  Prime Lessor's estimate of Annual Operating Cost Rent for 2013 is approximately Thirteen Dollars and Eighty-seven Cents ($13.84) per rentable square foot in the Premises, payable in advance in monthly installments of $27,980.80 as adjusted and corrected from time to time by Prime Lessor as provided for in the Prime Lease.

**THIRD – PAYMENT OF RENT**:  Sublessee shall pay the rent at the times and in the manner aforesaid to ResCap Estate, Attn: Office Manager, 8400 Normandale Lake Boulevard, Suite 175, Bloomington, Minnesota 55437. If Sublessee fails to pay any rent hereunder within 5 days after it is due, Sublessee shall also pay those late charges as set forth in the Prime Lease.  These charges are not penalties but are designed to reasonably compensate Sublessor for its administrative, processing and accounting costs.  All interest and late charges due hereunder, and any other amounts due from

Sublessee to Sublessor pursuant to this Sublease, shall be deemed to be a part of "rent" for purposes of this Sublease.

**FOURTH – ACCEPTANCE OF PREMISES AND FURNISHINGS**: SUBLESSOR SUBLEASES AND SUBLESSEE TAKES THE FURNISHINGS **AND** THE PREMISES <u>AS IS</u>. SUBLESSEE ACKNOWLEDGES THAT, NEITHER SUBLESSOR NOR ANY SUBLESSOR AFFILIATE (AS HEREINAFTER DEFINED) HAS MADE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, WITH RESPECT TO THE FURNISHINGS **OR** ANY OF THE PREMISES, INCLUDING ANY WARRANTY OR REPRESENTATION AS TO (a) ITS FITNESS, DESIGN OR CONDITION FOR ANY PARTICULAR USE OR PURPOSE, (b) THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, (c) THE EXISTENCE OF ANY DEFECT, LATENT OR PATENT, (d) COMPLIANCE WITH LAWS, (e) LOCATION, (f) USE, (g) OPERATION, OR (h) THE EXISTENCE OF ANY HAZARDOUS SUBSTANCE; AND ALL RISKS INCIDENT THERETO ARE TO BE BORNE BY SUBLESSEE. SUBLESSEE ACKNOWLEDGES THAT THE PREMISES HAVE BEEN INVESTIGATED AND INSPECTED BY SUBLESSEE AND ARE SATISFACTORY TO SUBLESSEE. IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY OF THE PREMISES OF ANY NATURE, WHETHER LATENT OR PATENT, SUBLESSOR SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY DAMAGES, INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGES. SUBLESSEE EXPRESSLY WAIVES ANY RIGHT OF RESCISSION HEREUNDER AND RELEASES AND DISCHARGES SUBLESSOR FROM ANY AND ALL CLAIMS OR CAUSES OF ACTION THAT SUBLESSEE MAY NOW HAVE OR HEREAFTER HAVE AGAINST SUBLESSOR WITH RESPECT TO THE CONDITION OF THE PREMISES, AND SUBLESSEE SHALL INDEMNIFY, DEFEND AND HOLD SUBLESSOR AND ALL SUBLESSOR AFFILIATES HARMLESS FROM AND AGAINST ALL COSTS, CLAIMS, OR CAUSES OF ACTION, ARISING IN CONNECTION WITH OR OUT OF THE CONDITION OF THE PREMISES DURING THE TERM OF THIS SUBLEASE CAUSED BY SUBLESSEE, ITS AGENTS, INVITEES, EMPLOYEES OR CONTRACTORS. SUBLESSEE'S WAIVERS AND INDEMNIFICATION OBLIGATIONS HEREUNDER SHALL SURVIVE THE TERMINATION OF THIS SUBLEASE.

**FIFTH – FURNISHINGS**:  Sublessee shall be entitled to the use of all of the furniture, telephone handsets and other furnishings situated in the Premises as of the Commencement Date (the "<u>Furnishings</u>").  Sublessee, at Sublessee's expense, shall keep the Furnishings in good repair and condition and shall surrender the same to Sublessor, except as expressly provided hereinafter, on the expiration or earlier termination of this Sublease in as good a condition as when delivered to Sublessee, ordinary wear and tear excepted.  Upon the full and faithful completion of all terms and conditions of this Sublease, the Furnishings shall become the property of Sublessee on the first day of the last month in the term of this Sublease, and title thereto shall be deemed to have passed to the Sublessee, without warranty or representation by Sublessor.  At the end of the Sublease term, Sublessee shall be responsible for the removal of the Furnishings and any restoration requirements pursuant to the Prime Lease related to the removal of the Furnishings.

**SIXTH – PRIME LEASE**:  In addition to its obligations under this Sublease, Sublessee shall at its sole cost, promptly perform and observe all obligations of Sublessor as lessee under the Prime Lease (collectively, the "<u>Covenants</u>") as fully as if it were the lessee under the Prime Lease, irrespective of whether such obligations are more stringent than those herein imposed upon Sublessee (except for the payment of rent and any other obligations that do not relate to the Premises); and Sublessee shall not do or cause to be done, nor omit to be done, any act whereby an event of default shall occur under the Prime Lease (an "<u>Event of Default</u>"), or that would, after the giving of notice or a lapse of time, or both, constitute an Event of Default under the Prime Lease. Nothing contained in this Sublease shall be

construed as granting to Sublessee any rights or privileges under the Prime Lease; all of Sublessee's rights and privileges are as specified herein. In any case where a period of grace is granted to Sublessor as lessee under the Prime Lease with respect to the performance or observance of any Covenants, an Event of Default shall be deemed to have occurred under this Sublease if Sublessee shall not have performed or observed any of such Covenants within one-half the grace period allowed under the Prime Lease; and, in any case, where no grace period is granted under the Prime Lease for the performance or observance of any Covenant, Sublessee shall perform or observe such Covenant not less than five (5) days prior to the date when such Covenant is to be performed or observed pursuant to the Prime Lease. In any case where, pursuant to any provision of the Prime Lease, Sublessor, as lessee under the Prime Lease, is required or permitted to give any notice, Sublessee, with respect to such provision, shall be required under this Sublease to give notice to Sublessor at least thirty (30) days prior to the date on which Sublessor as lessee under the Prime Lease is required or permitted to give such notice. Sublessor does not make, and hereby expressly disclaims, any representations or warranties of Prime Lessor under the Prime Lease. In the event of a default by Prime Lessor under the Prime Lease, Sublessor shall use reasonable efforts to enforce all rights as against Prime Lessor. Sublessor shall have under this Sublease, as against Sublessee, all rights and remedies that Prime Lessor has against Sublessor as lessee under the Prime Lease, including: (a) all rights of Prime Lessor set forth in the Prime Lease to approve or consent to actions by Sublessor, as lessee, under the Prime Lease; (b) the right of Prime Lessor to exercise all remedies set forth in the Prime Lease for breach by Sublessor, as lessee under the Prime Lease, of any provision thereof; (c) the right to be named as an insured or additional insured on any policy of insurance required under the Prime Lease; (d) all rights to indemnification binding Sublessor, as lessee, under the Prime Lease for matters arising during the term of this Sublease; (e) the benefit of all waivers of rights or claims binding Sublessor, as lessee, under the Prime Lease; (f) all rights to receive certifications or assurances binding Sublessor, as lessee, under the Prime Lease; and (g) all rights provided Prime Lessor to receive from Sublessor, as lessee, under the Prime Lease, security against any liens, claims, actions, or liabilities.

**SEVENTH – EXPIRATION**: At the expiration of the term of this Sublease, Sublessee shall remove its goods and effects and peaceably yield up the Premises to Sublessor in as good condition as when delivered to Sublessee, ordinary wear and tear, damage by fire, the elements, act of the public enemy or casualty excepted; all notices to quit or vacate being hereby expressly waived, any law, usage or custom to the contrary notwithstanding. Notwithstanding the foregoing, Sublessee shall also be responsible for any restoration requirements pursuant to the Prime Lease related to the Premises.

**EIGHTH – COMPLIANCE WITH LAWS, ORDINANCES, AND ENVIRONMENTAL**: Sublessee shall promptly comply with all laws, ordinances, requirements, and regulations of the federal, state, county, municipal, and other authorities, the fire insurance underwriters, and any insurance organizations or associations codes (including all building codes, zoning codes, fire, health, air quality, police or sanitary codes) and any other government requirement, including ADA and OSHA requirements, environmental requirements and underwriter requirements, which directly or indirectly impose a duty upon Sublessor or Sublessee with respect to the use, occupancy, alteration or condition of the Premises; building; common areas, or the property; except that Sublessee shall not be required to make any alterations to the exterior of the Building, or alterations of a structural nature. Sublessee represents and warrants that it will comply with all applicable environmental laws in connection with its use of or operations in the Premises or the building.

**NINTH – WAIVER**: Sublessee hereby waives all claims against Sublessor for damages to any property or injury to or death of any person in, upon or about the Premises arising at any time and from any cause other than solely by reason of the sole, active, willful misconduct of Sublessor, its Affiliates (as defined below) and their respective members, partners, venturers, stockholders, directors, officers,

employees, agents, spouses, legal representatives, successors and assigns (collectively, the "Sublessor Parties"), and Sublessee shall indemnify, defend and hold the Sublessor Parties harmless from and against any loss, damage, claim, liability, and cost (including reasonable attorneys' fees and disbursements) arising from (a) any default, breach or violation by Sublessee under this Sublease, or (b) any damage to any property or injury to or death of any person arising from the use of the Premises by Sublessee, except such as is caused by the sole, active, willful misconduct of Sublessor, its employees or contractors. If Sublessor or any Sublessor Affiliate recovers under the liability insurance carried pursuant to the requirements of this Sublease, Sublessee is hereby released from this indemnification with respect to such party to the extent of such proceeds. "Affiliate" means, with respect to any Person (as hereinafter defined), any Person that controls, is controlled by or is under common control with such Person, together with its and their respective members, partners, venturers, directors, officers, stockholders, agents, employees and spouses. A Person shall be presumed to have control when it possesses the power, directly or indirectly, to direct, or cause the direction of, the management or policies of another Person, whether through ownership of voting securities, by contract, or otherwise. "Person" means an individual, partnership, limited liability company, association, corporation, or other entity. The provisions of this Section shall survive the termination of this Sublease.

**TENTH – VIEWING PREMISES**: Sublessee shall use the Premises exclusively for the purpose set forth herein and during the last three (3) months of this Sublease, shall permit Prime Lessor or Sublessor to display the usual "To Let" signs and to show the Premises to prospective Sublessees. Sublessee further agrees that at any time during the term Sublessor, Prime Lessor, or their agents, may enter the Premises for the purpose of examining the condition thereof, or to make repairs in any part of the Premises or the Building, but in making such reservation, Sublessor does not assume any liability for the care or supervision of the Premises or appurtenances.

**ELEVENTH – ALTERATIONS AND ASSIGNMENT**: Sublessee will not make or permit to be made any alterations or additions to the Premises, nor assign, mortgage, or pledge this Sublease, nor sublet the whole or any part of the Premises without Sublessor's prior written consent, which consent may be granted or withheld in Sublessor's sole discretion. Consent by Sublessor shall apply solely to the particular transaction consented to and shall not constitute a waiver by Sublessor of the provisions of this Sublease or the Prime Lease. Sublessee shall not install any awnings, advertisements, or signs on any part of the Premises without Sublessor's prior written consent, which consent may be granted or withheld in Sublessor's sole and absolute discretion. If required of the tenant under the Prime Lease, Sublessee shall keep the sidewalks free from ice, snow, and all obstructions.

**TWELFTH – INSURANCE**: Sublessee will not leave the Premises unoccupied during the term, nor by any act of commission or omission cause an increase in the rate of insurance or the cancellation of any insurance policy. In the event of any increase in the rate of insurance caused by Sublessee's occupancy, Sublessee agrees to pay on demand the amount of any such increase, and in default of such payment, such amount may be added to the next installment of rent as additional rent. Sublessee shall, at its sole cost and expense, obtain and maintain during the term of the Sublease, Comprehensive General Liability Insurance, including Blanket Contractual Liability coverage, with limits of not less than Five Million Dollars ($5,000,000) Combined Single Limit for Personal Injury and Property Damage; Comprehensive Automobile Liability Insurance covering all owned, non-owned and hired vehicles with limits of not less than Five Million Dollars ($5,000,000) Combined Single Limit for Personal Injury and Property Damage; and Statutory Workers Compensation and Employers Liability coverage with limits of not less than $250,000. Sublessee shall deliver to Sublessor upon request a certificate evidencing such coverages. Such insurance policies shall name Prime Lessor and Sublessor as an additional insured and shall comply with the provisions of Article Eight of the Prime Lease.

Sublessor and Sublessee shall cause each insurance policy carried by it and insuring the Premise and its fixtures and contents against loss by fire and causes covered by standard extended coverage to be written in a manner so as to provide that the insurance company waives all right of recovery by way of subrogation against the other in connection with any loss or damage covered by any such policies. Neither Sublessor nor Sublessee shall be liable to the other for any loss or damage caused by fire or any of the risks enumerated in standard extended coverage insurance, provided such insurance was obtainable at the time of such loss or damage.  Sublessee shall have the right to self-insure any risk or coverage required herein.

**THIRTEENTH – FIRE AND CASUALTY**:  Sublandlord and Subtenant hereby agree that the terms of the Prime Lease shall govern the effects of any damage to or destruction of the Premises with respect to the termination of this Sublease and Sublessee shall have the same rights against the Prime Lessor with respect to this provision as Sublessor has to Prime Lessor under the Prime Lease.

**FOURTEENTH – CONDEMNATION**: Sublandlord and Subtenant hereby agree that the terms of the Prime Lease shall govern the effects of any damage to or destruction of the Premises with respect to the termination of this Sublease and Sublessee shall have the same rights against the Prime Lessor with respect to this provision as Sublessor has to Prime Lessor under the Prime Lease.

**FIFTEENTH – DEFAULT**:  In the event Sublessee fails to perform or observe any of the covenants contained herein on its part to be observed and performed for ten (10) days after notice by Sublessor, in addition to the remedies set forth in the Prime Lease, (a) Sublessor may forthwith terminate or cancel this Sublease by notifying Sublessee as hereinafter provided, and upon such termination or cancellation, Sublessee shall be liable to Sublessor for all damages Sublessor sustains by reason of Sublessee's breach of covenant and of such termination or cancellation; or (b) Sublessor may forthwith re-enter the Premises without notice and upon re-entry may let the Premises or any part thereof as agent for Sublessee and receive the rent therefor, applying the same first to the payment of such expense as Sublessor may be put to in entering and letting the Premises and then to the payment of the rent and the fulfillment of Sublessee's covenants hereunder; and Sublessee agrees to pay and shall be liable for amounts equal to the several installments of rent as they would, under the terms of this Sublease, become due if no default had occurred, whether the demised Premises be re-let or remain vacant in whole or in part for a period less than the remainder of the term, or for the whole thereof, but Sublessee shall be entitled to be credited at the end of each month with any net amounts actually received by Sublessor during such months for the use or occupancy of the demised Premises or any part thereof; provided, however, that all sums paid and liabilities incurred by Sublessor for any of the purposes aforesaid (which Sublessee also agrees to pay and shall be liable for) shall have been first paid in full to Sublessor, either directly by Sublessee or out of moneys actually received for renting said demised Premises after Sublessor shall have received undisputed possession thereof, and the maintenance of any action or proceeding to recover possession of the Premises or any installment or installments of rent or any other moneys that may be due or become due from Sublessee to Sublessor shall not preclude Sublessor from thereafter instituting and maintaining subsequent actions or proceedings for the recovery of possession of the Premises or of any subsequent payment or payments of rent or any other moneys that may be due or become due from Sublessee or Sublessor.  A waiver by Sublessor of any breach or breaches by Sublessee of any one or more of the covenants or conditions hereof shall not bar forfeiture or any other rights or remedies of Sublessor for any subsequent breach of any such or other covenants and conditions.

**SIXTEENTH – ADDITIONAL RENT**:  If Sublessor shall make any expenditure for which Sublessee is responsible, or if Sublessee shall fail to make any payment which Sublessee is obliged to make

hereunder, then the amount thereof may, at Sublessor's option, be added to any installment of rent then due or thereafter becoming due.

**SEVENTEENTH – NOTICES**: All notices to be given hereunder by either party shall be in writing and given by personal delivery to the Sublessee or shall be sent by certified mail or Federal Express or other overnight courier service addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof. Provided, however, that it is mutually agreed that the Sublessor appoints ResCap Estate Office Manager and his/her delegates, as its agents, and that any of them may give or receive all notices to be given hereunder and notices shall be sent to any of them as follows: ResCap Estate, 8400 Normandale Lake Boulevard, Suite 175, Bloomington, Minnesota 55437. The right is hereby reserved by the Sublessor to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Sublessor to the Sublessee.

**EIGHTEENTH – TERMINATION**: If at any time proceedings in bankruptcy, or pursuant to any other act for the relief of debtors, shall be instituted by or against Sublessee, or if Sublessee shall compound Sublessee's debts or assign over Sublessee's estate or effects for payment thereof, or if any execution shall issue against Sublessee or any of Sublessee's effects whatsoever, or if a receiver or trustee shall be appointed of Sublessee's property, or if this Sublease shall by operation of law, devolve upon or pass to any person or persons other than Sublessee personally, then and in each of said cases, Sublessor may terminate this Sublease forthwith by notifying Sublessee as herein provided. Upon such termination all sums due and payable or to become due and payable by Sublessee shall at once become due and payable.

**NINETEENTH – SUBLEASE**: This is a Sublease and the Sublessor's interest in the Premises is as Lessee under the Prime Lease, a copy of which is attached hereto. This Sublease is conditioned on the consent of Prime Lessor and is expressly made subject to all the terms and conditions of the Prime Lease. If the Prime Lease is terminated, this Sublease shall terminate simultaneously and any unearned rent paid in advance shall be refunded to Sublessee.

**TWENTIETH – QUIET POSSESSION**: Sublessor hereby covenants that Sublessee, upon paying the rent as herein reserved and performing all the covenants and agreements herein contained on the part of the Sublessee, may quietly enjoy the Premises, except as herein otherwise provided, and subject, however, to the terms of the Prime Lease to Sublessor, and to the terms of any mortgages which may now or hereafter affect the Premises.

**TWENTY-FIRST – UTILITIES**: Unless otherwise covered by the Prime Lease, Sublessee will make its own arrangements for the supply and payment of all services including without limitation gas, electricity, and water ("Utilities"). Sublessee shall pay the cost of all Utilities, and any fees arising in connection with the provision of such Utilities, directly to the supplier thereof when due.

**TWENTY-SECOND – COMMISSION**: Sublessor and Sublessee each hereby represent and warrant to the other that their sole contact with the other or with the Premises has been made without the assistance of any broker or other third party. Sublessee shall indemnify, defend and hold harmless the Sublessor Parties, and Sublessor shall indemnify, defend and hold harmless Sublessee, from and against any and all claims, judgments, damages, penalties, fines, costs, liabilities, or losses (including reasonable attorneys' fees) resulting from the breach by the indemnifying party of the representation and warranty set forth in this Section.

**TWENTY-THIRD – HOLDOVER:**  Should Sublessee continue to hold the Premises after the Sublease term expires or is terminated, Sublessee shall pay to Sublessor the greater of (a) any amounts accruing under the Prime Lease for holding over or (b) 150% of the amount of the monthly rent payable during the last month prior to the expiration or termination of this Sublease and upon and subject to all of the other terms and provisions of this Sublease (including, without limitation, the continued payment of all other amounts due hereunder).  This provision shall not be construed, however, as permission by Sublessor for Sublessee to holdover and Sublessee shall be liable for all expenses, damages and liabilities which Sublessor shall suffer by reason of any holding over by Sublessee, including all damages claimed by the Prime Landlord.

**TWENTY-FOURTH – MISCELLANEOUS:**  Any act that Sublessor is permitted to perform under this Sublease may be performed at any time and from time to time by Sublessor or any Person designated by Sublessor. Each appointment of Sublessor as attorney-in-fact for Sublessee hereunder is irrevocable and coupled with an interest. Sublessor shall have no obligation to perform any act required hereunder if an Event of Default has occurred and is then existing.  This Sublease and any documents executed by Sublessee on or about the effective date hereof at Sublessor's request constitute the entire agreement between the parties and supersede all prior understandings and agreements, whether written or oral, between the parties relating to the Premises and the transactions provided for herein. Sublessor and Sublessee are business entities having substantial experience with the subject matter of this Sublease and have each fully participated in the negotiation and drafting of this Sublease. Accordingly, this Sublease shall be construed without regard to the rule providing that ambiguities in a document are to be construed against the drafter.  All of Sublessee's obligations established by and arising under this Sublease shall survive the termination of this Sublease. No modification, waiver or amendment of this Sublease or of any of its provisions shall be binding upon a party unless in writing signed by such party.  If any provision of this Sublease is deemed or held to be illegal, invalid or unenforceable, this Sublease shall be considered divisible and inoperative as to such provision to the extent it is deemed to be illegal, invalid or unenforceable, and in all other respects this Sublease shall remain in full force and effect; provided, however, that if any provision of this Sublease is deemed or held to be illegal, invalid or unenforceable there shall be added hereto automatically a provision as similar as possible to such illegal, invalid or unenforceable provision, which shall be legal, valid and enforceable. Further, should any provision contained in this Sublease ever be reformed or rewritten by any judicial body of competent jurisdiction, such provision as so reformed or rewritten shall be binding upon all parties hereto.  Sublessor and Sublessee waive trial by jury in any action, or proceeding or counterclaim brought by Sublessor or Sublessee against the other with respect to any matter arising out of or in connection with this Sublease, Sublessee's use and occupancy of the Premises, or the relationship of Sublessor and Sublessee.  The individuals signing this Sublease on behalf of Sublessor and Sublessee represent and warrant that they are empowered and duly authorized to bind Sublessor or Sublessee, as the case may be, to this Sublease according to its terms.  Sublessor and Sublessee agree that neither any provision of this Sublease nor any act of the parties shall be deemed to create any relationship between Sublessor and Sublessee other than the relationship of landlord and tenant.  Time is of the essence of each of the provisions of this Sublease.  This Sublease may be executed in counterparts, each of which shall be deemed an original but all of which counterparts collectively shall constitute one Sublease. Signatures may be exchanged by telecopy, with original signatures to follow. Each party hereto shall be bound by its own telecopied signature and shall accept the telecopied signature of the other parties hereto.  If either party commences an action to enforce the terms of, or resolve a dispute concerning, this Sublease, the court shall award the prevailing party in such action all costs and expenses incurred by such party in connection therewith, including reasonable attorneys' fees.  This Sublease shall be governed by and construed in accordance with the Laws of the state in which the Premises are located. The covenants and agreements contained in the foregoing Sublease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the date first above written.

SUBLESSOR:
**Residential Funding Company, LLC**

By:

Name:     Patrick D. Lerch

Title:     Portfolio Manager

SUBLESSEE:
**Ally Financial Inc.**

By:

Name:     JOAN C. BURRELL

Title:     DIRECTOR

## EXHIBIT A

**Premises**



12th Floor
8400 Normandale Lake Boulevard, Bloomington, Minnesota

**Note:** Furnishings depicted above are representational only. Sublessor has no obligation to provide any furnishings other than those existing in the Premises as of the Commencement Date.