**Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------
                       )

In re:                    )    Case No. 12-12020 (MG)
                       )
RESIDENTIAL CAPITAL, LLC, et al.,  )    Chapter 11
                       )
            Debtors.   )    Jointly Administered
                       )
----------------------------------------------------------------

**NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 365(a), AND
554(a), FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY RULE
6006-1 AUTHORIZING REJECTION OF UNEXPIRED LEASE AND
ABANDONMENT OF PERSONAL PROPERTY**

     **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*for Order Under 11 U.S.C. §§ 105(a), 365(a) and 554(a), Fed. R. Bankr. P. 6006 and*

*9014 and Local Bankruptcy Rule 6006-1 Authorizing Rejection of Unexpired Lease and*

*Abandonment of Personal Property* (the "Motion").

     **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **March 21, 2013 at 10:00 a.m. (prevailing Eastern time)** before the Honorable

Martin Glenn, at the United States Bankruptcy Court for the Southern District of New

York, Alexander Hamilton Custom House, One Bowling Green, New York, New York
10004-1408, Room 501.

   **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion
must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the
Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case
Management, and Administrative Procedures approved by the Bankruptcy Court [Docket
No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic
case filing system, and be served, so as to be received no later than **March 14, 2013 at
4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel for the Debtors, Morrison &
Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Gary S. Lee,
Lorenzo Marinuzzi and Samantha Martin); (b) the Office of the United States Trustee for
the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY
10004 (Attn: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the
Office of the United States Attorney General, U.S. Department of Justice, 950
Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attn: US Attorney General,
Eric H. Holder, Jr.); (d)  Office of the New York State Attorney General, The Capitol,
Albany, NY 12224-0341 (Attn: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of
the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New
York, NY 10007 (Attn: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc.,
Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attn: Richard M.
Cieri); (g) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders,
Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036
(Attn: Ken Ziman & Jonathan H. Hofer); (h) counsel for the committee of unsecured

creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New

York, NY 10036 (Attn: Kenneth Eckstein & Greg Horowitz); (i) counsel for Ocwen Loan

Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attn: Jennifer C. DeMarco and Adam Lesman); (j) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071

(Attention:  Thomas Walper and Seth Goldman); (k) Internal Revenue Service, P.O. Box

7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail

Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (l) Securities and Exchange

Commission, New York Regional Office, 3 World Financial Center, Suite 400, New

York, NY 10281-1022 (Attn: George S. Canellos, Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: February 28, 2013           Respectfully submitted,
     New York, New York

                        /s/ Gary S. Lee
                        Gary S. Lee
                        Lorenzo Marinuzzi
                        Samantha Martin
                        MORRISON & FOERSTER LLP
                        1290 Avenue of the Americas
                        New York, New York 10104
                        Telephone: (212) 468-8000
                        Facsimile: (212) 468-7900

                        *Counsel for the Debtors and*
                        *Debtors in Possession*

**Hearing Date and Time:  March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  March 14, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------ ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------ ) | | |

**MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 365(a), AND 554(a),  FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY RULE 6006-1 AUTHORIZING REJECTION OF UNEXPIRED LEASE AND ABANDONMENT OF PERSONAL PROPERTY**

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1], hereby move (the "Motion") for entry of an order under sections 105(a),

365(a), and 554(a) of title 11 of the United States Code, as amended (the "Bankruptcy

Code"), rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and rule 6006-1 of the Local Bankruptcy Rules for the Southern

District of New York, authorizing the rejection of the unexpired lease set forth on

Exhibit 1[2] annexed hereto (including any amendments, modifications, guaranties,

supplements, restatements, or other agreements related thereto, and without regard to

whether such agreement, instrument or other document is listed on Exhibit 1, the

"Rejected Lease") and the abandonment of certain personal property.  In support of the

Motion, the Debtors rely upon and incorporate by reference the Declaration of Erik

Ferguson, Senior Vice President of Business Excellence at GMAC Mortgage, LLC, a

copy of which is annexed hereto as Exhibit 2.

In support of this Motion, the Debtors represent as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1]  The names of the Debtors in these cases and their respective tax identification numbers are identified on
     Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in
     Support of Chapter 11 Petitions and First Day Motions (the "Whitlinger Affidavit") [Docket No. 6].
[2]  The inclusion of a contract on Exhibit 1 does not serve as an admission by the Debtors that such contract
     is executory.

2.      The statutory and legal predicates for the relief requested herein are

Bankruptcy Code sections 105(a), 365(a), and 554(a), and Bankruptcy Rules 6006 and

9014.

## BACKGROUND

3.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a

voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.

The Debtors are managing and operating their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly

administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in

these Chapter 11 cases.

4.      On May 16, 2012, the United States Trustee for the Southern District of

New York (the "U.S. Trustee") appointed a nine-member official committee of unsecured

creditors (the "Creditors' Committee").

5.      On June 20, 2012, the Court directed that an examiner be appointed

[Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the

examiner (the "Examiner") [Docket No. 674].[3]

6.      On November 21, 2012, the Court entered orders approving the sale of

(i) the Debtors' mortgage loan servicing and origination platform (the "Platform Sale") to

Ocwen Loan Servicing, LLC ("Ocwen") and Walter Investment Management Corp.

("Walter"), and (ii) the Debtors' legacy whole loan portfolio (the "Legacy Sale") to

---

[3] The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc.
("AFI"), which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest
mortgage servicing business and the tenth largest mortgage origination business in the United States.  A
more detailed description of the Debtors, including their business operations, their capital and debt
structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger
Affidavit.

Berkshire Hathaway Inc. (together with Ocwen and Walter, the "Purchasers"). [Docket

Nos. 2246 and 2247].

7.    The Lease, entered into by Liberty Property Limited Partnership (the

"Landlord") and Debtor GMAC Mortgage LLC (formerly known as GMAC Mortgage

Corporation, the "Tenant"), on or about January 31, 2006 (as subsequently amended from

time to time), is for Tenant's use of the premises located at 1100 Virginia Drive, Fort

Washington Pennsylvania (the "Premises").

## RELIEF REQUESTED

8.    By this Motion, the Debtors respectfully request, pursuant to Bankruptcy

Code sections 105(a), 365(a), and 554(a), Bankruptcy Rules 6006 and 9014, and Rule

6006-1 of the Local Bankruptcy Rules for the Southern District of New York, that this

Court enter an order, substantially in the form annexed hereto as Exhibit 3, (i) authorizing

the rejection and termination of the Rejected Lease identified on Exhibit 1,[4] effective as

of April 30, 2013 (the "Rejection Date"); (ii) authorizing the abandonment of certain

personal property located on the Premises (as defined below); and (iii) extending the

deadline for the Debtors to assume or reject the Rejected Lease through and including

April 30, 2013.[5]  In addition, the Landlord has agreed to waive any rejection damages

---

[4] Consistent with Bankruptcy Rule 6006(f), Exhibit 1 contains no more than 100 executory contracts and
    unexpired leases to be rejected.  The Debtors are currently performing a review and evaluation of other
    executory contracts and unexpired leases that are not the subject of this Motion.  As this process
    continues, the Debtors expect to identify additional contracts and leases to be assumed or rejected.
    Accordingly, the Debtors reserve the right to seek to reject additional contracts and leases in the future.
    This Motion should not be construed as a determination that any contracts or leases not listed herein are
    to be assumed or rejected.

[5] The landlord has agreed to a consensual extension of the deadline for the Debtors to assume or reject the
    Rejected Lease through and including April 30, 2013.  As a condition to agreeing to the extension, the
    Landlord is requiring the Debtors to enter into a lease amendment substantially in the form annexed to
    the Motion as Exhibit 4.

ny-1080021

claims it may have against the Debtors.   The Debtors submit that the rejection of the

Rejected Lease is reasonable and represents an appropriate exercise of sound business

judgment.

**BASIS FOR RELIEF**

9.      The Debtors currently are in the process of evaluating which of the

Debtors' executory contracts and unexpired leases should be assumed and assigned to the

Purchasers in connection with the Platform Sale and the Legacy Sale, or assumed to

facilitate the Debtors' wind down activities.  As part of this analysis, the Debtors have

already determined that the Rejected Lease listed on Exhibit 1 is burdensome to the estate,

will not be assigned to the Purchasers, and is no longer needed for the wind down of the

Debtors' business operations.  By rejecting the Rejected Lease, the Debtors will avoid

incurring unnecessary costs in connection with a lease that provides no tangible benefit to

the Debtors' estates.

10.      The Rejected Lease relates to a property in Ft. Washington, Pennsylvania

that consists of 450,000 square feet—a space much too large to suit the Debtors' current

needs.  Indeed, in addition to the Debtors' employees, the Premises currently are

occupied by the employees of the Purchasers and Ally Financial, Inc. ("AFI"), all of

which are compensating the Debtors for their employees' current occupancy.  Neither the

Purchasers nor AFI are interested in receiving an assignment of the Rejected Lease.

Instead, each of the Purchasers and AFI has entered into new leases with the Landlord,

which take effect on May 1, 2013, and Walter has agreed to sublease a portion of its

space to the Debtors following the rejection of the Rejected Lease.  Accordingly, the

Debtors have determined that it is no longer desirable for the Debtors to continue to be

bound by the obligations under the Rejected Lease listed on Exhibit 1 following the
Rejection Date.

11.      In addition, the Debtors propose to abandon certain personal property
located at the Premises (the "Abandoned Property")[6] in connection with rejection of the
Rejected Lease.  The Abandoned Property primarily consists of fixtures and furniture that
are of minimal value to the Debtors' estates, and burdensome insofar as the costs and
expenses of removal are expected to exceed the net proceeds realizable from their sale.
Indeed, the Debtors obtained an appraisal, which places a liquidation value of
approximately $71,000 for the Abandoned Property, and a cost of $552,000 to dispose of
the Abandoned Property and restore the Premises, resulting in a net cost to the estates of
$481,000.

12.      The resulting savings from the rejection of the Rejected Lease, the
abandonment of the Abandoned Property, and the Landlord's waiver of any rejection
damages claim, will preserve cash for the Debtors and assist the Debtors in managing
their estates.  Based on the foregoing, the Debtors have determined through the exercise
of their business judgment that rejection of the Rejected Lease is in the best interests of
the Debtors' estates, their creditors and other parties in interest.

## APPLICABLE AUTHORITY

**A.      Rejection of the Rejected Lease Is a Sound Exercise of the Debtors' Business
Judgment and Should Be Approved by the Court.**

13.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a
debtor in possession, "subject to the court's approval, may assume or reject any

---

[6] The Abandoned Property is specifically identified in the Fifth Amendment, annexed hereto as Exhibit 4.

ny-1080021

executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386 (2d Cir. 1997). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (internal quotation marks and reference omitted).

14.     Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve a debtor's decision to reject under section 365(a) of the Bankruptcy Code. *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts and unexpired leases); *In re Orion Pictures Corp.*, 4 F.3d at 1098 (noting that section 365 "permits the [debtor], subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996) ("A bankruptcy court reviewing a trustee's decision to assume or reject an executory contract should apply its 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it.").

15.     The "business judgment" test merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See, e.g.*, *Bregman v. Meehan (In re Meehan)*, 59 B.R. 380, 385

6

(E.D.N.Y. 1986) ("The primary issue under the business judgment test is whether

rejection of the contract would benefit general unsecured creditors."); *In re Helm*, 335

B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("To meet the business judgment test, the debtor

in possession must establish that rejection will benefit the estate.") (quotations omitted).

16.     Courts generally will not second-guess a debtor's business judgment

concerning whether the assumption or rejection of an executory contract or unexpired

lease would benefit the debtor's estate. *See In re Balco Equities Ltd.*, 323 B.R. 85, 98

(Bankr. S.D.N.Y. 2005) ("A court should defer to a debtor's decision that rejection of a

contract would be advantageous….") (quotations omitted); *Phar-Mor, Inc. v. Strouss

Bldg. Assocs.*, 204 B.R. 948, 951-52 (N.D. Ohio 1997) ("Whether an executory contract

is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor ….

Courts should generally defer to debtor's decision whether to reject an executory

contract.") (internal citations omitted).

17.     For the reasons set forth above, the Debtors clearly have satisfied the

"business judgment" standard for rejecting the Rejected Lease.  The Rejected Lease is

financially burdensome and unnecessary to the wind down of the Debtors' business

operations or to the administration of the Debtors' estates.  The Debtors and their

advisors have reviewed the Rejected Lease and have determined that they do not have

any value beneficial to the Debtors' estates.  Accordingly, the Debtors have determined

that the Rejected Lease constitutes an unnecessary drain on the Debtors' estates and, thus,

rejection of the Rejected Lease reflects the Debtors' exercise of sound business judgment.

18.     In sum, the Debtors believe that the proposed rejection of the Rejected

Lease is tailored to minimize administrative expenses and to maximize distributions to

ny-1080021

creditors in these chapter 11 cases.  The Debtors submit that the rejection of the Rejected

Lease should be approved because it is in the best interests of the Debtors' estates and

represents a proper exercise of the Debtors' business judgment.

**B.      Rejection of the Rejected Lease Is a Sound Exercise of the Debtors' Business
Judgment and Should Be Approved by the Court.**

19.      The Debtors submit that the standard set forth in section 554(a) of the

Bankruptcy Code is satisfied.  Section 554(a) provides that a debtor in possession may

abandon, subject to court approval, "property of the estate that . . . is of inconsequential

value and benefit to the estate." 11 U.S.C. §554(a).  Before authorizing abandonment of

property, a Bankruptcy Court must find either that: (i) the property is burdensome to the

estate, or (ii) the property is of inconsequential value and inconsequential benefit to the

estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497

(1986); *TWA, Inc. v. Texaco, Inc. (In re Texaco, Inc.)*, 92 B.R. 38, 44 (S.D.N.Y. 1988); *In

re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 882 n.7 (Bankr. S.D.N.Y. 1990).

20.      Here, the Debtors have determined that the Abandoned Property is of

minimal value to the Debtors' estates and burdensome insofar as the costs and expenses

of removal are expected to exceed the net proceeds realizable from their sale.

Specifically, the removal of the Abandoned Property would result in a net cost to the

Debtors' estates of $481,000.  The cost savings that result from the abandonment of the

Abandoned Property will preserve cash for the Debtors and assist the Debtors in

managing their estates.  In addition, on February 13, 2013, the Debtors notified the

secured parties that hold liens on the Abandoned Property in writing of the proposed

abandonment.  Accordingly, the Debtors submit that the abandonment of the Abandoned

Property should be approved because it is in the best interests of the Debtors' estates and

represents a proper exercise of the Debtors' business judgment.

### NOTICE

21.    The Debtors have provided notice of this Motion in accordance with the

Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket

No. 141].

### CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order,

substantially in the form annexed hereto as Exhibit 3, granting the relief requested in this

Motion and such other and further relief as may be just and proper.


New York, New York                         /s/ Gary S. Lee
Dated: February 28, 2013                   Gary S. Lee
                                           Lorenzo Marinuzzi
                                           Samantha Martin
                                           MORRISON & FOERSTER LLP
                                           1290 Avenue of the Americas
                                           New York, New York 10104
                                           Telephone: (212) 468-8000
                                           Facsimile: (212) 468-7900

                                           *Counsel to the Debtors
                                           and Debtors in Possession*

**Exhibit 1**

**Rejected Lease**

|  | **Debtor** | **Contract/Lease Counterparty (Name/Address)** | **Description of Contract/Lease** | **Effective Date of Rejection** |
|---|---|---|---|---|
| 1 | GMAC Mortgage, LLC | Liberty Property Limited Partnership<br><br>5 Walnut Grove Drive, Suite 200<br>Horsham, PA 19044<br><br>Attn: Vice President/ City Manager | Lease Agreement, dated as of January 31, 2006, as amended,<br><br>relating to property located at<br><br>1100 Virginia Drive Fort Washington, PA 19034--3200 | April 30, 2013 |

## Exhibit 2

**Declaration**

*(Please see attached)*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- )
                                                          )
In re:                                                    )    Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,       )    Chapter 11
                                                          )
                            Debtors.        )    Jointly Administered
                                                          )
------------------------------------------------------------------- )

**DECLARATION OF ERIK FERGUSON, SENIOR VICE PRESIDENT**
**AT RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' MOTION**
**FOR ORDER UNDER 11 U.S.C. §§ 105(a), 365(a), AND 554(a), FED. R. BANKR.**
**P. 6006 AND 9014 AND LOCAL BANKRUPTCY RULE 6006-1 AUTHORIZING**
**REJECTION OF UNEXPIRED LEASE AND ABANDONMENT OF**
<u>**PERSONAL PROPERTY**</u>

I, Erik Ferguson declare as follows:

    **A.**    **Background and Qualifications**

        I serve as Senior Vice President of Business Excellence at GMAC Mortgage, LLC,

one of the debtors and debtors in possession in the above-captioned Chapter 11 cases

(collectively, the "<u>Debtors</u>"). I have held this position since August 2010. In my role as

Senior Vice President of Business Excellence at GMAC Mortgage, LLC, I am responsible

for, among other things, the management of owned and leased facilities from the Debtors,

conduct their respective business activities. I am authorized to submit this declaration

(the "Declaration") in support of the *Debtors' Motion for Order Under 11 U.S.C. §§ 105(a), 365(a), and 554(a), Fed. R. Bankr. P. 6006 and 9014, and Local Bankruptcy Rule 6006-1 Authorizing Rejection of Certain Executory Contracts and Unexpired Leases*, dated as of November 30, 2012 (the "Motion").[1]

Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge or information supplied or verified by personnel in departments within the Debtors' various business units.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

1.    The Debtors currently are in the process of evaluating which of the Debtors' executory contracts and unexpired leases should be assumed and assigned to the Purchasers in connection with the Platform Sale and the Legacy Sale, or assumed to facilitate the Debtors' wind down activities.  As part of this analysis, the Debtors have already determined that the Rejected Lease is burdensome to the estate, will not be assigned to the Purchasers, and is no longer needed for the wind down of the Debtors' business operations.  By rejecting the Rejected Lease, the Debtors will avoid incurring unnecessary costs in connection with a lease that provides no tangible benefit to the Debtors' estates.

2.    The Rejected Lease relates to a property in Ft. Washington, Pennsylvania that consists of 450,000 square feet—a space much too large to suit the Debtors' current needs.  Indeed, in addition to the Debtors' employees, the Premises currently are occupied by the employees of the Purchasers and Ally Financial, Inc.

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Motion.

("AFI"), all of which are compensating the Debtors for their employees' current occupancy. Neither the Purchasers nor AFI are interested in receiving an assignment of the Rejected Lease. Instead, each of the Purchasers and AFI has entered into new leases with the Landlord, which take effect on May 1, 2013, and Walter has agreed to sublease a portion of its space to the Debtors following the rejection of the Rejected Lease. Accordingly, the Debtors have determined that it is no longer desirable for the Debtors to continue to be bound by the obligations under the Rejected Lease listed on Exhibit 1 following the Rejection Date.

3.      In addition, the Debtors propose to abandon certain personal property located at the Premises (the "Abandoned Property") in connection with rejection of the Rejected Lease. The Abandoned Property primarily consists of fixtures and furniture that are of minimal value to the Debtors' estates, and burdensome insofar as the costs and expenses of removal are expected to exceed the net proceeds realizable from their sale. Indeed, the Debtors obtained an appraisal, which places a liquidation value of approximately $71,000 for the Abandoned Property, and a cost of $552,000 to dispose of the Abandoned Property and restore the Premises, resulting in a net cost to the estates of $481,000.

4.      The resulting savings from the rejection of the Rejected Lease, the abandonment of the Abandoned Property, and the Landlord's waiver of any rejection damages claim, will preserve cash for the Debtors and assist the Debtors in managing their estates. Based on the foregoing, the Debtors have determined through the exercise of their business judgment that rejection of the Rejected Lease is in the best interests of the Debtors' estates, their creditors and other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  New York, New York
          February 28, 2013

/s/ Erik Ferguson
_____
Erik Ferguson
Senior Vice President of Business
Excellence at GMAC Mortgage, LLC

**Exhibit 3**

**Proposed Order**

(*Please see attached*)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------
In re:                                         )        Case No. 12-12020 (MG)
                                               )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,       )        Chapter 11
                                               )
                              Debtors.         )        Jointly Administered
-----------------------------------------------------------

### ORDER UNDER 11 U.S.C. §§ 105(a), 365(a), AND 554(a), FED. R. BANKR. P. 6006 AND 9014 AND LOCAL BANKRUPTCY RULE 6006-1 AUTHORIZING REJECTION OF UNEXPIRED LEASE AND <u>ABANDONMENT OF PERSONAL PROPERTY</u>

Upon the motion (the "<u>Motion</u>") of the Debtors[1] for entry of an order (the

"<u>Order</u>"), pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States

Code, as amended (the "<u>Bankruptcy Code</u>") and rules 6006 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing the rejection of the

unexpired lease set forth on <u>Exhibit 1</u>[2] annexed hereto (including any amendments,

modifications, guaranties, supplements, restatements, or other agreements related thereto,

and without regard to whether such agreement, instrument or other document is listed on

<u>Exhibit 1</u>, the "<u>Rejected Lease</u>"), as more fully described in the Motion; and the Court

having jurisdiction to consider the Motion and grant the requested relief in accordance

with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] The inclusion of a contract on <u>Exhibit 1</u> does not serve as an admission by the Debtors that such contract is executory.

the Declaration of Erik Ferguson, Senior Vice President of Business Excellence at GMAC

Mortgage, LLC in support of the Motion; and the Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors,

and all parties in interest; and it appearing that proper and adequate notice of the Motion

has been given and that no other or further notice is necessary; and the legal and factual

bases set forth in the Motion establish just and sufficient cause to grant the requested

relief herein; and upon the record herein; and after due deliberation thereon; and good

and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:

1.      The Motion is GRANTED.

2.      The time by which the Debtors may assume or reject the Rejected Lease is

extended to and including April 30, 2013.

3.      Pursuant to Section 365(a) of the Bankruptcy Code and Bankruptcy Rules

6006 and 9014, the Debtors' rejection of the Rejected Lease identified on Exhibit 1

annexed hereto is approved, effective as of the Rejection Date.

4.      Pursuant to Section 554(a) of the Bankruptcy Code, the Debtors are

authorized to abandon the Abandoned Property as of the Rejection Date.

5.      The Amendment annexed as Exhibit 4 to the Motion is approved.

6.      The Debtors are hereby authorized to execute and deliver all instruments

and documents, and take all other actions, as may be necessary or appropriate to

implement and effectuate the relief granted in this Order.

7.      Entry of this Order is without prejudice to the rights of the Debtors,

including, but not limited to, the right to seek further, other, or different relief regarding

the Debtors' executory contracts and unexpired leases pursuant to, among other things,

section 365 of the Bankruptcy Code.

      8.    This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

Dated:   New York, New York
          _____, 2013

                                _____
                                THE HONORABLE MARTIN GLENN
                                UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 4**

### **Amendment**

(*Please see attached*)

## FIFTH AMENDMENT TO LEASE AGREEMENT

**THIS FIFTH AMENDMENT** is made as of the 28th day of February, 2013, by and between **LIBERTY PROPERTY LIMITED PARTNERSHIP**, a Pennsylvania limited partnership ("Landlord"), and **GMAC MORTGAGE, LLC**, a Delaware limited liability company ("Tenant").

## BACKGROUND:

A.    Landlord and Tenant (then known as GMAC Mortgage Corporation) entered into a Lease Agreement dated January 31, 2006 (the "Original Lease"), covering premises containing approximately 450,000 rentable square feet (the "Premises"), located in Landlord's building (the "Building") at 1100 Virginia Drive, Fort Washington, Pennsylvania, as more fully described in the Lease.

B.    Landlord and Tenant entered into a First Amendment to Lease Agreement, dated November 18, 2009 (the "First Amendment"), modifying the Original Lease in certain respects.

C.    On May 14, 2012, Tenant and numerous related debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101, et. seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and Tenant is one of the debtors in In re: Residential Capital, LLC, et al., Case No. 12-12020 (MG) (the "Bankruptcy Case").

D.    Landlord and Tenant entered into a Second Amendment to Lease Agreement dated December 7, 2012, a Third Amendment to Lease Agreement dated December 28, 2012, and a Fourth Amendment to Lease Agreement dated as of January 31, 2013, each of which were approved by Order of the Bankruptcy Court (the "Second Amendment", the "Third Amendment and the Fourth Amendment", respectively, and together with the Original Lease and the First Amendment, collectively, the "Lease"), modifying the Original Lease in certain respects.

E.    Landlord has entered into the following leases, as contemplated in the Second Amendment and the Fourth Amendment:  (i) a lease (the "Walter Lease") with Walter Investment Management Corp., a Maryland corporation ("Walter"), for a portion of the Premises containing approximately 215,000 rentable square feet (as shown in green and orange on the attached plan labeled **Exhibit "A"**, the "Walter Space"), (ii) a lease (the "Ocwen Lease") with Ocwen Financial Corporation, a Florida corporation ("Ocwen"), for a portion of the Premises containing approximately 128,000 rentable square feet (as shown in blue on the attached plan labeled **Exhibit "A"** (the "Ocwen Space"), and (iii) a lease (the "Ally Lease") with Ally Financial Inc., a Delaware corporation ("Ally"), for a portion of the Premises containing approximately 117,500 rentable square feet (as shown in purple on the attached plan labeled **Exhibit "A"** (the "Ally Space"), constituting leases covering substantially the entire Premises currently leased by Tenant under the Lease.  Landlord desires that Tenant vacate and surrender the Walter Space, the Ocwen Space and the Ally Space and terminate the Lease and Tenant is willing to do so provided that Landlord waives any right to rejection damages in the Bankruptcy Case with respect to the Lease and that this Fifth Amendment is approved by the Bankruptcy Court.

1

**NOW, THEREFORE**, the parties hereto, in consideration of the mutual promises and covenants contained herein and in the Lease, and intending to be legally bound hereby, agree that the Lease is amended as follows:

1.      All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Lease.

2.      Landlord agrees that the time for Tenant to assume or reject the Lease in the Bankruptcy Case is hereby extended to April 30, 2013 for the purpose of having Tenant reject the Lease on said date as set forth below.  For the avoidance of doubt, Tenant's execution of this Fifth Amendment, and any request for Court approval hereof, shall in no way be construed as an assumption of the Lease.

3.      Landlord and Tenant agree that Tenant shall reject the Lease and the Lease shall terminate at 11:59 p.m. on April 30, 2013 (the "Termination Date"); thereafter, neither party shall have any rights or obligations under the Lease other than any obligations which by their terms survive the expiration or earlier termination of the Lease, including without limitation, the post-Termination Date reconciliation of operating expenses under the Lease through the Termination Date; *provided*, however, that Tenant reserves all rights under the Lease and the Bankruptcy Code with respect to the amount and priority of any Tenant obligations asserted by Landlord.  Tenant hereby waives any further extension of the right to assume the Lease in the Bankruptcy Case.

4.      Landlord acknowledges and agrees that, until the Termination Date, Walter, Ally and/or Ocwen (each, an "Occupant" and together, the "Occupants"), shall have the right to use and occupy the Premises and the Common Areas in accordance with the terms and conditions of the Lease. Notwithstanding each Occupant's right to use and occupy the Premises and the Common Areas, as set forth above, Landlord agrees that it shall have no recourse against the Occupants, or each of them, for the performance of Tenant's obligations under the Lease and, until the Termination Date, Tenant shall be solely responsible for the performance of all of the Tenant's obligations under the Lease including, without limitation, the payment of Rent and any other charges, costs and expenses payable by Tenant under the Lease. Each Occupant has heretofore provided Landlord with a certificate of insurance listing Landlord as an additional insured and evidencing commercial general liability insurance coverage of not less than $1,000,000 combined single limit for personal injury (including death) and property damage and an aggregate limit of not less than $2,000,000.  The obligation of the Occupants to maintain such insurance shall be in addition to Tenant's obligation to maintain insurance under the Lease.

5.      Until the Termination Date, each Occupant shall have the right to use Tenant's generator located at the Property as of the date hereof (the "Generator") and the Common Service Areas and all of the property located in the Common Service Areas, including all furniture, fixtures and equipment, in the same manner as it is currently used. For purposes hereof, the "Common Service Areas" shall include the cafeteria, fitness center, loading dock, corridors and conference center areas.

6.      In consideration for Landlord's waiver of any lease rejection claim it may have in the Bankruptcy Case, as set forth in Section 6(b) below, Tenant agrees that, on the Termination

2

PHDATA 4301660_2

Date, the Generator and all of the furniture, fixtures and equipment and other property located in the Common Service Areas specifically listed in **Exhibit "B"** attached hereto shall be abandoned by Tenant and shall become the property of Landlord, without payment by Landlord.

7.　　(a)　　Tenant shall vacate and surrender the Premises to Landlord on the Termination Date, leaving the Premises in "as is" condition. This will supersede and fulfill all surrender obligations of Tenant under the Lease.

　　　　　(b)　　Landlord shall be deemed to have waived any lease rejection claim it may have in the Bankruptcy Case with respect to the Premises on or after the Termination Date.

　　　　　(c)　　Tenant shall, upon Landlord's request, permit Landlord reasonable access to the Premises in order to demise the Walter Space, the Ocwen Space and the Ally Space. Landlord and Tenant agree to reasonably coordinate in the performance of such work in order to complete such work as expeditiously as possible. Any personnel used by Landlord to demise any portion of the Premises shall comply with Tenant's building security requirements for contractors. Landlord shall provide Tenant with a daily roster of such contractors.

8.　　Tenant acknowledges and agrees that the Lease is in full force and effect and Tenant has no claims or offsets against Rent due or to become due hereunder, subject to any rights pursuant to the Bankruptcy Code.

9.　　Except as expressly modified herein, the terms and conditions of the Lease shall remain unchanged and in full force and effect. Specifically, without limitation, in the event of any default by Tenant of any of its obligations under the Lease, as hereby amended, Landlord shall be entitled to pursue all remedies available under the Lease, as hereby amended, or otherwise at law or in equity.

10.　　This Fifth Amendment shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

11.　　The obligations of the parties hereunder are contingent upon the entry of a final Order by the Bankruptcy Court approving this Fifth Amendment.

12.　　This Fifth Amendment may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same document. Signatures to this Fifth Amendment transmitted by e-mail in PDF format shall be valid and effective to bind the party so signing.  Each party agrees to promptly deliver an execution original of this Fifth Amendment with its actual signature to the other party by overnight courier, but a failure to do so shall not affect the enforceability of this Fifth Amendment.

*[Remainder of page intentionally left blank]*

3

**IN WITNESS WHEREOF**, Landlord and Tenant have executed this Fifth Amendment as oldie day and year first above written.

**LANDLORD:**

**LIBERTY PROPERTY LIMITED PARTNERSHIP**

By:    Liberty Property Trust, Sole General Partner

By:    _____
       Name: James J. Mazzarelli, Jr.
       Title:   Senior Vice President,
              Regional Director

**TENANT:**

**GMAC MORTGAGE, LLC**

By:    _____
       Name: Patrick D. Lerch
       Title:   Portfolio Manager

4

**EXHIBIT "A"**

**PLAN SHOWING WALTER SPACE, OCWEN SPACE AND ALLY SPACE**



PHDATA 4301660_2

**EXHIBIT "B"**

## LIST OF FURNITURE, FIXTURES AND
## EQUIPMENT IN THE COMMON SERVICE AREAS

Furniture, Fixtures and/or Equipment List

<u>Cafeteria</u>
- All existing kitchen and serving area equipment, utensils and furnishings *
- All seating area furniture including approximately:
  - 75 36"x36" Rythum by Stylex square tables
  - 12 36"x60" Rythum by Stylex tables
  - 380 cafeteria chairs
  - One podium
- All existing ceiling hung audiovisual equipment
- One wall-mounted 46" NEC MultiSync 4610 Flat Screen TV

<u>Cafeteria Patio</u>
- One large MagiCater gas barbecue
- 25 36" square tables
- 100 stackable chairs
- 15 umbrella stands
- 15 umbrellas

<u>Café</u>
- All existing "kitchenette" and serving area equipment and furnishings *
- All furniture including approximately:
  - 3 two-seat upholstered sofas
  - 3 upholstered chairs
  - 6 small upholstered chairs on wheels
  - 3 18" round end tables
  - 3 Oval coffee tables
  - 3 64"x120" curved wooden slatted screens
  - 7 36" round café tables
  - 28 café chairs
  - 5 Bar stools/chairs
  - Miscellaneous merchandise display racks and shelves *
- Two ceiling hung 46" NEC MultiSync 4610 Flat Screen TVs

<u>Main Lobby</u>
- All furniture including approximately:
  - 12 upholstered chairs
  - 3 30" round coffee tables
  - Reception counter and desk console
  - 4 Haworth task chairs
- One wall-mounted 46" NEC MultiSync 4610 Flat Screen TV

B-1

PHDATA 4272363_3

<u>Main Lobby Meeting Room</u>
- All furniture including approximately:
    - o  1 40" round table
    - o  5 plastic and upholstery chairs with wheels

<u>Fitness Center</u>
- All Fitness Equipment including:
    - o  3 Cybex- LCX 425 T Treadmills
    - o  3 Sporta Art T631 Treadmills
    - o  2 Octane Q35-Pro 350 Elliptical Trainers
    - o  2 Sports Art E830 Elliptical Trainers
    - o  1 True Z7 Upright Bike Trainer
    - o  1 True Z7 Recumbent Bike Trainer
    - o  1 Sports Art C532R Recumbent Bike Trainer
    - o  1 H4400A Hoist Multi-station
    - o  1 G7 Life Fitness Multi-station
    - o  2 Hoist benches
    - o  18 sets Free Weights with racks
- One wall-mounted 45" Flat Screen TV
- Two wall-mounted fans

<u>Fitness Center Changing and Shower Rooms</u>
- All existing lockers, benches and furnishings

<u>Generator</u>
- 1 Caterpillar 2500kVA Model SR4-B, SN 7TN00940 Generator

<u>Mobile Vertical Lift</u>
- 1 JLG 20MVL motorized mobile lift

<u>Town Center 3</u>
- All furniture including approximately:
    - o  7 30" round tables
    - o  28 stackable plastic and metal chairs
- Various kitchen equipment including *
    - o  1 Hoshizaki  model DCM-270 BAH-OS icemaker
    - o  1 Beverage Air E Series double door refrigerator
- One wall-mounted 46" NEC MultiSync 4610 Flat Screen TV

<u>A-V Closet SC14</u>
- White Noise Controls - Synet Audio Matrix System and related components
- Cafeteria Video Controls - Toner XHC-12-1G
- Other miscellaneous A-V control components *

**\* Does not include any  equipment on loan or  provided by vendors as part of a service or sales arrangement.**

7