UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date:  March 28, 2013 at 2:00 p.m.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
  :
In re:                            :    Chapter 11
  :
RESIDENTIAL CAPITAL, LLC, *et al.,*  :    Case No. 12-12020 (MG)
  :
               Debtors.  :    Jointly Administered
  :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JOINT STIPULATION OF FACTS REGARDING THE
## SALE OBJECTION OF AMBAC ASSURANCE CORPORATION AND
## THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION

Pursuant to the *Stipulation and Order Regarding the Sale Objection of Ambac As-surance Corporation and the Segregated Account of Ambac Assurance Corporation* dated Feb-ruary 21, 2013 (Dkt. No. 2993), Ambac Assurance Corporation, the Segregated Account of Am-bac Assurance Corporation and the above-captioned debtors hereby stipulate that the following facts are true and correct for the purpose of the hearing to consider the Objection (as defined be-low) and this Court's adjudication thereof:

I.    **BACKGROUND**

    A.    **Chapter 11 Cases**

        1.    On May 14, 2012 ("Petition Date"), each of the above-captioned debtors ("Debtors") filed a voluntary petition for relief with the United States Bankruptcy Court for the Southern District of New York ("Court") under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their businesses and managed their properties as debt-ors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The cases commenced by the Debtors on the Petition Date (collectively, the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in the

Chapter 11 Cases. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine-member official committee of unsecured creditors.

### B.    **The Debtors**

2.      The Debtors were formerly a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor. Prior to the closing of the Debtors' court-approved asset sales, the Debtors and their non-debtor affiliates operated the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.

3.      The Debtors maintain their headquarters at 1177 Avenue of the Americas, New York, New York 10036, which serves as the primary office for the senior executives and core management team of the largest operating Debtors – Residential Capital, LLC, Residential Funding Company LLC and GMAC Mortgage, LLC.

### C.    **Ambac**

4.      Ambac Assurance Corporation ("Ambac Assurance") is a financial guaranty insurance company, known as a "monoline," organized under the laws of the State of Wisconsin with its principal place of business in New York, New York.

5.      On March 24, 2010, the Wisconsin Office of the Commissioner of Insurance approved the creation of the Segregated Account of Ambac Assurance Corporation (the "Segregated Account" and, together with Ambac Assurance, "Ambac") pursuant to Wisconsin Statutes § 611.24. That same day, the Circuit Court for Dane County, Wisconsin, upon the Verified Petition of the Commissioner of Insurance ("Commissioner"), placed the Segregated Account into statutory rehabilitation under Wisconsin Statutes §§ 645.31 and 645.32. Pursuant to Wisconsin Statutes § 611.24(3)(e), the Segregated Account is a separate Wisconsin insurer with

- 2 -

the legal capacity and authority to sue in its own name and right.  Ambac allocated the policies

described below and all claims related to those policies to the Segregated Account pursuant to

the Plan of Operation for the Segregated Account attached to the Commissioner's Verified Peti-

tion.

        D.      **The Sale Motion and Objection**

        6.      On May 14, 2012, the Debtors filed their *Motion Pursuant to 11 U.S.C.*

*§§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014*

*For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Ex-*

*pense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form*

*and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale*

*of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Au-*

*thorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption*

*and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and*

*(IV) Granting Related Relief* (Dkt. No. 61; "Sale Motion").

        7.      On July 26, 2012, the Debtors filed a *Notice of (I) Debtors' Intent to*

*Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and*

*Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* (Dkt.

No. 924), which was amended and restated on September 18, 2012 (Dkt. No 1484; as amended

and restated, "Notice").  The Debtors have filed supplements to the Notice from time to time.

        8.      On October 12, 2012, Ambac timely filed an objection to the Notice (Dkt.

No. 1810; "Objection").  On November 21, 2012, the Court entered an Order (Dkt. No. 2246;

"Sale Order") approving the Sale of the Debtors' servicing platform and other assets to Ocwen

Loan Servicing, LLC ("Ocwen").  The Sale Order expressly excepts Ambac from its scope, and

- 3 -

the hearing to consider the Objection has been adjourned from time to time on the consent of Ambac and the Debtors.  <u>See</u> Sale Order ¶ 61.

9.     The Objection sets forth Ambac's objection to the proposed assumption and assignment of, among other contracts, contracts related to securitization deals containing Servicing Triggers (as defined below) in connection with the Sale.  Specifically, as set forth in the Objection, Ambac maintains that certain terms of the Sale Order, if made applicable to Ambac, would impermissibly diminish or eliminate important rights Ambac believes it has against Ocwen, the proposed successor servicer, in connection with this subset of Ambac insured deals, a position the Debtors dispute.

## II.    THE SERVICING TRIGGERS

### A.    Overview of Debtor Use of Financial Guarantee Policies

10.    In order to enhance the marketability of securities issued in connection with certain of their securitization transactions (commonly and hereinafter referred to as "<u>RMBS Transactions</u>"), the Debtors regularly obtained financial guarantee insurance policies from Ambac Assurance, which policies guaranteed principal and interest payments to certain classes of securities issued in connection with these RMBS Transactions.  In connection with the issuance of such policies, certain Debtors entered into Insurance and Indemnity Agreements with Ambac Assurance providing Ambac Assurance with certain rights and remedies, and Ambac Assurance was also expressly named as a third-party beneficiary of, and has a variety of rights and remedies against the Debtors under, certain of the other principal transaction documents that comprise an RMBS Transaction (collectively the "<u>Transaction</u> <u>Documents</u>").  (The rights and remedies of Ambac mentioned in the immediately preceding sentence, to the extent that they relate to servicing, are referred to herein as "<u>Servicing-Related</u> <u>Rights</u>.")

- 4 -

B.      **Ambac's Servicing-Related Rights**

11.      The transaction documents contain certain Servicing-Related Rights, in-
cluding (but not limited to) contractual provisions that: require the servicers to service the mort-
gage loans in accordance with certain specified standards, all applicable laws and regulations,
and other more specific requirements described in the Transaction Documents; require the ser-
vicers to provide detailed information to the Trustees, Ambac Assurance and/or other transaction
participants about their servicing activities, transaction cash flows and the mortgage loans; re-
quire the servicers to indemnify the trusts and/or Ambac Assurance in certain circumstances; and
provide Ambac Assurance and the Trustees of these trusts with the right to terminate the ser-
vicers under certain circumstances.

      i.      *The Servicing Triggers*

12.      One Servicing-Related Right incorporated into certain of the RMBS
Transactions is the ability of Ambac to terminate (or direct the applicable Trustee to terminate)
the servicers in RMBS Transactions when a negative transaction performance trigger (a "Servic-
ing Trigger") is "tripped." Servicing Triggers measure performance relative to pre-established
loss and delinquency thresholds specified in the servicing agreement. These provisions typically
provide that the servicer can be removed if the mortgage loans serviced in the deal exceed speci-
fied loss or delinquency thresholds.

13.      Attached as Exhibit A is a table that lists those RMBS Transactions that
the Debtors wish to assign to Ocwen that contain Servicing Triggers and additional detail about

- 5 -

the type of Servicing Triggers applicable to each RMBS Transaction.[1]  Attached as <u>Exhibit B</u> are

Ambac's compilation of the relevant excerpts from each of the applicable Transaction Docu-

ments that establish the Servicing Triggers.  The Debtors are in the process of verifying this

compilation and to the extent necessary, the parties will supplement or amend this stipulation to

account for any agreed upon reconciliations.[2]  Attached as <u>Exhibit C</u> are copies of relevant

Transaction Documents consisting of the relevant Pooling and Servicing Agreements for each

the deals listed on Exhibit A.[3]

14.    In each Pooling and Servicing Agreement for the RMBS Transactions

identified on <u>Exhibit A</u>, Section 7.05, entitled "Servicing Trigger; Removal of Master Servicer,"

provides that Ambac Assurance may remove or cause the removal of the applicable Debtor or its

successor as Master Servicer if a "Servicing Trigger" has occurred.  The Servicing Triggers gen-

erally vary slightly among loan types and vintage, but in all cases reference losses and/or delin-

quencies.  The RMBS Transactions subject to the Objection that have Servicing Triggers contain

one or more of the following four triggers, as set forth in <u>Exhibit A</u>:

- Current Rolling Six-Month Delinquency Ratio – This is the average over the most
  recently ended six-month period of the principal balances of loans 90 (or, in some
  cases, 60) or more days delinquent, in foreclosure or held as real-estate owned
  properties (generally as a result of a prior foreclosure), expressed as a percentage

---

[1]  In addition to those listed on <u>Exhibit A</u>, there are other RMBS Transactions that the Debtors also seek to assign to
Ocwen.  The RMBS Transactions listed on <u>Exhibit A</u> are those identified to date by Ambac that contain Servicing
Triggers.  However, the terms of the documents control and Ambac and the Debtors each reserve all rights with re-
spect to any deal listed or not listed on <u>Exhibit A</u>.  In addition, the parties shall confer regarding supplementing the
information contained in <u>Exhibit A</u> and any agreed upon additions will be presented through a supplement or
amendment to this stipulation.  To the extent the parties cannot agree, each party agrees that each shall be permitted
to introduce a revised <u>Exhibit A</u> containing additional Servicing Trigger deals and supplementing the Servicing
Trigger related information in <u>Exhibit A</u> by way of a supplemental declaration.
[2]  To the extent the parties cannot agree, the Debtors shall be permitted to provide their version of the compilation by
way of a supplemental declaration.
[3]  The parties shall confer regarding supplementing the documents contained in <u>Exhibit C</u> and any agreed upon addi-
tions will be presented through a supplement or amendment to this stipulation.  To the extent the parties cannot
agree, each party agrees that each shall be permitted to introduce the additional document by way of a supplemental
declaration.

- 6 -

of the then-current outstanding principal balance of all remaining loans in the
RMBS Transaction.

- Three-Month Consecutive Rolling Six-Month Delinquency Ratio – This trigger is
  tripped if the Current Rolling Six-Month Delinquency Ratio exceeds the specified
  trigger amount for three consecutive months. The threshold for the Current Roll-
  ing Six-Month Delinquency Ratio is higher than this trigger, preventing a trigger
  event due to temporary spikes in delinquencies.

- Twelve-Month Loss Amount – This is the total dollar amount of losses on the
  mortgage loans during the prior 12-month period. This amount is measured
  against, and the trigger is expressed as a percentage of, the then-current outstand-
  ing principal balance of all remaining loans in the RMBS Transaction.

- Cumulative Loss Ratio – This trigger looks back on a cumulative basis to the cut-
  off date for a particular RMBS Transaction.[4] As of any date, the total cumulative
  dollar amount of losses on the mortgage loans since the cut-off date of the trans-
  action is calculated, expressed as a percentage of the original principal balance of
  all loans in the RMBS Transaction as of the cut-off date of the RMBS Transac-
  tion, and that number is compared to the threshold level of cumulative losses
  specified through the date of such determination.

15.    The remedies available to Ambac in the event that a Servicing Trigger is

tripped are set forth in the Transaction Documents, specifically section 7.05 of each Pooling and

Servicing Agreement. In all respects pertinent to the Objection, the Pooling and Servicing

Agreements, speak for themselves and require no extrinsic evidence for their interpretation. The

Parties respectfully refer the Court to Exhibit B hereof for relevant excerpts from each Pooling

and Servicing Agreement and to Exhibit C hereof for copies each Pooling and Servicing Agree-

ment

## III.    OTHER AGREEMENTS BEYOND THE SCOPE OF THE HEARING

16.    Prior to the Petition Date, the Servicing Triggers for 13 RMBS Transac-

tions ("Terminated Servicer Transactions") were tripped. As a result, Ambac gave notice prior

to the Petition Date of its decision not to renew the term of the Master Servicer for those transac-

---

[4]  The cut-off date is a designated date within the Transaction Documents for a particular securitization deal and may
be the same as the closing date.

tions beyond June 30, 2012.  Pursuant to the Objection, Ambac objected to the assumption and

assignment of the Terminated Servicer Transactions to Ocwen.  The Debtors have subsequently

acknowledged that they will not oppose transfer of the Terminated Servicer Transactions to a

servicer of Ambac's choosing on terms and conditions acceptable to the Debtors and approved

by this Court on due and proper notice.  Therefore, that issue is beyond the scope of the hearing

on the Objection scheduled for March 28, 2013.

Dated:   New York, New York
         March 4, 2013

MORRISON & FOERSTER LLP                  PATTERSON BELKNAP WEBB & TYLER LLP
Attorneys for Debtors and Debtors in Pos-   Attorneys for Ambac Assurance Corporation and
session                                  the Segregated Account of Ambac Assurance Cor-
                                         poration


By: /s/ Norman S. Rosenbaum              By: /s/ David W. Dykhouse
       Norman S. Rosenbaum                      David W. Dykhouse
1290 Avenue of the Americas              1133 Avenue of the Americas
New York, New York 10104                 New York, New York 10036-6710
Telephone: (212) 468-8000                Telephone:  (212) 336-2000
Fax: (212) 468-7900                      Fax:  (212) 336-2222

- 8 -

**<u>EXHIBIT A</u>**

| Policy | Name | Current Rolling Six-Month Delinquency Rate | Three-Month Rolling Six-Month Delinquency Rate | Twelve-Month Loss Amount | Cumulative Losses |
|--------|------|--------------------------------------------|------------------------------------------------|--------------------------|-------------------|
| | | | | | |
| AB0562BE | Residential Funding Corp 2002-KS4 | 19.00% | NAP | 3.00% | 6.00% |
| AB0593BE | Residential Funding Corp 2002-KS6 | 19.00% | NAP | 3.00% | 6.00% |
| AB0636BE | Residential Funding Corp. 2002-KS8 | 19.00% | NAP | 3.00% | 6.00% |
| AB0678BE | Residential Asset Securities Corp. 2003-KS5 | 19.00% | NAP | 3.00% | 4.50% |
| AB0704BE | Residential Asset Securities Corp. 2003-KS9 | 19.00% | NAP | 3.00% | 4.50% |
| | | | | | |
| AB0610BE | Residential Asset Mtge Products 2002-RZ4 | 13.75% | NAP | NAP | 9.00% |
| AB0646BE | Residential Asset Mtge Products 2003-RZ1 | 13.75% | NAP | NAP | 9.00% |
| AB0655BE | Residential Asset Mtge Products 2003-RZ2 | 13.75% | NAP | NAP | 9.00% |
| | | | | | |
| AB0248BE | Residential Funding Corporation 1999-RS1 | 15.00% | 13.00% | 2.75% | 8.00% |
| AB0581BE | Residential Asset Mtge Products 2002-RS4 | 12.00% | 10.00% | 2.75% | 8.00% |
| AB0597BE | Residential Asset Mtge Products 2002-RS5 | 12.00% | 10.00% | 2.75% | 8.00% |
| AB0688BE | Residential Asset Mtge. Products 2003-RS6 | 12.00% | 10.00% | 2.75% | 8.00% |
| AB0763BE | Residential Asset Mtge. Products 2004-RS5 Trust | 12.00% | 10.00% | 2.75% | 8.00% |
| | | | | | |
| AB0538BE | Residential Asset Mtge Products 2002-RP1 | NAP | NAP | 5.50% | 16.00% |

**<u>EXHIBIT B</u>**

## EXHIBIT B

**Exhibit B-1**: *Contract Excerpts for Series 2002-KS4, Series 2002-KS6 and Series 2002-KS8 ("B-1 Transactions")*

***\*The following PSA provisions are identical or substantially identical for the B-1 Transactions. Differences are noted in bold print.***

### Section 7.05 Servicing Trigger, Removal of Master Servicer.

(a)  Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

<blockquote>

(a)    the Rolling Six-Month Delinquency Ratio is greater than 19.00% for the then-current distribution date;

(b)    the aggregate Twelve Month Loss Amount is greater than or equal to 3.00% of the average aggregate Stated Principal Balance of the Mortgage Loans for the then-current Distribution Date and the eleven preceding Distribution Dates; or

(c)    the aggregate Realized Losses on the Mortgage Loans exceed (a) with respect to the first 24 Distribution Dates, 2.25% of the aggregate Cut-Off Date Principal Balance, (b) with respect to the next 12 Distribution Dates, 3.50% of the aggregate Cut-Off Date Principal Balance, (c) with respect to the next 12 Distribution Dates, 4.50% of the aggregate Cut-Off Date Principal Balance, and (d) with respect to all Distribution Dates thereafter, 6.00% of the aggregate Cut-Off Date Principal Balance.

</blockquote>

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period in which the most recent Distribution Date occurs which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any Distribution Date.

**Distribution Date:**  The 25th day of any month beginning in **(2002-KS4: the month immediately following the month of the initial issuance of the Certificates; 2002-KS6: October 2002; 2002-KS8)** or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

B-2

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate plus the sum of the applicable Mortgage Insurance Premium Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate plus the sum of the applicable Mortgage Insurance Premium Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Certificate Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.  **(*The following is contained in Series 2002-KS8 ONLY*:)  Realized Losses allocated to the Class SB Certificates shall be allocated first to the REMIC III Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the REMIC III Regular Interest SB-PO in reduction of the Principal Balance thereof.**

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date **(2002-KS4: June 1, 2002; 2002-KS6: September 1,**

B-3

**2002; 2002-KS8: December 1, 2002)** after giving effect to all installments of principal due on or prior thereto (***Insert the Cut-Off Date month and year with respect to each series***)**,** whether or not received.

B-4

**Exhibit B-2**:  *Contract Excerpts for Series 2002-RS4, Series 2002-RS5, Series 2003-RS6 and Series 2004-RS5 ("B-2 Transactions")*

***The following PSA provisions are identical or substantially identical for the B-2 Transactions.  Differences are noted in bold print.***

**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)     Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)     At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)     Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)     After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)     No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

B-5

**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(i)      the aggregate Rolling Six-Month Delinquency Ratio is greater than 12.00% for the then-current Distribution Date;

(ii)     the aggregate Rolling Six-Month Delinquency Ratio is greater than 10.00% for the then-current and two preceding Distribution Dates;

(iii)    the aggregate Twelve-Month Loss Amount is greater than or equal to 2.75% of the aggregate Stated Principal Balance of the Mortgage Loans; or

(iv)     the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed  (a) with respect to the first 12 Distribution Dates, 2.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12 Distribution Dates, 3.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 5.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 6.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 8.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods. **(*Note*: the PSA for Series 2004-RS5 does not contain this defined term.  However, it appears to be in error, rather than deliberate.  This defined term is identical in all series addressed in this document that contain such defined term -- *i.e.*, every series except 2004-RS5 -- and the expectation is that, if it were included in the PSA for Series 2004-RS5, it would be identical.)**

**Distribution Date:**  The 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods. **(*Note*:  the PSA for Series 2004-RS5 does not contain this defined term.  However, it appears to be in error, rather than deliberate.  This defined term is identical in all series addressed in this document that contain such defined term -- *i.e.*, every series except 2004-RS5 -- and the expectation is that, if it were included in the PSA for Series 2004-RS5, it would be identical.)**

**Series 2002-RS4 ONLY:**

B-6

**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2002-RS5 ONLY (*as compared to Series 2002-RS4*):**
**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, **plus (ii) any Deferred Interest added to the principal balance of the Mortgage Loan pursuant to the terms of the Mortgage Note,** minus (**iii**) the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2003-RS6 and 2004-RS5 (*as compared to Series 2002-RS4*):**
**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) **the sum of (a)** the Cut-Off Date Principal Balance of the Mortgage Loan, **plus (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification,** minus (ii) the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any

B-7

Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2002-RS4 ONLY:**

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Series 2002-RS5 ONLY (*as compared to Series 2002-RS4*) :**

B-8

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced **to the extent such interest does not constitute Deferred Interest that has been added to the principal balance of such Mortgage Loan**, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Series 2003-RS6 and 2004-RS5 (*as compared to Series 2002-RS4*):**
**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if

B-9

any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) oc-curred, to the extent applied as recoveries of interest at the Net Mortgage Rate (or Modi-fied Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate In-surer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, **Servicing Advances** or **other** expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) **(1)** the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, **or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer,** and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been re-ceived.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstand-ing immediately prior to such Deficient Valuation and the principal balance of the Mort-gage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Ser-vice Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Ser-vicer has notified the Trustee and the Insurer in writing that the Master Servicer is dili-gently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any ap-plicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**
  -   **2002-RS4:  August 1, 2002**
  -   **2002-RS5:  September 1, 2002**
  -   **2003-RS6:  July 1, 2003**
  -   **2004-RS5:  May 1, 2004**

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal bal-ance thereof at the Cut-Off Date after giving effect to all installments of principal due on

B-10

or prior thereto (or due during the month of **insert month and year applicable to each transaction**), whether or not received.

B-11

**Exhibit B-3**: *Contract Excerpts for Series 2002-RZ4, Series 2003-RZ1 and Series 2003-RZ2 ("B-3 Transactions")*

***\*The following PSA provisions are identical or substantially identical for the B-3 Transactions. Differences are noted in bold print.***

### Section 7.05 Servicing Trigger, Removal of Master Servicer.

(a)  Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

B-12

**Series 2002-RZ4:**

**<u>Servicing Trigger</u>:**   As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **April 2005** Distribution Date through and including the **October 2005** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **November 2005** Distribution Date through and including the **October 2006** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **November 2006** Distribution Date through and including the **October 2007** Distribution Date, 7.40% of the Cut-off Date Balance and (d) with respect to the **November 2007** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

**Series 2003-RZ1:**

**<u>Servicing Trigger</u>:**   As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **July 2005** Distribution Date through and including the **January 2006** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **February 2006** Distribution Date through and including the **January 2007** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **February 2007** Distribution Date through and including the **January 2008** Distribution Date, 7.40% of the Cut-off Date Balance and (d) with respect to the **February 2008** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

**Series 2003-RZ2:**

**<u>Servicing Trigger</u>:**   As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **September 2005** Distribution Date through and including the **March 2006** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **April 2006** Distribution Date through and including the **March 2007** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **April 2007** Distribution Date through and including the **March 2008** Distribution Date, 7.40% of the Cut-off

B-13

Date Balance and (d) with respect to the **April 2008** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

### Series 2002-RZ4 and 2003-RZ1:

**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction. Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction. To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mort-

B-14

gage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

**Series 2003-RZ2 ONLY (*as compared to Series 2002-RZ4*):**
**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances**, Servicing Advances** or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) **(1) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer,** the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.  **Realized Losses allocated to the Class SB Certificates shall be allocated first to the REMIC III Regular Interest SB-IO in reduction of the**

B-15

**accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the REMIC III Regular Interest SB-PO in reduction of the Principal Balance thereof.** To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

**Distribution Date:** The 25th day of any month beginning in January 2003, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Cut-Off Date:**
- **Series 2002-RZ4:  October 1, 2002**
- **Series 2003-RZ1:  January 1, 2003**
- **Series 2003-RZ2:  March 1, 2003**

**Cut-Off Date Balance:**
- **Series 2002-RZ4:  $500,000,952.10**
- **Series 2003-RZ1:  $780,000,817.49**
- **Series 2003-RZ2:  $325,000,022.61**

**Rolling Six-Month Delinquency Ratio:** As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

B-16

**Exhibit B-4**:  *Contract Excerpts for Series 2003-KS5 and Series 2003-KS9 (“*B-4 *Trans-actions*”)

***\*The following PSA provisions are identical or substantially identical for the B-4 Transactions.  Differences are noted in bold print.***

### Section 7.05 Servicing Trigger, Removal of Master Servicer.

(a)  Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of written directions to remove the Master Servicer pursuant to the pre-ceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servic-ing Trigger is continuing, until and unless the Master Servicer has been removed as pro-vided in clause (b), the Master Servicer covenants and agrees to act as the Master Ser-vicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer’s discre-tion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Ser-vicer will, upon the receipt of each such notice of extension (a “Master Servicer Exten-sion Notice”) become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provid-ed in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

B-17

**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(a)    the Rolling Six-Month Delinquency Ratio is greater than 19.00% for the then-current distribution date;

(b)    the aggregate Twelve Month Loss Amount is greater than or equal to 3.00% of the average aggregate Stated Principal Balance of the Mortgage Loans for the then-current Distribution Date and the eleven preceding Distribution Dates; or

(c)    the aggregate Realized Losses on the Mortgage Loans exceed (a) with respect to the first 24 Distribution Dates, 1.50% of the aggregate Cut-Off Date Principal Balance, (b) with respect to the next 12 Distribution Dates, 2.50% of the aggregate Cut-Off Date Principal Balance, (c) with respect to the next 12 Distribution Dates, 3.50% of the aggregate Cut-Off Date Principal Balance, and (d) with respect to all Distribution Dates thereafter, 4.50% of the aggregate Cut-Off Date Principal Balance.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Distribution Date:**  The 25th day of any month beginning in **(2003-KS5: July 2003; 2003-KS9: November 2003)** or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the sum of (a) the Cut-Off Date Principal Balance of the Mortgage Loan, plus (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

B-18

**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate plus the applicable Mortgage Insurance Premium Rate and plus the Certificate Insurer Premium Modified Rate, in each case from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate plus the applicable Mortgage Insurance Premium Rate, plus the Certificate Insurer Premium Modified Rate, and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, Servicing Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) (1) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction. Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Certificate Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction. Realized Losses allocated to the Class SB Certificates shall be allocated first to the **(Series 2003-KS5: REMIC V; Series 2003-KS9: REMIC III)** Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the **(Series 2003-**

B-19

**KS5: REMIC V; Series 2003-KS9: REMIC III)** Regular Interest SB-PO in reduction of the Principal Balance thereof.

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date **(2003-KS5: June 1, 2003; 2003-KS9: October 1, 2003)** after giving effect to all installments of principal due on or prior thereto **(2003-KS5: or due during the month of June 2003; 2003-KS9: or due during the month of October 2003),** whether or not received.

B-20

**Exhibit B-5**: *Contract Excerpts for Series 2002-RP1*

**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)     Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)     At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)     Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)     After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)     No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger:**    As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(a)     the aggregate Twelve Month Loss Amount is greater than or equal to 5.50% of the aggregate Stated Principal Balance of the Mortgage Loans; or

B-21

(b)        the aggregate Realized Losses on the Mortgage Loans since the Cut-Off Date exceed (a) with respect to the first 12 Distribution Dates, 4.50% of the aggregate Cut-Off Date Principal Balance, (b) with respect to the next 12 Distribution Dates, 7.50% of the aggregate Cut-Off Date Principal Balance, (c) with respect to the next 12 Distribution Dates, 10.50% of the aggregate Cut-Off Date Principal Balance, (d) with respect to the next 12 Distribution Dates, 13.50% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 16.00% of the aggregate Cut-Off Date Principal Balance.

**Twelve Month Loss Amount**:  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance**:  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss**:  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Pay-

B-22

ment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**  February 1, 2002

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of February 2002), whether or not received, exclusive of any arrearages.

B-23

**Exhibit B-6**: *Contract Excerpts for Series 1999-RS1*

**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)    Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)    At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)    Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)    After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)    No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger:**    As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(i)    the aggregate Rolling Six-Month Delinquency Ratio is greater than 15.00% for the then-current Distribution Date;

B-24

(ii)     the aggregate Rolling Six-Month Delinquency Ratio is greater than 13.00% for the then-current and two preceding Distribution Dates;

(iii)    the aggregate Twelve-Month Loss Amount is greater than or equal to 2.75% of the aggregate Stated Principal Balance of the Mortgage Loans; or

(iv)    the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed  (a) with respect to the first 12 Distribution Dates, 2.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12 Distribution Dates, 3.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 5.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 6.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 8.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Distribution Date:**  The 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, plus (ii) any Deferred Interest added to the principal balance of the Mortgage Loan pursuant to the terms of the Mortgage Note, minus (iii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date

B-25

of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced to the extent such interest does not constitute Deferred Interest that has been added to the principal balance of such Mortgage Loan, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**  March 1, 1999

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of March 1999), whether or not received.

B-26

**<u>EXHIBIT C</u>**

The documents contained in <u>Exhibit C</u> are voluminous.  Copies will be provided to the Court and any other party upon written request by such party.

C-1