Hearing Date and Time: March 21, 2013 at 10:00 a.m. EST
Objection Deadline: March 14, 2013 at 4:00 p.m. EST

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Erica Richards

*Counsel for the Debtors and*
 *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |

**DEBTORS' APPLICATION UNDER BANKRUPTCY CODE**
**SECTIONS 327(a), 328(a) AND 363 FOR ENTRY OF AN ORDER APPROVING**
**THIRD ADDENDUM TO ENGAGEMENT AGREEMENT WITH**
**FTI CONSULTING, INC., AS FINANCIAL ADVISOR TO THE DEBTORS**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby apply (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit 1, under sections 327(a), 328(a) and 363 of title 11 of the United

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No.6] (the "Whitlinger Affidavit").

44627/0071-9284976v3
ny-1080689

States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), approving a third addendum (the "Third Addendum") to the Engagement Agreement (as defined below) with FTI Consulting, Inc. ("FTI"), the previously retained financial advisor to the Debtors, a copy of which Third Addendum is attached hereto as Exhibit 2.  In support of this Application, the Debtors rely on (a) the declaration of William J. Nolan (the "Nolan Declaration") dated March 6, 2013, attached hereto as Exhibit 3; and (b) the declaration of James Whitlinger, Chief Financial Officer of the Debtor, Residential Capital, LLC ( the "Whitlinger Declaration") dated  March 6, 2013, attached hereto as Exhibit 4.  In further support of this Application, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.    As more fully discussed below, by this Application the Debtors are requesting approval of a single modification to the previously approved retention of FTI as their financial advisor.  Specifically, under the Engagement Agreement, FTI is entitled to seek compensation for services provided to the Debtors on an hourly basis, subject to certain monthly caps.  Pursuant to the Rollover Provision (as defined below) of the Engagement Agreement, to the extent FTI incurs fees in excess of the monthly cap for a given month, it is permitted to include or "rollover" such excess compensation to the subsequent month, provided the monthly cap applicable to such subsequent month is not otherwise reached.  As currently provided under the Engagement Agreement, the Rollover Provision period will expire at the end of March 2013.

2.    By this Application, the Debtors seek to extend the period for which the Rollover Provision will apply.  The Debtors believe such relief is appropriate because, due to a change in

2

circumstances, FTI has been required to expend time greater than was anticipated over periods different than projected at the outset of the Debtors' chapter 11 cases. Accordingly, the Debtors and FTI seek to extend the period in which the Rollover Provision will apply through and including the effective date of a chapter 11 plan. Except as modified under the Third Addendum, the previously approved terms of FTI's employment will remain unchanged.

## JURISDICTION AND VENUE

3. This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a), 328 and 363, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

## BACKGROUND

A.  **General Background**

4. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015 (b). No trustee has been appointed in these Chapter 11 cases.

5. On the Petition Date, the Debtors filed the Sale Motion[2], and on June 28, 2012, the Court entered an order approving the sale and bid procedures for the sale of the Debtors' assets (the "Sale Procedures Order") [Docket No. 62].

---

[2] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bank. P. 2002, 6004, 6006 and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and*

3

6. On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

7. On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674] (the "Examiner").

8. Ocwen Loan Servicing, LLC ("Ocwen") and Berkshire Hathaway Inc. ("Berkshire Hathaway") each submitted qualified bids in accordance with the Sale Procedures Order.

9. On October 23, 2012 and October 24, 2012, after two days and twenty-eight rounds of bidding, the Debtors successfully conducted an auction for the sale of the Debtors' mortgage loan origination and servicing platform assets (the "Platform Assets") to Ocwen for $3 billion.

10. On October 25, 2012, after eleven rounds of bidding, the Debtors successfully conducted an auction for the sale of the Debtors' legacy whole loan assets (the "Whole Loan Assets") to Berkshire Hathaway for 1.5 billion.

11. On November 2, 2012, certain of the Debtors entered into an asset purchase agreement pursuant to which Ocwen agreed to purchase the Platform Assets, with a portion of the Debtors' Platform Assets to be assigned to Walter Investment, or one of Walter Investment's affiliates (the "Ocwen APA"). [See Docket No. 2050]. Also on November 2, 2012, certain of

---

*Expense Reimbursement; (II) Scheduling Bid Hearing and Sale Deadline; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the "Sale Motion") [Docket No. 61].*

the Debtors entered into an asset purchase agreement pursuant to which Berkshire Hathaway agreed to purchase the Whole Loan Assets (the "Berkshire Hathaway APA"). See id.

12. At a hearing held on November 19, 2012, the Court approved the Sale Motion on the record. On November 21, 2012, the Court entered orders approving the Ocwen APA (the "Ocwen Sale") [Docket No. 2246] and the Berkshire Hathaway APA (the "Berkshire Hathaway Sale") [Docket No. 2247].

13. The approved sale to Walter Investment (the "Walter Sale") closed on January 31, 2013.

14. The a Berkshire Hathaway Sale closed on February 5, 2013.

15. The Ocwen Sale closed on February 15, 2013.

16. On February 2, 2013, the Examiner notified the Court that the projected delivery date for the Examiner's report had been extended through early May 2013. See *Third Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Dkt. No. 2870].

B. **The Retention of FTI**

17. On June 27, 2012, the Debtors filed the *Debtors' Application for Order Under Bankruptcy Code Sections 327(a) and 328(a) Authorizing Employment and Retention of FTI Consulting, Inc. as Financial Advisor* [Docket No. 526] (the "Retention Application"). The Retention Application sought approval of an engagement letter and Standard Terms and Conditions between the Debtors and FTI dated August 25, 2011 (the "Engagement Letter"), and the Addendum to the Engagement Agreement between FTI and the Debtors dated June 26, 2012 (the "June 26, 2012 Addendum" and collectively with the Engagement Letter, as subsequently amended, the "Engagement Agreement").

5

18.     On July 20, 2012, the Debtors filed an Addendum to the Engagement Agreement dated July 18, 2012 (the "First Addendum"), which superseded the June 26, 2012 Addendum in its entirety. See Exhibit 2 to *Supplemental Affidavit in Support of the Debtors' Application for Authorization to Employ and Retain FTI Consulting, Inc. as Financial Advisor to the Debtors* [Docket No. 850].

19.     On July 25, 2012, the Court entered an order approving the retention of FTI as financial advisor to the Debtors [Docket No. 902] (the "Retention Order").

20.     On February 18, 2013, the Debtors filed the *Application Under Sections 327(a), 328(a) and 363 of the Bankruptcy For The Entry of An Order Modifying the Retention and Employment of FTI Consulting, Inc. as Financial Advisor To the Debtors Pursuant Second Addendum Nunc Pro Tunc To December 5, 2012, and For Related Relief* [Docket No. 2943], seeking approval of an Addendum to the Engagement Agreement dated February 15, 2013 (the "Second Addendum"), which expanded the scope of services authorized to be provided by FTI *nunc pro tunc* to December 5, 2012 in connection with the Walter Sale (the "Walter Transaction Services") and provided that Walter would be responsible for fees and expenses incurred by FTI in providing the Walter Transaction Services.[3]

21.     On March 5, 2013, the Court entered an order approving the Second Addendum [Docket No. 3104].

**RELIEF REQUESTED**

22.     Pursuant to the First Addendum, as approved by the Retention Order, FTI is entitled to seek payment for compensation on an hourly basis, subject to certain monthly caps

---

[3]  At the time approval of the Second Addendum was sought, the relief sought under this Application was still the subject of ongoing discussions with the Creditors' Committee. Accordingly, and at the request of the Creditors' Committee, FTI agreed to defer seeking approval of the relief sought under this Application pending the conclusion of those discussions.

(the "Monthly Caps").[4]  In addition, FTI is entitled to (a) bill in subsequent months for any fees which, on a cumulative basis, are in excess of the previous Monthly Caps, also calculated on a cumulative basis, provided that the total monthly fee amount billed for any given month does not exceed the applicable Monthly Cap for such month (the "Rollover Provision")[5], and (b) a Completion Fee (as defined in and provided for under the First Addendum).  The period during which the Rollover Provision is applicable (the "Rollover Period") is currently scheduled to expire on March 31, 2013.

23.    By this Application, the Debtors seek approval of the Third Addendum, pursuant to which the Rollover Period will be extended through and including the effective date of a confirmed chapter 11 plan in the Debtors' cases (the "Effective Date").

---

[4]   As provided for under the First Addendum as approved by the Retention Order, the Monthly caps are as follows:

   a.    $4.0 million for the period commencing on the Petition Date until June 30, 2012.

   b.    $1.75 million per month for each of the six months starting in July 2012 and ending in December 2012.

   c.    $1.25 million per month for each of the three months starting in January 2013 and ending in March 2013.

   d.    $1.0 million in April 2013 and in each of every month thereafter.

[5]   As provided for under the First Addendum, the Monthly Caps do not reflect fees associated with extensive litigation, contested matters and related expert testimony requirements as these issues are unpredictable and, at least in part, out of the control of the Debtors and FTI.  FTI has reserved the right to request additional compensation for such services on an hourly basis pursuant to further application should FTI be required to support the Debtors in litigation and/or contested matters, as a testifying expert, consulting expert or otherwise.  Similarly, the Monthly Caps do not reflect extensive tax analyses or preparation of tax returns or defense thereof, and FTI has reserved the right to request additional compensation for such services on an hourly basis pursuant to further application.

7

**BASIS FOR RELIEF**

24. Due in significant part to changes in circumstances in these chapter 11 cases that are beyond the control of the Debtors and FTI, FTI has been required to provide additional services resulting in the incurring of fees in excess of the amount Monthly Caps. The factors that have affected, and may continue to affect, the timeline and the extent of services required of FTI beyond those anticipated at the outset of these cases include:

(a) The appointment of the Examiner and the timeline of the Examiner's report, which has been further extended through early May 2013, was not anticipated at the time the chapter 11 cases were commenced;

(b) Additional support and services were required to be provided by FTI in connection with the closing of three separate asset sale transactions (*i.e.*, the Walter Sale, the Berkshire Hathaway Sale, and the Ocwen Sale), which were further increased due to delays in the expected closing dates of such sales from December 31, 2012 to, respectively, January 31, 2013, February 5, 2013, and February 15, 2013;

(c) The timing for the Debtors' chapter 11 plan has been significantly delayed from the original projected case timeline, which assumed that a plan would be confirmed in the first quarter of 2013;

(d) The advisory work regarding establishment and implementation of the estates' wind-down structure has taken more resources than initially expected;

(e) Additional work was required by FTI in connection with preparation of the estate's KEIP analysis;

(f) Significant challenges remain with respect to the Debtors' proposed $8.7 billion settlement with RMBS investors, which will require continuing support from

8

12-12020-mg    Doc 3116    Filed 03/06/13    Entered 03/06/13 17:51:15    Main Document
Pg 9 of 11

FTI, including: responding to information requests; providing ongoing alternative return and claims analyses; and participating in additional calls and meetings attendant thereto; and

   (g) The termination of the plan support agreement with junior secured noteholders has significantly affected the plan confirmation expectations and timeline, and has resulted in, and is anticipated to continue to require, additional support from FTI, including: responding to numerous information requests; developing financial models and scenarios, including of, and with respect to, alternative return and claims analyses; and participating in additional calls and meetings attendant thereto.

  25. Absent an extension of the Rollover Period it is unlikely that FTI will be able to realize the protections contemplated by the Rollover Provision. On the other hand, if the Rollover Period is extended through the Effective Date, and absent any further modifications, the Debtors will not be obligated to pay FTI any more in the aggregate than is already provided for under the Monthly Caps. Accordingly, in recognition of the foregoing, FTI has requested that the terms of its retention be modified to extend the Rollover Period through and including the effective date of a confirmed chapter 11 plan of the Debtors.

  26. No other changes to the terms and conditions of employment or compensation as approved pursuant to the Retention Order are being sought at this time. FTI has applied, and will continue to apply, for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement*

44627/0071-9284976v3
ny-1080689

*of Expenses of Professionals* [Docket No. 797], consistent with the proposed terms of compensation set forth in the Engagement Agreement.

27. Notwithstanding anything herein to the contrary, the United States Trustee for the Southern District of New York shall retain all rights to respond or object to FTI's interim and final applications for compensation and reimbursement of expenses on all grounds including, but not limited to, reasonableness, pursuant to section 330 of the Bankruptcy Code, and in the event the U.S. Trustee objects, the Court retains the right to review such interim and final applications pursuant to section 330 of the Bankruptcy Code.

28. In the light of the foregoing, the Debtors believe that the terms and conditions of the Third Addendum are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

**NOTICE**

29. The Debtors shall provide notice of this Application in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

*[Remainder of page intentionally left blank]*

44627/0071-9284976v3
ny-1080689

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) substantially in the form attached hereto as Exhibit A, granting the relief requested in the Application, (ii) approving the Third Addendum, and (iii) granting such other and further relief to the Debtors as the Court may deem just and proper.

New York, New York
Dated: March 6, 2013

/s/ Lorenzo Marinuzzi
Gary S. Lee
Lorenzo Marinuzzi
Erica Richards
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors
and Debtors in Possession*

44627/0071-9284976v3
ny-1080689