1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              March 1, 2013

19              10:04 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2  Status Conference RE: Debtors' Second Supplemental Motion

3  Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust

4  Settlement Agreements [Docket No. 1887]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER, LLP

4        Attorneys for Debtors

5        755 Page Mill Road

6        Palo Alto, CA 94306

7

8  BY:   DARRYL P. RAINS, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for Official Creditors' Committee

13        1177 Avenue of the Americas

14        New York, NY 10036

15

16  BY:   PHILIP S. KAUFMAN, ESQ.

17        PHILIP BENTLEY, ESQ.

18

19

20  CADWALADER, WICKERSHAM & TAFT, LLP

21        Attorneys for MBIA Insurance Co.

22        One World Financial Center

23        New York, NY 10281

24

25  BY:   JONATHAN HOFF, ESQ.

4

1

2  DECHERT LLP

3      Attorneys for Bank of New York Mellon

4      1095 Avenue of the Americas

5      New York, NY 10036

6

7  BY:   GLENN E. SIEGEL, ESQ.

8

9

10  JONES DAY

11      Attorneys for Financial Guaranty Insurance Co.

12      222 East 41st Street

13      New York, NY 10017

14

15  BY:   HOWARD F. SIDMAN, ESQ.

16

17

18  PROSKAUER ROSE LLP

19      Attorneys for Assured Guaranty

20      Eleven Times Square

21      New York, NY 10036

22

23  BY:   IRENA M. GOLDSTEIN, ESQ.

24

25

5

CLEARY GOTTLIEB STEEN & HAMILTON LLP

     Attorneys for Wilmington Trust

     One Liberty Plaza

     New York, NY 10006

BY:    MARK A. LIGHTNER, ESQ.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

6

1              P R O C E E D I N G S

2              THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, LLC, number 12-12020.  We're here for a

4    further pre-trial with respect to the RMBS settlement hearing.

5    We originally had scheduled for today the committee's motion to

6    preclude the evidence.  I indicated yesterday we might discuss

7    it but not hear argument on it today, since the debtors and the

8    committee agreed to put off the hearing on that motion.

9              So let's talk about scheduling of the trial.  Who

10   wants to begin?

11             MR. RAINS:  Good morning, Your Honor.  Darryl Rains of

12   Morrison & Foerster for the debtors.  Thanks very much for

13   hearing us this morning.

14             I want to report that we have -- by "we" I mean the

15   creditors' committee and myself -- have had conversations about

16   a new schedule.  We understand it may not exactly fit with what

17   the Court has in mind.  But what we were willing to propose is

18   a new trial date beginning on May 6th.

19             I understand that perhaps yesterday you suggested

20   later in May, but our agreement -- our initial proposal for the

21   Court is to begin on May 6th.  And then we have a series of

22   dates that would work off of that date.

23             THE COURT:  Well, I -- as I mentioned yesterday when

24   somebody had suggested early May, that's not going to work from

25   the Court's standpoint.  It's my very strong preference, as

**RESIDENTIAL CAPITAL, LLC, ET AL.**

7

1  difficult as it sometimes is to do, that any trials be

2  conducted day-to-day until completed.  I don't like -- and I

3  can't set day-to-day trials for the number of hours required in

4  early May.  Part of it is I'll be out of town for some of that

5  at a number of different times.  So here are the dates,

6  subject -- we need to talk about the time allocations.

7          In the fourth revised joint omnibus scheduling order,

8  in paragraph 13, it had included the tentative allocation of a

9  total of thirty hours of trial time; twelve hours for those

10  supporting the 9019 and eighteen hours for the parties opposing

11  it.  And so we need to discuss that.  But in order to do a day-

12  to-day trial, the dates -- well, and let me also add, I had --

13  I mentioned this yesterday as well.

14          When we originally scheduled the trial to get the

15  thirty hours in and get it done consistent with the Court's

16  schedule, I had more or less indicated we were going to be

17  going 9 to 9.  The Court -- we decided -- the judges decided

18  yesterday, made a decision yesterday that as long as

19  sequestration is in effect, any court hearings at which an ECRO

20  operator, a reporter, is required, will only occur between 9

21  a.m. and 5 p.m., because of inability to pay overtime.

22          So effectively, what that does is really limit us to

23  six-hour trial days.  So I need to get five trial days for the

24  thirty hours, assuming that's going to be the amount of time.

25  So the dates that the Court is prepared to set are as follows:

**RESIDENTIAL CAPITAL, LLC, ET AL.**

8

1    Tuesday, May 28th; Wednesday, May 29th; Thursday, May 30th;

2    Friday, May 31st; and Monday, June 3rd.

3                MR. RAINS:  That's acceptable to the debtors, Your

4    Honor.  Thank you.

5                THE COURT:  Okay.

6                MR. BENTLEY:  That's acceptable to the committee as

7    well, Your Honor.

8                THE COURT:  Somebody go to the microphone and identify

9    yourselves.

10                MR. BENTLEY:  Good morning, Your Honor.  Philip

11    Bentley of Kramer Levin for the committee.

12                THE COURT:  Good morning.

13                MR. BENTLEY:  I have one significant housekeeping

14    issue that I should mention.  That is, yesterday evening, after

15    we heard about the Court's preference for a late May trial, I

16    reached out to the committee's experts and asked them could --

17    what weeks could they do.  One of my experts is fine.  Mr.

18    Cornell is fine with the week of May 27th or '8th.

19                THE COURT:  The 27th is a holiday.  That's why --

20                MR. BENTLEY:  So I'm not sure --

21                THE COURT:  -- that's Memorial Day.

22                MR. BENTLEY:  -- how we label the week.

23                THE COURT:  That's why it's starting Tuesday.

24                MR. BENTLEY:  Understood, Your Honor.  My other

25    expert, Mr. Morrow, who handled the reunderwriting project, has

**RESIDENTIAL CAPITAL, LLC, ET AL.**

9

1    two other trials that are set to go that week, one in I think

2    Dallas, and the other in Utah.  So I'm not sure how we handle

3    that, Your Honor, but I wanted to raise it with the Court.

4         THE COURT:  That's his problem and your problem.  You

5    have enough time to try and figure it out.  I just -- I was

6    ready to go forward with the trial as scheduled.  There's been

7    a request to adjourn it, and I'm agreeable to that.  I've

8    worked hard to try and find dates when we can do this.  I have

9    no objection to taking witnesses out of order.

10        So with five trial days, I'm certainly prepared to

11   accommodate your expert's scheduling problem, so long as he can

12   be fit in within those five days.

13        MR. BENTLEY:  We will do our best, Your Honor.

14        THE COURT:  Okay.  And that's -- you know, I would

15   expect that all counsel -- I don't know how many we're talking

16   about; I don't know how many live witnesses, fact and expert,

17   are anticipated.  Scheduling problems frequently come up for

18   witnesses.  I guess the couple of things that I insist on in

19   any trial is you all work to sort out the order in which the

20   witnesses are going to be called.  Your next witness needs to

21   be in court and available, ready to go on, when a witness is

22   finished.  So I don't want to hear at 2 o'clock or 3 o'clock in

23   the afternoon that we're out of witnesses for today.  That's

24   unacceptable.

25        So you all need to work in terms of scheduling

**RESIDENTIAL CAPITAL, LLC, ET AL.**

10

1    witnesses, to make sure.  Because sometimes cross-examination

2    winds up shorter than was anticipated or there's no redirect,

3    or whatever.  And I don't think I've ever had to do this.  I've

4    warned about it.  I said, if your next witness isn't ready to

5    go on, you rest.

6              MR. BENTLEY:  Well, we understand Your Honor's ruling

7    and --

8              THE COURT:  Okay.

9              MR. BENTLEY:  -- we will do our very best to work

10   around --

11             THE COURT:  I don't want to be difficult about it.

12             MR. BENTLEY:  -- it.

13             THE COURT:  But it's difficult enough for me to come

14   up with a schedule.  And I appreciate experts have busy

15   schedules.  I would think that at some point in those five

16   days, even if he's engaged in a trial elsewhere, he'll find his

17   way here to testify.

18             MR. BENTLEY:  As I said, we will do our very best.

19             THE COURT:  All right.  So does anybody else want to

20   be heard about those dates?

21             Okay.

22             MR. RAINS:  Then, Your Honor, I think what we'd like

23   to do, consistent with the prior order and with my

24   conversations with the creditors' committee, we would propose

25   having the pre-trial submissions -- that's direct testimony,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  exhibits, adverse witness list, and the Rule 26 disclosures,

2  due two weeks earlier --

3          THE COURT:  Well, let's --

4          MR. RAINS:  -- at May 14th.

5          THE COURT:  Let me go through a series of questions I

6  have.

7          MR. RAINS:  Oh, fantastic.

8          THE COURT:  Okay?  And let's see where we come out on

9  it.  Is all fact and expert discovery complete?

10          MR. RAINS:  With one small exception, yes, Your Honor.

11          THE COURT:  What's the exception?

12          MR. RAINS:  We have designated one additional witness,

13  one of our directors, Pam West.  And we are currently in -- I'd

14  say discussions but maybe a dispute would be more fair, over

15  whether we're allowed to add her.  We've offered her for

16  deposition, but we're still in discussions or having a dispute

17  about her.

18          THE COURT:  And she'd be testifying as a fact witness?

19          MR. RAINS:  Yes, sir.

20          THE COURT:  All right.  I'll let you try to sort

21  out -- I don't want to deal with a dispute today about whether

22  you can add a witness or not.  In the first instance, work with

23  other counsel and see if you can resolve it.  If you can't you

24  can raise it with me.  Okay?

25          MR. RAINS:  Thank you.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

12

1          THE COURT:  Have all expert reports and exhibits been

2   submitted?

3          MR. RAINS:  Yes, Your Honor.

4          THE COURT:  Have all deposition designations and

5   counter-designations and objections been provided, or was that

6   going to come at the March 4th --

7          MR. RAINS:  That needs -- that's one of the things

8   that needs to happen before our pre-trial.

9          THE COURT:  Are all pre-trial briefs, with the

10  exception of any motions in limine, been submitted?

11         MR. RAINS:  One exception.  The answer is generally

12  yes.  We had two objectors who had extra time to object.  We

13  still owe them reply briefs.  I wanted to ask the Court if we

14  could have until March 15 to do those reply briefs.  That's

15  Assured Guaranty and the junior secured noteholders.

16         THE COURT:  All right.  Does anybody have an objection

17  to that date?

18         MR. BENTLEY:  We do not, Your Honor.

19         THE COURT:  Ms. Goldstein?

20         MS. GOLDSTEIN:  Irena Goldstein for Assured Guaranty.

21  We agreed to March 8th.  And so I don't have any authority to

22  go to March 15th for an extension of time.

23         THE COURT:  Well, since we're talking about a trial at

24  the end of May, I'll permit it to be March 15th.  Okay?

25         MS. GOLDSTEIN:  Okay, thank you.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1      THE COURT:  Given the later trial date, it should not

2  adversely affect your client.

3      MS. GOLDSTEIN:  I understand, Your Honor.

4      THE COURT:  Okay, that's fine.

5      MS. GOLDSTEIN:  It's just that we agreed yesterday.

6      THE COURT:  That's fine.

7      MR. RAINS:  Thank you, Your Honor.  Apart from

8  those --

9      THE COURT:  I still have more questions.  I still have

10  questions.

11      What else remains to be submitted before trial?

12      MR. RAINS:  I think it's what we mentioned.  We owe

13  our direct testimony, our exhibits --

14      THE COURT:  At paragraph 12 of the fourth amended

15  omnibus, was all adverse witness lists, exhibit lists, and

16  direct testimony, along with any other disclosures required by

17  Rule 26(a)(3) shall be filed with the Court on March 4th.

18  That's what you're referring to?

19      MR. RAINS:  Yes, Your Honor.

20      THE COURT:  Okay.  Have the parties discussed time

21  allocations for the timed trial?

22      MR. RAINS:  What I know, Your Honor, is that the Court

23  initially indicated twelve hours and eighteen hours.  I know

24  that the creditors' committee wants a bigger share of the time,

25  and we also want a bigger share of the time.  That's where

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1    we're at.

2            THE COURT:  Okay.  We'll come back to that question in

3    a minute.  I guess that answered my next question.  Do any of

4    the parties object to the tentative allocations of twelve and

5    eighteen hours contained in paragraph 13 of the fourth revised

6    omnibus scheduling order?  Okay.  We'll come back to that.

7            Do the parties believe that closing trial briefs

8    should be scheduled followed by a date for final argument?  We

9    didn't talk about that before.  I mentioned in court yesterday,

10   I have read virtually everything that's been filed -- that's

11   been submitted, and I have the unredacted versions.  They're

12   all on my iPad.  I've been reading the stuff.  I still have --

13   I haven't gone through quite all the exhibits that were

14   submitted, but I've been through most everything.

15           MR. RAINS:  My condolences, Your Honor.

16           THE COURT:  So what are -- how do counsel -- what is

17   counsel's view about whether closing trial briefs should be

18   scheduled?  What I would have in mind, then -- and so just to

19   give you an idea of specifically what I had in mind.  If the

20   trial concluded on Monday, June 3rd, closing trial briefs would

21   be simultaneous briefs by both sides on June 17th, and

22   simultaneous replies on June 24th.  And --

23           MR. RAINS:  That's agreeable to us, Your Honor.

24           THE COURT:  -- does somebody from the committee have a

25   view on that?  Mr. Kaufman?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1        MR. KAUFMAN:  Philip Kaufman for the committee, Your

2   Honor.  That's acceptable to us.

3        THE COURT:  Does anybody else have a view on that?

4   Because there are others -- come on up to the microphone if you

5   want to speak.

6        MR. SIDMAN:  Your Honor, I actually wanted to clarify

7   one point earlier --

8        THE COURT:  You have to identify yourself.

9        MR. SIDMAN:  I'm sorry.  My name is Howard Sidman from

10  Jones Day, representing FGIC.

11        I wanted to clarify one point that Your Honor raised

12  just a few moments ago.  In debtors' reply briefs, they raised

13  an issue for the first time -- took a position for the first

14  time, Your Honor, with respect to the scope of the releases

15  contained in the settlement agreement.

16        As Your Honor may be aware, the settlement agreement

17  between institutional investors and the debtors contains a

18  carve-out for claims by monoline insurance companies.  And we

19  had, in discovery, asked various witnesses of the debtors what

20  that means.  And they said well, we believe that the claims of

21  the monoline insurers are not released by the settlement.  And

22  in fact, we've tried to ask the question to the debtors

23  themselves, what is the scope of the release.  And it was still

24  unclear.  We object on that basis, Your Honor, to the

25  settlement agreement, that it was not clear in our minds what

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1    the scope of the release was.

2          Now, for the first time in their papers, they've taken

3    the position that all of FGIC's claims are released by the

4    settlement, even though FGIC's not a party to the settlement,

5    didn't sign the settlement agreement and in fact, has separate

6    and independent claims that should not be released and cannot

7    be released.  And so we would like permission from Your Honor,

8    to file a very brief surreply to address that particular issue.

9          THE COURT:  Mr. Raines, what's your view on that?

10         MR. RAINS:  Well, I believe Mr. Sidman has misstated

11   our position that the release has always said, and it is our

12   view that it releases claims that are not independent of the

13   rep and warranty claims, and it does not extend to what you

14   would call an independent claim.  I --

15         THE COURT:  Direct claims are not -- any direct claim

16   that FGIC or anyone else would have are not released by --

17         MR. RAINS:  Well, in specific, Your Honor, what we've

18   talked about are fraudulent inducement claims, which we think

19   are independent of the rep and warranty claims.  And we -- our

20   position, the debtors' position, is that those are not

21   released.  The other claims are.  Other parties to the

22   settlement agreement may have different points of view about

23   that, but that's our interpretation of the agreement as it

24   stands.

25         If the question to me is can he file a surreply?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    Sure, we don't oppose that.  If the Court's willing to take

2    more briefing, that's fine.

3             THE COURT:  Oh, I'm just dying to see more briefs.

4             Mr. Siegel, do you want to be heard?

5             MR. SIEGEL:  Now I know why I showed up this morning.

6    Good morning, Your Honor.  I just for a point --

7             THE COURT:  You have to identify yourself for the

8    record.

9             MR. SIEGEL:  I'm sorry.  Glenn Siegel from Dechert on

10   behalf of Bank of New York Mellon.  Just as a point of

11   clarification, the monolines have whatever direct claims they

12   want to assert subject to anybody's ability to object to them.

13   The claims with respect to the -- what are called put-back

14   claims, the rep and warranty claims, belong to the trusts.

15   They simply don't have the ability to act for the trusts.  The

16   trusts can do whatever they want to do.

17             The trusts have contractual relationships with their

18   insurers.  If we breach those, they may have a dispute with us.

19   But our position very clearly is that's got nothing to do with

20   the bankruptcy court.  If they want to assert direct claims,

21   they should do so.  I look forward to seeing their surreply,

22   but I thought --

23             THE COURT:  Well, look --

24             MR. SIEGEL:  -- I would make that clear.

25             THE COURT:  Do you want to be heard too?  Come on up.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1    He's finished.

2            MR. HOFF:  Jonathan Hoff, Cadwalader, Wickersham &

3    Taft for MBIA.  I hadn't planned on saying anything, but

4    obviously if there's going to be a surreply, we'd at least like

5    the opportunity to con --

6            THE COURT:  What's your view about the releases?

7            MR. HOFF:  Well, we agree with Mr. Sidman, that the

8    debtors are all over the map on this issue.  They took a

9    completely different position in their reply brief than Mr.

10   Rains described, inconsistent with their witnesses.  One of --

11   as I'm sure you understand from our papers, there's a lot of

12   ambiguity in that I don't think that either the debtors or the

13   trustees understand our claims to be able to articulate what is

14   or isn't in there.  But if there's going to be -- we would like

15   the opportunity for a surreply if Your Honor is going to permit

16   that.  And we would make it short.

17           THE COURT:  Mr. Kaufman, what's the committee's

18   position on this?  Or Mr. Bentley?  I don't know who wants to

19   speak.

20           MR. KAUFMAN:  Philip Kaufman for the committee.  Your

21   Honor, the committee does not take a position on that.

22           THE COURT:  Okay.  Anybody else want to be heard on

23   this issue?  Releases are a real sensitive subject with me, I'm

24   going to tell you right now.

25           Okay.  Here's what I would -- before I'm going to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

19

1    allow anybody to do a surreply -- there's enough time to do

2    this -- I want the parties to the dispute about what are the

3    scope of the releases to meet and confer and see if you can

4    resolve and put together a stipulation that puts this issue to

5    rest before I get a lot of briefs.  Okay?  Mr. Rains, I'm not

6    going to -- I don't want to get into whether the debtors'

7    position has varied from one brief to another or whatever.

8    That's not -- I'm not worried about that today.  What I want to

9    know about, is there a live dispute about what is proposed to

10   be released?  Okay?

11         It may be that there isn't a dispute.  And if there's

12   an issue about -- that requires clarification, put it in the

13   form of a stipulation if you can all agree on it.  How much

14   time do you think you need to do that?  Because what I'd like

15   to -- I want to keep this train moving forward, okay?  And so

16   what I'd like is, take the next week to see if you can resolve

17   this issue and put it in the form of a stipulation that the

18   Court will approve.  And if you can't, we'll have a telephone

19   conference, and I'll allow some limited briefing.

20         I don't want to go through:  you file a brief, they

21   file a brief, somebody else then wants to file a brief.  But so

22   can you do that in the next week; meet and confer and see if

23   you can resolve by stipulation as to what -- maybe you can put

24   this issue to rest.

25         MR. RAINS:  Yes.  If we could have -- why don't we say

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1    ten days, a week from Monday?  Would that work?

2          THE COURT:  Fine.

3          MR. RAINS:  Thank you, Your Honor.

4          THE COURT:  Is that acceptable to counsel?

5          UNIDENTIFIED SPEAKER:  Yes, Your Honor.

6          MR. SIDMAN:  Thank you, Your Honor.

7          THE COURT:  Okay.

8          MR. RAINS:  Thanks so much.

9          THE COURT:  See if you can resolve it.  We have enough

10   disputes that this may not be a live issue.  Okay.

11         All right.  This schedule -- let me hear about the

12   time allocation.  How many -- how many live witnesses am I

13   going to hear?  I've got probably ten boxes of briefs,

14   affidavits, expert reports, exhibits, in chambers.  They all

15   got loaded on my iPad so I haven't had to go through all the

16   boxes.  I've been reading them on an iPad.  But my clerk's been

17   going through binders.

18         But I don't know -- with the trial put off until the

19   end of May, I will have to go back and re-read the declarations

20   and expert reports closer to the trial date.  But I will

21   have -- when I take the bench at the trial, I will have read

22   all that stuff.

23         Let me -- a couple other issues that I want to raise.

24   I had them -- I was also going to set -- assuming the trial

25   date begins Tuesday, May 28th, I was also going to set a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1     deadline for filing of motions in limine.

2           MR. RAINS:  Great.

3           THE COURT:  And so tentatively, here are the dates

4     that I wrote down.  Deadline for filing the motions, May 6th.

5     Deadline for responses, May 13th.  Deadlines for reply, May

6     17th.  It's a few extra days than I would give, but the Jewish

7     holiday of Shavuot is the 15th and the 16th of May, and some

8     people may observe it, and therefore, May 17th is the date for

9     replies.  Argument on motions in limine, May 23rd.

10          MR. RAINS:  May 23rd, Your Honor?

11          THE COURT:  May 23rd at 10.

12          MR. RAINS:  Thank you.

13          THE COURT:  And then separate question.  Do -- does

14    the committee and the debtor want a separate date for hearing

15    on the preclusion motion, which is fully briefed.  There's an

16    omnibus hearing date in ResCap of May 14th.  And I'm certainly

17    prepared to hear that motion then.  I was prepared to hear that

18    motion today.

19          For those of you who weren't here yesterday, you

20    probably know I expressed my frustration from the bench that

21    after spending a very -- after denying a motion to continue the

22    preclusion motion and spending a lot of time on it, I was ready

23    to hear it today, I acceded to the request to put it off.  But

24    I leave it to you.  Do you want it heard on May 23rd with

25    others or do you want it heard separately?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1          MR. RAINS:  A couple of things, Your Honor.  First the

2   schedule on the in limine motions is fine.  Can I ask -- can we

3   add to that same schedule Daubert motions.  I know there are

4   going to be a number of Daubert motions.

5          THE COURT:  I would consider that essentially an in

6   limine motion, if you're trying preclude evidence on the basis

7   of Daubert.

8          MR. RAINS:  All right.  So that sched --

9          THE COURT:  I certainly read -- I read some references

10  in the briefs where people question whether an expert's

11  methodology satisfied Daubert.  That wasn't the exact terms in

12  it, but I saw in the briefs that there were questions raised

13  about that.

14         MR. RAINS:  Right.  So if we add to that schedule,

15  Daubert, those dates are acceptable to us.  On the pre --

16         THE COURT:  Does the committee have a view on those

17  dates?  Mr. Kaufman or Mr. Bentley?

18         MR. BENTLEY:  We're fine with that schedule.

19         THE COURT:  What about the preclusion motion?

20         MR. RAINS:  I have told Mr. Kaufman, who's anxious to

21  have it heard, that I'm willing to have it heard at an earlier

22  date.  So whatever date --

23         THE COURT:  May 14th.

24         MR. RAINS:  -- works for the Court and Mr. Kaufman

25  will be fine with us.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1          THE COURT:  Mr. Kaufman?

2          MR. KAUFMAN:  One consideration, Your Honor.  We do

3    very much want to have the preclusion motion heard separately

4    from the in limine motions.  But one concern which we expressed

5    in our papers is that the -- we believe the preclusion motion

6    should be decided before the time that the debtors are required

7    to submit their declarations, because it will color the whole

8    of that.

9          And Mr. Rains reported that based on an assumed new

10   trial date of May 6th, we had agreed to the submission of

11   declarations two weeks before that.  Now that we're not going

12   to be going to trial until the end of May, we believe that that

13   date should be three weeks for submission of declarations.  And

14   we'd like to argue the preclusion motion sometime before that.

15         THE COURT:  The preclusion motion will be heard on

16   April 11th.  It's a long calendar, and it's set for 10 o'clock.

17   Let's schedule the argument on preclusion for 11:30.

18         UNIDENTIFIED SPEAKER:  Your Honor, we didn't hear that

19   back here.

20         THE COURT:  I'll schedule it for April 11th at 11:30.

21   I've got a ResCap calendar at 10.  So that if people aren't

22   interested in everything else, come at 11:30.  All right --

23         MR. BENTLEY:  Your Honor --

24         THE COURT:  Do we need -- hold on, Mr. Bentley.  With

25   the schedule that I've given, we need a date for -- that

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1   replaces the March 4th date for submission of everything.

2           MR. RAINS:  So, Your Honor, your usual rule is one

3   week in advance of trial.  We've agreed, in this case, to two

4   weeks in advance of trial.  So --

5           THE COURT:  That would be helpful to me.  I mean,

6   frankly --

7           MR. RAINS:  -- so we're very happy with May 14, Your

8   Honor.

9           THE COURT:  Mr. Kaufman, or --

10          MR. KAUFMAN:  The only problem with May 14th, Your

11  Honor, is that's -- that is essentially in the middle of when

12  the in limine and Daubert motions are going to be made.  And it

13  seems a little odd to have the submission of all that material

14  in advance of -- I mean, after --

15          THE COURT:  Would you please trust that when I read

16  the declarations, if I strike -- if I preclude evidence on

17  advice of counsel, I will disregard --

18          MR. KAUFMAN:  Okay.

19          THE COURT:  -- what's in the papers.

20          MR. KAUFMAN:  I have complete --

21          THE COURT:  This is not a jury.  This is -- okay?

22          MR. KAUFMAN:  I have full trust, Your Honor.

23          THE COURT:  Okay.  All right.  So May 14 was the date

24  for --

25          MR. RAINS:  Thank you, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

25

1          THE COURT:  All right, so let's talk about the twelve-

2     and eighteen-hour allocations.  Mr. Hoff, do you want to --

3          MR. HOFF:  I'm sorry, Your Honor.  It's Jonathan Hoff

4     again.  I'm trying to contract the dates.  But are we doing the

5     in limine motions before or at the same time that they

6     submit -- that the parties submit their exhibits?

7          THE COURT:  Well, they're going to submit the exhibits

8     on May 14th.  You ought to have the -- I mean --

9          MR. HOFF:  I think we would want to know what the

10    exhibits are and the testimony is before we make the in limine

11    motions.

12         THE COURT:  It isn't going to work.  Okay.

13         MR. HOFF:  No?

14         THE COURT:  Because I want the in limine motions filed

15    May 6th.  It may well be that the exhibit list is going to

16    contract or -- it isn't going to expand, okay?  It may contract

17    if I preclude certain evidence.

18         MR. HOFF:  Right, well, there may be exhibits that go

19    on the list that didn't -- that weren't used in the

20    depositions, which I suspect is likely to happen.

21         THE COURT:  All right.  Let's talk about the time

22    allocation.  How many live witnesses am I likely to hear?

23         MR. RAINS:  Your Honor, I just tried to tally them up.

24    I believe we have -- don't hold me to this exact number, but I

25    believe we have ten direct testimony -- ten percipient

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1  witnesses and --

2            THE COURT:  Ten fact witnesses.

3            MR. RAINS:  -- and four -- four experts.  I believe

4  that Ally has a witness.  I believe that the institutional

5  investors --

6            THE COURT:  Is that an expert or a fact witness?

7            MR. RAINS:  A percipient witness, Mr. Devine.  I

8  believe that the institutional investors and the Talcott

9  Franklin group, our counterparties to the settlement, may be

10 offering declarations or testimony.

11           I guess, just to put our position simply on the table,

12 we think the allocation ought to be fifteen and fifteen.  And

13 the simple reason is, we have on our side, not just the

14 debtors, but we have two plaintiffs' groups, we have Ally, and

15 we also have the trustees, all of whom are charged on our side

16 of the ledger.

17           So between allocating time among six parties and the

18 number of witness who we'll have to redirect, we think the

19 right split is fifty-fifty.

20           THE COURT:  Look, if you have ten fact witnesses,

21 you're going to put in declarations, they've got to use their

22 time to cross-examine them.  So what I understood at the

23 earlier pre-trial conference was that you had more witnesses

24 than they had witnesses.  Okay.  You put them in in writing.

25 They've got to use their time to cross-examine them.  So maybe

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1  you use some of your time on redirect.  But it's more of a

2  burden on those responding or opposing the motion than

3  supporting the motion.

4         How many -- Mr. Kaufman, how many witnesses does the

5  committee anticipate?

6         MR. KAUFMAN:  The committee has no fact witnesses,

7  Your Honor.  We have two expert witnesses.  And my

8  understanding is that at least a couple of the members of the

9  committee will have their own experts.  I don't know the exact

10  number right now.  But I think it may be two.  So that's a

11  total of four experts.  As Your Honor pointed out, given the

12  number of witnesses on the other side, we have a lot of work to

13  do in terms of cross-examinations.

14         Mr. Rains just said -- I think I heard him say that

15  there are ten direct --

16         THE COURT:  He said ten fact witnesses.

17         MR. KAUFMAN:  -- fact witnesses.  I'm a little puzzled

18  by that since we had -- there were eight designated by the

19  deadline that Your Honor had set in the prior scheduling order.

20  And recently, the debtors purported to designate two so-called

21  rebuttal fact witnesses, including Ms. West, one of the

22  directors, and also Mr. Whitlinger, neither of whom was

23  designated as a fact witness originally.  We object --

24         THE COURT:  We'll see whether rebuttal -- you know,

25  whether it's appropriate --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1          MR. KAUFMAN:  -- there is --

2          THE COURT:  -- rebuttal.

3          MR. KAUFMAN:  -- we don't believe they're rebuttal to

4    start with.  We believe that their right to designate has long

5    since passed.  So if they are excluded, there are eight fact

6    witnesses.  And we did think Mr. Devine was among the eight.  I

7    may have miscounted.  But it seems to us -- they have three

8    experts that we know about -- sorry --

9          THE COURT:  He just said four --

10          MR. KAUFMAN:  -- I apologize.  Four experts.  So

11    that's a minimum of twelve witnesses to cross-examine.  It may

12    be as many as fourteen.

13          In terms of allocation, we believe that at minimum it

14    should be twenty-ten in favor of those opposing in the

15    allocation.  We don't think eighteen-twelve, given the

16    disparity in witnesses, is fair.

17          THE COURT:  Anybody else want to be heard on the time

18    allocation?

19          When I set the twelve and eighteen hours, I did it

20    after asking everyone how many fact and expert witnesses they

21    anticipated calling.  It was on that basis that, because the

22    debtors and I would put the -- in light of the number of

23    witnesses that the parties supporting the settlement -- because

24    it also included the investors -- had indicated they were going

25    to call, it was many more witnesses than the objectors were

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1  calling.  That's why there was an unequal allocation of the

2  time.  More time -- with written direct, more time is required

3  for cross-examination.

4      The scheduling order had, in bold strokes, four-hour

5  time limits on certain of the expert depositions, that allowed

6  some reallocation among experts.  I don't know how that played

7  out in the end.

8      UNIDENTIFIED SPEAKER:  Just fine, Your Honor.

9      THE COURT:  Okay.  So if you depose an expert for four

10  hours, I can't believe that you'll want to cross-examine them

11  at a trial for more than an hour or two, frankly.  You know,

12  you spend four hours in a deposition, and my experience is the

13  shorter time you spend with cross-examining an expert in trial,

14  the better off you are.

15      You'll come out of a four-hour deposition with three

16  or four or five points that you want to raise in cross-

17  examination.  Those are usually the most effective kinds of

18  examination; not one that drags on.  I don't allow examinations

19  to drag on.  If I think I understand the points that people are

20  trying to make, I'll tell you to move on, okay, even though you

21  think you can hammer the witness with six more questions on it.

22  If I get the point, I may well say let's move on.  Okay.

23      So I probably said this at the time I did those

24  tentative allocations, but let me say it again.  On any trial

25  of more than a day, I do timed trials.  And whenever I've done

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1    it, in each of those trials, the parties have finished the

2    trial without using all of the time allocated; because what's

3    happened is, when they know they only have twelve hours, they

4    prepare their case to use twelve hours or less.  And in every

5    case, they've used less than the allocated time.  I've never

6    gotten to the end of one of these trials and somebody said,

7    Judge, I need more time.  Every one of them has ended early.

8            Yes, there's a lot of parties involved here.  But I'm

9    going to stick with the twelve and eighteen-hour allocation.

10   That's a very heavy demand on court time.  And you need to

11   tailor your cases to do that.  And what I do in the timed

12   trials, typically at each recess or certainly at a lunch break

13   or the end of the day, my law clerks are keeping track of the

14   time and will tell you what you have left; what you've used and

15   what you have left.

16           I was going to be super magnanimous and schedule

17   closing arguments for a different day and not -- so you

18   wouldn't be -- frankly, the thirty hours wouldn't include the

19   time you spend in closing argument.  All right.  So I'm

20   scheduling five trial days, six hours a day, for evidence and

21   whatever minor arguments occur during trial.  I didn't say --

22   the date that I sort of tentatively picked -- assuming -- I

23   gave you the dates for trial briefs, June 17th, June 24th.  And

24   what I contemplated was scheduling closing argument for July

25   10th, so as not to interfere with the Fourth of July holiday,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1  to give me enough time to read all of those closing trial

2  briefs.  And I wouldn't schedule anything else for July 10th,

3  and I won't count that time -- you know, you'll have to sort

4  out six hours of time for closing arguments.  So in effect,

5  I've really already expanded the twelve and eighteen

6  allocation.

7           Setting the argument for some period after the last

8  brief is in will give the Court time to make sure I've read all

9  the briefs.  Mr. Bentley?

10          MR. BENTLEY:  Your Honor, I hate to say this.  I am

11  scheduled to be out of the country on July 10th.  If Your Honor

12  can maybe --

13          THE COURT:  When are you going to be back?  When are

14  you leaving; when are you going to be back?

15          MR. BENTLEY:  I'm leaving on Saturday the 7th.  So I

16  am here the prior week.

17          THE COURT:  The problem is if the last brief is due

18  June 24th, and I'm getting simultaneous briefs, it will do

19  little good if I don't have time to read them and review the

20  cases.  When are you back?

21          MR. BENTLEY:  On Monday the 22nd.

22      (Pause)

23          THE COURT:  Closing arguments will then be July 1st.

24          MR. BENTLEY:  Thank you very much, Your Honor.

25          UNIDENTIFIED SPEAKER:  Your Honor, was that Monday,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1    July 1st?

2              THE COURT:  Yes.

3         (Pause)

4              THE COURT:  All right.  So let me just go over the

5    dates, make sure we're all on the same page about it.

6              Argument on the preclusion motion, no further briefing

7    permitted; April 11th at 11:30.  Deadline for filing motions in

8    limine and Daubert motions, May 6th.  If I give you a date,

9    it's 5 p.m.  Responses to motions in limine and Daubert

10   motions, May 13th.  Reply deadline May 17th.  Argument May

11   23rd, 10 a.m.  May 14th is the deadline for submitting

12   everything that is otherwise now covered by paragraph 12 of the

13   fourth omnibus -- fourth revised joint omnibus scheduling

14   order.

15             Trial dates.  May 28th, 29th, 30th, 31st, and June

16   3rd.  Schedule will be essentially the following.  9 to 10:30

17   followed by a fifteen-minute break.  10:45 to 12:15, followed

18   by a lunch break.  1:45 to 3:15, fifteen-minute recess.  3:30

19   to 5 o'clock.  Those are six hours each, five days.

20             If we have a few minutes left of a witness at 5

21   o'clock, we'll endeavor to accommodate them so a witness can be

22   completed.  The state court found that when they put the 4:30

23   cutoff date and required everybody to leave, it didn't work so

24   well.  They have done away with that requirement.

25             After 5 o'clock, we won't have an ECRO available.  We

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  might stay late to discuss trial issues that don't require a

2  reporter present.  And if need -- as frequently occurs in a

3  trial, we don't necessarily need a transcript for some of those

4  things, and so if necessary, what we can -- you shouldn't think

5  you're going to be thrown out of the courtroom at 5 o'clock.

6         So I understand there continues to be a dispute about

7  the debtors adding one witness.

8         MR. KAUFMAN:  I believe it's two witnesses, Your

9  Honor.

10        THE COURT:  Two?

11        MR. KAUFMAN:  Yes.

12        THE COURT:  I thought it was just one direct --

13        MR. RAINS:  We've designated two rebuttal witnesses,

14  Your Honor.  The difference is, Mr. Whitlinger, one of the

15  witnesses, was already deposed, whereas Pam West, the other,

16  has not been deposed.  So --

17        THE COURT:  Well, look.  Rebuttal witnesses -- your

18  time allocation is -- the problem is, they're the ones that got

19  to cross-examine; you can throw in a declaration.  I'm pretty

20  strict about what's appropriate rebuttal.

21        MR. RAINS:  So, Your Honor, I'm convinced they are.

22  And the simple explanation is that we had to designate our fact

23  witnesses before we had their objections, and so --

24        THE COURT:  What are they rebutting?

25        MR. RAINS:  Allegations about the due care of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

34

1    directors.  They're both directors, and we learned things about

2    the plaintiffs' -- or the objectors' position in their

3    objections, which we got in December, which they submitted

4    after discovery was done and after we had designated our

5    witnesses.

6           No we know more about their objections, we'd like to

7    add two directors to our list.

8           THE COURT:  When did you advise them that you wanted

9    to add the two directors to the list?

10          MR. RAINS:  Two or three weeks ago.  I'm not sure,

11   but --

12          What we've done, Your Honor, is one was already

13   deposed.  We think there's no prejudice there.  On the other

14   one, we've offered her deposition.  We haven't been able to get

15   over that hurdle yet.

16          THE COURT:  Mr. Kaufman?

17          MR. KAUFMAN:  There is nothing for these witnesses to

18   rebut, Your Honor.  The fact that we made arguments based on

19   the discovery we took in our objections is not evidence.  These

20   witnesses were designated with descriptions of proposed

21   testimony that is word-for-word identical to the descriptions

22   given for the witnesses designated as direct witnesses --

23          THE COURT:  You're saying --

24          MR. KAUFMAN:  -- at the beginning.

25          THE COURT:  -- it's cumulative of -- the proposed --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1          MR. KAUFMAN:  Completely.

2          THE COURT:  -- testimony would be cumulative.

3          MR. KAUFMAN:  There's nothing to rebut.  They're also

4    way late in designating witnesses.

5          THE COURT:  Are you saying --

6          MR. KAUFMAN:  The fact that we --

7          THE COURT:  Stop.

8          MR. KAUFMAN:  I'm sorry.

9          THE COURT:  Stop.  Are you saying that the description

10   they've given you of the proposed testimony is cumulative of

11   the testimony of other directors that they're offering in their

12   case-in-chief?

13         MR. KAUFMAN:  Yes.  The -- one other point in response

14   to what Mr. Rains said.  Yes, we did take the deposition of Mr.

15   Whitlinger.  We did that with the expectation that he was not a

16   listed witness.  We did take his deposition.  Because he was

17   not listed as a witness who would be testifying at trial, we

18   used a very small amount of time to depose him.  It was not the

19   same thing as if we had expected him to --

20         THE COURT:  Well, you might want to use part of the

21   deposition -- a designation of the deposition as part of your

22   case.  I don't know.  That's --

23         MR. KAUFMAN:  We --

24         THE COURT:  I didn't stop -- I didn't prevent you from

25   taking depositions in the case.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

36

1          MR. KAUFMAN:  Your Honor, we took seriously the

2     deadlines that were in the scheduling order for designating

3     fact witnesses.  These new so-called rebuttal witnesses were

4     designated a couple of weeks ago.  Neither of them is giving

5     rebuttal testimony.  And we think that they shouldn't be

6     testifying.

7          THE COURT:  Well, I don't have a record on which to

8     decide this issue now.  Mr. Rains, if the testimony is

9     cumulative, if you've addressed the issue of due care as part

10    of your case-in-chief, and certainly the briefs that I got on

11    the preclusion motion specifically, in part, address issues

12    about due care and -- et cetera, the chances of me allowing you

13    to offer that evidence on rebuttal is pretty small.  But I'm

14    not going to rule on it now.

15         Mr. Kaufman, take the deposition.  I'm not -- you

16    know, it's the only additional discovery I'm going to permit.

17    If I wind up letting -- what I don't want to do is get to the

18    date for motions in limine and say all right, I'm going to

19    permit it.  And then you're going to say, well, I need the

20    deposition.  Take the deposition.

21         MR. KAUFMAN:  Okay, Your Honor.  Before we do that,

22    however, we would like to see Ms. West's documents, which have

23    not been produced and --

24         THE COURT:  Oh, really?

25         MR. KAUFMAN:  Oh, really.  Mr. -- the debtors -- when

**RESIDENTIAL CAPITAL, LLC, ET AL.**

37

1   the committee served its document request back in August, all

2   of the directors were included within the definitions that

3   required the debtors to produce documents.  They took the

4   position that with respect to independent directors, such as

5   Ms. West, Morrison Cohen, which is their outside counsel, would

6   be responsible for collecting documents.  Morrison Cohen did

7   not do that with respect to Ms. West.

8        And we have -- we do know that a few documents came

9   into the possession of the examiner's depository that appear to

10   be Ms. West's handwritten notes.  Those notes are limited in

11   time.  They only run through April 11.  They don't include more

12   than a month, therefore, between the time they end and the time

13   the petition date and the settlement occurred.

14        We have -- I have had discussions and e-mail exchanges

15   with Mr. Rains over production of these documents.  If we get

16   those documents timely, we will review them and take her

17   deposition.  But I don't see that we should be able to have to

18   take her deposition without her documents.

19        THE COURT:  Mr. Rains.

20        MR. RAINS:  Your Honor, I don't agree with the

21   characterizations, but the short answer is, we have offered to

22   produce her personal documents prior to her deposition.  We

23   will do that.

24        THE COURT:  All right.  I'm going to give you a

25   dead -- I'm imposing a deadline of 5 p.m. Friday, March 8th for

**RESIDENTIAL CAPITAL, LLC, ET AL.**

38

1    complete production of documents for this prospective witness.

2    The fact that her documents have not previously been produced,

3    if anything, cuts in favor of sustaining an objection of the

4    committee to her designation.  Absent some more concrete record

5    I'm not going to rule on it now.  But I'll tell you, you're on

6    shaky grounds at this point.

7        But let's proceed by I'm giving you one week to get

8    all the documents produced.  Work with Mr. Kaufman to arrange a

9    prompt mutually convenient date for the deposition so that

10   there can be greater clarity as to whether that testimony -- or

11   rather you can use her declaration.  We'll use that same in

12   limine schedule for any -- if you're going to make a motion to

13   preclude her testimony, do it with that schedule, and I'll

14   figure it out as part of the argument on May 23rd.

15       Correct.  I'll hear that -- just add a motion -- do a

16   motion to preclude the testimony of those two people.  If it's

17   not proper rebuttal testimony, if that's the grounds for your

18   motion; they weren't timely designated, whatever you're going

19   to do.

20       You know what the schedule you need to work with to

21   get everything done.  The deadline for producing the documents,

22   though, absolutely, is one week from today.  Okay?

23       MR. RAINS:  Thank so much, Your Honor.

24       THE COURT:  All right.  Anything else I need to deal

25   with today?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

39

1          MR. RAINS:  Nothing from the debtors, Your Honor.

2          THE COURT:  Mr. Kaufman?

3          MR. KAUFMAN:  There is one procedural matter, Your

4    Honor.  The Court has a customary pre-trial order which we've

5    reviewed.  And one of the elements of that pre-trial order is

6    stipulation of facts.  I don't know whether the Court insists

7    on the parties following that pre-trial order in this case.  It

8    seems to be addressed more to adversary proceedings.

9          THE COURT:  This is the strangest trial I have ever

10   done.  I'm still trying to get my hands around what this is

11   really all about, what the standards are that apply, is this

12   really a live controversy since the indenture trustees say it's

13   up to them to decide what they're going to do at the end of the

14   day.

15         I put that all to rest for the moment.  But I got to

16   tell you, this is really peculiar.  I thought -- I actually

17   did -- in preparing to go over things in today's hearing, I

18   thought specifically about that template for a pre-trial order.

19   I would encourage everybody to do a stipulation of facts for as

20   many things as you can resolve.  If you're both -- both sides

21   seem worried that thirty hours isn't enough.

22         MR. KAUFMAN:  I just think it's going to take -- not

23   that we couldn't stipulate --

24         THE COURT:  I'm not insisting on it.

25         MR. KAUFMAN:  -- to facts, but given how difficult

**RESIDENTIAL CAPITAL, LLC, ET AL.**

40

1    resolution of so many issues has been in this case, I just

2    wonder how much time will be spent trying to negotiate the

3    niceties of the stipulations.

4         THE COURT:  Fine.  Don't do it.  But you know, I'm

5    going to -- the twelve- and eighteen-hour allocation is a hard

6    and fast allocation.  It's going to eat -- things that you

7    could agree -- well one thing that you definitely ought to try

8    and stipulate to is authenticity and admissibility of

9    documents.

10         MR. KAUFMAN:  Right.

11         THE COURT:  All right?  I'm going to really get testy

12    if we wind up with a lot of testimony here, foundational

13    testimony, to support the admissibility of documents.  I mean,

14    don't waste my time with it.  So be sparing.  You ought to --

15    you all know what the exhibits are at this point, right?

16         MR. KAUFMAN:  Yes.

17         THE COURT:  I've got tons of them sitting inside.

18         MR. KAUFMAN:  We should -- we'll be able to do that,

19    Your Honor.

20         THE COURT:  You ought to be able to at least stipulate

21    as to authenticity, and hopefully admissibility.  There may be

22    things you want to argue the weight.  I mean, I hope when I get

23    motions in limine, we're not going to waste a lot of time over

24    arguments -- if it's appropriate we will, but I mean, on

25    relevance and -- okay?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

41

1          MR. KAUFMAN:  Understood.

2          THE COURT:  All right.  Others have other issues they

3   want to raise for today?

4          Just a second.

5          MR. KAUFMAN:  Oh, I'm sorry.  Just one other thing,

6   Your Honor.  Do we have a date for a final pre-trial

7   conference?  I don't recall that being discussed.

8          THE COURT:  May 23rd.  The argument of the motions in

9   limine.

10          MR. LIGHTNER:  Good morning, Your Honor.  Mark

11  Lightner from Cleary Gottlieb on behalf of Wilmington Trust.

12          You raised an issue that I think is resolved, but I

13  just want to be crystal clear.  And that are these threshold

14  issues you mentioned, live case or controversy.  And I want to

15  make sure that you'll want to address those issues and be

16  prepared on the closing arguments, and not beforehand?

17          THE COURT:  Correct.

18          MR. LIGHTNER:  Okay.  Thank you.

19          THE COURT:  Correct.  Although I hate to go through

20  this whole exercise only to find out -- put that aside for now.

21          I had my notes on several pieces of paper, here.  So

22  let me look.

23      (Pause)

24          THE COURT:  All right.  I've ticked off everything on

25  my list.  No one else has anything else?  Mr. Rains?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

42

1        MR. RAINS:  Your Honor, I checked my notes and we've

2   covered everything I had.  Thank you.

3        THE COURT:  Okay.  What I would ask is that Mr. Rains

4   and Mr. Kaufman prepare a fifth revised joint omnibus

5   scheduling order reflecting the dates that we've discussed

6   today and submit it to the Court for signature, okay?

7        MR. RAINS:  Will do, Your Honor.  Thank you.

8        THE COURT:  All right.  So the only other thing I

9   didn't review was the issue about the releases.  You're going

10  to meet and confer and see if you can resolve in the form of a

11  proposed stipulation and order the scope of the proposed

12  releases.  If you can't resolve it, you'll contact chambers and

13  arrange -- I'll decide after hearing, whether we're going to

14  have an in-court or telephone conference to deal with whether

15  there's going to be -- what, if any, briefing will occur on

16  that issue.

17        I hope -- encourage you all to try and agree on that.

18  Okay?

19        MR. RAINS:  Thank you, Your Honor.

20        THE COURT:  All right.  We're adjourned.  Thank you

21  very much, everybody.

22     (Whereupon these proceedings were concluded at 11:04 AM)

23

24

25

43

1

2                                    **I N D E X**

3

4                                    RULINGS

5                                                        Page        Line

6    Debtors and committee will prepare a fifth        42           3

7    revised joint omnibus scheduling order for

8    the trial reflecting the new dates discussed

9    on the record.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

44

1

2                          C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10
   _____

11
   PENINA WOLICKI
12
   AAERT Certified Electronic Transcriber CET**D-569
13

14
   eScribers
15
   700 West 192nd Street, Suite #607
16
   New York, NY 10040
17

18
   Date:  March 4, 2013
19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

March 1, 2013

## A

**ability (2)**
17:12,15
**able (5)**
18:13;34:14;37:17;
40:18,20
**Absent (1)**
38:4
**absolutely (1)**
38:22
**acceded (1)**
21:23
**acceptable (5)**
8:3,6;15:2;20:4;
22:15
**accommodate (2)**
9:11;32:21
**act (1)**
17:15
**actually (2)**
15:6;39:16
**add (8)**
7:12;11:15,22;
22:3,14;34:7,9;38:15
**adding (1)**
33:7
**additional (2)**
11:12;36:16
**address (3)**
16:8;36:11;41:15
**addressed (2)**
36:9;39:8
**adjourn (1)**
9:7
**adjourned (1)**
42:20
**admissibility (3)**
40:8,13,21
**advance (3)**
24:3,4,14
**adversary (1)**
39:8
**adverse (2)**
11:1;13:15
**adversely (1)**
13:2
**advice (1)**
24:17
**advise (1)**
34:8
**affect (1)**
13:2
**affidavits (1)**
20:14
**afternoon (1)**
9:23
**again (2)**
25:4;29:24
**ago (3)**
15:12;34:10;36:4
**agree (5)**

**18:7;19:13;37:20;
40:7;42:17**
**agreeable (2)**
9:7;14:23
**agreed (5)**
6:8;12:21;13:5;
23:10;24:3
**agreement (7)**
6:20;15:15,16,25;
16:5,22,23
**Allegations (1)**
33:25
**allocated (2)**
30:2,5
**allocating (1)**
26:17
**allocation (13)**
7:8;20:12;25:22;
26:12;28:13,15,18;
29:1;30:9;31:6;
33:18;40:5,6
**allocations (5)**
7:6;13:21;14:4;
25:2;29:24
**allow (3)**
19:1,19;29:18
**allowed (2)**
11:15;29:5
**allowing (1)**
36:12
**Ally (2)**
26:4,14
**along (1)**
13:16
**Although (1)**
41:19
**always (1)**
16:11
**ambiguity (1)**
18:12
**amended (1)**
13:14
**Americas (1)**
4:4
**among (3)**
26:17;28:6;29:6
**amount (2)**
7:24;35:18
**answered (1)**
14:3
**anticipate (1)**
27:5
**anticipated (3)**
9:17;10:2;28:21
**anxious (1)**
22:20
**Apart (1)**
13:7
**apologize (1)**
28:10
**appear (1)**
37:9
**apply (1)**

**39:11**
**appreciate (1)**
10:14
**appropriate (3)**
27:25;33:20;40:24
**approve (1)**
19:18
**April (4)**
23:16,20;32:7;
37:11
**argue (2)**
23:14;40:22
**argument (11)**
6:7;14:8;21:9;
23:17;30:19,24;31:7;
32:6,10;38:14;41:8
**arguments (7)**
30:17,21;31:4,23;
34:18;40:24;41:16
**around (2)**
10:10;39:10
**arrange (2)**
38:8;42:13
**articulate (1)**
18:13
**aside (1)**
41:20
**assert (2)**
17:12,20
**assumed (1)**
23:9
**assuming (3)**
7:24;20:24;30:22
**Assured (3)**
4:19;12:15,20
**Attorneys (4)**
4:3,11,19;5:3
**August (1)**
37:1
**authenticity (2)**
40:8,21
**authority (1)**
12:21
**available (2)**
9:21;32:25
**Avenue (1)**
4:4
**aware (1)**
15:16
**away (1)**
32:24

## B

**back (8)**
14:2,6;20:19;
23:19;31:13,14,20;
37:1
**Bank (2)**
4:3;17:10
**bankruptcy (1)**
17:20
**based (2)**

**23:9;34:18**
**basis (3)**
15:24;22:6;28:21
**beforehand (1)**
41:16
**begin (2)**
6:10,21
**beginning (2)**
6:18;34:24
**begins (1)**
20:25
**behalf (2)**
17:10;41:11
**belong (1)**
17:14
**bench (2)**
20:21;21:20
**BENTLEY (23)**
8:6,10,11,13,20,22,
24;9:13;10:6,9,12,18;
12:18;18:18;22:17,
18;23:23,24;31:9,10,
15,21,24
**best (3)**
9:13;10:9,18
**better (1)**
29:14
**bigger (2)**
13:24,25
**binders (1)**
20:17
**bold (1)**
29:4
**both (4)**
14:21;34:1;39:20,
20
**boxes (2)**
20:13,16
**breach (1)**
17:18
**break (3)**
30:12;32:17,18
**brief (8)**
16:8;18:9;19:7,20,
21,21;31:8,17
**briefed (1)**
21:15
**briefing (4)**
17:2;19:19;32:6;
42:15
**briefs (18)**
12:9,13,14;14:7,17,
20,21;15:12;17:3;
19:5;20:13;22:10,12;
30:23;31:2,9,18;
36:10
**burden (1)**
27:2
**busy (1)**
10:14

## C

**Cadwalader (1)**
18:2
**calendar (2)**
23:16,21
**call (2)**
16:14;28:25
**called (2)**
9:20;17:13
**calling (2)**
28:21;29:1
**came (1)**
37:8
**can (25)**
9:8,11;11:22,23,
24;16:25;17:16;19:3,
13,16,22,23,23;20:9;
22:2,2;29:21;31:12;
32:21;33:4,19;38:10,
11;39:20;42:10
**Capital (1)**
6:3
**care (3)**
33:25;36:9,12
**carve-out (1)**
15:18
**case (8)**
24:3;30:4,5;35:22,
25;39:7;40:1;41:14
**case-in-chief (2)**
35:12;36:10
**cases (2)**
30:11;31:20
**certain (2)**
25:17;29:5
**certainly (5)**
9:10;21:16;22:9;
30:12;36:10
**cetera (1)**
36:12
**chambers (2)**
20:14;42:12
**chances (1)**
36:12
**characterizations (1)**
37:21
**charged (1)**
26:15
**checked (1)**
42:1
**claim (2)**
16:14,15
**claims (16)**
15:18,20;16:3,6,12,
13,15,18,19,21;
17:11,13,14,14,20;
18:13
**clarification (2)**
17:11;19:12
**clarify (2)**
15:6,11
**clarity (1)**
38:10
**clear (3)**

12-12020-mg    Doc 3119    Filed 03/03/13    Entered 03/07/13 11:33:46    Main Document
Pg 46 of 52

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

March 1, 2013

15:25;17:24;41:13

**clearly (1)**
17:19
**CLEARY (2)**
5:2;41:11
**clerks (1)**
30:13
**clerk's (1)**
20:16
**client (1)**
13:2
**closer (1)**
20:20
**closing (10)**
14:7,17,20;30:17,
19,24;31:1,4,23;
41:16
**Co (1)**
4:11
**Cohen (2)**
37:5,6
**collecting (1)**
37:6
**color (1)**
23:7
**committee (17)**
6:8,15;8:6,11;
10:24;13:24;14:24;
15:1;18:20,21;21:14;
22:16;27:5,6,9;37:1;
38:4
**committee's (3)**
6:5;8:16;18:17
**companies (1)**
15:18
**complete (3)**
11:9;24:20;38:1
**completed (2)**
7:2;32:22
**completely (2)**
18:9;35:1
**con (1)**
18:5
**concern (1)**
23:4
**concluded (2)**
14:20;42:22
**concrete (1)**
38:4
**condolences (1)**
14:15
**conducted (1)**
7:2
**confer (3)**
19:3,22;42:10
**conference (3)**
19:19;26:23;41:7;
42:14
**consider (1)**
22:5
**consideration (1)**
23:2
**consistent (2)**

7:15;10:23
**contact (1)**
42:12
**contained (2)**
14:5;15:15
**contains (1)**
15:17
**contemplated (1)**
30:24
**continue (1)**
21:21
**continues (1)**
33:6
**contract (3)**
25:4,16,16
**contractual (1)**
17:17
**controversy (2)**
39:12;41:14
**convenient (1)**
38:9
**conversations (2)**
6:15;10:24
**convinced (1)**
33:21
**Cornell (1)**
8:18
**counsel (6)**
9:15;11:23;14:16;
20:4;24:17;37:5
**counsel's (1)**
14:17
**count (1)**
31:3
**counter-designations (1)**
12:5
**counterparties (1)**
26:9
**country (1)**
31:11
**couple (1)**
9:18;20:23;22:1;
27:8;36:4
**COURT (141)**
6:2,17,21,23;7:17,
19,25;8:5,8,12,19,21,
23;9:3,4,14,21;10:8,
11,13,19;11:3,5,8,11,
18,20;12:1,4,9,13,16,
19,23;13:1,4,6,9,14,
17,20,22;14:2,9,16,
24;15:3,8;16:9,15;
17:3,7,20,23,25;18:6,
17,22;19:18;20:2,4,7,
9;21:3,11,13;22:5,9,
16,19,23,24;23:1,15,
20,24;24:5,9,15,19,
21,23;25:1,7,12,14,
21;26:2,6,20;27:16,
24;28:2,9,17;29:9;
30:10;31:8,13,17,23;
32:2,4,22;33:10,12,
17,24;34:8,16,23,25;

35:2,5,7,9,20,24;
36:7,24;37:19,24;
38:24;39:2,4,6,9,24;
40:4,11,17,20;41:2,8,
17,19,24;42:3,6,8,20
**courtroom (1)**
33:5
**Court's (1)**
6:25;7:15;8:15;
17:1
**covered (2)**
32:12;42:2
**creditors' (3)**
6:15;10:24;13:24
**cross- (1)**
29:16
**cross-examination (2)**
10:1;29:3
**cross-examinations (1)**
27:13
**cross-examine (5)**
26:22,25;28:11;
29:10;33:19
**cross-examining (1)**
29:13
**crystal (1)**
41:13
**cumulative (4)**
34:25;35:2,10;36:9
**currently (1)**
11:13
**customary (1)**
39:4
**cutoff (1)**
32:23
**cuts (1)**
38:3

**D**

**Dallas (1)**
9:2
**Darryl (1)**
6:11
**date (24)**
6:18,22;12:17;
13:1;14:8;20:20,25;
21:8,14,16;22:22,22;
23:10,13,25;24:1,23;
30:22;32:8,23;36:18;
37:13;38:9;41:6
**dates (14)**
6:22;7:5,12,25;9:8;
10:20;21:3;22:15,17;
25:4;30:23;32:5,15;
42:5
**Daubert (8)**
22:3,4,7,11,15;
24:12;32:8,9
**DAY (8)**
4:10;8:21;15:10;
29:25;30:13,17,20;
39:14

**day- (1)**
7:11
**days (9)**
7:23,23;9:10,12;
10:16;20:1;21:6;
30:20;32:19
**day-to-day (2)**
7:2,3
**dead (1)**
37:25
**deadline (9)**
21:1,4,5;27:19;
32:7,10,11;37:25;
38:21
**Deadlines (2)**
21:5;36:2
**deal (3)**
11:21;38:24;42:14
**debtor (1)**
21:14
**debtors (16)**
6:7,12;8:3;15:17,
19,22;18:8,12;23:6;
26:14;27:20;28:22;
33:7;36:25;37:3;39:1
**debtors' (3)**
15:12;16:20;19:6
**December (1)**
34:3
**DECHERT (2)**
4:2;17:9
**decide (3)**
36:8;39:13;42:13
**decided (3)**
7:17,17;23:6
**decision (1)**
7:18
**declaration (2)**
33:19;38:11
**declarations (7)**
20:19;23:7,11,13;
24:16;26:10,21
**definitely (1)**
40:7
**definitions (1)**
37:2
**demand (1)**
30:10
**denying (1)**
21:21
**depose (2)**
29:9;35:18
**deposed (3)**
33:15,16;34:13
**deposition (16)**
11:16;12:4;29:12,
15;34:14;35:14,16,
21,21;36:15,20,20;
37:17,18,22;38:9
**depositions (3)**
25:20;29:5;35:25
**depository (1)**
37:9

**described (1)**
18:10
**description (1)**
35:9
**descriptions (2)**
34:20,21
**designate (3)**
27:20;28:4;33:22
**designated (9)**
11:12;27:18,23;
33:13;34:4,20,22;
36:4;38:18
**designating (2)**
35:4;36:2
**designation (2)**
35:21;38:4
**designations (1)**
12:4
**Devine (2)**
26:7;28:6
**difference (1)**
33:14
**different (4)**
7:5;16:22;18:9;
30:17
**difficult (4)**
7:1;10:11,13;39:25
**direct (12)**
10:25;13:13,16;
16:15,15;17:11,20;
25:25;27:15;29:2;
33:12;34:22
**directors (9)**
11:13;27:22;34:1,
1,7,9,9;35:11;37:2,4
**disclosures (2)**
11:1;13:16
**discovery (5)**
11:9;15:19;34:4,
19;36:16
**discuss (3)**
6:6;7:11;33:1
**discussed (3)**
13:20;41:7;42:5
**discussions (3)**
11:14,16;37:14
**disparity (1)**
28:16
**dispute (8)**
11:14,16,21;17:18;
19:2,9,11;33:6
**disputes (1)**
20:10
**disregard (1)**
24:17
**document (1)**
37:1
**documents (14)**
36:22;37:3,6,8,15,
16,18,22;38:1,2,8,21;
40:9,13
**done (7)**
7:15;29:25;32:24;

34:4,12;38:21;39:10
**down (1)**
  21:4
**drag (1)**
  29:19
**drags (1)**
  29:18
**due (5)**
  11:2;31:17;33:25;
  36:9,12
**during (1)**
  30:21
**dying (1)**
  17:3

**E**

**earlier (4)**
  11:2;15:7;22:21;
  26:23
**early (3)**
  6:24;7:4;30:7
**East (1)**
  4:12
**eat (1)**
  40:6
**ECRO (2)**
  7:19;32:25
**effect (2)**
  7:19;31:4
**effective (1)**
  29:17
**effectively (1)**
  7:22
**eight (3)**
  27:18;28:5,6
**eighteen (5)**
  7:10;13:23;14:5;
  28:19;31:5
**eighteen-hour (3)**
  25:2;30:9;40:5
**eighteen-twelve (1)**
  28:15
**either (1)**
  18:12
**elements (1)**
  39:5
**Eleven (1)**
  4:20
**else (12)**
  10:19;13:11;15:3;
  16:16;18:22;19:21;
  23:22;28:17;31:2;
  38:24;41:25,25
**elsewhere (1)**
  10:16
**e-mail (1)**
  37:14
**encourage (2)**
  39:19;42:17
**end (8)**
  12:24;20:19;23:12;
  29:7;30:6,13;37:12;

39:13
**endeavor (1)**
  32:21
**ended (1)**
  30:7
**engaged (1)**
  10:16
**enough (6)**
  9:5;10:13;19:1;
  20:9;31:1;39:21
**ESQ (4)**
  4:7,15,23;5:7
**essentially (3)**
  22:5;24:11;32:16
**et (1)**
  36:12
**even (3)**
  10:16;16:4;29:20
**evening (1)**
  8:14
**everybody (3)**
  32:23;39:19;42:21
**everyone (1)**
  28:20
**evidence (7)**
  6:6;22:6;24:16;
  25:17;30:20;34:19;
  36:13
**exact (3)**
  22:11;25:24;27:9
**exactly (1)**
  6:16
**examination (2)**
  29:17,18
**examinations (1)**
  29:18
**examiner's (1)**
  37:9
**exception (4)**
  11:10,11;12:10,11
**exchanges (1)**
  37:14
**excluded (1)**
  28:5
**exercise (1)**
  41:20
**exhibit (2)**
  13:15;25:15
**exhibits (10)**
  11:1;12:1;13:13;
  14:13;20:14;25:6,7,
  10,18;40:15
**expand (1)**
  25:16
**expanded (1)**
  31:5
**expect (1)**
  9:15
**expectation (1)**
  35:15
**expected (1)**
  35:19
**experience (1)**

29:12
**expert (12)**
  8:25;9:16;11:9;
  12:1;20:14,20;26:6;
  27:7;28:20;29:5,9,13
**experts (9)**
  8:16,17;10:14;
  26:3;27:9,11;28:8,
  10;29:6
**expert's (2)**
  9:11;22:10
**explanation (1)**
  33:22
**expressed (2)**
  21:20;23:4
**extend (1)**
  16:13
**extension (1)**
  12:22
**extra (2)**
  12:12;21:6

**F**

**fact (20)**
  9:16;11:9,18;
  15:22;16:5;26:2,6,
  20;27:6,16,17,21,23;
  28:5,20;33:22;34:18;
  35:6;36:3;38:2
**facts (3)**
  39:6,19,25
**fair (2)**
  11:14;28:16
**fantastic (1)**
  11:7
**fast (1)**
  40:6
**favor (2)**
  28:14;38:3
**few (4)**
  15:12;21:6;32:20;
  37:8
**FGIC (2)**
  15:10;16:16
**FGIC's (2)**
  16:3,4
**fifteen (2)**
  26:12,12
**fifteen-minute (2)**
  32:17,18
**fifth (1)**
  42:4
**fifty-fifty (1)**
  26:19
**figure (2)**
  9:5;38:14
**file (5)**
  16:8,25;19:20,21,
  21
**filed (3)**
  13:17;14:10;25:14
**filing (3)**

21:1,4;32:7
**final (2)**
  14:8;41:6
**Financial (1)**
  4:11
**find (3)**
  9:8;10:16;41:20
**fine (11)**
  8:17,18;13:4,6;
  17:2;20:2;22:2,18,
  25;29:8;40:4
**finished (3)**
  9:22;18:1;30:1
**first (5)**
  11:22;15:13,13;
  16:2;22:1
**fit (2)**
  6:16;9:12
**five (7)**
  7:23;9:10,12;
  10:15;29:16;30:20;
  32:19
**Foerster (1)**
  6:12
**followed (3)**
  14:8;32:17,17
**following (2)**
  32:16;39:7
**follows (1)**
  7:25
**form (3)**
  19:13,17;42:10
**forward (3)**
  9:6;17:21;19:15
**found (1)**
  32:22
**foundational (1)**
  40:12
**four (8)**
  26:3,3;27:11;28:9,
  10;29:9,12,16
**four-hour (2)**
  29:4,15
**fourteen (1)**
  28:12
**fourth (6)**
  7:7;13:14;14:5;
  30:25;32:13,13
**Franklin (1)**
  26:9
**frankly (3)**
  24:6;29:11;30:18
**fraudulent (1)**
  16:18
**frequently (2)**
  9:17;33:2
**Friday (2)**
  8:2;37:25
**frustration (1)**
  21:20
**full (1)**
  24:22
**fully (1)**

21:15
**further (2)**
  6:4;32:6

**G**

**gave (1)**
  30:23
**generally (1)**
  12:11
**Given (7)**
  13:1;23:25;27:11;
  28:15;34:22;35:10;
  39:25
**giving (2)**
  36:4;38:7
**GLENN (2)**
  4:7;17:9
**GOLDSTEIN (7)**
  4:23;12:19,20,20,
  25;13:3,5
**Good (6)**
  6:11;8:10,12;17:6;
  31:19;41:10
**GOTTLIEB (2)**
  5:2;41:11
**Great (1)**
  21:2
**greater (1)**
  38:10
**grounds (2)**
  38:6,17
**group (1)**
  26:9
**groups (1)**
  26:14
**Guaranty (4)**
  4:11,19;12:15,20
**guess (3)**
  9:18;14:3;26:11

**H**

**HAMILTON (1)**
  5:2
**hammer (1)**
  29:21
**handle (1)**
  9:2
**handled (1)**
  8:25
**hands (1)**
  39:10
**handwritten (1)**
  37:10
**happen (2)**
  12:8;25:20
**happened (1)**
  30:3
**happy (1)**
  24:7
**hard (2)**
  9:8;40:5

12-12020-mg    Doc 3119    Filed 03/03/13    Entered 03/07/13 11:33:46    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 48 of 52
Case No. 12-12020-mg

March 1, 2013

hate (2)
31:10;41:19
hear (10)
6:7;9:22;20:11,13;
21:17,17,23;23:18;
25:22;38:15
heard (13)
8:15;10:20;17:4,
25;18:22;21:24,25;
22:21,21;23:3,15;
27:14;28:17
hearing (7)
6:4,8,13;21:14,16;
39:17;42:13
hearings (1)
7:19
heavy (1)
30:10
helpful (1)
24:5
Here's (1)
18:25
HOFF (9)
18:2,2,7;25:2,3,3,9,
13,18
hold (2)
23:24;25:24
holiday (3)
8:19;21:7;30:25
Honor (68)
6:11;8:4,7,10,24;
9:3,13;10:22;11:10;
12:3,18;13:3,7,19,22;
14:15,23;15:2,6,11,
14,16,24;16:7,17;
17:6;18:15,21;20:3,5,
6;21:10;22:1;23:2,
18,23;24:2,8,11,22,
25;25:3,23;27:7,11,
19;29:8;31:10,11,24,
25;33:9,14,21;34:12,
18;36:1,21;37:20;
38:23;39:1,4;40:19;
41:6,10;42:1,7,19
Honor's (1)
10:6
hope (2)
40:22;42:17
hopefully (1)
40:21
hour (1)
29:11
hours (19)
7:3,9,9,10,15,24;
13:23,23;14:5;28:19;
29:10,12;30:3,4,18,
20;31:4;32:19;39:21
housekeeping (1)
8:13
HOWARD (2)
4:15;15:9
hurdle (1)
34:15

I

idea (1)
14:19
identical (1)
34:21
identify (3)
8:8;15:8;17:7
imposing (1)
37:25
inability (1)
7:21
include (2)
30:18;37:11
included (3)
7:8;28:24;37:2
including (1)
27:21
inconsistent (1)
18:10
in-court (1)
42:14
indenture (1)
39:12
independent (5)
16:6,12,14,19;37:4
indicated (4)
6:6;7:16;13:23;
28:24
inducement (1)
16:18
initial (1)
6:20
initially (1)
13:23
inside (1)
40:17
insist (1)
9:18
insisting (1)
39:24
insists (1)
39:6
instance (1)
11:22
institutional (3)
15:17;26:4,8
Insurance (2)
4:11;15:18
insurers (2)
15:21;17:18
interested (1)
23:22
interfere (1)
30:25
interpretation (1)
16:23
into (2)
19:6;37:9
investors (4)
15:17;26:5,8;28:24
involved (1)

30:8
iPad (3)
14:12;20:15,16
IRENA (2)
4:23;12:20
issue (15)
8:14;15:13;16:8;
18:8,23;19:4,12,17,
24;20:10;36:8,9;
41:12;42:9,16
issues (7)
20:23;33:1;36:11;
40:1;41:2,14,15

J

Jewish (1)
21:6
joint (3)
7:7;32:13;42:4
Jonathan (2)
18:2;25:3
JONES (2)
4:10;15:10
Judge (1)
30:7
judges (1)
7:17
July (6)
30:24,25;31:2,11,
23;32:1
June (8)
8:2;14:20,21,22;
30:23,23;31:18;
32:15
junior (1)
12:15
jury (1)
24:21

K

Kaufman (48)
14:25;15:1,1;
18:17,20,20;22:17,
20,24;23:1,2;24:9,10,
18,20,22;27:4,6,17;
28:1,3,10;33:8,11;
34:16,17,24;35:1,3,6,
8,13,23;36:1,15,21,
25;38:8;39:2,3,22,25;
40:10,16,18;41:1,5;
42:4
keep (1)
19:15
keeping (1)
30:13
kinds (1)
29:17
Kramer (1)
8:11

L

label (1)
8:22
last (2)
31:7,17
late (3)
8:15;33:1;35:4
later (2)
6:20;13:1
law (1)
30:13
learned (1)
34:1
least (3)
18:4;27:8;40:20
leave (2)
21:24;32:23
leaving (2)
31:14,15
ledger (1)
26:16
left (3)
30:14,15;32:20
less (3)
7:16;30:4,5
letting (1)
36:17
Levin (1)
8:11
Liberty (1)
5:4
light (1)
28:22
LIGHTNER (4)
5:7;41:10,11,18
likely (2)
25:20,22
limine (16)
12:10;21:1,9;22:2,
6;23:4;24:12;25:5,
10,14;32:8,9;36:18;
38:12;40:23;41:9
limit (1)
7:22
limited (2)
19:19;37:10
limits (1)
29:5
list (6)
11:1;25:15,19;
34:7,9;41:25
listed (2)
35:16,17
lists (2)
13:15,15
little (3)
24:13;27:17;31:19
live (7)
9:16;19:9;20:10,
12;25:22;39:12;
41:14

LLC (1)
6:3
LLP (3)
4:2,18;5:2
loaded (1)
20:15
long (4)
7:18;9:11;23:16;
28:4
look (5)
17:21,23;26:20;
33:17;41:22
lot (7)
18:11;19:5;21:22;
27:12;30:8;40:12,23
lunch (2)
30:12;32:18

M

magnanimous (1)
30:16
many (12)
9:15,16;20:12,12;
25:22;27:4,4;28:12,
20,25;39:20;40:1
map (1)
18:8
March (8)
12:6,14,21,22,24;
13:17;24:1;37:25
MARK (2)
5:7;41:10
material (1)
24:13
matter (1)
39:3
may (57)
6:16,18,20,21,24;
7:4;8:1,1,1,2,15,18;
11:4;12:24;15:16;
16:22;17:18;19:11;
20:10,19,25;21:4,5,5,
7,8,8,9,10,11,16,24;
22:23;23:10,12;24:7,
10,23;25:8,15,15,16,
18;26:9;27:10;28:7,
11;29:22;32:8,10,10,
10,11,15;38:14;
40:21;41:8
maybe (4)
11:14;19:23;26:25;
31:12
MBIA (1)
18:3
mean (7)
6:14;24:5,14;25:8;
40:13,22,24
means (1)
15:20
meet (3)
19:3,22;42:10
Mellon (2)

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

March 1, 2013

4:3;17:10
**members (1)**
27:8
**Memorial (1)**
8:21
**mention (1)**
8:14
**mentioned (5)**
6:23;7:13;13:12;
14:9;41:14
**methodology (1)**
22:11
**microphone (2)**
8:8;15:4
**middle (1)**
24:11
**might (3)**
6:6;33:1;35:20
**mind (3)**
6:17;14:18,19
**minds (1)**
15:25
**minimum (2)**
28:11,13
**minor (1)**
30:21
**minute (1)**
14:3
**minutes (1)**
32:20
**miscounted (1)**
28:7
**misstated (1)**
16:10
**moment (1)**
39:15
**moments (1)**
15:12
**Monday (5)**
8:2;14:20;20:1;
31:21,25
**monoline (2)**
15:18,21
**monolines (1)**
17:11
**month (1)**
37:12
**more (18)**
7:16;11:14;13:9;
17:2,3;26:23;27:1;
28:25;29:2,2,11,21,
25;30:7;34:6;37:11;
38:4;39:8
**morning (7)**
6:11,13;8:10,12;
17:5,6;41:10
**Morrison (3)**
6:12;37:5,6
**Morrow (1)**
8:25
**most (2)**
14:14;29:17
**motion (21)**

6:5,8;21:15,17,18,
21,22;22:6,19;23:3,5,
14,15;27:2,3;32:6;
36:11;38:12,15,16,18
**motions (19)**
12:10;21:1,4,9;
22:2,3,4;23:4;24:12;
25:5,11,14;32:7,8,9,
10;36:18;40:23;41:8
**move (2)**
29:20,22
**moving (1)**
19:15
**much (8)**
6:12;19:13;20:8;
23:3;31:24;38:23;
40:2;42:21
**mutually (1)**
38:9
**myself (1)**
6:15

### N

**name (1)**
15:9
**necessarily (1)**
33:3
**necessary (1)**
33:4
**need (14)**
7:6,11,23;9:25;
19:14;23:24,25;30:7,
10;33:2,3;36:19;
38:20,24
**needs (3)**
9:20;12:7,8
**negotiate (1)**
40:2
**neither (2)**
27:22;36:4
**New (10)**
4:3,5,13,21;5:5;
6:16,18;17:10;23:9;
36:3
**next (5)**
9:20;10:4;14:3;
19:16,22
**niceties (1)**
40:3
**noteholders (1)**
12:15
**notes (4)**
37:10,10;41:21;
42:1
**number (9)**
6:3;7:3,5;22:4;
25:24;26:18;27:10,
12;28:22
**NY (4)**
4:5,13,21;5:5

### O

**object (5)**
12:12;14:4;15:24;
17:12;27:23
**objection (3)**
9:9;12:16;38:3
**objections (5)**
12:5;33:23;34:3,6,
19
**objectors (2)**
12:12;28:25
**objectors' (1)**
34:2
**observe (1)**
21:8
**obviously (1)**
18:4
**occur (3)**
7:20;30:21;42:15
**occurred (1)**
37:13
**occurs (1)**
33:2
**o'clock (7)**
9:22,22;23:16;
32:19,21,25;33:5
**odd (1)**
24:13
**off (6)**
6:8,22;20:18;
21:23;29:14;41:24
**offer (1)**
36:13
**offered (3)**
11:15;34:14;37:21
**offering (2)**
26:10;35:11
**omnibus (7)**
7:7;13:15;14:6;
21:16;32:13,13;42:4
**One (33)**
5:4;8:13,17;9:1;
11:10,12,13;12:7,11;
15:7,11;18:10;19:7;
23:2,4;24:2;27:21;
29:18;30:6,7;33:7,12,
14;34:12,14;35:13;
38:7,22;39:3,5;40:7;
41:5,25
**ones (1)**
33:18
**only (7)**
7:20;24:10;30:3;
36:16;37:11;41:20;
42:8
**operator (1)**
7:20
**opportunity (2)**
18:5,15
**oppose (1)**
17:1

**opposing (3)**
7:10;27:2;28:14
**order (16)**
7:7,11;9:9,19;
10:23;14:6;27:19;
29:4;32:14;36:2;
39:4,5,7,18;42:5,11
**originally (1)**
6:5;7:14;27:23
**others (3)**
15:4;21:25;41:2
**otherwise (1)**
32:12
**ought (5)**
25:8;26:12;40:7,
14,20
**out (16)**
7:4;8:16;9:5,9,19,
23;11:8,21;27:11;
29:7,15;31:4,11;
33:5;38:14;41:20
**outside (1)**
37:5
**over (7)**
11:14;18:8;32:4;
34:15;37:15;39:17;
40:23
**overtime (1)**
7:21
**owe (2)**
12:13;13:12
**own (1)**
27:9

### P

**page (1)**
32:5
**Pam (2)**
11:13;33:15
**paper (1)**
41:21
**papers (4)**
16:2;18:11;23:5;
24:19
**paragraph (4)**
7:8;13:14;14:5;
32:12
**Part (6)**
7:4;35:20,21;36:9,
11;38:14
**particular (1)**
16:8
**parties (12)**
7:10;13:20;14:4,7;
16:21;19:2;25:6;
26:17;28:23;30:1,8;
39:7
**party (1)**
16:4
**passed (1)**
28:5
**Pause (3)**

31:22;32:3;41:23
**pay (1)**
7:21
**peculiar (1)**
39:16
**people (5)**
21:8;22:10;23:21;
29:19;38:16
**percipient (2)**
25:25;26:7
**perhaps (1)**
6:19
**period (1)**
31:7
**permission (1)**
16:7
**permit (4)**
12:24;18:15;36:16,
19
**permitted (1)**
32:7
**personal (1)**
37:22
**petition (1)**
37:13
**Philip (3)**
8:10;15:1;18:20
**picked (1)**
30:22
**pieces (1)**
41:21
**plaintiffs' (2)**
26:14;34:2
**planned (1)**
18:3
**played (1)**
29:6
**Plaza (1)**
5:4
**please (2)**
6:2;24:15
**pm (3)**
7:21;32:9;37:25
**point (9)**
10:15;15:7,11;
17:6,10;29:22;35:13;
38:6;40:15
**pointed (1)**
27:11
**points (3)**
16:22;29:16,19
**position (13)**
15:13;16:3,11,20,
20;17:19;18:9,18,21;
19:7;26:11;34:2;37:4
**possession (1)**
37:9
**pre (1)**
22:15
**preclude (6)**
6:6;22:6;24:16;
25:17;38:13,16
**preclusion (10)**

21:15,22;22:19;
23:3,5,14,15,17;32:6;
36:11
**preference (2)**
6:25;8:15
**prejudice (1)**
34:13
**prepare (2)**
30:4;42:4
**prepared (5)**
7:25;9:10;21:17,
17;41:16
**preparing (1)**
39:17
**present (1)**
33:2
**pre-trial (10)**
6:4;10:25;12:8,9;
26:23;39:4,5,7,18;
41:6
**pretty (2)**
33:19;36:13
**prevent (1)**
35:24
**previously (1)**
38:2
**prior (4)**
10:23;27:19;31:16;
37:22
**probably (3)**
20:13;21:20;29:23
**problem (6)**
9:4,4,11;24:10;
31:17;33:18
**problems (1)**
9:17
**procedural (1)**
39:3
**proceed (1)**
38:7
**proceedings (2)**
39:8;42:22
**produce (2)**
37:3,22
**produced (3)**
36:23;38:2,8
**producing (1)**
38:21
**production (2)**
37:15;38:1
**project (1)**
8:25
**prompt (1)**
38:9
**proper (1)**
38:17
**proposal (1)**
6:20
**propose (2)**
6:17;10:24
**proposed (6)**
19:9;34:20,25;
35:10;42:11,11

**PROSKAUER (1)**
4:18
**prospective (1)**
38:1
**provided (1)**
12:5
**purported (1)**
27:20
**put (14)**
6:8;19:4,12,17,23;
20:18;21:23;26:11,
21,24;28:22;32:22;
39:15;41:20
**put-back (1)**
17:13
**puts (1)**
19:4
**puzzled (1)**
27:17

## Q

**quite (1)**
14:13

## R

**Raines (1)**
16:9
**RAINS (58)**
6:11,11;8:3;10:22;
11:4,7,10,12,19,25;
12:3,7,11;13:7,12,19,
22;14:15,23;16:10,
17;18:10;19:5,25;
20:3,8;21:2,10,12;
22:1,8,14,20,24;23:9;
24:2,7,25;25:23;26:3,
7;27:14;33:13,21,25;
34:10;35:14;36:8;
37:15,19,20;38:23;
39:1;41:25;42:1,3,7,
19
**raise (5)**
9:3;11:24;20:23;
29:16;41:3
**raised (4)**
15:11,12;22:12;
41:12
**rather (1)**
38:11
**reached (1)**
8:16
**read (8)**
14:10;20:21;22:9,
9;24:15;31:1,8,19
**reading (2)**
14:12;20:16
**ready (4)**
9:6,21;10:4;21:22
**real (1)**
18:23
**reallocation (1)**

29:6
**really (8)**
7:22;31:5;36:24,
25;39:11,12,16;40:11
**reason (1)**
26:13
**rebut (2)**
34:18;35:3
**rebuttal (11)**
27:21,24;28:2,3;
33:13,17,20;36:3,5,
13;38:17
**rebutting (1)**
33:24
**recall (1)**
41:7
**recently (1)**
27:20
**recess (2)**
30:12;32:18
**record (3)**
17:8;36:7;38:4
**redirect (3)**
10:2;26:18;27:1
**references (1)**
22:9
**referring (1)**
13:18
**reflecting (1)**
42:5
**relationships (1)**
17:17
**release (3)**
15:23;16:1,11
**released (7)**
15:21;16:3,6,7,16,
21;19:10
**releases (7)**
15:14;16:12;18:6,
23;19:3;42:9,12
**relevance (1)**
40:25
**remains (1)**
13:11
**rep (3)**
16:13,19;17:14
**replaces (1)**
24:1
**replies (2)**
14:22;21:9
**reply (6)**
12:13,14;15:12;
18:9;21:5;32:10
**report (1)**
6:14
**reported (1)**
23:9
**reporter (2)**
7:20;33:2
**reports (3)**
12:1;20:14,20
**representing (1)**
15:10

**request (3)**
9:7;21:23;37:1
**require (1)**
33:1
**required (7)**
7:3,20;13:16;23:6;
29:2;32:23;37:3
**requirement (1)**
32:24
**requires (1)**
19:12
**re-read (1)**
20:19
**ResCap (2)**
21:16;23:21
**Residential (1)**
6:3
**resolution (1)**
40:1
**resolve (8)**
11:23;19:4,16,23;
20:9;39:20;42:10,12
**resolved (1)**
41:12
**respect (5)**
6:4;15:14;17:13;
37:4,7
**responding (1)**
27:2
**response (1)**
35:13
**responses (2)**
21:5;32:9
**responsible (1)**
37:6
**rest (4)**
10:5;19:5,24;39:15
**reunderwriting (1)**
8:25
**review (3)**
31:19;37:16;42:9
**reviewed (1)**
39:5
**revised (4)**
7:7;14:5;32:13;
42:4
**right (28)**
6:2;10:19;11:20;
12:16;18:24;20:11;
22:8,14;23:22;24:23;
25:1,18,21;26:19;
27:10;28:4;30:19;
32:4;36:18;37:24;
38:24;40:10,11,15;
41:2,24;42:8,20
**RMBS (1)**
6:4
**ROSE (1)**
4:18
**Rule (5)**
11:1;13:17;24:2;
36:14;38:5
**ruling (1)**

10:6
**run (1)**
37:11

## S

**same (5)**
22:3;25:5;32:5;
35:19;38:11
**satisfied (1)**
22:11
**Saturday (1)**
31:15
**saw (1)**
22:12
**saying (4)**
18:3;34:23;35:5,9
**sched (1)**
22:8
**schedule (17)**
6:16;7:16;10:14;
20:11;22:2,3,14,18;
23:17,20,25;30:16;
31:2;32:16;38:12,13,
20
**scheduled (6)**
6:5;7:14;9:6;14:8,
18;31:11
**schedules (1)**
10:15
**scheduling (13)**
6:9;7:7;9:11,17,25;
14:6;27:19;29:4;
30:20,24;32:13;36:2;
42:5
**scope (5)**
15:14,23;16:1;
19:3;42:11
**seated (1)**
6:2
**second (1)**
41:4
**secured (1)**
12:15
**seeing (1)**
17:21
**seem (1)**
39:21
**seems (3)**
24:13;28:7;39:8
**sensitive (1)**
18:23
**separate (3)**
16:5;21:13,14
**separately (2)**
21:25;23:3
**sequestration (1)**
7:19
**series (2)**
6:21;11:5
**seriously (1)**
36:1
**served (1)**

12-12020-mg    Doc 3119    Filed 03/03/13    Entered 03/07/13 11:33:46    Main Document
Pg 51 of 52

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

March 1, 2013

**37:**1

**set (8)**
7:3,25;9:1;20:24,
25;23:16;27:19;
28:19
**Setting (1)**
31:7
**settlement (12)**
6:4;15:15,16,21,
25;16:4,4,5,22;26:9;
28:23;37:13
**several (1)**
41:21
**shaky (1)**
38:6
**shall (1)**
13:17
**share (2)**
13:24,25
**Shavuot (1)**
21:7
**short (2)**
18:16;37:21
**shorter (2)**
10:2;29:13
**showed (1)**
17:5
**side (3)**
26:13,15;27:12
**sides (2)**
14:21;39:20
**SIDMAN (7)**
4:15;15:6,9,9;
16:10;18:7;20:6
**SIEGEL (6)**
4:7;17:4,5,9,9,24
**sign (1)**
16:5
**signature (1)**
42:6
**significant (1)**
8:13
**simple (2)**
26:13;33:22
**simply (2)**
17:15;26:11
**simultaneous (3)**
14:21,22;31:18
**sitting (1)**
40:17
**six (5)**
26:17;29:21;30:20;
31:4;32:19
**six-hour (1)**
7:23
**small (3)**
11:10;35:18;36:13
**so-called (2)**
27:20;36:3
**somebody (5)**
6:24;8:8;14:24;
19:21;30:6
**sometime (1)**

23:14
**sometimes (2)**
7:1;10:1
**sorry (6)**
15:9;17:9;25:3;
28:8;35:8;41:5
**sort (4)**
9:19;11:20;30:22;
31:3
**sparing (1)**
40:14
**speak (2)**
15:5;18:19
**SPEAKER (4)**
20:5;23:18;29:8;
31:25
**specific (1)**
16:17
**specifically (3)**
14:19;36:11;39:18
**spend (3)**
29:12,13;30:19
**spending (2)**
21:21,22
**spent (1)**
40:2
**split (1)**
26:19
**Square (1)**
4:20
**standards (1)**
39:11
**standpoint (1)**
6:25
**stands (1)**
16:24
**start (1)**
28:4
**starting (1)**
8:23
**state (1)**
32:22
**stay (1)**
33:1
**STEEN (1)**
5:2
**stick (1)**
30:9
**still (7)**
11:16;12:13;13:9,
9;14:12;15:23;39:10
**stipulate (3)**
39:23;40:8,20
**stipulation (7)**
19:4,13,17,23;39:6,
19;42:11
**stipulations (1)**
40:3
**Stop (3)**
35:7,9,24
**strangest (1)**
39:9
**Street (1)**

4:12
**strict (1)**
33:20
**strike (1)**
24:16
**strokes (1)**
29:4
**strong (1)**
6:25
**stuff (2)**
14:12;20:22
**subject (3)**
7:6;17:12;18:23
**submission (4)**
23:10,13;24:1,13
**submissions (1)**
10:25
**submit (5)**
23:7;25:6,6,7;42:6
**submitted (6)**
12:2,10;13:11;
14:11,14;34:3
**submitting (1)**
32:11
**suggested (2)**
6:19,24
**super (1)**
30:16
**support (1)**
40:13
**supporting (3)**
7:10;27:3;28:23
**sure (9)**
8:20;9:2;10:1;
17:1;18:11;31:8;
32:5;34:10;41:15
**surreply (6)**
16:8,25;17:21;
18:4,15;19:1
**suspect (1)**
25:20
**sustaining (1)**
38:3

**T**

**table (1)**
26:11
**Taft (1)**
18:3
**tailor (1)**
30:11
**Talcott (1)**
26:8
**talk (5)**
6:9;7:6;14:9;25:1,
21
**talked (1)**
16:18
**talking (2)**
9:15;12:23
**tally (1)**
25:23

**telephone (2)**
19:18;42:14
**template (1)**
39:18
**ten (8)**
20:1,13;25:25,25;
26:2,20;27:15,16
**tentative (3)**
7:8;14:4;29:24
**tentatively (2)**
21:3;30:22
**terms (4)**
9:25;22:11;27:13;
28:13
**testify (1)**
10:17
**testifying (3)**
11:18;35:17;36:6
**testimony (18)**
10:25;13:13,16;
25:10,25;26:10;
34:21;35:2,10,11;
36:5,8;38:10,13,16,
17;40:12,13
**testy (1)**
40:11
**Thanks (2)**
6:12;20:8
**therefore (2)**
21:8;37:12
**thirty (5)**
7:9,15,24;30:18;
39:21
**though (3)**
16:4;29:20;38:22
**thought (4)**
17:22;33:12;39:16,
18
**three (4)**
23:13;28:7;29:15;
34:10
**threshold (1)**
41:13
**throw (1)**
33:19
**thrown (1)**
33:5
**Thursday (1)**
8:1
**ticked (1)**
41:24
**timed (3)**
13:21;29:25;30:11
**timely (2)**
37:16;38:18
**Times (2)**
4:20;7:5
**today (11)**
6:5,7;9:23;11:21;
19:8;21:18,23;38:22,
25;41:3;42:6
**to-day (1)**
7:12

**today's (1)**
39:17
**together (1)**
19:4
**told (1)**
22:20
**tons (1)**
40:17
**took (5)**
15:13;18:8;34:19;
36:1;37:3
**total (1)**
7:9;27:11
**town (1)**
7:4
**track (1)**
30:13
**train (1)**
19:15
**transcript (1)**
33:3
**trial (41)**
6:9,18;7:9,12,14,
23,23;8:15;9:6,10,19;
10:16;12:23;13:1,11,
21;14:7,17,20,20;
20:18,20,21,24;
23:10,12;24:3,4;
29:11,13,24;30:2,20,
21,23;31:1;32:15;
33:1,3;35:17;39:9
**trials (7)**
7:1,3;9:1;29:25;
30:1,6,12
**tried (2)**
15:22;25:23
**Trust (4)**
5:3;24:15,22;41:11
**trustees (3)**
18:13;26:15;39:12
**trusts (4)**
17:14,15,16,17
**try (5)**
9:5,8;11:20;40:7;
42:17
**trying (5)**
22:6;25:4;29:20;
39:10;40:2
**Tuesday (3)**
8:1,23;20:25
**twelve (9)**
7:9;13:23;14:4;
28:11,19;30:3,4,9;
31:5
**twelve- (2)**
25:1;40:5
**twenty-ten (1)**
28:14
**two (17)**
9:1;11:2;12:12;
23:11;24:3;26:14;
27:7,10,20;29:11;
33:8,10,13;34:7,9,10;

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

March 1, 2013

38:16
**typically (1)**
30:12

## U

**unacceptable (1)**
9:24
**unclear (1)**
15:24
**Understood (3)**
8:24;26:22;41:1
**unequal (1)**
29:1
**UNIDENTIFIED (4)**
20:5;23:18;29:8;
31:25
**unredacted (1)**
14:11
**up (10)**
9:17;10:2,14;15:4;
17:5,25;25:23;36:17;
39:13;40:12
**use (7)**
26:21,25;27:1;
30:4;35:20;38:11,11
**used (4)**
25:19;30:5,14;
35:18
**using (1)**
30:2
**usual (1)**
24:2
**usually (1)**
29:17
**Utah (1)**
9:2

## V

**varied (1)**
19:7
**various (1)**
15:19
**versions (1)**
14:11
**view (8)**
14:17,25;15:3;
16:9,12,22;18:6;
22:16
**virtually (1)**
14:10

## W

**wants (4)**
6:10;13:24;18:18;
19:21
**warned (1)**
10:4
**warranty (3)**
16:13,19;17:14
**waste (2)**

40:14,23
**way (2)**
10:17;35:4
**Wednesday (1)**
8:1
**week (10)**
8:18,22;9:1;19:16,
22;20:1;24:3;31:16;
38:7,22
**weeks (7)**
8:17;11:2;23:11,
13;24:4;34:10;36:4
**weight (1)**
40:22
**weren't (3)**
21:19;25:19;38:18
**West (5)**
11:13;27:21;33:15;
37:5,7
**West's (2)**
36:22;37:10
**What's (7)**
11:11;16:9;18:6,
17;24:19;30:2;33:20
**whenever (1)**
29:25
**whereas (1)**
33:15
**Whereupon (1)**
42:22
**Whitlinger (3)**
27:22;33:14;35:15
**whole (2)**
23:7;41:20
**who's (1)**
22:20
**Wickersham (1)**
18:2
**willing (3)**
6:17;17:1;22:21
**Wilmington (2)**
5:3;41:11
**wind (2)**
36:17;40:12
**winds (1)**
10:2
**within (2)**
9:12;37:2
**without (2)**
30:2;37:18
**witness (20)**
9:20,21;10:4;11:1,
12,18,22;13:15;26:4,
6,7,18;27:23;29:21;
32:20,21;33:7;35:16,
17;38:1
**witnesses (41)**
9:9,16,18,20,23;
10:1;15:19;18:10;
20:12;25:22;26:1,2,
20,23,24;27:4,6,7,12,
16,17,21;28:6,11,16,
20,23,25;33:8,13,15,

17,23;34:5,17,20,22,
22;35:4;36:3,3
**wonder (1)**
40:2
**word-for-word (1)**
34:21
**work (12)**
6:22,24;9:19,25;
10:9;11:22;20:1;
25:12;27:12;32:23;
38:8,20
**worked (1)**
9:8
**works (1)**
22:24
**worried (2)**
19:8;39:21
**writing (1)**
26:24
**written (1)**
29:2
**wrote (1)**
21:4

## Y

**yesterday (10)**
6:6,19,23;7:13,18,
18;8:14;13:5;14:9;
21:19
**York (6)**
4:3,5,13,21;5:5;
17:10

## 1

**1:45 (1)**
32:18
**10 (4)**
21:11;23:16,21;
32:11
**10:30 (1)**
32:16
**10:45 (1)**
32:17
**10006 (1)**
5:5
**10017 (1)**
4:13
**10036 (2)**
4:5,21
**1095 (1)**
4:4
**10th (3)**
30:25;31:2,11
**11 (1)**
37:11
**11:04 (1)**
42:22
**11:30 (4)**
23:17,20,22;32:7
**11th (3)**
23:16,20;32:7

**12 (2)**
13:14;32:12
**12:15 (1)**
32:17
**12-12020 (1)**
6:3
**13 (2)**
7:8;14:5
**13th (2)**
21:5;32:10
**14 (2)**
24:7,23
**14th (6)**
11:4;21:16;22:23;
24:10;25:8;32:11
**15 (1)**
12:14
**15th (3)**
12:22,24;21:7
**16th (1)**
21:7
**17th (5)**
14:21;21:6,8;
30:23;32:10
**1st (2)**
31:23;32:1

## 2

**2 (1)**
9:22
**222 (1)**
4:12
**22nd (1)**
31:21
**23rd (7)**
21:9,10,11,24;
32:11;38:14;41:8
**24th (3)**
14:22;30:23;31:18
**26 (1)**
11:1
**26a3 (1)**
13:17
**27th (2)**
8:18,19
**28th (3)**
8:1;20:25;32:15
**29th (2)**
8:1;32:15

## 3

**3 (1)**
9:22
**3:15 (1)**
32:18
**3:30 (1)**
32:18
**30th (2)**
8:1;32:15
**31st (2)**
8:2;32:15

**3rd (3)**
8:2;14:20;32:16

## 4

**4:30 (1)**
32:22
**41st (1)**
4:12
**4th (3)**
12:6;13:17;24:1

## 5

**5 (7)**
7:21;32:9,19,20,
25;33:5;37:25

## 6

**6th (6)**
6:18,21;21:4;
23:10;25:15;32:8

## 7

**7th (1)**
31:15

## 8

**8th (3)**
8:18;12:21;37:25

## 9

**9 (4)**
7:17,17,20;32:16
**9019 (1)**
7:10