1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matters of:

6  RESIDENTIAL CAPITAL, LLC, et al.,        Case No. 12-12020-mg

7             Debtors.

8  - - - - - - - - - - - - - - - - - - - -x

9  DIXON,                                   Case No. 12-02088-mg

10                Plaintiff,

11             - against -

12  GMAC MORTGAGE CORPORATION, A/K/A GMAC MORTGAGE LLC,

13                Defendant.

14  - - - - - - - - - - - - - - - - - - - -x

15  DEMUSTCHINE,                             Case No. 12-02065-mg

16                Plaintiff,

17             - against -

18  RAHI REAL ESTATE HOLDINGS, LLC,

19                Defendant.

20  - - - - - - - - - - - - - - - - - - - -x

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14                    United States Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    February 28, 2013

19                    2:34 PM

20

21

22    B E F O R E:

23    HON. MARTIN GLENN

24    U.S. BANKRUPTCY JUDGE

25

1

2    Adj. Hearing Re: Cure Objections. (Related Document no. 61)

3

4    Plan Status Update

5

6    (CC: Doc# 1357) Final Hearing RE: Debtors Motion for Entry of

7    an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule

8    6004 (I) Authorizing the Debtors to Compensate

9    PricewaterhouseCoopers, LLP for Foreclosure Review Services in

10   Furtherance of the Debtors Compliance Obligations Under Federal

11   Reserve Board Consent Order and (II) Reaffirming Relief

12   Granting in the GA Servicing Order

13

14   (CC: Doc no. 1426) Final Hearing RE: Debtors' Application for

15   an Order Under Section 327(e) of the Bankruptcy Code,

16   Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the

17   Debtors to Employ and Retain Pepper Hamilton LLP as Special

18   Foreclosure Review Counsel for Bankruptcy Issues to the

19   Debtors, Nunc Pro Tunc to May 14, 2012 filed by Gary S. Lee on

20   behalf of Residential Capital, LLC.

21

22

23

24

25

1

2  (CC: Doc no. 1427) Final Hearing RE: Debtors' Application Under

3  Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a)

4  and Local Rule 2014-1 for Authorization to Employ and Retain

5  Hudson Cook, LLP as Special Counsel to the Debtors, Nunc Pro

6  Tunc to May 14, 2012 filed by Gary S. Lee on behalf of

7  Residential Capital, LLC.

8

9  Adversary proceeding: 12-02088-mg Dixon v. GMAC Mortgage

10  Corporation, aka GMAC Mortgage LLC

11  Pretrial Conference

12

13  Adversary proceeding: 12-02065-mg DeMustchine v. RAHI Real

14  Estate Holdings, LLC

15  Pretrial Conference.

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

```
 1
 2    A P P E A R A N C E S :
 3    MORRISON & FOERSTER, LLP
 4          Attorneys for Debtors
 5          1290 Avenue of the Americas
 6          New York, NY 10104
 7
 8    BY:   GARY S. LEE, ESQ.
 9          NORMAN S. ROSENBAUM, ESQ.
10          LORENZO MARINUZZI, ESQ.
11          ERICA J. RICHARDS, ESQ.
12
13
14    KRAMER LEVIN NAFTALIS & FRANKEL LLP
15          Attorneys for Official Creditors' Committee
16          1177 Avenue of the Americas
17          New York, NY 10036
18
19    BY:   RACHAEL L. RINGER, ESQ.
20          KENNETH H. ECKSTEIN, ESQ.
21          DOUGLAS MANNAL, ESQ.
22
23
24
25
```

1

2  SILVERMAN ACAMPORA LLP

3         Special Counsel to the Committee

4         100 Jericho Quadrangle

5         Suite 300

6         Jericho, NY 11753

7

8  BY:   JUSTIN S. KRELL, ESQ.

9

10

11  LAW OFFICES OF THOMAS MASON

12         Attorneys for Plaintiff Bruce DeMustchine

13         15 New England Executive Park

14         Burlington, MA 01803

15

16  BY:   THOMAS MASON, ESQ.

17

18

19  KIRKLAND & ELLIS, LLP

20         Attorneys for Ally Financial Inc. and Ally Bank

21         601 Lexington Avenue

22         New York, NY 10022

23

24  BY:   RAY C. SCHROCK, ESQ.

25

1                    P R O C E E D I N G S

2              THE COURT:  Please be seated.  All right, we're here

3    in Residential Capital, LLC.  It's case number 12-12020.  Mr.

4    Lee?

5              MR. LEE:  Sorry.  Good afternoon, Your Honor.  Gary

6    Lee from Morrison & Foerster for the debtors.  Your Honor, the

7    first item on the agenda is for the debtor to give a brief

8    update, if we may.

9              There's been a lot going on since we were last here,

10   and I think it would be useful for all the parties-in-interest

11   to hear precisely where we are with the case.

12             THE COURT:  Please, go ahead.

13             MR. LEE:  What I want to cover, Your Honor, are

14   basically five things.  The first is to give the Court and the

15   parties an update on the closings of the platform and legacy

16   portfolio, and also to give parties an overview of the assets

17   that remain in the estate and the debtors' plan to administer

18   those assets through the conclusion of the cases.

19             The second is to give you a quick overview of the

20   current status of the mediation.  Third, Your Honor, I'd like

21   to very briefly address the debtors' appointment of Mr. Kruger

22   as the chief restructuring officer of the debtors, subject to

23   Your Honor's approval.  I think Mr. Kruger is here with us in

24   court today.  Your Honor, Mr. Kruger's already spent a

25   considerable amount of time meeting with the debtors and

1    individual creditor constituencies, and his influence and

2    guidance has already proven very valuable, as Your Honor will

3    have seen from some of the things that have been filed over the

4    last three or four weeks.

5            Fourth, Your Honor, I'd like to just briefly run the

6    Court through the agreement that was reached with the

7    creditors' committee, which you will have seen, I think, filed

8    in connection with the committee's response to the debtors'

9    motion for exclusivity.  The agreement addresses the debtors'

10   and Mr. Kruger's work plan over the next sixty days, and the

11   focus is very much on trying to address the intercreditor

12   issues that continue to pervade in this case, and trying to

13   move forward as quickly as we can towards a consensual plan.

14           And then finally, You Honor, I'd like to give the

15   Court and everybody an update on the Federal Review (sic) Board

16   foreclosure review and the motion that we filed last night in

17   connection with that review.

18           THE COURT:  Federal Reserve Board.

19           MR. LEE:  Yes, Your Honor.  So it sounds like a lot to

20   cover, but I'll try and be brief on each of those topics.  But

21   they're an important part of the fabric of what's going to

22   happen in the next sixty, ninety days in this case.

23           If I may, Your Honor, I'll start then with the sales,

24   which I think everybody will agree was a very significant

25   milestone in this case.  As Your Honor knows, the sales

1  required three separate closings with multiple purchasers and
2  necessitated some very highly and heavily negotiated
3  settlements with different governmental agencies.  The end
4  result, Your Honor, exceeded expectations, and in terms of the
5  net value derived for the estate, it was over four billion
6  dollars.
7          I will -- I'll break that down.  The debtors' sale of
8  their Fannie Mae servicing assets and origination and capital
9  markets functions was sold to Walter Investment Management.
10 That closed on January the 31st, and that resulted in
11 approximately 492 million dollars of value to the estates.  The
12 debtors' sale of their legacy portfolio to Berkshire Hathaway
13 closed on February the 5th, 2013, and that resulted in
14 approximately 1.41 billion dollars of value to the estates.
15 Finally, the debtors' sale of their servicing platform to Ocwen
16 closed on February the 15th of 2013.  And that resulted in
17 approximately 2.1 billion dollars of value to the estate.
18         Now, I know I promised that we would get all of the
19 closings done by January the 31st, and got one of the three
20 right, anyway.  But two weeks.
21         Your Honor, as a result of the approximately four
22 billion dollars in aggregate value for the estates, the debtors
23 have already paid down the Barclays DIP facility, the Ally DIP
24 facility, the Citi MSR facility, and the Fannie EAF facility.
25 And so after paying down those facilities, administrative and

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1   priority claims and the cure claims, the sales have still

2   brought in several hundred million dollars to the estates.

3           Following the close of the sales, the debtors still

4   have very significant and material assets to manage.  There are

5   approximately 1.4 billion dollars of assets still to monetize.

6   That includes loans, real estate owned properties, securities,

7   and insurance claims with respect to certain federally insured

8   loans.  Specifically included in those assets are a subset of

9   the debtors' FHA insured loans, for which Your Honor granted

10  approval for auction procedures.

11          As Your Honor is aware, the debtors, in consultation

12  with the creditors' committee and the junior secured

13  bondholders and AFI, determined that they had not received any

14  acceptable bids for those assets.  As a result, the FHA auction

15  sale process was canceled and the estate will continue to

16  administer and manage those assets through the fullness of

17  time.

18          Monetizing and maximizing the value of those assets,

19  Your Honor, as well as reconciling the several thousand claims

20  that have been assertible, clearly require the institutional

21  knowledge and skill sets that the debtors and their management

22  continue to provide.

23          THE COURT:  Who will service or subservice those

24  loans?  The FHA loans that you're going to continue --

25          MR. LEE:  With -- currently there's a team within the

1  debtors' estate that's managing those assets and effectively

2  winding those down.  And we have provided the committee with a

3  very detailed description of the remaining estate employees,

4  the tasks that each of those employees will be required to

5  carry out in order to maximize that value, and a breakdown of

6  the associated costs.  I believe there have been three meetings

7  with -- between the debtors' professionals, advisors, and the

8  company and the committee to review the estate management plan.

9  And I believe there's another meeting set for next week.  So I

10  think everybody understands what the plan is and how it will be

11  conducted.

12          Your Honor, I'd just like to turn briefly to the

13  mediation and -- as Your Honor may have heard already in the

14  papers that were filed, I think certain parties have taken the

15  position that the mediation process is stalled.  Whether and

16  why there is a hiccup in the mediation process isn't important

17  for today's hearing.  And the debtors are not going to cast

18  blame as to -- or take any position as to what the cause of

19  that might be.

20          I am, though, of the view and happy to report that the

21  mediation still has a heartbeat.  We have met with Judge Peck

22  in the last two days and our understanding is that he continues

23  to meet with key parties in this case.  So at least as far as

24  the debtors are concerned, the process has been, is, and

25  hopefully will continue to be both productive and helpful.

1    If I may, Your Honor, I just want to turn briefly to

2    the retention of Mr. Kruger as chief restructuring officer of

3    the debtors.  Your Honor, that motion will be addressed next

4    Tuesday, so I don't want to get into the merits of the relief

5    that the debtors requested at this point.  But I believe it's

6    clear to everybody that Mr. Kruger is a seasoned restructuring

7    professional, one that's well-respected by the bankruptcy bar

8    and everybody in this room.  And he will be acting as an

9    independent fiduciary of the estate.  And the board believes he

10   will be able to efficiently and astutely drive these cases to

11   resolution.

12       There have been no objections to the debtors' choice

13   of Mr. Kruger or any indication from any of the parties that he

14   is anything less than capable of fulfilling the very difficult

15   job that lies ahead.  And as I mentioned, Your Honor, Mr.

16   Kruger was integral in reaching a resolution on a number of

17   issues with the creditors' committee.  And that resolution is

18   embodied in the committee's statement in support of Mr.

19   Kruger's retention as well as in connection with the

20   exclusivity motion.

21       We hope that that agreement will drive discussions in

22   earnest towards a consensual plan.  And the objective, Your

23   Honor, during the next sixty days, will be to focus on

24   resolving the very complex intercreditor issues that stand in

25   the way of a consensual plan here.  And that includes those

```
 1   raised in connection with RMBS settlement, whether the monoline
 2   claims are subordinated to the RMBS trust interests.  We're
 3   trying to explore possible resolutions with the borrower
 4   claimants and the securities claimants.  And obviously one of
 5   the other issues, as the Court will be aware from the objection
 6   from the junior secured noteholders, is we need to reach a
 7   resolution on the priority and treatment of the junior secured
 8   noteholders' claims as well.
 9          In order to make progress on the numerous
10   intercreditor issues, the debtors and the committee believe
11   that it will be necessary to adjourn the RMBS settlement for a
12   period of thirty to forty-five days, subject to the Court's
13   calendar.  There is consent from the parties that are involved,
14   including from the group represented by Ms. Patrick, to an
15   adjournment of that trial.
16          I know the parties are here tomorrow on the status
17   conference in connection with the RMBS trial.  But one of the
18   things I've been asked, obviously, is to see what the Court's
19   calendar looks like in May towards the beginning or end of May,
20   and whether it's appropriate to try and set that today or we
21   can wait till tomorrow.
22          THE COURT:  We can do that tomorrow.  I have looked at
23   my calendar.  It's my very strong preference that any trial I
24   conduct is day-to-day till completed.  That makes it more
25   likely it'll be at the end of May rather than earlier in May.
```

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1   I'll be able to give you some possible dates tomorrow.  May

2   seems like a long way away, but it isn't.  The operations of

3   the Court may well be affected starting tomorrow by

4   sequestration.  And I think when we had the earlier pre-trial

5   conferences in the case and I did a tentative allocation of

6   time between the sides, I indicated that -- I probably said

7   we'd go from 9 a.m. to 9 p.m.  It is very likely that as long a

8   sequestration lasts, that 5 p.m. will be the stop time.  We'll

9   have to see how that all plays out.  But right now, nobody in

10  Congress -- the White House seems to be talking.  But May does

11  seem to be a long way away.  But I think --

12          MR. LEE:  I --

13          THE COURT:  -- that may affect some scheduling issues.

14          MR. LEE:  And one of the things that we're all going

15  to be trying to do over the next sixty days is both to narrow

16  the issues relating to the RMBS settlement and the objections.

17  There is a work plan to sit down and seek to resolve them.  And

18  remarkably, it took very little time for the parties to agree

19  on a revised schedule leading up to trial.  So there's

20  definitely a sentiment that people are working closely to try

21  and resolve these issues.

22          THE COURT:  In anticipation of a trial in a few weeks,

23  I have read virtually everything that's been filed in

24  connection with the RMBS trial.  So we'll talk further about it

25  tomorrow.

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1          MR. LEE:  Thank you, Your Honor.  Just returning back

2    to the motions to appoint Mr. Kruger and to extend exclusivity.

3    We have heard that various parties have indicated their plan to

4    file supplemental papers on Monday.  I don't think they'll be

5    called replies, because your case management order required

6    them to be filed by 12 tomorrow.  So they'll be called

7    something else.

8          THE COURT:  I might not pay any attention to them, but

9    we'll see.

10          MR. LEE:  And I believe that some of those parties

11    will be contacting chambers in advance.

12          We also anticipate that there may be some discovery

13    requests.  And given the shortness of time, we'll deal with

14    those in the usual fashion, by asking Your Honor for a

15    conference to the extent to which there are disputed matters or

16    things that we're unable to get resolved in advance of Monday.

17          THE COURT:  Okay.

18          MR. LEE:  Or we'll ignore them altogether.

19          Finally, Your Honor, I just want to turn to the

20    Federal Reserve Board foreclosure review process.  Last night,

21    the debtors filed a motion seeking to classify the debtors'

22    obligations to conduct the foreclosure review as a general

23    unsecured claim and to conclude that the automatic stay applied

24    to any enforcement attempts by the government against the

25    debtors.  Your Honor, that motion comes on the heels of the

1    Fed's announcement that it recognized the concerns of borrowers

2    and the public regarding the cost of the foreclosure review and

3    its resulting decision to settle with I believe eleven of the

4    thirteen banks that were subject to the review process.

5              The debtors' position is that the decision of the Fed

6    dramatically changed the landscape, altered the nature of the

7    foreclosure review, and effectively replaced the obligations

8    under the consent order with a monetized settlement.  The

9    debtors did not file the motion lightly, Your Honor.  But as

10   Your Honor will be aware, the cost of the total foreclosure

11   review and associated mediation is now estimated to be

12   somewhere between 415 and 460 million dollars to the debtors'

13   estate.  And it's clearly a significant amount of money.  And

14   obviously, if, in fact, this is an unsecured claim, it will

15   have a material impact on the debtors' estates.

16             And that, Your Honor, is what I had for the plan

17   update.

18             THE COURT:  Okay.  Does anybody -- Mr. Eckstein on

19   behalf of the committee, do you want to address anything as

20   part of the sort of preliminary status report?

21             MR. ECKSTEIN:  Thank you, Your Honor.  Kenneth

22   Eckstein of Kramer Levin on behalf of the creditors' committee.

23             Your Honor, I don't have anything to add with respect

24   to the sale.  I think a tremendous amount of energy went into

25   the sale.  It was extremely complex, really down to the last

1  moment, and we give the company significant credit in getting

2  it over the goal line.  There were very dramatic adjustments

3  that we had to ultimately bear in order to get to closing.  The

4  numbers moved dramatically over the last several weeks after we

5  finished working with the GSEs and with the purchaser in terms

6  of GSE-related adjustments.

7        But fortunately, the issues were all resolved, and the

8  committee worked very hard with the company.  And I think that

9  does warrant recognition as being a very positive process in

10  terms of the first half of this case, let's say.

11        In terms of the mediation, and I think we'll talk

12  about this more extensively on Tuesday, but I think I agree

13  with the comment that Mr. Lee made which is that at this

14  juncture, the parties, I think, seem to have acknowledged that

15  the mediation is stalled.  My impression is that Judge Peck is

16  continuing to be engaged.  And as we have indicated in the

17  pleading that we've filed in connection with exclusivity and

18  the CRO, it's our expectation and hope that Judge Peck will

19  continue to be engaged.  We think that Judge Peck's role has

20  been very constructive.  And I know he's put a lot of energy

21  with all the parties in the case.  And we think that that is a

22  useful activity in the case, and we think the case will

23  continue to benefit from Judge Peck's involvement.

24        However, right now, it is significant in that parties

25  made a significant effort to mediate.  Whenever that happens, a

1   lot of energy goes into trying to get a resolution.  And when

2   that process doesn't lead to a successful result, people have

3   to decide what to do next.  And so what I think Your Honor will

4   hear more about on Tuesday is where we are right now, given the

5   fact that the process with -- between the creditors and AFI and

6   the notion of resolving through a global plan, at least at this

7   point, hasn't borne fruit.  And as Mr. Lee indicated, the

8   committee and the debtor have, through the introduction of the

9   CRO, been able to reach some significant agreements that

10   hopefully will provide the case with a good direction over the

11   near term and hopefully to a conclusion.

12       But the issues are difficult in the case, and I don't

13   think that -- the fact that we have reached some consensus on

14   approach doesn't mean that the issues are resolved.  I think we

15   have an approach that we're all collectively prepared to

16   pursue.

17       With respect to the RMBS issue, we're pleased to hear

18   that the parties -- all the parties involved are willing to

19   abide an adjournment of that hearing.  We recognize that the

20   adjournment of that hearing is not a light event.  I know the

21   Court had carved out a lot of time.  Parties had devoted a lot

22   of time.  There were some parties that were more anxious than

23   others to keep to the hearing date.  And the idea of rolling

24   that hearing for a period of time was really done in

25   conjunction with introducing the CRO and seeing whether or not

RESIDENTIAL CAPITAL, LLC, ET AL.                          19

1  the next sixty days can be focused on trying to resolve claims
2  which was really in contrast to the focus of the last sixty
3  days, which was on whether or not we could come up with a
4  global resolution.  I think we're going to be focused on
5  resolving individual claims.  And obviously the RMBS claims are
6  a very important component of that.
7          And if they're not resolved, we recognize that issues
8  will have to then be tried.  And so to that extent, tomorrow,
9  the Court can decide with the parties who are handling the RMBS
10 issues what the precise schedule is.
11         One point I wanted to just note.  There was a motion
12 that was on for tomorrow involving --
13         THE COURT:  The preclusion motion?
14         MR. ECKSTEIN:  -- the preclusion.  That is not going
15 to go forward, I believe, tomorrow.
16         THE COURT:  I've been working away on that --
17         MR. ECKSTEIN:  Well --
18         THE COURT:  -- Mr. Eckstein.
19         MR. ECKSTEIN:  -- well, I don't -- I guess that's why
20 I raised it.  The preclusion motion was a serious motion.  It
21 was prepared to go forward tomorrow.  The suggestion yesterday,
22 I guess with the debtor, was that it not go forward.  But I
23 respect the fact that that may not be something Your Honor's
24 aware of.
25         THE COURT:  I was not aware of that.

1          MR. ECKSTEIN:  So if parties want it to go forward, we

2   can do so.  And I appreciate the fact that maybe given the

3   lateness of the hour -- this has just come up today, Your

4   Honor.  This is the first this is all being discussed.  And we

5   had raised this and we had suggested that it be brought to the

6   table early if people wanted to adjourn the preclusion motion.

7          THE COURT:  It would have been helpful.  I have spent

8   an enormous number of hours working on it, while there have

9   been a lot of other things going on.  I will agree to have it

10  adjourned, but it is not particularly helpful.  I try to be

11  prepared for every hearing I have.  It was a serious motion.

12  The debtors had made a motion to continue it.  I denied that,

13  other than to move it a couple -- the hearing a couple of days.

14  And so if there was going to be any effort to adjourn the

15  hearing, it would have been nice to have known that.

16         MR. ECKSTEIN:  Your Honor, I -- and I don't want to

17  get out of sorts with the debtor on this.  We're not seeking an

18  adjournment of this.  And I don't want to dislocate the Court.

19  I recognize that.  And if Your Honor feels it's a discrete

20  motion --

21         THE COURT:  No, if --

22         MR. ECKSTEIN:  -- we can go forward tomorrow.

23         THE COURT:  -- the parties -- and it's the committee's

24  motion with the debtor responding to it.  If the committee and

25  the debtor have, between them, agreed that it should be

1  adjourned, I will not hear argument on it tomorrow.  We can

2  talk about the status of the motion tomorrow in the context as

3  it relates to the RMBS trial.

4          MR. ECKSTEIN:  Your Honor, whatever ultimately you

5  would like us to, we will do.  I -- we're trying --

6          THE COURT:  Just so you --

7          MR. ECKSTEIN:  -- we're trying to do this --

8          THE COURT:  -- if -- Mr. Lee do you want to address it

9  briefly, or Mr. Marinuzzi?  You had made the motion to continue

10  it, which I denied, other than to move it for a day, because

11  you said there was an important examiner --

12          MR. LEE:  Your Honor, I think I just want to apologize

13  to the Court.  As Mr. Eckstein said, this discussion literally

14  took place yesterday.  We contacted Your Honor's chambers

15  about -- this morning, about trying to figure out how we could

16  move dates.  And what we probably should have done --

17          THE COURT:  Well, the only thing I heard about was

18  moving the RMBS trial.  I didn't hear anything about moving the

19  motion date.  I continued to work on that, including today.

20          MR. LEE:  And that's why I'm apologizing.  Because we

21  should have been clearer about that --

22          THE COURT:  No one has to come prepared to argue it

23  tomorrow.

24          MR. LEE:  Okay, thank you, Your Honor.

25          THE COURT:  We will discuss it.

1          MR. ECKSTEIN:  Your Honor, the attorneys from my firm

2    who are handling that will be in court tomorrow.

3          THE COURT:  Okay.

4          MR. ECKSTEIN:  And again, I apologize as well, if

5    there's any dislocation.  We were trying to be accommodating to

6    the company in terms of how this entire process gets handled,

7    because it is -- everybody was going on two speeds.  And people

8    were working very hard with respect to the RMBS trial and

9    submissions --

10          THE COURT:  I was in full mode preparation for the

11    RMBS trial.

12          MR. ECKSTEIN:  Your Honor, I appreciate -- and we

13    anticipated that fact, which is why this was not -- we felt

14    that this was not an insignificant event, and we understood

15    that it was important to get the Court's feedback as to

16    scheduling.

17          THE COURT:  Okay.

18          MR. ECKSTEIN:  And so I'll let Mr. Kaufman know, who I

19    think was going to handle this, that it will not be formally

20    argued --

21          THE COURT:  He doesn't have to argue the motion

22    tomorrow, but he does -- we'll discuss it.

23          MR. ECKSTEIN:  -- but it will come up -- it will come

24    up in discussion.  That's fine, Your Honor.

25          Your Honor, in terms of the foreclosure review, I

1   don't know whether there's a separate presentation on the

2   motion that's going to go forward after this, but I can either

3   speak to that now or I can --

4          THE COURT:  Go ahead.

5          MR. ECKSTEIN:  -- speak to that -- in terms of the

6   foreclosure review, I believe what the debtor is going to do is

7   going to present a motion to extend -- essentially have an

8   additional interim order entered right now, through March 21,

9   which is the current hearing date on the motion the debtors

10  filed.

11         While the committee would obviously prefer not to

12  continue to see the estate expend funds on the review, we have,

13  together with our regulatory counsel, spent a great deal of

14  time talking with the debtor and its regulatory counsel about

15  the issues surrounding the foreclosure review and about the

16  developments at the Fed and the fact that the foreclosure

17  review is otherwise being discontinued and is being replaced

18  with fines or payments that are being made by the various

19  institutions in order to fund payments to borrowers.

20         And based upon all the discussions that have taken

21  place to date, the committee was satisfied that the motion the

22  debtor has filed was an appropriate way to try to present the

23  issue for resolution.  We're hopeful that ultimately this

24  motion is something that can get granted, which will relieve

25  the estate of the burden of having to continue to perform and

1    then how the payment of the fine is dealt with.

2              THE COURT:  Let's just wait -- with respect to this,

3    let's just wait for the briefing to be done and --

4              MR. ECKSTEIN:  Correct.  I just --

5              THE COURT:  -- we'll have plenty of time to talk about

6    it.

7              MR. ECKSTEIN:  -- I guess the only point I was --

8              THE COURT:  I did read the motion this morning.

9              MR. ECKSTEIN:  -- I was simply making the point that

10   we are comfortable with the interim order being entered with

11   the date running through March 21.

12             THE COURT:  I have a feeling there will be a lot more

13   for me to read.

14             MR. ECKSTEIN:  There may be more to read.  It's an

15   interesting and complicated issue, like many of the issues in

16   the case.

17             THE COURT:  Thank you, Mr. Eckstein.

18             MR. ECKSTEIN:  Thank you.

19             THE COURT:  Mr. Schrock, I saw you jumping up, like

20   you wanted to --

21             MR. SCHROCK:  Thank you, Your Honor.  Hello, Your

22   Honor.  Ray Schrock, Kirkland & Ellis, on behalf of AFI and

23   Ally Bank.

24             I just wanted to rise quickly to preview; we'll

25   address the -- AFI and Ally Bank, we'll -- obviously we'll

1   intend to weigh in on the next sixty days and the mediator and

2   the other issues that are set for Tuesday.  I didn't want to

3   leave the Court with the misimpression that we were sitting

4   back here agreeing with everything that was said.

5           THE COURT:  Really?  I just --

6           MR. SCHROCK:  Shocking?  I know.  Shocking, Your

7   Honor.  Shocking.

8           And of course, on the FRB motion, we will not get into

9   the argument.  As you might expect, we --

10          THE COURT:  I think you might have a different point

11  of view.

12          MR. SCHROCK:  -- we have a different point of view in

13  the dispute.  And we'll have that on the 21st.

14          THE COURT:  Okay.  Thank you, Mr. Schrock.

15          MR. SCHROCK:  Thank you.

16          THE COURT:  All right, Mr. Lee, should we proceed with

17  the few matters that are still on the -- Mr. Marinuzzi, you're

18  going to --

19          MR. MARINUZZI:  Thank you, Your Honor.  For the

20  record, Lorenzo Marinuzzi, Morrison & Foerster, on behalf of

21  the debtors.

22          Your Honor, leaving -- starting off where Mr. Eckstein

23  left off, the first item on the agenda for the Court's

24  consideration is on page 13 under "Contested Matters".  And

25  it's the continuation of Your Honor's previously entered orders

1  authorizing the debtors to continue to comply with the

2  foreclosure review and compensate PWC, Pepper Hamilton, and

3  Hudson Cook.  So there's no misconception in the minds of the

4  public or the Federal Reserve, the debtors intend to continue

5  with the foreclosure review process pending a determination of

6  the motion that was filed last night.

7          And what these interim orders do is simply continue

8  the relief on a further interim basis, as Mr. Eckstein noted,

9  through March 21st, which is the day that we've noticed for the

10 hearing on the motion that was filed last night.  Other than

11 changing the date and reflecting the fact that there was a

12 second interim order that was entered by the Court, nothing has

13 changed substantively in the orders.

14         They've been shared with and approved by counsel for

15 the committee, the U.S. Trustee, AFI, and Wilmington Trust, the

16 parties that had originally filed papers in connection with the

17 original motion.  And I'm happy to approach with marked orders

18 for the Court.

19         THE COURT:  Okay.  I was -- come on up.

20         When I saw the amended proposed agenda and saw this

21 listed as "the hearing on this matter will go forward," I --

22 and then searched the docket to see whether there'd been any

23 new pleadings in the months since the interim orders and saw

24 none, I thought, oh, my God, am I really going to have to deal

25 with this on a final basis today?  So --

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1        MR. MARINUZZI:  Thankfully, no, Your Honor.

2        THE COURT:  If and when someone is serious about

3  having to go forward on a final basis, I'd like some advance

4  notice -- sufficient advance notice that I could actually be

5  prepared when I take the bench.  Okay?

6        MR. MARINUZZI:  As would we, Your Honor.

7        THE COURT:  Does anybody want to be heard with respect

8  to the proposed third interim orders?

9        All right, they'll be approved.

10        MR. MARINUZZI:  Thank you, Your Honor.  And that

11  brings us to the next item on the agenda, which is found on

12  page 17, the adversary proceedings.  And I'll turn it over to

13  my colleague, Erica Richards.  Thank you, Your Honor.

14        THE COURT:  Thank you.

15        MS. RICHARDS:  Good afternoon, Your Honor.  Erica

16  Richards of Morrison & Foerster, appearing on behalf of the

17  debtors.  As Mr. Marinuzzi indicated, we're now at part 7 of

18  the agenda regarding adversary proceeding matters.

19        Before I get started on the listed pre-trial

20  conferences, I wanted to note for Your Honor that the debtors

21  filed on February 21st a motion seeking to establish mandatory

22  procedures for borrower adversary proceedings.  That's

23  scheduled to be heard on -- sorry, it's scheduled to be heard

24  on the 21st.  It was filed on February 21st.  And in the

25  event --

RESIDENTIAL CAPITAL, LLC, ET AL.                           28

1       THE COURT:  Say that again.  Scheduled to be heard

2   when?

3       MS. RICHARDS:  On March 21st.

4       THE COURT:  Thank you.

5       MS. RICHARDS:  Yes.

6       THE COURT:  I did not read that one yet.

7       MS. RICHARDS:  It's not on for a while, so that's not

8   a problem.

9       In the event it's ordered it will -- excuse me.  In

10  the event the order is entered, those procedures will apply to

11  any adversary proceedings that are currently pending, which

12  would include the matters before Your Honor today --

13      THE COURT:  All right.

14      MS. RICHARDS:  -- if they're not dismissed.

15      With that, Your Honor, I'll turn to the first item

16  which is the pre-trial conference in the adversary proceeding

17  initiated by Princess Dixon.  She's a pro se plaintiff.  And

18  that matter's been assigned to case number 12-02088.

19      I understand that Ms. Dixon was planning to appear

20  telephonically today, via representative.  I don't know if

21  they're on the phone.

22      THE COURT:  Ms. Dixon?  Ms. Dixon, are you on the

23  phone?

24      I don't see her listed on the telephone list.  I'm

25  sure you're aware that the Court entered an order denying her

1  motion to proceed in forma pauperis.  And I think -- I
2  believe -- because there were two similar orders that I
3  entered, and I believe I gave her fourteen days to pay the
4  filing fee.  So we'll see whether she pays the filing fee or
5  not.
6          I review all pauperis applications carefully.  I'm
7  very sensitive to the issue of everyone being able to have an
8  opportunity to be heard in court.  I won't go through the
9  details of the analysis, but Ms. Dixon is currently employed
10 and her income was of a sufficient level that to be consistent
11 with the general practices of my colleagues in the court, I
12 concluded it was appropriate to deny that motion.  And that's
13 the reason that motion was denied.
14         MS. RICHARDS:  Thank you, Your Honor.  If Your Honor
15 would like, I can go ahead and provide an update on the status
16 of this matter.
17         THE COURT:  Go ahead.
18         MS. RICHARDS:  The instant proceeding was commenced on
19 December 18th, 2012.  The debtor, GMAC Mortgage LLC is named as
20 the defendant.  In addition, several nondebtor parties,
21 including MERS, the law firm of McCalla Raymer, and Home
22 America Mortgage are named as defendants.  We don't represent
23 any of those defendants in this matter, and I don't know if
24 they have been served with the summons and complaint.  The
25 debtors have not.  To date, MERS is the only other defendant

1  who's filed any papers or notice of appearance in the case.

2        Your Honor, by way of background, GMAC Mortgage was

3  servicer for Ms. Dixon's loan up to the date of the Ocwen sale

4  closing.  And they were servicer beginning in approximately

5  February 2011.  Ms. Dixon filed for a Chapter 13 twice.  Most

6  recently, she filed a Chapter 13 petition in the Northern

7  District of Georgia in January of 2011.  GMAC mortgage filed a

8  motion for relief from the automatic stay to proceed with a

9  foreclosure.  That motion was granted.  And Ms. Dixon

10  subsequently voluntarily dismissed her Chapter 13 case,

11  following which she commenced this adversary proceeding.

12        By her complaint, Ms. Dixon appears to be seeking to

13  enjoin the foreclosure sale that's currently scheduled for

14  March 5th of this year.  The foreclosure is on hold pending

15  resolution of this adversary proceeding.  She is also

16  apparently seeking determination that GMAC Mortgage lacks

17  standing to foreclose, both because the assignment was

18  fraudulent in some manner, and because the value of the

19  property is less than that of the note, rendering GMAC Mortgage

20  an unsecured creditor without standing.

21        The debtors filed a motion to dismiss on February 7th.

22  That motion will be heard on April 11th, before this Court.

23  And our arguments are set forth in the pleading, but in sum --

24        THE COURT:  I did look at the motion today, as well --

25        MS. RICHARDS:  Okay.

1          THE COURT:  -- in preparation for the conference.

2          MS. RICHARDS:  So you've seen the arguments.  We argue

3  that she failed to state a claim upon which relief can be

4  granted and that she pleads insufficient facts to support a

5  plausible claim.

6          THE COURT:  If she pays the filing fee within the

7  fourteen days, we'll go forward with the hearing on the motion

8  to dismiss.  If not, I anticipate that the complaint will be

9  dismissed.

10          MS. RICHARDS:  Okay.  Your Honor, I will also note

11  that Silverman Acampora has spoken with Ms. Dixon a couple of

12  times, and Mr. Krell is here, if you want to hear from him?

13          THE COURT:  Yes, I would like to hear from him.

14          MS. RICHARDS:  Okay.

15          MR. KRELL:  Good afternoon, Your Honor.  Justin Krell,

16  Silverman Acampora, special counsel to the unsecured creditors'

17  committee.

18          Your Honor, yes, our office did speak with Ms. Dixon

19  on February 15th.  Pursuant to that conversation, Ms. Dixon

20  intimated to us that she really wanted a principal reduction of

21  her loan to the fair market value of her home, wasn't really

22  engaging in the conversation.  It was relatively short.  And I

23  wouldn't say she hung up on us, but it was -- it ended at that

24  point.  So I don't believe that we were able to successfully

25  reach some form of resolution with her.

1            THE COURT:  Thank you very much.

2            MR. KRELL:  And just also for the Court --

3            THE COURT:  Go ahead.

4            MR. KRELL:  -- I spoke with Ms. Dixon yesterday.  She

5    advised me that a representative of hers would appear today via

6    telephonic conference.  I provided her with the documents for

7    CourtCall.  But it seems like no one appeared, Your Honor.

8            THE COURT:  Okay, thank you.

9            MS. RICHARDS:  If Your Honor has no other questions on

10   that --

11           THE COURT:  I don't.

12           MS. RICHARDS:  -- we'll move on to the next matter.

13           The next adversary proceeding on the agenda is the

14   pre-trial conference in the DeMustchine adversary proceeding.

15   That's assigned case number 12-02065.  Mr. DeMustchine is

16   represented by counsel, Mr. Thomas Mason.  And I understand he

17   was also planning to appear telephonically today.

18           THE COURT:  Mr. Mason, are you on the phone?

19           MR. MASON:  Yes, I am, Your Honor.

20           THE COURT:  Thank you.

21           MS. RICHARDS:  Your Honor, we're prepared to provide a

22   status update, unless you want to hear from plaintiff's counsel

23   first.

24           THE COURT:  Well, why don't you provide a status

25   update first, and then I'll give plaintiff's counsel an

1    opportunity to speak.  I did review the -- I read the complaint

2    this morning.

3              MS. RICHARDS:  Okay.  By way of background, the claims

4    in the adversary proceeding stem from a contested foreclosure

5    that was commenced in Massachusetts in 2012.  A default

6    judgment was entered against the debtors in that case in

7    December 2010.  Following entry of that order, GMAC's counsel

8    substituted -- they appointed new counsel, Prince Lobel Tye,

9    whose filed a motion to vacate the default judgment.  That

10   motion was denied by the district court.  They have since filed

11   an appeal in the First Circuit which is currently pending.

12             THE COURT:  I think your client was asleep at the

13   switch in connection with this case.  I did review the

14   pleadings.

15             So let's assume the First Circuit affirms.  What is

16   the -- I mean, I know this complaint asks for a lot of

17   different forms of relief.  I'm not sure -- it's premature as

18   to whether any of it can be granted or not.  But I mean, there

19   was a default entered, and the motion to vacate the default was

20   denied.

21             MS. RICHARDS:  The debtors obviously don't dispute

22   that, Your Honor.  We did file an answer to the complaint.  We

23   think some discovery will be need -- need to be taken on that

24   matter.  But in the first instance, we think the First Circuit

25   should go ahead and rule on the issues before it.

1    THE COURT:  I wouldn't count on prevailing in the
2  First Circuit.  Can't you resolve this case?  I mean, frankly,
3  the complaint had a lot of attachments.  And I reviewed it all.
4  And it's not a pretty picture for ResCap.  It's just not.  So
5  you can play out this string for a while longer, but I don't
6  understand why, frankly.
7          You may have a malpractice claim against some lawyers,
8  but the complaint -- it attached everything and I read it all.
9  Okay?  And it's not pretty.
10    MS. RICHARDS:  Your Honor, the facts and the
11  procedural background of this case are quite complicated.
12  We're still working with the company to get our arms around it.
13  Mr. Mason has indicated that his client is willing to discuss
14  whether there's an out-of-court resolution.  And the debtors
15  are certainly prepared to have those discussions.
16    THE COURT:  I'm not forcing anybody to do anything.
17  But I just -- you know, I mean, I read it today -- I read it
18  all today.  And I'll hear from Mr. Mason.
19    MS. RICHARDS:  Okay.
20    THE COURT:  Okay.  Mr. Mason, do you want to be heard?
21    MR. MASON:  Well, yes, Your Honor.  I think what
22  happened speaks for itself.  There's no question that
23  throughout this whole proceeding from the beginning all the way
24  to the end, to this day, somebody's been asleep at the switch.
25  Whether it's been for getting my client a modification of a

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1   mortgage, responding to complaints, responding to motions for

2   injunctions, throughout the whole time --

3           THE COURT:  Is there a permanent injunction in place

4   now?  I mean, because they defaulted --

5           MR. MASON:  Yes, Your Honor.

6           THE COURT:  Yes.

7           MR. MASON:  Yes, Your Honor.  And --

8           THE COURT:  You know --

9           MR. MASON:  - even after --

10          THE COURT:  -- Mr. Mason, the only question I had when

11  I looked -- and all I've read is the complaint and the

12  answer -- is what relief are you entitled to now?  I mean,

13  you've done pretty well until this point.

14          MR. MASON:  Well, Your Honor, there's no -- basically,

15  the title of the property has no value.  Something is going to

16  have to be done to take care of the title to the property.

17  There's no indication that RAHI or ResCap or whoever owns

18  this -- whoever owns this, has title -- actually has title to

19  this property.  And even if ResCap or RAHI owns the property,

20  it has no marketable value.  So I guess at the heart of if it,

21  I think we really need to determine who owns this property.

22          And then the second part of this too, it's basically

23  when is this going to end?  We have a judgment.  The time frame

24  for appealing the judgment has reasonably come and gone.  After

25  the time frame for vacating the judgment has been exceeded,

RESIDENTIAL CAPITAL, LLC, ET AL.                                36

1    there was an attempt to reopen this again and appeal to the

2    First District.

3            THE COURT:  You filed this in state court.  They

4    removed to the district court.

5            MR. MASON:  Right.

6            THE COURT:  Was this in the land court in Massachu --

7    because you have a special land court don't you?

8            MR. MASON:  Superior court.

9            THE COURT:  Okay.

10           MR. MASON:  Yes, we do have a special land court.  But

11   this was filed in superior court.

12           THE COURT:  And can -- well --

13           MR. MASON:  It was removed by one of the other

14   defendants in the case, Chase Bank, who apparently owned the

15   mortgage at one time.

16           THE COURT:  All right.  How is it that you propose to

17   proceed with the case?

18           MR. MASON:  Well, Your Honor, I think what we're

19   basically looking to do is -- what we feel is the actions taken

20   by the defendants have gone way above and beyond what should be

21   done in a case where there's a default.  It's basically a

22   closed case.  It's an abuse of process.

23           THE COURT:  No, the issue now is what form of relief

24   would you be entitled to if this case were to go forward?  I

25   mean, here's what I want to happen.  I'm not going to enter a

1   case management and scheduling order today.  Mr. Lee or Mr.

2   Marinuzzi, remind me, what's the April date we have?

3           MR. ROSENBAUM:  11th.

4           THE COURT:  Okay.  I want -- Mr. Mason, I want you and

5   the debtors' counsel to meet and confer -- you're in

6   Massachusetts, so do it by telephone -- by next week, I want

7   you to begin a dialog seeking to see whether there's a

8   disposition of this case -- consensual disposition of the case.

9   Otherwise come April 11th -- if you look on the court's Web

10  site under my chambers rules, there is a template for a case

11  management and scheduling order.  The debtors' lawyer can also

12  provide it to you.

13          If by April 11th -- you ought to see -- your time is

14  better devoted between now and April 11th trying to come to a

15  resolution of this case.  And if you can't, then you can appear

16  by telephone on April 11th and tell me what discovery, if any,

17  you want to undertake, and the same for the debtor.  And I'll

18  enter an appropriate case management and scheduling order,

19  following the template that I use, modified if appropriate.

20          But you heard my comments to the debtor.  It's not a

21  pretty picture for the debtor in this case.  And but I just --

22  I'm not making any determinations at all, but when I read your

23  complaint and I saw some of the relief that you're seeking, I

24  thought well that's -- I'm not so sure about that, but we'll

25  have to -- that would even assume that you prevail at the end,

1    what do you get at the end.

2              So I mean, is your -- let me ask you this, Mr. Mason.

3    Is your client still in possession of the property?

4              MR. MASON:  Yes.  Yes, he is, Your Honor.

5              THE COURT:  Okay.  And step number one is to see if

6    you can figure out a way to clear title.

7              MR. MASON:  Right.  Your Honor, we -- I made an

8    effort.  We had a conversation last night with opposing

9    counsel.  And I --

10             THE COURT:  I don't want to get into the details of

11   any settlement discussions, okay?  But --

12             MR. MASON:  Okay.

13             THE COURT:  -- I want to be sure that you are having a

14   dialog.  I mean, when I read it, the first thing that jumped

15   out at me is, you've got to find a solution, if possible, a way

16   to clear title.  Okay?  Because right now, your client, as you

17   say, is still in possession, but what can they do with it.  So

18   that's issue number one.

19             And there may be other forms of relief.  But you

20   recognize, Mr. Mason, that any monetary relief is going to

21   become an unsecured claim in this case.  So see what you can

22   do.  Be prepared, both of you, at the April 11th hearing, if

23   you haven't been able to come up with a resolution, I want to

24   know what schedule you're proposing.  I want to know

25   specifically what discovery either side wants to take.  And

1  we'll do the appropriate time table.  Okay, Mr. Mason?

2          MR. MASON:  Okay, thank you, Your Honor.

3          THE COURT:  Thank you very much for appearing by

4  telephone.

5          Okay, you're excused, Mr. Mason, if you wish.

6          MR. MASON:  Thank you.

7          THE COURT:  Okay.

8          MS. RICHARDS:  Thank you, Your Honor.  I don't think

9  we have anything further today.

10         THE COURT:  Okay.  Anything else anybody wants to

11 raise?

12         All right, we're adjourned.  Thank you very much.

13     (Whereupon these proceedings were concluded at 3:20 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              **I N D E X**

3

4                              RULINGS

5                                            Page      Line

6   Third interim orders to compensate PWC,    27        9

7   Pepper Hamilton, and Hudson Cook, approved.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   PENINA WOLICKI

12   AAERT Certified Electronic Transcriber CET**D 569

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  March 1, 2013

19

20

21

22

23

24

25

12-12020-mg    Doc 3120    Filed 03/01/13    Entered 03/07/13 12:58:19    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

Pg 42 of 51

February 28, 2013

---

**#**

**#607 (1)**
4:22

**A**

**abide (1)**
18:19
**able (6)**
12:10;14:1;18:9;
29:7;31:24;38:23
**above (1)**
36:20
**abuse (1)**
36:22
**ACAMPORA (3)**
6:2;31:11,16
**acceptable (1)**
10:14
**accommodating (1)**
22:5
**acknowledged (1)**
17:14
**acting (1)**
12:8
**actions (1)**
36:19
**activity (1)**
17:22
**actually (2)**
27:4;35:18
**add (1)**
16:23
**addition (1)**
29:20
**additional (1)**
23:8
**address (5)**
7:21;8:11;16:19;
21:8;24:25
**addressed (1)**
12:3
**addresses (1)**
8:9
**Adj (1)**
3:2
**adjourn (3)**
13:11;20:6,14
**adjourned (3)**
20:10;21:1;39:12
**adjournment (4)**
13:15;18:19,20;
20:18
**adjustments (2)**
17:2,6
**administer (2)**
7:17;10:16
**administrative (1)**
9:25
**advance (4)**
15:11,16;27:3,4

**Adversary (12)**
4:9,13;27:12,18,
22;28:11,16;30:11,
15;32:13,14;33:4
**advised (1)**
32:5
**advisors (1)**
11:7
**affect (1)**
14:13
**affected (1)**
14:3
**affirms (1)**
33:15
**AFI (5)**
10:13;18:5;24:22,
25;26:15
**afternoon (3)**
7:5;27:15;31:15
**again (3)**
22:4;28:1;36:1
**against (3)**
15:24;33:6;34:7
**agencies (1)**
9:3
**agenda (6)**
7:7;25:23;26:20;
27:11,18;32:13
**aggregate (1)**
9:22
**agree (3)**
8:24;14:18;17:12;
20:9
**agreed (1)**
20:25
**agreeing (1)**
25:4
**agreement (3)**
8:6,9;12:21
**agreements (1)**
18:9
**ahead (7)**
7:12;12:15;23:4;
29:15,17;32:3;33:25
**aka (1)**
4:10
**allocation (1)**
14:5
**Ally (5)**
6:20,20;9:23;
24:23,25
**altered (1)**
16:6
**altogether (1)**
15:18
**amended (1)**
26:20
**America (1)**
29:22
**amount (3)**
7:25;16:13,24
**analysis (1)**
29:9

**announcement (1)**
16:1
**anticipate (2)**
15:12;31:8
**anticipated (1)**
22:13
**anticipation (1)**
14:22
**anxious (1)**
18:22
**apologize (2)**
21:12;22:4
**apologizing (1)**
21:20
**apparently (2)**
30:16;36:14
**appeal (2)**
33:11;36:1
**appealing (1)**
35:24
**appear (4)**
28:19;32:5,17;
37:15
**appearance (1)**
30:1
**appeared (1)**
32:7
**appearing (2)**
27:16;39:3
**appears (1)**
30:12
**Application (2)**
3:14;4:2
**applications (1)**
29:6
**applied (1)**
15:23
**apply (1)**
28:10
**appoint (1)**
15:2
**appointed (1)**
33:8
**appointment (1)**
7:21
**appreciate (2)**
20:2;22:12
**approach (3)**
18:14,15;26:17
**appropriate (6)**
13:20;23:22;
29:12;37:18,19;39:1
**approval (2)**
7:23;10:10
**approved (2)**
26:14;27:9
**approximately (6)**
9:11,14,17,21;
10:5;30:4
**April (7)**
30:22;37:2,9,13,
14,16;38:22
**argue (3)**

**21:22;22:21;31:2**
**argued (1)**
22:20
**argument (2)**
21:1;25:9
**arguments (2)**
30:23;31:2
**arms (1)**
34:12
**around (1)**
34:12
**asleep (2)**
33:12;34:24
**assertible (1)**
10:20
**assets (10)**
7:16,18;9:8;10:4,
5,8,14,16,18;11:1
**assigned (2)**
28:18;32:15
**assignment (1)**
30:17
**associated (2)**
11:6;16:11
**assume (2)**
33:15;37:25
**astutely (1)**
12:10
**attached (1)**
34:8
**attachments (1)**
34:3
**attempt (1)**
36:1
**attempts (1)**
15:24
**attention (1)**
15:8
**Attorneys (3)**
6:12,20;22:1
**auction (2)**
10:10,14
**Authorization (1)**
4:4
**Authorizing (3)**
3:8,16;26:1
**automatic (2)**
15:23;30:8
**Avenue (1)**
6:21
**aware (6)**
10:11;13:5;16:10;
19:24,25;28:25
**away (3)**
14:2,11;19:16

**B**

**back (2)**
15:1;25:4
**background (3)**
30:2;33:3;34:11
**Bank (4)**

**6:20;24:23,25;**
**36:14**
**Bankruptcy (10)**
2:14,24;3:7,7,15,
16,18;4:3,3;12:7
**banks (1)**
16:4
**bar (1)**
12:7
**Barclays (1)**
9:23
**based (1)**
23:20
**basically (5)**
7:14;35:14,22;
36:19,21
**basis (3)**
26:8,25;27:3
**bear (1)**
17:3
**become (1)**
38:21
**begin (1)**
37:7
**beginning (3)**
13:19;30:4;34:23
**behalf (7)**
3:20;4:6;16:19,22;
24:22;25:20;27:16
**believes (1)**
12:9
**bench (1)**
27:5
**benefit (1)**
17:23
**Berkshire (1)**
9:12
**better (1)**
37:14
**beyond (1)**
36:20
**bids (1)**
10:14
**billion (5)**
9:5,14,17,22;10:5
**blame (1)**
11:18
**Board (5)**
3:11;8:15,18;12:9;
15:20
**bondholders (1)**
10:13
**borne (1)**
18:7
**borrower (2)**
13:3;27:22
**borrowers (2)**
16:1;23:19
**both (4)**
11:25;14:15;
30:17;38:22
**Bowling (1)**
2:15

**break (1)**
9:7
**breakdown (1)**
11:5
**brief (2)**
7:7;8:20
**briefing (1)**
24:3
**briefly (5)**
7:21;8:5;11:12;
12:1;21:9
**brings (1)**
27:11
**brought (2)**
10:2;20:5
**Bruce (1)**
6:12
**burden (1)**
23:25
**Burlington (1)**
6:14

**C**

**calendar (3)**
13:13,19,23
**called (2)**
15:5,6
**capable (1)**
12:14
**Capital (4)**
3:20;4:7;7:3;9:8
**care (1)**
35:16
**carefully (1)**
29:6
**carry (1)**
11:5
**carved (1)**
18:21
**case (36)**
7:3,11;8:12,22,25;
11:23;14:5;15:5;
17:10,21,22,22;
18:10,12;24:16;
28:18;30:1,10;
32:15;33:6,13;34:2,
11;36:14,17,21,22,
24;37:1,8,8,10,15,18,
21;38:21
**cases (2)**
7:18;12:10
**cast (1)**
11:17

**cause (1)**
11:18
**CC (3)**
3:6,14;4:2
**certain (2)**
10:7;11:14
**certainly (1)**
34:15
**chambers (3)**
15:11;21:14;37:10
**changed (2)**
16:6;26:13
**changing (1)**
26:11
**Chapter (3)**
30:5,6,10
**Chase (1)**
36:14
**chief (2)**
7:22;12:2
**choice (1)**
12:12
**Circuit (4)**
34:11,15,24;34:2
**Citi (1)**
9:24
**claim (6)**
15:23;16:14;31:3,
5;34:7;38:21
**claimants (2)**
13:4,4
**claims (10)**
10:1,1,7,19;13:2,8;
19:1,5,5;33:3
**classify (1)**
15:21
**clear (3)**
12:6;38:6,16
**clearer (1)**
21:21
**clearly (2)**
10:20;16:13
**client (5)**
33:12;34:13,25;
38:3,16
**close (1)**
10:3
**closed (4)**
9:10,13,16;36:22
**closely (1)**
14:20
**closing (2)**
17:3;30:4
**closings (3)**
7:15;9:1,19
**Code (3)**
3:7,15;4:3
**colleague (1)**
27:13
**colleagues (1)**
29:11
**collectively (1)**
18:15

**comfortable (1)**
24:10
**commenced (3)**
29:18;30:11;33:5
**comment (1)**
17:13
**comments (1)**
37:20
**Committee (16)**
6:3;8:7;10:12;
11:2,8;12:17;13:10;
16:19,22;17:8;18:8;
20:24;23:11,21;
26:15;31:17
**committee's (3)**
8:8;12:18;20:23
**company (5)**
11:8;17:1,8;22:6;
34:12
**Compensate (2)**
3:8;26:2
**complaint (10)**
29:24;30:12;31:8;
33:1,16,22;34:3,8;
35:11;37:23
**complaints (1)**
35:1
**completed (1)**
13:24
**complex (2)**
12:24;16:25
**Compliance (1)**
3:10
**complicated (2)**
24:15;34:11
**comply (1)**
26:1
**component (1)**
19:6
**concerned (1)**
11:24
**concerns (1)**
16:1
**conclude (1)**
15:23
**concluded (2)**
29:12;39:13
**conclusion (2)**
7:18;18:11
**conduct (2)**
13:24;15:22
**conducted (1)**
11:11
**confer (1)**
37:5
**Conference (8)**
4:11,15;13:17;
15:15;28:16;31:1;
32:6,14
**conferences (2)**
14:5;27:20
**Congress (1)**
14:10

**conjunction (1)**
18:25
**connection (9)**
8:8,17;12:19;13:1,
17;14:24;17:17;
26:16;33:13
**consensual (4)**
8:13;12:22,25;
37:8
**consensus (1)**
18:13
**Consent (3)**
3:11;13:13;16:8
**considerable (1)**
7:25
**consideration (1)**
25:24
**consistent (1)**
29:10
**constituencies (1)**
8:1
**constructive (1)**
17:20
**consultation (1)**
10:11
**contacted (1)**
21:14
**contacting (1)**
15:11
**Contested (2)**
25:24;33:4
**context (1)**
21:2
**continuation (1)**
25:25
**continue (14)**
8:12;10:15,22,24;
11:25;17:19,23;
20:12;21:9;23:12,
25;26:1,4,7
**continued (1)**
21:19
**continues (1)**
11:22
**continuing (1)**
17:16
**contrast (1)**
19:2
**conversation (3)**
31:19,22;38:8
**Cook (2)**
4:5;26:3
**Corporation (1)**
4:10
**cost (2)**
16:2,10
**costs (1)**
11:6
**Counsel (14)**
3:18;4:5;6:3;
23:13,14;26:14;
31:16;32:16,22,25;
33:7,8;37:5;38:9

**count (1)**
34:1
**couple (1)**
20:13,13;31:11
**course (1)**
25:8
**Court (107)**
2:14;7:2,12,14,24;
8:6,15,18;10:23;
13:5,22;14:3,13,22;
15:8,17;16:18;
18:21;19:9,13,16,18,
25;20:7,18,21,23;
21:6,8,13,17,22,25;
22:2,3,10,17,21;
23:4;24:2,5,8,12,17,
19;25:3,5,10,14,16;
26:12,18,19;27:2,7,
14;28:1,4,6,13,22,
25;29:8,11,17;30:22,
24;31:1,6,13;32:1,2,
3,8,11,18,20,24;
33:10,12;34:1,16,20;
35:3,6,8,10;36:3,3,4,
6,6,7,8,9,10,11,12,
16,23;37:4;38:5,10,
13;39:3,7,10
**CourtCall (1)**
32:7
**Court's (5)**
13:12,18;22:15;
25:23;37:9
**cover (2)**
7:13;8:20
**credit (1)**
17:1
**creditor (2)**
8:1;30:20
**creditors (1)**
18:5
**creditors' (5)**
8:7;10:12;12:17;
16:22;31:16
**CRO (3)**
17:18;18:9,25
**Cure (2)**
3:2;10:1
**current (2)**
7:20;23:9
**currently (5)**
10:25;28:11;29:9;
30:13;33:11

**D**

**date (9)**
18:23;21:19;23:9,
21;24:11;26:11;
29:25;30:3;37:2
**dates (2)**
14:1;21:16
**day (3)**
21:10;26:9;34:24

**days (12)**
8:10,22;11:22;
12:23;13:12;14:15;
19:1,3;20:13;25:1;
29:3;31:7
**day-to-day (1)**
13:24
**deal (3)**
15:13;23:13;26:24
**dealt (1)**
24:1
**debtor (13)**
7:7;18:8;19:22;
20:17,24,25;23:6,14,
22;29:19;37:17,20,
21
**Debtors (33)**
3:6,8,10,17,19;4:5;
7:6,22,25;9:22;10:3,
11,21;11:17,24;12:3,
5;13:10;15:21,25;
16:9;20:12;23:9;
25:21;26:1,4;27:17,
20;29:25;30:21;
33:6,21;34:14
**Debtors' (19)**
3:14;4:2;7:17,21;
8:8,9;9:7,12,15;10:9;
11:1,7;12:12;15:21;
16:5,12,15;37:5,11
**December (2)**
29:19;33:7
**decide (2)**
18:3;19:9
**decision (2)**
16:3,5
**default (5)**
33:5,9,19,19;36:21
**defaulted (1)**
35:4
**defendant (2)**
29:20,25
**defendants (2)**
29:22,23;36:14,20
**definitely (1)**
14:20
**DeMustchine (4)**
4:13;6:12;32:14,
15
**denied (5)**
20:12;21:10;
29:13;33:10,20
**deny (1)**
29:12
**denying (1)**
28:25
**derived (1)**
9:5
**description (1)**
11:3
**detailed (1)**
11:3
**details (2)**

29:9;38:10
**determination (2)**
26:5;30:16
**determinations (1)**
37:22
**determine (1)**
35:21
**determined (1)**
10:13
**developments (1)**
23:16
**devoted (2)**
18:21;37:14
**dialog (2)**
37:7;38:14
**different (4)**
9:3;25:10,12;
33:17
**difficult (2)**
12:14;18:12
**DIP (2)**
9:23,23
**direction (1)**
18:10
**discontinued (1)**
23:17
**discovery (4)**
15:12;33:23;
37:16;38:25
**discrete (1)**
20:19
**discuss (3)**
21:25;22:22;34:13
**discussed (1)**
20:4
**discussion (2)**
21:13;22:24
**discussions (4)**
12:21;23:20;
34:15;38:11
**dislocate (1)**
20:18
**dislocation (1)**
22:5
**dismiss (2)**
30:21;31:8
**dismissed (3)**
28:14;30:10;31:9
**disposition (2)**
37:8,8
**dispute (2)**
25:13;33:21
**disputed (1)**
15:15
**District (4)**
30:7;33:10;36:2,4
**Dixon (13)**
4:9;28:17,19,22,
22;29:9;30:5,9,12;
31:11,18,19;32:4
**Dixon's (1)**
30:3
**Doc (2)**

3:14;4:2
**Doc# (1)**
3:6
**docket (1)**
26:22
**Document (1)**
3:2
**documents (1)**
32:6
**dollars (8)**
9:6,11,14,17,22;
10:2,5;16:12
**done (7)**
9:19;18:24;21:16;
24:3;35:13,16;36:21
**down (6)**
9:7,23,25;11:2;
14:17;16:25
**dramatic (1)**
17:2
**dramatically (2)**
16:6;17:4
**drive (2)**
12:10,21
**during (1)**
12:23

**E**

**EAF (1)**
9:24
**earlier (2)**
13:25;14:4
**early (1)**
20:6
**earnest (1)**
12:22
**Eckstein (27)**
16:18,21,22;19:14,
17,18,19;20:1,16,22;
21:4,7,13;22:1,4,12,
18,23;23:5;24:4,7,9,
14,17,18;25:22;26:8
**effectively (2)**
11:1;16:7
**efficiently (1)**
12:10
**effort (3)**
17:25;20:14;38:8
**either (2)**
23:2;38:25
**eleven (1)**
16:3
**ELLIS (2)**
6:19;24:22
**else (2)**
15:7;39:10
**embodied (1)**
12:18
**Employ (2)**
3:17;4:4
**employed (1)**
29:9

**employees (2)**
11:3,4
**end (7)**
9:3;13:19,25;
34:24;35:23;37:25;
38:1
**ended (1)**
31:23
**energy (3)**
16:24;17:20;18:1
**enforcement (1)**
15:24
**engaged (2)**
17:16,19
**engaging (1)**
31:22
**England (1)**
6:13
**enjoin (1)**
30:13
**enormous (1)**
20:8
**enter (2)**
36:25;37:18
**entered (9)**
23:8;24:10;25:25;
26:12;28:10,25;
29:3;33:6,19
**entire (1)**
22:6
**entitled (2)**
35:12;36:24
**Entry (2)**
3:6;33:7
**Erica (2)**
27:13,15
**eScribers (1)**
4:21
**ESQ (3)**
6:8,16,24
**essentially (1)**
23:7
**establish (1)**
27:21
**Estate (13)**
4:14;7:17;9:5,17;
10:6,15;11:1,3,8;
12:9;16:13;23:12,25
**estates (5)**
9:11,14,22;10:2;
16:15
**estimated (1)**
16:11
**even (3)**
35:9,19;37:25
**event (5)**
18:20;22:14;
27:25;28:9,10
**everybody (6)**
8:15,24;11:10;
12:6,8;22:7
**everyone (1)**
29:7

**examiner (1)**
21:11
**exceeded (2)**
9:4;35:25
**exclusivity (4)**
8:9;12:20;15:2;
17:17
**excuse (1)**
28:9
**excused (1)**
39:5
**Executive (1)**
6:13
**expect (1)**
25:9
**expectation (1)**
17:18
**expectations (1)**
9:4
**expend (1)**
23:12
**explore (1)**
13:3
**extend (2)**
15:2;23:7
**extensively (1)**
17:12
**extent (2)**
15:15;19:8
**extremely (1)**
16:25

**F**

**fabric (1)**
8:21
**facilities (1)**
9:25
**facility (4)**
9:23,24,24,24
**fact (8)**
16:14;18:5,13;
19:23;20:2;22:13;
23:16;26:11
**facts (2)**
31:4;34:10
**failed (1)**
31:3
**fair (1)**
31:21
**Fannie (2)**
9:8,24
**far (1)**
11:23
**fashion (1)**
15:14
**February (8)**
2:18;9:13,16;
27:21,24;30:5,21;
31:19
**Fed (2)**
16:5;23:16
**Federal (5)**

3:10;8:15,18;
15:20;26:4
**federally (1)**
  10:7
**Fed's (1)**
  16:1
**fee (3)**
  29:4,4;31:6
**feedback (1)**
  22:15
**feel (1)**
  36:19
**feeling (1)**
  24:12
**feels (1)**
  20:19
**felt (1)**
  22:13
**few (2)**
  14:22;25:17
**FHA (3)**
  10:9,14,24
**fiduciary (1)**
  12:9
**figure (2)**
  21:15;38:6
**file (3)**
  15:4;16:9;33:22
**filed (26)**
  3:19;4:6;8:3,7,16;
  11:14;14:23;15:6,
  21;17:17;23:10,22;
  26:6,10,16;27:21,24;
  30:1,5,6,7,21;33:9,
  10;36:3,11
**filing (3)**
  29:4,4;31:6
**Final (5)**
  3:6,14;4:2;26:25;
  27:3
**finally (3)**
  8:14;9:15;15:19
**Financial (1)**
  6:20
**find (1)**
  38:15
**fine (2)**
  22:24;24:1
**fines (1)**
  23:18
**finished (1)**
  17:5
**firm (2)**
  22:1;29:21
**first (15)**
  7:7,14;17:10;20:4;
  25:23;28:15;32:23,
  25;33:11,15,24,24;
  34:2;36:2;38:14
**five (1)**
  7:14
**focus (3)**
  8:11;12:23;19:2

**focused (2)**
  19:1,4
**Foerster (3)**
  7:6;25:20;27:16
**Following (4)**
  10:3;30:11;33:7;
  37:19
**forcing (1)**
  34:16
**foreclose (1)**
  30:17
**Foreclosure (18)**
  3:9,18;8:16;15:20,
  22;16:2,7,10;22:25;
  23:6,15,16;26:2,5;
  30:9,13,14;33:4
**form (2)**
  31:25;36:23
**forma (1)**
  29:1
**formally (1)**
  22:19
**forms (2)**
  33:17;38:19
**forth (1)**
  30:23
**fortunately (1)**
  17:7
**forty-five (1)**
  13:12
**forward (11)**
  8:13;19:15,21,22;
  20:1,22;23:2;26:21;
  27:3;31:7;36:24
**found (1)**
  27:11
**four (3)**
  8:4;9:5,21
**fourteen (2)**
  29:3;31:7
**Fourth (1)**
  8:5
**frame (2)**
  35:23,25
**frankly (2)**
  34:2,6
**fraudulent (1)**
  30:18
**FRB (1)**
  25:8
**fruit (1)**
  18:7
**fulfilling (1)**
  12:14
**full (1)**
  22:10
**fullness (1)**
  10:16
**functions (1)**
  9:9
**fund (1)**
  23:19
**funds (1)**

23:12
**further (3)**
  14:24;26:8;39:9
**Furtherance (1)**
  3:10

**G**

**GA (1)**
  3:12
**Gary (3)**
  3:19;4:6;7:5
**gave (1)**
  29:3
**general (2)**
  15:22;29:11
**Georgia (1)**
  30:7
**gets (1)**
  22:6
**given (3)**
  15:13;18:4;20:2
**GLENN (1)**
  2:23
**global (2)**
  18:6;19:4
**GMAC (7)**
  4:9,10;29:19;30:2,
  7,16,19
**GMAC's (1)**
  33:7
**goal (1)**
  17:2
**God (1)**
  26:24
**goes (1)**
  18:1
**Good (4)**
  7:5;18:10;27:15;
  31:15
**government (1)**
  15:24
**governmental (1)**
  9:3
**granted (5)**
  10:9;23:24;30:9;
  31:4;33:18
**Granting (1)**
  3:12
**great (1)**
  23:13
**Green (1)**
  2:15
**group (1)**
  13:14
**GSE-related (1)**
  17:6
**GSEs (1)**
  17:5
**guess (4)**
  19:19,22;24:7;
  35:20
**guidance (1)**

8:2

**H**

**half (1)**
  17:10
**Hamilton (2)**
  3:17;26:2
**handle (1)**
  22:19
**handled (1)**
  22:6
**handling (2)**
  19:9;22:2
**happen (2)**
  8:22;36:25
**happened (1)**
  34:22
**happens (2)**
  17:25
**happy (2)**
  11:20;26:17
**hard (2)**
  17:8;22:8
**Hathaway (1)**
  9:12
**hear (9)**
  7:11;18:4,17;21:1,
  18;31:12,13;32:22;
  34:18
**heard (11)**
  11:13;15:3;21:17;
  27:7,23,23;28:1;
  29:8;30:22;34:20;
  37:20
**Hearing (17)**
  3:2,6,14;4:2;
  11:17;18:19,20,23,
  24;20:11,13,15;23:9;
  26:10,21;31:7;38:22
**heart (1)**
  35:20
**heartbeat (1)**
  11:21
**heavily (1)**
  9:2
**heels (1)**
  15:25
**Hello (1)**
  24:21
**helpful (3)**
  11:25;20:7,10
**here's (1)**
  36:25
**hiccup (1)**
  11:16
**highly (1)**
  9:2
**hold (1)**
  30:14
**Holdings (1)**
  4:14
**Home (2)**

29:21;31:21
**HON (1)**
  2:23
**Honor (76)**
  7:5,6,13,20,24;8:2,
  5,14,19,23,25;9:4,
  21;10:9,11,19;11:12,
  13;12:1,3,15,23;
  15:1,14,19,25;16:9,
  10,16,21,23;18:3;
  20:4,16,19;21:4,12,
  24;22:1,12,24,25;
  24:21,22;25:7,19,22;
  27:1,6,10,13,15,20;
  28:12,15;29:14,14;
  30:2;31:10,15,18;
  32:7,9,19,21;33:22;
  34:10,21;35:5,7,14;
  36:18;38:4,7;39:2,8
**Honor's (4)**
  7:23;19:23;21:14;
  25:25
**hope (2)**
  12:21;17:18
**hopeful (1)**
  23:23
**hopefully (3)**
  11:25;18:10,11
**hour (1)**
  20:3
**hours (1)**
  20:8
**House (1)**
  14:10
**Hudson (2)**
  4:5;26:3
**hundred (1)**
  10:2
**hung (1)**
  31:23

**I**

**idea (1)**
  18:23
**ignore (1)**
  15:18
**II (1)**
  3:11
**impact (1)**
  16:15
**important (5)**
  8:21;11:16;19:6;
  21:11;22:15
**impression (1)**
  17:15
**Inc (1)**
  6:20
**include (1)**
  28:12
**included (1)**
  10:8
**includes (2)**

10:6;12:25
**including (3)**
13:14;21:19;29:21
**income (1)**
29:10
**independent (1)**
12:9
**indicated (6)**
14:6;15:3;17:16;
18:7;27:17;34:13
**indication (2)**
12:13;35:17
**individual (2)**
8:1;19:5
**influence (1)**
8:1
**initiated (1)**
28:17
**injunction (1)**
35:3
**injunctions (1)**
35:2
**insignificant (1)**
22:14
**instance (1)**
33:24
**instant (1)**
29:18
**institutional (1)**
10:20
**institutions (1)**
23:19
**insufficient (1)**
31:4
**insurance (1)**
10:7
**insured (2)**
10:7,9
**integral (1)**
12:16
**intend (2)**
25:1;26:4
**intercreditor (2)**
8:11;12:24;13:10
**interesting (1)**
24:15
**interests (1)**
13:2
**interim (7)**
23:8;24:10;26:7,8,
12,23;27:8
**intimated (1)**
31:20
**into (5)**
12:4;16:24;18:1;
25:8;38:10
**introducing (1)**
18:25
**introduction (1)**
18:8
**Investment (1)**
9:9
**involved (2)**

13:13;18:18
**involvement (1)**
17:23
**involving (1)**
19:12
**issue (6)**
18:17;23:23;
24:15;29:7;36:23;
38:18
**Issues (18)**
3:18;8:12;12:17,
24;13:5,10;14:13,16,
21;17:7;18:12,14;
19:7;10;23:15;
24:15;25:2;33:25
**item (4)**
7:7;25:23;27:11;
28:15

## J

**January (3)**
9:10,19;30:7
**Jericho (2)**
6:4,6
**job (1)**
12:15
**JUDGE (6)**
2:24;11:21;17:15,
18,19,23
**judgment (5)**
33:6,9;35:23,24,25
**jumped (1)**
38:14
**jumping (1)**
24:19
**juncture (1)**
17:14
**junior (3)**
10:12;13:6,7
**JUSTIN (2)**
6:8;31:15

## K

**Kaufman (1)**
22:18
**keep (1)**
18:23
**Kenneth (1)**
16:21
**key (1)**
11:23
**KIRKLAND (2)**
6:19;24:22
**knowledge (1)**
10:21
**known (1)**
20:15
**knows (1)**
8:25
**Kramer (1)**
16:22

**KRELL (6)**
6:8;31:12,15,15;
32:2,4
**Kruger (7)**
7:21,23;12:2,6,13,
16;15:2
**Kruger's (3)**
7:24;8:10;12:19

## L

**lacks (1)**
30:16
**land (3)**
36:6,7,10
**landscape (1)**
16:6
**last (11)**
7:9;8:4,16;11:22;
15:20;16:25;17:4;
19:2;26:6,10;38:8
**lasts (1)**
14:8
**lateness (1)**
20:3
**LAW (2)**
6:11;29:21
**lawyer (1)**
37:11
**lawyers (1)**
34:7
**lead (1)**
18:2
**leading (1)**
14:19
**least (2)**
11:23;18:6
**leave (1)**
25:3
**leaving (1)**
25:22
**Lee (21)**
3:19;4:6;7:4,5,6,
13;8:19;10:25;
14:12,14;15:1,10,18;
17:13;18:7;21:8,12,
20,24;25:16;37:1
**left (1)**
25:23
**legacy (2)**
7:15;9:12
**less (2)**
12:14;30:19
**level (1)**
29:10
**Levin (1)**
16:22
**Lexington (1)**
6:21
**lies (1)**
12:15
**light (1)**
18:20

**lightly (1)**
16:9
**likely (2)**
13:25;14:7
**line (1)**
17:2
**list (1)**
28:24
**listed (3)**
26:21;27:19;28:24
**literally (1)**
21:13
**little (1)**
14:18
**LLC (7)**
3:20;4:7,10,14,21;
7:3;29:19
**LLP (5)**
3:9,17;4:5;6:2,19
**loan (2)**
30:3;31:21
**loans (5)**
10:6,8,9,24,24
**Lobel (1)**
33:8
**Local (2)**
3:16;4:4
**long (3)**
14:2,7,11
**longer (1)**
34:5
**look (2)**
30:24;37:9
**looked (2)**
13:22;35:11
**looking (1)**
36:19
**looks (1)**
13:19
**Lorenzo (1)**
25:20
**lot (10)**
7:9;8:19;17:20;
18:1,21,21;20:9;
24:12;33:16;34:3

## M

**MA (1)**
6:14
**Mae (1)**
9:8
**makes (1)**
13:24
**making (2)**
24:9;37:22
**malpractice (1)**
34:7
**manage (2)**
10:4,16
**Management (7)**
9:9;10:21;11:8;
15:5;37:1,11,18

**managing (1)**
11:1
**mandatory (1)**
27:21
**manner (1)**
30:18
**many (1)**
24:15
**March (5)**
23:8;24:11;26:9;
28:3;30:14
**Marinuzzi (9)**
21:9;25:17,19,20;
27:1,6,10,17;37:2
**marked (1)**
26:17
**market (1)**
31:21
**marketable (1)**
35:20
**markets (1)**
9:9
**MARTIN (1)**
2:23
**MASON (29)**
6:11,16;32:16,18,
19;34:13,18,20,21;
35:5,7,9,10,14;36:5,
8,10,13,18;37:4;
38:2,4,7,12,20;39:1,
2,5,6
**Massachu (1)**
36:6
**Massachusetts (2)**
33:5;37:6
**material (2)**
10:4;16:15
**matter (5)**
26:21;29:16,23;
32:12;33:24
**matters (5)**
15:15;25:17,24;
27:18;28:12
**matter's (1)**
28:18
**maximize (1)**
11:5
**maximizing (1)**
10:18
**May (19)**
3:19;4:6;7:8;8:23;
11:13;12:1;13:19,19,
25,25;14:1,3,10,13;
15:12;19:23;24:14;
34:7;38:19
**maybe (1)**
20:2
**McCalla (1)**
29:21
**mean (10)**
18:14;33:16,18;
34:2,17;35:4,12;
36:25;38:2,14

**mediate (1)**
  17:25
**mediation (8)**
  7:20;11:13,15,16,
  21;16:11;17:11,15
**mediator (1)**
  25:1
**meet (2)**
  11:23;37:5
**meeting (2)**
  7:25;11:9
**meetings (1)**
  11:6
**mentioned (1)**
  12:15
**merits (1)**
  12:4
**MERS (2)**
  29:21,25
**met (1)**
  11:21
**might (4)**
  11:19;15:8;25:9,
  10
**milestone (1)**
  8:25
**million (3)**
  9:11;10:2;16:12
**minds (1)**
  26:3
**misconception (1)**
  26:3
**misimpression (1)**
  25:3
**mode (1)**
  22:10
**modification (1)**
  34:25
**modified (1)**
  37:19
**moment (1)**
  17:1
**Monday (2)**
  15:4,16
**monetary (1)**
  38:20
**monetize (1)**
  10:5
**monetized (1)**
  16:8
**Monetizing (1)**
  10:18
**money (1)**
  16:13
**monoline (1)**
  13:1
**months (1)**
  26:23
**more (6)**
  13:24;17:12;18:4,
  22;24:12,14
**morning (3)**
  21:15;24:8;33:2

**Morrison (3)**
  7:6;25:20;27:16
**Mortgage (10)**
  4:9,10;29:19,22;
  30:2,7,16,19;35:1;
  36:15
**Most (1)**
  30:5
**Motion (44)**
  3:6;8:9,16;12:3,
  20;15:21,25;16:9;
  19:11,13,20,20;20:6,
  11,12,20,24;21:2,9,
  19;22:21;23:2,7,9,
  21,24;24:8;25:8;
  26:6,10,17;27:21;
  29:1,12,13;30:8,9,
  21,22,24;31:7;33:9,
  10,19
**motions (2)**
  15:2;35:1
**move (5)**
  8:13;20:13;21:10,
  16;32:12
**moved (1)**
  17:4
**moving (2)**
  21:18,18
**MSR (1)**
  9:24
**much (4)**
  8:11;32:1;39:3,12
**multiple (1)**
  9:1

## N

**named (2)**
  29:19,22
**narrow (1)**
  14:15
**nature (1)**
  16:6
**near (1)**
  18:11
**necessary (1)**
  13:11
**necessitated (1)**
  9:2
**need (4)**
  13:6;33:23,23;
  35:21
**negotiated (1)**
  9:2
**net (1)**
  9:5
**New (7)**
  2:16,16;4:23;6:13,
  22;26:23;33:8
**next (13)**
  8:10,22;11:9;12:3,
  23;14:15;18:3;19:1;
  25:1;27:11;32:12,

  13;37:6
**nice (1)**
  20:15
**night (5)**
  8:16;15:20;26:6,
  10;38:8
**ninety (1)**
  8:22
**nobody (1)**
  14:9
**nondebtor (1)**
  29:20
**none (1)**
  26:24
**Northern (1)**
  30:6
**note (4)**
  19:11;27:20;
  30:19;31:10
**noted (1)**
  26:8
**noteholders (1)**
  13:6
**noteholders' (1)**
  13:8
**notice (3)**
  27:4,4;30:1
**noticed (1)**
  26:9
**notion (1)**
  18:6
**number (7)**
  7:3;12:16;20:8;
  28:18;32:15;38:5,18
**numbers (1)**
  17:4
**numerous (1)**
  13:9
**Nunc (2)**
  3:19;4:5
**NY (3)**
  4:23;6:6,22

## O

**objection (1)**
  13:5
**Objections (3)**
  3:2;12:12;14:16
**objective (1)**
  12:22
**Obligations (3)**
  3:10;15:22;16:7
**obviously (7)**
  13:4,18;16:14;
  19:5;23:11;24:25;
  33:21
**Ocwen (2)**
  9:15;30:3
**off (2)**
  25:22,23
**office (1)**
  31:18

**officer (2)**
  7:22;12:2
**OFFICES (1)**
  6:11
**One (14)**
  2:15;9:19;12:7;
  13:4,17;14:14;
  19:11;21:22;28:6;
  32:7;36:13,15;38:5,
  18
**only (4)**
  21:17;24:7;29:25;
  35:10
**operations (1)**
  14:2
**operations@escribersnet (1)**
  4:25
**opportunity (2)**
  29:8;33:1
**opposing (1)**
  38:8
**Order (19)**
  3:7,11,12,15;11:5;
  13:9;15:5;16:8;17:3;
  23:8,19;24:10;
  26:12;28:10,25;
  33:7;37:1,11,18
**ordered (1)**
  28:9
**orders (7)**
  25:25;26:7,13,17,
  23;27:8;29:2
**original (1)**
  26:17
**originally (1)**
  26:16
**origination (1)**
  9:8
**others (1)**
  18:23
**otherwise (2)**
  23:17;37:9
**ought (1)**
  37:13
**out (8)**
  11:5;14:9;18:21;
  20:17;21:15;34:5;
  38:6,15
**out-of-court (1)**
  34:14
**over (8)**
  8:3,10;9:5;14:15;
  17:2,4;18:10;27:12
**overview (2)**
  7:16,19
**owned (2)**
  10:6;36:14
**owns (4)**
  35:17,18,19,21

## P

**page (2)**

**25:24;27:12**
**paid (1)**
  9:23
**papers (4)**
  11:14;15:4;26:16;
  30:1
**Park (1)**
  6:13
**part (4)**
  8:21;16:20;27:17;
  35:22
**particularly (1)**
  20:10
**parties (22)**
  7:15,16;11:14,23;
  12:13;13:13,16;
  14:18;15:3,10;17:14,
  21,24;18:18,18,21,
  22;19:9;20:1,23;
  26:16;29:20
**parties-in-interest (1)**
  7:10
**Patrick (1)**
  13:14
**pauperis (2)**
  29:1,6
**pay (2)**
  15:8;29:3
**paying (1)**
  9:25
**payment (1)**
  24:1
**payments (2)**
  23:18,19
**pays (2)**
  29:4;31:6
**Peck (3)**
  11:21;17:15,18
**Peck's (2)**
  17:19,23
**pending (4)**
  26:5;28:11;30:14;
  33:11
**Penina (1)**
  4:20
**people (4)**
  14:20;18:2;20:6;
  22:7
**Pepper (2)**
  3:17;26:2
**perform (1)**
  23:25
**period (2)**
  13:12;18:24
**permanent (1)**
  35:3
**pervade (1)**
  8:12
**petition (1)**
  30:6
**phone (3)**
  28:21,23;32:18
**picture (2)**

34:4;37:21
**place (3)**
 21:14;23:21;35:3
**Plaintiff (2)**
 6:12;28:17
**plaintiff's (2)**
 32:22,25
**Plan (12)**
 3:4;7:17;8:10,13;
 11:8,10;12:22,25;
 14:17;15:3;16:16;
 18:6
**planning (2)**
 28:19;32:17
**platform (2)**
 7:15;9:15
**plausible (1)**
 31:5
**play (1)**
 34:5
**plays (1)**
 14:9
**pleading (2)**
 17:17;30:23
**pleadings (2)**
 26:23;33:14
**pleads (1)**
 31:4
**Please (2)**
 7:2,12
**pleased (1)**
 18:17
**plenty (1)**
 24:5
**PM (4)**
 2:19;14:7,8;39:13
**point (9)**
 12:5;18:7;19:11;
 24:7,9;25:10,12;
 31:24;35:13
**portfolio (2)**
 7:16;9:12
**position (3)**
 11:15,18;16:5
**positive (1)**
 17:9
**possession (2)**
 38:3,17
**possible (3)**
 13:3;14:1;38:15
**practices (1)**
 29:11
**precise (1)**
 19:10
**precisely (1)**
 7:11
**preclusion (4)**
 19:13,14,20;20:6
**prefer (1)**
 23:11
**preference (1)**
 13:23
**preliminary (1)**

16:20
**premature (1)**
 33:17
**preparation (2)**
 22:10;31:1
**prepared (8)**
 18:15;19:21;
 20:11;21:22;27:5;
 32:21;34:15;38:22
**present (2)**
 23:7,22
**presentation (1)**
 23:1
**Pretrial (2)**
 4:11,15
**pre-trial (4)**
 14:4;27:19;28:16;
 32:14
**pretty (4)**
 34:4,9;35:13;
 37:21
**prevail (1)**
 37:25
**prevailing (1)**
 34:1
**preview (1)**
 24:24
**previously (1)**
 25:25
**PricewaterhouseCoopers (1)**
 3:9
**Prince (1)**
 33:8
**Princess (1)**
 28:17
**principal (1)**
 31:20
**priority (2)**
 10:1;13:7
**Pro (3)**
 3:19;4:5;28:17
**probably (2)**
 14:6;21:16
**problem (1)**
 28:8
**procedural (1)**
 34:11
**procedures (2)**
 10:10;27:22;28:10
**proceed (4)**
 25:16;29:1;30:8;
 36:17
**proceeding (11)**
 4:9,13;27:18;
 28:16;29:18;30:11,
 15;32:13,14;33:4;
 34:23
**proceedings (4)**
 27:12,22;28:11;
 39:13
**process (12)**
 10:15;11:15,16,
 24;15:20;16:4;17:9;

18:2,5;22:6;26:5;
 36:22
**productive (1)**
 11:25
**professional (1)**
 12:7
**professionals (1)**
 11:7
**progress (1)**
 13:9
**promised (1)**
 9:18
**properties (1)**
 10:6
**property (7)**
 30:19;35:15,16,19,
 19,21;38:3
**propose (1)**
 36:16
**proposed (2)**
 26:20;27:8
**proposing (1)**
 38:24
**proven (1)**
 8:2
**provide (6)**
 10:22;18:10;
 29:15;32:21,24;
 37:12
**provided (2)**
 11:2;32:6
**public (2)**
 16:2;26:4
**purchaser (1)**
 17:5
**purchasers (1)**
 9:1
**Pursuant (1)**
 31:19
**pursue (1)**
 18:16
**put (1)**
 17:20
**PWC (1)**
 26:2

## Q

**Quadrangle (1)**
 6:4
**quick (1)**
 7:19
**quickly (2)**
 8:13;24:24
**quite (1)**
 34:11

## R

**RAHI (3)**
 4:13;35:17,19
**raise (1)**
 39:11

**raised (3)**
 13:1;19:20;20:5
**rather (1)**
 13:25
**RAY (2)**
 6:24;24:22
**Raymer (1)**
 29:21
**Re (4)**
 3:2,6,14;4:2
**reach (3)**
 13:6;18:9;31:25
**reached (2)**
 8:6;18:13
**reaching (1)**
 12:16
**read (12)**
 14:23;24:8,13,14;
 28:6;33:1;34:8,17,
 17;35:11;37:22;
 38:14
**Reaffirming (1)**
 3:11
**Real (2)**
 4:13;10:6
**really (8)**
 16:25;18:24;19:2;
 25:5;26:24;31:20,
 21;35:21
**reason (1)**
 29:13
**reasonably (1)**
 35:24
**received (1)**
 10:13
**recently (1)**
 30:6
**recognition (1)**
 17:9
**recognize (4)**
 18:19;19:7;20:19;
 38:20
**recognized (1)**
 16:1
**reconciling (1)**
 10:19
**record (1)**
 25:20
**reduction (1)**
 31:20
**reflecting (1)**
 26:11
**regarding (2)**
 16:2;27:18
**regulatory (2)**
 23:13,14
**Related (1)**
 3:2
**relates (1)**
 21:3
**relating (1)**
 14:16
**relatively (1)**

31:22
**Relief (11)**
 3:11;12:4;26:8;
 30:8;31:3;33:17;
 35:12;36:23;37:23;
 38:19,20
**relieve (1)**
 23:24
**remain (1)**
 7:17
**remaining (1)**
 11:3
**remarkably (1)**
 14:18
**remind (1)**
 37:2
**removed (2)**
 36:4,13
**rendering (1)**
 30:19
**reopen (1)**
 36:1
**replaced (2)**
 16:7;23:17
**replies (1)**
 15:5
**report (2)**
 11:20;16:20
**represent (1)**
 29:22
**representative (2)**
 28:20;32:5
**represented (2)**
 13:14;32:16
**requested (1)**
 12:5
**requests (1)**
 15:13
**require (1)**
 10:20
**required (3)**
 9:1;11:4;15:5
**ResCap (3)**
 34:4;35:17,19
**Reserve (4)**
 3:11;8:18;15:20;
 26:4
**Residential (3)**
 3:20;4:7;7:3
**resolution (12)**
 12:11,16,17;13:7;
 18:1;19:4;23:23;
 30:15;31:25;34:14;
 37:15;38:23
**resolutions (1)**
 13:3
**resolve (4)**
 14:17,21;19:1;
 34:2
**resolved (4)**
 15:16;17:7;18:14;
 19:7
**resolving (3)**

12:24;18:6;19:5
**respect (7)**
10:7;16:23;18:17;
19:23;22:8;24:2;
27:7
**responding (1)**
20:24;35:1,1
**response (1)**
8:8
**restructuring (3)**
7:22;12:2,6
**result (4)**
9:4,21;10:14;18:2
**resulted (3)**
9:10,13,16
**resulting (1)**
16:3
**Retain (2)**
3:17;4:4
**retention (2)**
12:2,19
**returning (1)**
15:1
**Review (22)**
3:9,18;8:15,16,17;
11:8;15:20,22;16:2,
4,7,11;22:25;23:6,
12,15,17;26:2,5;
29:6;33:1,13
**reviewed (1)**
34:3
**revised (1)**
14:19
**Richards (21)**
27:13,15,16;28:3,
5,7,14;29:14,18;
30:25;31:2,10,14;
32:9,12,21;33:3,21;
34:10,19;39:8
**right (14)**
7:2;9:20;14:9;
17:24;18:4;23:8;
25:16;27:9;28:13;
36:5,16;38:7,16;
39:12
**rise (1)**
24:24
**RMBS (13)**
13:1,2,11,17;
14:16,24;18:17;19:5,
9;21:3,18;22:8,11
**role (1)**
17:19
**rolling (1)**
18:23
**room (1)**
12:8
**ROSENBAUM (1)**
37:3
**Rule (6)**
3:7,16,16;4:3,4;
33:25
**rules (1)**

37:10
**run (1)**
8:5
**running (1)**
24:11

## S

**sale (8)**
9:7,12,15;10:15;
16:24,25;30:3,13
**sales (4)**
8:23,25;10:1,3
**same (1)**
37:17
**satisfied (1)**
23:21
**saw (5)**
24:19;26:20,20,
23;37:23
**schedule (3)**
14:19;19:10;38:24
**scheduled (4)**
27:23,23;28:1;
30:13
**scheduling (5)**
14:13;22:16;37:1,
11,18
**SCHROCK (8)**
6:24;24:19,21,22;
25:6,12,14,15
**se (1)**
28:17
**searched (1)**
26:22
**seasoned (1)**
12:6
**seated (1)**
7:2
**second (3)**
7:19;26:12;35:22
**Section (3)**
3:7,15;4:3
**secured (3)**
10:12;13:6,7
**securities (2)**
10:6;13:4
**seeing (1)**
18:25
**seek (1)**
14:17
**seeking (7)**
15:21;20:17;
27:21;30:12,16;37:7,
23
**seem (2)**
14:11;17:14
**seems (3)**
14:2,10;32:7
**sensitive (1)**
29:7
**sentiment (1)**
14:20

**separate (2)**
9:1;23:1
**sequestration (2)**
14:4,8
**serious (3)**
19:20;20:11;27:2
**served (1)**
29:24
**service (1)**
10:23
**servicer (2)**
30:3,4
**Services (1)**
3:9
**Servicing (3)**
3:12;9:8,15
**set (4)**
11:9;13:20;25:2;
30:23
**sets (1)**
10:21
**settle (1)**
16:3
**settlement (5)**
13:1,11;14:16;
16:8;38:11
**settlements (1)**
9:3
**several (4)**
10:2,19;17:4;
29:20
**shared (1)**
26:14
**Shocking (3)**
25:6,6,7
**short (1)**
31:22
**shortness (1)**
15:13
**sic (1)**
8:15
**side (1)**
38:25
**sides (1)**
14:6
**significant (7)**
8:24;10:4;16:13;
17:1,24,25;18:9
**SILVERMAN (3)**
6:2;31:11,16
**similar (1)**
29:2
**simply (2)**
24:9;26:7
**sit (1)**
14:17
**site (1)**
37:10
**sitting (1)**
25:3
**sixty (7)**
8:10,22;12:23;
14:15;19:1,2;25:1

**skill (1)**
10:21
**sold (1)**
9:9
**solution (1)**
38:15
**somebody's (1)**
34:24
**someone (1)**
27:2
**somewhere (1)**
16:12
**Sorry (2)**
7:5;27:23
**sort (1)**
16:20
**sorts (1)**
20:17
**sounds (1)**
8:19
**speak (4)**
23:3,5;31:18;33:1
**speaks (1)**
34:22
**Special (6)**
3:17;4:5;6:3;
31:16;36:7,10
**Specifically (2)**
10:8;38:25
**speeds (1)**
22:7
**spent (3)**
7:24;20:7;23:13
**spoke (1)**
32:4
**spoken (1)**
31:11
**stalled (2)**
11:15;17:15
**stand (1)**
12:24
**standing (2)**
30:17,20
**start (1)**
8:23
**started (1)**
27:19
**starting (2)**
14:3;25:22
**state (2)**
31:3;36:3
**statement (1)**
12:18
**States (1)**
2:14
**Status (8)**
3:4;7:20;13:16;
16:20;21:2;29:15;
32:22,24
**stay (2)**
15:23;30:8
**stem (1)**
33:4

**step (1)**
38:5
**still (8)**
10:1,3,5;11:21;
25:17;34:12;38:3,17
**stop (1)**
14:8
**Street (1)**
4:22
**string (1)**
34:5
**strong (1)**
13:23
**subject (3)**
7:22;13:12;16:4
**submissions (1)**
22:9
**subordinated (1)**
13:2
**subsequently (1)**
30:10
**subservice (1)**
10:23
**subset (1)**
10:8
**substantively (1)**
26:13
**substituted (1)**
33:8
**successful (1)**
18:2
**successfully (1)**
31:24
**sufficient (2)**
27:4;29:10
**suggested (1)**
20:5
**suggestion (1)**
19:21
**Suite (2)**
4:22;6:5
**sum (1)**
30:23
**summons (1)**
29:24
**Superior (2)**
36:8,11
**supplemental (1)**
15:4
**support (2)**
12:18;31:4
**sure (4)**
28:25;33:17;
37:24;38:13
**surrounding (1)**
23:15
**switch (2)**
33:13;34:24

## T

**table (2)**
20:6;39:1

talk (4)
  14:24;17:11;21:2;
  24:5
talking (2)
  14:10;23:14
tasks (1)
  11:4
team (1)
  10:25
telephone (4)
  28:24;37:6,16;
  39:4
telephonic (1)
  32:6
telephonically (2)
  28:20;32:17
template (2)
  37:10,19
tentative (1)
  14:5
term (1)
  18:11
terms (7)
  9:4;17:5,10,11;
  22:6,25;23:5
Thankfully (1)
  27:1
there'd (1)
  26:22
Third (2)
  7:20;27:8
thirteen (1)
  16:4
thirty (1)
  13:12
THOMAS (3)
  6:11,16;32:16
though (1)
  11:20
thought (2)
  26:24;37:24
thousand (1)
  10:19
three (4)
  8:4;9:1,19;11:6
throughout (2)
  34:23;35:2
till (2)
  13:21,24
times (1)
  31:12
title (6)
  35:15,16,18,18;
  38:6,16
today (14)
  7:24;13:20;20:3;
  21:19;26:25;28:12,
  20;30:24;32:5,17;
  34:17,18;37:1;39:9
today's (1)
  11:17
together (1)
  23:13

tomorrow (17)
  13:16,21,22;14:1,
  3,25;15:6;19:8,12,
  15,21;20:22;21:1,2,
  23;22:2,22
took (2)
  14:18;21:14
topics (1)
  8:20
total (1)
  16:10
towards (3)
  8:13;12:22;13:19
Transcribed (1)
  4:20
treatment (1)
  13:7
tremendous (1)
  16:24
trial (10)
  13:15,17,23;14:19,
  22,24;21:3,18;22:8,
  11
tried (1)
  19:8
trust (2)
  13:2;26:15
Trustee (1)
  26:15
try (5)
  8:20;13:20;14:20;
  20:10;23:22
trying (11)
  8:11,12;13:3;
  14:15;18:1;19:1;
  21:5,7,15;22:5;37:14
Tuesday (4)
  12:4;17:12;18:4;
  25:2
Tunc (2)
  3:19;4:6
turn (5)
  11:12;12:1;15:19;
  27:12;28:15
twice (1)
  30:5
two (4)
  9:20;11:22;22:7;
  29:2
Tye (1)
  33:8

## U

ultimately (3)
  17:3;21:4;23:23
unable (1)
  15:16
Under (7)
  3:7,10,15;4:2;
  16:8;25:24;37:10
understands (1)
  11:10

understood (1)
  22:14
undertake (1)
  37:17
United (1)
  2:14
unless (1)
  32:22
unsecured (5)
  15:23;16:14;
  30:20;31:16;38:21
up (10)
  14:19;19:3;20:3;
  22:23,24;24:19;
  26:19;30:3;31:23;
  38:23
Update (8)
  3:4;7:8,15;8:15;
  16:17;29:15;32:22,
  25
upon (2)
  23:20;31:3
use (1)
  37:19
useful (2)
  7:10;17:22
usual (1)
  15:14

## V

vacate (2)
  33:9,19
vacating (1)
  35:25
valuable (1)
  8:2
value (11)
  9:5,11,14,17,22;
  10:18;11:5;30:18;
  31:21;35:15,20
various (2)
  15:3;23:18
via (2)
  28:20;32:5
view (3)
  11:20;25:11,12
virtually (1)
  14:23
voluntarily (1)
  30:10

## W

wait (3)
  13:21;24:2,3
Walter (1)
  9:9
wants (2)
  38:25;39:10
warrant (1)
  17:9
way (10)

  12:25;14:2,11;
  23:22;30:2;33:3;
  34:23;36:20;38:6,15
Web (1)
  37:9
week (2)
  11:9;37:6
weeks (4)
  8:4;9:20;14:22;
  17:4
weigh (1)
  25:1
well-respected (1)
  12:7
West (1)
  4:22
what's (2)
  8:21;37:2
Whenever (1)
  17:25
Whereupon (1)
  39:13
White (1)
  14:10
whole (2)
  34:23;35:2
who's (1)
  30:1
whose (1)
  33:9
willing (2)
  18:18;34:13
Wilmington (1)
  26:15
winding (1)
  11:2
wish (1)
  39:5
within (2)
  10:25;31:6
without (1)
  30:20
Wolicki (1)
  4:20
work (3)
  8:10;14:17;21:19
worked (1)
  17:8
working (6)
  14:20;17:5;19:16;
  20:8;22:8;34:12

## Y

year (1)
  30:14
yesterday (3)
  19:21;21:14;32:4
York (4)
  2:16,16;4:23;6:22

## 0

01803 (1)
  6:14

## 1

1.4 (1)
  10:5
1.41 (1)
  9:14
100 (1)
  6:4
10022 (1)
  6:22
10040 (1)
  4:23
11753 (1)
  6:6
11th (7)
  30:22;37:3,9,13,
  14,16;38:22
12 (1)
  15:6
12-02065 (1)
  32:15
12-02065-mg (1)
  4:13
12-02088 (1)
  28:18
12-02088-mg (1)
  4:9
12-12020 (1)
  7:3
13 (4)
  25:24;30:5,6,10
1357 (1)
  3:6
14 (2)
  3:19;4:6
1426 (1)
  3:14
1427 (1)
  4:2
15 (1)
  6:13
15th (2)
  9:16;31:19
17 (1)
  27:12
18th (1)
  29:19
192nd (1)
  4:22

## 2

2.1 (1)
  9:17
2:34 (1)
  2:19
2010 (1)
  33:7
2011 (2)
  30:5,7

**2012 (4)**
  3:19;4:6;29:19;
  33:5
**2013 (3)**
  2:18;9:13,16
**2014-1 (2)**
  3:16;4:4
**2014a (2)**
  3:16;4:3
**21 (2)**
  23:8;24:11
**21st (6)**
  25:13;26:9;27:21,
  24,24;28:3
**28 (1)**
  2:18

**3**

**3:20 (1)**
  39:13
**300 (1)**
  6:5
**31st (2)**
  9:10,19
**327e (2)**
  3:15;4:3
**363 (1)**
  3:7

**4**

**415 (1)**
  16:12
**460 (1)**
  16:12
**492 (1)**
  9:11

**5**

**5 (1)**
  14:8
**5th (2)**
  9:13;30:14

**6**

**6004 (1)**
  3:8
**601 (1)**
  6:21
**61 (1)**
  3:2

**7**

**7 (1)**
  27:17
**700 (1)**
  4:22
**7th (1)**
  30:21

**9**

**9 (2)**
  14:7,7
**973406-2250 (1)**
  4:24