UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                    :
In re:                                                              :   Chapter 11
                                                                    :
RESIDENTIAL CAPITAL, LLC, *et al.*                                  :   Case No. 12-12020 (MG)
                                                                    :
                                        Debtors.                    :   Jointly Administered
                                                                    :
                                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF IAIN H. BRUCE

IAIN H. BRUCE declares as follows of his personal knowledge:

**A.      Personal Background**

1.      I am a Senior Managing Director of Ambac Assurance Corporation ("Ambac Assurance").  I submit this declaration, based on my personal knowledge, (a) in support of the objection ("Ambac Objection") of Ambac Assurance and the Segregated Account of Ambac Assurance Corporation (together with Ambac Assurance, "Ambac") dated October 12, 2012 (Dkt. No. 1810) to the *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto*, Docket No. 926, which was filed by the above-captioned debtors ("Debtors") on July 26, 2012, and amended and restated on September 18, 2012 (Dkt. No 1484), and (b) to supplement the *Joint Stipulation of Facts Regarding the Sale Objection of Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation* dated March 4, 2013, Dkt. No. 3094 ("Joint Stipulation of Facts").  Capitalized terms used in this Declaration that are not defined have the meaning given to them in the Joint Stipulation of Facts.

2.      The inclusion of Servicing Triggers in securitization deals is a common method used by insurers of mortgage-backed securities to remediate and mitigate losses due to poor performance by mortgage loan servicers and of the loans in an RMBS Transaction.

3.      Section 7.05 of each Pooling and Servicing Agreement provides for two courses of action that may be pursued in the event that a Servicing Trigger is tripped.  The first is the removal of the Master Servicer at any time after the Servicing Trigger has been, and continues to be, tripped, provided Ambac "makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in" the mortgage loan pool backing the related series of mortgage-backed securities.  This proviso allows Ambac to remove the Master Servicer if Ambac determines that servicing has had an adverse impact on pool performance.

4.      Section 7.05 also provides for a second possible course of action if a Servicing Trigger is tripped, which does not require the determination that the manner of master servicing was a factor in pool performance and does not result in an immediate removal of the Master Servicer.  Under this second scenario, if a notice is provided that a Servicing Trigger has been tripped but the Master Servicer is not immediately removed, the Master Servicer is obligated to continue to serve as such through the end of the then-current calendar quarter.  Thereafter, the term of the Master Servicer may be extended for each successive calendar quarter or, alternatively, not renewed at the end of any such calendar quarter.  In the event of non-renewal, the Trustee or another successor Master Servicer appointed by Ambac pursuant to Section 7.02 of the related Pooling and Servicing Agreement becomes the Master Servicer.

5.      The Servicing Triggers protect Ambac against the risk that poor performance of loans in an RMBS Transaction, or poor servicing of those loans, will increase the loss-

2

es suffered by Ambac in connection with that RMBS Transaction. Determining the cause of the underperformance of loans in an RMBS Transaction (*e.g.*, poor servicing, poor underwriting practices or any other reason) may be difficult or impossible without a costly, lengthy and fact-intensive investigation. The Servicing Triggers obviate the need for such an investigation by providing a bright-line test. Regardless of fault, the Servicing Triggers are tripped – and Ambac's rights thereunder can be invoked – as soon as an RMBS Transaction satisfies an objective contractually-established underperformance metric.

6.    The Servicing-Related Rights (including the Servicing Triggers) are an integral component of each RMBS Transaction, essential protections that Ambac bargained for in exchange for agreeing to insure the RMBS Transactions. Ambac bargained for a contractual commitment that the servicers would service the mortgage loans in accordance with the provisions of the governing documents. Ambac also bargained for the right to terminate the servicers under certain circumstances, which provides a meaningful ability to take action in the face of underperforming loans and mounting losses.

7.    Attached as Exhibit A is a table that lists those RMBS Transactions that the Debtors wish to assign to Ocwen that contain Servicing Triggers, additional detail about the type of Servicing Triggers applicable to each RMBS Transaction, and the status as of a recent date of each Servicing Trigger.[1]

8.    If the Sale Order (and specifically paragraph 6 thereof) were to be applied to the RMBS Transactions with Servicing Triggers covered by the Objection, Ambac fears that Ocwen will take the position that Ambac is precluded from exercising its right to enforce a

---

[1]  This table differs from the table that was attached to the Joint Stipulation of Facts in two important ways. First, the Debtors and Ambac have identified three additional RMBS Transactions that contain Servicing Triggers. Second, the table attached as Exhibit A to this Declaration also includes the current status, or level, of each trigger.

3

Servicing Trigger because, Ocwen will argue, the primary fault for the delinquencies and

defaults that caused the Servicing Trigger to be tripped, to the extent that they exist on the date

of assignment, lies with the Debtors and, to that extent, they arguably are or are based upon acts

or omissions of the Debtors within the meaning of paragraph 6 of the Sale Order.

5883338v.10

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed on the __8__ day of March, 2013 at New York, New York.

5