**Hearing Date: March 21, 2013 at 10:00 a.m. (Eastern Time)**
**Objection Deadline (Mutually Agreed): March 13, 2013 at 12:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S OBJECTION TO DEBTORS' MOTION FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S INDEPENDENT FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE INDEPENDENT FORECLOSURE REVIEW OBLIGATION**

i

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 2

BACKGROUND ............................................................................................................ 3

ARGUMENT .................................................................................................................. 6

A.   GMACM's Obligation to Conduct the Independent
     Foreclosure Review Is Not A "Claim" by the Board
     Within the Plain Language of Section 101(5) ....................................................... 6

B.   Chateaugay Does Not Support the Conclusion that
     GMACM's Obligation to Conduct the Independent
     Foreclosure Review Is A "Claim" by the Board Within
     the Meaning of Section 101(5) .............................................................................. 7

C.   There is No Debtor-Creditor Relationship Between
     the Borrowers and GMACM Under the Board's Consent
     Order, and Therefore No "Claim" Within the Meaning
     of Section 101(5) .................................................................................................. 10

D.   Any Action by the Board of Governors to Enforce
     GMACM's Obligation to Conduct the Independent
     Foreclosure Review Fits Squarely Within the Police
     or Regulatory Powers Exception from the Automatic Stay ................................. 12

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                 **PAGE(S)**

Board of Governors v. MCorp Financial Inc.,
    502 U.S. 32 (1991) .................................................................................................................. 14

In re Chateaugay Corp.,
    944 F.2d 997 (2nd Cir. 1991) ............................................................................................ passim

In re Mark IV Industries, Inc.,
    438 B.R. 460 (Bankr. S.D.N.Y. 2010), aff'd, 459 B.R. 173 (S.D.N.Y. 2011) .................. 6, 7, 10

In re Mark IV Industries, Inc.,
    459 B.R. 173 (S.D.N.Y. 2011) ........................................................................................................ 8

In re Mazzeo,
    131 F.3d 295 (2nd Cir. 1997) ............................................................................................. 7, 8, 10

In re Torwico Electronics, Inc.,
    8 F.3d 146 (3rd Cir. 1993) ............................................................................................................. 8

In re Villarie,
    648 F.2d 810 (2nd Cir. 1981) ......................................................................................................... 7

NLRB v. 15th Ave. Iron Works, Inc.
964 F.2d 1336 (2nd Cir. 1992) ........................................................................................................ 13

SEC v. Brennan,
    230 F.3d 65, 71 (2nd Cir. 2000) .................................................................................................... 12

United States v. Apex Oil Co.,
    579 F.3d 734 (7th Cir. 2009) .......................................................................................................... 8

**STATUTES**

11 U.S.C. § 362(b)(4) ........................................................................................................................ 12

11 U.S.C. § 101(5)(B) ................................................................................................................. passim

# TABLE OF AUTHORITIES
## (Continued)

**OTHER AUTHORITIES**

Amendments to Consent Orders Memorialize $9.3 Billion Foreclosure Agreement,
    http://www.federalreserve.gov/newsevents/press/enforcement/20130228a.htm.......................9

Agencies Release Financial Remediation Guidance, Extend Deadline for Requesting a Free
Independent Foreclosure Review to September 30, 2012,
    http://www.federalreserve.gov/newsevents/press/bcreg/20120621a.htm...............................14

The Board of Governors of the Federal Reserve System (the "**Board of Governors**" or "**Board**") submits this objection to the motion of Residential Capital, LLC ("**ResCap**") and its affiliated debtors in possession in the above-captioned cases, including GMAC Mortgage, LLC ("**GMACM**") (the "**Motion**"), for entry of an order determining that (i) for purposes of any proposed plan, GMACMs obligation to conduct the Independent Foreclosure Review (as defined in the Motion) shall be classified as a general unsecured claim in an amount to be determined, and (ii) the automatic stay prevents the Board of Governors from taking any action to enforce such claim against ResCap and GMACM outside of their chapter 11 cases. The Board submits this objection because the grounds for relief cited in the Motion seriously mischaracterize the terms of the Board's enforcement action against ResCap and GMACM. We do not address any other basis for objection to the Motion. In support hereof, the Board of Governors respectfully states as follows:

## PRELIMINARY STATEMENT

ResCap and GMACM have asked the Court to enter an order, pursuant to section 362(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), determining that (i) GMACM's obligation to conduct the Independent Foreclosure Review represents a general unsecured claim, within the meaning of section 101(5)(B) of the Bankruptcy Code, for purposes of any chapter 11 plan proposed in ResCap's and GMACM's chapter 11 cases, and (ii) the automatic stay in section 362(b)(4) of the Bankruptcy Code applies to prevent the Board of Governors from taking any action to enforce GMACM's obligation to continue conducting the Independent Foreclosure Review.

Under the terms of the Board's enforcement action, GMACM's obligation to conduct the Independent Foreclosure Review is not a "claim" within meaning of section

- 1 -

101(5)(B). A contrary determination by this Court would contradict the plain language of section 101(5)(B) and controlling judicial precedent interpreting that provision, and would be inconsistent with this Court's prior rulings in these chapter 11 proceedings. Likewise, any further action by the Board of Governors against GMACM to enforce GMACM's Independent Foreclosure Review obligations – like the actions taken by the Board of Governors to-date – would clearly be an exercise of "regulatory or police powers" within the meaning of section 362(b)(4) of the Bankruptcy Code. A determination by this Court that the automatic stay prevents the Board from taking any further action to enforce GMACM's Independent Foreclosure Review obligation would contradict the plain language of section 362(b)(4) and controlling judicial precedent.

In substance, ResCap and GMACM are asking this Court to sanction GMACM's disregard of a validly issued and legally enforceable enforcement action from its primary Federal banking regulator – an action that ResCap and GMACM "consent[ed] to compliance with each and every applicable provision of"[1] – thereby relieving it of its obligation to the Board to identify the borrowers financially injured by ResCap's and GMACM's misconduct and make those borrowers whole.

## JURISDICTION AND VENUE

ResCap and GMACM invoke 28 U.S.C. §§ 157 and 1334 as bases for this Court's jurisdiction to consider the Motion and assert that it constitutes a core proceeding under 28 U.S.C. § 157(b). Likewise, ResCap and GMACM assert that venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates ResCap and GMACM rely on in requesting relief are section 362(a) of the Bankruptcy Code and Rule 3013 of the Bankruptcy

---

[1] See Debtors' Motion, Ex. 3 at 5.

Rules.  The Board of Governors does not concede that this Court has jurisdiction to decide this issue in light of section 8(i)(1) of the Federal Deposit Insurance Act (the "**FDI Act**").[2]

## BACKGROUND

ResCap and GMACM, debtors in this proceeding, are nonbank subsidiaries of Ally Financial, Inc. ("**AFI**"), a registered bank holding company.  The Board of Governors is the primary Federal regulator of bank holding companies and their nonbank subsidiaries, including ResCap and GMACM.  ResCap's and GMACM's filing of a bankruptcy petition in this Court did not affect their status as nonbank subsidiaries that are regulated by the Board.

In the fall of 2010, prior to the Petition Date, allegations publicly surfaced of pervasive misconduct in the home mortgage loan servicing and foreclosure processing industry. Shortly thereafter, the Board of Governors and other Federal banking agencies commenced examinations of the largest banking organizations subject to their respective jurisdictions that engaged in mortgage loan servicing and foreclosure processing (the "**Horizontal Exam**"). ResCap and GMACM were among the banking organizations included in the Horizontal Exam. During the Horizontal Exam, the agencies found patterns of misconduct and negligence at each of the banking organizations related to deficient practices in servicing and foreclosure processing that represented significant and pervasive compliance failures and unsafe or unsound practices.

In the face of such findings, the Federal banking agencies have an important tool at their disposal to bring the misconduct to an end, to ensure it does not happen going forward, and to identify and make whole those who may have been harmed by the misconduct:

---

[2]  Section 8(i)(1) provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [section 8], or to review, modify, suspend, terminate, or set aside any such notice or order."  12 U.S.C. § 1818(i)(1).  As this objection is limited to correcting any misimpressions the Court may be left with based on the Motion, the Board reserves and does not waive any further objections it may have to the Motion, including objections premised on section 8(i)(1).

section 8(b) FDI Act.  Section 8(b) authorizes the Federal banking agencies to order the banking organizations for which they are the "appropriate Federal banking agency" to cease and desist from engaging in unsafe or unsound practices or violations of law, and also to take affirmative action to correct the conditions resulting from any such practices or violations.  12 U.S.C. § 1818(b).  For purposes of section 8(b), the Board of Governors is the "appropriate Federal banking agency" for bank holding companies and their nonbank subsidiaries, which would include ResCap and GMACM.  See 12 U.S.C. § 1813(q)(3).

The affirmative action that section 8(b) authorizes the Board of Governors to order a banking organization it regulates to take is broad and includes restitution and reimbursement.  12 U.S.C. § 1818(b)(6)(A).  The breadth of the authorization is apparent in the catch-all concluding paragraph, which authorizes the Board to order such a banking organization to take whatever other affirmative action the Board determines is appropriate.  12 U.S.C. § 1818(b)(6)(F).  However, section 8(b) does not authorize the Board of Governors to assess a penalty against a banking organization for engaging in unsafe or unsound practices or violations of law.  Rather, that authority is found in section 8(i)(2) of the FDI Act.  In addition, nothing in section 8(b) states explicitly that the Board of Governors, in lieu of ordering the banking organization to take affirmative action, may take affirmative action itself and then seek reimbursement from the banking organization.

Section 8(b) generally requires the Board of Governors to file a formal notice of charges and conduct a formal hearing before the Board can enter an order to cease and desist.  To avoid the protracted hearings and testimony associated with such a hearing, the Federal banking agencies frequently issue orders to cease and desist with the institution's consent.  The Board's authority to issue cease and desist orders unambiguously extends to bank holding companies and

their nonbank subsidiaries, which would include ResCap and GMACM. See 12 U.S.C. § 1818(b)(3).

On April 13, 2011, prior to the Petition Date, the Board of Governors, under the authority of section 8(b), issued a consensual cease and desist order against ResCap, GMACM and AFI for the mortgage loan servicing and foreclosure processing abuses uncovered during the Horizontal Exam (the "**Consent Order**"). See Debtors' Motion, Ex. 3. The Consent Order was not issued under the authority of section 8(i)(2) of the FDI Act, and does not require ResCap or GMACM to make any payment – penal or otherwise – to the Board of Governors. Rather, the Consent Order requires AFI, ResCap, and GMACM to take several affirmative actions, each specifically authorized by section 8(b), designed to ensure that the misconduct uncovered during the Horizontal Exam ends, that it does not happen going forward, and, of most significance for present purposes, that those harmed by the misconduct are identified and made whole. See, generally, Debtors' Motion, Ex. 3. To achieve this latter purpose, the Board of Governors required GMACM to retain independent consultants to conduct an independent review of residential mortgage foreclosures conducted by GMACM during a two-year time period in order to identify and remediate borrowers financially injured by ResCap's and GMACM's misconduct (the "**Independent Foreclosure Review**"). See Debtors' Motion, Ex. 3, ¶¶ 3, 4.

Approximately one year after issuance of the Consent Order, on May 14, 2012, ResCap, GMACM, and certain of their affiliates filed petitions with this Court under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101-1532.

**ARGUMENT**

    A.    **GMACM's Obligation to Conduct the Independent Foreclosure Review Is Not A "Claim" by the Board Within the Plain Language of Section 101(5)(B)**

ResCap and GMACM assert that GMACM's obligation to conduct the Independent Foreclosure Review is a "claim" within the meaning of section 101(5)(B) of the Bankruptcy Code. Section 101(5)(B) defines a "claim" to mean:

. . . .

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(B).

GMACM's obligation to conduct the Independent Foreclosure Review is not a "claim" within the plan language of section 101(5)(B). Although Congress "unquestionably expected this definition to have wide scope," In re Chateaugay Corp., 944 F.2d 997, 1003 (2nd Cir. 1991), a creditor's right to an equitable remedy for breach of performance is a "claim" under section 101(5)(B) *only* where the breach gives rise to a right of payment. See 11 U.S.C. § 101(5)(B). "Conversely, where a creditor does not have the option to accept money in lieu of the equitable remedy, the equitable obligation is not a 'claim' and is not dischargeable in bankruptcy." In re Mark IV Indus., Inc., 438 B.R. 460, 466 (Bankr. S.D.N.Y. 2010), aff'd, 459 B.R. 173 (S.D.N.Y. 2011).

Moreover, for GMACM's obligation to conduct the Independent Foreclosure Review to be a "claim" within the meaning of section 101(5)(B), there must be a creditor-debtor relationship. As the Second Circuit has stated, the "[Bankruptcy] Code's 'definition [of 'debt' in

- 6 -

terms of 'claim'] reveals Congress' intent that the meanings of 'debt' and 'claim' be coextensive.'" In re Mazzeo, 131 F.3d 295, 302 (2nd Cir. 1997) (quoting Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552, 558 (1990)); see also In re Villarie, 648 F.2d 810, 812 (2nd Cir. 1981) (the terms claim and debt are "coterminous"); In re Mark IV Indus., Inc., 438 B.R. at 465, aff'd, 459 B.R. 173 (S.D.N.Y. 2011) ("the terms 'debt' and 'claim' are coextensive"). "That interpretation is confirmed by legislative history stating that 'the terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." In re Mazzeo, 131 F.3d at 302 (internal citations and quotation marks omitted).

There is nothing in the Consent Order, including the provisions requiring the Independent Foreclosure Review, that provides the Board the option to accept money in lieu of the equitable remedy of requiring GMACM to conduct the Independent Foreclosure Review. Likewise, there is no creditor-debtor relationship between the Board of Governors and ResCap or GMACM here. In sum, the Board has no "claim" against ResCap or GMACM within the meaning of section 101(5)(B).[3]

### B. Chateaugay Does Not Support the Conclusion that GMACM's Obligation to Conduct the Independent Foreclosure Review Is A "Claim" by the Board Within the Meaning of Section 101(5)

ResCap's and GMACM's heavy reliance on Chateaugay and judicial precedent pertaining to environmental injunctions by the Environmental Protection Agency ("**EPA**") is misplaced. In the context of environmental injunctions, under Chateaugay the "proper test" for determining whether an enforcing agency has a "right to payment" under section 101(5)(B) "is to

---

[3] GMACM's obligations to the Board also do not constitute a "claim" within the plain language of section 101(5)(A). See 11 U.S.C. § 101(5)(A).

consider whether the enforcing agency has a right to cleanup and recover response costs under the statute pursuant to which the enforcing agency has obtained its injunction." In re Mark IV Industries, Inc., 459 B.R. 173, 186 (S.D.N.Y. 2011); see also In re Torwico Electronics, Inc., 8 F.3d 146, 151 n. 6 (3rd Cir. 1993) ("Here, it is undisputed that the order was issued under statutory sections which do not allow the state to perform the cleanup and then sue for reimbursement of its costs. That authority may exist under other potentially relevant statutes for the state to perform the cleanup and seek reimbursement for its costs is irrelevant … [and] does not convert [the state's] statutory authority into a 'right to payment.'"); United States v. Apex Oil Co., 579 F.3d 734, 738 (7th Cir. 2009) ("The natural reading of [section 101(5)(B)] is that if the holder of an equitable claim can, in the event that the equitable remedy turns out to be unobtainable, obtain a money judgment instead, the claim is dischargeable." Because the statute that formed the basis of the government's equitable claim did not entitle the government to demand reimbursement for clean-up costs in lieu of requiring the debtor to perform the clean-up, even if the debtor had to hire and pay a third-party to perform that clean-up, the debtor's equitable obligation was not dischargeable "claim" for purposes of section 101(B)(5).). Accordingly, assuming Chateaugay is even relevant here, whether GMACM's obligation to conduct the Independent Foreclosure Review is a "claim" under this precedent clearly turns on whether the Board has a choice to (1) order a regulated entity to take remedial measures or (2) take remedial measures itself and demand payment from the regulated entity for costs incurred by the agency in remediating.

        As explained above, there is no provision in the Consent Order that affords the Board such a right, nor does section 8(b) of the FDI Act state explicitly that the Board may itself undertake affirmative action to correct conditions caused by a regulated banking organization's

- 8 -

unsafe and unsound practices and then require that institution to pay the Board the costs of such action. Thus, unlike the EPA in Chateaugay, under the Consent Order, the Board is pursuing only an injunctive remedy in requiring GMACM to continue to conduct the Independent Foreclosure Review and has no right to recover any payment that is or may be due to it.[4]

This conclusion is not changed by the recent issuance by the Board and the Office of the Comptroller of the Currency (the "**OCC**") of amendments to their respective consent orders against other banking organizations that engage in mortgage loan servicing and foreclosure processing (the "**Amendments**").[5] As ResCap and GMACM correctly observe in the Motion, those consent orders required those banking organizations to conduct independent foreclosure reviews similar to the Independent Foreclosure Review required of GMACM under the Consent Order. See Debtors' Motion, Ex. 4. However, neither ResCap nor GMACM is a party to any of the Amendments (or to any agreement in principle regarding an amendment to the Consent Order) and therefore GMACM remains obligated under its Consent Order to conduct the Independent Foreclosure Review required by that Consent Order, which is wholly unaffected by the separate regulatory requirements imposed on the other banking organizations in their respective Amendments. Any amendment to the Consent Order similar to the Amendments (or any agreement in principal regarding such an amendment) is purely theoretical at this point.

---

[4] For the foregoing and other reasons, in comparing GMACM's obligations to conduct the Independent Foreclosure Review to the environmental injunctions at issue in Chateaugay, ResCap and GMACM might as well be comparing apples and oranges. Environmental injunctions and bank regulatory enforcement actions are completely different animals. As the Court observed in Chateaugay, environmental injunctions "frequently combine an obligation as to which the enforcing agency has an alternative right to payment with an obligation as to which no such alternative exists. 944 F.2d at 1008. Indeed, it is this unique combination of obligations that the Court grappled with in Chateaugay. There is no such combination here.

[5] The Amendments memorialized agreements in principle announced by the Board of Governors and the OCC in January 2013. See Amendments to Consent Orders Memorialize $9.3 Billion Foreclosure Agreement,
http://www.federalreserve.gov/newsevents/press/enforcement/20130228a.htm.

Even if the terms of the Amendments were somehow of significance here, those provisions do not create any "claims" by the Board, because nothing in the Amendments provides the Board with the right to a payment for breach of the relevant consent order or in any other circumstance.  For the servicers that <u>are</u> parties to the Amendments (the "**Participating Servicers**"), the Amendments replace the Participating Servicers' obligations under their respective consent orders – obligations owed to the relevant Federal banking agency under the terms of the relevant order – to conduct independent foreclosure reviews similar to the Independent Foreclosure Review required of GMACM under the Consent Order, with different requirements, including cash payments to all borrowers who may have been financially injured by the deficient servicing practices addressed in the consent orders and providing other foreclosure prevention relief.  Importantly, nothing in these Amendments (or in the agreements in principle that they memorialize) requires any payments by those Participating Servicers to the Board or to the OCC.

        **C.**        **There is No Debtor-Creditor Relationship Between the Borrowers GMACM Financially Injured and GMACM Under the Board's Consent Order, and Therefore No "Claim" within the Meaning of Section 101(5)**

To the extent that ResCap and GMACM are arguing that GMACM's obligation to conduct the Independent Foreclosure Review is somehow an obligation to borrowers, and that a theoretical amendment to the Consent Order similar to the Amendments (or a theoretical agreement in principal regarding such a theoretical amendment) somehow converts that obligation into a "claim" those injured borrowers now have against ResCap and GMACM, their argument is misplaced.

To begin with, as already observed, Second Circuit precedent holds that "the terms 'debt' and 'claim' are coextensive: a creditor has a 'claim' against the debtor; the debtor

- 10 -

owes a 'debt' to the creditor." In re Mazzeo, 131 F.3d at 302 (quoting Davenport, 495 U.S. at 558); In re Mark VI Industries, Inc., 438 B.R. at 465, aff'd, 459 B.R. 173 (S.D.N.Y. 2011) ("the terms 'debt' and 'claim' are coextensive"). However, ResCap and GMACM borrowers have no right to payment – no "claim" – under the Consent Order. Indeed, paragraph 30 of the Consent Order specifically precludes third-parties from having any rights under the Consent Order, which would include any right to remediation as part of the Independent Foreclosure Review. Even though the amended consent orders with the Participating Servicers have no bearing on ResCap's and GMACM's obligations under the Consent Order, a paragraph substantively identical to paragraph 30 is found in the consent orders of each of the Participating Servicers and was unaffected by the Amendments. Accordingly, third-parties likewise have no right to any payment– no "claim" – even under the consent orders as amended by the Amendments.

Simply put, ResCap and GMACM borrowers have no "alternative right to payment" under any amendment to the Consent Order similar to the Amendments because there is no such amendment. At this point, an amendment to the Consent Order (or an agreement in principal regarding such an amendment) is purely theoretical. Moreover, even if there were such an amendment, for the reasons stated above, any such amendment would not afford ResCap's or GMACM's borrowers a right to payment recognized under applicable law.

Finally, even if GMACM's obligations under the Independent Foreclosure Review provisions of the Consent Order to make the necessary payments to third-parties so that the Independent Foreclosure Review may continue, including payments to the independent consultants that GMACM was required to retain to conduct the review and any remedial payments to borrowers, are somehow viewed as creating "claims" under section 101(5) of the Bankruptcy Code, GMACM's obligations to continue through its own employees and operations

- 11 -

to take whatever actions are required on its part to conduct and complete the Independent Foreclosure Review (such as retaining the independent consultants (as opposed to paying such consultants) and cooperating with and assisting the consultants' review efforts) do not in any way involve obligations to make payments to third-parties. There is, accordingly, no basis for enjoining the continuation of any such actions by GMACM.

> **D.    Any Action by the Board of Governors to Enforce GMACM's Obligation to Conduct the Independent Foreclosure Review Fits Squarely Within the Police or Regulatory Powers Exception from the Automatic Stay**

The "police or regulatory powers" exception in section 362(b)(4) of the Bankruptcy Code precludes the automatic stay from reaching proceedings by a governmental unit to enforce a "police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C. § 362(b)(4). ResCap and GMACM incorrectly contend that the Independent Foreclosure Review does not qualify for this exception.

As the Second Circuit has explained, "the purpose of th[e] [police or regulatory powers] exception is to prevent a debtor from frustrating necessary governmental functions by seeking refuge in bankruptcy court." SEC v. Brennan, 230 F.3d 65, 71 (2nd Cir. 2000) (internal citations and quotation marks omitted). "Thus, 'where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.'" Id. at 71 (quoting H.R.Rep. No. 95-595, at 343 (1977), U.S. Code Cong. & Admin. News at 6299, and S.Rep. No. 95-989, at 52 (1978), U.S. Code Cong. & Admin. News at 5838).

Because the obligations under the Consent Order, including to conduct the Independent Foreclosure Review, do not constitute "claims" under the Bankruptcy Code, any Board action to enforce those obligations is not an attempt to collect any claim that is barred by the automatic stay.

Moreover, the Board's consent orders, including the Consent Order, were issued to address misconduct and negligence at each of the banking organizations related to deficient practices in servicing and foreclosure processing that represented significant and pervasive compliance failures and unsafe or unsound practices. Their issuance and enforcement inarguably constitute government action aimed at preventing or stopping misconduct under bank regulatory and consumer protection laws. Granting the Motion would sanction ResCap's and GMACM's disregard of their obligations under the Consent Order and defeat the purpose of the police or regulatory powers exception.

Finally, any Board action to enforce ResCap's and GMACM's obligations under the Consent Order, including to conduct the Independent Foreclosure Review, also cannot reasonably be characterized as "enforcement of [a] money judgment[ ] imposed by [a] governmental entity through administrative proceedings," see NLRB v. 15th Ave. Iron Works, Inc., 964 F.2d 1336 (2nd Cir. 1992) – ResCap's and GMACM's unsubstantiated statements to the contrary notwithstanding. One need only look at the terms of the Consent Order, including those pertaining to the Independent Foreclosure Review, to see it plainly does not involve a "money judgment." See, generally, Debtors' Motion, Ex. 3.[6] Accordingly, any further action by the

---

[6] As set forth in the Consent Order, GMACM's Independent Foreclosure Review-related obligations include retaining independent consultants, acceptable to the Board to conduct the review and identify borrowers financially injured by ResCap's and GMACM's misconduct; submitting a plan, acceptable to the Federal Reserve, to remediate those financially injured borrowers; actually remediating those financially injured borrowers; and submitting to the

- 13 -

Board of Governors to enforce the Consent Order, including GMACM's obligations to conduct the Independent Foreclosure Review – like all action taken by the Board of Governors to-date to enforce GMACM's obligations under the Consent Order – falls squarely within the "police or regulatory powers" exemption from the automatic stay.  See, e.g., Board of Governors v. MCorp Financial Inc., 502 U.S. 32, 40 (1991) (holding Board's enforcement action fell squarely within section 362(b)(4), "which expressly provides that the automatic stay will not reach proceedings to enforce a 'governmental unit's police or regulatory power'").  This Court has already acknowledged as much.[7]

## CONCLUSION

For the foregoing reasons, the Board of Governors respectfully requests that the Court deny the Motion.

| | |
|---|---|
| Washington, D.C.<br>Dated:  March 13, 2013 | /s/ Richard M. Ashton<br>Richard M. Ashton<br>Jennifer L. Sutton<br>Board of Governors<br>   of the Federal Reserve System<br>Telephone: (202) 452-3750<br>Facsimile: (202) 736-5615<br>*Counsel to Board of Governors* |

---

Federal Reserve an acceptable compliance program that takes into account the independent consultants' review to ensure that GMACM's operations comply with applicable law going forward. Id. ¶¶ 3, 4 and 8(m).  Moreover, remediation required by the Board's Consent Order is in no way limited to monetary payment and where applicable must include such things as rescission of a wrongful foreclosure, offering a borrower a loan modification that GMACM improperly denied, correcting GMACM's record for amounts it erroneously charged the borrower, and correcting the borrower's credit report.  See Agencies Release Financial Remediation Guidance, Extend Deadline for Requesting a Free Independent Foreclosure Review to September 30, 2012, http://www.federalreserve.gov/newsevents/press/bcreg/20120621a.htm.

[7]  See, e.g., September 27, 2012 PwC Status Conference Transcript, at 68.

- 14 -