tBradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama  35203
Phone:  (205) 521-8000
Fax:  (205) 521-8800
Robert W. Maddox, Esq.
Jay R. Bender, Esq.

*Special Litigation and Compliance Counsel
for the Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------- )
   In re:                           )    Case No. 12-12020 (MG)
                                     )
   RESIDENTIAL CAPITAL, LLC, et al.,    )    Chapter 11
                                     )
                      Debtors.    )    Jointly Administered
--------------------------------------------------------------------------- )

**SUMMARY OF SECOND INTERIM APPLICATION OF BRADLEY ARANT
BOULT CUMMINGS LLP AS SPECIAL LITIGATION AND COMPLIANCE
COUNSEL FOR THE DEBTORS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE
PERIOD SEPTEMBER 1, 2012, THROUGH DECEMBER 31, 2012**

This is a(n):    ___  monthly    _X_  interim ___ final application.

| | |
|---|---|
| Name of Applicant: | Bradley Arant Boult Cummings LLP ("**Applicant**") |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. (collectively, the "**Debtors**") |
| Date of Retention: | Order entered on August 20, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 [Dkt. 1221] |

1

1/2449567.1

| | |
|---|---|
| Period for which Compensation and Reimbursement is sought: | September 1, 2012 through December 31, 2012 (the "**Application Period**")[1] |
| Fees/ Expenses Previously Approved: | Fees of $4,060,788.24 and expenses of $148,999.34 were approved by Order of this Court entered on December 28, 2012 [Dkt. 2530] |
| Previously Approved Expenses that Have Been Paid / Remain Unpaid: | $3,654,709.42 paid / $406,078.82 unpaid |
| Previously Approved Expenses that Have Been Paid / Remain Unpaid: | $148,999.34 paid / $0.00 unpaid |
| Amount of Compensation Sought Herein as Actual, Reasonable and Necessary: | $4,257,795.00 |
| Amount of Expense Reimbursement Sought Herein as Actual, Reasonable and Necessary: | $227,136.00 |

---

[1] This Application also seeks approval of certain fees and expenses incurred by Applicant prior to the Application Period for which compensation and reimbursement were not requested in Applicant's First Interim Application for Compensation and Reimbursement of Expenses (the "First Interim Application") [Dkt. No. 1882].

2

**Summary of Monthly Applications for Application Period:**

| Date of Monthly Request | Compensation Period | Fees Requested Initially / *Reconciled Fee Amount Approved by Debtors* | Expenses Requested Initially / *Reconciled Expense Amount Approved by Debtors* | Fees Paid to Date | Expenses Paid to Date | 20% Holdback |
|---|---|---|---|---|---|---|
| 11/5/2012 | 9/1/2012 to 9/30/2012 | $846,352.50 / *$820,169.00* | $46,397.86 / *$45,757.00* | $656,818.95 | $33,230.44 | $164,034.00 |
| 11/28/2012 | 10/1/2012 to 10/31/2012 | $1,099,582.60 / *$1,091,851.00* | $43,879.04 / *$42,360.00* | $847,519.99 | $41,809.78 | $218,370.00 |
| 12/4/2012 | 11/1/2012 to 11/30/2012 | $1,257,541.07 / *$1,248,289.00* | $50,885.15 / *$50,885.15* | $669,295.06 | $35,346.59 | $249,658.00 |
| 1/24/2013 | 12/1/2012 to 12/31/2012 | $1,097,485.66 / *$1,097,486.00* | $88,133.48 / *$88,133.48* | $101,604.37 | $11,301.25 | $219,497.00 |
| **TOTAL** | | $4,300,961.83 / *$4,257,795.00* | $229,295.53 / *$227,136.00* | $2,275,238.37 | $121,688.06 | $851,559.00 |

3

Hearing Date:    **April 11, 2013, at 10:00 a.m. (ET)**
Objection Deadline:    **March 25, 2013, at 12:00 p.m. (ET)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

------------------------------------------------------------------------

**SECOND INTERIM APPLICATION OF BRADLEY ARANT**
**BOULT CUMMINGS LLP AS SPECIAL LITIGATION AND COMPLIANCE**
**COUNSEL FOR THE DEBTORS FOR COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES INCURRED FOR THE**
**PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

For its second interim application for compensation and reimbursement of expenses (the "**Application**") for the period September 1, 2012 through December 31, 2012 (the "**Application Period**"),[2] Bradley Arant Boult Cummings LLP ("**Applicant**"), special litigation and compliance counsel to Residential Capital, LLC., *et al.*, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] As further explained below, Applicant also seeks approval of certain fees and expenses incurred prior to the Application Period.

1/2449567.1

2.       The statutory bases for the relief requested herein are sections 328, 330, and 331, of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). This Application has been prepared in accordance with General Order M-389, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, entered December 4, 2009 (the "**Local Guidelines**"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**"). Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as <u>Exhibit A</u>.

## **BACKGROUND**

### A.     **The Chapter 11 Cases**

3.       On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4.       On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

5.       On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Dkt. Nos. 454, 674].

2

B.    **Applicant's Retention and Interim Compensation**

6.      On July 9, 2012, the Debtors filed their application under sections 327(e) and 328

of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 for authorization to

employ Applicant as special litigation and compliance counsel to the Debtors and to approve the

Debtors' alternative billing arrangement with the Applicant [Dkt. No. 721] (the "**Retention**

**Application**").  With the Retention Application, the Debtors filed the Declaration of Robert R.

Maddox, a partner of Applicant, in support of the Retention Application (the "**Initial**

**Supporting Declaration**").  On July 21, 2012, the Debtors filed the Supplemental Declaration

of Mr. Maddox [Dkt. No. 866] in support of the Retention Application, and on August 6, 2012,

filed the Second Supplemental Declaration of Mr. Maddox in support of the Declaration [Dkt.

No. 1008] (such Supplemental Declarations, together with the Initial Supporting Declaration,

shall be referred to hereinafter as the "**Supporting Declaration**").[3]

7.      On August 9, 2012, the Court held a duly-noticed hearing on the Retention

Application.  On August 10, 2012, the Court issued its Memorandum Opinion [Dkt. No. 1077]

approving the Retention Application and overruling certain limited objections thereto.   On

August 20, 2012, the Court entered that certain Order Under Sections 327(e) and 328 of the

Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing (I) the

Employment and Retention of Bradley Arant Boult Cummings LLP as Special Litigation and

Compliance Counsel to the Debtors, *Nunc Pro Tunc* to May 14, 2012, and (II) Approving the

Alternative Billing Arrangement [Dkt. No. 1221] (the "**Retention Order**"),[4]  approving

---

[3] On March 12, 2013, Applicant filed with the Court Mr. Maddox's Third Supplemental Declaration with
respect to Applicant's Retention Application.

[4] By order entered September 27, 2012 [Dkt. No. 1600], the Court denied the motion of Patrick J. Hopper
[Dkt. No. 1351] for reconsideration of the Retention Order.

Applicant's employment pursuant to the Retention Application.  Among other things, the
Retention Order approved the Alternative Billing Arrangement (as such term was defined in the
Retention Order) negotiated among the Debtors and Applicant with respect to the Alternative
Billing Arrangement Matters (as such term was defined in the Retention Order) pursuant to
section 328(a) of the Bankruptcy Code.

8.      On July 17, 2012, the Court entered the *Order Establishing Procedures for
Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim
Compensation Order**") [Dkt. No. 797].  Pursuant to the terms of the Interim Compensation
Order, Applicant, among others, is authorized to submit monthly fee applications to the Debtors
and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc., counsel
for Barclays Bank PLC, and the United States Trustee (collectively, the "**Notice Parties**").

9.      On October 19, 2012, Applicant filed its First Interim Application as Special
Litigation and Compliance Counsel for the Debtors for Compensation and Reimbursement of
Expenses Incurred for the Period May 14, 2012 Through August 31, 2012 (the "**First Interim
Application**") [Dkt. No. 1882].  In the First Interim Application, Applicant requested the
approval of compensation in the amount of $4,207,515.65 and reimbursement of expenses in the
amount of $157,682.41.  In her Omnibus Objection Regarding Fee Applications for First Interim
Compensation and Reimbursement of Expenses (the "**U.S. Trustee Objection**") [Dkt. No.
2361], the U.S. Trustee asserted limited objections to the First Interim Application.  The First
Interim Application and the U.S. Trustee Objection came before this Court for hearing on
December 20, 2012.  Prior to such hearing, through the Debtor's billing reconciliation process,
Applicant agreed to various adjustments to the compensation and expense reimbursement
requests made in the First Interim Application.  Also, prior to the hearing, Applicant and the U.S.

4

Trustee reached an agreement resolving the U.S. Trustee Objection as it pertained to the First Interim Application. Accordingly, on December 28, 2012, this Court entered its order [Dkt. No. 2530] allowing Applicant fees in the reduced amount of $4,060,788.24 and expenses in the reduced amount of $148,999.34.

10.     On November 5, 2012, Applicant served its fifth monthly fee application covering the period from September 1, 2012 through September 30, 2012 (the "**Fifth Monthly Fee Application**") on the Notice Parties.[5]  On November 28, 2012, Applicant served its sixth monthly fee application covering the period from October 1, 2012 through October 31, 2012 (the "**Sixth Monthly Fee Application**") on the Notice Parties.  On December 4, 2012, Applicant served its seventh monthly fee application covering the period from November 1, 2012 through November 30, 2012 (the "**Seventh Monthly Fee Application**." On January 24, 2013, Applicant served its eighth monthly fee application covering the period from December 1, 2012 through December 31, 2012 (the "**Eighth Monthly Fee Application**", and together with the Fifth Monthly Fee Application, the Sixth Monthly Fee Application, and the Seventh Monthly Fee Application, the "**Monthly Fee Applications**") on the Notice Parties.  Applicant did not receive any objections to the Fifth Monthly Fee Application, the Sixth Monthly Fee Application, the Seventh Monthly Fee Application, or the Eighth Monthly Fee Application.  Copies of these Monthly Fee Applications (excluding the supporting invoices transmitted with them, which are omitted for the reasons set forth below) are attached hereto as Exhibit B.

11.     For the convenience of this Court and all parties in interest, attached hereto as Exhibit C is a schedule of the total amount of fees originally billed by Applicant pursuant to the

---

[5] The Fifth Monthly Fee Application incorrectly stated that it covered the period from August 1, 2012 through August 31, 2012, rather than September 1, 2012 through September 30, 2012.

Monthly Fee Applications[6] during the Application Period, organized according to the applicable project categories suggested by the U.S. Trustee in the Guidelines.

12. As of the filing of this Application, and in accordance with the Interim Compensation Order, Applicant has received the following payments from the Debtors with respect to the Fifth Monthly Fee Application, the Sixth Monthly Fee Application, the Seventh Monthly Fee Application, and the Eighth Monthly Fee Application:

| | Compensation Period | Reconciled Fee Amount | Reconciled Expense Amount | Fees Paid to Date | Expenses Paid to Date |
|---|---|---|---|---|---|
| Fifth Monthly Application | 9/1/2012 to 9/30/2012 | $820,169.00 | $45,757.00 | $656,818.95 | $33,230.44 |
| Sixth Monthly Application | 10/1/2012 to 10/31/2012 | $1,091,851.00 | $42,360.00 | $847,519.99 | $41,809.78 |
| Seventh Monthly Application | 11/1/2012 to 11/30/2012 | $1,248,289.00 | $50,885.15 | $669,295.06 | $35,346.59 |
| Eighth Monthly Application | 12/1/2012 to 12/31/2012 | $1,097,486.00 | $88,133.48 | $101,604.37 | $11,301.25 |
| **TOTAL** | | $4,257,795.00 | $227,136.00 | $2,275,238.37 | $121,688.06 |

13. Applicant maintains computerized records of the time expended in the rendering of the professional services required by the Debtors. These records are maintained in the ordinary course of Applicant's practice. For the convenience of this Court and all parties in interest, attached hereto as Exhibit D is a billing summary for the Application Period (the

---

[6] These figures do not reflect the reconciliations made by the Debtors and Applicant after the Monthly Fee Applications were served.

"**Billing Summary**"), setting forth the name of each attorney and paraprofessional who rendered services during the Application Period, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Applicant's current billing rates, and the individual amounts requested for each professional.  The hourly compensation requested by Applicant is based on the customary compensation charged by comparably skilled practitioners in other similar cases under the Bankruptcy Code.  The blended hourly rate for timekeepers (other than paralegals and other paraprofessionals) who billed time during the Application Period is $237.

14.    Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as Exhibit E.

15.    Copies of Applicant's invoices for fees and expenses were served on the Notice Parties with each of the Monthly Fee Applications.  To simplify the review of the Applicant's time records for the hundreds of separate matters it is handling for the Debtors, [7] Applicant has taken the invoices that were attached to the Monthly Fee Applications and re-printed them in a more condensed format compliant with the Guidelines and with the names of the specific billing matters added to them.  Applicant then organized these re-formatted invoices by client-matter, so that all the monthly invoices for a given matter are grouped together, rather than being dispersed

---

[7] At the December 20, 2012 hearing on the Applicant's First Interim Application, the Court commented about the difficulty it encountered when reviewing the Applicant's voluminous time records for the hundreds of matters handled by Applicant for the Debtors.  The Court asked Applicant to confer with the U.S. Trustee about how Applicant could better and more succinctly present its billing records to the Court for review.  Applicant and the U.S. Trustee spoke after that hearing about changes that Applicant could make to its future fee applications to better satisfy both the requirements set forth in the Guidelines and the Debtors' own internal billing procedures.  Applicant has endeavored to address the Court's concerns by making the changes discussed herein.

7

among the various Monthly Fee Applications submissions.[8]  Applicant's re-formatted time and expenses records organized by billing matter are attached hereto collectively as Exhibit F (the "**Supporting Invoices**").

16.     The billing summary attached as Exhibit C and the Supporting Invoices attached as Exhibit F include only those matters on which Applicant bills the Debtors on an hourly basis, including those Alternative Billing arrangement matters that have reached the agreed upon Safety Valve Level and thus, converted to hourly rate billing.[9]  Exhibit C and Exhibit F generally do not include, however, time records for Alternative Billing Arrangement Matters approved pursuant to section 328(a) of the Bankruptcy Code that have not reached the Safety Valve Level by the end of the Application Period.

17.     Each of the Monthly Fee Applications contained a listing of the matters opened during the pertinent application period that constitute Alternative Billing Arrangement Matters and for which the Debtors have agreed during the term of the parties' Alternative Billing Arrangement to pay Applicant a fee of $7,300 for each such matter, subject to subsequent upward increases as described in the Retention Order and the Retention Application.  During the Application Period, Applicant opened sixty-two (62) Alternative Billing Arrangement Matters (the **"New Alternative Billing Arrangement Matters"**) for which Applicant requests compensation for up-front fees totaling $452,600 (the "**New Alternative Billing Arrangement Fees**").  These amounts for New Alternative Billing Arrangement Fees are included in the

---

[8] For example, for each litigation matter Applicant is handling for the Debtors, Applicant has grouped the September, October, November and December invoices for that matter together so the Court and the U.S. Trustee can readily review the work performed by Applicant during the Application Period on such matter.

[9] As more fully described in the Retention Application, with respect to any Alternative Billing Arrangement Matter, if the fees (exclusive of expenses) incurred by Applicant with respect to any case exceed $18,000 (the "Safety Valve Level"), that case is removed from the Alternative Billing Arrangement and is then converted to an hourly-rate payment arrangement.

1/2449567.1

Monthly Fee Applications and this Application's request for compensation. A listing of the New Alternative Billing Arrangement Matters is attached hereto as Exhibit G.

18.     Applicant also requests approval of certain post-petition fees and reimbursement of post-petition expenses incurred by Applicant on behalf of the Debtors prior to the Application Period. First, with respect to Alternative Billing Arrangement Matters that reached the Safety Valve Level between the Petition Date and December 31, 2012 (and thereupon converted to hourly-rate billing and expense reimbursement), Applicant is seeking compensation for its post-conversion fees and expenses in accordance with the parties' Alternative Billing Arrangement. Attached hereto as Exhibit H is a chart listing the Alternative Billing Arrangement Matters that have reached the Safety Valve Level since the Petition Date and the amount of hourly fees and expenses sought by Applicant with respect to each such matter incurred after the Safety Valve Level was reached on such matter. The fees and expenses shown on Exhibit H have been agreed to by the Debtors, were requested in the Monthly Fee Applications, and are included in this Application's request for compensation and reimbursement. The invoices supporting these requested fees and expenses are included among the Supporting Invoices.

19.     Also, Applicant requests compensation and reimbursement of expenses incurred post-petition, but prior to the Application Period, with respect to several class action and other litigation matters that Applicant has been handling on the Debtors' behalf (collectively, the "Class Action Matters").[10] Applicant previously represented both the Debtors and certain non-

---

[10] The Class Action Matters include the following matters: (1) Elizabeth Bowen Lafitte, client-matter 0G2012-301075; (2) Mable Reynolds (Reynolds v. Brian Sheldon and GMAC), client-matter 0G2012-301124; (3) Mayme Brown, client-matter 0R0808-301373; (4) Chatman v. GMAC, client-matter 0R0808-301375; (5) Ruby Robinson v. Homecomings, client-matter 0R0808-301374; and (6) Anthony and Wanda Donaldson (Donaldson v. GMAC), client-matter 0R0808-105109.

1/2449567.1

debtor affiliates of the Debtors in these Class Action Matters; however, in connection with the Debtors' engagement of Applicant as special counsel in their bankruptcy cases, it was agreed that Applicant would withdraw from the further representation of those non-debtor affiliates and henceforth represent only the Debtors in the Class Action Matters.  Between the Petition Date and the beginning of the Application Period, Applicant incurred a total of $45,353.80 in fees and $4,314.01 in expenses with respect to the Class Action Matters.  The Debtors have reviewed Applicants' invoices relating to the Class Action Matters and have approved these invoices on the Debtors' behalf, subject to Bankruptcy Court approval.  Applicants' fees and expenses for the Class Action Matters were requested in the Monthly Fee Applications and are included in this Application's request for compensation and reimbursement.  The invoices supporting these requested fees and expenses are included among the Supporting Invoices.

20.     There is no agreement or understanding between Applicant and any other person, other than partners of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

21.     The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees.  As noted above, pursuant to the ordinary course reconciliation process between the Debtors and Applicant, the parties have agreed that the amount of fees and expenses for which Applicant shall seek compensation is $4,257,795.00 and $227,136.00, respectively, notwithstanding the higher amounts stated in the Monthly Fee Applications.  Applicant respectfully requests, in connection with the relief requested herein, that the Court allow this holdback amount on an interim basis pursuant to sections 330 and 331 of the Bankruptcy Code and authorize and direct the Debtors to pay such amounts.

## DESCRIPTION OF SERVICES AND
## EXPENSES AND RELIEF REQUESTED

22.    In general, Applicant has provided the following services to or on behalf of the

Debtors during the course of their Chapter 11 Cases:

(a)    represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in existing or future litigation concerning claims related to mortgage loans and related servicing practices brought by borrowers against the Debtors and/or such investors primarily, but not exclusively, within the jurisdictions of Alabama, Florida, Kentucky, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, and Texas;

(b)    represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in existing or future consumer and class action litigation relating to the Debtors' mortgage servicing operations;

(c)    represent the Debtors in both litigation and pre-litigation matters involving state and federal regulatory inquiries, title insurance, pooling and servicing agreements, loan repurchase demands, servicing matters, and settlement services issues;

(d)    provide litigation defense and corporate advice to the Debtors regarding a variety of "real-estate-owned" (REO) related issues including title resolution, compliance with city and state ordinances, negotiation of fines/penalties, and the proper maintenance of REO properties;

(e)    advise the Debtors regarding the performance and satisfaction of their obligations under and in compliance with (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among certain of the Debtors, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, among others (the "Consent Order"), (ii) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012 (the "Consent Judgment"), and (iii) all related agreements with the Debtors;

(f)    advise the Debtors regarding compliance with various federal, state, and local laws, statutes, regulations, orders, and similar restrictions regarding the operation of the Debtors' businesses and the performance of their obligations under their servicing, sub-servicing, and related contracts and agreements;

11

(g)  counsel and otherwise advise and assist the Debtors in the development, drafting, review, and revision of practices, policies, and procedures relating to the operation of the Debtors' businesses; and

(h)  counsel and otherwise advise and assist the Debtors with regard to research and review projects as needed and directed by the Debtors in furtherance of the Debtors' ongoing business operations.

23.    To provide an orderly and meaningful summary of the services rendered by Applicant on behalf of the Debtors during the Application Period, Applicant maintained separate internal billing files for the numerous matters it is handling for the Debtors and, in accordance with the Guidelines and its internal billing procedures, has categorized those matters in accordance with the project categories suggested by the U.S. Trustee in the Guidelines.

24.    The following is a summary of the most significant professional services rendered by Applicant during the Application Period organized by project categories suggested by the U.S. Trustee in the Guidelines:

(a)  Litigation (Hourly Rate Matters): Fees -- $1,793,490.44; Total Hours -- 9,823.70.  Since the Petition Date, Applicant has represented the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in approximately 434 litigation and pre-litigation matters concerning claims related to mortgage loans and related servicing practices for which Applicant is to be compensated on an hourly rate basis.  In these matters, Applicant has performed a broad range of litigation services, including reviewing and responding to complaints and lawsuits, preparing and advocating motions to dismiss and for summary judgment, developing case strategy, engaging in discovery, evaluating the impact of the Debtors' bankruptcy on the various litigation matters, evaluating potential risk and exposure, assessing and pursuing settlement opportunities, and appearing in court to advocate and defend the interests of the Debtors in these matters.  These hourly-rate litigation and pre-litigation matters include (i) litigation and pre-litigation files that are not within the scope of the parties' Alternative Billing Arrangement and (ii) litigation and pre-litigation files that are within the scope of the Alternative Billing Arrangement but which have converted to hourly-rate billing because the Safety Valve Level (as such term is defined in paragraph 29(d) of the Retention Application) has been exceeded.  During the Application Period, the average amount of billable fees incurred on these matters is approximately $4,132 per matter, with the maximum amount of billable

12

fees incurred on any one case during the Application Period being $46,096.49. Applicant's time records for these hourly-rate litigation matters are included in Exhibit F attached hereto.

(b)    Litigation (Alternative Billing Arrangement Matters): Fees -- $452,600.00; Files Opened during the Application Period – 62. As more particularly described above, the Debtors have assigned to Applicant since the Petition Date sixty-two (62) new Alternative Billing Arrangement Matters. Pursuant to the parties' Alternative Billing Arrangement, the Debtors have agreed during the term of such arrangement to pay Applicant a fee of $7,300 for each case assigned by the Debtors to Applicant falling within the scope of the Alternative Billing Arrangement, with such fee subject to subsequent upward increases as described in the Retention Order and the Retention Application. The services performed by Applicant with respect to these Alternative Billing Arrangement Matters include a broad range of litigation services, including reviewing and responding to complaints, preparing and advocating motions to dismiss and for summary judgment, developing case strategy, engaging in discovery, evaluating the impact of the Debtors' bankruptcy on the various litigation matters, evaluating potential risk and exposure, assessing and pursuing settlement opportunities, and appearing in court to advocate and defend the interests of the Debtors in these matters. The Monthly Fee Applications contain a list of the Alternative Billing Arrangement Matters assigned by the Debtors to Applicant during the Application Period, with the matters identified by the billing number assigned by the Debtors and the client-matter number assigned by Applicant to each matter. As the Alternative Billing Arrangement was approved by the Court pursuant to section 328(a) of the Bankruptcy Code, hourly time records for these Alternative Billing Arrangement Matters are not included in the Monthly Fee Applications attached hereto, though such records have been maintained by Applicant for all Alternative Billing Arrangement Matters.

(c)    Business Operations / Compliance: Fees -- $1,933,999.90; Total Hours – 7,042.50. During the Application Period, Applicant has advised the Debtors on a host of matters, many of which involve confidential or sensitive information, regarding the Debtors' ongoing operation of its residential mortgage servicing business. Applicant has continued to advise the Debtors regarding their compliance obligations under various federal and state laws and regulations, as well as with respect to their obligations under the Consent Order, the Consent Judgment, and related agreements. Applicant has aided the Debtors in the review, revision, and implementation of policies and procedures intended to assist the Debtors in efficiently performing their duties under the Consent Order, the Consent Judgment, and related agreements, as well as otherwise applicable laws and regulations. Applicant has represented the Debtors' interests with respect to various inquiries, proceedings, and investigations initiated by various federal and state agencies that assert regulatory authority over the

13

Debtors' operations and have communicated regularly with representatives of such agencies regarding such matters and the potential resolution of the same. Applicant has advised the Debtors regarding their third-party vendor retention and evaluation processes and the development of procedures for effective communication and coordination with such vendor, and has also assisted the Debtors in the review and revision of the their internal policies and procedures regarding, among other things, default administration, foreclosure practices, and document review and control. The Debtors frequently consult with Applicant regarding various pre-litigation disputes or issues that arise with respect to specific loan files Applicant also routinely advises the Debtors regarding "real estate owned" (REO) matters involving foreclosed properties for which the Debtors have or may have various responsibilities under their servicing agreements. Applicant has also provided the Debtors with on-site legal support to assist the Debtors' legal department with the day-to-day administration and oversight of the Debtors' substantial mortgage servicing litigation caseload. Applicant's time records for these business operations and compliance matters are included in <u>Exhibit F</u> attached hereto.

(d)     <u>Fee/Employment Applications: Fees -- $102,837.80; Total Hours – 298.50</u>. During the Application Period, Applicant prepared and filed the First Interim Application. Applicant responded to limited objections raised by the U.S. Trustee and researched issues relating to such objections. Applicant negotiated successfully with the U.S. Trustee to resolve her limited objections to the First Interim Application and appeared at the final hearing thereon. Applicant has also incurred time in the preparation of the Monthly Fee Applications and the exhibits thereto in accordance with the terms of the Guidelines and the Interim Compensation Order. In preparing the Monthly Fee Applications, Applicant has expended significant efforts to ensure that the Monthly Fee Applications and are materially compliant with the Guidelines. Applicant's time records for its work on retention and fee application matters are included in <u>Exhibit F</u>. Applicant's fees and expenses relating to this project category represent approximately 2.3% of the total fees and expenses requested by Applicant pursuant to this Application.

25.    The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases. With the exception of the Alternative Billing Arrangement Matters, the time records attached hereto as <u>Exhibit E</u> present more completely the work performed by Applicant in each billing category during the Application Period.

14

26.    With respect to the Alternative Billing Arrangement Matters, the Retention Order provides that, notwithstanding its approval of the Alternative Billing Arrangement, "the Court may allow compensation different that that provided [under the Alternative Billing Arrangement] if the terms and conditions of the Alternative Billing Arrangement prove to have been improvident in light of developments not capable of being anticipated as of the date of [the Retention Order]." *See* Retention Order, ¶ 3. Applicant is not aware of any developments that have occurred that were not capable of being anticipated as of the date of the Retention Order that might cause the Court to find that that the terms and conditions of the Alternative Billing Arrangement approved by this Court were improvident. Accordingly, pursuant to section 328 of the Bankruptcy Code and the Retention Order, Applicant respectfully requests approval of these Alternative Billing Arrangement Fees.

## **CONCLUSION**

27.    Applicant believes that the services rendered during the Application Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330 and that the expenses requested were actual and necessary to the performance of Applicant's services. Moreover, with respect to the Alternative Billing Arrangement Fees, Applicant submits that such fees are due to be approved pursuant to section 328(a) of the Bankruptcy Code.

28.    Applicant therefore requests an order (i) approving interim compensation in the amount of $4,257,795.00 and interim reimbursement of expenses in the amount of $227,136.00,[11] (ii) directing prompt payment of all compensation requested in connection with

---

[11] The rates charged for such expenses are (i) equivalent to what Applicant normally bills to its non-bankruptcy clients and (ii) calculated to compensate Applicant for only its actual costs of the expenses.

1/2449567.1

the Monthly Fee Applications, including the Alternative Billing Arrangement Fees and any hold

back amounts, as subsequently adjusted through the Debtors' billing reconciliation process, and

(iii) granting such other and further relief as may be just and proper.

Dated: March 13, 2013

        */s/ Jay R. Bender*
Robert W. Maddox, Esq.
Jay R. Bender, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Fax: (205) 521-8800

*Special Litigation and Compliance Counsel*
*for the Debtors*

16

**EXHIBIT A**

Bradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama  35203
Phone:  (205) 521-8000
Fax:  (205) 521-8800
Robert W. Maddox, Esq.
Jay R. Bender, Esq.

*Special Litigation and Compliance Counsel*
*for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
|  | ) |  |
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
-------------------------------------------------------------------

**CERTIFICATION UNDER GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF
SECOND INTERIM APPLICATION OF BRADLEY ARANT
BOULT CUMMINGS LLP AS SPECIAL LITIGATION AND COMPLIANCE
COUNSEL FOR THE DEBTORS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE
PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

I, Jay Bender, hereby certify that:

1.    I am a partner with the applicant firm, Bradley Arant Boult Cummings LLP (the

"**Firm**"), which serves as special litigation and compliance counsel to Residential Capital, LLC.,

*et al.*, as debtors and debtors in possession (collectively, the "**Debtors**").

2.    This certification is made in respect of the Firm's compliance with the *Amended*

*Guidelines for Fees and Disbursements for Professionals in Southern District of New York*

*Bankruptcy Cases*, Administrative Order M-389, adopted by the Court on December 4, 2009 (the

17

"**Local Guidelines**"), the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996* (the "**UST Guidelines**") and the *Order to Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") [Dkt. No. 172], and collectively with the Local Guidelines and UST Guidelines, the "**Guidelines**"), in connection with the Firm's second application, dated March 13, 2013 (the "**Application**"), for interim compensation and reimbursement of expenses for the period commencing September 1, 2012, through and including December 31, 2012, in accordance with the Guidelines.

3.      In respect of Section B.1 of the Local Guidelines, I certify that:

(a)      I have read the Application;

(b)      to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and expenses sought fall within the Guidelines, except as specifically noted in the Application or herein;

(c)      the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by the Firm and generally accepted by the Firm's clients; and

(d)      in providing the reimbursable services reflected in the Application, the Firm did not make a profit on those services, whether performed by the Firm in-house or through a third party.

4.      In respect of Section A.2 of the Local Guidelines and as required by the Interim Compensation Order, I certify that the Firm has complied with the provisions requiring it to provide the United States Trustee for the Southern District of New York and the Debtors and their attorneys with a statement of the Firm's fees and expenses accrued for each month within the Application Period.  Applicant has provided the Debtors with the Application prior to the filing of it with the Court.

18

1/2449567.1

5.      Applicant's time records were prepared contemporaneously with the services performed and substantially conform to the Guidelines' requirements.  With respect to one matter handled by Applicant on the Debtors' behalf (client-matter number 0R0802-301134), Applicant's time entries do not conform strictly to the task-billing format outlined in Section (b)(4)(v) of the U.S. Trustee Guidelines.  The services of Applicant under that client-matter number were performed primarily by one attorney who, at the Debtors' request, worked for a period of time at the Debtors' offices with the Debtors' in-house legal department and litigation case managers assisting them with litigation strategy and case management and oversight. Applicant's time records, though contemporaneously maintained and detailed in description, generally "lump" tasks together into one daily time entry.  Applicant submits that its billing records for this matter provide sufficient detail to support Applicant's request for compensation with respect thereto.  To the extent these time records, or any other aspects of the Application, do not fully comply with the Guidelines' requirements, Applicant respectfully requests a waiver of such requirements.

6.      To protect against the inadvertent over-reporting of billed time, Applicant's billing system issues an alert if a timekeeper attempts to record more than 18 hours in a given day.  Upon information and belief, no timekeeper of the Applicant has billed in excess of this 18-hour threshold in any given day during the Application Period.

7.      In respect of Section A.3 of the Local Guidelines, I certify that each of the United States Trustee for the Southern District of New York, the Debtors, counsel for the Debtors, and counsel for the Creditors' Committee is being provided with a copy of the Application.

19

Dated: March 13, 2013

_/s/ Jay R. Bender_____

Jay R. Bender, Esq.
Bradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama  35203
Phone:  (205) 521-8000
Fax:  (205) 521-8800

*Special Litigation and Compliance Counsel*
*for the Debtors*

## EXHIBIT B

**MONTHLY FEE APPLICATIONS OF BRADLEY ARANT BOULT CUMMINGS LLP
ON BEHALF OF THE DEBTORS FOR THE MONTHS OF SEPTEMBER, OCTOBER,
NOVEMBER AND DECEMBER 2012**
**(Excluding Invoices Originally Attached to Monthly Fee Applications)**

**[Filed Separately]**

1/2449567.1

## <u>EXHIBIT C</u>

**SUMMARY OF PROFESSIONAL SERVICES RENDERED BY PROJECT CATEGORY
BY BRADLEY ARANT BOULT CUMMINGS LLP ON BEHALF OF THE DEBTORS
FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

**[Filed Separately]**

22

## <u>EXHIBIT D</u>

**SUMMARY OF PROFESSIONAL SERVICES RENDERED BY PROFESSIONAL BY BRADLEY ARANT BOULT CUMMINGS LLP ON BEHALF OF THE DEBTORS FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

**[Filed Separately]**

1/2449567.1

## EXHIBIT E

**SUMMARY OF EXPENSES INCURRED BY BRADLEY ARANT BOULT CUMMINGS
LLP ON BEHALF OF THE DEBTORS FOR THE PERIOD SEPTEMBER 1, 2012
THROUGH DECEMBER 31, 2012**

**[Filed Separately]**

1/2449567.1

# EXHIBIT F

## SUPPORTING INVOICES

**[Filed Separately]**

## EXHIBIT G

**LIST OF NEW ALTERNATIVE BILLING ARRANGEMENT MATTERRS**

**[Filed Separately]**

1/2449567.1

## EXHIBIT H

**ALTERNATIVE BILLING ARRANGEMENT MATTERS THAT HAVE REACHED
SAFETY VALVE SINCE PETITION DATE**

**[Filed Separately]**

1/2449567.1