Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: March 11, 2013 at 4:00 p.m. (Prevailing Eastern Time)

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950

*Creditor, Pro Se*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

### NOTICE OF OBJECTION TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(a) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION

**PLEASE TAKE NOTICE** that the undersigned has filed the attached OBJECTION to *Debtors' Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination that (I) GMAC Mortgage's FRB Foreclosure Review Obligation is a General Unsecured Claim and (II) The Automatic Stay Prevents enforcement of the FRB Foreclosure Review Obligation* (the "**Objection**").

Respectfully submitted, this 11th day of March, 2013.

_____
Frank Reed
Creditor, Pro Se

**Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 11, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950

*Creditor, Pro Se*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERALUNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION**

1. Please take Notice that I, Frank Reed, creditor pro se, do herby object to Debtors' motion pursuant to bankruptcy rule 3013 and bankruptcy code section 362(A) for a determination that (I) GMAC Mortgage's FRB Foreclosure Review obligation is a general unsecured claim and (II) the automatic stay prevents enforcement of the FRB Foreclosure Review Obligation.

**I. GMAC Mortgage's FRB Foreclosure Review obligation is NOT a general unsecured "Claim"**

2. Debtors have asserted in their motion that other entities regulated by the same regulators and subject to similar regulatory enforcement actions (consent orders) have now

revised their consent orders to allow for the payment of set dollar amounts in lieu of performing Independent Foreclosure Reviews. Quoting Debtor's Motion:

> ***F. The FRB and Other Governmental Entities Reach a Settlement Permitting Servicers to Pay Money in Resolution of their Foreclosure Review Obligations***
>
> *21. On January 7, 2013, the Federal Reserve Board announced a resolution of foreclosure review requirements contained in consent orders with ten major non-debtor mortgage servicers.[6] Marano Decl. ¶ 10. The related consent orders and the foreclosure review requirements contained in those orders are nearly identical to the Debtors' Consent Order and FRB Foreclosure Review requirement. Id. A sampling of the foreclosure review requirements contained in five of those non-debtor mortgage servicer consent orders is attached to this Motion as Exhibit 4.*
>
> *22. Under the settlement, "fulfillment of the agreement [by the ten participating mortgage servicers] would meet the requirements of the enforcement actions that mandated that servicers retain independent consultants to conduct an Independent Foreclosure Review . . . . As a result of this agreement, the participating servicers would cease the Independent Foreclosure Review which involves case-by-case reviews, and replace it with a broader framework allowing eligible borrowers to receive compensation significantly more quickly" Id. The settlement further dictates that a payment agent will be appointed to administer payments. Id.*
>
> ---
>
> [6]*See Independent Foreclosure Review to Provide $3.3 Billion in Payments, $5.2 Billion in Mortgage Assistance, http://www.federalreserve.gov/newsevents/press/bcreg/20130107a.htm (the "FRB Press Release").*
> *12-12020-mg Doc 3055 Filed 02/27/13 Entered 02/27/13 21:05:01 Main Document*
>
> *(DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION, at 9 -10)*

3. This assertion by Debtor is true, but it is NOT relevant to Debtor. Debtor itself does not have such an agreement with the appropriate regulating authorities. Thus, Debtor is still bound by its existing consent order, (which they attached to their motion as Exhibit 3).

4. Now, since Debtor has not converted its obligations under the consent order to solely require financial remediation, the consent order that is currently in force demands specific performance of the debtor; and specific performance is not subject to the definition of the term "claim" under the bankruptcy code.

5. Specifically, the FRB consent order requires the Debtor to undertake the Independent Foreclosure Review to determine harm to borrowers that can result in the debtor having to either pay financial remediation **OR perform specific acts** such as, but not limited to returning real property wrongfully taken, OR **currently in the process of being taken** in foreclosure actions, correcting erroneous credit reporting, (possibly ongoing), modify mortgage contracts, (again currently ongoing), or performing contract rescission, DEPENDING ON the harm done or more poignantly, ***harm which may still be ongoing***.

6. Therefore, Debtor is absolutely incorrect when it states that "The FRB Foreclosure Review, an Equitable Remedy, is Not Intended to End or Ameliorate Ongoing Violations of the Law." (Debtor's Motion, at p. 14). Essentially, the FRB consent order requires that the debtor *specifically perform* the FRB Foreclosure Review to determine and identify any further *specific performance* it may have to undertake.

7. **An FRB Foreclosure Review document made public by the Federal Reserve Bank clearly indicates that specific performance may be required to correct current ongoing harms.** (see: Office of the Comptroller of the Currency Board of Governors of the Federal Reserve System JUNE 21, 2012 FINANCIAL REMEDIATION FRAMEWORK FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW, attached hereto as Exhibit 1).

8. Additionally, it has long been held by this Court and American law in general that real estate has such unique characteristics that specific performance is the rule not the exception when a remedy is required to cure wrongful acts affecting the property, (especially someone's home), and the current FRB consent order reflects this principle. Therefore, no amount of

money can compensate for the unique nature of the harm the current FRB consent order is meant to remedy. Specific performance is the only remedy and it must be completed.

**II. The FRB Foreclosure Review Obligation IS Entitled to Administrative Expense Priority Under Bankruptcy Code Section 503(b)**

9. In order to obtain an administrative expense priority, the claimant must show that "the expense:

(1) arises out of a transaction between creditor and bankruptcy estate; and

(2) that the expense was a 'necessary' expense of the bankruptcy estate by showing the debt directly and substantially benefitted the estate."

Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim, LLC), 456 B.R. 185, 192 (S.D.N.Y.2011) (internal quotation marks and citation omitted).

10. Addressing prong number (1) above, the specific transaction, between creditor(s), (in this case the FRB and FDIC), and Debtor is not the consent order in and of itself, but the debtor's assumption of liability and waiver of its bankruptcy defenses post its filing of its Chapter 11 petition, which is a separate and distinct transaction from the acceptance of the original consent order. Debtor did this in at several points. The first being when debtor's Chief Financial Officer stated in writing to all parties of interest the following: **"Debtors intend to comply with and adhere to the terms of the (FRB) Consent Order"** (AFFIDAVIT OF JAMES WHITLINGER, CHIEF FINANCIAL OFFICER OF RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS, p. 38 at ¶ 87). This satisfying the the rule from Goldman, Sachs & Co. v. Esso Virgin Is., Inc. (In re Duplan Corp.), 212 F.3d 144, 151 (2d Cir. 2000) ([where]a claim arises when "the relationship between the debtor and the creditor contain[s] all of the elements necessary to give rise to a legal obligation") p, 19 of motion. In this instant case, the affirmative acts of waiver and assumption.

11. Now, there is a clear and indisputable reason debtor chose to waive its rights and assumed its continued obligation under the FRB consent order, and that reason is expressly tied

to prong number (2) in paragraph 9 above. The reason debtor did NOT immediately move to eliminate its obligations under the FRB consent order upon its Chapter 11 filing is PRECISELY due to the fact that debtor knew that Debtor's continuing specific performance required by the FRB consent orders would "substantially benefit the estate".

12. Debtor was able to 1) obtain Debtor in possession financing and 2) secure the sale of the assets, (its notes and servicing platforms affected by the FRB consent order), free and clear of claims, thus maximizing the assets benefit to the estate. The purchasers of those assets were informed by the debtor ***POST to its Chapter 11 filing*** via disclosure and subsequent sale contract , (taking judicial notice of those documents on file with the court ), that debtor would be assuming the liability for the costs and results of the obligations arising under the FRB consent order. (Note: Again, this is indisputable proof that debtor's transaction is not the original consent order, but the assumption of liability post filing).

13. It would can be logically inferred that if debtor ***was not*** actively waiving its rights to absolve itself of the obligations pursuant to the FRB consent order via its rights afforded it under Chapter 11, then it should have FIRST moved to eliminate those obligations PRIOR to the sale of the assets, but it did not do so; instead debtor voluntarily assumed them. Therefore, debtor is bound by both its waiver of rights and clear assumption of liability post filing AND the fact that the estate IS benefitting from the sale of the affected assets.

**III. There is a More Direct and Expeditious Method for Debtor to Conserve the Estate in Its Possession while Reducing Further Risk to the Estate.**

14. Additionally, there is another significant issue to consider. If debtor's pending motion is granted then it may expose the estate to further litigation by those third party beneficiaries of the FRB consent order, who did not object to the sale of the debtor estate's assets or file a proof of claim. Debtor should be estopped from moving to change their obligation under the consent order as these beneficiaries detrimentally relied on the Debtor's clear assertions that it would honor the obligations pursuant to the FRB consent order. It must be

noted that these cases could number in THE TENS of THOUSANDS as that is how many claimants filed for reviews pursuant to the FRB consent order. The filing of these cases alone would significantly harm the estate, let alone if they were to result in a large amount of adverse judgments.

15. My instant objection and the specter of much further exposure to risk of litigation to the estate can be avoided by debtor if it were to withdraw its present motion and instead purse a more direct and expeditious method to conserve the estate in its possession.

16. Debtor's parent, Ally Bank, is both solvent and an equally liable signatory to the FRB consent order governing the debtor. As such, it is equally bound by all of its provisions. Therefore, debtor should in fact pursue Ally Bank for some of, if not all of the cost of compliance with the FRB consent order.

17. It is not insignificant to note, that the FRB is a U. S. Federal entity and that Ally Bank is 74% owned by the Federal Government. One would think that given the fact that both entities in question (the FRB and Ally Bank) are ostensibly controlled by the same entity, the U.S. Federal government, that Ally should, as a matter of policy, be fully willing and able to comply with the FRB consent order.

**IV. Debtor's Motion for Relief Sought Should be Denied.**

18. Now, whereas GMAC Mortgage's FRB Foreclosure Review obligation pursuant to the consent order is NOT a general unsecured "Claim", the FRB Foreclosure Review Obligation IS Entitled to Administrative Expense Priority Under Bankruptcy Code Section 503(b), and that Debtor has a clearly less risky and direct way to conserve the estate in its possession as detailed in all the reasons above, Debtor's motion should be denied.

Respectfully submitted, this 8th day of March, 2013.

_____
Frank Reed
Creditor, Pro Se

EXHIBIT

1

**Office of the Comptroller of the Currency**
**Board of Governors of the Federal Reserve System**

## JUNE 21, 2012
## FINANCIAL REMEDIATION FRAMEWORK
## FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW

In April 2011, federal banking regulators issued enforcement orders against 14 large mortgage servicers for deficient mortgage servicing and foreclosure practices. The orders required those servicers to retain independent consultants to conduct a comprehensive review of foreclosures that were in process or completed in 2009 or 2010 (the Independent Foreclosure Review) to identify financial injury to borrowers that resulted from errors, misrepresentations, and other deficiencies in the foreclosure process. The Independent Foreclosure Review also requires those servicers to provide compensation or other remediation for identified financial injury.

The OCC and FRB have developed a financial remediation framework (the Framework) that provides examples of situations where compensation or other remediation is required for financial injury due to servicer errors, misrepresentations, or other deficiencies. The independent consultants will use the Framework to recommend remediation for financial injury identified during the Independent Foreclosure Review. The servicers will prepare remediation plans based on the independent consultants' recommendations. The federal banking regulators must approve each servicer's remediation plan.

The categories included in the Framework are not intended to be exhaustive or to cover all possible situations or remediation options for borrowers who may require compensation or other remediation for financial injury. It is important to read the Frequently Asked Questions (FAQs) that accompany the Framework to understand how remediation will work.

*OCC FRB Financial Remediation Framework*
*Independent Foreclosure Review*

| No. | Category | Error | Description | Foreclosure In Process (AT TIME OF REMEDIATION) Remedy | Dollar Payment | Foreclosure Complete (AT TIME OF REMEDIATION) Remedy | Dollar Payment |
|---|---|---|---|---|---|---|---|
| 1 | Servicemembers Civil Relief Act (SCRA) | SCRA violation | Servicer foreclosed on a borrower in violation of the SCRA. | Suspend foreclosure. | N/A | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|   |   |   |   |   |   | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency, and correct credit reports. | $125,000 plus equity |
| 2 | Borrower Not in Default | Borrower not in default when foreclosure occurred or in default as direct result of servicer error | Servicer initiated foreclosure or foreclosed on borrower who was not in default on mortgage or in default only directly due to servicer error. | Cancel foreclosure; pay $5,000, correct servicer record for late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $5,000 | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|   |   |   |   |   |   | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency, and correct credit reports. | $125,000 plus equity |
| 3a | Error after Trial Loan Modification Completed | Failure to convert written trial-period plan to permanent modification | Servicer failed to convert borrower to permanent modification after successful completion of written trial-period plan. | Suspend foreclosure as required by program; pay $5,000, provide permanent loan modification, correct servicer record for any improper amounts, and correct credit reports. | $5,000 | Rescind foreclosure when possible and provide permanent loan modification; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|   |   |   |   | If servicer cannot provide permanent loan modification; pay $35,000, correct servicer record for any improper amounts, and correct credit reports. | $35,000 | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $125,000 plus equity, less offset |

1

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | Category | Error | Description | Foreclosure in Process (at time of Remediation) | | Foreclosure Complete (at time of Remediation) | |
|---|---|---|---|---|---|---|---|
| | | | | Remedy | Dollar Payment | Remedy | Dollar Payment |
| 3b | Error after Trial Loan Modification Approved | Foreclosure completed during written trial-period plan for a permanent modification | Servicer foreclosed on borrower prior to expiration of written trial-period plan while borrower was performing all requirements of the written trial-period plan. | N/A | N/A | Rescind foreclosure when possible and provide trial-period plan; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
| | | | | | | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $125,000 plus equity, less offset |
| 4 | Forbearance Plan | Foreclosure completed when borrower performing under documented forbearance plan | Servicer completed foreclosure on borrower before documented forbearance period expired while borrower was meeting all requirements of documented forbearance plan. | N/A | N/A | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
| | | | | | | If rescission of foreclosure is not possible; pay $60,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $60,000 plus equity, less offset |

2

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROCESS (AT TIME OF REMEDIATION) Remedy | Dollar Payment | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) Remedy | Dollar Payment |
|---|---|---|---|---|---|---|---|
| 5 | Loan Modification Application | Loan modification application denied in error, or servicer failed to complete loan modification application where borrower would have qualified was never decisioned | Servicer denied borrower application for loan modification that should have been approved, or servicer failed to decision complete loan modification application for which borrower would have qualified. | Suspend foreclosure as required by program and where loan modification permitted based on past documentation; pay $2,500, provide loan modification for which borrower should have been approved, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $2,500 | Rescind foreclosure and provide loan modification for which borrower should have been approved based on past documentation when possible; pay $5,000, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $5,000 |
| | | | | Suspend foreclosure as required by program and where loan modification not permitted based on past documentation; pay $10,000, offer existing loan modification or other loss mitigation programs, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $10,000 | If either rescission of foreclosure is not possible or where loan modification not permitted based on past documentation; pay $15,000 plus equity, remedy deficiency for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $15,000 plus equity |
| 6 | Loan Modification Application | No follow up on loan modification application | Servicer never followed up to obtain complete loan modification documents as required under HAMP or other program designated by regulator. | Pay $2,000 and offer existing loan modification or other loss mitigation programs. | $2,000 | Pay $2,000. | $2,000 |
| 7 | Loan Modification Application | Never solicited loan modification | Servicer never solicited borrower loan modification option as required under HAMP or other program designated by regulator. | Pay $1,000 and offer existing loan modification or other loss mitigation programs. | $1,000 | Pay $1,000. | $1,000 |
| 8 | Loan Modification Application | Failed to approve modification in prescribed timeframe | Servicer approved borrower for loan modification under HAMP or other program designated by regulator, but did not make decision within required timeframe. | Correct servicer record for excess interest accrued by borrower. | N/A | Remedy deficiency for excess interest. | N/A |

3

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROCESS (AT TIME OF REMEDIATION) | | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) | |
|---|---|---|---|---|---|---|---|
| | | | | Remedy | Dollar Payment | Remedy | Dollar Payment |
| 9 | Loan Modification | Used wrong interest rate in an approved modification | Servicer error resulted in loan modification with higher interest rate than borrower should have been charged under HAMP or other loan modification program designated by regulator. | Correct servicer record for excess interest accrued by borrower. | N/A | Remedy deficiency for excess interest. | N/A |
| 10 | Bankruptcy | Bankruptcy | Servicer initiated foreclosure or foreclosed on borrower who was protected by federal bankruptcy law. | Remediation determined on a case-by-case basis as bankruptcy law dictates. | | | |
| 11 | No Standing | Servicer did not have standing to foreclose | Servicer initiated foreclosure or foreclosed on borrower, but lacked standing to foreclose. | Remediation determined on a case-by-case basis as state law dictates. | | | |
| 12 | Notice | Servicer failed to provide legally sufficient notice | Servicer initiated foreclosure or foreclosed on borrower and either failed to provide any notice or legally sufficient notice as required under state law. | Remediation determined on a case-by-case basis as state law dictates. | | | |
| 13 | General | Error caused financial injury | Servicer error occurred that did not directly cause foreclosure, but did directly result in financial injury to borrower. | Suspend foreclosure where appropriate, correct servicer record for amounts in error and/or reimburse borrower for amounts paid in error, plus interest; and where required, correct credit reports and pay $500 for credit reporting error. | Case-by-case basis | Remedy deficiency for amounts in error and/or reimburse borrower for amounts paid in error, plus interest; and where required, correct credit reports and pay $500 for credit reporting error. | Case-by-case basis |

4

**Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 11, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950

*Creditor, Pro Se*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF FRANK REED, CREDITOR, IN OPPOSITION TO DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION**

I, Frank Reed, under penalty of perjury, declare as follows:

1. In 2009 GMAC was found to have violated my rights under New Jersey State foreclosure law by the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction) and as a result of its violation of New Jersey State foreclosure law, GMAC caused me harm, and CONTINUES TO CAUSE me direct harm by CONTINUING to violate relevant foreclosure law. Specifically, GMAC's acts have destroyed and continues to destroy the liquidity and market value of my home and my long held banking relationships.

2. GMAC's continued actions have interrupted vital cash flow which has and continues to cause direct, deep and irreversible catastrophic damage to a lifetime of work and accumulated net worth. The result of this damage, if not halted and remediated, will be the homelessness of me, my wife and our 6 children.

3. This scenario is recognized as remediable pursuant to, but not limited to, category item number 12 of the Office of the Comptroller of the Currency - Board of Governors of the Federal Reserve System - JUNE 21, 2012 - FINANCIAL REMEDIATION FRAMEWORK - FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW. (see attached hereto as Exhibit 1)

4. Pursuant to the FRB consent orders establishing the Independent Foreclosure Review, I, along with a myriad of professionals in my employ, assembled and submitted a 381 page comprehensive claim for ***specific performance*** and financial remediation.

5. I specifically did not file an objection to debtor's sale of its assets as I relied on debtor's express and public assertions in writing to this very Court that it would comply with the consent order and complete the FRB Independent Foreclosure Review, filed after its filing of its chapter 11 petition.

6. I did not file an adversary action in debtor's instant case seeking specific performance relating to the note on my home to which debtor had legal but not equitable title as I relied on debtor's express and public assertions in writing to this very Court that it would comply with the consent order and complete the FRB Independent Foreclosure Review, filed after its filing of its chapter 11 petition.

7. Contemporaneous with drafting this declaration, I spoke to Mr. James W. Nelson Senior Vice President, Supervision and Regulation Department, Federal Reserve Bank of Chicago 230 South LaSalle Street Chicago, Illinois 60604-1413, the FRB officer responsible for enforcing the FRB consent order against debtor and he stated to me that debtor does not have an modified agreement with the FRB that would reduce its obligation under the consent order to a mere financial one. In fact, Mr. Nelson said that ***the consent order continues in full force and***

*effect* and that the independent financial review should be continuing. Confirmation of this can be found on the FRB website which states: "For borrowers with mortgage loans with the following servicers: EverBank/EverHome Mortgage Company, Financial Freedom (OneWest), GMAC Mortgage, and IndyMac Mortgage Services (OneWest), the Independent Foreclosure Review process continues." (ref: http://www.federalreserve.gov/consumerinfo/independent-foreclosure-review.htm ).

Respectfully submitted, this 8th day of March, 2013.

Frank Reed
Creditor, Pro Se

**Hearing Date and Time: March 21, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: March 11, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950

*Creditor, Pro Se*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**PROOF OF SERVICE OF CREDITOR PRO SE'S OBJECTION TO
DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 3013 AND BANKRUPTCY CODE SECTION 362(a) FOR
A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB
FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED
CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT
OF THE FRB FORECLOSURE REVIEW OBLIGATION**

PLEASE TAKE NOTICE that copies of my objection, to DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(a) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION have been made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], and have been served, so as to be received no later than March 11, 2013 at 4:00 p.m. (Prevailing Eastern Time), upon the following parties;

(a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Lorenzo Marinuzzi, Stefan W. Engelhardt and James A. Newton); (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: U.S. Attorney General, Eric H. Holder, Jr.); (d) the Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. & Enid N. Stuart, Esq.); (e) the Office of the U.S. Attorney for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri); (g) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, NY 10036 (Attention: Ken Ziman & Jonathan H. Hofer); (h) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein & Greg Horowitz); (i) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco & Adam Lesman); (j) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper & Seth Goldman); (k) the Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133,

Philadelphia, PA 19104-5016); (l) the Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director); and (m) Office of Inspector General, c/o Board of Governors of the Federal Reserve System, 20th Street and Constitution Avenue, N.W., Washington, D.C. 20551 (Attention: Richard Ashton).

I solemnly swear the above to be true and accurate to the best of my knowledge.

Dated: March 11, 2013

Frank Reed

Creditor, Pro Se