Richard M. Cieri
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

**ALLY FINANCIAL INC'S OBJECTION TO MOTION OF THE EXAMINER FOR ENTRY OF AN ORDER MODIFYING THE UNIFORM PROTECTIVE ORDER FOR EXAMINER DISCOVERY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................2

BASIS FOR OBJECTION..............................................................................................7

I. The Modified Protective Order Cannot Supersede the Bank Examination Privilege. ............................................................................................7

II. The Proposed Modification Should Preserve The Right To Seek Judicial Relief. ..........................................................................................................9

III. Any Proposed Modification Should Only Apply To The Examiner. ....................12

CONCLUSION............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of China v. St. Paul Mercury Ins., Co.*,
2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004) .......... 7, 8

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
272 F.R.D. 369 (S.D.N.Y. 2011) .......... 10

*In re Asia Global Crossing, Ltd.*,
322 B.R. 247 (Bankr. S.D.N.Y. 2005) .......... 9

*In re Citigroup Bond Litig.*,
2011 WL 8210671 (S.D.N.Y. Dec. 5, 2011) .......... 8, 9

*In re Copper Market Antitrust Litig.*,
200 F.R.D. 213 (S.D.N.Y. 2001) .......... 10

*Lee v. FDIC*,
923 F. Supp. 451 (S.D.N.Y. 1996) .......... 8

*Linde v. Arab Bank*, PLC,
2009 WL 3055282 (E.D.N.Y. Sept. 21, 2009) .......... 7

*Merchants Bank v. Vescio*,
205 B.R. 37 (D. Vt. 1997) .......... 8

*Principe v. Crossland Sav., FSB*,
149 F.R.D. 444 (E.D.N.Y. 1993) .......... 8

*Synergetics USA, Inc. v. Alcon Labs., Inc.*,
2009 WL 2016795 (S.D.N.Y. July 9, 2009) .......... 11

**Statutes and Rules**

11 U.S.C. § 1106 .......... 11

12 C.F.R. § 261.14(a)(8) .......... 8

12 C.F.R. § 309.5(g)(8) .......... 8

12 C.F.R. § 309.6(a) .......... 8

12 C.F.R. § 309.6(b) .......... 8

12 C.F.R. § 4.32(b)(1)(i) .......... 8

12 C.F.R. § 4.37 .......... 8

Fed. R. Bankr. P. 2004 .......... 2

Fed. R. Bankr. P. 7026 .......... 13

Fed. R. Civ. P. 26 .......... 13

Fed. R. Civ. P. 26(b)(5)(B) .......... 10

Fed. R. Evid. 1101 .......... 13

Fed. R. Evid. 502 .......... 13

Fed. R. Evid. 502(b) .......... 10

## PRELIMINARY STATEMENT

Ally Financial Inc. ("***Ally***") hereby objects to the Motion of the Examiner for Entry of an Order Modifying the Uniform Protective Order for Examiner Discovery [ECF No. 3092] and proposes a modified amendment to the *Order (I) Granting Examiner Authority To Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons and Entities, (II) Establishing Procedures for Responding to those Subpoenas (III) Approving Establishment of a Document Depository and Procedures To Govern Use, and (IV) Approving Protective Order* (the "***Protective Order***") [ECF No. 1223] to address the Examiner's request. In support its objection, Ally respectfully states as follows:

1. The parties have engaged in good-faith discovery with the Examiner since last August, and have conducted that discovery with the understanding that it was governed by the Protective Order — the Protective Order which was proposed and drafted by the Examiner's counsel. To the extent the Examiner's counsel seeks to alter the parties' settled expectations, certain limited measures must be inserted to ensure protection for the parties that have produced millions of pages of documents and to ensure the Protective Order as modified complies with federal law.

2. Ally understands the Examiner's desire for finality of the discovery process. Although Ally does not object to parts of the Examiner's proposed order amending the Protective Order, including the establishment of a deadline after which certain limits are imposed on the automatic clawback of documents subject to the attorney-client privilege, any amendment must address three important issues: *First*, any modification of the Protective Order cannot change the legal requirements with respect to documents covered by the bank examination privilege. *Second*, the modification of the Protective Order cannot change the obligations of counsel

imposed by the federal rules and other rules regarding the discovery of privileged documents. Accordingly, any modification to the Protective Order must permit a party to seek leave of Court to make a request for the return of privileged information, even after the proposed deadline for automatic clawbacks has passed. *Third*, Ally requests clarification that any modification of the Protective Order applies only to material produced to the Examiner, and for use exclusively by the Examiner. Whereas the Examiner has justified its extraordinary request to limit parties' ability to clawback privileged documents based on its need to complete its report in a timely manner, this justification does not apply to any other party. As such, Ally requests clarification that the proposed modifications apply solely to the Examiner — a clarification that the Examiner has indicated that it does not oppose.

3. Ally has attached to this brief its modification to the Examiner's proposed amendment to the Protective Order, showing the modifications Ally proposes to address these issues (which Ally raised with the Examiner on March 4, 2013 and again after the Examiner filed its Motion). By making these modifications, the Court will ensure that the extraordinary relief sought by the Examiner complies with applicable law and adequately protects the parties that have been cooperating with the Examiner's investigation and producing documents subject to the agreed-upon Protective Order. Such an approach balances the equities regarding the production and clawback of privileged material while remaining consistent with applicable privileges, rules, and federal law.

## BACKGROUND

### Discovery Pursuant to the Original Protective Order

4. On August 20, 2012, the Court issued an Order authorizing the Examiner to issue subpoenas for the production of documents and examinations of individuals and entities. Pursuant to that authorization and Federal Rule of Bankruptcy Procedure 2004, the Examiner has

issued subpoenas and has received broad discovery from more than a dozen entities. As the Examiner set forth in its Motion, these entities have produced more than a million documents totaling over 8 million pages.

5. For its part, Ally has worked with the Examiner in good faith since his appointment. To date, Ally has produced more than 100,000 documents (almost 900,000 pages). In consultation with the Examiner and in light of the expedited nature of the Examiner's review, Ally substantially completed its production by mid-December 2012, in advance of other parties. In addition, Ally has already made more than 20 of its employees or former employees available for interview (some for multiple days), and the Examiner has requested interviews of additional employees, former employees, or advisors, which are scheduled to be conducted over the next several weeks.

6. To facilitate its work, the Examiner, through its counsel at Chadbourne & Parke LLP, proposed and drafted a Uniform Protective Order Regarding Examiner Discovery, which concerns certain confidentiality and privilege designations for materials produced to the Examiner. The Court entered the Protective Order — which again was proposed and drafted by the Examiner's counsel — on August 20, 2012.

7. As relevant here, Paragraph 26 of the Protective Order contains a "clawback" provision (which is standard in such orders) that allows a disclosing party to clawback any inadvertently or mistakenly produced documents that are "protected or prohibited from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege or other protection," and calls upon any party in receipt of those materials (including the Examiner and all parties with access to its depository) to return or destroy those materials and any work product containing or referencing such information. (Protective Order

¶ 26.) As is standard, Paragraph 26 does not restrict any parties' right to request the return or destruction of documents after any particular date.[1] Moreover, Paragraph 26 provides that a party seeking to challenge a claim of privilege and clawback request may do so by motion to this Court after it returns or destroys the document pursuant to the producing party's request.

**Prior Clawback Requests**

8. Despite its production of over 100,000 documents to the Examiner, Ally has invoked Paragraph 26 to clawback documents on only three occasions, encompassing a total of just 265 documents. Notably, to date, Ally has clawed back just ten documents on attorney work product or attorney-client privilege grounds. The other documents subject to Ally's request have been related to the bank examination privilege, a privilege that, as discussed below, Ally does not control and cannot waive. Pursuant to Paragraph 26, Ally requested the return or destruction of those documents, and Ally promptly re-produced those documents in redacted form where appropriate.

9. As the Examiner notes, in addition to Ally's clawback requests, other parties have made similar requests of the Examiner. Given the volume of documents produced to the Examiner (over 1.1 million documents to date, totaling 8 million pages), the expedited nature of the discovery proceedings, and the demands imposed by the Examiner for parties to produce documents in short order, such clawbacks should not have been unexpected. Indeed, Ally understands that the Examiner reached agreement with the Debtors to produce documents to meet the Examiner's self-imposed January 31, 2013 production deadline even if it meant that the Debtors could not conduct a thorough review for privileged documents prior to production; in

[1] The absence of any cutoff date for the clawing back of privileged material is consistent with myriad protective orders entered in this Court, including in cases involving discovery by court-appointed Examiners. *See, e.g., In re Dynegy Holdings, Inc.*, Case No. 11-3811, ECF No. 550, at 11; *In re Chrysler LLC*, Case No. 09-50002, ECF No. 5281, at ¶ 6; *In re WorldCom, Inc.*, No. 02-13533, ECF No. 9835, at ¶ 2; *In re Madoff*, Adv. Pro. No. 08-01789, ECF No. 1951, at ¶ 17.

exchange, the Examiner agreed to grant the Debtors wide latitude to later clawback privileged documents.

10. Moreover, the ability of Ally and other parties to review documents produced by other parties to the Examiner — an issue of particular concern given the common interest and joint defense privilege issues inherent in this matter — has been disrupted by technical problems with the depository set up by the Examiner. These technical problems, which the Examiner only recently revealed to Ally and other parties, have delayed the posting of millions of pages in the Debtors' production, which have been available to the Examiner for months but have only recently been made available to other parties. Ally understands there are documents that have been produced to the Examiner but still have not yet posted to the depository.

**Ally's Proposed Modification**

11. The Examiner's counsel informed Ally in advance of the Court's February 28, 2013 chambers conference that it would seek a modification to the Protective Order establishing a deadline for a producing party to request the clawback of privileged documents. Both prior to and during the chambers conference with the Court, Ally expressed a willingness to work with counsel for the Examiner in an attempt to satisfy the Examiner's concerns while protecting Ally's right to protect its privileged material.

12. Following the conference with the Court, counsel for the Examiner sent a proposed Order to counsel, including counsel for Ally. Ally promptly responded and proposed language consistent with the issues discussed in this objection. Ally's proposed order, which is attached to this objection as Exhibit A (with revisions reflected in Exhibit B) makes the following modifications to the Examiner's proposal:

(a) other than as to documents produced to the Examiner after March 15, 2013, no Disclosing Party shall make a Clawback Request to the Examiner after March 22, 2013 **or 14 days after such document is made available to all parties in the Examiner's document depository (whichever is later)**, and the Examiner shall not be obligated to take any action, or to refrain from taking any action, in response to any Clawback Request made to the Examiner after ~~March 22, 2013~~ **such date**;

(b) as to any document produced to the Examiner after March 15, 2013, no Disclosing Party shall make a Clawback Request to the Examiner more than 14 days after ~~the production of~~ such document **is made available to all parties in the Examiner's document depository**, and the Examiner shall not be obligated to take any action, or to refrain from taking any action, in response to any Clawback Request that was made to the Examiner more than 14 days after ~~the production of~~ such document **is made available to all parties in the Examiner's document depository**;

**(c) nothing in paragraphs (a) or (b) prevents a Disclosing Party from seeking leave of Court, by motion or otherwise, to make a Clawback Request, or relieves any party from their obligations under applicable laws and/or ethical requirements regarding privileged documents;**

~~(c)~~ **(d)** the foregoing provisions in paragraphs (a) and (b) above are qualified to the extent that a party may make a Clawback Request to the Examiner after the relevant deadlines set forth in paragraph (a) or paragraph (b) above (as may be appropriate) if and only if such Clawback Request is based upon bank regulatory privilege ~~and is strictly confined to just those specific portions of the subject document which are claimed to be subject to such bank regulatory privilege~~; and

~~(d) if a Clawback Request is made pursuant to paragraph (c) above, the Examiner may reject such Clawback Request by giving written notice of such rejection to the party making such Clawback Request, with such rejection being deemed final and binding unless the party making such Clawback Request files a motion with the Court to challenge the rejection within 7 days after the rejection, and there will be a presumption in favor of the Examiner in regard to any such challenge.~~

**(e) the foregoing provisions in paragraphs (a) and (b) apply only to material produced to the Examiner and for use by the Examiner. All other parties shall be governed by and shall comply with Paragraph 26 without respect to paragraphs (a) and (b).**

13. After Ally alerted the Examiner's counsel of its concerns, the Examiner's counsel responded in an e-mail message that Ally's proposal was not acceptable (without providing any explanation). Ally attempted to engage with the Examiner's counsel by phone and e-mail, but

counsel were not able to confer before the Examiner filed its motion. On Monday, March 11, counsel for Ally and counsel for the Examiner met and conferred. Although the parties continue to attempt to resolve this dispute, the parties have not been able to reach agreement.

## BASIS FOR OBJECTION

14. Ally objects to the Examiner's proposed modifications to the Protective Order insofar as the Examiner's proposal (1) fails to adequately protect documents and information protected from disclosure under applicable federal regulatory provisions, (2) does not allow for a suitable procedure with regard to clawback requests based on the attorney-client privilege and/or attorney work product doctrine, and (3) does not limit the modification to discovery produced to the Examiner and for use by the Examiner. Such protections are necessary to ensure that any amended Protective Order comports with applicable law and provides adequate safeguards to the parties that have been cooperating in discovery pursuant to the Protective Order originally proposed by the Examiner, agreed-upon by the parties, and adopted by this Court. Ally has proposed modest modifications to the Examiner's Proposed Order that accomplish each of these goals.

### I. The Modified Protective Order Cannot Supersede the Bank Examination Privilege.

15. The bank examination privilege belongs to the regulatory agency — here, typically the Federal Deposit Insurance Corporation and the Board of Governors of the Federal Reserve System. The privilege "arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications." *Bank of China v. St. Paul Mercury Ins., Co.*, 2004 WL 2624673, *4 (S.D.N.Y. Nov. 18, 2004); *see also Linde v. Arab Bank, PLC*, 2009 WL 3055282, *1 (E.D.N.Y. Sept. 21, 2009) ("[T]he . . . privilege . . . protects communications between banks and their examiners in order to preserve absolute candor

essential to the effective supervision of banks."). This privilege, which has been recognized by numerous courts in this circuit, "accords agency opinions and recommendations and banks' responses thereto protection from disclosure" in order to promote the forthright exchange of communications between bank regulators and the financial institutions they supervise. *See Bank of China*, 2004 WL 2624673, *4 (citation omitted); *see also In re Citigroup Bond Litig.*, 2011 WL 8210671, *1 (S.D.N.Y. Dec. 5, 2011); *Lee v. FDIC*, 923 F. Supp. 451, 458-59 (S.D.N.Y. 1996); *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 447-48 (E.D.N.Y. 1993); *Merchants Bank v. Vescio*, 205 B.R. 37, 42 (D. Vt. 1997).

16. The privilege exists in common law in addition to having been codified in numerous regulatory provisions. *See, e.g.*, 12 C.F.R. § 261.14(a)(8) (Federal Reserve regulation), 12 C.F.R. § 309.5(g)(8) (FDIC regulation); 12 C.F.R. §§ 4.32(b)(1)(i), 4.37 (Office of Comptroller of the Currency regulation). Those regulations bar regulated entities from releasing "[a]ny matter that is contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 12 C.F.R. § 261.14(a)(8) (Federal Reserve); *see also* 12 C.F.R. § 309.6(a) ("In any instance in which any person has possession, custody or control of FDIC exempt records or information contained therein, all copies of such records shall remain the property of the [FDIC] and under no circumstances shall any . . . entity . . . disclose or make public in any manner the exempt records or information without written authorization [from the FDIC]."). As a result, the regulators retain the exclusive right to authorize the release of documents deemed to be "exempt records" or "confidential supervisory information" under their applicable regulations. *See* 12 C.F.R. § 309.6(b).

17. At the February 28, 2013 chambers conference, counsel for the Examiner acknowledged the need to provide protection for the bank examination privilege in any modification to the Protective Order, and the Examiner's proposed order purports to offer some protection to the privilege (in its proposed subsection (c)). However, the Examiner's proposed subsection (d) would undermine these federal regulations (as well as the protections of the common law bank examination privilege) by granting the Examiner the unqualified right to reject a clawback request subject only to the producing party's right to challenge that rejection — against a presumption in favor of the Examiner. Such an approach would turn the law on its head and would conflict with federal law regarding the possession of bank regulatory privileged material. Even those courts recognizing the "qualified" nature of the bank examination privilege have required the *"requesting party"* to demonstrate "good cause" based on a multi-factor test before compelling the production of protected materials. *See Citigroup*, 2011 WL 8210671, at *1 (emphasis added and citation omitted). The Examiner cannot avoid this well-settled law. Indeed, were a party refuse to turn over material covered by this regulatory exemption, counsel would run the risk of being in violation of these federal provisions. As such, any modification to Paragraph 26 of the Protective Order must, at a minimum, carve out an exception to allow producing parties to automatically clawback any inadvertently produced records that fall within the scope of the regulators' privilege, subject to the Examiner being permitted to seek a waiver from the regulators or file a motion to compel with this Court. Ally's revision to Paragraph 26 (as set forth above and in the attached proposed order) accomplishes this.

**II. The Proposed Modification Should Preserve The Right To Seek Judicial Relief.**

18. The Examiner's proposed amendment does not provide any avenue for a party to seek the return of documents or information pursuant to the attorney-client privilege or attorney

work product doctrine, and is therefore inconsistent with background principles of federal common law regarding privilege and waiver. *See In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 255 (Bankr. S.D.N.Y. 2005) ("[W]here a *subpoena duces tecum* issues pursuant to Rule 2004, the federal common law rules of privilege apply."). Rather, the Examiner's proposal attempts to convert a disclosing party's inadvertent production of privileged material into a knowing and voluntary waiver in contravention of controlling law. *See, e.g.*, *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 222 (S.D.N.Y. 2001) ("[I]nadvertent production will not waive the [attorney-client] privilege unless the conduct of the producing party or its counsel evinced such extreme carelessness as to suggest that it was not concerned with the protection of the asserted privilege.").

19. Indeed, the background federal rules of civil procedure and evidence support a party's right to clawback inadvertently produced materials. Specifically, Federal Rule of Civil Procedure 26(b)(5)(B) provides that "[i]f information produced in discovery is subject to a claim of privilege . . . , the party making the claim may notify any party that received the information of the claim and the basis for it" and further requires that "[a]fter being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has" and "must not use or disclose the information until the claim is resolved." FED. R. CIV. P. 26(b)(5)(B); *see also Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369, 372 (S.D.N.Y. 2011) ("Fed. R. Civ. P. 26(b)(5)(B) "reinforce[s] the protection that extends to privileged documents produced inadvertently."). Similarly, Federal Rule of Evidence 502(b) specifies that production of a privileged document does not constitute a waiver of the privilege if the production was "inadvertent," the privilege holder "took reasonable steps to prevent disclosure," and the privilege holder "took reasonable steps to rectify the error," including complying with Rule

26(b)(5)(B). FED. R. EVID. 502(b). Accordingly, even in the absence of a protective order provision allowing for the clawback of inadvertently produced materials, these background rules support a party's ability to seek the return or destruction of privileged materials. *See, e.g.*, *Synergetics USA, Inc. v. Alcon Labs., Inc.*, 2009 WL 2016795, *1 (S.D.N.Y. July 9, 2009); *Briese*, 272 F.R.D. at 372.

20. In any event, the Examiner's use of or citation to privileged documents is inconsistent with the purposes and aims for which the Examiner was appointed. Pursuant to 11 U.S.C. § 1106 and this Court's July 27, 2012 Order Approving Scope of Investigation [ECF No. 925], the Examiner is charged with conducting an investigation to assess, among other things, potential claims of the Debtors' estate. In doing so, the Examiner has no right to use privileged documents and the use of such documents does not advance the Examiner's work.[2] Indeed, to the extent the Examiner bases his assessment of potential claims upon privileged documents, such assessment will be futile; those privileged documents will either be clawed back (or will not be produced in the first place) during any subsequent litigation or adversary proceeding. It thus would make no sense to carve out exceptions to the privilege for the Examiner.

21. In light of these concerns, at a minimum, any modification to Paragraph 26 must permit a party requesting the return or destruction of privileged material to seek leave of this Court even after any proposed automatic clawback deadline so that the parties subject to examination may adequately protect their rights with regard to privileged material. Ally's proposed subsection (c) preserves the disclosing party's right to seek leave of Court to make a

[2] To that end, Ally supports the proposal of Goldin Associates L.L.C. to require the Examiner to provide notice to a producing party of the Examiner's intent to use the producing party's documents in its report and allow the producing party two business days to assert privilege or waive the right to do so. [*See* ECF No. 3146, at ¶ 10.] Such proposal will ensure that no privileged materials are used in the Examiner's report.

clawback request while still accomplishing the Examiner's goal of cutting off a disclosing party's ability to automatically clawback documents. Such proposal better balances the equities and is more in accordance with the background federal rules.

22. Additionally, while Ally is amenable to the imposition of a clawback deadline, Ally proposes a modification to the Examiner's proposed subsections (a) and (b) to clarify that the Examiner must honor clawback requests made within 14 days of when a document is made available to all parties in the Examiner's document depository (as opposed to when such document is produced to the Examiner, as the Examiner proposes). Ally has proposed this change in light of the lag time between when a document is produced to the Examiner and the time it is made available to all parties via the Examiner's depository. In the absence of such clarification, the time for objection or clawback might expire before third parties — whose privileges may be implicated — have a full and fair chance to review productions from other parties and protect their privilege. Fairness dictates that the clock not start running until all parties have access to the documents.

**III. Any Proposed Modification Should Only Apply To The Examiner.**

23. Finally, to the extent this Court imposes a deadline or other limitations on the rights of parties to clawback privileged material, the Court should clarify in its Order that such deadline and limitations apply to the Examiner only. Counsel for the Examiner informed Ally counsel that it does not oppose such a provision.

24. The basis for the Examiner's extraordinary request to limit the rights of producing parties to protect their privileged material is to avoid "potential disruption to the orderly completion of the Examiner's task" and "to help ensure the orderly completion of the investigation and the timely issuance of the Examiner's report." (Mot. ¶¶ 6, 8.) This rationale does not apply to any other party with access to the Examiner's depository, nor to any party to

any current or future litigation or adversary proceeding. As this Court knows, the Examiner here has sought the production of documents and information on an expedited basis in order to complete its investigation; such a discovery process is far different from the process through which discovery would be conducted in any adversary proceeding.

25. Accordingly, and in light of the federal procedural and evidentiary rules governing the receipt and use of privileged materials — which would be applicable in any adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Evidence 1101 — there is no reason for the Court to extend the extraordinary relief requested by the Examiner any further than necessary to aid the Examiner in completion of his report. Indeed, to do so would allow parties to avoid the application of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 502. Therefore, Ally respectfully requests clarification — as proposed in subsection (e) of Ally's proposed order — that any modification of the Protective Order limiting a producing party's right to clawback privilege material applies only to material produced to the Examiner, and for use exclusively by the Examiner.

## CONCLUSION

26. For the foregoing reasons, Ally respectfully requests that the Court deny the Examiner's Motion or, in the alternative, grant the Examiner's Motion subject to the modifications discussed herein and set forth in the Ally's proposed order.

Dated: March 13, 2013
New York, New York

*/s/ Ray C. Schrock*

Richard M. Cieri
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel to Ally Financial Inc. and Ally Bank*