**Hearing Date:  April 11, 2013 at 10:00 am**
**Objection Deadline:  March 25, 2013 at 4:00 pm**

CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145
Jeffrey A. Lipps
Jennifer A.L. Battle
David A. Beck

*Special Litigation Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

# SUMMARY OF SECOND INTERIM APPLICATION OF CARPENTER LIPPS & LELAND LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012

{00346529-1}

This is a(n):  ___ monthly  _x_ interim  ___ final application.

| | |
|---|---|
| Name of Applicant: | Carpenter Lipps & Leland LLP ("**Applicant**") |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. (collectively, the "**Debtors**") |
| Date of Retention: | Order entered on July 25, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 |
| Period for which Compensation and Reimbursement is sought: | September 1, 2012 through December 31, 2012 (the "**Second Compensation Period**") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $1,877,415.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $641,079.68 |
| Previous Compensation awarded on an interim basis: | $949,060.00 |
| Previous Reimbursement of Expenses awarded on an interim basis: | $334,034.08 |

**Summary of Monthly Applications for Application Period:**

| Date Filed | Compensation Period | Requested Fees | Requested Expenses | Fees Paid | Expenses Paid | 20% Holdback |
|---|---|---|---|---|---|---|
| 11/02/2012 | 09/01/2012 – 09/30/2012 | $418,747.00 | $161,637.90 | $334,804.00[1] | $161,637.90 | $80,540.33[2] |
| 11/15/2012 | 10/01/2012- 10/31/2012 | $500,888.00 | $244,759.30 | $400,638.40[3] | $244,759.30 | $96,713.88[4] |
| 01/02/2013 | 11/01/2012- 11/30/2012 | $539,027.50 | $126,643.65 | $431,180.40[5] | $126,643.65 | $107,657.32[6] |
| 01/25/2013 | 12/01/2012- 12/31/2012 | $424,996.50 | $108,923.00 | $207,700.80 | $84,314.22 | $84,999.30 |
| **TOTAL** | 09/01/2012- 12/31/2012 | $1,883,659.00[7] | $641,963.85[8] | $1,374,323.60 | $617,355.07 | $369,910.83 |

---

[1] After reviewing the application, the Debtors requested a reduction of $242.00 in fees for the September Application. This total represents 80% of the requested fees less the $242.00 reduction.

[2] This total represents the 20% holdback based on the fees originally requested minus the Debtors' requested reduction of $242.00. This then subtracts the $2,697.00 in invoice review related fees, $385.25 in meal expenses and $78.42 in taxi expenses that Applicant is voluntarily reducing its requested compensation and reimbursement of expenses by based on the comments of the Court at the December 20, 2120 hearing to show the remaining compensation that would be awarded if the compensation and reimbursement of expenses requested in this application is granted.

[3] After reviewing the application, the Debtors requested a reduction of $90.00 in fees for the October Application. This total represents 80% of the requested fees less the $90.00 reduction.

[4] In the same manner as described in footnote 2, this represents the remaining amount outstanding after taking into account the reduction described in footnote 3 and $3,163.00 in invoice review related fees, $274.35 in meal expenses and $8.37 in taxi expenses that Applicant is voluntarily reducing its requested compensation and reimbursement of expenses by.

[5] After reviewing the application, the Debtors requested a reduction of $52.00 in fees for the November Application. This total represents 80% of the requested fees less the $52.00 reduction.

[6] This is 20% of the fees originally requested less the Debtors' requested reduction and $137.78 in meal expenses that Applicant is voluntarily reducing its requested compensation and reimbursement of expenses by.

[7] This total is based on the monthly totals before making the reductions in fees described above. The aggregate request of Applicant on the cover for $1,877,415.00 in fees reflects these reductions.

[8] This total is based on the monthly totals before making the reductions in expense reimbursement described above. The aggregate request of Applicant on the cover for reimbursement of expenses of $641,079.68 reflects Applicant's agreement to these reductions.

Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
David A. Beck (admitted *pro hac vice*)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145

*Special Litigation Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**SECOND INTERIM APPLICATION OF CARPENTER LIPPS & LELAND
LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

For its second interim application for compensation and reimbursement of expenses (the "**Application**") for the period September 1, 2012 through December 31, 2012 (the **"Second Compensation Period"**) Carpenter Lipps & Leland LLP ("**Applicant**"), special litigation counsel to Residential Capital, LLC., *et al.*, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of

{00346529-1}

this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 330, 331, and 1103 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). This Application has been prepared in accordance with General Order M-447, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, entered December 21, 2010 (the "**Local Guidelines**"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**"). Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as <u>Exhibit A</u>.

## BACKGROUND

**The Chapter 11 Cases**

3. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4. On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

5.   On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner (Docket Nos. 454, 674).

**Applicant's Retention and Interim Compensation**

6.   On July 25, 2012, the Court entered the Order Under Section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the Employment and Retention of Carpenter Lipps & Leland LLP as Special Litigation Counsel to the Debtors, *Nunc Pro Tunc*, to May 14, 2012 (Docket No. 907), approving Applicant's retention.

7.   On July 17, 2012, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") (Docket No. 797). Pursuant to the terms of the Interim Compensation Order, Applicant, among others, is authorized to file and submit monthly fee applications to the Debtors and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc., counsel for Barclays Bank PLC, and the United States Trustee (collectively, the "**Notice Parties**").

8.   On October 19, 2012, Applicant filed its first interim fee application (Docket No. 1889) (the "**First Interim Application**"). On December 28, 2012, the Court entered its Omnibus Order (Docket No. 2530) (the "**First Fee Order**") concerning the first fee applications filed for retained professionals. As part of the First Fee Order, the Court authorized on an interim basis $949,060 in fees and $334,034.08 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the First Interim Application agreed to between the Applicant and the United States Trustee.

9. On November 2, 2012, Applicant served its monthly fee application covering the period from September 1, 2012 to September 30, 2012 (the "**September Monthly Fee Application**") on the Notice Parties. On November 16, 2012, Applicant served its monthly fee application covering the period from October 1, 2012 to October 31, 2012 (the "**October Monthly Fee Application**") on the Notice Parties. On January 2, 2013, Applicant served its monthly fee application covering the period from November 1, 2012 to November 30, 2012 (the "**November Monthly Fee Application**") on the Notice Parties. On January 25, 2013, Applicant served its monthly fee application covering the period from December 1, 2012 to December 31, 2012 (the "**December Monthly Fee Application**" and, together with the September Monthly Fee Application, the October Monthly Fee Application and the November Monthly Fee Application, the "**Monthly Fee Applications**") on the Notice Parties. The Applicant did not receive any formal objections to the Monthly Fee Applications, although the Debtors did request reductions based on their ordinary course review of Applicant's fees of $384.00. Applicant has agreed to those reductions. In addition, based on the Court's comments at the December 20, 2012 fee hearing, Applicant has reduced its requested compensation by $5,860.00 to reflect the writeoff of all time spent in revising monthly invoices for compliance with the United States Trustee's Guidelines and has reduced its requested reimbursement of expenses by $884.17 related to meal expenses over the $20.00 limit and certain taxi or cab fares within New York City. The totals sought on the cover sheet reflect all of these reductions.

10. For the convenience of this Court and all parties in interest, attached hereto as Exhibit B is a schedule of the total amount of fees incurred under each of Applicant's internal task codes during the Second Compensation Period.

{00346529-1}                                          4

11. To date, the Applicant has received payments totaling $1,991,678.67, representing $1,374,323.60 in fees and $617,355.07 in expenses on account of the Monthly Fee Applications. This represents 80% of the fees and 100% of the expenses for the September, October and November Fee Applications (subject to the agreed reductions described above). Applicant has to date been paid only a portion of the amounts requested for the December Fee Applications.

12. Applicant maintains computerized records of the time expended in the rendering of the professional services required by the Committee. These records are maintained in the ordinary course of Applicant's practice. For the convenience of this Court and all parties in interest, attached hereto as Exhibit C is a billing summary for the Second Compensation Period, setting forth the name of each attorney and paraprofessional who rendered services during the Second Compensation Period, each attorney's year of bar admission, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Applicant's current billing rates, and the individual amounts requested for each professional. Exhibit C also provides the blended hourly rate for Applicant's attorneys during the Second Compensation Period. The compensation requested by Applicant is based on the agreed hourly rates it had in place with the Debtors prior to their filing for bankruptcy, which are discounted from Applicant's standard hourly rates.

13. Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services. A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as Exhibit D. Exhibit D also includes breakdowns showing the detail on the contract document reviewer expenses incurred by the Applicant, the cab and car service expenses for which the Applicant is requesting reimbursement (showing the reductions Applicant is making in response to the

{00346529-1}                                        5

Court's directives at the December 19, 2012 fee hearing) and meal reimbursements (again showing the reductions Applicant is making in response to the Court's directives at the December 19, 2012 fee hearing).

14. In connection with the requested reimbursement of expenses for the fees incurred by contract document reviewers, Applicant wishes to provide the following additional detail. The use of these reviewers was essential for the review of over 500,000 documents and the production of over 2.6 million pages during the Second Compensation Period. Using contract reviewers resulted in substantial savings to the Debtors' estates over alternative forms of production. The electronic review platforms Applicant uses track the number of hours each contract reviewer is logged in and the average number of documents coded per hour for each reviewer. On a weekly basis, Applicant reviews the time cards submitted by the staffing agencies for each contract attorney and compares these against the reports produced by the review platform. This is used to verify that hours on time cards are actually worked and that the reviewer is being productive based on the number of documents reviewed per hour. If based on this review the time spent by the contract attorney appears unreasonable, the time card is rejected. The benchmarks for what is reasonable are based on both years of experience in conducting complex document reviews for Residential Capital and industry standards and are adjusted based on the complexity of the documents which each reviewer is assigned to review. Applicant only bills Residential Capital for contract reviewer time which is approved through this process.

15. Copies of Applicant's computerized records of fees and expenses in the format specified by the Guidelines have been served on the Notice Parties with each of the Monthly Fee

Applications and are attached hereto as <u>Exhibit E</u>.  Applicant's subsequent writeoff of bill review time is noted on the applicable invoices attached as Exhibit E.

16.    There is no agreement or understanding between Applicant and any other person, other than partners and of counsel of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

17.    The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees.  The aggregate amount of Applicant's holdback during the Second Compensation Period is $369,910.83 (the "**Second Holdback**").  In addition, as part of the First Fee Order, the Court directed that $95,796.00 in compensation (the "**First Holdback**") approved on an interim basis be withheld by the Debtors as part of the general withholding of 10% of allowed compensation for all professionals.  Applicant respectfully requests, in connection with the relief requested herein, that the Court allow both the Second Holdback on an interim basis pursuant to sections 330 and 331 of the Bankruptcy Code and authorize the Debtors to satisfy both the First Holdback and the Second Holdback.

## DESCRIPTION OF SERVICES AND EXPENSES AND RELIEF REQUESTED

18.    In general, Applicant has represented the Debtors in connection with the following aspects of the Chapter 11 Cases during the Second Compensation Period:

- Applicant has assisted in the production of over 1,700,000 pages of documents, the research and drafting of submission papers to the Examiner and in the preparation of 11 witnesses who were interviewed by the Examiner;

- Applicant has assisted Morrison & Foerster LLP ("**Morrison & Foerster**") in the Debtors' efforts to obtain approval of the Debtors' proposed settlement of claims related to securitizations sponsored by the Debtors between 2004 and 2007, including researching and drafting work in support of the Settlement, review of documents in connection with the settlement and having Jeffrey Lipps serve as an expert witness and be deposed in connection with that proceeding;

- Applicant has assisted the Debtors and Morrison & Foerster in responding to numerous discovery requests in the bankruptcy cases, including discovery from the Official Committee of Unsecured Creditors and third parties and provided advice on e-discovery and record retention issues;

- Applicant has analyzed issues relating to the claims of the monoline insurers and participated in meetings related to these claims;

- Applicant has analyzed issues relating to the securities claims being asserted against the Debtors;

- Applicant has helped the Debtors respond to the ongoing investigation by the Securities and Exchange Commission; and

- Applicant has represented the Debtors in numerous suits in the state of Ohio arising out of their servicing of mortgage loans.

To provide an orderly and meaningful summary of the services rendered by Applicant on behalf of the Debtors during the Second Compensation Period, Applicant established, in accordance with the Guidelines and its internal billing procedures, separate task codes in connection with the Chapter 11 Cases.[1]  The following is a summary of the most significant professional services rendered by Applicant during the Second Compensation Period organized in accordance with Applicant's internal system of task codes:

**SEC Post-Petition (932-054)**

Fees: $122,001.00; Total Hours: 671.20;

19. Prior to the Petition Date, Applicant had represented the Debtors in responding to an ongoing SEC investigation by assisting in the collection and production of documents to the

---

[1] Because almost all of CLL's services as special litigation counsel would either fit within the claims administration or litigation matter categories in the United States Trustee's standard list of matters, CLL has created specific matter numbers by particular litigation project to help better track the time and expenses it is incurring in these cases. The categories are the same ones used in connection with the First Fee Application, but with the addition of certain additional matters for specific litigation cases for which it is representing the Debtors on in the State of Ohio related to the Debtors' servicing of mortgage loans.

{00346529-1}                                     8

SEC.  Since the Petition Date, Applicant has continued to work on the collection, review and production of documents for this investigation. Applicant's activities with respect to the SEC during the Second Compensation Period included:

- Applicant worked with the Debtors and Morrison & Foerster to locate sources of information responsive to the SEC's requests, including visiting the Debtors' facilities in Minnesota and Pennsylvania to investigate possible sources of information;

- Applicant participated in frequent calls with the Debtors and Morrison & Foerster's securities litigation team regarding the SEC investigation and responding to the SEC's document requests;

- Applicant trained and supervised contract reviewers on the review of materials collected production to the SEC;

- Applicant conducted substantial quality reviews of the work of the contract reviewers in order to ensure that the production was being made efficiently;

- Applicant helped Morrison & Foerster prepare for potential depositions by the SEC of current and former personnel of the Debtors;

- Applicant helped Morrison & Foerster prepare for meetings with SEC personnel; and

- Applicant participated in periodic calls with the SEC during the Second Compensation Period.

Because of these efforts, during the Second Compensation Period Applicant helped review over 390,000 documents, which resulted in the production of over 900,000 pages of documents to the Securities and Exchange Commission.

**RMBS Trust Settlement (932-057)**
Fees:  $356,937.00; Total Hours:  1,671.00

20. Because of Applicant's representation of the Debtors in prepetition representation and warranty litigation, Morrison & Foerster has regularly consulted with Applicant regarding the issues involved in the settlement.  As part of this consultation, Morrison & Foerster requested Applicant research certain legal or factual issues related to the settlement.  Jeffrey Lipps of the

{00346529-1}                                              9

Applicant provided an expert report in support of the settlement during the Second Compensation Period, which required substantial work on the part of Applicant during the Second Compensation Period. Applicant then prepared for Mr. Lipps's deposition regarding his expert report during the Second Compensation Period.

21. Applicant worked on identifying additional potential experts to support the settlement, participated in discussion with experts and commented on drafts of expert reports in favor of the settlement. Applicant then assisted in preparing witnesses for depositions in this litigation. Applicant researched the backgrounds of the various expert witnesses identified by interested parties and helped Morrison & Foerster prepare for the depositions of these experts.

22. During the Compensation Period, Applicant and the contract attorneys it supervised reviewed over 45,000 documents for production in connection with the RMBS Trust Settlement litigation. Applicant also helped produce privilege logs for both these productions and the productions made prior to the Second Compensation Period.

23. Applicant also assisted Morrison & Foerster in working on the reply briefing in support of the RMBS Trust Settlement. Applicant researched certain issues relevant to the reply briefing and prepared drafts of sections of the brief in close coordination with Morrison & Foerster. At Morrison & Foerster's request, Applicant also participated in meetings with interested parties regarding the RMBS Trust Settlement and the representation and warranty litigation brought against the Debtors. Applicant also participated in periodic calls with the advisors to the Creditors' Committee and Trustees concerning various discovery requests and evaluation activities related to the RMBS Trust Settlement.

**Securities Claims (932-058)**
Fees: $15,007.50; Total Hours: 81.40

24.     To prepare for the litigation concerning security claims in these cases, Applicant monitored developments in other securities cases.  Applicant also researched certain potential defenses to the securities claims being asserted against the Debtors and consulted with Morrison & Forester regarding potential defenses to these claims.

**Monoline Claims (932-059)**
Fees: $82,951.00; Total Hours: 356.30.

25.     Prior to the Petition Date, Applicant represented the Debtors in the cases brought by monoline insurers MBIA and FGIC.  Since the Petition Date and at the request of Morrison & Foerster, Applicant analyzed certain issues related to the claims that these and other monolines insurers asserted in these cases and the validity of those claims.  Applicant also participated in meetings with MBIA related to its claims and the RMBS settlement during the Second Compensation Period that were reported under this Task Code.  Applicant also periodically provided advice and assistance to Morrison & Forester dealing with complications posed by the monolines to the sale of the servicing platform, including assistance in analyzing the cure claims asserted by the monolines in connection with the servicing platform sale and in discussions with the monolines on their asserted cure claims.

**ResCap Discovery Issues (932-060)**
Fees: $118,067.00; Total Hours: 593.50

26.     Applicant used this matter for work on discovery issues not reported under another specific matter.  Specifically, Applicant has assisted the Debtors in responding to various requests of the Creditors' Committee for discovery related to various contested matters, including the production of documents relating to the Creditors' Committee's review of the

perfection of the liens being asserted in the Debtors' assets. This involved the review of over 77,000 documents and the ultimate production of over 145,000 pages worth of material. This matter was also used for time and expenses related to assisting the Debtors in responding to third party subpoenas during this time period, including the response to the Federal Housing Finance Agency's request for information which led to the Court staying certain third party discovery requests during the Second Compensation Period. Applicant also advised the Debtors concerning certain e-discovery and record retention issues as it prepared for the sale of their servicing platform.

**Examiner (932-064)**
Fees: $958,345.00; Total Hours: 4,786.90

27. Applicant spent substantial time during the Second Compensation Period responding to the Examiner's investigation of the Debtors. Applicant's work in responding to the Examiner can be broken into three broad categories.

28. The first category was the ongoing collection, review and production of documents to the Examiner. While contract attorneys were generally used by the Applicant for the first level of review to keep costs down, Applicant's own employees engaged in extensive quality control reviews of the work of the contract attorneys to insure that documents were reviewed and coded properly. In order for this review to be conducted properly, Applicant had to research the factual backgrounds and roles of various current and former employees of the Debtors and advisors to the Debtors and others to insure that joint privilege and other review issues were analyzed correctly. During the Second Compensation Period, Applicant assisted the Debtors in producing over 1.3 million pages of documents to the Examiner and conducted review work on additional documents produced following the end of the Second Compensation Period.

29. A second major category of Applicant's efforts during the Second Compensation Period was in assisting the Debtors' current and former employees in preparing for examiner interviews. Because of Applicant's deep history of representing the Debtors, Morrison & Foerster requested the Debtors' assistance in this area. The two firms collaborated closely in preparing these witnesses and divided up the preparation tasks for the various witnesses being interviewed by the Examiner. Applicant assisted in the preparation of 11 witnesses who were interviewed by the Examiner during the Second Compensation Period and conducted early preparation work for numerous additional witnesses who have been interviewed since the conclusion of the Second Compensation Period.

30. The third major focus category of Applicant's efforts during the Second Compensation Period was related to the Examiner's requests for submission from parties with positions on the proposed release of third party claims. Early in the Second Compensation Period, the Examiner sent out a letter to many of the Debtors' largest purported creditors providing the opportunity for them to make submissions regarding the appropriateness of the release of third party claims contemplated by the plan support agreement with Ally Financial Inc. Ultimately, eight separate papers were submitted to the Examiner either by individual creditors or by groups of creditors acting jointly. Each of these papers was a significant brief raising different and complex issues in relation to the proposed release and also included a discussion of the claims of the creditor or creditors who submitted the paper.

31. Because Applicant had been involved in defending the Debtors in many of the prepetition litigations brought by parties who submitted position papers, Morrison & Foerster requested Applicant's assistance. Applicant helped review and analyze the arguments made in many of the submissions to the Examiner, with a particular focus on the creditors' assertions

regarding the merits of their underlying claims. The underlying claims were based on a wide variety of theories ranging from breach of contract to securities and tort based claims. Morrison & Foerster requested the Applicant take the lead on preparing parts of the reply briefs responding to the portions of the submissions discussing the merits of certain monoline, securities and contractual representation claims covered by the proposed release. Applicant conducted research regarding the merits of each of these creditors' claims. Applicant then prepared significant sections of the Debtors' responses, which addressed the merits of the underlying claims that would be covered by the third-party release.

**Ohio Litigation Matters (Matters starting with 096 or 621).**
Fees: $203,421.50; Total Hours: 990.70

32. Applicant spent substantial time during the Second Compensation Period representing the Debtors in litigation related to their servicing of mortgage loans in the state of Ohio. Applicant has been representing the Debtors for a number of years with respect to contested foreclosures or other servicing related litigation in Ohio. Applicant spent significant time dealing with unstayed claims and claims for which the stay was modified pursuant to the servicing orders entered in this case. Substantial time was spent notifying individual courts and opposing counsel concerning the provisions of the orders providing stay relief and explaining how those orders affected the relief requested in each pending case. In aggregate, Applicant billed time to representing the Debtors in over 90 separate actions in the state of Ohio during the Second Compensation Period.

33. The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases. The time records attached hereto as <u>Exhibit E</u> present more completely the work performed by Applicant in each billing category during the Second Compensation Period.

## CONCLUSION

34. Applicant believes that the services rendered during the Second Compensation Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330. Further, the expenses requested were actual and necessary to the performance of Applicant's services.

Applicant therefore requests an order (i) approving interim compensation in the amount of $1,877,415.00 and interim reimbursement of expenses in the amount of $641,079.68,[2] (ii) directing payment of the Second Holdback and any other amounts outstanding in connection with the Monthly Fee Applications, (iii) authorizing payment of the First Holdback withheld under the First Fee Order; and (iv) granting such other and further relief as may be just and proper.

Dated: March 14, 2012

/s/ David A. Beck
Jeffrey A. Lipps (admitted *pro hac vice*)
lipps@carpenterlipps.com
Jennifer A.L. Battle (admitted *pro hac vice*)
battle@carpenterlipps.com
David A. Beck (admitted *pro hac vice*)
beck@carpenterlipps.com
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Phone: (614) 365-4100
Fax: (614) 365-9145

*Special Litigation Counsel to the Debtors and Debtors in Possession*

---

[2] The rates charged for such expenses (i) are based on Applicant's policies used with the Debtors prior to these cases being filed; (ii) do not charge for certain expenses such as in house copying or phone calls which are chargeable under the Guidelines; and (iii) are calculated to compensate Applicant for only the actual costs of the expenses.