Hearing Date: March 15, 2013 at 10:00 a.m. (ET)

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:  (212) 541-5369

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| ------------------------------------------------------------ x | | |

# THE EXAMINER'S RESPONSE TO THE OBJECTIONS TO THE MOTION OF THE EXAMINER FOR ENTRY OF AN ORDER MODIFYING THE UNIFORM PROTECTIVE ORDER FOR EXAMINER DISCOVERY

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 2

    THE EXAMINER'S PROPOSED ORDER IS PROPER AND
    NEEDED TO FACILITATE THE ORDERLY COMPLETION OF
    THE INVESTIGATION, AND IS TAILORED TO RESPECT LEGITIMATE
    REQUESTS TO "CLAW BACK" PRIVILEGED DOCUMENTS ........................... 2

    THE BANK EXAMINATION PRIVILEGE DOES NOT
    PREVENT THE COURT FROM GRANTING THE MOTION .............................. 5

    ANY CONCERNS ABOUT WAIVER CAN BE EASILY ADDRESSED
    BY ADDING A "NO WAIVER" PROVISION TO THE ORDER
    PURSUANT TO FED. R. EVID. 502(d) .................................................................. 8

    THE EXAMINER SHOULD NOT BE REQUIRED AS A CONDITION
    OF OBTAINING RELIEF TO REVIEW AND POLICE FOR PRIVILEGE THE
    DOCUMENTS THAT HAVE BEEN PRODUCED TO HIM BY OTHER PARTIES ........... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of China v. St. Paul Mercury Ins. Co.*,
   Civ. No. 03-9797, 2004 U.S. Dist. LEXIS 23364 (S.D.N.Y. Nov. 18, 2004) ................... 5, 6, 7

*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994) .................................... 7

*In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir. 1995) .............................................................. 6, 7, 8

*In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577 (E.D.N.Y. 1979) ................................. 6, 7

*Kruman v. Christie's Int'l PLC (In re Auction Houses Antitrust Litig.)*,
   Civ. No. 00-0648, 2001 U.S. Dist. LEXIS 8920 (S.D.N.Y. July 2, 2001) .............................. 3

*LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending, Inc.*,
   Civ. No. 04-5452, 2007 U.S. Dist. LEXIS 59301 (S.D.N.Y. Aug. 13, 2007) ......................... 3

*Merchants Bank v. Vescio (In re Vescio)*, 210 B.R. 913 (Bankr. D. Vt. 1997) ........................... 6, 7

*Merchants Bank v. Vescio*, 205 B.R. 37 (D. Vt. 1997) .................................................................. 8

*Principe v. Crossland Savings, FSB*, 149 F.R.D. 444 (E.D.N.Y. 1993) .................................... 6, 7

*Rouson v. Eicoff*,
   Civ. No. 04-2734, 2006 U.S. Dist. LEXIS 74019 (E.D.N.Y. Oct. 11, 2006) ........................ 6, 7

**Statutes, Regulations, and Rules**

5 U.S.C. § 301 .............................................................................................................................. 7, 8

12 C.F.R. § 4.37(b)(3) ...................................................................................................................... 7

12 C.F.R. § 261.23(a) ....................................................................................................................... 7

12 C.F.R. § 309.7(b) ........................................................................................................................ 7

Fed. R. Evid. 502(d) ........................................................................................................................ 8

Hearing Date: March 15, 2013 at 10:00 a.m. (ET)

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
Residential Capital, LLC, et al.,                            :   Case No. 12-12020 (MG)
                                                             :
               Debtors.                                  :   Jointly Administered
------------------------------------------------------------ x

**THE EXAMINER'S RESPONSE TO THE OBJECTIONS TO THE
MOTION OF THE EXAMINER FOR ENTRY OF AN ORDER MODIFYING
THE UNIFORM PROTECTIVE ORDER FOR EXAMINER DISCOVERY**

      Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases, hereby submits, in further support of the Motion of the Examiner for Entry of an Order Modifying the Uniform Protective Order for Examiner Discovery, filed on March 4, 2013 (the "Motion") (Dkt. No. 3092), his response to the objections filed by (a) Goldin Associates L.L.C. ("Goldin") (Dkt. No. 3146), (b) Ally Financial Inc. ("Ally") (Dkt. No. 3155), (c) Cerberus Capital Management, L.P. ("Cerberus") (Dkt. No. 3156), and (d) the Debtors (Dkt. No. 3158). The Examiner respectfully states as follows:

1

**PRELIMINARY STATEMENT**

1.  In essence, Ally and those joining Ally's objection propose that, subject only to some modest procedural steps, any party be able to "claw back" at any time any number of documents previously produced to the Examiner, based on claims of attorney-client privilege, work-product doctrine, bank examination privilege, or any other alleged privilege or protection, up to and including on the very day the Examiner issues his report. Particularly in light of the recent history here of voluminous clawback requests that extend to documents produced months previously, this proposal is inimical to the Examiner's orderly completion of his investigation and timely issuance of his report. Similarly, while the Debtors' February 28, 2013 clawback was expected, its magnitude (over 14,000 documents) was not. Such surprise requests can impose a significant burden on completing the report. The Examiner's proposed order would fairly preserve the parties' ability to assert appropriate claims of inadvertent production subject only to reasonable time limits on such assertions to provide the Examiner with the certainty and finality critical to his task. The Examiner is not asking anyone to waive privilege, only to raise it by a time certain. The Court should reject the objections, grant the Motion, and issue an order in the modified form proposed herein by the Examiner.

**THE EXAMINER'S PROPOSED ORDER IS PROPER AND
NEEDED TO FACILITATE THE ORDERLY COMPLETION
OF THE INVESTIGATION, AND IS TAILORED TO RESPECT
LEGITIMATE REQUESTS TO "CLAW BACK" PRIVILEGED DOCUMENTS**

2.  Nothing in the Examiner's proposed order purports to prevent Ally or any other party from objecting on grounds of privilege to any future productions they may be called upon to make. The proposed order instead concerns something very different — the issuance of clawback requests based on privilege claims as to documents *that already have been produced*. This is a subject on which courts can legitimately set rules, as this Court itself did previously in

2

the Protective Order.  Indeed, the Court's power to set rules in this regard is implicit in the body of caselaw concerning the circumstances under which clawback requests properly can be made. It is simply incorrect to assert that the legal protections accorded to claims of "privilege" foreclose this Court outright from any ability to set rules regarding clawback requests.

3. Time-based limitations set forth in court orders on the invocation of privilege have been sustained and applied by the courts.  *See, e.g., Kruman v. Christie's Int'l PLC (In re Auction Houses Antitrust Litig.)*, Civ. No. 00-0648, 2001 U.S. Dist. LEXIS 8920, at *1-2 (S.D.N.Y. July 2, 2001) (enforcing deadline in protective order).  Indeed, time considerations and the context of overall case proceedings are routinely taken into account by the courts when evaluating attempts to claw back privileged documents.  *See, e.g., LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortgage Lending, Inc.*, Civ. No. 04-5452, 2007 U.S. Dist. LEXIS 59301, at *10-18 (S.D.N.Y. Aug. 13, 2007) (court's broad discretion to manage discovery permits consideration of the "time taken by the disclosing party to redress or cure the error," "prejudice," and "fundamental fairness" in connection with clawback requests).  In light of such precedent, Ally's objections to the deadlines under the Examiner's proposed order ring hollow. Any burden those deadlines would impose on Ally's attempts to claw back documents is not materially greater than that which ordinary judicial precedent would impose in the absence of Protective Order clawback provisions.[1]

4. Ally can hardly complain of the burdens of being faced with a deadline with respect to its issuance of future clawback requests given the history of discovery in the

---

[1] There likewise is no merit to the suggestion that setting a clawback deadline in this case must be improper because Ally could not identify prior instances where such deadlines were imposed in connection with the work of a court-appointed examiner.  Ally certainly has made no showing that any of the prior instances of court-appointed examiners to which it points involved anywhere near the number and volume of clawback requests that have occurred here, much less at comparable stages of the investigation.  If Ally and other parties through their actions have created a novel problem, it is hardly inappropriate that this Court now needs to craft a novel solution.

3

Examiner's investigation. The Official Committee of Unsecured Creditors issued Rule 2004 document subpoenas to Ally, the Debtors and Cerberus in June 2012. The Examiner served additional document requests on Ally and the Debtors through September 2012. The Examiner has issued follow-up requests for missing and/or supplemental documents to Ally throughout subsequent months. Ally and the Debtors began producing documents as early as August 2012, Cerberus in September 2012, and Goldin in October 2012.

5. These parties thus had ample time to review their own productions, and coordinate with other producing parties who might be in possession of documents as to which they may claim a privilege. The Protective Order's clawback provision was not intended to relieve producing parties from their obligation to expeditiously review their productions. The fact that Ally apparently began conferring with the Debtors and Cerberus in January-February 2013 about privilege and clawback issues in their respective productions simply raises the question of why Ally could not have engaged in that process far earlier, when it would have been far less disruptive to the performance of the Examiner's task. Given that a number of parties subpoenaed by the Examiner reported that the timing of their productions was affected by Ally's counsel reviewing all or some of their documents for privilege prior to production, there is no reason why Ally could not have engaged in a similar process starting at beginning of the investigation with the Debtors, Cerberus and other parties if such review was necessary to protect Ally's privilege interests. Neither this Court nor the Examiner's task should be held hostage to a failure by Ally to have addressed these issues in a timely manner so as to have protected its interests before now.

6. The Examiner has raised the issue of setting a clawback deadline with Ally since mid-February 2013. The proposed order served with the Motion on March 4, 2013 by

4

its terms provides the parties with additional weeks to raise yet more clawback requests. Paragraphs (c) and (d) of the proposed order contain a further failsafe mechanism to allow clawback requests based on bank examination privilege even after the stated deadlines.

7. In short, Ally has had, and continues to have even under the proposed order, ample time to review its own document productions and to work with other parties to ensure proper privilege review of documents from their productions. There simply is no reason why that process should not have been completed by now, such that setting some modest deadlines (which even themselves have failsafe provisions) to facilitate the completion of the Examiner's investigation and report on the schedule set by the Court would be improper.[2] It is thus entirely appropriate and well within the sound exercise of this Court's discretion for the Court to set deadlines by which future clawback requests must be made, in the interests of the orderly administration and completion of the Examiner's task and its importance to numerous bankruptcy case issues. This is particularly so here given the fairness and reasonableness of the deadlines being proposed.

### THE BANK EXAMINATION PRIVILEGE DOES NOT
### PREVENT THE COURT FROM GRANTING THE MOTION

8. Ally argues that the nature of the bank examination privilege prevents the Court from imposing any time limit on clawback requests based on that particular privilege. Ally's argument misconstrues the privilege and the Court's authority. While "courts of this circuit have recognized a qualified bank examination privilege," it "is not absolute." *Bank of China v. St. Paul Mercury Ins. Co.*, Civ. No. 03-9797, 2004 U.S. Dist. LEXIS 23364, at *12-13

---

[2] Ally's argument that clawback timeliness and deadlines should be tied to the posting of documents to the depository rather than their production rests on incorrect premises. First, despite Ally's reference to some now-solved past technical issues, all the documents received to date by the Examiner which are required to be posted to the depository have been posted. Second, most of the producing parties do not have and have never sought depository access; only the Debtors and Ally have done so. Ally's proposal would thus be unworkable for all other producing parties.

(S.D.N.Y. Nov. 18, 2004); *see also In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995) ("the bank examination privilege is a qualified rather than absolute privilege"). Accordingly, "information regarding bank examinations is not wholly outside the scope of permissible discovery." *Principe v. Crossland Savings, FSB*, 149 F.R.D. 444, 447 (E.D.N.Y. 1993).

9.  Moreover, "[o]pinions and other deliberative processes are protected by the privilege; purely factual material is not." *Bank of China*, 2004 U.S. Dist. LEXIS 23364, at *12; *see also In re Bankers Trust Co.*, 61 F.3d at 471 ("Purely factual material falls outside the privilege, and if relevant, must be produced."). Courts in this circuit have, therefore, not hesitated to order the production of documents purportedly protected by the bank examination privilege where they "primarily contain[] factual information," even if also containing "negligible statements of 'opinion.'" *See Rouson v. Eicoff*, Civ. No. 04-2734, 2006 U.S. Dist. LEXIS 74019, at *17-18 (E.D.N.Y. Oct. 11, 2006).[3] While Ally (and other parties at Ally's urging) recently have issued clawback requests for hundreds of documents that may relate in some way to dealings with regulators, and Ally now argues on this motion that this process must be able to continue without end, Ally has done nothing to show the extent (if any) to which the documents it sought to claw back on this basis to date concerned matters of opinion or deliberation rather than purely factual material.

10. "[E]ven with respect to deliberative materials, the privilege is not absolute" but "can be defeated, for example, where necessary to promote the paramount interest of the Government in having justice done between the litigants." *See Bank of China*, 2004 U.S.

---

[3] *See also Principe*, 149 F.R.D. at 448 (enforcing subpoena as to "bank examination reports" after finding them "factual either in whole or in part"); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 585 (E.D.N.Y. 1979) ("The [OCC's] Examination Report contains the raw data of the bank examination, not the discussions, deliberations and consultations comprising part of a process by which governmental decisions and policies are formulated.") (quotation marks omitted); *Merchants Bank v. Vescio (In re Vescio)*, 210 B.R. 913, 918 (Bankr. D. Vt. 1997) (ordering production of FDIC reports of examination, compliance reports, and a memorandum of understanding where such "material is factual").

6

Dist. LEXIS 23364, at *13 (quotation marks omitted); *see also Principe*, 149 F.R.D. at 447 ("the bank examination privilege . . . may be overridden"); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 582 ("[s]trong competing interests" — such as in "accurate judicial fact finding" — "must be weighed against the government's interest"). Thus, courts in this circuit have found the balance of factors can tip in favor of disclosure even of documents shown to be deliberative in nature. *See Rouson*, 2006 U.S. Dist. LEXIS 74019, at *16 (ordering production of bank regulator's internal memorandum "upon balancing the competing interests").[4] In sum, there is nothing so special or absolute about the bank examination privilege that it supersedes the Court's inherent power to manage discovery and the process of the Examiner's investigation.

11.    Indeed, the very regulations to which Ally points make clear that they do not grant Ally a perpetual right to block disclosure, nor enshrine Ally as the decisionmaker of what material should or should not be disclosed. Those regulations were promulgated under 5 U.S.C. § 301, which "is nothing more than a general housekeeping statute." *See In re Bankers Trust Co.*, 61 F.3d at 470. Ally's obligation under those regulations is to bring the matter to the attention of the relevant regulators so that they, not Ally, can make appropriate determinations as to whether any action is required. *See, e.g.,* 12 C.F.R. § 4.37(b)(3) (OCC); 12 C.F.R. § 261.23(a) (FRB); 12 C.F.R. § 309.7(b) (FDIC). "Section 301 does not create an independent privilege to withhold government information," *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994), nor does it "provide 'substantive' rules regulating disclosure of government information." *In re Bankers Trust Co.*, 61 F.3d at 470.

---

[4] *See also Principe*, 149 F.R.D. at 448 ("[E]ven if portions of the bank examination reports are privileged, the privilege is overridden by the public interest in disclosure."); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 586 (ordering production of bank examination reports in part because "[a]ccurate judicial fact-finding is predominant"); *In re Vescio*, 210 B.R. at 920 ("the interests of justice require that the qualified banking examination privilege be overridden").

12. The "housekeeping statute" regulations to which Ally points do not limit the Court's power to manage discovery and grant the Examiner's Motion. They merely serve to centralize decision-making and do not "empower[] a federal agency to withhold documents or testimony from federal courts." *See In re Bankers Trust Co.*, 61 F.3d at 470. Because Section 301 "does not authorize withholding information from the public," 5 U.S.C. § 301, these regulations "cannot divest the district court of its authority to apply Rule 34 of the Federal Rules of Civil Procedure." *See In re Bankers Trust Co.*, 61 F.3d at 471; *see also Merchants Bank v. Vescio*, 205 B.R. 37, 41 (D. Vt. 1997) ("the Federal Rules . . . prevail over mere 'housekeeping' rules"). The Examiner's document requests were issued long ago and there was certainly ample time for Ally to coordinate as needed with regulators under the rules. The investigation cannot be held hostage indefinitely to any failure by Ally to have done so in a timely manner.

### ANY CONCERNS ABOUT WAIVER CAN BE EASILY ADDRESSED BY ADDING A "NO WAIVER" PROVISION TO THE ORDER PURSUANT TO FED. R. EVID. 502(d)

13. Certain objectors have raised a concern that any deadline on clawback requests will force them to immediately re-review their productions, in order to avoid the risk of waiving privilege on any inadvertently produced privileged document not yet clawed back. Because the Examiner has no interest in exposing any party to claims of waiver, is entirely disinterested in the outcome of any future proceedings that may take place in any forum, and does not seek to influence the outcomes of such proceedings in any way, there is a simple solution to any concern about waiver from failing to assert a clawback request.

14. The Examiner proposes that the Court's Order include as paragraph (e) the following "no waiver" provision as authorized by Fed. R. Evid. 502(d):

> (e) Pursuant to Fed. R. Evid. 502(d), no party shall be deemed to have waived privilege for the purposes of any proceeding (state or federal) as to any document (i) that was produced to the Examiner in this bankruptcy case (ii) as to which a Clawback Request was not made to the Examiner within the deadlines

specified in this Order (iii) where the claim of waiver is based solely upon such party's not having made a Clawback Request to the Examiner within the deadlines specified in this Order.

A revised version of the proposed order on this motion which incorporates this additional provision is attached hereto as <u>Exhibit 1</u> (with changes shown in a blackline at <u>Exhibit 2</u>).[5]

**THE EXAMINER SHOULD NOT BE REQUIRED AS A CONDITION OF OBTAINING RELIEF TO REVIEW AND POLICE FOR PRIVILEGE THE DOCUMENTS THAT HAVE BEEN PRODUCED TO HIM BY OTHER PARTIES**

15.     Certain objectors have suggested that the relief sought by the Examiner should be conditioned upon the Examiner's being responsible for policing the productions that the various parties have made to the Examiner (which now total more than 8.5 million pages) for privileged material, and on his own returning such material to the producing parties.

16.     There are two principal reasons why such a provision would be improper. The first is that such a provision would transfer the cost and burden of privilege review (and indeed potentially of document-by-document redaction) from the producing parties to the Examiner, and thus in effect to the Debtors' estate. Moreover, to now impose this task on the Examiner would itself pose a formidable obstacle to timely completion of the investigation and delivery of the report.

17.     On a more practical level, given what has taken place in the investigation to date, it is essentially impossible for the Examiner to form reliable conclusions about whether productions to the Examiner of documents that appear to be potentially privileged were done inadvertently or deliberately. Multiple parties in this investigation have produced documents to the Examiner that appear on their face to be at least arguably susceptible to claims of privilege,

---

[5] In response to another point raised by Ally, the Examiner notes that his original proposed order already was drafted to make clear by its terms that it pertained only to clawback requests *directed to the Examiner*. Nevertheless, for avoidance of doubt, the Examiner has no objection to including in the order the express paragraph to this effect proposed by Ally, and this language now appears as paragraph (f) in the revised proposed order attached at <u>Exhibit 1</u>.

but which the producing parties have used affirmatively in discussions with the Examiner in support of positions they have advocated. Parties have made inconsistent privilege and redaction decisions as to multiple copies of the same documents within their own productions. In this context, the Examiner is in no position to form reliable judgments about why a potentially privileged document was produced to the Examiner or what should be done with it.

18. For all these reasons, no provision imposing privilege review or clawback obligations on the Examiner should be included in the order the Court issues on this Motion.[6]

## CONCLUSION

WHEREFORE, the Examiner respectfully requests that this Court grant the Motion and enter the Examiner's revised proposed order, substantially in the form attached hereto as Exhibit 1, modifying paragraph 26 of the Protective Order to impose the requested deadlines with respect to the issuance of clawback requests thereunder, and grant the Examiner such other and further relief as the Court deems just and proper.

Dated: March 14, 2013
      New York, New York

**CHADBOURNE & PARKE LLP**

By:       */s/ Howard Seife*
Howard Seife
David M. LeMay
Thomas J. McCormack
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel to the Examiner*

---

[6] Equally unworkable is Goldin's proposal that, on the eve of issuing his report, the Examiner notify the parties of the documents to be cited therein and provide each party two business days to make additional clawback requests. Such a procedure would lead to disarray and potentially require dramatic changes to the report just days before it is intended to be issued. This proposal is thus not an acceptable approach.