**Hearing Date and Time: April 11, 2013 at 10:00 a.m.**
**Objection Deadline: March 25, 2013 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., [1] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF**
**MESIROW FINANCIAL CONSULTING, LLC FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES AS**
**FINANCIAL ADVISOR TO THE EXAMINER**
**FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

| | |
|---|---|
| Name of Applicant: | Mesirow Financial Consulting, LLC |
| Professional Services to: | The Examiner |
| Date of Retention: | August 29, 2012, *nunc pro tunc* to July 24, 2012 |
| Period for which Compensation and Reimbursement are Sought: | September 1, 2012 through December 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $10,671,089 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $     68,482 |
| Total Amount of Fees and Expense Reimbursement Sought as Actual, Reasonable and Necessary: | **$10,739,571** |

This is a(n):     ____ Monthly          _x_ Interim          ____ Final Application

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

Prior Monthly Fee Statements

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|
| 09/28/2012 | 07/24/2012 - 08/31/2012 | $ 3,007,275 | $ 30,048 | $ 2,681,925 | $ 28,557 |
| 11/02/2012 | 09/01/2012 - 09/30/2012 | 2,505,381 | 9,205 | 2,004,304 | 9,205 |
| 12/05/2012 | 10/01/2012 - 10/31/2012 | 2,898,967 | 33,968 | 2,319,174 | 33,968 |
| 01/02/2013 | 11/01/2012 - 11/30/2012 | 2,556,250 | 17,515 | 2,045,000 | 17,515 |
| 02/06/2013 | 12/01/2012 - 12/31/2012 | 2,723,418 | 15,716 | 2,178,735 | 15,716 |

Interim Fee Applications

| Date Filed | Period Covered | Approval Date | Total Fees Requested / Approved | Total Expenses Requested / Approved | Amounts Paid / Holdback Due |
|---|---|---|---|---|---|
| 10/19/2012 (Docket No. 1906) | 7/24/2012 - 8/31/2012 | 12/28/2012 (Docket No. 2530) | $ 3,007,275 / 2,979,917* | $ 30,048 / 28,557* | $ 2,710,482 / 297,992 |
| 03/14/2013 | 09/01/2012 - 12/31/2012 | Pending | $ 10,671,089 / Pending | $ 68,482 / Pending | $ 8,623,618 / Pending |

* Reflects certain reductions in settlement of the objection filed by the United States Trustee.

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al.,[2] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF
MESIROW FINANCIAL CONSULTING, LLC FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
FINANCIAL ADVISOR TO THE EXAMINER
FOR THE PERIOD SEPTEMBER 1, 2012 THROUGH DECEMBER 31, 2012**

Mesirow Financial Consulting, LLC ("MFC"), financial advisor to Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submits this Second Interim Fee Application (the "Application") for allowance of compensation for professional services rendered and reimbursement of expenses in connection with MFC's services to the Examiner. This Application seeks allowance and approval of the compensation for services rendered by professionals and actual and necessary expenses as described more fully herein for the period September 1, 2012 through December 31, 2012 (the "Second Interim Fee Period").

---

[2] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

3

**PRELIMINARY STATEMENT**

1. By this Application and pursuant to sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012 (the "Interim Compensation Order"), MFC seeks allowance and approval of reasonable compensation in the amount of $10,671,089 for 16,785.3 hours of professional services rendered to the Examiner, and reimbursement of $68,482 for actual and necessary expenses and disbursements incurred, for a total of $10,739,571 for the Second Interim Fee Period.

2. This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases effective as of February 5, 2013 (the "Local Guidelines") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with the Local Guidelines, the "Guidelines"). Pursuant to the Guidelines, a certification regarding compliance with same is attached hereto as **Exhibit G**.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules and Rule 2016-1 of the Local Rules.

**BACKGROUND**

4.      The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c). On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision"). On June 28, 2012, the Court entered the Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order").

6.      On July 3, 2012, the United States Trustee for the Southern District of New York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval. On that same date, the Court entered an order approving the appointment.

7.      Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner was directed to conduct an investigation of a scope, timing, and budget to be set by the Court after the Examiner had conferred with other parties in interest. After the requisite consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "Scope Order").

8.      The Examiner filed the Work Plan of Arthur J. Gonzalez, Examiner on August 6, 2012 (the "Initial Work Plan") and filed supplements thereto on August 23, 2012 (the "First Supplemental Work Plan"), November 26, 2012 (the "Second Supplemental Work Plan")

5

and February 8, 2013 (the "Third Supplemental Work Plan"). The Initial Work Plan indicated that the Examiner believed that a realistic time frame for the preparation of a report containing his findings regarding the investigation was six months (*i.e.*, report issuance in early February, 2013), subject to adjustment after meaningful due diligence. The Initial Work Plan further noted that the Examiner was not yet able to assess the full scope of the efforts he would need to undertake, did not yet know when requested discovery would be produced and did not yet know whether and to what extent he would obtain cooperation on document production and access to persons he believed were material witnesses. The Second Supplemental Work Plan and the Third Supplemental Work Plan cited factors including the extent and timing of document productions by parties-in-interest and the schedules for witness interviews as factors necessitating that the deadline be extended first to early April, 2013, and then by one additional month to early May, 2013.

9. On February 25, 2013, the Debtors filed their Monthly Operating Report for the Period from January 1, 2013 through January 31, 2013, indicating that the Debtors had cash and equivalents of approximately $1.7 billion, total assets of approximately $10.4 billion and liabilities not subject to compromise of approximately $6.4 billion.

10. On March 5, 2013, the Court entered the Order Further Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof through and including April 30, 2013 and July 1, 2013, respectively.

## RETENTION OF MFC

11. MFC, a full service financial advisory consulting firm, provides corporate recovery, litigation, investigative and intelligence services, valuation services, interim management and distressed M&A and capital raising services.

12. On August 13, 2012, the Examiner filed the Application of the Examiner for Order Authorizing the Retention and Employment of Mesirow Financial Consulting, LLC as Financial Advisor to Examiner *nunc pro tunc* to July 24, 2012 (the "Employment Application"). On August 29, 2012, this Court entered an Order authorizing the retention and employment of MFC (the "Retention Order").

13. MFC's requested compensation for professional services rendered to the Examiner is based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate. The normal and customary hourly rates for financial advisory services rendered by MFC during the Second Interim Fee Period and applicable herein are as follows:

| Level | Hourly Rates |
| --- | --- |
| CEO, Senior Managing Director, Managing Director and Director | $855-$895 |
| Senior Vice President | $695-$755 |
| Vice President | $595-$655 |
| Senior Associate | $495-$555 |
| Associate | $315-$425 |
| Paraprofessional | $160-$250 |

**SUMMARY OF PROFESSIONAL COMPENSATION
AND REIMBURSEMENT OF EXPENSES REQUESTED**

14. On October 19, 2012, MFC filed the First Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period July 24, 2012 through August 31, 2012 (the "First Interim Application"). In the First Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the First

7

Interim Fee Period in the amount of $3,007,275 and (ii) reimbursement of actual and necessary expenses incurred by MFC during the First Interim Fee Period in the amount of $30,048.

15. MFC did not seek compensation for 171.9 hours and $104,358 in fees or reimbursement for $18,956 in expenses incurred in this matter during the First Interim Fee Period but voluntarily excluded from the First Interim Application. Additionally, MFC's First Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel and seventy-five percent (75%) of fees related to the retention application, totaling $119,070. Finally, MFC agreed to additional reductions of $27,358 in fees and $1,491 in expenses in settlement of the Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim Compensation and Reimbursement of Expenses filed December 7, 2012. As such, MFC's total fee and expense reductions in the First Interim Fee Period were $271,233.

16. On December 28, 2012, the Court entered the Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses granting MFC's request for fees in the amount of $2,979,917 and expenses in the amount of $28,557.

17. By this Application, MFC seeks (i) an interim allowance of compensation for professional services rendered to the Examiner during the Second Interim Fee Period in the amount of $10,671,089 and (ii) reimbursement of actual and necessary expenses incurred by MFC during the Second Interim Fee Period in the amount of $68,482. During the Second Interim Fee Period, MFC professionals and paraprofessionals expended a total of 16,785.3 hours for which compensation is requested. The blended hourly rate for all services during the Second Interim Fee Period was $636.

18. MFC is not seeking compensation for 159.4 hours and $97,992 in fees or reimbursement for $11,470 in expenses incurred in this matter during the Second Interim Fee

8

Period but voluntarily excluded from this Second Interim Fee Application. Additionally, MFC's Second Interim Application reflects voluntary reductions for fifty percent (50%) of non-working travel ($95,542), and for 39.2 hours and $12,927 in fees and $7,922 in expenses included in the monthly fee statements and noted in the detail herein. As such, MFC's total fee and expense reductions in the Second Interim Fee Period have totaled $225,853. MFC's average hourly rate including the voluntarily reduced hours was $628.

19. Attached as **Exhibit A** hereto is a summary of hours and fees incurred during the Second Interim Fee Period setting forth the names, titles, hourly rates and total hours charged for the professionals and paraprofessionals providing services during the Second Interim Fee Period. Attached as **Exhibit B** hereto is a summary schedule of hours and fees incurred by professional for each monthly period during the Second Interim Fee Period. Attached as **Exhibit C-1** hereto is a summary schedule of hours and fees incurred by category of services for each monthly period during the Second Interim Fee Period. Attached as **Exhibit C-2** hereto is a summary schedule of hours and fees incurred by each professional for each category of services provided during the Second Interim Fee Period. Attached as **Exhibit D** hereto are the redacted detailed daily descriptions of services rendered by each professional and paraprofessional and billed to the estate during the Second Interim Fee Period for each category, including the hours necessarily incurred with respect to each task and the resultant fees.

20. The following is a summary of the services provided by MFC professionals and paraprofessionals during the Second Interim Fee Period, by category:

a. <u>Case Administration / General Bankruptcy Matters</u>

　　Fees: $165,858　　　　Hours: 307.1

During the Second Interim Fee Period, MFC performed various general and administrative tasks to support its work on this engagement. MFC addressed knowledge management and technology matters, including data extraction and assembly, email search techniques, Relativity electronic document management support, internal shared drive management, and ongoing support, customization and population of Synthesis, an MFC proprietary web-based analytical tool designed to synthesize and analyze data and information, manage workflows and coordinate engagement activities. MFC prepared and monitored fee forecasts as requested by the Examiner and the Debtors and identified skills and professional resources necessary to accomplish the work plans for various functional and transaction teams. Finally, MFC disseminated relevant information and coordinated various meetings, agendas and other efforts internally and with Chadbourne, the Examiner, and counsel and financial advisors to the Debtors, Ally Financial, Inc. ("AFI") and other parties-in-interest.

b.    Document Review and Analysis

Fees: $6,677,109    Hours: 10,719.1

MFC's primary efforts during the Second Interim Fee Period were directed towards the review and analysis of relevant information from a number of sources in support of a broad range of quantitative and qualitative issues relevant to the scope of the Examiner's investigation. MFC received numerous documents from various constituents pursuant to production requests during the Second Interim Fee Period. During this period, the Relativity database was populated with over three million pages of documents, and numerous publicly available documents and data sources were utilized as well. MFC professionals performed an initial review of documents received in each production in order to identify those relevant to ascertaining the financial impact of various transactions, the financial condition of the Debtors at various points in time, and

10

relevant aspects of decision-making related thereto. Based on use of search terms and other preliminary review, summaries of the types of documents identified and access to the relevant files were provided to team members based on their assigned areas of responsibility. Using the documents obtained, MFC transaction teams undertook various detailed analyses of numerous pre-petition and post-petition transactions between or among the Debtors and AFI, Cerberus or their direct or indirect affiliates or subsidiaries, and issues related thereto, including but not limited to the following:

- transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts;

- payments, dividends or capital contributions;

- extensions of loans or lines of credit, including factoring arrangements;

- debt, or liens related thereto, or the transfer assignment, repayment or forgiveness of such debt;

- claims and payments made on account of such claims;

- negotiation and entry into plan sponsor, plan support, or settlement agreement;

- the debtor-in-possession financing with AFI;

- the stalking horse asset purchase agreement with AFI;

- the post-petition servicing agreements with Ally Bank;

- activities of the Debtors' officers and board of directors concerning pre-petition and post-petition transactions and agreements;.

- the Debtors' decision to file (or to refrain from filing, or delaying the filing of) voluntary petitions under Chapter 11 of the United States Bankruptcy Code;

- the Debtors' decisions to pursue (or refrain from pursuing) a sale of substantially all of their assets;

11

- the financial and related foundational aspects of state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders, including but not limited to the following:

  - preference and fraudulent transfer claims,
  - equitable subordination claims,
  - alter ego and veil piercing claims,
  - debt recharacterization claims,
  - constructive trust and unjust enrichment claims,
  - breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims,
  - securities law claims,
  - claims held by third parties, *i.e.,* parties that are not affiliates of the Debtors, and
  - the value of the releases contemplated by the Debtors.

The complexity and scope of the transactions required that MFC perform discrete quantitative financial, accounting, tax, economic and valuation analyses over several years, as well as qualitative analyses as to ResCap's decision making process and governance. MFC produced numerous analyses summarizing the financial aspects of many of the transactions under review, including quantitative and analytical support data regarding reasonably equivalent value and damages. Further, a thorough analysis of ResCap's financial condition is a central underpinning of many of these investigatory areas. MFC's work has included assessing balance sheet solvency, adequacy of capital and ability to pay debts as due over the relevant time periods for the Debtors and key subsidiaries.

c.  Fee / Retention Applications

Fees: $239,235    Hours: 680.6

This category, which comprises 2.2% of total fees during the Second Interim Fee Period, includes the preparation of the detailed monthly statements and interim fee applications, as required, in order to comply with the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Interim Compensation Order and other guidelines governing the payment of professionals in these cases.  In this regard, MFC undertook analyses and reconciliations of time and expenses incurred in the First and Second Interim Fee Periods, and prepared the First Monthly Fee Statement for July 24, 2012 through August 31, 2012, the Second Monthly Fee Statement for September 2012, the Third Monthly Fee Statement for October 2012 and the Fourth Monthly Fee Statement for November 2012.  MFC prepared both redacted and unredacted versions of the time detail attached to its monthly fee statements to ensure that investigation details and strategy were not prematurely disclosed to any case party.  MFC also prepared the First Interim Application, including both narrative and exhibits.  This category also includes monitoring of actual fees incurred relative to forecasts.

d.  Report Drafting

Fees: $176,654    Hours 227.3

As a precursor to the report, MFC provided content and otherwise reviewed and revised the first and second stage narratives prepared by Chadbourne evaluating each of the transactions under investigation.  MFC also prepared financial narratives to summarize the economic impact of the transactions including relevant documents identified and supporting analyses performed. MFC initiated drafting report sections on macroeconomic, industry and capital markets developments and their impact on ResCap and other affiliated entities. MFC participated with its

13

Chadbourne counterparts on a report drafting team to develop the structure, drafting process and content for the Examiner's report. MFC reviewed and assisted Chadbourne in drafting a detailed outline of the Examiner's report and certain content therein, focusing upon the financial sections of the report outline and overall report themes. MFC also developed a detailed list of potential exhibits, tables and figures for each section of the report and commenced preparation of the same.

e.      Substantive Investigation Planning and Coordination

Fees: $1,029,040       Hours 1,223.1

During the Second Interim Fee Period, MFC's various transaction and functional teams, as well as the engagement leadership team, spoke or met regularly to plan and coordinate work, assess progress and discuss the results of document reviews and analyses underway. MFC also regularly communicated and met with the Examiner and Chadbourne to perform planning and coordination, discuss preliminary observations and findings and address substantive case issues. These calls and meetings included weekly update calls between Chadbourne and MFC as well as weekly calls among Chadbourne, MFC and the Examiner. On an ad hoc basis, Chadbourne and MFC scheduled extended meetings at which key topics, information and implications for the investigation could be discussed, and at which MFC made substantive presentations to facilitate those discussions. Given the breadth and complexity of the subject matter and the limited time allotted for the Examiner's investigation, frequent communication within MFC's leadership and project teams, as well as between MFC, Chadbourne and the Examiner, was critical to ensuring that the investigation progressed effectively, work was coordinated to avoid duplication of effort, and information was disseminated in a timely and efficient manner to appropriate individuals working on a variety of distinct yet interrelated efforts. Whether internal or with counsel, various meetings and calls had multiple participants to ensure that individuals with different subject

matter knowledge, functional areas of expertise, or roles within the transaction and engagement teams were involved and provided with appropriate information and guidance. Finally, this category also included the ongoing development, modification and assessment of progress relative to detailed work plans for each area of work underway.

f.     Travel Time

  Fees: $95,542     Hours 221.3

This category includes non-working travel time to attend various meetings and other case functions with counsel and team members, primarily in New York. MFC also traveled to Fort Washington, Pennsylvania for meetings with ResCap and to Detroit for a meeting with AFI, as well to various locations to attend witness interviews, including New York, Charlotte, San Francisco and Salt Lake City. Fees for non-working travel time were reduced by fifty percent ($95,542), and one-way travel time was generally limited to four (4) hours absent extraordinary circumstances.

g.     Witness Interviews and Discovery

  Fees: $2,287,652     Hours 3,406.8

During the Second Interim Fee Period, MFC supported Chadbourne in conducting interviews of 38 witnesses. MFC professionals collaborated with the Examiner and Chadbourne to identify prospective witnesses for interview. MFC assisted in preparation for witness interviews, including developing questions specific to the transactions or other matters at issue. MFC performed targeted document searches to identify relevant financial documents for certain witnesses, and also reviewed and provided input for the witness binders compiled by Chadbourne. MFC attended the interviews to address a broad range of financial and related issues and participated in questioning witnesses.

In addition to the interview process, MFC team leaders with knowledge of the relevant transactional or functional areas being discussed attended meetings with the Debtors, AFI, the Official Committee of Unsecured Creditors and various creditor constituents or other parties-in-interest. MFC also conducted multiple calls and initiated meetings with the Debtors, AFI and their financial advisors and led an ongoing dialogue to obtain and discuss specific accounting and financial information needed for analysis. Finally, MFC assisted counsel in drafting highly detailed and ongoing document requests to various parties-in-interest, as well as monitoring, evaluating and communicating with parties-in-interest regarding responses received in connection therewith.

21. Attached as **Exhibit E** hereto is a summary schedule of actual and necessary expenses by category incurred for each monthly period during the Second Interim Fee Period. Attached as **Exhibit F** hereto are the detailed descriptions of expenses incurred by each professional and billed to the estate during the Second Interim Fee Period for each category. MFC is seeking reimbursement for actual and necessary out of pocket expenses of $68,482 during the Second Interim Fee Period, after the voluntary reductions described herein.

22. MFC has billed airfare only for coach class tickets or the contemporaneous equivalent thereto; has not billed in-town ground transportation; has limited lodging to the lesser of actual cost or $400 per night; has limited amounts billed for each out of town dinner to the lesser of actual cost or $20 per person; and has limited charges for copies to the lesser of $0.10 per page or cost.

23. MFC performed the above professional services and other necessary activities at the request and direction of the Examiner and his counsel, and closely coordinated such services with the Examiner and his counsel to avoid duplication of effort. Communication

16

among MFC, the Examiner and his counsel has been frequent, and such communication has been critical to ensuring that MFC's work was performed in an efficient and effective manner. Given the depth and breadth of the Examiner's scope and the limited time available to conduct the work required, the services provided by MFC were essential to assisting the Examiner and his counsel and were reasonable and necessary under the circumstances.

24.     All professional services and expenses for which an allowance is requested were performed or incurred by MFC for and on behalf of the Examiner and not on behalf of any other entity or party-in-interest.

25.     The fees and expenses sought by MFC, except to the extent prohibited by the Guidelines, are billed at rates and in accordance with practices customarily employed by MFC and generally accepted by MFC's clients. MFC's rates are established after a comprehensive review of public information regarding our competitors' requested rates of compensation and careful consideration of the marketplace by our senior leadership team and are routine and generally applicable to all clients.

26.     MFC's compensation sought in this Application is based on the customary compensation charged by comparably skilled practitioners in cases other than in chapter 11. Further, the compensation is consistent with that awarded to financial advisors in chapter 11 cases of a similar size and complexity.

27.     During the Second Interim Fee Period, other than pursuant to the Interim Compensation Order, MFC has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.

28. No agreement or understanding exists between MFC and any other person for the sharing of compensation to be received for services rendered in, or in connection with, these cases.

## **NOTICE AND NO PRIOR APPLICATION**

29. Pursuant to the Interim Compensation Order, notice of this Application has been served upon the following parties (collectively, as further defined in the Interim Compensation Order, the "Notice Parties"): (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for Ally Financial Inc.; and (v) counsel for Barclays Bank PLC. In light of the nature of the relief requested herein, MFC submits that no further or other notice is required.

30. No previous application for relief sought herein has been made to this or any other court.

## **CONCLUSION**

**WHEREFORE,** MFC respectfully requests that this Court issue and enter an order (i) authorizing compensation in the amount of $10,671,089 for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $68,482 during the Second Interim Fee Period for a total fee and expense request of $10,739,571; (ii) authorizing and directing the Debtors to remit payment to MFC as set forth herein, less all amounts previously paid on account of such fees and expenses; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 14, 2013

**MESIROW FINANCIAL CONSULTING, LLC**

By: */s/ Ralph S. Tuliano*
Ralph S. Tuliano
Chief Executive Officer
Mesirow Financial Consulting, LLC
666 Third Avenue, 21st Floor
New York, NY  10017