**Hearing Date and Time: April 11, 2013 at 10:00 a.m.**
**Objection Deadline: March 25, 2013 at 4:00 p.m.**

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 408-5100
Facsimile:   (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al.,[1] | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF CHADBOURNE & PARKE LLP,
COUNSEL TO THE EXAMINER, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD SEPTEMBER 1, 2012 THROUGH AND INCLUDING DECEMBER 31, 2012**

| | |
|---|---|
| Name of Applicant: | Chadbourne & Parke LLP |
| Authorized to Provide Professional Services To: | The Examiner |
| Date of Retention: | August 9, 2012, *nunc pro tunc* to July 11, 2012 |
| Period for Which Compensation and Reimbursement is Sought: | September 1, 2012 through December 31, 2012 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $17,301,345.50[2] |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $     563,507.73[3] |

---

[1]  The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

[2]  Reflecting a reduction in the amount of $6,659.50 as a fee credit as described in the Application.

[3]  Reflecting a reduction in the amount of $20,156.51 as an expense credit as described in the Application.

This is a(n):    ____ Monthly        _x_ Interim        ____ Final Application

Prior Monthly Fee Statements:

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Approved/ Paid (80%) | Expenses Approved/Paid |
|---|---|---|---|---|---|
| 9/28/2012 | 7/11/2012 - 8/31/2012 | $3,295,849.50 | $127,003.11 | $2,636,679.60 | $127,003.11 |
| 11/2/2012 | 9/1/2012 - 9/30/2012 | $3,580,139.00 | $ 54,579.03 | $2,864,111.20 | $ 54,579.03 |
| 11/30/2012 | 10/1/2012 - 10/31/2012 | $3,790,187.50 | $124,520.27 | $3,032,150.00 | $124,520.27 |
| 1/02/2013 | 11/1/2012 - 11/30/2012 | $5,658,240.50 | $125,324.05 | $4,526,592.40 | $125,324.05 |
| 1/30/2013 | 12/1/2012 - 12/31/2012 | $4,297,438.00 | $279,240.89 | $3,423,550.40 | $279,240.89 |

Interim Fee Application Summary

| Interim Fee Application | Dates Covered by Interim Fee Period | Bankruptcy Court Approval Date | Total Final Requested (Fees and Costs) | Amount Approved/ Paid | Holdback Amount Due (10%) |
|---|---|---|---|---|---|
| 1 (Docket No. 1897) | July 11, 2012 - August 31, 2012 | December 28, 2012 (Docket No. 2530) | $3,389,860.32** | $3,062,216.83 | $327,643.49 |

** Reflects certain deductions ($32,992.29) agreed to after discussions with the United States Trustee.

2

Hearing Date and Time: April 11, 2013 at 10:00 a.m.
Objection Deadline: March 25, 2013 at 4:00 p.m.

**CHADBOURNE & PARKE LLP**
Howard Seife
David M. LeMay
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-5100
Facsimile: (212) 541-5369

*Counsel for the Examiner*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**SECOND INTERIM FEE APPLICATION OF CHADBOURNE & PARKE LLP,
COUNSEL TO THE EXAMINER, FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE
PERIOD SEPTEMBER 1, 2012 THROUGH AND INCLUDING DECEMBER 31, 2012**

Chadbourne & Parke LLP ("Chadbourne"), as counsel to the Court-appointed Examiner (the "Examiner") in the Chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits this Second Interim Fee Application (the "Application"), for Allowance of Compensation and Reimbursement of Expenses For the Period September 1, 2012 Through December 31, 2012 (the "Application Period"). This Application is submitted pursuant to sections 330, 331 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012

(the "Interim Compensation Order"). In support of the Application, Chadbourne respectfully represents as follows:

## BACKGROUND

1. The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c). On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision"). On June 28, 2012, the Court entered the Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order").

3. On July 3, 2012, the United States Trustee for the Southern District of New York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval. On that same date, the Court entered an order approving the appointment.

4. On July 17, 2012, Arthur J. Gonzalez filed the Application of the Examiner for Order Authorizing the Retention and Employment of Chadbourne & Parke LLP as Counsel to the Examiner *Nunc Pro Tunc* to July 11, 2012. On August 9, 2012, the Court entered an order (the "Retention Order") approving Chadbourne's retention.

5. Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner was directed to conduct an investigation of a scope and timing to be set by the Court after the Examiner had conferred with other parties in interest. Examiner Order at

2

p. 2.  After the required consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "<u>Scope Order</u>").

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## COMPLIANCE WITH GUIDELINES AND ORDER GOVERNING APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

7.    This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases effective as of February 5, 2013 (the "<u>Local Guidelines</u>") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "<u>UST Guidelines</u>" and, together with the Local Guidelines, the "<u>Guidelines</u>").  Pursuant to the Guidelines, a certification regarding compliance with same is attached hereto as <u>Exhibit A</u>.

## SUMMARY OF APPLICATION

8.    Chadbourne seeks compensation for professional services rendered to the Examiner during the Application Period in the aggregate amount of $17,301,345.50 and reimbursement of actual and necessary expenses incurred in connection with the rendition of services during the Application Period in the aggregate amount of $563,507.73.  During the Application Period, Chadbourne attorneys and paraprofessionals expended a total of 30,466.40 hours for which compensation is requested.

9.      A summary of the hours spent, the names of each professional and paraprofessional rendering services to the Examiner during the Application Period, the regular customary billing rates and the total value of time incurred by each of Chadbourne's professionals and paraprofessionals rendering services to the Examiner is attached hereto as Exhibit B.

10.     Pursuant to the Guidelines, a schedule setting forth a description of the project categories utilized in this case, the number of hours expended by Chadbourne partners, associates and paraprofessionals by project category, and the aggregate fees associated with each project category is attached hereto as Exhibit C.

11.     A summary of the actual and necessary expenses incurred by Chadbourne is attached as Exhibit D which provides itemized expense detail

12.     Chadbourne maintains computerized records of the time spent by all professionals and paraprofessionals rendering services to the Examiner during the Application Period. Redacted copies of these computerized records are attached hereto as Exhibit E.

## SUMMARY OF SERVICES
## DURING THE APPLICATION PERIOD

13.     As set forth in the detailed computerized records attached hereto as Exhibit E, fees incurred by Chadbourne during the Application Period total $17,301,345.50. This amount reflects a reduction for fees sought in Chadbourne's September and October monthly fee statements in the amount of $6,659.50 for certain transient time recorders and librarians as indicated in Exhibit B. The services rendered by Chadbourne during the Application Period are grouped into specific project categories as set forth in Exhibit C. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category.

4

14.     The following is a summary of the activities performed by Chadbourne attorneys and paraprofessionals during the Application Period, organized by project category.

### A.     Case Administration/General Bankruptcy Matters

15.     This category consists of time spent on matters related to the investigation on behalf of the Examiner that are not within the scope of other categories.  Tasks in this category include the following (i) daily monitoring and retrieval of all newly filed pleadings from the Bankruptcy Court's docket and preparation and distribution of related status reports; (ii) assisting attorneys in preparation of papers for electronic filing; (iii) preparation and daily updating of master task list, case calendar and timeline to facilitate the investigation process; (iv) drafting agendas for weekly meetings with the Examiner and his professionals and meetings with other interested parties; (v) preparing for and attending various omnibus hearings and court conferences on behalf of the Examiner; and (vi) reviewing and preparing summaries of pertinent case filings in which the Examiner has an interest.

16.     Chadbourne also spent time maintaining a shared drive which provides a repository for the numerous case-related documents.  Maintaining the shared drive allows members of the Chadbourne investigation team to access and analyze case documents.

### B.     Report Drafting and Legal Research

17.     During the Application Period, Chadbourne attorneys were substantially engaged in synthesizing and analyzing the information garnered through the Examiner's investigation and researching relevant legal issues in connection therewith.  Chadbourne began its analysis of pertinent legal issues based upon the facts arising from the relevant transactions and agreements, on materials produced by the parties, as well as testimony adduced and information obtained through the witness interviews.

5

C.   **Document Review and Analysis**

18.   A substantial component of the Examiner's investigation is the ongoing comprehensive review of all documents and materials produced by the parties that are relevant to the investigation. Following the Bankruptcy Court's entry of the Scope Order, the parties started to produce documents responsive the Examiner's request. Production continued for many months and, in fact, continued with substantial inflows of documents during the first quarter of 2013.

19.   During the Application Period, over three million pages of documents were produced to the Examiner. Accordingly, Chadbourne attorneys were required to devote a significant amount of time to the review of the documents. Chadbourne's efforts in this regard included, but were not limited to, (a) an initial first tier review and analysis of each document produced for relevance to any aspect of the Examiner's investigation;[4] (b) second tier review and analysis of key documents identified from the initial review by respective transaction team members; (c) analysis and summarization of the various key transaction documents; and (d) specific and targeted document searches and related analyses on certain discrete issues raised through the examination; (e) further review and analysis of relevant documents for use in interviews with parties-in-interest and for use in the Examiner's report. This process is ongoing.

D.   **Witness Interviews and Discovery**

20.   In order to obtain the facts to address the issues and matters specified in the Scope Order, in addition to the review and analysis of the produced documents and materials, Chadbourne attorneys conducted numerous witness interviews. During the Application Period, Chadbourne conducted thirty-eight witness interviews. Consequently, Chadbourne devoted

---

[4] In response to the large volume of documents produced, in November 2012 Chadbourne hired and trained contract attorneys to conduct first tier document review. After a short period of time, it was necessary to obtain full staffing of the trained contract attorneys and all first tier document review was done by the contract attorneys.

considerable professional and paraprofessional resources to preparing for and conducting the interviews. Efforts included, but were not limited to, review and analysis of documents relevant to the party to be examined and preparation of document summaries, drafting of detailed outlines of areas of inquiry, analysis of certain transcripts from prior witness interviews that might assist in examining the party to be interviewed, and preparing of comprehensive memoranda on the foregoing to ensure that the interviewer was fully prepared for the interview. Due to the nature and scope of the issues covered by the investigation, the interviews generally extended over many hours, and in some cases, multiple days.

21.     During the Application Period, Chadbourne attorneys continued to devote time to identifying potential individuals who might be interviewed and on further areas of discovery. In connection therewith, Chadbourne attorneys collaborated with the Examiner's financial advisors on related protocols and strategies.

E.     **Investigation Planning and Coordination**

22.     General planning sessions among the Examiner, Chadbourne and the Examiner's financial advisor, Mesirow Financial Consulting ("Mesirow") are critical to the efficient conduct of the Examiner's investigation. These sessions enable the Examiner and the Chadbourne and Mesirow teams to report on and discuss all areas of the investigation, as well as prepare for and coordinate steps going forward. In addition, given the tight timeframe permitted for the investigation and the complexity of the various transactions under review, the transaction teams tasked with the review and analysis of the various transactions met routinely to discuss the status of their analyses. Moreover, the transaction teams met with the report structuring team during this process to discuss their analyses and conclusions and to make appropriate recommendations for development of the Examiner's report.

23. During the Application Period, the Examiner and his professionals met on many occasions with interested parties to discuss a variety of different topics. The Examiner and his professionals continue to meet with interested parties on an ongoing basis and have open dialogues with various case professionals, including various parties' financial advisors. Meetings included those with representatives of the Debtors, the Committee, Ally Financial, the Steering Committee of RMBS holders represented by Kathy Patrick, the RMBS Trustees, the Junior Secured Notes, the Unsecured Notes, MBIA, AIG, and Triaxx.

24. Chadbourne attorneys also attended several on-site meetings with Ally Financial in Detroit, Michigan and with the Debtors in Fort Washington, Pennsylvania. Other meeting attendees included management and financial personnel of Ally Financial and the Debtors, their respective counsel, and the Examiner's financial advisors. The purpose of each of these meetings was to understand the financial records and the accounting and reporting systems of Ally Financial and the Debtors, including changes over time, and to facilitate the timely and efficient gathering of detailed and specific financial data required by the Examiner's financial advisors.

25. The investigation of third-party claims has been a significant undertaking, particularly with respect to assessing the legal merits of the various potential claims against Ally Financial and non-debtor related affiliates and addressing the sufficiency of the consideration to be provided for the third-party releases. During the Application Period, Chadbourne solicited and received numerous submissions from those parties and expended time reviewing and analyzing the validity and scope of those claims. Upon agreement by all parties, those submissions were shared with the Debtors, Ally Financial and the Creditors' Committee in order to obtain their input on the potential claims. Chadbourne attorneys also researched and gathered complaints and all relevant major pleadings filed in connection with these third-party claims.

This information is being analyzed and taken into account in the preparation of the Examiner's report.

26. Chambers conferences were held on November 5, 19 and 20, 2012 to discuss various discovery-related factors that contributed to the need to extend the projected deadline for completion of the Examiner's report. Accordingly, on November 26, 2012, Chadbourne prepared and filed the second supplement to the Examiner's work plan.

**F.  Fee/Retention Applications**

27. This category encompasses all tasks relating to compliance with the Interim Compensation Order. During the Application Period, Chadbourne prepared and served the Examiner's and Chadbourne's monthly fee requests. Also, Chadbourne prepared and filed the Examiner's and Chadbourne's first interim fee applications.

28. During this time, Chadbourne also assisted the Examiner in his efforts to retain Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as conflicts' counsel to represent the Examiner with aspects of the investigation concerning certain discovery subjects.

**G.  Non-Working Travel**

29. During the Application Period, Chadbourne attorneys expended time travelling to attend and conduct the various witness interviews. Chadbourne attorneys also travelled to Detroit, Michigan and Fort Washington, Pennsylvania to attend meetings with ResCap accounting personnel. The hours reflect non-working travel time and the fees requested are at 50% of Chadbourne's normal hourly rates.

**ACTUAL AND NECESSARY EXPENSES**

30.  As set forth in Exhibit D hereto, Chadbourne has incurred $563,507.73 in actual, necessary expenses in providing professional services to the Examiner during the Application Period.  This amount reflects a credit of $20,156.51 for certain expenses which are described herein.

31.  With respect to photocopying expenses, Chadbourne's standard charge for photocopies is $0.20/per page.  For purposes of these Chapter 11 cases, Chadbourne has reduced this charge to $0.10/per page. (This Application reflects a credit in the amount of $18,920.20 for photocopy charges sought at $0.20/per page in Chadbourne's September and October monthly fee statements.)   With respect to facsimile expenses, in compliance with the Guidelines, Chadbourne does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than $1.25 per page permitted by the Guidelines.  These charges are intended to cover Chadbourne's direct operating costs, which costs are not incorporated into Chadbourne's hourly billing rates.  Only clients who actually use services of the types set forth in Exhibit D are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Chadbourne to cover the related expenses of its photocopying service.  A determination of the actual expense per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.  Each of these categories of expenses does not exceed the maximum rate set by the Guidelines.  With respect to word-processing costs, Chadbourne does not include word processing charges in the firm's overhead for purposes of

setting billing rates, nor does Chadbourne seek reimbursement of any word-processing charges in this Application.

32. Given the vast amount of photocopying necessary to carry out the review of documents and preparation for witness interviews, Chadbourne will often utilize outside vendors to minimize turnaround time. When using these services, Chadbourne's policy is to bill the client for these services at the amount charged by the outside vendor.

33. In accordance with the Guidelines, in seeking reimbursement for long distance telephone charges, Chadbourne currently charges clients its approximate actual cost paid to its long distance carriers. Chadbourne uses outside vendors for conference call services and requests reimbursement only for the amount billed to Chadbourne by the third-party vendors.

34. With respect to legal research expenses, Chadbourne has entered into flat-fee contracts with Lexis/Nexis and Westlaw for the provision of online research services. In order to determine charges to individual clients, the flat fees charged to Chadbourne by Lexis/Nexis and Westlaw are allocated among those clients based on the actual number and scope of searches conducted on behalf of those clients.

35. In connection with the investigation, Chadbourne entered into a contract for electronic data discovery services with Complete Document Source Inc. ("CDS"). Chadbourne utilizes the CDS hosted electronic discovery database (Relativity) in connection with its document review. The CDS charges incurred during the Application Period represent a monthly hosting fee as well as processing fees for loading data and/or converting data to a searchable format. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

36. To facilitate the investigation process, Chadbourne entered into a contract with Firmex, a virtual data room where the Examiner and his professionals can share large volumes of confidential material online with authorized parties. The charges incurred during the Application Period represent an annual subscription fee and hosting charges. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

37. With respect to court reporter fees, Chadbourne utilized the services of an outside vendor for videography/transcription services in connection with the interviews conducted by Chadbourne. The reimbursement amounts also represent costs for obtaining court hearing transcripts and deposition transcripts. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

38. With respect to the witness fee expense, Chadbourne reimbursed a witness for actual costs incurred with respect to his travel to New York in connection with his interview.

39. Chadbourne attorneys and paraprofessionals utilize the services of West Publishing and Bloomberg Law for research and retrieval of various court documents and public records to assist in the investigation. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

40. Chadbourne attorneys and paraprofessionals also use PACER (Public Access to Court Electronic Records) as a tool to research and obtain vital information about these Chapter 11 Cases and cases in interest. Chadbourne charges $.10/per page for the first thirty pages, the rate at which Chadbourne is charged by PACER.

41. During the Application Period, Chadbourne utilized the services of a process server (EPS Judicial Process) for service of 2004 documents on a discovery target. In seeking

reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred.

42. During the Application Period, Chadbourne conducted numerous interviews and held various meetings with the Examiner's professionals and other parties at Chadbourne's offices. In connection therewith, Chadbourne seeks reimbursement for catering services for these events. Itemized detail of these catering events is provided in Exhibit D-1 attached hereto.

43. During the Application Period, Chadbourne utilized outside temporary services for paraprofessional services (R.R. Donnelly) to assist in the review and preparation of voluminous board documents and other relevant materials in preparation for witness interviews. Temporary litigation support services (Cybersearch) were required while Chadbourne's litigation support analyst was on leave from the firm. These crucial services included the formatting of documents received by the parties, working with vendors to receive hard copy and electronic versions of documents, and uploading documents to the database.

44. After consulting with the Examiner, Chadbourne entered into an agreement with Update Legal, a legal staffing firm which has provided Chadbourne with a number of contract attorneys to assist in the review of the millions of pages of documents produced and to be produced to the Examiner. The initial document review work is intensive but of limited duration, and it is therefore most effective and cost-efficient for these services to be performed by contract attorneys rather than by Chadbourne attorneys. In seeking reimbursement for these outside professional services, Chadbourne requests reimbursement for the actual costs incurred. At the request of the U.S. Trustee, we have also attached hereto as Exhibit F a report providing the numbers of documents reviewed per day by each contract attorneys as of December 1, 2012. For privacy concerns, initials are provided in place of names of the contract attorneys. In

13

connection with these services, Chadbourne incurred the expense of computer rental fees and seeks reimbursement for same in this Application.

45.    The time constraints frequently imposed by the circumstances of these cases have required Chadbourne's professionals and other employees at times to devote time during the evenings and on weekends to the performance of legal services on behalf of the Examiner. These extraordinary services were essential in order to meet deadlines and satisfy the demands in connection with the Examiner's investigation of these chapter 11 cases. Consequently, as a result of the physical inability to complete every task required of Chadbourne during ordinary business hours, Chadbourne professionals and employees were required to work in the evenings and on weekends. Given the significant demands on Chadbourne professionals and employees, Chadbourne has, consistent with firm policy, charged the Debtors $19,226.74 for paraprofessional and secretarial overtime. During the Application Period, Chadbourne's paraprofessional team was substantially engaged in assisting Chadbourne attorneys by reviewing and preparing numerous documents and materials in preparation for witness interviews. This was a substantial undertaking considering Chadbourne conducted thirty-eight interviews during the Application Period.

46.    Travel expenses were incurred by Chadbourne professionals in connection with attending the various witness interviews, depositions and team meetings that took place during the Application Period. This category includes charges for coach class air travel, Amtrak train travel, reasonable hotel accommodations, meals and airport transportation.

47.    Also consistent with firm policy attorneys and other employees of Chadbourne who worked late into the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. For purposes of these Chapter 11 cases, Chadbourne has capped

14

overtime meal reimbursement to $20/per meal. (Accordingly, this Application reflects a credit in the amount of $1,130.76 for overtime meal charge overages sought in Chadbourne's September and October monthly fee statements.) Chadbourne's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Guidelines. (This Application also reflects a credit in the amount of $105.55 for car service expenses for travelling to Bankruptcy Court which were sought in Chadbourne's September and October fee statements.)

48.   In addition, on several occasions, overnight delivery of documents and other materials was required as a result of emergencies necessitating the use of such express services. These disbursements are not included in Chadbourne's overhead for the purpose of setting billing rates. Chadbourne has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Examiner.

## DETERMINATION OF CHADBOURNE'S REQUESTED FEE

49.  In seeking compensation in these Chapter 11 Cases, Chadbourne has utilized its 2012 hourly rate structure in accordance with the Guidelines for the period September 1, 2012 through and including December 31, 2012.  For purposes of this Application, Chadbourne has calculated its request for compensation by multiplying (a) the hours of time spent on services rendered on behalf of the Examiner, by (b) the 2012 hourly rate assigned to each attorney or paraprofessional rendering such services.  The compensation sought herein is requested without prejudice to Chadbourne's entitlement to seek such additional and reasonable compensation for any additional services rendered in these Chapter 11 Cases at the conclusion thereof upon the filing of an appropriate application therefor.

50.  Chadbourne's fees during the Application Period are also reasonable under the prevailing legal standard and should be allowed.  The amount of these fees is not unusual given the complexity and size of these Chapter 11 Cases.  Chadbourne's fees are commensurate with fees that other attorneys of comparable experience and expertise have charged and been awarded in similar chapter 11 cases.  Accordingly, Chadbourne's fees are reasonable pursuant to section 330 of the Bankruptcy Code.[5]

---

[5] Section 330(a)(1) of the Bankruptcy Code allows the payment of:

  (A)  reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

  (B)  reimbursement for actual, necessary expenses.

11 U.S.C. §330(a)(1).  Reasonableness of compensation is driven by the "market-driven approach" which considers the nature, extent and value of services provided by the professional and the cost of comparable services in non-bankruptcy contexts.  See Zolfo Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Bldg. Ctr., Inc., 19 F.3d 833, 849 (3d Cir. 1994).  Thus, the "baseline rule is for firms to receive their customary rates." Zolfo Cooper, 50 F.3d at 259.

16

51. Section 330(a)(1)(B) of the Bankruptcy Code permits for reimbursement for actual, necessary expenses. Chadbourne's legal services and expenses incurred during the Application Period constitute only those necessary expenses that were incurred for the benefit of the Debtors' estates. Chadbourne has properly requested reimbursement of only actual, necessary and appropriate legal expenses.

52. Except as permitted by rule 2016 of the Federal Rules of Bankruptcy Procedure, no agreement or undertaking exists between Chadbourne and/or any third person for the sharing or division of compensation. All of the services for which compensation is requested in this Application were rendered at the request of and solely on behalf of the Examiner.

53. Pursuant to the standards set forth in sections 330 and 331 of the Bankruptcy Code, Chadbourne submits that the compensation requested is for actual and necessary services and expenses, and is reasonable, based upon the nature, extent and value of such services, the time spent thereon, and the costs of comparable services in a case under the Bankruptcy Code.

## NOTICE AND NO PRIOR APPLICATION

54. Pursuant to the Interim Compensation Order, notice of this Application has been served upon the following parties (collectively, as further defined in the Interim Compensation Order, the "Notice Parties"): (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the Southern District of New York; (iii) counsel for the Official Committee of Unsecured Creditors; (iv) counsel for Ally Financial Inc.; and (v) counsel for Barclays Bank PLC. In light of the nature of the relief requested herein, Chadbourne submits that no further or other notice is required.

55. No previous application for relief sought herein has been made to this or any other court.

56. As set forth in the attached certification, the Examiner has had the opportunity to review, and has approved, the amounts requested in the Application.

WHEREFORE, Chadbourne respectfully requests that this Court issue and enter an order (i) authorizing compensation in the amount of $17,301,345.50 for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $563,507.73, for a total fee and expense request for the Application Period of $17,864,853.23; (ii) authorizing and directing the Debtors to remit payment to Chadbourne as set forth herein, less all amounts previously paid on account of such fees and expenses; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 14, 2012

**CHADBOURNE & PARKE LLP**

By: */s/ Howard Seife*
    Howard Seife
    David M. LeMay
    30 Rockefeller Plaza
    New York, New York 10112
    Telephone: (212) 408-5100
    Facsimile: (212) 541-5369

*Counsel for the Examiner*

18