# Exhibit 2

## Engagement Letters



Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, MI 48243-1895
USA
Tel:  +1 313 396 3000
Fax:  +1 313 396 3618
www.deloitte.com

December 21, 2012

Mr. Joseph Pensabene
Executive Vice President, GMAC Mortgage, LLC
Chief Servicing Officer, GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Pensabene:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as service auditors for GMAC
Mortgage, LLC (the "Company or "you" or "your"), a wholly-owned subsidiary of Residential Capital,
LLC (the "Parent Company")

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions
set forth herein and in the accompanying appendices.  Such terms and conditions shall be effective as of
the date of the commencement of such services.

**Engagement Team Members**

Ms. Sandy Herrygers, Partner, will be the Engagement Leader and will be responsible for our service
auditors' examination.  Mr. Brad Stevenson, Partner, will continue to coordinate all services we perform
for the Company, and Mr. Tom Robinson, Partner, will continue to coordinate overall client service
delivery for the Parent Company.

**Engagement Scope and Objectives**

The purpose of our engagement is to examine the Company's description of internal controls related to
the mortgage servicing activities (the "Description of the System").  The Company's management will
draft the Description of the System.  Our examination will include those procedures that we consider
necessary under the circumstances to obtain a reasonable basis for rendering our opinion on the
following:

- Whether the Description of the System fairly presents the controls that were designed and
  implemented during the period from January 1, 2012 to December 31, 2012.

- Whether the controls related to the control objectives stated in the Description of the System were
  suitably designed to provide reasonable assurance that the control objectives would be achieved if
  controls operated effectively during the period from January 1, 2012 to December 31, 2012.

- Whether the controls operated effectively to provide reasonable assurance that the control objectives
  stated in the Description of the System were achieved throughout the period from January 1, 2012 to
  December 31, 2012.

Our examination will be conducted in accordance with attestation standards including Statement on

SSAE 16
Engagement Letter
December 21, 2012
Page 2

Standards for Attestation Engagements No. 16 (SSAE 16), established by the American Institute of
Certified Public Accountants (AICPA) ("AICPA standards").

**Examination of the Description of the System**

An examination includes examining, on a test basis, evidence supporting the Description of the System
and performing such other procedures as D&T considers necessary in the circumstances.  An examination
conducted in accordance with AICPA standards is designed to obtain reasonable, rather than absolute,
assurance about the Description of the System.  The objective of the examination is the expression of an
opinion on whether the Description of the System is presented fairly and the controls related to the control
objectives stated in the Description of the System are suitably designed in all material respects, based on
suitable criteria and specified by the Company (the "Criteria"), which represent the Company's controls
likely to be relevant to user entities' internal control over financial reporting.

Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and
circumstances at the date of our attest report.  If, for any reason, we are unable to complete the
examination or are unable to form or have not formed an opinion, we may decline to express an opinion
or decline to issue a report as a result of this engagement.  If we are unable to complete our examination
or if the report to be issued by D&T as a result of this engagement requires modification, the reasons
therefore will be discussed with the Board of Directors of GMAC Mortgage, LLC (the "Board of
Directors"), as appropriate, and the Company's management.

We understand that FiServ, Inc. provides sub-servicing functions to key areas within servicing operations.
However, it is our understanding that control objectives and related controls of the key partner
organizations will be excluded from the Description of the System and will not be subject to our
examination performed hereunder.

**Form and Content of the Description of the System**

It is our understanding that the Company's management has committed to preparing the Description of
the System referred to above, and that such description will present how the Company's system was
designed and implemented, including the following information about the system:

- The types of services provided including, as appropriate, the classes of transactions processed.

- The procedures, within both automated and manual systems, by which services are provided,
  including, as appropriate, procedures by which transactions are initiated, authorized, recorded,
  processed, corrected as necessary, and transferred to the reports and other information prepared for
  user entities.

- The related accounting records, whether electronic or manual, and supporting information involved in
  initiating, authorizing, recording, processing, and reporting transactions; this includes the correction
  of incorrect information and how information is transferred to the reports and other information
  prepared for user entities.

- How the system captures and addresses significant events and conditions other than transactions.

- The process used to prepare reports and other information for user entities.

SSAE 16
Engagement Letter
December 21, 2012
Page 3

- The specified control objectives and controls designed to achieve those objectives, including as applicable, complementary user entity controls contemplated in the design of controls.

- Other aspects of the Company's control environment, risk assessment process, information and communication systems (including the related business processes), control activities, and monitoring controls that are relevant to the services provided.

As part of our procedures, we will consider whether the Description of the System, in our professional judgment, is sufficiently comprehensive and accurate to meet the needs of user auditors. If, as a result of this consideration, we identify possible omissions or inaccuracies, we will discuss these matters with the Company's management and the Company's management will arrange for the Company's personnel to modify the Description of the System, as necessary.

**Tests of Operating Effectiveness**

We will test the operating effectiveness of selected controls for the period from January 1, 2012 through December 31, 2012. The controls that we test will be those controls whose operating effectiveness is necessary, in our opinion, to provide reasonable assurance of achieving the specified control objectives. If, for any reason, we conclude that the design of the Company's controls does not provide reasonable assurance of achieving certain control objectives, we may decline to test the controls for such control objectives.

**Other Responsibilities of the Company's Management**

In connection with our examination performed hereunder, the Company's management has committed to preparing the Description of the System and for assigning individuals to assist with the logistical aspects of the examination (e.g., identifying the Company's personnel to contact, scheduling meetings for the D&T engagement team, following up on responses from the Company's management to requests for information or preliminary findings).

All word processing related to the Description of the System and, if applicable, Other Information Provided by the Service Organization (see section four of the SSAE 16 report document) will be performed by the Company. Should the Company desire our assistance in the documenting or editing of the Description of the System, we would be pleased to discuss this with you.

As we have discussed previously, the Company's management is responsible for establishing and maintaining appropriate controls relating to the processing of transactions for user entities. The determination of the control objectives and related controls to be included in the Description of the System is also the responsibility of the Company. The Company's management is responsible for providing us an assertion that is either included in or attached to the Description of the System, which includes its completeness, accuracy and method of presentation. Appendix A contains information regarding the Company's assertion.

At the conclusion of our examination performed hereunder, we will request that the Company's management provide us with a representation letter acknowledging the Company's management's responsibility for its assertion, the Description of the System, including the design of controls, confirming certain representations made to us during our examination performed hereunder, and other matters, as described in Appendix A.

SSAE 16
Engagement Letter
December 21, 2012
Page 4

### Inherent Limitations of Internal Control

Because of the inherent limitations of internal control, including the possibility of collusion or improper
management override of controls, material misstatements due to error or fraud may occur and not be
detected. Also, projections of any evaluation of the internal control to future periods are subject to the
risk that the internal control may become inadequate because of changes in conditions, or that the degree
of compliance with the policies or procedures may deteriorate.

### Responsibility of the Board of Directors

As the independent service auditors of the Company, we acknowledge that the Board of Directors is
directly responsible for the appointment, compensation, and oversight of our work and, accordingly,
except as otherwise specifically noted, we will report directly to the Board of Directors. You have
advised us that the services to be performed under this engagement letter, including, where applicable, the
use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have
been approved by the Board of Directors in accordance with its established preapproval policies and
procedures.

### Independence Matters Relating to Providing Certain Services

In connection with our engagement, D&T, the Company's management, and the Board of Directors will
assume certain roles and responsibilities in an effort to assist D&T in maintaining independence.
Management of the Company will ensure that the Company has policies and procedures in place for the
purpose of ensuring that the Company will not act to engage D&T or accept from D&T any service that
under AICPA, or other applicable rules would impair D&T's independence. All potential services are to
be discussed with Ms. Sandy Herrygers, Partner.

### Independence Matters Relating to Hiring

The Company's management will coordinate with D&T to ensure that D&T's independence is not
impaired by hiring former or current D&T partners, principals, or professional employees in a key
position, as defined in the AICPA Code of Professional Conduct, that would cause a violation of the
AICPA Code of Professional Conduct,  that would cause a violation of such code or other applicable
independence rules. Any employment opportunities with the Company for a former or current D&T
partner, principal, or professional employee should be discussed with Ms. Sandy Herrygers, Partner
before entering into substantive employment conversations with the former or current D&T partner,
principal, or professional employee.

For purposes of the preceding two paragraphs, "D&T" shall mean Deloitte & Touche LLP and its
subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche
LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or
assignee.

### Restriction on Report Use

The Company agrees that it will not, in each case, unless the Company's management first obtains our
specific written permission (1) publish or otherwise reproduce, include, or incorporate our examination
report prepared hereunder, any portion thereof, or any information included in the section entitled

SSAE 16
Engagement Letter
December 21, 2012
Page 5

"Information Provided by the Servicer Auditor" included in the report issued (in final or draft form) by
D&T, within documents that the Company may publish or make available to others, or (2) except as
otherwise specifically provided herein, circulate, quote, disclose, or distribute our attest report issue
hereunder (in final or draft form) to others.

The Company further agrees that it will not, in each case, unless the Company's management first obtains
our specific written permission, distribute any attest report issued by D&T, whether in hard copy or
Adobe Acrobat format (i.e., PDF file format) or otherwise, issued by D&T hereunder to anyone other than
management of the Company, its user entities, and the independent auditors and regulators of such user
entities.

**Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites**

If the Company intends to publish or otherwise reproduce in any document our attest report issued as a
result of this engagement, or otherwise make reference to D&T in a document that contains other
information in addition to our attest report (e.g., in a press release), thereby associating D&T with such
document, the Company agrees that its management will provide D&T with a draft of the document to
read and obtain our approval for the inclusion or incorporation by reference of our attest report, or the
reference to D&T, in such document before the document is printed and distributed. The inclusion or
incorporation by reference of our attest report in any such document would constitute the reissuance of
such attest report. The Company also agrees that its management will notify us and obtain our approval
prior to including our attest report on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be
associated with any such documents published or reproduced by or on behalf of the Company. Any
request by the Company to consent to any such attest report's inclusion or incorporation by reference in
any other document, or to agree to any such attest report's inclusion on an electronic site will be
considered based on the facts and circumstances existing at the time of such request. The estimated fees
outlined herein do not include any services that would need to be performed in connection with any such
request; fees for such services (and their scope) would be subject to the mutual agreement of the
Company and D&T at such time as D&T is engaged to perform the services and would be described in a
separate engagement letter.

**Engagement Timing**

The timing of the engagement is determined jointly with management. Timely completion of all tasks
identified as the Company's responsibility will facilitate the completion of our engagement.

**Professional Fees and Billing**

Our estimated fees for the examination detailed within this engagement letter have been included in the
estimates or amounts provided in the separate engagement letters dated July 9, 2012 and April 23, 2012.
We will notify you promptly of any circumstances we encounter that could significantly affect the amount
of our fees and discuss with you any additional fees, as necessary.

**Proposed Transaction and Report Distribution**

We understand that the Company has filed for protection under Chapter 11 of the U.S. Bankruptcy Code
and, along with certain other affiliates, are considering various strategic alternatives, including a sale (the
"Potential Transaction") of assets to a prospective buyer (the "Buyer"). The Company agrees that the

SSAE 16
Engagement Letter
December 21, 2012
Page 6

independent service auditor's report of D&T to be issued on whether the Description of the System is presented fairly and the controls related to the control objectives stated in the Description of the System are suitably designed in all material respects, based on the Criteria, for the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission ("SEC") without D&T's prior written consent. The Company also agrees that it will provide a copy of this engagement letter to the Buyer for the Buyer's information. The Company also agrees that, before a Buyer will be permitted to obtain or read a copy of any of our reports, the Company will obtain from such Buyer for our benefit and will provide to us the Buyer's written agreement (in the form appended to this letter as Appendix B) regarding the use and distribution of our reports.

For purposes of this engagement letter, together with the appendices attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

With respect to the conduct of the service auditors' examination and reporting the results thereof, materiality will be evaluated and determined in the context of the engagement taken as a whole. We have not evaluated materiality on the basis of any Potential Transaction; consequently, matters may exist or have existed that would be assessed differently by the Company or a Buyer.

A service auditors' examination cannot be a substitute for a party's own due diligence investigation, nor is it intended or designed to do so. Likewise, a service auditors' examination does not comprehend all matters pertinent or necessary to a party's evaluation of a Potential Transaction, and we make no representation as to the sufficiency of this service auditors' examination for the Company or a Buyer's purposes in connection with a Potential Transaction.

* * * * * *

The Company agrees that it will promptly seek the Bankruptcy Court's approval of this engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to us in all respects. In addition to D&T's other rights or remedies hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects to D&T's retention by the Company in the case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to us, or (c) the Application is denied by the Bankruptcy Court. In such event, the Company hereby agree to withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain D&T's services in the bankruptcy proceeding.

This engagement letter, including the appendices attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior and contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

The sections entitled Limitation on Liability, Release, and Indemnification, Assignment and Subcontracting, and Dispute Resolution shall apply to the fullest extent of the law, whether in contract,

SSAE 16
Engagement Letter
December 21, 2012
Page 7

statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any
remedy.

If the above terms and conditions are acceptable and the services outlined are in accordance with your
understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Accepted and agreed to by GMAC Mortgage, LLC:

By: *[signature]*

Title: *EVP/Chief Servicing Officer*

Date: *1/18/13*

**APPENDIX A**

**MANAGEMENT'S ASSERTIONS AND REPRESENTATIONS TO BE PROVIDED BY THE COMPANY'S MANAGEMENT**
**Year Ending December 31, 2012**

This Appendix A is part of the engagement letter dated December 21, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC.

The Company's management is responsible for providing a written assertion about whether, in all material respects, and based on suitable Criteria:

i.   Management's Description of the System fairly presents the service organization's mortgage servicing activities as of a specified date.

ii.  The controls related to the control objectives stated in management's Description of the System were suitably designed to achieve those control objectives as of the specified date.

The Company's management is responsible for having a reasonable basis for its assertion.

The Company's management is responsible for establishing and maintaining effective internal control. In this regard, the Company's management has the responsibility for, among other things:

- Selecting the Criteria to be used and stating them in the assertion

- Preparing a Description of the System that fairly presents the mortgage servicing activities operating during the period from January 1, 2012 to December 31, 2012

- Specifying the control objectives and stating them in the Description of the System

- Suitably designing and implementing controls to achieve the control objectives stated in the Description of the System

- Identifying the risks that threaten the achievement of the control objectives

- Properly recording transactions on behalf of user entities

- Adjusting the Description of the System to correct material misstatements

- Making determinations as to the relevancy of information to be included

- The overall accuracy of the Description of the System

- Making all records relevant to the subject matter and related information available to us.

**Representation Letter**

We will make specific inquiries of the Company's management about the representations embodied in the Company's management's assertion. As part of our examination procedures, we will request that the Company's management provide us with a representation letter acknowledging the Company's

SSAE 16
Engagement Letter
December 21, 2012
Page 9

management's responsibility for establishing and maintaining effective internal control and stating the Company's management's assertion about the effectiveness of such internal control based on the Criteria selected by the Company's management. We will also request that the Company's management confirm certain representations made to us during our examination. The responses to those inquiries and related written representations of the Company's management required by the AICPA standards are part of the evidential matter that D&T will rely on in forming the opinion.

The following are a listing of representations that will be requested from Company management:

- Acknowledgment of the responsibility of the Company's management for preparing their assertion and the Description of the System, including designing and implementing controls and their operating effectiveness throughout the period relating to the achievement of the control objectives stated in the Company's management's Description of the System related to the processing of transactions for user entities.

- A statement that Company management has provided us with all relevant information and access to all information such as records and documentation, including service level agreements, of which the Company is aware and that is relevant to the Description of the System and the assertion.

- Acknowledgment of the appropriateness of the specified control objectives.

- A statement that the Description of the System presents fairly, in all material respects, the aspects of the Company's controls that may be relevant to user entities' internal control as it relates to an audit of financial statements.

- A statement that the Description of the System includes all user entity control activities contemplated in the design of the Description of the System.

- A statement that the Company's controls, as described, have been implemented during the period from January 1, 2012 to December 31, 2012.

- A statement that the Company's management believes its controls were suitably designed to achieve the specified control objectives.

- A statement that the Company's management has disclosed to us any significant changes in its controls that have occurred since the Company's last examination.

- A statement that the Company's management has disclosed to us any knowledge of actual, suspected or alleged intentional acts by the Company's management or employees that could adversely affect the fairness of the presentation of the Description of the System or the completeness or achievement of the control objectives stated in the Description of the System.

- A statement that the Company's management has disclosed to us all design deficiencies in controls of which it is aware, including those for which the Company's management believes the cost of corrective action may exceed the benefits.

- A statement about whether there have been any communications from regulators concerning noncompliance with, or deficiencies in, controls or information processing practices for user entities.

- A statement about whether there have been any material unasserted claims or assessments

SSAE 16
Engagement Letter
December 21, 2012
Page 10

concerning services provided to user entities that the Company's legal counsel has advised the Company's management are probable of assertion

- A statement that the Company's controls were operating with sufficient effectiveness to provide reasonable, but not absolute, assurance, that the control objectives specified in the Description of the System were achieved during the period from January 1, 2012 to December 31, 2012, and the Company's management has disclosed to us all instances, of which it is aware, when controls have not operated with sufficient effectiveness to achieve the specified control objectives.  A statement that the Company's management has disclosed to us any subsequent events, including any changes in internal control or other factors that might significantly affect internal control, that would have an effect on user entities or on the service auditor report.

- A statement that the Company's management is responsible for information included in the attest report in section four of the SSAE 16 report document and that the Company's management understands that such information is not covered by D&T's examination.  In addition, a statement by the Company's management that such information is accurate.

- A statement by the Company's management acknowledging that the distribution of the SSAE 16 Report in hard copy, Adobe Acrobat format (i.e., PDF file format) or otherwise, is limited solely to the Company's management, user entities, and the independent auditors of such user entities.

SSAE 16
Engagement Letter
December 21, 2012
Page 11

**APPENDIX B**

**BUYER SUPPLEMENT**
**Year Ending December 31, 2012**

This Appendix B is part of the engagement letter dated December 21, 2012 between Deloitte &
Touche LLP and GMAC Mortgage, LLC.

This Appendix is to be provided to a Buyer for its signature and an executed copy returned to Deloitte &
Touche LLP before such Buyer may be provided a copy of the independent service auditors' report of
Deloitte & Touche LLP.

[*Name of prospective buyer*], referred to throughout the attached engagement letter and this Appendix as
the "Buyer," agrees that the independent service auditors' report of Deloitte & Touche LLP ("D&T") on
whether the Description of the System is presented fairly and the controls related to the control objectives
stated in the Description of the System are suitably designed in all material respects, based on the Criteria,
for the year ending December 31, 2012 will not be included, incorporated by reference, or referred to in
any public filings with the Securities and Exchange Commission without D&T's prior written consent.

If [*name of prospective buyer*], or those acting on its behalf, intends to publish or otherwise reproduce in
any document D&T's service auditors' report on the examination of the Description of the System
referred to above, or otherwise make reference to D&T in a document that contains other information in
addition to the Description of the System referred to above (e.g., in a periodic filing with a regulator),
thereby associating D&T with such document, [*name of prospective buyer*] agrees that its management
will provide D&T with a draft of the document to read and obtain D&T's approval for the inclusion or
incorporation by reference of D&T's service auditors' report, or the reference to D&T, in such document
before the document is printed and distributed. The inclusion or incorporation by reference of D&T's
service auditors' report in any such document would constitute the reissuance of D&T's service auditors'
report. [*Name of prospective buyer*] also agrees that its management will notify D&T and obtain D&T's
approval prior to permitting D&T's service auditors' report to be included on an electronic site.

D&T's engagement with GMAC Mortgage, LLC  to perform the services described in the engagement
letter between D&T and GMAC Mortgage, LLC does not constitute D&T's agreement to be associated
with any such documents published or reproduced by or on behalf of [*name of prospective buyer*]. Any
request by [*name of prospective buyer*] to reissue D&T's service auditors' report, to consent to its
inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an
electronic site will be considered by D&T based on the facts and circumstances existing at the time of
such request.

Accepted and agreed to by [*name of prospective buyer*]:

By:_____

Title:_____

Date:_____

SSAE 16
Engagement Letter
December 21, 2012
Page 12

**APPENDIX C**

**GENERAL BUSINESS TERMS**
**Year Ending December 31, 2012**

This Appendix C is part of the engagement letter dated December 21, 2012 between Deloitte & Touche LLP and GMAC Mortgage, LLC.

1.  Limitation on Liability, Release, and Indemnification.

    a)  D&T and its personnel will not be liable to the Company and the Parent's Audit Committee for any claims, liabilities, or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Company to D&T pursuant to this engagement, except to the extent resulting from the gross negligence (as defined under New York law existing as of the date hereof), bad faith or intentional misconduct of D&T.

    b)  The Company agrees to release and indemnify D&T and its personnel from all Claims attributable to any misrepresentation by the Company's management.

    c)  The Company agrees to indemnify and hold harmless D&T and its personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the gross negligence (as defined under New York law existing as of the date hereof), bad faith or intentional misconduct of D&T.

2.  Independent Contractor. Nothing contained in this section shall alter the duties imposed by law on Deloitte & Touche in respect of the services to be provided thereunder. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, or representative of the company or the company's Board of Directors.

3.  Survival. The agreements and undertakings of the Company contained in this engagement letter, (including its appendices), will survive the completion or termination of this engagement.

4.  Assignment and Subcontracting. Except as provided below, no party may assign, transfer, or delegate any of its rights or obligations (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company hereby consents to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

    Without limiting the foregoing, affiliated and related entities of D&T, whether or not acting as a subcontractor, are intended third-party beneficiaries of the agreements and undertakings of the Company contained in this engagement letter, and any such entity may in its own right enforce such agreements and undertakings.

5.  Force Majeure. No party shall be deemed to be in breach of this engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.  Dispute Resolution. Any Dispute (as defined below) arising out of or relating to services performed under the engagement letter prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (as defined below), if such District Court

SSAE 16
Engagement Letter
December 21, 2012
Page 13

withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix D and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

**APPENDIX D**

**DISPUTE RESOLUTION PROVISION**
**Year Ending December 31, 2012**

This Appendix D is part of the engagement letter dated December 21, 2012 between Deloitte &
Touche LLP and GMAC Mortgage, LLC.

Mediation: Subject to the terms of Appendix C,  Disputes shall first be submitted to nonbinding
confidential mediation by written notice to the parties, and shall be treated as compromise and settlement
negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state
counterparts, together with any applicable statutes protecting the confidentiality of mediations or
settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict
Prevention and Resolution (CPR), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the
written notice beginning the mediation process (or such longer period, if the parties so agree in writing),
the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New
York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance
with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement
of the arbitration, except to the extent modified by this section entitled "Dispute Resolution" (the
"Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and D&T
shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the
Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules.
No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of this
engagement letter (including its appendices) and to abide by the terms of this section entitled "Dispute
Resolution."

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any
disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such
parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may
be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties
shall share the fees and expenses of both the mediators and the arbitrators equally.



Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, MI 48243-1895
USA

Tel:  +1 313 396 3000
Fax:  +1 313 396 3618
www.deloitte.com

January 7, 2013

Mr. James Whitlinger
Chief Financial Officer
Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Whitlinger:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Residential Capital, LLC (the "Company") as it relates to the Company's abbreviated financial statements for its Federal National Mortgage Association Servicing and Certain Related Loan Origination (retention) operations (including Statements of Net Assets Acquired as of December 31, 2011 and September 30, 2012 and the Statements of Revenues and Direct Operating Expenses for the two years ended December 31, 2011 and the nine months ended September 30, 2012) (the "Component Financial Statements").  Mr. Tom Robinson will be responsible for the services that we perform for the Company hereunder.

In addition to the audit and review services we are engaged to provide under this engagement letter, we would also be pleased to assist the Company on issues as they arise throughout the year. Hence, we hope that you will call Mr. Robinson whenever you believe D&T can be of assistance.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices.  Such terms and conditions shall be effective as of the date of the commencement of such services.

**Audit of Financial Statements**

Our engagement is to perform a financial statement audit in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of a financial statement audit conducted in accordance with generally accepted auditing standards is to express an opinion on the fairness of the presentation of the Company's Component Financial Statements for the periods presented, in conformity with accounting principles generally accepted in the United States of America ("generally accepted accounting principles"), in all material respects.

Appendix A contains a description of our responsibilities and a financial statement audit under generally accepted auditing standards.

Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete the financial statement audits or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of this engagement. If we are unable to complete our financial statement audits or if the report to be issued by D&T as a result of this engagement requires modification, the reasons therefor will be discussed with the Audit Committee and management of the Company.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 2

## Management's Responsibilities

Appendix B describes management's responsibilities for (1) the financial statements, (2) representation letters, (3) program and subscription services, (5) independence matters relating to providing certain services and (6) independence matters relating to hiring.

## Communications with the Audit Committee

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with the Audit Committee and management of the Company.

## Fees

Our fees for this engagement will be billed based on the actual amount of time incurred, by the level of resource and rates per hour as follows:

| Level of Resource | Rate per Hour |
|---|---|
| Partner, Principal, or Director | $465 |
| Senior Manager | $390 |
| Manager | $325 |
| Senior or equivalent | $265 |
| Staff or equivalent | $225 |

Based on the rates noted above, we estimate that our fees for the audits of the financial statements will approximate between $500 thousand and $1.0 million. We will notify you promptly of any circumstances we encounter that could significantly affect the amount of our fees and discuss with you any additional fees, as necessary.

Additional services requested beyond the scope of services described herein would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

## Sale Transaction and Report Distribution

We understand that the Company has filed for protection under Chapter 11 of the U.S. Bankruptcy Code and is executing various strategic alternatives, including the sale of certain assets and operations to Walter Investment Management Corporation (the "Buyer") (the "Sale Transaction"). The Company agrees that the independent auditor's report of D&T to be issued on the Company's Component Financial Statements will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission ("SEC") without D&T's prior written consent. The Company also agrees that it will provide a copy of this engagement letter to the Buyer for the Buyer's information; D&T acknowledges that the Company will provide a copy of this letter to the Buyer. The Company also agrees that, before the Buyer will be permitted to obtain or read a copy of any of our reports, the Company will obtain from the Buyer for our

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 3

benefit and will provide to us the Buyer's written agreement (in the form appended to this letter as Appendix D) regarding the use and distribution of our reports.

For purposes of this engagement letter, together with the appendices attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

With respect to the conduct of the audit and reporting the results thereof, materiality will be evaluated and determined in the context of the financial statements taken as a whole. We have not evaluated materiality on the basis of the Sale Transaction; consequently, matters may exist or have existed that would be assessed differently by the Company or the Buyer.

An audit cannot be a substitute for a party's own due diligence investigation, nor is it intended or designed to do so. Likewise, an audit does not comprehend all matters pertinent or necessary to a party's evaluation of the Sale Transaction, and we make no representation as to the sufficiency of this audit for the Company's or the Buyer's purposes in connection with the Sale Transaction.

**Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites**

If the Company intends to publish or otherwise reproduce in any document our report on the Company's Component Financial Statements issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide or cause the buyer to provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is filed, printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. Fees for such services (and their scope) would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services.

* * * * * *

The Company agrees that it will promptly seek the Bankruptcy Court's approval of this engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to us in all respects. In addition to D&T's other rights or remedies hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects to D&T's retention by the Company in the case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to us, or (c) the Application is denied by the Bankruptcy Court. In such event, the Company hereby agrees to withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain D&T's services in the bankruptcy proceeding.

This engagement letter, including Appendices A through F attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 4

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Accepted and agreed to by
Residential Capital, LLC:

By: _____

Title: *CFO*

Date: *1/18/13*

c.c.  Ms. Pamela West, Chairperson of the Audit Committee of Residential Capital, LLC

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 5

## APPENDIX A

## DESCRIPTION OF OUR RESPONSIBILITIES AND A FINANCIAL STATEMENT AUDIT UNDER GENERALLY ACCEPTED AUDITING STANDARDS
## Residential Capital, LLC

This Appendix A is part of the engagement letter dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

### Our Responsibilities

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Audit Committee of Residential Capital, LLC are presented fairly, in all material respects, in conformity with generally accepted accounting principles. The audits of the financial statements do not relieve management or the Audit Committee of Residential Capital, LLC of their responsibilities.

### Components of a Financial Statement Audit

A financial statement audit includes the following:

- Obtaining an understanding of the Company and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures

- Consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting

- Examining, on a test basis, evidence supporting the amounts, allocations, and disclosures in the financial statements

- Inquiring directly of the Audit Committee of Residential Capital, LLC regarding its views about the risks of fraud and whether the Audit Committee of Residential Capital, LLC has knowledge of any fraud or suspected fraud affecting the Company

- Assessing the accounting principles used and significant estimates and allocations made by management

- Evaluating the overall financial statement presentation

### Reasonable Assurance

An audit is planned and performed to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. However, because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement. Therefore, an audit conducted in accordance with generally accepted auditing standards is designed to obtain reasonable, rather than absolute, assurance that the financial statements are free of material misstatement. Also, a financial statement audit is not designed to detect error or fraud that is immaterial to the financial statements, nor is it designed to provide assurance on internal control or to identify control deficiencies.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 6

**APPENDIX B**

**MANAGEMENT'S RESPONSIBILITIES**
**Residential Capital, LLC**

This Appendix B is part of the engagement letter dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

**Financial Statements**

The overall accuracy of the financial statements and their conformity with generally accepted accounting principles is the responsibility of the Company's management. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Determining allocation methodologies

- Establishing and maintaining effective internal control over financial reporting

- Designing and implementing programs and controls to prevent and detect fraud

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known material violations of such laws or regulations

- Adjusting the financial statements to correct material misstatements

- Providing D&T with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain evidence

**Representation Letters**

We will make specific inquiries of the Company's management about the representations embodied in the financial statements. Additionally, we will request that management provide to us the written representations the Company is required to provide to its independent auditors under generally accepted auditing standards. As part of our audit procedures, we will request that management provide us with a representation letter that includes, among other things:

- Acknowledgment of management's responsibility for the preparation of the financial statements

- Affirmation of management's belief that the effects of any uncorrected financial statement misstatements aggregated by us during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole

We will also request that management confirm certain representations made to us during our audit. The responses to those inquiries and related written representations of management required by generally accepted auditing standards are part of the evidential matter that D&T will rely on in forming its opinion on the financial statements.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 7

**Program and Subscription Services**

D&T makes available to clients and non-clients, primarily free of charge, but in some cases with a fee, various educational programs and seminars as well as informational and other tools.   Such programs, seminars, and tools may take the form of, among other things, live programs, webcasts, podcasts, websites, database subscriptions, checklists, research reports, surveys, and similar or related tools and services ("programs and subscriptions"). These programs and subscriptions may include, among other things, local office seminars, the Dbrief Webcasts series, Technical Library, Deloitte Recap, the CFO Conference. In some instances, D&T may include complimentary rooms and meals as part of the programs or seminars. The Company hereby confirms that any use or receipt by the Company or its affiliates of these subscriptions or attendance at these programs will be approved by the Audit Committee of Residential Capital, LLC in accordance with its established preapproval policies and procedures.

**Independence Matters Relating to Providing Certain Services**

In connection with our engagement, D&T, management of the Company and the Audit Committee of Residential Capital, LLC will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their or the Company's preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Robinson.

**Independence Matters Relating to Hiring**

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Robinson and approved by the Audit Committee of Residential Capital, LLC before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position for the Company or in a comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Company; (3) as a member of the Audit Committee of Residential Capital, LLC; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding four paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu and its member firms; and, in all cases, any successor or assignee.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 8

**APPENDIX C**

**COMMUNICATIONS WITH THE AUDIT COMMITTEE**
**Residential Capital, LLC**

This Appendix C is part of the engagement letter dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

**Significant Matters**

We are responsible for communicating significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Audit Committee of Residential Capital, LLC in overseeing the financial reporting process.

**Fraud and Illegal Acts**

We will report directly to the Audit Committee of Residential Capital, LLC any fraud of which we become aware that involves senior management and any fraud (whether caused by senior management or other employees) of which we become aware that causes a material misstatement of the financial statements. We will report to senior management any fraud perpetrated by lower-level employees of which we become aware that does not cause a material misstatement of the financial statements; however, we will not report such matters directly to the Audit Committee of Residential Capital, LLC unless otherwise directed by the Audit Committee of Residential Capital, LLC.

We will inform the appropriate level of senior management of the Company and determine that the Audit Committee of Residential Capital, LLC is adequately informed with respect to illegal acts that have been detected or have otherwise come to our attention in the course of our audit or reviews, unless the illegal acts are clearly inconsequential.

**Internal Control Matters**

We will report directly, in writing, to the Audit Committee of Residential Capital, LLC and the Company's management all significant deficiencies and material weaknesses identified during the audits as required by AICPA AU 325, *Communicating Internal Control Related Matters Identified in an Audit*. Our written communication will distinguish clearly between those matters considered by D&T to be significant deficiencies and those considered by D&T to be material weaknesses. If we become aware that the oversight of the Company's external financial reporting and internal control over financial reporting, as defined by generally accepted auditing standards, by the Audit Committee of Residential Capital, LLC is ineffective, we will communicate that information in writing to the board of directors of the Company.

A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting, that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's financial statements will not be prevented or detected on a timely basis.

**Other Matters**

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Audit Committee of Residential Capital, LLC. However, we will communicate to the Audit Committee of Residential Capital, LLC matters required by AICPA AU 325, *Communicating Internal Control Related Matters Identified in an Audit*.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 9

**APPENDIX D**

**BUYER SUPPLEMENT**
**Residential Capital, LLC**

This Appendix D is part of the engagement letter dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

This Appendix is to be provided to the Buyer for its signature and an executed copy returned to Deloitte & Touche LLP before the Buyer may be provided a copy of the independent auditors' report of Deloitte & Touche LLP.

Walter Investment Management Corporation, referred to throughout the attached engagement letter and this Appendix as the "Buyer," agrees that the independent auditors' report of Deloitte & Touche LLP ("D&T") on the Component Financial Statements of Residential Capital, LLC for the periods presented will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission without D&T's prior written consent.

If Walter Investment Management Corporation, or those acting on its behalf, intends to publish or otherwise reproduce in any document D&T's report on the financial statements referred to above, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements referred to above (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, Walter Investment Management Corporation agrees that its management will provide D&T with a draft of the document to read and obtain D&T's approval for the inclusion or incorporation by reference of D&T's report, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of D&T's report in any such document would constitute the reissuance of D&T's report. Walter Investment Management Corporation also agrees that its management will notify D&T and obtain D&T's approval prior to permitting D&T's report to be included on an electronic site.

D&T's engagement with Residential Capital, LLC to perform the services described in the engagement letter between D&T and Residential Capital, LLC does not constitute D&T's agreement to be associated with any such documents published or reproduced by or on behalf of Walter Investment Management Corporation. Any request by Walter Investment Management Corporation to reissue D&T's report, to consent to its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered by D&T based on the facts and circumstances existing at the time of such request.

Accepted and agreed to by Walter Investment Management Corporation:

By:_____

Title:_____

Date:_____

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 10

**APPENDIX E**

**GENERAL BUSINESS TERMS**
**Residential Capital, LLC**

This Appendix E is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

1. <u>Independent Contractor.</u> Nothing contained in these terms shall alter in any way the duties imposed by law on D&T in respect of the services to be provided by D&T under this engagement. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, or representative of the Company or the Audit Committee of Residential Capital, LLC.

2. <u>Survival.</u> The agreements and undertakings of the Company and the Audit Committee of Residential Capital, LLC contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

3. <u>Assignment and Subcontracting.</u> Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company and the Audit Committee of Residential Capital, LLC hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4. <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5. <u>Force Majeure</u>. No party shall be deemed to be in breach of the engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6. <u>Protection of Personal information</u>. To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7. <u>Dispute Resolution</u>. Any Dispute (as defined below) arising out of or relating to services performed under the engagement letter prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix F and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 11

enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute.  The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns.  This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

Residential Capital, LLC – Component Financial Statements Engagement Letter
Page 12

**APPENDIX F**

**DISPUTE RESOLUTION PROVISION**
**Residential Capital, LLC**

This Appendix F is part of the engagement letter dated January 7, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes (as set forth in Appendix E) and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

<u>Mediation:</u> All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

<u>Arbitration Procedures:</u> If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

<u>Costs:</u> Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

**Deloitte & Touche LLP**
200 Renaissance Center
Suite 3900
Detroit, MI 48243-1895
USA

Tel:  +1 313 396 3000
Fax:  +1 313 396 3618
www.deloitte.com

February 11, 2013

Mr. James Whitlinger
Chief Financial Officer
Residential Capital, LLC
1100 Virginia Drive
Fort Washington, PA 19034

Dear Mr. Whitlinger:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Residential Capital, LLC (the "Company") as it relates to the Company's carve-out financial statements, as of December 31, 2012 and December 31, 2011 and for the three years ended December 31, 2012, for certain of its servicing operations (the operations expected to be acquired by Ocwen Loan Servicing, LLC) (the "Carve-Out Financial Statements").  Mr. Tom Robinson will be responsible for the services that we perform for the Company hereunder.

In addition to the audit and review services we are engaged to provide under this engagement letter, we would also be pleased to assist the Company on issues as they arise throughout the year. Hence, we hope that you will call Mr. Robinson whenever you believe D&T can be of assistance.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audit of Financial Statements

Our engagement is to perform a financial statement audit in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of a financial statement audit conducted in accordance with generally accepted auditing standards is to express an opinion on the fairness of the presentation of the Company's Carve-Out Financial Statements for the periods presented, in conformity with accounting principles generally accepted in the United States of America ("generally accepted accounting principles"), in all material respects.

Appendix A contains a description of our responsibilities and a financial statement audit under generally accepted auditing standards.

Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete the financial statement audits or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a report as a result of this engagement. If we are unable to complete our financial statement audits or if the report to be issued by D&T as a result of this engagement requires modification, the reasons therefor will be discussed with the Audit Committee and management of the Company.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 2

## Management's Responsibilities

Appendix B describes management's responsibilities for (1) the financial statements, (2) representation letters, (3) program and subscription services, (4) independence matters relating to providing certain services and (5) independence matters relating to hiring.

## Communications with the Audit Committee

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with the Audit Committee and management of the Company.

## Fees

Our fees for this engagement will be billed based on the actual amount of time incurred, by the level of resource and rates per hour as follows:

| Level of Resource | Rate per Hour |
|---|---|
| Partner, Principal, or Director | $465 |
| Senior Manager | $390 |
| Manager | $325 |
| Senior or equivalent | $265 |
| Staff or equivalent | $225 |

Based on the rates noted above, we estimate that our fees for the audits of the financial statements will approximate between $750 thousand and $1.25 million. We will notify you promptly of any circumstances we encounter that could significantly affect the amount of our fees and discuss with you any additional fees, as necessary.

Additional services requested beyond the scope of services described herein would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

## Sale Transaction and Report Distribution

We understand that the Company has filed for protection under Chapter 11 of the U.S. Bankruptcy Code and is executing various strategic alternatives, including the sale of certain assets and operations to Ocwen Loan Servicing, LLC (the "Buyer") (the "Sale Transaction"). The Company agrees that the independent auditor's report of D&T to be issued on the Company's Carve-Out Financial Statements will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission ("SEC") without D&T's prior written consent. The Company also agrees that it will provide a copy of this engagement letter to the Buyer for the Buyer's information; D&T acknowledges that the Company will provide a copy of this letter to the Buyer. The Company also agrees that, before the Buyer will be permitted to obtain or read

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 3

a copy of any of our reports, the Company will obtain from the Buyer for our benefit and will provide to us the Buyer's
written agreement (in the form appended to this letter as Appendix D) regarding the use and distribution of our reports.

For purposes of this engagement letter, together with the appendices attached hereto, "Bankruptcy Court" shall mean the
United States Bankruptcy Court for the Southern District of New York.

With respect to the conduct of the audit and reporting the results thereof, materiality will be evaluated and determined in the
context of the financial statements taken as a whole. We have not evaluated materiality on the basis of the Sale Transaction;
consequently, matters may exist or have existed that would be assessed differently by the Company or the Buyer.

An audit cannot be a substitute for a party's own due diligence investigation, nor is it intended or designed to do so.
Likewise, an audit does not comprehend all matters pertinent or necessary to a party's evaluation of the Sale Transaction, and
we make no representation as to the sufficiency of this audit for the Company's or the Buyer's purposes in connection with
the Sale Transaction.

### Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Company intends to publish or otherwise reproduce in any document our report on the Company's Carve-Out Financial
Statements issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other
information in addition to the audited financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt
or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with
such document, the Company agrees that its management will provide or cause the buyer to provide D&T with a draft of the
document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the
reference to D&T, in such document before the document is filed, printed and distributed. The inclusion or incorporation by
reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also
agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such
documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report
issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or
other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances
existing at the time of such request. Fees for such services (and their scope) would be subject to the mutual agreement of the
Company and D&T at such time as D&T is engaged to perform the services.

\* \* \* \* \* \*

The Company agrees that it will promptly seek the Bankruptcy Court's approval of this engagement. The application,
proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking
its approval of this engagement must be satisfactory to us in all respects. In addition to D&T's other rights or remedies
hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event
that (a) a third party objects to D&T's retention by the Company in the case on the terms and conditions set forth in this
engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before
sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are
satisfactory to us, or (c) the Application is denied by the Bankruptcy Court. In such event, the Company hereby agrees to
withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain
D&T's services in the bankruptcy proceeding.

This engagement letter, including Appendices A through F attached hereto and made a part hereof, constitutes the entire
agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous
agreements or understandings between the parties, whether written or oral, relating to this engagement.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 4

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy
of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP


Accepted and agreed to by
Residential Capital, LLC:

By: _____

Title: _____CFO_____

Date: _____2/13/13_____

c.c.  Ms. Pamela West, Chairperson of the Audit Committee of Residential Capital, LLC

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 5

## APPENDIX A

### DESCRIPTION OF OUR RESPONSIBILITIES AND A FINANCIAL STATEMENT AUDIT UNDER GENERALLY ACCEPTED AUDITING STANDARDS
### Residential Capital, LLC

This Appendix A is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

**Our Responsibilities**

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Audit Committee of Residential Capital, LLC are presented fairly, in all material respects, in conformity with generally accepted accounting principles. The audits of the financial statements do not relieve management or the Audit Committee of Residential Capital, LLC of their responsibilities.

**Components of a Financial Statement Audit**

A financial statement audit includes the following:

- Obtaining an understanding of the Company and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures

- Consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting

- Examining, on a test basis, evidence supporting the amounts, allocations, and disclosures in the financial statements

- Inquiring directly of the Audit Committee of Residential Capital, LLC regarding its views about the risks of fraud and whether the Audit Committee of Residential Capital, LLC has knowledge of any fraud or suspected fraud affecting the Company

- Assessing the accounting principles used and significant estimates and allocations made by management

- Evaluating the overall financial statement presentation

**Reasonable Assurance**

An audit is planned and performed to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. However, because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement. Therefore, an audit conducted in accordance with generally accepted auditing standards is designed to obtain reasonable, rather than absolute, assurance that the financial statements are free of material misstatement. Also, a financial statement audit is not designed to detect error or fraud that is immaterial to the financial statements, nor is it designed to provide assurance on internal control or to identify control deficiencies.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 6

**APPENDIX B**

**MANAGEMENT'S RESPONSIBILITIES**
**Residential Capital, LLC**

This Appendix B is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

**Financial Statements**

The overall accuracy of the financial statements and their conformity with generally accepted accounting principles is the responsibility of the Company's management. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Determining allocation methodologies

- Establishing and maintaining effective internal control over financial reporting

- Designing and implementing programs and controls to prevent and detect fraud

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known material violations of such laws or regulations

- Adjusting the financial statements to correct material misstatements

- Providing D&T with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain evidence

**Representation Letters**

We will make specific inquiries of the Company's management about the representations embodied in the financial statements. Additionally, we will request that management provide to us the written representations the Company is required to provide to its independent auditors under generally accepted auditing standards. As part of our audit procedures, we will request that management provide us with a representation letter that includes, among other things:

- Acknowledgment of management's responsibility for the preparation of the financial statements

- Affirmation of management's belief that the effects of any uncorrected financial statement misstatements aggregated by us during the current audit engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole

We will also request that management confirm certain representations made to us during our audit. The responses to those inquiries and related written representations of management required by generally accepted auditing standards are part of the evidential matter that D&T will rely on in forming its opinion on the financial statements.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 7

### Program and Subscription Services

D&T makes available to clients and non-clients, primarily free of charge, but in some cases with a fee, various educational programs and seminars as well as informational and other tools.   Such programs, seminars, and tools may take the form of, among other things, live programs, webcasts, podcasts, websites, database subscriptions, checklists, research reports, surveys, and similar or related tools and services ("programs and subscriptions"). These programs and subscriptions may include, among other things, local office seminars, the Dbrief Webcasts series, Technical Library, Deloitte Recap, the CFO Conference. In some instances, D&T may include complimentary rooms and meals as part of the programs or seminars. The Company hereby confirms that any use or receipt by the Company or its affiliates of these subscriptions or attendance at these programs will be approved by the Audit Committee of Residential Capital, LLC in accordance with its established preapproval policies and procedures.

### Independence Matters Relating to Providing Certain Services

In connection with our engagement, D&T, management of the Company and the Audit Committee of Residential Capital, LLC will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their or the Company's preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Robinson.

### Independence Matters Relating to Hiring

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Robinson and approved by the Audit Committee of Residential Capital, LLC before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position for the Company or in a comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Company; (3) as a member of the Audit Committee of Residential Capital, LLC; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding four paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu and its member firms; and, in all cases, any successor or assignee.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 8

**APPENDIX C**

**COMMUNICATIONS WITH THE AUDIT COMMITTEE**
**Residential Capital, LLC**

This Appendix C is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

**Significant Matters**

We are responsible for communicating significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Audit Committee of Residential Capital, LLC in overseeing the financial reporting process.

**Fraud and Illegal Acts**

We will report directly to the Audit Committee of Residential Capital, LLC any fraud of which we become aware that involves senior management and any fraud (whether caused by senior management or other employees) of which we become aware that causes a material misstatement of the financial statements. We will report to senior management any fraud perpetrated by lower-level employees of which we become aware that does not cause a material misstatement of the financial statements; however, we will not report such matters directly to the Audit Committee of Residential Capital, LLC unless otherwise directed by the Audit Committee of Residential Capital, LLC.

We will inform the appropriate level of senior management of the Company and determine that the Audit Committee of Residential Capital, LLC is adequately informed with respect to illegal acts that have been detected or have otherwise come to our attention in the course of our audit or reviews, unless the illegal acts are clearly inconsequential.

**Internal Control Matters**

We will report directly, in writing, to the Audit Committee of Residential Capital, LLC and the Company's management all significant deficiencies and material weaknesses identified during the audits as required by AICPA AU 325, *Communicating Internal Control Related Matters Identified in an Audit*. Our written communication will distinguish clearly between those matters considered by D&T to be significant deficiencies and those considered by D&T to be material weaknesses. If we become aware that the oversight of the Company's external financial reporting and internal control over financial reporting, as defined by generally accepted auditing standards, by the Audit Committee of Residential Capital, LLC is ineffective, we will communicate that information in writing to the board of directors of the Company.

A significant deficiency is a deficiency, or a combination of deficiencies, in internal control over financial reporting, that is less severe than a material weakness, yet important enough to merit attention by those responsible for oversight of the company's financial reporting. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the company's financial statements will not be prevented or detected on a timely basis.

**Other Matters**

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Audit Committee of Residential Capital, LLC. However, we will communicate to the Audit Committee of Residential Capital, LLC matters required by AICPA AU 325, *Communicating Internal Control Related Matters Identified in an Audit*.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 9

**APPENDIX D**

**BUYER SUPPLEMENT**
**Residential Capital, LLC**

This Appendix D is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

This Appendix is to be provided to the Buyer for its signature and an executed copy returned to Deloitte & Touche LLP before the Buyer may be provided a copy of the independent auditors' report of Deloitte & Touche LLP.

Ocwen Loan Servicing, LLC, referred to throughout the attached engagement letter and this Appendix as the "Buyer," agrees that the independent auditors' report of Deloitte & Touche LLP ("D&T") on the Carve-Out Financial Statements of Residential Capital, LLC for the periods presented will not be included, incorporated by reference, or referred to in any public filings with the Securities and Exchange Commission without D&T's prior written consent.

If Ocwen Loan Servicing, LLC, or those acting on its behalf, intends to publish or otherwise reproduce in any document D&T's report on the financial statements referred to above, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements referred to above (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, Ocwen Loan Servicing, LLC agrees that its management will provide D&T with a draft of the document to read and obtain D&T's approval for the inclusion or incorporation by reference of D&T's report, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of D&T's report in any such document would constitute the reissuance of D&T's report. Ocwen Loan Servicing, LLC also agrees that its management will notify D&T and obtain D&T's approval prior to permitting D&T's report to be included on an electronic site.

D&T's engagement with Residential Capital, LLC to perform the services described in the engagement letter between D&T and Residential Capital, LLC does not constitute D&T's agreement to be associated with any such documents published or reproduced by or on behalf of Ocwen Loan Servicing, LLC. Any request by Ocwen Loan Servicing, LLC to reissue D&T's report, to consent to its inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered by D&T based on the facts and circumstances existing at the time of such request.

Accepted and agreed to by Ocwen Loan Servicing, LLC:

By:_____

Title:_____

Date:_____

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 10

**APPENDIX E**

**GENERAL BUSINESS TERMS**
**Residential Capital, LLC**

This Appendix E is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

1.  Independent Contractor. Nothing contained in these terms shall alter in any way the duties imposed by law on D&T in respect of the services to be provided by D&T under this engagement. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, or representative of the Company or the Audit Committee of Residential Capital, LLC.

2.  Survival. The agreements and undertakings of the Company and the Audit Committee of Residential Capital, LLC contained in the engagement letter to which these terms are attached (the "engagement letter"), together with the appendices to the engagement letter including these terms, will survive the completion or termination of this engagement.

3.  Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company and the Audit Committee of Residential Capital, LLC hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4.  Severability. If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5.  Force Majeure. No party shall be deemed to be in breach of the engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6.  Protection of Personal information. To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7.  Dispute Resolution. Any Dispute (as defined below) arising out of or relating to services performed under the engagement letter prior to the effective date of (a) a plan of reorganization of the Company or (b) a court order dismissing the Company's chapter 11 case or cases (the "Effective Date") shall be brought in the Bankruptcy Court (or the District Court (as defined below), if such District Court withdraws the reference to the Bankruptcy Court). All other Disputes, including, without limitation, Disputes arising out of or relating to services performed after the Effective Date and Disputes over which the Bankruptcy Court (or the District Court) does not have, retain or exercise jurisdiction, shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix F and made a part hereof (the "Dispute Resolution Provision"). The parties each hereby irrevocably waive, to the fullest extent permitted by law, all rights to trial by jury in any Dispute. Except with respect to the interpretation and

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 11

enforcement of the arbitration procedures set forth in the Dispute Resolution Provision (which shall be governed by the Federal Arbitration Act), the laws of the State of New York (without giving effect to its choice of law principles) shall apply in arbitration or any other forum in connection with any Dispute. The foregoing shall be binding upon the parties and any and all of their respective permitted successors and assigns. This paragraph and the Dispute Resolution Provision shall apply to the fullest extent of the law, whether in contract, statute, tort (such as negligence), or otherwise.

For Purposes of the foregoing, (a) "Dispute" shall mean any controversy or claim between the parties arising out of or relating to the engagement letter, including its appendices, or this engagement, and (b) "District Court" shall mean the United States District Court of which the Bankruptcy Court constitutes a unit.

Residential Capital, LLC – Carve-Out Financial Statements Engagement Letter
Page 12

**APPENDIX F**

## DISPUTE RESOLUTION PROVISION
### Residential Capital, LLC

This Appendix F is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Residential Capital, LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of certain Disputes (as set forth in Appendix E) and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.

# Deloitte.

Deloitte & Touche LLP
200 Renaissance Center
Suite 3900
Detroit, MI 48243
USA

www.deloitte.com

February 11, 2013

Ms. Kimberly Perez
Senior Vice President and Chief Accounting Officer
Walter Investment Management Corp.
3000 Bayport Drive, Suite 1100
Tampa, FL 33607

Dear Ms. Perez:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for Walter
Investment Management Corp. ("Walter" or the "Company") as it relates to the Statement of Assets to be
Acquired and Liabilities Assumed as of December 31, 2012 and the Statement of Revenues and Direct
Operating Expenses for the year ended December 31, 2012 for the Certain Servicing & Origination
Operations of Residential Capital, LLC (the "Component") (the "Component Financial Statements" or the
"financial statements"). We understand that Walter acquired the assets and assumed the liabilities of the
Component as of January 31, 2013. Mr. Tom Robinson will be responsible for the services that we
perform for Walter hereunder.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions
set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of
the date of the commencement of such services.

## Audit of Financial Statements

Our engagement is to perform an audit in accordance with auditing standards generally accepted in the
United States of America ("generally accepted auditing standards"). The objective of an audit conducted
in accordance with generally accepted auditing standards is to express an opinion on the fairness of the
presentation of the Component Financial Statements for the year presented, in conformity with accounting
principles generally accepted in the United States of America ("generally accepted accounting
principles"), in all material respects.

Appendix A contains a description of our responsibilities and an audit under generally accepted auditing
standards.

Our ability to express an opinion and the wording thereof will, of course, be dependent on the facts and
circumstances at the date of our report. If, for any reason, we are unable to complete the audits or are
unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue a
report as a result of this engagement. If we are unable to complete our audits or if the report to be issued
by D&T as a result of this engagement requires modification, the reasons therefor will be discussed with
management of the Company.

Component Financial Statements Engagement Letter (February 11, 2013)

## Management's Responsibilities

Appendix B describes management's responsibilities for (1) the financial statements, (2) representation letters, (3) independence matters relating to providing certain services and (4) independence matters relating to hiring.

## Communications with Management

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with management of the Company.

## Fees

Our fees for this engagement will be billed based on the actual amount of time incurred, by the level of resource and rates per hour as follows:

| Level of Resource | Rate per Hour |
|---|---|
| Partner, Principal, or Director | $465 |
| Senior Manager | $390 |
| Manager | $325 |
| Senior or equivalent | $265 |
| Staff or equivalent | $225 |

Based on the rates noted above, we estimate that our fees for the audit of the financial statements will approximate between $250 thousand and $500 thousand. We will notify you promptly of any circumstances we encounter that could significantly affect the amount of our fees and discuss with you any additional fees, as necessary.

Additional services requested beyond the scope of services described herein would be subject to the mutual agreement of the Company and D&T at such time as D&T is engaged to perform the services and would be described in a separate engagement letter.

## Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites

If the Company intends to publish or otherwise reproduce in any document our report on the Component Financial Statements issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt or equity offering circular, in a registration statement, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide D&T with a draft of the document to read and obtain our

2

Component Financial Statements Engagement Letter (February 11, 2013)

approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is filed, printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to its inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. Fees for such services (and their scope) would be subject to the mutual agreement of the Company, and D&T at such time as D&T is engaged to perform the services.

\* \* \* \* \* \*

Residential Capital, LLC ("ResCap") agrees that it will promptly seek the Bankruptcy Court's approval of this engagement. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to us in all respects. In addition to D&T's other rights or remedies hereunder, we may, in our sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects to D&T's retention by the Company in the case on the terms and conditions set forth in this engagement letter, (b) a final order authorizing the employment of D&T is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to us, or (c) the Application is denied by the Bankruptcy Court. In such event, ResCap hereby agrees to withdraw or amend, promptly upon D&T's request, any application filed, or to be filed with the Bankruptcy Court to retain D&T's services in the bankruptcy proceeding.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

3

Component Financial Statements Engagement Letter (February 11, 2013)

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

Deloitte & Touche LLP

Accepted and agreed to by
Walter Investment Management Corp.:

By: _____

Title: SVP, CAO

Date: 2/12/13

Accepted and agreed to by
Residential Capital, LLC:

By: _____

Title: CFO

Date: 2/13/13

4

Component Financial Statements Engagement Letter (February 11, 2013)

**APPENDIX A**

## DESCRIPTION OF OUR RESPONSIBILITIES AND AN AUDIT UNDER GENERALLY ACCEPTED AUDITING STANDARDS

This Appendix A is part of the engagement letter dated February 11, 2013 between Deloitte & Touche LLP and Walter Investment Management Corp.

### Our Responsibilities

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the Component Financial Statements that have been prepared by management of the Company and, to the extent applicable, management of ResCap (as management of the Component during the period under audit) are presented fairly, in all material respects, in conformity with generally accepted accounting principles. The audit of the financial statements does not relieve management of the Company of their responsibilities.

### Components of an Audit

An audit includes the following:

- Obtaining an understanding of the Component and its environment, including internal control, sufficient to assess the risks of material misstatement of the financial statements and to design the nature, timing, and extent of further audit procedures

- Consideration of internal control over financial reporting, as a basis for designing audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Component's internal control over financial reporting

- Examining, on a test basis, evidence supporting the amounts, allocations, and disclosures in the financial statements

- Inquiring directly of the management of the Company and, to the extent applicable, management of ResCap regarding its views about the risks of fraud and whether the management has knowledge of any fraud or suspected fraud affecting the Component

- Assessing the accounting principles used and significant estimates and allocations made by management

- Evaluating the overall financial statement presentation

### Reasonable Assurance

We will plan and perform our audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether caused by error or fraud. However, because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement. Therefore, an audit conducted in accordance with generally accepted auditing standards is designed to obtain reasonable, rather than absolute, assurance that the financial statements are free of material misstatement. An audit is not designed to detect error or fraud that is immaterial to the financial statements, nor is it designed to provide assurance on internal control or to identify deficiencies in internal controls.

5

Component Financial Statements Engagement Letter (February 11, 2013)

**APPENDIX B**

## MANAGEMENT'S RESPONSIBILITIES

This Appendix B is part of the engagement letter dated February 11, 2013 between Deloitte &
Touche LLP and Walter Investment Management Corp.

### Financial Statements

The overall accuracy of the financial statements and their conformity with generally accepted accounting
principles is the responsibility of the Company's management. In this regard, management of the
Company and, to the extent applicable, management of ResCap (as management of the Component during
the period under audit) have the responsibility for, among other things:

- Selecting and applying the accounting policies

- Determining allocation methodologies

- Establishing and maintaining effective internal control over financial reporting

- Designing and implementing programs and controls to prevent and detect fraud

- Identifying and ensuring that the Company complies with the laws and regulations applicable to
  its activities and informing us of any known material violations of such laws or regulations

- Adjusting the financial statements to correct material misstatements

- Providing D&T with (1) access to all information of which management is aware that is
  relevant to the preparation and fair presentation of the financial statements, such as records,
  documentation, and other matters, (2) additional information that we may request from
  management for the purpose of our audit, and (3) unrestricted access to personnel within the
  Company or ResCap, as applicable, from whom we determine it necessary to obtain evidence

### Representation Letters

We will make specific inquiries of the Company's and ResCap's management about the representations
embodied in the financial statements. Additionally, we will request that each of the Company's and
ResCap's management provide to us the written representations that are required to be provided to
independent auditors under generally accepted auditing standards. As part of our audit procedures, we
will request that management provide us with a representation letter that includes, among other things:

- Acknowledgment of management's responsibility for the preparation of the financial statements

- Affirmation of management's belief that the effects of any uncorrected financial statement
  misstatements aggregated by us during the current audit engagement and pertaining to the latest
  period presented are immaterial, both individually and in the aggregate, to the financial
  statements taken as a whole

We will also request that each of the Company's and ResCap's management confirm certain
representations made to us during our audit. The responses to those inquiries and related written

6

Component Financial Statements Engagement Letter (February 11, 2013)

representations of management required by generally accepted auditing standards are part of the evidential matter that D&T will rely on in forming its opinion on the financial statements.

## Independence Matters Relating to Providing Certain Services

In connection with our engagement, D&T and management of the Company will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence. Management of the Company will ensure that the Company has policies and procedures in place for the purpose of ensuring that the Company will not act to engage D&T or accept from D&T any service that under American Institute of Certified Public Accountants (AICPA) or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Robinson.

## Independence Matters Relating to Hiring

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees in a key position, as defined in the AICPA *Code of Professional Conduct,* that would cause a violation of the AICPA *Code of Professional Conduct* or other applicable independence rules. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Robinson before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee.

For purposes of the preceding two paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

Component Financial Statements Engagement Letter (February 11, 2013)

## APPENDIX C

## COMMUNICATIONS WITH THE MANAGEMENT

This Appendix C is part of the engagement letter dated February 11, 2013 between Deloitte &
Touche LLP and Walter Investment Management Corp.

### Significant Matters

We are responsible for communicating significant matters related to the audit that are, in our professional
judgment, relevant to the responsibilities of those charged with governance within management of the
Company in overseeing the financial reporting process.

### Fraud and Illegal Acts

We will report directly to those charged with governance within management of the Company any fraud
of which we become aware that involves senior management and any fraud (whether caused by senior
management or other employees) of which we become aware that causes a material misstatement of the
financial statements. We will report to senior management any fraud perpetrated by lower-level
employees of which we become aware that does not cause a material misstatement of the financial
statements; however, we will not report such matters directly to management of the Company unless
otherwise directed by management of the Company.

We will inform the appropriate level of senior management of the Company and determine that those
charged with governance within management of the Company are adequately informed with respect to
illegal acts that have been detected or have otherwise come to our attention in the course of our audit or
reviews, unless the illegal acts are clearly inconsequential.

### Internal Control Matters

We will report directly, in writing, to management of the Company all significant deficiencies and
material weaknesses identified during the audit as required by generally accepted auditing standards. Our
written communication will distinguish clearly between those matters considered by D&T to be
significant deficiencies and those considered by D&T to be material weaknesses. If we become aware that
the oversight of the Component's external financial reporting and internal control over financial reporting,
as defined by generally accepted auditing standards, by those charged with governance within
management of the Company is ineffective, we will communicate that information in writing to the Audit
Committee of the Company.

### Other Matters

Generally accepted auditing standards do not require us to design procedures for the purpose of
identifying other matters to communicate with management of the Company. However, we will
communicate to management of the Company matters required by generally accepted auditing standards.

Component Financial Statements Engagement Letter (February 11, 2013)

**APPENDIX D**

**GENERAL BUSINESS TERMS**

This Appendix E is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated February 11, 2013 between Deloitte & Touche LLP and Walter Investment Management Corp.

1. <u>Independent Contractor.</u> D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or Residential Capital, LLC.

2. <u>Survival.</u> The agreements and undertakings of the Company and Residential Capital, LLC, contained in the engagement letter will survive the completion or termination of this engagement.

3. <u>Assignment and Subcontracting.</u> Except as provided below, no party may assign any of its rights or obligations hereunder (including, without limitation, interests or claims relating to this engagement) without the prior written consent of the other parties. The Company hereby consents to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4. <u>Severability.</u> If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5. <u>Force Majeure.</u> No party shall be deemed to be in breach of the engagement letter (including its appendices) as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6. <u>Protection of Personal information.</u> To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7. <u>Dispute Resolution.</u> Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

Component Financial Statements Engagement Letter (February 11, 2013)

## APPENDIX E

### DISPUTE RESOLUTION PROVISION

This Appendix F is part of the engagement letter dated February 11, 2013 between Deloitte &
Touche LLP and Walter Investment Management Corp.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to
the resolution of certain Disputes and shall apply to the fullest extent of the law, whether in contract,
statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to
the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in
the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes
protecting the confidentiality of mediations or settlement discussions.  If the parties cannot agree on a
mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written
request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the
written notice beginning the mediation process (or such longer period, if the parties so agree in writing),
the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New
York, New York.  The arbitration shall be solely between the parties and shall be conducted in
accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the
commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the
"Rules").

The arbitration shall be conducted before a panel of three arbitrators.  Each of the Company and Deloitte
& Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure
provided in the Rules and the two party-designated arbitrators shall jointly select the third in accordance
with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the
terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is
attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the
interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal
Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its
choice of law principles) in connection with the Dispute. The arbitrators may render a summary
disposition relative to all or some of the issues, provided that the responding party has had an adequate
opportunity to respond to any such application for such disposition. Discovery shall be conducted in
accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any
disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such
parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may
be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties
shall share the fees and expenses of both the mediators and the arbitrators equally.