# **EXHIBIT 1**

**Supplemental Declaration of Thomas Marano**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Stefan W. Engelhardt
James A. Newton

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**SUPPLEMENTAL DECLARATION OF THOMAS MARANO, CHIEF EXECUTIVE OFFICER OF RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT OF THE FRB FORECLOSURE REVIEW OBLIGATION**

I, Thomas Marano, under penalty of perjury, declare as follows:

1. I am the Chief Executive Officer of Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). I have held this position since July of 2008. From May 2009 through May 13, 2012, I also served as Chief Capital Markets Officer and Chief Mortgage Officer of Ally Financial Inc. ("**AFI**"), a non-Debtor affiliate. Prior to joining ResCap, I served as Managing

ny-1082512

Director for Cerberus Capital Management, L.P. in its Residential and Commercial Capital Markets Division from March 2008 to April 2009.  Before my engagement at Cerberus, I spent 25 years at The Bear Stearns Companies, Inc., where I held numerous positions, most recently as Senior Managing Director and Global Head of Mortgage and Asset Backed Securities responsible for mortgage sales, trading, and origination.  In my role as Chief Executive Officer of ResCap, I am responsible for overall leadership and management of the Debtors and their non-debtor subsidiaries.  I am authorized to submit this supplemental declaration (the "**Declaration**") in further support of the *Debtors' Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination that (I) GMAC Mortgage's FRB Foreclosure Review Obligation is a General Unsecured Claim and (II) The Automatic Stay Prevents Enforcement of the FRB Foreclosure Review Obligation* (the "**Motion**").[1]

       2.       In my capacity as Chief Executive Officer, I am familiar with the Debtors' day-to-day operations, financial condition, business affairs, books and records, and obligations under the Consent Order.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; information supplied by the Debtors' consultants; or my opinion based upon experience, expertise, and knowledge of the Debtors' operations, financial condition and history.  In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare,

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

collect, and/or verify any such documentation and other information.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

### THE CONSENT ORDER AND THE FRB FORECLOSURE REVIEW

3. As I discussed in my original declaration in support of the Motion, on April 13, 2011, GMAC Mortgage, ResCap, AFI, and Ally Bank entered into the Consent Order with the FDIC and the FRB.  Pursuant to the Consent Order, the Consent Order Debtors, AFI and Ally Bank are required to implement, among other things, certain board oversight and risk management programs.  The Debtors implemented policies and procedures in connection with these prospective obligations and, as far as I am aware, continued to comply with such obligations through the closing of the sale of their servicing platform.

4. Additionally, paragraph 3 of the Consent Order requires the engagement of an independent consultant to conduct a review (the "**FRB Foreclosure Review**") of certain foreclosure actions or proceedings, including foreclosure sales, pending or completed during the period from January 1, 2009 to December 31, 2010.  The Debtors most recent estimates of the costs associated with the FRB Foreclosure Review indicated that the review costs may total as much as $374 million in the aggregate, with estimated borrower remediation payments likely to be approximately $41-85 million.

### THE ALLOCATION OF FRB FORECLOSURE REVIEW OBLIGATIONS

5. Although the parent bank holding companies were jointly liable for the foreclosure review under many of the similar or identical consent orders entered into by other mortgage servicers at the same time, under the Consent Order GMAC Mortgage is primarily liable for the FRB Foreclosure Review.  AFI was made secondarily liable pursuant to a Supplemental Agreement between it and the Federal Reserve Bank of Chicago.  AFI is also

ny-1082512

jointly liable under the engagement letter for payments to PwC, as independent consultant for the FRB Foreclosure Review, and is also a signatory to the engagement letters with the two law firms assisting PwC in that review.  As a result of these dynamics, throughout the Debtors' bankruptcy cases the parties have contemplated the potential that AFI may be required, under its Supplemental Agreement with the Federal Reserve Bank of Chicago, to pay PwC to complete the FRB Foreclosure Review and make any associated borrower remediation payments in the event that GMAC Mortgage becomes unable to do so.  In this regard, it is my understanding that since the beginning of the bankruptcy cases, the Debtors, the Creditors' Committee, and AFI have all reserved their rights with respect to which entity should ultimately be responsible for the past and future costs of conducting the FRB Foreclosure Review, as well as any defenses that may be raised by the Debtors or other parties-in-interest with respect to such costs.  Indeed, this concept has been carried forward in the interim orders entered by the Court permitting the payment of PwC and the law firms that are assisting PwC in conducting the FRB Foreclosure Review, as well as in the order (the "**Sale Order**") approving the Debtors' sale of their servicing platform to Ocwen Loan Servicing, LLC ("**Ocwen**").

      6.      In addition to the reservation of rights described above, in contemplation of the potential that AFI could be required to satisfy the FRB Foreclosure Review obligation and associated remediation payments, the parties negotiated an amendment to the Asset Purchase Agreement (the "**Ocwen APA**") between several of the Debtors and Ocwen.  The amendment provides AFI with certain rights against the purchaser of the Debtors' servicing platform in the event that AFI becomes obligated to conduct the FRB Foreclosure Review.  As of the date of this Declaration, I am unaware of any obligation required of GMAC Mortgage in connection with the FRB Foreclosure Review that is currently being performed by AFI.

ny-1082512

## THE SETTLEMENT OFFER AND THE DEBTORS' REACTION

7. In connection with the foreclosure review settlement entered into recently among the FRB and most of the other major mortgage servicers subject to consent orders, the Debtors were also offered a settlement. It is my understanding that the offer to the Debtors contained similar terms to those contained in the settlements with other mortgage servicers. As is apparent from the recently released consent order amendments agreed to by other mortgage servicers, the agreement reached between those servicers and the FRB generally requires a cash payment to be made within 15 days of the date of the amendment. The Debtors believe the FRB Foreclosure Review obligation is a prepetition claim and are willing to provide the FRB with a general unsecured claim in the approximately amount of $232 million. The Creditors' Committee has joined in that offer, which is based on the same formula used by the FRB in connection with the other recent settlements.

8. I have been advised that the letter from William J. Perlstein of Wilmer Cutler Pickering Hale and Dorr LLP, Special Counsel for Certain Regulatory Matters to the Official Committee of Unsecured Creditors of Residential Capital, LLC, attached hereto as Exhibit 1, was received by the Debtors' counsel and was forward on to the FRB.

New York, New York             /s/  Thomas Marano
Dated: March 19, 2013          Thomas Marano
                               Chief Executive Officer of Residential Capital,
                               LLC

ny-1082512

**Exhibit 1 to Declaration**

# WILMERHALE

+1 212 230 8800(t)
+1 212 230 8888(f)
wilmerhale.com

REVISED

February 12, 2013

Oliver I. Ireland, Esq.
Morrison & Forester LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Re: Residential Capital

Dear Oliver:

After consideration of the presentation by Residential Capital, LLC ("ResCap") to the Unsecured Creditors' Committee ("Committee") on January 30, 2013, it is the Committee's view that the proposed amount and the approach of the terms of the proposed settlement with the Board of Governors of the Federal Reserve System ("Federal Reserve") described in the presentation ("Settlement") are agreeable to the Committee and should be agreeable to ResCap.

The Committee believes that the cash payment amount of $198 million and the soft dollar framework (at a ratio of 7:1), resulting in a total payment pursuant to the Settlement of $232 million ("Settlement Payment") as proposed by the banking regulators, are appropriate under the current circumstances, that it is important that the foreclosure review process terminate as soon as possible, and that any attempt to contest or renegotiate these amounts, resulting in the continued expenditure of estate funds on the foreclosure review process, would be counterproductive.

The Committee would also support the allowance of the $232 million payment as a general unsecured claim to be paid in accordance with the Plan(s) of Reorganization of the Debtors' estates. It is the Committee's conclusion, however, that the payment relates to pre-petition conduct of the Mortgage Servicing Companies (as defined in the Consent Order) and does not qualify for administrative expense priority. *See, e.g., In re Chateaugay*, 944 F.2d 997, 1009-10 (2d Cir. 1991) (concluding that post-petition expenses resulting from pre-petition conduct give rise to an administrative claim only in the limited circumstance where prepetition conduct poses a "significant hazard to public health"); *In re McCrory Corp.*, 188 B.R. 763, 768 (Bankr. S.D.N.Y. 1995) (observing that administrative priority may be accorded to post-petition clean-up costs based on pre-petition conduct only "if the damages constitutes an 'imminent and identifiable' harm to the public health and safety"). There is no imminent or continuing harm from the claimed prepetition conduct that would qualify for administrative treatment under the prevailing case law. Moreover, no payment can be made by the estate on this claim other than under a confirmed Plan.

Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007
Beijing    Berlin    Boston    Brussels    Frankfurt    London    Los Angeles    New York    Oxford    Palo Alto    Waltham    Washington

WILMERHALE

Oliver I. Ireland, Esq.
February 12, 2013
Page 2

The Committee understands that the banking regulators are seeking to commence payments to foreclosure claimants as early as next month. Since the Settlement Payment does not qualify as an administrative expense of the bankruptcy estate, the only way to ensure that the Settlement Payment is made promptly is for Ally to make the payment. As you know, pursuant to the Supplemental Agreement, dated as of April 26, 2012, by and between Ally and the Federal Reserve Bank of Chicago, Ally is liable for any ResCap Obligations for monetary reimbursement or remediation payments under the Consent Order, as those terms are defined in the Supplemental Agreement. The Debtors should encourage the Federal Reserve to look to Ally for the Settlement Payment.

Best Regards,

William J. Perlstein