MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
James A. Newton

*Counsel for the Debtors and
Debtors in Possession*

PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Facsimile: (212) 336-2222
David W. Dykhouse
Brian P. Guiney

*Attorneys for Ambac Assurance Corporation
and the Segregated Account of Ambac
Assurance Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                :
In re:                                                          :    Chapter 11
                                                                :
RESIDENTIAL CAPITAL, LLC, *et al.*                              :    Case No. 12-12020 (MG)
                                                                :
                                       Debtors.                 :    Jointly Administered
                                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF FILING REVISED EXHIBITS TO
## JOINT STIPULATION OF FACTS REGARDING THE
## SALE OBJECTION OF AMBAC ASSURANCE CORPORATION AND
## THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION

**PLEASE TAKE NOTICE** that, on March 4, 2013, Residential Capital, LLC and

its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases

(collectively, the "**Debtors**") and Ambac Assurance Corporation and the Segregated Account of

Ambac Assurance Corporation (collectively, "**Ambac**" and, together with the Debtors, the

"**Parties**") filed the *Joint Stipulation of Facts Regarding the Sale Objection of Ambac Assurance

Corporation and the Segregated Account of Ambac Assurance Corporation* (the "**Joint

Stipulation**"), Dkt. No. 3094;

**PLEASE TAKE FURTHER NOTICE** that attached as <u>Exhibit A</u> hereto is a revised version of Exhibit A to the Joint Stipulation.  The revised version of Exhibit A to the Joint Stipulation that is attached hereto amends and restates the version of Exhibit A that was originally attached to the Joint Stipulation in all respects;

**PLEASE TAKE FURTHER NOTICE** that attached as <u>Exhibit B</u> hereto is a revised version of Exhibit B to the Joint Stipulation.  The revised version of Exhibit B to the Joint Stipulation that is attached hereto amends and restates the version of Exhibit B that was originally attached to the Joint Stipulation in all respects; and

**PLEASE TAKE FURTHER NOTICE** that attached as <u>Exhibit C</u> hereto is a revised version of Exhibit C to the Joint Stipulation.[1]  The revised version of Exhibit C to the Joint Stipulation that is attached hereto amends and restates the version of Exhibit C that was attached to the Joint Stipulation in all respects.

New York, New York
Dated: March 21, 2013


/s/   Norman S. Rosenbaum                      /s/   David W. Dykhouse
Gary S. Lee                                    David W. Dykhouse
Norman S. Rosenbaum                            Brian P. Guiney
James A. Newton                                PATTERSON BELKNAP WEBB & TYLER
MORRISON & FOERSTER LLP                        LLP
1290 Avenue of the Americas                    1133 Avenue of the Americas
New York, New York 10104                       New York, New York 10036-6710
Telephone: (212) 468-8000                      Telephone: (212) 336-2000
Facsimile: (212) 468-7900                      Facsimile: (212) 336-2222

*Counsel to the Debtors and*                   *Attorneys for Ambac Assurance Corporation*
*Debtors in Possession*                        *and the Segregated Account of Ambac*
                                               *Assurance Corporation*

---

[1] The documents that comprise Exhibit C number in the thousands of pages and would unduly burden parties in interest if they were filed electronically or served in hard copy.  A copy of Exhibit C to the Joint Stipulation has been provided to the Court.  A copy of Exhibit C to the Joint Stipulation will be made available by CD-ROM or hard copy to any other party in interest upon written request to the Debtors' claims and noticing agent.

6042291v.1
ny-1083048

**<u>EXHIBIT A</u>**

| Policy | Name | Trigger Tripped | Current Rolling Six-Month Delinquency Rate | | Three-Month Rolling Six-Month Delinquency Rate | | Twelve-Month Loss Amount | | Cumulative Losses | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Threshold | Trigger Value (as of 02/13) | Threshold | Trigger Value (as of 02/13) | Threshold | Trigger Value (as of 02/13) | Threshold | Trigger Value (as of 02/13) |
| **AB0562BE** | **Residential Funding Corp 2002-KS4** | **Yes** | **19.00%** | **13.91%** | **NAP** | **NAP** | **3.00%** | **6.13%** | **6.00%** | **6.21%** |
| **AB0593BE** | **Residential Funding Corp 2002-KS6** | **Yes** | **19.00%** | **10.64%** | **NAP** | **NAP** | **3.00%** | **6.68%** | **6.00%** | **6.75%** |
| **AB0636BE** | **Residential Funding Corp. 2002-KS8** | **Yes** | **19.00%** | **12.36%** | **NAP** | **NAP** | **3.00%** | **4.16%** | **6.00%** | **6.32%** |
| **AB0670BE** | **Residential Asset Securities Corp. 2003-KS4 (Group I Only)** | **Yes** | **19.00%** | **12.56%** | **NAP** | **NAP** | **3.00%** | **3.99%** | **6.00%** | **4.46%** |
| **AB0678BE** | **Residential Asset Securities Corp. 2003-KS5** | **Yes** | **19.00%** | **13.12%** | **NAP** | **NAP** | **3.00%** | **3.20%** | **4.50%** | **3.79%** |
| **AB0704BE** | **Residential Asset Securities Corp. 2003-KS9** | **Yes** | **19.00%** | **13.54%** | **NAP** | **NAP** | **3.00%** | **3.51%** | **4.50%** | **3.72%** |
| | | | | | | | | | | |
| AB0610BE | Residential Asset Mtge Products 2002-RZ4 | No | 13.75% | 10.83% | NAP | NAP | NAP | NAP | 9.00% | 3.54% |
| AB0646BE | Residential Asset Mtge Products 2003-RZ1 | No | 13.75% | 7.63% | NAP | NAP | NAP | NAP | 9.00% | 3.38% |
| AB0655BE | Residential Asset Mtge Products 2003-RZ2 | No | 13.75% | 7.62% | NAP | NAP | NAP | NAP | 9.00% | 3.04% |
| | | | | | | | | | | |
| AB0248BE | Residential Funding Corporation 1999-RS1 | No | 15.00% | 10.57% | 13.00% | 9.92% | 2.75% | 0.42% | 8.00% | 2.11% |
| **AB0581BE** | **Residential Asset Mtge Products 2002-RS4** | **Yes** | **12.00%** | **9.65%** | **10.00%** | **8.90%** | **2.75%** | **6.03%** | **8.00%** | **3.79%** |
| **AB0597BE** | **Residential Asset Mtge Products 2002-RS5** | **Yes** | **12.00%** | **13.03%** | **10.00%** | **12.30%** | **2.75%** | **3.03%** | **8.00%** | **2.96%** |
| **AB0688BE** | **Residential Asset Mtge. Products 2003-RS6** | **Yes** | **12.00%** | **9.52%** | **10.00%** | **9.39%** | **2.75%** | **3.51%** | **8.00%** | **5.09%** |
| **AB0763BE** | **Residential Asset Mtge. Products 2004-RS5 Trust** | **Yes** | **12.00%** | **8.03%** | **10.00%** | **8.03%** | **2.75%** | **2.92%** | **8.00%** | **4.21%** |
| | | | | | | | | | | |
| AB0538BE | Residential Asset Mtge Products 2002-RP1 | No | NAP | NAP | NAP | NAP | 5.50% | 2.48% | 16.00% | 15.81% |
| AB0693BE | Residential Asset Mtge Products 2003-RP2 | No | NAP | NAP | NAP | NAP | 4.00% | 2.33% | 14.00% | 7.63% |
| | | | | | | | | | | |
| AB0696BE | Residential Funding Mtge Secs. II 2003-HI3 | No | NAP | NAP | NAP | NAP | NAP | NAP | 14.00% | 10.17% |

**Note**: RMBS Transactions with Servicing Triggers that have tripped as of February 2013 appear in **bold**. Each specific Servicing Trigger that has tripped is shaded

**EXHIBIT B**

# EXHIBIT B

**Exhibit B-1**:  *Contract Excerpts for Series 2002-KS4, Series 2002-KS-6, Series 2002-KS8 and 2003-KS4 (“B-1 Transactions”)*

***The following PSA provisions are identical or substantially identical for the B-1 Transactions.  Differences are noted in bold print.***

## Section 7.05 Servicing Trigger; Removal of Master Servicer.

(a)  Upon determination by the Certificate Insurer that a Servicing Trigger has occurred, the Certificate Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Certificate Insurer may direct the Trustee to remove the Master Servicer if the Certificate Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Certificate Insurer's discretion be extended by  notice  to the Trustee and the Master Servicer for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Certificate Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Certtificate Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Certificate Insurer under Section 7.01.

**Servicing Trigger:**   As of any Distribution Date, for purposes of **(All Deals EXCEPT 2003-KS4: Section 7.05, "Servicing Trigger, Removal of Master Servicer,"; 2003-KS4 ONLY: hereof)** the occurrence of any of the following scenarios:

(a)     the Rolling Six-Month Delinquency Ratio is greater than 19.00% for the then-current distribution date;

(b)     the aggregate Twelve Month Loss Amount is greater than or equal to 3.00% of the average aggregate Stated Principal Balance of the Mortgage Loans for the then-current Distribution Date and the eleven preceding Distribution Dates; or

(c)     the aggregate Realized Losses on the Mortgage Loans exceed (a) with respect to the first 24 Distribution Dates, 2.25% of the aggregate Cut-Off Date Principal Balance, (b) with respect to the next 12 Distribution Dates, 3.50% of the aggregate Cut-Off Date Principal Balance, (c) with respect to the next 12 Distribution Dates, 4.50% of the aggregate Cut-Off Date Principal Balance, and (d) with respect to all Distribution Dates thereafter, 6.00% of the aggregate Cut-Off Date Principal Balance.

**Rolling Six-Month Delinquency Ratio:**   As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**For all deals except 2003-KS4:**
**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period **(2002 KS4 and 2002 KS6:in which the most recent Distribution Date occurs; 2002-KS8: ending with the Due Period relating to the most recent Distribution Date)** which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

**For 2003-KS4 ONLY:**
**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) the sum of (a) the Cut-off Date Principal Balance of the Mortgage Loan and (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal

portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Distribution Date:**  The 25th day of any month beginning in **(2002-KS4: the month immediately following the month of the initial issuance of the Certificates; 2002-KS6: October 2002; 2002-KS8: January 2003; 2003-KS4: June 2003)** or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**For all deals except 2003-KS4:**
**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate plus the sum of the applicable Mortgage Insurance Premium Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate plus the sum of the applicable Mortgage Insurance Premium Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the

B-3

Certificate Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction. ***(The following is contained in Series 2002-KS8 and 2003-KS4 ONLY:)  Realized Losses allocated to the Class SB Certificates shall be allocated first to the (2002-KS8: REMIC III; 2003-KS4: REMIC V) Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the (2002-KS8: REMIC III; 2003-KS4: REMIC V) Regular Interest SB-PO in reduction of the Principal Balance thereof.***

**For 2003-KS4 ONLY:**

**<u>Realized Loss:</u>**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition,  plus (ii) interest  (and REO Imputed  Interest, if any) at the Net Mortgage  Rate plus the applicable Mortgage Insurance Premium Rate, plus, with respect to the Group II Loans and Group III Loans, the Certificate Insurer Premium Modified Rate, in each case from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate plus the applicable Mortgage Insurance Premium Rate, plus, with respect to the Group II Loans and Group III Loans, the Certificate Insurer Premium Modified Rate, and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, Servicing  Advances  or other expenses  as to which the Master Servicer or Subservicer is entitled  to reimbursement thereunder but which have not been previously reimbursed.   With  respect to  each Mortgage Loan which is the subject of a Servicing Modification, (a) (1) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.   With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the

B-4

Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction. Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee, and with respect to the Group II Loans and Group III Loans, the Certificate Insurer, in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and the related portion of the Mortgage Insurance Premium, if applicable, and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction. Realized Losses allocated to the Class SB Certificates shall be allocated first to the REMIC V Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the REMIC V Regular Interest SB-PO in reduction of the Principal Balance thereof.

**Cut-Off Date Principal Balance:  (For all deals except 2003-KS4:As to; For 2003-KS4 ONLY: With respect to)**  any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date **(2002-KS4: June 1, 2002; 2002-KS6: September 1, 2002; 2002-KS8: December 1, 2002; 2003-KS4: May 1, 2003)** after giving effect to all installments of principal due on or prior thereto **(**or due during the month of ***Insert the Cut-Off Date month and year with respect to each series***),** whether or not received.

ny-1081106 v1

**Exhibit B-2**: *Contract Excerpts for Series 2002-RS4, Series 2002-RS5, Series 2003-RS6 and Series 2004-RS5 (*"*B-2* Transactions*")*

*\*The following PSA provisions are identical or substantially identical for the B-2 Transactions. Differences are noted in bold print.*

**Section 7.05 Servicing Trigger; Removal of Master Servicer.**

(a)      Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)      At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)      Upon receipt of directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)      After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by notice to the Trustee **(2004-RS5 ONLY: and the Master Sericer)** for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as **(2003-RS6 ONLY: successor)** Master Servicer as provided in Section 7.02.

(e)      No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

ny-1081106 v1

**Servicing Trigger:   (For the s2004-RS5 deal, all references to Mortgage Loans would be replaced by "Group 1 Loans")** As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

    (i)    the aggregate Rolling Six-Month Delinquency Ratio is greater than 12.00% for the then-current Distribution Date;

    (ii)    the aggregate Rolling Six-Month Delinquency Ratio is greater than 10.00% for the then-current and two preceding Distribution Dates;

    (iii)    the aggregate Twelve-Month Loss Amount is greater than or equal to 2.75% of the aggregate Stated Principal Balance of the Mortgage Loans; or

    (iv)    the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed  (a) with respect to the first 12 Distribution Dates, 2.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12 Distribution Dates, 3.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 5.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 6.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 8.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio  for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.  (***Note***: **Although the defined term is used in the PSA, the PSA for Series 2004-RS5 does not contain the definition of this term.**)

**Distribution Date:**  The 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.  (***Note***: **Although the defined term is used in the PSA, the PSA for Series 2004-RS5 does not contain the definition of this term.**)

**Series 2002-RS4 ONLY:**
**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO

ny-1081106 v1

Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2002-RS5 ONLY (*as compared to Series 2002-RS4*):**
**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, **plus (ii) any Deferred Interest added to the principal balance of the Mortgage Loan pursuant to the terms of the Mortgage Note,** minus **(iii)** the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2003-RS6 and 2004-RS5 (*as compared to Series 2002-RS4*):**
**Stated Principal Balance:** With respect to any Mortgage Loan or related REO Property, at any given time, (i) **the sum of (a)** the Cut-Off Date Principal Balance of the Mortgage Loan, **plus (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification,** minus (ii) the sum of (a) the aggregate of the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period commencing on the first Due Period after the Cut-Off Date and ending with the Due Period related to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Series 2002-RS4 ONLY:**
**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate from the Due Date as

B-8

to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Series 2002-RS5 ONLY (*as compared to Series 2002-RS4*) :**
**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced **to the extent such interest does not constitute Deferred Interest that has been added to the principal balance of such Mortgage Loan**, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of

B-9

interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction. Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Series 2003-RS6 and 2004-RS5 (*as compared to Series 2002-RS4*):**

**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate **(2004-RS5: ,if applicable,)** from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate (or Modified Net Mortgage Rate in the case of a Modified Mortgage Loan) and the Certificate Insurer Premium Modified Rate **(2004-RS5: ,if applicable,)** and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, **Servicing Advances** or **other** expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage

B-10

Loan which is the subject of a Servicing Modification, (a) **(1)** the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, **or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer,** and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**
- **2002-RS4:  August 1, 2002**
- **2002-RS5:  September 1, 2002**
- **2003-RS6:  July 1, 2003**
- **2004-RS5:  May 1, 2004**

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of **insert month and year applicable to each transaction**), whether or not received.

B-11

**Exhibit B-3**: *Contract Excerpts for Series 2002-RZ4, Series 2003-RZ1 and Series 2003-RZ2 ("B-3 Transactions")*

***\*The following PSA provisions are identical or substantially identical for the B-3 Transactions.  Differences are noted in bold print.***

**Section 7.05 Servicing Trigger; Removal of Master Servicer.**

(a)  Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the **(2003-RZ2: Calendar Quarter; 2002-RZ4 and 2003-RZ1: calendar quarter)** in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Series 2002-RZ4:**
**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **April 2005** Distribution Date through and including the **October 2005** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **November 2005** Distribution Date through and including the **October 2006** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **November 2006** Distribution Date through and including the **October 2007** Distribution Date, 7.40% of the Cut-off Date Balance and (d) with respect to the **November 2007** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

**Series 2003-RZ1:**
**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **July 2005** Distribution Date through and including the **January 2006** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **February 2006** Distribution Date through and including the **January 2007** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **February 2007** Distribution Date through and including the **January 2008** Distribution Date, 7.40% of the Cut-off Date Balance and (d) with respect to the **February 2008** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

**Series 2003-RZ2:**
**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger, Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date exceed (a) with respect to the **September 2005** Distribution Date through and including the **March 2006** Distribution Date, 5.50% of the Cut-off Date Balance, (b) with respect to the **April 2006** Distribution Date through and including the **March 2007** Distribution Date, 6.60% of the Cut-off Date Balance, (c) with respect to the **April 2007** Distribution Date through and including the **March 2008** Distribution Date, 7.40% of the Cut-off Date Balance and (d) with respect to the **April 2008** Distribution Date and all Distribution Dates thereafter, 9.00% of the Cut-off Date Balance; or

(ii) the Rolling Six-Month Delinquency Ratio for such Distribution Date exceeds 13.75%.

**Series 2002-RZ4 and 2003-RZ1:**
**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any)

B-13

at the sum of the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed. With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received. With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation. With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction. Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction. **(2003-RZ1 ONLY: Realized Losses allocated to the Class SB Certificates shall be allocated first to the REMIC III Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the REMIC III Regular Interest SB-PO in reduction of the Principal Balance thereof.)** To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

**Series 2003-RZ2 ONLY (*as compared to Series 2002-RZ4*):**
**Realized Loss:** With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any)

at the sum or the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances, **Servicing Advances** or other expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) **(1) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced or (2) the sum of any other amounts owing under the Mortgage Loan that were forgiven and that constitute Servicing Advances that are reimbursable to the Master Servicer or a Subservicer**, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.  **Realized Losses allocated to the Class SB Certificates shall be allocated first to the REMIC III Regular Interest SB-IO in reduction of the accrued but unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero and then to the REMIC III Regular Interest SB-PO in reduction of the Principal Balance thereof.**  To the extent the Master Servicer receives Subsequent Recoveries with respect to any Mortgage Loan, the amount of the Realized Loss with respect to that Mortgage Loan will be reduced to the extent such recoveries are applied to reduce the Certificate Principal Balance of any Class of Certificates on any Distribution Date.

**Distribution Date:**  The 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates or,,  if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

B-15

**Cut-Off Date:**
- **Series 2002-RZ4:  October 1, 2002**
- **Series 2003-RZ1:  January 1, 2003**
- **Series 2003-RZ2:  March 1, 2003**

**Cut-Off Date Balance:**
- **Series 2002-RZ4:  $500,000,952.10**
- **Series 2003-RZ1:  $780,000,817.49**
- **Series 2003-RZ2:  $325,000,022.61**

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

B-16

**Exhibit B-4**: *Contract Excerpts for Series 2003-KS5 and Series 2003-KS9 ("B-4 Transactions")*

***The following PSA provisions are identical or substantially identical for the B-4 Transactions. Differences are noted in bold print.***

**Section 7.05 Servicing Trigger; Removal of Master Servicer.**

(a)  Upon determination by the Certificate Insurer that a Servicing Trigger has occurred, the Certificate Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Certificate Insurer may direct the Trustee to remove the Master Servicer if the Certificate Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)  Upon receipt of directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Certificate Insurer's discretion be extended by **(2003 KS9 ONLY: written)** notice to the Trustee and the Master Servicer for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Certificate Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Certificate Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as **(2003-KS9 ONLY: successor)** Master Servicer as provided in Section 7.02.

(e)  No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Certificate Insurer under Section 7.01.

ny-1081106 v1

**Servicing Trigger:**  As of any Distribution Date, for purposes of Section 7.05, hereof. the occurrence of any of the following scenarios:

(a)    the Rolling Six-Month Delinquency Ratio is greater than 19.00% for the then-current distribution date;

(b)    the aggregate Twelve Month Loss Amount is greater than or equal to 3.00% of the average aggregate Stated Principal Balance of the Mortgage Loans for the then-current Distribution Date and the eleven preceding Distribution Dates; or

(c)    the aggregate Realized Losses on the Mortgage Loans exceed (a) with respect to the first 24 Distribution Dates, 1.50% of the aggregate Cut-Off Date Principal Balance, (b) with respect to the next 12 Distribution Dates, 2.50% of the aggregate Cut-Off Date Principal Balance, (c) with respect to the next 12 Distribution Dates, 3.50% of the aggregate Cut-Off Date Principal Balance, and (d) with respect to all Distribution Dates thereafter, 4.50% of the aggregate Cut-Off Date Principal Balance.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for the Mortgage Loans for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Distribution Date:**  The 25th day of any month beginning in **(2003-KS5: July 2003; 2003-KS9: November 2003)** or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the sum of (a) the Cut-Off Date Principal Balance of the Mortgage Loan,and (b) any amount by which the Stated Principal Balance of the Mortgage Loan has been increased pursuant to a Servicing Modification, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending with the Due Period relating to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 on any previous Distribution Date, and (c) any Realized Loss incurred with respect to such Mortgage Loan allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i)

the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of
Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any)
at the Net Mortgage Rate plus the applicable Mortgage Insurance Premium Rate, and plus
the applicable Certificate Insurer Premium Modified Rate, in each case from the Due Date
as to which interest was last paid or advanced to Certificateholders up to the last day of the
month in which the Cash Liquidation (or REO Disposition) occurred on the Stated
Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due
Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received
during the month in which such Cash Liquidation (or REO Disposition) occurred, to the
extent applied as recoveries of interest at the Net Mortgage Rate plus the applicable
Mortgage Insurance Premium Rate, plus the applicable Certificate Insurer Premium
Modified Rate, and to principal of the Mortgage Loan, net of the portion thereof
reimbursable to the Master Servicer or any Subservicer with respect to related Advances,
Servicing Advances or other expenses as to which the Master Servicer or Subservicer is
entitled to reimbursement thereunder but which have not been previously reimbursed.
With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a)
(1) the amount by which the interest portion of a Monthly Payment or the principal balance
of such Mortgage Loan was reduced or (2) the sum of any other amounts owing under the
Mortgage Loan that were forgiven and that constitute Servicing Advances that are
reimbursable to the Master Servicer or a Subservicer, and (b) any such amount with respect
to a Monthly Payment that was or would have been due in the month immediately
following the month in which a Principal Prepayment or the Purchase Price of such
Mortgage Loan is received or is deemed to have been received.  With respect to each
Mortgage Loan which has become the subject of a Deficient Valuation, the difference
between the principal balance of the Mortgage Loan outstanding immediately prior to such
Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the
Deficient Valuation.  With respect to each Mortgage Loan which has become the object of
a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding
the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a
Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the
Certificate Insurer in writing that the Master Servicer is diligently pursuing any remedies
that may exist in connection with the representations and warranties made regarding the
related Mortgage Loan and either (A) the related Mortgage Loan is not in default with
regard to payments due thereunder or (B) delinquent payments of principal and interest
under the related Mortgage Loan and the related portion of the Mortgage Insurance
Premium, if applicable, and any premiums on any applicable primary hazard insurance
policy and any related escrow payments in respect of such Mortgage Loan are being
advanced on a current basis by the Master Servicer or a Subservicer, in either case without
giving effect to any Debt Service Reduction.  Realized Losses allocated to the Class SB
Certificates shall be allocated first to the **(Series 2003-KS5: REMIC V; Series
2003-KS9: REMIC III)** Regular Interest SB-IO in reduction of the accrued but unpaid
interest thereon until such accrued and unpaid interest shall have been reduced to zero and
then to the **(Series 2003-KS5: REMIC V; Series 2003-KS9: REMIC III)** Regular
Interest SB-PO in reduction of the Principal Balance thereof.

B-19

**Cut-Off Date Principal Balance**:  **(2003-KS5: With respect; 2003-KS9: As)** to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date **(2003-KS5: June 1, 2003; 2003-KS9: October 1, 2003)** after giving effect to all installments of principal due on or prior thereto **(2003-KS5: or due during the month of June 2003; 2003-KS9: or due during the month of October 2003),** whether or not received.

ny-1081106 v1

**Exhibit B-5**: *Contract Excerpts for Series 2002-RP1*

**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)      Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)      At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)      Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)      After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)      No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger:**    As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(i)  the aggregate Twelve Month Loss Amount is greater than or equal to 5.50% of the aggregate Stated Principal Balance of the Mortgage Loans; or

(ii) the aggregate Realized Losses on the Mortgage Loans since the Cut-Off Date exceed (a) with respect to the first 12 Distribution Dates, 4.50% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12

Distribution Dates, 7.50% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 10.50% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 13.50% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 16.00% of the aggregate Cut-Off Date Principal Balance of the Mortgage Loans.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, minus (ii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan

B-22

outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**  February 1, 2002

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of February 2002), whether or not received, exclusive of any arrearages.

ny-1081106 v1

**Exhibit B-6**: *Contract Excerpts for Series 1999-RS1*

**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)     Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Company, the Trustee and to each Rating Agency.

(b)     At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)     Upon receipt of directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)     After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by notice to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such nonreceipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)     No provision of this Section 7.05 shall have the effect of limiting the rights of the Company, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger:**   As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(i)      the aggregate Rolling Six-Month Delinquency Ratio is greater than 15.00% for the then-current Distribution Date;

(ii)     the aggregate Rolling Six-Month Delinquency Ratio is greater than 13.00% for the then-current and two preceding Distribution Dates;

(iii)    the aggregate Twelve-Month Loss Amount is greater than or equal to 2.75% of the aggregate Stated Principal Balance of the Mortgage Loans; or

(iv) the aggregate Realized Losses on the Mortgage Loans exceed  (a) with respect to the first 12 Distribution Dates, 2.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12 Distribution Dates, 3.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 5.25% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 6.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, and (e) with respect to all Distribution Dates thereafter, 8.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans.

**Rolling Six-Month Delinquency Ratio:**  As of any Distribution Date, the fraction, expressed as a percentage, equal to the average of the Delinquency Ratio for each of the six (or one, two, three, four and five in the case of the first, second, third, fourth and fifth Distribution Dates) immediately preceding Due Periods.

**Distribution Date:**  The 25th day of any month beginning in the month immediately following the month of the initial issuance of the Certificates, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, plus (ii) any Deferred Interest added to the principal balance of the Mortgage Loan pursuant to the terms of the Mortgage Note, minus (iii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due

B-25

Period that such interest was not paid or advanced to the extent such interest does not constitute Deferred Interest that has been added to the principal balance of such Mortgage Loan, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**  March 1, 1999

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of March 1999), whether or not received.

ny-1081106 v1

**Exhibit B-7**: *Contract Excerpts for Series 2003-HI3*

**Section 7.04  Servicing Trigger, Removal of Master Servicer.**

(a)  Upon determination by the Credit Enhancer that a Servicing Trigger has occurred, the Credit Enhancer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Indenture Trustee and to each Rating Agency.

(b)  At any time after such determination and while a Servicing Trigger is continuing, the Credit Enhancer may direct the Indenture Trustee to remove the Master Servicer if the Credit Enhancer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Estate.

(c)  Upon receipt of directions to remove the Master Servicer pursuant to the preceding clause (b), the Indenture Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)  After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Credit Enhancer's discretion be extended by notice to the Indenture Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Estate. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of any term as the Master Servicer, the Indenture Trustee shall not have received any Master Servicer Extension Notice from the Credit Enhancer, the Indenture Trustee shall, within five (5) Business Days thereafter, give written notice of such nonreceipt to the Credit Enhancer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Indenture Trustee shall act as successor Master Servicer as provided in Section 7.02.

(e) No provision of this Section 7.04 shall have the effect of limiting the rights of the Depositor, the Indenture Trustee, the Securityholders or the Credit Enhancer under Section 7.01.

**Servicing Trigger:**  As of any Payment Date, for purposes of Section 7.04, "Servicing Trigger; Removal of Master Servicer," the aggregate cumulative Liquidation Loss Amount on the Home Loans from the Cut-off Date through the end of the Collection Period immediately prior to such Payment Date is greater than:

B-27

(A)  13.5% of the Pool Balance as of the Cut-off Date, if such Payment Date is the 31st through 36th Payment Dates,

(B)  14.0% of the Pool Balance as of the Cut-off Date, if such Payment Date is the 37th through 48th Payment Dates, or

(C)  16.0% of the Pool Balance as of the Cut-off Date, if such Payment Date is the 49th through 60th Payment Dates, or

(D)  22.0% of the Pool Balance as of the Cut-off Date, if such Payment Date is the 61st through 72nd Payment Dates, or

(E)  26.0% of the Pool Balance as of the Cut-off Date, if such Payment Date is the 73rd Payment Date (or any Payment Date thereafter).

**Payment Date:**  The 25th day of each month, or if such day is not a Business Day, then the next Business Day.

**Liquidation Loss Amount:**  With respect to any Payment Date and any Home Loan that became a Liquidated Home Loan during the related Collection Period, the unrecovered portion of the related Loan Balance thereof at the end of such Collection Period, after giving effect to the Net Liquidation Proceeds applied in reduction of the Loan Balance.  In addition, as to any Home Loan for which the Loan Balance has been reduced in connection with bankruptcy proceedings, the amount of the reduction will be treated as a Liquidation Loss Amount.

**Cut-Off Date:**  September 1, 2003

**Collection Period:**  With respect to any Payment Date, the calendar month immediately preceding the month of such Payment Date.

**Pool Balance:**  With respect to any date, the aggregate of the Loan Balances of all Home Loans as of such date.

B-28

**Exhibit B-8**: *Contract Excerpts for Series 2003-RP2*


**Section 7.05 Servicing Trigger, Removal of Master Servicer.**

(a)    Upon determination by the Insurer that a Servicing Trigger has occurred, the Insurer shall give notice of such Servicing Trigger to the Master Servicer, the Depositor, the Trustee and to each Rating Agency.

(b)    At any time after such determination and while a Servicing Trigger is continuing, the Insurer may direct the Trustee in writing to remove the Master Servicer if the Insurer makes a determination that the manner of master servicing was a factor contributing to the size of the delinquencies or losses incurred in the Trust Fund.

(c)    Upon receipt of written directions to remove the Master Servicer pursuant to the preceding clause (b), the Trustee shall notify the Master Servicer that it has been terminated and the Master Servicer shall be terminated in the same manner as specified in Sections 7.01 and 7.02.

(d)    After notice of occurrence of a Servicing Trigger has been given and while a Servicing Trigger is continuing, until and unless the Master Servicer has been removed as provided in clause (b), the Master Servicer covenants and agrees to act as the Master Servicer for a term from the occurrence of the Servicing Trigger to the end of the calendar quarter in which such Servicing Trigger occurs, which term may at the Insurer's discretion be extended by written notice from the Insurer to the Trustee for successive terms of three (3) calendar months each, until the termination of the Trust Fund. The Master Servicer will, upon the receipt of each such notice of extension (a "Master Servicer Extension Notice") become bound for the duration of the term covered by such Master Servicer Extension Notice to continue as Master Servicer subject to and in accordance with this Agreement. If, as of the fifteenth (15th) day prior to the last day of
any term as the Master Servicer, the Trustee shall not have received any Master Servicer Extension Notice from the Insurer, the Trustee shall, within five (5) days thereafter, give written notice of such non-receipt to the Insurer and the Master Servicer. If any such term expires without a Master Servicer Extension Notice then the Trustee shall act as Master Servicer as provided in Section 7.02.

(e)    No provision of this Section 7.05 shall have the effect of limiting the rights of the Depositor, the Trustee, the Certificateholders or the Insurer under Section 7.01.

**Servicing Trigger**: As of any Distribution Date, for purposes of Section 7.05, "Servicing Trigger; Removal of Master Servicer," the occurrence of any of the following scenarios:

(i) the aggregate Twelve-Month Loss Amount is greater than or equal to 4.00% of the aggregate Stated Principal Balance of the Mortgage Loans; or

(ii) the aggregate Realized Losses on the Mortgage Loans since the Cut-off Date

exceed (a) with respect to the first 12 Distribution Dates, 3.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (b) with respect to the next 12 Distribution Dates, 3.50% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (c) with respect to the next 12 Distribution Dates, 4.75% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (d) with respect to the next 12 Distribution Dates, 7.50% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (e) with respect to the next 12 Distribution Dates, 9.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, (f) with respect to the next 12 Distribution Dates, 12.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans, and (g) with respect to all Distribution Dates thereafter, 14.00% of the aggregate Cut-off Date Principal Balance of the Mortgage Loans.

**Twelve Month Loss Amount:**  With respect to any Distribution Date, an amount equal to the aggregate of all Realized Losses on the Mortgage Loans during the 12 preceding Due Periods.

**Stated Principal Balance:**  With respect to any Mortgage Loan or related REO Property, at any given time, (i) the Cut-Off Date Principal Balance of the Mortgage Loan, plus (ii) any Deferred Interest added to the principal balance of the Mortgage Loan pursuant to the terms of the Mortgage Note, minus (iii) the sum of (a) the principal portion of the Monthly Payments due with respect to such Mortgage Loan or REO Property during each Due Period ending prior to the most recent Distribution Date which were received or with respect to which an Advance was made, and (b) all Principal Prepayments with respect to such Mortgage Loan or REO Property, and all Insurance Proceeds, Liquidation Proceeds and REO Proceeds, to the extent applied by the Master Servicer as recoveries of principal in accordance with Section 3.14 with respect to such Mortgage Loan or REO Property, in each case which were distributed pursuant to Section 4.02 or 4.03 on any previous Distribution Date, and (c) any Realized Loss allocated to Certificateholders with respect thereto for any previous Distribution Date.

**Realized Loss:**  With respect to each Mortgage Loan (or REO Property) as to which a Cash Liquidation or REO Disposition has occurred, an amount (not less than zero) equal to (i) the Stated Principal Balance of the Mortgage Loan (or REO Property) as of the date of Cash Liquidation or REO Disposition, plus (ii) interest (and REO Imputed Interest, if any) at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate from the Due Date as to which interest was last paid or advanced to Certificateholders up to the last day of the month in which the Cash Liquidation (or REO Disposition) occurred on the Stated Principal Balance of such Mortgage Loan (or REO Property) outstanding during each Due Period that such interest was not paid or advanced to the extent such interest does not constitute Deferred Interest that has been added to the principal balance of such Mortgage Loan, minus (iii) the proceeds, if any, received during the month in which such Cash Liquidation (or REO Disposition) occurred, to the extent applied as recoveries of interest at the Net Mortgage Rate and the Certificate Insurer Premium Modified Rate and to principal of the Mortgage Loan, net of the portion thereof reimbursable to the Master Servicer or any Subservicer with respect to related Advances or expenses as to which the Master Servicer or Subservicer is entitled to reimbursement thereunder but which have not been previously

reimbursed.  With respect to each Mortgage Loan which is the subject of a Servicing Modification, (a) the amount by which the interest portion of a Monthly Payment or the principal balance of such Mortgage Loan was reduced, and (b) any such amount with respect to a Monthly Payment that was or would have been due in the month immediately following the month in which a Principal Prepayment or the Purchase Price of such Mortgage Loan is received or is deemed to have been received.  With respect to each Mortgage Loan which has become the subject of a Deficient Valuation, the difference between the principal balance of the Mortgage Loan outstanding immediately prior to such Deficient Valuation and the principal balance of the Mortgage Loan as reduced by the Deficient Valuation.  With respect to each Mortgage Loan which has become the object of a Debt Service Reduction, the amount of such Debt Service Reduction.  Notwithstanding the above, neither a Deficient Valuation nor a Debt Service Reduction shall be deemed a Realized Loss hereunder so long as the Master Servicer has notified the Trustee and the Insurer in writing that the Master Servicer is diligently pursuing any remedies that may exist in connection with the representations and warranties made regarding the related Mortgage Loan and either (A) the related Mortgage Loan is not in default with regard to payments due thereunder or (B) delinquent payments of principal and interest under the related Mortgage Loan and any premiums on any applicable primary hazard insurance policy and any related escrow payments in respect of such Mortgage Loan are being advanced on a current basis by the Master Servicer or a Subservicer, in either case without giving effect to any Debt Service Reduction.

**Cut-Off Date:**  August 1, 2003

**Cut-Off Date Principal Balance:**  As to any Mortgage Loan, the unpaid principal balance thereof at the Cut-Off Date after giving effect to all installments of principal due on or prior thereto (or due during the month of August 2003), whether or not received, exclusive of any Arrearages.

**Distribution Date:**  The 25th day of any month, commencing in September 2003, or if such 25th day is not a Business Day, the Business Day immediately following such 25th day.

**<u>EXHIBIT C</u>**

The documents that comprise Exhibit C number in the thousands of pages and would unduly burden parties in interest if they were filed electronically or served in hard copy. A copy of Exhibit C to the Joint Stipulation has been provided to the Court.  A copy of Exhibit C to the Joint Stipulation will be made available to any other party in interest by CD-ROM or hard copy upon written request to the Debtors' claims and noticing agent.