Presentment Date: April 12, 2013 at 12:00 p.m. (ET)
Objection Deadline: April 5, 2013 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Naomi Moss

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 105 OF
THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENTS
BETWEEN THE DEBTORS AND THE TRUSTEE OF THE LIQUIDATING TRUSTS
OF THE PC DEBTORS**

ny-1075323

## **TABLE OF CONTENTS**

**Pages**

INTRODUCTION ................................................................................................................2

BACKGROUND .................................................................................................................2

    A.    People's Choice Bankruptcy Cases ...................................................................3

    B.    The Purchase Agreements ................................................................................3

    C.    The Warehouse Credit Agreement ...................................................................4

    D.    The Homecomings Agreements .......................................................................5

    E.    The RFC and Homecomings Proofs of Claim ..................................................5

    F.    The Settlements ................................................................................................6

        a.    The Warehouse Settlement Agreement ...............................................7

        b.    The Repurchase Claim Settlement Agreement ...................................7

        c.    The Homecomings Repurchase Claim Settlement .............................8

RELIEF REQUESTED ........................................................................................................9

BASIS FOR THE RELIEF REQUESTED .........................................................................9

    A.    The Settlements are Fair, Reasonable and Adequate Pursuant to
Bankruptcy Rule 9019 ......................................................................................9

NOTICE .............................................................................................................................12

NO PRIOR MOTION ........................................................................................................12

CONCLUSION ..................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re 1031 Tax Group, LLC*,
   2007 WL 2455176 (Bankr. S.D.N.Y. Aug. 23, 2007) ........................................................ 10, 11

*In re Adelphia Commc'ns Corp.*,
   327 B.R. 143 (Bankr. S.D.N.Y. 2005) ............................................................................... 10, 11

*Case v. Los Angeles Lumber Prods. Co.*,
   308 U.S. 106 (1939) ..................................................................................................................9

*In re East 44th Realty, LLC*,
   2008 WL 217103 (S.D.N.Y. Jan. 23, 2008 ) ............................................................................11

*In re Hibbard Brown & Co., Inc.*,
   217 B.R. 41 (Bankr. S.D.N.Y. 1998) ......................................................................................10

*In re Ionosphere Clubs, Inc.*,
   156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) .........................................10

*In re Iridium Operating LLC*,
   478 F.3d 452 (2d Cir. 2007) ............................................................................................. 10, 11

*Myers v. Martin* (*In re Martin*),
   91 F.3d 389 (3d Cir. 1996) .......................................................................................................12

*In re Purofied Down Prods. Corp.*,
   150 B.R. 519 (S.D.N.Y. 1993) ................................................................................................11

*TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) ................................................................................................................12

*In re W.T. Grant Co.*,
   699 F.2d 599 (2d Cir. 1983) ....................................................................................................11

*In re Worldcom, Inc.*,
   347 B.R. 123 (Bankr. S.D.N.Y. 2006) ....................................................................................10

*Key3Media Group, Inc. v. Pulver.com, Inc.* (*In re Key3Media Group, Inc.*),
   336 B.R.87 .............................................................................................................................12

*Plaza Equities LLC v. Pauker (In re Copperfield Invs.)*,
   401 B.R. 87 (Bankr. S.D.N.Y. 2009) ......................................................................................10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968) ..................................................................................................................9

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*,
    134 B.R. 499 (Bankr. S.D.N.Y. 1991) ....................................................................................... 9

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move (the "Motion") for entry of an order, the proposed form of which is attached hereto as Exhibit 1, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreements entered into by and between (i) Residential Funding Company, LLC ("RFC") and Ronald F. Greenspan, in his representative capacity as the Trustee (the "Trustee") of the Liquidating Trusts (the "Trusts") of People's Choice Home Loan, Inc. ("PCHLI"), People's Choice Funding, Inc. ("PCFI"), and People's Choice Financial Corporation ("PCFC," and collectively with PCHL and PCFI, the "PC Debtors"), and (ii) Debtor Homecomings Financial, LLC ("Homecomings") and the Trustee. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Deanna Horst (the "Horst Decl."), attached hereto as Exhibit 2. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334. Venue is proper under 28 U.S.C. sections 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. section 157(b)(2). The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions (the "Whitlinger Affidavit") [Docket No. 6].

-1-

ny-1075323

## INTRODUCTION

2. Pursuant to this Motion, the Debtors seek approval pursuant to Bankruptcy Rule 9019 of (i) the Repurchase Settlement Agreement (defined below), (ii) the Warehouse Settlement Agreement (defined below), and (iii) the Homecomings Repurchase Settlement Agreement (defined below).

## BACKGROUND

3. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4. On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

5. On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674].

6. On the Petition Date, the Debtors filed the Sale Motion[2], and on June 28, 2012, the Court entered an order approving the sale and bid procedures for the sale of the Debtors' assets [Docket No. 62].

---

[2] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bank. P. 2002, 6004, 6006 and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Hearing and Sale Deadline; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 61].

2

ny-1075323

7. At the conclusion of the hearing held on November 19, 2012, the Court approved the Sale Motion on the record. On November 21, 2012, the Court entered orders approving the sales [Docket Nos. 2246 and 2247].

A. **People's Choice Bankruptcy Cases**

8. PCHLI formerly originated, funded, sold and serviced mortgage loans. PCFC was essentially a holding company with few assets or liabilities, other than the interest in its subsidiaries (including PCHLI). PCFI implemented REIT securitizations, which consisted of loans that PCHLI originated and then transferred to PCFI.

9. On or about March 20, 2007 (the "PC Petition Date"), PCHLI, PCFI and PCFC each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "PC Bankruptcy Cases") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "PC Bankruptcy Court"). The PC Bankruptcy Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 07-10765 (RK).

10. On August 6, 2008, the PC Bankruptcy Court entered an order confirming the *Committee's First Amended Liquidating Plan Under Chapter 11 of the Bankruptcy Code* (the "PC Plan") for the PC Debtors. The PC Plan became effective on or around August 12, 2008. Pursuant to the PC Plan, the Trustee is directed to administer the Trusts, including evaluating claims against the PC Debtors and objecting to, allowing or otherwise resolving such claims.

B. **The Purchase Agreements**

11. Prior to the PC Petition Date, PCHLI and RFC entered into (i) a "Client Contract" dated July 19, 2000, (ii) a Mortgage Loan Purchase and Sale Agreement dated September 1, 2006 and (iii) other related documents (collectively, the "Purchase Agreements").

3

12. Pursuant to the Purchase Agreements, RFC agreed to purchase certain mortgage loans from PCHLI, subject to certain repurchase obligations. The Purchase Agreements set forth various conditions under which PCHLI is required to repurchase mortgage loans from RFC.

**C.    The Warehouse Credit Agreement**

13. Prior to the PC Petition Date, RFC made loans, advances or otherwise extended financial accommodations to PCHLI and PCFI pursuant to the Second Amended and Restated Warehousing Credit and Security Agreement by and among RFC, PCHLI and PCFI, dated December 28, 2004 (as amended, restated, supplemented or otherwise modified from time to time, the "Warehouse Credit Agreement"). PCFC guaranteed the indebtedness of PCHLI and PCFI under the Warehouse Credit Agreement pursuant to a Guaranty dated as of December 28, 2004.

14. As of the PC Petition Date, the PC Debtors were indebted to RFC under the Warehouse Credit Agreement, the Warehousing Note (as defined in the Warehouse Credit Agreement) and the Guaranty in an amount in excess of $262,000,000 (inclusive of accrued and unpaid interest, fees and other costs and expenses; collectively, the "RFC Warehouse Credit Agreement Obligations"). Under the Warehouse Credit Agreement, PCHLI and PCFI granted RFC a security interest in, among other collateral, certain mortgage loans (the "Pledged Loans") to secure the RFC Warehouse Credit Agreement Obligations.

15. On May 22, 2007, RFC conducted a public sale of the Pledged Loans. The purchase price for the Pledged Loans was $210,552,049.48. The PC Debtors also remitted to RFC payments on the Pledged Loans received after the PC Petition Date. Both the purchase price for the Pledged Loans and the post-petition payments were credited against the outstanding RFC Warehouse Credit Agreement Obligations.

16. The PC Debtors, RFC, and Homecomings entered into a settlement agreement dated February 4, 2008, which resolved, among other things, RFC's claimed security interests in certain "scratch and dent" loans and cash collateral, and provided that the PC Debtors would pay $725,000 to RFC (the "Secured Claim Settlement Agreement"). The settlement agreement was approved by order of the PC Bankruptcy Court entered on March 25, 2008. RFC received the settlement payment on April 7, 2008, and its security interests in the in the "scratch and dent" loans and the cash collateral were extinguished.

**D.     The Homecomings Agreements**

17. Pursuant to a certain Asset Purchase Agreement for Mortgage Loans or REO Properties sold by PCHLI to Homecomings, dated November 27, 2002 (as amended or modified by various addenda), Homecomings agreed to purchase certain loans from PCHLI, subject to repurchase or cure obligations.

**E.     The RFC and Homecomings Proofs of Claim**

18. On April 7, 2008, RFC filed an amended proof of claim in PCHLI's Chapter 11 case (the "PCHLI Claim") asserting a secured claim against PCHLI in the amount of $725,000 and a general unsecured claim in the amount of $89,587,824.79 comprised of (i) $48,086,878.67 relating to certain Warehouse Credit Agreement Obligations (the "Warehouse Claim"), (ii) $42,079,121.08 for damages suffered as a result of alleged breaches and mortgage loan repurchase obligations of PCHLI under the Purchase Agreements (the "Repurchase Obligations Claim")[3], and (iii) an additional $146,825.04 in costs in connection with mortgage loan sales to RFC (the "Additional Cost Claim").

---

[3] RFC's original Repurchase Obligations Claim in the amount of $27,900,312.25 was based on the original unpaid principal balance of the loans or estimates of a foreclosure sale recovery. RFC amended its Repurchase Obligations Claim to reflect its updated calculations regarding liquidated and unliquidated loans and remove amounts that were duplicative of Homecomings' proof of claim. RFC amended its Warehouse Claim to correct the amount of the deficiency remaining after the sale.

19. On April 7, 2008, RFC also filed an amended proof of claim in PCFI's Chapter 11 case (the "PCFI Claim") asserting the Warehouse Claim, and an amended proof of claim in PCFC's chapter 11 case (the "PCFC Claim") pursuant to the Guaranty for unsecured amounts equal to the Warehouse Claim. The PCHLI Claim, PCFI Claim, and PCFC Claim are collectively referred to as the "Proofs of Claim".

20. Also, on April 7, 2008, PCHLI paid the settlement payment of $725,000.00 to RFC pursuant to the Secured Claim Settlement Agreement[4] and an order of the PC Bankruptcy Court approving the Secured Claim Settlement Agreement to settle the secured obligations of the PC Debtors to RFC and Homecomings. As a result, the remaining general unsecured Warehouse Claim was $47,361,878.67.

21. On or about August 30, 2007, Homecomings filed a proof of claim in PCHLI's Chapter 11 case asserting a general unsecured claim in the amount of $266,591.89 for repurchase or cure obligations owed to Homecomings (the "Homecomings Repurchase Claim").

22. The PC Debtors and, subsequently, the Trustee of the Trusts requested additional information and documents in support of the Proofs of Claim.

**F.    The Settlements**

23. After providing detailed documentation in support of the Proofs of Claim and participating in extensive settlement discussions over the course of several years, RFC, Homecomings, and the Liquidating Trustee agreed on the allowed amounts of the Proofs of Claim.

24. The terms of the settlements and background information for each of the PCHLI Claim, PCFI Claim, PCFC and Homecomings Repurchase Claim under the settlement

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreements (as defined herein).

agreements are summarized briefly below. Each of the settlement agreements provide that they are subject to approval of this Court. Copies of each of the settlement agreements are attached hereto as <u>Exhibit 3</u>.

    **a.**    **The Warehouse Settlement Agreement**

25. As amended, RFC's Warehouse Claim totals $48,086,878.67. On or about November 19, 2012, following arms-length negotiations, RFC and the Trustee executed an agreement settling the Warehouse Claim (the "<u>Warehouse Settlement Agreement</u>"). Pursuant to the Warehouse Settlement Agreement, the Warehouse Claim is allowed in the amount of $44,082,558.55, representing the full amount of RFC's Warehouse Claim, less the amount of the $725,000 settlement payment received on April 7, 2008, and post-petition interest in the amount of $3,279,320.12. The Warehouse Settlement Agreement provides:

- The PCFI Claim, the PCFC Claim, and the Warehouse Claim portion of the PCHLI Claim will be reduced and each allowed as general, unsecured, non-priority claims in the amount of $44,082,558.55 against each of the PC Debtors and shall receive the treatment afforded under the PC Plan.

- The Warehouse Settlement Agreement shall become effective and binding upon approval by both the PC Bankruptcy Court and this Court.

    **b.**    **The Repurchase Claim Settlement Agreement**

26. RFC filed its amended Repurchase Obligations Claim in the amount of $42,079,121.08, which related to 188 loans. The Trustee reviewed RFC's Repurchase Obligations Claim on a loan-by-loan basis. RFC collected detailed and extensive information in response to the Trustee's requests and provided thousands of pages of documents to the Trustee in support of the breaches underlying its Repurchase Obligations Claim. Through this process, which covered several years, RFC adjusted its claim because it liquidated loans, determined that

7

it had not incurred losses with respect to certain loans, and received payments in full for certain loans.

27. Even with the extensive documentation provided, the Trustee maintained certain objections relating to the underlying breaches, repurchase obligations, or RFC's claim calculations; however, RFC and the Trustee conducted extensive negotiations and agreed upon the allowed amount of the Repurchase Obligations Claim. On or about November 19, 2012, RFC and the Trustee executed an agreement settling the Repurchase Obligations Claim and Additional Cost Claim (the "Repurchase Settlement Agreement"), under which the claims are allowed as general, unsecured, non-priority claims in the combined amount of $21,321,618. The Repurchase Settlement Agreement provides:

- The Repurchase Obligations Claim and Additional Costs Claim portions of the PCHLI Claim will be reduced and allowed as a general, unsecured, non-priority claim against PCHLI in the total amount $21,321,618 and shall receive the treatment afforded under the PC Plan.

- The Repurchase Settlement Agreement shall become effective and binding upon approval by both the PC Bankruptcy Court and this Court.

c. **The Homecomings Repurchase Claim Settlement**

28. Homecomings filed the Homecomings Repurchase Claim in the amount of $266,591.89 for repurchase and cure obligations. Homecomings provided documents in support of its claim to the Trustee; however, the Trustee maintained his objections with respect to certain portions of the claim. Homecomings and the Trustee negotiated the claim, and on or about November 19, 2012, Homecomings and the Trustee executed an agreement settling the Homecomings Repurchase Claim (the "Homecomings Settlement Agreement," and together with the Warehouse Settlement Agreement and the Repurchase Settlement Agreement, the "Settlements Agreements"). The Homecomings Settlement Agreement provides:

8

ny-1075323

- The Homecomings Repurchase Claim will be reduced and allowed as a general, unsecured, non-priority claim in the amount of $157,644.00 and shall receive the treatment afforded under the PC Plan.

- The Homecomings Settlement Agreement shall become effective and binding upon approval.

29. On December 19, 2012, the PC Bankruptcy Court approved the Warehouse Settlement Agreement and Repurchase Settlement Agreement, and allowed the Warehouse Claim, Repurchase Obligations Claim, and Additional Cost Claim in the agreement provided for under such settlement, subject to the approval of the Settlement Agreements by this Court. The Trustee determined not to seek PC Bankruptcy Court approval of the Homecomings Settlement Agreement.[5] Copies of the PC Bankruptcy Court orders are attached as <u>Exhibit 4</u>.

## RELIEF REQUESTED

30. By this Motion, the Debtors seek entry of an order under Bankruptcy Code section 105 and Bankruptcy Rule 9019 approving the Settlement Agreements and authority for the Debtors to perform their obligations thereunder.

## BASIS FOR THE RELIEF REQUESTED

### A. The Settlements are Fair, Reasonable and Adequate Pursuant to Bankruptcy Rule 9019

31. Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise and settlement," Fed. R. Bankr. P. 9019(a), if it is in the best interests of the estate. *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co*., 308 U.S.

---

[5] The Trustee decided not to seek bankruptcy court approval because of the size of the claim.

106, 130 (1939)). "[C]ompromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting the administration of the bankruptcy estate." *In re 1031 Tax Group, LLC*, 2007 WL 2455176, *3 (Bankr. S.D.N.Y. Aug. 23, 2007). *See also In re Iridium Operating LLC*, 478 F.3d 452, 455 (2d Cir. 2007) ("In Chapter 11 bankruptcies, settlements . . . help clear a path for the efficient administration of the bankruptcy estate," and are therefore encouraged).

32.     To approve a compromise and settlement under Bankruptcy Rule 9019(a), courts have held that the proposed compromise and settlement should be fair and equitable, reasonable and in the best interests of the debtor's estate. *See Plaza Equities LLC v. Pauker (In re Copperfield Invs.)*, 401 B.R. 87, 91 (Bankr. S.D.N.Y. 2009); *In re Worldcom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). "The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'" *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citations omitted). Moreover, the Bankruptcy Court should exercise its discretion to approve a settlement "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

33.     In the Second Circuit, this analysis is guided by six factors: (i) the balance between the litigation's possibility of success and the settlement's future benefits; (ii) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (iii) the paramount interest of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object or affirmatively support the proposed settlement; (iv) whether other parties in

10

interest support the settlement; (v) the competency and experience of counsel supporting the settlement; and (vi) the extent to which the settlement is the product of arms-length bargaining. *In re Iridium Operating LLC*, 478 F.3d at 462; *see also In re East 44th Realty, LLC*, 2008 WL 217103, *12 (S.D.N.Y. Jan. 23, 2008 ) (applying *Iridium* factors and approving settlement as within the range of reasonableness); *In re 1031 Tax Group, LLC*, 2007 WL 2455176, *3 (applying *Iridium* factors and approving settlement as fair and equitable and in the best interest of the estates).

34. In determining whether to approve a proposed settlement, a Bankruptcy Court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation"). "[T]he court only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment about the settlement." *In re Adelphia Commc'ns*, 327 B.R. at 159.

35. The relevant factors set forth above support a finding that the settlements are well within the range of reasonableness and the compromises that are embodied in the Settlement Agreements are fair and equitable, in the best interests of the estate and should be approved.

36. First, continued litigation with the Trustee would be costly and time consuming. The settlements resolve the uncertainty underlying the claims resolution process in the PC Bankruptcy Court and eliminates the accrual of the substantial litigation expenses which would

11

almost certainly be associated therewith.  Accordingly, the Debtors respectfully submit that approval of the settlements is warranted.

38. The settlement amounts are fair and reasonable.  The Debtors undertook a thorough review and analysis of the claims and the documentation underlying the claims. *See* Horst Decl. ¶ 3.  Furthermore, the costs that would inevitably accrue if the Debtors were required to continue negotiating and litigating the value of the Proofs of Claim would be substantial. *See* Horst Decl. ¶ 3.

38. The Debtors assert that the settlements are in the best interests of their estates. "When determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Group, Inc. v. Pulver.com, Inc.* (*In re Key3Media Group, Inc.*), 336 B.R.87, 93 (Bankr. D. Del. 2005 (quoting *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).  The Debtors believe they will realize considerable value from the Settlement Agreements.

39. Accordingly, in light of each of the above factors, the Court should approve the settlements and the terms of the Settlement Agreements pursuant to Bankruptcy Rule 9019.

## NOTICE

40. The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR MOTION

41. No previous motion requesting the relief sought herein has been made to this or any other Court.

## CONCLUSION

The Debtors respectfully request that the Court enter the Order, attached hereto as <u>Exhibit 1</u>, approving the Settlement Agreements and authorizing the Debtors to perform their obligations thereunder and grant such other and further relief as the Court deems just and proper.

Dated:  March 21, 2013
        New York, New York

/s/ Gary S. Lee
Gary S. Lee
Norman S. Rosenbaum
Naomi Moss
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*