UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: April 11, 2013 at 10:00 a.m.
Objection Deadline: March 25, 2013 at 4:00 p.m.

------------------------------------------------------- x
                                    :

In re                                  :           Chapter 11

                                    :

RESIDENTIAL CAPITAL, LLC,          :           Case No. 12-12020 (MG)

                                    :

                       Debtors.    :           Jointly Administered

                                    :

------------------------------------------------------- x


## OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR SECOND INTERIM AWARDS OF COMPENSATION AND <u>REIMBURSEMENT OF OUT-OF-POCKET EXPENSES</u>

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:    Brian S. Masumoto
       Eric Small
       Michael T. Driscoll
       Trial Attorneys
       33 Whitehall Street, 21st Floor
       New York, New York 10004
       Tel. No. (212) 510-0500
       Fax No. (212) 668-2255

# TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

I.      JURISDICTION, VENUE, AND STATUTORY PREDICATE .......................................4

II.     FACTUAL BACKGROUND.........................................................................................5
        A.      Filing of Chapter 11 Proceedings ..........................................................5
        B.      General Status of Cases ..........................................................................5

III.    LEGAL STANDARDS ...............................................................................................6
        A.      Reasonableness .......................................................................................6
        B.      Vague Time Entries ................................................................................8
        C.      Overhead and Other Administrative Activities.......................................10
        D.      Preparation of Fee Applications..............................................................12
        E.      "Lumping" or Block Billing....................................................................13
        F.      Actual and Necessary Expenses..............................................................14
        G.      Interim Compensation............................................................................15

IV.     OBJECTIONS............................................................................................................16
        A.      Debtors' Professionals...........................................................................16
        B.      Committee Professionals ........................................................................40
        C.      Examiner Professionals..........................................................................48

V.      CONCLUSION..........................................................................................................54

# TABLE OF AUTHORITIES

**Cases**

In re In re ACT Mfg., Inc., 281 B.R. 468 (Bankr. D. Mass. 2002)................................................15

In re American Preferred Prescription, Inc., 218 B.R. 680 (Bankr. E.D.N.Y. 1998) ..............15, 35

In re Almacs, Inc., 178 B.R. 598 (Bankr. D. R.I. 1995) ...............................................................12

In re Baker, 374 B.R. 489 (Bankr. E.D.N.Y. 2007)................................................................8, 9, 14

In re Barron, 73 B.R. 812 (Bankr. S.D. Cal. 1987)................................................................15, 16

In re Bennett Funding Group, 213 B.R. 234 (Bankr. N.D.N.Y. 1997)................................. *passim*

In re Beverly Mfg. Corp., 841 F.2d 365 (11th Cir. 1988). .............................................................8

In re Brous, 370 B.R. 563 (Bankr. S.D.N.Y. 2007)...................................................................7, 14

In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833 (3d Cir. 1994) ....................................................8

In re Castorena, 270 B.R. 504 (Bankr. D. Idaho 2001) ...............................................................11

In re CCT Commc'ns, Inc., No. 07–10210 (SMB), 2010 WL 3386947
    (Bankr. S.D.N.Y. Aug. 24, 2010) ............................................................................ *passim*

In re CF & I Fabricators of Utah, Inc., 131 B.R. 474 (Bankr. D. Utah 1991) ..............................12

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995) .................................................8, 16

In re Computer Learning Centers, Inc., 285 B.R. 191 (Bankr. E.D. Va. 2002).......................12, 13

In re Dana Corp., 351 B.R. 96 (Bankr. S.D.N.Y. 2006) ..............................................................26

In re Dimas, LLC, 357 B.R. 563 (Bankr. N.D. Cal. 2006) ...........................................................11

In re Engel, 124 F.3d 567 (3d Cir. 1997)........................................................................................7

In re Fibermark, Inc., 349 B.R. 385 (Bankr. D. Vt. 2006)...................................................... *passim*

In re First Hartford Corp., 23 B.R. 729 (Bankr. S.D.N.Y. 1982) .................................................15

In re First Software Corp., 79 B.R. 108 (Bankr. D. Mass. 1987) ..................................................12

In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057
    (Bankr. E.D.N.Y. Dec. 11, 2009)......................................................................................10

In re Hudson, 364 B.R. 875 (Bankr. N.D.N.Y. 2007) ............................................................9, 11

In re Jefsaba, 172 B.R. 786 (Bankr. E.D. Pa. 1994) ............................................................ passim

In re Joseph Charles & Associates, Inc., 295 B.R. 399 (Bankr. S.D. Fla. 2003)..........................11

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ...........................................................7, 8

In re Korea Chosun Daily Times, Inc., 337 B.R. 758 (Bankr. E.D.N.Y. 2005) ............................14

In re Lederman Enter., Inc., 997 F.2d 1321 (10th Cir. 1993) .........................................................7

In re Market Resources Dev., 320 B.R. 841 (Bankr. E.D. Va. 2004)...........................................11

In re Mesa Air Group Inc., 449 B.R. 441 (Bankr. S.D.N.Y. 2011) ...................................13, 30, 53

In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB)
    (Bankr. S.D.N.Y. Jan. 13, 2009)...................................................................................14

In re Northwest Airlines Corp., 382 B.R. 632 (Bankr. S.D.N.Y. 2008).........................................7

In re S.T.N. Enters., Inc., 70 B.R. 823 (Bankr. D. Vt. 1987).........................................................14

In re St. Rita's Assocs. Private Placement, L.P., 260 B.R. 650
    (Bankr. W.D.N.Y. 2001)...................................................................................17, 31, 51

In re Tan, Lie Hung & Mountain States Investments, LLC, 413 B.R. 851
    (Bankr. D. Or. 2009) ......................................................................................................11

In re Taxman Clothing Co., 49 F.3d 310 (7th Cir. 1995) ................................................................8

In re Temple Retirement Community, Inc., 97 B.R. 333 (Bankr. W.D. Tex. 1989) ......................8

In re Value City Holdings, Inc., 436 B.R. 300 (Bankr. S.D.N.Y. 2010) .....................................7, 8

Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19
    (2d Cir. B.A.P. 1997)........................................................................................................7

Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253 (3d Cir. 1995) .............................8

**Statutes & Rules**

11 U.S.C. § 330 ........................................................................................................ *passim*
11 U.S.C. § 331 .............................................................................................................4
28 U.S.C. § 157 .............................................................................................................4
28 U.S.C. § 1334 ...........................................................................................................4
28 U.S.C. § 1408 ...........................................................................................................4

**Other Authorities**

Administrative Order M-447 ................................................................................. *passim*
United States Trustee Guidelines for Reviewing Applications for Compensation and
Reimbursement of Expenses Filed Under 11 U.S.C. § 330 .................................... *passim*

TO:    THE HONORABLE MARTIN GLENN,
         UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

respectfully submits this omnibus objection (the "Objection") to the second interim fee

applications (the "Applications") of the retained professionals (the "Retained Professionals")

seeking awards of interim compensation and reimbursement of out-of-pocket expenses for the

periods set forth below (the "Fee Period"):[1]

| Name | Retained As | Period | Fees | Expenses |
|---|---|---|---|---|
| Bradley Arant Boult Cummings LLP ("Bradley Arant"), ECF Doc. No. 3151. | Debtors' Special Litigation and Compliance Counsel | 9/1/12 to 12/31/12 | $4,257,795.00 | $227,136.00 |
| Carpenter Lipps & Leland LLP ("Carpenter Lipps"), ECF Doc. No. 3174. | Debtors' Special Litigation Counsel | 9/1/12 to 12/31/12 | $1,877,415.00 | $641,079.68 |
| Centerview Partners LLC ("Centerview"), ECF Doc. No. 3176. | Debtors' Investment Banker | 9/1/12 to 12/31/12 | $1,200,000.00 | $29,452.59 |
| Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis Mallet"), ECF Doc. No. 3209. | Debtors' Conflicts Counsel | 9/1/12 to 12/31/12 | $623,725.50 | $2,137.20 |
| Deloitte & Touche LLP ("Deloitte"), ECF Doc. No. 3181. | Debtors' Independent Auditor | 9/1/12 to 12/31/12 | $1,697,678.00 | $0.00 |
| Dorsey & Whitney LLP ("Dorsey"), ECF Doc. No. 3153. | Debtors' Special Securitization and Investigatory Counsel | 9/1/12 to 12/31/12 | $157,027.75 | $125.78 |
| Fortace LLC ("Fortace"), ECF Doc. No. 3167. | Debtors' Consultant | 9/1/12 to 12/31/12 | $1,491,871.00 | $17,822.75 |

---

[1] The United States Trustee has no objection to the following fee applications for this Fee Period: KPMG LLP, ECF Doc. No. 3170; Mercer (US) Inc., ECF Doc. No. 3196; Prince Lobel Tye LLP, ECF Doc. No. 3217; Rubenstein Associates, Inc., ECF Doc. No. 3171; AlixPartners, LLP, ECF Doc. No. 3206; Epiq Bankruptcy Solutions, LLC, ECF Doc. No. 3199; SilvermanAcampora LLP, ECF Docket No. 3182; Arthur J. Gonzalez, ECF Doc. No. 3204; and Wolf Halderstein Adler Freeman & Herz LLP, ECF Doc. No. 3178.  The United States Trustee reserves the right to raise issues with respect to the fees and expenses of the above professionals at the hearing on the final fee applications.

| | | | | |
|---|---|---|---|---|
| FTI Consulting, Inc. ("FTI"), ECF Doc. No. 3208. | Debtors' Financial Advisor | 9/1/12 to 12/31/12 | $7,238,803.00 | $250,791.68 |
| Hudson Cook LLP ("Hudson Cook"), ECF Doc. No. 3189. | Debtors' Special Counsel | 5/15/12 to 12/31/12 | $1,206,481.50 | $15,463.07 |
| KPMG LLP, ECF Doc. No. 3170. | Debtors' Tax Compliance Professionals and Information Technology Advisors | 9/1/12 to 12/31/12 | $720,798.50 | $56,006.02 |
| Locke Lord LLP ("Locke Lord"), ECF Doc. No. 3190. | Debtors' Litigation Counsel | 9/1/12 to 12/31/12 | $343,987.60 | $4,548.77 |
| Mercer (US) Inc., ECF Doc. No. 3196. | Debtors' Compensation Consultant | 9/1/12 to 12/31/12 | $100,455.91 | $13,277.16 |
| Morrison Cohen LLP ("Morrison Cohen"), ECF Doc. No. 3173. | Counsel for the Independent Directors | 9/1/12 to 12/31/12 | $751,416.50 | $12,391.71 |
| Morrison & Foerster LLP ("Morrison Foerster"), ECF Doc. No. 3200. | Debtors' Bankruptcy Counsel | 9/1/12 to 12/31/12 | $20,712,177.25 | $418,544.90 |
| Orrick, Herrington & Sutcliffe LLP ("Orrick"), ECF Doc. No. 3175. | Debtors' Special Securitization Transactional and Litigation Counsel | 9/1/12 to 12/31/12 | $674,764.98 | $611.43 |
| Pepper Hamilton LLP ("Pepper Hamilton"), ECF Doc. No. 3187. | Debtors' Special Foreclosure Review Counsel | 5/15/12 to 12/31/12 | $2,226.584.25 | $87,327.73 |
| Prince Lobel Tye LLP, ECF Doc. No. 3217. | Debtors' Ordinary Course Professional | 11/1/12 to 11/30/12 | $70,220.80 | $12,128.12 |
| Rubenstein Associates, Inc., ECF Doc. No. 3171. | Debtors' Communications Consultant | 9/1/12 to 12/31/12 | $10,811.25 | $3,538.50 |
| Severson & Werson, P.C. ("Severson"), ECF Doc. No. 3192. | Debtors' Special California Litigation Counsel | 9/1/12 to 12/31/12 | $1,144,734.04 | $218,413.27 |

| | | | | |
|---|---|---|---|---|
| Towers Watson Delaware Inc. ("Towers Watson"), ECF Doc. No. 3143. | Debtors' Human Resource Consultant | 9/1/12 to 12/31/12 | $138,966.79 | $9,550.01 |
| Troutman Sanders LLP, ECF Doc. No. 3195. | Debtors' Ordinary Course Professional | 9/1/12 to 12/31/12 | $498,063.00 | $9,645.92 |
| Zeichner Ellman & Krause LLP ("Zeichner Ellman"), ECF Doc. No. 3145. | Debtors' Ordinary Course Professional | 5/14/12 to 11/30/12 | $638,616.20 | $3,884.70 |
| AlixPartners, LLP, ECF Doc. No. 3206. | Committee's Financial Advisor | 9/1/12 to 12/31/12 | $3,973,550.00 | $41,862.83 |
| Analytic Focus, LLC ("Analytic Focus"), ECF Doc. No. 3211. | Committee's Consultant | 8/28/12 to 12/31/12 | $608,500.25 | $216.36 |
| Coherent Economics, LLC, ECF Doc. No. 3205. | Committee's Consultant | 8/11/12 to 12/31/12 | $960,033.25 | $11,592.54 |
| Epiq Bankruptcy Solutions, LLC, ECF Doc. No. 3199.[2] | Committee's Information Agent | 5/22/12 to 12/31/12 | $95,373.10 | $189,397.75 |
| JF. Morrow ("JF Morrow"), ECF Doc. No. 3210. | Committee's Consultant | 9/5/12 to 12/31/12 | $135,140.00 | $1,345.61 |
| Kramer Levin Naftalis & Frankel LLP ("Kramer Levin"), ECF Doc. No. 3211. | Committee's Bankruptcy Counsel | 9/1/12 to 12/31/12 | $15,217,784.50 | $385,666.94 |
| Moelis & Company LLC ("Moelis"), ECF Doc. No. 3198. | Committee's Investment Banker | 9/1/12 to 12/31/12 | $2,400,000.00 | $197,895.04 |
| Pachulski Stang Ziehl & Jones LLP ("Pachulski Stang"), ECF Doc. No. 3162. | Committee's Co-Counsel | 9/19/12 to 12/31/12 | $341,678.75 | $4,267.85 |
| San Marino Business Partners LLC ("San Marino"), ECF Doc. No. 3207. | Committee's Consultant | 8/11/12 to 12/31/12 | $190,422.50 | $11,287.22 |

---

[2] Prior to the filing of this Objection, Eqip agreed to reduce its fee request by $1,612.00 in response to United States Trustee concerns regarding the fees associated with its preparation of its application. As noted supra at Footnote 1, the United States Trustee has no objection to Epiq's fees or expenses with the reduction.

3

| SilvermanAcampora LLP, ECF Docket No. 3182. | Committee's Special Counsel | 10/25/12 to 12/31/12 | $59,525.00 | $129.32 |
|---|---|---|---|---|
| Arthur J. Gonzalez, ECF Doc. No. 3204. | Examiner | 9/1/12 to 12/31/12 | $114,750.00 | $0.00 |
| Chadbourne & Parke LLP ("Chadbourne"), ECF Doc. No. 3203. | Examiner's Counsel | 9/1/12 to 12/31/12 | $17,301,345.50 | $563,507.73 |
| Mesirow Financial Consulting, LLC ("Mesirow"), ECF Doc. No. 3193. | Examiner's Financial Advisor | 9/1/12 to 12/31/12 | $10,671,089.00 | $68,482.00 |
| Wolf Halderstein Adler Freeman & Herz LLP, ECF Doc. No. 3178. | Examiner's Conflicts Counsel | 10/15/12 to 12/31/12 | $9,529.50 | $47.50 |
| Total | | | $97,634,530.92 | $3,509,575.68 |

The United States Trustee submits this Objection to the Applications in the amounts
sought for the reasons set forth below.[3]

## I.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

1.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157
and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to
28 U.S.C. § 1408.

2.    The statutory predicates are Sections 330 and 331 of title 11, of the United States
Code (the "Bankruptcy Code").  These matters were initiated pursuant to Rule 2016 of the
Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local
Bankruptcy Rules for the Southern District of New York (the "Local Rules"), Administrative
Order M-447, Amended Guidelines for Fees and Disbursements for Professionals in Southern

---

[3] Counsel to the United States Trustee will confer with any applicant that seeks to resolve the objections prior to the
April 11, 2013 hearing.

District of New York Bankruptcy Cases (the "Local Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 (the "UST Guidelines," together with the Local Guidelines, the

"Guidelines").

## II.    FACTUAL BACKGROUND

**A.    <u>Filing of Chapter 11 Proceedings</u>**

3.    On May 14, 2012, Residential Capital, LLC and certain of its direct and indirect

subsidiaries (collectively, the "Debtors") each filed petitions for relief under Chapter 11 of the

Bankruptcy Code.  ECF Doc. No. 1.

4.    On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United

States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in

these cases.  ECF Doc. No. 102.

5.    The Debtors currently are operating their business and managing their affairs

pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.    On July 3, 2012, the Court entered an order approving the United States Trustee's

appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner in these cases.  ECF Doc.

No. 674.

**B.    <u>General Status of Cases</u>**

7.    By Order entered July 17, 2012, the Court approved procedures for monthly

compensation and reimbursement of out-of-pocket expenses (the "Monthly Compensation

Order").  ECF Doc. No. 797.  Under the Monthly Compensation Order, the Retained

Professionals may be paid 80% of fees incurred and 100% of expenses on a monthly basis.  <u>Id</u>.

8.      By Order entered on July 17, 2012, the Court approved procedures for the

employment of professionals utilized in the ordinary course (the "OCP Order").  ECF Doc. No.

799.  On February 7, 2013, the Court approved amended procedures under the OCP Order,

which does not require an ordinary course professional to file a fee application provided that the

professional's compensation does not exceed $75,000 per month or $1 million during the

pendency of the case.  ECF Doc. No. 2858.

9.      As of the date hereof, the Debtors are current with the filing of their monthly

operating reports and the payment of their United States Trustee Quarterly Fees.

### III.    LEGAL STANDARDS

**A.    <u>Reasonableness</u>**

10.     Bankruptcy Code Section 330(a)(1) provides that:

After notice to the parties in interest and the United States trustee and a hearing,
and subject to sections 326, 328, and 329, the court may award to a trustee . . . an
examiner . . . or a professional person employed under section 327 or 1103 –

> (A)     reasonable compensation for actual, necessary services rendered by
> the trustee, examiner, . . . professional person, or attorney and by
> any paraprofessional person employed by any such person; and

> (B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A) and (B).

11.     To determine reasonableness, Section 330(a)(3) instructs that:

the court shall consider the nature, the extent, and the value of such services,
taking into account all relevant factors, including –

a.      the time spent on such services;

b.      the rates charged for such services;

c.      whether the services were necessary to the administration of, or beneficial
at the time at which the service was rendered toward the completion of, a
case under this title;

6

      d.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

      e.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

      f.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).[4]  To determine "reasonable compensation," bankruptcy courts in this district are guided by, among other things, the Guidelines.  See In re Value City Holdings, Inc., 436 B.R. 300, 305 (Bankr. S.D.N.Y. 2010) ("In addition to conforming to the requirements of the Bankruptcy Code, requests for professional compensation must also conform with the Bankruptcy Rules, UST Fee Guidelines and the SDNY Guidelines.") (footnotes omitted); In re Brous, 370 B.R. 563, 569, n.8. (Bankr. S.D.N.Y. 2007) (adopting the UST Guidelines).

      12.      Section 330 requires the applicant to establish both reasonableness and benefit to the estate from the professional's services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993).  To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997).

      13.      Each applicant bears the burden of proving the reasonableness of its fees and expenses sought.  Zeisler & Zeisler, P.C. v. Prudential Ins. Co. (In re JLM, Inc.), 210 B.R. 19, 24 (2d Cir. B.A.P. 1997); Value City, 436 B.R. at 305; In re CCT Commc'ns, Inc., No. 07–10210

---

[4] Bankruptcy Rule 2016 implements the standards set forth in Section 330 of the Bankruptcy Code:

      An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, the time expended and expenses incurred and (2) the amounts requested.

Fed. R. Bankr. P. 2016(a).

(SMB), 2010 WL 3386947, at *4 (Bankr. S.D.N.Y. Aug. 24, 2010); In re Northwest Airlines

Corp., 382 B.R. 632, 645 (Bankr. S.D.N.Y. 2008) (citations omitted); In re Keene Corp., 205

B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  To satisfy its burden, an applicant must justify its

charges with detailed, specific, itemized documentation.  In re Baker, 374 B.R. 489, 494 (Bankr.

E.D.N.Y. 2007); In re Bennett Funding Group, 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997).

14.    If an applicant fails to sustain its burden on reasonableness, a court may properly

deny the application for compensation.  In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir.

1988).  Similarly, a court may reduce a professional's fees or expenses when they are

disproportionate to the benefit to the estate, even if it already has approved the professional's

retention under Sections 327 and 328 of the Bankruptcy Code.  In re Taxman Clothing Co., 49

F.3d 310, 316 (7th Cir. 1995); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253,

262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and

inadequately detailed expenses).

15.    The Court has an independent burden to review fee applications "lest

overreaching . . . professionals drain [the estate] of wealth which by right should inure to the

benefit of unsecured creditors."  Keene Corp., 205 B.R. at 695 (quoting In re Busy Beaver Bldg.

Ctrs., Inc., 19 F.3d 833, 844 (3d Cir. 1994)); CCT, 2010 WL 3386947, at *4; Value City, 436

B.R. at 305.  Accordingly, courts serve a vitally important gate-keeping role in enforcing the

Code's requirements that only reasonable fees be approved and paid as well as maintaining

public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc., 97

B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given the

sensitivities they generate and the need to promote public confidence in the system."  In re Child

World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).

B.      **Vague Time Entries**

16.     In addition, time entries may not be vague.  The Retained Professionals have the

burden of proving the reasonableness of their fee requests; accordingly, they must provide

specific and detailed time records.  To that end, the UST Guidelines require:

> Time entries for telephone calls, letters, and other communications should give
> sufficient detail to identify the parties to and the nature of the communication.
> Time entries for court hearings and conferences should identify the subject of the
> hearing or conference.

See UST Guidelines, (b)(4)(v).

17.     In order to enable the Court to determine whether a professional's time spent on a

task is reasonable, time entries must be specific and the records must clearly identify each

discrete task billed.  Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a

Court to determine whether the attorneys are claiming compensation for hours that are

'redundant, excessive, or otherwise unnecessary.'"); see also Bennett Funding, 213 B.R. at 244

("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the

work done and the reasonableness and necessity for such work, the court should disallow

compensation for such services.").  Such vague entries "make a fair evaluation of the work done

and the reasonableness and necessity for the work extremely difficult, if not impossible."  In re

Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007).

18.     Instead of embarking in a treasure hunt to determine what services were

performed on a specific date, the time entries submitted should allow the Court and a reviewer to

determine "the legal issues involved, the difficulties of the issues, and the resolution or results

obtained."  Id.  References to telephone calls that do not make clear who the call was with or the

subject matter discussed, preparation of memoranda of law that do not indicate the legal issues

involved, email communications without a description of the substance of the communications

and the recipients of such communications, and the review of documents without providing a description of the document reviewed are all examples of vague time entries that make a fair evaluation of the work done and its reasonableness impossible.  See id.; CCT, 2010 WL 3386947, at *7 (disallowing time entries referring to telephone calls and emails without identifying the subject matter of the call or email, referring to preparation of draft letters without identifying the subject matter, and referring to vague description such as "work on fee application" or "attention to Vlahos's request"); In re Fibermark, Inc., 349 B.R. 385, 396–97 (Bankr. D. Vt. 2006); In re Hirsch, No. 1–02–17966–DEM, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009) ("Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed.").

## C.    Overhead and Other Administrative Activities

19.    When determining whether requested fees are reasonable, courts consider, among other things, the professional's expertise or skills.  See, e.g., Fibermark, 349 B.R. at 396–97 ("The Court specifically considers where the task at hand could have been performed competently by a less experienced professional at a lower cost to the estate.  Whether it is reasonable for a certain professional to complete a task is to be determined by the level and skill reasonably required for the task.").

20.    Accordingly, many courts have taken the position that tasks that are clerical in nature and that are appropriate for office staff, which is considered part of a professional's overhead, may not be billed to the estate.  Id. (concluding that non-compensable administrative activities include tasks such as "mailing or delivering papers; photocopying; word processing,

including but not limited to creating templates, adding pages to various stipulations, formatting,

creating spreadsheets, scanning and saving files into the firm's computer system, creating and

revising charts, inserting case numbers into orders and printing documents; organizing files;

maintaining an internal calendar; checking for docket updates; updating a master service list;

creating, organizing, and indexing binders; pulling precedent pleadings requested by an attorney;

and making travel arrangements"); see also In re Tan, Lie Hung & Mountain States Investments,

LLC, 413 B.R. 851, 862 (Bankr. D. Or. 2009) (holding that reductions were warranted in

compensation sought by Chapter 11 trustee's attorneys based upon their improper billing, at

paralegal rates, for clerical tasks such as compiling and processing data for the electronic filing

of various motions and other documents); Hudson, 364 B.R. at 881 (holding that photocopying,

organizing documents, and assembling exhibits constituted clerical tasks included in the firm's

overhead); In re Dimas, LLC, 357 B.R. 563, 577 (Bankr. N.D. Cal. 2006) (disallowing services

performed by professionals which were clerical in nature, such as indexing, organizing and

copying documents, conducting PACER searches to locate an order or other pleading, uploading

pleadings to CM-ECF, and filing pleadings); In re Market Resources Dev., 320 B.R. 841, 846

(Bankr. E.D. Va. 2004) (concluding that tasks such as sending documents, delivering documents,

printing, and copying were non-compensable overhead); In re Joseph Charles & Associates, Inc.,

295 B.R. 399, 401 (Bankr. S.D. Fla. 2003) (holding that a paraprofessional's serving and filing

of an objection fell within the purview of clerical duties which were non-compensable); In re

Castorena, 270 B.R. 504, 516 (Bankr. D. Idaho 2001) ("Lawyers, or paralegals for that matter,

may not charge professional rates for clerical functions.").

     21.    Word processing is also "a clerical service regardless of who performs it."

Bennett Funding, 213 B.R. at 428; UST Guidelines, 4(b)(5)(vii).  As an overhead expense, word

processing cannot be billed to the client.    Moreover, time spent by a firm's library staff is

considered overhead.  See In re Almacs, Inc., 178 B.R. 598, 606 (Bankr. D. R.I. 1995) (noting

that debtor's counsel use of librarian was "overhead" and was not properly charged to the estate);

In re First Software Corp., 79 B.R. 108, 123 (Bankr. D. Mass. 1987) (disallowing part of the

compensation for research performed by a librarian).  A court should therefore deny fees

associated with clerical tasks.

**D.**    **Preparation of Fee Applications**

22.    While the United States Trustee acknowledges the allowance of a reasonable

amount of time for fee application preparation under the Bankruptcy Code, the fees related to

such task should be limited to the preparation of the actual fee application, and should not

encompass the review and correction of bills and response to the Fee Committee or other parties

in interest to inquiries or objections raised with respect to the fee applications.  Said differently,

the Bankruptcy Code does not give professionals carte blanche to charge debtors' estates for

unreasonable fees to prepare fee applications.  As a court in In re Computer Learning Centers,

Inc., held:

> [T]his does not mean that every aspect of preparing a fee application is
> compensable.  In re CF & I Fabricators of Utah, Inc., 131 B.R. 474, 483–88
> (Bankr. D. Utah 1991) carefully reviews the billing process and analyzes each
> aspect for purposes of compensation under 11 U.S.C. §330.  It holds that those
> portions of the billing process common to billing both bankruptcy clients and non-
> bankruptcy clients are not compensable under §330 because they are part of the
> professional's overhead.  They are not separately charged to non-bankruptcy
> clients and no additional effort is required to complete them for a bankruptcy
> client.  For example, maintaining time records does not require additional effort.
> Lawyers and accountants maintain the same time records in a non-bankruptcy
> matter as in bankruptcy matters.  Nor do lawyers or accountants charge for
> preparing their bills.  Bills must be prepared in non-bankruptcy matters as well as
> bankruptcy matters.  There may be some additional effort in putting the time
> records into the format required by the court.  For example, the court requires
> time records to be maintained chronologically by task.  While this may sometimes
> differ from the format of a non-bankruptcy bill, the additional effort is not

12

generally significant if the records are initially properly set-up.  Time records are almost universally maintained on computers with software that shows multiple formats, one of which will usually satisfy the bankruptcy requirements.  "A computer billing package used by a professional that does not retrieve information in a format compatible with bankruptcy requirements and requires revisions to rectify the inadequacies, is not a deficiency the estate should pay for. This is especially true for professionals who regularly practice in this court and regularly prepare fee applications.  Only those aspects of preparing a bankruptcy fee application that require additional-not merely different-efforts are compensable under §330(a)(6).

285 B.R. 191, 219–20 (Bankr. E.D. Va. 2002) (citations omitted); see also In re Mesa Air Group Inc., 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting CCT, 2010 WL 3386947, at *9) ("'[T]he review and editing of time records – as opposed to fee applications – is not compensable.'").  Accordingly, billing a debtor's estate for time spent reviewing the firm's time entries to ensure compliance with the guidelines imposed by case law, the Court, and the United States Trustee as well as handling administrative matters in connection with billing for the engagement should not be compensable.

### E.    "Lumping" or Block Billing

23.    According to the UST Guidelines, billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, the level of experience, and that person's hourly rate.  See UST Guidelines at (b)(4)(v).  Moreover, the UST Guidelines provide that "[s]ervices should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry."  Id.  The UST Guidelines only permit "lumping" where the aggregate time does not exceed a half-hour.  Id.

24.    Recording multiple tasks as one billing entry, typically referred to as "block billing" or "lumping," is routinely disallowed as it makes it exceedingly difficult to determine the reasonableness of the time spent on each of the individual tasks performed.  See Baker, 374

B.R. at 494 (citations omitted) ("A professional is required to bill each task separately.  That

way, a Court can scrutinize the reasonableness of the time expended and counsel is not tempted

to inflate the actual time spent and group multiple tasks together hoping to camouflage the true

length of an individual task.").  As a result of "lumping" time, the "timekeeper fails to sustain

[his] burden of providing that [his] fees are reasonable."  Brous, 370 B.R. at 576.  Consequently,

courts summarily will disallow time for discrete legal services merged together in a fee

application.  See, e.g., Baker, 374 B.R. at 496 (deducting 20% from the requested fees for

improper block billing); see also In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (SMB)

(Bankr. S.D.N.Y. Jan. 13, 2009) (Memorandum Decision Regarding Applications for

Professional Fees and Reimbursement of Expenses) (Docket No. 926) (allowing only 30 minutes

for each "lumped" entry, irrespective of the aggregate time billed for that entry); CCT, 2010 WL

3386947 at *7 (allowing only 30 minutes of time for lumped entries).

**F.    Actual and Necessary Expenses**

25.    Under Section 330(a)(1)(B), only documented expenses that are actual and

necessary are reimbursable.  11 U.S.C. § 330(a)(1)(B).  Professionals must "furnish enough

specificity for the Court to establish whether a given expense was both actual and necessary."  In

re Korea Chosun Daily Times, Inc., 337 B.R. 758, 769 (Bankr. E.D.N.Y. 2005) (quoting In re

S.T.N. Enters., Inc., 70 B.R. 823, 834 (Bankr. D. Vt. 1987)).  Expenses are "actual" if they are

incurred and not based on a formula or pro rata calculation.  Bennett Funding, 213 B.R. at 398.

Expenses are "necessary" if they were "reasonably needed to accomplish proper representation

of the client."  In re American Preferred Prescription, Inc., 218 B.R. 680, 686–87 (Bankr.

E.D.N.Y. 1998).

14

26.     With respect to photocopying charges, the Local Guidelines, however, provide as follows: "Photocopying shall be reimbursable <u>at the lesser</u> of $.10 or cost." Local  Guidelines at p.6, F.2 (emphasis added).

**G.     <u>Interim Compensation</u>**

27.     Interim compensation to professionals, as reflected in Section 331, finds its origins in the equity powers of the bankruptcy court.  <u>In re Barron</u>, 73 B.R. 812, 814 (Bankr. S.D. Cal. 1987).  Therefore, the Bankruptcy Court has broad discretion in the course of examining and awarding interim fee applications.  <u>Id</u>.

28.     In particular, "whether interim allowances are awarded, and in what amounts, [are] questions left by Congress to the sound discretion of the bankruptcy court."  <u>Id</u>.  Because the pending Applications are interim in nature, the timing of any payments is also within the parameters of the Court's discretion.  <u>Id</u>.  Furthermore, courts have discretion to defer ruling on any or all of the Applications, until the time for final applications is proper.  <u>In re ACT Mfg., Inc.</u>, 281 B.R. 468, 474 (Bankr. D. Mass. 2002).

29.     Section 331 incorporates the requirements of 11 U.S.C. § 330, and the standards are the same for interim and final awards of compensation.  <u>See</u> <u>Bennett Funding</u>, 213 B.R. at 244.  At the interim fee stage, "there is [no] legal entitlement to payment prior to the final fee award."  <u>Child World</u>, 185 B.R. at 17.  Section 331 "is permissive, nothing in that provision requires a court to grant an application for interim compensation."  <u>Id</u>.  Thus, the statute "authorizes the award of interim compensation, but does not mandate it."  <u>In re First Hartford Corp.</u>, 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982); <u>see also</u> <u>Barron</u>, 73 B.R. at 814 (noting that Congressional intent underlying Section 331 "was only to give officers of the estate an <u>opportunity</u> to apply for reimbursement.") (emphasis in original).

## IV.    OBJECTIONS

### A.    Debtors' Professionals

### Bradley Arant

Bradley Arant seeks the allowance of fees aggregating $4,257,795.00 and reimbursement of expenses aggregating $227,136.00 for the Fee Period. The United States Trustee objects to the allowance of $219,500.00[5] in fees and $77,700.67 in expenses for the reasons set forth below.

### (i)    Fees

### Transitory Timekeepers

The United States Trustee objects to the fees of $12,512.00 for the 30 Bradley Arant timekeepers that billed fewer than five hours during this Fee Period.[6]  The transitory nature of these services raises the question of what value, if any, these timekeepers provided to the estate. See In re Jefsaba, 172 B.R. 786, 806 (Bankr. E.D. Pa. 1994) ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").  Absent satisfactory explanation, the United States Trustee requests that the Court reduce the request by $12,512.00 related to services rendered by transitory timekeepers.

### Services related to Fee Applications

Bradley Arant seeks compensation for services under the project category

---

[5] The Bradley Arant attorney listing on Exhibit D does not contain each attorney's billing rate.  It reflects total compensation of each professional and the number of hours expended, from which the hourly rates may be derived. Exhibit D also reflects full names, while the time records contain initials and hours expended without corresponding fees, making it difficult to make calculations necessary to this Objection.  Future applications should address this issue.  In addition, Exhibit D does not appear to include a number of professionals whose initials are reflected in the time records, including MPE, KE, JAM, JBU, FWA, CLHA, HFH, and JWA.  In calculating the amount of the fee objections above, the United States Trustee used a figure of $225.00 per hour, which is the blended hourly rate (rounded up to the nearest $5.00) for each professional whose initials did not match any name in Exhibit D.
[6] See Bradley Arant Application, Ex. D.

16

"Fee/Employment Applications" in the amount of $102,837.80.  These services, which appear to exclusively relate to the firm's efforts to receive monthly and quarterly compensation, include a significant amount of time reviewing pre-bills for monthly fee invoices.  For example, on September 3, 2012, a timekeeper RLB billed for the following time entry, "Continue review and analysis of June and July pre-bills for purposes of fee application 9.3 hrs."  Absent additional information demonstrating that a large portion of the time expended in this category is not attributable to impermissible review and editing of time entries, the time should be disallowed.

The time entries also include time expended responding to the United States Trustee's objection to the First Interim Fee Application.  For example, from December 10 to 18, 2012, Bradley Arant billed 23.1 hours, totaling $8,590.00, for responding the objection.  These fees should be disallowed in their entirety.  Professionals should not be compensated for responding to inquiries or objections from the United States Trustee regarding professional fees.  <u>See</u>, <u>e.g.</u>, <u>In re St. Rita's Assocs. Private Placement, L.P.</u>, 260 B.R. 650, 652–52 (Bankr. W.D.N.Y. 2001) (holding that time incurred in defending fee requests is non-compensable); <u>see</u> <u>also</u> <u>Fibermark</u>, 349 B.R. at 398 (noting that time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law is not compensable). Therefore, absent additional documentation and explanation, the United States Trustee requests that the Court reduce Bradley Arant's compensation in this project category by a total of $102,837.80.

## **Lumped Time Entries**

Bradley Arant's application includes various "lumped" time entries. Annexed hereto as Exhibit A is a copy of Bradley Arant's time records marked with the annotations "L" to

highlight the non-compliant, lumped time entries.  The lumped time entries identified in

Exhibit A total $86,581.00.  As a result of the lumped time entries, the United States Trustee

requests that the Court reduce the fee for those services by $86,581.00.

### Vague Time Entries

Bradley Arant's application includes various impermissibly vague time entries.

Annexed hereto as Exhibit A is a copy of Bradley Arant's time records marked with the

annotations "V" to highlight the non-compliant, vague time entries. The vague time entries

identified in Exhibit A total $12,820.00.  As a result of the vague time entries, the United States

Trustee requests that the Court reduce the fee for those services by $12,820.00.

### Services Rendered Prior to Fee Period

The time records include entries for the period June 4, 2012 through August 17, 2012

aggregating 21.4 hours at an approximate cost of $4,750.00 under the matter "U.S. Bank v. Del

Rio."  The applicant should explain the nature of this action and the reason it is included in the

compensation request for this Fee Period.

### (ii)     Expenses

### Airfare Expenses

The application contains a request for airline ticket reimbursement totaling $77,700.67.

The individual invoices specify the name of the person seeking the reimbursement, but do not

specify whether the air travel was for coach class.  See, e.g., October 10, 2012 to Seattle

($1,350.10); October 17, 2012 to Waterloo, Iowa ($1,084.00).  Similarly, the category of travel

expenses aggregating $55,360.38 includes multiple hotel stays without details indicating that the

cost is reasonable for the area.  See, e.g., November 18, 2012 ($402.81).  The invoices for meal

expenses aggregating $13,399.48 contain no indication of whether the meals occurred during

work after 8:00 p.m., and in many instances exceed $20.00 per person.  For example, a

professional incurred meal costs of $216.02 beginning on October 3, 2012 for a three day period

plus another $53.08 for the same person for the same period.  Finally, the expense listings

include a "Settlement" expense of $4,500.00 that is listed, but not explained in the invoices, and

"Local Counsel" fees of $7,506.51.  These expense items should be fully explained and

documented, or be disallowed in their entirety.

**Carpenter Lipps**

Carpenter Lipps seeks the allowance of fees aggregating $1,877,415.00 and

reimbursement of expenses aggregating $641,079.68 for the Fee Period.  The United States

Trustee objects to the allowance of $6,620.50 in fees and $512,995.20 in expenses for the

reasons set forth below.

**(i)    Fees**

**Vague Time Entries**

Carpenter Lipps' application includes various impermissibly vague time entries.

Annexed hereto as Exhibit B, is a copy of Carpenter Lipps' time records marked with the

annotations "V" to highlight the non-compliant, vague time entries. The vague time entries

identified in Exhibit B total $5,357.50.  As a result of the vague time entries, the United States

Trustee requests that the Court reduce the fee for those services by approximately $5,357.50.

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $892.00 in fees charged by two

attorney timekeepers that billed fewer than five hours during the Fee Period.[7]  See Jefsaba, 172

B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing

the file or otherwise familiarizing him or herself with the matter.").  Absent further information

---

[7]The Carpenter Lipps timekeepers at issue are N. Reiss and A. George.

regarding the necessity for the brief appearances by these timekeepers and the concomitant

learning curve attendant to their transitory duties, the fees should be disallowed.

**Miscellaneous Time Record Issue**

A time entry on October 1, 2012 reflects a task requiring .3 of an hour and another task

requiring .2 of an hour, but a total of 5.00 hours.  The charge of $375.00 should be reduced by

$353.00 to $22.50 to reflect the actual total.

**(ii)    Expenses**

**Airfare**

The application contains a request for airfare reimbursement totaling $32,996.05.  The

individual invoices specify the name of the person seeking the reimbursement, and although

more recent entries properly identify the type of travel, many entries do not specify whether the

airfare was for coach class.  See, e.g., September 11, 2012 to New York ($1,037.60); September

19, 2012 to New York ($839.70); September 19, 2012 to Washington, PA ($1,071.60); October

4, 2012 to St. Paul, MN ($2,350.40); October 5, 2012 to New York ($842.39).

**Hotels**

Similarly, the category of hotel expenses aggregating $17,045.32 includes multiple hotel

stays without detailed invoices.  See, e.g., September 12, 2012 ($1,152.22); December 6, 2012

($569.21); December 14, 2012 ($1,244.00).  Without additional information, it is not possible to

determine if these expenses are reasonable.

**Meals**

The invoices for meal expenses aggregating $2,022.15 contain no indication of whether

the meals occurred during work after 8:00 p.m., and in many instances exceed $20.00 per person

See, e.g., October 31, 2012 ($85.14, $52.00, and $52.15).  While the United States Trustee

recognizes that Carpenter Lipps has voluntarily reduced its request by $137.78 to comply with the $20.00 limit, it has not specified that the remaining amounts for meals for working after 8:00 p.m.

### Outside Legal Service Providers

Carpenter Lipps seeks reimbursement of $509,227.73 for "Litigation Support Vendors" during this Fee Period.  Although the invoices attached to Carpenter Lipps' fee application includes disbursement amounts and dates, the United States Trustee notes that Carpenter Lipps did not provide the underlying invoices for these charges. As a result, the United States Trustee cannot determine whether the expenses comply with the Guidelines. Therefore, the United States Trustee requests that the Court not award the above expenses aggregating $509,227.73 unless and until Carpenter Lipps provides the additional documentation to support this reimbursement request.

### Centerview

Centerview seeks the allowance of fees aggregating $1,200,000.00 and reimbursement of out-of-pocket expenses aggregating $29,452.59 during the Fee Period.  The United States Trustee objects to the allowance of $1,018.67 in expenses for the reasons set forth below.

### (i)    Expenses

### Meal and Hotel Expenses

Centerview seeks reimbursement of $10,648.55 for meal and hotel costs.  Of this amount, the United States Trustee objects to $1,018.67.  With regard to meals, the United States Trustee objects to $785.41 where the per person costs exceeded $20.00 for the following four meals:

- September 12, 2012: Del Fresco Grille of New York, $175.84 (7 attendees).

- September 19, 2012: Siroc Restaurant, $691.68 (7 attendees).

- September 20, 2012: Sei Restaurant, $90.00 (2 attendees).

- October 25, 2012: Capital Grill, $287.89 (7 attendees).

In addition, the United States Trustee objects to the requests for reimbursement of $733.26 for one night at the London NYC hotel on October 24, 2012.  Unless and until Centerview demonstrates that no less expensive alternative accommodation was available, the United States Trustee requests that the Court reduce the hotel cost by $233.26.

**Curtis Mallet**

Curtis Mallet seeks the allowance of fees aggregating $623,725.50 and reimbursement of expenses aggregating $2,137.20 for the Fee Period.  The United States Trustee objects to the allowance of $39,115.50 in fees for the reasons set forth below.

**(i)     Fees**

**Vague**

Curtis Mallet's application includes many vague entries.  Annexed hereto as Exhibit C is a copy of Curtis Mallet's time records marked with the letter "V" to highlight the non-compliant vague time entries wherein the description of the services rendered refers to "working group" or "Curtis team" rather than the timekeepers involved.  The objectionable time entries aggregate to approximately $36,399.50.  As a result of the identified vague time entries, the United States Trustee requests that the Court reduce Curtis Mallet's fees for those services by $36,399.50.  In addition, throughout the time records, with relatively few exceptions, the time records fail to disclose the specific identity of the conflict party or parties involved in the services detailed in the time records.  Based on these deficiencies, it is requested that the total fees requested be reduced $36,399.50.

**Review and Editing of Billing Invoices**

The United States Trustee objects to $2,716.00 related to review and revision of billing records to conform with the requirements of the Guidelines.  Annexed hereto as Exhibit C is a copy of Curtis Mallet's time records marked with the letter "R" to highlight the time entries that involved the impermissible review and revision of billing invoices.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  Therefore, the United States Trustee requests that the Court reduce Curtis Mallet's compensation on this matter by $2,716.00.

**Deloitte**

Deloitte seeks the allowance of fees aggregating $1,697,678.00 for the Fee Period and does not seek any expense reimbursement.  The United States Trustee objects to the allowance of $6,901.00 in fees for the reasons set forth below.

     **(i)**     **Fees**

**Transitory Timekeepers**

The United States Trustee has identified time entries by eleven timekeepers that billed fewer than five hours during the Fee Period.  Specifically, eleven professionals with the business titles Partner, Director, Senior Manager, and Manager billed fewer than five hours during this Fee Period.[8]  See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").  Absent a satisfactory explanation, the United States Trustee requests that the Court reduce Deloitte's compensation by $6,901.00, which is the amount of fees generated by the eleven transitory timekeepers**.**

---

[8] The Deloitte timekeepers at issue are: T. Baker, J. Berlat, R. Comerford, B. De Jager, F. Dudek, C. Ellsworth, S. Freshour, S. Pfeffer, J. Treiber, S. Votaw, and L. Narula.

**Dorsey**

Dorsey seeks the allowance of fees aggregating $157,027.75 and reimbursement of expenses aggregating $125.78 for the Fee Period. The United States Trustee objects to the allowance of $3,696.75 in fees for the reasons set forth below.

    **(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $3,433.50 in fees charged by nine timekeepers that billed fewer than five hours during the Fee Period.[9] See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter."). Absent further information regarding the necessity for the brief appearances by these timekeepers and the concomitant learning curve attendant to their transitory duties, the fees should be disallowed.

**Fortace**

Fortace seeks the allowance of fees aggregating $1,491,871.00 and reimbursement of expenses aggregating $17,822.75 for the Fee Period. The United States Trustee objects to the allowance of $3,220.00 in fees and $13,800.00 in expenses for the reasons set forth below.

    **(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $3,220.00 in fees charged by nine timekeepers that billed fewer than five hours during the Fee Period.[10] See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file

---

[9] The Dorsey timekeepers at issue are S. Marsden, M. Stinson, E. Ruda, V. Perisho, C. Miller, M. Stark, R. Knudson, A. Ballentine, and A. Jarboe.
[10] The Fortace timekeepers at issue are A. Tabor, A. Ashe, D. Jackson, E. Douglas, E. Gonzales, G. Fields, H. Medley, R. Heilgeist-Cunningham, and V. Pitts.

or otherwise familiarizing him or herself with the matter.").  Absent further information

regarding the necessity for the brief appearances by these timekeepers and the concomitant

learning curve attendant to their transitory duties, the fees should be disallowed.

(ii)    **Expenses**

**Loss Modeling Expenses**

The United States Trustee objects to the request for $13,800.00 for "Estimated Lifetime

Loss Model Expenses."  These appear to be the same expenses as set forth in the September

Monthly Statement for "Direct billing from WestPat."  Until such time as Fortace demonstrates

that this is an actual, and not estimated future expense, it should be disallowed.  See 11 U.S.C. §

330(a)(1)(B) (permitting only documented expenses that are actual and necessary).

**FTI**

FTI seeks the allowance of fees aggregating $7,238,803.00 and reimbursement of

expenses aggregating $250,791.68 for the Fee Period.  The United States Trustee objects to the

allowance of $40,718.00 in fees for the reasons set forth below.

(i)    **Fees**[11]

**Fees Related to KEIP**

During this Fee Period, FTI charged the estate $27,419.50 under the project category

"Task Code 8," which includes services related to the Key Employee Incentive Program motion

(the "KEIP").  During the First Interim Fee Period, the United States Trustee objected to the fees

of FTI ($59,225.00) and Morrison Foerster ($308,539.00) associated with the KEIP motion.  See

"Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim

---

[11] Prior to filing its application, FTI voluntarily reduced its fee request related to fee application preparation by
$67,000.00.  See Task Code 24.  The United States Trustee is not seeking any further reductions for that category.
FTI also billed its travel time at 50% of the total time charges, resulting in a voluntary reduction of $315,297.00.
See Task Code 25.

Compensation and Reimbursement of Expenses" (the "First Interim Fee Objection"), ECF Doc.

No. 2361.  Specifically, the United States Trustee objected to the fees of FTI and Morrison

Foerster related to the KEIP/KERP services as being not reasonable at the time performed.  See

id. at 34 (citations omitted).

As this Court found in its "Memorandum Opinion and Order Denying Debtors' Motion

for Approval of a Key Employee Incentive Plan issued on August 28, 2012" (the "Memorandum

Opinion"), the Debtors (i) failed to carry their burden to show that vesting 63% of the KEIP

awards merely by remaining until the sales closed is not primarily retentive and (ii) that the KEIP

bore a striking similarity to the plan proposed and rejected in In re Dana Corp., 351 B.R. 96

(Bankr. S.D.N.Y. 2006).  See ECF Doc. No. 1286; Memorandum Opinion at 24–25.

On December 28, 2012, the Court entered an order that approved the fees of FTI and

Morrison Foerster with the exception of the fees associated with the KEIP.  See ECF Doc. No.

2530.  Consistent with her objection during the First Interim Fee Objection, the United States

Trustee opposes compensation associated with the KEIP fees of FTI during the First Interim Fee

Period.  Further, the United States Trustee opposes compensation for a portion of the additional

time expended during this Fee Period attributable the revised KEIP.  Therefore, the United States

Trustee requests that the Court reduce FTI's fees related to the revised KEIP in the current Fee

Period by $27,419.50.

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $13,298.50 in fees charged by ten

timekeepers having the title Senior Managing Director, Managing Director, Senior Director, or

Director that billed fewer than five hours during the Fee Period.[12]  See Jefsaba, 172 B.R. at 801

---

[12]The FTI timekeepers in issue are D. DiNapoli, G. Lombardo, S. Star, W. Brown, Jr., A. Milazzo, A. Rega, N. Patel, T. Bomba, E. Hammerquist, and I. Hofstad.

26

("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter."). Absent further information regarding the necessity for the brief appearances by these timekeepers and the concomitant learning curve attendant to their transitory duties, the fees should be disallowed.

**(ii)    Expenses**

**Meals**

Many meals charges for which FTI seeks reimbursement specify that the expenses were incurred when the FTI professionals were working after 8:00 p.m. and meet the Guidelines requirement of $20 per meal; however, FTI also seeks reimbursement for several meal expenses that do not comply with the Guidelines. See, e.g., August 15, 2012 ($35.49); August 21, 2012 ($36.49); August 22, 2012 ($40.00). The UST objects to the meal expenses that exceed $20.00.

**Hudson Cook**

Hudson Cook seeks the allowance of fees aggregating $1,206,481.50 and reimbursement of expenses aggregating $15,463.07 for the Fee Period. The United States Trustee objects to the allowance of $8,314.50 in fees and $15,463.07 in expenses for the reasons set forth below.

**(i)    Fees**

**Transitory Timekeepers**

The United States Trustee objects to the fees of $8,314.50 for the eight Hudson Cook timekeepers that billed fewer than five hours between May 15, 2012 and December 31, 2012. The transitory nature of these services raises the question of what value, if any, these timekeepers provided to the estate. See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter."). Absent satisfactory explanation, the United States Trustee requests

that the Court reduce the request by $8,314.50 related to services rendered by transitory

timekeepers.

    **(ii)**    **Expenses**

**No Expense Reimbursement**

Hudson Cook seeks reimbursement of $15,463.07 for meal and travel expenses.  In

support, Hudson Cook attached a chart to its fee application that provides the disbursements

amounts; however, Hudson Cook did not provide expense backup documentation.  Without the

backup documentation, it cannot be determined that the expenses are reasonable and

reimbursable under the Guidelines.  Therefore, the Court should deny Hudson Cook's request for

reimbursement expenses without prejudice, pending the submission of documentation to support

its expenses reimbursement request.

**Locke Lord**

Locke Lord seeks the allowance of fees aggregating $343,987.60 and reimbursement of

expenses aggregating $4,548.77 for the Fee Period.  The United States Trustee objects to the

allowance of $6,303.90 in fees for the reasons set forth below.

    **(i)**    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $6,303.90 in fees charged by ten

timekeepers that billed fewer than five hours during the Fee Period.[13]  See Jefsaba, 172 B.R. at

801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file

or otherwise familiarizing him or herself with the matter.").  Absent further information

---

[13]The Locke Lord timekeepers at issue are J. Ackerberg, J. Brissette, J. Collins, J. Costello, P. Richards, J. Rudinger, J. Viskocil, K. Wisniewski, K. Wolber and T. Yoxall.

28

regarding the necessity for the brief appearances by these timekeepers and the concomitant

learning curve attendant to their transitory duties, the fees should be disallowed.

**Morrison Cohen**

Morrison Cohen seeks the allowance of fees aggregating $751,416.50 and reimbursement

of out-of-pocket expenses aggregating $12,391.71 during the Fee Period.  The United States

Trustee objects to the allowance of $6,637.00 in fees for the reasons set forth below.

**(i)    Fees**

**Review of Billing Invoices**

Morrison Cohen seeks compensation of $15,497.00 under the project category

"Fee/Employment Applications."  Of this amount, the United States Trustee objects to $1,129.50

because the time records indicate that such work was expended relating to reviewing and

revising its billing invoices.  As discussed above, these services are overheard and thus are not

compensable by the estate.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time

records is not compensable).  Annexed hereto as Exhibit D is a copy of the relevant time records

marked with the annotations "R" to highlight the relevant time entries.  Therefore, the United

States Trustee requests that the Court reduce Morrison Cohen's compensation in this project

category by $1,129.50.

**Responses to Fee Objections Not Compensable**

Morrison Cohen seeks compensation of $8,185.00 under the project category

"Fee/Employment Objections."  The United States Trustee objects to $5,507.50 relating to

responding to the United States Trustee's objections to Morrison Cohen's first interim fee

application.  Professionals should not be compensated for responding to inquiries or objections

from the United States Trustee regarding professional fees.  See, e.g., St. Rita's, 260 B.R. at

651–52 (holding that time incurred in defending fee requests is non-compensable); see also

Fibermark, 349 B.R. at 398 (noting that time spent defending a fee application that does not

conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law is not

compensable).  Therefore, the United States Trustee requests that the Court reduce Morrison

Cohen's compensation in this project category by $5,507.50.

**Morrison Foerster**

Morrison Foerster seeks the allowance of fees aggregating $20,712,177.25 and

reimbursement of expenses aggregating $418,544.90 for the Fee Period.  The United States

Trustee objects to the allowance of $1,514,936.00 in fees for the reasons set forth below.

**(i)      Fees**

**Fees Related to KEIP**

Morrison Foerster seeks payment of $545,290.00 under the project category "Employee

Matters" (Task Code 024) related to the revised KEIP motion during the Fee Period.  As

articulated above at page 26 with respect to FTI, the United States Trustee objects to Morrison

Foerster's fees of $308,539.00 related to the Debtors' unsuccessful prosecution of the original

KEIP motion.[14]  The United States Trustee also opposes compensation for such additional time

expended during this Fee Period attributable to developing revised KEIP terms acceptable to the

Court.  Independent of any determination with respect to fees related to the original KEIP, which

the United States Trustee continues to oppose in its entirety, the United States Trustee requests a

reduction of $545,290.00 related to the services related to the KEIP motion during this Fee

Period.

---

[14] See First Interim Fee Objection, ECF Doc. No. 2361 at 34.

**Lumped Time Entries**

Morrison Foerster's application includes various "lumped" time entries.  Annexed hereto as Exhibit E is a copy of Morrison Foester's time records marked with the annotations "L" to highlight the non-compliant, lumped time entries.  The lumped time entries identified in Exhibit E total $187,830.50.  As a result of the Lumped time entries, the United States Trustee requests that the Court reduce the fee for those services by $187,830.50.

**Vague Time Entries**

Morrison Foerster's application includes various impermissibly vague time entries. Annexed hereto as Exhibit E is a copy of Morrison Foerster"s time records marked with the annotations "V" to highlight the non-compliant, vague time entries. The vague time entries identified in Exhibit E total $303,838.00. As a result of the vague time entries, the United States Trustee requests that the Court reduce the fee for those services by $303,838.00.

**Multiple Attendees at Court Hearings**

Morrison Foerster seeks $477,978.00 for services rendered under the project category "Hearings." The United States Trustee objects to these fees because the time records indicate that multiple Morrison Foerster professionals attended these court hearings.  Examples include the following hearings: September 11, 2012 (ten attendees); September 19, 2012 (four attendees plus one on the telephone); September 27, 2012 (ten attendees); October 10, 2012 (nine attendees), October 17, 2012 (four attendees, plus one on the telephone); November 19, 2012 (twelve attendees); December 20, 2012 (ten attendees plus one on the telephone). The United States Trustee requests that the Court reduce the compensation for the multiple attendees at the various hearings by $477,978.00 unless Morrison Foerster can demonstrate the necessity of the multiple attendees under this project category.

31

## Orrick

Orrick seeks the allowance of fees aggregating $674,764.98 and reimbursement of out-of-pocket expenses aggregating $611.43 during the Fee Period.  The United States Trustee objects to the allowance of $10,062.63 in fees for the reasons set forth below.[15]

**(i)    Fees**

### Transitory Timekeepers

The United States Trustee objects to the aggregate of $10,062.63 in fees charged by ten attorney timekeepers that billed fewer than five hours during the Fee Period.[16]  See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").  Absent further information regarding the necessity for the brief appearances by these timekeepers and the concomitant learning curve attendant to their transitory duties, the fees should be disallowed.

## Pepper Hamilton

Pepper Hamilton seeks the allowance of fees aggregating $2,226,584.25 and reimbursement of expenses aggregating $87,327.73 for the Fee Period.  The United States Trustee objects to the allowance of $2,226,584.25 in fees and $44,303.41 in expenses absent further explanation.

---

[15] The United States Trustee notes that Orrick has voluntarily reduced its request for compensation by the total sum of $46,949.10 and is not seeking compensation for time expended in connection with the United States Trustee's objection to its First Interim Fee Application.  See Application, p. 8, n.1.  The United States Trustee does not seek any further reductions in compensation for this project category.

[16] The Orrick timekeepers at issue are R. Gloistein, D. Mao, T. Welsh, K. Whyburn, S. Briesinger, M. Knutsen, K. MOskowitz, S. Pearsall, B. Skosnik, L. Sullivan, and B. Sumey.

    **(i)**    <u>**Fees**</u>

<u>**Vague Time Entries**</u>

Pepper Hamilton was retained to provide support to an independent consultant

conducting a review of certain mortgage foreclosure actions and sales.  <u>See</u> Retention

Application, ECF Doc. No. 1426 at ¶ 6.  Upon a review of the time records, it appears that

Pepper Hamilton professionals spent the vast majority of their time between May 15, 2012

through August 31, 2012 (the "May-August Period") in training for the task of reviewing

individual mortgage files.  During the time period of September 2012 to December 2012 (the

"September-December Period"), Pepper Hamilton professionals spent the vast majority of their

time in reviewing actual mortgage files.

The following are representative vague time entries for the May-August Period:

| Date | Timekeeper | Hours | Entry |
|------|-----------|-------|-------|
| 5/16/12 (page 22 on ECF) | DKA | 7.4 | Work with PwC on fee and stay issues |
| 5/16/12 (page 22) | GA | 10.2 | Work with PwC on stay and fee issues |
| 5/17/12 (page 23) | GA | 5.5 | Work with PwC on Stay questions |
| 5/23/12 (page 24) | GA | 5.5 | Work on fee and stay issues with PwC |
| 6/1/12 (page 32) | GA | 3.1 | Review Ally bankruptcy process |
| 6/12/12 (page 35) | ALH | 7.1 | Training and review of legal review processes |
| 6/12/12 (page 35) | CBH | 9.5 | Training and review of loan document review process |
| 7/2/12 (page 50) | GA | 2.5 | Work on file review process |
| 8/9/12 (page 67) | GA | 2.4 | Work on training materials for legal review |
| 8/21/12 (page 71) | 11 professionals | All billed 7.7 | Participate in training for legal review process |

As demonstrated above, numerous time entries are for training to review foreclosure files, but

lack specifics of the training.  For example, the use of "Working with PwC" on stay or review

issues does not provide an adequate description.  Further examples of deficient time entries for

the May-August Period that appear to fall under training or protocol development are attached as

Exhibit F.

33

During the September-December Period, a typical problematic time entry can be found on September 4, 2012, when eight professionals billed the identical amount of 2.9 hours (and one additional professional billed 2.3 hours) under the time entry description of "Review loan files" (pages 86–87). It is unclear whether each entry showing "review loan files" is for one loan file or several loan files. It is also not known what services were provided in connection with this review, including the actual legal work. Due to the voluminous nature of these time entries, the United States Trustee has not identified all vague entries; however, attached hereto as Exhibit F a copy of representative objectionable time entries.

In light of the pervasive nature of these vague time entries, the Court should not approve the fees of Pepper Hamilton, but rather should require a supplement to the narrative portion of the fee application in these areas:

(1) Pepper Hamilton should explain the protocols developed for the review of mortgage files, as well as the training undertaken by Pepper Hamilton professionals, during the May-August Period.

(2) Pepper Hamilton should specifically identify the legal work required in the review of the files that justifies the billing rate of attorneys, as opposed to paralegals or PwC personnel.

(3) In this regard, Pepper Hamilton should explain whether there are any benchmarks in terms of time or detail in reviewing an individual loan file. Pepper Hamilton should also describe procedures for tracking work on individual loans and how the results are conveyed to the client.

Pepper Hamilton should then review its time records and provide more detail. While the United States Trustee does not expect that every entry will need revision, the time records are impermissibly vague under the circumstances. Further, Pepper Hamilton should provide separate project categories for its retention and fee application work. Based on the foregoing deficiencies, the United States Trustee objects to Pepper Hamilton's fees until Pepper Hamilton provides additional information supporting its fee application.

34

(ii)    **Expenses**

**Transportation and Meals**

Pepper Hamilton seeks $87,327.23 in expense reimbursement.  The United States Trustee objects to the expenses detailed on the chart below and attached as Exhibit F:

| Date | Timekeeper | Cost | Description |
|------|-----------|------|-------------|
| 5/22/12 (page 27 of ECF) | GA | 75.03 | Meals |
| 5/22/12 (page 28) | DKA | 144.63 | Travel - Car Rental (Hertz-Philadelphia International Airport) |
| 5/22/12 (page 29) | DKA | 144.64 | Travel - Car Rental (Hertz-Philadelphia International Airport) |
| 7/3/12 (page 29) | GA | 441.87 | Travel - Four Seasons 5/15-5/16 |

Specifically, the meal on May 22, 2012 for $75.03 appears excessive because it exceeds $20.00.  In addition, it appears that Pepper Hamilton included a $144.64 duplicate charge for a car rental on May 22, 2012.  Further, Pepper Hamilton must provide supporting documentation related to the request for reimbursement of the $441.87 overnight stay at the Four Seasons Hotel on May 15–16, 2012.  Absent documentation and an explanation to support the reasonableness of this expense, the United States Trustee objects to the reimbursement request.

Pepper Hamilton is a national law firm with a New York office.  During the pendency of these cases and specifically during this Fee Period, Pepper Hamilton staffed the case in a manner that required frequent travel by Pepper Hamilton staff between Los Angeles, Philadelphia, Michigan, and New York.  The decision to staff the case in this manner has resulted in significant cost to the estate for travel, hotel and meals. American Preferred Prescription, 218 B.R. at 686–87 (stating that expenses are "necessary" if they were "reasonably needed to accomplish proper representation of the client.")  Therefore, the United States Trustee seeks a reduction of 50% for Pepper Hamilton's expenses, or a reduction of $43,663.87.

**Severson**

Severson seeks the allowance of fees aggregating $1,144,734.04 and reimbursement of expenses aggregating $116,614.40 for the Fee Period.  The United States Trustee objects to the allowance of $329,851.85 in fees and $224.25 in expenses for the reasons set forth below.[17]

**(i)    Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $6,484.50 in fees charged by nine attorney timekeepers that billed fewer than five hours during the Fee Period.[18]  See Jefsaba, 172 B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing the file or otherwise familiarizing him or herself with the matter.").  Absent further information regarding the necessity for the brief appearances by these timekeepers and the concomitant learning curve attendant to their transitory duties, the fees should be disallowed.

**Services Rendered Prior to Fee Period**

The time records include a large number of entries for periods prior to the Fee Period.  All entries in Exhibits F1-1 through F1-6 in the approximate amount of $322,305.35 are for services rendered in July and August, 2012.  The applicant should confirm that these fees are not duplicative of any fees sought during the First Interim fee period, and should explain the reason for including them in the compensation request for this Fee Period.  Absent a satisfactory explanation, the United States Trustee objects to these fees.

---

[17] Severson also seeks reimbursement of $101,798.87 of the total of $124,486.44 in expenses previously sought in its First Interim Application.  Expense reimbursement to Severson was deferred by the Court at the prior fee hearing on December 20, 2012, and Severson was permitted to seek expense reimbursement in this application.  See Hearing Tr. pp. 145–46.
[18] The Severson timekeepers at issue are D. Querlo; K. Walker; C. Gaddis; P. Grammatico; A. Kenney; E. Kouvabina; C. McTigue; G. Walser-Jolly.

**Miscellaneous**

Two invoices on pages 92–94 of Exhibit F1-3 include duplicate time descriptions;

however, the dates of the invoices are different (September 5, 2012 and September 19, 2012).

Absent explanation, the United States Trustee objects to the reimbursement of $1,062.00, which

is the total amount of each invoice.

(**ii**)    **Expenses**

**Duplicate Expense Entries**

The United States Trustee objects to two sets of expense entries on Exhibit D.

Specifically, two entries on September 26, 2012 bearing "Code 1247" for $48.25 appear to be

duplicates.  Also, two of three entries on December 20, 2012 bearing "Code 1358" for $176.00

also appear to be listed twice.  The total sum of $224.25 should be disallowed

In its request for reimbursement of expenses for the First Interim Fee period, Severson

has reduced the amount sought by $22,687.57.  This appears to address the issues raised by the

Court at the December 20, 2012 hearing.

**Towers Watson**

Towers Watson seeks the allowance of fees aggregating $138,966.79 and reimbursement

of out-of-pocket expenses aggregating $9,550.01 during the Fee Period.  The United States

Trustee objects to the allowance of $49,640.87 in fees and $8,674.29 in expenses for the reasons

set forth below.

(**i**)    **Fees**

**Vague and Lumped Time Entries**

Towers Watson's time records include various impermissibly vague time entries.

Annexed hereto as Exhibit G is a copy of time records marked with the annotations "V" or

37

"V/L" to highlight the non-compliant, vague or vague/lumped time entries. The time entries in question total $49,640.87. Accordingly, the United States Trustee requests that the Court reduce the fees for those services by $49,640.87.

**(ii)    Expenses**

**Air Transportation**

Towers Watson seeks reimbursement of $8,513.37 for air transportation associated with employee attendance at Debtors' meetings. Exhibit E of Towers Watson's fee application provides a chart showing the costs of each trip ($1,894.78; $1,163.60; $1,256.59; $1,070.60; $981.60; and $981.60); however, the chart does not provide the dates of the travel, the departure or arrival locations, or other adequate information to ensure that the flight expenses are reasonable. Therefore, the United States Trustee objects to the entire amount unless and until Towers Watson provides additional backup documentation supporting the reimbursement request.

**Miscellaneous Expense**

Towers Watson seeks reimbursement for an expense of $160.92 entitled, "ResCap meeting on 9/6/12." Towers Watson's fee application does not provide sufficient documentation supporting this expense. Accordingly, the United States Trustee requests that the Court reduce the expense reimbursement by $160.92 unless and until supporting documentation is provided.

**Troutman Sanders**

Troutman Sanders seeks the allowance of fees aggregating $498,063.00 (which is the amount in excess of the OCP order) during the Fee Period, and reimbursement of out-of-pocket expenses aggregating $9,645.92. The United States Trustee objects to the allowance of $79,971.00 in fees for the reasons set forth below.

38

(i)    **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $4,626.00 in fees charged by six
attorney timekeepers that billed fewer than five hours during the Fee Period.[19]  See Jefsaba, 172
B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing
the file or otherwise familiarizing him or herself with the matter.").  Absent further information
regarding the necessity for the brief appearances by these timekeepers and the concomitant
learning curve attendant to their transitory duties, the fees should be disallowed.

**Services Rendered Prior to Fee Period**

The time records include numerous entries for periods prior to the Fee Period at an
approximate cost of $75,345.00.  The applicant should confirm that these fees are not duplicative
of any fees sought during the First Interim fee period, and should explain the reason for
including them in the compensation request for this Fee Period.  Absent a satisfactory
explanation, the United States Trustee objects to these fees as being outside the Fee Period.

**Zeichner Ellman**

Zeichner Ellman seeks the allowance of fees aggregating $213,616.20[20] (which is the
amount in excess of the OCP order) for the period May 14, 2012 through November 30, 2012,
and reimbursement of out-of-pocket expenses aggregating $3,884.79.  The United States Trustee
objects to the allowance of $1,073.90 in fees and $1,453.32 in expenses for the reasons set forth
below.

---

[19]The Troutman Sanders timekeepers at issue are D. Anthony; B. Davis; A.W. Loeffler; M. Reza; and T. St. George.
[20]The total amount of the fees sought by Zeichner Ellman for the period is $638,616.20.

**(i)**   **Fees**

**Transitory Timekeepers**

The United States Trustee objects to the aggregate of $1,073.90 in fees charged by three

attorney timekeepers that billed from .4 to 1.1 hours during the Fee Period.[21]  See Jefsaba, 172

B.R. at 801 ("It is inappropriate for each new addition to the team to bill for time spent reviewing

the file or otherwise familiarizing him or herself with the matter.").  Absent further information

regarding the necessity for the brief appearances by these timekeepers and the concomitant

learning curve attendant to their transitory duties, the fees should be disallowed.

**(ii)**   **Expenses**

**"Lawyer Service" and "Advertising Fee"**

Zeichner Ellman seeks rreimbursement of $640.64 for "Lawyers Service" and $812.68

"Advertising Fee."   The applicant provides no supporting documentation and no explanation of

the necessity of these expenses.  Absent an explanation and sufficient documentation to support

the reasonableness for these expenditures, the United States Trustee objects to the reimbursement

of $1,453.32 related to the "Lawyers Service" and "Advertising Fee" expenses.

**B.**   **Committee Professionals**

**Analytic Focus**

Analytic Focus seeks the allowance of fees aggregating $608,500.25 and reimbursement

of out-of-pocket expenses aggregating $216.36 during the Fee Period.  The United States Trustee

objects to the allowance of $595,901.25 in fees for the reasons set forth below.

---

[21]The Zeichner Ellman timekeepers at issue are F. Umane, J. Gruver and S. Ellman.

**(i)**    **Fees**

**Vague/Duplicate Time Entries**

Analytic Focus seeks its entire fee request of $608,500.25 representing 3,985.20 hours

under one project category entitled, "Litigation Consulting."  A review of Analytic Focus' time

records reveals that significant instances of vague and duplicate time entries.  Specifically,

Analytic Focus expended $595,901.25 in fees representing 3,922.80 hours for the following

vague and duplicate time entries:  "Convert loans for re-underwriting project," "Conduct loan

and guideline analysis for re-underwriting project," "Underwriting guideline review," "Conduct

quality control of re-underwriting project," and "Conduct quality control of re-underwriting

project; create quality control reports: same."  Of Analytic Focus' entire fee application, only

$12,599.00 of time entries representing 62.4 hours do not use the above repetitive time entries.

The United States Trustee has concerns that without additional information describing the

activities performed, it is impossible to make a determination of the reasonableness of Analytic

Focus' fee request.  Therefore, the United States Trustee requests that the Court reduce the fee

request by $595,901.25.

**Coherent Economics**

Coherent Economics seeks the allowance of fees aggregating $960,033.25 and

reimbursement of expenses aggregating $11,592.54 for the Fee Period.  The United States

Trustee objects to the allowance of $212,954.50 in fees and $11,592.54 in expenses for the

reasons set forth below.

**(i)**    **Fees**

**Vague/Duplicative Time Entries**

The United States Trustee's review of Coherent Economics' time records reveals vague

and duplicative time entries by professionals.  The vague and duplicative time entries aggregate

to $212,954.50.  Annexed hereto as Exhibit H is a copy of the time records marked with the

letter "V" to highlight the vague or duplicative time entries.  By way of example only, one

timekeeper billed $7,565.00 for 17.00 hours on October 4, 2012 with the summary, "Compiled

loan history data."  In another example, three professionals charged the estate fees aggregating

$8,758.50 on September 9, 2012 for services with an identical time entry – "Reviewed &

indexed underwriting guideline documents."  Accordingly, the United States Trustee requests

that the Court reduce the fee request for the objectionable time entries by $212,954.50.

**(ii)**    **Expenses**

**Travel Expenses**

Coherent Economics requests reimbursement of $11,592.54 in expenses, of which most

relates to travel expenditures.  In support of these expenses, Coherent Economics provided basic

line item information about the expenditures.  Prior to the filing of this Objection, the United

States Trustee requested additional information to support these expenses; however, the

requested documentation was not provided prior to the filing of this Objection.  Therefore, the

United States Trustee requests the Court withhold approval of the expense reimbursement until

the United States Trustee can review the expense backup documentation.

**JF Morrow**

JF Morrow seeks the allowance of fees aggregating $135,140.00 and reimbursement of expenses aggregating $1,345.61 for the Fee Period.  The United States Trustee objects to the allowance of $135,140.00 in fees for the reasons set forth below.

**(i)    Fees**

**Repetitive Time Entries and Half-Hour Increments**

A review of JF Morrow's time records reveals that JF Morrow used repetitive time entries in each of its six project categories.  By way of example only, under the project category "Expert Report," JF Morrow charged the estate $52,320.00 representing 130.8 hours of work that includes the following two repetitive time entries: 1) "WRITE, EDIT AND REVISE THE 100 EXPERT WITNESS REPORT COVERING FED. RULE 26 (a) (1)" and 2) "RESEARCH AND DESCRIBE THE SECURIZATIONS, UNDERWRITING GUIDELINES AND PROCESS, DESCRIPTION OF THE LOANS FILES, LOAN DOCUMENTATION TYPES, THE RE-UNDERWRITING PROCESS."  Under the circumstances, the repetitive entries do not permit a reviewer to determine whether the time expenditures where reasonable.  In addition, the United States Trustee's review of JF Morrow's time records shows that a vast majority of its time entries were in .5 hour increments.  The United States Trustee notes that JF Morrow's retention order does not grant JF Morrow the ability to deviate from the requirement of .1 hour increments under the UST Guidelines.   Accordingly, the United States Trustee requests that the Court reduce JF Morrow's fee request by $135,140.00.

43

**Kramer Levin**

Kramer Levin seeks the allowance of fees aggregating $15,217,784.50 and reimbursement of expenses aggregating $385,666.94 for the Fee Period.  The United States Trustee objects to the allowance of $344,354.50 in fees for the reasons set forth below.

**(i)      Fees**

**Vague**

Kramer Levin's application includes many vague entries.  Annexed hereto as Exhibit I is a copy of Kramer Levin's time records marked with the letter "V" to highlight the non-compliant vague time entries.  The objectionable time entries total approximately $244,032.00.  As a result of the identified vague time entries, the United States Trustee requests that the Court reduce Kramer Levin's fees for those services by $244,032.00.

**Review and Revision of Billing Invoices**

The United States Trustee objects to $100,322.50 because the time records indicate that such work was expended relating to revising the billing records to conform with the requirements of the Guidelines.  Annexed hereto as Exhibit I is a copy of Kramer Levin's time records marked with the letter "R" to highlight the time entries that involved the impermissible review and revision of billing invoices.  See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable).  Therefore, the United States Trustee requests that the Court reduce Kramer Levin's compensation on this matter by $100,322.50.

**Moelis**

Moelis seeks the allowance of fees aggregating $2,400,000.00 and reimbursement of expenses aggregating $197,895.04 for the Fee Period.  The United States Trustee objects to the allowance of $4,966.00 in expenses for the reasons set forth below.

44

**(i)**    **Expenses**

**Outside Counsel Fees**

Moelis seeks reimbursement of $4,699.00 for expenses related to the preparation of

Moelis' fee application by Latham & Watkins.  The United States Trustee objects to this

reimbursement because the reimbursement of outside counsel fees is not permissible under the

circumstances.   On June 27, 2012, Moelis filed a retention application that included a provision

that allowed outside counsel fees to be reimbursed by the estate.  ECF Doc. No. 529.  On July 6,

2013, the United States Trustee objected to Moelis' retention application due to, among other

grounds, the inclusion of a provision relating to outside counsel expense reimbursement.  ECF

Doc. No. 703.  On August 30, 2012, the Court entered an order approving Moelis' retention;

however, the provision relating to outside counsel was not included.  See ECF Doc. No. 1315.  A

subsequent order expanding the scope of Moelis' retention did not authorize outside counsel

reimbursement.  See ECF Doc. No. 1432.  Therefore, the United States Trustee requests the

Court to reduce Moelis' reimbursement by $4,699.00.

**Pachulski Stang**

Pachulski Stang seeks the allowance of fees aggregating $341,678.75 and reimbursement

of expenses aggregating $4,267.85 for the Fee Period.  The United States Trustee objects to the

allowance of $8,682.00 in fees and $212.80 in expenses for the reasons set forth below.

**(i)**    **Fees**

**Retention Application Costs**

Pachulski Stang seeks approval of $25,765.50 for 35.50 hours under the project category

"PSZJ Retention."  This amount represents approximately 7.54% of Pachulski Stang's total fee

application.  A review of the relevant time entries indicates that a significant portion of the time

entries relate to conflicts checks and drafting and revising the retention application.  The

retention costs appear excessive in light of the fact that Pachulski Stang's retention in these cases

was not controversial nor did it result in an objection from a party in interest.  Under the

circumstances, a more appropriate amount would be 5% of the total fee application, or

approximately $17,083.00.  Therefore, the United States Trustee requests that the Court reduce

Pachulski Stang's compensation under this project category by $8,682.00.

### (ii)    Expenses

### Reproduction/Copying

Pachulski Stang seeks reimbursement of $212.80 relating to "Reproduction Scan/Copy."

The expense records describe the reproduction as "SCAN/COPY."  To the extent that these costs

are solely related to scanning documents rather than copying documents, the United States

Trustee objects on the grounds that scanning costs are overhead and non-reimbursable.

Therefore, unless and until Pachulski Stang confirms that the costs incurred were for copying,

the United States Trustee requests that the Court reduce the expense reimbursement by $212.80.

### San Marino

San Marino seeks the allowance of fees aggregating $190,422.50 and reimbursement of

expenses aggregating $11,287.22 for the Fee Period.  The United States Trustee objects to the

allowance of $25,782.50 in fees and $3,675.92 in expenses for the reasons set forth below.

### (i)    Fees

### Vague Time Entries

San Marino's fee application includes vague time entries totaling $25,782.50.  Annexed

hereto as Exhibit J is a copy of San Marino's time records marked with the letter "V" to highlight

46

the vague time entries.  As a result of the identified vague and lumped time entries, the United

States Trustee requests that the Court reduce San Marino's fees for those services by $25,782.50.

**Overhead Billing Charges**

The United States Trustee objects to charges aggregating $520.00 for the time incurred

by San Marino personnel related to overhead billing matters.  For example, San Marino charged

the estate related for the following services related to bankruptcy court rules: "Meet with B.

Cornell re: rules for bankruptcy court" and "rev. rules for bankruptcy court."  Annexed hereto as

Exhibit J is a copy of the relevant time entries marked with an "O."  The estate should not bear

the expense incurred for retained professionals to gain familiarity with the Guidelines.

Accordingly, the United States Trustee requests that the Court reduces the compensation request

by $520.00.

**(ii)    Expenses**

**Hotel Expenses**

San Marino requests reimbursement of $1,473.50 for the hotel costs at the New York

Palace on November 7–8, 2012.  The United States Trustee objects to the costs that exceed

$500.00 per night due to the availability of less expensive alternative accommodations.  In

addition, the United States Trustee objects to the reimbursement of hotel minibars charges on

August 19, 21 and 22, 2012 and December 18 and 22, 2012 aggregating to $54.42.  Therefore,

the United States Trustee requests that the Court reduce the San Marino's hotel reimbursement

expenses by $527.92.

**Airfare Expense**

San Marino requests reimbursement of $3,148.00 for roundtrip airfare between Los

Angeles and New York on December 18–22, 2012.  The United States Trustee requests the San

Marino provide an additional justification for this expense.  Unless and until an adequate

explanation is provided, the United States Trustee requests the Court deny the expense

reimbursement of $3,148.00.

**C.    Examiner Professionals**

**Chadbourne**

Chadbourne seeks the allowance of fees aggregating $17,301,345.50 and reimbursement

of expenses aggregating $563,507.73 for the Fee Period.  The United States Trustee objects to

the allowance of $388,328.20 in fees for the reasons set forth below.

**(i)    Fees**

**Meeting Attendance**

Chadbourne requests compensation of $1,673,118.00 under the project category

"Substantive Investigation Planning and Coordination."  A review of these time entries indicates

that Chadbourne expended a significant amount of time to weekly update meetings and

coordination meetings with Mesirow.  By way of example only, on December 6, 2012, 17

Chadbourne professionals attended internal and external meetings that resulted in a charge to the

estate $26,584.00.  While the United States Trustee acknowledges that the Examiner's

investigation is complex and requires an inevitable amount of coordination with the 90

Chadbourne attorneys and 17 paraprofessionals assigned to the case, the requested amount $1.67

million appears indicative of staffing inefficiencies.  Accordingly, unless and until Chadbourne

demonstrates that the charges under this project category were justified under the facts and

circumstances, the United States Trustee requests that the Court reduce the request under this

project category by $1,673,118.00.

### Reviewing of Billing Invoices

Chadbourne seeks compensation of $151,246.00 under the project category "Fee/Retention Applications." Of this amount, the United States Trustee objects to $13,430.70 in charges related to the review or editing of time records. See CCT, 2010 WL 3386947, at *9 (reviewing and editing time records is not compensable). Attached hereto as Exhibit K is a copy of the relevant time entries with the annotations "R" to highlight to review or editing of time records. Therefore, the United States Trustee requests the Court reduce Chadbourne's fee request by $13,430.70.

### Responding to Fee Objection

In the above-referenced project category, the United States Trustee also objects to $40,274.50 in fees charged to the estate relating to Chadbourne's review and response to the United States Trustee's objection to Chadbourne's first interim fee application. Attached hereto as Exhibit K is a copy of the relevant time entries marked with the annotation "UST Objection." Professionals should not be compensated for responding to inquiries or objections from the United States Trustee regarding professional fees. See, e.g., St. Rita's, 260 B.R. at 651–52 (holding that time incurred in defending fee requests is non-compensable); see also Fibermark, 349 B.R. at 398 (noting that time spent defending a fee application that does not conform to Section 330, Fed. Bankr. P. 2016, the UST Guidelines, or pertinent case law is not compensable). Accordingly, the United States Trustee requests the Court reduce the fee request by $40,274.50.

### Mesirow

Mesirow seeks the allowance of fees aggregating $10,671,089.00 and reimbursement of out-of-pocket expenses aggregating $68,482.00 during the Fee Period. The United States

Trustee objects to the allowance of $172,635.00 in fees and $29,949.00 in expenses for the reasons set forth below.

    **(i)**    <u>**Fees**</u>

<u>**Vague Time Entries**</u>

Mesirow's time records for this Fee Period include vague time records. Annexed hereto as Exhibit L, is a copy of Mesirow's time records marked with the annotations "V" to highlight the non-compliant, vague time entries. The objectionable time entries aggregate to $40,041.00. Therefore, the United States Trustee requests that the Court reduce Mesirow's fees for those services by $40,041.00.

<u>**Overhead Budget Costs**</u>

A review of Mesirow's time entries shows that Mesirow professionals expended $12,977.00 on services related to internal budgeting. Attached hereto as Exhibit L is a copy of the relevant time records marked with "B" to highlight the entries related to internal budgeting. The United States Trustee objects to these fees because such services are overhead and not compensable. Therefore, the United States Trustee requests that the Court reduce Mesirow's fee request by $12,977.00.

<u>**Fee Application Preparation**</u>

Mesirow requests $239,235.00 for 680.6 hours under the project category "Fee / Retention Applications." The fees under this category represent 2.24% of the overall fee request. A review of the time records indicates that Mesirow personnel expended significant amounts of time under this project category on reviewing and reconciling budgets and on the review and editing of time records. Attached hereto as Exhibit L is a copy of Mesirow's time records under this project category. Although the United States Trustee acknowledges that this amount falls

below the Court's 3–5% range in <u>Mesa Air Group</u>, the United States Trustee objects to these fees

because the fees are excessive under the facts and circumstances.  The United States Trustee

notes that during the First Interim Fee Period, Mesirow charged $133,600.00 under the same

project category.  Thus, between its retention date of July 24, 2012 to the end of this Fee Period,

Mesirow charged the estate a combined total of $372,835.00 under this project category.  The

United States Trustee further notes that, in comparison to Mesirow, Chadbourne expended less in

fees ($151,246.00) during this Fee Period under a similar project category despite the fact that it

billed significantly more (totaling $17,301,345.50) than Mesirow.  Accordingly, the United

States Trustee requests that the Court reduce the fees under this project category by 50%, or by

approximately $119,617.50.

    **(ii)**    <u>**Expenses**</u>

<u>**Airfare**</u>

Mesirow seeks reimbursement of $29,949.00 related to airfare expenses.  The Mesirow

fee application indicates that Mesirow "billed airfare only for coach class tickets or the

contemporaneous equivalent thereto."  Mesirow Fee Application, ¶ 22.  The United States

Trustee requests additional information on the method that Mesirow calculated the non-coach

"contemporaneous equivalent" to ensure that such airfare expense constituted a reasonable

expenditure.  Therefore, the United States Trustee requests that the Court withhold authorization

of $29,949.00 related to the airfare expenses until the requested documentation is provided.

**V.  CONCLUSION**

WHEREFORE, the United States Trustee respectfully submits that the Court enter an

order (i) reducing the fees allowed to the Retained Professionals by the amounts set forth herein,

(ii) directing the Retained Professionals to supplement the Applications as set forth herein, (iii)

51

reducing the reimbursement of expenses to the Retained Professionals by the amounts set forth

herein, and (iv) granting such other relief as is just.

Dated: New York, New York
     March 25, 2013                 Respectfully submitted,

                                            TRACY HOPE DAVIS
                                            UNITED STATES TRUSTEE

By:     */s/ Brian S. Masumoto*
                                            Brian S. Masumoto
                                            Eric Small
                                            Michael T. Driscoll
                                            Trial Attorneys
                                            33 Whitehall Street, 21st Floor
                                            New York, New York 10004
                                            Tel. No. (212) 510-0500
                                            Fax No. (212) 668-2255