# **GMAC** Mortgage



PO Box 4025
Coraopolis, PA 15108-6942

## FLOOD FLAT CANCELLATION NOTICE

Notification Date: 05/23/2012

0000542-0001603 GMACP 001 1      936598

000573 - 001679
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

| | |
|---|---|
| Effective Date: | 05/31/2011 |
| Expiration Date: | 05/31/2012 |
| Coverage Amount: | $156,772.00 |
| Insurance Charges: | $2,179.91 |

RE: Loan Number: 5901-0000-0601506083
Property Location:      9000 NW 28 DRIVE #306
CORAL SPRINGS FL  33065

Certificate Number:      Y-0242738
Cancellation Reason:      DUPLICATE COVERAGE

Dear Customer:

The flood insurance coverage that was provided for your property has been cancelled, for the reason stated above, effective 05/31/2011.

If you have any questions, please contact our Insurance Department, toll-free, (800) 256-9962, Monday through Friday, 4 a.m. to 8 p.m. PST. Calls to our Insurance Department may be monitored for quality assurance.

Thank you,

Insurance Department
GMAC Mortgage, LLC

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:   06/22/2008

| | |
|---|---|
| Effective Date: | 05/31/2008 |
| Expiration Date: | 05/31/2009 |

002035 - 004651
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

| | |
|---|---|
| Coverage Amount: | $157,000.00 |
| Insurance Charges: | $2,581.94 |

RE:  **REFERENCE NUMBER: 5901**
Loan Number: 5901-0000-0601506083
Flood Insurance Uninsured Date: 05/31/2008
Property Location:    9000 NW 28 DRIVE #306
CORAL SPRINGS FL  33065

Flood Zone:         AH
Map Panel Number: 12011C-0115-F
Map Date:           03/01/2006

*Property Purchased 2006*

**NOTICE OF FLOOD INSURANCE REQUIREMENT**

Dear Customer:

Our mortgage guidelines require that flood insurance be maintained with respect to all outstanding loans secured by improved property located in a Special Flood Hazard Area (SFHA), as determined by maps published by the Federal Emergency Management Agency (FEMA). Flood insurance is also required for the life of the loan for buildings in a SFHA by the National Flood Insurance Reform Act of 1994 (the Act) with respect to mortgages that are subject to the jurisdiction of a federal agency.

We have determined that your property is located in a SFHA. Our loan file does not contain evidence of flood insurance in force on your property. The terms of your mortgage and/or federal law require you to purchase flood insurance. If you have already purchased flood insurance, or if you reside in a condominium or townhouse and believe you are insured under a master policy issued to your homeowners association, please provide us with a copy of your current policy.

If you have not already purchased flood insurance, we encourage you to contact your local insurance agent. In most cases, your agent can provide insurance at the lowest cost available through the National Flood Insurance Program (NFIP). You or your agent should send us a certificate evidencing the purchase of flood insurance, which must include a mortgagee clause in favor of:

GMAC MORTGAGE, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA
15108-6942

BE ADVISED THAT NFIP PROCEDURES REQUIRE A 30 DAY WAITING PERIOD FROM THE DATE OF APPLICATION BEFORE A NEW NFIP POLICY IS EFFECTIVE AND DURING THIS WAITING PERIOD FLOOD COVERAGE IS NOT IN EFFECT.

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Date: 06/07/2011            NOTICE OF FLOOD INSURANCE PLACEMENT

ITEM 1: BORROWER

0000826-0002865 GMACP 001 1    861821

000889 - 003067
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

LANTANA INSURANCE LTD
THROUGH PROGRAM MANAGER
SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX 78216

NAMED INSURED LENDER (MORTGAGEE)

GMAC Mortgage, LLC
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

| ITEM 2: | COVERAGE PERIOD | |
|---|---|---|
| | FROM | TO |
| | 05/31/2011 | 05/31/2012 |

| | |
|---|---|
| REFERENCE NUMBER: | 5901 |
| MASTER POLICY NUMBER: | 0001-0001 |
| CERTIFICATE NUMBER | Y0242738 |
| LOAN NUMBER: | 5901-0000-0601506083 |

ITEM 3:            COVERAGE PROVIDED:

| COVERAGES | AMOUNT OF INSURANCE |
|---|---|
| Structure: | $156,772.00 |

| TOTAL INSURANCE COVERAGES: | |
|---|---|
| INSURANCE CHARGES: | $2,116.42 |
| STAMPING/SERVICE FEE: | $0.00 |
| SURPLUS LINES TAX: | $63.49 |
| TOTAL: | $2,179.91 |

DEDUCTIBLE: $1,000 or 1%, whichever is greater

| ITEM 4: | PROPERTY ADDRESS |
|---|---|
| | 9000 NW 28 DRIVE #306 |
| | CORAL SPRINGS FL 33065 |

| | |
|---|---|
| Flood Zone: | AH |
| Map Panel Number: | 12011C-0115-F |
| Map Date: | 03/01/2006 |

Dear Customer:

This letter is to inform you that we have purchased flood insurance protecting our interest in your property, as required by our mortgage guidelines and/or federal law.

You were previously notified that flood insurance was required on your property. Various options were explained to you to avoid incurring charges for our insurance.

Consequently, we have insured your property for the amount $156,772.00 expiring on 05/31/2012. As referenced in our previous letter, the annual premium of $2,179.91 will be charged to you. The charges for this insurance, and any state imposed fees, would be paid from your escrow/impound account. If you do not have an escrow/impound account, one may be established.

**The coverage amount placed would be based on the replacement value, which we believe is coverage A of the last homeowners policy you purchased. If we do not have that information the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us. Lender-placed insurance does not provide guaranteed replacement cost coverage.**

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  07/22/2012

0000995-0002909 GMACP 001 1      946748

| | |
|---|---|
| Effective Date: | 05/31/2012 |
| Expiration Date: | 05/31/2013 |

001067 - 003105
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

| | |
|---|---|
| Coverage Amount: | $61,652.00 |
| Insurance Charges: | $857.27 |

RE:  **REFERENCE NUMBER: 5901**
Loan Number: 5901-0000-0601506083
Flood Insurance Uninsured Date: 05/31/2012
Property Location:   9000 NW 28 DRIVE #306
CORAL SPRINGS FL  33065

Flood Zone:       AH
Map Panel Number: 12011C-0115-F
Map Date:         03/01/2006

## REMINDER NOTICE OF FLOOD INSURANCE REQUIREMENT

Dear Customer:

About a month ago, we notified you by letter that your property is located in a Special Flood Hazard Area (SFHA) as designated by the Federal Emergency Management Agency (FEMA). Federal law and the terms for your Mortgage or Deed of Trust requires you to purchase flood insurance.

Please note that we do not have evidence of the required flood insurance in force on your property. Unless we receive a flood insurance policy within 15 days from the date of this letter, or we receive evidence from you that the flood zone on your property has changed, we will pay the insurance charges of $857.27 for the flood insurance coverage we place and will charge you for the insurance charges. We will insure your property for the amount of $61,652.00 effective on 05/31/2012 and expiring on 05/31/2013.

The coverage amount placed on your property would be based on the replacement value, which we believe is coverage A of the last homeowners policy you purchased. If we do not have this information, the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us. Lender-placed insurance does not provide guaranteed replacement cost coverage. This coverage is designed to protect our interest in the property.

Condominium Owners
The replacement value of your unit is based on replacement cost/coverage information obtained from your fire and/or flood association policies divided by the number of units covered.  If we do not have this information, the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us.

In accordance with your mortgage, the insurance charges will be advanced for you. We request you choose from the following options for reimbursement.

A.  Send evidence of flood insurance coverage effective 05/31/2012. This will allow us to cancel the force-placed flood insurance policy with no charge to you.

RE:  DONNA CHINLOY
     Loan Number:  5901-0000-0601506083


          Its Successors and/or Assigns
          P.O. BOX 4025
          CORAOPOLIS, PA  15108-6942
          Or Fax to: (866) 336-9021

Should you have any questions regarding this matter, please do not hesitate to contact our office at (800) 256-9962, Monday - Friday from 4 a.m. to 8 p.m. PST. Your call may be monitored for quality assurance.

0000995-0002911 946748

# LANTANA INSURANCE LTD
## THROUGH PROGRAM MANAGER
### SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX  78216

## EVIDENCE OF FLOOD INSURANCE

**NOTICE:  THIS EVIDENCE OF FLOOD INSURANCE IS ISSUED PURSUANT TO A MASTER POLICY THAT ONLY PROVIDES COVERAGE FOR THE PERIL OF FLOOD AS DEFINED IN THE MASTER POLICY. THERE IS NO COVERAGE FOR PERSONAL PROPERTY OR LIABILITY.**

Certificate Number:   Y0211019                     Master Policy Number: **0001-0001**

Certificate Period:   Effective Date:  **05/31/2010**   Expiration Date:  **05/31/2011**
(At 12:01 AM Standard Time at the address of the Named Insured shown above.)

Borrower/Mortgagor                                Described Location/Insured Property
DONNA CHINLOY                                     9000 NW 28 DRIVE #306
2672 NW 124TH AVE                                 CORAL SPRINGS FL  33065
CORAL SPRINGS, FL  33065-8007

Co-Borrower/Co-Mortgagor

| PROPERTY TYPE: |
| --- |
| RESIDENTIAL |

Coverages and Limits of Insurance:

| | |
| --- | --- |
| **Coverage A**  Building Property: | **$156,772.00** |
| **Coverage B**  Personal Property: | NOT COVERED |
| **Coverage C**  Other Coverages: | As Described in Master Policy (Included Within **Coverage A** Limit of Insurance) |
| **Coverage D**  Increased Cost of Compliance: | Up to $30,000 (In Addition to the **Coverage A** Limit of Insurance) |
| **Coverage E**  Mortgagors Additional Living Expense: | Up to $2,500 (In Addition to the **Coverage A** Limit of Insurance) |
| **Deductible** | $1,000 or 1%, whichever is greater (Applicable to All Coverage Except as Stated Below.) |

**All limits of insurance shown above are subject to the Maximum Limits of Insurance shown on the Declarations Page of the Master Policy.**   The deductible is not applicable to **III.C.2.**, Loss Avoidance Measures, **III.C.3.** Condominium Loss Assessments, or **III.D.** Increased Cost of Compliance of the Master Policy.

| Lender/Mortgagee: |
| --- |
| **GMAC MORTGAGE, LLC** |
| **INSURANCE SERVICE CENTER** |
| **P.O. BOX 4025** |
| **CORAOPOLIS, PA  15108-6942** |

| | |
| --- | --- |
| Premium: | **$2,116.42** |
| Other Fee: | **$0.00** |
| Expense Fee: | **$0.00** |
| Surplus Lines Tax: | **$63.49** |
| Stamping Fee: | **$0.00** |
| Total Due: | **$2,179.91** |

This Evidence of Flood Insurance does not amend, extend, or alter the terms and conditions of the Master Policy, except that it does set forth the Certificate Period, Mortgagor, Co-Mortgagor, Mortgagee, Described Location, Limits of Insurance, Deductible, and Premium and is binding on you and on us.  If RESIDENTIAL is shown as the property type above, then the Dwelling Form is applicable to the Master Policy.  If COMMERCIAL is shown as the property type above, then the General Property Form is applicable to the Master Policy.  For a complete copy of the Master Policy, please contact your lender.

**TO REPORT A CLAIM, PLEASE CALL 866-476-8399**

# LANTANA INSURANCE LTD

THROUGH PROGRAM MANAGER
SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX 78216

## EVIDENCE OF FLOOD INSURANCE

**NOTICE: THIS EVIDENCE OF FLOOD INSURANCE IS ISSUED PURSUANT TO A MASTER POLICY THAT ONLY PROVIDES COVERAGE FOR THE PERIL OF FLOOD AS DEFINED IN THE MASTER POLICY. THERE IS NO COVERAGE FOR PERSONAL PROPERTY OR LIABILITY.**

Certificate Number:   Y0242738                    Master Policy Number: **0001-0001**

Certificate Period:   Effective Date: **05/31/2011**   Expiration Date: **05/31/2012**
(At 12:01 AM Standard Time at the address of the Named Insured shown above.)

Borrower/Mortgagor                          Described Location/Insured Property
DONNA CHINLOY                               9000 NW 28 DRIVE #306
2672 NW 124TH AVE                           CORAL SPRINGS FL 33065
CORAL SPRINGS, FL 33065-8007

Co-Borrower/Co-Mortgagor

PROPERTY TYPE:
RESIDENTIAL

Coverages and Limits of Insurance:

| | |
|---|---|
| **Coverage A** Building Property: | $156,772.00 |
| **Coverage B** Personal Property: | NOT COVERED |
| **Coverage C** Other Coverages: | As Described in Master Policy (Included Within **Coverage A** Limit of Insurance) |
| **Coverage D** Increased Cost of Compliance: | Up to $30,000 (In Addition to the **Coverage A** Limit of Insurance) |
| **Coverage E** Mortgagors Additional Living Expense: | Up to $2,500 (In Addition to the **Coverage A** Limit of Insurance) |
| **Deductible** | $1,000 or 1%, whichever is greater (Applicable to All Coverage Except as Stated Below.) |

**All limits of insurance shown above are subject to the Maximum Limits of Insurance shown on the Declarations Page of the Master Policy.** The deductible is not applicable to III.C.2., Loss Avoidance Measures, III.C.3. Condominium Loss Assessments, or III.D. Increased Cost of Compliance of the Master Policy.

Lender/Mortgagee:
**GMAC MORTGAGE, LLC**
**INSURANCE SERVICE CENTER**
**P.O. BOX 4025**
**CORAOPOLIS, PA 15108-6942**

| | |
|---|---:|
| Premium: | **$2,116.42** |
| Other Fee: | **$0.00** |
| Expense Fee: | **$0.00** |
| Surplus Lines Tax: | **$63.49** |
| Stamping Fee: | **$0.00** |
| Total Due: | **$2,179.91** |

This Evidence of Flood Insurance does not amend, extend, or alter the terms and conditions of the Master Policy, except that it does set forth the Certificate Period, Mortgagor, Co-Mortgagor, Mortgagee, Described Location, Limits of Insurance, Deductible, and Premium and is binding on you and on us. If RESIDENTIAL is shown as the property type above, then the Dwelling Form is applicable to the Master Policy. If COMMERCIAL is shown as the property type above, then the General Property Form is applicable to the Master Policy. For a complete copy of the Master Policy, please contact your lender.

**FOR CUSTOMER SERVICE, PLEASE CALL (800) 256-9962**

**TO REPORT A CLAIM, PLEASE CALL 866-476-8399**

# QBE SPECIALTY INSURANCE COMPANY

THROUGH PROGRAM MANAGER
SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX 78216

## EVIDENCE OF FLOOD INSURANCE

**NOTICE: THIS EVIDENCE OF FLOOD INSURANCE IS ISSUED PURSUANT TO A MASTER POLICY THAT ONLY PROVIDES COVERAGE FOR THE PERIL OF FLOOD AS DEFINED IN THE MASTER POLICY. THERE IS NO COVERAGE FOR PERSONAL PROPERTY OR LIABILITY.**

Certificate Number:    Y0277022                    Master Policy Number: **QBAFL0001-0003**

Certificate Period:    Effective Date: **05/31/2012**    Expiration Date: **05/31/2013**
(At 12:01 AM Standard Time at the address of the Named Insured shown above.)

Borrower/Mortgagor                               Described Location/Insured Property
DONNA CHINLOY                                    9000 NW 28 DRIVE #306
2672 NW 124TH AVE                                CORAL SPRINGS FL 33065
CORAL SPRINGS, FL 33065-8007

Co-Borrower/Co-Mortgagor

PROPERTY TYPE:
RESIDENTIAL

Coverages and Limits of Insurance:

| | |
|---|---|
| **Coverage A** Building Property: | $61,652.00 |
| **Coverage B** Personal Property: | NOT COVERED |
| **Coverage C** Other Coverages: | As Described in Master Policy (Included Within **Coverage A** Limit of Insurance) |
| **Coverage D** Increased Cost of Compliance: | Up to $30,000 (In Addition to the **Coverage A** Limit of Insurance) |
| **Coverage E** Mortgagors Additional Living Expense: | Up to $2,500 (In Addition to the **Coverage A** Limit of Insurance) |
| **Deductible** | $1,000 or 1%, whichever is greater (Applicable to All Coverage Except as Stated Below.) |

**All limits of insurance shown above are subject to the Maximum Limits of Insurance shown on the Declarations Page of the Master Policy.** The deductible is not applicable to **III.C.2.**, Loss Avoidance Measures, **III.C.3.** Condominium Loss Assessments, or **III.D.** Increased Cost of Compliance of the Master Policy.

| Lender/Mortgagee: | | |
|---|---|---|
| **GMAC MORTGAGE, LLC** | Premium: | **$832.30** |
| **INSURANCE SERVICE CENTER** | Other Fee: | **$0.00** |
| **P.O. BOX 4025** | Expense Fee: | **$0.00** |
| **CORAOPOLIS, PA 15108-6942** | Surplus Lines Tax: | **$24.97** |
| | Stamping Fee: | **$0.00** |
| | Total Due: | **$857.27** |

This Evidence of Flood Insurance does not amend, extend, or alter the terms and conditions of the Master Policy, except that it does set forth the Certificate Period, Mortgagor, Co-Mortgagor, Mortgagee, Described Location, Limits of Insurance, Deductible, and Premium and is binding on you and on us. If RESIDENTIAL is shown as the property type above, then the Dwelling Form is applicable to the Master Policy. If COMMERCIAL is shown as the property type above, then the General Property Form is applicable to the Master Policy. For a complete copy of the Master Policy, please contact your lender.

**FOR CUSTOMER SERVICE, PLEASE CALL (800) 256-9962**

**TO REPORT A CLAIM, PLEASE CALL (866) 476-8399**

0000483-0001377 950733

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Date: 08/09/2012                NOTICE OF FLOOD INSURANCE PLACEMENT

ITEM 1: BORROWER

0000483-0001373 GMACP 001 1    950733

000519 - 001477
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

QBE SPECIALTY INSURANCE COMPANY
THROUGH PROGRAM MANAGER
SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX 78216

NAMED INSURED LENDER (MORTGAGEE)
GMAC Mortgage, LLC
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

ITEM 2:          COVERAGE PERIOD
                 FROM          TO
                 05/31/2012    05/31/2013

| | |
|---|---|
| REFERENCE NUMBER: | 5901 |

ITEM 3:        COVERAGE PROVIDED:

| | |
|---|---|
| MASTER POLICY NUMBER: | QBAFL0001-0003 |
| CERTIFICATE NUMBER | Y0277022 |
| LOAN NUMBER: | 5901-0000-0601506083 |

| COVERAGES | AMOUNT OF INSURANCE | TOTAL INSURANCE COVERAGES: | |
|---|---|---|---|
| Structure: | $61,652.00 | INSURANCE CHARGES: | $832.30 |
| | | STAMPING/SERVICE FEE: | $0.00 |
| | | SURPLUS LINES TAX: | $24.97 |
| DEDUCTIBLE: $1,000 or 1%, whichever is greater | | TOTAL: | $857.27 |

| ITEM 4: | PROPERTY ADDRESS | Flood Zone: | AH |
|---|---|---|---|
| | 9000 NW 28 DRIVE #306 | Map Panel Number: | 12011C-0115-F |
| | CORAL SPRINGS FL 33065 | Map Date: | |

Dear Customer:

This letter is to inform you that we have purchased flood insurance protecting our interest in your property, as required by federal law and the terms of your Mortgage or Deed of Trust, as we have not received a copy of a valid flood insurance policy on your property.

You were previously notified that flood insurance was required on your property. Various options were explained to you to avoid incurring charges for lender-placed insurance.

Consequently, we have insured your property for the amount $61,652.00 expiring on 05/31/2013. As referenced in our previous letter, the annual premium of $857.27 will be charged to you. The charges for this insurance, and any state imposed fees, would be paid from your escrow/impound account. If you do not have an escrow/impound account, one may be established.

The coverage amount placed on your property was based on the replacement value, which we believe is coverage A of the last homeowners policy you purchased. If we did not have this information, the coverage amount was based on the

RE:   DONNA CHINLOY
        Loan Number:  5901-0000-0601506083

Thank you,

Insurance Department
GMAC Mortgage, LLC

5901
0601506083

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

*2009*

Notification Date:   06/21/2009

Effective Date:     05/31/2009
Expiration Date:    05/31/2010

Coverage Amount:    $157,000.00
Insurance Charges:  $2,581.94

001406 - 003231
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

RE:  **REFERENCE NUMBER: 5901**
Loan Number: 5901-0000-0601506083
Flood Insurance Uninsured Date: 05/31/2009
Property Location:  9000 NW 28 DRIVE #306
                    CORAL SPRINGS FL  33065

Flood Zone:       AH
Map Panel Number: 12011C-0115-F
Map Date:         03/01/2006

**NOTICE OF FLOOD INSURANCE REQUIREMENT**

Dear Customer:

Our mortgage guidelines require that flood insurance be maintained with respect to all outstanding loans secured by improved property located in a Special Flood Hazard Area (SFHA), as determined by maps published by the Federal Emergency Management Agency (FEMA). Flood insurance is also required for the life of the loan for buildings in a SFHA by the National Flood Insurance Reform Act of 1994 (the Act) with respect to mortgages that are subject to the jurisdiction of a federal agency.

We have determined that your property is located in a SFHA. Our loan file does not contain evidence of flood insurance in force on your property. The terms of your mortgage and/or federal law require you to purchase flood insurance. If you have already purchased flood insurance, or if you reside in a condominium or townhouse and believe you are insured under a master policy issued to your homeowners association, please provide us with a copy of your current policy.

If you have not already purchased flood insurance, we encourage you to contact your local insurance agent. In most cases, your agent can provide insurance at the lowest cost available through the National Flood Insurance Program (NFIP). You or your agent should send us a certificate evidencing the purchase of flood insurance, which must include a mortgagee clause in favor of:

GMAC MORTGAGE, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA
15108-6942

BE ADVISED THAT NFIP PROCEDURES REQUIRE A 30 DAY WAITING PERIOD FROM THE DATE OF APPLICATION BEFORE A NEW NFIP POLICY IS EFFECTIVE AND DURING THIS WAITING PERIOD FLOOD COVERAGE IS NOT IN EFFECT.

RE:  DONNA CHINLOY
Loan Number:  5901-0000-0601506083

unpaid principal balance of all mortgage liens against the property that are serviced by us. Lender-placed insurance does not provide guaranteed replacement cost coverage. This coverage is designed to protect our interest in the property.

Condominium Owners

The replacement value of your unit is based on replacement cost/coverage information obtained from your fire and/or flood association policies divided by the number of units covered. If we do not have this information the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us.

NOTICE:  IF WE MUST PURCHASE OUR OWN FLOOD INSURANCE BECAUSE OF YOUR FAILURE TO FORWARD EVIDENCE OF EFFECTIVE FLOOD COVERAGE, THE COST OF OUR INSURANCE MAY BE SIGNIFICANTLY HIGHER THAN THE COST OF INSURANCE PURCHASED THROUGH YOUR OWN AGENT. IN ADDITION, COVERAGE FOR YOUR PERSONAL PROPERTY CAN ONLY BE PURCHASED THROUGH YOUR AGENT.

If you currently have flood insurance on your property or are in the process of obtaining coverage, we require that your flood insurance coverage is in an amount at least equal to the lesser of:

(1) the unpaid principal balance of all mortgage liens against the property that are serviced by us;

(2) the replacement cost value of the improvements to your property (typically based on the amount of hazard insurance we understand you have purchased for the property); or

(3) the maximum insurance available under the National Flood Insurance Program (NFIP) ($250,000 for residential properties in participating communities).

Condominium Owners

The flood insurance coverage needed is determined by dividing the condominium master policy flood insurance coverage amount by the number of units covered by the policy. This amount must at least be equal to the lesser of:

(1) the unpaid principal balance of all mortgage liens against the property that are serviced by us;

(2) the maximum insurance available under the National Flood Insurance Program (NFIP) ($250,000 for residential properties in participating communities); or

(3) the replacement cost value of your property which is based on replacement cost/coverage information obtained from your fire and/or flood association policies divided by the number of units covered. If we do not have this information, the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us.

If you have already purchased flood insurance in the required amount, or if you reside in a condominium or townhouse and believe you are adequately insured under a master policy issued to your homeowners association, please provide us with a copy of your current policy.

You may be able to obtain a refund of a portion of our insurance charge if you furnish us satisfactory evidence that you have purchased flood insurance at any time while our insurance is in effect. If you have already purchased flood insurance, and have mailed it to our office, please contact us to verify that we have received the flood insurance policy. Please send all correspondence and documents to:

GMAC Mortgage, LLC
Its Successors and/or Assigns
P.O. BOX 4025
CORAOPOLIS, PA  15108-6942
Or Fax to:  (866) 336-9021

Should you have any questions regarding this matter, please do not hesitate to contact our office at (800) 256-9962 Monday - Friday from 4 a.m. to 8 p.m. PST. Your call may be monitored for quality assurance.

If you wish to report a claim, please call (866) 476-8399.

RE: DONNA CHINLOY
Loan Number: 5901-0000-0601506083

If you disagree with our determination that your property is located in a SFHA, please contact our Customer Service Representative at (800) 256-9962 .You will be asked to provide written evidence obtained from the Federal Emergency Management Agency indicating a change in zone determination (a Letter of Map Amendment (LOMA) or Letter of Map Revision (LOMR) or a FEMA map and panel with exact property location clearly identified.

Within 45 days from the date of this letter, you must provide evidence that a flood insurance policy is in effect on the property or request that we provide you with coverage. If we do not hear from you, we are required by the Act to obtain flood insurance coverage for you. We will pay the insurance charges (estimated to be $2,581.94) for the flood coverage we will place effective on the date shown above and charge you for the cost of the insurance. This coverage will provide protection for loss to your dwelling up to $157,000.00. This limit is only sufficient to insure the principal property. It will not insure your personal property or the contents of the dwelling. IN ADDITION, SINCE CERTAIN UNDERWRITING INFORMATION ABOUT YOUR PROPERTY IS NOT READILY AVAILABLE, THE INSURANCE CHARGES ARE CONSIDERABLY HIGHER THAN YOU COULD OBTAIN IF YOU RESPOND TO THIS NOTICE AS MENTIONED PREVIOUSLY.

**The coverage amount placed would be based on the replacement value, which we believe is coverage A of the last homeowners policy you purchased. If we do not have that information, the coverage amount will be based on the current principal balance of your mortgage loan. Lender-placed insurance does not provide guaranteed replacement cost coverage.**

NOTICE: IF WE MUST PURCHASE OUR OWN FLOOD INSURANCE BECAUSE OF YOUR FAILURE TO FORWARD EVIDENCE OF EFFECTIVE FLOOD COVERAGE, THE COST OF OUR INSURANCE MAY BE SIGNIFICANTLY HIGHER THAN THE COST OF INSURANCE PURCHASED THROUGH YOUR OWN AGENT. IN ADDITION, COVERAGE FOR YOUR PERSONAL PROPERTY CAN ONLY BE PURCHASED THROUGH YOUR AGENT.

Please send all correspondence to:

GMAC Mortgage, LLC
Its Successors and/or Assigns
P.O. BOX 4025
CORAOPOLIS, PA  15108-6942
Or Fax to: (866) 336-9021

You may also provide us your insurance information through our user-friendly web site at www.ihaveinsurance.com. You will need to enter the reference number 080023812, your personal access code 5901FD and zip code 33065.

Should you have any questions regarding this matter, please do not hesitate to contact our office at (800) 256-9962, Monday - Friday from 4 a.m. to 8 p.m. PST. Your call may be monitored for quality assurance.

Thank you,

Insurance Department
GMAC Mortgage, LLC

9800 N.W. 41" Street
Suite 300
Miami, Fl. 33178
Ph.#: (305) 591-0090 Fax#: (305) 599-8138
Email:alopez@seitlin.com

**Seitlin. . . an Assurex**
**Global Partner**

# Fax

| To: | GMAC Mortgage LLC<br>Attn: Insurance Department | From: | Arturo F. Lopez |
|---|---|---|---|
| Fax: | 1-866-336-9021 | Pages: | 2 , Including cover page |
| Re: | Loan # 5901-0000-0601.50608<br>9000 NW 28 Drive, Unit 306 | Date: | May 22, 2007 |
| Insured: | The Island Club at Coral Springs<br>Condominium Association | Cc: | Anna Castellanos<br>305-595-4179 |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

Attached please find the certificate(s) as per your written request.

Should you have any questions, please feel free to contact me at your earliest convenience.

Best regards,

## Arturo F. Lopez
Phone#: (305) 591-0090 Ext. 5983
Fax#: (305)-599-8138
E-Fax: 305-840-9703
Email: alopez@seitlin.com

# GMAC Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Date: 06/06/2010

NOTICE OF FLOOD INSURANCE PLACEMENT

ITEM 1: BORROWER

001364 - 003243
DONNA CHINLOY
2672 NW 124TH AVE
CORAL SPRINGS, FL 33065-8007

LANTANA INSURANCE LTD
THROUGH PROGRAM MANAGER
SOUTHWEST BUSINESS CORPORATION
9311 SAN PEDRO, SUITE 600
SAN ANTONIO, TX 78216

NAMED INSURED LENDER (MORTGAGEE)

GMAC Mortgage, LLC
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

ITEM 2:        COVERAGE PERIOD
               FROM           TO
               05/31/2010    05/31/2011

|  |  |
|---|---|
| REFERENCE NUMBER: | 5901 |
| MASTER POLICY NUMBER: | 0001-0001 |
| CERTIFICATE NUMBER | Y0211019 |
| LOAN NUMBER: | 5901-0000-0601506083 |

ITEM 3:        COVERAGE PROVIDED:

| COVERAGES | AMOUNT OF INSURANCE | TOTAL INSURANCE COVERAGES: | |
|---|---|---|---|
| Structure: | $156,772.00 | INSURANCE CHARGES: | $2,116.42 |
|  |  | STAMPING/SERVICE FEE: | $0.00 |
|  |  | SURPLUS LINES TAX: | $63.49 |
| DEDUCTIBLE: $1,000 or 1%, whichever is greater |  | TOTAL: | $2,179.91 |

| ITEM 4: | PROPERTY ADDRESS | | |
|---|---|---|---|
|  | 9000 NW 28 DRIVE #306 | Flood Zone: | AH |
|  | CORAL SPRINGS FL 33065 | Map Panel Number: | 12011C-0115-F |
|  |  | Map Date: | 03/01/2006 |

Dear Customer:

This letter is to inform you that we have purchased flood insurance protecting our interest in your property, as required by our mortgage guidelines and/or federal law.

You were notified in two prior letters that flood insurance was required on your property. Various options were explained to you to avoid incurring charges for our insurance.

Consequently, we have insured your property for the amount $156,772.00 expiring on 05/31/2011. As referenced in our previous letter, the annual premium of $2,179.91 will be charged to you.

**The coverage amount placed would be based on the replacement value, which we believe is coverage A of the last homeowners policy you purchased. If we do not have that information the coverage amount will be based on the unpaid principal balance of all mortgage liens against the property that are serviced by us. Lender-placed insurance does not provide guaranteed replacement cost coverage.**

## CORAL SPRINGS 84, LLC
14600 S.W. 136th Street
Miami, Florida 33186
Telephone (305) 259-3100
Facsimile (305) 259-3200
**PURCHASE AND SALE AGREEMENT**

Check ☑ One:
☐ CASH
☑ CONV
☐ FHA
☐ OTHER

Check ☑ One:
☑ Owner Occupied
☐ Second Home
☐ Investment

Unit No. **01 - 306**    Model: **Aruba**

**ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER (SELLER). FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT (AGREEMENT) AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.**

**ANY PAYMENT IN EXCESS OF TEN PERCENT (10%) OF THE PURCHASE PRICE MADE TO DEVELOPER (SELLER) PRIOR TO CLOSING PURSUANT TO THIS AGREEMENT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER (SELLER).**

THIS PURCHASE AND SALE AGREEMENT ("**Agreement**") is made and entered into effective as of the _30th_ day of _January_ _____, 20_06_ by and between **Coral Springs 84, LLC**, a Florida limited liability company ("**Seller**"), with an address of 14600 S.W. 136th Street, Miami, Florida 33186 and the purchaser(s) named below ("**Purchaser**"):

| PURCHASER(S): | Check Applicable ☑: |
|---|---|
| 1. Donna Chinloy | M ☐ S ☑ W ☐ M ☐ F ☐ |
| 2. _____ | M ☐ S ☐ W ☐ M ☐ F ☐ |
| 3. _____ | M ☐ S ☐ W ☐ M ☐ F ☐ |
| 4. _____ | M ☐ S ☐ W ☐ M ☐ F ☐ |

Purchaser Address: **2672 NW 124 ave**

City: **Coral Springs** | State / Country: **Florida    United States** | Zip: **33065**

By providing your telephone and fax numbers and your email address, you hereby consent to receiving telephonic, fax and email communications, including advertisements, made or sent by or on behalf of Coral Springs 84, LLC, and/or its members or affiliates

Home Telephone: **(954) 298-1079**

Fax Number: **---**

Email Address: **---**

Business Telephone Purchaser: **---**
Business Telephone Second Purchaser: _____

Social Security Number : **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 & --**
Passport Number: _____
E-mail Address: _____

1.    **Purchase and Sale**. Purchaser hereby agrees to purchase and Seller hereby agrees to sell and convey to Purchaser all of that certain parcel of real property being situated in Broward County, Florida comprising a condominium unit, known and designated as Unit No. **01 - 306** (the "**Real Property**") of The Island Club at Coral Springs, a Condominium(the "**Condominium**"), with an address of 9000, 9022 and 9044 N.W. 28th Drive, Coral Springs, Florida 33065, in Broward County (the "**County**") together with those certain fixtures, equipment, and appliances contained in the Unit (the "**Personalty**"), and together with all appurtenances thereto as the same are contained and defined in the Declaration of Condominium for The Island Club at Coral Springs, a Condominium to be recorded or as recorded in the Public Records of County (the "**Declaration**") including the right to the exclusive use of Parking Space No. _____ (if applicable) (the "**Parking Space**") (all of the foregoing Real Property, Personalty, the Parking Space and appurtenances are hereinafter referred to collectively as the "**Unit**").

2.    **Purchase Price and Payments**. The total purchase price ("**Total Purchase Price**") for the Unit being purchased hereunder, exclusive of any Closing Costs as described in Section 15 below and elsewhere herein, will be as follows:

| PURCHASE PRICE | AMOUNT |
|---|---|
| Base Purchase Price | $ 196,100.00 |
| Options | $ 0.00 |
| | $ |
| | |
| | |
| | $ |
| **TOTAL PURCHASE PRICE:** | $ 196,100.00 |

The Island Club at Coral Springs, a Condominium
v9

1

Purchaser's Initials _____

Purchaser shall make the following payments:

| PAYMENT | DUE DATE | AMOUNT DUE |
|---|---|---|
| Initial Deposit | Upon signing of Agreement | $ 2,500.00 |
| Additional Deposit | 02-14-2006 | $ 0.00 |
| Nonrefundable deposit(s) for options, extras and/or upgrades | | $ |
| Amount to be financed | | $ |
| Balance due by cashier's check (drawn on a bank with offices in Miami-Dade, Broward, and/or Palm Beach Counties) or federal wire only (bank check or official check will not be accepted) Initial _____ Initial _____ Purchaser Purchaser | At Closing (as defined in Section 13 hereof) | $ 193,600.00 |
| TOTAL | | $ |

It is understood and agreed that, in addition, Purchaser shall pay all costs and fees as listed under Section 15 below, including Purchaser's prorata share of current maintenance expenses to The Island Club at Coral Springs Condominium Association, Inc. (the "**Condominium Association**"). Current estimated maintenance expenses are set forth in the budget of the Condominium Association included in the Prospectus which is part of the Condominium Documents as defined in Section 45 hereof. Estimated fees and assessments may increase prior to Closing.

Any funds paid by Purchaser under the terms of this Agreement to Seller through a check are accepted by Seller subject to collection. Purchaser acknowledges that Seller shall have the right to deposit such checks without such action being deemed acceptance of this Agreement. If any such checks are not paid by the bank after acceptance of this Agreement, Seller shall have the right to terminate this Agreement.

3.        Financing.

        3.1        Mortgage Loan. This Agreement is contingent on Purchaser obtaining a loan commitment or approval for a first mortgage loan from an institutional lender in the amount set forth on the first page hereof (with interest, term and service charges at current market rates at time of Closing for a borrower of Purchaser's credit qualifications) within thirty (30) days of Purchaser's execution of this Agreement. Notwithstanding any provision herein to the contrary, if Purchaser is applying for a loan in excess of eighty percent (80%) of the Total Purchase Price, and the Unit is not being acquired as a primary residence, Purchaser agrees to accept a loan equal to eighty percent (80%) of the Total Purchase Price if the institutional lender considering Purchaser's loan application will not approve a loan in excess of eighty percent (80%) of the Total Purchase Price. Unless Purchaser shall have notified Seller otherwise in writing within thirty (30) days of Purchaser's execution of this Agreement, Purchaser shall be conclusively presumed to have obtained the loan commitment or agreed to purchase the Unit without mortgage financing. If Purchaser does timely notify Seller within the thirty (30) day period that he/she failed to obtain a loan commitment, Seller may require Purchaser to immediately reapply for a mortgage loan with another lending institution designated by Seller. If Purchaser then fails to obtain a loan commitment within thirty (30) days from Seller's notice to reapply, either Purchaser or Seller shall have the right to terminate this Agreement whereupon the Deposit (as defined in Section 24 herein) shall be returned to Purchaser. Notwithstanding the foregoing, Seller may charge Purchaser a reasonable amount, not to exceed One Hundred Twenty-Five Dollars ($125.00), to cover administrative costs, and thereupon the parties hereto shall be released from all liability hereunder without any further acts by either party. In the event Purchaser does not elect to obtain financing from the institutional lender, Purchaser shall be conclusively presumed to have agreed to purchase the Unit without mortgage financing.

        3.2        Application. Purchaser agrees to submit his/her application for a mortgage loan from an institutional lender within ten (10) days of **Purchaser's execution of this Agreement. Failure to make timely application shall be deemed a breach of Purchaser's obligations hereunder and Seller shall have all remedies available under Section 16 hereof without any further acts by Purchaser or Seller.** Purchaser understands that any application hereunder must be fully completed in order to obtain the mortgage and will make a good faith attempt to qualify for the mortgage. If Purchaser has a spouse who has not signed this Agreement, Purchaser agrees to have his/her spouse sign the mortgage documents as required by the institutional lender. **Purchaser agrees to incur no debt subsequent to the date hereof which might jeopardize approval of Purchaser's loan. If the Unit is being purchased by a corporation, partnership, or other organization, Purchaser agrees to (i) obtain any personal endorsements or guarantees required by the lender and/or the title insurer promptly upon request such certificates, resolutions or other corporate, partnership or other organizational documents as may be required.** Except as herein provided, Purchaser agrees to pay all loan fees and closing costs charged by the lender in connection with the mortgage. Purchaser will pay any prepaid interest due on the mortgage at the time of Closing and any amount the lender may require to be put into escrow toward the payment of property taxes and insurance on the Unit. Purchaser will also pay any mortgage insurance premiums (prepaid or otherwise), if required by such lender.

        3.3        Commitment. Purchaser understands that the rate of interest on the mortgage is established by the lender and not by Seller and that any predictions or representations of present or future interest rates which may have been contained in any advertising or promotion by Seller are not binding. If Purchaser obtains a written mortgage loan commitment or approval from an institutional lender and the mortgage loan commitment or approval is subsequently withdrawn through no fault of the Seller, this Agreement shall remain in full force and effect and Purchaser shall be conclusively presumed to have agreed to purchase the Unit without mortgage financing. If Purchaser obtains a loan commitment which contains any special condition which is not ordinarily contained in typical loan commitments for the Condominium, Seller, in Seller's sole discretion, may treat Purchaser's loan application as having been denied; whereupon, Seller shall have the rights set forth in Section 3.1 hereof.

        3.4        Sale of Other Residence. Purchaser represents and warrants that this Agreement and the mortgage loan referenced herein are not and will not be subject to or contingent upon Purchaser selling and/or closing on the sale of Purchaser's present residence or other property. Failure to close on the purchase of the Unit shall constitute a default by Purchaser and the remedies for Purchaser's default under this Agreement shall apply.

        3.5        FHA. Purchaser agrees to proceed with the purchase of the Unit after having read Purchaser's rights and privileges, as set forth below, appropriate to the type of loan Purchaser has requested.

The Island Club at Coral Springs, a Condominium                    2                    Purchaser's Initials _____
v9

3.5.1    FHA Loan Only. It is expressly agreed that notwithstanding any other provisions of this Agreement (contract), the Purchaser shall not be obligated to complete the purchase of the Unit (property) or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless Purchaser has been given in accordance with Housing and Urban Development ("**HUD**")/Federal Housing Administration ("**FHA**") or United States Department of Veterans Affairs ("**VA**") requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the Unit (property) (for mortgage purposes) of not less than $_____ (which statement Seller agrees to deliver to Purchaser promptly after such Appraised Value Statement is made available to Seller). The Purchaser shall have the privilege of proceeding with the consummation of this Agreement (the contract) without regard to the amount of the appraised valuation. THE APPRAISED VALUATION IS ARRIVED AT TO DETERMINE THE MAXIMUM MORTGAGE THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT WILL INSURE. HUD DOES NOT WARRANT THE VALUE OR THE CONDITION OF THE PROPERTY. THE PURCHASER SHOULD SATISFY HIMSELF/HERSELF THAT THE PRICE AND CONDITION OF THE PROPERTY ARE ACCEPTABLE. (See signature block for FHA loan below.)

AGREE TO PROCEED:        FHA ☐

_____        _____
Purchaser        Purchaser

4.    Credit Information Authorization.  Purchaser authorizes any lender to whom Purchaser has applied for a mortgage loan in connection with this transaction ("**Lender**"), to disclose to Seller the information contained in any loan application, verifications of deposit, income and employment, and credit reports or credit related documentation on Purchaser.  Purchaser authorizes Seller to order one or more credit reports from a consumer reporting agency to be used in connection with this transaction.  The cost of such report(s) is (are) to be paid by Purchaser.  Purchaser authorizes Seller to forward all copies of all or any portion of such report(s) without interpretation to Lender, or to any lender who (at the request of Purchaser) will evaluate a potential extension of credit to Purchaser, in connection with this transaction.  Purchaser authorizes the Lender, and any credit bureau or other person or entity utilized or engaged by Lender, to obtain one or more consumer reports regarding Purchaser and to investigate any information, reference, statement, or data, provided to Lender by the Purchaser or by any other person or entity, pertaining to Purchaser's credit and financial status.  Purchaser shall indemnify and hold harmless Lender and Seller, and any credit bureau or other person or entity utilized or engaged by Lender or Seller, for any damages or liability arising from an investigation of Purchaser's credit and financial status.

5.    Mortgage Loan and Closing Costs

5.1    Purchaser has a right to use a title company and a lender chosen by Purchaser in connection with the purchase of the Unit.  If the (a) purchase of the Unit is a cash transaction without financing and Purchaser elects to use the law offices of Solomon & Furshman, LLP or Title Company of Florida, LLC (the "**Title Company**") as the title company, or (b) purchase of the Unit will be financed, and Purchaser elects to use both Advance Capital Services, Inc. ("**Advance**"), to obtain a mortgage loan, and Title Company, for the title company, then Seller shall provide a credit against the Closing Costs (the "**Incentive Credit**") in the amount of either: (i) three percent (3%) of the Total Purchase Price in the event Purchaser is purchasing the Home as his/her primary residence to occupy; provided however, in the event the underwriter utilized by Advance for Purchaser does not permit such amount as an incentive, then such lesser amount permitted by such underwriter, or (ii) two percent (2%) of the Total Purchase Price in the event Purchaser is not purchasing the Home as his/her primary residence to occupy.  In order to assure that the loan application process is commenced promptly, Purchaser must select the lender and the title company, and advise Seller of the election either simultaneously with the execution of this Agreement or within ten (10) days of the date of this Agreement.  Please check ☑ one of the boxes below and place your initials below the selected text.

☒    1.    Purchaser intends to finance the purchase of the Unit and elects to use both Advance and Title Company.

Purchaser's Initials _____ _____

☐    2.    Purchaser intends to purchase the Unit without any financing but elects to use Title Company.

Purchaser's Initials _____ _____

☐    3.    Purchaser elects to use a lender other than Advance or a title company other than Title Company.

Purchaser's Initials _____ _____

☐    4.    Purchaser shall notify Seller within ten (10) days of the date of this Agreement of its election of option (1), (2) or (3) by delivering to Seller the Election Form Amendment attached hereto.

Purchaser's Initials _____ _____

5.2    If Purchaser selects option (1) or (2) above, Seller will provide the Incentive Credit only if the election is made within the time period noted above.  Regardless of whether Seller pays the Incentive Credit, Purchaser will pay all other loan and Closing Costs including, without limitation, the title search fee, title exam fee and settlement fee.

6.    Conversion Financing.  Seller may borrow money from Seller's own lender to renovate the Unit and other improvements on the land comprising the Condominium.  Purchaser acknowledges that any lender advancing renovation funds will have a first mortgage on the Unit until Closing.  At that time, Seller may use all of the Closing proceeds to release the Unit from the lien of the renovation mortgage.  This Agreement and the Deposit hereunder will not give Purchaser any lien or claim against the Unit, and Purchaser's rights hereunder shall at all times from the date hereof be subordinate to those of any lender holding a mortgage, whether or not such mortgage secures the advancement of renovation funds and even if such mortgage is placed of record and encumbers the Unit after the date of this Agreement.

7.    Intentionally Deleted.

8.    Construction Specifications.

The Island Club at Coral Springs, a Condominium            3            Purchaser's Initials _____ _____
v9

8.1    Purchaser Acknowledgments. Purchaser acknowledges and agrees that Purchaser has not relied upon any statements, verbal or written, published by or under the authority of Seller in advertising and promotional matter, including but not limited to newspaper, radio or television advertisements, but has based the decision to purchase solely upon Purchaser's personal investigation, observation and the disclosure materials and Condominium Documents provided herewith. Purchaser further acknowledges that the primary inducement to purchase under this Agreement is the Unit. Nothing contained in this Section 8.1 shall be deemed to limit or abridge any rights Purchaser may have under Section 718.506(1), Florida Statutes.

8.2    Landscaping. Purchaser agrees and understands that trees and landscaping which are located within the Condominium, may be removed during the condominium conversion process. Seller does not guarantee the location, replacement or survival of any trees or landscaping. Any loss of trees, shrubs, annuals, or other landscaping shall in no way obligate Seller to replace them.

9.    Pre-Sale Contingency. Seller shall have the right to terminate this Agreement and cause Purchaser's deposits to be refunded in the event that Seller does not enter into binding contracts to sell at least fifty five percent (55%) of the units in the Condominium. Seller must, however, notify Purchaser of such a termination at any time within twelve (12) months following the date of this Agreement, otherwise Seller will be required to proceed to perform its obligations under this Agreement. This Section shall not delay the effectiveness of this Agreement, which shall be immediate, but rather, shall be deemed a "condition subsequent" to this Agreement. In the event of Seller's termination of this Agreement pursuant to this Section, upon such termination and the return of Purchaser's Deposit, Seller and Purchaser will be fully relieved and released from all obligations and liabilities under in and in connection with this Agreement. Seller agrees to use its good efforts to meet the foregoing pre-sale requirement.

10.    Inspection Prior to Closing.

10.1    **Purchaser shall be given an opportunity to examine the Unit with Seller's representative prior to Closing on a date and time scheduled by Seller. At that time, Purchaser will sign a "Walk Through Punchlist" listing any changes in the Unit which Purchaser reasonably believes occurred between the date of this Agreement and the date of inspection, reasonable wear and tear excluded. If the condition of the Unit has been changed in Seller's reasonable discretion, Seller will be obligated to correct those items at its cost within a reasonable period of time after Closing, but Seller's obligation to correct will not be grounds for deferring the Closing, nor for imposing any condition on Closing. No escrow or holdback of Closing funds shall be permitted. If Purchaser fails to take advantage of the right to a pre-closing inspection on the time and date scheduled by Seller, (i) Seller shall not be obligated to reschedule an inspection prior to Closing, (ii) Purchaser shall be deemed to have waived the right to inspect the Unit prior to Closing, and (iii) Purchaser shall be deemed to have accepted the Unit in its "AS-IS" condition.**

10.2    Purchaser acknowledges and agrees that for reasons of safety and to comply with liability and insurance requirements imposed upon Seller, neither Purchaser nor any agent of Purchaser shall, until after the Closing, be permitted to enter upon the Unit without Seller's prior written approval. Purchaser agrees not to interfere with or interrupt any workmen at the Unit. Any personal inspections shall be made at times designated by Seller and upon written permission of Seller, and shall not be allowed under any condition prior to the formal inspection described above and only with Seller's representative. Purchaser may not order any work on the Unit until after the Closing. Without limiting the applicability of this Section to all obligations, representations and covenants of Purchaser hereunder, Purchaser specifically acknowledges that any breach by Purchaser of the terms and conditions contained within this Section shall be deemed to be a "material breach" and shall entitle Seller to declare this Agreement to be in default in accordance with the provisions of Section 16 hereof. Seller's failure to promptly take any action with respect to Purchaser's breach of the terms and conditions contained herein shall not be deemed a waiver of Seller's rights or remedies hereunder. Whenever this Agreement shall require the Seller to complete or substantially complete an item of construction, unless provided specifically to the contrary herein, such item shall be deemed complete or substantially complete when so completed, in the sole and unfettered opinion of the Seller. Without limiting Seller's rights contained within Section 8 hereof, should Seller fail to provide any item of construction required to be provided or any option, extra and/or upgrade, Purchaser's sole remedy therefor will be to collect an amount from Seller equal to Seller's cost for such item and for Seller's cost of installation of such item installed had such item been installed at the appropriate time during construction. Without limiting Seller's rights and Purchaser's obligations contained within this Section and elsewhere in this Agreement, should any defects in workmanship or materials be discovered before or after the Closing, Purchaser agrees that Purchaser's sole remedy therefor is for Seller to repair or replace the defective item at Seller's sole and absolute discretion. To the extent permitted by applicable law, Seller disclaims any liability for incidental or consequential damages that may arise from a defective item.

11.    Damage to Unit. If between the date of this Agreement and the Closing the Unit or Condominium is damaged by fire, natural disaster, acts of terrorism or other casualty, the following shall apply:

11.1    Risk of loss to the Unit or Condominium by fire, natural disaster, acts of terrorism or other casualty until the Closing is assumed by Seller, but without any obligation by Seller to repair or replace the Unit or Condominium, except that if Seller elects to repair or replace such loss or damage to the Unit or Condominium, this Agreement shall continue in full force and effect and Purchaser shall not have the right to reject title or receive a credit against or abatement in the Total Purchase Price. If Seller elects to repair or replace such loss or damage, Seller shall be entitled to a reasonable period of time within which to complete such repairs or replacement. Any proceeds received from insurance or in satisfaction of any claim or action in connection with such loss or damage shall belong entirely to Seller. If such proceeds shall be paid to Purchaser, Purchaser agrees that such funds are the property of Seller and Purchaser shall promptly upon receipt thereof turn the same over to Seller.

11.2    If Seller notifies Purchaser that Seller does not elect to repair or replace any such loss or damage to the Unit or Condominium, then this Agreement shall be deemed terminated and of no further force or effect. Seller shall refund to Purchaser all monies deposited hereunder whereupon the parties shall be released and discharged of all claims and obligations hereunder, except that if Purchaser is then otherwise in default hereunder, Seller shall retain all or a portion of the Deposit and of the deposits for options, extras and/or upgrades as and for liquidated damages as provided in Section 16 hereof.

11.3    Risk of loss to the Unit by fire, natural disaster, acts of terrorism or other casualty from and after Closing is assumed by Purchaser. Purchaser should be aware that the Unit and Condominium, however well constructed, may be subject to damage or destruction by naturally occurring events such as hurricanes and sinkholes. While Seller has no knowledge of sinkholes or naturally occurring gases such as radon in the immediate vicinity of the Condominium, all risks associated with all natural occurrences shall be borne by Purchaser from and after Closing.

12.    Escrow of Deposit. Purchaser understands that Solomon & Furshman, LLP ("Escrow Agent") whose address is 1666 Kennedy Causeway, Suite 302, North Bay Village, Florida 33141, and whose telephone number is (305) 861-4035, will hold the Deposit in an escrow account (the "Escrow Account"), pursuant to the terms of this Agreement, Chapter 718 of the Florida Statutes, and the Escrow Agreement attached to the Prospectus. Seller and Purchaser agree to be bound by the terms of the Escrow Agreement. Any deposits made by Purchaser in excess of ten percent (10%) of the Total Purchase Price may be used by Seller for paying construction costs of the Condominium as provided by Florida law. Purchaser may obtain a receipt for his/her Deposit from the Escrow Agent upon request. No interest shall be paid to Purchaser on the Deposit except if Purchaser shall have properly terminated the Agreement pursuant to its terms or the provisions of Chapter 718 of the Florida Statutes, in which case Purchaser shall receive interest if any has been earned on Purchaser's Deposit. Escrow Agent may deposit monies

held in the Escrow Account in savings or time deposit accounts in a bank or savings and loan association insured by an agency of the United States Government and/or, if approved in writing by Seller, in securities of the United States Government or any agency thereof, with interest and dividends, if any, paid to Seller upon the payment of the Deposit to Seller. By signing this Agreement, Purchaser expressly authorizes Escrow Agent to disburse Purchaser's payments held in the Escrow Account to Seller's account at Closing, or to Seller upon Purchaser's default. Purchaser agrees to indemnify and hold Escrow Agent harmless from any claims or damages that may result from Escrow Agent's escrowing or disbursing of Purchaser's Deposit, other than those claims or damages resulting from Escrow Agent's gross negligence or willful malfeasance. Escrow Agent shall not be responsible for any act or omission to act, unless occurring due to its sole gross negligence or willful malfeasance, and upon making delivery of the monies that Escrow Agent holds in accordance with the terms hereof, Escrow Agent shall have no further liability. Seller and Purchaser, jointly and severally, shall indemnify and hold Escrow Agent harmless from any and all damages or losses arising by reason of Escrow Agent having acted as Escrow Agent, or in connection therewith (except for damages or losses arising out of gross negligence or willful malfeasance), including but not limited to all costs and expenses incurred by Escrow Agent in connection with the filing of an interpleader action, together with reasonable attorneys' fees, paraprofessional fees and legal costs at trial and upon appeal.

12.2    Notwithstanding Section 12.1 above, Purchaser acknowledges that Deposits may be used by the Seller if alternatively assured in accordance with Section 718.202 of the Florida Statutes. Purchaser's execution of this Agreement constitutes Purchaser's consent and authorization to Seller to use alternatively assured Deposits.

13.    Closing Date.  Purchaser acknowledges and agrees that Seller has the right in its sole discretion to schedule the date, time and place for the closing of the transaction contemplated by this Agreement ("Closing") and that Purchaser shall close on such Closing date.  Purchaser will be given at least four (4) days notice of the Closing date, time, and place.  Seller is authorized to postpone or advance the date of the Closing at its discretion.  Seller must, however, give Purchaser reasonable notice of the new Closing date.  Any notice of Closing may be given verbally, by telephone, telegraph, telex, telefax, mail, or other means of communication at Seller's option.  An affidavit of one of Seller's employees or agents that such notice was given will be conclusive for purposes of proving that notice was given.  All notices will be given to Purchaser at the address or by use of the telephone number(s) specified on Page 1 of this Agreement unless Seller has received written notice from Purchaser of any change therein prior to the date notice of Closing is given.  The fact that Purchaser fails to receive the notice of Closing because Purchaser has failed to advise Seller of any changes of address or phone number, or because Purchaser has failed to pick up a letter when Purchaser has been advised of an attempted delivery or for any other reason, shall not relieve Purchaser of Purchaser's obligation to close on the scheduled date, unless Seller otherwise agrees in writing to postpone the Closing date.  If Seller agrees in writing to reschedule the Closing at Purchaser's request or because Purchaser (if a corporation) has failed to produce all corporate documents requested by Seller, or for any other reason (except for delay required by Seller or delay required by Advance in the event Seller has elected to use Advance to obtain a mortgage loan), Seller may impose a late charge equal to the daily amount of interest that would be due on the Total Purchase Price, plus extras and options, at an annual percentage rate of eighteen percent (18%), or the highest amount allowed by law, per day for every day from the original Closing date through the date that the transaction closes and prorations shall be as of the original Closing date.  Purchaser agrees the late charge is appropriate in order to cover Seller's administrative and other expenses resulting from a delay in Closing.  Seller is not required to agree to reschedule Closing, but Seller may reschedule Closing in Seller's sole discretion.

The estimated date of Closing is  03-16-2006                .  This date is merely an estimate and Seller, in its sole and absolute discretion, may arrange the Closing before or after such estimated Closing date.

14.    Closing.  Title to the Unit to be delivered to Purchaser at Closing will be marketable and insurable, subject only to those matters hereinbelow set forth.  In connection therewith:

14.1    Title to the Unit shall be subject to the following:  (1) zoning, building codes, bulkhead laws, ordinances, regulations, rights or interests vested in the United States of America or the State of Florida; (2) real estate taxes and other taxes for the year of conveyance and subsequent years including taxes or assessments of any special taxing or community development district (including assessments relating to capital improvements and bonds); (3) the general printed exceptions contained in an ALTA Owner's Title Insurance Policy; (4) utility easements, sewer agreements, telephone agreements, cable agreements, telecommunication agreements, monitoring agreements, restrictions and reservations common to any plat affecting title to the Unit and the Condominium; (5) the Condominium Documents (as defined in Section 45 below); (6) any laws and restrictions, covenants, conditions, limitations, reservations, agreements or easements recorded in the Public Records (for example, property tax limitations and obligations, easements (right-of-way) and agreements relating to telephone, gas or electric lines, water and sewer lines and drainage, provided they do not prevent use of the Unit for single family residential purposes); (7) to the extent the Unit is being purchased subject to the terms of a lease (as set forth in Section 24), then title shall be subject to the rights of the tenant thereunder; and (8) acts done or suffered by Purchaser and any mortgage obtained by Purchaser for the purchase of the Unit.  It is Purchaser's responsibility to review and become familiar with each of the foregoing title matters, some of which are covenants running with the land.  If any title defects are discovered by Purchaser after Closing, Purchaser's sole remedy shall be to make a claim to Purchaser's title insuror.

14.2    Seller is not required to furnish Purchaser with an abstract of title.  If desired, Purchaser may obtain the same at Purchaser's expense.

14.3    Seller shall convey title to Purchaser at Closing by delivery to Purchaser of a Special Warranty Deed (the "Deed") describing the Unit which shall convey title to Purchaser subject to all matters described in Section 14.1 above.  This Section shall expressly survive Closing and the delivery of the Deed.  The acceptance of the Deed by Purchaser shall be deemed to be full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to this Agreement, except those which are herein specifically deemed to survive Closing or which may survive by operation of law (if any).

14.4    Seller shall provide an affidavit complying with the Foreign Investment in Real Property Tax Act of 1980, as amended, upon the written request of Purchaser.

14.5    Seller may not own title to the real property which will comprise the Condominium on the date of execution of this Agreement or at Closing; however, Seller shall obtain title to the real property which will comprise the Condominium on or before the date of Closing or effect the necessary transfer of title on or before the date when Seller causes title to be transferred to Purchaser.

14.6    If Seller cannot provide marketable and insurable title as described above, Seller will have a reasonable period of time (at least one hundred and twenty (120) days) from the date of the scheduled Closing to attempt to correct any defects in title; provided, however, Seller shall not be obligated to incur any expense to clear title to the Unit.  If Seller cannot or elects not to correct the title defects, Seller shall so notify Purchaser within such period, and Purchaser may thereafter elect (by written notice from Purchaser to Seller) one of the following two (2) options:  (1) to accept title in the condition offered (with defects) and pay the balance of the Total Purchase Price for the Unit (without set off or deduction therefor), thereby waiving any claim with respect to such title defects and Purchaser will not make any claims against Seller because of the title defects; or (2) to terminate this Agreement and receive a full refund of all monies deposited hereunder.  If all monies deposited hereunder are refunded, Purchaser agrees to accept it as full payment of Seller's liability hereunder, whereupon this Agreement shall be terminated and Seller shall thereafter be relieved and released of all further liability hereunder.  Purchaser shall not thereafter have any rights to make any additional claims against Seller.  In the

The Island Club at Coral Springs, a Condominium                    5                    Purchaser's Initials
v9

event Purchaser does not notify Seller in writing within five (5) business days from the receipt of Seller's notice (time being strictly of the essence) as to which option Purchaser elects, Purchaser shall be conclusively presumed to have elected option (2) set forth above. Purchaser shall be responsible for any pending and proposed liens, taxes and/or assessments for public improvements. Seller will be responsible for public improvement liens which have been certified as of the date of Closing. At Closing, Purchaser agrees to pay to Seller the balance of the Total Purchase Price and any additional amounts Purchaser owes under this Agreement by cashier's check drawn on a bank approved by Seller or by federal wire transfer. Official check, bank check or personal check will not be accepted.

15.    Closing Costs.

15.1    Purchaser understands and agrees that in addition to the balance of the Total Purchase Price, Purchaser shall pay certain other fees and Closing costs at Closing. In connection therewith, without limitation, the items listed below will collectively be referred to as "**Closing Costs.**" Notwithstanding anything in the Agreement to the contrary, in the case of an FHA loan, Purchaser shall not pay for any costs prohibited by HUD (FHA) regulations. The Closing Costs include, without limitation:

15.1.1    The premium for a policy of owner's title insurance. In addition, Purchaser shall pay all title search fees and other Closing expenses of Purchaser.

15.1.2    Customary Closing costs of a purchaser, including but not limited to items such as loan fees, loan closing costs and all other related sums, attorneys' fees, escrows for taxes and insurance, recording fees, documentary stamp taxes on the note, intangible taxes, credit reports and PMI insurance, if applicable, charged by Purchaser's lender or otherwise customary for a purchaser at closing.

15.1.3    Title search updates, title examination fee and any other Closing expense of Purchaser.

15.1.4    All additional costs respecting the Unit imposed by any governmental authority.

15.1.5    Reimbursement of reserves, if any, for deferred maintenance and/or capital improvements paid by Seller to the Condominium Association respecting the Unit.

15.1.6    A prorata share of Purchaser's monthly assessments payable to the Condominium Association. Purchaser understands that the estimated operating budget for the Condominium Association is only an estimate of what it will cost to run the association.

15.1.7    The cost of any obligations Purchaser incurs not provided for in this Agreement.

15.1.8    Certified governmental liens (liens which can be paid pursuant to written notice), if any, shall be assumed and paid by Seller; pending governmental improvement liens shall be paid and assumed by Purchaser.

15.1.9    A prorata share of Broward County interim service fees, if any.

15.1.10    A prorata share of waste fees.

15.1.11    Any other expenses of an owner of the Unit provided for or referenced in the Condominium Documents.

15.1.12    A prorata share of utility deposits for the Condominium Association or the Unit prepaid by Seller.

15.1.13    Any utility deposits that are applicable to the Unit.

15.1.14    Current expenses of the Unit (for example: taxes, special assessments, and current monthly assessments of the Condominium Association) will be adjusted between Seller and Purchaser as of the date of Closing. Purchaser shall reimburse Seller for any prepaid expenses of the Unit such as utility deposits, insurance premiums, local interim service fees, cable fees, assessments and capital contributions made to the Condominium Association paid by Seller in advance and/or for the month of Closing.

15.1.15    Purchaser and Seller agree that if the Closing takes place in a year in which the real estate taxes on the Condominium property are on one bill and/or combined with other property, then the taxes for the year of Closing shall be prorated as of the date of Closing based upon the equitable estimated assessment to be reasonably determined by Seller and shall not be subject to reproration. Purchaser shall pay to Seller at the Closing it's share of such taxes. Purchaser and Seller further agree that if the Closing takes place in a year in which the real estate taxes are separately assessed against individual units in the Condominium, proration of same shall take place as of the date of Closing based on the tax bill for the prior year if the bill for the current year is not yet available. Purchaser shall pay such tax bill and any request for real estate tax reproration for the year in which the Closing occurs (whether such request is (i) due to the fact that the actual taxes for the year of Closing vary from the amount used in the Settlement Statement or (ii) due to clerical or scrivener's error in the Settlement Statement) must be submitted by the party requesting the adjustment and received by the non-requesting party no later than by May 30 of the year following the year in which the Closing occurs. In the event that Seller shall pay such tax bill, the aforementioned method of reproration shall also be applicable. Without limiting the foregoing, reproration shall only be available if the Unit is separately assessed in the year of the Closing.

15.1.16    Reimbursement to Seller, and/or Seller's closing agent, for charges incurred in connection with coordinating Closing with Purchaser and/or Purchaser's lender including, but not limited to, charges for messenger expenses, long distance telephone calls, photocopying expenses, and telecopying charges. In addition, Seller will engage its attorney and/or closing agent to prepare and/or review documentation in connection with the Closing of the Unit and the fees of the attorney and/or closing agent charged for such services, in an amount not to exceed seven hundred fifty dollars ($750.00), shall be paid by Purchaser to such attorney and/or closing agent at Closing.

15.2    Seller agrees that it shall pay the following costs at Closing: (i) the cost of the documentary stamp taxes on the Deed; and (ii) the cost to record the Deed.

The Island Club at Coral Springs, a Condominium                                6                                Purchaser's Initials
v9

16.    Default.

16.1    Purchaser's Default. Should Purchaser fail to close on the title to the Unit as herein provided, or fail to perform or observe any of the Purchaser's obligations hereunder, Seller may, at its option, terminate this Agreement by notice to Purchaser, which termination will be effective upon the giving of such notice. In such event, the portion of the Deposit equal to or less than ten percent (10%) of the Total Purchase Price shall be retained by Seller as liquidated and agreed upon damages for Purchaser's default, and all rights and privileges hereunder shall thereafter terminate. The portion of the Deposit in excess of ten percent (10%) of the Total Purchase Price, if any, shall be returned to Purchaser. Notwithstanding the foregoing, any deposits or payments for options, extras and/or upgrades shall also be retained by Seller as liquidated and agreed upon damages. Seller has removed the Unit from the market and has incurred substantial direct and indirect expenses relative to sales, models, advertising and similar items, and Purchaser recognizes that no method could determine the precise damage resulting from Purchaser's default and that such liquidated damages are a fair and reasonable remedy. The termination of this Agreement and the retention of the portion of the Deposit equal to or less than ten percent (10%) of the Total Purchase Price and the retention of deposits or payments for options, extras and/or upgrades, as liquidated and agreed upon damages, shall be the Seller's sole remedy in the event of Purchaser's default, and upon termination of the Agreement, neither party shall have any further obligation to the other. Any damage or loss that occurs to the Unit while Purchaser is in default will not affect Seller's right to retain that portion of the Deposit equal to or less than ten percent (10%) of the Total Purchase Price as liquidated damages to the extent provided herein.

16.2    Seller's Default.

16.2.1    Prior to Closing.

16.2.1.1    Notice. Purchaser shall give written notice to Seller following Seller's default under this Agreement as a condition precedent to seeking any remedy against Seller. The written notice shall specify the default in detail. The notice to be given pursuant to this Section shall be delivered to Seller in the same manner noted in Section 38 of this Agreement.

16.2.1.2    Cure Period. Seller shall have a reasonable period of time (not less than thirty (30) days nor more than ninety (90) days) from the date Seller receives the written notice (the "Cure Period") to correct any default or to otherwise respond to Purchaser in the event Seller determines that no default has occurred and/or defect exists.

16.2.1.3    Right to Inspect and Correct. Seller shall have the Cure Period to inspect and correct any alleged default or defect or to otherwise respond to Purchaser in the event Seller determines that no default has occurred and/or defect exists.

16.2.1.4    Expiration of Cure Period. Purchaser agrees that Purchaser shall seek no remedy against Seller prior to the expiration of the Cure Period. Seller shall have the right but not the obligation to take action during the Cure Period and/or respond to any notice received from Purchaser.

16.2.1.5    Remedy. In the event that Seller is unable to cure default during the Cure Period (except in the event of a title defect as set forth in Section 14 above), Purchaser shall have the right to terminate this Agreement and receive a full refund of the Deposit and a full refund of deposits or payments for options, extras and/or upgrades, and the Purchaser's liquidated damages under this provision shall be the sum equal to that portion of the Deposit equal to or less than ten percent (10%) of the Total Purchase Price. By way of example, if the Deposit is less than ten percent (10%) of the Total Purchase Price, then Purchaser shall receive a refund of the Deposit and a refund of deposits or payments for options, extras and/or upgrades, and liquidated damages under this provision shall be equal to the actual amount of the Deposit. If the Deposit is equal to or more than ten percent (10%) of the Total Purchase Price, then Purehaser shall receive a refund of the actual amount of the Deposit and a refund of deposits or payments for options, extras and/or upgrades, and Purchaser's liquidated damages under this provision shall be equal to ten percent (10%) of the Total Purchase Price. In the event Purchaser rightfully so terminates this Agreement, both parties shall be released from any and all further obligations hereunder. Purchaser and Seller acknowledge that such liquidated damages are a fair and reasonable remedy because it is not possible to determine at this time the actual damages Purchaser might suffer, if any, should Seller default under this Agreement.

16.2.2    Post-Closing.

16.2.2.1    Notice. Purchaser shall give written notice to Seller of any alleged defect or default with respect to the Unit, arising under this Agreement or under law after Closing, as a condition precedent to seeking any remedy against Seller with respect to the Unit. The written notice shall specify the defect or default in detail. The notices to be given pursuant to this Section shall be delivered to Seller and Seller's Counsel in the same manner noted in Section 38 of this Agreement. Notices to Seller's Counsel are to be sent to Solomon & Furshman, LLP, Attention: Michael A. Furshman, Esq., 1666 Kennedy Causeway, Suite 302, North Bay Village, Florida 33141. Seller shall have the Cure Period, as defined above, to correct any alleged default or defect or to otherwise respond to Purchaser in the event Seller determines that no default has occurred and/or defect exists.

16.2.2.2    Right to Inspect and Correct. Seller shall have the Cure Period to inspect and correct any alleged default or defect or to otherwise respond to Purchaser in the event Seller determines that no default has occurred and/or defect exists. The Cure Period shall be extended by any period of time that Purchaser refuses to allow Seller to inspect the Unit and/or perform tests as required by Section 16.2.3 hereof.

16.2.2.3    Expiration of Cure Period. Purchaser agrees that Purchaser shall seek no remedy against Seller prior to the expiration of the Cure Period. Without limiting the foregoing, Purchaser shall not bring any litigation against Seller respecting the Unit until the expiration of the Cure Period (which shall be deemed to be ninety (90) days from Seller's receipt of Purchaser's written notice unless Seller agrees in writing to any shorter period). Seller shall have the right, but not the obligation, to take action during the Cure Period and/or respond to any notice received from Purchaser.

16.2.2.4    Master Deed Restriction. The provisions of this Section 16.2.2 and 16.2.3 shall be covenants running with the land and are referenced in the Master Deed Restrictions recorded or to be recorded in the Public Records of County.

16.2.3    Purchaser's Obligation to Permit Inspection. Purchaser agrees that once Purchaser has given written notice to Seller pursuant to Section 16.2.1.1 or Section 16.2.2.1, whichever is applicable, Purchaser shall be obligated to permit Seller and its agents to perform inspections of the Unit and to perform all tests and make all repairs/replacements deemed necessary by Seller to respond to such notice at all reasonable times. Purchaser agrees that any inspection, test and/or repair/replacement scheduled on a business day between 9 a.m. and 5 p.m. shall be deemed scheduled at a reasonable time. The rights reserved in this Section 16.2 include the right of Seller to repair or address, in Seller's sole option and expense, any aspect of the Unit deemed defective by Seller during its inspections of the Unit.

17.    Association Membership.

The Island Club at Coral Springs, a Condominium                    7                    Purchaser's Initials 
v9

17.1     This Agreement is also purchaser's application for membership in the Association and upon conveyance and recording of the Deed, Purchaser understands and agrees that Purchaser will then become a member of the Condominium Association. Purchaser agrees to accept the liability and obligations of such membership. Purchaser understands that as a member of the Condominium Association, Purchaser will be required to pay assessments for the condominium maintenance of the common elements, and common facilities (as defined in the Condominium Documents) and for such other uses and purposes as are provided for in the Condominium Documents. Purchaser also understands and agrees that a failure to pay assessments when due could cause the Condominium Association to record a lien on the Unit and to foreclose on such lien.

17.2     Purchaser acknowledges that nominees of Seller shall serve as the initial officers and directors of the Condominium Association and are authorized by Purchaser to act for and on the behalf of the Condominium Association in entering into any and all agreements as are provided for in or contemplated by the Condominium Documents and their exhibits. Purchaser also acknowledges that the provisions of the Condominium Documents are fair and reasonable. Nothing contained in this Section 17.2 shall be deemed to limit or abridge any rights Purchaser may have under Sections 718.111(3), 718.303, 718.505, or 718.506, Florida Statutes.

18.     Seller's Use of the Condominium. As long as Seller or its successors or assigns owns any portion of the property that comprises or may comprise part of the Condominium, Seller and its agents may maintain sales and leasing offices and models within the Condominium to assist Seller in selling, reselling, and leasing properties in the Condominium. As long as Seller, or any members of Seller, owns any Unit in the Condominium, Seller and/or its nominees shall have the right and privilege to maintain general sales offices in and about the Condominium including model residences, and to have their employees present on the premises to show Units, use the common elements of the Condominium, and, without limitation, to do any and all other things necessary or appropriate by them to sell, resell, or lease Units, all without charge or contribution; provided, however, that such activities shall be carried on in such a manner as will not unreasonably interfere with the Unit owners' enjoyment of the property.

19.     Purchaser's Option.

**THIS AGREEMENT IS VOIDABLE BY BUYER (PURCHASER) BY DELIVERING WRITTEN NOTICE OF BUYER'S (PURCHASER'S) INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER (PURCHASER) AND RECEIPT BY BUYER (PURCHASER) OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM/HER (PURCHASER) BY DEVELOPER (SELLER) UNDER SECTION 718.503, FLORIDA STATUTES.   THIS AGREEMENT IS ALSO VOIDABLE BY BUYER (PURCHASER) BY DELIVERING WRITTEN NOTICE OF THE BUYER'S (PURCHASER'S) INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF RECEIPT FROM DEVELOPER (SELLER) OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO BUYER (PURCHASER).   ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER (PURCHASER) MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER BUYER (PURCHASER) HAS RECEIVED ALL OF THE ITEMS REQUIRED.   BUYER'S (PURCHASER'S) RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

Should Purchaser desire to void this Agreement pursuant to Purchaser's option as above referenced, Seller must receive written notice of cancellation signed by all persons signing this Agreement as "Purchaser." Such written notice must be delivered to Seller or sent to Seller at the address of Seller as listed on the first page of this Agreement. Upon proper and timely cancellation, Deposits shall be refunded by Seller within thirty (30) business days of Seller's receipt of written notice of cancellation, or such greater amount of time as is necessary for clearance of any Deposit in the form of a check.

20.     Pets.  Purchaser understands and agrees that the Condominium Documents contain restrictions respecting the ownership of domestic pets by Unit owners.

21.     Existing Improvements / Unit to be Purchased "AS IS, WHERE IS".

21.1     Because the Unit and the Condominium are substantially complete as of the date Purchaser signs this Agreement, Purchaser acknowledges and aggress that Purchaser has inspected the Unit and the Condominium and has had the opportunity to examine such plans and specifications as Seller has obtained (including all changes thereto to date) for the Unit and the Condominium, all of which are located in Seller's offices and available for inspection during regular business hours or by appointment. By signing this Agreement, Purchaser agrees to accept the Unit and the Condominium in their "AS-IS, WHERE-IS" condition, subject to the provisions of Section 24 below. This means that Purchaser has no claim against Seller for any matters Purchaser discovered (or should have discovered) when Purchaser inspected or had the opportunity to inspect the Unit and Condominium (and the plans, specifications and changes thereto, if any) and/or for any of the matters disclosed in the reports attached to the Prospectus. Without limiting the generality of the foregoing, Purchaser acknowledges that Seller has requested Purchaser to inspect the condition of the Unit, generally, and at that time also to make Purchaser's own determinations as to the area and dimensions of the Unit and its Limited Common Elements, if any. If any previous inspection did not include an examination of such general conditions or these areas and dimensions, Purchaser agrees to make such inspection and examination within fifteen (15) days following the date Purchaser signs this Agreement (that is, during the period in which Purchaser may cancel this Agreement for any reason at all). If within such time, Purchaser conducts such inspection as permitted by the foregoing sentence, and does not cancel this Agreement, or if Purchaser does not make this specific inspection at all, Purchaser shall be deemed to have accepted the Unit and its Limited Common Elements without reservations or claims as to their general condition, area, dimensions, ceiling heights or otherwise.

21.2     Purchaser understands and agrees that there are various methods for calculating the square footage of a Unit, and that depending on the method of calculation, the quoted square footage of the Unit may vary by more than a nominal amount. Accordingly, during the pre-closing inspection, Purchaser should, among other things, review the size and dimensions of the Unit. By Closing, Purchaser shall be deemed to have conclusively agreed to accept the size and dimensions of the Unit, regardless of any variances in the square footage from that which may have been disclosed to Purchaser at any time prior to Closing, whether included as part of the Condominium Documents, Seller's promotional materials or otherwise. Without limiting the generality of any other provision in this Agreement, Seller does not make any representation as to the actual size, dimensions or square footage of the Unit, and Purchaser hereby waives and expressly releases any such warranty and claim for loss or damages resulting from any variances between any represented or otherwise disclosed square footage and the actual square footage.

21.3     Seller makes no representations or warranties with respect to any items included in the Unit. Seller shall transfer to Purchaser any manufacturing warranties pertaining to the Unit, if any, which by their terms are transferable. Purchaser acknowledges that any appliances or other personal property included within the Unit are not new and have been previously used. Seller is not responsible for (i) the condition of any personal property located within the Unit including, without

The Island Club at Coral Springs, a Condominium                    8                    Purchaser's Initials
v9

limitation, the refrigerator, range, water heater, or air handler; or (ii) any damage caused by such personal property. Therefore, it is recommended that after Closing Purchaser service and maintain all personal property contained within the Unit.

22.    Limitation of Warranties.

22.1    Seller has elected to fund the converter reserve accounts as provided for in Section 718.618(1), Florida Statutes. Therefore, Seller hereby disclaims any and all implied warranties pursuant to Section 718.618(6), Florida Statutes. All manufacturers' warranties, if any, on manufacturers' warranties and fixtures within the Unit, will, to the extent allowable, be passed through to Purchaser at Closing and all items covered by such manufacturers' warranties are expressly not warranted by Seller.

22.2    To the extent lawful, Seller hereby disclaims any and all and each and every express or implied warranty, whether established by statutory, common, case law or otherwise, as to the design, construction, sounds and/or odor transmission, existence and/or development of moulds, mildew, toxins or fungi, furnishing and equipping of the Condominium Property, including, without limitation, any implied warranties of habitability, fitness for a particular purpose or merchantability, compliance with plans, all warranties imposed by statutes, and all other express and implied warranties of any kind or nature whatsoever. Seller has not given and Purchaser has not relied on or bargained for any such warranties. Purchaser recognizes and agrees that the Unit and Condominium are not new construction. Purchaser, by closing on the purchase of the Unit, shall be deemed to represent and warrant to Seller that in deciding to purchaser the Unit, Purchaser relied solely on Purchaser's independent inspection of the Unit and the Condominium as well as the Conversion Inspection Report included in the Prospectus. Purchaser has not received nor relied on any warranties and/or representations from Seller of any kind, other than as expressly provided herein, if any.

22.3    As to any implied warranty which cannot by law be disclaimed entirely, all secondary, incidental and consequential damages are specifically excluded and disclaimed (claims for such secondary, incidental and consequential damages being clearly unavailable in the case of implied warranties which are disclaimed entirely above).

22.4    Normal swelling, expansion and contraction of materials and construction, and any cracks appearing as a result thereof or as a result of settlement of, in or on the Unit shall not be deemed to be construction defects. Upon Closing, Seller shall deliver to Purchaser all manufacturers' warranties, if any, covering the consumer products (if any) to be conveyed to Purchaser hereunder, provided, however, Seller shall not thereby be deemed to warrant any such consumer product, nor to adopt any liability for any such manufacturers' warranty thereof.

22.5    Given the climate and humid conditions in South Florida, mold, mildew, spores, fungi and/or other toxins may exist and/or develop within the Condominium and the Unit. Purchaser is hereby advised that certain mold, mildew, spores, fungi and/or other toxins may be, or if allowed to remain for a sufficient period may become, toxic and potentially pose a health risk. By Closing, Purchaser shall be deemed to have assumed the risks associated with mold, mildew, spores, fungi and/or other toxins located within the Condominium and/or the Unit, if any, and to have released Seller from any and all claims and liability resulting from same. Without limiting the generality of the foregoing, Seller hereby disclaims any and all express or implied warranties as to design, construction, view, sound and/or odor transmission, furnishing and equipping of the Unit, the existence of mold, mildew, spores, fungi and/or other toxins within the Unit. Seller has not given and Purchaser has not relied on or bargained for any such warranties. Without limiting the generality of the foregoing, leaks, wet flooring and moisture will contribute to the growth of mold, mildew, fungus or spores. Purchaser understands and agrees that Seller is not responsible, and hereby disclaims any responsibility for any illness or allergic reactions which may be experienced by Purchaser, its family members and/or its or their guest, tenants, and invitees as a result of mold, mildew, fungus or spores. It is the Purchaser's responsibility to keep the Unit clean, dry, well ventilated and free of contamination.

22.6    Purchaser acknowledges and agrees that Seller has made no representations or warranties regarding (i) the economic advantages or disadvantages of purchasing the Unit, (ii) any potential increase in the value of the Unit above the Total Purchase Price, or (iii) the purchase of the Unit as an investment or for other economic purposes, and Purchaser has and will rely solely on its own determination of such matters in purchasing the Unit.

22.7    Purchaser acknowledges and agrees that Seller has made no representations or warranties regarding the existence or quality of any views that will be visible from the Unit. Purchaser acknowledges and agrees that such views may change at any time for such reasons including, without limitation, construction in the area, vegetation growth, and/or severe weather. Purchaser understands and agrees that any views that can be anticipated from models, sketches or other materials attempting to show how the Condominium will look may not be relied upon for such purpose, and Purchaser is not purchasing the Unit in reliance on the Unit having any particular view.

23.    No Warranties for Third Party Construction.

23.1    Seller does not warrant any of the work performed in the Unit or on the Condominium by third party contractors, not hired by Seller, prior to or after the Closing.

23.2    Seller shall not be liable for any defects in the work performed by third party contractors not hired by Seller, nor for any adverse impact to the Unit or Condominium caused thereby including, but not limited to, delays in completion of the Unit due to such third party contractor interference and/or injuries to person or property caused by such third party contractors.

23.3    Further, should Purchaser elect to use a third party contractor that is a subcontractor of Seller, Purchaser acknowledges that Seller makes no representations relative to the performance by such third party contractor.

24.    Prior Occupancy of Unit/Delivery of Unit.    Purchaser acknowledges that the Condominium is a conversion of previously existing multifamily apartment units which was not constructed by Seller, and as such, is not new construction. Purchaser acknowledges having received a copy of the conversion inspection report included in the Prospectus which discloses the condition of various components of the Condominium. Additionally, Purchaser has received a copy of a termite inspection report prepared by a Florida licensed pest operator. These reports disclose, among other things, a discussion of the current condition of the Condominium and many of its mechanical and structural components. The Unit has previously been or currently is occupied by one (1) or more tenants. If there is currently a tenant in the Unit, pursuant to Section 718, Part VI, of the Condominium Act, the tenant may have the right to extend his or her lease for a period up to three hundred sixty (360) days from the date of the Notice of Intended Conversion which Seller has previously provided to the tenant, and the tenant may have a right to purchase the Unit ("Right of First Refusal") for a period of forty five (45) days after receipt of the items required to be delivered pursuant to Section 718.612 of the Condominium Act. Because of tenant's rights set forth above, Purchaser acknowledges that this Agreement will be effective only if the tenant does not exercise his or her Right of First Refusal, if any. If tenant exercises his or her Right of First Refusal, (i) this Agreement shall be null and void and of no further force and effect, (ii) all Deposits received by Seller shall be returned to Purchaser, and (iii) Purchaser and Seller shall be relieved of all obligations set forth in this Agreement, other than those that survive

The Island Club at Coral Springs, a Condominium                    9                    Purchaser's Initials
v9

termination of this Agreement. If tenant does not exercise his or her Right of First Refusal, if any, then this Agreement shall remain in full force and effect, and Purchaser shall purchase the Unit subject to tenant's rights to extend his or her lease, if any.

**THE UNIT ☐ IS ☒ IS NOT** (check ☒only one) **SUBJECT TO A LEASE.** At Closing, the Unit shall be conveyed (check ☒only one):

☐    Free and clear of all tenancies and possessory rights, and as such, Seller shall convey to Purchaser exclusive possession of the Unit at Closing; or

**Purchaser's Initials** _____

☐    To the extent that a lease of the Unit is still in place at the time of Closing, subject to the terms of a lease, a true and correct copy of which is attached hereto. Accordingly, at Closing, provided that a lease of the Unit is still in place, Seller shall assign to Purchaser, without recourse, Seller's interest in the lease and transfer to Purchaser any security deposit from tenant in Seller's possession. Rents for the month of Closing shall be prorated and title to the Unit shall be delivered subject to the rights of possession of the tenant under the lease (provided the same is still in place as of Closing). Purchaser understands and agrees that pursuant to the provisions of Chapter 718, Florida Statutes, the tenant under the lease may have a right to terminate the lease prior to the expiration of the term. Accordingly, there is no assurance that the tenant will remain in the Unit through Closing or thereafter through the balance of the term of the lease and Purchaser hereby releases Seller from any and all liability resulting from same or any other matters under such lease.

**Purchaser's Initials** _____

25.    _Deposits_. Any reference to Deposit or Deposits herein shall refer collectively to all amounts deposited with Seller under this Agreement, and under any addendum or amendment hereto, except for any deposits or payments made by Purchaser for options, extras and/or upgrades. Any and all deposits or payments for options, extras, and/or upgrades are non-refundable except (i) in the event of Seller's default, (ii) if the Unit is damaged, as described in Section 11, and Seller does not elect to repair or replace the Unit and/or (iii) Seller is unable to provide marketable and insurable title, as described in Section 14. All monies deposited under the terms of this Agreement, except for the balance due at Closing, may be made by check drawn on a Florida bank, subject to collection. All payments must be made in United States funds. If the Deposit is held in escrow, it shall be released to Seller upon written notice from Seller to the escrow agent that Purchaser has defaulted under this Agreement, unless Purchaser has commenced legal proceedings in accordance with Section 46 of this Agreement within ten (10) days after written notice to Purchaser that Seller has declared a default. Release of the Deposit to Seller shall not affect Purchaser's right to commence any such legal proceedings.

26.    _Agreement and/or Lis Pendens Not to be Recorded_. Purchaser covenants and agrees that Purchaser shall not record this Agreement (or any memorandum thereof) in the Public Records of the County. Additionally, Purchaser hereby waives any right it may have to record a _lis pendens_ against the Unit and/or the Condominium in the Public Records of the County and Purchaser agrees that it shall not record any such _lis pendens_. Notwithstanding the foregoing, in the event purchaser records this Agreement and/or any _lis pendens_ against the Unit and/or the Condominium, Purchaser shall pay all of Seller's legal fees, paraprofessional fees and expenses incurred in removing the cloud in title caused by such recordation. Purchaser acknowledges that Purchaser and Seller have agreed upon liquidated damages in the event of a breach of this Agreement. Purchaser further acknowledges and agrees that in the event Purchaser records this Agreement or files a _lis pendens_ against the Unit and/or the Condominium, the recording and/or filing of the same shall be deemed a material breach of this Agreement and Seller shall have all remedies available under Section 16 of this Agreement in addition to the remedies provided in this Section. This Section shall survive any termination of this Agreement. By initialing below Purchaser acknowledges the waiver of rights as provided in this Section.

**Purchaser's Initials** _____

27.    _Transfer or Assignment_. Purchaser has no right to assign, sell or transfer Purchaser's interest in this Agreement (whether voluntarily or by operation of law or otherwise) without Seller's prior written consent. If Purchaser is a corporation, other business entity, trustee or nominee, a transfer of any material equity or beneficial or principal interest shall constitute an assignment of this Agreement. If Purchaser attempts to assign this Agreement in violation of this Section 27, Seller can declare Purchaser in default and Seller shall be entitled to all remedies available under Section 16 hereof. Purchaser agrees that Seller may withhold its consent with or without any reason or condition in any manner it chooses (if it gives it at all) and may charge Purchaser a reasonable amount to cover administrative costs incurred in considering whether or not to grant consent. If Seller desires to sell the Condominium before or during construction, Seller may assign or transfer Seller's interest in this Agreement, in the Deposit and in the non-refundable deposits or payments for options, extras and/or upgrades without Purchaser's consent. If the buyer of the Condominium assumes Seller's obligations contained in this Agreement, Seller will not be liable to Purchaser for any acts, omissions or defaults by the buyer of the Condominium.

28.    _Pre-paid Taxes, Fees and Charges_. Unless otherwise provided herein, Purchaser agrees that any taxes, fees or other charges paid by Seller to any governmental authority, utility company, or any other entity which at a later date are refunded in whole or in part, shall be returned to Seller in the event said refund is received by Purchaser. This Section shall survive the Closing and purchase of the Unit.

29.    _Persons Bound By This Agreement_. If Purchaser dies or in any way loses legal control of his/her affairs, this Agreement will bind his/her heirs and legal representatives. If Purchaser has received Seller's permission to assign or transfer this Agreement, then Purchaser's approved assignees shall be bound by the terms of this Agreement. If more than one person signs this Agreement as Purchaser, each such person shall be jointly and severally liable for full performance of all of Purchaser's duties and obligations hereunder.

30.    _Interpretation and Computation of Time_. The use of the masculine gender in this Agreement shall be deemed to refer to the feminine or neuter gender, and the singular shall include the plural, and vice versa, whenever the context so requires. This Agreement reflects the negotiated agreement of the parties, each represented by competent legal counsel, or by parties who chose not to be represented by counsel. Accordingly, this Agreement shall be construed as if both parties jointly prepared it, and no presumption against one party or the other shall govern the interpretation or construction of any of the provisions of this Agreement. Any reference in this Agreement to time periods of less than six (6) days shall, in the computation thereof, exclude Saturdays, Sundays and legal holidays. Any reference in this Agreement to time periods of six (6) days or more shall, in computation thereof, include Saturdays, Sundays and legal holidays. If the last day of any such period is a Saturday, Sunday or legal holiday, the period shall be extended to 5:00 p.m. on the next full business day.

31.    _Waiver_. Seller's waiver of any of its rights or remedies shall not operate to waive any other of Seller's rights or remedies or to prevent Seller from enforcing the waived right or remedy in another instance.

The Island Club at Coral Springs, a Condominium                    10                    **Purchaser's Initials** _____
v9

32.    Survival, Incorporation and Severability. All of the provisions and disclaimers in this Agreement are intended to have effect after the Closing and shall survive the Closing, unless expressly stated otherwise. The explanations and disclaimers set forth in the Condominium Documents are incorporated into this Agreement. In the event that any clause or provision of this Agreement shall be void or unenforceable, such clause or provision shall be deemed deleted so that the balance of this Agreement is enforceable. Without limiting the generality of the foregoing, if the mere inclusion in this Agreement of language granting to Seller certain rights and powers, or waiving or limiting any of Purchaser's powers or Seller's obligations (which otherwise would be applicable in the absence of such language), results in a final conclusion that Purchaser has a right to cancel this Agreement and receive a refund of his deposits, such offending rights, powers, limitations and/or waivers shall be struck, canceled, rendered unenforceable, ineffective and null and void. Under no circumstances shall either Purchaser or Seller have the right to cancel this Agreement solely by reason of the inclusion of certain language in this Agreement (other than language which is intended specifically to create such a cancellation right).

33.    Section Headings. The Section headings in this Agreement are for convenience only and shall not affect the meaning, interpretation or scope of the provisions which follow them.

34.    Florida Law. Any disputes that develop under this Agreement or questions regarding the interpretation of this Agreement will be settled according to Florida law to the extent federal law is not applicable.

35.    Entire Agreement. Purchaser certifies that Purchaser has read every provision of this Agreement and each addendum attached hereto and that this Agreement constitutes the entire agreement between Purchaser and Seller. This Agreement is the entire agreement for the sale and purchase of the Unit and once it is signed it can only be amended in writing. Prior agreements, representations, understandings, and oral statements not reflected in this Agreement have no effect and are not binding on Seller. Purchaser acknowledges that Purchaser has not relied on any representations, newspaper, radio or television advertisements, warranties, statements, or estimates of any nature whatsoever, whether written or oral, made by seller, sales persons, agents, officers, employees, co-operating brokers (if any) or otherwise except as herein specifically represented. Purchaser has based his/her decision to purchase the Unit on personal investigation, observation and the documents (including the Condominium Documents). Nothing contained in this Section 35 shall be deemed to limit or abridge any rights Purchaser may have under Section 718.506(1), Florida Statutes.

36.    Inducement. Purchaser acknowledges that the sole inducement to purchase the Unit is the Unit and not (i) the common facilities comprising part of the Condominium, if any, or (ii) any expectation that the Unit will increase in value.

37.    Time of the Essence. Purchaser acknowledges that time is of the essence in connection with this transaction.

38.    Notice. Except as provided in Section 13 with respect to notices of the scheduled date of Closing, any notice required or permitted to be given in connection with this Agreement shall be in writing and sent by United States certified mail with return receipt requested, professional overnight courier or telefax (with confirmation and copy by (i) certified mail if Purchaser's address is within the United States or (ii) overnight professional courier if to a Purchaser whose address is outside of the United States) to Purchaser or Seller at the addresses on Page 1 of this Agreement, and additionally to Seller by hand delivery at Seller's sales office. All notices shall only be effective upon receipt or refusal to accept receipt (by failure to accept delivery or otherwise).

39.    RADON GAS. This disclosure is required by Section 404.056 of the Florida Statutes. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

40.    Energy Rating. Pursuant to Section 553.996 of the Florida Statutes, Purchaser may request that Seller cause a State Certified Energy Rater to perform an energy efficiency rating on the Unit being purchased. Purchaser hereby releases Seller from any responsibility or liability for the accuracy or level of the rating and Purchaser understands and agrees that this Agreement is not contingent upon Purchaser approving the rating, that the rating is solely for Purchaser's own information and that Purchaser will pay the total cost of the rating. Purchaser hereby acknowledges the receipt of a brochure from The Florida Energy Gauge Program regarding Florida's Building Energy Rating System (the "**Energy Rating Brochure**").

41.    Selling Agent and Cooperating Broker. Unless a Cooperating Broker Addendum indicating otherwise is attached hereto, Purchaser represents to Seller that Purchaser has not consulted, dealt or negotiated with a real estate broker, salesperson or agent other than Seller's sales personnel located at Seller's sales office. Purchaser agrees that Seller is not responsible for the payment of a commission to a real estate broker, salesperson or agent other than Seller's sales personnel and Purchaser agrees to indemnify and hold Seller harmless from and against any and all loss and liability, including attorney's and paraprofessional's fees and costs at all levels, resulting from or arising out of any representation or breach of a representation or warranty set forth in this Section 41. Purchaser understands and agrees that this Section shall survive the Closing and the delivery of the Deed.

. **Purchaser's Initials**

42.    Counterparts and Telefaxed Signatures. This Agreement shall be validly executed when signed in counterparts. The effective time of the Agreement is the date and time when the last of the parties to sign executes this Agreement. Signatures may be given via telefax transmission and shall be deemed given as of the date and time of the transmission of this Agreement by telefax to the other party.

43.    Additional Changes. Purchaser agrees that it may be necessary (at any time and from time to time) after Purchaser executes this Agreement for Seller and/or Developer/Declarant under the Declaration to change the terms and provisions of this Agreement and/or the Condominium Documents to comply with and conform to the rules and regulations (as same may exist and as same may be promulgated from time to time) of any governmental agency or subdivision. In addition, Seller and/or Developer/Declarant under the Declaration shall have the right to amend all documents for development or other purposes as further set forth in the Condominium Documents.

44.    Clerical Errors. Purchaser agrees if requested by Seller, to fully cooperate in correcting any clerical errors as may appear in this Agreement.

45.    Condominium Documents. Purchaser acknowledges receipt of copies of those instruments and documents listed on the Receipt for Condominium Documents contained in the Prospectus for the Condominium (the "**Documents Receipt**"), all such documents, which are required to be furnished by Chapter 718 of the Florida Statutes (the "**Condominium Act**") (collectively the "**Condominium Documents**"), are incorporated into this Agreement by reference. The Purchaser agrees that occupancy of the Unit shall at all times be subject to the provisions of the Condominium Documents. Seller has delivered to Purchaser a full set of the Condominium Documents, and Purchaser shall execute the Documents Receipt in the form contained in the Prospectus. The Seller reserves the right, in its sole discretion, to amend any of the Condominium Documents, provided that a copy of such amendment is transmitted to Purchaser. Notwithstanding anything to the contrary contained herein, upon recordation of Condominium Documents, Seller shall only have the right to amend the Condominium Documents in accordance with

the Condominium Act. The Seller shall make available to Purchaser, for Purchaser's inspection at Seller's place of business that is convenient to the site, a copy of the complete set of Seller's plans and specifications for the construction of the Unit and the common elements appurtenant to the Unit. Notwithstanding any other provision herein to the contrary, if this Agreement is terminated for any reason whatsoever, Purchaser shall return to Seller all of the Condominium Documents delivered to Purchaser in the same condition received, reasonable wear and tear excepted, or Seller shall be entitled to charge One Hundred Dollars ($100.00) to Purchaser as a result of the termination, to defray Seller's costs and expenses resulting from the preparation, printing and delivery of the Condominium Documents. This Section shall survive the termination of this Agreement.

46.    **Resolution of Disputes.** EACH PURCHASER ACKNOWLEDGES THAT THIS AGREEMENT IS A SOPHISTICATED LEGAL DOCUMENT. ACCORDINGLY, JUSTICE WILL BEST BE SERVED IF ISSUES REGARDING THIS AGREEMENT ARE HEARD BY A JUDGE IN A COURT PROCEEDING, AND NOT A JURY. EACH PURCHASER AGREES THAT ANY DISPUTE (WHETHER CONTRACT, WARRANTY, TORT, STATUTORY OR OTHERWISE), INCLUDING, BUT NOT LIMITED TO, (A) ANY AND ALL CONTROVERSIES, DISPUTES OR CLAIMS ARISING UNDER, OR RELATED TO, THIS AGREEMENT, THE PROPERTY, OR ANY DEALINGS BETWEEN THE PURCHASER AND SELLER (WITH THE EXCEPTION OF "CONSUMER PRODUCTS" AS DEFINED BY THE MAGNUSON-MOSS WARRANTY-FEDERAL TRADE COMMISSION ACT, 15 U.S.C. §2301 ET SEQ., AND THE REGULATIONS PROMULGATED THEREUNDER); (B) ANY CONTROVERSY, DISPUTE OR CLAIM ARISING BY VIRTUE OF ANY REPRESENTATIONS, PROMISES OR WARRANTIES ALLEGED TO HAVE BEEN MADE BY SELLER OR SELLER'S REPRESENTATIVE; AND (C) ANY PERSONAL INJURY OR PROPERTY DAMAGE ALLEGED TO HAVE BEEN SUSTAINED BY PURCHASER ON THE UNIT OR IN THE CONDOMINIUM (HEREINAFTER INDIVIDUALLY REFERRED TO AS "DISPUTE" AND COLLECTIVELY REFERRED TO AS "**DISPUTES**"), CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE HEARD BY A JUDGE IN A COURT PROCEEDING AND NOT A JURY. SELLER HEREBY SUGGESTS THAT EACH PURCHASER CONTACT AN ATTORNEY IF SUCH PURCHASER DOES NOT UNDERSTAND THE LEGAL CONSEQUENCES OF EXECUTING THIS AGREEMENT.

47.    **Attorneys' Fees and Costs.** In the event that any litigation is commenced in connection with the enforcement or interpretation of this Agreement, the Unit or the application of laws or regulations to any aspect of this transaction, each party shall pay his/her/its own legal expenses and costs; provided that, in any action in which Purchaser claims a right of voidability based upon the contractual provisions as required by Section 718.503(1)(a), the prevailing party in such action shall be entitled to recover reasonable attorney's fees.

48.    **Venue.** Each Purchaser acknowledges that the Unit and Condominium is located in the County (identified on Page 1 of this Agreement). Accordingly, an irrebuttable presumption exists that the only appropriate venue for the resolution of any dispute lies in the County. In addition to the foregoing, each Purchaser and Seller agree that the venue for resolution of any dispute lies in the County.

49.    **Reservation of Easement.** For the purpose of completing the construction and servicing of the Unit, Seller hereby reserves an easement of ingress and egress for itself and its successors and assigns, and each of their respective agents, employees, materialmen and subcontractors, over, under and upon the Unit for a period of sixty (60) days after the Closing. Seller shall provide reasonable notice to Purchaser before exercising easement rights granted herein.

50.    **Construction Activities.** All owners, occupants and users of the Condominium are hereby placed on notice that there may be, from time to time, parties conducting blasting, excavation, construction and other activities in proximity to the Condominium. By the acceptance of the Deed or other conveyance or mortgage, leasehold, license or other interest, and by using any portion of the Condominium, each such owner, occupant and user automatically acknowledges, stipulates and agrees (i) that none of the aforesaid activities shall be deemed nuisances or noxious or offensive activities, hereunder or at law generally, (ii) not to enter upon, or allow their children or other persons under their control or direction to enter upon (regardless of whether such entry is a trespass or otherwise any property in proximity to the Condominium where such activity is being conducted (even if not being actively conducted at the time of entry, such as at night or otherwise during non-working hours), (iii) Seller and/or its agents, contractors, subcontractors, licensees, and other designees shall not be liable for any and all losses, damages (compensatory, consequential, punitive or otherwise), injuries or deaths arising from or relating to the aforesaid activities, except resulting directly from Seller's gross negligence or willful misconduct, (iv) any purchase or use of any portion of the Condominium has been and will be made with full knowledge of the foregoing and (v) this acknowledgment and agreement is a material inducement to Seller to sell, convey, and/or allow the use of the Unit.

51.    **Renovation Status.** Purchaser acknowledges that there may be ongoing renovations to the Common Elements and/or units after Closing. Purchaser acknowledges that Seller will not be obligated to give any reduction in the Total Purchase Price, or reimburse any expense, or place any funds in escrow due to ongoing renovations at the time of Closing. Purchaser acknowledges that the Condominium is complete and not subject to the Interstate Land Sales Full Disclosure Act.

52.    **CHAPTER 558 NOTICE OF CLAIM.** In accordance with Florida law, Seller provides Purchaser with the following notice: CHAPTER 558, FLORIDA STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY BRING ANY LEGAL ACTION FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR UNIT (HOME). SIXTY (60) DAYS BEFORE YOU BRING ANY LEGAL ACTION, YOU MUST DELIVER TO THE OTHER PARTY TO THIS AGREEMENT (CONTRACT) A WRITTEN NOTICE REFERRING TO CHAPTER 558 OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE SUCH PERSON THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND TO CONSIDER MAKING AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER WHICH MAY BE MADE. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THIS FLORIDA LAW WHICH MUST BE MET AND FOLLOWED TO PROTECT YOUR INTERESTS..

If Purchaser rejects any settlement offer made pursuant to such Florida law by Seller or other contractors, subcontractors, suppliers or design professionals hired by, through or under Seller or its affiliates (collectively, "**Protected Parties**"), and Purchaser elects to proceed with an action against one or more Protected Parties, Purchaser acknowledges that all provisions of this Agreement respecting such Disputes remain in full force and effect.

53.    **OFAC.** Executive Order 13224 requires all United States entities and persons to block assets and not transact business with entities, countries and persons (specifically designated nationals) set forth by the Office of Foreign Asset Control ("**OFAC**"). This requirement applies to Seller and its affiliates. Accordingly, Seller and each of its affiliates will check current OFAC lists and other publications in connection with each potential transaction, loan, or home sale. To the extent Purchaser (or any single person or entity constituting a part of Purchaser) matches a name or entity on any such OFAC list or publication, the transactions which Purchaser contemplated under or in connection with this Agreement will be immediately suspended, and Purchaser shall be reported as instructed by the OFAC.

54.    **Property Tax Disclosure.** BUYER [PURCHASER] SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER [PURCHASER] MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

55.    Not Binding. This Agreement shall not be binding on Seller until executed by an authorized agent or officer of Seller.

56.    Attachments. The following documents are attached to and form a part of this Agreement:

Check ☑ all that apply:

☑  Energy Rating Brochure
☑  Mold and Mildew Addendum
☐  Election Form Addendum
☐  Features List
☐  Cooperating Broker Addendum
☐  Copy of Lease Affecting Unit
☐  Copy of "A Guide to Purchasing a Condominium"
☑  Copy of "Condominium Living in Florida"
☐  _____
☐  _____
☐  _____
☐  _____

57.    FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND. Pursuant to Section 489.1425 of the Florida Statutes, Seller provides the following notice. PAYMENT MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR.  FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS: (850) 487-1395, 1940 N. MONROE ST., SUITE 60, TALLAHASSEE, FLORIDA 32399-2202.

The parties have hereunto affixed their respective hands and seals on the day and year set forth below next to their respective names.

PURCHASER:                                          PURCHASER:

x _Dee O_____                          _____

Name: _Donna Chinloy_____              Name: _____

Date: _2/28/06_____              Date: _____


PURCHASER:                                          PURCHASER:

_____                  _____

Name: _____                Name: _____

Date: _____                Date: _____


SELLER:

CORAL SPRINGS 84, LLC, a Florida limited liability company


By: _____

Name: _____

Title: _____

Date: _____

### SPECIAL ADDENDUM (ASSOCIATION ASSESSMENTS)

THIS SPECIAL ADDENDUM (ASSOCIATION ASSESSMENTS) (this "**Addendum**") is executed in conjunction with and, by this reference, incorporated into the Purchase and Sale Agreement (the "**Agreement**") dated as of the 30th _____ day of January _____, 20 06 _____ between Donna Chinloy _____ (collectively, "**Purchaser**") and Seller, as defined in the Agreement, respecting Unit 01 - 306 of The Island Club at Coral Springs, a Condominium.

### ADDITIONAL TERMS

1.    Defined Terms.  All initially capitalized terms not defined herein shall have the meanings set forth in the Agreement.

2.    Modifications to Agreement.  Purchaser and Seller hereby agree to the following additions, modifications, and/or supplements to the Agreement:

> Notwithstanding anything to the contrary contained in the Agreement, so long as Purchaser is the record owner of the Unit, Seller agrees to pay the monthly assessments payable to the Condominium Association ("**Assessments**"), as the same become due, for the period commencing as of the Closing date and terminating on the date that is one year from the Closing Date (the "**Payment Term**")(such final monthly assessment will be paid in full by Seller so that the subsequent full monthly assessment will be payable by Purchaser to Condominium Association).  In the event the Unit is conveyed to any other party during the Payment Term, Seller shall terminate paying the Assessments as of the last day of the month in which the conveyance occurs and Purchaser and/or the party to whom the Unit is conveyed shall be liable for all Assessments from the date of such conveyance and thereafter.

3.    Conflicts.  In the event of any conflict between this Addendum and the Agreement, this Addendum shall control.  In all other respects, the Agreement shall remain in full force and effect.

PURCHASER:                                                PURCHASER:

Name: _____Donna Chinloy_____                Name: _____
Date: _____2/28/06_____                          Date: _____


SELLER:

CORAL SPRINGS 84, LLC, a
Florida limited liability company

By:_____
    Name: _____
    Title: _____
    Date: _____

Optional Addendum

**ELECTION FORM AMENDMENT**

THIS ELECTION FORM AMENDMENT (this "**Amendment**") is executed in conjunction with and, by this reference, made part of the Purchase and Sale Agreement (the "**Agreement**") dated as of the 30th day of ___January___, 20 06 ___ between ___Donna Chinloy___

_____ (collectively, "**Purchaser**") and Seller, as defined in the Agreement respecting Unit _01 - 30_ of The Island Club at Coral Springs, a Condominium.

ADDITIONAL TERMS

1.    ___Defined Terms___.  All initially capitalized terms not defined herein shall have the meanings set forth in the Agreement.

2.    ___Title Insurance, Mortgage Loan and Closing Costs___.

    2.1    In accordance with Section 5 of the Agreement, by checking (☑) one of the boxes below and initialing below the selected text, Purchaser hereby selects the title company and lender, if any, Purchaser will use in connection with the purchase of the Unit.

        (1)    ☑    Purchaser elects to use both Advance and Title Company.

                **Purchaser's Initials** _____ _____

        (2)    ☐    Purchaser intends to purchase the Unit without any financing but elects to use Title Company.

                **Purchaser's Initials** _____ _____

        (3)    ☐    Purchaser elects to use a lender other than Advance or a title company other than Title Company.

                **Purchaser's Initials** _____ _____

    2.2    If Purchaser selects option (1) or (2) in Section 2.1 above, Seller will provide Purchaser with the Incentive Credit only if the election is made within the time period noted in Section 5 of the Agreement.  Regardless of whether Seller pays the Incentive Credit, Purchaser shall pay all loan and Closing Costs including, without limitation, the title search fee, title exam fee and settlement fee.

Mandatory Addendum if Option 3<br/>selected in Section 5.1 of Agreement



3.    Conflicts.  In the event of any conflict between this Amendment and the Agreement, this Amendment shall control.  In all other respects, the Agreement shall remain in full force and effect.

PURCHASER:                                          PURCHASER:

Name: _Donna Chinloy_____                          Name: _____

Date: _2/26/06_____                              Date: _____


SELLER:

CORAL SPRINGS 84, LLC, a
Florida limited liability company


By:_____

Name: _____

Title: _____

Date: _____

Mandatory Addendum if Option 3
selected in Section 5.1 of Agreement

## INVESTOR ADDENDUM

THIS INVESTOR ADDENDUM (this "**Addendum**") is executed in conjunction with and, by this reference, incorporated into the Purchase and Sale Agreement (the "**Agreement**") dated as of the _30th_ day of _January_____, 20 _06_ between _Donna Chinloy_____ _____ (collectively, "**Purchaser**") and Seller, as defined in the Agreement, respecting Unit _01 - 306_ of The Island Club at Coral Springs, a Condominium.

### ADDITIONAL TERMS

1.    Defined Terms.  All initially capitalized terms not defined herein shall have the meanings set forth in the Agreement.

2.    Modifications to Agreement.  Purchaser and Seller hereby agree to the following additions, modifications, and/or supplements to the Agreement:

  2.1.    Purchaser acknowledges that Purchaser is not purchasing the Home as Purchaser's primary residence.  As such, Purchaser acknowledges and agrees that Purchaser shall not sell the Home or put the Home on the market "for sale" including, without limitation, listing the Home on any multiple listing service, prior to the date that is the earlier of: (i) one (1) year from the Closing; or (ii) the date upon which Seller no longer holds any units in the Condominium for sale in the ordinary course of business.

  2.2.    In the event Purchaser breaches the foregoing covenant, in addition to any and all remedies available at law or equity, Seller shall be entitled to eighty percent (80%) of the difference between (i) the purchase price of the Home being sold to such new purchaser ("**New Purchaser**"), and (ii) the Total Purchase Price.  Such amount shall be paid to Seller within five (5) days of the closing on the Home with New Purchaser.

  2.3.    The foregoing shall be a covenant running with the land and shall be contained within the Deed to be delivered to Purchaser at Closing.

3.    Conflicts.  In the event of any conflict between this Addendum and the Agreement, this Addendum shall control.  In all other respects, the Agreement shall remain in full force and effect.

PURCHASER:                                    PURCHASER:

Name: _Donna Chinloy_____      Name: _____
Date: ___2/28/06_____      Date: _____

SELLER:

CORAL SPRINGS 84, LLC, a Florida
limited liability company


By:_____
  Name: _____
  Title: _____
  Date: _____


                                                          Optional Addendum

# The Island Club Condominium
# Repair Request

Date: _2-28-06_

Unit # _1-306_

Problem: _Replace Refrigerator,_
_Range, Diswasher._

_Per Alex Castellanos._

By: _Pablo_

Reply: _____

_____

_____

_____

_____

By: _____

# ACORD™ CERTIFICATE OF PROPERTY INSURANCE

**DATE** 07/02/2008

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| Seitlin<br>6700 North Andrews Avenue, Suite 300<br>Ft. Lauderdale, FL 33309<br>(954) 938-8788 | **COMPANIES AFFORDING COVERAGE** |

| INSURED | COMPANY A | Citizens Property Insurance Company |
|---|---|---|
| Island Club at Coral Springs Condominium Assoc.<br>c/o C/O GC Homes<br>14600 SW 136 Street<br>Miami, FL 33186 | COMPANY B | Great American Insurance Company |
| | COMPANY C | Harleysville Mutual Insurance Company |
| | COMPANY D | |

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | COVERED PROPERTY | LIMITS |
|---|---|---|---|---|---|---|
| A | X PROPERTY | CPP1019412 | 9/12/2007 | 9/12/2008 | X BUILDING | $ 8,025,500 |
| | CAUSES OF LOSS | | | | PERSONAL PROPERTY | $ |
| | X BASIC | | | | BUSINESS INCOME | $ |
| | BROAD | | | | EXTRA EXPENSE | $ |
| | SPECIAL | | | | BLANKET BUILDING | $ |
| | EARTHQUAKE | | | | BLANKET PERS PROP | $ |
| | FLOOD | | | | BLANKET BLDG & PP | $ |
| | X RC, 100% CoIns. | | | | X AOP Deductable | $ 1,000 |
| | X 3% Wind/Hail Ded | | | | | |
| | INLAND MARINE | | | | | $ |
| | TYPE OF POLICY | | | | | $ |
| | | | | | | $ |
| | CAUSES OF LOSS | | | | | $ |
| | NAMED PERILS | | | | | $ |
| | OTHER | | | | | $ |
| B | X CRIME | 38-21-3230 | 05/24/2008 | 05/24/2009 | X Employee Theft | $ 250,000 |
| | TYPE OF POLICY | | | | X Deductable | $ 2,500 |
| | Blanket | | | | X Forge/Alter | $ 250,000 |
| | BOILER & MACHINERY | | | | | $ |
| | | | | | | $ |
| | X OTHER<br>Flood | See Below | 05/31/2008 | 05/31/2009 | Location 1<br>Location 2<br>Location 3 | 2,000,000<br>4,000,000<br>2,000,000 |

### LOCATION OF PREMISES/DESCRIPTION OF PROPERTY
DONNA CHINLOY, 9000 NW 28TH DR UNIT 1306, CORAL SPRINGS, FL 33065
Policy #87027564182008- Location 1 - 9000 NW 28th Drive, Coral Springs, Florida
Policy #87027564242008- Location 2 - 9022 NW 28th Drive, Coral Springs, Florida
Polciy #87027564272008- Location 3 - 9044 NW 28th Drive, Coral Springs, Florida

### SPECIAL CONDITIONS/OTHER COVERAGES
This certificate provides proof of insurance only and the Certificate Holder has no interest in the Named Insured's policy(ies).

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| GMAC MORTGAGE DBA, DITECH<br><br>., LA 00000<br>Loan Number: 59010000601506083 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.<br>AUTHORIZED REPRESENTATIVE |

ACORD 24 (1/95)    © ACORD CORPORATION 1995

458858

# ACORD™ CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 07/02/2008

| PRODUCER | | |
|---|---|---|
| Seitlin | | |
| 6700 North Andrews Avenue, Suite 300 | | |
| Ft. Lauderdale, FL 33309 | | |
| (954) 938-8788 | | |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Mount Hawley Insurance Company | 37974 |
| INSURER B: | |
| INSURER C: | |
| INSURER D: | |
| INSURER E: | |

**INSURED**
Island Club at Coral Springs Condominium Assoc.
c/o C/O GC Homes
14600 SW 136 Street
Miami, FL 33186

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY | MGL0151008 | 07/25/2007 | 07/25/2008 | EACH OCCURRENCE | $ 1,000,000 |
| | X | COMMERCIAL GENERAL LIABILITY | | | | DAMAGE TO RENTED PREMISES (Ea occurence) | $ 50,000 |
| | | CLAIMS MADE X OCCUR | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | $ Excluded |
| | | AUTOMOBILE LIABILITY | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | ANY AUTO | | | | BODILY INJURY (Per person) | $ |
| | | ALL OWNED AUTOS | | | | | |
| | | SCHEDULED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS | | | | | |
| | | NON-OWNED AUTOS | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | ANY AUTO | | | | OTHER THAN EA ACC | $ |
| | | | | | | AUTO ONLY: AGG | $ |
| | | EXCESS/UMBRELLA LIABILITY | | | | EACH OCCURRENCE | $ |
| | | OCCUR CLAIMS MADE | | | | AGGREGATE | $ |
| | | | | | | | $ |
| | | DEDUCTIBLE | | | | | $ |
| | | RETENTION $ | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | WC STATU-TORY LIMITS OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| | | OTHER | | | | | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**
DONNA CHINLOY, 9000 NW 28TH DR UNIT 1306, CORAL SPRINGS, FL 33065
This certificate provides proof of insurance only and the Certificate Holder has no interest in the Named Insured's policy(ies).

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| GMAC MORTGAGE DBA, DITECH ., LA 00000 Loan Number: 59010000601506083 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2001/08)**   © ACORD CORPORATION 1988

## TITLE COMPANY OF FLORIDA, LLC
### ATTORNEY OWNED AND OPERATED
1666 KENNEDY CAUSEWAY, SUITE 302
NORTH BAY VILLAGE, FLORIDA 33141
PHONE: (305) 861-4034 FAX: (305) 861-8012

June 30, 2006

**VIA FEDEX**

Donna Chinloy
2672 N.W. 124th Avenue
Coral Springs, Florida 33065

Re:    **Borrower: Chinloy**
       **Loan Number: 601506083**
       **Property Address: 9000 N.W. 28th Drive, Unit 1-306, Coral Springs, Florida 33065**

Dear Mr. and Mrs. Corbin:

In connection with the above referenced matter, enclosed please find:

-    One (1) original Owner's Title Policy;

-    One (1) original Special Warranty Deed; and

-    One (1) original HUD-1 Settlement Statement.

Should you have any questions regarding the enclosed documents, please do not hesitate to contact us. Thank you.

Sincerely,

Avi Tryson

Enclosures

LAW OFFICES

# Bruce Hornstein, P.A.

A PROFESSIONAL ASSOCIATION
317 SEVENTY-FIRST STREET
MIAMI BEACH, FLORIDA 33141
OFFICE :( 305) 865-4311 FAX: (305) 866-7506
E-MAIL: bhornstein@hornsteinpa.com

February 13, 2013

**Via Certified Mail, Return Receipt Requested**
Donna Chinloy and Crystal Lee Chinloy
9000 NW 28 Drive, Apt 1-306
Coral Springs, FL 33055

Donna Chinloy and Crystal Lee Chinloy
2672 NW 124 Ave.
Coral Springs, Florida 33065

**Re: THE ISLAND CLUB AT CORAL SPRINGS CONDOMINIUM ASSOCIATION, INC. Unit No. 1-306**
**Delinquent maintenance and/or assessments**

Dear Donna Chinloy and Crystal Lee Chinloy:

We have been retained by The Island Club at Coral Springs Condominium Association, Inc. (hereinafter "Association") to collect an open balance for your failure to pay maintenance/assessments due to the Association. Pursuant to your Declaration, By-Laws, and/or Florida law, you are additionally responsible for all costs of collection, including attorney's fees and costs.

Please be advised that if this delinquent amount is not fully satisfied within thirty (30) days from the date of this letter, a Claim of Lien for all monies due, including any additional assessments and late fees which may be then due, will be filed against your unit without further notice. Should you desire a payment plan, it will be your responsibility to send us a written offer within thirty (30) days. Understand that an offer of a payment plan shall <u>not</u>, however, delay the placement of a lien (and <u>will</u> result in additional charges to you.)

Please be advised of the following collection practices approved by your Association:

    1.)    Until your account is paid in full, all payments (past due and continuing) <u>must</u> be sent to and made payable to: Bruce Hornstein, P.A.. Any monies sent directly to the Association may be returned to you or deposited by us. In either event, we <u>will</u> continue with our next collection procedure and any monies received will first be applied to the collection charges.

2.)  All communications <u>must</u> be in writing and directed to Bruce Hornstein, P.A.. Do NOT call or write the Association or to the management company. Our fax no. is (305) 866-7506: Attention: Bruce Hornstein

3.)  No further notice will be given before we place the lien against your unit.

Subsequent to the recorded Lien, we will then seek to foreclose the lien against your unit. The foreclosure proceeding will be very costly to you and it is in your best interest to satisfy the Lien prior to such time.

## AMOUNT DUE THROUGH FEBRUARY 28, 2013

| | |
|---|---|
| Open Balance with Association | $13,813.18 |
| Costs of Collections to date | $250.00 |
| Accrued Interest (1.5% per month) | $5,590.85 |
| **Total Amount Due:** | **$19,654.03** |

Please be advised that all payments tendered subsequent to the date of this letter shall be first applied to pursuant to Florida Statutes Chapter 718 to any interest accrued by the Association, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment.

**Please remit your check in the full amount as indicated above made payable to:**

**Bruce Hornstein, P.A., Trust Account**

Very truly yours,

Bruce H. Hornstein, Esq.
BHH/cg

CC: The Island Club at Coral Springs Condominium Association, Inc..

Please be advised that this debt will be assumed to be valid unless you dispute the validity of the amount due as set forth above, or any portion thereof, in writing, within thirty (30) days of your receipt of this letter. If you notify the undersigned in writing within the thirty (30) day period that the amount due, or any portion thereof, is disputed, we will obtain a verification of the amount from the Association and a copy of said verification will be mailed to you. Upon your request within the thirty (30) day period, we will additionally provide you with the name and address of the original creditor, if different from the current creditor. If you request proof of the debt or the name and address of the original creditor within the thirty (30) day period, the law requires that we suspend our efforts to collect the debt until the requested information is mailed to you. This law firm is a debt collector, the purpose of this letter is to collect a debt and any information obtained will be used for that purpose only.

The Island Club at Coral Springs Condominium Association, Inc. / Unit 1-306

## Second Notice of Annual Meeting and Election of Board Members
### of
## The Island Club at Coral Springs Condominium Association, Inc.
## A Not-for-Profit Corporation

To all Members,

The Annual Meeting of the Condominium Association will be held as follows:

**Place: Denny's Restaurant**
         **3124 N. University Drive**
         **Coral Springs, FL 33065**
**Date: Thursday, April 14, 2011**
**Time: 7:00 P.M.**

The purpose of this Notice is to remind you of the date, time and place of the Annual Meeting and Election and to specify the agenda. Since the number of candidates to the board of directors is equal or less than those required by the bylaws, elections will not be necessary.

**Agenda**

I.     **Association Turnover**

       a.  **Turnover of all association property**

       b.  **Election of the Board Members**

II.    **Miscellaneous Issues/Comments/Questions**

This notice is being sent in compliance with Chapter 718.112(2)(d)(3) of the Florida Statutes.

<u>**NOTICE**</u>

**March 12, 2013**

**Law Offices
Bruce Hornstein P.A
317 Seveny-First Street
Miami Beach, Fl. 33141
Office: 305 865-4311**

**Donna and Crystal Chinloy
9000 Nw 28th Drive, Unit 1-306
Coral Springs, Fl. 33065
954-899-1961**

Mr Hornstein and Ms. Romanello:

In response to your letter dated February 13, 2013;
Re: The Island Club at Coral Springs Condominium Association.
      Unit 1-306 Assessment fees

First, Initially I assumed that you were the Attorney of record in the pending Foreclosure litigation. The Court record show that you are not the Attorney of record for the Island Club of Coral Springs Condominium Association.

I will communicate with the "Association" regarding Unit 1-306 Bankruptcy filing and proper proof of Debt.

Second, I will gladly communicate with you in the future upon proper notice of appearance as Attorney of Record for the Island Club of Coral Springs Condominium Association.

A copy of this notice will be sent via US mail.

Regards,

Donna and Crystal Chinloy

04/06/06 THU 17:16 FAX 3055954179          ADVANCE CAPITAL SERVICES          ☒ 019

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

| Borrower | Co-Borrower |
|---|---|

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA ☒ Conventional ☐ USDA/Rural Housing Service ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| Amount $ 156,800 | Interest Rate 6.875 % | No. of Months 360/360 | Amortization Type: ☐ Fixed Rate ☐ GPM ☐ Other (explain): ☒ ARM (type): 5/1 Int. Only |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 9000 NW 28 Drive #306, Coral Springs, FL 33065   County: Broward | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) | Year Built 1985 |

| Purpose of Loan | ☒ Purchase ☐ Construction ☐ Refinance ☐ Construction-Permanent ☐ Other (explain): | Property will be: ☐ Primary Residence ☐ Secondary Residence ☒ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Donna Chinley | Manner in which Title will be held | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
Checking/Savings

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | Donna Chinley | |
| Social Security Number | ▓▓-9492 | |
| Home Phone (incl. area code) | 954-298-1079 | |
| DOB (mm/dd/yyyy) | 04/22/1965 | |
| Yrs. School | | |
| Marital status | ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated |
| Dependents (not listed by Co-Borrower) | no. 3   ages | no.   ages |
| Present Address (street, city, state, ZIP) | ☒ Own ☐ Rent 3 No. Yrs. 2872 NW 124 Ave Coral Springs, FL 33065 | ☐ Own ☐ Rent No. Yrs. |
| Mailing Address, if different from Present Address | | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent No. Yrs. |
|---|---|---|---|
| Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) | ☐ Own ☐ Rent No. Yrs. |

Fannie Mae Form 1003   07/05
CALYX Form Loanap01.frm 09/05

Page 1 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05