UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | IN PROCEEDINGS |
| | ) | UNDER CHAPTER 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | |
| | ) | BK No: 12-12020 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

_____)

## NOTICE OF MOTION FOR RELIEF FROM STAY

Moving Party: John and Maria Garcia

Date and Time: April 30, 2013, at 10:00 a.m.

Place: Hon. Martin Glenn
One Bowling Green
New York, NY 10004-1408
Courtroom: 501

Supporting Papers: Motion for Relief from Automatic Stay, dated April 2, 2013; Memorandum of Law dated April 2, 2013.

Answering Papers: Answering papers, if any, are required to be served to ensure actual receipt not later than seven days prior to the return date pursuant to Local Bankruptcy Rule 9006-1.

Relief Requested: An order granting John and Maria Garcia relief from the automatic stay imposed by 11 U.S.C. § 362 to permit them to pursue certain claims including but not limited to the consolidation of their Wrongful Foreclosure Action, *Case No. INC 1300675 filed on or about January 29, 2013 with the  Plaintiff's Unlawful Detainer Action, *Case No. INC 1300816 filed against the Movants on February 5, 2013.

*Superior Court of the state of California, County of Riverside

Grounds for Relief: 11 U.S.C. § 362, Federal and Local Bankruptcy Rule 4001.
Dated: April 2, 2013
New York, New York

PANTANO & GUPTA, LLC
Attorneys for the Plaintiffs
By: Sapna Gupta

/s/ Sapna Gupta

_____

Sapna Gupta, Esq.
Pantano & Gupta, LLC
136 Madison Avenue, Floor 6
New York, NY 10016
(212) 208-1438


TO: Honorable Martin Glenn
United States Bankruptcy Court Judge
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Residential Capital, LLC
aka Residential Capital Corporation
Debtor, Case # 12-12020
1177 Avenue of the Americas
New York, NY 10036
NEW YORK-NY

ATTORNEYS FOR DEBTOR:

Anthony Princi, Joel C Haims, Kayvan B. Sadeghi, Larren M. Nashelsky, Lorenzo Marinuzzi,
Norman Scott Rosenbaum, Stefan W. Engelhardt, Todd M. Goren
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

Gary S. Lee
Morrison & Foerster LLP
1290 Avenue of the Americas
40th Floor
New York, NY 10022

Lorraine S. McGowen
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019

Steven J. Reisman
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

Yvette R Freedman
John Peter Lee
830 Las Vegas Boulevard South
Las Vegas, NV 89101

Marlene Camacho Nowlin, Esq.
Severson & Werson
19100 Von Karman Avenue, Suite 700
Irvine, CA 92612

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| In re: | ) | IN PROCEEDINGS |
|  | ) | UNDER CHAPTER 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |  |
|  | ) | BK No: 11-15463-shl |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

_____)

## MOTION FOR RELIEF FROM STAY

John Garcia and Maria Garcia (the "Movants"), by and through their counsel, Pantano &

Gupta, LLC, respectfully submit this motion (the "Motion") requesting this Court, pursuant to 11

U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001(a)(1), and Local Rule 4001-1 to terminate or

alternatively, modify the automatic stay to permit the Movants to prosecute their lawsuit

pending in the Superior Court of the State of California, County of Riverside, against GMAC

MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, as a subsidiary of RESIDENTIAL

CAPITAL LLC, (the "Debtors"), or in the alternative, to stay the Debtors action for Unlawful

Detainer filed against the Movants for the reasons set forth below.  The Debtors were the

mortgagee of the Movants for their primary residence located at: 80636 Jasmine Lane, Indio,

CA 92201-5238.

PROCEDURAL HISTORY

1.  The Debtors filed for Bankruptcy on May 14,2012, and the case is being jointly

administered.

2.  The Movants filed a Wrongful Foreclosure Action, Case No. INC 1300675, on or about

January 29, 2013.   The action is pending in the Superior Court of California, County of Riverside.

see Movants' Complaint for Wrongful Foreclosure, dated January 29, 2013, attached hereto as

Exhibit A.

3. The Debtors, then, filed an Unlawful Detainer Action against the Movants, Case No.

INC 1300816 on or about February 5, 2013.   The Movants filed an Answer, and the case is

pending in the Superior Court of California, County of Riverside.  see Debtors' Complaint for

Unlawful Detainer, dated February 5, 2013, attached hereto as Exhibit B.

4. The Movants filed a Motion to Consolidate the above cases, and to stay the

Debtors' Unlawful Detainer action on or about March 12, 2013.  see Motion to Consolidate,

dated March 12, 2013, attached hereto as Exhibit C.

5. The Hearing on the Movants Motion to Consolidate was held on March 22, 2013, and

the State Court ruled that the Movants are prevented from proceeding with their prosecution

in the absence of an order from this Court lifting the automatic stay, and pursuant to

subsequent Supplemental Order, dated July 13, 2012.

## JURISDICTION

6. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1334, 11 U.S.C.

§§362(d)(1) and (2), Federal Rules of Bankruptcy Procedure 4001(a) and 9014, and Venue of

this case and motion in this district is proper pursuant to 28 U.S.C. §§1408, and 1409.

## FACTUAL BACKGROUND

7. On or about December 6, 2002, Movants purchased their home with a mortgage

from Decision One Mortgage Company, LLC.  In May 2006, the Movants refinanced their home

with a loan from Greenpoint in the amount of $327,000.00 which was later assumed by GMAC. see Declaration of Maria Garcia, dated February 26, 2013, attached hereto as Exhibit D.

8.    Movants faithfully and timely remitted their monthly payments between May 2006 through June 2010 at which time they experienced financial hardship.  Mrs. Garcia's hours were reduced at work because of the economic downturn, and the Movants were no longer able to afford their mortgage payments. *see* Exhibit D.

9.    The Movants contacted GMAC for loan modification, and representatives from GMAC continuously assured them that while they were in the process of modification, foreclosure would not commence.  The representative indicated that the Movants would be afforded a temporary payment plan as a part of the modification process.

10.    From August 2010 through May 2011, Movants timely submitted requested documents to GMAC in order to obtain a modification of their mortgage.

11.    At some time during the modification process, the Movants' financial hardship ended, and they notified Debtors that they would begin to make the regular payments again. However, GMAC responded by recording a Notice of Default on January 14, 2011 and Notice of Trustee's Sale on April 22, 2011.

12.    Movants, then, in order to save their home from foreclosure, filed for Chapter 13 Bankruptcy.  Their Plan included the regular monthly mortgage payments plus partial arrears, which the Movants paid timely each month from June 2011-December 2012.  *see* Exhibit D.

13.    In spite of accepting eighteen months of payments, Debtors recorded a second Notice of Default on October 26, 2012 and scheduled and conducted a Trustee's Sale on December 28, 2012 under the authority of the initial Notice of Default dated January 14, 2011.

14.    The Sale took the Movants by complete surprise as they relied upon the assurances of GMAC representatives indicating that no foreclosure would occur without a review of the Movants' mortgage assistance.  *see* Exhibit D.

15.    Proceeding with the Trustee's Sale under the authority of the January 14, 2011 Notice was unlawful because Debtors did accept eighteen months of payments thereafter. Additionally, as payments on the balance as well as arrearages were accepted, the January 2011 Notice was no longer an accurate basis for the later notice and sale in December 2012.

16.    Movants paid their monthly mortgage plus a portion of arrears until December 2012 when instead of discussing the options for mortgage assistance, Debtors steamrolled the Movants into foreclosure.   Debtor's refusal to acknowledge eighteen months of payments, is indicative of their bad faith.

17.    Debtors breached their obligations and promises to Movants continuously, and Movants suffered the loss of their home in the Trustee's Sale.

18.    Representations made to the Movants by the Debtors were false and fraudulent.

19.    The Debtors violated federal and numerous California State Laws.  Movants' allegations asserted in their Complaint filed on January 29, 2013 are based on the Debtors Fraud, deceit, and Wrongful Foreclosure pursuant to California Civil Code 2923.5, 2923.6, and 2923.7, Promissory Estoppel, Negligence and Violations of Business and Professional Code Section 17200 as well as violations of Federal HAMP and FDIC guidelines.  see Movants' Complaint, attached hereto as Exhibit A.

20.    The Debtors' subsequent action for Unlawful Detainer is in retaliation to the Movants action for Wrongful Foreclosure and is not subject to any stay.  The Unlawful Detainer

action was filed only six days after the Movants filed their Wrongful Foreclosure action against

the Debtors in an effort to suppress and frustrate the purpose of the Movants' action.

DISCUSSION

Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n request of  a

party in interest and after notice and a hearing, the court shall grant relief from the stay [. . .]

(1) for cause, including the lack of adequate protection of an interest in property of such party

in interest [. . . .]" 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not, however, define the

phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition

litigation, courts consider the following factors (the "Sonnax Factors"):

(1) whether relief would result in a partial or complete resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary,

(4) whether a specialized tribunal with the necessary expertise has been established to

hear the cause of action,

(5) whether the debtor's insurer has assumed full responsibility for defending the

action,

(6) whether the action primarily involves third parties,

(7) whether litigation in another forum would prejudice the interests of other creditors,

(8) whether the judgment claim arising from the other action is subject to equitable

subordination,

(9) whether movant's success in the other proceeding would result in a judicial lien

avoidable by the debtor,

(10) the interests of judicial economy and the expeditious and economical resolution of

litigation,

(11) whether the parties are ready for trial in the other proceeding and

(12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280,

1286 (2d Cir. 1990); In re New York Medical Grp., PC, 265 B.R. 408, 413 (Bankr. S.D.N.Y.

2001). Not all of the Sonnax Factors are relevant in every case, and "cause" is a broad and

flexible concept that must be determined on a case-by-case basis.  Spencer v. Bogdanovich (In

re Bogdanovich), 292 F.3d 104, 110 (2d Cir. 2002) (citing Mazzeo v. Lenhart (In re Mazzeo), 167

F.3d 139, 143 (2d Cir. 1999)). at 10 In a request for stay relief, the moving party bears the initial

burden to demonstrate that  "cause" exists to lift the stay. See Sonnax, 907 F.2d at 1285;

Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997)

The Movants assert that sufficient cause exists in this case to lift the stay.  Here, the Debtors

have filed an Unlawful Detainer action against the Movants, seeking possession of the property

in dispute.  The Movants, however, have asserted that the subject foreclosure sale conducted

on December 28, 2012, by the Debtors was conducted in bad faith, and in violation of several

Federal and California State Laws.  The Movants' occupancy of the Property is predicated upon

their assertions in their State action against the Debtors.  Therefore, allowing the Debtors to

proceed with their Unlawful Detainer Action, while staying the Movants' action for wrongful

foreclosure, will gravely prejudice the Movants in this case.  The Movants are prepared to post

a reasonable rent for the use and occupancy of the property pending the Bankruptcy case.  The

Debtors consent to this Court's jurisdiction of the cases.

Additionally, relief from the stay may result in resolution of the issues.  By affording the Movants to properly defend themselves from the impending Unlawful Detainer and allowing them to proceed with their Wrongful Foreclosure Action concurrently, negotiation between the parties and/ or a fair and equitable resolution of the cases may result.

Hearing the Movants' Wrongful Foreclosure action concurrently with the Debtors' Unlawful Detainer action, whether the actions be heard by this Court or in the Superior Court of California, will preserve the interests of judicial economy and the expeditious and economical resolution of litigation.  The facts of one case and defenses of the other case are similar and dependent on each other including: (1) the identity of the issues, procedures, and parties, before the Court; (2) the Convenience of the Court and of the parties; and, (3) the avoidance of duplicative and possibly inconsistent adjudications.

Failure to lift the automatic stay, will result in eviction of the Movants from their home and will cause irreparable harm to the Movants before granting them the chance to be heard regarding the same matter in state Court.  Therefore, the harm imposed on the Movants will greatly exceed the benefit that the Debtors will derive from avoiding litigation of the Movants' state Court action.

While the Movants consent to jurisdiction of this Court, they assert that Superior Court of the State of California may be the proper venue for the Movants' and the Debtors' State Court actions as: primarily state law is at issue, the property in dispute is located in the State of California, the Movants seek equitable relief in addition to damages, and the claims are unrelated to the main bankruptcy case.

<u>RELIEF SOUGHT</u>

The Debtors consent to post a reasonable rent for the use and enjoyment of the Property

pending a determination of the Bankruptcy case.

No prior similar relief has been requested in this case.

WHEREFORE, The Debtors respectfully request an Order vacating the Automatic Stay in

order to prosecute their Wrongful Foreclosure action.

Dated: April 2, 2013
New York, New York

Respectfully Submitted,

PANTANO & GUPTA, LLC
Attorneys for the Plaintiffs
By: Sapna Gupta

/s/Sapna Gupta
_____
Sapna Gupta, Esq.
Pantano & Gupta, LLC
136 Madison Avenue, Floor 6
New York, NY 10016
(212) 208-1438

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|   |   |   |
|---|---|---|
| In re: | ) | IN PROCEEDINGS |
|  | ) | UNDER CHAPTER 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | ) |  |
|  | ) | BK No: 11-15463-shl |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
| _____) |  |  |

I, Sapna Gupta, attorney for the Movants John and Maria Garcia, hereby affirm that I have read the above Motion for Relief of the Automatic Stay submitted by the Movants and I am familiar with the contents therein.  I affirm that all of the content is true and accurate to the best of my knowledge, and that this Verification is not made by the Movants as they reside in the State of California, County of Riverside.

Dated: April 2, 2013
New York, New York

/s/ Sapna Gupta
_____

Sapna Gupta, Esq.
Pantano & Gupta, LLC
136 Madison Avenue, Floor 6
New York, NY 10016

EXHIBIT A

LAW OFFICES OF ART HOOMIRATANA
ART HOOMIRATANA (CA SBN 247253)
Email: arthoomiratana@realestatelawcenter.org
REAL ESTATE LAW CENTER
Email: litigationsupport@realestatelawcenter.org
750 East Green Street, Suite 333
Pasadena, California 91101
Telephone: (888) 688-4770
Facsimile: (888) 848-4570

Attorney for Plaintiffs,
JOHN GARCIA
MARIA GARCIA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| JOHN GARCIA<br>MARIA GARCIA,<br><br>          Plaintiffs,<br><br>     vs.<br><br>GMAC MORTGAGE LLC; and DOES 1-<br>100, Inclusive,<br><br>          Defendants. | **Case No:**<br><br>**COMPLAINT FOR:**<br><br>1.  **FRAUD AND DECEIT**<br>2.  **QUIET TITLE AND SET ASIDE WRONGFUL FORECLOSURE**<br>3.  **CANCELLATION OF TRUSTEE'S SALE**<br>4.  **CANCELLATION OF TRUSTEE'S DEED UPON SALE**<br>5.  **WRONGFUL FORECLOSURE IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION § 2923.5**<br>6.  **WRONGFUL FORECLOSURE IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION § 2923.6**<br>7.  **WRONGFUL FORECLOSURE IN VIOLATION OF CALIFORNIA CIVIL CODE SECTION § 2923.7**<br>8.  **PROMISSORY ESTOPPEL**<br>9.  **NEGLIGENCE**<br>10. **NEGLIGENT MISREPRESENTATION**<br>11. **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, et seq.** |

**COMPLAINT**

Plaintiffs, JOHN GARCIA and MARIA GARCIA, allege herein as follows:

## GENERAL ALLEGATIONS

1.      Plaintiffs, JOHN GARCIA and MARIA GARCIA, are and at all times relevant were, *sui juris* and the rightful and lawful owners of that certain real property located in the County of Riverside, State of California, and commonly known as:  80636 Jasmine Lane, Indio, California 92201 (the "Subject Property").

## DEFENDANTS

2.      Defendant, GMAC MORTGAGE, LLC (hereinafter referred to as "GMAC"), was at all times relevant to this action a corporate entity organized under the Laws of the State of Delaware with a principal place of business of 1100 Virginia Drive, Fort Washington, Pennsylvania 19034.  At all times relevant in this action, Defendant GMAC purported to be authorized to conduct business within the State of California and, in fact, conducted business within the County of Riverside on a regular basis.  This Defendant has registered with the Secretary of State of California that its agent for service of process is CSC LAWYERS INCORPORATING SERVICE, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

3.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants, and all other unknown persons claiming any legal or equitable right, title, estate, lien or interest in the Subject Property adverse to Plaintiffs' title, or any cloud on Plaintiffs' title thereto, by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities when ascertained.

**COMPLAINT**

4.      Plaintiffs are informed and believe and based thereon allege that at all times herein mentioned, each of the Defendants sued herein were the agents, employees, partners, co-conspirators, successors or predecessors in interest, and employers of the remaining Defendants, and in doing the things herein after alleged, were acting within the purpose and scope of such agency, employment, and/or conspiracy.  Plaintiffs are further informed and believe and based thereon allege that the acts and conduct herein alleged of each such Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

5.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## CONSPIRING OFFICERS, EMPLOYEES AND AGENTS OF DEFENDANTS

6.      Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs as alleged herein.  In taking action to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings, as alleged herein, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

7.      Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise and a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise, and common course of

_____
**COMPLAINT**

conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful conduct, acts include, inter alia, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct complained of herein.

8.      This action arises out of the worst economic crises since the Great Depression. The implosion of the real estate market is at the center of the crisis. It has created a frenzy among lenders and Servicers, such as GMAC, to foreclose on as many properties as possible. It has come to light that, in their quest to foreclose on properties as quickly as possible, GMAC and other lenders and Servicers have been acting outside of the law in their foreclosure practices.

9.      Ever since, the national press reported stories of numerous illegalities in the policies, practices and procedures of GMAC, other lenders and Servicers and their employees and agents retained to process foreclosures. Evidence is overwhelming that GMAC and other lenders and Servicers have been acting outside of the law since this crisis began. This action is a prime example of GMAC and their agents' wrongful and illegal conduct in their greed for properties and fees at any cost without any regard for the rights of homeowners and borrowers.

## JURISDICTION AND VENUE

10.      Pursuant to Code of Civil Procedure Section 392(a), venue is proper in this County because the Subject Property is located here. Further, the transactions occurred within

---

**COMPLAINT**

this County, the events transpired within this County, the parties and witnesses reside within this

County, the evidence, including Defendants' business records, are located within this County,

and the Defendants regularly conduct business within this County.

11.    Defendants engaged in business within the State of California related to the events

which give rise to the instant lawsuit.  The subject events transpired within the State of

California, GMAC corresponded with Plaintiffs via mail with addresses within the State of

California, hence GMAC has "sufficient minimum contacts" with the State of California such

that this Court's exercise of personal jurisdiction over GMAC herein "[does] not offend

traditional notions of fair play and substantial justice."[1]

### HOME AFFORDABLE MODIFICATION PROGRAM (HAMP)

12.    On February 18, 2009, pursuant to their authority under the Emergency Economic

Stabilization Act of 2008, the U.S. Treasury Secretary and the Director of the Federal Housing

Finance Agency announced the MAKING HOME AFFORDABLE ("MHA") program.  The

MHA program consists of two subprograms: the first is referred to as HOME AFFORDABLE

REFINANCE PROGRAM ("HARP") and the second is referred to as HOME AFFORDABLE

MODIFICATION PROGRAM ("HAMP").  The latter is the program at issue in this case.

13.    HAMP is funded by the Federal Government, primarily with Troubled Asset

Relief Program ("TARP") funds.  The U.S. Department of Treasury has allocated at least $75

billion to HAMP, of which at least $50 billion is TARP money.  Because GMAC accepted

federal funds and additional loan guarantees, it is required to participate in HAMP for any loans

on which it functions as "Servicer."  GMAC acted as Servicer for the subject loan.  In addition,

---

[1] *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

### COMPLAINT

GMAC signed an AMENDED AND RESTATED COMMITMENT TO PURCHASING

FINANCIAL INSTRUMENTS AND Servicer PARTICIPATION AGREEMENT, agreeing to

participate in HAMP and abide by all HAMP directives and guidelines.  A copy of this

agreement is attached as **EXHIBIT A**.

<u>**THE SERVICER PARTICIPATION AGREEMENT (SPA)**</u>

14.    The Servicer PARTICIPATION AGREEMENT ("SPA") mandates that a

participating Servicer "shall perform" the activities described in the Program Documentation

"for all mortgage loans it services." (*See* SPA Section 2 (A), page 3).

15.    The Program Documentation requires participating Servicers to (1) evaluate all

loans which are 60 or more days delinquent or appear to be in imminent default (as defined by

Program Documentation), and (2) determine which loans meet HAMP eligibility criteria.  In

addition, participating Servicers must collect income and hardship information to determine if

borrowers are eligible for HAMP loan modifications.  HAMP loan modifications consist of two

stages; first, participating Servicers are required to gather information and, if appropriate, offer

homeowners a Trail Period Plan ("TPP"), and second, <u>upon successful completion of a TPP,</u>

<u>participating Servicers must offer homeowners permanent loan modifications</u>.

16.    Because GMAC signed a SPA contract with the U.S. Treasury Department to

provide HAMP loan modifications in return for receiving TARP funds, to benefit homeowners,

GMAC is required under law to comply with the requirements of the SPA contract.

17.    HAMP and its associated directives also set prohibitions against certain conduct,

*including demanding up-front payments from borrowers in order to be evaluated for loan*

*modifications,* instituting or continuing foreclosures while borrowers are being evaluated for loan

**COMPLAINT**

modifications, and restrictions on the way Servicers report borrowers to credit reporting

agencies.

18.    The MHA Program Handbook for Servicers of Non-GSE Mortgages, Version 3.4,

dated December 15, 2011, requires that a Servicer take actions to mitigate foreclosure impacts.

> When a borrower is simultaneously in foreclosure and is either being evaluated for HAMP or is in a TPP [Trial Period Plan], the Servicer must provide the borrower with a written notification that explains, in clear language, the concurrent modification and foreclosure processes and that states that even though certain foreclosure activities may continue, the home will not be sold at a foreclosure sale while the borrower is being considered for HAMP or while the borrower is making payments under a TPP.

19.    The MHA Program requires that a Servicer must send Borrower Notices to every

borrower upon request for mortgage relief assistance. The content of the Borrower Notices

varies depending on the information intended to be conveyed or the determination made by the

Servicer. All Borrower Notices must be written in a clear manner with non-technical language

that is easily understandable. If a borrower is considered for qualification for HAMP but is

determined not eligible, a Servicer must send a Non-Approval Notice that provides the primary

reason(s) for the non-approval and include a description of other foreclosure alternatives for

which the borrower may be eligible, along with the steps the borrower must take in order to be

considered for those options.

20.    If a Servicer receives an incomplete submittal of documents and needs additional

documents to verify a borrower's HAMP eligibility, income and hardship information, a Servicer

must send the borrower an Incomplete Information Notice. The Incomplete Information Notice

must list the additional documents the Servicer requires to verify the borrower's eligibility.

> The Incomplete Information Notice must include a specific date by which the documentation must be received, which must be no less than 30 calendar days from the date of the notice. If the documents are not received by the date specified in the notice, the Servicer must make one additional attempt to contact the borrower in writing regarding the incomplete documents. This additional notice must include the specific

---

**COMPLAINT**

date by which the documentation must be received, which must be no less than 15 calendar days from the date of the second notice. If a borrower is unresponsive to these requests for documentation, the Servicer may discontinue document collection efforts and determine the borrower to be ineligible for HAMP. In such an instance, the Servicer must send the borrower a Non-Approval Notice.

21.     The MHA Program Handbook for Servicers of Non-GSE Mortgages, Version 3.4, dated December 15, 2011, requires that a mortgage loan that is eligible for HAMP mortgage assistance must be secured by an owner-occupied, single family property. An owner-occupied, single family property is defined as a borrower's principal or primary residence.

22.     Further, the MHA Program Handbook for Servicers of Non-GSE Mortgages explains that borrowers who make current monthly TPP payments are considered to have succeeded the TPP and are eligible for a permanent modification. If borrowers have TPPs with effective dates before June 1, 2010, the term "current" is defined as "the borrower having made all TPP payments by the last day of final month of the trial period." *See Section 8.3 Trial Period Plan Payments of the MHA Program Handbook for Servicers of Non-GSE Mortgages.*

## FDIC REQUIREMENTS AGAINST DUAL TRACKING

23.     As a supplement to the U.S. Treasury's HAMP guidelines, the Federal Deposit Insurance Corporation (hereinafter the "FDIC") published the "FDIC Loan Modification Program Guidance Single Family Residential (SFR) Loans Guidance RSAM-2010-006" (hereinafter "FDIC Guidelines") in October of 2010 to "provide...Servicers with guidance on the FDIC's expectations for loan modifications." (See FDIC Guidelines Page 1). Servicers must offer a "uniform loan modification process designed to reduce a distressed borrower's monthly mortgage payment to a sustainable monthly payment if the modification maximizes the value of the loan." (See FDIC Guidelines Page 4). Existing terms of loans should be modified to (1)

_____
**COMPLAINT**

improve borrower affordability; (2) increase the probability of loan performance; and (3) to allow borrowers to remain in their homes.

24.     Homeowners are eligible to participate in these loan modification programs when they are delinquent or in danger of "Imminent Default." Imminent Default is a condition where (1)  delinquency "is reasonably foreseeable" based on the terms of the loan and the borrower's income; (2) an anticipated payment increase will occur within nine months and be greater than the HAMP and FDIC stipulated 31% Debt to Income Ratio; (3) the death of a family member or borrower on the note; (4) long-term or permanent illness or disability of the borrower; or (5) divorce or legally-documented separation of borrowers. In addition, "Loans with interest rate resets within the next 9 months may be analyzed for modification even if the current monthly mortgage payment is below 31%. All borrowers with negative amortization products may be assessed for eligibility at the scheduled fully amortizing payment even if the loan has not yet reset and the current monthly mortgage payment is less than 31% [Debt to Income] ratio." (See FDIC Guidelines Page 5).

25.     The FDIC Guidelines insist Servicers communicate with borrowers in such a way as to "help minimize potential borrower confusion, foster good customer relations, improve legal compliance, and reduce other risks in connection with the transaction." (See FDIC Guidelines Page 5).  Furthermore, Servicers should "provide timely information to borrowers on their eligibility for loan modification." (See FDIC Guidelines Page 10).

26.     In a March 9, 2011 Letter to Acquiring Institutions (Hereinafter also referred to as FDIC Guidelines), the FDIC instructed Servicers to "adopt a single point of contact protocol" because "of a number of instances where there has been a lack of communication between foreclosure and loan modification staff, resulting in foreclosure proceedings moving to the final

**COMPLAINT**

stages while borrowers are still under consideration for a loan modification." Such lack of

communication and coordination was "not consistent with good business practices and [violated]

the spirit and terms of the shared-loss agreements." (See FDIC Guidelines Page 1).

27. The FDIC Guidelines thus not only prohibit any foreclosure action "during the

review process," but also forbid "dual tracking," as the review process is clearly a "time out

period" in the foreclosure proceeding. This prohibition is directly relevant to this case as the

Defendant has pretended to offer mortgage assistance while at the same time forcing Plaintiffs

into the gauntlet of the foreclosure process, and ultimately foreclosing on the subject property.

This conflicting treatment of Plaintiffs by Defendant is clear violation of the prohibition against

"dual tracking." FDIC requirements make it crystal clear that **no foreclosure action can take

place during the review process.**

28. Defendant's refusal to comply with the HAMP guidelines and FDIC directives is

a breach of Defendant's contracts with the Federal Government. Defendant's breach of its duty

to Plaintiffs under this contract shows that Plaintiffs have a strong probability of prevailing on

the merits. Plaintiffs argue that the Defendant purposefully short-circuited the review process so

as to have an unimpeded path to foreclosure. Furthermore, because Defendant is subject to

HAMP and FDIC guidelines forbidding "dual tracking," Plaintiffs ask the Court to find that

Defendant violated such provision by foreclosing on the property while said property was under

review.

### FACTUAL BACKGROUND

29. This action arises out of loan activity related to Plaintiffs' home. Plaintiffs have

at all relevant times been the rightful owners of the Subject Property.

**COMPLAINT**

30.     On or about December 6, 2002, Plaintiffs purchased their home with a mortgage from DECISION ONE MORTGAGE COMPANY LLC for $140,000.00 and paid a $30,000.00 down payment.  In May of 2006, Plaintiffs refinanced their home with GREENPOINT MORTGAGE FUNDING (hereinafter referred to as "GREENPOINT") in the amount of $327,000.00.  This loan was an Adjustable Rate Mortgage.  Plaintiffs are informed, believe, and based thereon allege that this loan with GREENPOINT was bought out, sold, transferred, reformed, or in some manner assumed by GMAC.  Any and all subsequent holders of the Notes and Deeds of Trust ("Notes") regarding Plaintiff's mortgage took the Notes subject to all claims which Plaintiff would have had against GREENPOINT and any other successors to the Notes.

31.     Plaintiffs are responsible homeowners who faithfully made their mortgage payments regularly and on time each and every month from May of 2006 through July of 2010, when their hardship overwhelmed their ability to pay.

32.     Plaintiff MARIA GARCIA is a salon manager.  Her hardship began when the economy fell into recession.  The recession had a significant impact on the salon she was managing and as a result her hours were greatly reduced.  This hardship caused Plaintiffs to fall behind on their mortgage payments.

33.     Plaintiffs are responsible homeowners and borrowers.  Prior to their financial hardship, Plaintiffs had always been attentive to their financial obligations and paid their monthly bills and mortgage payments in full, on time, and without interruptions.  In August of 2010 when Plaintiff's financial hardship impeded them from making payments, Plaintiffs contacted GMAC to request mortgage assistance.

34.     Certain GMAC employees promised Plaintiffs to be patient, that Plaintiffs need not worry, and that there would be no foreclosure so long as they worked with Defendant to

**COMPLAINT**

submit documents and financial information.  In reliance upon the representations from these employees, Plaintiffs spent from August 2010 through May of 2011 submitting all requested financial documents and being in strict compliance with all of GMAC's demands and requests. During those ten months Plaintiffs did everything in their power to explain the change in their family's income.  GMAC employees failed review Plaintiff's application for mortgage assistance, even though they had made numerous promises to do so.

35.    During this time, when Plaintiffs were negotiating with GMAC, they finalized a pending adoption of two children and they began receiving a stipend of $2,800.00 per month. This increase in available income meant that Plaintiffs' hardship was over and Plaintiffs could easily afford to make a reasonable payment that would both save their home from foreclosure and pay GMAC a reasonable profit.  However, GMAC ignored the fact that Plaintiff's hardship was over and refused to offer any mortgage assistance.  GMAC's only substantive response was to record a Notice of Default on January 14, 2011, followed by a Notice of Trustee's Sale on April 22, 2011.

36.    Shocked that GMAC was not following through on their representations and promises to allow Plaintiffs to save their home, in May of 2011 Plaintiffs filed a Chapter 13 Bankruptcy.  Plaintiffs' plan required them to pay GMAC their regularly monthly payment plus an additional sum each month towards the arrears.  Plaintiffs made these current monthly payments and arrearage payments for eighteen months, from June of 2011 through December of 2012.

37.    In spite of accepting Plaintiffs' monthly payments up through December of 2012, GMAC recorded a second Notice of Trustee's Sale on October 26, 2012 and thereafter scheduled and conducted a Trustee's Sale on or about December 28, 2012.  That December 28, 2012

COMPLAINT

Trustee's Sale took Plaintiffs completely by surprise as they relied upon the representations and promises from GMAC employees over the past two years, namely that no foreclosure would occur without a review of Plaintiffs for mortgage assistance.

38.    Proceeding with the Trustee's Sale under the authority of the January 14, 2011 Notice of Default was unlawful because GMAC had accepted eighteen months of payments on the arrears after recording that Notice of Default.  In fact, the arrears had been substantially reduced under the eighteen payments.

39.    The Notice of Default that GMAC used and relied upon to comply with the California Foreclosure Statutes was recorded on January 14, 2011. The Notice of Trustee Sale was originally recorded on April 22, 2011 and again on October 26, 2012. Both Notices of Trustee's Sale rely on the January 14, 2011 Notice of Default for their authority.  That Notice of Default was void because beginning June 2011 and continuing through December of 2012, GMAC accepted monthly mortgage arrearage payments from Plaintiff. Therefore, on April 22, 2011—when the first Notice of Trustee's Sale was recorded—and on October 26, 2012—when the second Notice of Trustee's Sale was recorded, the arrearages and the Notice of Default no longer existed, either in their entirety or a portion thereof.  Therefore the April 22, 2011 and October 26, 2012 Notices of Trustee's Sale that were conditional upon the January 14, 2011 Notice of Default were no longer accurate. Because that Notice of Default's was inaccurate, the Notice of Trustee's Sales are invalid.  GMAC accepted Chapter 13 payments up until the very month that they conducted a Trustee's Sale, December 2012.  In December of 2012, GMAC refused to discuss options for mortgage assistance, instead steamrolled Plaintiffs into foreclosure. GMAC's refusal to acknowledge Plaintiffs' eighteen months of plan payments towards the arrears is indicative of bad faith.

COMPLAINT

### FIRST CAUSE OF ACTION

### FRAUD AND DECEIT

### (Against ASC)

40.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

41.     Under California Civil Code Section 1709 it is unlawful to willfully deceive another "with intent to induce him to alter his position to his injury or risk." Defendant GMAC had a duty to reasonably and in good-faith apply HAMP and FDIC guidelines to Plaintiffs' circumstances and, if application of these guidelines proved in Plaintiffs' favor, they would offer Plaintiffs the remedies provided for under these programs.

42.     Under California Civil Code Section 1710, "deceit" includes the following: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of the fact; or (4) a promise, made without any intention of performing it.

43.     Under California Civil Code Section 1572, the party to a contract further engages in fraud by committing "any other act fitted to deceive."

44.     Defendant GMAC's conduct indicates that they never had any intention of honoring its promises to review Plaintiffs for mortgage assistance and to help them save their home from foreclosure. After all, GMAC strung Plaintiffs along for ten months when it was promising that there would be no foreclosure until they reviewed Plaintiff for mortgage

**COMPLAINT**

assistance. In addition, GMAC accepted eighteen months of plan payments under Plaintiff's

Chapter 13 bankruptcy, which included substantial payments on the arrears.

45.    GMAC employees lured Plaintiffs into continuing to believe that mortgage

assistance was always "right around the corner" in an effort to string them along. Based upon

GMAC's employees' representations, Plaintiffs believed Defendant was going to review them

for mortgage assistance. Disappointed that GMAC refused to follow the HAMP and FDIC

guidelines and offer them a modification, Plaintiffs had no choice but to seek protection from the

Bankruptcy Court. By accepting eighteen months' worth of Chapter 13 plan payments, GMAC

had clear evidence that Plaintiffs' hardship was over and the original contract payment could be

resumed. Armed with this information, there was no reason for GMAC to conduct a Trustee's

Sale on December 28, 2012.

46.    Defendant is a sophisticated lender and Plaintiffs are financially unsophisticated

borrowers. Plaintiffs' reliance on GMAC's promises was justified because GMAC has a superior

position of knowledge and authority over Plaintiffs. The resulting damage to Plaintiffs was the

sale of their home at a Trustee's Sale. GMAC breached its obligations and promises to Plaintiffs

on numerous occasions.

47.    The representations and assurances of Defendant GMAC to Plaintiffs were false

and fraudulent and caused a Trustee's Sale of the Subject Property to occur on December 28,

2012. Plaintiffs had countless conversations with numerous GMAC employees wherein

Plaintiffs were repeatedly promised that they would be reviewed, that a temporary payment

would be offered, and that a permanent modification would be offered upon completion of the

temporary modification. Plaintiffs relied on this promise to their detriment.

**COMPLAINT**

48.     As a proximate result of GMAC's fraudulent misrepresentations, Plaintiffs have now lost their home in a Trustee's Sale and have suffered great emotional distress.

49.     Accordingly, as a result of Defendant GMAC's deceitful and fraudulent conduct, Plaintiffs have suffered, and will continue to suffer, compensatory, general and special damages in an amount to be determined according to proof.   Additionally, Defendant GMAC acted with malice, fraud and/or oppression, therefore Plaintiffs are entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION

### QUIET TITLE AND SET ASIDE WRONGFUL FORECLOSURE

### (Against All Defendants)

50.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

51.     The real property that is the subject of this action is located in Riverside County, California and commonly known as: 80636 Jasmine Lane, Indio, California 92201, and more particularly described in the legal description, which is: "Lot: 58 Tract No: 14189-1 Abbreviated Description: LOT:58 CITY:INDIO TR #:14189-1 LOT 58 MB 180/073 TR 14189-1 City/Muni/Twp: INDIO"

52.     Plaintiffs seek to Quiet Title against the claims of Defendants, and to set aside the wrongful foreclosure of the Subject Property.  Each such Defendant has no right, title, lien or interest in and Plaintiffs seek an Order of the Court quieting title to the Subject Property.

53.     Plaintiffs contend the actions of Defendants were willful and intentional with the purpose of obtaining profit and gain to the detriment of Plaintiff.

54.     Plaintiffs seek an Order of the Court quieting title to the Subject Property and setting aside the wrongful foreclosure of the Subject Property.

**COMPLAINT**

### THIRD CAUSE OF ACTION

### CANCELLATION OF TRUSTEE'S SALE

### (Against All Defendants)

55.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

56.     Plaintiffs allege on information and belief that Defendants failed to properly publish and post that they were going to conduct a Trustee's Sale at the same time they were accepting Plaintiff's Chapter 13 bankruptcy plan payments.  GMAC also did not properly publish and post certain required notices of their intent to sell the Subject Property at public auction, purportedly to satisfy the obligation secured by the Deed of Trust on grounds of the alleged breach of the obligation and under the Power of Sale in the Deed of Trust.  Failure to post invalidates the December 28, 2012 Trustee's Sale.

57.     Defendants took title to Plaintiff's home by conducting their Trustee's Sale on December 28, 2012.

58.     Plaintiffs allege the sale of Subject Property was wrongfully held due to improper notice requirements.  Thus, the Trustee's Deed Upon Sale was wrongfully executed, delivered and recorded in violation of the duties and obligations of Defendants to Plaintiffs' detriment in that Plaintiffs is being deprived of beneficial use and enjoyment of their home and has been deprived of legal title.

59.     Plaintiffs contend the actions of Defendants were willful and intentional with the purpose of obtaining profit and gain to the detriment of Plaintiffs.  Plaintiffs seek an Order of the Court setting aside the Trustee's Sale of the Subject Property.

///

**COMPLAINT**

## FOURTH CAUSE OF ACTION

## CANCELLATION OF TRUSTEE'S DEED UPON SALE

### (Against All Defendants)

60.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

61.    Although the Trustee's Deed Upon Sale may appear valid on its face, it is invalid and void or voidable and of no force or effect regarding Plaintiffs' interest in the property.

62.    The interest in the property claimed by GMAC is a cloud on Plaintiffs' title and hinders Plaintiffs' right to unrestricted alienation of their home.  If the Trustee's Deed Upon Sale is not cancelled, there is a reasonable fear that Plaintiffs will suffer serious injury by the loss of the Subject Property.

63.    Plaintiffs seek an Order of the Court setting aside the Trustee's Deed Upon Sale relating to the Subject Property.  Defendants' conduct as set forth herein was intentional, oppressive fraudulent and malicious so as to justify an award of punitive damages in an amount sufficient that such conduct will not be repeated.

## FIFTH CAUSE OF ACTION

## WRONGFUL FORECLOSURE IN VIOLATION OF

## CALIFORNIA CIVIL CODE SECTION 2923.5

### (Against All Defendants)

64.    Plaintiffs incorporate herein by this reference each and every paragraph set forth above, as though fully set forth herein.

**COMPLAINT**

65.    On July 8, 2008, Governor Schwarzenegger signed into law Senate Bill 1137. This Act, also known as the Perata Mortgage Relief Bill, was subsequently codified as Civil Code Sections (hereinafter "§") 2923.5 and 2923.6.

66.    California Civil Code § 2923.5 requires that, at least 30 days prior to filing a Notice of Default, the lender must contact the borrower and explore options for the borrower to avoid foreclosure. *See Cal. Civ. Code. § 2923.5(a).* To demonstrate compliance with this section, lenders filing a Notice of Default must attach a declaration stating that the lender either contacted the borrower or tried with due diligence to contact the borrower. *See Cal. Civ. Code. § 2923.5(b).* Under § 2923.5(g), "due diligence" requires the lender to contact the borrower by a first class letter that includes a toll-free number for the United States Department of Housing and Urban Development ("HUD"), then attempt to contact the borrower by telephone at least three times on different days at different hours, and then attempt to contact the borrower with an automated system that connects the borrower to a live representative; if the borrower does not respond within two weeks, the lender must also send a certified letter with a return receipt, provide a means for the borrower to contact the lender in a timely manner, and post a prominent link on the homepage of the lender's internet website. *See Cal. Civ. Code § 2923.5(g).*

67.    Plaintiffs allege that Defendant GMAC and their Trustee: (1) did not send Plaintiffs a first class letter that included a toll-free number for the United States Department of Housing and Urban Development; (2) did not attempt to contact Plaintiffs by telephone at least three times, at three different hours and/or three different days prior to filing a Notice of Default; and (3) did not send a certified letter to Plaintiffs with return receipt requested.

68.    Furthermore, Plaintiffs allege that the Notice of Default used to justify the Trustee's Sale was invalid because the past due amount was grossly incorrect in that GMAC

_____
**COMPLAINT**

accepted eighteen monthly payments towards the arrears.  When GMAC accepted payments on

the arrears, that invalidated the January 14, 2011 Notice of Default and therefore the Trustee's

Sale on December 28, 2012 was invalid.

69.    Plaintiffs contend that Defendant GMAC violated Civil Code § 2923.5 because

they did not record an accurate Notice of Default that took into consideration the payments

GMAC accepted after recording their original January 14, 2011 Notice of Default.

70.    Plaintiffs lost their home to a Trustee's Sale on December 28, 2011.

71.    As a direct, foreseeable, and proximate result of Defendant ASC's breaches of

California Civil Code §2923.5, Plaintiffs has suffered monetary damages, including, but not

limited to, out of pocket expenses, and legal and attorney fees to bring and maintain the instant

lawsuit.  Plaintiffs have suffered and will continue to suffer general and special damages in an

amount according to proof at trial.

**SIXTH CAUSE OF ACTION**

**WRONGFUL FORECLOSURE IN VIOLATION OF**

**CALIFORNIA CIVIL CODE § 2923.6**

**(Against All Defendants)**

72.    Plaintiffs incorporate herein by this reference each and every allegation set forth

above, as though fully set forth herein.

73.    As the sister section to California Civil Code §2923.5, California Civil Code

§2923.6 requires that the mortgagee, beneficiary or authorized agent offers the borrower a loan

modification or workout plan if such a modification or plan is consistent with its contractual or

other authority.

**COMPLAINT**

74.     Further, Plaintiffs contends that Civil Code § 2923.6 mandates that a good faith review and an actual exploration take place regarding the borrower's financial situation and the borrower's options to stay in their home.  It is the Servicer's obligation to act in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which the following apply:

(1) The loan is in payment default or payment default is reasonably foreseeable;
(2) Anticipated recovery under loan modification or work-out plan exceeds the anticipated recovery through foreclosure on a net present value basis; and
(3) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offers the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

75.     Plaintiffs alleges that Defendant GMAC violated Civil Code § 2923.6.  Plaintiffs requested HAMP mortgage assistance on numerous occasions to help save their home from foreclosure.  Defendant GMAC pretended to offer Plaintiffs assistance but, in fact, offered Plaintiffs no real assistance and failed to take into consideration Plaintiffs' financial circumstances and disregarded the fact that Plaintiffs' hardship was over and they could easily resume a fair and reasonable monthly mortgage payment (as evidenced by eighteen months of Chapter 13 plan payments).  By not taking into consideration these factors, Defendant GMAC failed to explore all available mortgage relief options to help Plaintiffs save their home from foreclosure.  Hence, Defendant GMAC violated California Civil Code § 2923.6.

76.     As a direct, foreseeable, and proximate result of Defendant GMAC's breach of California Civil Code §2923.6, Plaintiffs have suffered monetary damages including, but not limited to, out of pocket expenses and legal and attorneys' fees to bring and maintain the instant lawsuit.  Plaintiffs have suffered and will continue to suffer general and special damages in an amount according to proof at trial.

///

**COMPLAINT**

**SEVENTH CAUSE OF ACTION**

**WRONGFUL FORECLOSURE IN VIOLATION OF**

**CALIFORNIA CIVIL CODE SECTION § 2923.7**

**(Against All Defendants)**

77.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

78.     California Civil Code Section § 2923.7 requires GMAC to have provided a Single Point of Contact to facilitate saving Plaintiffs' home from foreclosure.  The purpose of this law is to prevent the very conduct of GMAC committed herein. Numerous employees represented there would be no foreclosure and that Plaintiffs would be reviewed for mortgage assistance while other employees were simultaneously foreclosing on Plaintiffs' home.  Designed to eliminate the problem of "dual-tracking," this statute provides protection to borrowers such as Plaintiffs where lenders such as GMAC violate the requirement of appointing a Single Point of Contact, or naming such and then not following through.  GMAC recorded their Notice of Default on January 14, 2011 at the same time that they were in the throes of negotiations with Plaintiff for mortgage assistance.  Moreover, to conduct a Trustee's Sale in the same month that they received the eighteenth consecutive mortgage and arrearage payment is the outrageous dual-tracking that this statute is designed to prohibit.

79.     Under § 2924.18 (b) (2), GMAC is liable for damages in the sum of $50,000.00 plus attorneys' fees because their violation of § 2923.7 was reckless and resulted from willful misconduct.

80.     As a direct, foreseeable, and proximate result of Defendant GMAC's breach of California Civil Code §2923.7, Plaintiffs have suffered monetary damages, including, but not

_____

**COMPLAINT**

limited to, out of pocket expenses and legal and attorneys' fees to bring and maintain the instant

lawsuit.  Plaintiffs have suffered and will continue to suffer general and special damages in an

amount according to proof at trial.

## EIGTH CAUSE OF ACTION

## PROMISSORY ESTOPPEL

### (Against ASC)

81.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

82.    GMAC had full knowledge and command of the facts; GMAC intended that its

conduct would be acted upon, or acted in such a way that the Plaintiffs had the right to believe

that the conduct was so intended; and Plaintiffs were ignorant of the true facts. Defendant

GMAC made representations that they would not foreclose on Plaintiff without first reviewing

them for mortgage assistance.  Plaintiffs believed the promises of GMAC and relied upon their

statements that there would be no foreclosure, going so far as to make eighteen monthly

mortgage and arrearage payments and fully cooperate with the GMAC employees.  Plaintiffs'

conduct and reliance on these promises was justified because GMAC had been making these

promises for two years.

83.    Plaintiffs justifiably relied on the representations of Defendant GMAC to their

detriment.  Plaintiffs relied on the fact that they had received verbal promises from several

GMAC employees reassuring them that Plaintiffs would be reviewed prior to foreclosure.

Accordingly, Defendant GMAC should be estopped from taking any action that is contrary to

their promises.  This conduct by GMAC has prevented Plaintiffs from being able to take

measures to save the Subject Property.

**COMPLAINT**

84.    Therefore, Defendant GMAC should be estopped from claiming any benefit from the foreclosure of the Subject Property due to its unfair treatment of Plaintiffs and their interests.

85.    As a proximate result of GMAC's breaches, Plaintiffs have suffered and will continue to suffer general and special damages in an amount according to proof at trial.

## NINTH CAUSE OF ACTION

## NEGLIGENCE

## (Against GMAC)

86.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

87.    When GMAC was merely the new Servicer of Plaintiff's loan, there existed the traditional lender borrower relationship, which does not impose a duty of care.  However, once GMAC promised to save Plaintiffs' home from foreclosure, they stepped outside the role of a traditional lender and created a duty of care to Plaintiffs.

88.    The standard for this duty of care is established by:

(1) The extent to which the transaction (modification process) was intended to
affect the Plaintiffs: GMAC's representations were that they were the only
entity and authority that could save Plaintiffs' home from foreclosure.
The failure of GMAC to follow through on their representations and fulfill
their statuary obligations has greatly affected Plaintiffs by way of a
December 28, 2012 Trustee's Sale;

(2) The foreseeability of harm to Plaintiff: The harm of Plaintiffs losing their
home was foreseeable if GMAC refused to complete a review in a timely

COMPLAINT

manner; namely that Plaintiffs would be ripped from their home by way of

a Trustee's Sale;

(3) The degree of certainty that the Plaintiffs suffered injury: Plaintiffs knew that

GMAC could foreclose and take their home if the proper arrangements

were not made;

(4) The closeness of the connection between the Defendant's conduct and the

injury suffered: The injury of losing their home to foreclosure is directly

connected to GMAC's bad faith conduct in failing to complete their

review and offer Plaintiffs mortgage assistance;

(5) The moral blame attached to the Defendant's conduct: The extreme

runaround, unfulfilled promises, and the eighteen months of mortgage and

arrearage payments prior to the December 28, 2012 Trustee's Sale all

create moral blame with regards to GMAC;

(6) The policy of preventing future harm: The public policy of preventing future

harm would require GMAC to answer for their mistreatment of Plaintiff.[2]

89.    By volunteering to rescue Plaintiff's home from foreclosure, GMAC clearly

created a duty, as alleged above.  GMAC's conduct in (1) promising that Plaintiffs would be

reviewed prior to foreclosure; (2) failing to review Plaintiffs prior to foreclosing; (3) accepting

eighteen months of mortgage and arrearage payments; and (4) foreclosing on Plaintiffs' home on

---

[2] The legal duty of a lender to a borrower can be established using a six part test: (1) the extent to which the
transaction was intended to affect the Plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that
the Plaintiff suffered injury; (4) the closeness of the connection between the Defendant's conduct and the injury
suffered; (5) the moral blame attached to the Defendant's conduct; and (6) the policy of preventing future harm. This
six part test was used in *Biakanja v. Irving, 49 Cal2d 647, 122 P.2d 294.*

COMPLAINT

December 28, 2012 under the invalid January 14, 2011 Notice of Default has breached the duty

GMAC owed to Plaintiffs.

90.    As a proximate and foreseeable result of Defendant GMAC's breach of their duty

to Plaintiffs, Plaintiffs lost their home at a December 28, 2012 Trustee's Sale.

91.    Plaintiffs have suffered monetary damages including, but not limited to, out of

pocket expenses, and legal and attorneys' fees to bring and maintain the instant lawsuit.

Plaintiffs have suffered and will continue to suffer, general and special damages in an amount

according to proof at trial.

**TENTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(Against GMAC)**

92.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though such have been fully set forth herein.

93.    The standard for negligent misrepresentation is established by:

(1) A misrepresentation of a past or existing material fact: GMAC employees

clearly misrepresented that Plaintiffs would be reviewed prior to

foreclosure.

(2) Made without reasonable grounds for believing it to be true: GMAC hid the

important fact from Plaintiffs that they would foreclose "whenever they

felt like it" regardless of their promises to review Plaintiff for mortgage

assistance.

(3) Made with the intent to induce another's reliance on the fact misrepresented:

GMAC made their various promises through numerous employees to

**COMPLAINT**

1    prevent Plaintiffs from pursuing other remedies and obstacles to

2    foreclosure.

3    (4) Justifiable reliance on the misrepresentation: Plaintiffs were desperate to save

4    their home.  Plaintiffs were inexperienced and unsophisticated borrower

5    sand GMAC was an experienced and sophisticated lender, who used its

6    position of authority to convince Plaintiffs that they were the only ones

7    who could save their home from foreclosure.

8

9    (5) Resulting damages: GMAC conducted a Trustee's Sale on December 28,

10    2012.[3]

11

12    94.    As a proximate result of Defendant GMAC's representations to Plaintiffs,

13    Plaintiffs have suffered general and special damages in an amount to be proven at trial.  Plaintiffs

14    will, if necessary, amend this complaint to allege the exact amount of said damages once

15    ascertained.

16    **ELEVENTH CAUSE OF ACTION**

17
18    **VIOLATION OF BUSINESS AND PROFESSIONS SECTION 17200, et seq.**

19    **(Against All Defendants)**

20    95.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

21    though fully set forth herein.

22    96.    California's unfair competition statute, Business and Professions Section 17200 et

23
24    seq., prohibits any unfair competition, which means "any unlawful, unfair or fraudulent business

25    _____

26    [3] The standard for negligent misrepresentation is established by: (1) a misrepresentation of a past or
existing material fact, (2) made without reasonable grounds for believing it to be true, (3) made with the intent to
induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5)

27    resulting damages. *CHASE Bank, N.A. v. FSI, Financial Solutions, Inc. (2011) 196 Cal.App.4th 1559, 1573 [127 Cal.
Rptr. 3d 589]; National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Services Group, Inc. (2009)*

28    *171 Cal.App.4th 35,50 [89 Cal. Rptr. 3d 473].)*

_____

**COMPLAINT**

act or practice."  Plaintiffs need only allege one of the three theories as Section 17200 was written broadly to allow courts discretion to prohibit schemes to defraud.

97.     Defendants' multiple assurances that the Subject Property would be reviewed for mortgage assistance prior to any foreclosure was sufficient to cause Plaintiffs to believe and rely upon said promises.  Intentional violations of those promises were gross, unfair business practices.  If not done on purpose, it was certainly done to make sure that Plaintiffs were unable to object or cause any obstacle to Defendants' true intentions of conducting a foreclosure sale upon finding a third party buyer willing to pay the right price.

98.     California Business & Professions Code Section 17200, et seq. prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice…" and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

99.     As more fully described herein, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

100.    Specifically, as fully set forth herein, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential and other properties, and related matters by, among other things:

    a)     Instituting improper foreclosure proceedings to generate unwarranted fees;

    b)     Failing to give proper Notice of a Trustee's Sale and the postponement of the sale;

    c)     Failing to comply with California Civil Code Sections 2924.17, 2924.18, 2923.5, 2923.6 and 2923.7;

    d)     Violating FDIC guidelines prohibiting the practice of "dual tracking";

COMPLAINT

e)    Misrepresenting the foreclosure, review, and modification status to

borrowers;

f)    Other deceptive business practices.

101.    Plaintiffs allege that by engaging in the acts and/or practices as alleged herein,

Defendants have violated several California laws and regulations and said predicated acts are

therefore per se violations of California Business and Professions Code Section 17200, et seq.

102.    Plaintiffs allege that Defendants' misconduct, as alleged, gave and has given

Defendants an unfair competitive advantage over their competitors.  The scheme implemented

by Defendants is designed to defraud California consumers and enrich the Defendants.

103.    The foregoing acts and practices caused substantial harm to California consumers.

104.    Plaintiffs allege that as a direct and proximate result of the aforementioned acts,

Defendants have prospered and benefited from Plaintiffs by collecting mortgage payments and

fees for foreclosure related services, and have been unjustly enriched from their act of

foreclosing on Plaintiffs' property when they had agreed not to do so and/or to do so in

compliance with applicable laws.

105.    By reason of the foregoing, Defendants have been unjustly enriched and should

be required to disgorge their illicit profits and/or make restitution to Plaintiffs and other

California consumers who have been harmed, and/or enjoined from continuing in such practices

pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally,

Plaintiffs is therefore entitled to injunctive relief and attorney's fees as available under California

Business & Professions Code Section 17200 and related sections.

**WHEREFORE,** Plaintiffs pray judgment as follows:

1.    That the Court issue an Order that cancels the Trustee's Deed Upon Sale;

**COMPLAINT**

2.     That the Court order judgment quieting title to Plaintiffs;

3.     That Plaintiffs be declared the prevailing party;

4.     For attorney fees and costs;

5.     For general, special, compensatory, and punitive damages;

6.     For injunctive relief; and

7.     For such other and further relief as the Court may deem proper.


Dated:         January 29, 2013         LAW OFFICES OF ART HOOMIRATANA

_____

Art Hoomiratana, Esq.
Attorney for Plaintiffs

30 of 30

**COMPLAINT**

EXHIBIT B

1  MICHAEL J. KRAHENBUHL, SBN 271021
   MICHAEL M. BAKER, SBN 273232
2  PITE DUNCAN, LLP
   4375 Jutland Drive
3  Suite 200; P.O. Box 17934
   San Diego, CA 92177-0934
4  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
5

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

FEB 05 2013

C. LUNA

6  Attorneys for Plaintiff GMAC MORTGAGE, LLC FKA GMAC MORTGAGE
   CORPORATION
7

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10         COUNTY OF RIVERSIDE - INDIO JUDICIAL DISTRICT

11  GMAC MORTGAGE, LLC FKA GMAC        CIVIL ACTION NO. **INC   1300816**
    MORTGAGE CORPORATION,
12                                     COMPLAINT FOR UNLAWFUL
                Plaintiff(s),          DETAINER AND MONEY DAMAGES
13
                                       AMOUNT DEMANDED DOES NOT
14  vs.                                EXCEED $10,000

15  JOHN GARCIA, MARIA GARCIA, and     LIMITED CIVIL CASE
    DOES I through X, inclusive,
16                                     ACTION BASED ON CODE OF CIVIL
                Defendant(s).          PROCEDURE SECTION 1161a
17

18       Plaintiff, GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION

19  ("Plaintiff"), alleges:

20            CAUSE OF ACTION FOR UNLAWFUL DETAINER

21                    AND MONEY DAMAGES

22       1.     Plaintiff is entitled to the possession of, and is the owner of record of a parcel of

23  real property (hereinafter "property") and the dwelling thereon located at 80636 Jasmine Ln,

24  Indio CA 92201-5238, more particularly described as follows:

25       LOT 58 OF TRACT NO. 14189-1, IN THE CITY OF INDIO, COUNTY OF
         RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN
26       BOOK 180, PAGE(S) 73 THROUGH 75 OF MAPS, RECORDS OF
         RIVERSIDE COUNTY, CALIFORNIA.
27

28  The property is located within the above-referenced Judicial District and County.

-1-

2.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES I through X in occupancy are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of such DOE Defendants when they have been ascertained.

3.     JOHN GARCIA, MARIA GARCIA and DOES I Through X ("Defendant(s)"), and each of them, are currently in possession of and occupying the property.

4.     Plaintiff purchased the property at a Trustee's Sale held on December 27, 2012. Plaintiff's title has been duly perfected.

5.     Plaintiff has duly recorded the Trustee's Deed Upon Sale, a copy of which is attached hereto as Exhibit "1" and incorporated herein as if set forth in full.

6.     Defendant(s) were served a 3-Day Written Notice To Vacate on January 23, 2013. A copy of the written notice is attached hereto as Exhibit "2" and incorporated herein as if set forth in full.

7.     Plaintiff properly served the Defendant(s) with the Notice to Vacate in compliance with Code of Civil Procedure section 1162. A copy of the proof of service is attached hereto as Exhibit "3" and incorporated herein as if set forth in full.

8.     The Defendant(s) failed to comply with the requirements of the 3-Day Written Notice to Vacate, which expired on January 28, 2013.

9.     The Defendant(s) continue in possession of the property unlawfully after expiration of the Written 3-Day Notice to Vacate without permission of the Plaintiff and under no right of claim.

10.     The reasonable value for the use and occupancy of the property is $37.20 per day. Plaintiff seeks damages in that amount from January 29, 2013 and for each day thereafter, until the date of Judgment herein.

11.     Plaintiff has performed all the necessary actions and given all the required notices to bring this Unlawful Detainer action.

/././

-2-

1       WHEREFORE, Plaintiff prays for Judgment against Defendant(s) as follows:

2       1)    For restitution and possession of the property; and

3       2)     For \$37.20 which represents the unpaid fair rental value per day for use and

4 occupancy of the property and premises from January 29, 2013 until rendition of Judgment

5 herein;

6       3)     For such other and further relief as the Court may deem just and proper.

7

8 Dated:    January 29, 2013            PITE DUNCAN, LLP

9

10                                      MICHAEL M. BAKER, SBN 273232

11                                      Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR UNLAWFUL DETAINER

<u>VERIFICATION</u>

State of California    )
                       )
<u>County of San Diego</u> )

    I, MICHAEL M. BAKER, am the attorney for GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION, the Plaintiff in this action. Such party is absent from the County where I maintain my office, and I make this verification for and on behalf of that party for that reason. I have read the foregoing Summons and Complaint for Unlawful Detainer and Money Damages and accompanying documents therein and know their contents. I am informed and believe and on that ground allege that matters stated therein are true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed January 29 , 2013, at San Diego, California.

                          PITE DUNCAN, LLP

                      By: _____
                          MICHAEL M. BAKER
                          Attorney at Law

-4-

EXHIBIT C

COPY

1    LAW OFFICES OF ART HOOMIRATANA
   ART HOOMIRATANA (CA SBN 247253)
2    Email: arthoomiratana@realestatelawcenter.org
   BRYAN R. SMITH (CA SBN 196500)
3    Email: bryansmith@realestatelawcenter.org
   750 East Green Street, Suite 333
4    Pasadena, California 91101
5    Telephone: (888) 688-4770
   Facsimile: (888) 848-4570
6    litigationsupport@realestatelawcenter.org

7    Attorneys for Plaintiff,
8    JOHN GARCIA
   MARIA GARCIA
9

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 12 2013

C. LUNA

10      SUPERIOR COURT OF THE STATE OF CALIFORNIA
11              COUNTY OF RIVERSIDE

12

13   JOHN GARCIA, MARIA GARCIA,     **Case No: INC 1300675**

14         Plaintiffs,          *[Hon. Randall D. White, Judge]*

15       vs.              **NOTICE OF MOTION AND MOTION TO
16                      CONSOLIDATE; MEMORANDUM OF
POINTS AND AUTHORITIES;
17   GMAC MORTGAGE LLC; and DOES 1-   DECLARATION OF MARIA GARCIA**
   100, Inclusive,
18

19         Defendants.      DATE:   March 22, 2013
                        TIME:   8:30 a.m.
20                      DEPT:   2H

21

22

23   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
24

25     **PLEASE TAKE NOTICE** that in accordance with this Court's March 8, 2013 Order,

26   on March 22, 2013 at 8:30 a.m., in Dept 2H of the Riverside County Superior Court located at

27   the Larson Justice Center, 46-200 Oasis Street, Indio, California, Plaintiffs John Garcia and

28   Maria Garcia will appear pursuant to California Code of Civil Procedure Section 1048(a) to

BY FAX

move the Court for an order consolidating the parties' case before the limited court (*GMAC Mortgage v. Garcia*, Case No. INC 1300816) with this case.

This motion will be made on the grounds that the complaint filed by Plaintiffs herein and the defense of Plaintiffs in the Unlawful Detainer require that both cases be consolidated for trial.

This motion is made pursuant to California Code of Civil Procedure Section 1048(a) and California Rules of Court, Rule 339.

This motion is further made and based on the grounds that the facts of the one case and the defenses of the other are similar and dependent on each other including (1) the identity of the issues, procedures and parties before the Court; (2) the convenience of the Court and the parties; (3) judicial economy, (4) the avoidance of duplicative and possibly inconsistent adjudications, and (5) lack of the limited court's jurisdiction to hear and consider Plaintiffs' claims of improprieties in the foreclosure itself, defense to the Unlawful Detainer, and the damages that Defendant is seeking in the unlimited Superior Court Case, which exceeds the jurisdictional limit of the limited court.

Plaintiffs respectfully request that the Court consolidate Plaintiffs (unlimited) State Court Action, Case Number INC 1300675, with Unlawful Detainer action GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION v. JOHN GARCIA and MARIA GARCIA, Case Number INC 1300816. The consolidation requested is appropriate because absent such, Plaintiffs will be evicted from their home and suffer irreparable harm before having a chance to have their day in court.

This motion is based on this notice, the attached Memorandum of Points and Authorities, attached Declaration of Maria Garcia, the pleadings and papers on file in this case, and such

/ / /

other and further evidence as this Court may permit at the time of the hearing on this matter.

Dated: March 8, 2013

LAW OFFICES OF ART HOOMIRATANA

By: _____

Bryan R. Smith
Attorneys for Plaintiffs
JOHN CARCIA and MARIA GARCIA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. CONSOLIDATION IS APPROPRIATE

An Unlawful Detainer Action was filed and served on Plaintiffs by GMAC MORTGAGE LLC, who received title to Plaintiffs' home in a Trustee's Sale conducted on December 28, 2012. Said sale is wrongful because it should have never occurred. Currently a request for hearing date has been filed and the Unlawful Detainer action is pending. Thus, for good reasons as outlined below, the Unlawful Detainer action should consolidated with this State Court Action.

The case at bar raises the issues of:

(1)    GMAC has acted unjustly by unilaterally and without justification stopped accepting mortgage and arrearage payment after accepting them for a year and a half. The cessation of acceptance was in bad faith and designed to force foreclosure upon Plaintiff.

(2)    The Notice of Trustee's Sale, recorded October 26, 2012 was defective because it was based upon an old and outdated Notice of Default recorded January 14, 2011. The payments accepted after the Notice of Default contaminate the Trustee's Sale and it should not have gone forward. As GMAC waited foreclosed on Plaintiffs' home under the "stale" Notice of Default in addition

to accepting mortgage and arrearage payments for a year and a half, the amount of Plaintiffs' loan arrearage in default was significantly reduced. Common sense would dictate that with material changes in the mortgage delinquency, an accurate Notice of Default with the mandatory declaration would be required.

(3)    The Notice of Default was recorded on January 14, 2011. Under California Civil Code Section 2923.5 Defendant was obligated to contact Plaintiffs at least thirty days prior to this recording and "explore options to avoid foreclosure." This meant that on or before December 14, 2011, GMAC had a statutory duty to notify Plaintiff. No such contact was made and and no such notices were given.

(4)    The fact that GMAC was in bankruptcy proceedings and used that as a convenient "shield" to refuse to discuss, much less offer, Plaintiffs any sort of mortgage assistance. GMAC had always represented to Plaintiffs that "relief was right around the corner" but when "the rubber hit the road" no relief was to be found.

The above four claims justify a consolidation and stay of the pending Unlawful Detainer action. Based upon these foreclosure irregularities, it would be just and fair to stay the Unlawful Detainer and consolidate that case with the case at bar. The reason justice requires consolidation is that but for the tainted Trustee's Sale, there would be no eviction proceedings. The Unlawful Detainer is predicated on the December 28, 2012 Trustee's Sale which was based upon a defective and void Notice of Default recorded on January 14, 2011, nearly two years prior.

///

## II. STATEMENT OF FACTS

GMAC toyed with Plaintiffs as a cat toys with a wounded mouse by refusing to accept monthly payments after accepting them for a year and a half. Then, when Plaintiffs called to beg for their home, GMAC, itself in Bankruptcy, refused to discuss any available options. In addition, GMAC improperly foreclosed on December 28, 2012 by using a "stale" Notice of Default after Plaintiffs had significantly decreased their mortgage delinquency. For GMAC to sell Plaintiffs' home after Plaintiffs had shown that they were reducing their delinquency was extremely prejudicial, unjust, and unfair.

At bar, GMAC's refusal to comply with FDIC and HAMP guidelines is a breach of the contract GMAC entered into with the US Treasury Department. GMAC breached its duty to Plaintiffs by: (1) not following the HAMP guidelines mandating a good faith review of Plaintiffs request for mortgage assistance; (2) toying with Plaintiffs by requiring them to send in multiple applications; and (3) by continuing the foreclosure process during all these applications, which is "dual-tracking" and is strictly prohibited under HAMP.

GMAC also violated California Civil Code section 2923.6(b) wherein it states: "It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual authority."

GMAC violated the HAMP guidelines by refusing to suspend the foreclosure process while considering the borrowers for alternatives to foreclosure prevention options. GMAC also violated FDIC Directive 09-08 by failing to follow the HAMP guidelines when dealing with Plaintiffs herein who were "at risk borrowers." Specifically, GMAC never sent the mandated notices that they were refusing to offer Plaintiffs a Trial Period Plan.

The very same month that GMAC accepted Plaintiffs' last mortgage and arrearage payment was the same month that it sold Plaintiffs' home. This treatment is inexcusable. Further, it is direct evidence of "Dual-Tracking."

In their case before this Court, Plaintiffs respectfully request that their sale be rescinded because GMAC's foreclosure was prejudicial, unjust, and unfair. Plaintiffs are asking for the chance to resume their payments, just as millions of homeowners have been able to save their home. Plaintiffs had hoped the matter would resolve without having to file and serve the complaint. With the recent unlawful detainer filing, they are forced to request judicial intervention. It is necessary to protect Plaintiffs by consolidating the pending unlawful detainer action and allowing Plaintiffs to make reasonable monthly payments in lieu of posting a bond until the State court action is decided.

This motion is timely because Plaintiffs have filed an answer in the unlawful detainer case, and the case is at issue.

### III. LEGAL ARGUMENT

In light of the GMAC's refusal to accept payments after accepting them for a year and a half, and foreclosing under a defective Notice of Default, the wrongfulness of the foreclosure justifies consolidating the Unlawful Detainer Action with the instant case.

#### A. California Law Authorizes the Consolidation Requested.

California Code of Civil Procedure §1048 provides:

> (a) When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
>
> (b) The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition

and economy, may order a separate trial of any cause of action,
including a cause of action asserted in a cross-complaint, or of any
separate issue or of any number of causes of action or issues,
preserving the right of trial by jury required by the Constitution or
a statute of this state or of the United States.

California Code of Civil Procedure §1048.

In the case at bar, GMAC foreclosed in the same month it accepted Plaintiffs' 18th

consecutive monthly payment. This is open and obvious "Dual-Tracking" that is prohibited by

California Foreclosure Statutes, HAMP, and FDIC guidelines. Further, GMAC accepted

payment towards the arrears for the 18 months and used the inaccurate Notice of Default to

support a Notice of Trustee's Sale. GMAC further failed to discuss foreclosure alternatives with

Plaintiffs thirty days prior to recording a Notice of Default in violation of California Civil Code

Section 2923.5. Moreover, GMAC used its own bankruptcy as an excuse to deny offering any

relief. Plaintiffs were always ready, willing, and able to make a fair monthly payment as

evidenced by the 18 months of accepted mortgage and arrearage payments.

If the unlawful detainer action is allowed to proceed, Plaintiffs will lose possession of

their home, an irreparable injury. The balance of equity tips in Plaintiffs' favor because:

    (a)    the equity will be protected during Plaintiffs' residency;

    (b)    it was GMAC who committed the errors in the foreclosure process by not

            contacting Plaintiffs thirty days prior to the Notice of Default, using an inaccurate

            Notice of Default;

    (c)    GMAC accepted modified payments for eighteen months leading Plaintiffs to

            believe that there would never be a foreclosure; and

    (d)    GMAC refused to consider any modification or mortgage relief alternatives.

Furthermore, California has a strong public policy of favoring home retention over foreclosure. Justice will be best served to allow Plaintiff to have his day in court to challenge the wrongful foreclosure.

The Fourth District Court of Appeal stated in *Asuncion v. Superior Court of the City of San Diego* (1980) 108 Cal.App.3d 141, 144, 166 Cal.Rptr. 306, 308, in pertinent part: "It is generally recognized the summary unlawful detainer action is not a suitable vehicle to try complicated ownership issues involving assertions of fraud and deceptive practices such as the Asuncions allege here." Therefore this court should allow consolidation of the instant case and the Unlawful Detainer case involving the same parties and property.

GMAC can be found to have committed Fraud and Dishonesty by blatantly violating the HAMP guidelines against dual-tracking. "Fraud" and "dishonesty" are closely synonymous, and "fraud" may consist in misrepresentation or concealment of material facts or statement of fact made with the consciousness of its falsity. *Fort v. Board of Medical Quality Assurance of State of Cal.* (1982) 136 Cal.App.3d 12, 185 Cal.Rptr. 836.

GMAC signed a Servicer Participation Agreement (SPA) with the U.S. Treasury Department to provide HAMP modifications to benefit homeowners, in return for receiving Trouble Asset Relief Program funds. GMAC is prohibited from "dual tracking" that resulted in a Trustee's Sale of the Plaintiffs' home. A Notice of Default was recorded in January of 2011, and based thereon, a Notice of Trustee's Sale was recorded in October 26, 2012. The Trustee's Sale occurred on December 28, 2012, despite Plaintiffs having made prompt and regular payments to GMAC throughout this period.

A duty of disclosure in a fraud context is one which may exist when one party to a transaction has sole knowledge or access to material facts and knows that such facts are not

known to or reasonably discoverable by the other party. *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 134 Cal.Rptr. 375. A duty to disclose arises, even in absence of a fiduciary or confidential relationship, if material facts are known only to defendant and defendant knows that plaintiff does not know or cannot reasonably discover undisclosed facts. *Karoutas v. HomeFed Bank* (1991) 232 Cal.App.3d 767, 283 Cal.Rptr. 809. Plaintiff did not know that despite Plaintiffs' continued regular payments on their plan, GMAC could sell their house whenever they felt like it. GMAC's actions against the Plaintiffs are unconscionable.

In *Asuncion, supra*, the Fourth District Court of Appeal further stated in pertinent part at page 146:

> "As we see it, after the eviction is transferred to the Superior Court, a number of procedural devices exist to facilitate accommodating the eviction action with the fraud action which the Asuncions separately filed. A possibility, which we understand is frequently utilized in other counties, is for the superior court to stay the eviction proceedings until trial of the fraud action, based on the authority of Code of Civil Procedure section 526 which permits a preliminary injunction to preserve the status quo on such grounds as irreparable injury, multiplicity of legal actions, or unconscionable relative hardship... We hold only, the Asuncions are entitled to defend this eviction action based on the claims of fraud and related causes which they have asserted, and accordingly the action necessarily exceeds the jurisdiction of the municipal court and cannot be tried there."

Plaintiff here is entitled to the same treatment.

**B. The Limited Court Lacks Jurisdiction to Render a Judgment as to the Lawfulness of Claims to Title by Defendant.**

California Code of Civil Procedure §85 provides:

An action or special proceeding shall be treated as a limited civil case if all of the following conditions are satisfied, and, notwithstanding any statute that classifies an action or special proceeding as a limited civil case, an action or special proceeding shall not be treated as a limited civil case unless all of the following conditions are satisfied: (a) The amount in controversy does not exceed twenty-five thousand dollars ($25,000). As used in this section, "amount in controversy" means the amount of the demand, or the recovery sought, or the value of the property, or the amount of the lien, that is in controversy in the action, exclusive of attorneys' fees, interest, and costs. (b) The relief sought is a type that may be

granted in a limited civil case. (c) The relief sought, whether in the complaint, a cross-complaint, or otherwise, is exclusively of a type described in one or more statutes that classify an action or special proceeding as a limited civil case or that provide that an action or special proceeding is within the original jurisdiction of the municipal court. Thus any action which is based on the same facts and issues whether as a Claim or counterclaim would require the Limited Court of to transfer Jurisdiction and for the unlimited court to assume Jurisdiction.

At bar, the amount in controversy exceeds the jurisdictional limits of the limited court in that Plaintiff is seeking recovery of damages exceeding $25,000, and the imposition of punitive damages in a substantially greater amount. Thus, the Limited Court lacks subject matter jurisdiction, whereas here, the amount is controversy exceeds $25,000 in quantifiable compensatory damages.

A court has no jurisdiction to hear or determine a case where the type of proceeding or amount in controversy is beyond jurisdiction defined for that particular court by statute or constitutional provision. *Workmen's Compensation Appeals Bd. v. Small Claims Court of Alameda County* (1973) 35 Cal.App.3d 643, 111 Cal.Rptr. 6. For jurisdictional reasons alone, Plaintiffs' motion to consolidate should be granted.

### C. An Injunction Should Be Issued Because Plaintiffs Are Likely To Succeed On The Merits of Their Complaint And The Balance of Harm Tips In Their Favor.

Pursuant to California Code of Civil Procedure §562(a)(2), an injunctive relief is granted if Plaintiffs allege irreparable injury. The California Supreme Court has developed a two-part balancing test in deciding whether to issue a temporary restraining order:

(1) The likelihood that the applicant will prevail on the merits; and

(2) The interim harm the applicant is likely to suffer if the injunction is denied, as

compared to the harm that the respondents is likely to suffer if the injunction is

issued.

*IT Corps vs. County of Imperial*, (1983) 35 Cal. 3d 63, 69-70.

Here the balance of hardships tips sharply in support of Plaintiffs: They will lose their home if an injunction is not issued, and the fairness of this motion for consolidation is necessary

to right the foreclosure wrongs of GMAC.  More importantly, Defendants will suffer no serious

hardship as their security in the home will remain.  *Demarest v. Quick Loan Funding, Inc.,*

2009 WL 940377 at 9 (C.D. Cal.2009).  The balance of hardship tips sharply in Plaintiffs' favor.

At bar, Plaintiffs have established serious questions with the foreclosure process to justify

granting this consolidation motion.

### D. <u>Plaintiffs are Entitled To Equitable Relief And Will Suffer Irreparable Harm Unless a Consolidation is Ordered</u>.

To be entitled to a preliminary injunction, Plaintiffs must show that failure to provide

interim relief will cause him irreparable injury.  *Barajas v. City of Anaheim* (1993) 15 Cal. App.

4th 1808, 1913.  Unfortunately, the dreams of many home owners have been derailed by the

astounding number of foreclosures across the country.

GMAC surprised Plaintiffs by selling their home in the very same month that they

accepted what turned out to be their 18th consecutive payment, including arrears.  In addition,

GMAC improperly foreclosed on December 28, 2012 using a "Stale" Notice of Default on which

there had been a significant material decrease in the mortgage delinquency.  For GMAC to sell

Plaintiffs' home after leading Plaintiffs to believe that there would be no foreclosure -- because

Plaintiffs were in their second year of making payments -- is bad faith conduct justifying the

granting of the consolidation.

If the Unlawful Detainer is not consolidated and stayed, Plaintiffs will not have their "day

in court."  Plaintiffs are prepared to pay reasonable rental value until this state court action of

wrongful foreclosure comes to a conclusion, or the matter is otherwise resolved through the

modification process.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court issue an order to consolidate both cases.

Dated:  March 8, 2013

Respectfully submitted,

LAW OFFICES OF ART HOOMIRATANA

By: _____
      Bryan R. Smith
Attorneys for Plaintiffs
JOHN GARCIA and MARIA GARCIA

EXHIBIT D

## DECLARATION OF MARIA GARCIA

I, MARIA GARCIA, am a Plaintiff in Case No. INC 1300675 before the Riverside County Superior Court. I can competently testify under oath to the information in this declaration.

1. I refinanced my home at 80636 Jasmine Lane, Indio, California 92201 and obtained the subject loan in May of 2006.

2. A hardship occurred and eventually we were able to make payment arrangements with GMAC that satisfied our monthly mortgage payment and an additional extra amount towards the arrears.

3. From May of 2011 through December of 2012, I made regular payments to GMAC. GMAC always told me that as long as these payments were made there would never be any foreclosure.

4. In the same month as the December payment, we received notice that the home had been sold at a Trustee's Sale. This completely took us by surprise and has been devastating. GMAC has never provided any reason for selling the home as we were in full compliance with the payment plan.

5. I hope the Unlawful Detainer action is stopped and added to this case against DEFENDANTS so that I may properly pursue my legal interests. It seems very unfair to allow my family to be evicted if that eviction is based on a wrongful foreclosure. We relied on GMAC's promises that as long as we made these monthly payments there would be no foreclosure. We relied on that promise for over one and a half years and it is

unfair that they would "out of the clear blue" terminate our agreement and violate their promises to not foreclose.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 26 day of February 2013, at Indio, California.

MARIA GARCIA