**Hearing Date and Time: April 30, 2013 at 10:00 AM (ET)**

**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Tel:   (212) 371-6600
Fax:   (212) 751-2540
Mark A. Strauss (mstrauss@kmllp.com)
J. Brandon Walker (bwalker@kmllp.com)

*Counsel for Plaintiffs Landon Rothstein, et al.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**OBJECTION OF PLAINTIFFS IN *ROTHSTEIN, ET AL. v. GMAC MORTGAGE, LLC, ET AL.*, No. 12-CV-3412-AJN (S.D.N.Y.) TO THE MOTION OF ALLY FINANCIAL, INC. AND ALLY BANK FOR AN ORDER ENFORCING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(A)(3) BY (1) ENJOINING PROSECUTION OF ALTER EGO AND VEIL-PIERCING CLAIMS IN *ROTHSTEIN*, AND (2) DECLARING SUCH CLAIMS VOID *AB INITIO*; AND CROSS-MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(D) TO THE EXTENT ANY CLAIMS ASSERTED BY PLAINTIFFS ARE SUBJECT TO THE AUTOMATIC STAY**

# TABLE OF CONTENTS

**Page No.**

**PRELIMINARY STATEMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**FACTS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **A.**    **Background.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **B.**    **The Claims Against Ally Bank.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **C.**    **The Claims Against Ally Financial..** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    **D.**    **The Procedural Status of** *Rothstein.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**ARGUMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**I.**    **MOVANTS ARE NOT ENTITLED TO THE RELIEF SOUGHT,
WITH RESPECT TO EITHER ALLY BANK OR ALLY FINANCIAL** . . . . . . . . . . 5

    **A.**    **As Against Ally Bank, Plaintiffs Do Not Assert Alter-Ego or
Veil-Piercing Claims, Much Less "Generalized" Ones.** . . . . . . . . . . . . . . . . . 8

    **B.**    **The Automatic Stay is Inapplicable to Plaintiffs' Claims Against
Ally Financial.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**II.**    **THE COURT SHOULD GRANT PLAINTIFFS RELIEF FROM THE
AUTOMATIC STAY TO THE EXTENT THAT ANY OF PLAINTIFFS'
CLAIMS ARE SUBJECT TO THE AUTOMATIC STAY..** . . . . . . . . . . . . . . . . . . 15

**III.**    **ALLY BANK AND ALLY FINANCIAL LACK STANDING TO CHALLENGE
PURPORTED VIOLATIONS OF THE AUTOMATIC STAY.** . . . . . . . . . . . . . . . . 18

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

## CASES

*A.H. Robins Co., Inc.*,
    788 F.2d 994 (4th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*,
    42 F.3d 1421 (3d Cir. 1994)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bowoto v. Chevron Texaco Corp.*,
    312 F. Supp. 2d 1229 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l. Inc.*,
    758 F.Supp. 908 (S.D.N.Y. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Tech. Corp.*,
    116 F.R.D. 397 (D. Conn. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*DeSouza v. PlusFunds Group, Inc.*,
    No. 05 Civ. 5990, 2006 WL 2168478 (S.D.N.Y. Aug. 1, 2006). . . . . . . . . . . . . . . . . . 6

*Doe v. Exxon Mobil Corp.*,
    573 F.Supp.2d 16 (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Furness v. Lilienfield*,
    35 B.R. 1006 (D. Md. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gray v. Hirsch*,
    230 B.R. 239 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hamilton v. Am. Corrective Counseling Serv., Inc.*,
    No. 05 Civ. 434, 2009 WL 973447 (N.D. Ind. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hollis Park Manor Nursing Home v. Landmark Am. Ins. Co.*,
    803 F. Supp. 2d 205 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Adler, Coleman Clearing Corp.*,
    247 B.R. 51 (Bankr. S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re BH S & B Holdings LLC*,
  420 B.R. 112 (Bankr. S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Brooks*,
  79 B.R. 479 (Bankr. 9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Cabrini Medical Center*,
  Bankr. No. 09-14398, 2012 WL 6629103 (S.D.N.Y. Dec. 20, 2012). . . . . . . . . . . . . . . 12

*In re Cook*,
  Bankr. No. 7-04-17704, 2008 WL 5157847 (Bankr. D.N.M. Sept. 15, 2008). . . . . . . . 21

*In re Desa Holdings Corp.*,
  353 B.R. 419 (Bankr. D. Del. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Deshazo*,
  2006 WL 5217795 (Bankr. D. Md.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Fiber Optek Interconnect Corp.*,
  Bankr. No. 05-30045, 2009 WL 3074605 (Bankr. S.D.N.Y. Sept. 23, 2009). . . . . . . 19, 20

*In re First Cent. Fin. Corp.*,
  238 B.R. 9 (Bkrtcy.E.D.N.Y.,1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*In re FPSDA I, LLC*,
  Bankr. No. 10-75439,  2012 WL 6681794 (Bankr. E.D.N.Y. Dec. 21, 2012). . . . . . . . . . 7

*In re Fuel Oil Supply & Terminaling, Inc.*,
  30 B.R. 360 (Bankr. N. D. Tex. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Globe Inv. and Loan Co., Inc.*,
  867 F.2d 556 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*In re HBA East, Inc.*,
  87 B.R. 248 (Bankr. E.D.N.Y. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Lake Country Inv. Ltd. Liab. Co.*,
  Bankr. No. 99-20287, 1999 WL 33490220 (Bankr. D. Idaho Sept. 22, 1999). . . . . . . . 19

*In re McGraw*,
  18 B.R. 140 (Bankr. W.D. Wisc. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re N.Y. Med. Grp.*, PC,
  265 B.R. 408 (Bankr. S.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

iii

*In re Parmalat Securities Litigation*,
    474 F. Supp. 2d 547 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

*In re Pecan Groves of Arizona*,
    951 F.2d 242 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-21

*In re Pitts*,
    Bankr. No. 808-74860, 2009 WL 4807615 (Bankr. E.D.N.Y. Dec. 8, 2009). . . . . . . . 5, 7

*In re Residential Capital, LLC*,
    12-12020 MG, 2012 WL 3555584 (Bankr. S.D.N.Y. Aug. 16, 2012).. . . . . . . . . . . . . 17

*In re Schur Mgmt. Co., Ltd.*,
    323 B.R. 123 (Bankr. S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Silverman*,
    42 B.R. 509 (Bankr. S.D.N.Y. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Soll*,
    181 B.R. 433 (Bankr. D.Ariz. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*,
    907 F.2d 1280 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re South Afr. Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Stivers*,
    31 B.R. 735 (Bankr. N. D. Cal. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re The Metal Center, Inc.*,
    31 B.R. 458 (Bankr.D.Conn.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Yerushalmi*,
    Bankr. No. 807-72816, 2012 WL 5839938 (Bankr. E.D.N.Y. Nov. 19, 2012). . . . . . . . 8

*Kalb, Voorhis & Co. v. American Fin Corp.*,
    8 F.3d 130 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kertesz v. Korn*,
    698 F.3d 89 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Maung Ng We v. Merrill Lynch & Co.,*
       2000 WL 1159835 (S.D.N.Y. Aug 15, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mazzeo v. Lenhart,*
       167 F.3d 139 (2d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Millard v. Developmental Disabilities Institute, Inc.,*
       266 B.R. 42 (Bankr. D. Conn. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Picard v. JPMorgan Chase & Co.,*
       460 B.R. 84 (S.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Queenie, Ltd. v. Nygard Int'l,*
       321 F.3d 282 (2d Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Spencer v. Bogdanovich,*
       292 F.3d 104 (2d Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.,*
       884 F.2d 688 (2d Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Taberna Capital Mgmt. LLC v. Dunmore,*
       2008 U.S. Dist. LEXIS 54776 (S.D.N.Y., July 15, 2008). . . . . . . . . . . . . . . . . . . . . . . 20

*Taberna Capital Mgmt., LLC v. Dunmore,*
       08 CIV.1817 JSR, 2008 WL 2139135 (S.D.N.Y. May 20, 2008). . . . . . . . . . . . . . . . . . 20

*Taberna Capital Mgt, LLC v. Dunmore,*
       392 B.R. 559 (S.D.N.Y. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Teachers Ins. & Annuity Ass'n of Am. v. Butler,*
       803 F.2d 61 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomson Kernaghan & Co. v. Global Intellicom, Inc.,*
       No. 99-CV-3005, 2000 WL 640653 (S.D.N.Y. May 17, 2000).. . . . . . . . . . . . . . . . . . . 9

*Trustees of Bricklayers Local 7 Pension Trust v. Stileitaliano Int'l,*
       No. 04 Civ. 952, 2004 WL 1774223 (N.D.Cal. Aug. 6, 2004). . . . . . . . . . . . . . . . 14, 15

*Uto v. Job Site Services, Inc.,*
       444 B.R. 222 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Variable–Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.,*
       945 F.Supp. 603 (S.D.N.Y.1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

***STATUTES***

11 U.S.C. § 362. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12 U.S.C. § 2601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1951(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1961. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

***Other Authorities***

Martin J. Bienenstock, *Bankruptcy Reorganization* 131 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . 19

Restatement (Second) of Agency (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## PRELIMINARY STATEMENT

Non-debtors Ally Bank ("Ally Bank") and Ally Financial, Inc. ("Ally Financial"), joined by the Debtors, request an order enforcing the automatic stay by enjoining the prosecution of purported "alter-ego and veil-piercing claims" asserted against Ally Bank and Ally Financial in the putative class action *Rothstein, et al. v. GMAC Mortgage, LLC, et al.*, No. 1:12-CV-3412-AJN (S.D.N.Y) ("*Rothstein*").  Citing the principle that "generalized" alter-ego and veil-piercing claims are property of the estate, movants argue that the Debtors have "exclusive standing" to prosecute those claims and that the plaintiffs in *Rothstein* ("Plaintiffs") are prohibited from doing so.[1]  Mot. ¶¶ 4.

1.      Movants are not entitled to the relief sought – with respect to either Ally Bank or Ally Financial.

2.      As to Ally Bank, the premise of the motion is false.  Plaintiffs in *Rothstein* do not assert any alter-ego or veil-piercing claims against Ally Bank, much less "generalized" ones.  Rather, Plaintiffs only assert claims for agency liability and contract liability against Ally Bank.  Those claims are direct and personal, not conceivably derivative or otherwise property of the estate, and not subject to the automatic stay.

3.      Movants do not address the fact that Plaintiffs' claims against Ally Bank are exclusively for agency liability and contract liability.  Rather, movants simply gloss over the lack of any alter-ego or veil-piercing allegations against Ally Bank and improperly try to lump Ally Bank together with Ally Financial, against which Plaintiffs do plead alter-ego and veil-piercing claims.  Because there are no alter-ego or veil-piercing claims against Ally Bank, however, movants' cited rationale for application of the automatic stay is inapposite.  Moreover, no other purported basis for

---

[1]      References to "Mot. ¶ __" are to the Debtors' instant motion.

staying the claims against Ally Bank is suggested. Hence, the automatic stay is inapplicable to Plaintiffs' claims against Ally Bank.

4.      The automatic stay is also inapplicable to Plaintiffs' claims against Ally Financial. Plaintiffs allege direct claims and alter-ego/veil-piercing claims against Ally Financial. Plaintiffs' direct claims against Ally Financial – unaddressed by movants – are based on Ally Financial's own independent violations and breaches of duty and, hence, are not subject to the automatic stay.

5.      Plaintiffs' alter-ego and veil-piercing claims against Ally Financial are based on allegations of "particularized injury," not "generalized" injury as movants contend. Hence, those claims are also outside the ambit of the automatic stay.

## FACTS

### A.    Background

6.      *Rothstein* is a putative class action on behalf of mortgage loan borrowers relating to lender-placed insurance ("LPI").[2]  ¶ 34. Mortgage loan agreements entitle the lender (or servicer acting on its behalf) to be reimbursed by the borrower for the costs of LPI coverage. In *Rothstein*, the relevant servicer was GMAC Mortgage, LLC ("GMACM"), a Debtor. Plaintiffs allege that GMACM's costs were reduced by kickbacks and secret rebates that it received from its LPI insurers, but that borrowers were nevertheless fraudulently and extortionately billed and charged for the full price. ¶ 69.

---

[2]      References to "¶_" are to Plaintiffs' Second Amended Class Action Complaint (the "SAC") in *Rothstein* (ECF No. 39), which is annexed as Exhibit 2 to the accompanying Declaration of Mark A. Strauss, dated April 2, 2013. ("Strauss Decl."). The operative complaint in *Rothstein* is the SAC, not the First Amended Class Action Complaint.

2

7.      The Defendants in *Rothstein* include GMACM's two LPI insurers, Balboa Insurance Company ("Balboa") and Meritplan Insurance Company ("Meritplan"), and their affiliate, Newport Management Corporation ("Newport").  ¶¶ 30-32.  The SAC also names as defendants Ally Bank and Ally Financial, and their unidentified affiliate, John Doe Corporation ("John Doe").  ¶¶ 24-26. The SAC alleges claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq*. ("RICO"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA"), and state law.  ¶¶ 251-351.  The RICO predicate acts alleged are mail and wire fraud (including "honest services" fraud), 18 U.S.C. §§ 1341 and 1343, and violations of the Hobbs Act, 18 U.S.C. § 1951(a).  ¶¶ 258, 271.

**B.      The Claims Against Ally Bank**

8.      The claims against Ally Bank are based exclusively on agency liability and contract liability.  The SAC alleges that Ally Bank entered into a series of servicing and sub-servicing agreements with GMACM pursuant to which GMACM was appointed as Ally Bank's agent to service approximately 690,000 mortgage loans that Ally Bank owns or to which Ally Bank owns the servicing rights.  ¶¶ 141-42.  The SAC further alleges that GMACM committed numerous violations of RICO, RESPA, and common law while acting within the course and scope of its authority as Ally Bank's agent.  ¶ 142.  The SAC asserts that Ally Bank is liable for these violations under agency law. *Id*.[3]  Also based on agency law, the SAC asserts that Ally Bank is liable for violations committed by GMACM's agent (Ally Bank's sub-agent), Newport.  ¶ 143.

---

[3]      *See In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 550 (S.D.N.Y. 2007) ("[P]rincipals typically are liable for torts and crimes committed by their agents acting within the scope of their authority.")

3

9.      The SAC additionally alleges breach of contract and breach of the covenant of good faith and fair dealing claims against Ally Bank.  ¶¶ 314-32.  Those claims arise out of, and are based upon, Ally Bank's status as owner and/or assignee of the 690,000 mortgage loans in question. ¶¶ 321-22, 331-32.  The SAC alleges that, by virtue of such status, Ally Bank "stands in the shoes" of the original lenders, is obligated under the contracts, and is liable for their breach.  ¶¶ 315, 324.

10.     The SAC is devoid of any alter-ego or veil-piercing allegations against Ally Bank.

**C.    The Claims Against Ally Financial**

11.     Plaintiffs allege direct claims and alter-ego/veil-piercing claims against Ally Financial.  The direct claims are based on Ally Financial's independent violations and breaches of duty.  Specifically, the SAC alleges that Ally Financial violated RICO and RESPA through its own conduct, including, *inter alia*, "transferring funds" representing kickback payments from John Doe to GMACM through Ally Financial's "'global cash management system.'"  ¶ 281.

12.     The alter-ego and veil-piercing claims against Ally Financial are premised in substantial part on the theory that Ally Financial directly and actively participated in the violations alleged while using GMACM as a corporate shell to unjustly shield itself from liability.  As set forth in more detail below, the SAC alleges, *inter alia*, that Ally Financial "controlled" the mortgage servicing activities of GMACM and thereby "caused GMACM to engage in the misconduct alleged herein, and used GMACM's corporate form to accomplish the fraudulent and extortionate objectives alleged herein to injure Plaintiffs and the Class."  ¶ 147.

**D.    The Procedural Status of *Rothstein***

13.     *Rothstein* was filed on April 30, 2012.  Two weeks later, on May 14, 2012, GMACM filed for bankruptcy protection under Chapter 11.  On September 28, 2012, Plaintiffs filed their First

4

Amended Class Action Complaint (the "FAC"), dropping all claims against GMACM and naming

Ally Bank and Ally Financial as new defendants. (ECF No. 25). On October 23, 2012, the parties

entered into a stipulation extending Defendants' time to respond to the FAC until November 29,

2012. (ECF No. 27). On November 28, 2012, the parties entered into a second stipulation,

extending defendants' response time an additional two weeks, to December 13, 2012. (ECF No. 28).

14.    On the eve of the expiration of this new response date, Ally Bank and Ally Financial

raised the issue of the automatic stay with Plaintiffs' counsel. On December 13, 2012, Ally Bank

and Ally Financial entered into a stipulation with Plaintiffs extending their time to respond to the

FAC until after resolution of the automatic-stay related proceedings in this Court. (ECF No. 34).

Ally Bank and Ally Financial filed the instant motion on December 17, 2012. On January 22, 2013,

Plaintiffs filed the SAC. Strauss Decl. Ex. 2.

15.    Plaintiffs continue to litigate their claims in *Rothstein* against the insurer co-

defendants, Balboa, Meritplan, and Newport. Those defendants filed a motion to dismiss the SAC

on February 22, 2013. (ECF No. 43). Plaintiffs filed papers opposing that motion on March 22,

2013. (ECF No. 50). Reply papers are due April 8, 2013. (ECF No. 52).

## ARGUMENT
### I.
### MOVANTS ARE NOT ENTITLED TO THE RELIEF SOUGHT,
### WITH RESPECT TO EITHER ALLY BANK OR ALLY FINANCIAL

16.    "It is well-established that 'stays pursuant to § 362(a) are limited to debtors and do

not encompass non-bankrupt co-defendants.'"   *Uto v. Job Site Servs., Inc.*, 444 B.R. 222, 224

(E.D.N.Y. 2011) (*quoting Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir.

1986) (collecting cases)); *see also Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)

("[A] suit against a co-defendant is not automatically stayed by the debtor's bankruptcy filing."); *In*

5

*re Pitts*, Bankr. No. 808-74860, 2009 WL 4807615, at *5 (Bankr. E.D.N.Y. Dec. 8, 2009)

("Subsection 362(a)(1) [of the Bankruptcy Code] is generally not available to non-debtors.");

*DeSouza v. PlusFunds Grp., Inc.*, No. 05 Civ. 5990, 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1,

2006) ("The plain language of [11 U.S.C.] § 362(a)(1) limits the extension of an automatic stay to

a proceeding against the debtor, and courts will generally not extend the automatic stay of

proceedings pursuant to § 362(a)(1) to non-debtor co-defendants.") (internal quotation marks and

citations omitted)); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) ("In general,

only a debtor is included within the protective umbrella afforded by the automatic stay that arises

pursuant to § 362(a)(1).  Third-party defendants or co-defendants are typically not provided such

protection.").[4]

> 17.    In some cases, the automatic stay can be extended to non-debtors,

> > [B]ut only where there exist "unusual circumstances . . . which would require 'something more than the mere fact that one of the parties to the lawsuit has filed . . . bankruptcy.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  Such circumstances are typically found "only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie*, 321 F.3d at 287.  Examples delineated by the Second Circuit include: (1) "a claim to establish an obligation of which the debtor is a guarantor," *Queenie*, 321 F.3d at 288 (*citing McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510–11 (3d Cir.1997)); (2) "a claim against the debtor's insurer," *Queenie*, 321 F.3d at 288 (*citing Johns-Manville Corp. v. Asbestos Litig. Group*, 26 B.R. 420, 435–36 (Bankr. S.D.N.Y.1983)); and (3) "actions where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant . . .' " *Queenie*, 321 F.3d at 288 (*quoting A.H. Robins*, 788 F.2d at 999).

---

[4]    *See also In re Desa Holdings Corp.*, 353 B.R. 419, 426 (Bankr. D. Del. 2006) ("It is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against non-debtors.").

*Uto*, 444 B.R. at 224.

18.     Furthermore, "the stay should not be extended where the non-debtor is 'independently

liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's

liability rests upon his own breach of duty.'" *In re FPSDA I, LLC*, Bankr. No. 10-75439, 2012 WL

6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012) (quoting *A.H. Robins*, 788 F.2d at 999-1000 (4th

Cir. 1986)). "Ultimately, the automatic stay may only be extended to protect non-debtors where such

relief is 'necessary to protect the debtor's reorganization,' and where the lawsuit sought to be stayed

is 'sufficiently likely to have a material effect upon . . . reorganization efforts.'" *Id.*, (quoting *Gray*

*v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y. 1999)).

19.     Here, movants do not argue or present any evidence that extension of the stay is

warranted by "unusual circumstances," or that prosecution of Plaintiffs' claims would have either

a "material effect upon the reorganization" or an "immediate adverse economic consequence for the

debtor's estate."[5]

20.     Rather, movants simply request enforcement of the stay on the sole ground that

Plaintiffs' claims purportedly consist of "generalized" "alter-ego and veil-piercing" claims.  Mot.

¶¶ 4.  To be sure, if a party asserts an alter-ego or veil-piercing claim, and such claim "is a general

one, with no particularized injury arising from it, and if that claim could be brought by any creditor

---

[5]     In keeping with the principle that extending the stay to non-debtors is "extraordinary relief,
the party seeking extension of the stay 'must put forth real evidence demonstrating an actual impact upon,
or threat to, the reorganization efforts if the stay is not extended.'" *In re FPSDA I, LLC*, 2012 WL 6681794,
at *8 (quoting *Gray*, 230 B.R. at 243-44) "It is not enough for the movant to show some limited risk, or that
there is a theoretical threat to the reorganization, because it is always the case that a lawsuit against principals
of the Debtor *could* have *some* effect on the reorganization. . . . Moreover, extensions of the stay to protect
non-debtor parties are the exception, not the rule, and are generally not favored.  Thus, the movant must show
by clear and convincing evidence' that extension of the stay is warranted." *Id.* (emphasis in original) (citing
*Millard v. Developmental Disabilities Instit., Inc.*, 266 B.R. 42 (Bankr. D. Conn. 2001) and *In re Pitts*, 2009
WL 4807615, at *8 (Bankr. E.D.N.Y. Dec. 8, 2009)).

of the debtor, the trustee is the person to assert the claim, and the creditors are bound by the outcome

of the trustee's actions." *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 701 (2d Cir.

1989); *see also In re Yerushalmi*, Bankr. No. 807-72816, 2012 WL 5839938, at *6 (Bankr. E.D.N.Y.

Nov. 19, 2012). Nevertheless, for the following reasons, movants are not entitled to the relief sought

– as to either Ally Bank or Ally Financial.

**A. As Against Ally Bank, Plaintiffs Do Not Assert Alter-Ego or Veil-Piercing Claims, Much Less "Generalized" Ones**

21.    Contrary to the implicit premise of Movants' motion, Plaintiffs' claims against Ally

Bank do not include any alter-ego or veil-piercing claims. Rather, the only claims asserted against

Ally Bank in *Rothstein* are for agency liability and contract liability. Specifically, the SAC alleges

that Ally Bank hired GMACM as Ally Bank's agent to service loans on Ally Bank's behalf, and that

GMACM (and its sub-agent, Newport) committed violations while acting in the scope of such

agency. ¶ 141-43. The SAC thus alleges that Ally Bank is liable under agency principles for the

misconduct of its authorized agent, GMACM, and for that of its authorized sub-agent, Newport. *Id.*

In addition, the SAC alleges that, as owner and/or assignee of Plaintiffs' mortgages, Ally Bank

"stands in the shoes" of the original lenders, is obligated under the contracts, and is liable for their

breach. ¶¶ 315, 324.

22.    These claims have nothing to do with alter-ego or veil-piercing liability, but constitute

direct, personal claims that rest on Ally Bank's own breaches of duty. Hence, these claims are not

subject to the automatic stay. *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 96 (Bankr.

S.D.N.Y. 2011) (distinguishing veil-piercing claims from direct claims of creditors that the trustee

does not have standing to bring); *see also In re McGraw*, 18 B.R. 140, 143 (Bankr. W.D. Wisc.

1982) (automatic stay inapplicable to *respondeat superior* claims against debtor's former employer).[6]

23.    Movants do not address that Plaintiffs' claims against Ally Bank are based

exclusively on agency liability and contract liability.  Nor do movants argue that such claims are

derivative.  Instead, movants erroneously try to lump Ally Bank together with its co-defendant, Ally

Financial, against which Plaintiffs do plead alter-ego and veil-piercing claims.  Plaintiffs' allegations

against each entity, however, are distinct.  The SAC is devoid of any alter-ego and veil-piercing

claims against Ally Bank.

24.    Movants also erroneously suggest that agency liability claims are somehow

tantamount to alter-ego/veil-piercing claims because both are forms of "vicarious" liability.  Mot.

¶¶ 4, 10-12.  A claim against a principal for wrongdoing committed by its agent, however, is

"conceptually distinct" from alter-ego/veil-piercing liability.  *See In re South Afr. Apartheid Litig.*,

617 F. Supp. 2d 228, 303 (S.D.N.Y. 2009) ("When a court determines that two companies are alter

egos, they may be treated as one unit for all legal purposes. On the other hand, vicarious liability runs

only in one direction – from agent to principal – and relates only to particular actions.").[7]  The claim

---

[6]        *See In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn.1983) ("[I]n situations where a codefendant is independently liable as, for example, where the debtor or another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor."); *Thomson Kernaghan & Co. v. Global Intellicom, Inc.*, No. 99-CV-3005, 2000 WL 640653, at *15 (S.D.N.Y. May 17, 2000) (same); *First Cent. Fin. Corp.*, 238 B.R. at 18 ("[W]here a non-debtor codefendant may be held independently liable of the debtor, then there is no compelling basis by which a court must extend the automatic stay provisions of § 362 to the non-debtor codefendants.").

[7]        *See also Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 31 (D.D.C. 2008) (distinguishing respondeat superior and alter-ego claims); *Maung Ng We v. Merrill Lynch & Co.*, 2000 WL 1159835, at *4-5 (S.D.N.Y. Aug. 15, 2000) (same); *Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Techs. Corp.*, 116 F.R.D. 397, 405 (D. Conn. 1987) ("While corporate veil-piercing theories are useful to
(continued...)

against the principal for agency liability is a form of direct and not derivative liability resting on the

principal's own, independent breach of duty, *i.e.*, in placing the agent in a position, and giving the

agent the means, to harm the plaintiff.[8]  *See Hollis Park Manor Nursing Home v. Landmark Am. Ins.*

*Co.*, 803 F. Supp. 2d 205, 209 (E.D.N.Y. 2011) (*respondeat superior* not properly characterized as

form of "derivative liability" as term "derivative" refers to claims brought "in the name of the

company").  Furthermore, "[u]nlike liability under the alter-ego or veil-piercing test, agency liability

does not require the court to disregard the corporate form." *Bowoto v. Chevron Texaco Corp.*, 312

F. Supp. 2d 1229, 1238 (N.D. Cal. 2004).  Moreover, "[a] judgment that an employer is liable for

some specific acts of its employee under a *respondeat superior* theory does not render the employer

generally liable for all the employee's debts." *Kertesz v. Korn*, 698 F.3d 89, 91 (2d Cir. 2012).

25.    Additionally, this is not a case involving "veil-piercing in the parent-subsidiary

context based on agency theory." *In re BH S & B Holdings LLC*, 420 B.R. 112, 142 n.9 (Bankr.

S.D.N.Y. 2009).  Plaintiffs' agency liability claims against Ally Bank have nothing to do with veil-

---

[7] (...continued)
demonstrate that two purportedly separate entities are . . . in reality the same actor; agency respects the legal
and physical separateness of the alleged principal and agent, finding liability on the part of the agent or
principal only as an outgrowth of their contractual interrelationship as defined by contractual consent.");
Restatement (Second) of Agency, Appendix § 14M, Reporter's Notes, at 68 (1958) ("It is useful to
distinguish situations in which liability is imposed . . . . Because of the existence of an agency relation . . .
from cases in which the corporate veil . . . is pierced.")

[8]     *See* Restatement (Second) of Agency § 261 (1958) ("A principal who puts [an] agent in a
position which enables the agent, while . . . acting within his authority, to commit a fraud upon third persons
is subject to liability to such third persons for the fraud."); *see also Parmalat*, 474 F. Supp. 2d at 547
(S.D.N.Y.2007) ("Liability is imposed on the principal 'not because it committed some wrongdoing . . . ,
but because its *status* merits responsibility for the tortious actions of its agent.'") (quoting *Am. Tel. & Tel.
Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1431 (3d Cir. 1994)) (emphasis in original); *In re
Adler, Coleman Clearing Corp.*, 247 B.R. 51, 95 (Bankr. S.D.N.Y. 1999) ("As a general rule, '[a] principal
is liable for the frauds and misrepresentations of his agent within the scope of the authority or employment
of the agent, even though he had no knowledge thereof and intended no fraud.'") (citiation omitted).

10

piercing or the parent-subsidiary context.  Ally Bank and GMACM are not parent and subsidiary --

Ally Bank is not even upstream in the Ally Financial corporate structure from GMACM -- and

Newport is completely unaffiliated with Ally Bank.  Strauss Decl. Exs. 3-5.  Moreover, the relevant

agency relationships arose by virtue of contract, *i.e.*, servicing agreements appointing GMACM as

Ally Bank's agent and Newport as Ally Bank's sub-agent, ¶¶ 141-43, not any purported allegations

of "control" or "domination" by Ally Bank over GMACM or Newport, of which there are none in

the SAC.  *See, e.g.*, *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 758 F. Supp.

908, 914 (S.D.N.Y. 1991) (Veil-piercing claims, whether based on agency theory or alter-ego theory,

require "a finding of control or domination of the subsidiary by the parent, whether over the

particular transaction at issue or over all aspects of the subsidiary's conduct.").

26.      To be sure, Delaware law "allows a debtor corporation to pierce its own corporate

veil, thereby giving a bankruptcy trustee or debtor-in-possession exclusive standing to assert ***an alter***

***ego claim*** on behalf of the bankruptcy estate." Mot. ¶ 18 (emphasis added).  Movants do not and

cannot, however, cite any similar law with respect to claims based on agency liability or contract

liability.

27.      Moreover, it would be illogical to suggest that the debtors or any other creditors were

injured by the misconduct alleged or would have standing to complain of such misconduct.  The

claims involve specific acts to wrongfully obtain money from Plaintiffs.  ¶¶ 7-11, 67-88.  Only

Plaintiffs were parties to mortgage loan agreements with Ally Bank and owed the duties that

Plaintiffs allege were breached, not other creditors.  The misconduct alleged in *Rothstein* injured

only Plaintiffs, not other creditors.  Plaintiffs alone suffered the injury.  No Debtors or any creditors

have asserted, or could assert, claims the same as or similar to those alleged by Plaintiffs.

28.    Because Plaintiffs do not assert any alter-ego or veil-piercing claims against Ally

Bank, Movants' cited rationale for application of the automatic stay is inapposite.  Accordingly,

Plaintiffs' claims against Ally Bank are not subject to the automatic stay.

**B.    The Automatic Stay is Inapplicable to Plaintiffs' Claims Against Ally Financial**

29.    The automatic stay is also inapplicable to Plaintiffs' claims against Ally Financial.

30.    Plaintiffs' direct claims against Ally Financial are based on Ally Financial's

independent violations and breaches of duty.  Specifically, the SAC alleges that Ally Financial

violated RICO and RESPA through its own conduct, including, *inter alia*, "transferring funds"

representing kickback payments from John Doe to GMACM through Ally Financial's "'global cash

management system.'"  ¶ 281.  Movants do not address Plaintiffs' direct liability claims against Ally

Financial.  Movants do not dispute that those claims are direct and personal to Plaintiffs, and not

derivative or otherwise property of the estate.

31.    Plaintiffs' alter-ego and veil-piercing claims against Ally Financial are based on

allegations of "particularized" injury, not "generalized" injury as Movants erroneously contend.

32.    In *In re Cabrini Medical Center*, Bankr. No. 09-14398, 2012 WL 6629103 (S.D.N.Y.

Dec. 20, 2012), the court stated:

> A creditor has standing to bring an alter-ego claim when the harm
> alleged in support of the claim is personal to them; a creditor lacks
> standing to bring such a claim when the harm alleged is general.  A
> claim is general "if [there is] . . . no particularized injury arising from
> it, and [it] could be brought by any creditor of the debtor . . . ." A
> claim is personal to the creditor "[w]hen a third party has injured not
> the bankrupt corporation itself but a creditor of that corporation . . ."

*Id*. at *6 (quoting *St. Paul*, 884 F.2d at 701; *Picard*, 460 B.R. at 89); *see also Kalb, Voorhis & Co.*

*v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("If a[n alter ego] claim is a general one, with

no particularized injury arising from it, and if that claim could be brought by any creditor of the

debtor, the trustee is the proper person to assert the claim . . . .").

33.    Here, the alter-ego and veil-piercing claims against Ally Financial are premised on

the theory that Ally Financial directly and actively engaged in violations while using GMACM as

a corporate shell to unjustly shield itself from liability. Specifically, the SAC alleges that Ally

Financial "controlled" the mortgage servicing activities of GMACM and "caused GMACM to

engage in the misconduct alleged . . . ." ¶ 147.  As indicated above, the SAC alleges, *inter alia*, that

Ally Financial participated in the scheme by transferring funds representing kickbacks from John

Doe to GMACM via Ally Financial's "'global cash management system.'" ¶¶ 11, 78, 257(j), 263(i),

281.  In addition, the SAC alleges that:

- "[T]he day-to-day business operations of . . . GMACM were run at the direction of and controlled by Ally Financial . . ." and "Ally Financial ultimately controlled every aspect of the mortgage . . . servicing process," ¶ 149; and that,

- Ally Financial admitted that "'Ally Financial engages in the business of servicing residential mortgage loans through various indirect subsidiaries, including GMAC Mortgage and its subsidiaries,'" and that it "'operate[s] directly and through our subsidiaries and affiliates. . . . We . . . service . . . residential . . . mortgage loans and mortgage related products.'" ¶¶ 150-51.

34.    The SAC additionally alleges that Ally Financial's "control" over the servicing

misconduct at issue is evidenced, *inter alia*, by:

- Ally Financial's execution of a consent order with the Federal Reserve Board ("FRB") and Federal Deposit Insurance Corporation ("FDIC") in 2011 (the "Consent Order"), agreeing to oversee, supervise, and monitor GMACM's mortgage servicing operations to make sure that those operations comply with all legal requirements, ¶ 152;

- Ally Financial's designation of an Ally Financial risk manager, Mark Weintraub, to be responsible for GMACM's compliance with the Consent Order; ¶ 153;

13

- Ally Financial's submission of reports to the FRB and FDIC regarding Consent Order compliance on a joint basis with GMACM based on the stated belief that "'enterprise risk management is a holistic and continuous process involving governance, policies, procedures, tools, methodologies and resources that transcend legal entity and organizational boundaries'", ¶ 238;

- Ally Financial's agreement to be "'secondarily liable'" for GMACM's financial obligations under the Consent Order, ¶ 240;

- The filing of a complaint by forty-nine state attorneys general alleging mortgage servicing improprieties committed by, *inter alia*, Ally Financial and GMACM, and seeking hold Ally Financial liable for those violations, ¶ 241; and,

- Ally Financial's resolving the claims of the state attorneys general by executing the $25 billion multi-state mortgage settlement pursuant to which Ally Financial agreed to implement "comprehensive reform of mortgage servicing practices" at GMACM,. ¶ 242.

35.    These claims allege "particularized injury," and thus are not subject to the automatic stay. *See Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 607-8 (S.D.N.Y.1996) (plaintiff asserted an individualized alter ego claim against director and president of bankrupt company because it alleged that he had participated "directly and actively" in infringing its patent); *Hamilton v. Am. Corrective Counseling Servs., Inc.*, No. 05 Civ. 434, 2009 WL 973447, at *4 (N.D. Ind. Apr. 8, 2009) (Claim that non-debtor defendants harmed plaintiffs by engaging in misconduct "through their corporate shells" are "based on a particularized injury, not a generalized injury common to all creditors and the corporation, so their claims aren't the property of the bankruptcy estate."); *Trustees of Bricklayers Local 7 Pension Trust v. Stileitaliano Int'l.*, No. 04 Civ. 952, 2004 WL 1774223, at *5 (N.D. Cal. Aug. 6, 2004) (complaint alleged particularized injury where allegations suggested that plaintiffs "were injured in a way that other creditors . . . were not").

36.    Movants point out that some of Plaintiffs' alter-ego and veil-piercing allegations involve "generalized" injury and conceivably could support claims brought by other creditors. This,

14

however, is not dispositive. Rather, because Plaintiffs' alter-ego and veil-piercing claims are based

in part on allegations of "particularized" injury – and do not "solely" allege "generalized" injury –

those claims are not property of the estate. *Morpheus Lights*, 945 F. Supp. at 607-8 ("Variable

claims that as the alter ego of Morpheus, Richardson caused harm directly to Variable. In other

words, Variable has alleged a 'particularized injury' and not **solely** injury to the corporation.")

(emphasis added); *see also Stileitaliano*, 2004 WL 1774223 at *5 ("That some of Plaintiffs'

allegations could support an alter ego claim brought by another creditor of Domustyle does not mean

that Plaintiffs are asserting a generalized injury to the corporation for which only the trustee can seek

redress.").

## II.
### THE COURT SHOULD GRANT PLAINTIFFS RELIEF FROM
### THE AUTOMATIC STAY TO THE EXTENT THAT
### ANY OF PLAINTIFFS' CLAIMS ARE SUBJECT TO THE AUTOMATIC STAY

37.    To the extent that any of Plaintiffs' claims against Ally Bank or Ally Financial are

subject to the automatic stay, cause exists to grant Plaintiffs relief from the automatic stay.

38.    Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "[o]n

request of a party in interest and after notice and a hearing, the court shall grant relief from the stay

. . . (1) for cause, including the lack of adequate protection of an interest in property of such party

in interest . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause." In

determining whether "cause" exists to lift the stay, courts consider the following factors (the "*Sonnax*

Factors"):

> (1) whether relief would result in a partial or complete resolution of
> the issues,
>
> (2) the lack of any connection with or interference with the
> bankruptcy case,

15

(3) whether the other proceeding involves the debtor as a fiduciary,

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,

(5) whether the debtor's insurer has assumed full responsibility for defending the action,

(6) whether the action primarily involves third parties,

(7) whether litigation in another forum would prejudice the interests of other creditors,

(8) whether the judgment claim arising from the other action is subject to equitable subordination,

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,

(10) the interests of judicial economy and the expeditious and economical resolution of litigation,

(11) whether the parties are ready for trial in the other proceeding, and

(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1286 (2d Cir. 1990); *see also In re N.Y. Med. Grp.*, *P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

39.    Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a broad and flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002) (*citing Mazzeo v. Lenhart*, 167 F.3d 139, 143 (2d Cir. 1999)).

40.    Here, the relevant *Sonnax* Factors weigh strongly in favor of relief.

41.    Specifically, the claims in *Rothstein* have no connection with the bankruptcy case, and their prosecution would not interfere with the bankruptcy case.  Neither Ally Financial nor Ally Bank is a Debtor.  Moreover, as set forth above, Plaintiffs' claims are direct, personal, and

16

"particularized," not derivative or otherwise property of the estate. In addition, Ally Financial and

Ally Bank are large financial institutions with sufficient assets to satisfy any judgment obtained by

Plaintiffs. Accordingly, the ability of Ally Financial and/or Ally Bank to contribute funds to the

Debtors' estates would not be affected by the relief sought. Nor is there any danger that lifting the

stay would "open the floodgates for other movants to also seek stay relief," no other claimants with

similar, direct and "particularized" claims against Ally Bank and Ally Financial are believed to exist.

*In re Residential Capital, LLC*, 12-12020 MG, 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16,

2012).

42.     Relief would result in complete resolution of the issues in *Rothstein*. *Rothstein* would

be able to proceed with all named defendants toward motions to dismiss, discovery, and trial.

43.     *Rothstein* primarily involves third-parties, namely, the unaffiliated co-defendants

Balboa, Meritplan, and Newport, against which Plaintiffs continue to litigate their claims.

44.     The interests of judicial economy and expeditious and economical resolution of

litigation also favor relief. Plaintiffs' claims against Balboa, Meritplan, and Newport overlap those

against Ally Bank and Ally Financial factually and legally. Were the claims to be litigated

sequentially and not simultaneously, similar issues would have to be re-litigated, or witnesses

inconvenienced with multiple depositions.

45.     There is no reason why prosecution of the action would prejudice other creditors. To

the contrary, to the extent Plaintiffs succeed in recovering money from Ally Bank or Ally Financial

outside of the bankruptcy, Plaintiffs' claims in the bankruptcy with respect to GMACM will be commensurately reduced, resulting in greater distributions to other creditors.[9]

46.     The balance of harms also favors continued prosecution of the action. *Rothstein* is brought on behalf of a putative class of residential mortgage borrowers alleged to have been injured by a fraudulent and extortionate scheme. These victims of wrongdoing have no other recourse with respect to the wrongdoing alleged.

### III.
### ALLY BANK AND ALLY FINANCIAL LACK STANDING TO CHALLENGE PURPORTED VIOLATIONS OF THE AUTOMATIC STAY

47.     To seek relief in federal court, a litigant must establish both Article III standing and "prudential standing," the "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004). Article III requires a showing that the complained of conduct has caused the litigant an "injury in fact." *Id.* "Prudential" standing is the prohibition on a litigant's raising another person's legal rights and the requirement that a plaintiff's claim "fall within the zone of interest protected by the law invoked." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003).

48.     Courts applying these principles in the bankruptcy context have limited standing to attack alleged violations of the automatic stay to those whom Congress designated as intended beneficiaries of the automatic stay under 11 U.S.C. § 362, namely debtors and trustees. Other parties lack standing to challenge purported stay violations. As the court stated in *In re Pecan Groves of Ariz.*, 951 F.2d 242 (9th Cir. 1991):

---

[9]     Plaintiffs filed a proof of claim in the bankruptcy. No. 4074.

18

> [T]he majority of jurisdictions which have considered standing under
> the automatic stay provision, 11 U.S.C. § 362, have concluded that
> section 362 is intended solely to benefit the debtor estate. Language
> from many cases indicates that, if the trustee does not seek to enforce
> the protections of the automatic stay, no other party may challenge
> acts purportedly in violation of the automatic stay.

*Id*. at 245; *see generally* Martin J. Bienenstock, *Bankruptcy Reorganization* 131-32 (1987) ("in

chapter 11 cases, the sole entities with standing to seek redress for an automatic stay violation are

debtors-in-possession or trustees").

49.     Rejection of standing to parties other than the debtor or the trustee is based on the

general principles that "[t]he trustee is charged with the administration of the estate for the debtor's

and creditor's benefit" and that granting others standing "could subvert the trustee's powers" and

"will overburden the bankruptcy courts with litigation." *Pecan Groves*, 951 F.2d at 245.

50.     This standing limitation is recognized by courts across the country,[10] as well as by

those in this district. *See In re Fiber Optek Interconnect Corp.*, Bankr. No. 05-30045, 2009 WL

3074605, at *7 (Bankr. S.D.N.Y. Sept. 23, 2009) (creditor lacked standing to argue that claims

against it in a separate action were barred by the automatic stay, as "the trustee is the proper party

---

[10]     *See In re Globe Inv. & Loan Co., Inc.*, 867 F.2d 556, 560 (9th Cir. 1989) ("[S]ection 362 .
. . clearly does not confer any rights to outside parties."); *In re Brooks*, 79 B.R. 479, 481 (Bankr. 9th Cir.
1987) ("if the debtor or the trustee chooses not to invoke the protections of § 362, no other party may attack
any acts in violation of the automatic stay"); *In re Lake Country Inv. Ltd. Liab. Co.*, Bankr. No. 99-20287,
1999 WL 33490220, at *6 (Bankr. D. Idaho Sept. 22, 1999) ("section 362 is intended solely to benefit the
debtor estate. . . . [I]f the trustee does not seek to enforce the protections of the automatic stay, no other party
may challenge acts purportedly in violation of the automatic stay.") (citations omitted); *In re Soll*, 181 B.R.
433, 443 (Bankr. D. Ariz. 1995) ("Section 362 is for the benefit of the debtor or the trustee. Thus, when the
trustee fails to pursue enforcement of the automatic stay, no other party, including creditors, may challenge
conduct or acts which violate the automatic stay."); *In re Fuel Oil Supply & Terminaling, Inc.*, 30 B.R. 360,
362 (Bankr. N.D. Tex. 1983) ("The automatic stay is for the benefit of the debtor and if it chooses to ignore
stay violations other parties cannot use such violations to their advantage."); *In re Stivers*, 31 B.R. 735, 735
(Bankr. N.D. Cal. 1983) ("the automatic stay operates in favor of debtors and estates . . . it gives junior
lienholders and other parties . . . no substantive or procedural rights").

to challenge acts as done in violation of the automatic stay"); *In re Silverman*, 42 B.R. 509, 516

(Bankr. S.D.N.Y. 1984) (mortgagee lacked standing to object to foreclosure proceeding by tax

authorities on grounds of automatic stay as "[t]he automatic stay is for the benefit of the debtor and

if it chooses to ignore stay violations other parties cannot use such violations to their advantage.")

(citation omitted).

51.     Judge Rakoff's decision in *Taberna Capital Mgmt. LLC v. Dunmore*, 2008 U.S. Dist.

LEXIS 54776 (S.D.N.Y. July 15 2008), is in material respects on point.  *See also Taberna Capital*

*Mgt, LLC v. Dunmore*, 392 B.R. 559 (S.D.N.Y. 2008) (adhering to earlier order).

52.     In *Taberna*, a holder of a note issued by a debtor corporation sued the debtor's

president and sole shareholder for alter-ego liability.  *Taberna Capital Mgmt., LLC v. Dunmore*, 08

CIV.1817 JSR, 2008 WL 2139135, at *1 (S.D.N.Y. May 20, 2008).   The president and sole

shareholder moved to dismiss on the ground that the noteholder's alter-ego claims violated the

automatic stay.  *Taberna*, 392 B.R. at 560.  Judge Rakoff denied the motion for lack of standing.

*Id*. at *559.  The court acknowledged that "[w]ere the court to reach the merits of the defendants'

motion, the Court might well find that some, but not all, of plaintiffs' claims . . . are subject to the

automatic stay."  *Taberna*, 2008 U.S. Dist. LEXIS 54776, at *1-2.  Nevertheless, based on the same

legal principles set forth above, the court concluded that the defendants "do not have standing to

complain . . . ."  *Id.* at *2 (citing *Pecan Groves*, 951 F.2d at 245).

53.     Accordingly, Ally Bank and Ally Financial lack standing to assert purported stay

violations.[11]  Their attempt to make tactical use of the automatic stay to avoid liability in *Rothstein*

---

[11]     Notably, Ally Bank and Ally Financial do not seek to enforce the stay in their capacities as
creditors.  Even then, they would lack standing.  *See In re Fiber Optek*, 2009 WL 3074605 at *6 ("the trustee
(continued...)

is improper.  *See, e.g.*, *In re Schur Mgmt. Co.*, 323 B.R. 123, 130 (Bankr. S.D.N.Y. 2005) (warning

that invocation of automatic stay "could also be used improperly as a litigation tactic.  The cases

counsel that a Chapter 11 petition should not be used as a 'mechanism to orchestrate pending

litigation,' or as a 'litigation tactic.'") (quoting *Furness v. Lilienfield*, 35 B.R. 1006, 1013 (Bankr.

D. Md. 1983) and *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988); *see also In

re Globe Inv.*, 867 F.2d 556 ("The appellants' cause of action under section 362 is a disingenuous

attempt to use the Bankruptcy Code to their advantage . . . . [S]ection 362 . . . clearly does not confer

any rights to outside parties.")).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) deny the motion

for an order enforcing the automatic stay pursuant to 11 U.S.C. § 362(a)(3) by (i) enjoining

prosecution of alter ego and veil-piercing claims in *Rothstein*, and (ii) declaring such claims void *ab

initio*; and (b) grant Plaintiffs' cross-motion authorizing relief from automatic stay to the extent any

of Plaintiffs' claims is subject to the automatic stay.

---

[11](...continued)
is the proper party to challenge acts as done in violation of the automatic stay" and "'a creditor has no independent standing to . . . [challenge] a violation of the automatic stay.'") (quoting *Pecan Groves*, 951 F.2d at 245).  *See In re Deshazo*, Bankr. 04-33859, 2006 WL 5217795 at *1 (Bankr. D.Md. Feb. 22, 2006) ("[A]n individual creditor does not have standing to assert [an automatic stay] violation regarding property of the estate.  This action belongs to the estate and therefore the Chapter 7 Trustee, whose duty it is under Section 704 to administer property of the estate for the benefit of creditors."); *In re Cook*, Bankr. No. 7-04-17704, 2008 WL 5157847, at *3 (Bankr. D.N.M. Sept. 15, 2008) (creditor lacked standing to enforce automatic stay against continuation of lawsuit because "[a] trustee, and only a trustee, has standing to prosecute causes of action on behalf of the bankruptcy estate.").

New York, New York
Dated: April 2, 2013

**KIRBY McINERNEY LLP**


By: _____/s/ *Mark A. Strauss*_____
  Mark A. Strauss (mstrauss@kmllp.com)
  J. Brandon Walker (bwalker@kmllp.com)
825 Third Avenue, 16th Floor
New York, New York 10022
Tel:  (212) 371-6600
Fax: (212) 751-2540

*Counsel for Plaintiffs Landon Rothstein, Jennifer Davidson, Robert Davidson, and Ihor Kobryn*

22