Hearing Date and Time: April 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Response Deadline: April 2, 2013 at 4:00 p.m. (Prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas Mannal
Jeffrey S. Trachtman
Rachael Ringer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
------------------------------------------------------------ x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO THE MOTION BY ALLY FINANCIAL INC. AND ALLY BANK FOR AN ORDER
ENFORCING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(A)(3) BY (1)
ENJOINING PROSECUTION OF ALTER EGO AND VEIL PIERCING CLAIMS IN
THE CLASS ACTION ENTITLED *LANDON ROTHSTEIN, ET AL. V. GMAC
MORTGAGE, LLC, ET AL.*, AND (2) DECLARING SUCH CLAIMS VOID *AB INITIO***

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby submits this response (the "**Response**") to the Motion by Ally Financial Inc. ("**AFI**") and Ally Bank, for an Order Enforcing the Automatic Stay Pursuant to 11 U.S.C. § 362(a)(3) by (1) Enjoining Prosecution of Alter Ego and Veil Piercing Claims in the Class Action Entitled *Landon Rothstein, et al. v. GMAC Mortgage, LLC, et al.,* and (2) Declaring Such Claims Void *Ab Initio* (the

"**Motion**") [Docket No. 2511].¹ In support of the Response, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Committee agrees with AFI and the Debtors that the alter ego and veil-piercing claims alleged by the *Rothstein* Plaintiffs should be enjoined. The Committee believes, however, that this result can be reached without the necessity to decide all of the issues AFI presents in its Motion.

2. Since their respective appointments, both the Committee and the Examiner have expended substantial efforts and incurred significant expense conducting a thorough investigation of prepetition transactions involving the Debtors, AFI, and its non-debtor affiliates. During the course of its investigation, the Committee has identified valuable estate claims and causes of action against AFI and its affiliates, including substantial claims sounding in alter ego and veil-piercing theories of liability. While both the Committee and the Examiner are investigating estate claims and causes of action, the Examiner is also analyzing the merits of third party claims against AFI, including claims based on alter ego theories similar to those asserted in the *Rothstein* action.² Simultaneously, the parties – including the Debtors, AFI, the Committee, and certain major creditor constituencies – have been, with the assistance of the Honorable James M. Peck, as mediator, engaging in a mediation process, with a goal of

---

¹ Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

² *See Order approving scope of investigation of Arthur J. Gonzalez, Examiner* [Docket No. 925] (authorizing examiner to investigate claims and causes of action against AFI, including "claims held by third parties, i.e., parties that are not affiliates of the Debtors, against . . . AFI and its insiders including current and former directors, officers, and shareholders; and in respect of [such] claims (A) investigate the merits of such claims, (B) analyze the sufficiency of the consideration to be provided for such third party releases, and (C) solicit the parties' views concerning the merits of such claims and the potential amount of damages arising from such claims, but the Examiner will not attempt to independently quantify such damages").

- 2 -

resolving the disputes among the parties and granting AFI the closure it seeks through the chapter 11 cases.

3. The Plaintiffs in the *Rothstein* action, however, seek to pursue veil-piercing and alter ego claims and causes of action against AFI and its affiliates outside of the bankruptcy court, prior to the resolution of the current negotiations, and without the benefit of the discovery and substantial record that has been developed in the chapter 11 cases. AFI and the Debtors seek to enjoin this litigation on the principal ground that the veil-piercing claims are exclusively property of the estates. However, without reaching that question and even without reaching the question of the scope of the automatic stay, the Court can and should extend the stay and temporarily enjoin the *Rothstein* claims under section 105 of the Bankruptcy Code for two related reasons.

4. First, permitting the *Rothstein* claims to proceed may have significant and potentially negative effect on claims that indisputably *are* property of the estate. The claims, at a minimum, overlap in certain important respects with the estates' claims against AFI – since they are based on domination, control, and a disregard of corporate separateness – and thus proceedings with respect to the *Rothstein* claims could have a disruptive or preclusive effect on prosecution of the potentially valuable estate claims.

5. Second, permitting the *Rothstein* claims to proceed would threaten to disrupt the current multilateral plan negotiations. A comprehensively negotiated resolution of the claims in these cases could well embrace and resolve the *Rothstein* claims without the distraction and disruption of ongoing litigation. The threat to the restructuring that would result from allowing the claims to proceed clearly outweighs any limited inconvenience to the *Rothstein* Plaintiffs if

the action is temporarily stayed, meriting an extension of the stay under section 105 of the Bankruptcy Code.

6.    In the event the parties cannot reach a global resolution of these cases through a consensual chapter 11 plan and the Committee files a complaint against AFI and its affiliates asserting claims based on alter ego and veil-piercing liability on behalf of the estate, the Court could then reach the issue of whether any other party will be permitted to pursue individual veil-piercing or alter ego claims. But this issue can and should be placed on hold until such time.[3]

## ARGUMENT

7.    Regardless of whether the automatic stay under section 362(a) applies in its own right to enjoin the *Rothstein* actions, the damaging impact allowing the *Rothstein* litigation to proceed could have on the bankruptcy proceedings at this time warrants an exercise of the Court's power under Section 105 of the Bankruptcy Code to extend the automatic stay to apply to the claims against AFI and its nondebtor affiliates pending the ongoing mediation process and investigations. *See Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007) ("Courts consistently have found that section 105 may be used to stay actions against non-debtors even where section 362 otherwise would not provide such relief."); *McHale v. Alvarez (In re The 1031 Tax Group)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) ("Section 105 authorizes a bankruptcy court to exercise power outside the bounds of the automatic stay."); *Sec. Inv. Prot. Corp. v. Madoff (In re Madoff)*, 443 B.R. 295, 318-19 (Bankr. S.D.N.Y. 2011) (noting that "[b]ecause injunctions under section 105(a) are authorized by statute, they need not comply with the requirements [for a traditional preliminary injunction]" and

---

[3]    If the Court determines that it must decide now whether the *Rothstein* Plaintiffs may properly assert veil-piercing claims, any ruling should be limited to the specific facts of the *Rothstein* litigation and causes of action. Due to the numerous factual variations that may affect this determination in other settings, the Court should refrain from making any blanket determinations as to whether other third parties may assert individual claims or causes of action against AFI on the basis of alter ego or veil-piercing liability.

finding that interference with the efficient administration of the estate due to procedural and discovery demands was, in part, a basis to extend the automatic stay under section 105); *see also Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) ("[T]he bankruptcy court's authority to stay the litigation was invoked not only under section 362(a) but also under section 105 of the Bankruptcy Code, which grants broader authority."). As previously recognized in this case, "all a bankruptcy court must find to enjoin a claim against a nondebtor under section 105(a) was that the claim would threaten to thwart or frustrate the debtors' reorganization efforts and that the injunction is important for reorganization." Hr'g Tr. at 128, *In re Residential Capital, LLC*, No. 12-12020 (MG) (July 10, 2012).

8. The *Rothstein* claims threaten to harm the estates in two separate but related ways, warranting temporary extension of the automatic stay to enjoin them:

9. First, regardless of whether the *Rothstein* claims are independently cognizable, they undeniably overlap in some respects with claims that the Committee has identified against AFI on the basis of alter ego and-veil piercing theories of liability – claims that constitute estate property. These claims inevitably depend on similar factual showings, including facts demonstrating AFI's general domination, control, and abuse of the Debtors and their corporate form. Allowing the litigation to progress could potentially result in premature determinations regarding AFI's alter ego and/or veil-piercing liability made without the benefit of the results of the Committee's or the Examiner's ongoing investigation into these very issues. Such findings could have a detrimental impact on estate claims and causes of action already identified by the Committee. While this impact on property of the estate might or might not be deemed sufficient to trigger the automatic stay, it surely at least justifies a temporary injunction pursuant to section 105(a) of the Bankruptcy Code.

10. Second, permitting the litigation to proceed would disrupt crucial efforts underway in these chapter 11 cases, including the substantial plan negotiation and mediation efforts expended by all parties in interest and major creditor constituents, as well as the efforts of the Committee and the Examiner to investigate claims and causes of action against AFI. The mediation process has largely revolved around a resolution of the primary disputes with AFI, and an attempt to settle AFI's liability to both the Debtors and third parties in exchange for an adequate contribution to the estate and creditor constituencies. While the Committee has already obtained the Debtors' consent to standing to pursue estate claims against AFI – including alter ego and veil-piercing claims – the Committee agreed to temporarily refrain from commencing the litigation to encourage continued plan negotiations leading up to the issuance of the Examiner's report. The Debtors' consent to standing, and the Committee's agreement to refrain from filing a complaint for a specified time period, were part of a carefully crafted framework (also involving the appointment of a chief restructuring officer and an extension of exclusivity) that the parties believed would best facilitate a successful resolution of these chapter 11 cases. The *Rothstein* Plaintiffs should not be able to short circuit this framework by prosecuting claims against AFI outside of this timeframe.

11. Acknowledging the importance of similar settlement negotiations, courts have enjoined litigation against nondebtors where negotiations are ongoing and allowing the action to proceed could undermine those negotiations. *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 429 B.R. 423, 435-36 (Bankr. S.D.N.Y. 2010) (recognizing that the "threat to the estate is particularly imminent" and extension of the stay warranted when continuation of the action could undermine ongoing settlement negotiations in a SIPA proceeding). Not only are settlement negotiations critical to the successful resolution of the

chapter 11 cases, given that plan mediation and negotiations are focused on AFI-related issues including third-party claims against AFI similar to those asserted by the *Rothstein* Plaintiffs, if a global settlement is reached it may obviate the need for a determination on the *Rothstein* claims against AFI altogether. This reason alone warrants an extension of the automatic stay to the claims asserted by the *Rothstein* Plaintiffs against AFI on an interim basis pending the ongoing plan mediation and investigations.

12.    Moreover, even under the more stringent standard for a preliminary injunction as applied in the bankruptcy context, the Court should still extend the stay to apply to the *Rothstein* action under Section 105 of the Bankruptcy Code. In conducting this analysis, courts evaluate whether: (i) there is a likelihood of a successful restructuring, (ii) imminent irreparable harm to the estate will result in the absence of an injunction, (iii) the balance of harms tips in favor of the moving party, and (iv) the public interest weighs in favor of the injunction. *See In re Calpine Corp.*, 365 B.R. at 409.

13.    Here, each of these factors is satisfied and the *Rothstein* action should be stayed. First, as noted above, the Committee and other parties in interest are engaging in plan mediation in an effort to reach a consensual chapter 11 plan, but are prepared to proceed with litigation if a consensus cannot be reached. Thus, there is a reasonable likelihood that the Debtors will successfully restructure in the near term. Moreover, allowing the *Rothstein* litigation to proceed notwithstanding the investigations being pursued in these chapter 11 cases could have a direct impact on property of the estate, as discussed above – namely the estate claims and causes of action against AFI and its nondebtor affiliates based on alter ego and veil-piercing liability –as well as harm the prospects for a negotiated global resolution of the bankruptcy cases.

14. Finally, both the public interest in protecting estate assets and the balance of harms weighs in favor of an injunction. The *Rothstein* litigation is still in its inception, and no harm will befall the Plaintiffs if the claims are temporarily stayed. Indeed, as discussed above, the issues raised in the *Rothstein* litigation may be resolved pursuant to the chapter 11 plan. Allowing the action to go forward while AFI and third party claims against AFI are still under investigation and subject to an ongoing mediation process would be inappropriate, especially if the mediator is successful – and would only result in a waste of estate assets and efforts by all parties involved. Accordingly, the Court should exercise its authority pursuant to section 105 of the Bankruptcy Code and enjoin the *Rothstein* litigation. In the event that negotiations among the parties regarding a consensual resolution of these chapter 11 cases do not bear fruit and the Committee determines to proceed with litigation against AFI, the issue of whether individual creditors should be permitted to prosecute their own veil-piercing claims may be heard.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court: (i) enjoin the continued prosecution of the *Rothstein* action as set forth herein; and (ii) grant such other and further relief as the Court deems just and proper.

Dated:   April 2, 2013
         New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Douglas Mannal
Kenneth H. Eckstein
Douglas Mannal
Jeffrey S. Trachtman
Rachael Ringer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Counsel for the Official Committee
of Unsecured Creditors*