UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: April 11, 2013 at 10:00 a.m.
Objection Deadline: April 3, 2013 at 4:00 p.m.

------------------------------------------------------------ x
                                                                       :

In re                                                         :         Chapter 11

RESIDENTIAL CAPITAL, LLC,            :         Case No. 12-12020 (MG)

                   Debtors.              :         Jointly Administered

------------------------------------------------------------ x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
DEBTORS' MOTION FOR AN ORDER PURSUANT TO
SECTIONS 363(b), AND 503(c)(3) OF THE BANKRUPTCY CODE
AUTHORIZING (I) IMPLEMENTATION OF (A) A KEY
EMPLOYEE RETENTION PLAN FOR CERTAIN NON-INSIDERS
AND (B) KEY EMPLOYEE INCENTIVE PLANS FOR CERTAIN
INSIDERS, AND (II) PAYMENT OF ANY OBLIGATIONS
<u>ARISING THEREUNDER AS ADMINSTRATIVE EXPENSES</u>**

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

Brian S. Masumoto
Michael Driscoll
Trial Attorneys
33 Whitehall Street, 21st Floor
New York, New York 10004
Tel. No. (212) 510-0500
Fax. No. (212) 668-2255

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      PRELIMINARY STATEMENT ........................................................................................1

II.     BACKGROUND .................................................................................................................2
        A.      General .....................................................................................................................2
        B.      KEIP/KERP Motion .................................................................................................2
        C.      Sale of Assets ..........................................................................................................3
        D.      The AIP Motion ......................................................................................................4
        E.      Estate Assets ............................................................................................................4
        F.      Retention of Restructuring Officer ..........................................................................5
        G.      2013 KEIP/KERP Motion .......................................................................................5
                1.       Estate KERP .................................................................................................5
                2.       Estate KEIP ..................................................................................................5
                2.       Executive KEIP ............................................................................................6

III.    DISCUSSION ......................................................................................................................6
        A.      The Legal Framework: Section 503 of the Bankruptcy Code .................................6
        B.      The Three Plans in the 2013 KEIP/KERP Motion are Subject to Section 503(c) ..8
                1.       Estate KERP Participants .............................................................................9
                2.       Estate KEIP and Executive KEIP Participants ............................................9

IV.     CONCLUSION ..................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

In re Dana Corp., 351 B.R. 96 (Bankr. S.D.N.Y. 2006) ................................................................. 9

In re Dana Corp., 358 B.R. 567 (Bankr. S.D.N.Y. 2007) ............................................................. 10

In re Global Home Prods., LLC, 369 B.R. 778 (Bankr. D. Del. 2007) .............................. 8, 10, 11

In re Hawker Beechcraft, Inc., 479 B.R. 308 (Bankr. S.D.N.Y 2012) .................................... 10, 11

In re Mesa Air Group, Inc., Case No. 10-10018 (MG), 2010 WL 3810899
    (Bankr. S.D.N.Y. Sept. 24, 2010) ........................................................................... 8, 9, 10

In re Residential Capital, LLC, 478 B.R. 154 (Bankr. S.D.N.Y. 2012) ................................. 10, 11

In re Velo Holdings Inc., 472 B.R. 201 (Bankr. S.D.N.Y. 2012) .................................................... 8

**Statutes, Rules, & Other Authorities**

11 U.S.C. § 363 ...................................................................................................................... *passim*
11 U.S.C. § 503 ...................................................................................................................... *passim*
28 U.S.C. § 586 ............................................................................................................................... 1
4 COLLIER ON BANKRUPTCY ¶ 503.17 (15th ed. 2007) ........................................................ 8

TO:    THE HONORABLE MARTIN GLENN,
       UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2, in furtherance of the duties and responsibilities set forth in 28 U.S.C. §§ 586(a)(3) and (5), hereby respectfully files her objection (the "Objection") to the Debtors' Motion for an Order Pursuant to Sections 363(b), and 503(c)(3) of the Bankruptcy Code Authorizing (I) Implementation of (A) a Key Employee Retention Plan for Certain Non-Insiders and (B) Key Employee Incentive Plans for Certain Insiders, and (II) Payment of any Obligations Arising Thereunder as Administrative Expenses (the "2013 KEIP/KERP Motion").  ECF Doc. No. 3280.

## I.  PRELIMINARY STATEMENT

The Debtors seek an order from this Court permitting them to pay bonuses of approximately $7.8 million to 163 employees, with, on an annualized basis, 14.34% being paid to two insiders and 32.25% being paid to 6 other insiders.  The Debtors have failed to satisfy their burden to prove that the proposed Estate KEIP and Executive KEIP payments are not primarily retentive and therefore not subject to the restrictions imposed by Section 503(c)(1).  The Debtors have failed to prove that the incentive metrics designed for Estate KEIP and Executive KEIP recipients are not "virtually guaranteed" and mere "lay-ups" and that the present targets are difficult to achieve, forcing the insiders to "stretch" in order to earn their bonuses.

In addition, the 2013 KEIP/KERP Motion does not provide the detailed information on the amounts being paid to individual employees, although the Debtors have provided a spreadsheet containing such information to the United States Trustee.  This information should be included as part of the record.

1

## II.    BACKGROUND

A.    <u>General</u>

1.    Residential Capital, LLC and fifty of its affiliates (collectively "the Debtors") commenced voluntary cases under Chapter 11 of the Bankruptcy Code on May 14, 2012 (the "Petition Date").

2.    By order entered on May 14, 2012, the Court authorized joint administration of the cases.  ECF Docket No. 59.

3.    Historically, the Debtors' primary and most valuable business operations consisted of servicing mortgage loans for investors, including loans originated by the Debtors, Ally Bank (f/k/a GMAC Bank), and other third parties.  Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings, ¶ 6.  ECF Docket No. 6.  As of March 31, 2012, the Debtors were servicing over 2.4 million mortgage loans with an aggregate unpaid principal balance of approximately $374 billion.  <u>Id</u>.

4.    On May 16, 2012, the United States Trustee appointed an Official Committee of Unsecured Creditors pursuant to Section 1102(a) of the Bankruptcy Code.  ECF Docket No. 102.

5.    On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Examiner in these cases.  ECF Docket No. 674.

6.    The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    <u>KEIP/KERP Motion</u>

7.    On July 17, 2012, the Debtors filed a motion (the "KEIP/KERP Motion") requesting authorization of (a) a Key Employee Incentive Program ("KEIP") covering seventeen senior executive insiders (the "KEIP Participants") of the Debtors and (b) a Key Employee

2

Retention Program ("KERP") covering 174 purported non-insiders (the "KERP Participants" and collectively, the "KEIP/KERP Participants").  ECF Doc. No. 812.

8. On August 2, 2012, the United States Trustee filed an objection to the KEIP/KERP Motion.  ECF Doc. No. 987.

9. On August 15, 2012, the Court entered an order approving the KERP.  ECF Doc. No. 1169.

10. On August 28, 2012, the Court issued the Memorandum Opinion and Order Denying Debtors' Motion for Approval of a Key Employee Incentive Plan (the "Memorandum Opinion").  ECF Doc. No. 1286.  The Court found that the Debtors failed to satisfy their burden to show that vesting 63% of the KEIP awards merely by remaining until the sales closed is not primarily retentive.  Memorandum Opinion at 24.

11. On October 9, 2012, the Debtors filed an amended motion requesting the approval of a modified KEIP (the "Amended KEIP Motion").  ECF Doc. No. 1762.

12. On October 18, 2012, the Court entered an order approving the Amended KEIP Motion.  ECF Doc. No. 1854.

C. **Sale of Assets**

13. On November 3, 2012, the Debtors filed an "Amended Notice of Successful Bidders at the Auctions and Sales of (A) the Platform Assets to Ocwen Loan Servicing, LLC and (B) the Whole Loan Assets to Berkshire Hathaway Inc." and "Notice of Filing (A) Ocwen APA and (B) Amended and Restated BH Legacy APA."  ECF Doc. No. 2050.

14. On November 21, 2012, the Court entered the "Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale Of Debtors' Assets Pursuant To Asset Purchase Agreement With Berkshire Hathaway Inc.; (B) Sale

Of Purchased Assets Free and Clear Of Liens, Claims, Encumbrances, and Other Interests; and (C) Related Agreements; and (II) Granting Related Relief." ECF Doc. No. 2247.

15. On January 4, 2013, the Debtors filed a "Notice of Filing of Amended Proposed Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief." ECF Doc. No. 2563.

**D.    The AIP Motion**

16. On December 26, 2012, the Debtors filed a "Motion for a Supplemental Order Under Bankruptcy Code Sections 363, 1107(a) and 1108 to the Final Wages Order Authorizing the Debtors to Make Payments to their Employees Under the Residential Capital, LLC Annual Incentive Plan" (the "AIP Motion"). ECF Doc. No. 2520.

17. Subsequent to the filing of an objection by the United States Trustee (ECF Doc. No. 2600), on January 19, 2013, the Court entered the "Order Under Bankruptcy Code Sections 363, 1107(a) and 1108 Supplementing the Final Wages Order and Authorizing the Debtors to Make Payments to the Remainder of their Employees Under the Residential Capital, LLC Annual Incentive Plan." ECF Doc. No. 2750.

**E.    Estate Assets**

18. After the significant transfer of assets through the Platform and Legacy Sales, approximately $1.6 billion of assets remain in the Debtors' estate. 2013 KEIP/KERP Motion, ¶ 17, p. 6.

4

**F.     Retention of a Chief Restructuring Officer**

19.     On March 5, 2013, the Court entered the "Order Granting Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer." ECF Doc. No. 3103.

**G.     2013 KEIP/KERP Motion**

20.     The 2013 KEIP/KERP Motion provides that the Debtors are proposing two incentive plans covering eight insiders and one retention plan covering 155 non-insiders. 2013 KEIP/KERP Motion, ¶¶ 27–41, pp. 9–18.

    **1.     Estate KERP**

21.     The non-insider retention plan covering 155 employees (the "Estate KERP") is projected to have a one year cost of $4.4 million (which includes administrative flexibility of $350,000). 2013 KEIP/KERP Motion, ¶ 35, p. 15.

    **2.     Estate KEIP**

22.     The multi-year incentive plan covering six insiders (the "Estate KEIP") projects a first year "target" KEIP award totaling approximately $2.2 million, with a maximum of $2.7 million. 2013 KEIP/KERP Motion, ¶ 32, p. 14; Declaration of John Dempsey, ECF Doc. No. 3281 (the "Dempsey Declaration"), ¶ 21, p. 9.

23.     The Estate KEIP includes potential awards (the "Estate KEIP Awards") in connection with five metrics. Specifically, the Estate KEIP Awards are composed of:

    (i)     50% tied to a Performance against Budget metric that will pay at target if the Estate stays within the budgeted core wind-down expenses during the period of March 1, 2013 to December 31, 2013;

    (ii)    27.5% tied to a FHA/VA Recovery metric;

    (iii)   5% tied to a Non FHA/VA Recovery metric;

5

 (iv) 15% tied to a FHA/VA Recovery Rate metric;

 (v) 2.5% tied to a Non FHA/VA Recovery Rate metric.

Dempsey Decl., ¶ 20, p. 9.

### 3. Executive KEIP

24. The short-term incentive plan covering two insiders (the "Executive KEIP" or "Plan") expected to remain at least until May 3, 2013 (subject to extension until July 3, 2013) projects a target award (as May 3, 2013) of $400,000 and a maximum payout (as of July 3, 2013) of $600,000. Declaration of Ronald Greenspan, ECF Doc. No. 3282 (the "Greenspan Declaration"), ECF Doc. No. 3282, ¶ 51.

25. The Executive KEIP will cover Mr. James Whitlinger, the Debtors' Chief Financial Officer, and Mr. Patrick Fleming, the Debtors' Capital Markets Officer. 2013 KEIP/KERP Motion, ¶¶ 38–39, pp.15–16.

26. Target awards under the Executive KEIP through April 2013 are payable contingent upon achievement of three metrics, including the Ginnie Mae ("GNMA") Deliveries metric (45% of target), the GNMA Restricted Cash metric (45% of target), and the Extension of MSR Sale Agreement metric (10% of target). If the Plan is extended through May 2013, the incremental award for May is based on the achievement of the GNMA Deliveries metric for May (85% of target) and the Extension of the GNMA Pooling Approval metric (15% of target). If the Plan is extended through June 2013, the incremental award for June is based on the achievement of the GNMA Restricted Cash metric for June (100% of target). Dempsey Decl., ¶ 16, pp. 7–8.

### III. DISCUSSION

**A. The Legal Framework: Section 503 of the Bankruptcy Code**

Section 503(c) of the Bankruptcy Code provides in relevant part:

6

Notwithstanding subsection (b), there shall neither be allowed, nor paid –

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtors' business, absent a finding by the court based on evidence in the record that

   (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

   (B) the services provided by the person are essential to the survival of the business; and

   (C) either –

      (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

      (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred;

(2) a severance payment to an insider of the debtor, unless -

   (A) the payment is part of a program that is generally applicable to all full-time employees; and

   (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to non-management employees during the calendar year in which the payment is made; or

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

7

11 U.S.C. § 503(c).

Congress added Section 503(c) in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act to end abusive compensation practices in bankruptcy case. In particular, Congress imposed significant limits on the payments of retention and incentive bonuses and severance to insiders and on the payments of retention bonuses granted to non-insiders without factual and circumstantial justification. In re Velo Holdings Inc., 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012). "The intent of Section 503(c) is to 'limit the scope of "key employee retention plans" and other programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor.'" Id. at 209 (quoting 4 COLLIER ON BANKRUPTCY, ¶ 503.17 (15th ed. 2007)). Section 503(c) requires "'a set of challenging standards' and 'high hurdles'" before debtors can pay before retention bonuses. In re Mesa Air Group, Inc., Case No. 10-10018 (MG), 2010 WL 3810899, at *2 (Bankr. S.D.N.Y. Sept. 24, 2010) (citing In re Global Home Prods., LLC, 369 B.R. 778, 784–85 (Bankr. D. Del. 2007).

Not only must bonus plans comply with Section 503(c), but as administrative expenses they must also be "actual, necessary costs and expenses of preserving the estate," as required by Section 503(b).

**B.     The Three Plans in the 2013 KEIP/KERP Motion are Subject to Section 503(c)**

The Debtors do not dispute the applicability of Section 503(c) to the three plans (Estate KERP, Estate KEIP and Executive KEIP) set forth in the 2013 KEIP/KERP Motion. The Debtors maintain that the performance based incentives contained in the Estate KEIP and the Executive KEIP renders the prohibition against retentive payments set forth in Section 503(c)(1) inapplicable. 2013 KEIP/KERP Motion, ¶¶ 47–60, pp. 20–25. The Debtors also argue that the

8

KEIPs in the 2013 KEIP/KERP Motion do not constitute severance programs. 2013 KEIP/KERP Motion, ¶ 61, p. 25. Based on the foregoing, the Debtors argue that all three plans must be evaluated pursuant to Section 503(c)(3).

The 2013 KEIP/KERP Motion failed to provide the amount of the compensation, including the KEIP/KERP payments to the insider and non-insider employees, on March 28, 2013; however, the Debtors provided the United States Trustee with a spreadsheet containing the same information that they had been required to produce in connection with their prior requests for approval of bonus payments. A properly redacted version of the spreadsheet that the Debtors provided to the United States Trustee should be included as part of the record.

### 1. Estate KERP Participants

As applied to the 2013 KEIP/KERP Motion, a bifurcation between KEIP participants and the KERP participants appears appropriate. The latter group includes no insiders, and, therefore the proposed retentive payments to this group, as a non-ordinary course transaction, would be subject to evaluation under Section 503(c)(3) as to whether the Estate KERP payments are justified by the facts and circumstances of the case. With respect to this group of Estate KERP participants, constituting 155 employees, the United States Trustee defers to the Official Committee of Unsecured Creditors and the Debtors on whether the Estate KERP payments are justified under the circumstances of these cases.[1]

### 2. Estate KEIP and Executive KEIP Participants

The Debtors have the burden to prove that the proposed Estate KEIP and Executive KEIP payments comply with Section 503(c)(1) or that the section is not applicable. See In re Dana Corp., 351 B.R. 96, 100 (Bankr. S.D.N.Y. 2006)("Dana I"); Mesa Air Group, 2010 WL

---

[1] Nevertheless, as noted above, the Debtors should be required to disclose the amount of KERP payments being made to the Estate KERP participants.

9

3810899, at *2 (citing Global Home Prods., 369 B.R. at 785). Incentive metrics, by themselves, do not establish that the proposed bonus arrangement is not primarily retentive. The incentive metrics must not be "virtually guaranteed" and mere "lay-ups" and must present targets that are difficult to achieve, forcing the insiders to "stretch" in order to earn their bonuses. See In re Dana Corp., 358 B.R. 567, 581–83 (Bankr. S.D.N.Y. 2007)("Dana II"); In re Residential Capital, LLC, 478 B.R. 154, 164 (Bankr. S.D.N.Y. 2012) (holding that the financial and operational hurdles must be challenging and incentivizing in order to allow KEIP awards to be judged under section 503(c)(3)); In re Hawker Beechcraft, Inc., 479 B.R. 308, 315 (Bankr. S.D.N.Y. 2012) ("the BAPCPA changes impose a high standard that requires challenging goals that insiders must meet in order to earn a bonus under an incentive plan that is not subject to § 503(c)(1).").

As is typical for these programs, the awards are weighted in favor of the insiders:

| KEIP/KERP Program[2] | Percentage of the 163 Employee Group | Percentage of the Bonus Awards |
|---|---|---|
| Executive KEIP | 1.23% | 14.34% |
| Estate KEIP | 3.68% | 32.25% |
| Estate KERP | 95.09% | 53.41% |

Furthermore, of the eight insiders, six had increases in their base salaries, with one insider receiving a 66.67% increase in base salary from 2012 to 2013.

With respect to the Estate KEIP, 50% of the incentive award is tied to a budget metric without sufficient information to determine whether achieving the metric will not be a "lay-up." Furthermore, it appears that 42.5% of the incentive award is tied to FHA/VA Recovery and Recovery Rate metrics as opposed to the 7.5% of the incentive award tied to the Non-FHA/VA Recovery and Recovery Rate metrics. Since the FHA/VA loans are guaranteed, presumably achieving the metrics associated with those loans will be significantly easier than with respect to

---

[2] The annualized award figure was used for the Executive KEIP and the Maximum Annualized KEIP award figure was use for the Estate KEIP.

10

the Non-FHA/VA loans.  Similarly, with respect to the Executive KEIP, there is insufficient information to evaluate the rigor of the GNMA metrics and the MSR Sale metrics that are proposed by the 2013 KEIP/KERP Motion.  See Residential Capital, 478 B.R. at 164; Hawker Beechcraft, 479 B.R. at 315.

      The Dempsey Declaration focuses on the cost of the programs, arguing that the cost of the KEIP/KERP awards is within the acceptable range of awards paid in other bankruptcy cases.  See Dempsey Decl., Ex. 1.  None of the declarations, however, appear to address the difficulty of achieving the metrics under the Executive and Estate KEIP programs.  As this Court has found, the financial and operational hurdles must be challenging and incentivizing in order to allow the KEIP awards to be judged under section 503(c)(3).  Residential Capital, 478 B.R. at 164; Hawker Beechcraft, 479 B.R. at 315.  This information is lacking and, as such, the 2013 KEIP/KERP Motion cannot be evaluated, and hence, must be denied.

      Finally, information regarding the severance arrangements available to each KEIP recipient should be disclosed in order to provide a complete picture of the compensation and benefits available to the KEIP recipients.

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the foregoing Objection, deny the 2013 KEIP/KERP Motion, and grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      April 3, 2013

                                TRACY HOPE DAVIS
                                UNITED STATES TRUSTEE

By:   */s/ Brian S. Masumoto*
       Brian S. Masumoto
       Michael Driscoll
       Trial Attorneys
       33 Whitehall Street, 21st Floor
       New York, New York 10004
       Tel. No. (212) 510-0500