# **Exhibit 1-P**

Claim #835    Date Filed: 9/27/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Residential Capital LLC | Case Number: 12-12020 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Pro Se - Alfredia Pruitt

Name and address where notices should be sent:        NameID: 10854962
Pro Se - Alfredia Pruitt
ALFREDIA PRUITT VS. MERS, GMACM, USAA FEDERAL SAVINGS BANK, FEDERAL NATIONAL
MORTGAGE ASSOCIATION, FANNIE MAE, DEFENDANT.
P.O. Box 1312
Norcross, GA 30091-1312
Telephone number: 770-668-3915        email: alfrediabostic@yahoo

Name and address where payment should be sent (if different from above):
4574 Creek Forest Ct
Lilburn GA    30047
Telephone number:        email: alfrediabostic@yahoo.com

☐ Check this box if this claim
amends a previously filed
claim.

Court Claim
Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware
that anyone else has filed a proof
of claim relating to this claim.
Attach copy of statement giving
particulars.

1. Amount of Claim as of Date Case Filed: $ 271,330.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Mortgage Note
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor: 2020

3a. Debtor may have scheduled account as: _____
(See instruction #3a)

3b. Uniform Claim Identifier (optional): _____
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ✔Real Estate ☐Motor Vehicle ☐Other
Describe:
Value of Property: $ 271,330.00  Annual Interest Rate 6.75 % ☐Fixed ☐Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $ _____        Basis for perfection: _____

Amount of Secured Claim: $ _____        Amount Unsecured: $ _____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ 271,330.00  (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

☐ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief. Alfredia Pruitt

Print Name: Alfredia Pruitt
Title: _____
Company: _____
(Signature) Alfredia Pruitt        9/24/2012
(Date)
Address and telephone number (if different from notice address above):
4574 Creek Forest Ct
Lilburn, GA  30047
Telephone number: 770-668-3915    Email: alfrediabostic@yahoo.com

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$ _____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

RECEIVED
SEP 2 7 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

001KC0002_51765-4_domestic_20/013555/081326    12120201208301746302000737

ntifier:9702113416          Doc Type\NOTE

# NOTE

August 30, 2006                 Norcross                    GEORGIA
        [Date]                      [City]                     [State]

2360 Hickory Station Circle, Snellville, GA  30078

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 271,330.00        (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is USAA Federal Savings Bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of        6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on October 01, 2006        . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on September 01, 2036        , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at Attn: Payment Processing, P.O. Box 205, Waterloo, IA
50704-0205                                     or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $        1,759.84 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment
to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of
the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless
the Note Holder agrees in writing to those changes.

702113416                                                   608146252

MULTISTATE FIXED RATE NOTE-Single Family

USSN (0104)
        VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                    Initials

ntifier:0702113416        Doc Type:NOTE

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15                    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                    5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

702113416                                                                                                608146262

US5N (0104)                                        Page 2 of 3                                        Initials

ntifier:0702113416          Doc Type:NOTE

### 10. APPLICABLE LAW

Lender is a federally chartered savings bank governed, in part, by the Home Owner's Loan Act of 1933 and the rules and regulations promulgated pursuant thereto (the "Act"). To the extent permitted by the Act, this Note will be governed by applicable federal law and by the interest rate and usury provisions of the state of Texas.

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Alfredia Pruitt          -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                      -Borrower

Pay to the Order of

without recourse
USAA Federal Savings Bank
_____ (Seal)          _____ (Seal)
By _____          -Borrower                                      -Borrower
Name Heather Garcia
Title Processing Supervisor

[Sign Original Only]

702113416                                              608146252

USSN (0104)                     Page 3 of 3

BK 46975 PG 0421

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2006 SEP -5 PM 2: 00

TOM LAWLER, CLERK

PT-61 # 067-2006-034785
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$ 271.40
TOM LAWLER CLERK OF
SUPERIOR COURT

Return to: S. Alan Cohn
Hudnall, Cohn & Abrams, P.C
3550 Engineering Drive, Suite 100
Norcross, Georgia 30092

File #06A-7371/Pruitt

## WARRANTY DEED

State of Georgia
County of Gwinnett

This Indenture made this 30th day of August, in the year Two Thousand Six, between

**Lowell Pratt Residential, LLC**

of the State of Georgia, as party or parties of the first part, hereinafter called Grantor, and

**Alfredia Pruitt**

of the County of Gwinnett, and State of GA, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors, and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveys and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee:

All that tract or parcel of land lying and being in Land Lot 59 of the 5th District, Gwinnett County, Georgia, being Lot 158, Olde Hickory Village, Phase 2C, as per plat recorded in Plat Book 115, Pages 115 and 116, Gwinnett County, Georgia Records; which plat is incorporated herein by reference and made a part hereof.

Subject to all easements and restrictions of record.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered
in presence of:

_____
Unofficial Witness

_____
Notary Public
my commission expires

Lowell Pratt Residential, LLC

By: _____ (SEAL)
Kenneth Biggerstaff, Manager

0146480

10

00246

[Exhibit B]

BK49198PG0246

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2008 DEC 11 PM 2:28

TOM LAWLER, CLERK

314383

Our File No.: 52607708-FYI
Debtor: Alfredia Pruitt
Sale Date: 01/06/2009

Return to
Promnis Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

## ASSIGNMENT

STATE OF    Pennsylvania

COUNTY OF    Montgomery

For value received, Mortgage Electronic Registration Systems, Inc. has this day transferred, sold, assigned, conveyed and set over to GMAC Mortgage, LLC, whose address is 1100 Virginia Drive, Fort Washington, PA 19034, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Alfredia Pruitt to Mortgage Electronic Registration Systems, Inc., dated August 30, 2006, recorded in Deed Book 46975, Page 422, Gwinnett County, Georgia Records.

Property Address: 2360 Hickory Station Circle, Snellville, Georgia 30078

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed, the property described therein, the indebtedness secured thereby together with all the powers, options, privileges and immunities therein contained.

The Assignor herein has this day sold and assigned to the Assignee herein the note secured by the aforesaid Security Deed and this transfer is made to secure the Assignee, its successors, representatives and assigns, in the payment of said note.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this Nov. 25th, 2008.

Signed, sealed and delivered
in the presence of:

_____
(Unofficial Witness)

_____
Notary Public
My Commission Expires:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Title: _____

**Jeffrey Stephan**
**Vice President**

By: _____
Title: _____
(Corporate Seal)

**Kristine Wilson**
**Assistant Secretary**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Susan Reese, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 9, 2011
Member, Pennsylvania Association of Notaries

0117739

Prepared By:

Thomas Goode
10750 McDermott Freeway
San Antonio, TX 78288

Return to: S. Alan Cohn
Hudnall Cohn & Abrams, PC
3550 Engineering Drive Suite 100
Norcross, GA 30092

GEORGIA INTANGIBLE TAX PAID

$ 814.50

TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

———————[Space Above This Line For Recording Data]———————

# SECURITY DEED

MIN 100105600020422779

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 30, 2006 together with all Riders to this document.
(B) "Borrower" is Alfredia Pruitt, a single person

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

702113416                                                                                      608146252

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011 1/01

-6A(GA) (0009).03
Page 1 of 14                    Initials:

0146481

VMP Mortgage Solutions, Inc.

46

Lender is a Federally Chartered Savings Bank
organized and existing under the laws of the United States of America
Lender's address is 10750 McDermott Freeway, ... Entered 04/04/13 15:11:50     Appendix
Exhibits 1 through 7 Pg 9 of 27

(B) "Note" means the promissory note signed by Borrower and dated August 30, 2006
The Note states that Borrower owes Lender Two Hundred Seventy One Thousand Three
Hundred Thirty And Zero/100                                                                          Dollars
(U.S. $271,330.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 01, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [ ] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

702113416                                                                                          608146252

-6A(GA) (0005).03                        Page 2 of 14                                 Form 3011  1/01

46975
00424
12-12020-mg   Doc 3354-3   Filed 04/04/13   Entered 04/04/13 15:11:50   Appendix
Case 11-52442-mgd   Doc 27   Exhibits Colborough 1 - Entered 03/06/11 12:28:26   Desc Main
Document   Page 7 of 35

5

BK 46975 PG 0424

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County

of    Gwinnett

[Type of Recording Jurisdiction]    [Name of Recording Jurisdiction]

See Exhibit 'A' Legal Description attached hereto and made a part hereof.

Parcel ID Number:                                      which currently has the address of
2360 Hickory Station Circle                                                              [Street]
Snellville                     [City] , Georgia 30078    [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

702113416                                                                            608146252

-6A(GA) (0005).03                        Page 3 of 14        Initials:           Form 3011  1/01

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

702113416                                                                                      608146252

**BK 46975 PG0426**

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

702113416                                           609146252

6A(GA) (0006).03              Page 6 of 14              Form 3011  1/01

46975
00429    Case 11-52442-mgd    Doc 27    Filed 03/15/11    Entered 03/16/11 12:28:26    Desc Main
Document    Page 12 of 35
BK 46975 PG 0429

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

702113416

-6A(GA) (0005).02                    Page 8 of 14    Initials: AP                608146232

Form 3011 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosure, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

702113416

-6A(GA) (0009).03                        Page 9 of 16                        608146252

                                                                             Form 3011  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

702113416

606144252

-6A(GA) (0008).03

Page 10 of 16

Form 3011 1/01

BK 46975 PG 0432

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

702113416                                             608146252

⊕-6A(GA) (0008).03              Page 11 of 14                    Form 3011 1/01

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
Alfredia Pruitt              -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower


STATE OF GEORGIA,                                          County ss:
    Signed, sealed and delivered in the presence of:


_____
Unofficial Witness


_____
Notary Public,
State of Georgia


702113416

-6A(GA) (0005).03                    Page 14 of 14                    Form 3011  1/01

All that tract or parcel of land lying and being in Land Lot 59 of the
5th District, Gwinnett County, Georgia, being Lot 158, Olde Hickory
Village, Phase 2C, as per plat recorded in Plat Book 115, Pages 115
and 116, Gwinnett County, Georgia Records; which plat is
incorporated herein by reference and made a part hereof.

46975
00433
12-12020-mg    Doc 3354-3    Filed 04/04/13    Entered 04/04/13 15:11:50    Appendix
Exhibits 1-P through J-O T  Pg 19 of 27
Case 11-52442-mgd    Doc 27    Filed 03/15/11    Entered 03/16/11 12:28:26    Desc Main
Document    Page 16 of 35

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

702113416                                                                         608146252

-6A(GA) (0005).03                        Page 12 of 14                Form 3011 1/01

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 30th           day of
August, 2006                           , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to USAA Federal Savings Bank

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 2360 Hickory Station Circle, Snellville, GA  30078

[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
The Deed, The Declaration of Covenants, Conditions and Restrictions.

(the "Declaration"). The Property is a part of a planned unit development known as
OLDE HICKORY VILLAGE

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
    PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
    A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

702113416                                               608146252

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
                              Page 1 of 3            Initials:
-7R (0411)        VMP Mortgage Solutions, Inc. (800)521-7291

46975
00434
12-12020-mg    Doc 3354-3    Filed 04/04/13    Entered 04/04/13 15:11:50    Appendix
Case 11-52442-mgd    Doc 27    Filed 03/16/11    Entered 03/16/11 12:28:26    Desc Main
Exhibits 1-D through 1-O    Pg 21 of 27
Document    Page 17 of 58
BK66975PG0434

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

702113416

608146252

Initials: _DP_

Page 13 of 14

-6A(GA) (0005).03

Form 3011  1/01

U.S. DE...  **...ttlement Statement**

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265



---

**B. Type of Loan**

| | | |
|---|---|---|
| 1.☐ FHA   2.☐ RHS   3.☒ Conv. Unins. | 6. File Number    06A-7371 | 7. Loan Number    702113416 | 8. Mortgage Insurance Case Number |
| 4.☐ VA   5.☐ Conv. Ins. | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Alfredia Pruitt | Lowell Pratt Residential, LLC | USAA Federal Savings Bank |
| 2360 Hickory Station Circle | 3850 Holcomb Bridge Road, Suite 215 | 10750 McDermott Freeway |
| Snellville, GA 30078 | Norcross, GA 30092 | San Antonio, Tx. 78288 |

| G. Property Location | H. Settlement Agent |
|---|---|
| 2360 Hickory Station Circle | Hudnall, Cohn and Abrams, P.C. |
| Snellville, GA 30078 | |
| Land Lot 59, 5th District, Gwinnett | |
| Lot 158, Olde Hickory Village | |

| Place of Settlement | I. Settlement Date |
|---|---|
| 3550 Engineering Drive | **03/05/12** |
| Suite 100 | |
| Norcross, Georgia 30092 | **DO: 03/05/12** |

---

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 271,330.00 | 401. Contract sales price | 271,330.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,503.27 | 403. | |
| 104. Prorated HOA Dues ($1000/yr) | 336.99 | 404. | |
| 105. HOA Initiation Fee | 500.00 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes        to | | 406. City/town taxes        to | |
| 107. County taxes    08/30  to 12/31 | 428.40 | 407. County taxes    08/30  to 12/31 | 428.40 |
| 108. Assessments        to | | 408. Assessments        to | |
| 109. | | 409. | |
| 110. HOA Preparation Fee | 30.00 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 277,128.66 | **420. GROSS AMOUNT DUE TO SELLER** | 271,758.40 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | 4,130.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 271,330.00 | 502. Settlement charges to seller (line 1400) | 12,491.25 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 169,834.19 |
| | | Branch Banking and Trust Company | |
| 205. Good Faith Deposit Fee | 350.00 | 505. Payoff of second mortgage loan | |
| 206. | | 506. Payoff Delivery Fee | 25.00 |
| 207. | | 507. Earnest Money Held | 4,130.00 |
| 208. | | 508. Bonded Builder Warranty | 529.09 |
| 209. | | 509. 2006 Gwinnett County Taxes | 1,271.27 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes        to | | 510. City/town taxes        to | |
| 211. County taxes        to | | 511. County taxes        to | |
| 212. Assessments        to | | 512. Assessments        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |

Alfredia Pruitt
2360 Hickory Station Circle    12-12020-mg    Doc 3354-1    Filed 04/04/13    Entered 04/04/13 15:41:50    Appendix
Snellville, GA 30078

Lowell Pratt Residential, LLC
3550 Hidden Circle Drive, Suite 215
Norcross, GA 30092

Exhibits 1-A through 1-Q    Pg 23 of 27

USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, Tx. 78288

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 2360 Hickory Station Circle | Hudnall, Cohn and Abrams, P.C. | |
| Snellville, GA 30078 | | |
| Land Lot 59, 5th District, Gwinnett | Place of Settlement | I. Settlement Date |
| Lot 158, Olde Hickory Village | 3550 Engineering Drive | 03/05/12 |
| | Suite 100 | |
| | Norcross, Georgia 30092 | DO: 03/05/12 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 271,330.00 | 401. Contract sales price | 271,330.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,503.27 | 403. | |
| 104. Prorated HOA Dues ($1000/yr) | 336.99 | 404. | |
| 105. HOA Initiation Fee | 500.00 | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes   08/30 to 12/31 | 428.40 | 407. County taxes   08/30 to 12/31 | 428.40 |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. HOA Preparation Fee | 30.00 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 277,128.66 | **420. GROSS AMOUNT DUE TO SELLER** | 271,758.40 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 4,130.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 271,330.00 | 502. Settlement charges to seller (line 1400) | 12,491.25 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 169,834.19 |
| | | Branch Banking and Trust Company | |
| 205. Good Faith Deposit Fee | 350.00 | 505. Payoff of second mortgage loan | |
| 206. | | 506. Payoff Delivery Fee | 25.00 |
| 207. | | 507. Earnest Money Held | 4,130.00 |
| 208. | | 508. Bonded Builder Warranty | 529.09 |
| 209. | | 509. 2006 Gwinnett County Taxes | 1,271.27 |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | 275,810.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 188,280.80 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 277,128.66 | 601. Gross amount due to seller (line 420) | 271,758.40 |
| 302. Less amounts paid by/for borrower (line 220) | 275,810.00 | 602. Less reduction amount due to seller (line 520) | 188,280.80 |
| **303. CASH    FROM    BORROWER** | 1,318.66 | **603. CASH    TO    SELLER** | 83,477.60 |

In the event a re-proration of the taxes is necessary when the tax bills for the current year are rendered, the parties agree to handle said re-proration between themselves.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT        SETTLEMENT STATEMENT**

File Number: 06A-7371

| L. SETTLEMENT CHARGES: | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. | TOTAL SALES/BROKER'S COMMISSION based on price $   271,330.00 @   4.50 =   12,209.85 | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | $   12,209.85  to   LPR Realty, Inc. | | | |
| 702. | $            to | | | |
| 703. | Commission paid at Settlement | | | 12,209.85 |
| 704. | | | | |
| 800. | **ITEMS PAYABLE IN CONNECTION WITH LOAN**                               P.O.C. | | | |
| 801. | Loan Origination Fee              %   USAA Federal Savings Bank | | 339.16 | |
| 802. | Loan Discount                      % | | | |
| 803. | Appraisal Fee              to   USAA Federal Savings Bank | | 275.00 | |
| 804. | Credit Report              to   USAA Federal Savings Bank | | 12.00 | |
| 805. | Lender's Inspection Fee    to   USAA Federal Savings Bank | | 100.00 | |
| 806. | Mtg. Ins. Application Fee   to | | | |
| 807. | Assumption Fee             to | | | |
| 808. | Good Faith Deposit Fee         USAA Federal Savings Bank | 350.00B | | |
| 809. | Tax Related Service Fee         USAA Federal Savings Bank | | 85.00 | |
| 810. | Processing/Flat Fee             USAA Federal Savings Bank | | 400.00 | |
| 811. | Flood Certification Fee         USAA Federal Savings Bank | | 8.00 | |
| 812. | GA Residential Mortgage Loan F     USAA Federal Savings Bank | | 6.50 | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 900. | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. | Interest from   08/30/06   to   09/01/06   @$   50.8744  /day   2 day(s) | | 101.75 | |
| 902. | Mortgage Insurance Premium            to | | | |
| 903. | Hazard Insurance Premium       1 yrs. to   Teachers Insurance Company | | 382.00 | |
| 904. | Flood Insurance              Fiedlity National Property & Casualty | | 317.00 | |
| 905. | | | | |
| 1000. | **RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. | Hazard Insurance             mo. @$            / mo. | | | |
| 1002. | Mortgage Insurance    0   mo. @$   189.93   / mo. | | | |
| 1003. | City property taxes          mo. @$            / mo. | | | |
| 1004. | County property taxes   2   mo. @$   105.94   / mo. | | 211.88 | |
| 1005. | Annual Assessments   3   mo. @$   26.42   / mo. | | 79.26 | |
| 1006. | mo. @$            / mo. | | | |
| 1007. | mo. @$            / mo. | | | |
| 1008. | Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | -211.78 | |
| 1100. | **TITLE CHARGES** | | | |
| 1101. | Settlement or closing fee       to | | | |
| 1102. | Abstract or title search        to | | | |
| 1103. | Title examination           to   Hudnall, Cohn and Abrams, P.C. | | 150.00 | |
| 1104. | Title insurance binder      to   Hudnall, Cohn and Abrams, P.C. | | 75.00 | |
| 1105. | Document preparation        to | | | |
| 1106. | Notary fees                 to | | | |
| 1107. | Attorney's fees             to   Hudnall, Cohn and Abrams, P.C. | | 400.00 | |
| | (includes above item No:   1101-1105-1106                 ) | | | |
| 1108. | Title insurance           to   Fidelity National | | 810.00 | |
| | (includes above item No:   1104                 ) | | | |
| 1109. | Lender's coverage   271,330.00 — 578.00 | | | |
| 1110. | Owner's coverage   271,330.00 --- 232.00 | | | |
| 1111. | Tax Search Delivery & Handling    Hudnall, Cohn and Abrams, P.C. | | 25.00 | |
| 1112. | Courier Delivery & Handling       Hudnall, Cohn and Abrams, P.C. | | 30.00 | |
| 1113. | Post Closing Service Fee          Hudnall, Cohn and Abrams, P.C. | | 35.00 | 10.00 |
| 1200. | **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. | Recording fees    Deed $   10.00   ; Mortgage $   48.00   ; Releases $ | | 58.00 | |
| 1202. | City/county/stamps   Deed $            ; Mortgage $ | | | |
| 1203. | State tax/stamps   Deed $   271.40   ; Mortgage $   814.50 | | 814.50 | 271.40 |
| 1204. | | | | |
| 1205. | | | | |
| 1300. | **ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. | Survey              to   ($375 if FHA-pay to Lowell Pratt) | | | |

| | | | |
|---|---|---|---|
| 808. Good Faith Deposit Fee | USAA Federal Savings Bank | 350.00B | |
| 809. Tax Related Service Fee | USAA Federal Savings Bank | 85.00 | |
| 810. Processing/Flat Fee | USAA Federal Savings Bank | 400.00 | |
| 811. Flood Certification Fee | USAA Federal Savings Bank | 8.00 | |
| 812. GA Residential Mortgage Loan F | USAA Federal Savings Bank | 6.50 | |
| 813. | | | |
| 814. | | | |
| 815. | | | |

### 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE

| | | | |
|---|---|---|---|
| 901. Interest from 08/30/06 to 09/01/06 @$ 50.8744 /day 2 day(s) | | 101.75 | |
| 902. Mortgage Insurance Premium to | | | |
| 903. Hazard Insurance Premium 1 yrs. to Teachers Insurance Company | | 382.00 | |
| 904. Flood Insurance Fiedlity National Property & Casualty | | 317.00 | |
| 905. | | | |

### 1000. RESERVES DEPOSITED WITH LENDER FOR

| | | | |
|---|---|---|---|
| 1001. Hazard Insurance | mo. @$ /mo. | | |
| 1002. Mortgage Insurance | 0 mo. @$ 189.93 /mo. | | |
| 1003. City property taxes | mo. @$ /mo. | | |
| 1004. County property taxes | 2 mo. @$ 105.94 /mo. | 211.88 | |
| 1005. Annual Assessments | 3 mo. @$ 26.42 /mo. | 79.26 | |
| 1006. | mo. @$ /mo. | | |
| 1007. | mo. @$ /mo. | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | -211.78 | |

### 1100. TITLE CHARGES

| | | | |
|---|---|---|---|
| 1101. Settlement or closing fee | to | | |
| 1102. Abstract or title search | to | | |
| 1103. Title examination | to Hudnall, Cohn and Abrams, P.C. | 150.00 | |
| 1104. Title insurance binder | to Hudnall, Cohn and Abrams, P.C. | 75.00 | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to Hudnall, Cohn and Abrams, P.C. | 400.00 | |
| (includes above item No: 1101-1105-1106 ) | | | |
| 1108. Title insurance | to Fidelity National | 810.00 | |
| (includes above item No: 1104 ) | | | |
| 1109. Lender's coverage | 271,330.00 --- 578.00 | | |
| 1110. Owner's coverage | 271,330.00 --- 232.00 | | |
| 1111. Tax Search Delivery & Handling | Hudnall, Cohn and Abrams, P.C. | 25.00 | |
| 1112. Courier Delivery & Handling | Hudnall, Cohn and Abrams, P.C. | 30.00 | |
| 1113. Post Closing Service Fee | Hudnall, Cohn and Abrams, P.C. | 35.00 | 10.00 |

### 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES

| | | | |
|---|---|---|---|
| 1201. Recording fees Deed $ 10.00 ; Mortgage $ 48.00 ; Releases $ | | 58.00 | |
| 1202. City/county/stamps Deed $ ; Mortgage $ | | | |
| 1203. State tax/stamps Deed $ 271.40 ; Mortgage $ 814.50 | | 814.50 | 271.40 |
| 1204. | | | |
| 1205. | | | |

### 1300. ADDITIONAL SETTLEMENT CHARGES

| | | | |
|---|---|---|---|
| 1301. Survey | to ($375 if FHA-pay to Lowell Pratt) | | |
| 1302. Pest inspection | to | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. *NFLP="Net Funded from Loan Proceeds" | | 4,503.27 | 12,491.25 |

### 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K)

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Alfredia Pruitt

Lowell Pratt Residential, LLC

Kenneth Biggerstaff, Manager

Hudnall, Cohn and Abrams, P.C.

08/30/06

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# **Exhibit 1-Q**

October 2, 2012

RE:  **REQUEST TO WITHDRAW PROOF OF CLAIM**
      Case No.  **12-12020(MG)**

To Whom It May Concern:

I Alfredia Pruitt, is requesting to **WITHDRAW** the **PROOF of CLAIM**
mailed to your office on September 26, 2012 in the above case, in reference
to **RESIDENTIAL CAPITAL, LLC.**

**I am providing a self stamped envelope.**  I've tried reaching your office by
phone and left several voice mails and no response, however the courts
advised me to send you a letter.

Thank you,

Alfredia Pruitt

Cc:  Lorraine Mills

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

RECEIVED

OCT 0 9 2012

KURTZMAN CARSON CONSULTANTS



1212020121009000000000034