MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Stefan W. Engelhardt
James A. Newton

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
In re:                                                       )   Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,                     )   Chapter 11
                                                             )
                                     Debtors.                )   Jointly Administered
                                                             )
------------------------------------------------------------ )

**DEBTORS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF MOTION
PURSUANT TO BANKRUPTCY RULE 3013 AND BANKRUPTCY CODE
SECTION 362(A) FOR A DETERMINATION THAT (I) GMAC MORTGAGE'S
FRB FORECLOSURE REVIEW OBLIGATION IS A GENERAL UNSECURED
CLAIM AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT
<u>OF THE FRB FORECLOSURE REVIEW OBLIGATION</u>**

ny-1083843

-i-

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................................1

I.      Payments for Restitution or Reimbursement Under the Consent Order ARE
        General Unsecured Claims ..................................................................................................1

        A.      The Federal Reserve Has the Right, Under the Consent Order, to Compel
                Restitution and Reimbursement Payments ............................................................2

        B.      The Federal Reserve's Right to Compel Restitution and Reimbursement
                Payments is a General Unsecured Claim ...............................................................5

II.     AFI Would be Liable for any Shortfall in Restitution or Reimbursement Payments
        if those Claims are General Unsecured Claims and the Pro Rata Share Paid to
        Unsecured Creditors is Less than the Full amount ..............................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ala. Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.),
  963 F.2d 1449 (11th Cir. 1992)..................................................................................8

Fezler v. Davis (In re Davis),
  194 F.3d 570 (5th Cir. 1999).....................................................................................4

Fisher v. Lee Brothers Value World, Inc. (In re Lee Bros. Value World, Inc.),
  486 F.2d 1037 (9th Cir.1973)..................................................................................11

FTC v. Austin (In re Austin),
  138 B.R. 898 (Bankr. N.D. Ill. 1992).........................................................................4

Goldman Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.),
  212 F.3d 144 (2d Cir. 2000).......................................................................................5

Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim, LLC),
  456 B.R. 185 (S.D.N.Y. 2011)...................................................................................7

In re Episode USA, Inc.,
  202 B.R. 691 (Bankr. S.D.N.Y. 1996).....................................................................11

In re Evans Prods. Co.,
  60 B.R. 863 (S.D. Fla. 1986).....................................................................................3

In re Old Carco LLC,
  424 B.R. 650 (Bankr. S.D.N.Y.), aff'd, Ramirez Chrysler Jeep Dodge, Inc. v. Old
  Carco Liquidation Trust (In re Old Carco LLC), Case No. 10-2800 (PKC), 2010 WL
  4455648 (S.D.N.Y. Nov. 2, 2010)..............................................................................8

In re Taibbi,
  213 B.R. 261 (Bankr. E.D.N.Y. 1997).......................................................................4

Johnson v. Home State Bank,
  501 U.S. 78 (1991)..................................................................................................5, 6

Nathanson v. Nat'l Labor Relations Bd.,
  344 U.S. 25 (1952).....................................................................................................3

NLRB v. Walsh (In re Palau Corp.),
  18 F.3d 746 (9th Cir. 1994).......................................................................................5

Nw. Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.),
  608 F.3d 139 (2d Cir. 2010)....................................................................................11

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

NYC Dep't of Fin. v. Twin Rivers, Inc.,
   920 F. Supp. 50 (S.D.N.Y. 1996) .................................................................................. 10, 11

Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.),
   209 F.3d 125 (2d Cir. 2000) .................................................................................................. 5

Pa. Dep't. of Pub. Welfare v. Davenport,
   495 U.S. 552 (1990) ........................................................................................................... 5, 6

Phelps Dodge Corp. v. Nat'l Labor Relations Bd., 313 U.S. 177 (1941) ........................................ 3

Reading v. Brown,
   391 U.S. 471 (1968) ................................................................................................................. 8

Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.,
   789 F.2d 98 (2d Cir. 1986) ..................................................................................................... 7

U.S. Trust Co. of N.Y. v. Revere Copper & Brass, Inc. (In re Revere Copper & Brass, Inc.),
   60 B.R. 887 (Bankr. S.D.N.Y. 1985) .................................................................................. 5

**STATUTES**

11 U.S.C. § 101(10)(A) .................................................................................................................... 4

11 U.S.C. § 503(b)(1)(A) ................................................................................................................. 6

12 U.S.C. § 1818(b)(6) ................................................................................................................ 4, 7

15 U.S.C. § 45 ................................................................................................................................. 7

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) ....................................................................................... 10

Letter from Chairman Greenspan to John J. LaFalce dated May 30, 2002, available at
   http://www.federalreserve.gov/boarddocs/press/bcreg/2002/20020530/attachment.pdf .......... 7

Restatement (3d) of Suretyship and Guaranty §§ 1(3)(a), 15(a) ................................................. 10

Transcript of Hearing, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr.
   S.D.N.Y. Mar. 21, 2013) ....................................................................................................... 6

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**" and each, a "**Debtor**"), including GMAC Mortgage, LLC ("**GMAC Mortgage**"), submit this supplemental brief, pursuant to the Court's direction at the March 21, 2013 hearing (the "**Hearing**") on the Debtors' motion (the "**Motion**") for entry of an order determining that (i) for purposes of any proposed plan, GMAC Mortgage's FRB Foreclosure Review[1] obligation must be classified as a general unsecured claim in an amount to be determined, and (ii) the automatic stay prevents the Federal Reserve Board (the "**Federal Reserve**"), the Federal Deposit Insurance Corporation (the "**FDIC**"), and other governmental entities from taking any action to enforce such claim against the Debtors outside of their chapter 11 cases.

## ARGUMENT

**I.  PAYMENTS FOR RESTITUTION OR REIMBURSEMENT UNDER THE CONSENT ORDER ARE GENERAL UNSECURED CLAIMS**

1.  The Federal Reserve's right, pursuant to the Consent Order, to require the Debtors to make restitution or reimbursement payments is a general unsecured claim. Bankruptcy Code section 101(5) defines "claim" to include, among other things, any right to payment arising from a breach of performance, even if the right has not been reduced to judgment. The Federal Reserve's right, under the Consent Order, to compel the Debtors to make restitution or reimbursement payments falls squarely within the definition set out in section 101(5).

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

**A.    The Federal Reserve Has the Right, Under the Consent Order, to Compel Restitution and Reimbursement Payments.**

2.    The Federal Reserve (not the ultimate borrowers whose loans were foreclosed) has the right, under the Consent Order, to compel the Debtors to make restitution or reimbursement payments.  See Reply Brief ¶ 9 n.6.  As a result, the claim under the Consent Order belongs to the Federal Reserve, not the underlying borrowers.

3.    The Consent Order was entered into by the Debtors and the Federal Reserve (along with other parties).  The Debtors' obligations under the Consent Order run to the Federal Reserve.  Thus the Debtors undertook, in paragraph 3(a) of the Consent Order, to "retain one or more independent consultant(s) acceptable to the Reserve Bank to conduct an independent review of certain residential mortgage foreclosure actions."  The Debtors further undertook to cause the independent consultant(s) to "prepare a written report detailing the findings of the Foreclosure Review" and to "provide to the Reserve Bank a copy of the Foreclosure Report."  Consent Order ¶ 3(b).  The Debtors also undertook, "within 45 days of receipt of the Foreclosure Report," to "submit to the Reserve Bank an acceptable plan" to, among other things, "reimburse or otherwise provide appropriate remediation to the borrower for any" "financial injury identified" by the report.  Id. ¶ 3(c).  And, in paragraph 3(d) of the Consent Order, the Debtors agreed to "make all reimbursement and remediation payments and provide all credits required by [the remediation plan], and provide the Reserve Bank with a report detailing such payments and credits."  The Consent Order also explicitly provides that "[n]othing in this Order, express or implied, shall give to any person or entity [including borrowers], other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable remedy, or claim under this Order."  Id. ¶ 30.

4.  These provisions make it clear that the Debtors' obligations under the Consent Order are owed to the Federal Reserve, not to the individual borrowers whose loans were foreclosed. While the restitution and reimbursement payments required by the Consent Order will ultimately be made to qualified borrowers, such a payment mechanism does not convert a claim owned by the Federal Reserve into claims belonging to individual borrowers. Courts have repeatedly recognized that federal administrative agencies, by virtue of their authority to enforce the administrative law, are creditors in their own right, holding claims against a debtor even though the agencies may be pursuing the claim on behalf of private parties. Indeed, in some cases, the governmental agency may be the only entity entitled to enforce the relevant statute and, therefore, may be the only entity entitled to file a proof of claim asserting a claim for such an obligation.

5.  Thus, in Nathanson v. Nat'l Labor Relations Bd., 344 U.S. 25, 27 (1952), the Supreme Court held that the National Labor Relations Board was a creditor within the meaning of the Bankruptcy Act and therefore had standing to bring a cause of action against a bankrupt employer for back pay owed its employees. The Court explained that the NLRB was the "public agent chosen by Congress to enforce the National Labor Relations Act," and denying creditor status to the NLRB would frustrate its ability "to vindicate the public policy of the [National Labor Relations Act] by making the employees whole for losses suffered on account of an unfair labor practice." Id. (citing Phelps Dodge Corp. v. Nat'l Labor Relations Bd., 313 U.S. 177, 197 (1941)).

6.  Lower courts have consistently followed this rule, holding that a governmental agency charged with enforcing a statutory remedy is the holder of a claim under the Bankruptcy Code. See, e.g., In re Evans Prods. Co., 60 B.R. 863, 867-68 (S.D. Fla. 1986)

3

(Federal Trade Commission was creditor entitled to file claim for purposes of enforcing statutory obligations in the public interest for the benefit of private parties); see also Fezler v. Davis (In re Davis), 194 F.3d 570, 576-77 (5th Cir. 1999) ("[t]he common thread running through the [catalogued] cases is that an entity with statutory authority to prosecute and collect a claim against the debtor, even if other persons are entitled to ultimate payment on the claim, is a creditor in its own right, absent a statutory provision to the contrary.").

7. The Federal Reserve is the entity entitled to enforce the restitution and reimbursement obligations included in the Consent Order. Indeed, one of the Federal Reserve's specified powers is to require financial institutions "to take affirmative action to correct or remedy any conditions resulting from any violation," including requiring them to "make restitution or provide reimbursement" to injured parties. 12 U.S.C. § 1818(b)(6). Individual borrowers, by contrast, have no "right to payment" — no "claim" — under the Consent Order," and "paragraph 30 of the Consent Order specifically precludes third-parties from having any rights under the Consent Order." Fed. Reserve Objection at p. 11.

8. The Federal Reserve, then, holds the claim created by the Consent Order for payment of restitution or reimbursement to individual borrowers. See 11 U.S.C. § 101(10)(A) (defining creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"). See also FTC v. Austin (In re Austin), 138 B.R. 898, 904 (Bankr. N.D. Ill. 1992) (FTC was sole entity that could assert claim under section 5(a) of the Federal Trade Commission Act because it was the sole entity permitted to bring suit under that section); In re Taibbi, 213 B.R. 261, 266-67 (Bankr. E.D.N.Y. 1997) (local county agency, as sole entity authorized to pursue claims for deceptive trade practices, was

4

creditor entitled to seek determination of dischargeability of restitution claim that would be paid over to private consumers).

**B.    The Federal Reserve's Right to Compel Restitution and Reimbursement Payments is a General Unsecured Claim.**

9.      The Federal Reserve's rights under the Consent Order arise from prepetition conduct or a prepetition judgment — specifically, allegedly improper foreclosure activities in 2009 and 2010, and the Consent Order entered into as of April 13, 2011. A claim arises "when 'the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy law.'" Goldman Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.), 212 F.3d 144, 151 (2d Cir. 2000) (citation omitted). All of the elements of the Federal Reserve's claim existed no later than April 13, 2011, when the Consent Order was signed.[2]

10.     Those rights give rise to a prepetition unsecured claim. In Pa. Dep't. of Pub. Welfare v. Davenport, the Supreme Court held that criminal restitution payments owed by a debtor were debts that could be discharged in bankruptcy. 495 U.S. 552, 555 (1990) (overruled by statute on other grounds as recognized in Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)). In Davenport, Pennsylvania argued that the debtor's criminal restitution obligation was not a debt because neither the Commonwealth nor the victim (i) stood "in a traditional creditor-debtor relationship" with the debtor or (ii) could enforce the restitution obligation in a civil

---

[2] It does not matter that the identities of individual injured borrowers were not known as of the petition date. See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125 (2d Cir. 2000) (claim arising from prepetition obligation was prepetition unsecured claim despite unliquidated nature of the claim); NLRB v. Walsh (In re Palau Corp.), 18 F.3d 746, 751 (9th Cir. 1994) (claim stemming from NLRB order awarding back pay was prepetition claim even though order was entered postpetition and some of the back pay did not accrue until after the petition date); U.S. Trust Co. of N.Y. v. Revere Copper & Brass, Inc. (In re Revere Copper & Brass, Inc.), 60 B.R. 887, 891 (Bankr. S.D.N.Y. 1985) (bank's claim against debtor based on standby letter of credit issued on debtor's behalf prepetition but not drawn on until postpetition was a prepetition unsecured claim, was the "classic example of a contingent claim," and it made no difference that satisfaction of the contingency and liquidation of the amount of the claim did not occur until postpetition).

5

ny-1083843

proceeding. 495 U.S. at 558-60. The Supreme Court rejected this argument, concluding that the phrase "right to payment" means "nothing more nor less than an enforceable obligation . . . ." Id. at 559. Since the Commonwealth held an enforceable monetary obligation against the debtor, it had a claim that could be discharged in bankruptcy. See id. at 558-60.

11.  The Federal Reserve argues, however, that it does not have a "creditor-debtor relationship" with the Debtors. Fed. Reserve Obj. at p. 6. Davenport teaches otherwise. Just like the Commonwealth in Davenport, the Federal Reserve seeks to enforce a restitution obligation requiring the Debtors to pay money. The Federal Reserve is the only entity with authority to enforce that obligation. The Federal Reserve thus holds an unsecured prepetition claim against the Debtors.

12.  AFI argues that the payments owed under the Consent Order are entitled to priority. But they do not fall within the scope of claims entitled to priority under Bankruptcy Code section 507(a). Motion ¶¶ 44-45. The Debtors are not aware of any statutory provision affording priority to restitution obligations imposed under 12 U.S.C. § 1818(b). Accord Transcript of Hearing at 82:14-16, In re Residential Capital, LLC, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 21, 2013) (Federal Reserve concedes it is not aware of any provision providing priority to such claims).

13.  Nor are payments under the Consent Order entitled to priority as administrative expenses. Bankruptcy Code section 503(b)(1)(A) affords administrative expense priority only for "actual necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). In order to qualify for administrative expense priority, a claimant must show that "the expense: (1) arises out of a transaction between creditor and bankruptcy estate; and (2) that the expense was a 'necessary' expense of the bankruptcy estate by showing the debt directly

6

ny-1083843

and substantially benefitted the estate." Helen-May Holdings, LLC v. Geltzer (In re Kollel Mateh Efraim, LLC), 456 B.R. 185, 192 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). When determining if a claimant is entitled to administrative expense priority, courts must remember that "statutory priorities are narrowly construed" and "[i]f one claimant is to be preferred over others, the purpose should be clear from the statute." Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100, 101 (2d Cir. 1986) (internal quotations marks and citation omitted).

14.     The Federal Reserve's right to require restitution and reimbursement payments does not meet either of these criteria. It does not arise out of a transaction between the Federal Reserve and the Debtors' estates since, as shown above, the right arises entirely from prepetition conduct and a prepetition Consent Order. And the restitution and reimbursement payments would not substantially benefit the Debtors' estates. As the Second Circuit explained in McFarlin's, Inc., 789 F.2d at 103, transactions occurring prior to bankruptcy cannot benefit the debtor's estate and, accordingly, cannot give rise to administrative expense priority.[3]

---

[3] For the same reasons, payments pursuant to an amendment to the Consent Order where the amendment provides for payments to a broader class of borrowers than were provided for in the original Consent Order would not be an administrative expense. The Federal Reserve's remedial powers under 12 U.S.C. § 1818(b) are broad and include restitution and reimbursement, as well as such other action as the Federal Reserve may determine to be appropriate. 12 U.S.C. § 1818(b)(6). For example, the Federal Reserve might determine that foreclosures occurring between January 1, 2009 and December 31, 2010 for loans serviced by the Debtors were themselves a result of unsound banking practice or a violation of law that requires restitution, reimbursement or other action. Such a determination would not depend on a finding of deficiencies under applicable contract law, or lending or foreclosure laws. Such a determination could be predicated on a determination that the foreclosures would be an unsound banking practice because they would impair the reputation of the institution or depress the housing market so as to jeopardize recoveries on mortgage collateral. In effect, this is what the Federal Reserve has already done in amending the consent orders with other mortgage servicers. Such a determination could also be based on a finding that the foreclosures were a violation of law because they were a violation of the unfairness standard in section 5 of the Federal Trade Commission Act. See 15 U.S.C. § 45; Letter from Chairman Greenspan to John J. LaFalce dated May 30, 2002, available at http://www.federalreserve.gov/boarddocs/press/bcreg/2002/20020530/attachment.pdf. In any event, each of these obligations would stem from alleged prepetition conduct by the Debtors, would not benefit the estates, and would not be entitled to administrative expense priority.

7

ny-1083843

15. The restitution and reimbursement obligations are also not entitled to administrative priority under any exception to the general rule. In Reading v. Brown, the Supreme Court set out an exception, under which certain obligations, "ordinarily incident to the operation of a business," could be entitled to administrative priority even if they did not provide an actual benefit to the debtor's estate. 391 U.S. 471, 483 (1968). The Supreme Court reasoned it is fair and appropriate to accord a postpetition tort victim injured by the debtor in possession an administrative expense priority rather than requiring that postpetition tort victim to suffer for the benefit of the debtor's prepetition creditors. See id. at 482-83. This logic has subsequently been applied to fines for postpetition violations of state law and clean-up of ongoing pollution. See, e.g., Ala. Surface Mining Comm'n v. N.P. Mining Co. (In re N.P. Mining Co.), 963 F.2d 1449 (11th Cir. 1992) (fines for violating state environmental reclamation laws entitled to administrative expense to the extent they were incident to debtor's continued operation). However, even under Reading, the relevant obligation must arise out of a postpetition transaction with the debtor. Reading, 391 U.S. at 483; see also In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y.), aff'd, Ramirez Chrysler Jeep Dodge, Inc. v. Old Carco Liquidation Trust (In re Old Carco LLC), Case No. 10-2800 (PKC), 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) (refusing administrative priority under Reading where claim related to postpetition accrual of an amount arising out of a prepetition automobile dealer transaction with the debtor). The obligation further must arise in connection with the Debtors' ongoing business. See In re N.P. Mining Co., 963 F.2d at 1460-61. Here, the Consent Order is a prepetition order obligating the Debtors to pay money to remediate prepetition conduct and Reading, although favorable to the Debtors' argument, is therefore inapplicable. Moreover, the Debtors no longer have any ongoing mortgage servicing operations, so any future restitution and reimbursement payments cannot be

8

said to be "incident" to the any ongoing mortgage servicing business. For this reason as well, any restitution or reimbursement claims by the Federal Reserve are not entitled to administrative expense priority.

## II. AFI WOULD BE LIABLE FOR ANY SHORTFALL IN RESTITUTION OR REIMBURSEMENT PAYMENTS IF THOSE CLAIMS ARE GENERAL UNSECURED CLAIMS AND THE PRO RATA SHARE PAID TO UNSECURED CREDITORS IS LESS THAN THE FULL AMOUNT

16. AFI would be liable under the Supplemental Agreement for any shortfall remaining after the Debtors' estates are settled. The terms of the Supplemental Agreement between AFI and the Federal Reserve dated April 26, 2012 compel this outcome (attached as Exhibit 3 to AFI's objection [Docket No. 3150]).

17. The Supplemental Agreement provides that AFI is "secondarily liable" to "timely pay" the "monetary reimbursement or remediation" payments required by the Consent Order "to the extent ResCap . . . does not timely pay" them. It states:

> If ResCap commences cases or is otherwise subject to protection under the Code, A[FI] will be secondarily liable for obligations to timely pay any portions of:
>
> (a) The fee that ResCap owes PricewaterhouseCoopers (or any successor consultant) to complete the foreclosure review required under paragraph 3(a) of the Consent Order, and
> (b) the monetary reimbursement or remediation under a remediation plan approved by the Federal Reserve under paragraphs 3(c) and 3(d) of the Consent Order (clauses (a) and (b) of this paragraph 1 collectively being the "ResCap Obligations"), in the event and to the extent ResCap . . . does not timely pay any ResCap Obligation.

Supplemental Agreement ¶ 1.

18. Secondary liability is "liability that does not arise unless the primarily liable party fails to honor its obligation." Black's Law Dictionary (9th ed. 2009). A party that is secondarily liable for another's obligation is a "guarantor" of that obligation no matter how

9

ny-1083843

phrased in the applicable agreement. See Restatement (3d) of Suretyship and Guaranty §§ 1(3)(a), 15(a).

19. A guaranty may be either a guaranty of payment or a guaranty of collection. Here, the Supplemental Agreement imposes a payment guaranty. It requires AFI to pay "in the event and to the extent ResCap . . . does not timely pay" the restitution and reimbursement payments required by the Consent Order. "A court must look to the language of the specific guaranty to determine the nature of the guaranty." NYC Dep't of Fin. v. Twin Rivers, Inc., 920 F. Supp. 50, 52 on reargument, 929 F. Supp. 172 (S.D.N.Y. 1996) (internal citation omitted). As described by the Twin Rivers court:

> The difference between a guaranty of collection and a guaranty of payment is quite simple. In a guaranty of collection, the guarantor undertakes the responsibility to pay if and only if the debt cannot be collected from the principal through legal proceedings . . . . [A] guarantor of payment undertakes an unconditional guaranty that the debtor will pay on the debt. If for some reason, the debtor fails to make payment to the creditor, he can proceed directly against the guarantor. Unlike the requirements a creditor must take to enforce a guaranty of collection, a creditor who seeks to enforce a guaranty of payment need not take any preliminary steps against the principal debtor before he seeks to collect the debt owed from the guarantor of payment.

Id. (internal citation omitted).

20. The Supplemental Agreement makes AFI liable for restitution and reimbursement payments in the event the Debtors do not timely pay them. The Federal Reserve does not need to attempt any legal collection proceedings against the Debtors before turning to AFI for payment. Indeed, AFI's only recourse, if the Debtors fail to make full payment, is in bankruptcy court. The Supplemental Agreement provides that, in the event the Debtors fail timely to make payment, AFI may seek a ruling from this Court that the payment made by AFI is treated as an administrative expense of the Debtors. See Supplemental Agreement § 1(b). Such a request, however, does not obviate AFI's obligation to make the required payments. Id.

10

ny-1083843

21. AFI argues that secondary obligation to make restitution and reimbursement payments can only arise after the Debtors "breach" the Consent Order. That argument is inconsistent with the terms of the Supplemental Agreement, which provides that AFI must "timely pay" the reimbursement or restitution payments "in the event and to the extent ResCap . . . does not timely pay" them. The Supplemental Agreement goes on to provide that AFI's obligations may not be delayed more than "90 days after ResCap has failed to perform or pay any ResCap Obligations." Supplemental Agreement § 1.

22. The Supplemental Agreement thus does not require any further "breach" beyond a failure by the Debtors to timely pay restitution and reimbursement pursuant to the Consent Order. Only the Debtors' payment of any restitution or reimbursement obligations in full will prevent AFI from becoming liable under the Supplemental Agreement. See Nw. Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.), 608 F.3d 139, 147 (2d Cir. 2010) (discharge of a "stipulated loss amount" pursuant to bankruptcy plan did not represent "payment" of that amount under contractual provision extinguishing indemnification obligation upon payment of the stipulated loss amount). Indeed, as one court has explained in the context of a lease guaranty, "[c]ommon sense dictates that the guarantor remain fully liable even when the principal debtor seeks relief under the Bankruptcy Code. After all, what good is a guaranteed lease if the guarantor escapes liability when the debtor does?" In re Episode USA, Inc., 202 B.R. 691, 695 (Bankr. S.D.N.Y. 1996) (quoting Fisher v. Lee Brothers Value World, Inc. (In re Lee Bros. Value World, Inc.), 486 F.2d 1037, 1038 (9th Cir.1973)). Accordingly, AFI will be required to make the reimbursement and remediation payments "to the extent" that the Debtors' chapter 11 plan provides less than full payment on any restitution or reimbursement claims under the Consent Order.

11

ny-1083843

WHEREFORE, the Debtors respectfully request that the Court grant the Motion and enter an order, substantially in the form attached thereto as Exhibit 1, confirming that (i) GMAC Mortgage's FRB Foreclosure Review obligation is a general unsecured claim for purposes of any plan proposed in these chapter 11 cases and (ii) the automatic stay applies to prevent the Federal Reserve and FDIC from attempting to enforce their general unsecured claim against GMAC Mortgage outside of these chapter 11 cases.

| | |
|---|---|
| New York, New York<br>Dated: April 5, 2013 | /s/ Gary S. Lee<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>Stefan W. Engelhardt<br>James A. Newton<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |

12

ny-1083843