**Hearing Date: April 11, 2013 at 10:00am**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————— )
In re:                                                    )        Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,        )        Chapter 11
                                                          )
                                    Debtors.    )        Jointly Administered
—————————————————————— )

**BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S**
**SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OBJECTION**
**TO DEBTORS' MOTION FOR A DETERMINATION THAT**
**(I) GMAC MORTGAGE'S INDEPENDENT FORECLOSURE**
**REVIEW OBLIGATION IS A GENERAL UNSECURED CLAIM**
**AND (II) THE AUTOMATIC STAY PREVENTS ENFORCEMENT**
<u>**OF THE INDEPENDENT FORECLOSURE REVIEW OBLIGATION**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

SUPPLEMENTAL ARGUMENT.............................................................................................. 2

     A.     Any Remediation or Reimbursement Payments Under the Board's
            Injunctive Consent Order Are Not General Unsecured Claims ........................... 2

     B.     The Precedent Cited By the Unsecured Creditors Committee Does Not
            Support A Conclusion That There Is A "Claim".................................................. 5

     C.     Any Remediation or Reimbursement Payments to Borrowers Cannot
            Permissibly Disconnected from GMACM's Other Remedial Obligations
            Under the Consent Order ..................................................................................... 8

     D.     Concluding that Any Remediation or Reimbursement Payments Are
            "Claims" Would Contravene Section 8(i)(1)...................................................... 11

     E.     Even if GMACM's Injunctive Obligations Are "Claims," They Are Not
            General Unsecured Claims and Should Be Afforded Administrative
            Priority .............................................................................................................. 13

     F.     AFI's Liability ................................................................................................... 15

CONCLUSION......................................................................................................................... 16

EXHIBIT A:  Consent Order
EXHIBIT B:  Remediation Framework Frequently Asked Questions
EXHIBIT C:  Supplemental Agreement

# TABLE OF AUTHORITIES

**Cases**

Caires v. JPMorgan Chase Bank, N.A.,
    880 F.Supp. 2d 288 (D. Conn. 2012).............................................................................. 3

Desouza v. Wells Fargo Bank, N.A.,
    2013 U.S. Dist. LEXIS 30551 (E.D. M.I. 2013).......................................................... 2

Falls Riverway Realty, Inc. v. City of Niagara Falls,
    754 F.3d 49 (2nd Cir. 1985)........................................................................................... 3

Fellows v. CitiMortgage, Inc.,
    710 F.Supp. 2d 385 (S.D. N.Y. 2011)........................................................................... 3

In re Conner Corp.,
    127 B.R. 775 (E.D. N.C. 1991)................................................................................... 2, 3

In re Firstcorp, Inc.,
    129 B.R. 450 (E.D. N.C. 1991), aff'd, Carlton v. Firstcorp, Inc.,
    967 F.3d 942 (4th Cir. 1992) ....................................................................................... 13

In re Grand Spaulding Dodge, Inc.,
    5 B.R. 481 (N.D. Ill. 1980) .......................................................................................... 15

Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus.),
    467 B.R. 697 (S.D.N.Y. 2012)................................................................................... 4, 5

In re Lear Corp.,
    2012 Bankr. LEXIS 440 (Bankr. S.D. N.Y. 2012) .................................................... 14

Lemelle v. Universal MFG Corp.,
    18. F.3d 1268 (5th Cir. 1994) ........................................................................................ 5

Maniolos v. United States,
    741 F.Supp. 2d 555 (S.D.N.Y. 2010)............................................................................ 3

Mark IV Indus. v. N.M. Envtl. Dep't (In re Mark IV Indus.),
    428 B.R. 460 (Bankr. S.D.N.Y. 2010) .......................................................................... 9

NLRB v. Walsh (In re Palau Corp.),
    18 F.3d 746 (9th Cir. 1994) ................................................................................ 5, 6, 14

## TABLE OF AUTHORITIES
### (cont.)

O'Loghlin v. County of Orange.,
    229 F.3d 871 (9th Cir. 2000) ................................................................................. 14

Ohio v. Kovacs,
    469 U.S. 274 (1985)................................................................................................. 10

Patterson v. Newspaper & Mail Deliverers' Union,
    138 B.R. 149 (S.D. N.Y. 1992)............................................................................ 9, 10

Patterson v. Newspaper & Mail Deliverers' Union,
    384 F. Supp. 585, 591 (S.D.N.Y. 1974).................................................................... 9

Patterson v. Newspaper & Mail Deliverers' Union,
    514 F.2d 767, 773 (2nd Cir. 1975)........................................................................... 10

Penn Terra Ltd. v. Dept. of Environmental Resources,
    733 F.2d 267 (3rd Cir. 1984) ................................................................................... 10

Rivera v. Bank of America Home Loans,
    2011 U.S. Dist. LEXIS 43138 (E.D. N.Y. 2011)................................................... 2, 3

Speleos v. BAC Home Loans Servicing, L.P.,
    755 F.Supp. 2d 304 (D. Mass. 2010) ........................................................................ 3

United States v. LTV Corp., (In re Chateaugay Corp.),
    944 F.2d 997 (2nd Cir. 1991)................................................................................. 5, 14

United States v. Price,
    688 F.2d 204 (3rd Cir. 1982) ..................................................................................... 9

**Statutes**

11 U.S.C. § 101(5) .......................................................................................................... 1

12 U.S.C. § 1818............................................................................................................. 1

12 U.S.C. § 1818(b) .................................................................................................... 9, 14

12 U.S.C. § 1818(c) ...................................................................................................... 14

# TABLE OF AUTHORITIES
## (cont.)

12 U.S.C. § 1818(e) ........................................................................................ 14

12 U.S.C. § 1818(i)(1) .................................................................................... 11

12 U.S.C. § 1818(i)(2)(C) ............................................................................... 14

29 U.S.C. § 160-161 .......................................................................................... 7

**Regulations**

12 C.F.R. § 263.5 (effective Nov. 16, 2012) .................................................... 6

29 C.F.R. § 101.1-101.16 & 102.9-102.19 ....................................................... 6

**Other Authorities**

Restatement (Second) of Contracts § 313 ......................................................... 3

The Board of Governors submits this supplemental brief (the "**Supplemental Brief**") in support of its objection (the "**Objection**") [Docket No. 3149] to the February 27, 2013 Motion of Residential Capital, LLC ("**ResCap**") and its affiliated debtors in possession in the above-captioned cases, including GMAC Mortgage, LLC ("**GMACM**") [Docket No. 3055].[1]  In support hereof, the Board respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Board submits this Supplemental Brief, at the request of the Court, to address the following questions:  "[One,] [a]re any payments for restitution or reimbursement general unsecured claims?[2] … And two, would Ally Financial be liable for any shortfall in restitution or reimbursement payments if they are general unsecured claims and the pro rata share paid to unsecured creditors [is] less than the full amount?"  March 21, 2013 Hr'g Tr. (the "**Hr'g Tr.**") 98:6-12.[3]  We also address the Court's related questions of whether there is anything in the Consent Order that would "override the priorities of the Bankruptcy Code," and whether restitution under section 8 of the Federal Deposit Insurance Act, as amended (the "**FDI Act**"), 12 U.S.C. § 1818 ("**section 8**"), the statutory framework governing the Board's enforcement authority, "means payment in full even if bankruptcy law would determine that it's a general unsecured claim that's paid pro rata[.]"  Hr'g Tr. 79:15-17 and 81:17-20.

---

[1]  Undefined capitalized terms in this Supplemental Brief have the meaning set forth in the Motion and Objection.
[2]  Because the Consent Order speaks in terms of remediation and reimbursement, see Exhibit A ¶ 3(d), we hereinafter use the terminology of the Consent Order.
[3]  As the Court's questions are limited to *payments*, this Supplemental Brief does not address remediation not involving payments, such as correcting a misfiled property deed, but note that the plain language of section 101(5) of the Bankruptcy Code, 11 U.S.C. § 101(5), clearly does not contemplate injunctive obligations that do not involve a "right to payment."  We also do not address whether the Board is a "creditor" with respect to any remediation or reimbursement payments, since the Board clearly has no right to (an in fact will not) receive any such payments.

## SUPPLEMENTAL ARGUMENT

**A.    Any Remediation or Reimbursement Payments Under the Board's Injunctive Consent Order Are Not General Unsecured Claims**

2.    There is nothing in the Consent Order or section 8 of the FDI Act that could reasonably be construed to afford any third party the authority to enforce the injunctive obligations owed to the Board – in other words, any "right to payment" – under the Consent Order.  In fact, paragraph 30 of the Consent Order unambiguously precludes third parties from having any rights or claims under the Consent Order, which would include any perceived right to remediation or reimbursement payments as part of the Independent Foreclosure Review; it reads, "[n]othing in this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy, or claim under this Order."  Exhibit A ¶ 30 (Consent Order).  Simply put, borrowers who may receive remediation or reimbursement payments under the Consent Order have no "right to payment" that they may enforce.

3.    Similarly, although borrowers will no doubt benefit from GMACM's fulfillment of its obligations under the Consent Order, such borrowers do not have a "claim" here premised on their beneficiary status.  Paragraph 30 plainly negates *any* claim – even one premised on a contractual third-party beneficiary theory.  The Consent Order is not a contract,[4] but even if it were, federal common law would look to the same considerations as the Restatement of Contracts in determining whether a third party is a beneficiary who may enforce the contract.  See Rivera v. Bank of America Home Loans, 2011 U.S. Dist. LEXIS 43138, *11-*12 (E.D. N.Y.

---

[4]  The Consent Order is not the "contract" that is required to sustain a third-party beneficiary theory.  Rather, it is a regulatory enforcement action that is enforceable by the Board pursuant to statute, not as a matter of contract law.  See, e.g., In re Conner Corp., 127 B.R. 775 (E.D. N.C. 1991) (an agreement to comply with a federal banking agency's regulatory requirements does not constitute a contract that supported a "claim" based on a third-party beneficiary theory); Desouza v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 30551, *9-*11 (E.D. M.I. 2013) (neither the National Mortgage Settlement consent decree nor the independent foreclosure review request for review form constitutes a valid contract).

2011) (citing <u>Maniolos v. United States</u>, 741 F.Supp. 2d 555 (S.D.N.Y. 2010)); <u>Caires v.</u>

<u>JPMorgan Chase Bank, N.A.</u>, 880 F.Supp. 2d 288, 301-302 (D. Conn. 2012) (citing <u>Falls</u>

<u>Riverway Realty, Inc. v. City of Niagara Falls</u>, 754 F.3d 49, 55 n. 4 (2nd Cir. 1985)); <u>In re</u>

<u>Conner Corp.</u>, 127 B.R. 775, 777 (E.D. N.C. 1991).  Under the Restatement, "a [person]

claiming to be the intended third party beneficiary of a government contract must show that he

was 'intended to benefit from the contract and that third-party beneficiary claims are consistent

with the terms of the contract and the policy underlying it.'"  <u>Riviera</u>, 2011 U.S. Dist. LEXIS at

*14 (quoting <u>Speleos v. BAC Home Loans Servicing, L.P.</u>, 755 F.Supp. 2d 304 (D. Mass.

2010)).  The Restatement treats individual members of the public as incidental beneficiaries of a

government contract unless a different intention is manifested, and incidental beneficiaries

cannot enforce a contract.  <u>See id.</u> at *12-*13 (quoting Restatement (Second) of Contracts § 313

cmt. a.).  Even where there is manifested an intent to benefit, negating language such as that in

paragraph 30 precludes third party beneficiaries from enforcing a government contract.  <u>See</u> e.g.,

<u>Fellows v. CitiMortgage, Inc.</u>, 710 F.Supp. 2d 385, 406 (S.D. N.Y. 2011); <u>Rivera</u>, 2011 U.S.

Dist. LEXIS at *12.

     4.     Borrowers who may receive remediation or reimbursement payments under the

Consent Order are at best incidental beneficiaries, since no intent to treat them as anything more

was manifested by the parties to the Consent Order.  Rather, the parties unambiguously

evidenced their intent to <u>not</u> give to any third party any benefit under the Consent Order.

Paragraph 30 precludes any third party, even if an intended beneficiary, from enforcing the

Consent Order.

     5.     In sum, borrowers who may benefit from GMACM's injunctive obligations to the

Board – obligations that may result in remediation or reimbursement payments – are no

- 3 -

differently situated than any other third party; they cannot enforce the obligations to the Board

and consequently have no "right to payment."[5]  Such borrowers are not "creditors" with "claims"

against GMACM or ResCap simply because they may receive payments under the Consent

Order, and neither ResCap nor GMACM owes those borrowers any corresponding "debt" simply

because GMACM may make payments to them.  The requisite symmetry is wholly lacking, and

since there is no "claim," there can be no "general unsecured claim."

      6.      Two additional considerations further belie the notion that we are dealing here

with "claims" for purposes of section 101(5).  First, to our knowledge, not even one of the more

than 230,000 borrowers covered by the Independent Foreclosure Review requirements is listed

as a "creditor" of GMACM or ResCap or has filed a claim in these proceedings related to the

Independent Foreclosure Review or any associated remediation or reimbursement payments.[6]

These borrowers did not receive notice of these proceedings and to now hold that those of them

who ultimately receive remediation or reimbursement payments have "claims" that are

dischargeable in these proceedings offends fundamental notions of procedural due process.  See,

e.g., Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus.), 467 B.R. at 704-705

(S.D.N.Y. 2012) ("The notice requirements of bankruptcy law are founded in fundamental

notions of procedural due process. … At its core, the concern is whether a claimant can be

force[d] … to be bound by proceedings in which he did not and could not participate.") (internal

citations and quotation marks omitted).  Second, those borrowers the independent consultants

ultimately determine were financially injured by GMACM at best have future claims against

---

[5]  Likewise, borrowers have no equitable right to performance here, the breach of which would give rise to a right of payment.
[6]  Although Mr. Reed filed a proof of claim, we are unable to discern whether that claim in any way relates to the Independent Foreclosure Review or any payments he believes he may receive thereunder.  Assuming Mr. Reed's claim is germane, there are still over 230,000 borrowers who seemingly have no idea that their "claims" are a subject of these proceedings, let alone may be deemed general unsecured claims.

- 4 -

GMACM, since they generally have not yet been identified and may have no idea they were

harmed until they receive the results of the review.  "Generally, courts have held that future

claims cannot be considered 'claims' that are dealt with and discharged by a confirmation plan."

In re Grumman Olson Indus., 467 B.R. at 704-705 ("[E]ven the broad definition of 'claim'

cannot be extended to include … claimants whom the record indicates were completely unknown

and unidentified at the time [the debtor] filed its petition and whose rights depend entirely on the

fortuity of future occurrences.") (quoting Lemelle v. Universal MFG Corp., 18. F.3d 1268, 1277

(5th Cir. 1994)) (internal quotation marks omitted).  Treating the future claims of borrowers as

"claims" in these proceedings, much like failing to afford such borrowers adequate notice, raises

enormous practical and perhaps constitutional problems.  See, e.g., United States v. LTV Corp.,

(In re Chateaugay Corp.), 944 F.2d 997, 1003 (2nd Cir. 1991) (observing the "enormous practical

and perhaps constitutional problems [that] would arise" from treating future claims like "claims"

in a bankruptcy); In re Grumman Olson Indus., 467 B.R. 697 at 705 (same).

**B.    The Precedent Cited By the Unsecured Creditors Committee Does Not
Support A Conclusion That There Is A "Claim"**

7.    The Court should not place any reliance on the precedent cited by the Unsecured

Creditors Committee (the "**Committee**"), see Committee's Reply ¶¶ 19-22 [Docket No. 3245],

to support a conclusion that any remediation or reimbursement payments under the Consent

Order are "claims."  A brief recitation of the facts of one of those cases, NLRB v. Walsh (In re

Palau Corp.), 18 F.3d 746, 747 (9th Cir. 1994), shows just how far off the mark this precedent is.

8.    Palau involved an employee's charges of unfair labor practices by his employer.

The initial sequence of events was as follows:  the employee was fired by the employer, the

employee filed charges with the National Labor Relations Board (the "**NLRB**"), the employer

filed for bankruptcy, and the NLRB issued a complaint based on the employee's charges.  In re

- 5 -

<u>Palau Corp.</u>, 18 F.3d at 747.  During the pendency of the bankruptcy proceeding, the NLRB, in a separate administrative proceeding, concluded that the debtor violated the National Labor Relations Act (the "**NLRA**") and directed the debtor to offer the employee reemployment, which it failed to do.  <u>Id.</u> at 748.

9.    The NLRB subsequently filed a proof of claim with the bankruptcy court demanding both pre- and post-petition back wages for the former employee.  <u>Id.</u>  The NLRB argued that the entire claim was entitled to first priority as an administrative because the claim was the result of an unfair labor practice.  <u>Id.</u>  On appeal, the Ninth Circuit framed the issue as "whether an unlawfully discharged employee's claim for backpay is entitled to administrative priority when his claim accrued after the former employer filed a petition in bankruptcy."  <u>Id.</u> at 747.  Notably, the issue was *not* whether there was a "claim," <u>see id.</u> at 750, as neither the NLRB nor the employee contested claim status.  In rejecting the NLRB's position, the court concluded that "while the [NLRA] is dispositive with respect to the question of whether [the employee] had a valid claim for compensation as the result of [the debtor's] unlawful discharge, the Bankruptcy Code controls [the] determination of that claim's priority."  <u>Id.</u> at 750.  As the claim did not meet the criteria for administrative priority, it was entitled to be treated only as a general unsecured claim.  <u>Id.</u> at 751.

10.    Any suggestion that <u>Palau</u> supports a conclusion that any remediation or reimbursement payments to borrowers under the Board's injunctive Consent Order are somehow "claims" is entirely misplaced.  The NLRA empowers employees to file charges of unfair labor practices by their employers with the NLRB, and empowers the NLRB in turn to investigate those charges and adjudicate alleged violations of the NLRA.  <u>See</u> 29 U.S.C. §§ 160-161; 29 C.F.R. §§ 101.1-101.16 & 102.9-102.19.  In <u>Palau</u>, the NLRB, consistent with the powers

- 6 -

conferred on it by the NLRA, was pursuing *the employee's* claims of unfair labor practices –
both in its own proceeding and in the separate bankruptcy proceeding – as evidenced by the
proof of claim filed by the agency and as recognized by the Ninth Circuit.

11.    Unlike the NLRA, section 8 of the FDI Act plainly does not authorize the Board
to receive, investigate, and adjudicate individual borrower claims.  And, unlike the NLRB in
Palau, the Board has never professed to be (and in fact is not) pursuing claims on behalf of
borrowers or adjudicating servicers' liability on such claims – not in the proceedings that led to
the issuance of the consent orders, not in enforcing the terms of those consent orders,[7] and not in
these separate bankruptcy proceedings.[8]  Rather, we sought to determine the extent to which any
given borrower may have been financially injured by servicer misconduct during the foreclosure
process, regardless of whether such misconduct would or could give rise to a claim under some
other legal framework.  The Board recognized that any remediation or reimbursement payments
under the consent orders would be separate from any legal "right to payment" borrowers may
separately have because of servicer misconduct, and we wanted to ensure that borrowers would
be free to separately pursue those rights without being barred by Board's injunctive consent
orders.  In furtherance of that policy, we publicly prohibited servicers required to conduct
independent foreclosure reviews, including GMACM, from asking borrowers to release any
claims those borrowers may have against their servicers in order to receive remediation
payments.  See Exhibit B at 10 (Remediation Framework Frequently Asked Questions)[9]
("Servicers may not ask a borrower voluntarily to release any claims in order to receive

---

[7]  Even with regard to the approximately 10 percent of total in-scope borrowers who filed requests to have their
foreclosure files reviewed by independent consultants, the Board has never professed to be pursuing claims on
behalf of borrowers or adjudicating servicer liability.

[8]  The Board, unlike the NLRB, also filed no proof of claim here.

[9]  At the same time, we acknowledged that, should borrowers choose to pursue their claims in court or otherwise, the
servicers should not be precluded from asserting any rights they may have under applicable law in those separate
proceedings to offset amounts paid under our consent orders.  See id.

remediation payments."). This prohibition applies to all GMACM borrowers covered by the

Independent Foreclosure Review requirements of the Consent Order, including those who

submitted requests to have their foreclosures reviewed.

12.    The fact that borrowers may separately have claims against GMACM does not

mean that the restitution or remediation payments those borrowers may receive pursuant to the

Board's Consent Order – payments that are wholly disconnected from those separate claims for

the reasons above – are "claims" for bankruptcy purposes. To hold otherwise unnecessarily

conflates and confuses future claims borrowers may (or may not) have against GMACM with

regulatory requirements imposed on GMACM by the Board.

13.    The other cases relied on by the Committee, see Committee's Reply ¶¶ 19-22

[Docket No. 3245], are equally distinguishable and fail to support the notion that any

remediation or reimbursement payments here are general unsecured claims for at least two

reasons: (1) as in Palau, the issue before the court was only priority status, not whether (as here)

there even was a "claim;" or (2) the case involved an environmental injunction, not the kind of

remedial payments that may be made under the Consent Order and, to the extent such injunctions

are germane (and for reasons discussed below), the court's holding arguably *supports* the

Board's position.

### C.    Any Remediation or Reimbursement Payments to Borrowers Cannot Permissibly Disconnected from GMACM's Other Remedial Obligations

14.    The Consent Order, as a whole, is clearly ameliorative in nature; it requires

GMACM to take prospective action to ameliorate the continuing effects of its unsafe and

unsound practices and violations of law.[10] Those effects continue unabated until ameliorated as

---

[10] Section 8(b) of the FDI Act, under which the order was issued, authorizes the Board to order a banking organization to "take *affirmative action to* correct the conditions resulting from any [violation of law or unsafe or unsound practice[.]" 12 U.S.C. § 1818(b) (emphasis added). Likewise, the clause in the Consent Order ordering

required by the Consent Order, which may involve remediation or reimbursement payments to borrowers.  Disconnecting those injunctive remedial payments from GMACM's other remedial obligations under the Consent Order, however, is not consistent with controlling precedent, in the context of environmental injunctions, see e.g., Mark IV Indus. v. N.M. Envtl. Dep't (In re Mark IV Indus.), 428 B.R. 460, 468 (Bankr. S.D.N.Y. 2010), and, perhaps more importantly, in contexts more akin to the present, see Patterson v. Newspaper & Mail Deliverers' Union, 138 B.R. 149, 154 (S.D. N.Y. 1992) ("It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by the injunction.  Inunctions, which by their terms compel expenditures of money, may similarly be permissible forms of equitable relief.") (quoting United States v. Price, 688 F.2d 204 (3rd Cir. 1982) (internal quotation marks omitted)).

15.    The facts here are strikingly similar to those in Patterson, which dictates a conclusion that any remediation or reimbursement payments under the Consent Order *cannot* permissibly be disconnected from GMACM's other remedial obligations.  In Patterson, the federal government entered a consent decree with various news publishers and distributors for the express purpose of remedying and prospectively preventing race discrimination in the newspaper industry.  Patterson, 138 B.R. at 152.  Compliance with that consent decree required the pre-petition debtor to implement an affirmative action program and to pay periodic assessments into a fund from which the expenses of monitoring compliance with the consent decree and adjudicating allegations of race discrimination were paid.  Id. at 150-151.  Funds were also used to provide backpay awards to minorities who would have received such pay but for the discrimination,  Patterson v. Newspaper & Mail Deliverers' Union, 384 F. Supp. 585, 591 (S.D.N.Y. 1974) – backpay awards that the Second Circuit characterized as "affirmative relief

GMACM to conduct the Independent Foreclosure Review and remediate injured borrowers provides in relevant part that GMACM shall "take *affirmative action* … as follows[.]"  See Exhibit A at 6 (emphasis added).

afforded to the minority groups," Patterson v. Newspaper & Mail Deliverers' Union, 514 F.2d 767, 773 (2nd Cir. 1975).

16.     The debtor filed a petition in bankruptcy and asked the court to relieve it of its obligations to pay into the fund and, further, to preclude the government from enforcing the consent decree – both premised on the debtor's belief that these "claims" were automatically stayed.  The court refused.  Relying on Ohio v. Kovacs, 469 U.S. 274 (1985) and Penn Terra Ltd. v. Dept. of Environmental Resources, 733 F.2d 267 (3rd Cir. 1984), the court concluded that applicability of the automatic stay hinged on whether the government action was endeavoring to bring the debtor into compliance with its injunction by "dispossessing" the debtor of its assets or by seeking compliance via a money judgment (i.e., whether the government was in substance seeking to enforce a money judgment), *not* whether the debtor simply had to expend money to comply with the government's injunction.  Patterson, 138 B.R. at 153-154.  Since the fund was aimed at aiding the consent decree's overall purpose of remedying and prospectively preventing race discrimination in the industry, government action to collect amounts owed to the fund by the debtor was not action to enforce a money judgment and therefore was not stayed.  Id.

17.     GMACM and ResCap have asked this Court to make the same determinations the court was asked to make in Patterson.  Affording them the requested relief – even if only to the extent that this Court concludes that any remediation or reimbursement payments are general unsecured claims – is inconsistent with the court's holding in Patterson.  Although it may be necessary for GMACM to make remedial payments to comply with the Consent Order, those payments aid the Consent Order's overall ameliorative purpose and cannot be disconnected from GMACM's other remedial obligations under the Consent Order.  The Board is *not* endeavoring

to bring GMACM into compliance with its injunction by levying penalties or otherwise

dispossessing GMACM of its assets.

> **D.      Concluding that Any Remediation or Reimbursement Payments Are
> "Claims" Would Contravene Section 8(i)(1)**

18.      Section 8(i)(1) of the FDI Act provides in relevant part that "no court shall have

jurisdiction to affect … [the] enforcement of any … order under [section 8], or to review,

modify, suspend, terminate, or set aside any such … order." 12 U.S.C. § 1818(i)(1).  We believe

it is important to advise the Court of the consequences of under section 8(i)(1) of a determination

that any remediation or reimbursement payments that GMACM may make to borrowers under

our Consent Order constitute "claims."

19.      Several events must occur before GMACM makes any remediation or

reimbursement payments to borrowers.  First, the independent consultants must be retained to

conduct the Independent Foreclosure Review.  <u>See</u> Exhibit A ¶ 3(a), 4 (Consent Order).  Second,

the independent consultants must prepare a written report detailing the findings of the review

(<u>i.e.</u>, which borrowers GMACM financially injured).  <u>See</u> Exhibit A ¶ 3(b).  Second, within 45

days of receiving that report, GMACM must submit to the Federal Reserve an *acceptable* plan,

among other things, to "(i) remediate, as appropriate, errors, misrepresentations, or other

deficiencies in any foreclosure filing or other proceeding; [and] (ii) reimburse or otherwise

provide appropriate remediation to the borrower for any impermissible or otherwise

unreasonable penalties, fees or expenses, or for other financial injury identified in paragraph 3 of

th[e] [Consent] Order[.]"  <u>See</u> Exhibit A ¶ 3(c).  Third, to the extent that GMACM's plan

provides for remediation or reimbursement payments, GMACM must make those payments *in

full* within 60 days from when the Federal Reserve "accepts" the plan.  <u>See</u> Exhibit A ¶ 3(d).

20.     A determination by this Court that any remediation or reimbursement payments GMACM may make are general unsecured claims likely would preclude GMACM from actually making remediation and reimbursement payments *in full* and, further, most likely would not permit GMACM to make *any* such payments within the within the timeframe specified in paragraph 3(d) of the Consent Order.  The Federal Reserve will not accept a plan submitted by GMACM pursuant to paragraph 3(c) that is not fully compliant with the Consent Order, including the requirement that GMACM make any reimbursement and remediation payments *in full* within the specified timeframe.  Accordingly a determination by this Court that any remediation or reimbursement payments GMACM may make are general unsecured claims would likely preclude GMACM from submitting to the Federal Reserve an acceptable plan as required by the Consent Order and, further, from fully complying with any such plan by making all payments within the timeframes specified in the Consent Order.  Such a determination would clearly affect the Board's enforcement of the Consent Order and suspend or modify the requirements of paragraphs 3(c) and 3(d), and would therefore contravene section 8(i)(1).

21.     A determination by this Court that any remediation or reimbursement payments to borrowers under the Consent Order are general unsecured claims would also interfere with our enforcement of the Consent Order and modify its terms by affording third parties rights under the Consent Order that they unambiguously are not now afforded (i.e., a "right to payment" and therefore a "claim" under our Consent Order),[11] and by precluding those same third parties from separately pursuing any "claims" they may have against GMACM, notwithstanding the explicit prohibition to the contrary imposed on GMACM by the Board.

22.     In sum, and to answer the Court's final two questions, a conclusion by this Court that any remediation or reimbursement payments required under our Consent Order are borrower

---

[11]  We note that such a holding would also be inconsistent with this Court's prior rulings in these proceedings.

"claims" and that those claims are general and unsecured would not only affect our ability to

implement and enforce our Consent Order but also effectively modify and suspend certain

Consent Order requirements.  Such action is forbidden by section 8(i)(1).  Under the Consent

Order, restitution means payment in full, even if bankruptcy law otherwise would treat the

restitution as a general unsecured claim to be paid pro rata, and while neither section 8 nor the

Consent Order specifically provides for the "overriding" of the Bankruptcy Code's priorities,

section 8(i)(1), for the reasons above, precludes this Court from determining that any

remediation or reimbursement payments under the Consent Order are general unsecured

claims.[12]

### E.    Even if GMACM's Injunctive Obligations are "Claims," They Are Not General Unsecured Claims and Should Be Afforded Administrative Priority

23.    The precedent cited by ResCap and GMACM in the Motion, see Motion at ¶¶ 40-

43, and by the Committee in its reply, see Committee's Reply at ¶¶ 20-22, involving

environmental injunctions stands broadly for the proposition that a debtor may not abandon

property in contravention of applicable law, and that the costs associated with compliance are

actual, necessary costs of preserving the estate and therefore may be afforded administrative

priority.  See, e.g., In re Chateaugay, 944 F.2d at 1009-10.  After all, "[a] 'fresh start' means only

that; it does not mean a continuing license to violate the law."  O'Loghlin v. County of Orange.,

229 F.3d 871, 875 (9th Cir. 2000) (debtor's post-petition violations can give rise to claims or

damages not encompassed in debtor's discharge); accord, In re Lear Corp., 2012 Bankr. LEXIS

---

[12]  In this regard, we are not asserting that section 8 or the Consent Order necessarily conflicts with or nullifies this Court's jurisdiction.  Rather, as the court aptly observed in FirstCorp, Inc. v. OTS (In re FirstCorp, Inc.), "[A]lthough [28 U.S.C.] § 1334(d) grants the [court] exclusive jurisdiction over the property of the bankruptcy estate, [section 8(i)(1)] withdraws that jurisdiction to the extent a party attempts 'to affect' a banking regulatory authority's enforcement of any notice or order [which section 8] grants it the authority to issue."  In re FirstCorp, Inc., 129 B.R. 450, 452 (E.D. N.C. 1991), aff'd, Carlton v. Firstcorp, Inc., 967 F.3d 942 (4th Cir. 1992).

440, *34-*35 (Bankr. S.D. N.Y. 2012).  However, this is precisely what ResCap and GMACM

are asking this Court to grant them:  a license to violate the law.

24.    If GMACM fails to fully perform any of its obligations to the Board under the

Consent Order, including but not limited any one or more of the obligations specified in

paragraph 19 above, GMACM is in violation of the Consent Order.  Plain and simple.  For the

reasons discussed above, a determination by this Court that any remediation or reimbursement

payments to borrowers under the Consent Order are general unsecured claims would most likely

preclude GMACM from complying with the Consent Order – or, in other words, license it to

violate the law.[13]  As such, the costs of fulfilling its obligations under the Consent Order,

including each of the obligations specified in paragraph 19 above, are actual, necessary costs and

expenses of preserving the estate and are therefore permissible administrative expenses.[14]

25.    Contrary to the Committee's assertions, a conclusion that any remediation or

reimbursement payments under the Consent Order are "claims" *would not* "require [the Court] to

ignore the very purpose of bankruptcy – i.e., allowing debtors to start fresh while fairly

apportioning losses among the creditors – in favor of one particular class of creditors[,]"

Committee Reply at ¶ 22 (quoting In re Palau, 18 F.3d at 751).  Applying this "fresh start"

reasoning here – in connection with a valid exercise of the government's police or regulatory

powers – sweeps too wide an arc and *would* both diminish the validity of the Consent Order and

---

[13]  Treatment of any such payments as administrative priorities, however, may not necessarily preclude GMACM from submitting an acceptable plan that provides for payment in compliance with the Consent Order.
[14]  Moreover, the consequences of non-compliance with the Consent Order are severe and could include civil money penalties of up to $1.425 million per day for each day ResCap or GMACM knowingly violates the Consent Order, see 12 U.S.C. § 1818(i)(2)(C) and 12 C.F.R. § 263.5 (effective Nov. 16, 2012), a separate cease and desist proceeding, see 12 U.S.C. § 1818(b), (c), and removal, prohibition, or suspension of ResCap and GMACM officers and directors, see 12 U.S.C. § 1818(e), many of whom continue to provide valuable services to the estate, see, generally, Debtors' Employee Retention Motion [Docket No. 3280].  It is therefore factually inaccurate to state, as ResCap and GMACM did in their reply to our Objection, see Debtors' Reply ¶ 23 [Docket No. 3242], that "no scenario exists under which the Debtors' estates would benefit from continuing to pay administrative dollars" to fulfill GMACM's Independent Foreclosure Review-related obligations under the Consent Order.  The estates benefit tremendously from compliance with the Board's validly issued and legally enforceable Consent Order

frustrate the Board's exercise of its police powers; it would also require this Court to assert a power it simply does not possess: the power to authorize noncompliance with the Consent Order. See, e.g., In re Grand Spaulding Dodge, Inc., 5 B.R. 481 (N.D. Ill. 1980) (bankruptcy court impermissibly arrogated to itself authority to effectively enjoin a consent decree relating to violations of the state consumer fraud and deceptive practices act).

### F.    AFI's Liability

26.    Under the Board's Supplemental Agreement with AFI, AFI is—

> Secondarily liable for the obligations to timely pay any portions of: (a) the fee that ResCap [defined to include GMACM] owes PricewaterhouseCoopers (or any successor consultant) to complete the foreclosure review … and (b) the monetary reimbursement or remediation payments under a remediation plan approved by the Federal Reserve …
> Exhibit C ¶ 1 (Supplemental Agreement).

27.    This secondary liability is limited only to *payments* (i.e., it does not extend to conducting the Independent Foreclosure Review), and it is triggered only in the event and to the extent that ResCap does not timely pay any of the two enumerated obligations.[15]  Under the Supplemental Agreement, within 90 days of ResCap's failure to pay an enumerated obligation, AFI must itself pay.  Accordingly, if GMACM pays anything other than the full monetary remediation or reimbursement payments as described in paragraphs 19 and 20 above, AFI would be secondarily liable for the shortfall and would need to pay the remainder within 90 days of GMACM's incomplete payment.[16]

### CONCLUSION

For these reasons and for the reasons discussed in our Objection, the Board of Governors respectfully requests that the Court deny the Motion.

---

[15]  A ResCap bankruptcy is also a pre-condition to AFI becoming secondarily liable.
[16]  Failure by GMACM to pay anything other than full remediation within the timeframe specified in the Consent Order would also constitute a violation of the Consent Order by GMACM.

Washington, D.C.
Dated:  April 5, 2013

<u>/s/ Jennifer L. Sutton</u>
Richard M. Ashton
Jennifer L. Sutton
Board of Governors
    of the Federal Reserve System
Telephone: (202) 452-3750
Facsimile: (202) 736-5615
*Counsel to Board of Governors*