**EXHIBIT C**

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

Supplemental Agreement by and between

ALLY FINANCIAL INC.
Detroit, Michigan

and

FEDERAL RESERVE BANK
  OF CHICAGO
Chicago, Illinois

Docket No.  12-030-WA/RB-HC

WHEREAS, on April 13, 2011, the Board of Governors of the Federal Reserve System
("Board of Governors") and the Federal Deposit Insurance Corporation, on the one hand, and
Ally Financial Inc. ("Ally"), a registered bank holding company, its direct and indirect nonbank
subsidiaries, Residential Capital, LLC and GMAC Mortgage, LLC ("GMAC Mortgage"), and
Ally Bank, on the other hand, entered into a Consent Order under section 8 of the Federal
Deposit Insurance Act ("FDI Act") (12 U.S.C. § 1818) related to servicing of residential
mortgage loans (the "Consent Order");

WHEREAS, paragraphs 3 and 4 of the Consent Order require GMAC Mortgage to
conduct an independent review of certain residential mortgage foreclosure actions and provide
monetary reimbursement or remediation as appropriate;

WHEREAS, the Board of Directors of Residential Capital, LLC, GMAC Mortgage, or
some or all of their direct and indirect subsidiaries (individually or collectively "ResCap") may
choose to commence cases (or ResCap may otherwise become subject to protection) under the
U.S. Bankruptcy Code ("Code");

WHEREAS, it is the common goal of Ally and the Federal Reserve to ensure ResCap's completion of the foreclosure review and the payment of any monetary reimbursement and remediation if not performed by GMAC Mortgage as required by the Consent Order, and by entering into this Supplemental Agreement ("Agreement") with Ally, the Federal Reserve in no way releases, reduces or alleviates GMAC Mortgage of its obligations under the Consent Order and considers GMAC Mortgage to be primarily liabile for such obligations;

WHEREAS, the Reserve Bank and Ally have mutually agreed to enter into this Agreement in conjunction with the Consent Order; and

WHEREAS, pursuant to delegated authority, William B. Solomon, Jr., General Counsel and Group Vice President, is authorized to execute this Agreement on behalf of Ally and to consent to compliance with each and every provision of this Agreement by Ally and its institution-affiliated parties as defined in sections 3(u) and 8(b)(3) of the FDI Act (12 U.S.C. §§ 1813(u) and 1818(b)(3)).

NOW, THEREFORE, Ally and the Reserve Bank agree as follows:

**ResCap Obligations**

1.    If ResCap commences cases or is otherwise subject to protection under the Code, Ally will be secondarily liable for the obligations to timely pay any portions of:

(a) the fee that ResCap owes PricewaterhouseCoopers (or any successor consultant) to complete the foreclosure review required under paragraph 3(a) of the Consent Order, and

(b) the monetary reimbursement or remediation payments under a remediation plan approved by the Federal Reserve under paragraphs 3(c) and 3(d) of the Consent Order (clauses (a) and (b) of this paragraph 1 collectively being the "ResCap Obligations"),

2

in the event and to the extent ResCap, or any successor in interest or other acquirer of ResCap's

assets or the ResCap Obligations, does not timely pay any ResCap Obligation. Before any

obligation of Ally would arise regarding the ResCap Obligations, Ally may use its reasonable

best efforts to ensure that an order from the Bankruptcy Court is entered to treat any obligation

of Ally in respect of the obligations of ResCap under the Consent Order as administrative or

priority payments of ResCap's estates. In no event shall Ally's obligation to pay on such

secondary liability be delayed more than (a) 120 days from the date of ResCap's filing for or

otherwise becoming subject to protection under the Code or (b) 90 days after ResCap has failed

to perform or pay any ResCap Obligations, whichever is later.

2.      Neither the existence of this Agreement nor any payments that Ally makes in

respect of the ResCap Obligations will prejudice Ally's right to seek reimbursement of those

payments or any of Ally's rights against ResCap under the Code or otherwise.

3.      For the avoidance of doubt, Ally's obligations under this Agreement regarding

provisions of paragraph 1 shall arise and become effective only if, and then only after, ResCap

becomes subject to protection under the Code and then as set forth in paragraph 1; provided, that

nothing in this paragraph 3 affects the authority of the Board of Governors to enforce the

provisions of the Consent Order against Ally, ResCap, or any successor in interest of Ally or

ResCap.

**Successor in Interest**

4.      In order to ensure compliance with the requirement in paragraph 25 of the

Consent Order that its provisions shall be binding on the successors and assigns of Ally and

ResCap, in the event of a transformative transaction involving ResCap, including, without

limitation, a change of control transaction, a sale of all or substantially all of ResCap's assets (or

3

assets that are material to the performance of the obligations of ResCap under paragraphs 3 and 4 of the Consent Order) or a reorganization or similar transaction (including in connection with any legal or regulatory proceeding) (a "Transformative Transaction"), Ally will use all reasonable best efforts to cause ResCap to ensure the continued performance of its obligations under paragraphs 3 and 4 of the Consent Order, including requiring any successor or purchaser of substantially all of the assets (or assets that together are material to the performance of the obligations of ResCap under paragraphs 3 and 4 of the Consent Order) of ResCap to honor and perform the obligations (in the case of a purchase or other acquisition of assets, to honor and perform the obligations with respect to those assets) under paragraphs 3 and 4 of the Consent Order.

5.    In addition, ResCap has agreed with Ally that ResCap will not enter into a Transformative Transaction without the consent of Ally; and Ally will not consent to any such Transformative Transaction (or provide financial support in connection with any such Transaction) unless ResCap (including any successor to or purchaser of substantially all the assets from ResCap) agrees to ensure the continued performance of the obligations under paragraphs 3 and 4 of the Consent Order, including without limitation completion of the independent review of foreclosure actions (in the case of a purchase or other acquisition of assets, to honor and perform the obligations with respect to those assets).

**Notices**

6.    All communications regarding this Order shall be sent to:

(a)    Mr. James W. Nelson
Senior Vice President
Supervision and Regulation Department
Federal Reserve Bank of Chicago
230 South LaSalle Street
Chicago, Illinois  60604-1413

4

    (b)    Ms. Barbara Yastine
Chief Administrative Officer
Ally Financial Inc.
1177 Avenue of the Americas
New York, NY 10036

with copies to:

Mr. Daniel Soto
Chief Compliance Officer
Ally Financial Inc.
440 South Church Street
Charlotte, NC 28202

William B. Solomon, Jr., Esq.
General Counsel
Ally Financial Inc.
200 Renaissance Center
9th Floor
Detroit, MI 48265

Mark H. Weintraub
Executive Vice President – Mortgage Servicing Remediation Oversight
Ally Financial Inc.
440 South Church Street
Charlotte, NC 28202

**Miscellaneous**

7.    The provisions of this Agreement shall be binding on Ally and each of its

institution-affiliated parties, in their capacities as such, and their successors and assigns.

8.    Each provision of this Agreement shall remain effective and enforceable until

stayed, modified, terminated, or suspended in writing by the Reserve Bank.

9.    Notwithstanding any provision of this Agreement, the Reserve Bank may, in its

sole discretion, grant written extensions of time to Ally to comply with any provision of this

Agreement.

10.    The provisions of this Agreement shall not bar, estop, or otherwise prevent the

Board of Governors, the Reserve Bank, or any other federal or state agency from taking any

5

other action affecting Ally, Residential Capital, LLC, GMAC Mortgage, or any of their current
or former institution-affiliated parties and their successors and assigns.

      11.     Pursuant to section 50 of the FDI Act (12 U.S.C. §§ 1831aa), this Agreement is
enforceable by the Board of Governors under section 8 of the FDI Act (12 U.S.C. §§ 1818).

      IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of
this 26 day of April, 2012.

ALLY FINANCIAL INC.

By: 
      William B. Solomon, Jr.
      General Counsel
      Group Vice President

FEDERAL RESERVE BANK
  OF CHICAGO

By: 
      James W. Nelson
      Senior Vice President

6