**Hearing Date: April 11, 2013 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MORRISON & FOERSTER LLP'S REPLY TO OMNIBUS OBJECTION OF
THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS
FOR SECOND INTERIM AWARDS OF COMPENSATION AND
<u>REIMBURSEMENT OF OUT-OF-POCKET EXPENSES</u>**

ny-1084622

## **TABLE OF CONTENTS**

                                                                                                       **Page(s)**

BURDEN OF PROOF ...................................................................................................................1

BACKGROUND .............................................................................................................................2

GENERAL RESPONSES ................................................................................................................3

SPECIFIC RESPONSES .................................................................................................................5

    A.      KEIP/KERP ................................................................................................................5

    B.      LUMPING ...................................................................................................................8

    C.      VAGUE TIME ENTRIES ...........................................................................................9

    D.      MULTIPLE ATTENDEES AT HEARINGS ...........................................................10

CONCLUSION..............................................................................................................................12

**EXHIBITS**

Exhibit 1 – Excerpt of Hearing Transcript, In re Ambac Financial Group, Inc.,
        Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012)…………………………..4

Exhibit 2 – Excerpt of Hearing Transcript, In re Borders Group, Inc.,
        Case No. 11-10614 (MG) (Bankr. S.D.N.Y. April 14, 2011)…………………………7

Exhibit 3 – In re New Century TRS Holdings, Inc.,
        Case No. 07-10416 (KJC) (Bank D. Del. May 29, 2007), *Order Authorizing Payment Of (I) Sale-Related Incentive Pay To Senior Management And (II) Retention And Incentive Pay To Certain Employees Pursuant To Sections 105(A), 363(B) And 503(C)(3) Of The Bankruptcy Code* [Docket No. 896]…………8

Exhibit 4 – Excerpt of Hearing Transcript, In re Diamond Glass, Inc.,
        Case No. 08-10601 (CSS) (Bankr. D. Del. May 8, 2008)……………….……..….…8

Exhibit 5 – Highlighted KEIP Time Detail……………………..…………….……………....5,6

Exhibit 6 – Revised Time Detail………. ………………………………………….………..9,10

Exhibit 7 – Chart Summarizing Hearing Attendance and Participation…………………….…12

## TABLE OF AUTHORITIES

**Cases**        **Page(s)**

Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship,
    369 B.R. 111 (S.D.N.Y. 2007)..................................................................................................1

In re Blackwood Assocs., L.P.,
    165 B.R. 108 (Bankr. E.D.N.Y. 1994)......................................................................................5

In re Borders Group, Inc.,
    Case No. 11-10614 (MG) (Bankr. S.D.N.Y.) ...........................................................................7

In re Diamond Glass, Inc.,
    Case No. 08-10601 (CSS) (Bankr. D. Del.) .............................................................................8

In re Hunt's Health Care,
    161 B.R. 971, 981 (Bankr. N.D. Ind. 1993)..............................................................................1

In re Keene Corp.,
    205 B.R. 695 (Bankr. S.D.N.Y. 1997).....................................................................................1

In re Kohl,
    421 B.R. 115 (Bankr. S.D.N.Y. 2009).....................................................................................6

In re New Century TRS Holdings, Inc.,
    No. 07-10416 (KJC) (Bank D. Del.).........................................................................................8

**OTHER AUTHORITIES**

In re Borders Group, Inc.,
    Case No. 11-10614 (MG) (Bankr. S.D.N.Y. April 27, 2011), *Memorandum
    Opinion Granting the Debtors' Motion for Authorization to
    Implement an Employee Incentive Program and Employ Retention Program*………………7

In re New Century TRS Holdings, Inc.,
    Case No. 07-10416 (KJC) (Bank D. Del. May 29, 2007), *Order Authorizing
    Payment Of (I) Sale-Related Incentive Pay To Senior Management And
    (II) Retention And Incentive Pay To Certain Employees Pursuant To Sections
    105(a), 363(b) And 503(c)(3) Of The Bankruptcy Code* …………………………………..…8

Transcript of Hearing, In re Ambac Financial Group, Inc.,
    Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012) ..................................................4

Transcript of Hearing, In re Borders Group, Inc.,
    Case No. 11-10614 (MG) (Bankr. S.D.N.Y. April 14, 2011).....................................................7

ny-1084622

Transcript of Hearing, In re Diamond Glass, Inc.,
    Case No. 08-10601 (CSS) (Bankr. D. Del. May 8, 2008) ........................................................8

ny-1084622

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Morrison & Foerster LLP ("M&F" or the "Firm"), bankruptcy counsel to the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), submits this reply (the "Reply") to the *Omnibus Objection Of The United States Trustee* (the "Trustee") *Regarding Fee Applications For Second Interim Awards Of Compensation And Reimbursement Of Out-Of-Pocket Expenses* [Docket No. 3310] (the "Objection").[1]  In further support of the *Second Interim Application Of Morrison & Foerster LLP As Bankruptcy Counsel For The Debtors For Compensation And Reimbursement Of Expenses Incurred For The Period September 1, 2012 Through December 31, 2012* [Docket No. 3200] (the "Application"), M&F states as follows:

**BURDEN OF PROOF**

1.  The applicant bears the initial burden of proof on its claim for compensation.  See, e.g., Houlihan Lokey Howard & Zukin Capital v. High River Ltd. P'Ship, 369 B.R. 111, 115 (S.D.N.Y. 2007) (citing In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997).  However, "[o]bjectors have the responsibility to challenge this information and to produce evidence controverting that produced by the applicant.  In re Hunt's Health Care, 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993).  M&F submits that, except as otherwise noted herein, the Application is sufficient to establish the reasonableness of its requested compensation and expenses.  Set forth below are additional disclosures and information that rebut or respond to each of the points raised in the Trustee's Objection.

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Objection or the Application, as applicable.

ny-1084622

**BACKGROUND**

2.     M&F understands, and takes seriously, its obligation to provide complete and accurate time records sufficient to enable the Court to ascertain the reasonableness of the fees being requested, and spends a great deal of (unbilled) time ensuring that time entries are both succinct and adequately descriptive in order to facilitate the Court's review.  However, M&F believes that, with respect to certain categories of fee objections, the Trustee has engaged in an overly formulaic application of the compensation guidelines, thereby placing form over function. Indeed, M&F submits that, in large part, the reasonableness of the fees incurred by M&F during the Fee Period in its capacity as lead bankruptcy counsel to the Debtors speaks for itself, both when viewed in the context of the achievements in the Debtors' cases to date, and when compared to the fees generated to date by the professionals retained by other constituencies in these cases.

3.     As the Court is well-aware, the Debtors' bankruptcy cases are unquestionably complex, involving 51 separate Debtor entities, as well as 13 wholly owned indirect subsidiaries organized under the laws of various international jurisdictions, with assets as of the Petition Date totaling approximately $15.7 billion, more than 3,625 employees, tens of thousands of creditors and potential creditors, and the involvement of many other parties in interest including various governmental entities, the Examiner, and the Creditors' Committee.  Despite that complexity, during the Fee Period, the Debtors reached an unprecedented and undeniably significant milestone in the cases—they secured and obtained court approval of the sale of approximately $4.5 billion of assets, consisting of the Debtors' mortgage loan origination and servicing business as a going concern, as well as their whole loan portfolio.  Managing the Debtors' bankruptcy cases, including in this Fee Period alone, has also entailed, among other activities performed by M&F, preparing for and attending numerous omnibus hearings with agendas that

2

ny-1084622

ran to dozens of pages each and addressing a multitude of issues arising therefrom, working with the Creditors' Committee to help them understand the issues facing the Debtors, seeking approval of a revised incentive programs designed to ensure that the Debtors' key employees remain motivated throughout the estate management process, beginning the review and reconciliation of thousands of proofs of claim filed in the cases, working to secure approval of the proposed settlements with RMBS litigation plaintiffs, conducting extensive negotiations with various parties in interest regarding the Debtors' obligations under the DOJ and FRB consent order, and ensuring continuing compliance and cooperation with the Examiner's investigation. These efforts have required reliance on many attorneys at M&F with various areas of expertise, many of whom worked on multiple aspects of the Debtors' cases.

4. In light of the extraordinary accomplishments achieved in the Debtors' Chapter 11 cases to date, M&F submits that the fees and expenses requested in the Application were incurred in connection with services that provided a clear benefit to the Debtors' estates. M&F further submits that its Application, including the time records appended thereto, provides sufficient information to ascertain the reasonableness of the fees for which M&F seeks allowance, which were incurred in furtherance of those accomplishments. Accordingly, M&F requests that the Court overrule the Trustee's Objection except as otherwise agreed herein, and approve M&F's Application on an interim basis.

**GENERAL RESPONSES**

5. M&F notes that as part of its efforts to minimize the costs to the Debtors' estates, M&F has staffed the matter as efficiently as possible, as described in greater detail below. Moreover, M&F believes that all time billed to the matter provided a direct benefit to the Debtors' estates in that it was incurred in the furtherance of the Debtors' fiduciary obligations pursuant to sections 1106 and 1107 of the Bankruptcy Code. Further, as set forth in the

3

ny-1084622

Application, M&F has already taken a voluntary reduction of $127,176.00 in the aggregate for all timekeepers that billed less than five hours in any given month during the Fee Period in connection with this engagement. This reduction exceeds by $43,942.00 the amount that would be required to be written off under the standard typically applied by the Trustee, which categorizes as transitory only those timekeepers that bill less than five hours during the entire Fee Period. M&F submits that its voluntary reductions are even more generous in light of Judge Chapman's recent pronouncement that the transitory timekeeper rule should not apply to partners or other senior attorneys who, due to their experience and expertise, can provide legal advice that materially benefits the estate in a relatively brief period of time.[2] M&F voluntarily reduced fees for partners that billed less than five hours during the Fee Period in the aggregate amount of $30,074.50, and for senior and of counsel that billed less than five hours during the Fee Period in the aggregate amount of $7,003.00. Accordingly, M&F has already taken approximately $81,019.50 in voluntary fee reductions above and beyond those required under the Trustee's guidelines, as construed in Ambac.

6. M&F believes that its requested compensation and expenses are reasonable and appropriate. Nevertheless, in the interest of avoiding the unnecessary expense and delay for the Debtors' estates that would be incurred if M&F were to engage in protracted litigation regarding the fees that are the subject of the Objection, M&F has proposed aggregate reductions of $240,000.00 in fees, as set forth in more detail below.[3]

---

[2]  See Hearing Transcript at 6:12-9:1, In re Ambac Financial Group, Inc., Case No. 10-15973 (SCC) (Bankr. S.D.N.Y. Nov. 27, 2012), annexed hereto as **Exhibit 1**.

[3]  To the extent the proposed reductions are not acceptable to the Trustee, M&F reserves its right to contest any additional reductions recommended by the Trustee at the hearing to approve the Application.

4

ny-1084622

## SPECIFIC RESPONSES

### A. KEIP/KERP

7. The Trustee objects to the allowance of all fees falling within category "Employee Matters (024)," totaling $545,290.00, which the Trustee describes as "related to the revised KEIP." As an initial point, only $82,552.00 of the fees in that category relate exclusively to the revised KEIP, with another $8,102.50 relating only in part to the revised KEIP. Excerpts of time detail identifying the fees falling into each category have been provided to the Trustee and are attached as **Exhibit 5** hereto. As set forth in the Application and in the time entries themselves, the remaining fees in that category were incurred in connection with a variety of non-KEIP tasks, including, but not limited to: review and analysis of key employee lists; analysis of TARP restrictions on executive compensation; review and analysis of employment agreements with the Debtors' key executives; and the preparation and revision of employee reimbursement protocol motion and annual incentive plan motion and correspondence with U.S. Trustee and Creditors' Committee regarding same.

8. Moreover, the Objection fails to articulate any basis whatsoever justifying the disallowance of any portion of fees related to the revised approved KEIP, much less the disallowance of all such fees. "A party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails." In re Blackwood Assocs., L.P., 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994). In the absence of a sufficient justification for the reduction requested, the Trustee's Objection should be overruled.

9.      The Trustee also renews its objection to the allowance of $308,539.00 in fees requested in M&F's first interim fee application,[4] which it asserts are "related to the Debtors' unsuccessful prosecution of the original KEIP motion." Obj. at 30. M&F has undertaken an analysis of the time entries related to the original KEIP in the First Application, and has determined that only $14,879.50 in fees relate clearly and solely to the KEIP, through the August 8th hearing, regardless of category, and approximately $552,548.50 in fees through that same period relate to both the KEIP and other matters (usually the KERP). See **Exhibit 5** annexed hereto. Even if half of the fees allocated to the latter category of mixed time entries and all the fees in the former category of pure KEIP time entries were to be disallowed in their entirety (an outcome M&F believes is inherently unreasonable), the sum, $291,153.75, is still nearly $20,000 less than the reduction sought by the Trustee with respect to M&F's first fee application.

10.     In any event, and for the reasons set forth in M&F's reply to the Trustee's First Omnibus Fee Objection,[5] M&F submits that the fees incurred in connection with the prosecution of both the original KEIP, which, although not approved, laid the groundwork for the revised program, and the revised KEIP, which was ultimately approved by the Court, are reasonable and necessary under the test applied in this Circuit. See, e.g., In re Kohl, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) (applying an objective test in determining whether services are "necessary," i.e., whether the services provided were "reasonably likely to benefit the estate" and were ones that a reasonable lawyer would have performed in the same circumstances (citations omitted)).

---

[4]    See *First Interim Application Of Morrison & Foerster LLP As Bankruptcy Counsel For The Debtors For Compensation And Reimbursement Of Expenses Incurred For The Period May 14, 2012 Through August 31, 2012* [Docket No. 1885] (the "First Application"); *Omnibus Objection Of The United States Trustee Regarding Fee Applications For First Interim Compensation And Reimbursement Of Expenses* [Docket No. 2361] (the "First Omnibus Fee Objection").

[5]    See *Morrison & Foerster LLP's Reply To Omnibus Objection Of The United States Trustee Regarding Fee Applications For First Interim Compensation And Reimbursement Of Expenses* [Docket No. 2476].

6

ny-1084622

11. At the hearing on the first interim fee applications of the estate professionals, this Court was critical of M&F and other Debtor professionals for proposing the KEIP. This Court referred to its prior ruling in In re Borders Group, Inc. as demonstrating to the Debtors' advisors that the original KEIP would be objectively incapable of being approved by this Court. M&F did not ignore Borders. To the contrary, M&F took note of this Court's reservations regarding whether the Court could approve an incentive program that conditioned payments to key employees solely on closing an asset sale.[6] M&F also carefully considered the ultimate Borders ruling by this Court in approving the KEIP after the program had been revised to include achievement of specific financial milestones along with the closing of an asset sale.[7] In light of this Court's ruling, the KEIP originally proposed by the Debtors did in fact include financial metrics as required by Borders.[8] But because all sales are not equal, and the closing of a sale of a heavily regulated mortgage origination and servicing business is not akin to selling a box retailer, the Debtors and their advisors developed a program that emphasized the importance of incentivizing senior management to perform double and triple duty to ensure the closing of the sale of a servicing business. In so doing, the Debtors believed that the facts of Borders were clearly distinguishable. The Debtors also considered the decisions by other courts and determined, albeit incorrectly, that this Court could approve the KEIP program based on the facts

---

[6] See Hearing Transcript at 27:20-28:4, In re Borders Group Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y. April 27, 2011), annexed hereto as annexed hereto as **Exhibit 2**.

[7] In re Borders Group, Inc., Case No. 11-10614 (MG) (Bankr. S.D.N.Y. April 27, 2011), *Memorandum Opinion Granting the Debtors' Motion for Authorization to Implement an Employee Incentive Program and Employ Retention Program* [Docket No. 721].

[8] *Debtors' Motion for an Order Pursuant to Sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code Authorizing (I) Implementation of (A) a Key Employee Retention Plan for Certain Non-Insiders and (B) a Key Employee Incentive Plan for Certain Insiders and (II) Payment of any Obligations Arising Thereunder as Administrative Expenses* [Docket No. 10], at ¶ 24.

of this case.[9] Despite the best efforts of the Debtors and their professionals, this Court did not approve the KEIP as originally proposed. But Applicant respectfully submits that the determination to propose the KEIP was not done so believing that it could not be approved. To deny all compensation relating to this program—which was ultimately approved—would be an unjust penalty.

12. Nevertheless, and notwithstanding the views expressed above, M&F has proposed taking a voluntary aggregate reduction of $175,000.00 in fees incurred in connection with the KEIP, for both the First Application and this Application, with $150,000.00 in reductions to be allocated to the First Application, and $25,000.00 in reductions to be allocated to this Application.

### B. Lumping

13. The Trustee seeks a reduction of $187,830.50, which represents 100% of aggregate fees related to time entries the Trustee identifies as "lumped." (Obj. at 31.) M&F respectfully suggests that in many instances, the Trustee has engaged in an unduly strict application of the "lumping" rule. By way of example, the Trustee identifies the following time entry as "lumped: "Various emails with K. Chopra (Centerview), T. Goren, B. Tyson and ResCap internal team regarding indemnity/escrow issue with NSM regarding servicing related agreements – K. Kohler (1.4)" Obj., Ex. E at 16. The entry clearly relates to a series of e-mail

---

[9] See In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bank D. Del. May 29, 2007), *Order Authorizing Payment of(I) Sale-Related Incentive Pay to Senior Management and (II) Retention and Incentive Pay to Certain Employees Pursuant to Sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code* [Docket No. 896], annexed hereto as annexed hereto as **Exhibit 3** (approving a KEIP utilizing metrics similar to the ones sought to be approved in the initial KEIP motion in a case involving the sale of a mortgage servicing platform with a stalking horse bidder; Hearing Transcript at 88:1-89:22, In re Diamond Glass, Inc., Case No. 08-10601 (CSS) (Bankr. D. Del. May 8, 2008), annexed hereto as **Exhibit 4** (suggesting that the consummation of a sale transaction may be a sufficient target to justify an incentive award where, as here, the company was engaged in "a very volatile, competitive, people-intensive business . . . especially in a sales process where people are working themselves out of a job.")

8

ny-1084622

correspondence with multiple parties regarding a single topic. Rather than lumping time, the entry provides a detailed description of a single task.

14. Nonetheless, M&F has endeavored to revise its time detail to address the Trustee's Objection. Revised entries have been provided to the Trustee and are attached as **Exhibit 6** hereto. In light of the revised entries, M&F suggests that a reduction of $20,000.00 is appropriate to address this objection.

### C. Vague Time Entries

15. The Trustee asserts that time entries totaling $303,838.00 are impermissibly vague, and that the Court should disallow those fees in their entirety. (Obj. at 31.) M&F respectfully suggests that if many of these entries are reviewed in the context of surrounding time entries (including in particular reference to the project code under which the entry is found) and/or by individuals familiar with the Debtors' cases, no further detail would be required. In fact, providing further detail, even with respect to some of the entries cited by the Trustee as deficient, runs the risk of revealing confidential information. By way of example, the Trustee cites the following as time entries as being vague: "Call with A. Barrage regarding potential rescheduling of preauction objection – N. Moss (.3)" Obj., Ex. E at 2; "Conduct and analyze research regarding fiduciary duties in sale context – J. Marines (1.0)" id. at 5; "Meeting with A. Barrage regarding preparation of task list regarding sale related issues – M. Crespo (.2)" id. at 8. M&F respectfully believes that such time entries, particularly in the context of the full time records submitted and the Application itself, are sufficient to permit the reviewer to determine whether the requested fees are reasonable in amount and were incurred in connection with the provision of services that were both actual and necessary.

16. Furthermore, the Trustee takes issue with numerous time entries reflecting participation by attorneys in a weekly status update call. In light of the complex nature of the

9

Debtors' cases, M&F utilizes the services of many attorneys working on a number of discrete workstreams. Because issues arising in one workstream—for example, plan negotiation and mediation efforts—may have a significant impact on a number of other workstreams, such as settlement discussions with various constituents, estate planning efforts, and the claims reconciliation process, it is critical that those workstreams be coordinated. In order to ensure that the appropriate level of coordination is taking place in the largest chapter 11 case filed in 2012, M&F holds a weekly call in which each of the attorneys bearing material responsibility for every workflow participates. Those discussions are wide-ranging and address many highly confidential matters. M&F submits that, in light of the clear necessity for such calls and the broad range of topics discussed, the general descriptions provided in the Application and the time detail are reasonably sufficient.

17.    Nonetheless, except as noted above, M&F has endeavored to revise its time detail to address the Trustee's concerns. Revised entries have been provided to the Trustee and are attached as **Exhibit 6** hereto. In light of the revised entries, M&F suggests that a reduction of $25,000 is appropriate to address this objection.

### D. Multiple Attendees at Hearings

18.    The Trustee asserts that 100% of the fees included in the category "Hearings (013)," which total $477,978.00, should be disallowed because M&F has failed to justify the necessity for multiple attendees at various hearings. (Obj. at 31.) The Objection on this point should be overruled for several reasons. First, the Trustee made no effort to quantify what portion of the fees in this task code are objectionable. The fees in the "Hearings" task code relate not merely to attendance at hearings, but also to preparation for, and follow up after hearings, tasks that do not necessarily suggest or require attendance at a hearing. Moreover, the Objection seeks to disallow fees for all attendees, rather than all but the lead attorney or

10

ny-1084622

attorneys in attendance. The Trustee's request that all fees in the task code be disallowed bears no rational relation whatsoever to the basis for the Objection.

19.  Furthermore, as noted above, the Debtors' cases are extremely complex, and require the efforts of many attorneys working on a number of discrete workstreams. At any given omnibus hearing, motions involving many, if not most, of those matters may be before the Court. In order to ensure that the individuals with the most complete and accurate knowledge of such matters are available to address motions and objections (including matters as to which an agreement in principle was reached prior to the hearing but no order had yet been entered) and to provide timely responses to issues raised by the Court or other parties in interest, it is M&F's policy that the attorneys working on the motions scheduled to be heard attend the applicable hearings. Rather than being excessive or unnecessarily duplicative, this practice helps to ensure that hearings—which are the only opportunity for the Court, as well as many parties in interest, to raise questions and receive answers from the Debtors' representative on a "real time" basis—are as efficient and productive as possible. Moreover, to the extent attorneys were required to attend an omnibus hearing in connection with a discrete matter or matters, in many instances and to the extent practicable, those attorneys excused themselves once that matter was complete.

20.  In particular, the sale hearing, which was conducted on November 19th and 20th, was highly contested, with approximately 62 objections filed by various parties. In order to address each objection in an efficient and timely manner, M&F divided the objections into separate categories based on the types of arguments raised therein, and organized teams of attorneys to review, negotiate, and draft responses to each category. These efforts resulted in the successful resolution of 23 objections prior to the hearing, with another 13 objections adjourned to a later date. That left 26 objections still going forward at the hearing, requiring the attendance

11

ny-1084622

of members of each of the objection teams who were familiar with the issues that might be raised.

21.  M&F has prepared supplemental materials based on a review of hearing transcripts, hearing agendas, and time detail, setting forth each of the matters addressed at the omnibus hearings identified in the Objection and which attorney(s) presented (or were prepared to present) each matter, attached as **Exhibit 7** hereto.

22.  Nonetheless, M&F is willing to forego a portion of its fees in the interest of saving the estates the expense that would be incurred in trying to provide an even more detailed analysis of the original time entries, and suggests that a lesser reduction of $20,000.00 of the aggregate fees in the Hearings task code is appropriate to address this objection.

## CONCLUSION

In light of the points made above, M&F submits that an aggregate reduction of $240,000.00 in fees is appropriate.  Accordingly, M&F proposes to seek interim compensation for the Fee Period in the amount of $20,497,177.25, and reimbursement for expenses for the Fee Period in the amount of $ 418,544.90.  M&F further proposes to seek interim compensation under the First Application in the amount of $283,539.00.

WHEREFORE, M&F respectfully requests that the Court enter an order: (a) approving interim compensation in the sum of $20,497,177.25 and interim reimbursement of expenses in the sum of $418,544.90 for the Fee Period, (b) approving interim compensation in the sum of $283,539.00 in connection with the First Application, (c) approving and directing prompt payment of all compensation and expenses not previously paid, and (d) granting to M&F such other and further relief as the Court may deem proper.

| | |
|---|---|
| New York, New York<br>Dated: April 9, 2013 | /s/ Lorenzo Marinuzzi<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>Erica J. Richards<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |

13

ny-1084622