**EXHIBIT 4**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
DIAMOND GLASS, INC.,                .    Case No. 08-10601(CSS)
  *et al.*,                         .    (Jointly Administered)
                                    .
        Debtors.                    .    May 8, 2008 (10:27 a.m.)
                                    .    (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

88

1   I'm not sure, frankly, that I agree with Mr. Carroll's
2   comment that every Chapter 11 doesn't deserve an incentive
3   plan and that somehow it has to be unique, and that sort of
4   goes to the (c)(3) issue, but in any event, whether it's, you
5   know, needs to be a reasonable justification of the debtors'
6   business judgment or whether it needs to be justified by the
7   facts and circumstances, or whether it needs to be an actual
8   and necessary expense of the debtors' estate, whatever
9   criteria is applicable, I think the evidentiary record in
10  this case is met, and the debtors have satisfied that.  The
11  testimony of Mr. Cogswell and Mr. Victor clearly establish
12  the motivational aspects of the program.  The program is tied
13  and it's important to get to the certain benchmarks.  The
14  testimony is clearly - it establishes that all the covered
15  employees are performing above and beyond their normal job
16  responsibilities, some extraordinarily so.  I don't think
17  that's particularly surprising.  Chapter 11 is an expensive
18  process for the professionals because we know how much work
19  they have to do, and it's an expensive and time consuming
20  process for management.  That is the nature of Chapter 11,
21  and that's, you know, I take issue with Mr. Carroll's sort of
22  blanket statement that every Chapter 11 doesn't deserve some
23  sort of incentive management program.  Certainly not every
24  case can afford it, and some cases maybe call out for it more
25  than others.  A business like this where we're talking about

```
 1   a very volatile, competitive, people-intensive business is
 2   really a poster child for a management incentive program,
 3   especially in a sales process where people are working
 4   themselves out of a job.  All right, so let's deal with the
 5   retentive effect.  I don't think that - I kind of rethought
 6   this issue, frankly, even if the only thing management has to
 7   do and the covered employees have to do is hold this company
 8   together for the stalking horse bidder to close, I don't find
 9   that in and of itself primarily retentive.  I have another
10   case where management and the professionals worked their
11   tails off for three months to hold the case together to get
12   the stalking horse bid in place, and it all fell apart, and
13   that case is going to convert on Friday.  It's a big case.  A
14   lot of people are going to lose their jobs.  That can happen.
15   Stalking horse cases, stalking horse bidders walk away.
16   There are material adverse changes that occur.  This is not a
17   healthy economy, and the pressures are intense.  I expect
18   that the price of raw materials is rising for the debtors,
19   without knowing, I'm speculating, so I won't rely on that in
20   making my ruling, but I don't find that just getting to a
21   plan or just getting to a closing by a stalking horse bidder
22   in and of itself is retentive.  I think there's a lot that
23   can go wrong.  So I don't find the fact that some of the
24   elements deal with simply getting the closing of a stalking
25   horse bid or simply getting a plan confirmed to be in and of
```