IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

IN RE:  SYLVIA ESSIE DADZIE                     CASE NO: 11-10822 SHL

               Debtor.

———————————————————————

# EXHIBIT "E"

DAVID B. SHAEV (dbs6994)
Shaev & Fleischman, LLP
Counsel for Debtor
350 Fifth Avenue
Suite 7210
New York, New York 10118
(646) 722-8649 Tel. No.
(646) 349-7622 Fax No.



# Process Loans, Not Paperwork™

www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000497-0000736986-7   Note Date: 06/28/2006          MIN Status: Inactive

Servicer:  <u>GMAC Mortgage, LLC</u>                                     Phone: (800) 766-4622
           Waterloo, IA

                                                              Phone: (202) 752-7000
Investor:  Fannie Mae
           Washington, DC

<u>Return to Search</u>

For more information about MERS please go to <u>www.mersinc.org</u>

Copyright© 2006 by MERSCORP, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE:  SYLVIA ESSIE DADZIE                    CASE NO: 11-10822 SHL

                Debtor.

_____

# EXHIBIT "F"

DAVID B. SHAEV (dbs6994)
Shaev & Fleischman, LLP
Counsel for Debtor
350 Fifth Avenue
Suite 7210
New York, New York 10118
(646) 722-8649 Tel. No.
(646) 349-7622 Fax No.

## SETTLEMENT AGREEMENT BETWEEN THE UNITED STATES OF AMERICA STEVEN J. BAUM, P.C. AND PILLAR PROCESSING, LLC

This Settlement Agreement ("Agreement") is entered into by the United States (the "Government") and Steven J. Baum, P.C. ("Baum") and Pillar Processing, LLC ("Pillar") to resolve the United States' investigation, conducted pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA"), into the mortgage foreclosure-related practices of Baum. Pursuant to this Agreement, Baum hereby agrees to the following policies, procedures and terms, and to instruct all employees of Pillar to adhere to the following policies, procedures and terms, in connection with any mortgage foreclosure action, any application in bankruptcy court to lift the automatic stay for purposes of initiating or continuing a mortgage foreclosure action, or any other action asserting rights or seeking remedies relating to any mortgage ("Mortgage Foreclosure Action") filed after the effective date of this Agreement:

### AGREEMENT

### I. BACKGROUND

1. Steven J. Baum, PC, is a law firm with its principal place of business at 220 Northpointe Parkway, Suite G, Amherst, New York 14228. Baum is one of the largest volume mortgage foreclosure firms in New York. Pillar Processing, LLC is a New York State licensed Professional Employment Organization and provides administrative services to Baum.

2. Mortgage Electronic Registration Systems, Inc. ("MERS") is a privately held Company that operates an electronic registry system designed to track servicing rights and ownership of mortgage loans in the United States. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of ownership.



3.      The Civil Frauds Unit of the United States Attorney's Office for the Southern
District of New York has been investigating whether Baum has improperly initiated and pursued
foreclosure proceedings against homeowners and, specifically, whether Baum knowingly or
recklessly filed misleading pleadings, affidavits, and mortgage assignments in the state and
federal courts in New York on behalf of its clients. Baum acknowledges that it occasionally
made inadvertent errors in its legal filings in state and federal court, which it attributes to human
error in light of the high volume of mortgage defaults and foreclosures throughout the State of
New York in the wake of the national subprime mortgage crisis.

4.      This Agreement does not constitute a finding by any court or agency that Baum
has engaged in any unlawful practice or wrongdoing of any kind.

5.      To resolve this matter without the cost of further investigation or the need for
litigation, the parties to this Agreement have agreed to the following terms.

## II.    CHANGE IN PRACTICES

6.      Baum shall not file any pleading in a Mortgage Foreclosure Action asserting that
its client is the owner, holder, or servicer of a mortgage and note unless it: (i) has reviewed the
original promissory note in question; or (ii) has received a copy of the promissory note from its
client or document custodian accompanied by a notarized affidavit signed by the client or
document custodian attesting that upon the affiant's personal review the client or document
custodian has actual or constructive possession of the original promissory note and that the copy
is a true and correct copy of the original ("Affidavit of True Copy"); or (iii) in a case where the
original note has been lost, has received an executed affidavit from its client attesting to that fact
and describing the due diligence procedures that were followed in an effort to search for the
original note, and signed by the person who conducted or supervised the search ("Lost Note

2



Affidavit"). Baum shall reference review of the original note, Statement of True Copy, or Lost Note Affidavit in any initial pleading before a court in a Mortgage Foreclosure Action filed after the effective date of this agreement.

7. Where an assignment of mortgage is necessary to properly assert standing in any Mortgage Foreclosure Action, Baum shall ensure that the assignee of that assignment is the latest holder of the promissory note, or its authorized agent. Baum shall additionally ensure that the promissory note is properly endorsed, or is accompanied by any necessary allonge(s).

8. Baum shall retain the following in its written files for each particular client or case in which Baum has filed Mortgage Foreclosure Action: a copy of (a) the note; (b) Affidavit of True Copy; or (c) Lost Note Affidavit (if applicable). Such documents shall be maintained for a period of three (3) years from the date the Mortgage Foreclosure Action is filed.

9. Baum shall designate partner(s), shareholder(s), or attorneys with a minimum of five (5) years of experience in representing banks or servicers in civil litigation or bankruptcy practice (the "Designee(s)") to supervise the review of all pleadings and documents related to Mortgage Foreclosure Actions before they are filed in court. The Designee(s) shall supervise the review of the information provided from the client regarding the delinquency of the account in order to reasonably verify the accuracy of the sums sought and priority claimed in any proposed proofs of claims, the lack of equity in the property if such lack of equity is alleged as a basis for a motion for relief, and the accuracy of the allegations of the Mortgage Foreclosure Action including, but not limited to, any allegations concerning the client's standing to bring the motion, or the delinquency of the account. Baum shall continue to retain the Designee(s) to perform the services described in this paragraph for up to three (3) years from the date of this agreement, unless they are replaced with a different Designee. Baum shall advise the Government of the

3



name(s) of the Designee(s) and shall advise the Government should those Designee(s) be
replaced with a different attorney.

10.    Supervision of the review set forth above shall be accomplished in the following
manner:

        a.  The Bankruptcy and Litigation departments shall each be overseen by a
        respective Managing Attorney, who will direct the procedures, training, and
        delegation of work within each of those respective departments. In addition,
        Baum shall designate a Lead Bankruptcy Attorney and a Lead Litigation
        Attorney who will report to the respective Managing Attorney. These Lead
        Attorneys shall be responsible for training the Bankruptcy and Litigation
        attorneys employed by Baum. The training shall be tailored to the experience
        level of the associate and shall include, at a minimum, in-depth bankruptcy or
        litigation training.

        b.  New Baum associates shall be assigned to the respective training program for
        a period of 12 months (for attorneys with at least 3 years of civil litigation
        experience) or 24 months (for attorneys with less than 3 years of civil
        litigation experience). The training shall include, but is not limited to, an
        overview of the foreclosure process in New York State, the litigation
        procedures expected at Baum, frequently litigated issues and responses,
        including standing, as well as typical bankruptcy or foreclosure concepts. In
        addition, weekly meetings shall be held to gauge progress and address any
        concerns that may exist, throughout the completion of the training program.
        All papers and pleadings drafted by new Baum associates shall be reviewed

4



by the respective Lead Attorney for a minimum of three (3) months, and until
such time as the respective Lead Attorney and Managing Attorney agree that
the new Baum associate is able to independently handle the same.

11. With respect to any client of Baum that has entered into a settlement with the
Office of the Comptroller of Currency ("OCC") concerning servicing standards ("OCC
Settlements"), Baum shall form a Compliance Committee of not less than three (3) attorneys,
which committee shall include the firm's Compliance Attorney, in order to ensure that the firm
complies, in each Mortgage Foreclosure Action, with the provisions of such OCC Settlements
that govern the standards for affidavits and documentation used in Mortgage Foreclosure
Actions. Further, Baum shall not, in the course of its representation of any client, take any action
inconsistent with the terms of an applicable OCC Settlement.

12. If, within three (3) years of the date of this Agreement, any client of Baum enters
into an agreement with any state or federal regulator concerning the standards for affidavits and
documentation necessary to file Mortgage Foreclosure Actions, said Compliance Committee
shall promulgate policies and procedures to ensure that Baum adheres with all applicable terms
of such agreement as a precondition of continuing to represent such client, to the extent
permitted by the New York Rules of Professional Conduct.

13. In a bankruptcy court action in which Baum has filed an application to lift the
automatic stay, if a debtor or other party in that action files a motion, letter, adversary complaint
or other pleading or document after the effective date of this agreement alleging that the
information contained in an application to lift the automatic stay with regard to standing is
incorrect or improper, Baum shall notify the Government and the U.S. Trustee within three (3)
business days after Baum receives notice, in accordance with the written notice procedure set

5




forth below. Notwithstanding the foregoing, the Baum firm shall have no duty to provide notification to the Government or the U.S. Trustee of any general denial with regard to standing that does not state a basis for the objection. This procedure is not intended to replace any notice requirements under the applicable rules of the Federal Rules of Bankruptcy Procedure.

14.    Baum shall no longer permit anyone employed by or contracted by Baum to execute any assignment of a mortgage as an officer, director, employee, agent or other representative of MERSCORP, Inc. and/or Mortgage Electronic Registration System, Inc.

15.    Baum shall provide the following notification:

    a. In any pending foreclosure action where an application for a judgment of foreclosure has not been submitted to a court, if Baum has filed an assignment of mortgage as a corporate officer of MERS, Baum shall disclose that fact to the court in the application for a judgment of foreclosure, or earlier. Such disclosure shall not be required if the Baum firm does not file a proposed judgment of foreclosure (e.g., because another law firm has been substituted as counsel for the matter prior to the filing of a proposed judgment of foreclosure, because the action is dismissed, etc.).

    b. For motions for relief from the automatic stay filed after the effective date of this Agreement, if Baum files an assignment of mortgage as a corporate officer of MERS, Baum shall disclose that fact to the applicable court at the time it files a motion for relief from the automatic stay for purposes of foreclosure.

    c. In any motions for relief from the automatic stay that are currently pending before the court where no order has been issued by the court, if Baum has

6



filed an assignment of mortgage signed by a Baum employee as a corporate

officer of MERS, Baum shall disclose that fact to the applicable court prior to

the return date of the motion.

16.    Baum shall comply in all respects with Local Bankruptcy Rule 4001-1 of the

United States Bankruptcy Court for the Southern District of New York with respect to seeking

relief from the automatic stay pursuant to 11 U.S.C. § 362 in cases filed by individuals

concerning real property or cooperative apartments (a "Lift Stay Motion").

17.    Baum waives all rights to seek judicial review of, or otherwise challenge or

contest the validity of, this Agreement, and waives any right that may arise under the Equal

Access to Justice Act, 28 U.S.C. § 2412.

18.    This Agreement shall be binding on Baum, its successors, officers, agents,

employees, shareholders, partners and others to the extent provided in Fed. R. Civ. P. 65(d) and

Fed. R. Bankr. P. 7065.

19.    For the purposes of this Agreement, Baum shall, unless otherwise directed by the

United States Attorney, mail all written notifications to the Government by overnight mail or

email to:

Assistant U.S. Attorney Pierre Armand
United States Attorney's Office
86 Chambers Street, 3rd Floor
New York, NY 10007
Pierre.Armand@usdoj.gov

All written notifications to the United States Trustee shall be sent by overnight mail or email to:

Tracy Hope Davis
United States Trustee
Attn: Linda Riffkin, Assistant United States Trustee
        Greg Zipes, Trial Attorney
United States Trustee's Office

7



33 Whitehall Street, 21st floor
New York, NY 10004
Greg.zipes@usdoj.gov

All written notifications to Baum under this agreement shall be sent by overnight mail to:

Steven J. Baum, Esq.
PERSONAL AND CONFIDENTIAL
Steven J. Baum, P.C.
220 Northpointe Parkway, Suite G
Amherst, NY 14228

with a copy to:

Amy Polowy, Esq.
PERSONAL AND CONFIDENTIAL
Steven J. Baum, P.C.
220 Northpointe Parkway, Suite G
Amherst, NY 14228

## III. MONETARY PAYMENT

20.    Within fifteen (15) business days of the effective date of this Agreement Baum

shall make a payment of two million dollars ($2,000,000) by electronic funds transfer pursuant to

written instructions to be provided by the United States Attorney's Office, Southern District of

New York (the "Payment"). The United States accepts the Payment in full and complete

satisfaction of any and all claims for civil penalties that the United States may have under

FIRREA against either Baum, Pillar, or any partner or employee of Baum or Pillar, on account of

any Mortgage Foreclosure Action filed in the state or federal court within the State of New York

by Baum up until the date of this Agreement (the "Covered Conduct").

8




## IV.   SCOPE OF RELEASE

21.   Notwithstanding any other term of this Agreement, the following potential claims
of the United States, and any agency or entity thereof, are specifically reserved and are not
released:

- a.   Any civil, criminal or administrative liability arising under Title 26, U.S.
  Code (Internal Revenue Code);

- b.   Any criminal liability;

- c.   Any administrative liability;

- d.   Any liability to the United States (or its agencies) for any conduct other
  than the Covered Conduct;

- e.   Any liability based upon such obligations as are created by this
  Agreement; and

- f.   Any liability to the United States of any person or entity, including but not
  limited to any joint tortfeasor, except for the former and current partners
  and employees of Baum and Pillar, who are expressly released by this
  Agreement.

22.   Except with respect to the matters expressly and specifically articulated in this
Agreement, nothing in this Agreement shall preclude the United States Trustee from following
the United States Trustee's statutory duty set forth in 28 U.S.C. § 586 in connection with
bankruptcy proceedings in which Baum employees appear.

23.   Nothing in this agreement shall be construed as requiring Baum to violate any
court order, administrative rule, or any federal or state law or regulation.

9



## V.    GENERAL PROVISIONS

24.    The effective date of this Agreement shall be thirty days after the last date on which is it signed by counsel for the parties (the "Effective Date").

25.    This Agreement shall be in effect for three (3) years from the Effective Date (the "Operative Time Period").

26.    Should the Government determine in good faith and in its sole discretion during the Operative Time Period that Baum has knowingly or recklessly breached any material provision of this Agreement, the Government may seek an Order from the District Court for the Southern District of New York finding Baum in breach for any such violation and may seek such remedies as the court in its discretion finds to be warranted. However, prior to commencing any such action, the Government shall provide written notice to Baum of the alleged breach and provide the Baum with a two-week period from receipt of such notice in which to make a presentation to the Office to demonstrate that no breach occurred, or, to the extent applicable, that the breach was not material or knowingly, recklessly or willfully committed or has been cured. Baum shall not contest the jurisdiction of the court or the venue where a proceeding is brought to enforce the terms of this Agreement pursuant to 28 U.S.C. § 1345 in the District Court for the Southern District of New York. Nor shall Baum assert that any potential claims of the United States arising from conduct related to this Agreement are barred by any applicable statute of limitations.    .

27.    Baum agrees that, in the event that the District Court determines that Baum has violated any provision of this Agreement during the Operative Time Period, a one-year extension of the period may be imposed in the sole discretion of the Government, and, in the event of

10



additional violations, such additional one-year extensions as appropriate, but in no event shall the total term of this Agreement exceed five (5) years.

28.     This Agreement is not intended to supersede or replace any additional action or remedy that the Court may choose to impose in connection with this or any other case.

29.     Nothing in this Agreement limits the rights of any party other than the United States to pursue any legal right or remedy it may have against Baum.

30.     Each party to this Agreement shall bear its own costs and attorneys' fees associated with this Agreement.

11



31.     The parties acknowledge that this agreement is a public document and that the

United States shall provide a copy of this Agreement to any person upon request.

32.     The parties have agreed to the entry of this Agreement, as indicated by the

signatures below.

Dated: New York, New York                    PREET BHARARA
        October ___, 2011                     United States Attorney for the
                                              Southern District of New York

                                    By: _____

                                              PIERRE G. ARMAND
                                              LARA K. ESHKENAZI
                                              Assistant United States Attorneys
                                              86 Chambers Street, 3rd Fl.
                                              New York, New York 10007
                                              Tel: (212) 637-2724/2758
                                              Fax: (212) 637-2730/2686
                                              Pierre.Armand@usdoj.gov
                                              Lara.Eshkenazi@usdoj.gov

Dated: New York, New York            _____
        October ___, 2011                     ELKAN ABRAMOWITZ
                                              Morvillo, Abramowitz, Grand, Iason, Anello
                                                  & Bohrer, P.C.
                                              565 Fifth Avenue
                                              New York, New York  10017
                                              Tel: (212) 856-9600
                                              Fax: (212) 856-9494
                                              Eabramowitz@maglaw.com
                                              *Counsel for Steven J. Baum P.C. and Pillar
                                                  Processing, LLC*

Dated: Amherst, New York             _____
        October ___, 2011                     STEVEN J. BAUM
                                              Steven J. Baum, P.C.
                                              220 Northpointe Parkway Suite G
                                              Amherst, NY 14228

12

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE:  SYLVIA ESSIE DADZIE                    CASE NO: 11-10822 SHL

                        Debtor.

_____


# EXHIBIT "G"

DAVID B. SHAEV (dbs6994)
Shaev & Fleischman, LLP
Counsel for Debtor
350 Fifth Avenue
Suite 7210
New York, New York 10118
(646) 722-8649 Tel. No.
(646) 349-7622 Fax No.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:                                          Case No.: 11-10822-alg
                                                (Chapter 7)
SYLVIA ESSIE DADZIE
                                                Assigned to:
                    Debtor.                     Hon. ALLAN L. GROPPER
                                                Bankruptcy Judge

---

RELIEF FROM STAY - REAL ESTATE AND
COOPERATIVE APARTMENTS

---

I _JOHN CASTAGNA_ OF GMAC MORTGAGE, LLC, (HEREINAFTER, "MOVANT") HEREBY
DECLARE (OR CERTIFY, VERIFY, OR STATE):

### BACKGROUND INFORMATION

1. REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE SUBJECT OF THIS
MOTION: 3695 SECOR AVE, BRONX, NEW YORK 10466

2. LENDER NAME: GMAC MORTGAGE, LLC

3. DATE OF MORTGAGE: JUNE 28, 2006

4. POST-PETITION PAYMENT ADDRESS: ATTN: MAIL CODE: 507-345-110, 3451 HAMMOND AVE,
WATERLOO, IA 50702

### DEBT/VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT
THE TIME OF FILING THE MOTION: $329,125.25 (good through May 18, 2011)
(Note: this amount may not to be relied on as a "payoff" quotation.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY: $288,000.00

7. SOURCE OF ESTIMATED VALUATION: Schedule A & D

### STATUS OF DEBT AS OF
### THE PETITION DATE

8. TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF PETITION FILING
DATE: (Good through May 18, 2011)  $329,125.25

| | |
|---|---|
| A. AMOUNT OF PRINCIPAL: | $308,359.63 |
| B. AMOUNT OF INTEREST: | $15,966.05 |
| C. AMOUNT OF ESCROW (TAXES AND INSURANCE): | $3,742.16 |
| D. AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| E. AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S) PRE-PETITION: | $600.00 |
| F. AMOUNT OF PRE-PETITION LATE FEES, IF ANY, BILLED TO DEBTOR(S): | $82.16 |

9. CONTRACT INTEREST RATE: Fixed 6.5%
*(IF INTEREST RATE IS (OR WAS) ADJUSTABLE, PLEASE LIST THE RATE(S) AND DATE(S) THE RATE(S)
WAS/WERE IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS
FORM; PLEASE LIST THE EXHIBIT NUMBER HERE:____.)*

10. PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED
TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:

| | |
|---|---|
| Pre-Petition Attorney Costs | $275.00 |
| Property Inspection Fees | $100.25 |

### AMOUNT OF POST-PETITION DEFAULT (AS OF 04/20/2011)

11. DATE LAST PAYMENT WAS RECEIVED: August 31, 2010 (applied to the August 1, 2010 contractual
payment)

12. ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING OF PETITION
THROUGH PAYMENT DUE ON 04/01/2011 AS THIS IS A CHAPTER 7 CASE, THERE ARE NOW A
TOTAL OF 8 CONTRACTUAL PAYMENTS NOW DUE.

13. PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| *09/01/2010 | $2,054.23 | | | | | $0.00 |
| *10/01/2010 | $2,054.23 | | | | | $0.00 |
| *11/01/2010 | $2,525.16 | | | | | $0.00 |
| *12/01/2010 | $2,506.29 | | | | | $0.00 |
| *01/01/2011 | $2,506.29 | | | | | $0.00 |
| *02/01/2011 | $2,506.29 | | | | | $0.00 |

| | | | | | |
|---|---|---|---|---|---|
| 03/01/2011 | $2,506.29 | | | | $0.00 |
| 04/01/2011 | $2,506.29 | | | | $0.00 |
| TOTALS: | $19,165.07 | | | | $0.00 |

\* AS THIS IS A CHAPTER 7, THERE ARE ALSO 6 PRE-PETITION MONTHLY MORTGAGE PAYMENTS NOW DUE AS LISTED ABOVE.

14. AMOUNT OF MOVANT'S ATTORNEYS FEES BILLED TO DEBTOR FOR THE PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $550.00

15. AMOUNT OF MOVANT'S FILING FEE FOR THIS MOTION: $150.00

16. OTHER ATTORNEYS' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17 AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $30.00

18. AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE OPINION: $0.00

19. AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY THE MOVANT POST-PETITION: $0.00

20. SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS CONTRACT, IF APPLICABLE: $0.00

21. AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE TAXES, INSURANCE INCURRED BY DEBTOR ETC.:
    Post-Petition City/Town Taxes                    $757.37

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH THE DOCUMENTS.

    1. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

    2. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

    3. COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT A.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS, THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:_____.

### DECLARATION

I, _JOHN CASTAGNA_ OF GMAC MORTGAGE, LLC HEREBY DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT ___FORT WASHINGTON___ <CITY/TOWN>, __PA__ <STATE> ON THIS _2_ DAY OF _APRIL_, 20 _11_.

_____
<SIGNATURE>

_JOHN CASTAGNA_
<PRINT NAME>

_BK SPECIALIST_
<TITLE>

_____
GMAC MORTGAGE, LLC
1100 VIRGINIA AVE
FORT WASHINGTON, PA 19034

Mailing Address
P.O. Box 1291
Buffalo, NY 14240-1291

Overnight Mail
220 Northpointe Parkway
Suite G
Amherst, NY 14228

# SJB

STEVEN J. BAUM, P.C.
ATTORNEYS AT LAW

Phone Number
716-204-2400

Fax Number
716-204-4600
Not for Service
Web Site
WWW.MBAUM.COM

May 4, 2011

CLERK, UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
One Bowling Green, 6th Floor
New York, NY 10004

Re:         GMAC Mortgage, LLC vs. Sylvia Essie Dadzie, et al.
Case No.    11-10822-alg

Dear Sir or Madam:

    Enclosed herewith please find a Chamber's Copy of a Notice of Presentment, Application, and Affidavit of Mailing of same filed by Steven J. Baum, P.C..   Also enclosed herewith please find an original and one copy of a proposed Order.

    Please note that the Presentment has been scheduled for the 31st day of May, 2011 at 12:00 pm in Manhattan, New York.

    If you have any questions, please feel free to call.

                            Very truly yours,

                            STEVEN J. BAUM, P.C.

                            By:     Ehret A. Van Horn, Esq.

Enc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Presentment Date and Time:
May 31, 2011 at 12:00 noon

<u>NOTICE OF PRESENTMENT TO
VACATE THE AUTOMATIC STAY</u>

In Re:

SYLVIA ESSIE DADZIE

Case No.: 11-10822-alg
(Chapter 7)

                              Debtor.

Assigned to:
Hon. ALLAN L. GROPPER
Bankruptcy Judge

.    PLEASE TAKE NOTICE that an order will be presented for signature to the Honorable Allan L. Gropper

at Chambers, One Bowling Green, 6th Floor, Courtroom 617, Manhattan, NY 10004-1408 on the 31st day of

May, 2011.  The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. §362 with regard to

the premises commonly known as 3695 Secor Ave, Bronx, NY 10466; a copy of which order is annexed hereto.

        If you have good reason to object to the granting of the proposed order, you must do so in writing and at

least Seven (7) days before the order is to be signed.  You must serve the undersigned and all other entities to

whom this motion has been noticed, as indicated below, with a copy of your objections stating the legal grounds

and the facts which establish the reasons for your objections.  The objections shall identify the motion to which

they are addressed by name of moving party, date of the hearing, relief sought by the motion, and by title, caption,

and index number of the case in which the motion is made.  Within the same time you must also file with the

clerk of the Court the original of your objections together with proof by affidavit, admission, or otherwise that

copies have been properly served.  If no proper objections are timely filed and served and if the judge is satisfied

from the application that the moving party is entitled to the relief sought, the order may be signed without a

hearing.  If proper objections are timely filed and served, a hearing will scheduled before the Court at One

Bowling Green, 6th Floor, Courtroom 617, Manhattan, NY 10004-1408.  If no objections are filed, the Court

may sign the order without further proceedings, or may direct that the hearing be held notwithstanding the

absence of objections.

DATED :    May 4, 2011
           Amherst, New York

                                        Yours, etc.

                                        By:    _____
                                               Ehret A. Van Horn, Esq.
                                               STEVEN J. BAUM, P.C.
                                               Attorneys for Secured Creditor
                                               GMAC Mortgage, LLC
                                               Office and Post Address:
                                               220 Northpointe Parkway, Suite G
                                               Amherst, NY 14228
                                               Telephone 716-204-2400

TO:

    SYLVIA ESSIE DADZIE              Debtor
    3695 Secor Ave
    Bronx, NY 10466

    DAVID B. SHAEV, ESQ.            Attorney for Debtor
    350 Fifth Avenue
    Suite 7210
    New York, NY 10118

    KENNETH P. SILVERMAN, ESQ.      Chapter 7 Trustee
    Silverman Acampora LLP
    100 Jericho Quadrangle
    Suite 300
    Jericho, NY 11753

    UNITED STATES TRUSTEE           U.S. Trustee
    Office of the U.S. Trustee
    33 Whitehall Street
    Floor 21
    New York, NY 10004

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In Re:

SYLVIA ESSIE DADZIE

               Debtor.

_____

**APPLICATION**

Case No.: 11-10822-alg
(Chapter 7)

Assigned to:
Hon. ALLAN L. GROPPER
Bankruptcy Judge

     GMAC Mortgage, LLC ("Secured Creditor"), by its attorneys Steven J. Baum, P.C., moves to terminate

the automatic stay in this case with respect to the real property commonly known as 3695 Secor Ave, Bronx, NY

10466 and states as follows:

     1.  Secured Creditor is the holder of a Note and Mortgage dated the 28th day of June, 2006 in the amount

of $325,000.00 secured by the premises commonly known as 3695 Secor Ave, Bronx, NY 10466 (the "Mortgaged

Premises"). A copy of the Note, Mortgage, and Assignment is attached hereto as **Exhibit 'A'**.

     2.  On the 25th day of February, 2011 Debtor Sylvia Essie Dadzie filed a Petition under Chapter 7 of

Title 11 U.S.C. §101 et seq with this Court, and an Order for relief was duly entered.

     3.  The Note and Mortgage provide that the Debtor will be in default if she does not make full monthly

payments on each due date. As of the 27th day of April, 2011, the Debtor is due for 2 payments in the amount of

$2,054.23 which represents the payments due the 1st day of September, 2010 through October, 2010 and 1

payment in the amount of $2,525.16 which represents the payment due the 1st day of November, 2010 and 5

payments in the amount of $2,506.29 which represents the payments due the 1st day of December, 2010 through

April, 2011 and has not cured said default. In addition, 1 payment due the 1st day of May, 2011 will be due at

the date this motion is heard. A Motion for Relief from Stay Worksheet is attached hereto as **Exhibit 'B'**.

4.   Through the 18th day of May 2011, the total amount owing the Secured Creditor is $329,125.25. Interest on the unpaid principal balance will continue to accrue, and to protect its security in the Mortgaged Premises Secured Creditor may be required to make further advances for property taxes, insurance and related matters.  In addition, there is a statutory lien in the amount of $2,843.00 as set out in the Debtor's Schedule D. There are total mortgages in the amount of $331,968.25.

5.   Based on the Schedule A & D attached hereto as **Exhibit 'C'**, said real property is valued at $288,000.00. Based on the Secured Creditor's lien amount, additional liens against the Mortgaged Premises and the value of the Mortgaged Premises, there exists no equity in the premises.

6.   Section 362(d)(1) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from the stay imposed by Section 362(a) "for cause, including lack of adequate protection of an interest in property..." As set forth above, cause exists to vacate the automatic stay as the Debtor has failed to make monthly mortgage payments to Secured Creditor.

7.   Furthermore, Section 362(d)(2) of the Bankruptcy Code provides in pertinent part that the Court shall grant relief from stay imposed by Section 362(a) if "(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." *See*, 11 U.S.C. § 362(d)(2)(A)-(B). Therefore, the Secured Creditor is entitled to relief pursuant to 11 U.S.C. § 362(d)(2) as there exists no equity in the Premises after costs of sale.  The Secured Creditor submits that the Mortgaged Premises are not necessary for the effective reorganization of the Debtor as the instant case is a Chapter 7 liquidation case.

8.   A Memorandum of Law is submitted herewith.

9.   Debtor is entitled to a homestead exemption as the Mortgaged Premises is also her homestead.

10.   A copy of a proposed Order granting the relief sought by Secured Creditor is annexed hereto as **Exhibit 'D'**.

11.   No prior application has been made for the relief requested herein.

**WHEREFORE,** Secured Creditor respectfully requests that an Order be granted terminating the automatic stay immediately as to Secured Creditor's interest in the Mortgaged Premises together with such other, further and different relief as the Court may deem just in this matter.

DATED:    May 4, 2011
          Amherst, New York

                                        Yours, etc.

                                        By:    _____
                                               Ehret A. Van Horn, Esq.
                                               STEVEN J. BAUM, P.C.
                                               Attorneys for Secured Creditor
                                               GMAC Mortgage, LLC
                                               Office and Post Address:
                                               220 Northpointe Parkway, Suite G
                                               Amherst, NY 14228
                                               Telephone 716-204-2400

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

**ORDER**

In Re:

SYLVIA ESSIE DADZIE

Debtor.

Case No.: 11-10822-alg
(Chapter 7)

Assigned to:
Hon. ALLAN L. GROPPER
Bankruptcy Judge

_____

     GMAC Mortgage, LLC, a secured creditor of Debtor, ("Secured Creditor") having moved this Court for an Order modifying the Automatic Stay in this proceeding by permitting said Secured Creditor to foreclose on the mortgage of premises commonly known as 3695 Secor Ave, Bronx, NY 10466, of which the Debtor is the owner of record, and

     The motion having come to be heard before this Court and no opposition having been submitted by Kenneth P. Silverman, Esq., the Chapter 7 Trustee, by the U.S. Trustee, or by David B. Shaev, Esq., counsel for the Debtor, and due deliberation having been had, now

     Upon Reading and Filing of the Notice of Motion, the Application of Secured Creditor dated May 4, 2011, and proof of service upon all necessary parties, upon motion of the Office of Steven J. Baum, P.C., it is hereby

     ORDERED, that as to the Secured Creditor or its successors or assigns, the automatic stay is terminated, permitting it to foreclose or otherwise pursue its mortgage remedies and rights on the premises commonly known as 3695 Secor Ave, Bronx, NY 10466; and it is further

     ORDERED, that the Trustee shall retain and all interest the Debtor's estate may have in any surplus monies from a foreclosure sale of the Real Property; and, it is further

ORDERED, that upon the commencement of a foreclosure proceeding against the Debtor's, the Trustee and his counsel shall be served with a copy of the Summons and Complaint and Notice of Pendency of Action; and, it is further

ORDERED, that the Trustee be served with a copy of the Referee's Report of Sale within thirty (30) days of the Referee's preparation of the report of sale.

DATED:    Manhattan, New York
          May _____, 2011

                                      Hon. ALLAN L. GROPPER, U.S.B.J.

Identifier ▓▓▓▓▓        Doc Type:NOTEN

# NOTE

| June 28, 2006 | Bronx | New York |
|---|---|---|
| [Date] | [City] | [State] |

3695 Secor Ave
Bronx, NY 10465
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 325,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Advanced Financial Services, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st      day of each month beginning on August 1, 2006       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2036       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 25 Enterprise Center, Newport, RI  02842
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,054.23

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N(NY) (0005)        Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3        Initials:

Identifier: [redacted]        Doc Type: NOTEN

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **2.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N(NY) (0005)                     Page 2 of 3                     Form 3233 1/01
                                                                   Initials: [initials]

Identified: ████████   Doc Type: NOTE

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Sylvia E Dadzie                  -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse                          _____ (Seal)          _____ (Seal)
                                          -Borrower                                         -Borrower

Joanne Wight, Vice President                                                        [Sign Original Only]
Acting Agent for GMAC Bank

PAY TO THE ORDER OF

WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

████████   -6N(NY) (0806)          Page 3 of 3          Form 3233 1/01

J. Vollmer
Limited Signing Officer

Pay to the order of          GMAC BANK

Without recourse
Advanced Financial Services, Inc.

Brian R. Gilpin
Assistant Vice President



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

2006070300222002002EC09A

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 19 |
|---|---|---|
| Document ID: 2006070300222002 | Document Date: 06-28-2006 | Preparation Date: 07-03-2006 |
| Document Type: MORTGAGE | | |
| Document Page Count: 18 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BRONX | 4943 | 54 | Entire Lot | | 3695 SECOR |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel____ Page____ or File Number_____

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 127.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | **RECORDED OR FILED IN THE OFFICE** |
| MTA: | $ | 945.00 | **OF THE CITY REGISTER OF THE** |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** |
| Additional MRT: | $ | 0.00 | Recorded/Filed    07-19-2006 10:12 |
| TOTAL: | $ | 6,632.50 | City Register File No.(CRFN): |

2006000408948

*City Register Official Signature*



| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City<br>Register will rely on the information provided<br>by you on this page for purposes of indexing<br>this instrument. The information on this page<br>will control for indexing purposes in the event<br>of any conflict with the rest of the document. | |
|---|---|

**2006070300222002002EC09A**

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 19** |
|---|---|---|
| **Document ID:** 2006070300222002 | Document Date: 06-28-2006 | Preparation Date: 07-03-2006 |
| Document Type: MORTGAGE | | |
| Document Page Count: 18 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

| **PROPERTY DATA** | | | | |
|---|---|---|---|---|
| **Borough** | **Block** | **Lot** | **Unit** | **Address** |
| BRONX | 4943 | 54 | Entire Lot | 3695 SECOR |
| | **Property Type:** DWELLING ONLY - 1 FAMILY | | | |

| **CROSS REFERENCE DATA** | | | | | |
|---|---|---|---|---|---|
| CRFN_____  or  Document ID_____  or  _____  Year____  Reel ___ Page ____  or  File Number_____ | | | | | |

| **PARTIES** | |
|---|---|
| **MORTGAGER/BORROWER:** | **MORTGAGEE/LENDER:** |
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

| **FEES AND TAXES** | | | | |
|---|---|---|---|---|
| **Mortgage** | | | Recording Fee: $ | 127.00 |
| Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | | |
| MTA: | $ | 945.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,632.50 | | |

Dadzie          GMAC          8/25

Return To:
Advanced Financial Services,
Inc.
25 Enterprise Center Newport,
RI 02842

Prepared By:
Tara A. Thomas

Return to:
Equity National Title Insurance Company
401 Wampanoag Trail, Suite 300
East Providence, RI 02915

—————————— [Space Above This Line For Recording Data] —————————— **CE 3369**

# MORTGAGE MIN 

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated June 28, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Sylvia E Dadzie

whose address is 3695 Secor Ave, Bronx, NY 10466

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender." Advanced Financial Services, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
                                        . Lender's address is 25 Enterprise Center,
Newport, RI 02842

| Section: | Block: | Lot: | Unit: |
|---|---|---|---|
|  |  |  |  |

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

-6A(NY) (0808).01
Page 1 of 17          Initials:
VMP Mortgage Solutions, Inc.

(E) **"Note."** The note signed by Borrower and dated June 28, 2006 , will be called
the "Note." The Note shows that I owe Lender three thousand twenty-five thousand and
00/100

                              Dollars (U.S. $325,000.00 )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by July 1, 2036 .
(F) **"Property."** The property that is described below in the section titled "Description of the Property,"
will be called the "Property."
(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."
(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."
(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."
(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."
(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.
(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

⊕-6A(NY) (0408).01          Page 2 of 17          Initials: [signature]          Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 3695 Secor Ave

[Street]

Bronx                          [City, Town or Village]. New York 10466          [Zip Code].

This Property is in Bronx                          County. It has the following legal
description: See Attached Exhibit A

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;



-6A(NY) (0508).01                    Page 3 of 17            Initials:        Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

  

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.


-6A(NY) (0500).01

Page 5 of 17

Initials: [signature]

Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

-6A(NV) (0508).01        Page 7 of 17        Initials: _____        Form 3033 1/01

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.



 

VMP-6A(NY) (0803).01          Page 6 of 17          Initials:          Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

 

-6A(NY) (0508).01    Page 9 of 17    Initials:    Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in





value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to



VMP ®-6A(NY) (0506).01      Page 11 of 17      Initials:      Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

---

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

  

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another





Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property** [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

 -6A(NY) (0508).01                    Page 16 of 17            Initials:                     Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _____ (Seal)
                                       Sylvia E Qadzie            -Borrower

_____     _____ (Seal)
                                                                  -Borrower

_____ (Seal)   _____ (Seal)
                             -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                             -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                             -Borrower                            -Borrower

**STATE OF NEW YORK, Bronx**                                        County ss:


    On the 28th          day of June, 2006                    before me, the undersigned, a notary
public in and for said state, personally appeared Sylvia E Dadzie



personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                            Notary Public

Tax Map Information:                        **R. SCOTT LAFAZIA**
                                            **Notary Public State of New York**
                                            **No. 02LA5049900**
                                            **Qualified in Richmond County**
                                            **Commission Expires** 9/25/09



Page 17 of 17          Initials           Form 3033 1/01

3695 Secor Avenue
Bronx, New York 10466
Sylvia Dadzie

## EXHIBIT A

All that certain plat, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

Beginning at a point in the westerly side of Secor Avenue, distant 60 feet southerly from its intersection with the southerly side of Connor Street; running thence westerly parallel with the southerly side of Conner Street, 95.21 feet to the center line of the block; thence southerly parallel with westerly side of Secor Avenue, 30 feet; thence easterly parallel with the southerly side of Connor Street, 95.21 feet to the westerly side of Secor Avenue; and thence northerly along the westerly side of Secor Avenue, 30 feet to the point or place of beginning.

All the real property has been or will be improved by a one or two family residence only.

Block 4943  Lot 54

For title reference see Deed recorded herewith;

### ASSIGNMENT OF MORTGAGE

Original Lender: Advanced Financial Services, Inc.

Know that,

Mortgage Electronic Registration Systems, Inc. as nominee for Advanced Financial Services, Inc. its successors and assigns, 1901 E. Voorhees Street Suite C, Danville, IL 61834, assignor,

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

GMAC Mortgage, LLC, 1100 Virginia Drive, Ft. Washington, PA 19034, assignee

hereby assigns unto the assignee, a certain mortgage made by SYLVIA E. DADZIE, given to secure payment of the sum of Three hundred and twenty five thousand dollars ($325,000.00) and interest, dated the 28th day of June, 2006, recorded on the 19th day of July, 2006, in the office of the City Register of the City of New York, at Instrument No. 2006000408948,

covering premises 3695 SECOR AVENUE, BRONX, NY 10466, Bronx County, SBL #Block 4943 Lot 54,

together with the Assignor's beneficial interest under the Mortgage, and the moneys due and to grow due thereon with the interest,

This said mortgage has not been otherwise assigned of record.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this __14__ day of __April__, 20_11_.

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc. as nominee for Advanced Financial Services, Inc. its successors and assigns

BY: _____
Name: Evette Arrington
Title: Assistant Secretary

State of Pennsylvania
County of Montgomery   ss:
On the _14_ day of April   in the year 2011   before me, the undersigned, a notary public in and for said state, personally appeared **Evette Arrington**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Ft Washington, PA ___ (Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)

_____
Notary Public

NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013

B6D (Official Form 6D) (12/07)

In re    **Sylvia Essie Dadzie** _____,       Case No. _____

                           Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

     State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

     List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

     If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

     If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

     Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxxx8590**<br><br>**GMAC Mortgage**<br>**3451 Hammond Ave**<br>**P.O. Box 780**<br>**Waterloo, IA 50704-0780** | | | 7/06<br>**First Mortgage**<br>**Single family home @**<br>**Location: 3695 Secor Ave, Bronx NY**<br>**10466**<br>**Appraised value: $320,000, Liquidation**<br>**value: $288,000** | | | | | |
| | | | Value $         **288,000.00** | | | | 315,586.00 | 27,586.00 |
| Account No. **xxxxxx0054**<br><br>**NYC Dept of Finance**<br>**P.O. Box 32**<br>**New York, NY 10008-0032** | | | 2010<br>**Statutory Lien**<br>**Single family home @**<br>**Location: 3695 Secor Ave, Bronx NY**<br>**10466**<br>**Appraised value: $320,000, Liquidation**<br>**value: $288,000** | | | | | |
| | | | Value $         **288,000.00** | | | | 2,843.00 | 2,843.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

**0**   continuation sheets attached

                              Subtotal<br>(Total of this page)      318,429.00      30,429.00

                              Total<br>(Report on Summary of Schedules)      318,429.00      30,429.00

B6A (Official Form 6A) (12/07)

In re   **Sylvia Essie Dadzie**                                                              Case No. _____
                                                                        ,
                                        Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Single family home @**<br>**Location: 3695 Secor Ave, Bronx NY 10466**<br>**Appraised value: $320,000, Liquidation value:**<br>**$288,000** | **Fee simple** | - | **288,000.00** | **318,429.00** |
| **Land in Ghana** | **Joint tenants in common** | J | **3,750.00** | **0.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **291,750.00** | (Total of this page) |
| Total > | **291,750.00** |  |

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

Best Case Bankruptcy