IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

CHAPTER 11

_____

CASE NO. 12-12020

IN RE:  RESIDENTIAL CAPITAL, LLC, ET AL

Debtors.

_____

# EXHIBIT "D"

HEARING DATE: Dec. 8, 2011
HEARING TIME:   10:00 A.M.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————
IN RE:  SYLVIA E. DADZIE          CASE NO. 11-10822 SHL


                    Debtor.
————————————————————————

**TO THE HONORABLE SEAN L. LANE**
**UNITED STATES BANKRUPTCY JUDGE:**


**SUPPLEMENT TO DEBTOR'S OBJECTION TO PROOF OF CLAIM #8 FILED**
**BY GMAC MORTGAGE, LLC**


Debtor, SYLVIA E. DADZIE ("Debtor"), by her attorney, David B. Shaev, Esq. of Shaev & Fleischman, LLP, as and for a Supplement to her Objection to Proof of Claim #8 filed by GMAC MORTGAGE, LLC, states as follows:


**PRELIMINARY STATEMENT**


1. The Debtor commenced this action by the filing of a Chapter 7 Petition on February 25, 2011.

2. Proof of Claim #8, a copy of which is annexed hereto as Exh. "A" alleges GMAC Mortgage, LLC as the secured creditor on the premises.

3. By Notice of Motion dated Nov. 2, 2011, Debtor filed an Objection to Proof of Claim # 8, returnable before this Court on December 8, 2011.

4. Upon further examination of the Proof of Claim and exhibits, Debtor herein seeks to Supplement her Objection to Proof of Claim # 8, alleging  overstated escrow charges  in said proof of claim as well as other accounting overcharges to Debtor's loan transaction history.

## **FACTUAL ALLEGATIONS**

5. The second page of Proof of Claim # 8 states:

" **ARREARAGE:**

**Mortgage payment**                                                   **$14,152.49**

**P&I $2054.23 and escrow $470.93  =  $2,525.16**

        **3 Payments**

        **\*\*\***

**P&I $2054.23 and escrow $452.06 = $2506.29**

        **Escrow Shortage**                                   **$1,915.11"**

Therefore, the creditor is charging :

| | |
|---|---|
| 1 Escrow incl. in payment @$470.93 | **$  470.93** |
| 3 Escrow incl. in payment @ $452.06 | **$1,356.18** |
| Escrow Shortage on POC | **$1,915.11** |
| **TOTAL ESCROW SHORTAGE ON POC:** | **$3,742.22** |

6. Page 9 of GMAC's Response to Qualifed Written Request ("QWR"), dated August 22,  2011 and annexed  hereto as Exh. "B"  (Exh. "D" to Objection) states that the Escrow Shortage as of 2/25/11 (date of filing of the bankruptcy petition), as follows:

                                            **$2,984.79.**

Therefore,  the Proof of Claim # 8 overcharges Debtor for escrow shortage as follows:

Shortage on POC:                    $3,742.22
Actual Escrow Shortage 2/25/11      -$2984.70
**Amount of Escrow Overstated on POC:    $757.43.**

7.  In addition to the escrow overcharges on the Proof of Claim, it is apparent
    that this Debtor is being charged post petition legal or other fees which have
    not been authorized by this Court, as follows:

    a.  Page 10 of Response to QWR:

        **"5/13/11        $42.00   Espense Advances "**

    b.  Page 12 of Response to QWR:

        **"7/28/11        $150.00 Expense Advances"**

        **"8/10/11         $150.00 Expense Advances"**

        **"8/17/11        $150.00 Expense Advances**" (apparently a

    removal of an expense)

        **"8/18/11         $500.00  Expense Advances"**

8.  It is believed that the above charges are legal fees charged to Debtor's
    account, **totaling $692, post petition**. Although these fees do not appear
    on Proof of Claim # 8, it is likely that creditor will seek payment of these fees
    sometime before the loan is satisfied.

9. Although such overcharges may be "minor" to the creditor, they are certainly not minor to a Debtor struggling to maintain her home, especially considering the interest and penalties that would be associated with such charges during the life of the loan.

**WHEREFORE**, Debtor respectfully prays of the Court as follows:

A. That Proof of Claim 8 be expunged/disallowed;

B. That Debtor have and recover against GMAC all reasonable legal fees and expenses incurred by her attorney;

C. That any claim allowed on behalf of GMAC or Fannie Mae in this case, be subject to ***equitable subordination*** reducing said claim in a sum equal to the costs and expenses of any litigation brought about by reason of the Motion to Lift Stay, Objection to Claim and Proof of Claim # 8 filed in this case; and

D. For such other and further relief as this Court may deem just and proper.

DATED:  November 14 , 2011
        New York, NY

/s/David B. Shaev
_____
DAVID B. SHAEV, ESQ.
Shaev & Fleischman, LLP
Attorney for Debtor
350 Fifth Avenue, Suite 7210
New York, New York 10118

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---
---

## CASE NO. 11-10822 SHL

IN RE: SYLVIA ESSIE DADZIE
ssn: ***-**-5360

Debtor.

---
---

**SUPPLEMENT TO DEBTOR'S OBJECTION TO PROOF OF CLAIM #8 FILED BY GMAC MORTGAGE, LLC**

---
---

SHAEV & FLEISCHMAN
ATTORNEY FOR DEBTOR
350 FIFTH AVENUE
SUITE 7210
NEW YORK, NEW YORK 10118
TELEPHONE NO.  (646) 722-8649
TELECOPIER NO. (646) 349-7622

---
---

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

IN RE:  SYLVIA ESSIE DADZIE                    CASE NO: 11-10822 SHL

             Debtor.

_____


# EXHIBIT "A"


          DAVID B. SHAEV (dbs6994)
          Shaev & Fleischman, LLP
          Counsel for Debtor
          350 Fifth Avenue
          Suite 7210
          New York, New York 10118
          (646) 722-8649 Tel. No.
          (646) 349-7622 Fax No.

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT  Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Sylvia Essie Dadzie | Case Number:<br>11-10822 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>GMAC Mortgage, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>GMAC Mortgage, LLC – Attn: Bankruptcy Department<br>1100 Virginia Drive<br>Fort Washington, PA 19034<br><br>Telephone number: | **Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>GMAC Mortgage, LLC – Attn: Payment Processing<br>3451 Hammond Ave.<br>Waterloo, IA 50702<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**          $                323,407.06<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**  MONEY LOANED<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:**  8590<br><br>**3a. Debtor may have scheduled account as:** _____<br>(See instruction #3a on reverse side.) | |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:** ☑ Real Estate   ☐ Motor Vehicle   ☐ Other<br>**Describe:** 3695 Secor Ave., Bronx, NY 10466<br><br>**Value of Property:**$_____ **Annual Interest Rate** 6.500 %<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>if any: $  17,259.33   **Basis for perfection:** Mortgage<br><br>**Amount of Secured Claim:** $  323,407.06  **Amount Unsecured:** $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>08/05/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>David A. Haefner, Esq.<br>Steven J. Baum, P.C. as attorney for Creditor | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Sylvia Essie Dadzie
Case No.       11-10822
Loan No.       ******8590

**Arrearage:**

| | | |
|---|---|---|
| Mortgage Payments | 14,152.49 | |
| 2  Payments at $2054.  (09/10-10/1/10) | | |
| P&I $ 2054.23  and escrow $0.00  = $2054.23 | | |
| 1  Payments at $2525.  (11/10) | | |
| P&I $ 2054.23  and escrow $470.93  = $2525.16 | | |
| 3  Payments at $2506.  (12/10-2/10) | | |
| P&I $ 2054.23  and escrow $452.06  = $2506.29 | | |
| Escrow Shortage | 1,915.11 | |
| Foreclosure Attorney Fees | 600.00 | |
|    Foreclosure Fees | | 600.00 |
| Foreclosure Attorney Costs | 275.00 | |
|    Title Search | | 275.00 |
| Property Inspections | 70.25 | |
|    $ 16.50   assessed on 10/25/2010 | | |
|    $ 14.75   assessed on 11/24/2010 | | |
|    $ 16.50   assessed on 12/27/2010 | | |
|    $ 11.25   assessed on 01/21/2011 | | |
|    $ 11.25   assessed on 02/24/2011 | | |
| Accrued Late Fees | 246.48 | |
| | | |
| TOTAL | $    17,259.33 | |

**Total Debt:**

| | | |
|---|---:|---:|
| Principal Balance as of filing (2/25/2011) | $ 308,359.63 | |
| Interest | 10,113.54 | |
| Escrow Advance | 3,742.16 | |
| Foreclosure Attorney Fees | 600.00 | |
|     Foreclosure Fees | | 600.00 |
| Foreclosure Attorney Costs | 275.00 | |
|     Title Search | | 275.00 |
| Property Inspections | 70.25 | |
|     $ 16.50   assessed on 10/25/2010 | | |
|     $ 14.75   assessed on 11/24/2010 | | |
|     $ 16.50   assessed on 12/27/2010 | | |
|     $ 11.25   assessed on 01/21/2011 | | |
|     $ 11.25   assessed on 02/24/2011 | | |
| Accrued Late Fees | 246.48 | |
| | | |
| TOTAL | $ 323,407.06 | |

\*\*\*This proof of claim is filed without waiving any and all rights the
  Secured Creditor may have under 11 U.S.C. Section 362, if applicable.

\*\*\*Post Petition Payment $2305.78, effective 3/1/11
  (Principal and Interest) $2054.23 + (Escrow) $251.55

# ESCROW ANALYSIS TO REPRESENT PRE-PETITION SHORTAGE

REPRESENTATION OF PRINTED DOCUMENT

## GMAC Mortgage

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: ▮▮▮▮▮▮

PROPERTY ADDRESS:
3695 SECOR AVE
BRONX NY 10466

ANALYSIS DATE: JUNE 17, 2011

47041-0000267-001
SYLVIA E DADZIE
3695 SECOR AVE
BRONX NY  10466-5914

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section I:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | APRIL 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JULY 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | OCTOBER 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JANUARY 2012 | 757.37 | 733.67 |
| | TOTAL ANNUAL DISBURSEMENTS: | 3,029.48 | 2,934.68 |
| | TOTAL ESCROW PAYMENT: | 252.45 | 244.55 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $1,915.11, your new total payment will automatically be adjusted to $2,306.68 effective with your MARCH 01, 2011 payment. If you do not pay the shortage, your total payment effective MARCH 01, 2011 will be $2,466.27.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 252.45 | 244.55 |
| Surplus/Shortage | 159.59 | 207.51 |
| Escrow Shortage Spread 12 Months | | |
| Total | 412.04 | 452.06 |
| Principal/Interest | 2,054.23 | 2,054.23 |
| Total Payment | 2,466.27 | 2,506.29 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) IN PRIOR ANALYSIS columns listed above.

680-0680-1200F

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.**

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT

## GMAC Mortgage

**THIS IS NOT A CHECK**
NOTE   you must use this address when remitting your escrow shortage payment

| Account Number | Shortage Amount |
|---|---|
| ▮▮▮▮▮▮ | 1,915.11 |

| Total Amount Enclosed $ | |
|---|---|

SYLVIA E DADZIE

If you pay the escrow shortage amount of $1,915.11, your new payment will be automatically adjusted to $2,306.68 effective with your MARCH 01, 2011 payment.

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ 85062 9162

By sending your check, please be aware that you are authorizing us to use information on your check to make a one time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

C16368

ANALYSIS TYPE: 1/6 AGGREGATE                         ACCOUNT NUMBER: ▓▓▓▓▓▓
PROJECTED ESCROW BALANCE AS OF: FEBRUARY 28, 2011      -1,157.68 *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED BALANCE | | | 1,157.68- | 757.43 |
| 03/01/11 | 252.45 | .00 | 905.23- | 1,009.88 |
| 04/01/11 | 252.45 | 757.37- | 1,410.15- | 504.96 |
| 05/01/11 | 252.45 | .00 | 1,157.70- | 757.41 |
| 06/01/11 | 252.45 | .00 | 905.25- | 1,009.86 |
| 07/01/11 | 252.45 | 757.37- | 1,410.17- | 504.84 |
| 08/01/11 | 252.45 | .00 | 1,157.72- | 757.39 |
| 09/01/11 | 252.45 | .00 | 905.27- | 1,009.84 |
| 10/01/11 | 252.45 | 757.37- | 1,410.19- | 504.82 |
| 11/01/11 | 252.45 | .00 | 1,157.74- | 757.37 |
| 12/01/11 | 252.45 | .00 | 905.29- | 1,009.82 |
| 01/01/12 | 252.45 | 757.37- | 1,410.21- | 504.90 L |
| 02/01/12 | 252.45 | .00 | 1,157.76- | 757.35 |

Current Escrow Balance:  3,742.16-

| Esc Rcpts to Eff Dt | | Esc Disb Prior to Eff Dt | |
|---|---|---|---|
| Due Dt | Due Amt | Disb Date | Disb Amt |
| 09/10 | .00 | | |
| 10/10 | .00 | | |
| 11/10 | 1,827.11 * | | |

*Indicates Sum of Remaining Escrow Payments
A/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW-POINT FOR ANALYSIS PERIOD:
-1,410.21

MAXIMUM PERMITTED LOW-POINT  (EXCLUDING MIP)
504.90

Section 3:  ➡  | SHORTAGE | 1,915.11 |

ESCROW ACCOUNT ACTIVITY (DECEMBER 01, 2010 - FEBRUARY 28, 2011)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| BEGINNING BALANCE | | | 733.73 | | | 2,227.42- |
| 12/01/10 | PAYMENT | 244.55 | 978.28 | CITY/TOWNSHIP | 757.37- | 2,984.79- |
| 01/01/11 | PAYMENT | 244.55 | 489.16 | | .00 | 2,984.79- |
| 01/01/11 | CITY/TOWNSHIP | 733.87- | 489.16 | | .00 | 2,984.79- |
| 02/01/11 | PAYMENT | 244.55 | 733.71 | | .00 | 2,984.79- |

ESCROW ANALYSIS TO REPRESENT POST-PETITION
PAYMENTS

## GMAC Mortgage

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

**Important Note:** In accordance with RESPA
requirements, this notice is being sent as a
result of the review completed on your escrow
account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER:

PROPERTY ADDRESS:
3695 SECOR AVE
BRONX NY 10466

ANALYSIS DATE: JUNE 28, 2011

47069-0000079-001
SYLVIA E DADZIE
3695 SECOR AVE
BRONX NY  10466-5914

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | APRIL 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JULY 2011 | 746.56 | 733.67 |
| CITY/TOWNSHIP | OCTOBER 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JANUARY 2012 | 757.37 | 733.67 |
| | TOTAL ANNUAL DISBURSEMENTS: | 3,018.67 | 2,934.68 |
| | TOTAL ESCROW PAYMENT: | 251.55 | 244.55 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

| | | | |
|---|---|---|---|
| New Payment Amount: | | | 2,305.78 |
| New Payment Effective: | | | MARCH 01, 2011 |
| Next Scheduled Analysis: | | | MARCH 01, 2012 |
| Payment change: | | New | Prior Analysis |
| Escrow | | 251.55 | 244.55 |
| Surplus/Shortage | | 0.00 | 207.51 |
| Total | | 251.55 | 452.06 |
| Principal/Interest | | 2,054.23 | 2,054.23 |
| Total Payment | | 2,305.78 | 2,506.29 |

For details about the difference between the old and new payment amounts, please reference the ESTIMATED
AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.**

If you are utilizing a military allotment, or third-party company to make payments on your behalf,
please notify your service of any payment changes.

## GMAC Mortgage

You will receive the escrow analysis surplus check in the amount
of      $.06 under separate cover; provided your account is
contractually current as of the date the analysis was completed.

C19096

Section 2:

REPRESENTATION OF PRINTED DOCUMENT

ANALYSIS TYPE: 1/6 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: FEBRUARY 28, 2011

ACCOUNT NUMBER:
2,672.54 *

\* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| Current Escrow Balance: 4,488.72- | | | |
|---|---|---|---|
| Esc Rcpts to Eff Dt | | Esc Disb Prior to Eff Dt | |
| Due Dt | Due Amt | Disb Date | Disb Amt |
| 10/10 | .00 | | |
| 11/10 | 470.93 | | |
| 12/10 | 1,356.18 * | | |

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED BALANCE | | | 757.43 | 757.37 |
| POC SHTG | 1,915.11 | | 2,672.54 | |
| 03/01/11 | 251.55 | .00 | 2,924.09 | 1,008.92 |
| 04/01/11 | 251.55 | 757.37- | 2,418.27 | 503.10 L |
| 05/01/11 | 251.55 | .00 | 2,669.82 | 754.65 |
| 06/01/11 | 251.55 | .00 | 2,921.37 | 1,006.20 |
| 07/01/11 | 251.55 | 746.56- | 2,426.36 | 511.19 |
| 08/01/11 | 251.55 | .00 | 2,677.91 | 762.74 |
| 09/01/11 | 251.55 | .00 | 2,929.46 | 1,014.29 |
| 10/01/11 | 251.55 | 757.37- | 2,423.64 | 508.47 |
| 11/01/11 | 251.55 | .00 | 2,675.19 | 760.02 |
| 12/01/11 | 251.55 | .00 | 2,926.74 | 1,011.57 |
| 01/01/12 | 251.55 | 757.37- | 2,420.92 | 505.75 |
| 02/01/12 | 251.55 | .00 | 2,672.47 | 757.30 |

\*Indicates Sum of Remaining Escrow Payments &/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
2,418.27

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
503.10

Section 3:

| SURPLUS | 0.06 |
|---|---|

ESCROW ACCOUNT ACTIVITY (DECEMBER 01, 2010 - FEBRUARY 28, 2011)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| BEGINNING BALANCE | | | 733.73 | | | 2,227.42- |
| 12/01/10 | PAYMENT | 244.55 | 978.28 | CITY/TOWNSHIP | 757.37- | 2,984.79- |
| 01/01/11 | PAYMENT | 244.55 | 489.16 | | .00 | 2,984.79- |
| 01/01/11 | CITY/TOWNSHIP | 733.87- | 489.16 | | .00 | 2,984.79- |
| 02/01/11 | PAYMENT | 244.55 | 733.71 | | .00 | 2,984.79- |

# NOTE

June 28, 2006                              Bronx                              New York
  [Date]                                   [City]                               [State]

3695 Secor Ave
Bronx, NY  10466
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 325,000.00       (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is Advanced Financial Services, Inc.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st      day of each month beginning on August 1, 2006        . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on July 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 25 Enterprise Center, Newport, RI  02842
                                            or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 2,054.23        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

**NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(NY) (0006)                    Form 3233 1/01
   VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



-5N(NY) (0001)                                    Page 2 of 3

Form 3233    1/01
Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Sylvia E Dadzie              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse             _____ (Seal)          _____ (Seal)
                             -Borrower                                        -Borrower

Joanne Wight, Vice President
Acting Agent for GMAC Bank                          *[Sign Original Only]*

-5N(NY) (0005)                    Page 3 of 3

PAY TO THE ORDER OF ▓▓▓▓▓
WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION          Form 3233 1/01

J. Vollmer
Limited Signing Officer

Pay to the order of
GMAC BANK
Without recourse
Advanced Financial Services, Inc.
Brian R. Gilpin
Assistant Vice President



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2006070300222002002EC09A

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 19 |
|---|---|---|
| **Document ID:** 2006070300222002 | Document Date: 06-28-2006 | Preparation Date: 07-03-2006 |

Document Type: MORTGAGE
Document Page Count: 18

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 4943 | 54 | Entire Lot | 3695 SECOR |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ____ Page _____ *or* File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 127.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | |
| MTA: | $ | 945.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 6,632.50 | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      07-19-2006 10:12
City Register File No.(CRFN):
         2006000408948

*City Register Official Signature*



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

20060703000222002002EC09A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 19 |
|---|---|

| | | |
|---|---|---|
| Document ID: 2006070300222002 | Document Date: 06-28-2006 | Preparation Date: 07-03-2006 |
| Document Type: MORTGAGE | | |
| Document Page Count: 18 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 4943 | 54 | Entire Lot | 3695 SECOR |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page_____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 325,000.00 | Recording Fee: $ | 127.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | | |
| MTA: | $ | 945.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,632.50 | | |

Dadzie    GMAC    8/25

Return To:
Advanced Financial Services,
Inc.
25 Enterprise Center Newport.
RI  02842

Prepared By:
Tara A. Thomas

Return to:
Equity National Title Insurance Company
401 Wampanoag Trail, Suite 300
East Providence, RI 02915

CE 3369

─────────── [Space Above This Line For Recording Data] ───────────

# MORTGAGE MIN 100049700007369867

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated June 28, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Sylvia E Dadzie

whose address is 3695 Secor Ave, Bronx, NY 10466

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender." Advanced Financial Services, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
                                              . Lender's address is 25 Enterprise Center.
Newport, RI  02842

Section:          Block:          Lot:          Unit:

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

VMP®-6A(NY) (0608).01
Page 1 of 17          Initials:
        VMP Mortgage Solutions, Inc.

(E) "Note." The note signed by Borrower and dated June 28, 2006           , will be called the "Note." The Note shows that I owe Lender three hundred twenty-five thousand and 00/100

Dollars (U.S. $325,000.00                  )

plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by July 1, 2036

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

-6A(NY) (0508).01          Page 2 of 17          Initials:          Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 3695 Secor Ave

[Street]

Bronx                     [City, Town or Village], New York 10466        [Zip Code].
This Property is in Bronx                                         County. It has the following legal
description: See Attached Exhibit A

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

 

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.



-6A(NY) (0608).01                    Page 4 of 17        Initials: [signature]        Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.



-6A(NY) (0508).01          Page 5 of 17          Initials: SD          Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

-6A(NY) (0808).01                    Page 6 of 17                    Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.


-6A(NY) (0508).01                    Page 8 of 17              Initials:____              Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

 -6A(NY) (0508).01                    Page 10 of 17           Initials:                     Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to



VMP-6A(NY) (0508).01                    Page 11 of 17                    Initials:                    Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6A(NY) (0508).01                    Page 12 of 17                    Initials:                    Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If



-6A(NY) (0808).01                     Page 13 of 17         Initials                 Form 3033 1/01

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another





Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.



-6A(NY) 008(08).01                    Page 16 of 17          Initials:         Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1
through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                          Sylvia E Qadzie           -Borrower

_____          _____(Seal)
                                                                    -Borrower

_____(Seal)             _____(Seal)
                       -Borrower                                    -Borrower

_____(Seal)             _____(Seal)
                       -Borrower                                    -Borrower

_____(Seal)             _____(Seal)
                       -Borrower                                    -Borrower

-6A(NY) (0505).01          Page 16 of 17                Form 3033 1/01

STATE OF NEW YORK, Bronx                    County ss:

On the 28th        day of June, 2006          before me, the undersigned, a notary
public in and for said state, personally appeared Sylvia E Dadzie

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

R. SCOTT LAFAZIA
Notary Public State of New York
No. 02LA5049900
Qualified in Richmond County
Commission Expires 9/25/09



VMP-6A(NY) (0809).01                Page 17 of 17                    Form 3033 1/01

3695 Secor Avenue
Bronx, New York 10466
Sylvia Dadzie

## EXHIBIT A

All that certain plat, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

Beginning at a point in the westerly side of Secor Avenue, distant 60 feet southerly from its intersection with the southerly side of Connor Street; running thence westerly parallel with the southerly side of Conner Street, 95.21 feet to the center line of the block; thence southerly parallel with westerly side of Secor Avenue, 30 feet; thence easterly parallel with the southerly side of Connor Street, 95.21 feet to the westerly side of Secor Avenue; and thence northerly along the westerly side of Secor Avenue, 30 feet to the point or place of beginning.

All the real property has been or will be improved by a one or two family residence only.

Block 4943  Lot 54

For title reference see Deed recorded herewith;

## ASSIGNMENT OF MORTGAGE

Original Lender: Advanced Financial Services, Inc.

Know that,

Mortgage Electronic Registration Systems, Inc. as nominee for Advanced Financial Services, Inc. its successors and assigns, 1901 E. Voorhees Street Suite C, Danville, IL 61834, assignor,

in consideration of the sum of One and No/100th Dollars and other good valuable consideration dollars, paid by

GMAC Mortgage, LLC, 1100 Virginia Drive, Ft. Washington, PA 19034, assignee

hereby assigns unto the assignee, a certain mortgage made by SYLVIA E. DADZIE, given to secure payment of the sum of Three hundred and twenty five thousand dollars ($325,000.00) and interest, dated the 28th day of June, 2006, recorded on the 19th day of July, 2006, in the office of the City Register of the City of New York, at Instrument No. 2006000408948,

covering premises 3695 SECOR AVENUE, BRONX, NY 10466, Bronx County, SBL #Block 4943 Lot 54,

together with the Assignor's beneficial interest under the Mortgage, and the moneys due and to grow due thereon with the interest,

This said mortgage has not been otherwise assigned of record.

*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

*IN WITNESS WHEREOF,* the Assignor has caused these presents to be signed by its duly authorized officer this
14 day of April, 20 11.

*IN PRESENCE OF*

Mortgage Electronic Registration Systems, Inc. as nominee for Advanced Financial Services, Inc. its successors and assigns

BY: _____
Name: E'vette Arrington
Title: Assistant Secretary

State of Pennsylvania
County of Montgomery    ss:
On the 14 day of April in the year 2011 before me, the undersigned, a notary public in and for said state, personally appeared **E'vette Arrington**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Ft Washington, PA _____ *(Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)*

_____
Notary Public

```
NOTARIAL SEAL
ZAHIRAH Y SWEET
Notary Public
UPPER DUBLIN TWP, MONTGOMERY CNTY
My Commission Expires Mar 7, 2013
```

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

IN RE:  SYLVIA ESSIE DADZIE                    CASE NO: 11-10822 SHL

             Debtor.

_____


# EXHIBIT "B"


DAVID B. SHAEV (dbs6994)
Shaev & Fleischman, LLP
Counsel for Debtor
350 Fifth Avenue
Suite 7210
New York, New York 10118
(646) 722-8649 Tel. No.
(646) 349-7622 Fax No.

18

# GMAC Mortgage

August 22, 2011


Shaev & Fleishman LLP
Attn: David B Shaev Esq
350 Fifth Ave Ste 7210
New York NY 10118-7210


RE:     Account Number        0601648590
        Mortgagor             Sylvia E Dadzie
        Property Address      3695 Secor Ave
                              Bronx NY  10466


Dear David B Shaev:

Please be advised that this letter serves as our response to a Qualified Written Request
("QWR") for information regarding the above-referenced GMAC Mortgage account
dated August 12, 2011 and received in our office on August 18, 2011.  In the
correspondence, you requests detailed information and documentation regarding nearly
every aspect of the mortgage loan transaction, beginning with its origination.

In response to the inquiry, GMAC Mortgage has enclosed a copy of the account's
payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because the letter appears to be questioning nearly every aspect of the loan transaction, it
is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding
the servicing of the account.  Nevertheless, in an effort to be responsive to your request,
copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Mortgage/Deed of Trust
- HUD-I Settlement Statement
- Escrow Analysis Statements

The following responses are in the same order as your inquiry.

# GMAC Mortgage

August 22, 2011
Account Number 0601648590
Page Two

1-3. The current master servicer is Fannie Mae. The current owner of your loan is Fannie Mae, 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, phone number 1-800-732-6643. However, GMAC Mortgage, LLC is currently servicing your account, and all inquiries should be directed to our office.

4-7 See enclosed Note. The loan is registered with MERS, MIN #100049700007369867. Assignments are not required.

If after reviewing this information, you have any specific questions or concerns regarding the mortgage loan servicing of this account, please contact GMAC Mortgage Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

DV

GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780


SYLVIA E DADZIE
3695 SECOR AVE
BRONX                    NY 10466

                              LOAN TYPE 1-0  CONVENTIONAL
                              ACCOUNT NUM  601648590


                         2006 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 2054.23 | 09/06 | 08/28 | 295.40 | 1758.83 | | | | 324,410.79 | | |
| PAYMENT | 2054.23 | 10/06 | 09/27 | 297.00 | 1757.23 | | | | 324,113.79 | | |
| PAYMENT | 2054.23 | 11/06 | 10/27 | 298.61 | 1755.62 | | | | 323,815.18 | | |
| PAYMENT | 2054.23 | 12/06 | 11/30 | 300.23 | 1754.00 | | | | 323,514.95 | | |
| PAYMENT | 2054.23 | 01/07 | 12/28 | 301.86 | 1752.37 | | | | 323,213.09 | | |

        SUMMARY TOTALS

PRINCIPAL BALANCE START OF PERIOD    324,706.19      P & I PAYMENT     2,054.23
PRINCIPAL PAID DURING PERIOD           1,493.10
PRINCIPAL BALANCE END OF PERIOD      323,213.09

ESCROW    BALANCE START OF PERIOD        0.00      TOTAL PAYMENT     2,054.23
ESCROW    PAID DURING PERIOD             0.00
ESCROW    DISBURSEMENTS                  0.00
ESCROW    BALANCE END OF PERIOD          0.00

REFUND    OF OVERPAID INTEREST           0.00
INTEREST  REPORTABLE  DURING PERIOD   8778.05
PROPERTY  TAXES PAID DURING PERIOD       0.00
POINTS PAID                              0.00

Entity002Org00000

2007 HISTORY STATEMENT OF MORTGAGE ACCOUNT

GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780


SYLVIA E DADZIE
3695 SECOR AVE
BRONX                    NY 10466

LOAN TYPE 1-0  CONVENTIONAL
ACCOUNT NUM  601648590


2007 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 2054.23 | 02/07 | 01/31 | 303.49 | 1750.74 | | | | 322,909.60 | | |
| PAYMENT | 2054.23 | 03/07 | 03/01 | 305.14 | 1749.09 | | | | 322,604.46 | | |
| PAYMENT | 2054.23 | 04/07 | 03/29 | 306.79 | 1747.44 | | | | 322,297.67 | | |
| PAYMENT | 2054.23 | 05/07 | 04/27 | 308.45 | 1745.78 | | | | 321,989.22 | | |
| PAYMENT | 2054.23 | 06/07 | 05/31 | 310.12 | 1744.11 | | | | 321,679.10 | | |
| PAYMENT | 2054.23 | 07/07 | 06/28 | 311.80 | 1742.43 | | | | 321,367.30 | | |
| PAYMENT | 2054.23 | 08/07 | 07/27 | 313.49 | 1740.74 | | | | 321,053.81 | | |
| PAYMENT | 2054.23 | 09/07 | 09/03 | 315.19 | 1739.04 | | | | 320,738.62 | | |
| PAYMENT | 2054.23 | 10/07 | 10/01 | 316.90 | 1737.33 | | | | 320,421.72 | | |
| PAYMENT | 2054.23 | 11/07 | 11/01 | 318.61 | 1735.62 | | | | 320,103.11 | | |
| PAYMENT | 2054.23 | 12/07 | 12/04 | 320.34 | 1733.89 | | | | 319,782.77 | | |

SUMMARY TOTALS

PRINCIPAL BALANCE START OF PERIOD      323,213.09        P & I PAYMENT      2,054.23
PRINCIPAL PAID DURING PERIOD             3,430.32
PRINCIPAL BALANCE END OF PERIOD        319,782.77

ESCROW    BALANCE START OF PERIOD            0.00        TOTAL PAYMENT      2,054.23
ESCROW    PAID DURING PERIOD                 0.00
ESCROW    DISBURSEMENTS                      0.00
ESCROW    BALANCE END OF PERIOD              0.00

REFUND    OF OVERPAID INTEREST               0.00
INTEREST  REPORTABLE  DURING PERIOD      19166.21
PROPERTY  TAXES PAID DURING PERIOD          0.00
POINTS PAID                                 0.00

Entity0020rg00000

GMAC MORTGAGE, LLC
PO BOX 780
WATERLOO, IA 50704-0780

SYLVIA E DADZIE
3695 SECOR AVE
BRONX                    NY 10466

LOAN TYPE 1-0  CONVENTIONAL
ACCOUNT NUM  601648590

2008 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR DISAB | LIFE/ LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 2054.23 | 01/08 | 01/02 | 322.07 | 1732.16 | | | | 319,460.70 | | |
| ADDL PRIN | 25.00 | 02/08 | 02/02 | 323.82 | 1730.41 | | | | 319,136.88 | | |
| ADDL PRIN | 25.00 | 02/08 | 02/02 | 25.00 | | | | | 319,111.88 | | |
| PAYMENT | 2054.23 | 03/08 | 02/29 | 325.71 | 1728.52 | | | | 318,786.17 | | |
| ADDL PRIN | 25.00 | 03/08 | 02/29 | 25.00 | | | | | 318,761.17 | | |
| PAYMENT | 2054.23 | 04/08 | 03/31 | 327.61 | 1726.62 | | | | 318,433.56 | | |
| ADDL PRIN | 25.00 | 04/08 | 03/31 | 25.00 | | | | | 318,408.56 | | |
| PAYMENT | 2054.23 | 05/08 | 05/01 | 329.52 | 1724.71 | | | | 318,079.04 | | |
| ADDL PRIN | 25.00 | 05/08 | 05/01 | 25.00 | | | | | 318,054.04 | | |
| PAYMENT | 2054.23 | 06/08 | 05/30 | 331.44 | 1722.79 | | | | 317,722.60 | | |
| ADDL PRIN | 25.00 | 06/08 | 05/30 | 25.00 | | | | | 317,697.60 | | |
| PAYMENT | 2054.23 | 07/08 | 07/03 | 333.37 | 1720.86 | | | | 317,364.23 | | |
| ADDL PRIN | 25.00 | 07/08 | 07/03 | 25.00 | | | | | 317,339.23 | | |
| PAYMENT | 2054.23 | 08/08 | 07/31 | 335.31 | 1718.92 | | | | 317,003.92 | | |
| PAYMENT | 2054.23 | 09/08 | 09/01 | 337.13 | 1717.10 | | | | 316,666.79 | | |
| ADDL PRIN | 25.31 | 09/08 | 09/01 | 25.31 | | | | | 316,641.48 | | |
| PAYMENT | 2054.23 | 10/08 | 10/15 | 339.09 | 1715.14 | | | | 316,302.39 | | |
| SPEEDPAY FEE | 7.50 | 10/08 | 10/15 | | | | | 7.50 | 316,302.39 | | |
| SPEEDPAY FEE | 7.50 | 10/08 | 10/15 | | | | | 7.50 | 316,302.39 | | |
| PAYMENT | 2054.23 | 11/08 | 11/15 | 340.93 | 1713.30 | | | | 315,961.46 | | |
| PAYMENT | 2054.23 | 12/08 | 12/15 | 342.77 | 1711.46 | | | | 315,618.69 | | |
| SPEEDPAY FEE | 7.50 | 12/08 | 12/15 | | | | | 7.50 | 315,618.69 | | |
| SPEEDPAY FEE | 7.50 | 12/08 | 12/15 | | | | | 7.50 | 315,618.69 | | |

SUMMARY TOTALS

| | | | | |
|---|---|---|---|---|
| PRINCIPAL | BALANCE START OF PERIOD | 319,782.77 | P & I PAYMENT | 2,054.23 |
| PRINCIPAL | PAID DURING PERIOD | 4,164.08 | | |
| PRINCIPAL | BALANCE END OF PERIOD | 315,618.69 | | |
| ESCROW | BALANCE START OF PERIOD | 0.00 | TOTAL PAYMENT | 2,054.23 |
| ESCROW | PAID DURING PERIOD | 0.00 | | |
| ESCROW | DISBURSEMENTS | 0.00 | | |
| ESCROW | BALANCE END OF PERIOD | 0.00 | | |
| REFUND | OF OVERPAID INTEREST | 0.00 | | |
| INTEREST | REPORTABLE DURING PERIOD | 20661.99 | | |
| PROPERTY | TAXES PAID DURING PERIOD | 0.00 | | |
| POINTS PAID | | 0.00 | | |

Entity002Org00000

```
GMAC Mortgage, LLC                                    PAGE      1
PO Box 780                                            DATE 08/22/11

Waterloo            IA 50704-0780
                                        HISTORY FOR ACCOUNT 601648590


--------- MAIL ------------------ -------- PROPERTY ---------------


   SYLVIA E DADZIE

   3695 SECOR AVE                    3695 SECOR AVE

    BRONX            NY 10466    BRONX            NY 10466

------ DATES ------ ---- CURRENT BALANCES ----- ------- UNCOLLECTED -------
PAID TO   10/01/10  PRINCIPAL      307589.65  LATE CHARGES      -451.88
NEXT DUE  11/01/10  ESCROW          -4488.72  OPTIONAL INS        0.00
LAST PMT  07/16/11  UNAPPLIED FUND   2061.73  INTEREST            0.00
AUDIT DT  08/14/06  UNAPPLIED CODES       *   FEES            -1637.25
                    BUYDOWN  FUND       0.00  ------ YEAR TO DATE -------
   LAST ACTIVITY    BUYDOWN  CODE        .    INTEREST         3338.48
       08/18/11                             TAXES            1503.93
-----------------------------------------------------------------------------


POST  TRN  DUE    TRANSACTION     PRINCIPAL     INTEREST      ESCROW
DATE  CDE  DATE   AMOUNT          PAID          PAID          PAID
------ --- ------ --------------- ------------- ------------- -------------
090108 AP  090108     2054.23      337.13      1717.10          .00
  REF NUMBER    SG0OTVC05BS0 DESC
                    BAL AFTER    316666.79                   00.00
T:00330      K/B:001 OPTIONAL INS BAL    00.00  LATE CHARGE BAL    00.00
090108 CTA 090108      25.31        25.31         .00          .00
                SG0OTVC05BS0
                    BAL AFTER    316641.48                   00.00
T:00330      K/B:001 OPTIONAL INS BAL    00.00  LATE CHARGE BAL    00.00

101508 AP  100108     2054.23      339.09      1715.14          .00
  REF NUMBER    000000000000 DESC
                    BAL AFTER    316302.39                   00.00
T:00607      E/B:001 OPTIONAL INS BAL    00.00  LATE CHARGE BAL    00.00
101508 FB  100108           7.50 171 SPEEDPAY FEE
                SG0P92D5D6VO
T:00607      /B:000


101508 FEA 100108           7.50 171 SPEEDPAY FEE
  REF NUMBER    000000000000 DESC
T:00607      /B:001
111508 AP  110108     2054.23      340.93      1713.30          .00
  REF NUMBER    SG0PGRV30OFQ DESC
                    BAL AFTER    315961.46                   00.00
T:00330      K/B:001 OPTIONAL INS BAL    00.00  LATE CHARGE BAL    00.00


INQ23694
```

```
HISTORY FOR ACCOUNT  601648590                                    PAGE      2
                                                                  DATE 08/22/11


          --------- MAIL -------------------- --------- PROPERTY ----------------

          SYLVIA E DADZIE

          3695 SECOR AVE                       3695 SECOR AVE

           BRONX              NY 10466    BRONX              NY 10466

-----------------------------------------------------------------------------
   POST   TRN  DUE    TRANSACTION    PRINCIPAL    INTEREST      ESCROW
   DATE   CDE  DATE   AMOUNT         PAID         PAID          PAID
   ------ ---  ------ -------------- ------------ ------------- -------------
   121508 AP  120108      2054.23       342.77      1711.46         .00
     REF NUMBER     000000000000 DESC
     LC DATE  121308  BAL AFTER       315618.69                  00.00
   T:00607     E/B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    00.00
   121508 FB  120108          7.50 171 SPEEDPAY FEE
                     SG0POB9LLQU8
     LC DATE  121308
   T:00607     /B:000

   121508 FEA 120108          7.50 171 SPEEDPAY FEE
     REF NUMBER     000000000000 DESC
     LC DATE  121308
   T:00607     /B:001
   011509 AP  010109      2054.23       344.63      1709.60         .00
                     000000000000
                     BAL AFTER       315274.06                  00.00
   T:00607     E/B:001                      00.00                 00.00

   011509 FB  010109          7.50 171 SPEEDPAY FEE
     REF NUMBER     SG0Q08NOGGP0 DESC
   T:00607     /B:000
   011509 FEA 010109          7.50 171 SPEEDPAY FEE
                     000000000000
   T:00607     /B:001
   021609 AP  020109      2054.23       346.50      1707.73         .00
     REF NUMBER     000000000000 DESC
     LC DATE  021409  BAL AFTER       314927.56                  00.00
   T:00607     E/B:001  OPTIONAL INS BAL     00.00 LATE CHARGE BAL    00.00
   021609 FB  020109          7.50 171 SPEEDPAY FEE
     REF NUMBER     SG0Q868H4US0 DESC
     LC DATE  021409
   T:00607     /B:000
   021609 FEA 020109          7.50 171 SPEEDPAY FEE
                     000000000000
     LC DATE  021409
   T:00607     /B:001


     INQ23694
```

HISTORY FOR ACCOUNT   601648590

```
                                              PAGE      3
                                              DATE 08/22/11
```

--------- MAIL -------------------- --------- PROPERTY ----------------

SYLVIA E DADZIE

3695 SECOR AVE                          3695 SECOR AVE

BRONX                    NY 10466    BRONX             NY 10466

------------------------------------------------------------------------------

```
POST  TRN  DUE   TRANSACTION   PRINCIPAL   INTEREST     ESCROW
DATE  CDE  DATE    AMOUNT        PAID        PAID        PAID
------ --- ------ --------------- ------------- ------------- -------------
031609 AP 030109      2054.23      348.37     1705.86         .00
  REF NUMBER   000000000000 DESC
  LC DATE  031409  BAL AFTER    314579.19                   00.00
T:00607     E/B:001                   00.00                 00.00
031609 FB 030109        7.50 171 SPEEDPAY FEE
            SG0QF7HVN2JG
  LC DATE  031409
T:00607      /B:000

031609 FEA 030109       7.50 171 SPEEDPAY FEE
  REF NUMBER   000000000000 DESC
  LC DATE  031409
T:00607      /B:001
041509 AP 040109      2054.23      350.26     1703.97         .00
            000000000000
            BAL AFTER    314228.93                   00.00
T:00607     E/B:001                   00.00                 00.00

041509 FB 040109        7.50 171 SPEEDPAY FEE
  REF NUMBER   SG0QMSU7S32O DESC
T:00607      /B:000
041509 FEA 040109       7.50 171 SPEEDPAY FEE
            000000000000
T:00607      /B:001
051609 AP 050109      2054.23      352.16     1702.07         .00
            000000000000
            BAL AFTER    313876.77                   00.00
T:00607     E/B:001                   00.00                 00.00
051609 FB 050109        7.50 171 SPEEDPAY FEE
  REF NUMBER   SG0QUJVT5GP8 DESC
T:00607      /B:000
051609 FEA 050109       7.50 171 SPEEDPAY FEE
            000000000000
T:00607      /B:001
061509 AP 060109      2054.23      354.06     1700.17         .00
  REF NUMBER   000000000000 DESC
  LC DATE  061309  BAL AFTER    313522.71                   00.00
T:00607     E/B:001 OPTIONAL INS BAL    00.00 LATE CHARGE BAL  00.00
```

INQ23694

```
  HISTORY FOR ACCOUNT   601648590                             PAGE      4
                                                              DATE 08/22/11


       --------- MAIL -------------------- --------- PROPERTY ----------------


       SYLVIA E DADZIE

       3695 SECOR AVE                         3695 SECOR AVE

       BRONX                   NY 10466       BRONX              NY 10466

  ----------------------------------------------------------------------------
   POST  TRN  DUE    TRANSACTION      PRINCIPAL     INTEREST       ESCROW
   DATE  CDE  DATE    AMOUNT          PAID          PAID           PAID
  ------ ---  ------ --------------- ------------- ------------- -------------
  061509 FB  060109           7.50 171 SPEEDPAY FEE
    REF NUMBER    SG0R63PCF5VO DESC
    LC DATE  061309
  T:00607    /B:000
  061509 FEA 060109           7.50 171 SPEEDPAY FEE
                 000000000000
    LC DATE  061309
  T:00607    /B:001

  071609 AP  070109     2054.23        355.98       1698.25          .00
    REF NUMBER    000000000000 DESC
    LC DATE  071509  BAL AFTER       313166.73                      00.00
  T:00607    E/B:001                      00.00                     00.00
  071609 FB  070109           7.50 171 SPEEDPAY FEE
                 SG0RDT5JSK8O
    LC DATE  071509
  T:00607    /B:000

  071609 FEA 070109           7.50 171 SPEEDPAY FEE
    REF NUMBER    000000000000 DESC
    LC DATE  071509
  T:00607    /B:001
  081709 AP  080109     2054.23        357.91       1696.32          .00
                 000000000000
    LC DATE  081509  BAL AFTER       312808.82                      00.00
  T:00607    E/B:001                      00.00                     00.00

  081709 FB  080109           7.50 171 SPEEDPAY FEE
    REF NUMBER    SG0RLUOH2CJ8 DESC
    LC DATE  081509
  T:00607    /B:000
  081709 FEA 080109           7.50 171 SPEEDPAY FEE
                 000000000000
    LC DATE  081509
  T:00607    /B:001


     INQ23694
```

```
HISTORY FOR ACCOUNT   601648590                              PAGE      5
                                                             DATE 08/22/11


         --------- MAIL -------------------- --------- PROPERTY ----------------


      SYLVIA E DADZIE

      3695 SECOR AVE                         3695 SECOR AVE

      BRONX                    NY 10466      BRONX              NY 10466

----------------------------------------------------------------------------
   POST  TRN  DUE     TRANSACTION    PRINCIPAL     INTEREST      ESCROW
   DATE  CDE  DATE    AMOUNT         PAID          PAID          PAID
------ --- ------ --------------- ------------- ------------- -------------
 091509 AP  090109       2054.23      359.85      1694.38          .00
   REF NUMBER   000000000000 DESC
                     BAL AFTER     312448.97                     00.00
 T:00607    E/B:001                    00.00                     00.00
 091509 FB  090109           7.50 171 SPEEDPAY FEE
   REF NUMBER   SG0RTCRATQ58 DESC
 T:00607     /B:000


 091509 FEA 090109           7.50 171 SPEEDPAY FEE
   REF NUMBER   000000000000 DESC
 T:00607     /B:001
 101509 AP  100109       2054.23      361.80      1692.43          .00
                 000000000000
                     BAL AFTER     312087.17                     00.00
 T:00607    E/B:001                    00.00                     00.00


 101509 FB  100109           7.50 171 SPEEDPAY FEE
   REF NUMBER   SG0S4U81RKQ0 DESC
 T:00607     /B:000
 101509 FEA 100109           7.50 171 SPEEDPAY FEE
                 000000000000
 T:00607     /B:001
 111609 AP  110109       2054.23      363.76      1690.47          .00
                 000000000000
   LC DATE  111409  BAL AFTER     311723.41                     00.00
 T:00607    E/B:001                    00.00                     00.00
 111609 FB  110109           7.50 171 SPEEDPAY FEE
   REF NUMBER   SG0SCR0005F8 DESC
   LC DATE  111409
 T:00607     /B:000
 111609 FEA 110109           7.50 171 SPEEDPAY FEE
                 000000000000
   LC DATE  111409
 T:00607     /B:001



     INQ23694
```

```
HISTORY FOR ACCOUNT   601648590                              PAGE      6
                                                            DATE 08/22/11


        --------- MAIL -------------------- --------- PROPERTY ----------------


        SYLVIA E DADZIE

        3695 SECOR AVE                          3695 SECOR AVE

        BRONX              NY 10466      BRONX            NY 10466

--------------------------------------------------------------------------------
  POST   TRN   DUE    TRANSACTION    PRINCIPAL      INTEREST        ESCROW
  DATE   CDE   DATE   AMOUNT         PAID           PAID            PAID
  ------ ---   ------ -------------- ------------- ------------- -------------
  122409 AP  120109      2095.31         365.73        1688.50            .00
    REF NUMBER     000000000000 DESC
                       BAL AFTER        311357.68                       00.00
                       OPT PREMIUMS          .00  LATE CHARGE PYMT      41.08
  T:00607    E/B:001                       00.00                        00.00
  122409 FB  120109           7.50 171 SPEEDPAY FEE
                   SG0SMELCMK8O
  T:00607     /B:000


  122409 FEA 120109           7.50 171 SPEEDPAY FEE
    REF NUMBER     000000000000 DESC
  T:00607     /B:001
  011510 AP  010110      2054.23         367.71        1686.52            .00
                       BAL AFTER        310989.97                       00.00
  T:00607    E/B:001  OPTIONAL INS BAL    00.00  LATE CHARGE BAL        00.00
  011510 FB  010110           7.50 171 SPEEDPAY FEE
    REF NUMBER     SG0SS7OCBVMO DESC
  T:00607     /B:000
  011510 FEA 010110           7.50 171 SPEEDPAY FEE
    REF NUMBER     000000000000 DESC
  T:00607     /B:001
  021610 AP  020110      2054.23         369.70        1684.53            .00
                   000000000000
    LC DATE   021510  BAL AFTER      310620.27                        00.00
  T:00607    E/B:001                       00.00                      00.00


  021610 FB  020110           7.50 171 SPEEDPAY FEE
    REF NUMBER     SG0T477DIPA0 DESC
    LC DATE   021510
  T:00607     /B:000
  021610 FEA 020110           7.50 171 SPEEDPAY FEE
                   000000000000
    LC DATE   021510
  T:00607     /B:001



    INQ23694
```

HISTORY FOR ACCOUNT   601648590

```
--------- MAIL -------------------- --------- PROPERTY ----------------


  SYLVIA E DADZIE

  3695 SECOR AVE                    3695 SECOR AVE

  BRONX               NY 10466   BRONX           NY 10466
```

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|---|---|---|---|---|---|---|
| 031310 | AP | 030110 | 2054.23 | 371.70 | 1682.53 | .00 |

```
  REF NUMBER    000000000000 DESC
                BAL AFTER        310248.57                      00.00
T:00607    E/B:001                    00.00                     00.00
031310 FB  030110            7.50 171 SPEEDPAY FEE
           SG0TAJ1CVLFO
T:00607    /B:000


031310 FEA 030110            7.50 171 SPEEDPAY FEE
  REF NUMBER    000000000000 DESC
T:00607    /B:001
042210 AP  040110    2095.31      373.72     1680.51       .00
  REF NUMBER    000000000000 DESC
                BAL AFTER        309874.85                      00.00
                OPT PREMIUMS           .00 LATE CHARGE PYMT     41.08
T:00607    E/B:001  OPTIONAL INS BAL    00.00 LATE CHARGE BAL    00.00

042210 FB  040110            7.50 171 SPEEDPAY FEE
  REF NUMBER    SG0TKK82K6H0 DESC
T:00607    /B:000
042210 FEA 040110            7.50 171 SPEEDPAY FEE
                000000000000
T:00607    /B:001
051910 AP  050110    2095.31      375.74     1678.49       .00
  REF NUMBER    000000000000 DESC
                BAL AFTER        309499.11                      00.00
                OPT PREMIUMS           .00 LATE CHARGE PYMT     41.08
T:00607    E/B:001  OPTIONAL INS BAL    00.00 LATE CHARGE BAL    00.00
051910 FB  050110            7.50 171 SPEEDPAY FEE
  REF NUMBER    SG0TRGB74SQG DESC
T:00607    /B:000
051910 FEA 050110            7.50 171 SPEEDPAY FEE
                000000000000
T:00607    /B:001
063010 AP  060110    2095.31      377.78     1676.45       .00
  REF NUMBER    000000000000 DESC
                BAL AFTER        309121.33                      00.00
                OPT PREMIUMS           .00 LATE CHARGE PYMT     41.08
T:00607    E/B:001  OPTIONAL INS BAL    00.00 LATE CHARGE BAL    00.00
```

INQ23694

```
HISTORY FOR ACCOUNT   601648590                           PAGE      8
                                                          DATE 08/22/11


      --------- MAIL -------------------- --------- PROPERTY ----------------


      SYLVIA E DADZIE


      3695 SECOR AVE                      3695 SECOR AVE


      BRONX              NY 10466    BRONX              NY 10466


-------------------------------------------------------------------------------
POST  TRN  DUE   TRANSACTION    PRINCIPAL      INTEREST       ESCROW
DATE  CDE  DATE   AMOUNT         PAID          PAID           PAID
------ --- ------ --------------- ------------- ------------- -------------
063010 FB  060110              7.50 171 SPEEDPAY FEE
 REF NUMBER    SG0U61I2S178 DESC
T:00607        /B:000
063010 FEA 060110              7.50 171 SPEEDPAY FEE
               000000000000
T:00607        /B:001
073010 UI  070110           .00          .00          .00          .00
 REF NUMBER    000000000000 DESC
               BAL AFTER       309121.33                     00.00
               OPT PREMIUMS          .00 LATE CHARGE PYMT  -41.08*
T:00607    E/B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -41.08
073010 AP  070110       2054.23      379.82     1674.41          .00
               BAL AFTER       308741.51                     00.00
T:00607    E/B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -41.08
073010 FB  070110              7.50 171 SPEEDPAY FEE
 REF NUMBER    SG0UDESMHK30 DESC
T:00607        /B:000
073010 FEA 070110              7.50 171 SPEEDPAY FEE
               000000000000
T:00607        /B:001
083010 M91 070110    -2227.42  PAYEE = 0003.01000      .00     -2227.42
               BAL AFTER       308741.51                     -2227.42
T:31744        /B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -41.08
083110 UI  080110           .00          .00          .00          .00
 REF NUMBER    000000000000 DESC
               BAL AFTER       308741.51                     -2227.42
               OPT PREMIUMS          .00 LATE CHARGE PYMT  -41.08*
T:00607    E/B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -82.16

083110 AP  080110       2054.23      381.88     1672.35          .00
               BAL AFTER       308359.63                     -2227.42
T:00607    E/B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL    -82.16
083110 FB  080110              7.50 171 SPEEDPAY FEE
 REF NUMBER    SG0ULLO5C070 DESC
T:00607        /B:000
083110 FEA 080110              7.50 171 SPEEDPAY FEE
T:00607        /B:001


      INQ23694
```

HISTORY FOR ACCOUNT   601648590

--------- MAIL -------------------- --------- PROPERTY ----------------

SYLVIA E DADZIE

3695 SECOR AVE                          3695 SECOR AVE

BRONX                  NY 10466   BRONX              NY 10466

---------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|---|---|---|---|---|---|---|
| 102510 | FB | 080110 | 16.50  11 PROP INSPECTION FEE | | | |
| T:32506 | | /B:001 | | | | |
| 112410 | FB | 080110 | 14.75  11 PROP INSPECTION FEE | | | |
| T:32506 | | /B:001 | | | | |
| 120610 | E91 | 080110 | -757.37  PAYEE = 0003.01000 | | .00 | -757.37 |
| | | | BAL AFTER         308359.63 | | | -2984.79 |
| T:32687 | | /B:001 | | 00.00 | | -82.16 |
| | | | | | | |
| 122710 | FB | 080110 | 16.50  11 PROP INSPECTION FEE | | | |
| T:32506 | | /B:001 | | | | |
| )12111 | FB | 080110 | 11.25  11 PROP INSPECTION FEE | | | |
| T:32506 | | /B:001 | | | | |
| )12511 | RT | 080110 | 2984.79 | .00 | .00 | 2984.79 |
| LC DATE | | 080110 BAL AFTER         308359.63 | | | 00.00 |
| T:25102 | | /B:000 | | 00.00 | | -82.16 |
| )12511 | ITR | 080110 | OLD INV 10025 27149 P-BAL   308359.63 INT | | | .00 |
| | | | NEW INV 10023   291  PERCENT OWNED  .0000 | ACTION CD 000 | | |
| | | | BAL AFTER         308359.63 | | | 00.00 |
| T:25102 | | /B:000 | | 00.00 | | -82.16 |
| )12511 | PT | 080110 | -2984.79 | .00 | .00 | -2984.79 |
| LC DATE | | 080110 BAL AFTER         308359.63 | | | -2984.79 |
| T:25102 | | /B:000 | | 00.00 | | -82.16 |
| | | | | | | |
| )22411 | FB | 080110 | 11.25  11 PROP INSPECTION FEE | | | |
| T:32506 | | /B:001 | | | | |
| )30311 | FB | 080110 | 600.00  40 EXPENSE ADVANCES | | | |
| T:32551 | | /B:000 | | | | |
| )30311 | FB | 080110 | 275.00  40 EXPENSE ADVANCES | | | |
| T:32551 | | /B:000 | | | | |
| )30811 | E91 | 080110 | -757.37  PAYEE = 0003.01000 | | .00 | -757.37 |
| | | | BAL AFTER         308359.63 | | | -3742.16 |
| T:32687 | | /B:001 OPTIONAL INS BAL     00.00 LATE CHARGE BAL   -82.16 | | | |

INQ23694

```
                                                          PAGE     10
HISTORY FOR ACCOUNT   601648590                          DATE 08/22/11


        --------- MAIL -------------------- --------- PROPERTY ----------------


        SYLVIA E DADZIE

        3695 SECOR AVE                        3695 SECOR AVE

        BRONX                 NY 10466    BRONX            NY 10466


--------------------------------------------------------------------------
POST  TRN  DUE     TRANSACTION   PRINCIPAL    INTEREST      ESCROW
DATE  CDE  DATE    AMOUNT        PAID         PAID          PAID
------ --- ------  --------------- ------------- ------------- -------------
051311 FB  080110              42.00  40 EXPENSE ADVANCES
T:32551      /B:000
061611 UF* 080110   UNAPPLIED FUNDS (5)          2054.23  BALANCE      2054.23
    REF NUMBER    EM-3201    DESC
                     BAL AFTER        308359.63              -3742.16
T:31246      /B:004  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    -82.16
061611 SR  080110       2054.23        .00           .00           .00
                     BAL AFTER        308359.63              -3742.16
T:31246    I/B:004  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    -82.16
062111 UFM 080110   UNAPPLIED FUNDS (3)          2054.23  BALANCE      2054.23
    REF NUMBER    SG10VP01NGGO DESC
                     BAL AFTER        308359.63              -3742.16
T:03154      /B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    -82.16
062111 UF* 080110   UNAPPLIED FUNDS (5)         -2054.23  BALANCE        0.00
                     BAL AFTER        308359.63              -3742.16
T:00000    ./B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    -82.16


062111 SR  080110              .00           .00           .00           .00
                     BAL AFTER        308359.63              -3742.16
T:03154    O/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    -82.16
062111 UI  080110              .00           .00           .00           .00
                     BAL AFTER        308359.63              -3742.16
                     OPT PREMIUMS             .00  LATE CHARGE PYMT  -369.72*
T:19502      /B:000  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -451.88


062111 AA  080110              .00           .00           .00           .00
                     BAL AFTER        308359.63              -3742.16
                     OPT PREMIUMS             .00  LATE CHARGE PYMT  -369.72*
T:19502      /B:000  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -451.88
062211 UFU 080110   UNAPPLIED FUNDS (1)          2054.23  BALANCE      2054.23
    REF NUMBER    PADRE 3M    DESC
                     BAL AFTER        308359.63              -3742.16
T:11496      /B:004  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -451.88


        INQ23694
```

HISTORY FOR ACCOUNT  601648590                          PAGE    11
                                                        DATE 08/22/11


--------- MAIL -------------------- --------- PROPERTY ----------------


    SYLVIA E DADZIE

    3695 SECOR AVE                    3695 SECOR AVE

    BRONX              NY 10466    BRONX              NY 10466


-----------------------------------------------------------------------------
 POST  TRN  DUE    TRANSACTION    PRINCIPAL    INTEREST     ESCROW
 DATE  CDE  DATE    AMOUNT        PAID         PAID         PAID
------ --- ------ --------------- ------------- ------------- -------------
062211 UFM 080110   UNAPPLIED FUNDS (3)      -2054.23  BALANCE       0.00
                    BAL AFTER    308359.63                -3742.16
T:00000    ./B:004  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
062211 SR  080110         .00        .00          .00         .00
 LC DATE  062111  BAL AFTER    308359.63                -3742.16
T:11496    I/B:004  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
062211 POS 030111   PAID  2054.23 DUE   .00  OVER  -2054.23 TELLER 11496
                    BAL AFTER    308359.63                -3742.16
                    OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
062211 POS 030111   NO. OF PLAN PMTS=00
                    BAL AFTER    308359.63                -3742.16
                    OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
062211 RP  090110      2054.23     383.95      1670.28         .00
 REF NUMBER   SG1100335RRG DESC
 LC DATE  062111  BAL AFTER    307975.68                -3742.16
T:11496    I/B:004  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88


062211 UFU 090110   UNAPPLIED FUNDS (1)      -2054.23  BALANCE       0.00
 REF NUMBER   SG1100335RRG DESC
                    BAL AFTER    307975.68                -3742.16
T:11496    /B:004   OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
062211 SR0 090110      -2054.23      .00          .00         .00
 LC DATE  062111  BAL AFTER    307975.68                -3742.16
T:11496    I/B:004  OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88


062311 E91 090110     -746.56  PAYEE = 0003.01000    .00      -746.56
                    BAL AFTER    307975.68                -4488.72
T:32687    /B:001   OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
072011 POS 030111   PAID  2054.23 DUE  2305.78 SHORT   251.55 TELLER 11496
                    BAL AFTER    307975.68                -4488.72
                    OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88
072011 POS 030111   NO. OF PLAN PMTS=01
                    BAL AFTER    307975.68                -4488.72
                    OPTIONAL INS BAL    00.00  LATE CHARGE BAL   -451.88


    INQ23694

```
HISTORY FOR ACCOUNT   601648590                              PAGE      12
                                                             DATE 08/22/11


       --------- MAIL -------------------- --------- PROPERTY ----------------


       SYLVIA E DADZIE

       3695 SECOR AVE                          3695 SECOR AVE

       BRONX                   NY 10466    BRONX              NY 10466

-------------------------------------------------------------------------------
POST  TRN  DUE    TRANSACTION     PRINCIPAL    INTEREST      ESCROW
DATE  CDE  DATE   AMOUNT          PAID         PAID          PAID
------ --- ------ --------------- ------------- ------------- --------------
072011 RP 100110      2054.23        386.03       1668.20          .00
  REF NUMBER    EM-2765   DESC
  LC DATE  071611  BAL AFTER        307589.65                  -4488.72
T:11496      I/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -451.88
072811 FB 100110       150.00  40 EXPENSE ADVANCES
T:32551      /B:000
081011 FB 100110       150.00  40 EXPENSE ADVANCES
T:32551      /B:000


081611 POS 040111   PAID  2061.73 DUE  2305.78 SHORT    244.05 TELLER 31246
                  BAL AFTER        307589.65                  -4488.72
                  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   -451.88
081611 POS 040111   NO. OF PLAN PMTS=01
                  BAL AFTER        307589.65                  -4488.72
                  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   -451.88
081611 UF* 100110   UNAPPLIED FUNDS (2)        2061.73  BALANCE    2061.73
  REF NUMBER    EM-3037   DESC
                  BAL AFTER        307589.65                  -4488.72
T:31246      /B:004  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   -451.88
081611 SR 100110      2061.73          .00          .00          .00
  LC DATE  081311  BAL AFTER        307589.65                  -4488.72
T:31246      I/B:004  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   -451.88
081711 FP 100110      -150.00  96 INV RECOV FEE
  REF NUMBER    SG11E3SGH778 DESC
T:15022      /B:001
081711 FE 100110       150.00  40 EXPENSE ADVANCES
                  SG11E3SGH778
T:15022      /B:001
081811 FB 100110       500.00  40 EXPENSE ADVANCES
T:32551      /B:000




END OF HISTORY

   INQ23694
```

Payment History Code Key

| Subject Type / Column Headings | Explanation |
|---|---|
| Escrow Codes | Reading from left to right:<br><br>• Post Date = the date the transaction was completed.<br>• TRN Code= transaction codes (see table)<br>• Due Date= the date interest is due from as of that posting<br>• Transaction Amount = the dollar amount for that particular posting<br>• Principal Paid= the amount of funds affecting the principal balance.<br>• Interest Paid= the amount of funds affecting the interest payment<br>• Escrow Paid= the amount of funds affecting the escrow balance<br><br>• M90 or E90= county tax payment<br>• M91 or E91= City tax payment<br>Note: any escrow transaction starting with a 9 is a tax related disbursement.<br><br>• EI= interest on escrow<br>• M20 or E20= hazard insurance payment<br>• M21 or E21= flood insurance payment<br>Note: any escrow transaction starting with a 2 is an insurance related disbursement.<br><br>• R20= Insurance Refund<br>• R90/R91= Tax Refund<br>• E01/ M01 or M00/E00= escrow refund to customer<br>Note: any transaction starting with a 4 is for Private Mortgage Insurance |

| Payment Codes | Payment TRN Description |
|---|---|
| AA | Administrative Adjustment (late charge waiver- fee adjustments etc) |
| AP | Payment Application |
| ADR | Advance Reversal For Home Equity Line of Credit loans, this transaction type represents the reversal of an advance on the line |
| ADV | Advance. For Home Equity Line of Credit loans, this transaction type represents an advance that the borrower takes on the line |
| ASP | Autopost Short Payment |
| ATP | Autopost Total Payment |
| APP | Acceptable Partial Payment |
| AND | Funding Advance on Home Equity Line of Credit |
| AAP | Automated Acceptable Payment |
| AMC | Adjustable Rate, P & I Subsidy, Term Changes |
| CT | Curtailment/ Additional Principal |
| CTA | Curtailment/Additional Principal Reversal |
| FB | Fee Billed |
| FE, FEA OR FWA | Fee Paid |
| GP | Government Payment |
| PA | Payment posted manually |
| POST | Post petition payment |
| PP | Partial Payment |
| PRE | Petition payment |
| PRN | Payment reversal ('N' = reason code) |
| PT | Reapplication of payment due to an investor transfer |
| RP | Regular payment |
| RT | Payment reversal due to an investor transfer |
| SHP | Short Payment |
| SR | Single item receipt commonly applied to escrow, uncollected late charges, closing interest, buydown funds, uncollected credit insurance, or unapplied funds |
| SRA | Single receipt posted |
| SRN | Reversal |
| UFN | Unapplied funds transaction ('N' = unapplied funds code after the transaction) |
| UI | Uncollected items including interest, credit insurance, and late charges |
| UIE | Uncollected late charges collected from the escrow overage during analysis |
| ITR | Investor transfer |

# NOTE

June 28, 2006                     Bronx                     New York
   [Date]                          [City]                     [State]

3695 Secor Ave
Bronx, NY 10466
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 325,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Advanced Financial Services, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on August 1, 2006        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 1, 2036        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 25 Enterprise Center, Newport, RI 02842

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,054.23        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

2006-736986                                              2006- 5360

**NEW YORK FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(NY) (0005)        Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
Sylvia E. Dadzie                    -Borrower                                            -Borrower


_____(Seal)          _____(Seal)
                                    -Borrower                                            -Borrower


_____(Seal)          _____(Seal)
                                    -Borrower                                            -Borrower


_____(Seal)          _____(Seal)
                                    -Borrower                                            -Borrower


                                                        *[Sign Original Only]*


2006-736986                                             2006- 5360

-5N(NY) (0005)                    Page 3 of 3              Form 3233 1/01


Pay to the order of
                  GMAC BANK
Without recourse
Advanced Financial Services, Inc.

Brian R. Gilpin
Assistant Vice President

Return To:
Advanced Financial Services,
Inc.
25 Enterprise Center Newport,
RI  02842

Prepared By:
Tara A. Thomas

Return to:
Equity National Title Insurance Company
101 Wampanoag Trail, Suite 300
East Providence, RI 02915

CE 3369

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE  MIN 100049700007369867

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) **"Security Instrument."** This document, which is dated  June 28,  2006
together with all Riders to this document, will be called the "Security Instrument."
(B) **"Borrower."** Sylvia E Dadzie

whose address is 3695 Secor Ave, Bronx, NY 10466

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.**
(D) **"Lender."** Advanced Financial Services, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
. Lender's address is 25 Enterprise Center,

Newport, RI   02842

Section:              Block:              Lot:              Unit:
2006-736986                                                      2006- 5360
NEW YORK - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**        Form 3033 1/01

VMP -6A(NY) (0508).01
Page 1 of 17                    Initials:
       VMP Mortgage Solutions, Inc.

(E) **"Note."** The note signed by Borrower and dated June 28, 2006           , will be called the "Note." The Note shows that I owe Lender three hundred twenty-five thousand and 00/100

Dollars (U.S. $325,000.00                    )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by July 1, 2036.

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

2006-736986                                                                 2006-5360

Initials:

-6A(NY) (0508).01                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 3695 Secor Ave

[Street]

Bronx                         [City, Town or Village], New York 10466        [Zip Code].
This Property is in Bronx                                 County. It has the following legal
description: See Attached Exhibit A

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

2006-736986                                                        2006- 5360

VMP-6A(NY) (0508).01                    Page 3 of 17            Initials:            Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

2006 - 736986

2006 - 5360

Initials:

VMP -6A(NY) (0508).01

Page 4 of 17

Form 3033 1/01

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

2006-736986

2006- 5360

Initials:

-6A(NY) (0808).01                     Page 5 of 17                     Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

2006-736986                                                                                    2006- 5360

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period
2006-736986                                                                2006- 5360

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to *occupy the Property and to use the Property as my principal residence for at least one year. The one-year* period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

2006-736986



2006- 5360

-6A(NY) (0508).01                    Page 8 of 17          Initials:                Form 3033 1/01

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

2006-736986

2006- 5360

Page 9 of 17     Initials:     Form 3033 1/01

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

2006 - 736986

2006 - 5360

Initials

Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

2006- 736986

VMP -6A(NY) (0508).01                    Page 11 of 17              Initials: SCT          2006- 5360

Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

2006·736986

2006· 5360

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

2006-736986                                                                                         2006- 5360

VMP-6A(NY) (0508).01                    Page 13 of 17          Initials:              Form 3033 1/01

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

2006- 736986

2006- 5360

-6A(NY) (0508).01                    Page 14 of 17          Initials: _____          Form 3033 1/01

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

2006-736986

⬭-6A(NY) (0508).01          Page 16 of 17          Initials: ___          2006- 5360

Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:



_____ (Seal)
Sylvia E Qadzie                          -Borrower

_____ (Seal)
_____        -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                     -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                     -Borrower

_____ (Seal)        _____ (Seal)
                             -Borrower                                     -Borrower

2006-736986                                              2006- 5360

-6A(NY) (0508).01            Page 16 of 17              Form 3033 1/01

**STATE OF NEW YORK,** Bronx                                    County ss:

On the 28th       day of June. 2006           before me, the undersigned, a notary
public in and for said state, personally appeared Sylvia E Dadzie

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:

R. SCOTT LAFAZIA
Notary Public State of New York
No. 02LA5049900
Qualified in Richmond County
Commission Expires 9/25/09

2006-736986                                                    2006- 5360

VMP-6A(NY) (0508).01          Page 17 of 17      Initials:     Form 3033 1/01

10662008
3695 Secor Avenue
Bronx, New York  10466
Sylvia Dadzie

## EXHIBIT A

All that certain plat, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, bounded and described as follows:

Beginning at a point in the westerly side of Secor Avenue, distant 60 feet southerly from its intersection with the southerly side of Connor Street; running thence westerly parallel with the southerly side of Conner Street, 95.21 feet to the center line of the block; thence southerly parallel with westerly side of Secor Avenue, 30 feet; thence easterly parallel with the southerly side of Connor Street, 95.21 feet to the westerly side of Secor Avenue; and thence northerly along the westerly side of Secor Avenue, 30 feet to the point or place of beginning.

All the real property has been or will be improved by a one or two family residence only.

Block 4943  Lot 54

For title reference see Deed recorded herewith;



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2006070300222002002EC09A

### RECORDING AND ENDORSEMENT COVER PAGE     PAGE 1 OF 19

| | | |
|---|---|---|
| **Document ID:** 2006070300222002 | Document Date: 06-28-2006 | Preparation Date: 07-03-2006 |
| Document Type: MORTGAGE | | |
| Document Page Count: 18 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 4943 | 54 | Entire Lot | 3695 SECOR |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel___ Page_____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 127.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | | |
| MTA: | $ | 945.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,632.50 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          07-19-2006 10:12
City Register File No.(CRFN):
             2006000408948

*Annette M Hill*

*City Register Official Signature*



2006070300222002002EC09A

## RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 19

**Document ID:** 2006070300222002    Document Date: 06-28-2006    Preparation Date: 07-03-2006
Document Type: MORTGAGE
Document Page Count: 18

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY TITLE | EQUITY TITLE |
| 401 WAMPANOAG TRAIL | 401 WAMPANOAG TRAIL |
| SUITE 300 | SUITE 300 |
| EAST PROVIDENCE, RI 02915 | EAST PROVIDENCE, RI 02915 |
| 401-434-5500 | 401-434-5500 |
| pdias@equityin.com | pdias@equityin.com |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 4943 | 54 | Entire Lot | 3695 SECOR |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ *or* Document ID_____ *or* _____ Year_____ Reel ____ Page _____ *or* File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| SYLVIA DADZIE | MERS |
| 3695 SECOR AVENUE | P.O. BOX 2026 |
| BRONX, NY 10466 | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 325,000.00 | Recording Fee: $ | 127.00 |
| Taxable Mortgage Amount: | $ | 325,000.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,625.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 3,250.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 812.50 | | |
| MTA: | $ | 945.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 6,632.50 | | |

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| A. Settlement Statement | WinClose | U.S. Department of Housing |
|---|---|---|
| | Fee Simple Software, Inc | and Urban Development |
| | (205) 823-3993 | OMB No. 2502-0265 |

**B. TYPE OF LOAN**

| 1. ☐ FHA  2. ☐ FmHA  3. ☑ Conv. Unins | File Number | Loan Number | Mortgage Insurance Case Number |
|---|---|---|---|
| 4. ☐ VA  5. ☐ Conv. Ins. | 10662008 | 2006-736986 | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside of closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | Sylvia Dedzie |
|---|---|
| | 3695 Secor Ave |
| | Bronx, New York 10466 |

| E. NAME AND ADDRESS OF SELLER: | |
|---|---|
| (SELLER TIN-         ) | |

| F. NAME AND ADDRESS OF LENDER: | Advanced Financial Services, Inc. |
|---|---|
| | 25 Enterprise Center |
| | Newport, RI 02842 |

| G. PROPERTY LOCATION: | 3695 Secor Avenue |
|---|---|
| | Bronx, New York 10466 |

| H. SETTLEMENT AGENT: | Equity National Title Insurance Company | PLACE OF |
|---|---|---|
| | 401 Wampanoag Trail | SETTLEMENT: 3695 Secor Ave |
| (TIN- 20-2087138        ) | East Providence, RI 02915 | Bronx, NY 10466 |

| I. SETTLEMENT DATE: June 28, 2006 | Disbursement Date: July 3, 2006 |
|---|---|

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 100. | GROSS AMOUNT DUE FROM BORROWER: | | 400. | GROSS AMOUNT DUE TO SELLER: | |
| 101. | Contract sales price | | 401. | Contract sales price | |
| 102. | Personal property | | 402. | Personal property | |
| 103. | Settlement charges to borrower (line 1400) | $20,937.40 | 403. * (Gross Proceeds | ) | |
| 104. | BANK OF AMERICA | $224,416.39 | 404. | | |
| 105. | | | 405. | | |
| | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | |
| 106. | City/town taxes        to | | 406. | City/town taxes | |
| 107. | County taxes        to | | 407. | County taxes | |
| 108. | Assessments        to | | 408. | Assessments | |
| 109. | See addendum | $38,846.00 | 409. | | |
| 110. | NY Department of Finance-Delinquent taxes | $617.98 | 410. | | |
| 111. | NY Department of Finance-July Taxes | $594.14 | 411. | | |
| 112. | | | 412. | | |
| 120. | GROSS AMOUNT DUE FROM BORROWER: | $285,411.91 | 420. | GROSS AMOUNT DUE TO SELLER: | |
| 200. | AMOUNTS PAID ON OR ON BEHALF OF BORROWER: | | 500. | REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. | Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | $325,000.00 | 502. | Settlement charges to seller (line 1400 | |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff 1st mortgage loan | |
| 205. | | | 505. | Payoff 2nd mortgage loan | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | |
| 210. | City/town taxes        to | | 510. | City/town taxes | |
| 211. | County taxes        to | | 511. | County taxes | |
| 212. | Assessments        to | | 512. | | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | TOTAL PAID BY/FOR BORROWER: | $325,000.00 | 520. | TOTAL REDUCTIONS IN AMOUNT DUE SELLER: | |
| 300. | CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. | CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. | Gross amount due from borrower (line 120) | $285,411.91 | 601. | Gross amount due to seller (line 420) | |
| 302. | Less amount paid by/for borrower (line 220) | $325,000.00 | 602. | Less reductions in amount due seller (line 520) | |
| 303. | CASH ( ☐ FROM X ☑ TO ) BORROWER: | $39,588.09- | 603. | CASH ( ☐ TO )( ☑ FROM ) SELLER: | |

**HUD-1 (3-86) - RESPA, HB 4305.2**

SUBSTITUTE FORM 1099 STATEMENT: The information contained in Blocks E, G, H, and I and on the 401 (of if line 401 is asterisked, lines 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that is has not been reported.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file form 2119, Sale of Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required by law to provide (see box H) your correct taxpayer identification number. If you do not provide (see box H) your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law, and under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller's Signature

**Page 1**

| L. | SETTLEMENT CHARGES | | | |
|---|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSIONS** | | | **PAID FROM BORROWER'S FUNDS AT SETTLEMENT** | **PAID FROM SELLER'S FUNDS AT SETTLEMENT** |
| Based on price: | @ | = | | |
| Division of Commission (Line 700) as follows: | | | | |
| 701. $0.00 to: | | | | |
| 702. $0.00 to: | | | | |
| 703. Commission paid at settlement | | | | |
| 704. | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | | | |
| 801. Loan origination fee 3.500% | to Advanced Financial Services, Inc. | | $11,375.00 | |
| 802. Loan discount | | | | |
| 803. Appraisal fee | to ATM Appraisal | ($ 350.00 POC) | | |
| 804. Credit report | to Kroll Factual Data | | $6.83 | |
| 805. Underwriting Fee: | to Advanced Financial Services, Inc. | | $299.00 | |
| 806. Tax service: | to Advanced Financial Services, Inc. | | $90.00 | |
| 807. Flood Certification: | to Advanced Financial Services, Inc. | | $9.00 | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | | | |
| 901. Interest from 7/3/2006 to 7/1/2006 @ $57.8800 | | | ($115.76) | |
| 902. Mortgage insurance premium for mos. to | | | | |
| 903. Hazard insurance premium for yrs. to State Farm Insurance | | | $1,106.00 | |
| 904. Flood insurance premium for yrs. to | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | | | |
| 1001. Hazard insurance | months @ | per month | | |
| 1002. Mortgage insurance | months @ | per month | | |
| 1003. City property taxes | months @ | per month | | |
| 1004. County property taxes | months @ | per month | | |
| 1005. Annual assessments | months @ | per month | | |
| 1006. Flood insurance | months @ | per month | | |
| 1007. School property taxes | months @ | per month | | |
| 1008. Village property taxes | months @ | per month | | |
| 1009. Aggregate adjustment | | | $0.00 | |
| **1100. TITLE CHARGES:** | | | | |
| 1101. Settlement fee | to Equity National Title Insurance Co. | | $550.00 | |
| 1102. Abstract or title search | | | | |
| 1103. Title examination | | | | |
| 1104. Title insurance binder | to Equity National Title Insurance Co. | | $50.00 | |
| 1105. Document preparation | | | | |
| 1106. Notary fees | | | | |
| 1107. Attorney's fees | | | | |
| (includes above item Numbers ) | | | | |
| 1108. Title insurance | to United General Title Insurance Company | | $857.00 | |
| (includes above item Numbers 1102, 1103, 1104 ) | | | | |
| 1109. Lender's coverage $325,000.00 | | | | |
| 1110. Owner's coverage | | | | |
| 1111. Obtain / Review MLC Tax Information | to Equity National Title Insurance Co. | | $50.00 | |
| 1112. | to United General Title Insurance Company | | $222.33 | |
| 1113. Core Title Services Premium | to Equity National, as Agent | ($ 863.46 POC) | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | | | |
| 1201. Recording fees Deed | Mortgage $142.00 Release $84.00 | | $226.00 | |
| 1202. City/county tax/stamps Deed | Mortgage | | | |
| 1203. State tax/stamps Deed | Mortgage | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | | | | |
| 1302. Pest inspection | | | | |
| 1303. | | | | |
| 1304. Courier Fee | to Equity National Title Insurance Co. | | $45.00 | |
| 1305. Mortgage Tax | to New York City Department of Finance | ($ 812.50 POC) | $5,820.00 | |
| 1306. Services Rendered Outside of Closing | to Equity National Title Insurance Company | | $347.00 | |
| 1307. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES:** | | | $20,837.40 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Borrower: _____ Date: 6/28/2006    Seller or Agent: _____ Date: _____
Sylvia Riddle

Borrower: _____ Date: _____    Seller or Agent: _____ Date: _____

Borrower: _____ Date: _____    Seller or Agent: _____ Date: _____

Equity National Title Insurance Company

Settlement Agent: _____ Date: 6/28/2006

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title U.S. Code Section 1001 and Section 1010.

WinClose by Fee Simple Software (205) 823-3993          HUD-1 (Rev. 3/86)          Page 2

**GMAC Mortgage**

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

**INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT**

ACCOUNT NUMBER: 0601648590

PROPERTY ADDRESS:
3695 SECOR AVE
BRONX NY 10466

ANALYSIS DATE: SEPTEMBER 15, 2010

46314-0000929-001
SYLVIA E DADZIE
3695 SECOR AVE
BRONX NY  10466-5914

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | JANUARY 2011 | 733.67 | 0.00 |
| CITY/TOWNSHIP | APRIL 2011 | 733.67 | 0.00 |
| CITY/TOWNSHIP | JULY 2011 | 733.67 | 0.00 |
| CITY/TOWNSHIP | OCTOBER 2011 | 733.67 | 0.00 |
| | TOTAL ANNUAL DISBURSEMENTS: | 2,934.68 | 0.00 |
| | TOTAL ESCROW PAYMENT: | 244.55 | 0.00 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $2,716.60, your new total payment will automatically be adjusted to $2,298.78 effective with your NOVEMBER 01, 2010 payment. If you do not pay the shortage, your total payment effective NOVEMBER 01, 2010 will be $2,525.16.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 244.55 | 0.00 |
| Surplus/Shortage | 226.38 | 0.00 |
| Escrow Shortage Spread 12 Months | | |
| | | |
| Total | 470.93 | 0.00 |
| Principal/Interest | 2,054.23 | 2,054.23 |
| Total Payment | 2,525.16 | 2,054.23 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

**Any questions regarding changes in the "Estimated Amount of Next Disbursement" should be directed to your Tax Authority and/or Insurance Company. To reach our insurance department call: 1-800-256-9962.**

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT

**GMAC Mortgage**

**THIS IS NOT A CHECK**

NOTE   you must use this address when remitting your escrow shortage payment

| Account Number | Shortage Amount |
|---|---|
| 0601648590 | 2,716.60 |

SYLVIA E DADZIE

| Total Amount Enclosed  $ |
|---|

If you pay the escrow shortage amount of $2,716.60, your new payment will be automatically adjusted to $2,298.78 effective with your NOVEMBER 01, 2010 payment.

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ  85062 9162

By sending your check, please be aware that you are authorizing us to use information on your check to make a one time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

C16388

INTERNET REPRINT

ANALYSIS TYPE: 1/6 AGGREGATE                                    ACCOUNT NUMBER: 0601648590
PROJECTED ESCROW BALANCE AS OF: OCTOBER 31, 2010          -2,227.42  *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
  disbursements anticipated to be made prior to the effective date of analysis.

| | | | | | Current Escrow Balance: 2,227.42~ |
|---|---|---|---|---|---|

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED BALANCE | | | 2,227.42- | 489.18 |
| 11/01/10 | 244.55 | .00 | 1,982.87- | 733.73 |
| 12/01/10 | 244.55 | .00 | 1,738.32- | 978.28 |
| 01/01/11 | 244.55 | 733.67- | 2,227.44- | 489.16 |
| 02/01/11 | 244.55 | .00 | 1,982.89- | 733.71 |
| 03/01/11 | 244.55 | .00 | 1,738.34- | 978.26 |
| 04/01/11 | 244.55 | 733.67- | 2,227.46- | 489.14 |
| 05/01/11 | 244.55 | .00 | 1,982.91- | 733.69 |
| 06/01/11 | 244.55 | .00 | 1,738.36- | 978.24 |
| 07/01/11 | 244.55 | 733.67- | 2,227.48- | 489.12 |
| 08/01/11 | 244.55 | .00 | 1,982.93- | 733.67 |
| 09/01/11 | 244.55 | .00 | 1,738.38- | 978.22 |
| 10/01/11 | 244.55 | 733.67- | 2,227.50- | 489.10  L |

Esc Rcpts to Eff Dt          Esc Disb Prior to Eff Dt

| Due Dt | Due Amt | Disb Date | Disb Amt |
|---|---|---|---|
| 09/10 | .00 | | |
| 10/10 | .00 | | |

*Indicates Sum of Remaining Escrow Payments
&/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
                        -2,227.50

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
                489.10

Section 3:  ➡

| SHORTAGE | 2,716.60 |
|---|---|

ESCROW ACCOUNT ACTIVITY (DECEMBER 01, 2009 - OCTOBER 31, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| BEGINNING BALANCE | | | .00 | | | .00 |
| 12/01/09 | | .00 | .00 | | .00 | .00 |
| 01/01/10 | | .00 | .00 | | .00 | .00 |
| 02/01/10 | | .00 | .00 | | .00 | .00 |
| 03/01/10 | | .00 | .00 | | .00 | .00 |
| 04/01/10 | | .00 | .00 | | .00 | .00 |
| 05/01/10 | | .00 | .00 | | .00 | .00 |
| 06/01/10 | | .00 | .00 | | .00 | .00 |
| 07/01/10 | | .00 | .00 | | .00 | .00 |
| 08/01/10 | | .00 | .00 | CITY/TOWNSHIP | 2,227.42- | 2,227.42- |
| 09/01/10 | | .00 | .00 | | .00 | 2,227.42- |
| 10/01/10 | | .00 | .00 | | .00 | 2,227.42- |

**GMAC Mortgage**

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

## ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: 0601648590

PROPERTY ADDRESS:
3695 SECOR AVE
BRONX NY 10466

ANALYSIS DATE: OCTOBER 13, 2010

46390-0007186-003
SYLVIA E DADZIE
3695 SECOR AVE
BRONX NY  10466-5914

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | JANUARY 2011 | 733.67 | 733.67 |
| CITY/TOWNSHIP | APRIL 2011 | 733.67 | 733.67 |
| CITY/TOWNSHIP | JULY 2011 | 733.67 | 733.67 |
| CITY/TOWNSHIP | OCTOBER 2011 | 733.67 | 733.67 |
| | TOTAL ANNUAL DISBURSEMENTS: | 2,934.68 | 2,934.68 |
| | TOTAL ESCROW PAYMENT: | 244.55 | 244.55 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $2,490.22, your new total payment will automatically be adjusted to $2,298.78 effective with your DECEMBER 01, 2010 payment. If you do not pay the shortage, your total payment effective DECEMBER 01, 2010 will be $2,506.29.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 244.55 | 244.55 |
| Surplus/Shortage | 207.51 | 226.38 |
| Escrow Shortage Spread 12 Months | | |
| | | |
| Total | 452.06 | 470.93 |
| Principal/Interest | 2,054.23 | 2,054.23 |
| Total Payment | 2,506.29 | 2,525.16 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

650-0880-1200F

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.**

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT

---



**THIS IS NOT A CHECK**

NOTE    you must use this address when remitting your escrow shortage payment

SYLVIA E DADZIE

| Account Number | Shortage Amount |
|---|---|
| 0601648590 | 2,490.22 |

| Total Amount Enclosed  $ |
|---|

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ  85062 9162

If you pay the escrow shortage amount of $2,490.22, your new payment will be automatically adjusted to $2,298.78 effective with your DECEMBER 01, 2010 payment.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

C16388

ANALYSIS TYPE: 1/6 AGGREGATE                                      ACCOUNT NUMBER: 0601648590
PROJECTED ESCROW BALANCE AS OF: NOVEMBER 30, 2010         -1,756.49  *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
  disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|-------------------------|-----------------------|------------------------|
| PROJECTED BALANCE | | | 1,756.49- | 733.73 |
| 12/01/10 | 244.55 | .00 | 1,511.94- | 978.28 |
| 01/01/11 | 244.55 | 733.67- | 2,001.06- | 489.16 |
| 02/01/11 | 244.55 | .00 | 1,756.51- | 733.71 |
| 03/01/11 | 244.55 | .00 | 1,511.96- | 978.26 |
| 04/01/11 | 244.55 | 733.67- | 2,001.08- | 489.14 |
| 05/01/11 | 244.55 | .00 | 1,756.53- | 733.69 |
| 06/01/11 | 244.55 | .00 | 1,511.98- | 978.24 |
| 07/01/11 | 244.55 | 733.67- | 2,001.10- | 489.12 |
| 08/01/11 | 244.55 | .00 | 1,756.55- | 733.67 |
| 09/01/11 | 244.55 | .00 | 1,512.00- | 978.22 |
| 10/01/11 | 244.55 | 733.67- | 2,001.12- | 489.10 L |
| 11/01/11 | 244.55 | .00 | 1,756.57- | 733.65 |

Current Escrow Balance:  2,227.42-

| Esc Rcpts to Eff Dt | | Esc Disb Prior to Eff Dt | |
|---------------------|--------|--------------------------|---------|
| Due Dt | Due Amt | Disb Date | Disb Amt |
| 09/10 | .00 | | |
| 10/10 | .00 | | |
| 11/10 | 470.93 | | |

*Indicates Sum of Remaining Escrow Payments
&/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
                                  -2,001.12

MAXIMUM PERMITTED LOW-POINT:  (EXCLUDING MIP)
                      489.10

Section 3: ➡   | SHORTAGE | 2,490.22 |

ESCROW ACCOUNT ACTIVITY (NOVEMBER 01, 2010 - NOVEMBER 30, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| 08/01/10 | | .00 | .00 | CITY/TOWNSHIP | 2,227.42- | .00 |
| 09/01/10 | | .00 | .00 | | .00 | .00 |
| 10/01/10 | | .00 | .00 | | .00 | .00 |
| BEGINNING BALANCE | | | 489.18 | | | 2,227.42- |
| 11/01/10 PAYMENT | | 244.55 | 733.73 | | .00 | 2,227.42- |

**GMAC**
**Mortgage**

3451 Hammond Avenue
Waterloo, IA 50702
1 800 766 4622/Follow the Prompts

**Important Note**: In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: 0601648590

PROPERTY ADDRESS:
3695 SECOR AVE
BRONX NY 10466

ANALYSIS DATE: JUNE 28, 2011

47069-0000079-001
SYLVIA E DADZIE
3695 SECOR AVE
BRONX NY  10466-5914

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | APRIL 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JULY 2011 | 746.56 | 733.67 |
| CITY/TOWNSHIP | OCTOBER 2011 | 757.37 | 733.67 |
| CITY/TOWNSHIP | JANUARY 2012 | 757.37 | 733.67 |
| | TOTAL ANNUAL DISBURSEMENTS: | 3,018.67 | 2,934.68 |
| | TOTAL ESCROW PAYMENT: | 251.55 | 244.55 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

| | | | |
|---|---|---|---|
| New Payment Amount: | | | 2,305.78 |
| New Payment Effective: | | | MARCH 01, 2011 |
| Next Scheduled Analysis: | | | MARCH 01, 2012 |
| Payment change: | New | Prior Analysis | |
| Escrow | 251.55 | 244.55 | |
| Surplus/Shortage | 0.00 | 207.51 | |
| Total | 251.55 | 452.06 | |
| Principal/Interest | 2,054.23 | 2,054.23 | |
| Total Payment | 2,305.78 | 2,506.29 | |

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

680-0680-1200F

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"**
**should be directed to your Tax Authority and/or Insurance Company.**
**To reach our insurance department call: 1-800-256-9962.**

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.



**GMAC**
**Mortgage**

You will receive the escrow analysis surplus check in the amount of      $.06 under separate cover; provided your account is contractually current as of the date the analysis was completed.

INTERNET REPRINT

ANALYSIS TYPE: 1/6 AGGREGATE                                     ACCOUNT NUMBER: 0601648590
PROJECTED ESCROW BALANCE AS OF: FEBRUARY 28, 2011               2,672.54   *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
  disbursements anticipated to be made prior to the effective date of analysis.

| | | PROJECTED | CUR. BAL. | REQ. BAL. |
| DATE | RECEIPTS | DISBURSEMENTS | PROJECTIONS | PROJECTIONS |
| --- | --- | --- | --- | --- |
| PROJECTED BALANCE | | | 757.43 | 757.37 |
| POC SHTG | 1,915.11 | | 2,672.54 | |
| 03/01/11 | 251.55 | .00 | 2,924.09 | 1,008.92 |
| 04/01/11 | 251.55 | 757.37- | 2,418.27 | 503.10 L |
| 05/01/11 | 251.55 | .00 | 2,669.82 | 754.65 |
| 06/01/11 | 251.55 | .00 | 2,921.37 | 1,006.20 |
| 07/01/11 | 251.55 | 746.56- | 2,426.36 | 511.19 |
| 08/01/11 | 251.55 | .00 | 2,677.91 | 762.74 |
| 09/01/11 | 251.55 | .00 | 2,929.46 | 1,014.29 |
| 10/01/11 | 251.55 | 757.37- | 2,423.64 | 508.47 |
| 11/01/11 | 251.55 | .00 | 2,675.19 | 760.02 |
| 12/01/11 | 251.55 | .00 | 2,926.74 | 1,011.57 |
| 01/01/12 | 251.55 | 757.37- | 2,420.92 | 505.75 |
| 02/01/12 | 251.55 | .00 | 2,672.47 | 757.30 |

Current Escrow Balance:  4,488.72-

| Esc Rcpts to Eff Dt | | Esc Disb Prior to Eff Dt | |
| --- | --- | --- | --- |
| Due Dt | Due Amt | Disb Date | Disb Amt |
| 10/10 | .00 | | |
| 11/10 | 470.93 | | |
| 12/10 | 1,356.18 * | | |

*Indicates Sum of Remaining Escrow Payments
 &/or Escrow Disbursements to Effective Date.

L   ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
                       2,418.27

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
                503.10

Section 3:  ➡   |  SURPLUS          0.06  |

ESCROW ACCOUNT ACTIVITY (DECEMBER 01, 2010 - FEBRUARY 28, 2011)

| | | PREV PROJ | PREV PROJ | | ACTUAL | ACTUAL |
| DATE | TXN | AMOUNT | BALANCE | TXN | AMOUNT | BALANCE |
| --- | --- | --- | --- | --- | --- | --- |
| BEGINNING BALANCE | | | 733.73 | | | 2,227.42- |
| 12/01/10 PAYMENT | | 244.55 | 978.28 | CITY/TOWNSHIP | 757.37- | 2,984.79- |
| 01/01/11 PAYMENT | | 244.55 | 489.16 | | .00 | 2,984.79- |
| 01/01/11 CITY/TOWNSHIP | | 733.67- | 489.16 | | .00 | 2,984.79- |
| 02/01/11 PAYMENT | | 244.55 | 733.71 | | .00 | 2,984.79- |