**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
900 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 752-8000
Fax: (646) 563-7923
John H. Drucker, Esq.

*Counsel for FTI Consulting, Inc.,*
*Financial Advisor for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

------------------------------------------------------------------------

**FTI CONSULTING, INC'S REPLY TO OMNIBUS OBJECTION OF**
**THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR**
**SECOND INTERIM AWARDS OF COMPENSATION AND REIMBURSEMENT**
**OF OUT-OF-POCKET EXPENSES WITH PARTIAL JOINDER**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

      FTI Consulting, Inc ("FTI") the financial advisor to the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), submits this reply to the *Omnibus Objection Of The United States Trustee* (the "Trustee") *Regarding Fee Applications For Second Interim Awards Of Compensation And Reimbursement Of Out-Of-Pocket Expenses* [Docket No. 3310] (the "Objection"), with partial joinder[1] (the "Reply"), and in further support of the *Second Interim Application Of FTI Consulting, Inc. As Financial Advisors For The Debtors For*

---

[1] As set forth herein, FTI joins in the legal arguments and citations, and, to the extent applicable to FTI in its capacity as financial advisor to the Debtors, the factual arguments, asserted in the M&F Reply (as set forth and defined below).

44627/0071-9430142v3

*Compensation And Reimbursement Of Expenses Incurred For The Period September 1, 2012 Through December 31, 2012* [Docket No.3208] (the "Application")[2], FTI states as follows:

## SUMMARY OF TRUSTEE'S OBJECTIONS

1.  In its Objection, the Trustee identifies three issues:

(a) KEIP/KERP time : The Trustee seeks a reduction in the amount of $27,419.50, being all of the time incurred by FTI during the Application Period, relating to "Task Code 8" which task code includes time related to the Key Employee Incentive Plan ("KEIP") and the Key Employee Retention Plan ( "KERP" and together with the KEIP, the "KEIP/KERP Plans") and the Estate KEIP/KERP (as defined below)[3]. In addition, the Trustee notes that in connection with the First Application for Interim Professional Compensation of FTI Consulting, Inc. as Financial Advisor for the Debtors for Compensation and Reimbursement of Expenses Incurred for the Period May 14, 2012 through August 31, 2012 (Docket No. 1905) (the "FTI First Interim Application"), the Trustee objected to KEIP time in the amount of $59,225.00, and the order entered by the Court that approved the FTI First Interim Application excluded such amount from the allowed compensation subject to being revisited. In the Objection with repect to the KEIP/KERP , the Trustee objects to only $27, 419.50.  However, in subsequent discussions with the Trustee it appears that the Trustee is now objecting to all time relating to services rendered in connection with the KEIP.

Reference is made to the *Morrison & Foerster LLP's Reply to Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim*

---

[2] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Objection or the Application, as applicable.

[3] In addition to the KEIP/KERP Plans a separate application was filed on March 20, 2013 [Docket No. 3280] seeking approval of an additional key employee incentive and retention plan relating to services provided subsequent to the 363 sales by those employees charged with the wind down of the balance of the estates (the "Estate KEIP/KERP")

2

*Awards of Compensation and Reimbursement Of Out-Of-Pocket Expenses*, dated April 9, 2013 (Docket No. 3378) ( the "M&F Reply").  Except as set forth herein,  FTI joins in and adopts that  portion of the M&F Reply as addresses the factual background concerning the KEIP/KERP Plans. In addition, FTI respectfully submits that the legal arguments and citations set forth in the M&F Reply as to why the Trustee's Objection as relates to time incurred with respect to the KEIP plan should be overruled are equally applicable to the time incurred by FTI, and FTI joins in such arguments and citations.

(b) <u>Transitory Timekeepers:</u> The Trustee objects to the aggregate of $13,298.50 in fees charged by ten timekeepers having the title Senior Managing Director, Managing Director, Senior Director, or Director that billed fewer than five hours during the  period covered by the Application.

(c) <u>Expense:</u> The Trustee objected to certain meals that they assert were billed at amounts in excess of the $20 cap.

**PROPOSED COMPROMISE**

2.      FTI  believes that its requested compensation and expenses are reasonable and appropriate.  Nevertheless, in an effort to obviate the expense and delay that would necessarily be attendant to the dispute regarding the fees that are the subject of the Objection (KEIP and "transitory" time),  FTI  proposes aggregate reductions in fees from the total amount sought , in the amount of $54,000.00  (the "Voluntary Reduction Amount"). This amount would be in resolution of the objection by the Trustee relating to the Application and the FTI First Interim Application.

3

## SPECIFIC RESPONSES TO TRUSTEE OBJECTIONS

### A. KEIP/KERP

3. The Trustee objects to the allowance of all fees falling within task code 8 "KEIP/KERP" matters totaling $27,419.50 which the Trustee describes as "related to the revised KEIP." As an initial point, only $19,039.00 of the fees in that category relate exclusively to the modified KEIP, with the remaining $8,380.50 relating to work done with respect to the Estate KEIP/KERP for the estate personnel charged with winding down the affairs of the Debtors and for which a motion was filed on March 20, 2013 [Docket No. 3280]is pending. [4]

4. Moreover, the Objection fails to articulate any basis whatsoever justifying the disallowance of any portion of fees related to the revised approved KEIP, much less the disallowance of all such fees. "A party opposing a fee application must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by the objectant, the opposition fails." In re Blackwood Assocs., L.P., 165 B.R. 108, 112 (Bankr. E.D.N.Y. 1994). In the absence of a sufficient justification for the reduction requested, the Trustee's Objection should be overruled.

5. The Trustee previously objected to the allowance of $59,225 in fees requested in FTI First Interim Fee Application,[5] which it asserts are "associated with the KEIP motion."

---

[4] FTI requested fees for the KEIP/KERP task code of $264,322.00 for the first and second interim fee applications. For the reasons set forth herein, it is difficult, if not impossible, to precisely allocate the time within the task code. FTI estimates that $208,269.00 was related to the KEIP (with the remainder of the fees related to the KERP, and the wind-down planning for the Estate KEIP/KERP). The Trustee had requested a reduction of $86,644.00 related to the KEIP, of which $59,225 was related to the first interim fee application and $27,419.00 was related to the second interim fee application (but may now be seeking to disallow all of the time with respect to the KEIP). As set forth herein FTI proposes a reduction of $52,000 relating to the KEIP time expended which is approximately 25% of the estimated $208,269 of fees related to the Sale KEIP. FTI examined the amount of time that it billed related to revising the KEIP plan and the total for the first fee application was $12,382.00 and for the second fee application was $19,039 for a total of $31,421. According FTI will in effect will be waiving all of the fees related to the time incurred with respect to the revisions plus an additional $21,000.00.

[5] See *Omnibus Objection Of The United States Trustee Regarding Fee Applications For First Interim Compensation And Reimbursement Of Expenses* [Docket No. 2361] (the "First Omnibus Fee Objection").

Objection at page 25. Services performed by FTI to develop the original KEIP and KERP was done in tandem. The meetings with the Debtors and their counsels and consultants, including M&F and Mercer (US) Inc (the Debtors' compensation consultant), and related work sessions addressed with both the KEIP and the KERP. The market studies performed supported both the KEIP and the KERP. The motion and supporting declarations addressed both the KEIP and the KERP. While not explicitly indicated in the time detail, qualitatively, the majority of FTI's worked performed leading up to the August 8, 2012 hearing related to building evidence in support of the original KEIP given its underlying complexity relative to the KERP. The KERP was approved at the August 8, 2012 hearing. As detailed further below, the evidence put forth in support of the original KEIP was substantially utilized in the creation of the modified KEIP, which was approved on October 18, 2012.

6. FTI believes that its work on the original KEIP was of significant value and benefit as such work was used extensively in the formulation of the modified KEIP, which was ultimately approved by the Court. Substantial evidence was brought before the Court in support of the original KEIP motion, which was also thereafter used extensively in structuring the revised KEIP. Notably, a revised Greenspan declaration was not required for the modified KEIP; rather, the Greenspan declaration (the "Greenspan Declaration") filed with the original KEIP/KERP [Docket No. 812] was referenced numerous times in the modified KEIP motion and supporting affidavit and specifically incorporates by reference the Greenspan Declaration, in footnote 7. Additionally, the Anne Janiczek Declaration [Docket No. 1765] references the Greenspan Declaration and indicates that the general terms of the modified KEIP remain the same as the original, in paragraph 10. Additionally, the consensus building / negotiations with key stakeholders that took place prior to the August 8th hearing, which resulted in garnering

5

support for the original KEIP/KERP plans from the Official Committee of Unsecured Creditors, required substantially less time when preparing the modified KEIP motion given the evidence put forth previously.

7.      FTI believes that the economics of the modified KEIP are similar to what was proposed in the original KEIP.  Specifically, 70% of the target award was tied to the sales process and 30% of the target used the same financial and operating metrics.  Additionally, the maximum payout was the same under both the original and modified KEIP and the maximum proceeds were earned under the same level of incremental proceeds.  The number of KEIP participants is equivalent under both the original and modified KEIP.

8.      In any event, and for the reasons set forth in M&F Reply to the Trustee's First Omnibus Fee Objection,[6] and in the M&F Reply, FTI submits that the fees incurred in connection with the prosecution of both the original KEIP, which, although not approved, laid the groundwork for the modified KEIP, which was ultimately approved by the Court, are reasonable and necessary under the test applied in this Circuit.  See, e.g., In re Kohl, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) (applying an objective test in determining whether services are "necessary," i.e., whether the services provided were "reasonably likely to benefit the estate" and were ones that a reasonable lawyer would have performed in the same circumstances (citations omitted). At the hearing in the first interim applications, in discussing the time expended in connection with the KEIP matters, the Court itself commented:

"Now, it may well be that some amount of the services that were performed in connection with the unsuccessful KEIP motion wound up being a benefit in reducing the work once it was fixed,…" Transcript of 12/20/12 hearing on first interim applications, page 120, lines 8-12.

---

[6]   See *Morrison & Foerster LLP's Reply To Omnibus Objection Of The United States Trustee Regarding Fee Applications For First Interim Compensation And Reimbursement Of Expenses* [Docket No. 2476].

6

44627/0071-9430142v3

9. FTI also notes that although the original KEIP motion was not approved by the Court, the relief sought had the support of the Creditors' Committee and other key constituents. See, M&F Reply for further citations and explanations which are equally applicable to FTI and support why the services of FTI when rendered, in connection with the original KEIP motion were reasonable.

10. Accordingly , except for the Voluntary Reduction, it is respectfully submitted that the Objection should be overruled

**B. Transitory Timekeepers:**

11. The Trustee objects to objects to the aggregate of $13,298.50 in fees charged by ten timekeepers having the title Senior Managing Director, Managing Director, Senior Director, or Director that billed fewer than five hours during the period covered by the Application. Attached hereto is a summary of the time incurred by each of the subject individuals. As set forth below, at least one of the "transitory timekeepers" (Sam Star) time in the amount of $1,521.50 was included in the task code 8 for the KEIP/KERP time for which the Trustee is also objecting on that basis. This Objection double counts the fees charged by Mr. Star.

12. Certain professionals included in this group have spent a significant amount of time working with the Debtors prior to filing and had existing knowledge of the Debtors prior to the Petition Date. Specifically, Gerald Lombardo assisted the Debtors in setting up their treasury function for when the current treasury personnel transitioned over to the buyer. Mr. Lombardo had significant experience with the Debtors' treasury operations prior to the filing of Chapter 11.

13. Certain professionals identified by the Trustee in its Second Interim Objection had more than 5.0 hours during the Second Interim Application Period covered by FTI's *First Interim Application for Compensation and Reimbursement of Expenses* [Docket No. 1905]

7

("First Interim Application Period"). Specifically Gerald Lombardo, Samuel Star, Anthony Milazzo and Thadeus Bomba had 19.3, 47.2, 28.0 and 8.0 hours, respectively during the First Interim Application Period. Additionally, Mr. Milazzo had 47.5 hours in the Second Interim Application Period, but his rate changed during this period.

14. In addition, certain professionals were asked to assist in various workstreams of the case based on their level of expertise in a particular area. Specifically, Thadeus Bomba provided specific knowledge related to certain tax questions, and Anthony Milazzo provided specific knowledge related to technical accounting. Additionally, professionals from FTI's Financial Enterprise and Data Analysis Group performed searches on a voluminous amount of electronic data to respond to discovery requests. The professionals who performed these services were Antonio Rega, Namisha Patel and Eric Hammerquist. This was a discrete task that involved a unique skill set not possessed by other members of FTI's engagement team.

15. In certain instances, there was no learning curve for a particular task and therefore no harm to the estate from using an individual (e.g., Ivo Hofstad) not otheerwise actively involved in the case.

16. As described, FTI believes that these professionals did add value to the Estate and that the Trustee's objection to these fees should be overruled.

**C. Expenses:**

17. The Trustee objected to certain meals that they assert were billed at amounts in excess of the $20 cap. FTI applied a $1,491.31 reduction to the meals it billed the Debtors (see Exhibit E to Second Interim Application), which adjusts all meals that were previously billed at amounts in excess of $20 per person to the $20 cap. The meals that were adjusted were part of FTI's September monthly fee statement that was sent to the Debtors prior to the December 28th

8

ruling by the Bankruptcy Court that all meals were to be capped at $20 per person. As such FTI believes this objection should be overruled.

## CONCLUSION

18.     FTI respectfully request that the Objection be overruled except to the extent of the Voluntary Reduction Amount. Any reduction of the fees, either voluntarily by FTI or as determined by the Court, should be applied to the Rollover Amount (as defined and discussed in the Application.) The Rollover Provision (as defined and discussed in the Application) allows for FTI to bill for any carryover of fees in excess of the Monthly Cap from prior months, on a cumulative basis, provided that the total monthly fee amount to be paid for any month does not exceed the Monthly Cap. The Rollover Provision was recently extended and will remain in effect up to and including the month of December 2013, subject to further extension.

19.     In view of the foregoing, FTI respectfully submits that an aggregate reduction of $54,000 in fees is appropriate and sufficient to address the concerns expressed by the Trustee. Accordingly, FTI is seeking interim compensation for the Fee Period in the amount of $7,298,028 (including the $59,225.00 from the First Interim Fee Application previously deferred), and reimbursement for expenses for the Fee Period in the amount of $250,791.68. Of the total amount sought, the sum of $238,803.00 of fees and $10,426.44 of expenses were attributable to the Walter Project Services (see Application at paragraphs 10, 11 and 28-30.) As is more fully set forth in the Application, any amounts that are awarded on account of the Walter Project Services will be funded by Walter Investment Management Corp (upon presentation to it of an order awarding such fees and expenses,) and not the Debtors or their estates. Accordingly, as provided in the Application, it is respectfully requested that any portion of the fees and expenses that are awarded on account of the Walter Project Services be authorized without a

9

holdback. Additionally, FTI proposes to seek approval for its Rollover Provision in the amount of $241,362.00 (which incorporates the Voluntary Reduction).

WHEREFORE, FTI respectfully requests that the Court enter an order: (a) approving interim compensation in the sum of $7,298,028.00 and interim reimbursement of expenses in the sum of $250,791.68 for the Fee Period, (b) approving that the amount of $238,803.00 of the above interim compensation related to the Walter Project Services be paid in full without a holdback (c) approving the Rollover Provision in the amount of $241,362.00, (d) approving and directing prompt payment of all compensation and expenses not previously paid, and (e) granting to FTI such other and further relief as the Court may deem proper.

New York, New York
 Dated: April 9, 2013

Respectfully submitted,

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation

By:  s/John H. Drucker
John H. Drucker, Esq.
900 Third Avenue – 16th Floor
New York, NY  10022
(212) 752-8000
(646) 563- 7923 Facsimile

*Counsel for FTI Consulting, Inc.,
Financial Advisor for the Debtors*

44627/0071-9430142v3