Presentment Date and Time: April 19, 2013 at 12:00 p.m. (ET)
Objection Deadline: April 18, 2013 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF
ERNST & YOUNG LLP AS TAX ADVISOR TO THE
DEBTORS *NUNC PRO TUNC* TO OCTOBER 1, 2012**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

    The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**")[1] hereby apply (the "**Application**")[2] for entry of an order, the proposed form of

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below).

[2] Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Application may refer to http://www.kccllc.net/rescap for additional information.

which is attached as <u>Exhibit 1</u>, under sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"), authorizing the employment and retention of Ernst & Young LLP ("**EY LLP**") as tax advisor, *nunc pro tunc* to October 1, 2012, pursuant to the terms of the master services agreement between the Debtors and EY LLP (the "**MSA**") and incorporated statement of work for bankruptcy tax advisory services (the "**Tax Advisory SOW**," and together with the MSA, the "**Tax Engagement Letter**"). In support of this Application, the Debtors rely on the declaration (the "**Tucker Declaration**") of Howard Tucker, a partner of EY LLP, attached hereto as <u>Exhibit 2</u>. In further support of this Application, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014 and Local Rule 2014-1.

**BACKGROUND**

2.  The Debtors are a leading residential real estate finance company indirectly owned by AFI, which is not a Debtor. As of March 31, 2012, the Debtors were the fifth largest servicer of residential mortgage loans in the United States, servicing over 2.4 million domestic mortgage loans with an aggregate unpaid principal balance of approximately $374.2 billion. In addition, prior to the Petition Date, the Debtors and their non-debtor affiliates,

including Ally Bank, were collectively the tenth largest originator of residential mortgage loans in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.[3]

3. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4. On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine-member official committee of unsecured creditors (the "**Creditors' Committee**").

5. On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the Examiner [Docket No. 674].

6. On July 27, 2012, the Court entered an *Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner* [Docket No. 925] (the "**Examiner Investigation Order**"), including the issuance of a report (the "**Examiner's Report**"). On November 26, 2012, the Examiner filed the *Second Supplement to Work Plan of Arthur J. Gonzalez, Examiner* [Docket No. 2263] (the "**Examiner Supplement**").

---

[3] Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions (the "**Whitlinger Affidavit**") [Docket No. 6]

7. On the Petition Date, the Debtors filed the Sale Motion[4], and on June 28, 2012, the Court entered an order approving the sale and bid procedures for the sale of the Debtors' assets [Docket No. 62].

8. On October 23, 2012 and October 24, 2012, the Debtors successfully conducted an auction for the sale of the Platform Sale assets (the "**Platform Auction**") to Ocwen Loan Servicing, LLC ("**Ocwen**") for $3 billion.

9. On October 25, 2012, the Debtors conducted an auction for the sale of the Legacy Sale assets (the "**Legacy Auction**," and together with the Platform Auction, the "**Auctions**") to Berkshire Hathaway Inc. ("**Berkshire**") for $1.5 billion.

10. On November 21, 2012, the Court entered orders approving the sales to Ocwen (the "**Platform Sale**") and Berkshire (the "**Legacy Sale**") [Docket Nos. 2246 and 2247]. The Debtors closed the Platform Sale in two stages on January 31, 2013 and February 15, 2013, and also closed the Legacy Sale on February 5, 2013.

## RELIEF REQUESTED

11. In light of the size and complexity of these Chapter 11 Cases, the Debtors require the services of a capable tax advisor that is familiar with the Chapter 11 process. Accordingly, by this Application, the Debtors seek entry of an order: (i) authorizing the retention and employment of EY LLP as the Debtors' tax advisor, *nunc pro tunc* to October 1, 2012, in accordance with the terms and conditions set forth in the Tax Engagement Letter, a copy of

---

[4] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bank. P. 2002, 6004, 6006 and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Hearing and Sale Deadline; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "**Sale Motion**") [Docket No. 61].

which is attached to the Tucker Declaration as Exhibit 1 thereto, and (ii) approving the terms of the Engagement Letter, including the proposed compensation arrangement (the "**Fee Structure**").

12. Historically, the Debtors have received their tax support from Ally Financial, Inc. However, in order to avoid a conflict of interest, either real or implied, the Debtors determined it was appropriate to seek independent advisors. At the request of the Debtors, EY LLP has been providing services to the Debtors since October 1, 2012. Initially, EY LLP provided advice to the Debtors related to the Debtors' options concerning its tax sharing agreement with its parent as well as the tax implications, if any, related to the closing of the aforementioned Platform and Legacy Sales. Such services were important to the Debtors in ensuring its assets, including potentially available tax attributes, are preserved for the highest value to the Debtors' estates, adverse tax consequences related to the structuring of the Section 363 asset sales or other contemplated transactions are minimized, and claims from various taxing authorities are examined and resolved as judiciously as possible at the lowest possible cost to the Debtors' estates. More recently, EY LLP is, and will continue, assisting the Debtors in their analysis and resolutions of non-real estate tax claims filed against the Debtors by both state and federal departments.

13. During this time, EY LLP also worked diligently to determine its connections to the parties in interest in these Chapter 11 cases, as discussed in more detail in the Tucker Declaration. Accordingly, the Debtors request that EY LLP be retained effective as of October 1, 2012.

**EY LLP'S QUALIFICATIONS**

14. The Debtors believe that EY LLP is well-qualified and able to provide the Debtors with effective and efficient bankruptcy tax services in these Chapter 11 cases. The Debtors selected EY LLP as their tax advisor because of EY LLP's experience in delivering such services to large and complex business entities, like the Debtors, in other Chapter 11 cases. See, e.g., Quebecor World (USA) Inc. (Bankr. S.D.N.Y. 08-10152); The PMI Group, Inc. (Bankr. D. Del. 11-13730); Neenah Enterprises, Inc. (Bankr. D. Del. 10-10360); Abitibibowater Inc. (Bankr. D. Del. 09-10617); Pilgrim's Pride Corporation (Bankr. N.D. Tex. 08-45664). As such, the Debtors submit that the retention of EY LLP in these circumstances is in the best interests of the Debtors and all of their stakeholders.

**SERVICES TO BE PROVIDED**

15. Pursuant to the terms of the Tax Engagement Letter, the Debtors seek to retain EY LLP to perform certain tax advisory services (the "**Tax Advisory Services**") during these Chapter 11 cases. A summary description of the Tax Advisory Services is set forth below:[5]

    (i)    Advising Residential Capital, LLC in developing an understanding of the tax implications of its bankruptcy restructuring alternatives and post-bankruptcy operations, including research and analysis of the applicable Internal Revenue Code, Treasury regulations, case law and other relevant US federal, state, and non-US tax authorities, as applicable;

    (ii)   Understanding reorganization and/or restructuring alternatives Residential Capital, LLC is evaluating with its existing bondholders and other creditors that may result in a change in the equity, capitalization and/or ownership of the shares of Residential Capital, LLC or its assets;

---

[5] Any description of the Tax Engagement Letter in this Application is provided solely for the convenience of the Court and parties in interest. To the extent that this Application and the terms of the Tax Engagement Letter are inconsistent, the Tax Engagement Letter shall control.

(iii) Advising with respect to the calculations ("**Section 382 calculations**") related to historical changes in ownership of Residential Capital, LLC's equity, including a review of whether the shifts in equity ownership may have caused an ownership change that will restrict the use of tax attributes (such as net operating loss, capital loss and credit carry forwards and built-in losses) and the amount of any such limitation;

(iv) Advising with respect to the determination of the amount of Residential Capital, LLC's tax attributes, section 382 limitation (if any), discharge of indebtedness income, attribute reduction and net unrealized built-in loss and an estimate of the built-in loss to be recognized during the five-year, post-ownership change recognition period based on Notice 2003-65. EY LLP will confirm whether section 382(1)(5) may be applied to the plan of reorganization and, if so, review modeling to determine whether it is more advantageous to apply section 382(1)(5) or elect section 382(1)(6);

(v) Advising with respect to the analysis related to availability, limitations and preservation of tax attributes such as net operating losses, tax credits, stock and asset basis as a result of the application of the federal and state (or non-US local country if applicable) cancellation of indebtedness provisions, including the review of calculations to determine the amount of tax attributes reduction related to debt cancellation income. EY LLP will also assist with the analysis with respect to the benefits or detriments of making other related elections, such as the election under section 108(b)(5);

(vi) Advising with respect to tax analysis associated with planned or contemplated acquisitions and divestitures, including tax return disclosure and presentation;

(vii) Advising with respect to tax analysis and research related to tax-efficient domestic restructurings, including review of stock basis computations, non-income tax consequences, and verifying tax basis of assets and tax basis of subsidiary balance sheets for purposes of evaluating transactions;

(viii) Advising with respect to the analysis of historical returns, tax positions and Residential Capital, LLC records for the application of relevant consolidated tax return rules to the current transaction, including but not limited to, deferred inter-company transactions, excess loss accounts and other consolidated return issues for each legal entity in Residential Capital, LLC's US tax group;

    (ix)    Advising with respect to the federal, state and local tax treatment (including tax return disclosure and presentation) governing the timing and deductibility of expenses incurred before and during the bankruptcy period, including but not limited to, bankruptcy costs, severance costs, interest and financing costs, legal and professional fees, and other costs incurred as Residential Capital, LLC rationalizes its operations;

    (x)    Advising with respect to the federal, state and local country tax consequences of internal restructurings and rationalization of inter-company accounts;

    (xi)    Advising with respect to the federal, state and local tax consequences of potential material bad debt and worthless stock deductions, including tax return disclosure and presentation;

    (xii)    Assisting with the documentation of, as appropriate or necessary, the tax analysis, opinions, recommendations, conclusions and correspondence for any proposed restructuring alternative, bankruptcy tax issue, or other tax matter described above, and;

    (xiii)    Advising with respect to bankruptcy related federal, state and local tax matters including research to determine tax lien and/or officer/director liability exposures related to non-payment or non- timely payment of pre-petition taxes as identified by Residential Capital, LLC or counsel, advising with respect to taxing jurisdiction correspondence and post-petition return disclosure considerations (including requests for prompt tax liability determinations) for Residential Capital, LLC's review and finalization with counsel, and overview of related tax considerations to be considered by Residential Capital, LLC and counsel in the development of bankruptcy workplan, tax department procedures related to bankruptcy tax issues, and analysis of tax claims.

16.    If the Debtors seek to expand the scope of EY LLP's retention, a supplemental expansion application will be filed with the Court. Subject to the Court's approval of the Tax Engagement Letter, EY LLP is willing to serve as the Debtors' tax advisor to perform the services described in the Tax Engagement Letter on the terms set forth therein.

## PROFESSIONAL COMPENSATION

17. For the above referenced Tax Advisory Services, the Debtors propose to compensate EY LLP at the following hourly rates as set forth in the applicable Tax Engagement Letter:

| Title | Rate Per Hour |
|---|---|
| National Tax / Transaction Services Partner / Principal | $850 |
| Partner/Principal//Executive Director | $750 |
| Senior Manager | $650 |
| Manager | $575 |
| Senior | $450 |
| Staff | $225 |

18. EY LLP intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines of the U.S. Trustee (the "**Trustee Guidelines**"), and any other applicable procedures and orders of the Court. EY LLP also intends to submit requests for compensation and reimbursement in accordance with the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals approved by the Court on July 17, 2012 [Docket No. 797] (the "**Interim Compensation Order**").

19. The Fee Structure is designed to compensate EY LLP fairly for the work of its professionals. In the normal course of business, EY LLP revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials and increased costs of doing business. EY LLP will file a supplemental affidavit with the Court and give 10 days notice to the U.S. Trustee and the Creditors' Committee prior to any increases in the rates set forth in the Application describing any such increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code.

20. The Debtors believe that the Fee Structure provided for in the Tax Engagement Letter is consistent with, and typical of, arrangements entered into by EY LLP and other similar professional services firms with respect to providing comparable services for clients similar to the Debtors, both in and outside of bankruptcy proceedings.

21. As of the Petition Date, the Debtors do not owe EY LLP any fees for pre-petition services performed or expenses incurred under the Tax Engagement Letter or otherwise. According to the Debtors' books and records, the Debtors did not pay EY LLP any amounts during the 90-day period before the Petition Date. EY LLP does not hold any retainer.

22. The terms of the Tax Engagement Letter were fully negotiated at arm's-length between the Debtors and EY LLP and the Debtors respectfully submit that these terms and provisions are reasonable and comparable to those generally obtained by professional services firms of similar stature to EY LLP and for comparable engagements.

**EY LLP'S DISINTERESTEDNESS**

23. To the best of the Debtors' knowledge based upon the Tucker Declaration, and except as disclosed therein, EY LLP (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (ii) does not hold or represent an interest adverse to the

Debtors' estates and otherwise meets the standards for employment under the Bankruptcy Code; and (iii) EY LLP's connections to the Debtors, their significant creditors or other significant parties in interest are disclosed in the Tucker Declaration. EY LLP ordinarily updates its checks of connections with parties in interest approximately every six (6) months.

## BASIS FOR RELIEF

### A.  The Bankruptcy Code Permits the Employment and Retention of EY LLP Pursuant to the Terms of the Tax Engagement Letter

24. Section 327(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

25. Section 328(a) of the Bankruptcy Code provides that a debtor subject to court approval:

> [May] employ or authorize the employment of a professional person under Section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

26. Moreover, Bankruptcy Rule 2014 requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the Office of the United States trustee.

Fed. R. Bankr. P. 2014.

27. The terms and conditions of the Tax Engagement Letter were negotiated by the Debtors and EY LLP at arm's-length and in good faith. The fees generally described herein and set forth in the Tax Engagement Letter are consistent with and typical of arrangements entered into by EY LLP and other professional services providers when rendering similar services to clients such as the Debtors. The Debtors believe that the foregoing compensation arrangement is both reasonable and market-based.

28. The Debtors respectfully submit that the professional services provided by EY LLP are important to the success of these Chapter 11 cases and request that the Court approve the immediate retention of EY LLP and the terms and conditions of the Tax Engagement Letter in substantially the form attached to the Tucker Declaration.

**B.    Indemnification**

29. As part of the overall compensation payable to EY LLP under the terms of the Tax Engagement Letter, the Debtors have agreed to indemnify and hold EY LLP harmless with respect to disclosure of reports or a third party's use or reliance on a report. The Debtors believe that the indemnification provisions of the Tax Engagement Letter are customary and reasonable for engagements of this nature.

**C.    Dispute Resolution**

30. Pursuant to the Tax Engagement Letter, the Debtors have agreed to certain procedures in connection with the resolution of disputes arising out of or relating to services performed under the Tax Engagement Letter. The Debtors believe that the dispute resolution provisions contained in the Tax Engagement Letter are customary and reasonable for engagements of this nature.

D.   *Nunc pro tunc*

31.   As noted above, prior to filing the Application, at the Debtors' request in accordance with their needs, EY LLP commenced work on Tax Advisory Services in connection with these Chapter 11 cases. EY LLP has and will continue to only perform services as directed by the Debtors. Accordingly, it is appropriate that EY LLP be retained *nunc pro tunc* to October 1, 2012.

**NOTICE**

32.   Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Office of the United States Attorney General; (c) the Office of the New York Attorney General; (d) the Office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable; (h) each of the indenture trustees for the Debtors' outstanding notes issuances; (i) Ally Financial Inc.; (j) Barclays Bank PLC, as administrative agent for the lenders under the debtor in possession financing facility; (k) Ocwen Loan Servicing LLC and its counsel; (l) the Committee; and (m) all parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

**NO PREVIOUS REQUEST**

33.   No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) substantially in the form attached hereto as <u>Exhibit 1</u>, granting the relief requested in the Application, (ii) approving the terms of the Tax Engagement Letter, and (iii) granting such other and further relief to the Debtors as the Court may deem just and proper.

Dated: April 9, 2013

RESIDENTIAL CAPITAL, LLC,
on behalf of itself and each of its Debtor subsidiaries

By: /s/ Jill M. Horner
Name: Jill Horner
Title: Chief Financial Executive