**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    RESIDENTIAL CAPITAL, LLC, *et al*,<br><br>                                          Debtors. | FOR PUBLICATION<br><br>Chapter 11<br><br>Case No. 12-12020 (MG) |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNSECURED CREDITORS COMMITTEE'S PRECLUSION MOTION**

*A P P E A R A N C E S:*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Counsel for the Official Committee of Unsecured Creditors*
1177 Avenue of the Americas
New York, New York 10036
By:   Kenneth H. Eckstein, Esq.
        Philip S. Kaufman, Esq.
        Adina C. Levine, Esq.
        Arielle Warshall Katz, Esq.

MORRISON & FOERSTER LLP
*Counsel for the Debtors and Debtors in Possession*
1290 Avenue of the Americas
New York, New York 10104
By:   Gary S. Lee, Esq.
        Anthony Princi, Esq.
        Darryl P. Rains, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Motion of the Official Committee of Unsecured Creditors to Preclude the Debtors from Offering Any Evidence of their Reliance on Counsel for Advice Concerning the Evaluation, Negotiation or Approval of the RMBS Settlement* (the "Motion," ECF Doc. # 2906). MBIA Insurance Corporation, Wilmington Trust, and FGIC have filed joinders to the Motion (ECF Doc. ## 2931, 2983, and 2932, respectively). The Debtors oppose the Motion ("Response," ECF Doc. # 2984) and their opposition is supported by the declaration of LaShann M. DeArcy, an attorney at Morrison & Foerster (ECF Doc. # 2982). The Unsecured Creditors Committee (the "Committee") filed their reply on February 25, 2013 ("Reply," ECF Doc. # 3025). The Court heard argument on the Motion on April 11, 2013.

For the reasons explained below, the Court grants in part and denies in part the Committee's Motion.

## I.    BACKGROUND

Discovery relating to the RMBS Trust Settlement Motion (the "9019 Motion") began last August and has continued at a swift pace thereafter. Under the applicable Case Management and Scheduling Order, the deadlines for completing all fact and expert discovery were November 16, 2012 and December 14, 2012, respectively. (ECF Doc. # 1926.) After completing document production, the Debtors provided the Committee with privilege logs reflecting at least 2,200 documents withheld on the basis of attorney-client privilege. According to the Committee, the documents withheld by Debtors encompassed a range of categories involving communications with counsel. Mot. ¶ 6.

Throughout the discovery period, the Committee has consistently pressed for the production of all documents bearing on the evaluation, negotiation, and approval of the RMBS

2

Trust Settlement, including any documents communicating legal advice, analysis of claims, or analysis of potential liabilities to the Debtors' Board of Directors ("ResCap Board") or its individual members.  With few exceptions, the Debtors' counsel asserted attorney-client privilege to all document production requests and deposition testimony concerning advice of counsel.  The Committee argues that the Debtors should be precluded at trial from offering any evidence of reliance on advice of counsel—affirmatively or defensively—in seeking approval of the RMBS Trust Settlement.

The Committee's counsel argues that the Debtors' counsel affirmatively represented to them and the Court that the Debtors would not offer evidence of the advice of counsel.  On November 4, 2012, the Debtors filed a letter with the Court ("November 4th Letter," ECF Doc. # 2052).  The parties now dispute whether the November 4th Letter served as a promise from the Debtors not to raise the argument that they relied on the advice of counsel in approving the RMBS Trust Settlement.  The Committee claims that it dropped its attack on the Debtors' privilege assertions because the Debtors' November 4th Letter "explicitly disclaim[ed]" the reliance-on-counsel argument.  The Debtors argue that the letter did no such thing, and that, in fact, the Debtors never intended to drop the argument.  Indeed, the parties entered into a Limited Waiver (defined below) on November 5, 2012 in which the Debtors agreed to produce a narrow range of previously-withheld documents concerning the approval of the RMBS Trust Settlement. The Debtors argue that the main purpose of entering into the Limited Waiver was to preserve the Debtors' ability to argue that they relied on counsel in approving the settlement.  Nonetheless, the Committee's interpretation of the substance of the November 4th Letter, and not the Limited Waiver, led the Committee to stop its challenge of the documents withheld by the Debtors.

According to the Committee, the "mere handful" of documents produced pursuant to the Limited Waiver includes a two-page presentation distributed to the ResCap Board on May 9, 2012, minutes before the Board approved the settlement.  The Debtors did not produce the balance of the withheld documents, which included presentations made to the ResCap Board concerning representation and warranty ("R&W") claims in general or communications between individual ResCap Board members and counsel with respect to the RMBS Trust Settlement itself.

The Committee also asserts that, on the basis of privilege, it was denied opportunities to inquire into the substance of attorney-client communications during the depositions of the Debtors' witnesses.  At a hearing on September 19, 2012, the Debtors strongly objected to depositions of their outside counsel who were participants in the negotiations, representing to the Court that their internal business people, including their in-house counsel, had been "substantially involved" in the negotiation of the RMBS Trust Settlement.  As a result, the Court did not permit the depositions of outside counsel in connection with the negotiations of the settlement; the parties were free to and did depose other participants in the negotiations (including in-house counsel).  With respect to the issue of the Debtors' assertion of attorney-client privilege, the Court told the Debtors' counsel during the September 19, 2012 hearing that "You're going to have a real problem if you're going to assert privilege with respect to communications from counsel that form any part of the basis for directors approving the settlement." Sept. 19, 2012 Hr'g Tr. at 28 (ECF Doc. # 1616).

During the deposition of Thomas Marano, the Chairman and Chief Executive Officer of Residential Capital, LLC, Debtors' counsel consistently invoked the attorney-client privilege, instructing the witness not to answer numerous questions about legal advice he received

regarding the negotiation and drafting of the RMBS Trust Settlement. Mot. Ex. E. Despite Marano's testimony that he "relied" on the advice of counsel in approving the settlement (Mot. Ex. E at 188-89), Marano was repeatedly instructed not to reveal the substance of any of his communications with counsel concerning the RMBS Trust Settlement, including specifically:

- His understanding of the legal defenses available to defeat the R&W claims encompassed by the settlement;
- His communications with counsel concerning ResCap's potential liability for the R&W claims;
- His knowledge concerning the extent to which the Plan Support Agreements were integral to the RMBS Settlement;
- The legal advice given to the ResCap Board concerning the Debtors' potential claims against Ally Financial, Inc. ("AFI"); and
- His communications with counsel concerning his experience as ResCap's CEO with transactions between ResCap and AFI during the period leading up to the RMBS Trust Settlement.

Mot. ¶ 9.

Despite producing a "mere handful" of documents pursuant to the Limited Waiver, and repeatedly instructing witnesses not to answer on the basis of attorney-client privilege during depositions, the Debtors' February 1, 2013 reply briefs to the RMBS Trust Settlement objections ("RMBS Reply Briefs," ECF Doc. ## 2803 and 2804) contain numerous statements that the Debtors relied on the advice of counsel in approving the RMBS Trust Settlement. Among the examples:

- "[W]hen it came to the critical negotiations, the Debtors *relied exclusively on Ms. Hamzehpour and their outside counsel at Morrison & Foerster*" (ECF Doc. # 2803 at 29) (emphasis added);

- "[The ResCap directors] cannot be found to have acted without due care *if they relied, in good faith, on the recommendations and advice of the board's advisors*" (ECF Doc. # 2804 at 9) (emphasis added);

- "The directors were *entitled to rely on* these experts' advice and counsel" (ECF Doc. # 2804 at 6-7) (emphasis added).

5

### A. The Debtors' Response to the Committee's Preclusion Motion

The Debtors make two arguments in response to the Committee's Motion. First, the Debtors claim that they never "explicitly disclaim[ed]" their intention to offer evidence that the ResCap directors relied upon the advice of counsel in deciding to approve the RMBS Trust Settlement. Second, regardless whether the Debtors had represented that they would not argue that they relied on counsel, all the evidence that the Debtors intend to offer at trial is either not privileged or allowable because of the Limited Waiver agreed to by the parties.

As to the first argument, the Debtors contend that since September 2012, the Debtors have made clear that they intend to offer reliance on counsel evidence, and that the November 4th Letter was misconstrued by the Committee and did not in fact state that the Debtors "explicitly disclaim[ed]" any intention to offer reliance on counsel evidence. Rather, on November 5, 2012, the Court approved a stipulated order waiving the Debtors' attorney-client privilege on a limited basis (the "Limited Waiver"). The Limited Waiver allowed production of otherwise privileged documents concerning the following topics:

- Legal advice, presentations of counsel, and communications at the May 9, 2012 meeting of the Board of Directors of ResCap in connection with its approval of the RMBS Trust Settlement and Plan Support Agreements;

- Estimates of damages exposures and presentation materials prepared by Jeff Cancelliere and/or FTI Consulting in April 2012 for use by counsel in negotiating the RMBS Trust Settlement, the contents of which were summarized by counsel in oral communications and presentations to members of the ResCap Board of Directors; and

- Legal advice and communications of counsel to the ResCap Board of Directors in connection with amendments to the RMBS Trust Settlement.

Limited Waiver ¶ 1(a)-(c).[1]

---

[1] The Limited Waiver also contains a provision that states: "This Order shall be without prejudice to the rights of the Committee of Unsecured Creditors to contest the Debtors' and/or AFI's assertion of the attorney-client

As to the second argument, the Debtors identify five categories of evidence they believe the Committee wishes to preclude, and argue that either (1) none of these examples are subject to the attorney-client privilege or (2) the evidence was in fact produced in conjunction with the Limited Waiver so the Debtors could use it to show that they relied on counsel. The five categories are as follows:

- (1) *Critical Negotiations Conducted by the Debtors' Attorneys*. The Debtors argue that they only intend to introduce the identities of the Debtors' lead negotiators – their attorneys.

- (2) *Ms. Hamzehpour's Personal Knowledge Regarding Settlement Negotiations*. The Debtors assert that they will not introduce evidence regarding privileged communications between Gary Lee of Morrison & Foerster and Tammy Hamzehpour, in-house counsel at ResCap. However, as Hamzehpour was a direct participant in many of the key negotiations with Kathy Patrick of the Steering Committee Group, the Debtors do plan to elicit her testimony about those negotiations.

- (3) *Legal Advice Provided to Directors at the May 9 Board Meeting*. The Debtors intend to introduce evidence showing that the directors relied on the advice and counsel of their lawyers and other professionals in connection with approval of the RMBS Trust Settlement. However, they argue that the only evidence they intend to offer is limited to that evidence produced pursuant to the Limited Waiver.

- (4) *The Directors' Experience with R&W Liability*. The Debtors claim that they will introduce evidence showing the Directors' general experience with R&W liability claims through publicly-available, non-privileged documents and information.

- (5) *The Expert Testimony of Jeffrey Lipps*. The Debtors plan to offer the expert testimony of Lipps, one of the Debtors' outside counsel in R&W litigation, concerning the litigation risks and potential benefits of further litigation to show that the proposed settlement strikes the proper balance of risk and reward, but the Debtors do not intend to offer witnesses to testify to the understanding of RMBS claims they supposedly obtained from Lipps.

---

privilege, the work product doctrine, and/or the common interest doctrine concerning the documents produced by the Debtors and/or AFI in this action, including the documents produced pursuant to this Order." Limited Waiver ¶ 4.

## II.   DISCUSSION

It has long been settled in this Circuit that "the attorney-client privilege cannot at once be used as a shield and a sword." *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 468 (S.D.N.Y. 1996). The rationale for this rule is simple: "A [party] may not use the privilege to prejudice his opponent's case *or to disclose some selected communications for self-serving purposes*." *Trouble v. The Wet Seal, Inc.,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (precluding advice of counsel defense because defendant waived defense "by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests" and precluding party from referring to advice of counsel—even in response to argument of bad faith—where party previously stated in court filings that it had no intention of using advice of counsel) (emphasis added). Therefore, "[a] party 'who intends to rely at trial' on the advice of counsel 'must make a full disclosure during discovery; failure to do so constitutes a waiver' of the advice-of-counsel defense." *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936 (KMW), 2011 WL 1642434, at *2 (S.D.N.Y. Apr. 20, 2011) (citation omitted).

Courts have repeatedly held that, where a party "blocked his adversary from conducting discovery on [his communications with counsel], he will not now be heard to advance reliance on counsel." *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.,* 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000), *aff'd,* 4 F. App'x 81 (2d Cir. 2001); *see also McLean v. Garage Mgmt. Corp.,* No. 10 Civ. 3950 (DLC), 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (precluding party from offering defense based on good faith reliance on the advice of counsel after previous invocation of attorney-client privilege); *Arista Records,* 2011 WL 1642434, at *2 (precluding defendants from offering evidence or argument at trial regarding their purported belief in the

8

lawfulness of their conduct where defendants had blocked inquiry on the basis of privilege).[2]

Indeed, where a party "invoke[s] attorney-client privilege throughout discovery, [this] automatically 'constitutes a waiver of the advice-of-counsel defense.'" *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003) (citation omitted) (emphasis added). A court should "exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id*.

In *Chesapeake Corp. v. Shore*, 771 A.2d 293, 301 (Del. Ch. 2000), defendants had invoked the attorney-client privilege to block from discovery much of the professional advice they had received in taking action as directors of a corporation's board. The defendants later "attempted to use some of this concealed advice as a sword," arguing that the board had considered several items that the opposing party had been prevented from discovering. *Id*. The court condemned that tactic as "inequitable" and refused to consider any evidence of the advice given to the board. The court cites to a hearing transcript where Vice Chancellor Jacobs stated:

> One would think that a board having [a burden of showing the reasonableness of their process and also of the result that they reached] would want to expose their deliberative process to full view, but they are not legally required to do so. The defendants are the masters of the evidence they will present in their defense,

---

[2]   The Debtors attempt to distinguish the cases that the Committee relies on by arguing that in those cases, the defendant invoked a "good faith" defense based on the defendant's asserted belief in the lawfulness of his or her conduct—in other words, the defendant's state of mind was directly at issue in those cases (and is not here). For example, in *Arista Records*, the defendants attempted to assert, at the damages phase of a copyright infringement case, their good faith belief in the lawfulness of their conduct despite having asserted the privilege for communications with counsel. 2011 WL 1642434, at *2. Similarly, in *E.G.L. Gem Lab Ltd.,* the defendant asserted at trial a good faith defense to willful trademark infringement based on advice of counsel despite having asserted the privilege with regard to such advice. 90 F. Supp. 2d at 296 n.133. In *Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F. Supp. 891 (S.D.N.Y. 1990), the defendant insurance company asserted advice of counsel in defense of a bad faith claim in an ERISA lawsuit without offering any opinion of counsel. Rather than for the purpose of showing good faith, the Debtors argue that here, the ResCap Board members are entitled to put forth "reliance on counsel" evidence as rebuttal evidence to the "due care" challenge asserted by the Committee. This argument is addressed in further detail below.

> but they must accept the consequences of their tactical choice. Here the defendants' tactical decision to bar on privilege grounds discovery into what the board was advised was their fiduciary duty and into the content of the board's deliberations will in turn preclude them from proving those deliberations at trial to defend their position that their decision was reasonable and made with due care.

*Id*. at n.8 (quoting *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.,* Civ. A. No. 16584, H'rg. Tr. at 505 (Del. Ch. Oct. 23, 1998) (Jacobs, V.C.)).

The Court need not resolve the question whether the Debtors had or had not "explicitly disclaim[ed]" using reliance on advice of counsel. Whatever the answer may be, the record quite clearly reflects that the Debtors are attempting to cherry-pick the specific advice of counsel evidence they have disclosed and intend to introduce if permitted to do so during the trial. Debtors' counsel engaged in selective disclosure of legal advice by providing a Limited Waiver to the legal advice given to the ResCap Board at the May 9, 2012 board meeting, while continuing to assert attorney-client privilege to bar discovery of documents or deposition testimony on the same subject matter.

This is not an issue arising from a few documents listed in a privilege log, or a few questions to deposition witnesses. The Court finds, as a fact, that Debtors' counsel purposely and consistently adopted the strategy of selective (and extremely limited) disclosure. The law does not permit such cherry-picking of reliance on counsel evidence. The consequences of failing to make *full* disclosure of the advice that was given is that the Debtors are now precluded from offering *any* evidence of the legal advice provided to the Debtors' officers and directors that was considered in connection with the decision to enter into the RMBS Trust Settlement.

### A. Waiver of Attorney-Client Privilege When "Reliance on Counsel" is Used as Rebuttal for "Due Care" Challenge

In making a business decision, the directors of a corporation are presumed to act on an informed basis, in good faith, and with the honest belief that the action taken is in the best interest of the company. *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984). "[T]o invoke the rule's protection, directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them." *Id*.

Accordingly, any attack on a Board's decision to approve a settlement will likely focus on the process by which the directors' decisions were made. *See, e.g., In re Walt Disney Co. Deriv. Litig.,* 907 A.2d 693, 749 (Del. Ch. 2005) (concluding that due care inquiry does not permit review of the substance, or merits, of the challenged decision), *aff'd,* 906 A.2d 27 (Del. 2006); *Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC),* 420 B.R. 112, 146-47 (Bankr. S.D.N.Y. 2009), *aff'd*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011). A director facing such a "process" challenge may rebut it by offering evidence that he or she sought the advice of counsel. Under Delaware law, directors are protected when they rely "in good faith upon information presented to them from various sources, including 'any other persons as to matters the member reasonably believes are within such person's professional or expert competence and who has been selected with reasonable care by and on behalf of the corporation.'" *Brehm v. Eisner (In re Walt Disney Co. Deriv. Litig.),* 906 A.2d 27, 60 (Del. 2006) (quoting 8 Del. C. § 141(e)); *see also Cinerama, Inc. v. Technicolor,* 663 A.2d 1134, 1142 (Del. Ch. 1994) (stating that board's "reasonable reliance upon expert counsel" is a "pertinent factor in evaluating whether" the board "met a standard of fairness in their dealings with respect to corporate powers"), *aff'd*, 663 A.2d 1156 (Del. 1995); *Berman v. Le Beau Inter-America, Inc.,* 62 B.R. 262, 268 (S.D.N.Y. 1986) (stating that directors had a "right . . . to rely upon the

financial statements of the accountants and . . . the reports of their highly qualified attorneys").

Courts have allowed directors to rebut due care challenges by showing their processes included consultations with counsel. *See, e.g., Minn. Invco of RSA No. 7, Inc. v. Midwest Wireless Holdings LLC*, 903 A.2d 786, 797-98 (Del. Ch. 2006) (finding no waiver of attorney-client privilege; "evidence at trial shows that each [director] approved the amendment, upon the advice of counsel and Bear Stearns . . . the court concludes that the board members were fully informed and acted in the best interest of the company"); *In re Cheyenne Software, Inc. Shareholders Litig.,* Civ. A. No. 14941, 1996 Del. Ch. LEXIS 142, at *8-9 (Del. Ch. Nov. 7, 1996) (finding no waiver of attorney-client privilege; board of directors "retained two investment banks and legal counsel for advice"); *Citron v. DuPont de Nemours & Co.,* 584 A.2d 490, 510-512 (Del. Ch. 1990) (rejecting due care challenge without waiver of attorney-client privilege where directors were "counseled by [legal and financial advisors]").

However, a party who argues that it made a business decision because of its reliance on counsel, regardless of whether it is asserted as a "defense" to a "due care" challenge, still waives its attorney-client privilege by placing its reliance on counsel directly at issue. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, No. 04 Civ. 10014, 2009 U.S. Dist. LEXIS 89183, at *45 (S.D.N.Y. Sept. 28, 2009). *See also Chesapeake Corp.,* 771 A.2d at 301 n.8; *In re Subpoena Issued to Dennis Friedman, Esq.,* 286 B.R. 505, 509 n.4 (Bankr. S.D.N.Y. 2002) (stating that directors who proposed to use advice of counsel to substantiate their due care "created the situation where their attorney's advice is both relevant and possibly crucial to the plaintiff's preparation of its case"); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr.,* 258 F.R.D. 95, 108 (S.D.N.Y. 2009) (concluding that privilege deemed waived and communications with counsel required to be disclosed to support "due care" defense based on advice of counsel).

*Aristocrat Leisure* is particularly analogous to this case. *Aristocrat Leisure* involved a dispute between bondholders and an issuer, where the sole issue at trial was whether certain bondholders unreasonably failed to mitigate their consequential damages after the issuer's breach. 2009 U.S. Dist. LEXIS 89183, at *7. The issuer brought a motion *in limine* asking the court to prevent bondholders from introducing evidence suggesting that they received, considered, and/or relied on the advice of counsel in connection with their decisions vis-à-vis the bonds they held; in addition, should the court allow this evidence, the issuer asked the court to find that such testimony waived the attorney-client and work product privileges and would allow the issuer to re-open discovery regarding the substance of counsel's advice. *Id.* at *14. The bondholders, on the other hand, drew a distinction between the argument that they sought legal advice as one aspect of an overall course of reasonable conduct, and the argument that they acted reasonably *because* they relied on the advice rendered by legal counsel. *Id.* at *39. According to the bondholders, the first argument does not waive the privilege; the second does. *Id.*

The court noted that the bondholders represented they would not argue that they *relied* on counsel's advice in opposing the issuer's claim that their actions were unreasonable; rather, they wanted to show the jury that counsel was consulted on the subject matter underlying this litigation. *Id.* at *45-46. The court found that, "[b]ecause the Bondholders are not claiming to have relied on an opinion of counsel, the actual content of the advice provided to the Bondholders is irrelevant." *Id.*

Nonetheless, the court cautioned the bondholders "not to sidestep this ruling by imparting to the jury the actual content of the legal advice provided by counsel, or by arguing that an individual Bondholder's actions were reasonable because they relied on an opinion of counsel. Arguments such as these indeed would put the subject matter of the communication with counsel

13

at issue and would result in a waiver of the privilege. Until such a misstep occurs, the Court declines to find that the privilege has been waived." *Id*. at *48-49.

The Debtors are walking a fine line between arguing that they sought and received the advice of counsel when negotiating and evaluating (and ultimately approving) the RMBS Trust Settlement, and that they *relied* on the advice of counsel in approving the RMBS Trust Settlement. For example, the Debtors claim they only want to introduce the fact that the critical negotiations were handled by the Debtors' attorneys, without delving into the substance of those negotiations (to the extent they were undertaken by the Debtors' attorneys). *See* Response at 11. Yet, the Debtors' RMBS Reply Briefs are replete with statements such as "[t]he directors *were entitled to rely on* these [legal and financial] experts' advice and counsel" and "ResCap LLC's directors . . . *relied on advice and presentation materials from their advisors* that were fair, accurate, and adequate to the task." (ECF Doc. # 2804 at 3, 6-7.)

The attorney-client privilege is not waived if the Debtors argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement. However, after having asserted the attorney-client privilege throughout discovery, the Debtors cannot now introduce the substance of whatever advice it sought and received in order to demonstrate that it exercised proper business judgment in approving the RMBS Trust Settlement, even for the purpose of rebutting a "due care" challenge. *Aristocrat Leisure,* 2009 U.S. Dist. LEXIS 89183, at *48-49.

### B.     Other Evidence the Committee Appears to Assert Should be Precluded

It is unclear to the Court whether the Committee's preclusion motion also seeks to exclude other evidence, including the identities of the Debtors' attorneys who conducted the critical negotiations. The negotiations between the Debtors and the Steering Committee Group

14

and the Talcott Franklin Group are not protected by attorney-client privilege, so the identity of the negotiators is not precluded. Factual reports regarding the negotiations (who said what to whom during the negotiations) also would not be protected by attorney-client privilege, and may be the subject of testimony during trial. At the request of the Debtors and the settlement counterparties, depositions of outside counsel who conducted the negotiations were not permitted. But other percipient witnesses to the negotiations were deposed. All parties agree that no privilege applies, so testimony about the negotiations by the other percipient witnesses will be permitted. Legal advice to the Board members or ResCap officers concerning the negotiations would be protected by attorney-client privilege, and because of the Debtors' attempted selective disclosure of privileged information, evidence of any legal advice given by the negotiators during the negotiations is also precluded.

It was also unclear whether the Committee sought to preclude evidence of the personal experience of ResCap's Board members with an understanding of R&W liability. While such evidence may not be used as a back door to introduce legal advice given by ResCap's attorneys, such evidence cannot be excluded *in limine*, although it remains subject to objections during trial and possible *voir dire*, if necessary.

Finally, the Committee also appears to object to Jeffrey Lipps' proposed expert testimony as to the strengths and weaknesses of the R&W Claims. There may be other issues with Lipps' proposed testimony, but it is not excludable based on the rulings discussed above concerning legal advice given to the Board, unless of course Lipps attempts to testify to any legal advice he himself gave to the Debtors' officers or Board members. All other objections to the Lipps testimony are preserved for further motions *in limine* or during trial.

During oral argument on April 11, 2012, Debtors' counsel made an offer of proof with respect to evidence Debtors expect to offer in evidence at trial. Except to the extent that such evidence is precluded by the rulings reflected in this opinion, all other evidentiary objections are reserved for decision on motions *in limine* or during trial.

### III.    CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** the Committee's Motion.

**IT IS SO ORDERED.**

Dated: April 12, 2013
       New York, New York

                                         ____*Martin Glenn*____
                                            MARTIN GLENN
                                      United States Bankruptcy Judge