1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, ET AL.,

9

10               Debtors.

11  - - - - - - - - - - - - - - - - - - - -x

12

13               United States Bankruptcy Court

14               One Bowling Green

15               New York, New York

16

17               April 11, 2013

18               12:24 PM

19

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Hearing RE:   Preclusion

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Linda Ferrara

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

1

2   A P P E A R A N C E S :

3   MORRISON FOERSTER

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8   BY:   DARRYL P. RAINS, ESQ.

9

10

11   KRAMER LEVIN NAFTALIS & FRANKEL LLP

12        Attorneys for Creditors' Committee

13        1177 Avenue of the Americas

14        New York, NY 10036

15

16   BY:   PHILIP S. KAUFMAN, ESQ.

17

18

19

20

21

22

23

24

25

1                      P R O C E E D I N G S

2              THE COURT:  Mr. Kaufman, are you up now?

3              MR. KAUFMAN:  Yes, Your Honor.  Philip Kaufman, Kramer

4    Levin Naftalis & Frankel for the committee.  Good morning, Your

5    Honor.

6              THE COURT:  Good afternoon.

7              MR. KAUFMAN:  It is now this afternoon.  This motion

8    seeks to preclude the debtors from offering evidence of their

9    reliance on advice of counsel in connection with the

10   evaluation, negotiation and approval of the RMBS settlement.

11   The basis for the motion is straightforward.  The debtors

12   represented to the Court and to the parties that they were not

13   going to offer evidence of advice of counsel to support their

14   9019 motion.  They expressly stated that the motion does not

15   put attorney advice at issue and they disclaimed any intention

16   to use the advice of counsel to prove the reasonableness of the

17   settlement.  That's right in their November 4th letter to the

18   Court.

19             As a result of those representations, the committee

20   withdrew its attack on the debtors' claim of privilege --

21             THE COURT:  Hang on a second.  Okay.  Go ahead.

22             MR. KAUFMAN:  -- and discovery proceeded within the

23   parameters that the debtor had chosen.  The committee and

24   others thereafter filed objections to the 9019 motion based on

25   the record that had been developed.  Yet in response to those

1   objections, the debtors suddenly did an about face and made

2   clear that their position with respect to their motion rested

3   largely, if not entirely, on advice of counsel evidence.

4          We believe that they have no right at this point to

5   offer such evidence.  Simply put, Your Honor, the debtors stood

6   on privilege to protect their communications with counsel from

7   discovery and they cannot now use those communications to

8   support their position that the RMBS settlement was reasonable

9   and made at arm's-length, in good faith.

10         When we filed this preclusion motion, I was hard-

11  pressed frankly, to figure out what the debtors could say by

12  way of response and we now know what their response was.  Their

13  response was to deny the record, basically saying no, we never

14  said we weren't going to use advice of counsel evidence.  Mr.

15  Princi told the Court back in September that we were, as if

16  their November 4th letter didn't exist or didn't count.  And,

17  in fact, in that letter, they sought to distance themselves

18  from what Mr. Princi told the Court back in September saying

19  that he was merely responding to an impromptu question from the

20  Court.

21         I'm not going to burden the Court with reiterating

22  what's been said in the papers.  If Your Honor has specific

23  questions, I'm happy to try to answer them.  We think the

24  motion is well-founded and should be granted.

25         THE COURT:  Tell me, just summarize for me, what the

1  debtors did disclose pursuant to the limited waiver with

2  respect to the May 9, 2012 board meeting.

3          MR. KAUFMAN:  Yes.  They disclosed -- I can't give you

4  the exact number of pieces of paper that were disclosed, but it

5  really was approximately a handful of documents that included a

6  two-page presentation that was handed out to the ResCap board

7  twenty minutes before the meeting began.

8          Beyond that, we received nothing in the way of --

9          THE COURT:  Was their deposition testimony about

10 what -- was there an oral presentation to the board by counsel?

11         MR. KAUFMAN:  There was.

12         THE COURT:  And were you permitted to take deposition

13 testimony about what advice was given to the board by counsel?

14         MR. KAUFMAN:  The answer is yes and no.  In part, yes,

15 we were able to examine on the two-page presentation but we

16 were not allowed to pursue any other communications with

17 counsel that may have been had previously including

18 communications between counsel and individual members of the

19 ResCap board.

20         THE COURT:  So, Mr. Marano -- how does he pronounce

21 his name?

22         MR. KAUFMAN:  Excuse me, Your Honor?

23         THE COURT:  Mr. Marano?

24         MR. KAUFMAN:  Yes.

25         THE COURT:  He's the CEO.

1          MR. KAUFMAN:  He is the CEO and chairman.

2          THE COURT:  Yeah, he's the chairman of the board.  And

3    from the privilege log, I see that there were other

4    communications with Mr. Marano by counsel outside of the board

5    meeting itself.

6          MR. KAUFMAN:  Yes, that doesn't -- yes, I am aware of

7    that.  In fact, Your Honor, when we were negotiating the

8    limited waiver stipulation, one of the categories that I was

9    insisting on be included within the stipulation, were all of

10   the communications had between counsel and individual board

11   members and the response was, no, you can only get those

12   communications with the full board and not with individual

13   board members and so we were barred from getting any of those.

14         THE COURT:  All right.  And I read the excerpts of the

15   Marano deposition that you attached.

16         MR. KAUFMAN:  Yes.

17         THE COURT:  And I've seen where -- where and how he

18   was instructed not to answer questions.  I didn't read -- I

19   don't have the whole transcript.  Was -- at any point during

20   Mr. Marano's deposition, was he permitted to testify about the

21   advice of counsel regarding the RMBS claims or settlement,

22   other than for what occurred at the board meeting on May 9th?

23         MR. KAUFMAN:  No.

24         THE COURT:  All right.

25         MR. KAUFMAN:  And I might add, Your Honor, to explain

1   fully, as a result of what had been represented, our entire

2   approach to discovery, to depositions, which did not begin

3   until after that letter was submitted, was okay, advice of

4   counsel evidence is off the table. We didn't seek to pursue

5   that information because we were not allowed to get it and the

6   debtors were standing on privilege and saying we're not going

7   to rely on it.

8           THE COURT: Well, what did you understand them to be

9   doing when they permitted you to inquire about the

10  presentation -- the legal advice presentation to the board on

11  May 9, 2012?

12          MR. KAUFMAN: Well, Your Honor, my view of that was

13  we're not going to refuse to receive information that the

14  debtors want to give us. We were very unhappy with the very

15  limited scope of what they were prepared to give. And, in

16  fact, that's why we wrote the November 2nd letter to the Court

17  that we did; why we continued to challenge their privilege.

18  But my view was and I thought and still believe that it was

19  supported by the law that you can't pick and choose what pieces

20  of advice you get that you want to disclose.

21          THE COURT: You can't cherry-pick.

22          MR. KAUFMAN: You can't cherry-pick and, you know, it

23  was very nice of them to give us two-paged presentation that

24  was handed out to the board that was prepared by counsel and

25  maybe even to share with us what counsel told them about that

1  two-paged presentation at the meeting but that's all we got.

2  We weren't able to get the entirety of what the reply briefs to

3  the objections demonstrate went way beyond what was in that

4  two-paged presentation.

5          THE COURT:  Well, let me ask -- let me shift the

6  question a bit.  My reading of the cases is that there's a

7  distinction drawn between permitting the debtors a witness,

8  Marano, or someone else to say I sought advice from Joe Smith

9  and he gave me advice.  That process fact that I did seek

10 advice and received the advice would not be precluded but the

11 substance of the -- but if --

12         MR. KAUFMAN:  It wouldn't be a waiver.

13         THE COURT:  Right.

14         MR. KAUFMAN:  I believe that's -- it wouldn't be a

15 waiver by saying that.

16         THE COURT:  All right.  That's different from where

17 they refused to permit inquiry -- and your position is that

18 they would not be permitted now to offer testimony of the

19 advice that was actually given.

20         MR. KAUFMAN:  Yes.

21         THE COURT:  Do you agree that they could put on

22 testimony -- be shocked if it hadn't happened but yes, the

23 board asked for legal advice and they got it.  What it is, I

24 don't know but they got it.

25         MR. KAUFMAN:  Well, they could say that but I believe

1   that without disclosing -- without being able to disclose what

2   advice they got, what consideration was given to it, what

3   evaluations were made as a result, that they would not be able

4   to carry their burden on this motion.

5         THE COURT:  Different issue.  Well, when you say on

6   this motion, you're talking about --

7         MR. KAUFMAN:  I'm talking about on the --

8         THE COURT:  -- the settlement.

9         MR. KAUFMAN:  -- 9019 motion.

10         THE COURT:  Okay.  That's a different issue.  Okay.

11   Just let me -- you seem to be seeking preclusion of other

12   things that I am a little troubled about and maybe I just

13   misunderstand.  I thought you were seeking preclusion of the

14   identities of the debtors' attorneys who conducted the critical

15   negotiations.

16         MR. KAUFMAN:  No.

17         THE COURT:  Okay.

18         MR. KAUFMAN:  No, not at all.  We, I mean --

19         THE COURT:  And you examined them.  So whatever

20   happened --

21         MR. KAUFMAN:  We did not examine the lawyers,

22   obviously.

23         THE COURT:  Right.

24         MR. KAUFMAN:  We were not allowed to do that but we

25   know the identities of the lawyers who were involved.

RESIDENTIAL CAPITAL, LLC, ET AL.                    11

1          THE COURT:  Well, but is -- so let's assume that Mr.

2    Princi negotiated with Ms. Patrick.

3          MR. KAUFMAN:  Right.

4          THE COURT:  And --

5          MR. KAUFMAN:  Who we were also not allowed to depose

6    Ms. Patrick.

7          THE COURT:  Right.  But you were -- were there other

8    people present at the -- you've been able to depose -- I know I

9    said you can't depose the lawyers but did you depose anyone

10   about who was present who -- who said what to whom during the

11   negotiations.

12         MR. KAUFMAN:  As a result of the statements that

13   advice of counsel evidence was not at issue and was not being

14   relied upon in connection with the motion, we did not seek

15   those sorts of communications.  We just didn't.

16         THE COURT:  Well, why -- certainly a communication

17   between debtor's lawyers and Ms. Patrick would not be

18   privileged.

19         MR. KAUFMAN:  We --

20         THE COURT:  Correct?

21         MR. KAUFMAN:  Well, between debtors' lawyers and Ms.

22   Patrick, those clearly wouldn't be privileged.

23         THE COURT:  Okay.

24         MR. KAUFMAN:  But we were not -- we didn't have either

25   one of them in front of us at a deposition.  We didn't have Mr.

1    Lee, Mr. Princi, except to the extent Mr. Princi was defending

2    a witness --

3              THE COURT:  Okay.

4              MR. KAUFMAN:  -- nor did we have Ms. Patrick.  So, the

5    witnesses who were there weren't telling us about

6    communications that were held between the lawyers that were

7    reported to them.

8              THE COURT:  And I guess your position would be having

9    been precluded from taking the depositions of Mr. Princi, Mr.

10   Lee, Ms. Patrick, none of them can testify now as to what those

11   communications were.

12             MR. KAUFMAN:  We would take that position.

13             THE COURT:  Right.  So, you also, as I understood your

14   motion, were seeking to preclude members of ResCap's board

15   testifying about their personal experience with an

16   understanding of representation in warranty litigation.

17             MR. KAUFMAN:  Only to the extent that it was derived

18   from communications with counsel.

19             THE COURT:  They can't use is as a backdoor to get in

20   the advice of counsel?

21             MR. KAUFMAN:  Correct.

22             THE COURT:  If a director had experience with

23   representation in warranty litigation, you agree that they

24   could testify about what their personal experience has been.

25             MR. KAUFMAN:  They could, to the extent that they were

1    not also trying to get in the advice of counsel.  I mean, for

2    example, if Mr. Whitlinger --

3              THE COURT:  I can't rule --

4              MR. KAUFMAN:  -- as the --

5              THE COURT:  I can't rule on that in an in limine

6    motion.  It may be that at the time of the trial, depending on

7    how the evidence goes, I'll have to rule on it but --

8              MR. KAUFMAN:  It may be.

9              THE COURT:  But I can't -- I mean, you acknowledge

10   that -- I mean, their personal experience does -- I mean, if a

11   director had been personally involved in understanding

12   representation and warranty litigation and roughly the terms on

13   which they settle and -- that's because they were there.  They

14   did it.

15             MR. KAUFMAN:  If that happened, the answer would be

16   yes, they'd be entitled to testify.  I was going to give Your

17   Honor another example.

18             THE COURT:  Go ahead.

19             MR. KAUFMAN:  If Mr. Whitlinger who was the CFO --

20             THE COURT:  Right.

21             MR. KAUFMAN:  -- had some occasion in his position to

22   analyze along with other business people the breach rates that

23   were --

24             THE COURT:  Fair game.

25             MR. KAUFMAN:  -- right.  If he personally analyzed the

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1   data and was able to testify as to what his understanding was

2   based on that analysis, sure, he would be able to testify.

3            THE COURT:  Okay.  Last question I have for you is you

4   seem to be arguing that Mr. Lipps' expert testimony as to the

5   strength and weaknesses of representation in warranty claims

6   should be precluded on this issue of attorney-client privilege.

7            MR. KAUFMAN:  No, Your Honor.

8            THE COURT:  You may have a different argument about

9   that.

10           MR. KAUFMAN:  Yes.  We have a -- and I believe we will

11   have a different argument with respect to Mr. Lipps as an

12   expert but no, that's not --

13           THE COURT:  Fine.

14           MR. KAUFMAN:  -- accurate here.

15           THE COURT:  Okay.

16           MR. KAUFMAN:  What we understand -- Mr. Lipps is being

17   put up as someone who will explain the strengths and weaknesses

18   of the defenses to the rep and warranty claims.  We don't know

19   whether it was from Mr. Lipps or some other lawyer, how the

20   board members came to some understanding of the merits or lack

21   of merit of those defenses.  And all our motion seeks to

22   preclude is the -- anyone from getting up and testifying as to

23   what the board was told or what the board received in the way

24   of explanations.  I don't know whether it came from Mr. Lipps;

25   maybe it did, maybe it didn't.  So it's -- but the reply briefs

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   in connection with the objections that the debtors filed

2   identified Mr. Lipps as someone who is going to explain the

3   defenses and so all our motion said was, you know, whether it's

4   Mr. Lipps or other counsel, they should be precluded to the

5   extent that the board is or that the evaluation of the

6   settlement, the negotiation of the settlement or the approval

7   of the settlement was based in whole or in part on whatever

8   advice they got in that regard.

9           THE COURT:  All right.  Thank you, Mr. Kaufman.

10          MR. KAUFMAN:  Thank you, Your Honor.

11          THE COURT:  Mr. Rains, you're going to argue?

12          MR. RAINS:  Yes, thank you, Your Honor.  Darryl Rains,

13  Morrison & Foerster for the debtors.  I think we just heard a

14  different position from Mr. Kaufman than is set forth in his

15  papers and so maybe this won't be as difficult as I feared it

16  might be.

17          Let me begin by summarizing our position and we'll see

18  if we even disagree.  Four quick points:  First, the debtors

19  will not offer any privileged communications into evidence.  We

20  will offer communications that previously were privileged but

21  as to which we waived the privilege last November.

22          THE COURT:  Well, time out.  You waived the privilege

23  last November to advice that was given on May 12, 2012 or it

24  was May 9th or 12th?

25          MR. RAINS:  May 9th, Your Honor.

1            THE COURT:  May 9th.  I had it right before.  The

2    problem I have with your position is you can't cherry-pick.

3    You can't decide we permitted them to know what the legal

4    advice given to the board on May 9th was but we're not going to

5    let them know the legal advice given to Mr. Marano on the same

6    subject matter on May 8th.  We're asserting privilege and have

7    asserted privilege to any communications with Mr. Marano and to

8    others, other than at the May 9th board meeting.  You can't

9    cherry-pick.

10           I mean if you're waiving the privilege, it's a subject

11   matter issue.  Do you disagree with that?

12           MR. RAINS:  No, I agree entirely.  It is a subject

13   matter and we are not cherry-picking precisely for that reason.

14   Your Honor, we don't have to offer any evidence of the state of

15   mind of our directors to establish the reasonableness of the

16   settlement under the Iridium factors.  They're --

17           THE COURT:  Well, I'm going to leave it -- you'll try

18   your case the way you're going to try your case and I'll make a

19   decision the way I wind up making my decision after hearing all

20   the evidence and all the arguments.

21           MR. RAINS:  Of course, Your Honor.

22           THE COURT:  So, I'm not agreeing or disagreeing and

23   anything I say should not be taken as agreement or disagreement

24   as to what the applicable standards are or the Court will apply

25   when I hear and decide the issues, okay?  Just let me make that

1  crystal clear now.  Don't go get a transcript and say well at

2  the hearing, you said such and such.  I want to make it crystal

3  clear; I am not making any determination about what the legal

4  standards are for approval of this settlement.

5          MR. RAINS:  That's very helpful, Your Honor.  I wanted

6  to articulate the subject matter as we see it and why the line

7  that we drew is the right line and a reasonable line and it's

8  not cherry-picking.

9          I merely wanted to make the point, Your Honor, that we

10  did not offer and we don't believe we need to offer state of

11  mind evidence as to the directors or the executives.  However,

12  in the objections from many of the creditors, they put at issue

13  in this case, the quality of the board decision-making process.

14  They basically have challenge the reliance or the ability of

15  the directors to rely on the business judgment rule by alleging

16  that they failed their duty of due care in approving the

17  settlement.  To rebut the charge of a breach of the fiduciary

18  duty of due care, we want to offer evidence about the process

19  by which the directors proceeded.

20          THE COURT:  Well, if the process means that you're

21  going to state the obvious, that the directors sought advice

22  from inside and outside counsel, and received it, full stop,

23  period; fine.  What you accomplish with that, we'll leave to

24  the trial but --

25          MR. RAINS:  Well, we're going to --

1          THE COURT:  -- if you plan to go a step beyond that

2     and offer evidence of what the advice was and therefore, why it

3     was reasonable for directors to rely upon it, that's where I

4     understand the committee is saying no.  They say first you told

5     them you weren't going to rely on advice of counsel but even

6     if -- and you dispute that in your papers.  At best, perhaps

7     the issue was ambiguous, maybe not so ambiguous but at best the

8     issue was ambiguous.  What is completely unambiguous is that

9     with the exception of the advice that was provided to the board

10    at the May 9, 2012 meeting, your colleagues were steadfast in

11    asserting attorney-client privilege and refusing to permit any

12    examination and the privilege log is larded with documents with

13    the assertion of attorney-client privilege that would deal with

14    advice given to management or the board, other than at the May

15    9th meeting.  Do you disagree with that?

16         MR. RAINS:  No, but Your Honor you're making my point,

17    I think and it's just clear I haven't made it appropriately.

18         THE COURT:  I think that's probably true because --

19         MR. RAINS:  But here's the point, Your Honor.  You

20    said and I thought I had said, we are offering the evidence to

21    rebut a charge of a breach of the duty of due care.

22         THE COURT:  You can't decide now --

23         MR. RAINS:  No, but Your Honor --

24         THE COURT:  You can't throughout --

25         MR. RAINS:  -- said we waived the privilege.

1        THE COURT:  -- take the position that I am not going

2    to permit any examination -- okay, do you intend to go further

3    than that the board -- a simple testimony or you could

4    stipulate this frankly, the board sought and received legal

5    advice from inside and outside counsel at various times during

6    its consideration of settlement.  Are you going -- do you plan

7    to go beyond that?

8            MR. RAINS:  Yes, Your Honor.

9            THE COURT:  Okay.

10           MR. RAINS:  We waive the privilege as to the May 9th

11   meeting --

12           THE COURT:  No, no.  You see -- but I think I may well

13   tell you nice try, you can't cherry-pick.  The fact that you

14   asserted the privilege as to advice given on all other

15   occasions means you can't offer any evidence of the advice

16   given on May 9th.  That's what the committee is -- that's one

17   of the things the committee is asking for.  That's one of the

18   things I'm seriously considering doing.  You can't cherry-pick.

19           If you waive the privilege on a subject matter, it's

20   the subject matter waiver.  You can't say gee, I like the

21   advice that the board got on May 9th and I'm happy to disclose

22   it and permit examination about it, but I'm not going to permit

23   testimony or production of documents about advice given on that

24   same subject matter at any other time than that board meeting.

25   That's what you're attempting.

1              MR. RAINS:  I disagree.  That is not what we're

2    attempting, Your Honor.  The line we've tried to draw, which I

3    think is the right line and a fair line, is the settlement was

4    presented to the board at that meeting.  There weren't earlier

5    meetings about the terms of the settlement because the

6    settlement was hammered out in the last few days before that

7    meeting.

8              THE COURT:  Are you telling me that the chairman of

9    the board, Mr. Marano, who had -- do you dispute that he had

10   numerous conversations with inside and outside counsel prior to

11   the board meeting about the proposed settlement?

12             MR. RAINS:  I do not dispute that.  He clearly did.

13             THE COURT:  And he was instructed not to answer any

14   questions about any of those communications.  And let me say it

15   right now, okay, Mr. Princi's conduct was out of bounds.  If

16   the matter had been brought to my attention at the time, it

17   would have resulted in the imposition of sanctions against Mr.

18   Princi.  His conduct during the course of the Marano deposition

19   is totally unacceptable to the Court.  Go on with your

20   argument.

21             MR. RAINS:  The line Mr. Princi attempted to draw and

22   that we have attempted to articulate for months is the

23   distinction between the due care, the process exercised by the

24   board on the one hand and client to attorney communications

25   with the CEO of the company about negotiating strategy or other

RESIDENTIAL CAPITAL, LLC, ET AL.                    21

1  topics relating to the settlement prior to the settlement's

2  presentation to the board.  I think that is a fair division of

3  relevance and subject matter.

4         THE COURT:  You may think so but the case law doesn't

5  support it.

6         MR. RAINS:  Oh, I think it -- well, Your Honor, let

7  me -- maybe the best place to go, there are several cases we've

8  cited in our papers.  I would actually like to direct the Court

9  to one that we both cited.  It's the Mentor Graphics case.  It

10 can be found at -- it's a Delaware Chancery Court decision.  It

11 can be found 1998 Delaware Chancery Lexis 187 and the date is

12 October 23, 1998.  It is as close a case to this one as I've

13 been able to find.  There was an attack on the due care, the

14 process used by the board in responding to a takeover attempt.

15 There was an in limine motion made to exclude all evidence

16 regarding reliance on counsel, just like the motion here.  That

17 motion was denied.

18        But in denying the motion, Vice Chancellor Jacobs gave

19 the parties very clear direction.  It's very similar to what

20 the Court has just said now.  Hey --

21        THE COURT:  And Justice Jacobs said, "The defendants'

22 tactical decision to bar on privileged grounds discovery into

23 what the board was advised was their fiduciary duty into the

24 contents of the board's deliberations will in turn preclude

25 them from proving those deliberations at trial to

RESIDENTIAL CAPITAL, LLC, ET AL.                    22

1    defend their position that their decision was reasonable and

2    made with due care."  That is taken from the transcript of

3    October 23, 1998 in Mentor Graphics at page 505.

4          MR. RAINS:  Yes, the creditors committee's counsel

5    cited a quote from another case quoting the transcript.  What I

6    am referring the Court to is the actual order which the

7    committee did not cite you to.

8          THE COURT:  You're saying that Justice Jacobs didn't

9    state what I just read?

10         MR. RAINS:  What Vice Chancellor Jacobs said in his

11   published order on this motion was (a) "The defendants may

12   introduce evidence to prove and refer to the fact that the

13   Quickturn board of directors sought and received legal advice

14   with respect to various issues, including its decision to adopt

15   the bylaw amendment and the delayed redemption provision."

16         THE COURT:  I think that's what I said.  You may as

17   well just stipulate to that.  I don't doubt that the board on

18   multiple -- that the officers, directors and board on multiple

19   occasions asked for legal advice and received it.  That is

20   different -- whether you can carry your burden with that we'll

21   leave to the time of trial.  I'm sure you have other arguments,

22   as well.  But the issue and what I read the Chancellor or Vice

23   Chancellor as doing was precluding the substantive advice that

24   was given.  You take the position in discovery we're not going

25   to permit, we're not going to permit it at trial.

1            MR. RAINS:  And so, Your Honor, we may be much closer

2     to agreement than it appears.  It is our position for all

3     communications with counsel except for the presentation made to

4     the board meeting --

5            THE COURT:  No, sir.

6            MR. RAINS:  -- that we will only --

7            THE COURT:  No, sir.

8            MR. RAINS:  -- offer evidence of the fact of

9     communication and it is the meeting of the board where the

10    presentation was made and where we have waived the privilege

11    where we think more evidence should come in.

12           THE COURT:  All right.  Anything else you want to add?

13           MR. RAINS:  Well, I do want to do this, Your Honor.  I

14    think if there is going to be a ruling today, I will need to

15    make an offer of proof of what we would offer and what would be

16    excluded.

17           THE COURT:  Go ahead.

18           MR. RAINS:  If we're permitted, Your Honor, we would

19    offer as evidence the presentation made by counsel to the

20    directors of the May 9th board meeting --

21           THE COURT:  Who was --

22           MR. RAINS:  -- at which the settlement was approved.

23           THE COURT:  -- who made the presentation?

24           MR. RAINS:  It's a combination of Mr. Lee, Ms.

25    Hamzehpour, and consultants to the attorneys, including Mr.

 1   Renzi from FTI and also commentary added on a damages analysis

 2   by Mr. Cancelliere.

 3          We would also offer as evidence the analysis and

 4   recommendation made by counsel.  Oh, I should have mentioned

 5   the Morrison Cohen law firm.  We would make an offer -- we

 6   would offer the evidence and analysis, recommendation offered

 7   by those lawyers.  Included in that would be the risk

 8   analysis --

 9          THE COURT:  Wait.  I'm trying to take some notes.  So,

10   just slow down.

11          MR. RAINS:  Sorry.  Also at that board meeting --

12          THE COURT:  Just -- I'll tell you when to go ahead.

13   Okay?

14          MR. RAINS:  Thank you.

15          THE COURT:  Go ahead.

16          MR. RAINS:  Also at the board meeting, there was a

17   presentation by Mr. Renzi and Cancelliere involving a risk

18   analysis.

19          THE COURT:  Were Renzi and Cancelliere experts

20   retained by counsel or were they -- I mean, has there been

21   discovery regarding what Renzi and Cancelliere said at the

22   board meeting?

23          MR. RAINS:  They both were deposed; yes, Your Honor.

24   And again, we waived the privilege as to this meeting.  They

25   were allowed full examination of these witnesses on this topic.

1        THE COURT:  Neither are lawyers.

2        MR. RAINS:  Renzi works for us or for the debtors.

3   Cancelliere is a risk manager.

4        THE COURT:  But are they lawyers?

5        MR. RAINS:  No, not a lawyer.

6        THE COURT:  Was it legal advice they gave or risk

7   analysis?  Give me the gist of it.

8        MR. RAINS:  Risk analysis at the direction of counsel.

9   The final topic at that meeting would be the comparisons to the

10  Bank of America and Lehman settlements that was discussed at

11  the meeting and presented to the board.

12       THE COURT:  By whom?

13       MR. RAINS:  I think Mr. Lee and Mr. Cancelliere.

14       THE COURT:  All right.  So, B of A and what was the

15  other one?  I'm sorry.

16       MR. RAINS:  It was the Lehman Brothers matter.  And as

17  our basis for offering it, we will -- obviously that we waived

18  the privilege, that we permitted discovery in this area and as

19  the Court has already noted, we believe that the committee has

20  completely opened the door to this testimony by offering the

21  same witnesses and the same document on the same

22  communications.

23       THE COURT:  Explain that further.

24       MR. RAINS:  Well, Your Honor, the objections that they

25  filed and the evidence they filed with their objections

1  includes the presentation document given to the board.  It

2  includes quotes from the directors who are at the meeting about

3  what was discussed.  They have offered extensive evidence about

4  what they say was an inadequate presentation.  They've even

5  offered an expert witness to opine on what happened at the

6  meeting and whether or not it was adequate.  This topic has

7  been fully explored and is in all of the objections.

8          THE COURT:  Well, I may decide at the time of trial

9  and they may decide at the time of trial that they're not going

10  to offer that -- if you're precluded from offering evidence

11  about the legal advice that was given, I'll consider at that

12  time -- I don't have a motion from you to preclude evidence by

13  the committee.  What I have is the committee's motion to

14  preclude evidence by you.

15          MR. RAINS:  No, fair enough.

16          THE COURT:  Ordinarily, I will hear -- obviously I'm

17  not precluding additional motions in limine or objections

18  during trial.  So if at trial they open the door by putting in

19  evidence -- the advice that was received by the board, all this

20  may change but the fact that because everybody had to file

21  their papers in advance, I don't think constitutes a waiver.

22  When the evidence -- the evidence will come in at trial.

23          MR. RAINS:  Fair enough, Your Honor.  I only meant to

24  say that these issues are fully explored in their papers and in

25  the evidence they've submitted.  If they offer that at trial,

1 | they will have opened the door and we will offer the same
2 | witnesses that talk about the same subject matters and
3 | meetings.
4 |            THE COURT:  Okay.
5 |            MR. RAINS:  Second, I may have heard Mr. Kaufman
6 | incorrectly because I think his brief says they do mean to
7 | exclude this.  If not, then we don't have a problem.  But we
8 | will offer the percipient witness testimony of Ms. Hamzehpour
9 | and also Mr. Devine, who will be offered by Ally, regarding
10 | their participation in the settlement negotiations including as
11 | the Court noted, their observation of conversations and
12 | negotiations that also involve Kathy Patrick and Mr. Lee.
13 |            So to the extent they are percipient witnesses of a
14 | non-privileged communication, negotiation, we will offer that
15 | evidence, as well.
16 |            THE COURT:  They were deposed, I take it.
17 |            MR. RAINS:  Yes, sir.
18 |            THE COURT:  Right.
19 |            MR. RAINS:  Yes, Your Honor, they were deposed.
20 |            THE COURT:  Yes, my recollection is when I said --
21 | having heard argument, I directed there would be no depositions
22 | of the outside counsel.  I specifically recall discussing Ms.
23 | Hamzehpour.  I don't remember Devine and maybe somebody can go
24 | back to the transcript, but you know who said what to whom in
25 | the negotiations.  If Hamzehpour and Devine were percipient

1  witnesses, the content of those communications, the back and

2  forth are not privileged.  I think Mr. Kaufman agreed with

3  that.  It would not be privileged.  They've been deposed about

4  it?

5         MR. RAINS:  Yes, Your Honor.  And all their e-mails

6  have been turned over.  Third topic, maybe you've just answered

7  this question but communications between Mr. Devine,

8  representing Ally and the lawyers representing ResCap as to

9  which we did not assert privilege, we would offer that evidence

10  both from Mr. Devine, Ms. Hamzehpour and the e-mails between

11  them as to which we did not assert the privilege.  These are

12  communications that go to the negotiating strategy, settlement

13  meetings, data about exposure, legal defenses, defect rates, et

14  cetera.  We did not assert privilege as to any of those

15  communications.

16         THE COURT:  But there's a dispute as to when Mr.

17  Devine was acting as a counsel for ResCap and when for Ally

18  alone; am I right about that or --

19         MR. RAINS:  Well, the --

20         THE COURT:  I don't remember it here but I remember

21  this coming up before.

22         MR. RAINS:  We had communications with the Court about

23  that at length.  The conclusion that I think we all reached and

24  certainly it was the debtors' position, it was not functionally

25  a matter of time, so much as the topic.  When he was

1  negotiating for Ally on the RMBS matters, we decided not to

2  assert the privilege.  Ally took a different position and then

3  we got it resolved.

4           The Court mentioned --

5           THE COURT:  Was Mr. Devine deposed on his --

6           MR. RAINS:  Yes, he was deposed, Your Honor.

7           THE COURT:  And no privilege was asserted with respect

8  to his communications with ResCap's lawyers?

9           MR. RAINS:  Correct, Your Honor.

10          THE COURT:  At any time, there was no objection, an

11  instruction not to answer for Mr. Devine's communication with

12  ResCap's lawyers; is that your statement?

13          MR. RAINS:  I did not attend that deposition.  All I

14  can --

15          THE COURT:  And you're arguing that his testimony

16  should be permitted.  I need a clear answer whether

17  instructions not to answer were given on attorney-client

18  privilege grounds regarding Mr. Devine's communications with

19  ResCap's lawyers or executives.

20          MR. RAINS:  So I will have to give that to you in a

21  letter but I will tell you the position I think we have

22  consistently drawn which is when the communications related to

23  the RMBS settlement, we did not assert privilege.  That's the

24  position we took in our privilege log.  It's the position we

25  took with documents and I'm confident it was the position we

1  took at his deposition.  To be sure, I need to go and review

2  the transcript.

3          THE COURT:  Okay.

4          MR. RAINS:  Continuing the offer of proof, the Court

5  mentioned earlier the director's experience with rep and

6  warranty liability and litigation.  They have a tremendous

7  amount of experience going back several years with MBIA and

8  FGIC.  They had experience more recently with a variety of

9  regulatory settlements.  We would not intend to offer any

10 privileged communication about those matters.

11         THE COURT:  Here's the issue there, at least as I see

12 it.  All right.  I asked Mr. Kaufman about this specifically

13 and I am not going to rule at this time, one way or the other,

14 with respect to the directors' testimony about their experience

15 with representation in warranty litigation.

16         In theory, I think they should be permitted to testify

17 about their experience but they can't -- what I won't permit,

18 assuming I preclude -- grant the preclusion motion, I am not

19 going to permit director testimony to be used as a back door to

20 get in, in effect, the legal advice they received.  If they

21 were involved -- if I was told Whitlinger was involved in risk

22 analysis, he was the CFO, he was --

23         MR. KAUFMAN:  I was only hypothesizing.

24         THE COURT:  Okay.  Let me -- as a hypothetical, you

25 know, if Whitlinger was involved in risk analysis, and he's

1    going to testify about what his experience in risk analysis

2    with respect to representation in warranty litigation or

3    securities claims or what have you, and what he's testifying is

4    based on his experience of doing this work and perhaps seeing

5    what the final results of a settlement are, in theory I don't

6    have a problem with it.   I'll listen to specific objections at

7    the time of trial but what I won't permit is a director whose

8    experience is sitting at a board meeting in which a lawyer made

9    a presentation and explained the specific litigation and what

10   the risks in that litigation and what the damage parameters

11   were.   And based on what the director heard, they said I

12   approve the settlement.   That's based on advice of counsel.

13          If I preclude the advice of counsel, I'm not going to

14   allow through the backdoor to get it in in the guise of the

15   experience of the directors.   I'm not going to rule at this

16   time whether that's precluded or not.   That is going to have to

17   be reserved to the time of trial.   If appropriate, a lawyer can

18   take a witness on voir dire and I'll make a determination at

19   the time.   I hope too many of these situations don't arise but

20   if I wind up precluding legal advice, I'm not going to allow it

21   to come in through the backdoor.

22          MR. RAINS:   Your Honor, we're in agreement with that

23   and that has been our position from the start.   Settlement

24   matters from years ago or ongoing litigation with MBIA and

25   FGIC is very attenuated to the settlement but the charge is

RESIDENTIAL CAPITAL, LLC, ET AL.                          32

1  that on --

2            THE COURT:  Their lawyers are sitting back here

3  listening carefully and attentively.

4            MR. RAINS:  Well, it is, Your Honor, but our directors

5  have been challenged on the grounds that they were babes in the

6  wood and didn't know what they were doing.  And the fact that

7  they have years of experience can be produced, proved up with

8  evidence without getting into whether the lawyer said the

9  claims are strong or weak or the defenses are weak or strong.

10  We don't intend to do that.  We have no intention.

11           THE COURT:  In principle, I agree with what you're

12  saying Mr. Rains.

13           MR. RAINS:  So that is -- we would offer that.  There

14  are management directors such as Mr. Marano and Mr. Whitlinger

15  who have, as already noted, extensive day-to-day experience

16  with rep and warranty liability including defenses and

17  exposure.  All of that can come in.  It's not necessarily --

18           THE COURT:  I don't know whether it can come in.

19  We'll see.  What I am saying is if you're offering testimony of

20  business executives or directors, if I preclude the legal

21  advice, whether through voir dire or otherwise, I will consider

22  whether what they're trying to do is introduce evidence of what

23  I have precluded.

24           MR. RAINS:  I misspoke, Your Honor.

25           THE COURT:  And I am not deciding that at this motion

1    stage.  It seems to me the only thing -- well, the only thing

2    I'm going to decide is what seems to be fairly and presented by

3    the committee's motion before me.  And fundamentally, that

4    relates to advice -- testimony either by the persons who gave

5    it or the persons who received it or were present when it was

6    given as to what the legal advice was.  Okay?

7            There, the issue that I find most troubling is the

8    selective disclosure and cherry-picking.  You were happy to

9    provide disclosure about what happened on May 9th but adamant

10   about refusing disclosure about any other legal advice on the

11   same subject.  That's what's troubling me.

12           MR. RAINS:  I hear the Court's point.  Maybe I

13   could --

14           THE COURT:  Is there any other offer of proof you want

15   to make?

16           MR. RAINS:  Let me finish, yes.  I have two more that

17   I need to make.  And I misspoke earlier when I said that, of

18   course, it could come in.  What I meant to say is information

19   they have as management directors that did not come from

20   lawyers, of course could come in.  If they talked to lawyers,

21   we would not try to offer the legal advice.

22           We have directors who sat on the audit committee.

23   They were asked each quarter to review accounting reserves.

24   Almost all of that evidence is accounting related but they may

25   have to say that there was a lawyer who gave them advice

1  without disclosing that information.  This is also evidence

2  that the committee has offered in their motion.

3           There is evidence regarding an estimate in the first

4  quarter of 2012 where it was publicly disclosed that in

5  addition to the reserve, an additional liability of from zero

6  to four billion was reasonably possible.

7           THE COURT:  That was in the Whitlinger first day

8  affidavit.

9           MR. RAINS:  It's in a number of sources, Your Honor,

10 but we've been attacked -- the board has been attacked on their

11 due diligence and their due care with regard to that estimate.

12 We need to put in evidence about how that estimate was created.

13 There was a lawyer involved in it.  We do not purport to

14 disclose or intend to disclose the substance of what he said.

15 And again, this is another area where the door has been opened

16 in our view.

17          THE COURT:  Well, don't tell me that the door has been

18 opened.  We'll see whether the door is open when I rule on

19 evidence at the time of trial and what the committee seeks to

20 introduce at that time.  Okay?

21          MR. RAINS:  That's a fair comment.  I meant to say

22 again, it is an extensively briefed subject in all of --

23          THE COURT:  That does not mean -- the fact that -- I

24 mean, this motion has been extensively briefed, okay?  That

25 doesn't mean because it's been briefed, because the committee

1  has prepared to address an argument, their position is they

2  feel they've been sandbagged by the debtor, whether that's true

3  or not is frankly not an issue I'm focusing on at this point.

4  The issue -- because even if that initial letter should not

5  have been, even if it was, construed as an unequivocal

6  statement that you're not going to rely on advice of counsel,

7  the point that is most troubling to the Court is what I've

8  repeatedly referred to as the cherry-picking.

9          You're prepared to allow this much, indicating a small

10  amount, but nothing more on the same subject.  And that, I am

11  not going to allow.

12          MR. RAINS:  Well, Your Honor, on the opening the door

13  point, I agree with you, we should wait and see what was

14  offered.  We honestly don't need to offer any of this evidence.

15          THE COURT:  Then don't.

16          MR. RAINS:  Well, no, we have to offer it because we

17  anticipate the committee and the other objectors will do what

18  they did in their objections and attack the due care, the

19  process by which our directors proceeded.

20          THE COURT:  You can -- you already made a decision as

21  to the strategy you were going to pursue in this hearing.  I

22  don't necessarily mean you personally.  I don't know.  You firm

23  made a decision and your client made a decision as to the

24  strategy it intended to pursue.  You seem to think that -- in

25  fact, maybe we'll just say stipulate to it, you know, at

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1    various points in time the debtor sought advice of counsel --

2    sought and received advice of counsel.  You know, what you

3    think that's going to carry the day on, I don't know but I

4    don't think you have to contest that.  Are you contesting that,

5    Mr. Kaufman?  Are you contesting that at various times they

6    sought and received legal advice?  Yes, are you?  Is the

7    committee contesting that?

8         MR. KAUFMAN:  Philip Kaufman for the committee.  No,

9    Your Honor, we assume that they did.

10        THE COURT:  So, why don't you just stipulate to that

11   and let's get over that.

12        MR. KAUFMAN:  We've not been asked to stipulate to it.

13        THE COURT:  Well, I am asking you to.

14        MR. KAUFMAN:  But to that narrow fact, we are prepared

15   to stipulate that they did that.

16        THE COURT:  Where that gets you, Mr. Rains, is

17   somewhat beyond me.  You've got the affirmative burden with

18   respect to the 9019 motion.

19        MR. RAINS:  We do, Your Honor, although I would add

20   that when it comes to the due care of the directors, we have a

21   presumption that they did act with due care and we're

22   responding to a charge of gross negligence by them.

23        THE COURT:  Well, you argue whatever you were going to

24   argue.  And you elected not to permit discovery of the legal

25   advice that the directors received individually or

1    collectively, other than at the May 9th meeting and you're

2    going to have to live with that as a result.  What you can't do

3    is make a selective, narrow waiver.  Anything else you want to

4    add?

5              MR. RAINS:  No.

6              THE COURT:  Okay.

7              MR. RAINS:  I think that --

8              THE COURT:  Mr. Kaufman, anything you want to add?

9              MR. KAUFMAN:  Yes, Your Honor.

10             THE COURT:  It's late in the day; brief.

11             MR. KAUFMAN:  I'll try to be as brief as I can, Your

12   Honor, but there are several points I wanted to --

13             THE COURT:  I do want to ask you something about Renzi

14   and what's the --

15             MR. KAUFMAN:  Yes.

16             THE COURT:  Chancellor (sic)?

17             MR. KAUFMAN:  Cancelliere?

18             THE COURT:  Cancelliere.

19             MR. KAUFMAN:  Yes.

20             THE COURT:  I can't --

21             MR. KAUFMAN:  They were deposed.

22             THE COURT:  All right.  They're non-lawyers.

23             MR. KAUFMAN:  But not about privileged information.

24   They were deposed, however.

25             THE COURT:  Okay.  Were they deposed about the

1    presentation they made at the May 9th board meeting?

2              MR. KAUFMAN:  Yes.

3              THE COURT:  Okay.  Are you seeking to exclude that?

4              MR. KAUFMAN:  No.

5              THE COURT:  Oh, well that solves that problem, right?

6    So that's not an issue.  Do you agree that's not an issue then,

7    Mr. Rains?  Are you satisfied with Mr. Kaufman's statement?

8              MR. RAINS:  I think we should be allowed to put in

9    what happened at the May 9th meeting.  That would --

10             THE COURT:  Well, you're not going to be allowed to

11   put in what happened at the May 9th meeting.  You obviously

12   have indicated a number of times, so it's not surprise what my

13   ruling is going to be; Mr. Kaufman has indicated he's not

14   objecting to what Mr. Cancelliere or Mr. Renzi presented at the

15   May 9th meeting.  Is that true, Mr. Kaufman?

16             MR. KAUFMAN:  That is true.

17             THE COURT:  All right.  Well, that solves that issue.

18             MR. KAUFMAN:  I want to make the follow --

19             THE COURT:  That's different from what legal advice

20   was given.

21             MR. KAUFMAN:  First, Your Honor, I wanted to respond

22   to a question that you asked Mr. Rains that he didn't know the

23   answer to and that is whether Mr. Devine was instructed not to

24   answer.

25             THE COURT:  Right.

1          MR. KAUFMAN:  Mr. Devine was represented by Kirkland &

2    Ellis at his deposition, not the debtors' counsel and I can

3    tell you that Mr. Devine was instructed not to answer questions

4    repeatedly on grounds of privilege, as between Mr. Devine and

5    the debtors.  In fact, Mr. Devine, who is a lawyer instructed

6    himself not to answer questions repeatedly.

7          THE COURT:  Okay.

8          MR. KAUFMAN:  And the transcript will reflect that.

9          THE COURT:  All right.  I'm not -- Devine has not been

10   briefed.

11         MR. KAUFMAN:  I understand.  I'm just --

12         THE COURT:  And I'm not going to decide Devine.

13         MR. KAUFMAN:  -- just answering the question.

14         THE COURT:  That's fine.  I appreciate you doing that.

15         MR. KAUFMAN:  Another point, may be obvious.  I think

16   that Your Honor already gets it.  The committee isn't

17   rebutting -- I mean, there is nothing to rebut.  The committee

18   isn't putting on evidence.  We filed objections to a motion.

19         THE COURT:  Well, I assume you're going to put on

20   evidence as part of your case in opposition to the motion.

21         MR. KAUFMAN:  We may or may not.

22         THE COURT:  Okay, you'll decide.

23         MR. KAUFMAN:  It's quite possible that the debtors

24   will be unable to carry their burden in the first instance, in

25   which event there will be nothing to rebut.

1          THE COURT:  I would be surprised at that but --

2          MR. KAUFMAN:  Well, if they are precluded from

3    offering the evidence of reliance on advice of counsel that I

4    believe they ought to be, there may be nothing to rebut.

5          THE COURT:  I'm very skeptical about that.

6          MR. KAUFMAN:  Okay.

7          THE COURT:  Okay.  You can -- you know, if you're

8    preparing your case on that assumption, you better go back to

9    the drawing board.

10          MR. KAUFMAN:  Okay.  Very well, Your Honor.  A point I

11   wanted to make about the advice that was given at the May 9th

12   meeting or the presentations that were made at the May 9th

13   meeting, it's not as if the directors sitting at the meeting

14   heard X, that is just what was given there.  And can somehow

15   forget, put out their minds all of the other advice and

16   communications they had over the preceding months or even years

17   about the whole subject of R&W liabilities and the ins and outs

18   and the claims.  So to try to isolate -- and that's the problem

19   with allowing the cherry-picking.

20          THE COURT:  Well, it's your problem because I have to

21   hear the questions that are framed and I assume that you'll

22   take it one voir dire, if you're going to object to it.  I'm

23   presuming that each of these directors had substantial business

24   experience, substantial financial services experience.  Many of

25   them probably had substantial experience with representation

1   and warranty claims.  They had to have been in a dark cave

2   somewhere if they were directors since 2008 to have developed

3   quite a keen understanding of the problems that ResCap and

4   every other company in the mortgage servicing business faced

5   either in connection with the origination or servicing of loans

6   and securitization of loans.  And yes, they undoubtedly

7   received legal advice over the years.  It would be shocking if

8   they didn't.  But I don't think that detracts from their

9   experience.  We'll have to see how it plays out.  Don't go into

10  the trial presuming that you're going to be able to preclude

11  the directors from testifying based on their experience.  I'm

12  not going to allow -- it's a fine line.  You know, I'm

13  concerned about any efforts to sort of backdoor the legal

14  advice but if for -- they've gained an awful lot of experience

15  about representation and warranty claims, about put back

16  litigation.  They resolve various put back claims over the

17  years.

18          MR. KAUFMAN:  We were not allowed to see, for example,

19  any of the presentations that had been made to the board in

20  connection with the settlements with Fannie Mae, Freddie Mac,

21  the U.S. Department of Justice, on these claims and what I am

22  saying is what --

23          THE COURT:  Okay.

24          MR. KAUFMAN:  The board meeting on May 9th took an

25  hour, only half of which my best recollection, was devoted to

RESIDENTIAL CAPITAL, LLC, ET AL.                    42

1  this; they received a two-paged presentation twenty minutes

2  before the meeting.  What I am saying --

3          THE COURT:  I can hear your opening statement or

4  closing argument now.

5          MR. KAUFMAN:  No, Your Honor.

6          THE COURT:  I mean, it's just --

7          MR. KAUFMAN:  What I am -- the point being that what

8  they got on May 9th, even assuming -- assuming that were to be

9  permitted, I don't think it should be, but if that were to be

10 permitted, it's not as if that's in a vacuum.

11         THE COURT:  Okay.

12         MR. KAUFMAN:  It's not -- it doesn't stand by itself.

13         THE COURT:  I've heard enough.  Any other last points

14 you want to make?

15         MR. KAUFMAN:  Okay, yes.  The issue -- a statement was

16 made that all of the e-mails with Ms. Hamzehpour and her

17 negotiation of the settlement have been turned over; not true.

18 The person who negotiated with Ms. Patrick essentially was Gary

19 Lee.  We didn't get any e-mails between Mr. Lee and Ms.

20 Hamzehpour; all of those were on the privilege log.  They were

21 not turned over.

22         Sure, we got some e-mails from Ms. Hamzehpour to Mr.

23 Devine.  We got some e-mails from Ms. Hamzehpour to other --

24 that are other non-privileged communications but we did not get

25 the privileged communications.

1          THE COURT:  Okay.

2          MR. KAUFMAN:  And we don't believe Ms. Hamzehpour

3   ought to be able to get up on the stand or in her declaration

4   and testify to what her understanding was or what Mr. Lee told

5   her about the negotiations with --

6          THE COURT:  Oh, let me just --

7          MR. KAUFMAN:  Yes.

8          THE COURT:  Well, I don't see that as clearly

9   presented in the motion currently before me.  To the extent

10  that Ms. Hamzehpour is being offered as a percipient witness in

11  negotiations between the debtors or its representatives, and

12  Ms. Patrick or others on the other side, that's not privileged.

13         MR. KAUFMAN:  No.

14         THE COURT:  I didn't permit -- just let me finish -- I

15  didn't permit the testimony of outside counsel.  I made clear

16  that Ms. Hamzehpour could be deposed and she can be examined or

17  cross-examined on who said what to whom in the negotiations.

18  That's a different issue than her communications with Mr. Lee.

19  If privilege was asserted as to e-mails between them, I'm not

20  going to permit testimony about the communications between her

21  and Mr. Lee.

22         MR. KAUFMAN:  That's all I was raising, Your Honor.

23         THE COURT:  Okay.  What I understood Mr. Rains to say

24  is that, you know, he intends to offer the testimony of Ms.

25  Hamzehpour.  There are clearly subjects as to which she can and

1  will be permitted to testify.  There are others which when a

2  question is asked -- look, in motions in limine, I am always

3  reluctant.  I have to ask myself what should be decided now

4  because it's clear cut and should be resolved now, what

5  requires a further evidentiary basis for me to rule, okay?  Mr.

6  Rains has made an offer of proof, most of which I think is

7  irrelevant to the issue that I consider before me on the

8  current motion.

9       Is there any last point that you want to make?  I

10  really need to end.  I've got more ResCap this afternoon.

11       MR. KAUFMAN:  I don't believe there are any others.

12       THE COURT:  Okay.  Thank you very much.  All right.

13  So, no surprise.  I'm going to issue a written opinion and

14  order.  It's probably going to take a few days to get it out.

15  I'm sure it's quite obvious already and you can continue with

16  your trial preparation on this basis and I thought it was

17  important that you all understand the parameters of what the

18  Court is going to rule, so that you could go on with your trial

19  preparation.

20       I am not going to permit the debtors to introduce any

21  evidence of the legal advice that was given by insider or

22  outside counsel with respect to the RMBS claims or settlement.

23  The debtors cherry-picked during the discovery process.  They

24  permitted very, very limited discovery relating only to the May

25  9, 2012 meeting and precluded all other document production as

1   reflected in the privilege log or deposition testimony with

2   respect to advice received -- given or received by counsel.

3          So I will issue a written opinion and order but go

4   about your business preparing and take that clearly into

5   account.  I am not going to, with respect to other issues that

6   Mr. Rains or Mr. Kaufman raised today, we'll have to wait and

7   see at trial.  I am not ruling one way or the other.  I mean, I

8   think there doesn't seem to be disagreement that Ms. Hamzehpour

9   can testify about her clearly not privileged communications or

10  where she was a percipient witness of a communication between

11  Ms. Patrick or her colleagues and the debtors' representatives

12  in the give and take of negotiation.  That's not privileged and

13  I am going to permit.  It sounds like she's been deposed about

14  it, so there's no surprise there.

15         Mr. Cancelliere -- I guess Mr. Renzi and Mr.

16  Cancelliere, there's no dispute, Mr. Kaufman has agreed, that

17  with respect to the presentation they made at the May 9th board

18  meeting as to which there's been complete discovery, the

19  committee is not seeking to preclude that testimony.  So that

20  answered that question.

21         With respect to experience of directors, we'll have to

22  wait and see how that testimony comes in.  With respect to Mr.

23  Devine's communication with ResCap lawyers, that issue is not

24  clearly presented by the motions before me.  There seems to

25  be -- Mr. Rains has acknowledged that he is not aware of

 1  whether or not Mr. Devine was instructed not to answer.  Mr.

 2  Kaufman has indicated that he was.  If the debtors intend to

 3  offer Mr. Devine's testimony, that ought to be taken up in

 4  limine before trial and I will certainly review -- you have

 5  discussed that with Mr. Kaufman.  Don't waste my time, Mr.

 6  Rains, if there's a clear record of Mr. Devine being instructed

 7  not to answer any questions about his communications with

 8  ResCap, okay?  Don't waste my time with it.  You can raise it

 9  if you want but you know I think this ruling out to make that

10  clear.

11          I've already discussed about experience, directors

12  with representation in warranty litigation.  So go on and

13  prepare.  I'll get out my opinion and order in due course.  All

14  right.  We're adjourned.

15      (Whereupon these proceedings were concluded at 1:25 PM)

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                                Page      Line

6   Motion to preclude granted                   44        12

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

48

1

2                         C E R T I F I C A T I O N

3

4     I, Linda Ferrara, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7                    _Linda Ferrara_

8

9     _____

10    Linda Ferrara

11    AAERT Certified Electronic Transcriber CET**D-656

12

13    eScribers

14    700 West 192nd Street, Suite #607

15    New York, NY 10040

16

17    Date:  April 12, 2013

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net