Louis A. Curcio
Scott Koerner
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel:    (212) 768-6700
Fax:    (212) 768-6800
Email:  louis.curcio@dentons.com
        scott.koerner@dentons.com

*Attorneys for Bank of New York Mellon as Master
Servicer of Certain Trusts and Pools which hold
Residential Mortgages or Residential Real
Properties*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

### NOTICE OF CURE CLAIM OF
### THE BANK OF NEW YORK MELLON CORPORATION
### IN ITS CAPACITY AS MASTER SERVICER

The Bank of New York Mellon ("BNY Mellon"), solely in its capacity as master servicer for certain residential mortgage-backed securities trusts and other whole loan or residential real property pools (in such capacity, the "Master Servicer"), files this Notice of Cure Claim against GMAC Mortgage, LLC ("GMACM"; collectively with BNY Mellon, the "Parties"). GMACM and certain of its affiliates (each individually, a "Debtor," and collectively, the "Debtors") filed for Chapter 11 protection on May 14, 2012 (the "Petition Date").

1.    **Cure Claim Deadline**

BNY Mellon files this Notice of Cure Claim pursuant to the *Fourth Revised Joint Omnibus Scheduling Order and Provisions for other Relief Regarding Debtors' Motion Pursuant*

*to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements*, dated December 27, 2012 (Docket No. 2528), which amended the *Revised Scheduling Order* (Docket No. 945), the *Second Revised Scheduling Order* (Docket No. 1551) and the *Third Revised Scheduling Order* (Docket No. 1926) (collectively, the "Scheduling Order"). The Scheduling Order provides, among other things, the terms under which certain cure claims are to be asserted. Pursuant to the Scheduling Order, certain entities in their respective capacities as trustees, indenture trustees, securities administrators, and/or master servicers and other agency capacities, (collectively the "RMBS Trustees"), each generally in respect of other real estate mortgage investment trusts, whole loan servicing agreements, other trusts, net interest margin trusts, and similar arrangements for which each RMBS Trustee acts (collectively, the "RMBS Trusts") shall file a notice of any alleged cure claims no later than sixty (60) days after the date the Sale (as defined below) closes (the "Cure Claim Deadline"). The Sale closed on February 15, 2013. Accordingly, the Cure Claim Deadline is April 16, 2013.

2.    **Relationship Between BNY Mellon, In Its Capacity as Master Servicer and the Debtors**

BNY Mellon serves in the capacity of Master Servicer pursuant to certain Pooling and Servicing Agreements, Servicing and Trust Agreements, and other servicing and administration agreements (collectively, the "Master Servicing Agreements") associated with certain trusts and pools which hold residential mortgages or residential real properties (the "Asset Pools"). A schedule of the Asset Pools on behalf of which BNY Mellon serves as Master Servicer and their associated Master Servicing Agreements and related documents is attached hereto as <u>Exhibit 1</u>.[1]

---

[1]    The documents set forth in <u>Exhibit 1</u> govern certain of the rights and obligations of the Parties with respect to the Asset Pools and the Servicing Obligations. However, the documents set forth in <u>Exhibit 1</u> are not an exhaustive list of documents or agreements governing the Parties' rights and obligations relevant to the instant Notice of Cure Claim. BNY Mellon reserves all rights to supplement or amend this Notice of Cure Claim to clarify <u>Exhibit 1</u>.

- 2 -

While each of the above-referenced Asset Pools are separate and distinct, the documents underlying and otherwise associated with the transactions, which set forth the rights and obligations of the Parties thereto, have similar rights and obligations vis-à-vis BNY Mellon as Master Servicer, and GMACM, as servicer thereunder.

### GMACM's Servicing Obligations

Pursuant to certain servicing agreements (the "Servicing Agreements"), GMACM (in such capacity, the "Servicer") is responsible for the servicing of mortgage loans or residential real properties contained in the Asset Pools (the "Serviced Assets"). In general, under the Servicing Agreements, GMACM is obligated to, among other things: (i) collect all payments due under each of the Serviced Assets; (ii) establish segregated accounts for the collected funds; (iii) maintain or otherwise cause mortgagors to maintain hazard insurance on the associated properties; (iv) commence foreclosure proceedings when appropriate; (v) maintain and dispose of properties obtained through foreclosure (or deed-in-lieu of foreclosure); and (vi) provide certain reports (collectively with any and all other obligations set forth in the Servicing Agreements, the "Servicing Obligations").

In connection with the Servicing Obligations, GMACM is obligated to incur certain customary and reasonable "out of pocket" expenses ("Advances"). Advances encompass a variety of expenses, including, but not limited to, outlays related to the (i) enforcement of judgments and other judicial proceedings, including foreclosure actions; (ii) management and liquidation of REO properties; and (iii) discharge of liens or encumbrances on mortgaged properties. In return for the above, GMACM is entitled to certain reimbursements for expenses and Advances as well as to collect a fee ("Servicing Fee").

17792094

3.      **Other Relevant Orders Entered In Chapter 11 Case**

*Servicing Sale Order*

On November 21, 2012, the Bankruptcy Court entered an *Order under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9019(I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases thereto, (D) Related Agreements; and (II) Granting Related Relief* (Docket No. 2246) (the "Sale Order"). Pursuant to the Sale Order, the Court approved the sale (the "Sale") of the Debtors' servicing platform to Ocwen Loan Servicing, LLC ("Ocwen"), including the Debtors' servicing obligations in connection with the RMBS Trusts.  Among other things, the Sale Order authorizes the Debtors to assume and assign to Ocwen the Servicing Agreements with respect to the Serviced Assets (the "Ocwen Servicing Transfer").

Paragraph 36 of the Sale Order provides that:

> the Debtors shall not be relieved of any liability for, and [BNY Mellon], . . . solely in [its] capacit[y] as master servicer[] . . . for certain mortgage backed securities trusts (collectively, the "Master Serviced Trusts") may assert claims against the Debtors . . . for, (i) any losses or liability suffered prior to the Closing Date, or which may be suffered after the Closing Date, by the Master Serviced Trusts as a result of any acts or omissions of the Debtors before the Closing Date (any such losses or liability, the "Servicing Loss Claims") and (ii) . . . the Debtors shall be obligated to pay the [BNY Mellon's] expenses, in each case as administrative expense claims under section 503(b) of the Bankruptcy Code, subject to the terms of the Supplemental Servicing Order. Such Servicing Loss Claims shall be asserted by the Master Servicers' within the time period for the assertion of Cure Claims as provided by the Scheduling Order.

(Sale Order ¶ 36).

**Supplemental Servicing Order**

Pursuant to the *Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* dated July 13, 2012 (the "Supplemental Servicing Order") (Docket No. 774), the Bankruptcy Court directed the Debtors to continue to perform their servicing obligations in connection with the RMBS Trusts, including but not limited to, reimbursing, indemnifying, defending and holding harmless certain RMBS Trustees under the transaction documents relating to the RMBS Trusts to the extent required by such transaction documents (the "RMBS Trustee Expense Claims").  The Supplemental Servicing Order provides that RMBS Trustee Expense Claims are to be paid as administrative expense claims under section 503(b) of the Bankruptcy Code, although the Debtors, the Creditors Committee and the United States Trustee have thirty (30) days after the submission of each invoice for an RMBS Trustee Expense Claim to object to such claim on the basis of reasonableness.

**Final DIP Financing Order**

Pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional*

- 5 -

17792094

*Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis, and (ii)*
*Granting Related Relief* dated June 25, 2012 (Docket No. 490) (the "Final DIP Order"), in
respect of their valid setoff rights under Section 553 of the Bankruptcy Code with respect to any
advances the RMBS Trusts owed to the Debtors (the "Debtor Receivables") as of the filing date
of the Debtors' chapter 11 cases, the RMBS Trustees, as trustees, indenture trustees, and master
servicers, were granted a superpriority administrative claim pursuant to Bankruptcy Code
Section 507(b) to the extent of any diminution in value in such set off rights caused as a result of
the satisfaction of any Debtor Receivables.  With respect to the RMBS Trustees' rights of setoff
against Debtor Receivables generated post-petition and rights of recoupment, the RMBS
Trustees' rights are preserved, with the exercise of any such rights postponed until the full
repayment of the DIP Obligations (as defined in the Final DIP Order).

**4.      Assumption and Assignment of Servicing Agreements**

Prior to the closing of the servicing platform to Ocwen, the Debtors stated that they
anticipated that all of the Servicing Agreements would be assumed by the applicable Debtor and
assigned to Ocwen.  As of the date of this Notice of Cure Claim, none of the Serving Agreements
ahs been rejected and the vast majority of the Servicing Agreements have been assumed and
assigned to Ocwen.  On information and belief, the Debtors and Ocwen are continuing to work
toward the assignment and assumption of the Servicing Agreements that have not yet been
assumed and assigned.

**5.      BNY Mellon's Cure Claims**

BNY Mellon hereby asserts the following Cure Claims (as defined below) against
GMACM.  Pursuant to the Sale Order, and subject to the terms of the Scheduling Order, the Cure
Claims are entitled to administrative expense priority under section 503(b) of the Bankruptcy

Code.  The Cure Claims relate to, among other things, GMACM's performance of its Servicing

Obligations under the Servicing Agreements, BNY Mellon's rights under the Servicing

Agreements and any other relevant documents, the transfer of the Debtors' mortgage-loan

servicing platform to Ocwen, BNY Mellon's fees and expenses incurred as a result of the

Debtors' bankruptcy proceedings, and otherwise that were outstanding as of the date of the

closing of the sale of the Debtors' servicing platform to Ocwen, that became due and owing after

such closing date, or that become due and owing, as a result of pre-closing actions of GMACM

as Servicer.

### *Cure Claims Against GMACM*

As Master Servicer, BNY Mellon is obligated to monitor and oversee GMACM's

performance of its Servicing Obligations under the Servicing Agreements.  Under the Master

Servicing Agreements and related documents, and the Sale Order, GMACM, as Servicer, is

obligated to BNY Mellon for, among other things, indemnification amounts, transfer costs and

expenses.

### <u>Indemnification Cure Claims</u>

Pursuant to the Master Servicing Agreements, the Servicing Agreements and other

related documents, GMACM, as Servicer, agreed to indemnify BNY Mellon, in its capacity as

Master Servicer, and hold it harmless against losses, damages, penalties, fines, forfeitures,

reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and

expenses resulting from GMACM's breach or failure to perform its Servicing Obligations, make

required Advances, or other wrongful conduct with respect to each of the Asset Pools.  In the

event that BNY Mellon becomes aware that GMACM has breached its Servicing Obligations,

failed to make Advances, or otherwise engaged in wrongful conduct with respect to each of the

Asset Pools, and BNY Mellon is damaged thereby, GMACM will owe BNY Mellon indemnification amounts for any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses resulting from GMACM's breach or failure to perform its Servicing Obligations, make necessary Advances, or other wrongful conduct with respect to each of the Asset Pools (together with any reimbursable Advances, the "Indemnification Cure Claims"). The Indemnification Cure Claims are entitled to administrative expense priority pursuant to section 503(b) of the Bankruptcy Code as expressly set forth in paragraph 36 of the Sale Order. At this time, the amount of BNY Mellon's Indemnification Cure Claims, if any, remains unknown and BNY Mellon reserves the right to amend this Notice of Cure Claim to include such Indemnification Cure Claims.

**Litigation Cure Claims**

GMACM and the Debtors are, and may become subject to litigation with certain borrowers, regulators, and other public agencies arising from, among other things, the Debtors' failure to perform their Servicing Obligations under the Servicing Agreements. Such servicing failures may result in, among other things, the imposition of money judgments, substantial regulatory fines and penalties, loss of liens, dilution of collateral, as well as other significant costs resulting from continued government intervention and the general impairment of value under BNY Mellon's Servicing Agreements. Further, such expenses may arise in a variety of contexts including, but not limited to, borrower-bankruptcy proceedings, servicer or sub-servicer bankruptcy proceedings, federal and state civil litigations, as well as formal and informal actions by governmental and municipal agencies. In addition to the multitude of actions currently pending, it is likely that substantial litigation related to the Debtors' failure to perform their Servicing Obligations will commence after the filing of this Notice of Cure Claim.

- 8 -

Consequently, BNY Mellon has incurred, or may in the future incur, fees, costs, and other expenses associated with the Debtors' actions. Accordingly, pursuant to the terms of the Servicing Agreements, BNY Mellon is entitled to indemnification for any such expenses, including attorneys' fees, incurred in connection with any litigation, enforcement proceeding, or other similar action—whether or not such action has commenced as of the filing of this Notice of Cure Claim—relating to the Debtors' failure to perform their Servicing Obligations (the "Litigation Cure Claims").

The Litigation Cure Claims are entitled to administrative expense priority pursuant to section 503(b) of the Bankruptcy Code as expressly set forth in paragraph 36 of the Sale Order. Currently, BNY Mellon's Litigation Cure Claims are contingent and/or unliquidated. Accordingly, BNY Mellon hereby reserves the right to amend this Notice of Cure Claim to included any amounts assertable as Litigation Cure Claims.

**Servicing Transfer Cure Claims**

Furthermore, pursuant to the Master Servicing Agreements, the Servicing Agreements and other related documents, BNY Mellon is entitled to seek reimbursement from GMACM for, and GMACM is obligated to pay, all costs and expenses incurred in connection with GMACM's termination as Servicer, the appointment of any successor Servicer or the transfer of GMACM's Servicing Obligations by the Master Servicer, for each of the Asset Pools (the "Servicing Transfer Cure Claims"). On November 21, 2012, the Bankruptcy Court approved the Ocwen Servicing Transfer. Consequently, pursuant to the terms of the relevant Agreements, GMACM is currently obligated to pay all costs and expenses to BNY Mellon incurred in connection with the Ocwen Servicing Transfer. The Servicing Transfer Cure Claims are entitled to administrative expense priority pursuant to section 503(b) of the Bankruptcy Code as expressly

17792094

set forth in paragraph 36 of the Sale Order.  To date, the amount of the Servicing Transfer Cure

Claims remains unknown; therefore, BNY Mellon reserves the right to amend this Notice of

Cure Claim to include such Servicing Transfer Cure Claims once quantified.

**Expense Cure Claims**

Pursuant to the Master Servicing Agreements, the Servicing Agreements and other

related documents, BNY Mellon is entitled to reimbursement for expenses it incurred in

connection with the Debtors' bankruptcy proceedings.  Pursuant to paragraph 36 of the Sale

Order, the Debtors, including GMACM, are obligated to pay BNY Mellon's reasonable fees,

costs and expenses, including fees and disbursements of BNY Mellon's counsel and/or agents

(the "Expense Cure Claims"; collectively with the Indemnification Cure Claims, the Servicing

Transfer Cure Claims and the Litigation Cure Claims, the "Cure Claims").  The Expense Cure

Claims include, but are not limited to, all reasonable fees costs and expenses incurred by BNY

Mellon in connection with the preparation of this Notice of Cure Claim, BNY Mellon's Proof of

Claim, as well as any other such fees or expenses incurred by BNY Mellon as a result of the

Debtors' chapter 11 cases.   As a result of the Debtors' bankruptcy proceedings, BNY Mellon

has incurred significant fees and expenses, including attorneys' fees, in connection with its

efforts to enforce and preserve its rights under the Servicing Agreements, and other relevant

documents.  To date, BNY Mellon has incurred $39,631.36 of fees and expenses which remain

unpaid as a result of the Debtors' bankruptcy cases.  Further, pursuant to paragraph 36 of the

Sale Order, such Expense Cure Claims are entitled to administrative expense priority under

section 503(b) of the Bankruptcy Code.

Given the complexity of the Debtors' bankruptcy proceedings and the relevant

transactions as well as the need to collect and analyze substantial amounts of documentation and

- 10 -

other data, the amount of any Cure Claims BNY Mellon may hold against GMACM is currently unknown.  BNY Mellon continues to work diligently in order to calculate the amounts of its various Cure Claims, however, due to the need for extensive fact gathering and analysis, it was not able to do so before the Cure Claim Deadline.  Accordingly, this Notice of Claim is filed with a full reservation of rights, including the right to amend the instant Notice of Cure Claim or to file additional Notices of Cure Claim should BNY Mellon deem that circumstances require.

**6.**      **No Judgment**

No judgment has been rendered on any of the Cure Claims set forth herein as of the date of the Notice of Cure Claim.

**7.**      **Credits**

The amount of all known payments or credits, if any, with respect to the Cure Claims set forth in this Notice of Cure Claim have been credited and deducted from the amounts owed as set forth herein.

**8.**      **Setoff and Recoupment**

BNY Mellon has setoff rights under New York common and statutory law (which governs substantially all of Master Servicing Agreements, the Servicing Agreements and other related documents) (N.Y. DEBT & CRED. LAW § 151) which are preserved under Section 553(a) of the Bankruptcy Code.  Pursuant to such setoff rights, BNY Mellon may setoff the claims of the Asset Pools (which are indebtedness of the Debtors to the Asset Pools) against Advances (which are indebtedness of the Asset Pools to the Debtors) or any other amounts the Asset Pools owe to the Debtors, including Servicing Fees.

17792094

BNY Mellon also has rights of recoupment under New York law whereby cross demands arising out of the same transaction between an Asset Pool and a Debtor are applied to offset one another with only the balance to be recovered by BNY Mellon.

Pursuant to the Final DIP Order, BNY Mellon's setoff and recoupment rights have been preserved. By this claim, BNY Mellon specifically reserves such setoff and recoupment claims against the Debtors and asserts them as indicated on a trust-by-trust basis on Exhibit 1 hereto.

**9.    Reservation of Right to Document Cure Claims**

The documents giving rise to the Cure Claims are voluminous and likely already in the possession and control of the GMACM. Indeed, for each of the Asset Pools listed on Exhibit 1, the underlying document or documents exceed 200 pages in length. BNY Mellon reserves the right to substantiate or support the Cure Claims by producing the relevant documents should the need arise. All relevant documents are on file with BNY Mellon.

**10.    Non-Waiver and Reservation of Rights**

This Notice of Cure Claim is filed to preserve BNY Mellon's rights, claims, and interests. BNY Mellon specifically reserves the right to amend, modify, and supplement this Notice of Cure Claim in any manner whatsoever, including, without limitation, the right to file additional notices of cure claim for additional cure claims, and to assert, without limitation, any claims to which BNY Mellon might be entitled, at law or in equity, or to show any further or additional payments, credits or setoffs which may occur or be discovered after the date hereof. Given the assumption and assignment of GMACM's rights under the Servicing Agreements to Ocwen, BNY Mellon furthermore specifically reserves the right to assert additional administrative claims with respect to the Cure Claims, to the extent not already asserted herein. BNY Mellon further specifically reserves the right to amend and supplement this Notice of Cure Claim. Further,

- 12 -

pursuant to the express terms of the Sale Order, the Cure Claims are entitled, in their entirety, to

administrative expense priority under section 503(b) of the Bankruptcy Code.


Dated: New York, New York
       April 16, 2013

**DENTONS US LLP**


By:     _/s/ Scott Koerner_
        Louis A. Curcio
        Scott Koerner
        1221 Avenue of the Americas
        New York, New York 10020
        Telephone: (212) 768-6700
        Facsimile: (212)768-6800

17792094

**EXHIBIT 1**

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 1 | CMLTI 2004-02 | Pooling and Servicing Agreement, dated as of December 1, 2004, among Citigroup Mortgage Loan Trust Inc. (depositor);Wells Fargo Bank, N.A. (master servicer); Wells Fargo Bank, N.A. (trust administrator); and HSBC Bank USA, N.A. (trustee); <br><br> CitiMae Sellers' Guide, dated September 1993 (as amended); <br><br> CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 2 | COND-01-01 | Master Servicing Agreement, dated as of June 29, 2001, among Jackson Federal Savings Bank  (owner) and Citibank, N.A. (company); <br><br> CitiMae Sellers' Guide, dated September 1993 (as amended); <br><br> CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 3 | COND-92-22 | Sub-Participation Agreement, dated as of December 30, 1992, among Massachusetts Mutual Life Insurance Company (initial certificateholder) and Citibank, N.A. (company); <br><br> Custodial Agreement, dated as of December 30, 1992, among Citibank, N.A. (custodian) and Massachusetts Mutual Life Insurance Company (certificateholder); <br><br> CitiMae Sellers' Guide, dated September 1993 (as amended); <br><br> CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

---

[1] All claim amounts are subject to BNY Mellon's right to setoff and recoupment.

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 4 | COND-94-19 | Seller's Warranty and Servicing Agreement, dated as of November 1, 1994, among Citizens Federal Bank (initial purchaser) and Citibank, N.A. (company);<br><br>Mortgage Loan Purchase Agreement, dated as of November 1, 1994, among Citizens Federal Bank (purchaser) and Citibank, N.A. (seller);<br><br>CitiMae Sellers' Guide, dated September 1993 (as amended);<br><br>CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 5 | CSFB 2002-AR33 | Pooling and Servicing Agreement, dated December 1, 2002, among Credit Suisse First Boston Mortgage Securities Corp. (depositor); DLJ Mortgage Capital, Inc. (seller); Chase Manhattan Mortgage Corp. (master servicer); Washington Mutual Mortgage Securities Corp. (seller and servicer); Fairbanks Capital Corp. (servicer and special servicer); Bank One, N.A. (trustee); and JPMorgan Chase Bank (trust administrator). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 6 | GSAMP 2004-SD1 | Pooling and Servicing Agreement, dated as of July 1, 2004, among GS Mortgage Securities Corp. (depositor); Chase Manhattan Mortgage Corporation (master servicer); Ocwen Federal Bank FSB (servicer); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank (securities administrator). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 7 | GSAMP 2004-SEA1 | Master Servicing and Trust Agreement, dated as of March 1, 2004, among GS Mortgage Securities Corp. (depositor); Chase Manhattan Mortgage Corporation (master servicer); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank (securities administrator);<br><br>Flow Sale and Servicing Agreement, dated as of January 1, 2004, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 8 | GSMPS 2004-4 | Master Servicing and Trust Agreement, dated as of October 1, 2004, among GS Mortgage Securities Corp. (depositor); Goldman Sachs Mortgage Company (assignor); Chase Manhattan Mortgage Corporation (master servicer); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank (securities administrator and custodian);<br><br>Standard Terms to Master Servicing and Trust Agreement, October 2004 Edition, among the parties listed above;<br><br>Flow Sale and Servicing Agreement, dated as of January 1, 2004, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 9 | GSMPS 2005-LT1 | Transfer and Servicing Agreement, dated as of July 1, 2005, among GSMPS Mortgage Loan Trust 2005-LT1 (issuer) JPMorgan Chase Bank, N.A. (master servicer, indenture trustee and administrator); and GS Mortgage Securities Corp. (depositor);<br><br>Trust Agreement, dated as of July 1, 2005, among GS Mortgage Securities Corp. (depositor); Wilmington Trust Company (owner trustee); and JPMorgan Chase Bank, N.A. (administrator);<br><br>Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company);<br><br>Flow Sale and Servicing Agreement, dated as of January 1, 2004, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 10 | GSMPS 2005-RP2 | Master Servicing and Trust Agreement, dated as of April 1, 2005, among GS Mortgages Securities Corp. (depositor); Goldman Sachs Mortgage Company (assignor); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank, N.A. (master servicer, securities administrator and custodian);<br><br>Standard Terms to Master Servicing and Trust Agreement, April 2005 Edition, among the parties listed above;<br><br>Flow Sale and Servicing Agreement, dated as of January 1, 2004, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 11 | GSMPS 2005-RP3 | Master Servicing and Trust Agreement, dated as of August 1, 2005, among GS Mortgage Securities Corp. (depositor); Goldman Sachs Mortgage Company (assignor); JPMorgan Chase Bank, N.A. (master servicer and securities administrator); Wachovia Bank, N.A. (trustee); Citibank (West), FSB (custodian);and JPMorgan Chase Bank, N.A. (custodian);<br><br>Standard Terms to the Master Servicing and Trust Agreement, August 2005 Edition, among the parties listed above;<br><br>Amended and Restated Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 12 | GSMPS 2006-RP1 | Master Servicing and Trust Agreement, dated as of January 1, 2006, among GS Mortgage Securities Corp. (depositor); Goldman Sachs Mortgage Company (assignor); U.S. Bank, N.A. (trustee); JPMorgan Chase Bank, N.A. (master servicer and securities administrator); and JPMorgan Trust Company, N.A. (custodian);<br><br>Standard Terms to Master Servicing and Trust Agreement, January 2006 Edition, among the parties listed above;<br><br>Amended and Restated Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | **Asset Pool** | **Operative Documents** | **BNY Capacity** | **Debtor/Capacity** | **Claim Type**[1] |
|---|---|---|---|---|---|
| 13 | GSR 2004-10F | Master Servicing and Trust Agreement, dated as of August 1, 2004, among GS Mortgage Securities Corp. (depositor); Wachovia Bank, N.A. (trustee); JPMorgan Chase Bank (securities administrator and custodian); and Chase Manhattan Mortgage Corporation (master servicer);<br><br>Standard Terms to Master Servicing and Trust Agreement, August 2004 Edition;<br><br>Flow Sale and Servicing Agreement, dated as of January 1, 2004, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 14 | GSR 2005-5F | Master Servicing and Trust Agreement, dated as of May 1, 2005, among GS Mortgage Securities Corp. (depositor); Wachovia Bank, N.A. (trustee); JPMorgan Chase Bank, N.A. (securities administrator and custodian); and JPMorgan Chase Bank, N.A. (master servicer);<br><br>Standard Terms to Master Servicing and Trust Agreement, May 2005 Edition;<br><br>Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

17792094

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 15 | GSR 2005-6F | Master Servicing and Trust Agreement, dated as of June 1, 2005, among GS Mortgage Securities Corp. (depositor); Wachovia Bank, N.A. (trustee); JPMorgan Chase Bank, N.A. (securities administrator and custodian); and JPMorgan Chase Bank, N.A. (master servicer);<br><br>Standard Terms to Master Servicing and Trust Agreement, June 2005 Edition, with GS Mortgage Securities Corp. as Depositor;<br><br>Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 16 | GSR 2005-7F | Master Servicing and Trust Agreement, dated as of August 1, 2005, among GS Securities Corp. (depositor); Wachovia Bank, N.A. (trustee); JPMorgan Chase Bank, N.A. (securities administrator and custodian); and JPMorgan Chase Bank, N.A. (master servicer);<br><br>Standard Terms to Master Servicing and Trust Agreement, August 2005 Edition;<br><br>Servicing Agreement, dated as of May 1, 2001, among EMC Mortgage Corp. (owner) and GMAC Mortgage Corp. (servicer) (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 17 | GSR 2005-8F | Master Servicing and Trust Agreement, dated as of October 1, 2005, among GS Mortgage Securities Corp. (depositor); Wachovia Bank, National Association (trustee); JPMorgan Chase Bank, N.A. (master servicer); JPMorgan Chase Bank National Association (custodian and securities administrator); and Wells Fargo Bank, N.A. (custodian);<br><br>Standard Terms to Master Servicing and Trust Agreement, October 2005 Edition, among the parties listed above;<br><br>Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 18 | GSR 2006-4F | Master Servicing and Trust Agreement, dated as of April 1, 2006, among GS Mortgage Securities Corp. (depositor); U.S. Bank, N.A. (trustee); JPMorgan Chase Bank, N.A. (custodian); JPMorgan Chase Bank, N.A. (master servicer and securities administrator); and Deutsche Bank National Trust Company (custodian);<br><br>Standard Terms to Master Servicing and Trust Agreement, April 2006 Edition, among the parties listed above;<br><br>Flow Sale and Servicing Agreement, dated as of March 1, 2005, among Goldman Sachs Mortgage Company (initial owner); and GMAC Mortgage Corp. (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 19 | GSRPM 2004-1 | Pooling and Servicing Agreement, dated as of August 1, 2004, among GS Mortgage Securities Corp. (depositor); Chase Manhattan Mortgage Company (master servicer); Ocwen Federal Bank FSB (servicer); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank (securities administrator) | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 20 | HSI-92-8B | Pooling and Servicing Agreement, dated as of June 1, 1992, among Housing Securities, Inc. (sponsor); Citibank, N.A. (master servicer and seller); and Security Pacific National Trust Company (New York) (trustee); CitiMae Sellers' Guide, dated September 1993 (as amended); CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 21 | HSI-92-8E | Pooling and Servicing Agreement, dated as of June 1, 1992, among Housing Securities, Inc. (sponsor); Citibank, N.A. (master servicer and seller); and Security Pacific National Trust Company (New York) (trustee); CitiMae Sellers' Guide, dated September 1993 (as amended); CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 22 | SBMS-02-01 | Pooling and Servicing Agreement, dated as of May 1, 2002, among Salomon Brothers Mortgage Securities VII, Inc. (depositor); Chase Manhattan Mortgage Corporation (master servicer); Wachovia Bank, N.A. (trustee); and JPMorgan Chase Bank (trust administrator); CitiMae Sellers' Guide, dated September 1993 (as amended); CitiMae Servicers' Guide, dated September 1993 (as amended). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |
| 23 | STAB 2009 NONPERF RESI A/A | Trust and Master Servicing Agreement, dated as of March 31, 2009, among StabFund (USA) Inc. (grantor); The Bank of New York Mellon (master servicer); and The Bank of New York Mellon Trust Company, N.A. (trustee); Administrative Services Agreement, dated as of March 31, 2009, among StabFund USA Residential Properties LLC (owner) and The Bank of New York Mellon (administrator); Assignment, Assumption and Recognition Agreement, dated April 30, 2009, among UBS Real Estate Securities Inc. (assignor); the Bank of New York Mellon Trust Company (trustee); the Bank of New York Mellon (master servicer); GMAC Mortgage LLC; and StabFund (USA) Inc.; Servicing Agreement, dated as of February 23, 2004, among UBS Real Estate Securities Inc. and GMAC Mortgage, LLC, as amended by that certain First Amendment dated May 31, 2005, and as further amended by that Second Amendment dated March 15, 2007; Flow Sale and Servicing Agreement, dated October 1, 2004 (as amended), among UBS Real Estate Securities Inc. (initial owner) and GMAC Mortgage Corporation (company). | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

| | Asset Pool | Operative Documents | BNY Capacity | Debtor/Capacity | Claim Type[1] |
|---|---|---|---|---|---|
| 24 | STAB 2009 NONPERF RESI S/S | Trust and Master Servicing Agreement, dated as of March 31, 2009, among StabFund Sub CA AG (grantor); The Bank of New York Mellon (master servicer); and The Bank of New York Mellon Trust Company, N.A. (trustee);<br><br>Administrative Services Agreement, dated as of March 31, 2009, among StabFund USA Residential Properties LLC (owner) and The Bank of New York Mellon (administrator);<br><br>Assignment, Assumption and Recognition Agreement, dated April 30, 2009, among UBS Real Estate Securities Inc. (assignor); the Bank of New York Mellon Trust Company (trustee); the Bank of New York Mellon (master servicer); GMAC Mortgage LLC; and StabFund Sub CA AG;<br><br>Flow Sale and Servicing Agreement, dated October 1, 2004 (as amended), among UBS Real Estate Securities Inc. (initial owner) and GMAC Mortgage Corporation (company);<br><br>Servicing Agreement, dated as of November 1, 2001, among UBS Warburg Real Estate Securities Inc. (owner) and GMAC Mortgage Corporation (servicer);<br><br>Servicing Agreement dated as of November 1, 2001, among UBS Warburg Real Estate Securities, Inc. and GMAC Mortgage, LLC, as amended by that certain Amendment Number One, dated October 9, 2003, and as further amended by that certain Amendment Number Two, dated July 1, 2006, as further modified by the Letter Agreement dated June 2, 2004. | Master Servicer | GMACM/Servicer | Indemnification Cure Claims; Litigation Cure Claims; Servicing Transfer Cure Claims; and Expense Cure Claims |

17792094