**Hearing Date: May 7, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: April 29, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Naomi Moss

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )    Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                         )    Chapter 11
                                                                 )
                                              Debtors.           )    Jointly Administered
                                                                 )
---------------------------------------------------------------- )

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER**
**FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A**
**<u>CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

JURISDICTION ................................................................................................... 5

BACKGROUND .................................................................................................. 5

RELIEF REQUESTED ........................................................................................ 6

BASIS FOR THE RELIEF ................................................................................... 7

      A.    The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases .............................................. 10

      B.    The Debtors Have Made Good Faith Progress Toward Reorganization and in Negotiations With Creditors ............................................................................ 10

      C.    Unresolved Contingencies Exist, and the Debtors Have Not Had Sufficient Time to Fully Negotiate a Plan ........................................................................... 12

      D.    Terminating Exclusivity Would Adversely Affect Administration of these Chapter 11 Cases ............................................................................................... 18

      E.    The Other Adelphia Factors Favor an Extension of the Exclusive Periods ......... 19

CONCLUSION .................................................................................................... 19

NOTICE .............................................................................................................. 20

NO PRIOR REQUEST ........................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp.*,
   352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...........................................................................passim

*In re Ames Dep't Stores, Inc.*,
   No. M-47 (PKL), 1991 WL 259036 (S.D.N.Y. Nov. 25, 1991).............................................7

*In re Amko Plastics, Inc.*,
   197 B.R. 74 (Bankr. S.D. Ohio 1996) ................................................................................10

*In re Borders Grp., Inc.*,
   460 B.R. 818 (Bankr. S.D.N.Y. 2011) ......................................................................passim

*In re Express One Int'l, Inc.*,
   194 B.R. 98 (Bankr. E.D. Tex. 1996)...................................................................................9

*In re Interco, Inc.*,
   137 B.R. 999 (Bankr. E.D. Mo. 1992)..................................................................................9

*In re Lexington Precision Corp.*,
   Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Oct. 31, 2008)...........................................8, 10

*In re Lionel L.L.C.*,
   No. 04-17324, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) .....................................8

*In re United Press Int'l, Inc.*,
   60 B.R. 265 (Bankr. D.C. 1986).........................................................................................18

STATUTES

11 U.S.C. § 1121(d)(1) .........................................................................................................7

OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...........................................7

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6191 .........................................10

Transcript of Hearing, *In re Residential Capital, LLC*,
   Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012).............................................9, 10

Transcript of Hearing, *In re Residential Capital, LLC*,
   Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 20, 2012) .............................................3, 10

ii

Transcript of Hearing, *In re Residential Capital, LLC*,
Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 7, 2013).............................................12, 13

Transcript of Hearing, *In re Residential Capital, LLC*,
Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5, 2013) ............................................passim

Transcript of Hearing (Session I), *In re Residential Capital, LLC,*
Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Apr. 11, 2013).............................................3, 16

ny-1084780

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors"),[1] hereby move (the "Motion") for the entry of an order substantially in the form

attached hereto as Exhibit 1, further (i) extending the exclusive period during which only the

Debtors may file a Chapter 11 plan (the "Exclusive Plan Period") through and including July 10,

2013, and (ii) extending the period during which the Debtors have the exclusive right to solicit

acceptances thereof through and including September 9, 2013 (the "Exclusive Solicitation

Period" and, together with the Exclusive Plan Period, the "Exclusive Periods").[2]   In support of

this Motion, the Debtors submit the declaration of Lewis Kruger, Chief Restructuring Officer of

the Debtors (the "Kruger Declaration"), filed contemporaneously herewith.  In further support of

this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.     At the last exclusivity hearing, held on March 5, 2013 (the "March 5, 2013

Hearing"), following the Court's instruction, the Debtors committed to engage in "plural"

negotiations with creditors and work toward actual resolution of the major issues that stand in

the way of achieving a consensual plan.  As the Court noted at the March 5, 2013 Hearing,

"there are a lot of moving pieces to this: intercreditor claims, claims against various - - the

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Whitlinger Affidavit") [Docket No. 6].

[2] On September 11, 2012, the Court entered an order granting an extension of the Debtors' exclusive period to file a plan to December 20, 2012 (the "First Exclusivity Extension") and granting an extension of the period to solicit votes to February 18, 2013 [Docket No. 1248].  On December 20, 2013, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to February 28, 2013 (the "Second Exclusivity Extension") and granting an extension of the period to solicit votes to April 29, 2013 [Docket No. 2849].  On February 22, 2013, the Court entered a bridge order extending exclusivity through and including March 5, 2013 [Docket No. 3007].  On March 5, 2013, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to April 30, 2013 (the "Third Exclusivity Extension") and granting an extension of the period to solicit votes to July 1, 2013 [Docket No. 3102].  On April 15, 2013, the Court entered a bridge order extending exclusivity through and including May 7, 2013 [Docket No. 3440].

ny-1084780

debtors, and any consensual plan is going to have to resolve those issues as well."  Transcript of

Hearing at 27:10-13, *In re Residential Capital, LLC*, 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5,

2013) (the "Third Exclusivity Transcript").   As set forth below and in the Kruger Declaration,

Mr. Kruger, leading the Debtors, has fully engaged in simultaneous substantive negotiations

with each of the Debtors' key creditor constituencies and provided those creditors with an array

of updated information in an effort to address those moving pieces.  Significant progress has

been made toward achieving consensus on major issues and in developing a Chapter 11 plan

with creditor support.

       2.      Mr. Kruger has spearheaded the plan process on the Debtors' behalf and devised a

work plan pursuant to which the Debtors and their creditors negotiated in earnest, shared

information, and participated in mediation.[3]  As set forth in the Kruger Declaration, during the

Third Exclusivity Extension, Mr. Kruger and the Debtors' advisors have been participating in

concurrent settlement discussions, both in and out of mediation, regarding complex intercreditor

disputes that must be resolved in order to move forward with any Chapter 11 plan.  Those issues

include: (a) whether the claims asserted by various monoline insurers (the "Monoline Claims")

should be disallowed or subordinated under the Bankruptcy Code (or are not otherwise

sustainable as a matter of law) and the related question of whether such monoline insurers

control the claims of the RMBS trusts that they "wrapped"; (b) whether the holders of Junior

Secured Guaranteed Notes (the "JSBs") are oversecured and entitled to any post-petition

---

[3] On December 20, 2012, the Court appointed the Honorable Judge James M. Peck as mediator (the "Mediator") for
an initial term through and including February 28, 2013.  Mediation commenced shortly after the Mediator was
appointed.  On March 5, 2013, the Court entered an Order extending the Mediator's term through and including
May 31, 2013 [Docket No 3101].

ny-1084780

interest;[4] (c) the approval of the proposed RMBS Settlement (defined below);[5] and (d) the

priority of claims arising under securities laws relating to the Debtors' residential mortgage-

backed securities ("RMBS") (collectively, the "Gating Intercreditor Issues").  Mr. Kruger also

led the Debtors in the continuing negotiations concerning the settlement of claims (the "AFI

Settlement") against Ally Financial Inc. ("AFI").

3.      These Chapter 11 cases are now at a crossroads.  Mr. Kruger and the Debtors' key

creditors have made tremendous headway in the plan process, resulting in significant movement

toward global resolution of key plan issues and serious consideration of a term sheet regarding

potential plan treatments.  The Debtors and all of their major creditor constituencies are now

busy preparing for a global mediation summit that Judge Peck has scheduled for next week in an

attempt to bring the parties together to reach consensus on the important issues.  The Debtors

are cautiously optimistic that the global mediation summit will drive creditors to compromise,

recognizing that the alternative is, as this Court put it, close to "nuclear war."[6]  In the event a

resolution is reached with substantial creditor support, there should be little question that the

Debtors should be granted an extension of exclusivity to permit those terms to be promptly

documented into a plan and a disclosure statement and filed with the Court.

4.      Even if consensus is not reached prior to the expiration of the current exclusivity

period, the Debtors should still be granted a further extension of exclusivity because they have

---

[4] Mr. Kruger and the Debtors' advisors agree with the statements made by the Court at the hearing held on April 11, 2013 regarding the JSBs that "…this is an important issue in the overall case.  There's either a consensual resolution or there's a Court decision that'll resolve it."  *See* Transcript of Hearing at 98:20-23 (Session I), *In re Residential Capital, LLC,* Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Apr. 11, 2013) (the "April 11, 2013 Transcript").

[5] Heading the Court's directive at the March 5, 2013 Hearing that "So that clearly - - you know, whether the investors like it or not, it had better be a part of the negotiations that takes place[,]" Mr. Kruger ensured that the RMBS Settlement was part of the plan discussions.  *See* Third Exclusivity Transcript at 27:19-21.

[6] *See* Transcript of Hearing at 45:1-2, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 20, 2012) (the "Second Exclusivity Transcript") ("If there [is] going to be a consensual plan, there's going to need to be hard negotiations, compromise, and agreement.  The alternative is close to nuclear war.")

ny-1084780

satisfied the Court's requirement that they "show very, very substantial progress"[7] in plan

discussions in connection with each of the Gating Intercreditor Issues. As the Debtors have

consistently maintained, the Gating Intercreditor Issues stand in the way of confirmation of any

Chapter 11 plan in these cases. Two of the Gating Intercreditor Issues - the RMBS Settlement[8]

and the priority of the securities claims - have already been briefed and are scheduled to be

adjudicated promptly by the Court if no settlement is reached. With respect to the remaining

two Gating Intercreditor Issues - the Monoline Claims and the JSBs - the Debtors have prepared

separate pleadings designed to resolve those issues. After consultation with the Mediator and

the mediation parties, the Debtors have delayed filing these pleadings. However, if the global

mediation summit does not result in consensus, the Debtors intend to file promptly these

pleadings to request that the Court adjudicate the Gating Intercreditor Issues. Furthermore, the

Mediator has agreed to assist the Debtors and the Creditors' Committee (defined below) to work

together towards the achievement of a consensual Chapter 11 plan without any AFI Settlement.

5.    The Debtors share the Court's concerns about the "free-for-all"[9] and potential that

"Armageddon could strike"[10] if the Debtors do not maintain exclusivity. Termination of

exclusivity prior to resolution of the Gating Intercreditor Issues will only enable creditors to

pursue unconfirmable plans, pursuant to which the plan proponents will seek to maximize their

individual recoveries with no consideration of other stakeholders, leaving these estates in a

morass of plan-related litigation that will only serve to deplete the limited remaining resources

available for distribution to creditors.

---

[7] *See* Third Exclusivity Transcript at 39:15.

[8] Prior to the Petition date, the Debtors worked diligently and in good faith with institutional investors to negotiate a settlement of an allowed claim of $8.7 billion against the Debtors (the "RMBS Settlement").

[9] "I'm concerned about a free-for-all." *See* Third Exclusivity Transcript at 37:17-18.

[10] "…if this order were to get entered, sixty-one days after it, Armageddon could strike." *See* Third Exclusivity Transcript at 64:1-3.

6.      As discussed herein and in the Kruger Declaration, the Debtors have made noteworthy progress toward confirmation of a Chapter 11 plan, and are prepared to drive that process to conclusion.  The Debtors prefer to do so through a consensual plan.  If necessary however, the Debtors will do so through litigation.  Mr. Kruger and the Debtors' advisors believe that they have satisfied the Court's condition for a further extension of exclusivity to "show very, very substantial progress" in resolving those issues necessary for the achievement of a plan.  *See* Third Exclusivity Transcript at 39:15.  Accordingly, the Debtors believe that this ongoing progress warrants a continuation of the Exclusive Plan Period for an additional 64 days. The Debtors are confident that a further extension of plan filing exclusivity of 64 days is in the best interests of the estate.

## JURISDICTION

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is 11 U.S.C. § 1121(d) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

8.      As of May 14, 2012 (the "Petition Date"), the Debtors were a leading residential real estate finance company indirectly owned by AFI, which is not a Debtor.  The Debtors were the fifth largest servicer of residential mortgage loans in the United States, servicing over 2.4 million domestic mortgage loans with an aggregate unpaid principal balance of approximately $374.2 billion.  In addition, prior to the Petition Date, the Debtors and their non-debtor affiliates, including Ally Bank, were collectively the tenth largest originator of residential mortgage loans in the United States.  A more detailed description of the Debtors, including their

5

business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

9.      On the Petition Date, each of the Debtors filed a voluntary petition with the Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

10.     On May 16, 2012, the United States Trustee for the Southern District of New York appointed the nine member committee of unsecured creditors (the "Creditors' Committee").

## RELIEF REQUESTED

11.     The Debtors hereby move the Court, pursuant to section 1121(d) of the Bankruptcy Code, for an order: (a) extending the period during which the Debtors have the exclusive right to file a Chapter 11 plan through and including July 10, 2013, and (b) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof through and including September 9, 2013.

12.     Currently, the Exclusive Plan Period expires on May 7, 2013.  Allowing the Exclusive Plan Period to terminate at this time would almost certainly set back the plan process. Thus, in order to achieve the best result, the Debtors need additional time to negotiate, document, and file a Chapter 11 plan.

## BASIS FOR THE RELIEF

13.     Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a Chapter 11 plan for the first 120 days of a Chapter 11 case and the exclusive right to solicit votes for its plan for an additional 60 days.

ny-1084780

14.     Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause," extend these periods: "on request of a party in interest…and after notice and a hearing, the Court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1).

15.     A decision to extend exclusivity for "cause" is a fact-specific inquiry and the Court has broad discretion in granting such requests. *In re Borders Grp., Inc.*, 460 B.R. 818, 821-22 (Bankr. S.D.N.Y. 2011) (in granting an 120-day extension, this Court noted that, "The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.");[11] *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) (same). Although the Bankruptcy Code does not define "cause," legislative history indicates that "cause" is intended to be a flexible standard that balances the competing interest of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231, 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. This flexibility is intended to give a debtor an adequate opportunity to stabilize its business operations at the outset of the case and to then negotiate a plan with its creditors. *See In re Ames Dep't Stores, Inc.*, No. M-47 (PKL), 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").[12]

16.     Furthermore, a number of courts, including this Court in considering the Debtors' prior requests for extensions of their Exclusive Periods,[13] consider the factors utilized by Judge Gerber in *In re Adelphia Commc'ns Corp.* (the "Adelphia Factors") when determining whether "cause" exists to increase a debtor's exclusivity period. The Adelphia Factors include:

---

[11] This Court further extended the Borders' exclusive period to file a Chapter 11 plan by an additional 90 days.

[12] A copy of this decision is attached hereto as Exhibit 2.

[13] *See* Third Exclusivity Transcript at 39.

(a) the size and complexity of the case;

(b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(c) the existence of good faith progress toward reorganization;

(d) the fact that the debtor is paying its bills as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with creditors;

(g) the amount of time which has elapsed in the case;

(h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(i) whether an unresolved contingency exists.

*In re Borders Grp., Inc.*, 460 B.R. at 822 (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. at 587); *In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539, at *6 (Bankr. S.D.N.Y. Aug. 3, 2007).[14]

17.    Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods.  *See In re Lexington Precision Corp.*, Case No. 08-11153 (MG) (Bankr. S.D.N.Y. Oct. 31, 2008) [Docket No. 457][15] (considering the three most relevant factors in granting a second extension of the debtors' exclusive period to file a plan); *In re Express One Int'l, Inc.,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (relying on four factors in determining that cause existed to extend exclusive periods); *In re Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (the existence of four factors supported allowing the debtors to retain exclusivity).  In considering the Adelphia

---

[14] A copy of this decision is attached hereto as <u>Exhibit 2</u>.
[15] A copy of this decision is attached hereto as <u>Exhibit 2</u>.

ny-1084780

Factors and whether to extend exclusivity, the Court should also take a "broader, more global view-focused on what is best for these chapter 11 cases…" *In re Adelphia Commc'ns Corp.,* 352 B.R. at 582.

18.     At the hearing on the Debtors' first request for an exclusivity extension (the "<u>First Exclusivity Hearing</u>"), the Court advised that if the Debtors were "satisfying those factors that Judge Gerber has identified that I've applied in many cases so far, you'll get an extension of exclusivity…."  *See* Transcript of Hearing at 71:18-20, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012) (the "<u>First Exclusivity Transcript</u>").  At the March 5, 2013 Hearing, the Court stated "…it's kind of a balance because the Adelphia test of Judge Gerber, which I've applied in many cases before; I think they're not necessarily the exclusive factors, but I think it's a pretty good cataloguing of the factors the court's supposed to take into account."  *See* Third Exclusivity Transcript at 39:3-8.  The Debtors respectfully submit that the facts and circumstances of these Chapter 11 cases satisfy the Adelphia Factors and demonstrate that sufficient cause exists to grant the Debtors' requested extension of the Exclusive Periods.  None of the Adelphia Factors militates against granting the Debtors a further extension of the Exclusive Periods.  As discussed below, the application of the most critical of the Adelphia Factors to the circumstances of these cases demonstrates that a further extension of the Debtors' Exclusive Periods is warranted.

**A.      The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases**

19.     The size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan.  The legislative history is clear on this point:  "[I]f an unusually large company were to seek reorganization under Chapter 11, the court

would probably need extra time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 231, 232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6191, 6362.

20.      The size and complexity of these Chapter 11 cases clearly warrant a further extension of the Exclusive Periods.  These are among the largest and most complex cases ever filed, as the Court recognized during a hearing held on December 20, 2012, stating, "It is extremely complicated, because of the number of debtors, the capital structure, the different creditor constituencies."  *See* Second Exclusivity Transcript at 44:24-25.  Accordingly, the complexity of these cases demanded and still demands the attention of the Debtors and their advisors on monetizing the Debtors' remaining assets, operational issues and negotiating a plan.

21.      The size and complexity of these Chapter 11 cases alone support the requested extension of the Exclusive Periods.

**B.    The Debtors Have Made Good Faith Progress Toward Reorganization and in Negotiations With Creditors**

22.      Another important[16] Adelphia Factor requires an assessment by the Court of a debtor's progress towards rehabilitation and development of a consensual plan.  *See, e.g. In re Lexington Precision Corp.*, at 5; *In re Borders Grp., Inc.*, 460 B.R. at 825; *In re Adelphia Commc'ns Corp.*, 352 B.R. at 588-89; *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

23.      Since the March 5, 2013 Hearing, Mr. Kruger's primary focus has been on satisfying this Court's directive to "actively try and direct, manage, move a plan process" towards the development of a consensual Chapter 11 plan.  *See* Third Exclusivity Transcript at 29:19-20.  To facilitate this goal, Mr. Kruger, with the assistance of the Debtors' advisors, and

---

[16]   At the First Exclusivity Hearing, the Court stated that "…whether the debtor has made progress in negotiations with its creditors…it's an important factor."  *See* First Exclusivity Transcript at 61:11-15.

ny-1084780

in consultation with the Creditors' Committee, developed a roadmap for resolving important

plan issues. As set forth in the Kruger Declaration, the roadmap involved: (a) the provision of

updated business and financial information, (b) formal and informal meetings with creditors,

and (c) mediation. The Debtors have been successful in satisfying each of these objectives. The

Debtors have provided stakeholders with information such as updated "waterfall" analyses,

intercompany claim analyses, estate wind-down management analyses, and insurance coverage

analyses. During the Third Exclusivity Extension, as described in the Kruger Declaration, the

Debtors and their major stakeholders have engaged in countless meetings during which the

parties presented their respective positions on major plan components. The Debtors and their

key creditor constituencies have continued to make progress in the ongoing mediation.

24.     As described in the Kruger Declaration, the provision of information, mediation,

and the dedication to engaging parties in discussions on major plan issues are just some of the

ways in which Mr. Kruger and the Debtors' advisors have sought to facilitate a plan process that

involved informed substantive negotiations. Each of the mechanisms put in place by the

Debtors has considerably advanced the plan process. The Debtors are confident that a further

extension of exclusivity will allow them to capitalize on the progress made thus far and garner

consensus on important plan issues.

25.     As the Court is well aware, the Debtors' key parties in interest consist of

constituents with very different views. Negotiating a consensual Chapter 11 plan is not an easy

task. During the Third Exclusivity Extension, creditor constituencies who previously refused to

come to the table participated in mediation and have begun to recognize that compromise will

provide the best outcome for all involved. Judge Peck's commitment to the plan process,

together with Mr. Kruger's recent appointment has changed the landscape for plan discussions.

The Debtors and their major stakeholders are negotiating a term sheet concerning potential

recoveries under a plan structure with an AFI Settlement.  The Debtors hope and expect that

such a plan will be negotiated in earnest at the global mediation summit next week.

26.    The Debtors believe that the substantial progress described above warrants a

further extension of the Exclusive Periods.

### C.    Unresolved Contingencies Exist, and the Debtors Have Not Had Sufficient Time to Fully Negotiate a Plan

27.    As noted in the Debtors' previous requests for extensions of exclusivity, the

existence of unresolved contingencies also favors the Debtors' continued retention of

exclusivity.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. at 590 (noting that "the 'unresolved

contingency' factor might support continuing exclusivity to see how the unresolved contingency

pans out…").

28.    The pending Examiner's Report supports the continuation of the Debtors'

Exclusive Periods.  Specifically, as noted by the Court at a hearing held on February 7, 2013,

"…the completion of the examiner report is very important to progress in this case with respect

to development of a plan, negotiating a consensual plan, hopefully."  *See* Transcript of Hearing

at 14:18-21, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 7,

2013) (the "February 7, 2013 Transcript").  At that hearing, counsel for the Examiner advised

the Court that the issuance of the Examiner's Report would likely not occur until early May,

2013.[17]

---

[17] On February 8, 2013, the Examiner filed the *Third Supplement to Work Plan of Arthur J. Gonzalez, Examiner*
[Docket No. 2868], stating that "For the reasons stated on the record of the hearing held in this case on February
7, 2013…the projected delivery date for the Examiner's report must be extended for an additional month, from the
previously-projected period of early April, 2013 to early May, 2013."

29.    As raised in the Debtors' prior requests for extensions of their Exclusive Periods, while the Examiner's pending investigation should not decelerate plan discussions, compliance with the Examiner's investigation has required substantial attention from the Debtors and their advisors.  Although the Examiner's investigation is focused on estate owned and third party claims against AFI and may impact the AFI Settlement, the Debtors and their major stakeholders have nonetheless simultaneously engaged in settlement discussions regarding the AFI Settlement and Gating Intercreditor Issues.  Extending the Exclusive Plan Period to a date beyond the expected issuance of the Examiner's Report will allow parties to finalize those negotiations.  Positions articulated by various creditor groups have raised concerns that parties may hedge commitment prior to the issuance of the Examiner's Report. [18]  The Debtors share the Court's view that the "examiner report is very important to progress in this case with respect to development of a plan…."  *See* February 7, 2013 Transcript at 14:18-20.  The attention required from the Debtors in connection with Examiner's investigation and its importance to development of a plan support a finding that the Debtors have not had sufficient time to fully negotiate a plan, thus warranting an extension of the Exclusive Periods.

30.    Another unresolved contingency is the ongoing analysis of the Debtors' insurance coverage.  The policies in question are potentially a very significant asset of these estates.  The Debtors have recently engaged specialized insurance coverage counsel to explore what recovery may exist through insurance and which of the claims asserted against the Debtors may be covered by the insurance policies.  The Debtors intend to utilize a further extension of the

---

[18] "There is one question that has not been answered, and it's out there, and I struggle with it.  And that is, whether or not a plan can be achieved prior to the publishing of the examiner report.  And candidly, Your Honor, I believe that is the single biggest hurdle that we are confronting right now is, can the parties bridge their differences before the examiner's report comes out."  *See* Third Exclusivity Transcript at 53:17-23 (Oral Argument of Kenneth Eckstein).

13

Exclusive Periods to review and analyze these policies and to enforce claims under these policies for the benefit of the estates.

31.    As noted above, there also exist complex Gating Intercreditor Issues that stand in the way of confirmation of any Chapter 11 plan in these cases.  The Debtors have been actively and acutely focused on the creditor claims asserted against them and have put pressure on creditors to settle those claims.  The Debtors need more time to continue their efforts to settle those disputes.  If those efforts are unsuccessful, the Debtors will promptly commence litigation to resolve these matters.  Granting an extension of exclusivity will allow the Gating Intercreditor Issues to be resolved without the costly litigation on competing unconfirmable plans that will inevitably follow any termination of exclusivity.

32.    Another unresolved contingency, and one of the Gating Intercreditor Issues described above, that supports the continuation of exclusivity is the trial on the RMBS Settlement, which is currently scheduled to commence on May 28, 2013.  Although the parties agreed to adjourn the trial on this significant settlement so they could focus on plan negotiations, the Debtors and their advisors have been, and will continue to work until then, to be prepared for the trial if a resolution is not achieved.

33.    Similarly, on February 19, 2013, the Debtors commenced an adversary proceeding contesting the priorities and allowance of securities claims.[19]  From 2004 to 2007, the Debtors issued RMBS in 392 separate private label securitizations with an aggregate original principal balance of more than $226 billion.  Claims arising out of the Debtors' issuance of

---

[19] On February 19, 2013, the Debtors filed the *Complaint Against AIG Asset Management (U.S.), LLC and Its Affiliated Entities, AllState Insurance Company and Its Affiliated Entities, Massachusetts Mutual Life Insurance Company, Prudential Insurance Company of America, and Its Affiliated Entities* Complaint, Residential Capital, LLC v. Allstate Ins. Co. (Bankr. S.D.N.Y. Adv. Pro. No. 13-01262) [Docket No. 1] (the "Securities Objection"). The hearing on the Securities Objection is scheduled for May 23, 2013.

securities have been asserted against the Debtors in unliquidated amounts.  The defendants named in the Securities Objection collectively purchased $1.785 billion of the Debtors' RMBS. The Securities Objection seeks an order declaring that the securities claims are subordinated to all general unsecured claims.  A determination regarding the securities claims will allow those creditors to be able to properly assess their positions and negotiate accordingly.  It will also allow other creditors to assess whether their recoveries may be diluted by holders of securities claims.

34.     The Debtors have also devoted substantial time and attention to resolving the Monoline Claims.  As the Court is well aware, the Monoline Claims raise complicated questions regarding the RMBS Settlement and ownership of the claims arising out of "wrapped" deals. During the Third Exclusivity Extension, the Debtors engaged in substantive negotiations with key stakeholders to settle these disputes.  Negotiations have not yet resulted in global resolution of these issues. Consequently, the Debtors have prepared pleadings seeking to subordinate certain of the Monoline Claims as claims for contribution and reduce such claims on the merits (the "Monoline Objections").   In consultation with the Mediator, and at the request of parties in interest, the Debtors have not yet filed these pleadings.  However, if these issues are not resolved in mediation, the Debtors will promptly file them.  The Debtors believe that filing the Monoline Objections will put pressure on these creditors to recognize the weaknesses of their claims and facilitate compromise necessary for the prosecution of a plan with creditor support.

35.     Moreover, the Debtors have not limited their efforts to unsecured claimants. During the Third Exclusivity Extension, the Debtors and their advisors worked to resolve the claims asserted by the JSBs.  As the Court noted at the hearing held on April 11, 2013, in reference to the JSBs, "[w]hat their collateral position is is, obviously, ultimately very important

ny-1084780

to any resolution of this case." *See* April 11, 2013 Transcript at 90:17-19.  Throughout the

course of these cases, the JSBs – in pleadings filed with the Court and in correspondence with

the Debtors' advisors – have articulated an oversecured position.  Until this question is resolved,

it is unlikely that any plan will be able to provide for any distribution to the holders of general

unsecured claims (at least without an AFI contribution).  During the Third Exclusivity

Extension, the Debtors and their advisors met with the advisors to the Ad Hoc Group of Junior

Secured Noteholders[20] (the "Ad Hoc Group") and provided them with an array of information in

an effort to resolve this gating issue.  If significant progress is not made in connection with this

issue, the Debtors intend to commence appropriate litigation to seek a resolution of these issues.

36.     Also, a factor raised by the Debtors in their previous requests for extensions of the

Exclusive Periods is the high volume of claims filed in these cases.  The deadline for creditors

to file proofs of claim in these Chapter 11 cases did not pass until November 16, 2012.  *See In*

*re Borders Grp., Inc.*, 460 B.R. at 826 ("The … bar date is important so that the Debtors can

understand the number, nature and amount of valid claims against the estate.  The Debtors need

a reasonable amount of time to review and evaluate these claims.").  Approximately 6,700

claims have been filed against the Debtors' estates.  Certain of these claims are large and

involve complex issues that will require substantial attention from the Debtors.  Although the

Debtors have already begun analyzing these claims, the task is enormous.  The Debtors still

need more time to vigorously review, analyze and object to, if necessary, sizeable claims against

the Debtors.  The bases for many of these claims are complicated and will require substantial

discovery and investigation.

---

[20] According to the *Objection of Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof,* the Ad Hoc Group is comprised of certain entities that hold or manage holders of 9.625% of Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008.  [Docket No. 2997].

37.     Additionally, pursuant to the *Fourth Revised Joint Omnibus Scheduling Order
and Provisions for Other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019
for Approval of RMBS Trust Settlement Agreements* [Docket No. 2528],[21] the RMBS Cure
Claim Deadline only recently passed.  Extending the Exclusive Periods and granting the Debtors
more time to analyze these claims, will allow them to make informed decisions regarding their
treatment.  Moreover, as these claims will likely be significant and asserted as administrative
priority claims, the Debtors must evaluate the propriety of these claims before any plan could be
confirmed.

38.     For these reasons, absent a global settlement, it would be premature for the
Debtors to propose a Chapter 11 plan at this time.  This factor also provides strong support for
the Debtors' proposed extension of the Exclusive Periods.

### D.     Terminating Exclusivity Would Adversely Affect Administration of these Chapter 11 Cases

39.     As noted by this Court in *In re Borders Grp., Inc.*, courts may also consider
practical factors in determining that "cause" exists to extend the Exclusive Periods.  *See In re
Borders Grp., Inc.*, 460 B.R. at 827-28 (noting that it was important for the Court to consider
practical factors in refusing to terminate exclusivity); *see also In re Adelphia Commc'ns Corp.*,
352 B.R. at 587-590 (noting that courts are not prohibited from considering other factors in
addition to the Adelphia Factors and that the primary consideration is whether terminating
exclusivity will move the case forward materially).  Refusing to grant this Motion to further

---

[21]   "Any RMBS Trust (including RMBS Trusts that are not Settlement Trusts) shall file a notice of any alleged
cure claim no later than sixty (60) calendar days after the closing of the sale of the servicing platform; provided,
however, that in the event an order has not been entered with respect to the 9019 Motion on or before the
closing of the sale of the servicing platform, Settlement Trusts shall have until sixty (60) days after the entry of
an order approving or disapproving the 9019 Motion to assert cure claims solely related to any origination-
related provision (the "RMBS Cure Claim Deadline")."

extend the Exclusive Periods at this stage would adversely affect the Debtors' administration of these Chapter 11 cases and subject these estates to the discord that would result from competing plans.  A concern voiced by the Court at the March 5, 2013 Hearing – "I'm concerned about a free-for-all." *See* Third Exclusivity Transcript at 37:17-18.

40.    The Debtors' key stakeholders hold divergent interests.  Terminating exclusivity at this time could result in various parties in interest proposing competing plans.  Allowing this to occur at this juncture would result in "Armageddon"[22] and be detrimental to the interests of all creditors.  Were various parties to propose competing plans, it would inevitably result in protracted litigation and increased administrative costs.  This was one of the reasons this Court refused to terminate the Debtors' exclusivity in *In re Borders Grp., Inc.*, quoting the following from *In re United Press Int'l, Inc.*, 60 B.R. 265, 271 n.12 (Bankr. D.C. 1986):

> "Opening the floodgates' to allow each and every one of [the debtor's creditors] to file a plan, no matter how poorly conceived or supported, would not serve 'to secure the expeditious and economical administration of' this case nor 'to carry out the provisions of' the Bankruptcy Code."

*In re Borders Grp., Inc.*, 460 B.R. at 828.

41.    The Debtors and their advisors have worked tirelessly to foster and engage major stakeholders in plan negotiations.  Because of the competing interests held by major stakeholders, it is imperative that the Debtors remain in control of the plan process if a consensual plan is to be reached.  The Debtors believe that continuing the momentum garnered during the Third Exclusivity Extension and through the mediation is likely the only avenue for these estates to exit Chapter 11 pursuant to a confirmed plan.

42.    Denying the Motion, which would result in a termination of exclusivity on April 30, 2013, would be destabilizing and foster a chaotic environment in these complex Chapter 11

---

[22] *See* Third Exclusivity Transcript at 64:1-3.

cases.  The Debtors, under Mr. Kruger's leadership, remain committed to leading the

negotiation of a consensual Chapter 11 plan with their key parties in interest.  Given these

monumental goals and the significant headway that has been made to date, terminating

exclusivity in these cases would undoubtedly be detrimental to all of the progress that has been

accomplished thus far.

> **E.    The Other Adelphia Factors Favor an Extension of the Exclusive Periods**

43.    None of the other Adelphia Factors militates against granting an extension of the

Exclusive Periods.  The Debtors have been paying their bills as they come due.  Less than a year

has passed since the Petition Date.  And it is patent that the Debtors are not seeking an extension

of the Exclusive Periods to pressure creditors.

## CONCLUSION

44.    The Debtors' prospects of successfully achieving their goal of confirming a

Chapter 11 plan with significant creditor support will be enhanced if the Debtors are allowed to

continue working with key parties in interest toward such a plan.  A further extension of the

Exclusive Periods will accelerate progress.  Denial of this Motion would jeopardize the

significant progress made to date in these Chapter 11 cases.

45.    For the reasons set forth above, the Debtors respectfully submit that ample cause

exists under the Bankruptcy Code and the applicable case law for the requested extension of the

Exclusive Periods.

46.    The Debtors reserve the right to request further extensions of the Exclusive

Periods pursuant to section 1121(d) of the Bankruptcy Code.

## NOTICE

47.    The Debtors have provided notice of this Motion in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

ny-1084780

## NO PRIOR REQUEST

48.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit 1, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated: April 19, 2013

/s/ Gary S. Lee
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Naomi Moss
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and
Debtors in Possession*

20