**EXHIBIT 3**

The Debtor has listed your claim as Con~~...~~ ~~Proof~~ ~~of Claim~~ ~~No. 2602  Pg 2 of~~ ~~...~~  ~~...~~ ~~...~~ YOU MUST
~~...~~ ~~timely file a Proof of Claim or you will be forever barred from recovery.~~   Claim #2602  Date Filed: 11/6/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor:  GMAC Mortgage, LLC    Case Number: 12-12032  **(MG)**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
DAVID KINWORTHY VS GMAC MORTGAGE LLC

Name and address where notices should be sent:   NameID: 10986629
DAVID KINWORTHY VS GMAC MORTGAGE LLC
C/O LAW OFFICES OF John T. DZIAO
200 W Santa Ana Blvd Ste 990
Santa Ana, CA 92701

Telephone number: 714-418-4317       email: John @ JdZlaw.net

☐ Check this box if this claim amends a previously filed claim.

Court Claim
Number: _____
(If known)
Filed on: _____

Name and address where payment should be sent (if different from above):
Same As Above
Telephone number: _____   email: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $ 230,511.50
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Breach of Written Agreement to Refinance
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:
SSN# 1234

3a. Debtor may have scheduled account as:
Loan # 0606000065
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____   Annual Interest Rate_____% ☐ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____     Basis for perfection: _____
Amount of Secured Claim: $_____     Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

9. Signature: (See instruction #9) Check the appropriate box.
☒ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)
I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: DAVID KINWORTHY
Title:
Company:
Address and telephone number (if different from notice address above): Same As Above
Telephone number:     Email:
(Signature) David Jones   (Date) 10-15-12

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.
☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).
☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).
Amount entitled to priority:
$_____
* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**RECEIVED**
NOV 0 6 2012
KURTZMAN CARSON CONSULTANTS

COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

001KC0002_51765-5_domestic_21/027019/162110     121203212082415060800924

**Please be advised that a previous claim was submitted on 11/2/12.  An attachment was missing.  Enclosed is the updated version with ALL attachment as requested.**

**Submitted 11/5/12**

# ADDENDUM  TO SECTION 8:  DOCUMENTS

## PROOF OF CLAIM

## CASE NO.  12-12032 (mg)

## DEBTOR:

## GMAC MORTGAGE LLC

## CREDITOR:

## DAVID KINWORTHY

# ADDENDUM TO SECTION 8: DOCUMENTS Page 1 of 4

## I.    INDEX OF DOCUMENTS ATTACHED:

A.    FILED: April 22, 2011,

REMOVED: to U.S. District Court as Case No EDCV 11-877-GW(SPx)  June 13, 2011,

STAYED: May 29, 2012

COPY OF COMPLAINT with Exhibits; Los Angeles County Superior Court case no. RIC 1107039,

B.    FIRST MORTGAGE PROMISSORY NOTE DATED 07-07-2006

Face Amount: $312,560.00

C.    SECOND MORTGAGE PROMISSORY NOTE DATED 07-07-2006

Face Amount:  $78.140.00

D.    HUD-1 CLOSING STATEMENT

E.    INTEREST RATE LOCK AGREEMENT

---

## II.    NARRATIVE OF COMPLAINT/CLAIM

MR. KINWORTHY  was promised a consolidation of his first and second mortgages with BOTH a reduced interest rate AND a principal reduction of $174,300.00.   (See Complaint Exhibit C).

To qualify for the new loan which was FHA, MR. KINWORTHY had to refinance another GMAC loan that he had on another property which he did at a cost of $9,630.51 .  (See HUD-1 CLOSING STATEMENT, ATTACHMENT D, showing settlement charges of $2,656.00 and cash to close of $6,974.651).

After MR. KINWORTHY signed the loan documents (See Complaint Exhibits D-1 and D-2) GMAC sold the second mortgage to a third party GREEN TREE SERVICING (See Complaint Exhibit F) which meant that GMAC could not complete the contracted for refinance.

---

# ADDENDUM TO SECTION 8: DOCUMENTS Page 2 of 4

## III.    COMPUTATION OF DAMAGES

ORIGINAL FIRST MORTGAGE LOAN:    Date SEPTEMBER 2006   (ATTACHMENT B)

$312,560.00

RATE: 7.25

PAYMENT FOR FIRST ten years:  $1,888.08

———————————————

ORIGINAL SECOND MORTGAGE LOAN:  Date  SEPTEMBER 2006   (ATTACHMENT C)

$78,140

9.55

MONTHLY PAYMENT $660.00

———————————————

Total of two loans:   390,700.00

———————————————

PROPOSED NEW LOAN

$223,785.00

Rate 6.125 (See Interest Rate Lock Agreement ATTACHMENT E)

FIRST PAYMENT DUE 09-01-2009

———————————————

**COMPUTING DAMAGES:**

**DAMAGE ITEM ONE:**

Second loan:    This loan would have been wiped out.  Therefore, TO DATE, MR. KINWORTHY
has made 38 payments of $660.00 that he would not have had to make===== TOTAL PAID:
**$25,080.00**

**DAMAGE ITEM TWO:**

ORIGINAL LOAN:  New rate would have been 1.125% lower.  1.125% of $223,875 === $236 per
month ==== 38 x 236= TOTAL PAID: **$8,968.00**

# ADDENDUM TO SECTION 8: DOCUMENTS Page 3 of 4

**DAMAGE ITEM THREE:**

MR. KINWORTHY was making payments on $312,500.00 not $223,786 ===== 1.125% on
difference of $88,775.00 = $83.25 per month x 38 months = **$3,163.50**

**DAMAGE ITEM FOUR:**

PROMISED PRINCIPAL REDUCTION:  **$174,300.00**

**DAMAGE ITEM FIVE:**

Attorney fees to date: **$19,000.00**

<u>**TOTALS**</u>

**$25,080.00**

**$8,968.00**

**$3,163.50**

**$174,300.00**

<u>**$19,000.00**</u>

# TOTAL DAMAGES:  $230,511.50

# ADDENDUM TO SECTION 8: DOCUMENTS Page 4 of 4



TRAUT LAW GROUP
John Thomas Dzialo California State Bar No. 159996
200 W. Santa Ana Blvd. Suite 990
Santa Ana, California 92701
Telephone No.: 714-418-4398
Fax No.: 949-812-7687
johnd@trautlawgroup.com

Attorneys for PLAINTIFFs,
DAVID KINWORTHY and LESLIE KINWORTHY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE – RIVERSIDE HISTORIC COURTHOUSE

| | |
|---|---|
| DAVID KINWORTHY AND LESLIE KINWORTHY,<br><br>PLAINTIFF,<br><br>v.<br><br>GMAC MORTGAGE, LLC,<br>AND DOES 1-10 INCLUSIVE,<br><br>Defendants. | Case No. *RIC* 1107039<br><br>**COMPLAINT**<br>**1. BREACH OF CONTRACT**<br>**2. BREACH OF CONTRACT/**<br>**PROMISSORY ESTOPPEL**<br>**3. FRAUD**<br><br>Unlimited Civil Jurisdiction<br>(Demand over $25,000) |

DAVID KINWORTHY and LESLIE KINWORTHY, in complaining of the defendants
named herein, state as follows:

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

-1-

**COMPLAINT FOR BREACH OF CONTRACT and FRAUD**

COPY

(Hereinafter referred to as the "PLAINTIFFS" husband and wife, were individuals residing in the City of Temecula, the County of Riverside, State of California.

2.      In July of 2009, PLAINTIFFS were indebted to GMAC MORTGAGE, LLC in the amount of $672,000.00 under a promissory note secured by a deed of trust recorded against certain real estate jointly owned by them and commonly known as 40155 Calle Medusa, City of Temecula, County of Orange, State of California 9259. (Hereinafter referred to as the "PROPERTY"). (The promissory note and the deed of trust are collectively referred to herein as the "FIRST MORTGAGE").

3.      Also in July of 2009, PLAINTIFFS were indebted to GMAC MORTGAGE, LLC in the amount of $78,000.00 under a promissory note secured by a second deed of trust also recorded against the same PROPERTY.   (The promissory note and the second deed of trust are referred to hereinafter as the "second mortgage"). (GMAC MORTGAGE, LLC, is hereinafter referred to as "GMAC").

4.      On July 2, 2009, PLAINTIFFS were contacted by a representative of GMAC informing PLAINTIFFS that they might be available for a "special program" that

> **"may offer you an opportunity to lower your current mortgage payment, re-**
> **finance your adjustable rate mortgage or possibly even reduce your loan's**
> **outstanding principal balance." (EXHIBIT A).**

5.      Since the PLAINTIFFS' FIRST MORTGAGE was an adjustable rate mortgage, they were very interested in taking advantage of the "special program" and filed the necessary application paperwork with GMAC.

6.      GMAC subsequently confirmed for PLAINTIFFS that GMAC was going to consolidate their FIRST and SECOND MORTGAGES into a single fixed rate mortgage that would reduce the combined total of the two mortgages by $174,300.00 and reduce the total monthly payment by $1,000.00.  (EXHIBITS B AND C).

7.      On August 12, 2009 PLAINTIFFS entered into a loan agreement with GMAC by signing the loan document as instructed by GMAC through an electronic documents system

- 2 -

**COMPLAINT FOR BREACH OF CONTRACT and FRAUD**

10. GMAC subsequently breached the loan agreement by failing without legal cause or justification to provide the refinancing as provided for in the loan agreement electronically signed by the PLAINTIFFS.

11. GMAC further breached the agreement by selling the SECOND MORTGAGE, which it was bound by contract to refinance, to BANK OF NEW YORK TRUST COMPANY, NA. Concurrently GMAC sold or transferred the servicing rights of the SECOND MORTGAGE to GREEN TREE FINANCIAL, LLC. These transfers were beaches of the loan agreement between GMAC and PLAINTIFFS because they placed that SECOND MORTGAGE outside of the control of GMAC thereby rendering the PLAINTIFFS-GMAC loan agreement a nullity and an impossibility. (The Bank of New York Mortgage Loan Transfer Notice" is attached as EXHIBIT E). The GREEN TREE FINANCIAL transfer letter is attached as EXHIBIT F).

12. PLAINTIFFS have been damaged in that they have been deprived of the benefit of their loan agreement and did not receive the principal reduction promised by GMAC and are paying and will continue to pay higher monthly mortgage payments than they would have had GMAC honored its agreement.

13. The identities of DOES ONE THROUGH 10 INCLUSIVE, are unknown to PLAINTIFFS as are the specific actions which make them liable to PLAINTIFFS, who shall amend this complaint if and when such information becomes known to them.

**COMPLAINT FOR BREACH OF CONTRACT and FRAUD**

BREACH OF CONTRACT-PROMISSORY ESTOPPEL

As and for their Second Cause of Action PLAINTIFFS restate and incorporate by reference the prior factual allegations of this complaint as though set forth in full herein.

On October 27, 2009 AM, GMAC failed to refinance PLAINTIFFS' FIRST and SECOND MORTGAGES in accordance with the signed loan agreement. GMAC offered to complete the loan transaction if PLAINTIFFs would first refinance the mortgage on a piece of real property which PLAINTIFFS owned in the State of Indiana. These representations of GMAC were clear and unambiguous and GMAC intended for the PLAINTIFFS to rely upon those representations.

16.    The refinance of the Indiana property would cost PLAINTIFFS $7,000.00 out of pocket in addition to transactional costs and fees, and they were willing to spend that sum only because they would recoup much more then that $7,000.00 when GMAC, as now promising for the second time, would refinance both the FIRST and SECOND MORTGAGES on the Temecula property, thereby reducing the principal balance  by $174,300, cutting the monthly payment by $1,000.00 and converting the adjustable to a fixed rate.

17.    PLAINTIFF completed the refinance of the Indiana property through GMAC on December 24, 2009.

18.    PLAINTIFFS reasonably relied on the representations of GMAC that GMAC would refinance the FIRST and SECOND MORTGAGE on the Temecula property, if they would first refinance the Indiana property through GMAC.  In reasonable reliance on the representations of GMAC paid $7,000.00 out of pocket to complete the Indiana refinance, and GMAC benefited by receiving fees as a part of the closing on the Indianan refinance.

19.    GMAC has failed to refinance the Temecula property despite the fact that PLAINTIFFS in reliance on GMAC's representations and promises have refinanced the Indiana

- 4 -

**COMPLAINT FOR BREACH OF CONTRACT and FRAUD**

because GMAC knew that PLAINTIFFS would rely to their detriment on the representations of

GMAC and PLAINTIFFS did in fact reasonably rely on those representations.

## THIRD CAUSE OF ACTION
### FRAUD

22.    As and for their Third Cause of Action PLAINTIFFS restate and incorporate by

reference the previous allegations of this complaint as though set forth in full herein.

23.    GMAC sold the SECOND MORTGAGE on PLAINTIFFS' Temecula property to

Bank of New York Trust Company, NA. (EXHIBIT E).   Concurrently GMAC transferred the

servicing of the loan to Green Tree Financial, LLC. (EXHIBIT F).    The transfers described in

this paragraph made it an absolute certainty that GMAC could not deliver on it previous promise

to refinance PLAINTIFFS' FIRST and SECOND MORTGAGES on the Temecula property.

24.    GMAC knew that once ownership of the SECOND MORTGAGE had been

transferred to Bank of New York and the servicing of that loan had been transferred to Green Tree

Financial, LLC, it would not be able to refinance that SECOND MORTGAGE.

25.    Despite the foregoing knowledge, GMAC continued to represent to PLAINTIFFS

that if they refinanced the Indiana property with GMAC, GMAC would refinance the FIRST and

SECOND on the Temecula property knowing that PLAINTIFFS were relying on the savings to be

realized from the Temecula refinance to cover the costs and expenses of the Indiana refinance.

- 5 -

26.    GMAC made the deliberate decision for the purpose of realizing financial gain on the Indiana refinance knowing from October 1, 2009 that GMAC would not be able to refinance the SECOND MORTGAGE on the Temecula property.

27.    From October 1, 2009 until the Indiana closing on December 14, 2009, GMAC representative Gus Holland on a regular basis continued to represent to PLAINTIFFS that they would receive the promised refinance of the Temecula property, even though that was impossible due to the ownership transfer of the SECOND MORTGAGE on October 1, 2009.

28.    Despite their diligence in keeping records and notes of their contacts with GMAC, the complete information necessary to plead the specifics of fraud and the ratification of that fraud at the management level are necessarily in the possession and control of GMAC which alone has the ability to know the full and complete facts of this controversy.   Only through discovery process can PLAINTIFFS possible be able to assemble the documentary evidence required to specifically plead and prove the alleged fraud.

WHEREFORE, PLAINTIFFS pray as follows:

COUNT NUMBER ONE: BREACH OF CONTRACT

1.    For contractual damages according to proof at trial but in no event less than $200,000.00

2.    For the costs of bringing this action.

3.    For such other relief as this court deems equitable, just and proper.

COUNT NUMBER TWO: BREACH OF CONTRACT-PROMISSORY ESTOPPEL

1.    For an order of this court requiring GMAC to buy back the SECOND MORTGAGE from BANK OF NEW YORK and provide to PLAINTIFFS a refinance as agreed of both the FIRST AND SECOND MORTGAGE on the Temecula property.

2.    For the costs of bringing this action.

3.    For such other relief as this court deems equitable, just and proper.

COMPLAINT FOR BREACH OF CONTRACT and FRAUD

1    For compensatory damages according to proof at trial but in no event less than
$40,000.00

2.    For punitive damages in the amount of $500,000.00

3.    For reasonable attorneys fees

4.    For the costs of bringing this action

5.    For such other relief as this court deems equitable just and proper.

8

9                                TRAUT LAW GROUP

10

11    DATED: April 21, 2011

12

13                            By: _____
                                   John Thomas Dzialo,  Attorney for PLAINTIFFS,
14                                 DAVID KINWORTHY and LESLIE KINWORTHY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR BREACH OF CONTRACT and FRAUD**

**EXHIBIT A**
*KINWORTHY V. GMAC*

I am a Loan Officer with GMAC Mortgage, an affiliate of your current mortgage company, Homecomings Financial*.

GMAC Mortgage has created a special program – <u>now available to some Homecomings Financial customers</u> – that may offer you an opportunity to lower your current mortgage payment, re-finance your adjustable rate mortgage or possibly even reduce your loan's outstanding principal balance.

Only certain customers have been identified for this limited time opportunity. I would like to speak with you about this opportunity as soon as possible.

Please call me toll free at **888.521.4622 extension 367.3024** for a no-cost, no-obligation review of your current mortgage loan with Homecomings Financial.

I look forward to hearing from you and showing you how GMAC Mortgage may be able to offer you financial relief on your mortgage.

Best Regards,

*Kyle*

Kyle Holland
Senior Mortgage Analyst
GMAC Mortgage, LLC
Direct – 704-367-3024
Fax -- 866-501-9581

1-800-766-4622
GMAC

Arizona Mortgage License Number BK-7670; Licensed by the Department of Corporations under the California Residential Mortgage Lending Act; Georgia Mortgage Lender License #5845; Illinois Residential Mortgage Licensee; Massachusetts Mortgage Lender License Number ML 1556; Minnesota: This is not an offer to enter into an agreement. Any such offer may only be made pursuant to Minn. Stat. – 47.206 (3) & (4); Montana Licensed Mortgage Broker #000207, Licensed by the New Hampshire Banking Department; Licensed by the NJ Department of Banking and Insurance, 45 Eisenhower Dr., Paramus, (201) 226-1199; Licensed Mortgage Banker: NYS Banking Department; Licensed by the Pennsylvania Department of Banking, Licensed RI Lender and Broker.Home Equity Credit Loans not offered in Arkansas; Home Equity Credit Lines not offered in: AR & TX. Massachusetts Mortgage Lender License Number ML 1556; Licensed by the New Hampshire Banking Department; In Tennessee home equity credit lines and loans offered by GMAC Mortgage Corporation of TN.

GMAC Mortgage, LLC
2101 Rexford Rd. Suite 250w  Charlotte, NC 28211
888.521.4622 toll free  gmacmortgage.com

**EXHIBIT B**

*KINWORTHY V. GMAC*

GMAIL

FW: GMAC loan docs
1 message

Leslie Kinworthy <kyegms@runner.com>                                    Fri, Oct 31, 2008 at 1:00 PM
To: David Kinworthy <kinworthys@gmail.com>

-----Original Message-----
From: Holland, Kyle - NC [mailto:Kyle.Holland@gmacm.com]
Sent: Wednesday, August 05, 2009 2:20 PM
To: kinworthys@roadrunner.com
Subject: GMAC loan docs

This is the first of two emails you will get. The 2nd email is the loan documents which you both will need to esign.
When you are done you need to hit the submit button. You will be asked a series of security questions to access
the loan documents and the answers regardless of how silly are gm in lower case.

Once you sign all these documents we will order your appraisal and your new loan amount will be approximately
99% of the appraised value. These documents are based on an estimated value of 225,000 and this will save you
around 1000 per month and consolidate your 2 mortgages into one.

I do need a little more info from you which you can respond via email.
job titles for both
Leslie's work address and phone number
A credit card number with expiration date so I can order the appraisal

I will also need the following documents from you both:
social security cards
last 2 pay stubs
last 2 w2's

Call me if you have any questions!!


**Kyle Holland**
**GMAC Mortgage**
**2101 Rexford Road, suite 250 West**
**Charlotte, NC 28211**
**888.521.4622 ext 367.3024**
**704.367.3024 direct**
**866.501.9581 fax**
**kyle.holland@gmacm.com**

The information contained in this message is the property of Residential Capital LLC and/or its direct and indirect subsidiaries and is
intended only for the confidential use of the persons or entities to whom it is addressed. This message, together with any attachments, is
proprietary and confidential, may contain inside information, and may be subject to the attorney-client privilege and/or the attorney work
product doctrine. If the reader of this message is not one of the addressees set forth above, (a) the reader has received this message in
error and is directed to destroy this message, together with any attachments, and notify the sender at 215-682-1627 and (b) any review,
dissemination, use, or distribution of this message or any attachments is prohibited. Thank you.

**EXHIBIT C**

FW: your GMAC loan

1 message

Leslie <lkinworthy@adinumen.com>
To: David Kilworthy <lkinworthy@gmail.com>

-----Original Message-----
From: Holland, Kyle - NC [mailto:Kyle.Holland@gmacm.com]
Sent: Monday, August 10, 2009 12:46 PM
To: Leslie
Subject: FW: your GMAC loan


there are 9122 of fees in this loan which show on your Good Faith Estimate
and those fees are lumped along with the amount of your mortgage we are
writing off which is roughly 174,300. Nothing comes from you and nothing is
wrapped into the loan. The best place to see this is page 4 of the Uniform
Residential loan application in the top left corner which I have circled for
you.

You currently pay about 3192 per month including your 1st and 2nd mortagges,
home owners insuarnce and property taxes, after this assuming your home
appraises for around 315k your new mortgage will be around 2104 including
all those items as well


Kyle Holland
GMAC Mortgage
2101 Rexford Road, suite 250 West
Charlotte, NC 28211
888.521.4622 ext 367.3024
704.367.3024 direct
866.501.9581 fax
kyle.holland@gmacm.com

The information contained in this message is the property of Residential
Capital LLC and/or its direct and indirect subsidiaries and is intended only
for the confidential use of the persons or entities to whom it is addressed.
This message, together with any attachments, is proprietary and
confidential, may contain inside information, and may be subject to the
attorney-client privilege and/or the attorney work product doctrine. If the
reader of this message is not one of the addressees set forth above: (a) the
reader has received this message in error and is directed to destroy this
message, together with any attachments, and notify the sender at
215-60?-?627 and (b) any review, dissemination, use, or distribution of this
message or any attachments is prohibited. Thank you.

**EXHIBIT D-1**

*KINNMANN v. GMAC*

G M

FW: Borrower for Loan 000687324647 with borrower Leslie
Kinworthy has completed signing.

1 message

Leslie Kinworthy <kinworthys@roadrunner.com>                    Wed, Jul 14, 2010 at 4:40 PM
To: David Kinworthy <kinworthys@gmail.com>

-----Original Message-----
From: Ally [mailto:techsupport@elynx.com]
Sent: Wednesday, August 12, 2009 10:46 AM
To: kinworthys@roadrunner.com
Subject: Borrower for Loan 000687324647 with borrower Leslie Kinworthy
has completed signing.


Loan number: 000687324647
Borrower: Leslie Kinworthy

Dear David,

Leslie Kinworthy for loan 000687324647, has completed the electronic signing
process.
In order for the documents to be completely signed and submitted it is
required that you login and sign the documents as well. This will require
you to login using the hyperlink contained in the original email that was
sent to you.


Thank you for using the Ally uSign System, powered by eLynx.  For technical
support, please call eLynx Technical Support at 1.800.905.0939.


Customer|eLynx|usign.Ally | BLOBDATA

-----------------------------------------------------------------------------------------

**EXHIBIT D-2**
*KINWORTHY V. GMAC*

John Dzialo

From:           Leslie [kinworthys@verizon.net]
Sent:           Friday, March 25, 2011 3:43 PM
To:             John@haullawgroup.com
Subject:        FW: Borrower for Loan 000687324647 with borrower David Kinworthy has completed signing.


-----Original Message-----
From: Ally [mailto:techsupport@elynx.com]
Sent: Wednesday, August 12, 2009 10:57 AM
To: kinworthys@roadrunner.com
Subject: Borrower for Loan 000687324647 with borrower David Kinworthy has completed
signing.


Loan number: 000687324647
Borrower: David Kinworthy

Dear Leslie,

David Kinworthy for loan 000687324647, has completed the electronic signing process.
In order for the documents to be completely signed and submitted it is required that you
login and sign the documents as well. This will require you to login using the hyperlink
contained in the original email that was sent to you.


Thank you for using the Ally uSign System, powered by eLynx.  For technical support,
please call eLynx Technical Support at 1.800.905.0939.


Customer|eLynx|usign.Ally | BLOBDATA

1

**EXHIBIT E**

*KINWORTHY V. GMAC*

Bank of New York Trust Company, N.A.

MORTGAGE LOAN TRANSFER NOTICE

In this Notice, the terms "we", "us" or "our" mean the new creditor identified below. The terms "you" and "your" mean the mortgage loan borrower(s) identified below.

We are sending you this Notice because we are required by law to notify you that your mortgage loan identified below has been sold or transferred to us. We are the new creditor of your mortgage loan.

Date of this Notice:

Mortgage Loan Borrower Name(s):

Property Address:

**Mortgage Loan Information:**
Date of Loan:                                07/07/2006
Original Amount of Loan:              $78,140.00

Address of Mortgaged Property:      **40156 Calle Medusa**
**Temecula, CA 92591-6900**

Mortgage Identification Number (MIN):  **1003006-0001010347-3**

*Please note the following information regarding the transfer of your mortgage loan:*

1.  The identity (name), address and telephone number of the new creditor:

    **Bank of New York Trust Company, N.A.**
    **2220 Chemsearch Blvd.**
    **Suite 150**
    **Irving, Tx  75062**
    **(972) 785-5263**

2.  The date of the transfer of your mortgage loan: 09/30/2009

3.  How to reach an agent or party having authority to act on behalf of the new creditor:

    The mailing address and telephone number to reach the mortgage company servicing your mortgage loan is:

    **GMAC Mortgage, LLC**
    **3451 Hammond Ave**
    **Mail Code 507-345-186**
    **Waterloo, Ia  50702**
    **(800) 766-4622**
    **(800) 766-4622**
    **http://www.gmacmortgage.com**

4.  The instrument representing the indebtedness of your mortgage loan (promissory note) is not a recordable document, but the promissory note is in our possession or held on our behalf by our custodian. The security instrument (mortgage or deed of trust) that secures the repayment of your promissory note is, however, recorded in the public land records for Riverside, CA.

5.  Additional information:

| This Notice does not identify or otherwise change the address where you send your mortgage loan payments. |

If there is any change in the address for your mortgage loan payments, you will be notified of such change separately and apart from this notice.

You can also look up the current servicer of your mortgage loan by accessing MERS® ServicerID at www.mers-servicerid.org, or by dialing the toll-free MERS® Servicer Identification System at 888-679-6377.



EXHIBIT F
*KINWORTHY V. GMAC*

September 30, 2009

David B Kinworthy
Leslie K Kinworthy
40156 Calle Medusa
Temecula, CA 92591

GMAC Mortgage, LLC                    Account Number: 8601622171
Green Tree Servicing, LLC             Account Number: 000000000

Property Address:    40156 Calle Medusa
                     Temecula, CA 92591

Dear David B Kinworthy
     Leslie K Kinworthy

Effective October 1, 2009, the servicing of the above referenced
account, that is, the right to collect payments from you, is
being assigned, sold, or transferred from
GMAC Mortgage, LLC          to
Green Tree Servicing, LLC          . The assignment, sale, or
transfer of servicing does not affect the terms or conditions of
your mortgage documents/security instruments, other than the
terms directly related to the servicing of your account.

Your present servicer is GMAC Mortgage, LLC                     .
Prior to October 1, 2009, any questions regarding your account should be
directed to our Customer Care Department at 1-800-766-4622.

Your new servicer will be Green Tree Servicing, LLC          .
Beginning October 1, 2009, any questions you have regarding your account
should be directed to Green Tree Servicing, LLC          . You
can contact their Customer Service Department at 1-800-643-0202.
Also beginning October 1, 2009, written inquiries regarding your account
should be directed to Green Tree Servicing, LLC          's
Customer Service Department at the address below.

Payment Information - Effective October 1, 2009, please direct payments
to Green Tree Servicing, LLC          's Payment Processing

September 30, 2009
Account Number 8601891111
Page Two

Department at the address below. Payments will be processed by
GMAC Mortgage, LLC                    if received prior to
October 1, 2009, and will be forwarded to
Green Tree Servicing, LLC             if received on or after
October 1, 2009

          Green Tree Servicing, LLC
          P.O. Box 94710
          Palatine, IL 60094-4710

As of September 30, 2009, your Current Principal Balance is $     76475.09,
your current escrow balance is $ 0, your current
interest rate is   9.55%, your total monthly payment is
$        659.90, and your next due date is 10/01/09.

Automatic Payment Deduction - If you currently have your
payments automatically withdrawn from your financial institution,
this service will be transferred to
Green Tree Servicing, LLC          . If this service is not
transferable, you will receive a letter under separate cover
providing further direction.

Government Allotment/Bill Pay Service - If you currently make
your payment through a third party entity (e.g. government
allotment, biweekly, or bill-pay service), please advise them of
your new account number and change the payee to
Green Tree Servicing, LLC          . In the event of a payment
change, it is your responsibility to notify the third party of
the new payment amount. If you have been using the bill-pay
service on GMAC Mortgage, LLC                's website, this
service will be deactivated on October 1, 2009.

Optional Insurance - If you have taken advantage of any of our
optional insurance plans or optional products, this service will
be transferred to Green Tree Servicing, LLC          . If any of
these plans or products are not transferable, you will receive a
letter under separate cover providing further direction.

Year-End Statement - You will receive a year-end statement from
GMAC Mortgage, LLC                reflecting account activity
this year. Green Tree Servicing, LLC          should provide
their own statement for the period of time they serviced your
account this year. You will need to combine these two statements
for income tax purposes.

Escrow Account - If you have an escrow account,
GMAC Mortgage, LLC                will send you, within 45
days, an escrow history statement reflecting escrow deposits,
disbursements and balances for the period of time we serviced
your account since your last escrow analysis. The transferring
escrow balance will be reflected on this statement.

GMAC Mortgage, LLC
3451 Hammond Avenue  P.O. Box 780  Waterloo, IA 50704-0780
gmacmortgage.com

September 30, 2009
Account Number 0703157129
Page Three

Except in limited circumstances, the law requires that your
present servicer send you this notice at least 15 days before the
effective date of the transfer. Your new servicer must also send
you this notice no later than 15 days after the effective date of
transfer.

If you have filed for bankruptcy or have been discharged of your
personal liability for repayment of this debt, be advised this is
for informational purposes only. Furthermore, this is not an
attempt to collect on the debt and should not be misconstrued to
be so.

You should be aware of the following information, which is set
out in more detail in Section 6 of the Real Estate Settlement
Procedures Act (RESPA) (12 USC 2605):

> During the 60 day period following the effective date of the
> transfer of the account servicing, a payment received by
> your old servicer, before its due date, may not be treated
> by the new servicer as late, and a late fee may not be
> imposed on you.

> Section 6 of RESPA (12 USC s2605) gives you certain consumer
> rights. If you send a "qualified written request" to your
> servicer concerning the servicing of your account, your
> servicer must provide you with a written acknowledgment
> within 20 business days of receipt of your request. A
> "qualified written request" is written correspondence, other
> than notice on a payment coupon or other payment medium
> supplied by the servicer, which includes your name, account
> number, and reason for the request.

> Not later than 60 business days after receiving your
> request, your servicer must make appropriate corrections to
> your account, and must provide you with a written
> clarification regarding any dispute. During this 60 business
> day period, your servicer may not provide information to a
> consumer reporting agency concerning any overdue payment
> related to such period or qualified written request.
> However, this does not prevent the servicer from initiating
> foreclosure if proper grounds exist under the mortgage
> documents/security instruments.

> A "business day" is a day on which the offices of the
> business entity are open to the public for carrying on
> substantially all of its business functions.

GMAC Mortgage, LLC
3451 Hammond Avenue   P.O. Box 780   Waterloo, IA  50704-0780
gmacmortgage.com

September 20, 2010
Account Number 8401621.1
Page four

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

GMAC Mortgage, LLC                    appreciated the opportunity to service your account. We wish you a successful relationship with Green Tree Servicing, LLC

Sincerely,


GMAC Mortgage, LLC
6020



InterestFirst℠ NOTE

KENMORTEY
Loan #: 06060063
MIN: 100300600001010300B

JULY 7, 2006            SAN DIEGO            CALIFORNIA
[Date]                  [City]              [State]

40156 CALLE MEDUSA, TEMECULA, CA 92591
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $312,560.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MOUNTAIN STATES MORTGAGE CENTERS INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1ST day of each month beginning on SEPTEMBER 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on AUGUST 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 1333 EAST 9400 SOUTH, SANDY, UT 84093 or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $1,888.38 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $2,470.40. The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the

MULTISTATE InterestFirst FIXED RATE NOTE--Single Family--Fannie Mae UNIFORM INSTRUMENT
    299.56                          Page 1 of 3                          Form 3271 1/01

85


DEP. EX 1

period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of

MULTISTATE InterestFirst FIXED RATE NOTE--Single Family--Fannie Mae UNIFORM INSTRUMENT
299.56                    Page 2 of 3                    Form 3271 1/01



Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  7-7-06
- BORROWER - DAVID B. KINWORTHY - DATE -

_____  2/7/06
- BORROWER - LESLIE K. KINWORTHY - DATE -

*[Sign Original Only]*

87



# NOTE

KENWORTHY
Loan #: 06070026
MIN: 1003060600010303673

JULY 7, 2006                 SAN DIEGO                 CALIFORNIA
[Date]                        [City]                    [State]

40156 CALLE MEDUSA, TEMECULA, CA 92591
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $78,140.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is MOUNTAIN STATES MORTGAGE CENTERS INC.. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of 9.550%.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $659.90.

I will make my payments on the first day of each month beginning on SEPTEMBER 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on AUGUST 1, 2036, I still owe amounts under this Note, I will pay all those amounts, in full, on that date.

I will make my monthly payments at 1333 EAST 9400 SOUTH, SANDY, UT 84093 or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be $_____. I will pay this late charge only once on any late payment.

### (B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees to the extent not prohibited by applicable law.

## 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

CALIFORNIA SECOND MORTGAGE NOTE
⚖️    3820.12                         Page 1 of 3                              1/04

161

EX. 3

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.

## 7. BORROWER'S WAIVERS

To the extent not prohibited by applicable law, I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties, and endorsers."

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

## 10. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

CALIFORNIA SECOND MORTGAGE NOTE
3820.12                                    Page 2 of 3                                    1/04



NOTICE TO BORROWER

Do not sign this Note if it contains blank spaces.
All spaces should be completed before you sign.

- BORROWER - DAVID B. KINWORTHY - DATE -    7-7-00

- BORROWER - LESLIE K. KINWORTHY - DATE -    7/7/00

*[Sign Original Only]*

**CALIFORNIA SECOND MORTGAGE NOTE**
3820.12                          Page 3 of 3                          1/04



tif:ex:0687402705    Doc Type:HUD1

OMB NO. 2502-0265

| | 5. TYPE OF LOAN: |
|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐ FHA   2. ☐ FmHA   3. ☒ CONV. UNINS.   4. ☐ VA   5. ☐ CONV. INS. |
| SETTLEMENT STATEMENT | 6. FILE NUMBER: 7598559   7. LOAN NUMBER: 000687402705 |
| | 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| David B. Kinworthy and Leslie K. Kinworthy 40156 Calle Medusa Temecula, CA 92591-6900 | | Ally Bank Corp. f/kz GMAC Bank 1100 Virginia Drive Fort Washington, PA 19034 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: 56-2468956 | I. SETTLEMENT DATE: |
|---|---|---|
| 5024 Plaza Dr Fort Wayne, IN 468065234 Allen County, Indiana | LSI Title Agency, Inc. PLACE OF SETTLEMENT 40156 Calle Medusa Temecula, CA 92591-6900 | December 24, 2009 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 2,656.00 | 403. | |
| 104. Payoff/Close Account to PNC Mortgage/0000895808 | 33,943.51 | 404. | |
| 105. Payoff/Close Account | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes             to | | 407. County Taxes             to | |
| 108. Assessments              to | | 408. Assessments              to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 36,599.51 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 29,625.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff First Mortgage | |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes             to | | 511. County Taxes             to | |
| 212. Assessments              to | | 512. Assessments              to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 29,625.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 36,599.51 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | (29,625.00) | 602. Less Reductions Due Seller (Line 520) | |
| 303. CASH ( X FROM ) ( TO ) BORROWER | 6,974.51 | 603. CASH ( TO ) ( FROM ) SELLER | 0.00 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower _____     Seller
          David B. Kinworthy

_____
Leslie K. Kinworthy aka Leslie K. Edwards

GMAC 000119

:tifier:0687402705        Doc Type:HUD1

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price    $          @          % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $          to | | | |
| 702. $          to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee          %    to | | | |
| 802. Loan Discount          3.3500 %    to Ally Bank Corp. f/k/ GMAC Bank | | 992.44 | |
| 803. Appraisal Fee          to LSI, a Lender Processing Service Co. | | 370.00 | |
| 804. Credit Report          to Credstar | | 5.53 | |
| 805. Tax Service Fee          to First American Real Estate Tax Service | | 10.00 | |
| 806. Flood Cert-Life of Loan          to LPS National Flood | | 0.90 | |
| 807. Flood Determination Fee          to LPS National Flood | | 3.00 | |
| 808. Lender Loan Service Fee          to Ally Bank Corp. fka GMAC Bank | | 86.00 | |
| 809. Broker Fee          to GMAC Mortgage from Ally Bank Corp          POC:L272.55 | | | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 12/24/09 to 01/01/10 @ $ 4.120000/day 12/24/09 to 01/01/10 | | 32.92 | 0.00 |
| 902. Mortgage Insurance Premium for          months to | | | |
| 903. Hazard Insurance Premium for 1.0 years to Auto-Owners Ins          POC-B $741.34 | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance          6.000 months @ $ 61.78 per month | | 494.24 | |
| 1002. Mortgage Insurance          months @ $          per month | | | |
| 1003. City/Town Taxes          months @ $          per month | | | |
| 1004. County Taxes          4.000 months @ $ 25.76 per month | | 103.04 | |
| 1005. Assessments          months @ $          per month | | | |
| 1006.          months @ $          per month | | | |
| 1007.          months @ $          per month | | | |
| 1008. Aggregate Adjustment          months @ $          per month | | -139.07 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee          to LSI Title Agency, Inc. | | 375.00 | |
| 1102. Abstract or Title Search          to LSI Title Agency, Inc. | | | |
| 1103. Title Examination          to LSI Title Agency, Inc. | | | |
| 1104. Title Insurance Binder          to LSI Title Agency, Inc. | | | |
| 1105. Document Preparation          to LSI Title Agency, Inc. | | | |
| 1106. Notary Fees          to LSI Title Agency, Inc. | | | |
| 1107. Attorney's Fees          to LSI Title Agency, Inc. | | | |
| (includes above item numbers:          ) | | | |
| 1108. Title Insurance          to LSI | | 275.00 | |
| (includes above item numbers:          ) | | | |
| 1109. Lender's Coverage          $ 29,625.00 | | | |
| 1110. Owner's Coverage          $ | | | |
| 1111. Endorsements          LSI Title Agency, Inc. | | | |
| 1112.          LSI Title Agency, Inc. | | | |
| 1113. Title Ins Enforcement Fund Fee          to LSI Title Agency, Inc. | | 5.00 | |
| 1114.          LSI Title Agency, Inc. | | | |
| 1115.          LSI Title Agency, Inc. | | | |
| 1116.          LSI Title Agency, Inc. | | | |
| 1117.          LSI Title Agency, Inc. | | | |
| 1118.          LSI Title Agency, Inc. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. **Recording Service Fee: Deed $          ; Mortgage $ 48.00; Releases $ | | 48.00 | |
| 1202. City/County Tax/Stamps:          Deed          : Mortgage | | | |
| 1203. State Tax/Stamps:          Deed          : Mortgage | | | |
| 1204.          Recorder's Office | | | |
| 1205.          Recorder's Office | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey          to | | | |
| 1302. Pest Inspection          to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 2,656.00 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

LSI
Settlement Agent

Certified to be a true copy.

( 7598559 / 7598559 / 20 )

GMAC 000120



## INTEREST RATE LOCK AGREEMENT
### *Please Read Carefully*

| | |
|---|---|
| Borrower Name: David Kinworthy, Leslie Kinworthy | Loan Agent Name:   James Holland |
| | Loan Agent Phone:   (704) 367-3024 |
| | Loan Agent Fax:   (866) 501-9581 |
| | Loan Agent Address: 2101 Rexford Road |
| | Suite 250 West |
| | Charlotte, NC 28211 |
| Property Address: 40156 Calle Medusa | |
| Temecula, CA  92591-6900 | |
| | Loan Number:   000687324647 |

Int. Rate Lock:   6.125%

Agreement Date: Aug 05, 2009

**Ally Bank Corp. f/k/a GMAC Bank Hereinafter referred to as "LENDER".**

**LOAN AMOUNT: $ 223,785.00      LOAN TERM:   360   (months) LOAN PROGRAM:  FHA Fixed Rate 30 Year**

**This Agreement identifies three options, and the terms and conditions that apply to each option, for locking in the interest rate and points on the Loan Program, Loan Amount and Loan Term (shown above) for which I am applying. My choice is indicated below by an X in the box next to the option I have chosen. I ACKNOWLEDGE THAT THIS IS NOT A LOAN COMMITMENT AND THAT I WILL BE NOTIFIED BY LENDER AS TO WHETHER OR NOT MY APPLICATION IS APPROVED.**

In the event of a joint loan application, I agree that one applicant may bind the other(s) with respect to locking-in the interest rate and points and facilitating changes to the locked interest rate and/or points.

I understand that this Interest Rate Lock Agreement, signed by me, must be (1) faxed or mailed to the LENDER at the Loan Agent fax number or address listed above and (2) **received by LENDER within two (2) business days of the above Interest Rate Lock Agreement Date** ("Signing Period"). If LENDER receives this signed Interest Rate Lock Agreement within the Signing Period, this Interest Rate Lock Agreement will be enforceable by LENDER and me. If LENDER does not receive this signed Interest Rate Lock Agreement within the Signing Period, LENDER may, in its sole and absolute discretion, (a) void this Agreement, (b) honor this Agreement, or (c) adjust the terms and conditions that apply to the option I have chosen.

The terms of this Agreement are based in part on information provided by me in connection with my loan application and are subject to applicable state law requirements. LENDER reserves the right to terminate this Agreement or alter its terms, at its option and in its sole discretion, in the event the information I provided cannot be verified as true and accurate.

Interest rates and points are subject to daily market changes, and I acknowledge that these daily market changes may affect (1) the availability of Loan Programs and loan pricing, and (2) my market float option, interest rate lock-in option, interest rate CAP option, total points, and/or loan eligibility. I further acknowledge that LENDER, in its sole discretion, reserves the right to cancel this Interest Rate Lock Agreement prior to loan closing if there is any change in the secondary mortgage market or loan sale requirements that would make the Loan Program ineligible for sale.

If at any time, through no fault of the LENDER, I cancel or withdraw my mortgage loan application and, within 30 days of cancellation or withdrawal, reapply for a loan with LENDER to be secured by the property identified above, I understand, acknowledge and agree that the interest rate, points and fees in connection with such loan will be the greater of the interest rate, points and fees (1) in effect at the time I reapply or (2) set forth herein, whichever are greater.

See last section of this Agreement for state specific requirements.

---

**OPTION 1 ☐ MARKET FLOAT OPTION**

If the box above is checked, I understand that the interest rate (the "initial rate," if I am applying for an adjustable rate mortgage) and points have not been set and locked-in and that they my actual interest rate and points may vary from the interest rate and points available to me as of the Interest Rate Lock Agreement Date.



GMAC 000030

*EX. 11*

I understand that if my loan application is approved, or if I receive a counteroffer, which may include, for example, an approval under a different loan program, and/or an increase in rate, points and/or fees, I must notify the LENDER to lock-in my interest rate and points so that my loan closing can be scheduled ("Closing Date"). If I do not lock-in my interest rate and points, I will receive the current market interest rate and points in effect on the date LENDER draws my loan documents. The interest rate and points will be in effect for up to ten (10) days and my loan must close within this 10-day period. "Current market interest rate and points" means the interest rate and points applicable to the loan that was approved by LENDER.

If my interest rate and points are locked in, in consideration for locking-in my interest rate and points, and unless prohibited by applicable law, I authorize LENDER to charge a $500.00 "Lock-in Fee" to my credit card identified below. If my loan application is declined, the Lock-in Fee will NOT be charged to my credit card. If my loan application is declined, I may receive a counteroffer, which may include, for example, an approval under a different loan program, and/or an increase in rate, points and or fees ("Counteroffer"). If I do not accept the Counteroffer, the Lock-in Fee will NOT be charged to my credit card.

If, through no fault of the LENDER, my Closing Date needs to be extended, I must contact the LENDER prior to the Closing Date to request an extension. LENDER will communicate to me the Closing Date extension options and the associated costs. LENDER will determine, in its sole discretion, if the Closing Date extension request will be approved. If LENDER approves the Closing Date extension request, I authorize LENDER to charge a $250.00 "Lock-in Extension Fee" to my credit card identified below. I understand that each approved Closing Date extension request will result in a $250.00 Lock-in Extension Fee being charged to my credit card, unless prohibited by applicable law.

If at any time, through no fault of the LENDER, I cancel or withdraw my mortgage loan application, unless prohibited by applicable law, the Lock-in Fee and, if applicable, any Lock-in Extension Fee(s) will be charged to my credit card.

I understand that if my application is approved and my loan is for a refinance to be secured by my primary residence, I will not receive the loan proceeds on the date of closing due to regulatory requirements. In that case, I understand that the loan must close at least four (4) business days prior to the lock expiration date.

Credit Card (cannot be a debit card):
**VISA** ☐    **MasterCard** ☐    **American Express** ☐    **Discover** ☐

Name as it appears on credit card: _____

Credit card number: _____    Credit card expiration date: _____

**If I am applying for an adjustable rate mortgage loan, the Interest Rate is for the initial term only and is subject to change in accordance with the terms of the adjustable rate loan documents.**

## OPTION 2 ☒ LOCK-IN OPTION

If the box above is checked, I understand my interest rate and points are to be locked-in under the following terms:

| Interest Rate*: | 6.125 % | Lock Expiration Date: | 09/25/2009 |
|---|---|---|---|
| Total Points: | 0.400 % | | |
| *Each point is equal to 1.0% of the Loan Amount.* | | | |

**My locked-in interest rate and points are based upon specific loan characteristics including, but not limited to, those outlined below. Any changes to these loan characteristics may affect my lock-in interest rate, total points, and/or loan eligibility. If I choose to change Loan Program or Loan Type, this Agreement may become null and void at the option of LENDER.**

**LOAN TYPE:** FHA Fixed Rate 30 Year          **DOCUMENTATION:** Standard/Full Documentation

**PROPERTY:** One Family          **PURPOSE:** Refinance          **OCCUPANCY:** Primary Residence

**ESCROW/IMPOUND ACCOUNT:** Loan ☒ is / ☐ is not subject to a required escrow (impound) account.

**LOAN TO VALUE:** 97.75 %    **COMBINED LOAN TO VALUE:** 97.75 %    **DEBT TO INCOME:** 34.85 %

GMAC 000031

In consideration for locking-in my interest rate and points, and unless prohibited by applicable law, I authorize LENDER to charge a $500.00 "Lock-in Fee" to my credit card identified below. If my loan application is declined, the Lock-in Fee will NOT be charged to my credit card. If my loan application is declined, I may receive a counteroffer, which may include, for example, an approval under a different loan program, and/or an increase in rate, points and or fees ("Counteroffer"). If I do not accept the Counteroffer, the Lock-in Fee will NOT be charged to my credit card.

If, through no fault of the LENDER, my Lock Expiration Date needs to be extended, I must contact the LENDER prior to the Lock Expiration Date to request an extension. LENDER will communicate to me the Lock Expiration Date extension options and the associated costs. LENDER will determine, in its sole discretion, if the Lock Expiration Date extension request will be approved. If LENDER approves the Lock Expiration Date extension request, I authorize LENDER to charge a $250.00 "Lock-in Extension Fee" to my credit card identified below. I understand that each approved Lock Expiration Date extension request will result in a $250.00 Lock-in Extension Fee being charged to my credit card, unless prohibited by applicable law.

If at any time, through no fault of the LENDER, I cancel or withdraw my mortgage loan application, unless prohibited by applicable law, the Lock-in Fee and, if applicable, any Lock-in Extension Fee(s) will be charged to my credit card.

I understand that if my application is approved and my loan is for a refinance to be secured by my primary residence, I will not receive the loan proceeds on the date of closing due to regulatory requirements. In that case, I understand that the loan must close at least four (4) business days prior to the Lock Expiration Date.

Credit Card (cannot be a debit card):
**VISA** ☐    **MasterCard** ☐    **American Express** ☐    **Discover** ☐

Name as it appears on credit card: _____

Credit card number: _____    Credit card expiration date: _____

**\* If I am applying for an adjustable rate mortgage loan, the Interest Rate is for the initial term only and is subject to change in accordance with the terms of the adjustable rate loan documents.**

## OPTION 3 ☐ INTEREST RATE "CAP" OPTION

If the box above is checked, I understand that my interest rate and points are "capped" based on the following terms:

| Interest Rate CAP *: | | % | Interest Rate CAP Expiration Date: | |
|---|---|---|---|---|
| Total Points: | | % | | |
| *Each point is equal to 1.0% of the Loan Amount.* | | | | |

**My interest rate CAP is based upon specific loan characteristics including, but not limited to, those outlined below. Any changes to these loan characteristics may affect my interest rate CAP, total points, and/or loan eligibility. If I choose to change Loan Program or Loan Type, this Agreement may become null and void at the option of LENDER.**

LOAN TYPE: _____    DOCUMENTATION: _____

PROPERTY: _____    PURPOSE: _____    OCCUPANCY: _____

ESCROW/IMPOUND ACCOUNT: Loan ☐ is / ☐ is not subject to a required escrow (impound) account.

LOAN TO VALUE: _____%    COMBINED LOAN TO VALUE: _____%    DEBT TO INCOME: _____%

I understand that, provided my loan closes and funds on or before the Interest Rate CAP Expiration Date, my interest rate and points will not be greater than the Interest Rate CAP and Total Points listed above. **I also understand that the Interest Rate CAP is generally higher than the interest rate that is available to me if I chose to lock in my interest rate on the Interest Rate Lock Agreement Date.**

I further understand that my established Interest Rate CAP and Total Points will be the lower of (A) the Interest Rate CAP and Total Points; or (B) the interest rate and points quoted by LENDER at the time of the lock-in under the LENDER's Interest Rate Cap Program for my approved Loan Program and Loan Type and based on the estimated time to the date of loan funding.

GMAC 000032

In order for the terms under this Interest Rate CAP Option to remain binding, I understand that I must lock-in my interest rate and points by notifying the LENDER within 28 days prior to the Interest Rate Cap Expiration Date or five (5) business days prior to the date of loan closing (whichever occurs first).

I understand that, if my application is approved and my loan is for a refinance to be secured by my primary residence, I will not receive the loan proceeds on the date of closing due to regulatory requirements. In that case, I understand that the loan must close at least four (4) business days prior to the Interest Rate CAP Expiration Date.

In consideration for capping my interest rate and points, and unless prohibited by applicable law, I authorize LENDER to charge a one (1) point "CAP Fee" immediately to my credit card identified below. This CAP Fee will be applied to points required at the time of funding. If my loan application is declined, the CAP Fee will be refunded. If my loan application is declined, I may receive a counteroffer, which may include, for example, an approval under a different loan program, and/or an increase in rate, points and or fees ("Counteroffer"). If I do not accept the Counteroffer, the CAP Fee will be refunded.

If, through no fault of the LENDER, my Interest Rate CAP Expiration Date needs to be extended, I must contact the LENDER prior to the Interest Rate CAP Expiration Date to request an extension. LENDER will communicate to me the Interest Rate CAP Expiration Date extension options and the associated costs. LENDER will determine, in its sole discretion, if the Interest Rate CAP Expiration Date extension request will be approved. If LENDER approves the Interest Rate CAP Expiration Date extension request, I authorize LENDER to charge a $250.00 "CAP Extension Fee" to my credit card identified below. I understand that each approved Interest Rate CAP Expiration Date extension request will result in a $250.00 CAP Extension Fee being charged to my credit card, unless prohibited by applicable law.

If at any time, through no fault of the LENDER, I cancel or withdraw my mortgage loan application, unless prohibited by applicable law, the CAP Fee and, if applicable, any CAP Extension Fee(s) will not be refunded.

Credit Card (cannot be a debit card):
**VISA** ☐    **MasterCard** ☐    **American Express** ☐    **Discover** ☐

Name as it appears on credit card: _____

Credit card number: _____    Credit card expiration date: _____

**\* If I am applying for an adjustable rate mortgage loan, the Interest Rate CAP is for the initial term only and is subject to change in accordance with the terms of the adjustable rate loan documents.**

## STATE SPECIFIC REQUIREMENTS/DISCLOSURES:

If my property identified above is located in a State (including the District of Columbia) listed below, the requirements and disclosures included below for that State apply to this Agreement. If there is a conflict between any of the terms, conditions, and/or provisions included above and the requirements and disclosures included below for the State in which my property is located, the requirements and disclosures included below for that State shall govern.

**ARIZONA:**  Any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid is nonrefundable.

**CALIFORNIA:**  Discount points to be paid: 0.400% (each point is equal to 1% of the Loan Amount). Any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid is nonrefundable.

**COLORADO:**  See separate Colorado Lock-in Disclosure Form.

**DISTRICT OF COLUMBIA:** If the mortgage loan is not closed within the applicable Lock-In Expiration Date or Interest Rate CAP Expiration Date or any extension thereof, for any reason, LENDER will no longer be obligated by this Agreement and any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid by me will be refunded. Any terms not locked-in by this Agreement are subject to change until the mortgage loan is closed at settlement.

GMAC 000033

If I am applying for an adjustable rate mortgage (ARM) loan, the following are descriptions of various ARM loan provisions that will apply for the type of loan program I have requested:

☐    The interest rate of the ARM loan will be adjusted every _____ months. Changes in the interest rate will be based on a formula, which will include the use of the following index: _____.

☐    A specific percentage figure (the "margin") will be added to the index value at a specified date prior to each rate adjustment to determine the new rate of interest.

☐    At the time of the first interest rate change date, the rate of interest you are required to pay shall not be more than _____% above the initial interest rate. On each interest rate change date beginning with the second interest rate change date and continuing thereafter, the rate of interest you are required to pay shall not be more than _____% or less than _____% from the interest rate you had been paying during the immediately preceding period. The interest rate I am required to pay at any change date shall never be greater than _____%.

Additional information relating specifically to the ARM loan can be found in the Adjustable Rate Mortgage Disclosure and the handbook entitled "Consumer Handbook on Adjustable Rate Mortgages," which was provided to you on the date of your initial loan application. If your loan is approved, important information relating specifically to your loan will be contained in the Adjustable Rate Note, Mortgage and Rider(s). Since the Adjustable Rate Note, Mortgage and Rider(s) establish your rights, you should become familiar with the provisions of these documents.

**FLORIDA:**    Discount points to be paid: _____% (each point is equal to 1% of the Loan Amount).

Florida law requires that the lender shall make a good faith effort to process the mortgage loan application and stand ready to fulfill the terms of its lock-in agreement before the expiration date of the lock-in agreement or any extension thereof.

Any lock-in agreement received by the lender by mail or through a broker must be signed by the lender in order to become effective. The borrower may rescind any lock-in agreement until a written confirmation of the agreement has been signed by the lender and mailed to the borrower or to the brokerage business pursuant to its contractual relationship with the borrower. If a borrower elects to so rescind, the lender shall promptly refund any lock-in fee paid.

If the loan does not close before the expiration date of the lock-in agreement through no substantial fault of the borrower, the borrower may withdraw the application, whereupon the lender shall promptly refund to the borrower any lock-in fee paid by the borrower.

The term "substantial fault of the borrower" means that:

A.    I failed to provide information or documentation required by LENDER or the broker in a timely manner;

B.    I failed to provide information, in the application or subsequently, which, upon verification, proved to be significantly inaccurate, causing the need for review or further investigation by LENDER or the broker;

C.    I failed to produce, no later than the date specified by the LENDER, all of the documentation specified in the commitment or closing or escrow instructions as being required for closing; or

D.    I failed to be ready, willing, or able to close the loan no later than the date specified by the LENDER or broker.

I am considered to have provided information or documentation in a timely manner if LENDER received such information and documentation within 7 days after I received a request for same. Information is considered significantly inaccurate if the correct information materially affects my eligibility for the loan for which I have applied.

GMAC 000034

ILLINOIS:  Discount points to be paid: _____% (each point is equal to 1% of the Loan Amount). If I have applied for an adjustable rate mortgage (ARM) loan, the maximum interest rate of the ARM loan is _____%.

MASSACHUSETTS:  Any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid is nonrefundable.

MINNESOTA:  During the period in which this Agreement is in effect, there are no circumstances under which I will be permitted to close my loan at an interest rate or points lower than what is expressed in this Agreement.

In connection with processing my application, LENDER will gather the information and documentation needed in order for it to make credit decision. This information and documentation generally includes a credit report, property appraisal report, verification of income and employment, and bank and asset statements, along with other information disclosed in the application request. During the course of loan processing, I may be asked to provide additional information and/or documentation.

Once complete, the application file will be reviewed for an underwriting decision. If the application is approved, I will be sent a mortgage commitment letter advising me of the terms and conditions of the loan approval. I will be required to comply with certain requirements at or before the date of loan closing. These requirements generally include obtaining hazard insurance coverage and, if applicable, flood insurance covering the mortgaged premises. In addition, I will be required to provide LENDER with an acceptable commitment for title insurance in form and content and issued by a title company acceptable to LENDER, to be followed by a title insurance policy at the time of loan closing, confirming that the mortgage will be insured as a valid first lien.

Additional closing requirements may include, without limitation:  (1) verification of the information contained in my loan application, including income, asset and the timely payment of debts; (2) property survey; (3) certificate of occupancy; (4) master policy insurance certificate (if applicable in the case of a condominium); (5) termite inspection report; (6) well water test; (7) septic inspection report; (8) radon test report; and (9) satisfactory final inspection report, if new construction. I will be advised of any additional conditions that must be satisfied on or before the date of loan closing and/or any additional information and/or documentation that I must produce.

**MISSISSIPPI:**  Any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid is nonrefundable.

If I am applying for an adjustable rate mortgage (ARM) loan, the following are descriptions of various ARM loan provisions that will apply for the type of loan program I have requested:

☐    The interest rate of the ARM loan will be adjusted every _____ months. Changes in the interest rate will be based on a formula, which will include the use of the following index: _____.

☐    A specific percentage figure (the "margin") will be added to the index value at a specified date prior to each rate adjustment to determine the new rate of interest.

☐    At the time of the first interest rate change date, the rate of interest you are required to pay shall not be more than _____% above the initial interest rate. On each interest rate change date beginning with the second interest rate change date and continuing thereafter, the rate of interest you are required to pay shall not be more than _____% or less than _____% from the interest rate you had been paying during the immediately preceding period. The interest rate I am required to pay at any change date shall never be greater than _____%.

Additional information relating specifically to the ARM loan can be found in the Adjustable Rate Mortgage Disclosure and the handbook entitled "Consumer Handbook on Adjustable Rate Mortgages," which was provided to you on the date of your initial loan application. If your loan is approved, important information relating specifically to your loan will be contained in the Adjustable Rate Note, Mortgage and Rider(s). Since the Adjustable Rate Note, Mortgage and Rider(s) establish your rights, you should become familiar with the provisions of these documents.

GMAC 000035

<u>NEW HAMPSHIRE</u>: The Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee are paid to LENDER as consideration for LENDER's interest rate risk and the costs incurred by LENDER in connection with such risk.

<u>NEW JERSEY</u>: Discount points to be paid: _____% (each point is equal to 1% of the Loan Amount).

The LENDER shall make a good faith effort to process the mortgage loan application and, if the application is approved and a loan commitment is issued, stand ready to fulfill the terms of the loan commitment before the expiration date of this Agreement and any permitted extension(s).

In the event this Agreement has been executed and the loan applied for is denied, the LENDER shall promptly refund any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid.

Any lock-in agreement received by the LENDER by mail or through a broker must be signed by the LENDER before it will become effective. Until I receive a copy of this Agreement signed by the LENDER, I may rescind this Agreement by providing the LENDER with written notification of such rescission. If I mail my rescission notification to the LENDER, such rescission will be effective upon mailing. If I elect to so rescind, the LENDER shall promptly refund any lock-in fee paid.

In the event this Agreement has been executed, and the loan does not close before the expiration date of either this Agreement or any commitment issued consistent therewith through no "substantial fault of the borrower," I, the borrower, may:

1. Withdraw the application or reject or terminate any commitment, whereupon the LENDER shall promptly refund to me any Lock-in Fee, Lock-in Extension Fee, CAP Fee, CAP Extension Fee and any commitment fee paid by me; or

2. Have this Agreement extended for no more than 14 calendar days following expiration of the commitment or, where no commitment issued before expiration of this Agreement, for no more than 14 calendar days following issuance of the commitment. If I elect to extend this Agreement, the LENDER may elect either to close the loan at or below the lock-in rate, in which case the LENDER may keep any Lock-in Fee, Lock-in Extension Fee, CAP Fee, CAP Extension Fee, or may elect to close the loan above the lock-in rate but no higher than that which would provide a current market yield but no gross profit or "spread" to the LENDER, in which case the LENDER shall refund any Lock-in Fee, Lock-in Extension Fee, CAP Fee, CAP Extension Fee to me. All other terms and conditions of the loan shall be as specified in the commitment, regardless whether the loan closes before or after the expiration date of the commitment.

As used above, "current market yield" means:

1. In the case of a mortgage loan originated under a special program of, or committed for sale before expiration of the lock-in agreement to, a particular secondary market purchaser, the yield being sought by that purchaser for that loan; or

2. In the case of a mortgage loan not originated or committed as described in paragraph 1 above and not to be held in the lender's portfolio, the yield being sought, for the type of mortgage loan applied for, by the secondary market purchaser which purchased the highest dollar volume of such mortgage loans from the lender during the preceding 12-month period; or

3. In the case of a mortgage loan to be held in the lender's portfolio, the average commitment rate offered by the lender, for the type of mortgage loan applied for, during the preceding 30-day period.

As used above, "substantial fault of the borrower" means that I or my agent:

1. Failed to provide in a timely manner information or documentation required by the lender;

2. Provided or omitted any information, in the application or subsequently, which upon verification proves to be significantly inaccurate causing the need for review or further investigation by the lender;

3. Failed to produce on or before the date specified by the lender all of the documentation specified in the commitment or closing instructions as being required for closing, which date may be less than seven calendar days following the date of receipt of the commitment or closing instructions; or

GMAC 000036

4. Failed to be ready, willing and able to close the loan on or before the date specified by the lender.

5. For purposes of this definition:

i. A person provides information or documentation "in a timely manner" if such information and documentation is received by the lender within seven calendar days after the person receives a request for same or within the time frame established by the lender if that time frame extends beyond seven calendar days after receipt of the request; and

ii. Information is "significantly inaccurate" if the correct information would, in the reasonable opinion of the lender, cause the borrower to be disqualified for the type of loan for which the borrower has applied or cause the secondary market source for which the loan is being originated to refuse to purchase the loan.

NEW YORK: This Agreement shall become binding upon me and the LENDER when it is signed by both of us. Any Lock-in Fee, Lock-in Extension Fee, CAP Fee, or CAP Extension Fee cannot be taken prior to the time this Agreement becomes binding upon me and the LENDER. The lock-in period shall begin at the time this Agreement becomes binding upon me and the LENDER and shall run until the Lock Expiration Date or Interest Rate CAP Expiration Date, as applicable.

If I am applying for an adjustable rate mortgage (ARM) loan, the following are descriptions of various ARM loan provisions that will apply for the type of loan program I have requested:

☐   The interest rate of the ARM loan will be adjusted every _____ months. Changes in the interest rate will be based on a formula, which will include the use of the following index: _____.

☐   A specific percentage figure (the "margin") will be added to the index value at a specified date prior to each rate adjustment to determine the new rate of interest.

☐   At the time of the first interest rate change date, the rate of interest you are required to pay shall not be more than _____% above the initial interest rate. On each interest rate change date beginning with the second interest rate change date and continuing thereafter, the rate of interest you are required to pay shall not be more than _____% or less than _____% from the interest rate you had been paying during the immediately preceding period. The interest rate I am required to pay at any change date shall never be greater than _____%.

Additional information relating specifically to the ARM loan can be found in the Adjustable Rate Mortgage Disclosure and the handbook entitled "Consumer Handbook on Adjustable Rate Mortgages," which was provided to you on the date of your initial loan application. If your loan is approved, important information relating specifically to your loan will be contained in the Adjustable Rate Note, Mortgage and Rider(s). Since the Adjustable Rate Note, Mortgage and Rider(s) establish your rights, you should become familiar with the provisions of these documents.

☐   If this box is checked, my loan will provide for a balloon payment.

My initial monthly payment of principal and interest will be $_____.

☐   If this box is checked, in addition to the monthly payments of principal and interest, I will be required to remit monthly escrow deposits for the payment of real estate taxes, insurance premiums, private mortgage insurance of mortgage insurance (if applicable), municipal assessments and all other items for which an escrow is established under the terms of my loan documents. An initial escrow deposit for these items will be required at the closing.

☐   If this box is checked, private mortgage insurance or mortgage insurance will be required in connection with the loan. I understand that I should refer to the Private Mortgage Insurance disclosure, which was provided to me at the time of my loan application, for an explanation of the conditions under which such insurance may no longer be required.

GMAC 000037

If my application is approved, I will be advised of the terms and conditions of the loan approval and will be required to comply with certain requirements at or before the date of loan closing. These requirements generally include obtaining hazard insurance coverage and, if applicable, flood insurance covering the mortgaged premises. In addition, I will be required to provide LENDER with an acceptable commitment for title insurance in form and content and issued by a title company acceptable to LENDER, to be followed by a title insurance policy at the time of loan closing, confirming that the mortgage will be insured as a valid first lien.

Additional closing requirements may include, without limitation: (1) verification of the information contained in my loan application, including income, assets and the timely payment of debts; (2) property survey; (3) certificate of occupancy; (4) master policy insurance certificate (if applicable in the case of a condominium); (5) termite inspection report; (6) well water test; (7) septic inspection report; (8) radon test report; and (9) satisfactory final inspection report, if new construction. I will be advised of any additional conditions that must be satisfied on or before the date of loan closing and/or any additional information and/or documentation that I must produce.

If my application is approved and, through my fault and no fault of the LENDER, the loan does not close before the applicable expiration date of this Agreement, and LENDER does not approve any request for an extension of the expiration date, any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid by me shall not be refunded. **IF I PROVIDE INCOMPLETE OR INCORRECT CREDIT INFORMATION, I UNDERSTAND THAT I MAY FORFEIT SOME OR ALL OF ANY LOCK-IN FEE, LOCK-IN EXTENSION FEE, CAP FEE, OR CAP EXTENSION FEE.**

Any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee is refundable if I paid it prior to (a) commitment and the LENDER determines that the property appraisal report is not acceptable for the loan program or product I have applied for (unless the LENDER and I agree on another loan program or product for which the property appraisal report is acceptable) or (b) closing and the LENDER declines my loan application on the basis of my creditworthiness and I have provided the LENDER with complete and correct credit information.

**PENNSYLVANIA:**  Discount points to be paid: _____% (each point is equal to 1% of the Loan Amount).

**TENNESSEE:**  Discount points to be paid: _____% (each point is equal to 1% of the Loan Amount).

If the loan is not closed within the lock-in period, the LENDER is no longer obligated by this Agreement and any Lock-in Fee, Lock-in Extension Fee, CAP Fee, or CAP Extension Fee paid by me may not be refundable except under certain conditions.

Any terms not locked-in by this Agreement are subject to change until the loan is closed at settlement.

**VIRGINIA:**  Any terms not locked-in by this Agreement are subject to change until the loan is closed at settlement.

If I am applying for an adjustable rate mortgage (ARM) loan, the following are descriptions of various ARM loan provisions that will apply for the type of loan program I have requested:

☐   The interest rate of the ARM loan will be adjusted every _____ months. Changes in the interest rate will be based on a formula, which will include the use of the following index: _____.

☐   A specific percentage figure (the "margin") will be added to the index value at a specified date prior to each rate adjustment to determine the new rate of interest.

☐   At the time of the first interest rate change date, the rate of interest you are required to pay shall not be more than _____% above the initial interest rate. On each interest rate change date beginning with the second interest rate change date and continuing thereafter, the rate of interest you are required to pay shall not be more than _____% or less than _____% from the interest rate you had been paying during the immediately preceding period. The interest rate I am required to pay at any change date shall never be greater than _____%.

GMAC 000038

Additional information relating specifically to the ARM loan can be found in the Adjustable Rate Mortgage Disclosure and the handbook entitled "Consumer Handbook on Adjustable Rate Mortgages," which was provided to you on the date of your initial loan application. If your loan is approved, important information relating specifically to your loan will be contained in the Adjustable Rate Note, Mortgage and Rider(s). Since the Adjustable Rate Note, Mortgage and Rider(s) establish your rights, you should become familiar with the provisions of these documents.

If the mortgage loan is not closed within the applicable Lock-In Expiration Date or Interest Rate CAP Expiration Date, or any extension thereof, LENDER will no longer be obligated under this Agreement and Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid by me will be refunded only as provided under the terms of this Agreement or if the applicable Lock-In Expiration Date or Interest Rate CAP Expiration Date, or any extension thereof, did not provide a reasonable period of time given the prevailing market conditions at the time I entered into this Agreement.

<u>WEST VIRGINIA:</u> If at any time I cancel or withdraw my mortgage loan application, any Lock-in Fee, Lock-in Extension Fee, CAP Fee or CAP Extension Fee paid will be refunded.

<u>WISCONSIN:</u> Any terms not locked-in by this Agreement are subject to change until the loan is closed at settlement.

<u>Acknowledgement:</u>
BY SIGNING BELOW, the parties acknowledge and accept the terms and conditions of this Agreement.

010145:022055:476660: 10660615
Signed by: David Kinworthy
Date: 2009-08-12 13:51:02 EDT
Digitally Certified by: eLynx

010145:022055:476660: 10660616
Signed by: Leslie Kinworthy
Date: 2009-08-12 13:38:02 EDT
Digitally Certified by: eLynx

Applicant David Kinworthy               Date          Applicant Leslie Kinworthy              Date

Applicant                               Date          Applicant                               Date

BY:
Ally Bank Corp. f/k/a GMAC Bank
Al Celini
Vice President

Interest Rate Lock Agreement (MultiState)
C2429 (05/08)                           Page 10 of 10

GMAC 000039

MEMORY TRANSMISSION REPORT

```
                                    TIME      :11-02-'12 13:45
                                    FAX NO.1  :
                                    NAME      :
```

```
FILE NO.          :   392
DATE              :   11.02 13:40
TO                :  ☎18664958535
DOCUMENT PAGES    :   16
START TIME        :   11.02 13:41
END TIME          :   11.02 13:45
PAGES SENT        :   16
STATUS            :   OK
```

***    SUCCESSFUL TX NOTICE    ***

## The Law Offices of
# JOHN THOMAS DZIALO
### Incorporated
200 W. Santa Ana Blvd. Suite 990 Santa Ana, CA 92701
**Phone (714) 418-4317        Toll Free (866) 370-9640        Fax (714) 766-8409**

| TO: WELLS FARGO C/O DEANNA BUTTERFIELD. | FROM: TRINITY MAI |
|---|---|
| FAX NUMBER: 866-495-8535 | DATE: 9/14/12  9|16|12  9|18|12  10|10|12  10|24|12  10|31|12  11|2|12 |
| PHONE NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
| LOAN #: SHATTUCK-0058801424 | CC |

☑ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please review for a possible loan modification.

Thank you.

Trinity Mai
Legal Assistant

866-370-9640 Toll Free
714-418-4317 Main Line
714-656-3264 Direct Line
714-766-8409 Direct Fax
trinity@jdzlaw.net

NOTICE: THIS FAX MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT(S) AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL AND PROTECTED FROM DISCLOSURE BY STATE AND FEDERAL LAW. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.