**Hearing date: May 14, 2013 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: May 7, 2013 at 4:00 p.m. (Eastern Time)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
In re:                                                    :
                                                          :   Case No. 12-12020(MG)
RESIDENTIAL CAPITAL, LLC, et al.,                         :
                                                          :   Chapter 11
                           Debtors.                       :
                                                          :   Jointly Administered
                                                          :
------------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, SEEKING LIMITED DISCOVERY FROM THE DEBTORS AND RELIEF FROM STAY IMPOSED BY THE FHFA ORDER

NIXON PEABODY LLP
Constance M. Boland
437 Madison Avenue
New York, New York 10022
(212) 940-3000

*Attorneys for U.S. Bank National Association, as Indenture Trustee*

## TABLE OF CONTENTS

Page

Table of Authorities .................................................................................................................. ii

FACTUAL BACKGROUND ......................................................................................................2

The GreenPoint Action ................................................................................................................2

The Debtor's Subpoena................................................................................................................6

ARGUMENT ................................................................................................................................7

I.    THE COURT SHOULD MODIFY THE STAY AND DIRECT DEBTOR
TO PRODUCE DOCUMENTS RESPONSIVE TO DEBTOR'S
SUBPOENA ..........................................................................................................7

     A.    Six Factors Govern Whether Discovery of the Debtor Should Be
Permitted ...................................................................................................7

     B.    Applying the Six-Factor Test, the Indenture Trustee Should Be
Granted Relief from the Temporary Stay to Obtain the Discovery
Sought by Debtor's Subpoena ...................................................................9

CONCLUSION .............................................................................................................................13

## TABLE OF AUTHORITIES

Cases

*In re Johns-Manville Corp.*,
39 B.R. 659 (S.D.N.Y. 1984) ................................................................................................ 8, 12

*Jaffee v. Redmond*,
518 U.S. 1 (1996) ........................................................................................................................ 7

*McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*,
397 B.R. 670 (Bankr. S.D.N.Y. 2008) ...................................................................................... 8

**Hearing date: May 14, 2013 at 10:00 a.m. (Eastern Time)**
**Objection Deadline: May 7, 2013 at 4:00 p.m. (Eastern Time)**

U.S. Bank National Association, as Indenture Trustee (the "Indenture Trustee"), respectfully requests this Court to modify the limitation it placed on discovery against one debtor, GMAC Mortgage Corporation ("GMAC" or "Debtor"), in its *"Memorandum Opinion and Order Denying the Motions of the Federal Housing Finance Agency and Underwriter Defendants to Compel Document Discovery from the Debtors"* [Dkt No. 1813] (the "FHFA Order"), to permit the Indenture Trustee to conduct the narrowly focused discovery it seeks against Debtor in this motion.

The Indenture Trustee seeks transaction documents and e-mail communications, relating to Debtor's participation in the purchase of 30,000 residential mortgage loans from GreenPoint Mortgage Funding, Inc. ("GreenPoint") in September 2005 and July 2006 and the subsequent securitization of those loans, as well as transaction documents relating to other securitizations involving Debtor and GreenPoint. The Indenture Trustee has diligently sought such documents from other entities, but a complete set of documents has not yet been produced by anyone. The discovery is sought in connection with *U.S. Bank National Association v. GreenPoint Mortgage Funding, Inc.*, a case pending before the Honorable Marcy S. Friedman in the New York State Supreme Court, New York County (Index Number 600352/09), in which the Indenture Trustee seeks remedies including the repurchase price of all of the loans, totaling $1.83 billion, from GreenPoint (the "GreenPoint Action"). The GreenPoint Action is not subject to any bankruptcy stay and party depositions may begin in May.

The Indenture Trustee duly served a subpoena on Debtor on or about January 16, 2013 (the "Debtor Subpoena"), and has since conferred with Debtor's counsel to limit the documents and electronically stored information ("ESI") it seeks in the subpoena. Despite this, the Debtor has failed to produce any documents, citing the FHFA Order. The documents sought

from Debtor -- a limited set of transaction documents, emails and correspondence relating to one specific securitization at issue in the GreenPoint Action -- likely cannot be obtained from any other party. Indeed, the Trustee understands that the loan sales agreements and certain securitization documents at issue in the GreenPoint case were based on a "GMAC form" and involved "GMAC's conduit program", and as such, the Debtor was directly involved in their drafting and negotiation. The Debtor should be able to produce these documents at little cost and with minimal effort. Nor will Debtor's reorganization efforts be thwarted, or even hindered, by an Order of this Court granting the Indenture Trustee the limited relief it seeks from the third-party discovery stay. Conversely, the Indenture Trustee's need for the requested documents and communications is urgent. These documents go directly to the Indenture Trustee's arguments to defeat GreenPoint's soon-anticipated motion for summary judgment, and are critically necessary for the Indenture Trustee to prosecute its action.[1]

## FACTUAL BACKGROUND[2]

### The GreenPoint Action

1. The GreenPoint Action arises from GreenPoint's multiple breaches of representations and warranties in the September 26, 2005 and July 26, 2006 loan sale agreements it entered into with Debtor (the "Sale Agreements"), pursuant to which GreenPoint sold and Debtor purchased approximately 30,000 residential mortgage loans. In the Sale Agreements, GreenPoint made numerous representations and warranties relating to the mortgage loans (the "Loans") and the policies and practices pursuant to which the Loans were originated,

---

[1] By highlighting arguments as to which the requested information is relevant, the Indenture Trustee does not waive other available arguments.

[2] Certain facts supporting this motion are set forth in the Declaration of Constance M. Boland ("Boland Decl.") filed concurrently herewith.

2

underwritten, and serviced. GreenPoint backed those representations and warranties with express promises to cure any material breaches or repurchase breaching Loans – including a promise to repurchase the entire pool of 30,000 Loans if certain overarching representations and warranties were false.

2. The Loans were ultimately sold into a trust called GreenPoint Mortgage Funding Trust 2006-HE1 (the "Trust"). On or about August 28, 2006, the Trust issued approximately $1.83 billion in notes, which were sold to investors (the "Securitization").

3. The Securitization involved a series of assignments of the Loans and the rights and remedies under the Sale Agreements. GreenPoint sold the Loans to Debtor, which assigned the Loans and the Sale Agreements to Lehman Brothers Bank, FSB ("Lehman Bank") pursuant to Debtor's "conduit-lite" program. Lehman Bank then assigned the Loans and the Sale Agreements to Lehman Brothers Holdings, Inc. ("Lehman Holdings"), which in turn assigned the Loans and Sale Agreements to Structured Asset Securities Corporation ("SASCO"), a Lehman-controlled entity. SASCO assigned the Loans and Sale Agreements to the Trust, which is managed by the Indenture Trustee. Below is an illustration of the chain of assignments by which the Loans were transferred from GreenPoint to the Trust in connection with the Securitization:



4. In the GreenPoint Action, GreenPoint asserts that the Indenture Trustee lacks standing to sue because the above assignments were allegedly ineffective, claiming that a required "assignment form" was not used. Whether the assignment form was required depends on whether the assignments were part of a "Securitization Transfer" or a conveyance to a

3

"securitized trust structure," as those terms are used in the Sale Agreements. GreenPoint has asserted that the assignments were not part of a "Securitization Transfer" and the assignments were "merely assignments from one non-securitized structure to another." On that basis, GreenPoint argues that the assignment forms for transferring the Loans and Sale Agreements were essential to making the assignments of the Loans and the Sale Agreements to the Indenture Trustee effective.

5.      The Indenture Trustee disagrees. In support of the Indenture Trustee's positions that the transactions at issue were in fact part of a "Securitization Transfer" or a conveyance to a "securitized trust structure," the Indenture Trustee now seeks parol evidence concerning the meaning of these terms, which the court in the GreenPoint Action found were ambiguous. The Indenture Trustee thus seeks discovery from the Debtor of drafts of the Sale Agreements, and e-mail communications relating to the Sale Agreements, concerning the meaning of "securitized trust structure" and "Securitization Transfer," and/or which concern the requirement of the use of the "assignment form" to be an effective assignment under the Sale Agreements. Documents and ESI from the Debtor are necessary, in part, because GreenPoint has informed the Indenture Trustee that the Sales Agreements and other documents used in this securitization are based on "GMAC forms" used pursuant to the "GMAC conduit program." Moreover, in marshaling such evidence, the communications between Debtor and each of Lehman Bank and Lehman Holdings will be highly relevant in proving not only that the transaction at issue in the GreenPoint Action falls within the definition of "Securitization Transfer" or "securitized trust structures", but also that Lehman Bank intended for the Loans to be assigned to be securitized. In addition, any communications between Debtor and GreenPoint evidencing that GreenPoint understood that the

4

Loans – or the lion's share of the Loans – were ultimately to be securitized, would be a definitive admission rebutting GreenPoint's defense.

6. To date, GreenPoint has produced an incomplete record of contemporaneous documents and emails. GreenPoint's counsel has advised that relevant email were likely deleted in the ordinary course of business due to email retention policies in place at GreenPoint during the time that the Securitization closed. The Indenture Trustee was likely not copied on all relevant emails, but in addition many of the emails it did receive were deleted due to its own document retention policy in place during 2006, when the securitization closed. Other non-parties have been served with subpoenas, but thus far have not produced a complete set of email communications during the relevant time period of September 2005 through September 2006. Accordingly, the Debtor may likely be the only other source of relevant emails, ESI and documents, which could completely rebut GreenPoint's defense that the Indenture Trustee lacks standing.

7. Discovery has been bifurcated in the GreenPoint Action to address "transaction-level" discovery (rather than loan-level discovery) between the parties first. Transaction-level document and ESI discovery between the parties has been completed, except for certain limited disputes the parties have brought to the court's attention. Party depositions are to be completed by June 1, 2013, but non-parties have not yet produced all documents and ESI in response to various subpoenas the Indenture Trustee has served, including subpoenas on the various assignors and assignees of the Loans and the Sale Agreements, such as Debtor. Without these crucial documents, depositions cannot be completed. In addition, GreenPoint has represented that once transaction-level discovery is complete, it intends to move for summary judgment to dismiss the Indenture Trustee's causes of action based on lack of standing.

5

**The Debtor's Subpoena**

8.      The Trustee sought a Commission for the issuance of a subpoena in the State of Pennsylvania to serve the Debtor's Subpoena on Debtor's Custodian of Records. *See* Boland Decl. Ex. B. The Debtor's Subpoena was duly served on January 16, 2013. *See* Boland Decl. Ex. A. The Debtor's Subpoena seeks, among other things, drafts and communications relating to the Sale Agreements and the Securitization, and limited documents concerning other securitizations in which Debtor was involved with GreenPoint.

9.      Although the Debtor Subpoena was duly served, Debtor has refused to produce any documents responsive to the Debtor Subpoena. *See* Boland Decl. ¶¶ 4-10 and Ex. D, E and F. The Indenture Trustee has subsequently voluntarily narrowed the requests in the Debtor Subpoena, but Debtor has stood by its refusal to produce any responsive documents. *See id.* ¶ 6.

10.     Because Debtor contracted directly with GreenPoint in the Sale Agreements for the purchase of the Loans, was a party to the Securitization, and was the servicer of the Loans from late 2006 through 2012, Debtor will undoubtedly possess a substantial number of documents and ESI critical to the Indenture Trustee's claims in the GreenPoint Action. Moreover, given GreenPoint's document deletion policies in place at the time of the closing of the Securitization, it is likely that the Debtor possesses documents that cannot be obtained from any other party.

11.     The Debtor's reorganization efforts will not be thwarted, or even hindered, by an Order of this Court granting the Indenture Trustee the limited relief it seeks from the third-party discovery stay. The requested documents and communications, as narrowed, should be able to be produced by Debtor at little cost and with minimal effort. Moreover, the concerns of this Court as expressed in the FHFA Order, that there were "simply too many critical matters

scheduled in this case that will occur between [October 2012] and the end of January 2013 to require the Debtors to respond to the document production requests," have presumably occurred (or are shortly to occur) and are no longer pressing. *See* FHFA Order, at 24. Conversely, the Indenture Trustee's need for the requested documents and communications is urgent, given the schedule described above. These documents go directly to the Indenture Trustee's arguments to defeat GreenPoint's anticipated motion for summary judgment and will be invaluable to prosecuting effectively its claims against GreenPoint. Accordingly, for the reasons set forth herein, this Court should grant the Indenture Trustee relief from the stay of third-party discovery and order Debtor to produce the requested documents and communications.

## ARGUMENT

### I.    THE COURT SHOULD MODIFY THE STAY AND DIRECT DEBTOR TO PRODUCE DOCUMENTS RESPONSIVE TO DEBTOR'S SUBPOENA

#### A.    Six Factors Govern Whether Discovery of the Debtor Should Be Permitted.

12.    In the FHFA Order, this Court held that section 362(a) of the Bankruptcy Code does not protect the Debtor from discovery in third-party actions. *See* FHFA Order, at 11. The Court nevertheless extended the protection of section 362(a) to the Debtor pursuant to section 105 of the Bankruptcy Code, prohibiting any discovery from the Debtor (as a third-party) absent further order of the Court. *See id.* at 11 ("To be clear . . . the Court is extending the protection of the stay pursuant to section 105(a) to *anyone* seeking discovery from the Debtors absent further order of the Court.") (emphasis in original).

13.    This Court acknowledged that, in addressing any discovery request, "the primary assumption [is] that there is a general duty to give what testimony one is capable of giving," and noted that the ultimate burden of persuasion rests with the Debtor. *See* FHFA Order, at 23 (*citing Jaffee v. Redmond,* 518 U.S. 1, 9 (1996)). In extending the protection of section 362(a) to

7

Debtor, the Court emphasized that "[t]he touchstone for granting injunctive relief against third-party actions is whether the third-party action will 'threaten to thwart or frustrate the debtor's reorganization efforts.'" *See id.* at 18 (*citing McHale v. Alvarez (In re The 1031 Tax Grp., LLC)*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008)). Accordingly, where "a third party moves to lift the stay and permit discovery, the *debtor* must demonstrate why discovery should be limited or conditioned." FHFA Order, at 23 (emphasis in original); *see also In re Johns-Manville Corp.*, 39 B.R. 659, 662 (S.D.N.Y. 1984) ("the objective [of reorganization] cannot properly be the sole consideration, to the exclusion of legitimate fair interests of third parties. This is especially true where [the debtor] has made no showing that the furnishing of disclosure is incompatible with the successful achievement of its reorganization.").

14. This Court identified the following six factors that bankruptcy courts should consider in deciding whether to permit third-party discovery against debtors, and under what conditions to do so: (1) the scope of the requested discovery; (2) the context in which the request arises; (3) the need for the discovery; (4) the timing of the discovery; (5) the burden on the debtors from the requested discovery; and (6) the expense of the discovery and who should bear the cost. *Id.* at 15. The Court explained that, of the six factors, the party seeking discovery should establish scope (factor 1), context (factor 2), and need (factor 3). *Id.* Although both parties must come forward with evidence with respect to timing (factor 4), it is the *Debtor* who must demonstrate the burden and expense of the discovery being sought (factors 5 and 6). *Id.* To prove that third-party discovery will cause burden and expense, the Debtor must show more than some inevitable burden and cost; the Debtor must show that such burden and cost will "imperil the reorganization or the interests of [the Debtor's] creditors." *See In re Johns-Manville Corp.*, 39 B.R. at 662 (finding no such showing despite discovery "undoubtedly cost[ing] [the

8

Debtor] some expenditure of funds and attention of counsel"). The Court in FHFA also held that "[t]he greater the limitations or conditions the debtor seeks to impose on discovery, and the greater the interference that will result in the non-bankruptcy matter if limitations and conditions are imposed, the stronger the debtor's evidence and argument will need to be." FHFA Order, at 15.

15.     For the reasons explained below, the six factors this Court identified in the FHFA Order overwhelmingly weigh in favor of granting relief from the temporary stay to permit the Indenture Trustee to obtain the discovery sought in Debtor's Subpoena.

    **B.**    **Applying the Six-Factor Test, the Indenture Trustee Should Be Granted Relief from the Temporary Stay to Obtain the Discovery Sought by Debtor's Subpoena.**

16.     *Factor 1* - Scope. The scope of the discovery sought from Debtor is extremely limited and, for the purposes of this motion, has been further narrowed to include only that information which is of immediate necessity to the Indenture Trustee. The Indenture Trustee seeks transaction documents relating to the Sale Agreements, dated September 26, 2005 and July 26, 2006, including drafts and a closing set and email communications and other records of negotiations among Debtor and GreenPoint, Lehman Bank, Lehman Holding, the Indenture Trustee, the monoline insurance companies that insured the notes, Syncora Guarantee Inc. and CIFG Assurance North America, Inc., and any other parties relating to the Sale Agreements and the Securitization. The scope of the discovery sought by the Indenture Trustee is significantly less burdensome than that which Debtors agreed to produce in the FHFA Case. FHFA sought *loan level* documents for 21 securitizations whereas, here, the Indenture Trustee initially sought documents and communications for only ten securitizations and has further narrowed its request

9

to *transaction level* documents and communications for only one securitization.[3] The narrow scope of the requests weighs in favor of permitting the Indenture Trustee to conduct the discovery it seeks from the Debtor.

17.    *Factor 2* - Context. The discovery request arises in the context of the Indenture Trustee's pending state court litigation in which it seeks more than $1.83 billion in damages and the request seeks information and documents in the first phase of discovery needed to defeat an anticipated motion for summary judgment. The Debtor is the initial purchaser of the Loans and the Sale Agreements from defendant GreenPoint, making Debtor the first assignee in the chain of assignments which leads to the Trust, as well as the servicer of those Loans. GreenPoint has challenged the effectiveness of these assignments and the Trustee's standing, claiming that the assignments in the chain were not conveyances to "securitized trust structures," but rather were "whole loan Sales," (Boland Decl. Ex. G, at 11), that were merely assignments from one non-securitized structure to another. Therefore, the discovery the Indenture Trustee seeks from the Debtor is directly relevant to rebutting GreenPoint's defense. Thus, the context supports allowing the Indenture Trustee to obtain discovery against the Debtor.

18.    *Factor 3* - Need. The requested discovery is critically needed by the Indenture Trustee. As the initial purchaser of the Loans, the Debtor is the first link in the chain of assignments, contracted directly with GreenPoint in the Sale Agreements, and the parties allegedly used a GMAC form agreement. The Indenture Trustee anticipates that communications among the Debtor, GreenPoint, Lehman Bank, Lehman Holding, and other

---

[3] The Indenture Trustee notes that, while it is willing to delay its requests for loan-level information for the Trust and all information sought by Debtor's Subpoena on the nine additional GreenPoint transactions, to the extent that such information will be required for phase two discovery in the GreenPoint Action, it may be less burdensome for the Debtor to produce all documents at this time, employing a rolling production so as to ensure the information the Indenture Trustee requires for phase one discovery in the GreenPoint Action is timely produced.

10

parties to the Securitization will be extremely probative of the nature of the transactions and whether the assignments were, as the Indenture Trustee argues, conveyances to "securitized trust structures." Moreover, a complete set of email communications during the crucial time period of September 2005 through September 2006 has not yet been produced. The document retention policies of GreenPoint and the Indenture Trustee during the relevant time resulted in many emails not being retained, and the subpoenaed non-parties have not produced a complete set of email communications. Accordingly, the Debtor could be the only source of the requested emails and documents, which could completely rebut GreenPoint's defense that the Indenture Trustee lacks standing. There can be little doubt that the Indenture Trustee needs the discovery sought in the Debtor's Subpoena.

19. *Factor 4* - Timing. Timing also weighs in favor of permitting this discovery. Given that depositions in the GreenPoint Action are expected to begin soon, it is critical that the Indenture Trustee promptly obtain the transaction level documents and communications in the Debtor's possession. In addition, the critical time period with respect to Debtor's obligations, from October 2012 through January 2013, has passed, so that it is less likely that such discovery would impose any undue burden on the Debtor now.

20. *Factor 5* - Burden and *Factor 6* - Expense. The Debtor must establish that the burden and expense of complying with the Indenture Trustee's discovery request weigh against allowing the discovery, but the Indenture Trustee submits that the Debtor will not present the requisite proof. The Debtor was, until recently, the servicer of the 30,000 Loans and, as such, Debtor may likely maintain active files relating to this Securitization. Therefore, the discovery sought herein may not require the Debtor to search through files that have been closed, or stored off site or on back-up tapes, but rather, may only require a search through recently active files

11

and email boxes. *See In re Johns-Manville Corp.*, 39 B.R. at 661 (ordering production of third-party discovery requests because the requests "involve[d] primarily, or exclusively, local [ ] documents and personnel" from the debtor's manufacturing plant, and the debtor had "made no showing that this discovery would involve anyone significantly responsible for high level corporate management or reorganization negotiations"). For the same reason, it is likely that it would not be significantly expensive for the Debtor to produce documents and ESI responsive to the narrowly tailored requests of the Indenture Trustee. As to which party should bear the cost, as stated, to the extent that these are active/recently active loan files, the Debtor should bear the expense as part of its overhead of doing business as servicer.

21.    In contrast to the minimal and limited burden this discovery would place on the Debtor, the Indenture Trustee would suffer significant harm and prejudice if it is precluded from obtaining this discovery. These transaction-level documents and communications are directly relevant to show that GreenPoint or the subsequent assignors understood at the time of the Securitization and the subsequent assignments that the Loans were to be securitized and that the transaction was part of a "securitized trust structure", all of which would undermine GreenPoint's position that the transfers in question were "merely assignments from one non-securitized structure to another". As the court in the GreenPoint Action noted in denying GreenPoint's motion to dismiss: "There is an ambiguity as to whether the entire transaction from its inception was meant to be, or became, a 'securitized trust structure.' As a result of this ambiguity, the Indenture Trustee should be allowed to conduct the discovery it needs to determine the intent of the parties in respect to the matter." Boland Decl. Ex. G, at 12. For this reason, consideration of the burden of the discovery weighs in favor of allowing the Indenture Trustee to conduct the discovery it needs against the Debtor.

12

22.     Accordingly, relief from the stay is justified here because the minimal harm to the Debtor caused by its complying with the more narrowly focused requests in Debtor's Subpoena is outweighed by the extensive prejudice that the Indenture Trustee would suffer if it does not gain access to the requested documents and communications.

## **CONCLUSION**

23.     For the foregoing reasons, the Indenture Trustee respectfully requests that this Court modify the limitation placed on third-party discovery against the Debtor as provided in the FHFA Order, require the Debtor to comply with the Debtor's Subpoena and produce forthwith to the Indenture Trustee the categories of documents listed on Schedule A of Debtor's Subpoena duly served upon the Debtor on January 16, 2013 (*see* Boland Decl. Ex. A), as voluntarily narrowed by the Indenture Trustee, and grant any other and further relief to the Indenture Trustee as it deems just and proper.

Dated: New York, New York
April 23, 2013

NIXON PEABODY LLP

By: _____
Robert N.H. Christmas
Constance M. Boland
437 Madison Avenue
New York, New York 10022
(212) 940-3000

*Attorneys for U.S. Bank National Association, as Indenture Trustee*

13

TO:    Joel C. Haims, Esq.
       MORRISON & FOERSTER LLP
       1290 Avenue of the Americas
       New York, New York 10104

       *Attorneys for Debtors*
        *GMAC Mortgage Corporation*

       Michael T. Conway, Esq.
       LeCLAIR RYAN
       830 Third Avenue, Fifth Floor
       New York, New York 10022

       James A. Murphy, Esq.
       Cameron S. Matheson, Esq.
       MURPHY & McGONIGLE, PC
       4870 Sadler Road, 3rd Floor
       Glen Allen, Virginia 23060

       *Attorneys for*
        *GreenPoint Mortgage Funding, Inc.*

14432589.2