Hearing Date and Time (Committee's Motion):  May 7, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (Wilmington Trust's Motion):  May 14, 2013 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**OMNIBUS OBJECTION OF THE AD HOC GROUP OF JUNIOR SECURED NOTEHOLDERS TO (I) THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE COMMITTEE TO PROSECUTE AND SETTLE CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES AND (II) THE MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR THE SENIOR UNSECURED NOTES ISSUED BY RESIDENTIAL CAPITAL, LLC FOR AN ORDER AUTHORIZING IT TO PROSECUTE CLAIMS AND OTHER CAUSES OF ACTION ON BEHALF OF THE RESIDENTIAL CAPITAL, LLC ESTATE**

**Hearing Date and Time (Committee's Motion):  May 7, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Hearing Date and Time (Wilmington Trust's Motion):  May 14, 2013 at 10:00 a.m. (Prevailing Eastern Time)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"),[1] by and through its undersigned counsel, hereby objects to the Motions[2] of the Committee[3] and Wilmington[4] seeking standing to prosecute and settle certain claims on behalf of the estates of the above-captioned debtors and debtors-in-possession (the "Debtors").   In support of this objection, the Ad Hoc Group respectfully states as follows:

## OBJECTION

These Motions represent an attempt by the Committee and Wilmington to obtain estate assets – the right to assert and prosecute claims and causes of action of the Debtors – outside of a plan of reorganization.  Given that the plan negotiation process is ongoing, and that the path of these cases is less than clear, it is too early for the Court to cede control of estate claims to any third party.  Those claims are not currently at risk, and all parties will know soon enough who are the real economic parties-in-interest with respect to those claims, who should be bringing them, and who should have the right to liquidate those claims either through settlement or litigation.

---

[1] The Ad Hoc Group is comprised of certain entities that hold or manage holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008 (the "Junior Secured Noteholders").  The Junior Secured Noteholders' claim is now equal to 115.8% of the face amount of the bonds and is currently increasing by virtue of the accrual of postpetition interest at the rate of approximately $250 million per year.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Official Committee of Unsecured Creditors' Motion for Entry of An Order Authorizing the Committee to Prosecute And Settle Certain Claims on Behalf of the Debtors' Estates [Docket No.  3412] (the "Committee Motion") or the motion of Wilmington Trust, National Association, Solely In Its Capacity As Indenture Trustee For the Senior Unsecured Notes Issued By Residential Capital, LLC For An Order Authorizing It To Prosecute Claims and Other Causes of Action On Behalf Of The Residential Capital, LLC Estate [Docket No. 3475] (the "Wilmington Trust Motion," and collectively with the Committee Motion, the "Motions").

[3] The Official Committee of Unsecured Creditors (the "Committee" and, together with Wilmington, the "Movants").

[4] Wilmington Trust, National Association, in its capacity as indenture trustee for the unsecured notes issued by Residential Capital, LLC.

Beyond being premature, the Motions are deficient in four additional respects.  <u>First</u>, neither the Committee nor Wilmington can be granted standing to pursue claims that belong to the Junior Secured Noteholders, as their proposed orders would provide.  <u>Second</u>, the Court should not grant any standing at all to Wilmington given that it is not a fiduciary with respect to the ResCap estate.  <u>Third</u>, contrary to its proposed order, the Committee should not be granted derivative standing to bring Estate Claims on behalf of all Debtor entities.  Certain estates lack third-party general unsecured creditors, and the value of those estates largely accrues to the benefit of the Junior Secured Noteholders whom the Committee seeks to disenfranchise.  <u>Fourth</u>, to the extent standing is conferred on either the Committee or Wilmington, such parties cannot be granted consent rights over any settlement of the Estate Claims or Holdco Claims, particularly in light of the fact that up until the point that the Junior Secured Notes claims are paid in full including post-petition interest, the Junior Secured Noteholders are the primary beneficiaries of the claims at issue.  To grant exclusive settlement authority here would, in essence, confer upon the Committee and Wilmington an improper plan veto.

I.  **The Court Should Decline to Grant Standing to the Movants to Prosecute and Settle any Junior Secured Noteholder Claims**

The Junior Secured Noteholders hold unique claims (the "<u>Junior Secured Noteholder Claims</u>") on account of particularized harm suffered as a result of the Debtors' pre-petition transactions with third-parties.  Neither Motion specifies whether, and to what extent, these Junior Secured Noteholder Claims are to be included among the Estate Claims and the HoldCo Claims for which the Committee and Wilmington, respectively, seek standing.  The Committee, for its part, seeks standing and authority to prosecute and settle all claims "arising from the Committee Investigation" (the "<u>Estate Claims</u>").  (<u>See</u> Committee Motion at 1.)  The Committee apparently intends these Estate Claims to include breach of contract claims, commercial tort

claims, and constructive and intentional fraudulent transfer claims held by certain unspecified Debtors against Ally Financial Inc. and certain of its non-debtor affiliates (collectively, "Ally"). (See Committee Motion ¶ 63.) Wilmington also seeks standing and authority to prosecute and settle certain Estate Claims, requesting specifically to settle the claims of Residential Capital, LLC ("ResCap") (the "Holdco Claims"). (See Wilmington Motion ¶¶ 1-3.)

The Junior Secured Noteholder Claims include, among other things, individual claims against Ally – including claims for breach of contract, tortious interference with contract and equitable subordination of Ally's claims -- arising from the parties' relationship as first and second lien lenders under that certain intercreditor agreement dated June 6, 2008.[5] In addition, the Junior Secured Noteholder Claims consist of potential challenges to the transfers of certain economic interests constituting their collateral. Having suffered particularized harm as a result of these transfers, the Junior Secured Noteholders can assert a lien on any recovery from the prosecution of these actions. See Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.), 178 B.R. 753, 761-764 (Bankr. C.D. Ill. 1995) (finding that an interest in inventory remained, even after an avoidance action, where the secured creditor had an independent right to recover the encumbered collateral); In re Figearo, 79 B.R. 914, 916 (Bankr. D. Nev. 1987) ("an avoidance and recovery of property by the trustee is not equivalent to a postpetition acquisition of property by the estate."). Even absent an enforceable lien on the recovery of these claims, the Junior Secured Notes would still be the primary economic beneficiaries of any such recovery because of their large allowed claims against ResCap and its major operating subsidiaries.

---

[5] Amended and Restated Loan Agreement, dated as of December 30, 2009, by and among Residential Funding Company, LLC, as Borrower GMAC Mortgage, LLC, as Borrower, Residential Capital, LLC and Certain Other Affiliates of the Borrowers, as Guarantors, Certain Affiliates of the Borrowers and Guarantors party hereto as Obligors, GMAC Inc. as Initial Lender and as Lender Agent and Certain Other Financial Institutions and Persons from time to time party hereto as Lenders (the "Revolver").

For example, the Junior Secured Noteholder Claims include any claims that may be asserted by ResCap against its operating subsidiaries, GMAC Mortgage LLC or Residential Funding Company LLC, alleging actual or constructive fraudulent transfers on account of intercompany debt forgiveness.  Wilmington seeks standing to prosecute and settle these claims challenging the instances of debt forgiveness (See Wilmington Motion ¶ 21.)  The Junior Secured Noteholders, however, have a lien against all pre-petition intercompany claims owing to ResCap and the other guarantor entities.  See Junior Secured Noteholders' Security Agreement[6] § 2(i) (granting lien on general intangibles).  To the extent that the forgiveness by ResCap of a valid pre-petition intercompany claim is avoidable as a fraudulent transfer, then the Junior Secured Noteholders can assert a lien on any such recovery up until the claims in respect of the Junior Secured Notes are paid in full including post-petition interest.

In sum, it makes no sense, then, to cede total control of those claims to Wilmington, which represents junior interests in a single Debtor.  Neither the Committee nor Wilmington can be granted standing to prosecute and settle the Junior Secured Noteholder Claims or to interfere with the rights of the Junior Secured Noteholders to assert these claims on their own behalf, and their rights to assert liens with respect to any recoveries on Estate Claims or Holdco Claims.

**II.     Wilmington Should Not be Granted Standing to Prosecute or Settle the Holdco Claims**

The Court should also deny Wilmington's Motion because it would be inappropriate under these circumstances to grant Wilmington any standing to prosecute or settle the Holdco Claims.  Wilmington does not act as a fiduciary for the ResCap estate (or indeed any estate) and does not purport to undertake any fiduciary duties in connection with its requested relief.  On

---

[6] Amended and Restated Third Priority Pledge and Security Agreement and Irrevocable Proxy, dated as of December 30, 2009, among Residential Capital, LLC and Certain of its Affiliates from time to time party hereto as Grantors, U.S. Bank National Association, as Trustee and Wells Fargo Bank, N.A., as Third Priority Collateral Agent and Collateral Control Agent.

that basis alone, the Court should deny Wilmington's Motion. The Holdco Claims that are the subject of Wilmington's Motion are valuable assets of ResCap and they cannot be turned over to a creditor constituency that, given its position in the Debtors' capital structure, is perhaps most removed from the economic interests in the assets of the Debtors.

> III. **The Court Should Decline to Grant the Committee Derivative Standing to Prosecute and Settle any Estate Claim Held by an Entity Lacking Material General Unsecured Liabilities**

These Chapter 11 Cases are comprised of 51 individual Debtor estates. (See Affidavit of James Whitlinger ¶ 47 [Docket No. 0006].) Many of these Debtors lack any third-parties holding allowed general unsecured claims, including, among others, RFC Asset Holdings II LLC, Passive Asset Transactions, LLC, and GMAC Residential Holding Company LLC. See, e.g., Schedules of Assets and Liabilities for RFC Asset Holdings II LLC [Docket No. 0586] (listing only intercompany unsecured claims); Schedules of Assets and Liabilities for Passive Asset Transactions, LLC, [Docket No. 0582] (same); Schedules of Assets and Liabilities for GMAC Residential Holding Company LLC, [Docket No. 687] (same). Notwithstanding the existence of separate estates with distinct claims and rights, the Committee Motion fails to identify which of the 51 Debtors it seeks derivative standing on behalf of. See Committee Motion ¶ 4 (referring only to the "Debtors" and their "estates"); Id. ¶ 68; Id. ¶ 77.

For those Debtors lacking material general unsecured creditors, the Committee cannot possibly serve as a fiduciary and cannot obtain derivative standing to assert claims on those Debtors' behalf. Derivative standing is appropriate (i) where there is "a colorable claim or claims for relief that on appropriate proof would support a recovery," and (ii) "an action is (a) in the best interest of the bankruptcy estate and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." In re Dewey & LeBoeuf LLP, No. 12-12321 (MG),

2012 WL 5985445, at *5 (Bankr. S.D.N.Y. Nov. 29, 2012) (citation omitted). Here, the Committee cannot meet these standards for derivative standing with respect to the Debtors that lack any material general unsecured creditors and the Court should deny that portion of the Motion which seeks blanket authority on behalf of the Debtors.

### IV. The Court Should Deny the Movants' Requests for Consent Rights with Respect to the Settlement of Claims

The Committee requests authority to settle the Estate Claims, purportedly on terms identical to the settlement authority that the Court granted the Committee in connection with its request for standing to challenge in part the Junior Secured Notes. (See Committee Motion ¶ 68; Order Authorizing the Official Committee of Unsecured Creditors to Prosecute and Settle Certain Claims On Behalf Of The Debtors' Estates (the "Committee Standing Order") [Docket No. 2518].) Wilmington requests this same authority to settle Holdco Claims on behalf of ResCap. (Wilmington Motion ¶ 43) ("The Holdco Claims should be resolved by settlement only if such settlement is supported by the trustee or a non-conflicted fiduciary of Holdco"). The proposed orders submitted with each Motion, however, purport to provide the Movants with rights to consent to any proposal by the Debtors to settle the Estate Claims or Holdco Claims in a Debtor-sponsored plan:

> … the exclusive right and authority to enter into settlements on behalf of the Estates with respect to the Claims; provided, however, that pursuant to a chapter 11 plan, the Debtors may, with the consent of the Committee, propose a settlement of the Claims both during or after the Exclusive Plan Period.

(Committee Proposed Order ¶ 5) (emphasis added). If granted by the Court, the proposed orders would effectively grant the Committee and Wilmington veto-rights over any settlement of the Estate Claims or Holdco Claims, respectively, in a plan proposed by the Debtors during the exclusive period.

Investing the Committee or Wilmington with authority to resist and thereby frustrate a settlement of the Estate Claims or Holdco Claims could impede the plan negotiation process and any further mediation efforts. The Court should decline to grant the Committee or Wilmington consent rights with respect to any settlement of the Estate Claims or Holdco Claims. To the extent that a confirmable plan seeks to settle all or a portion of these estates' claims, the relevant voices are those of voting creditors, not Wilmington or the Committee. In any event, any grant of standing to settle should not exceed the modified settlement authority provided in the Court's earlier order granting the Committee standing to challenge in part the Junior Secured Notes.[7]

---

[7] The unqualified consent rights requested by the Committee exceed the settlement authority granted to the Committee in the Committee Standing Order. That order permitted the Debtors to propose a settlement absent Committee consent, to the extent support by other parties in interest:

> [granting the Committee] the exclusive right and authority to enter into settlements on behalf of the Debtors' estates with respect to the Claims; <u>provided</u>, <u>however</u>, that pursuant to a chapter 11 plan, the Debtors may, <u>with the consent of the Committee (such consent not to be unreasonably withheld)</u>, propose a settlement of the Claims.

(Committee Standing Order ¶ 5) (emphasis added); Dec. 20, 2012 Hr'g Tr. 104:13-22 [Docket No. 2523] (counsel to Debtors) ("if there is broad support among the capital structure for a settlement that the Committee doesn't support, we believe we have sufficient flexibility under this language to propose that plan, and the Committee has another potential objection to that plan…").

WHEREFORE, for the foregoing reasons, the Ad Hoc Group requests that the Court deny the Motions to the extent requested herein and grant such further relief as it deems just.

Dated: April 30, 2013
New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders