1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


         Debtors.


- - - - - - - - - - - - - - - - - - - -x


         United States Bankruptcy Court

         One Bowling Green

         New York, New York


         April 30, 2013

         10:05 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   (CC: Doc #3374, 3375) STATUS CONFERENCE re Debtors' Motion for

3   Entry of an Order to Permit the Debtors to Continue Using Cash

4   Collateral

5

6   (CC:  Doc #3189) ADJ. HEARING re First Application for Interim

7   Professional Compensation (First Interim Application of Hudson

8   Cook, LLP as Special Counsel to the Debtors for Compensation

9   and Reimbursement of Expenses Incurred for the Period 5/15/2012

10  through 12/31/2012) for Hudson Cook LLP, Special Counsel;

11  period:  5/15/2012 to 12/31/2012; fee:  $1,206,481.50;

12  expenses:  $15,463.07

13

14  (CC:  Doc #1227) ADJOURNED HEARING Regarding Scheduled

15  Creditor's Motion for the Clarification/Enforcement of the

16  Automatic Stay Against The Debtors, Co-Creditor Deutsche Bank

17  Americas and Counsel

18

19  (CC:  Doc #2935) MOTION to Extend Time for Julio Solano to File

20  Proof of Claim

21

22  HEARING Regarding Letter of David and Leslie Kinworthy

23  Requesting Relief from the Automatic Stay

24

25  (CC:  Doc #2604) MOTION for Relief from Stay

1

2   (CC:  Doc #3238) MOTION to File a Late Proof of Claim Filed by

3   Wenig Firm

4

5   ADJ. HEARING re Cure Objections

6

7

8

9

10

11

12

13

14

15

16

17

18

19   Transcribed by:  Lisa Bar-Leib

20   eScribers, LLC

21   700 West 192nd Street, Suite #607

22   New York, NY 10040

23   (973)406-2250

24   operations@escribers.net

25

4

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Attorneys for Debtors

5      1290 Avenue of the Americas

6      New York, NY 10104

7

8  BY:  TODD M. GOREN, ESQ.

9      JAMES A. NEWTON, ESQ.

10     SAMANTHA MARTIN, ESQ.

11     STEFAN W. ENGELHARDT, ESQ.

12     NORMAN S. ROSENBAUM, ESQ.

13

14

15  KRAMER LEVIN NAFTALIS & FRANKEL LLP

16     Attorneys for the Official Committee of Unsecured

17      Creditors

18     1177 Avenue of the Americas

19     New York, NY 10036

20

21  BY:  STEPHEN D. ZIDE, ESQ.

22     ELISE S. FREJKA, ESQ.

23

24

25

1

2  U.S. DEPARTMENT OF JUSTICE

3       Office of the United States Trustee

4       33 Whitehall Avenue

5       21st Floor

6       New York, NY 10004

7

8  BY:  BRIAN S. MASUMOTO, ESQ.

9

10

11  HUDSON COOK, LLP

12       Special Counsel to the Debtors

13       6 Hutton Centre Drive

14       Suite 840

15       Santa Ana, CA 92707

16

17  BY:  DANA CLARKE, ESQ. (TELEPHONICALLY)

18

19

20  KELLEY DRYE & WARREN LLP

21       101 Park Avenue

22       New York, NY 10178

23

24  BY:  CATHERINE L. THOMPSON, ESQ.

25

```
 1
 2   KIRKLAND & ELLIS LLP
 3          Attorneys for Ally Financial and Ally Bank
 4          601 Lexington Avenue
 5          New York, NY 10022
 6
 7   BY:   CRAIG A. BRUENS, ESQ.
 8          ANTHONY GROSSI, ESQ.
 9
10
11   WHITE & CASE LLP
12          Attorneys for the Ad Hoc Group of Junior Secured
13           Noteholders
14          1155 Avenue of the Americas
15          New York, NY 10036
16
17   BY:   J. CHRISTOPHER SHORE, ESQ.
18          HARRISON DENMAN, ESQ.
19
20
21
22
23
24
25
```

1

2  CLEARY GOTTLIEB STEEN & HAMILTON LLP

3        Attorneys for Wilmington Trust

4        One Liberty Plaza

5        New York, NY 10006

6

7  BY:   JEREMY R. OPOLSKY, ESQ.

8

9

10  SILVERMANACAMPORA LLP

11        Special Counsel to the Official Committee of Unsecured

12         Creditors

13        100 Jericho Quadrangle

14        Suite 300

15        Jericho, NY 11753

16

17  BY:   JUSTIN S. KRELL, ESQ.

18

19

20

21

22

23

24

25

1

2   WENIG SALTIEL LLP

3           Attorneys for MED&G Group LP

4           26 Court Street

5           Suite 1200

6           New York, NY 11242

7

8   BY:   WILLIAM E. BANEY, ESQ.

9

10

11   LAW OFFICES OF JOHN T. DZIALO

12           Attorneys for David and Lesley Kinworthy

13           200 West Santa Ana Blvd.

14           Suite 990

15           Santa Ana, CA 92701

16

17   BY:   JOHN T. DZIALO, ESQ. (TELEPHONICALLY)

18

19

20   LAW OFFICES OF RICHARD SAX

21           Attorney for Julio Solano

22           448 Sebastopol Avenue

23           Santa Rosa, CA 95401

24

25   BY:   RICHARD SAX, ESQ. (TELEPHONICALLY)

1

2  MUNGER, TOLLES & OLSON, LLP

3       Attorneys for Berkshire Hathaway Inc.

4       355 South Grand Ave.

5       35th Floor

6       Los Angeles, CA 90071

7

8  BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.                    10

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.  We're here

3  in Residential Capital, number 12-12020.  Mr. Goren?

4          MR. GOREN:  Thank you, Your Honor.  Todd Goren,

5  Morrison & Foerster, on behalf of the debtors.  The first

6  eleven and a half pages of the agenda or so were all adjourned

7  to a later hearing date.  So the first item going forward on

8  the agenda is on page 12.  And that is the status conference on

9  the debtors' motion for a nonconsensual use of cash collateral.

10         THE COURT:  Yeah.

11         MR. GOREN:  The debtors filed that motion in early

12 April seeking nonconsensual use of cash collateral solely to

13 pay for those costs that the debtors believe are necessary to

14 preserve and monetize the lenders' remaining collateral.

15         One objection has been filed to date by UMB Bank,

16 which is trustee for the junior secured bonds, in which they

17 sought payment of the trustee's fees and expenses.  We've been

18 able to resolve that objection by agreeing to pay UMB's only

19 fees.  We will include that in the order.  We didn't agree to

20 pay any UMB's professional fees but we will pay the trustee's

21 fees.

22         Citi also filed a response clarifying that they still

23 believe they're owed a default rate interest because we made a

24 statement in the motion that we paid Citi off in full.  That's

25 not really an issue for this specific hearing.  They just

1  wanted to get that out there on the record.  That will be dealt

2  with at some point in the future as necessary.

3          The motion was originally scheduled to be heard today

4  but in order to accommodate discovery requests by the junior

5  secured bonds, we consensually agreed to move it out to the

6  14th of May.  Your Honor entered an order on the -- I believe

7  it was Friday with the scheduling order and the extension of

8  cash collateral to that time.

9          Absent a consensual resolution, my understanding is

10 that the junior secured bonds will object to the motion.  My

11 understanding of their position is that they will argue that

12 because of the debtors' prior 506(c) waiver in the previous

13 cash collateral order and the substantial unencumbered cash

14 held by the debtors that we will -- are required to use that

15 cash to monetize and preserve their collateral for the purposes

16 we were seeking to use it in the motion rather than using their

17 cash collateral for that purpose.

18         We're continuing to negotiate with them.  I'm hopeful

19 we'll be able to reach a consensual resolution but, if not, the

20 parties are proceeding.

21         THE COURT:  Anybody want to be heard for the junior

22 secured noteholders?

23         MR. SHORE:  Good morning, Your Honor.  Chris Shore

24 from White & Case on behalf of the ad hoc group of junior

25 secured notes.  We are proceeding, as Mr. Goren said, in both a

1    consensual and nonconsensual path.  The FAs have been talking

2    back and forth to try to come up with an agreed upon number

3    that everybody believes is reasonable for the monetization of

4    remaining collateral that is not cash yet.  We're hopeful we

5    can get there.

6           To the extent we can't get there, we served document

7    requests and a deposition -- or deposition notices on the

8    debtors.  They provided us some documents.  We're trying to

9    figure out whether the production is complete at this point.

10   We had scheduled two depositions.  One is going to be completed

11   this week.  One has been adjourned.  It's in the DA due to a

12   witness availability.  We're trying to figure out what's going

13   to happen with that, whether they're going to provide us a

14   different witness or what not.  If we have to come back to the

15   Court, we'll come back to the Court.  But hopefully, we can

16   work through that.

17          We've also served discovery on the committee.  They

18   have taken the position that they're not going to respond at

19   this point.  We had a meet and confer.  We're going to try to

20   do that this afternoon again.  If there are any issues with

21   that, we'll come back to the Court but hopefully there won't be

22   any.

23          So we're just proceeding on a path towards consensus.

24   If we can't get there then we'll file an objection and we'll be

25   before the Court.

1          THE COURT:  Okay.  Thank you.  Anybody else want to be

2   heard?  Committee want to be heard on this?  Mr. Zide?

3          MR. ZIDE:  Stephen Zide from Kramer Levin on behalf of

4   the committee.  The committee's view is that this motion should

5   be largely noncontroversial.  Ninety-five percent of these

6   assets of the non-cash assets of the debtors' estates are

7   encumbered by the AFI revolver and the LOC.  That's putting

8   aside everything challenged.  These assets need to be

9   liquidated and the debtors' proposed use of cash collateral is

10  limited in purpose only to preserving and maximizing the value

11  of these assets.

12         The UCC is largely supportive of the relief although

13  we do have some issues with the proposed order and we intend to

14  articulate those when we file our papers on the objection

15  deadline.

16         As Mr. Shore noted, we've also been served with

17  discovery.  We don't think discovery of the committee is

18  appropriate.  We have a meet and confer this afternoon.  And if

19  there are issues that develop with that, we will come back to

20  the Court.

21         THE COURT:  Okay.  My only concern is I don't want to

22  get caught short.  If there's going to be a contested hearing,

23  I want to know.  Do we have any dates between now and May 14th,

24  Mr. Goren?

25         MR. GOREN:  Your Honor, we have the May 7th hearing

1   date on exclusivity and the UCC's STN motion.  The objections

2   are due on the 6th.

3          THE COURT:  Okay.

4          MR. GOREN:  So I'm hopeful by that time we'll have a

5   pretty good sense of whether we're proceeding.  And if we think

6   we're going to need an evidentiary hearing such that we

7   couldn't use May 14th then we would have to push it out.  So

8   we'll aim to try to let you know at the hearing on the 7th --

9          THE COURT:  Okay.

10          MR. GOREN:  -- where things stand.

11          THE COURT:  Well, let's discuss it on the 7th and see

12   where we are.  Okay?  Thanks very much.

13          MR. GOREN:  Thank you, Your Honor.  I believe the next

14   item on the agenda is the interim fee application for Hudson

15   Cook.

16          THE COURT:  Sure.

17          MR. GOREN:  And I think someone from Hudson Cook is on

18   the phone.

19          THE COURT:  All right.

20          MR. CLARKE:  Yes.  Dana Clarke from Hudson Cook.

21          THE COURT:  Yes.  Go ahead.

22          MR. CLARKE:  Right.  So I believe that Michael

23   Driscoll of the U.S. trustee's office resolved the objections

24   to the interim fee application.  And so the resolution for a

25   portion of the expenses and a resolution of a portion of the

RESIDENTIAL CAPITAL, LLC, et al.                    15

1   objected fees -- and Michael Driscoll has, I believe, the final

2   numbers on how they resolved that.

3           THE COURT:  Mr. Masumoto from the U.S. trustee's

4   office is here.  I'll let him speak to it.  So what we're

5   talking about is the first interim fee application.  And it

6   covers the period May 15th, 2012 through December 31, 2012.  Go

7   ahead, Mr. Masumoto.

8           MR. MASUMOTO:  Thank you, Your Honor.  Your Honor,

9   that's correct.  We did reach a settlement.  And the figures

10  are, with respect to the fees, there was a reduction of 2,766

11  dollars.  And with respect to expenses, there was a reduction

12  of $320.97.

13          We did reach an agreement with Hudson Cook that in

14  future applications they will arrange their time records in

15  project categories as opposed to the chronological order in

16  their first interim.

17          THE COURT:  Anybody else wish to be heard with respect

18  to this issue?  I'm just checking my notes to see whether I

19  have separate issues to raise.

20      (Pause)

21          THE COURT:  All right.  I'm going to go ahead and

22  approve the Hudson Cook first interim fee application with the

23  adjustments agreed upon with the Office of the United States

24  Trustee.

25          MR. MASUMOTO:  Thank you, Your Honor.

RESIDENTIAL CAPITAL, LLC, et al.                    16

1              THE COURT:    Thank you very much, Mr. Masumoto.    Thank
2     you very much, counsel.
3              MR. CLARKE:    Thank you.
4              UNIDENTIFIED SPEAKER:    Your Honor, may we be excused?
5              THE COURT:    Yeah, certainly.    Anybody else who wants
6     to be excused certainly can at this point.
7              MR. NEWTON:    Your Honor, James Newton, Morrison &
8     Foerster, on behalf of the debtors.    The next item on the
9     agenda is the motion of Shane Haffey for clarification of the
10    automatic stay.    This is at docket number 1227.
11             I don't know that I heard Mr. Haffey's counsel on the
12    phone but it's their motion so I'll turn it over to them if
13    they're on the phone.
14             THE COURT:  All right.  Is anyone on the phone for Mr.
15    Haffey?  All right.  No appearance.  Just bear with me a
16    second, Mr. Newton.
17             Go ahead, Mr. Newton, because, as I understand it, the
18    debtors agreed to a partial lifting of the stay to permit
19    appeals to go forward.  Why don't you go ahead and explain?
20             MR. NEWTON:  Sure, Your Honor.  You know, we've
21    actually given, or suggested, to Mr. Haffey a couple of
22    options.  As we set forth in our opposition, there are six
23    actions related to this property.
24             THE COURT:  Yeah.  There's no shortage of actions.
25             MR. NEWTON:  Four of them do not involve debtors and

1    therefore we don't believe that the --

2          THE COURT:  Right.

3          MR. NEWTON:  -- stay has any implication.  The

4    remaining two involved an action by Mr. Haffey directly against

5    debtors.  And that action for 2 is the GMAC -- the Haffey GMAC

6    action we believe would be stayed.  In addition, the

7    foreclosure action that's pending with respect to this property

8    was brought in the name of Deutsche Bank but there were cross-

9    claims against debtors.  And so, those cross-claims, as well,

10   we believe will be stayed.

11         THE COURT:  But the Haffey GMAC action -- the appeal

12   is pending in the Sixth Circuit, correct?

13         MR. NEWTON:  Correct.

14         THE COURT:  And also with what you refer to as the

15   foreclosure action, there's an appeal pending in the Sixth

16   Circuit with respect to that.

17         MR. NEWTON:  Correct.  In fact, all of -- the only

18   thing that's remaining is appeals in the Sixth Circuit.

19         THE COURT:  Okay.  Mr. Haffey's lost everything and

20   there are appeals in the Sixth Circuit.

21         MR. NEWTON:  That's correct, Your Honor.

22         THE COURT:  Okay.  And the debtor is willing to agree

23   to lift the stay for the purposes of allowing the appeals to be

24   resolved.

25         MR. NEWTON:  Correct.

RESIDENTIAL CAPITAL, LLC, et al.                          18

1    THE COURT:  I will profess not to fully understand

2    what relief Mr. Haffey was seeking.  In any event, I have

3    reviewed the papers and the Court will grant the motion in

4    part, deny the motion in part, permit the two appeals in which

5    any of the debtors are parties -- appeals pending in the Sixth

6    Circuit to proceed.  So if you would prepare a form of order to

7    accomplish that, I would appreciate it.

8           MR. NEWTON:  All right.

9           THE COURT:  Okay?

10          MR. NEWTON:  Thank you, Your Honor.

11          THE COURT:   Thank you very much, Mr. Newton.

12          MR. NEWTON:  I'll turn the podium over to Samantha

13   Martin.

14          THE COURT:  Sure.

15          MS. MARTIN:  Good morning, Your Honor.  The next item

16   on the agenda --

17          THE COURT:  You have to make your appearance.

18          MS. MARTIN:  Oh, sorry.  Samantha Martin from Morrison

19   & Foerster on behalf of the debtors.

20          The next item on the agenda is the motion for stay

21   relief filed by Mr. and Mrs. Kinworthy.  This is docket number

22   2660.  I believe their counsel, Mr. Dzialo, is on the phone.

23          I would just like to note, Your Honor, that the

24   parties have been negotiating a settlement of the state action

25   and we're coming close, I believe, to reaching a settlement.

1   And otherwise, as you've seen in our papers, the debtors do not

2   object to limited stay relief solely for the purposes of

3   permitting the Kinworthys to pursue their claims for monetary

4   relief in the state court action so that they can liquidate

5   their claims in the case that we're --

6           THE COURT:  All right.  The case -- the state court

7   case is close to trial, is that right?

8           MS. MARTIN:  Yes, Your Honor.

9           THE COURT:  Okay.  All right.  I'll hear from the

10  Kinworthys' counsel.

11          MR. DZIALO:  Yes, Your Honor.  This is John Dzialo on

12  behalf of the plaintiffs.

13          THE COURT:  Just say your last name again.

14          MR. DZIALO:  Dzialo, spelled D-Z-I-A-L-O.

15          THE COURT:  Okay.  Go ahead.

16          MR. DZIALO:  The plaintiffs in this action are just

17  wishing to get a final figure on this so we can submit a claim

18  in the bankruptcy.  We are close to a settlement but I think by

19  a partial lifting of the stay allowing this to proceed to trial

20  should be the impetus that we need to get it finally settled.

21          THE COURT:  When is the trial scheduled for?

22          MR. DZIALO:  We don't have a date at the present time,

23  Your Honor, because all of the case management conferences that

24  we've appeared at, the Court just kicks this back because of

25  the bankruptcy stay.

1       THE COURT:  Okay.  So this is in Riverside County

2  Superior Court, is that correct?

3       MS. MARTIN:  Yes.

4       MR. DZIALO:  That is correct.

5       THE COURT:  All right.  So I take it then you and the

6  debtors' counsel are in agreement on the form of order that

7  should be entered to lift the stay to permit the action to

8  proceed if necessary, hopefully not necessary, but if necessary

9  to fix the amount of your claim, is that correct?

10      MR. DZIALO:  That is correct, Your Honor.

11      THE COURT:  That's fine.  I'll grant the motion to

12 that extent.  Have you worked out a form of order with counsel?

13      MS. MARTIN:  We submitted one with our response.  So

14 if Mr. Dzialo has no issues with it then --

15      THE COURT:  Mr. Dzialo, are you satisfied with the

16 form of order that was submitted with the debtors' response?

17      MR. DZIALO:  Yes, Your Honor, I am.

18      THE COURT:  Okay.  All right.  Then that'll be

19 entered.  Thank you very much.

20      MS. MARTIN:  Thank you.

21      MR. DZIALO:  Thank you.

22      THE COURT:  All right.

23      MS. MARTIN:  And I believe with that, that was our

24 last matter for the -- oh.  There's one more.  Sorry.

25 Apologies.  Mr. Rosenbaum.

RESIDENTIAL CAPITAL, LLC, et al.                    21

1        MR. ROSENBAUM:  Good morning, Your Honor.  Norm

2   Rosenbaum for the debtors -- Morrison & Foerster.

3        Your Honor, the next matter on the agenda is the

4   motion for permission to extend the deadline for Julio Solano

5   to file a proof of claim.  It's docket number 2935.  I believe

6   Mr. Sax, counsel for Mr. Solano, has made a telephonic

7   appearance.

8        Your Honor, I just want to advise you that this matter

9   has been adjourned.  Both the motion to file a late proof of

10  claim and the underlying motion for relief from the stay have

11  been adjourned several times.  We reached out on several

12  occasions to see if a consensual resolution could be reached

13  for Mr. Solano in this matter for several weeks.  And after

14  several attempts, last night, we finally saw some e-mails from

15  Mr. Sax suggesting that he would be amenable to engaging in

16  discussions to see if there was a resolution for this.  We

17  would be prepared to do so provided Mr. Sax responds to any

18  offers we make in a very timely basis with authority from his

19  client and that all the matters currently pending before the

20  Court including the motion for relief, the motion to file the

21  late proof of claim and the underlying -- and the adversary

22  that was commenced on behalf of Mr. Solano will be stayed

23  pending those negotiations.  We would agree to adjourn this

24  matter to June 12th.

25        THE COURT:  All right.  Mr. Sax, you want to be heard?

1    MR. SAX:  Thank you, Your Honor.   I would like to

2   adjourn those matters to discuss these possibilities with

3   counsel.   There have been some events in Mr. Solano's life just

4   in the last few days that changes our perspective about this

5   matter.  So --

6    THE COURT:  All right.  I'm going to adjourn the

7   matters until June 12th.  It's very important, Mr. Sax, that

8   you communicate promptly with Mr. Rosenbaum or his colleagues

9   and see whether you can reach a resolution to this.

10    As I understand it, your state court action against

11   GMAC Mortgage was filed on June 7th, 2011.  I think I followed

12   the saga of the Solano's attempt to pay the amount that was due

13   and checks returned, et cetera.  I won't go through that whole

14   narrative.  And I understand that, as you know, the bar date in

15   this case was November 9th, 2012.  You filed the late proof of

16   claim on January 10th, 2013.  So I understand the basic

17   background.

18    We'll adjourn this, as I say, till June 12th.  You

19   ought to really try your best to see if you can reach a

20   resolution before then.  Okay?

21    MR. SAX:  We will, Your Honor.  Is it possible this

22   could be held on June 5th as I am in a jury trial on June 12th?

23    THE COURT:  No.  The problem, Mr. Sax -- and I

24   appreciate that.  What time do you start trial?

25    MR. SAX:  It would be 11:30 your time.  So --

RESIDENTIAL CAPITAL, LLC, et al.                           23

1          THE COURT:  Well, we can -- we'll put you on first on

2     the calendar.  You can participate by telephone.  The problem

3     is I do omnibus hearing days in --

4          MR. SAX:  No, no, no.  That's fine.

5          THE COURT:  And so we'll take you first.  You can do

6     it by phone.  You can do it from the phone at the courthouse or

7     your office whichever is more convenient.

8          MR. SAX:  Your Honor, that will be fine.

9          THE COURT:  Okay.  Thank you very much, Mr. Sax.

10         MR. ROSENBAUM:  Your Honor, just one other --

11         THE COURT:  Go ahead, Mr. Rosenbaum.

12         MR. ROSENBAUM:  -- clarifying point.  The Solano

13    adversary proceeding is subject to the adversary proceeding

14    procedures.

15         THE COURT:  Right.

16         MR. ROSENBAUM:  And we'd just like to put those in

17    abeyance.

18         THE COURT:  All right.  The Court agrees to hold in

19    abeyance the case management procedures as applied to the

20    Solano adversary proceeding till we can -- we'll revisit that

21    on June 12th.  Okay?

22         MR. ROSENBAUM:  Thank you, Your Honor.

23         THE COURT:  Thank you very much.

24         MR. SAX:  Thank you, Your Honor.

25         THE COURT:  Thank you very much, Mr. Sax.  Go ahead,

RESIDENTIAL CAPITAL, LLC, et al.                    24

1    Mr. Rosenbaum.

2              MR. ROSENBAUM:  Your Honor, the next matter on is

3    number 8.  It's at page 22 of the agenda.

4              THE COURT:  Just give me a chance to flip through it

5    again.  Okay.  Go ahead.

6              MR. ROSENBAUM:  This is the motion for order

7    permitting MED&G Group LP to file a proof of claim.  It's

8    docket number 3238.

9              THE COURT:  Yes.

10             MR. ROSENBAUM:  I will cede the podium to counsel for

11   MED&G.

12             THE COURT:  All right.

13             MR. BANEY:  Good morning, Your Honor.  William Baney

14   of Wenig Saltiel for the movant.  Your Honor, Rule 9006(b)(1)

15   as pointed out in both movant's papers and the objection by the

16   debtors is, at bottom, an equitable one.  The underlying case,

17   as you may --

18             THE COURT:  Your problem is that the Circuit has set a

19   very high bar in Chapter 11 cases for the Court to permit late

20   claims.

21             MR. BANEY:  Correct, Your Honor.  Movants urge the

22   Court to follow In re Grand Union Company, which is a Delaware

23   circuit court, which stated that when debtors are aware that

24   movant is represented by counsel throughout pre-petition and

25   upwards into filing a petition, that counsel should be served.

1   In this case, the objection by the debtors did not address the

2   issue that counsel is not served in the underlying case in

3   California.  All of the service that was objected to -- well,

4   we brought it up in our moving papers that counsel for the

5   movant in the underlying case was not served.  And it's our

6   position that counsel should have been served and therefore

7   there was no adequate notice.

8            THE COURT:  Were your clients aware -- were your

9   clients or any of their counsel aware of the ResCap bankruptcy

10  before the bar date?

11           MR. BANEY:  Yes, Your Honor.  They were aware.  And

12  also with talking with the underlying motion -- or the

13  underlying actions' counsel, they did receive a notice of

14  pendency or a notice of this case being initiated.  And they

15  also received a notice that there would be a bar date.  But

16  they never received anything stating what the bar date was.

17  The notice that they received said hold off on filing a proof

18  of claim until further notice and no further notice was given.

19           THE COURT:  What notice did they receive telling them

20  to hold off --

21           MR. BANEY:  I --

22           THE COURT:  Wait.  Let me finish my question.

23           MR. BANEY:  Sorry.

24           THE COURT:  Don't interrupt.

25           MR. BANEY:  Sorry.

1          THE COURT:  What notice did they receive telling them

2     to hold off on filing a proof of claim?

3          MR. BANEY:  Your Honor, I don't have that document.  I

4     believe it may have been --

5          THE COURT:  This was a notice from the debtor telling

6     somebody not to file a proof of claim?  I can't believe it.

7          MR. BANEY:  Well, I'm not positive of the wording.

8     This is just from --

9          THE COURT:  I mean, maybe their counsel --

10          MR. BANEY:  -- conversations with the underlying

11     case's counsel.

12          THE COURT:  I mean, look, I want to be clear about

13     this.  Are you representing that the debtors' counsel advised

14     your client not to file a proof of claim?

15          MR. BANEY:  No, Your Honor.  I'm not making that

16     representation.  I'm saying what I heard from -- what the

17     impression was on the underlying case's counsel --

18          THE COURT:  I really don't want to know about --

19          THE COURT:  -- not saying that debtor --

20          THE COURT:  I'm really not interested in what

21     impressions the debtors' counsel in the underlying case may

22     have had.  If what you're telling me is that through specific

23     words, anybody representing the debtors in the underlying case

24     or in this case advised your client's counsel that they should

25     hold off on filing a proof of claim, I want to know that.  But

RESIDENTIAL CAPITAL, LLC, et al.                    27

1    if the counsel in the case came to an erroneous impression that

2    your client should hold off -- I mean, frankly, I hope their

3    malpractice insurance is paid up.

4         MR. BANEY:  Your Honor, I don't think that there was

5    any affirmative representation by debtors that -- not to file.

6    I think what happened was there was a pre-bar date order notice

7    given to counsel in the underlying case but there was never

8    anything affirmatively stating what the bar date was.

9         THE COURT:  You know, but once -- just bear with me a

10   second.

11      (Pause)

12        THE COURT:  Are you familiar with the Second Circuit's

13   decision in In re Medaglia, 52 F.3d 451 --

14        MR. BANEY:  No, Your Honor.

15        THE COURT:  -- (2nd Cir. 1995)?

16        MR. BANEY:  No, Your Honor.

17        THE COURT:  Because the Second Circuit in Medaglia

18   held that actual knowledge of a bankruptcy proceeding is

19   adequate substitute for a formal notice of the bar date even

20   where the creditor was not scheduled by the debtor.

21        So the arguments you raise for -- and the Second

22   Circuit has made clear the Pioneer factors created an extremely

23   high bar to a late proof of claim.

24        MR. BANEY:  I mean, we --

25        THE COURT:  In the circum --

1          MR. BANEY:  -- understand that.

2          THE COURT:  Just let me finish this thought.  I'm

3    sorry.  You thought I was done.  I understand that.

4          In the circumstance where you acknowledge that your

5    client and its counsel in the state court knew of the

6    bankruptcy case, it's a particularly difficult case to get the

7    Court to somehow apply equitable principles.

8          The other thing -- and this is what I've -- in reading

9    the papers, it's not as if your client and affiliates of your

10   client weren't served.  The claims agent's affidavit of service

11   show multiple service of the bar date notice.  And I know your

12   client takes the position it didn't receive it.  I could

13   understand it if -- I won't say I understand it.  The issue

14   would get more complicated -- more difficult for me if there

15   was one single notice and maybe there was an argument it wasn't

16   delivered and we'd get into an evidentiary issue.  And there

17   certainly is the mailbox presumption that applies in the Second

18   Circuit.  So again, the affidavit of service that it was mailed

19   creates the presumption that it was received in order to

20   overcome the presumption, you've got a burden to overcome.

21   Maybe you could get close to doing it if there was just one bar

22   date notice that was mailed.  Here, there were bar date notices

23   mailed to, what, I don't know, MED & Base Group LP at 2900

24   Mendocino Avenue, Suite 101, Santa Rosa, California; Praxis

25   Capital, 2801 T Street, Sacramento 95816.  There were multip --

1  it's obvious -- it's in the debtors' papers about the multiple

2  mailings.  How is it I'm to -- how do you overcome the mailbox

3  rule here when there are so many notices that were mailed and

4  nothing was done and what you're telling me is your client's

5  counsel in California had the "impression" that they could hold

6  off filing a proof of claim?  All right?  That's what I'm

7  really struggling with.

8        MR. BANEY:  Right.  And, Your Honor, we're not denying

9  that service was made.  We can't affirmatively say that we did

10 receive it because, talking to our client, there was no record

11 of the bar date notice from any of the places.  That being

12 said, it's a really -- like you said, it's a very tough

13 presumption to overcome that service was sufficient.

14       If I may harp back to the Grand Union case, in that

15 case, the judge felt that if it's something that's mailed to

16 someone who doesn't have adequate knowledge that it should be

17 served on counsel.  And here, I understand --

18       THE COURT:  But your counsel -- are you telling me

19 your counsel didn't -- well, go ahead.  I'm sorry.  I

20 interrupted you.

21       MR. BANEY:  No.  My point is just that our argument

22 with the -- I believe it's the T Street where we said it may

23 have been served.  We didn't receive it.  And that office has

24 very little communi -- not very little but their own inner

25 workings to where they determine if the stuff should go on.

1    And these people are acquisitions only.  They don't deal with

2    any litigation.  So the fact that they may have received --

3              THE COURT:  What about Mendocino Avenue?

4              MR. BANEY:  The Mendocino Avenue -- the movant moved

5    from that place over a year ago.  All of the companies moved to

6    the 333 --

7              THE COURT:  Could I -- let me ask you this.  Did your

8    client -- did counsel file a notice of appearance in this case?

9              MR. BANEY:  No.

10             THE COURT:  All right.  They moved from that address

11   when?

12             MR. BANEY:  Over a year ago, sometime in 2012.

13             THE COURT:  And was the mail forwarded?

14             MR. BANEY:  I can't answer that for sure, Your Honor.

15   And that being said, mail forwarding only lasts so long so -- a

16   forwarding address probably would be helpful.

17             THE COURT:  All right.  Let me hear from the --

18   anything else you want to add?

19             MR. BANEY:  No.  Can I reserve the right to a

20   rebuttal?

21             THE COURT:  Yes.

22             MR. BANEY:  Thank you.

23             THE COURT:  Certainly.  Let me hear from debtors'

24   counsel.  Mr. Rosenbaum?

25             MR. ROSENBAUM:  Norm Rosenbaum, Morrison & Foerster,

1  for the debtors.

2          Your Honor, we believe there's more than sufficient

3  undisputed evidence that the bar date notice was mailed on at

4  least three valid addresses.  I would add that one of them, the

5  333 Mendocino Ave., Suite 110, Santa Rosa, California, which

6  movant, in their own papers, admit is the main address, a bar

7  date notice was served on an entity, Pinnacle Equity Group, at

8  that address.  We believe that's an affiliate.  Don't have

9  evidence to put into the record on that but we understand that

10 to be an affiliate.

11         Your Honor, we don't believe that the movant has

12 demonstrated excusable neglect here under Pioneer and its

13 progeny.  Its their burden and they haven't met it.  And as

14 Your Honor noted, the bar date notices were deemed received.

15 We'd cited to Alexander's and similar cases in our papers.

16         Your Honor, I would just note one thing.  Movant is

17 not entirely without remedy here.  We are prepared -- and

18 there's also a motion for relief from the stay on for the next

19 hearing date.  We would be prepared to stipulate to their

20 equitable relief not their monetary relief.  So they're not

21 without their ability --

22         THE COURT:  So they --

23         MR. ROSENBAUM:  -- to protect themselves --

24         THE COURT:  They bought a --

25         MR. ROSENBAUM:  -- in the underlying action.

RESIDENTIAL CAPITAL, LLC, et al.                    32

1          THE COURT:  -- property in foreclosure.  The former

2   owner of the property has brought an action to quiet title and

3   set aside the sale, correct?

4          MR. ROSENBAUM:  That's correct, Your Honor.

5          THE COURT:  And what's the status of that, do you

6   know?

7          MR. BANEY:  I can --

8          MR. ROSENBAUM:  I'll defer to counsel --

9          THE COURT:  Okay.

10          MR. ROSENBAUM:  -- but I believe that matter is on for

11   trial in the next few weeks.  There is a mandatory mediation in

12   about a week, a week and a half.

13          THE COURT:  Okay.

14          MR. ROSENBAUM:  But if that's incorrect --

15          MR. BANEY:  William Baney, Wenig Saltiel, for the

16   movant.

17          Yeah.  There's a -- I think trial scheduled for May

18   30th to go forward.  The movant has cross-complaints for

19   equitable relief to quiet title.  And the underlying plaintiffs

20   have an action to set aside the trustee's deed.  And movant's

21   four causes of action, two of them are equitable for set

22   aside -- or quiet title.  And then the other is the monetary

23   relief in the event that the deed is set aside.

24          Also, just to point out something that counsel

25   stated --

1          THE COURT:  What do they say the defect on the sale

2    was?

3          MR. BANEY:  I'm sorry, Your Honor?

4          THE COURT:  Do you know?  What do the plaintiffs in

5    the underlying case say the defect in the sale was?

6          MR. ROSENBAUM:  The allegations in the complaint are

7    that the plaintiffs attempted to tender the arrears and that

8    was unaccepted.  I think that's the really gravamen of their

9    complaint.

10          THE COURT:  Okay.  All right.  The Court's going to

11    rule.

12          Pending before the Court is the motion for order

13    permitting MED&G Group LP to file a late proof of claim.  It's

14    ECF docket number 3238 and it's supported by the affidavit of

15    Brian Burke.  The debtors filed an objection to the motion and

16    that's at ECF 3508.

17          The Court denies the motion for an order permitting

18    MED&G to file a late proof of claim.  MED&G Group LP purchased

19    the property located at 3735 Coffey Lane, Santa Rosa,

20    California from the debtors on or about September 13, 2010.

21    They purchased the premises for $244,144.84 which was the

22    amount of the unpaid debt outstanding from the underlying

23    mortgage.  MED&G recorded the trustee's deed upon sale which

24    displays MED&G's address as P.O. Box 5844 Santa Rosa,

25    California 95402.  See the Burke affidavit, paragraph 4.  And

1    the trustee's deed is attached as Exhibit A to the motion.

2         On August 29th, 2012, this Court entered its order

3    establishing a deadline for filing proofs of claim and

4    approving the form and manner of notice thereof.  That's at ECF

5    1309.  It established November 9th, 2012 as the general claims

6    bar date.  The Court subsequently entered an order extending

7    deadline for filing proofs of claim.  That's at ECF 2093 and

8    extended the bar date to November 16th, 2012.

9         In connection with the action that's pending in

10   Superior Court in the county of Sonoma, the plaintiffs in that

11   case sought relief from this Court, relief from the automatic

12   stay, and the motion was settled by stipulation allowing the

13   Inoues to proceed to trial on August 17th -- the stipulation

14   was approved on August 17th, 2012.  It's at ECF 1206.

15        MED&G asserted that it filed a motion for relief from

16   stay on November 27th, 2012.  That's at ECF docket 2274.  They

17   said they did so without knowledge of the bar date.  And they

18   did so to permit the action to proceed to trial in the Inoue

19   action.  The motion for relief seeks relief from the automatic

20   stay to pursue claims including monetary damages against GMAC

21   Mortgage.

22        The present motion was filed on March 18th, 2013.

23        The affidavit of service with respect to the bar date

24   notice sets forth the notice was sent to, among others, MED&G

25   Group LP, 3104 O Street, #109, Sacramento, California 95816;

1    MED & Base Group LP, 2900 Mendocino Avenue, Suite 101, Santa

2    Rosa, California; and Praxis Capital, 2801 T Street,

3    Sacramento, California.

4         MED&G complains that the notice was not served upon

5    its counsel in the California action even though they say

6    debtors were well aware that MED&G was represented by counsel

7    in the case.

8         In cases where creditors have failed to file claims

9    before the bar date despite having notice, Bankruptcy Rule

10   9006(b)(1) gives the court the discretion to enlarge the time

11   to file claims where the failure to act was the result of

12   excusable neglect.  See In re Lehman Brothers Holdings Inc.,

13   433 B.R. 113 at 119 (Bankr. S.D.N.Y. 2010).  The Supreme Court

14   has interpreted excusable neglect to be a flexible standard,

15   one that includes "inadvertence, mistake or carelessness as

16   well as by intervening circumstances beyond the party's

17   control."  I'm quoting from the Lehman decision -- Judge Peck's

18   Lehman decision:  "However, the determination is, at bottom, an

19   equitable one that must take into account all relevant

20   circumstances surrounding the party's omission."  See Pioneer;

21   that's 507 U.S. 380 at page 395 (1993).

22        The Pioneer court established four factors to assist

23   bankruptcy courts in evaluating excusable neglect:  (1)the

24   danger of prejudice to the debtor; (2)the length of the delay

25   and its potential impact on judicial proceedings; (3)the reason

1    for the delay including whether it was within the reasonable

2    control of the movant; and (4)whether the movant acted in good

3    faith.  See Pioneer, 507 U.S. at 395.

4           "The Second Circuit" -- this is a quote from Lehman:

5    "The Second Circuit strictly observes bar dates and has adopted

6    what has been characterized as a hard line in applying the

7    Pioneer test."  Meaning, that this Court should focus its

8    analysis "primarily on the reason for the delay and

9    specifically whether the delay was in the reasonable control of

10   the movant".  See Lehman, 433 B.R. 119-20.

11          The Second Circuit has noted that "The equities will

12   rarely, if ever, favor a party who fails to follow the clear

13   dictates of a court rule" and that "[w]here the rule is

14   entirely clear, we continue to expect that a party claiming

15   excusable neglect will, in the ordinary course, lose under the

16   Pioneer test."  See In re BHS&B Holdings LLC, 453 B.R. 153 at

17   163 (Bankr. S.D.N.Y. 2010).  Instead, "[o]nly in unusual

18   circumstances where ignorance of the rules or mistakes

19   construing the rules constitute excusable neglect".  That's

20   BHS&B at page 168.

21          Additionally, the Second Circuit has held in a case

22   that I referred to earlier, In re Medaglia, 52 F.3d 451 at 455

23   (2nd Cir. 1995), that actual knowledge of a bankruptcy

24   proceeding is an adequate substitute for formal notice of the

25   bar date even where the creditor was not scheduled by the

1   debtor.  Here, it's acknowledged that the creditor was well

2   aware of the bankruptcy proceeding.  Counsel has referred to

3   "the impression" of MED&G's state court counsel that they

4   didn't have to file a proof of claim.  To me, that establishes

5   knowledge that, one, you do have to file proofs of claim in

6   bankruptcy cases and they certainly had not pointed to

7   anything, any representation, statement, writing by the debtor

8   that would excuse MED&G from filing a timely proof of claim.

9            Under the circumstances, the Court concludes that the

10  moving party has failed to establish cause as required under

11  the Pioneer test and its progeny for permission to file a late

12  claim.

13           With respect to the lift stay, which is not on for

14  today, Mr. Rosenbaum, when is that on for?

15           MR. ROSENBAUM:  Your Honor, it's on for May 14th

16  but --

17           THE COURT:  What I would encourage you to do -- what

18  you've indicated is the debtor doesn't object to lifting the

19  stay to permit the matter to go forward in respect to the

20  equitable relief.  I would urge you to see if you can reach a

21  stipulation with counsel for MED&G, submit it to chambers -- if

22  you can agree on it, submit it to chambers and I'll approve it

23  if it's consistent with what has happened in other similar

24  kinds of proceedings that'll make it unnecessary to go forward

25  with the motion to lift the stay.

1          MR. ROSENBAUM:  Your Honor, Mr. Newton just informed
2  me we actually did stipulate to that on the --

3          THE COURT:  Okay.  And did I approve it?

4          MR. ROSENBAUM:  Yes, you did, Your Honor.

5          THE COURT:  There's so much paper that comes through.
6  I apologize if I can't keep --

7          MR. ROSENBAUM:  I apologize for not raising it
8  earlier.

9          THE COURT:  Okay.  All right.

10          MR. ROSENBAUM:  But we've already stipulated to that.

11          THE COURT:  So that's resolved then.

12          MR. ROSENBAUM:  Yes, Your Honor.

13          THE COURT:  Okay.  So that's going to be the Court's
14  ruling.  Mr. Rosenbaum, please submit an order that for the
15  reasons stated by the Court, the motion to file a late claim is
16  denied.

17          MR. ROSENBAUM:  Thank you, Your Honor.  Will do so.

18          THE COURT:  Thank you.

19          MR. BANEY:  Thank you, Your Honor.

20          MR. ROSENBAUM:  I'm looking around but I think that
21  concludes the docket for this morning.

22          THE COURT:  All right.  Anybody else have anything
23  they want to raise today?  All right.  We're adjourned.  Thank
24  you very much.

25          MR. ROSENBAUM:  Thank you, Your Honor.

1          (Whereupon these proceedings were concluded at 10:47 AM)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                    I N D E X

3

4                                 R U L I N G S

5  DESCRIPTION                                              PAGE     LINE

6  Hudson Cook's first interim fee application        15       22

7  subject to adjustments agreed upon with the

8  Office of the United States Trustee

9  Motion of Shane Haffey for enforcement of the      18        3

10 automatic stay against the debtors granted in

11 part and denied in part to permit two appeals

12 pending in Sixth Circuit to proceed

13 Motion for stay relief filed by Mr. and Mrs.       20       19

14 Kinworthy granted

15 For reasons stated on the record by the            38       16

16 Court, motion of MED&G Group LP to file a

17 Late proof of claim denied

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   LISA BAR-LEIB (CET**D 486)

11   AAERT Certified Electronic Transcriber

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  May 1, 2013

18

19

20

21

22

23

24

25