Hearing Date and Time: May 7, 2013 at 10:00 a.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Naomi Moss

*Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- )
   In re:                                                              )  Case No. 12-12020 (MG)
                                                                       )
   RESIDENTIAL CAPITAL, LLC, et al.,                                   )  Chapter 11
                                                                       )
                                                       Debtors.        )  Jointly Administered
                                                                       )
---------------------------------------------------------------------- )

**DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' MOTION FOR THE
ENTRY OF AN ORDER FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO
FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") submit this reply (the "Reply") to responses[1] to the *Debtors' Motion for the Entry of*

*an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit*

---

[1] *Objection to Debtors' Motion to Extend Plan Filing Exclusivity Period* [Docket No. 3551] (the "Nora Objection"); *Objection of Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3553] (the "Ad Hoc Objection" and together with the Nora Objection, the "Objections"); *Response to Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3568] (the "Wilmington Trust Response"); *Statement of the Official Committee of Unsecured Creditors with Respect to the Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3569] (the "Committee Statement" and collectively with the Wilmington Trust Response and Objections, the "Responses").

ny-1088368

*Acceptances Thereof* [Docket No. 3485] (the "Motion").[2]  In further support of the Motion and in response to the Objections, the Debtors submit the supplemental declaration[3] of Lewis Kruger, Chief Restructuring Officer of the Debtors (the "Supplemental Kruger Declaration") and the Declaration of William J. Nolan (the "Nolan Declaration"), filed contemporaneously herewith. The Debtors respectfully allege as follows:

**REPLY**

1.  The Debtors' request to continue plan exclusivity is supported by the Creditors' Committee and its members. The only economic stakeholder to object to the Debtors' retention of exclusivity, the Ad Hoc Group of Junior Secured Noteholders' (the "Ad Hoc Group"),[4] has done so to promote their undersecured position and transform that position – through an attempt to gain control of these cases – into one that is oversecured and pays them postpetition interest. That the Ad Hoc Group seeks to serve its interest only – to the exclusion of all other creditors – is evident from the statements made in the Ad Hoc Objection. The Ad Hoc Group displays remarkable cognitive dissonance in its objection by raising concerns regarding administrative insolvency, while at the same time demanding hundreds of millions of dollars in postpetition interest. As the Court noted at the last exclusivity hearing, the Ad Hoc Group's argument "rings a little hollow"[5] because the only plan it has proposed seeks to pay the Junior Secured

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] On February 19, 2013, the Debtors filed the *Declaration of Lewis Kruger in Support of Debtors' Motion for the Entry of an Order Further Extending their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3486].

[4] The most recent statement pursuant to rule 2019 of the Federal Rules of Bankruptcy Procedure on behalf of this group was filed almost a year ago [Docket No. 488] and has not been amended to reflect any changes to this group. The Debtors' advisors believe that the members of this group has changed materially, and thus pursuant to rule 2019(d) the Ad Hoc Group was required to file a verified supplemental statement before it can be heard on the Ad Hoc Objection.

[5] "So it does – I mean, it rings a little hollow when – I mean, because look, if the debtor got just pure exclusivity, nothing that the Committee negotiated with them, there'd be absolutely nothing that would stop you from going to the debtor – going to Mr. Kruger, now that he's the CRO, and saying, look, here's the plan outline, the proposed term sheet of what not only are the ad hoc noteholders prepared to support, but we believe would garner other creditor support for the following six reasons." Third Exclusivity Transcript at 42:15-23.

2

ny-1088368

Noteholders postpetition interest – a plan that has absolutely no support among any other creditors.

2. Conversely, the Debtors, led by Mr. Kruger, are in the midst of negotiating the terms of a Chapter 11 plan with substantial creditor support. The Debtors continue to be the best driver for the Chapter 11 plan process and are the only party with fiduciary responsibilities to all creditors in these cases. The progress made in mediation and resulting support for a further extension of exclusivity should convince the Court that cause exists to extend exclusivity as requested herein. As the Debtors, led by Mr. Kruger, have made substantial progress in moving toward a plan thus far, termination of exclusivity would only undermine that progress by leading to the inevitable filing of several competing unconfirmable plans (or at least one that has no creditor support and is not confirmable). Such potential chaos would cause greater divide among creditors and excessive fees, none of which would be in the best interests of the Debtors' estates or stakeholders.

3. At the last exclusivity hearing, the Debtors committed to make substantial progress in resolving major plan issues that stand in the way of achieving a consensual plan. Mr. Kruger and the Creditors' Committee have worked tirelessly to bring all parties to the table and participate in mediation. Under Judge Peck's watch, the ongoing mediation has galvanized the Debtors' creditors. Although the details of the mediation process has necessarily remained confidential, it is clear from the Committee Statement that substantial progress has been made. In just 62 days since this Court last approved the Debtors' request to continue exclusivity, the Debtors and their major creditor constituencies have made tremendous strides in negotiating the terms of a Chapter 11 plan. These discussions are continuing in the ongoing mediation.

4.	Mediation and the earnest plan negotiations must be allowed to continue because these mechanisms are the best chance for achieving a consensual plan.  Notwithstanding the goal of achieving a fully consensual plan, the Debtors and key stakeholders have not limited their discussions regarding a plan with an AFI Settlement, but in fact, are also negotiating the terms of a plan without global resolution of all plan issues.  While the Debtors recognize that a time will come in the not too distant future in which the hope of a fully consensual plan must be abandoned, and alternative plan structures pursued, now is not that time.  Too much progress has been made to give up hope and resort to divisive litigation now.

5.	The Ad Hoc Group's suggestion that substantial progress has not been made is disingenuous.  In fact, in the *Omnibus Objection of the Ad Hoc Group of Junior Secured Noteholders to (I) the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates and (II) the Motion of Wilmington Trust, National Association, Solely in its Capacity as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC for an Order Authorizing it to Prosecute Claims and Other Causes of Action on Behalf of the Residential Capital, LLC Estate* [Docket No. 3563], the Ad Hoc Group states that "Given that the plan negotiations process is ongoing, and that the path of these cases is less than clear, it is too early for the Court to cede control of the estate claims to any third party."

6.	Even if mediation is not successful in the near term, the Debtors have commenced litigation seeking a resolution of the Gating Intercreditor Issues, including recently filing pleadings contesting the Ad Hoc Group's assertion that the Junior Secured Noteholders are entitled to postpetition interest.[6]

---

[6] On May 3, 2013, the Debtors commenced an adversary proceeding against UMB Bank, N.A., Wells Fargo Bank, N.A. and the Ad Hoc Group (Bankr. S.D.N.Y. Adv. Pro. No. 13-01343 [Docket No. 1] (the "Ad Hoc Complaint").

7. Mr. Kruger, the Debtors' advisors and the Creditors' Commitee continue to believe that a consensual plan is the best outcome for their estates and that 30 days to reach consensus is the best course. Certainly, the all-out warfare that would ensue as a result of the filing of the Junior Secured Noteholders' preferred plan would be far more costly. In consultation with the Creditors' Committee, and as the Debtors advised the Ad Hoc Group, the Debtors have reduced their request for an extension of their exclusive period to file a Chapter 11 plan to 30 days. That request is supported by the Creditors' Committee. The Debtors are hopeful that the ongoing mediation will result in consensus. Nonetheless, the Debtors are prepared to file a plan without global consensus prior to the expiration of the Amended Exclusivity Periods (defined below). Finally, as described in the Motion, the Debtors' satisfaction of the Adelphia Factors warrants a further extension of exclusivity. The Court should grant the Amended Exclusivity Request (defined below) and overrule the Objections.

## DEBTORS' AMENDED REQUEST FOR A FURTHER EXTENSION OF THEIR EXCLUSIVE PERIODS

8. In consultation with the Creditors' Committee, the Debtors have determined to amend their request (the "Amended Exclusivity Request") for an extension to file a Chapter 11 plan from 64 days to only 30 days, through and including June 6, 2013 (the "Amended Plan Exclusivity Period"), and an extension of the period during which the Debtors have the exclusive right to solicit acceptances thereof through and including August 5, 2013 (the "Amended Exclusive Solicitation Period" and, together with the Amended Plan Exclusivity Period, the "Amended Exclusivity Periods").[7] A revised proposed order granting the relief requested in the Exclusivity Motion, which reflects the Amended Exclusivity Request, is attached hereto as

---

[7] In connection with the Amended Exclusivity Request, the Debtors have advised the Creditors' Committee that they do not intend to file a plan without the consent of the Creditors' Committee. As stated on the record at the March 5, 2013 Hearing, the Debtors reserve the right, in the exercise of their fiduciary duties, to file a plan without the consent of the Creditors' Committee during the Amended Exclusivity Periods.

Exhibit 1. Such extension, if approved, would be without prejudice to the Debtors' right to seek further extensions of the Amended Exclusivity Periods, or the rights of any party to seek to terminate exclusivity.

## THE RESPONSES

### A. The Ad Hoc Objection

9. Despite the rhetoric espoused in the Ad Hoc Objection, no other major creditor constituency supports the Ad Hoc Group's attempt to steer the Court down a path replete with competing plans and open warfare. The Debtors believe, and the Creditors' Committee agrees, that rather than bring parties to consensus, the route proposed by the Ad Hoc Group would inevitably result in chaos.

10. The Ad Hoc Objection is also replete with fabrication. The Ad Hoc Group maintains that it "has repeatedly sought to do whatever is necessary to get a plan on file." This statement is patently false. The only plan construct the Ad Hoc Group has ever proposed is one that pays it postpetition interest. The Ad Hoc Group admonishes the Debtors for failing to heed the Court's directives, but it is actually the Ad Hoc Group that has ignored the Court's instruction that it provide the Debtors with a plan term sheet that has the support of other major creditors.[8] The reason the Ad Hoc Group has failed to present such a plan to the Debtors is because that plan does not exist. The plan the Ad Hoc Group has proposed has no other support and is unconfirmable.

11. The foundation for the Ad Hoc Group's arguments is a mistaken premise regarding its position in these cases. Throughout these cases, the Ad Hoc Group consistently

---

[8] The Ad Hoc Group provided the Debtors with a short-form term sheet for a plan. Despite the Debtors' requests in response to the Ad Hoc Group's claims that such a plan is a confirmable plan, the Ad Hoc Group has never provided the Debtors with a draft of such a plan or with any evidence that any other creditor supports their plan. Rather, the Debtors understand that no other creditors support the plan the Ad Hoc Group intends to propose.

maintains that it is entitled to postpetition interest. The Debtors previously held off in asking the Court to adjudicate this issue at the request of parties in interest and with the hopes of global resolution. Now that it appears clear that a resolution with the Ad Hoc Group is not possible, the Debtors have commenced proceedings through the Ad Hoc Complaint seeking a declaratory judgment regarding certain positions taken by the Ad Hoc Group regarding the extent and value of the Junior Secured Noteholders' security interests.

12. The analysis performed by the financial advisors to the Ad Hoc Group is fundamentally flawed because it is also based on the mistaken premise that the Ad Hoc Group is oversecured and accruing postpetition interest.[9] Moreover, the Ad Hoc Group mischaracterizes this as a risk that will lead to "administrative insolvency" when in fact the actual issue that could arise is whether the Debtors would be able to fully fund the wind-down, in accordance with the current projections without any additional litigation recoveries.[10] Regardless, the Debtors and the Creditors' Committee do not believe that the Junior Secured Noteholders are entitled to postpetition interest. Set forth in the Nolan Declaration and the related exhibit, is an analysis performed by the Debtors' financial advisors, which shows that even in the unlikely event the Junior Secured Noteholders are entitled to postpetition interest, the Debtors have substantial available cash to continue operating these cases until January 2014 without impacting their ability to conduct an orderly wind-down and without any additional recoveries. The Debtors' financial advisors have also run an alternative scenario, which shows that even if the Ad Hoc Group is correct in its assumption that the Junior Secured Noteholders are entitled to postpetition

---

[9] It is evident from the analysis that there is no cash flow risk if the Junior Secured Noteholders are not entitled to postpetition interest.

[10] The wind-down budget runs over the course of 3 years and can be modified. A reduction of the projected wind-down costs (or additional litigation recoveries) would result in additional cash available to continue operating these cases. Thus, the Ad Hoc Group's conclusion that the Debtors risk administrative insolvency is incorrect. It instead means that the existing assets in the estate (based on current recovery and expense estimates) may not be sufficient to fully fund the full 3-year wind-down in accordance with the existing wind-down budget if no additional litigation recoveries are achieved over that period.

interest, if the Debtors distribute $800 million to the Junior Secured Noteholders in June 2013[11] on account of an unchallenged portion of their secured claim, the Debtors still have enough available cash to continue operating these cases through at least May 2014 without impacting their ability to conduct an orderly wind-down and without any additional recoveries.

13. Furthermore, the Ad Hoc Group's accusation that the Debtors have refused to pursue alternative plan structures is untrue. During the recent exclusivity extension, the Debtors and the Creditors' Committee have embarked on a dual track plan process. The Debtors continue to believe that a consensual plan is the best option. However, anticipating the possibility that a consensual plan may not be possible, the Debtors are actively pursuing an alternative path with as many consensual elements as possible. The Debtors will be prepared to file an alternative plan during the Amended Plan Exclusivity Period or shortly thereafter.

14. The Ad Hoc Group attempts to downplay plan progress by incorrectly portraying the expiration of the AFI PSA as an "unraveling of any consensus." Ad Hoc Objection at 9. The AFI PSA allowed the Debtors to originate loans in bankruptcy and sell assets as part of a live loan origination and servicing platforms, which was crucial to achieving the success of the Asset Sales. Once the Asset Sales were achieved, and it was clear that the AFI PSA did not have broad creditor support, the Debtors allowed the AFI PSA to expire as requested by the Creditors' Committee. Rather than an "unraveling of any consensus," the expiration of the AFI PSA has done the opposite. In exchange for allowing the AFI PSA to terminate, the Creditors' Committee and its members agreed to engage in discussions regarding complex intercreditor issues. AFI has continued to participate in meaningful negotiations with the Debtors and their

---

[11] The Debtors intend to shortly file a motion seeking authority to partially satisfy $800 million of Junior Secured Noteholders' debt and simultaneously escrow funds to satisfy the AFI Senior Secured Credit Facility.

major stakeholders.  As described in the Motion, these discussions have resulted in substantial progress in achieving consensus on major plan issues.

15.     It is not surprising that the Ad Hoc Group is dismissive of the efforts and achievements made in the mediation.  Because the Ad Hoc Group believes that even without an AFI Settlement the Junior Secured Noteholders are oversecured, it has no reason to meaningfully participate in the mediation.  The Ad Hoc Group acts like it is the only major creditor constituency.  That the mediation was helpful for other participants should be clear to the Court from the support articulated in the Committee Statement and the Wilmington Trust Response.

16.     With respect to the Ad Hoc Group's proposed confidentiality agreement, as the Ad Hoc Group is well aware, the Mediator was involved directly in discussions concerning its contents.  All parties to the mediation, including the Mediator, believed that a form of confidentiality agreement similar to what was requested by the Ad Hoc Group would significantly chill those discussions and make ultimate resolution less likely because it would have required disclosure of the substance of negotiations occurring at the mediation.  For the Ad Hoc Group to now accuse the Debtors of preventing discussions is a gross misrepresentation of the facts.

17.     In addition, because the Ad Hoc Group has not yet expressed any willingness to meaningfully compromise their faulty assertions that they are entitled to postpetition interest, it was unclear to everyone involved in the mediation process what benefit would be achieved by entering into such a confidentiality agreement with the Ad Hoc Group.  As noted by the Ad Hoc Group in the Ad Hoc Objection, the Debtors advised the Ad Hoc Group that if it appears a compromise with their group is possible, the form of confidentiality agreement can be negotiated at that point in order to finalize negotiations with principal involvement.

9

18. Furthermore, the Ad Hoc Group's reliance on the Lehman Brothers[12] bankruptcy case is misplaced because the creditor-proposed plans in that case were not filed until after the 18-month maximum exclusivity period had expired. The Debtors' request is being made less than one year into these cases. Recognizing that debtors are often the best parties to lead the plan process, Congress found that it was appropriate for debtors to maintain exclusivity for up to 18 months if progress could be demonstrated. It would be premature to allow exclusivity to expire at this time given the significant progress made towards consensus and given the complexities of these cases.

19. Accordingly, the Court should see the Ad Hoc Objection for what it is – an attempt by a group of undersecured creditors to wrest control of these cases and propose a plan that provides them with payment of postpetition interest, while simultaneously retaining the option to trade out of their holdings should they decide to exit the Debtors' capital structure before any plan is confirmed. Accordingly, the Court should overrule the Ad Hoc Objection and grant the relief requested in the Motion.

B. **The Nora Objection**

20. The allegation made in the Nora Objection that the Debtors have not engaged in plan negotiations with former or current homeowners is incorrect. First, borrower interests (including a member of the Creditors' Committee) have been represented in the mediation and plan discussions. Second, as the Court is aware, the Debtors are engaged in discussions with the Federal Reserve Board regarding the foreclosure review process that is intended to benefit former borrowers on whose homes the Debtors foreclosed prior to the Petition Date.

---

[12] *See* Ad Hoc Objection at 13.

ny-1088368

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court overrule the Objections and grant the relief requested in the Motion, and such other and further relief as is just and proper.

| | |
|---|---|
| New York, New York<br>Dated:  May 6, 2013 | /s/ Gary S. Lee<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>Todd M. Goren<br>Naomi Moss<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors and*<br> *Debtors in Possession* |

# Exhibit 1

## Amended Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER FURTHER EXTENDING THE EXCLUSIVE PERIODS
DURING WHICH ONLY THE DEBTORS MAY FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Upon the motion (the "Motion"),[1] as amended, of the above-captioned debtors and debtors in possession in these Chapter 11 cases (collectively, the "Debtors"), for entry of an order (this "Order") extending (a) the exclusive period of time during which only the Debtors may file a plan of reorganization (the "Exclusive Plan Period") through and including June 6, 2013, and (b) the period of time during which only the Debtors may solicit acceptances of a plan of reorganization (the "Solicitation Period," and, together with the Exclusive Plan Period, the "Exclusive Periods") through and including August 5, 2013; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules, the Local Rules and the Case

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

ny-1088865

Management Procedures for these Chapter 11 cases, and that, except as otherwise ordered herein, no other or further notice is necessary; and the objections to the Motion having been withdrawn or overruled on the merits; and after due deliberation thereon; and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Plan Period is hereby extended through and including June 6, 2013, and the Exclusive Solicitation Period is hereby extended through and including August 5, 2013.

3. This Order is without prejudice to (x) the Debtors' ability to seek further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code and (y) the ability of parties in interest to seek to shorten the Exclusive Periods or object to further extensions.

4. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

5. This Court retains jurisdiction with respect to all matters arising from or related to the enforcement of this Order.

6. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

ny-1088865

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

New York, New York
Date: _____, 2013

                                THE HONORABLE MARTIN GLENN
                                UNITED STATES BANKRUPTCY JUDGE