UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**SUPPLEMENTAL DECLARATION OF LEWIS KRUGER IN SUPPORT OF
DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FURTHER EXTENDING
THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT
ACCEPTANCES THEREOF**

I, Lewis Kruger, being duly sworn, state the following under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of the above-captioned debtors and debtors and debtors in possession (collectively, the "Debtors"). I submit this supplemental declaration (the "Supplemental Declaration") in further support of the *Debtors' Motion for Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* (the "Exclusivity Motion"),[1] and in response to the Objections to the Exclusivity Motion. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

**BACKGROUND**

2. On February 11, 2013, I was appointed by the Debtors to serve as CRO of the Debtors and spearhead the plan process. On the same day, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Exclusivity Motion and the *Debtors' Omnibus Reply to Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof*, filed contemporaneously herewith.

ny-1088472

*Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No. 2887].[2] On March 5, 2013, the Court entered an order approving my appointment. [Docket No. 3103].

3. On April 19, 2013, I submitted my declaration in support of the Exclusivity Motion, which is incorporated by reference herein.

## PLAN PROGRESS

4. The Ad Hoc Objection contains a number of factual misrepresentations. I submit this Supplemental Declaration in support of the Debtors' request for a further extension of exclusivity, and address certain of those misstatements.

5. The Ad Hoc Group presents the Court with a distorted view of the mediation. Following his appointment as Mediator, Judge Peck worked tirelessly to guide the Debtors and their major stakeholders towards achieving consensus on major plan issues. Judge Peck was very clear in setting the rules for mediation. The Ad Hoc Group apparently does not like the rules established by Judge Peck for participation in the mediation and now blames the Debtors. Specifically, the Ad Hoc Group accuses the Debtors of failing to negotiate a confidentiality agreement with the principals of the Ad Hoc Group. As the Ad Hoc Group is well aware, the Mediator was involved directly in discussions concerning the contents of the confidentiality agreement. All parties to the mediation, including the Mediator, believed that a form of confidentiality agreement similar to what was requested by the Ad Hoc Group, which would have required disclosure of the substance of negotiations occurring at the mediation, would significantly chill those discussions and make ultimate resolution less likely. The Ad Hoc

---

[2] The scope of the CRO's authority was modified pursuant to Amendment 1 to the Engagement Letter. A copy of Amendment 1 to the Engagement Letter as Exhibit 1 was filed with the Court on March 1, 2013 [Docket No. 3074].

2

ny-1088472

Group acts as though it is the <u>only</u> major creditor constituency in these cases. The reality is that there are other major stakeholders who likely would not participate in the settlement discussions if the substance of those discussions (including settlement offers) were made public.

6. Contrary to the Ad Hoc Group's description of the mediation, substantial progress in fact has been made in plan discussions. Moreover, since the filing of the Exclusivity Motion, the Debtors have made further progress. Mediation and plan discussions have not been limited to "the resurrection of the plan construct contained in the original plan term sheet," as the Ad Hoc Group would have the Court believe. I have been involved in substantive discussions with the Creditors' Committee and other major creditors regarding alternative plan structures with as many consensual elements as possible. In the event that mediation does not result in global resolution, the Debtors are prepared to file a Chapter 11 plan prior to the expiration of their Exclusive Periods or shortly thereafter. While not desirable, the Debtors have prepared for that eventuality.

7. Furthermore, although the Ad Hoc Group has provided the Debtors' advisors with a short-form plan term sheet, it has not provided them with an actual draft plan. More importantly, the Ad Hoc Group has not advised the Debtors that any other creditor constituency supports its plan. Based on my discussions with other creditors, it is my understanding that no other creditors support the plan the Ad Hoc Group intends to propose.

8. The Nora Objection also contains allegations that are not true. Specifically, the assertion that the Debtors have not engaged former or current homeowners in plan negotiations is incorrect. Representatives of this creditor constituency, including a member of the Creditors' Committee, are participating in the mediation and plan discussions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 6, 2013       /s/ Lewis Kruger
       New York, New York      Lewis Kruger

ny-1088472