**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**DECLARATION OF WILLIAM J. NOLAN IN SUPPORT OF DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

I, William J. Nolan, being duly sworn, state the following under penalty of perjury:

1. I am a Senior Managing Director in the Corporate Finance practice of FTI Consulting, Inc. ("FTI"). FTI's Corporate Finance practice is one of the largest restructuring and reorganization advisory practices in the country. FTI's Corporate Finance practice is successor to PricewaterhouseCoopers's ("PWC") Business Recovery Services practice. Prior to joining FTI, I was a Partner at PWC. I am a member of my firm's Real Estate and Structured Finance practice group and I have over 20 years of experience providing financial advisory services to debtors and creditors. FTI currently is serving as financial advisor to Residential Capital, LLC ("ResCap") and the other above-captioned debtors and debtors-in-possession (collectively the "Debtors").

2. I submit this declaration (the "Declaration") in support of the *Debtors' Motion for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3485] (the "Exclusivity Motion") and in response to the *Ad Hoc Group of Junior Secured Noteholders' Objection to the Exclusivity*

ny-1089151

*Motion* [Docket No. 3553] (the "Ad Hoc Objection"). This Declaration reflects the work performed to date, and I reserve the right to augment and refine the analysis.

## QUALIFICATIONS

3. FTI was first engaged by ResCap in March 2007 to provide financial advisory services and has been periodically reengaged by the Debtors since that time. Since March 2007, FTI has developed a great deal of institutional knowledge regarding the Debtors' operations and finances. Since August 2011, Gina Gutzeit, an FTI Senior Managing Director, and I have been the primary contacts at FTI responsible for providing ResCap with financial advisory services, including, but not limited to, the evaluation of strategic alternatives, bankruptcy planning, bankruptcy operational readiness, cash flow analysis, and planning and general restructuring advice.

4. As a member of FTI's and PWC's practices over the course of the last 20 years, I have developed extensive experience in advising troubled and bankrupt companies and their creditors. My experience includes a wide range of assignments including out-of-court restructurings, turnarounds, workouts and corporate bankruptcies. In addition, I have considerable experience in restructurings and bankruptcies in the financial services industry, including, but are not limited to, the bankruptcies and restructurings of: MF Global Holdings Ltd, Advanta Corp, The Education Resources Institute, Inc., Refco, Inc., People's Choice Home Loan, Inc., Mortgage Lenders Network USA Inc., ResMae Mortgage Corporation, First NLC Financial Services LLC, Alliance Bancorp, Mortgage Corporation of America, American Business Financial Services, Inc., ContiFinancial Corporation, The Thaxton Group Inc., Criimi Mae Inc., and Fidelity Bond and Mortgage.

ny-1089151

5. In addition, I have been engaged in other large workouts and bankruptcies on behalf of the Debtors or their creditors, including: Orleans Homebuilders, Inc., M. Fabrikant & Sons, Inc., Oakwood Homes, Inc., Cone Mills Corp., Delta Mills, Inc., US Aggregates, Inc., and Heilig-Meyers Company. I have also been engaged in many out-of-court restructurings, including Credit-Based Asset Servicing and Securitization LLC, LNR Corporation, and other, nonpublic matters.

6. Furthermore, FTI and I have provided financial advisory services to parties involved in mortgage-related litigation, all of which are confidential in nature.

7. I hold a bachelor of science from the University of Delaware and a Masters Degree in Business Administration in Finance from The Wharton School of the University of Pennsylvania. I have been a speaker at various industry conferences, covering topics such as the recent financial crisis, tranche warfare in structured finance, and other real estate issues.

8. In preparing this Declaration and in addition to the information referenced herein, I, and others from my firm under my direction, reviewed and considered other materials and documents, the internal nonpublic financial and operating data concerning the Debtors furnished to me by the management of the Debtors and information publicly available about the Debtors.

## ANALYSIS

9. In support of the Ad Hoc Objection and the assertions made therein regarding the amount of Debtors' assets that will be available for distribution to unsecured creditors under a Chapter 11 plan, the Ad Hoc Group filed the *Declaration of Reid Snellenbarger in Support of Ad Hoc Group's Objection to Debtors' Motion for the Entry of an Order Further*

*Extending Their Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof*

[Docket No. 3554] (the "Snellenbarger Declaration").  As set forth in the Snellenbarger Declaration, the financial advisors to the Ad Hoc Group ran two scenarios in connection with their analysis of the Debtors' assets.  Both of the scenarios were premised on the assumption that the full amount of the prepetition claims of the Junior Secured Noteholders are to be treated as secured and that postpetition interest on such claims is accruing at the annual rate of 10.625% (the "Ad Hoc Scenarios") – a position the Debtors dispute.

    10. Following my review of the Snellenbarger Declaration, I, or those under my direction, performed a review of the assumptions underlying the Ad Hoc Scenarios, validated the calculations, and performed an additional scenario.[1]

    11. As discussed more extensively below, the results of FTI's analyses show that the Debtors will have sufficient cash available to continue operating these cases beyond the dates projected by the financial advisors for the Ad Hoc Group.  Specifically, FTI found the following:

    (a) Even if the Junior Secured Noteholders are entitled to postpetition interest in the full amount claimed, the Debtors' combined projected administrative and wind-down costs, after taking into account the full cost of the 3-year wind-down, will not exceed the consolidated value of the Debtors' assets available for distribution to unsecured creditors until January 2014, which is at least one month longer than projected by the Ad Hoc Group.

    (b) Even if the Junior Secured Noteholders are entitled to postpetition interest, if the Debtors repay the Junior Secured Noteholders $800 million on June 1, 2013, the

---

[1] FTI did not run the Ad Hoc Scenario 2 because the Debtors have no basis upon which to validate the additional $200 million in cure costs utilized by Mr. Snellenbarger in the Ad Hoc Scenario 2.  However, as discussed below, FTI did utilize an additional $56 million in professional fees and interest in performing Scenario 1, which the Debtors have already anticipated in their "base case".

4

ny-1089151

combined cost of the Debtors' projected administrative obligations and wind-down costs, after taking into account the full cost of the 3-year wind-down, will not exceed the consolidated value of the Debtors' assets until May 2014.[2]

12. FTI's analyses utilized the assumptions used in the Ad Hoc Scenarios, including that the Junior Secured Noteholders are entitled to postpetition interest. To the extent the Court determines that the Junior Secured Noteholders are not entitled to postpetition interest, the Debtors will have sufficient cash available to continue operating these cases well beyond the dates projected by the financial advisors for the Ad Hoc Group.

13. Additionally, FTI disagrees with the conclusions expressed in the Snellenbarger Declaration because the Ad Hoc Scenarios were presented as if the current projected wind-down budget represents costs that will all be incurred in the next several months. The wind-down budget runs over the course of 3 years and can be modified. A reduction of the projected wind-down costs (or additional litigation recoveries) would result in additional cash available to continue operating these cases. Thus, in scenarios where the projected assets available for distribution nears zero, it does not mean that that there will be insufficient funds to satisfy administrative claims. Rather, it means that the existing assets in the estate (based on current recovery and expense estimates) may not be sufficient to fully fund the full 3-year wind-down in accordance with the existing wind-down budget if no additional litigation recoveries are achieved. Accordingly, even in the event that that the alleged interest cost to the Junior Secured Noteholders exceeds the cash available to unsecured creditors, there would only be a potential shortfall in the wind-down budget in the event the Debtors fail to recover sufficient funds on

---

[2] The Debtors intend to shortly file a motion seeking authority to partially satisfy $800 million of Junior Secured Noteholders' debt and simultaneously escrow funds to satisfy the AFI Senior Secured Credit Facility.

account of their claims against Ally Financial Inc. and its subsidiaries to cover the shortfall, which claims the Creditors' Committee has sought authority to pursue.

14. The analyses performed by FTI are subject to a number of important qualifications, including the following (a) all information as to current and projected asset values and projected expenses represents the Debtors' current views as to such information, and as such, could be subject to material upward and downward adjustment, (b) the asset values described herein do not reflect the existence of potential additional value arising from the monetization of any of the Debtors' actual or potential causes of action against third parties, and (c) the analyses described herein expresses no views as to the merits of the Ad Hoc Group's assertion that the Junior Secured Noteholders are entitled to postpetition interest, except to note that the Debtors dispute this assertion.

**A.   Estimates Used in FTI's Analyses**

15. In order to analyze the conclusions reached in the Snellenbarger Declaration, I performed a review of the Ad Hoc Scenarios compared against the Debtors' current estimates of asset values and projected expenses, and noted several variances. My estimates were based on the following items as of February 15, 2013, unless otherwise noted (the "Updated Estimates"):

(a)   Unrestricted Cash: on a consolidated basis, the Debtors held $3,463 million of unrestricted cash after the pay-down of secured debt obligations, including the Barclays DIP, Ally DIP, Citi MSR and FNMA EAF facilities.

(b)   Value of Excluded Ocwen Bid Assets: the estimated recovery of assets excluded from the Ocwen sale (because of pending cure objections to certain MSRs and servicer advances), was approximately $200 million net of estimated cure costs;

(c) Value of Other Remaining Assets: the remaining assets consist of restricted cash, HFS loans, FHA/VA loans and other assets with an estimated recovery value of $1,420 million;

(d) Accrued/Unpaid Administrative Expenses: $422 million of costs incurred prior to the sale closing on February 15, 2013;

(e) Projected Future Administrative Expenses: $873 million of costs to be incurred after February 15, 2013, including $56 million in additional professional fees and interest related to the extension of the assumed plan confirmation date from July to October 2013.

**B.     Debtors' Scenario 1**

16.     Utilizing the Updated Estimates summarized above, the Debtors' Scenario 1 shows that the projected assets available for distribution to unsecured creditors will only near zero in January 2014, as reflected in the analysis, attached hereto as Exhibit 1. The Debtors' Scenario 1 assumed the full cost of the 3-year wind-down.

17.     Additionally, FTI ran Scenario 1, utilizing the Updated Estimates described above, with one modification – a repayment of $800 million to the Junior Secured Noteholders on June 1, 2013. Under this modified approach, the Debtors have sufficient cash available to continue operating these cases in Scenario 1 through May 2014 without impacting their ability to conduct an orderly wind-down in accordance with the existing budget without additional recoveries even if the Junior Secured Noteholders are entitled to the full amount of their claimed postpetition interest.

18.     Therefore, based on the analyses performed by FTI, a 30 day extension of exclusivity will not put the Debtors at any greater risk of being able to satisfy administrative

7

claims, even in the event the Junior Secured Noteholders are in fact entitled to postpetition interest.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 6, 2013          /s/ William J. Nolan
       New York, New York     William J. Nolan

**Exhibit 1**

**ResCap**
**Nolan Declaration - Exhibit 1**
Subject to Change

**Estimated Unencumbered Value as of February 15, 2013 Under Debtors' Base Case ($ in millions)**

**Net Unencumbered Value Calculation**

| # | | | |
|---|---|---:|---|
| 1 | Unrestricted Cash | 3,463 | Post-sale cash balance after pay-down of Barclays DIP, Ally DIP, Citi MSR and FNMA EAF as of 2/15/13 |
| 2 | Value of Excluded Deal Assets | 200 | Estimated recovery on excluded deal assets net of cure costs |
| 3 | Value of Remaining Assets | 1,420 | Estimated recovery on other non-bid assets |
| 4 | Remaining Value | 5,083 | |
| 5 | Less: Ally Revolver | (747) | |
| 6 | Less: Ally LOC | (380) | |
| 7 | Less: Jr. Sec. Notes Secured Recovery | (1,511) | Estimate of Junior Secured Notes' secured recovery |
| 8 | Remaining Value | 2,445 | |
| 9 | Less: Accrued and Unpaid Admin. Expenses | (422) | Estimate of pre-sale accrued/unpaid expenses |
| 10 | Less: Reserve for Estimate of Future Wind Down Expenses | (873) | Estimate of ongoing wind down expenses post 2/15/13 including incremental interest and professional fees related to extension of the assumed plan confirmation date |
| 11 | Net Value | 1,151 | |

**Scenario Analysis of Projected Estate Value ($ in millions)**

| # | | Feb-13 | Apr-13 | Jun-13 | Aug-13 | Oct-13 | Dec-13 | Feb-14 | Apr-14 | Jun-14 |
|---|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| | **Projected Unencumbered Value Calculation** | | | | | | | | | |
| 12 | Net Value | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 |
| 13 | Less: Jr. Sec. Notes Incremental Secured Recovery | (712) | (712) | (712) | (712) | (712) | (712) | (712) | (712) | (712) |
| 14 | Less: Jr. Sec. Notes Post-Petition Interest | (191) | (232) | (275) | (319) | (362) | (408) | (454) | (500) | (548) |
| 15 | Residual Value in Scenario 1 | 248 | 207 | 163 | 120 | 76 | 31 | (15) | (61) | (109) |
| | **Projected Unencumbered Value Calculation - Adjusted for $800M Paydown on 6/1/13** | | | | | | | | | |
| 16 | Net Value | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 | 1,151 |
| 17 | Less: Jr. Sec. Notes Incremental Secured Recovery | (712) | (712) | (712) | (712) | (712) | (712) | (712) | (712) | (712) |
| 18 | Less: Jr. Sec. Notes Post-Petition Interest | (191) | (232) | (269) | (298) | (328) | (359) | (390) | (421) | (454) |
| 19 | Residual Value in Scenario 1 Adj. | 248 | 207 | 170 | 140 | 111 | 80 | 49 | 18 | (15) |