MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Jamie A. Levitt
Alexandra Steinberg Barrage
*Counsel to the Debtors and Debtors in Possession*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
Theresa A. Foudy
Maryann Gallagher
*Conflicts Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' LIMITED OBJECTION AND RESERVATION OF RIGHTS
WITH RESPECT TO THE MOTION OF WILMINGTON TRUST, NATIONAL
ASSOCIATION, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE FOR
THE SENIOR UNSECURED NOTES ISSUED BY RESIDENTIAL CAPITAL, LLC
FOR AN ORDER AUTHORIZING IT TO PROSECUTE CLAIMS AND OTHER
<u>CAUSES OF ACTION ON BEHALF OF THE RESIDENTIAL CAPITAL, LLC ESTATE</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

LIMITED OBJECTION .......................................................................................... 2

    A.    Granting the SUN Trustee Standing To Pursue Committee Claims Against
AFI Provides Unwarranted Leverage to a Single Creditor Constituency
and Would Be Duplicative ............................................................................. 3

    B.    The SUN Trustee's Request for Standing To Pursue the Inter-Debtor
Claims Is Premature and Without Procedural Safeguards ................................... 8

    C.    Granting the SUN Trustee Standing To Pursue the D&O Claim Is
Premature ................................................................................................. 12

    D.    The Purported Third-Party Claims Are Actually Estate Claims......................... 15

        1.    Counts I through III Are Alter Ego Claims Belonging to the Estates ..... 16

        2.    Tortious Interference Claim Belongs to the Estates ................................ 19

        3.    Equitable Subordination Claim Belongs to the Estates ........................... 20

    E.    The SUN Trustee Cannot Be Given Authority Over Settlements ...................... 21

RESERVATION OF RIGHTS ................................................................................ 22

CONCLUSION.................................................................................................... 23

14746829

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Duke Energy Trading & Mktg., L.L.C. v. Enron Corp. (In re Enron Corp.)*,
    01 B 16034 (AJG), Adv. Pro. 02-3609 A, 2003 WL 1889040
    (Bankr. S.D.N.Y. Apr. 17, 2003) ................................................................................. 17, 18

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*,
    398 B.R. 736 (S.D.N.Y. 2008) ......................................................................................16-19

*Fletcher v. Atex, Inc.*,
    68 F.3d 1451 (2d Cir. 1995) ............................................................................................... 17

*Hassett v. McColley (In re O.P.M. Leasing Servs., Inc.)*,
    16 B.R. 932 (Bankr. S.D.N.Y. 1982) ................................................................................. 11

*In re Allied Digital Techs. Corp.*,
    306 B.R. 505 (Bankr. D. Del. 2004) .................................................................................. 15

*In re Cabrini Med. Ctr.*,
    Case No. 09-14398 (ALG), 2012 Bankr. LEXIS 2747 (Bankr. S.D.N.Y. June 15, 2012),
    *aff'd sub nom.*, *Mannucci v. Cabrini Med Ctr. (In re Cabrini Med Ctr.)*,
    12 Civ. 6661 (SAS), 2012 U.S. Dist. LEXIS 180896 (S.D.N.Y. Dec. 20, 2012) .................... 18

*In re Dewey & Leboeuf LLP*,
    Case No. 12-12321 (MG), 2012 Bankr. LEXIS 5536
    (Bankr. S.D.N.Y. Nov. 29, 2012) ....................................................................................... 2

*In re Dexterity Surgical, Inc.*,
    365 B.R. 690 (Bankr. S.D. Tex. 2007) .............................................................................. 20

*In re Downey Fin. Corp.*,
    428 B.R. 595 (Bankr. D. Del. 2010) .................................................................................. 15

*In re Ragucci*,
    433 B.R. 889 (Bankr. M.D. Fla. 2010) .............................................................................. 20

*In re STN Enters.*,
    779 F.2d 901, 904-05 (2d Cir. 1985) .................................................................................. 2

*In re V. Savino Oil & Heating Co.*,
    91 B.R. 655 (Bankr. E.D.N.Y. 1988) .................................................................................. 8

*Ionosphere Clubs, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago
    (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993) ............................................ 19

*Jenkins v. A.T. Massey Coal Co. (In re Jenkins)*,
    410 B.R. 182 (Bankr. W.D. Va. 2008) .............................................................................. 20

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
    600 F.3d 135 (2d Cir. 2010) ............................................................................................. 14

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993) ..................................................................................... 16, 17, 19

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Katz v. Kilsheimer,*
  327 F.2d 633 (2d Cir. 1964) ................................................................. 11

*Koch Ref. v. Farmers Union Cent. Exch., Inc.,*
  831 F.2d 1339 (7th Cir. 1987) ............................................................. 18

*Koolik v. Markowitz,*
  40 F.3d 567 (2d Cir. 1994) ................................................................. 13

*Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.),*
  161 B.R. 891 (Bankr. E.D.N.Y. 1993) .................................................. 13

*Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.),*
  117 B.R. 64 (S.D.N.Y. 1990) ............................................................... 13

*MacArthur Co. v. Johns-Manville Corp.,*
  837 F.2d 89 (2d Cir. 1988) ................................................................. 14

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,*
  187 F.3d 439 (4th Cir. 1999) .............................................................. 20

*Ochs v. Lipson (In re First Cent. Fin. Corp.),*
  238 B.R. 9 (Bankr. E.D.N.Y. 1999) ..................................................... 15

*Official Comm. of Unsecured Creditors of Sunbeam Corp. v.
  Morgan Stanley & Co., Inc. (In re Sunbeam Corp.),*
  284 B.R. 355 (Bankr. S.D.N.Y. 2002) .................................................. 17

*Official Comm. of Unsecured Creditors v. Halifax Fund, L.P. (In re AppliedTheory Corp.),*
  345 B.R. 56 (S.D.N.Y. 2006), aff'd, 493 F.3d 82 (2d Cir. 2007) ........... 20

*Pfizer, Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.),*
  676 F.3d 45 (2d Cir. 2012) ................................................................. 14

*Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC),*
  423 F.3d 166 (2d Cir. 2005) ............................................................... 22

*St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.,*
  884 F.2d 688 (2d Cir. 1989) ................................................... 16, 18, 19

*Teachers Ins. & Annuity Ass'n of Am. v. Butler,*
  803 F.2d 61 (2d Cir. 1986) ................................................................. 13

## Statutes

11 U.S.C. § 502(d) ........................................................................... 5, 8

## Rules

Fed. R. Bankr. P. 2004 ........................................................................ 4

Fed. R. Bankr. P. 9019 ...................................................................... 22

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Miscellaneous**

S. Rep. No. 989, 95th Cong. 2d Sess. (1978) ............................................................................... 13

iv

The debtors and debtors-in-possession (collectively, the "Debtors")[1] in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases") respectfully submit this Limited Objection and Reservation of Rights (the "Limited Objection") to the motion of Wilmington Trust, National Association, as indenture trustee (the "SUN Trustee") for certain senior unsecured notes (the "SUNs") issued by Residential Capital, LLC ("HoldCo"), for an order granting the SUN Trustee standing to prosecute and settle certain claims and causes of action (the "Motion").[2]  In support of the Limited Objection, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors are not now taking a position on the purported merits of any of the claims addressed in the Motion.  Nonetheless, the Debtors object to the Motion on multiple grounds, including that it seeks to duplicate the work of the Official Committee of Unsecured Creditors (the "Committee"); that it seeks to vest authority to prosecute and settle estate claims in the hands of one creditor constituency (who sits on the Committee) without providing any procedural safeguards to ensure that the interests of all the remaining creditors are adequately protected; that it is premature; and that it seeks to usurp estate causes of action for the benefit of a single creditor group.

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed on May 14, 2012 [Docket No. 6].

[2] *Mot. of Wilmington Trust, National Association, Solely in its Capacity as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC for an Order Authorizing it to Prosecute Claims and Other Causes of Action on Behalf of the Residential Capital, LLC Estate*, filed on Apr. 19, 2013 [Docket No. 3475].

## LIMITED OBJECTION

2.     The claims that the SUN Trustee addresses in its Motion may be divided into the following four categories:  (i) estate claims against Ally Financial, Inc. ("AFI"), which the Committee has already sought standing to prosecute, with the Debtors' consent (the "Committee Claims"); (ii) claims that the SUN Trustee seeks to pursue on behalf of HoldCo against debtors Residential Funding Company ("RFC") and GMAC Mortgage LLC ("GMACM," together with RFC, the "OpCos") (the "Inter-Debtor Claims"); (iii) a breach of fiduciary duty claim that the SUN Trustee seeks to assert on behalf of HoldCo against certain of HoldCo's current and former directors and officers (the "D&O Claim"); and (iv) estate claims against AFI that the SUN Trustee contends are actually third-party claims that belong to it (the "Purported Third-Party Claims," together with the Committee Claims, the Inter-Debtor Claims, and the D&O Claim, the "Claims").

3.     To determine whether to grant a creditor standing to pursue claims on behalf of a debtor's estate, courts within the Second Circuit employ a two pronged test, evaluating:   (1) the colorability of the claims at issue; and (2) the benefit to the estates which would result from granting the creditor standing to pursue the claims.  *See In re Dewey & Leboeuf LLP*, Case No. 12-12321 (MG), 2012 Bankr. LEXIS 5536, at *15-19 (Bankr. S.D.N.Y. Nov. 29, 2012) (citing *In re STN Enters.*, 779 F.2d 901, 904-05 (2d Cir. 1985)).  The Debtors do not take a position in this Limited Objection regarding the colorability of the Claims or the potential benefit to the estates that would inure if the Motion were granted.  Nonetheless, the Debtors object to the relief requested by the SUN Trustee based upon a number of procedural and related concerns discussed below.

2

A.      **Granting the SUN Trustee Standing To Pursue Committee
Claims Against AFI Provides Unwarranted Leverage to a
Single Creditor Constituency and Would Be Duplicative**

4.      On April 11, 2013, the Committee filed a motion seeking standing to pursue

estate causes of action against AFI.[3]  The Committee Motion is scheduled to be heard on May 7,

2013.  The Debtors have consented to the Committee's seeking to litigate and settle these claims,

subject to the Debtors' right, with the Committee's consent, to propose a plan of reorganization

that incorporates a settlement of the claims.[4]  The Debtors believe the Committee, as an estate

fiduciary, is in the best position to prosecute these claims, particularly given the absence of any

apparent conflict by the Committee and the extensive discovery the Committee has participated

in to date on such claims (as detailed below).  Nevertheless, the SUN Trustee seeks standing to

pursue certain of the same claims that would be brought by the Committee if this Court were to

grant the Committee's standing motion.  There is no cause for such duplicative litigation, which

would put unwarranted leverage in the hands of a non-estate fiduciary.  Moreover, the Debtors

are unaware of any precedent (nor has the SUN Trustee cited any) where *both* a creditors'

committee and a constituent of that same creditors' committee maintained independent standing

to bring the same claim(s).

5.      From the beginning of these Chapter 11 Cases, the Committee has been focused

on, and has been actively investigating, potential causes of action against AFI.  In June 2012, the

---

[3] *Mot. of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee To Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates*, filed on Apr. 11, 2013 (the "Committee Motion") [Docket No. 3412].

[4] *See Resp. of the Official Committee of Unsecured Creditors to the Debtors' Mots. for (I) Appointment of a Chief Restructuring Officer and (II) Entry of an Order Further Extending Their Exclusive Periods To File a Chapter 11 Plan and Solicit Acceptances Thereof*, filed on Feb. 26, 2013 [Docket No. 3042] (the "CRO Motion Response") ¶ 14 ("[T]he Debtors have agreed that they will consent to any motion made by the Committee seeking standing to pursue estate causes of action against [AFI].")

3

Committee sought discovery from the Debtors, AFI, and Cerberus Capital Management, L.P. pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[5] The Court granted the Committee's request.[6]  In the ten months that have elapsed since that time, the Committee has "reviewed myriad documents," and "the Committee's financial advisors have analyzed many of the Debtors' material transactions and agreements, as well as the Debtors' historical solvency and capitalization."  (Committee Mot. ¶ 10.)  The Committee investigation to date has been "extensive and thorough."  (*Id.*)

6.     Two months ago, subsequent to the Debtors' highly successful sale of assets (the "Asset Sales"), the Debtors allowed the AFI Plan Support Agreement (the "AFI PSA") to expire – a right that the Debtors *negotiated* for pre-petition as part of the AFI PSA, consistent with the exercise of the officers' and directors' fiduciary duties.  The AFI PSA allowed the Debtors to originate loans in bankruptcy and sell live loan origination and servicing platforms, which was crucial to achieving the successful Asset Sales.  Once those Asset Sales closed, thus accomplishing the primary objective of entering into the AFI PSA in the first instance, the Debtors allowed the AFI PSA to expire.  Subsequently, following extensive negotiations with the Committee and other stakeholders, the Debtors willingly consented to the Committee seeking standing to bring *all potential estate causes of action* against AFI – not due to any conflict or lack of willingness on the part of the Debtors to pursue these claims – but because the Debtors recognized that there was a perception that the Committee would be more aggressive in pursuing

---

[5] *See Mot. of the Official Committee of Unsecured Creditors of Debtors Residential Capital, LLC, et al., for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing the Issuance of Subpoenas for the Production of Documents and the Provision of Testimony by the Debtors and Others*, filed on June 1, 2012 [Docket No. 192].

[6] *Order Authorizing the Official Committee of Unsecured Creditors to Issue Subpoenas Compelling the Production of Documents and Provision of Testimony by the Debtors and Others Pursuant to Fed. R. Bankr. P. 2004*, entered on June 5, 2012 [Docket No. 217].

4

these claims than the Debtors.  (*See* CRO Mot. Resp. ¶ 14.)  Thereafter, the Committee sought standing to pursue a broad range of claims against AFI on behalf of the estates.  (*See generally* Committee Mot.)

7.       Eight days after the Committee Motion was filed and just prior to critical mediation sessions before the Honorable James M. Peck, the SUN Trustee filed its Motion, which also seeks standing to pursue estate claims against AFI.  Indeed, the vast majority of the Claims that the SUN Trustee seeks standing to pursue would fall within the Committee's authority if the Committee Motion were granted.  Specifically, the SUN Trustee seeks standing to pursue the following estate claims against AFI:  (i) constructive and intentional fraudulent transfer for the Ally Bank transfer (Counts VI, VII); (ii) constructive and intentional fraudulent transfer for HoldCo's forgiveness of intercompany debt receivables (Counts X, XI); (iii) disallowance of AFI's proofs of claim pursuant to Section 502(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") (Count XII); (iv) constructive trust over AFI's interests in Ally Bank and other Debtor property allegedly in AFI's possession (Counts XIV, XIX); (v) aiding and abetting breach of fiduciary duty (Count XVI); and (vi) indemnification and contribution for losses suffered as a result of the mortgage business (Counts XVII, XVIII).

8.       In doing so, the SUN Trustee does not contend that it should replace the Committee as a plaintiff in any eventual action, but rather that it should "jointly prosecute and settle" the claims with the Committee.  (Mot. ¶ 2.)  However, the SUN Trustee does not adequately justify such duplication of estate resources.  Nor does the SUN Trustee provide any reason for granting a single creditor of a single debtor – which creditor is itself a member of the Committee – such power over what are collective claims for all creditors involving multiple Debtors.

5

9.       The Debtors and their professionals have coordinated with the Committee and

other key stakeholders throughout these Chapter 11 Cases for the benefit of all the Debtors and

their respective constituencies to maximize creditor recovery.  Contrary to the SUN Trustee's

assertions, the Debtors have at all times acted as a fiduciary with respect to all creditors, and

certainly have not "attempted to prejudice the interests of the HoldCo estate." (*Id.* ¶ 4.)  The

only support that the SUN Trustee musters for this baseless allegation is the temporary existence

of the "HoldCo Election" in a proposed – but withdrawn – version of the agreement (the "RMBS

Settlement") with two sets of institutional investors represented by Gibbs & Bruns LLP and

Talcott Franklin, P.C. (the "Institutional Investors") to settle the representation and warranty

claims held by up to 392 securitization trusts (the "Trusts").  The HoldCo Election was a good

faith effort to resolve the claims of the Institutional Investors that the Trusts could hold HoldCo

liable for the representation and warranty claims as the alter ego of the OpCos.[7]  The Debtors

believed that the HoldCo Election was in the best interest of HoldCo, because it put a cap on the

potential allocation of such liability to HoldCo while providing for a full and complete release of

HoldCo from any such claims by the Trusts that accept the RMBS Settlement.  Nonetheless,

once it became clear that the HoldCo Election lacked the requisite creditor support, it was

promptly withdrawn.  Other than rhetoric, there is nothing to support the SUN Trustee's

allegations of prejudicial treatment.

10.      The Committee has already invested ten months in investigating claims against

AFI.  The Committee is the party that has a fiduciary duty to all the unsecured creditors of the

Debtors' estates, including HoldCo creditors such as the SUNs.  And, the SUN Trustee itself

admits that Committee has "performed admirably." (*Id.* ¶ 2.)

---

[7] *See Debtors' Supplemental Mot. Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS
Trust Settlements*, filed on Aug. 15, 2012 [Docket No. 1176] ¶ 20.

14746829

11.    The SUN Trustee suggests that the Committee might not be able to prosecute the Inter-Debtor Claims that the SUN Trustee seeks standing to bring.  (*See id.*)  However, the SUN Trustee offers **no** reason why the Committee cannot adequately represent the estates' interests vis-a-vis **AFI**, which covers the vast majority of the Claims that the SUN Trustee seeks standing to bring.  The Committee is not conflicted from pursuing claims against AFI on behalf of any or all of the Debtors, and it is the appropriate party to do so.

12.    The notion of granting a single creditor at a single Debtor the power to control the litigation and settlement of estate claims – the outcome of which affects all creditors, and all the Debtors – is disturbing.  Indeed, even focusing solely upon HoldCo, the SUN Trustee is not the lone creditor at that entity.  On the contrary, more than 2,000 proofs of claim have been filed against Holdco, including by trade creditors, taxing authorities, and litigation claimants, and the aggregate claims against HoldCo amount to billions of dollars.  Indeed, the majority of the Committee members have each filed billions of dollars in claims at HoldCo, in addition to their claims asserted at RFC and GMACM.

13.    In addition, HoldCo is the obligor of the 9.625% Junior Secured Guaranteed Notes due 2015 issued by HoldCo (the "JSNs").  As set forth in the complaint filed on May 3, 2013 in the adversary proceeding commenced by the Debtors, the JSNs are significantly undersecured.[8]  Should the Debtors prevail in that litigation, the holders of the JSNs would have unsecured deficiency claims against HoldCo in the amount of approximately $2 billion – an amount of unsecured claim nearly *double* that asserted by the SUN Trustee.  Moreover, certain holders of the JSNs have alleged that they have a lien on the proceeds of recoveries from certain of the avoidance actions that the SUN Trustee has sought authority to bring.  Although the

---

[8] *Complaint,* filed on May 3, 2013, *Residential Capital, LLC v. UMB Bank, N.A.*, Case No. 12-12020 (MG), Adv. Pro. 13-01343 (MG) (Bankr. S.D.N.Y.) [Adv. Pro. Docket No. 1].

7

Debtors disagree with this assertion, the Debtors do agree with the position of those holders[9] that it would be premature to grant the SUN Trustee standing to bring claims before the issue of whether the JSNs have a lien on those claims is resolved.

14.     The SUN Trustee's attempt to control the claims that it alleges belong solely to HoldCo must be rejected.  Where there is an estate fiduciary who is ready, willing, and able to pursue such estate claims – as there indisputably is here – this responsibility is better left in the hands of that estate fiduciary.[10]  Granting the SUN Trustee standing to prosecute and settle the Committee Claims would result in duplication of efforts, additional expense and burden to the estates, and serve only the SUN Trustee's parochial interests.

**B.      The SUN Trustee's Request for Standing To Pursue the
Inter-Debtor Claims Is Premature and Without Procedural Safeguards**

15.     The SUN Trustee also seeks standing to pursue the following Inter-Debtor Claims – claims Holdco allegedly holds against RFC and GMACM:  (i) constructive and intentional fraudulent transfer for the forgiveness of certain intercompany debt (Counts VIII, IX); (ii) consequent disallowance under Section 502(d) of the Bankruptcy Code of the proofs of claim of RFC and GMACM against HoldCo (Count XIII); and (iii) a declaration that certain claims asserted by RFC against HoldCo should not be recognized as valid debt (Count XX).  The SUN

---

[9] *See Omnibus Objection of the Ad Hoc Group of Junior Secured Noteholders to (I) the Mot. of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee To Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates and (II) the Motion of Wilmington Trust, National Association, Solely in its Capacity as Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC for an Order Authorizing it To Prosecute Claims and Other Causes of Action on Behalf of the Residential Capital, LLC Estate*, filed on Apr. 30, 2013 [Docket No. 3563], at 5-6.

[10] *See In re V. Savino Oil & Heating Co.*, 91 B.R. 655, 657 (Bankr. E.D.N.Y. 1988) (denying individual creditor standing to bring a lawsuit on similar or identical causes of action against an entity already being sued on behalf of the debtor's estate by an active creditors' committee).

14746829

Trustee's request for standing with respect to the Inter-Debtor Claims is premature and inappropriate for several reasons.

16.     <u>First</u>, the Debtors are focused on negotiations with their various constituents in these Chapter 11 Cases, including the SUN Trustee, in order to achieve a consensual Chapter 11 plan that would resolve the various Inter-Debtor Claims and other inter-creditor issues.  With the assistance of the Honorable James M. Peck, appointed by the Court to serve as mediator, the Debtors have made considerable progress in those negotiations.  (*See Decl. of Lewis Kruger in Supp. of Debtors' Exclusivity Mot.*, filed on Apr. 19, 2013 [Docket No. 3486] ¶ 19 ("I believe that the Debtors and their key stakeholders have made substantial progress in mediation, resulting in significant movement toward global resolution of key plan issues and serious consideration of a term sheet regarding potential plan treatments . . . .").)  Two weeks ago, the Debtors and key stakeholders participated in "all hands on deck" mediation sessions in an effort to settle claims, such as those at issue in the Motion, without the need for further costly and burdensome litigation.  In light of the progress made during these sessions, additional mediation sessions have been scheduled, and the order of mediation continues through the end of May.[11]

17.     Indeed, the SUN Trustee itself stated just last week that "the Debtors, Ally Financial, Inc., the [SUN] Trustee, and other significant creditor constituencies remain actively involved in the ongoing mediation and plan negotiations in order to reach a consensual resolution to these chapter 11 cases" and expressed its intention to "use the next thirty days to continue engaging in constructive dialogue" to reach a consensual resolution of outstanding issues.  (*Resp. to Debtors' Mot. for the Entry of an Order Further Extending their Exclusive Period To File a*

---

[11] Recognizing the importance of such efforts, the Court, *sua sponte*, extended Judge Peck's term as mediator through the end of May.  *See Order Extending Appointment of Hon. James M. Peck as Mediator*, entered on Mar. 5, 2013 [Docket No. 3101].

*Chapter 11 Plan and Solicit Acceptances Thereof*, filed on May 1, 2013 [Docket No. 3568] ¶¶ 1,

3.)  The Committee likewise reported that "[t]hese cases have made significant progress [and]

Judge Peck's prodigious efforts as mediator have moved the parties much closer to a global

resolution that could be embodied in a confirmable chapter 11 plan . . . .  [P]arties remain

optimistic that they can close the gap on the major outstanding issues in these cases in the near

term."  (*Statement of the Official Committee of Unsecured Creditors with Respect to the*

*Debtors' Mot. for the Entry of an Order Further Extending Their Exclusive Periods To File a*

*Chapter 11 Plan and Solicit Acceptances Thereof*, filed on May 1, 2013 [Docket No. 3569] ¶ 2.)

18.    Second, ten months ago, on July 3, 2012, the Court approved the appointment of

Arthur J. Gonzalez, Esq. as examiner in these Chapter 11 Cases (the "Examiner").[12]  Since that

time, the Examiner has been engaged in an in-depth investigation of the Debtors' and AFI's

activities.  One of the Examiner's tasks has been to investigate "matters affecting the Debtors'

assets, liabilities, and financial condition *including all intercompany claims*."[13]  Thus, the

Examiner's report, which is expected to be released on or before May 13th, should provide

analysis and insight with respect to inter-debtor issues and facilitate a more accurate assessment

of the Inter-Debtor Claims.[14]  The Examiner's report presumably will address the colorability of

the Inter-Debtor Claims, and will thus assist the Court in evaluating whether pursuit of these

---

[12] *See Order Approving Appointment of Arthur J. Gonzalez, Esq. as Examiner*, entered on July 3,
2012 [Docket No. 674].

[13] *Preliminary Statement of Arthur J. Gonzalez, Examiner, Regarding the Scope and Timing of
His Investigation*, filed on July 27, 2012 (the "Examiner Work Plan") [Docket No. 925, Ex. A]
¶ 10(h) (emphasis added).

[14] *See Third Supplement to Work Plan of Arthur J. Gonzalez, Examiner*, filed on Feb. 8, 2013
[Docket No. 2868], at 2 ("For the reasons stated on the record of the hearing held in this case on
February 7, 2013 . . . the projected delivery date for the Examiner's report must be extended for
an additional month, from the previously-projected period of early April, 2013 to early May,
2013.").

14746829

Inter-Debtor Claims is in the best interests of these estates.  Consideration of the Motion should await the release of the Examiner's report.

19.    <u>Third</u>, the Motion does not address the procedural issues that must be addressed before any grant of standing could be given to the SUN Trustee.  For example, under the SUN Trustee's proposal, it is entirely unclear how the interests of RFC and GMACM are to be protected by permitting the SUN Trustee to bring the Inter-Debtor Claims.  Creditors, including ones sitting on the Committee, have filed billions of dollars in claims at each of HoldCo, RFC, and GMACM, the three main Debtor entities.  Appointing one of those Committee members as a representative to sue the entities at which other Committee members have claims will inevitably fracture the Committee.  For such reasons, courts in the Second Circuit have shown a preference for taking a "wait and see" approach to intercompany claims.  *See Katz v. Kilsheimer*, 327 F.2d 633, 635-36 (2d Cir. 1964) (the Court of Appeals saw no prejudice in postponing application requesting removal of a trustee and his counsel from acting for both a parent and subsidiary corporation in which a conflict was alleged); *Hassett v. McColley (In re O.P.M. Leasing Servs., Inc.)*, 16 B.R. 932, 939-40 (Bankr. S.D.N.Y. 1982) (finding that the "internecine battle [over an intercompany claim would] accomplish little more than diverting" the parties from the goal of asset maximization).  Other than the SUN Trustee's desire to gain leverage in plan negotiations now, there is no urgency to address this matter on the SUNs' proposed timetable.

20.    While the SUN Trustee represents that it will minimize costs to the estates stemming from pursuit of its claims, it is clear that a grant of standing to the SUN Trustee will only further burden the Debtors' resources.  (Mot. ¶ 42.)  In addition to the costs involved in defending RFC and GMACM, the SUN Trustee's offer to relieve the estate of administrative expenses in pursuing this litigation on HoldCo's behalf was notably couched.  Specifically, the

SUN Trustee states that it "is not seeking *current* payment of fees and expenses for prosecuting the Complaint."  (*Id.* ¶ 36 (emphasis added).)  That is far from a promise that the SUN Trustee will bear the cost of the entire litigation itself.  (*See id.* (noting that fact that creditor would bear cost of litigation itself to be a factor in favor of granting standing).)

21.    In sum, the Debtors are currently spearheading negotiations in an effort to reach a consensual Chapter 11 plan that would resolve these claims; the Examiner report is forthcoming; and no procedural mechanisms to ensure fairness and process with respect to the proposed litigation have yet been proposed.  Prior to the release of the Examiner report, and without resolution of the aforementioned issues, it is not in the best interests of all creditors and the estates to grant the SUN Trustee standing to pursue the Inter-Debtor Claims.

### C.    Granting the SUN Trustee Standing To Pursue the D&O Claim Is Premature

22.    The SUN Trustee also seeks standing to pursue the D&O Claim for breach of fiduciary duty.  (Count XV.)  The Debtors believe this request is also premature before the Debtors, their key stakeholders, and the Court have had the opportunity to review the Examiner's report.  (*See* Examiner Work Plan ¶ 10(c) (investigation to cover "the activities of the Debtors' officers and board of directors" concerning prepetition and postpetition transactions and agreements).)  After reviewing the Examiner report, the parties and the Court will be better positioned to evaluate the colorability, as well as the potential benefit to the estates, with respect to this Claim.[15]

23.    In any event, the Debtors reserve the right to seek to extend the automatic stay to defer any prosecution of claims against the Debtors' current and former officers and directors,

---

[15] While the Debtors do not address the colorability of the D&O Claim in this Limited Objection, they anticipate that counsel to the independent directors, Morrison Cohen LLP, will separately respond to the Motion and address the purported merits of this Claim.

14746829

both so that the current officers and directors can remain focused on fulfilling their current duties and obligations, and to protect the Debtors from indemnification claims and depletion of their insurance coverage.  A primary purpose of the automatic stay is to "provide the debtor with 'a breathing spell from his creditors'" so that its restructuring efforts can proceed in an efficient, coordinated manner.  *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986) (quoting S. Rep. No. 989, 95th Cong. 2d Sess. 54-55 (1978)).  The substantial distraction to the Debtors' officers and directors resulting from the D&O Claim would endanger the restructuring efforts of the Debtors. All creditors are best served by allowing the Debtors' officers and directors to devote all of their time and resources to the successful liquidation of the Debtors' assets and to enhancing recoveries to the estates' creditors.  *See Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 66-67 (S.D.N.Y. 1990) (affirming extension of automatic stay to enjoin suit against debtor's officers where, *inter alia*, an officer spent "in excess of 50%" of his time on the reorganization effort and "key personnel would be distracted from participating in the reorganization process") (citations and quotations omitted); *Lazarus Burman Assocs. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 900 (Bankr. E.D.N.Y. 1993) (enjoining lender's action against non-debtor principals because "[t]he pendency of the State Court Action would disrupt the Debtors' operations and would distract the Principals from their key roles in maintaining, operating, and managing the Debtors' assets.  Thus, due to the Principals' involvement in the Debtors' businesses and reorganization, it would unduly burden the estates to permit the State Court Action to continue.").

24.    Extension of the stay would be particularly appropriate because the directors and officers are entitled to indemnification from the Debtors for a broad variety of claims pursuant to

the Amended and Restated Limited Liability Company Agreement of HoldCo (the "HoldCo LLC

Agreement").  (*See* Ex. A to *Decl. of James Whitlinger*, filed on May 25, 2012, *Residential*

*Capital, LLC v. Allstate Ins Co.*, Case No. 12-12020 (MG), Adv. Pro. No. 12-01671 (MG)

(Bankr. S.D.N.Y.) (the "Whitlinger Decl.") [Adv. Pro. Docket No. 7].)  The HoldCo LLC

Agreement provides for the Debtors to indemnify any employee, officer, or director who is "a

party or is threatened to be made a party to any threatened, pending or completed action, suit or

proceeding, whether civil, criminal, administrative or investigative." (*Id.* § 18(a)(i).)  The

HoldCo LLC Agreement indemnifies "expenses (including attorneys' fees), judgments, fines and

amounts paid in settlement actually and reasonably incurred by the [officer, director, or

employee or on that person's behalf] in connection with such action, suit or proceeding and any

appeal therefrom."  (*Id.* § 18(a)(ii).)  Thus, any defense costs, judgments, or settlements that the

directors and officers incur in relation to the D&O Claim will likely give rise to claims against

the Debtors and their estates for indemnification.

   25.  In addition, the directors and officers targeted by the D&O Claim will

undoubtedly seek to utilize the Debtors' insurance coverage to fund their defense costs.  Such

insurance is property of the Debtors' estate.  *See Pfizer, Inc. v. Law Offices of Peter G. Angelos*

*(In re Quigley Co.)*, 676 F.3d 45, 53 (2d Cir. 2012) (insurance policies and proceeds that cover

both debtors and their non-debtor parents and affiliates are joint property of the debtors' estate

and the non-debtor entities); *see also Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re*

*Johns-Manville Corp.)*, 600 F.3d 135, 152 (2d Cir. 2010) ("[T]he insurance policies that

Travelers issued to Manville are the estate's most valuable asset."); *MacArthur Co. v. Johns-*

*Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988) (agreeing with the "[n]umerous courts [that] have

determined that a debtor's insurance policies are property of the estate").  The proceeds of

insurance policies are "property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) (quoting *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004)); *accord Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("[T]he estate's property interest in the proceeds of a typical liability policy is an unstated given," particularly where "the debtor is also the beneficiary of the liability insurance coverage."). Here, the Debtors have had claims asserted against them that could be paid with the proceeds of their D&O coverage. (*See* Whitlinger Decl. Ex. C.) Depletion of that coverage to fund the defense of the D&O Claim will thus deplete an estate resource.

26.      Accordingly, granting a motion at this time seeking standing to assert the D&O Claim would result in management distraction, additional indemnification claims against the estates, and depletion of the Debtors' insurance coverage.

## D.      <u>The Purported Third-Party Claims Are Actually Estate Claims</u>

27.      The SUN Trustee also discusses Purported Third-Party Claims that the SUN Trustee contends it could bring outside of these Chapter 11 Cases. However, if such Claims were true third-party claims, they would fall outside the scope of the relief requested in the Motion. The Trustee readily concedes this contradiction by explaining that if the Court were to deny its Motion, it would bring the Purported Third-Party Claims in a non-bankruptcy forum. (*Compare* Mot. ¶ 1 n.3 (characterizing the claims as requiring "permi[ssion] to be pursued") *with id.* ¶ 7 (describing its intent, in the event that the Court denies the Motion, to "proceed to bring the Third Party Claims [in the appropriate forum]").) The SUN Trustee then invites decision on this issue, even though it would be more appropriately raised in the context of a motion to dismiss for lack of standing were the SUN Trustee to ever bring the Purported Third-Party

15

Claims in any court.  (*See id.* ¶ 7 n.7 ("To the extent, however, any party in interest believes otherwise, presumably it will raise such concerns in opposition to this Motion and the Court can decide that issue, if necessary.").)

28.     Notwithstanding the SUN Trustee's characterization of these Claims, the Purported Third-Party Claims against AFI belong to the estates for the benefit of all creditors, and are within the Committee's proposed standing purview.  In the Second Circuit, a cause of action "belongs to the bankruptcy trustee and is considered property of the estate" when two conditions are met:  "(1) the claim must be one that the trustee has a right to assert under the applicable state law; and (2) the claim must be general to the corporation rather than personal to the creditors."  *Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736, 759 (S.D.N.Y. 2008) (citing *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)); *see also St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688, 700-02 (2d Cir. 1989) (holding that alter ego claim was property of the estate and therefore creditor had no standing to assert it).

29.     Because the harm alleged in connection with the Purported Third-Party Claims is harm that allegedly impacted the Debtors' general creditors, as opposed to the SUNs alone, these Claims are estate claims.  This conclusion becomes clear upon an examination of each of the five Purported Third-Party Claims.

### 1.     Counts I through III Are Alter Ego Claims Belonging to the Estates

30.     The SUN Trustee alleges that AFI is liable as HoldCo's alter ego or successor for HoldCo's alleged material breach of the "all or substantially all assets" provision of the Indenture, as well as alleged breach of the implied covenant of good faith and fair dealing, because AFI allegedly transferred away HoldCo's assets to or for the benefit of AFI.  (Compl., Count I-III.)  Although the SUN Trustee characterizes these Claims as belonging solely to the

16

SUN Trustee, the Claims are actually estate claims based on an evaluation of the two factors

provided by the Second Circuit, as discussed above.

31.    The first element – that the claim be one that "the trustee has a right to assert

under applicable state law" – is satisfied.  *Alper Holdings*, 398 B.R. at 759.  Here, Delaware law

determines whether the Debtor has the right to assert a claim to pierce its own corporate veil to

make claims against AFI because HoldCo, whose corporate veil would be pierced, is a limited

liability company formed under Delaware law.  *See Kalb*, 8 F.3d at 132; *see also Duke Energy*

*Trading & Mktg., L.L.C. v. Enron Corp. (In re Enron Corp.)*, 01 B 16034 (AJG), Adv. Pro. 02-

3609 A, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) (explaining that the "debtor-

in-possession would have exclusive standing to maintain a Delaware corporation's alter ego

claim of a general nature.").[16]

32.    Because Delaware law allows a subsidiary to maintain an action against a

corporate parent, courts have found that a Delaware court would permit a debtor corporation to

assert a claim to pierce its own corporate veil.  *See, e.g.*, *Enron*, 2003 WL 1889040, at *3

(citations omitted).  Typically, "the trustee or debtor-in-possession would have exclusive

standing to maintain a Delaware corporation's alter ego claim of a general nature."  *Id.* at *11.

As the *Enron* court explained:

---

[16] Bankruptcy courts in New York use the New York state choice of law rules when determining
what law applies to veil piercing claims.  *See, e.g., Alper Holdings*, 398 B.R. at 757.  Under New
York choice of law rules, the law of the state of incorporation determines when the corporate
form will be disregarded and liability will be imposed on a shareholder.  *See Fletcher v. Atex,
Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).  AFI is a Delaware corporation.  *See Ally Financial Inc.
Quarterly Report (Form 10-Q), for Quarter Ended Sept. 30, 2012, filed on Nov. 2, 2012.  HoldCo
was originally formed as a Delaware corporation in 2004, and was later converted to a Delaware
LLC effective October 24, 2006.  Accordingly, Delaware law applies to any veil piercing claims
asserted by HoldCo against AFI.  *See Official Comm. of Unsecured Creditors of Sunbeam Corp.
v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 365 (Bankr. S.D.N.Y.
2002) (applying Delaware law to veil piercing claims involving entities incorporated in
Delaware).

> The trustee or debtor-in-possession is given [the] exclusive right to assert alter ego claims to ensure fair and equitable treatment of all similarly situated creditors. This is because if alter ego allegations are proven, more assets are available to that debtor to meet creditor claims. Allowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis. Those creditors asserting them first would be preferred to others. ***Where claims are property of a debtor's estate, an individual creditor may not assert it until the trustee abandons the claim.***

*Id.* at *4 (emphasis added; internal citations omitted).

33.    The second element – that the claim be "general to the corporation rather than personal to the creditors" – is also satisfied. *Alper Holdings*, 398 B.R. at 759; *see also Enron*, 2003 WL 1889040, at *4 ("Where a claim is generalized with no particularized injury stemming from it and where the claim may be brought by any creditor, the trustee or debtor-in-possession is the appropriate party to assert the claim and creditors are subject to the outcome of the action brought by the trustee or debtor-in-possession."). "A cause of action is considered 'personal' if there is injury only to one or a select group of specific creditors, and other creditors have no interest in the action." *In re Cabrini Med. Ctr.*, Case No. 09-14398 (ALG), 2012 Bankr. LEXIS 2747, at *29 (Bankr. S.D.N.Y. June 15, 2012) (citing *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348-49 (7th Cir. 1987)), *aff'd sub nom.*, *Mannucci v. Cabrini Med Ctr. (In re Cabrini Med Ctr.)*, 12 Civ. 6661 (SAS), 2012 U.S. Dist. LEXIS 180896 (S.D.N.Y. Dec. 20, 2012). If the direct injury stemming from the alleged misuse of the corporate form and misappropriation of corporate assets is to the controlled entity, and merely reduces assets available to pay creditors, the cause of action belongs to the corporation. *St. Paul*, 884 F.2d at 704-05; *Koch*, 831 F.2d at 1350. The injury cannot be "a secondary effect from the harm done to [the corporation]." *St. Paul*, 884 F.2d at 704.

18

34.    The SUN Trustee fails to identify any particularized harm distinguishable from the harm allegedly inflicted upon *all* of the Debtors' creditors.  These are the sort of "general" allegations that courts say are insufficient to render an alter ego claim "personal" to one or a select group of specific creditors.  *See, e.g.*, *Kalb*, 8 F.3d at 132; *St. Paul*, 884 F.2d at 700-02; *Alper Holdings*, 398 B.R. at 760.  While the SUN Trustee claims that this harm is personal because the Indenture was allegedly breached as a result of the alleged fraudulent transfers to or for the benefit of AFI, the resulting harm to the SUNs was the inability of HoldCo to pay the SUNs' debts.  That harm is no different than the putative harm suffered by HoldCo's creditors generally from the alleged fraudulent transfers to or for the benefit of AFI.  Indeed, the Committee as well seeks to bring, as an estate claim, alter ego claims based upon the alleged transfers of assets from HoldCo and the other Debtors to or for the benefit of AFI.  (Committee Mot. ¶¶ 48-49.)  Accordingly, these purported third-party alter ego claims actually belong to the estate, and therefore the Committee is in the best position to potentially litigate such claims.

### 2.    Tortious Interference Claim Belongs to the Estates

35.    The fourth claim that the SUN Trustee seeks to bring is that AFI purportedly tortiously interfered with the Indenture, by transferring away HoldCo's assets to or for its benefit.  (Count IV.)  This is nothing more than a masked fraudulent conveyance claim.  "The creditor of any bankrupt may allege that the prior dealings of other parties with the bankrupt rendered it insolvent; however, such a claim is for fraudulent conveyance properly brought by the Trustee, not for tortious interference of contact [sic]."  *Ionosphere Clubs, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 439 (S.D.N.Y. 1993) ("Claims by creditors against the debtor for fraudulent conveyance cannot be brought as individual causes of action for tortious interference with contract.").  "All creditors, not simply the [SUNs], have a stake in exposing any impropriety in the[se] transactions."  *Nat'l Am. Ins. Co.*

19

*v. Ruppert Landscaping Co.*, 187 F.3d 439, 442 (4th Cir. 1999).  This Claim thus also belongs to

the Debtors' estates and is within the purview of the Committee's proposed standing.  *See id.* at

441 (holding tortious interference with contract claim belonged to estate).[17]

### 3.    Equitable Subordination Claim Belongs to the Estates

36.    The SUN Trustee's Complaint seeks equitable subordination of AFI's claims

against HoldCo, including claims arising under the AFI Revolver, below the claims of the SUNs

and the SUN Trustee.  (Count V.)  Similar to the other Purported Third-Party Claims, the SUN

Trustee has alleged no particularized injury which would render this not an estate claim.  *See*

*Official Comm. of Unsecured Creditors v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 345

B.R. 56, 59 (S.D.N.Y. 2006) (holding committee's claim for equitable subordination belonged to

the estate because it was not directed "toward any particularized injury suffered by any creditor"

and that such claims "redress injuries allegedly inflicted upon the Debtors and their creditors

generally"), *aff'd*, 493 F.3d 82 (2d Cir. 2007) (per curiam).

37.    Though the SUN Trustee characterizes this as a claim unique to itself, it is in

reality a claim well within the Committee's proposed standing purview because the alleged

inequitable conduct by AFI harmed all of the general creditors.  The Committee has proposed to

seek equitable subordination of AFI's claims against HoldCo below the claims of general

unsecured creditors.  (*See* Committee Mot. ¶ 67.)  The Committee's claim is based upon the

**same conduct** and against the **same party** as Count V of the SUN Trustee's proposed complaint.

---

[17] Generally, tortious interference claims are considered estate, rather than third-party, claims.
*See In re Ragucci*, 433 B.R. 889, 898 (Bankr. M.D. Fla. 2010) (finding tortious interference with
business relations claim was property of the estate and only trustee had standing to pursue it);
*Jenkins v. A.T. Massey Coal Co. (In re Jenkins)*, 410 B.R. 182, 191-92 (Bankr. W.D. Va. 2008)
(finding tortious interference with business relations claim was property of the estate); *In re
Dexterity Surgical, Inc.*, 365 B.R. 690, 700-02 (Bankr. S.D. Tex. 2007) (finding tortious
interference claim was merely a restatement of its breach of fiduciary claim and was therefore a
derivative, not direct, claim).

14746829

This is therefore an ***estate claim*** which the Committee is seeking standing to bring on behalf of the general creditors.

*          *          *

38.     In fact, none of the Purported Third-Party Claims the SUN Trustee seeks to assert are true third-party claims.  They are merely attempts to repackage the estates' claims against AFI that the Committee is already seeking standing to pursue on behalf of the Debtors.  The SUN Trustee's attempt to wrest these causes of action away from the estates for the SUNs' personal benefit should be rejected.

### E.     The SUN Trustee Cannot Be Given Authority Over Settlements

39.     In addition to the right to prosecute claims as a non-estate fiduciary, the SUN Trustee also seeks authority to settle so-called HoldCo Claims and to have a veto on the ability of the Debtors or the Committee to settle such claims.[18]  Because these are estate claims, entry of the SUN Order would result in the SUN Trustee supplanting the Debtors as estate fiduciaries vested with authority to settle a broad range of estate claims, and deprive the Debtors of their ability to propose a plan that includes a settlement of such claims without the SUN Trustee's consent.  Indeed, if the Motion is granted, outside the plan context, the SUN Trustee will have, "in consultation with the Committee and Debtors, *the exclusive right and authority to enter into settlements on behalf of HoldCo* with respect to the HoldCo Claims."  (SUN Order ¶ 4 (emphasis added).)  Within the plan context, the SUN Trustee will have what amounts to a veto on any settlement included in the plan.  (*See id.* (providing for the "exclusive" right to settle claims "in consultation with the Debtors" in the plan context).)[19]

---

[18] Mot., Ex. A (the "SUN Order").

[19] Under the SUN Order, it is unclear whether this *de facto* veto would continue after exclusivity ends.  *See* SUN Order ¶ 4 ("[T]o the extent the Debtors' exclusivity period is terminated, parties *may reserve their rights with*

14746829

40.    However, the Debtors have the right to settle the estate claims, even if another party is granted standing to prosecute the claims.  *See Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC)*, 423 F.3d 166, 174-76 (2d Cir. 2005).  While the Debtors agreed not to oppose the Committee's request to litigate and settle estate claims against AFI in consultation with the Debtors, the Debtors made that agreement because they believe that the Committee is the best party, as a fiduciary to all of general unsecured creditors of the Debtors' estates, to litigate and settle the claims against AFI in consultation with the Debtors.  The Debtors have no such agreement with the SUN Trustee, whose rights are adequately protected by its ability to vote on any proposed HoldCo plan or to object to any settlement of the claims it seeks to prosecute that may be proposed outside the plan context in a Bankruptcy Rule 9019 motion.  This Court should reject the SUN Trustee's attempt to further increase the SUN Trustee's leverage in ongoing settlement and plan negotiations.  No non-estate fiduciary should be allowed such unfettered power over claims of import to numerous creditors and debtors.

## RESERVATION OF RIGHTS

41.    At this time, the Debtors take no position on the legal merits of any of the Claims outlined in the Motion.  However, the Debtors disagree with a variety of the factual assertions and characterizations set forth in the Motion regarding the Debtors and their directors and officers.  The Debtors reserve all of their rights with respect to the factual assertions set forth in the Motion.

---

respect to the standard to settle the HoldCo Claims under a Chapter 11 plan and nothing herein shall prohibit these parties from proposing and/or prosecuting a plan that seeks to settle the HoldCo Claims.") (emphasis added).

22

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order (a)

denying the relief requested in the Motion and (b) granting such other relief as may be

appropriate.

Dated:  May 6, 2013
       New York, New York

Respectfully submitted,

*/s/*Gary S. Lee_____
Gary S. Lee
Jamie A. Levitt
Alexandra Steinberg Barrage
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

*Counsel to the Debtors*
*and Debtors in Possession*

*/s/*Steven J. Reisman_____
Steven J. Reisman
Theresa A. Foudy
Maryann Gallagher

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559

*Conflicts Counsel to the Debtors*
*and Debtors in Possession*

14746829