**Hearing Date and Time: May 7, 2013 at 10:00 a.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Barry H. Berke
Jeffrey S. Trachtman
Jennifer L. Rochon
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Electronic mail: keckstein@kramerlevin.com

*Counsel for The Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Residential Capital, LLC, *et al.*, | : Case No. 12-12020 (MG) |
| | : |
| Debtors. | : Jointly Administered |
| | : |

------------------------------------------------------------ x

**OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO OBJECTIONS TO ITS MOTION FOR ENTRY OF AN
ORDER AUTHORIZING THE COMMITTEE TO PROSECUTE AND
SETTLE CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES**

REDACTED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 3

    I.      The Objectors Do Not Meaningfully Contest That the Committee Satisfies
           the Criteria for *Commodore* Standing .................................................................. 3

    II.     The Relief Sought in the Motion is Appropriate and Timely ................................. 6

    III.    AFI's Self-Serving Responsive Narrative is Not Only Procedurally
            Inappropriate But Also Belied by Contemporaneous Evidence ............................. 7

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

    **Page(s)**

CASES

*Adelphia Commc'ns Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.)*,
   330 B.R. 364 (Bankr. S.D.N.Y. 2005) ........................................................................... 4, 8

*FHFA v. Ally Financial Inc.*,
   No. 11-cv-7010 (DLC), 2012 WL 6616061 (S.D.N.Y. Dec. 19, 2012) ............................. 9

*In re Adelphia Commc'ns Corp.*,
   544 F.3d 420 (2d Cir. 2008) ............................................................................................. 7

*In re BH S&B Holdings LLC*,
   420 B.R. 112 (Bankr. S.D.N.Y. 2009) ........................................................................... 10

*In re Commodore Int'l Ltd.*,
   262 F.3d 96 (2d Cir. 2001) ...................................................................................... 1, 3, 6

*In re Dewey & LeBoeuf LLP*,
   No. 12-12321 (MG), 2012 WL 5985445 (Bankr. S.D.N.Y. Nov. 29, 2012) ................ 4, 5

*In re Smart World Techs., LLC*,
   423 F.3d 166 (2d Cir. 2005) ............................................................................................. 7

*Unsecured Creditors Comm. of Debtor, STN Enters., Inc. v. Noyes (In re STN Enters., Inc.)*,
   73 B.R. 470 (Bankr. D. Vt. 1987) .................................................................................... 4

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Committee respectfully submits this Reply in further support of its Motion for standing and authority to prosecute and settle on behalf of the Estates all Claims arising from the Committee and Examiner Investigations that the Estates may have against the AFI Defendants.[1]

**PRELIMINARY STATEMENT**

1. The Motion explains how the Committee satisfies each element required to obtain authority under *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001): it details the existence of colorable Claims on veil-piercing, fraudulent conveyance, and other theories that the Debtors themselves asserted could be worth billions of dollars, and establishes that it is both in the best interests of the Estates and necessary and beneficial to the conduct of the cases for the Committee – the only unconflicted fiduciary for all unsecured creditors – to prosecute Claims that the Debtors sought to settle for inadequate consideration and are conflicted from pursuing.

2. The limited objections lodged by Ally Financial Inc. ("AFI"), the Wilmington Trust, National Association ("Wilmington Trust"), and the Ad Hoc Group of Junior Secured Noteholders (the "JSNs", together, the "Objectors") do not challenge the Motion in any meaningful way. Each recognizes, implicitly or explicitly, the obvious colorability of claims that AFI was prepared to pay $750 million to resolve. None suggests that the Committee is not the most appropriate fiduciary to prosecute the bulk of the claims – much less that it would be in the best interests of the Estates for the claims *not* to be prosecuted.

3. The only real objections to the Motion are procedural – mainly as to its timing – but none of the Objectors explains why, if the current mediation process fails, the cases are not

---

[1] Abbreviated terms not defined herein have the meanings assigned in the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates [Docket No. 3412] (the "Motion").

- 1 -

best served by prompt commencement of litigation aimed at maximizing AFI's ultimate contribution to the Estates. The Committee has committed to await the Examiner's report before filing a complaint against the AFI Defendants. Granting the Motion will not prematurely unleash litigation – it is merely a ministerial step to facilitate preparations for the inevitable next phase of these cases if the mediation is unsuccessful, a matter that should not be unnecessarily delayed in light of mounting administrative expenses in these cases.

4. The related objections to the scope of the Committee's proposed settlement power are inexplicable in light of the nearly identical authority already provided in the order granting the Committee standing to sue the JSNs. The additional arguments in the Wilmington Trust and JSN objections [Docket Nos. 3561 and 3563, respectively] (the "Non-Defendant Creditor Objections") mostly pertain to inter-creditor disputes that may eventually need to be litigated if not settled, but have little to do with the main event here: commencing litigation against AFI.

5. Even AFI concedes the "relatively low" standard for granting standing based on the Debtors' consent and formally objects only to "certain aspects" of the Motion (*i.e.*, timing and settlement authority). *See* AFI's Limited Objection and Response to the Motion [Docket No. 3560] (the "AFI Objection" or "AFI Obj.") at 1, 6. Yet, without once arguing that the Court should find the Claims to be non-colorable, AFI devotes most of its response to a detailed and highly argumentative presentation on the merits of the Claims.

6. AFI's presentation – indeed, all of its arguments – should be ignored for purposes of the Motion. First, as the *defendant* in the proposed litigation, AFI has no interest in maximizing the Estates, but seeks only to *defeat* the Claims. If it has standing at all here, its views must be taken with a huge grain of salt. Furthermore, AFI does not assume the truth of facts alleged by the Committee and argue that they could not survive a motion to dismiss (which

might be relevant to colorability), but rather presents its own version of the facts, as if on summary judgment. Worse, it relies heavily on memoranda of interviews conducted by the Examiner without the presence or participation of the Committee, ignoring much of the contemporaneous written evidence. And AFI's discussion of the veil-piercing case law merely reflects application of its own skewed factual story. At best, AFI's aggressive presentation foreshadows a hard-fought plenary litigation in which full discovery will be crucial. For these and other reasons discussed below, the AFI Objection should be rejected and the Committee Motion granted in its entirety.

## ARGUMENT

### I.  The Objectors Do Not Meaningfully Contest That the Committee Satisfies the Criteria for *Commodore* Standing

7.  As noted, even AFI recognizes that "[b]ased on the Debtors' consent, the standard for granting standing is relatively low." AFI Obj. at 1. No party seriously disputes that the standard is easily met here.

8.  First, there can be no doubt that the Claims described in the Motion are *at least* colorable. Even in a negotiation with its captive subsidiaries, AFI was prepared to pay $750 million to settle them. While it now implies that this constituted nuisance value (AFI Obj. at 6 n.1), the number is hardly *de minimis* for any company.     Redacted

9.  Neither Wilmington Trust nor the JSNs suggest that the Committee's veil-piercing and other claims are not colorable. And while AFI launches a detailed attack on the Claims by setting forth its own competing story, it does *not* attempt to analyze them by a motion to dismiss standard that assumes the truth of the facts alleged. AFI does not even attempt to link

up its argumentative factual and legal presentation to the colorability standard, essentially admitting that it is merely previewing its eventual summary judgment motion.

10. Even if AFI seriously attempted to contest colorability, its arguments would be entitled to no weight – if AFI even has standing to offer them in connection with the Motion. As the very defendant against which the Committee seeks to prosecute the Claims, AFI's "interests are antithetical to the interests of the estate and its large number of non-Defendant creditors." *Adelphia Commc'ns Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 368 n.3 (Bankr. S.D.N.Y. 2005) ("*Adelphia*").

11. Nor do any of the Objectors contest the logical further conclusion that it must be in the best interests of the Estates and necessary and beneficial for the cases to have colorable claims of this magnitude vigorously pursued. None of the Objectors takes issue with the Committee's showings on this point and why it is in the best position to perform this necessary task. *See* Motion ¶¶ 74-77. Pursuit of the Claims could generate billions of dollars – certainly constituting "substantial recovery[, which] would benefit the estate and its creditors," (*In re Dewey & LeBoeuf LLP,* No. 12-12321 (MG), 2012 WL 5985445, at *8 (Bankr. S.D.N.Y. Nov. 29, 2012) ("*Dewey*") – far outweighing any reasonably anticipated litigation costs, particularly as the Committee Investigation and Examiner Investigation draw to a close. *See Adelphia,* 330 B.R. at 384. The Committee's pursuit of the Claims is entirely consistent with the goal of "maximiz[ing]" estate value. *See id.* at 375. Again, given AFI's adverse interests, any "protestations as to what is in the interests of the estate" must be taken "with a grain of salt." *Id.* at 368 n.3. *See also Unsecured Creditors Comm. of Debtor, STN Enters., Inc. v. Noyes (In re STN Enters., Inc.)*, 73 B.R. 470, 476 n.12 (Bankr. D. Vt. 1987) (finding defendant's standing to object prior to filing of complaint was "questionable" because "[o]ur judicial system permits

defendants to be unaware of complaints until they are served with one"). Moreover, since the Debtors are admittedly conflicted and unable effectively to pursue the Claims, denial of Committee standing would almost certainly result in the abandonment and waste of significant and valuable estate causes of action. *See Dewey*, 2012 WL 5985445, at *6 (citing *In re Hydrogen L.L.C.*, No. 08-14139 (AJG), 2009 WL 2913448, at **2-3 (Bankr. S.D.N.Y. May 7, 2009) (Committee standing in best interest of estate because debtor's conflict of interest prevented it from bringing suit)).

12.  The Non-Defendant Creditor Objections turn principally on issues that are simply not relevant to the Motion. For example, the JSN Objection argues that the Committee should not be given standing to pursue "Junior Secured Noteholder Claims," but then describes these claims as including only the JSNs' own individual claims against AFI (which the Committee does not seek standing to bring) and certain inter-debtor claims as to which the JSNs claim a security interest in the proceeds (which the Committee agrees should not be prosecuted at this time by Wilmington Trust or any other party). *See* JSN Obj. at 4-5.[2]

13.  For its part, Wilmington Trust does not argue that the Committee should be denied standing to assert any of the Claims described in the Motion, but simply seeks to preview its own separate motion [Docket No. 3475] for standing to assert similar and related claims on behalf of ResCap, in some cases because of the Committee's purported conflicts of interest (addressed below in ¶17). *See* Wilmington Trust Obj. at 4-6. These issues have nothing to do

---

[2] The JSNs further argue that the Committee should be denied standing on behalf of Debtors that lack "material" unsecured creditors. JSN Obj. at 6. But the Debtors identified in the JSN Objection all do have scheduled unsecured claims – including unsecured claims filed on behalf of *the JSNs themselves*. *See* Claim Nos. 5639, 5668, 5702. Moreover, the JSNs cite as authority for this argument only the general standard governing derivative standing – without explaining what claims the Committee might purport to bring that would not satisfy that standard. Nor do they cite any case holding that a creditors' committee lacks standing to litigate colorable claims that may bring value into the estate simply because that value might, in some cases, flow to secured creditors or shareholders.

with this Motion, and Wilmington Trust itself does not argue that they constitute a reason to deny it. The Committee will respond to Wilmington Trust's motion in a separate objection.

## II. The Relief Sought in the Motion is Appropriate and Timely

14. AFI's principal articulated objection to the Motion is that it is "premature" because the mediation is ongoing and the Examiner's report forthcoming. AFI Obj. at 6. Obviously a global settlement would moot this Motion; but the Motion assumes, to the contrary, that the mediation has *not* succeeded and that the parties and Court wish to press forward promptly to resolve outstanding disputes, maximize the value of the Estates, and conserve administrative costs flowing from further delay. And the Committee has already stated that no complaint will be filed before the Examiner issues his report.

15. Thus, this motion is largely ministerial – intended to eliminate a procedural step that could slow down commencement of litigation when and if it becomes necessary. Absent any serious suggestion that the Committee does not qualify for *Commodore* standing, the Motion should be granted so that the Committee is situated to move ahead rapidly upon the issuance of the Examiner Report in order to bring all good faith Claims on behalf of the Estates. Other than the desire to forestall the commencement of litigation against it, AFI offers no reason why this straightforward relief should not be granted.

16. Nor is any serious issue presented by the Objectors' opposition to the settlement authority sought in the Motion, which they inaccurately describe as giving the Committee an absolute "veto" over any settlement *See* AFI Obj. at 6; JSN Obj. at 7. The Committee simply seeks the same scope of authority that this Court granted it with respect to litigation against the JSNs: the exclusive right to enter into settlements in consultation with the Debtors, while reserving for the Debtors the right to settle claims through a plan with the Committee's consent. Other parties would reserve whatever rights they have following termination of exclusivity to

propose plans that would settle the Claims with or without the Committee's support. *See* Motion, Exhibit A, ¶ 5; Order Authorizing the Official Committee of Unsecured Creditors to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates [Docket No. 2523]. The authorities AFI cites for the proposition that this previously approved scope of settlement authority "is contrary to settled law" (AFI Obj. at 6) actually say no such thing.[3] Moreover, as confirmed on the record at the last exclusivity hearing, the Debtors would further retain the right to file a chapter 11 plan, in the exercise of their fiduciary duties, notwithstanding the Committee's lack of consent during any extended Exclusive Periods.

17. Finally, Wilmington Trust argues that *it* should have exclusive right to settle ResCap's claims against AFI because of purported "structural conflicts" on the part of the Committee. Wilmington Trust Obj. at 6. But as will be demonstrated in more detail in the Committee's response to Wilmington Trust's own standing motion, the so-called "conflicts" consist merely of the Committee's intended statutory role representing and mediating among the interests of diverse constituencies. Not only does Wilmington Trust fail to substantiate any actual conflict that would prevent the Committee from effectively litigating claims against AFI on behalf of multiple debtors, but elevating Wilmington Trust's powers might well require that other separate quasi-fiduciaries be appointed for other constituencies with potentially differing interests in related claims.

### III. AFI's Self-Serving Responsive Narrative is Not Only Procedurally Inappropriate But Also Belied by Contemporaneous Evidence

18. Notwithstanding its concession that the Committee's claims "should be addressed at the motion to dismiss stage and, if necessary, after discovery," AFI expends nearly all of its

---

[3] *See In re Adelphia Commc'ns Corp.*, 544 F.3d 420 (2d Cir. 2008) (denying equity committee's ability to settle claims where its derivative standing was *revoked*); *In re Smart World Techs., LLC*, 423 F.3d 166 (2d Cir. 2005) (rejecting creditors' effort to settle, over debtor's objection, estate claims being litigated by debtor).

Limited Objection purporting to "identify threshold flaws" and "certain material misstatements and omissions" in the Committee's Motion. AFI Obj. at 1. This tactic is "inappropriate" on a standing motion, where a Court is not tasked with conducting a "'mini-trial' or evidentiary hearing . . . and . . . has not made factual findings on disputed issues of fact." *Adelphia*, 330 B.R. at 369.

19. In *Adelphia*, like here, the proposed defendants sought to "advance their explanations" and "argue additional facts." 330 B.R. at 377. The court rejected this ploy, noting that "the great bulk of the matters that underlie the Creditors' Committee's claims will involve issues of fact and context, all requiring further factual development and inquiry, and, quite possibly, trial." *Id.* The court stressed that the standard for colorability was "a relatively easy one to make," *id.* at 376, and "[i]t should be remembered, of course, that a determination on an *STN* . . . motion that claims are colorable simply satisfies a condition for permitting the issues to be decided where they should be decided – in the plenary litigation itself, where the need to prove allegations will remain, and where factual and legal claims and defenses can and will be considered on their individual merits." *Id.* at 381 (internal citations omitted).

20. Apart from its procedural impropriety, AFI's "factual" counter-narrative is, for the most part, predicated on characterizations of unsworn testimony from interviews conducted by the Examiner, for which the Committee was not present and therefore unable to cross-examine witnesses.[4] AFI's improper "sword and shield" use of confidential material should not be tolerated – these references should be stricken or the materials produced to the Committee. In

---

[4] AFI relies not only on testimony of its own employees, but also invokes supposed testimony by ResCap employees. *See, e.g.*, AFI Obj. at 3-5, 10-11, 13, 15, 17, 19, 20, 22, 24-25. That AFI apparently had access to interviews of a supposedly independent ResCap directors is itself further evidence of the integrated nature of the companies and AFI's control.

any event, AFI's spin is frequently belied by contemporaneous evidence from AFI's and the Debtors' own files:

- For example, AFI puts tremendous weight on the Operating Agreement between itself, ResCap and GM, attaching a copy of the agreement to its Objection and arguing that it constitutes "overwhelming evidence" of the "effective" and binding separation between the two companies. *See* AFI Obj. at 14 n.6. But contemporaneous documents show that ResCap's own CEO characterized the Operating Agreement as a "charade of a fig leaf," and its general counsel opined that the terms imposed by AFI on ResCap in acquiring Ally Bank    Redacted

    – all in violation of the Operating Agreement. Indeed, one court already has found that "the appearance of independence that might be conveyed by the Operating Agreement in isolation" is "call[ed] into question" when viewed in context of other contemporaneous facts, including public statements that "[AFI] control[s] all fundamental matters affecting [ResCap]." *FHFA v. Ally Financial Inc.*, No. 11-cv-7010 (DLC), 2012 WL 6616061, at **3-4 (S.D.N.Y. Dec. 19, 2012).

- In another egregious example, AFI contends that ResCap was "fully rejuvenate[d]" and "return[ed] to profitability in 2010" and that witnesses testified that it eventually "would 'print money.'" AFI Obj. at 10-11. But AFI's own CEO wrote in a contemporaneous email    Redacted    and in 2010 Congressional testimony, described ResCap as a "millstone around [AFI's] neck," "the single-greatest barrier to [AFI's] access to the capital markets," and "a problem to be solved, not . . . an opportunity." The rating agencies, too, were deeply skeptical of any real or sustainable recovery in 2010. For example, S&P observed in November 2010 that ResCap's "small asset size, ongoing phasing-out of assets, and still-high level of nonperforming assets lead us [to] expect earnings to remain muted and possibly volatile, depending on market conditions," adding that "over the long term, we do not view Residential Capital as a core business line for [AFI]."

- Further, AFI argues that certain affiliate agreements between Ally Bank and GMACM appropriately shifted all R&W risk onto Debtors because, "[a]s all witnesses have confirmed, it would make no sense for the Bank (or AFI) to take on the risk (potential R&W liability) even though it obtained no economic upside from the[se] transactions." AFI Obj. at 23-24.    Redacted

---

[5] Notably AFI's assertion that Ally Bank "was never. . . one of ResCap's most valuable or profitable assets" (AFI Obj. at 20) is itself belied by contemporaneous evidence,    Redacted

Redacted

21. As these illustrative discrepancies show, AFI's counter-"factual" narrative is as lacking in credibility as it is procedurally inappropriate, and should thus be disregarded.[6]

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order granting the relief sought in the Committee Motion and such further relief as the Court deems just and proper.

Dated: May 6, 2013
New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Barry H. Berke
Jeffrey S. Trachtman
Jennifer L. Rochon
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Electronic mail: keckstein@kramerlevin.com

*Counsel for The Official Committee
of Unsecured Creditor*

---

[6] As for AFI's legal counterarguments, this inquiry too is premature. Tellingly, the veil-piercing case law on which AFI relies was decided with the benefit of a complaint and not in the context of a standing motion. *See, e.g., In re BH S&B Holdings LLC*, 420 B.R. 112 (Bankr. S.D.N.Y. 2009) (veil piercing issues determined by this Court in evaluating motion to dismiss, after standing was granted on consent of debtor). In any event, AFI's attempt to distinguish the case law on which the Committee relies is unavailing as it is predicated on AFI's mischaracterization of the facts here, distortions of the authorities themselves, or bald assertions that the facts in those authorities are "nothing like this case." AFI Obj. at 8 & n.2.