MORRISON COHEN LLP
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone:    (212) 735-8600
Joseph T. Moldovan
David A. Piedra
Robert K. Dakis
*Counsel for the Independent Directors*
*of Residential Capital LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

## LIMITED OBJECTION AND RESPONSE OF THE INDEPENDENT DIRECTORS OF RESIDENTIAL CAPITAL, LLC TO THE MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, FOR AN ORDER AUTHORIZING IT TO PROSECUTE CLAIMS AND OTHER CAUSES OF ACTION ON BEHALF OF THE RESIDENTIAL CAPITAL, LLC ESTATE

The independent directors of Residential Capital, LLC (the "Independent Directors"),[1] by

and through their undersigned counsel, hereby submit this Limited Objection and Response (the

"Response") to the Motion of Wilmington Trust, National Association, Solely in its Capacity as

Indenture Trustee for the Senior Unsecured Notes Issued by Residential Capital, LLC for an

Order Authorizing it to Prosecute Claims and Causes of Action on Behalf of the Residential

---

[1]    The current independent directors of Residential Capital, LLC are Edward F. Smith, III, Pamela E. West, Jonathan Ilany, John E. Mack and Teresa M. Brenner.  This Response is submitted only on behalf of these independent directors (excepting Ms. Brenner, who is not named in the proposed complaint); however, the arguments set forth herein are applicable to all of the officers and directors named in the proposed complaint annexed to the Motion.

Capital, LLC Estate (the "Motion").  In support of their Response, the Independent Directors respectfully submit the following:

## PRELIMINARY STATEMENT

1.        The Independent Directors joined the board of Residential Capital, LLC ("ResCap") between 2008 and 2011, during the worst financial crisis in our nation's history. During this period, mortgage businesses like ResCap faced enormous regulatory pressures and litigation exposures, had limited access to financing, and had few options for restructuring. Nearly every significant mortgage company closed its doors or was acquired for pennies on the dollar between 2008 and 2011.

2.        Into the teeth of this maelstrom, the Independent Directors worked to preserve ResCap's business for its stakeholders, including the very stakeholder that now asks this Court for permission to sue the Independent Directors on ResCap's behalf.  The Independent Directors had no personal stake in the performance of ResCap.  They had no equity in the business, no performance-based compensation awaiting them, no tangible benefit that might accrue to them if ResCap successfully navigated the crisis.  The Independent Directors served because each genuinely believed that their skills might help salvage a struggling multi-billion dollar business and the thousands of employees whose jobs depended upon that business.

3.        The Independent Directors faced difficult decisions and were forced to make tough choices.  But they came prepared to meet ResCap's problems head on.  The Independent Directors were knowledgeable and skilled, bringing more than 120 years of professional experience to bear.  For example:

- Mr. Smith, a graduate of Harvard Business School, has nearly 30 years successful experience trading foreign and domestic securities, including at Goldman Sachs and Bank of America;

- Ms. West has more than 30 years of experience in the financial services industry, including senior management roles at NationsBank and Bank of America;

- Mr. Mack has more than 30 years of experience in corporate finance, previously serving as Corporate Treasurer of Bank of America and Chief Financial Officer of Shinsei Bank, Ltd. of Tokyo, and currently serving as Vice Chairman of Islandibanki hf., an Icelandic bank;

- Mr. Ilany has been involved in the mortgage business for more than 30 years, starting at Bear Stearns in 1982. He served as the head of non-agency trading at Bear Stearns and was a member of the Bear Stearns board of directors.

4.        The Independent Directors kept themselves well informed as they tackled ResCap's problems. The Independent Directors had the benefit of the advice of ResCap's in-house counsel and top-tier outside law firms – first Skadden Arps and later Morrison & Foerster. The Independent Directors also had their own counsel, Morrison Cohen, LLP. The Independent Directors drew upon the advice of sophisticated financial advisors such as FTI Consulting, Centerview Partners, Goldin Associates and Lazard Ltd. And in addition to all of this, ResCap management provided frequent and detailed information to keep the ResCap board informed.

5.        Navigating the minefield of the mortgage crisis proved a Herculean task, and required an enormous effort from the entire ResCap board, including the Independent Directors. The ResCap board explored every strategic alternative to preserve ResCap's business while other mortgage businesses failed around them. The ResCap board was vigilant, attentive, informed and active. The Independent Directors reviewed voluminous materials and met hundreds of times between 2008 and the petition date, formally and informally, in board meetings, in committee meetings and with their counsel and advisors.

6.        In May 2012, having explored and pursued various strategic alternatives, the ResCap board elected to file for bankruptcy protection. Owing to the pre-petition efforts of the ResCap directors, officers and management team, as well as ResCap's outside advisors, the

bankruptcy thus far has been an unqualified success. The board approved a pre-petition agreement between ResCap and its parent Ally Financial, Inc. ("AFI"), that provided ResCap with the ability to continue to originate mortgages in bankruptcy. The board also approved a pre-petition settlement agreement with the trustees of up to 392 securitization trusts, ultimately allowing the sale of ResCap's assets without the overhang of future litigation, as the trustees deferred and capped their cure claims.

7.　　　These strategic pre-petition agreements proved prescient, as they directly resulted in the Debtors' ability to sell its mortgage origination and servicing assets as part of a going concern – a result that had never been achieved by any significant mortgage servicer in bankruptcy. ResCap successfully sold the bulk of its assets to Ocwen Financial, Walter Investments and Berkshire Hathaway, generating over $4 billion in proceeds for the estates, and preserving 3,750 of 3,900 U.S.-based jobs.

8.　　　It is through this prism that the Court should view the claim by Wilmington Trust, National Association ("Wilmington") that the Independent Directors somehow neglected their fiduciary duties. Having joined the ResCap board at a time when ResCap already faced intractable problems, and having remained on the board as ResCap faced increasingly limited options for restructuring and an uncertain future, and having helped to navigate ResCap to a position where its assets have been sold for an amount far exceeding the expectations of even the most optimistic observer, the Independent Directors are now rewarded with the prospect of litigation aimed at them personally.

9.　　　There is no colorable basis for the claims that Wilmington now seeks permission to assert on ResCap's behalf. The Independent Directors served admirably and tirelessly under difficult circumstances, and controlling law protects their business decisions from the type of second-guessing that Wilmington now wishes to undertake. In addition to the

fact that Wilmington can state no colorable claim against the Independent Directors, the Motion should also be denied because it would be premature to grant the relief Wilmington seeks prior to the issuance of the Examiner's report and the conclusion of the ongoing plan mediation.

## LIMITED OBJECTION AND RESPONSE[2]

10.        In its Motion, Wilmington seeks an order authorizing it to assert various claims belonging to ResCap.  The claims for which Wilmington seeks standing are set forth in a proposed complaint annexed as Exhibit B to the Wilmington Motion (the "Proposed Complaint").  The Proposed Complaint contains a single claim for breach of fiduciary duty asserted against a number of officers and directors of ResCap, including the Independent Directors (the "Fiduciary Duty Claim").  (Proposed Complaint ¶¶ 272-276).

11.        As a threshold matter, Wilmington's motion is premature.  Counsel for the Independent Directors has been participating in extensive negotiations among the Debtors and various creditor constituents (including Wilmington), in an attempt to achieve a consensual Chapter 11 plan.  This Court appointed the Honorable James M. Peck to serve as mediator, and through his prodigious efforts, the parties have made considerable progress in settlement negotiations.  (See Decl. of Lewis Kruger in Supp. of Debtors' Exclusivity Mot., filed on Apr. 19, 2013 [Docket No. 3486] ¶ 19 ("I believe that the Debtors and their key stakeholders have made substantial progress in mediation, resulting in significant movement toward global

---

[2]        While the entire Motion suffers from a number of procedural infirmities that should result in its denial, the Independent Directors understand that those infirmities are addressed in the Debtors' response to the Motion, which the Independent Directors adopt.  The Independent Directors limit their objection to that portion of the Motion that seeks standing to assert claims against the Independent Directors.  With respect to the allegations of the Motion not addressed in this Response, the Independent Directors reserve all of their rights.  In the event the Motion is granted, the Independent Directors reserve their rights to challenge the sufficiency of any claim asserted against them by way of a motion to dismiss.

#4516956 v1 \020530 \0002

resolution of key plan issues and serious consideration of a term sheet regarding potential plan treatments . . . .").    The mediation is continuing.    To grant standing to Wilmington to assert claims against the Independent Directors now would not only distract them from their duties in these cases, but could also inhibit the ongoing negotiations.

12.       In addition, the Examiner appointed by this Court is currently scheduled to submit his report on or before May 13, 2013.  [Docket No. 2868].  The Examiner has conducted an exhaustive investigation of the conduct of the ResCap board of directors, including interviewing each of the current and former Independent Directors (excepting Ms. Brenner), in some cases for multiple days.  The Examiner's report will undoubtedly analyze the transactions at issue in Wilmington's Proposed Complaint, and this Court should have the benefit of the Examiner's insight before determining whether Wilmington's claims are colorable.

13.       Moreover, the Fiduciary Duty claim is not colorable as a matter of law.  The Fiduciary Duty Claim consists of five conclusory paragraphs, only one of which contains a substantive factual allegation (as opposed to mere conclusions).  (Proposed Complaint ¶ 274).  In that single substantive allegation, Wilmington, conclusorily, contends that the directors and officers of ResCap breached their fiduciary duties by "acting for the benefit of Ally Financial . . . in approving the Subsidiary Debt Forgiveness Transactions and in their conflicted conduct with respect to GSEs and government investigations, penalties, and settlements, and with respect to settling of other RMBS-related claims." (Proposed Complaint ¶ 274).

14.       The Second Circuit has recognized that a creditor seeking to bring a claim against a debtor has "an implied, but qualified" right to proceed in the debtor's stead where the trustee or debtor in possession "unjustifiably failed to bring suit . . . ." *See Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d. Cir. 1985); *see also In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 71 n.7 (2d. Cir 2002) (holding

#4516956 v1 \020530 \0002

6

that the holding in STN applied individual creditors as well as committees).  However, such a right to initiate a suit is predicated on a creditor presenting a colorable claim for relief. *See In re STN Enters.*, 779 F.2d at 905; *see also Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001); *Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 374 (Bankr. S.D.N.Y. 2002) ("a finding that allowing a committee to pursue a debtor's claim would be necessary and beneficial to the resolution of the bankruptcy proceeding is required in all instances").  As this Court has explained, the claims at the center of a request for standing "will be evaluated under a standard 'much the same as that undertaken when a defendant moves to dismiss a complaint for failure to state a claim.'" *In re Dewey & LeBoeuf LLP*, Memorandum Opinion and Order, 12-12321 (Bankr. S.D.N.Y. Nov. 29, 2012) (*citing Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998)).

15.    For the reasons set forth below, the claims that Wilmington seeks to assert against the Independent Directors on ResCap's behalf are not colorable, and the motion for standing to assert them should be denied.

## A.    Wilmington Has Failed to Allege Any, Let Alone Sufficiently Detailed, Facts to Overcome the Business Judgment Presumption

16.    ResCap is a Delaware limited liability company, and thus the proposed Fiduciary Duty Claim must accordingly be analyzed under the substantive law of Delaware.[3]

---

[3]    Federal courts follow the choice of law rules of the state in which they sit. *Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)* 673 F.3d 180, 187-88 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–497 (1941)).  "New York applies the internal affairs doctrine to claims for breach of fiduciary duty and thus applies the law of the state of incorporation to such claims." *Marino v. Grupo Mundial Tenefora, S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011); *Winn v. Schafer*, 499 F. Supp. 2d (S.D.N.Y. 2007); *Hart v. General*

*See Matsumura v. Benihana Nat'l Corp.*, 465 Fed Appx. 23 (2d Cir. 2012) (applying Delaware

law to claim for breach of fiduciary duty claim because the defendant corporation is incorporated

in Delaware); *Marino v. Grupo Mundial Tenefora*, S.A., 810 F. Supp. 2d 601, 607 (S.D.N.Y.

2011) (applying Delaware law to breach of fiduciary duty claim because defendant is a Delaware

corporation and granting motion to dismiss); *380544 Canada, Inc. v. Aspen Tech., Inc.,* 544 F.

Supp. 2d 199, 233 (S.D.N.Y. 2008) (stating that "under the internal affairs doctrine, which

provides that issues relating to the internal affairs of a corporation are governed by the law of the

company's state of incorporation, Delaware law governs the claims for breach of fiduciary duty

and fraud that are asserted against the Individual Defendants in the cross claims"); *see also*

*Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 798 n. 3 (2d Cir. 1980) ("the law of the state of

incorporation governs an allegation of breach of fiduciary duty"); *BBS Norwalk One*, 60 F. Supp.

2d at 129 (same); *Hart*, 129 A.D.2d at 185 (law of the state of incorporation applied to breach of

fiduciary duty claim).

17.     Under Delaware law, the Independent Directors are entitled to the protections

of the business judgment rule with respect to the three challenged transactions identified in

paragraph 274 of the Proposed Complaint. *In re Trinsum Group*, *Inc*., 466 B.R. 596, 613 (Bankr.

S.D.N.Y 2012) (applying Delaware law); *Gantler v. Stephens*, 965 A.2d 695, 705–06 (Del.

2009); see also *Cede & Co. v. Technicolor, Inc*., 634 A.2d 345, 361 (Del. 1993).

18.     The business judgment rule presumes that in making a business decision, the

directors and officers acted on an "informed basis, in good faith and in the honest belief that

---

*Motors Corp.*, 129 A.D.2d 179, 517 N.Y.S.2d 490 (1st Dep't 1987); *BBS Norwalk One, Inc. v. Raccolta*, Inc., 60 F. Supp. 2d 123, 128 (S.D.N.Y. 1999); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders - because otherwise a corporation could be faced with conflicting demands

actions taken are in the corporation's best interest." *In re Trinsum Group*, 466 B.R. at 613. If the board had a reasonable basis for its decision "a court should not second-guess that choice even though [the board] might have decided otherwise or subsequent events may have cast doubt on the board's determination." *Paramount Communications v. QVC Network Inc.*, 637 A.2d 34, 45 (Del. 1994).

19.    The Independent Directors are entitled to the presumption of the business judgment rule "*ab initio*, and to survive a [motion to dismiss], a plaintiff must allege well-pleaded facts to overcome the presumption." *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 71 (Del. 1995). To overcome the business judgment rule presumptions, a complaint must allege "particularized facts" that, if true, would demonstrate that the Independent Directors breached their duty of loyalty or duty of care. *See Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000); *Gantler*, 965 A.2d at 706; *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163-64 (Del. 1995) (a "plaintiff challenging a board decision has the initial burden of rebutting the presumption of the business judgment rule").

20.    The burden of rebutting the business judgment presumption is a "heavy burden," *Lewis v. S.L.& E., Inc.*, 629 F.2d 764, 768 (2d Cir. 1980); *White v. Panic*, 783 A.2d 543, 551 (Del. 2001), requiring, as it does, the particularized pleading of facts demonstrating that the board of directors, in reaching their decision, acted in bad faith, in a manner that cannot be attributed to any rational business purpose or in a grossly negligent manner that included a failure to consider all material facts reasonably available. *Brehm*, 746 A.2d at 264 n.66. Under the business judgment rule, courts do not "examine the wisdom of the decision itself." *Brazen v. Bell Atl. Corp.*, 695 A.2d 43, 49 (Del. 1997). "[T]he Court gives great deference to the substance of the directors' decision and will not invalidate the decision, will not examine its reasonableness, and 'will not substitute [its] views for those of the board if the latter's decision

#4516956 v1 \020530 \0002

can be attributed to any rational business purpose.'" *Paramount Communications*, 637 A.2d at

45, n.17; *Roselink Investors L.L.C v. Shenkman*, 386 F. Supp. 2d 209, 224 (S.DN.Y. 2004)

("[T]he business judgment rule is intended to protect directors against ["attack[s] on the wisdom

of defendants' decision] because their decisions are not to be second-guessed by courts with the

benefit of hindsight.").  Indeed, overcoming the presumption afforded by the business judgment

rule has been described as "a near-Herculean task." *See Stanziale v. Nachtomi (In re Tower Air,

Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005); *Roselink Investors,* 386 F. Supp. at 216-217 ("The

presumption of the business judgment rule is rebutted in . . . rare cases").

21.    Wilmington's proposed Fiduciary Duty Claim does not contain anything close to

the required particularized allegations from which this Court could infer that the Independent

Directors breached the duty of loyalty or a breach of the duty of care, and thus Wilmington

cannot assert a colorable claim against the Independent Directors.

### (1)    Wilmington Has Not Alleged a Breach of the Duty of Care

22.    The duty of care under Delaware law simply requires that directors "'use that

amount of care which ordinarily careful and prudent men would use in similar circumstances,

and consider all material information reasonably available in making business decisions.'"  *In re

Trinsum Group, Inc.*, 466 B.R. at 609 (granting motion to dismiss) (quoting *In re Walt Disney

Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) ("*Disney I*")); *Blackmore Partners v. Link

Energy LLC*, No. Civ. 454-N, 2005 WL 2709639 at *8, 2005 Del. Ch. LEXIS 155 at 30 (Del.

Chancery Oct. 14, 2005).

23.    The duty of care is breached only when the actions of directors have risen to the

level of "'gross negligence,'" which has been defined as "'reckless indifference to or a deliberate

disregard of the whole body of stockholders, or actions which are without the bounds of

reason.'" *In re Trinsum Group, Inc.*, 466 B.R. at 609 (quoting *Disney I*); *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1113 (Del. Ch. 2008) ("[A] corporate director is only considered to have breached his duty of care in instances of gross negligence."); *In re: BH S&B Holdings LLC, et al.*, 420 B.R. 112, 144 (Bankr. S.D.N.Y. 2009) ("Delaware courts have found that the standard in Delaware for breach of the duty of care is "'gross negligence.'").

24.     A finding of a breach of the duty of care is rarely made in Delaware, and has certainly not been pled here with any modicum of the "particularized allegations" required. *Taylor v. Kissner*, 893 F. Supp. 2d 659, 688 (Dist. Del. 2012) (granting motion to dismiss breach of duty of care claim because "[p]laintiff's allegations do not give rise to a reasonable doubt that the transaction was a product of business judgment"); *See Disney I*, 907 A.2d at 750 ("duty of care violations are rarely found"); *Roselink*, 386 F. Supp. 2d at 220-21 (creditor's allegations that director defendants "made a poor decision" is "[in]sufficient to overcome the business judgment rule presumption of due care.").

25.     The proposed complaint contains no "well-pleaded" or "particularized" allegations that the Independent Directors failed to consider material information reasonably available to them, or otherwise acted in a grossly negligent manner, with respect to any of the three challenged transactions identified in paragraph 274 of the Proposed Complaint. To the contrary, the Independent Directors acted appropriately after considering all relevant information available to them, after seeking the advice of skilled legal and financial advisors and after discussing and deliberating over the issues at frequent and lengthy board meetings, and with their advisors.

**(a) <u>The Subsidiary Debt Forgiveness Transactions Were Appropriate</u>**

26. The first category of challenged transaction in the Proposed Complaint is the "Subsidiary Debt Forgiveness" transactions described in paragraphs 98 and 99 of the Proposed Complaint. Neither proposed paragraph specifically alleges the manner in which the Independent Directors allegedly breached a duty of care with respect to these transactions; Wilmington merely alleges in conclusory fashion that the transactions were not beneficial to ResCap. (Proposed Complaint ¶ 99).

[redacted]

28. [redacted] Wilmington pleads no particularized facts from which this Court could infer that the Independent Directors

#4516956 v1 \020530 \0002

breached their fiduciary duties with respect to these transactions. That, in retrospect, Wilmington does not view the impact of these transactions as advantageous to the claims in this bankruptcy proceeding of the beneficiaries of its trust (and its beneficiaries alone) is no basis to find that the Independent Directors did not act on an informed basis, in good faith and in the honest belief that the actions taken by them were in the best interests of ResCap at the time and under the circumstances then present. *See Roselink Investors, 386 F. Supp. 2d at 224* (director "decisions are not to be second-guessed by courts with the benefit of hindsight."); *Paramount Comm. Inc.,* 637 A.2d at 45; *In re Goldman Sachs Group, Inc. S'holder Litig.,* 2011 Del. Ch. LEXIS 151, *3 (Del. Ch. Oct. 12, 2011) ("So long as such individuals act within the boundaries of their fiduciary duties, judges are ill-suited by training (and should be disinclined by temperament) to second-guess the business decisions of those chosen by the stockholders to fulfill precisely that function.").

### (b)    The Foreclosure Settlements Were Sound Business Decisions

29.    The Complaint also alleges that the Independent Directors breached their fiduciary duties in connection with "GSE and government investigations, penalties, and settlements." (Proposed Complaint ¶ 274).

30.    In 2011 and 2012, ResCap and its subsidiaries GMAC Mortgage LLC and RFC entered into a series of commitments with the U.S. Department of Justice, 49 of 50 states Attorneys General, the FDIC and the Federal Reserve Board regarding certain alleged misconduct by ResCap in connection with the servicing and foreclosure of mortgage loans (collectively, the "Foreclosure Settlements"). The Foreclosure Settlements required its signatories to make a cash payment of approximately $110 million, plus provide up to $200

million in additional relief in the form of loan modifications and other accommodations to be made to borrowers who qualified for such relief under the terms of the Foreclosure Settlements.

31.     ResCap and its subsidiaries had valid business reasons for entering into Foreclosure Settlements, chief among them to eliminate the debilitating burden and expense of protracted investigation and litigation over the alleged foreclosure abuses that the Foreclosure Settlements sought to resolve.  ResCap was represented and advised by experienced counsel and financial advisors in connection with the Foreclosure Settlements, and the ResCap board discussed and deliberated over the matter many times over many months.

32.     At the time of the Settlements, ResCap required its parent's assistance in making the payment, so that ResCap could avoid violating tangible net worth covenants.  Accordingly, on January 30, 2012, ResCap entered into an agreement pursuant to which AFI agreed to contribute $196.6 million in capital to ResCap.  In exchange, ResCap agreed to indemnify AFI for loan modification losses that AFI incurred in connection with the "soft dollar" portion of the Foreclosure Settlements.

33.     The Proposed Complaint contains no particularized allegations of a failure by the Independent Directors to meet their duty of care in approving the January 30, 2012 letter agreement or the Foreclosure Settlements.  The ResCap board approved these agreements after careful consideration of all material information reasonably available to them, after appropriate discussion and deliberation, after consultation with skilled financial and legal advisors, and after due consideration of the limited alternatives available to ResCap.  Moreover, ResCap received reasonably equivalent value from AFI for the indemnification in the form of continued capital support and ability to comply with its obligations under the Foreclosure Settlements.

(c)     **The RMBS Settlement Agreement Was Fair and Reasonable and Enormously Enhanced the Value of the Estates**

34.     Wilmington's Proposed Complaint also contends that the Independent Directors breached their fiduciary duty in connection with their approval of the $8.7 billion RMBS trust settlement (the "RMBS Settlement").  The RMBS Settlement is currently the subject of a motion pursuant to Bankruptcy Rule 9019 pending before this Court (the "9019 Motion") (Proposed Complaint ¶ 274).  To the extent that the Fiduciary Duty Claim is predicated on the board's approval of the RMBS Settlement, is utterly lacking in merit for two reasons.

35.     First, any breach of fiduciary duty claim predicated on the RMBS Settlement is premature, as the 9019 Motion – which will determine the propriety of the RMBS Settlement – has not yet been heard by this Court.  The RMBS Settlement has not yet been approved nor have any claims associated with the RMBS Settlement been approved.  If Wilmington disagrees with the action taken by the Independent Directors in approving the RMBS settlement, Wilmington's remedy is to oppose the 9019 Motion, which Wilmington has done.  [Docket No. 2814].

36.     If Wilmington's (or other parties') opposition the 9019 Motion is successful, Wilmington would have no claim against the Independent Directors because the alleged detrimental effects of the RMBS Settlement would have been removed by the denial of the Motion.  Wilmington could claim no damages from the board's approval of the RMBS Settlement because the purported negative impact of the settlement would have been prevented.  Moreover, if the 9019 Motion is granted over Wilmington's objection, Wilmington would still have no claim against the Independent Directors relating to the RMBS Settlement.  This is so because, in order to grant the 9019 Motion, the Court would have determined that the actions taken by the Independent Directors in approving the RMBS settlement were reasonable.

37.    Second, the RMBS Settlement was approved by the ResCap board in good faith and consistent with sound advice of ResCap's counsel and financial advisors, and the board's decision is entitled to the full protection of the business judgment rule.  As set forth more fully in the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements [Docket Nos. 1887, 2803, 2804], the RMBS Settlement was objectively reasonable based on ResCap's historical representation and warranty exposure, of which the board was well informed, and which was duly discussed and deliberated upon by the board based upon the information available to them.

38.    The RMBS Settlement was part of a well-though-out plan by the ResCap board to achieve the softest landing possible in bankruptcy for the benefit of all creditors.  Prior to filing the petitions in these cases, the ResCap board approved a plan support agreement with AFI (the "AFI PSA") and the RMBS Settlement.  The AFI PSA provided ResCap with – among other things – critical financing and other support necessary for ResCap to continue originating and servicing mortgage loans in bankruptcy.   The RMBS Settlement provided for, among other things, that the trustees of up to 392 securitization trusts (the "Trustees") would release the Debtors from billions of dollars in claims once the RMBS Settlement was approved by the Court. When it became clear that the RMBS Settlement would not be approved prior to the sale of Debtors' assets, the Trustees agreed (i) not to object to the assignment of pooling and servicing agreements free and clear of representation and warranty claims and (ii) to defer, and cap the amount of, their cure claims.  This paved the way for a sale of the Debtors' assets as a going concern and effectively inoculated from the threat of unknown future litigation.

39.    The RMBS Settlement inures to the great benefit of the creditors in this proceeding.  Without the RMBS Settlement, the estates face the enormous burden and expense of litigating over $40 billion of representation and warranty claims, plus at least $600 million in

cure costs and servicing costs. If the RMBS Settlement is not approved, the ensuing litigation with the RMBS trustees would throw the estates into protracted litigation and impose enormous administrative expenses.

40.     In the months leading up to the filing of these cases, ResCap faced the prospect – as happened to other mortgage companies during the financial crisis – of a liquidation of its business for pennies on the dollar. By approving the RMBS Settlement and the AFI PSA, the Debtors were able to sell their business as a going concern generating more than $4 billion, an amount far exceeding even the most optimistic projections. The decision of the ResCap board to approve the RMBS Settlement should not now be second-guessed or subject the Independent Directors to personal liability. They made the correct decision under the circumstances and it has already inured to the benefit of all creditors in these cases.

### (2)     The Complaint Fails to Allege a Breach of the Duty of Loyalty

41.     The Fiduciary Duty Claim alleges that the ResCap officers and directors engaged in "conflicted conduct" thereby allegedly breaching their duty of loyalty. (Proposed Complaint ¶ 274). Yet the Proposed Complaint does not contain a single allegation as to *how* the Independent Directors were purportedly "conflicted."

42.     The Delaware duty of loyalty requires that corporate fiduciaries act in the best interests of the corporation when making decisions or acting on its behalf. *See, e.g., Cede & Co.*, 634 A.2d at 361. To state a claim for breach of the duty of loyalty, a plaintiff must allege facts demonstrating that a majority of a board that approved the transaction in dispute was interested in the transaction and/or lacked independence. *In re: BH S&B Holdings LLC*, 420 B.R. at 151; *see Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002)).

43.    None of the Independent Directors are alleged to have received any benefit of any kind from any of the disputed transactions – nor did they.  None of the Independent Directors had any motive to "do the bidding" of AFI, as none are even alleged to have had any connection to AFI, its directors or officers.  All of the Independent Directors are experienced professionals in the mortgage, corporate finance or securities industries, with no personal stake in the outcome of any of the challenged transactions.  They were advised and counseled by multiple teams of financial and legal advisors from well-respected firms.  Put simply, the Proposed Complaint does not allege even one fact from which the Court could infer a breach of the duty of loyalty.  Accordingly, the breach of fiduciary duty claim – to the extent it is premised upon a purported breach of the duty of loyalty – must be dismissed.

**B.    The Fiduciary Duty Claim Is Premised Upon ResCap's Purported Insolvency; However, Wilmington Has Failed to Allege Insolvency As a Matter of Law**

44.    The Fiduciary Duty Claim is predicated on an assertion that ResCap was insolvent at the time of the transactions that give rise to the claim, and that purportedly as a result of the insolvency, the Independent Directors owed a fiduciary duty to ResCap's creditors.  (Proposed Complaint ¶ 273).  But the Proposed Complaint contains no factual allegations from which insolvency can be inferred.  Aside from asserting the bare conclusion that ResCap was insolvent, the Proposed Complaint contains no *facts* of any kind from which the Court could infer that ResCap was insolvent at the time of any of the transactions about which Wilmington complains.

45.    Delaware law requires the pleading of *facts* from which insolvency can be inferred. *Buckley v. O'Hanlon, C.A.* No. 04-955 (GMS), 2007 U.S. Dist. LEXIS 22211 at *19 (D. Del. Mar. 28, 2007) ("To plead insolvency, a plaintiff must aver facts that establish, for pleading purposes, that the corporation had a deficiency of assets below liabilities with no

reasonable prospect that the business will succeed, or that it was unable to meet maturing obligations as they fell due in the ordinary course of business"); *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004) ("To meet the burden to plead insolvency [the plaintiff] must plead facts that show that [the corporation] has either: 1) a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or 2) an inability to meet maturing obligations as they fall due in the ordinary course of business."); *see also, Trenwick Am. Litig. Trust. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 184 (Del. Ch. 2006) (conclusory allegations without pleading facts supporting the inference of insolvency are insufficient to plead insolvency).

46.    Because Wilmington's Fiduciary Duty Claim is predicated on ResCap's insolvency, and because Wilmington has pled no *facts* from which insolvency can be inferred, Wilmington has failed to state a colorable claim against the Independent Directors.


**C.    Claims Based Upon Any Transactions Prior To May 14, 2009 Are Time-Barred**

47.    To the extent the Fiduciary Duty Claim includes Subsidiary Debt Forgiveness transactions that took place in 2008 and the early part of 2009, it is time-barred.  (Proposed Complaint ¶ 274, 98-99).  Under both Delaware and New York law, the statute of limitations for breach of fiduciary duty is three years.[4]  *See Graulich v. Dell, Inc.*, No. 5846-CC, 2011 Del. Ch. LEXIS 76 (Del. Ch.  May 16, 2011) (applying Delaware's three year statute of limitations in dismissing breach of fiduciary duty claim); *Kaufman v. Cohen*, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157, 164 (1st Dep't 2003) (applying New York's three year statute of limitations to

---

[4]    While the actions of the Independent Directors are indisputably governed by Delaware law under the internal affairs doctrine (*supra* pp. 7-8, ¶16), Wilmington may argue that a statute of limitations is procedural in nature, and this Court should apply New York procedural law.  *In re Coudert Bros.*, 673 F.3d at 188.  The argument would be of no consequence, because New York and Delaware have the same three year statute of limitations.

#4516956 v1 \020530 \0002

breach of fiduciary duty claim for money damages).   A claim for breach of fiduciary duty accrues at the time of the wrongful act "even if the plaintiff is unaware of the cause of action or the harm." *Graulich*, 2011 Del. Ch. LEXIS 76, at *26.  To the extent that the Subsidiary Debt Forgiveness transactions took place more than three years before the petition date, those transactions cannot properly form the basis of a breach of fiduciary duty claim, and standing to prosecute any such claims would be inappropriate and wasteful of estate assets.

**D.    No Transactions Prior to November 15, 2011 Can Be Attributed To Independent Directors Jonathan Ilany or John Mack, And Therefore No Claims On Account of Such Transactions Can Be Brought Against Ilany or Mack**

48.    Jonathan Ilany and John Mack were elected as Independent Directors by the existing ResCap board on November 16, 2011.  The Complaint alleges that the Subsidiary Debt Forgiveness Transactions took place in 2008 through 2010.  As neither Mr. Mack nor Mr. Ilany sat on the board at this time, neither could be held accountable for those transactions.  The Court should not grant Wilmington standing to assert claims against Mr. Mack and Mr. Ilany for events that transpired before they were on the ResCap board.

## <u>CONCLUSION</u>

49.     For the reasons set forth above, the Independent Directors   submit that Wilmington's Fiduciary Duty Claim is not colorable and premature.  The Independent Directors therefore respectfully request that the Court deny Wilmington's Motion for derivative standing to assert the Fiduciary Duty Claim.

Dated: May 6, 2013

Respectfully submitted,

s/ David A. Piedra_____
MORRISON COHEN LLP
909 Third Avenue, 27th Floor
New York, New York 10029
Telephone:   (212) 735-8600
Joseph T. Moldovan
David A. Piedra
Robert K. Dakis
*Counsel to Independent Directors of
Residential Capital LLC*

#4516956 v1 \020530 \0002