MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' *DAUBERT* MOTION TO EXCLUDE
TESTIMONY OF MBIA'S EXPERT C.J. BROWN**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

RULE 702 STANDARD .........................................................................................................1

ARGUMENT ...........................................................................................................................2

I.    BROWN IS NOT QUALIFIED ................................................................................2

II.   BROWN'S OPINIONS ABOUT SILLMAN'S AGREE RATE ARE NOT BASED ON ANY RELIABLE METHODOLOGY .........................................................3

CONCLUSION ........................................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amorgianos v. National Railroad Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ............................................................................................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ...................................................................................................... 1, 3

*Dura Automotive Systems of Indiana, Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ......................................................................................... 5, 6

*In re Iridium Operating LLC*,
   373 B.R. 283 (Bankr. S.D.N.Y. 2007) ............................................................................... 6

*In re Med Diversified, Inc.*,
   334 B.R. 89 (Bankr. E.D.N.Y. 2005) ................................................................................. 3

*In re Worldcom, Inc.*,
   371 B.R. 33 (Bankr. S.D.N.Y. 2007) ............................................................................. 2, 3

*In re Young Broadcasting Inc.*,
   430 B.R. 99 (Bankr. S.D.N.Y. 2010) ............................................................................. 1, 3

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003) ................................................................................. 1, 2, 6

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................................................................ 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B)(i) ................................................................................................. 4, 5

Fed. R. Evid. 702 ........................................................................................................................ 1

# INTRODUCTION

MBIA Insurance Corporation ("MBIA") objected to the RMBS Settlement and asked C.J. Brown, a purported expert on valuation (who happens to be one of MBIA's paid advisors), to review and assess the opinion of Debtors' loan underwriting expert, Frank Sillman. Brown's opinions should be excluded.

Brown, purportedly an expert on valuation, lacks the expert qualifications to criticize Sillman's analysis of Debtors' potential representation and warranty liability in the mortgage-backed security industry. And Brown's methodology, laid out in paragraph 24 of his declaration, is faulty. Here's what Brown did: he assumed the validity of a data set (at the direction of MBIA's counsel) and then, without any analysis of his own, criticized Sillman for not using that same data. He then had a phone call with another supposed "expert"—who has submitted nothing for the court's review—to confirm this approach. Brown concedes he did no independent analysis. His testimony does not meet the requirements of Fed. R. Evid. 702 and *Daubert* and should be excluded.

# RULE 702 STANDARD

"[E]xpert testimony must be based on sufficient facts or data and it must be the product of reliable principles and methods properly applied." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004). And the witness proffered must in fact be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of expert testimony (here MBIA) bears the burden of establishing its admissibility by a preponderance of the evidence. *See, e.g.*, *In re Young Broad. Inc.*, 430 B.R. 99, 121 (Bankr. S.D.N.Y. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592, n. 10 (1993). The trial court's task is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom *the same*

1

*level of intellectual rigor that characterizes the practice of an expert in the relevant field*."

*Lippe*, 288 B.R. at 686 (emphasis added).

## ARGUMENT

### I. BROWN IS NOT QUALIFIED.

Brown is qualified to testify on a particular matter only if there is a "nexus between [his] credentials and the subject matter of his testimony." *See In re Worldcom, Inc.*, 371 B.R. 33, 41-42 (Bankr. S.D.N.Y. 2007). Whether a nexus exists is determined by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Id*. at 42.

Brown says he is an expert in "valuation, restructuring, and capital-raising transactions." *See* Ex. 1, December 3, 2012 Declaration of C.J. Brown ("Brown Decl.") ¶ 13; *see also* Ex. 2, Excerpts from the December 18, 2012 Deposition of C.J. Brown ("Brown Dep.") at 18:1-4 (identifying himself as an expert in "valuation" and "valuing assets and liabilities").[1] The subject about which he opines, though, is neither valuation, restructuring, nor capital-raising transactions. Brown opines instead about "certain assumptions and conclusions made by Mr. Sillman in connection with the amount of the $8.7 billion proposed unsecured claim" and the allocation method of the RMBS Settlement. *See* Ex.1, Brown Decl. ¶¶ 2-3.

Sillman's work, on which Brown opines, involves, in part, (1) an analysis of liability for representations and warranties contained in agreements pertaining to (2) mortgage-backed securities. *Id*. at ¶¶ 6-11. But Brown: (1) concedes he is not an expert in liability for representations and warranties (Ex. 2, Brown Dep. at 18:10-13) and (2) admits he is not "an

---

[1] "Ex. __" refers to the exhibits attached to the Declaration of LaShann M. DeArcy dated May 6, 2013, filed concurrently with this motion.

expert in mortgage-backed securities, no." *Id*. at 18:5-9.[2] By Brown's own admissions, then, there is no "nexus" between his credentials on "valuation, restructuring, and capital-raising transactions" and his opinions on Sillman's work. *See In re Worldcom*, 371 B.R. at 41-42 (purported expert's work as economist for 30 years did not qualify him as expert in specific industry (telecommunications) at issue); *see also In re Med Diversified, Inc.*, 334 B.R. 89, 95-97 (Bankr. E.D.N.Y. 2005) (purported expert's work as accountant for 20 years did not qualify him as expert in specific industry (health care) at issue). Moreover, Brown has not otherwise shown how his experience in "valuation, restructuring, and capital-raising transactions" qualifies him to opine on Sillman's work.[3]

## II. BROWN'S OPINIONS ABOUT SILLMAN'S AGREE RATE ARE NOT BASED ON ANY RELIABLE METHODOLOGY.

*Daubert* requires that Brown "illustrate the reliability of his methodology and analysis at every step." *In re Young Broad.*, 430 B.R. at 125. If he cannot, the Court should exclude his testimony because of the "analytical gap between the data and the opinion proffered." *Id*. When determining whether an analytical step is unreliable, the "court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). But it does not take a "rigorous examination" of Brown's opinions to see they are not based on sound methodology but simply dress up assumptions he was told to make by MBIA's counsel.

---

[2] Brown has never been qualified as an expert to testify in federal court on the subject of representation and warranty liability, repurchase claims, or mortgage-backed securities settlements. *See* Ex. 2, Brown Dep. at 14:2-19:13.

[3] Although a self-claimed valuation expert, Brown has no opinion on the proper method for determining whether a claim size is within a range of reasonableness, what that range should be, or whether the proposed $8.7 billion allowed claim is within that range. *See id*. at 32:14-33:1; 33:16-19. Nor does he have his own estimate of the incidence of material defects in Debtors' loans. *Id*. at 51:15-19.

3

sf-3277355

Brown does not question the reasonableness of Sillman's overall methodology. *See* Ex. 1, Brown Decl. ¶ 22 n.6; *see also* Ex. 2, Brown Dep. at 29:9-12. Instead, the "flaw" Brown finds is that Sillman should have used a certain input—the "agree rate"—derived from Debtors' experience dealing with repurchase demands on private label securities ("PLS") instead of on securities from government-sponsored entities ("GSEs"). The agree rate represents the percentage of a trustee's repurchase demands to which the Debtors agree. *See* Ex. 3, June 11, 2012 Declaration of Frank Sillman ("June 2012 Sillman Decl.") ¶ 64. Sillman analyzed the available PLS data, but explained that he could not ascertain a meaningful agree rate because more than 80% of PLS repurchase demands were unresolved.[4] *Id*. at ¶ 8.

Brown insists that Sillman should have used the experience in repurchase demands from the PLS to derive his agree rate. Brown says he "simply looked at Mr. Sillman's analysis and looked at some flaws and calculated a new range based on correcting those flaws." *See* Ex. 2, Brown Dep. at 33:1-4. The "flaw" he corrected was Sillman's use of the GSE-related data instead of the PLS-related data.

Brown did not perform or rely on statistical analysis for his opinions because he "didn't view it as something that was going to be that relevant to the analysis." *Id*. at 68:16-17. At his deposition, Brown noted that he viewed the PLS data set as "reasonably large" (*see id*. at 63:9-17) and he had his team look at "sample sizes in determining other statistical populations" such as "political polls." *Id.* at 67:2-14. Brown concedes, however, that "[t]here's no work that went into the report" aside from what is stated in paragraph 24. *Id*. at 68:11-70:14. He should, therefore, not be able to testify about any purported work not in his report. *See* Fed. R. Civ. P.

---

[4] An "unresolved demand" is a repurchase demand received by Debtors, but not yet resolved one way or the other. In comparison, the GSE data showed only about 3% of repurchase demands were unresolved. *See* Ex. 3, June 2012 Sillman Decl. ¶ 24.

26(a)(2)(B)(i) (an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them.").

What, then, is the basis of paragraph 24 in Brown's opinion that Sillman's work is flawed because it did not use PLS-related data? Well, MBIA's counsel told him to assume the PLS data "represented sufficiently robust data from which to draw conclusions as to an appropriate Agree Rate for purposes of Mr. Sillman's methodology." *See* Ex. 1, Brown Decl. ¶ 24. As Brown describes his work, he applied "discounts to [Sillman's work] based on assumptions [he was] given by counsel." *See* Ex. 2, Brown Dep. at 37:9-12. In other words, Brown's criticism of Sillman is simply the opinion of MBIA's outside counsel.

Given Brown's testimony that the real "nature of the fight" is whether Sillman should have used GSE data with a discount or PLS data (*id*. at 39:18-23), surely Brown must have done more. He must have done an analysis that led him to conclude the PLS data were "sufficiently robust" for making conclusions about an agree rate. Well, Brown made a phone call to a supposed "expert in representations and warranties analysis and repurchase demand resolution." *See* Ex. 1, Brown Decl. ¶ 24. Brown says this person noted that "Debtors' repurchase demand experience with the GSEs is not a reliable source of information to calculate Agree Rates." *Id*. This "expert" was not named in Brown's report, has submitted nothing for the Court's review, and has not—through Brown or otherwise—explained the basis for the statements Brown attributed to him.[5] Brown's role as a conduit for the opinion of someone else who may or may not be an expert in representation and warranties analysis is no substitute for Brown having his own expertise and reliable methodology. *See Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (refusing to permit an expert who lacked expertise in the relevant

---

[5] Brown eventually identified the person as Chris Connolly, a "consultant for MBIA." Brown does not "know his background" and is "not familiar with [his] qualifications." *See* Ex. 2, Brown Dep. at 71:9-15; 75:13-18.

specialty to be the "mouthpiece" of another non-testifying expert in a different specialty); *see also*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (approvingly citing *Dura Auto* for proposition that "the expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an unproduced expert.").

Assuming away the problem he has been hired to deal with—and supporting that assumption by a brief phone call with someone whose analysis is unknown—is not the reliable methodology that can support an expert opinion. *See In re Iridium Operating LLC*, 373 B.R. 283, 350 (Bankr. S.D.N.Y. 2007) ("Expert opinion is unreliable and not based on sufficient facts and data when the expert 'made no attempt to reconcile his view [ ] with a number of real world events' and 'fail[s] to acknowledge and account for these events.'"). Brown did no "reality check" of his own and provides no explanation as to why the PLS data, which is limited by the high number of unresolved demands, is "sufficiently robust" to derive a reliable agree rate. Brown's failure to account for the limitations of this key variable renders his testimony unreliable. *Lippe*, 288 B.R. at 686 ("Expert testimony is inadmissible if it makes no effort to account for major variables").[6] Without such independent analysis, Brown is only a conduit for MBIA's legal argument.

---

[6] Sillman, in comparison, recognized the differences between the two data sets and expressly discounted for the differences in GSE versus PLS data in calculating agree rates. *See* Ex. 3, June 2012 Sillman Decl. ¶¶ 8, 61.

## CONCLUSION

Brown is unqualified. He used unreliable methods to reach his conclusions. The Court should exclude his testimony.

Dated: May 6, 2013
New York, New York

*/s/    Darryl P. Rains*
Gary S. Lee
Anthony Princi
Darryl P. Rains
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*