**Hearing Date:  May 23, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  May 13, 2013 at 5:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains

*Counsel for the Debtors and*
*Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Joint Administration |

**DEBTORS' DAUBERT MOTION TO EXCLUDE**
**TESTIMONY OF FGIC'S EXPERT CLIFFORD ROSSI**

sf-3277713

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii
I.       ROSSI'S QUALIFICATIONS AND OPINIONS ............................................................1
II.      ARGUMENT .................................................................................................................2
         A.       Rossi Is Not Qualified. .......................................................................................2
                  1.       Rossi Has No Legal Training or Expertise. ..............................................3
                  2.       Rossi Lacks Relevant Experience. ...........................................................3
         B.       Rossi's Methodology Is Unreliable. ...................................................................4
                  1.       Rossi Applies the Wrong Standard. ..........................................................4
                  2.       Rossi Relies on Incomplete Information About the Facts. ........................5
         C.       Rossi's Opinion Does Not Assist the Trier of Fact. ...........................................7
                  1.       Rossi's Opinion Is a Legal Conclusion. ....................................................7
                  2.       Rossi's Opinion Is Not Relevant to the *Iridium* Factors. ..........................8
III.     CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amorgianos v. National Railroad Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ................................................................................................... 4

*Askanase v. Fatjo*,
  130 F.3d 657 (5th Cir. 1997) .................................................................................................. 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ............................................................................................................... 4

*Floyd v. Hefner*,
  556 F. Supp. 2d 617 (S.D. Tex. 2008) .................................................................................... 7

*In re Adelphia Communications Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) .................................................................................... 9

*In re Bruno Machinery Corp.*,
  435 B.R. 819 (Bankr. N.D.N.Y. 2010) ................................................................................... 8

*In re Charter Communications, Inc.*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) .................................................................................... 8

*In re Dewey & LeBoeuf LLP*,
  478 B.R. 627 (Bankr. S.D.N.Y. 2012) .................................................................................... 8

*In re Rosenberg,*
  419 B.R. 532 (Bankr. E.D.N.Y. 2009) .................................................................................... 8

*In re Trinsum Group, Inc.*,
  466 B.R. 596 (Bankr. S.D.N.Y. 2012) .................................................................................... 5

*In re Walt Disney Co. Derivative Litigation*,
  No. 15452-NC, 2004 Del. Ch. LEXIS 27 (Del. Ch. Mar. 9, 2004) ......................................... 7

*In re Walt Disney Co. Derivative Litigation*,
  907 A.2d 693 (Del. Ch. 2005) ................................................................................................ 5

*In re WorldCom, Inc.*,
  371 B.R. 33 (Bankr. S.D.N.Y. 2007) ...................................................................................... 2

*In re Young Broadcasting, Inc.*,
  430 B.R. 99 (Bankr. S.D.N.Y. 2010) .................................................................................. 2, 4

*Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*,
  478 F.3d 452 (2d Cir. 2007) ...................................................................................... 8 & n.8

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ................................................................................................ 7

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ............................................................................................. 7

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) ................................................................................................... 7

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ............................................................................................................... 1, 2, 7

Fed. R. Bankr. P. 9019 ............................................................................................................ 7, 8

The debtors and debtors in possession (the "Debtors") hereby move pursuant to Federal Rule of Evidence 702 to exclude the opinion of Financial Guaranty Insurance Company's ("FGIC") expert witness Clifford Rossi. Rossi opines about supposed deficiencies in the process by which the Board of Directors of Residential Capital, LLC ("ResCap") approved the RMBS Settlement and concludes "based on the documents available to [him]" that the board violated its "'duty of care.'" (Ex. 1, December 3, 2012 Expert Report of Clifford Rossi ("Rossi Report") ¶ 17.)[1]

Rossi is not qualified to offer this opinion—he is not an expert on board processes and has no legal training. And Rossi arrives at this opinion using unreliable methodology that is based on information that is either incomplete or inapplicable in that it is pertinent only to the heavily regulated commercial banking industry. Rossi's lack of understanding of ResCap's corporate structure, industry standards, and the duties of its board, combined with his failure to conduct any investigation of his own render his opinion unhelpful to the Court.

I.  **ROSSI'S QUALIFICATIONS AND OPINIONS**

Rossi teaches courses on risk management (derivative hedging), bank management, and derivatives pricing. (Ex. 2, December 19, 2012 Deposition of Clifford Rossi ("Rossi Dep.") at 10:3-7.) He has managed credit and financial risk at Citigroup, Countrywide Financial Corp., Washington Mutual, and other companies. (Rossi Report ¶¶ 7-8, Ex. A.)

Rossi's claimed expertise is in "risk governance, the R&W process, and controls and mortgage credit risk analytical methods." (*Id.* ¶ 12.) His opinion, however, does not draw from his claimed expertise. Instead, he opines that the board's process for evaluating and approving

---

[1] "Ex. __" refers to the exhibits attached to the Declaration of LaShann DeArcy dated May 6, 2013, filed concurrently with this motion.

the RMBS settlement was deficient and violated the board's duty of care.[2] (*Id*. ¶¶ 15-17.) Rossi has no opinion about whether the settlement approved by this supposedly defective process—the proposed $8.7 billion allowed claim—is actually reasonable or not. (Rossi Dep. at 212:12-22.)

## II.    ARGUMENT

FGIC must show Rossi is "qualified as an expert" to opine on the subject matter, that his opinion is based upon reliable data and methodology, and that his opinion will help the Court "determine a fact in issue." Fed. R. Evid. 702; *see*, *e.g.*, *In re Young Broad., Inc.*, 430 B.R. 99, 121 (Bankr. S.D.N.Y. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592, n.10 (1993)).

The Court should exclude Rossi's opinion that the board's procedures were deficient and violated the board's duty of care. Rossi is not qualified to render that opinion, which is a legal conclusion and not based on reliable data and methodology.

### A.    Rossi Is Not Qualified.

There is no "nexus between [Rossi's] credentials and the subject matter of his testimony." *See In re WorldCom, Inc.*, 371 B.R. 33, 41-42 (Bankr. S.D.N.Y. 2007). A nexus exists if "the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Id*. at 42. But Rossi's expertise does not pertain to board governance and the fiduciary duty of care.

---

[2] Rossi also claims in the summary of his opinion that, because ResCap did not involve risk management personnel in negotiating the settlement, "ResCap could not develop the factual basis necessary for effective arms-length settlement." (Rossi Report ¶ 15). But he does not address whether the negotiations were at arms-length in his report. Rather, he opines that more risk analysis would have been useful in the negotiations and would have aided the board's evaluation of the settlement. (*Id*. ¶¶ 26-30). Thus, this portion of Rossi's opinion is merely an example of the type of information and process he claims were deficient when the board evaluated the settlement.

### 1. Rossi Has No Legal Training or Expertise.

A conclusion about what the "duty of care" requires, and how ResCap's board violated that duty, requires interpreting Delaware law applicable to limited liability companies. But Rossi has no legal training. (Rossi Dep. at 81:13-82:7; 151:17-153:7.) He does not know which laws the board was subject to (*id.* at 81:13-82:7) or how the duties owed by a director of a limited liability company differ from fiduciary duties owed by a director of a commercial bank (*id.* at 152:12-154:8).

### 2. Rossi Lacks Relevant Experience.

Rossi's experience is in risk management—which Rossi defines as hedging using derivatives—not in board governance. (*See id.* at 10:2-7.) He also says he has written and taught classes in risk governance. (*Id.* at 10:2-11:9, 91:7-95:13, 136:21-140:17.) Risk governance, which is only a subset of corporate governance (*id.* at 135:19-25), adds little to his relevant experience. It covers only "the practices and processes that oversee the activities that are entailed in risk management." (*Id.* at 133:11-18).

Rossi has attended approximately four board meetings as a board member (*id.* at 73:8-75:8, 78:18-24), none of which he remembers (*id.* at 75:5-76:6, 78:23-80:25). He has never been a member of a board of a company that filed for Chapter 11 and does not know the objectives for a board when a company is entering, or in, bankruptcy. (*Id.* at 84:4-14, 184:2-11.) He has never been retained to advise a board member how to comply with his or her duties. (*Id.* at 87:13-18.) He does not appear to have ever been a member of a board that evaluated a potential settlement of a lawsuit. (*Id.* at 84:15-85:7.) Nor has he ever been retained to advise a board in connection with a settlement of a lawsuit. (*Id.* at 95:14-96:3.) He does not know all the factors that enter into decisions regarding settling lawsuits. (*Id.* at 123:5-127:4.)

3

### B.    Rossi's Methodology Is Unreliable.

Rossi's testimony must be excluded also because "there is simply too great an analytical gap between the data and the opinion proffered." *In re Young Broad.*, 430 B.R. at 125. Under *Daubert*, Rossi must show "the reliability of his methodology and analysis at every step." *Id*. When determining whether an analytical step is unreliable, "the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Rossi's methods do not withstand such rigorous examination.

#### 1.    Rossi Applies the Wrong Standard.

Rossi bases his opinion on the norms of the commercial banking industry.[3] (Rossi Dep. at 140:18-141:16.) He measured the obligations of ResCap's board against standards derived not from Delaware limited liability company law but rather from standards that apply to bank boards, such as a publication from the Office of the Comptroller of the Currency titled "The Director's Book: The Role of a National Bank Director" ("OCC Report") as well as his own bank experience.[4] (Rossi Report ¶ 17, Ex. C; Rossi Dep. at 57:5-59:11; 118:9-119:1, 137:24-138:7, 145:11-16.)

---

[3] Rossi claims he could not compare ResCap with other mortgage servicers/originators, asserting (without support) that he did not have "a large enough experiential base from which [he] could draw conclusions." (Rossi Dep. at 143:17-144:1.)

[4] He also relies on a survey by PricewaterhouseCoopers to state that "a typical board meeting" is "between 2-6 hours." (Ex. 3, Corporate Board Member and PricewaterhouseCoopers, *What Directors Think: Annual Board of Directors Survey*, 2009; Rossi Report ¶ 21.) Rossi then concludes the 30 minutes of discussion at the board meeting before approving the settlement "was insufficient." (Rossi Report ¶ 21.) That survey, however, is merely descriptive (it covers all board meetings, regardless of topic, frequency, or context). It does not say what Delaware law requires. Not to mention that Rossi acknowledges ResCap was under time constraints, and that the amount of time that is sufficient for a board to make a decision is relative to what is being considered. (Rossi Dep. at 166:10-15, 167:10-18; 188:25-189:24.)

4

sf-3277713

The OCC Report outlines a number of responsibilities of *national bank* directors. (Rossi Report ¶ 17; Rossi Dep. at 145:11-16.) Because ResCap is not a bank, the OCC Report is not the right measuring stick to assess the board's conduct. Directors of banks owe fiduciary duties to different constituencies and are governed by different laws than ResCap directors. (Rossi Dep. at 146:19-147:4, 151:3-157:1.) Rossi does not know what the fiduciary duties are of a director of a limited liability company or how those differ from those owed by a director of a national bank. (*Id.* at 146:2-147:23, 153:21-154:8.) Rossi's opinion conflates the requirements for bank directors detailed in the OCC Report with the duty of care owed by the ResCap board. (*Id*. at 144:11-145:16, 150:3-151:16.)

Rossi does not discuss the actual test under Delaware law for determining whether the board satisfied its duty of due care based on the process by which the board made its decision.[5] *See e.g., In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005); *In re Trinsum Group, Inc.,* 466 B.R. 596, 613 (Bankr. S.D.N.Y. 2012).

### 2. Rossi Relies on Incomplete Information About the Facts.

Rossi's opinion that the board's process "suffered from numerous deficiencies surrounding corporate and risk governance," including a "failure to conduct a[n] . . . assessment of R&W exposure" specific to the settlement and that the settlement "lack[ed] sufficient empirical evidence and analysis" is based on incomplete information. (Rossi Report ¶ 15.) He reviewed only the materials provided to him by FGIC's counsel, which were sometimes

---

[5] Rossi cites to an additional document he claims shows that ResCap was required to have particular risk personnel involved in evaluating the settlement—a request for public comment on a proposed rule that would apply to major bank holding companies and nonbank financial companies designated by the Council for board supervision. (*See* Rossi Report at 11 n.21, ¶ 26; Ex. 4, Federal Reserve System, *Enhanced Prudential Standards and Early Remediation Requirements for Covered Companies*, Federal Register, Vol. 77, No. 3, January 5, 2012.) This document is irrelevant; the proposed rule—which was still open for comment at the time of the settlement—would not apply to ResCap (which is not a bank and has not been designated by the Council for board supervision).

5

incorrect.[6] (Rossi Dep. at 54:14-55:10, 184:12-187:14; Rossi Report Ex. B.) He made no independent effort to gather other information about the board's process for approving the settlement. (Rossi Dep. at 203:4-206:24.)

For instance, FGIC's counsel did not give Rossi minutes of board meetings prior to May 9, 2012, at which the board discussed representation and warranty liability and settlement issues in connection with ResCap's settlement with Fannie Mae, MBIA Insurance Corporation's ("MBIA") loan level representations and warranties lawsuit,[7] or the many other lawsuits against ResCap arising from similar representation and warranty issues. (*See, e.g.*, Ex. 5, November 5, 2010 ResCap Board of Directors Meeting Minutes; Ex. 6, January 27, 2011 ResCap Board of Directors Meeting Minutes.) As a result, Rossi could not know the extent to which the board was already informed about representation and warranty claims, defect rates, legal defenses, claimed damages, and potential liability and was prepared to evaluate the terms of the proposed settlement. Without such evidence, Rossi was led to conclude that "it appears that the directors were not afforded sufficient time or provided with sufficient analysis to make an informed judgment as to the suitability of the Proposed Settlement for ResCap." (Rossi Report ¶ 16.)

Rossi also said the board was kept largely in the dark about the settlement (Rossi Report ¶ 20) based on his reading of the deposition transcripts of only three directors. (Rossi Dep. at 197:18-198:17.) But Rossi did not contact these three directors, or any other board members, to make his own independent assessment of what they understood regarding the settlement. (*See,*

---

[6] FGIC informed Rossi that ResCap is a corporation. (Rossi Report at 6 n.4; Rossi Dep. at 190:6-7.) ResCap is a limited liability company.

[7] Rossi conceded he did not know about the MBIA lawsuit against ResCap for breach of representation and warranty exposure. (*Id.* at 198:24-201:12.) He agreed, however, that, hypothetically, the board's experience with a lawsuit that had been pending for two years over issues similar would have improved its ability to understand the settlement. (*Id.*)

6

sf-3277713

*e.g.*, Rossi Dep. at 193:5-197:5.)  Rossi's analysis is based on incomplete facts; it is therefore unreliable and should be excluded.

### C. Rossi's Opinion Does Not Assist the Trier of Fact.

Rule 702 also requires the Court to determine whether the expert's testimony will "assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005).  Rossi's opinion does not assist the trier of fact because it usurps the fact-finder's role by stating a legal conclusion and is not relevant to the test used to evaluate the settlement under Rule 9019.

#### 1. Rossi's Opinion Is a Legal Conclusion.

"[The Second Circuit] requires the exclusion of testimony which states a legal conclusion." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmiss[i]ble.").  Whether a board's conduct breached its fiduciary duties is a legal conclusion.  *See Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997) (Whether the officers and directors breached their fiduciary duties "is a legal opinion and inadmissible."); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 640-41 (S.D. Tex. 2008) (finding that an expert can testify to standards of conduct applicable to directors in general but not whether the directors violated their fiduciary duties); *In re Walt Disney Co. Derivative Litig*, No. 15452-NC, 2004 Del. Ch. LEXIS 27, at *1 (Del. Ch. Mar. 9, 2004) (excluding expert testimony that the directors breached their fiduciary duties as an improper legal conclusion that was not saved by "mere[] reformulations of the same basic conclusion")*, aff'd*, 906 A.2d 27 (Del. 2006).  Here, Rossi's opinion simply recites what he believes the board did and his conclusion that "the board was unable to render a decision consistent with the 'duty of care' requirement."  (Rossi Report ¶ 17, 24.)

7

### 2. Rossi's Opinion Is Not Relevant to the *Iridium* Factors.

Rossi's opinion that the board's process in approving the settlement was deficient is not relevant to the seven-factor analysis in *Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) ("*Iridium*") used to evaluate settlements under Rule 9019. The Court's role in approving a settlement under Rule 9019 is clearly circumscribed. It must determine whether the settlement "is fair, equitable, and in the best interests of the estate." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012). The Court's task is quite focused; it "must only canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (internal quotations omitted). In *Iridium*, the Second Circuit summarized the factors a court "must" consider when undertaking this reasonableness analysis.[8] *In re Rosenberg*, 419 B.R. 532, 536 (Bankr. E.D.N.Y. 2009).

The objectors put at issue the seventh *Iridium* factor: "the extent to which the settlement is the product of arm's length bargaining." *Iridium*, 478 F.3d at 462. (*See, e.g.*, Comm. Obj. at 14-21; FGIC Obj. at 18-19; Wilmington Trust Obj. at 9; MBIA Obj. at 22-24.) A settlement is a product of "arm's length" bargaining if made "between two unrelated and unaffiliated parties." *In re Bruno Mach. Corp.*, 435 B.R. 819, 834 (Bankr. N.D.N.Y. 2010). Negotiating parties are "unrelated and unaffiliated" when found to have "divergent economic interests." *In re Charter Comm'ns, Inc.*, 419 B.R. 221, 256 (Bankr. S.D.N.Y. 2009) ("discussions involved parties with

---

[8] The *Iridium* factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and [t]he experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining. *Iridium*, 478 F.3d at 462.

8

sf-3277713

clearly divergent economic interests, [thus] the negotiations were well suited to develop a practical and fair result"). Under this factor, the Court's focus is on whether ResCap and the RMBS Trust Investors were "unrelated and unaffiliated" during the negotiations of the RMBS Settlement.[9] In undertaking that analysis, courts sometimes examine the parties' back-and-forth negotiation history, and the tone or contentiousness of the negotiation. *In re Adelphia Comm'ns Corp.*, 368 B.R. 140, 243 (Bankr. S.D.N.Y. 2007) (given duration of negotiations and "acrimonious nature of the disputes, the Settlement was clearly the product of arm's length negotiations").

No aspect of this legal test requires a consideration of whether ResCap's board exercised due care in approving the settlement that was negotiated. Indeed, ResCap's board did not participate in the negotiations. That was done by legal counsel, reporting to the board. Rossi's opinion regarding ResCap's internal board deliberations, then, has nothing to do with whether the RMBS settlement was the product of arm's length *bargaining* between negotiating parties with divergent economic interests—ResCap and the RMBS Trust Investors—or whether the settlement amount was within the range of reasonableness. Thus, Rossi's opinion does not assist the trier of fact and should be excluded.

---

[9] This is, of course, only one factor in seven and need not be dispositive. For instance, one could imagine a settlement negotiated by affiliated parties that is within the range of reasonableness and thus favorable to the estate.

## III. CONCLUSION

Rossi is not qualified and used unreliable methods to reach conclusions that do not aid the Court. The Court should exclude Rossi's testimony in whole.

Dated: May 6, 2013
New York, New York

>*/s/    Darryl P. Rains*
>Gary S. Lee
>Anthony Princi
>Darryl P. Rains
>MORRISON & FOERSTER LLP
>1290 Avenue of the Americas
>New York, New York 10104
>Telephone: (212) 468-8000
>Facsimile: (212) 468-7900
>
>*Counsel for the Debtors and*
>*Debtors in Possession*