MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al*., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DEBTORS' MOTION IN LIMINE TO STRIKE THE OBJECTION AND EXCLUDE THE EVIDENCE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN OPPOSITION TO THE RMBS TRUST SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

BACKGROUND....1

I. GENERAL BACKGROUND....1

II. THE SETTLEMENT AGREEMENT....3

ARGUMENT....5

I. FIDUCIARY DUTIES OF THE COMMITTEE....6

II. SECTION 105....7

III. THE COMMITTEE'S OBJECTION SHOULD BE STRICKEN....8

CONCLUSION....9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Barney's, Inc.*,
197 B.R. 431 (Bankr. S.D.N.Y. 1996) ....................................................6

*In re Bohack Corp.*,
607 F.2d 258 (2d Cir. 1979) ....................................................7

*In re Byrd*,
No. 4-35620-TJC, 2011 WL 589907 (Bankr. D. Md. Feb. 10, 2011) ....................................................8

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 717 (Bankr. S.D.N.Y. 1992), *aff'd* 140 B.R. 347 (S.D.N.Y. 1992) ....................................................6

*In re Johns-Manville Corp.*,
26 B.R. 919 (Bankr. S.D.N.Y. 1983) ....................................................7

*In re Nat'l Equip. & Mold Corp.*,
33 B.R. 574 (N.D. Ohio 1983) ....................................................8

*In re Rickel & Assocs., Inc.*,
272 B.R. 74 (Bankr. S.D.N.Y. 2002) ....................................................7, 8

*In re Zarnel*,
619 F.3d 156 (2d Cir. 2010) ....................................................8

*Marrama v. Citizens Bank*,
549 U.S. 365 (2007) ....................................................8

*Momentum Mfg. Corp. v Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
25 F.3d 1132 (2d Cir. 1994) ....................................................8

**STATUTES**

11 U.S.C.
§ 105(a) ....................................................passim
§ 1107(a) ....................................................2
§ 1108 ....................................................2

Fed. R. Bankr. P.
1015(b) ....................................................2
9019 ....................................................4

Residential Capital, LLC ("ResCap") and its affiliated debtors and debtors-in-possession in the above-captioned Chapter 11 cases (collectively, the "Debtors") hereby move pursuant to section 105 of Title 11 of the United States Code (the "Bankruptcy Code") to strike the objection [Docket No. 2825] (the "Objection") and exclude the evidence of the Official Committee of Unsecured Creditors (the "Committee") to the Debtors' motion [Docket No. 1887] for approval of a proposed settlement (the "RMBS Trust Settlement" or the "Settlement") of claims asserted by up to 392 securitization trusts (the "Trusts") against certain of the Debtors in connection with alleged breaches of representations and warranties contained in the documents governing the applicable securitization transaction, in exchange for an allowed claim of up to $8.7 billion.

As explained below, three, conflicted Committee members abdicated their fiduciary duties to the unsecured creditor body by failing to recuse themselves from the Committee's deliberations and vote on whether the Committee should support the Settlement. Specifically, FGIC, MBIA and Wilmington Trust (all as defined herein) have all evidenced a conflict of interest regarding this matter that disabled them from being unbiased and objective in connection with the Committee's deliberation and vote on the matter. These Committee members' conflicts of interest irrevocably taint the Committee's response to the Settlement. Rather than representing an unbiased, objective view of the Committee in fulfillment of its duty to act in the best interests of all unsecured creditors, the Committee's Objection is the product of self-interest by three of the six Committee members who voted to have the Committee object to the Settlement. As a result, pursuant to section 105 of the Bankruptcy Code and the equitable powers of the Court, the Court should strike the Objection and preclude the Committee from introducing evidence in support of it.

## BACKGROUND

### I. GENERAL BACKGROUND

On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

On May 16, 2012, the United States Trustee for the Southern District of New York appointed the nine-member Committee. Three of the members are trustees of certain trusts that are the subject of RMBS Trust Settlement (U.S. Bank National Association, The Bank of New York Mellon Trust Company, N.A., and Deutsche Bank Trust Company Americas). Two other members—Financial Guaranty Insurance Company ("FGIC"), MBIA Insurance Corporation ("MBIA")—are so-called monoline insurers that provided irrevocable insurance policies guarantying payment of certain residential mortgage backed security certificates issued in connection with the creation of the Trusts and securitization of residential mortgage loans. Additionally, Wilmington Trust NA ("Wilmington Trust"), as trustee for certain senior unsecured notes issued by ResCap, is a member of the Committee.

The Debtors were formerly a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor. Prior to the closing of the Debtors' Court-approved asset sales, the Debtors and their non-debtor affiliates operated the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in*

*Support of Chapter 11 Petitions and First Day Pleadings* (the "Whitlinger Affidavit") [Docket No. 6].

## II. THE SETTLEMENT AGREEMENT

In recognition of the inherent conflicts of interest they faced, trustees U.S. Bank, The Bank of New York Mellon Trust Company, and Deutsche Bank Trust Company, recused themselves from the Committee's deliberations regarding the proposed settlement. (See Comm. Obj. at 1 n.1.) As a result of their recusal, only six of the nine Committee members remained to consider the 9019 Motion.

One day before the filing of their bankruptcy petitions, on May 13, 2012, the Debtors entered into the RMBS Trust Settlement. On the Petition Date, the Debtors publicly disclosed the RMBS Trust Settlement in the Whitlinger Affidavit and at the Debtors' first day hearings.

Committee members FGIC and Wilmington are the co-chairs of the Committee. (*Financial Guaranty Insurance Company's Status Conference Report*, dated September 18, 2012, at 1 n.1, [Docket No 1471]; Princi Decl. Ex. 3 at 62:23-63:8). By May 25, 2012, just eleven days after the Debtors publicly disclosed the RMBS Trust Settlement, and before the Debtors had filed any motion to approve or otherwise justify the RMBS Trust Settlement, FGIC had already decided the proposed settlement was not in its interests. Indeed, on May 25, 2012, prior to any discovery, FGIC sent a letter to U.S. Bank N.A., as trustee for numerous trusts associated with residential mortgage backed security certificates insured by FGIC. FGIC acknowledged that "there [was] very little information publicly available concerning the Settlement Agreement." Nonetheless, FGIC asserted that "[t]he terms of the Settlement Agreement . . . which will increase FGIC's potential claims and losses under the Transactions, ***are materially adverse to FGIC's interest with respect to the Transactions.***" (Ex. 5 at 2.) (emphasis added)). In furtherance of these individual interests, FGIC commanded the Trustees,

pursuant to its alleged rights to direct the trustees under the agreements governing Trusts,[1] "not to vote in favor of, or opt into, the Settlement Agreement." (*Id.*)

On June 11, 2012, the Debtors filed a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure for approval of the RMBS Trust Settlement (the "9019 Motion"). On July 23, 2012, just weeks after standing up and explaining to this Court that it did not understand the RMBS Trust Settlement (*see* Ex. 1, Transcript of Hearing, June 25, 2012 at 60:13-15), MBIA sent a letter to the trustee associated with the trusts it "wrapped" directing it not to accept *or even consider* any settlement proposal:

> We hereby instruct you to not consider or accept any settlement or compromise offers relating to any claims that may belong to the above-referenced Trusts, including, but not limited to the RMBS Trust Settlement Agreement, dated as of May 13, 2012.

(Ex. 6 at 1.) So certain was MBIA that the Settlement was not in its personal interests, that it further stated that "it would not be reasonable for [the Trustees] to incur ***any*** costs or expenses in evaluating any such settlement or compromise offers." (*Id.* (emphasis added))

That FGIC's and MBIA's directions to the trustees represented a self-interest – and not one that fairly could have been said to apply to unsecured creditors as a whole – is borne out by the Committee's unequivocal statements months later regarding the position of the Committee on behalf of the unsecured creditor body. Throughout the nine months between the Petition Date and the filing of the Objection, the Committee consistently and repeatedly took the position that extensive discovery was necessary for the Committee to be able to make a decision regarding whether the amount of the proposed settlement was in the best interests of all creditors. For example, at a hearing before the Court on September 19, 2012, the Committee informed the

[1] FGIC generally has the right to issue certain direction to the trustees, upon providing an appropriate indemnification, so long as no insurer default exists. (Ex. 5 at 2.)

Court that it still did not have enough information to make a conclusion regarding whether the Settlement was in the best interests of creditors:

> THE COURT: Do I take it from the fact that you're pressing for discovery about the negotiations that you've concluded that the amount of the proposed settlement is not fair, reasonable, and in the best interests of the debtors' estate?
>
> MR. ECKSTEIN: No. At this point, we have not made that conclusion, Your Honor.

Ex. 2, Transcript of Hearing at 69:9-15 (Sept. 19, 2012)

Indeed, as late as October 2012, the Committee represented to the Court what it conceded it had been representing to the Debtor – that the Committee still had not yet made a decision to object to the Settlement:

> THE COURT: It sounds like you've made the determination you're opposing?
>
> MR. BENTLEY: Actually, Your Honor, I'm glad you raised that point, because let me say to the Court what I've said to the other side many times. All of these discussions – we have not yet made that decision. And in fact, we're meeting with Ms. Patrick and her partner Bob Madden this Friday to have a face-to-face sit-down about the merits.
> Our experts are – the debtors don't believe us when we say this – our experts are not anywhere near done.
>
> THE COURT: Okay. Go ahead. I'll –
>
> MR. BENTLEY: So we have not reached a decision….

Ex. 4, Transcript of Hearing at 40:6-13 (Oct. 10, 2012).

In contrast, as described above FGIC and MBIA had made their decision to oppose the RMBS Trust Settlement no later than May and July, respectively, and, without the benefit of all of the discovery that the Committee represented was necessary for a fiduciary to make a decision regarding the Settlement. (*See* Comm. Obj. at 1.) Since neither FGIC nor MBIA had the requisite information necessary to decide what was in the best interests of all creditors, their

respective, earlier decisions had to be based on some personal interest for which they sought to defeat the 9019 Motion.

Wilmington Trust's interests are also clearly in conflict with the trust claimants and hence it, too, should have recused itself from the Committee's deliberations and vote on the RMBS Trust Settlement. As asserted in its objection to the Settlement, Wilmington believes that the trusts' claims – regardless of their amount – should all be subordinated to the claims of the noteholders that Wilmington Trust represents. (*See, e.g.*, Wilmington Trust Obj. ¶¶ 35-38.) Given this position, Wilmington Trust's bias against the trust claimants is manifest. Moreover, Wilmington Trust expressed its opposition to the RMBS Trust Settlement publicly within three weeks of filing a notice of appearance and before any depositions had been taken. (*See Notice of Appearance of Wilmington Trust* filed August 30, 2012, Dkt. No. 1317; *Rep. of Wilmington Trust* filed September 18, 2012, ¶ 5, Dkt. No. 1479.)

**ARGUMENT**

The Committee's Objection is fatally tainted by the conflict of interest of three of its members. Once FGIC, MBIA, and Wilmington Trust concluded the settlement was not in their own interests, they (like the trustees) should have recused themselves from any further Committee deliberations. Because those Committee members failed to do so, it is both necessary and appropriate for the Court to exercise its equitable powers, and the powers provided it under section 105, to strike the Objection and preclude the Committee from putting forward evidence in support of the Objection.

## I. FIDUCIARY DUTIES OF THE COMMITTEE

The members of the Committee owe fiduciary duties to all of the Debtors' general unsecured creditors. *See In re Barney's, Inc.*, 197 B.R. 431 (Bankr. S.D.N.Y. 1996) ("[T]he committee and its members have a fiduciary duty to all creditors represented by the

committee."); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992) ("The Committee and its members owed a fiduciary duty to the class it represented, but not to the individual creditors within the class or to the estate"). The members of the Committee owe the general unsecured creditors the fiduciary duties of care and loyalty. *In re Rickel & Assocs., Inc.*, 272 B.R. 74, 99 (Bankr. S.D.N.Y. 2002).

Recognizing the importance of a creditors' committee's fiduciary obligations to its constituents, the court in *In re Johns-Manville Corp.* stated:

> In the case of reorganization committees … *fiduciary duties are crucial because of the importance of committees.* Reorganization committees are the primary negotiating bodies for the plan of reorganization. They represent those classes of creditors from which they are selected. They also provide supervision of the debtor and execute an oversight function in protecting their constituent's interests.

26 B.R. 919, 924 (Bankr. S.D.N.Y. 1983) (citations omitted) (emphasis added). Further, the court noted that the "'whole body of law' imposes 'the most rigorous responsibilities for fair dealing' on fiduciaries who represent the rights of others." *Id.* at 925 (quoting *Young v. Higbee Co.*, 324 U.S. 204, 213 (1945)).

In discharging their duties to unsecured creditors, the law imposes on the members of the Committee "the most rigorous responsibilities for fair dealing." *In re Johns-Manville Corp.*, 26 B.R. at 924. Committee members must be "honest, loyal, trustworthy and without conflicting interests, and with undivided loyalty and allegiance to their constituents." *Id.* at 925. Moreover, the Committee is required to "guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors." *In re Bohack Corp.*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) (quoting *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262 (1941)).

While Committee members are free, within the parameters of their duties as members of the Committee, to pursue their individual rights as creditors, *Rickel*, 272 B.R. at 100, they are not

entitled to use their positions as Committee members to advance their own self-interests at the expense of other general unsecured creditors. *Id.* at 101. Further, Committee members are not permitted to *act through the Committee* in a way that would promote only that member's interests. *In re Nat'l Equip. & Mold Corp.,* 33 B.R. 574, 575 (N.D. Ohio 1983).

**II. SECTION 105**

It is well established that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process. *Momentum Mfg. Corp. v Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994). Section 105(a) of the Bankruptcy Code vests this Court with the power to ''issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court has affirmed the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent abuse of process' described in § 105(a) of the [Bankruptcy] Code." *Marrama v. Citizens Bank*, 549 U.S. 365, 375 (2007). Thus, under extraordinary circumstances, a bankruptcy court may invoke section 105 to strike pleadings entered before the court. *See, e.g, In re Byrd*, No. 4-35620-TJC, 2011 WL 589907, at *1 (Bankr. D. Md. Feb. 10, 2011) (striking debtors' objection to trustee's final report and fee application on bad faith grounds pursuant to equitable powers under § 105(a)); *In re Zarnel*, 619 F.3d 156, 171 (2d Cir. 2010) (affirming bankruptcy court's decision to strike debtors' petitions pursuant to equitable powers under § 105(a)).

**III. THE COMMITTEE'S OBJECTION SHOULD BE STRICKEN**

The Court should not countenance FGIC, MBIA, and Wilmington Trust's continuing direction of the Committee's response to the 9019 Motion in the face of the conflicts that made them biased. These parties determined early on in these cases that they did not believe that the Settlement was in their personal interests and have proceeded to oppose the Settlement on this

basis, without regard to what is in the interests of the unsecured creditor body as a whole. Indeed, FGIC's position as to what was best for its personal interests was cemented before the Debtors even filed their 9019 Motion explaining the merits of the Settlement. MBIA, for its part, did not even believe the trustees should consider the 9019 Motion. Finally, Wilmington Trust was inherently conflicted as to the consideration of the trusts' claim as it believed that its own claim should have a priority over that of the trusts and it made its opposition to the Settlement public long before discovery was complete.

MBIA, FGIC, and Wilmington Trust are free to prosecute their objections based on their individual interests. However, the Court should not permit the Committee to prosecute an objection and introduce evidence at trial, purportedly on behalf of all unsecured creditors, where the Committee process has been tainted by the biased and conflicted opinions and decisions of half of the six Committee members that voted on it.

Like the trustees, MBIA, FGIC, and Wilmington Trust should have recognized their respective irreconcilable conflicts and recused themselves from discussions and decisions in connection with consideration of the RMBS Trust Settlement. The failure of these three parties to recuse themselves from the Committee process regarding the RMBS Trust Settlement irreparably tainted the entire Committee process on this issue and the Court should, in an exercise of its equitable powers, prevent the Committee from prosecuting an objection consistent with the interests of these few creditors, but not necessarily the interests of all creditors.

## CONCLUSION

Because the Objection is tainted by the conflicts of interest of individual Committee members, the Court should strike the Objection and exclude the evidence the Committee seeks to introduce in support of it under section 105 of the Bankruptcy Code.

New York, New York
Dated: May 6, 2012

/s/ Anthony Princi

Gary S. Lee
Anthony Princi
Darryl P. Rains
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and*
*Debtors in Possession*