**Hearing Date: May 23, 2013 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: May 13, 2013 at 5:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Kristen A. Coleman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
In re:                                                     : Chapter 11
                                                           :
RESIDENTIAL CAPITAL, LLC, et al.,                          :
                                                           :
                                                           : Case No. 12-12020 (MG)
Debtors.                                                   :
                                                           : Jointly Administered
                                                           :
---------------------------------------------------------- x

# MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PRECLUDE TIMOTHY DEVINE FROM TESTIFYING ABOUT ANY OF THE MATTERS AS TO WHICH DISCOVERY FROM HIM HAS BEEN BLOCKED BASED ON A CLAIM OF PRIVILEGE

## TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 3

   MR. DEVINE SHOULD BE PRECLUDED FROM TESTIFYING AT
   TRIAL ABOUT ANY OF THE MATTERS AS TO WHICH THE DEBTORS
   AND AFI INVOKED PRIVILEGE REGARDING MR. DEVINE'S ROLE
   IN THE SETTLEMENT PROCESS ............................................................................... 3

Conclusion ................................................................................................................................ 6

## EXHIBITS

**Exhibit A** – Excerpts from Deposition Transcript of Timothy Devine, dated November 19, 2012 [FILED UNDER SEAL]

**Exhibit B** – Excerpts from Hearing, dated April 11, 2013

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby files this motion to preclude the Debtors, Ally Financial, Inc. ("**AFI**"), or any other proponent of the proposed RMBS Trust Settlement Agreements (the "**RMBS Settlement**" or "**Settlement**") from offering at the hearing of the Debtors' Rule 9019 motion (as supplemented, the "**9019 Motion**") [Dkt. Nos. 320, 1176, 1887] any testimony by Timothy Devine concerning the evaluation, negotiation, or approval of the RMBS Settlement, the contemporaneous plan support agreements, the settlement between the Debtors and AFI, or any of the numerous other matters about which pretrial discovery from Mr. Devine was blocked based on a claim of privilege. In support of this motion, the Committee states as follows:[1]

**Preliminary Statement**

Timothy Devine is AFI's Chief Counsel-Litigation and the sole witness from AFI designated to testify at trial. The significance of his role in the process through which the RMBS Settlement was made can hardly be overstated. As summarized in the Committee's Objection to the Debtors' 9019 Motion [Dkt. No. 2825], Mr. Devine was the principal architect of the RMBS Settlement and the contemporaneous plan support agreements that provide AFI with broad estate and third-party releases in exchange for a capped $750 million contribution to the estates. He

---

[1] Each of the RMBS Trustees that serves on the Committee (*i.e.*, The Bank of New York Mellon Trust Company, N.A., Deutsche Bank Trust Company Americas, and U.S. Bank National Association) has abstained from all Committee votes on and deliberations concerning this motion.

was a ubiquitous presence throughout the negotiation process and, by his own admission, the person "driving [the] deal to conclusion." Devine Tr. at 248 (Exh. A hereto).

At the April 11, 2013 hearing before this Court, the Debtors told the Court that Mr. Devine is expected to testify at trial about his communications with the Debtors' employees, board members, and lawyers concerning "negotiat[ion] strategy, settlement meetings, data about exposure, legal defenses, defect rates, et cetera." Apr. 11, 2013 Hr'g Tr. at 28 (Exh. B. hereto). When asked by the Court for a "clear answer" to whether privilege was asserted regarding any of Mr. Devine's communications with ResCap's employees or attorneys, the Debtors' counsel stated that he was unable to respond without first reviewing Mr. Devine's deposition transcript. *Id*. at 29-30. The Court accordingly declined to rule at that time on the scope of Mr. Devine's proposed testimony, but cautioned the Debtors not to "waste" the Court's time "if there's a clear record of Mr. Devine being instructed not to answer any questions about his communications with ResCap." *Id.* at 46.

This motion presents the Court with that "clear record." While the Debtors and AFI produced in discovery enough of Mr. Devine's written communications with the Debtors and their attorneys to establish Mr. Devine's central role in the settlement process, they withheld and/or clawed back many other such communications based on claims of the attorney-client privilege and/or a "common interest" privilege. When Mr. Devine was deposed, moreover, he was instructed — or, equally often, instructed himself — not to answer numerous questions regarding a wide range of topics tied to the RMBS Settlement, the plan support agreements, and the settlement between the Debtors and AFI. Having asserted privilege with respect to all of these matters, the Debtors and AFI should be precluded from offering Mr. Devine's testimony at trial about any of them. Instead, the testimony actually given by Mr. Devine at deposition, and

2

the written communications from Mr. Devine not withheld on grounds of privilege, should be deemed to speak for themselves and to constitute the full record at trial of Mr. Devine's involvement in the settlement process.

## Argument

### MR. DEVINE SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL ABOUT ANY OF THE MATTERS AS TO WHICH THE DEBTORS AND AFI INVOKED PRIVILEGE REGARDING MR. DEVINE'S ROLE IN THE SETTLEMENT PROCESS

The Debtors' and AFI's privilege logs list countless communications authored by or sent to Mr. Devine that go to the heart of the RMBS Settlement process. These include, among other things:

- Emails between Mr. Devine and ResCap Board members, including an email from Mr. Devine to Thomas Marano, ResCap's Chairman and CEO, regarding Kathy Patrick and Talcott Franklin, as well as a separate email exchange between Mr. Devine and Mr. Marano concerning the statute of limitations defense to RMBS claims.

- Communications among Mr. Devine and ResCap's employees and counsel regarding the Debtors' potential RMBS exposure to liability.

- Emails between Mr. Devine and Tammy Hamzehpour, ResCap's in-house General Counsel, regarding negotiations with Ms. Patrick.

- Emails between Mr. Devine and attorneys at Morrison & Foerster regarding negotiations with Ms. Patrick and settlement strategy.

- Emails among Mr. Devine, Ms. Hamzehpour, ResCap in-house lawyer John Ruckdaschel, and attorneys at Morrison & Foerster concerning Mr. Devine's discussions with Talcott Franklin.

- More than 30 presentations made by Mr. Devine to the ResCap Board concerning RMBS litigation and claims.

*See* Dkt. No. 2906, Exh. D; Dkt. No. 2053-1, Exh. C.

When Mr. Devine was deposed, he was instructed not to answer, or refused on his own to answer, questions concerning an array of issues surrounding the RMBS Settlement,

including many questions concerning his own written communications that the Debtors or AFI *did* produce in discovery. Among the categories of questions not answered by Mr. Devine were the following:

- Questions about his formulation of strategy for pursuing settlement discussions with Ms. Patrick. Exh. A at 16-17, 31-32, 41-43.

- Questions about emails he himself wrote concerning the status of his negotiations with Ms. Patrick. *Id.* at 58-61.

- Questions about his understanding of, or reaction to, statements by Ms. Patrick and Mr. Franklin during the course of settlement negotiations with them. *Id.* at 51-52, 79-81.

- Questions concerning his conversations with Ms. Hamzehpour about negotiation strategy and how to deal with Ms. Patrick. *Id.* at 41-44.

- Questions concerning his reasons for taking certain actions with respect to specific RMBS put-back demands. *Id.* at 69-72.

- Questions about the possible effects of put-back demands on AFI's and ResCap's public disclosures concerning their estimated RMBS exposure. *Id.* at 69-70.

- Questions about his expressed concerns with how the proposed RMBS Settlement might expose AFI to possible securities violations in light of its public disclosures regarding RMBS liabilities. *Id.* at 206-07.

- Questions about his thought processes and intentions in connection with his communications with Gary Lee regarding the RMBS Settlement and the contemporaneous settlement between AFI and ResCap. *Id.* at 237.

- Questions concerning his understanding of the scope of the releases contemplated by the RMBS Settlement. *Id.* at 300-07, 315-17.

The Court has previously ruled in this case that the Debtors cannot "cherry-pick" the evidence they wish to disclose after having asserted privilege to block discovery of documents and the testimony of witnesses on the same subject matter. *See In re Residential Capital, LLC*, Memorandum Opinion and Order Granting In Part and Denying In Part The Unsecured Creditors Committee's Preclusion Motion, at 10. [Dkt. No. 3434]. That ruling

4

should be found especially applicable with respect to Mr. Devine. As the record shows, the Debtors and AFI elected to disclose only a limited subset of Mr. Devine's written communications with ResCap's employees and counsel while withholding from production many other such communications and also blocking inquiry at deposition into the very subject matter of even those documents that were disclosed. The matters blocked from discovery encompass a broad range of categories, including — but hardly limited to — every one of those identified by the Debtors' counsel at the April 11, 2013 hearing as topics on which Mr. Devine is proposed to testify. *See* Apr. 11, 2013 Hr'g Tr. at 28 (Exh. B). For the reasons stated previously by the Court, Mr. Devine should be precluded from testifying at trial concerning any of these matters, and the evidentiary record of Mr. Devine's involvement in the events at issue on the 9019 Motion should now be deemed closed.

**Conclusion**

On the basis of the foregoing, the Committee's motion should be granted in all respects.

Dated: New York, New York
      May 6, 2013

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Kristen A. Coleman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Unsecured Creditors*

# EXHIBIT A

## FILED UNDER SEAL

# EXHIBIT B

12-12020-mg    Doc 3617    Filed 05/06/13    Entered 05/06/13 18:10:06    Main Document
Pg 11 of 18

# In Re:

*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

*April 11, 2013*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



**Min-U-Script® with Word Index**

1  witnesses, the content of those communications, the back and
2  forth are not privileged.  I think Mr. Kaufman agreed with
3  that.  It would not be privileged.  They've been deposed about
4  it?
5            MR. RAINS:  Yes, Your Honor.  And all their e-mails
6  have been turned over.  Third topic, maybe you've just answered
7  this question but communications between Mr. Devine,
8  representing Ally and the lawyers representing ResCap as to
9  which we did not assert privilege, we would offer that evidence
10 both from Mr. Devine, Ms. Hamzehpour and the e-mails between
11 them as to which we did not assert the privilege.  These are
12 communications that go to the negotiating strategy, settlement
13 meetings, data about exposure, legal defenses, defect rates, et
14 cetera.  We did not assert privilege as to any of those
15 communications.
16           THE COURT:  But there's a dispute as to when Mr.
17 Devine was acting as a counsel for ResCap and when for Ally
18 alone; am I right about that or --
19           MR. RAINS:  Well, the --
20           THE COURT:  I don't remember it here but I remember
21 this coming up before.
22           MR. RAINS:  We had communications with the Court about
23 that at length.  The conclusion that I think we all reached and
24 certainly it was the debtors' position, it was not functionally
25 a matter of time, so much as the topic.  When he was

1  negotiating for Ally on the RMBS matters, we decided not to
2  assert the privilege.  Ally took a different position and then
3  we got it resolved.
4          The Court mentioned --
5          THE COURT:  Was Mr. Devine deposed on his --
6          MR. RAINS:  Yes, he was deposed, Your Honor.
7          THE COURT:  And no privilege was asserted with respect
8  to his communications with ResCap's lawyers?
9          MR. RAINS:  Correct, Your Honor.
10         THE COURT:  At any time, there was no objection, an
11 instruction not to answer for Mr. Devine's communication with
12 ResCap's lawyers; is that your statement?
13         MR. RAINS:  I did not attend that deposition.  All I
14 can --
15         THE COURT:  And you're arguing that his testimony
16 should be permitted.  I need a clear answer whether
17 instructions not to answer were given on attorney-client
18 privilege grounds regarding Mr. Devine's communications with
19 ResCap's lawyers or executives.
20         MR. RAINS:  So I will have to give that to you in a
21 letter but I will tell you the position I think we have
22 consistently drawn which is when the communications related to
23 the RMBS settlement, we did not assert privilege.  That's the
24 position we took in our privilege log.  It's the position we
25 took with documents and I'm confident it was the position we

1    took at his deposition.  To be sure, I need to go and review
2    the transcript.
3             THE COURT:  Okay.
4             MR. RAINS:  Continuing the offer of proof, the Court
5    mentioned earlier the director's experience with rep and
6    warranty liability and litigation.  They have a tremendous
7    amount of experience going back several years with MBIA and
8    FGIC.  They had experience more recently with a variety of
9    regulatory settlements.  We would not intend to offer any
10   privileged communication about those matters.
11            THE COURT:  Here's the issue there, at least as I see
12   it.  All right.  I asked Mr. Kaufman about this specifically
13   and I am not going to rule at this time, one way or the other,
14   with respect to the directors' testimony about their experience
15   with representation in warranty litigation.
16            In theory, I think they should be permitted to testify
17   about their experience but they can't -- what I won't permit,
18   assuming I preclude -- grant the preclusion motion, I am not
19   going to permit director testimony to be used as a back door to
20   get in, in effect, the legal advice they received.  If they
21   were involved -- if I was told Whitlinger was involved in risk
22   analysis, he was the CFO, he was --
23            MR. KAUFMAN:  I was only hypothesizing.
24            THE COURT:  Okay.  Let me -- as a hypothetical, you
25   know, if Whitlinger was involved in risk analysis, and he's

1  left open, and for the second interim application.

2  With respect to the first interim application, with
3  respect to the time involved in the KEIP motion, as everyone is
4  aware, the Court rejected the first KEIP motion in a written
5  opinion, which is reported at 478 BR 154.  And while lawyers
6  are not guarantors of success of their legal arguments, they,
7  nevertheless, owe a duty to their client and their court to
8  only assert arguments reasonably supported by the facts and the
9  law.  This is particularly so when lawyers are pressing a claim
10 for relief, rather than defending against a claim asserted by
11 others.

12 With respect to the first KEIP motion, the debtors'
13 position was not reasonably supported by the facts or the law,
14 and the estate should not bear the full cost of that misguided
15 effort.

16 While the Court doesn't believe that the position
17 asserted by Morrison & Foerster, it wouldn't have been
18 sanctionable under Rule 11, that's not the standard for
19 compensation -- awarding compensation in a bankruptcy case.

20 Where services are necessary -- whether services are
21 necessary is determined from the perspective of the time at
22 which the services were rendered.  See 3 Collier on Bankruptcy,
23 paragraph 330.04 (1)(b)(iii).

24 In the Second Circuit, the "necessary" standard in
25 Section 330 is given a broad interpretation.  Services are

1  whether or not Mr. Devine was instructed not to answer.  Mr.
2  Kaufman has indicated that he was.  If the debtors intend to
3  offer Mr. Devine's testimony, that ought to be taken up in
4  limine before trial and I will certainly review -- you have
5  discussed that with Mr. Kaufman.  Don't waste my time, Mr.
6  Rains, if there's a clear record of Mr. Devine being instructed
7  not to answer any questions about his communications with
8  ResCap, okay?  Don't waste my time with it.  You can raise it
9  if you want but you know I think this ruling out to make that
10 clear.
11         I've already discussed about experience, directors
12 with representation in warranty litigation.  So go on and
13 prepare.  I'll get out my opinion and order in due course.  All
14 right.  We're adjourned.
15         (Whereupon these proceedings were concluded at 1:25 PM)

47

**I N D E X**

**RULINGS**

|  | Page | Line |
|---|---|---|
| Motion to preclude granted | 44 | 12 |

```
 1
 2                    C E R T I F I C A T I O N
 3
 4   I, Linda Ferrara, certify that the foregoing transcript is a
 5   true and accurate record of the proceedings.
 6
 7       [signature: Linda Ferrara]
 8
 9   _____
10   Linda Ferrara
11   AAERT Certified Electronic Transcriber CET**D-656
12
13   eScribers
14   700 West 192nd Street, Suite #607
15   New York, NY 10040
16
17   Date:  April 12, 2013
18
19
20
21
22
23
24
25
```