**Hearing Date and Time: May 14, 2013 at 10:00 a.m.**
**Objection Deadline: May 6, 2013 at 11:59 p.m.**

Richard M. Cieri
Ray C. Schrock
Craig A. Bruens
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street, N.W., Ste. 1200
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Counsel for Ally Financial Inc. and Ally Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC., et al. | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ALLY FINANCIAL INC.'S LIMITED OBJECTION
## TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
## TO PERMIT THE DEBTORS TO CONTINUE USING CASH COLLATERAL

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ..............................................................................................................................8

    I.    The Motion Is Procedurally Improper Insofar As It Seeks To Modify The
    Original AP Package In The AFI/JSB Cash Collateral Final Order. ......................8

    II.    The Court Should Clarify The Debtors' Adequate Protection Obligations
    To Ensure That The 506(c) Waiver Is Respected. ..................................................12

    III.    The Debtors' Liquidation Of The Lenders' Collateral Using
    Unencumbered Cash Is Entirely Fair And Consistent With Their Fiduciary
    Duties. .....................................................................................................................16

    IV.    Without AFI's Requested Clarifications, The Proposed Expense
    Allocation Should Be Modified. ............................................................................17

CONCLUSION...........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985)................................. 18

*Desert Fire Prot. v. Fontainbleau Las Vegas Holdings, LLC (In re Fontainbleau Las Vegas Holdings)*, 434 B.R. 716 (S.D. Fla. 2010)................................................................................ 17

*In re Emergency Beacon Corp.*,
    666 F.2d 754 (2d Cir. 1981) ............................................................................................... 10

*In re Harbour E. Dev., Ltd., No. 10-20733 (AJC), 2011 WL 6097063* (Bankr. S.D. Fla. Dec. 6, 2011).................................................................................................................................. 17

*In re Machinery, Inc.*,
    287 B.R. 755 (Bankr. E.D. Mo. 2002) ................................................................................ 16

*In re Ngan Gung Rest.*, 254 B.R. 566 (Bankr. S.D.N.Y. 2000)...................................................... 17

*In re Northstar Dev. Corp.*, 465 B.R. 6 (Bankr. D. Del. 2012) .................................................... 18

*Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*,
    314 B.R. 436 (B.A.P. 9th Cir. 2004) .................................................................................. 15

*United States v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir. 2001) ................................................................................................. 9

**Statutes**

11 U.S.C. § 105................................................................................................................ 2, 10

11 U.S.C. § 105(a) .......................................................................................................... 3, 15

11 U.S.C. § 1142....................................................................................................... 2, 3, 10

11 U.S.C. § 1142(b) ............................................................................................................. 15

11 U.S.C. § 1145....................................................................................................... 2, 3, 10

11 U.S.C. § 363.............................................................................................................. 1, 10

11 U.S.C. § 363(b) ........................................................................................................ 3, 12

28 U.S.C. § 1334.................................................................................................................... 3

28 U.S.C. § 1408 ................................................................................................................... 3

28 U.S.C. § 157 ..................................................................................................................... 3

28 U.S.C. § 157(b)(2) ........................................................................................................... 3

**Rules**

Bankr. R. 3020(d) ................................................................................................ 2, 3, 10, 15

Bankr. R. 9019 ......................................................................................................... 1, 3, 10

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("**AFI**") files this limited objection (the "**Limited Objection**") to the

*Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral*

[ECF No. 3374] (the "**Motion**").[1]

## PRELIMINARY STATEMENT

1.      AFI has no objection to the further use of Cash Collateral, provided that (a) AFI is

adequately protected in the same manner as it has been throughout these chapter 11 cases and

(b) the Court clarifies the nature of the Debtors' adequate protection obligations.  AFI files this

limited objection to ensure that the original adequate protection package, which the Debtors and

the Committee agreed to and which was approved by a final order of the Court (the "**Original

AP Package**"), is not improperly modified by the Motion.  Additionally, AFI believes the Court

should clarify that the Debtors' use of Cash Collateral results in adequate protection liens and

potential section 507(b) claims equal to every dollar of Cash Collateral spent on expenses in

these chapter 11 cases.  This is important given the Debtors' prior waiver of their rights under

section 506(c) of the Bankruptcy Code and the statements in the Motion indicating the Debtors'

intent to circumvent that waiver.  Finally, if the Court does not ensure that the Original AP

Package remains and does not clarify the nature of the Debtors' adequate protection obligations,

then AFI objects to the Debtors' proposed expense allocation in the Motion.

2.      As a threshold matter, despite representations by the Debtors to the contrary, the

Motion and Proposed Order seek to reduce AFI's adequate protection previously approved by

the Court under the AFI/JSB Cash Collateral Final Order.  As such, the Debtors are

impermissibly seeking to modify a final order of this Court without following the proper

---

[1]      Capitalized terms used in this Objection without definition have the meaning ascribed to them in the Motion.

procedure under the Federal Rules of Bankruptcy Procedure and without making the required evidentiary showing. The Motion should be denied unless the Debtors modify the Proposed Order so that the Original AP Package remains unchanged.

3.       Additionally, the Motion highlights an issue that requires the Court's clarification regarding the Debtors' use of Cash Collateral and their adequate protection obligations. The Debtors cannot spend unencumbered cash to liquidate the Lenders' collateral and subsequently surcharge the collateral to recover such expenditures. That prohibition results from the Debtors' express waiver of their rights under section 506(c) of the Bankruptcy Code in the AFI/JSB Cash Collateral Final Order. Nevertheless, the Motion indicates, in more than one instance, that the Debtors intend to shift to the Lenders the costs of liquidating the Lenders' collateral by the allocation and payment of expenses from Cash Collateral. Additionally, the Motion maintains that such payment does not entitle the Lenders to replacement liens or section 507(b) claims, thereby circumventing the Debtors' 506(c) waiver. In order to preserve the 506(c) waiver, the Court should clarify that the Debtors' use of Cash Collateral results in adequate protection liens and 507(b) claims equal to the amount of Cash Collateral used by the Debtors.

4.       AFI respectfully submits that ensuring the Original AP Package remains in place and clarifying the nature of the Debtors' adequate protection obligations will not result in any unfairness to creditors, even if the result is that unencumbered assets are used to liquidate the Lenders' collateral. The Debtors' fiduciary obligations do not run solely to general unsecured creditors. Rather, the Debtors are required to maximize the value of their estates for *all* creditors. Moreover, the efficient liquidation of the Lenders' collateral is a proper exercise of the Debtors' fiduciary duty obligations as it will inure to the benefit of *both* the Lenders and general

unsecured creditors insofar as the Debtors are able to minimize, or eliminate, any unsecured deficiency claims of the Lenders.

5.        Finally, should the Court be inclined to grant the Motion without requiring AFI's clarifications, then the Debtors' proposed expense allocation should be modified to exclude the payment of professional fees, indemnification payments to Ally Bank under the Ally Bank Servicing Agreement for loan modifications required by the DOJ/AG Settlement, and payment of costs to perform any servicing obligations remaining with the Debtors' estates following the closing of the Debtors' asset sales.  The Debtors have made no showing that those expenses directly relate to preserving or disposing the Lenders' collateral.  Accordingly, such expenses should be paid from unencumbered cash.

## **BACKGROUND**

6.        On the Petition Date, the Debtors sought Court approval for the consensual use of Cash Collateral "so they [could] continue operating their mortgage loan servicing business in the ordinary course" and maintain "sufficient liquidity" to prevent confusion and uncertainty in the market.[2]  Access to the AFI DIP and Cash Collateral was crucial to the ongoing viability of the Debtors' business prior to consummation of the Sales.[3]  The Debtors also sought and obtained Court approval of modifications to their cash management system so that they could "segregate the proceeds of each [secured] lender's respective collateral" during these chapter 11 cases and track the use of Cash Collateral to assure that the Lenders were adequately protected.[4]

---

[2]      AFI/JSB Cash Collateral Motion, ¶ 8.

[3]      *See* Transcript of Record at 21, *In re Residential Capital LLC, et al.*, No. 12-12020 (May 14, 2012) ("The servicing business is not inexpensive, and servicing advances are the single largest use of the debtors' cash during these cases.").

[4]      *See Debtors' Motion for Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (I) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation of Modified*

7.      After the Court entered a consensual interim order approving the Debtors' use of

Cash Collateral, the Committee objected to the AFI/JSB Cash Collateral Motion.[5]   The Lenders,

the Debtors, and the Committee engaged in extensive good-faith negotiations regarding the terms

of a final cash collateral order, which resulted in numerous changes to the interim cash collateral

order.[6]  On June 25, 2012, the Court entered the fully consensual AFI/JSB Cash Collateral Final

Order finding, among other things, that the "Debtors do not have sufficient available sources of

working capital and financing to carry on the operation of their businesses without the use of

Cash Collateral."[7]

8.      The AFI/JSB Cash Collateral Final Order authorized the Debtors to use Cash

Collateral and the Lenders' other prepetition collateral, subject to the terms of that order, and

provided to the Lenders:

> [A]dequate protection of their interests in the Prepetition
> Collateral, including Cash Collateral, in an amount equal to the

---

*Cash Management Procedures, (IV) Interim Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, (VI) Continuation of Intercompany Transactions, Including Intercompany Transactions with Future Debtors, and Granting Administrative Expense Status to Intercompany Claims and (VII) Scheduling a Final Hearing on the Relief Requested* (May 14, 2012) [ECF No. 16] (the "**Cash Management Motion**") at ¶ 10; *see also* Transcript of Record at 534, *In re Residential Capital LLC, et al.*, No. 12-12020 (May 14, 2012) ("[T]he debtors, prior to the petition date … ran as an integrated company.  And if they didn't develop an ability to track and manage how the various cash spend applied to each facility, it would be difficult, if not impossible, to assure that we were adequately protecting the interests of our lenders.").

[5]     *See Omnibus Objection of the Official Committee of Unsecured Creditors to the Debtors' Motions Seeking (I) Entry Into the Barclays DIP Facility, (II) Entry Into the Ally DIP Facility and the Use of Certain Cash Collateral, and (III) the Use of the Citibank Cash Collateral* (June 11, 2012) [ECF No. 301].

[6]     *See* Transcript of Record at 40, *In re Residential Capital LLC, et al.*, No. 12-12020 (June 18, 2012) ("The committee also had numerous concerns with this order.  We've worked closely with the committee, Ally, counsel for the junior secured notes, to resolve those objections. … I believe we've resolved all the committee's concerns.").  A redline showing the changes made between the interim AFI/JSB cash collateral order and the proposed final cash collateral order was filed with the Court with the *Notice of Filing of Proposed Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [ECF No. 415, Ex. 2].

[7]     AFI/JSB Cash Collateral Final Order, ¶ 6(a).

aggregate diminution in value of the Prepetition Collateral to the extent of their interests therein, *including any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral.*[8]

9.       The adequate protection provided to the Lenders under the AFI/JSB Cash Collateral Final Order included the Original AP Package, plus additional clarifications, provisions, and protections that the Debtors neglected to mention in the Motion and have omitted from the Proposed Order annexed to the Motion.  For example, the AFI/JSB Cash Collateral Final Order explicitly provided, among other things, that:

- the Adequate Protection Liens granted to the Lenders "shall not be subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code";[9]

- the superpriority administrative expense claims granted to the Lenders under section 507(b) of the Bankruptcy Code would have "priority in payment over any and all unsecured claims and administrative expense claims, now existing or after arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code … which 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, and will at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code subject and subordinate only to the Carve Out";[10] and

- AFI, in its capacity as lender, may seek Court approval of its rights to have its section 507(b) claims paid from the Debtors' unencumbered property upon a Termination Event (as defined in the AFI/JSB Cash Collateral Final Order).[11]

---

[8]     *Id.*, ¶ 16 (emphasis added).

[9]     *Id.*, ¶ 16 (a)(i).

[10]    *Id.*, ¶ 16(a)(ii).

[11]    *Id.*

10.    Further, as additional adequate protection, the AFI/JSB Cash Collateral Final

Order contains covenants and agreements of the Debtors to, among other things:

- continue to perform and remain current with all of their obligations under the (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, Residential Capital, LLC, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation (the "**Consent Order**"); (ii) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012; and (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (collectively, the "**Consent Obligations**");[12]

- use good faith efforts to comply with all requirements attendant to their position as subsidiaries of a bank holding company;[13]

- comply with the terms of the Amended and Restated Servicing Agreement by and between Ally Bank, as Owner, and GMAC Mortgage, LLC, as Servicer, dated as of May 11, 2012;[14] and

- pay all reasonable, documented fees and expenses of AFI as lender under the AFI LOC and the AFI Senior Secured Credit Facility in the event a chapter 11 plan incorporating the Ally Settlement Agreement (as defined in the AFI/JSB Cash Collateral Final Order) is not confirmed.[15]

11.    Further, under the AFI/JSB Cash Collateral Final Order, the Debtors waived their

right to surcharge the Lenders' collateral under section 506(c) of the Bankruptcy Code.[16]

Specifically, the AFI/JSB Cash Collateral Final Order states, in relevant part:

> Except to the extent of the Carve Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or

---

[12]    *Id.*, ¶ 18(a)(iii).

[13]    *Id.*, ¶ 18(a)(ii).

[14]    *Id.*, ¶ 18(a)(iv).

[15]    *Id.*, ¶ 16(f).

[16]    *See* 11 U.S.C. § 506(c) ("The trustee may recover from property securing an allowed claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.") .

other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral and AFI DIP Loan Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Adequate Protection Parties or AFI DIP Lender, as applicable and no such consent shall be implied from any other action, inaction, or acquiescence by the Adequate Protection Parties or AFI DIP Lender, as applicable.

(the "*506(c) Waiver*").[17]

12.    Lastly, the AFI/JSB Cash Collateral Final Order provides that "[t]he Debtors shall not use Cash Collateral and other Prepetition Collateral at any time, except as set forth in this Order," and further provides that the terms of the order are "binding upon all parties in interest in the Chapter 11 Cases."[18]

13.    As of this date, the Debtors and the Lenders have been unable to agree upon further consensual use of Cash Collateral.  The Debtors previously projected that they will have a significant amount of unencumbered cash from the proceeds of the Sales after the repayment of both the Barclays DIP and the AFI DIP.  Given the Debtors' significant unencumbered cash reserves, AFI does not understand why the Debtors require any further use of Cash Collateral, especially in light of the 506(c) Waiver, which prevents the Debtors from shifting any costs of these chapter 11 cases to the Lenders.

14.    On April 8, 2013, the Debtors filed the Motion seeking to continue their use of Cash Collateral past the upcoming termination date under the AFI/JSB Cash Collateral Final

---

[17]    AFI/JSB Cash Collateral Final Order, ¶ 22.  The AFI/JSB Cash Collateral Final Order also provides that the "entry of an order authorizing recovery from Prepetition Collateral, including Cash Collateral, for any cost of preservation or disposition thereof, under section 506(c) of the Bankruptcy Code or otherwise, other than as may be provided in this Final Order, or certain *de minimis* amounts as may be agreed to by the Adequate Protection Parties" is a termination event of such order.  AFI/JSB Cash Collateral Final Order, ¶ 20(n).

[18]    AFI/JSB Cash Collateral Final Order, ¶¶ 15, 36; *see also id.*, ¶ 30 ("The Borrowers shall use the proceeds of the Prepetition Collateral, including Cash Collateral, and the proceeds of the AFI DIP Loan, solely as provided in this Final Order.").

Order.  The Debtors assert that they need to use Cash Collateral for the payment of the Funded

Disposition Costs to prevent unsecured creditors from "bear[ing] the costs associated with

disposing of the secured creditors' collateral."[19]  The Debtors also assert that their use of Cash

Collateral will not result in any diminution in value of the Lenders' prepetition collateral.[20]  In

fact, the Debtors seek a determination in the Proposed Order that their use of Cash Collateral, in

and of itself, adequately protects the Lenders from a diminution in value of their prepetition

collateral.[21]  Lastly, the Debtors maintain that AFI is adequately protected through the existence

of a substantial equity cushion in its collateral and is further protected because the Debtors "have

reserved adequate cash to repay the AFI Senior Secured Credit Facility and the AFI LOC."[22]

## ARGUMENT

I. **The Motion Is Procedurally Improper Insofar As It Seeks To Modify The Original AP Package In The AFI/JSB Cash Collateral Final Order.**

15.    The Debtors have filed the Motion as though the AFI/JSB Cash Collateral Final

Order and all of its protections simply disappear upon the termination of the Debtors' right to use

Cash Collateral under that order.  That is not the case.  The AFI/JSB Cash Collateral Final Order

explicitly provides that "[t]he Debtors shall not use Cash Collateral and other Prepetition

Collateral at any time, except as set forth in this Final Order" and that the terms of that order

survive until the Adequate Protection Obligations are indefeasibly paid in full.[23]  In addition,

none of the protections granted to the Lenders in the AFI/JSB Cash Collateral Final Order are

---

[19]    Motion, ¶ 47.

[20]    *Id.*, ¶ 44.

[21]    *Id.*; Proposed Order, ¶ 4(b).

[22]    Motion, ¶ 40.

[23]    AFI/JSB Cash Collateral Final Order, ¶¶ 15, 27(h).

conditioned upon the use of Cash Collateral.  All protections granted to the Lenders continue

regardless of the Debtors' authority to use Cash Collateral.  Lastly, although the AFI/JSB Cash

Collateral Final Order contains several reservations of rights, the Debtors did not reserve their

right to seek Court approval for the continued use of Cash Collateral after a "Termination Event"

(as defined in the AFI/JSB Cash Collateral Final Order).

16.     Thus, in seeking the nonconsensual use of Cash Collateral and proposing the New

AP Package, the Debtors really are seeking to modify the AFI/JSB Cash Collateral Final Order.

The Debtors, however, have failed to follow the proper procedure for seeking such relief and

have not made the required evidentiary showing.  *See* Fed. R. Bankr. P. 9024 (applying Fed. R.

Civ. P. 60 to cases under the Bankruptcy Code); Fed. R. Civ. P. 60(b) ("On motion and just

terms, the court may relieve a party or its legal representative from a final judgment, order, or

proceeding for . . .  any other reason that justifies relief."); *see also United States v. Int'l Bhd. of*

*Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally

not favored and is properly granted only upon a showing of exceptional circumstances.  The

burden of proof is on the party seeking relief from judgment.") (internal citations omitted); *see*

*also In re Emergency Beacon Corp*., 666 F.2d 754, 759 (2d Cir. 1981) (finding the portion of

Fed. R. Civ. P. 60(b) that relief may be granted for any reason that justifies relief is "properly

invoked when there are extraordinary circumstances or where the judgment may work an

extreme and undue hardship") (internal citations omitted).  Nor have the Debtors demonstrated

any "exceptional circumstances" or "undue hardships" that justify revisiting the terms of the

carefully negotiated AFI/JSB Cash Collateral Final Order.

17.     AFI's concern regarding the procedural posture of the Motion is particularly

warranted because the Debtors' Proposed Order reduces the adequate protection granted to the

Lenders under the AFI/JSB Cash Collateral Final Order.  The Debtors falsely represent that the New AP Package is the "same adequate protection as provided under the AFI/JSB Cash Collateral Final Order, provided that the Junior Secured Noteholders shall no longer be entitled to the Adequate Protection Payments";[24] however, this is not the case.  Specifically, the New AP Package eliminates, among other things, the following provisions of adequate protection that were granted in the AFI/JSB Cash Collateral Final Order:

- the Debtors' covenant to "to perform and remain current with, and require that all of the Debtors continue to perform and remain current with, all of their obligations under the Consent Obligations";[25]

- the Debtors' covenant to comply with the terms of the Amended and Restated Servicing Agreement by and between Ally Bank, as Owner, and GMAC Mortgage, LLC, as Servicer, dated as of May 11, 2012;[26]

- the explicit priority of the Adequate Protection Liens over any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code;[27]

- the explicit priority of the Lenders' superpriority administrative claims under section 507(b) of the Bankruptcy Code "over any and all unsecured claims and administrative expense claims, now existing or after arising, of the kinds specified or

---

[24]    Motion, ¶ 31.

[25]    AFI/JSB Cash Collateral Final Order, ¶ 27(a).  The Debtors' pending motion seeking to classify payments required by the Consent Order as unsecured claims for plan purposes does not justify excluding the Consent Order compliance covenant.  The Debtors did not, and have not, sought relief from the AFI/JSB Cash Collateral Final Order under Rule 60(b) and, accordingly, remain bound by that order.  The Consent Order covenant is important for adequate protection purposes because "the consequences of non-compliance with the Consent Order are severe and could include civil money penalties of up to $1.425 million per day for each day ResCap or GMACM knowingly violates the Consent Order, *see* 12 U.S.C. § 1818(i)(2)(C)  and 12 C.F.R. § 263.5 (effective Nov. 16, 2012) , a separate cease and desist proceeding, *see* 12 U.S.C. § 1818(b), (c) , and removal, prohibition, or suspension of ResCap and GMACM officers and directors, *see* 12 U.S.C. § 1818(e)."  *Board of Governors of the Federal Reserve System's Supplemental Brief in Support of its Objection to Debtors' Motion for a Determination that (I) GMAC Mortgage's Independent Foreclosure Review Obligation Is a General Unsecured Claim and (II) the Automatic Stay Prevents Enforcement of the Independent Foreclosure Review Obligation* [ECF No. 3366], 14 n.14.

[26]    AFI/JSB Cash Collateral Final Order, ¶ 18(a)(iv).

[27]    *Id.*, ¶ 18(iv).

ordered pursuant to any provision of the Bankruptcy Code";[28] and

- the payment of the AFI Lender's fees and expenses in the event that a chapter 11 plan incorporating the Ally Settlement is not confirmed.[29]

18.    The Proposed Order also eliminates language that clarifies that the diminution in value of the Lenders' prepetition collateral that triggers adequate protection includes "any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral."[30]

19.    Lastly, in contrast to the 506(c) Waiver in the AFI/JSB Cash Collateral Final Order, the Proposed Order contains the following provision:

> No Limitation on Charging Expenses Against Prepetition Collateral.  The use of Cash Collateral in accordance with this Order or the Original Final Order does not constitute a charge against or recovery from the Prepetition Collateral or Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law.[31]

As explained in Section II below, there is no basis for this provision.  AFI believes the Court needs to clarify the Debtors' adequate protection obligations in order to ensure that the Debtors' use of Cash Collateral does not, in fact, result in a surcharge of the Lenders' collateral.

20.    The Debtors' assertions that AFI and the Junior Secured Noteholders' are adequately protected under the Debtors' proposal in the Motion is beside the point.  There is no cause for the Court to alter the previously approved AFI/JSB Cash Collateral Final Order.  And, if the Court were inclined to authorize the use of Cash Collateral following the agreed

---

[28]    *Id.*, ¶ 16(a)(ii).  Not only does the Debtors' Proposed Order eliminate important language granting the Lenders' 507(b) Claims priority over other expenses, but the Proposed Order specifically states that "[a]ll 507(b) Claims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code." Proposed Order, ¶ 9(d).

[29]    AFI/JSB Cash Collateral Final Order, ¶ 16(f).

[30]    *Id.*, ¶ 22; Proposed Order, ¶ 9.

[31]    Proposed Order, ¶ 14.

termination of such use in that order, AFI respectfully submits that such further use of Cash Collateral must be made subject to the Original AP Package, rather than the watered-down adequate protection in the Proposed Order.  Given the significant expenses and administrative burn in these chapter 11 cases, AFI's concern that its adequate protection not be eroded is particularly warranted.

## II.    The Court Should Clarify The Debtors' Adequate Protection Obligations To Ensure That The 506(c) Waiver Is Respected.

21.    In addition to seeking to modify the Original AP Package, the Motion raises a significant question about the nature of the Debtors' adequate protection obligations when the Debtors use Cash Collateral.  Specifically, despite the Debtors' assertions to the contrary, AFI is concerned for a number of reasons that the Debtors' proposed use of Cash Collateral and their interpretation of their adequate protection obligations are designed to circumvent the 506(c) Waiver.  That waiver provides that "no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral and AFI DIP Loan Collateral."[32]

22.    *First*, in at least nine instances in the Motion, the Debtors use the phrase "preserve and liquidate" (or similar variations) in relation to the Lenders' collateral when referring to the intended use of Cash Collateral.[33]  This phrase is strikingly similar to the rights that the Debtors waived under section 506(c) of the Bankruptcy Code, which permits a debtor to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of *preserving, or disposing of*, such property."  11 U.S.C. § 506(c) (emphasis added).

---

[32]    AFI/JSB Cash Collateral Final Order, ¶ 22.

[33]    *See* Motion, ¶¶ 3, 30, 38, 39, 41, 44, 47, 48, 52.

23.     **Second**, the Debtors maintain in the Motion, *without any supporting evidence*, that spending Cash Collateral will not result in the diminution of value in the Lenders' collateral thereby triggering adequate protection replacement liens—even as to the Cash Collateral that will be spent—"because the Debtors will only be using the Cash Collateral to preserve the remaining collateral."[34]  Thus, the Debtors clearly do not intend to repay the Lenders for the use of Cash Collateral, effectively surcharging the Lenders' collateral.  While the Debtors purport not to seek any determination regarding the diminution in value resulting from their use of Cash Collateral,[35] the Proposed Order contains a finding that "the Adequate Protection Parties are adequately protected from a diminution in the value of their Prepetition Collateral by the Debtors' use of Cash Collateral to pay the Funded Disposition Costs (as defined herein) in order to preserve, maintain, and dispose of the Adequate Protection Parties' Prepetition Collateral" and that the prior and future use of Cash Collateral does not constitute a surcharge on the Lenders' collateral.[36]  Again, there is no evidence to support this finding, and it contradicts the AFI/JSB Cash Collateral Final Order, which granted adequate protection to the Lenders for "any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral."[37]

24.     **Third,** the Debtors have not demonstrated any need to use Cash Collateral.  *See* Fed. R. Bankr. P. 4001 advisory committee's note ("The motion for authority to use cash collateral shall include . . . facts demonstrating the need to use the cash collateral.").  The Debtors seek a finding that they "have an immediate need for the use of Cash Collateral to pay

---

[34]    Motion, ¶ 44; *see also* 11 U.S.C. § 363(p) ("[T]he trustee has the burden on the issue of adequate protection.").

[35]    Motion, ¶ 44.

[36]    Proposed Order, ¶¶ 5(b), 14.

[37]    AFI/JSB Cash Collateral Final Order, ¶ 22.

for the Funded Disposition Costs" and that "[a]bsent such payments, which are necessary to preserve the value of the remaining Prepetition Collateral (as defined herein) of the Adequate Protection Parties, the Debtors' assets will quickly erode to the detriment of the Debtors' estates and constituents, including the Adequate Protection Parties."[38]  The Debtors provide *no evidence* in support of these findings, and fail to show why they cannot pay the Funded Disposition Costs from unencumbered cash.[39]  In fact, the Debtors' recent cash flow projections show that the Debtors will have a significant amount of unencumbered cash through August 2013.  Instead, the Debtors simply argue that "it would be unfair and unreasonable to require the unsecured creditors *to bear the costs* associated with disposing of the secured creditors' collateral."[40]

25.    Anticipating AFI's concerns, the Debtors assert that the "use of Cash Collateral to pay for the Budgeted Expenses does not constitute a section 506(c) surcharge."[41]  In support, the Debtors rely upon *Security Leasing Partners, LP v. ProAlert, LLC* (*In re ProAlert, LLC*), 314 B.R. 436 (B.A.P. 9th Cir. 2004).[42]  That case, in addition to not being binding upon this Court, does not support the Debtors' position that they can use Cash Collateral to "preserve" the Lenders' collateral without replenishing the amount they use.  The central question in *ProAlert* was whether the debtor was required to satisfy the requirements of section 506(c) before using a secured creditor's cash collateral to pay professional fees.  *In re ProAlert, LLC*, 314 B.R. at 445.

---

[38]    Proposed Order, ¶ 5(a).

[39]    *See Declaration of Marc D. Puntus in Support of Debtors' Sale Motion* [ECF No. 2137], ¶ 45 (projecting that, following the closing of the Debtors' asset sales and repayment of the Barclays DIP Facility, the AFI DIP Facility, the Citibank MSR Facility and the FNMA EAF Facility and assuming the segregation of proceeds associated with collateral supporting the AFI LOC and AFI Revolver/Junior Secured Bonds, the Debtors would have approximately $900 million in unencumbered cash).

[40]    Motion, ¶ 47 (emphasis added).

[41]    *Id.*, ¶ 51.

[42]    *Id.*

The *ProAlert* court held that, so long as a secured creditor is adequately protected, a debtor need not satisfy the requirements under section 506(c) in order to use cash collateral. *Id.*  Importantly, the Debtors overlook the fact that, as part of its holding, the *ProAlert* court determined that adequate protection required the debtor to "replenish any funds used for payments to the two professionals no later than December 31, 2003, *on a dollar for dollar basis*."  *Id.* at 439 (emphasis added).

26.     The Debtors also assert that by agreeing to a budget the Lenders agreed to "fund" the Debtors' cash needs during these chapter 11 cases.[43]  This permitted funding, though, was not an authorization for the Debtors to surcharge the Lenders' collateral by never replenishing the Cash Collateral that was used.  Rather, the budget simply provides an oversight mechanism for the Debtors' use of Cash Collateral.   Under the AFI/JSB Cash Collateral Final Order, no expenses may be charged against the Lenders' collateral without the Lenders' prior written consent, which "shall not be implied from any other action, inaction, or acquiescence."[44]  *See also In re Machinery, Inc.*, 287 B.R. 755, 768 (Bankr. E.D. Mo. 2002) (stating "the majority rule is that a secured creditor does not impliedly consent to the debtor surcharging the administrative expenses of operating the business against its secured claim by merely consenting to the debtor's use of its cash collateral").

27.     Lastly, while the Debtors allege that the use of Cash Collateral has "increased" the value of the Lenders' collateral during these chapter 11 cases and seek a finding that without the further use of Cash Collateral the "Debtors' assets will quickly erode to the detriment of the

---

[43]   Motion, ¶ 46.

[44]   AFI/JSB Cash Collateral Final Order, ¶ 22 ("[No expense] shall be charged against or recovered from the Prepetition Collateral and AFI DIP Loan Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Adequate Protection Parties or AFI DIP Lender, as applicable and *no such consent shall be implied* from any other action, inaction, or acquiescence by the Adequate Protection Parties or AFI DIP Lender, as applicable.") (emphasis added).

Debtors' estates and constituents, including the Adequate Protection Parties," the Debtors

provide no supporting evidence or specific explanation other than their own conclusory say-so.[45]

28.    To resolve Ally's concerns and ensure that the 506(c) Waiver is respected, the

Court should not grant the Debtors the nonconsensual use of Cash Collateral without clarifying

that such use will result in adequate protection obligations consisting of dollar-for-dollar

replacement liens and section 507(b) claims in favor of the Lenders in the amount of the Cash

Collateral that is expended.  *See ProAlert, LLC*, 314 B.R. at 439; *In re Harbour E. Dev., Ltd.,*

No. 10-20733 (AJC), 2011 WL 6097063, at *4 (Bankr. S.D. Fla. Dec. 6, 2011) ("[U]se of cash

collateral requires dollar-for-dollar adequate protection in the form of new collateral.") (citing

*Desert Fire Prot. v. Fontainbleau Las Vegas Holdings, LLC* (*In re Fontainbleau Las Vegas*

*Holdings*), 434 B.R. 716, 727 (S.D. Fla. 2010)).

**III.    The Debtors' Liquidation Of The Lenders' Collateral Using Unencumbered Cash Is
Entirely Fair And Consistent With Their Fiduciary Duties.**

29.    The Debtors argue in the Motion that it is "inconsistent with their fiduciary

duties" and "unfair and unreasonable to require the unsecured creditors to bear the costs

associated with disposing of the secured creditors' collateral."[46]  AFI believes that the Debtors

have mischaracterized their fiduciary duties and the benefits that will result from maximizing the

value of the Lenders' collateral.

30.    The Debtors have a fiduciary duty to maximize value for *all* of their stakeholders.

*In re Ngan Gung Rest.*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) ("A trustee also owes a

fiduciary duty to each creditor of the estate.") (citing *Commodity Futures Trading Comm'n v.*

*Weintraub*, 471 U.S. 343, 355 (1985)); *In re Northstar Dev. Corp.*, 465 B.R. 6, 17 (Bankr. D.

---

[45]    Motion, ¶¶ 1, 44; Proposed Order, ¶ 5(a).

[46]    Motion, ¶¶ 5, 47.

Del. 2012) ("[F]or insolvent debtors, a director's fiduciary obligation becomes a duty to maximize a fair and equitable distribution among all creditors."). The Debtors can fulfill their fiduciary duties by maximizing the value received for the Lenders' collateral.

31.    Further, the liquidation of the Lenders' collateral is not solely for the benefit of the Lenders, as the Debtors assert.[47]  By maximizing recovery to the Lenders from their collateral, the Debtors minimize the Lenders' unsecured deficiency claims, if any, against the Debtors' estates, which in turn reduces the amount of unsecured claims, thereby increasing the potential pro-rata recovery to holders of such unsecured claims. Therefore, using estate assets to preserve and dispose of the Lenders' collateral in a way that maximizes the liquidation value of such collateral is consistent with the Debtors' fiduciary duties and will maximize recovery for all creditors, not just the Lenders. *See In re Kelley*, No. 01 27345 (RBR), 2001 WL 34706484, at *2 (Bankr. S.D. Fla. Nov. 29, 2001) (noting "it is in the best interest of the Debtors and the estate to obtain the highest sale price").

## IV.    Without AFI's Requested Clarifications, The Proposed Expense Allocation Should Be Modified.

32.    AFI requests that the Court not grant the Motion without clarifications that the Lenders are entitled to adequate protection identical to that granted under the AFI/JSB Cash Collateral Final Order and that adequate protection results in dollar-for-dollar replacement liens and section 507(b) claims for the use of Cash Collateral. Should the Court be inclined to grant the Motion without the clarifications that AFI requests, and in so doing permit the Debtors to effectively surcharge the Lenders' collateral notwithstanding the 506(c) Waiver, revise a final order of the Court without a showing of exceptional circumstances or undue hardship, and use

---

[47]    Motion, ¶ 5, 48.

Cash Collateral without any evidence of a need to do so, then AFI respectfully submits that the Debtors' proposed expense allocation should be modified.

33.    The proposed expense allocation improperly includes using Cash Collateral to pay professional fees, fund indemnification payments to Ally Bank under the Ally Bank Servicing Agreement with respect to modifications to Ally Bank loans made in accordance with the DOJ/AG Settlement, and pay costs to perform any servicing rights remaining with the Debtors' estates following the closing of the Sales.[48]    The Debtors have made no showing that such expenses directly relate to preserving or disposing the Lenders' collateral, nor can they. Accordingly, those expenses should be paid from unencumbered cash.

## CONCLUSION

For the foregoing reasons, AFI respectfully requests that this Court deny the Motion unless the Proposed Order is modified such that any further use of Cash Collateral receives the same protections of the Original AP Package and the Court clarifies that the adequate protection under the Original AP Package requires the Debtors to replenish Cash Collateral on a dollar-for-dollar basis, with replacement liens and 507(b) claims securing this obligation.

*[Remainder of page intentionally left blank]*

---

[48]    *Id.*, ¶ 30.

Dated:  May 6, 2013
        New York, New York

                              */s/ Ray C. Schrock*                              
                              Richard M. Cieri
                              Ray C. Schrock
                              Craig A. Bruens
                              KIRKLAND & ELLIS LLP
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone: (212) 446 4800
                              Facsimile: (212) 446 4900

                              - and -

                              Jeffrey S. Powell
                              Daniel T. Donovan
                              KIRKLAND & ELLIS LLP
                              655 15th Street, N.W., Ste. 1200
                              Washington, D.C. 20005
                              Telephone: (202) 879-5000
                              Facsimile: (202) 879-5200

                              *Counsel for Ally Financial Inc. and Ally Bank*