Hearing Date and Time: May 14, 2013 at 10:00 a.m. (prevailing Eastern Time)
Committee's Objection Deadline:  May 6, 2013 at 11:59 p.m. (prevailing Eastern Time)

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Gregory A. Horowitz
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: keckstein@kramerlevin.com

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, <u>et</u> <u>al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

--------------------------------------------------------- x

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN**
<u>**ORDER TO PERMIT THE DEBTORS TO CONTINUE USING CASH COLLATERAL**</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................. 1

LIMITED OBJECTION ............................................................................................................... 4

I.    The Debtors' Use of Cash Collateral for the Limited Purpose of Paying the
      Funded Disposition Costs Does Not Constitute a "Diminution In Value." ........................ 4

II.   AFI and the Junior Secured Noteholders Are Adequately Protected without
      Receiving Liens on the AFI LOC Collateral and Post-Petition Interest Payments. ........... 5

CONCLUSION ......................................................................................................................... 10

## TABLE OF EXHIBITS

EXHIBIT A- Electronic Comparison of Revised Proposed Order

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Am. Consol. Transp. Cos.*,
  2010 WL 3655485 (Bankr. N.D. Ill. Sept. 10, 2010) ...................................................4

*In re Constable Plaza Assocs.*,
  125 B.R. 98 (Bankr. S.D.N.Y. 1991)...........................................................................7

*In re Pine Lake Village Apartment Co.*,
  16 B.R. 750 (Bankr. S.D.N.Y. 1982) ...........................................................................4

*In re Proalert, LLC*,
  314 B.R. 436 (B.A.P. 9th Cir. 2004)...........................................................................5

*In re Rogers Dev. Corp.*,
  2 B.R. 679 (Bankr. E.D. Va. 1980)..............................................................................7

*In re Salem Plaza Assocs.*,
  135 B.R. 753 (Bankr. S.D.N.Y. 1992)..........................................................................4

*In re Stein*,
  19 B.R. 458 (Bankr. E.D. Pa. 1982) .............................................................................4

*In re Tucker*,
  5 B.R. 180 (Bankr. S.D.N.Y. 1980)..............................................................................7

*In re WorldCom, Inc.*,
  2003 Bankr. LEXIS 2440 (Bankr. S.D.N.Y. Jan. 30, 2003).......................................6

*Kost v. First Interstate Bank of Greybill (In re Kost)*,
  102 B.R. 829 (D. Wyo. 1989).......................................................................................7

*Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*,
  2013 U.S. Dist. LEXIS 48411 (S.D.N.Y. Apr. 2, 2013).............................................6

**STATUTES**

11 U.S.C. § 361......................................................................................................................6

11 U.S.C. § 506(c) .................................................................................................................5

11 U.S.C. § 507(b) .................................................................................................................6

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") submits this limited objection (the "**Limited Objection**") to the *Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3374] (the "**Motion**").[1] In support of the Limited Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Committee generally supports the Motion because it provides that the costs necessary to preserve and enhance the value of AFI's and the Junior Secured Noteholders' non-cash collateral will be fairly borne by AFI and the Junior Secured Noteholders and paid out of their Cash Collateral.  Following the Sales, the Debtors currently have approximately $1.56 billion in non-cash assets, 95%[2] of which constitutes the collateral of AFI and the Junior Secured Noteholders (the "**Remaining Non-Cash Assets**").  Monetization of the Remaining Non-Cash Assets – and payment of the attendant administrative costs – will largely benefit AFI and the Junior Secured Noteholders.  Accordingly, the Motion appropriately proposes that the Court authorize the Debtors to use Cash Collateral to pay the Funded Disposition Costs, which will allow a multi-year, orderly liquidation of the Remaining Non-Cash Assets and maximize the value of the assets largely for AFI's and the Junior Secured Noteholders' benefit.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] The claims and liens of the Junior Secured Noteholders are the subject to an adversary proceeding commenced by the Committee.  *See Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims* [Docket No. 3069].  As the issues raised in the adversary proceeding are not addressed by the Motion and are therefore not before the Court, the Committee does not address such issues herein, and reserves all of its rights in connection therewith.

2.    Nevertheless, the Committee submits this Limited Objection to seek two specific modifications to the Proposed Order that are necessary to protect the interests of unsecured creditors without interfering with the ability of AFI and the Junior Secured Noteholders to continue to receive adequate protection. *First*, the Proposed Order should include a determination that the use of Cash Collateral to pay the Funded Disposition Costs does not *itself* constitute a diminution in value of AFI's and the Junior Secured Noteholders' Prepetition Collateral. The Funded Disposition Costs are costs inherent to maximizing the value of the Remaining Non-Cash Assets. The alternative to payment of the Funded Disposition Costs is the Debtors' quick sale of the Remaining Non-Cash Assets for significantly less than what the Debtors project will be realized through a multi-year, orderly liquidation.[3] Thus, the Funded Disposition Costs cannot constitute a diminution in value because they are necessary to maximizing the value of the Remaining Non-Cash Assets.

3.    This determination is necessary to protect unsecured creditors from the risk that the Junior Secured Noteholders, whom the Debtors and the Committee have determined are undersecured, will later seek compensation from the Debtors' unencumbered assets for the Debtors' use of Cash Collateral to pay the Funded Disposition Costs – even where the value of the Remaining Non-Cash Assets is *enhanced* by such use. This would be wrong and grossly unfair: Under no circumstances should unsecured creditors' recoveries be jeopardized to compensate the Junior Secured Noteholders (or AFI) for the use of their cash to monetize their own collateral.

---

[3] Based on the Debtors' recent receipt of bids of less than 80% of the par amount of approximately $130 million of FHA loans offered for sale (*see* Puntus Decl. at 5 n.3), it is apparent that a quick sale of the Remaining Non-Cash Assets would lead to a much lower recovery than if the assets were monetized through a multi-year, orderly liquidation. For example, the Debtors believe that such a liquidation "would likely realize close to the carry value on the FHA Loans over time." *See Declaration of Marc D. Puntus In Support of Debtors' Sale Motion* [Docket No. 2545], ¶ 7.

4.    *Second*, the New AP Package proposed by the Debtors should be scaled back because it is unnecessary to ensure that AFI and the Junior Secured Noteholders receive adequate protection and therefore is prejudicial to unsecured creditors.   AFI is significantly oversecured and has a substantial equity cushion, which obviates any purported need for the Debtors to grant AFI cross-collateralizing adequate protection liens and to pay AFI current interest under the AFI Revolver[4] and the AFI LOC.   Moreover, AFI should not receive current interest payments because it will not be entitled to such payments if the Committee prevails on its equitable subordination and veil-piercing claims against AFI.

5.    In addition, the Debtors should not provide the Junior Secured Noteholders with adequate protection liens on the AFI LOC collateral, which would otherwise be unencumbered (after repayment of the AFI LOC).   The liens are unnecessary because the Debtors' proposed use of Cash Collateral will be restricted, through the amounts budgeted in the Forecast, to paying only costs that will preserve and enhance the value of Remaining Non-Cash Assets.

6.    By modifying the Proposed Order to (i) include a determination that payment of the Funded Disposition Costs in accordance with the Forecast will not constitute a diminution in value; (ii) omit the additional adequate protection liens on the AFI LOC collateral for the benefit of the AFI Revolver and the Junior Secured Noteholders; and (iii) omit the continued payment of postpetition interest to AFI, the Court will help ensure that the value of the Debtors' unencumbered assets is properly preserved for unsecured creditors.   For the Court's

---

[4] The term "AFI Revolver" shall have the meaning of the term "AFI Senior Secured Credit Facility" as defined in the Motion.

convenience, attached hereto as **Exhibit A** is an electronic comparison showing the Committee's

revisions to the Proposed Order (the "**Revised Proposed Order**").

**LIMITED OBJECTION**

**I.      The Debtors' Use of Cash Collateral for the Limited Purpose of Paying the Funded
Disposition Costs Does Not Constitute a "Diminution In Value."**

7.      It is well-settled that a debtor's payment of the costs necessary to preserve

or enhance the value of a secured creditor's non-cash collateral constitutes adequate protection

against diminution in value, even when the debtor pays the costs from the secured creditor's cash

collateral.  *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding

secured creditor adequately protected where debtor used cash collateral to preserve overall value

of collateral by paying necessary operating expenses); *In re Pine Lake Village Apartment Co.*, 16

B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (holding use of cash collateral to maintain and repair

underlying collateral "clearly ensures that the [secured creditor's] investment is adequately

protected"); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (permitting expenditure of

secured creditor's cash collateral to enhance overall value of collateral).  Because such use of

cash collateral preserves the value of a secured creditor's collateral and protects the creditor's

secured interest, the cash payments themselves do not constitute a diminution in value of the

secured creditor's collateral.  *See In re Am. Consol. Transp. Cos.*, 2010 WL 3655485, at *4

(Bankr. N.D. Ill. Sept. 10, 2010) (holding secured creditor not entitled to any adequate protection

where use of cash collateral will preserve the value of its collateral).[5]

8.      These conclusions fully apply in this case, because the payment of the

Funded Disposition Costs out of Cash Collateral will enhance and maximize the value of the

---

[5]  Without such a finding, AFI and the Junior Secured Noteholders could potentially assert adequate protection
claims for the amount of Cash Collateral spent by the Debtors (*i.e.*, the Funded Disposition Costs) to achieve an
enhancement of the Remaining Non-Cash Assets, even where the enhancement is in excess of the Funded
Disposition Costs.

Remaining Non-Cash Assets.  *See* Horner Decl. ¶ 6 (detailing Funded Disposition Costs); Puntus

Decl. ¶ 9 ("[T]he Cash Collateral will be used in accordance with the Forecast solely to pay for

the Funded Disposition Costs, which will be used directly or indirectly to preserve and liquidate

the remaining collateral, inuring directly to the benefit of the Lenders.").  Absent these proposed

payments, the Remaining Non-Cash Assets may need to be sold quickly at depressed prices and

to the detriment of AFI and the Junior Secured Noteholders.  *See* Puntus Decl. ¶ 9 ("If the

Debtors were precluded from making expenditures necessary to maintain their assets and sustain

their operations, the Lenders would be harmed.").  Accordingly, the Court should determine that

payment of the Funded Disposition Costs with Cash Collateral does not constitute a diminution

in value of the Prepetition Collateral.  *See* Revised Proposed Order ¶ 5(b).

9.      Absent this determination, unsecured creditors will be unfairly exposed to

the risk of the undersecured Junior Secured Noteholders asserting claims against otherwise

unencumbered estate assets as purported compensation for Funded Disposition Costs that the

Debtors will have paid to benefit the Junior Secured Noteholders.  There is no reason that the

unsecured creditors should bear this risk.  If AFI and the Junior Secured Noteholders object to

bearing these costs, the Debtors should negotiate, or propose to the Court, an alternative process

that does not require the estates to incur the Funded Disposition Costs.[6]

## II.    AFI and the Junior Secured Noteholders Are Adequately Protected without Receiving Liens on the AFI LOC Collateral and Post-Petition Interest Payments.

10.      In exchange for the use of Cash Collateral to pay the Funded Disposition

Costs, the Debtors propose granting AFI and the Junior Secured Noteholders an adequate

---

[6]  The Committee understands that the Junior Secured Noteholders object to the Funded Disposition Costs on the grounds that the Debtors are prematurely attempting to assert a surcharge under section 506(c) of the Bankruptcy Code.  This argument has no merit, as many courts have recognized that a debtor may use the cash collateral of an adequately protected secured creditor without the need to assert a section 506(c) surcharge.  *See, e.g.*, *In re Proalert, LLC*, 314 B.R. 436 (B.A.P. 9th Cir. 2004) (holding that debtor may use cash collateral of adequately protected creditor without meeting the requirements of section 506(c)).

protection package that poses significant risks to the unsecured creditors.  The new adequate

protection package proposed by the Debtors includes the following:

- Replacement liens on the parties' Prepetition Collateral in the same priority as existed prior to the Petition Date.

- Superpriority claims under section 507(b) against each of the Debtors (as defined in the Proposed Order, the "**507(b) Claims**").

- Additional adequate protection liens (the "**Additional Adequate Protection Liens**") on the AFI LOC collateral for the benefit of the AFI Revolver and the Junior Secured Noteholders.

- Continued payment of postpetition interest under the AFI Revolver and the AFI LOC at the non-default rate (the "**Adequate Protection Payments**").

11.     The Committee does not take issue with granting AFI and the Junior

Secured Noteholders replacement liens on their Prepetition Collateral or the 507(b) Claims.[7]

However, the Additional Adequate Protection Liens and the Adequate Protection Payments are

unwarranted and will have the effect of unfairly transferring the risk of any purported diminution

in the value of the Prepetition Collateral during the wind-down period from AFI and the Junior

Secured Noteholders to unsecured creditors.

12.     Courts have long held that an equity cushion constitutes adequate

protection and may be the only form of protection against diminution in value that a secured

creditor needs, notwithstanding that such a cushion is not specifically enumerated in section 361

of the Bankruptcy Code.  *See, e.g.*, *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 2013

U.S. Dist. LEXIS 48411, at *19 (S.D.N.Y. Apr. 2, 2013) ("It is well-settled that the existence of

---

[7]  Because the Committee believes that the value of the Prepetition Collateral will be enhanced by the Debtors' proposed wind-down process, the Committee reserves its rights to contest any assertion that the Prepetition Collateral suffered a diminution in value and whether AFI or the Junior Secured Noteholders are entitled to recover from any adequate protection lien or assert a claim under section 507(b) of the Bankruptcy Code.

an equity cushion can be sufficient, in and of itself, to constitute adequate protection.") (citations omitted); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 2440, at *18-19 (Bankr. S.D.N.Y. Jan. 30, 2003) (holding secured creditor adequately protected where only form of adequate protection was equity cushion); *In re Tucker*, 5 B.R. 180, 182 (Bankr. S.D.N.Y. 1980) ("An adequate 'cushion' can itself constitute adequate protection with nothing more."); *In re Rogers Dev. Corp.*, 2 B.R. 679, 683 (Bankr. E.D. Va. 1980) (same). In particular, courts have held that equity cushions of as little as 20% are sufficient adequate protection by themselves. *See AMR Corp.*, 2013 U.S. Dist. LEXIS 48411, at *20 (holding secured creditor adequately protected when equity cushion was at least "north of twenty percent"); *Kost v. First Interstate Bank of Greybill (In re Kost)*, 102 B.R. 829, 831 (D. Wyo. 1989) (holding equity cushion of 20% or more generally provides adequate protection).

13.     Here, as explained in the Motion and the Puntus Declaration, AFI enjoys a substantial equity cushion much greater than 20% in both the AFI LOC collateral and the AFI Revolver collateral. *See* Motion ¶ 40; Puntus Decl. ¶ 10. According to the Debtors, the book value of the AFI LOC collateral and the AFI Revolver collateral is approximately $1.285 billion and $2.049 billion respectively, securing $380 million and $747 million in AFI's claims under the respective facilities. *See* Puntus Decl. ¶ 10. This shows that AFI enjoys an equity cushion in both the AFI LOC collateral and the AFI Revolver collateral of approximately 238% and 174%, respectively. This ample cushion provides all the adequate protection that AFI needs. Moreover, AFI and the Junior Secured Noteholders are adequately protected by the 507(b) Claims and the proposed wind-down process, which will preserve and enhance the value of the Prepetition Collateral and limit payment of the Funded Disposition Costs to the amounts allocated in the Forecast. *See In re Constable Plaza Assocs.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (holding

debtor's use of cash collateral rental income to preserve value of encumbered office building provides sufficient adequate protection).

14. The replacement liens, equity cushion, 507(b) Claims, and strict use of Cash Collateral to maximize the value of the Remaining Non-Cash Assets, render the Additional Adequate Protection Liens and the Adequate Protection Payments to AFI entirely unnecessary. In addition, the Adequate Protection Payments are inappropriate at this juncture of the cases given the Committee's pending request to pursue estate claims against AFI, which may result in (i) the equitable subordination of AFI's claims under the AFI Revolver and the AFI LOC, and (ii) AFI's liability for all of the unsecured debts and obligations of the Debtors, which are estimated to be in excess of $20 billion. *See Motion of The Official Committee of Unsecured Creditors for Entry of an Order Authorizing The Committee to Prosecute and Settle Certain Claims on Behalf of The Debtors' Estates* [Docket No. 3412]. Although the Debtors included the Additional Adequate Protection Liens and the Adequate Protection Payments as part of AFI's original adequate protection package, that was at a time when the Debtors were in critical need for the use of Cash Collateral to fund their continuing operations and to provide a bridge to the Sales. Now, in the event that the Committee's claims against AFI are successful, AFI will not be entitled to *any* recovery under the AFI Revolver and the AFI LOC. Even if the Committee's claims against AFI are not successful, AFI will be able to recoup any accrued postpetition interest payments from its substantial equity cushion. Accordingly, there is no reason to grant AFI either the Additional Adequate Protection Liens or the Adequate Protection Payments.

15. AFI and the Junior Secured Noteholders are also protected against any diminution in value because the Funded Disposition Costs will be made pursuant to the Forecast, which provides a detailed allocation of Cash Collateral to costs related to the preservation and

enhancement of the Remaining Non-Cash Assets. This restriction protects AFI's and the Junior

Secured Noteholders' secured interests by preventing the Debtors from using Cash Collateral for

excessive costs in connection with the disposition of the Remaining Non-Cash Assets.[8]

16. In addition, with respect to the Junior Secured Noteholders, there is no

reason to encumber the excess value in the AFI LOC collateral with the Junior Secured

Noteholders' Additional Adequate Protection Liens. There is potentially more than $900 million

of otherwise unencumbered value in the AFI LOC collateral, and it may be one of the most

significant sources of recovery available to unsecured creditors in these cases. The Junior

Secured Noteholders are undersecured with respect to their prepetition liens on the AFI Revolver

collateral, and will be the only party (other than AFI) to receive a recovery from the AFI

Revolver collateral. The payment of the Funded Disposition Costs related to monetizing the AFI

Revolver collateral will solely benefit the Junior Secured Noteholders by sparing them the

necessity of liquidating their own collateral in short order and receiving a far lower recovery.

Because the Funded Disposition Costs protect the Junior Secured Noteholders – and only the

Junior Secured Noteholders – from a diminution in the value of the AFI Revolver collateral,

there is no reason to allow the Junior Secured Noteholders to assert adequate protection liens on

the AFI LOC collateral in exchange for the privilege of liquidating their own collateral.

17. If the Junior Secured Noteholders believe that they are able to receive a

superior recovery on their collateral outside of the Debtors' proposed wind-down process, they

should agree to an alternative process that spares the Debtors' estates (and unsecured creditors)

---

[8]  There are substantial additional wind-down costs that the Debtors are not paying from Cash Collateral, including
operating expenses and professional fees relating to claims reconciliation and the chapter 11 plan process. *See*
Horner Decl. Ex. 1. The Debtors anticipate that they will incur approximately $309 million in expenses relating to
the claims reconciliation process and general wind-down of the estates. *See id.*

from the need to pay the Funded Disposition Costs – especially because there is no prospect for unsecured creditors to benefit from the payment of such costs.

18.     Absent the Junior Secured Noteholders' willingness to liquidate their own collateral, it is an inescapable conclusion that the Junior Secured Noteholders are adequately protected from a diminution in value in their collateral by the Debtors' proposed wind-down process, and there is no reason to encumber assets that would otherwise go to satisfy unsecured creditors through the grant of Additional Adequate Protection Liens to the Junior Secured Noteholders.

## <u>CONCLUSION</u>

WHEREFORE, the Committee respectfully requests that the Court grant the Motion with the modifications requested herein, enter the Revised Proposed Order, and grant such other and further relief as the Court deems just and proper.

Dated:    May 6, 2013
New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Gregory A. Horowitz
Kenneth H. Eckstein
Douglas H. Mannal
Gregory A. Horowitz
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Email: keckstein@kramerlevin.com

*Counsel for the Official Committee
of Unsecured Creditors*

- 10 -

## <u>EXHIBIT A</u>

**Electronic Comparison of Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING**
**THE DEBTORS TO CONTINUE USING CASH COLLATERAL**

Upon the motion (the "***Motion***"),[1] dated April 8, 2013, of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") filed in these chapter 11 cases (the "***Chapter 11 Cases***") for entry an order under sections 105, 361, 362, and 363(c) of title 11 of the United States Code (the "***Bankruptcy Code***"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking that the Court: (i) authorize the Debtors to continuing using Cash Collateral (as defined herein) as set forth herein, and (ii) provide adequate protection in the form of the New AP Package to (a) AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, (b) AFI, in its capacity as lender under the AFI LOC, and (c) the Junior Secured Noteholders, each effective as of May 1, 2013 (collectively, the "***Lenders***" or the "***Adequate Protection Parties***").

**WHEREAS**, on May 16, 2012, the Court entered the *Interim Order Under Sections 105, 361, 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing* [Docket No. 89]**;**

---

[1]   Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

**WHEREAS**, on June 25, 2012, the Court entered the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491] (the "***Original Final Order***");

**WHEREAS**, on December 20, 2012, the Court entered the *Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2495];

**WHEREAS**, on February 15, 2013, the Court entered the *Second Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2927];

**WHEREAS**, on March 18, 2013, the Court entered the *Third Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3230];

**WHEREAS**, the hearing was held by the Court on [_____, 2013] at [_____] (the "Hearing");

**NOW THEREFORE**, upon the record established at the Hearing, and all objections to the entry of this Order having been withdrawn, resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Petition Date.*  On May 14, 2012 (the "***Petition Date***"), each of the Debtors filed separate voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing the Chapter 11 Cases.

2.      *Debtors-in-Possession.* The Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in these cases.  On May 16, 2012,

2

the United States Trustee appointed the Official Committee of Unsecured Creditors (the "**Committee**") in these Chapter 11 Cases.  On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez, Esq., as examiner, and on March 5, 2013, the Court authorized the appointment of Lewis Kruger, Esq., as Chief Restructuring Officer of the Debtors.

3.     *Jurisdiction.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     *Notice.*  Notice of the Motion, the relief requested therein was given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) Ally Financial Inc. and its counsel, Kirkland & Ellis LLP; (h) Ally Bank and its counsel, Kirkland & Ellis LLP; (i) UMB Bank, N.A., as successor indenture trustee for the Junior Secured Notes (the "**Trustee**"), and its counsel, Kelley Drye & Warren LLP; (j) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the AFI Senior Secured Credit Facility, and as collateral control agent under the Intercreditor Agreement, dated as June 6, 2008 (the "**Collateral Agent**"); (k)  counsel to the Ad Hoc Group of Junior Secured Notes, White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP; (l) counsel for the Committee**,** Kramer Levin, Naftalis & Frankel LLP; and (m) the parties required to be served under the Debtors' Case Management Procedures Order (collectively, the "**Notice Parties**").  The Court finds that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

3

5.      *Certain Findings Regarding the Use of Cash Collateral.*

(a)      Good cause has been shown for entry of this Order.  The Debtors have an immediate need for the use of Cash Collateral to pay for the Funded Disposition Costs (as defined below).  Absent such payments, which are necessary to preserve the value of the remaining Prepetition Collateral (as defined herein) of the Adequate Protection Parties, the Debtors' assets will quickly erode to the detriment of the Debtors' estates and constituents, including the Adequate Protection Parties.  The use of Cash Collateral, will, therefore, help preserve and enhance the value of the Adequate Protection Parties' Prepetition Collateral and will increase the prospects for the successful resolution of the Chapter 11 Cases by maximizing the value of the Prepetition Collateral.

(b)      The Adequate Protection Parties are adequately protected from a diminution in the value of their Prepetition Collateral by the Debtors' use of Cash Collateral to pay the Funded Disposition Costs (as defined herein) in order to preserve, maintain, and dispose of the Adequate Protection Parties' Prepetition Collateral, and therefore the Debtors' payment the Funded Disposition Costs (as defined herein) shall not constitute a diminution in value with respect to the Adequate Protection Parties' collateral.

(c)      Based on the record established in the Court at the Hearing, the terms of the Debtors' use of Cash Collateral, the expense allocation methodology, and the Forecast are fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties.  Entry of this Order is in the best interests of the Debtors' estates and creditors.

4

6.     *Cash Collateral.*  The Debtors' cash and cash equivalents on deposit or maintained in any account or accounts by the Debtors that is subject to a perfected security interest in favor of AFI or the Junior Secured Parties[2] and cash and cash equivalents generated by the collection of accounts receivable, sale of inventory, or other disposition of the Prepetition Collateral[3] constitute proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (collectively, and together with all cash and cash equivalents otherwise constituting Prepetition Collateral, the "***Cash Collateral***").

7.     *Authorization of Use of Cash Collateral.*  Except as otherwise expressly provided herein, Cash Collateral may be used during the period from May 1, 2013 through and including the Termination Date (as defined in paragraph 13 below) on the following terms for the types of expenses set forth in the Forecast and the Horner Declaration:

(a)     ~~(a)~~     The Cash Collateral securing each of the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes, shall be used to fund (i) the asset monetization/preservation costs related to the assets of each of the respective collateral pools (including an allocated portion of the professionals' fees and operating expenses related thereto),[4] (ii) any and all accrued and unpaid amounts payable with Cash Collateral in accordance with the Original Final Order, which accrued prior to the closing of the Platform Sale but

---

[2]   The "***Junior Secured Parties***" means the Junior Secured Noteholders, the Trustee, and the Collateral Agent.

[3]   The "***Prepetition Collateral***" includes the personal and real property constituting "Collateral" under, and as defined in, the documents governing the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes.

[4]     Consistent with past practice, the costs are allocated based on the remaining assets of each of the respective collateral pools (based on the asset values within each collateral pool, excluding cash).

have not yet been paid, and (iii) the Carve Out,[5]
as defined in and in accordance with the allocation among the Lenders as provided in paragraph 16 of the Original Final Order, and (iv) the Adequate Protection Payments to AFI, in its capacity as lender under each of the AFI LOC and the AFI Senior Secured Credit Facility;

(b)     The Cash Collateral securing the AFI Senior Secured Credit Facility shall also be used to fund (i) the wind down costs of the origination pipeline, (ii) the costs related to Debtor Executive Trustee Services, LLC ("ETS") (both of which comprise collateral of the AFI Senior Secured Credit Facility and Junior Secured Notes), and (iii) advance obligations with respect to servicing agreements remaining the estate following the closing the Sales;[6] and

(c)     The Cash Collateral securing the AFI LOC shall also be used to fund (i) indemnification payments to Ally Bank under the Ally Bank Servicing Agreement, with respect to modifications to Ally Bank loans made in accordance with the DOJ/AG Settlement, and (ii) any costs to service any servicing rights remaining the estate following the closing of the Sales; and

(Items (a), (b) and (c) collectively are referred to as the "**Funded Disposition Costs**").

---

[5]     For purposes hereof, the "*Carve Out*" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the continuance of a Termination Event hereunder, and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors (the "*Carve Out Notice*"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid fees and expenses incurred by the professionals retained in the Chapter 11 Cases and reimbursement of out-of-pocket expenses of the members of any official committee appointed in the Chapter 11 Cases, including the Creditors' Committee (collectively, the "*Professional Fees*") incurred by persons or firms whose retention is approved pursuant to sections 327 and 1103 of the Bankruptcy Code after the Business Day following delivery of the Carve Out Notice and allowed by the Court, in an aggregate amount not exceeding $25 million (the "*Carve Out Cap*") (plus all unpaid Professional Fees allowed by the Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) the Carve Out shall not be available to pay any such Professional Fees incurred  in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Adequate Protection Parties, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtors' estates.

[6]     Specifically, the Debtors will use Cash Collateral of the AFI Senior Secured Credit Facility to fund advances that were previously funded by such facility.  All other remaining advance obligations shall be funded with the cash remaining in the DIP Borrowers (including the proceeds of any advances not purchased at the closing of the sales), as such advances were previously funded with the Barclays DIP Facility (as defined herein).

6

Payment of the Funded Disposition Costs as set forth in the Forecast is authorized and approved under this Order.  The Cash Collateral will not be used to pay the Debtors' operating expenses or professionals' fees (other than the Funded Disposition Costs), as such expenses will be funded by the use of unencumbered cash.  The Debtors shall not use Cash Collateral and other Prepetition Collateral at any time, except as set forth in this Order.

8.      *Reporting.*  In lieu of the reporting requirements set forth in the Original Final Order, the Debtors shall provide the Lenders and the Committee with a 6-month monthly forecast for the following 6-month period (each, a "***Forecast***"), and a monthly variance report for each prior month setting forth for such one-month period actual results, noting therein aggregate variances from amounts set forth for the one-month period in the relevant Forecast.  In addition, the Debtors shall provide the Lenders and the Committee with a collateral report that reflects updated values as of the end of the prior calendar month (each such revised report, for the period of its applicability, to be referred to herein as the "***Collateral Report***"). Thereafter, promptly following request by AFI, the Committee, or the Trustee, the Debtors shall make themselves reasonably available to discuss such Forecast, the Collateral Report, and the details thereof.

9.      *Adequate Protection.* As additional adequate protection for the aggregate diminution in value of the Prepetition Collateral to the extent of the Adequate Protection Parties' interests therein (the amount of such diminution in value, if any, the "***Adequate Protection Obligations***"), the Adequate Protection Parties, in addition to the adequate protection provided by payment of the Asset Disposition Costs, are granted the following:

(a)      AFI, in its capacity as lender under the AFI LOC, shall receive:

7

(i)       as security for the Adequate Protection Obligations, effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by AFI of any collateral, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens (the "***Adequate Protection Liens***") on all of the collateral securing the AFI LOC and any additional collateral purchased, funded, or financed through the use of Cash Collateral of the AFI LOC.  The Adequate Protection Liens shall be (i) senior to the (A) existing liens granted to AFI under the AFI LOC, (B) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility, and (C) Adequate Protection Liens granted to the Junior Secured Parties, and (ii)  junior to the Carve Out; and

(ii)      superpriority administrative expense claims as and to the extent provided in section 507(b) of the Bankruptcy Code  (a "***507(b) Claim***"), which 507(b) Claims shall be (x) senior to the 507(b) Claims granted to the Junior Secured Parties, and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI Senior Secured Credit Facility; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to AFI from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their Prepetition Collateral and (2) the proceeds of actions

8

brought under chapter 5 of the Bankruptcy Code with respect to the AFI LOC or the AFI Senior Secured Credit Facility; and.

      (iii)    adequate protection payments ("***Adequate Protection Payments***") consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI LOC (the foregoing to include all unpaid prepetition interest); and

      (b)    AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, shall receive:

      (i)    Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility and any additional collateral purchased, funded, or financed through the use of AFI Senior Secured Credit Facility Cash Collateral, which shall be (x) junior only to the existing liens granted to AFI under the AFI Senior Secured Credit Facility, and (y) senior to (A) the existing liens granted to the Junior Secured Parties, and (B) Adequate Protection Liens granted to the Junior Secured Parties;

      (ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be (x) junior to the (A) existing liens granted to AFI under the AFI LOC, and (B) Adequate Protection Liens granted to AFI under the AFI LOC, and (y) senior to the Adequate Protection Liens granted to the Junior Secured Parties on the collateral securing the AFI LOC as set forth below;

      (ii)    (iii) 507(b) Claims that are (x) senior to the 507(b) Claims granted to the Junior Secured Parties and (y) *pari passu* with the 507(b) Claims granted to

9

AFI on account of the AFI LOC (but senior to the claims referred to in this clause (y) to the extent relating to Cash Collateral that is used to fund GNMA Buyouts);

and

(iii)    (iv) Additional Adequate Protection Liens on all of the equity of GMACM Borrower and RFC Borrower (each as defined in the Barclays DIP Facility[7] and collectively referred to herein as the "*Barclays DIP Borrowers*"), which shall be senior to the Adequate Protection Liens granted to the Junior Secured Parties on the equity of the Barclays DIP Borrowers; *provided* that the Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Adequate Protection Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order[8]) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order); and.

(v)    Adequate Protection Payments consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the nondefault rate set forth in the AFI Senior Secured Credit Facility (the foregoing to include all unpaid prepetition interest); and

---

[7]    The "*Barclays DIP Facility*" means that certain postpetition senior secured superpriority financing facility provided by Barclays Bank PLC to the Debtors pursuant to the Barclays DIP Order.⊥

[8]    The "*Barclays DIP Order*" means the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, and (II) Granting Related Relief [Docket No. 490].

10

(c)      the Junior Secured Parties shall receive:

(i)      Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility, which shall be junior to the (x) existing liens granted to AFI under the AFI Senior Secured Credit Facility, (y) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility and (z) existing liens granted to the Junior Secured Parties, *provided* that the enforcement of the Adequate Protection Liens shall be subject to, in all respects, the Intercreditor Agreement; and

(ii)      additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be junior to all existing liens and Adequate Protection Liens granted to AFI (on both the AFI LOC and the AFI Senior Secured Credit Facility);

(ii)      (iii) additional Adequate Protection Liens on all of the equity interests of the Barclays DIP Borrowers, which shall be junior to the Adequate Protection Liens granted to AFI , in its capacity as lender under the AFI Senior Secured Credit Facility, on the equity of the Barclays DIP Borrowers; *provided* that such Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Junior Secured Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets Securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities

11

owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order); and

(iii) ~~(iv)~~ to the extent the Adequate Protection Liens are insufficient to provide adequate protection, 507(b) Claims against each Debtor that are junior to all 507(b) Claims granted to AFI but *pari passu* with any and all other 507(b) Claims; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to the Junior Secured Parties from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the Junior Secured Notes Documents; and

(d)      All 507(b) Claims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code.

10.      *Additional Adequate Protection.*

(a)      <u>Covenants</u>:  As additional adequate protection, the Debtors shall maintain (x) their cash management system and (y) the treatment of any and all claims on account of postpetition distributions and transfers by the Debtors to any affiliated Debtor, in each case, in a manner consistent with such arrangements and treatment described in the Final Cash Management Order, without further modification thereto;

(b)      <u>Reporting</u>:  As further adequate protection hereunder, the Debtors shall comply with the reporting requirements set forth in paragraph 8; and

(c)      <u>AFI Reserved Cash</u>:  The Debtors shall not use the cash reserved to repay the AFI Senior Secured Credit Facility or the AFI LOC without further order of this Court.

12

-

11.    *Exercise of Rights and Remedies against Deposit Accounts.*  Notwithstanding

anything to the contrary contained in any instrument or agreement to which any Debtor is party

or subject, or in any order entered by the Court, no Person (as defined by the Bankruptcy Code)

that holds or has a lien or other security interest on any demand deposit or other accounts of a

Debtor may exercise any rights or remedies against any such account (including by way of set

off), whether pursuant to an account control agreement or otherwise, without first providing

seven (7) days' written notice (by facsimile electronic mail, overnight mail or hand delivery) to

the U.S. Trustee, counsel to the Debtors, counsel to the Committee, counsel to AFI, and counsel

to the Junior Secured Noteholders (the "***Account Notice Parties***").  AFI hereby acknowledges

and stipulates that its liens on any demand deposit or other account, whether such lien arises

under a prepetition control agreement or under this Order, attach only to the proceeds of its

collateral, and such liens do not attach to amounts on deposit in any such account to the extent

such amount constitutes the proceeds of any other Person's collateral or property that was

unencumbered prior to its being deposited in such an account.  In the event any Person asserts

the occurrence and continuance of a default or an event of default and the right to exercise

remedies with respect to such an account, the Debtors within three (3) days will prepare and

serve on the Account Notice Parties a detailed accounting of each Person's interest in the

amounts on deposit in such account.  All parties rights to review and object to such accounting

are hereby preserved.  Each Account Notice Party shall serve on the others a notice of objections

with respect to such accounting within five (5) days following service thereof. Any unresolved

disputes with the Debtors' accounting shall be determined by the Court at a hearing to be held on

not less than fifteen (15) days' written notice to the Account Notice Parties.  All amounts in

dispute shall remain on deposit in such account pending Court order.  No commingling of

ny-1080561 KL2 2793103.2

amounts on deposit in any such account shall in any way adversely affect, detract from, or otherwise impair the perfection of any Person's lien on such proceeds.

12. *Termination.* The Debtors' right to use Prepetition Collateral, including Cash Collateral, pursuant to this Order shall automatically terminate (the date of any such termination, the "**Termination Date**") upon the earlier of (i) the effective date of a chapter 11 plan for any Debtor, without further notice or order of the Court, or (ii) the date upon which one of the Lenders obtains a Court order providing for the termination of the further use of Cash Collateral.

13. *Perfection of Adequate Protection Liens.* The Adequate Protection Parties are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over or take any other action in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

14. *No Limitation on Charging Expenses Against Prepetition Collateral.* The use of Cash Collateral in accordance with this Order or the Original Final Order does not constitute a charge against or recovery from the Prepetition Collateral or Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law.

14

15.    *Preservation of Rights Granted Under the Order*. The provisions of this Order shall survive, and shall not be modified, impaired or discharged by, entry of any order which may be entered confirming any plan of reorganization in the Chapter 11 Cases, converting any of the Chapter 11 Cases to cases under Chapter 7, or dismissing any of the Chapter 11 Cases. Notwithstanding anything contained in this paragraph, nothing in this Order shall limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt.

16.    *Reservation of Rights.*  Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (ii) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (collectively, the "***Consent Obligations***"); and (iv) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

ny-1080561 KL2 2793103.2

17.    *Binding Effect; Successors and Assigns.*  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Adequate Protection Parties, the Committee and the Debtors and their respective successors and assigns (including the examiner, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Adequate Protection Parties and the Debtors and their respective successors and assigns,.

18.    *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

19.    *Recharacterization of Payments.* Notwithstanding anything else herein, to the extent the Adequate Protection Parties' respective Prepetition Obligations are determined by this Court to be undersecured or invalid, any party in interest may seek, subject to further order of the Court, to recharacterize ~~Adequate Protection Payments and any other~~any postpetition payment of interest and/or fees to the applicable Adequate Protection Parties as payments of the principal of the applicable Prepetition Obligations.

16

20.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to April 19, 2013 immediately upon the entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Order.

21.    *Objections Overruled.  Any objection that has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.*

Dated _____ __, 2013
:
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

17

ny-1080561 KL2 2793103.2

Document comparison by Workshare Compare on Monday, May 06, 2013
4:06:22 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://KL2/2793103/1 |
| Description | KL2-#2793103-v1-ResCap_-_Cash_Collateral_Order_(as-filed) |
| Document 2 ID | PowerDocs://KL2/2793103/2 |
| Description | KL2-#2793103-v2-ResCap_-_Cash_Collateral_Order_(as-filed) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 12 |
| Deletions | 16 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 28 |