MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Joint Administration |
| | ) | |

-----------------------------------------------------------------

### NOTICE OF DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO PARTIALLY SATISFY CERTAIN SECURED CLAIMS

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Debtors' Motion for Entry of an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Partially Satisfy Certain Secured Claims* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **May 30, 2013 at 10:00 a.m. (prevailing Eastern time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy

Rules for the Southern District of New York, and the Notice, Case Management, and

Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed

electronically by registered users of the Bankruptcy Court's electronic case filing system, and be

served, so as to be received no later than **May 20, 2013 at 4:00 p.m. (Prevailing Eastern Time)**,

upon (a) counsel for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New

York, NY 10104 (Attn: Gary S. Lee, Todd M. Goren, and Samantha Martin); (b) the Office of

the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, NY 10004 (Attn: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto);

(c) the Office of the United States Attorney General, U.S. Department of Justice, 950

Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attn: US Attorney General, Eric H.

Holder, Jr.); (d)  Office of the New York State Attorney General, The Capitol, Albany, NY

12224-0341 (Attn: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney

for the Southern District of New York, One St. Andrews Plaza, New York, NY 10007 (Attn:

Joseph N. Cordaro, Esq.); (f) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East

53rd Street, New York, NY 10022 (Attn: Richard M. Cieri); (g) counsel to Barclays Bank PLC,

as administrative agent for the DIP lenders, Skadden, Arps, Slate, Meagher & Flom LLP, Four

Times Square, New York, NY 10036 (Attn: Ken Ziman & Jonathan H. Hofer); (h) counsel for

the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of

the Americas, New York, NY 10036 (Attn: Kenneth Eckstein & Greg Horowitz); (i) counsel for

Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY

10019 (Attn: Jennifer C. DeMarco and Adam Lesman); (j) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:

Thomas Walper and Seth Goldman); (k) Internal Revenue Service, P.O. Box 7346, Philadelphia,

PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia,

PA 19104-5016); and (l) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attn: George S. Canellos,

Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition

waived, treat the Motion as conceded, and enter an order granting the relief requested in the

Motion without further notice or hearing.

Dated:  May 7, 2013
     New York, New York

*/s/ Gary S. Lee*
Gary S. Lee
Todd M. Goren
Samantha Martin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

Hearing Date and Time: May 30, 2013 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline: May 20, 2013 at 4:00 p.m. (Prevailing Eastern Time)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
                                                                 )
In re:                                                           )   Case No. 12-12020 (MG)
                                                                 )
RESIDENTIAL CAPITAL, LLC, et al.,                                )   Chapter 11
                                                                 )
                                        Debtors.                 )   Joint Administration
                                                                 )
---------------------------------------------------------------- )

## DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER
## 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO
## PARTIALLY SATISFY CERTAIN SECURED CLAIMS

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move this Court (the "Motion") pursuant to sections 105 and 363 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (substantially in the form annexed hereto as Exhibit 1, the "Order") authorizing the Debtors to partially satisfy the outstanding secured claims (the "JSN Secured Claims") of the holders (the "Junior Secured Noteholders") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor Residential Capital LLC (the "Junior Secured Notes") in the amount of $800 million. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Marc D. Puntus filed with the Court concurrently herewith (the "Puntus Declaration"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## PRELIMINARY STATEMENT

1. By this Motion, the Debtors seek authority to partially satisfy the principal portion of the JSN Secured Claims in the amount of $800 million (the "Proposed Payment") to reduce the potential accrual of postpetition interest.

2. In evaluating whether to make the Proposed Payment, the Debtors have considered, among other things, two key facts. First, the Debtors currently are not receiving any meaningful return on the approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) received by the Debtors from the sale of their business platform and legacy loan portfolio. Second, the Junior Secured Noteholders have represented to the Debtors and the Court that they are oversecured and

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below).

therefore entitled to the payment of postpetition interest on their prepetition secured debt.  While

the Junior Secured Noteholders appear to be alone in this belief, they have asserted numerous

arguments as to why additional collateral value exists.  The Debtors believe these arguments are

meritless and that the Junior Secured Noteholders are significantly undersecured.  Indeed, the

Debtors and the Official Committee of Unsecured Creditors in these cases (the "Committee")

each have filed complaints contesting the validity of certain liens and claims asserted by the

Junior Secured Noteholders (collectively, the "Adversary Proceedings").  Nonetheless, there is a

risk that the Junior Secured Noteholders may prevail in the Adversary Proceedings regarding the

extent of their secured claim.  In the event that the Junior Secured Noteholders demonstrate that

that they are oversecured and entitled to postpetition interest, such interest will have accrued at a

rate of up to 10.625%[2] from the Petition Date to the present.

3.    In the event that the Junior Secured Noteholders are oversecured, the

Debtors currently would be incurring an estimated liability of approximately $20 million per

month in postpetition interest on the JSN Secured Claims.[3]  Each dollar of interest that accrues

on the Junior Secured Notes is one less dollar available for distribution to the Debtors' unsecured

creditors.  Thus, this potential postpetition interest obligation could erode the recoveries to

unsecured creditors.

---

[2] The Junior Secured Noteholders have asserted that they are entitled to postpetition interest at the contractual
default rate of 10.625%—the non-default rate is 9.625%.  The Debtors believe that the proper rate of interest to be
charged, in the event the Junior Secured Noteholders are entitled to post-petition interest, is the non-default rate and
reserve all of their rights on the issue of the proper interest rate in the event it is determined that the Junior Secured
Noteholders are entitled to receive postpetition interest.

[3] This figure is the product of the current outstanding amount under the Junior Secured Notes of $2.223 billion
multiplied by the asserted default interest rate of 10.625%.  This amount increases over time due to compounding
interest.

4.      The Debtors are mindful of the fact that there exists pending litigation regarding the validity of certain of the Junior Secured Noteholders' liens and claims.  However, even if the Debtors and the Committee are successful on every count asserted in the Adversary Proceedings, the parties agree that it is likely that the Junior Secured Noteholders's claims are secured by at least $800 million of collateral (after taking into account the satisfaction of any senior security interests in the same collateral).  Thus, the Debtors do not believe that the Proposed Payment will in any way prejudice unsecured creditor recoveries.  In addition, the Order provides that the Proposed Payment will in no way prejudice the Adversary Proceedings. The Debtors consulted with the Committee prior to filing this Motion, and the Committee supports the relief requested by the Debtors in this Motion.

5.      Further, because the Junior Secured Noteholders believe that they are entitled to postpetition interest, their asserted secured claim continues to increase, even as the Debtors and other case constituents believe that the Junior Secured Notes are undersecured.  This dynamic makes reaching an acceptable settlement more difficult as time passes.  Making the Proposed Payment reduces the difference between the parties' respective positions as to the value of the Junior Secured Noteholders' claims and will therefore enhance settlement prospects.

6.      Finally, the Debtors also are mindful of the fact that the Junior Secured Noteholders maintain a second lien on the collateral securing the Junior Secured Notes, and that Ally Financial, Inc. ("AFI"), in its capacity as lender and agent for the AFI Senior Secured Credit Facility (defined below) holds a first lien on such collateral.  Because the Intercreditor Agreement (defined below) provides that AFI is required to receive payment ahead of the Junior Secured Noteholders, the Debtors propose to place $800 million[4] in an escrow account at Ally

---

[4] This amount includes the outstanding principal loan amount of $747.1 million, plus an additional $52.9 million in
(Footnote continues on next page.)

Bank (a subsidiary of AFI) contemporaneously with making the Proposed Payment, subject to an escrow agreement that would allow AFI to be paid from the escrow account as permitted by a subsequent order of this Court.  In addition, the Debtors intend to continue making current interest payments to AFI on account of the AFI Senior Secured Credit Facility, as prescribed in the Original Cash Collateral Order.[5]

7.    Even after escrowing for repayment of the AFI Senior Secured Credit Facility and making the Proposed Payment, the Debtors believe they will have sufficient cash and other assets to cover the costs and expenses related to the operations and assets of the collateral pool securing the AFI Senior Secured Credit Facility (including the use of cash collateral in accordance with the Original Cash Collateral Order or the Non-Consensual Cash Collateral Order,[6] as applicable).

8.    For these reasons, the Debtors, in their business judgment, believe that it is in the best interests of their estates and all stakeholders to make the Proposed Payment on account of the JSN Secured Claims prior to either the resolution of the Adversary Proceedings or the effective date of a plan of reorganization.

---

(Footnote continued from previous page.)

value to cover future amounts that may accrue to AFI on account of postpetition interest.  The Debtors have been paying AFI current interest on the AFI Senior Secured Credit Facility and have proposed to continue to do so pursuant to the Cash Collateral Motion (as defined below).

[5] The "Original Cash Collateral Order" means the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491].

[6] The "Non-Consensual Cash Collateral Order" means an order of this Court approving the Cash Collateral Motion (as defined below).

## JURISDICTION

9.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code sections 105 and 363.

## BACKGROUND

### I.      THE CHAPTER 11 CASES

10.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee has been appointed in these Chapter 11 cases.[7]

11.      On May 16, 2012, the Office of the United States Trustee (the "U.S. Trustee") appointed the nine-member Committee.

12.      On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner (the "Examiner") [Docket No. 674].

13.      On June 25, 2012, the Court entered the Original Cash Collateral Order authorizing the Debtors' use of the cash collateral of AFI and the Junior Secured Noteholders in accordance with an approved budget.

---

[7]  The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage loan servicing business and the tenth largest residential mortgage loan origination business in the United States.  A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

14.     On December 26, 2012, the Bankruptcy Court granted standing and authority for the Committee to commence and prosecute certain claims on behalf of the Debtors' estates, including, among others, claims related to the liens granted by the Debtors to the Junior Secured Noteholders.  See *Order Authorizing the Official Committee of Unsecured Creditors to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates* [Docket No. 2518].

15.     On February 28, 2013, the Committee filed the *Adversary Complaint for Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims* [Docket No. 3069], against UMB Bank, N.A. ("UMB Bank"), as successor indenture trustee under the indenture for the Junior Secured Notes, and Wells Fargo Bank, N.A. ("Wells Fargo"), as third priority collateral agent and collateral control agent under the pledge and security agreement for the Junior Secured Notes.

16.     On April 8, 2013, the Debtors filed the *Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3374] (the "Cash Collateral Motion"), which currently is scheduled to be heard on May 14, 2013.

17.     On May 3, 2013, the Debtors filed a *Complaint to Determine the Extent of Liens and for Declaratory Judgment* [Docket No. 3592] against UMB Bank, Wells Fargo, and the Ad Hoc Committee of Junior Secured Noteholders.

## II.     JUNIOR SECURED NOTES

18.     Debtor ResCap issued the Junior Secured Notes pursuant to that certain Indenture dated as of June 6, 2008, among ResCap, as issuer, various Debtor affiliates, as guarantors, and U.S. Bank National Association, a national banking association, as the original indenture trustee (the "JSN Indenture").  As of the Petition Date, the outstanding principal amount of Junior Secured Notes was approximately $2.1 billion.  The Junior Secured Notes

accrue interest at a non-default rate of 9.625% per annum, payable semi-annually in arrears,[8] and

are repayable in three equal tranches of $707 million in May of 2013, 2014 and 2015.

19.     In connection with the issuance of the Junior Secured Notes, ResCap and

certain of its affiliates entered into that certain Amended and Restated Third Priority Pledge and

Security Agreement and Irrevocable Proxy, dated as of December 30, 2009 (the "JSN Pledge

Agreement"), pursuant to which ResCap, Residential Funding Company, LLC ("RFC"), GMAC

Mortgage, LLC ("GMACM") and certain other Debtor grantors and guarantors granted all-asset

liens in favor of the JSNs, subject to certain specific exclusions. The JSN Pledge Agreement

specifically excluded certain of the Debtors' assets from the Junior Secured Noteholders'

collateral, including (i) the assets that are collateral for the Bilateral Facilities (as defined in the

JSN Pledge Agreement) that were in existence on June 6, 2008, and (ii) the Debtors' mortgage

loan servicing rights and advances related to mortgage loans sold into securitization trusts

guarantee by the Government National Mortgage Association.  See JSN Pledge Agreement § 1

(definition of "Excluded Assets").

## III.    AFI SENIOR SECURED CREDIT FACILITY

20.     On December 30, 2009, Debtors RFC and GMACM, as borrowers, and

various Debtor affiliates, as guarantors, entered into a loan agreement with AFI, as agent and

lender (as amended from time to time, the "AFI Senior Secured Credit Facility") amending and

restating in its entirety the original loan agreement entered into on June 4, 2008.[9]  As of the

Petition Date, the outstanding principal amount of the AFI Senior Secured Credit Facility was

approximately $747 million.  The AFI Senior Secured Credit Facility is secured by a first priority

---

[8] Pursuant to the JSN Indenture, the default interest rate for the Junior Secured Notes is 10.625%.

[9] The AFI Senior Secured Credit Facility originally was a revolving loan facility, but the outstanding amount was converted into a term loan in connection with the amendment and restatement.

lien on the assets that secure the Junior Secured Notes.  Pursuant to the Original Cash Collateral Order, the Debtors have paid interest at the non-default rate on a current basis throughout the cases.

21.    In connection with the incurrence of the debt referenced above, the Debtors ResCap, GMACM and RFC entered into that certain Intercreditor Agreement, dated as of June 6, 2008, by and among (i) Wells Fargo Bank, N.A., as first priority collateral agent for AFI under the AFI Senior Secured Credit Facility, (ii) Wells Fargo Bank, N.A., as second priority collateral agent for the holders of the 8.5% senior secured notes due 2010 (the "Senior Secured Notes"), (iii) Wells Fargo Bank, N.A., as third priority collateral agent for the holders of the Junior Secured Notes, (iv) AFI in its capacity as agent for the lenders under the AFI Senior Secured Credit Facility, (v) U.S. Bank National Association, as Trustee under the indenture governing the Senior Secured Notes, and (vi) U.S. Bank National Association, as Trustee under the JSN Indenture.  On May 15, 2010, the Senior Secured Notes were repaid at maturity, and the Junior Secured Notes effectively stepped into the position of the Senior Secured Notes.

## IV.    RECENT SALES OF THE DEBTORS' ASSETS

22.    On October 23-25, 2012, the Debtors held two auctions for the sale of their assets.   Following the auctions, the Debtors declared Ocwen Loan Servicing, LLC ("Ocwen") and Walter Investment Management Corp. ("Walter") as the winning bidders for the Debtors' mortgage loan origination and servicing platform at a price of $3 billion (the "Platform Sale"), and Berkshire Hathaway Inc. ("Berkshire") as the winning bidder for the legacy loan portfolio at a price of $1.5 billion (the "Legacy Sale," and together with the Platform Sale, the "Sales").

23.     On November 21, 2012, the Court entered orders approving each of the

Sales [Docket Nos. 2246 and 2247] (the "Platform Sale Order" and the "Legacy Sale Order,"

respectively).

24.     The Debtors' sales to Walter, Berkshire and Ocwen closed on January 31,

2013, February 5, 2013, and February 15, 2013, respectively.

## V.     SUMMARY OF THE DEBTORS' CASH AND CASH NEEDS

25.     The Debtors received approximately $4.1 billion in gross sale proceeds in

connection with the Sales (prior to reduction for payment of assumed liabilities, cure costs and

other associated liabilities).  The Debtors used this cash to, *inter alia*, pay off in full the AFI DIP

Facility[10] and the Barclays DIP Facility,[11] as well as other prepetition facilities, including the

Citibank MSR Facility[12] and the FNMA EAF Facility.[13]

26.     As of March 31, 2013, the Debtors have approximately $3.5 billion net

cash (excluding restricted cash), of which $1.7 billion[14] in cash constitutes proceeds of the

collateral securing AFI Senior Secured Credit Facility and the Junior Secured Notes (subject to

the Adversary Proceedings, the "AFI/JSN Cash Collateral"), plus substantial other assets

---

[10] The "AFI DIP Facility" means that certain postpetition secured superpriority financing facility in the aggregate principal amount of not more than $220 million in form of continued borrowings by the Debtors under the AFI LOC.

[11] The "Barclays DIP Facility" means that certain postpetition secured superpriority financing facility in the total aggregate amount of $1,450,000,000, in the form of (i) a revolving facility in the amount of $190,000,000, (ii) a term loan in the amount of $1,060,000,000, and (iii) a term loan in the amount of $200,000,000.

[12] The "Citibank MSR Facility" means that certain prepetition revolving loan facility among GMACM, as borrower, ResCap, as guarantor, and Citibank N.A., as lender.  The outstanding amount under the Citibank MSR Facility as of the Petition Date was approximately $152 million.  Citibank has asserted that it is entitled to default interest on account of its claims, and Citibank has reserved all of its rights with respect thereto.

[13] The "FNMA EAF Facility" means that certain prepetition funding facility for servicing advances among GMACM and Fannie Mae.

[14] This amount includes the net equity of the borrowers under the Barclays DIP Facility.

ny-1083970

remaining to be monetized. The Debtors' cash is primarily held in multiple accounts with various institutions and is not earning any meaningful return.

27.     Based on the current budget, the Debtors anticipate that, even after the Proposed Payment of $800 million to the Junior Secured Noteholders and the escrow of approximately $800 million for the benefit of AFI, as lender and agent under the AFI Senior Secured Credit Facility, the remaining AFI/JSN Cash Collateral and the other non-cash collateral securing the AFI Senior Secured Credit Facility and the Junior Secured Notes[15] will be sufficient to pay all receipts, expenses, and interest allocable to such collateral pursuant to the Original Cash Collateral Order or Non-Consensual Cash Collateral Order, as applicable.

## RELIEF REQUESTED

28.     As described in detail above, pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors respectfully request authorization to make the Proposed Payment on account of the principal portion of the JSN Secured Claims in the amount of $800 million. The relief requested herein will enable the Debtors to avoid the possibility of unnecessarily accruing postpetition interest on the JSN Secured Claims, to the extent it is ultimately determined that these claims are accruing postpetition interest.

## APPLICABLE AUTHORITY

29.     Section 363(b)(1) of the Bankruptcy Code provides that the Debtors "after notice and a hearing, may use … other than in the ordinary course of business, property of the estate," and provides the authority necessary for the proposed repayment because "section 363

---

[15] The Debtors continue to hold approximately $900 million (including the net equity of the borrowers under the Barclays DIP Facility) in book value of restricted cash and other non-cash collateral of the AFI Senior Secured Credit Facility and the Junior Secured Notes, including, among other things, mortgage loans, servicer advances, REO properties, and insurance claims with respect to certain federally insured loans, which will be monetized in connection with the wind down of the chapter 11 cases.

ny-1083970

… governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed." See United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02-Civ. 2854 (MBM), 2003 U.S. Dist. LEXIS 12909, at *36 (S.D.N.Y. July 28, 2003); 11 U.S.C. § 363(b).  In addition, section 105 of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  See Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

30.    Courts in the Second Circuit have explained that, in determining whether to allow a use or lease of property of the estate other than in the ordinary course of business, courts "have required that it be based upon the sound business judgment of the debtor." In re RSL COM Primecall, Inc., No. 01-11457, 2002 Bankr. LEXIS 367, at *27 (Bankr. S.D.N.Y. Apr. 11, 2002).   See also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11estate…may be conducted if a good business reason exists to support it."); Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992) (holding that there must be a good business reason to grant a motion to sell assets under Bankruptcy Code section 363(b)); Comm. of Equity Sec. Holders v. Lionel Corp (In re The Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (when considering whether Section 363(b) applies, the Second Circuit, "requires that a judge… expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

31.     Once a debtor articulates a valid business justification, courts apply a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal dismissed, 3 F.3d 349 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

32.     The relief requested herein is not extraordinary.  Courts in this district and others have routinely granted motions seeking relief similar to that requested in this Motion, particularly where—as here—the pay down of secured debt maximizes value for the Debtors' estates by minimizing potentially significant interest accrual.  See Law Debenture Trust Co. of N.Y. v. Calpine Corp. (In re Calpine Corp.), 356 B.R. 585, 597 (S.D.N.Y. 2007) (authorizing the repayment of the entire outstanding balance of principal and accrued interest due on the notes (totaling approximately $646 million) pursuant to sections  363(b) and 105(a) where the bankruptcy judge concluded that repayment is "'highly appropriate' and 'in the best interest of the estate' for the Debtors to stop 'hemorrhaging cash'") (citing Transcript of 6/21/06 Bench Ruling of Judge Lifland at 82-86); Aurelius Capital Master Ltd. v. TOUSA, Inc., 2009 U.S. Dist. LEXIS 12735 (S.D. Fla. Feb. 6, 2009) (approving the repayment of $175 million on account of first lien secured claims); In re Terrestar Networks, Inc., Case No. 10-15446 (Bankr. S.D.N.Y. Aug. 3, 2011) (authorizing the repayment of several prepetition and postpetition financing

arrangements prior to the confirmation of a plan of reorganization); In re PetroRig I PTE Ltd.,

Case No. 09-13083 (Bankr. S.D.N.Y. Apr. 1, 2010) (authorizing the repayment of all principal

and non-default interest accruing through the repayment date on the prepetition notes); In re

VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Apr. 8, 2009) (authorizing the

repayment of the outstanding principal balance of the prepetition senior unsecured notes, along

with accrued interest at the non-default rate and reasonable fees and expenses to allow the

debtors to minimize additional interest accrual).   See also Platform Sale Order at ¶ 39-42

(authorizing the repayment of the Citibank MSR Facility, the Barclays DIP Facility, the AFI DIP

Facility, and the FNMA EAF Facility).

        33.     The Debtors, in their business judgment, believe that the Proposed

Payment is appropriate because, in the event it is determined that the JSN Secured Claims are

accruing postpetition interest, the Proposed Payment will result in a potentially significant

benefit to the Debtors' estates in the form of reduced postpetition interest obligations, thereby

increasing potential recoveries for unsecured creditors.  While the Debtors believe it is unlikely

that the Junior Secured Noteholders will be successful in their argument that they are

oversecured and entitled to postpetition interest given the value of their collateral and the size of

their asserted claim, in the event they are determined to be oversecured, the Debtors will owe

interest at a rate of up to 10.625% to the extent the Junior Secured Noteholders are oversecured.

Given the fact that the Debtors are not earning any meaningful return on the cash, even the

remotest possibility that the Junior Secured Noteholders will prevail in litigation over whether

they are oversecured is sufficient to demonstrate the potential savings associated with the

Proposed Payment.

ny-1083970

34.     Moreover, the Proposed Payment to the Junior Secured Noteholders will not jeopardize or harm recoveries to the Debtors' other creditors.  As discussed above, AFI, as first lien lender, will not be harmed because the Debtors intend to place $800 million into an escrow account at Ally Bank for the benefit of AFI.  This escrow sufficiently protects AFI and gives it the benefit of its bargain with the Junior Secured Noteholders, while the broader case issues with AFI still are being resolved.  The estates, however, should not be subjected and held hostage to the potential significant accrual of liability to the Junior Secured Noteholders while such issues with AFI remain unresolved.

35.     Finally, notwithstanding the pending Adversary Proceedings brought by the Debtors and the Committee against the Junior Secured Noteholders, it is unlikely that the JSN Secured Claims will be determined to be less than $800 million, and the Proposed Payment thus will not result in any overpayment to the Junior Secured Noteholders.  The Committee supports the relief requested by the Debtors in this Motion.

36.     For the foregoing reasons, the Debtors, in their business judgment, believe that making the Proposed Payment on account of the JSN Secured Claims prior to the resolution of the Adversary Proceedings and the effective date of a plan of reorganization is an exercise of their prudent business judgment and in the best interests of their estates and stakeholders.

### NOTICE

37.     The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

ny-1083970

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order

substantially in the form attached hereto as <u>Exhibit 1</u>, and (ii) grant such other and further relief

to the Debtors as the Court may deem just and proper.

Dated:  May 7, 2013
      New York, New York

*/s/ Gary S. Lee*
Gary S. Lee
Todd M. Goren
Samantha Martin
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

1

**Exhibit 1**

ny-1083970

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------
                                                    )
In re:                                              )        Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )        Chapter 11
                                                    )
                                    Debtors.        )        Jointly Administered
                                                    )
-------------------------------------------------------------------

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO PARTIALLY SATISFY
CERTAIN SECURED CLAIMS**

Upon the *Debtors' Motion for Entry of an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Partially Satisfy Certain Secured Claims*, dated May 7, 2013 (the "Motion")[1] seeking entry of an order authorizing the Debtors to partially satisfy the outstanding secured claims (the "JSN Secured Claims") of the holders (the "Junior Secured Noteholders") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor Residential Capital LLC (the "Junior Secured Notes") in the amount of $800 million; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the Declaration of Marc D. Puntus, Partner and co-head of the Restructuring Group at Centerview Partners LLC, financial advisor to Debtors, in support of the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

further notice is necessary; and the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the requested relief herein; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

1.       The Motion is GRANTED.

2.       Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized but not directed to remit to UMB Bank the amount of $800 million for application to the principal portion of the JSN Secured Claims (the "Partial Paydown").

3.       Notwithstanding anything herein to the contrary, the Partial Paydown shall not in any way prejudice the lien challenges and adversary proceedings commenced by the Debtors and the Committee against UMB Bank, Wells Fargo Bank, N.A., and the Ad Hoc Group of Junior Secured Noteholders.

4.       In the event that the Court determines that the JSN Secured Claims are less than the Partial Paydown, the Court may, after notice and a hearing, fashion an appropriate remedy, including, but not limited to, the disgorgement or recharacterization of the difference between the Partial Paydown and the JSN Secured Claims.

5.       The Debtors shall place $800 million in an escrow account at Ally Bank contemporaneously with making the Partial Paydown, subject to an escrow agreement, in a form mutually agreeable to the Debtors and AFI, in consultation with the Committee, which allows AFI to be paid from the escrow account solely as permitted by a subsequent order of this Court presented on appropriate notice to parties in interest, including the Committee.

6.       Notwithstanding anything herein to the contrary, the Court has not determined the appropriate allocation of the Partial Paydown among the Debtors.  Payment of all

ny-1089225

or a portion of the Partial Paydown by any particular Debtor shall be without prejudice to any inter-Debtor rights of, inter alia, allocation, subrogation, reimbursement, or contribution that may arise as a result of such payment or any subsequent substantive consolidation of the Debtors' estates.

7.    Nothing herein shall limit or restrict the ability of the UMB Bank  or Junior Secured Noteholders from seeking allowance and payment on the remaining JSN Secured Claims, or of the Debtors and the Committee to contest or object to such claims.   For the avoidance of doubt, nothing in this Order shall constitute a determination or other ruling or decision with regard to the right of the Junior Secured Noteholders to obtain postpetition interest on account of the JSN Secured Claims.

8.    Nothing in this Order shall prejudice the rights of the Debtors or any other party in interest to seek authority from this Court by separate motion to pay down additional amounts under the JSN Indenture, nor shall anything in this Order limit or impair the right of any party to object to any such request to pay down additional amounts under the JSN Indenture.

9.    The Debtors are hereby authorized to execute and deliver all instruments and documents, and take all other actions, as may be necessary or appropriate to implement and effectuate the relief granted in this Order.

10.    This Order is hereby deemed effective immediately pursuant to Federal Rule of Bankruptcy Procedure § 6004(h).

11.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

3

Dated:    New York, New York
          May __, 2013

_____
          THE HONORABLE MARTIN GLENN

          UNITED STATES BANKRUPTCY JUDGE