Exhibit A

# IN THE SUPREME COURT OF FLORIDA

| | |
|---|---|
| THE FLORIDA BAR, | Supreme Court Case No. SC- |
| Complainant, | |
| v. | The Florida Bar File Nos. 2010-51,725(17I); 2011-50,154(17I); 2011-50,213(17I); 2011-50,216(17I); |
| DAVID JAMES STERN, | 2011-50,511(17I); 2011-50,695(17I); 2011-50,850(17I); 2011-50,949(17I); |
| Respondent. | 2011-51,192(17I); 2011-51,322(17I); 2011-51,329(17I); 2011-51,369(17I); 2011-51,433(17I); 2011-51,497(17I); 2011-51,696(17I); 2011-51,868(17I); 2012-50,144(17I). |

_____/

## COMPLAINT OF THE FLORIDA BAR

The Florida Bar, complainant, files this Complaint against David James

Stern, respondent (also referred to as David J. Stern), pursuant to the Rules

Regulating The Florida Bar and alleges:

1.     Respondent is, and at all times mentioned in the Complaint was, a

member of The Florida Bar, admitted on November 27, 1991 and is subject to the

jurisdiction of the Supreme Court of Florida.

2.     Respondent's law office was located in Broward County, Florida, at

all times material.

3.     The Seventeenth Judicial Circuit Grievance Committee "I" found

probable cause to file this Complaint pursuant to Rule 3-7.4, of the Rules

Regulating The Florida Bar, and this Complaint has been approved by the

presiding member of that committee.

4.    During all times material, respondent was the managing attorney and

sole shareholder of the Law Offices of David J. Stern, P.A. (also referred to as the

Stern law firm or Stern firm).

## COUNT I
[The Florida Bar File No. 2010-51,725(17I)]

5.    The Law Offices of David J. Stern, P.A. has prosecuted mortgage

foreclosure actions in various judicial circuits within the state of Florida on behalf

of lenders, financial institutions and other mortgage services-related entities,

including Mortgage Electronic Registration Services (c/k/a MERS), as well as on

behalf of Freddie Mac and Fannie Mae.

6.    During all times material, respondent elevated several staff to

managerial/supervisory positions in the Stern law firm, including, but not limited

to, attorneys Beverly McComas and Miriam Mendieta, and nonlawyer, Cheryl

Samons, who was the office manager of the foreclosure department and/or

manager of operations.

7.    Said individuals occupied high-ranking managerial, administrative

and supervisory positions with the Stern law firm. Each reported directly to David

J. Stern as the managing attorney and sole shareholder. Each position was above

those held by other firm employees, both lawyer associates and non lawyer support staff, which included a bevy of paralegals and notary publics.

8.    In their said capacities, David J. Stern charged these supervisory personnel with the duties and responsibilities attendant to the administration, management, supervision and oversight of the firm's foreclosure attorneys on a daily basis.

9.    In their supervisory capacity, Mendieta, McComas, and Samons were accountable and answerable only to David J. Stern as the managing attorney and sole shareholder of the Law Offices of David J. Stern, P.A.

10.    Eventually, the Stern law firm employed in excess of 1,500 employees, of which approximately 150 were attorneys.

11.    The aforesaid supervisory echelon employees (who hereinafter may sometimes be referred to as the "supervisory echelon" or simply as "supervisors") were under the direct supervision, management, and oversight of David J. Stern.

12.    In addition to their supervisory authority, the supervisory echelon of the Stern law firm were charged with quality control functions and responsibilities that included, inter alia, management of the preparation of client files for summary judgment hearings wherein they were ultimately accountable for any deficiencies in the contents of a file that would forestall the entry of the final judgment.

13.    From on or about 2008, the Stern law firm's foreclosure case volume sky-rocketed, the success of which depended upon stringent start-to-finish timeline requirements which imposed substantial oversight and managerial responsibilities on David J. Stern and his supervisory level personnel.

14.    Ultimately, the firm's supervisory echelon employees such as Mensieta, McComas, and Samons, due to their extensive supervisory and managerial duties and responsibilities were given annual salaries that ranged from $200,000 to $600,000.

15.    David J. Stern knew, or with the exercise of reasonable diligence, should have known that during Mendieta's and McComas' tenures as a managing attorneys, Mendieta and McComas failed to make reasonable efforts to ensure that she and the lawyers under her authority and supervision conformed to the applicable Rules of Professional Conduct.

16.    David J. Stern's lack of supervisory oversight, together with that of the supervisory echelon, contributed to many allegations of misconduct, including many judicial referrals to the Bar, on the part of the Stern law firm and its associates, which included, but were not limited to:

    A.    Missed hearings, trials, case management conferences and other court proceedings of which the Stern law firm had been duly noticed but for which no attorney appeared;

B.   Improperly executed and/or improperly notarized documents, including, but not limited to, assignments of mortgage, and affidavits of reasonable attorneys' fees;

C.   Improperly drafted and filed ex parte motions to cancel foreclosure sales, set aside final judgments of foreclosure and to restore cancelled loan documents involving real property in various counties of the state of Florida;

D.   Hundreds of attorneys handling thousands of mortgage foreclosure files with substandard administration, direction, supervision, oversight or control; and

E.   Thousands of pending foreclosure cases and clients left without proper representation in the courts of various judicial circuits of the state of Florida.

17.   Further, in attempting to perform managerial and supervisory duties and exercise of authority, David J. Stern failed to make reasonable efforts to ensure that the Stern law firm had measures in effect that would give reasonable assurances that the professional conduct of those handing the firm's files was compatible with the professional obligations conferred upon an attorney by the Rules Regulating The Florida Bar and the applicable Rules of Court Administration.

18.    David J. Stern failed to take sufficient steps to prevent wrongdoing by the firm's employees despite the multiple allegations of misconduct and judicial referrals alleging such conduct as backdating and/or changing of dates on documents.

19.    Due to the aforesaid lack of proper management, administration, supervision, oversight and control, of which David J. Stern knew or should have known, David J. Stern failed to take sufficient steps to otherwise prevent misconduct that resulted in constant allegations and judicial referrals alleging that documents were frequently submitted to courts on behalf of the firm's clients that were incomplete, contained substantial inaccuracies and unconfirmed data, were backdated, improperly notarized and contained other improprieties.

20.    The above practices, along with the aforesaid failures to appear and/or to be properly prepared for hearings, gave rise to many judicial referrals to the Bar that contained allegations of fraudulent and improper practices and procedures and which resulted in the issuance of rules to show cause and sanction orders.

21.    In David J. Stern's capacity as managing attorney and sole shareholder in charge of all activities and functions of the Stern law firm, David J. Stern either knew or should have known that inaccurate and/or improperly executed documents were regularly being provided to courts throughout the state

of Florida and took insufficient action to investigate the activity or to stop or prevent the improprieties.

22.    Wherefore, by reason of the foregoing, respondent has violated the following Rules Regulating The Florida Bar: 3-4.2 [Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.]; 3-4.3 [The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.]; 4-1.3 [A lawyer shall act with reasonable diligence and promptness in representing a client.]; 4-5.1(a) [Duties Concerning Adherence to Rules of Professional Conduct. A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers therein conform to the

Rules of Professional Conduct.]; 4-5.1(b) [Supervisory Lawyer's Duties. Any

lawyer having direct supervisory authority over another lawyer shall make

reasonable efforts to ensure that the other lawyer conforms to the Rules of

Professional Conduct.]; 4-5.1(c) [Responsibility for Rules Violations. A lawyer

shall be responsible for another lawyer's violation of the Rules of Professional

Conduct if: (1) the lawyer orders the specific conduct or, with knowledge thereof,

ratifies the conduct involved; or (2) the lawyer is a partner or has comparable

managerial authority in the law firm in which the other lawyer practices or has

direct supervisory authority over the other lawyer, and knows of the conduct at a

time when its consequences can be avoided or mitigated but fails to take

reasonable remedial action.]; 4-5.3(b) [With respect to a nonlawyer employed or

retained by or associated with a lawyer or an authorized business entity as defined

elsewhere in these Rules Regulating The Florida Bar: (1) a partner, and a lawyer

who individually or together with other lawyers possesses comparable managerial

authority in a law firm, shall make reasonable efforts to ensure that the firm has in

effect measures giving reasonable assurance that the person's conduct is

compatible with the professional obligations of the lawyer; (2) a lawyer having

direct supervisory authority over the nonlawyer shall make reasonable efforts to

ensure that the person's conduct is compatible with the professional obligations of

the lawyer; and (3) a lawyer shall be responsible for conduct of such a person that

would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (A) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (B) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.]; 4-5.3(c) [Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer shall review and be responsible for the work product of the paralegals or legal assistants.]; 4-8.4(a) [A lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.]; 4-8.4(c) [A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ….]; and 4-8.4(d) [A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic.].

## COUNT II
[The Florida Bar File Nos. 2011-50,154(17I);
2011-50,216(17I); and 2011-50,511(17I)]

23.    During all times material, Cheryl Samons was the office manager for the foreclosure department and/or manager of operations of the Law Offices of David J. Stern, P.A., among other things.

24.    During all times material, Cheryl Samons occupied a desk and/or office in close proximity to respondent's office.

25.    Respondent, David J. Stern, was regularly present in the Law Offices of David J. Stern, P.A.

26.    In the hierarchy of the staff of the Law Offices of David J. Stern, P.A., Cheryl Samons answered directly to respondent.

27.    Cheryl Samons and respondent communicated openly during regular working hours.

28.    During all times material, Cheryl Samons, as Assistant Secretary of Mortgage Electronic Registration Systems (c/k/a MERS), or in some other official capacity, did execute thousands of documents, including assignments of mortgage, which were filed in courts throughout the state of Florida in foreclosure cases or recorded in the public record.

March 25, 2008 to March 24, 2012, making it impossible to have notarized the document on May 25, 2007, nearly a year before.

35.    Although the documents Cheryl Samons executed, which were filed in courts throughout the state of Florida or filed in the public record, indicated that they were signed in the presence of a notary, in truth and in fact many of the documents were not executed in the presence of a notary.

36.    Although the documents Cheryl Samons executed, which were filed in courts throughout the state of Florida or filed in the public record, indicated that they were executed in the presence of a notary, in truth and in fact many of the documents were not necessarily notarized by the reflected notary as the notaries in the office routinely exchanged their notary stamps to accomplish mass notarizing.

37.    Many of the documents purported to be executed by Cheryl Samons were in truth and in fact executed by others mimicking Cheryl Samons' signature, at Cheryl Samons' instructions and directive. Those documents did not indicate for the reader that Cheryl Samons was not the signatory. Those documents were filed in courts throughout the state of Florida or filed in the public record.

38.    Although the documents Cheryl Samons executed, which were filed in the courts throughout the state of Florida or filed in the public record, included witnesses' signatures which indicated that they witnessed Cheryl Samons as the

29.    Associate attorneys in the Stern firm utilized those assignments through filings in courts throughout the state of Florida in the firm's endeavor to foreclose these properties on behalf of the firm's lender clients.

30.    On a given day, Cheryl Samons executed approximately 500 documents which were either filed in courts throughout the state of Florida or recorded in the public record.

31.    Each assignment indicated that it was prepared by David J. Stern, Esq.

32.    Numerous assignments were not executed by Cheryl Samons on the date reflected on the document.

33.    The false representation of the execution of the assignment is evidenced by the date of the expiration of the notary commission. (Attached hereto and incorporated herein as **The Florida Bar Composite Exhibit A** are copies of some of the assignments of mortgage.)

34.    A review of the first document in The Florida Bar Composite Exhibit P reflects, as an example, that Cheryl Samons executed an assignment of mortgage regarding Lots 9 and 10, Block 4461, Unit 63, Cape Coral, Lee County, Florida on May 25, 2007. Said document reflects it was notarized by another individual, Michelle Camacho, whose notary commission expires on March 24, 2012. A notary term is four years. As such, Michelle Camacho possessed that stamp from

11

signatory, many witnesses did not actually observe Cheryl Samons sign the document.

39.   The documents heretofore mentioned were stacked side by side on long conference room tables on each of the four floors of the space occupied by the Law Offices of David J. Stern, P.A.

40.   On a daily basis during the material times, Cheryl Samons would approach each conference room table, generally twice a day, morning and midafternoon, and execute each document.

41.   Respondent knew or should have known that the aforementioned improprieties and irregularities committed by his office manager and other staff occurred on a regular basis.

42.   Cheryl Samons was rewarded for her loyalty and malfeasance.

43.   The rewards to Cheryl Samons included payment of many of Cheryl Samons' household bills and the purchase and/or lease of new automobiles.

44.   Wherefore, by reason of the foregoing, respondent has violated the following Rules Regulating The Florida Bar: 3-4.2 [Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.]; 3-4.3 [The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as

constituting grounds for discipline shall not be deemed to be all-inclusive nor shall

the failure to specify any particular act of misconduct be construed as tolerance

thereof. The commission by a lawyer of any act that is unlawful or contrary to

honesty and justice, whether the act is committed in the course of the attorney's

relations as an attorney or otherwise, whether committed within or outside the state

of Florida, and whether or not the act is a felony or misdemeanor, may constitute a

cause for discipline.]; 4-5.3(b) [With respect to a nonlawyer employed or retained

by or associated with a lawyer or an authorized business entity as defined

elsewhere in these Rules Regulating The Florida Bar: (1) a partner, and a lawyer

who individually or together with other lawyers possesses comparable managerial

authority in a law firm, shall make reasonable efforts to ensure that the firm has in

effect measures giving reasonable assurance that the person's conduct is

compatible with the professional obligations of the lawyer; (2) a lawyer having

direct supervisory authority over the nonlawyer shall make reasonable efforts to

ensure that the person's conduct is compatible with the professional obligations of

the lawyer; and (3) a lawyer shall be responsible for conduct of such a person that

would be a violation of the Rules of Professional Conduct if engaged in by a

lawyer if: (A) the lawyer orders or, with the knowledge of the specific conduct,

ratifies the conduct involved; or (B) the lawyer is a partner or has comparable

managerial authority in the law firm in which the person is employed, or has direct

supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.]; 4-5.3(c) [Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer shall review and be responsible for the work product of the paralegals or legal assistants.]; 4-8.4(a) [A lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.]; 4-8.4(c) [A lawyer shall not (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ....]; and 4-8.4(d) [A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic.].

## COUNT III
[The Florida Bar File No. 2011-50,695(17I)]

45.    On or about July 29, 2008, an assignment of mortgage prepared by David J. Stern, Esq. was filed in the public records in Citrus County, Florida on behalf of Mortgage Electronic Registration Systems (c/k/a MERS) concerning

property described as a portion of Section 35, Township 20 South, Range 20 East, Citrus County, Florida. (Attached hereto and incorporated herein as **The Florida Bar Exhibit B** is a copy of the assignment of mortgage.)

46.    The assignment was executed by Cheryl Samons, as Assistant Secretary, on behalf of MERS.

47.    Cheryl Samons, as previously referenced and during all times material, was the office manager for the foreclosure department and/or manager of operations of the Law Offices of David J. Stern, P.A.

48.    The assignment contained a false representation as to the date it was executed since the witnessing notary's term could not have been in existence on September 18, 2007, the date Cheryl Samons executed the assignment.

49.    The notary's term of four years ran from March 25, 2008 until March 24, 2012. The purported date of the execution of the assignment was on September 7, 2007.

50.    On or about September 8, 2009, a corrected assignment of mortgage prepared by David J. Stern, Esq. was filed in the public records in Citrus County, Florida on behalf of MERS, as to the same property referenced above. (Attached hereto and incorporated here as **The Florida Bar Exhibit C** is a copy of the corrected assignment of mortgage.)

51.    The "corrected" assignment did not appear to contain any false representations.

52.    The corrected assignment was respondent's attempt to conceal and correct the prior fraudulent assignment filed in the Citrus County public records on July 29, 2008.

53.    The respondent knew or should have known that the aforementioned improprieties and irregularities committed by his office manager and others occurred.

54.    Wherefore, by reason of the foregoing, respondent has violated the following Rules Regulating The Florida Bar: 3-4.2 [Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.]; 3-4.3 [The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a

cause for discipline.]; 4-5.3(b) [With respect to a nonlawyer employed or retained by or associated with a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar: (1) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer; (2) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and (3) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (A) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (B) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.]; 4-5.3(c) [Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer shall review and be responsible for the work product of the paralegals or legal assistants.]; 4-8.4(a) [A lawyer shall not violate or attempt to

violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.]; 4-8.4(c) [A lawyer shall not (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ....]; and 4-8.4(d) [A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic.].

## COUNT IV
[The Florida Bar File No. 2010-51,725(17I)]

55.    Respondent employed attorneys Richard Toledo and Jorge Suarez as independent contractors in the role of experts concerning the assessment of reasonable, acceptable, and appropriate attorneys' fees in the mortgage foreclosure actions that were being prosecuted by respondent's firm.

56.    Between 2006 and 2011, Toledo and Suarez executed between 200-225 attorneys fee affidavits per week.

57.    Many of the affidavits were not notarized in the presence of either Toledo or Suarez.

19

58.   Despite stating under oath that files were reviewed prior to the execution of the affidavits, Toledo and Suarez did not review all files.

59.   Between 2006 and 2011, attorney Richard Toledo was paid approximately $240,000 by the Law Offices of David J. Stern, P.A. for the execution of attorneys' fee affidavits and the purported review of files.

60.   Between 2006 and 2007 attorney Jorge Suarez was paid approximately $59,101 by the Law Offices of David J. Stern, P.A. for the execution of attorneys' fee affidavits and the purported review of files.

61.   Between 2008 and 2010 attorney Jorge Suarez was paid approximately $782,269 by the Law Offices of David J. Stern, P.A. for the execution of attorneys' fee affidavits and purported review of files, as well as other work performed on behalf of the Stern law firm.

62.   These affidavits of reasonable attorneys' fees containing falsehoods were filed by the Law Offices of David J. Stern, P.A. in various court cases throughout the state of Florida.

63.   The respondent knew or should have known that the aforementioned improprieties and irregularities committed by employees and independent contractors occurred on a regular basis.

64.   In respondent's performance of his duties and responsibilities as managing attorney and sole shareholder of the Law Offices of David J. Stern, P.A.,

respondent failed to make a reasonable effort to ensure that the firm had measures

in effect that would provide reasonable assurance that the professional conduct of

those handling the firm's files or preparing documents to be filed in various court

cases throughout the state of Florida in those firm files was compatible with the

professional obligations and standards conferred on them by the Rules Regulating

The Florida Bar.

65.    Wherefore, by reason of the foregoing, respondent has violated the

following Rules Regulating The Florida Bar: 3-4.2 [Violation of the Rules of

Professional Conduct as adopted by the rules governing The Florida Bar is a cause

for discipline.]; 3-4.3 [The standards of professional conduct to be observed by

members of the bar are not limited to the observance of rules and avoidance of

prohibited acts, and the enumeration herein of certain categories of misconduct as

constituting grounds for discipline shall not be deemed to be all-inclusive nor shall

the failure to specify any particular act of misconduct be construed as tolerance

thereof.  The commission by a lawyer of any act that is unlawful or contrary to

honesty and justice, whether the act is committed in the course of the attorney's

relations as an attorney or otherwise, whether committed within or outside the state

of Florida, and whether or not the act is a felony or misdemeanor, may constitute a

cause for discipline.]; 4-1.3 [A lawyer shall act with reasonable diligence and

promptness in representing a client.]; 4-5.1(a) [Duties Concerning Adherence to

Rules of Professional Conduct. A partner in a law firm, and a lawyer who

individually or together with other lawyers possesses comparable managerial

authority in a law firm, shall make reasonable efforts to ensure that the firm has in

effect measures giving reasonable assurance that all lawyers therein conform to the

Rules of Professional Conduct.]; 4-5.1(b) [Supervisory Lawyer's Duties. Any

lawyer having direct supervisory authority over another lawyer shall make

reasonable efforts to ensure that the other lawyer conforms to the Rules of

Professional Conduct.]; 4-5.1(c) [Responsibility for Rules Violations. A lawyer

shall be responsible for another lawyer's violation of the Rules of Professional

Conduct if: (1) the lawyer orders the specific conduct or, with knowledge thereof,

ratifies the conduct involved; or (2) the lawyer is a partner or has comparable

managerial authority in the law firm in which the other lawyer practices or has

direct supervisory authority over the other lawyer, and knows of the conduct at a

time when its consequences can be avoided or mitigated but fails to take

reasonable remedial action.]; 4-5.3(b) [With respect to a nonlawyer employed or

retained by or associated with a lawyer or an authorized business entity as defined

elsewhere in these Rules Regulating The Florida Bar: (1) a partner, and a lawyer

who individually or together with other lawyers possesses comparable managerial

authority in a law firm, shall make reasonable efforts to ensure that the firm has in

effect measures giving reasonable assurance that the person's conduct is

compatible with the professional obligations of the lawyer; (2) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and (3) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (A) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (B) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.]; 4-5.3(c) [Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer, the lawyer shall review and be responsible for the work product of the paralegals or legal assistants.]; 4-8.4(a) [A lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.]; 4-8.4(c) [A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ....]; and 4-8.4(d) [A lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors,

witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic.].

## COUNT V
[The Florida Bar File No. 2011-51,497(17I)]

66.    The Law Offices of David J. Stern, P.A. represented the plaintiff, BAC Home Loans Servicing, in its foreclosure action against Christine Noonan-Smith, et al. in Gilchrist County, Florida, Case No. 2009CA000126 (hereinafter referred to as <u>BAC v. Noonan-Smith</u>) beginning on or about September of 2009.

67.    On or about October 20, 2009, the Honorable Stanley H. Griffis III, Circuit Judge of the Eighth Judicial Circuit of Florida, entered an Order Scheduling Case Management Conference and/or Non-Jury Trial in which a Case Management Conference in <u>BAC v. Noonan-Smith</u> was scheduled for December 15, 2009 at 11:00 a.m., in the Gilchrist County Courthouse.  (Attached hereto and incorporated herein as **The Florida Bar Exhibit D** is a copy of the Order dated October 20, 2009.)

68.    On or about December 15, 2009, Judge Griffis entered an Order of Dismissal for Failure to Comply and Order Directing Clerk to Close File in <u>BAC v. Noonan-Smith</u>.  (Attached hereto and incorporated herein as **The Florida Bar Exhibit E** is a copy of the Order dated December 15, 2009.)

69.    Judge Griffis found the following, among other things, in the

December 15, 2009 Order in <u>BAC v. Noonan-Smith</u>:

> **THIS CAUSE** came before the Court on December 15, 2009,
> for Case Management filed on the 20th day of October, 2009. The
> Court, being otherwise fully advised in the premises, **FINDS**:
>
> a.    Good cause was not shown at the hearing why the action should
> not be dismissed for failure to comply with the Order
> Scheduling Case Management Conference and/or Non-Jury
> Trial filed on October 20, 2009, **by the Plaintiff's attorney
> who is responsible for the file in this case failing to appear
> at the Case Management Conference in person.** The Court
> shall dismiss this action.
>
> b.    The Court has previously dismissed the following case(s)
> involving counsel's failure to appear at court ordered hearings.
>
> Case No.: 21-2008-CA-0133
> Case No.: 38-2008-CA-1264
> Case No.: 38-2008-CA-0906
> Case No.: 38-2008-CA-0855
> Case No.: 38-2008-CA-0852
> Case No.: 21-2008-CA-0113
> Case No.: 38-2008-CA-0390
> Case No.: 21-2008-CA-0072
> Case No.: 38-2008-CA-1169
> Case No.: 38-2009-CA-0148
> Case No.: 38-2009-CA-0944
> Case No.: 38-2009-CA-0950
> Case No.: 38-2008-CA-0891
> Case No.: 21-2009-CA-0132
> Case No.: 21-2009-CA-0131

(See Exhibit E)

70.    In respondent's capacity as managing attorney and sole shareholder of

the Law Offices of David J. Stern, P.A. in charge of all of the functions and

activities, practices and procedures of the Stern law firm, respondent either knew, or should have known, that hearings, case management conferences and other duly noticed adjudicative proceedings were being dismissed for failure of the respondent or an associate of the firm to appear after timely notice.

71.    In respondent's performance of his duties and responsibilities as managing attorney and sole shareholder of the Law Offices of David J. Stern, P.A., respondent failed to make a reasonable effort to ensure that the firm had measures in effect that would provide reasonable assurance that the professional conduct of those handling the firm's files was compatible with the professional obligations and standards conferred on them by the Rules Regulating The Florida Bar.

72.    Wherefore, by reason of the foregoing, respondent has violated the following Rules Regulating The Florida Bar: 3-4.2 [Violation of the Rules of Professional Conduct as adopted by the rules governing The Florida Bar is a cause for discipline.]; 3-4.3 [The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's

relations as an attorney or otherwise, whether committed within or outside the state

of Florida, and whether or not the act is a felony or misdemeanor, may constitute a

cause for discipline.]; 4-1.3 [A lawyer shall act with reasonable diligence and

promptness in representing a client.]; 4-3.2 [A lawyer shall make reasonable efforts

to expedite litigation consistent with the interests of the client.]; 4-5.1(a) [A partner

in a law firm, and a lawyer who individually or together with other lawyers

possesses comparable managerial authority in a law firm, shall make reasonable

efforts to ensure that the firm has in effect measures giving reasonable assurance

that all lawyers therein conform to the Rules of Professional Conduct.]; 4-5.1(b)

[Any lawyer having direct supervisory authority over another lawyer shall make

reasonable efforts to ensure that the other lawyer conforms to the Rules of

Professional Conduct.]; and 4-5.1(c) [A lawyer shall be responsible for another

lawyer's violation of the Rules of Professional Conduct if: (1) the lawyer orders

the specific conduct or, with knowledge thereof, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm

in which the other lawyer practices or has direct supervisory authority over the

other lawyer, and knows of the conduct at a time when its consequences can be

avoided or mitigated but fails to take reasonable remedial action.].