KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Barry H. Berke
Jeffrey S. Trachtman
Jennifer L. Rochon
Norman C. Simon
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: keckstein@kramerlevin.com

*Counsel for The Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                  :   Chapter 11
                                        :
Residential Capital, LLC, *et al.*,     :   Case No. 12-12020 (MG)
                                        :
            Debtors.                    :   Jointly Administered
                                        :
------------------------------------------------------------ x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO THE MOTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, FOR AN
ORDER AUTHORIZING IT TO PROSECUTE CLAIMS AND OTHER CAUSES OF
ACTION ON BEHALF OF THE RESIDENTIAL CAPITAL, LLC ESTATE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

OBJECTION .................................................................................................................................. 4

I.   Wilmington Trust Cites No Precedent to Allow A Non-Fiduciary To Co-Litigate Estate Claims That An Independent Fiduciary Is Already Zealously Litigating ................................................................................................ 4

II.  There Are No Circumstances In This Case, Let Alone Extraordinary Circumstances, That Could Justify Wilmington Trust's Unorthodox And Unwarranted Request ................................................................................................. 8

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp.)*,
   330 B.R. 364 (Bankr. S.D.N.Y. 2005) ................................................................................7

*Avalanche Maritime, Ltd. V. Parekh (In re Parmetex, Inc.)*,
   199 F.3d 1029 (9th Cir. 1999) ...........................................................................................6

*Chemical Bank v. Pilevsky*,
   No. 94-cv-6822, 1994 WL 714287 (S.D.N.Y. Dec. 22, 1994) ..........................................6

*Commodore Int'l Ltd. v. Gould (In re Commodore Int'l, Ltd.)*,
   262 F.3d 96 (2d Cir. 2001) ..................................................................................5 n.2, 6 n.3

*Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*,
   310 F.3d 64 (2d Cir. 2002) .........................................................................................5 n.2, 6

*In re Adelphia Commc'ns Corp.*,
   336 B.R. 610 (Bankr. S.D.N.Y. 2006) .............................................................................12

*In re Adelphia Commc'ns Corp.*,
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...............................................................................8

*In re Bohack Corp.*,
   607 F.2d 258 (2d Cir. 1979) ...............................................................................................9

*In re Hills Stores Co.*,
   137 B.R. 4 (Bankr. S.D.N.Y. 1992) .................................................................................10

*In re Mirant*,
   No. 02 Civ. 6274 (GBD), 2003 WL 22327118 (Bankr. S.D.N.Y. Oct. 10, 2003) .......9, 10

*In re Residential Capital, LLC*,
   480 B.R. 550 (Bankr. S.D.N.Y. 2012) ............................................................................3, 9

*In re V. Savino Oil & Heating Co., Inc.*,
   91 B.R. 655 (Bankr. E.D.N.Y. 1988) .................................................................................7

*Official Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp. (In re Adelphia
   Commc'ns Corp.)*,
   371 B.R. 660 (S.D.N.Y. 2007) .........................................................................................13

*Unsecured Creditors Committee v. Noyes (In re STN Enterprises)*,
   779 F.2d 901 (2d Cir. 1985) ...............................................................................5 n.2, 6 n.3

*William B. Tanner Co., Inc., v. United States (In re Automated Business Systems, Inc.)*,
   642 F.2d 200 (6th Cir. 1980) ..................................................................................................6

*Williams v. Indi-Bel, Inc. (In re Williams)*,
   167 B.R. 77 (Bankr. N.D. Miss. 1994) ....................................................................................6

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Committee submits this objection (the "Objection") to the motion [Docket No. 3475] (the "WT Motion") of Wilmington Trust, National Association ("Wilmington Trust") for derivative standing and authority to prosecute and settle certain claims belonging to the Residential Capital ("HoldCo") estate.[1] In support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. In light of the Court's statement at yesterday's hearing that it would reserve decision on the Committee's motion for standing to prosecute and settle claims on behalf of the Debtors' Estates until after issuance of the Examiner's Report, the Committee requested that Wilmington Trust consent to adjourn the hearing on the WT Motion. Wilmington Trust agreed, but requested that the Committee nevertheless file its Objection in order to complete briefing on the motion.

2. The agreed adjournment will allow time for the parties to fully analyze the Examiner's Report and, should no global settlement be reached, develop a protocol to allow the actions to be brought effectively to protect all of the creditors' interests and maximize value to the Estates. This protocol would seek to resolve the issues presented by the WT Motion and permit litigation against AFI to commence promptly on a parallel track with a plan process. Given the Committee's substantial work to date in mastering the complex transactions and facts

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the WT Motion or the Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates [Docket No. 3412] (the "Committee Motion").

that form the basis of such claims, the Committee believes that it is the appropriate party to lead this litigation, and that the litigation should commence without further delay. If the litigation is not resolved during the Chapter 11 process, it can be determined at an appropriate juncture whether the Committee should continue to prosecute it post-confirmation or transfer responsibility to a litigation trust. But the interests of the Estates are not served by delaying commencement of the litigation until these issues are resolved.

3. When and if the Court considers the merits of the WT Motion, it should be denied. As Wilmington Trust acknowledges, the Debtors' most significant asset is their legal claims against AFI, which are potentially worth more than $20 billion. Committee Motion ¶¶ 2-3, 48. For the past ten months, the Committee, as the independent fiduciary for all unsecured creditors, has been vigorously investigating and analyzing the claims. Now, with the Debtors' consent, the Committee has sought authority to prosecute and settle the claims pursuant to the Committee Motion. Wilmington Trust generally supports the Committee Motion and concedes that the "Committee and its counsel and advisors have performed admirably." WT Motion ¶ 2.

4. Nevertheless, Wilmington Trust now alleges, at a pivotal stage in these cases, the existence of a vague and unsubstantiated "structural conflict" that somehow affects the Committee's ability to effectively litigate and resolve the Estates' claims against AFI to the extent the claims are owned or co-owned by the HoldCo estate. WT Motion ¶ 33, 37. Thus, Wilmington Trust argues, its interests should be elevated above those of all other unsecured creditors and it should be allowed to seize partial control of the Committee's proposed litigation as the Committee's co-plaintiff. But the WT Motion fails to identify any real conflict that could warrant the extraordinary relief requested. Instead, it describes nothing more than the unremarkable fact that a creditors' committee must represent and balance a diverse range of

competing interests, which the Committee is effectively doing, and which the Court has described as "a strength and not a weakness" in these cases. *In re Residential Capital, LLC* ("*Residential Capital*"), 480 B.R. 550, 561 (Bankr. S.D.N.Y. 2012). And in fact, as explained below, the interests of all unsecured creditors are *aligned* in seeking to maximize the value of HoldCo claims against AFI.

5. In addition to being factually unjustified, the WT Motion fails to cite any legal precedent for its unorthodox request. This is undoubtedly because it is beyond dispute that appointing a non-fiduciary creditor like Wilmington Trust to co-litigate estate claims with an official fiduciary like the Committee would invariably complicate and undercut the fiduciary's ability to prosecute and settle such claims for the benefit of all unsecured creditors. In addition, it would be fundamentally unfair to other creditors, who would in turn demand their own authority to appear as parties on behalf of their own Debtor Estates, creating litigation chaos.

6. Nor can Wilmington Trust justify its motion by pointing to a purported need for HoldCo to litigate certain inter-debtor claims against RFC and GMACM (the "OpCos") at this stage in these cases. Such litigation would be premature and an unnecessary distraction from the appropriate main event of the Committee's proposed litigation against AFI. Far from presenting "extraordinary circumstances" that could warrant Wilmington Trust's remarkable proposed relief (WT Motion ¶ 33), inter-debtor disputes like those asserted here between HoldCo and the OpCos are common in large, multi-debtor bankruptcies like this, and they are generally resolved through a process of negotiation rather than litigation. Indeed, OpCo and its creditors assert significant claims in these very cases against HoldCo, amounting to billions of dollars. The Court should allow that negotiation process to play out here without interfering with the

3

Committee's proposed litigation against AFI or risking an inter-creditor meltdown by arming one constituency to do battle with others.

7. At bottom, Wilmington Trust's unusual request for relief should be denied because it would only disrupt the Committee's efforts to maximize the value of the Debtors' estates for all creditors, and there is simply no need for it. The Trustee, as a member of the Committee, has been and will continue to be actively involved in directing the Committee's prosecution of estate claims against AFI. In addition, as one of HoldCo's largest creditors, the Trustee can participate in negotiations over HoldCo's inter-debtor claims and, if necessary, in any future inter-debtor litigation if the negotiations fail. Finally, as a private litigant, Wilmington Trust can bring its Third Party Claims against AFI, when such litigation proceeds, without being granted special fiduciary status.

## OBJECTION

### I. Wilmington Trust Cites No Precedent to Allow A Non-Fiduciary To Co-Litigate Estate Claims That An Independent Fiduciary Is Already Zealously Litigating

8. The WT Motion comes at a critical point in these cases, threatening to complicate and upset the Committee's proposed litigation against AFI and the parties' intensive efforts to settle that litigation and negotiate a consensual plan of reorganization. Filed without obtaining the Committee's or the Debtors' consent, the WT Motion seeks relief that is both unprecedented and entirely unnecessary because the Committee, as an independent fiduciary, is already zealously investigating and seeking authority to litigate the Debtors' enormously valuable legal claims against AFI for the benefit of all unsecured creditors.

9. As the Court knows well, the Committee has moved for an order granting it authority to prosecute and settle claims on behalf of all of the Debtors' estates against AFI that emerge from the Committee's comprehensive and ongoing Rule 2004 investigation, which began

4

last June, or from the Examiner's forthcoming report. Since June, Committee counsel and the Committee's financial advisors have reviewed and analyzed millions of pages of documents; made several presentations to the Examiner and AFI about the facts and law supporting the Debtors' claims against AFI; and obtained the Debtors' consent for the Committee to be granted derivative standing to pursue the claims. Committee Motion ¶¶ 2, 9-10, 76. As the Committee Motion shows, the Committee is the appropriate entity to prosecute and settle claims against AFI on behalf of all the Debtors' estates because it is the official fiduciary for all of the Debtors' unsecured creditors; it has a deep knowledge of the relevant facts and law; and it has a demonstrated commitment to pursuing the claims and maximizing their value for all of the Debtors' estates. *See, e.g.*, *id.* ¶ 76.

10. By contrast, Wilmington Trust, nominally acting solely for the HoldCo bonds, seeks to elevate the interests of one subset of unsecured creditors above those of all other creditors represented by the Committee, and to exercise unwarranted control over the Committee's proposed litigation as the Committee's co-plaintiff. In fact, Wilmington Trust goes even farther by requesting "the exclusive right and authority to enter into settlements on behalf of HoldCo with respect to HoldCo claims." WT Motion, Exhibit A ¶ 4. Although Wilmington Trust presents its request as straightforwardly seeking standing under the Second Circuit's governing trilogy of derivative standing cases – *STN*, *Commodore*, and *Housecraft* – the request is so remarkable and unusual that Wilmington Trust fails to cite even a single case remotely like this one, let alone one that grants similar relief in similar circumstances.[2] As far as the Committee is aware, there is simply no precedent for a non-fiduciary creditor like Wilmington

---

[2] *Unsecured Creditors Committee v. Noyes (In re STN Enterprises)* ("*STN*"), 779 F.2d 901 (2d Cir. 1985); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l, Ltd.)* ("*Commodore*"), 262 F.3d 96 (2d Cir. 2001); *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)* ("*Housecraft*"), 310 F.3d 64 (2d Cir. 2002).

Trust to be appointed as a second plaintiff to co-litigate essentially the same estate claims that a debtor or an official committee (with or without the debtor's consent) is already litigating for the ultimate benefit of all unsecured creditors.

11. Among the Second Circuit's trilogy, *Housecraft* is the most apt because it is the only decision that involved an individual creditor that sought standing to assert estate claims.[3] However, *Housecraft* does not support Wilmington Trust's Motion because there was no creditors' committee appointed in that case and the plaintiff creditor, unlike Wilmington Trust here, had entered into a written agreement with the debtor's bankruptcy trustee to jointly litigate estate claims based on the creditor's agreement to fully fund the litigation; the bankruptcy trustee did not have the resources to prosecute the litigation; and the bankruptcy trustee would have abandoned the litigation otherwise. 310 F.3d at 67, 71. No such facts exist in this case. Nor can Wilmington Trust find any support in the handful of other cases in which courts have allowed individual creditors to pursue estate claims, because courts have generally allowed individual creditors to do this in relatively small bankruptcies where there were no official creditors' committees appointed to litigate estate claims. *See, e.g.*, *Avalanche Maritime, Ltd. V. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1030 (9th Cir. 1999); *William B. Tanner Co., Inc., v. United States (In re Automated Business Systems, Inc.)*, 642 F.2d 200, 200 (6th Cir. 1980); *Chemical Bank v. Pilevsky*, No. 94-cv-6822, 1994 WL 714287, at *4 (S.D.N.Y. Dec. 22, 1994); *Williams v. Indi-Bel, Inc., (In re Williams)*, 167 B.R. 77, 82 (Bankr. N.D. Miss. 1994). These cases have no bearing on this one, which is a mega-bankruptcy in which an official creditors' committee has

---

[3] *STN* and *Commodore* involved creditors' committees that sought standing to prosecute estate claims where, respectively, a debtor unjustifiably refused to prosecute the claims, *STN*, 779 F.2d at 902, 904, and a court-appointed liquidator consented to the committee's standing to prosecute estate claims. *Commodore*, 262 F.3d at 97-98.

been appointed and is intensively investigating and seeking to litigate estate claims against third parties for the ultimate benefit of all of the Debtors' unsecured creditors.

12. In the one case the Committee has found in which an individual creditor sought authority to litigate estate claims where a creditors' committee had been appointed and was already litigating "similar or identical" claims, *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 657 (Bankr. E.D.N.Y. 1988), unsurprisingly the court denied the creditor's motion. *Id.* The court reasoned there were no "extraordinary circumstances or reasons to justify granting the [creditor's] remarkable relief" because "no one ha[d] suggested that the Creditors' Committee will fail to 'zealously prosecute' [its] lawsuit." *Id.* This simple logic fully applies here to compel denial of the WT Motion.

13. Wilmington Trust cannot escape this conclusion by relying on *Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364 (Bankr. S.D.N.Y. 2005), in which the Court granted derivative standing to a creditors' committee and an equity committee to join with Chapter 11 debtors in pursuing estate claims. Rather than supporting the proposition that a non-fiduciary creditor like the Trustee may be authorized to litigate estate claims along with an official creditors' committee, *Adelphia* granted standing to a *second official fiduciary*, the *Adelphia* debtors' official equity committee, to litigate *additional estate claims only* along with the official creditors' committee, which had received debtor consent to join the debtors in bringing certain estate claims. *Id.* at 368. The court granted the equity committee's standing motion because, while presenting a close call, litigation of the equity committee's proposed additional colorable claims, which the creditors' committee was not asserting, could benefit the estates, and no one but the proposed defendants was opposed. *Id.* at 385-86. The present cases are completely distinguishable because (i) Wilmington Trust, unlike

7

the equity committee in *Adelphia*, is *not* a second official fiduciary obligated to litigate for the benefit of all unsecured creditors, but an individual creditor with duties only to Noteholders; (ii) Wilmington Trust seeks to litigate essentially the same claims that the Committee is alleging against AFI; (iii) the additional claims that the Trustee seeks to litigate are essentially inter-debtor claims that would needlessly complicate the Committee's proposed litigation and should be resolved separately, if at all possible, through negotiation; and (iv) the Committee opposes the WT Motion because the relief it seeks would seriously disrupt the Committee's efforts to appropriately pursue the global interests of unsecured creditors and maximize the value of all of the Debtors' estates.

14. Far from supporting the WT Motion, the Court's decisions in *Adelphia* strongly counsel against granting Wilmington Trust the derivative standing it requests. Fewer than nineteen months after the *Adelphia* equity committee was granted standing, the court withdrew the standing after finding that the equity committee had "disregard[ed] the collaborative basis on which [it] was granted derivative standing in the first place." *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 273-74 (Bankr. S.D.N.Y. 2007). There is no good reason for the Court to risk a similar outcome here.

## II.     There Are No Circumstances In This Case, Let Alone Extraordinary Circumstances, That Could Justify Wilmington Trust's Unorthodox And Unwarranted Request

15. In addition to the complete absence of legal precedent for the WT Motion, there are no facts or circumstances in these cases that could justify the unorthodox relief Wilmington Trust seeks. Wilmington Trust does not question the Committee's competence, resources, diligence, or commitment to investigating the complex facts surrounding the Debtors' prepetition and postpetition transactions and relationships with AFI; analyzing and applying the relevant law; and vigorously litigating any and all colorable claims against AFI and other third

parties in a strategically intelligent manner. The WT Motion readily admits that Wilmington Trust generally supports the Committee Motion (WT Motion ¶ 2); the "Committee and its counsel and advisors have performed admirably" (*id.*); and "the Committee and its professionals are doing yeoman's work . . . and should be commended for their efforts" (*id.* ¶ 41). In such circumstances, there is no justification for the WT Motion or for allowing the problems, complications, duplications of effort, and inefficiencies it would impose on the Committee's vitally important proposed litigation.

16.  Wilmington Trust attempts to justify its extraordinary request primarily by relying on the vague allegation that the Committee is impaired by a purported "structural conflict" arising from the varied interests of Committee members (*id.* ¶ 33), which supposedly undermines the Committee's ability to litigate and settle claims belonging to the Debtors' different estates, including HoldCo. But Wilmington Trust's allegations are wholly unsubstantiated; indeed, the Court has already noted in these cases that the "fact that the Creditors Committee includes a cross section of the unsecured creditors in these cases is a strength and not a weakness." *Residential Capital*, 480 B.R. at 561. The mere fact that litigating and settling claims may involve the Committee accommodating and reconciling competing creditor interests actually weighs in favor of denying the WT Motion because that is one of the fundamental roles of, and benefits of having, a creditors' committee. *See, e.g.*, *In re Bohack Corp.*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("[T]he committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors."); *Residential Capital*, 480 B.R. at 561 ("The role of the Creditors Committee is to 'strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.'") (quoting *In re Mirant*, No. 02 Civ. 6274

9

(GBD), 2003 WL 22327118, at *6 (Bankr. S.D.N.Y. Oct. 10, 2003)); *In re Hills Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992) ("The inclusion of [various creditor] groups within one committee may facilitate the consensual resolution of the conflicting priorities among the holders of unsecured claims and thereby facilitate the negotiation of a consensual plan.").

17.     The one specific example of discriminatory treatment of HoldCo's interests suggested by Wilmington Trust relates to the HoldCo Election, which the Debtors proposed to insert into the RMBS Settlement Agreement. The election would have permitted the RMBS Trusts to assert up to $1.74 billion of their proposed allowed claim against the HoldCo estate even though no "representation and warranty" claims had been asserted against HoldCo. WT Motion ¶ 4 & n.6. However, the Committee's successful effort to *oppose* the HoldCo Election and obtain its removal from the RMBS Settlement Agreement, notwithstanding that the election would have benefited the OpCos at Holdco's expense, confirms that there is no supposed "structural conflict" impairing the Committee's ability to fulfill its fiduciary duties by appropriately representing and balancing the interests of all unsecured creditors.

18.     Wilmington Trust's attempt to establish a conflict by focusing in isolation on its own claims against AFI ignores complexities in the Debtors' corporate and claim structure that serve to align the interests of *all* unsecured creditors in maximizing the recovery against AFI. For example, the Junior Secured Noteholders are likely to assert an unsecured deficiency claim against HoldCo in an amount exceeding $2 billion, or more than double the outstanding amount of the HoldCo bonds. In that case, two-thirds of any amounts recovered by HoldCo as a result of its litigation against AFI would go to satisfy the Junior Secured Noteholders' deficiency claim, until it is paid in full. Because the OpCo Debtors have guaranteed the Junior Secured Notes, to the extent the Junior Secured Noteholders' deficiency claim is paid by HoldCo (the

primary obligor), it will significantly reduce the guarantee claims against OpCo, which directly benefits the OpCo creditors.

19.     In short, there is no basis for questioning the Committee's single-minded devotion to maximizing the value of the estates' assets and, thus, there is no reason to appoint a co-party and co-counsel to prosecute estate claims alongside the Committee, whether on behalf of HoldCo, the OpCos, or both. The lengthy recitation of facts and claims in the Committee Motion speaks to its commitment to pursue the best possible outcome for all unsecured creditors, and the inclusion in the Committee Motion of authority to litigate fraudulent conveyance, veil-piercing, and indemnification claims, which are "similar or identical" to those Wilmington Trust seeks to prosecute, addresses the majority of the HoldCo claims discussed in the WT motion. WT Motion ¶¶ 6, 21; Committee Motion ¶¶ 48-67.

20.     Wilmington Trust identifies three other categories of claims as a basis for granting it standing, but none of them justifies granting the WT Motion. *First*, Wilmington Trust identifies certain estate claims the Committee has not yet sought permission to pursue, such as breach of fiduciary duty claims against HoldCo's directors and officers, and aiding and abetting breach of fiduciary duty claims against AFI. WT Motion ¶ 21. But the Committee may still seek authority to litigate these and other claims at an appropriate time. The Committee has not yet sought authority to pursue such claims because it is still evaluating the facts and the law; the parties and the Court await the Examiner's report, which will express a view on the facts and the law; and the Committee decided to focus now on the claims against AFI rather than those against other third parties, including the Debtors' directors and officers whom the Debtors have not provided consent for the Committee to sue.

11

21.     *Second*, Wilmington Trust seeks to bring certain inter-debtor claims that HoldCo may have against the OpCos, *e.g.*, claims for fraudulent transfer related to HoldCo's forgiveness of billions of dollars of OpCo debt, and claims for the disallowance of AFI's, RFC's, and GMACM's proofs of claim. *Id.* ¶ 21. The existence of these claims does not constitute "extraordinary circumstances" that could warrant granting the WT Motion. *Id.* ¶ 33. To the contrary, as the court observed in *Adelphia*:

> Interdebtor disputes are very common in large multi-debtor chapter 11 cases. In most cases, they are resolved by negotiations between or among the creditors whose recoveries are determined by the outcome of those disputes – with a subcurrent underlying those negotiations that creditors have the right to litigate them if agreement cannot be reached. . . . *The appointment of a nonstatutory fiduciary to litigate those disputes would be unprecedented.*

*In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 654 (Bankr. S.D.N.Y. 2006) (emphasis added).

22.     Even if it could theoretically be appropriate to appoint a non-statutory fiduciary to litigate HoldCo's inter-debtor claims (or related claims against AFI), doing so now would lead to complications, conflicts, and disruptions that would only harm the Debtors' estates by distracting the Committee from its primary goal of maximizing the pot of unencumbered assets available for distribution to all unsecured creditors. Granting Wilmington Trust's request would complicate the Committee's already challenging task in this regard and, "in order to be fair," would require the court to deputize "other representatives of other debtors . . . who might have been impacted by [the challenged] transfers in the other direction or wish to bring similar claims." Hr'g Tr. at 294-95, Docket No. 9403, *In re Adelphia Commc'ns Corp.*, No. 02-41729 (Bankr. S.D.N.Y. July 26, 2005), attached hereto as "Exhibit A". *See also Adelphia*, 336 B.R. at 660 n.124 ("The Court will not permit litigants to have advantages, statutory or otherwise, in the Interdebtor Disputes."). This would push these cases down a dangerously slippery slope by

12

effectively obligating the Court to allow other unsecured creditors to begin litigating their own inter-debtor claims (including the OpCos' claims against HoldCo), which they would undoubtedly begin doing to maintain leverage and a level playing field, and to represent their own distinct interests in the litigation against AFI.

23.     Where a debtor's unsecured creditors have a common interest in pursuing litigation to increase their overall recoveries, like the unsecured creditors have in these cases, the mere fact that individual creditors or holders may have conflicting interests in divvying up any proceeds from the litigation does not justify appointing multiple fiduciaries to pursue the litigation, especially where there is a single fiduciary, like the Committee, fully capable of effectively doing so on behalf of all.  In *Adelphia*, the Court rejected an equity committee's argument, analogous to the Trustee's argument here, that additional trustees should be appointed to a litigation trust to ensure representation of the differing beneficiaries' economic interests, and it used language that applies equally here:

> [F]ollowing the Equity Committee's argument to its logical conclusion would require the Plan to provide for the appointment of no fewer than thirteen [litigation trust] Trustees, one for each level of [beneficiary] Interests, and with each owing a singular fiduciary duty to its constituency. The cacophony of views that would result from such an unwieldy, potentially adversarial governing body would make it impossible for litigation decisions or strategies to emerge.

*Official Comm. of Equity Sec. Holders v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 371 B.R. 660, 679-80 (S.D.N.Y. 2007).  Similar problems would result in these cases if the WT Motion were granted and a presumption created that every constituency with varying

13

interests with respect to claims against AFI had the right to participate as a party with settlement authority over "its" claims.[4]

24.     Contrary to the WT Motion, the inter-debtor disputes and allocation issues raised by Wilmington Trust are best resolved through negotiation and separately from the resolution of the Estates' claims against AFI. In these cases, just like in *Adelphia*, a similarly complicated multi-debtor bankruptcy, "it's of the highest importance that we keep our eye on the ball and that we not let these intercreditor disputes explode in a way that could cause [ResCap's] reorganization to spin out of control." Exhibit A, *Adelphia* Hr'g Tr. at 291.

25.     *Finally*, the motion enumerates several Third-Party Claims that Wilmington Trust asserts against AFI and other parties. There is no need to address the merits of such claims here or for the Court to grant any particular authority for Wilmington Trust to pursue them. Wilmington Trust does not need any special authority from the Court to assert its individual claims. Moreover, Wilmington Trust agrees it is premature to tee up the question of whether particular claims are "personal to the Trustee" or are estate claims (WT Motion at 5 n.7), and Wilmington Trust has failed to explain why, if any of the claims are personal to it, it needs judicial approval to assert them.

26.     For the reasons stated herein, denial of the WT Motion will preserve the Committee's ability to pursue with minimal interference its important goal of maximizing the value of all of the Debtors' estates by strategically prosecuting estate claims against AFI and other third parties. Such denial will not prejudice the legitimate interests of Wilmington Trust,

---

[4] Even when the right time arises (if it ever does) for HoldCo to litigate inter-debtor claims, Wilmington Trust might not be the appropriate party to pursue the litigation. The Debtors and the Committee assert that the Junior Secured Noteholders (defined below) are significantly undersecured and, as a result, that they have a significant unsecured deficiency claim at HoldCo and numerous other general unsecured claims have been filed against HoldCo. "Junior Secured Noteholders" refers to the holders of 9.625% Junior Secured Guaranteed Notes due 2015 and issued under that certain Indenture, dated as of June 6, 2008, among Residential Capital, as issuer; certain Debtors as guarantors; and U.S. Bank National Association, as indenture trustee.

which is a member of the Committee and able to participate fully in directing the Committee's prosecution of estate claims, including by reviewing and approving any Committee legal claims and pleadings; strategic decisions; and proposed settlements. It need not be a party to have its voice heard.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court deny the WT Motion in its entirety.

Dated: May 8, 2013
New York, New York

                                         KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                         /s/ Kenneth H. Eckstein
                                         Kenneth H. Eckstein
                                         Barry H. Berke
                                         Jeffrey S. Trachtman
                                         Jennifer L. Rochon
                                         Norman C. Simon
                                         1177 Avenue of the Americas
                                         New York, New York  10036
                                         Telephone: (212) 715-9100
                                         E-mail:  keckstein@kramerlevin.com

                                         *Counsel for The Official Committee*
                                         *of Unsecured Creditors*