**Hearing Date and Time:  May 23, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  May 16, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------- | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------------------- | ) | |

**NOTICE OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION**
**503(c)(2) OF THE BANKRUPTCY CODE FIXING STATUTORY CAP FOR**
**<u>SEVERANCE PAYMENTS TO CERTAIN INDIVIDUALS</u>**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*for an Order Pursuant to Section 503(c)(2) of the Bankruptcy Code Fixing Statutory Cap*

*for Severance Payments to Certain Individuals* (the "<u>Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **May 23, 2013 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable

Martin Glenn, at the United States Bankruptcy Court for the Southern District of New

York, Alexander Hamilton Custom House, One Bowling Green, New York, New York

10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **May 16, 2013 at 4:00**

**p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison & Foerster

LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee,

Lorenzo Marinuzzi and Jordan A. Wishnew); (b) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY

10004 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the

Office of the United States Attorney General, U.S. Department of Justice, 950

Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney

General, Eric H. Holder, Jr.); (d)  Office of the New York State Attorney General, The

Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.);

(e) Office of the U.S. Attorney for the Southern District of New York, One St. Andrews

Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for Ally

Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022

(Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of

unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal);

(h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd

Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman); (i)

counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand

Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by

overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-

5016); and (k) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S.

Canellos, Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: May 8, 2013             Respectfully submitted,
      New York, New York

                              /s/ Lorenzo Marinuzzi
                              Gary S. Lee
                              Lorenzo Marinuzzi
                              Jordan A. Wishnew
                              MORRISON & FOERSTER LLP
                              1290 Avenue of the Americas
                              New York, New York 10104
                              Telephone: (212) 468-8000
                              Facsimile: (212) 468-7900

                              *Counsel to the Debtors and*
                              *Debtors in Possession*

**Hearing Date: May 23, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: May 16, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Jordan A. Wishnew

*Counsel to the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------- ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------------- ) | | |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 503(c)(2) OF THE**
**BANKRUPTCY CODE FIXING STATUTORY CAP FOR**
**SEVERANCE PAYMENTS TO CERTAIN INDIVIDUALS**

# TABLE OF CONTENTS

**Page**

JURISDICTION ................................................................................................................1

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...............................................................................................................2

    A.    DEBTORS' PREPETITION SEVERANCE PLAN ...............................................3

    B.    CALCULATING THE STATUTORY SEVERANCE CAP................................4

    C.    GENESIS OF DISPUTE WITH OFFICE OF U.S. TRUSTEE ...........................5

RELIEF REQUESTED ......................................................................................................7

BASIS FOR THE RELIEF REQUESTED .........................................................................7

I.    BANKRUPTCY CODE SECTION 503(C)(2) SHOULD BE READ TO
CALCULATE THE MEAN SEVERANCE PAY FOR ALL ELIGIBLE
EMPLOYEES AT THE BEGINNING OF THE CALENDAR YEAR............................7

NOTICE ...........................................................................................................................10

CONCLUSION ................................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

STATUTES

11 U.S.C. § 503(c)(2) ...................................................................................................7


OTHER AUTHORITIES

4 COLLIER ON BANKRUPTCY § 503.17[3] (16th ed.).......................................................8

Transcript of Hearing, *In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y.
April 11, 2013) ................................................................................................6

i

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**")[1] hereby move for entry of an order (a copy of which is attached hereto as Exhibit 1),

pursuant to section 503(c)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"),

fixing the statutory cap for severance payments to certain individuals.  In support of the Motion,

the Debtors rely upon and incorporate by reference the Declaration of Tammy Hamzehpour (the

"**Hamzehpour Decl**."), which is being filed concurrently herewith.  In further support of the

Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.       This Court has jurisdiction over this Motion under 28 U.S.C. sections 157 and

1334.  Venue is proper under 28 U.S.C. sections 1408 and 1409.  This is a core proceeding as

defined in 28 U.S.C. section 157(b)(2).  The statutory predicate for the relief requested herein is

section 503(c)(2) of the Bankruptcy Code.

## PRELIMINARY STATEMENT

2.       Since the inception of this bankruptcy proceeding, the Debtors have continued

administering the ResCap Severance Plan (described in greater detail herein) and honoring their

obligations to their employees under the plan.  Recently, during the April 11, 2013 hearing on

the Debtors' Key Employee Motion (defined herein) [Docket No. 3280], the Office of the U.S.

Trustee questioned the severance amounts being paid to certain of the Debtors' insiders.  The

Debtors agreed to "come back to this Court for severance for these covered employees."  In the

interim, the Debtors proposed to the U.S. Trustee that the parties try to consensually resolve any

---

[1]      The names of the Debtors in these cases and their respective tax identification numbers are identified on
Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support
of Chapter 11 Petitions and First Day Motions (the "**Whitlinger Affidavit**") [Docket No. 6].

ny-1089019

issues between them and submit a stipulated order to the Court, but such a course of action was not acceptable to the U.S. Trustee.

3.      As explained in greater detail herein, the U.S. Trustee purportedly disagrees with the method by which the Debtors calculate the statutory cap under section 503(c)(2) of the Bankruptcy Code.  The Debtors propose to set the mean severance payment to nonmanagement employees by determining the mean of the total payments to all eligible employees at the start of the calendar year.  For the reasons discussed herein, the Debtors assert that this method of calculation is the most fair and equitable manner of calculating the statutory cap and will not prejudice their insider employees.  Accordingly, and for the reasons set forth below, the Debtors request that the Court set the statutory cap for a severance payment to an insider at $136,042.30.

## BACKGROUND

4.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

5.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

6.      On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674].

ny-1089019

### A.    DEBTORS' PREPETITION SEVERANCE PLAN

7.    On the Petition Date, the Debtors filed a motion for entry of interim and final

orders (the "**Employee Motion**"), under sections 105, 363(b), 507(a), 1107 and 1108 of the

Bankruptcy Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), (i) authorizing, but not directing, the Debtors to (a) pay prepetition

wages, compensation, employee expenses and employee benefit obligations under employee

benefit programs and associated taxes and administration fees;  and (b) continue the payment of

wages, compensation and employee expenses, employee benefit obligations under employee

benefit programs, and associated taxes and administration fees accruing postpetition in the

ordinary course; (ii) directing all banks to honor checks and transfer requests for payment of

approved employee obligations; and (iii) scheduling a final hearing.  The Employee Motion

provides, in part, that the Debtors intended to maintain their employee severance plan during

these Chapter 11 cases. *See* Docket No. 43.

8.    Historically, substantially all of the Debtors' employees, which included the Full-

time Employees, Benefit Eligible Part-time Employees and Commission Status Employees

participated in the Ally Financial Inc. Severance Plan (the "**AFI Severance Plan**").[2]  Under the

AFI Severance Plan, the Debtors would reimburse AFI for payments made by AFI to the

Debtors' former employees. *See* Id.

9.    Effective March 8, 2012, AFI discontinued the Debtors' Employees' participation

in the AFI Severance Plan, and the Debtors immediately adopted the Residential Capital, LLC

Severance Plan (the "**ResCap Severance Plan**").  Under the ResCap Severance Plan, the

Debtors are directly obligated for the administration of, and payments made under, the ResCap

Severance Plan.  Benefits under the ResCap Severance Plan include cash payments,

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Employee Motion.

ny-1089019

outplacement services as well as certain other benefits depending on the Employee's benefit level, payable upon a qualified termination of employment.  *See* Id.

10.    As part of the Employee Motion, the Debtors sought, and obtained, authority from the Court to continue the ResCap Severance Plan.  However, at the request of the Creditors' Committee, the Debtors agreed to add certain notice provisions to the final order approving the Employee Motion in order to ensure that the U.S. Trustee and Creditors' Committee were notified of specific types of severance payments.  Specifically, the Final Order (defined below) provides, in pertinent part, that "the Debtors shall provide the Committee and the U.S. Trustee with notice ten business days prior to making a severance payment under the ResCap Severance Program in cases where (i) the Employee is eligible for Tier II benefits under the ResCap Severance Program, (ii) the severance payment to the individual Employee exceeds $50,000, (iii) the Debtors' actions in any month will cause the Debtors to incur additional aggregate severance payments in excess of $500,000, and (iv) the total number of Employees eligible to receive severance payments will exceed 40 for that month (collectively, the "**Thresholds**").  The Debtors [shall] not make payments under the ResCap Severance Program in excess of the Thresholds absent such notice to the Committee or the U.S. Trustee." ("**Final Order**"). *See* Docket No. 386.

11.    The Debtors have complied with the terms of the Final Order.

**B.    CALCULATING THE STATUTORY SEVERANCE CAP**

12.    The Debtors' "nonmanagement" employee headcount on January 1, 2013 was 3,891.  The collective severance benefits for this group, as of January 31, 2013, is $52,934,057.  Accordingly, the mean severance pay for the Debtors' nonmanagement population is

4

$13,604.23.[3]  If one were to multiply that figure by ten (as required by the Bankruptcy Code), an

insider's severance payment can be no greater than $136,042.30.  Accordingly, the Debtors have

capped any insider's payment under the ResCap Severance Plan at $136,042.30.  *See*

Hamzehpour Decl. at ¶4.

### C.    GENESIS OF DISPUTE WITH OFFICE OF U.S. TRUSTEE

13.    Earlier this year, the Debtors obtained authority from the Court, over the objection

of the U.S. Trustee, to implement key employee incentive and retention plans. *See* Docket No.

3443 (the "**Key Employee Motion**").

14.    The Key Employee Motion stated, in part, that for 2013, the substantial majority

of the Debtors' employees would receive (i) base salary, (ii) a KEIP or KERP award, and (iii)

remain eligible for severance at the time they are terminated. *See* Docket No. 3280 at ¶25.

15.    In its objection to the Key Employee Motion, the U.S. Trustee sought more

specifics about the amount of severance being paid to the Debtors' employees.  In its reply, the

Debtors specifically noted that for "members of the Estate KEIP, their current severance awards

range from $68,000 - $375,000 (subject to any restriction set forth in section 503(c)(2) of the

Bankruptcy Code); however, none of these six individuals will receive severance this year

because each is slated to remain with the estate beyond 2013.  With regard to the individuals in

the Executive KEIP, they are each entitled to sums […] of $250,000 [or greater]; however, their

awards will be subject to the cap provided for in Bankruptcy Code section 503(c)(2)." *See*

Docket No. 3378 at ¶23.

---

[3] These data points and calculations were provided to the Creditors' Committee and the U.S. Trustee on February 6, 2013 in connection with certain of the Debtors' prior severance notifications consistent with the terms of the Final Order.  Neither the Creditors' Committee nor the U.S. Trustee objected to the severance payments, which included one insider employee, who was paid $136,042.30. *See* Hamzehpour Decl. at ¶5.

ny-1089019

16.     Notwithstanding the Debtors' disclosures in compliance with the Final Order, the

Debtors advised the Court during the hearing on the Key Employee Motion that it would "come

back to this Court for severance for these covered employees." Transcript of Hearing at 29:7-8,

*In re Residential Capital, LLC*, No. 12-12020 (Bankr. S.D.N.Y. April 11, 2013).

17.     During the hearing on the Key Employee Motion, the U.S. Trustee noted that,

"one of the complications that came up for purposes of severance is how do you calculate the

(c)(2) limitation on the first day of the year, where (c)(2) says, you know, ten times the amount

give[n] within that year… So even at this point it's not clear how the (c)(2) limitation will apply

and the amount that will be applicable." Id. at 28:5-11.

18.     In connection with the separation of another insider earlier in the year, the

Debtors engaged in discussions with the U.S. Trustee about the calculation of the statutory cap.

During those discussions, the Debtors provided the U.S. Trustee with the calculations supporting

the $136,042.30 statutory cap.  At the time, the U.S. Trustee questioned whether the Debtors'

calculation of the statutory cap was consistent with the statute.  The Debtors corresponded with

the U.S. Trustee on the matter and explained why the proposed calculation was correct.

Ultimately, the U.S. Trustee did not contest the Debtors' severance payment to an insider at the

statutory cap level being advocated by the Debtors (i.e., $136,042.30), but rather, advised the

Debtors in writing that she reserved her rights with respect to any future payments by the

Debtors to insiders and non-insiders. *See* Hamzehpour Decl. at ¶5.

19.     On April 22, 2013, pursuant to the terms of the Final Order, the Debtors provided

written notice to the Creditors' Committee and the U.S. Trustee that it intended to provide

severance payments to the two individuals in the Executive KEIP, each in the amount of

approximately $136,000, because each of the individuals in the Executive KEIP is entitled to sums well in excess of the $136,000 cap (as calculated by the Debtors).[4] *See* Id. at ¶6.

20.     On April 29, 2013, in an effort to avoid the cost and expense of preparing and prosecuting this Motion, Debtors' counsel called the U.S. Trustee to inquire as to whether the U.S. Trustee took issue with the Debtors' proposed severance payments.  Debtors' counsel offered to work through any questions with the hope that the parties could submit a stipulated order to the Court.  However, rather than engage with the Debtors, the U.S. Trustee requested that the Debtors file the instant motion. *See* Id. at ¶7.

## RELIEF REQUESTED

21.     By this Motion, the Debtors seek entry of an order fixing the statutory cap under section 503(c)(2) of the Bankruptcy Code at $136,042.30.

## BASIS FOR THE RELIEF REQUESTED

### I.     BANKRUPTCY CODE SECTION 503(c)(2) SHOULD BE READ TO CALCULATE THE MEAN SEVERANCE PAY FOR ALL ELIGIBLE EMPLOYEES AT THE BEGINNING OF THE CALENDAR YEAR

22.     A severance payment to an insider is only permissible if  "(A) the payment is part of a program that is generally applicable to all full-time employees; and (B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made." 11 U.S.C. §503(c)(2).

23.     As discussed above, the ResCap Severance Plan covers substantially all of the Debtors' Employees.  Therefore, the Debtors satisfy the first element of the statute.

---

[4] For Employee #1, who has been with the Debtors for twenty years, he is entitled to a severance payment equal to his ████████████████████████████████████████.  Employee #2, who has been with the Debtors for three years, is entitled to ████████████████████████████████████. *See* Hamzehpour Decl. at ¶¶ 9, 10.

7

24.     The first statutory element is unambiguous; however, the same cannot be said for the second element of section 503(c)(2).  "If read literally, the requirement would preclude any payment of severance to an insider until the end of the calendar year in which the insider's employment is terminated.  Only at the end of the year would it be possible to calculate the mean severance pay given to nonmanagement employees during the year." *See* 4 COLLIER ON BANKRUPTCY § 503.17[3] (16th ed.).  Nothing in the statute suggests that such a literal interpretation is what was intended by the drafters of the Bankruptcy Code, and adoption of such a narrow interpretation would unfairly delay an employee's receipt of the severance payment.

25.     One could interpret the phrase "given to the nonmanagement employees during the calendar year" to mean "the period then elapsed during the calendar year." *Id*.  However, such an interpretation "could lead to anomalies…if the layoffs occur during the early part of the year." *See* 4 COLLIER ON BANKRUPTCY § 503.17[3] (16th ed.).  For example, in these Chapter 11 cases, ████████████████████████████████████████████████████ ████████████████████████████████████, which yields a mean severance payment of $9,712.19.  If this figure were multiplied by ten, then an alternate statutory cap would be $97,121.86 (the "**Alternate Cap**").

26.     "The purpose of the [statutory] limitation [in section 503(c)(2)] is to ensure that the insider severance is not specifically created for those insiders and that a severance program is in effect for all full-time employees." *See* 4 COLLIER ON BANKRUPTCY § 503.17[3] (16th ed.).  This particular section of the Bankruptcy Code seeks to ensure that all employees are treated similarly and one group is not favored at the expense of others.

27.     The ResCap Severance Plan provides severance for all employees, and the variables affecting the amount of one's payments under the plan is their tenure with the company

8

and their historic pay levels.  The ResCap Severance Plan was not specifically created for the

insiders; rather, it is a longstanding and pre-existing benefit program for all employees.

28.    Employee #1 has worked with the Debtors for twenty years, working his way up

to a senior executive position.  He has rightfully earned a severance payment of $████.⁵ *See*

Hamzehpour Decl. at ¶9.  However, section 503(c)(2) only permits Employee #1 to receive the

sum of $136,042.30 – approximately ██% of the sum provided for under the ResCap Severance

Plan.  If Employee #1 were to only be entitled to the Alternate Cap, then he'd receive slightly

over ██% of the amount the ResCap Severance Plan allows him to receive.

29.    Employee #2 has worked with the Debtors for three years.  He rightfully earned a

severance payment of $████.⁶ *See* Hamzehpour Decl. at ¶10.  Section 503(c)(2) only permits

Employee #2 to receive the sum of $136,042.30 – approximately ██% of the sum provided for

under the ResCap Severance Plan.  If Employee #2 were to only be entitled to the Alternate Cap,

then he'd receive slightly approximately ██% of the amount provided for in the ResCap

Severance Plan.

30.    Interpreting the statute in a manner that only considers the amounts actually paid

to nonmanagement employees before such time that an insider is severed unfairly skews the

statutory cap and punishes an employee who otherwise served their employer in a loyal and

dedicated manner for a significant period of time.  Such is the case in these Chapter 11 cases.  As

the figures above clearly demonstrate, the potential severance award for senior executives is

certainly tempered by the formula set forth in the Bankruptcy Code.  However, the ambiguity in

---

⁵ If he separates from the Debtors before the end of May, he will have earned a base salary of $████ plus a KEIP
award of up to $████ through the end of May (or $████ through the end of June – assuming he meets the
designated metrics).
⁶ He separated from the Debtors on May 3 and earned a base salary of $████ plus a KEIP award of $████.

ny-1089019

the statute could be read to further skew the severance award even though the employee has done nothing to warrant such disparate treatment.

31.     Therefore, for the reasons discussed, the only equitable method to interpret section 503(c)(2)(B) under the circumstances in these Chapter 11 cases is to calculate the mean severance pay of the Debtors' nonmanagement employees for the entirety of the population as it existed on January 1, 2013.  Such an interpretation is fair, equitable and provides certainty to an employee regardless of when they might be severed.  Any other calculation would be inequitable and artificially skews the mean severance pay, thereby adversely impacting the insider's severance payment.

## NOTICE

32.     The Motion is being served in a manner consistent with the Court's Case Management Procedures Order [Docket No. 141].

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit 1, and grant such other and further relief to

10

the Debtors as the Court may deem just and proper.

Dated:  May 8, 2013
        New York, New York

                                        /s/ Lorenzo Marinuzzi
                                        Gary S. Lee
                                        Lorenzo Marinuzzi
                                        Jordan A. Wishnew
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Counsel to the Debtors and
                                        Debtors in Possession*

## <u>EXHIBIT 1</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|   |   |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

------------------------------------------------------------

**ORDER PURSUANT TO SECTION 503(c)(2) OF THE BANKRUPTCY CODE FIXING
<u>AMOUNT OF SEVERANCE PAYMENTS TO CERTAIN INDIVIDUALS</u>**

Upon consideration of the Debtors' motion (the "**Motion**")[1] for entry of an order fixing

amount of severance payments to certain individuals; and jurisdiction existing for the Court to

consider the motion; and after due deliberation thereon; and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion was adequate

and proper under the circumstances of these cases and that no further or other notice need be

given; and the Court having found that good and sufficient cause exists for granting the Motion;

and upon the files and records in these cases; and upon the arguments and statements in support

of the Motion presented at the hearing before the Court; and notwithstanding anything to

contrary, nothing in this order shall be construed as an authorization for any payment that is

prohibited by 12 U.S.C. § 5221 or any other TARP related statute or regulation; and it appearing

that the relief requested is in the best interests of the Debtors' estate, their creditors, and other

parties-in-interest; it is hereby:

**ORDERED** that the Motion is granted; and it is further

-----

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED** that the Motion is granted; and it is further

**ORDERED** that, pursuant to Bankruptcy Code section 503(c)(2), the severance payments at the statutory cap proposed by the Debtors ($136,042.30) is approved, and the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

**ORDERED** that the severance payments to those in the "Next 75" shall comply with all the restrictions of TARP, and the Debtors are directed to make such revisions as necessary to comply with TARP, including any future determination letter issued by the United States Department of the Treasury's Office of the Special Master; and is further

**ORDERED** that the Chief Business Officer and the Director of Human Resources of Residential Capital, LLC shall provide any requisite certifications to AFI or otherwise that the severance payments to those in the "Next 75" comply with TARP; and it is further

**ORDERED** that the severance payments shall comply with all Federal Reserve Board requirements and all federal and state laws governing compensation, and the Debtors are directed to make revisions as necessary to comply with any future changes to such laws; and is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order; and it is further

**ORDERED** that notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, Residential Capital LLC, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012, by the District Court for the District of Columbia, dated

2

February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent

Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all

related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates; and it

is further

      **ORDERED** that this Court shall retain jurisdiction over all matters arising from or

related to the interpretation and implementation of this Order.

Dated: [        ], 2013
      New York, New York

                                  _____
                                  THE HONORABLE MARTIN GLENN
                                  UNITED STATES BANKRUPTCY JUDGE