**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF MARC D. PUNTUS IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS
TO PARTIALLY SATISFY CERTAIN SECURED CLAIMS**

I, Marc D. Puntus, being duly sworn, hereby depose and say:

1. I am a Partner and co-head of the Restructuring Group at Centerview Partners LLC ("Centerview"), financial advisor to Residential Capital LLC ("ResCap") and the other above-captioned debtors and debtors in possession (collectively, the "Debtors"). I submit this declaration in support of the *Debtors' Motion for Entry of an Order under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Partially Satisfy Certain Secured Claims*, filed contemporaneously herewith (the "Motion").[1]

**A.    Qualifications**

1. I previously have conveyed to the Court my qualifications and Centerview's qualifications in my Declarations in support of the application for Centerview's retention, my Declarations in support of the motions for approval of the Debtors' debtor-in-possession financing facilities and amendments thereto, and my Declaration in support of the Debtors'

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

1

ny-1089035

motion for approval of the Sales [Docket Nos. 20, 1784, and 2137 respectively] (collectively, the "Declarations").

2. Rather than repeat the information contained in the Declarations here, they are incorporated by reference.

### B. Motion to Partially Satisfy Certain Secured Claims

1. The Debtors received approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) in connection with the Sales. The Debtors used this cash to, *inter alia*, pay off in full the AFI DIP Facility and the Barclays DIP Facility, as well as other prepetition facilities, including the Citibank MSR Facility,[2] and the FNMA EAF Facility. As of March 31, 2013, the Debtors have approximately $3.5 billion net cash (excluding restricted cash), of which $1.7 billion[3] in cash constitutes proceeds of the collateral securing AFI Senior Secured Credit Facility and the Junior Secured Notes, plus substantial other assets remaining to be monetized.

2. By the Motion, the Debtors seek authority to partially satisfy the principal portion of the JSN Secured Claims in the amount of $800 million (the "Proposed Payment") to reduce the potential accrual of postpetition interest.

3. In evaluating whether to make the Proposed Payment, the Debtors have considered, among other things, two key facts. First, the Debtors currently are not receiving any meaningful return on the approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) received by the Debtors from the sale of their business platform and legacy loan portfolio. Second, the Junior

---

[2] Citibank has asserted that it is entitled to default interest on account of its claims, and Citibank has reserved all of its rights with respect thereto.
[3] This amount includes the net equity of the borrowers under the Barclays DIP Facility.

2

ny-1089035

Secured Noteholders have represented to the Debtors and the Court that they are oversecured and therefore entitled to the payment of postpetition interest on their prepetition secured debt. While the Junior Secured Noteholders appear to be alone in this belief, they have asserted numerous arguments as to why additional collateral value exists. The Debtors believe these arguments are meritless and that the Junior Secured Noteholders are significantly undersecured.

4. Nonetheless, there is a risk that the Junior Secured Noteholders may prevail in litigation regarding the extent of their secured claim. In the event the Junior Secured Noteholders demonstrate that that they are oversecured and entitled to postpetition interest, such interest will have accrued at a rate of up to 10.625%[4] from the Petition Date to the present. In this instance, the Debtors currently would be incurring an estimated liability of approximately $20 million per month in postpetition interest on the JSN Secured Claims.[5] Each dollar of interest that accrues on the Junior Secured Notes is one less dollar available for distribution to the Debtors' unsecured creditors. Thus, this potential postpetition interest obligation could erode the recoveries to unsecured creditors.

5. Further, because the Junior Secured Noteholders believe that they are entitled to postpetition interest, their asserted secured claim continues to increase, even as the Debtors and other case constituents believe that the Junior Secured Notes are undersecured. This dynamic makes reaching an acceptable settlement more difficult as time passes. Making the Proposed Payment reduces the difference between the parties' respective positions as to the value of the Junior Secured Noteholders' claims and will enhance settlement prospects.

---

[4] The Junior Secured Noteholders have asserted that they are entitled to postpetition interest at the contractual default rate of 10.625%—the non-default rate is 9.625%.

[5] This figure is the product of the current outstanding amount under the Junior Secured Notes of $2.223 billion multiplied by the asserted default interest rate of 10.625%. This amount increases over time due to compounding interest.

3

6. Finally, as detailed in the Motion, the Debtors propose to escrow $800 million for the benefit of Ally Financial, Inc. ("AFI") to secure repayment of the AFI Senior Secured Credit Facility and to continue making interest payments to AFI in accordance with the Original Cash Collateral Order or the Non-Consensual Cash Collateral Order, as applicable. Even after escrowing for repayment of the AFI Senior Secured Credit Facility and making the Proposed Payment, the Debtors believe that the remaining AFI/JSN Cash Collateral and the other non-cash collateral securing the AFI Senior Secured Credit Facility and the Junior Secured Notes[6] will be sufficient to pay all receipts, expenses, and interest allocable to such collateral pursuant to the Original Cash Collateral Order or Non-Consensual Cash Collateral Order, as applicable.

7. For these reasons, the Debtors, in their business judgment, believe that it is in the best interests of their estates and all stakeholders to make the Proposed Payment on account of the JSN Secured Claims prior to either the resolution of the adversary proceedings or the effective date of a plan of reorganization.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of May, 2013.

/s/ Marc D. Puntus
Marc D. Puntus

---

[6] The Debtors continue to hold approximately $900 million (including the net equity of the borrowers under the Barclays DIP Facility) in book value of restricted cash and other non-cash collateral of the AFI Senior Secured Credit Facility and the Junior Secured Notes, including, among other things, mortgage loans, servicer advances, REO properties, and insurance claims with respect to certain federally insured loans, which will be monetized in connection with the wind down of the chapter 11 cases.