MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
                                              )
In re:                                        )    Case No. 12-12020 (MG)
                                              )
RESIDENTIAL CAPITAL, LLC, et al.,             )    Chapter 11
                                              )
                            Debtors.          )    Jointly Administered
                                              )
---------------------------------------------------------

**DEBTORS' OMNIBUS REPLY TO RESPONSES TO**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER TO PERMIT**
**THE DEBTORS TO CONTINUE USING CASH COLLATERAL**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors") submit this reply (the "Reply") to the responses[1] to the *Debtors' Motion for Entry of*

*an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3374] (the

"Motion").[2]  In further support, the Debtors respectfully represent:

---

[1]  The *Ally Financial Inc.'s Limited Objection to Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3623] (the "AFI Objection"); and the *Objection of Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3625] (the "JSN Objection", and together with the AFI Objection, the "Objections").

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

## PRELIMINARY STATEMENT

1.      Having received all of the benefit of the tremendously successful sale process run by the Debtors, the Lenders now seek to disclaim responsibility for (i) any unpaid expenses that accrued prior to the Sales, and, amazingly, (ii) the ongoing expenses necessary to preserve and liquidate their remaining collateral.  The Lenders make this leap based on a misguided reliance on the Section 506(c) waiver provided by the Debtors in the AFI/JSB Cash Collateral Final Order.  However, as was set forth in the Motion and discussed in more detail below, the Debtors need not meet the standard set forth in Section 506(c) in order to be able to use Cash Collateral, nor does the Section 506(c) waiver prevent the Debtors from seeking non-consensual use of Cash Collateral.  Moreover, contrary to the Lenders' assertions, a Section 506(c) waiver does not mean that unsecured creditors must bear the full cost of these Chapter 11 cases, including the costs of disposing of the Lenders' collateral.  Rather, the Section 506(c) waiver merely means that the Debtors are not permitted to surcharge the Lenders for any ***additional*** costs above and beyond the Cash Collateral used in these cases.   If the use of Cash Collateral results in a diminution in the value of the Lenders' collateral, then the Lenders are entitled to an adequate protection claim in the amount of such diminution in value.   Nothing in the AFI/JSB Cash Collateral Final Order and no case suggests that the Lenders' adequate protection claim must be equivalent to the "dollar for-dollar" use of Cash Collateral.  While the Lenders could have negotiated for that in the AFI/JSB Cash Collateral Final Order, such order instead provides that the Lenders' adequate protection claim is "equal to the aggregate diminution in value of the Prepetition Collateral to the extent of their interests therein."  AFI/JSB Cash Collateral Order at 16.

2.      While the Debtors believe that their use of Cash Collateral throughout these cases has benefited the Lenders and, as a result, no diminution in the value of their collateral has

occurred, that question is not before the Court today.  For purposes of the present Motion, all the

Debtors must show is that, in the event the Lenders actually do suffer a diminution in the value

of their collateral, they are adequately protected.  Neither of the Lenders has even attempted to

argue that the New AP Package offered by the Debtors is insufficient to cover any such claim.

As a result, the Debtors are entitled to the continued use of Cash Collateral.

## REPLY

### I.    REPLY TO JSN AND AFI OBJECTIONS

#### A.    The Lenders Are Adequately Protected

3.    There is only one standard for this Court to consider in evaluating the Debtors'

proposed use of Cash Collateral—whether the Lenders' interest in the Cash Collateral will be

adequately protected.  See 11 U.S.C. § 363(e).

4.    None of the Respondents dispute—nor can they—that the New AP Package will

provide the Lenders with sufficient adequate protection.[3]  As explained in the Motion, the

Debtors have provided the Lenders ample adequate protection.  First, the Lenders are adequately

protected by the Debtors' proposed use of Cash Collateral for future expenditures solely to

preserve, or enhance the value of, and liquidate the Lenders' collateral.  Courts have routinely

held that using cash collateral to preserve a lender's collateral is itself a form of adequate

protection.  See e.g., In re Salem Plaza Assocs., 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992);

Hartigan v Pine Lake Vill. Apartment Co. (In re Pine Lake Vill. Apartment Co.), 16 B.R. 750,

756 (Bankr. S.D.N.Y. 1982).

5.    Second, the Lenders are adequately protected by the substantial equity cushion on

the AFI LOC, upon which the Lenders have adequate protection liens.  The equity cushion on the

---

[3] While AFI argues in the AFI Objection that the Debtors should not have changed their adequate protection
package for procedural reasons, AFI does not dispute that the New AP Package is sufficient.

ny-1089617

AFI LOC as of December 31, 2012 is approximately $1.285 billion—that is, the book value of

the collateral over and above the $380 million owed to AFI on the AFI LOC.  As several courts

have held, the presence of an equity cushion is itself a form of adequate protection.  See In re

Realty Sw. Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992).  In addition, the Debtors currently

hold a balance of approximately $750 million in unencumbered cash as of March 31, 2013,

which may be used to satisfy any superpriority administrative expense claims.  Thus, there is

approximately $2 billion in additional value (above and beyond the Lenders' prepetition

collateral) available to satisfy any adequate protection claim by the Lenders.

6.    Third, notwithstanding that the Lenders already are adequately protected by the

proposed use of Cash Collateral and the substantial equity cushion on the AFI Senior Secured

Credit Facility and the AFI LOC, the Debtors also offered the Lenders the New AP Package,

which includes, inter alia, (i) various adequate protection liens, (ii) superpriority administrative

expense claims, (iii) with respect to AFI only, adequate protection payments consisting of

accrued and unpaid prepetition and postpetition interest at the non-default contract rate, and

(iv) with respect to the Junior Secured Noteholders only, adequate protection payments

consisting of trustee fees to UMB Bank, N.A., as successor trustee under the JSN Indenture

pursuant to the terms of the JSN Indenture.[4]

7.    Finally, as to AFI, the Proposed Order provides that the Debtors will reserve

adequate cash to repay the AFI Senior Secured Credit Facility and AFI LOC (the "AFI Reserved

Cash") and will not use such cash without further order of the Court.  In light of the AFI

Reserved Cash, the Debtors are not seeking to use AFI's Cash Collateral and AFI should not

---

[4] The trustee fees were not included in the Proposed Order previously submitted to the Court.  Accordingly, the Debtors have prepared a revised form of the Proposed Order, a copy of which is annexed hereto as Exhibit 1.

4

even have standing to be heard on this matter.  At a minimum, there can be no question that AFI

is adequately protected.

8.      Accordingly, the Debtors submit that the requested use of Cash Collateral and the

protections provided to the Lenders are reasonable, appropriate, and sufficient to satisfy the

requirement that the Lenders receive "adequate protection."

**B.      Section 506(c) Is Inapplicable, and The Debtors' Proposed Use of Cash Collateral Does Not Constitute a Surcharge**

9.      "[S]ections 363 and 506 serve distinct purposes and apply in different

circumstances."  Sec. Leasing Partners, LP v ProAlert, LLC (In re ProAlert, LLC), 314 B.R. 436,

441 (B.A.P. 9th Cir. 2004).  Section 363 allows the debtor to use the secured creditor's cash

collateral on a temporary basis, while ensuring that the creditor ultimately will receive the full

value of its collateral package.  Section 506(c), on the other hand, authorizes a debtor to charge

the secured creditor with the costs of disposing of its collateral so that "the general estate and

unsecured creditors [are not] required to bear the cost of protecting what is not theirs."  In re

Codesco, Inc., 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982).

10.     The Lenders' assertions that the Debtors' proposed use of Cash Collateral

constitutes an impermissible surcharge under Section 506(c) are patently misguided.  "[I]f the

creditor's interest is adequately protected, then, by definition, there is no surcharge and Section

506(c) does not come into play."  In re ProAlert, 314 B.R. at 441.  See also In re Coventry

Commons Assocs., 149 B.R. 109, 114 (Bankr. E.D. Mich. 1992) ("If [creditor's] interest is

adequately protected, then by definition there will be no impairment of [creditor's] interest in the

nature of a surcharge, or of any other nature.").

11.     The fact that the Debtors intend to use Cash Collateral to pay for the Funded

Disposition Costs, which include costs associated with the preservation and disposition of the

5

Lenders' collateral, does not impact this analysis.  As noted above, the Debtors need only

demonstrate that the Lenders have been granted adequate protection in exchange for the use of

Cash Collateral.  <u>See</u> 11 U.S.C. §§ 363(c)(2), (e).  Contrary to the Lenders' assertions, the

Debtors are ***not*** obligated to meet the requirements of Section 506(c) to obtain use of Cash

Collateral.  <u>See</u> <u>In re Coventry Commons Assocs.</u>, 149 B.R. at 114 ("the debtor can use

collateral, even cash collateral, as long as the secured creditor's interest is adequately protected.

The only limitations upon this right are those found in § 363. . . . § 506(c) does not compel a

different conclusion."); <u>In re Gen. Auto Bldg., LLC</u>, 2012 WL 6737741, at *2 (Bankr. D. Or.

Dec. 28, 2012) ("Debtor seeks to pay its appraiser from [the lender's] cash collateral, which is

governed by § 363, not § 506(c).  Section 363 requires adequate protection, not benefit to the

creditor.") (internal citation omitted).  Indeed, adoption of the Lenders' position would require

all debtors to demonstrate that each individual component of the budget satisfied the Section

506(c) requirements—a standard much more onerous than proving adequate protection.

12.      Section 363 provides that the Court may approve the Debtors' use of Cash

Collateral to fund any costs—regardless of whether they relate to the preservation or disposition

of collateral, the operation of the Chapter 11 cases, or otherwise—as long as the Debtors grant

adequate protection to the Lenders to protect them from any diminution in value.  Section 363

does ***not*** purport to limit the Debtors' proposed use once adequate protection has been provided.

While the Lenders have taken particular issue with the Debtors' proposed use of Cash

Collateral—(i) AFI, with respect to the payment of professional fees, indemnification payments

to Ally Bank under the Ally Bank Servicing Agreement, and costs related to servicing rights

remaining in the Debtors' estates (AFI Objection ¶ 33), and (ii) the Junior Secured Noteholders,

with respect to the payment of expenses that accrued prior to the Sales but remain unpaid as of

6

the date hereof, which the Debtors have proposed to pay using Cash Collateral pursuant to the

methodology prescribed in the AFI/JSB Cash Collateral Final Order[5]—if this Court determines

that the Lenders are adequately protected as required by Section 363(e), these concerns are

irrelevant.

13.    The Debtors propose to use approximately $214 million[6] of the Cash Collateral of

the AFI Senior Secured Credit Facility and Junior Secured Noteholders,[7] and in exchange, the

Debtors are providing the Lenders with an adequate protection package worth approximately $2

billion to protect the Lenders against any diminution in the value of their collateral.  The

question of whether the Lenders have suffered an aggregate diminution in the value of their

collateral during these Chapter 11 cases is not before the Court today, but is the subject of the

Debtors' complaint [Docket No. 3592] and will be determined at an appropriate time.  The sole

issue raised by the Motion—whether the Lenders are adequately protected in the event the

Debtors' use of Cash Collateral to pay the Funded Disposition Costs results in a diminution in

the value of the Lenders' collateral—has been answered with a resounding yes.

---

[5] While the Junior Secured Noteholders did not raise this issue in the JSN Objection, they have raised this issue with the Debtors several times this week, and the Debtors believe the Junior Secured Noteholders intend to raise this issue at the hearing on May 14, 2013.

[6] The Debtors also expect to use approximately $13 million of cash held by the Barclays DIP Borrowers (upon which the Lenders have adequate protection and replacement liens) in order to continue to fund certain accrued and unpaid expenses allocated to such entities, as well as costs associated with assets remaining in such entities. While the Lenders have adequate protection and replacement liens on the equity of the Barclays DIP Borrowers, the Lenders do not have liens on the cash or assets held by the Barclays DIP Borrowers, and as a result, the Debtors do not believe they need authority to use such cash pursuant to the Motion.

[7] The Debtors are in the process of closing their month end books for April 2013, and as a result, the Debtors are continuing to refine this number.  The Debtors expect to file an updated Forecast prior to the hearing on May 14, 2013.

7

C.    **Unsecured Creditors Are Not Required to Fund the Full Costs of the Chapter 11 Cases, As Well As the Costs of Disposition of the Lenders' Collateral**

14.    Contrary to the Lenders' assertions (AFI Objection ¶ 24; JSN Objection at 9-10), there is no requirement in the Bankruptcy Code or case law that requires the Debtors to pay for the Funded Disposition Costs, which include the costs associated with the preservation, maintenance, and disposition of the Lenders' collateral, using the estate's unencumbered funds.[8]

15.    The Lenders fabricate this argument by asserting that the Debtors are surcharging them for disposition costs in violation of the Section 506(c) waiver. However, contrary to the Junior Secured Noteholders' assertions, the use of Cash Collateral to pay the Funded Disposition Costs is not—and indeed, there is no such thing as—a "prospective surcharge" under Section 506(c). See JSN Objection at 4. A Section 506(c) surcharge permits a debtor to recoup additional disposition costs at the *end* of the case, and this provision is commonly waived where, as here, the lenders authorize the debtors to use cash collateral to ensure that the lenders are not charged twice for the disposition costs. The concept of a "prospective surcharge" makes no sense—it is simply a use of Cash Collateral, which, as discussed above, is governed by an entirely different standard.

16.    The Lenders also argue that the Debtors must "replenish the cash collateral used to pay administrative expenses on a dollar for dollar basis" and that the Debtors' failure to "repay the Lenders for the use of Cash Collateral, effectively surcharg[es] the Lenders' collateral." JSN Objection at 18; AFI Objection ¶ 23. Contrary to the Lenders' assertions, the use of Cash Collateral is not a loan, and the Debtors are not obligated to "repay" the Lenders for each dollar

---

[8] In support of this proposition, the Junior Secured Noteholders cite only two authorities, which are completely inapposite: (i) In re Flagstaff Food Service Corp., 739 F.2d 73 (2d Cir. 1984), and (ii) *Collier on Bankruptcy* ¶ 506.05 (16th ed. rev. 2012). JSN Objection at 9. Each of these authorities address only what is recoverable under Section 506(c) and are unrelated to the use of cash collateral and the calculation of adequate protection claims, which are the only potential considerations here.

8

of Cash Collateral spent.   Rather, case law suggests that the Debtors should provide the Lenders

with adequate protection that provides dollar for dollar *protection* against any potential

diminution in the value of their collateral.  See In re ProAlert, 314 B.R. at 439.  The Debtors

have met this requirement.

17.    AFI misconstrues several cases in an attempt to find support for the proposition

that the Debtors must repay the Lenders, on a dollar for dollar basis, for the use of Cash

Collateral.  First, AFI quotes from In re Harbour E. Dev., Ltd., 2011 WL 6097063, at *4 (Bankr.

S.D. Fla. Dec. 6, 2011) for the proposition that "use of cash collateral requires dollar-for-dollar

adequate protection in the form of new collateral."  AFI Objection ¶ 28.  As an initial matter, the

quote cited by AFI is from a parenthetical that the court prepared to describe the case of Desert

Fire Prot. v. Fontainebleau Las Vegas Holdings, LLC (In re Fontainebleau Las Vegas Holdings,

LLC), 434 B.R. 716, 727 (S.D. Fla. 2010).  By putting this language in quotes, AFI would have

the Court believe that this was a finding made by the Fontainebleau court which it was not; in

fact, the court in Harbour recognized that a lender is entitled to "dollar-for-dollar *protection* from

the diminishment in its cash collateral" and says nothing about a requirement that the debtor

repay, on a dollar-for-dollar basis, the cash used to fund the Chapter 11 cases.  2011 WL

6097063, at *4 (emphasis added).  Putting aside the questionable tactic of quoting a parenthetical

as if it were a legal conclusion, the Harbour court's characterization of the Fontainebleau

decision is incorrect as the page cited in Harbour references certain arguments made by secured

lenders on appeal and is not a conclusion, holding or finding of the court.   As in Harbour, the

court in Fontainebleau says nothing of a requirement that the funds used to pay administrative

expenses be replenished on a dollar for dollar basis in order to adequately protect the Junior

Secured Noteholders or AFI.  AFI similarly misconstrues the ProAlert case, which provides that

9

"the Debtor must replenish any funds used for payments to the two professionals no later than December 31, 2002, on a dollar for dollar basis."  In <u>ProAlert</u>, it is clear that these payments are adequate protection payments that were prescribed by the cash collateral order, and not payments that need to be made by all debtors in all cases.

18.    In contrast, the AFI/JSB Cash Collateral Final Order does not prescribe a dollar for dollar replenishment of Cash Collateral used as a form of adequate protection.  Rather, the AFI/JSB Cash Collateral Final Order provides that the Lenders would receive "adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to the ***aggregate diminution in value*** of the Prepetition Collateral to the extent of their interests therein, including any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral, the priming of the AFI Lenders' liens on the AFI LOC Collateral by the Carve Out and AFI DIP Loan, and the automatic stay pursuant to section 362 of the Bankruptcy Code . . ." AFI/JSB Cash Collateral Final Order ¶ 16.  As discussed above, the Debtors have already provided the Lenders with adequate protection in an amount significantly greater than any potential diminution in value.  Moreover, the relevant inquiry here is whether the Lenders suffered an ***aggregate diminution*** in the value of their collateral during the pendency of the Chapter 11 cases.  In no instance will the Debtors be required to "repay" to the Lenders the amount of Cash Collateral used absent a finding that the Lenders' collateral decreased in value in the aggregate as a result of such use.

19.    While not before the Court in this Motion, in making any such diminution in value determination, the Lenders fail to recognize that, in the sale context, the value of their secured claim must be determined based on the net proceeds realized on such collateral.  <u>See</u> 11

U.S.C. § 506(a) ("[a]n allowed claim of a creditor secured by a lien on property in which the

estate has an interest . . . is a secured claim **to the extent of the value of such creditor's interest**

in the estate's interest in such property . . .."Such value shall be determined in light of the

purpose of the valuation and of the proposed disposition or use of such property . . .") (emphasis

added).  Accordingly, any funds spent that were necessary to liquidate the collateral must

necessarily be taken into account in determining a diminution in value claim, and the Debtors

need not replace each dollar of Cash Collateral used.  See In re Wrobel, 2007 WL 7230978, at *2

(Bankr. S.D. Cal. Aug. 3, 2007) ("It is clear that commissions and costs come off the top of

revenues generated by a sale, whether a voluntary sale by the debtor or one occasioned by a

foreclosing creditor.  In either instance, in calculating adequate protection of a lienholder, those

expenses should be considered."); La Jolla Mortg. Fund v. Rancho El Cajon Assocs., 18 B.R.

283, 289 (Bankr. S.D. Cal. 1982) (in valuing the collateral to determine whether there was an

equity cushion sufficient to provide adequate protection, the court reduced the value of the

property "by an amount sufficient to cover the usual costs of foreclosure and sale."); Matter of

Keystone Camera Prods. Corp., 126 B.R. 177, 184 (Bankr. D.N.J. 1991) (holding that "the value

ascribed to collateral . . . should be the value that the secured creditor is likely to realize if it

obtained possession of the collateral and moved forward with a commercially reasonable

liquidation under commercially practical and reasonable circumstances.").

> **D.    The Debtors' Proposed Use of Cash Collateral, And the Debtors'
> Suggestion that They May Return the Collateral to the Lenders,
> Is Consistent with the Debtors' Fiduciary Duties**

20.    The Debtors agree with the Lenders' assertions that the Debtors owe fiduciary

duties to their entire estates and must preserve property of the estates for all stakeholders.  See

AFI Objection ¶ 29-31; JSN Objection at 8-9.  See e.g., In re MF Global Holdings, Ltd., 2011

WL 6210374, at *3 (Bankr. S.D.N.Y. Dec. 14, 2011) ("The Chapter 11 Trustee must operate the

Debtors' estate with the goal of maximizing the recovery of all creditors."); <u>Pereira v. Foong (In re Ngan Gung Rest.)</u>, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) ("A trustee also owes a fiduciary duty to each creditor of the estate.").[9]

21.    Indeed, the Debtors are acutely focused on fulfilling their fiduciary duties to all creditors of the estates, including secured creditors.  For example, the Debtors recently made a significant effort to monetize certain of the Lenders' collateral, the FHA Loans, for the highest possible value.  In January 2013, the Debtors established procedures to sell approximately $130 million of their FHA Loans.  Based on the bids received, the Debtors believed that preserving the FHA Loans and monetizing them in the normal course would maximize their value.[10]

22.    The Debtors, however, strongly disagree with the Lenders' assertions that it is in the best interest of the Debtors' estates to use unencumbered cash to preserve and maintain the value of the Lenders' collateral (AFI Objection ¶ 31; JSN Objection at 11), particularly where, as here, the Debtors believe the Junior Secured Noteholders are undersecured.  <u>See e.g.</u>, <u>Grochocinski v. Laredo (In re Laredo)</u>, 334 B.R. 401, 414 (Bankr. N.D. Ill. 2005) (holding that "proof that a debtor lacks equity in property establishes a prima facie case that the property is of inconsequential value and benefit to the estate and should be abandoned") (citing <u>In re Paolella</u>, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987)); <u>McGahren v. First Citizens Bank & Trust Co. (In re Weiss)</u>, 111 F.3d 1159, 1168 (4th Cir. 1997) (affirming the district court's and bankruptcy

---

[9] The Debtors are not, by this Motion, proposing to abandon the Lenders' collateral.  The Debtors merely propose that, in the event the Debtors determine in their business judgment that the continued preservation, maintenance and disposition of the Lenders' collateral will not maximize value for the Debtors' estates and creditors, the Debtors may file a motion with this Court seeking to return certain collateral to the Lenders, including the FHA Loan collateral, so the Lenders can liquidate the collateral themselves.

[10] Typically, the FHA Loans would monetize over a period of approximately 30-36 months.  Because these loans are governmentally insured, the Debtors believe that their value is relatively stable, and the Debtors believe they likely would realize close to the carry value on the FHA Loans over time if monetized by the Debtors in the ordinary course.  <u>See</u> Declaration of Marc D. Puntus in Support of the Debtors' FHA Loan Sale [Docket No. 2545].

ny-1089617

court's determination that abandonment of the asset was proper where "the property's liens exceeded its value and that the property therefore was of inconsequential value to the estate.").

23.    The Lenders propose—contrary to common sense—that the unsecured creditors will benefit if the Debtors use unencumbered funds (i.e., real dollars) to enhance the value of the unsold collateral in order to decrease the Junior Secured Noteholders' deficiency claim (i.e., bankruptcy dollars). This is simply not true. Any dilution suffered by the unsecured creditors on account of the Junior Secured Noteholders' increased deficiency claims will be much less significant than the Debtors' expenditure of millions of dollars for the preservation of assets that will in no way benefit the majority of the creditors. As a result, to the extent the Debtors no longer have the ability to use Cash Collateral to pay the Funded Disposition Costs, the Debtors may seek to return the collateral to the Lender pursuant to a separate motion. In such circumstances, having prevented the Debtors from using Cash Collateral to fund the disposition of such assets, the Lenders will be free to argue at that time that any proposed abandonment of collateral is inconsistent with the Debtors' fiduciary duties or other applicable law.

24.    For the reasons stated above, the Debtors submit that the proposed use of Cash Collateral is in the best interests of their estates and creditors. See Matter of Senior G&A Operating Co., Inc., 957 F.2d 1290, 1298 (5th Cir. 1992) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs.") (quoting In re Codesco, Inc., 18 B.R. 225).[11]

---

[11] In their objection, the Junior Secured Noteholders fabricate discovery disputes for no apparent reason other than to disparage the Debtors, particularly given the limited (if any) evidentiary issues raised by the Motion. Specifically, they assert that the Debtors failed to comply with the discovery deadlines set forth in the *Fifth Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3534]. The Debtors were, however, in substantial compliance with the discovery deadlines. The Debtors provided the Lenders with a multitude of documents in response to their discovery requests, and have timely responded to several of the Junior Secured Noteholders' follow up discovery requests. The Debtors additionally facilitated direct discussions between their financial advisors and

ny-1089617

## II.    ADDITIONAL REPLY TO AFI'S OBJECTION

### A.    The Debtors Do Not Seek to Amend the AFI/JSB Cash Collateral Final Order

25.    The Debtors believe that the Motion, which requests entry of a new cash collateral order, was procedurally proper.  Contrary to the assertion raised by AFI, the Court may enter the Proposed Order without being required to undertake an analysis under Federal Rule of Civil Procedure 60(b).  See Fed. R. Bankr. P. 9024 (applying Fed. R. Civ. P. 60 to cases under the Bankruptcy Code).  Through the Motion, the Debtors request entry of an entirely new order that permits the Debtors to use Cash Collateral on a nonconsensual basis and grants the Lenders a New AP Package.  The relief requested in the Motion is vastly different from the relief granted in the consensual AFI/JSB Cash Collateral Final Order.

26.    The Lenders and the Debtors have already entered into a stipulation that provides for the termination of the AFI/JSB Cash Collateral Final Order effective as of May 14, 2013.[12]

See Fifth Stipulation and Order Amending the AFI DIP and Cash Collateral Order [Docket No.

---

the financial advisors for the Junior Secured Noteholders to respond to questions raised by the Junior Secured Noteholders and explain the data provided to them in discovery.  The Debtors also offered their two witnesses for depositions within the designated time period; however, the deposition of Jill Horner, originally scheduled for April 30, 2013, needed to be rescheduled to May 8, 2013 because Ms. Horner suffered an injury and was unable to travel on the date originally scheduled.  The Debtors learned of Ms. Horner's injury on Sunday, April 28, 2013 and advised the Junior Secured Noteholders that same day.  No objection to the rescheduling of the deposition was ever raised.  The Debtors offered Ms. Horner for deposition on May 7, 2013 after the exclusivity hearing before this Court, but the Junior Secured Noteholders instead opted to take Ms. Horner's deposition on May 8, 2013.  The deposition of Marc D. Puntus was originally scheduled for Thursday, May 2nd but was rescheduled due to a mediation session scheduled for that day by Judge Peck.  The Debtors offered Mr. Puntus on Friday afternoon, May 3, 2013. The Junior Secured Noteholders instead elected to take the deposition on Monday, May 6, 2013 (and the deposition did, in fact, take less than 3 hours).  Prior to the filing of the JSN Objection, the Junior Secured Noteholders did not raise any issues with the Debtors related to their compliance with the discovery schedule, did not object to the rescheduled deposition of Ms. Horner or request an alternate witness, and did not seek this Court's assistance in facilitating their discovery efforts.  At any rate, the Debtors believe (and understand that the other parties agree) that there should be no evidentiary issues if the Debtors are correct as to the proper standard to be applied. In the event another standard must be applied, there could be limited evidentiary issues in need of resolution.

[12] The Debtors were in danger of breaching a covenant related to the deadline for an effective plan of reorganization, which was required to occur by December 15, 2012.  See AFI/JSB Cash Collateral Final Order ¶ 18(ix).  Since that date, the Lenders and the Debtors have been entering into stipulations to permit the use of Cash Collateral on a consensual basis on an approximately month-by-month basis.

14

3534].  AFI's assertion that "the Debtors did not reserve their right to seek Court approval for the

continued use of Cash Collateral after a "Termination Event" (as defined in the AFI/JSB Final

Cash Collateral Order)" (AFI Objection ¶ 15) is incorrect and belied by the express provisions of

the AFI/JSB Final Cash Collateral Order.  Paragraph 24 of the AFI/JSB Final Cash Collateral

Order provides that

> [n]othing in this Final Order shall be deemed to waive, modify or
> otherwise impair the respective rights of the Debtors under the Existing
> Agreements, and the Debtors expressly reserve all rights and remedies that
> each has now or may have in the future under the Existing Agreements
> and/or *applicable law* (subject to paragraphs 5 and 27).

AFI/JSB Final Cash Collateral Order ¶ 24 (emphasis added).  This paragraph expressly preserves

the Debtors' ability to seek remedies under "applicable law," which they seek to do here

pursuant to Section 363.  See 11 U.S.C. §§ 363(c)(2), (e) (permitting the Debtors seek entry of an

order authorizing the use of Cash Collateral on a nonconsensual basis so long as the Lenders are

adequately protected).

28.  Similarly, AFI's assertion that the Proposed Order impacts the rights and

remedies granted to them under the AFI/JSB Cash Collateral Final Order is inaccurate.  The

Debtors intend for the Original AP Package to govern the Lenders' rights with respect to Cash

Collateral used by the Debtors in accordance with the AFI/JSB Cash Collateral Final Order, and

for the New AP Package to govern the Lenders' rights under the Proposed Order on a going

forward basis.

28.  Simply, the Debtors are requesting entry of the Proposed Order pursuant to

Bankruptcy Rule 4001 and Local Rule 4001(b)(1) to grant the Debtors authority to use Cash

Collateral on a nonconsensual basis—relief separate and apart from the relief granted under the

AFI/JSB Cash Collateral Final Order.  See Fed. R. Bankr. P. 4001(b)(1)(A) ("A motion for

authority to use cash collateral shall be made in accordance with Rule 9014 and shall be

15

accompanied by a proposed form of order."). Thus, the objections raised by AFI on this ground

should be overruled.[13]

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court overrule the Objections

and grant the relief requested in the revised Proposed Order, a copy of which is annexed hereto

as Exhibit 1, and grant such other and further relief as is just and proper.

New York, New York                     /s/ Gary S. Lee
Dated: May 10, 2013                    Gary S. Lee
                                       Todd M. Goren
                                       Samantha Martin
                                       MORRISON & FOERSTER LLP
                                       1290 Avenue of the Americas
                                       New York, New York 10104
                                       Telephone: (212) 468-8000
                                       Facsimile: (212) 468-7900

                                       *Counsel to the Debtors and*
                                        *Debtors in Possession*

---

[13] However, to the extent the Court deems the Motion a request for entry of an amendment to the existing AFI/JSB Cash Collateral Final Order (as such order has been amended, and the effectiveness of which has been extended pursuant to the AFI/JSB Cash Collateral Stipulations), the Debtors submit that the standard under Fed. R. Civ. P. 60(b) has been satisfied. See Rupert v. Krautheimer (In re Krautheimer), 210 B.R. 37, 43 (Bankr. S.D.N.Y. 1997) (holding that a movant under Rule 60(b)(6) must show "extraordinary circumstances justifying relief" or "extreme and undue hardship") (citing Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986)). Here, there clearly have been "extraordinary circumstances" justifying a modification of the AFI/JSB Cash Collateral Order—the Lenders now refuse to consent to the continued use of Cash Collateral during the remainder of the Chapter 11 cases. Whether referred to as an entirely new Proposed Order (which it is) or a modification of the existing order under Rule 60(b), the Lenders' position in these Chapter 11 cases have changed and the Debtors are compelled to seek authorization to use Cash Collateral on a nonconsensual basis.

ny-1089617

**<u>EXHIBIT 1</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### ORDER AUTHORIZING
### THE DEBTORS TO CONTINUE USING CASH COLLATERAL

Upon the motion (the "***Motion***"),[1] dated April 8, 2013, of the above-captioned debtors

and debtors in possession (collectively, the "***Debtors***") filed in these chapter 11 cases (the

"***Chapter 11 Cases***") for entry an order under sections 105, 361, 362, and 363(c) of title 11 of the

United States Code (the "***Bankruptcy Code***"), and Rules 2002, 4001, 6004, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking that the Court:

(i) authorize the Debtors to continuing using Cash Collateral (as defined herein) as set forth

herein, and (ii) provide adequate protection in the form of the New AP Package to (a) AFI, in its

capacity as lender under the AFI Senior Secured Credit Facility, (b) AFI, in its capacity as lender

under the AFI LOC, and (c) the Junior Secured Noteholders, each effective as of May 15, 2013

(collectively, the "***Lenders***" or the "***Adequate Protection Parties***").

**WHEREAS**, on May 16, 2012, the Court entered the *Interim Order Under Sections 105,*

*361, 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and*

*9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority*

*Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection*

*to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting*

*Time for the Final Hearing* [Docket No. 89]**;**

---

[1]   Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

**WHEREAS**, on June 25, 2012, the Court entered the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491] (the "***Original Final Order***");

**WHEREAS**, on December 20, 2012, the Court entered the *Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2495];

**WHEREAS**, on February 15, 2013, the Court entered the *Second Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2927];

**WHEREAS**, on March 18, 2013, the Court entered the *Third Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3230];

**WHEREAS**, on April 17, 2013, the Court entered the *Fourth Stipulation and Order Amending the AFI DIP Cash Collateral Order* [Docket No. 3458];

**WHEREAS**, on April 26, 2013, the Court entered the *Fifth Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3534];

**WHEREAS**, the hearing was held by the Court on May 14, 2013 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing");

**NOW THEREFORE**, upon the record established at the Hearing, and all objections to the entry of this Order having been withdrawn, resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

ny-1090069

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Petition Date.*  On May 14, 2012 (the "***Petition Date***"), each of the Debtors filed separate voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing the Chapter 11 Cases.

2.      *Debtors-in-Possession.*  The Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee has been appointed in these cases.  On May 16, 2012, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "***Committee***") in these Chapter 11 Cases.  On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez, Esq., as examiner, and on March 5, 2013, the Court authorized the appointment of Lewis Kruger, Esq., as Chief Restructuring Officer of the Debtors.

3.      *Jurisdiction.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Notice.*  Notice of the Motion, the relief requested therein was given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) Ally Financial Inc. and its counsel, Kirkland & Ellis LLP; (h) Ally Bank and its counsel, Kirkland & Ellis LLP; (i) UMB Bank, N.A., as successor indenture trustee for the Junior Secured Notes (the "***Trustee***"), and its counsel, Kelley Drye & Warren LLP; (j) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the

3

AFI Senior Secured Credit Facility, and as collateral control agent under the Intercreditor Agreement, dated as June 6, 2008 (the "***Collateral Agent***"); (k) counsel to the Ad Hoc Group of Junior Secured Notes, White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP; (l) counsel for the Committee*,* Kramer Levin, Naftalis & Frankel LLP; and (m) the parties required to be served under the Debtors' Case Management Procedures Order (collectively, the "***Notice Parties***").  The Court finds that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

   5.  *Certain Findings Regarding the Use of Cash Collateral*.

   (a)  Good cause has been shown for entry of this Order.  The Debtors have an immediate need for the use of Cash Collateral to pay for the Funded Disposition Costs (as defined below).  Absent such payments, which are necessary to preserve the value of the remaining Prepetition Collateral (as defined herein) of the Adequate Protection Parties, the Debtors' assets will quickly erode to the detriment of the Debtors' estates and constituents, including the Adequate Protection Parties.  The use of Cash Collateral, will, therefore, help preserve and enhance the value of the Adequate Protection Parties' Prepetition Collateral and will increase the prospects for the successful resolution of the Chapter 11 Cases by maximizing the value of the Prepetition Collateral.

   (b)  The Adequate Protection Parties are adequately protected from a diminution in the value of their Prepetition Collateral by the Debtors' use of Cash Collateral to pay the ongoing Funded Disposition Costs (as defined herein) in order to preserve, maintain, and dispose of the Adequate Protection Parties' Prepetition Collateral.

   (c)  Based on the record established in the Court at the Hearing, the terms of the Debtors' use of Cash Collateral, the expense allocation methodology, and the Forecast are

fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties. Entry of this Order is in the best interests of the Debtors' estates and creditors.

6. *Cash Collateral.* The Debtors' cash and cash equivalents on deposit or maintained in any account or accounts by the Debtors that is subject to a perfected security interest in favor of AFI or the Junior Secured Parties[2] and cash and cash equivalents generated by the collection of accounts receivable, sale of inventory, or other disposition of the Prepetition Collateral[3] constitute proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (collectively, and together with all cash and cash equivalents otherwise constituting Prepetition Collateral, the "***Cash Collateral***").

7. *Authorization of Use of Cash Collateral.* Except as otherwise expressly provided herein, Cash Collateral may be used during the period from May 1, 2013 through and including the Termination Date (as defined in paragraph 12 below) on the following terms for the types of expenses set forth in the Forecast and the Horner Declaration:

    (a)    The Cash Collateral securing each of the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes, shall be used to fund (i) the asset monetization/preservation costs related to the assets of each of the respective collateral pools (including an allocated portion of the professionals' fees and operating expenses related thereto),[4] (ii) any and all accrued and unpaid amounts

---

[2]    The "***Junior Secured Parties***" means the Junior Secured Noteholders, the Trustee, and the Collateral Agent.

[3]    The "***Prepetition Collateral***" includes the personal and real property constituting "Collateral" under, and as defined in, the documents governing the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes.

[4]    Consistent with past practice, the costs are allocated based on the remaining assets of each of the respective collateral pools (based on the asset values within each collateral pool, excluding cash).

payable with Cash Collateral in accordance with the budgeting methodology used in the Original Final Order, which accrued prior to the closing of the Platform Sale but have not yet been paid, (iii) the Carve Out,[5] as defined in and in accordance with the allocation among the Lenders as provided in paragraph 16 of the Original Final Order, and (iv) the Adequate Protection Payments to AFI, in its capacity as lender under each of the AFI LOC and the AFI Senior Secured Credit Facility;

(b)     The Cash Collateral securing the AFI Senior Secured Credit Facility shall also be used to fund (i) the wind down costs of the origination pipeline, (ii) the costs related to Debtor Executive Trustee Services, LLC ("***ETS***") (both of which comprise collateral of the AFI Senior Secured Credit Facility and Junior Secured Notes), and (iii) advance obligations with respect to servicing agreements remaining the estate following the closing the Sales;[6] and

(c)     The Cash Collateral securing the AFI LOC shall also be used to fund (i) indemnification payments to Ally Bank under the Ally Bank Servicing Agreement, with respect to modifications to Ally Bank loans made in accordance with the DOJ/AG Settlement, and (ii) any costs to service any servicing rights remaining the estate following the closing of the Sales; and

---

[5]   For purposes hereof, the "***Carve Out***" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the continuance of a Termination Event hereunder, and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors (the "***Carve Out Notice***"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid fees and expenses incurred by the professionals retained in the Chapter 11 Cases and reimbursement of out-of-pocket expenses of the members of any official committee appointed in the Chapter 11 Cases, including the Creditors' Committee (collectively, the "***Professional Fees***") incurred by persons or firms whose retention is approved pursuant to sections 327 and 1103 of the Bankruptcy Code after the Business Day following delivery of the Carve Out Notice and allowed by the Court, in an aggregate amount not exceeding $25 million (the "***Carve Out Cap***") (plus all unpaid Professional Fees allowed by the Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Adequate Protection Parties, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtors' estates.

[6]   Specifically, the Debtors will use Cash Collateral of the AFI Senior Secured Credit Facility to fund advances that were previously funded by such facility. All other remaining advance obligations shall be funded with the cash remaining in the DIP Borrowers (including the proceeds of any advances not purchased at the closing of the sales), as such advances were previously funded with the Barclays DIP Facility (as defined herein).

(Items (a), (b) and (c) collectively are referred to as the "Funded Disposition Costs").

Payment of the Funded Disposition Costs as set forth in the Forecast is authorized and approved under this Order.  The Cash Collateral will not be used to pay the Debtors' operating expenses or professionals' fees (other than the Funded Disposition Costs), as such expenses will be funded by the use of unencumbered cash.  The Debtors shall not use Cash Collateral and other Prepetition Collateral at any time, except as set forth in this Order.

8.    *Reporting.*  In lieu of the reporting requirements set forth in the Original Final Order, the Debtors shall provide the Lenders and the Committee with a 6-month monthly forecast for the following 6-month period (each, a "***Forecast***"), and a monthly variance report for each prior month setting forth for such one-month period actual results, noting therein aggregate variances from amounts set forth for the one-month period in the relevant Forecast.  In addition, the Debtors shall provide the Lenders and the Committee with a collateral report that reflects updated values as of the end of the prior calendar month (each such revised report, for the period of its applicability, to be referred to herein as the "***Collateral Report***"). Thereafter, promptly following request by AFI, the Committee, or the Trustee, the Debtors shall make themselves reasonably available to discuss such Forecast, the Collateral Report, and the details thereof.

9.    *Adequate Protection.*  As additional adequate protection for the aggregate diminution in value of the Prepetition Collateral to the extent of the Adequate Protection Parties' interests therein (the amount of such diminution in value, if any, the "***Adequate Protection Obligations***"), the Adequate Protection Parties are granted the following:

(a)    AFI, in its capacity as lender under the AFI LOC, shall receive:

(i)    as security for the Adequate Protection Obligations, effective and perfected upon the Petition Date and without the necessity of the execution by the

7

Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by AFI of any collateral, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens (the "***Adequate Protection Liens***") on all of the collateral securing the AFI LOC and any additional collateral purchased, funded, or financed through the use of Cash Collateral of the AFI LOC.  The Adequate Protection Liens shall be (i) senior to the (A) existing liens granted to AFI under the AFI LOC, (B) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility, and (C) Adequate Protection Liens granted to the Junior Secured Parties, and (ii)  junior to the Carve Out;

(ii)    superpriority administrative expense claims as and to the extent provided in section 507(b) of the Bankruptcy Code  (a "***507(b) Claim***"), which 507(b) Claims shall be (x) senior to the 507(b) Claims granted to the Junior Secured Parties, and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI Senior Secured Credit Facility; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to AFI from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their Prepetition Collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the AFI LOC or the AFI Senior Secured Credit Facility; and

8

(iii)    adequate protection payments ("***Adequate Protection Payments***") consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI LOC (the foregoing to include all unpaid prepetition interest); and

(b)    AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, shall receive:

(i)    Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility and any additional collateral purchased, funded, or financed through the use of AFI Senior Secured Credit Facility Cash Collateral, which shall be (x) junior only to the existing liens granted to AFI under the AFI Senior Secured Credit Facility, and (y) senior to (A) the existing liens granted to the Junior Secured Parties, and (B) Adequate Protection Liens granted to the Junior Secured Parties;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be (x) junior to the (A) existing liens granted to AFI under the AFI LOC, and (B) Adequate Protection Liens granted to AFI under the AFI LOC, and (y) senior to the Adequate Protection Liens granted to the Junior Secured Parties on the collateral securing the AFI LOC as set forth below;

(iii)    507(b) Claims that are (x) senior to the 507(b) Claims granted to the Junior Secured Parties and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI LOC (but senior to the claims referred to in this clause (y) to the extent relating to Cash Collateral that is used to fund GNMA Buyouts);

9

(iv)    Additional Adequate Protection Liens on all of the equity of GMACM Borrower and RFC Borrower (each as defined in the Barclays DIP Facility[7] and collectively referred to herein as the "**Barclays DIP Borrowers**"), which shall be senior to the Adequate Protection Liens granted to the Junior Secured Parties on the equity of the Barclays DIP Borrowers; *provided* that the Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Adequate Protection Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order[8]) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order); and

(v)    Adequate Protection Payments consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the nondefault rate set forth in the AFI Senior Secured Credit Facility (the foregoing to include all unpaid prepetition interest); and

(c)    the Junior Secured Parties shall receive:

---

[7]  The "**Barclays DIP Facility**" means that certain postpetition senior secured superpriority financing facility provided by Barclays Bank PLC to the Debtors pursuant to the Barclays DIP Order.

[8]  The "**Barclays DIP Order**" means the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, and (II) Granting Related Relief [Docket No. 490].

(i)    Adequate Protection Liens on all of the collateral securing the AFI

Senior Secured Credit Facility, which shall be junior to the (x) existing liens

granted to AFI under the AFI Senior Secured Credit Facility, (y) Adequate

Protection Liens granted to AFI in its capacity as lender under the AFI Senior

Secured Credit Facility and (z) existing liens granted to the Junior Secured

Parties, *provided* that the enforcement of the Adequate Protection Liens shall be

subject to, in all respects, the Intercreditor Agreement;

(ii)    additional Adequate Protection Liens on all of the collateral

securing the AFI LOC, which shall be junior to all existing liens and Adequate

Protection Liens granted to AFI (on both the AFI LOC and the AFI Senior

Secured Credit Facility);

(iii)    additional Adequate Protection Liens on all of the equity interests

of the Barclays DIP Borrowers, which shall be junior to the Adequate Protection

Liens granted to AFI , in its capacity as lender under the AFI Senior Secured

Credit Facility, on the equity of the Barclays DIP Borrowers; *provided* that such

Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only

be to the extent that the Junior Secured Parties were secured by valid liens on

(a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or

any residual value therefrom and/or (b) the residual value of the Initial Purchased

Assets Securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP

Order) through valid liens on the equity interests of the entities owning the equity

interests of the owners of such Initial Purchased Assets (as defined in the Barclays

DIP Order);

(iv)    to the extent the Adequate Protection Liens are insufficient to provide adequate protection, 507(b) Claims against each Debtor that are junior to all 507(b) Claims granted to AFI but *pari passu* with any and all other 507(b) Claims; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to the Junior Secured Parties from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the Junior Secured Notes Documents; and

(v)    Adequate Protection Payments consisting of current payment of the fees due to the Trustee pursuant to the JSN Indenture, <u>provided</u>, <u>however</u>, that the Adequate Protection Payments shall not include any fees or expenses for any of the professionals representing any of the Trustee, the Collateral Agent, or the Junior Secured Noteholders; and

(d)    All 507(b) Claims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code.

10.    *Additional Adequate Protection.*

(a)    Covenants:  As additional adequate protection, the Debtors shall maintain (x) their cash management system and (y) the treatment of any and all claims on account of postpetition distributions and transfers by the Debtors to any affiliated Debtor, in each case, in a manner consistent with such arrangements and treatment described in the Final Cash Management Order, without further modification thereto;

(b)    <u>Reporting</u>:  As further adequate protection hereunder, the Debtors shall

comply with the reporting requirements set forth in paragraph 0; and

(c)    <u>AFI Reserved Cash</u>:  The Debtors shall not use the cash reserved to repay

the AFI Senior Secured Credit Facility or the AFI LOC without further order of this Court.

11.    *Exercise of Rights and Remedies against Deposit Accounts*.  Notwithstanding

anything to the contrary contained in any instrument or agreement to which any Debtor is party

or subject, or in any order entered by the Court, no Person (as defined by the Bankruptcy Code)

that holds or has a lien or other security interest on any demand deposit or other accounts of a

Debtor may exercise any rights or remedies against any such account (including by way of set

off), whether pursuant to an account control agreement or otherwise, without first providing

seven (7) days' written notice (by facsimile electronic mail, overnight mail or hand delivery) to

the U.S. Trustee, counsel to the Debtors, counsel to the Committee, counsel to AFI, and counsel

to the Junior Secured Noteholders (the "***Account Notice Parties***").  AFI hereby acknowledges

and stipulates that its liens on any demand deposit or other account, whether such lien arises

under a prepetition control agreement or under this Order, attach only to the proceeds of its

collateral, and such liens do not attach to amounts on deposit in any such account to the extent

such amount constitutes the proceeds of any other Person's collateral or property that was

unencumbered prior to its being deposited in such an account.  In the event any Person asserts

the occurrence and continuance of a default or an event of default and the right to exercise

remedies with respect to such an account, the Debtors within three (3) days will prepare and

serve on the Account Notice Parties a detailed accounting of each Person's interest in the

amounts on deposit in such account.  All parties rights to review and object to such accounting

are hereby preserved.  Each Account Notice Party shall serve on the others a notice of objections

13

with respect to such accounting within five (5) days following service thereof. Any unresolved disputes with the Debtors' accounting shall be determined by the Court at a hearing to be held on not less than fifteen (15) days' written notice to the Account Notice Parties.  All amounts in dispute shall remain on deposit in such account pending Court order.  No commingling of amounts on deposit in any such account shall in any way adversely affect, detract from, or otherwise impair the perfection of any Person's lien on such proceeds.

12.    *Termination.*  The Debtors' right to use Prepetition Collateral, including Cash Collateral, pursuant to this Order shall automatically terminate (the date of any such termination, the "***Termination Date***") upon the earlier of (i) the effective date of a chapter 11 plan for any Debtor, without further notice or order of the Court, or (ii) the date upon which one of the Lenders obtains a Court order providing for the termination of the further use of Cash Collateral.

13.    *Perfection of Adequate Protection Liens.*  The Adequate Protection Parties are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

14.    *No Limitation on Charging Expenses Against Prepetition Collateral.*  The use of Cash Collateral in accordance with this Order or the Original Final Order does not constitute a

charge against or recovery from the Prepetition Collateral or Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law.

15.    *Preservation of Rights Granted Under the Order*. The provisions of this Order shall survive, and shall not be modified, impaired or discharged by, entry of any order which may be entered confirming any plan of reorganization in the Chapter 11 Cases, converting any of the Chapter 11 Cases to cases under Chapter 7, or dismissing any of the Chapter 11 Cases. Notwithstanding anything contained in this paragraph, nothing in this Order shall limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt.

16.    *Reservation of Rights.* Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (ii) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (collectively, the "***Consent Obligations***"); and (iv) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

17.    *Binding Effect; Successors and Assigns.*  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Adequate Protection Parties, the Committee and the Debtors and their respective successors and assigns (including the examiner, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, or any other fiduciary appointed as a legal

representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Adequate Protection Parties and the Debtors and their respective successors and assigns,.

18.     *No Impact on Certain Contracts/ Transactions.*   No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

19.     *Recharacterization of Payments.* Notwithstanding anything else herein, to the extent the Adequate Protection Parties' respective Prepetition Obligations are determined by this Court to be undersecured or invalid, any party in interest may seek, subject to further order of the Court, to recharacterize Adequate Protection Payments and any other postpetition payment of interest and/or fees to the applicable Adequate Protection Parties as payments of the principal of the applicable Prepetition Obligations.

20.     *Effectiveness.*   This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to April 19, 2013 immediately upon the entry hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Order.

16

21. *Objections Overruled.* Any objection that has not been withdrawn or resolved is,

to the extent not resolved, hereby overruled.

Dated: _____ __, 2013
      New York, New York

                           _____
                           UNITED STATES BANKRUPTCY JUDGE

ny-1090069

**Blackline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**ORDER AUTHORIZING**
**THE DEBTORS TO CONTINUE USING CASH COLLATERAL**

Upon the motion (the **"Motion"**),[1] dated April 8, 2013, of the above-captioned debtors and debtors in possession (collectively, the **"Debtors"**) filed in these chapter 11 cases (the "**Chapter 11 Cases**") for entry an order under sections 105, 361, 362, and 363(c) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking that the Court: (i) authorize the Debtors to continuing using Cash Collateral (as defined herein) as set forth herein, and (ii) provide adequate protection in the form of the New AP Package to (a) AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, (b) AFI, in its capacity as lender under the AFI LOC, and (c) the Junior Secured Noteholders, each effective as of May 1,15, 2013 (collectively, the "**Lenders**" or the "**Adequate Protection Parties**").

**WHEREAS**, on May 16, 2012, the Court entered the *Interim Order Under Sections 105, 361, 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting Time for the Final Hearing* [Docket No. 89]**;**

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

WHEREAS, on June 25, 2012, the Court entered the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491] (the "***Original Final Order***");

WHEREAS, on December 20, 2012, the Court entered the *Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2495];

WHEREAS, on February 15, 2013, the Court entered the *Second Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2927];

WHEREAS, on March 18, 2013, the Court entered the *Third Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3230];

WHEREAS, on April 17, 2013, the Court entered the *Fourth Stipulation and Order Amending the AFI DIP Cash Collateral Order* [Docket No. 3458];

WHEREAS, on April 26, 2013, the Court entered the *Fifth Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3534];

WHEREAS, the hearing was held by the Court on [_____]May 14, 2013 at [_____] at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing");

NOW THEREFORE, upon the record established at the Hearing, and all objections to the entry of this Order having been withdrawn, resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

ny-1080561 1090069

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Petition Date.*  On May 14, 2012 (the "***Petition Date***"), each of the Debtors filed separate voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing the Chapter 11 Cases.

2.      *Debtors-in-Possession.*  The Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee has been appointed in these cases.  On May 16, 2012, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "***Committee***") in these Chapter 11 Cases.  On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez, Esq., as examiner, and on March 5, 2013, the Court authorized the appointment of Lewis Kruger, Esq., as Chief Restructuring Officer of the Debtors.

3.      *Jurisdiction.*  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      *Notice.*  Notice of the Motion, the relief requested therein was given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) Ally Financial Inc. and its counsel, Kirkland & Ellis LLP; (h) Ally Bank and its counsel, Kirkland & Ellis LLP; (i) UMB Bank, N.A., as successor indenture trustee for the Junior Secured Notes (the "***Trustee***"), and its counsel, Kelley Drye & Warren LLP; (j) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the

3

AFI Senior Secured Credit Facility, and as collateral control agent under the Intercreditor Agreement, dated as June 6, 2008 (the "***Collateral Agent***"); (k) counsel to the Ad Hoc Group of Junior Secured Notes, White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP; (l) counsel for the Committee**,** Kramer Levin, Naftalis & Frankel LLP; and (m) the parties required to be served under the Debtors' Case Management Procedures Order (collectively, the "***Notice Parties***").  The Court finds that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

      5.    *Certain Findings Regarding the Use of Cash Collateral.*

      (a)    Good cause has been shown for entry of this Order.  The Debtors have an immediate need for the use of Cash Collateral to pay for the Funded Disposition Costs (as defined below).  Absent such payments, which are necessary to preserve the value of the remaining Prepetition Collateral (as defined herein) of the Adequate Protection Parties, the Debtors' assets will quickly erode to the detriment of the Debtors' estates and constituents, including the Adequate Protection Parties.  The use of Cash Collateral, will, therefore, help preserve and enhance the value of the Adequate Protection Parties' Prepetition Collateral and will increase the prospects for the successful resolution of the Chapter 11 Cases by maximizing the value of the Prepetition Collateral.

      (b)    The Adequate Protection Parties are adequately protected from a diminution in the value of their Prepetition Collateral by the Debtors' use of Cash Collateral to pay the ongoing Funded Disposition Costs (as defined herein) in order to preserve, maintain, and dispose of the Adequate Protection Parties' Prepetition Collateral.

      (c)    Based on the record established in the Court at the Hearing, the terms of the Debtors' use of Cash Collateral, the expense allocation methodology, and the Forecast are

fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties. Entry of this Order is in the best interests of the Debtors' estates and creditors.

6.    *Cash Collateral.*    The Debtors' cash and cash equivalents on deposit or maintained in any account or accounts by the Debtors that is subject to a perfected security interest in favor of AFI or the Junior Secured Parties[2] and cash and cash equivalents generated by the collection of accounts receivable, sale of inventory, or other disposition of the Prepetition Collateral[3] constitute proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (collectively, and together with all cash and cash equivalents otherwise constituting Prepetition Collateral, the "**Cash Collateral**").

7.    *Authorization of Use of Cash Collateral.*    Except as otherwise expressly provided herein, Cash Collateral may be used during the period from May 1, 2013 through and including the Termination Date (as defined in paragraph ~~13~~12 below) on the following terms for the types of expenses set forth in the Forecast and the Horner Declaration:

(a)    ~~(a)~~    The Cash Collateral securing each of the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes, shall be used to fund (i) the asset monetization/preservation costs related to the assets of each of the respective collateral pools (including an allocated portion of the professionals' fees and operating expenses

---

[2]    The "***Junior Secured Parties***" means the Junior Secured Noteholders, the Trustee, and the Collateral Agent.

ny-~~1080561~~1090069

related thereto),[4] (ii) any and all accrued and unpaid amounts payable with Cash Collateral in accordance with the budgeting methodology used in the Original Final Order, which accrued prior to the closing of the Platform Sale but have not yet been paid, (iii) the Carve Out,[5] as defined in and in accordance with the allocation among the Lenders as provided in paragraph 16 of the Original Final Order, and (iv) the Adequate Protection Payments to AFI, in its capacity as lender under each of the AFI LOC and the AFI Senior Secured Credit Facility;

(b)    The Cash Collateral securing the AFI Senior Secured Credit Facility shall also be used to fund (i) the wind down costs of the

---

[3]    The "**Prepetition Collateral**" includes the personal and real property constituting "Collateral" under, and as defined in, the documents governing the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes.

[4]    Consistent with past practice, the costs are allocated based on the remaining assets of each of the respective collateral pools (based on the asset values within each collateral pool, excluding cash).

[5]    For purposes hereof, the "**Carve Out**" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the continuance of a Termination Event hereunder, and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors (the "**Carve Out Notice**"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid fees and expenses incurred by the professionals retained in the Chapter 11 Cases and reimbursement of out-of-pocket expenses of the members of any official committee appointed in the Chapter 11 Cases, including the Creditors' Committee (collectively, the "**Professional Fees**") incurred by persons or firms whose retention is approved pursuant to sections 327 and 1103 of the Bankruptcy Code after the Business Day following delivery of the Carve Out Notice and allowed by the Court, in an aggregate amount not exceeding $25 million (the "**Carve Out Cap**") (plus all unpaid Professional Fees allowed by the Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Adequate Protection Parties, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtors' estates.

origination pipeline, (ii) the costs related to Debtor Executive

Trustee Services, LLC ("*ETS*") (both of which comprise collateral

of the AFI Senior Secured Credit Facility and Junior Secured

Notes), and (iii) advance obligations with respect to servicing

agreements remaining the estate following the closing the Sales;[6]

and

(c)    The Cash Collateral securing the AFI LOC shall also be used to

fund (i) indemnification payments to Ally Bank under the Ally

Bank Servicing Agreement, with respect to modifications to Ally

Bank loans made in accordance with the DOJ/AG Settlement, and

(ii) any costs to service any servicing rights remaining the estate

following the closing of the Sales; and

(Items (a), (b) and (c) collectively are referred to as the "Funded

Disposition Costs").

Payment of the Funded Disposition Costs as set forth in the Forecast is authorized and approved

under this Order.  The Cash Collateral will not be used to pay the Debtors' operating expenses or

professionals' fees (other than the Funded Disposition Costs), as such expenses will be funded

by the use of unencumbered cash.   The Debtors shall not use Cash Collateral and other

Prepetition Collateral at any time, except as set forth in this Order.

---

[6]    Specifically, the Debtors will use Cash Collateral of the AFI Senior Secured Credit Facility to fund advances that
were previously funded by such facility.  All other remaining advance obligations shall be funded with the cash
remaining in the DIP Borrowers (including the proceeds of any advances not purchased at the closing of the
sales), as such advances were previously funded with the Barclays DIP Facility (as defined herein).

8.      *Reporting.*  In lieu of the reporting requirements set forth in the Original Final Order, the Debtors shall provide the Lenders and the Committee with a 6-month monthly forecast for the following 6-month period (each, a "***Forecast***"), and a monthly variance report for each prior month setting forth for such one-month period actual results, noting therein aggregate variances from amounts set forth for the one-month period in the relevant Forecast.  In addition, the Debtors shall provide the Lenders and the Committee with a collateral report that reflects updated values as of the end of the prior calendar month (each such revised report, for the period of its applicability, to be referred to herein as the "***Collateral Report***"). Thereafter, promptly following request by AFI, the Committee, or the Trustee, the Debtors shall make themselves reasonably available to discuss such Forecast, the Collateral Report, and the details thereof.

9.      *Adequate Protection.*  As additional adequate protection for the aggregate diminution in value of the Prepetition Collateral to the extent of the Adequate Protection Parties' interests therein (the amount of such diminution in value, if any, the "***Adequate Protection Obligations***"), the Adequate Protection Parties are granted the following:

(a)      AFI, in its capacity as lender under the AFI LOC, shall receive:

(i)      as security for the Adequate Protection Obligations, effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by AFI of any collateral, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens (the "***Adequate Protection Liens***") on all of the collateral securing the AFI LOC and any additional collateral

purchased, funded, or financed through the use of Cash Collateral of the AFI LOC.  The Adequate Protection Liens shall be (i) senior to the (A) existing liens granted to AFI under the AFI LOC, (B) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility, and (C) Adequate Protection Liens granted to the Junior Secured Parties, and (ii) junior to the Carve Out;

(ii)     superpriority administrative expense claims as and to the extent provided in section 507(b) of the Bankruptcy Code  (a "***507(b) Claim***"), which 507(b) Claims shall be (x) senior to the 507(b) Claims granted to the Junior Secured Parties, and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI Senior Secured Credit Facility; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to AFI from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their Prepetition Collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the AFI LOC or the AFI Senior Secured Credit Facility; and

(iii)     adequate protection payments ("***Adequate Protection Payments***") consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI LOC (the foregoing to include all unpaid prepetition interest); and

(b)     AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, shall receive:

9

(i)      Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility and any additional collateral purchased, funded, or financed through the use of AFI Senior Secured Credit Facility Cash Collateral, which shall be (x) junior only to the existing liens granted to AFI under the AFI Senior Secured Credit Facility, and (y) senior to (A) the existing liens granted to the Junior Secured Parties, and (B) Adequate Protection Liens granted to the Junior Secured Parties;

(ii)      additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be (x) junior to the (A) existing liens granted to AFI under the AFI LOC, and (B) Adequate Protection Liens granted to AFI under the AFI LOC, and (y) senior to the Adequate Protection Liens granted to the Junior Secured Parties on the collateral securing the AFI LOC as set forth below;

(iii)      507(b) Claims that are (x) senior to the 507(b) Claims granted to the Junior Secured Parties and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI LOC (but senior to the claims referred to in this clause (y) to the extent relating to Cash Collateral that is used to fund GNMA Buyouts);

(iv)      Additional Adequate Protection Liens on all of the equity of GMACM Borrower and RFC Borrower (each as defined in the Barclays DIP Facility[7] and collectively referred to herein as the "***Barclays DIP Borrowers***"), which shall be senior to the Adequate Protection Liens granted to the Junior

---

[7]      The "***Barclays DIP Facility***" means that certain postpetition senior secured superpriority financing facility provided by Barclays Bank PLC to the Debtors pursuant to the Barclays DIP Order.

Secured Parties on the equity of the Barclays DIP Borrowers; *provided* that the Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Adequate Protection Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order[8]) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order); and

(v)     Adequate Protection Payments consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the nondefault rate set forth in the AFI Senior Secured Credit Facility (the foregoing to include all unpaid prepetition interest); and

(c)     the Junior Secured Parties shall receive:

(i)     Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility, which shall be junior to the (x) existing liens granted to AFI under the AFI Senior Secured Credit Facility, (y) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility and (z) existing liens granted to the Junior Secured

---

[8]    The "***Barclays DIP Order***" means the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, and (II) Granting Related Relief [Docket No. 490].

Parties, *provided* that the enforcement of the Adequate Protection Liens shall be subject to, in all respects, the Intercreditor Agreement;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be junior to all existing liens and Adequate Protection Liens granted to AFI (on both the AFI LOC and the AFI Senior Secured Credit Facility);

(iii)    additional Adequate Protection Liens on all of the equity interests of the Barclays DIP Borrowers, which shall be junior to the Adequate Protection Liens granted to AFI , in its capacity as lender under the AFI Senior Secured Credit Facility, on the equity of the Barclays DIP Borrowers; *provided* that such Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Junior Secured Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets Securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order);

(iv)    to the extent the Adequate Protection Liens are insufficient to provide adequate protection, 507(b) Claims against each Debtor that are junior to all 507(b) Claims granted to AFI but *pari passu* with any and all other 507(b) Claims; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to the Junior Secured Parties from (1)

unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the Junior Secured Notes Documents; and

(v)    Adequate Protection Payments consisting of current payment of the fees due to the Trustee pursuant to the JSN Indenture, provided, however, that the Adequate Protection Payments shall not include any fees or expenses for any of the professionals representing any of the Trustee, the Collateral Agent, or the Junior Secured Noteholders; and

(d)    All 507(b) Claims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code.

10.    *Additional Adequate Protection.*

(a)    Covenants:  As additional adequate protection, the Debtors shall maintain (x) their cash management system and (y) the treatment of any and all claims on account of postpetition distributions and transfers by the Debtors to any affiliated Debtor, in each case, in a manner consistent with such arrangements and treatment described in the Final Cash Management Order, without further modification thereto;

(b)    Reporting:  As further adequate protection hereunder, the Debtors shall comply with the reporting requirements set forth in paragraph 8; and

(c)    AFI Reserved Cash:  The Debtors shall not use the cash reserved to repay the AFI Senior Secured Credit Facility or the AFI LOC without further order of this Court.

11.    *Exercise of Rights and Remedies against Deposit Accounts.*  Notwithstanding anything to the contrary contained in any instrument or agreement to which any Debtor is party

or subject, or in any order entered by the Court, no Person (as defined by the Bankruptcy Code) that holds or has a lien or other security interest on any demand deposit or other accounts of a Debtor may exercise any rights or remedies against any such account (including by way of set off), whether pursuant to an account control agreement or otherwise, without first providing seven (7) days' written notice (by facsimile electronic mail, overnight mail or hand delivery) to the U.S. Trustee, counsel to the Debtors, counsel to the Committee, counsel to AFI, and counsel to the Junior Secured Noteholders (the "**Account Notice Parties**").  AFI hereby acknowledges and stipulates that its liens on any demand deposit or other account, whether such lien arises under a prepetition control agreement or under this Order, attach only to the proceeds of its collateral, and such liens do not attach to amounts on deposit in any such account to the extent such amount constitutes the proceeds of any other Person's collateral or property that was unencumbered prior to its being deposited in such an account.  In the event any Person asserts the occurrence and continuance of a default or an event of default and the right to exercise remedies with respect to such an account, the Debtors within three (3) days will prepare and serve on the Account Notice Parties a detailed accounting of each Person's interest in the amounts on deposit in such account.  All parties rights to review and object to such accounting are hereby preserved.  Each Account Notice Party shall serve on the others a notice of objections with respect to such accounting within five (5) days following service thereof. Any unresolved disputes with the Debtors' accounting shall be determined by the Court at a hearing to be held on not less than fifteen (15) days' written notice to the Account Notice Parties.  All amounts in dispute shall remain on deposit in such account pending Court order.  No commingling of amounts on deposit in any such account shall in any way adversely affect, detract from, or otherwise impair the perfection of any Person's lien on such proceeds.

ny-1080561 1090069

12.    *Termination.*   The Debtors' right to use Prepetition Collateral, including Cash Collateral, pursuant to this Order shall automatically terminate (the date of any such termination, the "***Termination Date***") upon the earlier of (i) the effective date of a chapter 11 plan for any Debtor, without further notice or order of the Court, or (ii) the date upon which one of the Lenders obtains a Court order providing for the termination of the further use of Cash Collateral.

13.    *Perfection of Adequate Protection Liens.*   The Adequate Protection Parties are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.   Whether or not the Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

14.    *No Limitation on Charging Expenses Against Prepetition Collateral.*   The use of Cash Collateral in accordance with this Order or the Original Final Order does not constitute a charge against or recovery from the Prepetition Collateral or Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law.

15.    *Preservation of Rights Granted Under the Order.*   The provisions of this Order shall survive, and shall not be modified, impaired or discharged by, entry of any order which may be entered confirming any plan of reorganization in the Chapter 11 Cases, converting any of the Chapter 11 Cases to cases under Chapter 7, or dismissing any of the Chapter 11 Cases.

ny-~~1080561~~1090069

Notwithstanding anything contained in this paragraph, nothing in this Order shall limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt.

16.     *Reservation of Rights.* Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (ii) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (collectively, the "***Consent Obligations***"); and (iv) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

17.     *Binding Effect; Successors and Assigns.*  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Adequate Protection Parties, the Committee and the Debtors and their respective successors and assigns (including the examiner, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Adequate Protection Parties and the Debtors and their respective successors and assigns,.

18.     *No Impact on Certain Contracts/ Transactions.*  No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

19.     *Recharacterization of Payments.* Notwithstanding anything else herein, to the extent the Adequate Protection Parties' respective Prepetition Obligations are determined by this Court to be undersecured or invalid, any party in interest may seek, subject to further order of the Court, to recharacterize Adequate Protection Payments and any other postpetition payment of interest and/or fees to the applicable Adequate Protection Parties as payments of the principal of the applicable Prepetition Obligations.

20.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to April 19, 2013 immediately upon the entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Order.

21.     *Objections Overruled.  Any objection that has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.*

Dated:  _____ __, 2013
          New York, New York

          _____
          UNITED STATES BANKRUPTCY JUDGE

ny-1080561 1090069