KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Douglas H. Mannal
Gregory A. Horowitz
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: keckstein@kramerlevin.com

*Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| In re: | : | Chapter 11 |
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
------------------------------------------------------------ x

**SUPPLEMENTAL STATEMENT OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS WITH RESPECT TO THE OBJECTIONS
OF ALLY FINANCIAL INC. AND THE AD HOC GROUP OF JUNIOR
SECURED NOTEHOLDERS TO THE DEBTORS' MOTION FOR ENTRY OF AN
ORDER TO PERMIT THE DEBTORS TO CONTINUE USING CASH COLLATERAL**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT ............................................................................................................................. 1

I.   The Funded Disposition Costs Are Not A Surcharge Under § 506(c). ............................. 2

II.  Payment of The Accrued Expenses Is Not A Surcharge Under § 506(c). ......................... 4

III. The Debtors Have No Fiduciary Duty To Use Unencumbered Cash To Enhance
     the Value of the Secured Creditors' Collateral. ................................................................. 7

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Hirsch v. Penn. Textile Corp. (In re Centennial Textiles, Inc.)*,
   227 B.R. 606 (Bankr. S.D.N.Y. 1998) ........................................................................................8

*In re 680 Fifth Ave. Assocs.*,
   154 B.R. 38 (Bankr. S.D.N.Y. 1993) ..........................................................................................6

*In re Beker Indust. Corp.*,
   64 B.R. 890 (Bankr. S.D.N.Y. 1986) ....................................................................................9, 10

*In re Blackwood Assocs.*,
   153 F.3d 61 (2d Cir. 1998) .........................................................................................................5

*In re Case*,
   115 B.R. 666 (B.A.P. 9th Cir. 1990) ..........................................................................................7

*In re Coventry Commons Assocs.*,
   149 B.R. 109 (Bankr. E.D. Mich. 1992) .................................................................................2, 3

*In re Desert Gardens IV, LLC*,
   No. 11-31061, 2012 WL 860369 (Bankr. D. Ariz. Mar. 12, 2012) ............................................2

*In re Gen. Auto Bldg., LLC*,
   No. 12-31450, 2012 WL 6737741 (Bankr. D. Or. Dec. 28, 2012) .............................................3

*In re George Ruggiere Chrysler-Plymouth, Inc.*,
   727 F.2d 1017 (11th Cir. 1984) ..................................................................................................7

*In re MF Global Holdings, Ltd.*,
   No. 11-15059, 2011 WL 6210374 (Bankr. S.D.N.Y. Dec. 14, 2011) ........................................8

*In re Modern Warehouse, Inc.*,
   74 B.R. 173 (Bankr. W.D. Mo. 1987) ........................................................................................7

*In re Northstar Development Corp.*,
   465 B.R. 6 (Bankr. N.D.N.Y. 2012) ...........................................................................................8

*Omni Partners, L.P. v. Pudgie's Dev., Inc. (In re Pudgie's Dev., Inc.)*,
   239 B.R. 688 (S.D.N.Y. 1999) ................................................................................................5, 6

*Pereira v. Foong (In re Ngan Gung Rest.)*,
   254 B.R. 566 (Bankr. S.D.N.Y. 2002) ........................................................................................8

*Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)*
   ("*ProAlert*"), 314 B.R. 436 (B.A.P. 9th Cir. 2004) ..........................................................2, 3, 4

*U.S. v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983)..................................................................................................................9

**STATUTES**

11 U.S.C. §506(c) ........................................................................................................... passim

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The Committee submits this further statement (the "**Statement**") to respond to the objections (collectively, the "**Objections**")[1] of AFI and the Ad Hoc Group to the Debtors' Motion.[2] In support of the Statement, the Committee respectfully states as follows:

## STATEMENT

1. The relief sought in the Debtors' Motion should not be controversial. Although the Debtors sold substantially all their assets in the Ocwen and Berkshire Hathaway assets sales, they continue to hold approximately $1.4 billion in non-cash assets that need to be liquidated. By the Motion, the Debtors seek to use Cash Collateral going forward in an amount limited to that portion of the Debtors' wind-down budget that directly relates to the monetization of their non-cash assets. Because this limited use of Cash Collateral will maximize the value of the collateral and cannot possibly lead to any diminution in value, AFI and the Junior Secured Noteholders are adequately protected and the Motion should be granted with the modifications set forth in the Committee's Limited Objection.

2. The Objections generally raise three arguments in opposition to the Debtors' proposed use of Cash Collateral, but none come remotely close to justifying denial of the Debtors' Motion.[3] *First*, the Objections argue that the Funded Disposition Costs constitute an impermissible surcharge under Bankruptcy Code § 506(c). This is incorrect as a matter of

---

[1] See *Ally Financial Inc.'s Limited Objection to Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3623]; *Objection of Ad Hoc Group of Junior Secured Noteholders to Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3625].

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Limited Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3624] (the "**Committee's Limited Objection**").

[3] AFI's objections should be overruled not only because they lack merit, but also because AFI has no valid reason to object: the Debtors assert AFI is oversecured, Motion ¶ 40, an assertion that AFI does not contest, AFI Obj. ¶ 14, and the Motion poses no downside risk to the value of AFI's collateral.

law because § 506(c) is inapplicable when a debtor has authorization to use cash collateral under § 363 of the Bankruptcy Code and the secured creditors are adequately protected. *Second*, the Objections argue that the Debtors' payment of accrued but unpaid expenses pursuant to the AFI DIP Order is a waived § 506(c) surcharge, but this is wrong as well because these payments were already authorized under the budget in the AFI DIP Order. In addition, payment of accrued and other professional fees was explicitly carved out from the waiver. *Finally*, the Objections argue that the Debtors have a fiduciary duty to use unencumbered cash to maximize the value of the collateral for the benefit of secured creditors, but the law actually provides the opposite: secured creditors are entitled only to the liquidation value of their collateral, and the Debtors' fiduciary duty is not to prefer the interests of the secured creditors but to treat *each* creditor class fairly and to ensure that each creditor receives a fair distribution. In these cases, this means that the Debtors have a fiduciary duty not to use unencumbered cash for the benefit of secured creditors.

**I.     The Funded Disposition Costs Are Not A Surcharge Under § 506(c).**

3.      AFI and the Ad Hoc Group argue that the Motion seeks to impermissibly surcharge their collateral within the meaning of § 506(c) and that this is impermissible because the Debtors waived their right to impose such a surcharge in the AFI DIP Order. AFI Obj. ¶ 21; Ad Hoc Group Obj. at 14. This argument is contrary to law. Where a debtor provides a secured creditor with adequate protection, as the Debtors have provided AFI and the Junior Secured Noteholders in these cases, the debtor may use cash collateral without satisfying the standards for a surcharge under § 506(c). *See Security Leasing Partners, LP v. ProAlert, LLC (In re ProAlert, LLC)* ("*ProAlert*"), 314 B.R. 436, 442–43 (B.A.P. 9th Cir. 2004); *In re Desert Gardens IV, LLC*, No. 11-31061, 2012 WL 860369, at *4 (Bankr. D. Ariz. Mar. 12, 2012) (debtor may use cash collateral notwithstanding § 506(c) if secured creditor is oversecured); *In re Coventry Commons Assocs.*, 149 B.R. 109, 114 (Bankr. E.D. Mich. 1992) ("[A] debtor can use collateral,

even cash collateral, as long as the secured creditor's interest is adequately protected. The only limitations upon this right are those found in § 363."). *Cf. In re Gen. Auto Bldg., LLC*, No. 12-31450, 2012 WL 6737741, at *2 (Bankr. D. Or. Dec. 28, 2012) (debtor may use cash collateral without meeting § 506(c) surcharge requirements if it can demonstrate use of cash collateral would increase value of collateral in excess of cash collateral expenditure).

4. AFI and the Ad Hoc Group misconstrue *ProAlert* as standing for the proposition that a debtor must always replace "dollar for dollar" any cash collateral it uses outside of a § 506(c) surcharge. AFI Obj. ¶ 25; Ad Hoc Group Obj. at 18. To the contrary, *ProAlert* held that because the debtor in that case sought to use cash collateral to pay professional fees (as opposed to costs that would maximize the value of the secured creditor's collateral), the only form of adequate protection available was replenishment of spent cash collateral. 314 B.R. at 348. The present cases are different because the Debtors' proposed use of Cash Collateral will maximize the value of the Prepetition Collateral, professional fees are carved out from § 506(c) by the AFI DIP Order (as explained below in Section III), and AFI and the Junior Secured Noteholders already have several different forms of adequate protection. Motion ¶¶ 30–31. *ProAlert* expressly recognizes that different forms of adequate protection can be sufficient. *Id.* at 444 (collecting cases where secured creditors received various forms of adequate protection). In addition, *ProAlert* recognizes that there is no requirement that a debtor meet the requirements of § 506(c) for every use of cash collateral:

> [A]doption of [the secured creditor's] position would give a secured creditor absolute control over the use of cash collateral in most cases, because it would be the rare case where a debtor in possession could satisfy § 506(c)'s onerous burden of proving that each and every expenditure, whether for operational or nonoperational expenses, directly benefitted the secured creditor. Thus, adoption of [the secured creditor's] position would make a successful reorganization subject to the good will of a debtor's

>   secured creditors. Allowing a secured creditor such control would
>   shift the balance carefully struck by Congress and be unduly
>   cumbersome to implement.

*ProAlert*, 314 B.R. at 442–43. Thus, *ProAlert* supports the Debtors' and the Committee's arguments that § 506(c) does not apply here because AFI and the Junior Secured Noteholders have, and will continue to have, adequate protection in the absence of the replenishment of spent Cash Collateral.[4]

## II. Payment of The Accrued Expenses Is Not A Surcharge Under § 506(c).

5. The Debtors seek authority to use Cash Collateral to pay certain administrative expenses that accrued following the closing of the Sales. Motion ¶ 30(a). AFI argues that this would improperly surcharge its collateral in contravention of the § 506(c) waiver in the AFI DIP Order.[5] This argument is wrong because AFI explicitly consented to the payment of the accrued expenses pursuant to the AFI DIP Order, which provides for the payment of such expenses out of Cash Collateral pursuant to monthly budgets subject to AFI's consent. AFI DIP Order ¶¶ 14, 15. In accordance with the approved budgets, the Debtors paid the expenses out of

---

[4] None of the other cases cited by AFI supports its argument that the Debtors must provide "dollar for dollar" reimbursement for the Funded Disposition Costs. In *In re Harbour East Development, Ltd.*, the court declined to grant a debtor use of cash collateral to undertake risky capital projects aimed at improving a condominium development that was pledged to its secured creditor, because the debtor failed to demonstrate that the collateral would be "enhanced, dollar-for-dollar, by the expenditures proposed by the Debtors." No. 10-20733, 2011 WL 6097063, at *4 (Bankr. S.D. Fla. Dec. 6, 2011). *Harbour East Development* is irrelevant to these cases, because neither AFI nor the Junior Secured Noteholders contest that payment of the Funded Disposition Costs will enhance the value of their collateral.

In addition, AFI's citation to *Desert Fire Protection v. Fontainebleau Las Vegas Holdings, LLC (In re Fontainebleau Las Vegas Holdings, LLC)*, is unavailing because the "dollar for dollar" requirement therein referenced by AFI, AFI Obj. ¶ 28, was actually from the court's recitation of the secured creditor's argument and not the court's holding. 434 B.R. 716, 727 (S.D. Fla. 2010). Contrary to AFI's arguments, the court in *Desert Fire Protection* held that a debtor may use a secured creditors' cash collateral without imposing a § 506(c) surcharge where the use of the cash collateral would result in an enhancement of the creditor's collateral, as it will in these cases. *Id*. at 754.

[5] The Ad Hoc Group asserts it has received no information quantifying the administrative expenses at issue and suggests the Final Cash Collateral Order already authorizes their payment out of Cash Collateral. Ad Hoc Group Obj. at 7 n.4. However, the Ad Hoc Group, AFI, and the Committee received numerous presentations in the months leading up to the filing of the Motion from the Debtors and their professionals regarding the accrued expenses and the Debtors' intention to pay such expenses out of Cash Collateral.

the Debtors' various asset pools (including those containing unencumbered assets) on a pro rata basis.

6.    AFI's agreement in the AFI DIP Order to fund its portion of these expenses was a business decision aimed at ensuring that the Debtors remained a going-concern and maximizing the value of the assets sold through the Sales. In exchange for the Debtors' use of Cash Collateral, AFI protected itself by ensuring that the expenditures were made pursuant to AFI-approved budgets. In exchange for AFI's consent to the use of Cash Collateral, the Debtors waived the ability to surcharge AFI for any amounts *in excess* of the amounts that were included in the approved budgets. AFI DIP Order ¶ 22(n) (prohibiting recovery from Prepetition Collateral for any cost of preservation "other than as may be provided" in the AFI DIP Order). Having received the benefit of its bargain – the successful maximization of the consideration obtained through the Sales – AFI now seeks to unfairly undo its deal and retrade and recharacterize all amounts charged to Cash Collateral as a surcharge. AFI Obj. ¶ 26. This should be rejected.

7.    Because AFI consented to the amounts charged to its Cash Collateral pursuant to the budgets, the Debtors may pay such amounts out of Cash Collateral without the need to assert a surcharge under § 506(c). *See In re Blackwood Assocs.*, 153 F.3d 61, 68 (2d Cir. 1998) ("[I]f a secured party consents to allowing such administrative expenses, that party may be liable for such expenses even in the absence of conferred benefit . . . .") (citing *Gen. Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir.1984)); *Omni Partners, L.P. v. Pudgie's Dev., Inc. (In re Pudgie's Dev., Inc.)*, 239 B.R. 688, 697 (S.D.N.Y. 1999) (notwithstanding general prohibition against charging administrative expenses to creditor's collateral, a debtor may collect expenses from encumbered assets if *either* the

secured creditor consents to such expenses *or* the debtor meets the exception set forth in § 506(c)); *In re 680 Fifth Ave. Assocs.*, 154 B.R. 38, 43 (Bankr. S.D.N.Y. 1993) (same).

8.   Even if the § 506(c) surcharge waiver in the AFI DIP Order were applicable to the Debtors' proposed use of the Cash Collateral, which it is not, the waiver is limited in nature. Paragraph 22(a) of the AFI DIP Order states (with emphasis added):

> *Except to the extent of the Carve Out*, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral and AFI DIP Loan Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Adequate Protection Parties or AFI DIP Lender, as applicable and no such consent shall be implied from any other action, inaction, or acquiescence by the Adequate Protection Parties or AFI DIP Lender, as applicable.

9.   The term "Carve Out" is defined in the AFI DIP Order to include all accrued and unpaid professional fees as of the termination of the AFI DIP Order, and all prospective estate professional fees in an amount not to exceed $25 million. AFI DIP Order ¶ 15(g). Accordingly, even assuming the § 506(c) waiver would apply following the termination of the AFI DIP Order, the Debtors would still be able to "surcharge" the amount of the Carve Out against the Prepetition Collateral upon the termination of the AFI DIP Order. Thus, even if § 506(c) applied here – and it does not – it would not apply to the Debtors' payment of any accrued and future professional fees in accordance with the Carve Out.[6]

---

[6] The Ad Hoc Group argues that a debtor must first actually incur an expense before seeking a § 506(c) surcharge. Ad Hoc Group Obj. at 14. Two of the cases the Ad Hoc Group cites for this proposition do not even address the issue. *See In re Wydner*, 454 B.R. 565 (Bankr. W.D.N.Y. 2011); *In re Int'l Commc'ns Grp., Inc.*, 2006 WL 2385242 (Bankr. N.D. Tex. July 28, 2006). The third is wrongly decided. *See Rifken v. CapitalSource Fin., LLC (In re Felt Mfg. Co.)*, 402 B.R. 502, 523 (Bankr. D. N.H. 2009) (rejecting reasoning of *In re K&L Lakeland, Inc.*, 128 F.3d 203, 209 (4th Cir. 1997)).

### III. The Debtors Have No Fiduciary Duty To Use Unencumbered Cash To Enhance the Value of the Secured Creditors' Collateral.

10. Even though the Debtors seek only a modest use of Cash Collateral, AFI and the Ad Hoc Group take the position that it would be a breach of fiduciary duty for the Debtors *not* to undertake the proposed wind-down process and fund it solely with unencumbered cash in order to maximize the secured creditors' recovery. *See* AFI Obj. ¶¶ 30–31; Ad Hoc Group Obj. at 8. AFI and the Ad Hoc Group fail to cite a single case that stands for this proposition, which is wrong and contradicted by at least two settled principles of law: (i) a secured creditor does not suffer a diminution in value if it receives the liquidation value of its collateral; and (ii) a debtor owes a fiduciary duty not just to maximize the recovery of any single class of creditors but rather to ensure fair treatment to *each* class.

11. It is well-settled that a secured creditor does not suffer a diminution in value where it receives the liquidation value of its collateral, as opposed to a theoretical maximal value. *See In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1020 (11th Cir. 1984) (noting that for adequate protection purposes, the value of collateral is based upon what a creditor would have received if it were to sell the collateral at a wholesale price); *In re Case*, 115 B.R. 666, 670 (B.A.P. 9th Cir. 1990) (noting that for adequate protection purposes, "the possibility of forced liquidation would be assumed"); *In re Modern Warehouse, Inc.*, 74 B.R. 173, 177 (Bankr. W.D. Mo. 1987) ("[I]n the context of § 507(b) . . . the value which is to be protected is 'liquidation' value. . . . This protection is accorded on the theory that the secured creditor should be granted the same value as if he had the collateral in his hands to liquidate as of the date of commencement of the proceeding." (citations omitted)). Collier similarly endorses the view that a secured creditor is entitled only to the liquidation value of its collateral:

> Because the purpose of adequate protection is to protect the value of the secured creditor's bargained-for rights, this part of the

- 7 -

> analysis suggests the use of a hypothetical sale method, such as foreclosure value, because this method most accurately reflects the value of the collateral from the perspective of the purpose that adequate protection was designed to serve, namely protecting the creditor's interest in the event the debtor does not pay the claim. . . . Accordingly, for adequate protection purposes, the better view is that the value of [collateral] should be determined in accordance with a hypothetical foreclosure sale method.

4 Collier on Bankruptcy ¶506.03[7][a][ii]. Moreover, under any view of value, including the maximum possible value obtained by holding the Prepetition Collateral to maturity, the costs now being incurred to service those assets and realize the resulting cash flows would have been a deduction to value as of the Petition Date.

12. Rather than cite authority for the proposition that a secured creditor is entitled to be adequately protected for the *maximum* value of its collateral, AFI and the Ad Hoc Group improperly characterize the Debtors' fiduciary duty as requiring them to maximize the value of the Prepetition Collateral *at any cost*, even at the sole expense of unsecured creditors. But they cite for this proposition only familiar authority requiring the Debtors to maximize the value of the Estates *as a whole* – not to devote unencumbered assets to the task of maximizing the recovery of *one class of creditor*.[7]

13. The Debtors' actual fiduciary duty is to treat *each* creditor class fairly and ensure that each creditor receives a fair distribution. *See, e.g.*, *In re MF Global Holdings, Ltd.*, No. 11-15059, 2011 WL 6210374, at *3 (Bankr. S.D.N.Y. Dec. 14, 2011); *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2002); *Hirsch v. Penn. Textile Corp. (In re Centennial Textiles, Inc.)*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998). AFI and the Ad Hoc Group turn these cases on their heads by suggesting that they support the position that it is a

---

[7] AFI cites *In re Northstar Development Corp.*, 465 B.R. 6 (Bankr. N.D.N.Y. 2012), for the proposition that a chapter 11 debtor must maximize value for all stakeholders. AFI Obj. ¶ 30. That case does not address the fiduciary duties of a chapter 11 trustee or debtor-in-possession but rather the fiduciary duties of a director of an insolvent corporation outside of bankruptcy.

debtor's fiduciary duty to use unencumbered cash for the sole benefit of secured creditors. AFI Obj. ¶ 30; Ad Hoc Group Obj. at 8. Instead of urging a course through which the Debtors would maximize recoveries for *all* creditors, AFI and the Ad Hoc Group argue that the Debtors should reduce recoveries to unsecured creditors to achieve a result for secured creditors that is over and beyond their entitlement to the liquidation value of their collateral.[8]

14.  The Debtors have proposed a process by which all parties benefit. The Junior Secured Noteholders, in exchange for paying the Funded Disposition Costs from their collateral, will receive the maximum return on the AFI Revolver collateral (as opposed to their minimum legal entitlement to the liquidation value of the collateral). Unsecured creditors, which ultimately will bear the Funded Disposition Costs related to the AFI LOC collateral because AFI is massively oversecured, will receive the maximum return on the AFI LOC collateral. This result is consistent with the Debtors' fiduciary duties to maximize recoveries for all creditors and with the Bankruptcy Code's goal of balancing the rights of secured creditors with those of unsecured creditors. *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983) ("Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with 'adequate protection' for their interests."); *In re Beker Indust. Corp.*, 64 B.R. 890 (Bankr. S.D.N.Y. 1986) ("A debtor in the exercise of its fiduciary duty to the estate as a whole may decide to make payments to preserve an asset. But

---

[8] AFI and the Ad Hoc Group argue that using unencumbered cash to maximize recoveries for secured creditors will result in a corresponding benefit to unsecured creditors through the reduction of potential deficiency claims. AFI Obj. ¶ 31; Ad Hoc Group Obj. at 11. This argument mistakenly assumes that unsecured creditor recoveries will increase dollar-for-dollar with the amount of unencumbered cash spent to maximize the Prepetition Collateral, but this will not necessarily be the case. Because the claims pool is as uncertain as it is large – potentially in the tens of billions of dollars – any putative benefit of spending real dollars for the benefit of the Junior Secured Noteholders is extremely diluted and is not assured to benefit unsecured creditors.

that a debtor is in bankruptcy should not require other creditors to fund a secured creditor's desire to increase its return.").

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court overrule the Objections of AFI and the Ad Hoc Group, grant the Motion with the modifications requested in the Committee's Limited Objection, enter the Revised Proposed Order, and grant such other and further relief as the Court deems just and proper.

Dated:  May 10, 2013
        New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Gregory A. Horowitz
Kenneth H. Eckstein
Douglas H. Mannal
Gregory A. Horowitz
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Email: keckstein@kramerlevin.com

*Counsel for the Official Committee
of Unsecured Creditors*