Hearing Date and Time:  May 14, 2013 at 10:00 a.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

       and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING OF REVISED PROPOSED ORDER AUTHORIZING THE**
**DEBTORS TO CONTINUE USING CASH COLLATERAL**

      **PLEASE TAKE NOTICE THAT** on April 8, 2013, the debtors and debtors in

possession in the above-captioned cases (collectively, the "<u>Debtors</u>") filed the Debtors' Motion

for Entry of an Order to Permit the Debtors to Continue Using Cash Collateral (Docket No.

3374) (the "<u>Cash Collateral Motion</u>"); and

**PLEASE TAKE FURTHER NOTICE THAT** on May 6, 2013, the Ad Hoc Group of

Junior Secured Noteholders (the "Ad Hoc Group") filed its Objection to the Cash Collateral

Motion (Docket No. 3625); and

**PLEASE TAKE FURTHER NOTICE THAT** on May 11, 2013, the Ad Hoc Group

filed its Supplemental Objection to the Cash Collateral Motion (Docket No. 3691) (the

"Supplemental Objection").  In its Supplemental Objection, the Ad Hoc Group stated that it was

prepared to consent to the use of a limited amount of Cash Collateral subject to the terms and

conditions of a proposed form of order, to be submitted, reflecting necessary changes to the

Debtors' proposed form of order.  The Ad Hoc Group hereby submits such revised proposed

order granting, in part, the relief requested in the Cash Collateral Motion, attached hereto as

Exhibit A.

Dated:  May 13, 2013
      New York, New York

By: /s/ J. Christopher Shore___
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore (JS – 6031)
Harrison L. Denman (HD – 1945)

   and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior
Secured Noteholders

**<u>Exhibit A</u>**

**(Proposed Form of Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER AUTHORIZING
### THE DEBTORS TO CONTINUE USING CASH COLLATERAL

Upon the motion (the "***Motion***"),[1] dated April [__], 2013, of the above-captioned debtors

and debtors in possession (collectively, the "***Debtors***") filed in these chapter 11 cases (the

"***Chapter 11 Cases***") for entry an order under sections 105, 361, 362, and 363(c) of title 11 of the

United States Code (the "***Bankruptcy Code***"), and Rules 2002, 4001, 6004, and 9014 of the

Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking that the Court:

(i) authorize the Debtors to continuing using Cash Collateral (as defined herein) as set forth herein,

and (ii) provide adequate protection in the form of the New AP Package to (a) AFI, in its capacity

as lender under the AFI Senior Secured Credit Facility, (b) AFI, in its capacity as lender under the

AFI LOC, and (c) the Junior Secured Noteholders, each effective as of May 1, 2013 (collectively,

the "***Lenders***" or the "***Adequate Protection Parties***").

**WHEREAS**, on May 16, 2012, the Court entered the *Interim Order Under Sections 105,*

*361, 361, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014*

*(I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured Superpriority Basis,*

*(II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Adequate Protection to*

*Adequate Protection Parties and (IV) Prescribing the Form and Manner of Notice and Setting*

*Time for the Final Hearing* [Docket No. 89];

---

[1]    Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

**WHEREAS**, on June 25, 2012, the Court entered the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491] (the "***Original Final Order***");

**WHEREAS**, on December 20, 2012, the Court entered the *Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2495];

**WHEREAS**, on February 15, 2013, the Court entered the *Second Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 2927];

**WHEREAS**, on March 18, 2013, the Court entered the *Third Stipulation and Order Amending the AFI DIP and Cash Collateral Order* [Docket No. 3230];

**WHEREAS**, the hearing was held by the Court on [_____, 2013] at [___] (the "Hearing");

**NOW THEREFORE**, upon the record established at the Hearing, and all objections to the entry of this Order having been withdrawn, resolved or overruled by the Court, and after due deliberation and consideration, and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Petition Date*.  On May 14, 2012 (the "***Petition Date***"), each of the Debtors filed separate voluntary petitions under chapter 11 of the Bankruptcy Code in the Court commencing the Chapter 11 Cases.

2.    *Debtors-in-Possession*.  The Debtors have continued in the management and operation of their businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee has been appointed in these cases.  On May 16, 2012,

the United States Trustee appointed the Official Committee of Unsecured Creditors (the "***Committee***") in these Chapter 11 Cases. On July 3, 2012, the Court approved the appointment of Arthur J. Gonzalez, Esq., as examiner, and on March 5, 2013, the Court authorized the appointment of Lewis Kruger, Esq., as Chief Restructuring Officer of the Debtors.

3.    *Jurisdiction*. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    *Notice*. Notice of the Motion, the relief requested therein was given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the office of the United States Attorney General; (c) the office of the New York Attorney General; (d) the office of the United States Attorney for the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) Ally Financial Inc. and its counsel, Kirkland & Ellis LLP; (h) Ally Bank and its counsel, Kirkland & Ellis LLP; (i) UMB Bank, N.A., as successor indenture trustee for the Junior Secured Notes (the "***Trustee***"), and its counsel, Kelley Drye & Warren LLP; (j) Wells Fargo Bank, N.A., as collateral agent for the Junior Secured Notes, as collateral agent for the AFI Senior Secured Credit Facility, and as collateral control agent under the Intercreditor Agreement, dated as June 6, 2008 (the "***Collateral Agent***"); (k) counsel to the Ad Hoc Group of Junior Secured Notes, White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP; (l) counsel for the Committee, Kramer Levin, Naftalis & Frankel LLP; and (m) the parties required to be served under the Debtors' Case Management Procedures Order (collectively, the "***Notice Parties***"). The Court finds that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

5. *Certain Findings Regarding the Use of Cash Collateral.*

(a) Good cause has been shown for entry of this Order.  The Debtors have an immediate need for the use of Cash Collateral to pay for the Funded Disposition Costs (as defined below).  Absent such payments, which are necessary to preserve the value of the remaining Prepetition Collateral (as defined herein) of the Adequate Protection Parties, the Debtors' assets will quickly erode to the detriment of the Debtors' estates and constituents, including the Adequate Protection Parties.  The use of Cash Collateral, will, therefore, help preserve and enhance the value of the Adequate Protection Parties' Prepetition Collateral and will increase the prospects for the successful resolution of the Chapter 11 Cases by maximizing the value of the Prepetition Collateral.

(b) The Adequate Protection Parties are adequately protected from a diminution in the value of their Prepetition Collateral by the Debtors' use of Cash Collateral to pay the Funded Disposition Costs (as defined herein) in order to preserve, maintain, and dispose of the Adequate Protection Parties' Prepetition Collateral.

(c) Based on the record established in the Court at the Hearing, the terms of the Debtors' use of Cash Collateral, the expense allocation methodology, and the Forecast are fair and reasonable, and reflect the Debtors' and their respective managers' and directors' exercise of prudent business judgment consistent with their fiduciary duties.  Entry of this Order is in the best interests of the Debtors' estates and creditors.

**5.**    6.  *Cash Collateral.*  The Debtors' cash and cash equivalents on deposit or maintained in any account or accounts by the Debtors that is subject to a perfected security interest in favor of AFI or the Junior Secured Parties[2] and cash and cash equivalents generated by the

---

[2]    The "***Junior Secured Parties***" means the Junior Secured Noteholders, the Trustee, and the Collateral Agent.

collection of accounts receivable, sale of inventory, or other disposition of the Prepetition Collateral[3] constitute proceeds of the Prepetition Collateral and, therefore, are and shall be deemed to be cash collateral of the Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code for the purposes hereof and under the terms hereof (collectively, and together with all cash and cash equivalents otherwise constituting Prepetition Collateral, the "***Cash Collateral***").

**6.**    7. *Authorization of Use of Cash Collateral.*    Except as otherwise expressly provided herein, Cash Collateral may be used during the period from May 1, 2013 through and including the Termination Date (as defined in paragraph 13 below) on the following terms for the types of expenses set forth in the Forecast and the Horner Declaration:

> (a)    The Cash Collateral securing each of the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes, shall**may** be used to fund (i) the asset monetization/preservation costs related to the assets of each of the respective collateral pools (including an allocated portion of the professionals' fees and operating expenses related thereto),[4] (ii) any and all accrued and unpaid amounts payable with Cash Collateral in accordance with the Original Final Order, which accrued prior to the closing of the Platform Sale but have not yet been paid, (iii) the Carve Out,[5] as defined in and in

---

[3]    The "***Prepetition Collateral***" includes the personal and real property constituting "Collateral" **and any proceeds thereof** under, and as defined in, the documents governing the AFI LOC, the AFI Senior Secured Credit Facility, and the Junior Secured Notes.

[4]    Consistent with past practice, the costs are allocated based on the remaining assets of each of the respective collateral pools (based on the asset values within each collateral pool, excluding cash).

[5]    For purposes hereof, the "***Carve Out***" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, and (ii) at any time after the first business day after the occurrence and during the continuance of a Termination Event hereunder, and delivery of notice thereof to the U.S. Trustee and each of the lead counsel for the Debtors (the "***Carve Out Notice***"), to the extent allowed at any time, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid fees and expenses incurred by the professionals retained in the Chapter 11 Cases and reimbursement of out-of-pocket expenses of the members of any official committee appointed in the Chapter 11 Cases, including the Creditors' Committee (collectively, the "***Professional Fees***") incurred by persons or firms whose retention is approved pursuant to sections 327 and 1103 of the Bankruptcy Code after the Business Day following delivery of the Carve Out Notice and allowed by the Court, in an aggregate amount not exceeding $25 million (the "***Carve Out Cap***") (plus all unpaid Professional Fees allowed by the Court at any time that were incurred on or prior to the Business Day following delivery of the Carve Out Notice, whether paid or unpaid); provided further that (A) the Carve Out shall not be available to pay

accordance with the allocation among the Lenders as provided in paragraph 16 of the Original Final Order, and (iv) the **disposition costs relating to Prepetition** Collateral securing the AFI LOC **solely to the extent set forth on Exhibit A annexed hereto (the "*Disposition Costs*") and** Adequate Protection Payments to AFI, in its capacity as lender under each of the AFI LOC and the AFI Senior Secured Credit Facility;.

(b)    The Cash Collateral securing the AFI Senior Secured Credit Facility, **and the Junior Secured Notes,** shall also be used to fund (i) the wind down costs of the origination pipeline, (ii) the costs related to Debtor Executive Trustee Services, LLC ("*ETS*") (both of which comprise collateral of **Disposition Costs relating the Prepetition Collateral securing** the AFI Senior Secured Credit Facility, and the Junior Secured Notes **solely to the extent set forth on Exhibit A annexed hereto, the Adequate Protection Payments to AFI, in its capacity as lender under** the AFI Senior Secured Credit Facility and **the** Junior Secured Notes), and (iii) advance obligations with respect to servicing agreements remaining the estate following the closing the Sales;[6] and**Parties Adequate Protection Payments;**

(c) The Cash Collateral securing the AFI LOC shall also be used to fund (i) indemnification payments to Ally Bank under the Ally Bank Servicing Agreement, with respect to modifications to Ally Bank loans made in accordance with the DOJ/AG Settlement, and (ii) any costs to service any servicing rights remaining the estate following the closing of the Sales; and

(Items (a), (b) and (c) collectively are referred to as the "Funded Disposition Costs").

Payment of the Funded Disposition Costs as set forth in the Forecast is authorized and approved under this Order. The**The Debtors are prohibited from using** Cash Collateral will not be used to pay the Debtors' operating expenses or professionals' fees (other than the Funded Disposition

---

any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Adequate Protection Parties, (B) so long as no event of default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to any such fees or expenses to be paid by the Debtors' estates.

[6]  Specifically, the Debtors will use Cash Collateral of the AFI Senior Secured Credit Facility to fund advances that were previously funded by such facility. All other remaining advance obligations shall be funded with the cash remaining in the DIP Borrowers (including the proceeds of any advances not purchased at the closing of the sales), as such advances were previously funded with the Barclays DIP Facility (as defined herein).

Costs), as such **or any other** expenses will**, each of which shall** be funded **solely** by the use of unencumbered cash.  The Debtors shall not use Cash Collateral and other Prepetition Collateral at any time, except as set forth in this Order.

**7.**    8.  *Reporting*.  In lieu of the reporting requirements set forth in the Original Final Order, the Debtors shall provide the Lenders and the Committee with a 6-month monthly forecast for the following 6-month period (each, a "***Forecast***"), and a monthly variance report for each prior month setting forth for such one-month period actual results, noting therein aggregate variances from amounts set forth for the one-month period in the relevant Forecast.  In addition, the Debtors shall provide the Lenders and the Committee with a collateral report that reflects updated values as of the end of the prior calendar month (each such revised report, for the period of its applicability, to be referred to herein as the "***Collateral Report***").  Thereafter, promptly following request by AFI, the Committee, or the Trustee, the Debtors shall make themselves reasonably available to discuss such Forecast, the Collateral Report, and the details thereof.

**8.**    9.  *Adequate Protection*.  As additional The Adequate Protection Parties are **entitled, pursuant to sections 362, 363(c)(2), and 364 of the Bankruptcy Code, to** adequate protection for the**of their interests in the Prepetition Collateral, including Cash Collateral, in an amount equal to** aggregate diminution in value of the Prepetition Collateral to the extent of the Adequate Protection Parties'**their** interests therein (the amount of**, including any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including Cash Collateral, and the automatic stay pursuant to section 362 of the Bankruptcy Code (**such diminution in value, if any, the "***Adequate Protection Obligations***"), the Adequate Protection Parties are granted the following:

(a)    AFI, in its capacity as lender under the AFI LOC, shall receive:

(i)      as security for the Adequate Protection Obligations, effective and perfected upon the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by AFI of any collateral, additional and replacement continuing, valid, binding, enforceable, non-avoidable and automatically perfected security interests and liens (the "***Adequate Protection Liens***") on all of the collateral securing the AFI LOC and any additional collateral purchased, funded, or financed through the use of Cash Collateral of the AFI LOC.  The Adequate Protection Liens shall be (i) senior to the (A) existing liens granted to AFI under the AFI LOC, (B) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility, and (C) Adequate Protection Liens granted to the Junior Secured Parties, and (ii) junior to the Carve Out;

(ii)     superpriority administrative expense claims as and to the extent provided in section 507(b) of the Bankruptcy Code (a "***507(b) Claim***"), which 507(b) Claims shall be (x) senior to the 507(b) Claims granted to the Junior Secured Parties, and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI Senior Secured Credit Facility; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to AFI from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their

Prepetition Collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the AFI LOC or the AFI Senior Secured Credit Facility; and

(iii)    adequate protection payments ("***Adequate Protection Payments***") consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the non-default rate set forth in the AFI LOC (the foregoing to include all unpaid prepetition interest); and

(b)    AFI, in its capacity as lender under the AFI Senior Secured Credit Facility, shall receive:

(i)    Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility and any additional collateral purchased, funded, or financed through the use of AFI Senior Secured Credit Facility Cash Collateral, which shall be (x) junior only to the existing liens granted to AFI under the AFI Senior Secured Credit Facility, and (y) senior to (A) the existing liens granted to the Junior Secured Parties, and (B) Adequate Protection Liens granted to the Junior Secured Parties;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be (x) junior to the (A) existing liens granted to AFI under the AFI LOC, and (B) Adequate Protection Liens granted to AFI under the AFI LOC, and (y) senior to the Adequate Protection Liens granted to the Junior Secured Parties on the collateral securing the AFI LOC as set forth below;

(iii)    507(b) Claims that are (x) senior to the 507(b) Claims granted to the Junior Secured Parties and (y) *pari passu* with the 507(b) Claims granted to AFI on account of the AFI LOC (but senior to the claims referred to in this clause (y) to the extent relating to Cash Collateral that is used to fund GNMA Buyouts);

(iv)    Additional Adequate Protection Liens on all of the equity of GMACM Borrower and RFC Borrower (each as defined in the Barclays DIP Facility[74] and collectively referred to herein as the "***Barclays DIP Borrowers***"), which shall be senior to the Adequate Protection Liens granted to the Junior Secured Parties on the equity of the Barclays DIP Borrowers; *provided* that the Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Adequate Protection Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order[85]) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order); ~~and~~

---

[74]   The "***Barclays DIP Facility***" means that certain postpetition senior secured superpriority financing facility provided by Barclays Bank PLC to the Debtors pursuant to the Barclays DIP Order.

[85]   The "***Barclays DIP Order***" means the Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables, and (B) to Obtain Post-Petition Financing on a Secured Superpriority Basis, and (II) Granting Related Relief [Docket No. 490].

(v)    Adequate Protection Payments consisting of accrued and unpaid prepetition interest as well as current postpetition payments of interest at the nondefault rate set forth in the AFI Senior Secured Credit Facility (the foregoing to include all unpaid prepetition interest); and

**(vi)    with respect to Cash Collateral used from and after the date hereof, in addition to all other Adequate Protection Liens provided above, additional Adequate Protection Liens on all other assets of the Debtors not set forth in subclauses (i), (ii) and (iv) above (the "*Other Assets*"), senior to the Adequate Protection Liens granted to the Junior Secured Parties on such Other Assets and subject only to existing liens; and**

(c)    the Junior Secured Parties shall receive:

(i)    Adequate Protection Liens on all of the collateral securing the AFI Senior Secured Credit Facility, which shall be junior to the (x) existing liens granted to AFI under the AFI Senior Secured Credit Facility, (y) Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility and (z) existing liens granted to the Junior Secured Parties, *provided* that the enforcement of the Adequate Protection Liens shall be subject to, in all respects, the Intercreditor Agreement;

(ii)    additional Adequate Protection Liens on all of the collateral securing the AFI LOC, which shall be junior to all existing liens and

Adequate Protection Liens granted to AFI (on both the AFI LOC and the AFI Senior Secured Credit Facility);

(iii)    additional Adequate Protection Liens on all of the equity interests of the Barclays DIP Borrowers, which shall be junior to the Adequate Protection Liens granted to AFI , in its capacity as lender under the AFI Senior Secured Credit Facility, on the equity of the Barclays DIP Borrowers; *provided* that such Adequate Protection Liens on the equity of the Barclays DIP Borrowers shall only be to the extent that the Junior Secured Parties were secured by valid liens on (a) the Pre-Petition Ally Repo Facility (as defined in the Barclays DIP Order) or any residual value therefrom and/or (b) the residual value of the Initial Purchased Assets Securing the Pre-Petition GSAP Facility (as defined in the Barclays DIP Order) through valid liens on the equity interests of the entities owning the equity interests of the owners of such Initial Purchased Assets (as defined in the Barclays DIP Order);

(iv)    with respect to Cash Collateral used from and after the date hereof, in addition to all other Adequate Protection Liens provided above, additional Adequate Protection Liens on the Other Assets, junior only to the Adequate Protection Liens granted to AFI in its capacity as lender under the AFI Senior Secured Credit Facility and existing liens on such Other Assets;

(v)    (iv) to the extent the Adequate Protection Liens are insufficient to provide adequate protection, 507(b) Claims against each

Debtor that are junior to all 507(b) Claims granted to AFI but *pari passu* with any and all other 507(b) Claims; *provided* that notwithstanding any other provision of this Order, no 507(b) Claim shall be payable to the Junior Secured Parties from (1) unencumbered property until the Adequate Protection Parties have exhausted recoveries from their collateral and (2) the proceeds of actions brought under chapter 5 of the Bankruptcy Code with respect to the Junior Secured Notes Documents; and

(d) All 507(b) Claims granted herein are junior and subordinate to all administrative expense claims granted priority under section 364(c)(1) of the Bankruptcy Code.

(vi)    The Debtors shall promptly pay the reasonable fees and expenses (i) of the Trustee (including the reasonable fees and expenses of Kelley Drye & Warren LLP and Akin Gump Strauss Hauer & Feld LLP), and (ii) of that certain Ad Hoc Committee of Holders of Junior Secured Notes represented by White & Case LLP and Milbank, Tweed, Hadley & McCloy LLP (including the reasonable fees and expenses of White & Case LLP, Milbank, Tweed, Hadley & McCloy LLP, and Houlihan Lokey) (collectively, the "*Junior Secured Parties Adequate Protection Payments*"); *provided* that none of such fees and expenses as Adequate Protection Payments hereunder shall be subject to further approval by the Court or the United States Trustee Guidelines, but such professionals shall provide copies of summary invoices and statements (subject in all respects to applicable privilege or work product doctrines) to the Debtors, Creditors' Committee, and the U.S. Trustee, and the Debtors shall promptly pay all reasonable fees and expenses not subject to

objection of the U.S. Trustee or the Creditors' Committee on the eleventh business day after the receipt of such invoices.  No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, *provided, further*, however, that nothing shall prejudice the rights of any party to seek to recharacterize any such payments, upon motion and further order of the Court, as payments of principal under the Junior Secured Notes.

**9.**   10.  *Additional Adequate Protection*.

(a)   <u>Covenants</u>:  As additional adequate protection, the Debtors shall maintain (x) their cash management system and (y) the treatment of any and all claims on account of postpetition distributions and transfers by the Debtors to any affiliated Debtor, in each case, in a manner consistent with such arrangements and treatment described in the Final Cash Management Order, without further modification thereto;

(b)   <u>Reporting</u>:  As further adequate protection hereunder, the Debtors shall comply with the reporting requirements set forth in paragraph 8; and

(c)   <u>AFI Reserved Cash</u>:  The Debtors shall not use the cash reserved to repay the AFI Senior Secured Credit Facility or the AFI LOC without further order of this Court.

**10.**   11.  *Exercise of Rights and Remedies against Deposit Accounts*.  Notwithstanding anything to the contrary contained in any instrument or agreement to which any Debtor is party or subject, or in any order entered by the Court, no Person (as defined by the Bankruptcy Code) that holds or has a lien or other security interest on any demand deposit or other accounts of a Debtor may exercise any rights or remedies against any such account (including by way of set off),

whether pursuant to an account control agreement or otherwise, without first providing seven (7) days' written notice (by facsimile electronic mail, overnight mail or hand delivery) to the U.S. Trustee, counsel to the Debtors, counsel to the Committee, counsel to AFI, and counsel to the Junior Secured Noteholders (the "***Account Notice Parties***").    AFI hereby acknowledges and stipulates that its liens on any demand deposit or other account, whether such lien arises under a prepetition control agreement or under this Order, attach only to the proceeds of its collateral, and such liens do not attach to amounts on deposit in any such account to the extent such amount constitutes the proceeds of any other Person's collateral or property that was unencumbered prior to its being deposited in such an account.    In the event any Person asserts the occurrence and continuance of a default or an event of default and the right to exercise remedies with respect to such an account, the Debtors within three (3) days will prepare and serve on the Account Notice Parties a detailed accounting of each Person's interest in the amounts on deposit in such account. All parties rights to review and object to such accounting are hereby preserved.    Each Account Notice Party shall serve on the others a notice of objections with respect to such accounting within five (5) days following service thereof.    Any unresolved disputes with the Debtors' accounting shall be determined by the Court at a hearing to be held on not less than fifteen (15) days' written notice to the Account Notice Parties.    All amounts in dispute shall remain on deposit in such account pending Court order.    No commingling of amounts on deposit in any such account shall in any way adversely affect, detract from, or otherwise impair the perfection of any Person's lien on such proceeds.

   **11.**    12. *Termination*.    The Debtors' right to use Prepetition Collateral, including Cash Collateral, pursuant to this Order shall automatically terminate (the date of any such termination, the "***Termination Date***") upon the earlier of (i) the effective date of a chapter 11 plan for any

Debtor, without further notice or order of the Court, ~~or~~ **(ii) the breach by any Debtor of its obligations to the Adequate Protection Parties under** this Order or the Original Final Order**, (iii) the appointment of a chapter 11 trustee or an examiner with special powers, (iv) dismissal or conversion to chapter 7 of any of the Debtors' cases,** (ii) the date upon which one of the ~~Lenders~~**Adequate Protection Parties** obtains a Court order providing for the termination of the further use of Cash Collateral.

**12.**    ~~13.~~ *Perfection of Adequate Protection Liens*.  The Adequate Protection Parties are authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Adequate Protection Parties shall, in their sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the Petition Date.

~~14. *No Limitation on Charging Expenses Against Prepetition Collateral*.  The use of Cash Collateral in accordance with this Order or the Original Final Order does not constitute a charge against or recovery from the Prepetition Collateral or Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law.~~

**13.**    ~~15.~~ *Preservation of Rights Granted Under the Order*.  The provisions of this Order shall survive, and shall not be modified, impaired or discharged by, entry of any order which may be entered confirming any plan of reorganization in the Chapter 11 Cases, converting any of the

Chapter 11 Cases to cases under Chapter 7, or dismissing any of the Chapter 11 Cases. Notwithstanding anything contained in this paragraph, nothing in this Order shall limit the Debtors' rights, if any, with respect to unimpairment of the Debtors' prepetition debt.

**14.**    ~~16.~~ *Reservation of Rights*.   Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (ii) the consent judgment entered by the District Court for the District of Columbia, dated February 9, 2012, (iii) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012 (collectively, the "***Consent Obligations***"); and (iv) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

**15.**    ~~17.~~ *Binding Effect; Successors and Assigns*.   The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including the Adequate Protection Parties, the Committee and the Debtors and their respective successors and assigns (including the examiner, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of any of the Debtors, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Adequate Protection Parties and the Debtors and their respective successors and assigns,.

**16.**    ~~18.~~ *No Impact on Certain Contracts/ Transactions*.  No rights of any entity under sections 555, 556, 559, 560 and 561 of the Bankruptcy Code shall be affected by the entry of this Order as to any contract or transaction of the kind listed in such sections of the Bankruptcy Code.

**17.**    ***Continuation*** *of the Original Final Order*.  **Nothing in this Order shall diminish in any way the rights and entitlements granted to the Adequate Protection Parties in the Original Final Order.  The Original Final Order shall remain in full force and effect.**

**18.**    ***Reservation of Rights of Adequate Protection Parties.***  **Notwithstanding any other provision hereof, the grant of adequate protection to** the Adequate Protection Parties **pursuant hereto is without prejudice to the right** of the Adequate Protection Parties **to seek modification of the grant of adequate protection provided hereby so as to provide different or additional Adequate Protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the rights of the Adequate Protection Parties under the Existing Agreements, and the Adequate Protection Parties expressly reserve all rights and remedies that the Adequate Protection Parties now or may in the future have under the Existing Agreements and/or applicable law in connection with all defaults and events of default.  Except as expressly provided herein, nothing contained in this Order (including the authorization to use any** Prepetition Collateral**, including Cash Collateral) shall have the effect of, or shall be construed as having the effect of, amending or waiving any covenant, term or provision of the Existing Agreements, or any rights or remedies of the Adequate Protection Parties thereunder, including any right to argue that failure to strictly comply with any such covenant, term or provision during the course** of the Chapter 11 Cases **or that any use of** Prepetition Collateral**, including Cash Collateral, permitted or contemplated**

hereby constitutes a default or event of default that is not subject to cure under section 1124 of the Bankruptcy Code or otherwise despite any consent or agreement contained herein. Consent by the Adequate Protection Parties to the entry of this Order is without prejudice to any right, claim or argument that the Adequate Protection Parties may have with respect to whether there has been diminution in value of any Prepetition Collateral, including from the use of Cash Collateral (including the Adequate Protection Payments to AFI), pursuant to this Order or the Original Final Order, or otherwise, and whether the use of Cash Collateral (including the Adequate Protection Payments to AFI) pursuant to this Order or the Original Final Order has conferred a benefit on each of the Adequate Protection Parties, including the Junior Secured Parties.

19.    *Recharacterization of Payments*.  Notwithstanding anything else herein, to the extent the Adequate Protection Parties' respective Prepetition Obligations are determined by this Court to be undersecured or invalid, any party in interest may seek, subject to further order of the Court, to recharacterize Adequate Protection Payments and any other postpetition payment of interest and/or fees to the applicable Adequate Protection Parties as payments of the principal of the applicable Prepetition Obligations.

20.    *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to April 19, 2013 immediately upon the entry hereof.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Order.

      21.    *Objections Overruled*.  Any objection that has not been withdrawn or resolved is, to

the extent not resolved, hereby overruled.

Dated: _____ ___, 2013
      New York, New York

                                  _____
                                  UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**("Disposition Costs" to be Provided by the Debtors)**