**Hearing Date: May 23, 2013 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: May 13, 2013 at 5:00 p.m. (prevailing Eastern Time)**

Talcott J. Franklin
Talcott Franklin P.C.
208 North Market Street, Suite 200
Dallas, Texas 75202
Phone: (214) 736-8730
tal@talfranklin.com

Aaron R. Cahn
Leonardo Trivigno
Carter, Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
Phone: (212) 732-3200
bankruptcy@clm.com

Thomas P. Sarb
Robert Wolford
Miller Johnson
Calder Plaza Building
250 Monroe Avenue NW, Suite 800
Grand Rapids, MI 49503-2250
Phone: (616) 831-1748
sarbt@millerjohnson.com

*Attorneys for the Talcott Franklin Investors Group*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                                   :       Case No.:  12-12020 (MG)
                                                        :
RESIDENTIAL CAPITAL, LLC, et al.,                       :       Chapter 11
                                                        :
              Debtors.                                  :       Jointly Administered
                                                        :
                                                        :
                                                        :
------------------------------------------------------------x

## TALCOTT FRANKLIN INVESTORS GROUP'S OPPOSITION TO THE MOTION TO PRECLUDE THE TESTIMONY OF TALCOTT J. FRANKLIN

The Talcott Franklin Investors Group ("*TFIG*"), by its counsel Carter Ledyard &

Milburn LLP, Miller Johnson and Talcott Franklin, P.C. ("*TFPC*"), hereby respond to the

motion by the Official Committee of Unsecured Creditors (the *"Committee"*) to preclude the

testimony of Talcott J. Franklin at the hearing of the Debtors' Rule 9019 motion.[1]   The

Committee's motion to preclude is a baseless (and belated) attempt to preclude Mr. Franklin's

testimony, which relies upon a mischaracterization of the September 19, 2012 hearing (the

*"Hearing"*) and inapposite legal authority.   Mr. Franklin should be not be precluded from

testifying as to matters that are highly relevant and would be beneficial to the Court in its

evaluation of the RMBS Settlement.   For the reasons stated below, the Committee's motion

should be denied.[2]

## PRELIMINARY STATEMENT

The TFIG comprises approximately 55 institutions which hold and/or control interests in

notes, bonds and/or certificates (collectively, the *"Securities"*) backed by residential mortgage

loans held by certain of the securitization trusts (the *"RMBS Trusts"*).   The TFIG holds or

controls 25% of one or more classes of Securities in at least 181 RMBS Trusts of the 392 RMBS

Trusts at issue in the RMBS Settlement.

In 2011, certain TFIG investors holding Securities decided to pursue various claims

against sellers and servicers of the loans underlying the Securities, as well as claims against

affiliates of those sellers and services, including Ally Financial, Inc. (*"AFI"*).   To that end, Mr.

Franklin, along with other members of TFPC, met with Tammy Hamzehpur, David Hagins, John

Rucksdaschel and Brad Smith, all of whom were in-house counsel or outside counsel for

Residential Capital LLC (*"ResCap"*), to discuss the nature and extent of investor group's claims,

the damages the investors had suffered to date and a possible resolution of the Securities holders'

---

[1] The Committee's motion was joined by MBIA Insurance Corporation (*"MBIA"*) [Docket No. 3632] and Financial
Guaranty Insurance Company (*"FGIC"*) [Docket No. 3618].  This opposition applies with equal force to MBIA's
and FGIC's joinders to the Committees motion to preclude.

[2] Undefined terms have the meanings given to them in the Committee's motion.

claims. The discussion also involved ResCap's representatives learning from the TFIG's counsel the global settlement techniques the TFIG's counsel had used to resolve claims against Fremont General Corporation and its affiliates.

This meeting failed to produce a settlement. Thereafter, certain TFIG investors directed the Trustees of over 20 RMBS Trusts to commence a veil-piercing action against AFI asserting claims for (i) breaches of representation and warranties, (ii) breaches of servicing obligations, and (iii) conversion. At that time, these Securities holders represented the only credible threat of suit against AFI on behalf of the RMBS Trusts.

Following the issuance of the direction to the Trustees to commence an action, but prior to commencing any action, the TFIG re-commenced settlement talks with the Debtors, at this time joined by AFI. These discussions were focused on broad and significant goals that would benefit all investors in the RMBS Trusts and included: (i) ensuring a minimally disruptive servicing transition from ResCap entities to a prospective purchaser of the servicing rights and obligations; (ii) obtaining as much of the proceeds of any sale of servicing rights as possible to compensate Securities holders; (iii) preserving claims against non-ResCap entities related to the servicing of the RMBS Trusts; (iv) obtaining compensation for investor claims, including the claims of the RMBS Trusts; (v) requiring a contribution by AFI to fund payment of investor claims; and (vi) ensuring that all investors in an RMBS Trust had an opportunity to evaluate any settlement, and could choose to "opt out" of the settlement under appropriate circumstances.

These negotiations continued until just prior to the Debtors' filing for Chapter 11 relief. Immediately prior to the petition date, the TFIG learned that the Debtors were also negotiating a settlement with another group of Securities' holders, the self-named Steering Group Committee, represented by Gibbs & Bruns. At this time, the Debtors provided a draft settlement agreement

3

7211737.5

to the TFIG that contained many of the provisions that the TFIG had requested in the negotiations prior to the bankruptcy filing. As such, the TFIG thereafter focused its attention on two narrow issues: (i) ensuring the RMBS Trusts did not waive claims against non-ResCap entities; and (ii) ensuring that the agreement provided an adequate opportunity for the Trustees to evaluate and participate if they desired in the agreement. The TFIG successfully negotiated language protecting their rights to pursue claims against non-ResCap entities. Although the Debtors refused to amend the draft agreement to enlarge the Trusts' time accept the agreement, this provision was ultimately amended in accordance with the recommendations of the TFIG. The TFIG executed the RMBS Settlement on May 13, 2012, and other clients joined later as the RMBS Settlement became public.

In accordance with paragraph 6 of the Second Revised Omnibus Scheduling Order dated September 25, 2012 [Docket No. 1551], on October 5, 2012, the TFIG notified all parties that it had designated Mr. Talcott J. Franklin as a fact witness to be called at the hearing on the Debtor's 9019 motion. See Talcott Franklin Group Fact Witness Designation dated October 5, 2012 [Docket No. 1732] (the "*October Designation*"). The October Designation notified all parties that Mr. Franklin would offer "fact testimony" regarding:

> (i) the basis and nature of the Talcott Franklin Group's claims against the Debtors, Ally Financial, Ally Bank and Ally Securities; (ii) the efforts the Talcott Franklin Group undertook to recover damages based on the Debtors' violations of the representations and warranties in the securitization documents relating to the Talcott Franklin Group's investments and for the Debtors' servicing violations with regard to the same investments; (iii) the Talcott Franklin Group's negotiations with Debtors, the Ally entities, and their counsel regarding the settlement and compromise of its claims; (iv) the Talcott Franklin Group's communications with the trustees for the trusts in which the Talcott Franklin Group's investments have been made; and (v) the Talcott Franklin Group's analysis of the benefits of the RMBS Trust Settlement Agreement between the Debtors and the Talcott Franklin Group.

4

7211737.5

<u>See</u> October Designation, p. 2.[3]  In accordance with the Third Revised Scheduling Order, the

Committee had until November 16, 2012 to complete depositions of fact witnesses.  <u>See</u> Third

Revised Scheduling Order dated October 23, 2012 [Docket No. 1926], ¶ 3.  The Committee

failed to notice Mr. Franklin's deposition or otherwise seek to depose him.

After waiting over seven months, the Committee has now moved to preclude Mr.

Franklin's testimony based on a mischaracterization of the statements made at the Hearing and

reliance upon inapposite authorities.  First, the Committee erroneously argues that Mr. Franklin

cannot be permitted to testify because the Court prohibited his deposition at the Hearing.

Committee Motion, pp. 2-3.  But the parties' pre-Hearing submissions and the Hearing transcript

itself belie the Committee's argument.  The relevant issue at the Hearing was whether, and to

what extent, adverse parties could depose *the Debtors' attorneys*.  The Court's decision at the

Hearing had no bearing on whether the Committee could depose Mr. Franklin, nor has Mr.

Franklin ever taken the position that the Committee did not have the right to depose him.

Moreover, to the extent that the Committee legitimately believed that the Court's decision

prohibited Mr. Franklin's deposition, following receipt of the October Designation, it could have

sought leave to conduct Mr. Franklin's deposition.  It did not, and having failed to do so, it

cannot now seek to preclude Mr. Franklin's testimony on this ground.

Second, the Committee argues that Rule 3.7 of the New York Professional Code prohibits

Mr. Franklin from testifying at the hearing on the 9019 motion.  Committee Motion, pp. 4-7.

The Committee's argument is utterly misplaced.  Rule 3.7, i.e., the witness-advocate rule, only

applies where an attorney is acting as trial counsel, and thus it has no application here.  In any

event, the Committee's motion ignores unambiguous Second Circuit precedent making clear that

---

[3] In accordance with the Fifth Revised Scheduling Order [Docket No. 3306], the Talcott Franklin Group will file the Declaration of Talcott J. Franklin on or before May 14, 2013.

7211737.5

Rule 3.7 cannot be used to preclude otherwise admissible evidence. As explained below, Mr.

Franklin will provide unique testimony regarding the nature of the claims held by the TFIG and

the TFIG-ResCap negotiations that took place in 2011 and 2012, and thereby, among other

things, rebut any contention that the RMBS Settlement was in any way the product of collusion.

## ARGUMENT

### I. The Hearing Concerned the Permissibility of Deposing Debtors' Counsel and Had No Bearing on the Permissibility of Deposing Mr. Franklin

The Committee erroneously argues that Mr. Franklin's testimony should be precluded

because at the Hearing "the Court sustained the objection to lawyers' depositions and directed

that discovery proceed without them." Committee Motion, p. 3. This argument rests on a

mischaracterization of the issue raised and decided at the Hearing. With respect to depositions of

attorneys, the Court's decision at the Hearing concerned the permissibility of deposing the

Debtors' counsel. It had no bearing on whether the Committee could depose Mr. Franklin. In

fact, Mr. Franklin's deposition was not raised, discussed or in any way adjudicated at the

Hearing. Moreover, contrary to the Committee's baseless assertions, whatever positions

expressed by Ms. Patrick at the Hearing were on behalf of her clients only. She did not purport

to – and more importantly was not authorized to – speak for the TFIG. Indeed, it has been

repeatedly made clear to the Committee that Ms. Patrick does not, and cannot, speak for the

TFIG.

The Hearing occurred amid the backdrop of discovery disputes that had arisen between,

*inter alia*, the Debtors, the Committee, AFI, MBIA and Wilmington Trust Company, as Trustee

for the Senior Unsecured Notes (the "*SUNs*"). A day before the Hearing, the Debtors filed a

status report [Docket No. 1470] (the "***Debtors' 9/18 Report***") informing the Court that the

Committee and SUNs insisted upon depositions of the Debtors' in-house and outside counsel,

7211737.5

which the Debtors viewed as "prohibited" by applicable Second Circuit case law.  See Debtors'

9/18 Report, pp. 4-5 (refusing to agree to depositions because proposed deponents were "a group

comprised almost exclusively of the Debtors' in-house and retained attorneys.").  In responding

to the Debtors' 9/18 Report, the SUNs made clear that the dispute was limited to the depositions

of Debtors' outside counsel.  See MBIA Status Report dated September 18, 2012 [Docket No.

1478], ¶ 13 (the Debtors' position is that "the parties identified as being principally responsible

for negotiating the RMBS Trust Settlement – *four Morrison & Foerster attorneys* – would not be

subject to depositions.") (emphasis added).   No party raised the issue of Mr. Franklin's

deposition in their pre-Hearing submissions.[4]

Accordingly, the issue addressed at the Hearing was a narrow one – whether, and to what

extent, adverse parties would be permitted to depose Debtors' attorneys.  Indeed, at the very

outset of the Hearing, Debtors' counsel framed the issues as whether the Committee should be

entitled to take "the depositions of the people who run these cases. . . . [T]he people who run

these cases, Judge, are the in-house lawyers at ResCap . . . and the principal people at Morrison

& Foerster."  9/18/12 Tr. 16:1-12; see also id. at 17:23-25; 39:2-40:18; 73:23-74:8.  At the

conclusion of the Hearing, the Court permitted the deposition of in-house counsel, but prohibited

the deposition of outside counsel absent leave of the Court.  Id. at 143:12-144:1.[5]

---

[4] The only discovery request received by the TFGI were document requests served by the Committee.  The
Committee reported no substantive objections to the TFGI's production.  See Committee Status Report, dated
September 18, 2012, Exhibit A, p. 3 [Docket No. 1477].

[5] The Committee's citations to the Hearing transcript are unavailing.  See Committee Motion, pp. 2-3.  The
Committee cites to passages that relate to the permissibility of deposing Debtors' attorneys.  See, e.g., 9/18/12 Tr. 16
(discussing depositions of "people who run these cases"); 39-40 (discussing Debtors' attorneys who negotiated the
RMBS Settlement).  The Committee also cites to the Court's discussions with Ms. Patrick regarding depositions of
lawyers in general.  These passages provide no support for the Committee's argument, however, because, as noted
above, the Court expressly stated it would not rule upon the issue of Ms. Patrick's deposition at the Hearing.  See id.
at 60:12-13; see also id. at 143:12-144:1.

7211737.5

No party raised the issue of deposing Mr. Franklin at the Hearing. To the extent that depositions of non-Debtors' attorneys was discussed at all, the Court made clear it would not decide the issue at the Hearing. Id. at 60:12-13 ("The Court: I'm not deciding [the issue of whether Ms. Patrick can be deposed] on the basis of status reports. Okay?"). In any event, to the extent that the Committee legitimately believed that the Court had precluded Mr. Franklin's deposition at the Hearing – an interpretation belied by the pre-Hearing submissions and the Hearing transcript – the Committee could have sought leave of the Court to depose Mr. Franklin, which the Court expressly informed the Committee it could do. 9/18/12 Tr. 143:25-144:4.[6]

The Committee also takes the erroneous position that at the Hearing Ms. Patrick spoke on behalf of the TFIG. Committee Motion, p. 3, n. 2. Once again, this argument is belied by the Hearing transcript. At least twice, Ms. Patrick made clear that she spoke only on behalf of her clients, the Steering Group Committee. See 9/18/12 Tr. 50:23-24; 115:17. At no point did Ms. Patrick indicate that she was speaking on behalf of the TFIG, nor was she ever authorized to do so. Any contention to the contrary is unfounded. In fact, Ms. Patrick expressed exactly the opposite contention; she clearly and unambiguously differentiated herself and her clients from all other parties, including the TFIG, in the bankruptcy proceeding. Id. at 54:24 (the Steering Committee Group was "unique[ ] among everybody here").

The TFIG took no part in, and asserted no position with respect to, the issues raised at the Hearing. At all relevant times, Mr. Franklin was willing and available to sit for a deposition. It would seem that having the ability to depose only eleven fact witnesses (see Third Revised Scheduling Order, ¶ 3), the Committee opted not to depose Mr. Franklin (or seek leave to do so). The Committee cannot now – seven months after the filing of the October Designation and six

---

[6] Additionally, assuming the Court's decision could have been fairly read to apply to Mr. Franklin, the TFGI would undoubtedly have waived any argument that he should be shielded from a deposition once they voluntarily designated Mr. Franklin as a fact witness.

8

7211737.5

months after the closing of fact discovery – use their own failure as grounds to preclude Mr. Franklin's testimony.

Moreover, there is no surprise here. At the beginning of the case, Mr. Franklin spoke at length on several different occasions with several members of the Committee about the very subjects of his testimony. The Committee asked numerous questions and received fulsome answers. The Committee knows exactly what Mr. Franklin intends to say in support of the RMBS Settlement. Accordingly, this argument lacks merit, Mr. Franklin should be not be precluded from testifying and the Committee's motion should be denied.

**II.    The Witness-Advocate Rule Is Inapplicable As Mr. Franklin is Not Trial Counsel and Will Be Testifying as a Fact Witness with Unique Testimony Concerning the Negotiation of the RMBS Settlement**

Rule 3.7 of the New York Rules of Professional Conduct applies when "the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding.*" Ramey v. District 141, International Association of Machinists & Aerospace Workers, 378 F.3d 269, 282 (2d Cir. 2004) (emphasis in the original); N.Y. Rules of Prof'l Conduct R. 3.7 (2012). The rule seeks to prevent (i) the possibility that the lawyer will enhance his credibility as an advocate by virtue of his testimony, (ii) the unfairness or difficulty in cross-examining opposing counsel, and (iii) the appearance that the lawyer is distorting the truth for the benefit of his client. Ramey, 378 F.3d at 282. These concerns "are absent, or at least greatly reduced, when [as here] the lawyer-witness does not act as trial counsel." Id.; Murray v. Metropolitan Life Ins., 583 F.3d 173, 179-80 (2d Cir. 2009) (holding litigator who was a member of trial team but would not be presenting the case in the courtroom was not "properly considered trial counsel for the purpose of Rule 3.7(a)"); Bottaro v. Hatton Associates, 680 F.2d 895, 897 (2d Cir. 1982) (purposes of DR5-102, the predecessor to Rule 3.7, are not implicated when a lawyer is not an advocate

before the tribunal); <u>Finkel v. Frattarelli Bros.</u>, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) (Rule 3.7 only applies "when the attorney actually serves as an advocate before the jury").

In light of the "opportunistic abuse" afforded by Rule 3.7, courts have recognized that motions under this rule are subject to "strict scrutiny." <u>Murray</u>, 583 F.3d at 178; <u>see also</u> <u>Finkel</u>, 740 F. Supp. 2d at 374 (the "Second Circuit in particular has repeatedly indicated that [Rule 3.7] [is] not to be rigidly applied.") (<u>quoting</u> <u>Renner v. Townsend Fin. Servs.</u>, No. 98-cv-926 (CSH), 2002 WL 1013234 at *6 (S.D.N.Y. May 20, 2002). In no event does Rule 3.7 permit the exclusion of admissible testimony. <u>See</u> <u>Ramey</u>, 378 F.3d at 283; <u>Samad Bros., Inc. v. Bokara Rug Co. Inc.</u>, 09 Civ. 5843 (JFK) (KNF), 2012 WL 1604849, at *4 (S.D.N.Y. May 8, 2012) ("the advocate-witness rule does not provide a basis for the exclusion of otherwise admissible testimony").

The Committee's reliance on Rule 3.7 as a means to preclude Mr. Franklin's testimony is utterly misplaced. As a threshold matter, even assuming Rule 3.7 applies, the Committee's motion must fail because the rule simply does not allow for the preclusion of otherwise admissible evidence. <u>See</u> <u>Ramey</u>, 378 F.3d at 283; <u>Samad Bros.</u>, 2012 WL 1604849, at *4. Indeed, the rule expressly provides that the Court may authorize the testimony. Rule 3.7(a)(5).

In any event, Rule 3.7 is inapplicable because the Debtors – not Mr. Franklin or TFPC – will be litigating before the Court. To avoid duplicative filings, it has always been contemplated that the Debtors would take the lead on the motion to approve the RMBS Settlement and the TFIG would devote its efforts to providing factual background in support of the RMBS Settlement. Thus, the Debtors have issued discovery demands, responded to discovery, litigated discovery disputes before the Court, hired experts and made various pre-trial motions. And the Debtors – not Mr. Franklin or TFPC – will sit at counsel's table, raise objections, make opening

or closing statements and cross-examine witnesses. Moreover, as the hearing on the Debtors'

9019 motion is before the Court – and not before a jury – any argument that Mr. Franklin's

testimony will be unfairly bolstered by his status as an attorney is severely undermined. Ramey,

378 F.3d at 282.

There is simply no basis for the Committee's argument. Tellingly, the Committee has not

even attempted to meet its burden to show that Rule 3.7 somehow applies or that its motion is

more than mere gamesmanship.[7] Indeed, the fact that the TFIG investors voluntarily designated

Mr. Franklin as a fact witness "militates strongly" in favor of denying the Committee's motion.

See Murray. 583 F.3d at 180.

Mr. Franklin's testimony is relevant and will be beneficial to the Court's evaluation of

the RMBS Settlement. Mr. Franklin will be testifying as a fact witness regarding the bases and

nature of the TFIG's claims, the damages suffered as a result, the TFIG-ResCap negotiations, the

TFIG's communications with the Trustees and the TFIG's analysis of the benefits of the RMBS

Settlement. October Designation, p. 2. Mr. Franklin will testify that the RMBS Settlement was

not the result of any collusion among the Certificateholders and the Debtors, but was instead the

result of arms-length and good faith negotiations. Mr. Franklin's testimony regarding TFIG's

willingness to commence an action against AFI, and specifically their direction to the Trustees to

do so, is highly relevant because it directly rebuts the notion that TFIG and AFI were involved in

any collusion. Mr. Franklin alone among the potential witnesses will be able to testify as to the

lack of cooperation during the negotiations between the TFIG and the Steering Group

Committee, which further undermines any notion of collusion.

---

[7] The Committee fails to cite to a single case in which a witness was precluded from testifying pursuant to Rule
3.7. See U.S v. Alu, 246 F.2d 29, 33-34 (2d Cir. 1957); U.S. v. Bin Laden, 91 F. Supp. 2d 600, 625 (S.D.N.Y.
2000); Ramey, 378 F.3d at 283.

7211737.5

Mr. Franklin will also provide testimony regarding the origins of, and valuable context for, many of the terms of the RMBS Settlement. In short, contrary to the Committee's self-serving and conclusory assertions, Mr. Franklin's proposed testimony cannot adequately be addressed through other sources of evidence. Unsurprisingly, the Committee cites to no such evidence. For these reasons, the Committee's motion should be denied.

## CONCLUSION

For the reasons set forth above, (i) the Committee's motion to preclude the testimony of Talcott J. Franklin should be denied, and (ii) the Talcott Franklin Investors Group should be granted any such further relief this Court deems appropriate.

Dated:  New York, New York
        May 13, 2013

CARTER LEDYARD & MILBURN LLP

By:        /s/ Aaron R. Cahn
           Aaron R. Cahn
           Leonardo Trivigno
           2 Wall Street
           New York, New York 10005
           (212) 732-3200
           bankruptcy@clm.com

           MILLER JOHNSON
           Thomas P. Sarb
           Robert D. Wolford
           Calder Plaza Building
           250 Monroe Avenue NW, Suite 800
           Grand Rapids, MI 49503-2250
           (616) 831-1700
           sarbt@millerjohnson.com

           TALCOTT FRANKLIN P.C.
           Talcott J. Franklin
           208 North Market Street, Suite 200
           Dallas, Texas 75202
           Phone: (214) 736-8730
           tal@talfranklin.com
           *Attorneys for the Talcott Franklin Investors Group*

12

7211737.5