## II. PROCEDURAL BACKGROUND

### A. COMMENCEMENT OF CHAPTER 11 CASES

On the Petition Date, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. Pursuant to Bankruptcy Rule 1015, the Chapter 11 Cases have been consolidated for procedural purposes. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to section 1107 of the Bankruptcy Code.

#### 1. *The Official Committee Of Unsecured Creditors*

On May 16, 2012, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code. The current members of the Creditors' Committee are: (1) Wilmington Trust; (2) Deutsche Bank Trust Company Americas; (3) The Bank of New York Mellon Trust Company, N.A.; (4) MBIA Insurance Corporation; (5) Rowena L. Drennen; (6) AIG Asset Management (U.S.), LLC; (7) U.S. Bank National Association; (8) Allstate Life Insurance Company; and (9) FGIC.

#### 2. *The Committee's Rule 2004 Motion And Bankruptcy Court Order*

On June 1, 2012, the Creditors' Committee filed the Committee Rule 2004 Motion. Pursuant to the Committee Rule 2004 Motion, the Creditors' Committee requested an order for production of documents and testimony by, among others, the Debtors pursuant to Rule 2004. No objections to the Committee Rule 2004 Motion were filed. On June 5, 2012, the Bankruptcy Court entered the Committee Rule 2004 Order.

#### 3. *Examiner Motion, Order, And Appointment*

On June 4, 2012, Berkshire Hathaway filed the Examiner Motion requesting the appointment of an examiner to investigate and report on the actions of the Debtors, including the Debtors' prepetition transactions with AFI, any claims that the Debtors may hold against their officers or directors, any claims that the Debtors may hold against AFI's officers and directors, and any claims that the Debtors propose to release as part of their plan. The Debtors and the Creditors' Committee opposed the Examiner Motion. The U.S. Trustee filed a response to the Examiner Motion, arguing that the appointment of an examiner was mandatory under section 1104(c)(2) of the Bankruptcy Code because the Debtors' unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceeded $5 million.[1]

---

[1] Section 1104(c)(2) of the Bankruptcy Code provides, in pertinent part, that:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate . . . if. . . (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(2).

On June 20, 2012, the Bankruptcy Court issued the Examiner Memorandum Opinion, pursuant to which the Bankruptcy Court granted the Examiner Motion. On June 28, 2012, the Bankruptcy Court entered the Examiner Order directing the U.S. Trustee to appoint an examiner in the Chapter 11 Cases. In addition, the Examiner Order directed the examiner to conduct an investigation. The U.S. Trustee appointed Arthur J. Gonzalez as examiner on July 3, 2012. On that same date, the Bankruptcy Court entered the Examiner Approval Order, pursuant to which the Bankruptcy Court approved the appointment of Arthur J. Gonzalez as Examiner.

### 4. The Examiner's Retention Of Professionals

On July 11, 2012, the Examiner selected Chadbourne & Parke LLP as his counsel, subject to Bankruptcy Court approval. Thereafter, the Examiner selected Mesirow Financial Consulting, LLC as his financial advisor, subject to Bankruptcy Court approval. In addition, the Examiner selected Wolf Haldenstein Adler Freeman & Herz LLP as conflicts counsel due to certain potential conflicts of Chadbourne & Parke LLP. In mid-April 2013, the Examiner selected Leonard, Street & Deinard as special Minnesota counsel. The Bankruptcy Court approved: (1) the retention of Chadbourne & Parke LLP *nunc pro tunc* to July 11, 2012 by order dated August 9, 2012; (2) the retention of Mesirow Financial Consulting, LLC *nunc pro tunc* to July 24, 2012 by order dated August 29, 2012; (3) the retention of Wolf Haldenstein Adler Freeman & Herz LLP as conflicts counsel *nunc pro tunc* to October 15, 2012 by order dated December 27, 2012; and (4) the retention of Leonard, Street & Deinard as special Minnesota counsel *nunc pro tunc* to April 15, 2013 by order dated April 29, 2013.

### 5. Scope Of The Investigation And Examiner Work Plan

Pursuant to the Examiner Order, and in accordance with the Examiner Memorandum Opinion, the Examiner was directed to conduct an investigation, the scope and timing of which was to be determined by the Bankruptcy Court after the Examiner conferred with various parties in interest. In the Examiner Memorandum Opinion, the Bankruptcy Court noted that:

> [t]he scope, timing and budget for the examiner's investigation will be set by the Court after the examiner is appointed and confers with other parties in interest. In the first instance, the scope of the investigation established by the [Committee Rule] 2004 Order sets the appropriate scope parameter for the investigation, subject to later adjustment if necessary.[2]

Beginning on July 18, 2012, the Examiner conducted a series of meetings and telephonic calls with representatives of the Debtors, the Creditors' Committee, Berkshire Hathaway, AFI, and certain holders of the Debtors' Unsecured Notes. The principal purpose of these meetings was to learn more about the Chapter 11 Cases and to ascertain each party's preliminary views

---

[2] Examiner's Memorandum Opinion, at 6 n.4.

regarding the scope and timing of the Investigation. The Examiner invited the parties to share their views on these matters, as well as on the legal and factual issues implicated by the Investigation.

On July 24, 2012, the Bankruptcy Court held a Chambers conference at which the Examiner and his counsel and counsel for various parties in interest presented their respective views regarding the scope of the Investigation and estimates of the time necessary to complete the Investigation and prepare a report. After the Chambers conference, the Examiner discussed the scope of Investigation and the terms of the Examiner Scope Approval Order with the various parties in interest. Thereafter, on July 27, 2012, the Bankruptcy Court entered the Examiner Scope Approval Order setting forth the following minimum scope of the Investigation:

> a. all material prepetition transactions and all material verbal or written agreements or contracts between or among the Debtors on the one hand and any one or more of Ally Financial Inc., f/k/a GMAC LLC, and any of its current and former, direct and indirect affiliates and subsidiaries (collectively, "AFI"), Cerberus Capital Management, L.P. and any of its current and former direct and indirect affiliates and subsidiaries including Cerberus FIM, LLC, Cerberus FIM Investors LLC, and FIM Holdings LLC (collectively, "Cerberus") and/or Ally Bank, a commercial state non-member bank chartered under the laws of the State of Utah (f/k/a GMAC Bank) ("Ally Bank") on the other hand including (i) material agreements concerning transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts, (ii) any payments, dividends or capital contributions, (iii) any extension of loans or lines of credit including any factoring arrangements, (iv) any debt, or liens related thereto, or the transfer, assignment, repayment or forgiveness of such debt, (v) any claims and all payments made on account of such claims, and (vi) any transfers of cash, assets, property, stock, contracts, or other items of value (collectively, the "Prepetition Transactions and Agreements");[3]

---

[3] The Examiner's Investigation of certain of the Debtors' entry into and performance under the "Consent Order," "DOJ/AG Settlement" and "CMP," each as defined and described in paragraphs 86 through 90 of the of the "Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petition and First Day Pleadings," dated May 14, 2012 will be limited to the propriety of the allocation of obligations as among the Debtors and AFI under the "Consent Order," "DOJ/AG Settlement" and "CMP." (footnote appears in original).

b. the negotiation and entry into any plan sponsor, plan support, or settlement agreement, the debtor-in-possession financing with AFI, and the stalking horse asset purchase agreement with AFI, and any servicing agreement with Ally Bank (collectively, the "Postpetition Transactions and Agreements");

c. (i) the activities of the Debtors' officers and board of directors (including any subcommittee thereof) concerning (A) the Prepetition Transactions and Agreements, (B) the Postpetition Transactions and Agreements, and (C) the investigation of the validity of claims against AFI, and (ii) the recruitment, compensation and indemnification of the Debtors' officers and the members of the Debtors' board of directors (including any subcommittee thereof);

d. the corporate relationships between or among the Debtors, AFI, Cerberus and/or Ally Bank and the conduct of each of these entities in connection with the Debtors' decisions (i) to file (or to refrain from filing, or delaying the filing of) voluntary petitions under Chapter 11 of the United States Bankruptcy Code, (ii) to pursue (or refrain from pursuing) a sale of substantially all of their assets, and (iii) to enter into the Prepetition Transactions and Agreements and the Postpetition Transactions and Agreements;

e. all state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders;

f. all state and federal law claims or causes of action the Debtors propose to release or to be released as part of their plan including (i) preference and fraudulent transfer claims, (ii) equitable subordination claims, (iii) alter ego and veil piercing claims, (iv) debt recharacterization claims, (v) constructive trust and unjust enrichment claims, (vi) breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, (vii) securities law claims, and (viii) claims held by third parties, i.e., parties that are not affiliates of the Debtors, against current and former directors and officers of the Debtors and against AFI and its insiders including current and former directors, officers, and shareholders; and in respect of the claims identified in subclause (viii) of this paragraph [6], the Examiner will (A) investigate the merits of such claims, (B) analyze the sufficiency of the consideration to be provided for such third

      party releases, and (C) solicit the parties' views concerning the merits of such claims and the potential amount of damages arising from such claims, but the Examiner will not attempt to independently quantify such damages;

g.   the value of the releases contemplated by the Debtors including the releases by the Debtors' estates of all claims against current or former directors and officers of the Debtors, and against AFI and its insiders including current and former directors, officers, and shareholders, and the proposed releases by third parties of claims against AFI; and

h.   other matters affecting the Debtors' assets, liabilities, and financial condition including all intercompany claims and the Debtors' solvency, capital adequacy and ability to pay debts as such debts become due at various dates prior to the Petition Date.[4]

Upon review of the Examiner's Preliminary Statement, the Bankruptcy Court entered the Examiner Scope Approval Order, pursuant to which the Bankruptcy Court (1) approved the scope of the Investigation as set forth in the Examiner's Preliminary Statement and (2) required the Examiner to file a formal work plan. On August 6, 2012, the Examiner filed the Examiner Work Plan. To address certain inquiries regarding the Examiner Work Plan, the Examiner filed the Examiner Work Plan Supplement on August 23, 2012. The Examiner filed the Examiner Work Plan Second Supplement and the Examiner Work Plan Third Supplement, both describing modifications to the time frame for the preparation of the Report, on November 26, 2012 and February 8, 2013, respectively. On April 5, 2013, the Examiner filed the Examiner Work Plan Fourth Supplement containing an updated estimate for the fees of the Examiner and his professionals.

## B. CONDUCT OF THE INVESTIGATION

### 1. Initial Stage Of The Investigation

After reviewing the pleadings, the Examiner and his professionals began the Investigation by conducting meetings with interested parties to learn the issues and the parties' substantive positions and contentions.[5] In addition, the Examiner entered into a provisional confidentiality agreement with the Debtors in order to obtain immediate access to documents they had already produced that were germane to the Investigation. Review of the documents began upon receipt.

---

[4] Examiner Scope Approval Order, Ex. A, at 3–5.

[5] Several parties, including AFI, Wilmington Trust, the Creditors' Committee, and the Debtors provided the Examiner and his professionals with written presentations and materials setting forth their respective positions and conclusions.

2. *Rule 2004 Motion And Request For Production Of Documents*

In order to facilitate the Examiner's ability to timely and efficiently complete a comprehensive investigation and fulfill his duties, the Examiner filed the Examiner Rule 2004 Motion pursuant to which the Examiner requested an order:

(1) authorizing the Examiner to issue subpoenas for the production of documents and the examination of persons and entities determined by the Examiner to have information relevant to the Investigation;

(2) establishing procedures governing responses to those subpoenas;

(3) approving the establishment of the Document Depository, a central document depository, and procedures to govern its use; and

(4) approving the Protective Order, a uniform order governing the Examiner's discovery.

Cerberus and AFI filed limited objections to the Examiner Rule 2004 Motion. The Debtors filed a statement with respect to the Examiner Rule 2004 Motion stating their support of the Examiner's request to establish the Document Depository and discovery protocol. The Examiner filed a reply to the objections.

On August 20, 2012, the Bankruptcy Court entered the Examiner Rule 2004 Order pursuant to which, among other things, the Examiner was authorized to issue subpoenas necessary to compel the production of documents and the testimony of witnesses in connection with the Investigation. Pursuant to the Examiner Rule 2004 Order, subpoenaed parties generally had ten days from the service of a subpoena to either (1) produce all responsive documents requested in the Examiner's subpoena, "as soon as is reasonably practicable," using "reasonable best efforts," or (2) file an objection or response to the subpoena with the Bankruptcy Court.[6] Subpoenaed witnesses were directed to submit to oral examination upon reasonable notice no more than fifteen days from the date of service of the deposition subpoena.

Pursuant to the Examiner Rule 2004 Order, the Examiner established and maintains the Document Depository. The Document Depository is an electronic, Internet-accessible resource that enables approved parties to download or otherwise obtain for review on the software platform(s) of their choosing discovery materials produced to the Examiner in the forms in which they were produced to the Examiner.

In addition, the Bankruptcy Court approved the terms of the Protective Order that governs the disclosure, discovery, production, and use of all discovery material provided to the Examiner in the Chapter 11 Cases, including the information placed into the Document

---

[6] Examiner Rule 2004 Order, at 2.

Depository. The Protective Order serves as a uniform order governing all parties with access to the Document Depository and protecting proprietary information from public disclosure and from usage outside of the Chapter 11 Cases. The Protective Order alleviated the burden on the Examiner of having to negotiate, enter into, and monitor numerous separate confidentiality arrangements with a multitude of parties.

   3.   *Discovery Conducted In Furtherance Of The Investigation*

       a.   *Document Requests And Subpoenas*

Discovery had already begun prior to the appointment of the Examiner. Specifically, on June 11 and 12, 2012, the Creditors' Committee had served Rule 2004 subpoenas on the Debtors, AFI, and Cerberus. The Debtors and AFI had served responses and objections to these subpoenas, and they had begun producing responsive documents.

After discussions with interested parties, the Examiner agreed that the Creditors' Committee's Rule 2004 subpoenas would serve as his initial discovery requests. Supplementing these initial requests, the Examiner propounded further formal written discovery requests to the Debtors on September 4 and 13, 2012, and to AFI on September 4, 13, and 28, 2012. In addition, commencing on August 28, 2012, the Examiner served Rule 2004 subpoenas on numerous other parties.

Parties began producing documents to the Examiner on a rolling basis in late July 2012 and continuing into April 2013. Given time constraints and practical limitations, where reasonably requested by the producing party, the Examiner's Professionals agreed to limit the documents to be produced, by, among other things, designating specific e-mail custodians whose e-mails would be produced. Notwithstanding the agreed-upon limitations, throughout the course of the Investigation, and as discussed below, the Debtors, AFI, and other parties responded to numerous follow-up document requests made by the Examiner's Professionals. For this reason, the Examiner is satisfied that the parties exercised reasonable efforts to respond to the document requests, and that he obtained the substantial production of potentially relevant documents.

A full listing of the formal document requests listed by producing party, date of subpoena or document request, approximate production date, and approximate volume, is set forth in the table below:

EXHIBIT II.B.3.a
**Document Requests and Subpoenas**

| Producing Party(ies) | Date of Subpoena(s) and/or Document Request(s) | Approximates Date(s) of Production | Approximate Volume (Number of Documents/Pages) |
|---|---|---|---|
| Debtors | Jun. 12, 2012; Sep. 4 and 13, 2012 | Jul. 2012–Apr. 2013 | 1,013,162 documents / 5,970,146 pages |
| AFI / Ally Bank | Jun. 11, 2012; Sep. 4, 13, and 28, 2012 | Aug. 2012–Apr. 2013 | 105,808 documents / 948,104 pages |
| Blackstone Group Holdings L.L.C.; Blackstone Group Holdings L.P.; Blackstone Group Limited Partner L.L.C.; Blackstone Group Management, L.P. (Advisor to AFI) | Dec. 6, 2012 | Feb. 1 and 25, 2013 | 656 documents / 3,485 pages |
| Cerberus | Jun. 15, 2012; Aug. 28, 2012 | Aug. 2012–Apr. 2013 | 61,330 documents / 768,560 pages |
| Citigroup Global Banking; Citigroup Global Markets, Inc.; Citigroup Private Equity; Citigroup, Inc. (Advisor to AFI) | Dec. 6, 2012 | Jan. 23, 2013; Feb. 6, 2013; Mar. 21, 2013 | 17,161 documents / 138,435 pages |
| Clayton (RMBS diligence vendor) | Dec. 20, 2012 | Jan. 22, 2013 | 69 documents / 2,942 pages |
| Deloitte & Touche, LLP; Deloitte LLP (ResCap's external auditor 2010 forward) | Feb. 28, 2013 | Mar. 14, 15, and 25, 2013; Apr. 10 and 11, 2013 | 4,843 documents / 39,541 pages |
| General Motors LLC | Oct. 19, 2012 | Nov. 14, 2012 | 112 documents / 842 pages |
| Goldin Associates (Advisor to ResCap) | Aug. 29, 2012 | Oct. 1 and 2, 2012; Nov. 14, 2012; Jan. 25, 2013 | 5,658 documents / 135,297 pages |
| Goldman Sachs (Advisor to ResCap and AFI) | Dec. 6, 2012 | Feb. 5, 11, 12, 14, 19, 25, and 28, 2013; Mar. 14 and 21, 2013 | 13,030 documents / 266,668 pages |
| Karin Hirtler-Garvey; John Ilany; John Mack; Edward Smith; Pam West (Former and current ResCap Independent Directors) | Nov. 29, 2012 | Apr. 3 and 9, 2013 | 39 documents / 323 pages |
| Houlihan Lokey (Advisor to ResCap) | Aug. 28, 2012 | Oct. 2 and 17, 2012; Dec. 18 and 24, 2012 | 4,324 documents / 25,523 pages |
| J.P. Morgan Chase Bank N.A..; J.P. Morgan Securities LLC, as successor to Bear Stearns (Advisor to AFI) | Dec. 6, 2012 | Feb. 1, 4, 12, 13, 22, and 26, 2013; Apr. 11, 2013 | 2,486 documents / 63,032 pages |
| Tom Jacob; Tom Melzer (Former ResCap Independent Directors) | Informal requests starting on Nov. 13, 2012 | Jan. 10 and 20, 2013 | 1,464 documents / 9,313 pages |
| Lazard Ltd. (Advisor to ResCap and AFI) | Sep. 12, 2012 | Oct. 19, 2012; Nov. 9 and 14, 2012; Dec. 20, 2012 | 3,041 documents / 10,492 pages |
| MBIA | Informal requests starting on November 9, 2012 | Jan. 17, and Apr. 1, 2013 | 1,668 documents / 49,382 pages |
| Morgan Stanley (Advisor to ResCap and AFI) | Dec. 6, 2012 | Feb. 19, 2013 | 6,490 documents / 26,980 pages |
| Oliver Wyman, Inc. (Advisor to ResCap) | Nov. 15, 2012 | Dec. 24, 2012; Jan. 9 and 15, 2013; Feb.1 and 26, 2013 | 14,671 documents / 142,513 pages |
| Pentalpha Capital Group LLC; Pentalpha Capital, LLC; Pentalpha Group, LLC (Advisor to Debtors) | Dec. 6, 2012 | Jan. 2 and 8, 2013; Feb. 1 and 25, 2013 | 7,216 documents / 197,010 pages |
| PricewaterhouseCoopers LLP (ResCap's external auditor through 2009) | Feb. 28, 2013 | Mar. 26, 2013; Apr. 5, 2013 | 1,455 documents / 12,612 pages |
| R.R. Donnelley and Sons Company (RMBS diligence vendor) | Dec. 20, 2012 | Jan. 10, 2013; Mar. 4, 2013 | 169 documents / 4,739 pages |
| Sandler O'Neill (Advisor to AFI) | Aug. 29, 2012 | Sep. 21, 2012; Oct. 15, 2012; Dec. 6, 2012 | 1,965 documents / 16,304 pages |
| UBS Securities LLC; UBS Investment Bank (Advisor to ResCap and AFI) | Sep. 21, 2012 | Nov. 1, 2012; Dec. 5, 2012 | 14,453 documents / 71,394 pages |
| Total | | | 1,281,939 documents / 8,939,346 pages |

*b. Witness Interviews*

Beginning in early September 2012 and continuing through April 2013, the Examiner's Professionals conducted eighty-three witness interviews. Documents obtained in response to the subpoenas and discovery requests were shown to the witnesses to facilitate their testimony. The length of the interviews varied, ranging from several hours, to a full day. Some witnesses were asked to, and did, return for further questioning on a second and, in a few cases, third day, to explore topics not covered earlier or to explore a topic in greater detail, oftentimes based on documents produced after the initial interview day. The interviews were audio taped and transcripts were prepared by a court reporting service from the audiotapes. The transcripts were not shared with any party. The transcripts are considered by the Examiner to be his work product for purposes of conducting the Investigation.

With one exception, all of the witnesses voluntarily attended the interviews. (A subpoena was needed to compel the attendance of one individual, although, once served, the individual agreed to testify without the need for a formal deposition.) All witnesses were represented by counsel. Where the witness was a current or former officer of ResCap, typically, the witness was represented by counsel for ResCap (Morrison & Foerster and Carpenter Lipps). Where the witness was a current or former officer of AFI or Ally Bank, typically, the witness was represented by counsel for AFI (Kirkland & Ellis). In some cases, a witness was represented by more than one counsel, usually where the witness had dual or changing roles at ResCap, AFI, and Ally Bank. In a handful of cases, witnesses who were former officers of ResCap or AFI had counsel separate from ResCap's or AFI's counsel.

The interviews were not conducted on notice, as a formal deposition would be, nor were the procedures used typical of a formal deposition. No parties attended the interviews other than the Examiner's Professionals, the witness, the witness' counsel, and, in some instances, counsel for the party or parties for whom the witness had worked or was then working. One session of one witness interview was conducted under oath. All other witness interviews were unsworn proceedings.

Given time constraints and practical limitations, the Examiner's Professionals did not interview every potentially relevant witness. However, given the number of witnesses interviewed, the Examiner's ability to use documents produced in discovery in the interviews, and the follow-up interviews of several witnesses, the Examiner is satisfied that his professionals interviewed the vast majority of the potentially relevant witnesses, concerning the vast majority of relevant topics. A full listing of the interviews, by witness, affiliation, and date, is set forth in the table below:

EXHIBIT II.B.3.b
**Witness Interviews**

| | Witness | Affiliation | Date(s) of Interview |
|---|---|---|---|
| 1. | Steven Abreu | ResCap | Jan. 22, 2013 |
| 2. | David Applegate | ResCap | Dec. 7, 2012<br>Mar. 14, 2013 |
| 3. | Halle Benett | UBS, Advisor to ResCap | Mar. 7, 2013 |
| 4. | Barry Bier | ResCap | Feb. 22, 2013 |
| 5. | Kenneth Blackburn | ResCap | Mar. 26, 2013 |
| 6. | Christopher Blahut | ResCap | Mar. 13, 2013 |
| 7. | Sandy Blitzer | ResCap | Mar. 5, 2013 |
| 8. | Paul Bossidy | Cerberus, ResCap | Dec. 14, 2012 |
| 9. | David Bricker | ResCap | Mar. 15, 2013 |
| 10. | Jeff Cancelliere | ResCap | Jan. 29, 2013 |
| 11. | Michael Carpenter | AFI | Mar. 4, 2013 |
| 12. | William Casey | ResCap | Jan. 31, 2013 |
| 13. | Albert Celini | Ally Bank | Feb. 18, 2013 |
| 14. | Jon Centurino | AFI | Nov. 9, 2012 |
| 15. | Joe Cortese | Ally Bank | Mar. 7, 2013 |
| 16. | Alvero ("Al") de Molina | AFI | Nov. 20, 2012 |
| 17. | Keenan Dammen | ResCap | Apr. 25, 2013 |
| 18. | David J. DeBrunner | AFI | Sep. 13, 2012<br>Apr. 18, 2013 |
| 19. | Timothy Devine | AFI | Mar. 19, 2013 |
| 20. | Cathy Dondzila | ResCap | Sep. 27, 2012<br>Nov. 9, 2012 |
| 21. | Eric Feldstein | AFI | Dec. 14, 2012 |
| 22. | Ralph Flees | ResCap | Jan. 18, 2013 |
| 23. | Lisa Gerner | Ally Bank | Nov. 13, 2012 |
| 24. | Lisa Gess | ResCap, Ally Bank | Nov. 30, 2012 |
| 25. | James Giertz | ResCap | Jan. 25, 2013 |
| 26. | Adam Glassner | ResCap, AFI | Mar. 20, 2013 |
| 27. | John Gray | ResCap | Mar. 1, 2013 |
| 28. | Lisa Gray | Cerberus | Mar. 7, 2013 |
| 29. | Robert Groody | Ally Bank | Dec. 17, 2012 |
| 30. | Isaac Grossman | Counsel to Independent Directors | Apr. 16, 2013 |
| 31. | Mark Hales | Ally Bank | Nov. 28, 2012 |
| 32. | Bill Hall | AFI | Dec. 13, 2012 |
| 33. | Lara Hall | AFI | Nov. 29, 2012 |
| 34. | Tammy Hamzehpour | ResCap | Oct. 5, 2012 |
| 35. | Michael Hebling | Ally Bank | Apr. 16, 2013 |
| 36. | Karin Hirtler-Garvey | ResCap Independent Director, AFI | Dec. 20, 2012 |
| 37. | Robert Hull | AFI | Feb. 7, 2013 |
| 38. | Russell Hutchinson | Goldman Sachs, Advisor to ResCap | Mar. 27, 2013 |
| 39. | Jonathan Ilany | ResCap Independent Director | Nov. 28, 2012 |
| 40. | Thomas Jacob | ResCap Independent Director | Nov. 7, 2012<br>Apr. 17, 2013 |
| 41. | Jim Jones | ResCap | Nov. 30, 2012 |
| 42. | Sanjiv Khattri | AFI, ResCap | Oct. 25, 2012<br>Apr. 5, 2013 |
| 43. | Ronald Kravit | Cerberus, ResCap Director | Mar. 4, 2013 |
| 44. | Gary Lee | Counsel to ResCap | Feb. 20, 2013 |
| 45. | Jerry Lombardo | Cerberus, ResCap, AFI | Sep. 17, 2012<br>Mar. 18, 2013 |
| 46. | Lisa Lundsten | ResCap | Feb. 20, 2013 |
| 47. | John Mack | ResCap Independent Director | Dec. 5, 2012<br>Jan. 15, 2013 |

| | | | |
|---|---|---|---|
| 48. | Thomas Marano | Cerberus, ResCap, AFI | Nov. 26, 2012<br>Feb. 27, 2013 |
| 49. | David Marple | ResCap | Jan. 22, 2013 |
| 50. | William Marx | AFI | Apr. 18, 2013 |
| 51. | Humphrey McKenzie | AFI | Apr. 23, 2013 |
| 52. | Thomas Melzer | ResCap Independent Director | Oct. 10, 2012<br>Mar. 22, 2013 |
| 53. | William Muir | AFI | Mar. 1, 2013 |
| 54. | Mark Neporent | Cerberus, AFI Director | Feb. 6, 2013 |
| 55. | James Nouss | Counsel to ResCap Independent Directors | Mar. 18, 2013 |
| 56. | Davee Olson | ResCap | Apr. 26, 2013 |
| 57. | Bruce Paradis | ResCap | Dec. 14, 2012 |
| 58. | Scott Parker | Cerberus | Mar. 15, 2013 |
| 59. | Kathy Patrick | Counsel to Steering Committee Group | Mar. 18, 2013 |
| 60. | Joseph Pensabene | ResCap | Jan. 9, 2013 |
| 61. | Corey Pinkston | AFI | Nov. 8, 2012 |
| 62. | Timothy Pohl | Lazard, Advisor to ResCap | Feb. 26, 2013 |
| 63. | Seymour Preston, Jr. | Goldin Associates, Advisor to ResCap | Feb. 15, 2013 |
| 64. | Jonathan Pruzan | Morgan Stanley, Advisor to ResCap | Mar. 28, 2013 |
| 65. | Samuel Ramsey | AFI | Dec. 10, 2012 |
| 66. | James Redmond | ResCap | Nov. 13, 2012 |
| 67. | Michael Rossi | ResCap | Nov. 27, 2012 |
| 68. | Tazewell Rowe | AFI | Dec. 7, 2012 |
| 69. | Erica Schenk | Counsel to ResCap Independent Directors | Apr. 24, 2013 |
| 70. | Eric Scholtz | ResCap | Mar. 28, 2013 |
| 71. | Charles Senick | ResCap | Nov. 16, 2012 |
| 72. | Edward ("Ted") Smith | ResCap Independent Director | Nov. 30, 2012 |
| 73. | William Solomon | AFI | Mar. 19, 2013 |
| 74. | Julie Steinhagen | ResCap | Apr. 3, 2013 |
| 75. | James Tanenbaum | Counsel to ResCap | Mar. 29, 2013 |
| 76. | Lenard Tessler | Cerberus, AFI Director | Nov. 16, 2012<br>Feb. 28, 2013 |
| 77. | Linda Voss | AFI | Dec. 13, 2012 |
| 78. | David Walker | AFI | Nov. 28, 2012 |
| 79. | Joshua Weintraub | Cerberus, ResCap Director | Apr. 11, 2013 |
| 80. | Pam West | ResCap Independent Director | Dec. 18, 2012<br>Jan. 11, 2013<br>Apr. 16, 2013 |
| 81. | James Whitlinger | ResCap | Nov. 30, 2012<br>Feb. 27, 2013 |
| 82. | James Young | ResCap, AFI | Sept. 28, 2012<br>Oct. 10, 2012<br>Mar.15, 2013<br>Apr. 22, 2013 |
| 83. | Linda Zukauckas | AFI | Oct. 19, 2012 |

  *c. Additional Presentations By And Meetings With Interested Parties*

  As noted above, at the start of the Investigation, the Examiner received initial written presentations from, among others, AFI, Wilmington Trust, the Creditors' Committee, and the Debtors. Some of these written presentations were the subject of formal in-person presentations at meetings with the Examiner's Professionals. Subsequently, as explained in more detail in Section VIII.A.2, the Examiner requested and received written submission papers and damages letters from Third-Party Claimants regarding the existence, nature, and damages of pending or potential Third-Party Claims.

  Beginning in late January 2013, after the Examiner's Professionals had conducted a substantial portion of the Investigation, the Examiner received further written and in-person presentations from the Creditors' Committee, AFI, and Wilmington Trust. In some instances, parties provided follow-up to earlier presentations, at their own initiative or as requested by the Examiner's Professionals. In other instances, the Examiner's Professionals provided in advance of the meeting questions or topics to be addressed.

  In addition to more formal presentations, the Examiner and his professionals held numerous meetings with interested parties throughout the course of the Investigation. In some instances, meetings were initiated by the parties, and in others, by the Examiner's Professionals. Some meetings were telephonic, some in person. With the exception of those meetings attended only by the Examiner's Financial Advisors, the Examiner attended all meetings, most in-person, some by telephone. In particular, the Examiner's Financial Advisors maintained an ongoing dialogue with the Debtors and their financial advisors to obtain and discuss specific accounting and financial information needed for analysis. In addition to several individual meetings, the Examiner's Financial Advisors spent approximately two weeks on site at the Debtors in April 2013 with management and ResCap's financial advisors to resolve any remaining information requests and discuss outstanding questions and issues.

  A listing of presentations and meetings is set forth in the table below:

EXHIBIT II.B.3.c
**Presentations and Meetings**

| Presentation or Meeting Date | Interested Party(ies) | Presentation or Meeting Date | Interested Party(ies) |
|---|---|---|---|
| Jul. 18, 2012 | Berkshire Hathaway | Jan. 23, 2013 | Creditors' Committee |
| Jul. 19, 2012 | Creditors' Committee | Jan. 29, 2013 | AFI |
| Jul. 20, 2012 | Debtors, Morrison & Foerster | Feb. 7, 2013 | FTI, Carpenter Lipps |
| Jul. 20, 2012 | Wilmington Trust, Ad Hoc Group of Unsecured Creditors | Feb. 14, 2013 | FTI |
| Jul. 23, 2012 | AFI | Feb. 21, 2013 | FTI |
| Jul. 31, 2012 | Debtors | Feb. 25, 2013 | FTI |
| Aug. 2, 2012 | AFI | Feb. 25, 2013 | FTI, Carpenter Lipps |
| Aug. 22, 2012 | FTI (Debtors' Advisor) | Feb. 26, 2013 | AFI |
| Sep. 6, 2012 | Evercore (AFI's Advisor) | Feb. 27, 2013 | FTI |
| Sep. 6, 2012 | MBIA | Mar. 2, 2013 | Debtors, FTI |
| Sep. 7, 2012 | FTI | Mar. 3, 2013 | Debtors, FTI |
| Sep. 7, 2012 | Ad Hoc Group of Consenting Junior Secured Noteholders | Mar. 5, 2013 | Debtors, FTI |
| Sep. 11, 2012 | Centerview (Debtors' Advisor) | Mar. 8, 2013 | Debtors, FTI |
| Sep. 12, 2012 | Steering Committee Group | Mar. 8, 2013 | Creditors' Committee |
| Sep. 13, 2012 | Steering Committee Group | Mar. 13, 2013 | Debtors, FTI |
| Sep. 13, 2012 | Triaxx | Mar. 18–29, 2013 | Debtors, FTI |
| Sep. 24, 2012 | Creditors' Committee | Mar. 21, 2013 | AFI, Kirkland & Ellis |
| Sep. 28, 2012 | AIG, Prudential, and Allstate | Mar. 29, 2013 | Wilmington Trust |
| Oct. 2, 2012 | RMBS Trustees | Apr. 2, 2013 | Debtors, FTI |
| Oct. 11, 2012 | AFI, Kirkland & Ellis | Apr. 3, 2013 | Debtors, FTI |
| Oct. 15, 2012 | FTI | Apr. 8, 2013 | Debtors, FTI |
| Oct. 18, 2012 | Creditors' Committee | Apr. 8, 2013 | Alvarez & Marsal |
| Oct. 23, 2012 | AFI, Ally Bank, Kirkland & Ellis | Apr. 9, 2013 | Debtors, FTI |
| Nov. 2, 2012 | AFI | Apr. 10, 2013 | Debtors, FTI |
| Nov. 5, 2012 | Debtors, FTI | Apr. 11, 2013 | AFI |
| Nov. 13, 2012 | Wilmington Trust | Apr. 16, 2013 | Debtors, FTI, Morrison & Foerster |
| Dec. 4, 2012 | Debtors, FTI | Apr. 17, 2013 | PwC |
| Dec. 10, 2012 | AFI, Kirkland & Ellis | Apr. 18, 2013 | Deloitte |
| Dec. 11, 2012 | Debtors, FTI | Apr. 18, 2013 | Alvarez & Marsal |
| Dec. 21, 2012 | FTI | Apr. 19, 2013 | Debtors, FTI |
| Jan. 4, 2013 | Debtors, FTI | Apr. 29, 2013 | AFI |
| Jan. 14, 2013 | Debtors, FTI | Apr. 29, 2013 | Debtors, FTI, Morrison & Foerster |
| Jan. 18, 2013 | Centerview | Apr. 30, 2013 | AFI |

  *d. Informal Document Requests*

  As noted above, throughout the course of the Investigation, the Debtors, AFI, and other parties responded to numerous follow-up document requests made by the Examiner's Professionals to supplement the documents produced in response to the Rule 2004 subpoenas and other formal written document requests. In large part, the follow-up requests sought specific documents or types of documents that fell within the scope of the Rule 2004 subpoenas and document requests. The follow-up requests were made by e-mail, sometimes after in-person or telephonic meetings. In some cases, the parties supplemented prior productions. In others, the Examiner was directed to documents the parties had already produced within their voluminous productions. This informal discovery process, which was only possible with the cooperation of the parties, was essential to the Investigation. And, as also noted above, it is because of this process that the Examiner is satisfied that he obtained the vast majority of potentially relevant documents.