# VII. REVIEW AND ANALYSIS OF ESTATE CAUSES OF ACTION IMPLICATED BY AFFILIATE TRANSACTIONS AND THE RELATIONSHIP AND COURSE OF DEALING AMONG RESCAP, AFI, ALLY BANK, AND CERBERUS

## G. AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

As discussed in Section VII.E, potential claims exist for breaches of fiduciary duties by ResCap's directors and officers. The Examiner has concluded that, although certain potential claims for breaches of duties by ResCap fiduciaries are a close question, none of those fiduciary duty claims is likely to prevail.[1] Based on that conclusion, it is also unlikely that any corollary claims against AFI and its affiliates for aiding and abetting breaches of duties by ResCap fiduciaries would prevail, despite troubling conduct in particular circumstances that makes certain claims a close question. General legal principles governing potential aiding and abetting claims will be discussed below, followed by analysis of the viability of certain potential claims in light of those legal principles.

### 1. General Principles Of Aiding And Abetting Breach Of Fiduciary Duty

If a fiduciary breaches a duty, any third parties involved in the pertinent transaction, including parent entities, financial advisors, law firms, banking institutions, and private equity firms, may be found liable for aiding and abetting the underlying breach of fiduciary duty.[2]

#### a. Choice Of Law Regarding Substantive Legal Standards

It is likely that either Delaware or Minnesota law would apply to a potential claim brought in a New York federal court against AFI Affiliates for aiding and abetting a breach of fiduciary duty by ResCap's directors and officers.[3] In New York, courts use three approaches to determine which state's law applies to a claim for aiding and abetting a breach of fiduciary duty: (1) "an internal affairs approach"; (2) "a torts based 'greatest interest' approach"; and (3)

---

[1] *See* Section VII.E.2 (discussing various potential claims for breaches of duties by ResCap fiduciaries).

[2] *See, e.g., Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011); *Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*, 208 B.R. 288, 309 (Bankr. D. Mass. 1997).

[3] *See Buckley v. Deloitte & Touche USA LLP*, No. 06 Civ. 3291(SHS), 2007 WL 1491403, at *13 (S.D.N.Y. May 21, 2007) (aiding and abetting breach of fiduciary duty claim is "relate[d] to the internal affairs of a corporation, [and was therefore] governed by the law of the state of incorporation"); *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 350 (Bankr. S.D.N.Y. 2010); *Buchwald v. Renco Group, Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 742 (Bankr. S.D.N.Y. 2009) (applying New York law to aiding and abetting breach of fiduciary duty claims with respect to corporation incorporated in Delaware with principal place of business in New York); *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp)* 365 B.R. 24, 24, 41 (Bankr. S.D.N.Y. June 11, 2007) (applying Pennsylvania law to aiding and abetting breach of fiduciary duty claims with respect to corporation incorporated in Delaware with principal place of business in Pennsylvania). The relevant entity for purposes of the choice-of-law analysis is ResCap rather than AFI. *See In re Hydrogen, L.L.C.*, 431 B.R. at 350. The same choice-of-law outcome applicable to a claim brought in New York federal court would likely apply to a claim brought in Minnesota state court, as a result of the substantial similarities of the elements of aiding and abetting breach of fiduciary duty claims under Delaware and Minnesota law. *See Nelson v. Delta Int'l Machinery Corp.*, Civil No. 05-63, 2006 WL 1283896, at *2 (D. Minn. May 09, 2006) ("the first inquiry is whether an actual conflict of law exists," which will be found "if the application of either state's law would be outcome determinative"); *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins.*, 604 N.W.2d 91, 93-94 (Minn. 2000).

"a hybrid approach."[4] Many courts have applied the internal affairs doctrine and thus have applied the law of the state of incorporation, similar to the choice-of-law analysis for a claim for breach of fiduciary duty.[5] However, recent decisions have reflected a preference for the "greatest interest" approach.[6] "The jurisdiction with the greatest interest is generally that of the principal place of business, where any injury as a consequence of any aiding and abetting would have been suffered."[7]

With respect to claims for aiding and abetting breaches of duties by ResCap fiduciaries, Delaware law would apply under an "internal affairs" approach (Delaware was ResCap's state of incorporation, as well as its limited liability company location),[8] or Minnesota law would apply under a "greatest interest" approach (Minnesota was ResCap's principal place of business).[9] Because, as discussed below, there are no material differences between aiding and abetting legal principles under Delaware and Minnesota law, the substantive outcome of the claim would be the same regardless of the approach taken under a choice-of-law analysis.

---

[4] *Marino*, 810 F. Supp. 2d at 613. *Compare Buckley,* 2007 WL 1491403, at *13 (aiding and abetting breach of fiduciary duty claim is "relate[d] to the internal affairs of a corporation, [and is therefore] governed by the law of the state of incorporation"), *with Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998) (determining choice of law for aiding and abetting claim under tort analysis, applying law of jurisdiction with greatest interest in regulating behavior), *and Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 191–92 (S.D.N.Y. 2006) (New York follows internal affairs doctrine but does not require its application if another state has overriding interest in dispute).

[5] *See In re Hydrogen, L.L.C.*, 431 B.R. at 350 ("Caselaw in this district is split as to what choice-of-law principle applies to a claim for aiding and abetting breach of fiduciary duty."); *In re Adelphia Commc'ns Corp.*, 365 B.R. at 39–40 ("The New York cases that address choice of law issues applicable to claims for aiding and abetting breaches of corporate fiduciary duty are split on whether the law of the state of incorporation or the law of the state with the greatest interests applies. Many apply the law of the state of incorporation to claims for aiding and abetting breaches of corporate fiduciary duty, just as they apply the law of the state of incorporation to claims of breaches of corporate fiduciary duty themselves.").

[6] *In re Hydrogen, L.L.C.*, 431 B.R. at 350–51; *In re Magnesium Corp. of Am.*, 399 B.R. at 742 (citing *LaSala v. UBS, A.G.*, 510 F. Supp. 2d 213, 230–231 (S.D.N.Y. 2007); *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 271–72 (Bankr. S.D.N.Y. 2008); *Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distrib. Inc.*), 387 B.R. 365, 395–96 (Bankr. E.D.N.Y. 2008)).

[7] *In re Hydrogen, L.L.C.*, 431 B.R. at 350; *In re Magnesium Corp. of Am.*, 399 B.R. at 742 (applying New York law to aiding and abetting breach of fiduciary duty claims, with respect to corporation incorporated in Delaware with principal place of business in New York); *In re Adelphia Commc'ns Corp.*, 365 B.R. at 41 (applying Pennsylvania law to aiding and abetting breach of fiduciary duty claims with respect to corporation incorporated in Delaware with a principal place of business in Pennsylvania).

[8] *See* Sections III.E.6, VII.E.1.a. The "internal affairs" doctrine would lead to application of Delaware law to an aiding and abetting claim relating to a breach of fiduciary duty that occurred both before and after ResCap became a limited liability company. *See In re Hydrogen, L.L.C.*, 431 B.R., at 347.

[9] *See* Residential Capital Corporation, Current Report (Form 10-K) (Mar. 28, 2006), at 1, 3; Residential Capital, LLC, Current Report (Form 10-K) (Mar. 13, 2007), at 1, 3; Residential Capital, LLC, Current Report (Form 10-K) (Feb. 27, 2008), at 1, 4.

### b. Choice Of Law Regarding Statutes Of Limitations

With respect to an aiding and abetting claim brought in New York federal court, the choice-of-law analysis for the statute of limitations will mirror that applicable to the underlying fiduciary duty claim, and therefore the same limitations period will likely govern both claims.[10] However, there is no unitary limitations period under New York law for a fiduciary duty claim, as the governing limitations period will depend on the basis of the claim and the relief sought.[11] Thus, the statute of limitations governing a corollary aiding and abetting claim may similarly vary.[12] There is some uncertainty with respect to the applicable limitations period, as between three and six years, that would govern an aiding and abetting claim brought in Minnesota state court.[13]

### c. Elements Of A Claim For Aiding And Abetting Breach Of Fiduciary Duty

Under Delaware law, "[t]he elements of a claim for aiding and abetting a breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) the fiduciary breached its duty, (3) a defendant, who is not a fiduciary, knowingly participated in [the] breach, and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary."[14] Some Delaware courts have elaborated that in order to be liable for aiding and

---

[10] *In re Adelphia Commc'ns Corp.,* 365 B.R. at 57–58; *In re Magnesium Corp. of Am.*, 399 B.R. at 743; *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 279 (S.D.N.Y. 2011) (the "fiduciary duty-based claims, which include . . . claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, have the same statute of limitations").

[11] *See* Section VII.E.1.j(1) (discussing various potentially applicable statutes of limitations under New York law).

[12] *See* Section VII.E.1.j(3); *Donenfeld v. Brilliant Tech Corp.*, 20 Misc.3d 1139(A), at *2 (S.D.N.Y. July 14, 2008).

[13] The Minnesota statute of limitations for a claim for aiding and abetting a breach of fiduciary duty is six years. *See Alliance Bank v. Dykes* No. 62-CV-09-10096, 2012 WL 6734457, at *10 (Minn. App. Dec. 31, 2012). However, although there is scant relevant case authority, there is some possibility that a Minnesota court would apply the same "internal affairs" doctrine to an aiding and abetting claim as it would to the underlying claim for breach of fiduciary duty, which might result in a three-year limitations period under MINN. STAT. § 541.31 (2013). *See Matson Logistics, LLC* v. *Smiens,* Civil No. 12-400, 2012 WL 2005607, at *5 (D. Minn. June 05, 2012) (citing *Rupp v. Thompson,* No. C5-03-347, 2004 WL 3563775 (Minn. Dist. Ct. Mar. 17, 2004); *Calleros v. FSI Intern., Inc.,* 892 F. Supp. 2d 1163, 1169 n.7 (D. Minn. 2012) ("Under the 'internal affairs' doctrine, fiduciary-duty claims against FSI's directors are governed by Minnesota law because FSI is a Minnesota corporation.") (citing *Atherton v. FDIC,* 519 U.S. 213, 223–24 (1997)); *Transocean Grp. Holdings Pty Ltd. v. S.D. Soybean Processors, LLC,* 663 F. Supp. 2d 731, 742 n.5 (D. Minn. 2009) (citing *Potter v. Pohlad,* 560 N.W.2d 389, 391 (Minn. Ct. App. 1997)).

[14] *Feeley v. NHAOCG, LLC*, 62 A.3d 699, 658 (Del. Ch. 2012); *see also In re Direct Response*, 466 B.R. at 653; *McGowan v. Ferro*, 859 A.2d 1012, 1041 (Del. Ch. 2004), *aff'd*, 873 A.2d 1099 (Del. 2005); *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, No. 03 Civ. 7936, 2007 WL 2915181, at *4 (S.D.N.Y. Oct. 4, 2007); *Miller v. Greenwich Capital Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc. I*), 361 B.R. 747, 757 (Bankr. D. Del. 2007); *Teacher's Ret. Sys. of La. v. Aidinoff*, 900 A.2d 654, 671 n.23 (Del Ch. 2006).

abetting a breach of fiduciary duty, the defendant must give "substantial assistance or encouragement to the fiduciary's wrongful conduct."[15]

Under Minnesota law, the elements of a claim for aiding and abetting the tortious conduct of another, including aiding and abetting breach of a fiduciary duty, are: "(1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach."[16]

The elements of the Delaware and Minnesota causes of action are substantially similar. As a threshold matter, under both Delaware and Minnesota law, an aiding and abetting claim is dependent upon the viability of an underlying claim for breach of fiduciary duty.[17] Further, under both Delaware and Minnesota law, a plaintiff must demonstrate specific facts alleging that the defendant knowingly participated in the underlying breach, in addition to showing damages.[18]

### d. Aiding And Abetting Principles Under Delaware Law

As noted above, under Delaware (and Minnesota) law, a predicate breach of fiduciary duty must exist in order for an aiding and abetting claim to be actionable, let alone successful.[19] "Knowing participation" in the fiduciary duty breach "requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach."[20] The evidence must support the allegation that the defendant actively induced,

---

[15] *See Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*, 321 B.R. 128, 144 (Bankr. D. Del. 2005) (citations omitted).

[16] *Alliance Bank,* 2012 WL 6734457, at *11 (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999)); *see also Senior Cottages of Am., LLC v. Morris, (In re Senior Cottages of Am., LLC)*, 438 B.R. 414, 426 (Bankr. D. Minn. 2010).

[17] *Debakey Corp. v. Raytheon Serv. Co*. No. 14947, 2000 WL 1273317, at *20 (Del. Ch. Aug. 25, 2000); *Alliance Bank,* 2012 WL 6734457, at *11 (citing *Witzman,* 601 N.W.2d at 187).

[18] *Malpiede v. Townson*, 780 A.2d 1075, 1097, 1098 n.84 (Del. Supr. 2001); *Matthews v. Eichorn Motors, Inc.,* 800 N.W.2d 823, 830–31 (Minn. App. July 11, 2011) (citing *Witzman,* 601 N.W.2d at 186).

[19] *See Debakey Corp. v. Raytheon Serv. Co*., 2000 WL 1273317, at *20; *see also Related Westpac LLC v. JER Snowmass LLC*, C.A. No. 5001-VCS, 2010 WL 2929708, at *8 (Del. Ch. July 23, 2010) ("Furthermore, because the breach of fiduciary duty claim is dismissed, the aiding and abetting claim must also be dismissed. Because 'no cognizable breach of fiduciary duty claim is stated,' the aiding and abetting claim also fails.").

[20] *Malpiede,* 780 A.2d at 1097; *see also Beard Research, Inc. v. Kates*, 8 A.3d 573, 603 (Del. Ch. 2010); *In re Nortel Networks, Inc*., 469 B.R. 478, 510 (Bankr. D. Del. 2012) ("[T]he defendant must have known that the fiduciary's conduct constituted a breach of the fiduciary's duties."); *Miller v. Greenwich Capital Fin. Prods., Inc*. (*In re Am. Bus. Fin. Servs., Inc. II*), 384 B.R. 80, 91 (Bankr. D. Del. 2008).

encouraged, or exploited the fiduciary's conduct that resulted in the breach of duty.[21] Merely engaging in an arm's-length transaction, however, will not amount to knowing participation in a fiduciary duty breach.[22] Further, knowing participation can be inferred from the facts.[23]

A plaintiff advancing an aiding and abetting claim must show that it suffered damages as a result of the underlying fiduciary duty breach.[24] This element can be satisfied where, as a result of a breach of fiduciary duty, monies are no longer available to pay creditors of an insolvent company.[25] For example, in *ASARCO LLC v. Americas Mining Corp.*, the court held that creditors had established damages where as a result of an entity's overpayment of certain bonds in breach of a fiduciary duty, "ASARCO could have paid its vendors and service providers to continue operations and generate more income to satisfy other creditors, or if forced into bankruptcy, this amount would have been available to ASARCO's creditors as part of its bankruptcy estate."[26]

---

[21] *See Malpiede*, 780 A.2d at 1097–98, 1098 n.84.

[22] *See id*.

[23] *See In re Am. Bus. Fin. Servs., Inc. II*, 384 B.R. at 91. For example, in *Kates*, the court held that an entity and one of its officers aided and abetted a breach of fiduciary duty committed by a defendant who allegedly misappropriated trade secrets. *See Kates*, 8 A.3d at 604. The *Kates* court found that the entity and officer "knowingly participated" in the breach, as the officer arranged for the manager to give a presentation revealing confidential information, and the defendant entity "funded [a company], the vehicle to which Kates brought over a vast quantity of information in breach of his fiduciary duties." *Id*. While the officer contended that he interrupted the presentation to ensure that Kates was not disclosing confidential information, the court held that "actions . . . speak louder than their words . . . . [They] knew or should have known that Kates was using and disclosing to [the entity] confidential information . . . thereby breaching his fiduciary duties." *Id*. However, Delaware courts have dismissed aiding and abetting claims where a "[c]omplaint merely states in general terms that [the defendant] knew the directors and officers of [the entity] who breached their fiduciary duties, knew that their conduct amounted to such breach, and directed, encouraged, and assisted such conduct." *Official Comm. of Unsecured Creditors v. CIT Group/Business Credit, Inc. (In re Jevic Holding Corp.)*, Bankruptcy No. 08-11006, 2011 WL 4345204, at *13 (Bankr. D. Del. Sept. 15, 2011) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'").

[24] *See McGowan,* 859 A.2d at 1041; *see also In re Jevic Holding Corp.*, 2011 WL 4345204, at *13 (plaintiff must "allege that it sustained damage that 'resulted from the concerted action of the fiduciary and the nonfiduciary,' as it is required to do under Delaware law").

[25] *See ASARCO LLC v. Am. Mining Corp.*, 396 B.R. 278, 413 (S.D. Tex. Aug. 30, 2008) (applying Delaware and New Jersey law).

[26] *See id*.

*e. Aiding And Abetting Principles Under Minnesota Law*

Under Minnesota law, in addition to requiring a successful underlying claim for breach of fiduciary duty, the "latter two elements [of an aiding and abetting claim] are evaluated 'in tandem'" such that "where there is a minimal showing of substantial assistance, a greater showing of scienter is required."[27] With respect to these elements of the claim:

> [W]hether the requisite degree of knowledge or assistance exists depends in part on the particular facts and circumstances of each case. Factors such as the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind all come into play.[28]

Further, "aiding and abetting liability is based on proof of a scienter—the defendants must know that the conduct they are aiding and abetting is a tort."[29] This requires that the third party generally must have "actual knowledge that the primary tortfeasor's conduct was wrongful."[30] However, "[i]n cases where the primary tortfeasor's conduct is clearly tortious or illegal, some courts have held that a defendant with a long-term or in-depth relationship with that tortfeasor may be deemed to have constructive knowledge that the conduct was indeed tortious."[31] Generally, imputing constructive knowledge to an aiding and abetting defendant may be unlikely, as "whether [a primary tortfeasor's] actions constituted a breach of his fiduciary duties requires a fact-intensive look at his conduct in comparison with that of a prudent person."[32]

---

[27] *Matthews v. Eichorn Motors, Inc.,* 800 N.W.2d 823, 830 (Minn. App. July 11, 2011) (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 186 (Minn. 1999)).

[28] Matthews, 800 N.W.2d at 830.

[29] *Park Midway Bank, N.A. v. R.O.A., Inc.,* No. A11-2092, 2012 WL 3263866, at *4 (Minn. App. Aug. 13, 2012) (citing *Witzman*, 601 N.W.2d at, 186).

[30] *Senior Cottages of Am., LLC v. Morris, (In re Senior Cottages of Am., LLC)*, 438 B.R. 414, 426 (Bankr. D. Minn. 2010) (citing *Witzman*, 601 N.W.2d at, 188).

[31] *Christopher v. Hanson*, Civil No. 09-3703, 2011 WL 2183286, at *11 (D. Minn. June 06, 2011) (citing *Witzman,* 601 N.W.2d at, 188.

[32] *Id.*

> *f. Aiding And Abetting Breach Of Fiduciary Duty In The Parent-Subsidiary Context*

Parent corporations can be held liable for aiding and abetting breaches of fiduciary duties.[33] In fact, "it is uncontroversial for parent corporations to be subjected to claims for aiding and abetting breaches of fiduciary duty committed by directors of their subsidiaries."[34] Aiding and abetting claims can be brought against a parent entity where a subsidiary is left insolvent; a creditor of an insolvent debtor can sue a debtor's parent for purposely injuring the insolvent debtor to benefit the parent.[35] For example, an aiding and abetting claim may lie against a parent entity where it has "concocted, in bad faith, a scheme whereby one of its controlled, first-tier subsidiaries was rendered unable to pay its debts because [the parent] and a second-tier subsidiary permitted [the parent's] newly formed affiliate to obtain an equity interest in a third-tier subsidiary for an unfair value."[36]

With regard to the requisite knowledge a parent entity must have in order to be found liable for aiding and abetting, a relevant factor is whether "there was significant overlap between the board members" of the parent and subsidiary entities.[37] The *ASARCO* court noted that "ASARCO's board members who were not also on [the parent's] board were otherwise affiliated" with the parent company,[38] and also emphasized that "stocking the boards of its subsidiaries with [parent company] employees or loyal retainers was described as a 'uniform practice' and was one that continued up through the transaction in question, contrary to the advice of its corporate counsel."[39] The *ASARCO* court similarly found that the parent's actions could establish "substantial assistance" with respect to the underlying fiduciary duty breach:

> [The parent] gave substantial assistance or encouragement to ASARCO's directors' breach . . . [and the parent] was intricately involved in every aspect of the transaction. It was [the parent] that established the terms of the transaction and orchestrated the transfer of the stock from ASARCO [ ] to [the parent]. It also

---

[33] *See ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 415–16 (S.D. Tex. Aug. 30, 2008); *VFB v. Campbell Soup Co.*, 482 F.3d 624, 634 (3d Cir. 2007); *Claybrook v. Morris* (*In re Scott Acquisition Corp.*), 344 B.R. 283, 290 (Bankr. D. Del. 2006) (recognizing that a parent company may be sued for aiding and abetting breaches related to its subsidiary).

[34] *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 103–39 (Del. Ch. 2006) ("[Delaware's] acceptance of claims for aiding and abetting breaches of fiduciary duty brought against parent corporations and their affiliates, including subsidiaries, belies any outright rejection of the proposition that wholly-owned and/or commonly-controlled entities cannot be held responsible for each other's acts when those acts result from concerted unlawful activity").

[35] *See id.* at 1025.

[36] *Id.*

[37] *ASARCO,* 396 B.R. at 412.

[38] *Id.*

[39] *Id.* at 302–3.

dictated how the funds would be spent. It rejected all alternatives and insisted [on] the transaction . . . . [T]he evidence clearly establishes [the parent's] substantial assistance in structuring and closing the transaction that constituted the directors' breach. Therefore, the Court finds that [the parent] knowingly participated in ASARCO's directors' breach of fiduciary duty.[40]

### g. Aiding And Abetting Breach Of Fiduciary Duty In The Limited Liability Company Context

Parties may be held liable for aiding and abetting breaches of fiduciary duties owed by members and managers of a limited liability company.[41] For example, in *In re Opus East, L.L.C.*, a bankruptcy trustee brought aiding and abetting breach of fiduciary duty claims against a limited liability company that was the debtor's sole member, a related corporation, and other entities and individuals who controlled the debtor, which allegedly existed to distribute capital to its parent.[42] While the defendant pointed to an exculpatory clause in the limited liability company agreement in support of its motion to dismiss the aiding and abetting claims, the court held that an exculpatory clause is an affirmative defense and not a basis for a motion to dismiss, and that "[b]ecause the duties owed by fiduciaries are the same whether it be a corporation or limited liability company, the fiduciary duties the Defendants owe the Debtor are derived from common law and not dependent on the LLC Agreement."[43]

---

[40] *Id*. at 412–13.

[41] *See Feeley v. NHAOCG, LLC*, 62 A.3d 644, 660 (Del. Ch. Nov. 28, 2012) ("Numerous Court of Chancery decisions hold that the managers of an LLC owe fiduciary duties."); *In re Opus East, L.L.C.*, 480 B.R. 561, 572 (Bankr. D. Del. 2012) ("[T]he duties owed by fiduciaries are the same whether it be a corporation or limited liability company, the fiduciary duties the Defendants owe the Debtor are derived from common law and not dependent on the LLC Agreement.").

[42] *See* 480 B.R. at 566.

[43] *Id.* at 572; *see also In re OODC., LLC*, 321 B.R. 128, 144 (Bankr. D. Del. 2005) (principal of selling company could be held liable in action brought by Chapter 11 trustee of limited liability company for aiding and abetting breaches of fiduciary duties owed by selling company's officers and directors).

### h. Potential Affirmative Defenses To An Aiding And Abetting Claim

#### (1) Exculpation Provision

While a party accused of breaching a fiduciary duty may avoid liability by asserting as an affirmative defense section 102(b)(7) of the Delaware Code, which exculpates certain breaches of fiduciary duty,[44] "[s]ection 102(b)(7) . . . do[es] not protect aiders and abetters."[45] Even if the underlying primary violator on a claim for breach of fiduciary duty cannot be held liable because of an applicable exculpation clause, aiders and abetters of that breach can nevertheless be held liable:

> [The] duty of care claim is dismissed as to the director Individual Defendants because the § 102(b)(7) provision in [the entity's] certificate of incorporation exculpates them from monetary liability on such a claim . . . . The fact that [the] directors can be held harmless for breaching their duty of care does not necessarily prevent the Court from ultimately finding that a breach of the duty of care occurred and was knowingly assisted by some or all of the Lenders, however.[46]

Accordingly, a viable aiding and abetting claim can be advanced even in connection with an underlying claim for breach of the duty of care that may be exculpated by a corporate charter.

#### (2) In Pari Delicto Defense

Both Delaware and Minnesota law recognize the *in pari delicto* doctrine as a potential defense to an aiding and abetting claim.[47] Under the *in pari delicto* doctrine, "a party is barred from recovering damages if his losses are substantially caused by activities the law forbade him to engage in."[48] Delaware courts do not require the application of an "equal fault"

---

[44] *See* Section IV.B (discussing exculpation issues with respect to ResCap fiduciaries).

[45] *In re Celera Corp. Shareholder Litig.*, Civil Action No. 6304-VCP, 2012 WL 1020471, at *28 (Del. Ch. Mar. 23, 2012); *see also In re Del Monte Foods Co. Shareholders Litig.*, 25 A.3d 813, 838 (Del. Ch. 2011) ("By their terms, Sections 102(b)(7) and 141(e) do not protect aiders and abetters.").

[46] *In re Fedders N. Am., Inc.*, 405 B.R. 527, 544 n.8 (Bankr. D. Del. 2009) (citing *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744 at * 25 (Del. Ch. May 9, 2006) ("Charter provisions adopted under § 102(b)(7) merely work to exculpate liability, but do not erase the underlying breach of fiduciary duty.")).

[47] *See Am. Int'l Grp. v. Greenberg (In re Am. Int'l. Grp. Consol. Deriv. Litig.)*, 976 A.2d 872, 882 (Del. Ch. 2009) (citing *Burns v. Ferro*, No. C.A. 88C-SE-178, 1991 WL 53834, at *2 (Del. Super. Mar. 28, 1991)); *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1005 (8th Cir. 2007); *In re Petters Co., Inc.*, 480 B.R. 346, 360-61 (Bankr. D. Minn. 2012).

[48] *In re Am. Int'l Grp. Consol. Deriv. Litig.*, 976 A.2d 872, 883 (citing *In re LJM2 Co–Inv., L.P.*, 866 A.2d 762, 883 (Del. Ch.2004)); *see also OHC Liquidation Trust v. Credit Suisse First Bos. (In re Oakwood Homes Corp.)*, 389 B.R. 357, 365 (D. Del. 2008) ("a plaintiff's recovery may be barred by his own wrongful conduct") (quoting *Pinter v. Dahl*, 486 U.S. 622, 632 (1988)), *aff'd*, 356 F. App'x 622 (3d Cir. 2009); *In re Petters Co., Inc.*, 480 B.R. 346, 360 (Bankr. D. Minn. 2012).

principle that requires a court to discern "which of the parties acted with the guiltiest mind."[49] Rather, the application of the *in pari delicto* doctrine in Delaware "simply requires the court to determine that each party acted with scienter in the sense that it was a knowing and substantial participant in the wrongful scheme."[50] Under Minnesota law, "in pari delicto operates to bar suits between two wrongdoers who are at equal fault."[51] Several exceptions exist to the applicability of the *in pari delicto* doctrine,[52] including the "adverse interest" exception under both Delaware and Minnesota law.[53]

i. *Burden With Respect To Fraud-Based Aiding And Abetting Claim*

As with respect to a claim for breach of fiduciary duty, a plaintiff alleging fraud as an aspect of a claim for aiding and abetting a breach of fiduciary duty must meet the requirements of Federal Rule of Civil Procedure 9(b).[54]

j. *Remedies On An Aiding And Abetting Claim*

A party that aids and abets a fiduciary duty breach "is liable for the full amount of damages to the injured party caused by that breach,"[55] and will be liable for these damages even if that party did not profit from the breach.[56] Accordingly, a successful claim for aiding and abetting breach of fiduciary duty may result in a monetary recovery against aiders and abettors.[57]

---

[49] *In re Am. Int'l Grp. Consol. Deriv. Litig.,* 976 A.2d at 884.

[50] *Id.*

[51] *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 810 (Minn. App. 2007).

[52] *See In re Am. Int'l Grp. Consol. Deriv. Litig.,* 976 A.2d at 883; *Off. Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PricewaterhouseCoopers, LLP*, 607 F.3d 346, 354 (3d Cir. 2010) (citations omitted); *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 810 (Minn. App. 2007).

[53] *See In re Am. Int'l. Grp. Consol. Deriv. Litig.*, 976 A.2d at 891; *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 810 (Minn. App. 2007); *see generally* Section VII.L.1.b.2 (discussing the applicability of the *in pari delicto* doctrine and its exceptions under New York and Minnesota law with respect to the 2006 Bank Restructuring).

[54] *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 606 (S.D.N.Y. 2011); *Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distribs. Inc.)*, 387 B.R. 365, 409 (Bankr. E.D.N.Y. 2008); *see also* Section VII.E.1.h (discussing a plaintiff's burden with respect to advancing a fraud-based fiduciary duty claim).

[55] 28 GLEN BANKS, N.Y. PRAC., CONT. L. § 21:68 (1st ed. 2006) (citing *Klein v. Gutman*, 12 A.D.3d 348, 784 N.Y.S.2d 145 (N.Y. App. Div. 2004)); *see also Beard Research, Inc. v. Kates*, 8 A.3d 573, 619 (Del. Ch. 2010); *Pace v. Perk*, 81 A.D.2d 444, 454-456 (N.Y. App. Div. 1981) ("Any one who knowingly participates with a fiduciary in a breach of trust is liable for the full amount of the damage caused thereby to the *cestuis que* trust.").

[56] *See* 28 GLEN BANKS, N.Y. PRAC., CONT. L. § 21:68 (1st ed. 2006) (citing *Diduck v. Kaszycki & Sons Contractors, Inc*., 974 F.2d 270, 284 (2d Cir. 1992)).

[57] *See In re Hechinger Inv. Co*., 274 B.R. 71, 89 n.8 (D.Del. 2002).

## 2. Potential Claims Exist For Aiding And Abetting Breaches Of Duties By ResCap Fiduciaries

As discussed in Section VII.E.2, potential claims exist for breaches of duties by ResCap fiduciaries related to various Affiliate Transactions between ResCap and AFI. However, although ResCap fiduciaries engaged in certain problematic conduct in connection with such transactions, the Examiner has concluded that fiduciary duty claims, although a close question with respect to specific ones, would be unlikely to prevail because of particular factual and legal impediments to their success.[58] As a result, any corollary claims against AFI for aiding and abetting underlying breaches of fiduciary duty would similarly be unlikely to prevail. In the absence of a viable predicate claim of breach of fiduciary duty, it is unlikely that any associated aiding and abetting claim against AFI could survive as a matter of law.[59]

### a. Potential Aiding And Abetting Claims Relating To 2006 Bank Restructuring

The factual circumstances surrounding the effort to secure approval by Independent Directors Jacob and Melzer of the 2006 Bank Restructuring are troubling.[60] ResCap fiduciaries, including several with dual affiliations with ResCap and AFI (including Feldstein and Walker), purposefully withheld certain material information from Jacob and Melzer relating to the option of ResCap obtaining a voting interest in the restructured bank.

The Independent Directors were led to believe that the closing of the Cerberus transaction hinged on the approval of the 2006 Bank Restructuring on the transaction terms presented, which encompassed ResCap obtaining only a non-voting interest in the restructured bank. That result, in fact, was not dictated by the terms of the Cerberus PSA. ResCap fiduciaries had ample opportunities to disclose the withheld information to Jacob and Melzer and their counsel, but chose not to do so. The Independent Directors' approval of the 2006 Bank Restructuring, therefore, was arguably procured on the basis of incomplete material information. Had the dual-affiliated ResCap fiduciaries provided the withheld information to the Independent Directors, further negotiations between the parties regarding the terms of the transaction could—and likely would—have resulted in more favorable terms for ResCap.[61]

AFI-affiliated insiders, therefore, were involved in a protracted effort to withhold certain material information from the Independent Directors, which accrued to ResCap's detriment.[62] However, while a close question, the Examiner concludes it is more likely than not that a

---

[58] *See* Section VII.E.2 (discussing merits of, and conclusions regarding, various potential fiduciary duty claims).

[59] *See* Section VII.G.1.c (an aiding and abetting claim is dependent on the viability of an underlying claim for breach of fiduciary duty).

[60] *See* Sections V.A, VII.E.2.a, VII.L.1 (discussing the facts relevant to the 2006 Bank Restructuring).

[61] *See* Sections VII.E.2.a(3), VII.L.1 (discussing issues related to the harm that may have resulted from the concealment by ResCap fiduciaries, including affiliates of AFI, from the Independent Directors of material information relating to the 2006 Bank Restructuring).

[62] *See* Sections V.A, VII.E.2.a, VII.L.1 (discussing role of AFI-affiliated insiders in concealment effort).

claim against AFI and its affiliates for aiding and abetting a breach of duty by ResCap fiduciaries would not prevail. As a threshold matter, the Examiner has determined that the underlying fiduciary duty claim, upon which an aiding and abetting claim necessarily would be predicated,[63] is, although a close question, unlikely to prevail.[64] Legal impediments exist to the success of the underlying fiduciary duty claim, including the absence of a definitive fiduciary duty to disclose the withheld information to the Independent Directors[65] and barriers to the claim's timeliness.[66] Accordingly, to the extent the underlying fiduciary duty claim is destined to fail in the face of formidable legal obstacles, a corollary aiding and abetting claim could not succeed.

Further, even if the underlying fiduciary duty claim could overcome the various impediments to its success, a related aiding and abetting claim would confront its own hurdles. A plaintiff would have to show "knowing participation" by the AFI-affiliated insiders in the underlying breach of fiduciary duty.[67] While the AFI-affiliated insiders likely understood that certain information was being withheld from the Independent Directors, it is much less certain that they understood that any fiduciary duties were being breached in the process. Indeed, it is likely, as a matter of law, that a fiduciary duty to disclose the withheld information would not be chargeable to the ResCap fiduciaries,[68] and therefore unlikely that the AFI-affiliated insiders "knowingly participated" in conduct that they understood constituted a breach of fiduciary duty. Further, they may have rationalized withholding the information from the Independent Directors on the basis of their own conception of and justification for the transaction in a broader context.[69] The AFI-affiliated insiders, therefore, likely did not know they were aiding and abetting a tort, and thus more likely than not lacked the requisite scienter to satisfy a key element of the claim. Finally, as with respect to a potential fraud claim against AFI related to the 2006 Bank Restructuring, the *in pari delicto* doctrine would pose a substantial threshold barrier to an aiding and abetting claim based on the participation of ResCap fiduciaries in the alleged misconduct.[70]

---

[63] *See* Section VII.G.1.c (discussing necessary dependence of aiding and abetting claim on predicate claim for breach of fiduciary duty).

[64] *See* Section VII.E.2.a (discussing conclusions regarding viability of underlying claim for breach of fiduciary duty related to the 2006 Bank Restructuring).

[65] *See* Section VII.E.2.a(1) (discussing whether ResCap directors and officers had a fiduciary duty to disclose the withheld information to the Independent Directors).

[66] *See* Section VII.E.2.a(2) (discussing whether the underlying fiduciary duty claim may be time-barred).

[67] *See* Section VII.G.1.c.

[68] *See* Section VII.E.2.a(1).

[69] *See* Sections VII.L.1.a, VII.L.1.b(2), VII.L.1.b(3) (discussing the factual background of the 2006 Bank Restructuring and the viability of a related fraud claim in the context of the broader circumstances).

[70] *See* Section VII.L.1.b(2) (discussing standing and *in pari delicto* impediments to the viability of a fraud claim).

> b. *Potential Aiding And Abetting Claims Relating To Prepetition Asset Sales*

The Examiner concludes it is unlikely that a claim for aiding and abetting breaches of fiduciary duty relating to the Prepetition Asset Sales would prevail. There was likely no misconduct by and no harm to ResCap associated with those Affiliate Transactions.

As discussed in Section VII.E.2.b, the Examiner concluded it is unlikely that any claim for breach of fiduciary duty relating to the Prepetition Asset Sales would prevail. Although certain of those transactions occurred under hurried circumstances and on a rapid schedule,[71] ResCap fiduciaries appear to have made informed decisions to engage in the transactions. Further, even if fiduciary duties were breached, there is no indication that ResCap was harmed. Thus, in the absence of a viable claim for breach of duty by ResCap fiduciaries related to the Prepetition Asset Sales, a corollary aiding and abetting claim against AFI is unlikely to prevail.

> c. *Potential Aiding And Abetting Claims Relating To The January 30 Letter Agreement, $48.4 Million Prepetition Indemnity Payment, And A&R Servicing Agreement*

The Examiner concludes it is unlikely that claims for aiding and abetting breaches of fiduciary duty relating to the January 30 Letter Agreement, a related $48.4 million prepetition indemnity payment to Ally Bank, and the A&R Servicing Agreement would prevail.

As discussed in Section VII.E.2.c, those Affiliate Transactions were generally the product of extensive, arm's-length negotiations; reflected reasonable decision-making by ResCap fiduciaries, often in the face of difficult circumstances; and resulted in no harm to ResCap.[72] Here, too, an aiding and abetting claim would need to be predicated on a viable underlying claim for breach of fiduciary duty,[73] and likely could not be.

> d. *Potential Aiding And Abetting Claims Relating To Approval Of The AFI And RMBS Trust Settlements*

The Examiner concludes it is unlikely that claims for aiding and abetting breaches of fiduciary duty relating to the work of the Special Review Committee and ResCap Board with respect to approval of the (now-terminated) AFI Settlement and Plan Sponsor Agreement and the RMBS Trust Settlement Agreements would prevail. Although the efforts of the involved ResCap fiduciaries were not optimal, they do not rise to the level of breaches of fiduciary duty,[74] and therefore no corollary aiding and abetting claims against AFI are likely to be viable.

---

[71] *See generally* Section V.F (discussing facts pertinent to the Prepetition Asset Sales between ResCap and AFI).

[72] *See generally* Section V.C (discussing facts pertinent to these related-party transactions).

[73] *See* Section VII.G.1.c.

[74] *See* Section VII.E.2.d (discussing viability of potential fiduciary duty claims related to these agreements).

Most significantly, AFI cannot be held liable for the sub-optimal performance of the ResCap Board in relation to these agreements.[75] The work of the Special Review Committee of the ResCap Board and their legal counsel in connection with investigating and settling potential claims against AFI was incomplete and flawed, yet AFI cannot be held legally responsible for those deficiencies as the work was conducted independently of AFI. Similarly, defects in the ResCap Board's consideration and approval of the RMBS Trust Settlement Agreements cannot properly be attributed to participation by AFI.

---

[75] *See generally* Section III.J (discussing flawed processes that led to the ResCap Board's approval of the AFI Settlement and Plan Sponsor Agreement and RMBS Trust Settlement Agreements).