**VII. REVIEW AND ANALYSIS OF ESTATE CAUSES OF ACTION IMPLICATED BY AFFILIATE TRANSACTIONS AND THE RELATIONSHIP AND COURSE OF DEALING AMONG RESCAP, AFI, ALLY BANK, AND CERBERUS**

**H.  COMMON LAW CONTRIBUTION CLAIMS**

During the course of the Investigation, it was asserted that ResCap may have a right of contribution against (1) Ally Bank with respect to representation and warranty claims; and (2) AFI with respect to federal securities violations. The Examiner also considered whether ResCap may have a claim for contribution against AFI with respect to payments made under the DOJ/AG Consent Judgment.

Very generally, there are two primary prerequisites for a claim for contribution: (1) a situation in which the party seeking contribution and the party or parties from whom contribution is being sought share some liability or burden; and (2) the party seeking contribution has discharged more than its fair share of the liability or burden.

1. *Choice-Of-Law*

A bankruptcy court confronting state law claims is to apply the choice-of-law rules of the state in which it sits.[1] Given that the Bankruptcy Court sits in New York, the Examiner applied New York's choice-of-law rules to determine the governing law for potential contribution claims.

    a. *Does An Actual Conflict-Of-Law Exist Between New York Law And The Laws Of Other Interested Jurisdictions?*

"The first step of New York's choice-of-law rules is to determine whether there is an actual conflict between the laws of the jurisdictions involved."[2] In this case, jurisdictions that are potentially interested in one or more of the transactions investigated by the Examiner include Michigan,[3] Minnesota,[4] New York,[5] and Pennsylvania.[6]

---

[1]  *See Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 186 (2d Cir. 2012) ("It is well established that a federal court sitting in diversity must generally apply the choice-of-law rules of the state in which it sits. And it is now well established that a bankruptcy court must also apply state choice of law rules."); *Bianco v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599, 601–02 (2d Cir. 2001) ("bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice-of-law rules of the forum state."); *In re PSINet Inc.*, 268 B.R. 358, 376 (Bankr. S.D.N.Y. 2001) ("Where, as here, this Court's subject matter jurisdiction is based on 28 U.S.C. § 1334, the Court applies, with respect to matters of state law, the conflicts of law principles of the forum state, *i.e.*, the State of New York.").

[2]  *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 665 (S.D.N.Y. 2012) (citing *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 426 (S.D.N.Y.2006)) (quoting *In the Matter of Allstate Ins. Co.*, 613 N.E.2d 936 (NY 1993)). If there is no actual conflict between the laws of the jurisdictions involved, a court may avoid the choice-of-law analysis. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Matter of Allstate Ins. Co.*, 613 N.E.2d at 937).

[3]  AFI's principal place of business is located in Michigan.

[4]  ResCap's principal place of business is located in Minnesota.

[5]  In the First Day Affidavit, the Debtors stated that ResCap "maintains its headquarters at its New York office located at 1177 Avenue of the Americas, New York, New York 10036." First Day Affidavit at 3. The Debtors further stated that "the New York office has served as the primary office for the senior executives and core management team of the largest operating Debtors—ResCap, Residential Funding Company LLC . . . and GMAC Mortgage, LLC." *Id.*

[6]  Ally Bank and GMAC Mortgage's principal place of business is in Pennsylvania.

Under Pennsylvania,[7] Minnesota,[8] and Michigan[9] law, a common law claim for contribution may only be asserted against a tortfeasor who shares a common liability to the injured party. In contrast, under New York law, a tortfeasor may assert a claim for contribution against another entity that is not liable to the injured party. It is "well established" in New York that a tortfeasor "may seek contribution from a third party even if the injured party has no direct right of recovery against that party" provided that "there has been a breach of duty that runs from the contributor to the defendant who has been held liable" and that breach "had a part in causing or augmenting the injury for which contribution is sought."[10] This rule reflects New York's expansive approach to permitting contribution claims regardless of whether the injured party chose to sue a potential defendant or whether such action may have been barred against such defendant because of substantive or procedural rules.[11] Accordingly, the

---

[7]  *See* 42 PA. CONS. STAT. § 8321. Pennsylvania has adopted the Uniform Contribution Among Tortfeasors Act (1939). Its contribution statute provides, in relevant part:

> § 8322. Definition.
> As used in this subchapter "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.
>
> § 8324. Right of contribution.
> (a) General rule.—The right of contribution exists among joint tort-feasors.
> (b) Payment required.—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

42 PA. CONS. STAT. § 8322, 8324.

[8]  Minnesota recognizes a common law contribution claim, but has not codified the law. *See In re Individual 35w Bridge Litig.*, 786 N.W.2d 890, 894 (Minn. Ct. App. 2010) (internal citations omitted). Under Minnesota law, "[t]wo requirements must be met before contribution may be obtained: First, the co-tortfeasors must be under a common liability to the injured party. Second, the co-tortfeasors claiming contribution must have paid a disproportionate share of the judgment." *Id.* (internal citations omitted).

[9]  *See* MICH. COMP. LAWS ANN. § 600.2925a. Michigan has codified its common law claim for contribution in Michigan Comparative Law § 600.2925a and provides, in relevant part:

> (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
>
> (2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability.

MICH. COMP. LAWS ANN. § 600.2925a.

[10]  *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 362 (W.D.N.Y. 2012) (citing *Raquet v.* Braun, 681 N.E.2d 404 (N.Y. 1997)).

[11]  *See Mar-Cone Appliance Parts Co.*, 879 F. Supp. 2d at 362.

Examiner concludes that it is likely that the Bankruptcy Court would find that an actual conflict exists between the contribution laws of New York and the other relevant jurisdictions.[12]

### b. Application Of New York Choice-Of-Law Rules

New York's choice-of-law rules differ depending on the nature of the claim (i.e. tort claims or contract claims).[13] With respect to tort claims, New York choice-of-law rules further differ depending whether the underlying substantive law is "conduct-regulating" or "loss allocating."[14] Conduct regulating law has "the prophylactic effect of governing conduct to prevent injuries from occurring."[15] Loss allocating law "prohibit[s], assign[s], or limit[s] liability after the tort occurs."[16] When a conflict concerns a loss allocating rule, including a claim for contribution, the court applies the three-part interest analysis rule established in *Neumeier v. Kuehner*[17] to determine the state with the greatest interest or concern with the specific issues raised in the litigation.[18]

The first *Neumeier* rule requires that when the plaintiff and defendant share a common domicile, the loss allocating rule of that state controls.[19] That rule does not resolve the present conflict because ResCap, on the one hand, and AFI, Ally Bank, and Ally Securities,[20] on the other hand, are domiciled in different states.[21] In that event, the second *Neumeier* rule provides that if the tort occurred in a state

---

[12] *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("Where the applicable law from each jurisdiction provides different substantive rules, a conflict of laws analysis is required."). An actual conflict is present "[w]here the applicable law from each jurisdiction provides different substantive rules." *Id.* at 12.

[13] *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302, 307 (S.D.N.Y. 2007)

[14] *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521–22 (N.Y. 1994).

[15] *Id.* at 552.

[16] *Id.* (noting that loss allocating rules include contribution rules).

[17] 286 N.E.2d 454, 457–58 (N.Y. 1972) (applying Ontario guest statute).

[18] *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 363 (W.D.N.Y. 2012) (citing *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005)); *see also Neumeier v. Kuehner*, 286 N.E.2d 454, 457–58 (N.Y. 1972); *Cooney v. Osgood Mach.*, 612 N.E.2d 277, 281 (N.Y. 1993).

[19] *See Mar-Cone Appliance Parts Co.*, 879 F. Supp. 2d at 363 (citing *Neumeier*, 286 N.E.2d at 457–58).

[20] AFI, Ally Bank, and Ally Securities are all AFI Defendants and AFI is a party to the DOJ/AG Settlement.

[21] The first *Neumeier* rule looks to the domicile of the parties involved in the litigation. The domicile of a corporation under New York choice-of-law rules is the state where the corporation maintains its principal place of business. *See Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 39 (S.D.N.Y. 2010) (citing *DiTondo v. Meagher*, 24 Misc. 3d 720 (N.Y. Sup. Ct. 2009)); *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 392 F. Supp. 2d 621, 629, n.47 (S.D.N.Y. 2005) (citing *Elson v. Defren*, 283 A.D.2d 109, 116 (N.Y. App. Div. 2001)). The Second Circuit determines a corporation's principal place of business by applying the nerve center test, which is normally where a corporation maintains its headquarters. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 243 (S.D.N.Y. 2012); *Astra Oil Trading v. PRSI Trading Co. LP*, 794 F. Supp. 2d 462, 469 (S.D.N.Y. 2011); *Albstein v. Six Flags Entm't Corp.*, 2010 WL 4371433, *1 (S.D.N.Y. Nov. 4, 2010).

where one of the parties is domiciled and such state law favors its citizen, the law of the place of the tort controls.[22] If neither of the first two rules applies, the third *Neumeier* rule requires that the law of the state where the tort took place apply, "'unless it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or proceeding great uncertainty for litigations.'"[23]

Lawsuits asserting Third-Party Claims have been filed in different state and federal courts and the locations of the transactions subject to the Third-Party Claims vary. For the reasons discussed in Section VIII.C.1, the Examiner has analyzed Third-Party Claims issues under New York and Second Circuit law.[24] Given this analysis and the noted difficulties in undertaking a choice-of-law analysis with alleged torts having occurred across the United States, the Examiner has, for illustrative purposes only, chosen to consider ResCap's potential contribution claims under New York law.

2. *New York Contribution Law*

   a. *Principles Of A Contribution Cause Of Action*

Pursuant to § 1401 of New York Civil Practice Law and Rules, a claim for contribution may be alleged by one tortfeasor against another "based on a breach of duty of a tortious nature owed either to the plaintiff by the contributing third party or a special duty of tortious nature owed by the third party to the defendant seeking contribution or both."[25] The critical element in allowing a tortfeasor to proceed with a claim for contribution is that the party it seeks contribution from "must have had a part in causing or augmenting the injury for which contribution is sought."[26] Notably, New York law does not require that the party from whom contribution is sought be liable under the same theories of recovery, have acted in concert with the entity seeking contribution, or owe a duty to the injured party, so long as it

---

[22] *See Benitez v. Hitachi Metals Am. Ltd.*, 2012 WL 3249417, at *4 (S.D.N.Y. Aug. 4, 2012) (citing *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306 (2011); *Neumeier*, 286 N.E.2d 454).

[23] *Benitez*, 2012 WL 3249417, at *4 (quoting *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306 (2011)).

[24] *See* Section VIII.C.1. The Examiner also reviews the DOJ/AG Settlement under New York contribution law because it settles torts that occurred in multiple states and therefore presents the same difficulties noted with respect to Third Party Claims.

[25] *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 368 (W.D.N.Y. 2012) (referring to N.Y. C.P.L.R. § 1401).

[26] *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010) (citing *Raquet v. Braun*, 681 N.E.2d 404 (N.Y. 1997) (citing *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 523 N.E.2d 803 (N.Y. 1988) (internal quotation marks omitted); *accord Rosner v. Paley*, 481 N.E.2d 553 (N.Y. 1985)). Note, however, that New York law provides that economic loss resulting from a breach of contract does not constitute "injury to property" within the meaning of New York's contribution statute. *See Board of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 26 (1987).

owes a duty to one of the tortfeasors.[27] As a result, contribution claims are not limited to joint tortfeasors, but may be asserted against "concurrent, successive, independent, alternative, and intentional tortfeasors."[28]

In addition, the liability need not be proportioned equally among the tortfeasors.[29] Instead, the relative degrees of fault of the tortfeasors are to be taken into consideration in determining their pro rata shares.[30]

Under New York law, contribution can be pursued before an action has been brought or a judgment has been rendered against the person from whom contribution is sought.[31] However, such a claim does not entitle a party to contribution until such party has actually paid an amount in excess of its proportionate share of the judgment.[32]

---

[27] *See Silverman v. Seeling (In re Agape World, Inc.)*, 467 B.R. 556, 587 (Bankr. E.D.N.Y. 2012) (citing *Nassau Roofing*, 523 N.E.2d 803; *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.I*, 769 F. Supp. 2d 322, 327 (S.D.N.Y. 2011)) (applying New York contribution law in connection with a trustee's claim for contribution); *Firestone v. Berrios*, 2013 WL 297780, at *15 (E.D.N.Y. Jan. 22, 2013) (citing *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449 (N.Y. App. Div. 1985)).

[28] *Millennium Import, LLC v. Reed Smith LLP*, 104 A.D.3d 190, 194 (N.Y. App. Div. 2013) (citing *Schauer v. Joyce*, 429 N.E.2d 83 (N.Y. 1981)); *see also Mar-Cone Appliance Parts*, 879 F. Supp. 2d at 376 (citing *Board of Educ. of Hudson City School Dist.*, 517 N.E.2d at 1364 (holding that, like Delaware law, "New York [contribution] law also requires that to claim contribution the predicate special duty owed to a defendant by a third-party . . . must also arise in tort so as to render . . . such party a 'joint,' 'concurrent, successive independent alternative [or] . . . intentional tort feasor.'").

[29] *See Garret v. Holiday Inns*, 58 N.Y.2d 253, 258 (N.Y. 1983) ("Principles allowing apportionment among tort-feasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault"); *Kelly v. Long Is. Light Co*, 286 N.E.2d 241, 243 (N.Y. 1972) ("The rule . . . now permits apportionment of damages among joint or concurrent tort-feasors regardless of the degree or nature of the concurring fault . . . . The fairer rule, we believe is to distribute the loss in proportion to the allocable concurring fault.").

[30] *See Westchester Cnty. v. Welton Becket Assocs.*, 102 A.D.2d 34, 47 (N.Y. App. Div. 1984) ("Each of the wrongdoers owes a duty to the injured party, and it is a fact question for the jury as to the degree of responsibility each wrongdoer must bear for causing the injury.").

[31] N.Y. C.P.L.R. § 1401 (1996); *see also Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Calabrese*, 2013 WL 752259, at *11 (E.D.N.Y. Feb. 26, 2013) (citing *Klinger v. Dudley*, 361 N.E.2d 974, 979 (N.Y. 1977) (noting that a defendant may assert a claim for contribution prior to the payment of any amount to the plaintiff)).

[32] N.Y. C.P.L.R. § 1402 (1996); *see also Andrulonis v. United States,* 26 F.3d 1224, 1233 (2d Cir. 1994) (citing *Klinger v. Dudley,* 361 N.E.2d 974, 979 (N.Y. 1977)) ("Under New York law, the right to contribution does not arise in favor of the defendant unless and until the defendant pays the plaintiff an amount exceeding its equitable share of the primary judgment.").

*(1) Standard Of Proof*

Under New York law, a party seeking contribution has the burden of proving that it is entitled to contribution.[33] To the extent liability is to be proportioned based on fault, the party seeking contribution must also provide some evidence as to what proportion of the obligations falls upon each tortfeasor.[34]

*(2) Statute Of Limitations*

Under New York law, the statute of limitations for contribution is six years from when the claim accrues.[35] As noted above, a claim for contribution accrues when a party pays more than its proportionate share.[36]

b.  *Transactions Implicated By The Contribution Causes Of Action*

*(1) Third-Party Claims*

As described in more detail in Section VIII, the Examiner has reviewed claims that have been asserted against the Debtors, AFI, Ally Bank, and Ally Securities on account of RMBS issued by the Debtors between 2003 and 2007.[37] These claims are based upon various legal theories, including breach of contract, fraud, negligence, and violation of state and federal securities laws. The plaintiffs are mainly investors who purchased securities from the Debtors and monoline insurers who guaranteed principal and interest payments to investors on account of the securities. Given the Examiner's mandate to determine whether the AFI Defendants have provided sufficient consideration for the Third-Party Release, the Investigation focused primarily on the extent to which AFI, Ally Bank, and Ally Securities might be held derivatively liable for the Debtors' RMBS-related conduct (assuming the Debtors are found liable for the underlying primary claims).

In order for ResCap to be entitled to contribution from AFI, Ally Bank or Ally Securities in connection with these claims, ResCap is required to have actually paid an amount in excess of its

---

[33] *See Silverman v. Seeling (In re Agape World, Inc.)*, 467 B.R. 556, 578 (Bankr. E.D.N.Y. 2012) ("[T]he party seeking contribution must make out all of the essential elements of a cause of action against the proposed contributor"); *Figueroa v. Kahn*, 101 Misc.2d 821, 822 (N.Y. Sup. Ct 1979).

[34] *See* 18 AM. JUR. 2D CONTRIBUTION § 117 (2013); *Charney v. Muss*, 149 A.D.2d 393, 394 (N.Y. App. Div. 1989).

[35] *See* N.Y. C.P.L.R. § 213; *see also Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 497 (S.D.N.Y. 2003) (citing *White v. Long*, 229 A.D. 2d 178, 182 (N.Y. App. Div. 1997); *Blum v. Good Humor Corp.*, 57 A.D.2d 911 (N.Y. App. Div. 1977)) ("Claims for contribution under New York law do not accrue, for statute of limitations purposes, until six years after payment is made on the underlying claim.").

[36] *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994) (citing *Klinger v. Dudley*, 361 N.E.2d 974, 979 (N.Y. 1977)) ("Under New York law, the right to contribution does not arise in favor of the defendant unless and until the defendant pays the plaintiff an amount exceeding its equitable share of the primary judgment.").

[37] *See, e.g.*, Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements [Docket No. 320] at 3 ("The R&W Claims are the single largest set of disputed claims against the Debtors' estates by a wide margin").

proportionate share of a judgment for liability.[38] The underlying lawsuits asserting Third Party Claims are still pending and ResCap has not been found liable pursuant to any judgment, much less paid more than its proportionate share of any such judgment. While under New York law, ResCap may assert a claim for contribution today, in no state (including New York) can ResCap recover from AFI, Ally Bank, or Ally Securities unless and until ResCap has paid more than its pro rata share in those lawsuits.[39] It is therefore premature for the Examiner to undertake any substantive analysis regarding any right to contribution that ResCap would have against AFI or Ally Bank.

*(2) February 2012 Payment Made Pursuant to the DOJ/AG Settlement*

As described in more detail in Section V.C.1, on April 4, 2012, AFI, ResCap and GMAC Mortgage agreed to settle a number of potential civil claims against them for conduct related to the servicing of mortgage loans, the servicing of loans of borrowers in bankruptcy, and the origination of mortgage loans.[40] The DOJ/AG Consent Judgment provided that in return for the release of these potential claims, ResCap, AFI, and GMAC Mortgage were required to take a number of actions, including collectively paying $109.6 million to an escrow account of the DOJ, which would then be distributed to the states who were parties to the DOJ/AG Settlement.[41] Exhibit I of the DOJ/AG Consent Judgment specified that ResCap, GMAC Mortgage, and RFC (and not AFI) would pay the $109.6 million hard dollar payment and incorporated the DOJ/AG Earmark and Indemnification Agreement.[42]

In order for ResCap to have a claim for contribution against AFI, ResCap must prove that: (1) AFI had a part in causing or augmenting the injury for which contribution is sought; and (2) that ResCap discharged more than its pro rata share of the obligation to the DOJ under the DOJ/AG Settlement. At first glance, it would appear that ResCap could assert a contribution cause of action against AFI: AFI, ResCap, and GMAC Mortgage were all named settling parties under the DOJ/AG Consent Judgment and ResCap, through GMAC Mortgage, paid the entire hard cost of $109.6 million to the DOJ.[43] In

---

[38] As noted above, if ResCap is found liable solely on a breach of contract basis, it would not have a right of contribution against AFI. *See Board of Educ. Of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 26 (1987).

[39] *See* N.Y. C.P.L.R. § 1402 ("The amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his equitable share."); 42 PA. CONS. STAT. § 8329 ("A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof"); MICH. COMP. LAWS. SERV. § 600.2925a ("The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share."); *In re Individual 35w Bridge Litig.*, 786 N.W.2d 890, 894 (Minn. Ct. App. 2010) (noting that a co-tortfeasor seeking contribution must have paid more than its share of the judgment before contribution can be obtained).

[40] *See* Section V.C.1.d.(1).

[41] DOJ/AG Consent Judgment, ¶ 3. The judgment specifically states that "Defendant" shall pay the settlement amount and defines "Defendant" as ResCap, AFI and GMAC Mortgage, collectively. *Id.* at 1.

[42] DOJ/AG Consent Judgment, Ex. I, at 1-12.

[43] As noted in Section V.C.1.c.(5)(b), while ResCap is expected to incur significant remediation costs in connection with the FRB/FDIC Consent Order, it has not yet made any payments. Any meaningful analysis of a contribution claim relating to these remediation costs is premature.

exchange for ResCap's payment, the DOJ/AG Consent Judgment released AFI and its affiliates, including ResCap and GMAC Mortgage, from certain federal and state claims assertable by the DOJ and state AGs.[44]

While ResCap paid the entire $109.6 million owed under the DOJ/AG Settlement, AFI helped ensure that ResCap had the funds to make the payment. As discussed in Section V.C, AFI and ResCap entered into two agreements in anticipation of the government settlements to provide ResCap with sufficient liquidity to make payments that would be owed. First, AFI and ResCap entered into the January 30 Letter Agreement, pursuant to which AFI agreed to forgive secured indebtedness of $196.5 million under the A&R Line of Credit Agreement in exchange for ResCap's payment of future cash fines owed directly to applicable governmental authorities.[45] ResCap also agreed that it would reimburse AFI for any amounts expended in satisfying any obligation under the anticipated DOJ/AG Settlement.[46] Second, on March 14, 2012, AFI and ResCap entered into the Earmark Agreement, whereby ResCap agreed that it would use $109 million of the liquidity provided by AFI pursuant to the January 30 Letter Agreement to make the "hard cost" payment to the DOJ.[47] Without the debt forgiveness, ResCap would have been unable to pay the $109 million owed under the DOJ/AG Settlement.[48]

Assuming ResCap can demonstrate that AFI had a part in causing or augmenting the underlying injury that was settled pursuant to the DOJ/AG Settlement, it would still need to prove that ResCap discharged all or greater than its share of the joint obligation for the benefit of AFI. Such analysis would need to take into account value provided by AFI pursuant to the January 30 Letter Agreement and the Earmark Agreement. ResCap would bear the burden of proving the proper allocation of liability between ResCap and AFI.

As described in Section V.C.1.f, it appears that sometime in mid-February 2012, ResCap's and AFI's accounting departments determined that a 92%/8% allocation contained in a press release relating to the FRB/FDIC Settlement would govern how costs relating to all of the government settlements were to be allocated between ResCap and AFI.[49] This allocation was used to allocate costs of the DOJ/AG Settlement between ResCap and AFI, apparently without considering or making any effort to take into account the allegations that were actually being settled in the DOJ/AG Settlement.[50] The DOJ/AG

---

[44] DOJ/AG Consent Judgment, ¶¶ 9–10, Ex. G,H. The consideration set forth in the DOJ/AG Consent Judgment for this release also includes $200 million in consumer relief that was ultimately provided by ResCap and its subsidiaries. Pursuant to the terms set forth in Ex. I of the DOJ/AG Consent Judgment, AFI agreed to provide this $200 million in consumer relief to the extent that ResCap, GMAC Mortgage, and RFC did not perform such obligations. *Id*. Ex. I, ¶ 3.

[45] *See* Section V.C.2.a.

[46] *See* Section V.C.2.a.

[47] *See* Section V.C.1.d(3).

[48] *See* Section V.C.1.d(3).

[49] *See* Section V.C.1.f(4).

[50] According to Marano, the FRB/FDIC Settlement and the DOJ/AG Settlement were perceived as involving separate criteria. Int. of T. Marano, Feb. 27, 2013, at 23:1–24:12 (noting that the FRB used different criteria than the DOJ in evaluating the settlements and that the FRB criteria involved a separate examination resulting in the identification of 15 statutory violations, 11 of which were attributable to ResCap and 4 of which were attributable to AFI).

Settlement itself does not include any allocation of fault between AFI and ResCap. As discussed in Section V.C.1, the allocation of costs for the DOJ/AG Settlement between AFI and ResCap was ultimately based on the division contained in the FRB press release.

The Examiner is unable to conclude whether another allocation of fault between AFI and ResCap relating to the DOJ/AG Settlement would be more appropriate and, therefore, whether a contribution claim asserted by ResCap would prevail. The burden of proof to the extent ResCap believes that AFI should bear a greater percentage of the costs will rest with ResCap.

As discussed above, however, AFI did forgive debt and provide liquidity to ResCap so that it could pay the settlement amount. In addition, as noted in Section V.C.6, it is undisputed that ResCap and its subsidiaries, as the mortgage servicers, were responsible for the significant portion of the actionable issues that were the subject of the DOJ/AG Settlement.[51]

---

[51] See Section V.C.4.