## VII. REVIEW AND ANALYSIS OF ESTATE CAUSES OF ACTION IMPLICATED BY AFFILIATE TRANSACTIONS AND THE RELATIONSHIP AND COURSE OF DEALING AMONG RESCAP, AFI, ALLY BANK, AND CERBERUS

### I. CONSTRUCTIVE TRUST CLAIMS

*1. Introduction*

Wilmington Trust argues that a constructive trust should be imposed on (1) ResCap's interest in the "mortgage division" of Ally Bank, which AFI allegedly obtained by violating a "confidential relationship" with ResCap; and (2) proceeds of TARP funds that AFI received by virtue of its relationship to ResCap.[1] This Section examines the merits of constructive trust claims against AFI.

*a. Unjust Enrichment And Constructive Trust*

Unjust enrichment is an equitable doctrine that permits courts to infer the existence of an implied contract to prevent an entity that has obtained a benefit from another from unjustly enriching itself at the other party's expense.[2]

A constructive trust is an equitable device a court may impose when the holder of legal title to property acquired the property under such circumstances that the holder "in good conscience" should not be allowed to retain it.[3] A claim for constructive trust is a remedy, often to a corresponding allegation of unjust enrichment.[4] When a constructive trust is imposed, the holder becomes a trustee, holding the property for the benefit of the plaintiff.[5] When considering such equitable relief, however, a court is constrained by two considerations: (1) the property must be discernible and traceable to the plaintiff; and (2) the requested relief may not be in lieu of damages—a constructive trust is only available to prevent the title holder

---

[1] In addition, Wilmington Trust asserts that AFI was unjustly enriched by the implementation of the Second 2009 Tax Allocation Agreement. For the reasons set forth in Section VII.K, the Examiner concludes that ResCap would not be entitled to seek equitable remedies against AFI, including a claim based on unjust enrichment, in connection with the Second 2009 Tax Allocation Agreement.

[2] *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) ("[Unjust enrichment] is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned."); *see also Newbro v. Freed*, 409 F. Supp. 2d 386, 398 (S.D.N.Y. 2006) (alteration in original) (citation omitted) (noting "a cause of action for unjust enrichment arises when one party possesses money . . . that in equity and good conscience they should not have obtained or possessed because it rightfully belongs to another").

[3] *Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y. 1978) (citing *Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 380 (N.Y. 1919)); *see also* RESTATEMENT (FIRST) OF RESTITUTION § 160 (1937) ("Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.").

[4] *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (citation omitted) ("A constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose. Its purpose is to prevent unjust enrichment . . . .").

[5] *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) ("Tracing is necessary where a private plaintiff seeks to impose a constructive trust, because liability is premised on the fiction that the victim at all times retained title to the property in question, which the defendant merely holds in trust for him."); *see also Healy v. Comm'r*, 345 U.S. 278, 282 (1953) ("A constructive trust is a fiction imposed as an equitable device for achieving justice.").

from being unjustly enriched, not to provide a second avenue to an award otherwise available under a breach of contract claim.[6] Under certain circumstances, a plaintiff may be awarded the property as well as any profits earned from it.[7]

  b. *Choice Of Law*

In the Second Circuit, the choice of law rules of the forum state will apply to claims premised on state law, unless state law would conflict with a federal policy or interest.[8] The Examiner concludes that it is likely that New York choice of law rules will apply to claims of unjust enrichment or constructive trust because of: (1) the apparent absence of any federal interest;[9] (2) the pendency of the Chapter 11 Cases in the Southern District of New York; and (3) the similarity between New York law and the corresponding laws of the other related jurisdictions, Delaware,[10] Michigan,[11] Minnesota,[12] and Pennsylvania.[13]

---

[6] *Bronson Partners, LLC*, 654 F.3d at 373 (comparing constructive trust (requiring tracing) to the government's right to disgorgement (where no tracing is required)); *see also United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) (tracing required); *Superintendent of Ins. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 213 (2d Cir. 2004) (determining that the existence of a valid and enforceable contract precludes the imposition of a constructive trust); *Petrello v. White*, 412 F. Supp. 2d 215, 232–33 (E.D.N.Y. 2006) (same), *aff'd*, 344 F. App'x 651 (2d Cir. 2009). Constructive trusts lack the element of intent that is found in express or resulting trusts. *See, e.g., Healy,* 345 U.S. at 282–83; *Conn. Res. Recovery Auth. v. Enron Corp.* (*In re Enron Corp.*), No. 01 B 16034(AJG), 2003 WL 1571719, at *5 (Bankr. S.D.N.Y. Mar. 27, 2003), *aff'd*, No. 01-16034 (AJG), 2004 WL 726088 (S.D.N.Y. Apr. 2, 2004).

[7] *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, n.2 (2002). The rules requiring the plaintiff to be able to trace property to a specific *res* does not apply to profits. *Id.* (emphasis added).

[8] *Bianco v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599, 601–02 (2d Cir. 2001) ("[B]ankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state."). If a claim before a bankruptcy court were "already pending in a parallel, out-of-state, non-bankruptcy proceeding" that was filed before the bankruptcy petition, the bankruptcy court "should apply the choice of law rules of the state where the underlying prepetition claim was filed." *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 182 (2d Cir. 2012).

[9] *In re Gaston & Snow*, 243 F.3d at 606 (explaining that the federal common law applies only in very limited circumstances where "a significant conflict between some federal policy or interest and the use of state law [is] specifically shown") (quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997)).

[10] AFI, GMAC Mortgage, ResCap, and RFC are all domiciled in Delaware.

[11] AFI's principal place of business is located in Michigan. *See* General Motors Acceptance Corporation, Annual Report (Form 10-K) (Mar. 28, 2006), at 9; GMAC LLC, Annual Report (Form 10-K) (Mar. 13, 2007), at 11; GMAC LLC, Annual Report (Form 10-K) (Feb. 27, 2008), at 14.

[12] The principal place of business for both ResCap and RFC is Minnesota. *See* Residential Capital Corporation, Annual Report (Form 10-K) (Mar. 28, 2006), at 3, 46; Residential Capital, LLC, Annual Report (Form 10-K) (Mar. 13, 2007), at 3; Residential Capital, LLC, Annual Report (Form 10-K) (Feb. 27, 2008), at 1, 4; Residential Capital, LLC, Annual Report (Form 10-K) (Feb. 26, 2009), at 1, 4.

[13] GMAC Mortgage's principal place of business is in Pennsylvania. *See* GMAC LLC, Annual Report (Form 10-K) (Feb. 27, 2008), at 14; GMAC LLC, Annual Report (Form 10-K) (Feb. 26, 2009), at 21; GMAC Inc., Annual Report (Form 10-K) (Mar. 1, 2010), at 22; Ally Financial Inc., Annual Report (Form 10-K) (Feb. 25, 2011), at 29; Ally Financial Inc., Annual Report (Form 10-K) (Feb. 28, 2012), at 26.

In New York, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved";[14] if the laws of the relevant jurisdictions are substantively the same, a court may dispense with the choice of law analysis.[15] Because there is no material difference between the unjust enrichment and constructive trust laws of New York[16] and those of Delaware,[17] Michigan,[18]

---

[14] *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citing *Matter of Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)).

[15] *See Curley*, 153 F.3d at 12 (citing *J. Aron & Co. v. Chown*, 647 N.Y.S.2d 8, 8 (N.Y. App. Div. 1996)) ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis."). "An actual conflict is present "[w]here the applicable law from each jurisdiction provides different substantive rules . . . ." *Curley*, 153 F.3d at 12.

[16] In New York, a plaintiff asserting an unjust enrichment claim must establish "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739 (S.D.N.Y. 2012) (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129–30 (2d Cir. 2002)), *aff'd*, No. 12-1428-cv, 2012 WL 6176559 (2d Cir. Dec. 12, 2012). A "'plaintiff need not be in privity with the defendant to state a claim for unjust enrichment,' [but] there must exist a relationship or connection between the parties that is not too 'attenuated.'" *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quoting *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007)).

Before imposing a constructive trust, New York courts will look at whether there is "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment." *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976) (citations omitted). This is a flexible standard, however, and not all elements must be satisfied for an unjust enrichment claim to stand. *See Tekinsight.Com, Inc. v. Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2000); *see also Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (N.Y. App. Div. 2010) (noting that because the "elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established").

[17] In Delaware, unjust enrichment requires: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (citation omitted). The imposition of a constructive trust in Delaware is proper "when 'a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty.'" *Id.* at 393–94 (quoting *Dodge v. Wilmington Trust Co.*, No. 1257-K, 1995 Del. Ch. LEXIS 26, at *21, (Del. Ch. Feb. 3, 1995)); *see also O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 395 (Bankr. S.D.N.Y. 2011) ("The elements for unjust enrichment claims under Delaware law are similar to that of New York law.").

[18] "Under Michigan law, the elements of an unjust enrichment claim are '(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant.'" *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 692 (E.D. Mich. 2012) (citation omitted). "A constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment." *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Schs.*, 504 N.W.2d 635, 641 (Mich. 2006) (citations omitted). A constructive trust will be imposed "where a person occupies a fiduciary relationship as agent for another, and thereby gains something for himself which in equity and good conscience he should not be permitted to keep . . . ." *MacKenzie v. Fritzinger*, 121 N.W.2d 410, 414 (Mich. 1963) (citations omitted).

Minnesota,[19] and Pennsylvania,[20] the Bankruptcy Court could apply New York unjust enrichment and constructive trust jurisprudence without engaging in extensive analysis.

### *(1) New York Unjust Enrichment Law*

To bring a claim for unjust enrichment under New York law, a plaintiff must demonstrate by a preponderance of the evidence[21] "(1) that the defendant benefitted, (2) at the plaintiff's expense, and (3) that equity and good conscience require restitution."[22] The claim for unjust enrichment is quasi-contractual,[23] and courts have noted that "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit

---

[19] "To establish [an unjust enrichment] claim under Minnesota law, a plaintiff must demonstrate 'that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit.'" *T.B. Allen & Assocs., Inc. v. Euro-Pro Operating LLC*, No. 11-3479 (JRT/JSM), 2012 WL 2508021, at *3 (D. Minn. June 28, 2012) (citation omitted). Under Minnesota law, a court may impose a constructive trust in cases that "involve fraud, taking improper advantage of a confidential or fiduciary relationship, or unjust enrichment." *Kunkel v. Ries (In re Morken)*, 199 B.R. 940, 964 n.35 (Bankr. D. Minn. 1996) (citation omitted).

[20] "Under Pennsylvania law, a showing of unjust enrichment requires a plaintiff to prove that it: (1) conferred a benefit on the defendant; (2) such benefit was known and was retained or accepted by the defendant; and (3) it would be inequitable to allow the defendant to retain such benefit." *Am. Fed'n of State, Cnty. & Mun. Emps. v. Cephalon (In re Actiq Sales and Mktg. Practices Litig.)*, 790 F. Supp. 2d 313, 329 (E.D. Pa. 2011) (footnote omitted); *see also Ainbinder v. Potter*, 282 F. Supp. 2d 180, 184 n.3 (S.D.N.Y. 2003) (applying New York law where the defendant sought the application of Pennsylvania law, but "readily admit[ted] that the Court need not resolve the choice-of-law issue to rule on the motions to dismiss because there is no material difference between New York and Pennsylvania law with respect to claims of breach of contract, unjust enrichment, and fraud").

"The Supreme Court of Pennsylvania has said that the need for a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that [the holder] would be unjustly enriched if he were permitted to retain it." *Kontonotas v. Hygrosol Pharm. Corp.*, No. 07-4989, 2009 WL 1734223, at *4 (E.D. Pa. June 16, 2009) (citing *Balazick v. Ireton*, 541 A.2d 1130, 1133 (Pa. 1988)). "The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment." *Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. Ct. 2002) (citations omitted).

[21] *Newman v. Herbst,* No. 09-cv-4313 (TLM), 2011 WL 684165, at *6 (E.D.N.Y. Feb. 15, 2011) (citation omitted) (noting that a claim for unjust enrichment must be proven "by a preponderance of the evidence").

[22] *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 739 (S.D.N.Y. 2012) (citations omitted), *aff'd*, No. 12-1428-cv, 2012 WL 6176559 (2d Cir. Dec. 12, 2012); *see also Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177, 184 (S.D.N.Y. 2000) (citation omitted) ("In order to sustain a claim for unjust enrichment, plaintiff must demonstrate that (1) defendants were enriched; (2) such enrichment was at plaintiff's expense; and (3) under the circumstances it would be unjust not to compensate plaintiff."), *aff'd sub nom.*, 242 F.3d 366 (2d Cir. 2000).

[23] *See*, *e.g.*, *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (citations omitted) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in absence of an agreement.").

the defendant to retain what is sought to be recovered."[24] Thus, a plaintiff that cannot show "some expectation of compensation that was denied" cannot recover on an unjust enrichment claim under New York law.[25]

Nor can a plaintiff prevail on an unjust enrichment claim if the subject matter of the dispute is governed by an enforceable written contract between the parties.[26] Unjust enrichment is intended to remedy a wrong that contract law would otherwise address if a contract existed. If, on the other hand, a contract exists and damages are or could have been available to the plaintiff, equitable relief is precluded.[27] Similarly, a plaintiff cannot rely on an unjust enrichment claim to address a breach of an obligation imposed by law, as opposed to an

---

[24] *Tasini*, 851 F. Supp. 2d at 739–40 (omission in original) (quoting *Dragon Inv. Co. II LLC v. Shanahan*, 854 N.Y.S.2d 115, 118 (N.Y. App. Div. 2008)).

[25] *See id.* at 741 (concluding that "under New York law, a plaintiff must plead some expectation of compensation that was denied in order to recover under a theory of unjust enrichment"). *But see Gidatex, S.r.L. v. Campaniello Imps., Ltd.*, 49 F. Supp. 2d 298, 302–03 (S.D.N.Y. 1999) (concluding that expectation of compensation is not required to prevail on unjust enrichment claim). Subsequent decisions have been critical of the court's reasoning in *Gidatex*. *See Tasini*, 851 F. Supp. 2d at 740 n.3 ("The opinion in *Gidatex* is contrary to the great majority of well-reasoned cases. It is also contrary to the subsequent clear statement by the Court of Appeals for the Second Circuit . . . .").

[26] *See Belleza Fruit, Inc. v. Suffolk Banana Co., Inc.*, No. CV-12-3033(SJF)(WDW), 2012 WL 2675066, at *14 (E.D.N.Y. July 5, 2012) (citations omitted) ("It is impermissible . . . to seek damages in an action sounding in quasi-contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (citation omitted) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.").

[27] *See Goldman v. Met. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (holding that under New York law, equitable remedies are inappropriate when remedies at law are available under an existing contract); *Petrello v. White*, 412 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) (citations omitted) ("New York Courts and the Second Circuit have consistently held 'that the existence of a written agreement precludes a finding of unjust enrichment.'"), *aff'd*, 344 F. App'x 651 (2d Cir. 2009).

obligation arising from the receipt of an unjustly retained benefit.[28] Because unjust enrichment claims are quasi-contractual claims, a defendant has an array panoply of defenses and may assert the *in pari delicto* defense[29] against unjust enrichment claims.[30]

### *(2) New York Constructive Trust Law*

In New York, a court may impose a constructive trust to remedy unjust enrichment.[31] In New York, as in other jurisdictions, a constructive trust, like unjust enrichment, is analogous to a "quasi-contractual" obligation.[32] Four elements generally must be satisfied to support the imposition of a constructive trust: "(1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment."[33] These elements, however, are not "talismanic," and New York "courts have held that a constructive trust can be imposed in the absence of some of these factors."[34]

---

[28] *See Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) (finding that breach of obligations under section 524 of the Bankruptcy Code does not give rise to unjust enrichment claim); *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 892 F. Supp. 347, 356–57 (D.N.H. 1995) (determining that claims under Lanham Act and state unfair competition statutes do not give rise to unjust enrichment claims).

[29] The *in pari delicto* defense dictates that "[i]n a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (alterations in original). The doctrine prevents a plaintiff from asserting "a claim against a defendant if the plaintiff bears fault for the claim." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001) (citations omitted). In the Second Circuit, a defendant may also be able to assert the "Wagoner rule." *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991). Under the Wagoner rule, "a plaintiff acting on behalf of a debtor cannot sue an outside professional or other third party for damages for which the corporation itself can be held responsible." *Official Comm. of Unsecured Creditors v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 478 (Bankr. S.D.N.Y. 2006).

[30] *See Globaltex Grp. Ltd. v. Trends Sportswear Ltd.*, No. 09–CV–0235, 2010 WL 1633438, at *4 (E.D.N.Y. Apr. 21, 2010) ("In pari delicto is applicable to claims of breach of contract, unjust enrichment, conversion, rescission, or damages in tort."). *But see Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 468 B.R. 620, 633 (Bankr. S.D.N.Y. 2012) (noting the lack of case law on "whether *in pari delicto* applies to transfers to a non-insider that were joint and simultaneous with transfers to an insider").

[31] *See, e.g., Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (noting that constructive trust in New York is designed to "prevent unjust enrichment").

[32] *See Equity Corp. v. Groves*, 60 N.E.2d 19, 21 (N.Y. 1945) (A constructive trust "is analogous to a 'quasi-contractual obligation' . . . ."); *see also Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 214 (2d Cir. 2004) (citation omitted) (noting that "the principles that apply to quasi-contractual remedies also apply to constructive trusts").

[33] *Sharp v. Kosmalski*, 351 N.E.2d 721, 723 (N.Y. 1976) (citations omitted).

[34] *Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 743 F. Supp. 176, 180 (S.D.N.Y. 1990) (citations omitted); *see also Tekinsight.Com, Inc. v. Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2000) (citations omitted) ("Notwithstanding the stated requirements, the remedy is a flexible one, and the facts need not satisfy every element in all cases."); *Marini v. Lombardo*, 912 N.Y.S.2d 693, 696 (N.Y. App. Div. 2010) (citations omitted) (noting that because the "elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established").

"Most frequently, it is the existence of a confidential relationship which triggers the equitable consideration leading to the imposition of a constructive trust."[35] In New York, a fiduciary relationship exists where a person "is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."[36] Parties to an arm's-length transaction, however, are not fiduciaries,[37] and parent corporations are not fiduciaries to their wholly-owned subsidiaries.[38]

A court may still impose a constructive trust even in the absence of a fiduciary relationship. As an equitable claim and a remedy, courts do not require "strict adherence to the confidential or fiduciary relationship element of a constructive trust," describing it as "not necessary when a party holds property under circumstances that in equity and good conscience [it] ought not retain."[39] Thus, even under New York law, a constructive trust may be imposed irrespective of the parties' relationship.[40]

The imposition of a constructive trust generally requires an express or implied promise.[41] A promise may be inferred from the circumstances, including arising from the nature of the

---

[35] *See Sharp*, 351 N.E.2d at 723 (citations omitted).

[36] *Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 519 (2d Cir. 2009) (citation omitted); *see also Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 116–17 (11th Cir. 1996) (citations omitted) (applying New York law).

[37] *See Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985) (citations omitted) (noting that "courts have rejected the proposition that a fiduciary relationship can arise between parties to a business transaction"); *Oursler v. Women's Interart Ctr., Inc.*, 566 N.Y.S.2d 295, 297 (N.Y. App. Div. 1991) (citation omitted) ("A conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.").

[38] *See Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd.* (*In re BH S&B Holdings LLC*), 420 B.R. 112, 144 (Bankr. S.D.N.Y. 2009) (alteration in original) (citation omitted) (noting that "[p]arent corporations do not owe [wholly owned] subsidiaries fiduciary duties"), *aff'd*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011). "Although it is said in general terms that a parent corporation owes a fiduciary obligation to its subsidiaries, this obligation does not arise as such unless the subsidiary has minority stockholders." 420 B.R. at 144 (quoting *Trenwick Am. Lit. Trust v. Ernst & Young LLP*, 906 A.2d 168, 173 (Del. Ch. 2006)).

[39] *Petrello v. White*, 412 F. Supp. 2d 215, 232 (E.D.N.Y. 2006) (citing *Sec. Pac. Mortg. & Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 210 (2d Cir. 1992)), *aff'd*, 344 F. App'x 651 (2d Cir. 2009).

[40] *See Tekinsight.Com, Inc. v. Stylesite Mktg., Inc. (In re Stylesite Mktg., Inc.)*, 253 B.R. 503, 508 (Bankr. S.D.N.Y. 2000) (citation omitted) (noting that "a court may impose a constructive trust in the absence of a fiduciary relationship . . ."); *see also Pfohl Bros. Landfill Site Steering Comm. v. Allies Waste Sys., Inc.*, 255 F. Supp. 2d 134 (W.D.N.Y. 2003) (imposing constructive trust on dividends paid to parent corporation in connection with liquidation of subsidiary).

[41] *See Brand v. Brand*, 811 F.2d 74, 78 (2d Cir. 1987) (noting that "[t]he second element of a constructive trust is the making of a promise," and that such promise may be express or implied). The *Brand* court noted: "Indeed, silence itself 'in the presence of conditional assertions may constitute tacit consent and promise to comply with the conditions.'" *Id.* (citing *Farano v. Stephanelli*, 183 N.Y.S.2d 707, 712 (N.Y. App. Div. 1959)).

relationship the between plaintiff and the party holding the property.[42] Although a transfer is one of the enumerated elements for a constructive trust, courts have noted that this element is not absolutely essential to the imposition of a constructive trust.[43] "[U]njust enrichment[, however,] is the backbone of a constructive trust claim," and without a showing of unjust enrichment, courts are reluctant to impose a constructive trust.[44] Given that a constructive trust is designed to address a gap that could be remedied by a contract if one existed, a court also will not impose a constructive trust if an enforceable contract governs the parties' relationship.[45] Moreover, a court will impose a constructive trust only if the plaintiff demonstrates that the property is in the defendant's possession, and can be traced.[46]

While the burden is on the plaintiff to prove the necessity of a constructive trust, New York courts are divided as to the standard of proof. Some courts have concluded that a plaintiff must demonstrate the facts justifying the imposition of a constructive trust by clear

---

[42] *See Brand,* 811 F.2d at 78. Constructive trusts are often imposed in family disputes over property, because the law recognizes certain familial relationships as confidential (i.e., between spouses, parent/child, etc.), and property may be transferred among family members with promises or conditions attached. *See, e.g.*, *Farano*, 183 N.Y.S.2d at 712 (daughters purportedly refuse to return property to father upon request, as promised at the time of the conveyance). These types of cases have less application to the dispute here, where the property changed hands as part of a business transaction, and subject to a contract.

[43] *See Moak v. Raynor*, 814 N.Y.S.2d 289, 291 (N.Y. App. Div. 2006) (citation omitted) (noting that "courts have extended the transfer element to include instances where funds, time and effort were contributed in reliance on a promise to share in some interest in property, even though no transfer actually occurred"). This may be relevant to whether a constructive trust could be imposed with regard to AFI's receipt of TARP funds from the U.S. Treasury. No transfer from ResCap occurred; therefore, it would need to be shown that ResCap had a right to share in the TARP proceeds.

[44] *Petrello*, 412 F. Supp. 2d at 232; *see Superintendent of Ins. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 212 (2d Cir. 2004) (noting that "[t]he fourth element is the most important"); *LFD Operating, Inc. v. Ames Dep't Stores, Inc*. (*In re Ames Dep't Stores, Inc.*), 274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002) (citation omitted) ("Despite the elasticity of the doctrine, the prevention of unjust enrichment remains the key requirement for a constructive trust."), *aff'd sub nom.,* No. 02 Civ. 6271(SHS), 2004 WL 1948754 (S.D.N.Y. Sept. 1, 2004), *aff'd sub nom.*, 144 F. App'x 900 (2d Cir. 2005).

[45] *See In re First Cent. Fin. Corp.*, 377 F.3d at 213 (holding that valid and enforceable contract precludes constructive trust); *Petrello*, 412 F. Supp. 2d at 233 (holding that because there was a valid, enforceable contract, "as a matter of law, the Court cannot impose a constructive trust").

[46] *See United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) (citation omitted) ("It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of a wrongdoer."); *see also United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 416 (2d Cir. 2001).

and convincing evidence,[47] while other courts have held that a preponderance of the evidence will suffice.[48] A defendant may defeat a constructive trust claim by demonstrating the plaintiff's unclean hands.[49]

    *c. Statute Of Limitations*

Whatever substantive law the Bankruptcy Court applies to claims for unjust enrichment or constructive trust, New York's choice of law rules will decide the applicable statute of limitations.[50] When a nonresident sues in New York on a cause of action that accrued outside of New York, the New York "borrowing statute" requires the cause of action to be timely in New York *as well as* in the jurisdiction where the cause of action accrued.[51] As such, a New York court will apply the shorter of the two states' applicable statutes of limitations, if different, and New York's statute of limitations if they are the same.[52]

If the injury alleged is "purely economic," the cause of action is deemed to have accrued "where the plaintiff resides and sustain[ed] the economic impact of the loss."[53] Courts in the Second Circuit have "consistently held that a business entity's residence is determined by its

---

[47] *See, e.g., SEC v. Credit Bancorp, Ltd.*, 138 F. Supp. 2d 512, 532–33 (S.D.N.Y. 2001) (citations omitted) ("The claimant to a constructive trust must establish the facts giving rise to the trust by clear and convincing evidence."), *rev'd on other grounds*, 297 F.3d 127 (2d Cir. 2002); *LFD Operating Inc. v. Ames Dep't Stores, Inc.* (*In re Ames Dep't Stores, Inc.*), 274 B.R. 600, 626 (Bankr. S.D.N.Y. 2002) (citation omitted).

[48] *See, e.g., Beacher v. Estate of Beacher*, 756 F. Supp. 2d 254, 276 (E.D.N.Y. 2010) ("The proper burden of proof in this civil action seeking equitable relief is by 'a preponderance of the credible evidence.'").

[49] *See Barbieri v. Barbieri* (*In re Barbieri*), 380 B.R. 284, 296–99 (Bankr. E.D.N.Y. 2007) (noting that equitable considerations of waiver, laches, and unclean hands can preclude constructive trust). "Whenever a party seeks to invoke the court's equitable powers, the party's claims are subject to any applicable equitable defenses." *Id.* At 296 (citing *British Columbia Inv. Co. v. Fed. Deposit Ins. Corp.*, 420 F. Supp. 1217, 1222 (S.D. Cal. 1976)). In one case, a court regarded "'clean hands,' 'unclean hands' and '*in pari delicto*' as alternative ways of saying the same thing." *Adelphia Commc'ns Corp. v. Bank of Am.* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 47 n.75 (Bankr. S.D.N.Y. 2007).

[50] *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 30 (S.D.N.Y. 2002); *In re Adelphia*, 365 B.R. at 57 n.136 (citation omitted) ("Where, as here, the Court is exercising bankruptcy jurisdiction over state law claims under 28 U.S.C. § 1334(b), the court applies the choice of law rules of the forum state to determine the applicable statute of limitations.").

[51] *See* N.Y. C.P.L.R. § 202 ("An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.").

[52] *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 484 (N.Y. 1999); *see also In re Adelphia*, 365 B.R. at 57–58. In the context of a bankruptcy, the court may apply a foreign state's longer statute of limitations with regard to a prepetition claim that was filed in the foreign state. *Statek Corp. v. Dev. Specialists, Inc.* (*In re Coudert Bros. LLP*), 673 F.3d 180, 191 (2d Cir. 2012).

[53] *Global Fin.*, 715 N.E.2d at 485.

principal place of business" rather than the state of incorporation, under CLPR 202.[54] Residency is determined at the date that the action accrued, so the relevant inquiry for CPLR 202 purposes is where an entity's principal place of business was located when the claim accrued.[55] When a bankruptcy trustee sues as a representative of the estate of the bankrupt corporation, a New York court will look to the business entity's principal place of business as the place where the entity "sustained the economic impact of the loss."[56] In this instance, the applicable jurisdiction is Minnesota, the principal place of business of ResCap.[57]

New York's statute of limitations for unjust enrichment and constructive trust claims is six years.[58] "The statute of limitations for a claim of unjust enrichment begins to run

---

[54] *See Woori Bank v. Merrill Lynch*, No. 12 Civ. 3993(VM), 2013 WL 449912, at *3 (S.D.N.Y. Feb. 6, 2013) (citations omitted); *see also McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 727 F. Supp. 833, 834 (S.D.N.Y. 1989) ("[I]n order to determine residence under the borrowing statute, we need to determine where its principal office is, or 'where it conducts its day-to-day affairs'"); *Pereira v. Cogan*, No. 00 CIV. 619(RWS), 2001 WL 243537, at *18 (S.D.N.Y. Mar. 8, 2001) (finding that a corporation's state of residence, for purposes of the borrowing statute was New York, where it maintained its principal place of business); *THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422(KMW), 1998 WL 50202, at *5 (S.D.N.Y. Feb. 6, 1998) (citing *Shamrock Assocs. v. Sloane*, 738 F. Supp. 109, 113 (S.D.N.Y. 1990)) ("The principal place of business determines residency under CPLR § 202."); *Brinckerhoff v. JAC Holding Corp.*, 263 A.D.2d 352, 352–353 (N.Y. App. Div. 1999) (finding applicable statute of limitations for a derivative breach of fiduciary duty claim to be Georgia where the state of incorporation was Delaware, but the principal place of business was Georgia); *Oxbow Calcining USA Inc. v. Am. Indus. Partners*, 948 N.Y.S.2d 24, 31 (N.Y. App. Div. 2012).

[55] *See THC Holdings Corp. v. Chinn,* 1998 WL 50202, at *5 (S.D.N.Y. Feb. 06, 1998) (citing *Besser v. E.R. Squibb & Sons, Inc*., 146 A.D.2d 107 (N.Y. App. Div. 1989), *aff'd,* N.E.2d 171 (N.Y. 1990)); *Oxbow*, 948 N.Y.S.2d 24, 31 (N.Y. App. Div. 2012).

[56] *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 30 (S.D.N.Y. 2002); *see also Adelphia Commc'ns Corp. v. Bank of Am. N.A.* (*In re Adelphia Commc'ns Corp.*), 365 B.R. 24, 58 n.137 (Bankr. S.D.N.Y. 2007).

[57] In *Adelphia*, the court compared the statute of limitations of New York to the limitations period in Pennsylvania, where the Adelphia debtors resided. In coming to its decision, the court rejected the argument that it should compare New York's period to the limitations period in states where subsidiary debtors resided because there were "no allegations in the complaint that any Adelphia subsidiaries were under independent control, or directed by the [corporate owners] or anyone else in different states." *In re Adelphia Commn'cs Corp.*, 365 B.R. at 58 n.138.

[58] *See Golden Pac. Bancorp v. Fed. Deposit Ins. Corp*., 273 F.3d 509, 518 (2d Cir. 2001) (citations omitted) ("The statute of limitations in New York for claims of unjust enrichment . . . is generally six years."); *see also Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (citation omitted) ("New York law provides a six-year statute of limitations for breach of contract and constructive trust claims."); *Stewart v. Atwood*, 834 F. Supp. 2d 171, 182 (W.D.N.Y. 2012) (citation omitted) ("Since a cause of action for a constructive trust is one 'for which no limitation is specifically prescribed by law,' it is governed by New York's six-year statute of limitations.").

'upon the occurrence of the wrongful act giving rise to a duty of restitution.'"[59] If another state's statute of limitations was the same or longer, the Bankruptcy Court would apply the New York limitations period.

Like New York's, Minnesota's statute of limitation is six years,[60] beginning "when [the] damage occurs."[61] Because the statutes of limitations are the same in New York and Minnesota, the Bankruptcy Court will likely apply New York's six-year statute of limitations to ResCap's unjust enrichment or constructive trust claims.

### d.  Explanation Of Examiner's Conclusions

During the course of the Investigation, the Examiner and the Examiner's Professionals analyzed (1) the Ally Bank Transactions;[62] and (2) AFI's receipt of TARP funds, for any

---

[59] *Golden Pac.*, 273 F.3d at 520 (quoting *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 596 N.Y.S.2d 435, 437 (N.Y. App. Div. 1993)); *see Cohen v. Cohen*, 773 F. Supp. 2d 373, 396–97 (S.D.N.Y. 2011) (noting that unjust enrichment claims are not subject to "discovery rule"), *vacated on other grounds*, *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013). There are conflicting authorities in New York suggesting that the time begins to run with respect to a constructive trust: (1) when the wrongful act occurs; or (2) when the party seeking the imposition of a constructive trust "should have known" of the wrongful act. *Compare Two Clinton Square Corp. v. Friedler*, 459 N.Y.S.2d 179, 181 (N.Y. App. Div. 1983) ("The statute of limitations for the purpose of imposing a constructive trust is six years and the action accrues when the party seeking to impose the trust knows or should have known of the wrongful withholding."), *with Stewart v. Atwood*, 834 F. Supp. 2d 171, 182 (W.D.N.Y. 2012) (citation omitted) (holding that "accrual of a claim for constructive trust 'runs from the occurrence of the wrongful act or event which creates a duty of restitution.'"). *See also Auffermann v. Distl*, 867 N.Y.S.2d 527, 528 (N.Y. App. Div. 2008) (citation omitted) ("A cause of action to impose a constructive trust is governed by a six-year statute of limitations and begins to accrue 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'").

[60] *See Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988) ("The applicable time limit for bringing an action in unjust enrichment is six years."); *see also* Minn. Stat. Ann. § 541.05 (applying six-year statute of limitations (1) "upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed"; and (2) "to enforce a trust"). One Minnesota court also deemed equitable relief to be available in unique circumstances, where the plaintiff and defendant had opposing claims to funds being held by a third-party law firm and neither had made a claim during the time available under the statute of limitations. The court allowed the claim for constructive trust to proceed although an analogous claim would be time-barred. *Asha Enters. v. Peterson*, 1999 Minn. App. LEXIS 29, at *7–8 (Minn. Ct. App. Jan. 12, 1999) (unpublished).

[61] *Block*, 428 N.W.2d at 854 (citation omitted).

[62] *See* Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 59–60; *see also id.* at 45–52; Wilmington Trust, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 84–86 (alleging that AFI "hold's [ResCap's] interests in Ally Bank, including the proceeds of any sale of its mortgage assets, in constructive trust for the benefit of Residential Capital because [AFI] took such interests in violation of its promise not to engage in any material transaction with [ResCap] that would violate the Operating Agreement"). Wilmington Trust's proposed claim for fraudulent conveyance based on an assertion that AFI holds ResCap's "tax attributes under both the 2006 Tax Agreement and the 2009 Tax Amendment in constructive trust." *Id.* at 45, is referenced in Section V.D. (discussing the Tax Agreement and Tax Amendment), and is outside the scope of the present discussion.

evidence of unjust enrichment by examining whether AFI received a benefit that in "equity and good conscience" it should not be permitted to retain and for which constructive trusts should be imposed. The Examiner's conclusions follow.

### (1) Whether A Constructive Trust Would Be Imposed Against AFI In Connection With The Ally Bank Transactions

Wilmington Trust's proposed claim for a constructive trust to return ResCap's interest in the mortgage division of Ally Bank[63] is based on an assertion that "all or substantially all of [ResCap's] assets were stripped away in furtherance of a pre-arranged plan of self-preservation instituted by AFI in response to the financial and mortgage crises,"[64] resulting in AFI being unjustly enriched. Wilmington Trust alleges that the imposition of a constructive trust is proper because AFI and ResCap were "in a 'confidential relationship' at the time" of the Ally Bank Transactions "by virtue of [AFI's] domination and control such that [AFI] owed an express or implied duty to [ResCap] not to gain an unfair advantage from such domination and control."[65]

In support of its constructive trust claim, Wilmington Trust alleges that AFI "orchestrated" the Ally Bank Transactions, which, according to Wilmington Trust, were "below-market, non-arm's-length transactions that violated the Operating Agreement, and the Indenture."[66] Wilmington Trust further asserts that AFI was "responsible" for the transactions, and had "full knowledge that they would breach [ResCap's] Operating Agreement and the Indenture."[67]

The Ally Bank Transactions consist of the 2006 Bank Restructuring, the 2008 Bank Transaction, and the 2009 Bank Transaction. As noted in Section V.A, ResCap did not receive reasonably equivalent value in connection with the 2006 Bank Restructuring, which suggests that AFI may have received a benefit that in equity and good conscience it should not be entitled to retain. However, because constructive trust is designed to address a gap that could be remedied by a contract if one existed, a court will not impose a constructive trust if an enforceable contract

---

[63] Wilmington Trust proposes that the Trustee bring a claim for breach of contract related to the Operating Agreement. Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 46 n.11.

[64] *Id.* at 6; *see also id.* at 45.

[65] Wilmington Trust, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 85.

[66] Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 45.

[67] *Id.* (stating "the Noteholders are express third-party beneficiaries to enforce the Operating Agreement").

governs the parties' relationship.[68] Because the 2005 Operating Agreement[69] and the indenture governing the Unsecured Notes[70] controls the parties' relationship, there can be no constructive trust.

In regard to the 2008 Bank Transaction and the 2009 Bank Transaction, the Examiner has concluded that ResCap received reasonably equivalent value in exchange.[71] Accordingly, AFI did not receive anything in connection with those transaction that in equity and good conscience it should not retain. Moreover, as noted, Wilmington Trust's constructive trust claims are in essence claims for breach of contract for which damages is the proper remedy[72] and claims for unjust enrichment or constructive trust are not applicable.[73]

Finally, "[i]t is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace [its] own property into a product in the hands of the wrongdoer."[74] The "party asserting [the] existence of a constructive trust bears the burden [of proving] that a trust *res* exists."[75] Here, Wilmington Trust's vague references to ResCap's "Mortgage Division" does not adequately identify a discrete *res* which in equity and good conscience should be returned to ResCap.[75]

Accordingly, the Examiner concludes that it is unlikely that a claim for the imposition of a constructive trust in connection with the Ally Bank Transactions would prevail.

---

[68] *See Superintendent of Ins. v. Ochs* (*In re First Cent. Fin. Corp.*), 377 F.3d 209, 213 (2d Cir. 2004) (holding that valid and enforceable contract precludes constructive trust); *Petrello v. White*, 412 F. Supp. 2d 215, 233 (E.D.N.Y. 2006) (holding that because there was a valid, enforceable contract, "as a matter of law, the Court cannot impose a constructive trust").

[69] See Section VII.L for a discussion of possible breach of contract claims arising from the 2006 Bank Restructuring.

[70] See Section VIII for a discussion of possible breach of indenture claims.

[71] *See* Section V.A.

[72] If a breach of contract claim were possible, the appropriate remedy would be damages. *See In re First Central Fin. Corp.*, 377 F.3d at 212 (holding that valid and enforceable contract precludes constructive trust); *Petrello*, 412 F. Supp. 2d at 232 (holding that because there was a valid, enforceable contract, "as a matter of law, the Court cannot impose a constructive trust"). *See* Section VII.L.1 for a discussion of whether the 2006 Bank Restructuring resulted in a breach of the 2005 Operating Agreement. *See* Section V.A for a discussion of the 2008 and 2009 Bank Transactions.

[73] *See In re First Central Fin. Corp.*, 377 F.3d at 212 (holding that valid and enforceable contract precludes constructive trust).

[74] *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985) (citation omitted). Wilmington Trust suggests that Michigan law would apply to a TARP-related constructive trust claim. As discussed, the Bankruptcy Court may choose to apply the law of the forum (New York law) or the law where the property is located (Michigan law) to this constructive trust claim, as there is no substantive difference between the two states' laws.

[75] *Majutama v. Drexel Burnham Lambert Grp.* (*In re Drexel Burnham Lambert Grp., Inc.*), 142 B.R. 633, 637 (S.D.N.Y. 1992) (citation omitted).

[75] As discussed in Section V.A.2.e, the Examiner's Financial Advisors concluded there was no equity value remaining in the Mortgage Bank after December 1, 2009 that could have been attributed to ResCap's legacy equity interest in IB Finance.

*(2) Whether A Constructive Trust Would Be Imposed In Connection With AFI's Receipt and Retention Of TARP Funds*

The Troubled Asset Relief Program, also known as "TARP," was created by the Emergency Economic Stabilization Act of 2008 (the "EESA"), to allow the U.S. Treasury "to purchase, and to make and fund commitments to purchase, troubled assets from any financial institution,"[76] up to $700 billion in total. Ultimately, the U.S. Treasury invested $17.2 billion in AFI under TARP.[77]

Wilmington Trust alleges that the TARP funds AFI received rightfully belong to ResCap and should be held in constructive trust for the benefit of ResCap's estate.[78] According to Wilmington Trust, AFI's receipt of TARP funding likely was based on a showing of "overall financial weakness, lack of liquidity, and systemic risk to the banking system."[79] It argues that AFI relied on the stress of the mortgage business, including ResCap, to support its cause in obtaining TARP funds, and that ResCap was an intended beneficiary of the TARP funds although "in all cases, AFI kept the [TARP] installments for itself and provided only meager support to the Debtors."[80] Wilmington Trust proffers in support of its position a short and somewhat ambiguous e-mail exchange between Marano and Renzi as evidence that the first TARP installment of $5.7 billion "was supposed to go to" ResCap.[81] The bulk of the evidence, however, suggests that the U.S. Treasury was focused on the automotive industry and not on ResCap.

---

[76] 12 U.S.C. § 5211(a)(1). A "financial institution" is defined in the EESA to include, among other entities, any U.S. "bank, savings association, credit union, security broker or dealer, or insurance company." 12 U.S.C. § 5202(5).

[77] U.S. TREASURY, OFFICE OF FINANCIAL STABILITY, TROUBLED ASSET RELIEF PROGRAM, FOUR YEAR RETROSPECTIVE REPORT, AN UPDATE ON THE WIND-DOWN OF TARP, March 2013, at 17, http://www.treasury.gov/initiatives/financial-stability/reports/Documents/TARP%20Four%20Year%20Retrospective%20Report.pdf.

[78] Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 51; s*ee also* Wilmington Trust, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 89–90.

[79] Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 51; *see also* Wilmington Trust, National Association, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 89–90.

[80] Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 51; *see also* Wilmington Trust, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 89–90.

[81] Wilmington Trust Submission Paper, dated Mar. 8, 2013, at 51; s*ee also* Wilmington Trust, Motion for Standing to Pursue Claims and Complaint [Docket No. 3475] at 89–90.

*(a) ResCap Did Not Apply For TARP*

ResCap was interested in obtaining TARP funds and prepared a lengthy proposal to the U.S. Treasury, but never completed the process.[82] As discussed in Section III.H, Marano raised the possibility of TARP funding with the ResCap Board in October 2008 and indeed discussed a possible $5 billion injection under TARP with one or more U.S. Treasury officials. Initially, Marano was unaware that AFI was making a similar request.[83] Marano stopped pursuing TARP funds for ResCap when he learned that AFI and Cerberus did not view it as productive to have both ResCap and AFI pursuing TARP funding.[84]

*(b) Congressional Oversight Panel Report*

On March 10, 2010, the Congressional Oversight Panel issued a report entitled The Unique Treatment of GMAC Under the TARP, which criticized the U.S. Treasury's initial and subsequent decisions to support AFI.[85] The report notes that supporting or saving ResCap was not part of the rationale for providing TARP funds to AFI. The report states that "while ResCap was once a profitable venture for [AFI], and ResCap holds significant market shares in both the mortgage origination and mortgage servicing sectors, there has been no suggestion that the disruption of these businesses caused by a bankruptcy would have any direct systemic effect."[86] The report explains that the "Treasury has stated that . . . it regarded ResCap as 'marginal, at best' as a factor in the decision to support [AFI]."[87] Further, the report states that the U.S. Treasury "defends its assistance to [AFI] as crucial to supporting its extensive investments in GM and Chrysler, which, in turn, were made for a variety of reasons, including the fear of shock to the economy—perhaps rising to the level of systemic risk if the domestic

---

[82] *See* ResCap: Proposal for the TARP [CCM00012373].

[83] *See* e-mail from T. Marano to N. Kashkari (Oct. 22, 2008) ("As we discussed, I believe it will take an equity investment of approximately $5 billion dollars [sic] to recapitalize ResCap and provide stability for the next 24 months . . . . [A]n investment of $3 billion would provide needed capital through 2009 as we work to find additional partners to preserve our platform.") [CCM00012371]. According to Marano, however, he intentionally inflated the $5 billion estimate by as much as $3 billion, to account for anticipated "horse-trading." Int. of T. Marano, Nov. 26, 2012, at 206:8–23.

[84] *See, e.g., id* at 22:2–14 ("And so at one point [in the Fall of 2008], unbeknownst to me, [AFI], the parent, was asking for assistance from TARP. I was asking for assistance from TARP . . . . And then actually, I found out Cerberus was looking for assistance as well for the combined outfit. That was a very memorable moment when I found out all three of us were seeking assistance from some of the same people."); *id*. at 24:9–15 ("[I]t was logical that the parent would be the one that would be seeking support. And so I made sure the parent knew everything that I was aware of that we needed and what the challenges were so that the parent could seek the support."); *see also* Minutes of a Special Meeting of the Board of Residential Capital, LLC, Oct. 17, 2008, at RC40005885 ("Mr. Marano mentioned that he is working with Cerberus and with Morrison & Foerster on a term sheet to use in communicating to the Treasury Department for participation in the TARP program.") [RC40005652].

[85] Congressional Oversight Panel, March Oversight Report: The Unique Treatment of GMAC Under the TARP (Mar. 10, 2010), at 78–79, http://purl.access.gpo.gov/GPO/LPS123013; *see also* Congressional Oversight Panel, January Oversight Report: An Update on TARP Support for the Domestic Automotive Industry, (Jan. 13, 2011), at 71, http://purl.fdlp.gov/GPO/gpo5490.

[86] Congressional Oversight Panel, March Oversight Report, at 67.

[87] *Id.*

15

auto industry were to fail,"[88] and that AFI's "automotive finance operations . . . would have the most impact on the U.S. economy if [AFI]were to be allowed to fail."[89] There is no evidence that if AFI had not requested TARP funds, the U.S. Treasury would have instead given those funds to ResCap.

### (c) U.S. Treasury's Office Of Financial Stability Report

A March 2013 report from the U.S. Treasury's Office of Financial Stability underscores that the government's interest was in the automotive side of AFI's business, and not in saving ResCap.

> Treasury also made a $17.2 billion investment in [AFI] under TARP. The company has been the primary source of financing for GM's dealers and consumers for more than 90 years. Subsequently, after Treasury's investment, [AFI] became a primary source of financing for Chrysler dealers. Supporting [AFI] made it possible for GM and Chrysler dealers to continue providing car loans to their customers and secure financing to run their businesses during the financial crisis.[90]

The report also notes:

> As of December 31, 2012, Treasury had recovered approximately one-third ($5.8 billion) of its original $17.2 billion investment. Treasury expects to begin monetizing its remaining investment as the company completes two critical strategic initiatives: the Chapter 11 proceeding for its mortgage subsidiary, Residential Capital, LLC (ResCap) and the sale of its international auto finance operations. In November 2012, Ally announced that it had reached an agreement to sell its remaining international operations and that it expected total proceeds from those transactions of $9.2 billion.[91]

As discussed above, unjust enrichment is a fundamental prerequisite to the imposition of constructive trust. There is, however, no evidence that AFI was unjustly enriched by TARP at ResCap's expense. Indeed, it would not be against equity and good conscience to permit AFI to retain the funds.

---

[88] *Id.* at 66.

[89] *Id. at* 67.

[90] U.S. TREASURY, OFFICE OF FINANCIAL STABILITY, TROUBLED ASSET RELIEF PROGRAM, FOUR YEAR RETROSPECTIVE REPORT, AN UPDATE ON THE WIND-DOWN OF TARP, March 2013, at 17, http://www.treasury.gov/initiatives/financial-stability/reports/Documents/TARP%20Four%20Year%20Retrospective%20Report.pdf.

[91] *Id.*

The three TARP installments were paid to AFI directly by the U.S. Treasury and they were not conditioned upon AFI turning the funds over to ResCap. Further, the evidence reflects that AFI's receipt of TARP funds was a by-product of the U.S. government's interest in rescuing GM and Chrysler, not ResCap. ResCap has no identifiable interest in the TARP funds. Had AFI not applied for TARP funding, there is no evidence that the U.S. Treasury would have provided that funding to ResCap.

Based on the foregoing, the Examiner concludes that it is unlikely that a constructive trust claim premised on the TARP funding received by AFI would prevail.