# VII. REVIEW AND ANALYSIS OF ESTATE CAUSES OF ACTION IMPLICATED BY AFFILIATE TRANSACTIONS AND THE RELATIONSHIP AND COURSE OF DEALING AMONG RESCAP, AFI, ALLY BANK, AND CERBERUS

## J.  UNCONSCIONABLE CONTRACTS AND CONTRACTS OF ADHESION

The Examiner has reviewed the potential applicability of the doctrines of unconscionability and adhesion to contracts between the Debtors and AFI. After reviewing these doctrines, the Examiner determined that the defensive nature of the doctrines, which greatly limits their application, as well as other considerations discussed below, generally preclude the use of these doctrines in the Chapter 11 Cases. Accordingly, the Examiner focused on more traditional theories of recovery and remedies including breach of fiduciary duty, aiding and abetting breach of fiduciary duty, veil-piercing, and equitable subordination in his analysis as discussed in other sections of this Report.

*1. Choice Of Law*

In the United States Court of Appeals for the Second Circuit, the choice-of-law rules of the forum state will apply to claims premised on state law, unless state law would conflict with a federal policy or interest.[1] Thus, the Examiner believes that New York choice-of-law principles will apply to any claim of unconscionability or adhesion because of the apparent absence of any federal interest and the pendency of the Chapter 11 Cases in the Southern District of New York.

In New York, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved."[2] If the laws of the relevant jurisdictions are substantively the same, a court may avoid the choice of law analysis and apply the law of the forum.[3] Here, with respect to both

---

[1] *Bianco v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599, 601–02 (2d Cir. 2001) ("Because federal choice of law rules are a type of federal common law, which federal courts have only a narrow power to create, we decide that bankruptcy courts confronting state law claims that do not implicate federal policy concerns should apply the choice of law rules of the forum state.").

[2] *In re Allstate Ins. Co.*, 613 N.E. 2d 936, 937 (1993). An actual conflict is present "[w]here the applicable law from each jurisdiction provides different substantive rules." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).

[3] *See Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir. 1998) ("It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." (citing *J. Aron & Co. v. Chown*, 647 N.Y.S.2d 8 (N.Y. App. Div. 1996))); *Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*, No. 02 CV. 7666(LBS), 2005 WL 1123735, at *1 (S.D.N.Y. May 11, 2005).

unconscionability[4] and adhesion,[5] it appears that there is no material difference between the laws of potentially relevant jurisdictions, including New York, Delaware, Pennsylvania, Michigan, and Minnesota. Thus, the Bankruptcy Court would likely apply New York law.

   2. *Unconscionable Contracts And Contracts Of Adhesion*

The doctrines of unconscionability and adhesion largely overlap and are often pled concurrently, as they require a very similar two-part showing of wrongful inducement to enter

---

[4] All five jurisdictions in question employ what is essentially a two-part test with respect to unconscionability. *See, e.g.*, *Baron Assocs., LLC v. Garcia Group Enters.*, 946 N.Y.S.2d 611, 612 (N.Y. App. Div. 2012) ("As a general proposition, unconscionability . . . requires some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.") (citation omitted); *US Acquisition Prop. XIV, LLC v. Reserves Dev. Corp.*, Nos. S10C-06-034-ESB, 2012 WL 1415717, at *5 (Del. Super. Ct. Feb. 23, 2012) ("Contract terms are considered to be unconscionable when there is an absence of meaningful choice and the terms unreasonably favor one of the parties.") (citation omitted); *Delinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992) ("The test of unconscionability, as mandated by our supreme court, is twofold. First, for a contract or term to be unconscionable, the party signing the contract must have lacked a meaningful choice in accepting the challenged provision. Second, the challenged provision must 'unreasonably favor' the party asserting it.") (citation omitted); *Vittiglio v. Vittiglio*, 824 N.W.2d 591 (Mich. Ct. App. 2012) ("The examination of a contract for unconscionability involves inquiries for both procedural and substantive unconscionability . . . . Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the [agreement] . . . . Substantive unconscionability exists where the challenged term is not substantively reasonable . . . . The term must be more than merely disadvantageous; rather, 'the inequity of the term [must be] so extreme as to shock the conscience.'") (citations omitted); *Dorso Trailer Sales, Inc. v. American Body and Trailer, Inc.*, 372 N.W.2d 412, 415 (Minn. Ct. App. 1985) ("A finding of unconscionability requires that one contracting party show that it had no 'meaningful choice' but to accept the contract term as offered, and that the [contract term] was 'unreasonably favorable' to the other party.") (citation omitted).

[5] The test of whether a contract is adhesive is substantially similar in all five relevant jurisdictions. *See, e.g.*, Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997) (Under New York law "[a] court will find adhesion only when the party seeking to rescind the contract establishes that the other party used 'high pressure tactics' or 'deceptive language,' or that the contract is unconscionable.") (citation omitted); *HCR-Manor Care v. Fugee*, No. 07C-10-024 MMJ, 2010 WL 780020, at *5 (Del. Super. Ct. Jan. 26, 2010) ("An 'adhesion contract' is defined as a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms.'") (citations omitted); *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190 (Pa. 2010) ("An adhesion contract is a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'") (citation omitted); *Comerica Bank v. Gorelick*, No. 256773, 2006 WL 168020, at *3 (Mich. Ct. App. Jan. 24, 2006) ("In determining whether a contract is one of adhesion, this Court considers the relative bargaining power of the parties, their relative economic strength, and the alternative sources of supply.") (citation omitted); *Valspar Refinish, Inc. v. Gaylord's Inc.*, Nos. A05-1640 and A05-1867, 2006 WL 1529472, at *2 (Minn. Ct. App. 2006) ("Whether a contract is one of adhesion depends on factors such as the bargaining power of the parties, whether they negotiated the contract, the business sophistication of the parties, and the need for the subject of the agreement.") (citation omitted).

into a contract in addition to substantive unfairness of the contract.[6] For example, in discussing cases involving unconscionable contracts, the Restatement (Second) of Contracts addresses the overlap, stating that "[i]n many of the cases cited contracts of adhesion were involved. It is to be emphasized that a contract of adhesion is not unconscionable per se, and that all unconscionable contracts are not contracts of adhesion."[7] Generally speaking, unconscionability focuses more on the substance of the contract, while adhesion focuses more on the contract formation process.

### a. Unconscionable Contracts

Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be un-enforceable according to its literal terms."[8] "Generally, there must be a showing that such a contract is both procedurally and [substantively] unconscionable."[9] First, there must be some showing of an absence of meaningful choice on the part of one of the parties,[10] i.e., a showing that the negotiation process was unfair. Second, the challenged provision must be unreasonably favorable to the other party.[11] "[W]hether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect."[12]

### b. Contracts Of Adhesion

A contract is considered to be adhesive when the party seeking to enforce the contract has used "high pressure tactics" or "deceptive language" in the contract and there is "inequality of bargaining power" between the parties.[13] "Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to

---

[6] *See*, *e.g.*, *Klos*, 133 F.3d at 168 (Under New York law "[a] court will find adhesion only when the party seeking to rescind the contract establishes that the other party used 'high pressure tactics' or 'deceptive language,' or that the contract is unconscionable.") (citation omitted); *Sablosky v. Edward S. Gordon Co., Inc.*, 535 N.E.2d 643, 644-45 (N.Y. 1989) ("Plaintiff contends that the arbitration clause is invalid…and that it should not be given effect . . . because the . . . agreement constitutes a contract of adhesion and is unconscionable.")

[7] Restatement (Second) of Contracts § 208 cmt. a (1981).

[8] *Ragone v. Atl. Video at the Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)).

[9] *Id.*

[10] *Baron Assocs., LLC v. Garcia Group Enters.,* 946 N.Y.S.2d 611, 612 (N.Y. App. Div. 2012) (citation omitted).

[11] *Id.*, 612.

[12] *Sablosky*, 535 N.E.2d at 647.

[13] *Id.*

unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change any of the contract's terms."[14] "To be considered an unenforceable contract of adhesion, the contract must also inflict substantive unfairness on the weaker party, because its terms are not within the reasonable expectations of that party, or because its terms are unduly oppressive, unconscionable, or contrary to public policy."[15] The doctrine may not be invoked to trump the clear language of an agreement unless there is a disturbing showing of unfairness, undue oppression, or unconscionability.[16]

   *c. Remedies*

Under New York law, unconscionability[17] and adhesion[18] are affirmative defenses to the enforcement of a contract. A court that determines a contract is unconscionable is not authorized to award damages; rather, the court is given the power to refuse to enforce the agreement in its entirety, to delete the unconscionable clause and enforce the remainder of the contract, or to limit the unconscionable clause's application so that an unconscionable result will be avoided.[19] The District Court for the Eastern District of New York recently discussed remedies available when a contract is found to be unconscionable. The court quoted the United States Court of Appeals for the Eleventh Circuit, which stated that "[t]he equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages. . . . [N]either the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse *enforcement* of the unconscionable section or sections of the contract so as to avoid an unconscionable result."[20] This statement of the doctrine limits its use to instances such as these. Similarly, if a court finds that a contract is a contract of adhesion, "the court's only remedy is non-enforcement, not reformation."[21]

---

[14] *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 831 (S.D.N.Y. 1996) (citation omitted).

[15] *Id*.

[16] *Id.*

[17] *Ng v. HSBC Mortgage Corp.*, (No. 07-CV-5434 (RRM)(VVP), 2011 WL 3511296, at *8 (E.D.N.Y. 2011) (citation omitted).

[18] *See, e.g.*, *N. Am. Specialty Ins. Co. v. Schuler*, 737 N.Y.S.2d 741, 742 (N.Y. App. Div. 2002).

[19] *See, e.g., Avildsen v. Prystay*, 574 N.Y.S.2d 535, 537 (N.Y. App. Div. 1991) ("The doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery. Under both the UCC and common law, a court is empowered to do no more than refuse enforcement of the unconscionable contract or clause.") (citation omitted); RESTATEMENT (SECOND) OF CONTRACTS § 208 (1981).

[20] *Ng v. HSBC Mortgage Corp.*, (No. 07-CV-5434 (RRM)(VVP), 2011 WL 3511296, at *8 (E.D.N.Y. 2011) (quoting *Cowin Equip. Co., Inc. v. Gen. Motors Corp.,* 734 F.2d 1581 (11th Cir. 1984)).

[21] *See Aviall*, 913 F.Supp., at 831–832 (citation omitted).

*3. Contracts Between Parent And Its Wholly Owned Subsidiary*

There does not appear to be any case law directly on point with respect to the issue of whether an insolvent wholly owned subsidiary may seek to render unenforceable contracts with its parent on the basis of unconscionability or adhesion. Instead, it seems that plaintiffs have favored more traditional theories in such circumstances, such as breach of fiduciary duty, likely because of available remedies. While it is unclear whether it is possible to render a parent-subsidiary contract unenforceable on the basis of unconscionability or adhesion, as discussed below, it may be inferred from case law that the nature of the parent-subsidiary relationship—that a wholly-owned subsidiary exists solely for the benefit of its parent[22]— could preclude such an action.[23]

The case most instructive with respect to this issue is *Aviall*. In *Aviall*, a subsidiary corporation brought suit against its former parent, seeking to disqualify an accounting firm as arbitrator of a dispute over the allocation of pension-related items set forth in a distribution agreement governing the spin-off of the subsidiary. In its attempt to disqualify the proposed arbitrator, the subsidiary argued that the arbitration clause in the distribution agreement could not be enforced because the agreement was one of adhesion.[24] In support of this argument, the subsidiary asserted that the parent "dictated the terms of the distribution agreement, and that there was no negotiation at all."[25] Specifically, the subsidiary complained that the parent did not provide it with independent counsel, and that the parent's counsel drafted the entire agreement and that an officer of the parent signed the agreement on the subsidiary's behalf.[26]

While finding that these allegations were generally true, the court dismissed the subsidiary's claim of adhesion. The court reasoned that the procedure that the subsidiary "decrie[d] as oppressive . . . [was] entirely consistent with traditional principles of corporate governance."[27] The court stated that when one company wholly owns another, the directors of the parent and the subsidiary are obligated to manage the affairs of the subsidiary in the best interests only of the parent and its shareholders.[28] Because the officers and directors of the parent do not owe allegiance to the wholly owned subsidiary, the court found that it was reasonable to conclude that the parent corporation itself was under no obligation to provide the subsidiary with independent representation during the spin-off process.[29] It may be inferred

---

[22] *See, e.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated to manage the affairs of the subsidiary in the best interests of the parent and its shareholders.") (citations omitted).

[23] *See generally Aviall*, 913 F.Supp. at 832 (citation omitted).

[24] *See id.* at 831.

[25] *See id.* at 832.

[26] *See id.*

[27] *See id.*

[28] *See id.*

[29] *See id.*

that the court found that because no fiduciary duties exists between a parent and its solvent, wholly owned subsidiary, i.e. that the parent is not accountable to the subsidiary, there cannot be any oppression or overwhelming of the subsidiary, which is required to demonstrate that the contract in question was unconscionable or one of adhesion. While this decision is clear in the case of a solvent wholly owned subsidiary, the question of whether the insolvency of the subsidiary alters the analysis remains.

Arguably, if the parent corporation did not owe any duties to the wholly owned subsidiary, even in the case of the insolvency of such subsidiary, claims of unconscionability or adhesion would also be futile in that circumstance. Whether a parent owes duties in such an instance is unclear,[30] and any extension of the *Aviall* court's analysis is speculative at best.

*4. Conclusion*

The Examiner has determined that further consideration of the doctrines of unconscionability and adhesion would be unproductive for a number of reasons. First, the doctrines are affirmative defenses and are generally only used to defeat enforcement of a contract rather than to seek an affirmative recovery. Therefore they would be of limited utility. Second, based on the nature of the parent-subsidiary relationship, it is unlikely that the claims would prevail. Finally, in the situation where a parent and an insolvent, wholly owned subsidiary enter into an unfair agreement at the behest of the parent, there are alternative, more effective means of redress. Creditors of a debtor subsidiary may bring claims for breach of fiduciary duty against the directors and officers of the subsidiary, in addition to claims against the parent for aiding and abetting breach of fiduciary duty.[31] Other avenues of recovery may be available, including under fraudulent conveyance law, piercing the corporate veil and equitable subordination. All of these remedies are discussed elsewhere in the Report.

---

[30] *See ASARCO LLC v. Ams. Mining Corp.,* 396 B.R. 278, 415-16 (S.D.Tex. 2008) (denying a claim by a wholly owned subsidiary against the parent corporation for a breach of fiduciary duty). *But see The Official Comm.of Unsecured Creditors of RSL COM Primecall, Inc., v. Beckoff (In re RSL COM Primecall, Inc.),* Nos. 01–11457 (ALG), 01–11458(ALG), 01–11459(ALG), 01–11460(ALG), 01–11461(ALG), 01–11462(ALG), 01–11463(ALG), 01–11464(ALG), 01–11465(ALG), 01–11466(ALG), 01–11467(ALG), 01–11468(ALG), 01–11469(ALG), and ADV. 03–2176(ALG), 2003 WL 22989669, at *14 (Bankr. S.D.N.Y. December 11, 2003) ("[D]irectors of the parent cannot be compelled at such time to attend only to the interests of the subsidiary, especially where (as here) *both* were insolvent.").

[31] *See ASARCO,* 396 B.R. at 415–16.