**Hearing Date: May 23, 2013 at 10:00 a.m. (ET)**
**Reply Deadline: May 20, 2013 at 5:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie Levitt

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DEBTORS' OPPOSITION TO MOTION**
**TO PRECLUDE THE EXPERT TESTIMONY OF JEFFREY A. LIPPS**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................2

I. MR. LIPPS'S OPINION DOES NOT ADDRESS THE ULTIMATE LEGAL ISSUES. ...................................................................................................................2

II. MR. LIPPS'S METHODOLOGY IN EVALUATING THE RMBS SETTLEMENT IS COMMONLY USED BY ATTORNEYS ACROSS THE COUNTRY. ................................................................................................................4

III. MR. LIPPS'S *DE MINIMIS* WORK IN CONNECTION WITH THE RMBS SETTLEMENT IS NO DIFFERENT THAN THE WORK DONE BY MOST EXPERT WITNESSES. ............................................................................................6

IV. MR. LIPPS'S MAY 24 DECLARATION IS RELEVANT TO APPROVAL OF THE SETTLEMENT. ................................................................................................8

V. MR. LIPPS'S TESTIMONY IS NOT AN "END RUN" AROUND THE COURT'S APRIL 12, 2013 PRECLUSION ORDER. ...............................................9

CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Figueroa v. Boston Scientific Corp.*,
   254 F. Supp. 2d 361 (S.D.N.Y. 2003) ................................................................................ 4

*In re Ambac Financial Group, Inc.*,
   457 B.R. 299 (Bankr. S.D.N.Y. 2011) ............................................................................... 3

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
   No. 1:00-1898, MDL 1358 (SAS), 2008 U.S. Dist. LEXIS 37331 (S.D.N.Y. May 7,
   2008) ............................................................................................................................. 4, 5

*In re MF Global, Inc.*,
   No. 11-2790 (MG), 2012 Bankr. LEXIS 3701 (Bankr. S.D.N.Y. Aug. 10, 2012) ........... *passim*

*In re Purofied Down Products Corp.*,
   150 B.R. 519 (S.D.N.Y. 1993) ...................................................................................... 2, 3

*In re Residential Capital, LLC*,
   480 B.R. 529 (S.D.N.Y. Oct. 12, 2012) ............................................................................ 8

*In re Residential Capital, LLC*,
   No. 12-12020, 2013 Bankr. LEXIS 1507 (S.D.N.Y. April 12, 2013) ............................... 9

*Joseph S. v. Hogan*,
   No. 06 Civ. 1042, 2011 U.S. Dist. LEXIS 76762 (S.D.N.Y. July 15, 2011) .................... 4

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003) .......................................................................................... 7

*Norwest Financial, Inc. v. Fernandez*,
   86 F. Supp. 2d 212 (S.D.N.Y. 2000) ................................................................................. 7

*Victoria's Secret Stores Brand Management v. Sexy Hair Concepts*,
   No. 07 Civ. 5804, 2009 U.S. Dist. LEXIS 30458 (S.D.N.Y. April 8, 2009) .................... 4

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ................................................................................................................ 3, 4

Fed. R. Bankr. P. 9019 ........................................................................................................... 5

## INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee") seeks to exclude the testimony it previously lauded for "address[ing] the legal and factual merits of the Trusts' claims…in a detailed and sophisticated manner." (Committee Objection to 9019 Motion ("Comm. Obj.") at 4 [Docket No. 2825].)[1] In its Objection, the Committee represented to the Court that, while it would quibble about the inferences to be drawn from Mr. Lipps's report, it had "little quarrel with the soundness of many of Mr. Lipps's legal and factual conclusions." (*Id.* at 23.) Now, on the eve of trial, the Committee has flip-flopped and seeks to preclude Mr. Lipps's testimony from being considered by the Court. The Committee's motion should be denied.

*First*, the Committee's motion improperly characterizes Mr. Lipps's testimony as opining on the "ultimate legal conclusion" before the Court. (*Id.* at 6.) But Mr. Lipps does not purport to opine on the ultimate issue before the Court. He instead explains the complex claims and defenses that were covered by the proposed RMBS settlement.

*Second*, the Committee ignores the line of bankruptcy cases allowing reliance on substantially similar testimony in evaluating the merits of a 9019 settlement. Indeed, this Court has previously relied on similar opinions in evaluating 9019 settlements. *See, e.g.*, *In re MF Global, Inc.*, No. 11-2790 (MG), 2012 Bankr. LEXIS 3701, at *17 (Bankr. S.D.N.Y. Aug. 10, 2012) (Glenn, J.) ("[C]ourts may give weight to the opinion of bankruptcy counsel supporting the settlement.")

---

[1] Financial Guaranty Insurance Company [Docket No. 3618] and MBIA Insurance Corporation [Docket No. 3629] joined the Committee's motion *in limine* [Docket No. 3612] seeking the exclusion of Mr. Lipps's testimony. Neither FGIC nor MBIA make any additional arguments in their joinders, which should be overruled for the same reasons as the Committee's motion discussed herein.

1

*Third*, the Committee's assault on Mr. Lipps's methodology in analyzing the trusts' potential claims against the Debtors misses its mark.  In forming his opinions, Mr. Lipps surveyed the case law and applied it to the facts; in other words, he did the type of work other professionals in his field do every day.  His analysis employed the requisite intellectual rigor normally employed by experienced lawyers evaluating settlements.

*Fourth*, the Committee falsely asserts that Mr. Lipps was impermissibly involved in representing the Debtors in connection with the RMBS settlement.  But Mr. Lipps played no role in negotiating the settlement or advising ResCap's directors.  In any event, his limited involvement after the settlement was finalized goes to the weight, not the admissibility, of his testimony.  The Committee can explore this topic on cross-examination.

*Finally*, the April 12, 2013 Preclusion Order does not block Mr. Lipps's testimony.  The Court already rejected the Committee's attempt to include Mr. Lipps's expert testimony in the ambit of that order, and the Committee has not provided any basis for reversing that decision.

## ARGUMENT

**I.     MR. LIPPS'S OPINION DOES NOT ADDRESS THE ULTIMATE LEGAL ISSUES.**

Mr. Lipps's opinion does not address the legal issue this Court must decide: whether the RMBS settlement is fair and in the best interests of the estate using the factors enumerated by the Second Circuit in *Iridium*.  Instead, he opines on (a) the legal uncertainty regarding the claims, (b) the expense of resolving the claims and defenses, and (c) whether, based on his experience litigating similar claims, the RMBS settlement represents a fair and reasonable compromise in light of those claims and defenses.

Opinions of bankruptcy counsel are regularly admitted in the Second Circuit when evaluating whether a settlement is fair and equitable under *Iridium*.  *See, e.g.*, *In re MF Global,*

2

*Inc.*, 2012 Bankr. LEXIS 3701, at *17; *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993) ("informed by the opinion of the parties, the Trustee, and counsel and its familiarity with the litigation, the bankruptcy court must make a considered, independent judgment as to whether a settlement is fair and equitable and 'in the best interests of the estate.'"); *In re Ambac Fin. Group, Inc.*, 457 B.R. 299, 306 (Bankr. S.D.N.Y. 2011), *aff'd*, *Police & Fire Ret. Sys. of the City v. Ambac Fin. Group, Inc.*, Nos. 10-B-15973 (SCC), 11 Civ. 7529 (NRB), 2011 U.S. Dist. LEXIS 149610, at *18-19 (S.D.N.Y. Dec. 28, 2011) (9019 settlement approved after consideration of declaration and testimony of debtors' general counsel on matters including discovery expenses and litigation burdens that would arise absent settlement), *aff'd*, 2012 U.S. App. LEXIS 14229 (2d Cir. July 12, 2012).

In *MF Global*, this Court relied on the declaration of bankruptcy counsel in connection with a 9019 motion. The *MF Global* declaration contained statements addressing the *Iridium* litigation factors and, in approving the settlement, the Court cited that declaration when holding litigation "would be time consuming and expensive as these issues present novel issues of law and fact." *In re MF Global, Inc.*, 2012 Bankr. LEXIS 3701, at *20. Mr. Lipps's testimony addresses similar issues.

The Committee fails to acknowledge, much less distinguish, *MF Global*. Instead, the Committee relies on cases outside the bankruptcy context to support its argument that legal experts are *per se* prohibited. But these cases do not address the well-established principle that a court, in considering a motion under Rule 9019, "may credit and consider the opinion of the Trustee **and counsel** that the settlement is fair and equitable." *In re Purofied Down Prods. Corp.*, 150 B.R. at 522 (emphasis added).

3

Mr. Lipps's testimony does not address the ultimate legal issue under *Iridium*, and courts in the Second Circuit regularly permit testimony from counsel on the *Iridium* factors. The Court should reject the Committee's motion to exclude Mr. Lipps under Federal Rule of Evidence 702 because he merely opines on the uncertainty and expense of the claims, and whether the settlement is within a reasonable range.

II.   **MR. LIPPS'S METHODOLOGY IN EVALUATING THE RMBS SETTLEMENT IS COMMONLY USED BY ATTORNEYS ACROSS THE COUNTRY.**

The Second Circuit follows the long-standing principle that expert witnesses may "draw a conclusion from a set of observations based on extensive and specialized experience." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 (SAS), M21-88, 2008 U.S. Dist. LEXIS 37331, at *22 (S.D.N.Y. May 7, 2008).[2] Indeed, an expert's testimony is deemed reliable as long as the expert applies his or her experience to the facts in a reasonable manner and the opinion is sufficiently based on the facts. *See id*. at *23. There is no requirement that an expert use or follow a particular methodology or quantitative analysis to render his testimony reliable, or provide the court with a plethora of numbers. *See id.* at *28-31; *see also Figueroa v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 368 (S.D.N.Y. 2003) ("Even assuming [the expert] had no data to support his opinions, whether from his own testing or from others' data in the medical literature, such a contention is not fatal to the admissibility of his testimony."). Rather, an expert may "properly rely on his experience to testify about all matters

---

[2] The standard for admissibility of expert testimony is somewhat relaxed in bench trials. In *Joseph S. v. Hogan*, No. 06 Civ. 1042, 2011 U.S. Dist. LEXIS 76762, at *8 (S.D.N.Y. July 15, 2011), the court noted that the moving party was "essentially asking me to gate-keep expert testimony from myself. Of course if the expert testimony amounts to pure speculation, it would have no probative value and would not assist the fact finder, be it the Court or the jury. But short of that, expert testimony should be admitted so that the Court could have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions." *Id.* at *8; *see also Victoria's Secret Stores Brand Mgmt. v. Sexy Hair Concepts*, No. 07 Civ. 5804, 2009 U.S. Dist. LEXIS 30458, at *18 n.3 (S.D.N.Y. April 8, 2009) ("[W]here a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence . . . .").

4

within his experience," if the expert "do[es] so with the same degree of intellectual rigor as a professional in his field." *Id*.

The Committee inaccurately portrays the *Daubert* standard as a test that can be met only by scientific or quantitative analysis. Mr. Lipps's methodology easily meets the *Daubert* standard. As explained in his deposition and in his declarations, Mr. Lipps considered a variety of data points in forming his conclusion, including the Debtors' repurchase rates, allegations in RMBS complaints, and comparable RMBS settlements. (*See* Ex. 1, November. 19, 2012 Deposition of Jeffrey Lipps ("Lipps Dep.") at 68:10-17, 75:21-77:3, 111:6-113:21.)[3] He relied on his 30-plus years of experience in complex commercial litigation and did what lawyers do every day: survey case law and apply that law to a set of facts. (*See id*. at 29:18-30:10.) He reviewed settlements that resolved substantially similar claims, and he considered the allegations that have been lodged against the Debtors in pre-bankruptcy complaints. (*See id*. at 111:6-113:21.) The Committee cannot reasonably characterize such a "detailed and sophisticated" analysis as *ipse dixit*. Moreover, his analysis can be (and likely was) replicated by the Committee in analyzing the merits of the RMBS settlement. The mere fact that the Committee reached a different result using the same procedure is not a basis for excluding Mr. Lipps's testimony.[4]

The Committee does not contest that professionals in Mr. Lipps's field (*i.e.*, attorneys) regularly employ similar techniques to evaluate the merits of potential settlements. Instead, the Committee complains Mr. Lipps did not assign probabilities and dollar values to the various

---

[3] "Ex. ___" refers to the exhibits attached to the Declaration of LaShann DeArcy dated May 14, 2013, filed concurrently with this motion.

[4] In fact, one of the Committee's own expert witnesses relied on Mr. Lipps's declarations to inform him of the relevant legal issues for put back exposure. *See* Comm. Obj. at 29 ("Professor Cornell then applied several different legal rules based on issues identified by Mr. Lipps and Committee counsel, concluding that the application of available defenses could have a large impact on the Debtors' put back exposure in the event the claims were actually litigated.").

5

potential outcomes in litigation. But this criticism rests on the faulty premise that an expert must employ quantitative methods under the *Daubert* standard. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 37331, at *28-31.

Under well-settled law, Mr. Lipps was only required to engage in the "same degree of intellectual rigor as a professional in his field." *See id*. at *28. As explained above, Mr. Lipps has easily met that standard. The Committee does not even try to refute Mr. Lipps's claim that the law governing the sale of mortgage-backed securities is unsettled and fraught with uncertainty and that any attempt to assign probabilities to potential outcomes in RMBS cases would be highly speculative. (*See* Ex. 1, Lipps Dep. at 33:15-34:4.)

### III. MR. LIPPS'S *DE MINIMIS* WORK IN CONNECTION WITH THE RMBS SETTLEMENT IS NO DIFFERENT THAN THE WORK DONE BY MOST EXPERT WITNESSES.

Mr. Lipps testified in his deposition that neither he nor his firm was "involved in any settlement discussions with Kathy Patrick [or] involved in presenting to the board or anyone any information regarding the [RMBS] settlement." (Ex.1, Lipps Dep. at 95:15-19.) And he testified under oath, that he "didn't give advice to anybody about the settlement." (*Id.* at 98:3-4.) Mr. Lipps's testimony on this point was corroborated by Thomas Marano, ResCap's former chief executive officer and a member of ResCap's board who attended the board meeting where the RMBS settlement was approved. (*See* Ex. 2, November 12, 2012 Deposition of Thomas Marano at 185:12-:189-16.)

The Committee nevertheless insists, based on a few cherry-picked time entries, that Mr. Lipps advised the Debtors on the RMBS settlement and played a pivotal role in developing the Debtors' plan for obtaining approval of the RMBS settlement. All that those entries show is that Mr. Lipps was told about developments in the case (like any other expert) and responded to

6

questions from Morrison & Foerster, after the settlement was reached and approved by ResCap's directors. In total, these out-of-context entries amount to a little more than ten hours of his time.[5]

In any event, Mr. Lipps's involvement does not disqualify him from testifying. Any alleged bias of an expert witness goes to the weight of the expert's testimony, not the admissibility. *See, e.g.*, *Norwest Fin., Inc. v. Fernandez*, 86 F. Supp. 2d 212, 228 n.15 (S.D.N.Y. 2000) ("An expert witness's bias goes to the weight, not the admissibility, of the testimony, and should be brought out on cross-examination.") (quoting 4 Weinstein's *Federal Evidence* § 702.06[8], at 702-59 (2d ed. 1999)).

The Committee's reliance on *Lippe v. Bairnco Corp.*, 288 B.R. 678 (S.D.N.Y. 2003) is misplaced. In *Lippe*, the expert's opinion was excluded because the expert "develop[ed] [an] argument as counsel and then opin[ed] on it as an expert." *Id.* at 684. In contrast, bankruptcy courts routinely consider the opinions of bankruptcy counsel in analyzing settlements under the *Iridium* factors. *See In re MF Global, Inc.*, 2012 Bankr. LEXIS 3701, at *17. In *MF Global*, the attorney who submitted the declaration cited by this Court played a much more central role in settlement negotiations, and his name appeared on the signature block of the motion approving settlement. (*See* Ex. 3, Motion for Approval of an Agreement Providing for the Return of MFGI Property, Extinguishment of Duplicate Claims Filed with CME Group Inc., and Allocation of MFGI Property to Customers of the MFGI Estate*,* Docket No. 2029, Case No. 11-2790 (MG) SIPA (Bankr. S.D.N.Y. June 14, 2012).) Unlike the attorney in *MF Global*, Mr. Lipps did not play an advocacy role in connection with the RMBS settlement. As noted above, Mr. Lipps played no role in the negotiations relating to the RMBS settlement, he did not advise the Debtors

---

[5] Between May 2012 and March 2013 (an 11-month period), Mr. Lipps billed 197.3 hours ($72,111) on the RMBS settlement, the overwhelming majority of which related to preparation of his expert declarations and for his expert deposition. (*See* First Interim Application of Carpenter Lipps & Leland LLP for Compensation and Reimbursement, at Ex. A [Docket 1889].)

in connection with the settlement, and he has not signed any of the Debtors' motions or briefs submitted in support of the settlement.

## IV. MR. LIPPS'S MAY 24 DECLARATION IS RELEVANT TO APPROVAL OF THE SETTLEMENT.

The Committee argues that Mr. Lipps's May 24, 2012 Declaration, which discusses the facts relating to the burdens associated with RMBS litigation, "has no relevance to the approval of the 9019 Motion" and thus fails to meet *Daubert*'s requirement that an expert's specialized knowledge "fit" the facts of the case. *See* Comm. Mot. at 14. This misunderstands the import of the May 24 declaration.

Mr. Lipps's May 24 declaration describes the Debtors' litigation burden and thus provides factual background to assist the Court in assessing the second *Iridium* factor—the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay. It is therefore directly relevant to the "approval of the 9019 Motion." (*Id*. at 14.) But the Committee insists the May 24 declaration cannot be relevant because it "does not discuss the claims being settled." (*Id.*) The Committee supports this argument, however, by mischaracterizing the substance of the declaration, claiming that "the discovery burdens discussed in the Declaration relate entirely to the litigation of claims against non-Debtors outside of bankruptcy." (*Id.*)

The Debtors were named as defendants in all of the cases discussed in Mr. Lipps's declaration. (*See* May 24, 2012 Lipps Declaration at ¶¶ 7-11 [Docket No. 320-9].) And the May 24 declaration discusses two test cases in detail, *MBIA Insurance Corp. v. Residential Funding Company, LLC* and *MBIA Insurance Corp. v. GMAC Mortgage, LLC*. (*See id.* at ¶¶ 26-31.) These cases involve the assertion of representation and warranty claims with respect to trusts

8

covered by the settlement and provide the best evidence concerning the burdens of litigating claims covered by the RMBS settlement.[6]

## V. MR. LIPPS'S TESTIMONY IS NOT AN "END RUN" AROUND THE COURT'S APRIL 12, 2013 PRECLUSION ORDER.

The Committee's final argument is that Mr. Lipps' testimony is merely an "end run" around the Court's April 12, 2013 Preclusion Order because his testimony "places in the record the substance of legal advice received by the Debtors concerning RMBS litigation." (Comm. Mot. at 19.) The Committee mischaracterizes the impact of the Preclusion Order as well as the substance of Mr. Lipps's testimony.

The Committee already sought to exclude Mr. Lipps's testimony on precisely the same grounds—that he had provided the same advice to the ResCap board.[7] (*See* February 13, 2013 Motion of Official Committee of Unsecured Creditors to Preclude Debtors from Offering Evidence of Their Reliance on Counsel at ¶¶ 6, 15 [Docket No. 2906].) The Court was unreceptive to the Committee's argument, finding that Mr. Lipps's testimony "is not excludable based on the rulings discussed above concerning legal advice given to the Board, unless of course Lipps attempts to testify to any legal advice he himself gave to the Debtors' officers or Board members." *In re Residential Capital, LLC*, No. 12-12020, 2013 Bankr. LEXIS 1507, at *25 (S.D.N.Y. April 12, 2013).

---

[6] The Committee also ignores the Court's own reference to the May 24 declaration. In its hearing on a motion to lift the automatic stay, relying on the declaration, the Court found that "[t]he debtors have provided specific examples of cases that involved a small number of securitizations, but still produced millions of pages in discovery and upwards of eighty days' worth of depositions from the debtors' current and former employees," (*see* Ex. 4, July 10, 2012 Hr'g Tr. at 137:11-15), and that "[t]he debtors have adequately shown the negative impact of continued litigation on the debtors' key employees." (*Id*. at 137:22-24; *see also In re Residential Capital, LLC*, 480 B.R. 529, *34 (S.D.N.Y. Oct. 12, 2012) ("During the July 10, 2012 evidentiary hearing on the motion, the Court noted the well-documented burden and expense of discovery, particularly at this stage of the bankruptcy cases.").)

[7] During oral argument, it appeared the Committee had abandoned its efforts to include Mr. Lipps' testimony within the scope of its previous motion *in limine*. See Ex. 5, April 11, 2012 Hr'g Tr. at 14 ("The Court: [Y]ou seem to be arguing that Mr. Lipps' expert testimony as to the strength and weaknesses of representation in warranty claims should be precluded on this issue of attorney-client privilege." Mr. Kaufman: No, Your Honor.").

The Preclusion Order thus would only prohibit Mr. Lipps from testifying regarding legal advice he actually gave to the Debtors' officers and board members. As noted above, Mr. Lipps gave no such legal advice. The Committee has not identified a single statement in Mr. Lipps's previous declarations that shows otherwise. Indeed, the evidence is to the contrary. (*See, e.g.*, Ex. 1, Lipps Dep. at 97:23-25 ("As I told you, we weren't involved in negotiations [of the RMBS settlement]. We were not involved in any presentations to the board."); *id.* at 98:3-4 ("I didn't give advice to anybody about the [RMBS] settlement.").)[8]

## CONCLUSION

The Committee previously embraced many of the conclusions of Mr. Lipps's declarations. But after coming to terms with the import of his "detailed and sophisticated" analysis, the Committee now seeks to keep this evidence from the Court. (Comm. Obj. at 4.) There is no basis for doing so and courts routinely consider similar opinions of counsel when evaluating 9019 settlements. Because courts evaluating 9019 settlements are charged with obtaining all the facts and opinions necessary for an intelligent and objective determination of the probabilities of ultimate success of the resolved claims, the Court should deny the Committee's motion to exclude Mr. Lipps's comprehensive overview of the strengths and weaknesses of the trusts' claims.

---

[8] The Debtors reiterated this point in their opposition to the Committee's motion. (*See* Feb. 20, 2013 Debtors' Opposition to Creditors Committee Motion to Preclude Evidence of Reliance on Counsel at 18 ("Mr. Lipps will not be offered to describe any legal advice he gave to the Debtors' directors, because Mr. Lipps did not advise the Debtors on the proposed RMBS Settlement.") [Docket No. 2984].)

| | |
|---|---|
| New York, New York<br>Dated: May 14, 2012 | /s/ *Darryl P. Rains*<br>Gary S. Lee<br>Anthony Princi<br>Darryl P. Rains<br>Jamie Levitt<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br><br>*Counsel to the Debtors and*<br>*Debtors in Possession* |