# Exhibit 2

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

In Re:                                    Case No.

RESIDENTIAL CAPITAL, LLC, et. al,         12-12020(MG)

        Debtors.

-----------------------------------x

VIDEOTAPE DEPOSITION OF THOMAS MARANO

New York, New York

November 12, 2012

9:56 a.m.

Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27645

```
                                                              2

 1
 2
 3
 4                      November 12, 2012
 5                      9:56 a.m.
 6
 7
 8           Deposition of THOMAS MARANO,
 9      held at the offices of Kramer, Levin,
10      Naftalis & Frankel, 1177 Avenue of the
11      Americas, New York, New York, pursuant
12      to Notice, before Erica L. Ruggieri,
13      Registered Professional Reporter and
14      Notary Public of the State of New
15      York.
16
17
18
19
20
21
22
23
24
25
```

9

S T I P U L A T I O N S

    IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

    IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial;

    IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

185

1            THOMAS MARANO

2        MR. PRINCI: Here you go. This

3    is Exhibit 61. Take a look at that

4    and see if that refreshes your

5    recollection.

6        THE WITNESS: What I'm

7    struggling with is the phrase "told

8    us." No one told us what to do. We

9    came to a conclusion.

10       MR. PRINCI: So say that in your

11   answer.

12   Q.    No, I want to know the

13 identities of professionals on whose

14 advice you relied in concluding that

15 $8.7 billion was, as you put it, a

16 reasonable settlement number.

17       MR. PRINCI: So, sir, you just

18   asked a different question. We all

19   appreciate you clarifying, because now

20   it makes sense, okay, and that's

21   helpful. We appreciate that.

22       Now that he's rephrased the

23   question, he's asked you a different

24   question. If you want it read back,

25   we will read it back; if not, if you

186

THOMAS MARANO

2  understand it, then you can answer the
3  question.
4  A.   So in conjunction with our risk
5  department, our internal risk department,
6  our internal legal counsel and third-party
7  and outside counsel and in conjunction
8  with FTI, we concluded that this scope of
9  settlement was larger and -- larger than
10  we have ever had before, and we settled on
11  this number.
12  Q.   Well, I believe you testified
13  earlier, when I was asking you about how
14  the 10-Q estimate came about, that that
15  was based on your internal risk
16  department's analysis, together with
17  auditors, correct?
18  A.   Auditors and disclosure counsel.
19  Q.   Okay.  So are you telling me
20  that somehow in the ten days between the
21  filing of the April 27th Q and May 9th,
22  your risk department suddenly changed its
23  view?
24      MR. PRINCI:  Objection.  That
25   misstates his testimony.

187

1                THOMAS MARANO
2    A.    The scope of what we settled on
3    changed and was different from what was in
4    the disclosure document.
5    Q.    That was at least -- you are
6    telling me that was your belief?
7    A.    Yes.
8    Q.    I'm not sure I understand what
9    you meant by "third-party and outside
10   counsel."
11         Who are you talking about there?
12   A.    Can you bring me back to what
13   section this is?  There were so many
14   questions asked, I don't know which answer
15   you are referring to.
16         MR. PRINCI:  Madam court
17      reporter, can you please repeat the
18      answer Mr. Kaufman is referring to,
19      for the benefit of everybody?
20         MR. KAUFMAN:  He testified when
21      he gave the professionals.  That's the
22      one I want.
23         MR. PRINCI:  Would you also read
24      the question before.
25         MR. KAUFMAN:  Will you please

188

1           THOMAS MARANO

2      stop talking?  You are not allowed to

3      do this.

4           MR. PRINCI:  Can you.

5           MR. KAUFMAN:  You are not

6      allowed you have ever read the federal

7      rules or the local rules.  You are not

8      allowed.

9           MR. PRINCI:  Can you please also

10     read the question back before that

11     answer, so that he's not confused.

12     Thank you.

13          (Record read.)

14     Q.    Your testimony, Mr. Marano, was

15     so in conjunction with our risk

16     department, our internal risk department,

17     our internal legal counsel and third-party

18     and outside counsel.  So okay.  Your

19     internal legal counsel was who?

20     A.    Would have been Tammy

21     Hamzephour.

22     Q.    And who were you referring to

23     when you said, "And third-party and

24     outside counsel"?

25     A.    Outside counsel would have

189

THOMAS MARANO

2  been -- I should not have said third-party
3  counsel.  I should have said outside
4  counsel.  That would have been MoFo,
5  Morrison & Foerster.
6      Q.   I see.  So you are saying that
7  the combination of your internal risk
8  department, Ms. Hamzephour and Morrison &
9  Foerster and in conjunction with FTI,
10 those are the professionals on whom you
11 relied, in connection with this settlement
12 approval?
13     A.   Yes.  The independent directors
14 relied on Morrison Cohen, but the
15 management relied on Morrison & Foerster
16 and Tammy Hamzephour.
17     Q.   Let me ask you about the
18 settlement of ResCap's claims against AFI.
19 Tell me how the component --
20          MR. KAUFMAN:  Withdrawn.
21     Q.   Let me focus back on -- before I
22 do that, let me focus on the RMBS
23 settlement agreement, which you understood
24 required the settling parties to support
25 the proposed plan that gave third-party

259

C E R T I F I C A T I O N

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK       )

       I, ERICA L. RUGGIERI, RPR and a Notary Public within and for the State of New York, do hereby certify:

       That I reported the proceedings in the within-entitled matter, and that the within transcript is a true record of such proceedings.

       I further certify that I am not related by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

       IN WITNESS WHEREOF, I have hereunto set my hand this 13th day of November, 2012.

             ERICA L. RUGGIERI, RPR