**Hearing Date: May 23, 2013 at 10:00 a.m. (ET)**
**Reply Deadline: May 20, 2013 at 5:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie A. Levitt

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------------
|  )
In re:                                              )   Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>.,    )   Chapter 11
                                                    )
                              Debtors.              )   Jointly Administered
--------------------------------------------------------------------------------  )

**DEBTORS' OPPOSITION TO MOTION TO**
**PRECLUDE TESTIMONY OF TIMOTHY DEVINE**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT....................................................................................................................... 3

I.    The Committee Mischaracterizes Ally's Privilege Assertions and Instructions. .............. 3

     A.    The Committee Has Not Demonstrated That Ally Improperly Asserted
           Privilege on Its Privilege Log. ............................................................................. 4

     B.    Ally Properly Asserted Privilege at Mr. Devine's Deposition. ........................... 6

II.   The Committee Mischaracterizes This Court's April 12, 2013 Preclusion Order............. 9

III.  Mr. Devine's Deposition Transcript Cannot Be Offered As Evidence. .......................... 11

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 32 .................................................................................................................3, 11

Fed. R. Bankr. P. 7032 ..........................................................................................................3, 11

Fed. R. Bankr. P. 9017 ..........................................................................................................3, 11

Fed. R. Evid. 801 ...................................................................................................................3, 11

Fed. R. Evid. 804 ...................................................................................................................3, 11

**INTRODUCTION**

In its objection, the Committee promised to prove that Timothy Devine, Ally's Director

of Litigation, "dominated and controlled" ResCap's attorneys, directors, and outside counsel.

The Committee promised to show that Mr. Devine used this "control" to force the Debtors to

agree to an unreasonably high $8.7 billion allowed claim "in exchange for" the investors' plan

support agreements.  The Committee promised to offer evidence showing Mr. Devine

masterminded "a settled claim amount that appears to be considerably higher than any non-

conflicted fiduciary would have reached."  (Committee Objection to 9019 Motion at 1-3, 15-16

[Docket No. 2825].)

The Committee would prove these contentions, it told the Court and the parties, by

calling Mr. Devine as an adverse witness.  (Ex. 1, Oct. 10, 2012 Email from Philip Bentley to

Anthony Princi; Ex. 2, Oct. 4, 2012 Hr'g Tr. at 27:2-15 [Docket No. 1756].)[1]  The Committee's

cross-examination of Mr. Devine at trial, we were led to believe, would be the centerpiece of the

Committee's case against the RMBS settlement.

Now, in a stunning turnabout, the Committee has moved to preclude Mr. Devine from

testifying at trial.  The Committee apparently has reversed course and decided not to call Mr.

Devine as an adverse witness.  Moreover, having made that tactical move, it seeks to stop anyone

else who might wish to do so from calling him as a witness.  The Committee wants the Court to

rule on the 9019 Motion without ever seeing, or hearing from, the person it insists was the

mastermind of the plot to force the Debtors into an unreasonable settlement.  What is the

Committee trying to hide?

---

[1] "Ex. ___" refers to the exhibits attached to the Declaration of LaShann DeArcy dated May 13, 2013, filed
concurrently with this motion.

The Committee bases its motion on the claim that Ally asserted the attorney-client

privilege with regard to some of Mr. Devine's emails and instructed him not to answer certain

deposition questions calling for privileged information.  That is no basis for limiting Mr.

Devine's testimony if he is called as a witness.

The Committee does not claim that Ally's privilege instructions were improper.  It does

not show that any of the testimony Mr. Devine would offer at trial was withheld in discovery.  It

does not show that Ally "cherry-picked" any privilege decisions in a manner inconsistent with

the Court's April 12, 2013, Preclusion Order;[2] nor could it, because, unlike the Debtors, Ally

never made a limited waiver of the privilege.  The Committee does not show that any document

withheld on privilege grounds will be offered at trial or addressed by Mr. Devine's testimony.

Instead, the Committee says, without any evidence or support, that Mr. Devine was

instructed not to testify on entire topics—like "the evaluation, negotiation, or approval of the

RMBS Settlement," the "plan support agreements," and the Ally settlement.  The record

contradicts that charge.  Mr. Devine testified for a full day on those topics and was examined on

dozens of documents relating to them.  Ally asserted the privilege only to protect Mr. Devine

from divulging privileged information.  Moreover, Ally did not assert privilege with respect to

any of Mr. Devine's communications with the Debtors relating to the negotiation of the RMBS

settlement because, beginning in April 2012, Mr. Devine no longer represented the Debtors with

regard to those negotiations.

Ally's privilege assertions complied with the law governing the attorney-client privilege,

and the testimony Mr. Devine would offer would not disclose privileged matters or conflict with

---

[2] Memorandum Opinion and Order Granting In Part and Denying In Part The Unsecured Creditors Committee's
Preclusion Motion ("April 12, 2013 Preclusion Order") [Docket No. 3434].)

2

this Court's April 12, 2013, Preclusion Order.  There is no basis, then, for barring Mr. Devine's

testimony at trial.

Finally, the Committee says it intends to offer excerpts from Mr. Devine's deposition

transcript "to constitute the full record at trial of Mr. Devine's involvement in the settlement

process."  (Motion of Official Committee of Unsecured Creditors to Preclude Timothy Devine

("Comm. Mot.") at 3 [Docket No. 3617].)  But Mr. Devine is not a party and, as far as the

Debtors know, he is not an unavailable witness.  Accordingly, his deposition transcript is not

admissible as evidence under Rule 32 of the Federal Rules of Civil Procedure (applicable here by

Rule 7032 of the Federal Rules of Bankruptcy Procedure), or Rules 801 and 804 of the Federal

Rules of Evidence (applicable pursuant to Rule 9017 of the Federal Rules of Bankruptcy

Procedure).

## ARGUMENT

### I.   THE COMMITTEE MISCHARACTERIZES ALLY'S PRIVILEGE ASSERTIONS AND INSTRUCTIONS.

Ally has not waived its attorney-client privilege in these proceedings.  Accordingly, Ally

properly withheld documents from discovery, and instructed Mr. Devine not to answer questions

at his deposition, that involved his provision of confidential legal advice to his clients.

Ally's attorney-client privilege extended to communications between Mr. Devine and his

clients at Ally's subsidiaries, including the Debtors.  Thus, Ally has asserted the attorney-client

privilege regarding Mr. Devine's representation of the Debtors in pre-bankruptcy litigation

involving representation and warranty litigation brought by MBIA, FGIC, and others.  Similarly,

the Debtors have (at Ally's request) asserted the attorney-client privilege to protect presentations

made by Mr. Devine to ResCap's executives, managers, and directors concerning representation

and warranty litigation and potential liability.

But, beginning in March 2012, Ally's and ResCap's legal departments, which had, up to

that point, shared responsibility and expertise across company lines, began the process of

separating into two distinct legal departments.  As Mr. Devine has testified, by April 2012, he

did not represent the Debtors in their negotiations with the Steering Committee Group or Talcott

Franklin Group.  (*See* Ex. 3, Nov. 19, 2012 Deposition of Timothy Devine ("Devine Dep.") at

359:20-367:19.)

Accordingly, neither Ally nor the Debtors has asserted the attorney-client privilege to

shield communications between Mr. Devine and the Debtors concerning the negotiation of the

RMBS settlement.  This has been clear for months.  As the Debtors explained to the Court last

November:

> The Debtors understand the attorney-client privilege, and common
> interest doctrine, to protect confidential communications
> concerning the Debtors' and AFI's litigation against third parties.
> That is because, as against third-parties, the Debtors and AFI share
> common interests, as codefendants, in assessing their risks and
> litigation exposure, and in coordinating their common defense
> strategy.  By contrast, the Debtors believe that communications
> between the Debtors and AFI concerning the negotiation of the
> RMBS settlement are not protected by the attorney-client privilege
> or common interest doctrine.  That is because, in this settlement
> context, the Debtors and AFI did not share common legal interests.

(Nov. 4, 2012 Letter from Darryl Rains to Judge Glenn at 1 [Docket No. 2052].)

**A.    The Committee Has Not Demonstrated That Ally Improperly Asserted
Privilege on Its Privilege Log.**

Ally's assertion of privilege concerning its production of documents complied with this

position.  (Nov. 7, 2012 Ally Financial Inc. Letter Regarding the Resolution of the Claw-Back

Request [Docket No. 2104]; Ex. 4, Nov. 8, 2012 Letter from Patrick Bryan to Philip Kaufman.)

The Committee, however, asserts that "countless communications" listed on Ally's and the

Debtors' privilege logs "go to the heart of the RMBS Settlement process."  (Comm. Mot. at 3.)

4

But the Committee's list does not cite to any such documents; it merely refers to Ally's and the

Debtors' privilege logs.  As a result, we are unable to tell which documents the Committee now

argues were improperly withheld on privilege grounds.

But the parties went through an extensive meet-and-confer process, and through

extensive motion practice before the Court, regarding those privilege logs.  The Debtors'

privilege logs were the subject of a five-hour meeting between the Committee and the Debtors

that prompted the creation of a supplemental privilege log with additional information about

every document.  (Nov. 4, 2012 Letter from Darryl Rains to Judge Glenn at 2-3.)  The

Committee acknowledged, at that time, that the Debtors had provided adequate answers to every

question it posed and had produced all non-privileged documents.  At no point did the

Committee assert that the Debtors improperly withheld documents reflecting Mr. Devine's

communications with the Debtors.

The Debtors took the same position then that they take now—communications between

the Debtors and Mr. Devine regarding the negotiation and approval of the RMBS settlement

were not privileged and have been disclosed.  The Committee's motion does not offer anything

to counter this position.  Our review of the privilege logs confirms that documents withheld on

privilege grounds either related to communications between Mr. Devine and Ally, or related to

communications that did not concern the negotiation or approval of the RMBS settlement.

The Committee has thus failed to show that documents withheld on privilege grounds by

Ally or the Debtors constitutes any basis for limiting Mr. Devine's testimony at trial if he is

called as a witness.

**B.      Ally Properly Asserted Privilege at Mr. Devine's Deposition.**

Ally followed the same rules at Mr. Devine's deposition.[3]  It allowed him to testify at

length regarding his communications with the Debtors regarding the negotiations leading up to

the RMBS settlement.  (*See, e.g.*, Ex. 3, Devine Dep. at 38:9-39:19, 40:18-41:18, 43:10-24,

82:19-85:10, 95:2-99:1, 120:22-126:24, 139:25-140:13, and 217:22-219:24.)

Ally only instructed Mr. Devine not to reveal the content of privileged communications

he had with Ally.  (*See, e.g.*, *id*. at 16:5-17:15.)  Mr. Devine also independently refused to reveal

his mental impressions because those informed his legal advice to Ally.  (*See, e.g.*, *id*. at 82:19-

85:10 ("Are you asking me what I thought or what I said to Gary and Tammy about what I

thought?  Because if you want to know my answer, I can answer the second one.").)  Neither

Ally nor Mr. Devine asserted privilege to protect Mr. Devine's communications with the Debtors

relating to the RMBS settlement.

The Committee's motion lists "categories of questions not answered by Mr. Devine."

(Comm. Mot. at 4.)  These "categories" bear no relationship to reality and are not supported by

the transcript citations offered by the Committee.  For example, the Committee claims Mr.

Devine did not answer "[q]uestions about his formulation of strategy for pursuing settlement

discussions with Ms. Patrick."  (*Id*.)  But all three of the Committee's citations involve

communications between Mr. Devine and Ally.[4]  For example, after Mr. Devine confirmed that

he recalled discussing with Bill Solomon (Ally's General Counsel) an approach for dealing with

Ms. Patrick on October 19, 2011, he was asked "what was discussed at the meeting [he] had."

---

[3] The Debtors did not assert any privilege objections at Mr. Devine's deposition.

[4] Two of these three privilege assertions were prompted by questions about what Mr. Devine meant when he referred to his "plan" in communications to Mr. Solomon that also included ResCap counsel (Ms. Hamzehpour, John Ruckdaschel, and David Hagens).  (Ex. 3, Devine Dep. at 31:10-32:2, 41:19-43:8.)  These conversations occurred before Ally and ResCap began the process of separating into two distinct legal departments and before ResCap began settlement negotiations in the bankruptcy context with the Steering Committee Group or Talcott Franklin Group.

(Ex. 3, Devine Dep. at 16:5-17:6.)  Ally advised Mr. Devine "not to answer to the extent that he

was advising his client or having discussions with Mr. Solomon that would constitute attorney-

client communications." (*Id.* at 16:19-17:17.)  Ally's objection to questions about Mr. Devine's

privileged communications with Ally does not support the Committee's request to bar Mr.

Devine's testimony about his non-privileged communications with the Debtors concerning the

RBMS settlement.

As another example, the Committee claims Mr. Devine was instructed not to answer

"[q]uestions about his expressed concerns with how the proposed RMBS Settlement might

expose AFI to possible securities violations in light of its public disclosures regarding RMBS

liabilities." (Comm. Mot. at 4.)  But the only testimony cited in support of this assertion relates

to advice Mr. Devine sought from Ally's outside counsel:

> Q. You were so confident [that you had made lawful disclosures
> regarding the risk of the settlement], Mr. Devine, that you
> consulted Davis Polk about this very issue, right?
>
> MR. BRYAN: Objection to form.
>
> Q. Didn't you?
>
> MR. BRYAN: You are asking him if he consulted outside
> attorneys?
>
> Q. You consulted not just outside attorneys, you consulted Davis
> Polk on this exact issue, didn't you?
>
> MR. BRYAN: I'm going to instruct the witness not to answer what
> legal advice he sought from Ally's attorneys.
>
> Q. Did you or did you not consult Davis Polk about the risk to AFI
> of settling -- the risk to AFI in terms of disclosures that were made
> in the 10-Q by having a settlement of this -- of this magnitude with
> Ms. Patrick?
>
> MR. BRYAN: I'm going to instruct the witness not to answer to
> the extent you are asking him what legal advice he sought on what
> topics from an outside attorney for AFI.

7

> MR. KAUFMAN: I just want to know whether -- you are not
> letting him answer on the topic?
>
> MR. BRYAN: You are asking him a very specific topic.  And I'm
> instructing the witness not to answer.
>
> Q. Did you or did you not seek advice from Davis Polk on AFI's
> risk for possible securities violations in connection with the 10-Q?
>
> MR. BRYAN: Mr. Kaufman, we can do this all day.  I'm
> instructing the witness not to answer.

(Ex. 3, Devine Dep. at 205-207.)

The Committee also claims Mr. Devine refused to answer "[q]uestions concerning his conversations with Ms. Hamzehpour about negotiation strategy and how to deal with Ms. Patrick."  (Comm. Mot. at 4.)  The only assertion of privilege offered in support of this claim involved a December 2011 email from Mr. Devine to Mr. Solomon and Ms. Hamzehpour.  In the email, Mr. Devine stated that, "[p]ursuant to our plan," he would let Ms. Patrick know that Ms. Hamzehpour "forwarded [him] Ms. Patrick's correspondence and asked him to follow up."  (Ex. 3, Devine Dep. at 41:19-43:8; Ex. 5, Dec. 15, 2011 Email from Timothy Devine to Tammy Hamzehpour, Devine Dep. Ex. 124.)  The Committee asked Mr. Devine whether the "plan" referred to in his email was the same plan he had discussed Mr. Solomon in October.  (Ex. 3, Devine Dep. at 41:19-43:8.)  Ally instructed him "not to answer to the extent he would disclose communications with Mr. Solomon."  (*Id.* at 42:8-11.)  Ally's instruction not to answer a question about privileged communications between Mr. Devine and Mr. Solomon provides no basis for excluding Mr. Devine's testimony about his non-privileged communications with the Debtors concerning the RBMS settlement.

As a final example, the Committee asserts that Mr. Devine was instructed not to answer "[q]uestions about his thought processes and intentions in connection with his communications with Gary Lee regarding the RMBS Settlement and the contemporaneous settlement between

8

AFI and ResCap." (Comm. Mot. at 4.)  Again, the Committee cites to only one assertion of

privilege, and it does not support its charge.  Mr. Devine was shown an email that he sent to

Gary Lee on May 9, 2013.  (Ex. 3, Devine Dep. at 237:7-20.)  The email states, "Ally will

support the $8.7 billion allowed claim.  There is no new Ally money."  (Ex. 6, May 9, 2012

Email from Timothy Devine to Gary Lee, Devine Dep. Ex. 147.)  Mr. Devine was then asked:

> Q. Did you consider what you would do for AFI if Mr. Lee bought
> and insisted on a greater contribution from AFI?
>
> …
>
> A. If you are asking me for my mental impression as to what
> contingencies might occur in the event that ResCap and Kathy
> Patrick didn't settle, I'm not going to answer that question as it
> would reflect attorney-client privileged information.  And probably
> attorney work product.

(Ex. 3, Devine Dep. at 237:7-20.)  Mr. Devine's refusal to answer a question about his mental

impressions does not support the Committee's request to bar Mr. Devine's testimony about his

non-privileged communications with the Debtors concerning the RBMS settlement.

The Committee's motion does not cite to any privilege instruction at Mr. Devine's

deposition relating to his communications with the Debtors concerning the RMBS settlement.

Ally's instructions related only to privileged communications between Mr. Devine and Ally.

Those instructions offer no basis for barring Mr. Devine's testimony at trial.

## II.    THE COMMITTEE MISCHARACTERIZES THIS COURT'S APRIL 12, 2013 PRECLUSION ORDER.

The Committee argues that the Court's April 12, 2013 Preclusion Order should be

extended to bar the introduction of any testimony by Mr. Devine.  (Comm. Mot. at 4-5.)  But the

Committee mischaracterizes the Court's order.

In its Preclusion Order, the Court wrote that "Debtors' counsel engaged in selective

disclosure of legal advice by providing a Limited Waiver to the legal advice given to the ResCap

Board at the May 9, 2012 board meeting, while continuing to assert attorney-client privilege to

bar discovery of documents or deposition testimony on the same subject matter." (April 12,

2013 Preclusion Order at 10 [Docket No. 3434].) Because the Debtors had "adopted the strategy

of selective (and extremely limited) disclosure" of privileged information, the Court ordered the

Debtors are "precluded from offering any evidence of the legal advice provided to the Debtors'

officers and directors that was considered in connection with the decision to enter into the RMBS

Trust Settlement." (*Id.*)

The Court's reasoning has no application to Mr. Devine or the Committee's motion. Ally

did not make any limited waiver of the attorney-client privilege and made no selective disclosure

of privileged information. None of the "sword/shield" arguments, made by the Committee and

considered by the Court in its Preclusion Order, has any application to this situation, where

neither Ally nor the Debtors has proposed to offer any formerly-privileged information through

Mr. Devine.

Nor did Ally or the Debtors make any "selective" or "extremely limited" disclosure of

relevant documents or information. The Debtors produced all of their written communications

with Mr. Devine concerning the negotiation and approval of the RMBS settlement. As the

Debtors informed the Court at the hearing on the preclusion motion, the Debtors intend to offer,

as evidence, "communications between Mr. Devine, representing Ally and the lawyers

representing ResCap . . . . that go to the negotiating strategy, settlement meetings, data about

exposure, legal defenses, defect rates, et cetera. We did not assert privilege as to any of those

communications." (Ex. 7, April 11, 2013 Hr'g Tr. at 28: 5-15 [Docket No. 3445].) And Ally

permitted Mr. Devine to answer all questions regarding his communications with the Debtors

concerning the negotiation of the RMBS settlement (*see, e.g.*, Ex. 3, Devine Dep. at 82:19-

10

85:10), his communications with Kathy Patrick and Talcott Franklin (*see*, *e.g*., *id*. at 142:11-143:22), and his role in the settlement negotiations (*see, e.g.*, *id.* at 368:25-370:18).

The Committee says the Debtors intend to "cherry-pick" selected privileged information and offer it as evidence while asserting privilege as to other relevant information.  There is no basis for this charge.  Ally has not waived the attorney-client privilege regarding Mr. Devine's privileged communications, and the Debtors do not intend to offer privileged information concerning him.  The Court's Preclusion Order thus has no bearing on the Committee's motion.

### III.   MR. DEVINE'S DEPOSITION TRANSCRIPT CANNOT BE OFFERED AS EVIDENCE.

Rule 32 of the Federal Rules of Civil Procedure (applicable pursuant to Rule 7032 of the Federal Rules of Bankruptcy Procedure) provides that deposition testimony may not be offered as evidence, except in very limited situations:  to impeach a witness's testimony at trial; when the deponent is a party or a party's agent; or when the deponent is unavailable to testify at trial. Fed. R. Civ. P. 32(a).

Deposition testimony falling outside these situations is hearsay and must be excluded from evidence under Federal Rules of Evidence 801 and 804 (applicable pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure).

The Committee says it intends to offer excerpts from Mr. Devine's deposition transcript "to constitute the full record at trial of Mr. Devine's involvement in the settlement process." (Comm Mot. at 3.)  But Mr. Devine's deposition testimony does not fall within any of the narrow situations described in Rule 32.  He is not a "party" to this action and he is not, as far as we know, an "unavailable" witness.[5]  The Committee has not offered any basis for concluding that

---

[5] A witness is unavailable if he: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; (2) refuses to testify about the subject matter despite a court order to do so; (3) testifies to not remembering the subject matter; (4) cannot be present or testify at the trial or hearing

Mr. Devine's deposition testimony may be offered as evidence consistent with Rule 32 and

without violating Rules 801 and 804.

## CONCLUSION

For these reasons, if he is called as a witness, Mr. Devine should be permitted to testify at

the hearing to approve the RMBS settlement, and his deposition may not be offered in his stead.

Dated: May 14, 2013
          New York, New York


/s/ *Darryl P. Rains*
Gary S. Lee
Anthony Princi
Darryl P. Rains
Jamie A. Levitt
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900


*Counsel for the Debtors and*
*Debtors in Possession*

---

because of death or a then-existing infirmity, physical illness, or mental illness; or (5) is absent from the trial or
hearing and the statement's proponent has not been able, by process or other reasonable means, to procure: (A) the
declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6), or (B) the declarant's
attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).  Fed. R. Evid. 804(a).