KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip Bentley
Douglas H. Mannal
David E. Blabey, Jr.
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' MOTION TO STRIKE THE OBJECTION AND EXCLUDE THE
EVIDENCE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
<u>OPPOSITION TO THE RMBS TRUST SETTLEMENT</u>**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................................... 1

Background .................................................................................................................................... 3

Response ........................................................................................................................................ 4

        A.      The Debtors Have Presented No Evidence, Just Unfounded Speculation, Regarding the Committee's Decision-Making Process ............................................ 5

        B.      The Limited Allegations Concerning MBIA, FGIC and Wilmington Are Irrelevant to the Issue of Whether They Discharged Their Fiduciary Duties .......... 6

               1.      The Allegations Regarding MBIA and FGIC Are Irrelevant ........................ 6

               2.      The Allegations Regarding Wilmington Are Irrelevant ............................... 9

        C.      The Cases Cited by the Debtors Are Inapposite ........................................................ 9

Conclusion ................................................................................................................................... 10

## TABLE OF AUTHORITIES
**Page(s)**

**CASES**

*Adams v. Zarnel (In re Zarnel)*,
   619 F.3d 156 (2d Cir. 2010) ........................................................................................10

*In re Barney's, Inc.*,
   197 B.R. 431 (Bankr. S.D.N.Y. 1996) ................................................................4, 9, 10

*In re Byrd*,
   No. 04-35620, 2011 WL 589907 (Bankr. D. Md. Feb. 10, 2011) ..............................10

*In re Drexel Burnham Lambert Group, Inc.*,
   138 B.R. 717 (Bankr. S.D.N.Y. 1992) ........................................................................10

*In re Microboard Processing, Inc.*,
   95 B.R. 283 (Bankr. D. Conn. 1989) ............................................................................9

*In re Nat'l Equipment & Mold Corp.*,
   33 B.R. 574 (Bankr. N.D. Oh. 1983) ..........................................................................10

*In re Residential Capital, LLC*,
   No. 12-12020, 2013 WL 1497203 (Bankr. S.D.N.Y. April 12, 2013) ..........................2

*In re Seaescape Cruises Ltd.*,
   131 B.R. 241 (Bankr. S.D. Fla. 1991) ..........................................................................6

*Johns-Manville Sales Corp. v. Doan (In re Johns-Manville Corp.)*,
   26 B.R. 919 (Bankr. S.D.N.Y. 1983) ..........................................................................10

*Rickel & Assocs. Inc. v. Smith (In re Rickel & Assocs. Inc.)*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002) ...........................................................2, 6, 9, 10

*Shaw & Levine v. Gulf & Western Indus., Inc. (In re Bohack Corp.)*,
   607 F.2d 258 (2d Cir. 1979) .......................................................................................10

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") hereby files this response (the "**Response**") to the Debtors' motion (the "**Motion to Strike**") [Dkt. No. 3613] to strike the objection and exclude the evidence of the Committee in opposition to the Debtors' motion (the "**9019 Motion**") [Dkt. Nos. 320, 1176, 1887] for approval of the RMBS Trust Settlement. In support of the Response, the Committee respectfully represents as follows:[1]

### Preliminary Statement

The Motion to Strike is a baseless attack on the integrity of the Committee's decision making process and should be summarily denied. Indeed, the last minute filing of a Motion so completely devoid of factual or legal support is irresponsible.

The six Committee members who participated in deliberations concerning the 9019 Motion voted *unanimously* to oppose the RMBS Trust Settlement. The determination to object to the Settlement followed months of discovery, a thorough analysis of the legal and factual issues presented, and extensive internal discussions. The Committee's inquiry revealed that the Settlement was deeply flawed, both as to process and result. As a fiduciary for all unsecured creditors, the Committee determined it was compelled to oppose the Settlement. In its objection to the RMBS Trust Settlement, as in all its efforts, the Committee was guided by one overriding objective: the maximization of value for all unsecured creditors.

The Debtors have offered no proof to the contrary. The Motion to Strike is replete with baseless allegations and invective, but the Debtors have not pointed to a single scrap of evidence that the Committee or any of its members have acted improperly. The Debtors talk

---

[1] The RMBS Trustees that serve on the Committee have not participated in Committee deliberations concerning this Response.

- 1 -

about a "tainted" process – but the only process evidence they cite is of the Committee's vigorous and extensive investigation of an unprecedented $8.7 billion claim settlement and its withholding of conclusive judgment until that investigation was complete. They talk about "bias" – but they ignore that disinterestedness is not a requirement for Committee membership. They harp on "conflicts of interest" – but they fail to show that Committee members' initial individual statements made for private purposes have any relation to or impact upon Committee decisions made months later. And to support their twisted factual argument, the Debtors cite only to the most generic and inapposite case law regarding fiduciary duties, forgetting the adage that "[c]alling a man a fiduciary only begins the analysis, and does not answer how he failed to discharge his duties."[2]

To make matters worse, the Motion to Strike seeks to undermine the role of an official committee appointed by the United States Trustee. The Committee has been a crucial watchdog in these cases since their inception, yet the Debtors seek to preclude its participation in a central issue presented in these chapter 11 cases based merely on speculation and innuendo. Motions of this sort, if taken seriously, would have a chilling impact on the operation of official creditors' committees in complex chapter 11 cases, in which creditor interests always diverge. The Court should not countenance such cynical and transparent tactics.

The Debtors' motives in filing the Motion to Strike are clear. The Committee's position with respect to the RMBS Trust Settlement has been well known for months following the filing of formal objections, but it is only now, on the eve of trial and close on the heels of the Court's ruling precluding the Debtors from introducing evidence of legal advice,[3] that the Debtors have filed this motion. As such, the Motion to Strike should be recognized for what it

---

[2] *Rickel & Assocs. Inc. v. Smith (In re Rickel & Assocs. Inc.)*, 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002).

[3] *In re Residential Capital, LLC*, No. 12-12020, 2013 WL 1497203 (Bankr. S.D.N.Y. April 12, 2013).

- 2 -

is: a desperate, last-ditch effort to salvage a flawed settlement that was doomed from the outset. The motion should be summarily denied.

**Background**

The Debtors filed the 9019 Motion on June 11, 2012, a month after they filed their bankruptcy petitions. Thereafter, the Committee through its professionals engaged in an extensive review and analysis of the proposed settlement before finally determining to object. The RMBS Trustees that serve on the Committee properly determined to exclude themselves from deliberations concerning the proposed settlement, which were left to the six remaining members: AIG Asset Management LLC, Allstate Life Insurance Company, Rowena L. Drennan, Financial Guaranty Insurance Company ("**FGIC**"), MBIA Insurance Corporation ("**MBIA**"), and Wilmington Trust, N.A. ("**Wilmington**").

The Committee's evaluation of the RMBS Trust Settlement involved a comprehensive analysis of the law governing RMBS representation and warranty claims, the review of hundreds of thousands of pages of documents produced in discovery, the retention of two experts who prepared lengthy reports, and the taking of over fifteen depositions of expert and fact witnesses. In addition, the Committee and its professionals engaged in multiple discussions with representatives of the Debtors and the Steering Committee Investors.

Throughout the process of analyzing the RMBS Trust Settlement, the Committee made clear on numerous occasions that it had not determined what position it would take with respect to the settlement. Indeed, the Debtors acknowledge this. As the transcript cites on page five of the Motion to Strike make clear, far from jumping to conclusions, throughout the summer and early fall of 2012, the Committee consistently and publicly stated that it was investigating the merits of the settlement and had not yet determined whether to object.

It was only after the Committee's months-long investigation was complete that it voted on whether to object to the proposed settlement. The Committee vote was unanimous, with all six members of the Committee (other than the RMBS Trustees, who had recused themselves) voting to object. Committee members disagreed on the contours of an objection, however. As noted in footnote 1 of the Committee's objection to the RMBS Trust Settlement [Dkt. No. 2825]: "while each of the Committee's [non-RMBS Trustee] members has voted to object to the RMBS Trust Settlement, the specific elements of this Objection do not reflect the views of individual Committee members." The footnote further specifically noted that "MBIA does not join in or adopt the arguments set forth in the Committee's objection."

## Response

The Court need not decide whether MBIA, FGIC, and Wilmington were conflicted, as the Debtors allege, because the three other voting members of the Committee all voted to object to the settlement. Under the Committee's bylaws, the vote of three members would have been sufficient to direct Committee action.[4]

But even if the Court were to examine the Debtors' conflict allegations, the assertions of a tainted process are entirely without basis. Certainly, the Motion to Strike does not reference the sort of "specific evidence which supports a finding that the [creditor] has breached or is likely to breach a fiduciary duty" that the Debtors' own case law requires. *See In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996) (quoting *In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr. D. Conn. 1989)) (cited by the Debtors on pages 6-7 of the Motion to Strike). The Debtors have presented no evidence at all concerning the Committee's process; the limited allegations regarding the actions taken by MBIA, FGIC and

---

[4] If the Debtors were not aware of the Committee's bylaws in this regard, they could have simply inquired, rather than wasting the resources required to litigate a frivolous motion.

- 4 -

Wilmington in their individual capacities reveal no impropriety; and the case law cited by the Debtors is completely irrelevant to the issues presented in their motion.

        **A.**       **The Debtors Have Presented No Evidence, Just Unfounded Speculation, Regarding the Committee's Decision-Making Process**

The Debtors' argument for preclusion, diffuse and incoherent as it may be, is best encapsulated in the following sentence: "These parties determined early on in these cases that they did not believe that the Settlement was in their personal interests and have proceeded to oppose the Settlement on this basis, without regard to what is in the interests of the unsecured creditor body as a whole." Motion to Strike 8-9. The Debtors' entire motion is devoted to establishing the first half of this equation: that MBIA, FGIC and Wilmington determined early on that the Settlement was not in their personal interests. These creditors' individual positions with respect to the Settlement are, however, wholly immaterial to the Committee or its process.

What would be relevant is evidence that would establish the second half of the equation: that the three Committee members "have proceeded to oppose the Settlement . . . without regard to what is in the interests of the unsecured creditor body as a whole." But for this, the Debtors have no evidence at all. Rather, their entire argument is premised on the circular and speculative conclusion that, simply because MBIA, FGIC and Wilmington purportedly voiced personal reservations regarding the Settlement, they *necessarily* acted on no more than those allegedly improper personal views when they voted to object to the Settlement. The Court has no cause to engage in such conjecture. Because the Debtors presented no evidence that MBIA's, FGIC's or Wilmington's preliminary statements regarding the Settlement in any way impacted or affected the Committee's thorough, five-month evaluation of the Settlement, the Motion to Strike should be denied.

B.  **The Limited Allegations Concerning MBIA, FGIC and Wilmington Are Irrelevant to the Issue of Whether They Discharged Their Fiduciary Duties**

Because (i) the Debtors have no evidence that the Committee process was tainted (because it was not), and (ii) Committee members are permitted to act in their own interests, any personal views that MBIA, FGIC and Wilmington had with respect to the Settlement are wholly irrelevant. Even if they were relevant, however, the Debtors' specific allegations with respect to each of the supposedly conflicted Committee members do not suggest any impropriety.

1.  **The Allegations Regarding MBIA and FGIC Are Irrelevant**

The Debtors' only "evidence" that MBIA and FGIC may have breached their fiduciary duties is the allegation that these creditors supposedly made up their minds about the RMBS Trust Settlement too soon, sending letters to RMBS Trustees expressing their disapproval of the Settlement before they had seen all the relevant evidence.

As an initial matter, the fact that MBIA and FGIC may have sent letters to RMBS Trustees on their own behalf (and not on behalf of the Committee), standing alone, could not amount to a breach of fiduciary duty. Actions taken by Committee members on their own behalf are not imputed to the Committee and, as case law cited by the Debtors makes plain, it is well settled that Committee members are permitted to take actions in their individual capacities that may be adverse to the interests of creditors as a whole. *See, e.g., Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002) ("Every member of the Committee is, by definition, a creditor. Thus, he is [in] competition with every other creditor for a piece of a shrinking pie. He may assert his rights as a creditor to the detriment of the creditor body as a whole without running afoul of his fiduciary obligations.").[5]

---

[5] *See also In re Seaescape Cruises Ltd.*, 131 B.R. 241, 243 (Bankr. S.D. Fla. 1991) ("The fact that the Committee has filed a motion to convert the case to a Chapter 7 case or that some of the members have unsuccessfully sought relief from stay to enforce their maritime liens is not sufficient to demonstrate a conflict of interest among the members of the Committee or any breach of fiduciary duty by the Committee to unsecured creditors.").

But putting aside that MBIA and FGIC are entitled to assert their rights as creditors without running afoul of their fiduciary duties, the letters do not, in fact, establish that MBIA and FGIC had made up their minds to oppose the Settlement. Instead, as their language makes clear, the letters were a precautionary measure intended to prevent the Trustees from approving the deal before it could be vetted, based on the timing that then existed, with the Debtors intending to seek the immediate approval of one of the largest settlements ever presented to a Bankruptcy Court. FGIC's May 25 letter to U.S. Bank, attached to the Declaration of Anthony Princi [Dkt. No. 3615] as Exhibit 5, expresses an interest in learning more about the Settlement, noting that "there is very little information publicly available concerning the Settlement Agreement" and requesting that the Trustee "provide to FGIC and the holders of the Transaction Securities copies of any non-public information that it may receive concerning the Settlement Agreement or Plan Support Agreement, in order for us to provide direction to the Trustee on a fully informed basis."[6] MBIA's letters to U.S. Bank, attached to the Princi Declaration as Exhibit 6, state MBIA's position that it, and not the Trustee, "has the right to direct remedial actions relating to the [Notes/Securities], including, but not limited to, the acceptance of any settlement or compromise offers," and that evaluation of the Settlement by the Trustee would lead to unnecessary expense. The letters nowhere state that MBIA or FGIC had determined to oppose the Settlement, nor that they would take their personal position and seek to impose their views on the Committee.[7]

---

[6] If FGIC did not intend to continue evaluating the Settlement as more information came to light, it would not have asked the Trustees to provide it with additional information, nor would it have suggested that it might later provide direction to the Trustees on a more "informed basis."

[7] The assertion that MBIA and FGIC somehow improperly prejudged the Settlement is also belied by the fact that FGIC and MBIA both hired experts to evaluate the Settlement and fully participated in the extensive discovery with their own counsel, expending substantial personal funds in the process. If MBIA and FGIC had rigged the process to force the Committee to improperly object, neither party would have had to spend its own funds investigating the Settlement and preparing an objection. They could have simply relied upon the Committee to object for them.

Moreover, even if MBIA and FGIC had reached preliminary conclusions as to their own views of the Settlement early in the Debtors' bankruptcy, this would be neither surprising nor improper. The Debtors assume – without support – that the views expressed by MBIA and FGIC in their letters to the RMBS Trustees were both ill-informed and contrary to the interests of creditors as a whole. *See* Motion to Strike at 5-6 ("Since neither FGIC nor MBIA had the requisite information necessary to decide what was in the best interests of all creditors, their respective, earlier decisions had to be based on some personal interest for which they sought to defeat the 9019 Motion."). In fact, there is no evidence that either assumption is true. MBIA and FGIC have been engaged in RMBS-related litigation for years and, unlike other creditors, had extensive knowledge of the representation and warranty claims that were the subject of the Settlement. It is unsurprising, therefore, that they would have preliminary views on the merits of the Settlement, and there is every reason to believe that such preliminary views were well-informed.[8]

Finally, as the Debtors themselves have noted, regardless of the views of MBIA and FGIC, the Committee itself did not determine to oppose the Settlement until its investigation was complete. *See* Motion to Strike at 4-5 (quoting relevant transcript testimony and noting that "the Committee consistently and repeatedly took the position that extensive discovery was necessary for the Committee to be able to make a decision regarding whether the amount of the proposed settlement was in the best interests of all creditors"). And even then, MBIA and FGIC had serious reservations concerning the objection that the Committee ultimately filed, with MBIA insisting on the inclusion of a footnote stating it did not "join in or adopt the arguments set forth in the Committee's Objection." Committee RMBS Objection fn. 1. These facts suggest

---

[8] In theory, MBIA and FGIC, if they believed the Settlement was contrary to their parochial interests, could have opposed it only insofar as it had an impact on wrapped trusts. Instead, they opposed the Settlement in its entirety.

- 8 -

the exact opposite of a Committee dominated and controlled by monoline interests to the detriment of unsecured creditors as a whole.

### 2. The Allegations Regarding Wilmington Are Irrelevant

To the extent that the Debtors' allegations regarding Wilmington relate to its supposed premature opposition to the Settlement, they fail for reasons similar to those discussed above. The additional allegations of a "bias against the trust claimants," Motion to Strike at 6, are likewise irrelevant. It is well settled that creditors need not be disinterested to serve on a committee and that creditors will frequently be in competition with one another for limited assets. *See, e.g., Barney's*, 197 B.R. at 442 ("An entity need not be disinterested to qualify for committee membership."); *Rickel*, 272 B.R. at 100 (members of committee will be in "competition with every other creditor for a piece of a shrinking pie").[9] As the Debtors would have it, a committee member must recuse itself every time its individual interests are not perfectly aligned with those of all unsecured creditors. This unduly burdensome standard is untenable and finds no support in the law. A desire to see certain claims subordinated is a natural part of the jockeying that occurs in a chapter 11 case and is not a disqualifying conflict of interest. Moreover, that Wilmington has a different view of the law from the Debtors cannot be a basis for its disqualification.

### C. The Cases Cited by the Debtors Are Inapposite

The Debtors' motion is not a proper motion in limine. It is a much-too-late attack on the Committee's standing to object to the Settlement. To the extent that the Debtors had a concern with the Committee's process or its standing, they should have raised that concern in

---

[9] *See also In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr. D. Conn. 1989) ("It is axiomatic that each unsecured creditor has a conflict with every other unsecured creditor in the sense that absent a 100% distribution, the elimination or reduction of any such claim will benefit all others. That is not an impermissible conflict of interest which would bar appointment to or justify removal from a creditors' committee, nor does an impermissible conflict arise merely because one of the members of the committee has an adverse interest to that of the others.").

their 96 pages of reply briefing, in one of their many discussions with Committee counsel, or at any one of innumerable hearings on the Settlement.

Moreover, the Debtors' motion is completely devoid of relevant precedent. Two of the Debtors' citations are simply incorrect.[10] Several others involve inapposite fact patterns and stand only for generic and unsurprising principles of the law of fiduciary duty.[11] And the one case that the Debtors accurately cite for the proposition that it may sometimes be proper to strike a pleading could not be more different than this case, involving, as it did, the misconduct of chapter 7 debtors who had engaged in criminal acts.[12]

## Conclusion

Prior to the outset of these cases, the Debtors committed themselves to the pursuit of an exorbitant settlement that was based on a flawed process and was detrimental to the interests of unsecured creditors. As the Debtors and the Court well know, the Committee takes

---

[10] *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717 (Bankr. S.D.N.Y. 1992) (cited in the Motion to Strike at page 7 for a quote that nowhere appears in the opinion); *Adams v. Zarnel (In re Zarnel)*, 619 F.3d 156, 158, 172 (2d Cir. 2010) (cited in the Motion to Strike at page 8 for the proposition that the court affirmed the striking of a pleading, when in fact the court remanded to reconsider whether the lower court's decision to strike had been proper).

[11] *See Barney's*, 197 B.R. at 433 (court *denied* debtors' motion to remove creditor from committee on basis of alleged conflicts of interest); *Rickel*, 272 B.R. at 100 (court denied committee member's motion to dismiss breach of fiduciary duty claim arising out of committee member's alleged fraud and misrepresentations in connection with his purchase of assets from the estate, noting that "fiduciary who transacts business with his beneficiary must turn square corners" and "sales to insiders of the debtor are subjected to heightened scrutiny"); *Johns-Manville Sales Corp. v. Doan (In re Johns-Manville Corp.)*, 26 B.R. 919, 920-21 (Bankr. S.D.N.Y. 1983) (holding attorney who was member of asbestos committee in contempt for willful and deliberate violation of the automatic stay in continuation of a judicial proceeding against the debtors in a non-bankruptcy forum); *Shaw & Levine v. Gulf & Western Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 261 (2d Cir. 1979) (holding that attorney appointed as special counsel to prosecute litigation on debtor's behalf had a conflict arising out of, among other things, his close personal friendship with potential defendant); *In re Nat'l Equipment & Mold Corp.*, 33 B.R. 574, 575-76 (Bankr. N.D. Oh. 1983) (court denied priority creditors' committee's request to issue a statement to all creditors, at estate's expense, supposedly correcting an inaccurate statement made by the debtor, where priority creditors' committee consisted of only a single member and the statement would only serve that single member's interest).

[12] *In re Byrd*, No. 04-35620, 2011 WL 589907, *1, 5 (Bankr. D. Md. Feb. 10, 2011) (court struck chapter 7 debtors' objection to chapter 7 trustee's fee application and final report as a result of debtors' "continued abuse of judicial process and their bad faith conduct in this case," including their "false filings in this case which were characterized as criminal by the Maryland Court of Appeals, the Debtors' contempt, their failure to satisfy the contempt sanctions, their filing of a summary objection and failing to appear at the hearing to prosecute it and their abuse of the judicial process that has directly resulted in this case becoming administratively insolvent").

its role as watchdog seriously, and it had no choice, in the exercise of its fiduciary duties, but to first fully investigate and then object to the Settlement.  Its decision in this regard was made with great care, and followed months of discussion, investigation and detailed analysis.  The allegations in the Motion to Strike to the contrary are so frivolous as to leave no conclusion but that they were made in bad faith.  It is unfortunate that the Debtors saw fit to spend estate assets discussing, researching, and drafting such a fatuous pleading – which, in turn, necessitated this Response.  Because the factual contentions in the Motion to Strike have no evidentiary support, the legal contentions are not warranted by existing law or a non-frivolous argument for extending existing law, and the motion is presented for an improper purpose, the motion should be withdrawn, and if not withdrawn, emphatically denied.  The Committee respectfully requests that the Court enter an Order denying the motion and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 14, 2013

        KRAMER LEVIN NAFTALIS & FRANKEL LLP

        /s/ Philip Bentley
        Kenneth H. Eckstein
        Philip Bentley
        Douglas H. Mannal
        David E. Blabey, Jr.
        1177 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 715-9100
        Facsimile: (212) 715-8000

        *Counsel for the Official Committee*
        *of Unsecured Creditors*