**Hearing Date: May 23, 2013 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: May 14, 2013 at 5:00 p.m. (prevailing Eastern Time)**

Richard L. Wynne
Howard F. Sidman
JONES DAY
222 East 41st Street
New York, NY 10017.6702
Telephone:    212-326-3939
Facsimile:    212-755-7306

Carl E. Black
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone:    216-586-3939
Facsimile:    216-579-0212

Attorneys for Creditor
FINANCIAL GUARANTY INSURANCE COMPANY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
                                                       )
In re:                                                 )    Case No. 12-12020 (MG)
                                                       )
RESIDENTIAL CAPITAL, LLC, et al.,                      )    Chapter 11
                                                       )
         Debtors.                                      )    Jointly Administered
                                                       )
                                                       )
------------------------------------------------------ x

**JOINDER OF FINANCIAL GUARANTY INSURANCE COMPANY IN
SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO DEBTORS' MOTION TO STRIKE THE OBJECTION AND EXCLUDE THE
EVIDENCE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
<u>OPPOSITION TO THE RMBS TRUST SETTLEMENT</u>**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Financial Guaranty Insurance Company ("FGIC"), the plaintiff in twelve lawsuits filed against several of the above-captioned debtors (collectively, the "Debtors") and their non-debtor affiliates, a creditor of the Debtors with claims in excess of $1.8 billion, an objector to the Debtors' RMBS Settlement Motion (the "Proposed Settlement"), and a member of the Official Committee of Unsecured Creditors (the "Committee")[1], hereby submits this joinder in support of The Official Committee of Unsecured Creditors to Debtors' Motion to Strike the Objection and Exclude the Evidence of The Official Committee of Unsecured Creditors in Opposition to the RMBS Trust Settlement [Docket No. 3721] (the "Objection").  For its joinder to the Objection, FGIC respectfully represents as follows:

**JOINDER**

More than five months after they were first served with the Committee's objection to the Proposed Settlement, and just weeks before trial, the Debtors now ask this Court to use its "equitable powers" under Section 105 of the Bankruptcy Code to strike the Committee's objection to the Proposed Settlement, together with all evidence the Committee would offer in support of the same (the "Motion").[2]  The Debtors charge that three committee members—FGIC, MBIA, and Wilmington Trust—independently and irrevocably determined to oppose the Proposed Settlement before the Committee completed its investigation of the same, and that

---

[1] This joinder is filed by FGIC on its own behalf and not on behalf of the Committee or any of its other members.

[2] As the Committee explains in the Objection, the Debtors' motion is not a proper motion in limine.  "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotations omitted).  The Debtors' motion, which attacks the Committee's standing to object based on the alleged conflict of three of its members, is an untimely dispositive legal motion.  The Debtors were required to raise the subject matter addressed in this motion in their Reply to the Committee's objection.  They did not.  The Court can and should deny the motion on this ground alone.

these allegedly premature determinations somehow tainted the Committee's (unanimous) decision—made months later—to object to the Proposed Settlement. The Debtors' allegations are devoid of factual support, evidentiary support or legal merit. FGIC hereby joins in the Committee's Objection, and requests that the Court deny the Motion.

FGIC will not burden the Court with additional briefing on the merits or rectitude of the Debtors' last-ditch effort to advance the Proposed Settlement. The Committee has aptly addressed these issues in the Objection, to which FGIC joins. Rather, FGIC will focus its remarks solely on the Debtors' unsubstantiated allegations against it. As explained in the Objection, the Debtors only "evidence" of FGIC's alleged ill-intent are certain May 25, 2012 letters that FGIC sent to the trustees of securitization trusts it insured, preliminarily directing them not to take any action with respect to the Proposed Settlement. The Debtors allege that somehow these letters establish that FGIC breached its fiduciary duty to the Debtors' unsecured creditors when it allegedly irrevocably decided—before the Committee commenced discovery on the yet-to-be-filed motion to approve the Proposed Settlement—to oppose the Proposed Settlement. The Debtors' characterization of the May 2012 letters, and the breach of duty these letters supposedly evidence, is wildly off base.

As an initial matter, the Debtors' objection is premised on a misunderstanding of applicable law. The Debtors assert that because FGIC purportedly decided to object to the Settlement in its personal capacity long before the Committee completed its own independent assessment of the same, FGIC could not have been acting within the scope of its fiduciary duties as a Committee member when it voted to object to the Settlement. Putting aside for the moment the truth (or lack thereof) of the Debtors' allegations against FGIC, it is universally recognized that a committee member may take personal business positions that are different than its position

as a committee member, and that doing so will not amount to a breach of its duties to unsecured creditors. *In re American Federation of Television and Radio Artists*, 30 B.R. 772, 776. *In re El Paso Refinery, L.P.*, 196 B.R. 58, 75 ("[C]ommittee members must have some latitude to conduct their own business affairs, make business decisions, pursue business opportunities and the like, without fearing that they must disclose and justify every business choice they make which could conceivably have an effect on other members of the committee."); *see also* Objection at 6.[3]  Thus, under this standard, FGIC would have been well within its rights as a committee member to make an immediate personal business decision to oppose the Proposed Settlement—end of story.

      Fundamentally, however, the Debtors' allegations regarding and characterizations of the May 2012 letters bear no resemblance to reality.  Read on their face, FGIC's May 2012 limited direction letters were delivered for the sole purpose of preventing the trustees from taking precipitous action—without regard to FGIC's direction rights under the trust documents—before FGIC (and, for that matter, most other unsecured creditors) had the opportunity to carefully review and evaluate the Proposed Settlement.  The letters specifically requested from the trustees any additional information they received regarding the Proposed Settlement, demonstrating FGIC's intent to continue to evaluate the Proposed Settlement as new information came in.  And the letters further indicated that FGIC would provide the trustees with direction on a "more informed basis," indicating that FGIC viewed its May 2012 direction as an interim—rather than final—direction.  Far from demonstrating that FGIC had formed a final opinion on the merits of

---

[3] The fact that FGIC may believe that the Settlement is not in its business interest does not, as a legal matter, preclude it from participating in Committee deliberations with respect to the same.  It is "universally recognized" that inter-creditor conflicts are inherent in any creditors' committee.  *In re Sharron Steel Corp.*, 100 B.R. 767, 777 (Bankr. W.D. Pa. 1989); *In re Baldwin-United Corp.*, 45 B.R. 375, 376 (Bankr. S.D. Ohio 1983) (conflicts among creditors are inherent in all bankruptcy cases; in complex cases they are inevitable).

the Proposed Settlement at the time they were sent, the direction letters show that FGIC planned to conduct a more extensive investigation and evaluation of the Proposed Settlement.

FGIC did just that. In light of the Proposed Settlement's (1) the size and importance to the overall resolution of these cases, (2) potential impact on the Debtors' estates and creditor recoveries, and (3) the potential negative impact on FGIC's claims and interests relating to the trusts it insured, FGIC went on to conduct a costly, in-depth investigation of the Proposed Settlement. FGIC engaged its own bankruptcy counsel. It participated in the Committee's discovery. It propounded its own discovery. And it engaged experts to evaluate both the value of the Proposed Settlement and the process by which that settlement was reached. Only after its independent investigation was fully complete—an independent investigation made necessary by the fact that FGIC did not, and could not, control the Committee's decision regarding the ultimate wisdom of the Proposed Settlement—did FGIC definitively decide to oppose the settlement, at which point it prepared and filed an independent objection. FGIC's substantial expenditure of time, effort and financial resources investigating the merits of the Proposed Settlement belies the Debtors' fundamental claim that FGIC rushed to judgment.

Although FGIC and the Committee are ultimately aligned in their opposition to the Proposed Settlement, FGIC would have been well within its rights to object even if the Committee had voted to consent. And FGIC could also have determined that the settlement was favorable to the Estate, but not to the particular trusts that FGIC insured. FGIC therefore could have voted as a committee member to approve the settlement, and still object as an individual creditor. All of these options were proper and appropriate.

The facts set forth herein and in the Committee's Objection bear out that FGIC acted well within the scope of its fiduciary duties as a committee member when investigating, considering

and voting upon matters relating to the Proposed Settlement.  There is no basis for this Court to strike the Committee's objection to the same.  FGIC requests that the Motion be denied.[4]

Dated: May 14, 2013

/s/ Richard L. Wynne
Richard L. Wynne
Howard F. Sidman
JONES DAY
222 East 41st Street
New York, NY  10017.6702
Telephone:     212-326-3939
Facsimile:     212-755-7306

Carl E. Black
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114.1190
Telephone:     216-586-3939
Facsimile:     216-579-0212

*Attorneys for Creditor*
*Financial Guaranty Insurance Company*

---

[4] FGIC reserves the right to amend, supplement, alter, or modify this joinder, and FGIC reserves all rights to be heard before the United States Bankruptcy Court, Southern District of New York with respect to the Motions.