Hearing Date and Time: May 23, 2013 at 10:00 a.m. (prevailing Eastern Time)

Gregory M. Petrick
Jonathan M. Hoff
Ingrid Bagby
Jason Jurgens
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

-and-

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

*Attorneys for MBIA Insurance Corporation*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | : | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| | : | |
| **RESIDENTIAL CAPITAL, LLC**, *et al.*, | : | **Case No. 12-12020 (MG)** |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |

---------------------------------------------------------------x

**MBIA'S RESPONSE AND OPPOSITION TO THE DEBTORS' MOTION
IN LIMINE TO STRIKE THE OBJECTION AND EXCLUDE THE
EVIDENCE OF THE OFFICIAL COMMITTEE OF UNSECURED
<u>CREDITORS IN OPPOSITION TO THE RMBS TRUST SETTLEMENT</u>**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

MBIA Insurance Corporation ("***MBIA***"), an unsecured creditor of the debtors in the above-captioned chapter 11 cases (the "***Debtors***") and a member of the Official Committee of Unsecured Creditors (*the* "***Committee***") respectfully submits this response and opposition to the Debtors' Motion *In Limine* To Strike The Objection And Exclude The Evidence Of The Official Committee Of Unsecured Creditors In Opposition To The RMBS Trust Settlement (the "***Debtors' Motion***").

1. The crux of the Debtors' Motion is that MBIA and other creditors suffered from conflicts that disabled them from being involved with evaluating the proposed settlement that is the subject of the Debtors' pending Rule 9019 motion, and that MBIA and those other creditors strong-armed the Committee's attorneys – Kramer Levin Naftalis & Frankel LLP ("***Kramer Levin***") – into preparing the Objection Of The Official Committee Of Unsecured Creditors To The Debtors' Motion Pursuant To Fed. R. Bankr. P. 9019 For Approval Of The RMBS Trust Settlement Agreements, dated December 3, 2012 (the "***Committee's Objection***"). The Debtors' Motion is frivolous.

2. The Debtors' fraudulently induced MBIA to issue insurance policies under which MBIA has paid claims to date in excess of $1.6 billion to eight of the securitization trusts for the benefit of their certificate holders who purchased securities. As such, MBIA is one of the Debtors' largest creditors. Its selection to the Committee was warranted.

3. As a member of the Committee, MBIA had every right to express its views about the reasonableness and fairness of the proposed settlement that is the subject of the upcoming Rule 9019 hearing. *See, e.g., Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 100 (Bankr. S.D.N.Y. 2002) ("Every member of the Committee is, by definition, a

creditor. Thus, he is [in] competition with every other creditor for a piece of a shrinking pie. He may assert his rights as a creditor to the detriment of the creditor body as a whole without running afoul of his fiduciary obligations."); *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.)*, 210 B.R. 508, 516-17 (Bankr. S.D.N.Y. 1997) (holding that creditor committee members do not owe fiduciary duties to individual creditors or the estate); *In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr. S.D.N.Y. 1996) ("An entity need not be disinterested to qualify for committee membership."); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) ("The [fiduciary] duty extends to the class as a whole, not to its individual members."), *aff'd,* 140 B.R. 347 (S.D.N.Y. 1992); *Pan Am Corp. v. Delta Air Lines, Inc.,* 175 B.R. 438, 514 (S.D.N.Y. 1994) (no fiduciary duty owed to estate).

4.  Committees and their members frequently and properly take positions adverse to particular creditors, object to their claims and sometimes even sue them. *See In re Granite Partners*, 210 B.R. at 517, *citing, In re Circle K Corp.*, 199 B.R. 92, 99-100 (Bankr. S.D.N.Y. 1996); *In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr. D. Conn. 1989) ("It is axiomatic that each unsecured creditor has a conflict with every other unsecured creditor in the sense that absent a 100% distribution, the elimination or reduction of any such claim will benefit all others. That is not an impermissible conflict of interest which would bar appointment to or justify removal from a creditors' committee, nor does an impermissible conflict arise merely because one of the members of the committee has an adverse interest to that of the others.").[1]

---

[1]  In support of their motion, the Debtors' rely on *In re Johns-Manville Corp.*, 26 B.R. 919, 924 (Bankr. S.D.N.Y. 1983). That reliance is misplaced. Notwithstanding the Debtors' suggestion to the contrary, *Johns-Manville* "does not hold that all disputed claims create a conflict of interest justifying exclusion from the creditors' committee. This would result in a 'per se' conflict of interest rule resulting in exclusion from the committee of any claimant involved in litigation or who could potentially be involved in litigation against the debtor." *In re Richmond Tank Car Co.*, 93 B.R. 504, 507-08 (Bankr. S.D. Tex.

Consequently, as the Debtors themselves concede, MBIA and the other members of the Committee were "free to pursue their rights as creditors. . . ." Debtors' Motion at 7.

5. A party alleging a breach of fiduciary duty on the part of a member of an official creditors' committee "must allege (and ultimately prove) facts showing wilful misconduct or *ultra vires* activities." *In re Granite Partners L.P.*, 210 B.R. at 517. Even then, as the Debtors concede, a concern only arises if a committee member "act[s] *through the Committee* in a way that would promote *only that member's interests*." Debtors' Motion at 8 (emphasis added). The Debtors do not (and cannot) allege, let alone prove, the willful misconduct or *ultra vires* activities that could form the predicate for a challenge to MBIA's service as a member of the Committee with respect to the Committee's Objection or otherwise. Indeed, the Debtors cannot seriously contend that MBIA exerted improper influence over the Committee to "promote only [its] interests." MBIA was not the only creditor that objected to the settlement. As the Debtors' Motion recognizes, other members of the Committee voted to object the proposed settlement, as well. Non-committee members also objected to the proposed settlement. *See* Triaxx Objection to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements [Dkt. # 2308].

6. In any event, the entire premise of the Debtors' Motion is false. Not only did MBIA not improperly influence the Committee's Objection, MBIA *expressly disassociated itself* from the arguments and basis underlying the Committee's Objection. *See* Objection Of MBIA Insurance Corporation To Debtors' Motion Pursuant To Fed. R. Bankr. P. 9019 For Approval Of

---

1988) (discussing *Johns-Mansville*); *see also In re Enduro Stainless, Inc.*, 59 B.R. 603, 605 (Bankr. N.D. Ohio 1986).

The RMBS Trust Settlement Agreements, dated December 3, 2012 [Dkt. # 2810] (the "**MBIA Objection**"), at 1, n.1. The Debtors' Motion cannot be reconciled with this indisputable fact.[2]

7.   As a result, the Debtors are left resting their contention that MBIA suffered from a disabling conflict on false (or, at best misleading) assertions. In particular, the Debtors' make the baseless suggestion that MBIA issued some blanket instruction to the trustees for the 392 Settlement Trusts not to consider the proposed settlement, all in an effort to protect MBIA's interests above all else. *See* Debtors' Motion at 9 ("MBIA, for its part, did not even believe the trustees should consider the 9019 Motion"). The Debtors' assertion is belied by the facts, and is otherwise frivolous.

8.   The Debtors submit absolutely no evidence that MBIA took any action in its capacity as a member of the Committee that supports the Debtors' scurrilous allegations. Instead, the Debtors point to the fact that MBIA, in its capacity as insurer, sent correspondence to the trustees for the eight securitization trusts *for which MBIA provided insurance*, and to which MBIA paid over $1.6 billion in claims for the benefit of their certificate holders. MBIA's direction letters to the trustees for the MBIA-insured securitization trusts do not support the Debtors' thesis that MBIA was a conflicted Committee member that exerted improper influence over the Committee's Objection.

9.   As the insurer paying claims for the benefit of certain certificate holders, MBIA was entitled under the relevant transaction documents to direct the relevant trustees in certain

---

[2]   The dynamic between MBIA and the Committee during discovery concerning the proposed settlement also is inconsistent with the premise of the Debtors' Motion. For example, as the Debtors know, MBIA objected to questions posed by the Committee's attorneys during depositions. *See, e.g.*, Marano Tr. at 113; Sillman Tr. at 87:13-15; 88:7; 89:18; 90:12; 91:20; 93:14; 93:20; 97:22; 143:4; 144:25; 159:19; 177:3; 215:19; 216:7; 216:19; 217:8; 217:17; 280:5. MBIA noted that it was not allocated adequate time to ask questions at depositions in light of the length of Committee counsel's examination. *See, e.g.*, Sillman Tr. at 300:10-23.

matters.  Once MBIA began to pay claims, the trustees for the securitization trusts MBIA insures were required to act for the benefit of MBIA.  Moreover, because MBIA had paid claims, any recovery by the eight MBIA-insured securitization trusts under the proposed settlement agreement would pass through to MBIA pursuant to the terms of the relevant transaction documents.  The direction letters simply reflect MBIA's instruction that the trustees for the MBIA-insured securitization trusts not to take any action with respect to the proposed settlement that would prejudice MBIA's rights, and to not incur any unnecessary expense in evaluating the proposed settlement with respect to the securitization trusts insured by MBIA.[3]  *See, e.g.*, Exhs. A, B, C and D (July 23, 2012 direction letters from MBIA to The Bank of New York Mellon Trust Company, N.A. and U.S. Bank National Association.

10. For all of these reasons, there is no merit to the Debtors' fanciful thesis that Kramer Levin and the Committee were marionettes, and MBIA and other members of the Committee were puppeteers.

11. If the Debtors truly believed that their hypothesis had any validity, they should have pursued relief from the Court once they formed their view.  A motion *in limine* seeking to strike the Committee's objection on the eve of the Rule 9019 hearing, made months after the

---

[3] Pursuant to the relevant transaction documents, the trustees can arguably retain attorneys and consultants at the expense of the respective securitization trusts.  As long as MBIA continues to make claims payments to certain securitization trusts for the benefit of their certificate holders, the cost of those attorneys and consultants is effectively borne by MBIA.  There was no reason for MBIA to pay for two analysis of the proposed settlement, which is why it issued its direction to the trustees for the MBIA-insured securitization trusts.  *See, e.g.*, Exhs. A-D ("As such, it is the Credit Enhancer's position that it would not be reasonable for you to incur any costs or expenses in evaluating any such settlement or compromise offers and, therefore, the Credit Enhancer will not reimburse you for any such costs or expenses.").

Committee's Objection was filed, is certainly not the proper procedural mechanism to make such serious allegations.[4]

12. MBIA reserves its right to supplement, amend, alter or modify this response and opposition to the Debtors' Motion. MBIA further reserves all rights to be heard before the United States Bankruptcy Court, Southern District of New York with respect to the Debtors' Motion.

---

[4] In support of the proposition that "a bankruptcy court may invoke section 105 of the Bankruptcy Code to strike pleadings, the Debtors cite to a single Second Circuit decision – *In re Zarnel*, 619 F.3d 156, 171 (2d Cir. 2010). The Debtors grossly misread and distort the Second Circuit's holding in *Zarnel*. In *Zarnel*, the Second Circuit *reversed* the lower courts, which had struck three individual debtors' voluntary chapter 7 and 13 petitions. In doing so, the Second Circuit expressly declined to decide whether striking the pleadings at issue was appropriate. Instead, the Second Circuit remanded the issue to the Bankruptcy Court (*id.* at 172), after noting that "motions to strike pleadings have 'fallen from favor.'" *Id.* at 161. On remand, the Bankruptcy Court elected not to strike the pleadings. *See* Order Reopening Case and Dismissing Case, *In re Zarnel,* Case No. 06–35189 (Bankr. S.D.N.Y. Oct. 5, 2010) [Docket No. 34].

WHEREFORE, MBIA respectfully requests that the Court enter an Order ***denying*** the Debtors' Motion.

Dated:   New York, New York
         May 14, 2013

        CADWALADER, WICKERSHAM & TAFT LLP

By    /s/ Jonathan M. Hoff
Gregory M. Petrick
Jonathan M. Hoff
Ingrid Bagby
Jason Jurgens
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

-and-

Mark C. Ellenberg
CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400

*Attorneys for MBIA Insurance Corporation*