**Hearing Date: May 23, 2013 at 2:00 p.m. (prevailing Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Kristen A. Coleman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| RESIDENTIAL CAPITAL, LLC, et al., | : |
| | : |
| | : Case No. 12-12020 (MG) |
| Debtors. | : |
| | : Jointly Administered |
| | : |

**REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN FURTHER SUPPORT OF ITS MOTION TO PRECLUDE THE TESTIMONY OF TIMOTHY DEVINE**

**Preliminary Statement**

The Debtors and AFI must believe they are still engaged in a discovery dispute over their right to claim privilege. Their responses on this motion are devoted to defending their assertion of privilege with respect to Timothy Devine's communications with ResCap and to proving their success in avoiding a waiver. But that train has left the station. The proposed testimony by Mr. Devine should be precluded precisely because the Debtors and AFI *did* assert privilege concerning the very matters that the testimony would address. Whether or not privilege was properly invoked or any waiver of privilege occurred, the result is the same.

**Argument**

**HAVING CLAIMED PRIVILEGE WITH RESPECT TO MANY OF
MR. DEVINE'S COMMUNICATIONS WITH RESCAP CONCERNING
THE PROCESS UNDERLYING THE RMBS SETTLEMENT, THE DEBTORS
AND AFI CANNOT NOW HAVE MR. DEVINE TESTIFY ABOUT OTHER
SUCH COMMUNICATIONS IN AN EFFORT TO SUPPORT THAT PROCESS**

The Debtors and AFI sought to navigate a fine line in determining which of Mr. Devine's communications with ResCap they would shield from discovery based on privilege. They claimed Mr. Devine represented both of them while they shared the same integrated legal department, and that his communications with ResCap during that period were privileged. According to AFI, the dual representation continued until some unspecified time when "ResCap approached its bankruptcy filing." AFI Opp. Br. at 6. The Debtors were somewhat less vague, contending that the dual representation stopped "beginning in April 2012" or "by April 2012." Debtors' Opp. Br. at 2, 4.

In their responses here, however, the Debtors and AFI attempt to equate timing with subject matter, arguing that Mr. Devine should be free to testify to his role in the RMBS Settlement process because privilege was supposedly never asserted with respect to any of his

communications with ResCap concerning that process. Thus, the Debtors say that privilege was "not assert[ed] with respect to any of Mr. Devine's communications with [them] relating to the negotiation of the RMBS settlement because, beginning in April 2012, Mr. Devine no longer represented [them] with regard to those negotiations." Debtors' Opp. Br. at 2. AFI maintains that it "did *not* assert privilege over [Mr. Devine's] intra-party communications and documents underlying the RMBS Trust settlement negotiations" or as to Mr. Devine's role in "the facts and circumstances" comprising those negotiations. AFI Opp. Br. at 2 (emphasis in original). The plain implication of these statements, of course, is that the entire settlement process occurred after Mr. Devine ceased representing both AFI and the Debtors jointly.

But that is not the fact. Negotiations concerning the RMBS Settlement began in November 2011, five months before Mr. Devine purportedly removed his hat as the Debtors' lawyer. And the record establishes that, contrary to the Debtors' and AFI's assertions, privilege was invoked to withhold from production numerous communications between Mr. Devine and ResCap concerning the settlement negotiations throughout the ensuing period, including those occurring after April 1, 2012. *See, e.g.*, ResCap Suppl. Privilege Log [Dkt. No. 2906, Exh. D] #472 (12/5/11 email from Devine to Hamzehpour, Ruckdaschel and others "regarding discussions with K. Patrick"), #483 (1/5/12 email from Hamzehpour to Devine "RE: Draft Responses to Kathy Patrick"), #487 (1/27/12 email from Devine to Marano, Hamzehpour, M. Carpenter [AFI's CEO] and others "regarding K. Patrick negotiations"), #506 (3/7/12 email from Devine to Hamzehpour and Ruckdaschel regarding Talcott Franklin), #523 (3/30/12 email from Devine to Hamzehpour, Ruckdaschel and others "RE: RMBS Pool Issues/Gibbs & Bruns"), #532 (4/12/12 email from Hamzehpour to Devine "RE: Kathy Patrick"), #643 (1/9/12 email from D. Hagens to Devine and Ruckdaschel "regarding strategy for negotiations with Kathy Patrick"),

2

#650 (1/27/12 email from Devine to Ruckdaschel and D. Hagens "regarding resolution of claims brought by Kathy Patrick and Talcott Franklin"), #664 (3/9/12 email from Devine to Ruckdaschel, Cancelliere, and others "regarding analysis of claims brought by Kathy Patrick and Talcott Franklin"); AFI Privilege Log [Dkt. No. 2053-1, Exh. C] #'s 216-217 (4/26/12 email chain among Devine, Cancelliere, Ruckdaschel, Hamzehpour and others "regarding joint strategy for RMBS settlement").

Privilege was also invoked to withhold from production more than 30 instances in which Mr. Devine made presentations to or communicated with the ResCap Board concerning RMBS litigation and potential liability. AFI Privilege Log [Dkt. No. 2053-1, Exh. C] #'s 17-19, 89, 94, 100-103, 397, 399, 400, 425, 427, 429, 430-38, 443, 445, 449, 451, 452, 454-456, 462, 519, 546. *See* Debtors' Opp. Br. at 3.

The assertion of privilege with respect to Mr. Devine's communications with ResCap was prevalent during Mr. Devine's deposition as well. The transcript is replete with instances where Mr. Devine was instructed (or chose on his own) not to answer questions about his communications with ResCap concerning settlement negotiations and strategy. Some of those instructions related even to emails sent by Mr. Devine himself that were produced in discovery. For example, a December 7, 2011 email from Mr. Devine to ResCap personnel referenced his "step-by-step" plan for dealing with Ms. Patrick, yet Mr. Devine was instructed not to answer a question seeking to ascertain what that plan entailed. Devine Tr. [Dkt. 3617, Exh. A] at 31-32. Similarly, Mr. Devine was asked a series of questions about an email he sent later in December 2011 to Ms. Hamzehpour that again referenced his plan for dealing with Ms. Patrick, and he was repeatedly instructed not to answer, or refused to answer, the questions. *Id.* at 41-44.

3

The Debtors would now propose to offer as evidence "communications between Mr. Devine, representing Ally, and the lawyers representing ResCap . . . . that go to the negotiating strategy, settlement meetings, data about exposure, legal defenses, defect rates, et cetera." Debtors' Opp. Br. at 10 (quoting Apr. 11, 2013 Hr'g Tr. at 28:7-14 [Dkt. No. 3445]). AFI proposes to offer Mr. Devine's testimony "regarding the facts and chronology of the RMBS Trust settlement negotiations and the extent and character of his participation in the process." AFI Opp. Br. at 2. But these are the very subjects on which the Debtors and AFI blocked discovery from Mr. Devine based on claims of privilege. The reasoning expressed in the Court's April 12, 2013 preclusion order thus applies squarely here, and should bar Mr. Devine's testimony concerning any of these matters.

## Conclusion

For these reasons, as well as those set forth the Committee's opening brief, the motion should be granted.

Dated: New York, New York
     May 20, 2013

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Kenneth H. Eckstein
Kenneth H. Eckstein
Philip S. Kaufman
Adina C. Levine
Kristen A. Coleman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee of Unsecured Creditors*

4