# EXHIBIT 1

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------x

In Re: Cae No:

RESIDENTIAL CAPITAL, LLC, et. al,      12-12020(MG)

Debtors.

-----------------------------------x


VIDEOTAPE DEPOSITION OF TIMOTHY DEVINE

New York, New York

November 19, 2012

10:17 a.m.


Reported by:
ERICA L. RUGGIERI, RPR
JOB NO: 27973

13

1              TIMOTHY DEVINE

2    witness, having been duly sworn by a

3    Notary Public, was examined and testified

4    as follows:

5    EXAMINATION BY

6    MR. KAUFMAN:

7        Q.    Good morning, Mr. Devine.

8        A.    Good morning.

9        Q.    You are the chief litigation

10   counsel with Ally Financial, Inc.,

11   correct?

12       A.    Chief counsel litigation at Ally

13   Financial, Inc.

14       Q.    And how long have you held that

15   position?

16       A.    I took that position in January

17   of 2011.

18       Q.    Do you report directly to AFI's

19   general counsel William Solomon?

20       A.    Yes.

21       Q.    And have you reported

22   Mr. Solomon since you took the position

23   you now hold?

24       A.    Yes.

25       Q.    In the hierarchy of AFI's legal

359

```
 1              TIMOTHY DEVINE

 2    describe as the RMBS or put back

 3    litigation, and I'd include in that

 4    definition both the monoline claims that

 5    were in litigation and any put back claims

 6    that -- that might have been asserted?

 7         A.    The first substantial contact I

 8    had within my job duties with the mortgage

 9    business was in the summer of 2010 when

10    the FHFA propounded 64 subpoenas across

11    the industry and I was asked to coordinate

12    the response to the subpoenas that were

13    issued to the company.

14         Q.    Did you supervise outside

15    counsel with respect to the monoline

16    litigation either MBIA or FGIC litigation?

17         A.    Have I done that?

18         Q.    Yes.

19         A.    Yes.

20         Q.    When you were representing AFI

21    from the time of the October letter that

22    Ms. Patrick sent to the signing of the

23    settlement agreement, were you solely

24    representing AFI or were you also

25    representing ResCap during that time
```

360

```
1              TIMOTHY DEVINE

2    period from October forward?

3         A.    Well, we should probably be

4    careful with regard to what you mean by

5    representing.  The -- as I recall, the

6    first communication from Kathy Patrick

7    came in to Bill Solomon in his capacity as

8    general counsel of Ally Financial, Inc.

9    He responded by indicating to Ms. Patrick

10   that Ally Financial, Inc. did not have

11   exposure of the variety that she wanted to

12   talk about settling.  And referred her to

13   Tammy Hamzephour, general counsel for

14   ResCap.

15            What -- my participation in

16   connection with meeting with Ms. Patrick,

17   I think Mr. Sheeren was there at the first

18   meeting in Minnesota, I don't recall

19   exactly.  But in any event, I was there in

20   my capacity as chief counsel for

21   litigation for ResCap, given that

22   Ms. Patrick purported to represent clients

23   who purported to have rep and warrant

24   essentially contract claims against the

25   contracting parties, all of whom were
```

361

1                     TIMOTHY DEVINE

2      within the ResCap structure and none of

3      whom were within the Ally structure.

4          Q.    So at that time in that meeting,

5      if I understand, it took place sometime

6      between October, November, December,

7      sometime in 2011, the last quarter?

8          A.    I don't recall when it took

9      place.  I think we have had some testimony

10     on it today.  If there's a document we

11     could refer to it.

12         Q.    I'm going to try to do this

13     without -- without taking the time to go

14     back to the documents.

15         A.    Okay, thank you.

16         Q.    So initially you were

17     representing ResCap in what I will call

18     the Kathy Patrick negotiations with

19     respect to her claims?

20         A.    Well --

21               MR. BRYAN:  Objection to form.

22         A.    I -- I understand that you would

23     call them negotiations.  So I think that

24     term is going to end up being understood

25     in a number of different ways.  What --

362

1              TIMOTHY DEVINE

2    what went on for some period of time with

3    Kathy Patrick was an exchange of

4    communications designed to understand the

5    nature of her representation, who her

6    clients were, what kind of claims they

7    were purporting to make.  And so to the

8    extent that that is a prelude to or a part

9    of or a type of negotiation, yes.  So for

10   a period of time I was supporting those

11   discussions in my capacity in support of

12   the ResCap entities.

13        Q.    You understood that Ms. Patrick

14   was asserting that ResCap owed her clients

15   a substantial amount of money?

16        A.    Yes.

17        Q.    So you -- did she at some

18   point -- what was the first, her first

19   demand or her first claim that she made

20   against ResCap, do you recall?

21        A.    As I sit here today, I don't

22   recall her first demand.

23        Q.    Did she ask for $10 billion?

24        A.    Now, you are talking about once

25   the discussions started to take place for

363

1              TIMOTHY DEVINE

2      a compromise of those claims within the

3      context of a ResCap filing.

4          Q.   At any point?

5          A.   Yeah.  So I believe that she did

6      at one point in the negotiations but now

7      this was within the context of a potential

8      ResCap filing at which time I was not

9      representing ResCap in connection with a

10     potential resolution of claims against the

11     ResCap estate.

12         Q.   Okay.  So if I understand your

13     testimony correctly, you initially started

14     out representing ResCap and then at some

15     point you were no longer representing

16     ResCap.  Could you explain to me when your

17     role and responsibility changed?

18         A.    I think you've slightly

19     misunderstood but I don't blame you.  At

20     some point -- because it wasn't entirely

21     clear, right.  At some point -- look, when

22     we started the discussions with Kathy

23     Patrick, I was representing the ResCap

24     entities in connection with the assertion

25     that they had -- that Kathy Patrick did

364

1               TIMOTHY DEVINE

2    represent clients who did or did not under

3    the relevant documents have contract

4    claims against ResCap.  And that was

5    natural because I had been dealing with

6    that kind of assertion of claim, although

7    not by investors and trustees but rather

8    by the monolines against the ResCap

9    entities theretofore.

10              At some point ResCap began to

11   consider a Chapter 11 restructuring.  I

12   did not represent ResCap at all in

13   connection with this Chapter 11

14   restructuring, unless you consider the

15   nature of our discussions according to the

16   common interest or joint defense privilege

17   in which case that's why I don't blame you

18   for misunderstanding the nature of what I

19   just talked about.  But so, yes, I did

20   represent ResCap in connection with the

21   sort of bilateral claim of Kathy Patrick's

22   clients against the ResCap entities and

23   rep and warrant.  Once the context of the

24   restructuring became a part of that

25   dialogue, ResCap was represented by Gary

365

1              TIMOTHY DEVINE

2    Lee of MoFo.  I never represented ResCap

3    on a bankruptcy related resolution.  At

4    least unless you -- as I say, I did

5    continue to advise ResCap in connection

6    with plain sort of legal analysis on rep

7    and warrant issues but not so much as

8    would be implicated in connection with the

9    filing.

10        Q.    Thank you for that and let me

11   try to make sure I understand correctly.

12   To try to summarize.  In the beginning of

13   from October for some period of time in

14   the initial stages that you've described

15   as essentially information gathering

16   stages, you were representing ResCap.  By

17   the end, by the April and May time period

18   that we have looked at a variety of

19   e-mails by that time period you were no

20   longer representing ResCap, you would have

21   solely been representing AFI, is that

22   correct, am I bracketing the change in

23   role correctly?

24        A.    No.  I think you are missing one

25   part of it.  But it's -- it's

366

1              TIMOTHY DEVINE

2     directionally correct.  So first of all,

3     the difficulty with the word

4     "representing" given that there were no

5     pleadings in the matter, nobody appeared

6     as counsel of record, et cetera.  So let's

7     for a moment agree that the term

8     "representing" is somewhat subject to a

9     variety of definitions and understandings.

10         Q.    I would use representing as

11    representing in the context of the

12    negotiations.  Representing a client, be

13    it AFI or ResCap, in dealing with

14    Ms. Patrick or the Talcott Franklin group

15    that came in at the end.  If you

16    understand that.

17         A.    Uh-hum.  So there -- there were

18    certainly throughout the relevant period

19    transactions and discussions,

20    communications -- transactions meaning

21    information exchange, et cetera, between

22    the ResCap parties and Kathy Patrick on

23    the one hand or Talcott Franklin on the

24    other, which I assisted and advised ResCap

25    in accomplishing.

367

1                    TIMOTHY DEVINE

2              At the same time I was

3    representing -- I was chief counsel to

4    Ally as well so of course I was advising

5    both ResCap and Ally in connection with

6    the -- the claims that Kathy Patrick

7    purported to make on behalf of those

8    clients.

9         Q.    When you were representing

10   ResCap in the initial stages of this

11   discussions and negotiations with

12   Ms. Patrick, who did you report to at

13   ResCap?

14        A.    I certainly included Tammy

15   Hamzephour in any discussions.  She was

16   general counsel to the ResCap entities.  I

17   had conversations with and gave advice to

18   and took input from a variety of business

19   clients.

20        Q.    So in addition to Ms. Hamzephour

21   you spoke to other not -- not in-house

22   counsel but other business representatives

23   at ResCap?

24        A.    Yes.

25        Q.    Do you recall who that would be

376

```
 1

 2                    C E R T I F I C A T I O N

 3        STATE OF NEW YORK        )

 4                                 ) ss.:

 5        COUNTY OF NEW YORK       )

 6

 7              I, ERICA L. RUGGIERI, RPR and a

 8         Notary Public within and for the State

 9         of New York, do hereby certify:

10              That I reported the proceedings

11         in the within-entitled matter, and

12         that the within transcript is a true

13         record of such proceedings.

14              I further certify that I am not

15         related by blood or marriage, to any

16         of the parties in this matter and

17         that I am in no way interested in

18         the outcome of this matter.

19              IN WITNESS WHEREOF, I have

20         hereunto set my hand this 20th day

21         of November, 2012.

22

23

24                    ERICA L. RUGGIERI, RPR

25
```