MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone:     (213) 683-9100
Facsimile.     (213) 687-3702
Thomas Walper (Pro Hac Vice)
Seth Goldman (Pro Hac Vice)
Daniel J. Harris

*Counsel for Berkshire Hathaway Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## NOTICE OF MOTION

TO:    All parties identified on the Monthly Service List (as defined in the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered by this Court on May 23, 2012 [Docket No. 141]):

**PLEASE TAKE NOTICE** that, on May 22, 2013, Berkshire Hathaway Inc. ("Berkshire") filed the *Motion of Berkshire Hathaway Inc. to Unseal the Examiner's Report Pursuant to 11 U.S.C. § 107(a)* (the "Motion to Unseal").

**PLEASE TAKE FURTHER NOTICE** that objections ("Objections") to the Motion to Unseal must be filed with the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004 and served so as to be received by the following parties no later than **4:00 p.m. (Prevailing Eastern Time) on June 3, 2013,** or such

date as otherwise ordered by the Court: (i) counsel for Berkshire, Munger, Tolles & Olson, LLP, 355 South Grand Avenue, 35th Floor, Los Angeles, California 90071 (Attn: Thomas Walper, Seth Goldman, and Daniel Harris); (ii) counsel for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attn: Larren M. Nashelsky, Gary S. Lee, Todd M. Goren and Norman S. Rosenbaum); (iii) counsel to the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, (Attn: Kenneth H. Eckstein and Douglas H. Mannal); (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attn: Brian S. Masumoto); (v) the Office of the United States Attorney General; (vi) the Office of the New York Attorney General; (vii) the Office of the United States Attorney for the Southern District of New York; (viii) any other committee appointed in these cases; (ix) each of the Debtors' prepetition lenders, or their agents, if applicable; (x) each of the indenture trustees for the Debtors' outstanding notes issuances; (xi) counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attn: Richard M. Cieri); (xii) counsel to Barclays Bank PLC, as administrative agent for the DIP lenders, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Attn: Ken Ziman & Jonathan H. Hofer); (xiii) counsel for Nationstar Mortgage LLC, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Jessica C.K. Boelter); (xiv) the Internal Revenue Service; and (xv) the Securities and Exchange Commission.

**PLEASE TAKE FURTHER NOTICE** that any reply to objections ("Replies") shall be filed and served in the manner set forth above no later than **12:00 p.m. (Prevailing Eastern Time) on June 7, 2013,** or such date as otherwise ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that a hearing with respect to the Motion to Unseal will be held on **June 12, 2013 at 10:00 a.m. (Prevailing Eastern Time)**, or such date as otherwise ordered by the Court, before the Honorable Martin Glenn, in the United States Bankruptcy Court for the Southern District of New York, Courtroom No. 501, One Bowling green, New York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that only Objections and Replies made in writing and timely filed and received will be considered by the Court at such hearing. If you fail to respond in accordance with this notice, the court may grant the relief requested without further notice or hearing.

Dated: May 22, 2013

/s/ *Thomas Walper*
Thomas Walper (Pro Hac Vice)
Seth Goldman (Pro Hac Vice)
Daniel J. Harris

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone: (213) 683-9100
Facsimile: (213) 593-2810

*Counsel for Berkshire Hathaway Inc.*

**Proposed Hearing Date and Time:  June 12, 2013 at 10:00 a.m. (ET)**
**Proposed Objection Deadline:  June 3, 2013 at 4:00 p.m. (ET)**

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
Thomas B. Walper (Pro Hac Vice)
Seth Goldman (Pro Hac Vice)
Daniel J. Harris

*Counsel for Berkshire Hathaway Inc.*
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, et al.,<br><br>Debtors. | CASE NO.  12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

# MOTION OF BERKSHIRE HATHAWAY INC. TO UNSEAL
# THE EXAMINER'S REPORT PURSUANT TO 11 U.S.C. § 107(a)

Berkshire Hathaway Inc. ("Berkshire"), by and through its undersigned counsel, respectfully submits this motion ("Motion") for entry of an order to unseal the report of the Court-appointed examiner Arthur J. Gonzales ("Examiner's Report") that was filed under seal in the above-captioned bankruptcy cases of Residential Capital, LLC ("ResCap") and its affiliated debtors (collectively, with ResCap, the "Debtors") on May 13, 2013.  For the following reasons, the Examiner's Report should be unsealed and made publicly available to all creditors and parties in interest in these bankruptcy cases.

**PRELIMINARY STATEMENT**

1.      As one of the largest holders of ResCap's junior secured bonds, Berkshire continues to have a significant stake in the outcome of these cases.  Prior to the bankruptcy cases, Ally Financial Inc. ("Ally") and its affiliates entered into a series of transactions – comprising billions of dollars in asset transfers and intercompany financing – that transferred a substantial portion of ResCap's operating assets to Ally.  From the outset of these cases, the Debtors, Ally, the Official Creditors Committee and other significant creditor groups have pursued settlement discussions toward a comprehensive plan of reorganization that would include releases of the estates' claims against Ally and other potentially valuable causes of action.

2.      Against this backdrop, the Court authorized the appointment of an examiner in a memorandum opinion and order issued on June 20, 2012 ("Examiner Order," ECF Doc. # 454). The Examiner's Report was filed under seal on May 13, 2013.  The Court's supplemental order temporarily sealing the Examiner's Report provides that it may remain sealed until July 3, 2013 if the Debtors file a motion seeking approval of a plan support agreement on or before May 23, 2013 ("Supplemental Order," ECF Doc. # 3739).

3.      Key stakeholders have now announced that they reached a comprehensive agreement and intend to seek approval of a plan support agreement ("PSA"), which may further delay the public release of the Examiner's Report.

4.      The PSA may indeed represent a fair and good faith settlement between the Debtors and Ally and be in the best interest of creditors.  But without the benefit of the independent and comprehensive assessment of the Examiner's Report, creditors will be ill-equipped to evaluate the fairness of the PSA and any plan of reorganization that is based upon it.

Sealing the Examiner's Report deprives the creditors of the very benefit of appointing an examiner: an objective and independent assessment of the prepetition dealings between the Debtors and Ally that lie at the heart of these bankruptcy cases. Moreover, blocking access to the findings and conclusions of the Examiner's Report contravenes the statutory presumption and strong public policy in favor of open access to documents filed in bankruptcy cases. Because the Examiner's Report is critical to the ability of creditors and other stakeholders to evaluate the PSA and any plan of reorganization, Berkshire seeks an order granting public access to the report as soon as reasonably practicable.

## BACKGROUND

### A.   The Debtors' Prepetition Transactions with Ally

5.     At the date of the bankruptcy filings, together with their non-debtor affiliates, the Debtors were among the largest mortgage loan originators and servicers in the United States. The Debtors serviced approximately $373 billion of domestic residential mortgage loans and worked with 2.4 million homeowners across the United States. *Affidavit of James Whitlinger in Support of Chapter 11 Petitions and First Day Pleadings* ("First Day Aff.") ¶ 9.

6.     Like many other companies in the mortgage business, the Debtors were hit hard by the collapse of the residential mortgage market in 2008 and the recession that ensued. In an effort to disentangle itself from ResCap's liabilities, Ally and the Debtors engaged in no fewer than 20 transactions that ultimately resulted in, among other things, Ally's acquisition of ResCap's ownership stake in IB Finance Holding Company LLC, the direct holding company of Ally Bank (f/k/a GMAC Bank).

### B.    The Debtors' Bankruptcy Filing and Plan Support Agreements

7.     The Debtors filed for bankruptcy on May 14, 2012 ("Petition Date"). Consistent with their prepetition dealings, the Debtors sought to implement their reorganization effort through three plan support agreements that the Debtors entered into before the Petition Date with: (i) Ally, (ii) a minority group of junior secured noteholders, and (iii) certain institutional investors in the Debtors' residential mortgage-backed securities ("RMBS"). First Day Aff. ¶ 7, Ex. 8 ("Ally PSA"), Ex. 9 ("Junior Noteholder PSA"), and Ex. 10 ("RMBS PSA").

8.     The Ally PSA incorporated a so-called "settlement" of all claims against Ally relating to the Debtors. *Id*. Ex. 8. According to the Ally PSA, "the Debtors believe certain claims exist against Ally related to the corporate relationship between the Debtors and Ally, including with respect to certain transactions between the Debtors and Ally, including equitable subordination, debt recharacterization, fraudulent conveyance, avoidance liability under federal or state laws, and other causes of action under theories of veil piercing and alter ego liability." *Id*. at p. 2. Although it denies the Debtors' allegations, Ally agreed to pay $750 million for a release of all claims of the Debtors *and* any claims held by the Debtors' creditors or stakeholders relating to the Debtors. *Id*. § 2.1(a), 3(d).

9.     The other two plan support agreements affected lien priorities and established a maximum allowed claim for certain significant creditor constituencies. Specifically, under the Junior Noteholder PSA, Ally agreed to reorder lien priorities in exchange for the agreement of a minority of junior secured noteholders to support the Ally-backed plan. *See id*., Ex. 9, § 5.1. The RMBS PSA proposed to settle representation and warranty claims arising from the Debtors' residential mortgage backed securities by granting such claimants a maximum allowed claim of

$8.7 billion against the Debtors. *See* Ex. 10, § 4. We understand that all of the prepetition PSAs have expired.[1]

    C.    **The Examiner's Report**

10. On June 4, 2012, Berkshire moved for the appointment of an examiner to conduct a thorough and independent analysis of the facts and circumstances that led to the execution of the PSAs prior to the Petition Date ("Examiner Motion," ECF Doc. # 208). As described in the Examiner Motion, an impartial investigation and report on the Debtors' prepetition actions is appropriate to evaluate the Debtors' transactions with Ally, any claims that the Debtors may hold against their own officers and directors or Ally's officers and directors, and any claims that the Debtors propose to release as part of any plan of reorganization.

11. After a contested hearing, the Court ordered the appointment of an examiner on June 20, 2012. In the Examiner Order, the Court recognized that it would be impossible to evaluate the fairness of third-party releases in favor of Ally and others "[u]ntil an independent evaluation has been completed of any potential claims that would be released under a proposed plan[.]" Examiner Order at ¶ 16. On July 3, 2012, the Court appointed Arthur J. Gonzalez to serve as Examiner. (ECF Doc. # 674).

12. Following his appointment, the Examiner filed a comprehensive work plan that defined the scope of his investigation and projected completion date for the report. The investigation included interviews with more than 90 witnesses and the review of nearly nine million pages of documents. *Fourth Supplement to Work Plan of Arthur J. Gonzalez, Examiner* ¶ 2 (ECF Doc. # 3361.) The Examiner completed the report in early May and filed a notice of

---

[1] The Debtors have claimed that the junior unsecured bonds are undercollateralized, leaving the bondholders with a significant unsecured claim. The holders of the junior unsecured bonds have vigorously opposed the Debtors' position.

5

his intent to file it by May 10, 2013. (ECF Doc. # 3654). Given the progress in the parallel mediation with certain creditor constituencies; however, the Examiner agreed to delay filing the report until May 13, 2013. (ECF Doc. # 3677). On May 13, 2013, the Debtors orally moved to seal the Examiner's Report temporarily, asserting that filing the report could disrupt their efforts to obtain a global settlement with certain of the major stakeholders in the bankruptcy cases. The Court granted the Debtors' request to delay filing the Examiner's Report for one day to afford the Debtors an opportunity to enter into an agreement with certain of their major stakeholders regarding the terms of a global settlement and plan of reorganization. (ECF Doc. # 3697). Prior to the expiration of that deadline, the Debtors advised the Court that they reached such an agreement. The Court then issued its Supplement Order, extending the Debtors' deadline to file a motion seeking approval of a plan support agreement to May 23, 2013.

## JURISDICTION

13.     This Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## RELIEF REQUESTED

14.     Berkshire respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A, unsealing the Examiner's Report.

## BASIS FOR THE RELIEF REQUESTED

15.     The Debtors' efforts to shield the Examiner's Report from public scrutiny are inconsistent with both the Bankruptcy Code and public policy in favor of public access to court records. Section 107(a) of the Bankruptcy Code provides that documents filed with the Court are presumptively "public records and open to examination by an entity at reasonable times without

6

charge." 11 U.S.C. § 107(a). This provision codifies the longstanding presumption and strong policy in favor of allowing public access to court records. *See, e.g.*, *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Gitto/Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005); *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *In re Food Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).

16.  The Second Circuit has recognized that such openness is consistent with the public's right of access to judicial records in bankruptcy cases. *See In re Orion Pictures Corp.*, 21 F.3d 24, 25 (2d Cir. 1994) (noting that open access to court documents is "rooted in the public's First Amendment right to know about the administration of justice"); *see also In re Alterra Healthcare Corp.*, 353 B.R. 66, 75 (Bankr. D. Del. 2006).

17.  Because court documents are presumptively available for public inspection, a party seeking to seal or redact the information contained in such documents bears the burden of proof. *In re Gitto/Global Corp.*, 321 B.R. 367, 373 (Bankr. D. Mass. 2005), *aff'd*, No. 05-10334, 2005 WL 1027348 (D. Mass. May 2, 2005), *aff'd*, 422 F.3d 1 (1st Cir. 2005). To satisfy this burden, the party must submit evidence that filing under seal outweighs the presumption of public access. *Id.* Mere discomfort or embarrassment from the findings and conclusions of the examiner do not rise to the level necessary to justify sealing the report. *Id.* at 376 (finding that parties' "discomfort, embarrassment, shame, and remorse" fell "far short" of the mark necessary to warrant sealing the examiner's report).

18.  The Debtors have not – and cannot – overcome the presumption in favor of public access to the Examiner's Report. Any concern that publishing the Examiner's Report could frustrate a global settlement is misplaced. The Debtors have reported that they already have an agreement with their major stakeholders regarding the terms of a global settlement and plan of

7

reorganization. If the global settlement is predicated on withholding publication of the Examiner's Report, such an arrangement is inconsistent with both appointing the Examiner and the presumption of public access to court records supported by the Bankruptcy Code and public policy. Indeed, sealing the Examiner's Report will only hinder progress towards plan confirmation because significant creditors and other stakeholders – including Berkshire – cannot properly evaluate the fairness of a global settlement and plan without reviewing the findings and conclusions of the Examiner.

19.     Finally, the public attention garnered by these cases weighs heavily in favor of granting public access to the Examiner's Report. As this Court is well aware, each significant ruling in these cases has attracted widespread coverage in the national media. These rulings will serve as a blueprint for future cases and have an impact on the general public's perception of the court system. *See Orion Pictures Corp.*, 21 F.3d at 25 (noting that open access to public court filings "helps safeguard the integrity, quality, and respect in our judicial system."). While Berkshire applauds a bankruptcy process that brings parties together in settlement rather than protracted litigation, a process that does not make available to parties in interest an objective analysis of the issues to be settled undermines the transparency of the bankruptcy process. Under the circumstances, granting public access to the Examiner's Report is not only consistent with the Bankruptcy Code and longstanding public policy, but will also enhance the integrity of the Debtors' reorganization process.

## **NOTICE**

20.     Notice of this Motion has been provided in accordance with the Order under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and

Administrative Procedures entered by this Court on May 23, 2012 (ECF Doc. # 141) (the "Case Management Order"), and notice has been given to the parties identified on the Monthly Service List (as defined in the Case Management Order). Berkshire submits that such notice is sufficient and no other or further notice need be provided.

21. No prior request for the relief sought in this Motion has been made by Berkshire to this Court or any other court.

## **CONCLUSION**

22. For the reasons stated above, Berkshire respectfully requests entry of an order, substantially in the form attached as Exhibit A, (a) unsealing the Examiner's Report and (b) granting such other relief as the Court deems just and proper.

Dated: May 22, 2013

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

/s/  *Thomas Walper*
Thomas B. Walper
Seth Goldman
Daniel J. Harris
355 South Grand Avenue
Los Angeles, California, 90071
thomas.walper@mto.com
seth.goldman@mto.com
daniel.harris@mto.com

*Attorneys for Berkshire Hathaway Inc.*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER GRANTING MOTION OF BERKSHIRE HATHAWAY INC.
TO UNSEAL THE EXAMINER'S REPORT PURSUANT TO 11 U.S.C. § 107(a)**

Upon consideration of the motion dated May 22, 2013, of Berkshire Hathaway Inc. ("Berkshire") for entry of an order to unseal the Examiner's Report pursuant to 11 U.S.C. § 107(a) ("Motion,");[1] and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue is proper pursuant to 28 U.S.C. § 1408; and the Court having found that notice of the Motion was due and proper; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish sufficient cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby:

1. ORDERED that the Motion is granted; and it is further

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Bankruptcy Code.

2. ORDERED that the Examiner's Report shall be unsealed and made available to the public no later than one business day after the entry of this Order; and it is further

3. ORDERED that this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
      June \_, 2013

                                          MARTIN GLENN
                                          United States Bankruptcy Judge