Wendy Alison Nora  
ACCESS LEGAL SERVICES  
310 Fourth Avenue South, Suite 5010  
Minneapolis, Minnesota 55415  
Telephone: (612) 333-4144  
Facsimile: (608) 497-1026

Proposed Hearing Date: June 12, 2013  
Proposed Hearing Time: 10:00 a.m. EDT

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**  
-----------------------------------------------------------------X  
In re

Residential Capital, LLC *et al.,*             Chapter 11

                                                 Case No. 12-12020 (MG)  
                            Debtors.            Administratively Consolidated

-----------------------------------------------------------------X

**JOINDER IN MOTION OF BERKSHIRE HATHAWAY, INC. TO UNSEAL**  
**EXAMINER'S REPORT**  
[DOCKET NO. 3812]
_____

     Wendy Alison Nora, a contingent claimant and creditor in these proceedings, joins in the Motion of Berkshire Hathaway, Inc. (Movant) to Unseal the Examiner's Report filed on May 13, 2013 under seal for the reasons stated by the Movant and for the further and additional reasons, showing the Court:

     1. Since the date of the entry of the Order Appointing the Examiner on June 20, 2012, substantial resources of the Debtors' consolidated estates have been expended on the investigation of the pre-petition transactions between Ally Financial, Inc. (AFI) and the RESCAP Debtors.

     2. Upon information and belief, the costs to the estate of the Examiner's investigation and preparation of the report exceed 83 Million Dollars ($83,000,000.00).

1

3. The costs of the Examiner's Report has been born by the unsecured creditors in these proceedings.

4. Based upon the information filed by the Committee of Unsecured Creditors in its Partially Redacted Motion for Entry of an Order Authorizing the Committee to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates filed on April 30, 2013 as Document 3564 in its entirety, as stated, for example at paragraph 2, as to Ally Financial, Inc. (AFI)

"The Claims have emerged from the Committee's comprehensive and ongoing investigation o f the complex constellation of prepetition and postpetition transactions between the Debtors and AFI. The Committee's investigation, while not yet complete, reveals a troubling scheme by AFI to exploit and misuse its control over the Debtors for its own benefit. This scheme took the form of related-party transfers of assets and liabilities worth billions of dollars, some of which were designed to help minimize AFI's potential **$20 billion-plus liability for creating the overall mortgage securitization mess** in which the Debtors and AFI now find themselves. When it suited AFI's purposes, it greatly expanded the Debtors' mortgage operations to support AFI's failing auto loan business. When the housing boom ended, AFIstripped the Debtors of valuable assets and dumped all of its mortgage-related liabilities on the Debtors, seeking to shield AFI from any responsibility for the excesses of the housing boom." (Emphasis added.)

5. The "overall mortgage securitization mess" (as characterized by the Committee) has four (4) overriding significant attributes: (1) fraud in the inducement in the mortgage loan contracts whereby homeowners were denied essential information as to the nature and terms of the mortgage loan contracts by originating lenders, which was deliberately concealed from them to wit, that the loans would be "securitized" nullifying the loan obligations ab initio under most state laws and UCC 3-305; (2) the failure of AFI and its RESCAP subsidiaries to assure that the mortgage loans were delivered to the Trustees of the securitization trusts as required by each Pooling and Servicing Agreement (PSA) leaving the Trusts empty of the collateral which was to have backed the certificates of beneficial interest sold to the investors; and (3) the document

2

forgery and perjury scheme devised and implemented through the RESCAP subsidiaries (primarily GMAC Mortgage, LLC) and uttered into the public record by RESCAP subsidiaries as "servicers" of the mortgage loans which were never delivered to the trusts to liquidate the real estate assets encumbered by fraudulently originated mortgages; and (4) confiscation of homes on forged and perjured documents from which liquidation proceeds are proposed to be used to pay the claims of the investors in the empty Real Estate Mortgage Investment Conduit (REMIC) Trusts in these proceedings.

     6. The Committee of Unsecured Creditors, on which financial institutions involved in the securitization schemes are massively over-represented over the homeowner constituency, focuses, at best, on the second prong of the four prong mortgage fraud scheme for which AFI and its equity partner before the Troubled Asset Relief Program (TARP) bailouts, now the largest private shareholder in AFI, Cerberus Capital Management, LLP (Cerberus), are liable.

     7. Not one dime has been paid to the homeowners for their damages resulting from fraud in the origination of mortgage loans, fraud in the servicing of the mortgage loans and fraudulent foreclosures of the mortgage loans, because AFI seeks to have the RESCAP Debtors held liable for the nominal compensation to be paid under the National Mortgage Settlement (entitled <u>United States of America, et al. v. Bank of America, et al.</u>, in the United States District Court for the District of Columbia, Case No. 12-cv-361) and to which lip service has been paid by the RESCAP Debtors since date of their consolidated petitions on May 14, 2012.

     8. Nothing has been set aside for the mass tort perpetrated against homeowners by the AFI/Cerberus/RESCAP mortgage fraud enterprise and the homeowner claims are being suppressed in the proceedings by special processes designed to defeat homeowner claims known

as the Supplemental Order for Adversary Proceedings dated March 21, 2013 whereby those few homeowners who have been able to bring an adversary proceeding to the Court are now being denied access to the essential information discovered in the course of the Examiner's investigation the costs of which their real estate assets are being liquidated to pay.

9. There is absolutely no precedent for the Examiner's Report to be placed under seal in these proceedings so that the RESCAP Debtors can negotiate plan support agreements with the creditors with which it has chosen to engage in negotiations. Now that the plan support agreements have apparently been procured (despite the fact that the injured homeowners are virtually excluded from the process) there is no equitable reason for the Examiner's Report to remain sealed.

10. According to Document 3564, The Committee of Unsecured Creditors believes that it has discovered sufficient evidence and will attempt to prove against AFI in litigating the RESCAP Debtors' claims against the parent company (and presumably against its partner, Cerberus) that the RESCAP Debtors are an alter-ego of AFI and the corporate veil should be pierced so that AFI may be held responsible for the damages resulting from the "overall mortgage securitization mess." It is the Examiner Report that will form the substantial factual foundation of efforts to pierce the corporate veils as summarized by the Committee of Unsecured Creditors in the Document 3564, paragraph 3:

"In short, the information available to date paints a stark picture of AFI's domination, control, and abuse o f the Debtors that supports strong claims against the AFI Defendants, including for **veil-piercing, fraudulent conveyance**, **indemnification, preferential transfer**, and equitable subordination - all of which the Committee is prepared to litigate vigorously. These claims present **a real threat that AFI ultimately will be liable for unsecured liabilities o f the Debtors of more than $20 billion**." (Emphasis added.)

10. At paragraph 7 of Document 3564, the Committee of Unsecured Creditors stated, on

4

April 30, 2013:

"The Committee's analysis demonstrates that, <u>even though the Committee's investigation is not complete and</u> **the Examiner has not yet issued his report**, there already is ample evidence supporting more than colorable claims that could result in AFI's liability for billions of dollars of debt that otherwise would be left unsatisfied through the ResCap bankruptcy. This potentially huge recovery by the Debtors' estates for the massive damage AFI has inflicted on the Debtors over the years vastly outweighs any reasonably anticipated costs of litigation-particularly given the extensive discovery already taken to date."

11. Now the Examiner has issued his report, but the undersigned and the public are still being prevented from obtaining the benefit of the Examiner's findings as to the key issues which effect her claims and the claims of thousands of other homeowners, whose homes were and are being taken on forged and perjured documents, to wit, the evidence obtained at a cost of in excess of 83 Million Dollars ($83,000,000.00) [or 830 $100,000.00 homes liquidated by the RESCAP Debtors in the course of these proceedings] which would prove AFI and Cerberus are liable for the harms to the homeowners whose home have been confiscated and against whom foreclosure continue on forged and perjured documents.

12. The Examiner's Report must be unsealed in the interests of justice and equity. Further delay in disclosing the evidence contained in the Examiner's Report violates the rights of all claimants in these proceedings, whose right to recover from the RESCAP Debtors' estates has been reduced by the costs of the Report. The Report belongs to the creditors and not the Debtors and the continuation of the seal is without any basis in fact or in law.

WHEREFORE, the undersigned joins in the Motion of Berkshire Hathaway, Inc. for an Order to Unseal the Examiner's Report and for such other relief as may be just and appropriate in these premises.

Dated: May 23, 2013 at Madison, Wisconsin.

ACCESS LEGAL SERVICES

*/s/ Wendy Alison Nora*
Wendy Alison Nora, pro hac vice
310 Fouth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026

UNSWORN DECLARATION OF SERVICE

Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York on May 23, 2013 by CM/ECF and thereby served the same on all counsel of record appearing in the above-captioned matter.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
accesslegalservices@gmail.com
