**Hearing Date: June 12, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: June 5, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------
                                                )
In re:                                          )     Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )     Chapter 11
                                                )
                        Debtors.                )     Jointly Administered
                                                )
---------------------------------------------

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTION 362(a) OF**
**THE BANKRUPTCY CODE FOR ENFORCEMENT OF THE AUTOMATIC STAY**

   **PLEASE TAKE NOTICE** that, on May 24, 2013, the above-captioned debtors and

debtors in possession (collectively, the "Debtors") filed the Debtors' Motion Pursuant to Section

362(a) of the Bankruptcy Code for Enforcement of the Automatic Stay (the "Motion").

   **PLEASE TAKE FURTHER NOTICE** that a hearing will be held on the Motion before

the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court") on **June 12, 2013 at 10:00 a.m. (prevailing Eastern**

**time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion must be in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties-in-interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format, WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-399 and in accordance with this Court's order, dated May 23, 2012, implementing certain notice and case management procedures [Docket No. 141], so as to be received no later than **June 5, 2013 at 4:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that if no objection to a Motion is timely filed and served, the Bankruptcy Court may enter an order granting the relief requested in a Motion without further notice or opportunity to be heard afforded to any party.

Dated: May 24, 2013
     New York, New York

                                     /s/ Norman S. Rosenbaum
                                     Gary S. Lee
                                     Norman S. Rosenbaum
                                     Erica J. Richards
                                     MORRISON & FOERSTER LLP
                                     1290 Avenue of the Americas
                                     New York, New York 10104
                                     Telephone: (212) 468-8000
                                     Facsimile: (212) 468-7900

                                     *Counsel for the Debtors and*
                                     *Debtors in Possession*

**Hearing Date: June 12, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  June 5, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468 8000
Facsimile:     (212) 468 7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————

| | |
|---|---|
| In re: | ) Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) Chapter 11 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

————————————————————————

**DEBTORS' MOTION PURSUANT TO SECTION 362(a) OF THE**
**BANKRUPTCY CODE FOR ENFORCEMENT OF THE AUTOMATIC STAY**

**TO THE HONORABLE JUDGE GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC ("ResCap") and each of its debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), by

and through their undersigned counsel, hereby submit this motion (the "Motion") pursuant to

section 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code"), seeking entry of an order, substantially in the form annexed hereto as

**Exhibit 1** (the "Order"), enforcing the automatic stay with respect to the foreclosure action

captioned *GMAC Mortgage, LLC v. Marcia Navarro, et al.* (Case No. 13-2008-CA-74998) (the

"Navarro Foreclosure Action"), currently pending in the Circuit Court of the Eleventh Judicial

Circuit and for Miami-Dade County, in the State of Florida (the "State Court").  In support of the

Motion, the Debtors rely on the Declaration of Glenn E. Glover, dated May 24, 2013 (the

"Glover Declaration"), annexed hereto as **Exhibit 2**.  In further support thereof, the Debtors

respectfully state as follows:

<strong>INTRODUCTION</strong>

1.      By this Motion, the Debtors request the entry of an order enforcing the automatic

stay with respect to certain monetary claims arising in connection with the Navarro Foreclosure

Action.  This relief is necessary to provide the Debtors with full benefit of the breathing spell

afforded to debtors in bankruptcy proceedings so that the Debtors can continue to focus on these

chapter 11 cases in a manner that is fair to the Debtors, their estates, and their creditors.

2.      In December 2008, Debtor GMAC Mortgage, LLC ("GMACM") initiated the

Navarro Foreclosure Action against Ms. Navarro ("Navarro").  The State Court dismissed the

Navarro Foreclosure Action without prejudice in April 2011, and that same month, Navarro filed

a motion seeking an award of attorneys' fees as the prevailing party in the Navarro Foreclosure

Action under applicable Florida law (the "Attorneys' Fees").

3.      Post-petition, Navarro and her counsel, the Law Offices of La Ley Con John H.

Ruiz, P.A. ("Ruiz" and, together with Navarro, the "Navarro Parties"), have taken various

actions to collect on approximately $25,000 in Attorney Fees in direct violation of the automatic

stay.  Based on pleadings filed by in the State Court, the Navarro Parties believe that the Final

Supplemental Order (defined below) provides relief from the automatic stay to pursue the

Attorneys' Fees.  The Final Supplemental Order does not provide such relief in this matter

because, as discussed in greater detail below, the Attorneys' Fees are not Mandatory Monetary

Claims (as defined in the Final Supplemental Order), and, in any event, the Final Supplemental

Order does not permit the enforcement or collection of Mandatory Monetary Claims.  Moreover,

the Attorneys' Fees are pre-petition claims, and were therefore required to be asserted through

the filing of a timely proof of claim.  Neither Navarro nor Ruiz filed a proof of claim on account

of the Attorneys' Fees despite having received timely notice of the Bar Date (defined below).

Accordingly, the assertion of claims against the Debtors for the Attorneys' Fees are now barred

as a matter of law, and the Navarro Parties are not entitled to stay relief to pursue them.

4.      As a result of the Navarro Parties' unrelenting efforts to collect on the Attorneys'

Fees, the Debtors now seek entry of an order by this Court enforcing the automatic stay and the

terms of the Final Supplemental Order with respect to the Attorneys' Fees.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28. U.S.C. § 157(b).

6.      Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

# BACKGROUND

## A.    The Chapter 11 Cases

7.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

## B.    The Final Supplemental Order

8.      On July 13, 2012, this Court entered the *Final Supplemental Order Under*

*Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019*

*(I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving*

*Procedures for Compromise and Settlement of Certain Claims, Litigations, and Causes of*

*Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings,*

*Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing*

*the Debtors to Pay Securitization Trustee Fees and Expenses* (the "Final Supplemental Order")

[Docket No. 774].

9.      In general, the Final Supplemental Order provides expansive relief from the

automatic stay to allow the Debtors to continue to prosecute mortgage foreclosure actions and

related eviction proceedings while affording borrowers the ability to assert all appropriate

defenses in connection therewith.  The stay relief granted under the Final Supplemental Order is

not boundless, however, but instead is subject to carefully crafted limits.

## C.    The Claims Bar Date Order

10.     On August 29, 2012, the Court entered its *Order Establishing Deadline for Filing*

*Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the

"Bar Date Order"), establishing November 9, 2012 as the general claims bar date (the "Bar

Date").  The Court subsequently entered an *Order Extending Deadline for Filing Proof of Claim*

[Docket No. 2093], extending the Bar Date to November 16, 2012.

11.    In accordance with the Bar Date Order, Navarro and Ruiz were each served with

the notice of the Bar Date.  See Affidavits of Service; excerpts of which are attached hereto as

**Exhibit 3**.

D.    **The Navarro Foreclosure Action and Attempts to Collect Attorneys' Fees**

12.    On December 4, 2008, GMACM filed a complaint (the "Complaint") against

Navarro, thereby commencing the Navarro Foreclosure Action.  *See* **Exhibit 4-A**.

13.    On April 4, 2011, the State Court dismissed the Complaint without prejudice.  *See*

**Exhibit 4-B**.

14.    On April 13, 2011, Navarro filed the *Motion for Entitlement of Attorney Fees and*

*Costs* ("Motion for Attorneys' Fees"), which sought an order finding that Navarro was entitled to

reasonable attorney's fees and setting a hearing to determine the amount of attorney's fees and

costs to be awarded.[1]  *See* **Exhibit 4-C**.

15.    Navarro took no action to prosecute the demand for attorney's fees for over a

year.  Then, on June 11, 2012, following a hearing that was scheduled at Navarro's request, the

State Court entered an order granting the Motion for Attorneys' Fees (the "Fee Order").  *See*

**Exhibit 4-D**.

16.    On January 16, 2013, Navarro caused an ex parte *Scheduling Order on*

*Defendants Motion for Entitlement to Attorney's Fees/Costs* to be entered by the State Court,

---

[1]    GMACM was initially represented in the Navarro Foreclosure Action by the Law Offices of David J. Stern,
P.A.  Subsequent to the entry of the Fee Order, GMACM engaged the Albertelli Law Firm as replacement
counsel.  Bradley Arant Boult Cummings LLP was engaged as co-counsel in that matter in April 2013.

pursuant to which GMACM was required to comply with specified procedures to rebut

Navarro's asserted entitlement to Attorneys' Fees.  *See* **Exhibit 4-E**.

17.      On January 17, 2013, Ruiz filed an *Affidavit as to Reasonable Attorneys Fees* in

the State Court requesting $64,675.00 in Attorneys' Fees, on account of $25,870.00 in actual

fees, multiplied by 2.5 in light of the alleged complexity of the case (the "Fee Application").  *See*

**Exhibit 4-F**.

18.      On February 1, 2013, without a hearing, the State Court entered a *Final Judgment*

*as to Attorneys' Fees and Costs* (the "Final Judgment"), which granted the Navarro Parties a

judgment against GMACM of $25,870.00 in Attorneys' Fees.  *See* **Exhibit 4-G**.

19.      Following entry of the Final Judgment, the Navarro Parties referred the

Attorneys' Fees to R. Aponte & Associates, Esq., PLLC ("Aponte") for collection.

20.      On March 18, 2013, GMACM filed a *Motion to Vacate the Ex Parte Final*

*Judgment as to Attorney's Fees and Costs and the Scheduling Order on Defendant's Motion for*

*Entitlement to Attorney's Fees/Costs Entered in Violation of Due Process; Motion to Stay*

*Execution of Judgment; and Motion for Sanctions Including an Award of Attorney's Fees and*

*Costs* (the "Motion to Vacate").[2]  *See* **Exhibit 4-H**.

21.      On March 19, 2013, Aponte caused the State Court to enter a *Writ of Execution*

(the "Writ of Execution") with respect to the Final Judgment.  *See* **Exhibit 4-I**.

22.      Following entry of the Writ of Judgment, Aponte sought to collect payment of the

Attorneys' Fees from GMACM.  *See* **Exhibit 4-J**.

---

[2]     GMACM acknowledges that, as the underlying action was stayed and not permitted to proceed under the Final
Supplemental Order, that it need not have filed the Motion to Vacate.  It did so, however, to preserve its rights
and interests and not in an attempt to use the automatic stay as both a "shield" and a "sword."  Moreover, as
explained below, GMACM's counsel subsequently put the Navarro Parties on notice of their stay violations,
which notice was met with yet another filing in violation of the stay.

23.     On March 21, 2013, GMACM filed a *Notice of Filing of Bankruptcy Stay* (the "Notice of Bankruptcy") with the State Court.  *See* **Exhibit 4-K**.

24.     By letter dated April 26, 2013, GMACM's counsel (i) notified Ruiz and Aponte that the continued attempts by the Navarro Parties to collect the Attorneys' Fees are prohibited by the automatic stay and (ii) demanded that the Navarro Parties seek to have the Writ of Execution cancelled, any judgment lien securing the Final Judgment released, and the Final Judgment set aside by the State Court.  *See* Glover Declaration at ¶ 4; **Exhibit 2-A**.

25.     By letter dated April 30, 2013, GMACM's counsel set forth arguments supporting GMACM's position that the Final Supplemental Order does not provide stay relief to allow collection of the Attorneys' Fees and reiterated GMACM's demands to the Navarro Parties set forth in the April 26, 2013 letter.  *See* Glover Declaration at ¶ 5; **Exhibit 2-B**.

26.     On May 16, 2013, Navarro filed *Defendant Navarro's Amended Motion for Sanctions and to Hold Jason M. Tarokh and Albertelli Law Firm and Plaintiff in Contempt of Court for Filing an Inapplicable Notice of Bankruptcy Stay to Avoid Execution and Motion to Determine that there is No Stay in Effect* (the "Motion for Sanctions") in the State Court.  *See* **Exhibit 4-L**.  The State Court has scheduled a hearing on June 13, 2013, during which the Motion for Sanctions will presumably be heard.  *See* **Exhibit 4-M**.

27.     As of the date of this Motion, the Debtors are unaware of any action taken by the Navarro Parties to remedy the stay violations described above.

## RELIEF REQUESTED

28.     By this Motion, the Debtors respectfully request the entry of an order, pursuant to section 362(a) of the Bankruptcy Code, enforcing the automatic stay, declaring the Fee Order, Writ of Execution, and Final Judgment void and without effect, and compelling the Navarro

Parties to take such actions as may be necessary to have any judgment lien securing the Final

Judgment released.  The proposed Order is annexed hereto as **Exhibit 1**.

## BASIS FOR RELIEF REQUESTED

29.    Section 362(a) of the Bankruptcy Code provides, in pertinent part, that the filing of

a bankruptcy petition operates as an automatic stay, applicable to all entities, of "the

commencement or continuation, including the issuance or employment of process, of a

judicial, administrative, or other action or proceeding against the debtor that was or

could have been commenced before the commencement of the case under this title, or to

recover a claim against the debtor that arose before the commencement of the case

under this title."  11 U.S.C. § 362(a)(1). In enacting section 362, Congress made clear that:

> [T]he automatic stay is one of the fundamental debtor protections
> provided by the bankruptcy laws. It gives the debtor a
> breathing spell from his creditors. It stops all collection
> efforts, all harassment and all foreclosure actions. It permits
> the debtor to attempt a repayment or reorganization plan, or
> simply to be relieved of the financial pressures that drove him into
> bankruptcy.

H.R. Rep. No. 95-595 at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6296-97; S. Rep. No. 95-

989 at 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5840-41

30.    All actions to collect the Attorneys' Fees from GMACM, including obtaining and

seeking enforcement of the Final Judgment, are stayed under section 362(a) because they

constitute a continuation of actions that could have been, and were, commenced against

GMACM prior to the Petition Date.  Navarro, by way of the Motion for Sanctions, alleges that

the Final Supplemental Order provides the Navarro Parties with relief from the automatic stay to

pursue the Attorneys' Fees.  However, such position is incorrect.

31.    In relevant part, the Final Supplement Order provides that:

> "absent further order of the Court, the automatic stay shall remain
> in full force and effect with respect to all pending and future
> Interested Party direct claims and counter-claims: (i) for monetary
> relief of any kind and of any nature against the Debtors, except
> where a monetary claim must be plead in order for an Interested
> Party to (a) assert a claim to defend against or otherwise enjoin or
> preclude a foreclosure (each a "Mandatory Monetary Claim"); . . .
> under no circumstances shall an Interested Party be entitled to
> enforce against, recoup, setoff or collect from the Debtors any
> judgment or award related to any direct claim or counter-claim for
> which the automatic stay has been lifted by the terms of this Order,
> including, without limitation, a Mandatory Monetary Claim."

Final Supplemental Order at ¶ 14(b), (d) (emphasis added).

32.     The Final Supplemental Order does not provide relief from the automatic stay

with respect to the Attorneys' Fees because claims for prevailing party attorneys' fees are not a

valid defense to a foreclosure.  Rather, by definition, those fees are recoverable only after the

foreclosure has already been dismissed or otherwise successfully defended, and therefore do not

constitute Mandatory Monetary Claims.  Furthermore, paragraph 14(d) of the Final

Supplemental Order expressly provides that the stay remains in effect with respect to any efforts

to collect or enforce Mandatory Monetary Claims.  Thus, all post-petition actions to enforce or

collect the Attorneys' Fees were in violation of the automatic stay.  As a result, the Fee Order,

the Writ of Execution, and the Final Judgment, all of which were entered in violation of stay, are

void and without effect.  See, e.g., (48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc. (In re 48th

St. Steakhouse, Inc.), 835 F.2d 427, 431 (2d Cir. 1987) (affirming bankruptcy court's statement

that "actions taken in violation of the stay are void and without effect" (citation omitted)).

33.     Moreover, the Navarro Parties each received timely notice of the Bar Date Order

and did not file proofs of claim.  Thus, any claims for the Attorneys' Fees are now barred as a

matter of law, and the Navarro Parties are not entitled to relief from the stay to pursue them.  In

light of the foregoing, the Navarro Parties' ongoing collection efforts can only be regarded as deliberate, willful violations of the automatic stay and must be enjoined.

## CONCLUSION

34.    For the reasons set forth above, the Debtors respectfully request that the Court enter the Order (i) enforcing the automatic stay with respect to all actions to collect the Attorneys' Fees, (ii) declaring the Fee Order, Writ of Execution, and Final Judgment void and without effect, and (iii) compelling the Navarro Parties to take such actions as may be necessary to have any judgment lien securing the Final Judgment released.[3]

## NOTICE

35.    The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

36.    Except as otherwise noted herein, no prior motion for the relief requested herein has been made to this Court or any other court.

---

[3]    At this time, the Debtors are not seeking monetary sanctions on account of the stay violations committed by or at the direction of the Navarro Parties or any further injunctive relief beyond the limited request set forth herein. However, the Debtors reserve all rights to seek such additional relief, including an award of monetary damages as they may deem appropriate.

**WHEREFORE**, the Debtors respectfully request the entry of the Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  New York, NY
        May 24, 2013

Respectfully submitted,

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and
Debtors in Possession*

10

## <u>EXHIBIT 1</u>

## <u>Proposed Order</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

---------------------------------------------------------

## <u>ORDER ENFORCING THE AUTOMATIC STAY</u>

Upon the motion (the "<u>Motion</u>")[1] of the Debtors for entry of an order, pursuant to section 362(a) of the Bankruptcy Code, for enforcement of the automatic stay; and upon consideration of the Glover Declaration; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue in these Chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation thereon; and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2.      The automatic stay imposed by section 362(a) of the Bankruptcy Code applies to the claims for Attorneys' Fees asserted by Marcia Navarro ("Navarro") or her counsel the Law Offices of La Ley Con John H. Ruiz, P.A. ("Ruiz" and, together with Navarro, the "Navarro Parties") in connection with the action pending before the Circuit Court of the Eleventh Judicial Circuit and for Miami-Dade County, in the State of Florida (the "State Court"), captioned *GMAC Mortgage, LLC v. Marcia Navarro, et al.* (Case No. 13-2008-CA-74998) (the "Navarro Foreclosure Action"), and thereby prohibits Navarro or her counsel from seeking to collect the Attorneys' Fees from the Debtors.

3.      The Fee Order, Writ of Execution, and Final Judgment were entered in violation of the automatic stay and are therefore void and without effect.

4.      The Navarro Parties, including any of their agents, are ordered to immediately cease and desist any and all collection activities related to the Attorneys' Fees.

5.      The Navarro Parties are directed to take such actions as may be necessary to have any recording that may constitute or effect a judgment lien under Florida law, including the judgment lien certificate issued in the Navarro Foreclosure Action and recorded at OR Book 28487, Page 2714, immediately released, cancelled, and withdrawn.  The automatic stay is lifted solely to the extent necessary to permit the Navarro Parties to take the actions set forth in this paragraph 4.

6.      The Debtors are authorized, empowered and directed to take all actions necessary to implement the relief granted pursuant to this Order.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from, or related to, the implementation and/or interpretation of this Order.

2

Dated: _____, 2013
        New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

3

## **EXHIBIT 2**

## **Glover Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------- )
                                               )
In re:                                         )    Case No. 12-12020 (MG)
                                               )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,       )    Chapter 11
                                               )
                               Debtors.        )    Jointly Administered
                                               )
                                               )
                                               )
---------------------------------------------- )

**DECLARATION OF GLENN E. GLOVER IN SUPPORT OF DEBTORS' MOTION**
**PURSUANT TO SECTION 362(a) OF THE BANKRUPTCY CODE**
**<u>FOR ENFORCEMENT OF THE AUTOMATIC STAY</u>**

I, Glenn E. Glover, under penalty of perjury, declare as follows:

1.      I am a partner of the firm of Bradley Arant Boult Cummings LLP ("<u>BABC</u>"), with

offices at, among other locations, One Federal Place, 1819 Fifth Avenue North Birmingham,

Alabama 35203.  I am admitted to practice law before the U.S. District Courts for the Northern,

Middle, and Southern Districts of Alabama, the Northern and Southern Districts of Mississippi,

and before the U.S. Courts of Appeals for the Fifth and Eleventh Circuits.

2.      I am authorized to submit this declaration (the "<u>Declaration</u>") in support of the

*Debtors' Motion Pursuant to Section 362(a) of the Bankruptcy Code for Enforcement of the*

*Automatic Stay* (the "<u>Motion</u>").[1]

3.      BABC was retained in April 2013 to represent Debtor GMAC Mortgage, LLC

("<u>GMACM</u>") as co-counsel to the Albertelli Law Firm in an action captioned *GMAC Mortgage,*

*LLC v. Marcia Navarro, et al.* (Case No. 13-2008-CA-74998) (the "<u>Navarro Foreclosure</u>

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Action"), currently pending in the Circuit Court of the Eleventh Judicial Circuit and for Miami-Dade County, in the State of Florida (the "State Court"). The information contained in this declaration is based upon my personal knowledge, records maintained at BABC in the ordinary course of business, and pleadings filed in the Navarro Foreclosure Action. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

4.      By letter dated April 26, 2013, BABC (i) notified Ruiz and Aponte that the continued attempts by Navarro and Ruiz to collect the Attorneys' Fees are prohibited by the automatic stay and (ii) demanded that Ruiz seek to have the Writ of Execution cancelled, any judgment lien securing the Final Judgment released, and the Final Judgment set aside by the State Court. *See* Letter dated April 26, 2013, annexed hereto as **Exhibit 2-A**.

5.      By letter dated April 30, 2013, BABC set forth arguments supporting GMACM's position that the Final Supplemental Order does not provide stay relief to allow collection of the Attorneys' Fees and reiterated GMACM's demands to Ruiz set forth in the April 26, 2013 letter. *See* Letter dated April 30, 2013, annexed hereto as **Exhibit 2-B**.

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on May 24, 2013

By: _____
            Glenn E. Glover

# EXHIBIT 2A


BRADLEY ARANT
BOULT CUMMINGS
LLP

Glenn E. Glover

Direct Dial: (205) 521-8647
Direct Fax: (205) 488-6647
gglover@babc.com

April 26, 2013

**VIA CERTIFIED MAIL, RETURN-**
**RECEIPT REQUESTED, FIRST-CLASS**
**UNITED STATES MAIL, AND E-MAIL**

John H. Ruiz
Law Offices Of La Ley Con John H. Ruiz, P.A.
4182 SW 74th Court
Miami, Florida 33155
jruiz@lawofficeslaley.com

   Re: *GMAC Mortgage, LLC v. Marcia Navarro, et al.*
     **Civil Action No. 13-2008-CA-74998**
     **In the Circuit Court of Miami-Dade County, Florida**

Dear John:

I appreciate your time on the phone last week.

Per our discussion, this firm was recently engaged to represent GMAC Mortgage, LLC
("GMACM") in the above-referenced civil action (the "Civil Action"). We are currently co-
counsel for GMACM with the Albertelli Law Firm in Tampa, Florida.

**The GMAC Bankruptcy**

On May 14, 2012 Residential Capital, LLC and certain of its direct and indirect subsidiaries
(collectively, the "ResCap Debtors"), including GMACM, filed voluntary petitions for relief
under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court
for the Southern District of New York (the "New York Bankruptcy Court"). Pursuant to the
*Order Under Bankruptcy Rule 1015 Authorizing Joint Administration of Debtors' Chapter 11*
*Cases* entered by the New York Bankruptcy Court on May 14, 2012 [Docket No. 59], the
ResCap Debtors' Chapter 11 cases are being jointly administered and under Case No. 12-12020
(MG) (the "ResCap Bankruptcy Case"). A copy of GMACM's bankruptcy petition is attached
for your reference.

Co-counsel for GMACM filed a *Notice Of Filing Of Bankruptcy Stay* (the "NOB") in the Civil
Action on March 21, 2013. Attached to the NOB was a copy of the Supplemental Servicing

1/2473875.1

John H. Ruiz
April 26, 2013
Page 2

---

Order[1] dated June 15, 2012.   The Supplemental Order was subsequently amended and restated by the Final Servicing Order[2] dated July 13, 2012. I attach a copy of the Final Servicing Order for your review.

According to GMACM's records, Ms. Navarro was mailed the following: (1) a "Claims Bar Date" letter, informing her that the bar date for filing claims against GMACM or any of the other ResCap Debtors was November 12, 2012; (2) a copy of the *Notice Of Deadlines For Filing Proofs Of Claims*, which was approved by the New York Bankruptcy Court; (3) a letter dated May 14, 2012 informing her of GMACM's bankruptcy filing; and (4) a *Notice Of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines*. I attach a copy of each of these four (4) documents for your review.

## GMACM's Position

The filing of the ResCap Bankruptcy Case initiated an automatic stay under 11 U.S.C. § 362(a) against "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against [GMACM] that was or could have been commenced before the commencement of the case under this title, or to recover a claim against [GMACM] that arose before the commencement of the case under this title." The Final Servicing Order does not provide any relief from the automatic stay for any of the orders/filings/events in the Civil Action, referenced in the above paragraph, to occur.

All filings and events that occurred in the Civil Action on or after May 14, 2012 violated the automatic stay, including without limitation: (1) the March 19, 2013 *Writ of Execution* (the "Writ"); (2) the February 1, 2013 *Final Judgment As To Attorneys' Fees And Costs* (the "Final Judgment"); (3) the January 17, 2012 *Notice of Filing*, which attached the *Affidavit As To Reasonable Attorneys Fees*; (4) the January 17, 2013 *Scheduling Order On Defendant's Motion For Entitlement To Attorneys Fees/Costs*; and (5) the June 12, 2012 Order granting fees and costs. Further, any claim you or your client may have for statutory attorneys' fees in the Civil Action is a pre-petition

---

[1]        *Supplemental Order For Interim Relief Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigation and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 391] (the "Supplemental Servicing Order").

[2]        *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigation and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental Servicing Order").

John H. Ruiz
April 26, 2013
Page 3

---

claim, and any recovery on any such claim would be proper only from the New York Bankruptcy Court in the ResCap Bankruptcy Case in accordance with the proper procedures.

I have spoken with GMACM and they are not willing to consider a "nominal" settlement of your attorneys' fees in the Civil Action. **Accordingly, GMACM hereby demands that within ten (10) days from the date of this letter, you and your client take the necessary action to:**

1. **Have the Writ cancelled.**

2. **Have any recording that may constitute or effect a judgment lien under Florida law, including the judgment lien certificate issued in the Civil Action and recorded at OR Book 28487, Page 2714, immediately released, cancelled, and withdrawn.**

3. **Have Rosy Aponte and the law firm of R. Aponte & Associates, Esq., PLLC immediately cease and desist with any and all collection, satisfaction, and recovery activities related to the Final Judgment and the Writ.**

4. **Have the Final Judgment set aside.**

**If you do not comply with the above four (4) requests within ten (10) days and provide me with written evidence of the same, the law firm of Morrison and Foerster, LLP, lead counsel for the ResCap Debtors, may file an adversary proceeding in the ResCap Bankruptcy Case against you, your client, and/or Rosy Aponte and her law firm for violation of the automatic stay, which adversary proceeding may seek damages.**

Thank you for your prompt attention to this matter.

Sincerely,

Glenn E. Glover

Attachments

cc:     Christy Hancock, Esq. (**via e-mail chancock@babc.com**)
        Nathan Gryglewicz, Esq. (**via e-mail only ngryglewicz@albertellilaw.com**)
        Eric J. Forte, Esq. (**via e-mail only eforte@albertellilaw.com**)
        Rosy Aponte, Esq. (**via e-mail only rapontelaw@gmail.com**)

1/2473875.1

B 1 (Official F12-12032-mg    Doc 1    Filed 05/14/12    Entered 05/14/12 08:10:40    Main Document
Pg 1 of 25

| United States Bankruptcy Court<br>Southern District of New York | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>GMAC Mortgage, LLC | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>GMAC Mortgage Corporation | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): 23-1694840 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>1100 Virginia Drive<br>Fort Washington, PA<br>ZIP CODE 19034 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Montgomery | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

**Type of Debtor**
(Form of Organization)
(Check one box.)

- [ ] Individual (includes Joint Debtors)
  *See Exhibit D on page 2 of this form*
- [x] Corporation (includes LLC and LLP)
- [ ] Partnership
- [ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business**
(Check one box.)

- [ ] Health Care Business
- [ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [x] Other

**Tax-Exempt Entity**
(Check box, if applicable.)

- [ ] Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.)

- [ ] Chapter 7
- [ ] Chapter 9
- [x] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box.)

- [ ] Debts are primarily consumer, debts defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."
- [x] Debts are primarily business debts

**Filing Fee** (Check one box.)

- [x] Full Filing Fee attached.
- [ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:
- [ ] Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- [x] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- [ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $ 2,343,300.

Check all applicable boxes:
- [ ] A plan is being filed with this petition.
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
THIS SPACE IS FOR COURT USE ONLY

- [x] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [ ] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

**Estimated Number of Creditors**

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [x] | [ ] | [ ] | [ ] | [ ] |

**Estimated Assets**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [x] |

**Estimated Liabilities**

| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [x] |

B 1 (Official Form 1)12-12020-mg    Doc 1    Filed 05/14/12    Entered 05/14/12 08:10:40    Main Document                Page 2

| Voluntary Petition | Pg 2 of 25 | Name of Debtor(s): |
|---|---|---|
| *(This page must be completed and filed in every case.)* | | GMAC Mortgage, LLC |

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location | Case Number: | Date Filed: |
|---|---|---|
| Where Filed: None. | N/A | N/A |
| Location | Case Number: | Date Filed: |
| Where Filed: | | |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | Case Number: | Date Filed: |
|---|---|---|
| See Annex 1 | As Assigned | Same |
| District: | Relationship: | Judge: |
| Southern District of New York | Affiliate | As Assigned |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11.)  ☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).  X _____  Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B 1 (Official Form) 1 (1/08)                                                                                                   Page 3

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s): GMAC Mortgage, LLC |
|---|---|

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. [If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b). I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition. (Check only one box.) ☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached. ☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X _____ Signature of Debtor | X _____ (Signature of Foreign Representative) |
| X _____ Signature of Joint Debtor | _____ (Printed Name of Foreign Representative) |
| _____ Telephone Number (if not represented by attorney) | _____ Date |
| _____ Date | |

| **Signature of Attorney\*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X /s/ Larren M. Nashelsky Signature of Attorney for Debtor(s) Larren M. Nashelsky Printed Name of Attorney for Debtor(s) Morrison & Foerster LLP Firm Name 1290 Avenue of the Americas Address New York, NY 10104 (212) 468-8000 Telephone Number May 14, 2012 Date *In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached. _____ Printed Name and title, if any, of Bankruptcy Petition Preparer _____ Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) _____ Address |
| **Signature of Debtor (Corporation/Partnership)** I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor. The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition. X /s/ James Whitlinger Signature of Authorized Individual James Whitlinger Printed Name of Authorized Individual Chief Financial Officer Title of Authorized Individual May 14, 2012 Date | X _____ _____ Date Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person. *A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

ny-1012325

## ANNEX 1

On May 14, 2012, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). A motion has been filed or shortly will be filed with the Court requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered.

| Name of Debtor |
| --- |
| ditech, LLC |
| DOA Holding Properties, LLC |
| DOA Properties IX (Lots-Other), LLC |
| EPRE LLC |
| Equity Investment I, LLC |
| ETS of Virginia, Inc. |
| ETS of Washington, Inc. |
| Executive Trustee Services LLC |
| GMAC – RFC Holding Company, LLC |
| GMAC Model Home Finance I, LLC |
| GMAC Mortgage USA Corporation |
| GMAC Mortgage, LLC |
| GMAC Residential Holding Company, LLC |
| GMAC RH Settlement Service, LLC |
| GMACM Borrower LLC |
| GMACM REO LLC |
| GMACR Mortgage Products, LLC |
| HFN REO SUB II, LLC |
| Home Connects Lending Services, LLC |
| Homecomings Financial Real Estate Holdings, LLC |
| Homecomings Financial, LLC |

| |
|---|
| Ladue Associates, Inc. |
| Passive Asset Transactions, LLC |
| PATI A, LLC |
| PATI B, LLC |
| PATI Real Estate Holdings, LLC |
| RAHI A, LLC |
| RAHI B, LLC |
| RAHI Real Estate Holdings, LLC |
| RCSFJV2004, LLC |
| Residential Accredit Loans, Inc. |
| Residential Asset Mortgage Products, Inc. |
| Residential Asset Securities Corporation |
| Residential Capital, LLC |
| Residential Consumer Services of Alabama, LLC |
| Residential Consumer Services of Ohio, LLC |
| Residential Consumer Services of Texas, LLC |
| Residential Consumer Services, LLC |
| Residential Funding Company, LLC |
| Residential Funding Mortgage Exchange, LLC |
| Residential Funding Mortgage Securities I, Inc. |
| Residential Funding Mortgage Securities II, Inc. |
| Residential Funding Real Estate Holdings, LLC |
| Residential Mortgage Real Estate Holdings, LLC |
| RFC – GSAP Servicer Advance, LLC |
| RFC Asset Holdings II, LLC |
| RFC Asset Management, LLC |

| RFC Borrower LLC |
| RFC Construction Funding, LLC |
| RFC REO LLC |
| RFC SFJV-2002, LLC |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GMAC MORTGAGE, LLC, | ) | Case No. 12-_____  (    ) |
| | ) | |
| | ) | Joint Administration Pending |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF EQUITY SECURITY HOLDERS

Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, GMAC

Mortgage, LLC (the "Debtor") submits the following list of the Debtor's equity security holders:

| Entity Name and Address | Percent Ownership |
|---|---|
| GMAC Residential Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of GMAC Mortgage, LLC, a Delaware

limited liability company, declare under penalty of perjury that I have read the foregoing and that

it is true and correct to the best of my information and belief, and will be supplemented to the

extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:  Chief Financial Officer

ny-1012325

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GMAC MORTGAGE, LLC, | ) | Case No. 12- _____ (   ) |
| | ) | |
| | ) | Joint Administration Pending |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF CREDITORS

      GMAC Mortgage, LLC (the "Debtor") and its debtor affiliates set forth on Annex 1 attached hereto (collectively, the "Debtors") each filed a petition in this Court on May 14, 2012 for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. Contemporaneously with the filing of the petitions, the Debtors filed a single consolidated list of creditors (the "Consolidated List"), in lieu of separate lists. Due to its voluminous nature, the Consolidated List is being submitted to the Court electronically.

      I, James Whitlinger, the Chief Financial Officer of GMAC Mortgage, LLC, a Delaware limited liability company, declare under penalty of perjury that I have read the foregoing and that it is true and correct to the best of my information and belief, and will be supplemented to the extent additional information becomes available.

Dated: May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:  Chief Financial Officer

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 1 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due April 2013 [4] | | 473,416,000.00 |
| 2 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 750,000,000 Euros Aggregate Principal Amount of 7.125% Notes due May 2012 [4] | | 127,671,000.00 [5] |
| 3 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.875% Senior Unsecured Notes due June 2015 [4] | | 112,227,000.00 |
| 4 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 8.375% Notes due July 2014 [4] | | 103,743,000.00 [6] |
| 5 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due June 2012 [4] | | 79,879,000.00 |
| 6 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | €400,000,000 Aggregate Principal Amount of 8.375% Notes due May 2013 [4] | | 59,379,200.00 [6] |
| 7 | BNYMellon<br>C/O Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 698-3621<br>Fax: (212) 698-3599<br>Email: hector.gonzalez@dechert.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 8 | US Bank<br>C/O Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004 | Phone: (212) 574-1391<br>Fax: (212) 480-8421<br>Email: das@sewkis.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 9 | Deutsche Bank AG, New York<br>C/O Joe Salama<br>60 Wall Street<br>New York, NY 10005-2836 | Phone: (212) 250-9536<br>Fax: (866) 785-1127<br>Email: joe.salama@db.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 10 | Federal Housing Finance Agency<br>C/O Alfred Pollard<br>400 Seventh Street, SW | Phone: (202) 649-3804<br>Fax:<br>Email: GeneralCounsel@FHFA.org | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 11 | MBIA, Inc.<br>C/O Cadwalader, Wickersham & Taft<br>One World Financial Center<br>New York, NY 10281 | Phone: (212) 504-6373<br>Fax: (212) 504-6666<br>Email: gregory.petrick@cwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 12 | Ambac Assurance Corp<br>C/O Patterson Belknap Webb & Tyler<br>1133 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 336-2140<br>Fax: (212) 336-2094<br>Email: prforlenza@pbwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 13 | Financial Guaranty Insurance Co.<br>C/O Jones Day<br>222 East 41st Street<br>New York, NY 10017-6702 | Phone: (212) 326-7844<br>Fax: (212) 755-7306<br>Email: cball@jonesday.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 14 | Assured Guaranty Corp.<br>C/O Margaret Yanney<br>31 West 52nd Street<br>New York, NY 10019 | Phone: (212) 857-0581<br>Fax: (212) 893-2792<br>Email: myanney@assuredguaranty.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 15 | Thrivent Financial for Lutherans<br>C/O Teresa J. Rasmussen<br>625 Fourth Avenue S.<br>Minneapolis, MN 55415-1624 | Phone: (800) 847-4836<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 16 | West Virginia Investment Management Board<br>C/O Craig Slaughter<br>500 Virginia Street East, Suite 200 | Phone: (304) 345-2672<br>Fax:<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 17 | Allstate Insurance<br>C/O Quinn Emanuel Urquhart & Sullivan<br>865 S. Figueroa Street, 10th Floor | Phone: (213) 443-3000<br>Fax:<br>Email: danbrockett@quinnemanuel.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 18 | Western & Southern<br>C/O Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue<br>New York, NY 10110 | Phone: (212) 382-3300<br>Fax:<br>Email: dwollmuth@wmd-law.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 19 | The Union Central Life Insurance Company<br>C/O Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900 | Phone: (619) 231-1058<br>Fax: (619) 231-7423<br>Email: stevep@rgrdlaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 20 | Cambridge Place Investment Management Inc.<br>C/O Donnelly, Conroy & Gelhaar LLP<br>1 Beacon Street, 33rd Floor | Phone: (617) 720-2880<br>Fax: (617) 720-3553<br>Email: mad@dcglaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 21 | Sealink Funding Limited<br>C/O Labaton Sucharow LLP<br>140 Broadway | Phone: (212) 907-0869<br>Fax: (212) 883-7069<br>Email: jbernstein@labaton.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 22 | Stichting Pensioenfonds ABP<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone: (302) 622-7040<br>Fax: (302) 622-7100<br>Email: gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 23 | Huntington Bancshares Inc.<br>C/O Grant & Eisenhofer<br>123 S. Justison Street | Phone: (302) 622-7040<br>Fax: (302) 622-7100<br>Email: gjarvis@gelaw.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 24 | Federal Home Loan Bank of Chicago<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 25 | Federal Home Loan Bank of Boston<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 26 | Federal Home Loan Bank of Indianapolis<br>C/O Keller Rohrback LLP<br>1201 Third Avenue, Suite 3200 | Phone: (206) 623-1900<br>Fax: (206) 623-3384<br>Email: dloeser@kellerrohrback.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 27 | Massachusetts Mutual Life Insurance Company<br>C/O Bernadette Harrigan<br>1295 State Street | Phone:  (413) 788-8411<br>Fax:    (413) 226-4268<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 28 | National Credit Union Administration Board<br>C/O Susman Godfrey LLP<br>1901 Avenue of the Stars, Suite 950 | Phone:  (310) 789-3100<br>Fax:    (310) 789-3150<br>Email:  mseltzer@susmangodfrey.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 29 | The Charles Schwab Corporation<br>C/O Grais & Ellsworth LLP<br>70 East 55th Street<br>New York, NY 10022 | Phone:  (212) 755-0100<br>Fax:    (212) 755-0052<br>Email: | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 30 | New Jersey Carpenters Health Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 31 | New Jersey Carpenters Vacation Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 32 | Boilermaker Blacksmith National Pension Trust<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 33 | Police and Fire Retirement System of the City of Detroit<br>C/O Zwerling, Schachter & Zwerling<br>41 Madison Avenue<br>New York, NY 10010 | Phone:  (212) 223-3900<br>Fax:    (212) 371-5969<br>Email:  rzwerling@zsz.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 34 | Orange County Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 35 | Midwest Operating Engineers Pension Trust Fund<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 36 | Iowa Public Employees Retirement System<br>C/O Cohen Milstein Sellers & Toll PLLC<br>150 East 52nd Street, Thirtieth Floor<br>New York, NY 10022 | Phone:  (212) 838-7797<br>Fax:    (212) 838-7745<br>Email:  jlaitman@cohenmilstein.com | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 37 | Brian Kessler, et al<br>C/O Walters Bender Strohbehn & Vaughan, P.C.<br>2500 City Center Square, 1100 Main, Suite 2500 | Phone:  (816) 421-6620<br>Fax:    (816) 421-4747<br>Email:  jhaake@wbsvlaw.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 38 | Donna Moore<br>C/O Kessler Topaz Meltzer & Check, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087 | Phone:  (610) 822-0242<br>Fax:    (610) 667-7056<br>Email:  eciolko@ktmc.com | Contingent Litigation | Contingent, Unliquidated, Disputed | Unknown |

Residential Capital LLC, et al.
Top Unsecured Creditors
In USD
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 39 | Stevens And Ruth Mitchell<br>C/O Walters Bender Strohbehn & Vaughan, P.C<br>2500 City Center Square, 1100 Main Street<br>Kansas City, MO 64105 | Phone: (816) 421-6620<br>Fax: (816) 421-4747<br>Email: awalter@wbsvlaw.com | Settled Litigation | | 14,500,000.00 |
| 40 | Indecomm Global Services<br>200 Middlesex Essex Turnpike<br>Suite 102<br>Iselin, NJ 08830 | Phone: (732) 404-0081 Ext. 208<br>Fax:<br>Email: Rajan@indecomm.net | General Trade Payable | | 675,000.00 |
| 41 | Alan Gardner<br>C/O Williamson & Williams<br>187 Parfitt Way SW, Suite 250<br>Bainbridge Island, WA 98110 | Phone: (206) 441-5444<br>Fax: (206) 780-5557<br>Email: roblin@williamslaw.com | Settled Litigation | | 555,000.00 |
| 42 | Tiffany Smith<br>C/O Schroeter Goldmark & Bender<br>500 Central Bldg., 810 Third Ave.<br>Seattle, WA 98104 | Phone: (206) 522-8000<br>Fax: (206) 682-2305<br>Email: info@sgb-law.com | Settled Litigation | | 275,000.00 |
| 43 | Don E. Diane M. Patterson<br>C/O Siegel Brill, P.A.<br>100 Washington Avenue South, Suite 1300<br>Minneapolis, MN 55401 | Phone: (612) 337-6100<br>Fax: (612) 339-6591<br>Email: heidifurlong@siegelbrill.com | Settled Litigation | | 157,950.00 |
| 44 | Wells Fargo & Company<br>Wf 8113, P.O. Box 1450<br>Minneapolis, MN 55485 | Phone: (612) 667-7121<br>Fax:<br>Email: | General Trade Payable | | 121,000.00 |
| 45 | Credstar<br>12395 First American Way<br>Poway, CA 92064 | Phone: (800) 921-6700, ext 5129<br>Fax:<br>Email: LPulford@corelogic.com | General Trade Payable | | 99,773.65 |
| 46 | Emortgage Logic<br>9151 Boulevard 26, Suite 400<br>N. Richland Hills, TX 76180-5605 | Phone: (817) 581-2900<br>Fax:<br>Email: info@emortgagelogic.com | General Trade Payable | | 87,910.00 |
| 47 | Aegis Usa Inc.<br>2049 Century Park East, Suite 300<br>Los Angeles, CA 90067 | Phone: +63 2 8858000<br>Fax:<br>Email: Kapil.Chopra@aegisglobal.com | General Trade Payable | | 72,116.56 |
| 48 | ISGN Fulfillment Services Inc<br>3220 Tillman Drive, Suite 301<br>Bensalem, PA 19020 | Phone: (800) 656-7571<br>Fax:<br>Email: Scott.stifer@isgn.com | General Trade Payable | | 65,754.00 |
| 49 | US Bank<br>Corporate Trust Services<br>60 Livingston Ave<br>St. Paul, MN 55107 | Phone: (651) 495-3839<br>Fax: (866) 869-1624<br>Email: michelle.moeller@usbank.com | General Trade Payable | | 64,000.00 |
| 50 | Deborah Pangel and Lee Sachs<br>C/O Linda Tirelli<br>One North Lexington Avenue, 11th Floor<br>White Plains, NY 10601 | Phone: (914) 946-0860<br>Fax: (914)946-0870<br>Email: WestchesterLegal@aol.com | Settled Litigation | | 55,000.00 |

Notes:
[1]    For all litigation settlements, the counterparty's attorney is listed as addressee.
[2]    General Trade Payable claims are based on balances in the Debtors' Accounts Payable system as of close of business May 11, 2012.
[3]    Estimated amount of claim for unsecured bonds represents principal balances as of 5/9/12 and does not include accrued interest or fees.
[4]    As of Indenture dated June 24, 2005 between Residential Capital Corporation and Deutsche Bank Trust Company Americas,
       as Indenture Trustee (amended on June 24, 2005, November 21, 2005, and May 16, 2006). A $20.1 million semi-annual interest payment
       due in April 2012 for the senior unsecured note maturing in April 2013 was not made.
[5]    Estimated amount of claim for EUR notes is based on an exchange rate of 1.29480 on May 11, 2012.
[6]    Estimated amount of claim for GBP notes is based on an exchange rate of 1.61418 on May 11, 2012.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| GMAC MORTGAGE, LLC, | Case No. 12-_____ (   ) |
| | Joint Administration Pending |
| Debtor. | |

## CORPORATE OWNERSHIP STATEMENT

In accordance with Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure,

GMAC Mortgage, LLC (the "Debtor") hereby states that the following corporations directly or

indirectly own 10% or more of the Debtor's equity interests as of May 14, 2012:

| Shareholder | Percentage of Shares Held |
|---|---|
| GMAC Residential Holding Company, LLC | 100% |

I, James Whitlinger, the Chief Financial Officer of GMAC Mortgage, LLC, a Delaware

limited liability company, declare under penalty of perjury that I have read the foregoing and that

it is true and correct to the best of my information and belief, and will be supplemented to the

extent additional information becomes available.

Dated:  May 14, 2012

/s/ James Whitlinger
Name: James Whitlinger
Title:  Chief Financial Officer

## ACTION BY WRITTEN CONSENT OF THE BOARD OF DIRECTORS
## OF GMAC MORTGAGE, LLC,
## A SUBSIDIARY OF RESIDENTIAL CAPITAL, LLC

The undersigned, being all of the Directors of GMAC Mortgage, LLC ("GMAC Mortgage"), an indirect subsidiary of Residential Capital, LLC ("ResCap"), and constituting the entire Board of Directors of GMAC Mortgage (the "Board"), acting pursuant to applicable law, hereby waives any and all requirements for the holding of a meeting, including, without limitation, any requirements as to call and notice thereof, and consents to the adoption of the following recitals and resolutions and to the actions set forth herein as of this 13th day of May, 2012, which actions shall have the same force and effect as if taken by affirmative vote at a meeting of the Board, duly called and held.

WHEREAS, the Board (i) has extensively reviewed the alternatives available to GMAC Mortgage, (ii) has been advised of and considered the decision of the Board of Directors of ResCap to authorize the commencement of a case under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for itself and for certain of its direct and indirect subsidiaries, and (iii) has determined that seeking relief under the provisions of Chapter 11 of the Bankruptcy Code presents the best opportunity for preserving and maximizing the value of the enterprise for the benefit of GMAC Mortgage, its subsidiaries, creditors, employees, stakeholders and other interested parties;

WHEREAS, GMAC Mortgage has engaged in negotiations ranging from preliminary to late-stage with a number of prospective strategic and financial investors who expressed interest in pursuing a transaction and sale process to acquire substantially all of the assets of GMAC Mortgage pursuant to 11 U.S.C. §§ 105, 363 and 365 (a "Section 363 Sale");

WHEREAS, GMAC Mortgage has narrowed the field of prospective investors interested in pursuing a Section 363 Sale to Fortress Investment Group LLC ("Fortress"), a leading, highly diversified global investment management firm;

WHEREAS, the proposed transaction with Fortress would entail the sale of substantially all of GMAC Mortgage's assets, including its mortgage loan origination and servicing businesses, in a Section 363 Sale as part of a Chapter 11 bankruptcy proceeding filed by GMAC Mortgage, and the institution of an auction process under the supervision of the Bankruptcy Court to ensure that the price and terms obtained by GMAC Mortgage constitute the best available transaction for GMAC Mortgage (such transactions being collectively referred to herein as the "Fortress Transaction");

WHEREAS, the Board has determined that it is in the best interests of GMAC Mortgage that GMAC Mortgage pursue the Fortress Transaction;

WHEREAS, the Board has also been presented by the management of GMAC Mortgage with a proposed Superpriority Debtor-in-Possession Credit and Guaranty Agreement (the "Credit Agreement") by and among GMACM Borrower, LLC ("GMACM Borrower"), GMACM Borrower, LLC ("GMACM Borrower"; together with GMACM Borrower, the "Borrowers"), ResCap, GMAC Mortgage, Residential Funding Company, LLC, certain subsidiaries of ResCap

from time to time party thereto as guarantors (the "Guarantors"; the Guarantors, together with the Borrowers, the "Credit Parties," and each, a "Credit Party"), GMAC Mortgage and Residential Funding, as Administrators, Originators, Receivables Custodians and Servicers, GMAC Mortgage, as GMACM Servicer, certain financial institutions from time to time party thereto as lenders (the "Lenders"), Barclays Bank PLC ("Barclays"), as administrative agent for the Lenders (the "Administrative Agent"), Barclays, as collateral agent (the "Collateral Agent") and Barclays, as syndication agent, and the other persons from time to time party thereto, pursuant to which GMAC Mortgage intends to (i) provide an absolute and unconditional guaranty (the "Guaranty"), on a joint and several basis with the other guarantors, of all obligations, liabilities and indebtedness of the Credit Parties, as contemplated by or specified in the Credit Documents (as defined below) and the Orders (as defined in the Credit Agreement) (the "Obligations") and (ii) grant to the Collateral Agent security interests, pledges and encumbrances, as contemplated by or specified in the Credit Documents and the Orders;

WHEREAS, the Board has determined GMAC Mortgage will benefit, directly or indirectly, from the loans being made under the Credit Agreement and that it is in the best interests of GMAC Mortgage to grant a lien and to guaranty the Obligations on the terms and conditions set forth in the Credit Agreement;

WHEREAS, the Board has also been presented by the management of GMAC Mortgage with an GMACM Receivables Pooling and Purchase Agreement (the "Pooling Agreement") to be entered into between GMAC Mortgage and GMACM Borrower, pursuant to which it is intended that GMAC Mortgage sell and assign certain receivables and the proceeds thereof (the "Transferred Receivables") to GMACM Borrower;

WHEREAS, pursuant to a GMACM Mortgage Loan Purchase and Contribution Agreement (the "Mortgage Loan Purchase Agreement") to be entered into between GMAC Mortgage and GMACM Borrower, it is intended that GMAC Mortgage sell and contribute certain mortgage loans and related assets (the "Transferred Mortgage Loans"; together with the Transferred Receivables, the "Transferred Assets") to GMACM Borrower;

WHEREAS, pursuant to a GMACM Receivables Purchase Agreement (the "Receivables Purchase Agreement"; together with the Pooling Agreement and the Mortgage Loan Purchase Agreement, the "GMACM Transfer Agreements") to be entered into among GMAC Mortgage, as Originator and Servicer, GMACM Borrower, and GMAC Mortgage Servicer Advance Funding Company Ltd. ("GMAC Mortgage Servicer"), as the "GSAP Transferor," it is intended that the GSAP Transferor sell and assign certain receivables to GMACM Borrower;

WHEREAS, the Board has determined that it is in the best interests of GMAC Mortgage to transfer certain assets to GMACM Borrower under the terms and conditions of the GMACM Transfer Agreements set forth above;

WHEREAS, under (a) a Satisfaction and Discharge Agreement (the "Satisfaction and Discharge Agreement") to be entered into between GMAC Mortgage, Residential Funding, GMAC Mortgage Servicer, as the "GSAP Issuer", The Bank of New York Mellon ("BONY"), and Barclays, and (b) an Omnibus Termination Agreement (together with the Satisfaction and Discharge Agreement, the "GSAP Termination Agreements") to be entered into between GMAC

Mortgage, Residential Funding, the GSAP Issuer, GMACR Mortgage Products, LLC, GMACM-GSAP Servicer Advance, LLC, BONY, MaplesFS Limited and Barclays, it is intended that the Fourth Amended and Restated Indenture, dated as of March 15, 2011 (the "GSAP Indenture"), which amends and restates the Third Amended and Restated Indenture, dated as of April 15, 2010 (as amended by Amendment No. 1 dated as of January 26, 2011), which amended and restated a Second Amended and Restated Indenture, dated as of March 6, 2008, which amended and restated a First Amended and Restated Indenture, dated as of March 18, 2005, which amended and restated an Indenture dated as of June 30, 2004 (the "Base Indenture"), among the GSAP Issuer, GMAC Mortgage, as an administrator and a servicer, Residential Funding, as an administrator and a servicer, and BONY, as indenture trustee, calculation agent and paying agent (the "GSAP Indenture Trustee"), as such Base Indenture was amended by the Series 2012-VF1 Indenture Supplement and Amendment No. 1, dated as of March 13, 2012, by and among the GSAP Issuer, GMAC Mortgage, Residential Funding, the GSAP Indenture Trustee and Barclays, as administrative agent, will be satisfied and discharged and certain ancillary agreements relating to the GSAP Indenture and the Base Indenture shall be terminated;

WHEREAS, pursuant to (a) a Payoff Letter (the "Payoff Letter") to be delivered by BMMZ Holdings LLC ("BMMZ") and acknowledged and agreed to by Residential Funding, GMAC Mortgage and ResCap and (b) certain notices (the "BMMZ Notices" and, together with the Payoff Letter, the "BMMZ Termination Agreements") delivered in connection therewith, Residential Funding and GMAC Mortgage will repurchase all mortgage loans sold by such party to BMMZ under the Master Repurchase Agreement (the "Repurchase Agreement") dated as of December 21, 2011 among Residential Funding, as seller, and GMAC Mortgage, as seller and servicer, ResCap, as guarantor and BMMZ as buyer, all obligations of Residential Funding and GMAC Mortgage under the Repurchase Agreement will be satisfied and certain ancillary agreements relating to the Repurchase Agreement shall be terminated;

WHEREAS, the Board has determined that it is in the best interests of GMAC Mortgage to enter into the GSAP Termination Agreements and the BMMZ Termination Agreements (the "Termination Agreements");

WHEREAS, in connection with entering into the Credit Agreement, the Credit Parties may negotiate, prepare, execute, deliver, acknowledge, attest and perform (or cause to be negotiated, prepared, executed, delivered, acknowledged, attested and performed) any applicable fee letters, engagement letters, commitment letters, promissory notes, guaranty agreements, collateral documents, pledge agreements, cash collateral and reimbursement agreements, deeds of trust, mortgages, control agreements, custodial agreements, other security agreements, assignments, endorsements and other instruments of transfer, intercreditor and/or subordination agreements, agency agreements, instruction letters, appointment and authorization agreements, payoff letters, financing statements, hedging agreements and other agreements, certificates, instruments and documents as may be contemplated by, related to or required in connection with the Credit Agreement or the transactions contemplated thereby (together with the Credit Agreement, Guaranty, the Receivables Purchase Agreement, Pooling Agreement and Mortgage Loan Purchase Agreement, the "Credit Documents");

WHEREAS, the Board has been presented with an Asset Purchase Agreement (the "NSM Asset Purchase Agreement"), among ResCap, Residential Funding, GMAC

Mortgage, Executive Trustee Services, LLC ("ETS LLC"), EPRE LLC ("EPRE"), ETS of Washington, Inc., ("ETS WA") and the additional sellers identified on Schedule A to the NSM Asset Purchase Agreement (together with ResCap, Residential Funding, GMAC Mortgage, ETS LLC, ETS WA and EPRE, the "Sellers"), and NationStar Mortgage LLC ( "Purchaser"), pursuant to which the Sellers will sell certain of their assets to Purchaser and Purchaser will assume certain of the Sellers' Liabilities on the terms and conditions set forth in the NSM Asset Purchase Agreement (the "NSM Asset Sale");

WHEREAS, the Board has also been presented with a Deposit Escrow Agreement (the "Escrow Agreement"), among the Sellers, Purchaser and JPMorgan Chase Bank, NA as the Escrow Agent with respect to the Cash Deposit (as defined in the NSM Asset Purchase Agreement);

WHEREAS, the Board has also been presented with an Asset Purchase Agreement (the "AFI Asset Purchase Agreement," together with the NSM Asset Purchase Agreement and the Escrow Agreement, the "Asset Purchase Agreements"), between ResCap, Residential Funding and GMAC Mortgage, and BMMZ and Ally Financial Inc. ("AFI"), pursuant to which such Sellers will sell certain Whole Loans, Advances (each as defined in the AFI Asset Purchase Agreement) and other assets to BMMZ (the "AFI Asset Sale"), and AFI will guarantee the obligations of BMMZ thereunder;

WHEREAS, the Board has determined that it is in the best interests of GMAC Mortgage to pursue the NSM Asset Sale and the AFI Asset Sale and to enter into the Asset Purchase Agreements;

WHEREAS, the Board has had the opportunity to fully consider each of the strategic alternatives available to GMAC Mortgage; and

WHEREAS, after consideration of all factors and information the Board deemed relevant, the Board finds that (i) it is desirable for, fair to and in the best interests of GMAC Mortgage, its subsidiaries, creditors, stakeholders and other parties in interest, that GMAC Mortgage (i) file or cause to be filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code in which the authority to operate as a debtor-in-possession will be sought (the "Chapter 11 Filing"), (ii) effect the Fortress Transaction as a Section 363 Sale, (iii) execute and deliver the Credit Agreement and the other Credit Documents, to the extent party thereto, and perform its obligations thereunder, including the provision of the Guaranty and granting of a security interest, (iv) transfer the Transferred Assets to GMACM Borrower on the terms and conditions set forth in the GMACM Transfer Agreements, (v) enter into the Termination Agreements, and (vi) enter into the Asset Purchase Agreements.

NOW THEREFORE, BE IT RESOLVED as follows:

## COMMENCEMENT OF BANKRUPTCY CASES

RESOLVED, that GMAC Mortgage is authorized and directed to file a petition seeking relief under the provisions of Chapter 11 of the Bankruptcy Code;

**RESOLVED**, that each of the Authorized Officers of GMAC Mortgage (it being understood that, for the purposes of these resolutions, the "Authorized Officers" of GMAC Mortgage shall include, without limitation, the most senior officer of GMAC Mortgage and any other officer determined by the Chief Executive Officer or Chief Financial Officer of GMAC Mortgage to be an appropriate officer with respect to the action taken) is hereby authorized, empowered and directed, in the name and on behalf of GMAC Mortgage, to execute and verify a petition under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in such form and at such time as the Authorized Officer executing such petition on behalf of GMAC Mortgage shall determine;

**RESOLVED**, that in connection with the commencement of the Chapter 11 case by GMAC Mortgage, each Authorized Officer is authorized, in the name and on behalf of GMAC Mortgage, to negotiate, execute, and deliver such notes, security and other agreements, and instruments as such Authorized Officer considers appropriate to enable GMAC Mortgage to enter into one or more agreements to (i) guaranty the Obligations under the Credit Agreement, and (ii) utilize cash collateral on the terms and conditions such Authorized Officer or Authorized Officers executing the same may consider necessary, proper, or desirable, and to consummate the transactions contemplated by such notes, security and other agreements and instruments on behalf of GMAC Mortgage, subject to Bankruptcy Court approval;

**RESOLVED**, that each Authorized Officer is authorized and directed, in the name and on behalf of GMAC Mortgage, to cause GMAC Mortgage to enter into, execute, deliver, certify, file and/or record, negotiate, and perform (or direct others to do so on their behalf as provided herein), any and all petitions, schedules, lists, motions, certifications, agreements, instruments, affidavits, applications, including, without limitation, applications for approvals or rulings of governmental or regulatory authorities, or other documents, and in that connection to employ and retain legal counsel, accountants or other professionals, and to take such other actions, as in the judgment of such Authorized Officer shall be or become necessary, proper, or desirable in connection with the Chapter 11 Filing contemplated hereby, with a view to the successful prosecution of such case, including any and all action necessary, proper or desirable in connection with obtaining the use of cash collateral or debtor-in-possession financing;

**RESOLVED**, that Tammy Hamzehpour is hereby appointed as Assistant Secretary of GMAC Mortgage;

**RESOLVED**, that the Board approves and endorses GMAC Mortgage taking any and all action, including authorizing a filing in the Bankruptcy Court, and to execute and deliver all documents, agreements, motions and pleadings as are necessary, proper, or desirable to enable GMAC Mortgage to carry out the filing in Bankruptcy Court contemplated hereby, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code;

## SECTION 363 ASSET SALE AUTHORIZATION

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are authorized, empowered and directed, to petition the

Bankruptcy Court to effect the Fortress Transaction through an auction process overseen by the Bankruptcy Court in a Section 363 Sale;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more other Authorized Officers be, and they hereby are, authorized and empowered to execute and file on behalf of GMAC Mortgage all petitions, schedules, lists and other motions, papers or documents, and to take any and all action that they deem necessary or advisable to effect the Fortress Transaction as a Section 363 Sale;

## DEBTOR-IN-POSSESSION FINANCING AUTHORIZATION

**RESOLVED**, that GMAC Mortgage is authorized to grant to the Collateral Agent and the Lenders security interests, pledges and encumbrances in and of certain property of GMAC Mortgage as provided in the Credit Agreement;

**RESOLVED**, that the form, terms and provisions of the Credit Agreement, including the Guaranty, together with all schedules and exhibits thereto, of which a draft was submitted to this Board, are advisable and fair to and in the best interests of GMAC Mortgage and are in all respects approved;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of GMAC Mortgage, the Credit Agreement and the other Credit Documents referred to therein to which GMAC Mortgage is a party, including the Collateral Documents (as defined in the Credit Agreement) to be delivered thereunder, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other applicable Credit Documents which the Lenders, the Administrative Agent or the Collateral Agent may require in connection with the Credit Agreement in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

**RESOLVED**, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of GMAC Mortgage, any addendum to, amendment of, or other renewal or extension of the Credit Agreement, or any other Credit Documents at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

**RESOLVED**, that the execution, delivery and consummation of the transactions contemplated by the Credit Agreement, in substantially the form of and with terms and conditions as presented to the Board (with such changes or additions thereto as the Authorized Officer executing the same shall deem necessary, advisable or appropriate), and the other Credit Documents and all other instruments required or deemed necessary or desirable by any Authorized Officer in connection with the Credit Agreement and the performance by GMAC Mortgage of its obligations thereunder (including, without limitation, with respect to (i) the terms of the Guaranty and the granting of liens and security interests to be granted under the Credit

Documents and Orders and (ii) the payment of any fees and expenses associated therewith), be, and they hereby are, adopted, approved, authorized and ratified in all respects;

**RESOLVED**, that any Authorized Officer, or any other officer or employee of GMAC Mortgage authorized by an Authorized Officer in accordance with GMAC Mortgage's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of GMAC Mortgage in connection with the Credit Documents, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions, the execution thereof by such Authorized Officer of the Company to be conclusive evidence of such determination;

**RESOLVED**, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Credit Documents are ratified and affirmed;

**RESOLVED**, that these resolutions shall continue in full force and effect until the Administrative Agent receives notice in writing of their revocation by a resolution duly adopted by the Board (provided that any such notice shall not affect the Credit Agreement and any other Credit Documents in effect at the time such notice is given or any outstanding borrowings and other extensions of credit from the Administrative Agent or the Lenders under the Credit Documents or otherwise);

**RESOLVED**, that the Credit Agreement, together with its schedules and exhibits, and any and all other Credit Documents referred to therein, submitted to this Board shall be filed by the Secretary or Assistant Secretary of GMAC Mortgage among the records of GMAC Mortgage;

## AUTHORIZATION OF CERTAIN ASSET TRANSFERS

**RESOLVED**, that GMAC Mortgage is authorized to (i) sell and assign the Transferred Receivables to GMACM Borrower as provided in the Pooling Agreement, and (ii) sell and contribute the Transferred Mortgage Loans to GMACM Borrower as provided in the Mortgage Loan Purchase Agreement;

**RESOLVED**, that the form, terms and provisions of the GMACM Transfer Agreements, together with all attachments thereto, of which a draft was submitted to this Board, are in all respects approved;

**RESOLVED**, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of GMAC Mortgage, the GMACM Transfer Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the GMACM Transfer Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

ny-1040139

RESOLVED, that any Authorized Officer is authorized to negotiate, execute and deliver, for and on behalf of GMAC Mortgage, any addendum to, amendment of, or other renewal or extension of the GMACM Transfer Agreements at any time after the execution thereof, such addendum, amendment, renewal or extension to be in such form and of such content as shall be approved by the Authorized Officer who executes the same, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of GMAC Mortgage authorized by an Authorized Officer in accordance with GMAC Mortgage's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of GMAC Mortgage in connection with the GMACM Transfer Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions; ·

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the GMACM Transfer Agreements are ratified and affirmed;

RESOLVED, that the GMACM Transfer Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to GMAC Mortgage, shall be filed by the Secretary or Assistant Secretary of GMAC Mortgage among the records of GMAC Mortgage;

## AUTHORIZATION OF THE TERMINATION AGREEMENTS

RESOLVED, that the form, terms and provisions of the Termination Agreements, together with all attachments thereto, drafts of which were submitted to this Board, are in all respects approved;

RESOLVED, that the Authorized Officers, each acting alone or with one or more Authorized Officers, may (i) negotiate, execute and deliver for and on behalf of GMAC Mortgage, the Termination Agreements, in substantially the forms hereby approved, with such changes, additions or deletions as the Authorized Officer executing the same may approve, such execution to be conclusive evidence of such approval, and (ii) negotiate, execute and deliver all other instruments, certificates, papers, agreements and other documents which may be required in connection with the Termination Agreements in such form and of such content as any such Authorized Officer shall approve, such execution to be conclusive evidence of such approval;

RESOLVED, that any Authorized Officer, or any other officer or employee of GMAC Mortgage authorized by an Authorized Officer in accordance with GMAC Mortgage's procedures, may pay any and all costs, expenses and fees, do and perform all acts and execute and deliver any further instrument, certificate or document in the name and on behalf of GMAC Mortgage in connection with the Termination Agreements, as such Authorized Officer deems necessary or appropriate to carry out the purposes and intent of these resolutions;

RESOLVED, that the authority given in these resolutions is retroactive and any and all acts authorized herein performed before the passage of these resolutions in connection with the Termination Agreements are ratified and affirmed;

**RESOLVED**, that the Termination Agreements, together with the attachments thereto, and any and all other documents referred to therein, submitted to GMAC Mortgage, shall be filed by the Secretary or Assistant Secretary of GMAC Mortgage among the records of GMAC Mortgage;

## AUTHORIZATION OF THE ASSET PURCHASE AGREEMENTS

**RESOLVED**, that the form, terms and provisions of the Asset Purchase Agreements, drafts of which were submitted to the Board, are in all respects authorized and approved;

**RESOLVED**, that the Authorized Officers are authorized to enter into, execute and deliver the Asset Purchase Agreements on behalf of GMAC Mortgage, and any other agreement, instrument, document, or certificate required pursuant to any or necessary or desirable to effect the purposes of the Asset Purchase Agreements (together with the Asset Purchase Agreements, the "Transaction Documents"), together with such changes therein as the Authorized Officer executing the same shall deem necessary, desirable or appropriate, such execution to be conclusive evidence of such necessity, desirability or appropriateness, and to take such other actions as may be required to be taken by GMAC Mortgage;

**RESOLVED**, that any and all actions heretofore or hereafter taken by the Authorized Officers within the terms of any of the foregoing resolutions are ratified and confirmed as the acts and deeds of the Company;

**RESOLVED**, that each of the Authorized Officers is authorized and directed to execute and deliver any and all agreements, instruments and other documents and to take such other actions as they deem necessary, desirable, or appropriate to carry out the purposes and intent of the foregoing resolutions;

**RESOLVED**, that the Assistant Secretary is authorized to prepare and to certify as a resolution of GMAC Mortgage such additional resolutions as such Authorized Officer, acting upon advice of counsel to GMAC Mortgage, shall deem necessary or advisable to accomplish the purposes of the foregoing resolutions;

## GENERAL AUTHORIZATION AND RATIFICATION

**RESOLVED**, that each Authorized Officer is authorized and directed, consistent with these Resolutions and with the advice of counsel to GMAC Mortgage: (i) to negotiate, execute, deliver, certify, file and/or record, and perform, any and all of the agreements, documents, and instruments referenced herein, and such other agreements, documents, and instruments and assignments thereof as may be required or as such Authorized Officer deems appropriate or advisable, or to cause the negotiation, execution, and delivery thereof, as the case may be, in such form and substance as such Authorized Officer may approve, together with such changes and amendments to any of the terms and conditions thereof as such Authorized Officer may approve, (ii) to negotiate, execute, deliver, certify, file and/or record, and perform any agreements, documents, certificates, consents, filings, and applications relating to the Resolutions adopted and matters ratified or approved herein and the transactions contemplated thereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such Authorized Officer deems appropriate or advisable in connection

therewith, and (iii) to do such other things as may be required, or as may in such Authorized Officer's judgment be necessary, proper, or desirable, to carry out the intent and effectuate the purposes of the Resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby;

**RESOLVED**, that any Authorized Officer be, and each of them individually is, empowered, authorized and directed, for and on behalf of GMAC Mortgage, to take or cause to be taken any and all such further actions, to execute and deliver or cause to be executed and delivered all such contracts, documents, instruments and agreements providing for the engagement, retention, compensation, reimbursement or expenses and indemnification of any legal counsel, accounting firm, investment banking firm or other such consultants, advisors and other agents, to incur and pay all such fees and expenses and to retain any such legal counsel, accounting firm, investment banking firm or other such consultants, advisers and other agents, in each case as they shall in their judgment determine to be necessary, desirable or advisable to carry out fully the intent and purpose of the foregoing resolutions and the execution by such Authorized Officer of any such document, instrument or agreement or the payment of any such expenses or the doing by them of any act in connection with the foregoing matters shall conclusively establish their authority therefore and the approval of the documents, instruments or agreements so executed, the expenses so paid and the actions so taken;

**RESOLVED**, that any person dealing with any Authorized Officer or Authorized Officers in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by his or her execution of any document or agreement, the same shall be a valid and binding obligation of GMAC Mortgage enforceable in accordance with its terms;

## RETENTION OF PROFESSIONALS AND PAYMENT OF FEES AND EXPENSES

**RESOLVED**, that the law firm of Morrison & Foerster LLP is employed as attorneys for GMAC Mortgage under a general retainer in the Chapter 11 case, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of FTI Consulting Inc. is employed to provide financial advisory services to GMAC Mortgage, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of Centerview Partners LLC is employed to provide investment banking services to GMAC Mortgage, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the firm of Kurtzman Carson Consultants LLP is employed as claims and noticing agent to GMAC Mortgage, subject to the approval of the Bankruptcy Court;

**RESOLVED**, that the law firm of Curtis, Mallet-Prevost, Colt & Mosle LLP is employed as conflicts counsel for GMAC Mortgage in GMAC Mortgage's Chapter 11 cases, subject to the approval of the Bankruptcy Court;

RESOLVED, that the firm of Rubenstein Associates, Inc. is employed as public relations consultants to GMAC Mortgage in GMAC Mortgage's Chapter 11 case, subject to the approval of the Bankruptcy Court;

RESOLVED, that any Authorized Officer is authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that such Authorized Officer deems necessary, proper, or desirable in connection with GMAC Mortgage 's Chapter 11 case, with a view to the successful prosecution of such case;

RESOLVED, that all actions taken by the Authorized Officers, or any of them, prior to the date of the foregoing Resolutions adopted by consent and within the authority conferred, are ratified, confirmed, and approved in all respects as the act and deed of GMAC Mortgage.

IN WITNESS WHEREOF, the undersigned, being all of the members of the Board of Directors of GMAC Mortgage, execute this written consent, adopt the above recitals and resolutions, and direct a fully signed copy of this Action by Unanimous Written Consent of the Board of Directors to be filed with the minutes of proceedings of the Board of Directors of GMAC Mortgage.

ny-1040139

This Action by Unanimous Written Consent of the Board of Directors may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same Action by Unanimous Written Consent of the Board of Directors of GMAC Mortgage.

Dated: May 13, 2012                    /s/ James Whitlinger
                                       James Whitlinger


Dated: May 13, 2012                    /s/ Joseph A. Pensabene
                                       Joseph A. Pensabene


Dated: May 13, 2012                    /s/ Steven M. Abreu
                                       Steven M. Abreu

12-12020-mg    Doc 3830    Filed 05/24/13    Entered 05/24/13 17:29:45    Main Document
Pg 50 of 222

12-12020-mg    Doc 774    Filed 07/13/12 ~~Entered 07/13/12 17:05:20 Main Document~~    Docket #0774  Date Filed: 7/13/2012
Pg 1 of 19

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a),
362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING
THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS;
(II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF
CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING
LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION
PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO
PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY
SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to http://www.kccllc.net/rescap for additional information.



1212020120713000000000011

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

2

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon; and any objections to the Motion, including the NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient cause appearing therefor, it is hereby

### ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED on a final basis, as set forth herein, and any objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.    The Debtors are authorized, but not directed in their sole and absolute discretion and subject to available funding, to continue developing and implementing loss mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to the Petition Date, including, but not limited to, making incentive payments to borrowers in connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction proceedings, or in the form of borrower rebates for loan payoffs including honoring all obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively, the "Loss Mitigation Programs"); provided, however, that the aggregate cash payments made by the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed to the Debtors shall not exceed $550,000 per month (the "Monthly Cap"), absent consent of the Committee or further order of the Court; provided, further, however, that to the extent the Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the difference between the actual amount and the Monthly Cap in any succeeding month. The Debtors shall provide monthly reports to the Committee and the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), which reports shall be in a

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

3.    Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court. For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

Settlement Procedures

4.    The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a

Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-

tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "Tier II Settlement"); provided, that in each case:

> (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

4

Whitehall Street, 21st Floor, New York, New York 10004, Attn:
Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
and (z) counsel to the administrative agent for the Debtors'
providers of debtor in possession financing, Skadden, Arps, Slate,
Meagher & Flom LLP, 4 Times Square, New York, New York
10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
(collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed
Tier II Settlement must serve a written objection (by formal or
informal means, including by e-mail correspondence) on the
Debtors, so that it is received by no later than 4:00 p.m. (prevailing
Eastern Time) on the day that is seven (7) calendar days from the
date the Notice Parties received written notice of such Tier II
Settlement (the "Settlement Objection Deadline"). Objections
should be addressed to the proposed attorneys for the Debtors,
Morrison & Foerster LLP, 1290 Avenue of the Americas, New
York, New York 10104, Attn: Larren M. Nashelsky
(LNashelsky@mofo.com) and Norman S. Rosenbaum
(NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice
Party, the parties will confer and attempt to resolve any
differences. Failing that, the Debtors may petition the Court for
approval of the Tier II Settlement in accordance with any case
management orders entered in the Chapter 11 cases. An objection
by a Notice Party with respect to a given Tier II Settlement shall
not delay the finality or effectiveness of any other settlement to
which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a
Tier II Settlement from a Notice Party by the Settlement Objection
Deadline, then such Tier II Settlement shall be deemed approved
and the Debtors and Settling Parties may carry out the terms of
such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

5

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

      7.     The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims. For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

      8.     Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

      9.     Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

      10.    The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

6

11.    The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.    Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.    Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

7

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)    absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)    under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)    the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

Debtors will not object to the Interested Party's telephonic participation at any hearing on

the motion; and

   (f)  nothing set forth herein shall preclude or limit any Interested Party

from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code

on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

   15.  The automatic stay imposed by section 362(a) of the Bankruptcy Code

applicable against a borrower who currently has filed, or in the future files, for bankruptcy

protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby

modified pursuant to the following terms and conditions:

   (a)  except as set forth herein, a Bankruptcy Borrower or a trustee duly

appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to

prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's

bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the

Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's

bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or

adversary proceeding, as applicable, to determine the validity, priority or extent of a

Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to

prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce

(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the

Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through

(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of

settlement with the Debtors where the Debtors elect to enter into such settlement in their

sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi)

above;

       (b)    except as set forth herein, a Bankruptcy Borrower shall be entitled to

(i) engage in court-supervised or court-authorized loss-mitigation programs regarding the

Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a

modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and

consummate settlements of claims and liens in accordance with the ordinary course of the

Debtors' business and applicable law;

       (c)    absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's

direct claims, counter-claims, motions or adversary proceedings:  (i) for monetary relief of

any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action; provided however, a

Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to

Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by

15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph

15(c);

10

(d)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)    with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

11

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)    except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)    the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)    the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)    the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.    *Actions Involving Amount, Validity Or Priority Of Liens*

17.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

        (a)      except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

        (b)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

        (c)      absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

        (d)      under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

        (e)      the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

13

clear and marketable title with respect to such property in connection with any sale, foreclosure or other disposition of such property;

(f)     the Debtors shall retain the right, upon appropriate motion and notice to any affected Third Party Claimant, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by the Order; and

(g)     nothing set forth herein shall preclude or limit any Third Party Claimant from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

18.     The Debtors shall continue to perform all of their respective servicing duties and servicing related duties, including, but not limited to, their duties as master servicer, under all the governing agreements (including, without limitation, pooling and servicing agreements, servicing agreements, or any other agreements concerning or relating to the Debtors' obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions and non-Debtor sponsored securitization transactions to which any of The Bank of New York Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors is a party, including but not limited to, making all principal, interest or other servicing advances (including property protection advances) and reimbursing, indemnifying, defending and holding harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

19.    The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims.  Thereafter, within thirty (30) days of presentment of such invoices, if no

15

ny-1046923

written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant and expert fees and costs) incurred postpetition by any of the Trustees relating to the performance of each of the Trustees' duties or the administration of the trusts or other agencies under the Agreements (the "Trustee Expenses") that are not subject to an objection by the Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and a detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the disputed amounts. This Court shall resolve any dispute as to the reasonableness of any fees and expenses.

20.     To the extent either the Committee, or the RMBS Trustees determine that the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in accordance with the applicable Agreement, and such adjustment shall be the Committee's and RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which (a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

21.    If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and 19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

23.    Any disputes regarding the extent, application and/or effect of the automatic stay under this Order shall be heard and determined in the Debtors' jointly administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

17

District of New York, Case No. 12-12020 in accordance with the Case Management Order
entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be
entered by the Court.

24.    The Debtors are authorized and empowered to take all actions and execute
such documents as may be necessary or appropriate to carry out the relief granted herein.

25.    Nothing herein shall be deemed to limit the rights of the Debtors to
operate their business in the ordinary course, and no subsequent order shall be required to
confirm such rights.

26.    Notwithstanding the relief granted herein and any actions taken hereunder,
nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any
contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their
non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or
otherwise.

27.    Notwithstanding anything to the contrary in this Order, any action to be
taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral
order or debtor in possession financing order entered in these chapter 11 proceedings. All
amounts authorized to be paid pursuant to this Order are subject to the limitations and
restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement). To
the extent that there is any inconsistency between the terms of this Order and the terms of any
order relating to postpetition financing or cash collateral, the terms of the orders relating to
postpetition financing or cash collateral shall govern.

28.    Notwithstanding anything herein to the contrary, this Order shall not
modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

18

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.

Dated:    July 13, 2012
New York, New York

_____/s/Martin Glenn_____
MARTIN GLENN
United States Bankruptcy Judge

19

ny-1046923

# RESCAP

Residential Capital, LLC (ResCap), previously announced that it and its subsidiaries, including
GMAC Mortgage, are restructuring under Chapter 11. Although you may not be familiar with
our name, ResCap is the parent company of GMAC Mortgage. You are receiving this letter
because you have been identified as a current customer, or were at one time considering
completing a loan application with GMAC Mortgage.

From time to time throughout these Chapter 11 proceedings, you may receive legal notices in the
mail related to ResCap's bankruptcy case. Enclosed with this letter is a legal document, which is
being mailed to a wide range of parties. The legal notice enclosed with this letter relates to the
process for filing "Proofs of Claim" in our Chapter 11 proceedings. This notice is being sent to
potential creditors who are or may be owed payment for obligations that arose prior to May 14,
2012, the date that ResCap filed for Chapter 11.

ResCap is providing this notice to all customers and mortgage loan applicants not because
ResCap believes that you have claims against ResCap, but because ResCap may be unaware of
claims a customer believes he or she may have.

The enclosed notice describes the "Bar Date" – the legal deadline by which any creditor must file
a Proof of Claim in these Chapter 11 proceedings for any obligations that arose prior to
May 14, 2012. **The Bar Date is November 9, 2012 at 5:00 p.m. (Eastern Time).**

Please review the enclosed notice materials carefully. If you believe you have a claim against the
Debtors for a matter or obligation that arose prior to May 14, 2012, you must file a Proof of
Claim by November 9, 2012 at 5:00 p.m. (Eastern Time), in accordance with the procedures set
forth in the notice. **A Proof of Claim form may be obtained at www.kccllc.net/rescap.**

If you are a defendant in a foreclosure action you do not need to file a Proof of Claim to protect
your defense to foreclosure, unless you have asserted any affirmative defenses that request
monetary relief. You do not need to file a Proof of Claim for you mortgage amount. Your
obligations under your loan agreement have not changed. As such, you should continue to make
your scheduled loan payments on time and in full to the address listed on your monthly account
statement.

**For additional information, please contact the ResCap Restructuring Hotline at 888-926-
3479, or submit an inquiry at www.kccllc.net/rescap.** If you require legal advice, however,
you may also wish to consult a lawyer to discuss the filing of a Proof of Claim.

Thank you for your continued support.

Residential Capital, LLC

ny-1058838

> **If you have any questions related to this notice, please call (888) 926-3479**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Gary S. Lee
Lorenzo Marinuzzi

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**

TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST RESIDENTIAL CAPITAL, LLC OR ITS AFFILIATED ENTITIES THAT ARE ALSO DEBTORS AND DEBTORS IN POSSESSION:

On August 29, 2012, the United States Bankruptcy Court for the Southern District of New York (the U.S. Bankruptcy Court") entered an order (the "Bar Date Order") establishing **November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time)** (the "General Bar Date") as the last date and time for each person or entity (including individuals, partnerships, corporations, joint ventures, corporations, estates, trusts, and governmental units) to file a proof of claim against Residential Capital, LLC its affiliates that are also debtors and debtors in possession in those proceedings (collectively, the "Debtors"). Solely as to governmental units the Bar Date Order established **November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time)** as the last date and time for each such governmental unit to file a proof of claim against the Debtors (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").

The Bar Dates and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before May 14, 2012, the date on which the Debtors commenced cases under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"), except for those holders of the claims listed in section 4 below that are specifically excluded from the General Bar Date filing requirement.

## 1.    WHO MUST FILE A PROOF OF CLAIM

You **MUST** file a proof of claim to vote on a Chapter 11 plan filed by the Debtors or to share
in distributions from the Debtors' bankruptcy estates if you have a claim that arose before the
filing of the Debtors' Chapter 11 petitions on the Petition Date and it is not one of the types of
claims described in section 4 below.  Claims based on acts or omissions of the Debtors that
occurred before the Petition Date must be filed on or before the applicable Bar Date, even if such
claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or
certain before the Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim"
means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,
secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such
breach gives rise to a right to payment, whether or not such right to an equitable remedy is
reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or
unsecured.

## 2.    WHAT TO FILE

Each filed proof of claim must conform substantially to the Proof of Claim Form (as defined in
the Bar Date Order).  Copies of the Proof of Claim Form may be obtained at
http://www.kccllc.net/rescap.  Each proof of claim must be **signed** by the claimant or by an
authorized agent of the claimant.  Each proof of claim must be written in English and be
denominated in United States currency.  You should attach to each completed proof of claim any
documents on which the claim is based (if voluminous, attach a summary) or an explanation as
to why the documents are not available.

Any holder of a claim against more than one Debtor must file a separate proof of claim with
respect to each such Debtor and all holders of claims must identify on their proof of claim the
specific Debtor against which their claim is asserted.  A list of the names of the Debtors and their
respective case numbers is attached to the Proof of Claim Form.

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the
procedural requirements for the assertion of administrative priority claims under section
503(b)(9) of the Bankruptcy Code.

3.    **WHEN AND WHERE TO FILE**

Except as provided for herein, all proofs of claim must be filed so as to be actually received **on or before November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time), or solely as to governmental units on or before November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time)**, at:

---

(i) **If by mail or overnight courier**:

**ResCap Claims Processing Center, c/o KCC
PO Box 5004
Hawthorne, CA 90250**

---

(ii) if by hand delivery:

United States Bankruptcy Court for the Southern District of New York
One Bowling Green, Room 534
New York, New York 10004

or

ResCap Claims Processing Center, c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

Proofs of claim will be deemed timely filed only if **actually received** at the ResCap Claims Processing Center or hand delivered to the U.S. Bankruptcy Court on or before 5:00 p.m. (Prevailing Eastern Time) on the applicable Bar Date. Proofs of claim **may not** be delivered by facsimile, or electronic mail.

4.    **WHO NEED NOT FILE A PROOF OF CLAIM**

You do not need to file a proof of claim on or before the General Bar Date if you are:

(a)    Any person or entity that has **already** properly filed a proof of claim against the applicable Debtor or Debtors with the Clerk of the Bankruptcy Court for the Southern District of New York in a form substantially similar to the Proof of Claim Form;

(b)    Any person or entity whose claim is listed on the Debtors' schedules of assets and liabilities and/or schedules of executory contracts and unexpired leases (collectively, the "Schedules"), **provided** **that**: (i) the claim is **not** scheduled as "disputed," "contingent" or "unliquidated"; **and** (ii) the claimant agrees with the amount, nature and priority of the claim as set forth in the Schedules; **and** (iii) the claimant agrees that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(c)     Any person or entity that holds a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(d)     Any person or entity whose claim has been paid in full by any of the Debtors;

(e)     Any person or entity that holds a claim for which specific deadlines have been fixed by an order of the Court entered on or before the applicable Bar Date;

(f)     Any person or entity that holds a claim allowable under sections 503(b) and 507(a) of the Bankruptcy Code as an expense of administration (other than any claim allowable under section 503(b)(9) of the Bankruptcy Code);

(g)     Any Debtor having a claim against another Debtor or any of the non-debtor subsidiaries of Residential Capital, LLC having a claim against any of the Debtors;

(h)     Any person or entity that holds an interest in any of the Debtors, which interest is based exclusively upon the ownership of common stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; provided, however, that interest holders that wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(i)     Any person or entity whose claim is limited exclusively to the repayment of principal, interest, and/or other applicable fees and charges (a "Debt Claim") on or under any bond or note issued or guaranteed by the Debtors pursuant to an indenture (the "Debt Instruments"); **provided, however,** that (i) the foregoing exclusion in this subparagraph shall not apply to the Indenture Trustee under the applicable Debt Instruments (an "Indenture Trustee"), (ii) the Indenture Trustee shall be required to file one Proof of Claim, on or before the General Bar Date, with respect to all of the Debt Claims on or under each of the applicable Debt Instruments, and (iii) any holder of a Debt Claim wishing to assert a claim, other than a Debt Claim, arising out of or relating to a Debt Instrument shall be required to file a Proof of Claim on or before the Bar Date, unless another exception in this paragraph applies;

(j)     Any person or entity holding a claim for principal, interest and other fees and expenses under the Debtors' secured financing facilities (the "Financing Facilities")[1] to the extent of, and only for such claims relating to the Financing Facilities; or

---

[1] "Financing Facilities" as used herein shall mean the Debtors' financing facilities that are exempt from filing a Proof of Claim Form as previously ordered by the Court [Docket Nos. 471, 490 and 491].

(k)     Any person or entity that holds a claim against a securitization trust (each a "Trust") that is based exclusively upon the ownership of a note, bond and/or certificate backed by mortgage loans held by the Trust; provided, however, that holders of such notes, bonds and/or certificates that wish to assert claims against the Debtors (as opposed to claims against the applicable Trust) must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies.

This Notice is being sent to many persons and entities that have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors. Receipt of this Notice does not mean that you have a claim or that the Debtors or the Court believe that you have a claim against the Debtors.

## 5.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If you have a claim arising out of the rejection of an executory contract or unexpired lease, you must file a proof of claim by the later of (a) the applicable Bar Date and (b) thirty (30) days after the date of entry of an order of rejection (unless the order of rejection provides otherwise).

## 6.     CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE

**ANY HOLDER OF A CLAIM THAT IS NOT EXCEPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS DESCRIBED IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR SUCCESSORS, THEIR CHAPTER 11 ESTATES AND THEIR RESPECTIVE PROPERTY OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIM, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM OR RECEIVING FURTHER NOTICES REGARDING SUCH CLAIM.**

## 7.     THE DEBTORS' SCHEDULES AND ACCESS THERETO

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules. If you rely on the Debtors' Schedules, it is your responsibility to determine that your claim is accurately listed on the Schedules. If you agree with the nature, amount and status of your claim as listed on the Debtors' Schedules, and if you do not dispute that your claim is against only the specified Debtor, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice.

ny-1043431

Copies of the Debtors' Schedules are available for inspection on the Court's internet website at www.nysb.uscourts.gov and on the independent website maintained by the Debtors, http://www.kccllc.net/rescap. A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access www.nysb.uscourts.gov and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov. Copies of the Schedules may also be examined between the hours of 9:00 a.m. and 4:30 p.m. (Prevailing Eastern Time), Monday through Friday, at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 511, New York, New York 10004-1408.

Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address set forth below:

**ResCap Claims Processing Center**
**c/o KCC**
**PO Box 5004**
**Hawthorne, CA 90250**

## 8.    RESERVATION OF RIGHTS

The Debtors reserve their right to object to any proof of claim, whether filed or scheduled, on any grounds. The Debtors reserve their right to dispute or to assert offsets or defenses to any claim reflected on the Schedules or any amendments thereto, as to amount, liability, classification or otherwise, and to subsequently designate any claim as disputed, contingent, unliquidated or undetermined.

**A holder of a possible claim against the Debtors should consult an attorney regarding matters in connection with this Notice, such as whether the holder should file a Proof of Claim.**

Dated: New York, New York
        August 29, 2012

                                BY ORDER OF THE COURT

                                Gary S. Lee
                                Lorenzo Marinuzzi
                                MORRISON & FOERSTER LLP
                                1290 Avenue of the Americas
                                New York, New York 10104

                                *Counsel for the Debtors and*
                                *Debtors in Possession*

---

**If you have any questions related to this notice, please call (888) 926-3479**

---

ny-1043431

# GMAC Mortgage

May 14, 2012

Dear Homeowner,

As you may have read or heard, Residential Capital, LLC (ResCap), recently announced that it and its subsidiaries, including GMAC Mortgage, are restructuring under Chapter 11. Although you may not be familiar with our name, ResCap is the parent company of GMAC Mortgage, which services your mortgage.   As servicer, GMAC Mortgage collects and keeps track of your mortgage payments and ensures that they are applied to your account and properly distributed to the lenders and investors who own your loan.

The restructuring of ResCap and GMAC Mortgage does not change your obligations as a mortgage borrower.  **As such, you must continue to make your scheduled mortgage payments on time and in full to the address listed on your monthly account statement.**

While nothing has changed in relation to the amount of your mortgage payments or where you send those payments, we understand you may have some questions. Please feel free to contact our toll-free Homeowner Hotline at (888) 926-3479 between 8 a.m. and 5 p.m. EST, or refer to http://www.kccllc.net/rescap for additional information regarding ResCap's Chapter 11 reorganization. If you have specific questions about your loan, please reach out to the customer service number listed on your monthly statement.

In the coming weeks, you will receive a Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors, and Deadlines in the mail. No action is required on your part, related to this restructuring.

For our part, everyone on the GMAC Mortgage team is committed to providing the same high level of service and responsiveness we've always shown to the homeowners whose mortgage loans are entrusted to us.  We look forward to helping you continue to build equity and value in your home.

Sincerely,

Thomas Marano
Chief Executive Officer
Residential Capital, LLC

GMAC Mortgage, LLC
1100 Virginia Drive
Fort Washington, PA  19034

| UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| In re Residential Capital, LLC, et al., Debtors. | Chapter 11 Case No: 12-12020 (MG) (Jointly Administered) |

**NOTICE OF CHAPTER 11 BANKRUPTCY CASES, MEETING OF CREDITORS, AND DEADLINES**

Chapter 11 bankruptcy cases concerning the Debtors listed below were filed on May 14, 2012. You may be a creditor of one of the Debtors. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed with the Bankruptcy Court, including lists of the Debtors' properties and debts, are available for inspection at the office of the Clerk of the Bankruptcy Court and the Bankruptcy Court's website, www.nysb.uscourts.gov or by accessing the website maintained by the Debtors' claims and noticing agent, www.kccllc.net/rescap. Note that a PACER password is needed to access documents on the Bankruptcy Court's website (a PACER password may be obtained by accessing the PACER website, http://pacer.psc.uscourts.gov). NOTE: The staff members of the office of the Clerk of the Bankruptcy Court and the Office of the United States Trustee cannot give legal advice.

**If you have any questions regarding this notice, please call the ResCap Homeowner Hotline at (888) 926-3479. You may also submit an inquiry online at www.kccllc.net/rescap.**

| Name of Debtor | Case Number | Tax Identification Number |
|---|---|---|
| Residential Funding Company, LLC | 12-12019 (MG) | 93-0891336 |
| Residential Capital, LLC | 12-12020 (MG) | 20-1770738 |
| ditech, LLC | 12-12021 (MG) | 23-2887228 |
| DOA Holding Properties, LLC | 12-12022 (MG) | 26-1424257 |
| DOA Properties IX (Lots-Other), LLC | 12-12023 (MG) | 26-2783274 |
| EPRE LLC | 12-12024 (MG) | 26-2747974 |
| Equity Investment I, LLC | 12-12025 (MG) | 02-0632797 |
| ETS of Virginia, Inc. | 12-12026 (MG) | 26-4051445 |
| ETS of Washington, Inc. | 12-12027 (MG) | 45-2910665 |
| Executive Trustee Services, LLC | 12-12028 (MG) | 23-2778943 |
| GMAC-RFC Holding Company, LLC | 12-12029 (MG) | 23-2593763 |
| GMAC Model Home Finance I, LLC | 12-12030 (MG) | 26-2748469 |
| GMAC Mortgage USA Corporation | 12-12031 (MG) | 20-4796930 |
| GMAC Mortgage, LLC | 12-12032 (MG) | 23-1694840 |
| GMAC Residential Holding Company, LLC | 12-12033 (MG) | 91-1902190 |
| GMACRH Settlement Services, LLC | 12-12034 (MG) | 23-3036156 |
| GMACM Borrower LLC | 12-12035 (MG) | 45-5064887 |
| GMACM REO LLC | 12-12036 (MG) | 45-5222043 |
| GMACR Mortgage Products, LLC | 12-12037 (MG) | 03-0536369 |
| HFN REO Sub II, LLC | 12-12038 (MG) | None |
| Home Connects Lending Services, LLC | 12-12039 (MG) | 25-1849412 |
| Homecomings Financial Real Estate Holdings, LLC | 12-12040 (MG) | 26-2736869 |
| Homecomings Financial, LLC | 12-12042 (MG) | 51-0369458 |
| Ladue Associates, Inc. | 12-12043 (MG) | 23-1893048 |
| Passive Asset Transaction, LLC | 12-12044 (MG) | 51-0404130 |
| PATI A, LLC | 12-12045 (MG) | 26-3722729 |
| PATI B, LLC | 12-12046 (MG) | 26-3722937 |
| PATI Real Estate Holdings, LLC | 12-12047 (MG) | 27-0515201 |
| RAHI A, LLC | 12-12048 (MG) | 26-3723321 |
| RAHI B, LLC | 12-12049 (MG) | 26-3723553 |
| RAHI Real Estate Holdings, LLC | 12-12050 (MG) | 27-0515287 |
| RCSFJV2004, LLC | 12-12051 (MG) | 20-3802722 |
| Residential Accredit Loans, Inc. | 12-12052 (MG) | 51-0368240 |
| Residential Asset Mortgage Products, Inc. | 12-12053 (MG) | 41-1955181 |
| Residential Asset Securities Corporation | 12-12054 (MG) | 51-0362653 |
| Residential Consumer Services of Alabama, LLC | 12-12055 (MG) | 63-1105449 |
| Residential Consumer Services of Ohio, LLC | 12-12056 (MG) | 34-1754796 |
| Residential Consumer Services of Texas, LLC | 12-12057 (MG) | 75-25010515 |
| Residential Consumer Services, LLC | 12-12058 (MG) | 20-4812167 |

HOMEOWNER

| Residential Funding Mortgage Exchange, LLC | 12-12059 (MG) | 41-1674247 |
| Residential Funding Mortgage Securities I, Inc. | 12-12060 (MG) | 75-2006294 |
| Residential Funding Mortgage Securities II, Inc. | 12-12061 (MG) | 41-1808858 |
| Residential Funding Real Estate Holdings, LLC | 12-12062 (MG) | 26-2736505 |
| Residential Mortgage Real Estate Holdings, LLC | 12-12063 (MG) | 26-2737180 |
| RFC-GSAP Servicer Advance, LLC | 12-12064 (MG) | 26-1960289 |
| RFC Asset Holdings II, LLC | 12-12065 (MG) | 41-1984034 |
| RFC Asset Management, LLC | 12-12066 (MG) | 06-1664678 |
| RFC Borrower LLC | 12-12068 (MG) | 45-5065558 |
| RFC Construction Funding, LLC | 12-12069 (MG) | 41-1925730 |
| RFC REO LLC | 12-12070 (MG) | 45-5222407 |
| RFC SFJV-2002, LLC | 12-12071 (MG) | 06-1664670 |

| **Proposed Attorneys for Debtors**<br>Larren M. Nashelsky<br>Gary S. Lee<br>Lorenzo Marinuzzi<br>MORRISON & FOERSTER LLP<br>1290 Avenue of the Americas<br>New York, New York 10104<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900 | **DATE, TIME, AND LOCATION OF MEETING OF CREDITORS PURSUANT TO BANKRUPTCY CODE SECTION 341(a)**<br>**June 25, 2012 at 1:00 p.m. (ET)**<br>80 Broad Street, Fourth Floor<br>New York, New York 10004 |

**DEADLINE TO FILE A PROOF OF CLAIM** None at this time. When the Bankruptcy Court sets a claims deadline, you will be notified and provided a proof of claim form by mail.

**DEADLINE TO FILE A COMPLAINT TO DETERMINE DISCHARGEABILITY OF CERTAIN DEBTS** None at this time.

CREDITORS MAY NOT TAKE CERTAIN ACTIONS AGAINST THE DEBTORS IN MOST INSTANCES, BECAUSE THE FILING OF THE BANKRUPTCY CASE AUTOMATICALLY STAYS CERTAIN COLLECTION AND OTHER ACTIONS AGAINST THE DEBTORS AND THE DEBTORS' PROPERTY. UNDER CERTAIN CIRCUMSTANCES, THE STAY MAY BE LIMITED TO 30 DAYS OR NOT EXIST AT ALL, ALTHOUGH THE DEBTORS CAN REQUEST THE BANKRUPTCY COURT TO EXTEND OR IMPOSE A STAY. IF YOU ATTEMPT TO COLLECT A DEBT OR TAKE OTHER ACTION IN VIOLATION OF THE BANKRUPTCY CODE, YOU MAY BE PENALIZED. COMMON EXAMPLES OF PROHIBITED ACTIONS BY CREDITORS ARE CONTACTING THE DEBTORS TO DEMAND REPAYMENT, TAKING ACTION AGAINST THE DEBTORS TO COLLECT MONEY OWED TO CREDITORS OR TO TAKE PROPERTY OF THE DEBTORS, AND STARTING OR CONTINUING COLLECTION ACTIONS, FORECLOSURE ACTIONS, OR REPOSSESSIONS. CONSULT A LAWYER TO DETERMINE YOUR RIGHTS IN THIS CASE.

| Address of the Clerk of the Bankruptcy Court<br>Clerk of the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 | For the Bankruptcy Court: Vito Genna Clerk of the Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004. |
| Hours Open: 8:30 a.m. – 5:00 p.m. | Date: May 24, 2012 |
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this Bankruptcy Court by each of the Debtors named above, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the Bankruptcy Court. You may be sent a copy of the plan and disclosure statement telling you about the plan, and you might have an opportunity to vote on the plan. You will be sent a notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the Debtors will remain in possession of the Debtors' property and may continue to operate their business. |
| Legal Advice | Staff of the office of the Clerk of the Bankruptcy Court cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the Debtors by telephone, mail, or otherwise to demand |

HOMEOWNER

| | |
|---|---|
| Take Certain Actions | repayment; taking actions to collect money or obtain property from the Debtors; repossessing the Debtors' property; and starting or continuing lawsuits or foreclosures. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time, and location listed above. *The Debtors' representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. |
| Notice | You will not receive notice of all documents filed in these chapter 11 cases. On May 23, 2012, the Bankruptcy Court entered its Order Under bankruptcy Code Sections (102)(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures (the "Notice Procedures Order"). The Notice Procedures Order describes the notice procedures that apply in these chapter 11 cases. All parties who desire to participate in these chapter 11 cases must follow the procedures set forth in the Notice Procedures Order. Parties can obtain a copy of the Notice Procedures Order and all other documents filed electronically with the Bankruptcy Court in these cases, including lists of the Debtors' property and debts, by: (i) contacting the office of the Clerk of the Bankruptcy Court at One Bowling Green, New York, New York 10004-1408, (ii) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov. Note that a PACER (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website; (iii) accessing the website maintained by the Debtors' claims and noticing agent at www.kccllc.net/rescap; or (iv) contacting the Debtors' counsel at: Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104 (Attn: Larren M. Nashelsky, Esq., Gary S. Lee, Esq. and Lorenzo Marinuzzi, Esq.). |
| Claims | Schedules of liabilities will be filed pursuant to Bankruptcy Rule 1007. Any creditor holding a scheduled claim which is not identified as disputed, contingent, or unliquidated as to amount may, but is not required to, file a proof of claim in these cases. Creditors whose claims are not scheduled or whose claims are scheduled as disputed, contingent, or unliquidated as to amount and who desire to participate in these cases or share in any distribution must file a proof of claim. A creditor who relies on the schedule of liabilities has the responsibility for determining that the claim is listed accurately. A form of proof of claim and notice of the deadline for filing such proof of claim will be sent to you later. A deadline for the last day for filing proofs of claim has not yet been established. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. *See* Bankruptcy Code § 1141(d). A discharge means that you may never try to collect the debt from the Debtors, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 1141(d)(6)(A), you must start a lawsuit by filing a complaint in the office of the Clerk of the Bankruptcy Court by the deadline established by the Bankruptcy Court. |
| Barclays DIP Order | The Bankruptcy Court is considering the entry of several "final orders," including the final order (the "Barclays DIP Order") to grant the Debtors' Motion For Interim And Final Orders Pursuant To 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e) And Bankruptcy Rules 4001 And 6004 (I) Authorizing The Debtors To (A) Enter Into And Perform Under Receivables Purchase Agreements And Mortgage Loan Purchase And Contribution Agreements Relating To Initial Receivables And Mortgage Loans And Receivables Pooling Agreements Relating To Additional Receivables, And (B) Obtaining Postpetition Financing On A Secured, Superpriority Basis, (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) and 4001(c), And (III) Granting Related Relief.<br><br>The Debtors are seeking to have the Barclays DIP Order provide, among other things, that the transfers of mortgage loans and servicing advance receivables from Debtors GMAC Mortgage LLC and Residential Funding Company LLC to Debtors GMACM Borrower LLC to RFC Borrower LLC were or are, as applicable, free and clear of all liens, claims and encumbrances pursuant to Section 363(f) of the Bankruptcy Code. |
| Office of the Clerk of the Bankruptcy Court | Any paper that you file in these bankruptcy cases should be filed at the office of the Clerk of the Bankruptcy Court at the address listed in this notice. You may inspect all papers filed, including the list of the Debtors' property and debts and the list of property claimed as exempt, at the office of the Clerk of the Bankruptcy Court. |
| Foreign Creditors | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

# **EXHIBIT 2B**



Glenn E. Glover

Direct Dial: (205) 521-8647
Direct Fax: (205) 488-6647
gglover@babc.com

April 30, 2013

**VIA E-MAIL ONLY**

John H. Ruiz
Law Offices Of La Ley Con John H. Ruiz, P.A.
4182 SW 74th Court
Miami, Florida 33155
jruiz@lawofficeslaley.com

      Re:    *GMAC Mortgage, LLC v. Marcia Navarro, et al.*
              **Civil Action No. 13-2008-CA-74998**
              **In the Circuit Court of Miami-Dade County, Florida (the "Civil Action")**

Dear John:

I appreciate your time on the phone today.  I was able to speak with GMACM after our conversation and its position has not changed.

First, the Final Servicing Order[1] dated July 13, 2012 is clear that your post-petition prosecution of the attorneys' fees claim (the "Attorneys' Fees Claim") in the above-referenced Civil Action violated the automatic stay.  Paragraph 14(a) of the Final Servicing Order states:

> except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or eviction has not been awarded . . .

---

[1]    *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigation and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "Supplemental Servicing Order").

1/2478492.1

John H. Ruiz
April 30, 2013
Page 2

As you know, the Civil Action was dismissed on April 4, 2011, and thereafter there was no foreclosure to prevent. As such, the Attorneys' Fees Claim could not possibly be an act to "defend, unwind, or otherwise enjoin" a foreclosure. Further, the claims for which relief is granted must relate "exclusively" to property that is being foreclosed. Finally, there should be no room for disagreement that an "Interested Party" includes Ms. Navarro – she is obviously a "borrower."

Additionally, Paragraph 14(b) states:

> absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

This language is also clear that the automatic stay remains in full force against your prosecution of the Attorneys' Fee Claim, which is certainly a claim for "monetary relief." Further, we don't think there is any requirement under Florida law for the prosecution of the Attorneys' Fees Claim to defend against the requested foreclosure in the Civil Action. Nothing about the statute is mandatory.

Further, Paragraph 14(d) provides:

> under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

We again think this language is clear that even if the Final Supplemental Order allowed relief from the automatic stay for you to prosecute the Attorneys' Fees Claim, the March 19, 2013 *Writ of Execution* (the "Writ"), in addition to the March 19, 2013 letter from Rosy Aponte to GMACM's co-counsel, the Albertelli Law Firm, are certainly attempts to "enforce . . . and collect" against GMACM on the February 1, 2013 *Final Judgment As To Attorneys' Fees And Costs* (the "Final Judgment'); entered with respect to the Attorneys' Fees Claim.

Second, I have read the *Taggert* opinions entered by the United States Bankruptcy Court for the Southern District of New York in the GMACM Chapter 11 bankruptcy. Those two opinions, dated August 14, 2012 and November 7, 2012, strongly support GMACM's above-stated position regarding violation of the automatic stay.

Third, with respect to any argument you might make based on your lack of knowledge of GMACM's Chapter 11 bankruptcy, I would refer you to the civil action styled *GMAC Mortgage, LLC v. Margarita Bustamante*, Case No. 09-72965-CA-30, In the Court for the Eleventh Judicial Circuit In and For Miami-Dade County, Florida, in which you represented the defendant. *A Notice Of*

1/2478492.1

John H. Ruiz
April 30, 2013
Page 3

---

*Bankruptcy Filing And Supplemental Servicing Order* was filed therein on or about September 10, 2012, and a copy was served on you. It is my understanding that you have also represented borrowers in several other litigation matters involving GMACM in which notices of bankruptcy were filed.

**Accordingly, GMACM again hereby demands that within five (5) days from the date of this letter, you and your client take the necessary action to:**

1. **Have the Writ cancelled.**

2. **Have any recording that may constitute or effect a judgment lien under Florida law, including the judgment lien certificate issued in the Civil Action and recorded at OR Book 28487, Page 2714, immediately released, cancelled, and withdrawn.**

3. **Have Rosy Aponte and the law firm of R. Aponte & Associates, Esq., PLLC immediately cease and desist with any and all collection, satisfaction, and recovery activities related to the Final Judgment and the Writ.**

4. **Have the Final Judgment set aside.**

**If you do not comply with the above four (4) requests within five (5) days and provide me with written evidence of the same, the law firm of Morrison and Foerster, LLP, lead counsel for GMACM in it Chapter 11 proceeding in New York, may file an adversary proceeding therein against you, your client, and/or Rosy Aponte and her law firm for violation of the automatic stay, which adversary proceeding may seek damages.**

Thank you for your prompt attention to this matter.

Sincerely,

Glenn E. Glover

cc:   Christy Hancock, Esq. **(via e-mail chancock@babc.com)**
      Nathan Gryglewicz, Esq. **(via e-mail only ngryglewicz@albertellilaw.com)**
      Eric J. Forte, Esq. **(via e-mail only eforte@albertellilaw.com)**
      Rosy Aponte, Esq. **(via e-mail only rapontelaw@gmail.com)**

**<u>EXHIBIT 3</u>**

**<u>Excerpts from Affidavit of Service</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                :

In re                              :        **Chapter 11**
                                :

**RESIDENTIAL CAPITAL, LLC, et al.,** [1]  :        **Case No. 12-12020 (MG)**
                                :

                                :
                                :        **(Jointly Administered)**
           **Debtors.**              :
-------------------------------------------------------------x

## AFFIDAVIT OF SERVICE

I, Clarissa D. Cu, depose and say that I am employed by Kurtzman Carson Consultants LLC (KCC), the claims and noticing agent for the Debtors.

A. On or before September 7, 2012, at my direction and under my supervision, employees of KCC caused the following documents to be served via First Class mail upon the Monthly Service List attached hereto as **Exhibit A**, upon the Claimants and Notice Parties attached hereto as **Exhibit B**, upon the parties attached hereto as **Exhibit C**, via Overnight mail on service list attached hereto as **Exhibit D** for subsequent distribution to beneficial holders of the securities listed on the attached **Exhibit E**, and via Electronic mail upon the parties attached hereto as **Exhibit F**:

1.  Notice of Deadlines for Filing Proofs of Claim, dated August 29, 2012, attached hereto as **Exhibit G**

2.  Proof of Claim Form attached here to as **Exhibit H**


*(This space intentionally left blank)*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Residential Capital, LLC (0738); ditech, LLC (7228); DOA Holding Properties, LLC (4257); DOA Properties IX (Lots-Other), LLC (3274), EPRE LLC (7974); Equity Investment I, LLC (2797); ETS of Virginia, Inc. (1445); ETS of Washington, Inc. (0665); Executive Trustee Services, LLC (8943); GMAC Model Home Finance I, LLC (8469); GMAC Mortgage USA Corporation (6930); GMAC Mortgage, LLC (4840); GMAC Residential Holding Company, LLC (2190); GMAC RH Settlement Services, LLC (6156); GMACM Borrower LLC (4887); GMACM REO LLC (2043); GMACR Mortgage Products, LLC (6369); GMAC-RFC Holding Company, LLC (3763); HFN REO Sub II, LLC (N/A); Home Connects Lending Services, LLC (9412); Homecomings Financial Real Estate Holdings, LLC (6869); Homecomings Financial, LLC (9458); Ladue Associates, Inc. (3048); Passive Asset Transactions, LLC (4130); PATI A, LLC (2729); PATI B, LLC (2937); PATI Real Estate Holdings, LLC (5201); RAHI A, LLC (3321); RAHI B, LLC (3553); RAHI Real Estate Holdings, LLC (5287); RCSFJV204, LLC (2722); Residential Accredit Loans, Inc. (8240); Residential Asset Mortgage Products, Inc. (5181); Residential Asset Securities Corporation (2653); Residential Consumer Services of Alabama, LLC (5449); Residential Consumer Services of Ohio, LLC (4796); Residential Consumer Services of Texas, LLC (0515); Residential Consumer Services, LLC (2167); Residential Funding Company, LLC (1336); Residential Funding Mortgage Exchange, LLC (4247); Residential Funding Mortgage Securities I, Inc. (6294); Residential Funding Mortgage Securities II, Inc. (8858); Residential Funding Real Estate Holdings, LLC (6505); Residential Mortgage Real Estate Holdings, LLC (7180); RFC Asset Holdings II, LLC (4034); RFC Asset Management, LLC (4678); RFC Borrower LLC (5558); RFC Constructing Funding, LLC (5730); RFC REO LLC (2407); RFC SFJV-2002, LLC (4670); RFC-GSAP Servicer Advance, LLC (0289)

1



B. On or before September 7, 2012, at my direction and under my supervision, employees of KCC caused the following documents to be served via First Class mail upon the Creditor Matrix attached hereto as **Exhibit I**

    1.   Notice of Deadlines for Filing Proofs of Claim, dated August 29, 2012, attached hereto as **Exhibit G**

    2.   [Customized] Proof of Claim Form

Dated:  September 11, 2012

_____
Clarissa D. Cu

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 11th of September, 2012, by Clarissa D. Cu, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____

LYDIA PASTOR NINO
Commission # 1960751
Notary Public - California
Los Angeles County
My Comm. Expires Nov 18, 2015

2

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| John H McLaughlin vs MERS Inc aaa Mortgage Electronics Registration System Incorporated and First American Title Insurance Co | | 2106 W WILSON AVE | | | COOLIDGE | AZ | 85228 | |
| JOHN H MIGLIONICO ATT AT LAW | | 2027 1ST AVE N STE 1200 | | | BIRMINGHAM | AL | 35203 | |
| JOHN H MIGLIONICO ATT AT LAW | | 4 OFFICE PARK CIR STE 314A | | | MOUNTAIN BROOK | AL | 35223 | |
| JOHN H OROURKE LAW OFFICE PLLC | | 2101 4TH AVE STE 1560 | | | SEATTLE | WA | 98121 | |
| JOHN H PETERSON | BARBARA A PETERSON | 18 FIRST AVENUE | | | WESTWOOD | NJ | 07675 | |
| JOHN H REDFIELD AND ASSOCIATES | | 135 S LA SALLE ST STE 3705 | | | CHICAGO | IL | 60603-4101 | |
| JOHN H RICHARDSON | PAMELA S RICHARDSON | 3213 BENDING BRK DR | | | FLUSHING | MI | 48433 | |
| JOHN H RICHEY JR | | PO BOX 639 | | | SIERRA VISTA | AZ | 85636 | |
| JOHN H RING III | | 2427 WILLIAM ST | | | BUFFALO | NY | 14206 | |
| JOHN H RING III | | 2427 WILLIAM ST | | | CHEEKTOWAGA | NY | 14206 | |
| JOHN H RING III | | 360 DINGENS ST | | | BUFFALO | NY | 14206 | |
| JOHN H RING III ATT AT LAW | | 360 DINGENS ST | | | BUFFALO | NY | 14206 | |
| JOHN H RING III ATT AT LAW | | 385 CLEVELAND DR | | | BUFFALO | NY | 14215 | |
| JOHN H ROY | GRACIELA ROY | 21426 BROKEN ARROW DRIVE | | | DIAMOND BAR | CA | 91765 | |
| JOHN H RUIZ PA | | 5040 NW 7 ST SUITE 920 | | | MIAMI | FL | 33126 | |
| JOHN H SHIELDS III | | 242 PRISCILLA LN | | | ALDAN | PA | 19018-3013 | |
| JOHN H SHOCK ATT AT LAW | | 451 N MAIN ST | | | POPLAR BLUFF | MO | 63901 | |
| JOHN H STEWART | GLENNA L STEWART | 8268 ELLERFORD STREET | | | LONG BEACH | CA | 90808 | |
| JOHN H TRENTES ATT AT LAW | | 866 E 185TH ST | | | CLEVELAND | OH | 44119 | |
| JOHN H TRENTES ATT AT LAW | | PO BOX 280352 | | | NASHVILLE | TN | 37228 | |
| JOHN H WHITCOMB | DEBORAH S WHITCOMB | 86 JOY WAY | | | ELLSWORTH | ME | 04605 | |
| JOHN H WILSON JR AND | VIKKI R WILSON | 1180 BRONCO DR | | | PLUMAS LAKE | CA | 95961-9108 | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
**In re**                                              :    **Chapter 11**
                                                       :
**RESIDENTIAL CAPITAL, LLC, et al.,** [1] :            **Case No. 12-12020 (MG)**
                                                       :
                                                       :
                                                       :    **(Jointly Administered)**
**Debtors.**                                           :
------------------------------------------------------x

<u>**AFFIDAVIT OF SERVICE**</u>

I, Clarissa D. Cu, depose and say that I am employed by Kurtzman Carson
Consultants LLC (KCC), the claims and noticing agent for the Debtors.

A. On or before October 5, 2012 at my direction and under my supervision,
employees of KCC caused the following document to be served via First Class Mail
upon **Marcia Navarro at 830 NW 123rd Court, Miami, FL 33182**:

- **Notice of Deadlines for Filing Proofs of Claim**, attached hereto as
  **<u>Exhibit A</u>**

Dated:  May 23, 2013

                                                    _____
                                                              Clarissa D. Cu

State of California

County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 23rd of May, 2013, by Clarissa D. Cu,
proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____

                                            LYDIA PASTOR NINO
                                            Commission # 1960751
                                            Notary Public - California
                                            Los Angeles County
                                            My Comm. Expires Nov 18, 2015

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Residential Capital, LLC (0738); ditech, LLC (7228); DOA Holding Properties, LLC (4257); DOA Properties IX (Lots-Other), LLC (3274); EPRE LLC (7974); Equity Investment I, LLC (2797); ETS of Virginia, Inc. (1445); ETS of Washington, Inc. (0665); Executive Trustee Services, LLC (8943); GMAC Model Home Finance I, LLC (8469); GMAC Mortgage USA Corporation (6930); GMAC Mortgage, LLC (4840); GMAC Residential Holding Company, LLC (2190); GMAC RH Settlement Service, LLC (6156); GMACM Borrower LLC (4887); GMACM REO LLC (2043); GMACR Mortgage Products, LLC (6369); GMAC-RFC Holding Company, LLC (3763); HFN REO Sub II, LLC (N/A); Home Connects Lending Services, LLC (9412); Homecomings Financial Real Estate Holdings, LLC (6869); Homecomings Financial, LLC (9458); Ladue Associates, Inc. (3048); Passive Asset Transactions, LLC (4130); PATI A, LLC (2729); PATI B, LLC (2937); PATI Real Estate Holdings, LLC (5201); RAHI A, LLC (3321); RAHI B, LLC (3553); RAHI Real Estate Holdings, LLC (5287); RCSFJV2004, LLC (2722); Residential Accredit Loans, Inc. (8240); Residential Asset Mortgage Products, Inc. (5181); Residential Asset Securities Corporation (2653); Residential Consumer Services of Alabama, LLC (5449); Residential Consumer Services of Ohio, LLC (4796); Residential Consumer Services of Texas, LLC (0515); Residential Consumer Services, LLC (2167); Residential Funding Company, LLC (1336); Residential Funding Mortgage Exchange, LLC (4247); Residential Funding Mortgage Securities I, Inc. (6294); Residential Funding Mortgage Securities II, Inc. (8858); Residential Funding Real Estate Holdings, LLC (6505); Residential Mortgage Real Estate Holdings, LLC (7180); RFC Asset Holdings II, LLC (4034); RFC Asset Management, LLC (4678); RFC Borrower LLC (5558); RFC Constructing Funding, LLC (5730); RFC REO LLC (2407); RFC SFJV-2002, LLC (4670); RFC-GSAP Servicer Advance, LLC (0289)

1

# EXHIBIT A

---
**If you have any questions related to this notice, please call (888) 926-3479**
---

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Gary S. Lee
Lorenzo Marinuzzi

*Counsel for the Debtors and*
*Debtors in Possession*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

| | ) | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------------

### NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM

TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST RESIDENTIAL CAPITAL, LLC OR ITS AFFILIATED ENTITIES THAT ARE ALSO DEBTORS AND DEBTORS IN POSSESSION:

On August 29, 2012, the United States Bankruptcy Court for the Southern District of New York (the "U.S. Bankruptcy Court") entered an order (the "Bar Date Order") establishing **November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time)** (the "General Bar Date") as the last date and time for each person or entity (including individuals, partnerships, corporations, joint ventures, corporations, estates, trusts, and governmental units) to file a proof of claim against Residential Capital, LLC its affiliates that are also debtors and debtors in possession in those proceedings (collectively, the "Debtors"). Solely as to governmental units the Bar Date Order established **November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time)** as the last date and time for each such governmental unit to file a proof of claim against the Debtors (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").

The Bar Dates and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before May 14, 2012, the date on which the Debtors commenced cases under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"), except for those holders of the claims listed in section 4 below that are specifically excluded from the General Bar Date filing requirement.

## 1.    WHO MUST FILE A PROOF OF CLAIM

You **MUST** file a proof of claim to vote on a Chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim that arose before the filing of the Debtors' Chapter 11 petitions on the Petition Date and it is not one of the types of claims described in section 4 below.  Claims based on acts or omissions of the Debtors that occurred before the Petition Date must be filed on or before the applicable Bar Date, even if such claims are not now fixed, liquidated or certain or did not mature or become fixed, liquidated or certain before the Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

## 2.    WHAT TO FILE

Each filed proof of claim must conform substantially to the Proof of Claim Form (as defined in the Bar Date Order).  Copies of the Proof of Claim Form may be obtained at http://www.kccllc.net/rescap.  Each proof of claim must be **signed** by the claimant or by an authorized agent of the claimant.  Each proof of claim must be written in English and be denominated in United States currency.  You should attach to each completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and all holders of claims must identify on their proof of claim the specific Debtor against which their claim is asserted.  A list of the names of the Debtors and their respective case numbers is attached to the Proof of Claim Form.

Under the Bar Date Order, the filing of a Proof of Claim Form shall be deemed to satisfy the procedural requirements for the assertion of administrative priority claims under section 503(b)(9) of the Bankruptcy Code.

ny-1043431

3.    **WHEN AND WHERE TO FILE**

Except as provided for herein, all proofs of claim must be filed so as to be actually received **on or before November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time), or solely as to governmental units on or before November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time),** at:

> (i) **If by mail or overnight courier**:
>
> **ResCap Claims Processing Center, c/o KCC**
> **PO Box 5004**
> **Hawthorne, CA 90250**

(ii) if by hand delivery:

United States Bankruptcy Court for the Southern District of New York
One Bowling Green, Room 534
New York, New York 10004

or

ResCap Claims Processing Center, c/o KCC
2335 Alaska Ave
El Segundo, CA 90245

Proofs of claim will be deemed timely filed only if **actually received** at the ResCap Claims Processing Center or hand delivered to the U.S. Bankruptcy Court on or before 5:00 p.m. (Prevailing Eastern Time) on the applicable Bar Date.  Proofs of claim **may not** be delivered by facsimile, or electronic mail.

4.    **WHO NEED NOT FILE A PROOF OF CLAIM**

You do not need to file a proof of claim on or before the General Bar Date if you are:

(a)    Any person or entity that has **already** properly filed a proof of claim against the applicable Debtor or Debtors with the Clerk of the Bankruptcy Court for the Southern District of New York in a form substantially similar to the Proof of Claim Form;

(b)    Any person or entity whose claim is listed on the Debtors' schedules of assets and liabilities and/or schedules of executory contracts and unexpired leases (collectively, the "Schedules"), **provided that**: (i) the claim is **not** scheduled as "disputed," "contingent" or "unliquidated"; **and** (ii) the claimant agrees with the amount, nature and priority of the claim as set forth in the Schedules; **and** (iii) the claimant agrees that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(c)  Any person or entity that holds a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(d)  Any person or entity whose claim has been paid in full by any of the Debtors;

(e)  Any person or entity that holds a claim for which specific deadlines have been fixed by an order of the Court entered on or before the applicable Bar Date;

(f)  Any person or entity that holds a claim allowable under sections 503(b) and 507(a) of the Bankruptcy Code as an expense of administration (other than any claim allowable under section 503(b)(9) of the Bankruptcy Code);

(g)  Any Debtor having a claim against another Debtor or any of the non-debtor subsidiaries of Residential Capital, LLC having a claim against any of the Debtors;

(h)  Any person or entity that holds an interest in any of the Debtors, which interest is based exclusively upon the ownership of common stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; provided, however, that interest holders that wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(i)  Any person or entity whose claim is limited exclusively to the repayment of principal, interest, and/or other applicable fees and charges (a "Debt Claim") on or under any bond or note issued or guaranteed by the Debtors pursuant to an indenture (the "Debt Instruments"); **provided**, **however**, that (i) the foregoing exclusion in this subparagraph shall not apply to the Indenture Trustee under the applicable Debt Instruments (an "Indenture Trustee"), (ii) the Indenture Trustee shall be required to file one Proof of Claim, on or before the General Bar Date, with respect to all of the Debt Claims on or under each of the applicable Debt Instruments, and (iii) any holder of a Debt Claim wishing to assert a claim, other than a Debt Claim, arising out of or relating to a Debt Instrument shall be required to file a Proof of Claim on or before the Bar Date, unless another exception in this paragraph applies;

(j)  Any person or entity holding a claim for principal, interest and other fees and expenses under the Debtors' secured financing facilities (the "Financing Facilities")[1] to the extent of, and only for such claims relating to the Financing Facilities; or

---

[1] "Financing Facilities" as used herein shall mean the Debtors' financing facilities that are exempt from filing a Proof of Claim Form as previously ordered by the Court [Docket Nos. 471, 490 and 491].

(k)    Any person or entity that holds a claim against a securitization trust (each a "Trust") that is based exclusively upon the ownership of a note, bond and/or certificate backed by mortgage loans held by the Trust; provided, however, that holders of such notes, bonds and/or certificates that wish to assert claims against the Debtors (as opposed to claims against the applicable Trust) must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies.

This Notice is being sent to many persons and entities that have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors. Receipt of this Notice does not mean that you have a claim or that the Debtors or the Court believe that you have a claim against the Debtors.

## 5.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If you have a claim arising out of the rejection of an executory contract or unexpired lease, you must file a proof of claim by the later of (a) the applicable Bar Date and (b) thirty (30) days after the date of entry of an order of rejection (unless the order of rejection provides otherwise).

## 6.    CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE

**ANY HOLDER OF A CLAIM THAT IS NOT EXCEPTED FROM THE REQUIREMENTS OF THE BAR DATE ORDER, AS DESCRIBED IN SECTION 4 ABOVE, AND THAT FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM WILL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS, THEIR SUCCESSORS, THEIR CHAPTER 11 ESTATES AND THEIR RESPECTIVE PROPERTY OR FILING A PROOF OF CLAIM WITH RESPECT TO SUCH CLAIM, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM OR RECEIVING FURTHER NOTICES REGARDING SUCH CLAIM.**

## 7.    THE DEBTORS' SCHEDULES AND ACCESS THERETO

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules. If you rely on the Debtors' Schedules, it is your responsibility to determine that your claim is accurately listed on the Schedules. If you agree with the nature, amount and status of your claim as listed on the Debtors' Schedules, and if you do not dispute that your claim is against only the specified Debtor, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Debtors' Schedules are available for inspection on the Court's internet website at
www.nysb.uscourts.gov and on the independent website maintained by the Debtors,
http://www.kccllc.net/rescap.  A login and password to the Court's Public Access to Electronic
Court Records ("PACER") are required to access www.nysb.uscourts.gov and can be obtained
through the PACER Service Center at www.pacer.psc.uscourts.gov.  Copies of the Schedules
may also be examined between the hours of 9:00 a.m. and 4:30 p.m. (Prevailing Eastern Time),
Monday through Friday, at the Office of the Clerk of the Bankruptcy Court, One Bowling Green,
Room 511, New York, New York 10004-1408.

Copies of the Debtors' Schedules may also be obtained by written request to the Debtors'
claims agent at the address set forth below:

**ResCap Claims Processing Center**
**c/o KCC**
**PO Box 5004**
**Hawthorne, CA 90250**

## 8.    RESERVATION OF RIGHTS

The Debtors reserve their right to object to any proof of claim, whether filed or scheduled, on
any grounds.  The Debtors reserve their right to dispute or to assert offsets or defenses to any
claim reflected on the Schedules or any amendments thereto, as to amount, liability,
classification or otherwise, and to subsequently designate any claim as disputed, contingent,
unliquidated or undetermined.

**A holder of a possible claim against the Debtors should consult an attorney regarding
matters in connection with this Notice, such as whether the holder should file a Proof of
Claim.**

Dated: New York, New York
        August 29, 2012

                        BY ORDER OF THE COURT

                        Gary S. Lee
                        Lorenzo Marinuzzi
                        MORRISON & FOERSTER LLP
                        1290 Avenue of the Americas
                        New York, New York 10104

                        *Counsel for the Debtors and*
                        *Debtors in Possession*

---

**If you have any questions related to this notice, please call (888) 926-3479**

---

**EXHIBIT 4**

**State Court Documents**

Attached are true and correct copies of the following documents filed in, or relating to, the Navarro Foreclosure Action:

Ex. 4-A:  Docket Report

Ex. 4-B:  Order of Dismissal

Ex. 4-C:  Motion for Attorneys' Fees

Ex. 4-D:  Fee Order

Ex. 4-E:  Scheduling Order

Ex. 4-F:  Fee Application

Ex. 4-G:  Final Judgment

Ex. 4-H:  Motion to Vacate

Ex. 4-I:  Writ of Execution

Ex. 4-J:  Collection Letter

Ex. 4-K:  Notice of Bankruptcy

Ex. 4-L: Motion for Sanctions

Ex. 4-M:  Notice of Hearing

# **EXHIBIT 4A**

🛒 0 Item(s) in Basket      Home     Online Services     About us     Contact us

HARVEY RUVIN

CLERK *of the* COURTS

MIAMI-DADE COUNTY, FLORIDA

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS        ALL PARTIES        START A NEW SEARCH

### GMAC MORT (LLC) vs NAVARRO, MARCIA

\* Click on BOOK/PAGE of a particular docket to see the image if it is available \*

Case Number (LOCAL): 2008-74998-CA-01     Dockets Retrieved: 53     Filing Date: 12/04/2008

Case Number (STATE): 13-2008-CA-074998-0000-01     Judicial Section: 59

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 05/16/2013 | | MOTION FOR SANCTIONS | |
| 05/08/2013 | | NOTICE OF HEARING- | MOTIONS 06/13/2013 09:30 AM |
| 04/29/2013 | | NOTICE OF APPEARANCE | ATTORNEY: 00643521 DN01 |
| 03/21/2013 | | NOTICE OF FILING: | OF BANKRUPTCY STAY |
| 03/19/2013 | | MOTION: | TO VACATE EXPARTE FINAL JUDGMENT AS TO ATTORNEY FEES... |
| 03/19/2013 | | EXECUTION ISSUED | $ 25870.00 PN01 ORIGINAL & COPY PICKED UP BY ROSY APONTE, ESQ |
| 02/01/2013 | 28487 / 2714 Pages: 2 | ORDER AWARDING ATTORNEY FEES | BK:28487 PG:2714 |
| 01/17/2013 | | NOTICE OF FILING AFFID OF REASONABLE ATTY FEES | |
| 01/17/2013 | | ORDER: | SCHEDULING ORDER ON DN'S MOTION FOR ENTITLEMENT, ETC. |
| 01/17/2013 | | NOTICE OF FILING: | TIME RECORDS |
| 01/17/2013 | | AFFIDAVIT OF REASONABLE ATTORNEY'S FEES | |
| 06/12/2012 | | ORDER: | FEES AND COSTS - GRANTED |
| 06/06/2012 | | NOTICE OF HEARING- | MOTIONS 06/11/2012 08:30 AM |
| 12/19/2011 | | NOTICE HAS WRONG DATE | 03/08/2012 01:30 PM |
| 07/27/2011 | | REASSNGMT PURSUANT TO ADMINISTRATIVE ORD: | 59 FM:50 |
| 07/27/2011 | | TEXT | REASGND FROM SEC 50 PER ADMINISTRATIVE MEMO CIV 11-A |
| 06/14/2011 | | CANCELLATION NOTICE | 07/11/2011 09:30 AM |
| 05/27/2011 | | REQUEST FOR PRODUCTION | |
| 05/27/2011 | | NOTICE OF INTERROGATORY | |
| 05/27/2011 | | NOTICE OF INTERROGATORY | |
| 04/13/2011 | | MOTION: | FOR ENTITLEMENT OF ATTORNEY FEES AND COSTS |
| 04/04/2011 | | | BK:27644 PG:1931 |

|  |  |  |  |
|---|---|---|---|
|  | 27644 / 1931 Pages: 2 | DISCHARGE/RELEASE OF LIS PENDENS |  |
| 04/04/2011 | 27644 / 1931 Pages: 2 | ORDER OF DISMISSAL | BK:27644 PG:1931 DN01 DN02 |
| 04/01/2011 |  | NOTICE: | OF APPEARANCE OF CO-COUNSEL |
| 04/01/2011 |  | NOTICE OF FILING: | AFFIDAVIT OF MARCIA NAVARRO |
| 04/01/2011 |  | AFFIDAVIT OF: | MARCIA NAVARRO |
| 03/02/2011 |  | ORDER SETTING NON-JURY TRIAL | 04/04/2011 10:10 AM |
| 02/16/2011 |  | MOTION TO COMPEL |  |
| 02/16/2011 |  | MOTION TO COMPEL |  |
| 02/14/2011 |  | NOTICE OF NON-JURY TRIAL | : M |
| 01/10/2011 |  | MOTION TO WITHDRAW |  |
| 11/29/2010 |  | REQUEST FOR PRODUCTION |  |
| 11/29/2010 |  | NOTICE OF INTERROGATORY |  |
| 11/29/2010 |  | REQUEST FOR ADMISSIONS |  |
| 06/23/2010 |  | ORDER GRANTING SHOWING OF GOOD CAUSE (FWOP CALN) |  |
| 06/19/2010 |  | TEXT | REASGND FROM SEC 21 PER A.O. |
| 06/08/2010 |  | MOTION: | FOR SUMM FINAL JUDGMT OF FORECLOSURE & TAXATION OF,ETC |
| 05/10/2010 |  | MOTION: | TO WITHDRAW AS COUNSEL |
| 04/16/2010 |  | NON-MILITARY AFFIDAVIT |  |
| 04/16/2010 |  | MOTION FOR DEFAULT |  |
| 01/28/2010 |  | FWOP NOTICE GENERATED | 05/12/2010 09:00 AM |
| 12/29/2008 |  | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:88888888 DN01 |
| 12/29/2008 |  | NOTICE OF APPEARANCE | ATTORNEY: 88888888 DN01 |
| 12/26/2008 |  | SERVICE RETURNED | BADGE # 1575 S 12/11/2008 DN02 |
| 12/26/2008 |  | TEXT | SUMMONS RTD. SERVED ON JANE DOE ON 12-9-2008 |
| 12/26/2008 |  | TEXT | SUMMONS RTD. NTO SERVED ON JOHN DOE |
| 12/26/2008 |  | SERVICE RETURNED | BADGE # 1575 S 12/09/2008 DN01 |
| 12/26/2008 |  | TEXT | SUMMONS RTD. NOT SERVE DON UNK SPOUSE MARIC NAVARRO |
| 12/23/2008 |  | ANSWER | ATTORNEY:00768911 DN02 |
| 12/10/2008 | 26679 / 793 Pages: 2 | LIS PENDENS | BK:26679 PG:0793 |
| 12/04/2008 |  | COMPLAINT |  |
| 12/04/2008 |  | CIVIL COVER |  |
| 12/04/2008 |  | SUMMONS ISSUED | DN01 DN02 |

BACK TO SEARCH RESULTS                ALL PARTIES                START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All Rights reserved.



S0141755

# **EXHIBIT 4B**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

GMAC Mort (LLC)
_____
Plaintiff,

CASE NO: 08- 74998 CA

vs.

Navarro, Marcia
_____

Defendant.
_____/

## ORDER
## DISMISSING ACTION WITHOUT PREJUDICE FOR FAILURE TO APPEAR FOR TRIAL IN VIOLATION OF THE FORECLOSURE UNIFORM ORDER SETTING CAUSE FOR NON-JURY TRIAL
## AND
## CANCELLING NOTICE OF LIS PENDENS

THIS CAUSE came before me this ____ day of _____, 20____, APR 0 4 2011

for violation of this Court's Foreclosure Uniform Order Setting Cause for Non-Jury Trial and

Trial Instructions and the Court having examined the file, and being otherwise fully advised in the

premises, it is hereupon,

ORDERED AND ADJUDGED that the subject action is DISMISSED WITHOUT

PREJUDICE ORDERED with costs to borne by the Plaintiff.

IT IS FURTHER ORDERED AND ADJUDGED THAT the Notice of Lis Pendens filed by

Plaintiff and recorded in the public records of MIAMI-DADE County, Florida, regarding the

property which is the subject of this action is hereby is cancelled, vacated, discharged and shall be

of no further force or effect, and the Clerk is hereby directed to record this Order to reflect same.

# **EXHIBIT 4C**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

     Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

     Defendants.

_____/



## MOTION FOR ENTITLEMENT OF ATTORNEY FEES AND COSTS

     COMES NOW, the Defendant by and through the undersigned attorney and files this Motion for Entitlement of Attorney's Fees and Costs pursuant to the Mortgage and its Security Agreement (NOTE).

     1.     Defendant executed and delivered a Promisory Note and Mortgage securing payment of the Mortgage Note.

     2.     Plaintiff accelerated and declared the full amount payable under the Mortgage and Note.

     3.     Plaintiff retained the law firm of David J. Stern, P.A. to file the herein action and demanded the payment of the attorney's fees under the reciprocal attorney's fee provision of the Mortgage and Note.

     4.     On December 10, 2008, Plaintiff caused the herein Complaint to be filed upon the Defendants herein.

     5.     As a result, Defendants hired the law offices of John H. Ruiz. P.A. to represent their interest in this lawsuit.

**JOHN H. RUIZ, P.A.**
5040 N.W. 7 Street, Suite 920, Miami, Florida 33126 (305) 649-0020

6.      The undersigned attorney did extensive work in the case and charged the

Defendant(s) reasonable Attorney's fees.

7.      On April 4, 2011 this honorable Court entered and Order of Dismissal of the Case

and Lis Pendens without Prejudice.

8.      This Court must grant the Defendant(s) the reasonable attorney fees incurred by

Defendant due to this action.

9.      In The Bank Of New York vs. Paulette Williams, 979 So.2d 347 (1st DCA 2008),

the Court held that:

> "We hold that a defendant is entitled to recover attorney's fees
> under section 68.086(3), which awards fees to the prevailing party,
> after the plaintiff takes a voluntary dismissal without prejudice.
> The refilling of the same suit after the voluntary dismissal does not
> alter the appellees' right to recover prevailing party attorney's fees
> incurred in defense of the first suit. Alhambra Homeowners Ass'n,
> Inc. v. Asad, 943 So. 2d 316 (Fla. 4th DCA 2006)."

10.     In Carmen Valcarcel, et. al. vs. Chase Bank USA, N.A., 2010WL 47402386 (4th

DCA 2010), the Court held that:

> "Mortgagors were the prevailing parties in foreclosure action that
> was dismissed due to the misconduct of mortgagee's attorney and,
> thus, were entitled to recover prevailing party attorney fees and
> costs pursuant to the terms of the promissory note and mortgage,
> even though dismissal was not an adjudication on the merits...
>
> Rule 1.420(d) provides in pertinent part that "[c]osts in any action
> dismissed under this rule shall be assessed and judgment for costs
> entered in that action." In the context of a plaintiff's voluntary
> dismissal of a case, Florida courts have consistently interpreted the
> rule as authorizing a trial court to award attorney's fees as costs to
> a defendant as the prevailing party when such an award is provided
> for either by statute or a contract between the parties. E.g., Stuart
> Plaza, Ltd. v. Atlantic Coast Dev. Corp. of Martin County, 493
> So.2d 1136 (Fla. 4th DCA 1986). Since rule 1.420(d) contemplates
> both voluntary and involuntary dismissals, we see no reason why
> this interpretation should not be applied to a situation involving an
> involuntary dismissal of a plaintiff's case. Thus, based on the fee

provision in the parties' lease, Stout was entitled to an award of fees as costs for successfully obtaining an involuntary dismissal of the case if it was the prevailing party...

The trial court erred in denying the Valcarcels' motion for attorney's fees and costs based upon its finding that the order was not a judgment. Although the dismissal order was not an adjudication on the merits, the Valcarcels can nonetheless be considered the prevailing party. They are entitled to an award of attorney's fees because the action against them was dismissed. We, therefore, reverse and remand to the trial court to determine the amount of attorney's fees that should be awarded to the Valcarcels for both the trial and appellate proceedings."

WHEREFORE, the Defendant ask this Court to enter an Order finding the

Defendants entitled to reasonable attorney's fees in the herein case and to set a hearing to

determine the amount of attorney's fees and costs that shall be awarded.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this ___

day of April, 2011 to: Stephanie Burke, Esq., Law Offices of David J. Stern, P.A., Attorneys for Plaintiff, 900 South Pine Island Road, Suite 400, Plantation, FL 33324.

JOHN H. RUIZ, P.A.
5040 NW 7 Street
Suite 920
Miami, Florida 33126
(305) 649-0020

By: _____
JOHN H. RUIZ, ESQUIRE
Florida Bar No.: 928150

TRANSMISSION VERIFICATION REPORT

```
                                    TIME : 04/08/2011 14:57
                                    NAME : LIZ SAN JUAN
                                    FAX  : 3056142189
                                    SER.# : BROF9F111514
```

```
        DATE,TIME            04/08  14:57
        FAX NO./NAME         19542338333
        DURATION             00:00:56
        PAGE(S)              03
        RESULT               OK
        MODE                 STANDARD
                             ECM
```

# **EXHIBIT 4D**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI DADE COUNTY,
FLORIDA

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      **Plaintiff,**

vs.

MARCIA NAVARRO, ET AL,

**Defendant(s)**

-------------------------------------------------------------------------/

## <u>ORDER ON DEFENDANT'S MOTION FOR ENTITLEMENT</u><br><u>AS TO ATTORNEY'S FEES AND COSTS</u>

THIS CAUSE came before the Court on Defendants, MARCIA NAVARRO,

Motion for Entitlement as to Attorney's Fees and Costs, and the Court having reviewed

the file and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDED as follows:

1.    Defendant's Motion for Entitlement of Attorneys Fees and Costs is hereby

Granted.

2.

3.

DONE AND ORDERED at Miami-Dade County, Florida, on this 11th day of

June , 2012.

Ross Aponte, esq.

**CIRCUIT COURT JUDGE**

<u>Copies furnished to:</u>
Counsel of Record



JUN 1 1 2012

BEATRICE BUTCHKO
CIRCUIT COURT JUDGE

# **EXHIBIT 4E**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

     Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

     Defendant(s).

-------------------------------------------------------------------------------/

## SCHEDULING ORDER ON DEFENDANT'S MOTION
## FOR ENTITLEMENT TO ATTORNEY'S FEES/COSTS

### PLEASE READ CAREFULLY

Pending before this Court is Defendant's Motion for Entitlement to Attorney's Fees and

Costs. Counsel for the parties is hereby ordered to comply as follows:

1.     The parties, through counsel, shall initially either agree, or resolve to disagree, on

any and all <u>entitlement</u> issues arising out of the pending Motion for an Award of Attorneys

Fees/Costs. The Court will hear argument and decide the movant's <u>entitlement</u> to fees before

scheduling a hearing to resolve any disputes as to the proper <u>amount</u> of any fees or costs.

**Within 10 days** from the date of the execution of this Order, the Defendant shall submit its

Motion for Entitlement.  The Plaintiff shall provide a response to the Defendant's Motion within

**five (5) days.**

2.     **Within ten (10) days** of the Order determining entitlement or from the entry of

this order, whichever is later, the moving party shall make available and provide to the opposing

party, a copy of all invoices, time records, and other supporting documentation for any cost

EXHIBIT
tabbies

requested and all attorney records evidencing services for which the party seeks payment. **Movant's failure to timely comply with this Order will result in a waiver of the fees and/or costs being requested and the entry of an order denying fees and costs.** Non-moving party shall file a Certification setting forth the Movant's failure to comply with this Order with a copy to movant, provide a courtesy copy to chambers together with an order denying attorney's fees and costs based on Movant's failure to timely comply with this Order.

3.     **Within ten (10) days of the moving party complying with the preceding paragraph,** the non-moving party shall respond in writing to each item of cost and fees.  This response shall state whether the charge is agreed or contested.  For each contested item, the non-moving party shall state the basis for objection and cite the supporting authority.  **Any item not addressed shall be deemed agreed to and any objection thereto waived.  A failure to timely object shall constitute a waiver and approval of <u>all</u> fees and costs requested.**

4.     **Within ten (10) days of receipt of any objection,** the moving party shall respond in writing to each objection, stating whether said party concurs with the objection and if not, cite the contrary authority.  **Failure of the moving party to timely respond to the objection shall result in the objection being sustained by the Court.**

5.     In the event there is agreement to a particular cost item or fee request, but disagreement with the amount, the non-moving party shall state the objection and the amount believed to be reasonable.

6.     **<u>This matter shall NOT be set for hearing until</u> the moving party files a Certification with the Court that this order has been complied with by all parties.**

7.     **<u>Not later than five (5) days immediately preceding the hearing,</u>** the parties shall meet and prepare two lists:  one containing all non-waived disputed items, and the other

2

containing a list of any stipulated items. The two lists shall be provided to the Court at the commencement of the hearing.

8.    **No hearing is required if** the moving party complies with this order but no objections are TIMELY filed by the opposing party AND a certification to that effect is filed with a copy to the non-moving party. The order/final judgment may be submitted *exparte* together with a copy of the certification.

9.    The Statewide Uniform Guidelines for Taxation of Costs in Civil Actions shall be used in an attempt to resolve disputes over taxation of costs.

10.    In addition to the waivers mentioned above, the Court may consider appropriate **sanctions** with regard to unreasonable requests for taxation of costs; requests for attorney's fees; objections thereto; and/or failure to comply with this Order.

11.    In the event either party is unable to timely comply with the deadlines set forth in this order, it/he/she may file a motion for extension of time setting forth with specificity the reason the additional time is needed and the amount of time being requested. In order for the motion to be considered by the Court it must be filed prior to the deadline for which the extension is sought.

12.    Any party found to have submitted a Certification in bad faith; to have prepared a Certification setting forth false or misleading information; or to have prepared a Certification in a manner that evinces a careless disregard for the truth, shall be held in contempt of Court and shall be subject to any and all sanctions that may be imposed by this Court.

13.    The parties may agree to extend the deadlines and if so, may submit an *exparte* agreed order which provides for the new deadlines.

14.    Upon request by either party or by the Court, this matter may be referred to

3

# **EXHIBIT 4F**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendant(s).

_____/

### NOTICE OF FILING

    COMES NOW the Defendant, MARCIA NAVARRO, by and through undersigned counsel and hereby files the attached documentation in support of his Motion for Entitlement of Attorneys Fees and Costs and in compliance with this Court's Order dated January 16, 2013, and respectfully requests the Clerk of Court to file the following in the above-captioned case:

    1.    Affidavit of Robert W. Rodriguez as to Reasonable Attorneys Fees

    2.    Time Records

### CERTIFICATE OF SERVICE

    **WE HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this 1ᵗ day of January, 2013 to: Eric Forte, Esquire, Albertelli Law., Attorneys for Plaintiff P.O. Box 23028 Tampa, FL 33623. servealaw@albertellilaw.com

                          **Law Offices of La Ley con John H. Ruiz P.A.**
                          5040 NW 7ᵗʰ Street, Suite 920
                          Miami, Florida 33126
                          Telephone (305) 614-2222

        By: _____
                          □ Rebecca Rubin del Rio, Esq., FL Bar #57013
                          □ Karen J. Barnet-Backer, Esq., FL Bar #54482
                          □ Stacy Robin Marczak, Esq., FL Bar#44565
                          □ Armando R. Alfonso, Esq., FL Bar #88523
                          Designated email: serve@lawofficeslaley.com

**JHR: 08-2-1610**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

     Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

     Defendant(s).

_____/

## AFFIDAVIT AS TO REASONABLE ATTORNEYS FEES

**STATE OF FLORIDA**     :

**COUNTY OF MIAMI-DADE**     :

     BEFORE ME, the undersigned authority, personally appeared **Robert W. Rodriguez, Esq.**, who upon first being duly sworn on oath, deposes and says:

     1.     I am an attorney at law duly authorized to practice in the State of Florida.

     2.     I have been active in the practice of law in Florida since September 20, 1990, and I am personally familiar with the fees usually allowed Plaintiffs for the services of their attorneys in suits of the kind and nature in which this affidavit is to be filed.

     3.     It is my opinion that the time and services rendered by the attorneys are reasonable and necessary to represent adequately and appropriately the Plaintiff in this cause.

     4.     I am familiar with Rule 4-1.5(b) of the Rules Regulating the Florida Bar, and have taken into consideration the factors set forth in such Rule for the determination of reasonable

attorney's fees.

5.     I am also familiar with and have considered the dictates of the Florida Supreme Court in the case of _Florida Patient's Compensation Fund vs. RoweFlorida Patient's Compensation Fund vs. Rowe_, 472 So.2d 1145 (Fla 1985) for the determination of reasonable attorney's fees.

6.     In arriving at my opinion of the value of reasonable attorney's fees in this action, I have utilized and considered the following criteria:

a.     The time and labor required, the novelty, complexity and difficulty of the questions involved, and the skill requisite to perform the legal services properly;

b.     The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

c.     The fee or rate of fee customarily charged in the locality for services of a comparable or similar nature;

d.     The amount involved and the results obtained;

e.     The time limitations imposed by the client or by the circumstances;

f.     The nature and length of the professional relationship with the client;

g.     The experience, reputation and ability of the lawyer or lawyers performing the services;

h.     Whether the fee is fixed or contingent.

7.     I have had the opportunity to review the time records for the hourly charges.

8.     Based upon my review as set forth, it is my opinion that a reasonable attorney's

fee and paralegal fee is $ _25,870.00_ .

9.      Due to the complexity of the case, I believe that a multiplier of up to 2.5 times the

amount billed applies, and as such it is my opinion that a reasonable attorney's fee and paralegal

fee, including said multiplier is $ _64,675.00_ .


FURTHER AFFIANT SAYETH NAUGHT.


_____
ROBERT W. RODRIGUEZ

The foregoing instrument was subscribed and sworn to before me this 11 day of January,
2013, by Robert W. Rodriguez, who is personally known to me.

E. SANJUAN
MY COMMISSION # DD 856626
EXPIRES: February 1, 2013
Bonded Thru Budget Notary Services

_____
NOTARY PUBLIC, State of Florida
My Commission Expires:


**THE LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A.**
5040 NW 7th Street, Penthouse, Miami, Florida 33126 * T+305/649-0020 F+ 866/582-0907

NAME OF CLIENT: MARCIA NAVARRO
MATTER NO.: 08-2-1610

| Date | Lawyer | Hours | Rate | Amount | Explanation |
|---|---|---|---|---|---|
| 12/10/2008 | ASSO | 3.25 | $ 375.00 | $ 1,218.75 | Initial Interview with client, reviewed court system reviewed all documents provided by client, determine home value, prepare assessment type of the loan servicer, review assignment of mortgages, determine case standing issues |
| 12/10/2008 | PARA | 1.35 | $ 150.00 | $ 202.50 | Completed Initial Questionnaire |
| 12/11/2008 | PARA | 0.45 | $ 150.00 | $ 67.50 | Prepared representation letter to client in Eng/Spa. |
| 12/11/2008 | JHR | 0.1 | $ 650.00 | $ 65.00 | Reviewed representation letters for accuracy. |
| 12/23/2008 | ASSO | 0.25 | $ 375.00 | $ 93.75 | Prepared Notice of Appearance. |
| 12/23/2008 | ASSO | 2.45 | $ 375.00 | $ 918.75 | Reviewed file and prepared Defendant's Answer & Affirmative Defenses. |
| 12/23/2008 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 1/6/2009 | ASSO | 0.1 | $ 375.00 | $ 37.50 | Received and reviewed letter from GMAC re: loan modification request. |
| 2/10/2009 | JHR | 1.65 | $ 650.00 | $ 1,072.50 | Meeting with assigned team to discuss how to proceed with case. |
| 2/20/2009 | ASSO | 0.8 | $ 375.00 | $ 300.00 | Review of client's file in preparation for Re-Encuentro. |
| 3/13/2009 | JHR | 3.75 | $ 650.00 | $ 2,437.50 | Mortgage viability review input of all variables determine which possible programs can work for client front end ratios review of file for refinance with two lenders obtain client criteria. |
| 5/4/2009 | JHR | 1.25 | $ 650.00 | $ 812.50 | Reviewed file with assigned group and determined how to proceed. |
| 6/1/2009 | PARA | 1.15 | $ 150.00 | $ 172.50 | Restructure Dept. - Met with client completed questionnaire. |
| 6/11/2009 | ASSO | 0.5 | $ 375.00 | $ 187.50 | Prepared FDCPA letter to Law Offices of David Stern - Second Notice. |
| 6/16/2009 | ASSO | 0.5 | $ 375.00 | $ 187.50 | Prepared rescission and fraud letter to Law Offices of David Stern - second notice. |
| 8/24/2009 | JHR | 2.85 | $ 650.00 | $ 1,852.50 | File review for TILA analysis with details about possible problems with calculations as well as signature review. |
| 9/25/2009 | ASSO | 0.8 | $ 375.00 | $ 300.00 | Review of client's file in preparation for Re-Encuentro. |
| 11/3/2009 | JHR | 3.15 | $ 650.00 | $ 2,047.50 | Expert review of closing documents. David Stern's case, look for affidavit signatures and details of legal proceeding. |
| 12/18/2009 | JHR | 2.45 | $ 650.00 | $ 1,592.50 | Group review of case itemize review details for departments to proceed on litigation and modifications well. |
| 1/21/2010 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and gax to GMAC attaching HAMP application with updated financials. |

| Date | Person | Description | Amount | Hours | Rate |
|---|---|---|---|---|---|
| 2/5/2010 | JHR | Review file with assigned group and determine further action. | $1,072.50 | 1.65 | $650.00 |
| 4/15/2010 | ASSO | Received and reviewed Ex Parte Motion for Default. | $56.25 | 0.15 | $375.00 |
| 4/21/2010 | PARA | Spoke to client advised of last docket entries. | $37.50 | 0.25 | $150.00 |
| 4/21/2010 | PARA | Reviewed docket and prepared interoffice memo to litigation department re: Motion for Default. | $52.50 | 0.35 | $150.00 |
| 4/26/2010 | PARA | Met with client and completed questionnaire and requested documents. | $217.50 | 1.45 | $150.00 |
| 5/27/2010 | PARA | Received and reviewed fax from client attaching lease agreement. | $22.50 | 0.15 | $150.00 |
| 6/2/2010 | PARA | Received and reviewed email from client. | $22.50 | 0.15 | $150.00 |
| 6/11/2010 | ASSO | Received and reviewed Motion for Summary Final Judgment of Foreclosure and Taxation of Attorney's Fees and Costs. | $693.75 | 1.85 | $375.00 |
| 6/11/2010 | PARA | Prepared interoffice memo re: financial dept. and processor will be working on case. | $22.50 | 0.15 | $150.00 |
| 6/15/2010 | PARA | Prepared interoffice memo re: proposal letter and hamp. | $22.50 | 0.15 | $150.00 |
| 6/21/2010 | PARA | Met with client re: proposal. | $22.50 | 0.15 | $150.00 |
| 6/25/2010 | PARA | Met with client and completed application and gathered documents for proposal. | $232.50 | 1.55 | $150.00 |
| 6/25/2010 | ASSO | Reviewed, revised and finalized Proposed Settlement Offer | $993.75 | 2.65 | $375.00 |
| 6/30/2010 | ASSO | Received and reviewed email from opposing counsel that she will be out of the office. | $56.25 | 0.15 | $375.00 |
| 6/30/2010 | PARA | Prepared email to opposing counsel, attaching proposed Settlement Offer. | $22.50 | 0.15 | $150.00 |
| 7/1/2010 | PARA | Prepared email to client advising of status. | $22.50 | 0.15 | $150.00 |
| 7/21/2010 | PARA | Sent follow up email to opposing counsel. | $15.00 | 0.1 | $150.00 |
| 7/28/2010 | PARA | Sent follow up email to opposing counsel. | $15.00 | 0.1 | $150.00 |
| 7/29/2010 | PARA | Spoke to client re: status of case. | $22.50 | 0.15 | $150.00 |
| 7/30/2010 | PARA | Prepared email to client advising of status. | $22.50 | 0.15 | $150.00 |
| 8/2/2010 | ASSO | Received and reviewed letter from GMAC re: qualified for workout plan. | $56.25 | 0.15 | $375.00 |
| 8/2/2010 | PARA | Spoke to client re: package. | $37.50 | 0.25 | $150.00 |
| 8/4/2010 | PARA | Sent follow up email to opposing counsel. | $15.00 | 0.1 | $150.00 |
| 8/10/2010 | PARA | Met with client re: letter received from lender re: trial plan. | $37.50 | 0.25 | $150.00 |
| 8/11/2010 | PARA | Prepared fax coversheet and fax to GMAC attaching a loss mitigation package. | $30.00 | 0.2 | $150.00 |
| 8/11/2010 | PARA | Sent follow up email to opposing counsel. | $15.00 | 0.1 | $150.00 |
| 8/13/2010 | PARA | Received and reviewed email from opposing counsel to contact bank directly to apply for HAMP. | $22.50 | 0.15 | $150.00 |
| 9/22/2010 | PARA | Spoke to client advised that HAMP had been sent out. | $22.50 | 0.15 | $150.00 |

| Date | Type | Hours | | Rate | | Amount | Description |
|---|---|---|---|---|---|---|---|
| 9/22/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Prepared interoffice email to settlement dept. to follow up on case. |
| 10/4/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Spoke to client re: status of case. |
| 10/6/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Prepared email to client advising of forms received from lender and documents needed. |
| 10/6/2010 | ASSO | 0.1 | $ | 375.00 | $ | 37.50 | Received and reviewed letter from GMAC re: denying loan modification. |
| 10/7/2010 | PARA | 0.1 | $ | 150.00 | $ | 15.00 | Spoke to client to schedule appointment. |
| 10/11/2010 | PARA | 0.35 | $ | 150.00 | $ | 52.50 | Met with client and she provided documents. |
| 10/11/2010 | PARA | 1.65 | $ | 150.00 | $ | 247.50 | Met with client and completed application and gathered documents for proposal. |
| 11/9/2010 | PARA | 0.1 | $ | 150.00 | $ | 15.00 | Spoke to client and scheduled appointment for Thursday. |
| 11/11/2010 | PARA | 0.45 | $ | 150.00 | $ | 67.50 | Met with client and explained the difference between the two offers. |
| 11/22/2010 | ASSO | 2.15 | $ | 375.00 | $ | 806.25 | Prepared First Set of Interrogatories, Request for Production and Request for Admissions. |
| 11/22/2010 | PARA | 0.2 | $ | 150.00 | $ | 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 11/24/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Called the bank due to that I had not received the revised HAMP offer. |
| 11/29/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Called the bank re: final trial period amount. No answer yet. |
| 12/1/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Spoke to Ray at GMAC re: still don't have a response to reunderwrite the numbers. He asked me to call back on Friday. |
| 12/3/2010 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Spoke to Francis at GMAC still don't have an answer. |
| 12/8/2010 | PARA | 0.25 | $ | 150.00 | $ | 37.50 | Contacted bank in several occassions and left messages. |
| 12/10/2010 | PARA | 0.2 | $ | 150.00 | $ | 30.00 | Contacted bank in several occassions and left messages. |
| 12/21/2010 | PARA | 0.2 | $ | 150.00 | $ | 30.00 | Spoke to supervisor Jennifer she advised that trial is correct that they used the complete 75% of rental income but are not deducting the current mortgage. |
| 12/28/2010 | ASSO | 0.1 | $ | 375.00 | $ | 37.50 | Received and reviewed letter from GMAC re: dispute regarding payment amount. |
| 1/5/2011 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Prepared email to client advising of status. |
| 1/7/2011 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Spoke to Barb at GMAC re: trial period denied. |
| 1/7/2011 | ASSO | 0.2 | $ | 375.00 | $ | 75.00 | Received and reviewed Motion to Withdraw and for Continuance. |
| 1/10/2011 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Prepared email to client advising of receipt of correspondence from lender. |
| 1/11/2011 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Prepared email to client and advised of documents needed. |
| 1/12/2011 | PARA | 1.75 | $ | 150.00 | $ | 262.50 | Met with client and completed application and gathered updated financials. |
| 1/18/2011 | PARA | 0.35 | $ | 150.00 | $ | 52.50 | Met with client and reviewed documents provided advised that we are still missing a few documents. |
| 1/21/2011 | PARA | 0.15 | $ | 150.00 | $ | 22.50 | Received fax from client and reviewed. |

| Date | Type | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 2/4/2011 | ASSO | 2.15 | $ 375.00 | $ 806.25 | Review of Summary Judgment issues to attempt to move for summary judgment against the bank. Reviewed teamdesk notes and docket. |
| 2/4/2011 | ASSO | 0.15 | $ 375.00 | $ 56.25 | Prepared interoffice email re: instructions how to proceed with case. |
| 2/8/2011 | ASSO | 0.1 | $ 375.00 | $ 37.50 | Received and reviewed letter from GMAC re: denying loan modification. |
| 2/9/2011 | ASSO | 0.1 | $ 375.00 | $ 37.50 | Received and reviewed letter from GMAC re: loan modification request. |
| 2/10/2011 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 2/10/2011 | ASSO | 0.35 | $ 375.00 | $ 131.25 | Prepared Motion to Compel Discovery. |
| 2/10/2011 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 2/10/2011 | ASSO | 0.25 | $ 375.00 | $ 93.75 | Prepared Notice for Non Jury Trial. |
| 2/10/2011 | PARA | 0.45 | $ 375.00 | $ 168.75 | Prepared Motion to Compel Mediation. |
| 2/14/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Spoke to client re: denial of the HAMP. |
| 2/16/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Prepared email to client advising that we are contacting GMAC to find out status on the modification. |
| 2/16/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Contacted bank spoke to supervisor, Shae they mailed a denial letter for a modification due to her income. |
| 2/23/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Prepared email to client advising of status. |
| 2/24/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Spoke to April at GMAC regarding a denial letter. |
| 3/4/2011 | ASSO | 1.45 | $ 375.00 | $ 543.75 | Reviewed file with assigned group and determined how to proceed. |
| 3/4/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Prepared email to client advising of status. |
| 3/9/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Spoke to client and advised of status. |
| 3/10/2011 | PARA | 0.15 | $ 150.00 | $ 22.50 | Received and calendared trial due dates. |
| 3/14/2011 | ASSO | 0.1 | $ 375.00 | $ 37.50 | Received and reviewed Notice of Appearance of Co-Counsel. |
| 3/16/2011 | ASSO | 1.55 | $ 375.00 | $ 581.25 | Prepared Defendant's Witness & Exhibit List. |
| 3/29/2011 | PARA | 0.25 | $ 150.00 | $ 37.50 | Spoke to client re: affidavit. |
| 3/30/2011 | ASSO | 2.45 | $ 375.00 | $ 918.75 | Met with client and completed Affidavit checklist and prepared Affidavit and Notice of Filing. |
| 3/30/2011 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 4/1/2011 | PARA | 0.25 | $ 150.00 | $ 37.50 | Spoke to client re: trial. |
| 4/8/2011 | ASSO | 1.85 | $ 375.00 | $ 693.75 | Prepared Motion for Entitlement of Attorney's Fees and Costs |
| 4/8/2011 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 5/16/2011 | ASSO | 0.45 | $ 375.00 | $ 168.75 | Prepared attorney's fees letter to Law Offices of David Stern. |
| 5/16/2011 | PARA | 0.2 | $ 150.00 | $ 30.00 | Prepared fax coversheet and fax to opposing counsel. |
| 5/23/2011 | ASSO | 1.65 | $ 375.00 | $ 618.75 | Prepared Attorney's Fees Interrogatories and Request to Produce. |

| Date | Timekeeper | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 12/13/2011 | PARA | 0.45 | $150.00 | $67.50 | Scheduled and Prepared Notice of Hearing on Motion for Attorney's Fees. |
| 3/6/2012 | ASSO | 0.15 | $375.00 | $56.25 | Prepared Order on MFAF. |
| 5/25/2012 | PARA | 0.45 | $150.00 | $67.50 | Re-scheduled and Prepared Notice of Hearing on Motion for Attorney's Fees. |
| 6/11/2012 | ASSO | 2.15 | $375.00 | $806.25 | Prepared and attended hearing on MFAF. |
| TOTAL | | | | $25,870.00 | |

# **EXHIBIT 4G**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

     Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

     Defendant(s).

_____/

### FINAL JUDGMENT AS TO ATTORNEYS' FEES AND COSTS

Pursuant to Court Order dated January 16, 2013, entered in this action,

IT IS ADJUDGED that Defendant, MARCIA NAVARRO, and his attorneys LAW OFFICES OF

LA LEY CON JOHN H. RUIZ, P.A., recover from Plaintiff, GMAC MORTGAGE, LLC., the sum of

TWENTY FIVE THOUSAND    EIGHT HUNDRED AND SEVENTY DOLLARS. ($25,870.00)

representing Attorneys Fees and Costs which shall bear interest at the statutory rate of interest of 6% per

year from the date of this Order, in the instant case, for which let execution issue.

The Court hereby reserves jurisdiction to enforce this Judgment.

        DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on

01/30/13.

_____
JACQUELINE HOGAN SCOLA
CIRCUIT COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email
confirmation which includes all emails provided by the submitter. The movant shall
IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or
hand-delivery, to all parties/counsel of record for whom service is not indicated by the

1

**LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A.**
5040 N.W. 7 Street, Suite 920, Miami, Florida 33126 (305) 649-0020

accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed and stamped original Order sent to court file by Judge Hogan Scola's staff.

Copies provided to:
Albertelli Law@ servealaw@albertellilaw.com
Law Offices of La Ley con John H. Ruiz, P.A. @ serve@lawofficeslaley.com

Bk 28487 Pg 2715 CFN 20130118391 02/13/2013 10:57:15 Pg 2 of 2 Mia-Dade Cty, FL

# **EXHIBIT 4H**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION**

**GMAC MORTGAGE, LLC**

      **Plaintiff,**

                                        **CASE NO.: 2008-74998-CA**

**vs.**                                            **DIVISION:**

**MARCIA NAVARRO, et al,**

      **Defendant(s).**

_____/

**MOTION TO VACATE EX PARTE FINAL JUDGMENT AS TO ATTORNEY'S FEES
AND COSTS AND THE SCHEDULING ORDER ON DEFENDANT'S MOTION FOR
ENTITLEMENT TO ATTORNEY'S FEES/COSTS ENTERED IN VIOLATION OF DUE
PROCESS; MOTION TO STAY EXECUTION OF JUDGMENT; AND MOTION FOR
SANCTIONS INCLUDING AN AWARD OF ATTORNEY'S FEES AND COSTS**

Plaintiff, by and through its undersigned counsel, moves to vacate the Final Judgment as to

Attorney's Fees and Costs (herein "ex parte final judgment") and the Scheduling Order on

Defendant's Motion for Entitlement to Attorney's Fees/Costs (herein "scheduling order"), pursuant

to Florida Rule of Civil Procedure 1.540(b), moves to stay execution of judgment, moves for

sanctions based upon Defendant's counsel's bad faith conduct in the procurement of an ex parte

judgment granting attorney's fees without affording the Plaintiff an opportunity to be heard in

violation of its due process rights, and moves for an award of attorney's fees and costs, and in

support thereof states:

    **I.**        **THE EX PARTE FINAL JUDGMENT AND SCHEDULING ORDER VIOLATE
             DUE PROCESS AND ARE VOID**

    1.      On April 4, 2011, this action was dismissed.

    2.      More than one (1) year later, the court granted Defendant's entitlement to an award

            of attorney's fees on or about June 12, 2012.

    3.      Subsequently, more than seven (7) months after the determination of entitlement,

            Defendant's counsel caused the scheduling order, a copy being attached hereto and

incorporated herein, to be entered on January 16, 2013, in an apparent ex parte manner.

4.    Despite its misleading name, the scheduling order is not inherently administrative and does not "schedule" a hearing.  Rather, it requires the parties to undergo a series of confusing exchanges and convoluted rebuttals as conditions precedent before any hearing can be held.  The scheduling order is ostensibly designed to prevent any meaningful opportunity for Plaintiff to be heard in an adversary proceeding to determine the amount of Defendant's attorney's fees.

5.    For example, Paragraph 8 of the scheduling order says that "**no hearing is required**" if the moving party complies and no objections are filed together with certification of timeliness, and that the "**order/final judgment may be submitted exparte**."

6.    The scheduling order offends due process  and the Plaintiff's right to an adversary proceeding on the issue of the amount of Defendant's attorney's fees and is similar to that of the court's procedure which was struck down in *Siciliano v. Hunderberg*, 135 So.2d 750 (Fla. 2nd DCA 1961).  In *Siciliano*, the appellate court ruled the lower court erred in determining reasonable attorney's fees upon affidavits without affording the other party an adversary proceeding in which to contest the matter.  The trial court had entered an order which said, "*The Plaintiff shall submit two Affidavits as to reasonable attorney's fees, together with a form of Final Judgment for entry by the Court ex parte and without notice*."  The appellate court found that this procedure was error because it awarded attorney's fees without an adversary proceeding and remanded for a trial on the issue of attorney's fees.

7.    Consequently, the ex parte final judgment, a copy being attached hereto and incorporated herein as an exhibit, was entered on January 30, 2013, without a hearing, in the amount of $25,870.00.

8.    Due process does not always require that parties be given a hearing on the merits in a civil matter.  *Millstream Corporation v. Dade County,* 340 So.2d 1276, 1278 (Fla. 3rd DCA 1977).  However, when the matter is determining the amount of attorney's fees, an adversary hearing must be afforded to the opposing party, given the nature of attorney's fees as unliquidated damages.

9.     As stated by the Florida Third District Court of Appeal, "Claims for reasonable attorney's fees are considered unliquidated damages." *Claims Cellular Warehouse, Inc., GH Cellular, LLC*, 957 So.2d 662 (Fla. 3rd DCA 2007). Unliquidated damages require the taking of testimony to determine facts upon which to base a value judgment. *Id.* Furthermore, the opportunity to adduce testimony on the issue of amount of attorney's fees must be afforded to the opposing party. *Gables Insurance Agency, Inc., v. Peninsula Federal Savings and Loan Association*, 442 So.2d 1013 (Fla. 3rd DCA 1984).

10.    Even a defaulted party has a due process entitlement to notice and opportunity to be heard as to the presentation and evaluation of evidence necessary to a judicial determination of the amount of unliquidated damages. *Bowman v. Kingsland Development, Inc.,* 432 So.2d 660, 663 (Fla. 5th DCA 1983).

11.    The determination of attorney's fees demands presentation of competent and substantial evidence at a duly noticed adversary hearing in order to comply with due process. See, *1443 Washington Limited Partnership v. Lemontang*, 19 So.3d 1079 (Fla. 3rd DCA 2009). In *Lemontang*, the court reversed the entry of a judgment awarding attorney's fees following a hearing and remanded for an evidentiary hearing upon proper notice after finding that reasonable notice and an opportunity to be heard was not given despite a default judgment being entered.

## II.     THE EX PARTE FINAL JUDGMENT FAILS TO MAKE SPECIFIC FINDINGS AS TO HOURLY RATE AND NUMBER OF HOURS REASONABLY EXPENDED AS REQUIRED BY LAW.

12.    The ex parte final judgment does not include specific findings for the amount of attorney's fees awarded. This is reversible error.

13.    As the Florida Third District Court of Appeal stated in *Valdes v. Estate of Valdes*, 935 So.2d 71 (Fla. 3rd DCA 2006) (quoting portions of *Florida Patient's Compensation Fund v. Rowe*, 472 so.2d 1145 (Fla. 1985), "In an order granting attorneys' fees, the trial court must set forth its specific findings as to the 'hourly rate' and the 'number of hours reasonably expended.'"

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

the U.S. Mail or Eservice this _____ day of March, 2013, to all parties on the attached

service list.

                                 Albertelli Law
                                 P.O. Box 23028
                                 Tampa, FL  33623
                                 (813)221-4743
                                 (813) 221-9171 facsimile
                                 eService:  servealaw@albertellilaw.com

By:_____
          Jason M. Tarokh, Esq.
          Florida Bar No.: 57611

JMR – 10-61133

**<u>Service List</u>**

Marcia Navarro
c/o John H. Ruiz, Esq.
5040 NW 7th ST
Suite 920
Miami, FL 33126
E-Serve 1: <u>serve@lawofficeslaley.com</u>

Imperial Lake Master Homeowners Association, Inc
c/o Frank Perez-Siam
7001 SW 87th CT
Miami, FL 33173-2509

Jane Doe n/k/a Vanessa Torres
830 Northwest 123rd Court
Miami, FL 33182

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendant(s).

-------------------------------------------------------------------------------/

## SCHEDULING ORDER ON DEFENDANT'S MOTION
## FOR ENTITLEMENT TO ATTORNEY'S FEES/COSTS

### PLEASE READ CAREFULLY

Pending before this Court is Defendant's Motion for Entitlement to Attorney's Fees and

Costs. Counsel for the parties is hereby ordered to comply as follows:

1.      The parties, through counsel, shall initially either agree, or resolve to disagree, on

any and all <u>entitlement</u> issues arising out of the pending Motion for an Award of Attorneys

Fees/Costs. The Court will hear argument and decide the movant's <u>entitlement</u> to fees before

scheduling a hearing to resolve any disputes as to the proper <u>amount</u> of any fees or costs.

**Within 10 days** from the date of the execution of this Order, the Defendant shall submit its

Motion for Entitlement. The Plaintiff shall provide a response to the Defendant's Motion within

**five (5) days.**

2.      **Within ten (10) days** of the Order determining entitlement or from the entry of

this order, whichever is later, the moving party shall make available and provide to the opposing

party, a copy of all invoices, time records, and other supporting documentation for any cost

THE LAW OFFIC[E]     [H]. RUIZ, P.A.
5040 NW 7th Street, Penthouse *          [305]/649-0020 F+866/582-0907

EXHIBIT

requested and all attorney records evidencing services for which the party seeks payment. **Movant's failure to timely comply with this Order will result in a waiver of the fees and/or costs being requested and the entry of an order denying fees and costs.** Non-moving party shall file a Certification setting forth the Movant's failure to comply with this Order with a copy to movant, provide a courtesy copy to chambers together with an order denying attorney's fees and costs based on Movant's failure to timely comply with this Order.

3.    **Within ten (10) days of the moving party complying with the preceding paragraph,** the non-moving party shall respond in writing to each item of cost and fees. This response shall state whether the charge is agreed or contested. For each contested item, the non-moving party shall state the basis for objection and cite the supporting authority. **Any item not addressed shall be deemed agreed to and any objection thereto waived. A failure to timely object shall constitute a waiver and approval of <u>all</u> fees and costs requested.**

4.    **Within ten (10) days of receipt of any objection,** the moving party shall respond in writing to each objection, stating whether said party concurs with the objection and if not, cite the contrary authority. **Failure of the moving party to timely respond to the objection shall result in the objection being sustained by the Court.**

5.    In the event there is agreement to a particular cost item or fee request, but disagreement with the amount, the non-moving party shall state the objection and the amount believed to be reasonable.

6.    **<u>This matter shall NOT be set for hearing until</u>** the moving party files a <u>Certification with the Court that this order has been complied with by all parties.</u>

7.    **<u>Not later than five (5) days immediately preceding the hearing,</u>** the parties shall meet and prepare two lists:  one containing all non-waived disputed items, and the other

2

containing a list of any stipulated items. The two lists shall be provided to the Court at the commencement of the hearing.

8. **No hearing is required if** <u>the moving party complies with this order but no objections are TIMELY filed by the opposing party AND a certification to that effect is filed with a copy to the non-moving party. The order/final judgment may be submitted *exparte* together with a copy of the certification.</u>

9. The Statewide Uniform Guidelines for Taxation of Costs in Civil Actions shall be used in an attempt to resolve disputes over taxation of costs.

10. In addition to the waivers mentioned above, the Court may consider appropriate **sanctions** with regard to unreasonable requests for taxation of costs; requests for attorney's fees; objections thereto; and/or failure to comply with this Order.

11. In the event either party is unable to timely comply with the deadlines set forth in this order, it/he/she may file a motion for extension of time setting forth with specificity the reason the additional time is needed and the amount of time being requested. In order for the motion to be considered by the Court it must be filed prior to the deadline for which the extension is sought.

12. Any party found to have submitted a Certification in bad faith; to have prepared a Certification setting forth false or misleading information; or to have prepared a Certification in a manner that evinces a careless disregard for the truth, shall be held in contempt of Court and shall be subject to any and all sanctions that may be imposed by this Court.

13. The parties may agree to extend the deadlines and if so, may submit an *exparte* agreed order which provides for the new deadlines.

14. Upon request by either party or by the Court, this matter may be referred to

3

mediation or arbitration.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 01/16/13.

_____
JACQUELINE HOGAN SCOLA
CIRCUIT COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed and stamped original Order sent to court file by Judge Hogan Scola's staff.

Copies furnished to:

Counsel of Record

Law Offices of John H. Ruiz P.A@serve@lawofficeslaley.com
Albertelli Law@ servealaw@albertellilaw.com

2
0AAF

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendant(s).

_____/

## FINAL JUDGMENT AS TO ATTORNEYS' FEES AND COSTS

Pursuant to Court Order dated January 16, 2013, entered in this action,

IT IS ADJUDGED that Defendant, MARCIA NAVARRO, and his attorneys LAW OFFICES OF

LA LEY CON JOHN H. RUIZ, P.A., recover from Plaintiff, GMAC MORTGAGE, LLC., the sum of

TWENTY FIVE THOUSAND  EIGHT HUNDRED AND SEVENTY DOLLARS. ($25,870.00)

representing Attorneys Fees and Costs which shall bear interest at the statutory rate of interest of 6% per

year from the date of this Order, in the instant case, for which let execution issue.

The Court hereby reserves jurisdiction to enforce this Judgment.

      DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on

01/30/13.

_____
JACQUELINE HOGAN SCOLA
CIRCUIT COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email
confirmation which includes all emails provided by the submitter.  The movant shall
IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or
hand-delivery, to all parties/counsel of record for whom service is not indicated by the

1
**LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A.**
5040 N.W. 7 Street, Suite 920, Miami, Florida 33126 (305) 649-0020


EXHIBIT

BACK TO SEARCH RESULTS

# Harvey Ruvin
## CLERK of the COURTS
### MIAMI·DADE COUNTY, FLORIDA

🛒 0 Item(s) in Basket

Home   Online Services   About us   Contact us

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS    ALL PARTIES    START A NEW SEARCH

### GMAC MORT (LLC) vs NAVARRO, MARCIA
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

Case Number (LOCAL): 2008-74998-CA-01       Dockets Retrieved: 47       Filing Date: 12/04/2008
Case Number (STATE): 13-2008-CA-074998-0000-01       Judicial Section: 59

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 02/01/2013 | 28487 / 2714 Pages: 2 | ORDER AWARDING ATTORNEY FEES | BK:28487 PG:2714 |
| 01/17/2013 | | NOTICE OF FILING AFFID OF REASONABLE ATTY FEES | |
| 01/17/2013 | | NOTICE OF FILING: | TIME RECORDS |
| 01/17/2013 | | AFFIDAVIT OF REASONABLE ATTORNEY'S FEES | |
| 01/17/2013 | | ORDER: | SCHEDULING ORDER ON DN'S MOTION FOR ENTITLEMENT, ETC. |
| 06/12/2012 | | ORDER: | FEES AND COSTS - GRANTED |
| 06/06/2012 | | NOTICE OF HEARING- | MOTIONS 06/11/2012 08:30 AM |
| 12/19/2011 | | NOTICE HAS WRONG DATE | 03/08/2012 01:30 PM |
| 07/27/2011 | | REASSNGMT PURSUANT TO ADMINISTRATIVE ORD: | 59 FM:50 |
| 07/27/2011 | | TEXT | REASGND FROM SEC 50 PER ADMINISTRATIVE MEMO CIV 11-A |
| 06/14/2011 | | CANCELLATION NOTICE | 07/11/2011 09:30 AM |
| 05/27/2011 | | NOTICE OF INTERROGATORY | |
| 05/27/2011 | | NOTICE OF INTERROGATORY | |
| 05/27/2011 | | REQUEST FOR PRODUCTION | |
| 04/13/2011 | | MOTION: | FOR ENTITLEMENT OF ATTORNEY FEES AND COSTS |
| 04/04/2011 | 27644 / 1931 Pages: 2 | ORDER OF DISMISSAL | BK:27644 PG:1931 DN01 DN02 |
| 04/04/2011 | 27644 / 1931 Pages: 2 | DISCHARGE/RELEASE OF LIS PENDENS | BK:27644 PG:1931 |
| 04/01/2011 | | AFFIDAVIT OF: | MARCIA NAVARRO |
| 04/01/2011 | | NOTICE: | OF APPEARANCE OF CO-COUNSEL |
| 04/01/2011 | | NOTICE OF FILING: | AFFIDAVIT OF MARCIA NAVARRO |
| 03/02/2011 | | ORDER SETTING NON-JURY TRIAL | 04/04/2011 10:10 AM |
| 02/16/2011 | | MOTION TO COMPEL | |
| 02/16/2011 | | MOTION TO COMPEL | |
| 02/14/2011 | | NOTICE OF NON-JURY TRIAL | : M |
| 01/10/2011 | | MOTION TO WITHDRAW | |
| 11/29/2010 | | REQUEST FOR ADMISSIONS | |
| 11/29/2010 | | NOTICE OF INTERROGATORY | |
| 11/29/2010 | | REQUEST FOR PRODUCTION | |
| 06/23/2010 | | ORDER GRANTING SHOWING OF GOOD CAUSE (FWOP CALN) | |
| 06/19/2010 | | TEXT | REASGND FROM SEC 21 PER A.O. |
| 06/08/2010 | | MOTION: | |

**EXHIBIT**

| | | | |
|---|---|---|---|
| | | | FOR SUMM FINAL JUDGMT OF FORECLOSURE & TAXATION OF,ETC |
| 05/10/2010 | | MOTION: | TO WITHDRAW AS COUNSEL |
| 04/16/2010 | | NON-MILITARY AFFIDAVIT | |
| 04/16/2010 | | MOTION FOR DEFAULT | |
| 01/28/2010 | | FWOP NOTICE GENERATED | 05/12/2010 09:00 AM |
| 12/29/2008 | | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:88888888 DN01 |
| 12/29/2008 | | NOTICE OF APPEARANCE | ATTORNEY: 88888888 DN01 |
| 12/26/2008 | | SERVICE RETURNED | BADGE # 1575 S 12/09/2008 DN01 |
| 12/26/2008 | | SERVICE RETURNED | BADGE # 1575 S 12/11/2008 DN02 |
| 12/26/2008 | | TEXT | SUMMONS RTD. SERVED ON JANE DOE ON 12-9-2008 |
| 12/26/2008 | | TEXT | SUMMONS RTD. NTO SERVED ON JOHN DOE |
| 12/26/2008 | | TEXT | SUMMONS RTD. NOT SERVE DON UNK SPOUSE MARIC NAVARRO |
| 12/23/2008 | | ANSWER | ATTORNEY:00768911 DN02 |
| 12/10/2008 | 26679 / 793 Pages: 2 | LIS PENDENS | BK:26679 PG:0793 |
| 12/04/2008 | | CIVIL COVER | |
| 12/04/2008 | | COMPLAINT | |
| 12/04/2008 | | SUMMONS ISSUED | DN01 DN02 |

BACK TO SEARCH RESULTS                    ALL PARTIES                    START A NEW SEARCH

Civil Search Home | Civil Court Information | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All Rights reserved.



S0141756

mediation or arbitration.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 01/16/13.

_____
JACQUELINE HOGAN SCOLA
CIRCUIT COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed and stamped original Order sent to court file by Judge Hogan Scola's staff.

Copies furnished to:

Counsel of Record

Law Offices of John H. Ruiz P.A@serve@lawofficeslaley.com
Albertelli Law@ servealaw@albertellilaw.com

# EXHIBIT 4I

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

GMAC MORTGAGE, LLC                    CASE NO.: 13-2008-CA-74998

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendant(s).

_____/

## WRIT OF EXECUTION

**The State of Florida:**

**To all and singular Sheriffs of the State:**

You are commanded to Levy on the Goods and Chattels, Lands and Tenements of:

## GMAC MORTGAGE, LLC

in the sum of $25,870.00 with legal interest at a rate of 6% per annum thereon from

_01/30/13_ until paid and to have this Writ before the Court when fully satisfied, for
which let execution issue.

Witness my hand and seal on this Court on _____ day of **MAR 1 9 2013** _____, 2013.

HARV_____
As Clerk of the Courts

By:_____
Deputy Clerk

16732

Address of Judgment Debtor:

GMAC Mortgage, LLC
11440 SW 88 Street
Miami, FL 33176

Filed by:
LAW OFFICES OF LA LEY
CON JOHN H. RUIZ, P.A.
4182 SW 74th Court
Miami, FL 33155
(305) 614-2222

# EXHIBIT 4J



**CORPORATION SERVICE COMPANY®**

AP1 / ALL
**Transmittal Number: 11033250**
**Date Processed: 04/05/2013**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Sheryl Mlaker<br>GMAC/Residential Funding<br>8400 Normandale Lake Blvd<br>Suite 350<br>Bloomington, MN 55437 |

| | |
|---|---|
| **Entity:** | GMAC Mortgage, LLC<br>Entity ID Number  2455042 |
| **Entity Served:** | GMAC Mortgage, LLC |
| **Title of Action:** | GMAC Mortgage, LLC vs. Marcia Navarro |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Miami-Dade County Circuit Court, Florida |
| **Case/Reference No:** | 13-2008-CA-74998 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 04/05/2013 |
| **Answer or Appearance Due:** | 10 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Rosy A. Aponte<br>305-753-9600 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

## *R. Aponte & Associates, Esq., PLLC*

Phone: 305 753-9600
E-Mails: rapontelaw@gmail.com

### *Confidential Settlement Negotiations*

"PROPOSED SETTLEMENT OFFER"
FOR SETTLEMENT PURPOSES ONLY NOT TO BE USED AS
EVIDENCE FOR ANY OTHER PURPOSE NOR SHALL THE CONTENT
BE DISCLOSED OTHER THAN TO THE RESPECTIVE CLIENTS.

March 19, 2013

Eric J. Forte, Esq.                         VIA EMAIL:        eforte@albertellilaw.com
Albertelli Law
P.O. Box 23028
Tampa, FL. 33623-2028

RE:    Outstanding Final Judgment As To Attorneys' Fees and Costs
       Judgment Debtor: GMAC Mortgage, LLC
       Judgment Creditor: Marcia Navarro and Law Offices La Ley Con John H. Ruiz, P.A.
       Judgment Amount: $25,870.00 at an interest rate of 6.% per year

Dear Mr. Forte:

       I have been retained by the above referenced judgment creditor to handle the unsatisfied
judgment lien for the amount referenced above. The final judgment was awarded on January 30,
2013 (See Judgment attached as Exhibit A).

       Because the offices of John H. Ruiz have been unsuccessful in collecting said payment
from your client, I began the Levy process and obtained a Writ of Execution against your client
on, March 19, 2013. I have also drafted the Levy Affidavit pursuant to F.S.S. 56.27 (4)(A)(B)
AND (C) FOR PERSONAL PROPERTY and the Levy Instructions for the Sherriff (See
Documents Attached as Exhibit B, C & D).

       Let this letter serve as a demand that we receive payment for the full judgment amount
within the next 10 business days. Keep in mind that that Florida Statute 56.29 states as follows:

       56.29  Proceedings supplementary.—
       (1)  When any person or entity holds an unsatisfied judgment or judgment lien
       obtained under chapter 55, the judgment holder or judgment lienholder may file
       an affidavit so stating, identifying, if applicable, the issuing court, the case
       number, and the unsatisfied amount of the judgment or judgment lien, including
       accrued costs and interest, and stating that the execution is valid and outstanding,
       and thereupon the judgment holder or judgment lienholder is entitled to these
       proceedings supplementary to execution…

       …(11)  **Costs for proceedings supplementary shall be taxed against the
       defendant as well as all other incidental costs determined to be reasonable
       and just by the court including, but not limited to, docketing the execution,
       sheriff's service fees, and court reporter's fees. Reasonable attorney's fees
       may be taxed against the defendant.**

Page 1 of 2

Eric J. Forte
March 19, 2013

Consequently, it is in the best interest of your client to pay the attorney's fee judgment before I further pursue the levy and your client is also taxed with sheriff's fees, and further attorney's fees. At this time, my clients only demand the amount owed on the judgment lien even though we have already incurred some execution fees and attorney's fees. If you opt to not amicably resolve this matter with the undersigned within the next 10 business days, we will pay the optional expedited Levy fee in order to execute on the writ within 24 hours.

Nothing in this letter is intended to be, nor should be construed as an admission against the interests of my clients and shall not be construed as a waiver of any rights, remedies, or claims, all of which are expressly reserved.

Very truly yours,
R. Aponte & Associates, Esq., PLLC

Rosy A. Aponte, Esq.
Florida Bar NO.: 54977
Rapontelaw@gmail.com
(305) 753-9600

# **EXHIBIT 4K**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

GMAC MORTGAGE, LLC,

    Plaintiff,

    vs.

CASE NO.: 2008-074998-CA-01
DIVISION:

MARCIA NAVARRO, et al,

    Defendant(s).

_____/

## NOTICE OF FILING OF BANKRUPTCY STAY

    Plaintiff, GMAC Mortgage, LLC, gives Notice of the Bankruptcy Stay, and attaches a copy of the Supplemental Order For Interim Relief Under Bankruptcy Code Sections 105(A), 362, 363, 502, 1107(A), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses, pending in Case No. 12-12020 (MG) of the United States Bankruptcy Court of the Southern District of New York.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all parties on the attached service list by mail or eService on this _____20th_____ day of March, 2013.

Albertelli Law
P.O. Box 23028
Tampa, FL 33623
(813)221-4743
(813) 221-9171 facsimile
eService: servealaw@albertellilaw.com

By:_____
Jason M. Tarokh, Esq.
Florida Bar No.: 57611

JP - 10-61133

## Service List

Marcia Navarro
c/o John H. Ruiz, Esq.
5040 NW 7th ST
Suite 920
Miami, FL 33126
E-Serve 1: serve@lawofficeslaley.com

Imperial Lake Master Homeowners Association, Inc
c/o Frank Perez-Siam
7001 SW 87th CT
Miami, FL 33173-2509
E-Serve 1: fpsiam1@aol.com

Jane Doe n/k/a Vanessa Torres
830 Northwest 123rd Court
Miami, FL 33182

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------
In re:                                          )    Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )    Chapter 11
                                                )
                        Debtors.                )    Jointly Administered
                                                )
---------------------------------------------------

**SUPPLEMENTAL ORDER FOR INTERIM RELIEF UNDER BANKRUPTCY CODE
SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019
(I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS
MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE
AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF
ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE
AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE
DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE
DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim GA Servicing Order on May 15, 2012

granting the GA Servicing Motion on an interim basis; and the Court having entered the Interim

Non-GA Servicing Order on May 16, 2012 granting the Non-GA Servicing Motion on an interim

basis; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in

this district is proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this

proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors

having filed a motion to have the Motion heard on shortened notice [Docket No. 180]; and the

Court having entered an order shortening the time for notice of a hearing on the Motion [Docket

No. 183]; and sufficient notice of the Motion having been given and it appearing that no other or

further notice need be provided; and the National Association of Consumer Bankruptcy

Attorneys, on its own behalf and in a representative capacity, two individuals who are debtors

under Chapter 13, and Edward Boltz, counsel for those individuals, having filed jointly the

Limited Omnibus Objection To The Servicing Orders And Debtors' May 31, 2012 Motion For A

Supplemental Order [Docket No. 221] (the "NACBA Objection"); and the Committee having

filed the Omnibus Response And Reservation Of Rights Of The Official Committee Of

Unsecured Creditors To Certain Of The Debtors' First Day Motions [Docket No. 240]; and the

Debtors having filed the Omnibus Reply To Objections To Entry Of Final Orders For Specific

2

"First Day" Motions And Related Relief [Docket. No. 254] (the "Reply"); and upon the record of

the hearing; and it appearing that the relief requested by the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon;

and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

      1.    The Motion is GRANTED on an interim basis, as set forth herein, and the

NACBA Objection and any other objections to the Motion are hereby overruled;

Loss Mitigation Programs

      2.    The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs (collectively, the "Loss

Mitigation Programs"); provided, however, that cash payments made by the Debtors to

individual borrowers under the Loss Mitigation Programs during the period from the Petition

Date through the date a final order granting the Motion is entered that are not recoverable by the

Debtors, whether as an Advance or otherwise, shall not exceed $2,000,000 in the aggregate,

absent consent of the Committee or further order of the Court.  The Debtors shall provide

monthly reports to the Committee and the Office of the United States Trustee for the Southern

District of New York (the "U.S. Trustee"), which reports shall be in a form agreed to by the

Debtors and the Committee and such additional information as shall be reasonably requested by

the Committee, in each case, concerning the Loss Mitigation Programs.

<u>Settlement Procedures</u>

        3.     The Debtors are authorized, but not directed to compromise and settle certain claims brought by the Debtors against any non-insider third parties in connection with foreclosure, eviction, or borrower bankruptcy proceedings (each a "<u>Settling Party</u>") or by a Settling Party against any of the Debtors (each, a "<u>Claim</u>") in accordance with the following two-tiered procedures (the "<u>Settlement Procedures</u>"):

        <u>Tier I</u>: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts not to exceed $50,000 in full settlement of such Claim (each, a "<u>Tier I Settlement</u>").

        <u>Tier II</u>: The Debtors, in their sole discretion, may enter into, execute and consummate written agreements of settlement with respect to Claims that will be binding on the Debtors and their estates without further action by this Court or notice to any party and grant such Settling Parties cash payments or allowed prepetition claims in amounts exceeding $50,000 but less than $100,000 in full settlement of such Claims (each, a "<u>Tier II Settlement</u>"); <u>provided</u>, that in each case:

        (a) The Debtors must provide advance written notice (by formal or informal means, including by e-mail correspondence) of the terms of any Tier II Settlement to (x) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal; and (z) counsel to the administrative agent for the Debtors' providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer (collectively the "<u>Notice Parties</u>")

        (b) Those Notice Parties wishing to object to any proposed Tier II Settlement must serve a written objection (by formal or informal means, including by e-mail correspondence) on the Debtors, so that it is received by no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) calendar days from the

date the Notice Parties received written notice of such Tier II Settlement (the "Settlement Objection Deadline"). Objections should be addressed to the proposed attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Larren M. Nashelsky (LNashelsky@mofo.com) and Norman S. Rosenbaum (NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice Party, the parties will confer and attempt to resolve any differences. Failing that, the Debtors may petition the Court for approval of the Tier II Settlement in accordance with any case management orders entered in the Chapter 11 cases. An objection by a Notice Party with respect to a given Tier II Settlement shall not delay the finality or effectiveness of any other settlement to which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a Tier II Settlement from a Notice Party by the Settlement Objection Deadline, then such Tier II Settlement shall be deemed approved and the Debtors and Settling Parties may carry out the terms of such Tier II Settlement without further notice or approval required.

4.    The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000.

5.    The Debtors are authorized in their sole discretion, but not directed, to settle claims where some or all of the consideration is being provided by a third party and/or where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

6.    The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims. For claims relating to matters specified in paragraphs 12(a) and 13(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not

5

directed to, consummate said settlement in accordance with the Settlement Procedures set forth in this Order.

7.    Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

8.    Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

9.    The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement protocol in effect as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time; provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material amendments to the Internal Settlement Protocol.  The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

10.    Cash payments made by the Debtors under the Settlement Procedures during the period from the Petition Date through the date a final order granting the Motion is

entered shall not exceed $4,000,000 in the aggregate, absent consent of the Committee or further

order of the Court.

11.     Any period prescribed or allowed by the Settlement Procedures shall be

computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

12.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to

(a) pending and future foreclosure actions initiated by the Debtors or in those states providing for

non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with

respect to properties for which a foreclosure has been completed or pending, is hereby modified

pursuant to the following terms and conditions:

(a)     except as set forth herein, a borrower, mortgagor, or lienholder

(each, an "Interested Party") shall be entitled to assert and prosecute direct claims and

counter-claims relating exclusively to the property that is the subject of the loan owned or

serviced by a Debtor, in defense of any foreclosure, whether in a Judicial State or a Non-

Judicial State, or eviction proceeding, where a final judgment permitting the foreclosure or

eviction has not been awarded, and to prosecute appeals with respect to any such direct

claims or counter-claims;

(b)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Interested Party direct claims

and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that if granted, would not terminate or preclude the prosecution and

7

completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)    absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)    under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(e)    the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order; and

(f)    nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

13.    The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who currently has filed, or in the future files, for bankruptcy protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby modified pursuant to the following terms and conditions:

(a)    except as set forth herein, a Bankruptcy Borrower or a trustee duly appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

8

"Bankruptcy Trustee") shall be entitled to: (i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property; (v) seek an accounting from the Debtors with respect to the Bankruptcy Borrower's loan; and (vi) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (v) above;

(b)    except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

(c)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or

9

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action;

        (d)      absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to any party seeking to intervene to assert related claims

against the Debtors or any class action or collective action brought by any Bankruptcy

Borrower on behalf of any other class of borrowers;

        (e)      under no circumstances shall a Bankruptcy Borrower or Bankruptcy

Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award

related to any direct claim or counter-claim for which the automatic stay has been lifted by

the terms of this Order;

        (f)      the Debtors shall retain the right, upon appropriate motion and

notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any

provision of section 362(a) of the Bankruptcy Code modified by this Order; and

        (g)      nothing set forth herein shall preclude or limit any Bankruptcy

Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section

362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties

in interest.

*Foreclosures By The Debtors On Senior Loans*

        14.      The stay imposed by section 362(a) of the Bankruptcy Code applicable to

pending and future foreclosure actions initiated by the Debtors in cases where they act as

10

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)     except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)     the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)     the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)     the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.     *Actions Involving Amount, Validity Or Priority Of Liens*

15.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is hereby modified pursuant to the following terms and conditions:

> (a)    except as otherwise set forth herein, a Third Party Claimant shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor in connection with any Title Dispute, and to prosecute appeals with respect to any such direct claims or counter-claims;

> (b)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Third Party Claimant direct claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or (iii) asserted in the form of a class action or collective action;

> (c)    absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Third Party Claimant on behalf of any other Third Party Claimant or class of Third Party Claimants;

> (d)    under no circumstances shall a Third Party Claimant be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of the Order;

> (e)    the Debtors shall be entitled to take such actions as are necessary to clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

12

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

       (f)    the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

       (g)    nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

       16.    The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

13

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this

paragraph 16 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 16 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

        17.    Within thirty (30) days after the submission of customary invoices by the

Trustees to (a) counsel to the Debtors, (b) counsel to the Committee, and (c) the U.S. Trustee,

and without further order from the Court, the Debtors are authorized and directed to pay all

reasonable fees, costs and expenses and all indemnity claims referred to in paragraph 16

(including without limitation, attorney, financial advisor, consultant and expert fees and costs)

14

incurred postpetition by any of the Trustees relating to the performance of each of the Trustees' duties or the administration of the trusts or other agencies under the Agreements (the "Trustee Expenses"). All Trustee Expenses shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

18.    If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

19.    Notwithstanding the Debtors' obligations set forth in paragraphs 16 and 17, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

20.    The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

15

21.    Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

22.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

23.    Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings.  All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

24.    Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

16

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

25.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

26.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

27.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

28.    The hearing to consider the Motion on a final basis is scheduled for

July 10, 2012 at 10:00 a.m. (prevailing Eastern Time) before the Court.  Any objections or

responses to approval of the Motion on a final basis must be filed with the Clerk of the

Bankruptcy Court and served upon and received by (a) the Special Service List (as defined in the

*Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c),*

*2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case*

*Management And Administrative Procedures* (Docket No. 141)); (b) counsel to Wells Fargo

Bank, N.A., as securitization trustee, Alston & Bird LLP, 90 Park Ave, New York, New York

10016 (Attn: Martin G Bunin & William Hao); (c) counsel to The Bank of New York Mellon

Trust Company, N.A., as securitization trustee, Dechert LLP, 1095 Avenue of the Americas,

New York, New York 10036 (Attn: Glenn Siegel); (d) counsel to Deutsche Bank Trust Company

Americas and Deutsche Bank National Trust Company, as securitization trustee, Morgan Lewis

& Bockius LLP, 101 Park Ave, New York, New York 10178-0600 (Attn: James L Garrity, Jr.)

and (e) counsel to U.S. Bank, National Association, as securitization trustee, Seward & Kissell

17

LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Ronald L Cohen); on or before June 29, 2012 at 5:00 p.m. prevailing EST.

        29.    This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated:       June 15, 2012
             New York, New York

                              **/s/Martin Glenn**
                               MARTIN GLENN
                 United States Bankruptcy Judge

# **EXHIBIT 4L**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendants.

_____/

## DEFENDANT NAVARRO'S AMENDED MOTION FOR SANCTIONS AND TO HOLD JASON M. TAROKH AND ALBERTELLI LAW FIRM AND PLAINTIFF IN CONTEMPT OF COURT FOR FILING AN INAPPLICABLE NOTICE OF BANKRUPTCY STAY TO AVOID EXECUTION AND MOTION TO DETERMINE THAT THERE IS NO STAY IN EFFECT

COMES NOW, Defendant, Marcia Navarro, by and through undersigned counsel and files the above styled motion and in support thereof states as follows:

1.      On or about February 1, 2013, this Court entered a final judgment against GMAC Mortgage, LLC., the Plaintiff in this action for an award of attorney's fees. The judgment remains outstanding as of the filing of this motion.

2.      On or about March 20, 2013, Jason M. Tarokh, Attorney for the Plaintiff, caused to be filed a Notice of Filing of Bankruptcy Stay for the purpose of claiming that a stay was in effect by virtue of a Bankruptcy case bearing case number 12-12020 (MG). (Attached hereto as Exhibit A).

3.    The Bankruptcy Order specifically provided for the granting of a limited stay
relief to permit borrowers or their tenants, as applicable, to prosecute direct claims
and counter-claims in foreclosure and eviction proceedings.

4.    Accordingly, the Bankruptcy court Order dated July 13, 2012 allows for the
prosecution and enforcement of this final judgment (attached as Exhibit B).

5.    Moreover, counsel for the Plaintiff Albertelli Law never informed this court that
this order had any effect until after this judgment had been entered, demonstrating
intentional misconduct and attempting to use an inapplicable order to stay the
execution of this final judgment.

6.    The Albertlli Law Firm and attorney Jason M. Tarokh should be sanctioned and
show cause why this court should not hold them in contempt. This law firm and
its lawyers have misrepresented to this court that a stay order was in effect.

## PRODECURAL HISTORY

1.    On or about, December 4, 2008, GMAC, Mortgage, LLC, filed this foreclosure
complaint against Defendant MARCIA NAVARRO.

2.    On or about December 29, 2008, through the undersigned counsel on behalf of the
Defendant, MARCIA NAVARRO, filed her Answer and Affirmative Defense, which among
other defenses, asserted her rights as to attorney fees under 57.105(7) as stipulated in the
Mortgage Contract's paragraph 24. Specifically, pursuant to Florida Law, 57.105(7) which states
as follows:

> "If a contract contains a provision allowing attorney's fees to a party when he or
> she is required to take any action to enforce the contract, the court may also allow
> reasonable attorney's fees to the other party when that party prevails in any
> action, whether as plaintiff or defendant, with respect to the contract. This
> subsection applies to any contract entered into on or after October 1, 1988."

3.    Pursuant to Paragraph 24 of the mortgage contract and to Fla. Stat. Section 57.105(7), the Defendants are entitled to attorney's fees if they prevailed in a foreclosure action.

4.    This action was actively litigated until, on or about, March 2, 2011, the 11th Judicial Circuit in Miami-Dade County, generated an Order setting Non-Jury Trial for April 4, 2011.

5.    On or about April 4, 2011, this Honorable Court entered an Order of Dismissal and Releasing of Lis Pendens in this instant action.

6.    As a result, on or about, April 13, 2011, the undersigned served Plaintiff's Counsel with its Motion for Entitlement of Attorney Fees and filed same with the Clerk.

7.    On or about, May 14, 2012, Plaintiff filed Bankruptcy and failed to included and name Defendant MARCIA NAVARRO, as one of their creditors and failed to file a stay with this foreclosure action in question.

8.    On or about June 12, 2012, this Honorable Court granted Defendant's Motion For Entitlement of Attorney Fees, which Plaintiff's Counsel attended and failed to disclose that there was a bankruptcy stay.

9.    On January 15, 2013, Honorable Judge Victoria Platzer, signed and entered a Scheduling Order, and electronic mailed it back to the service list, which included Plaintiff's counsel.

10.    On or about, February 1, 2013, an Order awarding Attorney's Fees and Cost of $25,870.00 was entered by this Honorable Court.

11.    On or about March 19, 2013, Plaintiff filed their objection and Motion To Vacate said final judgment as to attorney fees and costs. This filed motion has a lapse of time of

approximately 6 weeks after the Final Judgment was entered and which they were properly served with and given due notice.

12.    As a result, the undersigned filed a response in opposition to Plaintiff's motion to vacate as they had no legal basis for setting same aside because Florida rules require such a motion be done within 10 days unless the movant can raise and prove excusable neglect under statute of 1.540. Plaintiff's motion does not even go as far as raising any excusable neglect. Hence, it is legally insufficient.

13.    After Defendant's served the Plaintiff's with the Response in Opposition, suddenly the Plaintiff's selective amnesia cleared and on or about March 21, 2013, Plaintiff filed a Notice of filing of Bankruptcy Stay before the Honorable State Court for the first time.

14.    As a result, we now move for this Honorable Court to give us clarification as to the foreclosure proceedings by GMAC Mortgage, LLC and as to all foreclosure proceedings being relieved from said stay when it comes to borrowers defending said foreclosure actions.

15.    As GMAC Mortgage, LLC., has now conveniently decided to enforce the stay in a foreclosure proceeding, even though  July 13, 2012, FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019, states said foreclosure actions may proceed.

16.    Moreover, Marcia Navarro, falls within the "EXCEPTION" that Honorable Court entered, which is that "(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, **except** where a monetary claim must be plead in order for an Interested Party to a **assert a claim to defend against or otherwise enjoin or preclude a foreclosure** (each a

"Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action"

## THE BANKRUPTCY COURT HAS ORDERED THERE IS AN EXCEPTION TO THE STAY UNDER ANY FORECLOSURE ACTIONS BY GMAC MORTGAGE, LLC AND MARCIA NAVARRO FALLS WITHIN THAT EXCEPTION

GMAC Mortgage LLC, has sought stay relief from the Bankrupty Court on all pending foreclosure proceedings it had as the Plaintiff, which was granted.

On or about, June 15, 2012, the State Court entered a Supplemental Order Under the Bankruptcy Code [Docket #391]...and subsequently entered a Final Supplemental Order [Docket #774], on July 13, 2012, Under the Bankruptcy Code sections which reads:

FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE
SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY
RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE
IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING
PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN
CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING
LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION
PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE
DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING
THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND
EXPENSES

"Upon the Debtor's motion (the "Motion") of Residential Capital, LLC, and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation programs; (ii) approving procedures for the compromise and settlement of certain claims, litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct claims and counter-claims in foreclosure and eviction

5

proceedings (including in states in which non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where they service senior mortgage loans and own the junior mortgage loans on the underlying property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions involving the amount, validity or priority of liens on properties subject to foreclosure proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee fees and expenses..." In addition, paragraph No. 8. of page 6 and paragraph (f) of page 9 state as follows:"

"...8. Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or post-petition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court....

*"Borrower Foreclosure And Eviction Proceedings*
14. The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a) except as set forth herein, **a borrower**, mortgagor, or lienholder (each, an "Interested Party") **shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure**, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or...

(b) absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors, **except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure** (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(f) nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest."

The action in this case is a pending foreclosure action (See Docket attached ad Exhibit A) that fall under paragraphs No. 14.(a)&(b) and the Defendant in that case is a borrower and a defined "interested party" under said paragraphs.

The final judgment granted by this Court was a result of the borrower asserting her defenses to a mortgage contract that was procured through fraud and that GMAC Mortgage, LLC., was not ready to prosecute and could not prove it had standing. However, the dismissal was without prejudice and GMAC Mortgage, LLC did not have it rights to later pursue another foreclosure action extinguished. Nonetheless, the Florida Supreme Court and the third district have held that the Court must award attorney fees when there is a contractual provision on the matter and after litigating the contract, the prevailing party gets attorney fees. The Mortgage Contract at issue contains a clause as to fees and costs being awardable. In general, attorney fees and costs are recoverable only by force of some statutory provision or if it is stipulated in a contract. An amendment to Fla. Stat. § 57.105 (7) was done under Laws 1999, c. 99-225, § 4 which reads:

> *"(7) If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This act shall take effect October 1,1988, and shall apply to contracts entered into on said date or thereafter."*

Florida case law has clearly interpreted the above referenced statute as follows: The Florida Supreme Court and the 3rd DCA have held that "when plaintiff voluntarily dismisses

action ... defendant is prevailing party for purpose of awarding attorney fees, and that where attorney fees are provided by statute or contract, such fees are properly awarded after a VOLUNTARY OR INVOLUNTARY DISMISSAL." Concrete & Lumber Enterprises vs. Guaranty Business Credit Corp.. 829 So.2d 247 and Thornber vs. City of Fort Walton Beach. 568 So.2d 914 (Fla. 1990), Varcarcel vs. Chase Bank. 2010 WL 474038; The Bank of New-York vs. Williams; 979 So2d 347.

In fact, Florida courts such as the 1st, 2nd, 3rd and 4th DCA, the Florida Supreme Court, and the Eleventh Circuit Court of Appeals have held that any prevailing party from a civil action that was voluntarily or involuntarily dismissed, may be entitled to recover attorney's fees and costs. Moreover, Florida courts have interpreted the amended statute of attorney fees under §57.105 as now being less restrictive in that it does not matter that the party who voluntarily dismissed the action or the party against whom the action was involuntarily dismissed, has by law, the ability to later file another action regarding the same issues. See Concrete & Lumber Enterprises vs. Guaranty Business Credit Corp.. 829 So.2d 247 and Thornber vs. City of Fort Walton Beach. 568 So.2d 914 (Fla. 1990); The Bank Of New York vs. Paulette Williams. 979 So.2d 347 (1st DCA 2008); Carmen Valcarcel. et. al. vs. Chase Bank USA. N.A.. 201 OWL 47402386 (4th DCA 2010); State of Florida vs. Doran. 958 So.2d 1082 (1st DCA 2007); Wachovia Bank vs. Horizon Wholesale Foods. 2009 WL 4750358 (11th Circuit Court 2009), and Country Place Community Association. Inc. vs. J.P. Morgan Mortgage. 2010 WL 5350879 (2nd DCA 2010).

## NAVARRO FALLS UNDER THE "EXCEPTION" UNDER THE JULY 13, 2012 ORDER WHICH GRANTED PENDNG FORECLOSURE ACTIONS TO PROCEED

As a result, Navarro also seeks from the Court an Order vacating the Bankruptcy Stay from this case and permission to proceed with such claims by GMAC Mortgage, LLC and the

defenses asserted by Navarro, which as a result of defending said foreclosure action, the Court

has awarded the borrower $25,870.00, as a judgment of attorney fees in this action.

> Section 362(d)(l) of the Bankruptcy Code provides, in relevant part, that "upon request of a party in interest and after notice and a hearing, the court shall grant relief from the stay. . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(l). The Bankruptcy Code does not, however, define the phrase "for cause." In determining whether "cause" exists to lift the stay for prepetition litigation, courts consider the following factors (the "Sonnax Factors"):

> (1) whether relief would result in a partial or complete resolution of the issues,
> (2) the lack of any connection with or interference with the bankruptcy case.
> (3) **whether the other proceeding involves the debtor as a fiduciary.** \
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.
> (5) whether the debtor's insurer has assumed full responsibility for defending the action,
> **(6) whether the action primarily involves third parties.**
> (7) whether litigation in another forum would prejudice the interests of other creditors.
> (8) whether the judgment claim arising from the other action is subject to equitable subordination,
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor.
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation.
> (11) whether the parties are ready for trial in the other proceeding, and

> (12) the impact of the stay on the parties and the balance of harms.

In the instant action, GMAC Mortgage. LLC is acting as a fiduciary in the foreclosure

action and is it would have prevailed, would have had the right to assert its attorney fees and

costs under the mortgage contract pursuant to Fla. Sta. 57.105(7) stated above.

It would be highly prejudicial to mortgage borrowers all over the United States if GMAC

Mortgage, LLC, would be allowed to commence foreclosure actions it was not ready to prosecute

and force the borrower to retain attorneys to defend their rights under their mortgage contracts,

but preclude them from obtaining the fees they are entitled to under the same contract that

GMAC Mortgage, LLC is trying to foreclose on. GMAC Mortgage, LLC should not be allowed

to use the bankruptcy proceedings as a **"sword and a shield"** against the same borrowers. If

GMAC Mortgage, LLC is allowed to collect attorney's fees and costs in a final judgment of

foreclosure when it is the prevailing party, then justice requires that the borrower too be able to

collect attorney's fees and costs if they prevail in a foreclosure action GMAC is prosecuting. As

the Bankruptcy Court has held in another Order and Opinion in that case:

> "Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
> 907 F.2d 1280. 1286 (2d Cir. 1990); In re N.Y. Med Grp., PC. 265 B.R. 408. 413
> (Bankr. S.D.N.Y. 2001). **Not all of the Sonnax Factors are relevant in every
> case, and "cause" is a broad and flexible concept that must be determined on a
> case-by-case basis.** Spencer v. Bogdanovich (In re Bogdanovich), 292 F.3d 104. 110
> (2d Cir. 2002) (citing Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2dCir.
> 1999))."

In the instant case, for the aforementioned facts and case law, Marcia Navarro should be

allowed to collect the judgment for attorneys fees and costs, which was granted to her after

defending and litigating a foreclosure proceeding that GMAC Mortgage. LLC sought and

obtained relief from this Court in order to proceed with and prosecute same.

Moreover, Navarro clearly falls within the exception the Bankruptcy Court outlined and

stipulated to in the Order entered on [Docket #774], July 13, 2012, which states that all

"mandatory monetary claims" will remain under the stay as to an interested party may, **"except

where a monetary claim must be plead in order for an Interested Party to a assert a claim

to defend against or otherwise enjoin or preclude a foreclosure** (each a "Mandatory

Monetary Claim")."

Because Marcia Navarro is a Defendant in this State Foreclosure Action, which this Court granted her entitlement and final judgment of attorney fees, she clearly falls within this EXCEPTION, and the Stay does not prohibit her opportunity to collect on that judgment.

Under the unique facts of this case, denying Marcia Navarro a relief from stay in order to collect on her judgment of attorney fees would result in a miscarriage of justice. GMAC Mortgage, LLC has asked for relief from stay in this Bankruptcy proceeding in order to continue the foreclosure actions in state court case against all borrowers it is trying to foreclose on. While GMAC Mortgage, LLC, is entitled to the protections from ongoing litigation afforded a debtor in bankruptcy, it is not seeking those protections. Rather, the attorneys for the debtor in this action and in the foreclosure action are using the protections of GMAC Mortgage, LLC, and the bankruptcy action as a shield to avoid a preexisting state court action and as a sword to impose their desired forum and stay relief against the borrower's. Allowing the attorneys for the debtor and the debtor to manipulate the state and federal courts' concurrent jurisdiction to deny borrower's attorney fees for defending the same foreclosure action it sought and obtained relief form stay to prosecute in the state court action constitutes a miscarriage of justice.

A case right on point is In re Nancy Elaine Ybarra, 424 F.3d 1018 where the Bankruptcy Court held:

> "Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense. See Siegel, 143 F.sd at 533-34. Personal liability for fees incurredthrough the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge. This policy difference supports our conclusion that the administrative expense priority cases do not control our determination of whether a claim is pre-petition or post-petition in the discharge context. As the BAP noted, Siegel was decided less than six weeks after Abercrombie but failed to cite it. Ybarra, 295 B.R. at 613. Kadjevich was decided two years after Siegel, but does not discuss that case. In our view, the best explanation for this lack of integration is that Siegel involved discharge,

while Abercrombie and Kadjevich involved administrative expense priority—two distinct areas of bankruptcy law with separate purposes. In sum, we conclude that the rules set forth in Abercrombie and Kadjevich do not apply to the question of whether debts are discharged.

D. Discharge of Rockwell's Attorney Fees and Cost Claims

**In light of the foregoing discussion, we reaffirm that claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily "return[s] to the fray." See Siegel, 143 F.sd at 533-34-** Whether attorney fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses."

After Siegel filed the bankruptcy petition, but two months prior to the discharge, he sued Freddie Mac in state court, alleging breach of duties under the deeds of trust. Id. at 528, 531. Freddie Mac removed the case to federal court. Id. at 528. The federal district court granted summary judgment to Freddie Mac on the ground that the action was barred by the res judicata effect of the bankruptcy proceeding. Id. The district court awarded Freddie Mac attorney fees incurred in pursuing its rights under the deeds of trust, pursuant to a provision in the deeds. Id. at 528, 531.

On appeal, Siegel argued that the claim for attorney fees was discharged in the bankruptcy proceedings. Id. at 532. We analyzed the issue under the framework of whether the claim was "contingent" pursuant to § ioi(s)(A). Id. A contingent claim is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." Id. (quoting FosWedt v. Dow (In re Fostvedt), 823 F.2d 305, 306 (gth Cir.igSy)). **We reasoned that because, after being "freed from the untoward effects of the contracts he had entered into" through the discharge, Siegel voluntarily chose to "return to the fray and to use the contract as a weapon," it was "perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." Id. at 533. We emphasized Siegel's post-petition initiation of new litigation:**

**Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation** about the contract without consequences. Id. at 534. On the basis of this post-petition voluntary action on the part of the debtor, we concluded that the award of post-petition attorney fees was not discharged. Id."

12

Wherefore, Marcia Navarro by and through undersigned counsel request that sanctions be imposed against Jason M. Tarokh and the Albertelli Law Firm and that the court hold an evidentiary hearing finding them in contempt for misrepresenting a Stay Order to this court and ask that this Court determine there is no stay in effect.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed this 16th day of May, 2013 to: Jason M. Tarokh, Esq., Albertelli Law, P.O. Box 23028, Tampa, Florida 33623. servealaw@albertellilaw.com

**LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A**
**Attorneys for Defendant Navarro**
4182 S.W. 74th Court
Miami, Florida 33155
(305) 649-0020

By: _____
JOHN H. RUIZ, ESQUIRE
Florida Bar No.: 928150

JOHN H. RUIZ, P.A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL ACTION

GMAC MORTGAGE, LLC,

Plaintiff,

CASE NO.: 2008-074998-CA-01
DIVISION:

vs.

MARCIA NAVARRO, et al,

Defendant(s).

_____/

## NOTICE OF FILING OF BANKRUPTCY STAY

Plaintiff, GMAC Mortgage, LLC, gives Notice of the Bankruptcy Stay, and attaches a copy of the Supplemental Order For Interim Relief Under Bankruptcy Code Sections 105(A), 362, 363, 502, 1107(A), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses, pending in Case No. 12-12020 (MG) of the United States Bankruptcy Court of the Southern District of New York.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to all parties on the attached service list by mail or eService on this _20ᵗʰ_ day of March, 2013.

Albertelli Law
P.O. Box 23028
Tampa, FL 33623
(813)221-4743
(813) 221-9171 facsimile
eService: servealaw@albertellilaw.com

By: _____
Jason M. Tarokh, Esq.
Florida Bar No. 57611

JP - 10-61133

**EXHIBIT** 

## Service List

Marcia Navarro
c/o John H. Ruiz, Esq.
5040 NW 7th ST
Suite 920
Miami, FL 33126
E-Serve 1: serve@lawofficeslaley.com

Imperial Lake Master Homeowners Association, Inc
c/o Frank Perez-Siam
7001 SW 87th CT
Miami, FL 33173-2509
E-Serve 1: fpsiam1@aol.com

Jane Doe n/k/a Vanessa Torres
830 Northwest 123rd Court
Miami, FL 33182

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

---

**SUPPLEMENTAL ORDER FOR INTERIM RELIEF UNDER BANKRUPTCY CODE
SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019
(I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS
MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE
AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF
ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE
AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE
DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE
DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES**

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.
Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief
granted herein may refer to http://www.kccllc.net/rescap for additional information.

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim GA Servicing Order on May 15, 2012

granting the GA Servicing Motion on an interim basis; and the Court having entered the Interim

Non-GA Servicing Order on May 16, 2012 granting the Non-GA Servicing Motion on an interim

basis; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in

this district is proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this

proceeding on the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Debtors

having filed a motion to have the Motion heard on shortened notice [Docket No. 180]; and the

Court having entered an order shortening the time for notice of a hearing on the Motion [Docket

No. 183]; and sufficient notice of the Motion having been given and it appearing that no other or

further notice need be provided; and the National Association of Consumer Bankruptcy

Attorneys, on its own behalf and in a representative capacity, two individuals who are debtors

under Chapter 13, and Edward Boltz, counsel for those individuals, having filed jointly the

Limited Omnibus Objection To The Servicing Orders And Debtors' May 31, 2012 Motion For A

Supplemental Order [Docket No. 221] (the "NACBA Objection"); and the Committee having

filed the Omnibus Response And Reservation Of Rights Of The Official Committee Of

Unsecured Creditors To Certain Of The Debtors' First Day Motions [Docket No. 240]; and the

Debtors having filed the Omnibus Reply To Objections To Entry Of Final Orders For Specific

"First Day" Motions And Related Relief [Docket. No. 254] (the "Reply"); and upon the record of

the hearing; and it appearing that the relief requested by the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon;

and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED on an interim basis, as set forth herein, and the

NACBA Objection and any other objections to the Motion are hereby overruled;

Loss Mitigation Programs

2.    The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs (collectively, the "Loss

Mitigation Programs"); provided, however, that cash payments made by the Debtors to

individual borrowers under the Loss Mitigation Programs during the period from the Petition

Date through the date a final order granting the Motion is entered that are not recoverable by the

Debtors, whether as an Advance or otherwise, shall not exceed $2,000,000 in the aggregate,

absent consent of the Committee or further order of the Court.  The Debtors shall provide

monthly reports to the Committee and the Office of the United States Trustee for the Southern

District of New York (the "U.S. Trustee"), which reports shall be in a form agreed to by the

Debtors and the Committee and such additional information as shall be reasonably requested by

the Committee, in each case, concerning the Loss Mitigation Programs.

3

Settlement Procedures

        3.      The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a

Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-

tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $50,000 in full
> settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts exceeding $50,000 but less than
> $100,000 in full settlement of such Claims (each, a "Tier II
> Settlement"); provided, that in each case:

> (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33
> Whitehall Street, 21st Floor, New York, New York 10004, Attn:
> Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin
> Naftalis & Frankel LLP, 1177 Avenue of the Americas New York,
> NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal;
> and (z) counsel to the administrative agent for the Debtors'
> providers of debtor in possession financing, Skadden, Arps, Slate,
> Meagher & Flom LLP, 4 Times Square, New York, New York
> 10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer
> (collectively the "Notice Parties")

> (b) Those Notice Parties wishing to object to any proposed
> Tier II Settlement must serve a written objection (by formal or
> informal means, including by e-mail correspondence) on the
> Debtors, so that it is received by no later than 4:00 p.m. (prevailing
> Eastern Time) on the day that is seven (7) calendar days from the

4

date the Notice Parties received written notice of such Tier II Settlement (the "Settlement Objection Deadline"). Objections should be addressed to the proposed attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Larren M. Nashelsky (LNashelsky@mofo.com) and Norman S. Rosenbaum (NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice Party, the parties will confer and attempt to resolve any differences. Failing that, the Debtors may petition the Court for approval of the Tier II Settlement in accordance with any case management orders entered in the Chapter 11 cases. An objection by a Notice Party with respect to a given Tier II Settlement shall not delay the finality or effectiveness of any other settlement to which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a Tier II Settlement from a Notice Party by the Settlement Objection Deadline, then such Tier II Settlement shall be deemed approved and the Debtors and Settling Parties may carry out the terms of such Tier II Settlement without further notice or approval required.

4.      The Debtors shall be required to seek approval from the Court in order to enter into and consummate any proposed settlement of a Claim with a settlement amount in excess of $100,000.

5.      The Debtors are authorized in their sole discretion, but not directed, to settle claims where some or all of the consideration is being provided by a third party and/or where the Debtors are releasing claims against creditors or third parties provided the Debtors otherwise comply with the Settlement Procedures.

6.      The Settlement Procedures are without prejudice to the right of the Debtors to seek an order of this Court approving additional or different procedures with respect to specific claims or categories of claims. For claims relating to matters specified in paragraphs 12(a) and 13(a) of this Order that were resolved pursuant to a settlement prior to the Petition Date, but where such settlement has not been consummated, the Debtors are authorized, but not

5

directed to, consummate said settlement in accordance with the Settlement Procedures set forth in this Order.

7.      Notwithstanding anything to the contrary contained herein, this Order shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses, or resolve any controversy authorized by any other order of the Court.

8.      Nothing in this Order or the Motion shall constitute a determination or admission of liability or of the validity or priority of any claim against the Debtors, and the Debtors reserve their rights to dispute the validity or priority of any claim asserted.

9.      The authority granted in this Order shall not replace or obviate the need to comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements contemplated in the Motion. All settlements made pursuant to the Settlement Procedures shall, to the extent applicable, be made in accordance with the Debtors' settlement protocol in effect as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time; provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with notice of any material amendments to the Internal Settlement Protocol. The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

10.     Cash payments made by the Debtors under the Settlement Procedures during the period from the Petition Date through the date a final order granting the Motion is

6

entered shall not exceed $4,000,000 in the aggregate, absent consent of the Committee or further order of the Court.

      11.    Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

    *Borrower Foreclosure And Eviction Proceedings*

      12.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or pending, is hereby modified pursuant to the following terms and conditions:

      (a)    except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor, in defense of any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment permitting the foreclosure or eviction has not been awarded, and to prosecute appeals with respect to any such direct claims or counter-claims;

      (b)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for relief that if granted, would not terminate or preclude the prosecution and

completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

       (c)     absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

       (d)     under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

       (e)     the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order; and

       (f)     nothing set forth herein shall preclude or limit any Interested Party from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

     13.     The automatic stay imposed by section 362(a) of the Bankruptcy Code applicable against a borrower who currently has filed, or in the future files, for bankruptcy protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby modified pursuant to the following terms and conditions:

       (a)     except as set forth herein, a Bankruptcy Borrower or a trustee duly appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a

8

"Bankruptcy Trustee") shall be entitled to: (i) assert and prosecute or continue to prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to determine the validity, priority or extent of a Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce or fix the amount of the Debtors' claim or lien against the Bankruptcy Borrower's property; (v) seek an accounting from the Debtors with respect to the Bankruptcy Borrower's loan; and (vi) enter into, execute and consummate a written agreement of settlement with the Debtors where the Debtors elect to enter into such settlement in their sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (v) above;

      (b)     except as set forth herein, a Bankruptcy Borrower shall be entitled to (i) engage in court-supervised or court-authorized loss-mitigation programs regarding the Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and consummate settlements of claims and liens in accordance with the ordinary course of the Debtors' business and applicable law;

      (c)     absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's direct claims, counter-claims, motions or adversary proceedings: (i) for monetary relief of any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy Borrower's loan; (iii) for relief that if granted, would have no effect on the amount, validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or (iv) asserted in the form of a class action or collective action;

(d)    absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)    under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)    the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order; and

(g)    nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

14.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

servicer for the Senior Loan and also own (or for which the applicable public land records otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the following terms and conditions:

(a)    except as otherwise set forth herein, the Debtors shall be entitled to assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-Judicial State;

(b)    the Debtors shall be entitled to take such actions as are necessary to extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and marketable title with respect to the property underlying a Senior Loan in connection with any sale or other disposition of such property;

(c)    the Debtors shall be entitled to seek all appropriate relief with respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy Borrower without further order of the Court; and

(d)    the Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning Junior Foreclosure Actions.

D.    *Actions Involving Amount, Validity Or Priority Of Liens*

15.    The stay imposed by section 362(a) of the Bankruptcy Code applicable to actions involving the amount, validity, and/or priority of liens commenced by third parties purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

       (a)     except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

       (b)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

       (c)     absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

       (d)     under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

       (e)     the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

       (f)     the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

       (g)     nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

       16.     The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

13

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements.  For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale.  Notwithstanding the foregoing, nothing in this

paragraph 16 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 16 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

17.    Within thirty (30) days after the submission of customary invoices by the

Trustees to (a) counsel to the Debtors, (b) counsel to the Committee, and (c) the U.S. Trustee,

and without further order from the Court, the Debtors are authorized and directed to pay all

reasonable fees, costs and expenses and all indemnity claims referred to in paragraph 16

(including without limitation, attorney, financial advisor, consultant and expert fees and costs)

14

incurred postpetition by any of the Trustees relating to the performance of each of the Trustees' duties or the administration of the trusts or other agencies under the Agreements (the "Trustee Expenses"). All Trustee Expenses shall be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding the entry of an order authorizing the assumption and assignment or rejection of any Agreement. However, the Debtors will not be responsible for any fees, costs and expenses incurred with respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing the rejection of such Agreement.

18.    If any or all of the provisions of this Order are hereafter reversed, modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt of written notice by the Trustees of the effective date of such reversal, stay, modification or vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur, the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to or after the Notice Date by the Debtors shall be governed in all respects by the original provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies, privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

19.    Notwithstanding the Debtors' obligations set forth in paragraphs 16 and 17, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code section 365.

Other Relief

20.    The Debtors are authorized and empowered to take all actions and execute such documents as may be necessary or appropriate to carry out the relief granted herein.

15

21.    Nothing herein shall be deemed to limit the rights of the Debtors to operate their business in the ordinary course, and no subsequent order shall be required to confirm such rights.

22.    Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or otherwise.

23.    Notwithstanding anything to the contrary in this Order, any action to be taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral order or debtor in possession financing order entered in these chapter 11 proceedings.  All amounts authorized to be paid pursuant to this Order are subject to the limitations and restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To the extent that there is any inconsistency between the terms of this Order and the terms of any order relating to postpetition financing or cash collateral, the terms of the orders relating to postpetition financing or cash collateral shall govern.

24.    Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

     25.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

     26.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

     27.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

     28.    The hearing to consider the Motion on a final basis is scheduled for

July 10, 2012 at 10:00 a.m. (prevailing Eastern Time) before the Court. Any objections or

responses to approval of the Motion on a final basis must be filed with the Clerk of the

Bankruptcy Court and served upon and received by (a) the Special Service List (as defined in the

*Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c),*

*2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case*

*Management And Administrative Procedures* (Docket No. 141)); (b) counsel to Wells Fargo

Bank, N.A., as securitization trustee, Alston & Bird LLP, 90 Park Ave, New York, New York

10016 (Attn: Martin G Bunin & William Hao); (c) counsel to The Bank of New York Mellon,

Trust Company, N.A., as securitization trustee, Dechert LLP, 1095 Avenue of the Americas,

New York, New York 10036 (Attn: Glenn Siegel); (d) counsel to Deutsche Bank Trust Company

Americas and Deutsche Bank National Trust Company, as securitization trustee, Morgan Lewis

& Bockius LLP, 101 Park Ave, New York, New York 10178-0600 (Attn: James L Garrity, Jr.)

and (e) counsel to U.S. Bank, National Association, as securitization trustee, Seward & Kissell

LLP, One Battery Park Plaza, New York, New York 10004 (Attn: Ronald L Cohen); on or

before June 29, 2012 at 5:00 p.m. prevailing EST.

29.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:         June 15, 2012
               New York, New York


                              _____/s/Martin Glenn_____
                              MARTIN GLENN
                              United States Bankruptcy Judge

18

2
0 AAF

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

**CASE NO.: 13-2008-CA-74998**

GMAC MORTGAGE, LLC

      Plaintiff,

vs.

MARCIA NAVARRO, ET AL,

      Defendant(s).

_____/

2013 FEB -1 PM 10: 07

### FINAL JUDGMENT AS TO ATTORNEYS' FEES AND COSTS

Pursuant to Court Order dated January 16, 2013, entered in this action,

IT IS ADJUDGED that Defendant, MARCIA NAVARRO, and his attorneys LAW OFFICES OF

LA LEY CON JOHN H. RUIZ, P.A., recover from Plaintiff, GMAC MORTGAGE, LLC., the sum of

TWENTY FIVE THOUSAND   EIGHT HUNDRED AND SEVENTY DOLLARS. ($25,870.00)

representing Attorneys Fees and Costs which shall bear interest at the statutory rate of interest of 6% per

year from the date of this Order, in the instant case, for which let execution issue.

The Court hereby reserves jurisdiction to enforce this Judgment.

      DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on

01/30/13.

                                       JACQUELINE HOGAN SCOLA
                                       CIRCUIT COURT JUDGE

The parties served with this Order are indicated in the accompanying 11th Circuit email
confirmation which includes all emails provided by the submitter.  The movant shall
IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or
hand-delivery, to all parties/counsel of record for whom service is not indicated by the

1

**LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A.**
5040 N.W. 7 Street, Suite 920, Miami, Florida 33126 (305) 649-0020

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

)
In re:                                     )     Case No. 12-12020 (MG)
                                           )
RESIDENTIAL CAPITAL, LLC, et al.,          )     Chapter 11
                                           )
                         Debtors.          )     Jointly Administered
                                           )

---

## FINAL SUPPLEMENTAL ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a), 362, 363, 502, 1107(a), AND 1108 AND BANKRUPTCY RULE 9019 (I) AUTHORIZING THE DEBTORS TO CONTINUE IMPLEMENTING LOSS MITIGATION PROGRAMS; (II) APPROVING PROCEDURES FOR COMPROMISE AND SETTLEMENT OF CERTAIN CLAIMS, LITIGATIONS AND CAUSES OF ACTION; (III) GRANTING LIMITED STAY RELIEF TO PERMIT FORECLOSURE AND EVICTION PROCEEDINGS, BORROWER BANKRUPTCY CASES, AND TITLE DISPUTES TO PROCEED; AND (IV) AUTHORIZING AND DIRECTING THE DEBTORS TO PAY SECURITIZATION TRUSTEE FEES AND EXPENSES

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain of its

affiliates, as debtors and debtors in possession (collectively, the "Debtors") for entry of a

supplemental order under Bankruptcy Code sections 105(a), 362, 363, 1107(a) and 1108, and

Bankruptcy Rule 9019 (i) authorizing the Debtors to continue implementing loss mitigation

programs; (ii) approving procedures for the compromise and settlement of certain claims,

litigations and causes of action in the ordinary course of the Debtors' business; (iii) granting

limited stay relief to permit (w) borrowers or their tenants, as applicable, to prosecute direct

claims and counter-claims in foreclosure and eviction proceedings (including in states in which

non-judicial foreclosure is followed), (x) borrowers to prosecute certain actions in borrower

bankruptcy cases, (y) the Debtors to prosecute foreclosure actions in those circumstances where

---

[1]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion. Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

**EXHIBIT** 

they service senior mortgage loans and own the junior mortgage loans on the underlying

property, and (z) third party lien holders to prosecute direct claims and counter-claims in actions

involving the amount, validity or priority of liens on properties subject to foreclosure

proceedings; and (iv) authorizing and directing the Debtors to pay certain securitization trustee

fees and expenses; and the Court having considered the Whitlinger Affidavit and the Bocresion

Declaration; and the Court having entered the Interim Supplemental Order on June 15, 2012

[Docket No. 391]; and the Court having entered a final order on June 15, 2012 granting the GA

Servicing Motion on a final basis [Docket No. 401]; and the Court having entered a final order

on June 15, 2012 granting the Non-GA Servicing Motion on a final basis [Docket No. 402]; and

it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157

and 1334; and it appearing that venue of these Chapter 11 cases and the Motion in this district is

proper pursuant to 28 U.S.C §§ 1408 and 1409; and it appearing that this proceeding on the

Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); and sufficient notice of the Motion

having been given and it appearing that no other or further notice need be provided; and the

National Association of Consumer Bankruptcy Attorneys, on its own behalf and in a

representative capacity, two individuals who are debtors under Chapter 13, and Edward Boltz,

counsel for those individuals, having filed jointly the Limited Omnibus Objection To The

Servicing Orders And Debtors' May 31, 2012 Motion For A Supplemental Order [Docket No.

221] (the "NACBA Objection"); and the Committee having filed the Omnibus Response And

Reservation Of Rights Of The Official Committee Of Unsecured Creditors To Certain Of The

Debtors' First Day Motions [Docket No. 240]; and the Debtors having filed the Omnibus Reply

To Objections To Entry Of Final Orders For Specific "First Day" Motions And Related Relief

[Docket. No. 254]; and upon the record of the hearing; and it appearing that the relief requested

2

ny-1046923

by the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in

interest; and after due deliberation thereon; and any objections to the Motion, including the

NACBA Objection, having been withdrawn, resolved, or overruled on the merits; and sufficient

cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein, and any

objections to the Motion are hereby overruled;

<u>Loss Mitigation Programs</u>

2.      The Debtors are authorized, but not directed in their sole and absolute

discretion and subject to available funding, to continue developing and implementing loss

mitigation programs and procedures in the ordinary course of their businesses *nunc pro tunc* to

the Petition Date, including, but not limited to, making incentive payments to borrowers in

connection with the closing of short sales, or vacating properties in lieu of foreclosure or eviction

proceedings, or in the form of borrower rebates for loan payoffs including honoring all

obligations related thereto that accrued in whole or in part prior to the Petition Date (collectively,

the "<u>Loss Mitigation Programs</u>"); <u>provided</u>, <u>however</u>, that the aggregate cash payments made by

the Debtors to individual borrowers under the Loss Mitigation Programs that are not reimbursed

to the Debtors shall not exceed $550,000 per month (the "<u>Monthly Cap</u>"), absent consent of the

Committee or further order of the Court; <u>provided</u>, <u>further</u>, <u>however</u>, that to the extent the

Debtors do not exceed the Monthly Cap in any month they shall be entitled to utilize the

difference between the actual amount and the Monthly Cap in any succeeding month.  The

Debtors shall provide monthly reports to the Committee and the Office of the United States

Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>"), which reports shall be in a

ny-1046923

form agreed to by the Debtors and the Committee and such additional information as shall be

reasonably requested by the Committee, in each case, concerning the Loss Mitigation Programs.

3.      Cash payments made by the Debtors to individual borrowers under the

Loss Mitigation Programs for which the Debtors are not reimbursed shall not exceed $4.2

million in the aggregate, absent consent of the Committee or further order of the Court. For the

avoidance of doubt, the limitation on the amount of cash payments provided for in this paragraph

3 is in addition to the limitation on the amount of cash payments provided for in paragraph 12

hereof.

Settlement Procedures

4.      The Debtors are authorized, but not directed to compromise and settle

certain claims brought by the Debtors against any non-insider third parties in connection with

foreclosure, eviction, or borrower bankruptcy proceedings (each a "Settling Party") or by a

Settling Party against any of the Debtors (each, a "Claim") in accordance with the following two-

tiered procedures (the "Settlement Procedures"):

> Tier I: The Debtors, in their sole discretion, may enter into,
> execute and consummate written agreements of settlement with
> respect to Claims that will be binding on the Debtors and their
> estates without further action by this Court or notice to any party
> and grant such Settling Parties cash payments or allowed
> prepetition claims in amounts not to exceed $40,000 in full
> settlement of such Claim (each, a "Tier I Settlement").

> Tier II: The Debtors may enter into, execute and consummate
> written agreements of settlement with respect to Claims that will
> be binding on the Debtors and their estates without further action
> by this Court or notice to any party and grant such Settling Parties
> cash payments or allowed prepetition claims in amounts exceeding
> $40,000 but less than $100,000 in full settlement of such Claims
> (each, a "Tier II Settlement"); provided, that in each case:

> (a) The Debtors must provide advance written notice (by
> formal or informal means, including by e-mail correspondence) of
> the terms of any Tier II Settlement to (x) the U.S. Trustee, 33

4

Whitehall Street, 21st Floor, New York, New York 10004, Attn: Brian S. Masumoto, (y) counsel for the Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas New York, NY 10036, Attn: Kenneth H. Eckstein and Douglas H. Mannal; and (z) counsel to the administrative agent for the Debtors' providers of debtor in possession financing, Skadden, Arps, Slate, Meagher & Flom LLP, 4 Times Square, New York, New York 10036, Attn: Kenneth S. Ziman and Jonathan H. Hofer (collectively the "Notice Parties")

(b) Those Notice Parties wishing to object to any proposed Tier II Settlement must serve a written objection (by formal or informal means, including by e-mail correspondence) on the Debtors, so that it is received by no later than 4:00 p.m. (prevailing Eastern Time) on the day that is seven (7) calendar days from the date the Notice Parties received written notice of such Tier II Settlement (the "Settlement Objection Deadline"). Objections should be addressed to the proposed attorneys for the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10104, Attn: Larren M. Nashelsky (LNashelsky@mofo.com) and Norman S. Rosenbaum (NRosenbaum@mofo.com).

(c) If the Debtors receive a timely objection from a Notice Party, the parties will confer and attempt to resolve any differences. Failing that, the Debtors may petition the Court for approval of the Tier II Settlement in accordance with any case management orders entered in the Chapter 11 cases. An objection by a Notice Party with respect to a given Tier II Settlement shall not delay the finality or effectiveness of any other settlement to which an objection has not timely been delivered.

(d) If the Debtors do not receive a written objection to a Tier II Settlement from a Notice Party by the Settlement Objection Deadline, then such Tier II Settlement shall be deemed approved and the Debtors and Settling Parties may carry out the terms of such Tier II Settlement without further notice or Court approval.

5.      The Debtors shall be required to seek approval from the Court in order to

enter into and consummate any proposed settlement of a Claim with a settlement amount in

excess of $100,000.

6.      The Debtors are authorized in their sole discretion, but not directed, to

settle claims where some or all of the consideration is being provided by a third party and/or

ny-1046923

where the Debtors are releasing claims against creditors or third parties provided the Debtors

otherwise comply with the Settlement Procedures.

       7.     The Settlement Procedures are without prejudice to the right of the

Debtors to seek an order of this Court approving additional or different procedures with respect

to specific claims or categories of claims.  For claims relating to matters specified in paragraphs

14(a) and 15(a) of this Order that were resolved pursuant to a settlement prior to the Petition

Date, but where such settlement has not been consummated, the Debtors are authorized, but not

directed to, consummate said settlements in accordance with the Settlement Procedures set forth

in this Order.

       8.     Notwithstanding anything to the contrary contained herein, this Order

shall not affect, impair, impede or otherwise alter the right of the Debtors to resolve any

prepetition or postpetition controversy arising in the ordinary course of the Debtors' businesses,

or resolve any controversy authorized by any other order of the Court.

       9.     Nothing in this Order or the Motion shall constitute a determination or

admission of liability or of the validity or priority of any claim against the Debtors, and the

Debtors reserve their rights to dispute the validity or priority of any claim asserted.

       10.    The authority granted in this Order shall not replace or obviate the need to

comply with the Debtors' internal procedures, legal or otherwise, for authorizing the settlements

contemplated in the Motion.  All settlements made pursuant to the Settlement Procedures shall,

to the extent applicable, be made in accordance with the Debtors' settlement procedures in effect

as of the Petition Date (the "Internal Settlement Protocol") and as may be amended from time;

provided, however, that the Debtors shall provide the Committee and the U.S. Trustee with

notice of any material changes to the Internal Settlement Protocol.

6

11.     The Debtors shall provide monthly reports to the Committee and the U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee, and such additional information as shall be reasonably requested by the Committee, in each case, concerning settlements of any Claims pursuant to the Settlement Procedures.

12.     Cash payments made by the Debtors under the Settlement Procedures shall not exceed $4 million in the aggregate, absent consent of the Committee or further order of the Court.

13.     Any period prescribed or allowed by the Settlement Procedures shall be computed in accordance with Bankruptcy Rule 9006.

Limited Relief from Automatic Stay

*Borrower Foreclosure And Eviction Proceedings*

14.     The stay imposed by section 362(a) of the Bankruptcy Code applicable to (a) pending and future foreclosure actions initiated by the Debtors or in those states providing for non-judicial foreclosures, by a borrower; and (b) pending and future eviction proceedings with respect to properties for which a foreclosure has been completed or is pending, is hereby modified pursuant to the following terms and conditions:

(a)     except as set forth herein, a borrower, mortgagor, or lienholder (each, an "Interested Party") shall be entitled to assert and prosecute direct claims and counter-claims relating exclusively to the property that is the subject of the loan owned or serviced by a Debtor for the purposes of defending, unwinding, or otherwise enjoining or precluding any foreclosure, whether in a Judicial State or a Non-Judicial State, or eviction proceeding, where a final judgment (defined as any judgment where the right to appeal or seek reconsideration has expired or has been exhausted) permitting the foreclosure or

7

ny-1046923

eviction has not been awarded or, with respect to completed foreclosure sales in Non-Judicial States, where any applicable challenge period has not yet expired, and to prosecute appeals with respect to any such direct claims or counter-claims;

(b)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to all pending and future Interested Party direct claims and counter-claims:  (i) for monetary relief of any kind and of any nature against the Debtors, except where a monetary claim must be plead in order for an Interested Party to a assert a claim to defend against or otherwise enjoin or preclude a foreclosure (each a "Mandatory Monetary Claim"); (ii) for relief that if granted, would not terminate or preclude the prosecution and completion of a foreclosure or eviction; or (iii) asserted in the form of a class action or collective action;

(c)      absent further order of the Court, the stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Interested Party on behalf of any other Interested Party or class of Interested Parties;

(d)      under no circumstances shall an Interested Party be entitled to enforce against, recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order, including, without limitation, a Mandatory Monetary Claim;

(e)      the Debtors shall retain the right, upon appropriate motion and notice to any affected Interested Party, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the

8

12-12020-mg   Doc 774   Filed 07/13/12   Entered 07/13/12 17:05:30   Main Document
Pg 9 of 43

Debtors will not object to the Interested Party's telephonic participation at any hearing on
the motion; and

(f)       nothing set forth herein shall preclude or limit any Interested Party
from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code
on appropriate motion and notice to the Debtors and parties in interest.

*Borrower Bankruptcy Proceedings*

15.      The automatic stay imposed by section 362(a) of the Bankruptcy Code
applicable against a borrower who currently has filed, or in the future files, for bankruptcy
protection under any chapter of the Bankruptcy Code (a "Bankruptcy Borrower"), is hereby
modified pursuant to the following terms and conditions:

(a)      except as set forth herein, a Bankruptcy Borrower or a trustee duly
appointed under the Bankruptcy Code in the Bankruptcy Borrower's bankruptcy case (a
"Bankruptcy Trustee") shall be entitled to:  (i) assert and prosecute or continue to
prosecute an objection to the Debtors' proof of claim filed in the Bankruptcy Borrower's
bankruptcy case; (ii) assert and prosecute or continue to prosecute an objection to the
Debtors' motion for relief from the automatic stay filed in the Bankruptcy Borrower's
bankruptcy case; (iii) commence or continue to prosecute against the Debtors a motion or
adversary proceeding, as applicable, to determine the validity, priority or extent of a
Debtor's lien against the Bankruptcy Borrower's property; (iv) commence or continue to
prosecute against the Debtors a motion or adversary proceeding, as applicable, to reduce
(including to reduce to $0) or fix the amount of the Debtors' claim or lien against the
Bankruptcy Borrower's property; (v) prosecute appeals with respect to items (i) through
(iv) above; (vi) seek an accounting from the Debtors with respect to the Bankruptcy

9

Borrower's loan; and (vii) enter into, execute and consummate a written agreement of

settlement with the Debtors where the Debtors elect to enter into such settlement in their

sole discretion (but subject to the Settlement Procedures), to resolve items (i) through (vi)

above;

        (b)     except as set forth herein, a Bankruptcy Borrower shall be entitled to

(i) engage in court-supervised or court-authorized loss-mitigation programs regarding the

Bankruptcy Borrower's loan; and (ii) engage in discussions with the Debtors and execute a

modification of the Bankruptcy Borrower's loan or otherwise discuss, enter into and

consummate settlements of claims and liens in accordance with the ordinary course of the

Debtors' business and applicable law;

        (c)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all Bankruptcy Trustee's and Bankruptcy Borrower's

direct claims, counter-claims, motions or adversary proceedings:  (i) for monetary relief of

any kind and of any nature against the Debtors; (ii) for violation of any local, state or

federal statute or other law in connection with the origination of the Bankruptcy

Borrower's loan; (iii) for relief that if granted, would have no effect on the amount,

validity or priority of the Debtors' claim or lien against a Bankruptcy Borrower or the

property of the Bankruptcy Borrower securing such claim or lien of the Debtors; or

(iv) asserted in the form of a class action or collective action; provided however, a

Bankruptcy Trustee or Bankruptcy Borrower, solely in connection with their objections to

Debtors' proof of claim permitted by paragraph 15(a)(i) or proceedings permitted by

15(a)(iii), may assert claims of the type covered by subsection (i) or (ii) of this paragraph

15(c);

10

(d)      absent further order of the Court, the automatic stay shall remain in full force and effect with respect to any party seeking to intervene to assert related claims against the Debtors or any class action or collective action brought by any Bankruptcy Borrower on behalf of any other class of borrowers;

(e)      with the sole exception of objections to Debtors' proofs of claim permitted by paragraph 15(a)(i) above and proceedings described in 15(a)(iii) above and solely for purposes of reducing any such claim and not for the purpose of obtaining an affirmative recovery or award, under no circumstances shall a Bankruptcy Borrower or Bankruptcy Trustee be entitled to recoup, setoff or collect from the Debtors any judgment or award related to any direct claim or counter-claim for which the automatic stay has been lifted by the terms of this Order;

(f)      the Debtors shall retain the right, upon appropriate motion and notice to any Bankruptcy Borrower or Bankruptcy Trustee, to seek to impose any provision of section 362(a) of the Bankruptcy Code modified by this Order and to the extent such relief is sought, the Debtors will not object to the Interested Party's telephonic participation at any hearing on the motion; and

(g)      nothing set forth herein shall preclude or limit any Bankruptcy Borrower or Bankruptcy Trustee from seeking relief from the automatic stay under section 362(a) of the Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

*Foreclosures By The Debtors On Senior Loans*

16.      The stay imposed by section 362(a) of the Bankruptcy Code applicable to pending and future foreclosure actions initiated by the Debtors in cases where they act as

ny-1046923

servicer for the Senior Loan and also own (or for which the applicable public land records

otherwise reflect that the Debtors hold an interest) the Junior Loan with respect to the underlying

property (collectively, the "Junior Foreclosure Actions") is hereby modified pursuant to the

following terms and conditions:

      (a)      except as otherwise set forth herein, the Debtors shall be entitled to

assert and prosecute Junior Foreclosure Actions, whether in a Judicial State or a Non-

Judicial State;

      (b)      the Debtors shall be entitled to take such actions as are necessary to

extinguish the lien with respect to a Junior Loan or to otherwise ensure clear and

marketable title with respect to the property underlying a Senior Loan in connection with

any sale or other disposition of such property;

      (c)      the Debtors shall be entitled to seek all appropriate relief with

respect to a Senior Loan in connection with the bankruptcy cases of a Bankruptcy

Borrower without further order of the Court; and

      (d)      the Debtors shall provide monthly reports to the Committee and the

U.S. Trustee, which reports shall be in a form agreed to by the Debtors and the Committee,

and such additional information as shall be reasonably requested by the Committee, in

each case, concerning Junior Foreclosure Actions.

D.     *Actions Involving Amount, Validity Or Priority Of Liens*

      17.      The stay imposed by section 362(a) of the Bankruptcy Code applicable to

actions involving the amount, validity, and/or priority of liens commenced by third parties

purporting to have a lien interest or other claim ("Third Party Claimants") with respect to

12

ny-1046923

properties that are subject to mortgages owned or serviced by the Debtors ("Title Disputes") is

hereby modified pursuant to the following terms and conditions:

(a)     except as otherwise set forth herein, a Third Party Claimant shall be

entitled to assert and prosecute direct claims and counter-claims relating exclusively to the

property that is the subject of the loan owned or serviced by a Debtor in connection with

any Title Dispute, and to prosecute appeals with respect to any such direct claims or

counter-claims;

(b)     absent further order of the Court, the automatic stay shall remain in

full force and effect with respect to all pending and future Third Party Claimant direct

claims and counter-claims: (i) for monetary relief of any kind and of any nature against the

Debtors; (ii) for relief that is not necessary for the resolution of the Title Dispute; or

(iii) asserted in the form of a class action or collective action;

(c)     absent further order of the Court, the stay shall remain in full force

and effect with respect to any party seeking to intervene to assert related claims against the

Debtors or any class action or collective action brought by any Third Party Claimant on

behalf of any other Third Party Claimant or class of Third Party Claimants;

(d)     under no circumstances shall a Third Party Claimant be entitled to

enforce against, recoup, setoff or collect from the Debtors any judgment or award related

to any direct claim or counter-claim for which the automatic stay has been lifted by the

terms of the Order;

(e)     the Debtors shall be entitled to take such actions as are necessary to

clear title with respect to property that is subject to a Title Dispute or to otherwise ensure

13

clear and marketable title with respect to such property in connection with any sale,

foreclosure or other disposition of such property;

       (f)    the Debtors shall retain the right, upon appropriate motion and

notice to any affected Third Party Claimant, to seek to impose any provision of section

362(a) of the Bankruptcy Code modified by the Order; and

       (g)    nothing set forth herein shall preclude or limit any Third Party

Claimant from seeking relief from the automatic stay under section 362(a) of the

Bankruptcy Code on appropriate motion and notice to the Debtors and parties in interest.

Payment of Securitization Trustee Fees and Expenses

       18.    The Debtors shall continue to perform all of their respective servicing

duties and servicing related duties, including, but not limited to, their duties as master servicer,

under all the governing agreements (including, without limitation, pooling and servicing

agreements, servicing agreements, or any other agreements concerning or relating to the Debtors'

obligations to reimburse and/or indemnify for reasonable fees, costs, expenses, liabilities, and/or

losses) (collectively, the "Agreements") relating to Debtor-sponsored securitization transactions

and non-Debtor sponsored securitization transactions to which any of The Bank of New York

Mellon Trust Company, N.A., Wells Fargo Bank, N.A., Deutsche Bank Trust Company

Americas, Deutsche Bank National Trust Company, or U.S. Bank National Association, or any

affiliate of such entities acts as trustee for which any Debtor performs servicing duties, in each of

their respective capacities as trustee (collectively, the "Trustees") and one or more of the Debtors

is a party, including but not limited to, making all principal, interest or other servicing advances

(including property protection advances) and reimbursing, indemnifying, defending and holding

harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost

14

or expense (including fees and disbursements of counsel or agents) incurred by any of the

Trustees in the performance of their duties or their administration of the trusts or other agencies

under the Agreements to the extent required by the Agreements. For the avoidance of doubt, the

Debtors shall pay the reasonable, actual out-of-pocket costs and expenses of the Trustees in

connection with reviewing and analyzing the request by the Debtors to approve the MBS

Settlement Agreement, and in connection with reviewing and analyzing amendments to the

Agreements as necessary or appropriate in connection with any proposed Chapter 11 plan, the

MBS Settlement Agreement or the Platform Sale. Notwithstanding the foregoing, nothing in this

paragraph 18 shall require any Debtor (i) to repurchase any mortgage loans on the basis of

alleged breaches of representations, warranties or other requirements of the Agreements, or make

any make-whole payments with respect to any mortgage loans pursuant to the Agreements; or

(ii) to enforce, as against any other Debtor entity or any non-Debtor affiliate, any provision of the

Agreements under which such other Debtor entity or non-Debtor affiliate are required to

repurchase any mortgage loans on the basis of alleged breaches of representations, warranties or

other requirements of the Agreements, or make any make-whole payments with respect to any

mortgage loans pursuant to the Agreements; and nothing in this paragraph 18 shall be deemed to

impose liability on any Debtor with respect to such alleged breaches or make-whole payment

requirements.

19. The Trustees shall submit invoices to (a) counsel to the Debtors,

(b) counsel to the Committee, and (c) the U.S. Trustee, and all such invoices shall include (i) an

itemization of all professional fees by task with a detailed description of the work performed in

connection with such task, (ii) a description of related expenses, and (iii) a description of any

indemnity claims. Thereafter, within thirty (30) days of presentment of such invoices, if no

ny-1046923

written objections to the reasonableness of the fees and expenses charged in any such invoice (or

portion thereof) is made by the Debtors, the Committee, or the U.S. Trustee, the Debtors are

authorized and directed to pay all reasonable fees, costs and expenses and all indemnity claims

referred to in paragraph 18 (including without limitation, attorney, financial advisor, consultant

and expert fees and costs) incurred postpetition by any of the Trustees relating to the

performance of each of the Trustees' duties or the administration of the trusts or other agencies

under the Agreements (the "Trustee Expenses") that are not subject to an objection by the

Debtors, the Committee, or the U.S. Trustee without further order from the Court. Any objection

to the payment of the Trustee Expenses shall be made only on the basis of "reasonableness," and

shall specify in writing the amount of the contested fees and expenses and a detailed basis for

such objection. To the extent an objection only contests a portion of an invoice, the undisputed

portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any

portion thereof) is not otherwise resolved between the Debtors, the Committee, or the U.S.

Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a

determination as to the reasonableness of the disputed amounts. This Court shall resolve any

dispute as to the reasonableness of any fees and expenses.

20.     To the extent either the Committee, or the RMBS Trustees determine that

the Trustee Expenses were improperly or mistakenly allocated to an RMBS trust or to the

Debtors' estates, the Committee and the RMBS Trustees reserve the right to seek to correct the

allocation of the Trustee Expenses as between the RMBS trusts or the Debtors' estates in

accordance with the applicable Agreement, and such adjustment shall be the Committee's and

RMBS Trustees' sole remedy arising from a misallocation. All Trustee Expenses for which

(a) no objection under paragraph 19 has been interposed, or (b) where such an objection has been

16

ny-1046923

interposed and the amount of Trustee Expenses determined by the Court to be reasonable, shall

be entitled to administrative expense priority in the Debtors' Chapter 11 cases notwithstanding

the entry of an order authorizing the assumption and assignment or rejection of any Agreement.

However, the Debtors will not be responsible for any fees, costs and expenses incurred with

respect to any Agreement after the entry of an order in the Debtors' Chapter 11 cases authorizing

the rejection of such Agreement.

      21.    If any or all of the provisions of this Order are hereafter reversed,

modified, limited, vacated or stayed, such reversal, stay, modification or vacatur shall not affect

the validity, priority or enforceability of any Trustee Expenses incurred prior to the actual receipt

of written notice by the Trustees of the effective date of such reversal, stay, modification or

vacatur (the "Notice Date"). Notwithstanding any such reversal, stay, modification or vacatur,

the payment of any Trustee Expenses incurred prior to the Notice Date and reimbursed prior to

or after the Notice Date by the Debtors shall be governed in all respects by the original

provisions of this Order, and the Trustees shall be entitled to all of the rights, remedies,

privileges and benefits granted in this Order with respect to payment of Trustee Expenses.

      22.    Notwithstanding the Debtors' obligations set forth in paragraphs 18 and

19, nothing in this Order shall be deemed to limit, extinguish, or prejudice the Debtors' rights in

any way to assume and assign or reject any Agreement in accordance with Bankruptcy Code

section 365.

Other Relief

      23.    Any disputes regarding the extent, application and/or effect of the

automatic stay under this Order shall be heard and determined in the Debtors' jointly

administered bankruptcy cases pending in the United States Bankruptcy Court for the Southern

ny-1046923

District of New York, Case No. 12-12020 in accordance with the Case Management Order
entered in the Debtors' cases [Docket No. 141] and such other and further orders as may be
entered by the Court.

24.     The Debtors are authorized and empowered to take all actions and execute
such documents as may be necessary or appropriate to carry out the relief granted herein.

25.     Nothing herein shall be deemed to limit the rights of the Debtors to
operate their business in the ordinary course, and no subsequent order shall be required to
confirm such rights.

26.     Notwithstanding the relief granted herein and any actions taken hereunder,
nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any
contract or agreement under Bankruptcy Code section 365 or the waiver by the Debtors or their
non-Debtor affiliates of any of their rights pursuant to any agreement by operation of law or
otherwise.

27.     Notwithstanding anything to the contrary in this Order, any action to be
taken pursuant to the relief authorized in this Order is subject to the terms of any cash collateral
order or debtor in possession financing order entered in these chapter 11 proceedings.  All
amounts authorized to be paid pursuant to this Order are subject to the limitations and
restrictions imposed by the Approved DIP Budget (as defined in the DIP Credit Agreement).  To
the extent that there is any inconsistency between the terms of this Order and the terms of any
order relating to postpetition financing or cash collateral, the terms of the orders relating to
postpetition financing or cash collateral shall govern.

28.     Notwithstanding anything herein to the contrary, this Order shall not
modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board

18

ny-1046923

of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

29.    Nothing in this Order shall discharge, release, or otherwise preclude any

setoff or recoupment right of the United States of America, its agencies, departments, or agents.

30.    The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

31.    Notwithstanding the possible applicability of Bankruptcy Rules

2002(a)(3), 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately

effective and enforceable upon its entry.

32.    This Court shall retain jurisdiction with respect to all matters relating to

the interpretation or implementation of this Order.


Dated:        July 13, 2012
              New York, New York


                              _____/s/Martin Glenn_____
                                   MARTIN GLENN
                              United States Bankruptcy Judge


19

# **EXHIBIT 4M**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.: 08-74998-CA [59]

GMAC MORTGAGE, LLC,
      **Plaintiff,**

vs.

MARCIA NAVARRO, et al,
      **Defendant(s).**

------------------------------------------------------------------/

## NOTICE OF HEARING
### "FORECLOSURE CALENDAR"
**PLEASE TAKE NOTICE** that the above styled action will be heard as follows:

**MOTION:**     VOLUNTARY ORDER STAYING ALL CLAIMS, AND/OR COLLECTION EFFORTS
ON ATTORNEYS FEES JUDGMENT UNTIL FURTHER ORDER OF THIS COURT BUT
ALLOWING CASE TO PROCEED AGAINST ALBERTELLI LAW AND/OR ANY
ATTORNEYS HAVING PROSECUTED THIS CASE AGAINST DEFENDANT,
MARCIA NAVARRO

**JUDGE:**      THE HONORABLE JACQUELINE HOGAN SCOLA

**LOCATION:**     DADE COUNTY COURTHOUSE
73 WEST FLAGLER STREET, ROOM 414
MIAMI, FLORIDA 33130

**DATE:**       JUNE 13, 2013

**TIME:**       9:30 A.M.

      If applicable, I certify that an effort to settle this matter has been made, or will,
upon the Plaintiff's request, be made.

      **THE UNDERSIGNED HEREBY CERTIFIES** that a true and correct copy of the foregoing
was sent via email this 7TH day of _May_, 2013 to: Jason Tarokh, Esquire, Albertelli
Law, email: serve@albertellilaw.com.

**LAW OFFICES OF LA LEY CON JOHN H. RUIZ, P.A.**
4182 S.W. 74th Court
Miami, Florida 33155
T+ (305)-614-2222 \ (305)-614-5476

By: _____
   □ Karen V. Barnet-Backer, Esq., FL Bar No.54482
   □ Rebecca Rubin del Rio, Esq., FL Bar No.57013
   □ Rosy A. Aponte, Esq., FL Bar No.54977
   □ Stacy Robin Marczak, Esq., FL Bar No.44565
   □ Steve Louis-Charles, Esq., FL Bar No.98666
   □ Vanessa Maria Cabrera, Esq., FL Bar No. 78098
   □ Jennifer Espinet, Esq., FL Bar No.97890
Service email: serve@lawofficeslaley.com