UNITED STATES BANKCRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Residential Capital, LLC, et al;<br>Debtors<br><br>Erlinda Abibas Aniel<br>　　　Plaintiff/Creditor, Pro se<br><br>vs.<br><br>GMAC Mortgage, LLC; Executive<br>Trustee Services, LLC et al;<br>Debtors/Defendants | Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>Jointly Administered<br><br>Assigned to:　Honorable Martin Glenn<br>　　　　　　　United States Bankruptcy Judge |

## CONTEST OF TRANSFER OF PLAINTIFF'S MORTGAGE TO OCWEN LOAN SERVICING

　　　Plaintiff/Creditor, Erlinda Abibas Aniel, acting as pro se, respectfully contests to the transfer of Plaintiff's mortgage from GMAC Mortgage LLC, the Debtor/Defendant to Ocwen effective February 16, 2013.

Plaintiff believes that the transfer of loan servicing of Plaintiff's mortgage loan is in error for the following reasons:

1. Plaintiff is a party of interest in Debtor's bankruptcy proceedings as a creditor who filed a timely proof of claim on August 20, 2012 in this court. See claim # 416 and 417.
2. Plaintiff based their claim on a pending case in United States District Court in Northern California, case No. 12-04201, on August 9, 2012, titled Aniel vs. GMAC Mortgage, LLC et al.

RECEIVED
MAY 31 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

1

3. Plaintiff denied owing any debts under their mortgage loan serviced by GMAC Mortgage, LLC.

4. GMAC Mortgage, LLC also claims to be the beneficiary under the Deed of Trust and as well as misrepresenting themselves as Plaintiff's creditor.

5. The debtor discharged the debt of $2,051,000.00 on Plaintiff's credit report after she was discharged of her debts on her converted Chapter 11 to Chapter 7 bankruptcy case on or before February 2011.

6. Defendants failed to object to the discharge within 60 days after Plaintiff was discharged of her debts in Chapter 7.

7. After the discharge, Defendant fabricated an assignment of deed recorded on or around February 01, 2011, at the San Mateo Recorder's office in order to foreclose under their name. Defendant recorded a fabricated assignment of deed assigning the beneficial interest from HSBC to GMAC after reporting the discharged amount to the credit bureau. Plaintiff believes that the assignment is VOID and has no effect because there was no offer, acceptance and consideration from HSBC to GMAC.

8. Plaintiff loan was securitized under the trust of DALT 2007-OA5 on which HSBC claimed to be the Trustee of the Trust based on Defendant's fraudulent representation.

9. However, Plaintiff called HSBC New York headquarters to get more information about Plaintiff's loan; unfortunately, it seems that HSBC is clueless because neither the property address, Plaintiff's name nor the loan number came up on any of their records.

10. Its employees, who signed the documents without any personal knowledge of its content, fabricated these assignments. They are commonly called ROBOSIGNERS. These robosigners also notarized the documents.

11. GMAC is well known for use of robosigners, led by Jeffrey Stephan, who admitted to signing thousands of documents without personal knowledge of its content.

12. Plaintiff believes that when the debt was discharged in 2011, GMAC fabricated another assignment of deed from HSBC to GMAC, as the beneficiary of

Plaintiff's mortgage loan, claiming to have interest on the deed at the same time as servicing the loan. GMAC admitted that HSBC currently holds the note, which is physically located with Deutsche Bank, the custodian of HSBC. Therefore, even if we believe Defendant's claim that this transfer is correct, it is crystal clear that there was a separation between the deed and the note. Defendant response to their qualified written request (QWR) dated April 11, 2013 stated:

> "On August 24, 2009, the Deed of Trust was assigned to HSBC Bank, USA, National Association as Trustee for DALT 2007-OA5, subsequently, the note was endorsed in blank by MortgageIT, Inc. HSBC now hold the note, which is physically located with Deutsche Bank, the custodian for HSBC. The Deed of Trust was subsequently assigned from HSBC to GMACM on February 1, 2011."

Based on the QWR response, Defendant admitted that the note still belongs to HSBC and holds the note, while on the hand Defendant GMACM holds the beneficial interest of the deed of trust. Therefore, due to the separation of the two instruments, the debt is void because there is no obligation to pay and GMAC will never suffer a default because the Defendant's deed of trust is only collateral to a debt in which the note was separated from the deed. The note becomes unsecured because there is no collateral attached to it.

13. Defendant knowingly and willfully submitted documents through their subsidiaries Executive Trustee Services based in Burbank, California, who is also a debtor, to record a substitution of trustee in order to execute that Defendant was in fact the beneficiary of the deed of trust. Defendants later admitted to the Bankruptcy court that Defendants put their name as a beneficiary on the deed in order to foreclose the property and that HSBC is still the secured creditor.

14. Plaintiff, through her research, learned that Defendant is still in cohort with its subsidiaries and their attorneys to quickly foreclose properties.

15. Defendant continues to violate the Consent Order, dated April 13, 2011, imposed by the Board of Governor of Federal Reserve and FDIC.

16. Plaintiff believes that Defendant willfully split the deed of trust and the note, which violates the Pooling and Servicing Agreement (PSA).

17. Plaintiff believes that Defendants willfully did not follow the PSA guidelines, which required that Plaintiff's loan be transferred into the pool of the securitized trust within 90 days before the expiration of the pool, which was July 31, 2007.

18. Plaintiff believes that the note was transferred to the Trust on around October 2008 under DALT Securitized Trust 2007-OA5. This was done after Defendant promised to modify Plaintiff's loan and advised Plaintiff not to make any mortgage payment for 90 days in order to create a hardship for the Plaintiff in order to be approve for a loan modification.

19. Plaintiff was under the impression that once the hardship was established, Plaintiff's loan would be modified based on her reliance of Defendant's promise.

20. Plaintiff's reliance to Defendant's promise led her to seek relief in the bankruptcy court because Defendant denied the loan modification request. Instead, GMAC increased all the fees associated with the loan to the point where Plaintiff had no idea of the amount necessary to cure the default claim because of Defendant's failure to answer Plaintiff's debt validation letter request, which was sent both to GMAC and Executive Trustee Service, who never acknowledged the request.

21. Plaintiff believes that during the Defendant's promises of a loan modification to the Plaintiff, which Plaintiff relied on, Defendant intentionally and willfully knew that Plaintiff's loan was never transferred to the pool until after Plaintiff was told to default.

22. Plaintiff believes that Executive Trustee Services (ETS) took over the collection of the debt and recorded a notice of default on or around September 8, 2008. Even though, at the same time an agent of the beneficiary, Mortgage Electronic Registration Systems, Inc. (MERS), was the beneficiary, as the nominee for Lender, MortgageIT, under deed, and MortgageIT a lender.

23. Plaintiff believes that Defendant ETS fabricated a recorded substitution of trustee, self-appointing themselves as a substituted trustee from MERS to ETS on September 29, 2008. The document was executed and acknowledged by employees of ETS.

24. Plaintiff believes that Defendant GMAC hired their subsidiary ETS to collect the debt and at the same time have ETS act as the substituted trustee. Thus ETS wore

two different hats, one as a debt collector agency and the other as a substituted trustee of the deed. ETS recorded a notice of trustee sale on January 2, 2009, while disclaiming any liabilities as a trustee for any error committed and at the same time, acting as a debt collector of Plaintiff's debts.

25. Plaintiff filed bankruptcy on February 25, 2009 because of the Defendant's aggressive collection tactics on a defaulted debt, which Defendant encouraged Plaintiffs to do so in order to approved for a loan modification on which the Defendants have no intention to do so.

26. Plaintiff had been current on payments since 2005. It was only until Plaintiff asked for a loan modification from the Defendant and Defendant told Plaintiff to default in order to create a hardship in order for a loan modification to be approved, did Plaintiff stop making payments.

27. Defendant had no intention to modify Plaintiff's loan because Defendant knew that a default by the Plaintiff could earn GMAC more money by collecting on Defendant's insurance.

28. Defendant believes that the transfer of the servicing rights to Ocwen is improper because according to Asset Purchased Agreement (APA), HSBC as Trustee for DALT 2007-OA5, was not listed as a illegible servicing Trust that purchased by Ocwen. Therefore, Defendant's claim of transfer of Plaintiff's loan is fraudulent because no transfer ever took place.

29. Plaintiff believes that Defendant created different loan numbers to confuse the Plaintiff in learning who are their real lender or investors of their mortgage. For example, Plaintiff's original loan number on their original documents was 40761137 and MIN 100112065738048632. Defendant GMAC created their own loan number without Plaintiff's permission or notice, with the account number of 0713288492 in order to collect Plaintiff's monthly mortgage payment. When Defendant transfer the note to DALT 2007-OA5, Defendant created another loan number 0115634254 in which Wells Fargo was the custodian and the Master servicer, and HSBC was the Trustee for said Trust. However, when Plaintiff contacted Wells Fargo and their attorneys, it was confirmed that HSBC is the Trustee of the Trust and Wells Fargo was the master servicer.

30. When Plaintiff called HSBC for the second time, it was confirmed that HSBC is in fact a Trustee for securitized mortgage bond bought by the investors called certificate holders.

31. Plaintiff believes that GMAC made ten times the profit for Plaintiff's loan by advising the Plaintiff to default and then collect money from monolines insurers because the loan fails.

32. Plaintiff believes that the Plaintiff deed of trust was sold separately by GMACM while servicing Plaintiffs loan.

33. Plaintiff believes that Plaintiff's note was sold separately to RMBS trust DALT 2007-OA5 after the loan was in default.

34. Plaintiff believes that HSBC has also a stake on the trust as an insider investor while at the same time a trustee of the trust.

35. Plaintiff believes that Well Fargo Bank, as master servicer, failed their duty to monitor the Defendant's fraudulent conduct.

36. Plaintiff believes that Defendant still continues to mislead homeowners about their standing to foreclose on the property because Defendant has no authority to foreclose.

37. Plaintiff believes that the debtor's hiring Severson & Werson, a law firm in California, would only add future litigation against the Defendants because this law firm committed misconducts in the court by filing false pleading, filing fraudulent documents, filing and signing proof of claim under penalty of perjury without personal knowledge of the actual debt, and claiming to represent Ocwen and GMAC at the same time.

38. Plaintiff believes that is unfair to continue to hire this law firm with millions of dollars in fees paid by debtor's estates, while the secured and unsecured creditors amount of settlement continues to be diminished because of their professional misconduct.

39. Plaintiff believes that Defendant transferred of Plaintiff loan servicing is a fraudulent transfer because HSBC as Trustee for DALT 2007-OA5 is not part of platform servicing sale rights sold to Ocwen.

40. Plaintiff believes that Ocwen does not have an office in Waterloo, IA for loan servicing. Plaintiff believes that the office of Ocwen Loan Servicing, LLC is in Florida.
41. Plaintiff believes that Defendant continue to defraud, threaten, and harass the Plaintiff to foreclose the property in violation of the Consent Order and used their lawyers from Severson & Werson to intimidate the Plaintiff.
42. Plaintiff denied any debt owed to Defendant.
43. Plaintiff believes that continuous misconduct by the Defendant will result to thousands of litigation from the homeowners in the near future.
44. Plaintiff request the Court to void Plaintiff's deed of trust and order Defendant to record a deed of full reconveyance on Plaintiff's property.
45. Plaintiff believes that Defendant is also collecting on Plaintiff's second mortgage loan when it was already reconveyed by JP Morgan last year in which Defendant also claims ownership.
46. Plaintiff believes that Defendant continues to bill the Plaintiff every 2 months printing the name of Ocwen Loan Servicing, LLC, with the address located in Waterloo, IA.
47. Defendants continued misrepresenting Plaintiff and attempting to collect a debt, which violates the FDCPA because Plaintiff denies any money owed to the Defendant.
48. Defendant's conduct and behavior violates state and federal laws.
49. Defendant forcibly placed insurance on the property while the Plaintiff already has its own home hazard insurance since the inception of her mortgage loan.
50. Defendant paid real estate taxes on in violation of Plaintiff's loan agreement.
51. Defendant abuses of collecting a debt that has been discharged by the bankruptcy court. Defendant continued to collect through fraudulent means like forged documents in order to make it appear to the Plaintiff that Defendant has standing to foreclose as Plaintiff's creditor, which resulted in thousands of litigation cases against the Debtors and its subsidiaries.
52. Defendant will not stop doing illegal transfers in order to illegally foreclose. It is unjust for debtor's creditors to continue to allow the Defendant to continue their

misconduct because it will affect the debtor's estates for distribution to all claims necessary to settle with creditors.

WHEREFORE, Plaintiff prays this to:

1. Clarify whether the HSBC Trust was part of the assets that were transferred to Ocwen.
2. The Court declares the Deed of Trust to be Null and Void.
3. United States Trustee of the Bankruptcy Court should conduct an investigation about the continuing misconduct by the Debtors and its subsidiaries.

Respectful submitted,

_____  5/29/13
Erlinda Abibas Aniel, pro se
75 Tobin Clark Dr.
Hillsborough, CA 94010