**Hearing Date: June 12, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: June 5, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------
|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |
------------------------------------------------------------------

**NOTICE OF DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER**
**UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO**
**SATISFY CERTAIN SECURED CLAIMS**

     **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Amended Motion for Entry of an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Satisfy Certain Secured Claims* (the "Motion").

     **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take place on **June 12, 2013 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **June 5, 2013 at 4:00**

**p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison & Foerster

LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Esq.,

Todd M. Goren, Esq. and Samantha Martin, Esq.); (b) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New

York, NY 10004 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S.

Masumoto); (c) the Office of the United States Attorney General, U.S. Department of

Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US

Attorney General, Eric H. Holder, Jr.); (d)  Office of the New York State Attorney

General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N.

Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f)

counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York,

NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee

of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal);

(h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd

Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

(i) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand

Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by

overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-

5016); and (k) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S.

Canellos, Regional Director).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: June 3, 2013               Respectfully submitted,
      New York, New York

                                 /s/ Gary S. Lee
                                 Gary S. Lee
                                 Todd M. Goren
                                 Samantha Martin
                                 MORRISON & FOERSTER LLP
                                 1290 Avenue of the Americas
                                 New York, New York 10104
                                 Telephone: (212) 468-8000
                                 Facsimile: (212) 468-7900

                                 *Counsel to the Debtors and*
                                 *Debtors in Possession*

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:   (212) 468-7900
Gary S. Lee
Todd M. Goren
Samantha Martin

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------
|  |  |
| --- | --- |
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Joint Administration |
--------------------------------------------------------

**DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO
<u>SATISFY CERTAIN SECURED CLAIMS</u>**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move this Court (the "Motion") pursuant to sections 105 and 363 of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (substantially in the form annexed hereto as Exhibit 1, the "Order")[2] authorizing the Debtors to (i) fully satisfy the outstanding claims of Ally Financial, Inc. ("AFI") under the AFI LOC (as defined below) in the amount of $380,000,000, plus accrued and unpaid interest (the "AFI LOC Claim"), (ii) fully satisfy the outstanding claims of AFI under the AFI Senior Secured Credit Facility (as defined below) in the amount of $747,127,553.39, plus accrued and unpaid interest (the "AFI Revolver Claim," and together with the AFI LOC Claim, the "AFI Claims"),[3] and (iii) partially satisfy the outstanding secured claims (the "JSN Secured Claims") of the holders (the "Junior Secured Noteholders") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor Residential Capital LLC (the "Junior Secured Notes") in the amount of $800 million. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Marc D. Puntus filed with the Court concurrently herewith (the "Puntus Declaration"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**PRELIMINARY STATEMENT**

1.      The Debtors originally filed a motion to partially satisfy the outstanding JSN Secured Claims only. However, the Debtors, in consultation with the Committee and their

---

[1]  The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Whitlinger Affidavit (defined below).

[2]  Attached to the Original Motion (defined below) was a proposed order approving the relief requested in the Original Motion (the "Original Order"). An electronic comparison of the Order to the Original Order is attached hereto as Exhibit 2.

[3]  The AFI Claims amount is based upon an assumption that these payments will be made on June 13, 2013. These amounts are subject to change depending on the exact payment date.

major creditor constituents, recently negotiated a plan support agreement (the "PSA") that was

filed with the Court on May 23, 2013, which provides that the Parties thereto will support a

partial paydown of the Junior Secured Notes provided that the Debtors also repay the AFI Senior

Secured Credit Facility, subject to a reservation of rights in the event the plan support agreement

is terminated or the plan is not approved.  The parties believe that the repayment of the AFI

Claims will benefit the Debtors' estates by eliminating the interest expense associated with the

AFI LOC and the AFI Senior Secured Credit Facility, which the Debtors are paying on a current

basis, thereby enhancing distributions to unsecured creditors.  Accordingly, the Debtors hereby

amend the Original Motion to seek authority for the repayment of AFI, in addition to the partial

payment to the Junior Secured Noteholders contemplated in the Original Motion.

2.      By this amended Motion, the Debtors seek authority to fully satisfy the

AFI Claims in the aggregate amount of $1,127,127,553.39, plus accrued and unpaid interest, and

partially satisfy the principal portion of the JSN Secured Claims in the amount of $800 million

(each a "Proposed Payment," and together, the "Proposed Payments").

3.      In evaluating whether to make the Proposed Payments, the Debtors have

considered, among other things, three key facts.  First, in connection with the plan negotiation

process, after months of hard-fought, arms-length negotiations facilitated by the plan mediator,

the Debtors and various parties in interest settled on the terms of the PSA, which requires the

Debtors to repay AFI in full under the Plan for all amounts owed under the AFI LOC and the

AFI Senior Secured Credit Facility and which also requires a repayment of the AFI Senior

Secured Credit Facility as a condition to repaying the Junior Secured Notes.  As a result of the

PSA, it also appears that nearly all of the Debtors' major creditor constituencies support the

relief requested in the Motion.  Second, the Debtors currently are not receiving any meaningful

return on the approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) received by the Debtors from the sale of their business platform and legacy loan portfolio.  Third, AFI is oversecured on each of the AFI Senior Secured Credit Facility and the AFI LOC, and as a result, AFI is entitled to postpetition interest for each of these facilities.

4.     The Junior Secured Noteholders have represented to the Debtors and the Court that they are oversecured and therefore entitled to the payment of postpetition interest on their prepetition secured debt.  While the Junior Secured Noteholders appear to be alone in this belief, they have asserted numerous arguments as to why additional collateral value exists.  The Debtors believe these arguments are meritless and that the Junior Secured Noteholders are significantly undersecured.  Indeed, the Debtors and the Official Committee of Unsecured Creditors in these cases (the "Committee") each have filed complaints contesting the validity of certain liens and claims asserted by the Junior Secured Noteholders (collectively, the "Adversary Proceedings").  Nonetheless, there is a risk that the Junior Secured Noteholders may prevail in the Adversary Proceedings regarding the extent of their secured claim.  In the event that the Junior Secured Noteholders demonstrate that that they are oversecured and entitled to postpetition interest, such interest will have accrued at a rate of up to 10.625%[4] since the Petition Date.

5.     In the event that the Junior Secured Noteholders are oversecured, the Debtors currently would be incurring an estimated liability of approximately $20 million per

---

[4] The Junior Secured Noteholders have asserted that they are entitled to postpetition interest at the contractual default rate of 10.625%—the non-default rate is 9.625%.  The Debtors believe that the proper rate of interest to be charged, in the event the Junior Secured Noteholders are entitled to post-petition interest, is the non-default rate and reserve all of their rights on the issue of the proper interest rate in the event it is determined that the Junior Secured Noteholders are entitled to receive postpetition interest.

month in postpetition interest on the JSN Secured Claims.  Each dollar of interest that accrues on

the JSN Secured Claims is one less dollar available for distribution to the Debtors' unsecured

creditors.  Thus, this potential postpetition interest obligation could erode the recoveries to

unsecured creditors.

6.       The Debtors are mindful that, to the extent the plan support agreement is

not approved or if the milestones set forth in the plan support agreement are not met, there is

potential for litigation regarding the validity of the AFI Claims.  AFI has agreed that there is no

prejudice to the estates' potential claims against AFI in the event the PSA is terminated, and, to

the extent the AFI Claims are challenged, the Proposed Payments will be without prejudice to the

rights of any party to seek to recharacterize or equitably subordinate Ally's secured claims as if

the paydown had not been made, and for the Court to fashion any remedy in connection

therewith.    In addition, making the Proposed Payments to both AFI and the Junior Secured

Noteholders pursuant to this amended Motion obviates the potential issues that would otherwise

arise under the Intercreditor Agreement (as defined below) if the Debtors were to make a

payment only to the Junior Secured Noteholders—the junior lenders—as initially contemplated

in the Original Motion.

7.       The Debtors also are mindful of the fact that there exists pending litigation

regarding the validity of certain of the Junior Secured Noteholders' liens and claims.  However,

even if the Debtors and the Committee are successful on every count asserted in the Adversary

Proceedings, the parties agree that it is likely that the Junior Secured Noteholders' claims are

secured by at least $800 million of collateral (after taking into account the satisfaction of any

senior security interests in the same collateral).  Thus, the Debtors do not believe that the

Proposed Payments will in any way prejudice unsecured creditor recoveries.  In addition, the

4

Order provides that the Proposed Payments will in no way prejudice the Adversary Proceedings.[5]

The Debtors consulted with the Committee prior to filing this Motion, and the Committee

supports the relief requested by the Debtors in this Motion.

        8.     Further, because the Junior Secured Noteholders believe that they are

entitled to postpetition interest, their asserted secured claim continues to increase, even as the

Debtors and other case constituents believe that the Junior Secured Notes are undersecured.  This

dynamic makes reaching an acceptable settlement more difficult as time passes.  Making the

Proposed Payment reduces the difference between the parties' respective positions as to the

value of the Junior Secured Noteholders' claims and will therefore enhance settlement prospects.

        9.     The Debtors believe that, after making the Proposed Payments to AFI and

the Junior Secured Noteholders, the remaining JSN Cash Collateral and the other non-cash

collateral securing the Junior Secured Notes will be sufficient to pay all receipts, expenses, and

interest allocable to such collateral pursuant to the Original Cash Collateral Order[6] or Non-

Consensual Cash Collateral Order,[7] as applicable.

        10.    For these reasons, the Debtors, in their business judgment, believe that it is

in the best interests of their estates and all stakeholders to make the Proposed Payments on

account of the AFI Claims and the JSN Secured Claims prior to either the resolution of the

Adversary Proceedings or the effective date of a plan of reorganization.

---

[5] The Order further provides that the Proposed Payment to the Junior Secured Noteholders shall not be subject to disgorgement or any similar remedy by the Debtors and the Committee.

[6] The "Original Cash Collateral Order" means the *Final Order Under Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, and 9014 (I) Authorizing the Debtors to Obtain Postpetition Financing on a Secured, Superpriority Basis, (II) Authorizing the Use of Cash Collateral, and (III) Granting Adequate Protection to Adequate Protection Parties* [Docket No. 491].

[7] The "Non-Consensual Cash Collateral Order" means an order of this Court approving the Cash Collateral Motion (as defined below).

## JURISDICTION

11.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and

this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates

for the relief requested herein are Bankruptcy Code sections 105 and 363.

## BACKGROUND

### I.    THE CHAPTER 11 CASES

12.    On May 14, 2012 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors

are managing and operating their businesses as debtors in possession pursuant to Bankruptcy

Code sections 1107(a) and 1108.  No trustee has been appointed in these Chapter 11 cases.[8]

13.    On May 16, 2012, the Office of the United States Trustee (the "U.S.

Trustee") appointed the nine-member Committee.

14.    On June 20, 2012, the Court directed that an examiner be appointed

[Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner

(the "Examiner") [Docket No. 674].

15.    On June 25, 2012, the Court entered the Original Cash Collateral Order

authorizing the Debtors' use of the cash collateral of AFI and the Junior Secured Noteholders in

accordance with an approved budget.

---

[8]   The Debtors are a leading residential real estate finance company indirectly owned by Ally Financial Inc., which
is not a Debtor.  The Debtors and their non-debtor affiliates operate the fifth largest mortgage loan servicing
business and the tenth largest residential mortgage loan origination business in the United States.  A more detailed
description of the Debtors, including their business operations, their capital and debt structure, and the events
leading to the filing of these bankruptcy cases, is set forth in the Whitlinger Affidavit.

16.    On December 26, 2012, the Bankruptcy Court granted standing and

authority for the Committee to commence and prosecute certain claims on behalf of the Debtors'

estates, including, among others, claims related to the liens granted by the Debtors to the Junior

Secured Noteholders. See *Order Authorizing the Official Committee of Unsecured Creditors to*

*Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates* [Docket No. 2518].

17.    On February 28, 2013, the Committee filed the *Adversary Complaint for*

*Declaratory Judgment, Avoidance of Liens, and Disallowance of Claims* [Docket No. 3069],

against UMB Bank, N.A. ("UMB Bank"), as successor indenture trustee under the indenture for

the Junior Secured Notes, and Wells Fargo Bank, N.A. ("Wells Fargo"), as third priority

collateral agent and collateral control agent under the pledge and security agreement for the

Junior Secured Notes.

18.    On April 8, 2013, the Debtors filed the *Debtors' Motion for Entry of an*

*Order to Permit the Debtors to Continue Using Cash Collateral* [Docket No. 3374] (the "Cash

Collateral Motion"), which currently is scheduled to be heard on May 14, 2013.

19.    On May 3, 2013, the Debtors filed a *Complaint to Determine the Extent of*

*Liens and for Declaratory Judgment* [Docket No. 3592] against UMB Bank, Wells Fargo, and

the Ad Hoc Committee of Junior Secured Noteholders.

20.    On May 7, 2013, the Debtors filed the *Motion for Entry of an Order*

*Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Partially Satisfy Certain Secured*

*Claims* [Docket No. 3626] (the "Original Motion").

21.    On May 23, 2013, the Debtors filed the *Motion for an Order Under*

*Bankruptcy Code Sections 105(a) and 363 (b) Authorizing the Debtors to Enter Into and Perform*

*Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and*

*Certain Consenting Claimants* [Docket No. 3814] (the "PSA Motion"), pursuant to which the

Debtors seek authorization to enter into and perform under a plan support agreement (including

all exhibits, attachments, and annexes thereto, the "PSA") that, *inter alia*, requires the Debtors to

fully repay AFI on account of the AFI Senior Secured Credit Facility.  Objections to the PSA

Motion must be filed by June 19, 2013, and the PSA Motion is scheduled to be heard on June 26,

2013.

## II.    JUNIOR SECURED NOTES

22.    Debtor Residential Capital, LLC ("ResCap") issued the Junior Secured

Notes pursuant to that certain Indenture dated as of June 6, 2008, among ResCap, as issuer,

various Debtor affiliates, as guarantors, and U.S. Bank National Association, a national banking

association, as the original indenture trustee (the "JSN Indenture").  As of the Petition Date, the

outstanding principal amount of Junior Secured Notes was approximately $2.1 billion.  The

Junior Secured Notes accrue interest at a non-default rate of 9.625% per annum, payable semi-

annually in arrears,[9] and are repayable in three equal tranches of $707 million in May of 2013,

2014 and 2015.

23.    In connection with the issuance of the Junior Secured Notes, ResCap and

certain of its affiliates entered into that certain Amended and Restated Third Priority Pledge and

Security Agreement and Irrevocable Proxy, dated as of December 30, 2009 (the "JSN Pledge

Agreement"), pursuant to which ResCap, Residential Funding Company, LLC ("RFC"), GMAC

Mortgage, LLC ("GMACM") and certain other Debtor grantors and guarantors granted all-asset

liens in favor of the JSNs, subject to certain specific exclusions. The JSN Pledge Agreement

specifically excluded certain of the Debtors' assets from the Junior Secured Noteholders'

---

[9] Pursuant to the JSN Indenture, the default interest rate for the Junior Secured Notes is 10.625%.

collateral, including (i) the assets that are collateral for the Bilateral Facilities (as defined in the

JSN Pledge Agreement) that were in existence on June 6, 2008, and (ii) the Debtors' mortgage

loan servicing rights and advances related to mortgage loans sold into securitization trusts

guarantee by the Government National Mortgage Association.  See JSN Pledge Agreement § 1

(definition of "Excluded Assets").

### III.    AFI LOC

24.    On December 30, 2009, Debtors RFC, GMACM, and certain of the other

Debtors, as borrowers, ResCap, as a guarantor,  and AFI, as agent and lender, entered into a $1.1

billion amended and restated secured loan agreement (as amended from time to time, the "AFI

LOC") in order to consolidate under one agreement the terms and provisions of two secured

credit agreements with AFI, entered into on November 20, 2008, and June 1, 2009, respectively,

as well as the loans made under those agreements.  The outstanding principal amount under the

AFI LOC as of Petition Date was approximately $380 million.

### IV.    AFI SENIOR SECURED CREDIT FACILITY

25.    On December 30, 2009, Debtors RFC and GMACM, as borrowers, and

various Debtor affiliates, as guarantors, entered into a loan agreement with AFI, as agent and

lender (as amended from time to time, the "AFI Senior Secured Credit Facility") amending and

restating in its entirety the original loan agreement entered into on June 4, 2008.[10]  As of the

Petition Date, the outstanding principal amount of the AFI Senior Secured Credit Facility was

approximately $747 million.  The AFI Senior Secured Credit Facility is secured by a first priority

lien on the assets that secure the Junior Secured Notes.  Pursuant to the Original Cash Collateral

---

[10] The AFI Senior Secured Credit Facility originally was a revolving loan facility, but the outstanding amount was
converted into a term loan in connection with the amendment and restatement.

Order, the Debtors have paid interest at the non-default rate on a current basis throughout the cases.

26.     In connection with the incurrence of the debt referenced above, the Debtors ResCap, GMACM and RFC entered into that certain Intercreditor Agreement, dated as of June 6, 2008 (the "Intercreditor Agreement"), by and among (i) Wells Fargo Bank, N.A., as first priority collateral agent for AFI under the AFI Senior Secured Credit Facility, (ii) Wells Fargo Bank, N.A., as second priority collateral agent for the holders of the 8.5% senior secured notes due 2010 (the "Senior Secured Notes"), (iii) Wells Fargo Bank, N.A., as third priority collateral agent for the holders of the Junior Secured Notes, (iv) AFI in its capacity as agent for the lenders under the AFI Senior Secured Credit Facility, (v) U.S. Bank National Association, as Trustee under the indenture governing the Senior Secured Notes, and (vi) U.S. Bank National Association, as Trustee under the JSN Indenture.  On May 15, 2010, the Senior Secured Notes were repaid at maturity, and the Junior Secured Notes effectively stepped into the position of the Senior Secured Notes.

## V.    RECENT SALES OF THE DEBTORS' ASSETS

27.     On October 23-25, 2012, the Debtors held two auctions for the sale of their assets.   Following the auctions, the Debtors declared Ocwen Loan Servicing, LLC ("Ocwen") and Walter Investment Management Corp. ("Walter") as the winning bidders for the Debtors' mortgage loan origination and servicing platform at a price of $3 billion (the "Platform Sale"), and Berkshire Hathaway Inc. ("Berkshire") as the winning bidder for the legacy loan portfolio at a price of $1.5 billion (the "Legacy Sale," and together with the Platform Sale, the "Sales").

28.    On November 21, 2012, the Court entered orders approving each of the

Sales [Docket Nos. 2246 and 2247] (the "Platform Sale Order" and the "Legacy Sale Order,"

respectively).

29.    The Debtors' sales to Walter, Berkshire and Ocwen closed on January 31,

2013, February 5, 2013, and February 15, 2013, respectively.

## VI.    SUMMARY OF THE DEBTORS' CASH AND CASH NEEDS

30.    The Debtors received approximately $4.1 billion in gross sale proceeds in

connection with the Sales (prior to reduction for payment of assumed liabilities, cure costs and

other associated liabilities).  The Debtors used this cash to, *inter alia*, pay off in full the AFI DIP

Facility[11] and the Barclays DIP Facility,[12] as well as other prepetition facilities, including the

Citibank MSR Facility[13] and the FNMA EAF Facility.[14]

31.    As of March 31, 2013, the Debtors have approximately $3.5 billion net

cash (excluding restricted cash), of which $1.7 billion[15] in cash constitutes proceeds of the

collateral securing the AFI Senior Secured Credit Facility and the Junior Secured Notes (subject

to the Adversary Proceedings, the "AFI/JSN Cash Collateral"), plus substantial other assets

---

[11] The "AFI DIP Facility" means that certain postpetition secured superpriority financing facility in the aggregate
principal amount of not more than $220 million in form of continued borrowings by the Debtors under the AFI
LOC.

[12] The "Barclays DIP Facility" means that certain postpetition secured superpriority financing facility in the total
aggregate amount of $1,450,000,000, in the form of (i) a revolving facility in the amount of $190,000,000, (ii) a
term loan in the amount of $1,060,000,000, and (iii) a term loan in the amount of $200,000,000.

[13] The "Citibank MSR Facility" means that certain prepetition revolving loan facility among GMACM, as borrower,
ResCap, as guarantor, and Citibank N.A., as lender.  The outstanding amount under the Citibank MSR Facility as of
the Petition Date was approximately $152 million.  Citibank has asserted that it is entitled to default interest on
account of its claims, and Citibank has reserved all of its rights with respect thereto.

[14] The "FNMA EAF Facility" means that certain prepetition funding facility for servicing advances among
GMACM and Fannie Mae.

[15] This amount includes the net equity of the borrowers under the Barclays DIP Facility.

remaining to be monetized.  The Debtors' cash is primarily held in multiple accounts with various institutions and is not earning any meaningful return.

32.    Based on the current budget, the Debtors anticipate that, even after the Proposed Payments for the AFI Claims and the JSN Secured Claims, the remaining JSN Cash Collateral and the other non-cash collateral securing the Junior Secured Notes[16] will be sufficient to pay all receipts, expenses, and interest allocable to such collateral pursuant to the Original Cash Collateral Order or Non-Consensual Cash Collateral Order, as applicable.

## RELIEF REQUESTED

33.    As described in detail above, pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors respectfully request authorization to make the Proposed Payments in the amount of (i) $380 million, plus accrued and unpaid interest, to fully satisfy the AFI LOC Claim, (ii) $747,127,553.39, plus accrued and unpaid interest, to fully satisfy the AFI Revolver Claim, and (iii) $800 million to partially satisfy the principal portion of the JSN Secured Claims. The relief requested herein will enable the Debtors to meet their obligations under the PSA and avoid the possibility of unnecessarily accruing postpetition interest on the AFI Claims and, to the extent applicable, the JSN Secured Claims.

## APPLICABLE AUTHORITY

34.    Section 363(b)(1) of the Bankruptcy Code provides that the Debtors "after notice and a hearing, may use … other than in the ordinary course of business, property of the estate," and provides the authority necessary for the proposed repayment because "section 363

---

[16] The Debtors continue to hold approximately $900 million (including the net equity of the borrowers under the Barclays DIP Facility) in book value of restricted cash and other non-cash collateral of the AFI Senior Secured Credit Facility and the Junior Secured Notes, including, among other things, mortgage loans, servicer advances, REO properties, and insurance claims with respect to certain federally insured loans, which will be monetized in connection with the wind down of the Chapter 11 cases.

… governs the use of funds by the debtor in possession while it operates its business after the bankruptcy petition is filed." See United States Trustee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.), No. 02-Civ. 2854 (MBM), 2003 U.S. Dist. LEXIS 12909, at *36 (S.D.N.Y. July 28, 2003); 11 U.S.C. § 363(b). In addition, section 105 of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). See Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

35.    Courts in the Second Circuit have explained that, in determining whether to allow a use or lease of property of the estate other than in the ordinary course of business, courts "have required that it be based upon the sound business judgment of the debtor." In re RSL COM Primecall, Inc., No. 01-11457, 2002 Bankr. LEXIS 367, at *27 (Bankr. S.D.N.Y. Apr. 11, 2002). See also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate…may be conducted if a good business reason exists to support it."); Official Comm. of Unsecured Creditors v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992) (holding that there must be a good business reason to grant a motion to sell assets under Bankruptcy Code section 363(b)); Comm. of Equity Sec. Holders v. Lionel Corp (In re The Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (when considering whether Section 363(b) applies, the Second Circuit, "requires that a judge… expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.").

13

36.     Once a debtor articulates a valid business justification, courts apply a strong presumption that "'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company.'" <u>Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)</u>, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting <u>Smith v. Van Gorkom</u>, 488 A.2d 858, 872 (Del. 1985)), <u>appeal dismissed</u>, 3 F.3d 349 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." <u>Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)</u>, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

37.     The relief requested herein is not extraordinary. Courts in this district and others have routinely granted motions seeking relief similar to that requested in this Motion, particularly where—as here—the pay down of secured debt maximizes value for the Debtors' estates by minimizing potentially significant interest accrual. See <u>Law Debenture Trust Co. of N.Y. v. Calpine Corp. (In re Calpine Corp.)</u>, 356 B.R. 585, 597 (S.D.N.Y. 2007) (authorizing the repayment of the entire outstanding balance of principal and accrued interest due on the notes (totaling approximately $646 million) pursuant to sections 363(b) and 105(a) where the bankruptcy judge concluded that repayment is "'highly appropriate' and 'in the best interest of the estate' for the Debtors to stop 'hemorrhaging cash'") (citing Transcript of 6/21/06 Bench Ruling of Judge Lifland at 82-86); <u>Aurelius Capital Master Ltd. v. TOUSA, Inc.</u>, 2009 U.S. Dist. LEXIS 12735 (S.D. Fla. Feb. 6, 2009) (approving the repayment of $175 million on account of first lien secured claims); <u>In re Terrestar Networks, Inc.</u>, Case No. 10-15446 (Bankr. S.D.N.Y. Aug. 3, 2011) (authorizing the repayment of several prepetition and postpetition financing

14

arrangements prior to the confirmation of a plan of reorganization); In re PetroRig I PTE Ltd.,

Case No. 09-13083 (Bankr. S.D.N.Y. Apr. 1, 2010) (authorizing the repayment of all principal

and non-default interest accruing through the repayment date on the prepetition notes); In re

VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Apr. 8, 2009) (authorizing the

repayment of the outstanding principal balance of the prepetition senior unsecured notes, along

with accrued interest at the non-default rate and reasonable fees and expenses to allow the

debtors to minimize additional interest accrual).   See also Platform Sale Order at ¶ 39-42

(authorizing the repayment of the Citibank MSR Facility, the Barclays DIP Facility, the AFI DIP

Facility, and the FNMA EAF Facility).

        38.     The Debtors, in their business judgment, believe that the Proposed

Payments to AFI are necessary and appropriate because they constitute a critical component of

the global resolution facilitating the Debtors' exit from Chapter 11 and are required under the

PSA, which has been agreed to by ResCap, AFI, the Committee and various other consenting

claimants.  Further, the Debtors believe the Proposed Payments to each of AFI and the Junior

Secured Noteholders are appropriate because they will result in a potentially significant benefit

to the Debtors' estates in the form of reduced postpetition interest obligations, thereby increasing

potential recoveries for unsecured creditors.

        39.     While the Debtors believe it is unlikely that the Junior Secured

Noteholders will be successful in their argument that they are oversecured and entitled to

postpetition interest given the value of their collateral and the size of their asserted claim, in the

event they are determined to be oversecured, the Debtors will owe interest at a rate of up to

10.625% to the extent the Junior Secured Noteholders are oversecured.  Given the fact that the

Debtors are not earning any meaningful return on the cash, even the remotest possibility that the

15

Junior Secured Noteholders will prevail in litigation over whether they are oversecured is

sufficient to demonstrate the potential savings associated with the Proposed Payment.

40.    Moreover, notwithstanding the pending Adversary Proceedings brought by

the Debtors and the Committee against the Junior Secured Noteholders, it is unlikely that the

JSN Secured Claims will be determined to be less than $800 million, and the Proposed Payment

thus will not result in any overpayment to the Junior Secured Noteholders.  Similarly, AFI has

agreed that there is no prejudice to the estates' potential claims against AFI in the event the PSA

is terminated.  Thus, to the extent the AFI Claims are challenged and ultimately recharacterized,

subordinated, or determined invalid, the Debtors may claw back or otherwise recover the

Proposed Payments.  In addition, making the Proposed Payments to both AFI and the Junior

Secured Noteholders obviates the potential issues that would otherwise arise under the

Intercreditor Agreement if the Debtors were to make a payment only to the Junior Secured

Noteholders.

41.    The Committee supports the relief requested by the Debtors in this

Motion.

42.    For the foregoing reasons, the Debtors, in their business judgment, believe

that making the Proposed Payments on account of the AFI Claims and the JSN Secured Claims

prior to the resolution of the Adversary Proceedings and the effective date of a plan of

reorganization is an exercise of their prudent business judgment and in the best interests of their

estates and stakeholders.

## NOTICE

43.    The Debtors have provided notice of this Motion in accordance with the

Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

16

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an order

substantially in the form attached hereto as <u>Exhibit 1</u>, and (ii) grant such other and further relief

to the Debtors as the Court may deem just and proper.

Dated:  June 3, 2013
        New York, New York

                                        /s/ Gary S. Lee
                                        Gary S. Lee
                                        Todd M. Goren
                                        Samantha Martin
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        *Counsel for the Debtors and
                                        Debtors in Possession*

**<u>EXHIBIT 1</u>**

ny-1091974

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
                                                      )
In re:                                                )      Case No. 12-12020 (MG)
                                                      )
RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,              )      Chapter 11
                                                      )
                                       Debtors.       )      Jointly Administered
                                                      )
-------------------------------------------------------------------- )

**ORDER GRANTING DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER**
**UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO SATISFY**
**CERTAIN SECURED CLAIMS**

Upon the *Debtors' Amended Motion for Entry of an Order Under 11 U.S.C. §§ 105 and*

*363 Authorizing the Debtors to Satisfy Certain Secured Claims*, dated June [3], 2013 (the

"<u>Motion</u>")[1] seeking entry of an order authorizing the Debtors to (i) fully satisfy the outstanding

claims under the AFI LOC in the amount of $380,000,000, plus accrued and unpaid interest (the

"<u>AFI LOC Claim</u>"), (ii) fully satisfy the outstanding claims under the AFI Senior Secured Credit

Facility in the amount of $747,127,553.39, plus accrued and unpaid interest (the "<u>AFI Revolver</u>

<u>Claim</u>," and together with the AFI LOC Claim, the "<u>AFI Claims</u>"), and (iii) partially satisfy the

outstanding secured claims (the "<u>JSN Secured Claims</u>") of the holders (the "<u>Junior Secured</u>

<u>Noteholders</u>") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor

Residential Capital LLC (the "<u>Junior Secured Notes</u>") in the amount of $800 million; and the

Court having jurisdiction to consider the Motion and grant the requested relief in accordance

with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Court having reviewed the Motion and the Declaration of Marc D.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Puntus, Partner and co-head of the Restructuring Group at Centerview Partners LLC, financial advisor to Debtors, in support of the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the requested relief herein; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

1.       The Motion is GRANTED as set forth herein.

2.       Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized but not directed to (i) remit to Ally Financial, Inc. ("AFI") the amount of $747,127,553.39, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI Revolver Claim, (ii) remit to AFI the amount of $380,000,000, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI LOC Claim, and (iii) provided that the AFI Revolver Claim is first paid in cash in full and complete satisfaction of such claim, remit to UMB Bank, in its capacity as Trustee under the JSN Indenture (the "**JSN Trustee**"), or any Paying Agent (as defined in the JSN Indenture) as set forth in paragraph 11 hereof, not earlier than one (1) business day following the entry of this Order (the "JSN Paydown Date"), the amount of $800 million in full and complete satisfaction of a portion of the principal amount and accrued prepetition interest of the JSN Secured Claims (the "JSN Partial Paydown Amount" and collectively, the "Payments").

3.       Notwithstanding anything herein to the contrary, the JSN Partial Paydown Amount shall not in any way prejudice the claim and lien challenges and adversary proceedings

2

commenced by the Debtors and the Committee against the JSN Trustee, Wells Fargo Bank, N.A., and the Ad Hoc Group of Junior Secured Noteholders; *provided* that in no event shall disgorgement or any similar remedy be available to any party with respect to the JSN Partial Paydown Amount.

4.        In the event the Plan, as defined in the PSA, does not become effective, the Payments to AFI shall have no impact on, and be without prejudice to (i) the rights of any party to seek to recharacterize or equitably subordinate the AFI Claims as if such Payments had not been made, and for the Court to fashion any remedy in connection therewith, and (ii) if any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI's rights to assert liens and security interests in the property securing the AFI Revolver Claim and the AFI LOC Claim as if the Payments to AFI had not been made.

5.        If any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI reserves the right to argue that such secured claims continue to accrue post-petition interest through entry of an order of the Bankruptcy Court adjudicating that request on a final basis, and all parties reserve the right to object to any such assertion by AFI.  Further, all reasonable, documented fees and expenses incurred or accrued by AFI as lender under the AFI LOC and AFI Senior Secured Credit Facility, including all reasonable fees and expenses of counsel, shall continue to accrue during the Debtors' Chapter 11 cases.  In the event that the Plan, as defined in the PSA, is not confirmed, then the Debtors shall pay in full in cash to AFI all such fees and expenses, subject to any rights and defenses, if any, that may exist with respect to such fees and expenses under the Original Cash Collateral Order.  For the avoidance of doubt, nothing in this Order supersedes the terms of the Original Cash Collateral Order; *provided* that, as applicable, for consistency with this Order, in the Original Cash Collateral Order, the term

3

"Plan" shall be as defined in the PSA and the term "Ally Settlement Agreement" shall mean the PSA.

6.     Notwithstanding anything herein to the contrary, the Court has not determined the appropriate allocation of the Payments among the Debtors.  Payment of all or a portion of the Payments by any particular Debtor shall be without prejudice to any inter-Debtor rights of, inter alia, allocation, subrogation, reimbursement, or contribution that may arise as a result of such payment or any subsequent substantive consolidation of the Debtors' estates.

7.     Nothing herein shall limit or restrict the ability of the JSN Trustee or Junior Secured Noteholders from seeking allowance and payment on the remaining JSN Secured Claims, or of the Debtors and the Committee to contest or object to such claims.  For the avoidance of doubt, nothing in this Order shall constitute a determination or other ruling or decision with regard to the right of the Junior Secured Noteholders to obtain postpetition interest on account of the JSN Secured Claims, and all parties expressly reserve the right to seek payment of, or to object to payment of, the remaining JSN Secured Claims or any portion thereof; *provided* that under no circumstances shall post-petition interest accrue on the JSN Partial Paydown Amount following payment on the JSN Paydown Date by the Debtors in accordance with this Order.

8.     The liens and security interests securing the Junior Secured Notes (including but not limited to any Adequate Protection Liens, if any, in accordance with that certain Final Cash Collateral Order, Docket No. 491, as amended) shall continue to the same extent as they existed prior to the payment of the JSN Partial Paydown Amount; *provided* that such liens shall remain subject to the rights and obligations, if any, of the parties under the Intercreditor Agreement.

4

9.      Nothing herein shall limit or impair (i) the right, if any, of AFI, the JSN

Trustee or any of the Junior Secured Noteholders to seek additional rights or remedies which any

of AFI, the JSN Trustee or any of the Junior Secured Noteholders may have as the holder of a

secured claim under the Bankruptcy Code, the JSN Indenture, the Junior Secured Notes, the

Security Documents (as defined in the JSN Indenture) or applicable non-bankruptcy law, (ii) the

JSN Trustee's lien or other priority in payment to which it is entitled, pursuant to the JSN

Indenture or otherwise, against distributions to be made to the Junior Secured Noteholders for

payment of the JSN Trustee's fees and expenses in accordance with Section 7.07 of the JSN

Indenture, or (iii) rights of any party to object to any relief sought as set forth in this paragraph;

provided that such rights, if any, shall be subject to the terms of the PSA (should this Court

approve the Debtors' entry into such agreement) with respect to any party that is a party to the

PSA.

10.     Except with respect to the JSN Partial Paydown Amount, nothing

contained herein shall affect the enforceability of the Intercreditor Agreement in accordance

with, and subject to, the terms thereof and any applicable law, and all rights and obligations, if

any, of the parties to the Intercreditor Agreement thereunder, or in connection therewith, are

preserved.

11.     The Debtors are authorized to pay the JSN Partial Paydown Amount to the

Paying Agent or, if no such Paying Agent has been appointed, to the JSN Trustee, acting as

Paying Agent on the JSN Paydown Date.  Upon receiving the JSN Partial Paydown Amount, the

JSN Trustee shall distribute the JSN Partial Paydown Amount to the holders of the Junior

Secured Notes in accordance with the JSN Indenture and this Order; *provided*, *however*, that no

payments shall be made at this time on account of post-petition interest.  The record date for the

payment of the JSN Partial Paydown Amount shall be June [__], 2013. The Debtors shall provide to the JSN Trustee such information as reasonably requested to enable the JSN Trustee to prepare and comply with the notice requirements set forth in Section 6.10 of the JSN Indenture.

12.     Nothing herein shall be deemed to modify or impact the terms of the PSA (should this Court approve the Debtors' entry into such agreement) or any order of this Court staying litigation against AFI and its affiliates.

13.     Nothing in this Order shall prejudice the rights of the Debtors or any other party in interest to seek authority from this Court by separate motion to pay down additional amounts under the JSN Indenture, nor shall anything in this Order limit or impair the right of any party to object to any such request to pay down additional amounts under the JSN Indenture.

14.     The Debtors are hereby authorized to execute and deliver all instruments and documents, and take all other actions, as may be necessary or appropriate to implement and effectuate the relief granted in this Order.

15.     This Order is hereby deemed effective immediately pursuant to Federal Rule of Bankruptcy Procedure § 6004(h).

16.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:   New York, New York
         June __, 2013

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

6

**EXHIBIT 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- )
                                                               )
In re:                                                         )     Case No. 12-12020 (MG)
                                                               )
RESIDENTIAL CAPITAL, LLC, et al.,                              )     Chapter 11
                                                               )
                                    Debtors.                   )     Jointly Administered
                                                               )
-------------------------------------------------------------- )

### ORDER GRANTING DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO SATISFY CERTAIN SECURED CLAIMS

Upon the ~~*Debtors' Amended Motion for Entry of an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Satisfy Certain Secured Claims*, dated May~~ *Debtors' Amended Motion for Entry of an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Satisfy Certain Secured Claims*, dated June [~~—~~3], 2013 (the "Motion")[1] seeking entry of an order authorizing the Debtors to (i) fully satisfy the outstanding ~~secured~~ claims ~~of Ally Financial, Inc.~~ ("~~AFI~~") under the AFI LOC in the amount of [~~$___ million~~]$380,000,000, plus accrued and unpaid interest (the "AFI LOC Claim"), (ii) fully satisfy the outstanding ~~secured~~ claims ~~of AFI~~ under the AFI Senior Secured Credit Facility in the amount of [~~$___ million~~]$747,127,553.39, plus accrued and unpaid interest (the "AFI Revolver Claim," and together with the AFI LOC Claim, the "AFI Claims"), and (iii) partially satisfy the outstanding secured claims (the "JSN Secured Claims") of the holders (the "Junior Secured Noteholders") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor Residential Capital LLC (the "Junior Secured Notes") in the amount of $800 million; and the Court having jurisdiction to consider the Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the Declaration of Marc D. Puntus, Partner and co-head of the Restructuring Group at Centerview Partners LLC, financial advisor to Debtors, in support of the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the requested relief herein; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

1.    The Motion is GRANTED as set forth herein.

2.    Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized but not directed to (i) remit to ~~AFI~~Ally Financial, Inc. ("AFI") the amount of ~~[$___ million]~~$747,127,553.39, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI Revolver Claim, (ii) remit to AFI the amount of ~~[$___ million]~~$380,000,000, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI LOC Claim, and (iii) provided that the AFI Revolver Claim is first paid in cash in full and complete satisfaction of such claim, remit ~~to~~ to UMB Bank, in its capacity as Trustee under the JSN Indenture (the "***JSN Trustee***")~~,~~ or any Paying Agent (as defined in the JSN Indenture) as set forth in paragraph ~~[6]~~11 hereof, not earlier than one (1) business day following the entry of this Order (the "JSN Paydown Date"), the amount of $800 million ~~for application to~~in full and complete satisfaction of a portion of the principal ~~portion~~amount and accrued prepetition interest of the JSN Secured Claims (the "JSN Partial Paydown Amount" and collectively, the

"Payments"). ~~Payment of the JSN Partial Paydown Amount to the JSN Trustee shall be irrevocable and shall not be subject to disgorgement or any other claim or defense by the Debtors or by any other party acting on behalf of the Debtors.~~

3.    ~~The Payments~~ Notwithstanding anything herein to the contrary, the JSN Partial Paydown Amount shall not in any way prejudice ~~(i) any litigation that may be brought by the Debtors, the Debtors' estates, or by a third party on behalf of the Debtors' estates against AFI and its affiliates, (ii) the~~ the claim and lien challenges and adversary proceedings commenced by the Debtors and the Committee against ~~UMB Bank~~ the JSN Trustee, Wells Fargo Bank, N.A., and the Ad Hoc Group of Junior Secured Noteholders~~, or (iii) each of the parties' rights and obligations under the Intercreditor Agreement.  The Payments to AFI shall have no impact on, and be without prejudice to, the rights of any Party to seek to recharacterize or equitably subordinate Ally's secured claims as if the paydown had not been made, and for the Court to fashion any remedy in connection therewith.~~ ; *provided* that in no event shall disgorgement or any similar remedy be available to any party with respect to the JSN Partial Paydown Amount.

4.    In the event the Plan, as defined in the PSA, does not become effective, the Payments to AFI shall have no impact on, and be without prejudice to (i) the rights of any party to seek to recharacterize or equitably subordinate the AFI Claims as if such Payments had not been made, and for the Court to fashion any remedy in connection therewith, and (ii) if any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI's rights to assert liens and security interests in the property securing the AFI Revolver Claim and the AFI LOC Claim as if the Payments to AFI had not been made.

5.    If any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI reserves the right to argue that such secured claims continue to accrue post-petition

interest through entry of an order of the Bankruptcy Court adjudicating that request on a final basis, and all parties reserve the right to object to any such assertion by AFI.  Further, all reasonable, documented fees and expenses incurred or accrued by AFI as lender under the AFI LOC and AFI Senior Secured Credit Facility, including all reasonable fees and expenses of counsel, shall continue to accrue during the Debtors' Chapter 11 cases.  In the event that the Plan, as defined in the PSA, is not confirmed, then the Debtors shall pay in full in cash to AFI all such fees and expenses, subject to any rights and defenses, if any, that may exist with respect to such fees and expenses under the Original Cash Collateral Order.  For the avoidance of doubt, nothing in this Order supersedes the terms of the Original Cash Collateral Order; *provided* that, as applicable, for consistency with this Order, in the Original Cash Collateral Order, the term "Plan" shall be as defined in the PSA and the term "Ally Settlement Agreement" shall mean the PSA.

6.    Notwithstanding anything herein to the contrary, the Court has not determined the appropriate allocation of the Payments among the Debtors.  Payment of all or a portion of the Payments by any particular Debtor shall be without prejudice to any inter-Debtor rights of, inter alia, allocation, subrogation, reimbursement, or contribution that may arise as a result of such payment or any subsequent substantive consolidation of the Debtors' estates.

7.    4.  Notwithstanding anything herein to the contrary, the Court has not determined the appropriate allocation of the Payments among the Debtors.  Payment of all or a portion of the Payments by any particular Debtor shall be without prejudice to any inter-Debtor rights of, inter alia, allocation, subrogation, reimbursement, or contribution that may arise as a result of such payment or any subsequent substantive consolidation of the Debtors' estates.Nothing herein shall limit or restrict the ability of the UMB Bank  JSN Trustee or Junior

Secured Noteholders from seeking allowance and payment on the remaining JSN Secured Claims, ~~including, without limitation, remaining unpaid principal and prepetition and postpetition interest (including, if payable in accordance with applicable law, postpetition interest at the default rate accrued on the full amount of the Junior Secured Notes from the Petition Date through the date~~ _the JSN Partial Paydown Amount_ ~~is received by the JSN Trustee or Paying Agent, as applicable)  due under the Junior Secured Notes, the JSN Indenture and applicable law~~, or of the Debtors and the Committee to contest or object to such claims.  For the avoidance of doubt, nothing in this Order shall constitute a determination or other ruling or decision with regard to the right of the Junior Secured Noteholders to obtain postpetition interest on account of the JSN Secured Claims, and all parties expressly reserve the right to seek payment of, or to object to payment of, the remaining JSN Secured Claims or any portion thereof_; provided that under no circumstances shall post-petition interest accrue on the JSN Partial Paydown Amount following payment on the JSN Paydown Date by the Debtors in accordance with this Order_.

8.    The liens and security interests securing the Junior Secured Notes _(including but not limited to any Adequate Protection Liens, if any, in accordance with that certain Final Cash Collateral Order, Docket No. 491, as amended)_ shall continue to the same extent as they existed prior to the payment of the JSN Partial Paydown Amount_; provided that such liens shall remain subject to the rights and obligations, if any, of the parties under the Intercreditor Agreement_.

9.    ~~5.~~Nothing herein shall limit or impair (i) the right_, if any,_ of _AFI,_ the JSN Trustee or any of the Junior Secured Noteholders to seek additional rights or remedies which ~~either~~_any of AFI,_ the JSN Trustee or any of the Junior Secured Noteholders may have as the

ny-1089225

holder of a secured claim under the Bankruptcy Code, the JSN Indenture, the Junior Secured

Notes, the Security Documents (as defined in the JSN Indenture) or applicable non-bankruptcy

law, (ii) the JSN Trustee's lien or other priority in payment to which it is entitled, pursuant to the

JSN Indenture or otherwise, against distributions to be made to the Junior Secured Noteholders

for payment of the JSN Trustee's fees and expenses in accordance with Section 7.07 of the JSN

Indenture, or (iii) rights of any party's right to object to the JSN Trustee's (or any Junior Secured

Noteholder's) seeking of any such relief. to object to any relief sought as set forth in this

paragraph; provided that such rights, if any, shall be subject to the terms of the PSA (should this

Court approve the Debtors' entry into such agreement) with respect to any party that is a party to

the PSA.

　　　　10.　　Except with respect to the JSN Partial Paydown Amount, nothing

contained herein shall affect the enforceability of the Intercreditor Agreement in accordance

with, and subject to, the terms thereof and any applicable law, and all rights and obligations, if

any, of the parties to the Intercreditor Agreement thereunder, or in connection therewith, are

preserved.

　　　　11.　　6.　The Debtors shallare authorized to pay the JSN Partial Paydown

Amount to the Paying Agent　or, if no such Paying Agent has been appointed, to the JSN

Trustee, acting as Paying Agent on the JSN Paydown Date.　Upon receiving the JSN Partial

Paydown Amount, the JSN Trustee shall distribute the JSN Partial Paydown Amount to the

holders of the Junior Secured Notes in accordance with Section 6.10 of the JSN Indenture and

this Order; *provided*, *however*, that no payments shall be made at this time on account of post-

petition interest.　The record date for such distributionthe payment of the JSN Partial Paydown

Amount shall be June [——__], 2013.　The Debtors shall provide to the JSN Trustee such

ny-1089225

information as reasonably requested to enable the JSN Trustee to prepare and comply with the notice requirements set forth in Section 6.10 of the JSN Indenture.

12.     Nothing herein shall be deemed to modify or impact the terms of the PSA (should this Court approve the Debtors' entry into such agreement) or any order of this Court staying litigation against AFI and its affiliates.

13.     7. Nothing in this Order shall prejudice the rights of the Debtors or any other party in interest to seek authority from this Court by separate motion to pay down additional amounts under the JSN Indenture, nor shall anything in this Order limit or impair the right of any party to object to any such request to pay down additional amounts under the JSN Indenture.

14.     8.  The Debtors are hereby authorized to execute and deliver all instruments and documents, and take all other actions, as may be necessary or appropriate to implement and effectuate the relief granted in this Order.

15.     9. This Order is hereby deemed effective immediately pursuant to Federal Rule of Bankruptcy Procedure § 6004(h).

16.     10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:    New York, New York
          June __, 2013

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE