**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF MARC D. PUNTUS IN SUPPORT OF
DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS
TO SATISFY CERTAIN SECURED CLAIMS**

I, Marc D. Puntus, being duly sworn, hereby depose and say:

1. I am a Partner and co-head of the Restructuring Group at Centerview Partners LLC ("Centerview"), financial advisor to Residential Capital LLC ("ResCap") and the other above-captioned debtors and debtors in possession (collectively, the "Debtors"). I submit this declaration in support of the *Debtors' Amended Motion for Entry of an Order under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Satisfy Certain Secured Claims*, filed contemporaneously herewith (the "Motion").[1]

    **A.    Qualifications**

2. I previously have conveyed to the Court my qualifications and Centerview's qualifications in my Declarations in support of the application for Centerview's retention, my Declarations in support of the motions for approval of the Debtors' debtor-in-possession financing facilities and amendments thereto, and my Declaration in support of the Debtors'

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

1

ny-1089035

motion for approval of the Sales [Docket Nos. 20, 1784, and 2137 respectively] (collectively, the "Declarations").

3. Rather than repeat the information contained in the Declarations here, they are incorporated by reference.

**B.    Motion to Satisfy Certain Secured Claims**

4. The Debtors originally filed a motion to partially satisfy the outstanding JSN Secured Claims only. However, the Debtors, in consultation with the Committee and their major creditor constituents, recently negotiated a plan support agreement (including all exhibits, attachments, and annexes thereto, the "PSA") that was filed with the Court on May 23, 2013, which provides that the Parties thereto will support a partial paydown of the Junior Secured Notes, provided that the Debtors also repay the AFI Senior Secured Credit Facility, subject to a reservation of rights in the event the PSA is terminated or the plan is not approved. The parties believe that the repayment of the AFI Claims will benefit the Debtors' estates by eliminating the interest expense associated with the AFI LOC and the AFI Senior Secured Credit Facility, which the Debtors are paying on a current basis, thereby enhancing distributions to unsecured creditors. Accordingly, the Debtors are amending the Original Motion to seek authority for the repayment of AFI, in addition to the partial payment to the Junior Secured Noteholders contemplated in the Original Motion.

5. The Debtors received approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) in connection with the Sales. The Debtors used this cash to, *inter alia*, pay off in full the AFI DIP Facility and the Barclays DIP Facility, as well as other prepetition facilities, including the

Citibank MSR Facility,[2] and the FNMA EAF Facility. As of March 31, 2013, the Debtors have approximately $3.5 billion net cash (excluding restricted cash), of which $1.7 billion[3] in cash constitutes proceeds of the collateral securing the AFI Senior Secured Credit Facility and the Junior Secured Notes, plus substantial other assets remaining to be monetized.

6. By the amended Motion, the Debtors seek authority to make the Proposed Payments in the amount of (i) $380 million, plus accrued and unpaid interest, to fully satisfy the AFI LOC Claim, (ii) $747,127,553.39, plus accrued and unpaid interest, to fully satisfy the AFI Revolver Claim, and (iii) $800 million to partially satisfy the principal portion of the JSN Secured Claims (collectively, the "<u>Proposed Payments</u>").

7. In evaluating whether to make the Proposed Payments, the Debtors have considered, among other things, three key facts. <u>First</u>, in connection with the plan negotiation process, after months of hard-fought, arms-length negotiations facilitated by the plan mediator, the Debtors and various parties in interest settled on the terms of the PSA, which requires the Debtors to repay AFI in full under the Plan for all amounts owed under the AFI LOC and the AFI Senior Secured Credit Facility and which also requires a repayment of the AFI Senior Secured Credit Facility as a condition to repaying the Junior Secured Notes. As a result of the PSA, it also now appears that nearly all of the Debtors' major creditor constituencies support the relief requested in the Motion. <u>Second</u>, the Debtors currently are not receiving any meaningful return on the approximately $4.1 billion in gross sale proceeds (prior to reduction for payment of assumed liabilities, cure costs and other associated liabilities) received by the Debtors from the sale of their business platform and legacy loan portfolio. <u>Third</u>, AFI is oversecured on each of

---

[2] Citibank has asserted that it is entitled to default interest on account of its claims, and Citibank has reserved all of its rights with respect thereto.
[3] This amount includes the net equity of the borrowers under the Barclays DIP Facility.

3

the AFI Senior Secured Credit Facility and the AFI LOC, and as a result, AFI is entitled to postpetition interest for each of these facilities.

8. The Junior Secured Noteholders have represented to the Debtors and the Court that they are oversecured and therefore entitled to the payment of postpetition interest on their prepetition secured debt. While the Junior Secured Noteholders appear to be alone in this belief, they have asserted numerous arguments as to why additional collateral value exists. The Debtors believe these arguments are meritless and that the Junior Secured Noteholders are significantly undersecured.

9. Nonetheless, there is a risk that the Junior Secured Noteholders may prevail in litigation regarding the extent of their secured claim. In the event that the Junior Secured Noteholders demonstrate that that they are oversecured and entitled to postpetition interest, such interest will have accrued at a rate of up to 10.625%[4] since the Petition Date.

10. If the Junior Secured Noteholders are oversecured, the Debtors currently would be incurring an estimated liability of approximately $20 million per month in postpetition interest on the JSN Secured Claims. Each dollar of interest that accrues on the JSN Secured Claims is one less dollar available for distribution to the Debtors' unsecured creditors. Thus, this potential postpetition interest obligation could erode the recoveries to unsecured creditors.

11. Further, because the Junior Secured Noteholders believe that they are entitled to postpetition interest, their asserted secured claim continues to increase, even as the Debtors and other case constituents believe that the Junior Secured Notes are undersecured. This dynamic makes reaching an acceptable settlement more difficult as time passes. Making the Proposed

---

[4] The Junior Secured Noteholders have asserted that they are entitled to postpetition interest at the contractual default rate of 10.625%—the non-default rate is 9.625%.

4

ny-1089035

Payment reduces the difference between the parties' respective positions as to the value of the Junior Secured Noteholders' claims and will enhance settlement prospects.

12. Finally, the Debtors are mindful that, to the extent the PSA is not approved or if the milestones set forth in the PSA are not met, there is potential for litigation regarding the validity of the AFI Claims. AFI has agreed that there is no prejudice to the estates' potential claims against AFI in the event the PSA is terminated, and, to the extent the AFI Claims are challenged, the Proposed Payments will be without prejudice to the rights of any party to seek to recharacterize or equitably subordinate Ally's secured claims as if the paydown had not been made, and for the Court to fashion any remedy in connection therewith. In addition, making the Proposed Payments to both AFI and the Junior Secured Noteholders pursuant to this amended Motion obviates the potential issues that would otherwise arise under the Intercreditor Agreement if the Debtors were to make a payment only to the Junior Secured Noteholders—the junior lenders—as initially contemplated in the Original Motion.

13. Even after making the Proposed Payments, the Debtors believe that the remaining JSN Cash Collateral and the other non-cash collateral securing the Junior Secured Notes[5] will be sufficient to pay all receipts, expenses, and interest allocable to such collateral pursuant to the Original Cash Collateral Order or Non-Consensual Cash Collateral Order, as applicable.

14. For these reasons, the Debtors, in their business judgment, believe that it is in the best interests of their estates and all stakeholders to make the Proposed Payments on account of the AFI Claims and the JSN Secured Claims prior to either the resolution of the adversary proceedings or the effective date of a plan of reorganization.

---

[5] The Debtors continue to hold approximately $900 million (including the net equity of the borrowers under the Barclays DIP Facility) in book value of restricted cash and other non-cash collateral of the Junior Secured Notes, including, among other things, mortgage loans, servicer advances, REO properties, and insurance claims with respect to certain federally insured loans, which will be monetized in connection with the wind down of the chapter 11 cases.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of June, 2013.

/s/ Marc D. Puntus<br>Marc D. Puntus

ny-1089035