1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              May 29, 2013

19              2:05 PM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2  Doc# 3831, 3814 Status Conference RE: Debtors' Motion

3  Authorizing the Debtors to Enter Into and Perform Under a Plan

4  Support Agreement with Ally Financial Inc., The Creditors'

5  Committee, and Certain Consenting Claimants filed by Gary S.

6  Lee on behalf of Residential Capital, LLC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Penina Wolicki

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4       Attorneys for Debtors

5       1290 Avenue of the Americas

6       New York, NY 10104

7

8  BY:   GARY S. LEE, ESQ.

9       LORENZO MARINUZZI

10

11

12  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

13       Conflicts Counsel to Debtors

14       101 Park Avenue

15       New York, NY 10178

16

17  BY:   MARYANN GALLAGHER, ESQ.

18

19  UNITED STATES DEPARTMENT OF JUSTICE

20       Office of the United States Trustee

21       33 Whitehall Street

22       21st Floor

23       New York, NY 10004

24

25  BY:   BRIAN S. MASUMOTO, ESQ.

4

 1

 2    KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP

 3          Attorneys for Official Creditors' Committee

 4          1177 Avenue of the Americas

 5          New York, NY 10036

 6

 7    BY:    KENNETH H. ECKSTEIN, ESQ.

 8

 9

10    WILMER CUTLER PICKERING HALE AND DORR LLP

11          Attorneys for Official Creditors' Committee

12          1873 Pennsylvania Avenue, NW

13          Washington, DC 20006

14

15    BY:    WILLIAM J. PERLSTEIN, ESQ.

16

17

18    WHITE & CASE LLP

19          Attorneys for Ad Hoc Group of Junior Secured Notes

20          1155 Avenue of the Americas

21          New York, NY 10036

22

23    BY:    J. CHRISTOPHER SHORE, ESQ.

24          HARRISON DENMAN, ESQ.

25

5

MILBANK, TWEED, HADLEY & MCCLOY LLP
        Attorneys for Ad Hoc Group of Junior Secured Notes
        One Chase Manhattan Plaza
        New York, NY 10005

BY:    GERARD UZZI, ESQ.


DECHERT LLP
        Attorneys for Bank of New York Mellon
        1095 Avenue of the Americas
        New York, NY 10036

BY:    GLENN E. SIEGEL, ESQ.


JONES DAY
        Attorneys for FGIC
        222 East 41st Street
        New York, NY 10017

BY:    RICHARD L. WYNNE, ESQ.

6

1

2  ROPES & GRAY LLP

3        Attorneys for Institutional Investor Steering Committee

4        800 Boylston Street

5        Boston, MA 02199

6

7  BY:   D. ROSS MARTIN, ESQ.

8

9

10  CARTER LEDYARD & MILBURN LLP

11        Attorneys for Talcott Franklin Group

12        2 Wall Street

13        New York, NY 10005

14

15  BY:   AARON R. CAHN, ESQ.

16

17

18  AKIN GUMP STRAUSS HAUER & FELD LLP

19        Attorneys for UMB Bank

20        One Bryant Park

21        New York, NY 10036

22

23  BY:   DANIEL H. GOLDEN, ESQ.

24

25

7

1

2  ALSTON & BIRD LLP

3        Attorneys for Wells Fargo Bank N.A.

4        1201 West Peachtree Street

5        Suite 4200

6        Atlanta, GA 30309

7

8  BY:    JOHN C. WEITNAUER, ESQ.

9

10

11  MORGAN, LEWIS & BOCKIUS LLP

12        Attorneys for Deutsche Bank

13        101 Park Avenue

14        New York, NY 10178

15

16  BY:    JAMES L. GARRITY, JR., ESQ.

17

18

19  CADWALADER, WICKERSHAM & TAFT LLP

20        Attorneys for MBIA Insurance Co.

21        One World Financial Center

22        New York, NY 10281

23

24  BY:    JASON JURGENS, ESQ.

25

8

```
 1

 2    SEWARD & KISSEL LLP

 3          Attorneys for US Bank as RMBS Trustee

 4          One Battery Park Plaza

 5          New York, NY 10004

 6

 7    BY:   MARK D. KOTWICK, ESQ.

 8

 9

10    LOWENSTEIN SANDLER LLP

11          Attorneys for N.J. Carpenters

12          1251 Avenue of the Americas

13          New York, NY 10020

14

15    BY:   MICHAEL S. ETKIN, ESQ.

16

17

18    KIRKLAND & ELLIS LLP

19          Attorneys for Ally Financial, Inc. and Ally Bank

20          601 Lexington Avenue

21          New York, NY 10022

22

23    BY:   RAY C. SCHROCK, ESQ.

24

25
```

9

1

2   CHADBOURNE & PARKE LLP

3        Attorneys for the Examiner

4        30 Rockefeller Plaza

5        New York, NY 10112

6

7   BY:   HOWARD SEIFE, ESQ.

8

9

10   CLEARY GOTTLIEB STEEN & HAMILTON LLP

11        Attorneys for Wilmington Trust

12        One Liberty Plaza

13        New York, NY 10006

14

15   BY:   MARK A. LIGHTNER, ESQ.

16        THOMAS J. MOLONEY, ESQ.

17

18

19   MUNGER, TOLLES & OLSON LLP

20        Attorneys for Berskshire Hathaway

21        355 South Grand Avenue

22        35th Floor

23        Los Angeles, CA 90071

24

25   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

10

```
 1   ZUCKERMAN SPAEDER LLP

 2         Attorneys for National Credit Union Administration Board

 3         1800 M. Street NW

 4         Suite 1000

 5         Washington, DC 20036

 6

 7   BY:   NELSON COHEN, ESQ. (TELEPHONICALLY)

 8

 9

10   QUINN EMANUEL URQUHART & SULLIVAN, LLP

11         Attorneys for AIG

12         865 Figueroa

13         Suite 10

14         Los Angeles, CA 90017

15

16   BY:   ERIC WINSTON, ESQ. (TELEPHONICALLY)

17

18

19   STEVENS & LEE, P.C.

20         Attorneys for Tracy Klestadt,

21         Ch. 7 Trustee of Alliance Mortgage

22         485 Madison Avenue

23         New York, NY 10022

24

25   BY:   NICHOLAS  F. KAJON, ESQ. (TELEPHONICALLY)
```

1

2     STEWART TABIN (TELEPHONICALLY)

3           Appearing Pro Se

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**RESIDENTIAL CAPITAL, LLC, ET AL.**

12

1                    P R O C E E D I N G S

2            THE COURT:  All right, please be seated.  We're here

3    in Residential Capital, number 12-12020.  Mr. Lee?

4            MR. LEE:  Good afternoon, Your Honor.  Gary Lee from

5    Morrison & Foerster for the debtors.  Your Honor, we're here on

6    a status conference.  If I may, I'd like to start with a brief

7    overview of the plan support agreement and term sheets that we

8    filed with the Court last Thursday, two minutes before 9 a.m.,

9    and then discuss next steps and how we intend to move forward

10   towards a disclosure statement hearing and then to plan

11   confirmation.

12           Obviously, Your Honor, we are thrilled to be in front

13   of you with an agreement between the debtors, the creditors'

14   committee, Ally, and the substantial majority of the estates'

15   creditors.  Given what's happened over the last twelve months,

16   the breadth of consensus that's reflected in the plan support

17   agreement is quite remarkable.  And we believe that it provides

18   a path towards confirmation of a plan.

19           Reaching consensus was not an easy task and involved

20   Judge Peck -- and I could think of a lot of different

21   adjectives, but I use the one guiding over 150 professionals

22   and principals through a mediation towards a series of

23   compromises that would otherwise have cost tens of millions of

24   dollars to resolve and probably years to litigate.

25           Not only was Judge Peck able to get and keep the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1    parties at the negotiating table -- and sometimes he had to

2    drag them back -- but he was also integral to driving the terms

3    of the actual resolution that's embodied in the plan support

4    agreement and term sheets.  And the debtors' business judgment

5    was not just informed by the compromises driven by Judge Peck,

6    but very much by Judge Peck telling the parties what those

7    compromises should be.

8            So we believe that the plan support agreement really

9    is a significant and extraordinary milestone in these cases.

10   And as Your Honor said when you appointed Judge Peck as the

11   mediator, it does prevent all-out nuclear war.

12           So with that, Your Honor, if I may, I'd just like to

13   turn to a few of the compromises embedded in the plan support

14   agreement, for those who are having any difficulty following

15   it.

16           First, Your Honor, the plan support agreement and term

17   sheets resolve the RMBS 9019 litigation which, as Your Honor is

18   painfully aware, and probably more so than anybody else,

19   involved an enormous amount of time and effort and expense to

20   get ready for trial.  I think it's worth observing that if that

21   settlement hadn't been approved, we would have spent the next

22   several years litigating over forty-four billion dollars'-worth

23   of RMBS claims, and potentially doing so loan-by-loan-by-loan.

24   Then we would have litigated all over again whether or not

25   those were general unsecured claims or whether they were

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1   subordinated to something else.  So obviously, Your Honor,

2   we're pleased that that issue is not before you and instead has

3   been folded into the plan.

4          The plan support agreement also resolves the RMBS

5   trustee's 600 million dollar rep and warranty cure claim, and

6   it also resolves what may well have been several hundred

7   million dollars'-worth of servicing cure claims as well.

8          Finally, it also resolves, in relation to the RMBS

9   trusts, what we call the orphan trust claims.  That was several

10  billion dollars'-worth of RMBS claims that had not been

11  forwarded into the original RMBS settlement.  So it resolves

12  the --

13         THE COURT:  So what, the original settlement had,

14  what, 392 trusts, I think was the number?

15         MR. LEE:  392 trusts, Your Honor.

16         THE COURT:  And how many are part of this agreement

17  now?

18         MR. LEE:  In addition to the --

19         THE COURT:  Yes, the total number.  Does somebody

20  know?

21         MR. LEE:  Let me just look around.

22         THE COURT:  Are there any remaining orphan trusts?

23         MR. LEE:  There are no remaining orphan trusts.  It's

24  the entire RMBS securitizations of the debtor, Your Honor.

25         THE COURT:  All right.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1          MR. LEE:  I know it numbers in the 400s, Your Honor,

2     but I don't recall exactly.

3          THE COURT:  That's okay.

4          MR. LEE:  Okay.  Your Honor, I think it's important to

5     note that all five of the RMBS trustees support the plan

6     support agreement, which in and of itself is remarkable.

7          The plan support agreement also settles the monoline

8     claims.  And I think Your Honor knows, when we've said this a

9     number of occasions, there are a lot of complex issues to

10    resolve there, including whether they were senior or

11    subordinate to the RMBS trusts, who owns the claims, and

12    whether the monolines have claims for future losses as well.

13         I think it's worth observing that in relation to just

14    one of the monoline claims, MBIA, and with respect to one

15    securitization, there's been nearly six years of litigation and

16    over eighty separate depositions taken in respect to that one

17    securitization.  So actually getting to a consensus across the

18    board for all of the wrapped deals, Your Honor, I think is also

19    a significant achievement.

20         We've also managed, Your Honor, to resolve several

21    billions -- tens of billions of dollars'-worth of securities

22    claims that are brought against the debtor.  An additional

23    settlement, Your Honor, is with respect to FGIC, which is

24    itself in the rehabilitation proceeding.  Your Honor, due to

25    certain timing considerations relating to the closure of the

1    FGIC rehabilitation proceeding, the debtors are going to seek

2    approval under a separate 9019 in advance of -- during the

3    course, I think, of June -- at least we'll make the motion so

4    we can resolve that in advance of other things.  That resolves

5    all of FGIC's claims, including its rights to future claims,

6    and also resolves the RMBS trustee's claims against the estate

7    with respect to those same trusts as well.  So it's a fairly

8    significant settlement.

9           The PSA also resolves, Your Honor, the issue of

10   substantive consolidation.  We believe that certain parties

11   were potentially incentivized, given our capital structure, to

12   seek substantive consolidation in this case.  And the

13   settlement resolves what would otherwise be an entirely

14   gruesome plan confirmation fight as well.

15          Obviously and importantly, for the price of 2.1

16   billion dollars, the plan support agreement deals with claims

17   against AFI.  We spent month after month listening to

18   discussions regarding the validity of claims against AFI,

19   whether those claims are rightfully owned by the estates or

20   directly assertible by creditors.  And the settlement of these

21   claims, obviously, Your Honor, resolves some very costly and

22   lengthy litigation.

23          And finally, with respect to the junior secured notes.

24   While the plan support agreement doesn't resolve the question

25   of post-petition interest, it does provide that the junior

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  secured noteholders will get paid in full plus accrued pre-

2  petition interest.  We believe that that is a remarkable result

3  for the junior secured noteholders, given the existing number

4  of open disputes regarding their liens and regarding the extent

5  of their security.  So the hope of everybody, at least

6  connected with the mediation, is that we will have

7  significantly curtailed what were astronomically large

8  administrative costs in this expense, that we will have saved

9  tens of millions of dollars in litigation over what is resolved

10 through the plan support agreement.

11        Your Honor, in terms of next steps, what we would be

12 looking to do over the next three or four weeks is to reach out

13 to those creditors who are not parties to the plan support

14 agreement.  And our intention is to fold as many of those as we

15 can into joining the plan support agreement.  So what will be

16 before Your Honor on June the 26th is what we hope is a narrow

17 and rather focused question of whether or not the debtors and

18 their estates are better off pursuing a plan with the plan

19 support agreement in place, or whether or not we're going to

20 continue down a litigated path for the next several months.

21        And assuming Your Honor accepts the business judgment

22 of the debtors in that regard, then we will be looking to file

23 a plan and disclosure statement no later than July the 3rd.

24        THE COURT:  July which?

25        MR. LEE:  July the 3rd, Your Honor.  With hopefully a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1   disclosure statement hearing in the middle of August.

2           If I could just briefly address what I think is one

3   slight fly in the ointment sitting behind me.  As I believe

4   Your Honor is aware, the sealing of the examiner's report was

5   an important component to reaching the compromises that are

6   embodied in the plan support agreement.  And as Your Honor

7   correctly predicted in I think five or six prior exclusivity

8   hearings, the cloud of uncertainty surrounding the examiner's

9   findings and the timing of those findings was an element that

10  led us to reach agreement, and led us to reach agreement when

11  we did.

12          I think all of the parties understood that the

13  leverage in these negotiations could truly shift one way or the

14  other, towards AFI, towards the creditors.  And at the end of

15  the day, a key aspect of the deal was that the examiner's

16  report would remain sealed until Your Honor had had an

17  opportunity to consider the plan support agreement and approve

18  it or reject it, as the case may be.

19          So the timing of the motion to unseal is somewhat

20  unfortunate.  I believe it did predate Berkshire seeing a plan

21  that provides for payment in full to them.  But under the terms

22  of Your Honor's sealing order, obviously everybody's going to

23  get to see this report one way or the other, either on June the

24  26th, if there's a ruling that day, or July the 3rd.

25          THE COURT:  Let me just say, I'm going to schedule the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

19

1   motion to unseal the examiner's report for June 26th, the same

2   day as the hearing for approval of the PSA.

3          MR. LEE:  Thank you, Your Honor.

4          So with that, Your Honor, I'm happy to address --

5          THE COURT:  Okay.

6          MR. LEE:  -- any questions the Court has.

7          THE COURT:  I do have -- well, let me see.  Does

8   anybody else wish to be heard at this point?  Mr. Eckstein?

9          MR. ECKSTEIN:  Your Honor, good afternoon.  Kenneth

10  Eckstein, Kramer Levin, on behalf of the creditors' committee.

11  I simply want to reiterate Mr. Lee's observations which I think

12  are a good summary of a great deal that's been accomplished.

13  We're extremely pleased by the breadth of consensus that we've

14  been able to achieve with an innumerable number of parties.

15  And while there are a few individual creditors that we think we

16  still need to speak to, we feel that the PSA reflects a level

17  of consensus that was, I think aspirational only a few weeks

18  ago.  And hopefully that will provide the framework for a plan

19  that can be considered and hopefully confirmed efficiently and

20  quickly.

21         There's a lot to do over the next four weeks.  And we

22  obviously view the filing of the plan and the disclosure

23  statement to be a critical next step.  But we have, we think, a

24  sufficiently good framework, that hopefully most of the

25  business issues that have to be wrestled to the ground have

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1    already been framed in the plan support agreement.  And we

2    think that the process that we have right now is one that will

3    allow us to file the plan and disclosure statement by July 3rd.

4    And it would be, obviously, I think, useful for everybody to

5    try to identify schedules for both disclosure and confirmation,

6    which obviously give people adequate opportunity, in a case of

7    this size and complexity to deal with important documents, but

8    at the same time, hopefully allow us to meet a schedule that is

9    laid out in the initial term sheet.

10           And I don't know whether Your Honor had an occasion to

11    see the proposed schedule, but there is a confirmation goal, I

12    believe, at the end of October.  And hopefully we've allotted

13    enough time to deal with both notice and due process and with

14    the Court's schedule, so that we can meet the October

15    confirmation schedule.

16           We're obviously open to whatever questions Your Honor

17    has.  But we believe we've reached a very significant milestone

18    in this case and we appreciate the opportunity to note that.

19           THE COURT:  Thank you, Mr. Eckstein.

20           Mr. Siegel?

21           MR. SIEGEL:  Your Honor, Glenn Siegel on behalf of

22    Bank of New York Mellon.  I'm also speaking for the other RMBS

23    trustees.  First of all, I think we'd all like to echo the

24    comments by both Mr. Lee and Mr. Eckstein about the settlement,

25    the importance and the magnitude of the settlement.  As Your

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1    Honor knows, the settlement in some ways is a continuation of

2    the 9019 process as it relates to the trustees.  And the -- we

3    contemplate and we are asking the Court, to make certain

4    findings in the Court's order.

5            In connection with those findings and in order to

6    establish a record that would be sufficient for Your Honor to

7    sign the order, we expect that no later than June 10th -- I'm

8    sorry, June 12th -- I took two days away from myself -- June

9    12th, we will be filing a joinder to the motion which will have

10   attached to it affidavits from each trustee explaining the

11   basis upon which they believe it's appropriate to enter the

12   order.

13           Each one of the parties signing those affidavits will

14   be available for testimony.  And hopefully, when Your Honor

15   reviews that, we will be in a position to get the findings that

16   we believe we need for the order.

17           THE COURT:  Let me -- because I had on my list, and I

18   may as well address it, since you're up there.  I noted that in

19   Section 5.2 of the PSA, it required these specific findings.

20   And I certain recall from when the RMBS trial was being

21   scheduled, what the background about the trustees wanting such

22   findings.  So your statement that -- one of the things that was

23   on my list was to set a schedule for the filing of whatever

24   affirmative evidence was going to be offered.

25           I'm a little concerned when you say June 12th, because

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    I mean, at this stage, Mr. Siegel, I don't know whether this is

2    going to turn into a contested hearing or not.  I want to be

3    sure, if this is going to be a contested factual hearing, that

4    parties have an opportunity to depose the declarants -- and

5    I'll set time limits on -- I don't know how many -- how many

6    declarants do you anticipate at this point?

7              MR. SIEGEL:  Well, I would think it would be one for

8    each trustee.  That would be --

9              THE COURT:  So five trustees?

10             MR. SIEGEL:  Yes, by trustee, exactly.

11             THE COURT:  So there are five trustees?

12             MR. SIEGEL:  There are -- there are five main

13   trustees, let's just say that.  The Wells Fargo trusteeship, if

14   you will, is actually divided into Wells and Law Debenture,

15   dealing with what's called a TIPS (ph.) proceeding and then a

16   SODA, and certain issues are delegated to them, and so forth.

17   And we also have HSBC.  So it's five or six, depending on how

18   you count.  But that's what we're talking about, the universe.

19             THE COURT:  So my concern -- and I know you want as

20   much time as you can get -- but my concern is that June 12th

21   for filing those declarations is potentially cutting matters

22   short, whether it's five or seven or six declarants.  People

23   are entitled to see what that testimony looks like.  And I'm

24   going to make them decide pretty quickly whether -- I don't

25   know.  Have you picked up in the wind that this is going to be

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1    a contested hearing?

2            MR. SIEGEL:  Your Honor, we've not.  At least I have

3    not heard anything from any certificate holders about the

4    settlement.  Obviously, I can't know for sure.  We had thought

5    that two weeks prior to the hearing would be sufficient, which

6    is why we picked that date.  If Your Honor thinks more time is

7    appropriate --

8            THE COURT:  Well, I'm going to move it up to June

9    10th.  You wanted -- you mistakenly gave yourself two more days

10   than I'm prepared to do.

11           MR. SIEGEL:  Well, it's your decision.

12           THE COURT:  And I'm being generous with you at that,

13   so, okay?

14           MR. SIEGEL:  I understand, Your Honor.  So then it's

15   June 10th.

16           THE COURT:  Yes, 5 o'clock, Monday, June 10th.  Let me

17   make myself a note.

18           And then I'm going to set Thursday, June 13th at 5

19   o'clock as a deadline for any requests by any party to depose

20   any of the declarants.  And the depositions, if any, are to be

21   completed by 5 o'clock, Thursday, June 20th.  And I'm going to

22   limit depositions to three hours in length.  I understand the

23   issues are important, but I still think it's a fairly narrow

24   set of issues.

25           MR. SIEGEL:  Well, Your Honor, the -- we anticipate

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1   that since we've acted collectively, that the affidavits will

2   be virtually identical.

3             THE COURT:  That's fine.  But I still want to give --

4             MR. SIEGEL:  No, understood.

5             THE COURT:  They're different trusts and different

6   trustees, and okay.  So hopefully not everybody will --

7   hopefully nobody will be deposed, it won't turn into a

8   contested hearing, it'll short circuit this whole process.  But

9   I just want to be sure that if it does turn into a contested

10  hearing, that we move this along.  And then -- so in addition

11  to your declarations on the 10th, whatever briefs or memoranda

12  you're going to file that same date?

13            MR. SIEGEL:  Yes.  We anticipated what I refer to as

14  the joinder --

15            THE COURT:  That's fine.

16            MR. SIEGEL:  -- as containing the law on it as well.

17            THE COURT:  That's fine.  And then Monday, June 24 --

18  actually Monday, June 24 at noon for any objections.  Well, I

19  guess there was already --

20            MR. SIEGEL:  There's already a date.

21            THE COURT:  You set an objection deadline.

22            UNIDENTIFIED SPEAKER:  June 19th.

23            THE COURT:  I'm sorry, June 19th.  The problem is I'm

24  trying to -- that's fine, unless there's these -- if

25  depositions -- that was the problem.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

25

1        MR. SIEGEL:  Your Honor, perhaps --

2        THE COURT:  It's hard to fit this in if this turns

3    into a contested factual hearing.

4        MR. SIEGEL:  Is it appropriate, then, to say for those

5    who conduct depositions, they have till the 24th, and for

6    others, they have till the 19th?

7        THE COURT:  You know what, I'm going to set -- I'm

8    going to move everybody's deadline --

9        MR. SIEGEL:  I'm hearing no, so let's not.

10       THE COURT:  -- everybody's deadline is --

11       MR. SIEGEL:  All objections the 19th, then.

12       THE COURT:  -- is Friday, June 21st, at noon.  Go

13   ahead, Mr. Eckstein.  Go ahead.  What do you want?

14       I'm just concerned, Mr. Eckstein -- hopefully this is

15   all going to be -- not become pertinent, but I just --

16       MR. ECKSTEIN:  Your Honor, I was just going to

17   suggest, I think there's been a lot of notice of this motion.

18   Typically, this motion would have been heard much earlier, but

19   really to give -- to accommodate the trustees' needs for notice

20   to a large universe of claimants --

21       THE COURT:  Rights.

22       MR. ECKSTEIN:  -- we actually put this on for thirty-

23   five days after the motion was filed.  So by rights, general

24   objections to the motion, hopefully can be filed -- we thought

25   the 19th was the latest we would have objections filed to the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1    motion.

2            THE COURT:  All right.  I'm going to leave that date.

3    That's fine.  If people don't like it, that's fine.

4            So the other thing I'm going to do, then, is I'm going

5    to keep this train -- everybody's been operating under very

6    tight schedules.  So the deadline for completing the

7    depositions is Wednesday the 19th at noon, and 5 p.m. on the

8    19th for objections.  Okay.

9            MR. ECKSTEIN:  Okay.

10           THE COURT:  And hopefully this won't be -- will turn

11   out not to be necessary.  I just want to be sure -- the PSA is

12   important and I want to keep this moving forward, keep you on

13   the schedule that you've all set.  And I'm just -- but because

14   of the specific factual findings that the trustees are asking

15   for, I want to be sure that I've got an adequate record on

16   which to make factual findings.

17           Does anybody else want to be heard on the issue of the

18   schedule?  We'll get to other issues, but just on this issue of

19   the schedule for the PSA hearing?  Okay.

20           MR. SIEGEL:  Thank you, Your Honor.

21           THE COURT:  Thanks, Mr. Siegel.

22           MR. ECKSTEIN:  Your Honor, if I may?

23           THE COURT:  Go ahead, Mr. Eckstein.

24           MR. ECKSTEIN:  I guess, just to complete the schedule,

25   if objections are due on the 19th, when would the Court want to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1    see responses?

2                THE COURT:  Reply would be Monday the 24th at noon.

3                MR. ECKSTEIN:  Fine.  Thank you, Your Honor.

4                THE COURT:  Okay.  Mr. Uzzi?

5                MR. UZZI:  Good afternoon, Your Honor.  Gerard Uzzi of

6    Milbank Tweed Hadley & McCloy on behalf of the ad hoc group of

7    junior noteholders.  Your Honor, I was before you a few weeks

8    ago.  And I urged the Court to give the parties one more day to

9    try and reach an agreement.  And when I made that urging, Your

10   Honor, as you may recall, I said I was out in front of my

11   clients; I wasn't part of the discussion; I didn't know what

12   the agreement was going to look like.  And I even said that I

13   might even hate the agreement when it comes out.

14               But notwithstanding that, that the Court should give

15   the parties another day to reach the agreement.  And if we

16   hated the deal, we would deal with our issues in due course.

17   And the reason why I said all those things, Your Honor, was

18   that it was the right thing at that time for these cases so

19   that they could be advanced.

20               So they reached an agreement, Your Honor.  And we find

21   ourselves, as junior secured noteholders, confronting certain

22   issues.  First and foremost is, what do we think of the deal?

23   Do we like it, do we hate it?

24               THE COURT:  I bet I know what part you don't like.

25               MR. UZZI:  Well, we certainly don't like the deal,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   Your Honor.  But I don't think we were anticipating liking the

2   deal out of the box.  I -- not that there wasn't some hope for

3   that, but we were realistic.

4        I can't say whether we hate the deal or we're

5   indifferent to the deal, Your Honor, as I stand here today,

6   because we don't really understand the deal.  There's several

7   inconsistencies in the agreement.  And we've reached out --

8   we've already started a dialog with parties as to what the

9   intent is with respect to us.  And we're candidly getting some

10  mixed messages.  And I'm not terribly surprised about that,

11  given the number of parties that are involved.

12       But we -- I'm encouraged by Mr. Lee's comments of

13  recognizing that we're outside the deal right now, and wanting

14  to sit down with us, and we --

15       THE COURT:  Well, you're not completely outside the

16  deal, but you're --

17       MR. UZZI:  Well, Your Honor, I think in fairness --

18       THE COURT:  You didn't sign --

19       MR. UZZI:  We didn't sign the agreement.  And to say

20  that we're getting our full par plus pre-petition, well, I

21  don't think there's any mathematical chance that we weren't

22  going to get that anyway.  So capitulation on an academic

23  point, I don't think, brings us into the deal.

24       Our real issue has always been in this case whether or

25  not we're entitled to post-petition interest.  And there is a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1    significant question, Your Honor, both substantively and

2    procedurally, what this plan does with respect to our rights.

3    And so that's what we need to understand.  And when I said we

4    don't understand the deal, we don't understand substantively

5    and procedurally what they plan to do with respect to us.

6            THE COURT:  Well, it's -- let me interrupt you,

7    because --

8            MR. UZZI:  Yes.

9            THE COURT:  -- among the list of questions I had is

10   really getting to exactly what you're asking about.  And so the

11   supplemental term sheet in the section entitled "Treatment of

12   JSN claims", I won't read it, it says what it says.  The term

13   sheets are silent about the intention of the parties with

14   respect to the two adversary proceedings pending against the

15   JSNs.  Are they going to continue to be litigated?  Should a

16   scheduling order be entered in connection with those

17   proceedings?

18           One question I have for Mr. Lee and Mr. Eckstein is,

19   does a consensual resolution of the issues with the JSNs

20   require approval of each of the plan proponents and the

21   consenting claimants?  And if a consensual resolution is not

22   reached and the Court determines that the JSNs are oversecured

23   and entitled to post-petition interest, do the parties to the

24   PSA term sheet and supplemental term sheet have the right to

25   terminate those agreements?  All of that was unclear.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1         I mean the term sheets -- the term sheet -- the

2    supplemental term sheet provided that the JSNs are going to get

3    paid their principal and pre-petition interest.  It says

4    they're undersecured.  No post-petition interest.  And I'm --

5    it's quite unclear to me, Mr. Lee and Mr. Eckstein, what hap --

6    if as -- it doesn't describe procedure other than -- I hope you

7    all resolve this -- but assuming you don't resolve it, to keep

8    this moving forward expeditiously, it seems to me that you all

9    need to make the maximum effort quickly to see whether you can

10   consensually resolve the issues.

11        If you can't, then I don't know whether it's going to

12   be in the form of the pending adversary proceedings or

13   something else.  We need to move forward quickly, if you can't

14   resolve it, to determine whether the JSNs are entitled to post-

15   petition interest.  And so that's where I get to the issue

16   about scheduling.  And time spent trying to settle it is

17   probably better used than time spent litigating it at the

18   moment.

19        But I do have this real question about so if you don't

20   resolve it and I go ahead and agree with Mr. Shore and Mr. Uzzi

21   that the JSNs are oversecured and are entitled to post-petition

22   interest, I scoured that term sheet several times, and it

23   looked to me that maybe people could blow it up, because you

24   said the plan will provide that they're undersecured.  And you

25   didn't say what happens if the Court determines otherwise.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1          MR. UZZI:  Well, and, Your Honor, that's exactly

2     right.  And we have -- and I'll let Mr. Lee and Mr. Eckstein

3     speak for themselves -- on certain issues we've been given some

4     clarity on.  We have started negotiations.  And I appreciate

5     how hard all the parties have worked leading into Memorial Day

6     weekend.

7          THE COURT:  Well, in fairness to the rest of them, I'm

8     not -- for a variety of reasons I won't go through now, your

9     clients did not participate.  They were invited to, but

10    principals did not participate in the mediation.  So if -- this

11    could have been resolved, in my view, Mr. Uzzi.  Your clients,

12    maybe for good and sufficient reason, decided that they

13    wouldn't sign the necessary confidentiality agreement.  I

14    understand they didn't want to become restricted.  They didn't.

15    They weren't in the -- so they're not in the tent.  So you had

16    your chance.

17         MR. UZZI:  Well, Your Honor, to the extent that that

18    remains relevant, I just -- we were prepared to become

19    restricted.  We had a dispute over the appropriate terms of a

20    confidentiality agreement that I don't think we need to go into

21    today --

22         THE COURT:  Let's not reargue that, because it's water

23    under the bridge, Mr. Uzzi.

24         MR. UZZI:  Well, I agree, Your Honor.  Except that to

25    the extent that my clients are somehow now put in a box -- a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1    penalty box, that I do think I need to address that issue.

2            THE COURT:  They're not put in a penalty box, okay?

3    You're either going to resolve this consensually or we're going

4    to have a very tight schedule for the Court to go ahead and

5    deal with it.  But I need to know if the committee, the

6    debtors, and the consenting creditors take the position that if

7    the Court determines that the JSNs are oversecured, we can walk

8    away from -- this deal doesn't apply.  I mean, I want to know

9    that.

10           MR. UZZI:  Your Honor, and I agree.  And I think

11   that's the first question.  And we would like clarity on that

12   as well.  There are a host of other questions, though, that are

13   necessary to understand, for us to determine what our position

14   is with respect to this plan.

15           Your Honor, we hope to -- we expect to engage in

16   conversations -- well, we've already started, Your Honor.  Let

17   me say that.  Those conversations can take many forms.  We

18   would like to be part of a consensual deal if we can.  Even if

19   we can't, we would prefer to narrow as many issues as we

20   possibly can.

21           THE COURT:  Well, the debtors now made a motion to go

22   ahead and pay 800 million dollars.  I mean, you can't be too

23   unhappy.

24           MR. UZZI:  Your Honor, I think we settled that.  Even

25   that has some issues to it.  So Your Honor, what we would like

**RESIDENTIAL CAPITAL, LLC, ET AL.**

33

1    to do, and what we're hoping to do, and the reason why I rose,

2    is to engage in discussions with the parties, not only on the

3    substance, but on the procedure.  We'd like to be part of a

4    consensual plan if possible.  And even that takes many forms.

5            Even if we can't resolve our issues with respect to

6    whether or not we're entitled to post-petition interest because

7    we're oversecured, doesn't mean we can't maybe resolve the plan

8    issues and put those aside and let those go and let us have our

9    otherwise --

10            THE COURT:  I'm not sure anybody, including me, is

11   going to want to put it off.  I mean, it --

12            MR. UZZI:  Well, it --

13            THE COURT:  -- no.  Just don't interrupt.

14            MR. UZZI:  I'm sorry, Your Honor.

15            THE COURT:  Don't interrupt.  I'm not anxious to see

16   it put off.  And if necessary, I'm prepared to go ahead and

17   deal with it.  If we have to have a contested evidentiary

18   hearing, that's what we're going to go ahead and do.  There's

19   plenty of time between now and October, in my view, Mr. Uzzi.

20            So don't count on it being put off.  I mean, you need

21   to resolve it.  It'll either be resolved consensually or you're

22   going to be on an extremely tight schedule and the Court will

23   go ahead and have whatever evidentiary hearing is needed.

24            MR. UZZI:  And Your Honor, we are prepared to have our

25   day in court on whatever schedule the Court believes is

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    appropriate.  And we're prepared to have our issues determined

2    in connection with confirmation.

3            THE COURT:  It probably will be before.  I'm not going

4    to -- this is going to get resolved before a confirmation

5    hearing.  So if we wind up with a confirmation hearing in

6    October, you're probably going to have a trial in September,

7    which is going to make it a very busy summer for you..

8            MR. UZZI:  And we're prepared to work all summer on

9    this, Your Honor.  That's quite all right.  What we're trying

10   to do, Your Honor, is to make this as efficient and painless as

11   possible for the parties, including the Court.  And we'll take

12   whatever guidance the Court wants to provide --

13           THE COURT:  So the first thing you need to do is you

14   need to spend the next week in serious discussions with the

15   other parties, making an all-out effort to resolve it.  And if

16   you can't, we're going to have a scheduling conference, and you

17   need to negotiate a proposed schedule that would -- Mr.

18   Eckstein or Mr. Lee, I think -- I don't know whether there's

19   going to be -- what was the date of the confirmation --

20           MR. LEE:  Your Honor, I think we had it set for August

21   the 14th.

22           THE COURT:  I'm talking about confirmation.

23           MR. LEE:  Oh, the confirmation hearing.  October --

24           MR. ECKSTEIN:  October -- we didn't pick a --

25           MR. LEE:  I don't think we picked a date.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1          MR. ECKSTEIN:  I think there's a deadline of October

2     30th.

3          THE COURT:  Well, let's put it this way.  I'm not

4     going to set specific dates right now, but I -- if there's

5     going to be a trial on whether the JSNs are oversecured or

6     undersecured, it's probably going to be somewhere around the

7     week of October 7th or something like that, so that things can

8     get resolved in advance of confirmation.

9          Mr. Eckstein, I'm not going to give you a -- I'm not

10    going to set a specific date.  But that's the rough time frame

11    in which it could happen.  So you can start working backwards

12    from that and figure out a schedule.  And I assume we'll have

13    the little exercise of experts all over again, and valuation

14    testimony and, I don't know whether you've ever resolved what's

15    the collateral for the junior secured notes.  I know that that

16    was a contentious issue.  I guess that was part of the

17    committee's adversary proceeding, I think.  Is that right, Mr.

18    Eckstein?

19          MR. ECKSTEIN:  Correct.  That's correct, Your Honor.

20          THE COURT:  So there are issues -- what's the

21    collateral?  What's the value of the collateral?  Spend the

22    next week trying to resolve this.

23          MR. ECKSTEIN:  Your Honor, if I may?

24          THE COURT:  Go ahead, Mr. Eckstein.

25          MR. ECKSTEIN:  I didn't mean to interrupt Mr. Uzzi.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

36

1   But just on this point, we've thought about how to try to deal

2   with this issue.  And as Your Honor pointed out, the JSNs

3   ultimately didn't participate in the mediation.  And while we

4   don't need to revisit all the specifics, the reality was, we

5   didn't have businesspeople from the JSNs at the table.  And so

6   we were somewhat handicapped.

7          And while I would expect Mr. Uzzi to make -- somewhat

8   to make light of the treatment, the reality is, this is

9   treatment that the JSNs were striving for when they signed

10   their original PSA.  And it is -- we think --

11          THE COURT:  I don't want to revisit that.  Okay?  The

12   term sheet -- the supplemental term sheet provides what it

13   provides.  I understand.  The issue's either going to get

14   resolved consensually or if it has to --

15          MR. ECKSTEIN:  Correct.

16          THE COURT:  -- be litigated.  But I am concerned about

17   the issue I raised -- because when I read the term sheet and

18   supplemental term sheet -- is who's got to approve any

19   agreement with the junior secured notes?

20          MR. ECKSTEIN:  That issue -- the parties to the plan

21   support agreement have to approve an agreement with the junior

22   secured notes.

23          THE COURT:  And if there's no agreement -- no

24   consensual agreement, and the Court goes ahead and tries it,

25   and let's say I come out and conclude that they're oversecured

**RESIDENTIAL CAPITAL, LLC, ET AL.**

37

1   and entitled to post-petition interest?

2           MR. ECKSTEIN:  Your --

3           THE COURT:  It was unclear --

4           MR. ECKSTEIN:  Your Honor --

5           THE COURT:  -- it was genuinely unclear to me whether

6   anybody has the right to walk from the PSA at that -- if I

7   approve the PSA, and you don't reach a consensual ag -- it's

8   one thing to say everybody's got to agree on a consensual

9   agreement.  But it was unclear to me -- and I'm not sure --

10  this issue better get resolved as to what happens, before June

11  26th.  Okay?  Because I want to know -- I don't know that I

12  want to go forward and approve a PSA where this issue of the

13  JSNs hangs out, and then you all have the right to walk if I

14  have a trial and conclude that they're oversecured.

15          MR. ECKSTEIN:  We understand that issue, Your Honor.

16  We anticipated that issue.

17          THE COURT:  So that has to be clarified.

18          MR. ECKSTEIN:  I think the Court will be satisfied in

19  the way that issue is handled.

20          THE COURT:  Okay.  All right.

21          MR. ECKSTEIN:  We're not -- there is no intention to

22  hold the Court hostage on this issue whatsoever.  And that was

23  not --

24          THE COURT:  Okay.

25          MR. ECKSTEIN:  -- that was not anticipated by anybody.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

38

 1    And this group has, I believe, remarkably shown an ability to

 2    get consensus on how to resolve a lot of difficult issues --

 3            THE COURT:  Mr. Eckstein, I'm amazed by what you

 4    accomplished.  I really -- it's -- and I don't underestimate

 5    the effort that went into it.  So but this was one of the --

 6    when I read this over, this was obviously one of the questions

 7    that I had.

 8            MR. ECKSTEIN:  And we are -- I believe we're on the

 9    same wavelength as the Court in terms of we do not want this

10    issue held off post-confirmation.  We think that if we can't

11    get a resolution, we think what Your Honor suggests is

12    absolutely the right way to proceed.  And we'll get an answer.

13    We'll have an answer.  And it will not hold up this plan.

14            THE COURT:  Okay.

15            MR. ECKSTEIN:  And we think that October 7th, that

16    time frame, is the right time frame.

17            I just wanted to make one or two observations

18    procedurally.

19            THE COURT:  Go ahead.

20            MR. ECKSTEIN:  Because we thought about this, Your

21    Honor.  There is -- there are two separate -- there are three

22    different proceedings pending right now on the JSNs.  One is

23    cash collateral, which is on for June 12th.  We'll deal with

24    that between now and June 12th.  The second is the committee's

25    adversary proceeding on the scope of the potential challenges

**RESIDENTIAL CAPITAL, LLC, ET AL.**

39

1    to liens and a potential challenge to claims -- that is the OID

2    issue.  It's a complex adversary proceeding.  There's a motion

3    to dismiss pending for June 12th.  And I believe it's set down

4    for hearing on June 12th.  It's been briefed.

5            And our suggestion is that unless we have an agreement

6    between now and June 12th, we should argue the motion to

7    dismiss, and at least allow the Court to hear the argument so

8    that it can be sub judice.  And we think that actually may

9    facilitate discussions between the consenting claimants and the

10   JSNs to resolve the issues.  And so we actually think that we

11   should keep that on the calendar, go forward as scheduled on

12   the 12th, and argue it and present it to the Court.

13           THE COURT:  So I -- and I want to make clear.  I'm not

14   sure whether I'm going to hear argument on it before the

15   hearing on the PSA.  The reason I say -- assuming -- the PSA

16   gets approved, the examiner's report becomes public.  And I

17   certainly -- I understood and agreed that everybody who entered

18   into the PSA and term sheet did so with their eyes wide open

19   that there's this examiner's report that's under seal.  Okay?

20           There are lots of issues that it will enlighten people

21   about, certainly as to the examiner's view of the issues.  And

22   so I'm not committing at this point -- even if I hear argument,

23   don't expect to get a decision.

24           MR. ECKSTEIN:  I was not.

25           THE COURT:  So, but we'll see.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

40

1          MR. ECKSTEIN:  What I was going to suggest, Your

2     Honor, simply, was -- and we had beend -- I had understood Your

3     Honor did not want to delay that proceeding.  Obviously if Your

4     Honor chooses to defer it.

5          THE COURT:  I have to -- and I'll tell you, I haven't

6     read the motion yet.

7          MR. ECKSTEIN:  What I was going to suggest, and we can

8     await Your Honor's reaction on that, was we either are going to

9     reach a business resolution over the next few weeks, certainly

10    before a plan is filed.  We're going to either reach an

11    agreement or not.  It's a small group.  It's not a wide,

12    dispersed group.  We're either going to reach an agreement --

13    now that there's no longer the same burden with restriction, we

14    can speak to the JSNs openly.  And we think we can either make

15    progress or not make progress.

16          If we can't reach a resolution, I think consistent

17    with Mr. Uzzi's comments, if we can't reach a resolution, we

18    think we would take the two adversary proceedings, both the

19    debtors' declaratory judgment action and the committee's

20    adversary proceeding, probably consolidate it into a single

21    proceeding, and we would anticipate a trial during the early

22    part of October.

23          THE COURT:  Okay.  So take the next week to see what

24    progress you're making to resolving it.  If you're not getting

25    anywhere -- and we'll arrange a telephone status conference.  I

1  don't want to know details of settlement negotiations, but I

2  want to know where things are.  If people think they're getting

3  close, they're optimistic, Judge Peck will be back from -- I

4  don't know where -- he's back from his trip soon.  He's

5  certainly available -- I'm committing him.  Just to jump ahead

6  on the agenda, I put on my list of things, the mediation order

7  expires on May 31.  I was going to prevail on Judge Peck to

8  agree that I can extend it again.

9      I haven't asked him yet.  But he's pretty bought into

10  this process.  So I assume he'll agree.  And make use of Judge

11  Peck to see -- to the extent -- look, you're all sophisticated,

12  you can all do this on your own.  But you really need to make

13  the full court press to try and get this resolved before you go

14  spending everybody's time and money on a litigation war again.

15      MR. ECKSTEIN:  We will definitely reinvolve Judge Peck

16  in this.  And we will pursue --

17      THE COURT:  Okay.

18      MR. ECKSTEIN:  -- I think, what Your Honor suggested.

19      THE COURT:  That's fair.  Mr. Uzzi, I cut you off.  Do

20  you have anything else you want to add?

21      MR. UZZI:  No, Your Honor, other than we agree.

22      THE COURT:  Okay.

23      MR. UZZI:  We would like to get this done as

24  efficiently as possible, Your Honor.

25      THE COURT:  Okay.  All right.  Thanks very much.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

42

1           All right, does anybody else want to be heard?

2           MR. COHEN:  Yes, Your Honor.

3           THE COURT:  Hang on --

4           MR. COHEN:  On the phone.

5           THE COURT:  Wait, wait.  Hold on.  Let me get

6    everybody in the courtroom, and then I'll call you.

7           Mr. Golden?

8           MR. GOLDEN:  Good afternoon, Your Honor.  Daniel

9    Golden; Akin, Gump, Strauss, Hauer & Feld.  Your Honor, my firm

10   represents UMB as the indenture trustee for the junior secured

11   notes in connection with defending against the two actions that

12   Mr. Eckstein referred to, the committee action and the debtors'

13   action.

14          Your Honor, I think it's -- actually, we applaud the

15   Court's comments about taking the next week, next ten days, see

16   if this can be resolved as a business matter.  I think

17   that's -- I think everybody would agree, that's preferential.

18   If it cannot, though, we would like to take Your Honor up on

19   the suggestion about setting a date for a telephonic

20   conference --

21          THE COURT:  I want a conference in about -- I want a

22   telephone conference in about a week.  And I'll find out where

23   things stand.  And you ought to be negotiating a schedule.  You

24   know, if you get to the -- you're not getting close by the end

25   of the week, hammer out a schedule.  I've given you the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

43

1   rough -- the time parameters that I'm talking about.  As I'm

2   not sure you've been here at prior hearings, I generally, at

3   any significant matter, require that I get all of the papers in

4   connection with a trial, one week before the start of the

5   trial.

6          MR. GOLDEN:  I understand.

7          THE COURT:  All exhibits, all -- I assume this would

8   be direct testimony in written declaration form, with the

9   declarants available for cross-examination.  It's what was

10  happening with respect to the RMBS trial.  That's what I would

11  anticipate doing, unless someone persuades me that it

12  shouldn't.  So but I usually insist I get the full package of

13  everything one week before the start of the trial.

14         MR. GOLDEN:  Understood.  And I think the status

15  conference would be helpful because if there's not a business

16  solution, there are procedural issues.  There is, for example,

17  a discovery schedule set with respect to the committee action.

18  There is no discovery schedule set with respect to the debtors.

19         THE COURT:  I'm going to set a --

20         MR. GOLDEN:  Whether to consolidate or not --

21         THE COURT:  -- we're going to -- it ought to be

22  consolidated.  We're only going to do it once.  It's the same

23  discovery schedule.  So you work that all -- people have not

24  had any trouble working out the schedules on anything else

25  here.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

44

1          MR. GOLDEN:  And I don't anticipate we'll have --

2          THE COURT:  Okay.

3          MR. GOLDEN:  -- that.  Thank you.

4          THE COURT:  Thanks, Mr. Golden.  All right, anybody

5     else want to be heard?  Mr. Masumoto?

6          MR. MASUMOTO:  Thank you, Your Honor.  I appreciate

7     your ruling earlier, moving the hearing on the motion to unseal

8     to the 26th.  So just in terms of the scheduling, I wanted to

9     verify for the Court -- verify procedurally whether or not

10    objections are also moved?  Would it be the 19th, similar to

11    the --

12         THE COURT:  Yes.

13         MR. MASUMOTO:  -- these other matters?

14         THE COURT:  Yes.

15         MR. MASUMOTO:  I did want to state, also, for the

16    record, the position that we had articulated prior to the --

17    your on-the-record sealing the last time, that from our

18    standpoint, the U.S. Trustee believes that Section 107 has to

19    be satisfied for sealing purposes, and that Section 105 should

20    not be used as a means of circumventing it.  But --

21         THE COURT:  It's going to be unsealed, Mr. Masumoto.

22    It's -- if the PSA is not approved it gets unsealed.  If the

23    PSA is approved, it gets unsealed.  It was always going to be

24    unsealed.  This is going to be a public document.

25         MR. MASUMOTO:  I understand, Your Honor.  I just had

**RESIDENTIAL CAPITAL, LLC, ET AL.**

45

1    to formally state our position for the record.

2              THE COURT:  That's fine.

3              MR. MASUMOTO:  Thank you, Your Honor.

4              THE COURT:  Okay, Mr. Masumoto.

5         Anybody else want to be heard?  All right, let me

6    raise some other questions that you can -- I think more

7    factual --

8              MR. COHEN:  Your Honor --

9              THE COURT:  All right.  Go ahead.  Yes, go ahead.

10             MR. COHEN:  Nelson Cohen of Zuckerman Spaeder on

11   behalf of the National Credit Union Administration Board.  We

12   are the holder of claims -- securities claims for approximately

13   300 million dollars.  Like others who have spoken, there is a

14   lot about this we do not understand, particularly the treatment

15   set forth in the supplemental term sheet.

16        We have reached out to both the committee and the

17   debtors with a number of our concerns.  We have heard back from

18   the committee indicating that they are prepared to meet with us

19   expeditiously to try to resolve issues.  We have not heard from

20   the debtors, at this point, and would like to hear from the

21   debtors in terms of what type of a schedule they have in mind

22   regarding resolving issues.

23             THE COURT:  I'm sure you're going to hear from Mr. Lee

24   shortly.  Okay?  We don't --

25             MR. COHEN:  Thank you, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1      THE COURT:  -- okay?  Anybody else wish to be heard?

2      All right.  Mr. Lee, I have some questions.  I just

3  want to make sure I understand what's proposed.

4      So the term sheet provides, in the section titled

5  "Plan and Disclosure Statement" that "Nothing in the plan shall

6  reduce or in any way impair recoveries to the FHFA and the

7  FDIC."  It goes on.  And then that same section provides that

8  "The supplemental term sheet and the plan will provide that the

9  FHFA and FDIC will not receive any recovery from any securities

10  litigation trust established under the plan.  And the FHFA and

11  FDIC shall retain all such securities claims against Ally."

12      So I guess I'd like a better understanding of how --

13  well, first of all, did the FHFA and FDIC file securities

14  claims in this Chapter 11 case?

15      MR. LEE:  Your Honor, the FHFA did, and the FDIC did

16  not.

17      THE COURT:  Okay.  And since --

18      MR. LEE:  The notion -- the notion -- I'm sorry.

19      THE COURT:  -- how are going to deal with the FHFA

20  securities claims?

21      MR. LEE:  Your Honor, without divulging what went on

22  in the mediation, the nub of it was because of a peculiar

23  position that the FHFA was in, that it would be easier and I

24  think appropriate for them to effectively have been carved out

25  of the plan and the plan structure.  So as a practical

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    matter --

2              THE COURT:  I see that they're carved out.

3              MR. LEE:  Yes.

4              THE COURT:  But what was unclear to me is, you create

5    a separate securities litigation claim trust for those

6    securities claimants who are part of, and maybe yet join the

7    PSA.  And it would allocate a specific dollar amount to that

8    trust.  What was unclear to me, so what happens to those who

9    aren't -- who don't fit within the trust and do have securities

10   claims?

11             MR. LEE:  Your Honor, they'll be treated as general

12   unsecured creditors to the extent to which they have claims

13   against the estate.  So in effect, you'll either join trust 1

14   or trust 2.  And if you don't fit within the rubric of trust 1

15   or trust number 2, then you're effectively an unsecured

16   creditor, to the extent to which you are an unsecured creditor.

17             THE COURT:  So -- I'm sure you've thought about this.

18   Does that create issues about unfair discrimination?

19             MR. LEE:  With respect -- well, Your Honor, the

20   securities claimants, I mean, either face a 510(b) issue, or in

21   the alternative -- which is part of what gets resolved as part

22   of the plan -- in the alternative, the extent to which they

23   have claims against Ally, they're being paid as part of the

24   trust in the trust structure.  So I don't believe that's the

25   case.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

48

1          THE COURT:  Okay.  All right.  And I'm sure you saw

2     that Judge Swain issued an order in connection with the FDIC

3     action.  She read about the settlement here, and she asked for

4     filings explaining to her what, if any, impact it has on the

5     case -- the FDIC case before her.  Obviously, it is express --

6     FDIC is expressly carved out.  I've had no communication with

7     Judge Swain about it at all.

8          It's certainly -- Judge Cote has the FHFA case, as I

9     read again today, of a new settlement that FHFA has reached,

10    that resulted in the dismissal of the FHFA complaint against --

11    I can't remember which --

12          MR. LEE:  Citibank.

13          THE COURT:  -- Citibank, right.  And there've been

14    some prior settlements before.  I don't know, and I don't want

15    to know the details.  I don't know whether you're still trying

16    to see whether -- and this may affect Ally more than the

17    debtors -- whether there are still efforts underway to see if

18    you can settle with FHFA.

19          MR. LEE:  Your Honor, the FHFA was very much a part of

20    the mediation discussions.  There have been separate mediation

21    sessions with the FHFA.  I mean, discussions were certainly

22    ongoing through last week.

23          As regards to the FDIC, I believe, Your Honor, the

24    extent to which the extend-stay motion had been extended to

25    them, that carve-out will now -- I think there will be a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**49**

1   supplemental order filed so that, as I said, that -- those

2   actions will continue as between AFI and FDIC, without any

3   interference from us.

4          THE COURT:  Mr. Schrock, any -- is there an effort to

5   see whether you can get FHFA and FDIC wrapped into a global

6   resolution?

7          MR. SCHROCK:  Your Honor, Ray Schrock --

8          THE COURT:  And I don't want to know the details of

9   what, obviously, are the discussions but --

10         MR. SCHROCK:  Your Honor, Ray Schrock of Kirkland &

11  Ellis on behalf of AFI and Ally Bank.

12         Your Honor had it correct that the FDIC and an FHFA

13  are carved out from the third-party release that's contained in

14  the plan.  They do have their claims, whatever claims those

15  might be, against the debtors.  And --

16         THE COURT:  But --

17         MR. SCHROCK:  -- you were raising --

18         THE COURT:  -- Mr. Lee just told me the FDIC didn't

19  file a securities claim.  I guess --

20         MR. SCHROCK:  Well, whatever those --

21         THE COURT:  -- they would participate through the RMBS

22  settlement, with whatever the distribution would be under that.

23         MR. SCHROCK:  Right.  Yes, the -- yes, Your Honor.

24  Those -- whatever those claims may be or aren't, you know,

25  against the debtors --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

50

1          THE COURT:  Right.

2          MR. SCHROCK:  -- are reserved under the plan.  And I

3    think AFI's always open to trying to consensually resolve

4    litigation.  But to the extent which they may or may not

5    resolve that third-party litigation that's carved out from the

6    plan is yet to be seen.  But we'll certainly keep the Court

7    informed.

8          THE COURT:  Okay.  So since you're up there, let me

9    ask you, because my next question -- again, this is a

10   confirmation issue and not one that I'm going to resolve in

11   connection with the PSA.  But the term sheet in the section

12   entitled "AFI settlement releases, third-party releases", has

13   third-party nondebtor releases of AFI other than with respect

14   to FDIC and FHFA.  And to the extent that the plan proposes

15   nonconsensual releases of AFI, what's the legal and factual

16   basis supporting the granting of such releases?

17         MR. SCHROCK:  Well, Your Honor, we'll certainly be

18   prepared to brief that, I think, with the plan proponents.

19   This release, as you might imagine, from AFI's perspective, is

20   a cornerstone of reaching a resolution, a consensual resolution

21   in these cases.  We do believe that there is a very

22   significant, in fact unprecedented, substantial contribution

23   that's being provided to the estates in these cases.  There's

24   also D&O and E&O insurance, which is implicated as a basis for

25   the third-party --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

51

1          THE COURT:  Let me say --

2          MR. SCHROCK:  -- relief, but we're prepared to brief

3   it.

4          THE COURT:  -- if I understand, AFI filed numerous

5   proofs of claim in the bankruptcy case.

6          MR. SCHROCK:  Yes, Your Honor.

7          THE COURT:  And I didn't look at the proofs of claim,

8   but I remember earlier in the case hearing that AFI claims it

9   has a right to indemnity or contribution from the debtors.  Is

10  that among the claims that you filed?

11         MR. SCHROCK:  That -- that is, Your Honor.  Okay.  So

12  there's very --

13         THE COURT:  So to the extent that anybody -- to the

14  extent that there was a recovery by third parties against AFI,

15  you would be -- and you filed timely proofs of claim, you'd be

16  asserting the right to indemnity or contribution?

17         MR. SCHROCK:  We certainly will, Your Hon -- we

18  certainly would, Your Honor, and we also --

19         THE COURT:  That would, arguably, fit within the

20  Manville, affect the race of the estate, then put you over to

21  the issue of whether you satisfy Metromedia.

22         MR. SCHROCK:  That's an excellent point, Your Honor.

23  We also -- also the race, very significant, D&O and E&O

24  insurance settlement --

25         THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**52**

1          MR. SCHROCK:  -- that's in the --

2          THE COURT:  All right.

3          MR. SCHROCK:  -- in the settlement as well.

4          THE COURT:  And the term sheet also had a section

5   entitled "exculpation" -- and this isn't just an AFI issue, but

6   Mr. Lee and Mr. Eckstein, I mean, there are a lot -- there are

7   cases from other circuits that limit exculpation to fiduciaries

8   of the estate.

9          And this exculpation clause -- let me ask, to the

10  extent that these are consensual third-party releases and

11  consensual exculpation, the issue won't arise, because consent

12  is certainly a basis.  But the exculpation clause extends

13  beyond the estate fiduciaries, and it's going to be an issue --

14  unless these are all consensual, it's going to be an issue

15  you're going to have to address at the time of confirmation.

16  I'm just --

17         MR. SCHROCK:  I'll go ahead and speak, Your Honor.

18         THE COURT:  Whether you look at the Fifth Circuit --

19         MR. SCHROCK:  We will address it.

20         THE COURT:  Whether you look at the Fifth Circuit view

21  or the, perhaps broader, Third Circuit view, it's still

22  seemingly limited to estate fiduciaries.  And this clause

23  extended much broader than that.

24         MR. SCHROCK:  Understood, Your Honor.

25         THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

53

1          MR. SCHROCK:  Anything further from me, Judge?

2          THE COURT:  I think not.

3          MR. SCHROCK:  Okay.

4          THE COURT:  So Mr. Lee, the supplemental term sheet

5     had a section entitled "Assets available for distribution to

6     unsecured creditors", and it had -- it listed certain amounts

7     available to specific categories of claimants.  It was that

8     chart.  You've got it all shrunk down and put in your little

9     book there.

10         MR. LEE:  I do; I can see it now, Your Honor.

11         THE COURT:  Okay.  So are there any provisions for

12    assets available for distribution to unsecured creditors whose

13    claims are not listed in the supplemental term sheet?

14         MR. LEE:  Well, there's -- the structure, Your Honor,

15    effectively encompasses every --

16         THE COURT:  Does it --

17         MR. LEE:  -- type of creditor --

18         THE COURT:  Okay.

19         MR. LEE:  -- imaginable.  There's --

20         THE COURT:  Because that was unclear to me --

21         MR. LEE:  Yeah.

22         THE COURT:  -- what it did.

23         MR. LEE:  I mean, in effect, there are either the

24    securities trusts -- there's a discreet borrower trust and then

25    on page 3, what you see are, effectively, the allocations to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

54

1   the three different estates.

2           THE COURT:  Okay.

3           MR. LEE:  You --

4           THE COURT:  All right.  So you say all unsecured

5   creditors are --

6           MR. LEE:  Yeah.

7           THE COURT:  -- swept within that?

8           MR. LEE:  Yes, Your Honor.

9           THE COURT:  Okay.  All right.

10          MR. LEE:  And the objective, Your Honor, obviously, is

11  to ensure equivalent treatment to unsecured creditors of the

12  debtors' estates.

13          THE COURT:  Okay.  So let me shift to the next issue.

14  There are certain matters with respect to -- that require

15  approval of courts other than the bankruptcy court, such as the

16  FGIC settlement agreement, but also the class -- securities

17  class action.  And what is it that you're contemplating?

18          In some other matters -- I mean, in the 1031 Tax

19  Group, where there were claims pending in the district court in

20  the Northern District of California, and claims pending here, I

21  had a joint hearing with the district judge, we did it by video

22  conference.  So we ruled at the same time.

23          I mean, was that -- in, I guess, what, Judge Baer has

24  your case, Mr. Etkin?

25          MR. ETKIN:  That's correct, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

55

1          THE COURT:  I mean, have you discussed how -- you

2    know, nobody wants to go first and then have somebody else say

3    no.  Have you discussed that?  I don't know how many -- I know

4    FGIC and I know the carpenters union class action.  I don't

5    know whether there were others that required approval of more

6    than one court.

7          MR. LEE:  It's possible, Your Honor, there's a third

8    one, which is the Kessler class action as well.  So those are

9    the three.

10          So with respect to FGIC, we -- we haven't -- the

11    expectation is, pursuant to the plan support agreement, that

12    we'll file a motion -- I think it's either the first or the

13    second week of June.  And then what we're going to try and do

14    is obviously time that so that we ensure --

15          THE COURT:  Is that in the commercial division of the

16    Supreme Court?

17          MR. LEE:  I believe it's in the liquidation -- well,

18    your answer is yes, Your Honor, but there's a special

19    liquidation court and effectively a --

20          THE COURT:  Who --

21          MR. LEE:  -- state court judge sits --

22          THE COURT:  Do you know who the judge is?

23          MR. LEE:  Your Honor, I don't know.

24          THE COURT:  Okay.

25          MR. LEE:  I'm not sure if somebody from FGIC is here,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

56

1    but I don't know.

2         MR. WYNNE:  I forget the state court judge --

3         THE COURT:  I'm sorry?

4         MR. WYNNE:  Your Honor, Richard Wynne for FGIC from

5    Jones Day.  Actually, I forget the name of the state court

6    judge, since I've never been to that court, but the FGIC --

7         THE COURT:  Ever?

8         MR. WYNNE:  Ever.  I haven't been to state court for a

9    while, fortunately.  But we actually are getting the date.  The

10   rehabilitators are represented by Weil, Your Honor, but

11   we've -- they've obviously been closely involved.  They

12   actually anticipate filing that motion today.  They were just

13   getting the date for the hearing from the court.

14        THE COURT:  Okay.

15        MR. WYNNE:  So that hopefully will get filed today.  I

16   just don't know when the court is available.

17        THE COURT:  All right.  All right, the next issue on

18   my list.  The supplemental term sheet provided, in the section

19   entitled "Treatment of securities claims", that "the

20   confirmation order shall enjoin the assertion of any third-

21   party claims, contribution claims, and indemnification

22   claims" -- and I'm leaving some words out -- "relating to the

23   private securities claims".

24        I would just note that the district court has broader

25   authority than the bankruptcy court does to issue bar orders

**RESIDENTIAL CAPITAL, LLC, ET AL.**

57

1    and injunctions against third-party claims, contribution

2    claims, and indemnification claims.  The way you had it

3    written, it only required me to give you that.  It required the

4    district court to approve the class action settlement.  But I

5    can just tell you in 1031, that's exactly the way it was dealt

6    with.  The district court gave the very broad bar order and

7    injunction because there was no real issue of its power to do

8    that.  So I hope you'll all take that into account.

9             MR. LEE:  I will.  Thank you very much, Your Honor.

10            THE COURT:  Okay.  The supplemental plan term sheet

11   provides, in the section entitled "Borrowers' claims" --

12   "Borrowers' claims trust", that if the parties fail to agree on

13   the amount of the funds necessary to adequately fund the trust,

14   the parties will establish a procedure to resolve the dispute

15   in connection with confirmation "including utilization of

16   claims estimation under Section 502 of the Bankruptcy Code".

17            So I suspect you haven't done it yet, but I mean, if

18   somebody's going to ask this court to estimate claims, you

19   better fit this into the schedule, you better come up with a

20   schedule that makes it work, because I'm just looking at

21   what -- there's a lot between now and a confirmation hearing in

22   October.  Hopefully you'll resolve the issue or you'll agree on

23   some other mechanism for resolving it, but if a 502 claims

24   estimation is going to be required, at some point by August I'm

25   going to want to know that's what's going to happen and make

**RESIDENTIAL CAPITAL, LLC, ET AL.**

58

1    sure we have a schedule that accommodates it.

2           MR. LEE:  Yeah, we will, Your Honor.  Just for the

3    Court's note, we're actually in contact with every single one

4    of the counsel representing the different class actions pending

5    throughout the United States, and made them aware of the terms

6    of the plan and the plan support agreement, and in active

7    discussions with all of them to try to resolve these things

8    during the course of the next three or four weeks.

9           THE COURT:  That's fine.

10          MR. LEE:  And if not, file appropriate objections, and

11   then schedule estimation, if that's what's required.  But

12   hopefully there will be none of those.

13          THE COURT:  Okay.  I just want to be sure that if

14   that -- if it goes in the direction to require a court hearing,

15   that we have a schedule and -- okay.

16          MR. LEE:  Yes, thank you.

17          THE COURT:  All right.  Everything on my list, I've

18   covered.

19          Mr. Etkin, you wanted to be heard?

20          MR. LEE:  Thank you, Your Honor.

21          MR. ETKIN:  Very, very briefly, Your Honor.

22          THE COURT:  Thank you, Mr. Lee.

23          THE COURT:  Just --

24          MR. ETKIN:  Apropos --

25          THE COURT:  Just make your appearance.

1          MR. ETKIN:  I'm sorry.  Michael Etkin, Lowenstein

2    Sandler, on behalf of the lead plaintiff, New Jersey

3    Carpenters, in the securities class action.

4          Apropos to something that the Court mentioned, I

5    thought it would be important to let the Court know that we

6    have advised Judge Baer in writing as to what has transpired as

7    a result of the mediation.  And in the context of that

8    communication, we have suggested to Judge Baer that it may be

9    very helpful to coordinate with Your Honor with respect to the

10   approvals that are required.  So I obviously would, subject to

11   whatever the other parties -- if they have a problem with it, I

12   don't think they would -- I would clearly make the same

13   suggestion to --

14         THE COURT:  Okay.

15         MR. ETKIN:  -- Your Honor, as far as that's concerned.

16         THE COURT:  Thank you, Mr. Etkin.

17         All right.  Does anybody else want to be heard?

18         Mr. Eckstein?

19         MR. ECKSTEIN:  Your Honor, the only clarification I

20   wanted to make, in terms of Your Honor's observations, on the

21   borrower issue, just to elaborate a little bit, we've

22   anticipated a borrowers' trust.  We've tried to do as much work

23   as we could with the debtor and the debtors' advisors about the

24   breadth of the claims, but those are -- there are actually many

25   borrower claims; there are individual claims.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    We're trying to come up with a structure that's going

2    to be as user-friendly as possible for individual borrowers,

3    minimize the need to make court appearances, retain counsel,

4    and to do it, really, in a cost effective manner so that the

5    funds are not going to get dissipated by administration, to the

6    extent possible.

7    The reason we had that procedure in there was we would

8    like to try to be as precise as we can, certainly by the time

9    we seek approval of the disclosure statement, with what the

10    debtor really estimates to be the actual amount of borrower

11    claims.  And the document does contemplate that there may need

12    to be an adjustment to the amount of funding that's going to go

13    into the borrowers' trust.

14    So I think what we're anticipating is that by the time

15    we get to a disclosure statement hearing, which I think is

16    essentially consistent with the time table Your Honor was

17    suggesting, we would have, hopefully, clarity as to what is

18    going to be needed to fund the borrower claim in an appropriate

19    amount.

20    THE COURT:  Okay.  Anybody else want to be heard?

21    Okay.  So Mr. Lee, I guess the next thing I'm going to

22    hear from counsel is scheduling a telephone conference for

23    probably toward the end of next week, with respect to the

24    issues with the JSNs and -- okay?  You'll speak to Deanna --

25    after you confer with Mr. Shore and Mr. Uzzi, you'll speak to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    Deanna about getting a date and time.  We'll do it as a

2    telephone conference, not on the record status conference, the

3    way I do those for scheduling purposes.  Okay?

4            MR. LEE:  Yes.

5            THE COURT:  All right.  Thank you very much.  We're

6    adjourned.

7            MR. LEE:  Thank you, Your Honor.

8        (Whereupon these proceedings were concluded at 3:14 p.m

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

62

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

11   _____

12   PENINA WOLICKI

13   AAERT Certified Electronic Transcriber CET**D-569

14

15   eScribers

16   700 West 192nd Street, Suite #607

17   New York, NY 10040

18

19   Date:  May 30, 2013

20

21

22

23

24

25

## A

**AARON (1)**
6:15
**ability (1)**
38:1
**able (2)**
12:25;19:14
**absolutely (1)**
38:12
**academic (1)**
28:22
**accepts (1)**
17:21
**accommodate (1)**
25:19
**accommodates (1)**
58:1
**accomplished (2)**
19:12;38:4
**account (1)**
57:8
**accrued (1)**
17:1
**achieve (1)**
19:14
**achievement (1)**
15:19
**across (1)**
15:17
**acted (1)**
24:1
**action (10)**
40:19;42:12,13;
43:17;48:3;54:17;
55:4,8;57:4;59:3
**actions (3)**
42:11;49:2;58:4
**active (1)**
58:6
**actual (2)**
13:3;60:10
**actually (9)**
15:17;22:14;24:18;
25:22;39:8,10;42:14;
56:5,9,12;58:3;59:24
**Ad (3)**
4:19;5:3;27:6
**add (1)**
41:20
**addition (2)**
14:18;24:10
**additional (1)**
15:22
**address (6)**
18:2;19:4;21:18;
32:1;52:15,19
**adequate (2)**
20:6;26:15
**adequately (1)**
57:13
**adjectives (1)**

12:21
**adjourned (1)**
61:6
**adjustment (1)**
60:12
**Administration (3)**
10:2;45:11;60:5
**administrative (1)**
17:8
**advance (3)**
16:2,4;35:8
**advanced (1)**
27:19
**adversary (7)**
29:14;30:12;35:17;
38:25;39:2;40:18,20
**advised (1)**
59:6
**advisors (1)**
59:23
**affect (2)**
48:16;51:20
**affidavits (1)**
21:10,13;24:1
**affirmative (1)**
21:24
**AFI (12)**
16:17,18;18:14;
49:2,11;50:12,13,15;
51:4,8,14;52:5
**AFI's (2)**
50:3,19
**afternoon (4)**
12:4;19:9;27:5;
42:8
**ag (1)**
37:7
**again (6)**
13:24;35:13;41:8,
14;48:9;50:9
**against (14)**
15:22;16:6,17,18;
29:14;42:11;46:11;
47:13,23;48:10;
49:15,25;51:14;57:1
**agenda (1)**
41:6
**ago (2)**
19:18;27:8
**agree (10)**
30:20;31:24;32:10;
37:8;41:8,10,21;
42:17;57:12,22
**agreed (1)**
39:17
**agreement (43)**
12:7,13,17;13:4,8,
14,16;14:4,16;15:6,7;
16:16,24;17:10,14,
15,19;18:6,10,10,17;
20:1;27:9,12,13,15,
20;28:7,19;31:13,20;
36:19,21,21,23,24;

37:9;39:5;40:11,12;
54:16;55:11;58:6
**agreements (1)**
29:25
**ahead (16)**
25:13,13;26:23;
30:20;32:4,22;33:16,
18,23;35:24;36:24;
38:19;41:5;45:9,9;
52:17
**AIG (1)**
10:11
**AKIN (2)**
6:18;42:9
**Alliance (1)**
10:21
**allocate (1)**
47:7
**allocations (1)**
53:25
**allotted (1)**
20:12
**all-out (1)**
13:11;34:15
**allow (3)**
20:3,8;39:7
**Ally (7)**
8:19,19;12:14;
46:11;47:23;48:16;
49:11
**along (1)**
24:10
**ALSTON (1)**
7:2
**alternative (2)**
47:21,22
**always (3)**
28:24;44:23;50:3
**amazed (1)**
38:3
**Americas (4)**
4:4,20;5:12;8:12
**among (2)**
29:9;51:10
**amount (6)**
13:19;47:7;57:13;
60:10,12,19
**amounts (1)**
53:6
**Angeles (2)**
9:23;10:14
**anticipate (6)**
22:6;23:25;40:21;
43:11;44:1;56:12
**anticipated (4)**
24:13;37:16,25;
59:22
**anticipating (2)**
28:1;60:14
**anxious (1)**
33:15
**appearance (1)**
58:25

**appearances (1)**
60:3
**Appearing (1)**
11:3
**applaud (1)**
42:14
**apply (1)**
32:8
**appointed (1)**
13:10
**appreciate (3)**
20:18;31:4;44:6
**appropriate (8)**
21:11;23:7;25:4;
31:19;34:1;46:24;
58:10;60:18
**approval (6)**
16:2;19:2;29:20;
54:15;55:5;60:9
**approvals (1)**
59:10
**approve (6)**
18:17;36:18,21;
37:7,12;57:4
**approved (4)**
13:21;39:16;44:22,
23
**approximately (1)**
45:12
**Apropos (2)**
58:24;59:4
**arguably (1)**
51:19
**argue (2)**
39:6,12
**argument (3)**
39:7,14,22
**arise (1)**
52:11
**around (2)**
14:21;35:6
**arrange (1)**
40:25
**articulated (1)**
44:16
**aside (1)**
33:8
**aspect (1)**
18:15
**aspirational (1)**
19:17
**assertible (1)**
16:20
**asserting (1)**
51:16
**assertion (1)**
56:20
**Assets (2)**
53:5,12
**assume (3)**
35:12;41:10;43:7
**assuming (3)**
17:21;30:7;39:15

**astronomically (1)**
17:7
**Atlanta (1)**
7:6
**attached (1)**
21:10
**Attorneys (21)**
4:3,11,19;5:3,11,
19;6:3,11,19;7:3,12,
20;8:3,11,19;9:3,11,
20;10:2,11,20
**August (3)**
18:1;34:20;57:24
**authority (1)**
56:25
**available (7)**
21:14;41:5;43:9;
53:5,7,12;56:16
**Avenue (9)**
4:4,12,20;5:12;
7:13;8:12,20;9:21;
10:22
**await (1)**
40:8
**aware (3)**
13:18;18:4;58:5
**away (2)**
21:8;32:8

## B

**back (4)**
13:2;41:3,4;45:17
**background (1)**
21:21
**backwards (1)**
35:11
**Baer (3)**
54:23;59:6,8
**Bank (8)**
5:11;6:19;7:3,12;
8:3,19;20:22;49:11
**bankruptcy (4)**
51:5;54:15;56:25;
57:16
**bar (2)**
56:25;57:6
**basis (4)**
21:11;50:16,24;
52:12
**Battery (1)**
8:4
**become (3)**
25:15;31:14,18
**becomes (1)**
39:16
**beend (1)**
40:2
**behalf (6)**
19:10;20:21;27:6;
45:11;49:11;59:2
**behind (1)**
18:3

**believes (2)**
33:25;44:18
**Berkshire (1)**
18:20
**Berskshire (1)**
9:20
**bet (1)**
27:24
**better (6)**
17:18;30:17;37:10;
46:12;57:19,19
**beyond (1)**
52:13
**billion (3)**
13:22;14:10;16:16
**billions (2)**
15:21,21
**BIRD (1)**
7:2
**bit (1)**
59:21
**blow (1)**
30:23
**Board (3)**
10:2;15:18;45:11
**BOCKIUS (1)**
7:11
**book (1)**
53:9
**borrower (5)**
53:24;59:21,25;
60:10,18
**borrowers (1)**
60:2
**Borrowers' (4)**
57:11,12;59:22;
60:13
**Boston (1)**
6:5
**both (6)**
20:5,13,24;29:1;
40:18;45:16
**bought (1)**
41:9
**box (4)**
28:2;31:25;32:1,2
**Boylston (1)**
6:4
**breadth (3)**
12:16;19:13;59:24
**bridge (1)**
31:23
**brief (3)**
12:6;50:18;51:2
**briefed (1)**
39:4
**briefly (2)**
18:2;58:21
**briefs (1)**
24:11
**brings (1)**
28:23
**broad (1)**

57:6
**broader (3)**
52:21,23;56:24
**brought (1)**
15:22
**Bryant (1)**
6:20
**burden (1)**
40:13
**business (6)**
13:4;17:21;19:25;
40:9;42:16;43:15
**businesspeople (1)**
36:5
**busy (1)**
34:7

## C

**CA (2)**
9:23;10:14
**CADWALADER (1)**
7:19
**CAHN (1)**
6:15
**calendar (1)**
39:11
**California (1)**
54:20
**call (2)**
14:9;42:6
**called (1)**
22:15
**can (26)**
16:4;17:15;19:19;
20:14;22:20;25:24;
30:9;32:7,17,18,20;
35:7,11;39:8;40:7,14,
14;41:8,12;42:16;
45:6;48:18;49:5;
53:10;57:5;60:8
**candidly (1)**
28:9
**Capital (2)**
12:3;16:11
**capitulation (1)**
28:22
**Carpenters (3)**
8:11;55:4;59:3
**CARTER (1)**
6:10
**carved (5)**
46:24;47:2;48:6;
49:13;50:5
**carve-out (1)**
48:25
**CASE (14)**
4:18;16:12;18:18;
20:6,18;28:24;46:14;
47:25;48:5,5,8;51:5,
8;54:24
**cases (5)**
13:9;27:18;50:21,

23;52:7
**cash (1)**
38:23
**categories (1)**
53:7
**Center (1)**
7:21
**certain (9)**
15:25;16:10;21:3,
20;22:16;27:21;31:3;
53:6;54:14
**certainly (13)**
27:25;39:17,21;
40:9;41:5;48:8,21;
50:6,17;51:17,18;
52:12;60:8
**certificate (1)**
23:3
**Ch (1)**
10:21
**CHADBOURNE (1)**
9:2
**challenge (1)**
39:1
**challenges (1)**
38:25
**chance (2)**
28:21;31:16
**Chapter (1)**
46:14
**chart (1)**
53:8
**Chase (1)**
5:4
**chooses (1)**
40:4
**CHRISTOPHER (1)**
4:23
**circuit (4)**
24:8;52:18,20,21
**circuits (1)**
52:7
**circumventing (1)**
44:20
**Citibank (2)**
48:12,13
**claim (7)**
14:5;47:5;49:19;
51:5,7,15;60:18
**claimants (6)**
25:20;29:21;39:9;
47:6,20;53:7
**claims (52)**
13:23,25;14:7,9,
10;15:8,11,12,14,22;
16:5,5,6,16,18,19,21;
29:12;39:1;45:12,12;
46:11,14,20;47:10,
12,23;49:14,14,24;
51:8,10;53:13;54:19,
20;56:19,21,21,22,
23;57:1,2,2,11,12,16,
18,23;59:24,25,25;

60:11
**clarification (1)**
59:19
**clarified (1)**
37:17
**clarity (3)**
31:4;32:11;60:17
**class (7)**
54:16,17;55:4,8;
57:4;58:4;59:3
**clause (3)**
52:9,12,22
**clear (1)**
39:13
**clearly (1)**
59:12
**CLEARY (1)**
9:10
**clients (4)**
27:11;31:9,11,25
**close (2)**
41:3;42:24
**closely (1)**
56:11
**closure (1)**
15:25
**cloud (1)**
18:8
**Co (1)**
7:20
**Code (1)**
57:16
**COHEN (7)**
10:7;42:2,4;45:8,
10,10,25
**collateral (4)**
35:15,21,21;38:23
**collectively (1)**
24:1
**comments (4)**
20:24;28:12;40:17;
42:15
**commercial (1)**
55:15
**Committee (10)**
4:3,11;6:3;12:14;
19:10;32:5;42:12;
43:17;45:16,18
**committee's (3)**
35:17;38:24;40:19
**committing (2)**
39:22;41:5
**communication (2)**
48:6;59:8
**complaint (1)**
48:10
**complete (1)**
26:24
**completed (1)**
23:21
**completely (1)**
28:15
**completing (1)**

26:6
**complex (2)**
15:9;39:2
**complexity (1)**
20:7
**component (1)**
18:5
**compromises (5)**
12:23;13:5,7,13;
18:5
**concern (2)**
22:19,20
**concerned (4)**
21:25;25:14;36:16;
59:15
**concerns (1)**
45:17
**conclude (2)**
36:25;37:14
**concluded (1)**
61:8
**conduct (1)**
25:5
**confer (1)**
60:25
**conference (11)**
12:6;34:16;40:25;
42:20,21,22;43:15;
54:22;60:22;61:2,2
**confidentiality (2)**
31:13,20
**confirmation (18)**
12:11,18;16:14;
20:5,11,15;34:2,4,5,
19,22,23;35:8;50:10;
52:15;56:20;57:15,
21
**confirmed (1)**
19:19
**confronting (1)**
27:21
**connected (1)**
17:6
**connection (8)**
21:5;29:16;34:2;
42:11;43:4;48:2;
50:11;57:15
**consensual (11)**
29:19,21;32:18;
33:4;36:24;37:7,8;
50:20;52:10,11,14
**consensually (5)**
30:10;32:3;33:21;
36:14;50:3
**consensus (6)**
12:16,19;15:17;
19:13,17;38:2
**consent (1)**
52:11
**consenting (3)**
29:21;32:6;39:9
**consider (1)**
18:17

**considerations (1)**
15:25
**considered (1)**
19:19
**consistent (2)**
40:16;60:16
**consolidate (2)**
40:20;43:20
**consolidated (1)**
43:22
**consolidation (2)**
16:10,12
**contact (1)**
58:3
**contained (1)**
49:13
**containing (1)**
24:16
**contemplate (2)**
21:3;60:11
**contemplating (1)**
54:17
**contentious (1)**
35:16
**contested (7)**
22:2,3;23:1;24:8,9;
25:3;33:17
**context (1)**
59:7
**continuation (1)**
21:1
**continue (3)**
17:20;29:15;49:2
**contribution (5)**
50:22;51:9,16;
56:21;57:1
**conversations (2)**
32:16,17
**coordinate (1)**
59:9
**cornerstone (1)**
50:20
**correctly (1)**
18:7
**cost (2)**
12:23;60:4
**costly (1)**
16:21
**costs (1)**
17:8
**Cote (1)**
48:8
**counsel (3)**
58:4;60:3,22
**count (2)**
22:18;33:20
**course (3)**
16:3;27:16;58:8
**COURT (191)**
12:2,8;14:13,16,19,
22,25;15:3;17:24;
18:25;19:5,6,7;
20:19;21:3,17;22:9,

11,19;23:8,12,16;
24:3,5,15,17,21,23;
25:2,7,10,12,21;26:2,
10,21,23,25;27:2,4,8,
14,24;28:15,18;29:6,
9,22;30:25;31:7,22;
32:2,4,7,21;33:10,13,
15,22,25,25;34:3,11,
12,13,22;35:3,20,24;
36:11,16,23,24;37:3,
5,17,18,20,22,24;
38:3,9,14,19;39:7,12,
13,25;40:5,23;41:13,
17,19,22,25;42:3,5,
21;43:7,19,21;44:2,4,
9,12,14,21;45:2,4,9,
23;46:1,17,19;47:2,4,
17;48:1,13;49:4,8,16,
18,21;50:1,6,8;51:1,
4,7,13,19,25;52:2,4,
18,20,25;53:2,4,11,
16,18,20,22;54:2,4,7,
9,13,15,19;55:1,6,15,
16,19,20,21,22,24;
56:2,3,5,6,7,8,13,14,
16,17,24,25;57:4,6,
10,18;58:9,13,14,17,
22,23,25;59:4,5,14,
16;60:3,20;61:5
**courtroom (1)**
42:6
**courts (1)**
54:15
**Court's (4)**
20:14;21:4;42:15;
58:3
**covered (1)**
58:18
**create (2)**
47:4,18
**Credit (2)**
10:2;45:11
**creditor (3)**
47:16,16;53:17
**creditors (11)**
12:15;16:20;17:13;
18:14;19:15;32:6;
47:12;53:6,12;54:5,
11
**Creditors' (4)**
4:3,11;12:13;19:10
**critical (1)**
19:23
**cross-examination (1)**
43:9
**cure (2)**
14:5,7
**curtailed (1)**
17:7
**cut (1)**
41:19
**CUTLER (1)**
4:10

**cutting (1)**
22:21

# D

**D&O (2)**
50:24;51:23
**DANIEL (2)**
6:23;42:8
**date (11)**
23:6;24:12,20;
26:2;34:19,25;35:10;
42:19;56:9,13;61:1
**dates (1)**
35:4
**DAY (9)**
5:18;18:15,24;
19:2;27:8,15;31:5;
33:25;56:5
**days (4)**
21:8;23:9;25:23;
42:15
**DC (2)**
4:13;10:5
**deadline (6)**
23:19;24:21;25:8,
10;26:6;35:1
**deal (23)**
18:15;19:12;20:7,
13;27:16,16,22,25;
28:2,4,5,6,13,16,23;
29:4;32:5,8,18;
33:17;36:1;38:23;
46:19
**dealing (1)**
22:15
**deals (2)**
15:18;16:16
**dealt (1)**
57:5
**Deanna (2)**
60:24;61:1
**Debenture (1)**
22:14
**debtor (4)**
14:24;15:22;59:23;
60:10
**debtors (15)**
12:5,13;16:1;
17:17,22;32:6,21;
43:18;45:17,20,21;
48:17;49:15,25;51:9
**debtors' (5)**
13:4;40:19;42:12;
54:12;59:23
**DECHERT (1)**
5:10
**decide (1)**
22:24
**decided (1)**
31:12
**decision (2)**
23:11;39:23

**declarants (5)**
22:4,6,22;23:20;
43:9
**declaration (1)**
43:8
**declarations (2)**
22:21;24:11
**declaratory (1)**
40:19
**defending (1)**
42:11
**defer (1)**
40:4
**definitely (1)**
41:15
**delay (1)**
40:3
**delegated (1)**
22:16
**DENMAN (1)**
4:24
**depending (1)**
22:17
**depose (2)**
22:4;23:19
**deposed (1)**
24:7
**depositions (6)**
15:16;23:20,22;
24:25;25:5;26:7
**describe (1)**
30:6
**details (3)**
41:1;48:15;49:8
**determine (2)**
30:14;32:13
**determined (1)**
34:1
**determines (3)**
29:22;30:25;32:7
**Deutsche (1)**
7:12
**dialog (1)**
28:8
**different (6)**
12:20;24:5,5;
38:22;54:1;58:4
**difficult (1)**
38:2
**difficulty (1)**
13:14
**direct (1)**
43:8
**direction (1)**
58:14
**directly (1)**
16:20
**disclosure (9)**
12:10;17:23;18:1;
19:22;20:3,5;46:5;
60:9,15
**discovery (3)**
43:17,18,23

**discreet (1)**
53:24
**discrimination (1)**
47:18
**discuss (1)**
12:9
**discussed (2)**
55:1,3
**discussion (1)**
27:11
**discussions (8)**
16:18;33:2;34:14;
39:9;48:20,21;49:9;
58:7
**dismiss (2)**
39:3,7
**dismissal (1)**
48:10
**dispersed (1)**
40:12
**dispute (2)**
31:19;57:14
**disputes (1)**
17:4
**dissipated (1)**
60:5
**distribution (3)**
49:22;53:5,12
**district (1)**
54:19,20,21;56:24;
57:4,6
**divided (1)**
22:14
**division (1)**
55:15
**divulging (1)**
46:21
**document (2)**
44:24;60:11
**documents (1)**
20:7
**dollar (2)**
14:5;47:7
**dollars (5)**
12:24;16:16;17:9;
32:22;45:13
**dollars'-worth (4)**
13:22;14:7,10;
15:21
**done (2)**
41:23;57:17
**DORR (1)**
4:10
**down (4)**
17:20;28:14;39:3;
53:8
**drag (1)**
13:2
**driven (1)**
13:5
**driving (1)**
13:2
**due (4)**

12-12020-mg    Doc 3875    Filed 05/30/13    Entered 06/04/13 09:07:28    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Pg 66 of 74

Case No. 12-12020-mg

May 29, 2013

15:24;20:13;26:25;
27:16
**during (3)**
16:2;40:21;58:8

**E**

**E&O (2)**
50:24;51:23
**earlier (3)**
25:18;44:7;51:8
**early (1)**
40:21
**easier (1)**
46:23
**East (1)**
5:20
**easy (1)**
12:19
**echo (1)**
20:23
**ECKSTEIN (48)**
4:7;19:8,9,10;
20:19,24;25:13,14,
16,22;26:9,22,23,24;
27:3;29:18;30:5;
31:2;34:18,24;35:1,9,
18,19,23,24,25;
36:15,20;37:2,4,15,
18,21,25;38:3,8,15,
20;39:24;40:1,7;
41:15,18;42:12;52:6;
59:18,19
**effect (2)**
47:13;53:23
**effective (1)**
60:4
**effectively (5)**
46:24;47:15;53:15,
25;55:19
**efficient (1)**
34:10
**efficiently (2)**
19:19;41:24
**effort (5)**
13:19;30:9;34:15;
38:5;49:4
**efforts (1)**
48:17
**eighty (1)**
15:16
**either (12)**
18:23;32:3;33:21;
36:13;40:8,10,12,14;
47:13,20;53:23;
55:12
**elaborate (1)**
59:21
**element (1)**
18:9
**ELLIS (2)**
8:18;49:11
**else (14)**

13:18;14:1;19:8;
26:17;30:13;41:20;
42:1;43:24;44:5;
45:5;46:1;55:2;
59:17;60:20
**EMANUEL (1)**
10:10
**embedded (1)**
13:13
**embodied (2)**
13:3;18:6
**encompasses (1)**
53:15
**encouraged (1)**
28:12
**end (4)**
18:14;20:12;42:24;
60:23
**engage (2)**
32:15;33:2
**enjoin (1)**
56:20
**enlighten (1)**
39:20
**enormous (1)**
13:19
**enough (1)**
20:13
**ensure (2)**
54:11;55:14
**enter (1)**
21:11
**entered (2)**
29:16;39:17
**entire (1)**
14:24
**entirely (1)**
16:13
**entitled (13)**
22:23;28:25;29:11,
23;30:14,21;33:6;
37:1;50:12;52:5;
53:5;56:19;57:11
**equivalent (1)**
54:11
**ERIC (1)**
10:16
**ESQ (23)**
4:7,15,23,24;5:7,
15,23;6:7,15,23;7:8,
16,24;8:7,15,23;9:7,
15,16,25;10:7,16,25
**essentially (1)**
60:16
**establish (2)**
21:6;57:14
**established (1)**
46:10
**estate (6)**
16:6;47:13;51:20;
52:8,13,22
**estates (5)**
16:19;17:18;50:23;

54:1,12
**estates' (1)**
12:14
**estimate (1)**
57:18
**estimates (1)**
60:10
**estimation (3)**
57:16,24;58:11
**ETKIN (10)**
8:15;54:24,25;
58:19,21,24;59:1,1,
15,16
**even (7)**
27:12,13;32:18,24;
33:4,5;39:22
**everybody (6)**
17:5;20:4;24:6;
39:17;42:6,17
**everybody's (6)**
18:22;25:8,10;
26:5;37:8;41:14
**evidence (1)**
21:24
**evidentiary (2)**
33:17,23
**exactly (5)**
15:2;22:10;29:10;
31:1;57:5
**Examiner (1)**
9:3
**examiner's (7)**
18:4,8,15;19:1;
39:16,19,21
**example (1)**
43:16
**excellent (1)**
51:22
**Except (1)**
31:24
**exclusivity (1)**
18:7
**exculpation (5)**
52:5,7,9,11,12
**exercise (1)**
35:13
**exhibits (1)**
43:7
**existing (1)**
17:3
**expect (4)**
21:7;32:15;36:7;
39:23
**expectation (1)**
55:11
**expeditiously (2)**
30:8;45:19
**expense (2)**
13:19;17:8
**experts (1)**
35:13
**expires (1)**
41:7

**explaining (2)**
21:10;48:4
**express (1)**
48:5
**expressly (1)**
48:6
**extend (1)**
41:8
**extended (2)**
48:24;52:23
**extends (1)**
52:12
**extend-stay (1)**
48:24
**extent (14)**
17:4;31:17,25;
41:11;47:12,16,22;
48:24;50:4,14;51:13,
14;52:10;60:6
**extraordinary (1)**
13:9
**extremely (2)**
19:13;33:22
**eyes (1)**
39:18

**F**

**face (1)**
47:20
**facilitate (1)**
39:9
**fact (1)**
50:22
**factual (6)**
22:3;25:3;26:14,
16;45:7;50:15
**fail (1)**
57:12
**fair (1)**
41:19
**fairly (2)**
16:7;23:23
**fairness (2)**
28:17;31:7
**far (1)**
59:15
**Fargo (2)**
7:3;22:13
**FDIC (14)**
46:7,9,11,13,15;
48:2,5,6,23;49:2,5,
12,18;50:14
**feel (1)**
19:16
**FELD (2)**
6:18;42:9
**few (5)**
13:13;19:15,17;
27:7;40:9
**FGIC (9)**
5:19;15:23;16:1;
54:16;55:4,10,25;

56:4,6
**FGIC's (1)**
16:5
**FHFA (16)**
46:6,9,10,13,15,19,
23;48:8,9,10,18,19,
21;49:5,12;50:14
**fiduciaries (3)**
52:7,13,22
**Fifth (2)**
52:18,20
**fight (1)**
16:14
**Figueroa (1)**
10:12
**figure (1)**
35:12
**file (7)**
17:22;20:3;24:12;
46:13;49:19;55:12;
58:10
**filed (10)**
12:8;25:23,24,25;
40:10;49:1;51:4,10,
15;56:15
**filing (5)**
19:22;21:9,23;
22:21;56:12
**filings (1)**
48:4
**Finally (2)**
14:8;16:23
**Financial (2)**
7:21;8:19
**find (2)**
27:20;42:22
**findings (9)**
18:9;9;21:4,5,15,
19,22;26:14,16
**fine (9)**
24:3,15,17,24;26:3,
3;27:3;45:2;58:9
**firm (1)**
42:9
**First (8)**
13:16;20:23;27:22;
32:11;34:13;46:13;
55:2,12
**fit (5)**
25:2;47:9,14;
51:19;57:19
**five (8)**
15:5;18:7;22:9,11,
12,17,22;25:23
**Floor (1)**
9:22
**fly (1)**
18:3
**focused (1)**
17:17
**Foerster (1)**
12:5
**fold (1)**

17:14
**folded (1)**
14:3
**following (1)**
13:14
**foremost (1)**
27:22
**forget (2)**
56:2,5
**form (2)**
30:12;43:8
**formally (1)**
45:1
**forms (2)**
32:17;33:4
**forth (2)**
22:16;45:15
**fortunately (1)**
56:9
**forty-four (1)**
13:22
**forward (6)**
12:9;26:12;30:8,
13;37:12;39:11
**forwarded (1)**
14:11
**four (3)**
17:12;19:21;58:8
**frame (3)**
35:10;38:16,16
**framed (1)**
20:1
**framework (2)**
19:18,24
**FRANKEL (1)**
4:2
**Franklin (1)**
6:11
**Friday (1)**
25:12
**front (2)**
12:12;27:10
**full (5)**
17:1;18:21;28:20;
41:13;43:12
**fund (2)**
57:13;60:18
**funding (1)**
60:12
**funds (2)**
57:13;60:5
**further (1)**
53:1
**future (2)**
15:12;16:5

## G

**GA (1)**
7:6
**GARRITY (1)**
7:16
**Gary (1)**

12:4
**gave (2)**
23:9;57:6
**general (3)**
13:25;25:23;47:11
**generally (1)**
43:2
**generous (1)**
23:12
**genuinely (1)**
37:5
**GERARD (2)**
5:7;27:5
**gets (4)**
39:16;44:22,23;
47:21
**Given (6)**
12:15;16:11;17:3;
28:11;31:3;42:25
**GLENN (2)**
5:15;20:21
**global (1)**
49:5
**goal (1)**
20:11
**goes (3)**
36:24;46:7;58:14
**GOLDEN (10)**
6:23;42:7,8,9;43:6,
14,20;44:1,3,4
**Good (7)**
12:4;19:9,12,24;
27:5;31:12;42:8
**GOTTLIEB (1)**
9:10
**Grand (1)**
9:21
**granting (1)**
50:16
**GRAY (1)**
6:2
**great (1)**
19:12
**ground (1)**
19:25
**Group (8)**
4:19;5:3;6:11;
27:6;38:1;40:11,12;
54:19
**gruesome (1)**
16:14
**guess (7)**
24:19;26:24;35:16;
46:12;49:19;54:23;
60:21
**guidance (1)**
34:12
**guiding (1)**
12:21
**GUMP (2)**
6:18;42:9

## H

**HADLEY (2)**
5:2;27:6
**HALE (1)**
4:10
**HAMILTON (1)**
9:10
**hammer (1)**
42:25
**handicapped (1)**
36:6
**handled (1)**
37:19
**Hang (1)**
42:3
**hangs (1)**
37:13
**hap (1)**
30:5
**happen (2)**
35:11;57:25
**happened (1)**
12:15
**happening (1)**
43:10
**happens (3)**
30:25;37:10;47:8
**happy (1)**
19:4
**hard (2)**
25:2;31:5
**HARRISON (1)**
4:24
**hate (3)**
27:13,23;28:4
**hated (1)**
27:16
**Hathaway (1)**
9:20
**HAUER (2)**
6:18;42:9
**hear (6)**
39:7,14,22;45:20,
23;60:22
**heard (13)**
19:8;23:3;25:18;
26:17;42:1;44:5;
45:5,17,19;46:1;
58:19;59:17;60:20
**hearing (26)**
12:10;18:1;19:2;
22:2,3;23:1,5;24:8,
10;25:3,9;26:19;
33:18,23;34:5,5,23;
39:4,15;44:7;51:8;
54:21;56:13;57:21;
58:14;60:15
**hearings (2)**
18:8;43:2
**held (1)**
38:10

**helpful (2)**
43:15;59:9
**Hoc (3)**
4:19;5:3;27:6
**hold (3)**
37:22;38:13;42:5
**holder (1)**
45:12
**holders (1)**
23:3
**Hon (1)**
51:17
**Honor (125)**
12:4,5,12;13:10,12,
16,17;14:1,15,24;
15:1,4,8,18,20,23,24;
16:9,21;17:11,16,21,
25;18:4,6,16;19:3,4,
9,20:10,16,21;21:1,6,
14;23:2,6,14,25;25:1,
16;26:20,22;27:3,5,7,
10,17,20;28:1,5,17;
29:1;31:1,17,24;
32:10,15,16,24,25;
33:14,24;34:9,10,20;
35:19,23;36:2;37:4,
15;38:11,21;40:2,3,4;
41:18,21,24;42:2,8,9,
14,18;44:6,25;45:3,8,
25;46:15,21;47:11,
19;48:19,23;49:7,10,
12,23;50:17;51:6,11,
18,22;52:17,24;
53:10,14;54:8,10,25;
55:7,18,23;56:4,10;
57:9;58:2,20,21;59:9,
15,19;60:16;61:7
**Honor's (3)**
18:22;40:8;59:20
**hope (6)**
17:5,16;28:2;30:6;
32:15;57:8
**hopefully (16)**
17:25;19:18,19,24;
20:8,12;21:14;24:6,
7;25:14,24;26:10;
56:15;57:22;58:12;
60:17
**hoping (1)**
33:1
**host (1)**
32:12
**hostage (1)**
37:22
**hours (1)**
23:22
**HOWARD (1)**
9:7
**HSBC (1)**
22:17
**hundred (1)**
14:6

## I

**identical (1)**
24:2
**identify (1)**
20:5
**imaginable (1)**
53:19
**imagine (1)**
50:19
**impact (1)**
48:4
**impair (1)**
46:6
**implicated (1)**
50:24
**importance (1)**
20:25
**important (6)**
15:4;18:5;20:7;
23:23;26:12;59:5
**importantly (1)**
16:15
**Inc (1)**
8:19
**incentivized (1)**
16:11
**including (5)**
15:10;16:5;33:10;
34:11;57:15
**inconsistencies (1)**
28:7
**indemnification (2)**
56:21;57:2
**indemnity (2)**
51:9,16
**indenture (1)**
42:10
**indicating (1)**
45:18
**indifferent (1)**
28:5
**individual (3)**
19:15;59:25;60:2
**informed (2)**
13:5;50:7
**initial (1)**
20:9
**injunction (1)**
57:7
**injunctions (1)**
57:1
**innumerable (1)**
19:14
**insist (1)**
43:12
**instead (1)**
14:2
**Institutional (1)**
6:3
**Insurance (3)**
7:20;50:24;51:24

**integral (1)**
13:2
**intend (1)**
12:9
**intent (1)**
28:9
**intention (3)**
17:14;29:13;37:21
**interest (10)**
16:25;17:2;28:25;
29:23;30:3,4,15,22;
33:6;37:1
**interference (1)**
49:3
**interrupt (4)**
29:6;33:13,15;
35:25
**into (19)**
14:3,11;17:15;
22:2,14;24:7,9;25:3;
28:23;31:5,20;38:5;
39:18;40:20;41:9;
49:5;57:8,19;60:13
**Investor (1)**
6:3
**invited (1)**
31:9
**involved (4)**
12:19;13:19;28:11;
56:11
**issue (32)**
14:2;16:9;26:17,
18;28:24;30:15;32:1;
35:16;36:2,17,20;
37:10,12,15,16,19,
22;38:10;39:2;47:20;
50:10;51:21;52:5,11,
13,14;54:13;56:17,
25;57:7,22;59:21
**issued (1)**
48:2
**issues (26)**
15:9;19:25;22:16;
23:23,24;26:18;
27:16,22;29:19;
30:10;31:3;32:19,25;
33:5,8;34:1;35:20;
38:2;39:10,20,21;
43:16;45:19,22;
47:18;60:24
**issue's (1)**
36:13

**J**

**JAMES (1)**
7:16
**JASON (1)**
7:24
**Jersey (1)**
59:2
**JOHN (1)**
7:8

**join (2)**
47:6,13
**joinder (2)**
21:9;24:14
**joining (1)**
17:15
**joint (1)**
54:21
**JONES (2)**
5:18;56:5
**JR (1)**
7:16
**JSN (1)**
29:12
**JSNs (16)**
29:15,19,22;30:2,
14,21;32:7;35:5;
36:2,5,9;37:13;
38:22;39:10;40:14;
60:24
**Judge (21)**
12:20,25;13:5,6,
10;41:3,7,10,15;48:2,
7,8;53:1;54:21,23;
55:21,22;56:2,6;59:6,
8
**judgment (3)**
13:4;17:21;40:19
**judice (1)**
39:8
**July (5)**
17:23,24,25;18:24;
20:3
**jump (1)**
41:5
**June (26)**
16:3;17:16;18:23;
19:1;21:7,8,8,25;
22:20;23:8,15,16,18,
21;24:17,18,22,23;
25:12;37:10;38:23,
24;39:3,4,6;55:13
**Junior (11)**
4:19;5:3;16:23,25;
17:3;27:7,21;35:15;
36:19,21;42:10
**JURGENS (1)**
7:24

**K**

**KAJON (1)**
10:25
**keep (7)**
12:25;26:5,12,12;
30:7;39:11;50:6
**KENNETH (2)**
4:7;19:9
**Kessler (1)**
55:8
**key (1)**
18:15
**KIRKLAND (2)**

8:18;49:10
**KISSEL (1)**
8:2
**Klestadt (1)**
10:20
**knows (2)**
15:8;21:1
**KOTWICK (1)**
8:7
**KRAMER (2)**
4:2;19:10

**L**

**laid (1)**
20:9
**large (2)**
17:7;25:20
**last (4)**
12:8,15;44:17;
48:22
**later (2)**
17:23;21:7
**latest (1)**
25:25
**Law (2)**
22:14;24:16
**lead (1)**
59:2
**leading (1)**
31:5
**least (4)**
16:3;17:5;23:2;
39:7
**leave (1)**
26:2
**leaving (1)**
56:22
**led (2)**
18:10,10
**LEDYARD (1)**
6:10
**LEE (58)**
10:19;12:3,4,4;
14:15,18,21,23;15:1,
4;17:25;19:3,6;
20:24;29:18;30:5;
31:2;34:18,20,23,25;
45:23;46:2,15,18,21;
47:3,11,19;48:12,19;
49:18;52:6;53:4,10,
14,17,19,21,23;54:3,
6,8,10;55:7,17,21,23,
25;57:9;58:2,10,16,
20,22;60:21;61:4,7
**Lee's (2)**
19:11;28:12
**legal (1)**
50:15
**length (1)**
23:22
**lengthy (1)**
16:22

**level (1)**
19:16
**leverage (1)**
18:13
**LEVIN (2)**
4:2;19:10
**LEWIS (1)**
7:11
**Lexington (1)**
8:20
**Liberty (1)**
9:12
**liens (2)**
17:4;39:1
**light (1)**
36:8
**LIGHTNER (1)**
9:15
**liking (1)**
28:1
**limit (2)**
23:22;52:7
**limited (1)**
52:22
**limits (1)**
22:5
**liquidation (2)**
55:17,19
**list (6)**
21:17,23;29:9;
41:6;56:18;58:17
**listed (2)**
53:6,13
**listening (1)**
16:17
**litigate (1)**
12:24
**litigated (4)**
13:24;17:20;29:15;
36:16
**litigating (2)**
13:22;30:17
**litigation (9)**
13:17;15:15;16:22;
17:9;41:14;46:10;
47:5;50:4,5
**little (4)**
21:25;35:13;53:8;
59:21
**LLP (19)**
4:2,10,18;5:2,10;
6:2,10,18;7:2,11,19;
8:2,10,18;9:2,10,19;
10:1,10
**loan-by-loan-by-loan (1)**
13:23
**longer (1)**
40:13
**look (6)**
14:21;27:12;41:11;
51:7;52:18,20
**looked (1)**
30:23

**looking (3)**
17:12,22;57:20
**looks (1)**
22:23
**Los (2)**
9:23;10:14
**losses (1)**
15:12
**lot (8)**
12:20;15:9;19:21;
25:17;38:2;45:14;
52:6;57:21
**lots (1)**
39:20
**LOWENSTEIN (2)**
8:10;59:1

**M**

**MA (1)**
6:5
**Madison (1)**
10:22
**magnitude (1)**
20:25
**main (1)**
22:12
**majority (1)**
12:14
**makes (1)**
57:20
**making (2)**
34:15;40:24
**managed (1)**
15:20
**Manhattan (1)**
5:4
**manner (1)**
60:4
**Manville (1)**
51:20
**many (9)**
14:16;17:14;22:5,
5;32:17,19;33:4;
55:3;59:24
**MARK (2)**
8:7;9:15
**MARTIN (1)**
6:7
**Masumoto (8)**
44:5,6,13,15,21,25;
45:3,4
**mathematical (1)**
28:21
**matter (3)**
42:16;43:3;47:1
**matters (4)**
22:21;44:13;54:14,
18
**maximum (1)**
30:9
**may (16)**
12:6;13:12;14:6;

12-12020-mg    Doc 3875    Filed 05/30/13    Entered 06/04/13 09:07:28    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Pg 69 of 74
Case No. 12-12020-mg

May 29, 2013

18:18;21:18;26:22;
27:10;35:23;39:8;
41:7;48:16;49:24;
50:4,4;59:8;60:11
**maybe (4)**
30:23;31:12;33:7;
47:6
**MBIA (2)**
7:20;15:14
**MCCLOY (2)**
5:2;27:6
**mean (16)**
22:1;30:1;32:8,22;
33:7,11,20;35:25;
47:20;48:21;52:6;
53:23;54:18,23;55:1;
57:17
**means (1)**
44:20
**mechanism (1)**
57:23
**mediation (9)**
12:22;17:6;31:10;
36:3;41:6;46:22;
48:20,20;59:7
**mediator (1)**
13:11
**meet (3)**
20:8,14;45:18
**Mellon (2)**
5:11;20:22
**memoranda (1)**
24:11
**Memorial (1)**
31:5
**mentioned (1)**
59:4
**messages (1)**
28:10
**Metromedia (1)**
51:21
**MICHAEL (2)**
8:15;59:1
**middle (1)**
18:1
**might (3)**
27:13;49:15;50:19
**MILBANK (2)**
5:2;27:6
**MILBURN (1)**
6:10
**milestone (2)**
13:9;20:17
**million (4)**
14:5,7;32:22;45:13
**millions (2)**
12:23;17:9
**mind (1)**
45:21
**minimize (1)**
60:3
**minutes (1)**
12:8

**mistakenly (1)**
23:9
**mixed (1)**
28:10
**MOLONEY (1)**
9:16
**moment (1)**
30:18
**Monday (4)**
23:16;24:17,18;
27:2
**money (1)**
41:14
**monoline (2)**
15:7,14
**monolines (1)**
15:12
**month (2)**
16:17,17
**months (2)**
12:15;17:20
**more (7)**
13:18;23:6,9;27:8;
45:6;48:16;55:5
**MORGAN (1)**
7:11
**Morrison (1)**
12:5
**Mortgage (1)**
10:21
**most (1)**
19:24
**motion (17)**
16:3;18:19;19:1;
21:9;25:17,18,23,24;
26:1;32:21;39:2,6;
40:6;44:7;48:24;
55:12;56:12
**move (5)**
12:9;23:8;24:10;
25:8;30:13
**moved (1)**
44:10
**moving (3)**
26:12;30:8;44:7
**much (9)**
13:6;22:20;25:18;
41:25;48:19;52:23;
57:9;59:22;61:5
**MUNGER (1)**
9:19
**myself (2)**
21:8;23:17

**N**

**NA (1)**
7:3
**NAFTALIS (1)**
4:2
**name (1)**
56:5
**narrow (3)**

17:16;23:23;32:19
**National (2)**
10:2;45:11
**nearly (1)**
15:15
**necessary (5)**
26:11;31:13;32:13;
33:16;57:13
**need (16)**
19:16;21:16;29:3;
30:9,13;31:20;32:1,
5;33:20;34:13,14,17;
36:4;41:12;60:3,11
**needed (2)**
33:23;60:18
**needs (1)**
25:19
**negotiate (1)**
34:17
**negotiating (2)**
13:1;42:23
**negotiations (3)**
18:13;31:4;41:1
**NELSON (2)**
10:7;45:10
**New (19)**
4:5,21;5:5,11,13,
21;6:13,21;7:14,22;
8:5,13,21;9:5,13;
10:23;20:22;48:9;
59:2
**next (19)**
12:9;13:21;17:11,
12,20;19:21,23;
34:14;35:22;40:9,23;
42:15,15;50:9;54:13;
56:17;58:8;60:21,23
**NICHOLAS (1)**
10:25
**NJ (1)**
8:11
**nobody (2)**
24:7;55:2
**nonconsensual (1)**
50:15
**nondebtor (1)**
50:13
**none (1)**
58:12
**noon (4)**
24:18;25:12;26:7;
27:2
**Northern (1)**
54:20
**note (5)**
15:5;20:18;23:17;
56:24;58:3
**noted (1)**
21:18
**noteholders (4)**
17:1,3;27:7,21
**Notes (7)**
4:19;5:3;16:23;

35:15;36:19,22;
42:11
**notice (3)**
20:13;25:17,19
**notion (2)**
46:18,18
**notwithstanding (1)**
27:14
**nub (1)**
46:22
**nuclear (1)**
13:11
**number (9)**
12:3;14:14,19;
15:9;17:3;19:14;
28:11;45:17;47:15
**numbers (1)**
15:1
**numerous (1)**
51:4
**NW (2)**
4:12;10:3
**NY (5)**
4:5,21;5:5,13,21;
6:13,21;7:14,22;8:5,
13,21;9:5,13;10:23

**O**

**objection (1)**
24:21
**objections (8)**
24:18;25:11,24,25;
26:8,25;44:10;58:10
**objective (1)**
54:10
**observations (3)**
19:11;38:17;59:20
**observing (2)**
13:20;15:13
**Obviously (18)**
12:12;14:1;16:15,
21;18:22;19:22;20:4,
6,16;23:4;38:6;40:3;
48:5;49:9;54:10;
55:14;56:11;59:10
**occasion (1)**
20:10
**occasions (1)**
15:9
**o'clock (3)**
23:16,19,21
**October (11)**
20:12,14;33:19;
34:6,23,24;35:1,7;
38:15;40:22;57:22
**off (6)**
17:18;33:11,16,20;
38:10;41:19
**offered (1)**
21:24
**Official (2)**
4:3,11

**OID (1)**
39:1
**ointment (1)**
18:3
**OLSON (1)**
9:19
**once (1)**
43:22
**One (29)**
5:4;6:20;7:21;8:4;
9:12;12:21;15:14,14,
16;18:2,13,23;20:2;
21:13,22;22:7;27:8;
29:18;37:8;38:5,6,17,
22;43:4,13;50:10;
55:6,8;58:3
**ongoing (1)**
48:22
**only (6)**
12:25;19:17;33:2;
43:22;57:3;59:19
**on-the-record (1)**
44:17
**open (4)**
17:4;20:16;39:18;
50:3
**openly (1)**
40:14
**operating (1)**
26:5
**opportunity (4)**
18:17;20:6,18;22:4
**optimistic (1)**
41:3
**order (12)**
18:22;21:4,5,7,12,
16;29:16;41:6;48:2;
49:1;56:20;57:6
**orders (1)**
56:25
**original (3)**
14:11,13;36:10
**orphan (3)**
14:9,22,23
**others (3)**
25:6;45:13;55:5
**otherwise (4)**
12:23;16:13;30:25;
33:9
**ought (2)**
42:23;43:21
**ourselves (1)**
27:21
**out (21)**
17:12;20:9;26:11;
27:10,13;28:2,7;
35:12;36:2,25;37:13;
42:22,25;43:24;
45:16;46:24;47:2;
48:6;49:13;50:5;
56:22
**outside (2)**
28:13,15

**over (13)**
  12:15,21;13:22,24;
  15:16;17:9,12;19:21;
  31:19;35:13;38:6;
  40:9;51:20
**oversecured (7)**
  29:22;30:21;32:7;
  33:7;35:5;36:25;
  37:14
**overview (1)**
  12:7
**own (1)**
  41:12
**owned (1)**
  16:19
**owns (1)**
  15:11

**P**

**package (1)**
  43:12
**page (1)**
  53:25
**paid (3)**
  17:1;30:3;47:23
**painfully (1)**
  13:18
**painless (1)**
  34:10
**papers (1)**
  43:3
**par (1)**
  28:20
**parameters (1)**
  43:1
**Park (3)**
  6:20;7:13;8:4
**PARKE (1)**
  9:2
**part (12)**
  14:16;27:11,24;
  32:18;33:3;35:16;
  40:22;47:6,21,21,23;
  48:19
**participate (4)**
  31:9,10;36:3;49:21
**particularly (1)**
  45:14
**parties (23)**
  13:1,6;16:10;
  17:13;18:12;19:14;
  21:13;22:4;27:8,15;
  28:8,11;29:13,23;
  31:5;33:2;34:11,15;
  36:20;51:14;57:12,
  14;59:11
**party (2)**
  23:19;56:21
**path (2)**
  12:18;17:20
**pay (1)**
  32:22

**payment (1)**
  18:21
**PC (1)**
  10:19
**Peachtree (1)**
  7:4
**Peck (9)**
  12:20,25;13:5,6,
  10;41:3,7,11,15
**peculiar (1)**
  46:22
**penalty (2)**
  32:1,2
**pending (7)**
  29:14;30:12;38:22;
  39:3;54:19,20;58:4
**Pennsylvania (1)**
  4:12
**people (7)**
  20:6;22:22;26:3;
  30:23;39:20;41:2;
  43:23
**perhaps (2)**
  25:1;52:21
**PERLSTEIN (1)**
  4:15
**perspective (1)**
  50:19
**persuades (1)**
  43:11
**pertinent (1)**
  25:15
**petition (2)**
  17:2;30:15
**ph (1)**
  22:15
**phone (1)**
  42:4
**pick (1)**
  34:24
**picked (3)**
  22:25;23:6;34:25
**PICKERING (1)**
  4:10
**place (1)**
  17:19
**plaintiff (1)**
  59:2
**plan (54)**
  12:7,10,16,18;13:3,
  8,13,16;14:3;14:4;15:5,
  7;16:14,16,24;17:10,
  13,15,18,18,23;18:6,
  17,20;19:18,23;20:1,
  3;29:2,5,20;30:24;
  32:14;33:4,7;36:20;
  38:13;40:10;46:5,5,8,
  10,25,25;47:22;
  49:14;50:2,6,14,18;
  55:11;57:10;58:6,6
**Plaza (1)**
  5:4;8:4;9:4,12
**please (1)**

**12:2**
**pleased (2)**
  14:2;19:13
**plenty (1)**
  33:19
**plus (2)**
  17:1;28:20
**pm (2)**
  26:7;61:8
**point (8)**
  19:8;22:6;28:23;
  36:1;39:22;45:20;
  51:22;57:24
**pointed (1)**
  36:2
**position (6)**
  21:15;32:6,13;
  44:16;45:1;46:23
**possible (6)**
  33:4;34:11;41:24;
  55:7;60:2,6
**possibly (1)**
  32:20
**post- (1)**
  30:14
**post-confirmation (1)**
  38:10
**post-petition (7)**
  16:25;28:25;29:23;
  30:4,21;33:6;37:1
**potential (2)**
  38:25;39:1
**potentially (3)**
  13:23;16:11;22:21
**power (1)**
  57:7
**practical (1)**
  46:25
**pre- (1)**
  17:1
**precise (1)**
  60:8
**predate (1)**
  18:20
**predicted (1)**
  18:7
**prefer (1)**
  32:19
**preferential (1)**
  42:17
**prepared (9)**
  23:10;31:18;33:16,
  24;34:1,8;45:18;
  50:18;51:2
**pre-petition (2)**
  28:20;30:3
**present (1)**
  39:12
**press (1)**
  41:13
**pretty (2)**
  22:24;41:9
**prevail (1)**

**41:7**
**prevent (1)**
  13:11
**price (1)**
  16:15
**principal (1)**
  30:3
**principals (2)**
  12:22;31:10
**prior (5)**
  18:7;23:5;43:2;
  44:16;48:14
**private (1)**
  56:23
**Pro (1)**
  11:3
**probably (8)**
  12:24;13:18;30:17;
  34:3,6;35:6;40:20;
  60:23
**problem (3)**
  24:23,25;59:11
**procedural (1)**
  43:16
**procedurally (4)**
  29:2,5;38:18;44:9
**procedure (4)**
  30:6;33:3;57:14;
  60:7
**proceed (1)**
  38:12
**proceeding (9)**
  15:24;16:1;22:15;
  35:17;38:25;39:2;
  40:3,20,21
**proceedings (6)**
  29:14,17;30:12;
  38:22;40:18;61:8
**process (5)**
  20:2,13;21:2;24:8;
  41:10
**professionals (1)**
  12:21
**progress (3)**
  40:15,15,24
**proofs (3)**
  51:5,7,15
**proponents (2)**
  29:20;50:18
**proposed (3)**
  20:11;34:17;46:3
**proposes (1)**
  50:14
**provide (5)**
  16:25;19:18;30:24;
  34:12;46:8
**provided (3)**
  30:2;50:23;56:18
**provides (7)**
  12:17;18:21;36:12,
  13;46:4,7;57:11
**provisions (1)**
  53:11

**PSA (18)**
  16:9;19:2,16;
  21:19;26:11,19;
  29:24;36:10;37:6,7,
  12;39:15,15,18;
  44:22,23;47:7;50:11
**public (2)**
  39:16;44:24
**purposes (2)**
  44:19;61:3
**pursuant (1)**
  55:11
**pursue (1)**
  41:16
**pursuing (1)**
  17:18
**put (11)**
  25:22;31:25;32:2;
  33:8,11,16,20;35:3;
  41:6;51:20;53:8

**Q**

**quickly (4)**
  19:20;22:24;30:9,
  13
**QUINN (1)**
  10:10
**quite (3)**
  12:17;30:5;34:9

**R**

**race (2)**
  51:20,23
**raise (1)**
  45:6
**raised (1)**
  36:17
**raising (1)**
  49:17
**rather (1)**
  17:17
**RAY (3)**
  8:23;49:7,10
**reach (11)**
  17:12;18:10,10;
  27:9,15;37:7;40:9,10,
  12,16,17
**reached (6)**
  20:17;27:20;28:7;
  29:22;45:16;48:9
**Reaching (3)**
  12:19;18:5;50:20
**reaction (1)**
  40:8
**read (6)**
  29:12;36:17;38:6;
  40:6;48:3,9
**ready (1)**
  13:20
**real (3)**
  28:24;30:19;57:7

**realistic (1)**
28:3
**reality (2)**
36:4,8
**really (8)**
13:8;25:19;28:6;
29:10;38:4;41:12;
60:4,10
**reargue (1)**
31:22
**reason (5)**
27:17;31:12;33:1;
39:15;60:7
**reasons (1)**
31:8
**recall (3)**
15:2;21:20;27:10
**receive (1)**
46:9
**recognizing (1)**
28:13
**record (5)**
21:6;26:15;44:16;
45:1;61:2
**recoveries (1)**
46:6
**recovery (2)**
46:9;51:14
**reduce (1)**
46:6
**refer (1)**
24:13
**referred (1)**
42:12
**reflected (1)**
12:16
**reflects (1)**
19:16
**regard (1)**
17:22
**regarding (4)**
16:18;17:4,4;45:22
**regards (1)**
48:23
**rehabilitation (2)**
15:24;16:1
**rehabilitators (1)**
56:10
**reinvolve (1)**
41:15
**reiterate (1)**
19:11
**reject (1)**
18:18
**relates (1)**
21:2
**relating (2)**
15:25;56:22
**relation (2)**
14:8;15:13
**release (2)**
49:13;50:19
**releases (6)**

50:12,13,15,16;
52:10
**relevant (1)**
31:18
**relief (1)**
51:2
**remain (1)**
18:16
**remaining (2)**
14:22,23
**remains (1)**
31:18
**remarkable (3)**
12:17;15:6;17:2
**remarkably (1)**
38:1
**remember (2)**
48:11;51:8
**rep (1)**
14:5
**Reply (1)**
27:2
**report (3)**
18:4,16,23;19:1;
39:16,19
**represented (1)**
56:10
**representing (1)**
58:4
**represents (1)**
42:10
**requests (1)**
23:19
**require (4)**
29:20;43:3;54:14;
58:14
**required (7)**
21:19;55:5;57:3,3,
24;58:11;59:10
**reserved (1)**
50:2
**Residential (1)**
12:3
**resolution (10)**
13:3;29:19,21;
38:11;40:9,16,17;
49:6;50:20,20
**resolve (26)**
12:24;13:17;15:10,
20;16:4,24;30:7,7,10,
14,20;32:3,33:5,7,21;
34:15;35:22;38:2;
39:10;45:19;50:3,5,
10;57:14,22;58:7
**resolved (11)**
17:9;31:11;33:21;
34:4;35:8,14;36:14;
37:10;41:13;42:16;
47:21
**resolves (9)**
14:4,6,8,11;16:4,6,
9,13,21
**resolving (3)**

40:24;45:22;57:23
**respect (20)**
15:14,16,23;16:7,
23;28:9;29:2,5,14;
32:14;33:5;43:10,17,
18;47:19;50:13;
54:14;55:10;59:9;
60:23
**responses (1)**
27:1
**rest (1)**
31:7
**restricted (2)**
31:14,19
**restriction (1)**
40:13
**result (2)**
17:2;59:7
**resulted (1)**
48:10
**retain (2)**
46:11;60:3
**reviews (1)**
21:15
**revisit (2)**
36:4,11
**RICHARD (2)**
5:23;56:4
**right (37)**
12:2;14:25;20:2;
26:2;27:18;28:13;
29:24;31:2;34:9;
35:4,17;37:6,13,20;
38:12,16,22;41:25;
42:1;44:4;45:5,9;
46:2;48:1,13;49:23;
50:1;51:9,16;52:2;
54:4,9;56:17,17;
58:17;59:17;61:5
**rightfully (1)**
16:19
**rights (4)**
16:5;25:21,23;29:2
**RMBS (15)**
8:3;13:17,23;14:4,
8,10,11,24;15:5,11;
16:6;20:22;21:20;
43:10;49:21
**Rockefeller (1)**
9:4
**ROPES (1)**
6:2
**rose (1)**
33:1
**ROSS (1)**
6:7
**rough (2)**
35:10;43:1
**rubric (1)**
47:14
**ruled (1)**
54:22
**ruling (2)**

18:24;44:7

---

**S**

---

**same (10)**
16:7;19:1;20:8;
24:12;38:9;40:13;
43:22;46:7;54:22;
59:12
**SANDLER (2)**
8:10;59:2
**satisfied (2)**
37:18;44:19
**satisfy (1)**
51:21
**saved (1)**
17:8
**saw (1)**
48:1
**schedule (26)**
18:25;20:8,11,14,
15;21:23;26:13,18,
19,24;32:4;33:22,25;
34:17;35:12;42:23,
25;43:17,18,23;
45:21;57:19,20;58:1,
11,15
**scheduled (2)**
21:21;39:11
**schedules (3)**
20:5;26:6;43:24
**scheduling (6)**
29:16;30:16;34:16;
44:8;60:22;61:3
**SCHROCK (23)**
8:23;49:4,7,7,10,
10,17,20,23;50:2,17;
51:2,6,11,17,22;52:1,
3,17,19,24;53:1,3
**scope (1)**
38:25
**scoured (1)**
30:22
**Se (1)**
11:3
**seal (1)**
39:19
**sealed (1)**
18:16
**sealing (4)**
18:4,22;44:17,19
**seated (1)**
12:2
**second (2)**
38:24;55:13
**Section (12)**
21:19;29:11;44:18,
19;46:4,7;50:11;
52:4;53:5;56:18;
57:11,16
**Secured (10)**
4:19;5:3;16:23;
17:1,3;27:21;35:15;

36:19,22;42:10
**securities (16)**
15:21;45:12;46:9,
11,13,20;47:5,6,9,20;
49:19;53:24;54:16;
56:19,23;59:3
**securitization (2)**
15:15,17
**securitizations (1)**
14:24
**security (1)**
17:5
**seeing (1)**
18:20
**seek (3)**
16:1,12;60:9
**seemingly (1)**
52:22
**seems (1)**
30:8
**SEIFE (1)**
9:7
**senior (1)**
15:10
**separate (5)**
15:16;16:2;38:21;
47:5;48:20
**September (1)**
34:6
**series (1)**
12:22
**serious (1)**
34:14
**servicing (1)**
14:7
**sessions (1)**
48:21
**set (15)**
21:23;22:5;23:18,
24;24:21;25:7;26:13;
34:20;35:4,10;39:3;
43:17,18,19;45:15
**setting (1)**
42:19
**settle (2)**
30:16;48:18
**settled (1)**
32:24
**settlement (20)**
13:21;14:11,13;
15:23;16:8,13,20;
20:24,25;21:1;23:4;
41:1;48:3,9;49:22;
50:12;51:24;52:3;
54:16;57:4
**settlements (1)**
48:14
**settles (1)**
15:7
**seven (1)**
22:22
**several (7)**
13:22;14:6,9;

15:20;17:20;28:6;
30:22
**SEWARD (1)**
8:2
**shall (3)**
46:5,11;56:20
**sheet (21)**
20:9;29:11,24,24;
30:1,2,22;36:12,12,
17,18;39:18;45:15;
46:4,8;50:11;52:4;
53:4,13;56:18;57:10
**sheets (5)**
12:7;13:4,17;
29:13;30:1
**shift (2)**
18:13;54:13
**SHORE (3)**
4:23;30:20;60:25
**short (2)**
22:22;24:8
**shortly (1)**
45:24
**shown (1)**
38:1
**shrunk (1)**
53:8
**SIEGEL (22)**
5:15;20:20,21,21;
22:1,7,10,12;23:2,11,
14,25;24:4,13,16,20;
25:1,4,9,11;26:20,21
**sign (4)**
21:7;28:18,19;
31:13
**signed (1)**
36:9
**significant (8)**
13:9;15:19;16:8;
20:17;29:1;43:3;
50:22;51:23
**significantly (1)**
17:7
**signing (1)**
21:13
**silent (1)**
29:13
**similar (1)**
44:10
**simply (2)**
19:11;40:2
**single (2)**
40:20;58:3
**sit (1)**
28:14
**sits (1)**
55:21
**sitting (1)**
18:3
**six (4)**
15:15;18:7;22:17,
22
**size (1)**

20:7
**slight (1)**
18:3
**small (1)**
40:11
**SODA (1)**
22:16
**solution (1)**
43:16
**somebody (3)**
14:19;55:2,25
**somebody's (1)**
57:18
**somehow (1)**
31:25
**someone (1)**
43:11
**sometimes (1)**
13:1
**somewhat (3)**
18:19;36:6,7
**somewhere (1)**
35:6
**soon (1)**
41:4
**sophisticated (1)**
41:11
**sorry (6)**
21:8;24:23;33:14;
46:18;56:3;59:1
**South (1)**
9:21
**SPAEDER (2)**
10:1;45:10
**speak (6)**
19:16;31:3;40:14;
52:17;60:24,25
**SPEAKER (1)**
24:22
**speaking (1)**
20:22
**special (1)**
55:18
**specific (6)**
21:19;26:14;35:4,
10;47:7;53:7
**specifics (1)**
36:4
**spend (2)**
34:14;35:21
**spending (1)**
41:14
**spent (4)**
13:21;16:17;30:16,
17
**spoken (1)**
45:13
**stage (1)**
22:1
**stand (2)**
28:5;42:23
**standpoint (1)**
44:18

**start (4)**
12:6;35:11;43:4,13
**started (3)**
28:8;31:4;32:16
**state (6)**
44:15;45:1;55:21;
56:2,5,8
**statement (9)**
12:10;17:23;18:1;
19:23;20:3;21:22;
46:5;60:9,15
**States (3)**
58:5
**status (4)**
12:6;40:25;43:14;
61:2
**STEEN (1)**
9:10
**Steering (1)**
6:3
**step (1)**
19:23
**steps (2)**
12:9;17:11
**STEVENS (1)**
10:19
**STEWART (1)**
11:2
**still (6)**
19:16;23:23;24:3;
48:15,17;52:21
**STRAUSS (2)**
6:18;42:9
**Street (5)**
5:20;6:4,12;7:4;
10:3
**striving (1)**
36:9
**structure (5)**
16:11;46:25;47:24;
53:14;60:1
**sub (1)**
39:8
**subject (1)**
59:10
**subordinate (1)**
15:11
**subordinated (1)**
14:1
**substance (1)**
33:3
**substantial (2)**
12:14;50:22
**substantive (2)**
16:10,12
**substantively (2)**
29:1,4
**sufficient (3)**
21:6;23:5;31:12
**sufficiently (1)**
19:24
**suggest (3)**
25:17;40:1,7

**suggested (2)**
41:18;59:8
**suggesting (1)**
60:17
**suggestion (3)**
39:5;42:19;59:13
**suggests (1)**
38:11
**Suite (3)**
7:5;10:4,13
**SULLIVAN (1)**
10:10
**summary (1)**
19:12
**summer (2)**
34:7,8
**supplemental (12)**
29:11,24;30:2;
36:12,18;45:15;46:8;
49:1;53:4,13;56:18;
57:10
**support (22)**
12:7,16;13:3,8,13,
16;14:4;15:5,6,7;
16:16,24;17:10,13,
15,19;18:6,17;20:1;
36:21;55:11;58:6
**supporting (1)**
50:16
**Supreme (1)**
55:16
**sure (16)**
22:3;23:4;24:9;
26:11,15;33:10;37:9;
39:14;43:2;45:23;
46:3;47:17;48:1;
55:25;58:1,13
**surprised (1)**
28:10
**surrounding (1)**
18:8
**suspect (1)**
57:17
**Swain (2)**
48:2,7
**swept (1)**
54:7

**T**

**TABIN (1)**
11:2
**table (3)**
13:1;36:5;60:16
**TAFT (1)**
7:19
**Talcott (1)**
6:11
**talking (3)**
22:18;34:22;43:1
**task (1)**
12:19
**Tax (1)**

54:18
**telephone (4)**
40:25;42:22;60:22;
61:2
**telephonic (1)**
42:19
**TELEPHONICALLY (5)**
9:25;10:7,16,25;
11:2
**telling (1)**
13:6
**ten (1)**
42:15
**tens (3)**
12:23;15:21;17:9
**tent (1)**
31:15
**term (26)**
12:7;13:4,16;20:9;
29:11,12,24,24;30:1,
1,2,22;36:12,12,17,
18;39:18;45:15;46:4,
8;50:11;52:4;53:4,
13;56:18;57:10
**terminate (1)**
29:25
**terms (9)**
13:2;17:11;18:21;
31:19;38:9;44:8;
45:21;58:5;59:20
**terribly (1)**
28:10
**testimony (4)**
21:14;22:23;35:14;
43:8
**Thanks (3)**
26:21;41:25;44:4
**there've (1)**
48:13
**third (3)**
51:14;52:21;55:7
**third- (1)**
56:20
**third-party (7)**
49:13;50:5,12,13,
25;52:10;57:1
**thirty- (1)**
25:22
**THOMAS (2)**
9:16,25
**though (2)**
32:12;42:18
**thought (6)**
23:4;25:24;36:1;
38:20;47:17;59:5
**three (6)**
17:12;23:22;38:21;
54:1;55:9;58:8
**thrilled (1)**
12:12
**throughout (1)**
58:5
**Thursday (3)**

12-12020-mg    Doc 3875    Filed 05/30/13    Entered 06/04/13 09:07:28    Main Document
Pg 73 of 74
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

May 29, 2013

12:8;23:18,21
**tight (3)**
  26:6;32:4;33:22
**till (2)**
  25:5,6
**timely (1)**
  51:15
**times (1)**
  30:22
**timing (3)**
  15:25;18:9,19
**TIPS (1)**
  22:15
**titled (1)**
  46:4
**today (5)**
  28:5;31:21;48:9;
  56:12,15
**told (1)**
  49:18
**TOLLES (1)**
  9:19
**took (1)**
  21:8
**total (1)**
  14:19
**toward (1)**
  60:23
**towards (5)**
  12:10,18,22;18:14,
  14
**Tracy (1)**
  10:20
**train (1)**
  26:5
**transpired (1)**
  59:6
**treated (1)**
  47:11
**Treatment (6)**
  29:11;36:8,9;
  45:14;54:11;56:19
**trial (10)**
  13:20;21:20;34:6;
  35:5;37:14;40:21;
  43:4,5,10,13
**tried (1)**
  59:22
**tries (1)**
  36:24
**trip (1)**
  41:4
**trouble (1)**
  43:24
**truly (1)**
  18:13
**Trust (17)**
  9:11;14:9;46:10;
  47:5,8,9,13,14,14,15,
  24,24;53:24;57:12,
  13;59:22;60:13
**Trustee (7)**
  8:3;10:21;21:10;

22:8,10;42:10;44:18
**trustees (9)**
  15:5;20:23;21:2,
  21;22:9,11,13;24:6;
  26:14
**trustees' (1)**
  25:19
**trustee's (2)**
  14:5;16:6
**trusteeship (1)**
  22:13
**trusts (9)**
  14:9,14,15,22,23;
  15:11;16:7;24:5;
  53:24
**try (8)**
  20:5;27:9;36:1;
  41:13;45:19;55:13;
  58:7;60:8
**trying (7)**
  24:24;30:16;34:9;
  35:22;48:15;50:3;
  60:1
**turn (5)**
  13:13;22:2;24:7,9;
  26:10
**turns (1)**
  25:2
**TWEED (2)**
  5:2;27:6
**twelve (1)**
  12:15
**two (9)**
  12:8;21:8;23:5,9;
  29:14;38:17,21;
  40:18;42:11
**type (2)**
  45:21;53:17
**Typically (1)**
  25:18

## U

**ultimately (1)**
  36:3
**UMB (2)**
  6:19;42:10
**uncertainty (1)**
  18:8
**unclear (8)**
  29:25;30:5;37:3,5,
  9;47:4,8;53:20
**under (9)**
  16:2;18:21;26:5;
  31:23;39:19;46:10;
  49:22;50:2;57:16
**underestimate (1)**
  38:4
**undersecured (3)**
  30:4,24;35:6
**understood (6)**
  18:12;24:4;39:17;
  40:2;43:14;52:24

**underway (1)**
  48:17
**unfair (1)**
  47:18
**unfortunate (1)**
  18:20
**unhappy (1)**
  32:23
**UNIDENTIFIED (1)**
  24:22
**Union (3)**
  10:2;45:11;55:4
**United (1)**
  58:5
**universe (2)**
  22:18;25:20
**unless (4)**
  24:24;39:5;43:11;
  52:14
**unprecedented (1)**
  50:22
**unseal (3)**
  18:19;19:1;44:7
**unsealed (4)**
  44:21,22,23,24
**unsecured (8)**
  13:25;47:12,15,16;
  53:6,12;54:4,11
**up (10)**
  21:18;22:25;23:8;
  30:23;34:5;38:13;
  42:18;50:8;57:19;
  60:1
**upon (1)**
  21:11
**urged (1)**
  27:8
**urging (1)**
  27:9
**URQUHART (1)**
  10:10
**use (2)**
  12:21;41:10
**used (2)**
  30:17;44:20
**useful (1)**
  20:4
**user-friendly (1)**
  60:2
**usually (1)**
  43:12
**utilization (1)**
  57:15
**UZZI (27)**
  5:7;27:4,5,5,25;
  28:17,19;29:8;30:20;
  31:1,11,17,23,24;
  32:10,24;33:12,14,
  19,24;34:8;35:25;
  36:7;41:19,21,23;
  60:25
**Uzzi's (1)**
  40:17

## V

**validity (1)**
  16:18
**valuation (1)**
  35:13
**value (1)**
  35:21
**variety (1)**
  31:8
**verify (2)**
  44:9,9
**video (1)**
  54:21
**view (6)**
  19:22;31:11;33:19;
  39:21;52:20,21
**virtually (1)**
  24:2

## W

**Wait (2)**
  42:5,5
**walk (3)**
  32:7;37:6,13
**Wall (1)**
  6:12
**WALPER (1)**
  9:25
**wants (2)**
  34:12;55:2
**war (2)**
  13:11;41:14
**warranty (1)**
  14:5
**Washington (2)**
  4:13;10:5
**water (1)**
  31:22
**wavelength (1)**
  38:9
**way (9)**
  18:13,23;35:3;
  37:19;38:12;46:6;
  57:2,5;61:3
**ways (1)**
  21:1
**Wednesday (1)**
  26:7
**week (12)**
  34:14;35:7,22;
  40:23;42:15,22,25;
  43:4,13;48:22;55:13;
  60:23
**weekend (1)**
  31:6
**weeks (7)**
  17:12;19:17,21;
  23:5;27:7;40:9;58:8
**Weil (1)**
  56:10

**WEITNAUER (1)**
  7:8
**Wells (2)**
  7:3;22:13,14
**weren't (2)**
  28:21;31:15
**West (1)**
  7:4
**what's (9)**
  12:15;22:15;35:14,
  20,21;46:3;50:15;
  57:25;58:11
**whatsoever (1)**
  37:22
**Whereupon (1)**
  61:8
**WHITE (1)**
  4:18
**whole (1)**
  24:8
**who's (1)**
  36:18
**whose (1)**
  53:12
**WICKERSHAM (1)**
  7:19
**wide (2)**
  39:18;40:11
**WILLIAM (1)**
  4:15
**WILMER (1)**
  4:10
**Wilmington (1)**
  9:11
**wind (2)**
  22:25;34:5
**WINSTON (1)**
  10:16
**wish (2)**
  19:8;46:1
**within (4)**
  47:9,14;51:19;54:7
**without (2)**
  46:21;49:2
**words (1)**
  56:22
**work (4)**
  34:8;43:23;57:20;
  59:22
**worked (1)**
  31:5
**working (2)**
  35:11;43:24
**World (1)**
  7:21
**worth (2)**
  13:20;15:13
**wrapped (2)**
  15:18;49:5
**wrestled (1)**
  19:25
**writing (1)**
  59:6

**written (2)**
43:8;57:3
**WYNNE (6)**
5:23;56:2,4,4,8,15

**Y**

**years (3)**
12:24;13:22;15:15
**York (17)**
4:5,21;5:5,11,13,
21;6:13,21;7:14,22;
8:5,13,21;9:5,13;
10:23;20:22

**Z**

**ZUCKERMAN (2)**
10:1;45:10

**0**

**02199 (1)**
6:5

**1**

**1 (2)**
47:13,14
**10 (1)**
10:13
**1000 (1)**
10:4
**10004 (1)**
8:5
**10005 (2)**
5:5;6:13
**10006 (1)**
9:13
**10017 (1)**
5:21
**10020 (1)**
8:13
**10022 (2)**
8:21;10:23
**10036 (4)**
4:5,21;5:13;6:21
**101 (1)**
7:13
**10112 (1)**
9:5
**10178 (1)**
7:14
**10281 (1)**
7:22
**1031 (2)**
54:18;57:5
**105 (1)**
44:19
**107 (1)**
44:18
**1095 (1)**
5:12

**10th (5)**
21:7;23:9,15,16;
24:11
**11 (1)**
46:14
**1155 (1)**
4:20
**1177 (1)**
4:4
**1201 (1)**
7:4
**12-12020 (1)**
12:3
**1251 (1)**
8:12
**12th (10)**
21:8,9,25;22:20;
38:23,24;39:3,4,6,12
**13th (1)**
23:18
**14th (1)**
34:21
**150 (1)**
12:21
**1800 (1)**
10:3
**1873 (1)**
4:12
**19th (9)**
24:22,23;25:6,11,
25;26:7,8,25;44:10

**2**

**2 (3)**
6:12;47:14,15
**2.1 (1)**
16:15
**20006 (1)**
4:13
**20036 (1)**
10:5
**20th (1)**
23:21
**21st (1)**
25:12
**222 (1)**
5:20
**24 (2)**
24:17,18
**24th (2)**
25:5;27:2
**26th (5)**
17:16;18:24;19:1;
37:11;44:8

**3**

**3 (1)**
53:25
**3:14 (1)**
61:8
**30 (1)**

**9:4**
**300 (1)**
45:13
**30309 (1)**
7:6
**30th (1)**
35:2
**31 (1)**
41:7
**355 (1)**
9:21
**35th (1)**
9:22
**392 (2)**
14:14,15
**3rd (4)**
17:23,25;18:24;
20:3

**4**

**400s (1)**
15:1
**41st (1)**
5:20
**4200 (1)**
7:5
**485 (1)**
10:22

**5**

**5 (4)**
23:16,18,21;26:7
**5.2 (1)**
21:19
**502 (2)**
57:16,23
**510b (1)**
47:20

**6**

**600 (1)**
14:5
**601 (1)**
8:20

**7**

**7 (1)**
10:21
**7th (2)**
35:7;38:15

**8**

**800 (2)**
6:4;32:22
**865 (1)**
10:12

**9**

**9 (1)**
12:8
**90017 (1)**
10:14
**90071 (1)**
9:23
**9019 (3)**
13:17;16:2;21:2