MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:      (212) 468-7900
Gary S. Lee
Stefan W. Engelhardt
Alexandra Steinberg Barrage

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
                                                             )
    In re:                                      )    Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,    )    Chapter 11
                                                             )
                                  Debtors.  )    Jointly Administered
                                                             )
---------------------------------------------------------------------

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR JOINDER TO MOTION BY ALLY FINANCIAL INC. AND ALLY BANK FOR AN ORDER ENFORCING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(a)(3) BY (1) ENJOINING PROSECUTION OF ALTER EGO AND VEIL PIERCING CLAIMS IN THE CLASS ACTION ENTITLED *LANDON ROTHSTEIN, ET AL. V. GMAC MORTGAGE, LLC, ET AL.*, AND (2) DECLARING SUCH CLAIMS VOID *AB INITIO***

ny-1086627

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................2

ARGUMENT ..................................................................................................................................3

    A.    The Alter Ego Claims Advanced by the Plaintiffs. ................................................3

    B.    The Claims as Alleged Against AFI, are Estate Claims That May Only Be Prosecuted By The Debtors. ...................................................................................6

    C.    Relief From the Automatic Stay is Not Warranted. ..............................................11

CONCLUSION .............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Duke Energy Trading & Marketing, LLC v. Enron Corp. (In re Enron)*,
    2003 WL 1889040 (Bankr. S.D.N.Y. 2003) ................................................................... 7, 8

*Gosconcert v. Hillyer*,
    158 B.R. 24 (S.D.N.Y. 1993) ............................................................................................. 12

*In re Alper Holdings*,
    398 B.R. 736 (S.D.N.Y 2008) ................................................................................... 6, 9, 10

*In re Blockbuster Inc.*,
    2011 WL 1042767 (Bankr. S.D.N.Y. Mar. 17, 2011) ....................................................... 12

*In re Cabrini Med. Ctr.*,
    No. 09-14398 (ALG), 2012 Bankr. LEXIS 2747 (Bankr. S.D.N.Y. June 15, 2012) ....... 6, 10

*In re Commodore Int'l Ltd.*,
    262 F.3d 96 (2d Cir. 2001) ................................................................................................ 13

*In re Ross*,
    1997 WL 92044 (Bankr. M.D. Fla. Feb. 19, 1997) ........................................................... 13

*In re SmartWorld Techs.*, LLC,
    423 F.3d 166 (2d Cir. 2005) .............................................................................................. 12

*In re STN Enters.*,
    779 F.2d 901 (2d Cir. 1985) .............................................................................................. 13

*In re Zwirn*,
    362 B.R. 536 (Bankr. S.D. Fla. 2007) ............................................................................... 12

*Keene Corp. v. Coleman (In re Keene Corp.)*,
    164 B.R. 844 (Bankr. S.D.N.Y. 1994) .............................................................................. 12

*Koch Ref. v. Farmers Union Cent. Exch, Inc.*,
    831 F.2d 1339 (7th Cir. 1987) ............................................................................................. 6

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990) ....................................................................................... 11, 12

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
    884 F.2d 688 (2d Cir. 1989) ...................................................................................... 8, 9, 10

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Stefan W. Engelhardt
Alexandra Steinberg Barrage

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR JOINDER TO MOTION BY ALLY FINANCIAL INC. AND ALLY BANK FOR AN ORDER ENFORCING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362(a)(3) BY (1) ENJOINING PROSECUTION OF ALTER EGO AND VEIL PIERCING CLAIMS IN THE CLASS ACTION ENTITLED *LANDON ROTHSTEIN, ET AL. V. GMAC MORTGAGE, LLC, ET AL.*, AND (2) DECLARING SUCH CLAIMS VOID *AB INITIO***

Debtor Residential Capital, LLC and its affiliated debtors in these chapter 11 cases (collectively, the "Debtors") respectfully submit this Reply in Further Support of their Joinder to the Motion (the "Motion") by Ally Financial Inc. ("AFI") and Ally Bank for an Order Enforcing the Automatic Stay Pursuant to 11. U.S.C. § 362(a)(3) by (1) Enjoining Prosecution of Alter Ego and Veil Piercing Claims in the Class Action Entitled *Landon Rothstein, et al v. GMAC Mortgage, LLC, et al.,* and (2) Declaring Such Claims Void *Ab Initio* (Docket No. 2511). In further support of the Joinder, the Debtors respectfully state as follows:

ny-1086627

**PRELIMINARY STATEMENT**

1. The arguments advanced by the *Rothstein* plaintiffs (the "Plaintiffs") in their objection (the "Objection") to the Motion are premised upon a fundamental misinterpretation of the jurisprudence regarding "general claims." Under applicable law, such general claims are estate claims and can only be prosecuted by a debtor-in-possession or a trustee. Alternatively, if the claim is considered "personal" to a claimant, the claim belongs to, and may be prosecuted by, that claimant. The Objection mistakenly asserts that the Plaintiffs' alter ego and veil-piercing allegations advance claims that are "personal" to them.

2. Courts in the Second Circuit consistently hold that alter ego and veil-piercing claims (collectively "alter ego" claims) asserting no injury that is particular to the claimant itself are general claims that can be only asserted by the estate. The alter ego claims advanced by the Plaintiffs in the Second Amended Complaint (the "Complaint")[1] fall precisely into this category. These claims do not involve any activity targeted specifically at the Plaintiffs, or any unique injury specific to the Plaintiffs. Rather, the Plaintiffs' alter ego allegations describe the same conduct by AFI that allegedly injured all of the Debtors' creditors: "harvesting" of subsidiary assets, "domination" of its subsidiaries, disregard of corporate formalities, causing the Debtors to file for bankruptcy, and control over its subsidiaries' servicing activities. Such claims are not personal; they are general claims that can only be brought by the estate. Accordingly, the automatic stay operates to enjoin prosecution of those estate claims.

3. Additionally, the Plaintiffs request that should this Court find that the alter ego claims are estate claims subject to the automatic stay, the Court lift the stay and allow the prosecution of such claims by the Plaintiffs. A party, however, can only request stay relief for

---

[1] In their Joinder, the Debtors referenced their belief that the operative complaint was the First Amended Class Action Complaint and, indeed, the Motion addressed that complaint. Subsequent to the filing of the Motion, the Plaintiffs filed their Second Amended Class Action Complaint and that is now the operative complaint in the action. The Debtors believe that such amendment has no impact on the arguments before this Court.

2

ny-1086627

those claims that it has standing to bring. A determination of this issue would, at a minimum, be premature given the pending motion before this Court regarding approval of the Plan Support Agreement,[2] and the Creditors' Committee agreement to temporarily refrain from commencing litigation (including alter ego claims) against the AFI Defendants under such Agreement. Even if determination of the Plaintiffs' standing request were timely, only the estate (or the estate's representative) could prosecute such claims. The Plaintiffs cannot seek stay relief for claims that can only be brought by the Debtors or the Creditors' Committee, as applicable.

4. Accordingly, for all the reasons described herein, the Debtors respectfully request that this Court grant the Motion.

## ARGUMENT

### A. The Alter Ego Claims Advanced by the Plaintiffs.

5. While the Plaintiffs assert in their Objection that the Complaint advances allegations demonstrating personalized injury to the Plaintiffs, a review of those allegations, in light of the case law precedent in this Circuit, reveals otherwise. The Complaint lays out various categories of allegations that the Plaintiffs assert evidence AFI's "domination and control of its subsidiaries, including ResCap and GMACM." Complaint p. 51. These categories include:

- "Ally Financial's Vertically Integrated Single Enterprise." Complaint ¶¶148-154;

- "Ally Financial Causes ResCap and GMACM To File For Bankruptcy." Complaint ¶¶ 179-186;

---

[2] On April 11, 2013, the Creditors' Committee filed a motion seeking entry of an order authorizing it to prosecute and settle certain claims on behalf of the Debtors' estates against AFI and certain of AFI's non-debtor affiliates (the "AFI Defendants") [Docket No. 3412]. Prior to the filing of this motion, the Debtors consented to the Creditors' Committee's standing to investigate the claims and initiate an adversary proceeding against the AFI Defendants. This motion was heard by the Court on May 7, 2013, but the Court reserved any decision on the motion. As a result of the Debtors' entry into the Plan Support Agreement, which remains subject to this Court's approval, see Docket No. 3814, the Creditors' Committee's motion seeking to pursue claims or Causes of Action against the AFI Defendants on behalf of the Debtors' estates are stayed. In any event, the Plaintiffs cannot seek stay relief for claims that can only be brought by the Debtors or the Creditors' Committee, as applicable.

3

ny-1086627

- "Ally Financial's Pre-Petition 'Harvesting' of Subsidiary Assets." Complaint ¶¶ 187-195;

- "Ally Financial's Domination of ResCap and GMACM." Complaint ¶¶196-224;

- "Ally Financial's Disregard of Corporate Formalities." Complaint ¶¶225-234; and

- "Ally Financial's Control of GMACM's Servicing Practices, Including Those Related to [Lender Placed Insurance]. Complaint ¶¶235-242.

6. The Plaintiffs then highlight in their Objection those individual allegations that they assert demonstrate the particularized nature of the injury allegedly suffered. Those allegations include:

- "'The day-to-day business operations of . . . GMACM were run at the direction of and controlled by Ally Financial . . .' and "Ally Financial ultimately controlled every aspect of the mortgage . . . servicing process." Objection ¶33 (quoting Complaint ¶149)(omissions in original);

- "Ally Financial admitted that 'Ally Financial engages in the business of servicing residential mortgage loans through various indirect subsidiaries, including GMAC Mortgage and is subsidiaries,' and that it 'operate[s] directly and through our subsidiaries and affiliates. . . . We . . . service . . . residential . . . mortgage loans and mortgage related products." *Id.* (quoting Complaint ¶¶150-151 (omissions in original);

- AFI's control over alleged servicing misconduct is evidenced by "Ally Financial's execution of a consent order with the Federal Reserve Board ("FRB") and Federal Deposit Insurance Corporation ("FDIC") in 2011 (the "Consent Order"), agreeing to oversee, supervise, and monitor GMACM's mortgage servicing operations to make sure that those operations comply with all legal requirements." *Id.* (quoting Complaint ¶ 152);

- AFI's control over alleged servicing misconduct is also evidenced by "Ally Financial's designation of an Ally Financial risk manager, Mark Weintraub, to be responsible for GMACM's compliance with the Consent Order." *Id.,* (quoting Complaint ¶153);

- AFI's control over alleged servicing misconduct is further evidenced by "Ally Financial's submission of reports to the FRB and FDIC regarding Consent Order compliance on a joint basis with GMACM based on the stated belief that 'enterprise risk management is a holistic and continuous

4

> process involving governance, policies, procedures, tools, methodologies and resources that transcend legal entity and organizational boundaries." *Id.* (quoting Complaint ¶238); and

- AFI's control over alleged servicing misconduct is also evidenced by AFI's agreement to be secondarily liable for GMACM's financial obligations under the Consent Order (citing Complaint ¶240); the complaint filed by 49 states' attorneys general seeking to hold AFI liable for alleged servicing improprieties (citing Complaint ¶241); and AFI's agreeing to a resolution of the attorneys general's action by agreeing to implement reform of GMACM's mortgage servicing practices (citing Complaint ¶242). *Id.*

The Plaintiffs state in their Objection that such claims "allege 'particularized injury,' and thus are not subject to the automatic stay." Objection ¶35.

7. These alter ego allegations serve as the exclusive foundation for the assertion of liability against AFI in each of Counts III through VII of the Complaint. Thus, in Count III the Plaintiffs allege that "Ally Financial is vicariously liable for GMACM's violations of RESPA by virtue of the fact that, as alleged above, GMACM and its parent, ResCap, operated as the mere instrumentalities or alter-egos of Ally Financial at all relevant times hereto." Complaint ¶311. Similarly, the Plaintiffs allege in Count IV that "Ally Financial is vicariously liable for GMACM's breaches of contract by virtue of the fact that, as alleged above, GMACM and its parent, ResCap, operated as the mere instrumentalities or alter-egos of Ally Financial at all relevant times hereto." Complaint ¶320. *See also* Complaint ¶330 (Count V: "Ally Financial is vicariously liable for GMACM's breaches of contract . . . ."); Complaint ¶338 (Count VI: "Ally Financial is liable for GMACM's unjust enrichment . . . ."); and Complaint ¶350 (Count VII: "Ally Financial is vicariously liable for GMACM's breaches of fiduciary duty . . . .")

8. In each of Counts III through VII (hereinafter, the "Claims"), the Complaint attributes primary liability only to GMACM. Liability against AFI is premised solely upon the secondary, alter ego theory of liability.

5

ny-1086627

**B.     The Claims as Alleged Against AFI, are Estate Claims That May Only Be Prosecuted By The Debtors.**

9.     As set forth in the Debtors' Joinder, a cause of action "belongs to the bankruptcy trustee and is considered property of the estate" when two conditions are met: "(1) the claims must be one that the trustee has a right to assert under the applicable state laws; and (2) the claim must be general to the corporation rather than personal to the creditors." *In re Alper Holdings,* 398 B.R. 736, 759 (S.D.N.Y 2008)(citations omitted). Here, the Plaintiffs do not contest that the Debtors have the right to assert the alter ego claims under the applicable Delaware law. Indeed, the Plaintiffs acknowledge that right. *See* Objection at ¶26 ("[t]o be sure, Delaware law 'allows a debtor corporation to pierce its own corporate veil, thereby giving a bankruptcy trustee or debtor-in-possession exclusive standing to assert an alter ego claim on behalf of the bankruptcy estate'")(citation omitted). The Plaintiffs contend, however, that the alter ego claims they advance in the Complaint are not general to the corporation, but rather particular to the Plaintiffs themselves.

10.     A cause of action is only considered "personal," "if there is only injury to one or a select group of specific creditors, and other creditors have no interest in the action." *In re Cabrini Med. Ctr.*, No. 09-14398 (ALG), 2012 Bankr. LEXIS 2747, at *29 (Bankr. S.D.N.Y. June 15, 2012) (citing *Koch Ref. v. Farmers Union Cent. Exch, Inc.*, 831 F.2d 1339, 1348-1349 (7th Cir. 1987) ("[a] cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause."). "The equally valid mirror-image principle is that a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner." *Koch Ref.*, 831 F.2d at 1349 (citations omitted). *See also, Cabrini,* 2012 Bankr. LEXIS 2747, at *30 ("[i]f the direct injury stemming from the misuse of

6

the corporate form and misappropriation of corporate assets is to the controlled entity, and merely reduces assets available to pay creditors, the cause of action belongs to the corporation.")

11. The specific alter ego claims alleged in the Complaint fall squarely within the ambit of those allegations that courts in this Circuit have held to set forth claims that are general to the corporation. Here, as set forth above, the Plaintiffs alter ego claims include the "harvesting" of assets by AFI from its subsidiaries; disregard of corporate formalities, AFI's control and domination of its subsidiaries, and directing the Debtors to file for bankruptcy. The case law in this Circuit clearly holds that such allegations advance general claims.

12. Judge Gonzalez's opinion in *Duke Energy Trading & Marketing, LLC v. Enron Corp. (In re Enron)*, 2003 WL 1889040 (Bankr. S.D.N.Y. 2003), is instructive. In seeking relief regarding certain transactions into which the Duke Energy plaintiffs entered with certain Enron subsidiaries, the plaintiffs there advanced allegations strikingly similar to those advanced by the Plaintiffs in the Complaint:

> The Duke Entities allege that although the various transactions were entered into by [certain Duke Energy companies] with one or another of the Debtors as a nominal counterparty, **the Debtors actually conducted the trading business as a single enterprise without regard to corporate form**. The Duke Entities maintain that the trading subsidiaries were undercapitalized shell entities that **were managed on an enterprise-wide basis** and depended on the commingled resources of the Debtors and the creditworthiness of Enron Corp. It is further alleged that **Enron Corp. structured and operated the commodity trading business and presented it to the public as a single enterprise.** The Duke Entities detail the manner in which they allege **the trading subsidiaries were operated as alter egos of Enron Corp. and by which the corporate form was disregarded.** In addition, it is alleged that the Debtors financial results were reported in a fraudulent manner. It is alleged that Enron Corp. falsely inflated income and revenue by manipulating its corporate structure, **looting its trading subsidiaries,** mischaracterizing transactions with various special purpose entities, and overstating the value of assets.

2003 WL 1889040, at *1 (emphasis added).

7

ny-1086627

13.     Judge Gonzalez noted that "the trustee or debtor-in-possession is the proper party to assert a claim if the claim is general, with no particularized injury, and may be brought by any creditor." *Id.* at *5. He then went on to hold that the allegations set forth by the Duke Energy plaintiffs did, in fact, assert only general, and not particularized, claims:

> The conduct described in the Amended Complaint by which various Debtors were allegedly looted and controlled by other of the Debtors and which allegedly caused the Duke Entities to suffer injury is the same conduct that allegedly injured all of the other creditors of the various Debtors to whom obligations were not met. The conduct set forth in the Amended Complaint was not directed at the Duke Enterprises specifically. Rather, if proven, the conduct equally harmed all creditors of the respective allegedly looted estates . . . . These allegations have been made by other creditors of the estates. Indeed, the parties concede that the allegations have been included in various governmental or examiner reports. The conduct alleged relates to the overall operations of the Debtor entities and impacted each Debtors' creditors generally. All creditors of a particular looted Debtor would benefit from the successful prosecution of an action to pierce the corporate veil of that Debtor to reach assets held by other Debtors. The harm suffered by the Duke Entities as a result of the alleged treatment of certain Debtors as the alter ego of other debtors was not different from the harm sustained by any of the other creditors of the allegedly looted estates who might seek to maintain alter ego claims . . . . The Duke Entities are similarly situated to all of the other creditors who could allege they were treated inequitably by the alleged looting of certain Debtors with the result that those Debtors could not meet their obligations to them, and the creditors of each of these estates would share a common injury.

*Id.* at *5 (citations omitted).

14.     Judge Gonzalez cited the Second Circuit decision in *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989), as one of the bases of his decision. That case also involves alter ego allegations similar to those in the Complaint. In that action, PepsiCo sold a wholly-owned subsidiary, Lee Way Motor Freight, Inc. ("Lee Way") to Commercial Lovelace Motor Freight, Inc. ("CL"), a subsidiary of Banner Industries, Inc. ("Banner"). PepsiCo alleged that, following the sale of Lee Way, Banner caused CL to strip the assets of Lee Way, thereby making Lee Way unable to satisfy its obligations on certain performance bonds and creating indemnification liability on those bonds for PepsiCo. As set forth by the Second Circuit:

8

ny-1086627

> PepsiCo alleges that the operational relationship between CL and Banner was, in fact, one of complete domination and control of CL by Banner. . . . Banner, in PepsiCo's view, retained control of CL through domination of CL's board of directors, manipulation of CL's officers, undercapitalization of CL and the consequent dependence of CL on Banner for financial support. PepsiCo contends that, through Banner's influence and domination of CL, Banner caused CL to 'plunder[]' Lee Way, stripping it of assets.

884 F.2d at 691.

15. The Second Circuit found that those alter ego allegations do not allege particularized injury:

> PepsiCo has not alleged the type of harm necessary to support a finding of standing. Its injury is not a particular one that can be directly traced to Banner's conduct. Instead, it has alleged a secondary effect from harm done to Lee Way . . . . [I]t amounts to no more than an allegation that Banner's acts harmed a third party and that that harm in turn led to PepsiCo's harm.
>
> . . . .
>
> PepsiCo's personalization of the harm stems from its original relationship to Lee Way. Because Lee Way was the entity that was stripped of its assets, and because PepsiCo was the seller of Lee Way, PepsiCo asserts that its harm is direct and specific to it. To the contrary, however, PepsiCo's harm is precisely that suffered by all other creditors of CL and Lee Way: because CL and Lee Way were used by Banner to preferentially pay off debts owed to Banner, all other creditors of CL and Lee Way fell into disfavored positions. . . . All unsecured creditors are to be treated equally if their injuries are not different in kind. PepsiCo is "similarly situated to other creditors who have been treated inequitably by the debtor and thus share in the common injury.". . . The proper remedy in this case for any injustice caused by Banner is for the trustee to bring an alter ego claim as property of the estate, as he has done, or to bring an action alleging preferential or fraudulent transfer of assets to Banner . . . .

884 F.2d at 704.

16. Other courts in the Second Circuit have reached identical holdings when faced with alter ego allegations akin to those presented by the Plaintiffs here. *See, e.g., Alper,* 398 B.R. at 760 ("[n]one of Claimants' factual allegations suggest that Alper's action in relation to Saltire were specific to any Claimant. If indeed Alper looted Saltire and rendered it insolvent, as [Claimants] contend, its actions harmed all of Saltire's creditors equally. . . . Accordingly, the

9

alter ego claims asserted by the Claimants are general claims that could have been asserted by any creditor and were owned by Saltire.") (citation omitted); *In re Cabrini Med. Ctr.*, 2012 Bankr. LEXIS 2747, at *31 (claimants have not "alleged that the [controlling entity] wronged them directly rather than by virtue of their alleged control of Cabrini' where state court complaint alleges that the controlling entity exercised complete domination and control of Cabrini, controlled Cabrini's board of directors and left Cabrini with a complete lack of independent business discretion. Such allegations "do[] not specify any particular injury to [the claimants].")

17. The alter ego claims advanced in the Complaint are similar, if not identical, to those in the above cited cases that held that such allegations only advanced general, and not particularized, claims. The Plaintiffs' alter ego claims allege no facts demonstrating any harmful conduct directed toward them as a group. Rather, their alter ego claims are all premised upon factual allegations demonstrating alleged misconduct by AFI towards ResCap and its subsidiaries: "harvesting" (i.e. looting or siphoning) assets; disregard of corporate formalities, domination and control of AFI's subsidiaries; and portraying ResCap and GMACM as part of a unified AFI entity. Like the claimants in *Duke Energy*, *St. Paul Fire & Marine*, *Cabrini*, and *Alper*, the Plaintiffs have not advanced any allegations constituting particularized conduct resulting in particularized harm.

18. Moreover, the alter ego allegations advanced by the Plaintiffs correspond to alter ego claims advanced by numerous creditor groups in these chapter 11 cases. Indeed, the Creditors Committee on April 11 filed a motion seeking standing to bring the very alter ego claims that the Plaintiffs assert in the Complaint. *See Motion of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Committee To Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates.* One of the two categories of claims that the

10

Creditors Committee sought to pursue against AFI, as detailed in that motion, are veil piercing claims against AFI. While that motion will, of course, be rendered moot should this Court approve the Debtors' pending motion to enter into a plan support agreement and subsequent confirmation of a plan of reorganization, that motion nonetheless is illustrative of the breadth of creditors asserting alter ego and veil-piercing claims similar, if not identical, to those advance by the Plaintiffs.

19.     The Claims in Plaintiff's Complaint, therefore allege only general claims that belong to the estate. Accordingly, the Plaintiffs cannot prosecute those claims and the automatic stay prevents the Plaintiffs from exercising control of that estate property.

**C.     Relief From the Automatic Stay is Not Warranted.**

20.     Plaintiffs argue that should the Court conclude that the Claims are property of the Debtors' estates, the Court should nonetheless grant Plaintiffs relief from the automatic stay to pursue the Claims. Plaintiffs' request should be denied, because they lack standing to pursue the Claims and have not met their burden of showing that the Court should permit them to prosecute estate claims.

21.     As an initial matter, the Court should not, as Plaintiffs argue, consider a request for relief from the stay under the twelve factor test set forth by the Second Circuit in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). The *Sonnax* analysis is both unnecessary and inapplicable to Plaintiffs' requests to pursue estate Claims. *Sonnax* provides the test for determining whether cause exists to permit prepetition litigation to proceed against the Debtor that has been stayed by Bankruptcy Code section 362(a)(1). See *Sonnax*, 907 F.2d 1285-86. In this instance, Plaintiffs seek to commandeer estate Claims for themselves and pursue those Claims against a third-party. The

11

ny-1086627

*Sonnax* factors do not provide and were not intended to provide an enlightening analysis in such a context.

22. Instead, the Court should deny the Plaintiffs request for relief from the stay because the Plaintiffs lack standing to pursue the Claims and, therefore, relief from the stay would be futile. As discussed above, courts in this and other districts have regularly concluded that creditors generally lack standing to pursue claims that are property of a debtor's estate, and instead such claims must be pursued by the bankruptcy trustee or debtor in possession. *See, e.g., Gosconcert v. Hillyer*, 158 B.R. 24, 29-30 (S.D.N.Y. 1993) (dismissing complaint by creditor asserting alter ego claims for lack of standing, and concluding that bankruptcy trustee was appropriate party to pursue those claims); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 851 (Bankr. S.D.N.Y. 1994); *In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) (cataloguing cases to this effect). Only in certain limited circumstances will courts grant creditors standing to pursue estate claims against third-parties. *See In re SmartWorld Techs.*, LLC, 423 F.3d 166, 174 (2d Cir. 2005) (circumstance in which party-in-interest may pursue Rule 9019 motion settling estate claims were limited); *In re Blockbuster Inc.*, 2011 WL 1042767, at *1 (Bankr. S.D.N.Y. Mar. 17, 2011) ("with limited exception," equitable subordination may only be brought by Debtor). The Plaintiffs have cited inapplicable law, have failed to meet their burden of showing that limited circumstances exist sufficient to justify granting them standing to pursue estate Claims and, accordingly, the Plaintiffs' request should be denied.

23. In order to obtain standing to pursue claims held by a bankruptcy estate, a party must show that either (i) the Debtor "unjustifiably failed to bring suit" or (ii) that the debtor consents to the creditor pursuing the action. *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001); *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985). Neither requirement is met in this case. First, the Debtors have actively pursued a resolution of any alter ego and veil-piercing

claims they have against AFI prior to and after the Petition Date. Indeed, the Debtors recently filed a motion seeking approval of a Plan Support Agreement that describes the general terms of a plan, supported by a large majority of their claimant constituencies, which includes a $2.1 billion contribution by AFI and its affiliates to the estates. This contribution is intended to be, in part, a resolution of all of the estates' claims against AFI. For this reason among others, the Debtors also have not and will not agree to Plaintiffs obtaining standing to pursue the estates' alter ego or veil piercing claims against AFI and the Plaintiffs lack standing to bring the Claims in this or any other court.

24. Because the Plaintiffs may not obtain standing to pursue estate Claims against AFI, the Court should deny their request for relief from the stay. Without standing to pursue the Claims, obtaining relief from the automatic stay would be futile. The Claims would be subject to dismissal by the district court for failure to state a claim upon which relief may be granted. Accordingly, the Court should deny Plaintiffs' request for relief from the automatic stay. *See In re Ross*, 1997 WL 92044, at *2 (Bankr. M.D. Fla. Feb. 19, 1997) (denying judgment creditor relief from automatic stay to pursue state court fraudulent conveyance action "because it lacks standing and such a right is vested in the Trustee.").

## CONCLUSION

27. For the foregoing reasons, the Debtors respectfully request that this Court grant the Motion and enjoin the prosecution of the estate claims asserted in the Complaint.

Dated: June 5, 2013

    Respectfully submitted,

    /s/ Gary S. Lee
    MORRISON & FOERSTER LLP
    1290 Avenue of the Americas
    New York, New York 10104
    Telephone: (212) 468-8000
    Facsimile: (212) 468-7900
    Gary S. Lee
    Stefan W. Engelhardt
    Alexandra Steinberg Barrage

    *Counsel for the Debtors and Debtors-in Possession*