**Hearing Date and Time: June 12, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: June 10, 2013 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Naomi Moss

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- )
  In re:                                                             )    Case No. 12-12020 (MG)
                                                                     )
  RESIDENTIAL CAPITAL, LLC, et al.,                                  )    Chapter 11
                                                                     )
                                                Debtors.             )    Jointly Administered
                                                                     )
-------------------------------------------------------------------- )

**NOTICE OF DEBTORS' MOTION FOR THE ENTRY OF AN ORDER**
**FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*for the Entry of an Order Further Extending Their Exclusive Periods to File a Chapter*

*11 Plan and Solicit Acceptances Thereof* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **June 12, 2013 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable

Martin Glenn, at the United States Bankruptcy Court for the Southern District of New

York, Alexander Hamilton Custom House, One Bowling Green, New York, New York

10004-1408, Room 501.

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **June 10, 2013 at**

**10:00 a.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison &

Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S.

Lee, Lorenzo Marinuzzi, Todd M. Goren and Naomi Moss); (b) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, NY 10004 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S.

Masumoto); (c) the Office of the United States Attorney General, U.S. Department of

Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US

Attorney General, Eric H. Holder, Jr.); (d) Office of the New York State Attorney

General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N.

Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f)

counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York,

NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee

of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal);

(h) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd

Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman); (i)

counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand

Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman);

(j) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by

overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-

5016); and (k) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S.

Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written objection to the relief requested in the Motion, the Bankruptcy Court may deem

any opposition waived, treat the Motion as conceded, and enter an order granting the

relief requested in the Motion without further notice or hearing.

Dated: June 6, 2013                    Respectfully submitted,
       New York, New York

                                           /s/ Gary S. Lee              
                                         Gary S. Lee
                                         Lorenzo Marinuzzi
                                         Todd M. Goren
                                         Naomi Moss
                                         MORRISON & FOERSTER LLP
                                         1290 Avenue of the Americas
                                         New York, New York 10104
                                         Telephone: (212) 468-8000
                                         Facsimile: (212) 468-7900

                                         *Counsel to the Debtors and*
                                         *Debtors in Possession*

**Hearing Date:  June 12, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  June 10, 2013 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Todd M. Goren
Naomi Moss

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ )
                                                             )
In re:                                                       )    Case No. 12-12020 (MG)
                                                             )
RESIDENTIAL CAPITAL, LLC, et al.,                            )    Chapter 11
                                                             )
                                         Debtors.            )    Jointly Administered
                                                             )
------------------------------------------------------------ )

## DEBTORS' MOTION FOR THE ENTRY OF AN ORDER FURTHER EXTENDING THEIR EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

JURISDICTION ....................................................................................................4

BACKGROUND ...................................................................................................4

RELIEF REQUESTED ...........................................................................................5

BASIS FOR THE RELIEF.......................................................................................5

    A.    The Requested Extension of the Exclusive Periods is Justified by the Size
and Complexity of the Debtors' Chapter 11 Cases ................................................7

    B.    The Debtors Have Made Good Faith Progress Toward Reorganization and
in Negotiations With Creditors.............................................................................8

    C.    The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable
Plan ...................................................................................................................9

    D.    Terminating Exclusivity Would Adversely Affect Administration of these
Chapter 11 Cases ..............................................................................................10

    E.    The Other Adelphia Factors Favor an Extension of the Exclusive Periods .........11

CONCLUSION ..................................................................................................11

NOTICE ..........................................................................................................11

NO PRIOR REQUEST........................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp.*,
    352 B.R. 578 (Bankr. S.D.N.Y. 2006) ................................................................. 6, 8

*In re Ames Dep't Stores, Inc.*,
    No. M-47 (PKL), 1991 WL 259036 (S.D.N.Y. Nov. 25, 1991) ............................... 6

*In re Amko Plastics, Inc.*,
    197 B.R. 74 (Bankr. S.D. Ohio 1996) ................................................................... 8

*In re Borders Grp., Inc.*,
    460 B.R. 818 (Bankr. S.D.N.Y. 2011) ...................................................... 5, 6, 8, 10

*In re Lexington Precision Corp.*,
    Ch. 11 Case No. 08-11153 (Bankr. S.D.N.Y. Oct. 31, 2008) [Docket No. 457] .................... 8

*In re Lionel L.L.C.*,
    No. 04-17324, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007) ....................... 6

STATUTES

11 U.S.C. § 1121(d)(1) .................................................................................................. 5

OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6191 ........................... 7

Transcript of Hearing, *In re Residential Capital, LLC*,
    No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012) ........................................ 8

Transcript of Hearing, *In re Residential Capital, LLC*,
    No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 20, 2012) ......................................... 7

Transcript of Hearing, *In re Residential Capital, LLC*,
    No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5, 2013) ........................................... 6

Transcript of Hearing, *In re Residential Capital, LLC*,
    No. 12-12020 (MG) (Bankr. S.D.N.Y. May 7, 2013) ................................... 3, 7, 10

ii

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors")[1] hereby move (the "Motion") for the entry of an order substantially in the form

attached hereto as Exhibit 1, further (i) extending the exclusive period during which only the

Debtors may file a Chapter 11 plan (the "Exclusive Plan Period") through and including August

21, 2013 and (ii) extending the period during which the Debtors have the exclusive right to

solicit acceptances thereof through and including October 21, 2013 (the "Exclusive Solicitation

Period" and, together with the Exclusive Plan Period, the "Exclusive Periods").[2]  In support of

this Motion, the Debtors submit the declaration of Lewis Kruger, Chief Restructuring Officer of

the Debtors (the "Kruger Declaration"), filed contemporaneously herewith.  In further support of

this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As the Court is aware, the Debtors have reached consensus on the terms of a

Chapter 11 plan (the "Plan Support Agreement") to be jointly proposed with the Official

Committee of Unsecured Creditors of Residential Capital, LLC (the "Creditors' Committee"),

that contemplates a substantial contribution from Ally Financial Inc. ("AFI") and is endorsed by

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "Whitlinger Affidavit") [Docket No. 6].

[2] On September 11, 2012, the Court entered an order granting an extension of the Debtors' exclusive period to file a plan to December 20, 2012, and granting an extension of the period to solicit votes to February 18, 2013 [Docket No. 1248].  On December 20, 2013, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to February 28, 2013, and granting an extension of the period to solicit votes to April 29, 2013 [Docket No. 2849].  On February 22, 2013, the Court entered a bridge order extending exclusivity through and including March 5, 2013 [Docket No. 3007].  On March 5, 2013, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to April 30, 2013, and granting an extension of the period to solicit votes to July 1, 2013 [Docket No. 3102].  On April 15, 2013, the Court entered a bridge order extending exclusivity through and including May 7, 2013 [Docket No. 3440].  On May 7, 2013, the Court entered an order granting a further extension of the Debtors' exclusive period to file a plan to June 6, 2013, and granting an extension of the period to solicit votes to August 5, 2013 [Docket No. 3485].

ny-1092411

individual Creditors' Committee members, and certain additional Consenting Claimants.[3]  On

May 23, 2013, the Debtors filed the PSA Approval Motion.[4]

2.      The Plan Support Agreement contemplates a near global resolution of substantial

litigation among all of the Parties,[5] and a resolution of complex disputed matters in these

Chapter 11 cases.  Pursuant to the Plan Support Agreement, AFI and each of the Consenting

Claimants has agreed to support a Chapter 11 plan (the "Plan") that encompasses and comports

with each of the terms of a plan term sheet and supplemental plan term sheet (together, the

"Term Sheets").[6]  The Plan will provide for, among other things: (i) a $2.1 billion contribution

from AFI, comprised of (a) $1,950,000,000 in cash on the effective date of the Plan and (b)

$150,000,000, anticipated to come from a settlement between AFI and its insurers, but in any

event to be paid by AFI no later than September 30, 2014, in exchange for, among other things,

Debtor Releases and Third Party Releases (each as defined in the Plan Support Agreement) in

favor of AFI, (ii) the allocation of proceeds available for distribution to creditors based on a

mediated compromise and settlement of disputed intercreditor and interdebtor issues and (iii)

the creation of various trusts to provide distributions to creditors and to administer the estates

following confirmation of the Plan.  The Plan Support Agreement contemplates the filing of the

Plan and disclosure statement by July 3, 2013.  The Plan Support Agreement requires approval

of the disclosure statement by August 30, 2013.  The Debtors intend to seek approval of the

disclosure statement in mid-August.

---

[3] As defined in the PSA Approval Motion (defined below).

[4] On May 23, 2013, the Debtors filed the *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "PSA Approval Motion").  The hearing on the PSA Approval Motion is scheduled for June 26, 2013.

[5] As defined in the Plan Support Agreement.

[6] The Term Sheets are attached to the PSA Approval Motion.

ny-1092411

3.      While tremendous progress has been made on a consensual plan, the hearing on

the PSA Approval Motion is scheduled for June 26, 2013, and the Parties need additional time

to (i) draft and finalize the Plan and disclosure statement, on terms consistent with the Plan

Support Agreement and Term Sheets, and (ii) seek approval of the disclosure statement.  The

Debtors believe that the threat of competing plans, as likely or unlikely as that may be, while the

Parties are focused on prosecuting the Plan and disclosure statement would only distract parties

in interest.  This could result in delay, and inevitably burden these estates with additional costs

and diminish creditor recoveries.  The Debtors do not believe that any such plan or plans could

offer a greater return to creditors than that contemplated in the Term Sheets.  At the last

exclusivity hearing, in granting the Debtors' request for a 30-day exclusivity extension, the

Court noted that to the extent the Debtors reached consensus, it would be appropriate for the

Debtors to seek a further extension of exclusivity.[7]  Naturally, settlement of plan issues has been

viewed as the best route to confirmation of a Chapter 11 plan.[8]  The Debtors believe that the

Plan, which encompasses a near global settlement of major plan issues, will expedite creditor

recoveries and facilitate substantial cost savings by obviating continued litigation and the

expenses associated therewith.  A further extension of exclusivity will allow the Parties to work

towards this goal without distraction.

4.      As discussed herein and in the Kruger Declaration, the Debtors have made

remarkable progress toward confirmation of a Chapter 11 plan, and are prepared to drive that

process to conclusion.  Mr. Kruger, the Debtors and their advisors believe that it is appropriate

---

[7] At the hearing held on May 7, 2013, the Court stated "—have a term sheet that's been signed onto by – maybe not
literally, but signed on – supported by major constituencies, come back and ask me for more time.  Okay?"
Transcript of Hearing at 60:2-5, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. May 7,
2013) (the "May 7, 2013 Transcript").

[8] At the hearing held on May 7, 2013, the Court stated "So the case is moving forward one way or another.  I hope it
moves forward on the consensual front."  May 7, 2013 Transcript at 37:5-6.

under the unique facts of these cases to further extend exclusivity to allow the Debtors and the

Creditors' Committee to file the Plan and seek approval of the related disclosure statement.

Accordingly, the Debtors believe that a continuation of the Exclusive Plan Period for an

additional 70 days is warranted and is in the best interests of these estates.

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested

herein is 11 U.S.C. § 1121(d) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

6.      As of May 14, 2012 (the "Petition Date"), the Debtors were a leading residential

real estate finance company indirectly owned by AFI, which is not a Debtor.  A more detailed

description of the Debtors, including their business operations, their capital and debt structure,

and the events leading to the filing of these bankruptcy cases, is set forth in the Whitlinger

Affidavit.

7.      On the Petition Date, each of the Debtors filed a voluntary petition with the Court

for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating

their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and

1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No

trustee has been appointed in these Chapter 11 cases.

8.      On May 16, 2012, the United States Trustee for the Southern District of New

York appointed the nine member Creditors' Committee.

**RELIEF REQUESTED**

9.      The Debtors hereby move the Court, pursuant to section 1121(d) of the

Bankruptcy Code, for an order: (a) extending the period during which the Debtors have the

exclusive right to file a Chapter 11 plan through and including August 21, 2013, and (b)

extending the period during which the Debtors have the exclusive right to solicit acceptances

thereof through and including October 21, 2013.

10.     Allowing the Exclusive Plan Period to terminate prior to the hearing on the PSA

Approval Motion, the filing of the Plan and hearing on the disclosure statement would almost

certainly unravel the recent accomplishments.  Thus, in order to achieve the best result for these

estates, the Court should grant a further extension of exclusivity to provide sufficient time to

document and file the Plan and disclosure statement, and for consideration of the disclosure

statement.

**BASIS FOR THE RELIEF**

11.     Sections 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a

debtor has the exclusive right to propose a Chapter 11 plan for the first 120 days of a Chapter 11

case and the exclusive right to solicit votes for its plan for an additional 60 days.

12.     Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause,"

extend these periods: "on request of a party in interest…and after notice and a hearing, the Court

may for cause reduce or increase the 120-day period or the 180-day period referred to in this

section."  11 U.S.C. § 1121(d)(1).

13.     A decision to extend exclusivity for "cause" is a fact-specific inquiry and the

Court has broad discretion in granting such requests.  *In re Borders Grp., Inc.*, 460 B.R. 818,

821-22 (Bankr. S.D.N.Y. 2011) (in granting an 120-day extension, this Court noted that, "The

determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad

discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) (same). "The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors." *See In re Ames Dep't Stores, Inc.*, No. M-47 (PKL), 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991)[9]

14.     Furthermore, a number of courts, including this Court in considering the Debtors' prior requests for extensions of their Exclusive Periods,[10] consider the factors utilized by Judge Gerber in *In re Adelphia Commc'ns Corp.* (the "Adelphia Factors") when determining whether "cause" exists to increase a debtor's exclusivity period. The Adelphia Factors, any one of which alone can justify an extension of exclusivity, include:

> (a) the size and complexity of the case;
>
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
>
> (c) the existence of good faith progress toward reorganization;
>
> (d) the fact that the debtor is paying its bills as they become due;
>
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
>
> (f) whether the debtor has made progress in negotiations with creditors;
>
> (g) the amount of time which has elapsed in the case;
>
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
>
> (i) whether an unresolved contingency exists.

*In re Borders Grp., Inc.*, 460 B.R. at 822 (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. at 587); *In re Lionel L.L.C.*, No. 04-17324, 2007 WL 2261539, at *6 (Bankr. S.D.N.Y. Aug. 3,

---

[9]  A copy of this decision is attached hereto as Exhibit 2.

[10]  *See* Transcript of Hearing at 39, *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Mar. 5, 2013).

ny-1092411

2007);[11] *See* May 7, 2013 Transcript at 78:14-19 (considering three of the Adelphia Factors in granting an extension of exclusivity).

15.    The Debtors respectfully submit that the facts and circumstances of these Chapter 11 cases satisfy the Adelphia Factors and demonstrate that sufficient cause exists to grant the Debtors' requested extension of the Exclusive Periods.  None of the Adelphia Factors militates against granting the Debtors a further extension of the Exclusive Periods.  As discussed below, the application of the most critical of the Adelphia Factors to the circumstances of these cases demonstrates that a further extension of the Debtors' Exclusive Periods is warranted.

### A.    The Requested Extension of the Exclusive Periods is Justified by the Size and Complexity of the Debtors' Chapter 11 Cases

16.    The size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan.  The legislative history is clear on this point: "[I]f an unusually large company were to seek reorganization under Chapter 11, the court would probably need extra time in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595, at 231, 232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 6191, 6362.

17.    As recognized by the Court in connection with the Debtors' prior exclusivity extension requests, the size and complexity of these Chapter 11 cases "weigh heavily in favor" of a further extension of the Exclusive Periods.[12]  The complexity of these cases demanded and still demands the attention of the Debtors and their advisors on monetizing the Debtors'

---

[11]  A copy of this decision is attached hereto as <u>Exhibit 2</u>.

[12]  "At least three of the Adelphia factors weigh heavily in favor of granting the request for an extension of exclusivity here:  the size and complexity of the case;  the existence of good-faith progress towards reorganization;  and whether there remain any unresolved – whether any unresolved contingencies exist."  May 7, 2013 Transcript at 78:14-19.  "It is extremely complicated, because of the number of debtors, the capital structure, the different creditor constituencies."  Transcript of Hearing at 44:24-25, *In re Residential Capital, LLC,* No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 20, 2012).

remaining assets, operational issues and finalizing the terms of the Plan consistent with the Plan

Support Agreement and Term Sheets.

18.      The size and complexity of these Chapter 11 cases alone support the requested

extension of the Exclusive Periods.

**B.      The Debtors Have Made Good Faith Progress Toward Reorganization and in
Negotiations With Creditors**

19.      Another important[13] Adelphia Factor requires an assessment by the Court of a

debtor's progress towards rehabilitation and development of a consensual plan.   *See, e.g. In re*

*Lexington Precision Corp*., Ch. 11 Case No. 08-11153 (Bankr. S.D.N.Y. Oct. 31, 2008) [Docket

No. 457, at 5]; *In re Borders Grp., Inc*., 460 B.R. at 825; *In re Adelphia Commc'ns Corp.*, 352

B.R. at 588-89; *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).

20.      After months of intensive negotiations following approval of the Debtors' major

asset sales in November 2012, a series of all-day mediation sessions led by the Honorable James

M. Peck[14] and attended by the Debtors, AFI, the Creditors' Committee, their major claimant

constituencies, and their professionals, and after several more weeks of nearly round-the-clock

negotiations, the Parties reached consensus on the terms of a plan that contemplates a substantial

contribution from AFI and is endorsed by the Creditors' Committee and a substantial majority

of the Debtors' largest creditor constituencies.

21.      The Debtors believe that the substantial progress described above alone warrants

a further extension of the Exclusive Periods, during which the Debtors, the Creditors'

Committee and the parties to the Plan Support Agreement, intend to prosecute the PSA

---

[13]   At the hearing held on September 11, 2012, the Court stated that "…whether the debtor has made progress in
negotiations with its creditors…it's an important factor."   Transcript of Hearing at 61:11-15, *In re Residential
Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Sept. 11, 2012).

[14]   On December 20, 2012, the Court appointed the Honorable James M. Peck as mediator (the "Mediator").

Approval Motion, as well as draft the Plan and disclosure statement and seek approval of the

disclosure statement.

> **C.**   **The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable
> Plan. However, the Debtors Have Not Had Sufficient Time to Fully Negotiate
> a Plan**

22.   The Plan Support Agreement also demonstrates reasonable prospects for filing a

viable plan.  Through the Plan Support Agreement, the AFI and the major creditor

constituencies have agreed to support the Plan on terms consistent with the Term Sheets.

Pursuant to the Term Sheets, the Plan and disclosure statement proposed by the Debtors and the

Creditors' Committee must also be documented in a form reasonably acceptable to AFI and the

Consenting Claimants.

23.   Thus, the Debtors believe that a further extension of the Exclusive Periods is

warranted in order to provide sufficient time to draft the Plan.  The Plan Support Agreement was

the result of round-the-clock negotiations, which were not finalized until recently.  With the key

terms of the Plan negotiated, the Parties are now in a position to draft the Plan and the disclosure

statement.

24.   Moreover, as discussed in connection with the Debtors previous exclusivity

extension requests, the issue of whether the holders of Junior Secured Guaranteed Notes (the

"JSNs") are oversecured and entitled to any post-petition interest remains an important issue

that has not been resolved to date.  The Debtors, the Creditors' Committee and the advisors to

the JSNs are engaged in ongoing discussions regarding those issues.  If they cannot be resolved

consensually, the Debtors and the Creditors' Committee are prepared to litigate prior to the Plan

confirmation whether in fact the JSNs are entitled to postpetition interest.[15]

---

[15] There are two actions currently pending against the JSNs.  On February 28, 2013, the Creditors' Committee
commenced an adversary proceeding against UMB Bank, N.A. and Wells Fargo, N.A. (Bankr. S.D.N.Y. Adv.

25.    These factors also provide strong support for the Debtors' proposed extension of the Exclusive Periods.

**D.    Terminating Exclusivity Would Adversely Affect Administration of these Chapter 11 Cases**

26.    As noted by this Court in *In re Borders Grp., Inc.*, courts may also consider practical factors in determining that "cause" exists to extend the Exclusive Periods.  *See In re Borders Grp., Inc.*, 460 B.R. at 827-28 (noting that it was important for the Court to consider practical factors in refusing to terminate exclusivity).  Refusing to grant this Motion to further extend the Exclusive Periods at this stage would adversely affect the Debtors' administration of these Chapter 11 cases and subject these estates to the discord that would result from competing plans.

27.    These cases have reached an important milestone.  The Debtors' key stakeholders hold divergent interests.  Terminating exclusivity at this time could result in various parties in interest proposing competing plans.  The Debtors believe that any such plan or plans could not offer a greater return to creditors than that contemplated in the Plan Support Agreement and Term Sheets.  Were various parties to propose competing plans, it would inevitably result in protracted litigation and increased administrative costs.  The Debtors agree with the Court's belief that it would not be productive to allow various creditor constituencies to file competing plans.[16]

28.    Denying the Motion could be destabilizing and foster a chaotic environment in these complex Chapter 11 cases.  The Debtors remain committed to prosecuting the Plan

Pro. 13-01277 [Docket No. 1]).  On May 3, 2013, the Debtors commenced an adversary proceeding against UMB Bank, N.A., Wells Fargo Bank,  N.A. and the Ad Hoc Group (Bankr. S.D.N.Y. Adv. Pro. No. 13-01343 [Docket No. 1].

[16] "It may be incorrect, and I may have used this term before, that I was concerned about – that the case would go into free-fall if various creditor constituencies started filing plans.  I don't think it would be productive at this stage."  May 7, 2013 Transcript at 79:21-25.

through confirmation.  Given these monumental goals and the significant headway that has been

made to date, terminating exclusivity in these cases would undoubtedly be detrimental to all of

the progress that has been accomplished thus far.

**E.    The Other Adelphia Factors Favor an Extension of the Exclusive Periods**

29.    None of the other Adelphia Factors militates against granting an extension of the

Exclusive Periods.  Unresolved contingencies exist, including approval of the Plan Support

Agreement and resolution of whether the JSNs are entitled to postpetition interest.  The Debtors

have been paying their bills as they come due.  Just over a year has passed since the Petition

Date.  And it is patent that the Debtors are not seeking an extension of the Exclusive Periods to

pressure creditors.

**CONCLUSION**

30.    The Debtors' prospects of successfully achieving their goal of confirming a

Chapter 11 plan with significant creditor support will be enhanced if exclusivity is extended to

allow the Parties to focus on drafting and prosecuting the Plan without the distraction of

competing plans.  Denial of this Motion would jeopardize the significant progress made to date

in these Chapter 11 cases.

31.    For the reasons set forth above, the Debtors respectfully submit that ample cause

exists under the Bankruptcy Code and the applicable case law for the requested extension of the

Exclusive Periods.

32.    The Debtors reserve the right to request further extensions of the Exclusive

Periods pursuant to section 1121(d) of the Bankruptcy Code.

**NOTICE**

33.    The Debtors have provided notice of this Motion in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

11

## NO PRIOR REQUEST

34.    No prior request for the relief sought in this Motion has been made to this or any

other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as <u>Exhibit 1</u>, granting the relief requested herein and

granting such other relief as is just and proper.

New York, New York          /s/ Gary S. Lee
Dated: June 6, 2013           Gary S. Lee
                                Lorenzo Marinuzzi
                                Todd M. Goren
                                Naomi Moss
                                MORRISON & FOERSTER LLP
                                1290 Avenue of the Americas
                                New York, New York 10104
                                Telephone: (212) 468-8000
                                Facsimile: (212) 468-7900

                                *Counsel to the Debtors and*
                                 *Debtors in Possession*

12

## Exhibit 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                                )
In re:                                          )       Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )       Chapter 11
                                                )
                              Debtors.           )       Jointly Administered
                                                )
---------------------------------------------------------------

### ORDER FURTHER EXTENDING THE EXCLUSIVE PERIODS
### DURING WHICH ONLY THE DEBTORS MAY FILE A
### CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in

possession in these Chapter 11 cases (collectively, the "Debtors"), for entry of an order (this

"Order") extending (a) the exclusive period of time during which only the Debtors may file a

plan of reorganization (the "Exclusive Plan Period") through and including August 21, 2013, and

(b) the period of time during which only the Debtors may solicit acceptances of a plan of

reorganization (the "Solicitation Period," and, together with the Exclusive Plan Period, the

"Exclusive Periods") through and including October 21, 2013; and it appearing that this Court

has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing

that venue of these Chapter 11 cases and the Motion in this district is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28

U.S.C. § 157(b); and this Court having determined that the relief requested in the Motion is in

the best interests of the Debtors, their estates, their creditors and other parties in interest; and this

Court having found that proper and adequate notice of the Motion and the relief requested

therein has been provided in accordance with the Bankruptcy Rules, the Local Rules and the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Case Management Procedures for these Chapter 11 cases, and that, except as otherwise ordered

herein, no other or further notice is necessary; and any objections (if any) to the Motion having

been withdrawn or overruled on the merits; and after due deliberation thereon; and good and

sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to section 1121(d) of the Bankruptcy Code, the Exclusive Plan

Period is hereby extended through and including August 21, 2013, and the Exclusive Solicitation

Period is hereby extended through and including October 21, 2013.

3.      This Order is without prejudice to (x) the Debtors' ability to seek further

extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code and (y)

the ability of parties in interest to seek to shorten the Exclusive Periods or object to further

extensions.

4.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

5.      This Court retains jurisdiction with respect to all matters arising from or related to

the enforcement of this Order.

6.      Notwithstanding anything herein to the contrary, this Order shall not modify or

affect the terms and provisions of, nor the rights and obligations under, (a) the Board of

Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among

AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal

Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment

entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012,

(c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the

Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related

agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

New York, New York
Date: _____, 2013

                                    _____
                                      THE HONORABLE MARTIN GLENN
                                      UNITED STATES BANKRUPTCY JUDGE

**Exhibit 2**

Westlaw.

Not Reported in F.Supp., 1991 WL 259036 (S.D.N.Y.)
**(Cite as: 1991 WL 259036 (S.D.N.Y.))**

H

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
In re AMES DEPARTMENT STORES, INC., East-
ern Retailers Service Corporation, et al., Debtors.

No. M–47(PKL).
Bankruptcy Nos. 90 B 11233(JAG) to 90 B
11285(JAG).
Nov. 25, 1991.

*MEMORANDUM ORDER*

LEISURE, District Judge:

*1 Citibank, N.A. ("Citibank") has moved this Court on an emergency basis for an order withdrawing in part the reference of these cases to the United States Bankruptcy Court for the Southern District of New York and terminating the exclusivity periods under 11 U.S.C. § 1121. For the reasons stated below, Citibank's motion is denied.

*Background*

On April 25, 1990, Ames Department Stores, Inc. ("Ames Department Stores") and its 52 subsidiaries (collectively, the "Ames Group") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Southern District of New York. The Ames Group continues to operate its businesses and manage its properties as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108. The Ames Group's bankruptcy cases were referred to the United States Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. § 157(a) and a standing Order of this Court dated July 10, 1984 (Ward, Acting C.J.). The cases were initially assigned to the Honorable Howard Buschman; after he resigned from the bench in early 1991, the cases were reassigned to the Honorable James Goodman, a visiting bankruptcy judge from the District of Maine.

Under 11 U.S.C. § 1121(b), the Ames Group had the exclusive right to file a plan or plans of re-

organization for 120 days after the filing of the petitions. These exclusivity periods were to expire on August 23, 1990; the Bankruptcy Court has subsequently granted nine extensions of the exclusivity periods. The latest extension was granted on November 13, 1991, and extends the exclusivity periods until January 10, 1992.

Citibank, as agent for the secured lenders ("the banks") under a $900 million Credit Agreement dated October 28, 1988, and as amended, has moved this Court on an emergency basis for an order withdrawing the reference of these cases to the Bankruptcy Court with respect to issues concerning the exclusivity periods, and terminating those exclusivity periods so that Citibank and the banks can file their own plan of reorganization. Citibank argues that the Ames Group is moving too slowly in filing its reorganization plan, and that the banks are suffering because they cannot file their own reorganization plan during the exclusivity period. Citibank maintains that with each successive extension in the exclusivity period, the Ames Group is losing large sums of money and incurring excessive legal, investment banking, and other fees, and that by the time the Ames Group does finally file a plan of reorganization, the Ames Group's financial situation will have deteriorated so badly that the banks will not have any meaningful recovery.

The Ames Group opposes Citibank's motion, and has been joined in its opposition by the Official Committee of Unsecured Creditors of Ames Department Stores (the "Unsecured Creditors' Committee") and the Official Committee of Employees ("Employees' Committee") of Ames Department Stores. The Ames Group advances a number of arguments in opposition to Citibank's motion: the determination of a debtor's exclusivity period is a fundamental "core proceeding" and should be decided by the Bankruptcy Court; Judge Goodman has been intimately involved with these complicated cases and this Court should not interfere with his decision regarding the propriety of extending the exclusivity

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1991 WL 259036 (S.D.N.Y.)
**(Cite as: 1991 WL 259036 (S.D.N.Y.))**

periods until January 10, 1992; Judge Goodman's most recent order extending the exclusivity periods states that the extension until January 10, 1992 "shall be the final extension of time" in these cases and that "no further extension shall be granted without either a showing of extraordinary cause" or upon written consent of all the parties, thus demonstrating the likelihood that the exclusivity periods will not be further extended beyond January 10, 1992; and withdrawal of the reference and termination of the exclusivity period so that the banks can file their own reorganization plan will have a disruptive effect on Ames Department Stores' all-important Christmas selling season.

*Discussion*

**\*2** These bankruptcy cases involving the Ames Group were referred to the Bankruptcy Court under 28 U.S.C. § 157(a) and a standing order of this Court dated July 10, 1984 (Ward, C.J.). Under 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The burden is thus on Citibank to demonstrate why the Court should withdraw the reference with respect to issues concerning the exclusivity periods under 11 U.S.C. § 1121(b) and issue an order terminating the exclusivity periods.

The Court has discretion in deciding whether to withdraw a reference to the Bankruptcy Court "for cause shown" under 28 U.S.C. § 157(d). *Wedtech Corp. v. Banco Popular de Puerto Rico (In re Wedtech Corp.), 94 B.R. 293, 295 (S.D.N.Y.1988); Lesser v. A–Z Associates (In re Lion Capital Corp.),* 48 B.R. 329, 333 (S.D.N.Y.1985). Factors for the Court to consider include "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985).

Citibank's motion is to withdraw the reference

of these bankruptcy cases to the Bankruptcy Court with respect to issues concerning the Ames Group's exclusivity periods under 11 U.S.C. § 1121(b). Under 28 U.S.C. § 157(b)(2)(A), "core proceedings" in the bankruptcy area include "matters concerning the administration of the estate." The issue of a debtor's exclusivity period and the propriety of any extensions of the period is certainly a "core proceeding," *see, e.g., In re Texaco Inc.,* 76 B.R. 322, 328 (Bankr.S.D.N.Y.1987), and is particularly well suited for determination by the Bankruptcy Court. The Bankruptcy Court has the discretion, under 11 U.S.C. § 1121(d), to extend the debtor's exclusivity period. *See In re McLean Industries, Inc.,* 87 B.R. 830, 833 (Bankr.S.D.N.Y.1987). This Court will not lightly interfere with the Bankruptcy Judge's decision on this issue; in order to prevail on its motion, Citibank must persuade the Court that the Bankruptcy Judge's latest extension of the exclusivity periods to January 10, 1992 was an abuse of his discretion.

Judge Goodman of the Bankruptcy Court has been intimately involved with these bankruptcy cases since the beginning of this year. The decision of whether to extend the exclusivity periods under 11 U.S.C. § 1121(d) involves a careful balancing of competing factors and a consideration of the interests of the many parties involved—including the Ames Group, Citibank and the banks, the Unsecured Creditors' Committee, the Employees' Committee, the Statutory Bondholders' Committee of Ames Department Stores, and the Official Committee of Unsecured Creditors of the Subsidiaries of Ames Department Stores.

**\*3** With each extension of the exclusivity periods that Judge Goodman has granted, he has monitored the Ames Group's progress in putting together a reorganization plan. Although the speed with which the Ames Group is progressing is not satisfactory to Citibank, and the Court certainly understands Citibank's desire to have the proceedings advance more quickly, the Ames Group is nonetheless working toward filing its own reorganization plan.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1991 WL 259036 (S.D.N.Y.)
**(Cite as: 1991 WL 259036 (S.D.N.Y.))**

Indeed, during the period from October 11, 1991 to November 14, 1991, a total of 16 meetings took place between the financial advisors working on these cases as well as between the Ames Group and the various creditor groups. *See* Affidavit of John M. Friedman, Jr., Esq. of Dewey Ballantine, counsel for the Unsecured Creditors' Committee, sworn to on November 18, 1991, ¶ 16.

Citibank and the Ames Group have presented sharply differing views of the Ames Group's financial position. Judge Goodman is in a far better position than is this Court to evaluate the Ames Group's financial position as it relates to the appropriate length of the exclusivity periods. Judge Goodman has factored such financial considerations into his decisions to extend the exclusivity periods, and Citibank has not demonstrated that Judge Goodman has acted improperly with respect to these considerations.

The Court cannot conclude that Judge Goodman's determination to extend the exclusivity periods until January 10, 1992 was inappropriate or an abuse of his discretion. The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors. Given the complexity of these cases and the large number of creditors and other interested parties involved, it is not surprising that negotiations have been protracted and that the circumstances have warranted extensions of the exclusivity periods. Judge Goodman has carefully considered all of these factors in deciding to grant the Ames Group's requests for extensions.

An additional factor—and perhaps the most important factor of all—that justifies Judge Goodman's most recent extension to January 10, 1992, and militates against this Court's intrusion into the proceedings to terminate the exclusivity periods, is the upcoming Christmas selling season. A termination of the exclusivity periods now would likely have a disruptive effect on the Ames Group's business operations during one of the retail industry's most crucial sales periods. Giving the Ames Group

another seven weeks in which to file its own reorganization plan will not only avoid such a disruption in the Ames Group's operations but will also allow the Ames Group to factor its Christmas season sales results into a proposed reorganization plan.

The Court also notes that Judge Goodman's most recent order extending the exclusivity periods states that "[t]his Order shall be the final extension of time under Section 1121(d) of the Code granted and no further extension shall be granted without either a showing of extraordinary cause or upon the written consent of all of the official committees appointed in these cases and Citibank, N.A., as Agent for the Ames Group's pre-petition secured creditors." *See* Order Under 11 U.S.C. § 1121(d), Granting Extension of Ames Group's Exclusive Periods in Which to File Plan(s) of Reorganization and Solicit Acceptances Thereof, ¶ 3 (Bankr.S.D.N.Y. Nov. 13, 1991) (Goodman, J.). Although there is certainly no guarantee that, on or before January 10, 1992, the Ames Group will not seek yet another extension in the exclusivity periods or that Judge Goodman will not grant such a request, Judge Goodman's order makes it clear that the Ames Group will have a very heavy burden to meet should it decide to seek another extension beyond January 10, 1992. Furthermore, during oral arguments on the instant motion held on November 19, 1991, George A. Zimmerman, Esq., counsel for the Ames Group, indicated to the Court that it was most unlikely that the Ames Group would seek another extension in the exclusivity periods. There is, therefore, no compelling reason for this Court to interfere with Judge Goodman's carefully considered determination that the exclusivity periods should be extended for a comparatively brief period, until January 10, 1992.

**\*4** Matters that have been brought to the Court's attention after oral arguments do not change this result. Counsel for Citibank has informed the Court that on November 19, 1991, the Unsecured Creditors' Committee filed a motion (in which the

Not Reported in F.Supp., 1991 WL 259036 (S.D.N.Y.)
**(Cite as: 1991 WL 259036 (S.D.N.Y.))**

Ames Group has joined) in the Bankruptcy Court for substantive consolidation of the Ames Group pursuant to 11 U.S.C. § 302. Citibank contends that the filing of the motion "effectively eliminates the possibility of a consensual plan being filed" by January 10, 1992, and that the motion "will require significant discovery and its resolution will take many months." Letter of Ronald DeKoven, Esq., counsel for Citibank, dated November 21, 1991. Counsel for the Ames Group responds that significant discovery relevant to the motion for substantive consolidation has already been completed in connection with a previous adversary proceeding commenced by the Ames Group, and notes that the Ames Group's joinder in the motion proposes that the Bankruptcy Court set a schedule in order to resolve the motion within the time frame established in Judge Goodman's most recent order extending the exclusivity period. Letter of George A. Zimmerman, Esq., counsel for the Ames Group, dated November 22, 1991. Citibank has not persuaded the Court that the motion for consolidation substantially increases the likelihood that the Ames Group will seek another extension in the exclusivity periods or that Judge Goodman would grant such a request. The Bankruptcy Court is in the best position to evaluate what impact, if any, the motion will have on the Ames Group's ability to file its reorganization plan by January 10, 1992, and Judge Goodman will undoubtedly consider that in deciding the motion.

### Conclusion

For the reasons stated above, Citibank's motion for an order withdrawing in part the reference of these cases to the Bankruptcy Court and terminating the Ames Group's exclusivity periods is denied. The cases are remanded to the Bankruptcy Court in their entirety.

SO ORDERED.

S.D.N.Y.,1991.
In re Ames Dept. Stores, Inc.
Not Reported in F.Supp., 1991 WL 259036 (S.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

**H**

United States Bankruptcy Court,
S.D. New York.
In re LIONEL L.L.C., et al., Debtors.

No. 04–17324.
Aug. 3, 2007.

Schulte Roth & Zabel LLP by Adam C. Harris, Abbey Walsh, Adam L. Hirsch, New York, NY, Attorneys for the Debtors and Debtors in Possession.

Kohn, Swift, & Graf, P.C. by Robert A. Swift, Robert J. LaRocca, Philadelphia, PA, Attorneys for Mike's Train House, Inc.

Stevens & Lee, P.C. by Alec P. Ostrow, New York, NY, Attorneys for Mike's Train House, Inc.

Halperin Battaglia Raicht, LLP, by Alan D. Halperin, Robert D. Raicht, New York, NY, Counsel to the Official Committee of Unsecured Creditors of Lionel L.L.C.

**MEMORANDUM DECISION REGARDING CLAIMS OBJECTIONS, ESTIMATION PROCEDURES, STAY MODIFICATION *AND EXTENSION OF EXCLUSIVITY***

BURTON R. LIFLAND, United States Bankruptcy Judge.

**\*1** Before the Court is the motion of Lionel L.L.C. and Liontech Company ("Lionel" or the "Debtors") to estimate (the "Estimation Motion") proof of claim number 55 (the "Trade Secrets Damages Claim"), filed by Mike's Train House, Inc ("MTH"), pursuant to sections 502(b) and (c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the motion to expunge proof of claim numbers 54 (the "Interest Claim") and 56 (the "Legal Fees Claim") filed by MTH under section 502(b) of the Bankruptcy Code and Rule 3007 of the Bankruptcy

Rules. Lionel has filed objections relating to all of the above referenced filed proofs of claim. MTH objects to the Estimation Motion and cross-moves to modify the stay and permit the litigation of the Trade Secrets Damages Claim to go forward in the District Court in the Eastern District of Michigan. MTH has also moved for an order (the "Deposition Motion") authorizing the taking of videotaped depositions of three potential witnesses.

Lionel also moves for an order granting a fifth extension of the exclusive period during which only Lionel may file a plan of reorganization and solicit acceptances thereof through October 16, 2007, and December 17, 2007, respectively MTH objects to a further extension. An evidentiary hearing commenced on June 27 and continued on August 2, 2007.

**Background**

Lionel is a well-known marketer of model train products, including steam and diesel engines, rolling stock, operating and non-operating accessories, track, transformers and electronic control devices. One of Lionel's main competitors is MTH. In 2000, MTH sued Lionel in the United States District Court for the Eastern District of Michigan (the "Michigan Court") for violating the Michigan Uniform Trade Secrets Act (the "Trade Secrets Litigation"). The suit was based on allegations that one of Lionel's former suppliers stole confidential design drawings from MTH's supplier and then used that information to design and build trains for Lionel. A trial was held and on June 9, 2004, the jury returned a verdict of $38,608,305.00 in MTH's favor. Lionel filed a motion, which was denied, for a new trial. Financially unable to post a bond to stay enforcement of the judgment pending appeal, Lionel commenced their voluntary chapter 11 cases on November 15, 2004.

On May 3, 2005, MTH filed the three proofs of claim against Lionel arising out of the Trade Secrets Litigation: FN1 the Trade Secrets Damages

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2
Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

Claim in the amount of $38,608,305.00; the Interest Claim, in the amount of $28,813.44 for interest accruing between the date of the MTH Judgment (November 3, 2004) and the Petition Date, and the Legal Fees Claim, in the amount of $3,499,433.57 for legal fees incurred in connection with the Trade Secrets Litigation.

> FN1. MTH also filed claim number 53 alleging patent infringement claims relating to MTH's smoke patents in the amount of $17,467,449.06. The Debtors filed an objection to that claim but proceedings relating to that objection are stayed pursuant to a stipulation dated July 11, 2006.

After obtaining a modification of the automatic stay from this Court, Lionel appealed the verdict to the United States Court of Appeals for the Sixth Circuit. On December 14, 2006, the Sixth Circuit reversed the Michigan Court's denial of Lionel's motion for a new trial and vacated the MTH judgment. MTH filed a Petition for Panel Reconsideration and Suggestion for Rehearing *En Banc,* but the Sixth Circuit denied MTH's petition on April 19, 2007. On April 26, 2007, MTH asked the Sixth Circuit to stay issuance of the mandate to allow MTH to file a petition for a writ of certiorari to the United States Supreme Court. The stay was granted on May 16, 2007. On May 30, 2007, MTH filed a Motion to Vacate Stay of Mandate and for Issuance of Mandate. On June 15, 2007, the Sixth Circuit granted the motion and issued the mandate.

**\*2** The Trade Secrets Damages Claim asserted by MTH was filed in a liquidated dollar amount based upon the amount awarded to MTH in the MTH Judgment. Due to the Sixth Circuit's reversal of the MTH Judgment, the Trade Secrets Damages Claim is now a disputed and unliquidated claim because the Sixth Circuit's decision does not finally resolve the Trade Secrets Damages Case, but instead provides for the case to be remanded back to the Michigan Court for a new trial consistent with the decision. Therefore, the Debtors object to the Trade Secrets Damages Claim and request the entry

of an order authorizing the reclassification of such claim as disputed, contingent, and unliquidated. In addition, the Debtors contend that as long as the Trade Secrets Damages Claim remains disputed and unliquidated, it will prevent the Debtors from confirming a plan of reorganization. Thus, in order to avoid the purported delay that would result if the Debtors were required to retry the Trade Secrets Litigation in the Michigan Court and await the final outcome of the litigation, the Debtors seek to have this Court estimate the Trade Secrets Damages Claim pursuant to section 502(c) of the Bankruptcy Code. Accordingly, the Debtors seek entry of an order (i) disallowing and expunging the Legal Fees Claim and the Interest Claim, (ii) reclassifying the Trade Secrets Damages Claim as disputed, contingent and unliquidated, (iii) setting procedures for, and scheduling a hearing on, estimation of the Trade Secrets Damages Claim and (iv) extending exclusivity to allow for the resolution or estimation of such claims.

**Discussion**

Section 502(c) of the Bankruptcy Code provides that:

> (c) There shall be estimated for purpose of allowance under this section—

> > (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case;

11 U.S.C. § 502(c); *see Frito Lay, Inc. v. LTV Steel Co. ( In re Chateaugay Corp.),* 10 F.3d 944, 957 (2d Cir.1993) ("A bankruptcy court must estimate 'any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.' "); *In re G–I Holdings, Inc.,* 2006 WL 2403531, *3 (Bankr.D.N.J. August 11, 2006) ("Section 502(c) of the Bankruptcy Code is drafted in mandatory terms. That is, any contingent or unliquidated claim 'shall' be estimated so long as the 'liquidation' of the particular claim would 'unduly delay the administra-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

tion of the case.' "); *In re Lane,* 68 B.R. 609, 611 (Bankr.D.Haw.1986) ("This duty of the bankruptcy court is mandatory, since the language of [section 502(c) ] states 'shall' "). Thus, when the liquidation of a claim is premised on litigation pending in a non-bankruptcy court, and the final outcome of the matter is not forthcoming, the bankruptcy court should estimate the claim. *See Maxwell v. Seaman Furniture Company, Inc. (In re Seaman's Furniture Co. of Union Square, Inc.),* 160 B.R. 40, 42 (S.D.N.Y.1993) ( "Estimation is an expedient method for setting the amount of a claim that may receive a distributive share of the estate."); *In re Apex Oil Co.,* 107 B.R. 189, 192 (Bankr.E.D.Mo.1989) ("the key consideration in whether a bankruptcy court should estimate a claim pending in another forum is whether liquidation of that claim would unduly delay the debtor's Chapter 11 reorganization."); *In re Lane,* 68 B.R. at 611 (section 502(c) of the Bankruptcy Code requires the court to estimate any claim where failing to do so would unduly delay the administration of the case). A main goal of the Bankruptcy Code is to equitably distribute the debtor's assets among its creditors. Lengthy bankruptcy proceedings cause delayed distributions, which in turn, greatly devalue the claims of all creditors as they cannot use the assets until they receive them. *See In re Paramount Publix Corp.,* 8 F.Supp. 644, 646–47 (S.D.N.Y.1934) ("Time is of the essence in bankruptcy administration. An early distribution of the bankrupt's assets among his creditors is imperative.

**\*3** It is more than seven years since the Trade Secrets Litigation between Lionel and MTH commenced. The MTH Judgment was the impetus for the filing of these chapter 11 proceedings that have now been pending before this court for over two and a half years awaiting the outcome of the appeal As with most chapter 11 proceedings, Lionel's status as a chapter 11 debtor has placed a strain on the company's management and employees, and their relationships with both customers and manufacturers. It has also materially affected Lionel's ability to expand its business beyond the pure

"hobby" market. Mr. Calabrese, Lionel's president and CEO since September 2004, testified that he has been working diligently to develop Lionel's "mass" business such as co-branding opportunities with retailers such as Macy's, Toys–R–Us and Target. However, given the continued uncertainty surrounding Lionel's bankruptcy and the MTH claims, the willingness of the mass merchandisers to get involved in long term commitments with Lionel is limited.[FN2] Some retailers, such as Wal–Mart have "flat out refused to deal with Lionel while in bankruptcy."

> FN2. For example, Lionel has been invited to participate in the Macy's parade but Macy's has expressed uncertainty about giving Lionel that slot given "what's going on in with the bankruptcy and the long term issues regarding its viability."

In addition, the prolonged chapter 11 cases have had a negative effect on the Debtors' relationships with its employees. Mr. Calabrese testified that he has lost through resignation several key employees, including several senior employees with 20 odd years of experience in the product development area as well as the head of hobby sales. Mr. Calabrese testified further that although the company has several management positions open, including the head of mass sales, head of product development and head of business affairs, it has been extremely difficult to attract talented and experienced people under the current circumstances. Mr. Calabrese himself is laboring under a contract that expires at the end of this year.

Further, in the years since the Petition Date, Lionel has spent approximately $10 million dollars in total fees and expenses of which $5 million relates purely to the administration of the chapter 11 cases, including the company's attorneys and professionals, the committee's professionals, United States Trustee's fees and other similar fees.

Not long after the reversal of the Judgment by the Sixth Circuit, on May 21, 2007, the Debtors

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

filed their Disclosure Statement and Joint Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code. The Plan proposes to leave all creditors of the Debtors' estates unimpaired by paying them in full, in cash, plus post-petition interest, on the effective date. One of the conditions precedent to confirmation of the Plan is that the Trade Secrets Damages Claim be settled, otherwise resolved or estimated by the Bankruptcy Court. Considering the enormous dollar amounts of the claims asserted by MTH (claims which MTH asserts could result in damages of between $60 and $70 million) in comparison to the rest of the claims and the assets of the Debtors' estates, the Debtors clearly cannot confirm the Plan if this Court cannot find it feasible without the liquidation of MTH's claims. *See eg., Sherman v. Harbin (In re Harbin),* 2007 WL 1322389, *4 (9th Cir. May 8, 2007) (holding that in order to meet the feasibility requirement for confirmation of a plan under section 1129(a)(11) a court must evaluate "whether a potential future judgment may affect the debtor's ability to implement its plan."); *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1382 (9th Cir.1985) (estimation necessary for a determination of plan feasibility).

**\*4** MTH contends there will not be an undue delay in the administration of these chapter 11 cases if the stay is modified to allow the case to be retried in the Michigan Court. That simply defies logic. An estimation proceeding in this Court can be conducted within a very short period of time versus a full-blown jury trial in Michigan which is not even calendared. In the first trial, the parties engaged in 18 days of trial resulting in the jury verdict in June 2004. Post-trial motions and briefing were not concluded until November 2004, when Lionel's motion for a new trial was denied and judgment was finally entered. The appeal to the Sixth Circuit, including MTH's Petition for Reconsideration, consumed an additional two years and three months. Under the procedures proposed by Lionel in connection with the Estimation Motion, estimation of the Trade Secrets Damages Claim could be

concluded by the end of August, 2007.

MTH also argues that any delay in retrying the case in Michigan should not be an issue because Lionel can go ahead and confirm a plan without dealing with MTH's claims which can proceed post-confirmation or simply dismiss the chapter 11 cases and pay all creditors other than MTH. This simplistic argument is unrealistic and does not even have cosmetic appeal. First, dismissal would result in the occurrence of events of default under the Debtors' DIP financing facilities, causing acceleration of approximately $45 million in obligations (and leaving the Debtors without working capital to run the business and all creditors at the mercy of the lenders' exercise of remedies), and second result in between $15 million and $20 million of pre- and postpetition obligations becoming immediately due and payable. Moreover, under the Plan, the Debtors intend to refinance these obligations through a new exit financing facility to replace its existing debtor in possession financing facilities, and new equity capital to pay all other allowed claims and exit costs. However, with the threat of $60–$70 million in additional claims being asserted by MTH, the Debtors will have no access to the capital necessary to permit the payment of those obligations and/or the confirmation of a plan. Mr. Turkington, Lionel's CFO, also explained that based upon his experience as CFO after the MTH jury verdict entered in June 2004, that any dismissal of the chapter 11 cases with the specter of the MTH litgation continuing to hang over the head of Lionel would result in trade creditors, particularly manufacturers, constricting trade credit and even insisting on cash on delivery or cash in advance.

Even if the Debtors could get exit financing to confirm a plan prior to resolving MTH's claims, having MTH's claims ride through the bankruptcy without being discharged would not satisfy section 1129(a)(11) of the Bankruptcy Code. That section requires that "confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor ... unless such

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159

**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

liquidation or reorganization is provided for in the plan." 11 U.S.C. § 1129(a)(11). A liquidation or further reorganization contingency cannot realistically be provided for in a plan, when neither the likelihood of an adverse judgment, nor the timing and amount of such a judgment, can be predicted with any certainty. *See In re Harbin, supra.*

**\*5** MTH also contends that its request for injunctive relief is not a "claim" capable of estimation under Section 101(5)(a) of the Bankruptcy Code. This argument presupposes a finding of liability on the part of Lionel. When, and if, MTH's Trade Secrets Damages Claim is estimated above $0, then a determination will be made if MTH's request for an injunction against future misappropriation can be projected into a monetary award.FN3 Accordingly, the Debtors' request to estimate the Trade Secrets Claim is granted and MTH's motion to modify the stay to retry the case in the Michigan court is denied.

> FN3. In fact, previously in this case, a similar injunction in favor of the Debtor was monetized.

**Procedures**

Although the Bankruptcy Code does not explicitly detail procedures for estimating claims, a Bankruptcy Court may use whichever method is best suited to the circumstances. *Bittner v. Borne Chemical Co.,* 691 F.2d 134, 135 (3d Cir.1982); *In re Seaman's Furniture Company of Union Square, Inc.,* 160 BR at 41. In *In re Baldwin–United Corp,* 55 B.R. 885, 889 (Bankr.S.D.Ohio 1985) the court utilized a procedure akin to a summary trial where there was no jury, live testimony by one witness per party, a discovery cutoff date, and only two days for the hearing. Many courts adhere to the method set forth in the *Baldwin–United* case. *See e.g., In re MacDonald,* 128 B.R. 161, 166–67 (Bankr.W.D.Tex .1991) (employing an abbreviated procedure practically the same as *Baldwin–United); In re Apex Oil Co.,* 92 B.R. 843 (Bankr.E.D.Mo.1988) (utilizing a methodology analogous to *Baldwin–United); NLRB v. Grey-*

*hound Lines (In re Eagle Bus Mfg.),* 158 B.R. 421 (D.Tex.1993) (two-day summary trial); *DeGeorge Fin. Corp. v. Novak* (*In re DeGeorge Fin. Corp.*), 2002 U.S. Dist. LEXIS 17621 (D.Conn.2002) (one-day trial). Although this is not the only method of conducting the estimation procedure (*see In re Nova Real Estate Inv. Trust,* 23 B.R. 62, 65 (Bankr.E.D.Va.1982)), a longer method, such as a full-blown trial on the merits, would "eviscerate the purpose underlying Section 502(c)." *Baldwin–United,* 55 B.R. at 899. Moreover, a more time consuming method would run counter to the "efficient administration of the bankrupt's estate ..." *Bittner,* 691 F.2d at 135. Furthermore, in estimating the value of a claim, the Court of Appeals for the Second Circuit has stated that courts should make a "speedy and rough estimation of [the] claims for purposes of determining [claimant's] voice in the Chapter 11 proceedings ..." *In re Chateaugay Corp.,* 944 F.2d 997, 1006 (2d Cir.1991).

MTH complains that the estimation procedure proposed by the Debtors fails to accord with fundamental notions of due process and deliberately tilts towards excluding evidence supportive of MTH's claims. In general, the truncated trial process that can be developed under 502(c) has been found to be consistent with the dictates of due process of law. *See In re FRG, Inc.,* 121 B.R. 451, 456 (Bankr.D.Pa.1990); *In re Apex Oil Co.,* 92 B.R. at 845–47; *In re Baldwin–United Corp.,* 55 B.R. at 899–902. In addition, when a bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's equitable powers and thereby waives its right to a jury trial. *In re Trans Marketing* 117 F.3d 1417 (5th Cir.1997) citing *Lagenkamp v. Culp,* 498 U.S. 42, 44 (1990); *First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.,)* 937 F.2d 833, 840 (2d Cir.1991) (rejecting creditor's argument that it should not be forced to make the choice between filing a proof of claim and preserving its right to a jury trial).

**\*6** However, as requested by MTH, I find that the procedures proposed by Lionel should be modi-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

fied somewhat to provide for limited additional discovery and presentation time, the parameters of which shall be the subject of a chamber's conference to be scheduled. *See.* 11 U.S.C. § 105(d). Similarly, I find that MTH's Deposition Motion is, at best, premature and shall be addressed at the scheduling conference to review the proposed procedures. *See* Local Rule 7007–1(b) ("No discovery-related motion ... shall be heard unless counsel for the moving party first requests an informal conference with the Court ...").

**Extension of Exclusivity**

Former section 1121(d) of the Bankruptcy Code, as applicable to this case, permits the court to extend a debtor's exclusive period upon a determination of cause:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section.

*See* 11 U.S.C. § 1121(d)(2004). In determining whether a debtor has had an adequate opportunity to negotiate a plan of reorganization and solicit acceptances thereof, a court should consider a variety of factors, addressed below, to assess the totality of circumstances. *In re McLean Indus., Inc.,* 87 B.R. 830, 833 (Bankr.S.D.N.Y.1987).

First, although the Debtors cases are not extremely large, the MTH claims and litigation claims add a unique complexity to the resolution of these cases. Second, the Debtors have made good faith progress towards reorganization. The Debtors have improved their business operations and have filed a Plan that proposes to pay all creditors in full with interest. The Debtors are current on all post-petition obligations and predict they will maintain this ability to pay their bills as they come due. In addition the Debtors have reviewed and resolved many of the claims filed against them. However, the amounts of MTH's claims remain a significant un-

resolved contingency in the Debtor's cases requiring further time to confirm their Plan while those claims are liquidated and exit financing can be put into place.

**The Interest Claim and the Legal Fees Claim**

The Debtors also object to, and seek the disallowance and expungement of, the Interest Claim and the Legal Fees Claim. The Interest Claim calculates interest from the date of the MTH Judgment until the Petition Date. Because the MTH judgment has been vacated by the Sixth Circuit Decision, there is no longer a valid judgment on which interest could accrue, thereby rendering the Interest Claim void. The Legal Fees Claim seeks reimbursement of MTH's legal fees and expenses expended in connection with the Trade Secrets Litigation. MTH filed a Petition for Counsel Fees and Cost Reimbursement in the Michigan Court (the "Legal Fees Petition") on November 5, 2004; however, it has not been ruled upon because of the automatic stay extant in this case. The Legal Fees Petition asserts that under the Michigan Uniform Trade Secrets Act ("MUTSA"), attorney's fees can be awarded to the prevailing party in a litigation if willful and malicious misappropriation exists. Lionel argues that the Sixth Circuit Decision vacating the MTH Judgment leaves MTH ineligible to seek the reimbursement of incurred legal fees and expenses under the MUTSA and therefore, the Legal Fees Claim is also void. However, as MTH contends, the Legal Fees Claim stands on the same footing as MTH's Trade Secrets Damages Claim and may be resolved along with it. Accordingly, the objection to the Interest Claim is granted and the claim is expunged; the Legal Fees Claim is also expunged without prejudice to reassert should fees be subsequently awarded.

**Conclusion**

***7** The litigation in the Sixth Circuit has already consumed seven years and following the reversal by the Circuit Court, the litigation is now in a position that in the vernacular would be deemed, "a do over." As both sides have made clear their in-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in B.R., 2007 WL 2261539 (Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159
**(Cite as: 2007 WL 2261539 (Bkrtcy.S.D.N.Y.))**

tention to appeal any adverse determination, any-
where, adding years of delay to the issue determina-
tion, this is clearly a situation contemplated by
Congress for the implementation of section 502(c).
Accordingly, the Motion to Estimate is granted
with the hearing procedures suggested by the
Movant to be reviewed in a conference to be sched-
uled with chambers. The Motion to lift the stay is
denied. The Interest Claim and the Legal Fees
Claims are expunged.

    IT IS SO ORDERED.

Bkrtcy.S.D.N.Y.,2007.
In re Lionel L.L.C.
Not Reported in B.R., 2007 WL 2261539
(Bkrtcy.S.D.N.Y.), 48 Bankr.Ct.Dec. 159

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.