Presentment Date and Time: June 25, 2013 at 12:00 p.m.
Objection Deadline: June 24, 2013 at 4:00 p.m.

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF (I) AMENDMENT AND (II) ADJOURNMENT OF PRESENTMENT OF
STIPULATION AND ORDER BETWEEN THE DEBTORS AND MORTGAGEIT, INC.
APPROVING SETTLEMENT AGREEMENT AND AUTHORIZING
THE DEBTORS' PERFORMANCE THEREUNDER**

**PLEASE TAKE NOTICE** that on June 4, 2013, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] filed the *Stipulation and Order Between the Debtors and MortgageIT, Inc. Approving Settlement Agreement and Authorizing the Debtors' Performance Thereunder* [Docket No. 3878] (the "Stipulation and Order").

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Motions [Docket No. 6] (the "Whitlinger Affidavit").

ny-1093966

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby submit the amended Stipulation and Order (the "Amended Stipulation and Order"), annexed hereto as Exhibit 1.[2]

**PLEASE TAKE FURTHER NOTICE** that the proposed Amended Stipulation and Order, previously scheduled to be presented on June 11, 2013 at 12:00 p.m. (Prevailing Eastern Time) (the "Presentment Date"), has been rescheduled by mutual agreement of the parties to **June 25, 2013 at 12:00 p.m. (Prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that the deadline to object to the Stipulation and Order (the "Objection Deadline"), previously scheduled for June 10, 2013 at 4:00 p.m. (Prevailing Eastern Time), has been extended to **June 24, 2013 at 4:00 p.m. (Prevailing Eastern Time)**.

Dated:  June 7, 2013
        New York, New York

                                    /s/ Norman S. Rosenbaum
                                    Gary S. Lee
                                    Norman S. Rosenbaum
                                    Erica J. Richards
                                    MORRISON & FOERSTER LLP
                                    1290 Avenue of the Americas
                                    New York, New York 10104
                                    Telephone: (212) 468-8000
                                    Facsimile: (212) 468-7900

                                    *Counsel for the Debtors and
                                    Debtors in Possession*

---

[2] A comparison of the Stipulation and Order and the Amended Stipulation and Order has not been provided, as the only change is the attachment of the Settlement Agreement (as defined Amended Stipulation and Order) as Exhibit A to the Amended Stipulation and Order, which was inadvertently omitted from the Stipulation and Order.

# **EXHIBIT 1**

Amended Stipulation and Order

ny-1093966

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- )
In re:                                                            )    Case No. 12-12020 (MG)
                                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,                                 )    Chapter 11
                                                                  )
                                           Debtors.               )    Jointly Administered
                                                                  )
----------------------------------------------------------------- )

### STIPULATION AND ORDER BETWEEN THE DEBTORS AND MORTGAGEIT, INC. APPROVING SETTLEMENT AGREEMENT AND AUTHORIZING DEBTORS' PERFORMANCE THEREUNDER

Subject to the approval of the Court, this stipulation and order (the "**Stipulation and Order**") is made and entered into on June 4, 2013 by, between, and among Residential Funding Company, LLC ("**RFC**" and together with the debtors and debtors in possession in the above-captioned bankruptcy case, the "**Debtors**") and MortgageIT, Inc. ("**MortgageIT**" and together with RFC, the "**Parties**" and each, a "**Party**").

WHEREAS RFC was formerly engaged, among other things, in the business of purchasing residential mortgage loans;

WHEREAS MortgageIT was previously engaged, among other things, in the business of originating, processing, underwriting, closing and selling residential mortgage loans;

WHEREAS MortgageIT and RFC are parties to a Client Contract dated July 28, 2003 (the "**Contract**"), which sets forth the terms and conditions for sales to RFC of residential mortgage loans originated by MortgageIT;

WHEREAS prior to the Petition Date (defined below) RFC alleged that MortgageIT defaulted under the terms of the Contract, including, among other things, by breaching one or more representations and warranties related to the sale of three loans (the

ny-1085038

"**Subject Loans**") to RFC and requested that MortgageIT repurchase or make RFC whole for losses related to the Subject Loans pursuant to the Contract (the "**Repurchase Claim**");

WHEREAS prior to the Petition Date, MortgageIT disputed RFC's Repurchase Claim pursuant to the Contract;

WHEREAS prior to the Petition Date, RFC and MortgageIT negotiated a settlement with respect to the Repurchase Claim, the terms of which were memorialized in that certain Settlement Agreement among RFC, MortgageIT and Ally Bank dated as of May 9, 2012 (the "**Settlement Agreement**"), a copy of which is annexed hereto as Exhibit A[1];

WHEREAS pursuant to the Settlement Agreement, MortgageIT agreed to pay RFC $200,000.00 in settlement of RFC's Repurchase Claim in one lump sum payment on or before May 11, 2012 (the "**Settlement Payment**");

WHEREAS the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on May 14, 2012 (the "**Petition Date**");

WHEREAS on the Petition Date, the Court entered an order jointly administering the chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, as of the date hereof, MortgageIT has not made the Settlement Payment;

WHEREAS, on January 22, 2013, RFC commenced an action against MortgageIT in the United States District Court for the District of Minnesota, styled as Residential Funding

---

[1] Appropriate redactions have been made to Settlement Agreement and Exhibit A thereto has not been included in order to protect borrower information.

2
ny-1085038

Company, LLC v. MortgageIT, Inc., Case No. 0:13-cv-00189-PAM-SER, seeking to compel MortgageIT's performance under the Settlement Agreement (the "**Minnesota Action**");

WHEREAS, MortgageIT contends that as a consequence of the commencement of the bankruptcy cases RFC may be unauthorized to consummate the Settlement Agreement without an Order of the Court; and

WHEREAS, the Parties have conferred and MortgageIT is prepared to make the Settlement Payment subject to the terms and conditions of this Stipulation and Order.

NOW THEREFORE, it is hereby STIPULATED and AGREED by the Parties that:

1. Pursuant to section 363(b) of the Bankruptcy Code, to the extent necessary, the Debtors are hereby authorized to enter into in this Stipulation and Order and to perform their obligations thereunder.

2. MortgageIT shall pay $200,000.00 to RFC in immediately available funds within seven (7) business days of entry of this Stipulation and Order, in accordance with wire instructions to be provided separately to MortgageIT by the Debtors.

3. RFC shall file a notice of dismissal of the Minnesota Action within three (3) business days of receipt of the Settlement Payment.

4. Upon the payment of the Settlement Amount (as defined in the Settlement Agreement) by MortgageIT, and dismissal of the Minnesota Action, each in accordance with the terms hereof, the limited releases provided for under the Settlement Agreement shall be in full force and effect.

5. This Stipulation and Order does not release: (a) claims arising out of the failure of either Party to perform in conformity with the terms of this Stipulation and Order, or

(b) any future disputes between any of the Debtors and MortgageIT, including their respective successors and assigns, which arise out of or relate to the Contract and unrelated to the Subject Loans.

6. The Stipulation and Order constitutes the entire agreement and understanding between the Parties with regard to the matters addressed herein, and supersede all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, between and among the Parties hereto regarding the subject matter of the Stipulation and Order.

7. Except as specifically provided for herein, the Parties reserve all rights and defenses they may have in the above-captioned cases, and entry into this Stipulation and Order shall not impair or otherwise affect such rights and defenses, and all such rights and defenses are expressly preserved.

8. This Stipulation and Order shall not become effective unless and until it is entered by the Court.

9. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Stipulation and Order.

10. This Stipulation and Order may not be modified other than by a signed writing executed by the Parties hereto or by further order of the Court.

11. This Stipulation may be executed in multiple counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original, but all of which together shall constitute one instrument.

12. Each person who executes this Stipulation and Order on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation and Order on behalf of such Party.

Dated: June 4, 2013

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in Possession*

Dated: June 4, 2013

/s/ Steven Wilamowsky
Steven Wilamowsky
BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 705-7960
Facsimile: (212) 702-3607

*Counsel for MortgageIT, Inc.*

**IT IS SO ORDERED**

Dated: _____, 2013
         New York, New York

_____
HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

5

ny-1085038

**Exhibit A**

ny-1085038
**Exhibit A**

## SETTLEMENT AGREEMENT

This Settlement Agreement dated as of May 9, 2012 (the "Agreement") between, Residential Funding Company, LLC, a Delaware limited liability company, formerly known as Residential Funding Corporation, a Delaware corporation ("RFC"), Ally Bank, a Utah bank, formerly known as GMAC Bank, a Utah bank, as successor-by-conversion to GMAC Bank, a Utah industrial bank, as successor in interest to GMAC Bank, a federal savings bank ("Ally Bank") (collectively "RFC" and "Ally Bank" are known as "Ally Bank") and MortgageIT, Inc., a New York corporation (the "Client" or "MortgageIT"), collectively the Parties and individually a Party.

### RECITALS:

A.  Client and Ally Bank are parties to that certain Client Contract dated July 28, 2003 and Correspondent Agreement dated February 24, 2004 (the "Contracts").

B.  Pursuant to the terms of the Contracts, Client sold to Ally Bank residential mortgage loans described as set forth on Exhibit A to this Agreement (the "Subject Loans").

C.  Ally Bank has requested that Client repurchase the Subject Loans pursuant to the Contracts as noted on Exhibit A (the "Repurchase Claim").

D.  Ally Bank has rescinded the Subject Loan "█████" as noted on Exhibit A.

E.  Client has not repurchased the other Subject Loans as noted on Exhibit A.

F.  Ally Bank currently possesses and will retain the collateral including the notes and mortgage and/or other security instruments securing the Subject Loans.

G.  Client denies that one or more representations and warranties related to the Subject Loans has been breached under the Contracts and Client further denies that it is obligated to repurchase the Subject Loans or otherwise compensate Ally Bank in relation to the Subject Loans.

H.  The Parties have agreed that it is in their respective best interests to settle their disputes with respect to the Subject Loans on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of these Recitals and the Parties' mutual covenants and promises set forth in this Agreement, the receipt and sufficiency of which these Parties acknowledge by their signatures to this Agreement, Ally Bank and Client hereby agree as follows:

1.  **PAYMENT:**

    (a) In settlement of Ally Bank's repurchase claims, and in consideration of Ally Bank releasing any claims against Client relating to the Subject Loan and all other undertakings stated in this Agreement, Client will pay to Ally Bank the amount of $209,000 (the "Settlement Amount"). Client will pay the Settlement Amount as follows:

1

Revised: 5/1/12

**EXHIBIT A**

  (i) One (1) payment of $200,000 on or before May 11, 2012.

(b) The above payment shall be made no later than 5:00 p.m. (Eastern Standard Time) on May 11, 2012 and shall be made in lawful money of the United States of America in immediately available funds transferred via wire to:



(c) If Client fails to pay the Settlement Amount on a timely basis in accordance with this Section 1, then Ally Bank may, by notice to Client, terminate this Agreement and proceed against Client with respect to the Subject Loans under the Contracts.

(d) The Effective Date of this Agreement shall be the date on which payment of this Settlement Agreement is made to Ally Bank, hereafter, (the "Effective Date").

2.  RELEASES:

(a) Upon full payment of the Settlement Amount by Client, Client and its affiliates, individually and collectively, on behalf of themselves and their past, present and future representatives, heirs, executors, administrators, predecessors, successors, assigns, parents, subsidiaries, family, partners, directors, employees, agents, and attorneys fully and forever release, acquit and discharge Ally Bank and its affiliates, and their respective past, present and future representatives, heirs, executors, administrators, predecessors, successors, assigns, parents, subsidiaries, family, partners, directors, employees, agents, and attorneys from any and all actions, debts, claims, counterclaims, demands, liabilities, losses, obligations, deficiencies, damages, rights of action, causes of action, torts, penalties, fines, taxes, fees, interest, costs, expenses, and compensation of every kind and nature whatsoever, past, present, or future, at law or in equity, whether known or unknown, relating to the Subject Loans.

(b) Upon full payment of the Settlement Amount by Client, Ally Bank and its affiliates, individually and collectively, on behalf of themselves and their past, present and future representatives, heirs, executors, administrators, predecessors, successors, assigns, parents, subsidiaries, family, partners, directors, employees, agents, and attorneys fully and forever release, acquit and discharge Client and its affiliates, and their respective past, present and future representatives, heirs, executors, administrators, predecessors, successors, assigns, parents, subsidiaries, family, partners, directors,

employees, agents, and attorneys from any and all actions, debts, claims, counterclaims, demands, liabilities, losses, obligations, deficiencies, damages, rights of action, causes of action, torts, penalties, fines, taxes, fees, interest, costs, expenses, and compensation of every kind and nature whatsoever, past, present, or future, at law or in equity, whether known or unknown, relating to the Subject Loans.

(c) The Parties acknowledge that they may hereafter discover facts different from or in addition to those, which they know or believe to be true with respect to the Subject Loans and agree that this Agreement shall remain effective in all respects notwithstanding such different or additional facts or the discovery thereof. Nothing in this Agreement shall be deemed to release any claims arising under the Contract but not concerning the Subject Loans.

(d) Upon Client's payment of the Settlement Amount as provided above in Section 1, all outstanding repurchase requests relating to the Subject Loans as of the date hereof shall be deemed forever withdrawn and rescinded by Ally Bank.

3.   REPRESENTATIONS AND WARRANTIES: To induce each other to enter into this Agreement, Ally Bank and Client each represent and warrant as follows:

(a) In entering into this Agreement, none of the Parties hereto has relied upon facts or the representations of any other party, other than the facts and representations set forth in this Agreement. Each of the Parties affirms that no fact, evidence, event or transaction currently unknown to it but which hereafter may become known shall effect in any way or any manner the final and unconditional nature of this Agreement.

(b) Each of the Parties warrants that it has not sold, assigned, transferred, conveyed or otherwise disposed of any claim, demand or cause of action or any part thereof relating to any matter covered by this Agreement, or any rights it has under the terms of the Contracts. Each Party warrants that it is the true, sole owner and holder of all rights and remedies that it purports to release in Paragraph 2.

(c) Only representations contained in this Agreement, and no others, shall be admissible to establish the execution or inducement of this Agreement.

(d) Each of the undersigned has read and understands this Agreement in its entirety.

(e) This Agreement has been jointly drafted by all of the Parties, and in the event of any dispute arising out of this Agreement, no Party will have any right to argue any rule of construction or interpretation against any other Party claiming the benefit or detriment of being a draftsperson.

(f) Each of the Parties is authorized and has obtained all of the necessary corporate

3

Revised. 5/1/12

authorization to sign this Agreement in the capacity and manner set forth below

(g) Each of the undersigned has been represented by and has consulted counsel in connection with the negotiation, drafting and execution of this Agreement.

(h) Each of the Parties further represents and warrants that is authorized to release all claims related to Subject Loans involving Ally Bank and/or its affiliates, as set forth in Section 2 of this Agreement.

4. **NO ADMISSION OF WRONGDOING:** This instrument shall not be construed as an admission individually or jointly of responsibility, liability, fault or negligence by any Party and the Parties specifically deny any and all liability, responsibility, fault or negligence in this matter

5. **ENFORCEMENT EXPENSES OF PREVAILING PARTY:** Each Party agrees that in the event of any dispute regarding this Agreement, the non-prevailing Party will be liable to reimburse the prevailing Party for all reasonable attorneys' fees and costs incurred in connection with the enforcement of this Agreement.

6. **CONFIDENTIALITY:**

(a) The Parties agree that they will not disclose the contents or terms of this Agreement to any person, except to their respective attorneys, insurers, accountants, tax advisors, financial advisors, regulators, and rating agencies. Disclosure will, however, be permitted as required by any applicable law, rule or regulation or regulatory authority. In the event of any requested disclosure by a judicial authority regarding the claims being resolved herein, the Party receiving the request for disclosure shall promptly notify the other Parties herein and afford them any opportunity permitted to seek to obtain the continued confidentiality of this Agreement. Nothing herein shall preclude any disclosure which may be necessary to enforce this Agreement. The Parties are permitted to disclose that any and all disputes between the Parties have been settled as of the Effective Date and/or that each Party has denied and continues to deny any wrongdoing or any infirmity in the claims they advanced.

(b) The Parties understand that if the confidentiality provision set forth in paragraph 6(a) above are breached by either Party, such breach would cause immediate and irreparable harm to the non-breaching Party for which money damages would be inadequate. In the event of such breach, the breaching Party agrees that the non-breaching Party would be entitled to injunctive relief without proof of actual injury. Such remedy shall not be deemed to be the exclusive remedy for such breach, but shall be in addition to all other remedies available at law or equity.

7. **NOTICES:** Acceptable methods. Any notice or communication in respect hereof will be

sufficiently given to a party if in writing and delivered in person, sent by certified or registered mail or the equivalent (with return receipt requested), by overnight courier, or given by facsimile transmission (with confirmation received) addressed to the party at its address or facsimile number as follows:

If to Client:



If to Ally Bank:



8.    **FURTHER ASSURANCES:** Each Party agrees to execute all such further documents as shall be reasonably necessary to carry out to the provisions of this Agreement.

9.    **AMENDMENTS:** No amendment to this Agreement shall be effective unless it is in writing and signed by the Parties.

10.   **APPLICABLE LAW:** This Agreement shall be subject to and construed and enforced in accordance with the internal laws of the State of Minnesota without giving effect to any conflict of laws principles. The Parties knowingly, voluntarily and intentionally waive any right they may have or hereafter have to a trial by jury in respect of any suit, action or proceeding arising out of or relating to this Agreement, the Contracts or the underlying transactions.

11.   **VOLUNTARILY ENTERED** The Parties represent and warrant that this Agreement is executed voluntarily and by the Parties with the full knowledge of the consequences and implications of the obligations contained herein. The Parties also represent and warrant that they have had the opportunity to be represented by counsel of their choice through the negotiations which preceded the execution of this Agreement, and in connection with the preparation and execution of this Agreement, and that they carefully and thoroughly reviewed this Agreement in its entirety. It is agreed and understood by the Parties that each Party shall bear its own costs and expenses, including attorneys' fees, incurred or to be incurred in connection with the negotiation and preparation of this Agreement, and the carrying out of the matters contemplated herein, and the actions, omissions, behavior or course of

5

Revised 5/1/12

conduct from which the Agreement derives.

12. **SEVERABILITY:** The Parties intend each and every term and provision of this Agreement to be severable. Accordingly, in the event any term or provision in this Agreement is declared illegal, invalid or otherwise unenforceable by a court of competent jurisdiction, such illegality, invalidity or unenforceability will not effect the remaining terms and provisions of this Agreement, which will remain fully valid, binding and enforceable.

13. **BINDING EFFECT AND ASSIGNMENT; INTENDED THIRD PARTY BENEFICIARY:** This Agreement shall inure to the benefit of, and shall be binding upon Client and Ally Bank and their respective successors and assigns.

14. **ENTIRE AGREEMENT:** This Agreement embodies the entire agreement between the Parties as to the subject matter hereof, and supersedes all prior agreements and understandings relating to the subject matter hereof.

15. **COUNTERPARTS AND FACSIMILE SIGNATURES:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute but the same instrument. Delivery of executed signature pages by facsimile transmission will constitute effective and binding execution and delivery.

CLIENT:
MortgageIT, Inc.
By: _Anthony Aulisa_ (Signature)
Name: **Anthony Aulisa** (Typed or Printed)
Title: **Vice President**
Dated: 5/11/2012

Jay Strauss
Managing Director
5/11/12

ALLY BANK:
RESIDENTIAL FUNDING COMPANY, LLC
By: _Charles Laubach_ (Signature)
Name: Charles Laubach (Typed or Printed)
Title: Senior Vice President
Dated: 5/14/12

ALLY BANK
By: _Sweeney_ (Signature)
Name: LEN SWEENEY (Typed or Printed)
Title: Vice President
Dated: 5/14/12

6

Revised: 5/1/12