# Exhibit 2

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of May 23, 2013, by and among Residential Capital, LLC and its direct and indirect subsidiaries listed on **Exhibit A** hereto (collectively, the "Debtors"), Financial Guaranty Insurance Company ("FGIC"), The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees (collectively, the "Trustees")[1] under the Trusts (as defined below), and the Institutional Investors (as defined below).  Each of the Debtors, FGIC, the Trustees and the Institutional Investors may be referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, certain Debtors were the Seller, Depositor, Servicer and/or Master Servicer for the residential mortgage-backed securitizations identified in the attached **Exhibit B** (the "Trusts");

WHEREAS, certain Debtors are parties to Pooling and Servicing Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase Agreements, Sale and Servicing Agreements and/or other agreements governing the Trusts (the "Governing Agreements"), and certain Debtors have, at times, acted as Master Servicer and/or Servicer for the Trusts pursuant to certain of the Governing Agreements;

WHEREAS, pursuant to the Governing Agreements, certain Debtors originated or acquired loans that were ultimately contributed or sold into the Trusts;

WHEREAS, the Trusts issued securities, notes, bonds, certificates, and/or other instruments backed by residential mortgage loans (the "Securities");

WHEREAS, the Institutional Investors are the beneficial owners of, or advise clients who are the beneficial owners of, certain of the Securities;

WHEREAS, pursuant to the insurance policies listed on **Exhibit B** (collectively, the "Policies"), FGIC insured the payment of principal and interest of certain of the Securities;

WHEREAS, as of the date hereof, FGIC (i) has paid approximately $343.2 million of claims under the Policies that remain unreimbursed, (ii) has received approximately $789 million of claims under the Policies that remain unpaid, and (iii) expects to receive hundreds of millions of dollars of additional claims under the Policies in the future;

---

[1] For certain Trusts for which Wells Fargo Bank, N.A. serves as trustee, Law Debenture Company of New York was appointed separate trustee, pursuant to orders issued by the District Court, Fourth Judicial District, State of Minnesota (the "Minnesota Orders").  Each of Wells Fargo Bank, N.A. and Law Debenture Trust Company of New York enter into this Agreement to the extent of their respective obligations as trustee or separate trustee under the Instrument of Appointment and Acceptance attached to the Minnesota Orders.

WHEREAS, in connection with the Policies, FGIC entered into Insurance and Indemnity Agreements with, among others, certain of the Debtors and the Trustees (collectively with the Policies, the "Policy Agreements");

WHEREAS, pursuant to the Policy Agreements, certain Debtors agreed to reimburse FGIC for certain claims paid under the Policies;

WHEREAS, FGIC commenced those certain civil actions listed on **Exhibit C** against certain Debtors and certain of their non-Debtor affiliates relating to the Policies (the "Prepetition Litigation");

WHEREAS, on May 14, 2012, the Debtors filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), captioned *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG) (the "Chapter 11 Cases"), which cases are pending before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on November 16, 2012, FGIC filed proofs of claim in the Chapter 11 Cases against Residential Capital, LLC ("ResCap, LLC"), GMAC Mortgage, LLC ("GMACM") and Residential Funding Company, LLC ("RFC"), which claims were assigned claim numbers 4871, 4870 and 4868, respectively, in an aggregate amount of at least $1.85 billion in connection with, among other things, the Prepetition Litigation (collectively, the "FGIC Claims");

WHEREAS, pursuant to an order dated June 28, 2012, the Supreme Court of the State of New York, New York County (the "Rehabilitation Court") appointed Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York, as rehabilitator of FGIC (the "Rehabilitator") in the rehabilitation proceeding styled *In the Matter of the Rehabilitation of Financial Guaranty Insurance Company*, Index No. 401265/2012 (the "Rehabilitation Proceeding"), pending before the Honorable Doris Ling-Cohan; and

WHEREAS, the Debtors, FGIC, the Trustees and the Institutional Investors have reached agreement concerning the Policy Agreements and the FGIC Claims;

NOW, THEREFORE, after good faith, arm's-length negotiations without collusion, in consideration of the mutual representations, warranties, agreements and covenants contained in this Agreement and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the Parties) the Parties hereby agree to the following terms:

## AGREEMENT

## ARTICLE I

## DEFINITIONS

As used in this Agreement, in addition to the terms otherwise defined herein, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and plural form of each term defined if both forms of such term are used in this

Agreement).  Any capitalized terms not defined in this Agreement shall have the definition given to them in the Governing Agreements.

Section 1.01.  "9019 Motion" means a motion filed by the Debtors pursuant to Fed. R. Bankr. P. 9019 seeking an order of the Bankruptcy Court approving this Agreement.

Section 1.02.  "Affirmation" means an affirmation in support of a motion by the Rehabilitator seeking an order of the Rehabilitation Court approving this Agreement.

Section 1.03.  "Bankruptcy Court Order" means an order of the Bankruptcy Court approving this Agreement, including an approval of the allowance of the FGIC Claims in accordance with Section 3.01 hereof, substantially in the form attached hereto as **Exhibit D** (or such other form as agreed to by FGIC, the Debtors, the Trustees and counsel for the Institutional Investors), which order shall include a finding that the transactions contemplated by this Agreement are in the best interests of the Investors and the Trusts and that the Trustees acted in good faith and in the best interests of the Investors and the Trusts in agreeing to this Agreement.

Section 1.04.  "Business Day" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorize to close by law or executive order.

Section 1.05.  "Effective Date" means the first Business Day on which all the conditions set forth in Section 6.01 hereof have been satisfied in full or have been waived pursuant to Section 6.02 hereof.

Section 1.06.  "Final Order" means an order or judgment of a court of competent jurisdiction entered on the docket maintained by the clerk of such court that has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, (a) such order or judgment shall have been affirmed by the highest court to which such order was appealed, leave to appeal or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order or otherwise been dismissed with prejudice, and (b) the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, Rule 5015 of the New York Civil Practice Law and Rules, or any analogous rule, may be filed relating to such order shall not prevent such order from being a Final Order.

Section 1.07.  "Institutional Investors" means the authorized investment managers and certificateholders, bondholders and noteholders in tranches of Securities insured by FGIC identified in the attached signature pages.

Section 1.08.  "Investors" means all certificateholders, bondholders and noteholders in the Trusts, and their successors in interest, assigns, pledgees and/or transferees.

Section 1.09.   "<u>Payment Amount</u>" means, for each of the Trusts listed in **Exhibit B** hereto, the cash amount to be paid to such Trust by FGIC pursuant to Section 2.02 below.

Section 1.10.   "<u>Plan Support Agreement</u>" means the Plan Support Agreement, dated as of May 13, 2013, by and among the Parties to this Agreement and certain other parties.

Section 1.11.   "<u>Rehabilitation Court Order</u>" means an order of the Rehabilitation Court approving this Agreement, including an order providing that this Agreement is binding on all persons and entities who were served with notice of the Affirmation, substantially in the form attached hereto as **Exhibit E** (or such other form as agreed to by FGIC, the Debtors and the Trustees).

Section 1.12.   "<u>Representatives</u>" means, as to any person, such person's successors, assigns, regulators, stockholders, directors, officers, employees, attorneys, advisors and agents, and as to the Debtors, each Debtor's bankruptcy estate, any litigation or liquidation trust arising out of a confirmed plan of reorganization or liquidation in the Chapter 11 Cases, any chapter 11 trustee and any chapter 7 trustee appointed following conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE II

## RELEASES AND PAYMENT AMOUNTS

Section 2.01.   <u>Releases</u>.

(a)   Effective as of the Effective Date, and subject to and upon FGIC having paid to the Trustees all of the Payment Amounts payable in accordance with Section 2.02 below, but without need for any further action, and except as set forth in clauses (c) and (d) of this Section 2.01:

(i)   the respective rights, interests, obligations and liabilities (including in respect of any claims for payment under any of the Policy Agreements) of the Parties and their respective Representatives under or arising out of any of the Policy Agreements and the respective rights, interests, obligations and liabilities of FGIC and its Representatives under or otherwise relating to any of the Governing Agreements are hereby mutually settled and discharged in full;

(ii)   each Party hereby irrevocably and unconditionally releases and fully discharges the other Parties and their respective Representatives from all obligations, claims and liabilities (including in respect of any claims for payment under any of the Policy Agreements) of any kind or nature, and whether based in contract, tort or otherwise, directly or indirectly under or arising out of any of the Policy Agreements, whether now existing or hereafter arising, and whether known or unknown;

(iii)   FGIC hereby irrevocably and unconditionally releases and fully discharges the other Parties and their respective Representatives from all obligations, claims and liabilities of any kind or nature, and whether based in contract, tort or otherwise, relating to any of the Governing Agreements, whether now existing or hereafter arising, and

4

whether known or unknown; and each of such other Parties hereby irrevocably and unconditionally releases and fully discharges FGIC and its Representatives from all obligations, claims and liabilities of any kind or nature, and whether based in contract, tort or otherwise, relating to any of the Governing Agreements, whether now existing or hereafter arising, and whether known or unknown; and

(iv)    Each of the Trustees, on its own behalf and on behalf of each of the respective Trusts for which it acts as trustee, as set forth in **Exhibit B** hereto, hereby irrevocably and unconditionally releases and fully discharges the Debtors and their respective Representatives from all obligations, claims and liabilities of any kind or nature, and whether based in contract, tort or otherwise, arising out of or relating to any of the Origination-Related Provisions (as defined in the *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (i) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements, and (ii) the RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945] in the Chapter 11 Cases) contained in the Governing Agreements for the Trusts, whether now existing or hereafter arising, and whether known or unknown, provided, however, that nothing in this paragraph 2.1(a)(iv) shall release any claims under the Governing Agreements for any past or future losses to holders of Securities not insured by the Policies listed on **Exhibit B** hereto.  For the avoidance of doubt, the foregoing sentence shall not affect distributions under the RMBS Trust Allocation Protocol appearing at Annex III to the Supplemental Term Sheet (as defined in the Plan Support Agreement).

(b)    Each Party hereby acknowledges and agrees that from and after the Effective Date, except as set forth in clauses (c) and (d) of this Section 2.01, and notwithstanding anything to the contrary set forth in any Policy Agreement or Governing Agreement, no payments, fees or other amounts of any nature whatsoever or other deliveries or obligations are or will thereafter be owed to it or to any other Party by any other Party under or in connection with any of the Policy Agreements or by or to FGIC or any of its Representatives otherwise under or in connection with any Governing Agreement.  For the avoidance of doubt, from and after the Effective Date, FGIC shall not have any rights (i) to receive any premiums, reimbursements or any other amounts otherwise payable to FGIC on a distribution, payment or other date, other than as provided for in ARTICLE III of this Agreement, (ii) of subrogation or (iii) to exercise any consent or control rights, in each case under the Policy Agreements or the Governing Agreements; provided, however, that nothing in this Section 2.01 shall limit or otherwise affect any rights FGIC may have under the Governing Agreements with respect to Securities it owns, or may in the future own, as an Investor.

(c)    Subject to clause (a)(iv) of this Section 2.01, nothing in this Agreement is intended to or shall be construed as a settlement, termination, release, discharge or waiver of any past, present or future rights, claims, obligations or other liabilities that a Party (other than FGIC) may have against any other Party (other than FGIC) arising under or relating to the Governing Agreements.

(d)    Subject to Section 7.03 hereof, nothing in this Agreement, including the allowance of the FGIC Allowed Claims (as defined in Section 3.01 below) in the Chapter 11 Cases, is intended or shall be construed as a settlement, termination, release, discharge or waiver

of (i) FGIC's payment obligation set forth in Section 2.02 below, (ii) the Debtors' obligation to satisfy the FGIC Allowed Claims or, if the Plan Support Agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, any additional claims asserted by FGIC, in each case as contemplated by ARTICLE III hereof, (iii) the respective representations, warranties and other agreements of the Parties set forth in this Agreement, or (iv) any and all claims of any kind or nature, and whether based in contract, tort or otherwise, FGIC may have against any non-Debtor affiliates of ResCap, LLC, including Ally Financial Inc., or such entities' respective Representatives, whether such claims are now existing or hereafter arising, and whether known or unknown, including the Prepetition Litigation.

Section 2.02.    FGIC Payment Obligation.    Subject to the Effective Date having occurred, with respect to each Trust listed in **Exhibit B** hereto, FGIC shall pay to the listed Trustee, no later than three (3) Business Days after the Effective Date, the respective Payment Amount for such Trust in immediately available funds to the account for such Trustee set forth in the wire instructions to be provided by such Trustee to FGIC, in writing, on or before July 3, 2013.

The Trustees, in consultation with their advisors, shall have sole and exclusive authority to determine each Payment Amount payable to a Trust, such determination to be made in accordance with the allocation methodology set forth in **Exhibit F** hereto.  The sum of all Payment Amounts shall not exceed $253.3 million.  The Trustees shall notify FGIC in writing of the Payment Amount for each Trust on or before July 3, 2013.  The Trustees shall be solely responsible for distributing Payment Amounts to the Trusts and/or Investors in accordance with their respective obligations under the applicable Governing Agreements and applicable law; provided, however, that the settlements, discharges and releases hereunder, including in Section 2.01 hereof, and the allowance, priority and satisfaction of the FGIC Claims as contemplated by ARTICLE III hereof are not in any respect conditioned on, and shall not in any respect be limited or otherwise impacted by, the Trustees making or failing to make all or any part of such distributions.  Each Trustee and Institutional Investor hereby acknowledges and agrees that FGIC's only payment obligation in consideration of the settlements, discharges and releases to be effected by Section 2.01 hereof is FGIC's obligation to pay the Payment Amounts to the Trustees in accordance with this Section 2.02, and FGIC shall not pay any portion of the Payment Amounts directly to any Investor.  Once FGIC has paid the full amount of the Payment Amounts to the Trustees in accordance with this Section 2.02, FGIC will have fully satisfied its payment obligation under this Section 2.02 and FGIC shall not be responsible for, and shall have no liability for or with respect to, among other things, (x) the Trustees, including any failure by a Trustee to pay all or any portion of any Payment Amount to any or all Trusts or Investors or (y) any cost, expense or loss relating to or arising from any actions or inactions of any of the Trustees.

## ARTICLE III

## ALLOWANCE OF FGIC'S CLAIMS AGAINST THE DEBTORS

Section 3.01.    FGIC's Allowed Claims.    Effective as of the Effective Date, the FGIC Claims shall be deemed allowed as general unsecured claims against each of ResCap, LLC, GMACM and RFC (A) in the aggregate amount of five hundred and ninety-six million five hundred thousand dollars ($596,500,000), which amount (i) is equal to the sum of (x) $343.2 million, the

amount of claims FGIC has paid under the Policies that remain unreimbursed and (y) $253.3 million, the sum of all of the Payment Amounts and (ii) will be allocated among ResCap, LLC, GMACM and RFC pro rata based on which of the Debtors would be obligated to reimburse FGIC for such payments under the Governing Agreements; or (B) if a chapter 11 plan contemplated by the Plan Support Agreement is confirmed and goes effective, in the aggregate and allocated amounts, as applicable, set forth in Annex I (as such annex may be adjusted, amended or revised) of the Supplemental Term Sheet (as defined in the Plan Support Agreement) as provided for in the Supplemental Term Sheet Paragraph 2 at pages 6 and 7 (in the case of either (A) or (B), the "FGIC Allowed Claims"); provided, further that if the Plan Support Agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, in addition to the FGIC Allowed Claims, FGIC reserves all rights to assert general unsecured claims against each of ResCap, LLC, GMACM and RFC as reflected in the proofs of claim filed by FGIC in the Chapter 11 Cases, with all claims by FGIC (including any FGIC Allowed Claims or otherwise) against each such entity capped in each case at the amount of five hundred and ninety-six million five hundred thousand dollars ($596,500,000).

Section 3.02.    Priority of FGIC Allowed Claims.  Each Trustee, Institutional Investor and Debtor hereby acknowledges and agrees that (i) the FGIC Allowed Claims will be treated in accordance with the Plan Support Agreement or, if such agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, the FGIC Allowed Claims will be treated *pari passu* with other unsecured claims allowed against ResCap, LLC, GMACM and RFC in the Chapter 11 Cases and (ii) it will not bring and will not support or advocate any action, including pursuant to sections 502(e) or 509(c) of the Bankruptcy Code, seeking to subordinate or otherwise classify the FGIC Allowed Claims in a manner that would result in FGIC receiving a reduced recovery on account of the FGIC Allowed Claims as compared to the recovery contemplated by the Plan Support Agreement or, if such agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, other unsecured claims allowed against ResCap, LLC, GMACM and RFC in the Chapter 11 Cases.

Section 3.03.    Satisfaction of FGIC Allowed Claims.  The FGIC Allowed Claims shall be satisfied as allowed, general unsecured claims in accordance with the Plan Support Agreement or, if such agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, in accordance with any confirmed plan of reorganization or liquidation in the Chapter 11 Cases or, if no such plan is confirmed, as provided under the priority structure of the Bankruptcy Code; provided, however that the FGIC Allowed Claims shall not be subject to subordination or disallowance on any basis other than reconsideration for cause under section 502(j) of the Bankruptcy Code.  Each of the Parties agrees not to support, advocate or vote in favor of a plan of reorganization or liquidation that either (i) fails to provide for the allowance and satisfaction of the FGIC Allowed Claims in conformance with this ARTICLE III or (ii) proposes or purports to subordinate or otherwise provide less favorable treatment to the FGIC Allowed Claims than is contemplated by the Plan Support Agreement or, if such agreement is terminated in accordance with its terms or the chapter 11 plan contemplated thereunder does not go effective, provided to other general unsecured claims allowed against ResCap, LLC, GMACM and RFC.

## ARTICLE IV

## COURT APPROVALS

Section 4.01.    <u>Rehabilitation Court</u>.  Within three (3) Business Days following execution by all Parties of this Agreement, the Rehabilitator, on behalf of FGIC, shall file the Affirmation with the Rehabilitation Court and otherwise use commercially reasonable efforts to obtain the Rehabilitation Court Order.  The Rehabilitator shall endeavor to schedule the hearing on the Rehabilitation Court Order for a date that is no less than thirty-seven (37) days after the filing of the Affirmation.  Upon obtaining knowledge of the issuance of the Rehabilitation Court Order, the Rehabilitator, on behalf of FGIC, shall promptly notify the other Parties.

Section 4.02.    <u>Bankruptcy Court</u>.  Within seven (7) Business Days following execution by all Parties of this Agreement, the Debtors shall file the 9019 Motion with the Bankruptcy Court and otherwise use commercially reasonable efforts to promptly obtain the Bankruptcy Court Order. Upon obtaining knowledge of the issuance of the Bankruptcy Court Order, the Debtors shall promptly notify the other Parties.

## ARTICLE V

## REPRESENTATIONS, COVENANTS AND ACKNOWLEDGEMENTS

Section 5.01.    <u>Representations</u>.

(a)    Each Party hereby represents and warrants to the other Parties as of the date hereof and as of the Effective Date that:

(i)    it is duly organized and validly existing and in good standing (except for any adverse effect resulting from, (x) in the case of FGIC, the commencement of the Rehabilitation Proceeding or (y) in the case of the Debtors, the commencement of the Chapter 11 Cases) under the laws of the jurisdiction of its organization with full power and authority to execute and deliver, and to perform and observe the terms and provisions of, this Agreement; and

(ii)    this Agreement is the legal, valid and binding obligation and agreement of such Party, enforceable against such Party in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law)).

(b)    Each Trustee hereby further represents and warrants to the other Parties as of the date hereof and as of the Effective Date that:

(i)    the execution, delivery, performance and observance of this Agreement by such Trustee (x) has been duly authorized by all necessary corporate action on the part of such Trustee, does not and will not conflict with, or result in a violation of, any law, rule or regulation applicable to its corporate trust administration, and does not require it to

8

obtain the approval of, provide notice to or make a filing with any court, governmental or regulatory agency or authority or other person or entity having jurisdiction over its corporate trust business and (y) does not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents;

(ii)    with respect to each Policy insuring Securities issued by a Trust for which it is listed as the Trustee in the attached **Exhibit B**, (x) it is the only trustee, indenture trustee or separate trustee with any right, title or interest in, to or under such Policy, (y) it has not caused to be transferred, sold, pledged, assigned or relinquished, in whole or in part, any of its rights, powers, obligations, title or interest in, to or otherwise with respect to such Policy, any related Policy Agreement or any of the Governing Agreements and (z) other than in connection with a transfer to a successor trustee complying with Section 5.02(d) below, it will not transfer, sell, pledge, assign or relinquish, in whole or in part, any such right, power, obligation, title or interest on or before the Effective Date.

(c)    ResCap, LLC hereby further represents and warrants to the other Parties as of the date hereof and as of the Effective Date that, subject to approval of this Agreement by the Bankruptcy Court, it has the authority to execute and deliver this Agreement, and agree to the settlements, discharges and releases contemplated hereby, on its own behalf and on behalf of the other Debtors.

(d)    FGIC hereby further represents and warrants to the other Parties as of the date hereof and as of the Effective Date that **Exhibit B** hereto lists (x) each residential mortgage-backed securitization trust in respect of which it has filed a proof of claim in the Bankruptcy Court and (y) the financial guaranty insurance policy issued by FGIC that insures Securities issued by such trust.

(e)    Each Institutional Investor hereby further represents and warrants to the other Parties as of the date hereof and as of the Effective Date that:

(i)    it has the authority to take the actions contemplated by this Agreement, to the extent that it has the authority with respect to any other entities, account holders, or accounts for which or on behalf of which it is signing this Agreement;

(ii)    it is sophisticated and has specific knowledge of and experience with structures involving (x) insured and uninsured asset-backed securities, (y) issuers and investment funds whose assets consist principally of insured and uninsured asset-backed securities, derivative instruments, bonds, loans and/or other types of financial assets and (z) other instruments similar to the Governing Agreements; and

(iii)    the execution, delivery, performance and observance of this Agreement by such Party (x) do not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents and (y) do not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage, indenture, contract, agreement, lease, sublease,

license, permit, franchise or other instrument or arrangement (including, without limitation, the Policy Agreements, the Governing Agreements or any agreement or undertaking relating to any of them) to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement.

(f)      Each Party (other than the Trustees and the Institutional Investors) hereby further represents and warrants to the other Parties as of the date hereof and as of the Effective Date that the execution, delivery, performance and observance of this Agreement by such Party (x) have been duly authorized by all necessary action on the part of such Party, do not and will not conflict with, or result in a violation of, any law applicable to it, and do not require it to obtain any permit, consent, approval, order or authorization of, or provide notice to or make a filing with, any court, governmental or regulatory agency or authority or other person or entity (including without limitation, in the case of FGIC, the Rehabilitator or his designee) that has not been obtained, provided or made, as applicable, (y) do not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents and (z) do not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage, indenture, contract, agreement, lease, sublease, license, permit, franchise or other instrument or arrangement (including without limitation the Policy Agreements, the Governing Agreements or any agreement or undertaking relating to any of them) to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement, except that, in the case of FGIC and each Debtor, as applicable, with respect to subclause (x), FGIC's obligation to pay to each Trustee the Payment Amounts payable to it hereunder and FGIC's and each Debtor's performance of its obligations contemplated to occur on or after the Effective Date are in all respects subject to both the Rehabilitation Court Order and the Bankruptcy Court Order having been issued and remaining in force and any conditions therein having been satisfied or waived pursuant to the terms of such order;

Section 5.02.   Covenants.   Each Party hereby agrees that:

(a)      from and after the Effective Date, subject to the satisfaction of FGIC's payment obligation under Section 2.02 above, (x) it shall not, nor shall it permit any of its agents or representatives to, represent, warrant, state or otherwise indicate, whether orally, in writing or by any claim made or other action, that any of the Parties' respective rights, obligations or liabilities under or with respect to the Policy Agreements are in effect or that FGIC or any of its Representatives have any liability or obligation under, arising out of or otherwise relating to any Policy Agreement or any Governing Agreement and (y) in the case of each Trustee, each Security (if any) issued, as a definitive security and not through the book entry system, upon the transfer of an existing Security shall contain on the face thereof the following form of statement:

"Upon acceptance of this Security (whether by transfer, exchange or otherwise), the holder of this Security shall be deemed to acknowledge that no person (including without limitation the Trustee, such holder or any other holders of any Securities or any of their respective successors or assigns) shall have any right to

make any claim or demand, or have any right to receive any payment, under or
with respect to the Policy having Policy Number _____, issued by FGIC in
favor of _____, for the benefit of the holders of Securities issued by
_____ pursuant to the Indenture dated _____ among
_____ and that all of FGIC's rights as insurer under the Governing
Agreements, including any control rights, have been terminated."

(b)    from and after the date hereof, it shall not sue or institute any legal action or
proceeding seeking to repudiate, disclaim or contest the validity, effectiveness or enforceability
of this Agreement or any of the terms hereof (including the settlements, discharges and releases
provided for herein), it being understood that nothing contained herein shall prohibit any Party
from suing or instituting any legal action or proceeding to enforce this Agreement or any of the
terms hereof;

(c)    from and after the Effective Date, subject to the satisfaction of FGIC's payment
obligation under Section 2.02 above, no Party shall be entitled to submit or assert any claim
(including any claim that has matured but has not been submitted) for any amount arising under
any of the Policy Agreements, and any such claims previously made, whether in the
Rehabilitation Proceeding or otherwise, are hereby settled and released as set forth in Section
2.01 above; and

(d)    Each Trustee is entering into this Agreement with the purpose and intent of
binding (x) each of the Trusts for which it is the Trustee and (y) any successor trustee that
replaces such Trustee under a Governing Agreement pursuant to the terms thereof or any co-
Trustee that is appointed under a Governing Agreement pursuant to the terms thereof, and any
such successor trustee or co-trustee shall be bound by the terms and conditions of this Agreement
as if such successor trustee or co-trustee was a Trustee and original signatory hereto.  From and
after the date hereof until the Effective Date, (1) the Debtors, the Institutional Investors and
FGIC shall not replace, or consent to the replacement of, any Trustee in its capacity as the trustee
under a Governing Agreement, or direct, cause or consent to the transfer, sale, pledge,
assignment or relinquishment, in whole or in part, of any of the respective rights, powers,
obligations, title or interest of the Trustee in such capacity in, to, under or otherwise with respect
to any Governing Agreements and (2) no Trustee shall resign from such capacity, or transfer,
sell, pledge, assign or relinquish, in whole or in part, any of such rights, powers, obligations, title
or interest, except with respect to both of the preceding clauses (1) and (2), (i) to a successor
trustee that replaces such Trustee under a Governing Agreement, or to a co-trustee that is
appointed pursuant to a Governing Agreement, in each case pursuant to the terms thereof and
that is bound by this Agreement in accordance with the first sentence of this paragraph and (ii)
that such clauses (1) and (2) shall not prohibit the merger, conversion or consolidation of a
Trustee, it being understood that any corporation or entity resulting therefrom or succeeding to
the business of such party shall be such party under this Agreement.

Section 5.03.    Acknowledgements.  Each Party hereby acknowledges that each other Party may
have had access to certain information relating to any of the Policy Agreements or Governing
Agreements, other parties with respect to any transactions to which the Governing Agreements
relate, and the assets included in, or status of, such transactions which is not available to the
other Parties or other holders of securities issued in such transactions.  In addition, each Party

hereby acknowledges that each other Party may be in possession of other material information (concerning such other Party or otherwise) which such other Party has not disclosed to such first Party.  Nonetheless, each Party hereby acknowledges and agrees that it has had access to such financial, operating and other information concerning the Policy Agreements and Governing Agreements, other parties with respect to any transactions to which the Governing Agreements relate, the assets included in, and status of, such transactions and the other Parties as it deems necessary and appropriate to make an informed decision with respect to this Agreement, including an opportunity to make such inquiries of and request information from the other Parties.  Each Party is represented by, and has consulted with, its own legal and other advisors to the extent it has deemed necessary.  The Parties have participated jointly in the negotiating and drafting of this Agreement.  If an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.  Prior drafts of this Agreement or the fact that any clauses have been added, deleted or otherwise modified from any prior drafts of this Agreement shall not be construed in favor of or against any Party on account of its participation in such negotiations and drafting or be used as an aide of construction or otherwise constitute evidence of the intent of the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of such prior drafts.

## ARTICLE VI

## CONDITIONS PRECEDENT

Section 6.01.   <u>Conditions Precedent to the Effective Date</u>.  The Effective Date shall not occur unless and until the following conditions are satisfied in full or waived pursuant to Section 6.02 hereof:

     (a)     The Rehabilitation Court Order shall have been signed;

     (b)     The Rehabilitation Court Order shall have become a Final Order;

     (c)     The Bankruptcy Court Order shall have been signed;

     (d)     The Bankruptcy Court Order shall have become a Final Order; and

     (e)     Other than the trustees of the Delaware statutory trusts, located in Delaware, who are Issuers of the Securities, the only trustees of the Trusts are the Trustees and any successor trustees or co-trustees that have executed and delivered to FGIC an acknowledgement and assumption agreement, in the form attached hereto as **Exhibit G**.

Section 6.02.   <u>Waiver of Conditions</u>.  Each of the conditions precedent in Section 6.01 hereof, other than Section 6.01(a), (c) and (e), may be waived, in whole or in part, by mutual, written agreement of the Debtors, FGIC, the Trustees and counsel for the Institutional Investors.  The condition precedent in Section 6.01(e) hereof may be waived, in whole or in part, by FGIC in its sole discretion, <u>provided</u> that any such waiver shall not reduce or otherwise impact FGIC's rights and remedies against a successor trustee or co-trustee of any of the Trusts.  Any such waiver(s)

may be effected at any time, without notice, leave, or order of the Rehabilitation Court or the
Bankruptcy Court, or any formal action.

## ARTICLE VII

## TERMINATION OF AGREEMENT

Section 7.01.   Termination Events.  This Agreement shall terminate on:

    (a)      August 19, 2013, if the Rehabilitation Court Order has not been signed; or

    (b)      August 19, 2013, if the Bankruptcy Court Order has not been signed.

Section 7.02.   Waiver of Termination.  Each of the termination events in Section 7.01 hereof
may be waived, in whole or in part, by written notice given by FGIC, in its sole discretion, to the
other Parties.  Any such waiver(s) may be effected at any time prior to, on or after the date set
forth in clause (a) or (b) of Section 7.01, as applicable, without notice, leave, or order of the
Rehabilitation Court or the Bankruptcy Court, or any formal action.

Section 7.03.   Effect of Termination.  Notwithstanding anything to the contrary herein, in the
event that this Agreement terminates pursuant to Section 7.01 hereof, as of the effective date of
such termination (x) the terms, conditions and provisions of this Agreement (other than the
provisions of this ARTICLE VII) shall have no further force or effect and (y) to the extent
applicable, the Parties shall automatically be restored in all respects to their respective positions,
and have restored to them all of their respective rights, remedies and obligations, under or
relating to the Policy Agreements, the Governing Agreements and the FGIC Claims, in each case
as such positions, rights, remedies and obligations existed as of the date prior to the Agreement
as if this Agreement had not been executed and delivered, but giving effect to any events,
circumstances, conditions, actions or inactions that occurred or arose on or after the date of the
Agreement and are continuing on the effective date of such termination.  For the avoidance of
doubt, in the event this Agreement terminates, the rights of all of the Parties are reserved,
including, with respect to the Trustees and the Debtors, the right to seek subordination of,
disallowance of or reduction of all FGIC Claims in the Bankruptcy Court.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.01.   Several Rights and Obligations.  The rights and obligations of each Trust
hereunder are several, and neither joint nor joint and several, from the rights and obligations of
all other Trusts.

Section 8.02.   Voluntary Agreement.  Each Party acknowledges that it has read all of the terms
of this Agreement, has had an opportunity to consult with counsel of its own choosing or
voluntarily waived such right, and enters into this Agreement voluntarily and without duress.

Section 8.03.   No Admission of Liability.  Except as set forth in Section 2.01(d) hereof, each
Party hereby acknowledges and agrees that this Agreement is entered into for the sole purpose of

resolving and compromising all pending and potential claims under or otherwise related to the Policy Agreements and the FGIC Claims and by or against FGIC under or otherwise relating to the Governing Agreements.  It is hereby expressly agreed and acknowledged that neither the execution nor performance of any of the terms of this Agreement shall constitute or be construed as or deemed to be evidence of an admission or concession on the part of any of the Parties as to the existence or non-existence of any breach, fault, liability, wrongdoing, or damage, or with respect to the strength or infirmity of any defense, or the allowance, disallowance, or appropriate treatment of any claims of the Parties, and this Agreement shall not be admissible in any action, other than the Rehabilitation Proceeding solely to obtain the Rehabilitation Court's approval of the transactions contemplated hereby or any action to enforce the terms hereof, and the Chapter 11 Cases solely to obtain the Bankruptcy Court's approval of the transactions contemplated hereby or any action to enforce the terms hereof.

Section 8.04.    Counterparts.  This Agreement may be executed and delivered in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement.

Section 8.05.    Entire Agreement; Amendment.  This Agreement constitutes the entire agreement, and supersedes all prior agreements, understandings (including letters of intent or term sheets), representations and warranties, both written and oral, between the Parties with respect to the subject matter of this Agreement; provided, however, nothing contained in this Agreement shall modify the Plan Support Agreement, which agreement shall remain in full force and effect in accordance with its terms.  This Agreement may only be modified, altered, amended or supplemented by means of a writing signed by the Debtors, FGIC, the Trustees and counsel for the Institutional Investors.

Section 8.06.    Authority.  Each Party represents and warrants that each Person who executes this Agreement on its behalf is duly authorized to execute this Agreement on behalf of the respective Party, and that such Party has full knowledge of and has consented to this Agreement.

Section 8.07.    No Third Party Beneficiaries.  There are no third party beneficiaries of this Agreement (except, with respect to Section 2.01(a) hereof, the Parties' respective Representatives).

Section 8.08.    Waiver of California Civil Code § 1542.

(a)    By the releases set forth in Section 2.01 above, the Parties intend this Agreement as a full and final accord and satisfaction and general release of all claims, debts, damages, liabilities, demands, obligations, costs, expenses, disputes, actions, and causes of action, known or unknown, suspected or unsuspected, that the Parties have against one another by reason of any acts, circumstances or transactions occurring before the date of this Agreement, under or arising out of any of the Policy Agreements and, with respect to FGIC, under or otherwise relating to any of the Governing Agreements, each with the exception of the rights and obligations of the Parties expressly set forth in this Agreement, including as set forth in Section 2.01(d) hereof.

14

(b)    For the purpose of the releases set forth in Section 2.01 above, and except as set forth in Section 2.01(d) hereof, the Parties, upon these releases becoming effective, shall be deemed to have expressly, knowingly and intentionally waived for themselves and for their respective legal successors and assigns, the benefits and rights of section 1542 of the California Civil Code, which states as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Cal. Civ. Code § 1542.

(c)    For the purpose of the releases set forth in Section 2.01 above, and except as set forth in Section 2.01(d) hereof, the Parties shall likewise be deemed to have waived the benefits of any statute, rule or doctrine, or common law principle of any jurisdiction whatsoever of similar effect to section 1542 of the California Civil Code.  Notwithstanding any principles of choice of law or conflicts of law, the Parties hereby intend that this specific contractual provision of intentional waiver be binding and fully enforceable in any jurisdiction.

(d)    The Parties acknowledge that they have received independent legal advice from their attorneys with respect to waiving the benefit of the provisions of California Civil Code § 1542 and/or any statute, rule or doctrine, or common law principle of any jurisdiction whatsoever having an effect similar to that of California Civil Code § 1542, and acknowledge that this waiver is a material inducement to and consideration for execution of this Agreement. The Parties further acknowledge that they are aware that they may hereafter discover claims and facts in addition to or different from those which they now know or believe to exist with respect to the subject matter of or any part of the releases set forth in Section 2.01 above, but that it nonetheless is their intention, except as set forth in Section 2.01(d) hereof, to settle and release, fully and finally, any and all disputes and differences between them, known or unknown, suspected or unsuspected, which do now exist, to the extent set forth in Section 2.01 above.

Section 8.09.    <u>Agreement Binding Upon Conversion</u>.  If and to the extent any of the Chapter 11 Cases are converted to a case under chapter 7 of the Bankruptcy Code, all of the terms and conditions, including allowance and recognition of the FGIC Allowed Claims, shall be binding and effective upon the appointed chapter 7 trustee for that case, as if such trustee had been a signatory to this Agreement.

Section 8.10.    <u>Successors and Assigns</u>.  This Agreement, and the settlements, discharges and releases contemplated hereby shall be binding upon and inure to the benefit of any and all successors, including any successor trustees that replace a Trustee under a Governing Agreement pursuant to the terms thereof, co-trustee that is appointed pursuant to the terms of a Governing Agreement, permitted assigns and other Representatives of the Parties, as if such successor, successor trustee, co-trustee, assign or other Representative was an original signatory to this Agreement.

Section 8.11.  <u>Irreparable Harm</u>**.**  The Parties agree that irreparable harm would result to, and that legal damages would not adequately compensate, the Parties if any part of this Agreement is not performed in accordance with the terms hereof, and that the Parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement or to enforce it specifically in addition to any other remedy to which such Party is entitled at Law or in equity.

Section 8.12.  <u>Headings; Construction</u>.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.  For purposes of this Agreement, the term "including" means "including but not limited to."

Section 8.13.  <u>Notices</u>.  All notices or demands given or made by one Party to another relating to this Agreement shall be in writing and either personally served or sent by registered or certified mail, postage paid, return receipt requested, overnight delivery service, or by electronic mail transmission with a copy by first-class mail, and shall be deemed to be given for purposes of this Agreement on the earlier of the date of actual receipt or three (3) days after the deposit thereof in the mail.  Unless a different or additional address for subsequent notices is specified in a notice sent or delivered in accordance with this Section, such notices or demands shall be sent as follows:

If to the Debtors:

Gary S. Lee, Esq.
James A. Newton, Esq.
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
glee@mofo.com
jnewton@mofo.com

If to the Rehabilitator:

Gary T. Holtzer, Esq.
Joseph T. Verdesca, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
gary.holtzer@weil.com
joseph.verdesca@weil.com

If to Law Debenture Trust Company of New York:

Dale C. Christensen, Jr., Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
Christensen@sewkis.com

If to U.S. Bank National Association

Mark D. Kotwick, Esq.
Ronald L. Cohen, Esq.
Arlene R. Alves, Esq.
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
kotwick@sewkis.com
cohen@sewkis.com
alves@sewkis.com

If to FGIC:

Richard L. Wynne, Esq.
Howard F. Sidman, Esq.
JONES DAY
222 East 41st Street
New York, NY 10017
rlwynne@jonesday.com
hfsidman@JonesDay.com

If to The Bank of New York Mellon and
The Bank of New York Mellon Trust
Company, N.A.:

Glenn E. Siegel, Esq.
Craig Dreuhl, Esq.
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
glenn.siegel@dechert.com
craig.druehl@dechert.com

Keith H. Wofford, Esq.
D. Ross Martin, Esq.
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 100036
keith.wofford@ropesgray.com
ross.martin@ropesgray.com

Talcott J. Franklin, Esq.
TALCOTT FRANKLIN P.C.
208 N. Market Street, Suite 200
Dallas, TX 75202
tal@talcottfranklin.com

If to Wells Fargo Bank, N.A.:

Michael E. Johnson, Esq.
Martin G. Bunin, Esq.
John C. Weitnauer, Esq.
William Hao, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
michael.johnson@alston.com
marty.bunin@alston.com
kit.weitnauer@alston.com
william.hao@alston.com
If to the Institutional Investors:

Kathy Patrick, Esq.
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, TX 77002
kpatrick@gibbsbruns.com

Thomas P. Sarb, Esq.
Robert Wolford, Esq.
MILLER, JOHNSON, SNELL &
CUMMISKEY, P.L.C.
250 Monroe Avenue NW, Suite 800
P.O. Box 306
Grand Rapids, MI 49501-0306
sarbt@millerjohnson.com
wolfordr@millerjohnson.com

- and-

Aaron R. Cahn, Esq.
Leonardo Trivigno, Esq.
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005
cahn@clm.com
trivigno@clm.com

Section 8.14.  <u>Governing Law</u>.  This Agreement, the rights and obligations of the Parties under this Agreement, and any and all disputes arising under or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof.  Further, by its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement; <u>provided</u>, <u>however</u> that the Rehabilitation Court shall have exclusive jurisdiction over any dispute arising out of or in connection with the settlement, discharge or release of any rights, interests, obligations or liabilities of the Parties under or otherwise relating to the Policies (including in respect of any claims for payment thereunder).

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

RESIDENTIAL CAPITAL, LLC
for itself and on behalf of its direct and indirect Debtor subsidiaries

Signature: _Lewis Kruger_

Name: _LEWIS KRUGER_

Title: _Chief RESTRUCTURING Officer_

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

FINANCIAL GUARANTY INSURANCE COMPANY

BY:    BENJAMIN M. LAWSKY
       Superintendent of Financial Services of the State of New York, as Rehabilitator of Financial Guaranty Insurance Company

Signature: _Peter A. Giacone_

Name: Peter A. Giacone

Title:   Chief Financial Officer of the New York Liquidation Bureau and Agent of Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York, as Rehabilitator of Financial Guaranty Insurance Company

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the
date first set forth above.

THE BANK OF NEW YORK MELLON
in its capacity as trustee

Signature: _M E Facendola_

Name: _GERARD F FACENDOLA_

Title: _MANAGING DIRECTOR_


THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.
in its capacity as trustee

Signature: _____

Name: _____ Robert H. Major _____
          Vice President

Title: _____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

LAW DEBENTURE TRUST COMPANY OF NEW YORK
in its capacity as separate trustee

Signature:_____

Name:_____THOMAS MUSARRA____
            SENIOR VICE PRESIDENT
Title:_____

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

U.S. BANK NATIONAL ASSOCIATION
in its capacity as trustee

Signature:

Name: Mamta K. Scott

Title: Vice President

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

WELLS FARGO BANK, N.A.
in its capacity as trustee

Signature: _Mary L. Sohlberg_

Name: _MARY L. Sohlberg_

Title: _Vice President_

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first set forth above.

GIBBS & BRUN LLP on behalf of
the following Institutional Investors:  AEGON USA Investment Management, LLC; Angelo, Gordon & Co., L.P.; Cascade Investment, LLC; Federal Home Loan Bank of Atlanta; Goldman Sachs Asset Management, L.P.; ING Investment Management Co. LLC; ING Investment Management, LLC; Bayerische Landesbank; BlackRock Financial Management Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Metropolitan Life Insurance Company; Neuberger Berman Europe Limited; SNB StabFund; The TCW Group, Inc.; Teachers Insurance and Annuity Association of America; Thrivent Financial for Lutherans; Western Asset Management Company; and certain of their affiliates, either in their own capacities or as advisors or investment managers)

Signature: _____

Name: _____

Title: _____

*Execution Version*

Agreed to use Best Efforts (as defined in the Plan Support Agreement) to obtain the consent to

this Agreement by Institutional Investors Talcott Franklin P.C. represents in the Third Amended

and Restated Settlement Agreement filed March 15, 2013 in the Chapter 11 Cases:

TALCOTT FRANKLIN P.C.

By: _____

Name: Talcott J. Franklin
Title:   Principal

## Exhibit A – Debtors

ditech, LLC
DOA Holding Properties, LLC
DOA Properties IX (Lots-Other), LLC
EPRE LLC
Equity Investment I, LLC
ETS of Virginia, Inc.
ETS of Washington, Inc.
Executive Trustee Services LLC
GMAC – RFC Holding Company, LLC
GMAC Model Home Finance I, LLC
GMAC Mortgage USA Corporation
GMAC Mortgage, LLC
GMAC Residential Holding Company, LLC
GMAC RH Settlement Service, LLC
GMACM Borrower LLC
GMACM REO LLC
GMACR Mortgage Products, LLC
HFN REO SUB II, LLC
Home Connects Lending Services, LLC
Homecomings Financial Real Estate Holdings, LLC
Homecomings Financial, LLC
Ladue Associates, Inc.
Passive Asset Transactions, LLC
PATI A, LLC
PATI B, LLC
PATI Real Estate Holdings, LLC
RAHI A, LLC
RAHI B, LLC
RAHI Real Estate Holdings, LLC
RCSFJV2004, LLC
Residential Accredit Loans, Inc.
Residential Asset Mortgage Products, Inc.
Residential Asset Securities Corporation
Residential Capital, LLC
Residential Consumer Services of Alabama, LLC
Residential Consumer Services of Ohio, LLC
Residential Consumer Services of Texas, LLC
Residential Consumer Services, LLC
Residential Funding Company, LLC
Residential Funding Mortgage Exchange, LLC
Residential Funding Mortgage Securities I, Inc.
Residential Funding Mortgage Securities II, Inc.
Residential Funding Real Estate Holdings, LLC
Residential Mortgage Real Estate Holdings, LLC
RFC – GSAP Servicer Advance, LLC

RFC Asset Holdings II, LLC
RFC Asset Management, LLC
RFC Borrower LLC
RFC Construction Funding, LLC
RFC REO LLC
RFC SFJV-2002, LLC

**Exhibit B – Trust Schedule**

| Trust | Trustee | Policy ID |
|---|---|---|
| GMACM 2001-HE2 | The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A. (collectively, "BNY Mellon") | 1010293 |
| GMACM 2002-HE4 | Wells Fargo Bank, N.A. ("WFB") / Law Debenture Trust Company of New York ("LDTC) | 2030026 |
| GMACM 2003-HE2 | WFB/LDTC | 3030009 |
| GMACM 2004-HE5 | WFB/LDTC | 4030047 |
| GMACM 2005-HE2 | WFB/LDTC | 5030041 |
| GMACM 2006-HE2 | BNY Mellon | 6030080 |
| GMACM 2006-HE3 | BNY Mellon | 6030099 |
| GMACM 2006-HE5 | BNY Mellon | 6030127 |
| GMACM 2007-HE2 | BNY Mellon | 7030046 |
| GMACM 2001-HE2 | BNY Mellon | 1010294 |
| GMACM 2001-HE3 | BNY Mellon | 1030013 |
| GMACM 2002-HE1 | WFB/LDTC | 2030009 |
| GMACM 2003-HE1 | WFB/LDTC | 3030008 |
| GMACM 2004-HE1 | WFB/LDTC | 4030006 |
| GMACM 2005-HE1 | WFB/LDTC | 5030011 |
| GMACM 2006-HE1 | BNY Mellon | 6030037 |
| GMACM 2004-HLTV1 | BNY Mellon | 4030036 |
| GMACM 2006-HLTV1 | BNY Mellon | 6030034 |
| RFC, RAMP 2004-RS7 | BNY Mellon | 4030020 |
| RFC, RAMP 2004-RS7 | BNY Mellon | 4030021 |
| RFC, RAMP 2005-EFC7 | U.S. Bank National Association ("USB") | 5030159 |
| RFC, RAMP 2005-NC1 | USB | 5030158 |
| RFC, RAMP 2005-RS9 | BNY Mellon | 5030145 |
| RFC, RASC 2001-KS1 | BNY Mellon | 1010248 |
| RFC, RASC 2001-KS1 | BNY Mellon | 1010249 |
| RFC, RASC 2004-KS7 | BNY Mellon | 4030022 |
| RFC, RASC 2004-KS7 | BNY Mellon | 4030023 |
| RFC, RASC 2004-KS9 | BNY Mellon | 4030032 |
| RFC, RASC 2004-KS9 | BNY Mellon | 4030033 |
| RFC, RASC 2005-EMX5 | USB | 5030153 |
| RFC, RASC 2007-EMX1 | USB | 7030010 |
| RFC, RFMSI 2005-S2 | USB | 5030006 |
| RFC, RFMSI 2005-S7 | USB | 5030142 |
| RFC, RFMSII 2002-HS3 | BNY Mellon | 2030023 |

| Trust | Trustee | Policy ID |
|-------|---------|-----------|
| RFC, RFMSII 2003-HS1 | BNY Mellon | 3030004 |
| RFC, RFMSII 2004-HS1 | BNY Mellon | 4030007 |
| RFC, RFMSII 2005-HS1 | BNY Mellon | 5030097 |
| RFC, RFMSII 2005-HS2 | BNY Mellon | 5030143 |
| RFC, RFMSII 2005-HSA1 | BNY Mellon | 5030160 |
| RFC, RFMSII 2006-HSA1 | BNY Mellon | 6030003 |
| RFC, RFMSII 2006-HSA2 | BNY Mellon | 6030022 |
| RFC, RFMSII 2002-HS3 | BNY Mellon | 2030024 |
| RFC, RFMSII 2003-HS1 | BNY Mellon | 3030005 |
| RFC, RFMSII 2003-HS2 | BNY Mellon | 3030017 |
| RFC, RFMSII 2004-HS1 | BNY Mellon | 4030008 |
| RFC, RFMSII 2004-HS3 | BNY Mellon | 4030035 |
| RFC, RFMSII 2005-HS1 | BNY Mellon | 5030098 |
| RFC, RFMSII 2005-HS2 | BNY Mellon | 5030146 |
| RFC, RFMSII 2005-HSA1 | BNY Mellon | 5030161 |
| RFC, RFMSII 2006-HSA2 | BNY Mellon | 6030026 |
| RFC, RAMP 2004-RZ2 | BNY Mellon | 4030012 |
| RFC, RAMP 2004-RZ2 | BNY Mellon | 4030013 |
| RFC, RFMSII 2004-HI2 | BNY Mellon | 4030015 |
| RFC, RFMSII 2004-HI3 | BNY Mellon | 4030034 |
| RFC, RFMSII 2005-HI1 | BNY Mellon | 5030001 |
| RFC, RFMSII 2006-HI2 | BNY Mellon | 6030063 |
| RFC, RFMSII 2006-HI3 | BNY Mellon | 6030087 |
| RFC, RFMSII 2006-HI4 | BNY Mellon | 6030113 |
| RFC, RFMSII 2006-HI5 | USB | 6030135 |
| RFC, RFMSII 2007-HI1 | USB | 7030014 |

## Exhibit C - Prepetition Litigation

1. *Financial Guaranty Insurance Company v. GMAC Mortgage, LLC (f/k/a GMAC
   Mortgage Corporation); Ally Bank (f/k/a GMAC Bank); and Residential Capital, LLC
   (f/k/a Residential Capital Corporation)* (S.D.N.Y. Case No. 11-cv-9729) (relating to
   GMACM Home Equity Loan Trust 2006-HE1), which was amended to include
   allegations against Ally Financial, Inc. (f/k/a GMAC, LLC)

2. *Financial Guaranty Insurance Company v. Residential Funding Company, LLC (f/k/a
   Residential Funding Corporation); and Residential Capital, LLC (f/k/a Residential
   Capital Corporation)* (S.D.N.Y. Case No. 11-cv-9737) (relating to RAMP Series 2005-
   RS9 Trust)

3. *Financial Guaranty Insurance Company v. Residential Funding Company, LLC (f/k/a
   Residential Funding Corporation); and Residential Capital, LLC (f/k/a Residential
   Capital Corporation)* (S.D.N.Y. Case No. 11-cv-9736) (relating to RFMSII Home Equity
   Loan Trust 2005-HS1 and RFMSII Home Equity Loan Trust 2005-HS2)

4. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC (f/k/a Residential Capital Corporation); and Residential
   Funding Company, LLC (f/k/a Residential Funding Corporation)* (S.D.N.Y. Case No. 12-
   cv-0341) (relating to RASC Series 2005-EMX5 Trust)

5. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC (f/k/a Residential Capital Corporation;) and Residential
   Funding Company, LLC (f/k/a Residential Funding Corporation)* (S.D.N.Y. Case No. 12-
   cv-0338) (relating to RAMP Series 2005-EFC7 Trust)

6. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC (f/k/a Residential Capital Corporation); and Residential
   Funding Company, LLC (f/k/a Residential Funding Corporation)* (S.D.N.Y. Case No. 12-
   cv-0339) (relating to RAMP Series 2005-NC1 Trust)

7. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC (f/k/a Residential Capital Corporation); and Residential
   Funding Company, LLC (f/k/a Residential Funding Corporation)* (S.D.N.Y. Case No. 12-
   cv-0340) (relating to RFMSII Series 2005-HSA1 Trust, RFMSII Series 2006-HSA1 Trust
   and RFMSII Series 2006-HSA2 Trust)

8. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC
   Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation)* (S.D.N.Y., Case
   No. 12-cv-0780) (relating to GMACM Home Equity Loan Trust 2005-HE1)

9. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC);
   Residential Capital, LLC; and Residential Funding Company, LLC* (S.D.N.Y. Case No.
   12-cv-1601) (relating to RASC Series 2007-EMX1 Trust)

10. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation)* (S.D.N.Y., Case No. 12-cv-1658) (relating to GMACM Home Equity Loan Trust 2006-HE3)

11. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation)* (S.D.N.Y., Case No. 12-cv-1818) (relating to GMACM Home Equity Loan Trust 2006-HE2 and GMACM Home Equity Loan Trust 2007-HE2)

12. *Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); and Residential Funding Company, LLC (f/k/a Residential Funding Corporation)* (S.D.N.Y. Case No. 12-cv- 1860) (relating to RFMSII Home Equity Loan Trust 2006-HI2, RFMSII Home Equity Loan Trust 2006-HI3, RFMSII Home Equity Loan Trust 2006-HI4, RFMSII Home Equity Loan Trust 2006-HI5 and RFMSII Home Equity Loan Trust 2007-HI1)

## **Exhibit D**

### **Bankruptcy Court Order**

**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------)
In re:                                              )          **Chapter 11**
                                                    )
**RESIDENTIAL CAPITAL, LLC, et al.,**    )          **Case No.  12-120120 (MG)**
                                                    )
                              **Debtors.**    )          **Jointly Administered**
--------------------------------------------------------)

### ORDER GRANTING DEBTORS' MOTION PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF THE SETTLEMENT AGREEMENT AMONG FGIC, THE DEBTORS, THE TRUSTEES AND THE INSTITUTIONAL INVESTORS

Upon the motion, dated May [__], 2013 (the "**Motion**"), of Residential Capital,

LLC and its affiliated debtors in the above-referenced chapter 11 cases (the "**Chapter 11**

**Cases**"), as debtors in possession (collectively, the "**Debtors**"), pursuant to Fed. R. Bankr.

P. 9019 for approval of that certain Settlement Agreement entered into among the Debtors,

Financial Guaranty Insurance Company ("**FGIC**"), The Bank of New York Mellon, The Bank of

New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S.

Bank National Association and Wells Fargo Bank, N.A., each solely in their respective

capacities as trustees, indenture trustees or separate trustees (collectively, the "**Trustees**") under

the Trusts[1] and the Institutional Investors, dated May 23, 2013 (the "**Settlement Agreement**");

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the affidavits of the

Trustees of mailing notice of the Settlement Agreement to all Investors in the Trusts; and due

and proper notice of the Settlement Agreement, the Motion and the relief requested therein

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

having been provided to all parties in interest in the Chapter 11 Cases, including the Investors, in satisfaction of federal and state due process requirements and other applicable law, and no other or further notice being necessary; and the Court having reviewed the Settlement Agreement; and after due deliberation and for good cause shown, it is

ADJUDGED, FOUND AND DETERMINED:

A.    The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

B.    The Settlement Agreement and the transactions contemplated thereby, including the releases given therein, meet the standards established by the Second Circuit for the approval of a compromise and settlement in bankruptcy, and are reasonable, fair and equitable and supported by adequate consideration.

C.    The Settlement Agreement and the transactions contemplated thereby, including the releases given therein, are in the best interests of the Debtors, their estates, their creditors, the Investors in each Trust, each such Trust, the Trustees and all other parties in interest.

D.    The Trustees acted reasonably, in good faith and in the best interests of the Investors in each Trust and each such Trust in agreeing to the Settlement Agreement.

E.    Notice of the Settlement Agreement, including the Trustees' notice of the same, is sufficient and effective in satisfaction of federal and state due process requirements and other applicable law to put the parties in interest in these Chapter 11 Cases and others, including the Investors in each Trust, on notice of the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    The Motion is granted.

2.      Any and all objections to the Motion or the relief requested therein that
have not been withdrawn, waived or settled, and all reservations of rights included therein, are
hereby overruled on the merits.

3.      The Settlement Agreement is hereby approved pursuant to Fed. R. Bankr.
P. 9019(a) and the applicable decisional case law, and, pursuant to the terms and conditions of
the Settlement Agreement, and subject to the occurrence of the Effective Date, the Debtors are
hereby authorized and directed to take any and all actions as may be necessary to effectuate and
implement the Settlement Agreement.

4.      Pursuant to the Settlement Agreement, and subject to the occurrence of the
Effective Date, (a) the FGIC Claims shall be allowed as general unsecured claims against each of
Residential Capital, LLC, GMAC Mortgage, LLC and Residential Funding Company, LLC
(A) in the aggregate amount of $596.5 million, which amount (i) is equal to the sum of
(x) $343.2 million, the amount of claims FGIC has paid under the Policies that remain
unreimbursed and (y) $253.3 million, the sum of all of the Payment Amounts and (ii) will be
allocated among Residential Capital, LLC, GMAC Mortgage, LLC and Residential Funding
Company, LLC pro rata based on which of the Debtors would be obligated to reimburse FGIC
for such payments under the Governing Agreements; or (B) if a chapter 11 plan contemplated by
that certain Plan Support Agreement, dated as of May 13, 2013, by and among the Parties to the
Settlement Agreement and certain other parties (the "**Plan Support Agreement**") is confirmed
and goes effective, in the aggregate and allocated amounts, as applicable, set forth in Annex I (as
such annex may be adjusted, amended or revised) of the Supplemental Term Sheet (as defined in
the Plan Support Agreement) as provided for in the Supplemental Term Sheet Paragraph 2 at
pages 6 and 7 (in the case of either (A) or (B), the "**FGIC Allowed Claims**"); provided, further

that if the Plan Support Agreement is terminated in accordance with its terms or the chapter 11

plan contemplated thereunder does not go effective, in addition to the FGIC Allowed Claims,

FGIC reserves all rights to assert general unsecured claims against each of Residential Capital,

LLC, GMAC Mortgage, LLC and Residential Funding Company, LLC, as reflected in the proofs

of claim filed by FGIC in the Chapter 11 Cases, with all claims by FGIC (including any FGIC

Allowed Claims or otherwise) against each such entity capped in each case at the amount of

$596.5 million and (b) the FGIC Allowed Claims shall be treated in accordance with the Plan

Support Agreement and the chapter 11 plan contemplated thereby, or, if such agreement is

terminated in accordance with its terms or the chapter 11 plan contemplated thereby does not go

effective, the FGIC Allowed Claims shall be treated *pari passu* with other unsecured claims

allowed against Residential Capital, LLC, GMAC Mortgage, LLC and Residential Funding

Company, LLC in the Chapter 11 Cases.

       5.      The Settlement Agreement is not, and shall not be construed as, a

settlement, termination, release, discharge or waiver of any claims (including with respect to the

Prepetition Litigation) FGIC may have against non-Debtor affiliates of Residential Capital, LLC

(including Ally Financial, Inc.) or the Representatives of such non-Debtor affiliates.  For the

avoidance of doubt, this paragraph does not apply to the Representatives of the Debtors.

       6.      Subject to the occurrence of the Effective Date, the Settlement Agreement

and the settlements, releases and discharges contemplated thereby shall be binding on all parties

in interest in the Chapter 11 Cases, including the Investors.

       7.      Except as otherwise provided in the Settlement Agreement, this Court

shall retain jurisdiction with respect to all matters arising out of or relating to the

implementation, interpretation and/or enforcement of this Order.


Dated: _____, 2013
       New York, New York


                                      _____
                                      THE HONORABLE MARTIN GLENN
                                      UNITED STATES BANKRUPTCY JUDGE

## Exhibit E

**Rehabilitation Court Order**

AT IAS PART 36 OF THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK, AT THE COURTHOUSE, 60 CENTRE STREET, IN THE COUNTY, CITY AND STATE OF NEW YORK, ON THE ___DAY OF _____, 2013

PRESENT:
HON. DORIS LING-COHAN, J.S.C.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Rehabilitation of
FINANCIAL GUARANTY INSURANCE
COMPANY.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 401265/2012

Motion Sequence No. ____

**<u>ORDER</u>**

Upon reading the affirmation (the "**<u>Affirmation</u>**") of Gary T. Holtzer of Weil, Gotshal & Manges LLP, attorneys for Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York, as court-appointed rehabilitator (the "**<u>Rehabilitator</u>**") of Financial Guaranty Insurance Company ("**<u>FGIC</u>**"), dated May [__], 2013, in support of the Rehabilitator's motion for an order pursuant to Section 7428 of the New York Insurance Law approving (i) that certain Settlement Agreement entered into among Residential Capital, LLC and its fifty direct and indirect subsidiaries listed on Exhibit A to the Settlement Agreement (collectively, the "**<u>Debtors</u>**"), FGIC, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees (collectively, the "**<u>Trustees</u>**") under the Trusts,[1] and the Institutional Investors, dated May 23, 2013 (the "**<u>Settlement Agreement</u>**") and (ii) that certain Plan Support Agreement entered into among the Debtors, Ally Financial Inc. ("**<u>AFI</u>**"), on its own

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Affirmation.

behalf and on behalf of its direct and indirect subsidiaries excluding the Debtors, the Official

Committee of Unsecured Creditors of the Debtors, FGIC and the other Consenting Claimants (as

defined therein), dated May 13, 2013 (the "**Plan Support Agreement**"), to the extent that such

Plan Support Agreement relates to FGIC; and upon all the papers previously submitted and

proceedings held in the above-captioned rehabilitation proceeding;

AND upon reading and signing the order to show cause dated _____, __

2013 (the "**Order to Show Cause**");

AND due and proper notice of the Order to Show Cause, the Affirmation and the

relief requested therein having been provided as required by the Order to Show Cause, and no

further notice being necessary;

AND no objections having been filed to the relief requested in the Affirmation;

This Court finds that:

a.      The relief requested in the Affirmation, including (i) with respect to the

Settlement Agreement, (a) the settlement and release of FGIC's obligations and liabilities under

or with respect to the Policies, in exchange for FGIC paying the Payment Amount and forgoing

future premiums with respect to the Policies and (b) allowance of the FGIC Allowed Claims, in

exchange for FGIC releasing the Debtors from additional obligations and liabilities related to the

FGIC Claims and (ii) with respect to the Plan Support Agreement, the discharge and release of

AFI and Ally Bank from any and all claims arising from or related to the Debtors in exchange for

the Debtors' receipt of approximately $206.5 million of plan value, including funds contributed

by AFI, is in the best interests of FGIC's policyholders and other claimants and should be

granted; and

b.      The Trustees have acted reasonably and in good faith in entering into the Settlement Agreement, and the Trustees have not acted negligently in performing their duties in respect of the Settlement Agreement.

NOW, on motion of the Rehabilitator, the Court hereby ORDERS that:

1.      The relief requested in the Affirmation is granted;

2.      The Settlement Agreement is approved and, pursuant to the terms and conditions of the Settlement Agreement, and subject to the occurrence of the Effective Date (as defined in the Settlement Agreement), the Rehabilitator is authorized and permitted to take the steps necessary to carry out and consummate the Settlement Agreement and the transactions contemplated thereby, including to compromise and settle present and future claims under or relating to the Policies for the aggregate amount of $253.3 million, and to execute releases and any other instruments;

3.      FGIC shall have no further rights, obligations or liabilities under the Policies;

4.      The Settlement Agreement, and the settlements, releases and discharges contemplated thereby, shall be binding on all Investors holding Securities insured by FGIC's Policies, and any other persons or entities who were served with notice of the Affirmation pursuant to the Order to Show Cause;

5.      The Settlement Agreement is not, and shall not be construed as, a settlement, termination, release, discharge or waiver of any claims (including with respect to the Prepetition Litigation) FGIC may have against non-Debtor affiliates of Residential Capital, LLC (including AFI and Ally Bank), or the Representatives of such non-Debtor affiliates; for the avoidance of doubt, this paragraph 5 does not apply to the Representatives of the Debtors;

6.      The Plan Support Agreement is approved as it relates to FGIC and, subject
to the terms and conditions of the Plan Support Agreement, the Rehabilitator is authorized and
permitted to take the necessary steps to carry out and consummate the Plan Support Agreement
and the transactions contemplated thereby, including to settle, discharge and release any and all
of FGIC's claims against AFI and Ally Bank arising from or related to the Debtors (including
with respect to the Prepetition Litigation), and to execute releases and any other instruments;

7.      Service of notice of this Order shall be made by the Rehabilitator posting
such notice, together with a copy of the Court Order, at www.fgicrehabilitation.com and such
service shall be deemed good and sufficient service of notice of entry of this Order on all
Investors and any other persons or entities who may have an interest in the Order; and

8.      This Court shall have exclusive jurisdiction to interpret, implement and
enforce the provisions of this Order and to adjudicate any dispute arising out of or in connection
with the settlement, discharge or release of any rights, interests, obligations or liabilities of the
Parties under or otherwise relating to the Policies (including in respect of any claims for payment
thereunder).


E N T E R


_____
J. S. C.

## Exhibit F

### Allocation Methodology

## EXHIBIT F

## ALLOCATION METHODOLOGY

1.      Each Trust's Payment Amount[1] shall be determined solely by the Trustees pursuant to the advice of a qualified financial advisor, retained in the sole discretion of the Trustees and upon whose advice the Trustees may conclusively rely, using the methodology set forth below:

        (a)      Each Trust's Payment Amount shall be equal to the aggregate Payment Amounts to all Trusts (the "Aggregate Payment Amount") multiplied by that Trust's Allocable Share of the Aggregate Payment Amount.

        (b)      Each Trust's Allocable Share of the Aggregate Payment Amount shall be equal to: the sum of that Trust's accrued and unpaid claims under the Policies plus the estimated future claims under the Policies; divided by the sum of each and every Trust's accrued and unpaid claims under the Policies plus estimated future claims under the Policies.

2.      The Payment Amount to a Trust shall be treated as amounts paid by FGIC on account of claims under the Policies under the terms of the Governing Agreement for that Trust.

3.      Nothing in this Settlement Agreement amends or modifies in any way any provisions of any Governing Agreement.

---

[1] Terms not otherwise defined in this Exhibit F, shall have the meanings ascribed to them in the Settlement Agreement.

## **Exhibit G**

**Acknowledgement and Assumption Agreement**

# FORM OF ACKNOWLEDGEMENT AND ASSUMPTION AGREEMENT

This Acknowledgement and Assumption Agreement (the "Agreement") is made and entered into effective as of _____, 201_ by [Successor Trustee], as successor trustee (the "Successor Trustee") for the residential mortgage-backed securitizations identified in the attached Schedule 1 (the "Trusts").

# RECITALS

WHEREAS, [Trustee] (the "Trustee") entered into that certain Settlement Agreement by and among Residential Capital, LLC and its direct and indirect subsidiaries, Financial Guaranty Insurance Company ("FGIC"), the Trustee and certain other parties, dated as of May 23, 2013 (the "Settlement Agreement").

WHEREAS, effective as of _____, 2013, the Successor Trustee replaced the Trustee as trustee of the Trusts under that certain [Indenture] dated as of _____, ____ (the "Indenture") pursuant to the terms thereof.

WHEREAS, in accordance with Section 6.01(e) of the Settlement Agreement, the Successor Trustee wishes to acknowledge that it is bound by the terms and conditions of the Settlement Agreement, including the settlements, discharges and releases contemplated thereby, as if it was an original signatory thereto.

WHEREAS, the Successor Trustee wishes to assume and agree to perform any and all obligations of the Trustee under the Settlement Agreement as if it was an original signatory thereto.

NOW, THEREFORE, in consideration of the foregoing, the Successor Trustee hereby:

1.      Acknowledges that the Trustee has made available to it a copy of the Settlement Agreement, and it has reviewed such copy in its entirety;

2.      Accepts and acknowledges that it is bound by the terms and conditions of the Settlement Agreement, including the settlements, discharges and releases contemplated thereby, as if it was an original signatory thereto;

3.      Represents, warrants and covenants that it will perform and fulfill each covenant, agreement, condition, obligation and responsibility of the Trustee under the Settlement Agreement from and after the date of this Agreement, and that the Trustee will be responsible for performing and fulfilling each such covenant, agreement, condition, obligation and responsibility prior to the date of this Agreement;

4.      Represents, warrants and covenants that it will provide notice details and wire instructions to FGIC in writing promptly upon singing this Agreement;

5.      Represents and warrants that this Agreement has been duly authorized, executed and delivered on behalf of the Successor Trustee and constitutes its legal, valid and

binding obligation in accordance with its terms (subject to applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application (regardless of whether enforcement is sought in a proceeding in equity or at law));

6.    Represents and warrants that it is duly organized and validly existing and in good standing under the laws of the jurisdiction of its organization with full power and authority to execute and deliver, and to perform and observe the terms and provisions of, this Agreement;

7.    Represents and warrants that the execution, delivery, performance and observance of this Agreement by the Successor Trustee (x) has been duly authorized by all necessary corporate action on the part of the Successor Trustee, does not and will not conflict with, or result in a violation of, any law, rule or regulation applicable to its corporate trust administration, and does not require it to obtain the approval of, provide notice to or make a filing with any court, governmental or regulatory agency or authority or other person or entity having jurisdiction over its corporate trust business and (y) does not and will not violate, conflict with or result in the breach of any provision of its organizational or governance documents;

8.    Acknowledges and agrees that this Agreement, and the rights and obligations of the Successor Trustee under this Agreement and any and all disputes arising under or in connection with this Agreement, shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the choice of laws principles thereof. Further, by its execution and delivery of this Agreement, the Successor Trustee hereby irrevocably and unconditionally agrees that the Bankruptcy Court[1] shall have exclusive jurisdiction of all matters arising out of or in connection with the Settlement Agreement; provided, however that the Rehabilitation Court shall have exclusive jurisdiction over any dispute arising out of or in connection with the settlement, discharge or release of any rights, interests, obligations or liabilities of the Parties under or otherwise relating to the Policies (including in respect of any claims for payment thereunder); and

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

9.      Acknowledges and agrees that, in no event shall this Agreement be construed as a modification, waiver or amendment of the terms of any Governing Agreement by any party thereto.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the ___ day of _____, 201_.

[SUCCESSOR TRUSTEE]

By: _____
        Name:
        Title:
        Address: