# Exhibit 6

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Claim #4870    Date Filed: 11/16/2012

Name of Debtor and Case Number:
**Residential Capital, LLC, Case No. 12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Financial Guaranty Insurance Company**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
Financial Guaranty Insurance Company
Attn: Timothy Travers
125 Park Avenue
New York, NY 10017
Tel: (212) 312-3000
Email: tim.travers@fgic.com

Copy to:
Carl Black, Esq.
Jones Day
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
Tel: (216) 586-3939
Email: ceblack@jonesday.com

Telephone number:                           email:

**Court Claim**
**Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:                           email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $    **See Attachment**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim:    See Attachment
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:

3a. Debtor may have scheduled account as:
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other
Describe:
Value of Property: $_____ Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

if any: $_____          Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____          (See instruction #6)

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence ~~of perfection of a security interest are attached.~~ (See instruction #7, and the definition of "*redacted*.")

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED D~~OCUMENTS MAY BE DESTROYED AFTER SCANNING~~.

If the documents are not available, please explain: Due to their ~~volume~~ not attached h~~ereto~~

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
1212020121116000000000100

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.  ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name:  Winston Wohr
Title:  Managing Director
Company:  Financial Guaranty Insurance Company
Address and telephone number (if different from notice address above):

(Signature)          11/15/12   (Date)

**RECEIVED**
NOV 1 6 2012
KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

Telephone number:                    Email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702
TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: 212.326.3960
llswanson@jonesday.com

JP014179
207061-600005

November 15, 2012

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**DELIVERY CONFIRMATION REQUESTED**

ResCap Claims Processing Center c/o KCC
2335 Alaska Ave
El Segundo, California  90245

Re:    Proof of Claims in Residential Capital, LLC, *et al.*

To Whom it May Concern:

Please find enclosed one original and one copy each of Financial Guaranty Insurance Company's three proof of claims against debtors Residential Capital, LLC, Residential Funding Company, LLC and GMAC Mortgage, LLC.  Please time stamp one copy each and return in the self-addressed envelope also enclosed.

Very truly yours,

Laura L. Swanson

Enclosure:    3 originals of Proof of Claim
              3 copies of Proof of Claim
              1 self-addressed envelope

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

In re:                                              :        **Chapter 11**

**RESIDENTIAL CAPITAL, LLC, et al.,**      :        **Case No. 12-12020 (MG)**

                          **Debtors.**          :        **Jointly Administered**

                                                    :
———————————————————————x

## ATTACHMENT TO PROOFS OF CLAIM OF FINANCIAL GUARANTY INSURANCE COMPANY AGAINST (I) RESIDENTIAL CAPITAL, LLC (CASE NO. 12-12020); (II) GMAC MORTGAGE, LLC (CASE NO. 12-12032); AND (III) RESIDENTIAL FUNDING COMPANY, LLC (CASE NO. 12-12019)

1.      This document provides detail in connection with and in support of the

Proofs of Claim filed by Financial Guaranty Insurance Company ("Claimant" or "FGIC") against

(i) Residential Capital, LLC ("ResCap") (Case No. 12-12020); (ii) GMAC Mortgage LLC

("GMACM") (Case No. 12-12032); and (iii) Residential Funding Company, LLC ("RFC") (Case

No. 12-12019) (collectively, the "Debtors"), debtors and debtors-in-possession in the above-

captioned proceeding.

2.      On May 14, 2012 (the "Petition Date"), the Debtors filed a voluntary

petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"). Pursuant to an order entered on November 7, 2012 (Docket No. 2093), the Bankruptcy

Court established November 16, 2012 as the date by which parties other than governmental

entities must file a proof of claim against the Debtors.

## A.      BACKGROUND

3.      GMACM and RFC originated, acquired, sold and serviced residential

mortgage loans (the "Mortgage Loans"). From time to time, GMACM and RFC facilitated the

critical aspects of a number of transactions (each a "Transaction" and collectively the "Transactions"), whereby GMACM and RFC (collectively with respect to such Transactions, the "Sponsors") arranged for the securitization of the Mortgage Loans and the sale to investors of either certificates or notes (the "Securities") collateralized by the Mortgage Loans in the form of residential mortgage-backed securities ("RMBS").

4.    In addition to acting as Sponsors and sellers of Mortgage Loans within the Transactions, the Sponsors also acted as mortgage loan servicers for many of the Transactions. In its role as servicer, each Sponsor was responsible for, among other things, collecting borrower payments, modifying delinquent mortgage loans and performing other loss mitigation tasks, preserving the mortgaged property with respect to defaulted mortgage loans, liquidating defaulted mortgage loans, and performing other servicing duties set forth in the applicable securitization servicing agreements.

5.    FGIC, a monoline financial guaranty insurance company, was in the business of writing financial guaranty insurance policies with respect to asset-backed securities, including RMBS. FGIC's financial guaranty insurance policies for the Transactions at issue (the "Policies") guaranteed the payment of principal and interest due on the insured securities. At the various times FGIC issued the relevant Policies, FGIC's financial strength was rated triple-A by rating agencies, which enabled securities insured by FGIC to be highly rated as well, and more highly rated than they otherwise would have been absent the Policies. FGIC's participation in the Transactions enhanced the ratings and marketability of the Sponsors' RMBS which, in turn, made the securitizations viable. Consequently, the Sponsors, along with their parent companies ResCap and Ally Financial ("Ally Financial") and numerous affiliates, were able to strengthen

their balance sheets, grow their mortgage origination businesses through such off-balance sheet

financing vehicles, and earn substantial fees, including ongoing servicing fees.

6.    With respect to any RMBS covered by the Policies, FGIC—as the

financial guaranty insurer—is exposed to any unpaid losses on such securities. FGIC's risk in

securitization transactions such as those engineered by the Sponsors is dependent on, among

other things, (i) the credit quality of the underlying mortgage loans and (ii) the servicing of such

mortgage loans. Within the Transactions, FGIC is obligated to make payments on any RMBS it

insured if the cash flow from the underlying Mortgage Loans is insufficient to satisfy in a timely

manner the payments due to holders of the Securities, including, for example, if the servicer of

the Mortgage Loans is not properly collecting borrower payments or is otherwise not servicing in

accordance with industry standards and/or their stated practices. Accordingly, FGIC has a

significant economic interest in the proper servicing of the Mortgage Loans and the

maximization of collections from borrowers.

7.    Currently, FGIC insures securities in 43 of the Debtors' securitization

transactions. FGIC is the largest monoline insurer in terms of exposure to the Debtors by

balance of securities issued. Each securitization transaction consists of either a Pooling &

Servicing Agreement or Sale and Servicing Agreement (each referred to as a "Servicing

Agreement" herein), which anticipates that there be a companion Insurance & Indemnity

Agreement ("I&I Agreement"), and a Custodial Agreement. In each case, these agreements were

executed and delivered simultaneously as part of the closing of the related securitization

transactions. The obligations of the servicers in these agreements are indivisible.

8.    The Servicing Agreements associated with the 43 securitization

transactions that FGIC insures were listed in the First Amended and Restated Notice of (I)

Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of

Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts

Related Thereto (Docket No. 1484) (the "Assumption Notice") or were otherwise incorporated

into the Assumption Notice and are part of the sale of the servicing business to the bidder who

prevailed at the auction—Ocwen Financial Corp. As of the date of this filing, neither the

Debtors nor Ocwen Financial Corp. have informed FGIC of their final intentions with respect to

the agreements between the Debtors and FGIC. To the extent that FGIC's servicing claims are

paid as part of the assumption and assignment process, FGIC acknowledges that certain of the

claims asserted herein would be duplicative. As the status of its agreements is still in flux,

however, FGIC is forced to include amounts owing on account of servicing breaches in this

Proof of Claim.

    9.    FGIC has brought twelve civil actions against the Debtors and Ally

Financial, each of which are currently pending in the United States District Court for the

Southern District of New York before the Honorable Paul A. Crotty.[1] Broadly, the claims arise

from the financial guaranty insurance policies issued by FGIC in connection with the Debtors'

RMBS transactions. Against the Debtors, FGIC has alleged, among other things, breach of

contract and, in some instances, fraudulent inducement to enter into the I&I Agreement and issue

the Policies. The Complaints FGIC has filed against the Debtors and the underlying

Transactions are summarized in the following chart:[2]

---

[1] Copies of the complaints that initiated these actions are not attached hereto due to their voluminous nature, but are available upon request.

[2] This chart does not include claims FGIC has brought against Ally Financial or Ally Bank.

| Case No. | Transactions | Major Causes of Action (Defendant) |
|---|---|---|
| **GMACM-Sponsored Transactions** | | |
| 12-cv-00780 | GMACM 2005-HE1 | Breach of Contract (GMACM, ResCap) |
| 11-cv-09729 | GMACM 2006-HE1 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1658 | GMACM 2006-HE3 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| 12-cv-1818 | GMACM 2006-HE2<br>GMACM 2007-HE2 | Breach of Contract (GMACM, ResCap)<br>Fraudulent Inducement (GMACM, ResCap) |
| **RFC-Sponsored Transactions** | | |
| 11-cv-9737 | RAMP 2005-RS9 | Breach of Contract (RFC) |
| 11-cv-9736 | RFMSII 2005-HS1<br>RFMSII 2005-HS2 | Breach of Contract (RFC) |
| 12-cv-0338 | RAMP 2005-EFC7 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0339 | RAMP 2005-NC1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0341 | RASC 2005-EMX5 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1601 | RASC 2007-EMX1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-0340 | RFMSII 2006-HSA1<br>RFMSII 2005-HSA1<br>RFMSII 2006-HSA2 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |
| 12-cv-1860 | RFMSII 2006-HI2<br>RFMSII 2006-HI3<br>RFMSII 2006-HI4<br>RFMSII 2006-HI5<br>RFMSII 2007-HI1 | Breach of Contract (RFC, ResCap)<br>Fraudulent Inducement (RFC, ResCap) |

10.     As mentioned, FGIC's participation in the Transactions was essential to
their viability and enhanced the Sponsors' ability to market the securitizations effectively.  For
each Transaction, FGIC and either RFC or GMACM executed an I&I Agreement, pursuant to
which FGIC issued the applicable financial guaranty insurance policy to insure payment on the

Securities sold to investors in a particular Transaction. Each I&I Agreement typically was signed by, among others, FGIC (as the "Insurer" of each Transaction); RFC or GMACM (as the "Seller" and Servicer and/or Master Servicer for each Transaction); and the respective Trustee for the Transaction.

11.     Each I&I Agreement provides that FGIC as the Insurer is a third-party beneficiary of, and shall have all of the rights provided for in, the "Operative Documents." *See, e.g.*, 2006-HE2 Transaction, I&I Agreement § 2.02(k). The definition of "Operative Documents" depended on whether GMACM or RFC sponsored the Transaction. For GMACM-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Mortgage Loan Purchase Agreement ("MLPA"); (iii) a Servicing Agreement; (iv) an Indenture between the relevant Trust and Indenture Trustee; and (v) a Custodial Agreement. *See, e.g.*, 2006-HE2 Transaction, I&I Agreements § 1.01. For RFC-sponsored Transactions, "Operative Documents" are defined to typically include: (i) the Securities; (ii) a Pooling and Servicing Agreement; and (iii) an Assignment and Assumption Agreement. *See, e.g.*, 2006-HI4 Transaction, I&I Agreement § 1.01.

12.     The Sponsor, together with the "Depositor" of the Mortgage Loans into the relevant Trust, offered the Securities for sale pursuant to a Prospectus and a Prospectus Supplement, each of which discussed the relevant Policy and the triple-A initial rating of the Securities that was made possible by FGIC's issuance of that Policy. The Prospectus and Prospectus Supplement, together with certain preliminary offering documents, each as further supplemented by any subsequent amendment or supplement thereto, and any other offering document that make reference to the Policies, are referred to collectively as the "Offering Documents."

## B.    BREACH OF CONTRACT

13.    In the Complaints, FGIC has alleged four distinct claims for breach of

contract against the Sponsors.  These claims include: (i) breach of both transaction-level and

loan-level representations, warranties, and affirmative covenants; (ii) breach of the applicable

Sponsor's duty to repurchase, cure, or substitute defective Mortgage Loans; (iii) breach of the

applicable Sponsor's duties regarding the servicing of the Mortgage Loans; and (iv) breach of the

applicable Sponsor's duty to provide FGIC with access to information regarding the Mortgage

Loans.

14.    FGIC brings each of these four claims as a breach of the I&I Agreement

between FGIC and the applicable Sponsor.  FGIC's rights and remedies under the I &I

Agreement are distinct from any rights and remedies that FGIC holds as a third party beneficiary

of the contractual obligations GMACMM and RFC owe to the Trusts.  Moreover, FGIC, as a

financial guaranty insurer is entitled under applicable law to seek rescissory damages in addition

to all other damages allowable by law.

15.    In the I&I Agreement and other Operative Documents incorporated into

the I&I Agreement by reference, GMACM and RFC made numerous representations, warranties,

and affirmative covenants regarding their loan origination, selection, and evaluation process, the

characteristics of the Mortgage Loans, and the accuracy and completeness of the information

supplied to FGIC.  GMACM and RFC also expressly represented and warranted the accuracy of

the mortgage loan characteristics provided to FGIC in an extensive and detailed schedule known

as the "Mortgage Loan Schedule."  FGIC has determined that GMACM and RFC not only

breached numerous transaction-level representations and warranties, but also revealed that a

shockingly high percentage of the Mortgage Loans—contrary to the information disclosed to

-7-

FGIC in the Mortgage Loan Schedule and stated in the Offering Documents and Operative

Documents—contained defects constituting breaches of loan-level representations and warranties.

These transaction-level and loan-level breaches of representations and warranties constitute the

Sponsors' first material breach of the I&I Agreement.

16.    Pursuant to its rights under the I&I Agreement and the provisions of

certain Operative Documents incorporated therein, FGIC demanded that the applicable Sponsor

repurchase the defective Mortgage Loans.  Despite an explicit duty to repurchase defective loans,

GMACM and RFC refused to comply with FGIC's demand for the repurchase of numerous such

Mortgage Loans.  The Sponsors' failure to repurchase these loans constitutes a second material

breach of the I&I Agreement.

17.    In addition, GMACM and RFC represented to FGIC in an affirmative

covenant under the I&I Agreements that all Mortgage Loans would be serviced in all material

respects in compliance with the Servicing Agreement entered into between the applicable

Sponsor, the relevant Trust, and the Trustee.  The Servicing Agreements require that the servicer

of the loans comply with the normal and usual collection and servicing procedures and otherwise

service the loans in accordance with appropriate procedures.  Through an on-site diligence

review of ResCap servicing practices and additional information discovered by FGIC relating to

the servicing of Mortgage Loans, FGIC learned that GMACM and RFC were deficient in

borrower contact, collections, and loss mitigation standards.  FGIC also discovered evidence that

ResCap's servicing practices had led to the miscategorization and neglect of certain FGIC-

insured Mortgage Loans.  For these reasons, GMACM and RFC committed a third material

breach of the I&I Agreement by failing to act in accordance with the affirmative covenant

regarding their duty to service the Mortgage Loans in accordance with the Servicing Agreement.

18.    The Sponsors committed a fourth breach of the I&I Agreement by denying

FGIC access to certain information to which it was contractually entitled. Pursuant to the I&I

Agreement, the applicable Sponsor agreed to furnish or cause to be furnished to FGIC financial

statements, accountants' reports, and other information. Such other information includes, but is

not limited to, data relating to the Mortgage Loans, the servicing of the Mortgage Loans, and the

Transactions. Notwithstanding FGIC's multiple reasonable requests and subsequent demands

for access to this information, the Sponsors have denied FGIC access in direct breach of the I&I

Agreement.

19.    Further, as concerns a series of RFC-sponsored Transactions—known as

2005-EMX5, 2005-RS9, 2005-NC1, and 2007-EMX1—RFC committed an additional breach of

the I&I Agreement by improperly executing modifications to certain Mortgage Loans in

accordance with the federal Home Affordable Modification Program without FGIC's required

consent. RFC had originally asked FGIC for its consent to amend the relevant Pooling and

Servicing Agreements in order to effectuate the loan modifications. Although FGIC requested

additional documentation to evaluate the proposed modifications and accompanying

amendments, RFC implemented the loan modifications without supplying FGIC with the

requested information or otherwise receiving FGIC's consent.

20.    Also, as concerns two particular GMACM-sponsored Transactions—

known as 2005-HE1 and 2006-HE1—GMACM committed another breach of the I&I Agreement

by improperly transferring thousands of additional mortgage loans into the related Trusts

following the occurrence of a contractually defined amortization event which terminated the

period during which subsequent mortgage loans could permissibly be transferred into the trusts

following the closing of these Transactions. As a result of this breach, FGIC has received claims

caused in part by losses attributable to a substantial number of loans that were added to the

related trusts in violation of the Transactions' operative documents, the terms of which were

incorporated by reference into the I&I Agreement for FGIC's benefit.

21.    Additionally, as concerns another GMACM-sponsored Transaction—

known as 2006-HE3—GMACM committed a further breach of the I&I Agreement by

improperly including within the Transaction at least 3,013 more high-risk balloon Mortgage

Loans—accounting for at least $160 million in aggregate principal amount—than the offering

documents and operative documents represented and warranted the Transaction would contain.

The credit risk inherent in a balloon mortgage loan is typically much higher than that of a non-

balloon mortgage loan, and the undisclosed balloon Mortgage Loans in the 2006-HE3

Transaction have performed significantly worse than the non-balloon Mortgage Loans in the

same Transaction.  Consequently, FGIC has received claims caused in part by losses attributable

to the substantial number of loans in the 2006-HE3 Transaction that were misrepresented by

GMACM as being less risky non-balloon loans.

22.    Pursuant to the I&I Agreement, GMACM and RFC must indemnify FGIC

for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature

arising out of or relating to the breach by the applicable Sponsor of any of the representations or

warranties contained in the I&I Agreement or arising out of the transactions contemplated by the

related Operative Documents.  As explained above, GMACM and RFC breached numerous

representations, warranties, and covenants in the I&I Agreements and the Operative Documents

incorporated by reference therein.  These breaches have caused, and will continue to cause,

FGIC to pay claims and to incur losses, costs, and expenses.

23.    In addition to an enforcement of the Sponsors' indemnification obligations under the I&I Agreements, FGIC seeks all legal, rescissory, equitable, consequential, and/or punitive damages for the Sponsors' material breaches of the Transactions.

24.    With regard to ResCap, FGIC has alleged that the substantial breaches of contract committed by GMACM and RFC were carried out at the direction of ResCap, which was acting at the direction of Ally Financial—the ultimate parent company of the Debtors.

25.    ResCap is the immediate parent company of and wholly owns both GMACM and RFC. ResCap and its subsidiaries share numerous directors, senior management and employees, and, together with Ally Financial, share significant resources and operations. Indeed, ResCap did not conduct any business operations whatsoever until GMAC Residential Holding Corp. and GMAC-RFC Holding Corp.—two of Ally Financial's wholly-owned subsidiaries—were transferred to it in March 2005. Those two subsidiaries represented substantially all of Ally Financial's mortgage securitization business.

26.    FGIC has asserted that, due to Ally Financial's domination and control over its subsidiaries, including ResCap, GMACM, and RFC, as well as the failure of Ally Financial and its subsidiaries to observe relevant corporate formalities in distinguishing themselves as independent entities, Ally Financial's mortgage operations units are in reality a single enterprise. As such, ResCap is indistinguishable from each of GMACM and RFC, and is thus jointly and severally liable to FGIC under a theory of alter ego liability for the harms FGIC has suffered from the breaches of contract committed by GMACM and RFC.

27.    In addition, due to, among other things, the fully integrated nature of Ally Financial's mortgage operations units, which operate as a single enterprise, each of GMACM and RFC are indistinguishable and were treated as, and are, alter egos of one another. As such,

GMACM and RFC are jointly and severally liable to FGIC for the harms FGIC has suffered as a result of the breaches of contract committed by each of the Sponsors.

## C.    FRAUDULENT INDUCEMENT

28.    In the relevant Complaints, FGIC has alleged that GMACM or RFC, as relevant, fraudulently induced FGIC into issuing Policies for the Transactions through knowing misrepresentations and omissions on which FGIC was intended to rely. To induce FGIC's participation in the Transactions—which participation was essential to their success—GMACM and RFC made material representations and warranties to FGIC about the manner in which the Mortgage Loans were selected and evaluated for inclusion in the Transactions and the credit characteristics of the Mortgage Loans. Those representations and warranties were materially false when stated by the applicable Sponsor, which intended for FGIC to rely on the misrepresentations and omissions in order to obtain needed financial guaranty insurance—and the accompanying credit enhancement—for the Transactions.

29.    FGIC reasonably relied on the Sponsors' representations and warranties when deciding to enter into the Transactions. GMACM and RFC represented in the Operative Documents and the Offering Documents, among other things, that the underwriting standards relating to the Mortgage Loans generally would conform to the published criteria applicable to the particular Mortgage Loans to be included in the various Transactions.

30.    FGIC and the relevant Sponsor entered into the I&I Agreements, which restated for FGIC's benefit the representations and warranties that the Sponsors had offered in other of the Operative Documents and Offering Documents, and thereby issued Policies for the Transactions on certain specified terms. In doing so, FGIC agreed to insure payment on the Securities, which were backed by pools of Mortgage Loans that were, in actuality, materially

different (and worse) than the applicable Sponsor had represented  As a result, the credit risk

assumed by FGIC in connection with these Transactions was far greater than it would have been

had the representations and warranties been true, as demonstrated by the overwhelming number

of claims that have been subsequently presented to FGIC.

31.    Had the information provided to FGIC directly and indirectly by GMACM

and RFC been accurate and truthful, FGIC would not have issued the Policies on the agreed

terms, or would have refused to issue the Policies altogether.  As a result of GMACM's and

RFC's materially false statements and omissions in information provided to FGIC and the credit

ratings agencies, FGIC has been damaged and will continue to be damaged.

32.    For the reasons discussed above in paragraphs 24 to 26, and further in

FGIC's Complaints, ResCap is jointly and severally liable to FGIC under a theory of alter ego

liability for the harms FGIC has suffered from the fraudulent inducement committed by

GMACM and RFC.  In addition, because GMACM and RFC were acting at the direction of

ResCap, ResCap may be jointly and severally liable to FGIC for the harms FGIC has suffered

from the fraudulent inducement committed by GMACM and RFC.

33.    Similarly, for the reasons discussed above in paragraph 27, RFC and

GMACM are jointly and severally liable to FGIC for the fraudulent inducement committed by

each of the Sponsors.  Moreover, because, among other things, GMACM and RFC each serviced

loans wrapped by FGIC by originated by the other and in such capacity aided and abetted the

misconduct of the other as originators, GMACM and RFC may be jointly and severally liable to

FGIC under an aiding and abetting theory of liability.

## D.    DAMAGES

34.    FGIC seeks legal, rescissory, equitable, consequential, and/or punitive damages against the Debtors for GMACM's and RFC's material breaches of the Transactions and their fraudulent inducement of FGIC to enter into the I&I Agreements and issue Policies for the Transactions.

35.    FGIC is entitled to receive rescissory damages in an amount equal to the amount it has been required to pay pursuant to the Policies. Rescissory damages is a more appropriate award than its equitable equivalent, actual rescission. Rescission would be impractical because: (i) the Policies are held by the Trustee for the benefit of the holders of the Securities; (ii) the Policies by their terms are expressly irrevocable (and thus cannot be rescinded) for any reason; and (iii) rescission of the Policies may lead to even greater economic harm to clean-handed parties to the securitizations.

36.    Also, as discussed above, under the I&I Agreements, the Sponsors must indemnify FGIC for any and all claims, losses, liabilities, demands, damages, costs or expenses of any nature arising out of or relating to the breach by the Sponsors of any of the representations or warranties contained in the I&I Agreement or arising out of the transactions contemplated by the related Operative Documents.

37.    Furthermore, pursuant to the Sponsors' express reimbursement obligation under the I&I Agreement, FGIC is also entitled to full reimbursement from the Debtors for any payment made by FGIC under the Policies arising from the applicable Sponsor's failure to substitute, repurchase, or cure a defective mortgage loan, as well as interest accrued on any unreimbursed amount. Further, also pursuant to the Sponsors' express reimbursement obligation, the Debtors must reimburse FGIC for any and all charges, fees, costs and expenses—including

but not limited to attorneys' and accountants' fees and expenses—that FGIC has and will

reasonably pay or incur in connection with the enforcement, defense or preservation of any of its

rights under the Transactions, including defending, monitoring or participating in any litigation

or proceeding, including any insolvency proceeding of any participant in the Transactions.

      38.    Accordingly, FGIC is entitled to receive damages from each of the

Debtors, in an amount not less than $1.85 Billion, for (i) all amounts it has paid pursuant to the

Policies, plus interest[3]; (ii) all claims FGIC has been presented with under the Policies and has

not yet paid, plus interest; (iii) expectation damages for any losses on the Trusts; and (iv)

additional damages, including but not limited to reimbursement of expenses and fees as well as

consequential damages, including any currently unliquidated future expenses or losses.

      39.    As discussed above, ResCap is jointly and severally liable for all such

damages as the alter ego and parent company of GMACM and RFC. Additionally, as described

previously, GMACM and RFC are likewise jointly and severally liable for FGIC's damages.

**E.    RESERVATION OF RIGHTS**

      40.    Claimant does not waive, and hereby expressly reserves, all rights and

remedies at law or in equity that it has or may have against the Debtors and/or any other person

or entity, including, but not limited to, any rights and remedies of Claimant arising under or in

connection with the I&I Agreements, any of the Operative Documents, or any other legal or

equitable source. Claimant reserves the right to amend or supplement this Proof of Claim at any

time and in any respect, including, without limitation, as necessary or appropriate to amend,

quantify or correct amounts, to provide additional detail regarding the claims set forth herein or

---

[3] Included in this amount is $46,235,293 that FGIC is seeking on account of accrued prepetition interest on amounts paid out by FGIC under the Policies.

the basis therefor, to fix the amount of any contingent or unliquidated claim and/or to assert that

this claim is entitled to be treated as an administrative expense or other priority. Claimant further

reserves the right to file and assert any additional claims or requests for payment of

administrative expense of whatever kind or nature that may be or later become due from the

Debtors under the I&I Agreements or any other agreement or otherwise, including, without

limitation, any secured, priority, administrative expense or general unsecured claims under the

Bankruptcy Code, whether known or unknown, liquidated or unliquidated, choate or inchoate,

disputed or undisputed or contingent or fixed.

      41.     The filing of this Proof of Claim is not and shall not be deemed or

construed as: (a) a waiver or release of Claimant's rights against any person, entity or property,

including the Debtors, that may be liable for all or part of the claims set forth herein; (b) a

consent by Claimant to the jurisdiction of the Bankruptcy Court or any other court with respect

to proceedings, if any, commenced in any case against or otherwise involving Claimant; (c) a

waiver or release of Claimant's right to trial by jury in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein, whether or not the same be

designated legal or private rights, or in any case, controversy or proceeding related hereto,

notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28

U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States

Constitution; (d) a consent by Claimant to a jury trial in the Bankruptcy Court or any other court

in any proceeding as to any and all matters so triable herein or in any case, controversy or

proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of

Claimant's right to have any and all final orders in any and all non-core matters or proceedings

entered only after de novo review by a United States District Court Judge; (f) a waiver of

Claimant's right to move to withdraw the reference with respect to: (1) the subject matter of this

Proof of Claim, (2) any objection thereto or (3) any other proceeding which may be commenced

in this case relating to this claim or otherwise involving Claimant; (g) an election of remedies; (h)

an acknowledgment that Claimant received adequate notice of any bar date fixed in these cases;

(i) a waiver of Claimant's right to assert that this or any other claim is entitled to administrative

or other priority; or (j) an admission that any valid claims or causes of action exist against

Claimant.

      42.    Claimant does not waive any right to any security held by or for it or any

right to claim specific assets or any right or rights of action that it has or may have against the

Debtors or any other person or persons who may be liable for all or any part of this Proof of

Claim.

      43.    To the extent that Claimant is entitled to assert this Proof of Claim as a

setoff or recoupment against any claim or cause of action that the Debtors may assert against

Claimant in the future (or against any claim or cause of action that may be asserted on behalf of

the Debtors), Claimant hereby preserves its rights with respect to such setoff and recoupment,

and any such right of setoff or recoupment shall survive the closing of this bankruptcy case.

      44.    The filing of this Proof of Claim in no respect waives, alters or otherwise

affects any rights that Claimant may have with regard to any claims created or otherwise arising

on or subsequent to the Petition Date. Claimant reserves all rights to argue that any right to

payment is a postpetition claim.

-17-

## E.    NOTICES

45.    Copies of all notices and communications concerning this Proof of Claim

should be sent to:

> Financial Guaranty Insurance Company
> Attn:  Timothy Travers
> 125 Park Avenue
> New York, NY 10017
> Tel:  (212) 312-3000
> Email: tim.travers@fgic.com

With a copy to:

> Carl E. Black, Esq.
> Jones Day
> 901 Lakeside Avenue
> Cleveland, Ohio  44114-1190
> Tel:  (216) 586-3939
> Email: ceblack@jonesday.com