# Exhibit 7

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>**In re Residential Capital, LLC,** *et al.* **(all Debtors)** | Case Number:<br><br>**12-12020 (MG),** *et al.* **(all Debtors)** |
|---|---|

**RECEIVED**

MAR 0 4 2013

KURTZMAN CARSON CONSULTANTS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Law Debenture Trust Company of New York and Wells Fargo Bank, N.A. in their respective capacities as Separate Trustee and Trustee (as defined in the addendum hereto) for certain residential mortgage backed securities.

| Name and address where notices should be sent:<br><br>Wells Fargo Bank, N.A., as Trustee<br>625 Marquette Avenue, 16th Floor<br>MAC N9311-161<br>Minneapolis, Minnesota 55402<br>Attn: Mary L. Sohlberg, Vice President<br>Telephone number: 612.316.0737<br>Email: mary.l.sohlberg@wellsfargo.com<br><br>Law Debenture Trust Company of New York, as Separate Trustee<br>400 Madison Avenue, Suite 4D<br>New York, NY 10017<br>Attn: Thomas Musarra, Senior Vice President<br>Telephone number: 646.747.1270<br>Email: thomas.musarra@lawdeb.com | Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424<br>Attn: John C. Weitnauer<br>Telephone number: 404.881.7780<br>Email: kit.weitnauer@alston.com<br><br>Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, New York 10004<br>Attn: Dale C. Christensen, Jr.<br>Telephone number: 212.574.1200<br>Email: christensen@sewkis.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>  *(If known)*<br><br>Filed on: _____ |
|---|---|---|

| Name and address where payment should be sent (if different from above):  **See above.**<br><br>Telephone number:                    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |
|---|---|

**1.  Amount of Claim as of Date Case Filed:**          $_____     **See Addendum attached hereto.**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2.  Basis for Claim:** _____     **See Addendum attached hereto.**
  (See instruction #2)

| **3.  Last four digits of any number by which creditor identifies debtor:**<br><br>___ ___ ___ ___ | **3a.  Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b.  Uniform Claim Identifier (optional):**<br><br>_____<br>(See instruction #3b) |
|---|---|---|

**4.  Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe: See Addendum attached hereto**

Value of Property: $_____     **See Addendum attached hereto**

Annual Interest Rate _____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                    $ ____

Basis for perfection: **See Addendum attached hereto**

Amount of Secured Claim:    $**See Addendum attached hereto**

Amount Unsecured:        $ **See Addendum attached hereto**

1212020130301000000000024

B 10 (Official Form 10) (12/12)

---

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(2).

Amount entitled to priority:

$ See Addendum attached hereto

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

---

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:  **See Addendum attached hereto.**

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.    ❏ I am the creditor's authorized agent.    ❏ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ❏ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:    Mary L. Sohlberg
Title:    Vice President
Company:    Wells Fargo Bank, N.A.

*Mary L. Sohlberg*    2-27-13
(Signature)    (Date)

Address and telephone number (if different from notice address above):

See above.

Telephone number:                    email:

*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

RECEIVED

MAR 0 4 2013

KURTZMAN CARSON CONSULTANTS

SK 16271 0123 1361790

B 10 (Official Form 10) (12/12)

---

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| | | |
|---|---|---|
| ❑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❑ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❑ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). |
| ❑ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❑ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(2). |

**Amount entitled to priority:**

$ See Addendum attached hereto.

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

---

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: **See Addendum attached hereto.**

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor. ❑ I am the creditor's authorized agent. ❑ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ❑ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | |
|---|---|
| Print Name:  Thomas Musarra | |
| Title:  Senior Vice President | |
| Company:  Law Debenture Trust Company of New York | 2/26/2-13 |
| | (Signature)                               (Date) |

Address and telephone number (if different from notice address above):

See above.

Telephone number: _____ email: _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

SK 16271 0123 1361790

## ADDENDUM TO JOINT PROOF OF CLAIM OF
## WELLS FARGO BANK, N.A., AS TRUSTEE, AND LAW DEBENTURE
## TRUST COMPANY OF NEW YORK, AS SEPARATE TRUSTEE

1.    This joint proof of claim ("**Proof of Claim**") is asserted by both Wells Fargo

Bank, N.A. ("**Wells Fargo**") in its capacity as trustee, indenture trustee, paying agent,

administrator, note registrar, or certificate registrar (collectively in such capacities, the

"**Trustee**"), and Law Debenture Trust Company of New York ("**Law Debenture**") in its

capacity as separate trustee (the "**Separate Trustee**," together with the Trustee, the "**Trustees**")

in respect of certain RMBS Trusts (as defined in paragraph 4 below) for themselves in such

capacities and on behalf of such RMBS Trusts (collectively, the "**Claimants**"), against one or

more of the debtors in these jointly administered cases (collectively, the "**Debtors**"), as set forth

on Schedule A attached hereto.[1]

2.    The obligations of the various Debtors to the Claimants are set forth in, and arise

out of, one or more pooling and servicing agreements, highly integrated sets of "servicing

agreements," mortgage loan purchase agreements, deposit trust agreements, trust agreements,

indentures, asset sale agreements, depositor sale agreements, administration agreements, yield

maintenance agreements and other ancillary transaction documents (collectively, the "**Claimant**

**Transaction Documents**").  Pursuant to the Claimant Transaction Documents, one or more of

the Debtors is obligated to the Claimants in various capacities, including as originator, seller,

sponsor, depositor, limited repurchase right holder, purchaser and similar capacities (collectively

---

[1]    For certain RMBS Trusts for which Wells Fargo serves as Trustee, Law Debenture was appointed Separate
Trustee, pursuant to Instruments of Acceptance and Appointment and orders issued by the District Court, Fourth
Judicial District, State of Minnesota to which the Instruments of Acceptance and Appointment are attached
(collectively, the "**Minnesota Orders**").  As Separate Trustee, Law Debenture is authorized to, among other things,
pursue the claims covered by the RMBS Settlement Agreements.  Each of Wells Fargo and Law Debenture join in
this Proof of Claim to the extent of their respective rights or obligations as Trustee and Separate Trustee respectively
under the Claimant Transaction Documents and the Minnesota Orders.

and in any such capacity, the "**Seller**"), and as servicer, master servicer, subservicer and similar

capacities (collectively and in any such capacity, the "**Servicer**").

## Chapter 11 Case Background

**Bar Date Order**

3.    Pursuant to the **General Bar Date Order**,[2] the Bankruptcy Court set November

9, 2012 as the general deadline for filing proofs of claim against the Debtors (the "**General Bar**

**Date**"). The Bankruptcy Court subsequently extended the General Bar Date to November 16,

2012 at 5:00 p.m. (prevailing eastern time).[3] Pursuant to paragraph 8 of the General Bar Date

Order, proofs of claim asserting claims resulting from the Debtors' rejection of executory

contracts and unexpired leases must be filed by the later of the General Bar Date and thirty (30)

days after the entry of an order of rejection (unless the order of rejection provides otherwise).

**Claims Stipulations**

4.    Pursuant to the **Claims Stipulations**[4], the Trustees, Deutsche Bank National Trust

Association, Deutsche Bank Trust Company Americas, The Bank of New York Mellon, U.S.

Bank, National Association, and The Bank of New York Mellon Trust Company, N.A. (in their

respective capacities as trustees, indenture trustees, securities administrators, and/or other agency

capacities, collectively the "**RMBS Trustees**"), each generally in respect of certain mortgage

backed securities trusts, whole loan servicing agreements, other trusts, net interest margin trusts,

and similar arrangements for which at least one of the RMBS Trustees acts (the "**RMBS**

**Trusts**") agreed with the Debtors that all claims of each RMBS Trustee on behalf of itself and on

---

[2]    *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* dated August 29, 2012 (Docket No. 1309) (the "**General Bar Date Order**").

[3]    *Order Extending Deadline for Filing Proofs of Claim* dated November 7, 2012 (Docket No. 2093).

[4]    *Stipulation and Order Permitting Certain Parties to File Proofs of Claim After the Bar Date* dated November 6, 2012 (Docket No. 2095) and the *Stipulation and Order Permitting Law Debenture Trust Company of New York to File Proofs of Claim after the Bar Date* dated November 16, 2012 (Docket No. 2194) (together, the "**Claims Stipulations**").

behalf of the applicable RMBS Trusts could be asserted by each of the RMBS Trustees in a single proof of claim. Pursuant to the Claims Stipulations, each RMBS Trustee's single proof of claim would constitute the filing of proofs of claim in each of the applicable Debtors' cases so long as each proof of claim sets forth against each specific Debtor, on a trust-by-trust basis, the amount of such claim (or whether the claim is contingent and/or unliquidated), and the capacity in which the RMBS Trustee is acting in asserting the claim. The Claims Stipulations further provide that no documentation in support of each proof of claim need be filed, and that each proof of claim must be filed on or before March 1, 2013.

**9019 Motion**

5.      On June 11, 2012, the Debtors filed their **9019 Motion**,[5] as subsequently supplemented. In the 9019 Motion, the Debtors seek entry of an order approving the compromise and settlement (the "**Repurchase Settlements**") of Buyback Claims (as defined in paragraph 23 below) and Other Representations and Warranties Claims (as defined in paragraph 24 below) against the Debtors held by certain of the RMBS Trusts (the "**Settlement Trusts**"), which, if approved by the Bankruptcy Court, would be offered to the Settlement Trusts.

6.      Pursuant to the Repurchase Settlements, the Settlement Trusts would be granted an allowed aggregate claim of up to $8.7 billion against those Debtors that acted as Sellers of mortgage loans (the "**Allowed Repurchase Claim**"). Under the Repurchase Settlements, the Allowed Repurchase Claim would be allocated among the Settlement Trusts that accept the Repurchase Settlements in accordance with certain formulas set forth in the Repurchase Settlements (as such formulas may be revised, the "**Claim Allocation Methodology**").

---

[5]      *Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (Docket No. 320), as supplemented by the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (Docket No. 1176) and the *Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* (Docket No. 1887) (together, the "**9019 Motion**").

**Final Servicing Order**

7.       Pursuant to the **Final Servicing Order**,[6] the Bankruptcy Court directed the

Debtors to continue performing their servicing obligations in connection with the RMBS Trusts.

As set forth in paragraph 18 of the Final Servicing Order, such obligations include, among other

things, reimbursing, indemnifying, defending and holding harmless the RMBS Trustees (in their

capacities as trustees) and the RMBS Trusts for any liability, loss, or reasonable fees, costs or

expenses (including fees and disbursements of the RMBS Trustees' counsel and agents) incurred

by the RMBS Trustees in performance of their duties under, and their administration of, the

RMBS Trusts or other agencies under the transaction documents relating to the RMBS Trusts

(collectively with the Claimant Transaction Documents, the "**RMBS Trust Transaction**

**Documents**") to the extent required by the RMBS Trust Transaction Documents (the "**RMBS**

**Trustee Expense Claims**").  The Final Servicing Order provides that RMBS Trustee Expense

Claims are to be paid as administrative expense claims under Section 503(b) of the Bankruptcy

Code, although the Debtors, the Creditors' Committee and the United States Trustee have thirty

(30) days after the submission of each invoice for an RMBS Trustee Expense Claim to object to

such claim on the basis of reasonableness.

---

[6]       *Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and
Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs;
(II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action;
(III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases,
and Title Disputes to Proceed, and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees
and Expenses* dated July 13, 2012 (Docket No. 774) (the "**Final Servicing Order**").

**Sale Order**

8.          On November 21, 2012, the Bankruptcy Court entered the **Sale Order**,[7] pursuant

to which the Court approved the sale (the "**Sale**") of the Debtors' servicing platform to Ocwen

Loan Servicing, LLC ("**Ocwen**"), including the Debtors' Servicing Obligations (as defined in

paragraph 25 below) with respect to the RMBS Trusts.  Among other things, the Sale Order

authorizes the Debtors to assume and assign to Ocwen only the Debtors' Servicing Obligations

under any applicable contracts (the "**Servicing Agreements**"), but not any obligations of the

Debtors to the RMBS Trusts with respect to the origination and sale of mortgage loans including,

but not limited to, provisions containing Buyback Claims (as defined in paragraph 23 below) (the

"**Origination-Related Provisions**").

9.          Paragraph 22 of the Sale Order provides that any cure claims that the RMBS

Trusts may have relating to pooling and servicing agreements, mortgage loan purchase

agreements, indentures, servicing agreements and/or trust agreements assumed and assigned in

connection with the Sale (including, without limitation, any claim arising from any argument that

the Debtors did not effectively sever the Origination-Related Provisions or that such provisions

are not otherwise severable in accordance with applicable law in either case solely as it relates to

such claims (the "**RMBS Trust Cure Claims**")) shall be reserved, and to the extent allowed,

shall have administrative expense priority, subject to the terms and conditions provided in the

Scheduling Order (as defined in paragraph 11 below).

10.          Paragraph 35.C of the Sale Order provides that, subject to the terms of the

Scheduling Order, the Debtors shall not be relieved of any liability for, and the RMBS Trusts

---

[7]          *Order under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9019(I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases thereto, (D) Related Agreements; and (II) Granting Related Relief* (Docket No. 2246) (the "*Sale Order*").

may assert claims against the Debtors for, any losses or liabilities suffered prior to the date of the

closing of the Sale (the "**Sale Closing Date**"), or which may be suffered after the Sale Closing

Date, by the RMBS Trusts as a result of any acts or omissions of the Debtors before the Sale

Closing Date (any such claims that may be asserted against the Debtors pursuant to paragraph

35.C of the Sale Order, the "**Servicing Damage Claims**").  Servicing Damage Claims may be

asserted as administrative expense claims by the RMBS Trustees subject to the terms of the Final

Servicing Order within the time period for the assertion of cure claims as provided in the

Scheduling Order.

**Scheduling Order**

    11.    The **Scheduling Order**[8] provides, among other things, that the RMBS Trusts

must file a notice of any alleged RMBS Trust Cure Claims no later than sixty (60) days after the

Sale Closing Date (the "**Cure Claim Deadline**"),[9] provided, however, that if an order has not

been entered with respect to the 9019 Motion on or before the Sale Closing Date, the Settlement

Trusts, whether or not they have accepted or rejected the Repurchase Settlements, shall have

until sixty (60) days (the "**9019 Cure Claim Deadline**") after the entry of an order approving or

disapproving the 9019 Motion to assert cure claims solely related to any Origination-Related

Provisions (the "**Origination Related Cure Claims**").[10]

---

[8]     *Fourth Revised Joint Omnibus Scheduling Order and Provisions for other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements*, dated December 27, 2012 (Docket No. 2528), which amended the *Revised Scheduling Order* (Docket No. 928), the *Second Revised Scheduling Order* (Docket No. 1551) and the *Third Revised Scheduling Order* (Docket No. 1926) (collectively, the "Scheduling Order").

[9]     The Sale Closing Date occurred on February 15, 2013 and pursuant to the Scheduling Order, the Cure Claim Deadline is April 16, 2013.

[10]    The 9019 Cure Claim Deadline cannot be determined at this time as the hearing on the 9019 Motion is scheduled to begin on March 18, 2013 and no order approving or disapproving the 9019 Motion has yet been entered.

12.    Pursuant to the Scheduling Order, all RMBS Trust Cure Claims shall have administrative expense priority except to the extent they exceed the proceeds of the Sale that are attributable to (a) the mortgage servicing rights under the RMBS Trust Transaction Documents for each RMBS Trust (i.e., each RMBS Trust's allocable portion of the mortgage servicing rights included in the price of the servicing platform) and (b) any unpaid reimbursements for servicer advances owing to the Debtors arising under an RMBS Trust Transaction Document that are subject to an RMBS Trust's valid rights of setoff or recoupment.

13.    In addition, the Origination-Related Cure Claims of the Settlement Trusts shall have administrative expense priority except to the extent that, in the aggregate, they exceed the product of (a) the lesser of the aggregate Sale proceeds for all Settlement Trusts or $600 million, multiplied by (b) the percentage represented by (i) the total dollar amount of unpaid principal balance for the Settlement Trusts that do not accept the Repurchase Settlements, divided by (ii) the total dollar amount of unpaid principal balance for all Settlement Trusts, in each case as of the Sale Closing Date.

14.    To the extent that any allowed RMBS Trust Cure Claims or Origination-Related Cure Claims exceed the limitations set forth above in paragraphs 12 and 13, any excess amount shall be treated as general unsecured claims.

**Final DIP Financing Order**

15.    Pursuant to the **Final DIP Order**[11], the RMBS Trustees were granted a superpriority administrative claim pursuant to Bankruptcy Code Section 507(b) to the extent of any diminution in value in their valid setoff rights under Section 553 of the Bankruptcy Code

---

[11]    *Final Order Pursuant to 11 U.S.C. §§ 105, 362, 363(b)(1), 363(f), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 4001 and 6004 (I) Authorizing Debtors (A) to Enter Into and Perform Under Receivables Purchase Agreements and Mortgage Loan Purchase and Contribution Agreements Relating to Initial Receivables and Mortgage Loans and Receivables Pooling Agreements Relating to Additional Receivables and (B) to Obtain Post Petition Financing on a Secured Superpriority Basis, and (ii) Granting Related Relief* dated June 25, 2012 (Docket No. 490) (the **"Final DIP Order"**).

caused by the satisfaction of any amounts the RMBS Trusts owed to the Debtors (the "**Debtor**

**Receivables**") in respect of unpaid reimbursements for advances made by the Debtors as of the

filing dates of the Debtors' chapter 11 cases (the "**Petition Date**"). With respect to the RMBS

Trustees' rights of setoff against Debtor Receivables generated post-petition and rights of

recoupment, the RMBS Trustees' rights are preserved, with the exercise of any such rights

postponed until the full repayment of the DIP Obligations (as defined in the Final DIP Order).

## Background

### Debtors as Sellers

16.    The RMBS Trusts in respect of which this Proof of Claim is filed hold assets that

are comprised of, among other things, pools of mortgage loans.

17.    Typically, under the RMBS Trust Transaction Documents, a seller (in some

instances, one or more of the Debtors) sells, directly or indirectly to a depositor (in some

instances, one of the Debtors) mortgage loans that were originated or otherwise acquired by the

seller. Under transactions involving pooling and servicing agreements and similar agreements,

the depositor pools the mortgage loans and transfers them into one or more RMBS Trusts. With

respect to transactions represented by an indenture, the interest in the pools of mortgage loans

and related agreements are transferred to another trust ("**Other Trust**") acting as a special

purpose vehicle.

18.    Each RMBS Trustee, to the extent of its respective capacity as trustee, if any,

holds on behalf of the applicable RMBS Trust all right, title and interest to the pool of mortgage

loans under the RMBS Trust Transaction Documents for the benefit of the applicable holders of

the RMBS Certificates (the "**RMBS Holders**").

19.    Each RMBS Trustee, to the extent of its respective capacity as indenture trustee,

if any, for the applicable RMBS Trust, is granted a lien on the assets of the Other Trust, which

includes contract rights and mortgage loan pools, for the benefit of the holders of the debt

securities issued pursuant to the indenture (the "**Debt Securities Holders**," and together with the

RMBS Holders, the "**Securities Holders**").

20.    With regard to the mortgage loans that it transfers to the depositor, the Seller

makes numerous representations, warranties and covenants (the "**Mortgage Loan**

**Representations and Warranties**").  The Mortgage Loan Representations and Warranties vary

based on the specific RMBS Trust Transaction Documents, but typically pertain to, among other

things: (a) the standards and practices used in underwriting each mortgage loan; (b) the

creditworthiness of the borrowers on the mortgage loans; (c) the percentage of a mortgage pool

which has certain characteristics, such as owner-occupancy and documentation type; (d) the

disclosure of information on the mortgage loan tapes; (e) the completeness of each mortgage

loan file; (f) the origination of the loans in accordance with applicable federal and state laws;

and/or (g) various characteristics of each specific mortgage loan such as loan-to-value ratio,

debt-to-income ratio, lien position and whether the property mortgaged is owner-occupied.

21.    In addition, the Debtor as Seller or Servicer makes other representations and

warranties including, but not limited to representations and warranties related to the Debtors' due

authorization and corporate authority (the "**Other Representations and Warranties**," and

together with the Mortgage Loan Representations and Warranties, the "**Representations and**

**Warranties**").

22.    The Seller provides indemnities to the depositor and agrees to reimburse the

expenses of certain transaction parties, including the RMBS Trustee (whether as trustee or as

indenture trustee) for breaches of the Mortgage Loan Representations and Warranties.  When the

depositor transfers the pools of mortgage loans to the RMBS Trust or Other Trust, it also assigns

all of its rights in the mortgage loans and under the mortgage loan purchase agreements and other

applicable agreements, including the Mortgage Loan Representations and Warranties, indemnities and reimbursement obligations to the RMBS Trustee, as trustee or indenture trustee on behalf of the RMBS Trust.

23.      Generally, if there is a breach of the Mortgage Loan Representations and Warranties on a specific RMBS Trust that adversely affects the value of the related mortgage loan, the interests of the RMBS Trustee (as legal owner or pledgee of the mortgage loans) or the interests of the Securities Holders, one or more of the Debtors, acting as Seller, is required to cure such defect, repurchase the defective mortgage loan, or, subject to certain conditions, substitute a complying mortgage loan for the defective mortgage loan.  For purposes of this Proof of Claim the phrase, "**Buyback Claims**" refers to claims against the Seller for such cure, repurchase or substitution.

24.      Breaches by one or more of the Debtors of the Mortgage Loan Representations and Warranties have given rise to Buyback Claims, Indemnification Claims (as defined in paragraph 40 below) and reimbursement for, *inter alia*, fees and expenses incurred by the RMBS Trusts.  In addition, such breaches may in the future give rise to claims for breaches of the Other Representations and Warranties (the "**Other Representations and Warranties Claims**" and together with the Buyback Claims, the "**Representations and Warranties Claims**.") by the RMBS Trusts.

**Debtors as Servicers**

25.      Pursuant to the RMBS Trust Transaction Documents, one or more Debtor entities acts or has acted as servicer for some or all of the mortgage loans held by the RMBS Trusts.  As such, the applicable Debtor or Debtors were (or are) responsible for servicing and administering the mortgage loans on behalf of the RMBS Trusts (the "**Servicing Obligations**").

26.    Under the RMBS Transaction Documents, such Servicing Obligations include, but are not limited to, the following:

A.    to provide monthly servicer reports to the RMBS Trustees which include notification of any defaults in the underlying mortgage loans;

B.    to properly advance funds, including to pay all applicable taxes and assessments to the appropriate taxing authority on the entire pool of mortgage loans and to cover any shortfalls from delinquent payments, deposits, reimbursements, remittances, credits, allocations and appropriations;

C.    to enforce all terms and conditions of the mortgage loans, which includes foreclosure;

D.    to give notice of, and enforce, Buyback Claims and Other Representations and Warranties Claims;

E.    to repurchase or substitute defective loans;

F.    to perform all indemnification obligations and defense obligations covering all of the RMBS Trust's and the RMBS Trustee's liability, loss, cost and expense arising from or related to breaches of the servicing or reporting obligations – including fees and expenses, including but not limited to the RMBS Trustee's legal fees, and other costs relating to any transfer of the Debtors' obligations to a successor servicer or otherwise;

G.    to execute, deliver, file and record the necessary documents with respect to the satisfaction and discharge of mortgages, and registrations with MERS (Mortgage Electronic Registration Systems, Inc., a system utilized in connection with the registration and tracking of mortgage loans);

H.    to coordinate and monitor mortgage loan remittances from mortgagors and other remittances relating to the assets, segregating such funds and avoiding any commingling of funds;

I.    to maintain proper levels of coverage on hazard insurance, flood insurance, mortgage insurance, title insurance, fidelity bonds and errors and omissions insurance policies;

J.     to maintain all required licenses, approvals, registrations, permits or other authorizations granted by the applicable Governmental Authority or Mortgage Program Sponsor, such as HUD, Fannie Mae, Freddy Mac, Ginnie Mae;

K.     to provide accurate loan data, remittance advances, reports on defaulted trust assets, mortgage loans, certificates and any necessary supporting documentation, as applicable, maintain appropriate records and files, and provide notice of any event (including defaults) that will adversely affect the RMBS Trustees, the RMBS Trusts or the Securities Holders;

L.     to supervise any and all subservicers that it may contract with, remain obligated and liable for its own conduct or the conduct of subservicers;

M.     to perform obligations related to leases of mortgage loans;

N.     to satisfy any reporting requirements to the SEC and other agencies and to the extent necessary under the Servicing Agreements, provide data to the SEC and other agencies;

O.     to make any and all credits, allocations, remittances, reimbursements of funds according to the procedures set forth in the Servicing Agreements;

P.     to act in good faith and comply with the applicable servicing standard of care as set forth in the Servicing Agreements;

Q.     to comply with all terms of the Servicing Agreements and compensate the RMBS Trusts for any breach of the Servicing Agreements; and

R.     to comply with the requirements for assumption and assignment set forth in the Servicing Agreements, pay for costs associated with the transfer of Servicing Agreements and cooperate in any transfer of the Servicing Agreements.

27.     Pursuant to the Sale Order, the Debtors that performed such Servicing Obligations with respect to such RMBS Trusts will be assuming and assigning to Ocwen all of their rights and obligations as Servicer and administrator with respect to substantially all of the RMBS Trusts. While certain of the Servicing Agreements in respect of certain RMBS Trusts were

assumed and assigned to Ocwen on the Sale Closing Date, to date, none of the Servicing

Agreements that were not assumed and assigned to Ocwen have been rejected.

28.    All the Servicing Obligations described herein have given, and may give, rise to

claims by such RMBS Trusts as a result of the Debtors' failure to comply with such Servicing

Obligations (the "**Other Servicing Claims**").

29.    The RMBS Trust Cure Claims, Servicing Damage Claims, and Other Servicing

Claims are referred to herein collectively as the "**Servicing Claims.**"

## Claims

30.    The Claimants are authorized to file this Proof of Claim against one or more of

the Debtors for claims (as that term is defined by the Bankruptcy Code) under the applicable

Claimant Transaction Documents, the Minnesota Orders, and applicable law and equity.

Notwithstanding the use of the plural word "Claimants" in this Proof of Claim and any other

provisions herein to the contrary, Wells Fargo only asserts those claims hereunder that it is

authorized to assert under the Claimant Transaction Documents and the Minnesota Orders, and

Law Debenture only asserts those claims hereunder that it is authorized to assert under the

Claimant Transaction Documents and the Minnesota Orders.

31.    The obligations that Debtors owe to Claimants upon which this Proof of Claim is

based generally include, but are not limited to, those described in more detail below, and as are

set forth on a trust-by-trust basis on Schedule A attached hereto.[12]

---

[12]    Certain RMBS Trusts are insured by monoline insurers, including but not limited to those listed on
Schedule B attached hereto.  For RMBS Trusts that are insured by monoline insurers, this Proof of Claim includes
additional claims, if any, that Claimants may assert under the applicable Claimant Transaction Documents relating
to monoline insurance.

**Servicing Claims**

32.     All Servicing Claims are to be paid as an expense of administration (except to the

extent otherwise provided in the Scheduling Order).  Because the Cure Claim Deadline and the

9019 Cure Date Deadline have not yet occurred, the Claimants do not set forth the Servicing

Claims amounts herein, but make reference to them as set forth on a trust-by-trust basis on

Schedule A hereto.  Claimants hereby assert all Servicing Claims as claims having administrative

expense priority, and, to the extent any Servicing Claims are subject to and exceed the caps set

forth in the Scheduling Order, as general unsecured claims.

33.     Further, to the extent that the Servicers may in the future reject certain Servicing

Agreements with respect to the RMBS Trusts, the Claimants assert that the RMBS Trusts may

have both administrative priority claims and unsecured claims for damages arising prior to such

rejection. Upon the rejection, if any, of the Servicing Agreements related to the RMBS Trusts,

the Claimants will amend this Proof of Claim to assert any such damages.

**Representations and Warranties Claims**

34.     Claimants assert this Proof of Claim against the Debtors for any and all

Representations and Warranties Claims relating to, among other things, (i) Other Representations

and Warranties Claims regarding, for example the Debtors' due authorization and corporate

capacity and (ii) all Buyback Claims resulting from breaches of the Mortgage Loan

Representations and Warranties of the Seller relating to the mortgage loans of the RMBS Trusts

for which the Trustees act.

35.     Pursuant to the Claimant Transaction Documents and the Minnesota Orders, the

Claimants are given the power and authority to enforce the Debtors' Representations and

Warranties Claims.  Accordingly, the responsible Debtor entities are liable to the Claimants and

the RMBS Trusts for which the Trustees act for all liabilities, losses, costs and expenses arising

from the Representations and Warranties Claims (including the costs and expenses of

enforcement of these obligations).

36.    As set forth above, pursuant to the 9019 Motion, the Debtor has proposed to settle

the RMBS Trustees' Buyback Claims with respect to the Settlement Trusts for the $8.7 million

Allowed Repurchase Claim, to be allocated in accordance with the Claims Allocation

Methodology. Duff & Phelps, LLC, the financial advisor retained by the RMBS Trustees to

evaluate, among other things, the amount of the Allowed Repurchase Claim offered in the

Repurchase Settlements, has confirmed that the $8.7 billion Allowed Repurchase Claim falls

within a reasonable range as a settlement amount for all the Settlement Trusts with respect to

their Buyback Claims against the Debtors.[13]  Therefore, as set forth on Schedule A hereto, for

each RMBS Trust that is a Settlement Trust, whether or not the 9019 Motion is approved by the

Court, or whether or not a Settlement Trust ultimately accepts the Repurchase Settlements, the

Claimants assert a Buyback Claim for an amount not less than its allocable portion of the

Allowed Repurchase Claim of $8.7 billion.[14]

37.    To the extent a RMBS Trust is not identified as a Settlement Trust, the Claimants

assert a Buyback Claim, as set forth on a trust-by-trust basis on Schedule A hereto, in an

unliquidated amount to be determined by utilizing a methodology similar to the Claims

Allocation Methodology used for allocating the Allowed Repurchase Claim among the

Settlement Trusts.

---

[13]    *See RMBS Trustee's Statement Regarding Debtors' Motion Pursuant to Fed.R. Bankr. P. 9019 For
Approval of RMBS Trust Settlement Agreement*, dated December 14, 2012 and filed on February 4, 2013 (Docket
No. 2833).

[14]    The Debtors' actual liability for the Representation and Warranties Claims for the Settlement Trusts could
be much higher than the $8.7 billion settlement amount if the 9019 Motion is approved fixing a higher amount for
the Allowed Repurchase Claim, or if the 9019 Motion is not approved by the Court.

38.     The Claimants assert Other Representations and Warranties Claims against the

Sellers and Servicers, as set forth on a trust-by-trust basis on Schedule A hereto, in an

unliquidated, or contingent and unliquidated, amount.

**Indemnification Claims**

39.     Claimants have incurred, and will continue to incur, legal and other expenses

enforcing the Claimant Transaction Documents, including, but not limited to, enforcing the

payment of the claims described in this Proof of Claim.

40.     Pursuant to the Claimant Transaction Documents, the Debtors as Servicers and

Sellers have agreed to indemnify and hold harmless the Claimants against any losses, claims,

expenses or damages, including legal fees and related costs (including fees and expenses of

Claimants' counsel), arising out of or based upon different circumstances including but not

limited to (i) the performance and exercise by the claimants of their obligations and rights under

the Claimant Transaction Documents, and (ii) any Representations and Warranties Claims or

Servicing Claims (collectively, the "**Indemnification Claims**").

41.     Pursuant to the Final Servicing Order, the Debtors as Servicer have agreed to

reimburse and indemnify the Claimants for any liability, loss, or reasonable fees, cost or expense

(including fees and disbursements of the Trustees' counsel or agents) incurred by the Trustees in

performance of their duties, the administration of their duties, or the administration of the RMBS

Trusts to the extent required under the Claimant Transaction Documents, as administrative

claims under Section 503 of the Bankruptcy Code.

42.     Likewise, under paragraph 36 of the Sale Order, the Debtors remain obligated to

pay the RMBS Trustees' expenses as administrative expense claims under section 503(b) of the

Bankruptcy Code, subject to the terms of the Final Servicing Order.

16

43.     Such Indemnifications Claims accrued prior to, and have been accruing since, the

Petition Date and will continue to accrue.  To date, the Debtors have paid certain invoices that

the Trustees have submitted after the Petition Date pursuant to the Final Servicing Order or the

Sale Order.  The Trustees will continue to submit invoices for the payment of such amounts as

set forth in the Final Servicing Order and the Sale Order.  However, should the Debtors fail to

pay any such invoices, Claimants hereby assert an administrative expense claim for such

amounts.  All Indemnification Claims are as set forth on a trust-by-trust basis on Schedule A

hereto.

**Fraud/Negligent Misrepresentation Claims**

44.     Claimants allege that, to the extent a Seller of mortgage loans to the RMBS Trusts

knew or should have known of certain breaches of the Mortgage Loan Representations and

Warranties, including that, at the time the Seller transferred the mortgage loans to certain of the

RMBS Trusts, it knew that the mortgage loans did not comply with the Mortgage Loan

Representations and Warranties, the Claimants have a claim for common law fraud and/or

negligent misrepresentation (the "**Fraud/Negligent Misrepresentation Claims**"). Such claims

are measured by the impact, if any, of such breaches on the cash flows to the RMBS Trusts.

Such claims are asserted against the Debtors as set forth on a trust-by-trust basis on Schedule A

hereto.

**Alter Ego and Veil Piercing Claims**

45.     Claimants reserve the right to assert, on behalf of any of the RMBS Trusts listed

on Schedule A attached hereto, that the corporate veils of Residential Capital LLC ("**Holdco**") or

other Debtors should be pierced, or that HoldCo or other Debtors are the alter ego of the

Debtor(s).

**Setoff and Recoupment Rights**

46.    Claimants have setoff rights under New York common and statutory law (which governs substantially all of the Claimant Transaction Documents) (N.Y. DEBT & CRED. LAW § 151) which are preserved under Section 553(a) of the Bankruptcy Code. Pursuant to such setoff rights, Claimants may setoff the claims of the RMBS Trusts for which the Trustees act (which are indebtedness of the Debtors to those RMBS Trusts) against reimbursements for advances (which are indebtedness of those RMBS Trusts to the Debtors) or any other amounts those RMBS Trusts owe to the Debtors, including servicing fees.

47.    Claimants also have rights of recoupment under New York law whereby cross demands arising out of the same transaction between a RMBS Trust for which the Trustees act and a Debtor are applied to offset one another with only the balance to be recovered by Claimants.

48.    Pursuant to the Final DIP Order, the Claimants' setoff and recoupment rights have been preserved. By this claim, Claimants specifically assert the right to exercise such setoff and recoupment rights (after obtaining relief from the automatic stay to the extent applicable to such rights) against the Debtors in order to satisfy the claims of each of the RMBS Trusts listed on Schedule A hereto.

**Other Claims**

49.    Claimants may have additional claims arising under and relating to the Claimant Transaction Documents separate from the Servicing Claims, Representations and Warranties Claims, Indemnification Claims, Fraud/Negligent Misrepresentation Claims, and Alter-Ego Claims (collectively, the "**Other Claims**"), that are hereby preserved and asserted for each of the RMBS Trusts listed on Schedule A hereto.

**Miscellaneous**

50.      This Proof of Claim is filed under compulsion of the bar date established under

the Claims Stipulations and is filed to protect the Claimants from forfeiture by reason of said bar

date. This Proof of Claim is based on all the Debtors' obligations under all of the Claimant

Transaction Documents with respect to the RMBS Trusts for which the Trustees act and

encompasses and includes all obligations and indemnities under the Claimant Transaction

Documents and such RMBS Trusts, including those obligations, indemnities, RMBS Trusts and

Debtors that are not specifically listed or referenced herein or on Schedule A, in connection with

which Claimants are in the process of completing their due diligence.

51.      To date, the Debtors have not, to the best knowledge of the Claimants, rejected

any of the Claimant Transaction Documents that are executory contracts. Accordingly, under the

General Bar Date Order and the Claims Stipulations, the bar date for filing a Proof of Claim in

respect of damages owing as a result of the rejection of such contracts will be 30 days after the

date after the entry of an order authorizing the rejection of such contracts (unless such order

provides otherwise). Nothing asserted herein is intended to be, or shall be, a waiver of any claim

against the Debtors for damages caused by rejection of executory contracts and Claimants

reserve the right to amend this Proof of Claim, including, without limitation, the right to add,

supplement or amend any claims arising under such contracts.

52.      By executing and filing this Proof of Claim, Claimants do not waive any rights,

remedies, liens, interests, priorities, protections, claims, or any other rights to any security or any

other rights with respect to any claim that Claimants have or may have against Debtors or any

other person or persons. The filing of this Proof of Claim is not intended and should not be

deemed or construed to be an election of remedies or waiver of any past, present or future

defaults or events of default under the Claimant Transaction Documents.

53.    Except as set forth herein, the claims asserted herein are not subject to any setoff or counterclaim, and no judgment has been rendered on the claims. The amount of all payments made prior to the Petition Date, if any, have been credited and deducted.

54.    Claimants reserve their rights to replace, restate, amend and/or supplement this Proof of Claim to file additional proofs of claim or further pleadings for additional claims, and to assert any and all other claims, actions, defenses, setoffs, recoupments, rights or remedies of whatever kind or nature that they currently have, or may have in the future against the Debtors and/or any subsidiary or affiliate thereof, or any other person, including without limitation, rights against guarantors, officers and directors, and other creditors of the Debtors, at law or in equity, including but not limited to, administrative or other priority claims, the right to seek adequate protection, rejection damage claims, future Representations and Warranties Claims, Servicing Claims, setoff and recoupment rights, lien rights, interest, and the right to assert claims that are otherwise warranted in any related actions.  The filing of this Proof of Claim shall not be deemed a waiver of, or other limitation on, any such claims, actions, defenses, setoffs, recoupments, rights or remedies and such claims, actions, defenses, setoffs, recoupments, rights and remedies are expressly reserved.

55.    The filing of this Proof of Claim is not intended to be and nothing contained in this Proof of Claim shall be deemed or construed as: (a) a consent by Claimants to the jurisdiction of the Bankruptcy Court or any other court with respect to the subject matter of this Proof of Claim, any objection or other proceeding, if any, commenced in any case against, or otherwise involving Claimants, (b) a waiver or release of, or any limitation on Claimants' right to trial by jury in the Bankruptcy Court or any other court in any proceeding; (c) a consent by Claimants to trial by jury as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto pursuant to 28 U.S.C. § 157(e) or otherwise; (d) a waiver or release

of, or any other limitation on, Claimants' or rights to have any orders entered in non-core matters

only after *de novo* review by the United States District Court; (e) a waiver of, or any other

limitation on, Claimants' right to (i) move to withdraw the reference, or otherwise challenge the

jurisdiction of this Court with respect to any matter, including any matter relating to this Proof of

Claim or any objection or other proceeding commenced in this case against or otherwise

involving Claimants, or (ii) assert that the reference has already been withdrawn with respect to

the subject matter of this Proof of Claim, any objection or other proceeding commenced in this

case against or otherwise involving Claimants, (f) a waiver of the rights and remedies against any

person or entity who may be liable for all or a part of the claims set forth herein, whether an

affiliate or guarantor of the Debtors or otherwise; (g) an admission by the Claimants that any

property held by the Debtors (or any subsidiaries or affiliates thereof) is property of any of the

Debtors' estates; or (h) a waiver or release of, or any other limitation on, Claimants' right to

assert that any portion of the claims asserted herein or any other claims are entitled to treatment

as priority claims, including under sections 503(b) and 507(a)(1) of the Bankruptcy Code.

56.    Claimants specifically preserve all of their procedural and substantive defenses

and rights with respect to any claim or counterclaim, including, but not limited to, with respect to

jurisdictional issues, that may be asserted against Claimants by the Debtors, any of its successors

or assigns or by any bankruptcy trustee for the Debtors' estates.

57.    Claimants assert that any funds, property or collateral held by any RMBS Trust

listed on Schedule A hereto or certain funds or property held by the Debtors relating to the

Claimant Transaction Documents are not property of the Debtors' estates but are property of the

RMBS Trusts or other parties having a beneficial interest therein and that the possession or

assertion of rights over such funds, property or collateral by the Debtors do not transform such

funds, property or collateral into property of the Debtors' estates and therefore the Debtors have

21

no legitimate legal right to hold or to prevent the transfer of such funds, property, collateral or

the proceeds thereof to third parties under the terms of the relevant documents.

58.    The Securities Holders may make separate claims against the Debtors or their

affiliates that are not indicated in this Proof of Claim and nothing contained herein shall

prejudice such claims or be construed as a waiver of any rights or remedies of the Securities

Holders under the Claimant Transaction Documents.

59.    Other non-Debtor parties to the RMBS Trusts for which the Trustees act,

including, without limitation, securities underwriters, depositors, loan servicers, certificate

insurers, including but not limited to, the monoline insurers, and investors, may file proofs of

claim in these cases relating to the Claimant Transaction Documents, that may be duplicative of,

or supplemental to, the claims stated herein (the "**Third Party Trust Related Claims**").  To the

extent that such Third Party Trust Related Claims are property of such RMBS Trusts, Claimants

incorporate such Third Party Trust Related Claims herein by reference.

60.    Notices regarding this Proof of Claim should be sent to:

For the Trustee:

Alston & Bird LLP
c/o John C. Weitnauer, Esq.
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

-and-

Wells Fargo Bank, N.A.
c/o Mary L. Sohlberg, Vice President
Structured Products Services
625 Marquette Avenue, 16th Floor
Minneapolis, Minnesota 55402

For the Separate Trustee:

Seward & Kissel, LLP
c/o Dale C. Christensen, Jr., Esq.
One Battery Park Plaza
New York, NY 10004

-and-

Law Debenture Trust Company of New York
c/o Thomas Musarra, Senior Vice President
400 Madison Avenue, Suite 4D
New York, NY 10017

## SCHEDULE A

The following applies for all claims listed in this Schedule A.

1.    All terms not defined on this Schedule A shall have the meanings ascribed to them in the Addendum to this Proof of Claim.  Each specific Debtor capacity as regards each RMBS Trust is listed to the extent such specific capacities are known to the Claimants. Claimants reserve the right to amend this Proof of Claim to assert such other Debtor capacities.

2.    Settlement Trusts will be indicated by the name of the RMBS Trust followed by "**(S)**".

3.    For purposes of this Schedule A the following definitions apply to the Debtor entities: "**GMACM**" shall mean GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation). For the purposes of this Schedule A, any predecessors to the Debtor entities listed on Schedule A are included in the definition for each Debtor.

4.    For purposes of this Schedule A the following definitions apply:  "**SC**" shall mean Servicing Claim, including Origination-Related Cure Claims, "**IC**" shall mean Indemnification Claim, "**ORWC**" shall mean Other Representations and Warranties Claim, "**BC**" shall mean Buyback Claim, "**F/NM**" shall mean Fraud/Negligent Misrepresentation Claim, and "**OC**" shall mean Other Claims.  Servicing Claims are asserted as administrative expense claims to the extent they are subject to the caps set forth in the Scheduling Order and general unsecured claims to the extent they exceed such caps.

5.    For purposes of this Schedule A the following definitions apply in connection with the amounts of claims asserted:  "**APAR**" means no less than allocable portion of Allowed Repurchase Claim, or, if the 9019 Motion is not approved or is approved fixing a higher amount for the Allowed Repurchase Claim, an unliquidated claim or a contingent and unliquidated claim, and "**C/U**" means unliquidated, or contingent and unliquidated.

6.    For purposes of this Schedule A the following claims are asserted in the following amounts:  all Settlement Trust **BC** claims are asserted in the amount of APAR; and all other claims are asserted as C/U claims.

7.    Certain of the RMBS Trusts listed herein may also be listed on proofs of claim filed by other entities (including other RMBS Trustees) in capacities other than the Trustee or Separate Trustee's capacity as set forth herein.

8.    To the extent Claimants have not yet completed their due diligence, Claimants reserve their rights to amend this Schedule A to add other Debtors, other RMBS Trusts, and additional claims.

**Schedule A**

| Name of Securitization Trust | Claimant Capacity | Debtor/Capacity | Type of Claim |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2006-AR1(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2004-HE1(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2004 HE-2(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |

| Name of Securitization Trust | Claimant Capacity | Debtor/Capacity | Type of Claim |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2004-HE5(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2004 VFT(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2005-AA1(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2005-HE1(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |

| Name of Securitization Trust | Claimant Capacity | Debtor/Capacity | Type of Claim |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2005-HE2(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2006-J1(S) | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2000-HE2 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2000-HE4 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |

| Name of Securitization Trust | Claimant Capacity | Debtor/Capacity | Type of Claim |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2002-HE1 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2002-HE3 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2002-HE4 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| GMACM Home Equity Loan Trust 2003-HE1 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |

| Name of Securitization Trust | Claimant Capacity | Debtor/Capacity | Type of Claim |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2003-HE2 | Trustee and Separate Trustee | GMACM/Seller | BC |
| | | | ORWC |
| | | | IC |
| | | | F/NM |
| | | | OC |
| | | GMACM/Servicer | SC |
| | | | ORWC |
| | | | IC |
| | | | OC |
| | | | |

## Schedule B

| Name of Securitization Trust | Monoline Insurer |
| --- | --- |
| GMACM Home Equity Loan Trust 2004-HE1(S) | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2004-HE5(S) | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2004 VFT(S) | MBIA Insurance Corporation |
| GMACM Home Equity Loan Trust 2005-HE1(S) | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2005-HE2(S) | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2000-HE2 | MBIA Insurance Corporation |
| GMACM Home Equity Loan Trust 2000-HE4 | MBIA Insurance Corporation |
| GMACM Home Equity Loan Trust 2002-HE1 | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2002-HE3 | MBIA Insurance Corporation |
| GMACM Home Equity Loan Trust 2002-HE4 | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2003-HE1 | Financial Guaranty Insurance Company |
| GMACM Home Equity Loan Trust 2003-HE2 | Financial Guaranty Insurance Company |