# Exhibit 10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In the Matter of the Rehabilitation of
FINANCIAL GUARANTY INSURANCE
COMPANY.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

: Index No. 401265/2012
:
: Doris Ling-Cohan, J.
:
: Motion Sequence No. ____
:
: **AFFIRMATION**

Gary T. Holtzer, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statements under penalty of perjury pursuant to CPLR 2106:

1. I am a partner with Weil, Gotshal & Manges LLP, attorneys for Benjamin M. Lawsky, Superintendent of Financial Services of the State of New York (the "**Superintendent**"), as the court-appointed rehabilitator (the "**Rehabilitator**") of Financial Guaranty Insurance Company ("**FGIC**").

2. I am fully familiar with all of the prior pleadings and proceedings that have taken place in this matter.

3. I respectfully submit this affirmation in support of (i) the motion by the Rehabilitator for an order pursuant to Section 7428 of the New York Insurance Law (the "**NYIL**"), substantially in the form attached hereto as **Exhibit A** (the "**Court Order**"), approving (a) that certain Settlement Agreement among Residential Capital, LLC and its fifty direct and indirect subsidiaries listed on Exhibit A to the Settlement Agreement (collectively, the "**Debtors**"), FGIC, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture

trustees or separate trustees (collectively, the "**Trustees**") under the Trusts,[1] and a group of investors that hold Securities (defined below) issued by the Trusts and insured by FGIC (the "**Institutional Investors**"[2] and, together with the Debtors, FGIC and the Trustees, the "**Settlement Parties**"), dated as of May 23, 2013, a copy of which is attached hereto as **Exhibit B** (the "**Settlement Agreement**"), and (b) that certain Plan Support Agreement entered into among the Debtors, Ally Financial Inc. ("**AFI**"), on its own behalf and on behalf of its direct and indirect subsidiaries excluding the Debtors, the Official Committee of Unsecured Creditors of the Debtors (the "**Creditors' Committee**"), FGIC and the other Consenting Claimants (as defined therein), dated May 13, 2013, a copy of which is attached hereto as **Exhibit C** (the "**Plan Support Agreement**"), to the extent that such Plan Support Agreement relates to FGIC and (ii) entry of the order to show cause filed contemporaneously herewith (the "**Order to Show Cause**").

Upon information and belief affirmant further swears to the following:

**Background**

4.     Prior to or during 2007, certain Debtors originated or acquired residential mortgage loans that were contributed or sold to 47 Trusts pursuant to documents referred to as the "Governing Agreements."    The Trusts issued securities, notes, bonds, certificates and/or other instruments backed by the residential mortgage loans (the "**Securities**") to investors (the

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

[2] The Institutional Investors include:    AEGON USA Investment Management, LLC; Angelo, Gordon & Co., L.P.; Cascade Investment, LLC; Federal Home Loan Bank of Atlanta; Goldman Sachs Asset Management, L.P.; ING Investment Management Co. LLC; ING Investment Management, LLC; Bayerische Landesbank; BlackRock Financial Management Inc.; Kore Advisors, L.P.; Pacific Investment Management Company LLC; Metropolitan Life Insurance Company; Neuberger Berman Europe Limited; SNB StabFund; The TCW Group, Inc.; Teachers Insurance and Annuity Association of America; Thrivent Financial for Lutherans; Western Asset Management Company; and certain of their affiliates, either in their own capacities or as advisors or investment managers.

2

"**Investors**").    The Securities were issued in multiple series and tranches.    Pursuant to 60 Policies, FGIC insured the payment of principal and interest of certain of the Securities. Pursuant to related Policy Agreements, certain Debtors agreed to reimburse FGIC for certain claims paid under the Policies.

5.    As of March 31, 2013, the aggregate par amount outstanding covered by the Policies was approximately $4.9 billion.    As of such date, (i) FGIC had paid approximately $343.2 million of claims under the Polices for which it has not yet been reimbursed, (ii) approximately $789 million of additional claims had been asserted against FGIC that remain unpaid and (iii) the present value of losses FGIC projected to arise under the Policies exceeded $400 million.

6.    In 2011 and 2012, FGIC commenced the Prepetition Litigation against Residential Capital, LLC ("**ResCap, LLC**"), GMAC Mortgage, LLC ("**GMACM**"), and Residential Funding Company, LLC ("**RFC**"), three of the Debtors, as well as AFI and Ally Bank, two non-Debtor affiliates of ResCap, LLC, alleging, among other things, breaches of contractual representations and warranties and fraudulent inducement relating to the Policy Agreements and the Governing Agreements.

7.    On May 14, 2012, the fifty-one Debtors commenced jointly administered cases under chapter 11 of title 11 of the United States Code captioned *In re Residential Capital LLC*, Ch. 11 Case No. 12-12020 (MG) (Bankr. S.D.N.Y. 2012) (the "**Chapter 11 Cases**"), which cases are currently pending before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").    The commencement of the Chapter 11 Cases automatically stayed the Prepetition Litigation against the three Debtor-defendants.    On November 16, 2012, FGIC filed proofs of claim in the Chapter 11 Cases against ResCap, LLC,

3

GMACM and RFC, the three Debtor-defendants in the Prepetition Litigation, in an aggregate amount of at least $1.85 billion in connection with, among other things, the Prepetition Litigation (collectively, the "**FGIC Claims**").

8.  On June 28, 2012, this Court signed an order pursuant to Section 7403(a) of the NYIL (i) appointing the Superintendent as Rehabilitator of FGIC, (ii) directing the Rehabilitator to take possession of the property and assets of FGIC and to conduct the business thereof and (iii) directing the Rehabilitator to take steps toward the removal of the causes and conditions that have made the above-captioned rehabilitation proceeding necessary.

**Resolution of Policy Claims and the FGIC Claims**

9.  After his appointment, the Rehabilitator and the Settlement Parties engaged in extensive negotiations in an effort to resolve the current and future claims against FGIC under the Policies, as well as the FGIC Claims against ResCap, LLC, GMACM and RFC. These discussions culminated in execution of the Settlement Agreement, which resolves the Settlement Parties' respective rights, obligations and liabilities under or with respect to the Policy Agreements, the Governing Agreements and the FGIC Claims on the terms and conditions set forth in the Settlement Agreement, as described below.  The effectiveness and consummation of the settlements, releases and other transactions contemplated by the Settlement Agreement are expressly contingent on approval of the Settlement Agreement by this Court and by the Bankruptcy Court.  Accordingly, the Debtors will file a motion pursuant to Fed. R. Bankr. P. 9019 seeking an order of the Bankruptcy Court approving the Settlement Agreement.

*Policy Claims*

10.  Pursuant to the Settlement Agreement, the Trustees as policyholders will fully and completely release and discharge FGIC from all obligations and liabilities under or

4

otherwise relating to the Policies, including the $789 million of existing unpaid claims, as well as all future claims that may arise under the Policies.  In exchange, FGIC will (i) pay to the Trustees, for distribution to Investors holding Securities insured by the Policies, an aggregate amount in cash equal to $253.3 million (the "**Payment Amount**") and (ii) forgo future premiums with respect to the Policies, which are projected to aggregate approximately $18.3 million.  The Payment Amount plus the amount of premiums FGIC is forgoing is significantly less than the amount of existing unpaid claims under the Policies plus the present value of the losses FGIC currently expects to arise thereunder.

11.    Pursuant to the Settlement Agreement, the Trustees will determine the portion of the Payment Amount that will be allocated to each Trust in accordance with the methodology set forth in Exhibit F to the Settlement Agreement, and notify FGIC in writing of such allocation on or before July 3, 2013.  In addition, the Trustees have represented that, as of July 3, 2013, they will make available to any Investor holding Securities insured by a Policy the portion of the Payment Amount that will be allocated to the Trust that issued such Securities, provided that any such Investor submits a proper request for such information to the Trustee for such Trust, and provides appropriate verification of its holdings, in accordance with the terms and conditions of the relevant Governing Documents.

12.    Although the Trustees are the exclusive holders of the Policies, the Settlement Agreement and the proposed Court Order provide that the resolution set forth in the Settlement Agreement (once effective) will be binding on all Investors holding Securities insured by the Policies, and any other persons or entities who are served with notice of this Affirmation pursuant to the Order to Show Cause.  As a result, the Rehabilitator deemed it advisable to serve all Investors (including those holding Securities insured by the Policies, as well as those

5

holding Securities that were not insured by FGIC) with notice of the Settlement Agreement and to seek Court approval thereof.

*FGIC Claims*

13. The Settlement Agreement also provides that the FGIC Claims will be deemed allowed as general unsecured claims against each of ResCap, LLC, GMACM and RFC. The amount of the FGIC Allowed Claims (as defined in the Settlement Agreement) depends on whether the chapter 11 plan for the Debtors contemplated by the Plan Support Agreement (the "**Proposed Chapter 11 Plan**") goes effective. If the Proposed Chapter 11 Plan is confirmed by the Bankruptcy Court and goes effective, the amount of the FGIC Allowed Claims will be the aggregate and allocated amounts described in paragraph 2 of page 6 of the Supplemental Term Sheet attached to the Plan Support Agreement as Exhibit B (the "**Supplemental Term Sheet**"), as such amounts may be adjusted, amended or revised by agreement of the Debtors, the Creditors' Committee and the other parties to the Plan Support Agreement. The Supplemental Term Sheet currently provides that the FGIC Claims will be allowed against ResCap, LLC in the amount of $337.5 million, GMACM in the amount of $181.5 million and RFC in the amount of $415 million, for a total FGIC Allowed Claims amount of $934 million, which is projected to yield a recovery of approximately $206.5 million, or 8.7% of the Debtors' available estate assets, as set forth on Annex I of the Supplemental Term Sheet.

14. If, on the other hand, the Plan Support Agreement is terminated in accordance with its terms or the Proposed Chapter 11 Plan does not go effective, the amount of the FGIC Allowed Claims will be $596.5 million in the aggregate, which amount (i) is equal to the sum of the $343.2 million of claims that FGIC previously paid under the Policies for which it has not been reimbursed plus the $253.3 million Payment Amount it is paying on account of

6

current and projected future unpaid claims and (ii) will be allocated among ResCap, LLC, GMACM and RFC based on which of those Debtors would be obligated to reimburse FGIC for such payments.   In addition, FGIC will have the right to assert a general unsecured claim for up to $596.5 million against each of ResCap, LLC, GMACM and RFC (including any related FGIC Allowed Claim amount against such entity).   The Settlement Agreement also provides that if the Plan Support Agreement is terminated in accordance with its terms, the FGIC Allowed Claims will be treated *pari passu* with other unsecured claims allowed against ResCap, LLC, GMACM, and RFC in the Chapter 11 Cases.

15.    In exchange for the allowance and treatment of the FGIC Claims described above, FGIC will release and fully discharge the Debtors from all additional obligations and liabilities related to the FGIC Claims, including the Prepetition Litigation. Importantly, however, the Settlement Agreement is not intended to, and should not be construed as, a settlement, termination, release, discharge or waiver of any claims (including with respect to the Prepetition Litigation) FGIC may have against non-Debtor affiliates of ResCap, LLC (including AFI and Ally Bank) or such entities' Representatives, which claims are addressed in the Plan Support Agreement, as discussed below.

16.    At this time, no chapter 11 plan has been filed in the Chapter 11 Cases, and FGIC's projected recovery on account of the FGIC Allowed Claims is uncertain.   However, as explained herein, if the Proposed Chapter 11 Plan is filed pursuant to the Plan Support Agreement, and such plan is approved by the Bankruptcy Court and becomes effective, under the terms of that plan, FGIC's aggregate recovery on account of the FGIC Allowed Claims is projected to be approximately $206.5 million.[3]    The Settlement Agreement, however, is

---

[3] For the avoidance of doubt, in the event that the Plan Support Agreement terminates in accordance with its terms, FGIC reserves its right to seek a recovery of up to $596.5 million against each of ResCap LLC,

7

independent of and not contingent on the filing, approval or effectiveness of any chapter 11 plan for the Debtors, pursuant to the Plan Support Agreement or otherwise, or FGIC receiving a minimum recovery under any plan.

### Resolution of FGIC's Claims against AFI and Ally Bank

17. As part of a lengthy Bankruptcy Court-ordered mediation that lasted for several weeks under the guidance of the Honorable James M. Peck, United States Bankruptcy Judge, Southern District of New York, FGIC engaged in extensive negotiations with the Debtors and other key constituents in the Chapter 11 Cases (including AFI, the Creditors' Committee, the other Settlement Parties and the other Consenting Claimants) in an effort to reach a global resolution of the Chapter 11 Cases. Due in large part to FGIC's agreement to settle the approximately $1.85 billion of FGIC Claims pursuant to the terms and conditions of the Settlement Agreement described above, the mediation successfully culminated in the consensual execution of the Plan Support Agreement, which sets forth the terms of the Proposed Chapter 11 Plan. Notably, pursuant to the Plan Support Agreement, AFI has agreed to contribute $1.95 billion in cash and $150 million of certain insurance settlement proceeds to the Debtors' estates and creditors, for a total contribution of $2.1 billion. In exchange, pursuant to the Proposed Chapter 11 Plan, AFI and its non-Debtor affiliates, including Ally Bank, will be fully discharged and released from any and all claims arising from or related to the Debtors, including FGIC's Prepetition Litigation claims against AFI and Ally Bank. As explained above, FGIC's recovery under the Proposed Chapter 11 Plan (if such plan becomes effective) is projected to be

---

GMACM and RFC (subject to the terms and conditions of the Settlement Agreement), as well as to seek maximum recovery on account of any claims it may have against non-Debtor affiliates of ResCap, LLC, including AFI and Ally Bank.

8

approximately $206.5 million (which amount includes funds contributed by AFI), subject to adjustment based on the amount of claims and expenses ultimately allowed against the Debtors.

18.    The effectiveness of the Proposed Chapter 11 Plan is contingent on, among other things, this Court's approval of (i) the Settlement Agreement, including the settlement and release of all present and future claims against FGIC under or related to the Policies and (ii) FGIC's obligations and agreements pursuant to the Plan Support Agreement, including FGIC's discharge and release of AFI and Ally Bank from any and all claims arising from or related to the Debtors (including with respect to the Prepetition Litigation).    In particular, the Plan Support Agreement may be terminated if this Court does not approve the Settlement Agreement and the Plan Support Agreement on or before August 19, 2013. Accordingly, it is imperative that the relief requested in this Affirmation be considered within the timeframes set forth in the Order to Show Cause.

**Relief Requested**

19.    On behalf of the Rehabilitator, I respectfully request that the Court enter the Court Order approving (i) the Settlement Agreement and the transactions contemplated thereby and providing that the Settlement Agreement is binding on all Investors holding Securities insured by the Policies and any other persons or entities who are served with notice of this Affirmation pursuant to the Order to Show Cause and (ii) the Plan Support Agreement as it relates to FGIC.    As discussed above, the key features of the Settlement Agreement are the settlement and release of FGIC's obligations and liabilities under or with respect to the Policies and the allowance of the FGIC Allowed Claims, in exchange for FGIC paying the Payment Amount, forgoing future premiums with respect to the Policies and releasing the Debtors from additional obligations and liabilities related to the FGIC Claims.    FGIC's rights and obligations

9

under the Plan Support Agreement include FGIC's release and discharge of AFI and Ally Bank from all claims arising from or in any way related to the Debtors in exchange for FGIC's receipt of approximately $206.5 million of plan value, including funds contributed by AFI, on account of the FGIC Allowed Claims.

20.   Finally, I respectfully request that the Court enter the Order to Show Cause, which sets the date for a hearing to consider entry of the Court Order (the "**Hearing**") and deadline to object to the relief requested herein, and alternatively provides that the Court may enter the Court Order without holding the Hearing if no objections are received.

### The Court Should Approve the Settlement Agreement

21.   The Rehabilitator, in consultation with his counsel, his counsel's financial advisor, FGIC and FGIC's advisors, carefully reviewed the circumstances surrounding the Settlement Agreement and respectfully recommends and requests that the Court approve the Settlement Agreement and the transactions contemplated thereby for several reasons.   First, consummation of the transactions contemplated by the Settlement Agreement would release FGIC of its obligations and liabilities with respect to the Policy Agreements and the Governing Agreements, including approximately $789 million in claims currently pending against FGIC, as well as over $400 million of claims FGIC currently projects will arise under the Policies in the future.   Second, the FGIC Claims would be deemed allowed against each of ResCap, LLC, GMACM and RFC in the aggregate amount of (i) approximately $934 million, if the Proposed Chapter 11 Plan goes effective or (ii)$596.5 million, if the Plan Support Agreement is terminated in accordance with its terms or the Proposed Chapter 11 Plan does not go effective, subject to FGIC's right to assert a claim against each of ResCap, LLC, GMACM and RFC, in each case up to the amount of $596.5 million (including any related FGIC Allowed Claim amount against such entity).   Finally, the Payment Amount that FGIC would be obligated to pay plus the

premium amount that FGIC would forgo in exchange is significantly less than the amount of existing unpaid claims under the Policies plus the present value of the losses FGIC currently expects to arise thereunder (in the absence of the Settlement Agreement). Accordingly, the Rehabilitator has determined that the settlement and release of FGIC's obligations and liabilities under the Policies contemplated by the Settlement Agreement will result in greater value to FGIC's policyholders and other claimants than leaving such obligations and liabilities in place.

22. In addition, the Rehabilitator has determined that accepting the terms of the FGIC Allowed Claims in exchange for the release of ResCap, LLC, GMACM and RFC from any further or additional liability on account of the FGIC Claims, including the Prepetition Litigation, has the substantial benefits described in the preceding paragraph and, in addition, will avoid costly, protracted and uncertain litigation concerning such FGIC Claims. The Prepetition Litigation claims were filed from November 2011 through March 2012, and are comprised of twelve separate federal court actions involving twenty distinct completed transactions over approximately three years. The Prepetition Litigations assert valuable but complicated claims against three Debtor-defendants, as well as AFI and Ally Bank. Litigating these claims would be complicated, expensive and highly contentious, would require extensive motion practice and discovery and could take at least another several years to finally resolve. Moreover, the legal framework by which the FGIC Claims would be decided is still developing, and while many recent decisions in other similar cases have been favorable to FGIC's position, there would always be uncertainty for FGIC in prosecuting the FGIC Claims. Settling the FGIC Claims pursuant to the terms of the Settlement Agreement eliminates these risks and uncertainties, as well as the costs and delay attendant to a prolonged litigation, and will result in greater value to FGIC's policyholders and other claimants than continuing to litigate such claims.

23.     Based on the foregoing, the Rehabilitator has determined that the Settlement Agreement is in the best interests of FGIC and its policyholders and other claimants and should be approved.

### The Court Should Approve the Plan Support Agreement

24.     The Rehabilitator, in consultation with his and FGIC's advisors, also carefully reviewed the circumstances surrounding the Plan Support Agreement, and respectfully recommends and requests that the Court approve the Plan Support Agreement, the incorporated Term Sheets (as defined therein) and the transactions contemplated thereby as they relate to FGIC.   Consummation of such transactions pursuant to the Proposed Chapter 11 Plan (if such plan is confirmed and goes effective) would result in (i) AFI contributing $2.1 billion of value to the Debtors' estates and creditors and (ii) FGIC receiving a recovery on account of the FGIC Allowed Claims of approximately $206.5 million, as explained in greater detail above.   Absent AFI's contribution, given the limited value in the Debtors' estates, FGIC's recovery on account of the FGIC Allowed Claims would be uncertain at best.   In addition, as set forth in greater detail above, continuing to pursue the Prepetition Litigation against AFI and Ally Bank would be complicated, expensive and highly contentious.   Accordingly, the Rehabilitator has determined that settling the Prepetition Litigation against AFI and Ally Bank pursuant to the terms and conditions of the Plan Support Agreement and the Term Sheets (as defined therein) as part of a global resolution of the Chapter 11 Cases will maximize FGIC's recovery on account of the FGIC Allowed Claims and result in greater value to FGIC's policyholders and other claimants than continuing to pursue such litigation.

25. Based on the foregoing, the Rehabilitator has determined that the Plan Support Agreement is in the best interests of FGIC and its policyholders and other claimants and should be approved with respect to FGIC.

26. The Rehabilitator also requests that this Court direct that service of notice of entry of the Court Order shall be made by the Rehabilitator posting such notice, together with a copy of the Court Order, at www.fgicrehabilitation.com. Such service is reasonably calculated to fairly and timely apprise any and all interested persons or entities of entry of the Court Order, while keeping the method of notice efficient and cost effective. Accordingly, such service should be deemed good and sufficient service.

**The Court Should Enter the Order to Show Cause**

27. The Rehabilitator further recommends and requests that the Court enter the Order to Show Cause which, among other things, sets August 6, 2013 as the date for the Hearing, which is approximately 70 days from the date hereof. Such period will allow the Rehabilitator and the Trustees to provide sufficient notice of the Hearing and the objection deadline to all interested persons, including all Investors holding Securities insured by the Policies, and will provide such persons ample time to consider the relief requested herein. In addition, scheduling the Hearing on August 6, 2013 will allow the Court to consider the relief requested prior to the August 19, 2013 deadline set forth in the Plan Support Agreement. Further, the Order to Show Cause provides for the Court to enter the Court Order without holding the Hearing if no objections are filed, avoiding the need to expend the Court's and the parties' time and resources on an uncontested matter.

28. The Order to Show Cause also provides that service of the Order to Show Cause and the papers upon which it is granted shall be made by (i) the Rehabilitator posting true

copies of the same at www.fgicrehabilitation.com within five (5) Business Days after issuance of the Order to Show Cause and (ii) the Trustees mailing notice of the same in a form reasonably satisfactory to the Rehabilitator to all known Investors (including those holding Securities insured by FGIC's Policies as well as those holding Securities that were not insured by FGIC) within five (5) business days after issuance of this Order to Show Cause. Such service is reasonably calculated to fairly and timely apprise any and all interested persons or entities, including all Investors (including those holding Securities insured by FGIC's Policies as well as those holding Securities that were not insured by FGIC), of the Hearing, this Affirmation and the relief requested herein, including the terms and conditions of the Settlement Agreement and the Plan Support Agreement. Accordingly, such service should be deemed good and sufficient service.

29. Giving all Investors notice and an opportunity to be heard at the Hearing pursuant to the Order to Show Cause ensures that the Settlement Agreement (if approved), including the release of FGIC from all present and future obligations and liabilities with respect to the Policies, will bind any Investors that may in the future attempt to assert claims against FGIC for payment under the Policies and dilute recoveries to FGIC's policyholders as a whole. Accordingly, the Rehabilitator has determined that entry of the Order to Show Cause is in the best interests of FGIC and its policyholders and other claimants and should be approved.

30. No previous application has been made for the relief requested herein to this or any other court.

14

WHEREFORE, I respectfully request, on behalf of the Rehabilitator, that this Court enter the Court Order approving and authorizing the settlements, releases and other transactions contemplated by the Settlement Agreement and the Plan Support Agreement, enter the Order to Show Cause and grant such other and further relief as this Court may deem just and proper.

Dated: May 29, 2013
      New York, New York

                Weil, Gotshal & Manges LLP

                *Attorneys for the Superintendent of Financial Services of the State of New York, as Rehabilitator of Financial Guaranty Insurance Company*

By: /s/ Gary T. Holtzer
      Gary T. Holtzer
      767 Fifth Avenue
      New York, NY 10153
      (212) 310-8000

15